# EXHIBIT 19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: February 4, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                                 Theresa Lanza
           Courtroom Deputy Clerk                     Court Reporter

ATTORNEYS PRESENT FOR CARTER            ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                            John Quinn
                                        Jon D. Corey

                                        ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:              GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo

Alexander H. Cote

MINUTES FORM 90                 1        Initials of Deputy Clerk __jh__
CIVIL -- GEN                             Time: 1/45

EXHIBIT 19
PAGE 566

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

**ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND**

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

### EX PARTE APPLICATIONS REGARDING DEPOSITIONS (DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE

These applications are DENIED IN PART, subject to the following rulings:

(1)   The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)   The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _19_
PAGE _____

McFarland, who represents certain third-party witnesses. Mattel submits that Mr.
McFarland has been deliberately evading service of a notice of deposition on him
and his clients – serious allegations when made by an officer of the Court against
another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW
CAUSE** why he and his clients should not be ordered to appear for deposition. A
written response to this OSC must be filed no later than February 11, 2008. Other
parties may file written replies no later than February 19, 2008. The Court will hear
the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-
referenced Court.

(3)     Phase 1 depositions that have been scheduled past the discovery deadline for the
        convenience of the witnesses or pursuant to the stipulation of the parties and/or
        witnesses may proceed as scheduled.

(4)     All discovery related to Phase 2, other than certain individual depositions that may be
        related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)     As previously ordered and reaffirmed by this Court, all discovery matters shall be
        presented in the first instance to the Discovery Master. The fact that the Discovery
        Master's ruling might impact upon the Court's scheduling order does not relieve the
        parties of following this procedure.  For instance, motions to compel, motions to
        quash, or motions challenging service as to existing discovery requests shall be
        brought before the Discovery Master. So, too, must objections based on
        burdensomeness, relevancy, or privilege. In general, and on the matters touched
        upon herein, the Court expresses no opinion as to these issues, and instead leaves
        those issues to the Discovery Master to decide in the first instance.

(6)     To the extent that certain challenged depositions are within the scope of the Court's
        January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given
        deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and
        Phase 2), said deposition may proceed subject to the challenges set forth in the
        previous paragraph. To the extent that the depositions are related to Phase 2, they
        are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)     The parties' arguments require the Court to resolve an internal inconsistency in the
        Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of
        Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the
        relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08
        Order as follows:

              Delete: <Specifically, the Court grants Mattel's request to take the
              individual depositions relating to the Bratz claims (set forth in the
              moving papers at 9-11) and relating to the trade secret and RICO

EXHIBIT    19
PAGE       568

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take
the individual depositions relating to the Bratz claims (set forth in the
moving papers at 9-11), relating to the trade secret and RICO claims
(set forth in the moving papers at 13), and relating to document
preservation (set forth in the moving papers at 14 (Joe Tiongco and
Daphne Gronich)).>

(8)   The Court's January 7, 2008, Order granted leave to take additional discovery over
and above the previously allocated 24 depositions per side. Nevertheless, as to all
other depositions, how to "count" the previously allocated depositions is left to the
discretion of the Discovery Master.

(9)   At the hearing, counsel for Christensen, Glaser requested that the Court clarify that
its January 7, 2008, ruling granted leave to depose it on only one issue. That is not
the case, and the request is DENIED. Mattel has been granted relief from the
numerical limitations that previously restricted its ability to depose those individuals
and entities addressed by the Court's January 7, 2008, Order, including its ability to
depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master
upon proper presentation of the issue to him, Mattel may depose Christensen,
Glaser on any relevant, non-privileged matter.

## MACHADO GOMEZ'S EX PARTE APPLICATION RE
## JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further
order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates
after the conclusion of Phase 1 of the trial.

## MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
## ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the
Discovery Master.

## MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
## COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to
arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to
Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those
tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

EXHIBIT   19
PAGE      569

arrangements for inspection in both Hong Kong and the PRC. Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports. Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

## MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART. The Court sets the motion for hearing on February 11, 2008. Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008. The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT  19
PAGE  570

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)     **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | |
| BAP (Bankruptcy Appellate Panel) | |
| Beck, Michael J (Clerk, MDL Panel) | |
| BOP (Bureau of Prisons) | |
| CA St Pub Defender (Calif. State PD) | |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | |
| Case Asgmt Admin (Case Assignment Administrator) | |
| Catterson, Cathy (9th Circuit Court of Appeal) | |
| Chief Deputy Admin | |
| Chief Deputy Ops | |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

| | |
|---|---|
| US Attorneys Office - Civil Division -L.A. | |
| US Attorneys Office - Civil Division - S.A. | |
| US Attorneys Office - Criminal Division -L.A. | |
| US Attorneys Office - Criminal Division -S.A. | |
| US Bankruptcy Court | |
| US Marshal Service - Los Angeles (USMLA) | |
| US Marshal Service - Riverside (USMED) | |
| US Marshal Service -Santa Ana (USMSA) | |
| US Probation Office (USPO) | |
| US Trustee's Office | |
| Warden, San Quentin State Prison, CA | |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor):  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk**  jh

EXHIBIT  19
PAGE  571

# NOTICE PARTY SERVICE LIST

**Case No.** CV 04-09049 SGL(RNBx)   **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document** Minute Order of February 4, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | |
| BAP (Bankruptcy Appellate Panel) | |
| Beck, Michael J (Clerk, MDL Panel) | |
| BOP (Bureau of Prisons) | |
| CA St Pub Defender (Calif. State PD) | |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | |
| Case Asgmt Admin (Case Assignment Administrator) | |
| Catterson, Cathy (9th Circuit Court of Appeal) | |
| Chief Deputy Admin | |
| Chief Deputy Ops | |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

| | |
|---|---|
| US Attorneys Office - Civil Division -L.A. | |
| US Attorneys Office - Civil Division - S.A. | |
| US Attorneys Office - Criminal Division -L.A. | |
| US Attorneys Office - Criminal Division -S.A. | |
| US Bankruptcy Court | |
| US Marshal Service - Los Angeles (USMLA) | |
| US Marshal Service - Riverside (USMED) | |
| US Marshal Service -Santa Ana (USMSA) | |
| US Probation Office (USPO) | |
| US Trustee's Office | |
| Warden, San Quentin State Prison, CA | |

---

✓ **ADD NEW NOTICE PARTY**
*(if sending by fax, mailing address must also be provided)*

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*: Two Embarcadero Center, Suite 1500, San Francisco, CA 94111

*E-mail:

*Fax No.:

\* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE** *(list below):*

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**Initials of Deputy Clerk** jh

---

G-75 (03/07)                      NOTICE PARTY SERVICE LIST



EXHIBIT 19
PAGE 572

**Laura Kinsey**

| | |
|---|---|
| From: | Dylan Proctor |
| Sent: | Tuesday, February 05, 2008 10:20 AM |
| To: | Laura Kinsey |
| Subject: | Fw: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Motion Hearing |

Pmt

Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA 90017

Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

E-mail: dylanproctor@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above. This message may be an attorney-client communication and/or work product and as
such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible
for delivering it to the intended recipient, you are hereby notified that you have received this document in error and
that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received
this communication in error, please notify us immediately by e-mail, and delete the original message.


----- Original Message -----
From: Dylan Proctor
To: MGA / Bryant Team
Sent: Tue Feb 05 09:50:32 2008
Subject: Fw: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Motion Hearing


Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA 90017

Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

E-mail: dylanproctor@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above. This message may be an attorney-client communication and/or work product and as
such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible

1

EXHIBIT /9
PAGE /573

for delivering it to the intended recipient, you are hereby notified that you have received this document in error and
that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received
this communication in error, please notify us immediately by e-mail, and delete the original message.


----- Original Message -----
From: cacd_ecfmail@cacd.uscourts.gov <cacd_ecfmail@cacd.uscourts.gov>
To: ecfnef@cacd.uscourts.gov <ecfnef@cacd.uscourts.gov>
Sent: Tue Feb 05 09:34:11 2008
Subject: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Motion Hearing

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail
because the mail box is unattended. Direct all inquiries to ecf-helpdesk@cacd.uscourts.gov.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later
charges, download a copy of each document during this first viewing.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Notice of Electronic Filing


The following transaction was entered on 2/5/2008 at 9:25 AM PST and filed on 2/4/2008

Case Name:    Carter Bryant v. Mattel Inc
Case Number: 2:04-cv-9049 <https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?167222>
Filer:
Document Number:    1931 <https://ecf.cacd.uscourts.gov/cgi-bin/show_case_doc?
1931,167222,,85692124,,,5610>

Docket Text:
MINUTES OF Motion Hearing held before Judge Stephen G. Larson: HEARING ON EX PARTE APPLICATIONS:
1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and
Mel Woods; 1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana
Trueba, Pablo Vargas, MGA Entertainment, Inc.; 1538 EX PARTE APPLICATION for Relief from 01-07-2008
Order re Motion Hearing; 1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third
Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow; 1624 EX PARTE APPLICATION to Enforce
Court's Orders Compelling Production of Tangible Items; 1628 EX PARTE APPLICATION to Stay pending Review
of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel; ORDER TO
SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND. See Minute Order for complete text. MATTELS
EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008
ORDER (DOCKET # 1628). This application is GRANTED IN PART. The Court sets the motion for hearing on
February 11, 2008. Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than
February 8, 2008. The Discovery Masters January 11, 2008, Order is stayed until the issuance of the Courts minute
order regarding the February 11, 2008, hearing. IT IS SO ORDERED. [RE: Declaration (Motion related),
Declaration (Motion related)[1850], Reply (Motion related), Reply (Motion related), Reply (Motion related)[1887],
Reply (Motion related), Reply (Motion related)[1721], Declaration (Motion related)[1691], Response in Opposition
to Motion, [1560], Reply (Motion related), Reply (Motion related)[1853], Amendment (Motion related),
Amendment (Motion related)[1792], Declaration (Motion related)[1817], Response in Opposition to Motion,
[1554], Declaration (Motion related), Declaration (Motion related), Declaration (Motion related)[1655], Response in
Opposition to Motion,, [1652], Set/Reset Deadlines/Hearings: Motion set for hearing on 2/11/2008 at 10:00 AM
before Judge Stephen G. Larson] Court Reporter: Theresa Lanza. (jh)

EXHIBIT    19
PAGE       574

2:04-cv-9049 Notice has been electronically mailed to:

Alan Neil Goldberg    agoldberg@sgattys.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com,feseroma@obsklaw.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Raoul D Kennedy    rkennedy@skadden.com

Mark E Overland    moverland@obsklaw.com

Thomas J Nolan    tnolan@skadden.com,carl.roth@skadden.com,marcus.mumford@skadden.com

Emil W Herich    eherich@kmwlaw.com

Timothy L Alger    timalger@quinnemanuel.com

John W Keker    jkeker@kvn.com,droberts@kvn.com,efiling@kvn.com

Jon D Corey    joncorey@quinnemanuel.com

Michael H Page    mhp@kvn.com

Christa M Anderson    canderson@kvn.com

Kien C Tiet    ktiet@sgattys.com

Michael T Zeller    michaelzeller@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com,drogosa@skadden.com,sumclaug@skadden.com

Melissa Grant    melissagrant@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Nathan Meyer    nmeyer@kayescholer.com,dclow@kayescholer.com

Matthew M Werdegar    mmw@kvn.com

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Leah Chava Gershon    leah@spertuslaw.com

3

EXHIBIT 19
PAGE 575

John Elliot Trinidad      jtrinidad@kvn.com,yjayasuriya@kvn.com,efiling@kvn.com

Audrey Walton-Hadlock      awaltonhadlock@kvn.com

Michelle M Campana      michelle.campana@skadden.com

2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :

4

EXHIBIT ___

PAGE 576

# EXHIBIT 20

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   MICHAEL KEATS (admitted *pro hac vice*)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email: mkeats@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
    Telephone: (310) 553-3000
9   Facsimile: (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

11
12

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

13

| | |
|---|---|
| 14   CARTER BRYANT, an individual, Plaintiff, | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727) |
| 15   v. | **DISCOVERY MATTER** |
| 16 | **MGA ENTERTAINMENT INC.'S MOTION TO COMPEL** |
| 17   MATTEL, INC., a Delaware Corporation, | |
| 18   Defendant. | |
| 19   AND CONSOLIDATED ACTIONS | [To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006] |
| 20 | |
| 21 | Discovery Cut-off:    March 3, 2008 |
| 22 | Pre-trial Conference:  June 2, 2008 |
| 23 | Trial Date:            July 1, 2008 |

24
25
26
27
28

## I.    **INTRODUCTION**

MGA Entertainment, Inc. ("MGA") respectfully submits this memorandum in support of its motion to compel Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for Production of Documents dated November 22, 2006 (the "Requests") under Rule 37(a) of the Federal Rules of Civil Procedure in the case originally captioned MGA Entertainment, Inc. v. Mattel, Inc. MGA, 05-02727 CBM (RZx). The documents that MGA seeks relate directly to its Lanham Act and unfair competition claims against Mattel. Specifically, MGA alleges that Mattel has engaged in a multifaceted predatory campaign to decimate MGA's business because MGA has successfully competed in the marketplace against Mattel by introducing a more appealing product -- the "Bratz" line of fashion dolls. Faced with declining market share and a sagging share price, Mattel brazenly copied MGA's innovative BRATZ doll line, which it now purports to sell as part of the BARBIE "MY SCENE" line and conducted a wide-ranging campaign of intimidation and predation against its much smaller competitor, MGA.

MGA has been seeking discovery relating to these claims and allegations since it first filed suit. Concerned about the broad scope of its wrongdoing, however, Mattel unilaterally and improperly refuses to produce entire categories of documents that are central to MGA's claims. Illustrating Mattel's obstreperous and self-serving approach, Mattel, among other things, has refused to search for documents responsive to MGA's Requests unless MGA based them on facts specifically alleged in MGA's Complaint -- an unwarranted attempt to impose a heightened pleading standard in the discovery context. Revealing Mattel's hypocrisy, Mattel also refuses categorically to produce documents even when it concedes that the Requests are based on specific allegations in the Complaint. Mattel's position is insupportable and is plainly calibrated to obstruct legitimate discovery.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)



EXHIBIT   20
PAGE   **578**

As the Discovery Master may recall, Mattel originally complained, by way of a motion to compel, that MGA failed to produce documents related to its unfair competition claims as part of its initial disclosures[1] irrespective of the fact that such documents resided with Mattel and third parties. Now that MGA seeks these documents directly from Mattel concerning these claims, Mattel has erected all manner of absurd obstructions to bar MGA's access to such documents. As the Discovery Master noted in his Order denying Mattel's motion to compel, this case is well beyond the early stages of litigation.[2] As such, MGA has sought pointed discussion, via the meet and confer process, concerning specific Requests it has propounded and Mattel's inadequate and improper responses. Despite these efforts, Mattel continues to unjustifiably block MGA's access to discovery. Accordingly, MGA reluctantly brings this dispute to the Discovery Master, seeking an Order compelling MGA to produce responsive documents.

## II.  BACKGROUND

### A.  The Instant Litigation

Mattel is the world's largest toy company, thanks chiefly to one product -- the BARBIE doll.[3] Since its introduction in 1959 through to the late 1990's, the BARBIE doll quite simply dominated the fashion doll market and fueled Mattel's growth and success.[4] By the late 1990's, BARBIE boasted sales of $1.8 billion and was the world's best-selling toy.[5]

Content to rest on BARBIE's past laurels, however, Mattel failed to anticipate or respond to shifts in consumer tastes, changing industry dynamics and

---

[1] Mattel's Motion To Compel Rule 26(a) Disclosures dated January 18, 2007
[2] Order Denying Mattel's Motion to Compel Rule 26(a) Disclosures dated February 13, 2007 at
[3] See Plaintiff-MGA's Complaint dated April 13, 2005 (hereinafter "Complaint") at ¶ 10.
[4] Id.
[5] Id.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

2

an increasing focus on technologically advanced and interactive toys.[6]  By 1997 the BARBIE brand had lost its steam and sales quickly began to plummet.[7]  In 1998, BARBIE sales decreased approximately $252 million and remained flat or declined for the subsequent four years.[8]

Because BARBIE represented as much as 50% of Mattel's business, BARBIE's collapse would have dire consequences for Mattel.[9]  In an effort to diffuse the impact of BARBIE's sales slump on its bottom line, Mattel engaged in a series of acquisitions to diversify its toy-brand portfolio, including purchasing the companies behind "Matchbox" cars and "American Girl" dolls.[10]  Mattel continued to founder and, in 1999, Mattel announced a lay-off of approximately 3,000 employees.[11]  Irrespective of Mattel's diversification and streamlining efforts, Mattel's profit center was still BARBIE and BARBIE was still languishing.[12]  Then, in 2001, came MGA's BRATZ.[13]

MGA's BRATZ line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary pre-teen and teenage girls.[14]  Introduced to consumers in June 2001, these dolls looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small thin bodies, oversized feet and up-to-date fashions.[15]  The BRATZ line immediately supplanted a portion of the market share (and shelf space) for fashion dolls by appealing to "tween" girls who were no longer interested in the more traditional BARBIE.[16]

---

[6] Complaint at ¶¶ 11-12.
[7] Id.
[8] Complaint at ¶¶ 29-30.
[9] Complaint at ¶¶ 11-12.
[10] Complaint at ¶ 13.
[11] Complaint at ¶ 14.
[12] Id.
[13] Complaint at ¶ 21.
[14] Complaint at ¶ 24.
[15] Complaint at ¶ 25.
[16] Complaint at ¶ 27.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 20
PAGE 580

1   The BRATZ line also received a number of industry accolades, including the Toy

2   Industry Association ("TIA") Peoples Choice Toy of the Year and the Family Fun

3   Toy of the Year Awards in 2001 and 2002; the TIA Property of the Year and Girl

4   Toy of the Year Awards for 2003; and LIMA's (the licensing industry's official

5   arm) Best Character License of the Year and Overall Best Licensed Property for

6   2003, just to name a few.[17]  In addition to industry accolades, the media took notice,

7   with MSNBC naming BRATZ the Hottest Toy of the Year in 2004.[18]

8          Although only a tiny fraction of the size of Mattel, MGA's ability to chip

9   away at Mattel's stranglehold on the fashion doll market apparently was perceived

10   as a serious threat.  MGA's BRATZ had commandeered market share, shelf space

11   and prestige that had for so long belonged solely to BARBIE.  Mattel's response to

12   the threat posed by MGA and the BRATZ brand was no less than full scale

13   corporate warfare.

14          Mattel engaged in a campaign of tortious, unfair and anti-competitive

15   practices including systematic, serial copycatting and intellectual property

16   infringement, aided by intimidation threats and other acts of unfair competition.

17   When Mattel couldn't come up with an original product to compete with BRATZ, it

18   came up with a new BARBIE giving her a BRATZ look with a disproportionately

19   larger head, big, dramatic eyes and lips, a small thin body and up-to-date fashions.[19]

20   Every member of this new BARBIE line, dubbed MY SCENE, was purposely

21   designed to evoke the unique and distinctive look of one of the BRATZ dolls.[20]

22   Everything about the MY SCENE line, from eye-shape to outfits to packaging to

23   themed brand extensions, was a rip-off of MGA's BRATZ and became more so

24

25

26   [17] Complaint at ¶ 28.
27   [18] Id.
     [19] Complaint at ¶ 34.
28   [20] Id.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1 with each iteration.[21] And, to make sure MGA did not succeed with its other

2 products, Mattel did not limit its copying to BRATZ.  Mattel also copied versions

3 of MGA's "4-Ever Best Friends," introducing  "Wee 3 Friends"; MGA's

4 "Mommy's Little" dolls, introducing its "Little Mommy" doll; and MGA's Alien

5 Racers line of toy racing vehicles, by re-branding a former Hot Wheels line under

6 the AcceleRacerS mark and logo. [22]

7  Not content with its efforts to siphon consumers from MGA by infringing on

8 MGA's intellectual property rights, Mattel concurrently sought to limit MGA's

9 ability to compete by coercing and threatening retailers, licensees and suppliers

10 both in the United States and abroad.  To the best of MGA's knowledge, these

11 activities include, but are by no means limited to:  (a) threatening former Mattel

12 employees now working for MGA with litigation for disclosing even publicly

13 available information about Mattel; (b) warning a number of companies not to

14 license MGA products or risk retribution; (c) pressuring distributors and retailers

15 not to distribute BRATZ, to reduce shelf and display space for BRATZ and to place

16 BRATZ in unfavorable locations at retail outlets; (d) locking MGA out of the

17 market for doll hair, by purchasing the entire supply of doll hair from the two main

18 hair supply companies; and (e) manipulating the retail market by having Mattel

19 merchandisers tamper with MGA's retail displays and giving false information to

20 retailers about MGA's customer relationships and future plans.[23]

21  As a result of Mattel's infringement of MGA's intellectual property rights

22 and in response to Mattel's unfair and anti-competitive business practices, MGA

23 brought suit seeking both equitable relief and damages for false designation of

24 origin, affiliation, association or sponsorship and unfair competition pursuant to 15

25 U.S.C. §1125(a); dilution pursuant to 15 U.S.C. §1125(c), Cal. Bus & Prof. Code §

26

27 [21] Complaint at ¶¶ 34, 37-56.
 [22] Complaint at ¶¶ 68-70.

28 [23] Complaint at ¶¶ 73-79

EXHIBIT
PAGE 582

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    14330 and California common law; unfair competition pursuant to Cal. Bus. & Prof.

2    Code §17200 *et seq.* and California common law; and unjust enrichment.

3

4        **B.**   **MGA's First Set of Requests for Production of Documents and Mattel's Objections**

5

6        Pursuant to Federal Rules of Civil Procedure 26(b) (1) and 34, MGA

7    propounded its Requests seeking discovery regarding, among other things: (a)

8    Mattel's copycatting efforts and activities with respect to BRATZ and other MGA

9    product lines; (b) specific anti-competitive business activities carried out by Mattel

10    which were enumerated in MGA's Complaint based upon information and belief;

11    and (c) any similar or related anti-competitive business activities relevant to

12    MGA's claims against Mattel. Each of the document requests, served by MGA on

13    November 22, 2006, was tailored to elicit facts bearing on essential elements of its

14    claims.

15        In response, Mattel raised a number of improper general objections and flat-

16    out refused to produce documents responsive to any of MGA's requests related to

17    its unfair competition claims. On March 1, 2007, pursuant to paragraph 5 of the

18    Order for the Appointment of a Discovery Master, MGA requested a meet and

19    confer to discuss Mattel's improper objections and the paucity of its responses.

20    MGA attended the meet and confer on March 9, 2007, but was unable to secure

21    Mattel's agreement to produce the vast majority of documents MGA sought.[24]

22    Thereafter on March 13, 2007, MGA wrote a letter to Mattel in an effort to resolve

23    or at least further narrow the discovery issues that were in dispute.[25] To date,

24    Mattel has failed to respond to that letter.[26] As MGA has been unable to obtain

25    discovery it legitimately requested from Mattel, MGA has no choice but to file this

26

27    [24] Declaration of Jennifer Glad ("Glad Decl.") ¶ 3.

28    [25] Glad Decl. ¶ 4, Exhibit 1.
    [26] Glad Decl. ¶ 5.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

motion to compel.

## III.  ARGUMENT

### A.  MGA Is Entitled to the Discovery It Seeks

Federal Rule of Civil Procedure 26(b) (1) grants a party "the right to discover non-privileged information "relevant to the claim or defense of any party."" *See Goodrich Corp. v. Emhart Indus.*, 2005 U.S. Dist. LEXIS 25160 (C. D. Cal. October 6, 2005) at *10. "Relevance is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Id.*  A discovery request is proper if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).  As set forth more fully below, MGA has rightfully requested discovery relevant to its claims.  Mattel on the other hand, has failed to sustain its burden of showing that such discovery should not be allowed, notwithstanding its improper objections.

### B.  Mattel Has Withheld Documents Based on Improper General Objections

#### 1.  Mattel has withheld documents based on an improper general relevance objection

Inconceivably, Mattel has generally objected and flatly refused to respond to any of MGA's requests that are not related to facts specifically alleged with particularity in MGA's Complaint even if they are relevant to MGA's claims, thereby engrafting a Fed. R. Civ. P. 9(b) heightened pleading standard to discovery requests.  Mattel has used this objection as a basis to withhold documents harmful to its case concerning (a) unfair or anti-competitive business activities which it

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 20
PAGE 584

perpetrated against MGA which MGA could only learn of via the discovery process; and (b) unfair and anti-competitive activities as they relate to MGA products which were not individually enumerated in the Complaint.

This specious objection belies the entire foundation of the federal discovery system. MGA's requests speak to the very purpose of discovery – to find out what it is unaware of and potentially narrow issues for trial or promote settlement. *See Woods v. Kraft Foods, Inc.*, 2006 U.S. Dist. LEXIS 73126 (E. D. Cal. 2006) (purpose of discovery to make trial "less a game of blind man's bluff…with the basic issues and facts disclosed to the fullest practicable extent possible…and to narrow and clarify the issues in dispute" (citations omitted)); *see also* 6 Moore's Federal Practice §26.02 (3d ed. 2001) (purpose of disclosure of all relevant information is to allow "disputed issues to be based on full and accurate understanding of true facts").

Moreover, the focus is not on the specific facts alleged in the Complaint, but on the specific claims and defenses. 6 Moore's Federal Practice §26.41 (3d ed. 2001). As Professor Moore points out:

> "a court resolving a discovery dispute on the ground of relevance must…focus on the specific claim or defense alleged in the pleadings. This does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact. It means that the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery."

*Id.* Mattel may not refuse to produce documents relevant to MGA's claims of unfair competition merely because such documents discuss its anti-competitive activities which it conducted in secret and about which MGA could not possibly have any factual knowledge. Nor can Mattel refuse to produce relevant documents related to the BRATZ product line, solely because MGA did not specifically




1   enumerate each and every single BRATZ-related product or accessory in the

2   Complaint. To allow Mattel to do so would put MGA at a severe disadvantage in

3   the discovery process and negate the liberal construction given Fed. R. Civ. P.

4   26(b).

5       In view of the foregoing, Mattel should not be allowed to withhold

6   documents on this basis.

7

8       2.   **Mattel has improperly limited the scope of its production of documents relating to MGA's BRATZ products**

9       Mattel has generally objected to and refrained from producing

10  documents relating to MGA's BRATZ dolls unless the documents are "in the

11  context" of Mattel's BARBIE or MY SCENE products on "relevance" grounds.

12  However, Mattel cannot unilaterally withhold documents concerning BRATZ

13  solely because they do not reference or contemplate BARBIE or MY SCENE. At

14  the March 9th meet and confer, Mattel's ever-shifting rationale for withholding

15  documents that referenced BRATZ but not BARBIE or MY SCENE ranged from

16  (a) Mattel should not be required to go to the "Hot Wheels department" to ask

17  about "BRATZ" -- an objection based on burden not relevance; to (b) that this case

18  is about "BRATZ vs. "MY SCENE" -- which completely ignores MGA's non-MY

19  SCENE related unfair competition claims, for example MGA's assertion that

20  Mattel exerted pressure on licensees not to license, and retailers or distributors not

21  to distribute, BRATZ products, and therefore just is not true; to (c) the unsupported

22  assertions of Mattel's counsel that *he* had never seen documents discussing BRATZ

23  which did not discuss BARBIE, MY SCENE, or a specifically alleged act of unfair

24  competition.[27]  None of these purported objections justifies Mattel's attempts to

25  unilaterally and improperly narrow the scope of discovery or refuse production of

26  relevant materials.

27

28  ───────────────
    [27] Glad Decl. at ¶3.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   Following Mattel's logic, whole categories of documents related to MGA's

2   unfair competition claims reasonably could be excluded from production. For

3   example, documents pertaining to Mattel's tampering with BRATZ displays that

4   did not mention MY SCENE or BARBIE would, in Mattel's view, fall outside the

5   scope of responsive documents; as would documents showing that Mattel exerted

6   influence over licensees and others not to license or distribute BRATZ products

7   unless those documents also mentioned MY SCENE or BARBIE. In addition,

8   Mattel's position would hamper discovery in connection with MGA's Lanham Act

9   claims, including, for example, product development documents related to Mattel's

10   decision, plan or implementation of a strategy to copy BRATZ dolls outside of the

11   context of the BARBIE or MY SCENE products. Such documents are relevant to

12   MGA's claims that Mattel willfully infringed its intellectual property rights.

13   MGA advised in its March 13th letter, that it was willing to meet and confer

14   concerning any proposal Mattel wished to make for narrowing its search for

15   responsive documents.[28] Nevertheless, Mattel still is obliged to produce documents

16   relevant to all of MGA's claims -- including any documents referencing BRATZ in

17   connection with MGA's allegations of unfair competition under California state and

18   common law which do not reference BARBIE or MY SCENE -- not just those

19   documents Mattel feels like producing in connection with claims it feels like

20   defending. As such, Mattel should be compelled to produce documents concerning

21   MGA's BRATZ dolls regardless of whether such documents also reference or

22   contemplate Mattel's BARBIE or MY SCENE products.[29]

23

24

25

26

27   [28] Glad Decl. at ¶ 4, Exhibit 1.

28   [29] Mattel also has withheld documents relating to conduct occurring outside of the United States. This issue will be addressed in a separate motion.

EXHIBIT  20
PAGE      587

10

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

3.   **Mattel Has Improperly Limited the Scope of Certain of MGA's Requests Concerning MY SCENE to "those aspects of the MY SCENE products that MGA has accused of infringement" in its Complaint**

MGA has sought documents referring or relating to Mattel's MY SCENE dolls including without limitation documents concerning the development of the product design trade dress or packaging trade dress of MY SCENE, or any changes thereto, as well as documents concerning the design, development, themes, conception or creation of packaging or artwork for MY SCENE. Although Mattel agreed to produce some documents, it improperly limited the scope of its production to only those aspects of MY SCENE that MGA accused of infringement in MGA's Complaint. Mattel effectively has limited the scope of discovery in this area to only its past infringement of the specific aspects of MGA's BRATZ products and packaging asserted in MGA's Complaint. As a result, Mattel apparently has withheld documents concerning potentially infringing items not mentioned in the Complaint and documents concerning the development of its MY SCENE product line from inception of this suit to the present.

As discussed more fully above, Mattel cannot refuse to produce relevant documents related to its MY SCENE dolls and packaging, solely because MGA did not specifically enumerate each and every single infringing MY SCENE item in the Complaint.  Moreover, documents concerning the current development of MY SCENE may tend to show continuing infringement and therefore are relevant to MGA's claims that Mattel's conduct is willful and to MGA's claims for damages. As such, Mattel should be compelled to produce documents concerning MY SCENE regardless of whether such documents implicate a particular instance of infringement alleged in MGA's Complaint and also to produce documents concerning the development of MY SCENE products and packaging from the time MGA filed its Complaint through to the present.

EXHIBIT  22
PAGE 588

11

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

**C.    Mattel Has Withheld Documents Based on Other Improper Objections**

In addition to its improper general objections, Mattel also has raised improper specific objections to MGA's Requests in an effort to withhold documents relevant to MGA's claims and defenses.  These are as follows:

1.    Mattel refused to produce communications between Mattel and sales personnel, merchandisers and retailers relating to the alteration of displays or retail spacing of non-BRATZ MGA products.  (Doc. Req. Nos. 32-33, 61.)

These documents are directly relevant to MGA's assertion in ¶79 of its Complaint that "Mattel merchandisers have been caught tampering with MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise instead" and thus to MGA's claims for unfair competition.  Mattel maintains it only need produce documents pertaining to tampering with BRATZ displays, but not other MGA product displays.  However, MGA's Complaint clearly alleges claims for unfair competition emanating from Mattel's tampering with "MGA displays" which may or may not be BRATZ displays.  Mattel's attempt to narrow the scope of its document review and production is improper.  Mattel should be compelled to produce documents in its possession that relate to *any* tampering with MGA displays.

2.    Mattel refused to produce communications between Mattel and CARU relating to MGA and restrictions to be placed on it; or documents supporting Mattel's allegation in its Answer that MGA violated CARU standards.  (Doc. Req. Nos. 37-39);

Such documents are directly relevant to MGA's assertions in ¶¶87-91 of its Complaint that "Mattel used its influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions on MGA advertisements, and to require MGA to amend aspects of commercials that have gone unchallenged in

EXHIBIT 20
PAGE 589



MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

12

1   other parties' commercials," and thus to MGA's claims for unfair competition and

2   unfair business practices. Mattel even refused to produce documents supporting its

3   own assertion that MGA violated CARU standards, which is directly relevant to

4   ¶80 of its Answer. At the March 9th meet and confer, Mattel indicated that it

5   needed to confirm that disclosure of CARU-related documents did not violate

6   Mattel's confidentiality agreement with CARU and would advise MGA of its

7   decision with respect to these documents.[30] To date, MGA has not received any

8   correspondence from Mattel advising of its decision.[31]

9       MGA believes that Mattel is basing its refusal to produce documents

10   responsive to these requests on a clause in its agreement with CARU preventing

11   *parties* thereto from subpoenaing documents (unless pursuant to a court order).

12   MGA is not a party to that agreement and therefore is not precluded from seeking

13   documents in Mattel's possession responsive to its requests. Moreover, Mattel does

14   not appear to be precluded from providing documents it has in its possession

15   concerning CARU, only from subpoenaing CARU for such documents. In any

16   event, Mattel has had ample time to clear up any confidentiality issues with CARU,

17   to the extent there are any, and now should be compelled to produce documents

18   responsive to this request.

19           3.   Mattel refused to produce documents relating to attempts by Mattel

20               to price "MY SCENE" below BRATZ  (Doc. Req. No. 43.)

21       Such documents are likely to lead to admissible evidence relating to whether

22   Mattel has an organic process for setting its prices, or whether it set its prices based

23   on confidential information illicitly obtained from MGA. As such, these

24   documents would be relevant to MGA's unfair competition and serial copycatting

25   claims and Mattel should be compelled to produce them.

26

27   ────────────

   [30] Glad Decl. ¶ 4.

28      [31] Id.

13

EXHIBIT

PAGE     590

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

4.   Mattel has refused to produce documents relating to communications between Mattel and buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one of its lines.  (Doc. Req. No. 47.)

These documents are directly relevant to MGA's assertion in ¶79 of its Complaint that "Mattel has falsely told a major United States retailer that MGA was giving another major United States retailer below-market pricing and falsely told a United Kingdom retailer that MGA was discontinuing one of its lines" and thus to MGA's unfair competition claims.  As such, Mattel should be compelled to produce documents in its possession that relate to these or any similar communications.

5.   Mattel refused to produce documents relating to communications between Mattel and any buyers, merchandisers, general merchandise managers, retailers, suppliers, licensees, and potential licensees, relating to BRATZ, Larian or MGA regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of BRATZ or any other MGA product.  (Doc. Req. Nos. 48-50.)

These communications are directly relevant to MGA's assertions in ¶¶76-79 of its Complaint that Mattel interfered with its business dealings with third parties and thus are likely to lead to admissible evidence to MGA's claims for unfair competition and/or unfair business practices.  As such, Mattel should be compelled to produce documents in its possession that relate to any such communications.

6.   Mattel refused to produce documents relating to communications between Mattel and any public relations firms, members of the press, current or former MGA employees, or former Mattel employees, relating to BRATZ, Larian or MGA regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of BRATZ or any other MGA product. (Doc. Req. Nos. 51-55.)

At the heart of MGA's claims against Mattel is the allegation -- the truth of which is apparent from even a quick glace at Mattel's products -- that Mattel has engaged in serial imitation of MGA products in an orchestrated attempt to dilute their distinctiveness, create confusion in the marketplace and unfairly compete with MGA. The communications MGA seeks pertain directly to those allegations and are very likely to lead to admissible evidence relating to key issues in this case, such as the creation and ownership of BRATZ, Mattel's knowledge and awareness of BRATZ products and marketing and its attempt to imitate those products and dilute their distinctiveness, and MGA's other unfair competition claims. As such, Mattel should be compelled to produce documents in its possession that relate to any such communications.

7.   Mattel refused to produce documents relating to business dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and MGA. (Doc. Req. Nos. 56-58.)

MGA's request is specifically tailored to relate to documents in Mattel's possession, custody or control concerning MGA's business dealings with licensees, suppliers, manufacturers, retailers, distributors, or merchandisers and is not seeking all documents regarding Mattel's business dealings with these parties unrelated to MGA. Any such documents in Mattel's possession are likely to lead to admissible evidence relating to MGA's claims that Mattel interfered with MGA's business dealings with third parties, as alleged in ¶¶76-79 of MGA's Complaint and are therefore relevant to MGA's unfair competition claims. As such, Mattel should be



EXHIBIT 20
PAGE 592

15

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    compelled to produce documents in its possession that relate to any such
2    communications.

8.    Mattel refused to produce documents relating to (a) any interference
with or inhibition of the licensing or potential licensing of MGA's
products, or relating to any limitations or restrictions on any MGA
licensee (Doc. Req. Nos. 59, 62-63); (b) any third party's licensing or
potential licensing of MGA products (Doc. Req. No. 60); and (c)
communications between Mattel and MGA's licensees and
distributors referring to MGA, BRATZ or the claims in this lawsuit.
(Doc. Req. Nos. 99, 101.)

As alleged in MGA's Complaint, one prong of Mattel's multi-faceted attack
was to exert its influence on retailers and other third parties not to do business with
MGA. Indeed, MGA specifically alleged, in ¶76 of its Complaint, that as of part of
this campaign, Mattel has "warned a number of companies, including the biggest
publishing entity in the United Kingdom, not to license MGA products, or risk
retribution," and that Mattel "terminated one of its licensees, apparently in
retribution for licensing BRATZ."   The documents MGA requests therefore are not
only directly relevant to MGA's specific allegations but are likely to lead to the
discovery of admissible evidence related to MGA's claims for unfair competition
and/or unfair business practices more generally.   As such, Mattel should be
compelled to produce documents in its possession which relate to any such
communications.

9.    Mattel refused to produce documents relating to (a) any third party's
agreement or decision not to license, manufacture, promote,
distribute or sell MGA products or supply materials or services to
MGA, or to limit, restrict, curtail or reduce such activities (Doc. Req.
Nos. 64-65.); and (b) any interference with or inhibition of the supply
of goods or services to MGA, or of MGA's distribution of its
products.   (Doc. Req. Nos. 66-67.)

As with the communications discussed above, these documents are directly

EXHIBIT   20
PAGE      593

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

relevant to MGA's claims that Mattel interfered with MGA's business dealings with distributors, retailers, and other third parties, as alleged in ¶¶76-79 of MGA's Complaint, and therefore is likely to lead to the discovery of admissible evidence related to MGA's claims for unfair competition and/or unfair business practices. As such, Mattel should be compelled to produce documents in its possession which relate to any such communications.

> 10. Mattel refused to produce communications between Mattel and Nickelodeon, the Cartoon Network or 4kids Entertainment, referring to MGA, BRATZ or Larian. (Doc. Req. Nos. 102-104.)

Such documents are likely to lead to admissible evidence relating to MGA's claims that Mattel interfered with MGA's business dealings with third parties and therefore is relevant to MGA's claims for unfair competition and/or unfair business practices. As such, Mattel should be compelled to produce documents in its possession which relate to any such communications.

## IV.   MATTEL SHOULD BE SANCTIONED

Under the Federal Rules, a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified..." Fed. R. Civ. P. 37(a)(4). The party being sanctioned has the burden of establishing substantial justification. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). Independently, sanctions may be imposed pursuant to 28 U.S.C. §1927, when a party "unreasonably and vexatiously" multiplies the proceedings.

Sanctions are appropriate here. Mattel does not have any legitimate basis for its repeated failure to produce clearly responsive documents on matters central to MGA's claims. Mattel has asserted a variety of general and specific objections that



EXHIBIT 20
PAGE 594

17
MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

have no basis in law or fact.  Moreover, Mattel continuously shifts its basis for withholding certain documents, making it virtually impossible for MGA to resolve discovery disputes with Mattel -- even via the meet and confer process.  MGA has made every effort to resolve the discovery issues raised in this brief with Mattel, but to no avail.  As such, Mattel and its counsel should be sanctioned for the fees and costs MGA has been forced to expend as a result of Mattel's evasions in connection with its document production.  MGA therefore requests that MGA be ordered to pay $4,700.00 as partial reimbursement of the fees and costs that MGA has incurred in making this motion.[32]

## V.   CONCLUSION

WHEREFORE, for the foregoing reasons, MGA respectfully requests that the Court: order Mattel to immediately produce their documents, and provide MGA such further relief as may be appropriate.

Dated: April 12, 2007                    O'MELVENY & MEYERS LLP



By:  Michael Keats
Attorneys for MGA Entertainment, Inc.

---

[32] Glad Decl. ¶5.

EXHIBIT    20
PAGE      595

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1

## **PROOF OF SERVICE**

2

I, Karen A. Nakatsu, declare:

3

I am a resident of the State of California and over the age of eighteen years, and
not a party to the within action; my business address is 400 South Hope Street, Los Angeles,
California 90071-2899. On April 13, 2007, I served the within document(s):

4

5

**MGA ENTERTAINMENT INC.'S MOTION TO COMPEL**

6

    ☒    by putting a true and correct copy thereof, together with an unsigned copy of this
declaration, in a sealed envelope designated by the carrier, with delivery fees paid
or provided for, for delivery the next business day to the person(s) listed below,
and placing the envelope for collection today by the overnight courier in
accordance with the firm's ordinary business practices. I am readily familiar with
this firm's practice for collection and processing of overnight courier
correspondence. In the ordinary course of business, such correspondence collected
from me would be processed on the same day, with fees thereon fully prepaid, and
deposited that day in a box or other facility regularly maintained by FedEx, which
is an express carrier.

7

8

9

10

11

Sandra Chan
Case Manager
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
schan@jamsadr.com

12

13

14

15

    ☒    by causing to be personally served the document(s) listed above to the person(s)
listed below.

16

17

Timothy Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
talger@quinnemanuel.com

18

19

20

I declare under penalty of perjury under the laws of the United States that the
above is true and correct.

21

22

Executed on April 13, 2007, at Los Angeles, California.

23

24

*Karen A. Nakatsu*
_____
Karen A. Nakatsu

25

26

27

28

LA2:822283.1

EXHIBIT 20
PAGE 596

# EXHIBIT 21

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                EASTERN DIVISION

11

12                                      CASE NO. CV 04-09049 SGL (RNBx)
                                        JAMS Reference No. 1100049530
13  CARTER BRYANT, an individual,

14          Plaintiff,
                                        Consolidated with
15      v.                              Case No. CV 04-09059
                                        Case No. CV 05-2727
16  MATTEL, INC., a Delaware corporation,
                                        **ORDER GRANTING IN PART**
17          Defendant.                  **MATTEL'S MOTION TO COMPEL**
                                        **MGA TO PRODUCE**
18                                      **COMMUNICATIONS REGARDING**
                                        **THIS ACTION**
19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                        I. INTRODUCTION

24      On February 4, 2008, Mattel, Inc. ("Mattel") submitted a "Motion to Compel MGA to

25  Produce Communications Regarding this Action."  On February 11, 2008, MGA Entertainment,

26  Inc., Isaac Larian, MGA Entertainment (HK) Limited and MGAE de Mexico S.R.L. de C.V.

27  (collectively "MGA") submitted an opposition.  On February 14, 2008, Mattel submitted a reply.

28  On April 9, 2008, Mattel submitted the Second Supplemental Declaration of Dylan Proctor in

    Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

4-14

EXHIBIT  21
PAGE  597

1    support of its motion.  The matter was heard on April 11, 2008.

2                                II. BACKGROUND

3          In March of 2005, Mattel propounded its First Set of Requests for Production of

4    Documents and Tangible Things.  Request No. 48 in Mattel's First Set of Requests, the only

5    request at issue in this motion, sought from MGA "[a]ll non-privileged COMMUNICATIONS

6    between YOU and any PERSON that REFER or RELATE TO this action."  MGA objected to the

7    Request on several grounds, including relevancy, overbreadth and undue burden.

8          In January of 2008, Mattel wrote to MGA to request a meet and confer conference

9    regarding Request No. 48.  Mattel offered to narrow the Request to "communications that refer or

10   relate to this action that (i) involve at least one MGA employee who holds or held a position of

11   manager or higher; (ii) involve MGA's agents and/or attorneys acting on MGA's behalf; or (iii)

12   involve a former Mattel employee who communicated about this action while employed by

13   MGA, regardless of title."  Mattel's Motion at p.4.  In response, MGA agreed to search for and

14   produce management-level communications if Mattel would agree to pay the costs.  The parties

15   were unable to reach any agreement regarding Request No. 48, and consequently Mattel filed the

     instant motion.

16         Mattel seeks an order compelling MGA to produce documents responsive to Request No.

17   48, as narrowed during the meet and confer process.  Mattel contends that the requested

18   communications are likely to lead to impeachment evidence and information about witness biases.

19   Mattel also contends that the requested communications are likely to lead to evidence to support

20   its RICO claims, and in particular, its allegation that MGA has induced Mattel employees to steal

21   Mattel's confidential information or other property and take it with them to MGA, and its

22   allegation that MGA has engaged in spoliation of evidence.

23         Mattel contends that Request No. 48, as narrowed, is limited to MGA's core personnel, its

24   authorized agents and attorneys who communicate about this action, and former Mattel

25   employees at MGA.  Mattel contends that these three groups represent a finite, reasonable list of

26   individuals whose communications about this case are likely to be relevant.  Mattel also contends

27   that cost-shifting is not appropriate because the discovery it seeks is not unduly burdensome.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    2

EXHIBIT  2 '
PAGE     598

1    MGA objects to the narrowed version of the Request. In MGA's view, the Request

2    remains a generalized catch-all request for communications that might be related in any

3    conceivable way to the case. MGA also objects to the Request because of the sheer number of

4    MGA employees who would fall within its scope (*i.e.*, 204 MGA employees who hold or held a

5    position of manager or higher and approximately 70 former Mattel employees who have worked

6    for MGA) and the cost associated with searching and reviewing employees' files. MGA further

7    contends that Mattel's request for non-privileged communications from MGA's current or prior

8    counsel that refer to this litigation is particularly burdensome for several reasons, including the

9    length of time this case has been pending, the number of firms and attorneys involved, and the

10   difficulty of sorting out privileged communications from non-privileged communications. MGA

11   contends that MGA's motion should also be denied because Request No. 48 is cumulative and

12   duplicative of other discovery Mattel has sought and obtained in this case. In the event the court

13   grants Mattel's motion in any respect, MGA requests that the court shift costs and order Mattel to

     pay the cost associated with the collection, review and production of responsive documents.

14        Mattel's most recent submission indicates that during the meet and confer process, MGA

15   agreed to search for and produce, at its own expense, communications relating to this action

16   involving senior MGA personnel and former Mattel employees, if Mattel would limit its request

17   to ten individuals. Mattel countered MGA's proposal with a list of twenty-three individuals.

18   Mattel contends that, at the very least, MGA should be ordered to produce non-privileged

19   communications relating to this action involving the following MGA personnel and former Mattel

20   employees, as well as MGA's counsel: (1) Isaac Larian, (2) Paula Garcia, (3) Maria Elena Salazar,

21   (4) Margaret Leahy, (5) Mercedeh Ward, (6) David Malacrida, (7) Ron Brawer, (8) Daphne

22   Gronich, (9) Craig Holden, (10) Jeanine Posini, (11) Bryan Armstrong, (12) Samir Khare, (13)

23   Janine Brisbois, (14) Carlos Gustavo Machado Gomez, (15) Mariana Trueba Almada, (16) Pablo

24   Vargas San Jose, (17) Susanna Kuemmerle, (18) Schuyler Bacon, (19) Nanette Black, (20) Nick

25   Contreras, (21) Dan Cooney, (22) Jorge Castilla and (23) Jill Hatch. Second Supp. Proctor Decl.

26                              III. STANDARDS

27        In general, parties may obtain discovery regarding any matter, not privileged, that is

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                    3

EXHIBIT 21
PAGE   599

relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). All discovery, however, "is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed.R.Civ.P. 26(b)(1). Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court must limit the frequency or extent of use of discovery otherwise allowed by the Federal Rules of Civil Procedure or by local rule if the court determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C).

## IV. DISCUSSION

To the extent Mattel seeks full compliance with the narrowed version of Request No. 48, Mattel's motion is denied. Even as narrowed, Request No. 48 requires the production of communications concerning a very broad subject matter, namely communications "that REFER or RELATE to this action."[1]

The narrowed Request is also objectionable because it is not reasonably tailored to seek the information that Mattel claims it needs. With respect to Mattel's purported need for evidence relating to witness credibility and bias, the Request is not limited to any particular witness or groups of witnesses in the case. The Request is also not limited to pertinent subject matters, such as the preservation or spoliation of evidence, a witness' prospective testimony, or MGA's offers or agreements to pay the witness' fees. Furthermore, with respect to Mattel's purported need for evidence to support its RICO claims, the requested discovery is premature in light of the stay on Phase 2 discovery.

---

[1] In its reply brief, Mattel attempts to defend its Request as "well-defined in subject matter" by explaining that it is only seeking "communications relating to testimony in, or knowledge or information about, this action; or relating to gathering and collecting documents in this action; or destroying or altering evidence; or payments relating to this action." Mattel's Reply at p. 1. Mattel, however, did not propose any of these subject matter limitations previously. Even if it had, the breadth of the narrowed Request would still be unjustified under Rule 26(b)(2)(C), Fed.R.Civ.P.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 21
PAGE 600

The narrowed Request is also unduly burdensome insofar as Mattel seeks non-privileged communications from MGA's current or prior counsel that refer to this litigation. This litigation has been ongoing for nearly four years, during which time discovery has been extensively and aggressively pursued by both sides. Furthermore, to comply with Mattel's narrowed Request, MGA would have to review a considerable number of attorneys' files from the three separate law firms that have represented MGA, and scrutinize every attorney communication for privilege. Under these circumstances, the burden and expense of culling and producing the requested communications involving MGA's attorneys substantially outweigh their likely benefit, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

The narrowed Request also remains overbroad and unduly burdensome because of the number of MGA employees that would fall within its scope. By MGA's estimations, there are 204 MGA employees who hold or have held a position of manager or higher, and approximately 70 former Mattel employees who have worked for MGA. Requiring MGA to review the files of so many employees for potentially responsive communications is unwarranted taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.[2]

Request No. 48 is also cumulative and duplicative of discovery that Mattel has sought and obtained in this case. By MGA's calculations, it has produced more than 4.2 million pages of documents in response to over 2700 document requests, several of which call for documents that are also responsive to Request No. 48. See e.g. Mattel's First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Nos. 7-9, 12, 44; Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Nos. 31, 49, 50; Mattel's First Set of Requests for Documents and Things to Isaac Larian Nos. 118, 147, 153, 193; and Mattel's Subpoena to Farhad Larian, Request No. 25.

Nevertheless, the court has considered Mattel's eleventh hour request for production of communications involving the twenty-three individuals identified above. Based upon the

---

[2] In its reply brief, Mattel proposes that, at the least, its Request should be granted as to communications involving MGA's senior employees. Mattel's Reply at pp. 1, 10. Although Mattel's proposal reduces the total number of communications involving MGA employees, it is not enough to tip the balance of benefit and burden to justify the Request.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 21
PAGE 601

information provided in Mattel's supplemental submission, it is evident that communications involving more than half of the individuals identified above may be relevant, if at all, to Phase 2 issues. In view of the stay on Phase 2 discovery, Mattel's request is denied as to the following individuals: Ron Brawer, Janine Brisbois, Carlos Gustavo Machado Gomez, Mariana Trueba Almada, Pablo Vargas San Jose, Susanna Kuemmerle, Schuyler Bacon, Nanette Black, Nick Contreras, Dan Cooney, Jorge Castilla and Jill Hatch.

Daphne Gronich, Craig Holden, Jeanine Posini, Bryan Armstrong and Samir Khare have been or currently are employed in MGA's legal department. As discussed previously, the burden and expense of culling and producing communications involving these five individuals outweigh the likely benefit of the discovery, taking into consideration the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P. Therefore, Mattel's request is denied as to these five individuals.

Mattel's request is granted as to the remaining individuals, namely, Isaac Larian, Paula Garcia, Maria Elena Salazar, Margaret Leahy, Mercedeh Ward, and David Malacrida. Based upon the information provided in Mattel's supplemental submission, communications about this case involving these individuals are likely to be relevant.

## V. CONCLUSION

For the reasons set forth above, Mattel's Motion to Compel MGA to Produce Communications Regarding This Action is granted with respect to communications involving Isaac Larian, Paula Garcia, Maria Elena Salazar, Margaret Leahy, Mercedeh Ward and David Malacrida. Mattel's motion is denied in all other respects.

Nothing in this Order is intended to authorize or preclude Mattel from seeking additional documents responsive to Request No. 48 as part of Phase 2 discovery.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: April 14, 2008

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT PAGE 602

# EXHIBIT 22

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12  CARTER BRYANT, an individual,         CASE NO. CV 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
13          Plaintiff,

14      v.                                Consolidated with
                                          Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

16          Defendant.                    **ORDER DENYING MGA'S MOTION
                                          TO COMPEL MATTEL TO PRODUCE
17                                        EMAIL AND OTHER ELECTRONIC
                                          DOCUMENTS; DENYING REQUEST
18                                        FOR SANCTIONS**

19  CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22

23                         I. INTRODUCTION

24      On January 16, 2008, MGA Entertainment, Inc. ("MGA") submitted a "Motion to Compel

25  Mattel to Produce Email." More specifically, MGA seeks an order compelling Mattel, Inc.

26  ("Mattel") "to certify that it has produced all non-privileged email responsive to MGA's and

27  Bryant's document requests and not withheld any such email based on cost concerns and, in the

28  Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

4·24

EXHIBIT  22
PAGE     603

1    absence of such a certification, an order requiring Mattel to produce all non-privileged, responsive

2    email." MGA's Motion at p. i.  MGA also requests an award of costs pursuant to Rule

3    37(b)(2)(C), Fed.R.Civ.P.  On January 31, 2008, Mattel submitted an opposition, and on February

4    5, 2008, MGA submitted a reply.  The motion was heard on February 11, 2008, at which time the

5    court found that the parties had not satisfied their obligation to meet and confer and directed them

6    to do so.  On February 21, 2008, the parties met and conferred.  On March 28, 2008, the parties

7    submitted a joint report in which they represented that they had met and conferred regarding this

8    motion.  On April 8, 2008, counsel for Mattel submitted a supplemental declaration, and on April

9    10, 2008, MGA's counsel submitted a declaration in response.  The motion was heard on April 11,

10   2008.

11                                    II. BACKGROUND[1]

12           On May 22, 2007, the court issued an Order Granting in Part and Denying in Part MGA's

13   Motion to Compel Documents Responsive to First Set of Requests for Production of Documents.

14   As the May 22, 2007 Order reflects, the court considered all of Mattel's objections to each of the

15   requests at issue, including Mattel's objection to searching and producing emails, and granted

16   MGA's motion as to numerous requests.  On September 12, 2007, the court issued an Order

17   Granting in Part and Denying in Part MGA's Motion to Compel Mattel to Supplement Responses

18   and Produce Documents Responsive to First Set of Requests for Production of Documents and

19   Things; Denying Request for Sanctions.

20           After reviewing Mattel's production, MGA determined that the few thousand emails

21   produced appear to have been produced from existing hard copy files rather than from electronic

22   files.  MGA also concluded that the number of emails produced by Mattel was exceedingly low

23   when compared to MGA's production of emails.  MGA estimates that its production to Mattel

24   consisted of approximately 19,500 email messages and more than 20,000 email attachments.

25

26   ──────────────

27        [1] Because the parties are familiar with the procedural history of this motion, the "Background" section set
     forth herein includes only a brief summary of that history and a brief summary of the parties' main contentions.

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              2

EXHIBIT   22
PAGE      604

1    Therefore, MGA requested to meet and confer with Mattel to understand whether and to what

2    extent Mattel had searched for and produced responsive emails.

3         Dissatisfied with counsel's representations regarding the scope of Mattel's searches for

4    emails, and in particular archived and backed up emails, MGA filed the instant motion. MGA

5    contends that Mattel "should be ordered to certify that it has (i) produced all non-privileged email

6    responsive to all document requests as to which Mattel either agreed to produce responsive

7    documents or has been ordered to produce responsive documents, and (ii) not withheld any such

8    email based on cost concerns." MGA's Motion at p.11. If Mattel cannot provide such a

9    certification, MGA contends that Mattel "should be ordered immediately to produce all non-

10   privileged, responsive email, including archived email and email stored on backup tapes." Id.

11        Mattel contends that it has complied with court orders regarding production of

12   documents, having conducted a "reasonable search" for responsive documents. Mattel represents

13   that it searched various electronic media in its possession that were likely to have responsive

14   documents. Mattel's Opposition at p. 6. Mattel also represents that it has conducted reasonable

15   searches of every electronic data compilation identified by MGA in the instant motion. Mattel,

16   however, acknowledges that it has not searched its e-mail server backup tapes. Id. at p. 1. Mattel

17   contends that the burden and expense of searching its e-mail server backup tapes far outweigh the

18   likely benefit of the search. Mattel also contends that if it is ordered to conduct such a search, the

19   cost should be borne by MGA.

20        In the supplemental declaration submitted on April 10, 2008, MGA outlines a proposal for

21   a search of Mattel's backup tapes. Specifically, MGA proposes that Mattel search email backup

22   tapes of the accounts of all the individuals the parties have listed in their respective initial

23   disclosures, using the keywords MGA, NHB, Bratz, Larian and Bryant. MGA also proposes that

24   Mattel conduct the search at 85 day intervals. Eckles Decl., ¶4.

25        Mattel, however, continues to object to searching its email backup tapes based upon

26   relevancy and burden grounds. Mattel contends that the email backup tapes that still exist at

27   Mattel would not contain documents relevant to the Phase I trial. Supp. Alger Decl. Mattel also

28

EXHIBIT   22
PAGE      605

1   contends that the terms MGA, Bratz and Larian are likely to draw many thousands of false "hits."

2   Mattel further contends that a search based on terms such as MGA, Bratz and Larian would sweep

3   up a far broader universe of documents than has ever been ordered in the case.

4   III. STANDARDS

5       In general, parties may obtain discovery regarding any matter, not privileged, that is

6   relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). The Federal Rules of Civil

7   Procedure, however, impose specific limitations on discovery of electronically stored information.

8   "A party need not provide discovery of electronically stored information from sources that the

9   party identifies as not reasonably accessible because of undue burden or cost." Fed.R.Civ.P.

10  26(b)(2)(B). "On motion to compel discovery or for a protective order, the party from whom

11  discovery is sought must show that the information is not reasonably accessible because of undue

12  burden or cost. If that showing is made, the court may nonetheless order discovery from such

13  sources if the requesting party shows good cause, considering the limitations of Rule

14  26(b)(2)(C)." Id.

15      According to the Advisory Committee Notes to the 2006 Amendments to Rule 26, "[t]he

16  decision whether to require a responding party to search for and produce information that is not

17  reasonably accessible depends not only on the burdens and costs of doing so, but also on whether

18  those burdens and costs can be justified in the circumstances of the case." The Advisory

19  Committee Notes suggest that courts consider the following: "(1) the specificity of the discovery

20  request; (2) the quantity of information available from other and more easily accessed sources; (3)

21  the failure to produce relevant information that seems likely to have existed but is no longer

22  available on more easily accessed sources; (4) the likelihood of finding relevant, responsive

23  information that cannot be obtained from other, more easily accessed sources; (5) predictions as

24  to the importance and usefulness of the further information; (6) the importance of the issues at

25  stake in the litigation; and (7) the parties' resources." Advisory Comm. Notes to 2006 Amend. to

26  Rule 26.

27      Further, all discovery "is subject to the limitations imposed by Rule 26(b)(2)(C)."

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          4

EXHIBIT 22
PAGE 606

1   Fed.R.Civ.P. 26(b)(1).  Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court must limit the

2   frequency or extent of use of discovery otherwise allowed by the Federal Rules of Civil Procedure

3   or by local rule if the court determines that: "(i) the discovery sought is unreasonably cumulative

4   or duplicative, or can be obtained from some other source that is more convenient, less

5   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to

6   obtain the information by discovery in the action; or (iii) the burden or expense of the proposed

7   discovery outweighs its likely benefit, considering the needs of the case, the amount in

8   controversy, the parties' resources, the importance of the issues at stake in the action, and the

9   importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C).

10       Rule 34, Fed.R.Civ.P., was also amended to take into account developments in

11   information storage and technology, and now provides that a party may serve a request for

12   electronically stored information.  Thus, emails are no less subject to discovery than paper

13   documents.  See e.g. Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317 (S.D. N.Y. 2003)

14   ("[E]lectronic documents are no less subject to disclosure than paper records.  [citation omitted]

15   This is true not only of electronic documents that are currently in use, but also of documents that

16   may have been deleted and now reside only on backup disks.").

17                                   IV. DISCUSSION

18       The searches Mattel has conducted to date for electronic information are adequate to

19   discharge its obligation under Rule 34.  Mattel represents that it has searched electronic data

20   compilations including, but not limited to:  (a) over 130 hard drives used or potentially used at

21   Mattel's El Segundo headquarters and at Mattel's Design Center during the relevant period,

22   referred to in Exhibit C to Michael Moore's Affidavit in Support of Mattel's Opposition to MGA's

23   Motion for Terminating Sanctions ("Moore Affidavit"); (b) the archived e-mail in the form of

24   Outlook archive or "pst" files of 38 Mattel employees who may have sent e-mail messages to

25   Carter Bryant or other messages related to this litigation, identified in Exhibit B to the Moore

26   Affidavit; (c) the hard drives and mailboxes of many former and current Mattel employees whose

27   names have appeared in the litigation, including Lily Martinez, Sharon Zuckerman, April Walker,

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    5

EXHIBIT 22
PAGE 607

1   Ronnie Ruggeri, Juan Rodriguez, Cassidy Beal-Park, Jill Nordquist, Bill Martinez, Rita Liu, Erica

2   Kane, Katiana Jiminez, Hoi Hoffman, Kitti Hammons, Ei Fong, Ann Driskill, Patricia Chan,

3   Robert Best, Kelly Matheny, Vived Gonzalez, Carmen Monteagudo, Megan Sepanik, Elizabeth

4   Arriola, Ariana Sarinana, Tina Tomiyama, Michael Hebden, Desiree Rouquillo, Ivy Palijo, James

5   Mills-Winkler, Mina Mirkazemi, V. Karpio, J. Holmes, and Daniel Leahy; (d) the e-mail

6   messages received by Mattel employees from specific locations relevant to this litigation on the

7   Internet, including "mgae.com"; (e) more than 184 gigabytes of e-mail messages and attachments

8   gathered by Mattel's automated security tool that monitored e-mail messages coming into and

9   going out of Mattel for certain keywords relating to Bratz, MGA and related issues; (f) the

10  mailboxes and hard drives of many employees who left Mattel after May 2, 2005; and (g) the

11  information on the SYMM used by Mattel for network storage in El Segundo prior to 2003.

12  Mattel also represents that it has produced over 9,900 e-mails to date.

13        In response to the instant motion, Mattel has shown that the electronic information MGA

14  now seeks is not reasonably accessible because of undue burden and cost.  Mattel contends that a

15  search of the backup tapes from its El Segundo e-mail servers would be prohibitively expensive.

16  Mattel estimates that the necessary hardware and software to perform a search would cost at least

17  $25,000 and $15,000, respectively.  Further, there are hundreds of terabytes of data on Mattel's

18  email server backup tapes.  Mattel estimates that the restoration of just one nightly backup tape

19  from the e-mail servers would cost approximately $1400 in flat fees and take at least fifteen man

20  hours at a cost of $5,000.  In addition, Mattel estimates that the cost of extracting the data from

21  just one nightly backup tape, searching it, and then reviewing it would take at least 80 man hours,

22  at a cost of at least $30,000.  Based upon these figures, Mattel estimates that the total cost for

23  restoring and searching all of its backup tapes would cost tens of millions of dollars.  These

24  estimates do not include the cost of a paralegal or attorney reviewing the electronic information.

25        MGA has not shown the requisite good cause to justify compelling Mattel to search for

26  and produce the requested electronic information, taking into consideration the circumstances of

27  this case.  The number of potentially relevant emails is likely to be modest relative to the number

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT  22
PAGE  608

1   of non-responsive and irrelevant emails in the backup tapes.  Furthermore, the likelihood of

2   identifying and producing potentially relevant emails beyond the emails that have already been

3   produced by Mattel is small based upon Mattel's representations that "(i) with respect to the

4   claims relating to origin and ownership of Bratz, aside from e-mails voluntarily saved by

5   employees and already searched and produced by Mattel, e-mails from before mid-December

6   2004 (including the key, year 2000 time period) have long been deleted from Mattel servers and

7   cannot be found on the back-up tapes," and "(ii) with respect to the other claims at issue in this

8   litigation, Mattel has already interviewed dozens of employees and had collected electronic files

9   bearing on these claims from those witnesses, as well as thousands of electronic documents from

10   the SYMM and Zeus servers relating to the unfair competition claims made by MGA, including,

11   but not limited to, marketing and design documents for MY SCENE, WEE THREE,

12   ACCELERACERS, and LITTLE MOMMY."  Mattel's Opposition at pp.17-18.

13         Furthermore, it bears emphasizing that the parties have pursued extraordinarily extensive

14   discovery in this case.  The parties have propounded hundreds of document requests,

15   interrogatories and requests for admission directed at every conceivable issue encompassed in

16   Phase 1.  The document production has been exceedingly voluminous.  The parties have also

17   taken several hundreds of hours of deposition testimony, if not more.  Thus, MGA has had ample

18   opportunity to obtain discovery in this action, and the discovery MGA now seeks is unreasonably

19   cumulative and duplicative.  Furthermore, the burden and expense of requiring Mattel to produce

20   the requested electronic discovery substantially outweigh the likely benefit of the discovery

21   sought, considering the needs of the case, the amount in controversy, the parties' resources, the

22   importance of the issues at stake in the action, and the importance of the discovery in resolving

23   the issues.

### V. CONCLUSION

25       For the reasons set forth above, MGA's motion to produce email and other electronic

26   documents is denied pursuant to Rules 26(b)(2)(B) and 26(b)(2)(C) of the Federal Rules of Civil

27   Procedure.  MGA's request for an award of costs pursuant to Rule 37(b)(2)(C), Fed.R.Civ.P, is

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 22
PAGE 609

1   also denied.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3   Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5   Dated: April 24, 2008

                                    _Edward Infante_
                                    HON. EDWARD A. INFANTE (Ret.)
6                                       Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                        8

EXHIBIT   22
PAGE   610

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 24 2008, I served the attached ORDER DENYING MGA'S MOTION TO COMPEL MATTEL TO PRODUCE EMAIL AND OTHER ELECTRONIC DOCUMENTS; DENYING REQUEST FOR SANCTIONS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 24, 08, at San Francisco, California.

_Sandra Chan_ (signature)

Sandra Chan

EXHIBIT 22
PAGE 611

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 4/24/2008 at 12:03 PM PDT and filed on 4/24/2008

**Case Name:**          Carter Bryant v. Mattel Inc
**Case Number:**      2:04-cv-9049
**Filer:**                    Mattel Inc
**Document Number:** 3276

**Docket Text:**
Order Denying MGA's Motion to Compel Mattel to Produce Email and Other Electronic Documents; Denying Request for Sanctions filed by Defendant Mattel Inc (Proctor, Brett)

### 2:04-cv-9049 Notice has been electronically mailed to:

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Linda M Burrow    burrow@caldwell-leslie.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com, feseroma@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Scott E Gizer    sgizer@chrisglase.com

Melissa Grant    melissagrant@quinnemanuel.com

Emil W Herich    cherich@kmwlaw.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

EXHIBIT 4/24/2008 $2\mathcal{O}$
PAGE 612

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland    moverland@obsklaw.com, jhibino@obsklaw.com

Michael H Page    mhp@kvn.com, efiling@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

Rebekah L Punak    rpunak@kvn.com, lhartzlewis@kvn.com

John B Quinn    johnquinn@quinnemanuel.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

John Elliot Trinidad    jtrinidad@kvn.com, cparker@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

.

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Lauren E Aguiar
Skadden Arps Slate Meagher & Flom
1440 New York Ave
Washington, DC 20005-2111

Marina Vladimir Bogorad
Skadden Arps Slate Meagher & Flom
300 S Grand Ave, Ste 3400
Los Angeles, CA 90071-3144

David W Foster
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW

EXHIBIT    4/24/2008
PAGE    6 1 3

Washington, DC 20005-2111

Michael P Kelly
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

James E Lyons
Skadden Arps Slate Meagher & Flom
4 Embarcadero Center
Ste 3800
San Francisco, CA 94111-5974

Nathan Meyer
Kaye Scholer
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order re Email Production.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/24/2008] [FileNumber=5742850-0]
[281901ff5a0945da3d622809f90a88022101529ca9d63139dccc8b1434991c2991bb
5570a045b35587b354ef2d3913cc51a89f189f1f6315386178676258bd03]]

EXHIBIT  20
PAGE  6   4/24/2008

# EXHIBIT 23

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
        John B. Quinn (Bar No. 090378)
2        (johnquinn@quinnemanuel.com)
        Michael T. Zeller (Bar No. 196417)
3        (michaelzeller@quinnemanuel.com)
        Jon D. Corey (Bar No. 185066)
4        (joncorey@quinnemnauel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6    Facsimile:  (213) 443-3100

7    Attorneys for Mattel, Inc.

8    [Additional counsel listed on following page]

9

10                   UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12   CARTER BRYANT, an individual,        )   Case No. CV 04-09049 SGL (RNBx)
                                           )
13                  Plaintiff,             )   Consolidated with
                                           )   Case No. CV 04-09059
14        v.                               )   Case No. CV 05-02727
                                           )
15   MATTEL, INC., a Delaware              )   STIPULATION FOR APPOINTMENT
     corporation,                          )   OF A DISCOVERY MASTER; AND
16                                         )
                    Defendant.             )   [PROPOSED] ORDER
17                                         )
                                           )   Discovery Cutoff Date:  Not Set
18                                         )   Trial Date:  Not Set

19

20

21

22

23

24

25

26

27                                         EXHIBIT  22
                                           PAGE _____ 615
28

1  LITTLER MENDELSON
       Robert F. Millman (Bar No. 062152)
2      Douglas A. Wickham (Bar No. 127268)
       Keith A. Jacoby (Bar No. 150233)
3  2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
4  Telephone:   (310) 553-0308
   Facsimile:   (310) 553-5583
5
   Attorneys for Carter Bryant
6
   O'MELVENY & MYERS LLP
7      Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
8  Los Angeles, California 90017
   Telephone:   (213) 430-6000
9  Facsimile:   (213) 430-6407

10 O'MELVENY & MYERS LLP
       Dale Cendali
11 Times Square Tower
   7 Times Square
12 New York, NY 10036

13 CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
       Patricia Glaser (Bar No. 55668)
14 10250 Constellation Boulevard - 19th Floor
   Los Angeles, CA 90067
15 Telephone: (310) 553-3000
   Facsimile: (310) 556-2920
16
   Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  23
PAGE  616

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 2 -

1    WHEREAS, the parties are in agreement that a discovery master should be
2  appointed in this matter to resolve any discovery disputes and to minimize the
3  burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5  (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7  trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8  Inc., by and through their respective counsel of record, hereby stipulate and agree as
9  follows:

10    1.    The Discovery Master shall be appointed to assure and provide cost-
11  effective discovery and to minimize the burden of discovery disputes upon the
12  Court. Any and all discovery motions and other discovery disputes in the above
13  captioned action shall be decided by a master ("Discovery Master") pursuant to
14  Federal Rule of Civil Procedure 53. Any motions currently pending before
15  Magistrate Judge Block shall be transferred to the Discovery Master. The moving
16  party shall provide to the Discovery Master all papers associated with each pending
17  motion.

18    2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.). His
19  business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20  94111.

21    3.    Judge Infante shall serve as the Discovery Master until all issues herein
22  have been finally disposed of or determined, or until he shall withdraw in
23  accordance with applicable law. If at any time he becomes unable to serve as the
24  Discovery Master, the parties shall confer to present an alternative agreed-upon
25  designee to the Court. In the event that the parties cannot agree to an alternate
26  designee, then the Court shall appoint a Discovery Master.

27    4.    The Discovery Master shall have the authority to set the date, time, and
28  place for all hearings determined by the Discovery Master to be necessary; to



EXHIBIT  23
PAGE  -617

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1    preside over hearings (whether telephonic or in-person); to take evidence in

2    connection with discovery disputes; to issue orders resolving discovery motions

3    submitted to the Discovery Master; to conduct telephonic conferences to resolve

4    discovery disputes arising during depositions; to issue orders awarding non-

5    contempt sanctions, including, without limitation, the award of attorney's fees, as

6    provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and

7    recommendations, as appropriate.

8        5.     All discovery disputes shall be resolved by motion (except those arising

9    during a deposition which the Discovery Master determines can be resolved by

10    telephonic conference during the deposition). The moving party shall first identify

11    each dispute, state the relief sought, and identify the authority supporting the

12    requested relief in a meet and confer letter that shall be served on all parties by

13    facsimile or electronic mail. The parties shall have five court days from the date of

14    service of that letter to conduct an in-person conference to attempt to resolve the

15    dispute. If the dispute has not been resolved within five court days after such

16    service, the moving party may seek relief from the Discovery Master by formal

17    motion or letter brief, at the moving party's option. The opposing party shall have

18    five court days from the date of service of the motion or letter brief to submit a

19    formal opposition or response. Any reply brief or letter brief shall be served within

20    three court days from the date of service of a formal opposition or response. The

21    hearing on the motion shall take place within five court days of the service of any

22    reply brief or letter unless (a) the parties agree to another hearing date or agree that

23    no hearing is necessary; (b) the Discovery Master determines that no hearing is

24    necessary; or (c) the Discovery Master is not available, in which case the hearing

25    shall take place on the Discovery Master's first available date. The foregoing shall

26    not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from

27    seeking the Discovery Master's immediate resolution of a dispute or resolution of a

28    dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT 22

PAGE -4- 618

STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER AND [PROPOSED] ORDER

1  prejudiced absent prompt resolution.  Service of any document by fax or electronic
2  mail prior to 6:00 p.m. shall constitute service on that day.

3      6.      The Discovery Master's orders resolving discovery disputes, reports, or
4  recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5  Magistrate Judge of the United States District Court.  The Discovery Master shall
6  file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7  the parties within five court days of his/her decision on a matter.

8      7.      A court reporter shall transcribe any hearing or other proceeding before
9  the Discovery Master.

10     8.      The cost of any proceeding before the Discovery Master, including the
11 fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12 other proceedings before the Discovery Master, and the fees of any other person
13 necessary to the efficient administration of the proceeding before the Discovery
14 Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15 Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16 the Discovery Master Orders otherwise.  By agreeing to share costs among the
17 parties, no party waives its right to seek recovery or reimbursement for such costs
18 from any other party.

19     9.      The Discovery Master shall be compensated according to his regular
20 hourly rate of $750.

21     10.     Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22 Master shall proceed with all reasonable diligence.

23     11.     Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24 28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25 aware that he has a relationship to the parties, to counsel, to the action, or to the
26 Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27 based thereon the parties expressly waive any ground for disqualification disclosed
28 therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT  22
PAGE    -5-  619

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

12. The Discovery Master shall not have ex parte communications with ~~the~~ ~~Court,~~ a party or counsel.

13. The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14. The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15. All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 22, 2006

O'MELVENY & MYERS LLP

By: _____
Diana Torres
Attorneys for MGA Entertainment, Inc.

Dated: November 29, 2006

LITTLER MENDELSON

By: _____
Douglas A. Wickham
Attorneys for Carter Bryant

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 6 -

EXHIBIT 23
PAGE 620

1 | Dated: ~~November~~ December 4, , 2006          QUINN EMANUEL URQUHART
2 |                                                 OLIVER & HEDGES, LLP

3 |                                                 By: _Jon D. Corey_____
4 |                                                      Jon D. Corey
                                                         Attorneys for Mattel, Inc.
5 |

6 |                              **ORDER**

7 |     The foregoing Stipulation for Appointment of a Discovery Master is SO

8 | ORDERED *as modified.*

9 |

10 | Dated:  _12-6-06._             _S.G. Larson_____
11 |                                 Hon. Stephen G. Larson
                                     United States District Court Judge
12 |

13 |

14 |                    **CONSENT OF DISCOVERY MASTER**

15 |     If appointed by the Court, I, the undersigned, consent to serve as Discovery

16 | Master in the above referenced proceeding consistent with this Order.

17 |

18 | Dated:  _12-5-06_              _Edward A. Infante_____
19 |                                Hon. Edward A. Infante (Ret.)

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

EXHIBIT 23
PAGE 621

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on  all interested parties in this action.

| | |
|---|---|
| **Keith A. Jacoby, Esq.**<br>**Douglas Wickham, Esq.**<br>**Littler Mendelson**<br>**A Professional Corporation**<br>2049 Century Park East, 5th Floor<br>Los Angeles, California 90067-3107<br>Phone: 310-553-0308<br>**Fax: 310-553-5583** | **Diana M. Torres, Esq.**<br>**O'Melveney & Meyers**<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>Phone: 213-430-6000<br>**Fax: 213-430-6407** |

[ ]    By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

**[X]    BY MAIL**

[ ]    I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]    **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Cheri Hatch
Print Name

Signature

EXHIBIT 23
PAGE 622

# EXHIBIT 24

EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 25

1               UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                     EASTERN DIVISION          **Certified Copy**

4

5       ----------------------------------

6    CARTER BRYANT, an individual,      )

7                        Plaintiff,     )

8        vs.                            )  Case Nos.

9    MATTEL, INC., a Delaware           )  CV 04-0904  (RNBx)

10   corporation,                       )  CV 04-9059

11                       Defendant.     )  CV 05-2727

12   ----------------------------------)

13   AND RELATED CONSOLIDATED ACTION.   )

14   ----------------------------------

15

16

17                TRANSCRIPT OF PROCEEDINGS

18

19                  FRIDAY, MAY 11, 2007

20

21

22

23

24

25   PAGES 1 - 38

                                                              1

EXHIBIT 25
PAGE 632

1

2

3

4

5

6

7

8          Transcript of Proceedings before

9          Honorable Edward A. Infante via

10         conference call commencing at 11:03 a.m.,

11         Friday, May 11, 2007, before Deborah

12         Lee Lubin, CSR No. 3234, RPR, CRP.

13

14

15

16

17

18

19

20

21

22

23

24

25

2

EXHIBIT 20
PAGE    633

```
 1   APPEARANCES:

 2

 3        PROCEEDINGS HELD BEFORE:

 4

 5             HONORABLE EDWARD A. INFANTE, RET.

 6             JAMS Resolution Center

 7             707 Wilshire Boulevard

 8             46th Floor

 9             Los Angeles, California 90017

10             213.620.1333

11

12        FOR MATTEL, INC.:

13

14             QUINN EMANUEL URQUHART OLIVER & HEDGES

15             BY: TIMOTHY L. ALGER, ESQ.

16                 CYRUS S. NAIM, ESQ.

17                 HEIDI FRAHM, ESQ.

18             865 South Figueroa Street

19             10th Floor

20             Los Angeles, California 90017

21             213.443.3000

22             timalger@quinnemanuel.com

23             cyrusnaim@quinnemanuel.com

24             heidifrahm@quinnemanuel.com

25
```

                                                                        3

EXHIBIT
PAGE            634

```
 1   APPEARANCES (CONTINUED):

 2

 3       FOR MGA ENTERTAINMENT, INC.:

 4

 5           O'MELVENY & MYERS LLP

 6           BY: DAVID HURWITZ, ESQ.

 7               JIM JENAL, ESQ.

 8               JENNIFER GLAD, ESQ.

 9           400 South Hope Street

10           10th Floor

11           Los Angeles, California 90071

12           213.430.6000

13           dhurwitz@omm.com

14           jjenal@omm.com

15           jglad@omm.com

16

17       FOR CARTER BRYANT:

18

19           LITTLER MENDELSON

20           (Did not appear)

21           2049 Century Park East

22           Fifth Floor

23           Los Angeles, California 90067

24           310.553.0308

25
                                                    4
```

```
 1    APPEARANCES (CONTINUED):

 2

 3        FOR CARTER BRYANT:

 4

 5            KEKER & VAN NEST LLP

 6            (Did not appear)

 7            710 Sansome Street

 8            San Francisco, California 94111

 9            415.397.7188

10

11        ALSO PRESENT:

12

13            MICHELLE TAKAMOTO,

14            Law Clerk to Judge Infante

15

16            MELANIE BRADLEY,

17            O'Melveny & Myers

18

19

20

21

22

23

24

25
```

                                                                        5

EXHIBIT

PAGE _____   636

```
1                    TRANSCRIPT OF PROCEEDINGS
2                     FRIDAY, MAY 11, 2007
3
4                  (Time noted as 11:03 a.m.)
5
6              THE COURT:  Good morning.
7              MR. HURWITZ:  Good morning.
8              MR. ALGER:  Good morning, your Honor.  This
9    is Timothy Alger on behalf of Mattel, Inc.  I am with
10   my associates, Cyrus Naim -- N-a-i-m -- and Heidi
11   Frahm -- F-r-a-h-m.
12             MR. HURWITZ:  Good morning, your Honor.
13   This is David Hurwitz from O'Melveny & Myers for MGA,
14   and also with me are Jim Jenal and Jennifer Glad.
15             THE COURT:  Okay.
16             Is there anyone for Carter Bryant?
17             (No response.)
18             THE COURT:  Okay.
19             Are you prepared to proceed on your
20   motions?
21             MR. ALGER:  Yes.
22             MR. HURWITZ:  Yes.
23             THE COURT:  Is there a court reporter on
24   board?
25             THE COURT REPORTER:  Yes, your Honor.  My
```

6

1    name is Deborah Lubin.

2              THE COURT:  Thank you.

3              I have two motions set for a hearing today.

4    The first motion which I'd like to hear is MGA and

5    Bryant's motion to compel Mattel to produce certain

6    documents withheld under claims of privilege, and in

7    which you are seeking an in-camera review and, along

8    with that, a motion to certify that all responsive

9    documents have been produced concerning the

10   investigations of Carter Bryant, et al.

11             That's the first motion.  So you may speak

12   to that.

13             MR. HURWITZ:  This is David Hurwitz, your

14   Honor.  I will be arguing on behalf of MGA.

15             THE COURT:  Okay.

16             MR. HURWITZ:  As your Honor will recall,

17   although I was not personally present, your Honor

18   held a hearing on a prior motion on these

19   investigation documents by MGA/Bryant back in January

20   and ordered Mattel to produce documents.  At that

21   time they were documents that we believed related to

22   an August letter -- August 2000 anonymous letter and

23   investigation that arose out of that.  Excuse me, an

24   August 2002 anonymous letter and investigation that

25   arose out of that.

                                                       7

EXHIBIT · 25

PAGE  638

1           In February Mattel produced documents to us

2      that concerned that investigation, and those

3      documents showed that there was a related

4      investigation that expanded back in time at least to

5      March 2002.

6           But all of these documents appear to have

7      come from a particular group of custodians at Mattel

8      in their global security department, which is the

9      internal investigation arm that Mattel has.

10          And we were concerned for MGA that the

11     production might not be complete because it didn't

12     appear to include any documents from other custodians

13     at Mattel that we believe would be likely to have

14     such information, such as people in the legal

15     department or the human resources department or other

16     custodians that global security had interviewed or

17     worked with on this.

18          And so we met and conferred with Mattel to

19     see if they would be producing additional documents

20     concerning the investigation, or if their position

21     was that they were complete, whether they would

22     certify to us and represent to us that they had

23     produced everything they could find after a diligent

24     search.

25          When Mattel was unwilling to do so we

8

EXHIBIT
PAGE          639

1    brought this motion.

2              Basically, the thing we're most interested

3    in is to get any additional documents that Mattel has

4    concerning these 2002 investigations.  It's framed as

5    a motion to certify or, in the alternative, to compel

6    because at this point we believe that Mattel should

7    have additional documents from other custodians, but

8    I don't know if that's the case so we asked for the

9    relief in the alternative.

10             In response, Mattel submits a declaration

11   from Mr. De Anda, the head of global security, saying

12   that they have produced all of the files from the

13   global security department.  That is the same way

14   their opposition brief reads.

15             That is really not the thrust of our

16   motion.  We do not contend necessarily that they

17   withheld documents from the custodians they looked

18   at, but rather that they took the order requiring

19   them to produce all responsive documents concerning

20   these 2002 investigations of Carter Bryant and when

21   Mattel first knew about Carter Bryant's involvement

22   with the creation of Bratz and involvement with MGA

23   and interpreted that very narrowly, we believe.

24             And so we asked Mattel to certify that, and

25   that is what we ask your Honor to order them to do,

                                                        9

EXHIBIT   21
PAGE      640

1    certify that they have conducted a reasonable search

2    beyond this limited custodian or group of custodians

3    and that they have produced or will produce all

4    responsive documents.

5            The second part of the motion concerns the

6    privilege issue.  When we argued this back in January

7    we initially -- we had argued at that time that

8    Mattel should be ordered to produce all documents,

9    and that since they had not asserted any claims of

10   privilege at that time, that we wanted your Honor to

11   rule on the privilege issue then.

12           And what your Honor did is say that we

13   should get a privilege log and advised Mattel to log

14   their documents and to provide some type of

15   evidentiary basis to support their claims of

16   privilege.

17           And that's particularly important here, as

18   your Honor is aware, because of the dual roles that

19   an internal counsel can have in this type of

20   investigation of underlying facts about these former

21   employees that they were looking at, including

22   Mr. Bryant.

23           We met and conferred and we asked Mattel

24   whether they would ask -- well, first of all, they

25   agreed to produce a declaration or provide a

10

EXHIBIT
PAGE        641

1    declaration at the hearing.  When they did not do so,

2    we met and conferred with Mattel and asked them if

3    they would be producing a supplemental declaration.

4    At that time and in writing they said they would.

5                We waited.  They chose not to.

6                And so we filed this motion because they

7    did not provide any evidentiary basis to support

8    their claims of privilege, particularly with these

9    internal investigations of fact.

10               In response, for the first time after

11   receiving the brief, Mattel responds with a

12   declaration from Mr. De Anda that purports to

13   establish that these documents are privileged.

14               For the most part, the specifics of the

15   declaration are very lacking.  All of the documents

16   are grouped together, and this is in paragraph 7 of

17   Mr. De Anda's declaration where he basically just

18   says that each of these documents which are

19   identified constituted or recorded confidential

20   communications with in-house or outside counsel

21   concerning legal advice, except for one document

22   which he says, without any foundation that we see,

23   was a confidential communication between a Mattel

24   employee, Cassidy Park, and an in-house counsel for

25   Mattel.

11

EXHIBIT  $\mathcal{X}$

PAGE  642

1          And so we thought and we asked Mattel,

2     since there are very few documents at issue here, a

3     handful of documents that we asked for, that the

4     appropriate thing to do was to have Mattel submit

5     them to your Honor for in-camera review, and that you

6     could decide whether they were privileged or not.

7          But, again, the bigger issue that we face

8     is that none of the documents -- or it does not

9     appear that they logged any documents on their

10    privilege log from the files of the attorneys,

11    including the general counsel, Robert Normile or

12    another counsel that is mentioned in Mr. De Anda's

13    declaration named Michelle McShane, that apparently

14    worked in some capacity on this investigation in

15    2002.  And certainly if they have documents we would

16    expect that they would have produced them or logged

17    them.  It does not appear that they did.

18          So the privilege issues and the request to

19    either certify the completeness of the production or

20    compel additional responsive documents are

21    interrelated in that respect.

22          Finally, as to the one document that

23    Mr. De Anda does talk to at some length, this is this

24    e-mail that was attached to the De Anda declaration

25    as Exhibit A, and the same e-mail was attached to my

12

EXHIBIT
PAGE          643

1    declaration as Exhibit 4, it's a redacted e-mail from

2    Mr. De Anda to Mr. Allen Kaye in the human resources

3    department at Mattel, who you are familiar with from

4    reviewing his deposition on a prior motion.

5            And I understand that counsel and

6    Mr. De Anda have suggested that the redactions were

7    -- more than suggested -- declared that the

8    redactions were proper.

9            My concern is that just in reading the

10   sentences, it looks like at least the first redaction

11   is going to be some kind of factual information about

12   what Mattel did with the information, which is

13   directly relevant to our affirmative defenses of

14   laches and Statute of Limitations.

15           That redaction, if you have the e-mail, is

16   the one that starts with the third sentence, after he

17   says that he's received the anonymous letter from

18   August 2002 and that he's been working on the

19   situation for several months, he says:

20                "My frustration in this matter

21           was the genesis of..."

22           And then it's redacted.

23               "...and that is how in the hands

24           of Robert Normile."

25           As I stated, Mr. Normile is the general

13

EXHIBIT    2√

PAGE    644

1    counsel of Mattel so there may be some privilege

2    issues, but when they say it was the "genesis of"

3    blank, just from appearances' sake, we question

4    whether that is an actual communication of legal

5    advice or something prepared in anticipation of

6    litigation, and we'd like your Honor to review it in

7    camera and rule on it.

8            THE COURT:  Okay.  Thank you very much.

9            Mr. Hurwitz, I just have a question.

10           With respect to documents for

11   investigations that are earlier than the August

12   anonymous letter, I don't believe that was the

13   subject of my January order.

14           MR. HURWITZ:  That's correct.

15           THE COURT:  My order was anything arising

16   out of the anonymous letter.

17           MR. HURWITZ:  Correct, your Honor.

18           THE COURT:  So your underlying requests

19   that you asked for an order on back in January, were

20   they broad enough to include other investigations by

21   Carter Bryant?

22           MR. HURWITZ:  Yes.  I believe at that time

23   we didn't even know of the August 2002 investigation.

24   The underlying requests were broad enough to include

25   anything about Carter Bryant, and that was at the

14

EXHIBIT  21
PAGE  645

```
 1    time something that we got from Mattel.

 2            THE COURT:  So essentially your motion

 3    today in the alternative is a motion to compel all

 4    documents relating to an investigation into Carter

 5    Bryant, including what occurred in March of '02?

 6            MR. HURWITZ:  Correct, your Honor.

 7            THE COURT:  I just wanted to understand

 8    that.  Thank you.

 9            Okay.  I'll hear from you, Mr. Alger.

10            MR. ALGER:  I will keep it short in

11    response to any questions that your Honor may have.

12            As your Honor pointed out, the order of

13    January 31st required us to produce all

14    non-privileged documents related to any investigation

15    that occurred as a result of the receipt of the

16    August 2002 anonymous letter to Mattel's CEO, Robert

17    Eckert, and provide a privilege log identifying all

18    documents withheld under the attorney-client

19    privilege or attorney work product doctrine.

20            We've done that.

21            While MGA makes much of this investigation,

22    as they call it, the fact of the matter is there's

23    very few documents.  There's only a few sheets of

24    paper.  We have done a search.  We did a search after

25    the court issued its order.  We searched all the
```

15

EXHIBIT

PAGE   646

1    files of all the people who had anything to do with

2    this matter in August of '02, including Michelle

3    McShane, who is a former in-house lawyer for Mattel.

4    We searched her materials, both electronic and

5    physical, and we've produced all the documents that

6    Mattel has been able to find related to the August

7    2002 anonymous letter.

8              Pursuant to the discovery that's been

9    sought by MGA in this case we included in our

10   production of February 23rd not just these documents

11   that were ordered by the Court, but also other

12   security files, and these happen to include a March

13   2002 inquiry by Mr. De Anda that had similar factual

14   elements related to the concern among people inside

15   Mattel that Carter Bryant had copied Toon Teens after

16   he left Mattel and created Bratz using the Toon Teens

17   concepts and design.  We produced those to MGA in

18   February of 2007 pursuant to our obligations for

19   discovery and they've gotten them.

20             We also produced files related to two other

21   investigations involving Mr. Brawer's departure for

22   MGA from Mattel and also what would turn out as MGA's

23   acquisition of proprietary trade secret document

24   information about unreleased products.  So we gave

25   them those materials as well.  But they were not

16

EXHIBIT

PAGE    647

1     subject to the Court's order.

2          Mr. De Anda's declaration relates to the

3     global security files because that's what he has

4     knowledge of, and that's where we found the documents

5     related to the anonymous letter investigation and the

6     other three investigations that we produced on

7     February 23rd.

8          So there's nothing suspicious here.  We've

9     produced the documents and we've prepared a privilege

10    log that I think is sufficient, and it's consistent

11    with practice in this locale, and we've provided the

12    declaration of Mr. De Anda to support that privilege

13    log.

14         Mattel doesn't have any objection to the

15    Discovery Master reviewing the documents.  There's

16    not a lot of documents.  They fit -- in both redacted

17    and unredacted form they fit in a binder that is

18    about an inch thick.  We are fine with the Court

19    reviewing them, if the Court thinks it's appropriate.

20         THE COURT:  Okay.  Let me ask you a few

21    questions.

22         If we include the March 2002 investigation,

23    which was not really the subject of the January

24    order, have you produced all documents relating to

25    that investigation of Carter Bryant and, I guess,

17

EXHIBIT 21

PAGE 648

1     secondly, have you produced all documents that are

2     responsive to the requests -- the underlying requests

3     which, as I recall, were requests 3, 5, 15, 17, 18,

4     28, 31, 35 and 36?

5               MR. ALGER:  I can answer the first part,

6     your Honor.  I can tell you that we have produced the

7     documents related to the March 2002 inquiry and

8     August 2002 inquiry.

9               THE COURT:  Okay.

10              They were never removed in January per the

11    request I just mentioned?

12              MR. ALGER:  I was not involved in that and

13    I am not aware of that.

14              THE COURT:  In your attempt to comply with

15    my order did you search -- did you have a search of

16    HR?

17              MR. ALGER:  Yes, your Honor.

18              THE COURT:  And you searched legal?

19              MR. ALGER:  Yes, your Honor.

20              THE COURT:  How come there's nothing on

21    your log or no document involving anything from

22    Robert Normile, your in-house counsel?

23              MR. ALGER:  My understanding, your Honor,

24    is he did not have any documents.

25              THE COURT:  And what about Michelle

18

EXHIBIT
PAGE      649

```
 1   McShane?
 2              MR. ALGER:   The same, your Honor.
 3              THE COURT:   What about Allen Kaye?
 4              MR. ALGER:   The same, your Honor.
 5              THE COURT:   Was any outsourcing of
 6   investigation done here?   Private investigators,
 7   et cetera?
 8              MR. ALGER:   As to the August investigation,
 9   no.
10              THE COURT:   How about the March one?
11              MR. ALGER:   There were some outsiders
12   involved in March, but I can't really make any
13   representations about what they did.
14              MR. HURWITZ:   Your Honor, if I could say,
15   from reviewing the files, there was at least one
16   investigation firm by the name of Lambda
17   Investigations that I believe was involved in that.
18   I'm not a hundred percent sure that they were
19   involved in the 2002, but I recall that investigation
20   document.
21              MR. ALGER:   There were some documents.
22   They show up in the log.   There were some documents
23   transmitted from another law firm that worked for
24   Mattel and I believe from an investigator to us.
25   Again, that involved March 2000.
```

19

EXHIBIT
PAGE          650

1          THE COURT:  Okay.

2          MR. ALGER:  Those are on the log.

3          THE COURT:  Mr. Hurwitz, are you contending

4   they haven't done a reasonable search to comply with

5   the January order?

6          MR. HURWITZ:  Well, at the time I just

7   wanted a response -- I could not get the response,

8   your Honor, honestly, that you were just able to get.

9   That's what I asked Mr. Alger in the meet and confer.

10          THE COURT:  Okay.

11          MR. ALGER:  Your Honor, I disagree with

12   that.  I think Mr. Hurwitz and I had what I thought

13   was a candid discussion about this and, in fact, I

14   volunteered at that conference that we would be --

15   that there were some documents that were not in the

16   file that we would be providing, including the

17   security camera tapes of Mr. Brawer leaving the

18   building.  I said they would be coming.  There wasn't

19   any indication in the file that they existed.

20          The pdf files that Mr. Hurwitz raised in the

21   motion were never brought up by anybody prior to the

22   motion, and as soon as they came up in the motion I

23   found them and turned them over in electronic format

24   to MGA.

25          There has been no hiding the ball, no

20

EXHIBIT  21
PAGE  651

1    obfuscation on this.  I've been very up front on what

2    we've done.

3         What we've not been willing to do is

4    provide a certification that has been asked for by

5    MGA.  And I would like to address that because this

6    case has a lot of history.

7         THE COURT:  You don't have to address that.

8    As far as I'm concerned, there is no good cause or

9    basis or authorized rule in the Federal Rules of

10   Civil Procedure that support such an order, so I'm

11   going to deny that aspect of the motion.

12        MR. ALGER:  Thank you, your Honor.

13        THE COURT:  Going to the privilege log,

14   including the document that was just discussed, which

15   is Exhibit 4 to the moving declaration, I will order

16   an in-camera review and would ask you to submit then

17   all of the documents on the privilege log to me

18   within five days, and I believe the documents in

19   dispute are privilege log numbers 29, 32, 33, 35, 50,

20   51, 57 and pages M0074319 to 326.

21        MR. HURWITZ:  Your Honor, I think what

22   Mr. Alger pointed out in his opposition was those

23   pages were also reflected in the privilege log so

24   they are not separate entries.  They just weren't

25   numbered in the privilege log itself.

                                                    21

EXHIBIT
PAGE    652

1        THE COURT:   That's right.

2        MR. ALGER:   Your Honor, I have a very handy

3   binder that my folks have put together here that has

4   the portions of the privilege log that deal with the

5   security files documents that have been redacted or

6   withheld by privilege log number, and it has the

7   entries for the privilege log and then under each tab

8   it has the document in the redacted form followed by

9   the document in the unredacted form.   I certainly can

10  copy this and forward it to your Honor.   I think it

11  would be a good presentation.

12        THE COURT:   Well done.   That's good.   Okay.

13  Send me that within five days.

14        And the motion to certify is denied.

15        Okay.   Let's go to the next motion.   This

16  is MGA's motion to compel the production of documents

17  responsive to its first set dated November 22, '06 in

18  which there were 115 document requests, and you are

19  now moving to compel production of approximately 32

20  of those requests, and you're seeking sanctions.

21        I've read the motion, the requests, the

22  opposition, the reply and all the exhibits that

23  you've submitted.

24        Any comments?

25        MR. JENAL:   Yes.   Thank you, your Honor.

                                                      22

EXHIBIT
PAGE   653

1    This is Jim Jenal for MGA.

2              In looking at Mattel's opposition to this

3    motion, the basic gist of their opposition is it

4    would be impossible for us to do everything because

5    we are so big, so dispersed, so many folks, so we

6    really have no need to do anything at all, and that

7    is not what the rules require.

8              The rules require reasonable efforts under

9    the circumstances.  In the meet-and-confer process we

10   offered to Mattel to provide -- to work with them to

11   provide means to limit the scope of the custodians

12   that would be necessarily reviewed in order to find

13   responsive documents and they refused to do that.

14             The simple truth is that while some of

15   these requests that we are moving on could be viewed

16   to be overbroad as Mattel seeks to define them, they

17   have to be read in conjunction with the

18   complaint; and frankly, in conjunction with the

19   interrogatory responses that we have provided and, in

20   particular, the interrogatory responses we produced

21   on the 19th of January where, in responding to

22   Mattel's request for detailed information vis-a-vis

23   our claims of unfair competition, we went through and

24   identified:  Who are the retailers that are at issue?

25   Who are some of the third parties whose licensing

                                                23

EXHIBIT

PAGE    654

1    agreements, et cetera, were interfered with?  Who are

2    the folks that were pressured not to do business with

3    us?  What are the products that have been copycatted

4    in the packaging and in the products and accessories

5    themselves?  And in setting forth those responses we

6    defined a reasonable baseline of what we know today

7    to be in play.

8              Those are the factual allegations that

9    underscore our complaint and our claims of unfair

10   competition.

11             But Mattel takes two positions here.  The

12   first is, if it is not in the complaint, if it is not

13   in the interrogatories, we don't even have to look

14   for it.

15             Well, they weren't even willing to start

16   with what we've identified.  So the very first place

17   that a reasonable response to our document request

18   would begin would be to go back to the interrogatory

19   responses and say, all right, you've identified

20   Egmont as an individual entity with whom licensing

21   agreements were interfered.

22             Let's go and look at where we have

23   custodians who deal with Egmont and find documents

24   that may be responsive to that.  They don't have

25   25,000 people who deal with that entity.  They don't

24

EXHIBIT
PAGE    655

1    have 25,000 people that deal with the specific firms

2    and third parties that we've identified.

3              They have some number of people who deal

4    with these.   That's the starting point.   They should

5    go there.   And they should produce the responsive

6    documents that they find that deal with acts of

7    unfair competition.

8              But they must also, at the same time that

9    they do that, having found documents that refer to a

10   specific act or a specific entity that we've been

11   able to identify to date, when they find a companion

12   document sitting right next to it that refers to

13   activities with a third party whom we haven't been

14   able to identify, they have an obligation to produce

15   those documents as well because those documents

16   clearly relate to our claim, our claim of serial

17   unfair competition across the board as set forth in

18   the complaint and as specified in our interrogatory

19   responses.

20             In particular, we have interrogatory

21   responses 5, 6 and 8 coming out of -- back in January

22   of this year that set forth at some length a

23   reasonable place to begin looking.

24             It is impossible for MGA to sit here and

25   tell Mattel which custodians it should be looking at

25

EXHIBIT
PAGE        656

```
 1    for these purposes.  We don't have access to that
 2    information.
 3              But let's take one example.  We know or we
 4    firmly believe that they have interfered with our
 5    ability to sell products through WalMart and
 6    Toys 'R' Us, and they complain in their opposition
 7    that, you know, there's 4500 WalMart stores and
 8    Toys 'R' Us stores throughout the nation.
 9              And it's clear that our document request is
10    not directed to every individual who ever had
11    anything to say or do with WalMart or Toys 'R' Us.
12    That is not a reasonable way to read these requests
13    and it's not what we asked them to do in the meet and
14    confer.
15              What is a reasonable approach to these
16    requests, however, is that there are some number of
17    people at Mattel who are responsible for managing,
18    let's say, the WalMart account.  I have no idea how
19    many people it is.  My guess is that for the products
20    that are at issue in this lawsuit which have been
21    identified either in the complaint or in our
22    interrogatory responses, there's a relative handful
23    of people who have direct responsibility for those
24    product lines at those retailers.  That's a
25    reasonable place to start.
```

26

EXHIBIT 25
PAGE 657

1          But their response is simply "We don't have

2     to do any of this," and the fact that they point to

3     documents they've produced in response to other

4     requests really has no relevance to the question of

5     producing documents relevant to these requests.

6     These requests go to our affirmative case, our claims

7     for unfair competition, and without these documents

8     we can't provide the factual basis that we will need

9     to prove up those claims.

10          Mattel has those documents.  They know

11    where the people are that have those documents.  They

12    have to make a reasonable attempt to locate those

13    responsive documents.  They have refused to do that

14    to date.

15          That's the purpose behind this motion, your

16    Honor.

17          THE COURT:  Okay.  Thank you very much.

18          You may respond.

19          MR. ALGER:  Your Honor, this is Tim Alger

20    again.

21          I feel like we are ships passing in the

22    night on this one because Mr. Jenal repeatedly says

23    we've refused to produce, we've refused to look,

24    we've refused to cooperate.  None of that is true.

25    MGA is aware of that.

27

EXHIBIT
PAGE
658

1            We have produced 75,000 documents.  We have

2     thousands more coming.  I have had a team of lawyers

3     of significant size that have been reviewing and

4     collecting documents since August of '06.  We're

5     looking through thousands -- indeed, millions of

6     documents.

7            What we've declined to do is to rewrite

8     MGA's request.  I think your Honor is familiar with

9     what we are talking about.  We see an evolution

10    between the moving papers by MGA and their reply

11    papers where they've switched gears.

12           Now they want us to do precisely what I've

13    been willing to do all along, and that is produce

14    consistent with what has been placed at issue by MGA,

15    whether it is in their complaint or interrogatories

16    or if they've done a Rule 26 disclosure and brought

17    forward more information, we are prepared to go out

18    and do a reasonable search, find, collect, produce

19    documents that are related to those matters that MGA

20    has brought into issue in the complaint, their

21    interrogatories and other means in the case.

22           We have not declined to do anything, as

23    Mr. Jenal states.  That is categorically false.  We

24    have been working very hard to find documents.

25           The document requests themselves are

                                                        28

EXHIBIT
PAGE    659

1    grossly overbroad.  On their face they ask us to

2    produce every document that happens to mention Bratz

3    or Larian or MGA.  They are not limited to the

4    products.  Even the Polly Pocket request that your

5    Honor dealt with a few weeks ago had some linkage to

6    product lines.  We don't even have any linkage to

7    product lines.  We don't have linkage to any

8    particular stores or licensees or distributors.  We

9    don't have any linkage to any particular sales

10   situations.

11          All we have here are these broad requests

12   that say any documents or any communications that

13   happen to mention MGA, Larian or Bratz.

14          As we pointed out in our papers, virtually

15   every employee at Mattel might have documents.  MGA

16   is a key competitor in several of the key toy niches

17   that Mattel operates in.  We are constantly looking

18   at the competition, just as MGA is looking at Mattel

19   for competition.  So mention could be made of MGA or

20   any of their hundreds and hundreds of products in the

21   most benign sense at any time.

22          And so we have simply said to do a

23   good-faith reasonable search, we need to understand

24   what we should be looking for.

25          And I don't think we are obligated under

29

EXHIBIT

PAGE          660

1    the federal rules, as MGA asks in their reply, to

2    apply some sort of a common sense template on their

3    broad request or do some sort of tailoring based on

4    what they've said in their complaint or

5    interrogatories.  I've offered to do that, but I

6    don't think we are obligated to go back to their

7    written requests and rewrite them for them.  I don't

8    think that's correct at all.  And they've declined to

9    do that.

10          When we met and conferred I specifically

11   stated that we would produce documents related to,

12   say, the competition of Bratz and My Scene.  The

13   design of My Scene.  The origins of My Scene.

14          I offered to do that.  I offered to come

15   forward with evidence that we could find related to

16   the alleged acts in the marketplace that MGA

17   complains about.

18          But absent something to hang onto, some

19   sort of tether that we can work from where we know

20   where to go and who to talk to and whose computers to

21   search, where to go, we don't -- there's no scope.

22   There's no boundaries.  And the way these requests

23   are drafted essentially requires us to allow MGA to

24   back a truck up to Mattel's El Segundo headquarters

25   and start loading our computer servers onto their

30

```
 1    truck and emptying all our files to MGA, and I don't
 2    think we are required to do that under the requests
 3    themselves, and I don't think we are obligated to
 4    rewrite their requests for them.
 5            What they are obligated to do is present
 6    the Court and us with requests that actually have
 7    some linkage to the claims at issue.
 8            MR. JENAL:  Your Honor, this is Jim Jenal,
 9    if I might respond.
10            First of all, what was suggested at the
11    meet and confer was to start with the products and
12    the specifics that were identified in the
13    interrogatory responses, and once those documents
14    were identified, to likewise then produce related
15    documents that were not specifically identified in
16    the interrogatory response because those are
17    similarly responsive to our underlying claim, and
18    Mattel refused to do that.
19            When we go to the interrogatory responses,
20    I specifically helped define what the products and
21    issues are in this case.  For example, there is a
22    document request relating -- for example, 57 or 56
23    dealing with interactions with licensees and
24    suppliers.  In our interrogatory response number 5 we
25    identified that Mattel has threatened and warned a
```

                                                              31

EXHIBIT
PAGE
662

1    number of companies not to license MGA products, and
2    we proceed to list Euromic, Character Licensing and
3    Marketing, Egmont, Rose Art Industries, Incorporated,
4    SuperRTL, Candide, Hart Concepts, Smith & Brooks,
5    Zeon and Gemma International.
6           Now, there's not 25,000 people at Mattel
7    that deal with those entities.  I would submit to
8    your Honor that there's a handful of people at Mattel
9    that deal with those entities, and those are specific
10   allegations that we have made that are responsive to
11   these requests.  That is a reasonable place for
12   Mattel to go look for documents.
13          I don't know what documents Mr. Alger is
14   alluding to that he thinks he's producing because I
15   haven't seen those documents.  I can tell you that
16   the 75,000 pages -- not documents, but pages --
17   produced by Mattel do not speak to the issues raised
18   in these requests that we are bringing to the Court.
19          If they did, we wouldn't be bringing these
20   to the Court.  And if they were responsive, you can
21   bet that Mattel would have identified them and said
22   "This is where we've produced the documents
23   responsive to the request."  They didn't do that
24   because they haven't produced documents responsive to
25   the requests.

                                                    32

EXHIBIT    21
PAGE       663

```
 1              Your Honor, when you draft document
 2    requests back in November, you learn things.  You try
 3    to come up with ways to identify more clearly.  You
 4    create responses to interrogatories, as we promised
 5    we would back when we were debating the question of
 6    initial disclosures.
 7              We have given specifics about what we know
 8    at this time.  But it is impossible for us to give a
 9    road map to Mattel that says "These are the people
10    who did the bad acts at your behest.  So go get the
11    documents from them."  We don't know who those people
12    are.  Mattel knows who those people are, your Honor.
13              And all we're asking for here is that they
14    take reasonable steps to produce documents in the
15    light of our complaint, our interrogatory responses
16    that are responsive to these requests.  That's all
17    we're asking.
18              THE COURT:  You both made reference to your
19    interrogatory responses.  I don't believe they are
20    part of the record in this motion.  I never found any
21    interrogatory responses.
22              Am I not looking for them in the right
23    place?
24              MR. JENAL:  No, your Honor.  I don't
25    believe that they were attached to our response.
```
                                                              33

EXHIBIT  21
PAGE  664

```
 1    They should have been.  I could certainly forward
 2    them to the Court if that would help inform this
 3    debate, and I think it probably would.
 4              THE COURT:  Well, I suppose the only reason
 5    it would help is you are suggesting that your
 6    interrogatory responses give more particularization
 7    to your alleged claims for unfair competition,
 8    et cetera.
 9              MR. JENAL:  Which is true, your Honor, they
10    do.
11              THE COURT:  Anyway, you've made reference
12    to them and I've never seen them.
13              MR. ALGER:  This is Tim Alger, your Honor.
14              Actually, I wasn't finished before
15    Mr. Jenal jumped in, which is fine, and I appreciate
16    his comment.
17              The situation is being completely
18    mischaracterized.  MGA made sweeping requests for
19    documents related to their claims.  We have been
20    collecting and producing them.  More and more are
21    coming.  We have limited -- we have used as guidance,
22    when we started collecting, the complaint that they
23    filed, and since we've gotten their interrogatory
24    responses, which was supplemented after a meet and
25    confer earlier this year, we've been looking there,
```

34

EXHIBIT 21
PAGE 665

1    too.   We have been doing that.

2              The only beef that MGA has is that we have

3    not taken their document requests and rewritten them

4    for them.   That is the only thing we are talking

5    about here.   They are not being deprived of anything.

6    We are not saying, nor have we said anywhere in

7    response to any of these requests, "Drop dead, we're

8    not giving you the documents."   We are giving them

9    the documents.

10             And I'm not going to burden the Court by

11   reciting particular documents or burdening the record

12   with hundreds of thousands of documents.

13             For example, much of their complaint is

14   about My Scene.   We are producing to them thousands

15   of pages related to My Scene, the development of

16   My Scene, the design of My Scene.   We are giving them

17   all the designer documents related to all the dolls

18   and the play sets.   I've personally reviewed these.

19   I've been involved in the collection of these.   They

20   are getting all of them.

21             We are trying to get them the records that

22   they are seeking related to what they've told us

23   about involving the marketplace alleged misconduct.

24   We are trying to find it.   Nobody is denying them

25   this material.   We are getting it for them.

35

EXHIBIT  21
PAGE  666

```
 1              So all we are talking about here is their
 2    unhappiness that we responded to a certain number of
 3    their document requests with objections and did not
 4    offer to rewrite them for MGA.  That's all we are
 5    talking about here.
 6              THE COURT:  Well, I will review the motion.
 7    I'm not going to rewrite the requests, either.  I
 8    will look at the requests.  I will consider whether
 9    or not the request is relevant to the claims and
10    defenses, and if it is overbroad and burdensome, I
11    will consider that.
12              I will issue an order within a week.  I
13    believe there are 32 requests.  You've grouped them
14    into nine categories.  I'll issue an order within a
15    week.  It will be granted in part.
16              I will tell you now the motion for
17    sanctions is denied.
18              MR. JENAL:  Thank you, your Honor.
19              If we could, we would appreciate being able
20    to submit to you immediately our January 19th
21    interrogatory responses.
22              THE COURT:  Okay.
23              MR. JENAL:  Thank you.
24              We'll send those off immediately.
25              THE COURT:  Thank you very much.
```

36

EXHIBIT
PAGE

667

```
 1              That will conclude the hearing.
 2              MR. ALGER:   Thank you, your Honor.
 3              MR. HURWITZ:   Thank you.
 4              THE COURT:   All right.
 5
 6              (Whereupon, the proceedings were adjourned
 7              at 11:46 a.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

37

EXHIBIT
PAGE     **668**

```
 1   STATE OF CALIFORNIA      )

 2                            )  ss.

 3   COUNTY OF SAN FRANCISCO)

 4

 5        I hereby certify that the foregoing Transcript

 6   of Proceedings was taken at the time and place herein

 7   named and is a true record of the proceedings as

 8   reported by me, a duly Certified Shorthand Reporter

 9   and a disinterested person, and was thereafter

10   transcribed into typewriting by computer.

11        I further certify that I am not interested in

12   the outcome of said action, nor connected with, nor

13   related to, any of the parties in said action, nor to

14   their respective counsel.

15        IN WITNESS WHEREOF, I have hereunto set my hand

16   and affixed my signature this 16th day of May 2007.

17

18

19

20   _____

21        DEBORAH LEE LUBIN, CSR No. 3234, RPR, CRP

22

23

24

25
                                                          38
```

EXHIBIT

PAGE   669

EXHIBIT 25
PAGE 670

| A | | | | |
|---|---|---|---|---|
| **A** | 5:1 14:3 | beyond 10:2 | 10:1 12:19 22:14 | confer 20:9 26:14 |
| ability 26:5 | apply 30:2 | big 23:5 | 38:5,11 | 31:11 34:25 |
| able 16:6 20:8 25:11 | appreciate 34:15 | bigger 12:7 | cetera 19:7 24:1 34:8 | conference 2:10 20:14 |
| 25:14 36:19 | 36:19 | binder 17:17 22:3 | Character 32:2 | conferred 8:18 10:23 |
| absent 30:18 | approach 26:15 | blank 14:3 | chose 11:5 | 11:2 30:10 |
| access 26:1 | appropriate 12:4 | board 6:24 25:17 | circumstances 23:9 | confidential 11:19,23 |
| accessories 24:4 | 17:19 | Boulevard 3:7 | Civil 21:10 | conjunction 23:17,18 |
| account 26:18 | approximately 22:19 | boundaries 30:22 | claim 25:16,16 31:17 | connected 38:12 |
| acquisition 16:23 | argued 10:6,7 | BRADLEY 5:16 | claims 7:6 10:9,15 | consider 36:8,11 |
| act 25:10 | arguing 7:14 | Bratz 9:22 16:16 29:2 | 11:8 23:23 24:9 27:6 | consistent 17:10 28:14 |
| action 1:13 38:12,11 | arising 14:15 | 29:13 30:12 | 27:9 31:7 34:7,19 | CONSOLIDATED |
| activities 25:13 | arm 8:9 | Brawer 20:17 | 36:9 | 1:13 |
| acts 25:6 30:16 33:10 | arose 7:23,25 | Brawer's 16:21 | clear 26:9 | constantly 29:17 |
| actual 14:4 | Art 32:3 | brief 9:14 11:11 | clearly 25:16 33:3 | constituted 11:19 |
| additional 8:19 9:3,7 | asked 9:8,24 10:23 | bringing 32:18,19 | Clerk 5:14 | contend 9:16 |
| 12:20 | 11:2 12:1,3 14:19 | broad 14:20,24 29:11 | collect 28:18 | contending 20:3 |
| address 21:5,7 | 20:9 21:4 26:13 | 30:3 | collecting 28:4 34:20 | CONTINUED 4:1 5:1 |
| adjourned 37:6 | asking 33:13,17 | Brooks 32:4 | 34:22 | cooperate 27:24 |
| advice 11:21 14:5 | asks 30:1 | brought 9:1 20:21 | collection 35:19 | copied 16:15 |
| advised 10:13 | aspect 21:11 | 28:16,20 | come 8:7 18:20 30:14 | copy 22:10 |
| affirmative 13:13 27:6 | asserted 10:9 | Bryant 1:6 4:17 5:3 | 33:3 | copycatted 24:3 |
| affixed 38:16 | associates 6:10 | 6:16 7:10 9:20 10:22 | coming 20:18 25:21 | corporation 1:10 |
| ago 29:5 | attached 12:24,25 | 14:21,25 15:5 16:15 | 28:2 34:21 | correct 14:14,17 15:6 |
| agreed 10:25 | 33:25 | 17:25 | commencing 2:10 | 30:8 |
| agreements 24:1,21 | attempt 18:14 27:12 | Bryant's 7:5 9:21 | comment 34:16 | counsel 10:19 11:20 |
| al 7:10 | attorney 15:19 | building 20:18 | comments 22:24 | 11:24 12:11,12 13:5 |
| Alger 3:15 6:8,9,21 | attorneys 15:10 | burden 35:10 | common 30:2 | 14:1 18:22 38:14 |
| 15:9,10 18:5,12,17 | attorney-client 15:18 | burdening 35:11 | communication 11:23 | COUNTY 38:3 |
| 18:19,23 19:2,4,8,11 | August 7:22,22,24 | burdensome 36:10 | 14:4 | court 1:1 6:6,15,18,23 |
| 19:21 20:2,9,11 | 13:18 14:11,23 | business 24:2 | communications | 6:23,25 7:2,15 14:8 |
| 21:12,22 22:2 27:19 | 15:16 16:2,6 18:8 | | 11:20 29:12 | 14:15,18 15:2,7,25 |
| 27:19 32:13 34:13 | 19:8 28:4 | **C** | companies 32:1 | 16:11 17:18,19,20 |
| 34:13 37:2 | authorized 21:9 | California 1:2 3:9,20 | companion 25:11 | 18:9,14,18,20,25 |
| allegations 24:8 32:10 | aware 10:18 18:13 | 4:11,23 5:8 38:1 | compel 7:5 9:5 12:20 | 19:3,5,10 20:1,3,10 |
| alleged 30:16 34:7 | 27:25 | call 2:10 15:22 | 15:3 22:16,19 | 21:7,13 22:1,12 |
| 35:23 | a.m 2:10 6:4 37:7 | camera 14:7 20:17 | competition 23:23 | 27:17 31:6 32:18,20 |
| Allen 13:2 19:3 | | candid 20:13 | 24:10 25:7,17 27:7 | 33:18 34:2,4,11 |
| allow 30:23 | **B** | Candide 32:4 | 29:18,19 30:12 34:7 | 35:10 36:6,22,25 |
| alluding 32:14 | back 7:19 8:4 10:6 | capacity 12:14 | competitor 29:16 | 37:4 |
| alternative 9:5,9 15:3 | 14:19 24:18 25:21 | Carter 1:6 4:17 5:3 | complain 26:6 | Court's 17:1 |
| Anda 9:11 11:12 | 30:6,24 33:2,5 | 6:16 7:10 9:20,21 | complains 30:17 | create 33:4 |
| 12:23,24 13:2,6 | bad 33:10 | 14:21,25 15:4 16:15 | complaint 23:18 24:9 | created 16:16 |
| 16:13 17:12 | ball 20:25 | 17:25 | 24:12 25:18 26:21 | creation 9:22 |
| Anda's 11:17 12:12 | based 30:3 | case 1:8 9:8 16:9 21:6 | 28:15,20 30:4 33:15 | CRP 2:12 38:21 |
| 17:2 | baseline 24:6 | 27:6 28:21 31:21 | 34:22 35:13 | CSR 2:12 38:21 |
| Angeles 3:9,20 4:11 | basic 23:3 | Cassidy 11:24 | complete 8:11,21 | custodian 10:2 |
| 4:23 | basically 9:2 11:17 | categorically 28:23 | completely 34:17 | custodians 8:7,12,16 |
| anonymous 7:22,24 | basis 10:15 11:7 21:9 | categories 36:14 | completeness 12:19 | 9:7,17 10:2 23:11 |
| 13:17 14:12,16 | 27:8 | cause 21:8 | comply 18:14 20:4 | 24:23 25:25 |
| 15:16 16:7 17:5 | beef 35:2 | Center 3:6 | computer 30:25 38:10 | CV 1:9,10,11 |
| answer 18:5 | behalf 6:9 7:14 | CENTRAL 1:2 | computers 30:20 | Cyrus 3:16 6:10 |
| anticipation 14:5 | behest 33:10 | Century 4:21 | concepts 16:17 32:4 | cyrusnaim@quinne... |
| anybody 20:21 | believe 8:13 9:6,23 | CEO 15:16 | concern 13:9 16:14 | 3:23 |
| Anyway 34:11 | 14:12,22 19:17,24 | certain 7:5 36:2 | concerned 8:2,10 21:8 | |
| apparently 12:13 | 21:18 26:4 33:19,25 | certainly 12:15 22:9 | concerning 7:9 8:20 | **D** |
| appear 4:20 5:6 8:6,12 | 36:13 | 34:1 | 9:4,19 11:21 | date 25:11 27:14 |
| 12:9,17 | believed 7:21 | certification 21:4 | concerns 10:5 | dated 22:17 |
| appearances 3:1 4:1 | benign 29:21 | Certified 38:8 | conclude 37:1 | David 4:6 6:13 7:13 |
| | bet 32:21 | certify 7:8 8:22 9:5,24 | conducted 10:1 | day 38:16 |

EXHIBIT 21
PAGE 671

Page 2

days 21:18 22:13
De 9:11 11:12,17
  12:12,23,24 13:2,6
  16:13 17:2,12
dead 35:7
deal 22:4 24:23,25
  25:1,3,6 32:7,9
dealing 31:23
dealt 29:5
debate 34:3
debating 33:5
Deborah 2:11 7:1
  38:21
decide 12:6
declaration 9:10
  10:25 11:1,3,12,15
  11:17 12:13,24 13:1
  17:2,12 21:15
declared 13:7
declined 28:7,22 30:8
Defendant 1:11
defenses 13:13 36:10
define 23:16 31:20
defined 24:6
Delaware 1:9
denied 22:14 36:17
deny 21:11
denying 35:24
department 8:8,15,15
  9:13 13:3
departure 16:21
deposition 13:4
deprived 35:5
design 16:17 30:13
  35:16
designer 35:17
detailed 23:22
development 35:15
dhurwitz@omm.com
  4:13
diligent 8:23
direct 26:23
directed 26:10
directly 13:13
disagree 20:10
disclosure 28:16
disclosures 33:6
discovery 16:8,19
  17:15
discussed 21:14
discussion 20:13
disinterested 38:9
dispersed 23:5
dispute 21:19
distributors 29:8
DISTRICT 1:1,2
DIVISION 1:3
doctrine 15:19
document 11:21 12:22

  16:23 18:21 19:20
  21:14 22:8,9,18
  24:17 25:12 26:9
  28:25 29:2 31:22
  33:1 35:3 36:3
documents 7:6,9,19,20
  7:21 8:1,3,6,12,19
  9:3,7,17,19 10:4,8
  10:14 11:13,15,18
  12:2,3,8,9,15,20
  14:10 15:4,14,18,23
  16:5,10 17:4,9,15,16
  17:24 18:1,7,24
  19:21,22 20:15
  21:17,18 22:5,16
  23:13 24:23 25:6,9
  25:15,15 27:3,5,7,10
  27:11,13 28:1,4,6,19
  28:24 29:12,15
  30:11 31:13,15
  32:12,13,15,16,22
  32:24 33:11,14
  34:19 35:8,9,11,12
  35:17
doing 35:1
dolls 35:17
draft 33:1
drafted 30:23
Drop 35:7
dual 10:18
duly 38:8

**E**

earlier 14:11 34:25
East 4:21
EASTERN 1:3
Eckert 15:17
Edward 2:9 3:5
efforts 23:8
Egmont 24:20,23 32:3
either 12:19 26:21
  36:7
El 30:24
electronic 16:4 20:23
elements 16:14
EMANUEL 3:14
employee 11:24 29:15
employees 10:21
emptying 31:1
ENTERTAINMENT
  4:3
entities 32:7,9
entity 24:20,25 25:10
entries 21:24 22:7
ESQ 3:15,16,17 4:6,7
  4:8
essentially 15:2 30:23
establish 11:13
et 7:10 19:7 24:1 34:8

Euromic 32:2
evidence 30:15
evidentiary 10:15
  11:7
evolution 28:9
example 26:3 31:21,22
  35:13
Excuse 7:23
Exhibit 12:25 13:1
  21:15
exhibits 22:22
existed 20:19
expanded 8:4
expect 12:16
e-mail 12:24,25 13:1
  13:15

**F**

face 12:7 29:1
fact 11:9 15:22 20:13
  27:2
facts 10:20
factual 13:11 16:13
  24:8 27:8
false 28:23
familiar 13:3 28:8
far 21:8
February 8:1 16:10,18
  17:7
federal 21:9 30:1
feel 27:21
Fifth 4:22
Figueroa 3:18
file 20:16,19
filed 11:6 34:23
files 9:12 12:10 16:1
  16:12,20 17:3 19:15
  20:20 22:5 31:1
Finally 12:22
find 8:23 16:6 23:12
  24:23 25:6,11 28:18
  28:24 30:15,35:24
fine 17:18 34:15
finished 34:14
firm 17:16,23
firmly 26:4
firms 25:1
first 7:4,11 9:21 10:24
  11:10 13:10 18:5
  22:17 24:12,16
  31:10
fit 17:16,17
five 21:18 22:13
Floor 3:8,19 4:10,22
folks 22:3 23:5 24:2
followed 22:8
foregoing 38:5
form 17:17 22:8,9
format 20:23

former 10:20 16:3
forth 24:5 25:17,22
forward 22:10 28:17
  30:15 34:1
found 17:4 20:23 25:9
  33:20
foundation 11:22
Frahm 3:17 6:11
framed 9:4
Francisco 5:8 38:3
frankly 23:18
Friday 1:19 2:11 6:2
front 21:1
frustration 13:20
further 38:11
F-r-a-h-m 6:11

**G**

gears 28:11
Gemma 32:5
general 12:11 13:25
genesis 13:21 14:2
getting 35:20,25
gist 23:3
give 33:8 34:6
given 33:7
giving 35:8,8,16
Glad 4:8 6:14
global 8:8,16 9:11,13
  17:3
go 22:15 24:18,22 25:5
  27:6 28:17 30:6,20
  30:21 31:19 32:12
  33:10
going 13:11 21:11,13
  35:10 36:7
good 6:6,7,8,12 21:8
  22:11,12
good-faith 29:23
gotten 16:19 34:23
granted 36:15
grossly 29:1
group 8:7 10:2
grouped 11:16 36:13
guess 17:25 26:19
guidance 34:21

**H**

hand 38:15
handful 12:3 26:22
  32:8
hands 13:23
handy 22:2
hang 30:18
happen 16:12 29:15
happens 29:2
hard 28:24
Hart 32:4
head 9:11

headquarters 30:24
hear 7:4 15:9
hearing 7:3,18 11:1
  37:1
HEDGES 3:14
Heidi 3:17 6:10
heidifrahm@quinne...
  3:24
held 3:3 7:18
help 34:2,5
helped 31:20
hereunto 38:15
hiding 20:25
history 21:6
honestly 20:8
Honor 6:8,12,25 7:14
  7:16,17 9:25 10:10
  10:12,18 12:5 14:6
  14:17 15:6,11,12
  18:6,17,19,23 19:2,4
  19:14 20:8,11 21:12
  21:21 22:2,10,25
  27:16,19 28:8 29:5
  31:8 32:8 33:1,12,24
  34:9,13 36:18 37:2
Honorable 2:9 3:5
Hope 4:9
HR 18:16
human 8:15 13:2
hundred 19:18
hundreds 29:20,20
  35:12
Hurwitz 4:6 6:7,12,13
  6:22 7:13,13,16 14:9
  14:14,17,22 15:6
  19:14 20:3,6,12,20
  21:21 37:3

**I**

idea 26:18
identified 11:19 23:24
  24:16,19 25:2 26:21
  31:12,14,15,25
  32:21
identify 25:11,14 33:3
identifying 15:17
immediately 16:20,24
important 10:17
impossible 23:4 25:24
  33:8
inch 17:18
include 8:12 14:20,24
  16:12 17:22
included 16:9
including 10:21 12:11
  15:5 16:2 20:16
  21:14
Incorporated 32:3
indication 20:19

individual 1:6 24:20
  26:10
Industries 32:3
Infante 2:9 3:5 5:14
inform 34:2
information 8:14
  13:11,12 16:24
  23:22 26:2 28:17
initial 33:6
initially 10:7
inquiry 16:13 18:7,8
inside 16:14
interactions 31:23
interested 9:2 38:11
interfered 24:1,21
  26:4
internal 8:9 10:19
  11:9
International 32:5
interpreted 9:23
interrelated 12:21
interrogatories 24:13
  28:15,21 30:5 33:4
interrogatory 23:19
  23:20 24:18 25:18
  25:20 26:22 31:13
  31:16,19,24 33:15
  33:19,21 34:6,23
  36:21
interviewed 8:16
investigation 7:19,23
  7:24 8:2,4,9,20
  10:20 12:14 14:23
  15:4,14,21 17:5,22
  17:25 19:6,8,16,19
investigations 7:10
  9:4,20 11:9 14:11,20
  16:21 17:6 19:17
investigator 19:24
investigators 19:6
involved 18:12 19:12
  19:17,19,25 35:19
involvement 9:21,22
involving 16:21 18:21
  35:23
in-camera 7:7 12:5
  21:16
in-house 11:20,24
  16:3 18:22
issue 10:6,11 12:2,7
  23:24 26:20 28:14
  28:20 31:7 36:12,14
issued 15:25
issues 12:18 14:2
  31:21 32:17

                J
JAMS 3:6
January 7:19 10:6

  14:13,19 15:13
  17:23 18:10 20:5
  23:21 25:21 36:20
Jenal 4:7 6:14 22:25
  23:1 27:22 28:23
  31:8,8 33:24 34:9,15
  36:18,23
Jennifer 4:8 6:14
jglad@omm.com 4:15
Jim 4:7 6:14 23:1 31:8
jjenal@omm.com
  4:14
Judge 5:14
jumped 34:15

                K
Kaye 13:2 19:3
keep 15:10
KEKER 5:5
key 29:16,16
kind 13:11
knew 9:21
know 9:8 14:23 24:6
  26:3,7 27:10 30:19
  32:13 33:7,11
knowledge 17:4
knows 33:12

                L
L 3:15
laches 13:14
lacking 11:15
Lambda 19:16
Larian 29:3,13
law 5:14 19:23
lawsuit 26:20
lawyer 16:3
lawyers 28:2
learn 33:2
leaving 20:17
Lee 2:12 38:21
left 16:16
legal 8:14 11:21 14:4
  18:18
length 12:23 25:22
letter 7:22,22,24 13:17
  14:12,16 15:16 16:7
  17:5
let's 22:15 24:22 26:3
  26:18
license 32:1
licensees 29:8 31:23
licensing 23:25 24:20
  32:2
light 33:15
likewise 31:14
limit 23:11
Limitations 13:14
limited 10:2 29:3

  34:21
lines 26:24 29:6,7
linkage 29:5,6,7,9
  31:7
list 32:2
litigation 14:6
LITTLER 4:19
LLP 4:5 5:5
loading 30:25
locale 17:11
locate 27:12
log 10:13,13 12:10
  15:17 17:10,13
  18:21 19:22 20:2
  21:13,17,19,23,25
  22:4,6,7
logged 12:9,16
look 24:13,22 27:23
  32:12 36:8
looked 9:17
looking 10:21 23:2
  25:23,25 28:5 29:17
  29:18,24 33:22
  34:25
looks 13:10
Los 3:9,20 4:11,23
lot 17:16 21:6
Lubin 2:12 7:1 38:21

                M
managing 26:17
map 33:9
March 8:5 15:5 16:12
  17:22 18:7 19:10,12
  19:25
Marketing 32:3
marketplace 30:16
  35:23
Master 17:15
material 35:25
materials 16:4,25
Mattel 1:9 3:12 6:9
  7:5,20 8:1,7,9,13,18
  8:25 9:3,6,10,21,24
  10:8,13,23 11:2,11
  11:23,25 12:1,4 13:3
  13:12 14:1 15:1 16:3
  16:6,15,16,22 17:14
  19:24 23:10,16
  24:11 25:25 26:17
  27:10 29:15,17,18
  31:18,25 32:6,8,12
  32:17,21 33:9,12
Mattel's 15:16 23:2,22
  30:24
matter 13:20 15:22
  16:2
matters 28:19
McShane 12:13 16:3

  19:1
means 23:11 28:21
meet 20:9 26:13 31:11
  34:24
meet-and-confer 23:9
MELANIE 5:16
MENDELSON 4:19
mention 29:2,13,19
mentioned 12:12
  18:11
met 8:18 10:23 11:2
  30:10
MGA 4:3 6:13 7:4,14
  8:10 9:22 15:21 16:9
  16:17,22 20:24 21:5
  23:1 25:24 27:25
  28:10,14,19 29:3,13
  29:15,18,19 30:1,16
  30:23 31:1 32:1
  34:18 35:2 36:4
MGA's 16:22 22:16
  28:8
MGA/Bryant 7:19
Michelle 5:13 12:13
  16:2 18:25
millions 28:5
mischaracterized
  34:18
misconduct 35:23
months 13:19
morning 6:6,7,8,12
motion 7:4,5,8,11,18
  9:1,5,16 10:5 11:6
  13:4 15:2,3 20:21,22
  20:22 21:11 22:14
  22:15,16,21 23:3
  27:15 33:20 36:6,16
motions 6:20 7:3
moving 21:15 22:19
  23:15 28:10
Myers 4:5 5:17 6:13
M0074319 21:20

                N
Naim 3:16 6:10
name 7:1 19:16
named 12:13 38:7
narrowly 9:23
nation 26:8
necessarily 9:16 23:12
need 23:6 27:8 29:23
NEST 5:5
never 18:10 20:21
  33:20 34:12
niches 29:16
night 27:22
nine 36:14
non-privileged 15:14
Normile 12:11 13:24

  13:25 18:22
Nos 1:8
noted 6:4
November 22:17 33:2
number 22:6 25:3
  26:16 31:24 32:1
  36:2
numbered 21:25
numbers 21:19
N-a-i-m 6:10

                O
obfuscation 21:1
objection 17:14
objections 36:3
obligated 29:25 30:6
  31:3,5
obligation 25:14
obligations 16:18
occurred 15:5,15
offer 36:4
offered 23:10 30:5,14
  30:14
Okay 6:15,18 7:15
  14:8 15:9 17:20 18:9
  20:1,10 22:12,15
  27:17 36:22
OLIVER 3:14
once 31:13
operates 29:17
opposition 9:14 21:22
  22:22 23:2,3 26:6
order 9:18,25 14:13
  14:15,19 15:12,25
  17:1,24 18:15 20:5
  21:10,15 23:12
  36:12,14
ordered 7:20 10:8
  16:11
origins 30:13
outcome 38:12
outside 11:20
outsiders 19:11
outsourcing 19:5
overbroad 23:16 29:1
  36:10
O'Melveny 4:5 5:17
  6:13

                P
packaging 24:4
pages 1:25 21:20,23
  32:16,16 35:15
paper 15:24
papers 28:10,11 29:14
paragraph 11:16
Park 4:21 11:24
part 10:5 11:14 18:5
  33:20 36:15

Page 4

particular 8:7 23:20 25:20 29:8,9 35:11
particularization 34:6
particularly 10:17 11:8
parties 23:25 25:2 38:13
party 25:13
passing 27:21
pdf 20:20
people 8:14 16:1,14 24:25 25:1,3 26:17 26:19,23 27:11 32:6 32:8 33:9,11,12
percent 19:18
person 38:9
personally 7:17 35:18
physical 16:5
place 24:16 25:23 26:25 32:11 33:23 38:6
placed 28:14
Plaintiff 1:7
play 24:7 35:18
Pocket 29:4
point 9:6 25:4 27:2
pointed 15:12 21:22 29:14
Polly 29:4
portions 22:4
position 8:20
positions 24:11
practice 17:11
precisely 28:12
prepared 6:19 14:5 17:9 28:17
present 5:11 7:17 31:5
presentation 22:11
pressured 24:2
prior 7:18 13:4 20:21
Private 19:6
privilege 7:6 10:6,10 10:11,13,16 11:8 12:10,18 14:1 15:17 15:19 17:9,12 21:13 21:17,19,23,25 22:4 22:6,7
privileged 11:13 12:6
probably 34:3
Procedure 21:10
proceed 6:19 32:2
proceedings 1:17 2:8 3:3 6:1 37:6 38:6,7
process 23:9
produce 7:5,20 9:19 10:3,8,25 15:13 25:5 25:14 27:23 28:13 28:18 29:2 30:11 31:14 33:14

produced 7:9 8:1,23 9:12 10:3 12:16 16:5 16:17,20 17:6,9,24 18:1,6 23:20 27:3 28:1 32:17,22,24
producing 8:19 11:3 27:5 32:14 34:20 35:14
product 15:19 26:24 29:6,7
production 8:11 12:19 16:10 22:16,19
products 16:24 24:3,4 26:5,19 29:4,20 31:11,20 32:1
promised 33:4
proper 13:8
proprietary 16:23
prove 27:9
provide 10:14,25 11:7 15:17 21:4 23:10,11 27:8
provided 17:11 23:19
providing 20:16
purports 11:12
purpose 27:15
purposes 26:1
pursuant 16:8,18
put 22:3,

Q

question 14:3,9 27:4 33:5
questions 15:11 17:21
QUINN 3:14

R

R 26:6,8,11
raised 20:20 32:17 26:12
read 22:21 23:17 26:12
reading 13:9
reads 9:14
really 9:15 17:23 19:12 23:6 27:4
reason 34:4
reasonable 10:1 20:4 23:8 24:6,17 25:23 26:12,15,25 27:12 28:18 29:23 32:11 33:14
recall 7:16 18:3 19:19
receipt 15:15
received 13:17
receiving 11:11
reciting 35:11
record 33:20 35:11 38:7
recorded 11:19

records 35:21
redacted 13:1,22 17:16 22:5,8
redaction 13:10,15
redactions 13:6,8
refer 25:9
reference 33:18 34:11
refers 25:12
reflected 21:23
refused 23:13 27:13 27:23,23,24 31:18
relate 25:16
related 1:13 7:21 8:3 15:14 16:6,14,20 17:5 18:7 28:19 30:11,15 31:14 34:19 35:15,17,22 38:13
relates 17:2
relating 15:4 17:24 31:22
relative 26:22
relevance 27:4
relevant 13:13 27:5 36:9
relief 9:9
removed 18:10
repeatedly 27:22
reply 22:22 28:10 30:1
reported 38:8
reporter 6:23,25 38:8
represent 8:22
representations 19:13
request 12:18 18:11 23:22 24:17 26:9 28:8 29:4 30:3 31:22 32:23 36:9
requests 14:18,24 18:2 18:2,3 22:18,20,21 23:15 26:12,16 27:4 27:5,6 28:25 29:11 30:7,22 31:2,4,6 32:11,18,25 33:2,16 34:18 35:3,7 36:3,7 36:8,13
require 23:7,8
required 15:13 31:2
requires 30:23
requiring 9:18
Resolution 3:6
resources 8:15 13:2
respect 12:21 14:10
respective 38:14
respond 27:18 31:9
responded 36:2
responding 23:21
responds 11:11
response 6:17 9:10 11:10 15:11 20:7,7

24:17 27:1,3 31:16 31:24 33:25 35:7
responses 23:19,20 24:5,19 25:19,21 26:22 31:13,19 33:4 33:15,19,21 34:6,24 36:21
responsibility 26:23
responsible 26:17
responsive 7:8 9:19 10:4 12:20 18:2 22:17 23:13 24:24 25:5 27:13 31:17 32:10,20,23,24 33:16
result 15:15
RET 3:5
retailers 23:24 26:24
review 7:7 12:5 14:6 21:16 36:6
reviewed 23:12 35:18
reviewing 13:4 17:15 17:19 19:15 28:3
rewrite 28:7 30:7 31:4 36:4,7
rewritten 35:3
right 22:1 24:19 25:12 33:22 37:4
RNBx 1:9
road 33:9
Robert 12:11 13:24 15:16 18:22
roles 10:18
Rose 32:3
RPR 2:12 38:21
rule 10:11 14:7 21:9 28:16
rules 21:9 23:7,8 30:1

S

S 3:16
sake 14:3
sales 29:9
San 5:8 38:3
sanctions 22:20 36:17
Sansome 5:7
saying 9:11 35:6
says 11:18,22 13:17,19 27:22 33:9
Scene 30:12,13,13 35:14,15,16,16
scope 23:11 30:21
search 8:24 10:1 15:24 15:24 18:15,15 20:4 28:18 29:23 30:11
searched 15:25 16:4 18:18
second 10:5
secondly 18:1

secret 16:23
security 8:8,16 9:11 9:13 16:12 17:3 20:17 22:5
see 8:19 11:22 28:9
seeking 7:7 22:20 35:22
seeks 23:16
seen 32:15 34:12
Segundo 30:24
sell 26:5
send 22:13 36:24
sense 29:21 30:2
sentence 13:16
sentences 13:10
separate 21:24
serial 25:16
servers 30:25
set 7:3 22:17 25:17,22 38:15
sets 35:18
setting 24:5
sheets 15:23
ships 27:21
short 15:10
Shorthand 38:8
show 19:22
showed 8:3
signature 38:16
significant 28:3
similar 16:13
similarly 31:17
simple 23:14
simply 27:1 29:22
sit 25:24
sitting 25:12
situation 13:19 34:17
situations 29:10
size 28:3
Smith 32:4
soon 20:22
sort 30:2,3,19
sought 16:9
South 3:18 4:9
speak 7:11 32:17
specific 25:1,10,10 32:9
specifically 30:10 31:15,20
specifics 11:14 31:12 33:7
specified 25:18
ss 38:2
start 24:15 26:25 30:25 31:11
started 34:22
starting 25:4
starts 13:16
STATE 38:1

Page 5

stated 13:25 30:11
states 1:1 28:23
Statute 13:14
steps 33:14
stores 26:7,8 29:8
Street 3:18 4:9 5:7
subject 14:13 17:1,23
  32:7 36:20
submits 9:10
submitted 22:23
sufficient 17:10
suggested 13:6,7
  31:10
suggesting 34:5
SuperRTL 32:4
supplemental 11:3
supplemented 34:24
suppliers 31:24
support 10:15 11:7
  17:12 21:10
suppose 34:4
sure 19:18
suspicious 17:8
sweeping 34:18
switched 28:11

**T**
tab 22:7
tailoring 30:3
TAKAMOTO 5:13
take 26:3 33:14
taken 35:3 38:6
takes 24:11
talk 12:23 30:20
talking 28:9 35:4 36:1
  36:5
tapes 20:17
team 28:2
Teens 16:15,16
tell 18:6 25:25 32:15
  36:16
template 30:2
tether 30:19
Thank 7:2 14:8 15:8
  21:12 22:25 27:17
  36:18,23;25 37:2,3
thick 17:18
thing 9:2 12:4 35:4
things 33:2
think 17:10 20:12
  21:21 22:10 28:8
  29:25 30:6,8 31:2,3
  34:3
thinks 17:19 32:14
third 13:16 23:25 25:2
  25:13
thought 12:1 20:12
thousands 28:2,5

35:12,14
threatened 31:25
three 17:6
thrust 9:15
Tim 27:19 34:13
timalger@quinnem...
  3:22
time 6:4 7:21 8:4 10:7
  10:10 11:4,10 14:22
  15:1 20:6 25:8 29:21
  33:8 38:6
Timothy 3:15 6:9
today 7:3 15:3 24:6
told 35:22
Toon 16:15,16
toy 29:16
Toys 26:6,8,11
trade 16:23
transcribed 38:10
Transcript 1:17 2:8
  6:1 38:5
transmitted 19:23
truck 30:24 31:1
true 27:24 34:9 38:7
truth 23:14
try 33:2
trying 35:21,24
turn 16:22
turned 20:23
two 7:3 16:20 24:11
type 10:14,19
typewriting 38:10

**U**
underlying 10:20
  14:18,24 18:2 31:17
underscore 24:9
understand 13:5 15:7
  29:23
understanding 18:23
unfair 23:23 24:9 25:7
  25:17 27:7 34:7
unhappiness 36:2
UNITED 1:1
unredacted 17:17
  22:9
unreleased 16:24
unwilling 8:25
URQUHART 3:14

**V**
VAN 5:5
viewed 23:15
virtually 29:14
vis-a-vis 23:22
volunteered 20:14
vs 1:8

**W**

waited 11:5
WalMart 26:5,7,11,18
want 28:12
wanted 10:10 15:7
  20:7
warned 31:25
wasn't 20:18 34:14
way 9:13 26:12 30:22
ways 33:3
week 36:12,15
weeks 29:5
went 23:23
weren't 21:24 24:15
We'll 36:24
we're 9:2 28:4 33:13
  33:17 35:7
we've 15:20 16:5 17:8
  17:9,11 21:2,3 24:16
  25:2,10 27:23,23,24
  28:7 32:22 34:23,25
WHEREOF 38:15
willing 21:3 24:15
  28:13
Wilshire 3:7
withheld 7:6 9:17
  15:18 22:6
WITNESS 38:15
work 15:19 23:10
  30:19
worked 8:17 12:14
  19:23
working 13:18 28:24
wouldn't 32:19
writing 11:4
written 30:7

**Y**
year 25:22 34:25

**Z**
Zeon 32:5

**0**
02 15:5 16:2
04-0904 1:9
04-9059 1:10
05-2727 1:11
06 22:17 28:4

**1**
1 1:25
10th 3:19 4:10
11 1:19 2:11 6:2
11:03 2:10 6:4
11:46 37:7
115 22:18
15 18:3
16th 38:16
17 18:3

18 18:3
19th 23:21 36:20

**2**
2000 7:22 19:25
2002 7:24 8:5 9:4,20
  12:15 13:18 14:23
  15:16 16:7,13 17:22
  18:7,8 19:19
2007 1:19 2:11 6:2
  16:18 38:16
2049 4:21
213.430.6000 4:12
213.443.3000 3:21
213.620.1333 3:10
22 22:17
23rd 16:10 17:7
25,000 24:25 25:1 32:6
26 28:16
28 18:4
29 21:19

**3**
3 18:3
31 18:4
31st 15:13
310.553.0308 4:24
32 21:19 22:19 36:13
3234 2:12 38:21
326 21:20
33 21:19
35 18:4 21:19
36 18:4
38 1:25

**4**
4 13:1 21:15
400 4:9
415.397.7188 5:9
4500 26:7
46th 3:8

**5**
5 18:3 25:21 31:24
50 21:19
51 21:20
56 31:22
57 21:20 31:22

**6**
6 25:21

**7**
7 11:16
707 3:7
710 5:7
75,000 28:1 32:16

**8**

8 25:21
865 3:18

**9**
90017 3:9,20
90067 4:23
90071 4:11
94111 5:8

EXHIBIT
PAGE
675