# EXHIBIT 26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

      Plaintiff,

vs.

MATTEL, INC., a Delaware
corporation,

      Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED
COPY**

AND CONSOLIDATED ACTIONS.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, August 27, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 118895

EXHIBIT 26
PAGE 676

```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                          EASTERN DIVISION

 3

 4    CARTER BRYANT, an individual,

 5              Plaintiff,

 6         vs.                       No. CV 04-9049 SGL (RNBx)
                                     Consolidated with
 7    MATTEL, INC., a Delaware       Nos. CV 04-9405 and
      corporation,                   05-2727
 8
                Defendants.
 9

10

11    _____
      AND CONSOLIDATED ACTIONS.
12    _____

13

14

15

16         REPORTER'S TRANSCRIPT OF PROCEEDINGS, taken at

17    555 West Fifth Street, Suite 4800, Los Angeles,

18    California, beginning at 10:07 a.m. and ending at

19    11:48 a.m. on Thursday, August 27, 2009, before

20    CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25
```

                                                              2

EXHIBIT  26

PAGE  677

**TRANSCRIPT OF PROCEEDINGS**                          08/27/09

```
 1    APPEARANCES:

 2

 3    Discovery Master:

 4          ROBERT C. O'BRIEN
            Attorney at Law
 5          555 West Fifth Street, Suite 4800
            Los Angeles, California 90013-1065
 6          (213) 629-7400

 7    For Defendant Mattel, Inc.:

 8          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
            BY:   MICHAEL T. ZELLER
 9          BY:   B. DYLAN PROCTOR
            BY:   SUSAN ESTRICH
10          Attorneys at Law
            865 South Figueroa Street, 10th Floor
11          Los Angeles, California 90017
            (213) 624-7707
12
            MATTEL, INC.
13          BY:  MICHAEL MOORE
            Expert Counsel
14          333 Continental Boulevard
            El Segundo, California 90245-5012
15          (310) 252-2000

16    For Defendants MGA and Isaac Larian:

17          ORRICK, HERRINGTON & SUTCLIFFE LLP
            BY:   ANNETTE L. HURST
18          BY:   FRANK D. RORIE, JR.
            Attorneys at Law
19          405 Howard Street
            San Francisco, California 94105
20          (415) 773-4585

21    Also Present:

22          CRAIG HOLDEN

23

24

25
```

3

EXHIBIT   26

PAGE     678

TRANSCRIPT OF PROCEEDINGS                    08/27/09

```
1           Los Angeles, California, Thursday, August 27, 2009
2                        10:07 a.m. - 11:48 a.m.
3
4           MR. O'BRIEN:  Let's go on the record and have
5     counsel make their appearances and then we'll get started.
6           MS. HURST:  Annette Hurst for the MGA parties.
7           MR. RORIE:  Frank Rorie for the MGA parties.
8           MR. HOLDEN:  Craig Holden for MGA.
9           MR. ZELLER:  Mike Zeller for Mattel.
10          MR. PROCTOR:  Dylan Proctor for Mattel.
11          MS. ESTRICH:  Susan Estrich for Mattel.
12          MR. MOORE:  Michael Moore for Mattel.
13          MR. O'BRIEN:  All right.  Thank you.
14          Again, good morning.  I think we have three
15    motions that are on calendar today.  Before we get to
16    those, let me just raise a housekeeping issue.  We have an
17    ex parte application regarding the Kadisha deposition.  I
18    think that was brought by the Bingham firm.  Is that
19    correct?
20          MS. HURST:  Correct.
21          MR. O'BRIEN:  They're not here today, but just so
22    that the folks who are here today understand, there is a
23    reply coming at noon, based on the last e-mail traffic I
24    saw.  So we'll take a look at the reply.  I understand
25    that the deposition is set for tomorrow, so I'll try and
```

4

EXHIBIT     26
PAGE        679

1   get an order out on that forthwith, at least by this

2   afternoon, so that everyone has an idea of what will

3   happen at the deposition, or at least based on the

4   ex parte.  I haven't had a chance to look over all the

5   papers yet, but when this hearing's completed, I'll turn

6   my attention to that matter and get something out this

7   afternoon for the parties.  You can feel free to

8   communicate that to -- is it Mr. Gordinier?

9           MS. HURST:  Mr. Villar -- well, he's been

10  handling the ex parte, so I'll let him know.

11          MR. O'BRIEN:  Peter and Todd.  Just let them

12  know, and I'll get something out by e-mail.

13          MS. HURST:  I will.

14          MR. O'BRIEN:  I'm not sure why, but that ex parte

15  was filed under seal and the opposition was filed under

16  seal.  I assume the reply will be filed under seal.  It

17  didn't seem to me that it needed to be filed under seal,

18  but I will file whatever order on the ex parte under seal,

19  since that's the process that has taken place so far, but

20  we'll get a PDF of it out to the parties right away.  So

21  we'll send it out to the Court to file under seal pursuant

22  to their procedures but then we'll also send out a PDF for

23  you as quickly as we can.

24          MS. HURST:  Thank you.

25          MR. O'BRIEN:  All right.  As far as today's

5

EXHIBIT 26
PAGE 680

```
 1   motions, I want to make sure that everyone is on the same
 2   page.  We have the Motion for Additional Time to Conduct
 3   the Deposition of Isaac Larian filed by Mattel and the
 4   cross-motion of the MGA parties for a protective order
 5   limiting the scope of the examination for the deposition
 6   of Mr. Larian.  We'll hear that first.
 7          The second motion that I have is the Motion to
 8   Compel Previously Collected Custodial Information of
 9   Produced Documents and Require Future Collection and
10   Production of Custodial Data filed by MGA and a cross-
11   motion on the same issue by Mattel.  Although I do note in
12   the various briefs by both parties both parties use
13   various definitions of what I think is the custodial data,
14   sometimes it's called electronic data, sometimes it's
15   called ESI, sometimes it's called custodian, sometimes
16   it's called custodial, but I think everybody is referring
17   to the same material.  So that's how we'll reference the
18   motion, but -- I think those cross-motions are all
19   referring to the same thing.  Although if I'm wrong, I
20   know somebody will point that out today.
21          The third motion is the Motion to Compel Further
22   Responses to MGA's First Set of Phase 2 Interrogatories
23   and Second Set of Phase 2 Requests For Production filed by
24   MGA.
25          So what I'd like to do is start with the Larian
```

EXHIBIT 26
PAGE 681

1    deposition motion.  I'll have Mattel address that, since

2    it was their motion to seek additional time, but I'll make

3    sure, since there was a cross-motion, that everybody has

4    plenty of opportunity to be heard, as has been my

5    practice.

6            So, Mr. Zeller, do you want to address that

7    issue?

8            MR. ZELLER:  Yes.  And I'll be very brief.

9            Obviously we've discussed these issues pretty

10   extensively in the papers.  I did want to mention that we

11   had filed a couple of supplemental declarations yesterday,

12   and these are documents that we had received on August

13   21st, 2009 from MGA.  These are denominated the

14   Supplemental Zeller Declaration and the Supplemental

15   Proctor Declaration.

16           MR. O'BRIEN:  I have the Zeller declaration, I

17   didn't see the Proctor declaration, but I think these came

18   in last night.

19           MR. ZELLER:  Yes.  They should have come in

20   together.

21           MR. O'BRIEN:  Which I'm sure they did.  I've read

22   your declaration.  I'll let you address the information in

23   the Proctor declaration.  The only caution -- I say this

24   because I know, or I'm guessing that Ms. Hurst will have

25   something to say about this -- is that with the late

EXHIBIT 26
PAGE 682

1   declarations it deprives MGA of the opportunity to reply

2   to them.  I understand that you believe there are new

3   facts here, but it does make it a little difficult, we've

4   had these in various hearings, when the late declarations

5   come in, this is both sides have done this, I try to read

6   everything, but I will give Ms. Hurst and MGA a chance to

7   respond to those today.  In the future, it would be

8   obviously -- and I know you do -- my assumption is that

9   nobody's trying to sandbag the other side on these, but

10  it's better to get the declaration in with the moving

11  papers, just out of fairness to the other side.  That goes

12  for MGA as well.  Having said that, I've read your

13  declaration.  I'll let you fill me in on what -- or

14  Mr. Proctor can do it himself, although we won't swear him

15  in, and tell us what's in that declaration or I can go get

16  it, and then I'll certainly provide MGA a chance both to

17  object to it if that's what you choose to do and also to

18  make any arguments you want.

19          MS. HURST:  Thank you.

20          MR. O'BRIEN:  And we'll give it the consideration

21  that a night-before-the-hearing declaration should get.

22          MR. ZELLER:  Fair.  I think those are all

23  certainly fair points.  I mean, I will say that with

24  respect to the documents that are attached to these

25  declarations, these were ones that we received late on

8

EXHIBIT  26
PAGE  683

1    August 21st from MGA.  These were the documents that, I

2    mean, frankly, we had been seeking for years and they had

3    been previously compelled.  These were documents, as well,

4    that the Discovery Master will recall had been ordered for

5    in camera submission, and then upon further review by

6    MGA's counsel, MGA's counsel produced these documents.  So

7    these are documents that go back some period of time.  I

8    mean, I certainly apologize for the timing of it.

9              MR. O'BRIEN:  No reason to apologize.

10             MR. ZELLER:  Sure.  But I did want to make it

11   clear that these are documents that we had been seeking

12   for some period of time.  We think that they do bear on

13   the decision that will be made here today about

14   Mr. Larian's deposition.

15             What is attached to the Supplemental Proctor

16   Declaration is an e-mail chain between Isaac Larian and

17   Victoria O'Connor, it's dated October of 2002.  Part of it

18   had been produced before, and we actually -- it was a very

19   prominent trial exhibit during the phase 1 trial.  The

20   part that was previously produced was, basically, an

21   exchange between Isaac Larian and a journalist, and the

22   journalist asked, in October of 2002, when was Bratz born,

23   and Isaac Larian said that Bratz was born in September of

24   2000, which is obviously a time when Carter Bryant was

25   employed by Mattel.  So the part of the e-mail chain that

9

EXHIBIT    26
PAGE      684

1    we did not have, and that was produced on August 21st, is

2    the further exchange between, internally within MGA,

3    Victoria O'Connor, an MGA executive, writes to Isaac

4    saying, "Isaac, don't you think that we ought to be saying

5    it was born in October of 2000, considering that a certain

6    somebody had not left his company yet?"  And Isaac Larian

7    writes back, "Good point.  Thanks."  So, I mean, this is

8    obviously something that bears centrally on the

9    willfulness question.  You, of course, are aware that MGA

10   is arguing that Mr. Larian's deposition ought to be

11   restricted, that we ought to be limited in scope, not to

12   be able to ask him about, essentially, these kinds of

13   questions.  This is why we think that this is just not

14   appropriate at all.  I mean, so it's an additional reason

15   to those that we've outlined in our papers.  So we would

16   submit that this is exactly the kind of reason why it's

17   untenable to say that we can't ask him about other issues.

18   The fact is that the third amended answer and

19   counterclaims, as well, allege perjury from the phase 1

20   trial, additional concealment and other acts that go back

21   to the 2000 time period.  So this notion that somehow we

22   should be restricted just to the more recent financial

23   transactions really doesn't comport with the evidence or

24   the allegations that are at issue in the case.

25           MR. O'BRIEN:  Can you focus on -- I understand

EXHIBIT   26
PAGE      685

1  you're focusing on the scope of the deposition.  What

2  about the timing, are you aware of any case in which a CEO

3  in this situation has been deposed for -- I think you want

4  21 hours; is that correct?

5          MR. ZELLER:  Yes, 21 or more hours, absolutely.

6  I mean, in terms of the cases, I mean -- first of all, I

7  would submit that Mr. Larian is not your typical CEO.  I

8  mean, it's not a Fortune 500 company, he's not

9  tangentially involved in these issues.  I mean, I think

10  all the cases really focus on the particular facts that

11  are at hand in looking at what is a fair amount of time in

12  order to depose the person.

13          There's really no dispute that Isaac Larian is

14  the central witness in phase 2.  I just don't see how that

15  has been disputed or could be disputed.  He will be the

16  main trial witness during phase 2 trial.  He is alleged

17  throughout the third amended answer and counterclaims to

18  be the central figure behind all of this.  I mean, just

19  focusing on the financial transactions alone, we're

20  talking about hundreds of millions of dollars in complex,

21  multiparty financial transactions, transactions that we

22  believe have also been set up in a way to conceal

23  Mr. Larian's involvement.  That is going to take time in a

24  deposition under even the best of circumstances.  It's

25  going to be document intensive for that reason.  As the

1   videotape shows from Mr. Larian's deposition that was

2   right before trial, he takes a long time, if you put a

3   document in front of him.  You know, whether that's proper

4   or not, really isn't the issue to me, but it certainly is

5   not time that should be counted against Mattel's

6   examination time.

7           So these are part of the reasons.  And there is

8   certainly, I think, comparable instances in this case that

9   we can compare and say why is the 21 hours that we want a

10  fair reflection of the amount of time that we should be

11  allowed.

12          Paula Garcia, for example, she was a Bratz

13  manager, she was an executive, she reports directly to

14  Isaac Larian, she is the person who was principally

15  responsible, within the company, for the Bratz brand at

16  that time and, therefore, she was a central witness in

17  phase 1.  We deposed her, in total, for 28 hours.  This

18  was all pursuant to Discovery Master order.  The first two

19  sessions were 14 and the second two sessions were 14

20  hours.  And her role, frankly, was, if anything, while it

21  was obviously a significant role, she had nowhere near the

22  number of topics that we have to cover with Mr. Larian,

23  and have to cover in detail, including with documents.

24  She was the major witness on really the timing of Bratz's

25  creation and those issues, but she had nothing like the

EXHIBIT    26
PAGE    687

1    breadth of Mr. Larian, and 28 hours is what it took, with

2    the Discovery Master's blessing.

3          Another way of looking at it and another reason

4    we get to 21 hours is that we essentially have -- you

5    know, they all overlap, of course, but we have three very

6    large cases unto themselves, we have a consolidated

7    action, but we have MGA's own claims, we have Mattel's

8    trade secret claims, and we have then Mattel's RICO

9    claims, including all these complex financial

10   improprieties that have been alleged that I've been

11   discussing.  I mean, if those were separate cases, and

12   they certainly could be but for the administrative and

13   convenience and economy reasons of combining them, we

14   would have been entitled to 21 hours to depose, in total,

15   if those were separate cases.  So I do think that 21

16   hours, while I can understand that no one wants to sit for

17   a deposition for 21 hours, this is a multibillion-dollar

18   case, by MGA's own statements, they want billions of

19   dollars from us, Isaac Larian is the one who said that, he

20   is somebody who has been centrally involved in all of

21   these issues, and it's alleged throughout the pleadings,

22   and there's no disputing that, and there isn't a dispute

23   here.  So I do think that the 21 hours is entirely

24   appropriate and fair.

25          MR. O'BRIEN:  Thank you.  Ms. Hurst?

EXHIBIT  26

PAGE     688 13

1      MS. HURST:  Thank you.

2          When Mattel initially sought leave to amend to

3   include all of these transactions as the subject of this

4   case, it asked for 10 hours.  The documents concerning the

5   transactions have been produced, the documents that

6   evidence the transactions, the core of the transactions,

7   have been produced, and Mattel has not made a motion to

8   the Court for contempt of the Constructive Trust Order or

9   any other motion demonstrating that there's been any

10  violation of the Court's orders or that it has been harmed

11  in any way, shape or form by these transactions, because

12  there's no evidence there was any IP security interest in

13  connection with the loans.  Put simply, this RICO thing is

14  a big red herring.

15          Apart from the fact that Mattel has suffered

16  absolutely no harm that it can identify or has ever

17  identified in any motion either before you or before Judge

18  Larson from any transactions, as Mr. Zeller said, in one

19  of our last few appearances here, it's the lawyers who

20  have the primary knowledge about these transaction

21  documents, it's the lawyers who will tell us the most

22  about how the transactions were structured.  In fact,

23  Mr. Zeller justified his desire to take depositions of

24  many lawyers on the grounds that they are likely to have

25  the greatest amount of knowledge and be able to testify at

EXHIBIT __26__

PAGE _____ 6-9

14

**TRANSCRIPT OF PROCEEDINGS**                    08/27/09

1    the greatest length about that.  In response to my comment

2    that we should go last with the lawyers, Mr. Zeller

3    specifically objected to that notion for those very

4    reasons.  And that is right in this instance.  Mr. Larian

5    is not personally a signatory to any of these transaction

6    documents, with respect to taking out the loan, and

7    neither is MGA.  MGA is a third party to the transaction

8    between Omni and Wachovia.

9            So 4 hours, which is what would be offered, is

10   plenty to put Mr. Larian at the table to ask him about his

11   role in the transactions when he's not a signatory to the

12   main transaction between Omni and Wachovia, when MGA is

13   not a party to that transaction, and when Mattel has

14   sought numerous other depositions of lawyers saying they

15   have the principal knowledge on the subject matter.

16           So it's just not the case that 21 hours could

17   possibly be needed for the new material in this case.

18           Now, the witness has been deposed at length about

19   the prior aspects of the case, including MGA's claims, the

20   alleged perjury, concealment and so forth, he testified

21   twice in deposition about all these issues related to

22   Carter Bryant, at length, and then for many days at trial,

23   including a vigorous cross-examination on the document

24   that Mr. Zeller has identified which was the subject of a

25   great deal of argument, and the jury ultimately rendered

EXHIBIT 26

PAGE          690 15

TRANSCRIPT OF PROCEEDINGS                    08/27/09

1   its verdict on those issues.

2          So at some point there has to be some finality

3   here.  I don't see them asking for a new trial.  We're not

4   reopening phase 1 here.  If they want to ask for a new

5   trial, that's one thing.  But that hasn't happened.  So

6   what they're trying to do is plow old ground over and over

7   again.  In a situation where you have two competitors,

8   that's not appropriate.  It's just not appropriate.  There

9   is no case when 21 hours has been granted for a CEO of a

10  company, especially when he's already testified in

11  deposition for two days and at trial for seven.

12         It is not unusual for the CEO of a close

13  corporation to be involved in the affairs of that company,

14  but that also doesn't make it a license to force him to

15  devote so much time to preparing for a deposition and

16  attending one.  I want to focus particularly, as I'm sure

17  you know, on the process of preparation.  We've produced

18  4 million pages in this case.  If there is no limit on the

19  subject matter of the examination, then, the witness has

20  to be prepared to testify on everything that's been

21  produced.  And Mattel's suggestion, well, maybe we don't

22  have to depose him three days in a row, just makes that

23  situation even worse, because every time he testifies,

24  it's the same thing, his recollection has to be refreshed,

25  each time it's subject to examination on any number or

EXHIBIT  26

PAGE          691  16

1  myriad of topics, and so what you have is a request for

2  21 hours that, in fact, turns into 75 or 100 hours when

3  you count the preparation and everything else that's

4  necessary.  A great deal of time was already spent doing

5  that in the past, producing the witness, producing the

6  witness in an initial deposition, which Mr. Quinn

7  adjourned because he was finished.  He actually said, "I'm

8  done."

9        So the request is clearly, when you take into

10  account the nature of the process, the documents that have

11  been produced, what's truly the new subject matter, and

12  the lack of any harm to Mattel from these transactions

13  that it's complaining -- the harm to Mattel from these

14  transactions is that MGA survived to fight another day.

15  That's not legally cognizable harm.

16        So what we have here is a very big, dominant

17  market share competitor asking for 21 hours of deposition

18  from the CEO of the best competitor it's ever had.  And

19  that situation -- without regard to any limitation on

20  topics -- that situation is fraught with the potential for

21  abuse.

22        The right thing to do here is to give the amount

23  of time that we've offered and let them come and ask their

24  questions, and then evaluate it on the basis of that

25  record.  There is an exhaustion requirement here.  If they

EXHIBIT  26

PAGE _____ 692 17

1   really need that much time, let them come and ask the
2   questions and demonstrate why they couldn't get through
3   what they needed.  Mr. Quinn got through everything he
4   thought he needed in that first day and adjourned the
5   deposition.  If they make a record, they say we've
6   efficiently used our time and we couldn't get to all the
7   topics and here are the additional topics that we think
8   it's still fair to ask the question about, I'll be
9   reasonable about that and meet and confer, and we'll work
10  it out.  But just asking for 21 hours, without any
11  limitation whatsoever, without any case authority
12  supporting it, is just too much.

13        Let me add this, too.  On the trade secret stuff,
14  they've marked everything AEO on the trade secret stuff.
15  We can't even verify interrogatory responses because we
16  can't show the client the documents that they claim are
17  trade secrets.  So I don't know how they're going to ask
18  him anything about that because he's not even allowed to
19  see the documents.  So that's kind of a red herring, too.
20  That's not going to take any time.  They can ask him about
21  hiring those employees, which they've already asked him
22  about, as we demonstrated in our opposition, but we can't
23  prepare him with the documents and he can't testify about
24  the documents, unless they want to suddenly start
25  disclosing what they're claiming are trade secrets in his

EXHIBIT 26

PAGE       693 18

1   deposition.  So that subject matter is practically off the

2   table.

3            So what they really need, if they need anything,

4   are the new transactions, and if they want to ask about

5   these documents that were part of this supplemental

6   declaration, we'll agree to include that within the scope.

7   Those were late produced and I'm not going to quarrel

8   about that.  I'm not going to right now get into the whole

9   issue of objecting to that declaration.  It was late, the

10  documents -- but the documents were served last Friday,

11  and that is what it is.  I think that -- if they're saying

12  what they need is to examine the witness about those

13  documents, in addition to the topic that we've already

14  identified, which is the new transactions, we'll live with

15  that in light of the late production -- what they've

16  characterized as a late production of the documents.  But

17  that doesn't mean that they get to open it up to the rest

18  of the 4 million pages, which they've had for a long time,

19  and haven't identified any specifics of for examination,

20  needed examination that couldn't be conducted before.

21           So for that reason, because of the burden of

22  preparation based on the large size of the production,

23  because they can't really ask the witness very many

24  questions about trade secret, because there are other

25  witnesses who have more knowledge with respect to the

EXHIBIT  26

PAGE _____  694 19

1   transactions at issue in the RICO claims, and because

2   Mr. Larian is the spearhead of a competitor, the

3   deposition should not be allowed to go for 21 hours, it

4   should be limited to an initial 4 on the subject matter of

5   the new transactions and these new documents, and then if

6   they can show they need more, there were things they

7   couldn't get to, and if they're specific about it, we'll

8   be reasonable, and if we're not, the Discovery Master will

9   overrule us and order further deposition.

10              MR. O'BRIEN:  Thank you.

11              By the way, I do want to commend MGA in this

12  situation, not for the late production, but for producing

13  documents absent -- I think some of those documents were

14  the documents -- were a subset of the documents that were

15  provided to us for an in camera review, so I do appreciate

16  the fact that you've been able to go through and get some

17  of those documents to Mattel, without commenting on when

18  they should have been produced or that sort of thing,

19  because it is helpful to --

20              MS. HURST:  Right.

21              MR. O'BRIEN:  -- relieve some of our burden in

22  going through those documents.

23              MS. HURST:  That was our intention.

24              MR. O'BRIEN:  But also, I'm sure, Mattel

25  appreciates it.  So thank you for getting that done.  And

EXHIBIT  26

PAGE               695  20

TRANSCRIPT OF PROCEEDINGS                    08/27/09

1   the more that can be done along those lines from both

2   parties in the meet-and-confer process is certainly

3   welcome.

4          All right.  Mr. Zeller, do you want a brief

5   response to -- and I know there's cross-motions here.  I'm

6   going to let you have the last word, unless you say

7   something that is so egregious that Ms. Hurst takes the

8   floor.

9          MR. ZELLER:  I will do my best to avoid that.

10         MR. O'BRIEN:  All right.

11         MR. ZELLER:  I guess I would start with this,

12  which is, MGA doesn't really address its own claims here.

13  I mean, we hear no offer to stipulate that Mr. Larian

14  isn't going to testify at length in support of their,

15  quote, billion-dollar claims.  There is no reason to think

16  that, and we have not had it disputed, that he is the

17  central witness.  All we hear is well, he's the CEO.  But,

18  frankly, there is a process, there is a standard that the

19  law has for a, quote, apex, end quote, deposition, as I'm

20  sure the Discovery Master is aware.  That requires very

21  specific showings to be made before one can invoke

22  "because I'm an executive that my deposition or my time at

23  deposition should be limited."  They are apex depositions.

24  An integral part of that showing, in order to achieve that

25  protection, is that they don't have personal knowledge of

EXHIBIT  26

PAGE          696
                                                    21

1   the matters.  That's the mechanism by which CEOs avoid

2   harassment.  There is also a doctrine in the law.  It has

3   not been invoked here and it certainly has not been

4   proven, because it cannot.  Mr. Larian is a percipient

5   witness, and he is a percipient witness as alleged

6   throughout the third amended answer and counterclaims.

7   Their basic answer to that is not to dispute that that's

8   what's in here and that this involves now these expanded

9   pleadings and claims that are now at issue, and has been

10  recognized by Judge Larson and by the Discovery Master and

11  even MGA, all they really say is well, this is all a red

12  herring, we dispute it, Mattel hasn't been injured, and

13  that sort of thing.  But that is not a reason to limit

14  discovery.  Quite the contrary.  That these matters are in

15  dispute is exactly why we need discovery.  If they want to

16  stipulate to these then, certainly, they can take that off

17  the table.  But I certainly don't hear that.  That's, in

18  fact, exactly the opposite.  What we have done is we have

19  alleged these at some length.  You can see -- in fact,

20  just even talking about the fraudulent transfer claims,

21  the financial ones, I mean, we say, paragraph 105,

22                "MGA and Larian have, on

23           information and belief, engaged in a

24           complex scheme to transfer, launder or

25           otherwise hide the ill-gotten funds

EXHIBIT  26

PAGE     697

22

1           they have obtained by virtue of their

2           unlawful conduct and have gone to

3           extensive lengths to cover up and

4           obscure such activities," and it talks about how

5     this has gone on for years.  Of course, the third amended

6     answer and counterclaims talks about this for pages, and

7     all these various complex schemes that Mr. Larian is the

8     centerpiece of.

9           So even as to that, 4 hours is certainly not

10    going to be enough.

11          MGA's counsel says that somehow I represented the

12    lawyers were the principal actors in these transactions,

13    that's absolutely not correct, that is absolutely not what

14    I said.  The third amended answer and counterclaims makes

15    very clear who the central actor is and who the central

16    defendant is on these claims, Isaac Larian.

17          What I did say is that people like Peter Carson,

18    who was Omni 808's transactional counsel, certainly was

19    the hub of the various communications who -- of the

20    various participants over the agreements and the like.

21    But I never said he was the centerpiece of these very

22    complex and improper, in our view, financial schemes.

23          Also, I will note that Mr. Larian testified for

24    seven days at trial.  This just shows how central he is

25    already.  He's going to testify at least as much, and I

EXHIBIT  26

PAGE        698  23

**TRANSCRIPT OF PROCEEDINGS**                    08/27/09

1   hear no dispute from MGA, during phase 2.  There is no

2   evidence of undue burden here.  She talks about how -- the

3   fact that he's going to have to look at 4 million pages.

4   It's up to MGA how they prepare their witness, obviously.

5   That's not our issue.  But the fact that there are many

6   pages in this case only shows its significance.  It

7   doesn't mean that somehow a percipient, central witness

8   should be shielded from cross-examination in deposition

9   prior to trial.  That is, in fact, quite the opposite

10  under the cases and certainly under the prior

11  Discovery Master rulings.  While MGA's counsel said

12  there's no precedent for any of this, that's just not

13  correct.  There's precedent in this case for why it is

14  that Mr. Larian needs to come back for a deposition and

15  complete it and have further time.

16        Now, also has been invoked a couple of times was

17  the fact that the first day of his deposition, the very

18  first one, was, you know, quote, adjourned, and it was

19  done in a day.  Well, that is a fact.  But, of course, as

20  the Discovery Master knows from the hearing, that

21  deposition, by agreement, was limited, and in -- and that

22  was at MGA's own request, and it was limited to what was a

23  much narrower case at the time, Mattel versus Bryant.

24  That bears no resemblance to the pleadings that are now at

25  issue in this case.  So it has nothing to do with whether

EXHIBIT  26

PAGE            639   24

1   or not today Mattel should be entitled to additional time

2   to depose Mr. Larian, let alone something as minimal as 4

3   hours.

4           I will also say, and I will try and put this in a

5   least accusatory way as I can, but the last session, when

6   he appeared for 5 hours, I think a fair characterization

7   of the deposition is, and you can see this on the

8   videotape, is that MGA had incentive to use up an

9   inordinate amount of time, and Mr. Larian, in particular.

10  We put documents in front of him, documents he'd seen,

11  documents that weren't even text, documents that were

12  pictures, and he would sit there for -- you could put a

13  stopwatch to it and watch him look at it for five minutes,

14  just wasting time.  So while one can argue as to whether

15  or not a witness can or should or should be allowed to

16  spend as much time as they want reviewing a document, that

17  shouldn't count against us.  There's just no real way that

18  that could possibly be counted against us.  So, I mean,

19  the idea that if we're going to sit down for 4 hours,

20  we're not going to cover even these financial transactions

21  in 4 hours.  So this whole process of the exhaustion and

22  that sort of thing that MGA talks about is, first of all,

23  I don't think substantiated by either the law or the facts

24  in this particular case, but we will be back, and we won't

25  even get to the other cases in 4 hours.  So I don't think

EXHIBIT 26

PAGE                7005

1   that that is an appropriate process.  And also it's

2   somewhat contrary to the whole notion of burden here.  I

3   mean, they're saying that they want him produced all in

4   one fell swoop because he'll have to be re-prepared.  So

5   the notion of him showing up for 4 hours, which he'd have

6   to be prepared, and then some weeks or months, or however

7   much later it takes in order to get him back in the chair,

8   he'd have to be prepared again for that.  So I think that

9   that further, sort of, belies the whole notion of burden

10  in this particular case.

11          But, I think, also this idea that MGA is a third

12  party to the Wachovia transaction and the like, I mean,

13  that's a dispute on the merits, and it's alleged to the

14  contrary at tremendous length in the third amended answer

15  and counterclaims, and those allegations control.  If MGA

16  thinks that somehow Mattel is precluded from pursuing the

17  allegations that it has made in its operative pleading, it

18  is required to obtain an order from Judge Larson to

19  preclude Mattel from pursuing those claims.  Just because

20  they dispute the merits or don't think that we should be

21  entitled to pursue it is not an argument against

22  discovery.

23          MR. O'BRIEN:  Thank you.

24          I don't want this to go back and forth too long,

25  but that was a little bit longer of a reply than I

EXHIBIT 26

PAGE 701

26

1   expected.  If there's anything limited to the reply,

2   without getting back to some of the main arguments, that

3   you want to address, I want to give you time to do so, if

4   you feel you need to do so.

5           MS. HURST:  I'll submit.

6           MR. O'BRIEN:  All right.  Thank you.

7           All right.  Let me just ask one question,

8   Ms. Hurst, I -- witnesses are counseled by lawyers, and

9   I'm sure Mr. Zeller's done this with his witnesses, I've

10  done it with witnesses, I'm sure you tell people to review

11  the document carefully when it's put in front of you.

12  There seems to be an indication here that that process may

13  have been abused by Mr. Larian.  I don't know.  I'm

14  just -- that seems to be the underlying allegation here,

15  that he takes too long on these documents and runs out the

16  clock.  Do you have any suggestion of how to deal with

17  that without pulling a chess clock out and that sort of

18  thing, if that's a legitimate concern?

19          MS. HURST:  Yeah.  I mean, I will say that we

20  addressed, in some detail, in our opposition as to why we

21  felt that was not a legitimate concern, with that chart,

22  you may recall, that actually Mr. Rorie carefully

23  compiled.  You know, these were multipage -- the one that

24  sticks out in my mind, in particular, is this lengthy

25  document that was submitted in a Hong Kong litigation,

EXHIBIT  26
PAGE  702

27

TRANSCRIPT OF PROCEEDINGS                    08/27/09

1   where the legal standards for copyright infringement were

2   completely different, and this whole issue ended up, sort

3   of, being a tempest in a teapot right before trial, and

4   mostly was excluded from the trial because of those very

5   different legal standards.  And I think the witness was

6   quite fairly careful to review the entire document before

7   testifying about something that was occurring in a

8   different legal proceeding, under different rules.

9   Actually, I think that's a really good example of why

10  there was nothing wrong with what he was doing.  But,

11  certainly, it is not my practice in attending depositions

12  to try to run out the clock on people.  I think everything

13  that we have said since we've been here is let's be

14  efficient about this, let's get it done quickly, and let's

15  get this case to trial.  I'm sure that you will see that

16  also in connection with the deposition limits motion, in

17  terms of what we've proposed there, and the fact that

18  we're opposing a motion to continue the trial date and

19  everything else.  My approach is let's do what needs to be

20  done, but not more than what needs to be done.  I think

21  the witness took a fair amount of time, and by that I mean

22  an appropriate amount of time --

23              MR. O'BRIEN:  I understand.

24              MS. HURST:  -- on those documents.  So, can this

25  be addressed?  Yes.  Because if we know what the subject

EXHIBIT  26

PAGE  703

28

1    matters are in advance, then we know what to prepare him
2    on and things can move more quickly.  But if it's wide
3    open and it could be anything, and obviously he's not a
4    recipient or a sender on all 4 million pages, but that is
5    said to give you, you know, the flavor of what we're
6    dealing with, then that makes it a lot harder and makes
7    it -- by focusing on subject matters, we can better
8    address the need to move it along because we can prepare
9    him on the documents, he'll have seen them before we come
10   in, and things can move, hopefully, in an expeditious
11   fashion.
12             MR. O'BRIEN:  Thank you.
13             Let's go to the next motion, which is the cross-
14   motion that MGA filed -- MGA parties filed their motion
15   first, so, Ms. Hurst, can you address that motion.
16             MS. HURST:  I will.
17             Here's what I'd like to say about that motion.
18   First, I'd like to say, where is Mr. Searcy?  I mean,
19   look, the motion -- we're sitting here, there have been
20   four briefs and several declarations filed, and we still
21   don't have any idea whether Mattel, in fact, has custodial
22   information, and by that I mean information identifying
23   the files or folders from whence the documents came and
24   the persons who possess them.
25             MR. O'BRIEN:  Just to be clear, you're looking

EXHIBIT  26
PAGE  704

29

1    for both the paper files, so, for example, if there's a

2    Redweld with a name on it, or that sort of thing, or

3    hanging file, you're also looking for the electronic file?

4             MS. HURST:  Right.  So if it came out of a folder

5    on somebody's computer and there's a path associated with

6    that that would say, you know, so-and-so, the drive and

7    the folder name and the file name, then that gives the

8    information about where the document came from.

9             MR. O'BRIEN:  Just to be clear, you're looking, I

10   think this is the same for Mattel as well, you're looking

11   for ESI, as well as what I'll call the physical or the

12   paper -- and I want to be careful there because obviously

13   if you print it out, it then becomes paper but --

14            MS. HURST:  Right.

15            MR. O'BRIEN:  -- what we traditionally refer to

16   as the paper file information, as well as the ESI,

17   correct?

18            MS. HURST:  What we're not looking for is all

19   metadata.  ESI, to me, is not necessarily clear

20   terminology, so I'm going to be very precise, because we

21   are not claiming that somehow everybody has to -- either

22   side has to go back and now do a native production of all

23   these documents with all the metadata associated with it.

24   We're looking for source-identifying information.  So that

25   means from whom did it come and what -- and/or what

EXHIBIT  26

PAGE        705

30

1  folders did it come from, however those are identified,

2  either by the file path for where the document was stored

3  or if it was a paper folder, as you suggested, you know,

4  the outside of that to see what it was called and who had

5  it.  The key is, really, the identifying the people from

6  whom they came, because that's really what is at issue

7  here is the ability to prepare for depositions, to take

8  the depositions of those people using their documents.  I

9  mean, that's the real thrust of this, the whole purpose of

10 this.  You know, they produced close to a million pages of

11 documents, we expect, perhaps, they'll produce more in

12 response to various orders that you've made, and for us to

13 effectively prepare for deposition, knowing who the

14 documents came from is really the key.

15         So that was the original purpose of me raising

16 this issue.

17         So I raised the issue, and what we ended up with

18 is we're not going to do anything unless you do and we're

19 not going to tell you what we have or whether we'll do it

20 unless you go first.  And that position was taken to such

21 an extreme that we have now fully briefed these two

22 motions, and you've been given no evidence about whether

23 they have custodial data, whether they've preserved the

24 custodial data, whether they're in a position to produce

25 it or not, and what would be associated with doing so.

EXHIBIT  26

PAGE _____ 706

31

**TRANSCRIPT OF PROCEEDINGS**          08/27/09

1    That's the extreme to which they take the position, that
2    we're not going to do anything unless you, MGA, go first,
3    and then they layered on top of that what I have to say is
4    just a baseless accusation of spoliation.  A baseless
5    accusation of spoliation is layered on top of that to
6    force us to disclose what we've got so they can then
7    evaluate whether they really want to make an exchange or
8    not, and then in their fourth brief they say oh, yes,
9    well, we really did always want a reciprocal exchange,
10   when I will tell you, and you can swear me and take my
11   testimony now, when I was on that telephone with
12   Marshall Searcy he absolutely refused to say that they
13   would engage in a reciprocal exchange, unless we disclosed
14   what we had first.
15           So this is not good faith meet and confer.  This
16   whole thing could have been avoided if Mr. Searcy would
17   have committed to engaging in a reciprocal exchange.  If
18   they would have ever given us any information about what
19   they had and what they were willing to produce, this whole
20   thing could have been avoided.  And, honestly, with all
21   due respect, that is a sanctions-worthy situation.
22           Let me add, on their cross-motion, I'll just
23   address it and then if they want the last word -- if
24   that's all right with you.
25           MR. O'BRIEN:  Please.  We'll figure it out.

EXHIBIT 26
PAGE 707

32

1          MS. HURST:  Okay.

2          MR. O'BRIEN:  Hopefully everyone feels that they

3    get a chance to comment on all the things that have been

4    raised on both sides.  So do your full argument on both

5    motions and then --

6          MS. HURST:  Okay.

7          MR. O'BRIEN:  -- Mr. Zeller or Mr. Proctor or

8    Ms. Estrich will jump in.

9          MS. HURST:  On their cross-motion -- we tried to

10   be reasonable about this by saying we're limiting our

11   request to what you've got.  We still don't know what that

12   is, even sitting here today now, after we fully briefed

13   this and we've had however many conversations, but they

14   want to go further, they want to say well, it doesn't

15   matter what you've got, we also want everything else, even

16   if you don't have it.  And we object to that.  We are

17   absolutely willing to produce what we've got, which I

18   believe my declaration fully demonstrates is quite

19   substantial.

20         MR. O'BRIEN:  I believe -- did your declaration

21   say 90 percent?

22         MS. HURST:  Yes.  And with respect to a lot of

23   the rest of this stuff, it's the kind of stuff that you

24   don't really have custodians for, like TV advertising and

25   magazine ads and those kinds of things.  It is, however,

EXHIBIT  26

PAGE                    33

1   burdensome in the extreme to force us to try to go back

2   and find additional information for the 10 percent when

3   they didn't insist on it before collection the first time

4   through.

5        They say we haven't demonstrated the burden.

6   Well, of course, we have.  I mean, if we produced

7   4 million pages, and we've got custodial information on

8   90 percent of it, that leaves 400,000 pages that we would

9   have to go back and try to account for -- or some

10  whereabouts there.  That is a substantial burden, when the

11  parties -- they could have insisted at the outset that it

12  be collected, and they didn't.  And that's, I think,

13  fairly read, what that Autotech case says.

14       So we've identified what we have and are capable

15  and willing of producing.  They've argued vociferously

16  that it would be unfair for us to be forced to produce

17  anything -- well, they argued it the other way around --

18  for us to be forced to produce anything unless they could

19  do as well.  And so I'd like to know what have they got

20  and are they going to give it.  And if they don't have

21  anything and they're not prepared to give it, then how do

22  they reconcile their own arguments about unfairness in

23  light of the whole course of conduct here where we're

24  sitting here today with four briefs having been filed on

25  these issues, or more, multiple declarations, and we still

EXHIBIT   26

PAGE        709

34

1   don't have any idea what custodial information they
2   possess.
3          I'll submit.
4          MR. O'BRIEN:  Thank you.  Ms. Estrich?
5          MS. ESTRICH:  Mr. Searcy has a declaration here,
6   as does Mr. Proctor, which paint, I guess, what you might
7   say the he said/she said version of these meet and
8   confers, who offered what to whom and who insulted whom in
9   the process.
10         I think at this point it's probably sufficient to
11  say that there was not effective communication between
12  counsel as to these issues.  But when you look at it,
13  there's very little real disagreement here.  Without doing
14  he said/she said, it seems like what happened was
15  Ms. Hurst came to Mr. Proctor and said, for very
16  reasonable reasons, we would like custodial information.
17  I don't think anyone is debating that custodial
18  information is very relevant and useful.  We all agree
19  it's relevant for deposition.  You may have noticed,
20  Mr. Molinski had a declaration, just recently in the MGA
21  Mexico issue, where he said no, you're not -- it's not
22  correct that MGA Mexico has produced nothing because we
23  collected documents from MGA Mexico for earlier
24  productions.  Now, that's precisely the kind of custodial
25  record information, where did the documents you've

EXHIBIT  26

PAGE          710

35

1   produced come from.  Very relevant to know.  So we don't

2   disagree about that.  I don't think either side disagrees.

3   Nor do we disagree, hopefully, because if we did I would

4   be the wrong person to be arguing, about the precise form

5   the exchange of electronic metadata should take.  I am

6   happy to defer to Ms. Hurst's superior knowledge on the

7   file system.  But I don't think there's any real

8   disagreement.

9          MGA offered -- MGA came to us and said will you

10  provide custodial information.  I think our response, or

11  we can assume our response at this point was sure, we

12  will, what about you?  And therein communication breaks

13  down between no, you go first, no, you go first.  But the

14  bottom line is we have said all along, we have preserved

15  the custodial information, we will provide the custodial

16  information, all we asked for initially was the very same

17  thing.

18         The one point I would hope Ms. Hurst would

19  address is that when we did initially ask for that mutual

20  exchange, we were told that there may have been custodial

21  information destroyed by previous counsel, by Skadden.

22  And that that was a problem that MGA brought to our

23  attention.  So the idea that we have somehow cast this

24  pall of spoliation, or something -- they brought to our

25  attention -- we said we've got ours, they said prior

EXHIBIT  26

PAGE  711

36

**TRANSCRIPT OF PROCEEDINGS**                          08/27/09

1   counsel, and there've been many prior counsels, may have

2   not preserved it.  So all we asked -- and really this is

3   all I'm arguing for today -- is produce what you have and

4   if anything has actually been destroyed, because we have

5   had a problem, and I make no personal allegations, but

6   there have been some problems in this case with things,

7   you know, getting lost or destroyed, if anything has been

8   destroyed, tell us when it was destroyed, what happened,

9   and the circumstances and parties involved in the

10  destruction.  I mean, that does not strike me, but

11  obviously this is for you to decide, as a sanctionably

12  unreasonable position to take in response to counsel

13  telling you we'd be happy to do a mutual exchange of what

14  we have, but you guys have everything, and we may not

15  because the previous lawyers may not have preserved it.

16  That is really all we're asking for.

17         I'm happy to agree that it shouldn't require four

18  briefs, but I do think there is one, as I'll call it,

19  legitimate issue here, which is how do you have

20  reciprocity of relevant information, which we all agree is

21  relevant, when one side is coming in and saying we've got

22  everything, we've got everything preserved, we've

23  preserved everything, we'll produce everything, and the

24  other side has come in and told us we have a potential

25  problem with spoliation, or destruction here, at least.

EXHIBIT   26

PAGE         712

37

```
 1    It seems fair for us to want to know about that problem.
 2              I think that's -- Mr. Zeller, have I missed
 3    anything?
 4              MR. ZELLER:  I think so.  The only thing I would
 5    say is because it was being somewhat personalized about
 6    Marshall Searcy, in particular, and his absence, is
 7    Mr. Searcy is out of town today and tomorrow.  Certainly
 8    if the Discovery Master would like him to come in and
 9    address the particular allegations that have been, kind
10    of, leveled against him further, we're happy to do that.
11    He is not being hidden in any way, as, I think, was being
12    suggested.
13              MR. O'BRIEN:  I didn't get that suggestion, and,
14    as I've said, I think both sides have had allegations
15    about the meet-and-confer process about the other lawyers,
16    and that sort of thing.  My assumption, knowing the Orrick
17    firm and the Quinn Emanuel firm and the other firms
18    involved is that the lawyers act in a professional manner,
19    and that doesn't mean that everybody is always an angel or
20    perfect or that sort of thing, but I'm certainly -- and I
21    don't think Ms. Hurst was impugning Mr. Searcy or
22    suggesting that you'd hidden him here today.  So that's
23    fine.  I appreciate that comment.
24              Ms. Hurst, can you address this issue that -- so
25    it sounds like we have a, at least as of today, a fair
```

EXHIBIT 26
PAGE 713

38

1  level of agreement, but the one issue that Ms. Estrich

2  brings up is the issue of Skadden either having lost or

3  destroyed documents.  I'm certainly not -- I'd like you to

4  address that.  I would be surprised to learn that Skadden

5  destroyed documents, I mean, maybe they lost documents,

6  that sort of thing.  But can you explain what that issue

7  is.

8          MS. HURST:  Yes.  Let me first say I'm not sure

9  we have a high level of agreement because we still don't

10  have any idea what they have.  I mean, you know, for

11  example, there's --

12          MR. O'BRIEN:  Mattel says they have everything.

13          MS. HURST:  Okay.

14          MR. O'BRIEN:  That's just from today's hearing,

15  that's what I'm hearing on Mattel's side is that they have

16  all of the data.  If I'm wrong about that, let me know.

17          MS. HURST:  The entirety of their production?

18          MR. ZELLER:  Yeah, that's true.  What I would say

19  is, you know, obviously there are issues about what

20  particular forms there are, obviously between electronic

21  versus paper and that sort of thing, but we absolutely

22  have -- we have records for our production and where

23  things came from.  I mean, whether or not -- we certainly

24  also have it for, even, metadata level.  Now, to what

25  extent we have to go -- if someone wanted a particular

EXHIBIT 26

PAGE 714

39

1   e-mail, we'd have to go extract it off the tape somewhere,

2   that's a different issue.

3           MR. O'BRIEN:  My understanding is that neither

4   side is asking for all of the metadata in the native

5   production and the sort of thing we have to do now every

6   time a new case is started, so I don't think that's the

7   issue.

8           But, I think Mattel is saying that they've got

9   the information that you were asking about so --

10          MS. HURST:  Thank you.

11          MR. ZELLER:  We have an audit trail that shows

12   where documents came from.

13          MS. HURST:  That is exactly what we have, and

14   there is not any spoliation of that whatsoever.  And this

15   is -- you know, maybe it's a misunderstanding, maybe it's

16   a mischaracterization.  I don't want to characterize how

17   it came about.  But I sat right here, the very first day I

18   raised it, and said if we couldn't give you -- I fully

19   expect you to request this from us, okay, or -- you know,

20   because I know in making a request like this I've got to

21   be prepared to do it, too.  Those were the first words out

22   of my mouth.  And I wouldn't even request this if I wasn't

23   prepared to do it because I know that would lead to

24   mutually assured destruction, right?  So it would make

25   absolutely no sense for me to come here and request this

EXHIBIT  26

PAGE     715

40

1   from them, thinking that there had ever been any

2   spoliation by anybody, and I never believed that for a

3   minute.  What we had were multiple databases, one of which

4   was proprietary, and the data was maintained in different

5   formats, and I was concerned about exporting it all in a

6   form that put it all together and gave it to them in a

7   reasonable way.  And that is what I addressed in that

8   initial discussion.  You know, as I said, whether it's a

9   misunderstanding or a mischaracterization, or what, I have

10  never had any reason to believe that any data was

11  destroyed.  Our complete investigation, both before and

12  since, have never turned over one iota of suggestion that

13  any data was destroyed.  We've identified our audit trail,

14  as they have, you know, described for nearly 90 percent of

15  the documents, which remain in our possession.  So, you

16  know, in terms of this custodial data thing, that's the

17  story.

18          MR. O'BRIEN:  All right.  Thank you.

19          Anything further on this issue?

20          All right.  I'll issue an order on it.  So both

21  parties know where we're going on this issue, I want to

22  make sure that we have a reciprocal exchange of source-

23  identifying data.  What I'd suggest is that, rather than

24  me trying to come up with the procedure for that to

25  happen, I suggest that the parties have a good faith meet

EXHIBIT  26

PAGE     716    41

**TRANSCRIPT OF PROCEEDINGS**          08/27/09

```
 1    and confer, and I'd like to ask that Ms. Estrich be
 2    involved in that, as well, in addition to Mr. Searcy.  And
 3    that's not in any way impugning Mr. Searcy, but I'd like
 4    to have her involved in that since she's handling this,
 5    and meet with Ms. Hurst, and whoever on your team you need
 6    to meet with, and come up with a method for a mutual
 7    exchange of this information.
 8              MS. ESTRICH:  I'd be glad to do so.
 9              MR. O'BRIEN:  All right.  I'm not as solicitous
10    as I should be of our court reporter, who is fabulous and
11    does a great job on these transcripts, and we don't take
12    too many breaks.  We have one more motion here.  Would you
13    like to take a break and give your fingers a rest?
14              (Discussion off the record.)
15              MS. HURST:  I had two housekeeping issues I
16    wanted to bring up, too, whenever it's convenient.
17              MR. O'BRIEN:  Why don't we do those now, and then
18    we'll do the last motion, the motion to compel responses.
19              MS. HURST:  All right.  We agreed, subject to
20    your approval, that we would provide the list of names
21    that you need for the in camera inspection by
22    September 11th.  I hope we will get it to you sooner, but
23    my two people who have been most deeply involved in this,
24    one has an appeal brief due and the other is getting
25    married in a couple of weeks, so -- and there's Labor Day
```

EXHIBIT  26

PAGE            7:7    42

1   in between, and so that is why we need the additional

2   time.

3           MR. ZELLER:  Well, this is new information to me.

4   If that means that someone's going to be able to work on

5   the appeal brief, I'm just -- I'm troubled.

6           MS. HURST:  Not the appeal brief in this case.

7   In another case.

8           MR. ZELLER:  For the record, I am joking.

9           MS. HURST:  Okay.  Well, she's actually not

10  working on the appeal brief in this case.

11          MR. ZELLER:  Then the extension is fine.

12          MR. O'BRIEN:  That would be fine.  I hope the

13  September 11th date doesn't -- inauspicious.  If we were

14  Romans, we probably wouldn't do that.  But that date is

15  fine and not a problem.

16          MS. HURST:  Okay.  Apropos of your last request

17  that Ms. Estrich participate in the further meet and

18  confer, first, I wanted to ask, with regard to your order

19  No. 52, that we received last evening, if there is going

20  to be further meet and confer on those requests and,

21  frankly, I would make this request more broadly, that both

22  sides be required to have people attend each session who

23  have full authority to compromise with respect to the

24  subject matter at issue, sort of like the kind of order

25  you see for a settlement conference.  Because one of the

EXHIBIT  26

PAGE  718

43

**TRANSCRIPT OF PROCEEDINGS**                    08/27/09

1    problems that we're having is that we can't seem to get

2    anywhere.  I mean, the parties might sit down and they

3    might talk for a while, but we never seem to get anywhere.

4    I want to cut through the wheel spinning, if possible,

5    by -- I have to say, if this requires client

6    representatives to be present, we're prepared to suffer

7    the consequences on that.

8        MR. O'BRIEN:  Okay.  One of the things -- I put

9    Ms. Estrich on the spot today because of this specific

10   issue, I don't want to get involved in telling either side

11   what lawyers need to be at what meet and confers, so I

12   don't want to do that, but I do think I put in one of the

13   orders, I don't know if it was 51 or 52, that the meet and

14   confer be attended by someone who has the authority to

15   make a decision on behalf of the client and --

16       MS. HURST:  That's all I meant.  I didn't mean

17   Ms. Estrich in particular.

18       MR. O'BRIEN:  No.  Otherwise, I'll ruin her

19   calendar and I'm sure Mr. Quinn will call me with a

20   complaint about that.  Both parties ought to send folks to

21   the meet and confer -- I'm not -- this is not a comment on

22   Ms. Hurst's comment that she's spinning her wheels,

23   because I'm not commenting on that part of what she had to

24   say, but both parties should make sure that lawyers who

25   have the authority and confidence of the client to enter

EXHIBIT  26
PAGE        719

44

**TRANSCRIPT OF PROCEEDINGS**                    08/27/09

```
 1    into agreements on discovery attend the meet and confer.
 2    I think that's a basis for a good faith meet and confer.
 3              Now, having said that, if there are initial
 4    matters where junior lawyers who know what is going on
 5    with the various productions and that sort of thing need
 6    to get together and talk before a, what we call in
 7    diplomatic circles, a meeting of the principals takes
 8    place, that -- there's certainly appropriate times.  I'm
 9    not suggesting that you or Mr. Zeller or Mr. Quinn or the
10    senior lawyers have to get together on every meet and
11    confer issue.  But once, kind of, the underbrush is
12    cleared on some of these key issues, it's obviously better
13    to have folks at the meet and confers that have authority
14    because we might be able to avoid some of the motion
15    practice.  We've had 52 orders now, we've got a couple
16    more coming out, we've tried to get through them as
17    promptly as possible, I've got some good partners who are
18    assisting me and paralegals to get through this, and so
19    we'll -- whatever you file -- I'm not suggesting that
20    anyone has to compromise at a meet and confer, because
21    you'll go to meet and confers and just not agree, and
22    that's why I'm here, that's why Judge Larson is where he
23    is, is to make those decisions.  But on some of these
24    issues, like the one today, perhaps, it would have been
25    possible to get to where the parties needed to go without
```

EXHIBIT 26

PAGE 720    45

1   motion practice.  So when it comes to actually making the
2   final decisions, I'm not going to order either party to
3   have specific lawyers there, but I am going to strongly
4   suggest that each party, Mattel and the MGA parties, have
5   lawyer representatives that can make decisions at the meet
6   and confer and don't have to go back and get approval from
7   someone else to do so.

8           MR. ZELLER:  I mean -- if I may just comment
9   briefly.  I mean, certainly that all makes perfect sense
10  and sounds reasonable as a principal.  It's hard to argue
11  against that.  One difficulty, however, is that it's not
12  just simply a matter of senior lawyers' times and, you
13  know, sitting around talking about hundreds of RFPs that,
14  in fact, MGA has put at issue.  I mean, we have ongoing
15  meet and confers where -- I believe at least 950, that's
16  just on one set of meet and confers -- 950 RFPs.  So not
17  only, of course, would it be just not practical to have
18  senior lawyers involved in that, but -- and I think this
19  is true on both sides, so I'll try to put it as neutrally
20  as I can -- but we both have clients we have to report to,
21  and clients who ultimately have to make some of these
22  decisions.  It, again, certainly makes a lot of sense to
23  say well, lawyers should be able to make these
24  determinations, but in many instances what sounds
25  perfectly sensible and reasonable to us, until we go and

EXHIBIT 26

PAGE           721        46

**TRANSCRIPT OF PROCEEDINGS**          08/27/09

1  re-investigate and we talk to the client and say well,

2  can't you get us these time records, presumably just spit

3  it out of the computer, then you find out what the reality

4  is, you know, that, perhaps, it's on some old system or

5  backup tape or things would have restored or -- you get

6  into these complexities and, you know, spending client

7  money that we, as the outside lawyers, even, just are

8  not -- we just can't prudently make on our own.  So I --

9  while, perhaps, in some cases where you're talking about a

10 very small universe of documents, you know, that sort of

11 thing can make a lot of sense.  I just think here we're

12 dealing with a lot of practicalities, particularly in

13 terms of what kind of information we need to even know if

14 we can compromise or not.

15          MR. O'BRIEN:  All right.  Okay.  I've made the

16 point.  I understand -- you've made some pretty good

17 points, and I don't think Ms. Hurst would, actually,

18 disagree with a number of the things you said.  Let's try

19 and make sure that where possible the meet-and-confer

20 process doesn't get bogged down and we have people

21 there -- I'm also not suggesting that, as lawyers, we're

22 not agents for our client, and clearly there are times you

23 have to go back to get your client's approval on things,

24 so -- I just throw that out as a general admonition, maybe

25 we can avoid some of the issues, like the motion today.

EXHIBIT  26

PAGE  722

**TRANSCRIPT OF PROCEEDINGS**                    08/27/09

1              All right.  Let's go to the final motion here,

2    which is MGA's Motion to Compel Responses to the First Set

3    of Phase 2 Interrogatories and Phase 2 Requests For

4    Production.

5              Ms. Hurst did narrow those.  I have your e-mail,

6    and I went through, and I don't know if I did a perfect

7    job, I did some highlighting in pink and some highlighting

8    in yellow.  I think I used the pink on the interrogatories

9    you were withdrawing, which impressed my 10-year-old

10   daughter that I was using a pink pen in work, and I think

11   I may have encouraged her to pursue a legal career because

12   you could use a pink pen.

13             MS. ESTRICH:  Legally blond.

14             MR. ZELLER:  So we'll --

15             MR. RORIE:  If it would help, Mr. O'Brien, I can

16   specify the rogs that are still at issue --

17             MR. O'BRIEN:  It is --

18             MR. RORIE:  -- and the RFPs that are still at

19   issue.

20             MR. O'BRIEN:  I have, on the interrogatories, 1,

21   2 and 12 through 14, are those the ones that -- those are

22   the ones that are out?

23             MR. RORIE:  Withdrawn, correct.

24             MR. O'BRIEN:  So we have -- this motion now is

25   concentrating on 3 through 11 --          EXHIBIT  26

                                               PAGE     723

                                                                    48

1           MR. RORIE:  Correct.

2           MR. O'BRIEN:  -- on the interrogatories.  And

3    then on the requests for production, I have 69 and 70 are

4    out?

5           MR. RORIE:  98, 107 and 108 are also withdrawn.

6           MR. O'BRIEN:  Let me just make sure I've got the

7    same.  I think I did this correctly.  All right, 98, 107

8    and 108.

9           I do appreciate you narrowing the issues for the

10   motion, and with that, now that we're on the same page,

11   the floor is yours for your argument.

12          MS. HURST:  Mr. Rorie is going to address this

13   motion for us.

14          MR. O'BRIEN:  All right, Mr. Rorie.

15          MR. RORIE:  Mr. O'Brien, I think there are three

16   big-picture issues that this motion involves.  One is

17   whether Mattel's objections should even be heard; No. 2 is

18   whether the objections have any merit; and No. 3 is

19   whether Mattel should be sanctioned.

20          As to the first issue, if the interrogatories and

21   RFPs seem like déjà vu all over again, that's because they

22   are.  These interrogatories and RFPs were the subject of a

23   motion for a protective order that Mattel filed in June,

24   that motion was fully briefed and argued before

25   Mr. O'Brien, the Discovery Master, and we received a

EXHIBIT  26
PAGE  724

49

1    ruling on it.   Nowhere in that motion for a protective

2    order did Mattel ever raise any of the substantive

3    objections that it is asserting in opposition to this

4    motion.   Mattel hung its hat entirely on its counting

5    objection, which this Court addressed and rejected.  Our

6    position is that we're not aware of any authority or any

7    case law that allows a party to move for a protective

8    order, assert the bases for their protective order, have

9    that protective order denied, and then come back and say

10   well, we've got these other objections that we'd also like

11   to be heard and they are grounds for not answering this

12   discovery.

13          Prior to the motion practice, there was extensive

14   meet and confer, and all those letters are in the

15   declarations.   None of them talked anything about

16   relevance, about overbreadth, unduly burdensome, it's all

17   on the counting objection.  Our position is that once the

18   counting objection was resolved, the discovery at issue

19   needs to be addressed, and that Mattel has waived the

20   substantive objections.   That's point No. 1.

21          As to the merits of the objections themselves,

22   without going into detail, and I'm prepared to do that,

23   just for this opening position, it seems like there are

24   three main objections that Mattel is asserting and then a

25   couple smaller ones.   The first one is their counting

EXHIBIT __26__

PAGE ___725___

50

1    objection, which we still haven't gotten anything saying

2    they're withdrawing it, and I'm not going to spend much

3    time on that because the Discovery Master, in order

4    No. 46, rejected that claim, MGA Entertainment is well

5    under its 25 limit, so that pretty much goes out the

6    window.  I don't think there's much to talk about there.

7              The next substantive objection they raise is kind

8    of relevance and overbreadth.  If I could just briefly

9    describe the rogs and RFPs.  I think a cursory look at

10   them shows how relevant they are.  On the rogs, I kind of

11   group them together, rogs 3, 4, 5 and 6 are pretty much

12   all narrowly tailored towards getting information about

13   the damages.  They go with Mattel's counterclaims, they're

14   RICO damages, they're trade secret misappropriation

15   damages, and, you know, again asking your opposing party

16   for information about what damages they're claiming in a

17   multibillion-dollar case, I don't know how it gets more

18   relevant than that.

19             Rogs 7 and 8 ask Mattel to identify the specific

20   products that they believe were harmed by MGA's conduct

21   and the actions that are alleged in their cross-complaint.

22   Again, they're putting these items at issue by making

23   allegations against us, so relevance -- I don't see how

24   you get around that.

25             9 through 11 have to do with the spoliation

EXHIBIT 26

PAGE 726

51

**TRANSCRIPT OF PROCEEDINGS**                08/27/09

1   claim.  Paragraph No. 103 in the cross-complaint talks all

2   about the spoliation allegations.  Those allegations are

3   incorporated in all of the underlying causes of action.

4   So, again, relevance as to the interrogatories seems

5   pretty clear.

6           On the RFPs, you break it down into, again, 71

7   and 72 are docs related to damages, 73 through 76 is data

8   regarding the harmed products, and by data we're simply

9   asking for the number of units sold, revenue received, the

10  costs incurred by Mattel, and the net and gross profits.

11  And, here again, we're only asking for documents

12  sufficient to show these items, so -- it's not like we're

13  reaching for the stars here.

14          80, 82 and 84 all have to do with causation.

15  There are requests that ask about recall of Mattel harmed

16  products, complaints about Mattel harmed products, and

17  research, whether any recall of a Mattel harmed product

18  impacted sales.  And here the relevance is because,

19  obviously, if they're identifying a product that they

20  claim was harmed by an action of MGA and that product also

21  happened to be recalled, or there were complaints about

22  it, or there was internal research showing that sales were

23  impacted, without anything having to do with MGA, that's

24  an intervening cause and we're entitled to that type of

25  information.                          EXHIBIT 26
                                          PAGE         727

52

1      80, 90 and 93 all have to do with research

2   regarding the decline in the sales of the Mattel harmed

3   products, research about their future sales of the Mattel

4   harmed products.  And, again, that has to do with Mattel

5   putting these items at issue by claiming that certain

6   products were harmed by our actions, so if they've got

7   research internally or from a third-party source that

8   talks about these harmed products, we want to see what it

9   is.

10      So that's kind of the relevance and overbreadth

11   objection that they raise.

12      The next big one they raise is their unduly

13   burdensome objection.  I guess the thing that -- the

14   points I would make here are, again, the standard is not

15   whether it's unduly burdensome to Mattel.  All discovery

16   has some burden associated.  But the point here is that

17   the burden has to outweigh the relevance.  And here the

18   relevance is so high that they have an extraordinarily

19   high level of burden that they need to show, and they

20   haven't satisfied it.  They submit two declarations, one

21   from the head of their IT group and another from another

22   individual, I believe she was involved with the sales of

23   the Barbie line of products, and they try to paint the

24   picture that this discovery is going to weigh us down,

25   it's going to cost us all this money, we have servers all

EXHIBIT  26

PAGE      728      53

1    over the world.  I guess my point to that would be, again,

2    they're the ones who are putting these items at issue,

3    they're the ones who are making the allegations in this

4    case.  If they want to withdraw the allegations and forego

5    the burden of producing this information, that's their

6    prerogative to do so.  But if they're going to insist on

7    making billion-dollar claims against MGA, then they're

8    going to have to undergo some burden to produce the

9    damages and the documents that substantiate those claims.

10           There was an order issued earlier, I think order

11   No. 46, if I recall, issued by the Discovery Master

12   earlier in this case, and it was the converse, where

13   Mattel was moving to compel on MGA for certain items, I

14   think it was related to MGA's cross-claims, we brought a

15   burdensome objection, and the response was pretty much

16   what I've just stated, look, if you're going to bring

17   these allegations and if the discovery is narrowly

18   tailored to them, then you need to undergo the burden of

19   producing the information that's been asked for.

20           So I don't think, when you really drill down on

21   the over- -- on the burdensome objection, that there's

22   really anything there.

23           The last -- the other objections they assert are

24   kind of -- there's kind of a potpourri.  One is that

25   they've got a privilege objection, but it's this generic

EXHIBIT  26

PAGE

729    54

1   privilege, they don't identify any documents or any
2   specific information that they claim was privileged.
3   There's a case on point, which we cite in our brief, which
4   is the Eureka Financial case, which says you can't just
5   assert a generic privilege and hope to rely on that to not
6   fulfill your discovery obligations, you need to identify
7   what you think is privileged and what's not, and if you
8   don't, that objection goes out the window.

9            There's an objection that all of this discovery
10   is premature.  But, again, we've got a little over three
11   months left in fact discovery in this case.  I don't think
12   there's anything that's premature at this point.  And,
13   again, this is all documents and information that Mattel
14   is currently aware of, so -- they always reserve their
15   rights to supplement based on later obtained information,
16   and we're entitled to what they have now.

17           The last objection they raise is this notion that
18   this stuff is somehow going to be the subject of expert
19   discovery.  Any overlap with expert discovery is beside
20   the point.  Whatever they have now related to these
21   interrogatories, related to these documents, we're
22   entitled to see.

23           I'm sure Mr. Proctor will talk more about their
24   objections, but those are, kind of, the big ones that I
25   see.

EXHIBIT  26

PAGE      730

55

1        The last point, and then I'll conclude, and then

2    respond, is the sanctions.  And, again, the reason why

3    we're seeking sanctions in this instance is, again, it

4    seems like Mattel is hanging their hat on this counting

5    objection.  The Court has already ruled that that is not

6    going to hold any water, and yet we still have to come

7    here today and argue this motion for a second time --

8    argue this discovery for a second time, get into

9    substantive objections, which were never briefed in the

10   protective order, never addressed in the meet and confer,

11   and once that protective order was denied, answering this

12   discovery should have been a foregone conclusion.

13   Instead, we have to file this motion and force Mattel to

14   do what it already should have done.  There's really no

15   reason why we should have had to do that, and that's the

16   basis for our sanctions motion.

17        MR. O'BRIEN:  Thank you.  Mr. Proctor?

18        MR. PROCTOR:  Thank you.  I'll try to start from

19   the back and work my way forward, I think.

20        This motion has nothing to do with counting.  At

21   the time the motion was briefed, the protective order

22   motion that we had filed previously was pending.  That has

23   since been resolved.  Mattel is not -- we haven't appealed

24   the ruling on that, we're not purporting to stand on any

25   counting objections to support not answering the

EXHIBIT    26

PAGE       731

56

1    discovery.

2           MGA came to us on Monday with what they called a

3    compromise proposal to try to take the motion off the

4    table.  What they said was we'll withdraw the

5    interrogatories and requests for production, that they've

6    now told the Discovery Master they're withdrawing anyway,

7    and in exchange you, Mattel, should withdraw all your

8    objections, except privilege, and fully respond to all the

9    interrogatories and produce all the documents within

10   10 days.

11          It is precisely that -- that demonstrates exactly

12   why we are still here, because there are all sorts of

13   substantive problems with these interrogatories and these

14   requests for production that make that type of a request

15   impossible for us to comply with.

16          I'll address the waiver issues briefly, since

17   they've been pressed, which is somewhat surprising to me.

18   I'm not aware of any authority, MGA hasn't cited any

19   authority that says that if you move for a protective

20   order, which we did on a discrete counting issue in order

21   to get that issue resolved as quickly as possible by the

22   Discovery Master, because the parties obviously had a

23   disagreement as to how the interrogatories should be

24   counted, as the Discovery Master well knows, that if you

25   move for a protective order and lose, you can no longer

EXHIBIT  26

PAGE _____ 732

57

**TRANSCRIPT OF PROCEEDINGS**                              08/27/09

1   refuse to fully respond without objection to

2   interrogatories or requests for production, you can no

3   longer oppose a motion to compel, you've just waived your

4   right to oppose a motion. That's not the law. Parties

5   move for protective orders repeatedly in this case. I'm

6   simply not aware of authority, and it hasn't been cited,

7   that says that we somehow waived rights by moving for a

8   protective order in order to get a prompt resolution to a

9   discrete legal issue.

10          The second waiver point, and this one I'm

11  particularly surprised about, at least that it was -- not

12  while I was surprised to read it in the briefs, I was more

13  surprised that it's pressed, and that is that apparently

14  the argument is, and it clearly is in the briefs, that

15  we've waived our privilege objections by not providing a

16  privilege log, even though the discovery hasn't been

17  compelled. That strikes me as a dangerous position for

18  MGA to be taking, given the conduct that's occurred in the

19  past as to privilege logs by both MGA and its affiliates,

20  and the Discovery Master is pretty well aware of this, as

21  well, I think, so I won't belabor it, but certainly

22  there's no obligation to provide a privilege log of all

23  withheld responsive documents until you've been told you

24  have to go look for them because it's not too burdensome

25  for you to look for them. There's no way to even log the

EXHIBIT  26

PAGE     733          58

TRANSCRIPT OF PROCEEDINGS                                    08/27/09

1    documents until you look for them and find them.  And we
2    have obviously taken the position, and we believe
3    correctly, that we shouldn't have to go look for the vast
4    majority of these documents because of the extensive
5    burdens that are at issue.

6          So that takes us to the merits.  On the merits --
7    there are a few fundamental problems.  I'll try to address
8    them by category.  I think they line up, more or less,
9    with Mr. Rorie's categories.

10         The first one is damages, and there are damages
11   interrogatories, I would characterize those as 3, 5 and 6.
12   I believe Mr. Rorie included No. 4 in there, which I
13   don't -- I wouldn't lump into the same group, I'll address
14   that separately, but 3, 5 and 6 are damages
15   interrogatories.  And it's important to realize what they
16   seek.  5 and 6, in particular, use the word "identify" and
17   they say identify your damages from various things, 5 is
18   identify any damages you've suffered as a result of the
19   RICO violations, essentially, 6 is identify the damages
20   you've suffered as a result of the misappropriation of
21   trade secrets.  If you look at the definition "identify"
22   that MGA uses, what they are looking for is a dollar
23   amount.  They are asking to have a computation of our
24   damages.  Damages, particularly in a case like this, is
25   classically something that is ripe and suited for expert

EXHIBIT  26

PAGE      734

59

1  testimony.  We have cited cases which make perfectly clear
2  that these types of interrogatories can't be fully
3  responded to, as MGA has demanded, because they're suited
4  for expert testimony.  The time for expert disclosures has
5  not yet come, the time for us to disclose our computation
6  of damages has not come and, therefore, to have us -- to
7  require us to waive or withdraw our objections that, for
8  example, the interrogatory's suited for expert testimony
9  and that's required in order to fully respond to it would
10  be wrong.
11      The second one is No. 4, and --
12      MR. O'BRIEN:  I'm sorry to interrupt you,
13  Mr. Proctor.  You said you can't fully respond.  Is it
14  possible to partially respond --
15      MR. PROCTOR:  I think it's --
16      MR. O'BRIEN:  -- to the interrogatory?
17      MR. PROCTOR:  I think it's possible to provide
18  some categorical information about the types of damages
19  which are at issue, and I think that's the type of
20  information that can be provided.  That's, frankly, been
21  done previously as to previous interrogatories in the
22  case.  These aren't the first damages interrogatories that
23  MGA has served.  I think that type of information can be
24  provided.  The problem is they're seeking computations.
25  They're seeking, you know -- at least by the terms of the

EXHIBIT 26
PAGE 735
60

1    interrogatories, they purport to seek very specific

2    information.  And that really it's not possible to provide

3    at this stage.

4         I'll take No. 4, since that relates to this

5    group.  No. 4 is a -- there are discrete issues about it.

6    It's the only interrogatory that -- well, it's an

7    interesting interrogatory.  It relates back -- Ms. Hurst

8    had said she doesn't like interrogatories that do this, it

9    relates back to a request for admission, and the request

10   for admission is admit that you never intended to sell the

11   Bratz line of dolls and products.  That's it.  Admit that

12   you never intended to sell the Bratz line of dolls and

13   products.  And then the interrogatory's, effectively, if

14   you don't admit that, tell us everything about that, tell

15   us why, tell us who, tell us the -- give us the documents,

16   tell us about the documents.  No. 1, the request for

17   admission is perplexing.  It's got no time description,

18   it's got virtually no description at all.  More

19   importantly, to the extent I understand it, it is

20   completely and totally irrelevant.  Whether Mattel

21   intended to sell a line of products that it did not know

22   it owned, because that was fraudulently concealed from it,

23   is irrelevant information.  It's a -- it is a perplexing

24   question to ask if you intended to sell something that was

25   stolen from you and you didn't even know it.  So I don't

EXHIBIT  26

PAGE  736

61

```
 1   know how to answer this interrogatory.  I don't know what
 2   they are asking, or even the purported relevance of it.
 3   They're not asking admit that you could not have sold it.
 4   They're not asking anything else about that.  They're
 5   asking admit that you never intended to sell it.  Whether
 6   we intended to sell it is simply irrelevant, I would
 7   submit, and, therefore, this interrogatory -- and there's
 8   a request for production that relates to it, refers back
 9   to it -- I think, should go out the window in their
10   entirety.
11            The next category that I would discuss, and I
12   think this is really the last category that I'll
13   separately discuss, unless the Discovery Master has
14   questions, is a series of questions about the products,
15   specific products that Mattel contends have been harmed.
16   There are two interrogatories, 7 and 8, which ask us to
17   identify, and by identify they mean provide the SKUs, you
18   know, they want this done on a product-by-product,
19   doll-by-doll basis, identify every SKU of every Mattel
20   product that you claim has been harmed, and then there are
21   a bunch of document requests that refer to those products.
22   The fundamental problem here is similar to the damages
23   issue that I discussed earlier, but even more extreme, I
24   think, or at least as extreme, and that is we need
25   discovery from MGA about things like how they have used
```

EXHIBIT 26

PAGE 737

62

1   our trade secrets, we need depositions of their people to

2   show us what they have done with the information that they

3   stole in order to ascertain specifically which products

4   were injured by their misconduct.  This is information

5   which has to follow for us to be able to provide it, or

6   fully provide it, certainly, has to follow discovery from

7   and is suited for expert analysis.  And in that

8   circumstance -- you know, remember, MGA came and said

9   withdraw your objection, tell us every product that's been

10  harmed.  There's simply no way that we can do that.  To

11  the extent that we know now of particular products that

12  were harmed, that's fine.  But there's no way that we can

13  provide the list of information that MGA appears to be

14  seeking.  And that has real-world consequences for their

15  request for production, because virtually all of their

16  requests for production at issue, with the exception of

17  two that relate to interrogatories 3 and 4, specifically

18  refer to the lists of products, they've termed, the Mattel

19  harmed products that we're supposed to identify in

20  response to these two interrogatories.

21          So that's a fundamental underlying problem in

22  terms of these requests for production -- in terms of the

23  interrogatories and requests for production.  We obviously

24  can't comply with their request for production or produce

25  it without having identified the products, and there are

EXHIBIT  26

PAGE      738      63

TRANSCRIPT OF PROCEEDINGS                    08/27/09

 1  real problems in doing that.

 2          MR. O'BRIEN:  I'm sorry to interrupt you.  Are

 3  there any products that you're aware of today that were

 4  harmed?  I understand that you may need to take discovery

 5  as to the -- Mattel's position is it needs to take

 6  discovery to find out all the products.  But is there a

 7  current subset that Mattel is aware of today?  You don't

 8  have to answer it.  If you know of that, that's fine, you

 9  don't have to answer the question -- I don't want to get

10  into any attorney work product or anything of that nature.

11  But maybe the better way to phrase it, can you make some

12  response at this point or do you believe you might be able

13  to with respect to interrogatories?

14          MR. ZELLER:  I guess one way of addressing that

15  is that we can certainly make that effort.  But even the

16  level of discovery that we have received so far doesn't

17  allow us with, you know, much comfort to be able to say we

18  can link this theft to this harm.  I'll give you an

19  example, because, as you may already know, there's a

20  motion pending about Ron Brawer, for example.  So after

21  his deposition, MGA produced a document that showed

22  Mr. Brawer, in fact, had his fingerprints all over a Bratz

23  product called Head Game, which was, in fact, a knockoff

24  of another Mattel product, that Mattel also had launched,

25  it was called Swapping Styles from My Scene.  So, to put

EXHIBIT 26

PAGE 739

64

1  this in context, we now have a document that would

2  certainly seem to suggest that that may be a harmed

3  product at this level.  The problem is that we have not

4  been allowed to take depositions to find out what those

5  stories are.  And if we start asserting a bunch of things

6  that are basically based on well, it might be that someday

7  we're going to be able to prove it, that's going to be

8  used against us.  So it really is a problem that we have

9  been uniformly denied this information on trade secret.

10  We haven't -- we don't have the depositions yet of Vargas,

11  Trueba, Machado invoked the Fifth Amendment, Castilla

12  invoked the Fifth Amendment, we have not had sufficient

13  time with Mr. Brawer, even on the subjects that he already

14  testified about, let alone all the after- produced

15  documents.  So, I mean, the problem really comes down to,

16  you know, how categorical can we be about this is a harmed

17  product.  We don't have even a sufficient level of

18  information from MGA yet to say yes, we're going to ride

19  that horse, we know that that's something we're going to

20  claim damages on.

21          I hope that's a helpful example in terms of where

22  our thinking is.  Theoretically, I guess, we could put in

23  answers that say well, we suspect and we don't know yet,

24  here's a list of them, I suppose we could attempt to do

25  something like that based on what we know so far.

EXHIBIT  26
PAGE
740

65

1      MR. O'BRIEN:  I don't want to get into suggesting

2  how you draft.

3      I interrupted you, Mr. Proctor.  I'm sorry.

4      MR. PROCTOR:  It's fine.

5      The last thing that I would say is even -- as to

6  these requests for production, even once you get past the

7  preliminary problem of identifying the products that are

8  at issue, which is created the way that MGA has

9  cross-referenced to -- you know, in the request for

10  production, the response to those other interrogatories,

11  there are serious burden and overbreadth issues with these

12  requests for production.  We have provided declarations

13  where we explain the burdens that complying would create,

14  in detail.  These declarations have not been objected to.

15  They are the only evidence on this issue.  And the burdens

16  are quite, quite substantial.  They clearly are not

17  outweighed by the benefits of information which,

18  particularly at this time, by and large, is fishing

19  expedition information.  And the clearest example of this,

20  I think, one of the clearest at least, is request for

21  production No. 80.  They're asking for all documents that

22  refer or relate to the recall of any Mattel harmed

23  products from January 2000 to the present.  If there's a

24  product that we're saying has been harmed, they want every

25  document relating to its recall for the past 10 years.

EXHIBIT  26

PAGE       741   66

1   Every document.  Not documents sufficient to show any

2   particular things, not a tailored request about any

3   particularly relevant aspects of this.  They want

4   everything.  And the burdens in providing that are

5   extraordinary, as is explained, in detail, in those

6   declarations.  And there are many other examples where the

7   burdens are extremely high, if not comparable.  If you

8   look at No. 93, they want all documents that refer or

9   relate to any studies, reports, analyses, focus groups,

10  polling, or any other research concerning future sales of

11  any of the Mattel harmed broads.  I mean, the requests are

12  vast, and -- particularly the requests about recall are

13  fishing for information which is not probative of the

14  issues here.  So even once one gets past this preliminary

15  problem of identifying what products are at issue in these

16  requests, I think there are real problems with these

17  requests for production, as set forth in more detail in

18  the briefs and declarations.

19          MR. O'BRIEN:  Thank you.  Mr. Rorie?

20          MR. RORIE:  I think the Discovery Master hit it

21  on the head a couple times when he asked, in response to

22  the damages interrogatories 3, 5 and 6, although you may

23  not be able to fully respond, can you at least partially

24  respond, I think the same question was asked with respect

25  to the Mattel harmed products, although you may not know

EXHIBIT   26

PAGE _____  742

67

1   the exact number of products or which they are, do you

2   know any of them at this point.  That's our position.  If

3   this is going to overlap with discovery -- with expert

4   discovery, that's fine.  Discovery is going to continue

5   for months after this point, that's fine.  But we are

6   getting very close to the end of fact discovery, and we

7   still don't know any of the products that Mattel claims

8   were harmed.  We still don't know what their damages

9   theories are as to these products.  And it's not unduly

10  burdensome to say hey, look, reserve all the rights you

11  want to amend, we'll send a supplemental request at the

12  end of fact discovery, but tell us now what we're up

13  against, what's the basis for your billion-dollar claim

14  against us.

15          I think the damages interrogatories were a little

16  narrowly confined to suggest that they're only going for

17  numbers.  When, if you look at the rogs themselves,

18  they're asking for people with knowledge and the facts

19  that support them and the documents that relate to them.

20  So it's not like we're just saying spit out the numbers,

21  that's all we want.  This is more general, tell us what

22  your damages are as of this point based on your current

23  knowledge.

24          The interrogatory and RFP that have to do with

25  the intent to sell the Bratz line, we address this in our

EXHIBIT  26

PAGE        743      68

Case 2:04-cv-09049-DOC-RNB  Document 6988-22  Filed 10/20/09  Page 70 of 104  Page ID #:237387

1   reply papers.  Basically the reason that that request is
2   relevant is because to the extent that Mattel is seeking
3   RICO damages from the sale of the Bratz line of products,
4   they are not -- they are only entitled to actual and
5   concrete harm that they have suffered.  They don't get,
6   under the RICO law, and we cited the case, it's U.S. v.
7   Philip Morris, they don't get what their competitor's
8   profits may have been.  They need to be able to say, look,
9   yes, we were going to sell the Bratz line of products and,
10  therefore, we can then extrapolate some sort of damages
11  theory.  But if they never had an intent to sell the Bratz
12  line of dolls, they don't get RICO damages as to those
13  products.  That's the relevance of that particular
14  interrog and RFP.
15          On the Mattel harmed products, again, I think
16  we're putting the cart a little bit before the horse in
17  saying that we need depositions of all these people to be
18  able to identify the products and to know the full basis.
19  To the extent they know, and my -- my gut tells me that
20  they've got an idea at least as to some of the products
21  that they think were harmed as a result of the alleged
22  conduct of MGA, tell us what those products are, and all
23  we're asking for are documents sufficient to show units
24  sold, revenue received, costs incurred and the net
25  profits.  They've already admitted in their separate

EXHIBIT  26

PAGE  744   69

1    statement that they can identify those products.  So,

2    again, when you asked earlier, are there some that you

3    know of, page 186 of their opposition says we can identify

4    those products, and they repeat that language in there.

5    So they know at least of some.  And we need to know what

6    those are.  And once you identify the products, you don't

7    need all this other discovery with depositions to be able

8    to give us the information that we're specifically looking

9    for.

10        The last point on the burden and overbreadth.

11   Mr. Proctor mentioned that this is a fishing expedition,

12   and it's funny, because I actually do a lot of fishing

13   myself, and when you go out fishing, lots of times you

14   come back without anything, and that's the nature of

15   fishing.  One would hope, though, that in bringing a

16   billion-dollar claim against MGA, there's going to be a

17   couple fish in that bucket, a couple products that they

18   already know have been harmed that they're going to be

19   able to identify right now.  They might not know all of

20   them, but there are fish in that universe that they can

21   identify for us, and that's what we're looking for.

22        The RFP 80, having to do with the recall,

23   documents related to any recall of the Mattel harmed

24   products since 2000, again, this goes to intervening

25   causes.  To the extent that they're claiming doll X is one

EXHIBIT _26_

PAGE _745_

70

**TRANSCRIPT OF PROCEEDINGS**          08/27/09

1    of our harmed products and that doll was subject to a
2    massive recall in 2000, and the sales figures for that
3    doll plummeted because everyone was afraid to go buy that
4    product, they're going to have a tough time pinning those
5    damages on MGA.  And that's exactly the type of
6    information that that type of RFP is designed to elicit.

7         RFP 93, future sales of the Bratz line.  Again,
8    that goes to the RICO damages we were discussing earlier.
9    If they don't have any intent to sell Bratz, they don't
10   get RICO damages under the U.S. v. Philip Morris case.  So
11   fewer sales -- again, this is documents that we have.
12   Obviously, if documents don't exist and they don't have a
13   future intent to sell Bratz, fine, tell us, tell us
14   there's no documents, and we move on.  We can't squeeze
15   blood from a rock.

16        But, again, the relevance is clear.  The
17   overbreadth and burdensome objections are just really not
18   there.  They're the ones who put this at issue, this all
19   goes to the core of their case, and we're entitled to know
20   what they currently think are their damages and what the
21   supporting information is.

22        MR. O'BRIEN:  Thank you.

23        I'm going to take this matter under submission.
24   I will attempt to get an order out promptly, at some point
25   within the next week.  And, again, I will get a ruling on

EXHIBIT  26

PAGE  746

71

1   the ex parte.

2           I want to thank all the counsel for their

3   excellent argument.  I think it was Ms. Estrich's first

4   argument and Mr. Rorie's first argument, so thank you, and

5   the rest of you all did a great job as well.  So we will

6   see you -- I think we have a hearing scheduled next week.

7           MR. ZELLER:  Yes.

8           MR. O'BRIEN:  Next Tuesday or Thursday.

9           I will see all, or a subset of you next Thursday.

10  Have a great weekend and week.

11  ///

12  ///

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 26
PAGE 747

72

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11         Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:  _____AUG 2 8 2009_____

22

23   _Cheryl R. Kamalski_

      CHERYL R. KAMALSKI

24         CSR No. 7113

25         EXHIBIT  26

      PAGE  748

**INDEX**

EXHIBIT 26

PAGE 749

TRANSCRIPT OF PROCEEDINGS                    08/27/09

**A**

ability 31:7
able 10:12 14:25
  20:16 43:4 45:14
  46:23 63:5 64:12
  64:17 65:7 67:23
  69:8,18 70:7,19
absence 38:6
absent 20:13
absolutely 11:5
  14:16 23:13,13
  32:12 33:17 39:21
  40:25
abuse 17:21
abused 27:13
account 17:10 34:9
accusation 32:4,5
accusatory 25:5
achieve 21:24
act 38:18
action 13:7 52:3,20
  73:16,17
actions 1:11 2:11
  51:21 53:6
activities 23:4
actor 23:15
actors 23:12
acts 10:20
actual 69:4
add 18:13 32:22
addition 19:13 42:2
additional 6:2 7:2
  10:14,20 18:7 25:1
  34:2 43:1
address 7:1,6,22
  21:12 27:3 29:8,15
  32:23 36:19 38:9
  38:24 39:4 49:12
  57:16 59:7,13
  68:25
addressed 27:20
  28:25 41:7 50:5,19
  56:10
addressing 64:14
adjourned 17:7 18:4
  24:18
administrative
  13:12
admission 61:9,10
  61:17
admit 61:10,11,14
  62:3,5
admitted 69:25
admonition 47:24

ads 33:25
advance 29:1
advertising 33:24
AEO 18:14
affairs 16:13
affiliates 58:19
afraid 71:3
afternoon 5:2,7
agents 47:22
agree 19:6 35:18
  37:17,20 45:21
agreed 42:19
agreement 24:21
  39:1,9
agreements 23:20
  45:1
allegation 27:14
allegations 10:24
  26:15,17 37:5 38:9
  38:14 51:23 52:2,2
  54:3,4,17
allege 10:19
alleged 11:16 13:10
  13:21 15:20 22:5
  22:19 26:13 51:21
  69:21
allow 64:17
allowed 12:11 18:18
  20:3 25:15 65:4
allows 50:7
amend 14:2 68:11
amended 10:18
  11:17 22:6 23:5,14
  26:14
Amendment 65:11
  65:12
amount 11:11 12:10
  14:25 17:22 25:9
  28:21,22 59:23
analyses 67:9
analysis 63:7
and/or 30:25
angel 38:19
Angeles 1:16 2:17
  3:5,11 4:1
Annette 3:17 4:6
answer 10:18 11:17
  22:6,7 23:6,14
  26:14 62:1 64:8,9
answering 50:11
  56:11,25
answers 65:23
anybody 41:2
anyway 57:6
Apart 14:15

apex 21:19,23
apologize 9:8,9
apparently 58:13
appeal 42:24 43:5,6
  43:10
appealed 56:23
appearances 3:1 4:5
  14:19
appeared 25:6
appears 63:13
application 4:17
appreciate 20:15
  38:23 49:9
appreciates 20:25
approach 28:19
appropriate 10:14
  13:24 16:8,8 26:1
  28:22 45:8
approval 42:20 46:6
  47:23
Apropos 43:16
argue 25:14 46:10
  56:7,8
argued 34:15,17
  49:24
arguing 10:10 36:4
  37:3
argument 15:25
  26:21 33:4 49:11
  58:14 72:3,4,4
arguments 8:18
  27:2 34:22
ascertain 63:3
asked 9:22 14:4
  18:21 36:16 37:2
  54:19 67:21,24
  70:2
asking 16:3 17:17
  18:10 37:16 40:4,9
  51:15 52:9,11
  59:23 62:2,3,4,5
  66:21 68:18 69:23
aspects 15:19 67:3
assert 50:8 54:23
  55:5
asserting 50:3,24
  65:5
assisting 45:18
associated 30:5,23
  31:25 53:16
assume 5:16 36:11
assumption 8:8
  38:16
assured 40:24
attached 8:24 9:15

attempt 65:24 71:24
attend 43:22 45:1
attended 44:14
attending 16:16
  28:11
attention 5:6 36:23
  36:25
attorney 3:4 64:10
  73:17
Attorneys 3:10,18
audit 40:11 41:13
August 1:17 2:19 4:1
  7:12 9:1 10:1
authority 18:11
  43:23 44:14,25
  45:13 50:6 57:18
  57:19 58:6
Autotech 34:13
avoid 21:9 22:1
  45:14 47:25
avoided 32:16,20
aware 10:9 11:2
  21:20 50:6 55:14
  57:18 58:6,20 64:3
  64:7
a.m 2:18,19 4:2,2

**B**

B 3:9
back 9:7 10:7,20
  24:14 25:24 26:7
  26:24 27:2 30:22
  34:1,9 46:6 47:23
  50:9 56:19 61:7,9
  62:8 70:14
backup 47:5
Barbie 53:23
based 4:23 5:3 19:22
  55:15 65:6,25
  68:22
baseless 32:4,4
bases 50:8
basic 22:7
basically 9:20 65:6
  69:1
basis 17:24 45:2
  56:16 62:19 68:13
  69:18
bear 9:12
bears 10:8 24:24
beginning 2:18
behalf 44:15
belabor 58:21
belief 22:23
belies 26:9

believe 8:2 11:22
  33:18,20 41:10
  46:15 51:20 53:22
  59:2,12 64:12
believed 41:2
benefits 66:17
best 11:24 17:18
  21:9
better 8:10 29:7
  45:12 64:11
big 14:14 17:16
  53:12 55:24
big-picture 49:16
billions 13:18
billion-dollar 21:15
  54:7 68:13 70:16
Bingham 4:18
bit 26:25 69:16
blessing 13:2
blond 48:17
blood 71:15
bogged 47:20
born 9:22,23 10:5
bottom 36:14
Boulevard 3:14
brand 12:15
Bratz 9:22,23 12:12
  12:15 61:11,12
  64:22 68:25 69:3,9
  69:11 71:7,9,13
Bratz's 12:24
Brawer 64:20,22
  65:13
breadth 13:1
break 42:13 52:6
breaks 36:12 42:12
brief 7:8 21:4 32:8
  42:14 43:5,6,10
  55:3
briefed 31:21 33:12
  49:24 56:9,21
briefly 46:9 51:8
  57:16
briefs 6:12 29:20
  34:24 37:18 58:12
  58:14 67:18
bring 42:16 54:16
bringing 70:15
brings 39:2
broadly 43:21
broads 67:11
brought 4:18 36:22
  36:24 54:14
Bryant 1:4 2:4 9:24
  15:22 24:23

**TRANSCRIPT OF PROCEEDINGS**                                        08/27/09

bucket 70:17
bunch 62:21 65:5
burden 19:21 20:21
  24:2 26:2,9 34:5,10
  53:16,17,19 54:5,8
  54:18 66:11 70:10
burdens 59:5 66:11
  66:15 67:4,7
burdensome 34:1
  50:16 53:13,15
  54:15,21 58:24
  68:10 71:17
buy 71:3

**C**

C 3:4
calendar 4:15 44:19
California 1:1,16 2:1
  2:18 3:5,11,14,19
  4:1 73:2
call 30:11 37:18
  44:19 45:6
called 6:14,15,15,16
  31:4 57:2 64:23,25
camera 9:5 20:15
  42:21
capable 34:14
career 48:11
careful 28:6 30:12
carefully 27:11,22
Carson 23:17
cart 69:16
Carter 1:4 2:4 9:24
  15:22
case 10:24 11:2 12:8
  13:18 14:4 15:16
  15:17,19 16:9,18
  18:11 24:6,13,23
  24:25 25:24 26:10
  28:15 34:13 37:6
  40:6 43:6,7,10 50:7
  51:17 54:4,12 55:3
  55:4,11 58:5 59:24
  60:22 69:6 71:10
  71:19 73:13
cases 11:6,10 13:6
  13:11,15 24:10
  25:25 47:9 60:1
cast 36:23
Castilla 65:11
categorical 60:18
  65:16
categories 59:9
category 59:8 62:11
  62:12

causation 52:14
cause 52:24
causes 52:3 70:25
caution 7:23
centerpiece 23:8,21
central 1:1 2:1 11:14
  11:18 12:16 21:17
  23:15,15,24 24:7
centrally 10:8 13:20
CEO 11:2,7 16:9,12
  17:18 21:17
CEOs 22:1
certain 10:5 53:5
  54:13
certainly 8:16,23 9:8
  12:4,8 13:12 21:2
  22:3,16,17 23:9,18
  24:10 28:11 38:7
  38:20 39:3,23 45:8
  46:9,22 58:21 63:6
  64:15 65:2
Certified 2:20 73:1
certify 73:2,15
chain 9:16,25
chair 26:7
chance 5:4 8:6,16
  33:3
characterization
  25:6
characterize 40:16
  59:11
characterized 19:16
chart 27:21
CHERYL 1:21 2:20
  73:23
chess 27:17
choose 8:17
circles 45:7
circumstance 63:8
circumstances
  11:24 37:9
cite 55:3
cited 57:18 58:6 60:1
  69:6
claim 18:16 51:4
  52:1,20 55:2 62:20
  65:20 68:13 70:16
claiming 18:25 30:21
  51:16 53:5 70:25
claims 13:7,8,9
  15:19 20:1 21:12
  21:15 22:9,20
  23:16 26:19 54:7,9
  68:7
classically 59:25

clear 9:11 23:15
  29:25 30:9,19 52:5
  60:1 71:16
cleared 45:12
clearest 66:19,20
clearly 17:9 47:22
  58:14 66:16
client 18:16 44:5,15
  44:25 47:1,6,22
clients 46:20,21
client's 47:23
clock 27:16,17 28:12
close 16:12 31:10
  68:6
cognizable 17:15
collected 6:8 34:12
  35:23
collection 6:9 34:3
combining 13:13
come 7:19 8:5 17:23
  18:1 24:14 29:9
  30:25 31:1 36:1
  37:24 38:8 40:25
  41:24 42:6 50:9
  56:6 60:5,6 70:14
comes 46:1 65:15
comfort 64:17
coming 4:23 37:21
  45:16
commend 20:11
comment 15:1 33:3
  38:23 44:21,22
  46:8
commenting 20:17
  44:23
committed 32:17
communicate 5:8
communication
  35:11 36:12
communications
  23:19
company 10:6 11:8
  12:15 16:10,13
comparable 12:8
  67:7
compare 12:9
compel 6:8,21 42:18
  48:2 54:13 58:3
compelled 9:3 58:17
competitor 17:17,18
  20:2
competitors 16:7
competitor's 69:7
compiled 27:23
complaining 17:13

complaint 44:20
complaints 52:16,21
complete 24:15
  41:11
completed 5:5
completely 28:2
  61:20
completion 73:13
complex 11:20 13:9
  22:24 23:7,22
complexities 47:6
comply 57:15 63:24
complying 66:13
comport 10:23
compromise 43:23
  45:20 47:14 57:3
computation 59:23
  60:5
computations 60:24
computer 30:5 47:3
conceal 11:22
concealed 61:22
concealment 10:20
  15:20
concentrating 48:25
concern 27:18,21
concerned 41:5
concerning 14:4
  67:10
conclude 56:1
conclusion 56:12
concrete 69:5
conduct 6:2 23:2
  34:23 51:20 58:18
  69:22
conducted 19:20
confer 18:9 32:15
  42:1 43:18,20
  44:14,21 45:1,2,11
  45:20 46:6 50:14
  56:10
conference 43:25
confers 35:8 44:11
  45:13,21 46:15,16
confidence 44:25
confined 68:16
connection 14:13
  28:16
consequences 44:7
  63:14
consideration 8:20
considering 10:5
consolidated 1:6,11
  2:6,11 13:6
Constructive 14:8

contempt 14:8
contends 62:15
context 65:1
Continental 3:14
continue 28:18 68:4
contrary 22:14 26:2
  26:14
control 26:15
convenience 13:13
convenient 42:16
conversations 33:13
converse 54:12
copyright 28:1
core 14:6 71:19
corporation 1:7 2:7
  16:13
correct 4:19,20 11:4
  23:13 24:13 30:17
  35:22 48:23 49:1
correctly 49:7 59:3
cost 53:25
costs 52:10 69:24
counsel 3:13 4:5 9:6
  9:6 23:11,18 24:11
  35:12 36:21 37:1
  37:12 72:2
counseled 27:8
counsels 37:1
count 17:3 25:17
counted 12:5 25:18
  57:24
counterclaims 10:19
  11:17 22:6 23:6,14
  26:15 51:13
counting 50:4,17,18
  50:25 56:4,20,25
  57:20
couple 7:11 24:16
  42:25 45:15 50:25
  67:21 70:17,17
course 10:9 13:5
  23:5 24:19 34:6,23
  46:17
court 1:1 2:1 5:21
  14:8 42:10 50:5
  56:5
Court's 14:10
cover 12:22,23 23:3
  25:20
Craig 3:22 4:8
create 66:13
created 66:8
creation 12:25
cross 6:10 29:13
cross-claims 54:14

**SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES**
877.955.3855

EXHIBIT  26
PAGE  751

cross-complaint 51:21 52:1
cross-examination 15:23 24:8
cross-motion 6:4 7:3 32:22 33:9
cross-motions 6:18 21:5
cross-referenced 66:9
CSR 1:22 73:24
current 64:7 68:22
currently 55:14 71:20
cursory 51:9
custodial 6:8,10,13 6:16 29:21 31:23 31:24 34:7 35:1,16 35:17,24 36:10,15 36:15,20 41:16
custodian 6:15
custodians 33:24
cut 44:4
CV 1:6,7 2:6,7

**D**

D 3:18
damages 51:13,14 51:15,16 52:7 54:9 59:10,13,14,17,18 59:19,24,24 60:6 60:18,22 62:22 65:20 67:22 68:8 68:15,22 69:13,22 69:12 71:5,8,10,20
dangerous 58:17
data 6:10,13,14 31:23,24 39:16 41:4,10,13,16,23 52:7,8
databases 41:3
date 28:18 43:13,14 73:18
dated 9:17 73:21
daughter 48:10
day 17:14 18:4 24:17 24:19 40:17 42:25
days 15:22 16:11,22 23:24 57:10
deal 15:25 17:4 27:16
dealing 29:6 47:12
debating 35:17
decide 37:11
decision 9:13 44:15

decisions 45:23 46:2 46:5,22
declaration 7:14,15 7:16,17,22,23 8:10 8:13,15,21 9:16 19:6,9 33:18,20 35:5,20
declarations 7:11 8:1,4,25 29:20 34:25 50:15 53:20 66:12,14 67:6,18
decline 53:2
deeply 42:23
defendant 3:7 23:16
Defendants 1:8 2:8 3:16
defer 36:6
definition 59:21
definitions 6:13
Delaware 1:7 2:7
demanded 60:3
demonstrate 18:2
demonstrated 18:22 34:5
demonstrates 33:18 57:11
demonstrating 14:9
denied 50:9 56:11 65:9
denominated 7:13
depose 11:12 13:14 16:22 25:2
deposed 11:3 12:17 15:18
deposition 4:17,25 5:3 6:3,5 7:1 9:14 10:10 11:1,24 12:1 13:17 15:21 16:11 16:15 17:6,17 18:5 19:1 20:3,9 21:19 21:22,23 24:8,14 24:17,21 25:7 28:16 31:13 35:19 64:21 73:12
depositions 14:23 15:14 21:23 28:11 31:7,8 63:1 65:4,10 69:17 70:7
deprives 8:1
describe 51:9
described 41:14
description 61:17,18
designed 71:6
desire 14:23
destroyed 36:21

37:4,7,8,8 39:3,5 41:11,13
destruction 37:10,25 40:24
detail 12:23 27:20 50:22 66:14 67:5 67:17
determinations 46:24
devote 16:15
different 28:2,5,8,8 40:2 41:4
difficult 8:3
difficulty 46:11
diplomatic 45:7
direction 73:8
directly 12:13
disagree 36:2,3 47:18
disagreement 35:13 36:8 57:23
disagrees 36:2
disclose 32:6 60:5
disclosed 32:13
disclosing 18:25
disclosures 60:4
discovery 3:3 9:4 12:18 13:2 20:8 21:20 22:10,14,15 24:11,20 26:22 38:8 45:1 49:25 50:12,18 51:3 53:15,24 54:11,17 55:6,9,11,19,19 56:8,12 57:1,6,22 57:24 58:16,20 62:13,25 63:6 64:4 64:6,16 67:20 68:3 68:4,4,6,12 70:7
discrete 57:20 58:9 61:5
discuss 62:11,13
discussed 7:9 62:23
discussing 13:11 71:8
discussion 41:8 42:14
dispute 11:13 13:22 22:7,12,15 24:1 26:13,20
disputed 11:15,15 21:16
disputing 13:22
DISTRICT 1:1,1 2:1 2:1

DIVISION 1:2 2:2
docs 52:7
doctrine 22:2
document 11:25 12:3 15:23 25:16 27:11,25 28:6 30:8 31:2 62:21 64:21 65:1 66:25 67:1
documents 6:9 7:12 8:24 9:1,3,6,7,11 12:23 14:4,5,21 15:6 17:10 18:16 18:19,23,24 19:5 19:10,10,13,16 20:5,13,13,14,14,17 20:22 25:10,10,11 25:11 27:15 28:24 29:9,23 30:23 31:8 31:11,14 35:23,25 39:3,5,5 40:12 41:15 47:10 52:11 54:9 55:1,13,21 57:9 58:23 59:1,4 61:15,16 65:15 66:21 67:1,8 68:19 69:23 70:23 71:11 71:12,14
doing 17:4 28:10 31:25 35:13 64:1
doll 10:25 71:1,3
dollar 59:22
dollars 11:20 13:19
dolls 61:11,12 69:12
doll-by-doll 62:19
dominant 17:16
draft 66:2
drill 54:20
drive 30:6
due 32:21 42:24
duly 73:6
Dylan 3:9 4:10
déjà 49:21

**E**

earlier 35:23 54:10 54:12 62:23 70:2 71:8
EASTERN 1:2 2:2
economy 13:13
effective 35:11
effectively 31:13 61:13
efficient 28:14
efficiently 18:6
effort 64:15

egregious 21:7
either 14:17 25:23 30:21 31:2 36:2 39:2 44:10 46:2
El 3:14
electronic 6:14 30:3 36:5 39:20
elicit 71:6
Emanuel 3:8 38:17
employed 9:25
employee 73:16
employees 18:21
encouraged 48:11
ended 28:2 31:17
engage 32:13
engaged 22:23
engaging 32:17
enter 44:25
Entertainment 51:4
entire 28:6
entirely 13:23 50:4
entirety 39:17 62:10
entitled 13:14 25:1 26:21 52:24 55:16 55:22 69:4 71:19
ESI 6:15 30:11,16,19
especially 16:10
essentially 10:12 13:4 59:19
Estrich 3:9 4:11,11 33:8 35:4,5 39:1 42:1,8 43:17 44:9 44:17 48:13
Estrich's 72:3
Eureka 55:4
evaluate 17:24 32:7
evening 43:19
everybody 6:16 7:3 30:21 38:19
evidence 10:23 14:6 14:12 24:2 31:22 66:15
ex 4:17 5:4,10,14,18 72:1
exact 68:1
exactly 10:16 22:15 22:18 40:13 57:11 71:5
examination 6:5 12:6 16:19,25 19:19,20
examine 19:12
example 12:12 28:9 30:1 39:11 60:8 64:19,20 65:21

TRANSCRIPT OF PROCEEDINGS                                          08/27/09

66:19
examples 67:6
excellent 72:3
exception 63:16
exchange 9:21 10:2
   32:7,9,13,17 36:5
   36:20 37:13 41:22
   42:7 57:7
excluded 28:4
executive 10:3
   12:13 21:22
exhaustion 17:25
   25:21
exhibit 9:19
exist 71:12
expanded 22:8
expect 31:11 40:19
expected 27:1
expedition 66:19
   70:11
expeditious 29:10
expert 3:13 55:18,19
   59:25 60:4,4,8 63:7
   68:3
explain 39:6 66:13
explained 67:5
exporting 41:5
extension 43:11
extensive 23:3
   50:13 59:4
extensively 7:10
extent 39:25 61:19
   63:11 69:2,19
   70:25
extract 40:1
extraordinarily
   53:18
extraordinary 67:5
extrapolate 69:10
extreme 31:21 32:1
   34:1 62:23,24
extremely 67:7
e-mail 4:23 5:12
   9:16,25 40:1 48:5

**F**
fabulous 42:10
fact 10:18 14:15,22
   17:2 20:16 22:18
   22:19 24:3,5,9,17
   24:19 28:17 29:21
   46:14 55:11 64:22
   64:23 68:6,12
facts 8:3 11:10 25:23
   68:18

fair 8:22,23 11:11
   12:10 13:24 18:8
   25:6 28:21 38:1,25
fairly 28:6 34:13
fairness 8:11
faith 32:15 41:25
   45:2
far 5:19,25 64:16
   65:25
fashion 29:11
Federal 73:12
feel 5:7 27:4
feels 33:2
fell 26:4
felt 27:21
fewer 71:11
Fifth 2:17 3:5 65:11
   65:12
fight 17:14
Figueroa 3:10
figure 11:18 32:25
figures 71:2
file 5:15 30:3,3,7
   30:16 31:2 36:7
   45:19 56:13
filed 5:15,15,16,17
   6:3,10,23 7:11
   29:14,14,20 34:24
   49:23 56:22
files 29:23 30:1
fill 8:13
final 46:2 48:1
finality 16:2
financial 10:22
   11:19,21 13:9
   22:21 23:22 25:20
   55:4
financially 73:15
find 34:2 47:3 59:1
   64:6 65:4
fine 38:23 43:11,12
   43:15 63:12 64:8
   66:4 68:4,5 71:13
fingerprints 64:22
fingers 42:13
finished 17:7
firm 4:18 38:17,17
firms 38:17
first 6:6,22 11:6
   12:18 18:4 24:17
   24:18 25:22 29:15
   29:18 31:20 32:2
   32:14 34:3 36:13
   36:13 39:8 40:17
   40:21 43:18 48:2

49:20 50:25 59:10
   60:22 72:3,4
fish 70:17,20.
fishing 66:18 67:13
   70:11,12,13,15
five 25:13
flavor 29:5
floor 3:10 21:8 49:11
focus 10:25 11:10
   16:16 67:9
focusing 11:1,19
   29:7
folder 30:4,7 31:3
folders 29:23 31:1
folks 4:22 44:20
   45:13
follow 63:5,6
force 16:14 32:6
   34:1 56:13
forced 34:16,18
forego 54:4
foregoing 73:3,5,9
   73:11
foregone 56:12
form 14:11 36:4 41:6
formats 41:5
forms 39:20
forth 15:20 26:24
   67:17 73:4
forthwith 5:1
Fortune 11:8
forward 56:19
four 29:20 34:24
   37:17
fourth 32:8
Francisco 3:19
Frank 3:18 4:7
frankly 9:2 12:20
   21:18 43:21 60:20
fraudulent 22:20
fraudulently 61:22
fraught 17:20
free 5:7
Friday 19:10
front 12:3 25:10
   27:11
fulfill 55:6
full 33:4 43:23 69:18
fully 31:21 33:12,18
   40:18 49:24 57:8
   58:1 60:2,9,13 63:6
   67:23
fundamental 59:7
   62:22 63:21
funds 22:25

funny 70:12
further 6:21 9:5 10:2
   20:9 24:15 26:9
   33:14 38:10 41:19
   43:17,20 73:11,15
future 6:9 8:7 53:3
   67:10 71:7,13

**G**
Game 64:23
Garcia 12:12
general 47:24 68:21
generic 54:25 55:5
getting 20:25 27:2
   37:7 42:24 51:12
   68:6
give 8:6,20 17:22
   27:3 29:5 34:20,21
   40:18 42:13 61:15
   64:18 70:8
given 31:22 32:18
   58:18 73:10
gives 30:7
glad 42:8
go 4:4 8:15 9:7 10:20
   15:2 20:3,16 26:24
   29:13 30:22 31:20
   32:2 33:14 34:1,9
   36:13,13 39:25
   40:1 45:21,25 46:6
   46:25 47:23 48:1
   51:13 58:24 59:3
   62:9 70:13 71:3
goes 8:11 51:5 55:8
   70:24 71:8,19
going 11:23,25 18:17
   18:20 19:7,8 20:22
   21:6,14 23:10,25
   24:3 25:19,20
   30:20 31:18,19
   32:2 34:20 41:21
   43:4,19 45:4 46:2,3
   49:12 50:22 51:2
   53:24,25 54:6,8,16
   55:18 56:6 65:7,7
   65:18,19 68:3,4,16
   69:9 70:16,18 71:4
   71:23
good 4:14 10:7 28:9
   32:15 41:25 45:2
   45:17 47:16
Gordinier 5:8
gotten 51:1
granted 16:9
great 15:25 17:4

42:11 72:5,10
greatest 14:25 15:1
gross 52:10
ground 16:6
grounds 14:24 50:11
group 51:11 53:21
   59:13 61:5
groups 67:9
guess 21:11 35:6
   53:13 54:1 64:14
   65:22
guessing 7:24
gut 69:19
guys 37:14

**H**
hand 11:11
handling 5:10 42:4
hanging 30:3 56:4
happen 5:3 41:25
happened 16:5
   35:14 37:8 52:21
happy 36:6 37:13,17
   38:10
harassment 22:2
hard 46:10
harder 29:6
harm 14:16 17:12,13
   17:15 64:18 69:5
harmed 14:10 51:20
   52:8,15,16,17,20
   53:2,4,6,8 62:15,20
   63:10,12,19 64:4
   65:2,16 66:22,24
   67:11,25 68:8
   69:15,21 70:18,23
   71:1
hat 50:4 56:4
head 53:21 64:23
   67:21
hear 6:6 21:13,17
   22:17 24:1
heard 7:4 49:17
   50:11
hearing 24:20 39:14
   39:15 72:6
hearings 8:4
hearing's 5:5
HEDGES 3:8
help 48:15
helpful 20:19 65:21
herring 14:14 18:19
   22:12
HERRINGTON 3:17
hey 68:10

**SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES**
**877.955.3855**

EXHIBIT 26
PAGE 753

TRANSCRIPT OF PROCEEDINGS                                                        08/27/09

**he'll** 26:4 29:9
**hidden** 38:11,22
**hide** 22:25
**high** 39:9 53:18,19
  67:7
**highlighting** 48:7,7
**hiring** 18:21
**hit** 67:20
**hold** 56:6
**Holden** 3:22 4:8,8
**honestly** 32:20
**Hong** 27:25
**hope** 36:18 42:22
  43:12 55:5 65:21
  70:15
**hopefully** 29:10 33:2
  36:3
**horse** 65:19 69:16
**hours** 11:4,5 12:9,17
  12:20 13:1,4,14,16
  13:17,23 14:4 15:9
  15:16 16:9 17:2,2
  17:17 18:10 20:3
  23:9 25:3,6,19,21
  25:25 26:5
**housekeeping** 4:16
  42:15
**Howard** 3:19
**hub** 23:19
**hundreds** 11:20
  46:13
**hung** 50:4
**Hurst** 3:17 4:6,6,20
  5:9,13,24 7:24 8:6
  8:19 13:25 14:1
  20:20,23 21:7 27:5
  27:8,19 28:24
  29:15,16 30:4,14
  30:18 33:1,6,9,22
  35:15 36:18 38:21
  38:24 39:8,13,17
  40:10,13 42:5,15
  42:19 43:6,9,16
  44:16 47:17 48:5
  49:12 61:7
**Hurst's** 36:6 44:22

———— **I** ————
**idea** 5:2 25:19 26:11
  29:21 35:1 36:23
  39:10 69:20
**identified** 14:17
  15:24 19:14,19
  31:1 34:14 41:13
  63:25

**identify** 14:16 51:19
  55:1,6 59:16,17,18
  59:19,21 62:17,17
  62:19 63:19 69:18
  70:1,3,6,19,21
**identifying** 29:22
  31:5 41:23 52:19
  66:7 67:15
**ill-gotten** 22:25
**impacted** 52:18,23
**important** 59:15
**importantly** 61:19
**impossible** 57:15
**impressed** 48:9
**improper** 23:22
**improprieties** 13:10
**impugning** 38:21
  42:3
**inauspicious** 43:13
**incentive** 25:8
**include** 14:3 19:6
**included** 59:12
**including** 12:23 13:9
  15:19,23
**incorporated** 52:3
**incurred** 52:10 69:24
**indication** 27:12
**individual** 1:4 2:4
  53:22
**information** 6:8 7:22
  22:23 29:22,22
  30:8,16,24 32:18
  34:2,7 35:1,16,18
  35:25 36:10,15,16
  36:21 37:20 40:9
  42:7 43:3 47:13
  51:12,16 52:25
  54:5,19 55:2,13,15
  60:18,20,23 61:2
  61:23 63:2,4,13
  65:9,18 66:17,19
  67:13 70:8 71:6,21
**infringement** 28:1
**initial** 17:6 20:4 41:8
  45:3
**initially** 14:2 36:16
  36:19
**injured** 22:12 63:4
**inordinate** 25:9
**insist** 34:3 54:6
**insisted** 34:11
**inspection** 42:21
**instance** 15:4 56:3
**instances** 12:8 46:24
**insulted** 35:8

**integral** 21:24
**intended** 61:10,12
  61:21,24 62:5,6
**intensive** 11:25
**intent** 68:25 69:11
  71:9,13
**intention** 20:23
**interest** 14:12
**interested** 73:16
**interesting** 61:7
**internal** 52:22
**internally** 10:2 53:7
**interrog** 69:14
**interrogatories** 6:22
  48:3,8,20 49:22
  49:22 52:4 55:21
  57:5,9,13,23 58:2
  59:11,15 60:2,21
  60:22 61:1,8 62:16
  63:17,20,23 64:13
  66:10 67:22 68:15
**interrogatory** 18:15
  60:16 61:6,7 62:1,7
  68:24
**interrogatory's** 60:8
  61:13
**interrupt** 60:12 64:2
**interrupted** 66:3
**intervening** 52:24
  70:24
**investigation** 41:11
**invoke** 21:21
**invoked** 22:3 24:16
  65:11,12
**involved** 11:9 13:20
  16:13 37:9 38:18
  42:2,4,23 44:10
  46:18 53:22
**involvement** 11:23
**involves** 22:8 49:16
**iota** 41:12
**IP** 14:12
**irrelevant** 61:20,23
  62:6
**Isaac** 3:16 6:3 9:16
  9:21,23 10:3,4,6
  11:13 12:14 13:19
  23:16
**issue** 4:16 6:11 7:7
  10:24 12:4 19:9
  20:1 22:9 24:5,25
  28:2 31:6,16,17
  35:21 37:19 38:24
  39:1,2,6 40:2,7
  41:19,20,21 43:24

44:10 45:11 46:14
  48:16,19 49:20
  50:18 51:22 53:5
  54:2 57:20,21 58:9
  59:5 60:19 62:23
  63:16 66:8,15
  67:15 71:18
**issued** 54:10,11
**issues** 7:9 10:17
  11:9 12:25 13:21
  15:21 16:1 34:25
  35:12 39:19 42:15
  45:12,24 47:25
  49:9,16 57:16 61:5
  66:11 67:14
**items** 51:22 52:12
  53:5 54:2,13

———— **J** ————
**January** 66:23
**job** 1:23 42:11 48:7
  72:5
**joking** 43:8
**journalist** 9:21,22
**JR** 3:18
**Judge** 14:17 22:10
  26:18 45:22
**jump** 33:8
**June** 49:23
**junior** 45:4
**jury** 15:25
**justified** 14:23

———— **K** ————
**Kadisha** 4:17
**KAMALSKI** 1:21
  2:20 73:23
**key** 31:5,14 45:12
**kind** 10:16 18:19
  33:23 35:24 38:9
  43:24 45:11 47:13
  51:7,10 53:10
  54:24,24 55:24
**kinds** 10:12 33:25
**knockoff** 64:23
**know** 5:10,12 6:20
  7:24 8:8 12:3 13:5
  16:17 18:17 21:5
  24:18 27:13,23
  28:25 29:1,5 30:6
  31:3,10 33:11
  34:19 36:1 37:7
  38:1 39:16,18,19
  40:15,19,20,23
  41:8,14,16,21

44:10 45:4 46:13
  47:4,6,10,13 48:6
  51:15,17 60:25
  61:21,25 62:1,1,18
  63:8,11 64:8,17,19
  65:16,19,23,25
  66:9 67:25 68:2,7,8
  69:18,19 70:3,5,5
  70:18,19 71:19
**knowing** 31:13
  38:16
**knowledge** 14:20,25
  15:15 19:25 21:25
  36:6 68:18,23
**knows** 24:20 57:24
**Kong** 27:25

———— **L** ————
**L** 3:17
**Labor** 42:25
**lack** 17:12
**language** 70:4
**large** 13:6 19:22
  66:18
**Larian** 3:16 6:3,6,25
  9:16,21,23 10:6
  11:7,13 12:14,22
  13:1,19 15:4,10
  20:2 21:13 22:4,22
  23:7,16,23 24:14
  25:2,9 27:13
**Larian's** 9:14 10:10
  11:23 12:1
**Larson** 14:18 22:10
  26:18 45:22
**late** 7:25 8:4,25 19:7
  19:9,15,16 20:12
**launched** 64:24
**launder** 22:24
**law** 3:4,10,18 21:19
  22:2 25:23 50:7
  58:4 69:6
**lawyer** 46:5
**lawyers** 14:19,21,24
  15:2,14 23:12 27:8
  37:15 38:15,18
  44:11,24 45:4,10
  46:3,12,18,23 47:7
  47:21
**layered** 32:3,5
**lead** 40:23
**learn** 39:4
**leave** 14:2
**leaves** 34:8
**left** 10:6 55:11

TRANSCRIPT OF PROCEEDINGS                    08/27/09

legal 28:1,5,8 48:11 58:9
legally 17:15 48:13
legitimate 27:18,21 37:19
length 15:1,18,22 21:14 22:19 26:14
lengths 23:3
lengthy 27:24
letters 50:14
let's 4:4 28:13,14,14 28:19 29:13 47:18 48:1
level 39:1,9,24 53:19 64:16 65:3,17
leveled 38:10
license 16:14
light 19:15 34:23
limit 16:18 22:13 51:5
limitation 17:19 18:11
limited 10:11 20:4 21:23 24:21,22 27:1
limiting 6:5 33:10
limits 28:16
line 36:14 53:23 59:8 61:11,12,21 68:25 69:3,9,12 71:7
lines 21:1
link 64:18
list 42:20 63:13 65:24
lists 63:18
litigation 27:25
little 8:3 26:25 35:13 55:10 68:15 69:16
live 19:14
LLP 3:8,17
loan 15:6
loans 14:13
log 58:16,22,25
logs 58:19
long 12:2 19:18 26:24 27:15
longer 26:25 57:25 58:3
look 4:24 5:4 24:3 25:13 29:19 35:12 51:9 54:16 58:24 58:25 59:1,3,21 67:8 68:10,17 69:8
looking 11:11 13:3 29:25 30:3,9,10,18

30:24 59:22 70:8 70:21
Los 1:16 2:17 3:5,11 4:1
lose 57:25
lost 37:7 39:2,5
lot 29:6 33:22 46:22 47:11,12 70:12
lots 70:13
lump 59:13

**M**

Machado 65:11
machine 73:7
magazine 33:25
main 11:16 15:12 27:2 50:24
maintained 41:4
major 12:24
majority 59:4
making 40:20 46:1 51:22 54:3,7
manager 12:13
manner 38:18
marked 18:14
market 17:17
married 42:25
Marshall 32:12 38:6
massive 71:2
Master 3:3 9:4 12:18 20:8 21:20 22:10 24:11,20 38:8 49:25 51:3 54:11 57:6,22,24 58:20 62:13 67:20
Master's 13:2
material 6:17 15:17
Mattel 1:7 2:7 3:7,12 4:9,10,11,12 6:3,11 7:1 9:25 14:2,7,15 15:13 17:12,13 20:17,24 22:12 24:23 25:1 26:16 26:19 29:21 30:10 39:12 40:8 46:4 49:19,23 50:2,4,19 50:24 51:19 52:10 52:15,16,17 53:2,3 53:4,15 54:13 55:13 56:4,13,23 57:7 61:20 62:15 62:19 63:18 64:7 64:24,24 66:22 67:11,25 68:7 69:2 69:15 70:23

Mattel's 12:5 13:7,8 16:21 39:15 49:17 51:13 64:5
matter 5:6 15:15 16:19 17:11 19:1 20:4 33:15 43:24 46:12 71:23
matters 22:1,14 29:1 29:7 45:4
mean 8:23 9:2,8 10:7,14 11:6,6,8,9 11:18 13:11 19:17 21:13 22:21 24:7 25:18 26:3,12 27:19 28:21 29:18 29:22 31:9 34:6 37:10 38:19 39:5 39:10,23 44:2,16 46:8,9,14 62:17 65:15 67:11
means 30:25 43:4
meant 44:16
mechanism 22:1
meet 18:9 32:15 35:7 41:25 42:5,6 43:17,20 44:11,13 44:21 45:1,2,10,13 45:20,21 46:5,15 46:16 50:14 56:10
meeting 45:7
meet-and-confer 21:2 38:15 47:19
mention 7:10
mentioned 70:11
merit 49:18
merits 26:13,20 50:21 59:6,8
metadata 30:19,23 36:5 39:24 40:4
method 42:6
Mexico 35:21,22,23
MGA 3:16 4:6,7,8 6:4 6:10,24 7:13 8:1,6 8:12,16 9:1 10:2,3 10:9 15:7,7,12 17:14 20:11 21:12 22:11,22 24:1,4 25:8,22 26:11,15 29:14,14 32:1 35:20,22,23 36:9,9 36:22 46:4,14 51:4 52:20,23 54:7,13 57:2,18 58:18,19 59:22 60:3,23 62:25 63:8,13

64:21 65:18 66:8 69:22 70:16 71:5
MGA's 6:22 9:6,6 13:7,18 15:19 23:11 24:11,22 48:2 51:20 54:14
Michael 3:8,13 4:12
Mike 4:9
million 16:18 19:18 24:3 29:4 31:10 34:7
millions 11:20
mind 27:24
minimal 25:2
minute 41:3
minutes 25:13
misappropriation 51:14 59:20
mischaracterizati... 40:16 41:9
misconduct 63:4
missed 38:2
misunderstanding 40:15 41:9
Molinski 35:20
Monday 57:2
money 47:7 53:25
months 26:6 55:11 68:5
Moore 3:13 4:12,12
morning 4:14
Morris 69:7 71:10
motion 6:2,7,7,11,18 6:21,21 7:1,2 14:7 14:9,17 28:16,18 29:13,14,14,15,17 29:19 42:12,18,18 45:14 46:1 47:25 48:1,2,24 49:10,13 49:16,23,24 50:1,4 50:13 56:7,13,16 56:20,21,22 57:3 58:3,4 64:20
motions 4:15 6:1 31:22 33:5
mouth 40:22
move 29:2,8,10 50:7 57:19,25 58:5 71:14
moving 8:10 54:13 58:7
multibillion-dollar 13:17 51:17
multipage 27:23
multiparty 11:21

multiple 34:25 41:3
mutual 36:19 37:13 42:6
mutually 40:24
myriad 17:1

**N**

name 30:2,7,7 73:19
names 42:20
narrow 48:5
narrower 24:23
narrowing 49:9
narrowly 51:12 54:17 68:16
native 30:22 40:4
nature 17:10 64:10 70:14
near 12:21
nearly 41:14
necessarily 30:19
necessary 17:4
need 18:1 19:3,3,12 20:6 22:15 27:4 29:8 42:5,21 43:1 44:11 45:5 47:13 53:19 54:18 55:6 62:24 63:1 64:4 69:8,17 70:5,7
needed 5:17 15:17 18:3,4 19:20 45:25
needs 24:14 28:19 28:20 50:19 64:5
neither 15:7 40:3 73:15
net 52:10 69:24
neutrally 46:19
never 23:21 41:2,10 41:12 44:3 56:9,10 61:10,12 62:5 69:11
new 8:2 15:17 16:3,4 17:11 19:4,14 20:5 20:5 40:6 43:3
night 7:18
night-before-the-... 8:21
nobody's 8:9
noon 4:23
Nos 1:7 2:7
note 6:11 23:23
noticed 35:19
notion 10:21 15:3 26:2,5,9 55:17
number 12:22 16:25 47:18 52:9 68:1

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT 26
PAGE 755

numbers 68:17,20
numerous 15:14

_____ O _____

object 8:17 33:16
objected 15:3 66:14
objecting 19:9
objection 50:5,17,18
  51:1,7 53:11,13
  54:15,21,25 55:8,9
  55:17 56:5 58:1
  63:9
objections 49:17,18
  50:3,10,20,21,24
  54:23 55:24 56:9
  56:25 57:8 58:15
  60:7 71:17
obligation 58:22
obligations 55:6
obscure 23:4
obtain 26:18
obtained 23:1 55:15
obviously 7:9 8:8
  9:24 10:8 12:21
  24:4 29:3 30:12
  37:11 39:19,20
  45:12 52:19 57:22
  59:2 63:23 71:11
occurred 58:18
occurring 28:7
October 9:17,22
  10:5
offer 21:13
offered 15:9 17:23
  35:8 36:9
oh 32:8
okay 33:1,6 39:13
  40:19 43:9,16 44:8
  47:15
old 16:6 47:4
OLIVER 3:8
Omni 15:8,12 23:18
once 45:11 50:17
  56:11 66:6 67:14
  70:6
ones 8:25 22:21
  48:21,22 50:25
  54:2,3 55:24 71:18
ongoing 46:14
open 19:17 29:3
opening 50:23
operative 26:17
opportunity 7:4 8:1
oppose 58:3,4
opposing 28:18

51:15
opposite 22:18 24:9
opposition 5:15
  18:22 27:20 50:3
  70:3
order 5:1,18 6:4
  11:12 12:18 14:8
  20:9 21:24 26:7,18
  41:20 43:18,24
  46:2 49:23 50:2,8,8
  50:9 51:3 54:10,10
  56:10,11,21 57:20
  57:20,25 58:8,8
  60:9 63:3 71:24
ordered 14:8
orders 14:10 31:12
  44:13 45:15 58:5
original 31:13 73:12
Orrick 3:17 38:16
ought 10:4,10,11
  44:20
outlined 10:15
outset 34:11
outside 31:4 47:7
outweigh 53:17
outweighed 66:17
overbreadth 50:16
  51:8 53:10 66:11
  70:10 71:17
overlap 13:5 55:19
  68:3
overrule 20:9
owned 61:22
O'Brien 3:4 4:4,13
  4:21 5:11,14,25
  7:16,21 8:20 9:9
  10:25 13:25 20:10
  20:21,24 21:10
  26:23 27:6 28:23
  29:12,25 30:9,15
  32:25 33:2,7,20
  35:4 38:13 39:12
  39:14 40:3 41:18
  42:9,17 43:12 44:8
  44:18 47:15 48:15
  48:17,20,24 49:2,6
  49:14,15,25 56:17
  60:12,16 64:2 66:1
  67:19 71:22 72:8
O'Connor 9:17 10:3

_____ P _____

page 6:2 49:10 70:3
pages 16:18 19:18
  23:6 24:3,6 29:4

31:10 34:7,8
paint 35:6 53:23
pall 36:24
paper 30:1,12,13,16
  31:3 39:21
papers 5:5 7:10 8:11
  10:15 69:1
paragraph 22:21
  52:1
paralegals 45:18
part 9:17,20,25 12:7
  19:5 21:24 44:23
parte 4:17 5:4,10,14
  5:18 72:1
partially 60:14 67:23
participants 23:20
participate 43:17
particular 11:10
  25:9,24 26:10
  27:24 38:6,9 39:20
  39:25 44:17 59:16
  63:11 67:2 69:13
particularly 16:16
  47:12 58:11 59:24
  66:18 67:3,12
parties 4:6,7 5:7,20
  6:4,12,12 21:2
  29:14 34:11 37:9
  41:21,25 44:2,20
  44:24 45:25 46:4
  57:22 58:4
partners 45:17
party 15:7,13 26:12
  46:2,4 50:7 51:15
  73:17
path 30:5 31:2
Paula 12:12
PDF 5:20,22
pen 48:10,12
pending 56:22 64:20
people 23:17 27:10
  28:12 31:5,8 42:23
  43:22 47:20 63:1
  68:18 69:17
percent 33:21 34:2,8
  41:14
percipient 22:4,5
  24:7
perfect 38:20 46:9
  48:6
perfectly 46:25 60:1
period 9:7,12 10:21
perjury 10:19 15:20
perplexing 61:17,23
person 11:12 12:14

36:4
personal 21:25 37:5
personalized 38:5
personally 15:5
persons 29:24
pertains 73:11
Peter 5:11 23:17
phase 6:22,23 9:19
  10:19 11:14,16
  12:17 16:4 24:1
  48:3,3
Philip 69:7 71:10
phrase 64:11
physical 30:11
picture 53:24
pictures 25:12
pink 48:7,8,10,12
pinning 71:4
place 5:19 45:8 73:4
Plaintiff 1:5 2:5
pleading 26:17
pleadings 13:21
  22:9 24:24
Please 32:25
plenty 7:4 15:10
plow 16:6
plummeted 71:3
point 6:20 10:7 16:2
  35:10 36:11,18
  47:16 50:20 53:16
  54:1 55:3,12,20
  56:1 58:10 64:12
  68:2,5,22 70:10
  71:24
points 8:23 47:17
  53:14
polling 67:10
position 31:20,24
  32:1 37:12 50:6,17
  50:23 58:17 59:2
  64:5 68:2
possess 29:24 35:2
possession 41:15
possible 44:4 45:17
  45:25 47:19 57:21
  60:14,17 61:2
possibly 15:17 25:18
potential 17:20
  37:24
potpourri 54:24
practical 46:17
practicalities 47:12
practically 19:1
practice 7:5 28:11
  45:15 46:1 50:13

precedent 24:12,13
precise 30:20 36:4
precisely 35:24
  57:11
preclude 26:19
precluded 26:16
preliminary 66:7
  67:14
premature 55:10,12
preparation 16:17
  17:3 19:22
prepare 18:23 24:4
  29:1,8 31:7,13
prepared 16:20 26:6
  26:8 34:21 40:21
  40:23 44:6 50:22
preparing 16:15
prerogative 54:6
present 3:21 44:6
  66:23
preserved 31:23
  36:14 37:2,15,22
  37:23
pressed 57:17 58:13
presumably 47:2
pretty 7:9 47:16 51:5
  51:11 52:5 54:15
  58:20
previous 36:21
  37:15 60:21
previously 6:8 9:3
  9:20 56:22 60:21
primary 14:20
principal 15:15
  23:12 46:10
principally 12:14
principals 45:7
print 30:13
prior 15:19 24:9,10
  36:25 37:1 50:13
  73:5
privilege 54:25 55:1
  55:5 57:8 58:15,16
  58:19,22
privileged 55:2,7
probably 35:10
  43:14
probative 67:13
problem 36:22 37:5
  37:25 38:1 43:15
  60:24 62:22 63:21
  65:3,8,15 66:7
  67:15
problems 37:6 44:1
  57:13 59:7 64:1

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT
PAGE

Page 7
26
756

TRANSCRIPT OF PROCEEDINGS                                08/27/09

67:16
procedure 41:24
procedures 5:22
proceeding 28:8
proceedings 1:15
   2:16 73:3,5,7,13
process 5:19 16:17
   17:10 21:2,18
   25:21 26:1 27:12
   35:9 38:15 47:20
Proctor 3:9 4:10,10
   7:15,17,23 8:14
   9:15 33:7 35:6,15
   55:23 56:17,18
   60:13,15,17 66:3,4
   70:11
produce 31:11,24
   32:19 33:17 34:16
   34:18 37:3,23 54:8
   57:9 63:24
produced 6:9 9:6,18
   9:20 10:1 14:5,7
   16:17,21 17:11
   19:7 20:18 26:3
   31:10 34:6 35:22
   36:1 64:21 65:14
producing 17:5,5
   20:12 34:15 54:5
   54:19
product 52:17,19,20
   62:20 63:9 64:10
   64:23,24 65:3,17
   66:24 71:4
production 6:10,23
   19:15,16,22 20:13
   30:22 39:17,22
   40:5 48:4 49:3 57:5
   57:14 58:2 62:8
   63:15,16,22,23,24
   66:6,10,12,21
   67:17
productions 35:24
   45:5
products 51:20 52:8
   52:16,16 53:3,4,6,8
   53:23 61:11,13,21
   62:14,15,21 63:3
   63:11,18,19,25
   64:3,6 66:7,23
   67:15,25 68:1,7,9
   69:3,9,13,15,18,20
   69:22 70:1,4,6,17
   70:24 71:1
product-by-product
   62:18

professional 38:18
profits 52:10 69:8,25
prominent 9:19
prompt 58:8
promptly 45:17
   71:24
proper 12:3
proposal 57:3
proposed 28:17
proprietary 41:4
protection 21:25
protective 6:4 49:23
   50:1,7,8,9 56:10,11
   56:21 57:19,25
   58:5,8
prove 65:7
proven 22:4
provide 8:16 36:10
   36:15 42:20 58:22
   60:17 61:2 62:17
   63:5,6,13
provided 20:15
   60:20,24 66:12
providing 58:15 67:4
prudently 47:8
pulling 27:17
purport 61:1
purported 62:2
purporting 56:24
purpose 31:9,15
pursuant 5:21 12:18
pursue 26:21 48:11
pursuing 26:16,19
put 12:2 14:13 15:10
   25:4,10,12 27:11
   41:6 44:8,12 46:14
   46:19 64:25 65:22
   71:18
putting 51:22 53:5
   54:2 69:16

          Q
quarrel 19:7
question 10:9 18:8
   27:7 61:24 64:9
   67:24
questions 10:13
   17:24 18:2 19:24
   62:14,14
quickly 5:23 28:14
   29:2 57:21
Quinn 3:8 17:6 18:3
   38:17 44:19 45:9
quite 22:14 24:9
   28:6 33:18 66:16

66:16
quote 21:15,19,19
   24:18

          R
R 1:21 2:20 73:23
raise 4:16 50:2 51:7
   53:11,12 55:17
raised 31:17 33:4
   40:18
raising 31:15
reaching 52:13
read 7:21 8:5,12
   34:13 58:12
real 25:17 31:9 35:13
   36:7 64:1 67:16
reality 47:3
realize 59:15
really 10:23 11:10,13
   12:4,24 18:1 19:3
   19:23 21:12 22:11
   28:9 31:5,6,14 32:7
   32:9 33:24 37:2,16
   54:20,22 56:14
   61:2 62:12 65:8,15
   71:17
real-world 63:14
reason 9:9 10:14,16
   11:25 13:3 19:21
   21:15 22:13 41:10
   56:2,15 69:1
reasonable 18:9
   20:8 33:10 35:16
   41:7 46:10,25
reasons 12:7 13:13
   15:4 35:16
recall 9:4 27:22
   52:15,17 54:11
   66:22,25 67:12
   70:22,23 71:2
recalled 52:21
received 7:12 8:25
   43:19 49:25 52:9
   64:16 69:24
recipient 29:4
reciprocal 32:9,13
   32:17 41:22
reciprocity 37:20
recognized 22:10
recollection 16:24
reconcile 34:22
record 4:4 17:25
   18:5 35:25 42:14
   43:8 73:6,9
records 39:22 47:2

red 14:14 18:19
   22:11
Redweld 30:2
refer 30:15 62:21
   63:18 66:22 67:8
reference 6:17
referring 6:16,19
refers 62:8
reflection 12:10
refreshed 16:24
refuse 58:1
refused 32:12
regard 17:19 43:18
regarding 4:17 52:8
   53:2
rejected 50:5 51:4
relate 63:17 66:22
   67:9 68:19
related 15:21 52:7
   54:14 55:20,21
   70:23
relates 61:4,7,9 62:8
relating 66:25
relative 73:16
relevance 50:16
   51:8,23 52:4,18
   53:10,17,18 62:2
   69:13 71:16
relevant 35:18,19
   36:1 37:20,21
   51:10,18 67:3 69:2
relieve 20:21
rely 55:5
remain 41:15
remember 63:8
rendered 15:25
reopening 16:4
repeat 70:4
repeatedly 58:5
reply 4:23,24 5:16
   8:1 26:25 27:1 69:1
report 46:20
Reported 1:21
reporter 2:20 42:10
   73:2
REPORTER'S 1:15
   2:16
reports 12:13 67:9
representatives
   44:6 46:5
represented 23:11
request 17:1,9 24:22
   33:11 40:19,20,22
   40:25 43:16,21
   57:14 61:9,9,16

62:8 63:15,24 66:9
   66:20 67:2 68:11
   69:1
requested 73:14
requests 6:23 43:20
   48:3 49:3 52:15
   57:5,14 58:2 62:21
   63:16,22,23 66:6
   66:12 67:11,12,16
   67:17
require 6:9 37:17
   60:7
required 26:18 43:22
   60:9
requirement 17:25
requires 21:20 44:5
research 52:17,22
   53:1,3,7 67:10
resemblance 24:24
reserve 55:14 68:10
resolution 58:8
resolved 50:18 56:23
   57:21
respect 8:24 15:6
   19:25 32:21 33:22
   43:23 64:13 67:24
respond 8:7 56:2
   57:8 58:1 60:9,13
   60:14 67:23,24
responded 60:3
response 15:1 21:5
   31:12 36:10,11
   37:12 54:15 63:20
   64:12 66:10 67:21
responses 6:22
   18:15 42:18 48:2
responsible 12:15
responsive 58:23
rest 19:17 33:23
   42:13 72:5
restored 47:5
restricted 10:11,22
result 59:18,20
   69:21
revenue 52:9 69:24
review 9:5 20:15
   27:10 28:6 73:13
reviewing 25:16
re-investigate 47:1
re-prepared 26:4
RFP 68:24 69:14
   70:22 71:6,7
RFPs 46:13,16 48:18
   49:21,22 51:9 52:6
RICO 13:8 14:13

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT
PAGE 

**TRANSCRIPT OF PROCEEDINGS**                                                           08/27/09

| | | | | |
|---|---|---|---|---|
| 20:1 51:14 59:19 | 37:21 40:8 51:1 | **session** 25:5 43:22 | **somewhat** 26:2 38:5 | **stolen** 61:25 |
| 69:3,6,12 71:8,10 | 66:24 68:20 69:17 | **sessions** 12:19,19 | 57:17 | **stopwatch** 25:13 |
| **ride** 65:18 | **says** 23:11 34:13 | **set** 4:25 6:22,23 | **sooner** 42:22 | **stored** 31:2 |
| **right** 4:13 5:20,25 | 39:12 55:4 57:19 | 11:22 46:16 48:2 | **sorry** 60:12 64:2 | **stories** 65:5 |
| 12:2 15:4 17:22 | 58:7 70:3 | 67:17 73:4 | 66:3 | **story** 41:17 |
| 19:8 20:20 21:4,10 | **Scene** 64:25 | **settlement** 43:25 | **sort** 20:18 22:13 | **Street** 2:17 3:5,10,19 |
| 27:6,7 28:3 30:4,14 | **scheduled** 72:6 | **seven** 16:11 23:24 | 25:22 26:9 27:17 | **strike** 37:10 |
| 32:24 40:17,24 | **scheme** 22:24 | **SGL** 1:6 2:6 | 28:2 30:2 38:16,20 | **strikes** 58:17 |
| 41:18,20 42:9,19 | **schemes** 23:7,22 | **shape** 14:11 | 39:6,21 40:5 43:24 | **strongly** 46:3 |
| 47:15 48:1 49:7,14 | **scope** 6:5 10:11 11:1 | **share** 17:17 | 45:5 47:10 69:10 | **structured** 14:22 |
| 58:4 70:19 | 19:6 | **shielded** 24:8 | **sorts** 57:12 | **studies** 67:9 |
| **rights** 55:15 58:7 | **seal** 5:15,16,16,17,18 | **shorthand** 2:20 73:1 | **sought** 14:2 15:14 | **stuff** 18:13,14 33:23 |
| 68:10 | 5:21 | 73:7 | **sounds** 38:25 46:10 | 33:23 55:18 |
| **ripe** 59:25 | **Searcy** 29:18 32:12 | **show** 18:16 20:6 | 46:24 | **Styles** 64:25 |
| **RNBx** 1:6 2:6 | 32:16 35:5 38:6,7 | 52:12 53:19 63:2 | **source** 41:22 53:7 | **subject** 14:3 15:15 |
| **ROBERT** 3:4 | 38:21 42:2,3 | 67:1 69:23 | **source-identifying** | 15:24 16:19,25 |
| **rock** 71:15 | **second** 6:7,23 12:19 | **showed** 64:21 | 30:24 | 17:11 19:1 20:4 |
| **rogs** 48:16 51:9,10 | 56:7,8 58:10 60:11 | **showing** 21:24 26:5 | **South** 3:10 | 28:25 29:7 42:19 |
| 51:11,19 68:17 | **secret** 13:8 18:13,14 | 52:22 | **so-and-so** 30:6 | 43:24 49:22 55:18 |
| **role** 12:20,21 15:11 | 19:24 51:14 65:9 | **showings** 21:21 | **spearhead** 20:2 | 71:1 |
| **Romans** 43:14 | **secrets** 18:17,25 | **shows** 12:1 23:24 | **specific** 20:7 21:21 | **subjects** 65:13 |
| **Ron** 64:20 | 59:21 63:1 | 24:6 40:11 51:10 | 44:9 46:3 51:19 | **submission** 9:5 |
| **Rorie** 3:18 4:7,7 | **security** 14:12 | **side** 8:9,11 30:22 | 55:2 61:1 62:15 | 71:23 |
| 27:22 48:15,18,23 | **see** 7:17 11:14 16:3 | 36:2 37:21,24 | **specifically** 15:3 | **submit** 10:16 11:7 |
| 49:1,5,12,14,15 | 18:19 22:19 25:7 | 39:15 40:4 44:10 | 63:3,17 70:8 | 27:5 35:3 53:20 |
| 59:12 67:19,20 | 28:15 31:4 43:25 | **sides** 8:5 33:4 38:14 | **specifics** 19:19 | 62:7 |
| **Rorie's** 59:9 72:4 | 51:23 53:8 55:22 | 43:22 46:19 | **specify** 48:16 | **submitted** 27:25 |
| **row** 16:22 | 55:25 72:6,9 | **signatory** 15:5,11 | **spend** 25:16 51:2 | **subscribed** 73:18 |
| **ruin** 44:18 | **seek** 7:2 59:16 61:1 | **significance** 24:6 | **spending** 47:6 | **subset** 20:14 64:7 |
| **ruled** 56:5 | **seeking** 9:2,11 56:3 | **significant** 12:21 | **spent** 17:4 | 72:9 |
| **rules** 28:8 | 60:24,25 63:14 | **similar** 62:10 | **spinning** 44:4,22 | **substantial** 33:19 |
| **ruling** 50:1 56:24 | 69:2 | **simply** 14:13 46:12 | **spit** 47:2 68:20 | 34:10 66:16 |
| 71:25 | **seen** 25:10 29:9 | 52:8 58:6 62:6 | **spoliation** 32:4,5 | **substantiate** 54:9 |
| **rulings** 24:11 | **Segundo** 3:14 | 63:10 | 36:24 37:25 40:14 | **substantiated** 25:23 |
| **run** 28:12 | **sell** 61:10,12,21,24 | **sit** 13:16 25:12,19 | 41:2 51:25 52:2 | **substantive** 50:2,20 |
| **runs** 27:15 | 62:5,6 68:25 69:9 | 44:2 | **spot** 44:9 | 51:7 56:9 57:13 |
| | 69:11 71:9,13 | **sitting** 29:19 33:12 | **squeeze** 71:14 | **suddenly** 18:24 |
| ——————S—————— | **send** 5:21,22 44:20 | 34:24 46:13 | **stage** 61:3 | **suffer** 44:6 |
| **said/she** 35:7,14 | 68:11 | **situation** 11:3 16:7 | **stand** 56:24 | **suffered** 14:15 59:18 |
| **sale** 69:3 | **sender** 29:4 | 16:23 17:19,20 | **standard** 21:18 | 59:20 69:5 |
| **sales** 52:18,22 53:2,3 | **senior** 45:10 46:12 | 20:12 32:21 | 53:14 | **sufficient** 35:10 |
| 53:22 67:10 71:2,7 | 46:18 | **size** 19:22 | **standards** 28:1,5 | 52:12 65:12,17 |
| 71:11 | **sense** 40:25 46:9,22 | **Skadden** 36:21 39:2 | **stars** 52:13 | 67:1 69:23 |
| **San** 3:19 | 47:11 | 39:4 | **start** 6:25 18:24 | **suggest** 41:23,25 |
| **sanctionably** 37:11 | **sensible** 46:25 | **SKU** 62:19 | 21:11 56:18 65:5 | 46:4 65:2 68:16 |
| **sanctioned** 49:19 | **separate** 13:11,15 | **SKUs** 62:17 | **started** 4:5 40:6 | **suggested** 31:3 |
| **sanctions** 56:2,3,16 | 69:25 | **small** 47:10 | **State** 73:2 | 38:12 |
| **sanctions-worthy** | **separately** 59:14 | **smaller** 50:25 | **stated** 54:16 | **suggesting** 38:22 |
| 32:21 | 62:13 | **sold** 52:9 62:3 69:24 | **statement** 70:1 | 45:9,19 47:21 66:1 |
| **sandbag** 8:9 | **September** 9:23 | **solicitous** 42:9 | **statements** 13:18 | **suggestion** 16:21 |
| **sat** 40:17 | 42:22 43:13 | **somebody** 6:20 10:6 | **STATES** 1:1 2:1 | 27:16 38:13 41:12 |
| **satisfied** 53:20 | **series** 62:14 | 13:20 | **sticks** 27:24 | **Suite** 2:17 3:5 |
| **saw** 4:24 | **serious** 66:11 | **somebody's** 30:5 | **stipulate** 21:13 | **suited** 59:25 60:3,8 |
| **saying** 10:4,4 15:14 | **served** 19:10 60:23 | **someday** 65:6 | 22:16 | 63:7 |
| 19:11 26:3 33:10 | **servers** 53:25 | **someone's** 43:4 | **stole** 63:3 | **superior** 36:6 |

TRANSCRIPT OF PROCEEDINGS                                        08/27/09

supplement 55:15
supplemental 7:11
    7:14,14 9:15 19:5
    68:11
support 21:14 56:25
    68:19
supporting 18:12
    71:21
suppose 65:24
supposed 63:19
sure 5:14 6:1 7:3,21
    9:10 16:16 20:24
    21:20 27:9,10
    28:15 36:11 39:8
    41:22 44:19,24
    47:19 49:6 55:23
surprised 39:4 58:11
    58:12,13
surprising 57:17
survived 17:14
Susan 3:9 4:11
suspect 65:23
SUTCLIFFE 3:17
Swapping 64:25
swear 8:14 32:10
swoop 26:4
sworn 73:6
system 36:7 47:4

T

T 3:8
table 15:10 19:2
    22:17 57:4
tailored 51:12 54:18
    67:2
take 4:24 11:23
    14:23 17:9 18:20
    22:16 31:7 32:1,10
    36:5 37:12 42:11
    42:13 57:3 61:4
    64:4,5 65:4 71:23
taken 2:16 5:19
    31:20 59:2 73:3
takes 12:2 21:7 26:7
    27:15 45:7 59:6
talk 44:3 45:6 47:1
    51:6 55:23
talked 50:15
talking 11:20 22:20
    46:13 47:9
talks 23:4,6 24:2
    25:22 52:1 53:8
tangentially 11:9
tape 40:1 47:5
team 42:5

teapot 28:3
telephone 32:11
tell 8:15 14:21 27:10
    31:19 32:10 37:8
    61:14,14,15,15,16
    63:9 68:12,21
    69:22 71:13,13
telling 37:13 44:10
tells 69:19
tempest 28:3
termed 63:18
terminology 30:20
terms 11:6 28:17
    41:16 47:13 60:25
    63:22,22 65:21
testified 15:20 16:10
    23:23 65:14
testifies 16:23
testify 14:25 16:20
    18:23 21:14 23:25
testifying 28:7 73:6
testimony 32:11
    60:1,4,8 73:9
text 25:11
thank 4:13 5:24 8:19
    13:25 14:1 20:10
    20:25 26:23 27:6
    29:12 35:4 40:10
    41:18 56:17,18
    67:19 71:22 72:2,4
Thanks 10:7
theft 64:18
Theoretically 65:22
theories 68:9
theory 69:11
thing 6:19 14:13
    16:5,24 17:22
    20:18 22:13 25:22
    27:18 30:2 32:16
    32:20 36:17 38:4
    38:16,20 39:6,21
    40:5 41:16 45:5
    47:11 53:13 66:5
things 20:6 29:2,10
    33:3,25 37:6 39:23
    44:8 47:5,18,23
    59:17 62:25 65:5
    67:2
think 4:14,18 6:13
    6:16,18 7:17 8:22
    9:12 10:4,13 11:3,9
    12:8 13:15,23 18:7
    19:11 20:13 21:15
    25:6,23,25 26:8,11
    26:20 28:5,9,12,20

30:10 34:12 35:10
    35:17 36:2,7,10
    37:18 38:2,4,11,14
    38:21 40:6,8 44:12
    45:2 46:18 47:11
    47:17 48:8,10 49:7
    49:15 51:6,9 54:10
    54:14,20 55:7,11
    56:19 58:21 59:8
    60:15,17,19,23
    62:9,12,24 66:20
    67:16,20,24 68:15
    69:15,21 71:20
    72:3,6
thinking 41:1 65:22
thinks 26:16
third 6:21 10:18
    11:17 15:7 22:6
    23:5,14 26:11,14
third-party 53:7
thought 18:4
three 4:14 13:5
    16:22 49:15 50:24
    55:10
throw 47:24
thrust 31:9
Thursday 1:17 2:19
    4:1 72:8,9
time 6:2 7:2 9:7,12
    9:24 10:21 11:11
    11:23 12:2,5,6,10
    12:16 16:15,23,25
    17:4,23 18:1,6,20
    19:18 21:22 24:15
    24:23 25:1,9,14,16
    27:3 28:21,22 34:3
    40:6 43:2 47:2 51:3
    56:7,8,21 60:4,5
    61:17 65:13 66:18
    71:4 73:4
times 24:16 45:8
    46:12 47:22 67:21
    70:13
timing 9:8 11:2
    12:24
today 4:15,21,22
    6:20 8:7 9:13 25:1
    33:12 34:24 37:3
    38:7,22,25 44:9
    45:24 47:25 56:7
    64:3,7
today's 5:25 39:14
Todd 5:11
told 36:20 37:24 57:6
    58:23

tomorrow 4:25 38:7
top 32:3,5
topic 19:13
topics 12:22 17:1,20
    18:7,7
total 12:17 13:14
totally 61:20
tough 71:4
town 38:7
trade 13:8 18:13,14
    18:17,25 19:24
    51:14 59:21 63:1
    65:9
traditionally 30:15
traffic 4:23
trail 40:11 41:13
transaction 14:20
    15:5,7,12,13 26:12
transactional 23:18
transactions 10:23
    11:19,21,21 14:3,5
    14:6,6,11,18,22
    15:11 17:12,14
    19:4,14 20:1,5
    23:12 25:20
transcribed 73:8
transcript 1:15 2:16
    73:9,12,14
transcripts 42:11
transfer 22:20,24
tremendous 26:14
trial 9:19,19 10:20
    11:16,16 12:2
    15:22 16:3,5,11
    23:24 24:9 28:3,4
    28:15,18
tried 33:9 45:16
troubled 43:5
true 39:18 46:19
    73:9
Trueba 65:11
truly 17:11
Trust 14:8
try 4:25 8:5 25:4
    28:12 34:1,9 46:19
    47:18 53:23 56:18
    57:3 59:7
trying 8:9 16:6 41:24
Tuesday 72:8
turn 5:5
turned 41:12
turns 17:2
TV 13:24
twice 15:21
two 12:18,19 16:7,11

31:21 42:15,23
    53:20 62:16 63:17
    63:20
type 52:24 57:14
    60:19,23 71:5,6
types 60:2,18
typical 11:7

U

ultimately 15:25
    46:21
underbrush 45:11
undergo 54:8,18
underlying 27:14
    52:3 63:21
undersigned 73:1
understand 4:22,24
    8:2 10:25 13:16
    28:23 47:16 61:19
    64:4
understanding 40:3
undue 24:2
unduly 50:16 53:12
    53:15 68:9
unfair 34:16
unfairness 34:22
uniformly 65:9
UNITED 1:1 2:1
units 52:9 69:23
universe 47:10
    70:20
unlawful 23:2
unreasonable 37:12
untenable 10:17
unusual 16:12
URQUHART 3:8
use 6:12 25:8 48:12
    59:16
useful 35:18
uses 59:22
U.S 69:6 71:10

V

v 69:6 71:10
Vargas 65:10
various 6:12,13 8:4
    23:7,19,20 31:12
    45:5 59:17
vast 59:3 67:12
verdict 16:1
verify 18:15
version 35:7
versus 24:23 39:21
Victoria 9:17 10:3
videotape 12:1 25:8

EXHIBIT   26
PAGE          759

**TRANSCRIPT OF PROCEEDINGS**                                           08/27/09

| | | | |
|---|---|---|---|
| view 23:22 | 31:19 32:25 37:23 | 48:10 56:19 64:10 | **69** 49:3 |
| vigorous 15:23 | 42:18 45:19 48:14 | **working** 43:10 | |
| **Villar** 5:9 | 57:4 68:11 | **world** 54:1 | **7** |
| violation 14:10 | **we're** 11:19 16:3 | **worse** 16:23 | **7** 51:19 62:16 |
| violations 59:19 | 20:8 25:19,20 | **wouldn't** 40:22 | **70** 49:3 |
| virtually 61:18 63:15 | 28:18 29:5,19 | 43:14 59:13 | **71** 52:6 |
| virtue 23:1 | 30:18,24 31:18,18 | **writes** 10:3,7 | **71** 13 1:22 2:20 |
| vociferously 34:15 | 32:2 33:10 34:23 | **wrong** 6:19 28:10 | 73:24 |
| **vs** 1:6 2:6 | 37:16 38:10 41:21 | 36:4 39:16 60:10 | **72** 52:7 |
| **vu** 49:21 | 44:1,6 47:11,21 | | **73** 52:7 |
| | 49:10 50:6 52:8,11 | **X** | **75** 17:2 |
| **W** | 52:12,24 55:16,21 | **X** 70:25 | **76** 52:7 |
| **Wachovia** 15:8,12 | 56:3,24 63:19 65:7 | | **773-4585** 3:20 |
| 26:12 | 65:18,19 66:24 | **Y** | |
| **waive** 60:7 | 68:12,20 69:16,23 | **Yeah** 27:19 39:18 | **8** |
| **waived** 50:19 58:3,7 | 70:8,21 71:19 | **years** 9:2 23:5 66:25 | **8** 51:19 62:16 |
| 58:15 | **we've** 7:9 8:3 10:15 | **yellow** 48:8 | **80** 52:14 53:1 66:21 |
| **waiver** 57:16 58:10 | 16:17 17:23 18:5 | **yesterday** 7:11 | 70:22 |
| **want** 6:1 7:6,10 8:18 | 19:13 28:13,17 | | **808's** 23:18 |
| 9:10 11:3 12:9 | 32:6 33:13,17 34:7 | **Z** | **82** 52:14 |
| 13:18 16:4,16 | 34:14 36:25 37:21 | **Zeller** 3:8 4:9,9 7:6,8 | **84** 52:14 |
| 18:24 19:4 20:11 | 37:22,22 41:13 | 7:14,16,19 8:22 | **865** 3:10 |
| 21:4 22:15 25:16 | 45:15,15,16 50:10 | 9:10 11:5 14:18,23 | |
| 26:3,24 27:3,3 | 55:10 58:15 | 15:2,24 21:4,9,11 | **9** |
| 30:12 32:7,9,23 | **whatsoever** 18:11 | 33:7 38:2,4 39:18 | **9** 51:25 |
| 33:14,14,15 38:1 | 40:14 | 40:11 43:3,8,11 | **90** 33:21 34:8 41:14 |
| 40:16 41:21 44:4 | **wheel** 44:4 | 45:9 46:8 48:14 | 53:1 |
| 44:10,12 53:8 54:4 | **wheels** 44:22 | 64:14 72:7 | **90013-1065** 3:5 |
| 62:18 64:9 66:1,24 | **whereabouts** 34:10 | **Zeller's** 27:9 | **90017** 3:11 |
| 67:3,8 68:11,21 | **WHEREOF** 73:18 | | **90245-5012** 3:14 |
| 72:2 | **wide** 29:2 | **0** | **93** 53:1 67:8 71:7 |
| **wanted** 39:25 42:16 | **willfulness** 10:9 | **04-9049** 1:6 2:6 | **94** 105 3:19 |
| 43:18 | **willing** 32:19 33:17 | **04-9405** 1:7 2:7 | **950** 46:15,16 |
| **wants** 13:16 | 34:15 | **05-2727** 1:7 2:7 | **98** 49:5,7 |
| **wasn't** 40:22 | **window** 51:6 55:8 | | |
| **wasting** 25:14 | 62:9 | **1** | |
| **watch** 25:13 | **withdraw** 54:4 57:4 | **1** 9:19 10:19 12:17 | |
| **water** 56:6 | 57:7 60:7 63:9 | 16:4 48:20 50:20 | |
| **way** 11:22 13:3 | **withdrawing** 48:9 | 61:16 | |
| 14:11 20:11 25:5 | 51:2 57:6 | **10** 14:4 34:2 57:10 | |
| 25:17 34:17 38:11 | **withdrawn** 48:23 | 66:25 | |
| 41:7 42:3 56:19 | 49:5 | **10th** 3:10 | |
| 58:25 63:10,12 | **withheld** 58:23 | **10-year-old** 48:9 | |
| 64:11,14 66:8 | **witness** 11:14,16 | **10:07** 2:18 4:2 | |
| **week** 71:25 72:6,10 | 12:16,24 15:18 | **100** 17:2 | |
| **weekend** 72:10 | 16:19 17:5,6 19:12 | **103** 52:1 | |
| **weeks** 26:6 42:25 | 19:23 21:17 22:5,5 | **105** 22:21 | |
| **weigh** 53:24 | 24:4,7 25:15 28:5 | **107** 49:5,7 | |
| **welcome** 21:3 | 28:21 73:18 | **108** 49:5,8 | |
| **went** 48:6 | **witnesses** 19:25 | **11** 48:25 51:25 | |
| **weren't** 25:11 | 27:8,9,10 73:5 | **11th** 42:22 43:13 | |
| **West** 2:17 3:5 | **word** 21:6 32:23 | **11:48** 2:19 4:2 | |
| **we'll** 4:5,24 5:20,21 | 59:16 | **118895** 1:23 | |
| 5:22 6:6,17 8:20 | **words** 40:21 | **12** 48:21 | |
| 18:9 19:6,14 20:7 | **work** 18:9 43:4 | **14** 12:19,19 48:21 | |

*(second column of number index)*

| | |
|---|---|
| **186** 70:3 | |
| **2** | |
| **2** 6:22,23 11:14,16 | |
| 24:1 48:3,3,21 | |
| 49:17 | |
| **2000** 9:24 10:5,21 | |
| 66:23 70:24 71:2 | |
| **2002** 9:17,22 | |
| **2009** 1:17 2:19 4:1 | |
| 7:13 | |
| **21** 11:4,5 12:9 13:4 | |
| 13:14,15,17,23 | |
| 15:16 16:9 17:2,17 | |
| 18:10 20:3 | |
| **21st** 7:13 9:1 10:1 | |
| **213** 3:6,11 | |
| **25** 51:5 | |
| **252-2000** 3:15 | |
| **27** 1:17 2:19 4:1 | |
| **28** 12:17 13:1 | |
| **3** | |
| **3** 48:25 49:18 51:11 | |
| 59:11,14 63:17 | |
| 67:22 | |
| **310** 3:15 | |
| **333** 3:14 | |
| **4** | |
| **4** 15:9 16:18 19:18 | |
| 20:4 23:9 24:3 25:2 | |
| 25:19,21,25 26:5 | |
| 29:4 34:7 51:11 | |
| 59:12 60:11 61:4,5 | |
| 63:17 | |
| **400,000** 34:8 | |
| **405** 3:19 | |
| **415** 3:20 | |
| **46** 51:4 54:11 | |
| **4800** 2:17 3:5 | |
| **5** | |
| **5** 25:6 51:11 59:11 | |
| 59:14,16,17 67:22 | |
| **500** 11:8 | |
| **51** 44:13 | |
| **52** 43:19 44:13 45:15 | |
| **555** 2:17 3:5 | |
| **6** | |
| **6** 51:11 59:11,14,16 | |
| 59:19 67:22 | |
| **624-7707** 3:11 | |
| **629-7400** 3:6 | |

# EXHIBIT 27

EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 28

**CONFORMED COPY**

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:     (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No.1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS** |

## I. INTRODUCTION

On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of

Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions. Mattel

seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of

Requests for Documents and Things Re Unfair Competition Claims, including, without limitation,

Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

EXHIBIT 28
PAGE _____ 775

1   65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2   represents a portion of the costs incurred by Mattel in bringing this motion.  Mattel's Motion at

3   p.1.  On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4   a reply brief.  The matter was heard via telephonic conference on August 13, 2007.  Having

5   considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6   is granted in part and denied in part, and the request for sanctions is denied.

                                    II. BACKGROUND

8          This consolidated action includes MGA's claims for unfair competition against Mattel.

9   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10  products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11  packaging and Bratz television commercials.  MGA also alleges that Mattel engaged in improper

12  conduct in dealing with retailers, licensees, employees and industry organizations.

13         After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14  several counterclaims against MGA, including claims for copyright infringement, violation of

15  RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16  Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17  trade secrets, confidential information and other property and take it with them to their new

18  employment with MGA.  Mattel also alleges that Bryant conceived, created and developed Bratz

19  designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20  Mattel, and that he sold Bratz to MGA while he was a Mattel employee.  Mattel alleges that it is

21  the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22  the Bratz designs.

23         On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24  Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25  Production").  The Requests for Production consist of 166 requests seeking information that

26

27

28

EXHIBIT 28
PAGE 776

1   Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2   defenses thereto.

3        In the meantime, MGA served its initial disclosures related to its unfair competition

4   claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5   disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6   wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7   more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8   Production.

9        MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10  MGA objected and refused to produce documents responsive to approximately two-thirds of

11  Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12  objectionable documents," subject to its General and Specific Objections.

13       Thereafter the parties met and conferred in person and exchanged a few letters. On

14  February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15  Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16  to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17  162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18  agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19  certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20  advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21  Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22  to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23  Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24  responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25  non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28

EXHIBIT 28   3
PAGE   777

1          In its opening brief, Mattel contends that MGA has improperly refused to produce

2   documents relating to: the creation, origin, timing and ownership of the contested MGA products

3   and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4   17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5   by, among other things, targeting and recruiting current and former Mattel employees (Request

6   Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7   159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8   Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9   documents because they are directly relevant to the claims and defenses in the case. Mattel also

10  contends that MGA has improperly restricted the scope of its document production in response to

11  Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12         MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13  First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14  confer process. Second, Mattel is seeking documents that may be precluded by other motions

15  pending before the district court. Third, Mattel is seeking documents that constitute an

16  unreasonable and overbroad fishing expedition.

17         As to the first point, MGA contends that it has already agreed to produce documents

18  responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166. Moreover,

19  MGA represents that it has produced more than 110,000 pages of documents, including

20  documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21  Mattel with access to Bratz molds and sculpts. MGA also represents that it is continuing to

22  search for and produce documents responsive to Mattel's requests on a rolling basis.

23         MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24  further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25  custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 28
PAGE 778

1   responsive to the following sixteen requests: 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2   157-159." MGA's Opposition at p. 3.

3        MGA also represents that it is prepared to produce documents responsive to Mattel's

4   Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5   employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6   order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7   2 and 6.

8        As to the second point, MGA contends that Mattel's motion to compel is premature with

9   respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10  things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11  Master issued an order compelling MGA to produce such documents in response to other Mattel

12  discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13  Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14  responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15       For the remaining requests, however, MGA stands by its objections.  More specifically,

16  MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17  and unduly burdensome.

18       In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19  documents do not obviate the need for an order compelling production for several reasons.  First,

20  Mattel contends that in many instances, MGA's purported agreements to produce responsive

21  documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22  and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23  documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24  certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25

26  _____

27      [1]  Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 28
PAGE 779

1  representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2  supplemental responses. For example, even though MGA stated earlier in its two meet and confer

3  letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4  48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5  objects and refuses to produce documents responsive to these requests. Third, Mattel contends

6  that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7  65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8  Mattel's counterclaims, and yet, MGA has failed to do so. Fourth, Mattel points out that MGA's

9  opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10 MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11 requests as overbroad and burdensome. See MGA's Opposition at pp. 3 and 8.

12         Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13 on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14 upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15 products. Accordingly, Mattel requests an order compelling production of documents all

16 documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17 any objections thereto.

18         With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19 that the requests seek documents relevant to Mattel's trade secret counterclaims. Mattel also

20 contends that MGA has failed to establish that complying with the requests would impose an

21 undue burden.

22                                    III. DISCUSSION

23         Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25 party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

26 permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

27

28

1  2004) ("District courts need not condone the use of discovery to engage in 'fishing

2  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5  the phrase "subject matter involved in the pending action," were intended to prevent discovery

6  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7  litigate the issues presented by the pleadings but to develop new claims or defenses.).

8       Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9  extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  26(b)(2).

17  **Request Nos. 1, 3, 4, 13 and 18**

18       Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials." Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS." Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL." Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 28

PAGE 781

1   alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2   PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3   advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4   PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5   sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6   advertisements, brochures, displays and Internet publications."

7          During the meet and confer process, MGA agreed to produce documents responsive to

8   Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9   responses, however, MGA responded that it would produce responsive documents "visible to the

10  consuming public at the point of purchase," "made available to the public," or "presented to the

11  consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12         Mattel contends that the requested documents and items are relevant to MGA's claim of

13  "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14  the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15  Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16  claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17  and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18  directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19  similarity to MGA's products over time.

20         In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21  arguments above, relying instead on its argument that these requests are premature until Judge

22  Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23  requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24  MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25  3, 4, 13 and 18.

26  //

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 28
PAGE 782

1    **Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159**

2         In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3    8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4    opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5    burdensome. See MGA's Opposition at pp. 3 and 8. Request No. 55 seeks production of "[a]ll

6    periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7    that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8    1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9    CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10   contends that these requests encompass, among other things, every single advertisement MGA

11   ever ran in connection with BRATZ or any of the other products at issue.

12        Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13   contain admissions relevant to various issues in the case, including admissions regarding the

14   origin and timing of the products at issue; the performance of the contested products or MGA as a

15   whole, which may undercut MGA's claims for damages; and statements that might reveal that

16   MGA had access to confidential Mattel information.

17        Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18   overbroad. They require MGA to produce every single advertisement MGA ever ran in

19   connection with all of the products at issue. The requests are not limited in any respect to the

20   subjects of interest to Mattel, i.e., the origin and timing of the products at issue. Furthermore,

21   Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22   seeks.

23        Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24   43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25   pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26   //

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

1  **Request Nos. 9, 10, 12**

2       Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention,

3  creation, origin, conception, authorship, design, development, production, engineering,

4  manufacture, distribution, sale and ownership of products and packaging" "that YOU contend

5  provide a basis for any claim against MATTEL, whether or not such claim is in the

6  COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related

7  "COMMUNICATIONS" (No. 12). During the meet and confer process, MGA agreed to produce

8  "documents sufficient to show the timing of, and relevant facts" regarding the following products

9  on the following topics:

10       • "First generation 'Bratz'" line, including packaging – invention, creation, origin,

11       conception, authorship, design, development, sale and ownership;

12       • "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation,

13       origin, conception, authorship, and first sale;

14       • "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception,

15       authorship and first sale;

16       • "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention,

17       creation, origin, conception, authorship, and first sale;

18       • "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first

19       sale;

20       • "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception,

21       authorship, and first sale;

22       • "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation,

23       origin, conception, authorship, and first sale;

24       • "Bratz" "Petz," including packaging – invention, creation, origin, conception,

25       authorship, and first sale;

26

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  28  10

PAGE  784

1      • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2      authorship, and first sale;

3      • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4      sale;

5      • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6      first sale; and

7      • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8      sale.

9  Kidman Decl., Ex. 14. In response to Request No. 9, MGA also agreed to produce documents

10  containing development, production and sales information for the product(s) affected by the hair

11  shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12  regarding the shortage and its effect on MGA." Id. Thereafter, MGA asserted objections to these

13  requests in its May 31, 2007 supplemental responses. In opposition to Mattel's motion, however,

14  MGA restated that it would produce documents responsive to these requests consistent with its

15  prior meet and confer letter. MGA's Opposition at p. 5.

16      Mattel contends that MGA's agreement to produce documents is insufficient because

17  MGA has limited its production to documents "sufficient to show." MGA's opposition brief fails

18  to address Mattel's argument. Instead, MGA merely asserts that it agreed to produce documents

19  responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20  Mattel's motion should be denied as moot.

21      Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22  justify why its production should be limited to documents "sufficient to show." Therefore,

23  Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24  **Request Nos. 26, 29, 30, 32, 36, 45, 48-51, 118, 137 and 166**

25      In its two meet and confer letters MGA agreed to produce, subject to its General and

26  Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28

EXHIBIT 28   11
PAGE   785

1   and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2   supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3   object to some of the requests or otherwise agrees to produce only a limited portion of documents

4   responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5   MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6   considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7   granted as to this category of requests.

8   **Request Nos. 65-117 and 119**

9        In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10   Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11   Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12   these requests.

13   **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14       MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15   and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16   the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17   particular, the theft of trade secrets through targeting and hiring current and former Mattel

18   employees.

19        Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20   while the individual was employed by MATTEL." Although the request may encompass relevant

21   documents, it is overbroad insofar as it requires production of all communications, regardless of

22   subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23   equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24   to Rule 26(b)(2), Fed.R.Civ.P.

25        Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26   [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28

1   CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2   relevant documents, however it is overbroad, seeking all documents relating to any

3   communications by MGA with any news organization. Furthermore, the request seeks documents

4   that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5   Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6       Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7   about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8   advertising, media releases, and public relations material." This request is also overbroad in that

9   it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11      Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17      Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product." Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

1   contractor RELATING TO the ownership of any idea, concept, design, or product.  Unlike the

2   previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3   central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4   and former Mattel employees.  MGA has not carried its burden of establishing that it would be

5   unduly burdensome to comply with these requests.  Accordingly, Mattel's motion is granted as to

6   Request Nos. 60, 138, 139 and 140.

7        Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8   or indirectly) by [MGA] at any time since January 1, 1999."  Request No. 161 seeks "[a]ll

9   DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10  other than MATTEL products that [MGA] purchased at retail."  Request No. 164 seeks "[a]ll

11  DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12  any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13  CONTESTED MATTEL PRODUCTS."  These three requests are also reasonably tailored to seek

14  documents that could support Mattel's allegations of trade secret theft.  MGA has failed to

15  establish that it would be unduly burdensome to comply with these requests.  Mattel's motion is

16  granted as to Request Nos. 160, 161 and 164.

17                              IV. CONCLUSION

18       For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19  13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20  166, and denied as to Request Nos. 42, 54-56, 58, 59.  MGA shall produce, without limitation, all

21  non-privileged responsive documents in accordance with this Order no later than August 30,

22  2007.  Mattel's request for sanctions is denied.

23       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24  Master, Mattel shall file this Order with the Clerk of Court forthwith.

25  Dated: August 13, 2007

                                        HON. EDWARD A. INFANTE (Ret.)
26                                          Discovery Master

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                          14
EXHIBIT 28
PAGE 738

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 13, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 13, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 28
PAGE 789