# EXHIBIT 29

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:     (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
13  |                               | JAMS Reference No. 1100049530 |
    |             Plaintiff,        |                               |
14  |                               | Consolidated with |
    |         v.                    | Case No. CV 04-09059 |
15  |                               | Case No. CV 05-2727 |
    | MATTEL, INC., a Delaware corporation, |                       |
16  |                               | **ORDER GRANTING IN PART AND** |
    |             Defendant.        | **DENYING IN PART MATTEL'S** |
17  |                               | **MOTION TO COMPEL RESPONSES** |
    |                               | **TO INTERROGATORY NOS. 27-44** |
18  |                               | **AND 46-50 BY THE MGA PARTIES** |
19  | CONSOLIDATED WITH |
20  | MATTEL, INC. v. BRYANT and |
    | MGA ENTERTAINMENT, INC. v. MATTEL, |
21  | INC. |

22                      I. INTRODUCTION

23      On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.  MGA Entertainment, Inc., MGA

25  Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26  referred to as "MGA parties") submitted an opposition on December 31, 2007.  Mattel submitted

27  a reply on January 7, 2008.  On February 8, 2008, the MGA parties submitted their second

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                    1

2·15·08

EXHIBIT 29
PAGE 790

1   supplemental responses and third supplemental responses to the interrogatories at issue. The

2   matter was heard on February 11, 2008.

3   II. BACKGROUND

4       Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5   21, 2007, asking each of them the same fifteen questions (Nos. 27-41). Mattel served its Fourth

6   Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7   interrogatories (Nos. 42-45). Mattel served an Amended Fourth Set on October 23, 2007,

8   removing No. 45, but retaining Nos. 42-44. Mattel served its Fifth Set of Interrogatories on

9   October 19, 2007, which consisted of two additional questions (Nos. 46-47). On October 23,

10  2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11  replace the previously withdrawn interrogatory. On October 25, 2007, Mattel served its Seventh

12  Set of Interrogatories, which consisted of Nos. 48-50.

13      In November of 2007, the MGA parties served responses and objections to Mattel's

14  interrogatories, and in some instances supplemental responses. For the most part, the answers of

15  each of the MGA parties are substantially similar. However, in several instances where MGA

16  Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17  S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18  party."

19      The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20  responses. The MGA parties offered to provide supplemental responses by January 7, 2008.

21  Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22  was inadequate. Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23      Mattel contends that the interrogatories at issue seek information relevant to central issues

24  in the case, such as: MGA's contentions regarding which Bratz inventions were created before,

25

26  —————————————

27  [1] One of the issues raised in the motions papers --whether the interrogatories exceed the 50 interrogatory per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, dated January 7, 2008.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT   29
PAGE   791

1  during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2  storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3  the sources of information from which MGA has collected documents in this litigation which

4  relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5  MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6  by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7  including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8  inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9  rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10  innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11  employees that have been employed by MGA; non-privileged facts concerning the dispute

12  leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13  this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14  Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15  products MGA asserts MGA has copied or infringed.  Mattel's Motion at pp. 2-3.

16       Mattel contends that although it has received responses to all of the interrogatories except

17  Nos. 39, 46 and 47, all of the responses are deficient.  As an initial matter, Mattel contends that

18  the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19  overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20  control of MGA, seek information protected by the attorney-client privilege, work product or joint

21  defense privileges, and call for a legal conclusion – are without merit.  Mattel contends that the

22  MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23  Mattel also contends that its interrogatories do not require the disclosure of privileged information

24  or work product, but rather require the MGA parties to state their contentions about facts or the

25  application of law to facts.

26       Mattel further contends that some of the MGA parties' responses are deficient in that they

27  merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT  29
PAGE  792

1    details. Mattel contends that its contention interrogatories, including the purportedly "negative"

2    interrogatories asking for every fact which supports the denial of a statement or allegation, are

3    commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4    showing of undue burden. Indeed, Mattel points to decisions by the district judge which it

5    contends supports its use of the contention interrogatories at issue. Mattel also points out that it

6    provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7    supplemental interrogatory response, and contends that the MGA parties ought to provide

8    comparable details to Mattel.

9         Mattel also contends that the MGA parties have unilaterally limited many of their

10   responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11   Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12   they intend to rely upon, as requested by some of the interrogatories.

13        Mattel acknowledges that fully responding to the interrogatories will require some effort.

14   However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15   litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort

16   the MGA parties will be required to undertake to disclose the requested information.

17   Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18   the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19        The MGA parties contend that their current responses comply with Rule 33 of the Federal

20   Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21   of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,

22   the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23   counsel because such information is protected by the attorney-client privilege or the work product

24   doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25   data that has been requested. Third, the MGA parties contend that Mattel's contention

26   interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27   require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                          4

EXHIBIT    2 9
PAGE       7 9 3

1 | contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2 | than the principal factual and legal bases for the response.

3 | ### III. STANDARDS

4 |      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5 | discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6 | party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

7 | permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8 | 2004) ("District courts need not condone the use of discovery to engage in 'fishing

9 | expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10 | (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11 | (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12 | the phrase "subject matter involved in the pending action," were intended to prevent discovery

13 | that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14 | litigate the issues presented by the pleadings but to develop new claims or defenses.).

15 |      Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16 | extent of use of the discovery methods if the court determines that (i) the discovery sought is

17 | unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18 | convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19 | opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20 | expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21 | the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22 | the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23 | 26(b)(2)(C).

24 |      Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25 | interrogatories, for which the responding party is required to furnish such information as is

26 | available to the party after conducting a reasonable inquiry.  "Each interrogatory must, to the

27 | extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 29
PAGE 794

1   33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

2   Fed.R.Civ.P. 33(b)(4).

3   <center>IV. DISCUSSION</center>

4   A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5        Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6   three different time periods, namely before, during and after Bryant's employment with Mattel:

7       **Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU

8   contend was CREATED, in whole or in part, prior to January 4, 1999, and for
    each BRATZ INVENTION so identified state all FACTS that support YOUR

9   contention that such BRATZ INVENTION (or aspects or portions thereof) was
    CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with

10  knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
    such facts.

11

12      **Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU
    contend was CREATED, in whole or in part, after October 19, 2000 and before

13  June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
    that support YOUR contention that such BRATZ INVENTION (or aspects or

14  portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
    and IDENTIFY all PERSONS with knowledge of such facts and all

15  DOCUMENTS which REFER OR RELATE TO such facts.

16

17      **Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that
    was CREATED, in whole or in part, after January 3, 1999 and before October 21,

18  2000, and for each BRATZ INVENTION so identified state all FACTS that
    REFER OR RELATE TO the timing of the creating of such BRATZ

19  INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
    DOCUMENTS which REFER OR RELATE TO such facts.

20

21  Mattel contends that these interrogatories seek information that is plainly relevant and

22  discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that

23  the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24  INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their

25  burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26  importance of the information sought. Mattel emphasizes that the information sought will prove

27  liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

28

Bryant v. Mattel, Inc.,
CV-04-09049 SOL (RNBx)                                                                6

EXHIBIT 29
PAGE 795

1   MGA claims were created before and just after Bryant's second period of employment at Mattel

2   is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3   chronology of Bratz design and development.

4          The MGA parties contend that Mattel is using misleading and unfair definitions to create

5   jury confusion.  In particular, the MGA parties object to Mattel's definition of "BRATZ

6   INVENTION," which they contend contains separate component parts ("representation, idea,

7   concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8   Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9   works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements").  The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'"  MGA Parties' Opposition at

15  2:11-13.  The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement."  Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel.  The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22          Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further.  The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28

Bryant v. Mattel, Inc.,                                                                                          7
CV-04-09049 SGL (RNBx)

EXHIBIT  29
PAGE  796

1  supporting a particular allegation are *inherently improper*.").

2  Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3  the interrogatories are overbroad and unduly burdensome. The definition of "Bratz Invention" is

4  extremely broad, encompassing numerous intellectual property concepts. Mattel has not shown

5  how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6  relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7  Confidential Information and Inventions Agreement," signed by Bryant. The breadth and undue

8  burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9  extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10  supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11  supporting documents. Not all contention interrogatories requiring a recitation of all facts,

12  documents and witness are objectionable. See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13  (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14  that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15  events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16  of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17  to the exact amount of detail a party has to supply in response to a contention interrogatory). In

18  the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19  review the nearly 4 million pages of documents produced in this action and more than 50 days of

20  deposition testimony in search of information relating to "any representation, idea, concept, work,

21  process, procedure, plan, improvement, design or other development" that refers or relates to

22  Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24  rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25  relate to Bratz. It is not the MGA parties' responsibility to re-write the interrogatories in a

26  manner that will yield Mattel the most amount of information to support Mattel's claims and

27  defenses. On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT  29
PAGE  797

1   outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2   amount in controversy, the parties' resources, the importance of the issues at stake in the

3   litigation, and the importance of the proposed discovery in resolving the issues.

4          In any event, the MGA parties' responses are adequate under the circumstances. Faced

5   with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6   the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7   and identify the principal documents or categories of documents that support each contention.

8   See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006). For example, in response to

9   Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10  fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11  patented as a utility patent because fashion dolls were in the public domain for the purposes of

12  utility patent protection. However, the MGA parties contend that Bryant's idea of a line of

13  fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14  law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15         The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16  parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17  patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18  in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19  flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20  that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21  manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22  2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23  MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24  standard fashion model poses, and thus were not novel or original. Further, the MGA parties'

25  supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26  drawings Bryant completed in August and September of 1998 contained original expression

27  covered by copyright, but that subsequent modifications and versions of the drawings made by

28

EXHIBIT  29
PAGE     798

Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

numerous individuals having knowledge of the facts supporting their contentions, and identify

documents that are relevant to the MGA parties' contentions.

B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

"who are now or have been employed" by MGA since January 1, 1999.  More specifically,

Interrogatory No. 41 asks the MGA parties to:

> IDENTIFY all PERSONS who at any time have been employed by or under
> contract with MATTEL who are now or have been employed by or under contract
> with YOU since January 1, 1999, and, for each such PERSON, state his or her
> name, date of hire or effective date of contract, the date on which YOU first had
> contact with such PERSON regarding potential employment or contracting, the
> date(s) on which such PERSON was interviewed for possible employment or
> contracting, each title (if any) such PERSON has held while employed by or
> under contract with YOU, and the date of termination (if applicable).

In their supplemental response, the MGA parties assert numerous objections, but also provide a

list of well over a hundred individuals with their position title and employment dates.

Mattel contends that the MGA parties' response is incomplete because it does not contain

the date of first contact regarding potential employment or contracting, as well as the interview

date for potential employment or contracting.

The MGA parties contend that during the meet and confer process, they agreed to

investigate whether the additional requested information was reasonably available.  The MGA

parties represent that they are in the process of looking for the requested information, and that

they will supplement their response if the information is reasonably available without undue

burden.

Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.

The requested information is clearly relevant to Mattel's claims, and the MGA parties do not

contend otherwise.  In particular, the date of first contact, interview date, start date and end date

for Bryant's employment are highly relevant, but are conspicuously absent from the MGA

parties' response. The MGA parties shall provide the missing information for Bryant.  In

EXHIBIT   29
PAGE       799

1  addition, the MGA parties shall provide the interview dates for each of the individuals identified

2  in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3  that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4  However, the MGA parties are not required to provide the date of first contact for each individual

5  because the burden of producing such information outweighs its likely benefit, taking into

6  account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7  C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8          Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9  product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10  "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11  persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12  MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13  No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14  also respond that, in general, at MGA, product development is completed 7-8 months before the

15  first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16          Mattel contends that the information it seeks is relevant to its defense against MGA's

17  claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18  was the one who came up with relevant matters first – before MGA – and that MGA was the one

19  who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20  parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21  Interrogatory No. 3 requested different information, namely the dates on which the products were

22  first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23          In response to the instant motion to compel, the MGA parties represent that they are

24  assessing whether they can provide more specific information without undue hardship, and will

25  supplement their responses if such information is available.  MGA's Opposition at p.29.

26          Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27  The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT  29
PAGE        800

1   their products have been copied or infringed by certain Mattel products.  Although the MGA

2   parties served supplemental responses after filing their opposition brief, the supplemental

3   responses do not include the requested information.  The MGA parties have failed to establish

4   that the interrogatories are unduly burdensome.

5   D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6        Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7        **Interrogatory No. 48:**  Separately IDENTIFY each trade dress that YOU
         contend MATTEL has copied, infringed or diluted or that is otherwise the
8        subject of YOUR claims, defenses or allegations in THIS ACTION.

9        **Interrogatory No. 49:**  For each trade dress identified in response to
         Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL
10       product, packaging or other matter that YOU contend copies, infringes or dilutes
         such trade dress, including without limitation by describing fully and separately,
11       for each such MATTEL product, packaging or other matter, each and every
         element of the claimed trade dress that YOU contend MATTEL has copied,
12       infringed or diluted.

13       **Interrogatory No. 50:**  For each trade dress identified in response to
         Interrogatory No. 48, separately and completely IDENTIFY all facts that support
14       YOUR contention that such trade dress is protectible, all DOCUMENTS that
         REFER OR RELATE to the foregoing and all PERSONS with knowledge of the
15       foregoing.

16       Mattel contends that these interrogatories seek core contentions underlying the MGA

17  parties' trade dress infringement claims and that the partial responses provided are inadequate

18  because they set forth only the "basic facts" without identifying a single product that MGA

19  alleges was infringed or any other details.  Mattel also contends that the responses are improper

20  insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21  this interrogatory will be the source of expert testimony and an expert may identify additional

22  facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23  to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24       As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25  directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26  Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27  principal facts supporting their contentions in compliance with Rule 33.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT  29
PAGE  801

1    Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied.  The

2    MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3    trade dress they contend Mattel has infringed.  More specifically, the MGA parties' responses

4    identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5    trade dress.  The MGA parties also set forth the principal facts supporting their contention that

6    their trade dress is protectible under the applicable trade dress legal principles, including that the

7    trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8    meaning.  That the interrogatory responses include a reservation of rights to supplement during

9    expert discovery does not render the responses inherently improper or inadequate.  Mattel does

10   not contest that the identification of the elements and products subject to trade dress infringement

11   will be a subject of expert testimony.

12   E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13       Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14   institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15   for YOUR benefit, since January 1, 1999."  The MGA parties objected to this interrogatory as

16   seeking information "not relevant to the claims or defenses of any party to the action and not

17   reasonably calculated to lead to the discovery of admissible evidence.

18       Mattel contends that the information sought is discoverable because it may lead to direct

19   evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20   Larian.  More specifically, Mattel contends that the timing and amounts of payments made to

21   Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22   commercial bribery and other tortious conduct.  Mattel also contends that the timing of such

23   payments would also be indicative of the timing of Bryant's first involvement with MGA.

24   Further, Mattel contends that the requested information is relevant to establish net worth for

25   purposes of calculating punitive damages.  Mattel also contends that the MGA parties' objection

26   based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27   independently relevant to many issues in the liability phase of trial, and is not just directed at

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT   29
PAGE        802

1    seeking discovery in aid of a judgment or execution.

2         The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3    in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4    information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5    even more private financial information. Further, the MGA parties contend that Mattel has

6    already received substantial financial information from MGA Entertainment, Inc. directly, and

7    has not shown how that information is insufficient. More specifically, the MGA parties point out

8    that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9    audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10   reports; various financial documents relating to Veronica Marlow; documents showing royalty

11   payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12   month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13   expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14   documents showing MGA's amortization and depreciation of certain capital assets and

15   expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16   including income and expense accounts, reserves and liabilities; and documents sufficient to

17   explain MGA's various accounts as presently and historically maintained in MGA's books and

18   records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19   profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20   witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21        Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22   grounds that the financial information sought is cumulative of other discovery already sought and

23   obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24   documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25   other banking relationships since January 1, 1999. See Order Granting in Part and Denying in

26   Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27   Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT   29
PAGE      803

1   obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2   such payments were made. See Order Granting in Part and Denying in Part Mattel's Motion to

3   Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4   In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5   unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6   **F. Contention Interrogatories (Nos. 30-38 and 42)**

7          Mattel served several contention interrogatories on several additional topics. The

8   remaining contention interrogatories at issue are set forth below.

9          **Interrogatory No. 30:** State all facts that support YOUR contention, if YOU so
      contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION
10     to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
      priority over and/or has superior rights to MATTEL as to such BRATZ
11     INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
      all DOCUMENTS that REFER OR RELATE TO such facts.

12

13         **Interrogatory No. 31:** State all facts that support YOUR contention, if YOU so
      contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and
14     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
      that REFER OR RELATE TO such facts.

15         **Interrogatory No. 32:** State all facts that support YOUR contention, if YOU so
      contend, that MATTEL is not or would not be entitled to injunctive relief as
16     requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
      determined that MATTEL owns one or more BRATZ INVENTIONS, and
17     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
      that REFER OR RELATE TO such facts.

18

19         **Interrogatory No. 33:** State all facts that support YOUR contention, if YOU so
      contend, that MATTEL is not entitled to an award of punitive or exemplary
20     damages against YOU, and IDENTIFY all PERSONS with knowledge of such
      facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21         **Interrogatory No. 34:** State all facts that support YOUR contention, if YOU so
      contend, that YOU did not intentionally interfere with the INVENTIONS
22     AGREEMENT when BRYANT purported to TRANSFER and MGA purported
      to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge
23     of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24         **Interrogatory No. 35:** State all facts that support YOUR contention, if YOU so
      contend, that YOU did not aid or abet any breach of fiduciary duty or duty of
25     loyalty owed by BRYANT to MATTEL when BRYANT performed work or
      services with or for MGA while BRYANT was employed by MATTEL, and
26     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
      that REFER OR RELATE TO such facts.

27

28         **Interrogatory No. 36:** State all facts that support YOUR contention, if YOU so

15

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   29
PAGE       804

contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when Bryant purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Mattel contends that each of these interrogatories seeks facts relating to key issues in this case, including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is protectible. Mattel contends that the MGA parties cannot show burden sufficient to outweigh Mattel's need for the information sought.

In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

Bryant v. Mattel, Inc.,
CV-04-09049 SOL (RNBx)

16

EXHIBIT 29
PAGE 805

1    As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2    assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3    they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4    represent that they responded to the interrogatories in good faith by providing the principal facts

5    supporting their contentions, and therefore are in compliance with Rule 33.

6         Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7    Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8    request for all facts, the identity of all persons and all supporting documents, render the

9    interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10   reasonably sufficient response.  The MGA parties' supplemental response includes their

11   contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12   MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13   Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14   three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15   sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16   2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17   have produced shapes that were different from the actual shape of the final three-dimensional

18   Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19   MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20   released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21   practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22   1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23   fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24   to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25   existing doll parts that was never intended to, and did not, provide an accurate representation of

26   what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27   arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT   29
PAGE      806

1   conception of what could have been developed into a tangible item that would have qualified for

2   protection under a design patent, such conception would not have covered the shape of the final

3   Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4   nor any subsequent three-dimensional Bratz shape. The MGA parties' supplemental responses to

5   Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6   persons with knowledge and documents relevant to the MGA parties' contentions.

7         Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8   The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9   identified persons with knowledge, and identified documents to support their contentions. To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12        Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15        Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17        **Interrogatory No. 40:** IDENTIFY each and every STORAGE DEVICE that
          YOU have used for any purpose which contains or contained DIGITAL
18        INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
          to January 1, 2002.
·19
          **Interrogatory No. 47:** IDENTIFY each and every SOURCE OF
20        INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
          ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
21        RELATE TO the time period prior to February 28, 2001 (regardless of when such
          DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
22        transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002. The MGA parties did not provide any substantive

25  response to No. 47.

26        Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information. Further, Mattel contends

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                          18

EXHIBIT 29
PAGE 807

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information.  Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices.  In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any.  Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10         Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11   the sources of information – i.e. the media – from which the MGA parties have collected

12   documents relating to Bratz and the period prior to February 28, 2001.  Mattel contends that the

13   information it seeks will enable it to determine what sources the MGA parties have examined and

14   have not examined to produce documents in the case.

15         During the meet and confer process, the MGA parties proposed that the parties exchange

16   "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17   and 47.  The "source logs" would provide each document's Bates number, the identity of the

18   individual associated with or who maintained the document and the location where the document

19   was found.  Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20   seeking information about key early Bratz documents, not every document produced in the case.

21   Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22   would not reveal sources that contain early Bratz documents that MGA has not produced

23   documents from, or where MGA looked for documents, as well as where MGA failed to look.

24         The MGA parties contend that the interrogatories assume, without any factual support,

25   that the MGA parties are aware of the existence of Bratz documents on their computer systems

26   that relate to the time period prior to January 1, 2002, and have not produced those documents.

27   The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT 29
PAGE 808

1  Interrogatory Nos. 40 and 47. The MGA parties emphasize that they have already produced more

2  than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3  pages of documents. Furthermore, the MGA parties contend that these interrogatories are

4  cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5  collection of documents produced in this action. The MGA parties also represent that they have

6  agreed to provide additional testimony on this topic.

7       Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8  The interrogatories seek relevant information about the identity of each storage device that

9  contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10  sources of information from which the MGA parties collected documents in this action that refer

11  or relate to Bratz and the time period prior to February 28, 2001. The "source log" information is

12  not a reasonable substitute for the information requested in the interrogatories because it would

13  not necessarily identify all storage devices used by the MGA parties during the relevant period.

14  The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15  other information. The MGA parties have failed to establish that the interrogatories are unduly

16  burdensome. Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17  Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18  witness might be able to recall in the course of a deposition. Furthermore, the information sought

19  in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20  H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21       Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22  **Interrogatory No. 46:** Without disclosing the content of communications which are protected by the attorney-client privilege, state fully and in detail all facts

23  which REFER OR RELATE TO any dispute regarding THIS ACTION between, on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the

24  other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to any and all disputes which were or have been asserted as a basis for, or which

25  underlie, contributed to or were a factor in, the withdrawal, termination and/or substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this

26  ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

27

28  

EXHIBIT 29
PAGE 809

1  Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2  information protected by either the attorney-client privilege or the work product doctrine.

3  Further, Mattel contends that the requested facts are relevant and discoverable.  Mattel reasons

4  that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5  motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6  be relevant to the case.  For example, Mattel contends that O'Melveny may have withdrawn

7  because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8  conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9  the State Bar Act."  Mattel's Motion at p. 38.

10      The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11  "dispute" with former counsel, and moreover, that the information sought is protected by the

12  work product doctrine and/or attorney-client privilege.  The MGA parties reason that even if

13  Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14  claims and defenses in this action, and therefore the requested information is irrelevant and

15  outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16  this action, such that revelation of the substance of the dispute would necessarily reveal the

17  thought processes of trial counsel and the communication of those thought processes to the MGA

18  parties.

19      Mattel's motion to compel is denied as to Request No. 46.  The interrogatory is not

20  tethered to any particular claim or defense.  Nor is the interrogatory directed at uncovering the

21  factual events giving rise to any claim or defense.  Instead, the interrogatory assumes that there

22  was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23  misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24  and that this "dispute" potentially relates to a claim or defense in this suit.  There is no evidence,

25  however, to substantiate such a series of assumptions.  Although the publicly available

26  information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27  without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                21

EXHIBIT  29
PAGE  810

1  proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2  Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3  disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4  the case.

5       The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6  former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7  privilege and work product doctrine.  Mattel's rank speculation that there were attorney-client

8  discussions of wrongdoing is insufficient to vitiate the attorney-client privilege.  See e.g. In re

9  Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007).  Nor have the MGA parties

10  waived the attorney-client privilege.  Although the MGA parties discussed the reasons for their

11  substitution of counsel with the press, there has been no showing that the information they

12  disclosed revealed the substance of an attorney-client privileged communication.

13                                    V. CONCLUSION

14       For the reasons set forth above, it is hereby ordered as follows:

15       1. Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16  43-44 and 47.  The MGA parties shall serve supplemental responses to said interrogatories no

17  later than February 26, 2008.

18       2. Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19  50.

20  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21  Mattel shall file this Order with the Clerk of Court forthwith.

22

23  Dated: February 15, 2008

24                                    HON. EDWARD A. INFANTE (Ret.)
                                         Discovery Master

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    22

EXHIBIT  29
PAGE      811

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I

served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION

TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA

PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on February 15, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT 29
PAGE 812

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 2/19/2008 at 2:56 PM PST and filed on 2/19/2008

**Case Name:**       Carter Bryant v. Mattel Inc
**Case Number:**     2:04-cv-9049
**Filer:**           Mattel Inc
**Document Number:** 2266

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties filed by Defendant Mattel Inc re: MOTION to Compel Responses to Interrogatories by the MGA Parties *(Nos. 27-44 and 46-50)*[1317] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban     juanpabloalban@quinnemanuel.com

Timothy L Alger     timalger@quinnemanuel.com

Christa M Anderson     canderson@kvn.com

Linda M Burrow     burrow@caldwell-leslie.com

Michelle M Campana     michelle.campana@skadden.com

Jon D Corey     joncorey@quinnemanuel.com

Alexander H Cote     acote@obsklaw.com

Leah Chava Gershon     leah@spertuslaw.com

Alan Neil Goldberg     agoldberg@sgattys.com

Melissa Grant     melissagrant@quinnemanuel.com

Emil W Herich     eherich@kmwlaw.com

Diane C Hutnyan     dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

EXHIBIT _29_
PAGE _813_

CM/ECF - California Central District                                    Page 2 of 2

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order re Motion to Compel.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/19/2008] [FileNumber=5381686-0]
[643f3427701adad1bfb3880576efb3c91150eb5f693240ae485529023da3f2864add
e9800830a44a4c86425534ead16e2d9b58cbceeb1aba019aa1836347bcbd]]

https://ecf.cacd.uscourts.gov/cgi-bin/Dispatch.pl?245598662032311                    2/19/2008

EXHIBIT    29
PAGE       814

# EXHIBIT 30

Received:    6/26/07   3:28
06/26/2007 18:13 FAX   1212 ;   2061

1212 326 2061 -> QUINN     NUEL;   Page 1
O'MELVENY & MYERS L    NY

☒001/006

# O'MELVENY & MYERS LLP

Times Square Tower
7 Times Square
New York, New York 10036

TELEPHONE (212) 326-2000
FACSIMILE (212) 326-2061

## FAX TRANSMITTAL

**DATE & TIME:**
Tuesday, 06/26/07, 6:08 PM

**TOTAL NUMBER OF PAGES:**
6

**TO:**
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP

**FAX NUMBER:**
(213) 443-3100

**TELEPHONE NUMBER:**
(213) 443-3000

**FROM:**
Michael Keats

**RETURN FAX NUMBER:**
(212) 326-2061

**TELEPHONE NUMBER:**
(212) 326-2000

## MESSAGE

EXHIBIT _30_
PAGE _____ 815

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (212) 326-2224.**

| | | |
|---|---|---|
| **FILE NO.:** | 527436-8 | **RETURN ORIGINAL TO:** |
| **USER NO.:** | 14710 | **EXTENSION:** |
| **RESPONSIBLE ATTY NAME:** | Kendall J. Burr | **LOCATION:** |
| **SPECIAL INSTRUCTIONS:** | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

MATCOR022549

Received:   6/26/07   3:2▢
06/26/2007 18:13 FAX  1212    2061

1212 326 2061 -> QUINN    ANUEL;  Page 2
O'MELVENY & MYERS 1   NY

⌀002/006

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
LOS ANGELES

Times Square Tower
7 Times Square
New York, New York 10036

TELEPHONE (212) 326-2000
FACSIMILE (212) 326-2061
www.omm.com

NEWPORT BEACH
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

June 26, 2007

OUR FILE NUMBER
527436-8

WRITER'S DIRECT DIAL
(212) 326-4475

WRITER'S E-MAIL ADDRESS
mkeats@omm.com

**VIA FACSIMILE AND EMAIL**

Timothy Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street
Los Angeles, CA 90017

Re:   *Bryant v. Mattel, Inc. and consolidated actions, Case No.  CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)*

Dear Tim:

We write in response to your letter, dated June 7, 2007, regarding our meet and confer on June 6, 2007 to discuss MGA's First Set of Requests for the Production of Documents and Things, dated November 22, 2006 (the "Requests").[1]

As a threshold matter, in order to focus Mattel's production regarding "My Scene" products and packaging, we clarified that MGA sought production of documents relating to the origins, design and development of the following "My Scene" products and packaging:

(1) the first wave of "My Scene" female fashion dolls; you agreed to the production and stated that the "lion's share" of these documents were produced to us at the end of May 2007;

(2) the first wave of "My Scene" female fashion dolls with redesigned, more "Bratz"-like faces; MGA believes that such dolls were released in or around 2004 or 2005; while Mattel is in the best position to know when it altered the face of "My Scene" fashion dolls, we agreed to confer with MGA to try to identify the specific "My Scene" dolls at issue to facilitate this production;

(3) packaging for "My Scene" female fashion dolls; you agreed to produce these documents (to the extent they were not already produced), but noted that Mattel does not have many documents regarding packaging as (unlike with products) there is no bureaucratic approval process and packaging is designed on an *ad hoc* basis;

EXHIBIT  30
PAGE  816

---

[1] We note that Johanna Schmitt, Melanie Bradley and Kendall Burr of O'Melveny & Myers also attended the meet and confer in person and Heidi Frahm and Harv Anand of Quinn Emanuel attended by telephone.

MATCOR022550

Received:    6/26/07  3:
06/26/2007 18:14 FAX  1212    5 2061         1212 326 2061 -> QUINN  MANUEL;   Page 3
                                            O'MELVENY & MYERS.   NY                    ☑003/006

Timothy Alger, Esq., June 26, 2007 - Page 2

(4) the "My Scene" plush pets and packaging; you agreed, but stated that that you would need to get back to us regarding whether or not these documents have already been produced;

(5) the "My Scene" styling heads; you agreed, but stated that that you would need to get back to us regarding whether or not these documents have already been produced;

(6) the products included in the "My Scene" themes named in MGA's complaint and/or interrogatory responses (e.g., "Chillin' Out"; "Night on the Town'" "Jammin' in Jamaica"; and "My Scene Bling Bling"); you stated that Mattel had produced documents regarding all of these themes except for "My Scene Bling Bling" (which you agreed to produce);

(7) the "My Scene Sound Lounge" play set and packaging.

In addition, we confirmed that we would review the list of "My Scene" products that you provided to me on May 30, 2007, and that we would get back to you if MGA decided to amend or clarify the above-referenced list. Notwithstanding the foregoing, we stressed that MGA is seeking documents from Mattel regarding *any* "My Scene" product or packaging (not just those listed above) that also reference or discuss MGA or "Bratz," including, but not limited to documents, that evidence confusion between "Bratz" and "My Scene." Further, we did not state that MGA's claims in this lawsuit were limited to the "My Scene" products and packaging listed above; rather this list was provided to you in order to focus Mattel's document production regarding "My Scene" products and packaging.

Further, we agreed to supplement MGA's response to Interrogatory No. 2 (regarding claims of unfair competition) by June 20, 2007 to include any additional MGA products or packaging that MGA contends Mattel has copied or infringed.   You explained that you had requested that the supplemental response include internal job or product numbers and bar code numbers to enable Mattel to identify the products and packaging at issue.  As discussed, we will consult with MGA regarding its numbering system for products and then can discuss whether it is necessary to include internal job or product numbers or bar code numbers in the supplemental response for identification purposes.

With regard to Mattel's production in general, you represented that Mattel has produced all documents regarding "My Scene" in the files of the marketing department, documents regarding "My Scene" focus groups, "My Scene" design documents, and documents regarding the *Simba* litigation in the U.K., which contain representations regarding the development of "My Scene." Further, you indicated that the files of former and current high-level Mattel executives (including, without limitation, Bob Eckert, Adrienne Fontanella, Matt Bousquette, and Ivy Ross) have been searched for responsive documents. Also, in the next production, you stated that Mattel expected to produce, *inter alia*, "My Scene" design binders, and photographs of "My Scene" products. Further, Mattel would make prototypes of the "My Scene" products available to MGA for inspection.

With regard to the points raised in your letter regarding specific Requests, we would like to clarify the following:

EXHIBIT  30
PAGE      817

MATCOR022551

1212 326 2061 -> QUINN ..ANUEL;  Page 4
O'MELVENY & MYERS L   NY                    ☎004/008

Timothy Alger, Esq., June 26, 2007 - Page 3

    Request No. 3:  This Request seeks documents concerning the initial design and development of a doll identified in paragraph 24 (formerly paragraph 25) of Mattel's Amended Answer as "a Mattel doll character called Barbie." You indicated that you would need to get back to us regarding whether or not Mattel was producing documents responsive to this Request. We await your response.

    Request No. 14:  You represented that Mattel was gathering and producing (or already had produced) documents referring or relating to the creation or development of "Chillin' Out," "Night on the Town," and "Jammin' in Jamaica" themes, and that Mattel would also gather and produce responsive documents concerning the "My Bling Bling" themes.

    Request No. 19:  You represented that Mattel was already gathering and producing responsive documents regarding packaging for "Bratz" and would continue to do so.

    Request No. 29:  You stated that Mattel produced current versions of the My Scene website. Further, you explained that Mattel continuously updates its My Scene website and thus asked us to identify specific time periods for which MGA seeks documents sufficient to show all iterations of the website. At this point, MGA seeks documents sufficient to show the original iteration of the www.myscene.com (or www.myscene.everythinggirl.com or http://myscene.everythinggirl.com) website; and subsequent iterations of the website as of December 31 for each year thereafter. MGA reserves its right to seek documents sufficient to show additional iterations of the My Scene website.

    Request No. 36:  With regard to communications between Mattel and NPD regarding changes in product classifications or categories, you stated that Mattel will produce documents regarding the specific instances named in MGA's response to Interrogatory No. 9. In addition, MGA seeks communications between Mattel and NPD since 2001 regarding changes to classifications or categories involving dolls (including, without limitation, fashion themed dolls, doll accessories, mini dolls, and doll play sets), plush toys, and toy racing vehicles. Similarly, MGA seeks all communications with Mattel regarding any alleged misuse of NPD data by MGA and Mattel's violations of NPD's restrictions on the use of data. Please confirm that Mattel will produce these documents to the extent they exist.

    Request No. 44-45:  MGA seeks all documents regarding Mattel's attempt to limit the supply of doll hair to MGA at any time since June 2001, including, but not limited to, October 2002. Thus, to the extent Mattel has attempted to limit MGA's doll hair supply at any other time, MGA is entitled to discovery regarding such attempts. Please confirm whether or not Mattel agrees.

    Request No. 46:  You indicated that Mattel would consider producing minutes of Board of Director meetings that relate to MGA, Larian or Bratz. As a threshold matter, you stated that you had not reviewed the Board minutes and thus did not know whether any responsive documents exist. To the extent there are Board of Director meeting minutes that discuss MGA, Larian or Bratz, such documents are highly relevant to Mattel's reaction to MGA and its

EXHIBIT  30
PAGE      818

MATCOR022552

Received:    6/26/07   3:3
06/26/2007 18:15 FAX  1212     2061
1212 326 2061 -> QUINN   ANUEL;   Page 5
O'MELVENY & MYERS   NY
005/006

Timothy Alger, Esq., June 26, 2007 - Page 4

products (including Bratz) at the highest level and Mattel's strategy to compete therewith. Please contact us with Mattel's position with regard to this Request.

Request No. 68-69: In addition to "My Scene" commercials (which you stated will be produced), MGA also is seeking copies of Mattel's "AcceleRacers" commercials. Further, MGA seeks documents sufficient to identify the current and former Mattel personnel who are responsible for directing the advertising agencies or other third parties that create and produce the commercials and/or approving (or rejecting) the commercials.

Request No. 71: You stated that Mattel will not produce documents relating to the market share of the "Barbie"-line unrelated to "My Scene." As we explained, documents concerning the "Barbie"-line market share for 2001 and 2002 (i.e., the first years that "Bratz" was on the market, but before "My Scene" was released) are highly relevant to MGA's claims, namely, that due to "Bratz"'s impact on "Barbie"'s market share, Mattel came out with a competing and infringing product and engaged in a pattern of market misconduct. We understand that you may have to confer with a different group of people within Mattel to obtain this information, however, that simply is not a basis for Mattel to withhold it. As such, please let us know if Mattel is willing to produce documents concerning the "Barbie"-line market share for 2001 and 2002.

Request No. 75: You stated that you could not make any representations regarding whether Mattel has documents responsive to this request (seeking documents referring or relating to whether Mattel is funding or contributing to the fees incurred in connection with any lawsuit involving MGA to which Mattel is not a party), and would get back to us. As such, we await your response.

Request No. 77-78: As confirmed in your letter, you stated that Mattel has produced non-privileged documents referring or relating to any evaluation, criticism, or comparison of "My Scene," including in relation to "Bratz," which include communications with customers, retailers and members of the press. (See Request No. 77) However, you did not make any commitment to produce documents referring or relating to any evaluation, criticism, or comparison of "Bratz," including in relation to "My Scene," that are not separately responsive to other requests. (See Request No. 78) Such documents are relevant to, inter alia, MGA's claims that consumers, retailers, the press and others have confused "My Scene" with "Bratz," and Mattel's efforts to unfairly compete with MGA by criticizing its products and attempting to erode its goodwill. Please advise whether Mattel is willing to produce documents responsive to this Request.

Request Nos. 86-88: You stated that Mattel has produced documents responsive to Requests Nos. 86-87, but did not make any representation as to whether Mattel has or would produce all responsive documents. Further, you made no representation regarding Request No. 88, which seeks documents sufficient to identify relevant documents destroyed or discarded since April 16, 2005. You requested that we meet and confer with others at Mattel more familiar with Mattel's preservation on this issue.

EXHIBIT  30
PAGE       819

MATCOR022553

Received:   6/26/07   3:3
06/26/2007 18:16 FAX  1212 :   2061        1212 326 2061 -> QUINN   ANUEL;   Page 6
                                           O'MELVENY & MYERS L    NY

                                                                        ☑ 006/008

Timothy Alger, Esq., June 26, 2007 - Page 5

Request No. 94:  You stated that Mattel has produced or will produce documents relating to communications between Mattel and any participant in market research (such as focus groups) regarding or relating to "My Scene," MGA or "Bratz."  To the extent Mattel has videotapes or other recordings of this market research, MGA seeks their production to the same extent as any other documents responsive to this request.

Request Nos. 89, 96, 98, 100:  You indicated that Mattel would not produce documents containing non-privileged communications between Mattel and third parties regarding this litigation and suggested that we narrow the requests to seek only those documents concerning the "facts underlying this litigation." MGA will not agree to narrow the scope of these requests as statements made by Mattel concerning the litigation, including non-privileged discussions of the strengths and weaknesses of its case are highly relevant to MGA's claims. Indeed, Mattel itself has tacitly agreed to their relevance by propounding similar requests for production on MGA, specifically Mattel's Request No. 48 (dated March 14, 2005) seeking "all non-privileged communications between [MGA] and any person that refer or relate to this action"; and Mattel's Request No. 44 (dated December 18, 2006) seeking "all communications between [MGA] and any other person relating to the claims made in [MGA's] Complaint..." As such, Mattel should produce documents responsive to this Request.

Request No. 113:  You confirmed that Mattel has no documents responsive to this request other than the phone records themselves.

We look forward to your response.  In the meantime, please let me know if you have any questions or wish to further discuss any of the issues raised in this letter.

Sincerely,

*Michael Keats*  (KB)

Michael Keats
*of* O'MELVENY & MYERS LLP

EXHIBIT  30
PAGE        820

MATCOR022554

# EXHIBIT 31

EXHIBIT FILED UNDER
SEAL PURSUANT TO
PROTECTIVE ORDER

# EXHIBIT 32

EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 33

COPY

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant to Court's Order of December 6, 2006]**<br><br>DECLARATIONS OF ERIN BRIC AND SERGIO HERNANDEZ IN SUPPORT OF OPPOSITION OF MATTEL, INC. TO MGA ENTERTAINMENT INC.'S MOTION TO COMPEL<br><br>Hearing Date: TBA<br>Time: TBA<br>Place: TBA<br><br>Discovery Cut-off: March 3, 2008<br>Pre-trial Conference: June 2, 2008<br>Trial Date: July 1, 2008 |

FILED
2007 APR 26 AM 11:43

EXHIBIT 33
PAGE 830

07975/2106517.1

BRIC AND HERNANDEZ DECLARATIONS ISO MATTEL'S OPPOSITION TO MOTION TO COMPEL

## DECLARATION OF ERIN BRIC

I, Erin Bric, declare as follows:

1.    I am Leadership Development Coordinator for Mattel, Inc. ("Mattel"). I make this declaration based on personal, firsthand knowledge, my review of the corporate records available to me, and my knowledge of Mattel and its operations, and, if called and sworn as a witness, I could and would testify competently thereto.

2.    Mattel is the world's most successful toy company, with more than 140 subsidiaries and affiliates in 43 countries.  Currently, Mattel sells over 10,000 different types of toys and dolls in more than 150 nations throughout the world. These toys vary widely, including, for example, collectible card games, electronic handheld devices, toy cars, and the BARBIE doll line.  Mattel typically introduces more than 2,000 new toys each year.

3.    Mattel has over 25,000 employees worldwide.  In the United States, Mattel has more than 5,000 employees.

4.    The four major retailers in the U.S. with which Mattel deals on a daily basis – Wal-Mart, Target, K-Mart and Toys R Us – report that they have more than 4,500 stores in the United States.  Mattel deals with many hundreds more retailers and distributors domestically and overseas.  Mattel has relationships with more than 1,400 licensees and licensors.

5.    Many products require or often involve the creation of many categories of documents relating to the design, marketing, consumer research, planning, engineering, costing, manufacture, distribution, sales, and finance.  In addition to these types of documents, which are stored on Mattel's over 800 computer servers worldwide, countless other documents are in hardcopy or stored on individual employees' desktop computers and laptops.

6.    As part of my responsibilities at Mattel, I am generally familiar with products publicly sold by MGA.  Over the past three years, MGA has sold, directly or through its licensees, hundreds of different products, including such diverse

EXHIBIT __33__

PAGE __831__

07975/2106517.1

1 │ products as a "Spider-Man" memory game, a "Creature Mix" line of mix-and-match

2 │ animals, and its entire line of "Little Tikes" products for small children.  It sells

3 │ these products in dozens of different geographic markets around the globe.  MGA's

4 │ Bratz doll line has consisted of at least many dozens of dolls and licensed products

5 │ that compete against Mattel's dolls and other products in dozens of different

6 │ geographic markets, including throughout Europe, Mexico and Australia.  The Bratz

7 │ doll line has been sold since approximately mid-2001.  The press has reported that

8 │ MGA has sold more than 120 million Bratz dolls to date.

9 │       7.    I am informed that the defendant  in this case, MGA, is demanding that

10 │ Mattel search for and produce, among other things, all Mattel documents throughout

11 │ the U.S. and the world that make any reference to MGA, its CEO, Isaac Larian,

12 │ Bratz, and other products manufactured and licensed by MGA.  Given that MGA is

13 │ a competitor, MGA and its products are certainly referenced in millions of pages of

14 │ documents and computer files at Mattel.  MGA and its products are referenced in

15 │ relation to consumer testing, retail sales, market reports, and so forth.  A great

16 │ volume of this information in Mattel's possession is from third party analysts and

17 │ third party sources, including retail sales reports that track doll sales across the

18 │ entire industry, newspaper and magazine articles, commercials and advertisements.

19 │ One example is NPD, which provides retail sales data on MGA's products as well as

20 │ on thousands of other products in the toy industry.  Hundreds of employees at

21 │ Mattel in the U.S. have access to and make decisions based on NPD data, or have

22 │ sent or received communications that reference the data.  Mattel would have to

23 │ search through each of these employees' hard copy files and electronically stored

24 │ information to determine whether their copies of this data, or any related documents

25 │ that might have been created by Mattel, include a reference to MGA products.

26 │       8.    In order to compete in the marketplace, Mattel also collects great

27 │ quantities of documents about its competitors that are readily available on the

28 │ Internet or other public sources, including catalogs, advertising, press releases, and

EXHIBIT  33

-3-

PAGE  832

1 media reports, and from retailers and distributors throughout the world.  MGA,
2 Larian, Bratz and other MGA products are undoubtedly referenced in much of this
3 material.

4      9.    Mattel also conducts, on an on-going basis, its own voluminous internal
5 marketing and sales research on competing toys, including not only the Bratz dolls,
6 but many other MGA products.  Mattel conducts, on an almost daily basis, focus
7 group marketing testing with consumers on a wide variety of competitive doll
8 products.  Mattel has thousands of documents, videotapes and other materials
9 relating to focus group testing alone that in some way reference Bratz dolls.
10 Moreover, Mattel frequently conducts comparative safety testing and thus also has
11 numerous testing reports that refer to competing dolls, including not only Bratz but
12 many other MGA products, in some way.

13      10.    Also, Mattel's documents and reports often include references to many
14 competitive products in the market, not just a single competing toy.  For example,
15 marketing and consumer research reports and analysis will often cover not just Bratz
16 dolls, but any number of dolls that compete against Mattel's doll lines.  In many
17 instances, the only way to tell whether a particular report, document or tape
18 mentions Bratz dolls is to review the entire report, document or tape.

19      11.    These millions of documents are not centrally organized by subject
20 matter or competitor, or by product line, even on a departmental basis.  In El
21 Segundo, California alone, Mattel employs at least 320 people who work, in whole
22 or in part, on BARBIE brand products.  Virtually all of these people are likely to
23 have documents and other materials that mention or refer to Bratz dolls (as well as
24 the many other competing dolls on the market).  Even Mattel employees who focus
25 on marketing or design for the HOT WHEELS and MATCHBOX lines of toys
26 might have documents that refer to MGA or MGA's product lines, especially now
27 that Mattel has introduced the POLLY POCKET "Wheels" playset line, which
28 combines toy cars with POLLY POCKET dolls.

EXHIBIT  33
PAGE  833

1  might have documents that refer to MGA or MGA's product lines, especially now

2  that Mattel has introduced the POLLY POCKET "Wheels" playset line, which

3  combines toy cars with POLLY POCKET dolls.

4         12.   Simply put, <u>any</u> employee at Mattel might have documents that

5  are responsive to MGA's requests.  To locate all such documents would take years,

6  cost millions of dollars, and seriously interfere with the operation of Mattel's

7  business.  This burden and expense would be multiplied several times further if

8  Mattel were required to search the files in the possession of its separate worldwide

9  subsidiaries and affiliates.  Expanding a search to all documents referring to MGA

10  products would necessitate interviewing thousands of employees throughout the

11  world, and copying and reviewing the contents of every employee's desktop or

12  laptop computer.  The burden of searching for such documents from all of these

13  employees is incalculable.

14         I declare under penalty of perjury under the laws of the United States of

15  America that the foregoing is true and correct.

16         Executed this 25th day of April, 2007, at El Segundo, California.

17

18

19         Erin Bric

20

21

22

23

24

25

26

27                             EXHIBIT   33

28                             PAGE _____834

-5-

BRIC AND HERNANDEZ DECLARATIONS ISO MATTEL'S OPPOSITION TO MOTION TO COMPEL

## DECLARATION OF SERGIO HERNANDEZ

I, Sergio Hernandez, declare as follows:

1.      I am Lead Systems Engineer for plaintiff Mattel, Inc. ("Mattel").  I
make this declaration of personal, firsthand knowledge and based on my review of
the corporate records available to me and my knowledge of Mattel and its
operations, and, if called and sworn as a witness, I could and would testify
competently thereto.

2.      As part of my responsibilities at Mattel, I work with Mattel's
information technology systems. Accordingly, I am familiar with the breadth of
Mattel's global information technology resources as well as the information
technology resources used by Mattel's El Segundo location.

3.      Vital to Mattel's operations are several computer systems and networks,
some of which are extremely large.  Mattel currently maintains over 800 computer
servers worldwide.  The computer servers that hold the bulk of Mattel's operational
materials in the United States, including product information and documents
maintained in the normal course of Mattel's business, contain over 76 terabytes of
data.  Among these are two email servers maintained in El Segundo cumulatively
hold over 1.5 terabytes of data.  Mattel's email systems at its El Segundo
headquarters currently use two servers connected to approximately 2,300 computers.
Employees communicate among each other, and with third parties including
vendors, retailers, distributors, manufacturers, shippers and so forth, by email.  I
would estimate that more than 180,000 emails are exchanged among Mattel's
employees in El Segundo each workday.

4.      Countless other electronic documents are stored in electronic form on
individual employees' computer workstations.  Mattel owns or leases approximately
11,000 desktop and laptop computers worldwide.  At the El Segundo location alone,

EXHIBIT    33
PAGE          835

1  over 3,000 Mattel employees have, collectively, used thousands of computers,

2  software programs, and other computer hardware since January 1, 1998.

3      5.    Many of the network systems are not readily searchable, or searchable

4  at all, by use of keyword terms.  For example, Mattel's Zeus system, which a

5  computer system largely used by Mattel designers and engineers, overwhelmingly

6  consists of graphical files whose content cannot be searched by keywords.

7  Likewise, Mattel's Exchange servers for its email system are not currently

8  searchable by keywords.  It would cost in the neighborhood of $900,000 to acquire

9  the appropriate software tools to perform such search functions on the Exchange

10 servers.

11     6.    To locate all documents referencing MGA would require, in addition to

12 gathering data from the central servers, manually pulling documents from each and

13 every workstation, and additional laptop computers.  Such efforts would be in

14 addition to the cost of attorney review of the materials before they are produced in

15 litigation.

16     7.    The burden and expense is multiplied several times further if Mattel

17 were required to search the files in the possession of its worldwide subsidiaries.  In

18 that case, Mattel would be required to search and gather data from all 800 servers,

19 and, in addition, the workstations and laptop computers of more than 10,000

20 employees worldwide.

21         I declare under penalty of perjury under the laws of the United States of

22 America that the foregoing is true and correct.

23         Executed this 25th day of April, 2007, at El Segundo, California.

24

25

26   Sergio Hernandez

27                                    EXHIBIT  33

28                                    PAGE      836

07975/2106517.1

-7-

BRIC AND HERNANDEZ DECLARATIONS ISO MATTEL'S OPPOSITION TO MOTION TO COMPEL

# EXHIBIT 34

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER