# EXHIBIT 35

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 36

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 37

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 38

1

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4    — — —

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6    — — —

**CERTIFIED COPY**

7    CARTER BRYANT,                    )
                                       )
8              PLAINTIFF,              )
                                       )
9         VS.                          )   NO. ED CV 04-09049
                                       )   (LEAD LOW NUMBER)
10   MATTEL, INC.,                     )
                                       )
11             DEFENDANT.              )
_____       )   BRYANT'S MOTION FOR
12   AND RELATED ACTIONS,             )   TERMINATING SANCTIONS
                                       )
13

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                   RIVERSIDE, CALIFORNIA

17                 MONDAY, AUGUST 27, 2007

18                      11:06 A.M.

19

20

21

22

23             THERESA A. LANZA, RPR, CSR
             FEDERAL OFFICIAL COURT REPORTER
24             3470 12TH STREET, RM. 134
             RIVERSIDE, CALIFORNIA  92501
25                 (951) 274-0844
             CSR11457@SBCGLOBAL.NET

EXHIBIT 38
PAGE 918

AUGUST 27, 2007                          ED CV 04-9049

83

1        **MS. GLASER:** IS YOUR HONOR GOING TO ASK QUESTIONS, OR
2   MAY I?
3        **THE COURT:** I'M GOING TO ASK SOME QUESTIONS. I HAVE
4   A FEW QUESTIONS MYSELF; THAT'S WHY I CALLED THE WITNESS.
5        **MR. QUINN:** DO YOU WANT HIM AT THE PODIUM?          02:26
6        **THE COURT:** THE WITNESS STAND, IF YOU WOULD.
7        **THE CLERK:** DO YOU SOLEMNLY STATE THAT THE TESTIMONY
8   YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL
9   BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO
10  HELP YOU GOD?
11       **THE WITNESS:** I DO.
12       **THE CLERK:** PLEASE STATE YOUR FULL NAME AND SPELL
13  YOUR LAST NAME FOR THE RECORD.
14       **THE WITNESS:** MICHAEL CHRISTOPHER MOORE, M-O-O-R-E.
15                    **DIRECT EXAMINATION**
16  BY THE COURT:
17  Q    MR. MOORE, YOU'VE PREVIOUSLY INDICATED IN YOUR
18  DECLARATIONS YOUR POSITION WITH MATTEL.
19       THE COURT BASICALLY WANTS TO GET A CLARIFICATION OF
20  WHAT EXACTLY HAPPENED IN NOVEMBER OF 2003, IN TERMS OF WHAT YOU   02:26
21  DID TO PRESERVE THE DOCUMENTS.
22  A    MY EFFORT TO PRESERVE IN NOVEMBER 2003 REALLY BEGINS WITH
23  AN EXAMINATION OF WHAT WAS OUT THERE HISTORICALLY. THE EVENT
24  OCCURRED IN 2000, SO I'M LOOKING FOR ANY EVIDENCE, ANY DOCUMENT
25  THAT WOULD HELP US UNDERSTAND THOSE EVENTS. SO I HAD ALREADY   02:27

EXHIBIT 38
PAGE 919

84

| | |
|---|---|
| 1 | GONE OUT DURING THE INVESTIGATION -- PREVIOUSLY TO NOVEMBER OF |
| 2 | 2003, I HAD GONE OUT DURING THE INVESTIGATION TO LOCATE PEOPLE |
| 3 | WHO MAY HAVE KNOWN CARTER BRYANT; TO UNDERSTAND WHETHER |
| 4 | CARTER BRYANT HAD A COMPUTER; TO TRY TO UNDERSTAND WHETHER |
| 5 | CARTER BRYANT USED THE ZEUS SYSTEM; AND SO MY EFFORTS INCLUDE |
| 6 | THAT TIME PERIOD.  AS I COLLECTED DOCUMENTS, I PRESERVED THEM |
| 7 | DURING NOVEMBER OF 2003 AND BEYOND. |
| 8 | AND AS WE IDENTIFIED PEOPLE WHO EITHER KNEW |
| 9 | CARTER BRYANT OR WHO WE THOUGHT HAD DOCUMENTS OR E-MAILS |
| 10 | RELEVANT TO THE CASE, WE CONTINUED TO PRESERVE THOSE PEOPLE'S |
| 11 | DOCUMENTS. |
| 12 | FOR EXAMPLE, IF WE LOCATED SOMEBODY WHO HAD A |
| 13 | COMPUTER HARD DRIVE THAT WE THOUGHT HAD E-MAILS ON IT, WE WOULD |
| 14 | PRESERVE IT. |
| 15 | Q    WHAT INSTRUCTIONS DID YOU GIVE TO THOSE INDIVIDUALS THAT |
| 16 | YOU SO IDENTIFIED? |
| 17 | A    I WOULD ASK THEM WHETHER THEY HAD ANYTHING RELATED TO |
| 18 | CARTER BRYANT OR BRATZ.  I WOULD SAY, "PLEASE COLLECT IT AND |
| 19 | GIVE IT TO ME; AND IF YOU FIND ANYTHING IN ADDITION TO THAT, |
| 20 | PLEASE GIVE IT TO ME." |
| 21 | Q    WHAT ABOUT GOING FORWARD? |
| 22 | A    WELL, GOING FORWARD, THE INSTRUCTION IS, "IF YOU FIND |
| 23 | ANYTHING, GIVE IT TO ME AND MAINTAIN IT." |
| 24 | Q    WITH RESPECT TO THIS DEPOSITION THAT YOU WERE -- WERE YOU |
| 25 | PRESENT AT THIS MARINE DEPOSITION THAT'S BEEN REFERRED TO? |

Timestamps in right margin:
02:27 (line 5)
02:28 (line 10)
02:28 (line 15)
02:28 (line 20)
02:28 (line 25)

85

```
1   A      I BELIEVE I WAS PRESENT AT THE ONE IN JUNE OF 2000.
2   Q      THERE WAS AN INDICATION THAT SHE WAS NOT AWARE OF THE ZEUS
3   BACKUP?  DO YOU RECALL THAT?
4   A      YES.
5   Q      WHAT STEPS, IF ANY, DID YOU DO TO CLARIFY THAT WITH HER       02:29
6   AFTERWARDS?
7   A      WELL --
8   Q      THE TESTIMONY TODAY IS OR THE REPRESENTATION FROM
9   MR. QUINN IS THAT BACKUPS EXISTED.
10         DEFENSE COUNSEL TAKES ISSUE WITH THE FACT THAT YOU            02:29
11  SAT BY SILENTLY AND ALLOWED THIS TESTIMONY TO PROCEED.
12  A      YES.  I HAD A CONVERSATION WITH COUNSEL ABOUT WHAT TO DO
13  NEXT, BUT I DON'T WANT TO NECESSARILY GET INTO WHAT THAT WAS.
14  Q      I UNDERSTAND.
15  A      BUT I HAD AN UNDERSTANDING, AFTER THOSE CONVERSATIONS,        02:29
16  THAT MGA HAD KNOWLEDGE OF THESE TAPES' EXISTENCE, AND THAT THEY
17  HAD BEEN OFFERED, AND THAT, YOU KNOW, MY DUTY WASN'T TO CORRECT
18  HER MEMORY AT THAT TIME.
19  Q      AND HOW IS IT THAT YOU HAD INFORMATION THAT MGA WAS AWARE
20  THAT THESE TAPES EXISTED, NOTWITHSTANDING HER DEPOSITION           02:30
21  TESTIMONY THAT YOU WITNESSED?
22  A      HOW DID I KNOW THAT MGA --
23  Q      PERHAPS I MISUNDERSTOOD YOU.
24         I THOUGHT YOU JUST INDICATED THAT YOU UNDERSTOOD THAT
25  MGA WAS AWARE THAT THESE BACKUP TAPES EXISTED.                     02:30
```

JULY 24, 2006              ED CV 04-09049

EXHIBIT _38_

PAGE _921_

86

1   A    I UNDERSTOOD THAT MATTEL'S OUTSIDE COUNSEL HAD OFFERED

2   THESE TAPES TO MGA.

3   Q    DID YOU HAVE PERSONAL KNOWLEDGE OF THE TAPES' EXISTENCE?

4   A    YES.

5              THE COURT:  COUNSEL, YOU HAD SOME QUESTIONS.          02:30

6              MS. GLASER:  YES, YOUR HONOR.

7                        DIRECT EXAMINATION

8   BY MS. GLASER:

9   Q    MR. MOORE, WERE YOU RESPONSIBLE FOR DETERMINING WHO THESE

10  35 OR 30 OR 25 OR 40 WITNESSES ARE?                             02:30

11  A    YES, I WAS.

12  Q    AND YOU ALONE?

13  A    WELL, WHEN WE IDENTIFIED SOMEBODY WHO WAS POSSIBLY

14  RELEVANT, THEN I WOULD BE THE ONE TO TAKE ACTION.  I HAD

15  PARALEGALS OR OTHER PEOPLE AS WELL, BUT IT WAS MAINLY ME, YES.  02:31

16  Q    IS THERE ANY WRITTEN INSTRUCTION THAT YOU PROVIDED TO

17  ANYONE WITH RESPECT TO WHAT THEY SHOULD PRESERVE, WHETHER IT'S

18  35 OR 30 OR 25, WHOEVER THESE PEOPLE ARE?  WERE THERE WRITTEN

19  INSTRUCTIONS OF WHAT THEY SHOULD PRESERVE?

20              FREQUENTLY -- AND I'M GOING TO USE AN EXAMPLE --    02:31

21  INSIDE COUNSEL, WHEN LITIGATION IS ABOUT TO ENSUE OR WHEN THEY

22  THINK THERE'S A CONCERN ABOUT LITIGATION PERHAPS DOWN THE ROAD,

23  THEY SEND AN E-MAIL OUT TO EVERYBODY, 'WHATEVER YOU DO, PLEASE

24  PRESERVE YOUR DOCUMENTS.'

25              IS THAT AN E-MAIL THAT EXISTS TODAY?  YES OR NO?     02:31

87

```
 1   A    THERE WASN'T A MEMO THAT WENT OUT.

 2   Q    EVER; CORRECT?

 3   A    WELL, NO.  ONE WENT OUT LATER IN CONNECTION WITH SORT OF A

 4   LARGER CASE.

 5   Q    NOT THIS CASE?                                              02:31

 6         MR. QUINN:  AMBIGUOUS AS TO WHAT "THIS CASE" IS.

 7         THE COURT:  WHAT DO YOU MEAN EXACTLY, COUNSEL?

 8         MS. GLASER:  WELL, HE SAID, "A LARGER CASE."

 9         MY FAULT.

10   BY MS. GLASER:                                                   02:32

11   Q    WHEN DID AN E-MAIL GO OUT DIRECTING THE COMPANY'S

12   EMPLOYEES TO PRESERVE DOCUMENTS?

13   A    IN ABOUT APRIL OF 2005.

14   Q    AND THAT'S THE FIRST TIME AN E-MAIL WENT OUT?

15   A    THAT'S THE FIRST TIME AN E-MAIL WENT OUT TO COMPANY-WIDE.   02:32

16   Q    IN FACT, THAT'S THE FIRST TIME A DIRECTIVE WENT OUT, A

17   WRITTEN DIRECTIVE, WENT OUT AT ALL; ISN'T THAT TRUE?

18   A    I'M NOT SURE THAT'S TRUE.

19         MR. QUINN:  I DIDN'T HEAR THE ANSWER, YOUR HONOR.

20         MS. GLASER:  "I'M NOT SURE THAT'S TRUE," I BELIEVE,        02:32

21   IS WHAT HE SAID.

22         THE COURT:  ACTUALLY, THERE'S NO ANSWER ON THE -- THE

23   COURT REPORTER DIDN'T HEAR AN ANSWER EITHER.  LET'S NOT SPEAK

24   OVER EACH OTHER.

25         MS. GLASER:  SORRY.                                        02:32
```

JULY 24, 2006          ED CV 04-09049   EXHIBIT 38

PAGE 923

88

1   BY MS. GLASER:

2   Q    IS IT TRUE THAT THE FIRST TIME A DIRECTIVE WENT OUT TO

3   MATTEL EMPLOYEES IN WRITING, TO PRESERVE RECORDS, WAS IN APRIL

4   OF 2005?

5   A    IN APRIL OF 2005, A DOCUMENT RETENTION MEMO WENT OUT, AND       02:33

6   THAT WAS THE FIRST TIME IT WENT OUT COMPANY-WIDE.

7   Q    DID AN E-MAIL GO OUT LESS THAN COMPANY-WIDE AT ANY OTHER

8   TIME BEFORE APRIL OF 2005 IN CONNECTION WITH CARTER BRYANT,

9   MGA, POSSIBLE LITIGATION, PROBABLE LITIGATION,

10  HOWEVER-YOU-WANT-TO-COUCH-IT LITIGATION, WITH MGA AND              02:33

11  CARTER BRYANT IN WRITING?

12  A    THERE WASN'T A MEMO THAT WENT TO MORE THAN ONE PERSON,

13  THAT I CAN REMEMBER, BUT THERE MAY HAVE BEEN AN E-MAIL TO MORE

14  THAN ONE PERSON TALKING ABOUT THE CASE AND ASKING FOR

15  DOCUMENTS.                                                        02:33

16  Q    I DIDN'T ASK THAT.

17       I WANT TO KNOW IF THERE WAS A WRITTEN DIRECTIVE THAT

18  WENT OUT TO ANY EMPLOYEE PRIOR TO APRIL OF 2005, ASKING THEM OR

19  TELLING THEM TO PRESERVE THEIR E-MAILS?

20  A    I CAN'T REMEMBER THAT ONE WENT OUT LIKE THAT.  HOWEVER, IT    02:34

21  COULD HAVE BEEN LESS FORMAL THAN THAT IN TERMS OF, YOU KNOW,

22  WITHIN AN E-MAIL, FOLLOWING UP A PHONE CALL.  I DON'T WANT TO

23  EXCLUDE THAT THERE MIGHT HAVE BEEN SOME E-MAILS OF THAT NATURE.

24  Q    IS IT FAIR TO SAY THAT WE DON'T KNOW, AS WE SIT HERE

25  TODAY, EXACTLY WHAT WAS TOLD TO WHOMEVER IT WAS TOLD, WHICHEVER    02:34

JULY 24, 2006          ED CV 04-09049   EXHIBIT  38
                                         PAGE     924

1   EMPLOYEES IT WAS TOLD TO, WHAT THEY SHOULD BE PRESERVING?

2   THERE'S NO WRITTEN RECORD OF A DIRECTION AS TO WHAT THEY SHOULD

3   BE PRESERVING?

4          THE COURT:   THOSE ARE TWO SEPARATE QUESTIONS.

5   BY MS. GLASER:                                                    02:34

6   Q    IS THERE A WRITTEN RECORD OF WHAT THEY SHOULD BE

7   PRESERVING?

8   A    WELL, THERE'S THE MEMO THAT WENT OUT IN APRIL OF 2005.

9   Q    OTHER THAN THAT, IS THERE A WRITTEN RECORD DESCRIBING WHAT

10  THEY SHOULD BE PRESERVING?                                        02:34

11         IN OTHER WORDS, IT'S LESS THAN THE UNIVERSE, CORRECT,

12  WHATEVER WENT OUT IN APRIL OF 2005?  WHATEVER YOU ASKED PEOPLE

13  TO PRESERVE, IT WAS LESS THAN THE WHOLE UNIVERSE OF THEIR

14  E-MAILS; CORRECT?

15         MR. QUINN:   I CAN'T FOLLOW THE QUESTION.                  02:35

16         MS. GLASER:   I'LL WITHDRAW IT.   I'M SURE IT'S MY

17  FAULT.

18  BY MS. GLASER:

19  Q    WHEN YOU SENT OUT A DIRECTIVE, OR WHOMEVER SENT OUT THE

20  DIRECTIVE IN APRIL OF 2005, WERE PEOPLE ASKED TO PRESERVE        02:35

21  EVERYTHING OR LESS THAN EVERYTHING?

22  A    PEOPLE WERE ASKED TO PRESERVE DOCUMENTS RELATING TO

23  CERTAIN ISSUES.  AND I'M NOT SURE I CAN GET INTO WHAT THAT

24  DOCUMENT SAID WITHOUT CROSSING SOME PRIVILEGE LINE, BUT --

25         MS. GLASER:   YOUR HONOR, I THINK I'M ENTITLED TO         02:35

JULY 24, 2006              ED CV 04-09049   EXHIBIT  38
                                            PAGE      925

90

1   KNOW, AND I THINK THE COURT, MORE IMPORTANTLY, I GUESS, IS

2   ENTITLED TO KNOW IF THE REQUEST FOR PRESERVATION WAS A LIMITED

3   REQUEST INAPPROPRIATELY LIMITED OR IF IT WAS A BROAD REQUEST.

4   BECAUSE I WILL REPRESENT TO THE COURT, MGA'S COUNSEL SENT OUT

5   SOMETHING SAYING, 'PRESERVE EVERYTHING.'                              02:36

6          THE COURT:  YES, COUNSEL.

7          MR. QUINN, I DO THINK THAT THE SCOPE OF THE RETENTION

8   POLICY IS SOMETHING WHICH IS NOT PROTECTED BY PRIVILEGE AT THIS

9   POINT.

10         MR. QUINN:  YOUR HONOR, MGA HAS TAKEN THE POSITION --       02:36

11  THE SHOE'S ON THE OTHER FOOT -- THAT WE'RE NOT PERMITTED TO

12  KNOW THAT.  THEY CLAIM THAT THAT'S PRIVILEGED INFORMATION AS TO

13  WHAT PEOPLE WERE TOLD TO RETAIN.

14         THE COURT:  IS THAT MGA'S POSITION?

15         MS. GLASER:  I DO NOT BELIEVE SO, YOUR HONOR.  I'M          02:36

16  NOT AWARE THAT WAS EVER DONE, BUT I DON'T WANT TO MISREPRESENT

17  -- I'M NOT AWARE OF THAT, BUT I'M CERTAINLY PREPARED TO LET THE

18  COURT KNOW AND COUNSEL KNOW WHAT PEOPLE HAVE BEEN ASKED TO

19  PRESERVE.

20         THE COURT:  PUTTING ASIDE THAT RECIPROCITY, WHICH I         02:36

21  THINK YOU WOULD CERTAINLY BE ENTITLED TO, GIVEN HOW THIS HAS

22  UNFURLED, THERE'S CERTAINLY NO PRIVILEGE ISSUE WITH RESPECT TO

23  THE SCOPE OF THE RETENTION POLICY, GIVEN WHAT THIS WITNESS AND

24  MANY OTHER WITNESSES FOR MATTEL HAVE ALREADY DISCLOSED.

25         MR. QUINN:  I WOULD AGREE, YOUR HONOR, IN TERMS OF          02:36

JULY 24, 2006                ED CV 04-09049   EXHIBIT   38

                                              PAGE    926

91

1    SOME GENERAL SUBJECT MATTERS.

2              THE COURT:  RIGHT.  THAT'S ALL WE'RE LOOKING FOR

3    RIGHT NOW.

4              MR. QUINN:  AND WHAT WE'RE TOUCHING ON HERE -- I MADE

5    REFERENCE TO A SECURITY TOOL THAT WAS PUT IN PLACE BACK IN LATE      02:37

6    2003.

7              THE COURT:  THAT'S CORRECT.

8              MR. QUINN:  MATTEL DOES REGARD THAT AS -- THAT'S

9    SOMETHING THAT WAS PUT IN PLACE TO PROTECT MATTEL FROM -- AMONG

10   OTHER THINGS, IT WAS PUT IN PLACE TO PROTECT MATTEL FROM           02:37

11   INDUSTRIAL ESPIONAGE --

12             THE COURT:  YES.

13             MR. QUINN:  -- WHICH MATTEL HAD BEEN ON THE RECEIVING

14   END OF.

15             THE COURT:  ALLEGEDLY.                                   02:37

16             MR. QUINN:  I'M A LITTLE CONCERNED ABOUT DISCUSSING

17   THAT IN OPEN COURT, ESPECIALLY WITH MGA'S IN-HOUSE COUNSEL.

18             THE COURT:  WE'RE NOT ASKING FOR THOSE KINDS OF

19   SPECIFICS.

20             MR. QUINN:  SO AS LONG AS THE WITNESS UNDERSTANDS,       02:37

21   BECAUSE I THOUGHT HE MAY BE CONFUSED ABOUT WHETHER HE'S BEING

22   ASKED TO GET INTO THAT.

23             THE COURT:  AS I UNDERSTAND THE QUESTION RIGHT NOW,

24   WE'RE SIMPLY ASKING HIM TO DESCRIBE IN GENERAL TERMS THE NATURE

25   OF THIS APRIL 2005 MEMO.                                          02:37

JULY 24, 2006                    ED CV 04-09049 EXHIBIT  38

                                              PAGE    927

92

```
 1           MS. GLASER:  MAY WE HAVE HIM PRODUCE IT -- NOT TODAY,
 2   OBVIOUSLY, BUT -- I'D LIKE TO SEE IT.
 3   BY MS. GLASER:
 4   Q    BUT GO AHEAD, IF YOU COULD DESCRIBE IT.
 5   A    WELL, IT ASKS PEOPLE IN MATTEL TO PRESERVE, COLLECT AND     02:38
 6   PRESERVE, OR PRESERVE DOCUMENTS, RELATED TO CARTER BRYANT,
 7   ANYTHING RELATED TO BRATZ, ANYTHING RELATED TO SOME OF THE
 8   ALLEGATIONS THAT WERE IN MGA'S COMPLAINT FILED THAT MONTH, SUCH
 9   AS DOCUMENTS RELATED TO MY SCENE, DOCUMENTS RELATED TO
10   EXCELLARATES -- THESE ARE BRANDS THAT I'M DESCRIBING OF          02:38
11   MATTEL -- AND LITTLE MOMMY.
12   Q    DIVA STARS?
13   A    I DON'T HAVE THE DOCUMENT IN FRONT OF ME, BUT I BELIEVE IT
14   WOULD HAVE RELATED TO DIVA STARS.
15   Q    DID YOU ATTEND MS. MARINE'S DEPOSITION IN JULY OF 2007?     02:38
16   A    I DID.
17   Q    IN FACT, YOU PREPARED HER FOR HER DEPOSITION, YOU AND
18   OUTSIDE COUNSEL, CORRECT, JUST THE TWO OF YOU?
19   A    I BELIEVE I WAS PRESENT FOR PART OF THAT PREPARATION, YES.
20   Q    AND ISN'T IT ALSO TRUE THAT YOU ACTUALLY RECEIVED LIVENOTE  02:39
21   AT THE DEPOSITION?  IN OTHER WORDS, YOU SEE THE QUESTION BEING
22   ASKED AND THE ANSWER BEING GIVEN, YOU ACTUALLY SEE IT ON A
23   COMPUTER IN FRONT OF YOU AS IT'S OCCURRING; RIGHT?
24   A    AT SOME DEPOSITIONS, I DO, AND AT THAT ONE, I BELIEVE I
25   DID.                                                            02:39
```

93

```
 1   Q    AND WHEN MS. MARINE TESTIFIED THAT TO HER KNOWLEDGE, AS
 2   THE 30(B)(6) WITNESS FOR THE COMPANY, THEREFORE THE COMPANY'S
 3   KNOWLEDGE, THERE WAS NOT THESE BACKUP TAPES -- ONCE SHE
 4   TESTIFIED THAT THERE WERE NOT ZEUS BACKUP TAPES, AT LEAST TO
 5   THE BEST OF HER KNOWLEDGE -- THE COURT CAN READ THE DEPOSITION    02:39
 6   HIMSELF -- WHEN SHE TESTIFIED TO THAT EFFECT, DID YOU CORRECT
 7   THE RECORD THEN OR AT ANY TIME UNTIL YOU GAVE YOUR DECLARATION
 8   IN OPPOSITION TO THE SPOLIATION MOTION THAT WE'RE HERE TODAY
 9   ABOUT?
10            MR. QUINN:  I OBJECT TO THE PREAMBLE, WHICH WAS          02:40
11   SOMETHING TO THE EFFECT THAT THE WITNESS WAS TESTIFYING AS THE
12   PERSON MOST KNOWLEDGEABLE ON THE ZEUS SYSTEM, WHICH, AS THE
13   COURT KNOWS, IS NOT THE CASE.
14            WE'RE PREPARED TO STIPULATE THAT HE HAS NEVER CHANGED
15   THAT WITNESS'S TESTIMONY.                                        02:40
16            THE COURT:  VERY WELL.
17            I'M GOING TO SUSTAIN THE OBJECTION BECAUSE I THINK IT
18   DOES -- AND ALSO, THE WAY YOU PHRASED THAT QUESTION DOES NOT
19   ACTUALLY SIT WITH THE COURT'S UNDERSTANDING IN THE CONTEXT OF
20   HER ANSWERS.                                                     02:40
21            AS I INDICATED PREVIOUSLY, MY READING OF THOSE
22   ANSWERS IS MORE THAT SHE WAS NOT AWARE OR THAT SHE DID NOT
23   KNOW.  NOT THAT THIS WAS A CATEGORICAL, UNEQUIVOCAL 'NO, WE DO
24   NOT HAVE THOSE BACKUP TAPES.'
25            MS. GLASER:  YOUR HONOR -- AND I WON'T BEAT THIS        02:40
```

94

1   HORSE ANYMORE --

2        **THE COURT:**  THIS HEARING AND THIS MOTION IS NOT ABOUT

3   WHETHER OR NOT THERE WAS A PROBLEM WITH THE 30(B) WITNESS OR

4   WHETHER THERE WAS MISCOMMUNICATION OR A GARBLED RECORD IN TERMS

5   OF WHAT THIS WITNESS WAS QUALIFIED TO TESTIFY ABOUT OR NOT.          02:41

6   THAT'S NOT THE ISSUE BEFORE THE COURT.

7        WHAT JUSTIFIES A TERMINATING SANCTION, WHICH IS AN

8   EXTRAORDINARILY DRASTIC MEASURE FOR THIS COURT TO TAKE, IS IF

9   MATTEL LIED TO MGA OR MATTEL KNOWINGLY AND INTENTIONALLY

10  DESTROYED DOCUMENTS OR FAILED TO KEEP DOCUMENTS THEY KNEW THEY      02:41

11  SHOULD HAVE KEPT.  LET'S NOT LOSE SIGHT OF WHAT THIS IS ABOUT.

12       **MS. GLASER:**  I AGREE WITH THAT, YOUR HONOR.

13       **THE COURT:**  IF THIS WITNESS MISTAKENLY SAID THAT SHE

14  WAS NOT AWARE OF THOSE AND THERE WERE, IN FACT, DOCUMENTS --

15       I AM INTERESTED TO HEAR WHAT MR. MOORE DID OR WHY HE          02:41

16  DIDN'T DO IT, IF YOU WANT TO ASK HIM ABOUT THAT.  BUT LET'S NOT

17  TRY TO CHARACTERIZE THE WITNESS'S TESTIMONY.

18       **MS. GLASER:**  FAIR ENOUGH.

19       **THE COURT:**  I'VE HEARD IT SEVERAL TIMES NOW, I HAVE A

20  COPY OF IT, AND I AM CERTAINLY MINDFUL OF IT.                      02:41

21       LET'S HEAR WHAT MR. MOORE DID OR DID NOT DO.

22       **MS. GLASER:**  THEN, YOUR HONOR, LET ME TRY IT

23  DIFFERENTLY, THEN, WITHOUT CHARACTERIZING IT.

24  BY **MS. GLASER:**

25  Q    YOU KNEW MS. MARINE TESTIFIED THAT SHE WASN'T AWARE OF        02:42

JULY 24, 2006                    ED CV 04-09049  EXHIBIT  38
                                                 PAGE     930

95

1   BACKUP FOR ZEUS AT CERTAIN KEY PERIODS OF TIME; TRUE?

2   A    THAT'S TRUE.

3   Q    AND YOU DIDN'T CORRECT THE RECORD THEN DURING THE

4   DEPOSITION; TRUE?

5   A    THAT'S TRUE.                                              02:42

6   Q    AND UNTIL YOU FILED A DECLARATION IN OPPOSITION TO THIS

7   MOTION FOR SPOLIATION AND DISMISSAL OF THE CASE, YOU NEVER LET

8   MGA KNOW THAT WHAT SHE HAD SAID IN HER DEPOSITION, WHATEVER IT

9   WAS, WASN'T TRUE; TRUE?

10  A    I DIDN'T THINK THAT WHAT SHE SAID AT THE DEPOSITION WASN'T  02:42

11  TRUE; I JUST THOUGHT THAT SHE WASN'T AWARE OF THE TAPES'

12  EXISTENCE.

13  Q    IS IT FAIR TO SAY THAT MGA, WALKING AWAY FROM THAT

14  DEPOSITION, WOULD BELIEVE THAT ZEUS BACKUP TAPES DID NOT EXIST

15  FOR A CONSIDERABLE PERIOD OF TIME?                            02:43

16  A    I WOULD THINK THAT MGA WOULD FOLLOW UP ON THAT.

17  Q    AND WHEN THE COMPANY -- ASSUME FOR A MOMENT THAT SHE

18  WAS -- BY THE WAY, YOU WEREN'T DESIGNATED AS THE PERSON MOST

19  KNOWLEDGEABLE, THE 30(B)(6) WITNESS, IN CONNECTION WITH THE

20  EXISTENCE OF THE BACKUP TAPES FOR ZEUS, WERE YOU?            02:43

21  A    I WAS NOT DESIGNATED.

22  Q    ISN'T IT TRUE, SIR, AS YOU SIT HERE TODAY, YOU HAVE MORE

23  INFORMATION, AND YOU KNEW YOU HAD MORE INFORMATION, WHEN YOU

24  WERE PREPARING HER AND WHEN HER DEPOSITION WAS TAKEN, THAN

25  MS. MARINE; TRUE?                                            02:43

JULY 24, 2006                    ED CV 04-09049  EXHIBIT  38
                                                 PAGE     931

96

1    **MR. QUINN:** NON PRIVILEGED INFORMATION, YOUR HONOR,

2  JUST FOR CLARIFICATION.

3    **THE COURT:** YES, NON PRIVILEGED INFORMATION.

4    IT'S A TOUGH QUESTION TO ASK, COUNSEL. I UNDERSTAND

5  WHAT YOU'RE TRYING TO GET AT.                                    02:43

6    **MS. GLASER:** EXCUSE ME, YOUR HONOR. THIS IS THE

7  GENTLEMAN WHO SAID HE GOT THE TAPES FROM SOMEPLACE IN ARIZONA.

8    **THE COURT:** YOU SEE, THIS GOES BACK TO THE ISSUE OF

9  WHETHER OR NOT THIS WAS NOT THE RIGHT 30(B) WITNESS, AND I TEND

10 TO THINK THAT THIS IS PERHAPS A DISCOVERY DISPUTE WHICH SHOULD   02:44

11 HAVE BEEN PROPERLY FULLY LITIGATED, BUT THIS IS NOT THE

12 GRAVAMEN OF YOUR ALLEGATION AT THIS POINT.

13   **MS. GLASER:** THE ONLY PROBLEM, YOUR HONOR, IS --

14   **THE COURT:** IT'S FORGING INTO SOMETHING ELSE, AND

15 THAT SOMETHING ELSE IS NOT REALLY WHAT I WANT TO ENTERTAIN AT    02:44

16 THIS MOMENT.

17   **MS. GLASER:** I UNDERSTAND THAT. AND MY ONLY POINT

18 IS, YOUR HONOR, WE WERE MISLED. I THINK THE RECORD IS CLEAR

19 THAT WE WERE MISLED. AND I DON'T THINK WE HAVE AN OBLIGATION,

20 AFTER SOMEBODY IS DESIGNATED AS A 30(B)(6) WITNESS, TO SAY,      02:44

21 'OH, SHE'S NOT SURE.' WHICH ISN'T WHAT SHE SAID. SHE SAID

22 THAT SHE DOESN'T THINK 'WE GO BACK THAT FAR.'

23   SO THEY HAVE OFFERED HER. I DIDN'T OFFER HER; I

24 DIDN'T DESIGNATE HER. THEY DESIGNATED HER. AND THIS GENTLEMAN

25 HAS MORE INFORMATION ON THE DATE SHE'S TESTIFYING THAN SHE       02:44

97

1   DOES. THAT'S A HEAD FAKE. THAT IS HIDING EVIDENCE. THAT IS

2   NOT FAIR.

3           THE COURT: YOU WERE CERTAINLY ENTITLED, AT THE TIME

4   THAT IT WAS ASKED, TO A YES OR NO ANSWER TO WHETHER OR NOT

5   THESE BACKUP TAPES EXISTED, AND IT APPEARS THAT YOU DID NOT GET    02:45

6   THAT FROM MS. MARINE.

7           MS. GLASER: I'LL MOVE ON, YOUR HONOR.

8           THE COURT: OKAY. THANK YOU.

9   BY MS. GLASER:

10  Q   BY THE WAY, HAVE ANY OF THE DOCUMENTS ON THE BACKUP TAPES    02:45

11  FOR THE ZEUS SERVER BEEN RETRIEVED FROM THE BACKUP TAPES AND

12  PROVIDED TO MGA OR ITS COUNSEL OR TO CARTER BRYANT OR HIS

13  COUNSEL?

14          THE COURT: YOU'RE ASKING IF DOCUMENTS, PARTICULAR

15  DOCUMENTS, WHETHER DOCUMENTS CAME FROM THE BACKUP TAPES?    02:45

16          MS. GLASER: YES, SIR.

17          THE WITNESS: IF ANY DOCUMENTS FROM THE ZEUS BACKUP

18  TAPES WERE RETRIEVED FOR MGA'S COUNSEL?

19          I UNDERSTAND THAT THAT'S WHAT HAPPENED.

20  BY MS. GLASER:    02:45

21  Q   WHEN DID THAT HAPPEN?

22  A   I'M NOT SURE WHEN IT HAPPENED. THERE'S ONGOING

23  PRODUCTION. BUT I DID ASK COUNSEL IF THIS HAD HAPPENED. I DID

24  INQUIRE AS TO WHETHER DOCUMENTS WERE PRODUCED FROM THOSE ZEUS

25  TAPES, AND I UNDERSTAND THAT THEY WERE.    02:46

JULY 24, 2006          ED CV 04-09049   EXHIBIT   38

                                        PAGE ___   933

98

```
 1   Q    AND ARE YOU THE PERSON MOST KNOWLEDGEABLE WHO WOULD KNOW
 2   IF THERE ACTUALLY -- OR IS IT OUTSIDE COUNSEL -- WHO WOULD KNOW
 3   IF DOCUMENTS HAD BEEN RETRIEVED FROM THE ZEUS BACKUP TAPES AND
 4   PRODUCED TO MGA AND MR. BRYANT IN THIS LAWSUIT?
 5   A    WELL, I'M NOT SURE I CAN ANSWER THAT.                    02:46
 6        I THINK THE ANSWER IS, WHEN I GOT THE ZEUS TAPES, WE
 7   TURNED THEM OVER TO AN OUTSIDE FIRM, AND WE DEALT WITH THEM IN
 8   TERMS OF -- WE STARTED SEARCHING THEM.  AND IF THERE WERE
 9   RELEVANT DOCUMENTS ON THOSE TAPES, THEY WOULD BE PRODUCED, I
10   WOULD ASSUME.                                                02:47
11   Q    IS IT FAIR TO SAY THAT YOU'RE NOT THE PERSON MOST
12   KNOWLEDGEABLE ABOUT WHAT, IF ANYTHING, HAS BEEN PROVIDED TO
13   COUNSEL OR ITS CLIENTS, MGA OR CARTER BRYANT, FROM THOSE BACKUP
14   TAPES OF ZEUS?
15        MR. QUINN:  I OBJECT.  WE'RE GETTING INTO A DISCOVERY   02:47
16   ISSUE HERE.
17        THE COURT:  I DON'T SEE THE RELEVANCE.
18        MS. GLASER:  I'LL MOVE ON.
19   BY MS. GLASER:
20   Q    MS. MARINE ALSO TESTIFIED THAT SHE DETERMINES WHEN TO   02:47
21   CREATE BACKUP TAPES AND THAT NO ONE FROM LEGAL HAS EVER
22   DIRECTED HER TO CREATE BACKUP TAPES; TRUE OR FALSE?
23        MR. QUINN:  I OBJECT, YOUR HONOR.  WE'VE GOT SOME
24   TESTIMONY THAT WE CAN ALL LOOK AT.
25        MS. GLASER:  I'LL ASK IT DIFFERENTLY TO AVOID THAT.     02:47
```

99

```
 1              THE COURT:  THANK YOU.
 2    BY MS. GLASER:
 3    Q    IS IT TRUE THAT MS. MARINE DETERMINES WHEN TO CREATE
 4    BACKUP TAPES AND THAT NO ONE FROM LEGAL HAS EVER DIRECTED HER
 5    TO CREATE BACKUP TAPES?  TRUE OR FALSE?                          02:47
 6    A    MY UNDERSTANDING IS THAT MS. MARINE CREATES BACKUP TAPES
 7    AND SHE'S PROVIDED SOME BACKUP TAPES TO US, TO ME, TO THE LAW
 8    DEPARTMENT.
 9    Q    MY QUESTION IS, IS IT TRUE THAT LEGAL HAS NEVER DIRECTED
10    HER TO PROVIDE OR MAKE BACKUP TAPES; SHE DETERMINES, NOT YOU,    02:48
11    LEGAL, BUT SHE DETERMINES WHEN AND IF TO CREATE BACKUP TAPES
12    FOR ZEUS?  IS THAT TRUE OR FALSE, SIR?
13    A    I WANT TO ANSWER THE QUESTION.  IT SOUNDS A LITTLE
14    COMPOUND.
15              I SEEM TO REMEMBER ASKING HER AT ONE POINT TO MAKE A   02:48
16    ZEUS BACKUP TAPE, BUT SHE ALSO MAKES BACKUP TAPES IN HER
17    CAPACITY AS MANAGER OF THE ZEUS SYSTEM.
18              THE COURT:  MR. MOORE, LET ME ASK YOU THIS:
19              MR. QUINN INDICATED TO ME THAT FROM 2002 TO THE
20    PRESENT, ALL OF THE ZEUS BACKUP TAPES HAVE BEEN SAVED.          02:48
21              DO YOU RECALL THAT REPRESENTATION?
22              THE WITNESS:  I REMEMBER THAT THE REPRESENTATION WAS
23    THAT WE HAVE A 2002 BACKUP TAPE FROM ZEUS.
24              THE COURT:  AND EVERYTHING SINCE THEN.
25              MR. QUINN, AM I MISQUOTING YOU?  THAT WAS WHAT I       02:49
```

JULY 24, 2006          ED CV 04-09049   EXHIBIT  38

                                        PAGE     935

100

```
 1  WROTE DOWN IN MY NOTES.
 2          MR. QUINN:  IT WAS ACTUALLY MR. COREY.
 3          THE COURT:  I'M SORRY.
 4      WAS THAT YOUR REPRESENTATION?
 5          MR. COREY:  ALL OF THE BACKUP TAPES FOR ZEUS HAVE NOT      02:49
 6  BEEN PRESERVED SINCE THEN.  WE HAVE COMPLETE SETS OF BACKUP
 7  TAPES DONE AT INTERMITTENT PERIODS, DONE FOR PURPOSES OF THE
 8  LITIGATION.
 9          THE COURT:  YOU GAVE ME DATES OF APRIL, MAY, AUGUST,
10  DECEMBER OF 1998; AND WE WENT THROUGH ALL OF THESE SPORADIC       02:49
11  PERIODS UP THROUGH JULY OF 2001; AND THEN WE SAID WE HAD IT FOR
12  ALL OF 2002.  AND I THOUGHT I ASKED THIS QUESTION SEVERAL
13  TIMES; THAT SINCE 2002, WE HAVE ALL OF THE ZEUS BACKUP TAPES.
14      AM I MISTAKEN?
15          MR. COREY:  I WANT TO MAKE CLEAR THAT WE'RE TALKING       02:49
16  ABOUT THE ZEUS BACKUP TAPES AND NOT THE E-MAIL BACKUP TAPES.
17          THE COURT:  I'M NOT SAYING ANYTHING ABOUT E-MAIL.
18  I'M TALKING ABOUT ZEUS.
19          MR. COREY:  THERE IS NO AUTO-DELETE FUNCTION.
20  THERE'S NOT A RISK OF THINGS BEING LOST AUTOMATICALLY.  SO THE    02:49
21  ELECTION WAS MADE THAT AT INTERMITTENT TIME PERIODS, WE WOULD
22  CREATE A FULL BACKUP OF ZEUS.  AND THERE'S ONE FOR 2002, AND
23  THERE'S ONE FOR 2004.
24          THE COURT:  WHAT ABOUT 2003?
25          MR. COREY:  I CAN'T RECALL IF THERE'S ONE FOR 2003 OR     02:50
```

101

1    NOT, BUT THINGS DON'T DISAPPEAR FROM ZEUS.   THIS IS WHAT

2    MS. MARINE TESTIFIED TO.   ZEUS JUST KEEPS GETTING BIGGER AND

3    BIGGER AND BIGGER.   PEOPLE DON'T DELETE.

4           THE COURT:   WHAT ABOUT 2005?

5           MR. COREY:   I DON'T KNOW IF WE HAVE ONE FOR 2005 OR          02:50

6    NOT.   I BELIEVE WE DO.   I DON'T KNOW.

7           MR. QUINN:   THE SYSTEM EXISTS.   IT DOESN'T HAVE AN

8    AUTO DELETE --

9           THE COURT:   THEN WHY CAN'T I GET A STRAIGHT ANSWER

10   THAT SAYS THAT THEY'RE THERE?                                        02:50

11          MR. COREY:   BECAUSE THE SYSTEM CONTINUES TO EXIST.

12          THE INFORMATION IS THERE.

13          THE COURT:   FOR 2002, FOR 2003, FOR 2004, FOR 2005,

14   FOR 2006, AND THROUGH NOW OF 2007?

15          MR. COREY:   WHAT MS. MARINE TESTIFIED TO WAS THAT --         02:50

16          THE COURT:   I'M ASKING YOU, COUNSEL, IS IT THERE OR

17   IS IT NOT THERE?   BECAUSE I HAVE MY NOTES HERE VERY CLEARLY

18   THAT WAS THE IMPRESSION THAT I WAS GIVEN.   AND I THOUGHT WE HAD

19   KIND OF MOVED BEYOND THIS WHOLE ZEUS ISSUE BECAUSE THEY WERE

20   THERE AND THEY'RE AVAILABLE AND MGA CAN COME AND LOOK AT THEM        02:51

21   OR ACCESS DOCUMENTS FROM THEM.

22          IS THAT TRUE OR NOT TRUE?

23          MR. COREY:   WE HAVE THE BACKUP TAPES FOR ZEUS THAT I

24   IDENTIFIED FOR YOU PRIOR TO 2002, FROM 2001 AND PRIOR.

25          I WANT TO MAKE SURE THAT I'M SAYING EXACTLY WHAT WE           02:51

JULY 24, 2006              ED CV 04-09049   EXHIBIT   38

                                            PAGE      937

102

```
 1   HAVE.
 2          WE HAVE A COMPLETE BACKUP OF ZEUS FOR 2002.  WE HAVE
 3   A COMPLETE BACKUP OF ZEUS FOR 2004.  ALL OF THAT INFORMATION ON
 4   THOSE BACKUP TAPES LIKELY CONTINUES TO EXIST ON ZEUS AS IT
 5   EXISTS TODAY.                                                        02:51
 6          PEOPLE HAVE BEEN INSTRUCTED NOT TO DELETE THINGS
 7   RELEVANT TO THIS CASE; SO THERE SHOULDN'T BE A RISK OF LOSING
 8   INFORMATION ON ZEUS.
 9          THE COURT:  HAVE YOU MADE BACKUPS FOR 2003?
10          MR. COREY:  I DON'T KNOW.                                     02:51
11          MS. GLASER:  I HAVE NOTHING FURTHER.
12          THE COURT:  THANK YOU, COUNSEL.
13          I'M STARTING TO UNDERSTAND MGA'S FRUSTRATION,
14   COUNSEL.
15          MR. QUINN:  WE'D LIKE TO ADDRESS THAT.                        02:52
16          THE COURT:  PLEASE.
17          MR. QUINN:  WE'D LIKE TO UNDERSTAND THE SOURCE OF THE
18   FRUSTRATION, YOUR HONOR.
19          THIS IS A SYSTEM THAT JUST -- THE ZEUS SYSTEM, IT'S A
20   DATA STORAGE SYSTEM.                                                 02:52
21          THE COURT:  I UNDERSTAND THAT.
22          MR. QUINN:  IT JUST GROWS AND GROWS AND GROWS.
23          THE COURT:  I UNDERSTAND THAT AS WELL.
24          MR. QUINN:  PEOPLE HAVE BEEN TOLD 'DON'T DELETE
25   ANYTHING OFF OF THIS SYSTEM THAT'S RELATED TO THIS CASE.'  AS A      02:52
```

103

```
 1   FALLBACK, JUST TO BE EXTRA CAREFUL, AT A COUPLE OF PERIODS, A

 2   COMPLETE BACKUP, A SNAPSHOT, EVERYTHING THAT'S THERE, HAS BEEN

 3   MADE; THAT'S A DUPLICATE.

 4          THE COURT:  OKAY.

 5          AS FAR AS THE 'DON'T DELETE ANYTHING RELATED TO THIS      02:52

 6   CASE,' WHEN DID THAT DIRECTIVE GO OUT?

 7          MR. COREY:  APRIL OF 2005, WITH RESPECT TO THE

 8   EXPANDED CASE THAT WE'RE DEALING WITH NOW.

 9          PRIOR TO APRIL OF 2005, THE ADMISSIONS THAT WE HAVE

10   FROM BRYANT ARE THAT HE NEVER USED ZEUS, BUT WE'VE PRESERVED    02:53

11   THAT INFORMATION.

12          THE COURT:  IT'S NOT ABOUT JUST BRYANT.

13          CAN YOU MAKE A BACKUP OF 2003 AND 2005 AND 2006 AND

14   2007?

15          MR. COREY:  THE INFORMATION THAT WAS THERE IN 2003       02:53

16   WOULD BE ON THE 2004 BACKUP TAPE.

17          THE COURT:  SO THE INFORMATION THAT WAS THERE --

18   OKAY.

19          MR. QUINN:  WE CAN DO A BACKUP TODAY, YOUR HONOR, AND

20   IT WILL CAPTURE EVERYTHING THAT WAS EVER ON ZEUS.              02:53

21          MR. COREY:  IT WILL CAPTURE THE INFORMATION THAT'S ON

22   THE 1998 BACKUP TAPES.

23          MS. GLASER:  YOUR HONOR, RESPECTFULLY -- AND I AM NOT

24   A COMPUTER MAVEN -- IF IT'S A FILE SYSTEM, WHICH IS WHAT

25   THEY'RE REPRESENTING, IF SOMEONE CHOOSES TO DELETE FILES FOR    02:53
```

JULY 24, 2006          ED CV 04-09049  EXHIBIT  38

PAGE    939

104

```
 1   2003 -- I'LL USE THAT AS AN EXAMPLE -- THEY'RE GONE.  YOU COULD
 2   BACKUP TO YOUR HEART'S DELIGHT, AND IT'S GONE; IT'S NOT THERE.
 3           I'M NOT SUGGESTING THE LAWYERS ARE MISREPRESENTING;
 4   I'M SUGGESTING MR. JENAL, WHO KNOWS A LOT MORE ABOUT COMPUTERS
 5   THAN I DO, IS TELLING ME -- AND I HAVE NO REASON TO DOUBT HIM    02:54
 6   AT ALL -- IF YOU TRIED TO BACKUP -- AND I'M USING IT AS AN
 7   EXAMPLE -- 2003 OR 2002, TODAY, AND YOU HAD NOT DONE IT
 8   PREVIOUSLY, EASILY, DOCUMENTS COULD BE DELETED.
 9           THE COURT:  I UNDERSTAND THAT, COUNSEL, BUT I DON'T
10   HAVE ANY EVIDENCE BEFORE ME THAT SUGGESTS THAT ANYTHING WAS      02:54
11   DELETED IN 2003.
12           MS. GLASER:  YOU ARE RIGHT.  YOU DO NOT HAVE A
13   DECLARATION THAT TELLS YOU THERE WASN'T ANYTHING DELETED,
14   BECAUSE THAT ISSUE HAS NOT BEEN ADDRESSED PROPERLY, IN OUR
15   VIEW, BY MATTEL.                                                 02:54
16           WE DON'T KNOW WHAT'S THERE AND WHAT'S NOT THERE; AND
17   WE'RE NOT GETTING STRAIGHT ANSWERS, YOUR HONOR.
18           MR. QUINN:  THE REALITY --
19           THE COURT:  MR. MOORE, YOU MAY STEP DOWN.
20           MR. QUINN:  HOW DID WE GET HERE?  BECAUSE THEY SAID      02:54
21   WE DON'T HAVE ANY ZEUS TAPES, PERIOD.  THAT'S WHAT THIS MOTION
22   WAS BASED ON.
23           THE COURT:  I UNDERSTAND, COUNSEL.  MY FRUSTRATION
24   IS --
25           MR. QUINN:  AND NOW WE'VE WANDERED --
```

125

1   IS ACTUALLY GOING TO BE UNDER SEAL.

2          I'LL ISSUE A MINUTE ORDER DIRECTING FURTHER

3   PROCEEDINGS IN THIS MATTER, BUT BE WORKING ON THIS DECLARATION.

4          **MS. GLASER:**   THANK YOU, YOUR HONOR.

5          **MR. QUINN:**   THANK YOU, YOUR HONOR.                    03:19

6          **THE COURT:**   GOOD DAY, COUNSEL.

7

8

9

10

11                      CERTIFICATE

12

13   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
14   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
15   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

16

17   _____          9-5-07
     THERESA A. LANZA, CSR, RPR               DATE
18   FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

JULY 24, 2006                    ED CV 04-09049        EXHIBIT   38
                                                       PAGE      941