# EXHIBIT 52

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 53

5324

1             UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                    - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                    - - -

7   MATTEL, INC.,                    )
                                     )
8                    PLAINTIFF,      )
                                     )
9             VS.                    )   NO. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)   TRIAL DAY 27
                                     )   MORNING SESSION
11                   DEFENDANTS.     )   PAGES 5324-5477
                                     )
12  AND CONSOLIDATED ACTIONS,        )
    _____   )

13

14

15      REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            WEDNESDAY, JULY 23, 2008

18                 8:17 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25            951-274-0844
            WWW.THERESALANZA.COM

EXHIBIT 53
PAGE 1557

CERTIFIED COPY

1   THAT.   THAT'S PART OF THE REASON I DECLINE TO GO DOWN AND

2   ACCEPT MR. ZELLER'S INVITATION EARLIER ON JUDICIAL ESTOPPEL,

3   BECAUSE I THINK THERE'S TOO MANY COMPLICATING FACTORS FOR THE

4   COURT TO DO THAT.

5        AT THE SAME TIME, THIS INFORMS MY DECISION AND I --          10:24

6   IT'S BECOMING CLEARER TO ME AS WE GO THROUGH THIS

7   DISCUSSION THAT FACTUAL STATEMENTS, FACTUAL ASSERTIONS,

8   PROVIDED THAT THEY ARE DIVORCED OF LEGAL LANGUAGE IN WHICH THEY

9   REFLECT LEGAL CONCLUSIONS OR THEY REFLECT LEGAL PRINCIPLES, ARE

10  GOING TO BE ADMITTED.                                            10:25

11        MR. HANSEN:   LET ME ADDRESS YOUR SPECIFIC QUESTION ON

12  THE EYELASH AND THE EYE.

13        THE EXHIBIT THAT'S PUT UP -- IF WE'RE TALKING EYE TO

14  EYE, THAT'S ONE THING.   AND THAT IS PROBABLY THE BEST EXAMPLE

15  OF SOMETHING THAT COULD BE ARGUABLY FACT-BASED.                  10:25

16        THE COURT:   I THINK IT IS, YES.

17        MR. HANSEN:   OKAY.   BUT THAT'S NOT WHAT THE REST OF

18  THEM ARE.

19        THE COURT:   I DON'T KNOW -- I MEAN, PART OF THIS --

20  WE'VE GOT A JURY NOW WAITING, AND I'M GOING TO BRING THE JURY    10:25

21  IN IN ABOUT FIVE MINUTES, BUT I THINK THE STANDARD THAT I'M

22  ARTICULATING IS CLEAR.   MR. PRICE SHOULD PROBABLY ERR ON THE

23  SIDE OF CAUTION IN OPENING STATEMENT.   THIS IS NOT GOING TO BE

24  THE ENTIRE TRIAL, THESE NEXT TWO HOURS.

25        I WILL ENTERTAIN OBJECTIONS IF ANYTHING GOES UP            10:25

EXHIBIT  59

PAGE  1538

5390

1  THERE, WHICH -- LIKE I SAID, THE STANDARD THAT I AM GOING TO

2  ARTICULATE HERE AND HOW I'M RULING ON THIS IS THAT IF IT'S A

3  LEGAL CONCLUSION, IF IT'S BASED ON A LEGAL CONCEPT, IF IT'S NOT

4  STRICTLY FACTUAL-BASED, IT'S GOING TO STAY OUT.

5       IF IT IS A FACT-BASED STATEMENT, EVEN IF IT IS IN THE        10:26

6  CONTEXT OF A LEGAL ARGUMENT, IT'S GOING TO COME IN.  I KNOW

7  THAT MAY NOT BE AS CLEAR GUIDANCE AS YOU'D LIKE, BUT THAT'S THE

8  BEST I CAN DO RIGHT NOW.

9       MR. HANSEN:  YOUR HONOR, IF YOU LOOK AT THE OTHER

10  PLEADINGS, WHAT THE STARTING POINT IS FOR THE 'THIS DOLL LOOKS        10:26

11  LIKE THIS DOLL' IS NOT FACTUAL STATEMENTS AS TO EYELASHES AND

12  LIPS AND THINGS LIKE THAT.  IT'S THE GENERAL STATEMENT THAT

13  THIS DOLL INFRINGES THIS DOLL.  THAT'S IT.  THERE IS NO --

14  WE'RE NOT GETTING INTO DECLARATIONS OF -- IN ALMOST ALL OF THE

15  SITUATIONS, IT IS NOT        10:26

16       THE COURT:  THOSE ARE TWO DIFFERENT STATEMENTS.  A

17  STATEMENT THAT THIS DOLL LOOKS LIKE ANOTHER DOLL, THAT IS A

18  COMMON LAY STATEMENT.  AND I DON'T THINK IT'S FAIR FOR MGA TO

19  RUN FROM THAT STATEMENT.

20       TO SAY THAT THIS DOLL INFRINGES ANOTHER DOLL, THAT IS        10:27

21  A STATEMENT THAT HAS A LEGAL CONCLUSION.  SO TO USE THE EXAMPLE

22  YOU JUST GAVE ME, I THINK THOSE ARE -- ONE WOULD BE IN AND ONE

23  WOULD BE OUT.

24       MR. HANSEN:  AND THE STATEMENTS IN THE MATERIALS --

25  AS YOU COULD IMAGINE, WHEN YOU'RE SUBMITTING THE PLEADINGS IN        10:27

EXHIBIT   53

PAGE   1539

WEDNESDAY, JULY 23, 2008                    TRIAL DAY 27, MORNING SESSION

5391

1  HONG KONG, YOU'RE NOT SAYING IT LOOKS LIKE; YOU'RE SAYING

2  THAT -- IT COULD BE SUBSTANTIAL SIMILARITY.  IT IS INFRINGEMENT

3  TERMS OF ART UNDER HONG KONG LAW OFF THAT FROM WHICH THEY ARE

4  BASING THE GENERAL COMPARISON.

5          THE COURT:  TERMS OF LEGAL ART ARE NOT GOING TO COME     10:27

6  IN.

7          I'M SAYING THAT GENERALLY.  AGAIN, I'M BEING ASKED TO

8  RULE IN THE ABSTRACT ABOUT THE SPECIFICS BEFORE ME, SO IT MAY

9  VERY WELL BE THAT A STATEMENT THAT MATTEL IS OFFERING CONTAINS

10 A PARTICULAR LEGAL TERM.  BUT IT'S SO CLEAR FROM THE STATEMENT    10:27

11 THAT IT IS ESSENTIALLY A FACT-BASED ASSERTION THAT I'M GOING TO

12 HOLD THAT IT IS ADMISSIBLE AS AN ADMISSION OF A PARTY OPPONENT.

13         ON THE OTHER HAND, A STATEMENT MAY APPEAR ON THE

14 SURFACE TO BE JUST A FACTUAL STATEMENT, BUT IT IS CLEAR THAT IT

15 IS RELATED TO A LEGAL CONCEPT, AND THAT'S WHAT I WILL EXCLUDE.    10:28

16 I'M SURE I WILL ANNOY BOTH SIDES MANY TIMES DURING THE COURSE

17 OF THIS TRIAL.  BUT THAT'S THE STANDARD THAT I'M GOING TO TRY

18 TO IMPOSE ON BOTH SIDES, AND I'LL DO THE BEST I CAN.

19         MR. HANSEN:  THE DIFFICULTY FOR PURPOSES OF

20 OPENING -- AND MAYBE A GOOD PORTION IS -- WHAT'S HAPPENING IS     10:28

21 THIS DOLL TO DOLL, DOLL TO DOLL, DOLL TO DOLL, DOLL TO DOLL,

22 THIS DOLL, VARIOUS NAMES, AGAINST THE BRATZ.  AND THE BASIS

23 UPON WHICH THE COMPARISON IS BEING MADE WOULD BE A PLEADING, OR

24 MR. LARIAN'S DECLARATION, WHERE HE SAYS THIS INFRINGES THAT.

25 THAT'S THE ONLY BASIS UPON WHICH THEY MAKE THE COMPARISON.  IT    10:28

EXHIBIT _____53_____

PAGE _____1540

5477

1                              CERTIFICATE

2

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

6

7    _____        _7-24-08_____
     THERESA A. LANZA, CSR, RPR)              DATE
8    FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                   EXHIBIT __57__
                                     PAGE ____1541__

WEDNESDAY, JULY 23, 2008              TRIAL DAY 27, MORNING SESSION

# EXHIBIT 54

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>            v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of
Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter
Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a
reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in
accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  54  1-26
PAGE    1542

1  considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

2  Production of Documents is GRANTED.

3  ## II. BACKGROUND

4      At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

5

6  lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

7  commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

8  Bratz dolls now rival Mattel's Barbie doll.

9      A. Mattel's Original Complaint

10      On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

11

12  suit against its former employee Bryant in state court asserting claims for breach of contract,

13  breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

14  employed Bryant as a product designer from September 1995 through April 1998, and from

15  January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee

16

17  Confidential Information and Inventions Agreement which required him not to engage in any

18  employment or business other than for Mattel, or invest or assist in any manner any business

19  competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

20  all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

21

22  employment.

23      In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

24  he had not worked for any of Mattel's competitors in the prior twelve months and had not

25  engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of

26  any future events raising a conflict of interest.

27

28      Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

29  a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 54
PAGE 1543

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __5__

PAGE __1544__

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT ___54___
PAGE ___1545___

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT 54
PAGE 1546

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

compel. The parties informed the court that they would submit a stipulation and order. See

Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

Production of Documents, counsel will be submitting a stipulation and order which will be

dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to

memorialize the parties' meet and confer session, but were unable to reach final agreement

because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's

Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and

motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

waive its right to all further discovery in connection with its requests. Mattel proposed the

following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in
> this Stipulation shall preclude or limit Mattel from seeking further discovery on
> any matter, including as to matter on which the parties could not reach complete
> agreement, or preclude or limit any right of Bryant to object or resist to such
> discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was

unacceptable to Bryant. At the direction of the Discovery Master, the parties met and

conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ____54____
PAGE ____1547____

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate
and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to
compel responsive documents, which includes a request for sanctions in the amount of $7,805.

     J.  Mattel's Motion to Compel Production of Documents

     Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce
the following categories of requested documents:  (a) documents relating to Bratz designs created
by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for
Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-
related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA
that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was
exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of
documents are relevant to establish Bryant's liability and would reveal works rightfully owned by
Mattel.

     Second, as to other categories of documents which Bryant has agreed to produce, Mattel
contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not
produce any responsive documents that were created after the suit was filed; Bryant will not
produce any communications with MGA "created" after the end of his Mattel employment;
Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view,
"resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known
contracts between him and MGA and refuses to produce non-privileged communications relating
to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.
Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a
court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

     7

EXHIBIT ___54___
PAGE ___1548___

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT ___ 5⅞___
PAGE ___ 1549

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT ~~54~~
PAGE _____ ~~1550~~

1  requests and that the stipulation controlled to the extent they were inconsistent. Bryant's
2  Opposition at 5:22-6:21.

3      Bryant emphasizes that the parties have engaged in an extensive meet and confer process
4  and asks the Discovery Master to order the disposition of this motion in a manner consistent with
5  the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will
6  have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks
7  
8  the Discovery Master to order Mattel not to revisit any of the requests that were the subject of
9  Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

10     Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In
11 
12 particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to
13 Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone
14 records and financial information because these records are protected by privacy rights. Lastly,
15 Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit
16 
17 was filed.

18                            III. DISCUSSION

19     A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

20     The parties' extensive submissions make it clear that the parties did not resolve the issues
21 
22 raised in the instant motion. The parties met and conferred extensively and in good faith,
23 reaching compromises on virtually all categories of documents in dispute. Despite their efforts,
24 however, the parties were ultimately unable to execute a binding stipulation because they were
25 unable to agree on any provision to govern Mattel's future right to pursue additional discovery
26 
27 from Bryant. It is clear that the parties deemed it necessary to include such a provision in the
28 draft stipulation in order to protect their respective positions. Because the parties did not execute
29 a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT ___54___
PAGE ____1551____

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT ____ 54
PAGE ____ 1552

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 54
PAGE 1553

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT _04_
PAGE _1554_

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

EXHIBIT 54

PAGE 1555

1  however, is not required to produce tax returns, provided that he otherwise fully complies with

2  these requests as ordered.

3      Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4        Mattel seeks production of Bratz-related communications and communications with

5
6  MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

7  refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

8  relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9  and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10
11  to Bryant's Mattel employment or work Bryant performed for Mattel, except those

12  communications "created" prior to the close of Bryant's Mattel employment; and (4)

13  communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant

14  contends that the discovery requests for communications between Bryant and MGA are

15
16  overbroad. Bryant asserts that there are many former Mattel employees and friends of his who

17  have privacy rights that would be impinged upon if he were to disclose his communications.

18  Bryant also asserts that he has his own confidentiality interest regarding any information that he

19  shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they

20  would require him to reveal the identity of current Mattel employees seeking employment with

21
22  MGA or Bryant.

23        The Discovery Master finds that Mattel's requests for all communications between Bryant

24  and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what

25  Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient

26
27  to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential"

28  private information about current or former employees, contractors or vendors (including

29  employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

### Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

### Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

### IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT 54
PAGE 1557

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant

need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30,

31, 32, 33, 34, 35, 36, 45, and 46.

　　　2. Bryant shall produce all redacted documents in un-redacted form, except for redactions

that are justified by the attorney-client privilege or work product doctrine or his telephone records

pursuant to the terms of this Order.

　　　3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5),

Fed.R.Civ.P.

　　　4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

computers for forensic imaging.

　　　5. Bryant shall complete his production by producing missing attachments, fax cover

pages and all other missing responsive documents.

　　　6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

　　　7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

Mattel shall file this Order with the Clerk of Court forthwith.


IT IS SO ORDERED.

Dated: January 25, 2007

　　　　　　　　　　HON. EDWARD A. INFANTE (Ret.)
　　　　　　　　　　　　Discovery Master

 

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT ___S4___
PAGE ___1559___

# EXHIBIT 55

Case 2:04-cv-09049-SGL-RNB     Document 3286     Filed 04/25/2008     Page 1 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT, | | CASE NUMBER |
| | PLAINTIFF(S), | CV 04-09049 SGL (RNBx) |
| v. | | |
| MATTEL, INC., et al., | | NOTICE OF CLERICAL ERROR |
| | DEFENDANT(S), | |

TO:  U. S. District Judge(s)
     U. S. Magistrate Judge(s)
     Counsel of Record

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action ☐ the following
scanned document ☑ docket entry  have/has been corrected as indicated below.

Title of Scanned Document: _Minute Order of 4-25-08, Granting in part, Denying in part, and Deferring in Part the Parties' MSJ_

Filed Date: 4-25-08 _____ Document Number: 3285 _____

☐  Incorrect case number _____ was assigned to this ☐ action ☐ document.

☐  Case number has been corrected. The correct case number is _____

☐  Incorrect judge's initials were indicated on this ☐ action ☐ document. The correct judge's initials are _____

☐  Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document. The correct magistrate judge's initials
   are _____.

☐  Case has been reassigned from ☐ Judge ☐ Magistrate Judge _____ to

   ☐ Judge ☐ Magistrate Judge _____. The initials of the new judge(s) are _____

☐  Case was assigned to ☐ Western ☐ Southern ☐ Eastern division. Pursuant to General Order ☐ 349, ☐ 98-3 ☐ 02-06,

   the case has been reassigned to the ☐ Western ☐ Southern ☐ Eastern division. The former case number _____
   has been reassigned to new case number _____

☐  Subsequent documents must be filed at the ☐ Western ☐ Southern ☐ Eastern division. Failure to file at the proper location
   will result in your documents being returned to you.

☐  Case title is corrected from _____ to _____

☐  Document has been re-numbered as document number _____

☐  Incorrect ☐ Filed Date ☐ Date of Document ☐ ENTERED Date ☐ DATE ENTERED ON CM/ICMS was stamped on
   document. The correct date is _____

☑  Document is missing page number(s): _7 and 8

☐  To ensure proper routing of documents, all documents filed  with the court must reflect the following case number and judge's
   initials: _____.

☑  Other: a complete copy with missing pages are re-scanned for service on the parties.

CLERK, U.S. DISTRICT COURT

Date _4-25-08_                                    By: _____  Jim Holmes, CRD _____
                                                      Deputy Clerk

cc: Intake Supervisor / Deputy In Charge

G-11 (06/05)                        NOTICE OF CLERICAL ERROR

EXHIBIT _____ 55

PAGE _____ 1570



Case 2:04-cv-09049-SGL-RNB    Document 3286    Filed 04/25/2008    Page 2 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                              Date: April 25, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=================================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

**PROCEEDINGS:    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                  PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                  (IN CHAMBERS)**

        This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

MINUTES FORM 90                                              Initials of Deputy Clerk:  jh
CIVIL -- GEN                        Page 1

EXHIBIT ____55____

PAGE ____1560____

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright -- the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

MINUTES FORM 90
CIVIL -- GEN                                    Page 2                        Initials of Deputy Clerk: jh

EXHIBIT _____ 55

PAGE _____ 1561

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1] From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

Initials of Deputy Clerk: jh

EXHIBIT_____55_____
PAGE_____1562_____

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

MINUTES FORM 90
CIVIL -- GEN                                    Page 4

EXHIBIT _____ 55
PAGE _____ 1563



Case 2:04-cv-09049-SGL-RNB     Document 3286     Filed 04/23/2008     Page 6 of 11

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

MINUTES FORM 90                                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                    Page 5

EXHIBIT _____ 55 _____

PAGE _____ 1564 _____

Case 2:04-cv-09049-DOC-RNB   Document 6988-31   Filed 10/20/09   Page 35 of 39   Page ID
#:237848

Case 2:04-cv-09049-SGL-RNB   Document 3286   Filed 04/25/2008   Page 7 of 11

At the hearing on this matter, counsel contended that a required element for imposing a
fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty
is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or
confidential relationship is that the parties do not deal on equal terms, because the person in
whom trust and confidence is reposed and who accepts that trust and confidence is in a superior
position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel
Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and
citation omitted). The "superior position" to which California courts refer in this context is not
superior bargaining power -- a position on which Mattel would apparently have the edge -- but
rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed
upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and
communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique
influence over" Mattel because he was in the best position, arguably the only one in a position, to
know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary
duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into
a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion
dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the
existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary
judgment and denies Bryant's motion for summary judgment on the issue of the existence and
breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of
fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument,
the Court denies MGA's motion for summary judgment on this issue.

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with
contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as
(1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the
contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the
contractual relationship; (4) actual breach or disruption of the contractual relationship; and
(5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.,
461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50
Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has
raised a triable issue of fact as to the second. The fourth element may be resolved after the

MINUTES FORM 90
CIVIL -- GEN                              Page 6

Initials of Deputy Clerk: jh

EXHIBIT ____55____
PAGE ____1565____



Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court DEFERS RULING on them until after trial. Specifically, the Court DEFERS RULING on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

MINUTES FORM 90
CIVIL -- GEN

Page 7

Initials of Deputy Clerk: jh

EXHIBIT ____55____

PAGE ____1566____

Case 2:04-cv-09049-SGₗ-RNB     Document 3286     Filed 04/₂ₒ/2008     Page 9 of 11

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel.
As the issue is argued by the parties, the Court would be required to determine the legal issue of
whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice"
in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this
is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the
Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether
MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the
Court **DEFERS RULING** on this issue until after the Phase 1 trial.

\*\*\*\*

The Court will consider a number of remaining issues at the further hearing on these
motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court
will consider the following issues:

Mattel's motion: Issue (2)(c), whether there is a factual dispute regarding the timing of
certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are
substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by
Bryant and whether those are original, protectable works of expression; issue (5), whether MGA
and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary
duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative
defense of statute of limitations.

Bryant's motion: Whether Bryant is entitled to summary judgment as to Mattel's claim for
copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of
contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for
declaratory relief.

MGA's motion: Whether Mattel's claims are time barred; and whether the fourth element of
intentional interference with contractual relations -- actual breach or disruption of the contractual
relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that
may be relevant to the statute of limitations, these issues are considered by the Court to be fully
briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations
will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue
shall be limited to addressing the status of outstanding discovery issues and/or recently produced
evidence.

**IT IS SO ORDERED.**

EXHIBIT _____ 55 _____

PAGE _____ 1567 _____

 

Case 2:04-cv-09049-SGL-RNB    Document 3286    Filed 04/25/2008    Page 10 of 11

## NOTICE PARTY SERVICE LIST

**Case No.** CV 04-09049 SGL(RNBx)   **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document** Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (If sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk jh

EXHIBIT _____ 55
PAGE _____ 1568



Case 2:04-cv-09049-SGL-RNB    Document 3286    Filed 04/25/2008    Page 11 of 11

## NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)   Case Title  Carter Bryant v. Mattel, Inc.

Title of Document  Minute Order of April 25, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Probation Office (USPO) |
| Chief Deputy Admin | US Trustee's Office |
| Chief Deputy Ops | Warden, San Quentin State Prison, CA |

| | |
|---|---|
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | ✓  **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
| Dep In Chg E Div | Name: Hon. Edward A. Infante (Ret.) |
| Dep In Chg So Div | Firm: |
| Federal Public Defender | Address (include suite or floor):  Two Embarcadero |
| Fiscal Section | Center, Suite 1500, San Francisco, CA 94111 |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | *E-mail: |
| Intake Supervisor, Civil | *Fax No.: |
| PIA Clerk - Los Angeles (PIALA) | * For CIVIL cases only |
| PIA Clerk - Riverside (PIAED) | *JUDGE / MAGISTRATE JUDGE (list below):* |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | Initials of Deputy Clerk jh |
| Statistics Clerk | |

G-75  (03/07)                                NOTICE PARTY SERVICE LIST

EXHIBIT____55____

PAGE____1569____