QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>        vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]**<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND/OR *IN CAMERA* REVIEW OF DOCUMENTS IMPROPERLY WITHHELD ON OMNI 808'S PRIVILEGE LOG |
| **[PUBLIC REDACTED]** | [Declaration of B. Dylan Proctor and Appendices of Privilege Log entries filed concurrently]<br><br>Hearing Date:      TBD<br>Time:              TBD<br>Place:             Arent Fox LLP<br><br>**Phase 2:**<br>Discovery Cut-off:      June 1, 2010<br>Pre-trial Conference:   TBD<br>Trial Date:             TBD |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that, at a hearing date to be set by Discovery

3  Master Robert C. O'Brien, Mattel, Inc. ("Mattel") will and hereby does move the

4  Court, pursuant to <u>Federal Rules of Civil Procedure</u> 26 and 37, for an order

5  compelling Omni 808 Investors, LLC ("Omni") to (1) provide to the Discovery

6  Master for *in camera* review and, if appropriate based on such review, produce to

7  Mattel specified non-legal communications improperly withheld on Omni's

8  privilege log[1] under a claim of privilege, as identified in Appendix A[2]; (2) to

9  produce to Mattel specified non-privileged attachments for which Omni's privilege

10  log fails to substantiate any claim of privilege, as identified in Appendix B[3]; and (3)

11  to overrule Omni's blanket assertion of work product over communications that

12  Omni has not demonstrated were made in anticipation of litigation.[4]

13  This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 26

14  and 37 on the grounds that Omni is improperly withholding non-privileged

15  documents and communications that are relevant to Mattel's claims and defenses,

16  and that Omni has failed to establish the privileges claimed.

17  This Motion is based on this Notice of Motion and Motion, the

18  accompanying Memorandum of Points and Authorities and Appendices of Omni

19

20

21  [1]  Omni's Amended Privilege Log, dated September 4, 2009 ("Amended Omni Log"), is attached as Exhibit 1 to the concurrently filed Declaration of B. Dylan Proctor ("Proctor Decl.").

22

23  [2]  The privilege log entries at issue that appear to fall under this description, which are further detailed in Appendix A, include Omni Amended Log Nos. 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 39, 40, 41, 42, 43, 54, 55, 56, 64, 65, 79, 88, 113, 120, 124, 133, 134.

24

25  [3]  The privilege log entries at issue that appear to fall under this description, which are further detailed in Appendix B, include Omni Amended Log Nos. 1, 2, 11, 12, 26, 30, 31, 84, 86, 101, 108, 109, 110, 111, 112, 114, 115, 116, 117, 118, 119, 123, 137, 139, 155, 158, 160, 161, 162, 164, 166, 167, 168, 170, 174.

26

27  [4]  Because Omni has asserted a claim of work product to nearly every entry on its log, these entries are not specifically identified in an appendix.

28

1 | Privilege Log Entries, the records and files of this Court, and all other matters of
2 | which the Court may take judicial notice.
3 |
4 | **Statement of Compliance**
5 | The parties met and conferred on August 19, 2009 regarding the issues
6 | set forth in this motion, and at times thereafter.
7 |
8 | DATED: October 23, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
9 |
10 | By  B. Dylan Proctor /2Dk
11 | B. Dylan Proctor
     Attorneys for Mattel, Inc.
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

1

## **TABLE OF CONTENTS**

2

**Page**

3

4  PRELIMINARY STATEMENT ................................................................. 1

5  BACKGROUND ...................................................................................... 1

6  ARGUMENT ............................................................................................ 5

7  I.  OMNI BEARS THE BURDEN OF SUBSTANTIATING ITS
    CLAIMS OF PRIVILEGE AS TO ALL WITHHELD DOCUMENTS ........... 5

8
9  II.  COMMUNICATIONS BETWEEN KEVIN TANNA AND OMNI'S
     BUSINESS EMPLOYEES SHOULD BE REVIEWED *IN CAMERA* ............ 5

10      A.  In-House Counsel's Communications on Business Matters are
           Subject to Heightened Scrutiny ................................................... 6

11
12      B.  Omni Has Failed To Establish Mr. Tanna's Communications
           With Business Employees Are Privileged ................................... 7

13  III.  OMNI'S OVERBROAD ASSERTION OF WORK PRODUCT IS
      IMPROPER .......................................................................................... 10

14
15  IV.  OMNI HAS IMPROPERLY WITHHELD ATTACHMENTS
     WITHOUT INDEPENDENTLY SUBSTANTIATING THEIR
     WITHHOLDING .................................................................................. 12

16
17  CONCLUSION ...................................................................................... 14

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

AAMCO Transmissions, Inc. v. Marino,
  1991 WL 193502 (E.D. Pa. Sept. 24, 1991)......................................................7

Adams v. Gateway, Inc.,
  2003 WL 23787856 (D. Utah Dec. 30, 2003) ..................................................10

B.F.G. of Ill., Inc. v. Ameritech Corp.,
  2001 WL 1414468 (N.D. Ill. 2001).............................................................6, 9

Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez,
  2003 WL 21277139 (S.D.N.Y. June 2, 2003) ............................................10, 12

Blankenship v. Hearst Corp.,
  519 F.2d 418 (9th Cir. 1975) ......................................................................5

CSX Transp. Inc. v. Admiral Ins. Co.,
  1995 WL 855421 (M.D. Fla. Jul. 20, 1995) ......................................................8

Chemtech Royalty Assocs., L.P. ex rel. Dow Europe, S.A. v. U.S.,
  2009 WL 854358 (M.D. La. Mar. 30, 2009)......................................................8

Clavo v. Zarrabian,
  2003 WL 24272641 (C.D. Cal. Sept. 24, 2003)............................................12, 14

F. H. Krear & Co. v. 19 Named Trustees,
  90 F.R.D. 102 (S.D. N.Y. 1981) ..................................................................11

Matter of Fischel,
  557 F.2d 209 (9th Cir. 1977) ..................................................................6, 10

Fox v. Cal. Sierra Fin. Servs.,
  120 F.R.D. 520 (N.D. Cal. 1988) ................................................................10

Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,
  215 F.R.D. 466 (S.D.N.Y. 2003)..................................................................12

In re Grand Jury Subpoena,
  357 F.3d 900 (9th Cir. 2004) ......................................................................10

In re Heritage Bond Litig.,
  2004 WL 1970058 (C.D. Cal. Jul, 23, 2004)....................................................14

James J. Binns, P.C. v. Flaster Greenberg, P.C.,
  2006 WL 2982141 (N.D. Ill. Oct. 13, 2006).....................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kephart v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,
  2007 WL 2253608 (D. Mont., Aug. 27, 2007) ........................................................ 8

Lafarge N. Am., Inc. v. Matraco-Colo., Inc.,
  2008 WL 2474638 (S.D. Fla. Jun. 19, 2008) ....................................................... 9

Mancini v. Ins. Corp.,
  2009 WL 1765295 (S.D. Cal. June, 18, 2009) ..................................................... 5

McCaugherty v. Siffermann,
  132 F.R.D. 234 (N.D. Cal. 1990) ........................................................................ 7

Medtronic Sofamor Danek, Inc. v. Michelson,
  2004 WL 2905401 (W.D. Tenn. Apr. 19, 2004) .................................................. 9

Minebea Co., Ltd. v. Papst,
  228 F.R.D. 13 (D.D.C. 2005) .......................................................................... 6, 9

Mold-Masters Ltd. v. Husky Injection Molding Sys. Ltd.,
  2001 WL 1558303 (N.D. Ill. Dec. 6, 2001) ................................................. 12, 14

Neuberger Berman Real Estate Income Fund, Inc. v.
  Lola Brown Trust No. 1B,
  230 F.R.D. 398 (D. Md. 2005) ........................................................................... 6

O'Connor v. Boeing N. Am., Inc.,
  185 F.R.D. 272 (C.D. Cal. 1999) ..................................................................... 12

Renner v. Chase Manhattan Bank,
  2001 WL 1356192 (S.D.N.Y. 2001) ................................................................ 14

Rivera v. Kmart Corp.,
  190 F.R.D. 298 (D.P.R. 2000) ........................................................................... 6

In re Sealed Case,
  737 F.2d 94 (D.C. Cir. 1984) ............................................................................ 6

SmithKline Beecham Corp. v. Apotex Corp.,
  232 F.R.D. 467 (E.D. Pa. 2005) ........................................................................ 8

Starn O'Toole Marcus & Fisher v. U.S.,
  2008 WL 2653451 (D. Haw. July 7, 2008) ....................................................... 11

U.S. v. Davis,
  132 F.R.D. 12 (S.D.N.Y. 1990) ....................................................................... 10

U.S. v. Derr,
  1993 WL 226100 (N.D. Cal., Jan. 22, 1993) .................................................... 13

United Inv Life Ins. Co. v. Nationwide Life Ins. Co.,
  233 F.R.D. 483 (N.D. Miss. 2006) ..................................................................... 4

United States v. Chevron Corp.,
    1996 WL 264769 (N.D. Cal. Mar. 13, 1996) ........................................................ 6

United States v. Munoz,
    233 F.3d 1117 (9th Cir. 2000) ........................................................................... 5

Urban Box Office Network, Inc. v. Interfase Managers, L.P.,
    2006 WL 1004472 (S.D.N.Y. Apr. 18, 2006) ...................................................... 6

In re Vioxx Prods. Liability Litig.,
    501 F. Supp. 2d 789 (E.D. La. 2007).................................................................. 7

Williams v. Taser Int'l, Inc.,
    2007 WL 1630875 (N.D. Ga., Jun. 4, 2007) ........................................................ 8

Ziemack v. Cent. Corp.,
    1995 WL 314526 (N.D. Ill. May 19, 1995)........................................................ 12

**Miscellaneous**

Paul K. Rice, 1 ATTORNEY-CLIENT PRIVILEGE IN THE
    UNITED STATES § 7.1 (2d ed. 2009).................................................................. 6

## Preliminary Statement

MGA, the evidence now shows, has shielded non-privileged documents on its privilege logs for years; Omni 808 appears to be doing the same thing. Initially Omni refused to provide any privilege log at all. Then, after Mattel moved for a finding of waiver, Omni produced a facially inadequate log that repeated the same rote description for every entry. Now, while Omni has amended its log, several problems remain which require the Discovery Master's attention.

First, Omni continues to improperly withhold business and administrative communications. In particular, many communications on Omni's log are withheld because Kevin Tanna is included on them. But Mr. Tanna clearly plays a business role in addition to any legal one, rendering these privilege claims suspect. Second, Omni's amended log reveals that it failed to log attachments initially, until Mattel specifically raised this issue. Now, while Omni at least admits the existence of these withheld documents, it has provided virtually no information to support its privilege assertions, failing to meet its burden. Third, Omni has indiscriminately asserted work-product as to nearly all of its communications, including ones that long pre-date its purchase of the Wachovia debt or its limited intervention in this litigation.

Omni has failed to meet its burden to substantiate these withholdings. The documents identified in the concurrently submitted Appendices A and B should be produced to Mattel or ordered submitted *in camera* for appropriate review, and Omni's indiscriminate work-product assertions should be overruled.

## Background

Omni Refused To Produce a Timely Privilege Log. As the Discovery Master will recall, Omni initially refused to provide a privilege log in this action. More than three-and-a-half months after the Discovery Master had compelled it to respond to Mattel's document requests (which had been served more than six months earlier), Omni still refused to provide a privilege log, despite Mattel's

multiple requests.[5]   It was only after Mattel moved for an order that Omni's intransigence should result in waiver that, on the day after Mattel filed its motion, Omni belatedly produced a log.[6]

Omni's Untimely Privilege Log Was Inadequate.   While concluding that "█████████████████████," the Discovery Master declined to impose a wholesale waiver as a remedy.[7]   However, the Discovery Master recognized that Omni's tardy privilege log was inadequate, describing it as "relatively sparse,"[8] and directed Omni to engage in a further meet and confer with Mattel regarding its logs.[9]

Omni's Amended Privilege Log Remains Inadequate.   The parties met and conferred regarding Omni's logs as directed by the Discovery Master.[10] Nevertheless, although Omni agreed to revise its log and produced an Amended Privilege Log on September 4, 2009, it did virtually nothing to alleviate the problems and flaws its log presents.

The problems, insofar as they are relevant to this motion,[11] fall into three categories.

Omni's Privilege Log Appears To Contain Business or Administrative Communications.   First, Omni appears to be shielding non-privileged emails by

---

[5]   See Mattel's Motion to Compel Production of Documents For Which Any Claims of Privilege Have Been Waived, dated June 29, 2009, Proctor Decl., Ex. 2.
[6]   See Privilege Log for Omni 808 Investors, LLC, dated June 29, 2009 ("Original Omni Log"), Proctor Decl., Ex. 3.
[7]   Discovery Matter Order No. 51, dated August 26, 2009, at 21, Proctor Decl., Ex. 4.
[8]   August 13, 2009 Hearing Tr. at 7:19, Proctor Decl., Ex. 5.
[9]   Order No. 51, at 24 n.1, Proctor Decl., Ex. 4.
[10]   See August 14, 2009 Letter from B. Proctor to P. Villar ("August 14 Proctor Letter"), Proctor Decl., Ex. 6; August 18, 2009 Letter from P. Villar to B. Proctor ("August 18 Villar Letter:), Proctor Decl., Ex. 7; August 19, 2009 Letter from B. Proctor to P. Villar ("August 19 Proctor Letter"), Proctor Decl., Ex. 8.
[11]   Mattel reserves the right to raise other issues regarding Omni's log at a later time, if appropriate.

including an in-house businessperson who doubles as a lawyer on them.  Of the 174 communications listed on Omni's log, approximately 27 communications involving business and administrative employees[12] are withheld on the basis that Kevin Tanna is a party to the communications.[13]   Mr. Tanna is Omninet's Vice President of Development.[14]   While he was recently admitted to the bar,[15] his role, according to Omninet's own website, appears primarily to relate to business matters, including the "origination and development of real estate investments" and "the acquisition, design and construction of commercial and multifamily residential projects."[16] Given Mr. Tanna's position at Omninet and his significant business role, as well as his numerous communications with business and administrative employees on Omni's log, Mattel requested that Omni clarify his role with regard to the purchase of the Wachovia debt.[17]   In response, Omni offered the rote conclusion that Mr. Tanna's role was to "provide legal advice and assistance" but nothing more.[18] Notably, Omni did not clarify whether Mr. Tanna's role was <u>limited</u> to the provision

---

[12]   <u>See</u> September 1, 2009 Letter from P. Villar to B. Proctor ("September 1 Villar Letter"), Proctor Decl., Ex. 9 (identifying specific non-legal positions of various employees).

[13]   <u>See</u> Appendix A.

[14]   <u>See</u> http://www.omninet.com/pe2.php?page=about_us&sub=team_Neil_Kadisha (last visited on Oct. 16, 2009), Proctor Decl., Ex. 10.

[15]   <u>See</u> Proctor Decl., Ex. 11.

[16]   <u>Id</u>.  Further, while the website notes Mr. Tanna's legal experience as a "transactional" real estate attorney, it emphasizes his "several entrepreneurial ventures" and "decade working alongside building contractors and developers."  <u>Id</u>.  At times, Mr. Tanna also appears to have acted as a media contact, as he is listed as a point of contact for Omninet press releases.  <u>See, e.g.</u>, Reuters - Business Wire, Neil Kadisha Joins Entertainment & Media Leaders to Honor Produced Arnon Milchan, dated September 23, 2008, Proctor Decl., Ex. 12 (listing Kevin Tanna as the point of contact at Omninet); Reuters – Business Wire, Neil Kadisha and Omninet Recognize Knesset's Support for CECI, dated April 9, 2008, Proctor Decl., Ex. 13 (same).

[17]   <u>See</u> August 19 Proctor Letter at 1, Proctor Decl., Ex. 8.

[18]   <u>See</u> September 1 Villar Letter at 2, Proctor Decl., Ex. 9.

-3-

of legal advice or whether he also acted in a business capacity at Omni or was otherwise involved in business communications.

Omni Has Indiscriminately Asserted The Work Product Doctrine. Second, Omni appears to be withholding documents on work product grounds without any stated basis for doing so. Omni's initial privilege log asserted both attorney-client privilege and work product protection as to every single entry on its log.[19] Because this kind of indiscriminate assertion of privilege is improper,[20] Mattel requested that Omni review its assertions and determine which, if any, of its claims were appropriately withheld as attorney-client communications, work product, or both.[21] On its amended log, Omni withdrew its work-product assertions over a handful of entries, but continued to claim work-product protection for 150 entries, many of which were created long before Omni purchased the Wachovia debt, while still failing to provide any information regarding the basis for such a claim.

Omni Is Improperly Withholding Attachments Without Providing Any Information To Substantiate Such Withholdings. Because Omni's initial privilege log did not list any attachments, Mattel requested that Omni confirm whether it is withholding any attachments and, if so, separately log them as appropriate.[22] As revealed in Omni's amended log, approximately 36 communications on the

---

[19]   See August 14 Proctor Letter at 1, Proctor Decl., Ex. 6; see also Original Omni Log, Proctor Decl., Ex. 3.

[20]   See, e.g., United Inv Life Ins. Co.  v. Nationwide Life Ins. Co., 233 F.R.D. 483, 488 (N.D. Miss. 2006) ("In preparing a privilege log, a party must not invoke several protections or privileges where only one applies.  Erroneous assertions undercut the invoking party's credibility.").

[21]   See August 19 Proctor Letter at 1, Proctor Decl., Ex. 8.

[22]   See id.; September 3, 2009 Letter from B. Proctor to P. Villar ("September 3 Proctor Letter"), at 2, Proctor Decl., Ex. 14.

1  privilege log contain attachments.[23]   (Omni's log reveals only the number of
2  communications containing attachments—the total number of withheld attachments
3  remains unknown).   Omni did not separately log these attachments or otherwise
4  provide any information about who authored them, when they were created, or for
5  what purpose.   Instead, each was simply described as a communication with
6  "████████████████████████████████████████████████████"[24]

7  **Argument**

8  **I.**   **OMNI BEARS THE BURDEN OF SUBSTANTIATING ITS CLAIMS**
9  **OF PRIVILEGE AS TO ALL WITHHELD DOCUMENTS**

10  As the party seeking to withhold responsive documents based on
11  attorney-client privilege or work-product protection, Omni bears the "heavy burden"
12  of showing why Mattel's motion should not be granted. <u>Mancini v. Ins. Corp.</u>, 2009
13  WL 1765295, at *1 (S.D. Cal. June, 18, 2009) (quoting <u>Blankenship v. Hearst Corp.</u>,
14  519 F.2d 418, 429 (9th Cir. 1975)).   Omni's burden is to "to establish all the
15  elements of the privilege." <u>See</u> Discovery Matter Order No. 33, dated May 18,
16  2009, at 56 (ordering documents from MGA's logs submitted for <i>in camera</i> review
17  where logs did not "provide enough information to permit the court to review the
18  applicability of the privilege to the documents at issue") (citations omitted); <u>see also</u>
19  <u>United States v. Munoz</u>, 233 F.3d 1117, 1128 (9th Cir. 2000) (burden is on party
20  asserting the attorney-client privilege to establish all of its elements).

21  **II.**   **COMMUNICATIONS BETWEEN KEVIN TANNA AND OMNI'S**
22  **BUSINESS EMPLOYEES SHOULD BE REVIEWED _IN CAMERA_**

23  Mattel has identified 27 entries on Omni's privilege log that are
24  communications between Kevin Tanna—Omninet's Vice President of Development,

25

26  [23]   <u>See</u> Appendix B.
27  [24]   <u>E.g.</u>, Entry No. 12, Amended Omni Log at 3, Proctor Decl., Ex. 1.

28

allegedly acting here as Omni's "in-house" counsel—and various business or administrative employees. These entries should be reviewed *in camera* to determine whether their continued withholding is proper.

## A.    In-House Counsel's Communications on Business Matters are Subject to Heightened Scrutiny

It is "well-established that the attorney-client privilege applies only where legal advice, not business advice, is sought and given." Urban Box Office Network, Inc. v. Interfase Managers, L.P., 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006). Communications with in-house counsel, who "often ha[ve] other functions in addition to providing legal advice," Minebea Co., Ltd. v. Papst, 228 F.R.D. 13, 21 (D.D.C. 2005), can be "sheltered 'only upon a clear showing that the [in-house counsel] gave [advice] in a professional legal capacity.'" Paul K. Rice, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 7.1, at 22 (2d ed. 2009) (quoting In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984)) (alterations in original). As the Ninth Circuit has explained, it is not the purpose of the attorney-client privilege "to permit an attorney to conduct his client's business affairs in secret." Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977).

Accordingly, "courts impose a higher burden on in-house counsel to 'clearly demonstrate' that advice was given in a legal capacity." Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 411 n.20 (D. Md. 2005) (citation omitted). See also B.F.G. of Ill., Inc. v. Ameritech Corp., 2001 WL 1414468, at *6 (N.D. Ill. 2001) ("there is a particular burden on that corporation to demonstrate why communications [with in-house counsel] deserve protection and are not merely business documents"); Rivera v. Kmart Corp., 190 F.R.D. 298, 302 (D.P.R. 2000) ("In cases, such as this one, which involve communications between a corporate client and in-house attorneys, the Court must be especially careful in its analysis."); United States v. Chevron Corp., 1996 WL 264769, at *4 (N.D. Cal. Mar. 13, 1996) ("a corporation must make a *clear showing*

1 | that in-house counsel's advice was given in a professional legal capacity")
2 | (emphasis in original); <u>AAMCO Transmissions, Inc. v. Marino</u>, 1991 WL 193502,
3 | at *3 (E.D. Pa. Sept. 24, 1991) (communications with in-house counsel privileged
4 | only where a party "clearly demonstrate[s] that the communication in question was
5 | made for the express purpose of securing legal not business advice").

6 | Communications with in-house counsel are not privileged to the extent
7 | they "would have been made because of a business purpose," regardless of whether
8 | there may have been a "perceived additional interest in securing legal advice."
9 | <u>McCaugherty v. Siffermann</u>, 132 F.R.D. 234, 238 (N.D. Cal. 1990).   To justify
10 | withholding communications with in-house counsel, the "lawyer's role as a lawyer
11 | must be primary to her participation" in the communication, <u>In re Vioxx Prods.</u>
12 | <u>Liab. Litig.</u>, 501 F. Supp. 2d 789, 798 (E.D. La. 2007), and "the court should sustain
13 | an assertion of privilege only when there is a clear evidentiary predicate for
14 | concluding that each communication in question was made primarily for the purpose
15 | of generating legal advice." <u>McCaugherty</u>, 132 F.R.D. at 238.

16 | **B.**   **Omni Has Failed To Establish Mr. Tanna's Communications With**
17 | **Business Employees Are Privileged**

18 | Omni's privilege log comes nowhere near to substantiating the "clear
19 | showing" necessary to withhold communications between Mr. Tanna and Omni's
20 | various business and administrative employees on privilege grounds.

21 | First, Omni merely recites cryptic, stock-phrase descriptions verbatim
22 | throughout its log—for example, the log asserts that many withheld documents are
23 | "████████████████████████████████████████████
24 | ████████████████████████."[25]   This is barely more than a
25 | recitation of the basic elements of privilege.   See <u>James J. Binns, P.C. v. Flaster</u>

26 |
27 | [25]   <u>E.g.</u>, Entry No. 3., Amended Omni Log at 1, Proctor Decl., Ex. 1.
28 |

1  Greenberg, P.C., 2006 WL 2982141, at *2 (N.D. Ill. Oct. 13, 2006) (holding that
2  "rote assertions" of privilege on a log "fail to satisfy that burden" imposed by the
3  Rules and requiring disclosure of documents where a "log contains the same
4  assertion, verbatim, for each of the 179 documents listed on the log").[26] And where,
5  as here, the allegedly privileged communications involve "complicated and intricate
6  financial and business transactions," Omni's general "subject matter descriptions"
7  are inadequate.  Chemtech Royalty Assocs., L.P. ex rel. Dow Europe, S.A. v. U.S.,
8  2009 WL 854358, at *5 (M.D. La. Mar. 30, 2009) (holding that privilege log entries
9  required "far more detail" given the complex business transaction at issue).

10         Moreover, Mr. Tanna's role does not appear to have been limited to
11  purely legal matters.   Documents show Mr. Tanna fully engaged in Omni's
12  "business" dealings, from routine financial administration to discussions with MGA
13  executives.  For example, in one communication between Mr. Tanna and MGA's
14  Executive Vice President, Brian Wing, Mr. Tanna indicates that he is "███████
15  ████████████████████████████████████" and schedules a time for them
16  to discuss the issue further.[27]  Mr. Tanna also appears to have coordinated a number
17  of the financial transfers necessary to execute the purchase of the Wachovia debt.[28]

18

_____

19  [26]  See also Kephart v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 2007 WL 2253608,
20  at *3 (D. Mont., Aug. 27, 2007) ("rote repetition" renders privilege assertions inadequate);
     Williams v. Taser Int'l, Inc., 2007 WL 1630875, at *4 (N.D. Ga., Jun. 4, 2007) (a
21  "privilege log fails to describe the withheld documents in a manner that permits any
     meaningful assessment" where a description is "repeat[ed] verbatim for each and every
22  entry"); SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 482 (E.D. Pa. 2005)
     (suggesting that a privilege log that merely "repeat[s] a single, unaltered description"
23  would be inadequate); CSX Transp. Inc. v. Admiral Ins. Co., 1995 WL 855421, at *3
24  (M.D. Fla. July 20, 1995) ("[n]early all of the documents are described in the same manner
     . . .").
25  [27]  OMNI 0002110, Proctor Decl., Ex. 15.
26  [28]  See, e.g., OMNI 0004505-506, Proctor Decl., Ex. 16 (communications from
27  Wachovia regarding wire instructions); OMNI 0004894, Proctor Decl., Ex. 17 (emailing
     Angela Larian regarding wire payments).
28

Given Mr. Tanna's extensive business role (he is, according to Omninet's website, the founder of "several entrepreneurial ventures" and has "nearly a decade" of industry experience[29]) and limited legal experience (he was just admitted to the bar in 2006[30]), his extensive business role at Omni is hardly surprising.

Because of Mr. Tanna's clear business role, *in camera* review is warranted here.  Because an "in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident," Minebea Co., Ltd. v. Papst, 228 F.R.D. 13, 21 (D.D.C. 2005), and there may be "no way that the party seeking the documents can" distinguish between proper and "improper use merely from the description on the privilege log." B.F.G. of Ill., 2001 WL 1414468, at *6.  Accordingly, where in-house counsel acts in a business role, courts frequently require *in camera* submission of communications with in-house counsel to avoid the possibility that communications made primarily for a business purpose are improperly shielded.  See Minebea Co., Ltd, 228 F.R.D. at 21 (ordering communications produced after *in camera* review); see also Lafarge N. Am., Inc. v. Matraco-Colo., Inc., 2008 WL 2474638, at *5 (S.D. Fla. Jun. 19, 2008) ("review[ing] the documents *in camera* to assess whether the relevant communications involving Lafarge's in-house counsel and non-attorney representatives, which purport to contain primarily business advice, are attorney-client or work product privileged"); Medtronic Sofamor Danek, Inc. v. Michelson, 2004 WL 2905401, at *1 (W.D. Tenn. Apr. 19, 2004) (affirming special master's

---

[29]  See Proctor Decl., Ex. 10.  Such ventures appear to include, for example, "Kevin P. Tanna Realty" which appears to be located at Omninet's offices, as well as a ceramic tile contracting business, Tanna Tile & Construction.  See California Department of Real Estate, Broker License for Kevin Tanna, Proctor Decl., Ex. 18; MLS Listing for Kevin P. Tanna Realty, Proctor Decl., Ex. 19; Listing for Tanna Tile & Construction, Proctor Decl., Ex. 20 (listing Kevin Payam Tanna as owner).

[30]  See Proctor Decl., Ex. 11.

1    order that party "produce 1,700 of the 2,000 in-house documents for *in camera*
2    review" where "privilege log descriptions did not "sufficiently convey the 'legal'
3    character of the communications") (quotation omitted).   The risk that Omni is
4    shielding business communications clearly exists here.   *In camera* review is
5    warranted to ensure that Mr. Tanna's "law degree and office are not . . . used to
6    create a privileged sanctuary for [Omni's] corporate records." <u>U.S. v. Davis</u>, 132
7    F.R.D. 12, 16 (S.D.N.Y. 1990) (quotation omitted).

8    **III.   <u>OMNI'S OVERBROAD ASSERTION OF WORK PRODUCT IS</u>**
9         **<u>IMPROPER</u>**

10        The work product doctrine does not extend to all documents generated
11   by an attorney—instead, it is limited to materials created *in anticipation of*
12   *litigation.*   A document is "deemed prepared 'in anticipation of litigation'" only
13   where the document was created "because of" that anticipated litigation and "would
14   not have been created in substantially similar form but for the prospect of that
15   litigation." <u>In re Grand Jury Subpoena</u>, 357 F.3d 900, 907, 908 (9th Cir. 2004).

16        Further, "[m]aterials prepared in the ordinary course of business may
17   not be protected from discovery by the work-product doctrine." <u>Fox v. Cal. Sierra</u>
18   <u>Fin. Servs.</u>, 120 F.R.D. 520, 524 (N.D. Cal. 1988).   Accordingly, when an attorney
19   acts as an advisor outside the litigation context, the work-product doctrine does not
20   generally apply. See <u>In re Fischel</u>, 557 F.2d 209, 212-13 (9th Cir. 1977) (summaries
21   of business transactions prepared by attorney were not protected by the work-
22   product doctrine because they were not created in anticipation of litigation).   For
23   example, where, as here, transactional counsel performs "due diligence" prior to a
24   corporate transaction such as a loan or purchase, those services do not reflect work-
25   product. See <u>Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez</u>, 2003 WL
26   21277139, at *2 (S.D.N.Y. June 2, 2003) ("Coudert Brothers' due diligence work
27   performed for [lender regarding credit agreement] is not protected by the work
28   product doctrine."); <u>see also</u> <u>Adams v. Gateway, Inc.</u>, 2003 WL 23787856, at *15

(D. Utah Dec. 30, 2003) ("Documents showing business or negotiation strategy are not matters of litigation strategy protected by the work product privilege."); Starn O'Toole Marcus & Fisher v. U.S., 2008 WL 2653451, at *4 (D. Haw. July 7, 2008) (transactional counsel's advice regarding "real property transactions, and financing and partnership issues" not work product); F. H. Krear & Co. v. 19 Named Trustees, 90 F.R.D. 102, 103-04 (S.D. N.Y. 1981) (in-house counsel's business negotiations was unrelated to litigation and thus not protected).

Here, Omni's indiscriminate assertion of work product is unfounded. Omni has steadfastly maintained that its "████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████"[31]  It claims it merely "stepped into the shoes of Wachovia . . . nothing more and nothing less."[32]  According to Omni, Mattel's concerns are merely "paranoiac rhetoric"[33] because the purchase was not "████████ ████████████."[34]

Yet, despite these assertions, Omni has claimed work-product protection over communications from the very beginning of its formation in August 2008 (indeed even over some documents pre-dating its existence[35]), long before it

---

[31]  Omni's Request to Strike Summary and Responsive Reports of Ronald L. Durkin, dated June 8, 2009, at 3:23-4:1, Proctor Decl., Ex. 21; see also February 11, 2009 Hearing Tr. at 70:16-20, Proctor Decl., Ex. 22 ("The transaction by which Omni 808 acquired its interest and stepped into the shoes of Wachovia was straightforward and it was at arm's length.").

[32]  May 18, 2009, Hearing Tr. at 45:3-4, Proctor Decl., Ex. 23.

[33]  Omni's Ex Parte Application for Leave to Intervene for Limited Purpose as a Matter of Right or, in the Alternative, for Permissive Intervention, dated February 3, 2009, at 2:27-28, Proctor Decl., Ex. 24.

[34]  Omni's Statement of Position re Order to Show Cause re Appointment of Permanent Receiver, dated May 14, 2009, at 10:15-19, Proctor Decl., Ex. 25.

[35]  Given that Omni was incorporated on August 12, 2009, its assertion of corporate privilege over pre-incorporation communications is unfounded. See, e.g., Omni Amended Log Nos. 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, Proctor Decl., Ex. 1.

purchased the Wachovia debt or later sought to intervene in this action in February 2009.   As indicated by Omni's own statements, Omni's transactional counsel's documents or communications regarding the purchase of the Wachovia debt are simply the ordinary type of legal "due diligence" which is not work product.   *See* Bank Brussels Lambert, 2003 WL 21277139 at \*2.   That MGA was engaged in litigation with Mattel does not transform Omni's documents regarding the purchase of the Wachovia debt into work product.   *See* Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 476 (S.D.N.Y. 2003) ("Litigation against a separate entity . . . is insufficient to show that the documents were created 'because of' Bombardier Capital's own anticipation of litigation.").   Nor does the fact that Omni later sought to intervene in this action.   *See* Ziemack v. Cent. Corp., 1995 WL 314526, at \*6 (N.D. Ill. May 19, 1995) ("the mere fact that litigation eventually ensues does not, alone, protect all documents related to the subject matter of the litigation") (citation omitted).   Omni has not shown how the withheld documents are work product.   Absent a proper showing, the objection should be overruled.

## IV.   OMNI HAS IMPROPERLY WITHHELD ATTACHMENTS WITHOUT INDEPENDENTLY SUBSTANTIATING THEIR WITHHOLDING

It is axiomatic that the "mere transmittal of documents to a lawyer is insufficient to bring documents under the umbrella of the attorney-client privilege." *See* Clavo v. Zarrabian, 2003 WL 24272641, at \*2 (C.D. Cal. Sept. 24, 2003). Accordingly, when a party seeks to withhold both a communication and its attachments on a privilege log, normally the "the attachment or enclosure must be listed as a separate document on the privilege log; otherwise, such attachment or enclosure must be disclosed." O'Connor v. Boeing N. Am., Inc., 185 F.R.D. 272, 280 (C.D. Cal. 1999); Mold-Masters Ltd. v. Husky Injection Molding Sys. Ltd., 2001 WL 1558303, at \*3 (N.D. Ill. Dec. 6, 2001) (because privilege assertions are

determined on a "document-by-document basis," the "attachment to a document must appear as a separate entry on the privilege log"); U.S. v. Derr, 1993 WL 226100, at *1 (N.D. Cal., Jan. 22, 1993) (because "attachments to privileged documents are not themselves privileged without an independent basis for claiming the privilege," a privilege log is inadequate if it does not establish an attachment's privileged status "independent of the primary document").

Here, by failing to separately log the attachments it is withholding, which it does not claim to have produced in any form, Omni has failed to substantiate its claim of privilege as to the attachments. Omni initially failed to even indicate that it was withholding any attachments—only because of Mattel's diligence was it revealed that Omni was, in fact, surreptitiously withholding attachments to at least 36 communications on its privilege log.[36] One withheld communication, a November 2008 email from Mary Vanzo, an Omni administrative assistant, to Kevin Tanna, illustrates this practice:



- Entry No. 12: "███████████████████████"[37]

- Entry No. 12 (Revised): "███████████████████████"[38]

While Omni asserts that the attachment "███████" an attorney's mental impressions, the log provides no information as to who authored the document, when it was created or for what purpose. Without that basic information, Omni's log does not allow Mattel (or the Court) to assess whether it is properly withheld as

---

[36] See Appendix B.
[37] Entry No. 12, Original Omni Log at 2, Proctor Decl., Ex. 3.
[38] Entry No. 12, Amended Omni Log at 3, Proctor Decl., Ex. 1 (emphasis added).

1    a document that was created "because of" anticipated litigation or, for example, is

2    merely a financial or other non-legal document related to the purchase of the

3    Wachovia debt.    See Clavo, 2003 WL 24272641, at *3 (holding work-product

4    assertions inadequate and ordering documents produced where "privilege log does

5    not reveal who created and viewed them or why they were created").

6        Omni's failure to separately log these attachments, alone, is grounds for

7    the disclosure of these attachments. See, e.g., In re Heritage Bond Litig., 2004 WL

8    1970058, at *5 (C.D. Cal. July, 23, 2004) (granting motion to compel "as to the

9    attachments to these documents, which are not separately listed on the privilege

10    log"); see also Mold-Masters Ltd., 2001 WL 1558303, at *4 (withheld documents

11    included attachments not described on privilege log and "for that reason, the

12    attached message must be disclosed").    In the alternative, Omni's failure to

13    substantiate the withholding of these attachments warrants *in camera* review. See,

14    e.g., Renner v. Chase Manhattan Bank 2001 WL 1356192, at *9 (S.D.N.Y. 2001)

15    (ordering attachments produced *in camera*).

16                          **Conclusion**

17        For the foregoing reasons, Mattel respectfully requests that the

18    Discovery Master issue an Order compelling Omni to (1) produce the Peter Tanna

19    communications identified in Appendix A for *in camera* review, and, if appropriate

20    after such review, disclosed to Mattel; (2) to overrule Omni's overbroad work-

21    product assertion; and (3) to order the improperly withheld attachments identified in

22    Appendix B be produced to Mattel, or in the alternative, produced to the Discovery

23

24

25

26

27

28

1 | Master for *in camera* review, and, if appropriate after such review, disclosed to
2 | Mattel.
3 |
4 | DATED:  October 23, 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
5 |
6 |                                   By B. DYLAN PROCTOR / ZDK
7 |                                      B. Dylan Proctor
                                         Attorneys for Mattel, Inc.
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |