EXHIBIT 1

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 2

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13       Plaintiff, | Consolidated with |
| 14       vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16 | **[To Be Heard By Discovery Master Robert O'Brien Pursuant to Order of January 6, 2009]** |
| 17       Defendant. | |
| 18  AND CONSOLIDATED ACTIONS | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FOR WHICH ANY CLAIMS OF PRIVILEGE HAVE BEEN WAIVED |
| 19 | |
| 20 | |
| 21 | |
| 22 | Date:   TBD<br>Time:   TBD<br>Place:  Arent Fox LLP |
| 23 | |
| 24 | **Phase 2:**<br>Discovery Cut-off: December 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

07975/2989019.1

EXHIBIT 2
PAGE 40

1  TO ALL PARTIES, OMNI 808 INVESTORS, LLC AND THEIR ATTORNEYS OF
2  RECORD:

3        PLEASE TAKE NOTICE that, on a date and time to be set by the
4  Discovery Master, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the
5  Court pursuant to <u>Federal Rules of Civil Procedure</u> 37 and 45 to compel Omni 808
6  Investors, LLC ("Omni 808") to produce all documents responsive to the Discovery
7  Master's Order No. 3 that it has withheld on the purported basis of privilege, and for
8  an award of monetary sanctions in the amount of $4,500.

9        This Motion is made on the grounds that Mattel seeks discoverable
10 information and that Omni 808 has waived its privilege objections by its failure to
11 timely produce a privilege log, in violation of the <u>Rules</u> and the Court's orders, and
12 therefore should be sanctioned.

13       This Motion is based on this Notice of Motion and Motion, the
14 accompanying Memorandum of Points and Authorities, the Declaration of B. Dylan
15 Proctor filed concurrently herewith, the records and files of this Court, and all other
16 matters of which the Court may take judicial notice.

17 **Statement of Compliance**

18       Mattel sent Omni 808 an initial letter on April 21, 2009 requesting a
19 meet and confer pursuant to paragraph 5 of the Discovery Master Stipulation. Omni
20 808 did not respond. Follow-up letters from Mattel dated May 5 and May 20, 2009
21 led to no resolution of the matter.

22

23 DATED: June 29, 2009       QUINN EMANUEL URQUHART OLIVER &
24                        HEDGES, LLP

25

26                    By<u>/s/ B. Dylan Proctor</u>
27                      B. Dylan Proctor
                     Attorneys for Plaintiff
                     Mattel, Inc.
28

MATTEL'S MOTION TO COMPEL RE WAIVER

EXHIBIT 2
PAGE 47

1

## **TABLE OF CONTENTS**

2                                                                                              **Page**

3

4   PRELIMINARY STATEMENT ............................................................................... 1

5   BACKGROUND ...................................................................................................... 2

6   ARGUMENT............................................................................................................. 4

7   I.      OMNI 808 HAS WAIVED ANY CLAIM TO PRIVILEGE .............................. 4

8           A.      Omni 808 Had An Obligation To Identify And Substantiate Its
                    Claims As To  Each Withheld Document In A Timely Fashion .............. 4
9
            B.      Omni 808 Has Waived Any Privilege Claims ............................................ 6
10
    II.     OMNI 808 SHOULD BEAR THE COSTS OF THIS MOTION..................... 10
11
    CONCLUSION......................................................................................................... 11
12
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2989019.1

-i-

EXHIBIT 2
PAGE 48

1

## TABLE OF AUTHORITIES

2                                                                           **Page**

3                                                  **Cases**

4    Am. Dental Assoc. v. Khorrami,
       2003 WL 24141019 (C.D. Cal. Jul. 14, 2003) ............................................ 7
5
     Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court,
6      408 F.3d 1142 (9th Cir. 2005) .............................................. 4, 5, 6, 7, 8, 9
7    Flanagan v. Benicia Unif. Sch. Dist.,
       2008 WL 2073952 (E.D. Cal. May 14, 2008) ........................................... 7
8
     Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.,
9      2000 WL 1201385 (E.D. Pa. Aug. 8, 2000) ............................................. 8
10   Hanni v. Am. Airlines, Inc.,
       2009 WL 1505286 (N.D. Cal. May 27, 2009) ..................................... 5, 10
11
     Hyde & Drath v. Baker,
12     24 F.3d 1162 (9th Cir. 1994) .................................................................. 10
13   Lopez v. City of New York,
       2007 WL 869590 (E.D.N.Y. March 20, 2007) .......................................... 8
14
     RTC v. Dabney,
15     73 F.3d 262 (10th Cir. 1995) .................................................................. 10
16   Ritacca v. Abbott Lab.,
       203 F.R.D. 332 (N.D. Ill. 2001) .............................................................. 9
17
     Thelen Reid & Priest LLP v. Marland,
18     2007 WL 578989 (N.D. Cal. Feb. 21, 2007) ............................................. 6
19   Wolk v. Green,
       2007 WL 3203050 (N.D. Cal. Oct. 29, 2007) ........................................... 4
20

21                                               **Statutes**

22   28 U.S.C. § 1927 ...................................................................................... 10

23   Fed. R. Civ. P. § 26 ................................................................................ 4, 5

24   Fed. R. Civ. P. § 26(b)(5) .................................................................... 4, 5, 6

25   Fed. R. Civ. P. § 37(a)(5)(A) ................................................................... 10

26   Fed. R. Civ. P. § 37(b)(2) .......................................................................... 6

27   Fed. R. Civ. P. § 45 ................................................................................... 4

28   Fed. R. Civ. P. § 45(d)(2) .......................................................................... 4

07975/2989019.1

-ii-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Omni 808 has intentionally failed and refused to produce a privilege log identifying documents it has withheld under its purported claims of privilege.  In an Order issued more than three and a half months ago (enforcing subpoenas served more than six months ago), Omni 808 was ordered to produce documents within 30 days.  Omni 808 defied the Discovery Master's Order and refused to produce its documents.  Only after Mattel was forced to move for contempt and other sanctions, and only after the Discovery Master issued a warning, did Omni 808 deign to produce any documents to even partially comply with the Discovery Master's Order.  And it still has not produced a privilege log.

Mattel has repeatedly inquired as to the status of Omni 808's privilege log; each inquiry has been met (variously) with silence, arguments that no log is required or dubious assurances that a log will someday be provided.  All the while, though the relationship between Omni 808 and MGA remains a key matter at issue, Mattel has been and is being denied the opportunity to review, and if necessary challenge, Omni 808's privilege claims.  The Ninth Circuit has instructed that the failure to timely produce a privilege log results in a waiver of privilege in appropriate cases.  Every factor weighs in favor of waiver here.  Because of Omni 808's consistent disregard for its basic obligations under the Federal Rules and the Discovery Master's Orders, it should be compelled to produce all documents responsive to Order No. 3 which it is currently withholding under purported (but never specifically asserted) claims of privilege.[1]

---

[1]   On May 6, 2009, Omni 808 was also ordered to produce documents in the Discovery Master's Order No. 27.  While Omni 808 has failed to provide a privilege log relating to that Order as well, Mattel does not currently seek a finding of waiver as to such withheld documents, despite Omni 808's lack of compliance, because the length of its non-compliance to date has been less extreme.

07975/2989019.1

-1-

MATTEL'S MOTION TO COMPEL RE WAIVER

EXHIBIT 2
PAGE 50

### Background

Over six months ago, on January 9, 2009, Mattel served subpoenas on Omni 808 seeking documents relevant to, *inter alia*, Omni 808's purported acquisition of MGA debt from Wachovia Bank.[2] Omni 808 refused to comply with the requests on the basis of various objections, including a boilerplate claim of attorney-client and work product privilege.[3] On February 3, 2009, Mattel moved to compel Omni 808 to comply with the subpoenas and to produce all withheld responsive documents.[4]

On March 10, the Discovery Master ordered Omni 808 to produce documents responsive to six of the requests (1 through 3, 13, 15, 17).[5] Omni 808 was given 30 days to produce all non-privileged documents.[6] Omni 808 refused to comply with the Discovery Master's Order. On April 21, 2009, Mattel was forced to file an *ex parte* application with respect to Omni 808's failure to comply.[7] The Discovery Master then ordered Omni 808 "to produce to Mattel all documents ordered to be produced pursuant to the March 10 Order no later than 5:00 p.m. on April 28, 2009."[8]

When Omni 808 finally produced some responsive documents on April 28, it did not (despite its earlier claims of privilege) provide a privilege log

---

[2] See Omni 808 Investors, LLC (Beverly Hills) and Omni 808 Investors, LLC (Los Angeles) subpoenas, dated January 9, 2009, Proctor Decl., Exs. 1 & 2.

[3] See Non-Party Omni 808 Investors, LLC's Objections to Subpoena, dated January 28, 2009, Proctor Decl., Ex. 3.

[4] See Mattel Inc.'s Notice of Motion and Motion to Compel Production of Documents Responsive to Third-Party Subpoenas, dated February 3, 2009, Proctor Decl. Ex. 4.

[5] See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009 ("Order No. 3"), at 29, Proctor Decl., Ex. 5.

[6] Id. at 30.

[7] See Mattel, Inc.'s *Ex Parte* Application for an Order to Show Cause re Omni 808's Failure to Comply with Court Order, dated April 21, 2009, Proctor Decl., Ex. 6.

[8] See Phase 2 Discovery Matter Order No. 21, dated April 23, 2009 ("Order No. 21"), Proctor Decl., Ex. 7.

MATTEL'S MOTION TO COMPEL RE WAIVER

EXHIBIT 2
PAGE 5



1   identifying any documents withheld under the attorney-client privilege or work
2   product doctrine.   Because Omni 808 had originally made boilerplate privilege
3   assertions, Mattel sent letters inquiring as to Omni 808's claims of privilege and the
4   status of its privilege log. Omni 808 did not respond at all to Mattel's first letter.[9]  In
5   response to Mattel's second letter—and only after Mattel specifically warned that it
6   "intend[ed] to bring [a] motion for an order deeming Omni 808 to have waived any
7   privilege and compelling the production of all such documents based on its failure to
8   provide a privilege log"[10]—Omni 808 suggested, more than a month and a half ago,
9   that while it purportedly had no obligation to produce a privilege log at all it was "in
10   the process" of preparing one.[11]  No privilege log ever arrived.

11         In late May, when Omni 808 still had not provided a privilege log,
12   Mattel again inquired as to its status and again received no response.[12]  Meanwhile,
13   the Discovery Master ordered Omni 808 to produce additional documents by May 22,
14   2009, in his Order No. 27.[13]  While Omni 808 produced some of those compelled
15   documents on June 22, 2009, it still did not produce, and has not produced, a
16   privilege log relating to either of its productions.   Omni 808's only further
17   communication on the matter has been a vague assertion, provided with the
18   production on June 22, that a privilege log would be provided at some unspecified
19   point in the future.[14]

20         Thus, as things stand now, more than six months since Mattel served its
21   subpoenas and more than three and a half months since Order No. 3 was issued, even
22   following two more Discovery Master Orders requiring Omni 808 to comply with its

23
24   [9]   See April 21, 2009 Letter from M. Zeller to P. Villar, Proctor Decl., Ex. 8.
      [10]  See May 5, 2009 Letter from B. Proctor to P. Villar, Proctor Decl., Ex. 9.
25   [11]  See May 7, 2009 Letter from P. Villar to B. Proctor, Proctor Decl., Ex. 10.
      [12]  See May 20, 2008 Letter from B. Proctor to P. Villar, Proctor Decl., Ex. 11.
26   [13]  See Phase 2 Discovery Matter Order No. 27, dated May 6, 2009, Proctor Decl., Ex.
27   12. Subsequently, Omni 808 sought, and was granted, and extension until May 29, 2009.
      See Phase 2 Discovery Matter Order No. 37, dated May 21, 2009, Proctor Decl., Ex. 13.
28   [14]  See June 22, 2009 Letter from P. Villar to J. Quinn, Proctor Decl., Ex. 14.

EXHIBIT 2
PAGE 52

1   discovery obligations, and even after Mattel expressly advised Omni 808 of the

2   prospect of waiver months ago, Omni 808 still has not produced a log or even offered

3   a date by which a log will be produced, much less an explanation as to its disregard of

4   the Rules.

5                                    **Argument**

6   **I.    OMNI 808 HAS WAIVED ANY CLAIM TO PRIVILEGE**

7        **A.    Omni 808 Had An Obligation To Identify And Substantiate Its**

8             **Claims As To Each Withheld Document In A Timely Fashion**

9             The Federal Rules require that, when withholding responsive documents

10  on the basis of privilege, "[a] party must: (i) expressly make the claim; and (ii)

11  describe the nature of the documents, communications, or tangible things not

12  produced or disclosed—and do so in a manner that, without revealing information

13  itself privileged or protected, will enable other parties to assess the claim." Fed. R.

14  Civ. P. § 26(b)(5). Likewise, Rule 45 mandates that a third party asserting privilege

15  in response to a subpoena request must "expressly make that claim" and "describe the

16  nature of the withheld documents, communications or tangible things in a manner

17  that, without revealing information itself privileged or protected, will enable the

18  parties to assess the claim." Fed. R. Civ. P. 45(d)(2).

19            The Ninth Circuit has held that "boilerplate objections or blanket

20  refusals inserted into a [discovery] response" are inadequate to substantiate a claim of

21  privilege under Rule 26.   Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court,

22  408 F.3d 1142, 1149 (9th Cir. 2005).   Ordinarily, the particular showing that is

23  required is made through the preparation of a privilege log which identifies the

24  specific documents withheld and details the basis for the claimed privilege's

25  applicability.   See id. at 1148; see also Wolk v. Green, 2007 WL 3203050, at

26  *2 (N.D. Cal. Oct. 29, 2007) (noting that "[b]lanket refusals or boilerplate objections

27  are insufficient to assert privilege" and that such claims are "commonly satisfied by

28  filing a privilege log").   Throughout this litigation, both the Court and the prior

07975/2989019.1

-4-

1   Discovery Master have consistently required, for parties and non-parties alike, the
2   prompt production of a privilege log as the "universally accepted" means to justify to
3   withholding of otherwise responsive documents on the grounds of privilege.[15]

4           By the Discovery Master's Orders, Omni 808 was compelled to produce
5   documents pursuant to Rule 26.[16]   While Omni 808 may have had the right to
6   withhold privileged documents, it also had an obligation to "describe the nature of the
7   documents, communications, or things not produced" in a manner that would enable
8   Mattel (or the Court) "to assess the applicability of the privilege or protection." Fed.
9   R. Civ. P. § 26(b)(5). It was required to satisfy that obligation independently and in a
10  timely manner, not merely in response to Mattel's demands or the prospect of
11  sanctions. See Hanni v. Am. Airlines, Inc., 2009 WL 1505286, at *3 (N.D. Cal. May
12  27, 2009) ("While Plaintiffs note that they produced their privilege log on April 15,
13  2009, Plaintiffs should have provided their log by April 3, as this Court's order
14  required them to provide full discovery responses by that date. Instead, Plaintiffs
15  waited until after Defendant moved for sanctions to provide a privilege log.
16  Plaintiffs' failure to produce the log by April 3 was not substantially justified."). To
17  date, Omni 808 has not provided a privilege log or provided any of the necessary
18  "information about the content of the allegedly privileged material" it is withholding.
19  Burlington, 408 F.3d at 1148. It is clearly in violation of the requirements of the
20  Federal Rules.

21
22
23

24  [15]   Phase 1 Discovery Master's Order re Mattel's Motion to Compel Farhad Larian,
    Kaye Scholer, and Stern & Goldberg to Produce Documents, dated January 25, 2008, at 13,
25  Proctor Decl., Ex. 15 (ordering non-party to produce a document-by-document privilege
    log); July 2, 2007 Minute Order at 2, Proctor Decl., Ex. 16 ("The Discovery Master's order
26  compels the production of only non-privileged documents. . . . If the only responsive
    documents are privileged, then MGA need not produce them, but must produce a privilege
27  log.").
28  [16]   See, e.g., Order No. 3 at 13, 29, Proctor Decl., Ex. 5.

EXHIBIT 2
PAGE 54

### B.   Omni 808 Has Waived Any Privilege Claims

The appropriate sanction for Omni 808's willful violations is a finding of waiver. It is "well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege." Thelen Reid & Priest LLP v. Marland, 2007 WL 578989, at *10 (N.D. Cal. Feb. 21, 2007); see also Burlington, 408 F.3d at 1149 (affirming trial court's finding of waiver for five-month delay in serving privilege log). Indeed, the Advisory Committee notes to Rule 26(b)(5) specifically anticipate waiver of privilege as a remedy for the failure of a party to timely produce a privilege log. See Fed. R. Civ. P. § 26(b)(5) advisory committee's note (1993 Amendments) ("To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.").

In Burlington, the Ninth Circuit identified several factors in determining whether a failure to produce a timely privilege log should result in a waiver, including: (1) the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged; (2) the timeliness of the objection and accompanying information about the withheld documents; (3) the magnitude of the document production; and (4) other particular circumstances of the litigation that make responding to the discovery unusually easy or unusually hard. See Burlington, 408 F.3d at 1149.

Here, each factor supports a finding of waiver. The first factor strongly weighs in favor of waiver because the purported claims of privilege Omni 808 asserted in its initial objections are exactly the type "boilerplate objections [which] are presumptively insufficient" to substantiate a claim of privilege. Burlington, 408 F.3d at 1149. Nowhere in its objections—or in its subsequent briefing—did Omni 808 articulate any of the "particulars typically contained in a privilege log" that would "enable[] the litigant seeking discovery and the court to evaluate whether each

MATTEL'S MOTION TO COMPEL RE WAIVER

EXHIBIT 2
PAGE 55

1  of the withheld documents is privileged." Id.  Nowhere has it described "the nature
2  of the documents" withheld or provided any details of attorney's involvement that
3  would be sufficient to demonstrate the applicability of any privilege.  Simply put,
4  neither the Court nor Mattel has any idea what kind of purportedly privileged
5  documents or communications, or how many such documents, have been withheld by
6  Omni 808, let alone who created such documents and for what purpose and to whom
7  they were transmitted.  See Flanagan v. Benicia Unif. Sch. Dist., 2008 WL 2073952,
8  at *7 (E.D. Cal. May 14, 2008) (party's failure to produce privilege log constituted
9  waiver where "[e]ven at this time the court and defendants are not aware of what
10 documents have been withheld on account of the asserted privileges. The documents
11 withheld could number one, ten, one hundred—who knows?").  As the Discovery
12 Master has ruled, "[i]n determining whether the attorney-client privilege protects a
13 document from disclosure, the burden is on the party asserting the privilege to
14 establish all the elements of the privilege," which requires the withholding party to
15 "provide enough information to permit the court to review the applicability of the
16 privilege to the documents at issue."  Phase 2 Discovery Master Order No. 11, dated
17 May 18, 2009 (citations and internal quotations omitted).  Omni 808 cannot simply
18 withhold an unknown set of documents or communications based on a claim of
19 privilege for which it has not provided a shred of support.

20         The second factor—timeliness—also weighs heavily in favor of a
21 finding of waiver.  The subpoenas were issued in January, and Omni 808 has had
22 many months, amounting to almost half of the Phase 2 discovery period, to review
23 the documents for which it claims privilege and substantiate its assertions in a
24 privilege log. Omni 808 was ordered to produce withheld documents in Order No. 3
25 more than three and a half months ago, on March 10, 2009.  Yet Omni 808 has
26 merely provided vague, unfilled promises of a log.   Courts have found that
27 comparable delays warrant a finding of waiver.  See, e.g., Am. Dental Assoc. v.
28 Khorrami, 2003 WL 24141019, at *8-10 (C.D. Cal. Jul. 14, 2003) (reversing

MATTEL'S MOTION TO COMPEL RE WAIVER



EXHIBIT 2
PAGE 56

 1  magistrate judge's finding of no waiver where party had not provided privilege log
 2  six months from initial date on which discovery response was due); Lopez v. City of
 3  New York, 2007 WL 869590, at *4 (E.D.N.Y. March 20, 2007) (seven-month delay
 4  in producing privilege log resulted in waiver of privilege); Get-A-Grip, II, Inc. v.
 5  Hornell Brewing Co., Inc., 2000 WL 1201385, at *2-3 (E.D. Pa. Aug. 8, 2000) (two
 6  month delay in production of privilege log waived any claim to privilege); see also
 7  Burlington, 408 F.3d at 1149 (five-month delay from date of production is more than
 8  sufficient to justify a finding of waiver: "In the absence of mitigating considerations,
 9  this fact alone would immunize the district court's ruling from reversal under the
10  standard just articulated.").

11        The third and fourth factors also support a finding of waiver because
12  there is nothing to suggest that the allegedly privileged documents withheld are so
13  numerous or otherwise difficult to log that Omni 808's failure to produce a privilege
14  log should be excused.  Omni 808's entire production on April 28, 2009 amounted to
15  approximately 850 documents, which hardly suggests an overwhelming set of
16  documents.[17]  Omni 808 has never averred, let alone shown, that the sheer amount of
17  privileged material at issue is too burdensome to log.  Presumably, Omni 808 has
18  already conducted a review for privilege—how else could it have determined which
19  documents to withhold when it produced documents?  It has had more than ample
20  time since then to log those documents on a privilege log.  Its failure to do so in these
21  many months is unjustified.

22        Nor are there any "mitigating circumstances" that might conceivably
23  excuse what otherwise appears to be a clear choice by Omni 808 to ignore its
24  obligations (or delay complying with them for as long as possible to prejudice to
25  Mattel).  Like the party in Burlington who waited months to produce a privilege log,
26  leading to waiver, Omni 808 is "a sophisticated corporate litigant" who is represented

27

28  [17]  See Proctor Decl. ¶ 20.

07975/2989019.1

-8-

1  by counsel and is aware of the essential purpose of privilege logs. <u>Burlington</u>,
2  408 F.3d at 1149. Indeed, Mattel specifically advised Omni 808 of its obligation to
3  produce a log and of the potential consequences for failing to do so, and did so
4  months ago, warning that it "intend[ed] to bring [a] motion for an order deeming
5  Omni 808 to have waived any privilege and compelling the production of all such
6  documents based on its failure to provide a privilege log."[18]

7          Moreover, Omni 808's failure to satisfy its obligations is compounded
8  by the fact that Omni 808 has already failed to comply with the Discovery Master's
9  Orders. "[E]vidence of foot-dragging or a cavalier attitude towards following court
10 orders and the discovery rules supports finding waiver." <u>Ritacca v. Abbott Lab.</u>,
11 203 F.R.D. 332, 335 (N.D. Ill. 2001) (citations omitted). Omni 808's failure to
12 produce a privilege log is part of a demonstrated pattern of Omni 808 to obstruct and
13 delay discovery. As the Discovery Master will recall, Omni refused to comply with
14 Order No. 3 at all, claiming it had no obligation to produce compelled documents
15 because Mattel had filed a motion for reconsideration on *other* aspects of the Order
16 that sought production of *other* documents.[19] The Discovery Master was then forced
17 to reinforce its prior order and compel compliance by a date and time certain (April
18 28 at 5:00 p.m.).[20] Yet now, two months after *that* deadline, Omni 808 still has not
19 provided a log listing documents it admits it is withholding.

20         It will take Mattel time to review any privilege log Omni 808 ultimately
21 produces to assess its claims of privilege and bring any necessary motion practice.
22 Omni 808 is intentionally obstructing discovery to prevent Mattel from completing
23 that task. Failure to abide by requirements of the <u>Rules</u> must have some consequence
24 or those <u>Rules</u> will be made meaningless. The parties have been repeatedly
25

26   [18]  <u>See</u> May 5, 2009 Letter from B. Proctor to P. Villar, Proctor Decl., Ex. 9.
27   [19]  <u>See</u> Mattel, Inc.'s *Ex Parte* Application for an Order to Show Cause re Omni 808's
     Failure to Comply with Court Order, dated April 21, 2009, at 11, Proctor Decl., Ex. 6.
28   [20]  <u>See</u> Order No. 21 at 1, Proctor Decl., Ex. 7.

MATTEL'S MOTION TO COMPEL RE WAIVER

EXHIBIT  2
PAGE 58

1   admonished that the failure to produce a timely privilege log may result in waiver.

2   Yet, time and again, MGA and its affiliates in this litigation have delayed producing

3   privilege logs, forcing Mattel to bring motions that should not have to be brought.[21]

4   Omni 808's recalcitrance is sanctionable. A finding of waiver is appropriate.

5   **II.    OMNI 808 SHOULD BEAR THE COSTS OF THIS MOTION**

6           Omni 808's failure to satisfy its basic obligation under the Rules has

7   forced Mattel to bring this motion.  Under the Federal Rules, a party bringing a

8   motion to compel is entitled to the "reasonable expenses incurred in making the

9   motion, including attorney's fees" unless "the opposing party's nondisclosure,

10  response or objection was substantially justified, or that other circumstances make an

11  award of expenses unjust."    Fed. R. Civ. Proc. 37(a)(5)(A).    The burden of

12  establishing substantial justification is Omni 808's.  See Hyde & Drath v. Baker, 24

13  F.3d 1162, 1171 (9th Cir. 1994).[22]

14          There is no basis on which Omni 808's failure to provide a privilege log

15  can be justified.  Omni 808 should not be rewarded for ignoring its obligations and

16  forcing Mattel to expend resources that could be spent on other pressing matters in

17  this litigation.  See Hanni, 2009 WL 1505286, at *3 (holding that party's failure to

18  produce  privilege  log  "until  after  Defendant  moved  for  sanctions"  was  not

19

20  _____

21  [21]  See, e.g., Phase 2 Discovery Matter Order No. 22, dated April 28, 2009, at 22,
     Proctor Decl., Ex. 17 (granting a further "short period" in which to comply with obligation

22  to produce log); December 14, 2007 Hearing Transcript at 27:24-25, 28:11-13, Proctor
     Decl., Ex. 18 (prior Discovery Master finding that "the privilege logs submitted by MGA

23  are untimely" and expressing "disappoint[ment] [] in the way the discovery has been
     produced" by MGA).

24  [22]  Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides

25  that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and
     vexatiously may be required by the court to satisfy personally the excess costs, expenses,

26  and attorneys' fees reasonably incurred because of such conduct."  Sanctions under this
     section are appropriate "for conduct that, viewed objectively, manifests either intentional or

27  reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265

28  (10th Cir. 1995) (citation omitted).

MATTEL'S MOTION TO COMPEL RE WAIVER

EXHIBIT 2
PAGE 59

1  "substantially justified" and imposing costs).   Accordingly, Omni 808 should be

2  sanctioned in the amount of $4500, for a portion of the fees and costs incurred in

3  preparing this motion.

### Conclusion

5       For the foregoing reasons, the Discovery Master should enter an order

6  finding that Omni 808 has waived any privilege claims regarding documents

7  responsive to the Discovery Master's Order No. 3, compelling Omni 808 to produce

8  any documents withheld on such basis immediately, and awarding monetary

9  sanctions of $4,500.[23]

11  DATED:  June 29, 2009              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

13                                     By /s/ B. Dylan Proctor
14                                        B. Dylan Proctor
                                          Attorneys for Plaintiff
                                          Mattel, Inc.

26    [23]   While none of the orders provided an applicable temporal limitation, Mattel submits

27  that Omni 808 was obligated to log—and therefore has waived its claims with regard to—
    any allegedly privileged responsive documents or communications created or transmitted on

28  or before the date of Omni 808's partial intervention in this case, April 27, 2009.

07975/2989019.1

-11-

MATTEL'S MOTION TO COMPEL RE WAIVER

EXHIBIT 2
PAGE 60

**CONFORMED**

1

2 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
3 johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
4 (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
5 (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
6 Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
7 Facsimile:    (213) 443-3100

8 Attorneys for Mattel, Inc.

9                  UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12 CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

13          Plaintiff,                     Consolidated with:
                                           Case No. CV 04-09039
14      vs.                                Case No. CV 05-02727

15 MATTEL, INC., a Delaware corporation,   PROOF OF SERVICE

16          Defendant.

17

18 AND CONSOLIDATED ACTIONS

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2
PAGE 161

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of

3 eighteen years and not a party to the within action; my business address is Apex Attorney

4 Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017.

5      On June 29, 2009, I served true copies of the following documents described as:

6      **SEE ATTACHED DOCUMENT LIST** on the parties in this action as follows:

7 Skadden, Arps, Slate, Meagher & Flom LLP
    Thomas J. Nolan, Esq.
8    Jason Russell, Esq.
9 300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
10    tnolan@skadden.com
    jrussell@skadden.com
11

Overland Borenstein Scheper & Kim LLP
Mark E. Overland, Esq.
Alexander H. Cote, Esq.
601 W. 5th Street, 12th Floor
Los Angeles, California 90017
moverland@obsklaw.com

12 Glaser, Weil, Fink, Jacobs, & Shapiro, LLP
    Patricia L. Glaser, Esq.
    Amman A. Khan, Esq.
13 10250 Constellation Blvd 19th Floor
Los Angeles, CA 90067
14    pglaser@glaserweil.com

15

16 Mitchell, Silberberg, & Knupp, LLP
    Russell J. Frackman, Esq.
17 11377 W. Olympic Blvd.
Los Angeles, CA 90064
18    rif@msk.com

Bingham McCutchen LLP
Todd E. Gordiner LLP
Peter N. Villar, Esq.
Craig A. Taggart, Esq.
600 Anton Blvd., 18th Floor
Costa Mesa, CA 92626
todd.gordiner@bingham.com
peter.villar@bingham.com
craig.taggart@bingham.com
Discovery Master:
Robert O'Brien
Arent Fox LLP
555 West 5th Street, 48th FL
Los Angeles, CA 90117

19

20 [X]    **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

21      I declare that I am employed in the office of a member of the bar of this Court at whose
22 direction the service was made.

23      Executed on June 29, 2009, at _____, _____.

24

25                                                            _____
                          Ramon Rodriguez

26

27

28

00505.07975/2989781.1

Case No. CV 04-9049 **EXHIBIT** x **3**
**PAGE** 62

1

## DOCUMENT LIST

2

3  MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FOR WHICH ANY CLAIMS OF
PRIVILEGE HAVE BEEN WAIVED

4

5  DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL
INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FOR WHICH ANY CLAIMS OF PRIVILEGE HAVE
6  BEEN WAIVED

7  APPLICATION TO FILE UNDER SEAL CERTAIN EXHIBITS TO THE
DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL
8  INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FOR WHICH ANY CLAIMS OF PRIVILEGE HAVE
9  BEEN WAIVED

10 [PROPOSED] ORDER RE APPLICATION TO FILE UNDER SEAL
CERTAIN EXHIBITS TO THE DECLARATION OF B. DYLAN PROCTOR
11 IN SUPPORT OF MATTEL INC.'S NOTICE OF MOTION AND MOTION
TO COMPEL PRODUCTION OF DOCUMENTS FOR WHICH ANY
12 CLAIMS OF PRIVILEGE HAVE BEEN WAIVED

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00505.07975/2989781.1

PROOF OF SERVICE

Case No. CV 04-9049

EXHIBIT 2
PAGE 63

EXHIBIT 3

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 4

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

        Plaintiff,

   vs.

MATTEL, INC., a Delaware
corporation,

        Defendant.

AND CONSOLIDATED ACTIONS.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. 04-9059 and 05-2727

**CERTIFIED COPY**

TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, August 13, 2009

Reported by:
THERESA TRANG MCDOUGALL
CSR No. 11952

Job No. 116948

EXHIBIT 5
PAGE 115

1    order remanding the decision back to me for further

2    consideration.  And the second motion is Mattel's

3    motion to compel production of documents, and is

4    basically -- for which claims of privilege is made and

5    waived by Omni 808.

6          What I want to do is address the -- is there

7    anything else, housekeeping-wise, that I should have

8    on today's calendar other than those two motions?

9       MR. MOLINSKI:  I actually have a scheduling issue

10   I'd like to address, either before or after.

11      MR. O'BRIEN:  Why don't we do the scheduling at

12   the end, because I do want to get input on any of

13   those matters from Counsel while we're all here.

14          I want to address the second motion first.  I

15   reviewed the documents and my understanding is that

16   the privilege log has now, in fact, been produced.

17          Is that the -- this is your motion,

18   Mr. Quinn.

19      MR. QUINN:  There is a privilege log provided.

20      MR. O'BRIEN:  All right.  And it's now my

21   understanding that -- from your motion -- that you

22   want those documents because the privilege log was

23   produced late, and the privilege -- and it's Mattel's

24   position that the privilege was waived as to the

25   documents on that privilege log because of the late

6

EXHIBIT 5
PAGE 116

1    production.

2         MR. QUINN:   The lateness and the inefficiency of

3    the log.

4         MR. O'BRIEN:   And the second issue is you want

5    sanctions because you had to bring a motion to get the

6    log.

7         MR. QUINN:   Yes.

8         MR. O'BRIEN:   I'm not going to order, at this

9    point, that the privilege has been waived because a

10   log was produced.  And that's a draconian under the

11   case law.  That's a draconian sanction for a late

12   production.

13        But I do want to hear -- and I don't need to

14   hear argument from you, but I do want to hear argument

15   from Omni 808 as to why it took so long to get the

16   privilege log, because my review of the documents

17   showed that the Quinn firm, on behalf of Mattel,

18   sought this log for some time.  The log, as Counsel

19   argued, is relatively sparse and it was produced

20   within a day of the motion having been filed.

21        It hasn't been my practice, except for one

22   instance, to award sanctions.  It's a complicated

23   case.  There are a lot of motions flying around.  It's

24   a lot of work for Counsel.  And it's not my

25   inclination to award sanctions on the discovery

EXHIBIT 5
PAGE 117

1   issues.  But there was an order to produce the

2   documents, a lot of time elapsed before the documents

3   were produced, and there was a further lapse of time

4   on the privilege log.

5        So I'd like to know if -- certainly what the

6   reason was for the delay in the privilege log.  And I

7   don't need you to address those issues; on the Mattel

8   side.  But from the Omni 808 side, what was the reason

9   for the privilege log taking so long to get over to

10  Mattel?

11       MR. VILLAR:  Well, I guess on -- from our

12  perspective, there wasn't a long delay in getting the

13  privilege log to Mattel.  We have produced over 10,000

14  pages of documents, as the Discovery Master is aware.

15  And, obviously, it took a substantial amount of time

16  to sift through the documents that were privileged and

17  the documents that were not privileged.

18       We produced the documents pursuant to the

19  Discovery Master's order on April 28.  And within

20  37 days of that date -- 23 court days -- we produced

21  the privilege log.  One of the things that happened in

22  between our initial production is, as the Discovery

23  Master is also aware, there was a supplemental

24  production that was ordered by the Discovery Master

25  based on Order No. 27.

8

EXHIBIT 5
PAGE 118

1          I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11          Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [   ] was [   ] was not requested.

15          I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:    AUG 1 7 2009

22

23

THERESA TRANG McDOUGALL

24  CSR No. 11952

25

EXHIBIT 5
PAGE 119

EXHIBIT 6

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

August 14, 2009

**VIA ELECTRONIC MAIL**

Peter Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924

Re:     Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Peter:

I write in response to your email yesterday and pursuant to the Discovery Master's direction at yesterday's hearing that the parties meet and confer on the subject of Omni's inadequate privilege log.

Mattel believes that Omni's privilege log provides inadequate information on the subject matter of the specific withheld communications to allow Mattel (or the Court) to assess Omni's assertions of privilege.

Most notably, all 174 entries on Omni's log repeat the exact same description, "Attorney-Client Email Communication Reflecting Legal Advice re Senior Secured Credit Facility," and all assert both attorney-client and work product privilege claims.

Here, because the nature of the subject matter—"senior secured credit facility"—is not a purely legal issue, some communications with an attorney may well simply be business related communications or advice which are not privileged. Without more information from Omni, that assessment cannot be made. Omni's rote descriptions and assertions, repeated for every entry, are akin to a blanket claim of privilege as they provide little information to assess the claim as to each communication claimed to be privileged. That is improper, and in fact, fails to substantiate a privilege claim. See James J. Binns, P.C. v. Flaster Greenberg, P.C., 2006 WL 2982141, at *2 (N.D. Ill. Oct. 13, 2006) (holding that "rote assertions" of privilege on a log "fail to satisfy that burden" imposed by the Rules and requiring disclosure of documents where "log contains the same assertion, verbatim, for each of the 179 documents listed on the log").

**quinn emanuel urquhart oliver & hedges, llp**

07975/3054028.1

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT 6
PAGE 120

Mattel is also unsure whether this privilege log contains only privileged documents that were responsive to the requests compelled by Order No. 3, or also those separate requests compelled in Order No. 27. If it is the former, please let me know when Mattel can expect a supplemental privilege log.

Finally, as the list of individuals cc'd on Entries No. 116 and 117 appears to be truncated, please confirm that the log accurately reflects all recipients.

I am available to discuss this issue on Monday, Tuesday or Wednesday next week. Please let me know what day and time is convenient for you.

Very truly yours,

*B. Dylan Proctor /RDK*

B. Dylan Proctor
07975/3054028.1

07975/3054028.1

EXHIBIT 6
PAGE 121

EXHIBIT 7

**BINGHAM**

Peter N. Villar
Direct Phone: 714.830.0640
Direct Fax: 714.830.0719
peter.villar@bingham.com

<u>Via Email</u>

August 18, 2009

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:  Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Dylan:

This shall respond to your August 14 letter in response to my August 13 correspondence regarding Omni's privilege log.

You assert that Mattel believes that Omni's privilege log provides inadequate information because all of the entries include the same description and all assert the attorney-client privilege and attorney work product doctrine.  Without citing any legal authority to support your assertion, you indicate that the description is potentially inadequate because "some communications with an attorney may well simply be business related communications or advice which are not privileged."  I do not follow your position.

As clearly indicated in the privilege log, each of the communications are between an attorney and client and each of them involves legal advice and assistance regarding Omni's acquisition of the Senior Secured Credit Facility from Wachovia.  That renders them privileged.  *See Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. Cal. 1992); *United States v. Nicholas*, 606 F. Supp. 2d 1109, 1115 (C.D. Cal. 2009); *Upjohn Co. v. United States*, 449 U.S. 383, 390-391 (U.S. 1981); *Fisher v. United States*, 425 U.S. 391, 403 (U.S. 1976); Fed. R. Evid. 501.  The fact that all of these attorney-client communications involve the same subject matter does not make the privilege log inadequate.  Revealing any more detailed information regarding the substance of the attorney-client communications would invade the privilege and would not change your or the court's analysis as to the privilege.

The single case you cite in your letter out of the Northern District of Illinois, *James J. Binns v. Flaster Greenberg, P.C.*, 2006 WL 2982141 (N.D. Ill. Oct. 13,

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

A/73121328.1

EXHIBIT 1
PAGE 122

B. Dylan Proctor, Esq.
August 18, 2009
Page 2

2006) is not remotely applicable. The problem in that case was that the privilege log for each entry merely stated: "Attorney work product; insured has not waived the protection with respect to this document." Id. at *2. The court found this vague description inadequate to assess whether the documents were, indeed, attorney work product. The party in that case did not even assert the attorney-client privilege. In contrast, each of our entries provides the specific date of the communication, the specific name of the author, the specific names of all recipients, a description of the subject matter of the communication and the privileges asserted.

Moreover, as I informed the Discovery Master at the hearing on August 13, in an effort to avoid a discovery dispute, I relied on a privilege log submitted by Mattel in this case. In that privilege log, Mattel used the identical description for each entry ("Legal advice regarding litigation matters"), which is more generic than our privilege log, and asserted the same privileges (Attorney Client Privilege and Attorney Work Product) for each entry. I assume Mattel believes its privilege log is legally adequate.

Finally, in response to your inquiries on page 2 of your letter, the privilege log contains documents responsive to both Order No. 3 and Order No. 27. Also, the lists of recipients on entries Nos. 116 and 117 is complete.

We do not want to burden the Discovery Master with another superfluous discovery motion. If you are not satisfied by my response, please tell me what additional information you believe is needed to satisfy you that these attorney-client communications are privileged. We can then have a further discussion if necessary.

I am generally available to meet and confer in person or by phone later today. I have some availability later this week and am generally available next week.

Sincerely,

Peter N. Villar

cc:    Todd E. Gordinier, Esq.

Bingham McCutchen LLP
bingham.com       A/73121328.1

EXHIBIT 7
PAGE 123

EXHIBIT 8

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

August 19, 2009

**VIA ELECTRONIC MAIL**

Peter Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924

Re:   Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Peter:

I write further to our conference earlier today regarding Omni 808's privilege log.

First, with regard to the log's descriptions of the withheld communications, which currently has the same description for all 174 entries, you agreed that you would review the communications at issue to determine whether further information could be provided. As I explained, Mattel will consider an agreement that information provided for purposes of explaining to what the entries relate will not be deemed a waiver. Moreover, the general subject matter of the communications is not privileged, and it certainly seems that more information can be provided without treading on the substance of privileged communications.

Second, with regard to Omni's work product claims, which have currently been asserted for every entry, you indicated that you would review these assertions and either provide more detail regarding the anticipated litigation at issue or withdraw the assertion.

Third, you agreed to provide further information regarding Kevin Tanna's role at Omni. You also agreed to provide further information about these individuals, including whether they are attorneys: Naida Adida, Karen Kordes, Alisa Malaki, Mary Vanzo. If they are not attorneys, we would appreciate if you can identify their specific roles at Omni.

Fourth, as I indicated to you on the call, the practice in this case has been for the parties to separately log any attachments that are being withheld, and you agreed you would review Omni's log and determine whether any of the withheld communications contained attachments that were not produced.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT 8
PAGE 124

As you indicated that this process could be accomplished within one week, we agreed to discuss these matters further next week on Wednesday, August 26, 2009.

I look forward to speaking with you then.

Very truly yours,

B. Dylan Proctor /BDK

B. Dylan Proctor
07209/3062788.1

07209/3062788.1

EXHIBIT 8
PAGE 125

EXHIBIT 9

# BINGHAM

Peter N. Villar
Direct Phone: 714.830.0640
Direct Fax: 714.830.0719
peter.villar@bingham.com

**Via Email**

September 1, 2009

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

**Re: Mattel, Inc. v. MGA Entertainment, Inc. et al.**

Dear Dylan:

As discussed, we have completed our review of Omni's privilege log and the privileged documents identified therein. This shall respond to the issues raised in your August 19 letter and our phone conference that day.

First, I want to make clear that Omni's privilege log does not contain the "same description for all 174 entries," as stated in your letter. The entries contain different dates, different authors and different recipients. The only similarity is that they all correctly indicate that the subject matter of the attorney-client communications includes legal advice regarding the Senior Secured Credit Facility. We believe the descriptions are adequate for Mattel and the court to determine that these communications are privileged and, as I have indicated, they provide more information than Mattel has provided in its privilege logs that we have obtained.

Further, during our phone conversation on August 19, I asked you to provide me an example (even hypothetically) of an entry that Mattel would deem to be sufficient. However, you indicated that you were unable to do so. I also asked you to provide me examples of Mattel privilege logs that you believe contain sufficient subject matter descriptions. You said that you would endeavor to do so, but, to date, you have not provided any such examples.

Notwithstanding, in an effort to avoid another unnecessary motion by Mattel, we are willing to provide additional information regarding the subject matter of these communications with the understanding that providing you such additional information will not be deemed a waiver of the privilege. Please confirm your agreement in writing.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington


Bingham McCutchen LLP
Plaza Tower, 28th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

EXHIBIT 9
PAGE 26

B. Dylan Proctor, Esq.
September 1, 2009
Page 2

Additionally, in response to your inquiry, I have confirmed that Kevin Tanna's role regarding the Wachovia debt acquisition was to provide legal advice and assistance as Omni's in-house attorney. His communications were in that capacity and are therefore privileged.

Finally, per your request, I have ascertained the roles of the individuals identified in your letter as follows: Naida Adida (accounting); Karen Kordes (administrative assistant); Alisa Malaki (accounting); and Mary Vanzo (administrative assistant).

We should be able to send you the amended privilege log by the end of this week. Accordingly, please confirm as soon as possible that you will not claim that we waive our privilege by providing you additional information.

If you have any questions, please give me a call.

Sincerely,

Peter N. Villar

cc:    Todd E. Gordinier, Esq.

EXHIBIT 9
PAGE 121

EXHIBIT 10

Omninet Capital
http://www.omninet.com/pe2.php?page=about_us&sub=team_Neil_Kadisha

# OMNINET™

| Home | Private Equity | Real Estate | Venture Capital | About Us |

## Team

🔖 "Courage is what it takes to stand up and speak, courage is also what it takes to sit down and listen"
-- Sir Winston Churchill

- 🔖 About Us
- 🔖 Team
- 🔖 News
- 🔖 Contact
- 🔖 Site Map

## About Us

**Neil Kadisha - Managing Partner**
Neil Kadisha is primarily responsible for providing management expertise and strategic planning for Omninet companies. He is also involved in seeking synergistic investment opportunities and offering industry insights for the evaluation of potential investments. Prior to Omninet, Neil founded and served as the CEO of numerous high-tech manufacturing companies. For over 15 years, Neil served on the Board of Directors of Qualcomm. He also serves on the Boards of various privately held companies. Neil's academic background is in Industrial Management and Economics.

**Benjamin Nazarian - Managing Partner**
Benjamin Nazarian is primarily responsible for Omninet's overall investment strategy. Benjamin currently serves as CEO and member of the Board of Directors of Stadco, a supplier of high precision parts and components for the defense and aerospace industry. He also serves on the Board of Directors of Paramount Scaffold, Plymouth Health, PWP Industries, and Texollini. Benjamin serves on the Board of Councilors of the Law Center at the University of Southern California and is a member of the Young Presidents Organization (YPO). He received his Juris Doctorate from the Law Center at the University of Southern California and holds a Bachelor of Science degree in Accounting, Cum Laude, from the University of Southern California.

**Parviz Nazarian - Managing Partner**
Parviz Nazarian offers his technical and industry vision for the evaluation of potential investments. He provides strategic guidance with the operation and management of Omninet's portfolio. Prior to Omninet, Parviz spent his career managing numerous companies in various industries including construction equipment, aerospace, and plastic equipment. Parviz is a member of the International Board of Governors of the Technion Institute of Technology and Tel Aviv University. Parviz served as a member of the Board of Directors of Qualcomm until 1994. He currently serves on the Board of Directors of privately-held Plymouth Health, PWP Industries and Stadco.

**Michael Daniel - Director**
Michael focuses his efforts on the acquisition and development of commercial and residential real estate projects, including the acquisition of commercial real estate debt. Michael received his Jurist Doctorate degree from the University of California, Berkeley, Boalt Hall School of Law. Michael holds a Bachelor of Arts degree in Economics, Magna Cum Laude, from the University of California, Los Angeles.

**Kevin P. Tanna - Vice President of Development**
Kevin is responsible for the origination and development of real estate investments throughout California, Nevada and Arizona. His efforts focus on the acquisition, design, and construction of commercial and multifamily residential projects and his diverse experience includes work in a real estate law firm primarily providing transactional support for the acquisition, construction, management, sales and leasing of commercial properties. Kevin is the founder of several entrepreneurial ventures, including an international trade company, and he has spent nearly a decade working alongside building contractors and developers. Kevin earned his Jurist Doctorate degree from Hofstra University, School of Law and a Bachelor of Science degree in Finance, Cum Laude, from the Hawaii Pacific University.

**Andrea Costantini - Vice President**
Andrea is responsible for assessing real estate investment opportunities and for the management of Omninet's private equity portfolio. On the real estate side, Andrea focuses on the underwriting of commercial real estate debt. On the private equity side, Andrea serves on the Board of

8/8/2009 5:05 PM

EXHIBIT 10
PAGE 128

EXHIBIT 11

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 12

Case 2:04-cv-09049-DOC-RNB   Document 7022-4   Filed 10/26/09   Page 49 of 105   Page ID
#:245336

 **REUTERS**

Print | Close this window

# Neil Kadisha Joins Entertainment & Media Leaders to Honor Producer Arnon Milchan

Tue Sep 23, 2008 11:29am EDT

Gala Event at Paramount Pictures in Hollywood Celebrated the 60th
Anniversary of the State of Israel
BEVERLY HILLS, Calif.--(Business Wire)--
On September 18, 2008, some of the most notable figures in
entertainment, media and business gathered to honor renowned film
producer Arnon Milchan and to celebrate the 60th Anniversary of the
State of Israel. The evening was hosted by the Consulate General of
Israel in Los Angeles and the Citizens Empowerment Center in Israel
(CECI).

    Milchan, a founder of New Regency Productions, is a prolific and
successful independent film producer with over 100 feature films to
his credit, including War of the Roses, Pretty Woman, JFK, and many
others.

    Also honored was the Council of Youth Movements in Israel which
represents the entire political, religious, and social spectrum of
Israel's youth Movements. The CYMI addresses topical subjects such as
education, youth involvement in social processes, and community
projects.

    Event Committee Member Neil Kadisha commented, "The many industry
leaders and influential members of the community who took part in
tonight's event bear witness to the importance of supporting a strong,
vibrant State of Israel. It was an honor to celebrate this momentous
anniversary among so many distinguished friends of Israel."

    Event Chairs for the evening included Peter Chernin (President &
COO, Newscorp), Jim Gianopulos (Chairman and CEO, 20th Century Fox
Filmed Entertainment), Brad Grey (Chairman & CEO, Paramount Pictures),
Barry M. Meyer (Chairman & CEO, Warner Bros.), Ron Meyer (President &
COO, Universal Studios), Leslie Moonves (President & CEO, CBS), Amy
Pascal (Co-Chair, Sony Pictures Entertainment), Sumner Redstone
(Executive Chairman, Viacom/CBS), Tom Rothman (Chairman & CEO, 20th
Century Fox Filmed Entertainment) and Terry Semel (Chairman & CEO,
Windsor Media).

    The CECI is a 501(c)3 non-profit, non-partisan organization
dedicated to helping pave the way for a more stable and democratic
Israeli society by empowering citizens through education. CECI's
initiatives include education programs in democracy, civic involvement
and leadership.

    Neil Kadisha and Omninet Capital have been supporters of CECI
since its inception in 2002. The organization was founded by the
Chairman of Omninet Capital, Izak Parviz Nazarian with Dora Nazarian
Kadisha, serving as Executive Director of the Western Region division.

Omninet
Kevin Tanna, 310-300-4100

Copyright Business Wire 2008

© Thomson Reuters 2008. All rights reserved. Users may download and print extracts of content from
this website for their own personal and non-commercial use only. Republication or redistribution of
Thomson Reuters content, including by framing or similar means, is expressly prohibited without the
prior written consent of Thomson Reuters. Thomson Reuters and its logo are registered trademarks or
trademarks of the Thomson Reuters group of companies around the world.

Thomson Reuters journalists are subject to an Editorial Handbook which requires fair presentation and



**EXHIBIT** 12
**PAGE** 130

EXHIBIT 13

 **REUTERS**

Print | Close this window

# Neil Kadisha and Omninet Recognize Knesset's Support for CECI

Wed Apr 9, 2008 12:16pm EDT

BEVERLY HILLS, Calif.--(Business Wire)--
Omninet Capital recently hosted a press conference for the
Citizens Empowerment Center in Israel (CECI). CECI is an apolitical,
non-partisan, non-profit center dedicated to promoting stability
through reform of the government structure and electoral system in
Israel and advocates a culture of accountability toward citizens.

    In a progressive move towards the reformation of the Israeli
political system two Members of the Knesset, Ophir Pines-Paz, MK,
Chairman of the Knesset Internal Affairs and Environment Committee and
Israeli politician and member of Knesset for Kadima, Yoel Hasson spoke
at the press conference organized by CECI to formally announce the
Knesset support for the efforts of the Citizens Empowerment Center in
Israel.

    Neil Kadisha and Omninet Capital have been supporters of CECI
since its inception in 2002. The organization was founded by the
Chairman of Omninet Capital, Izak Parviz Nazarian with Dora Nazarian
Kadisha, serving as Executive Director of the Western Region division.

    Neil Kadisha, Managing Member of Omninet Capital, who is also a
member of the Board of Directors for the Jewish Federation, strongly
believes that Israel is in a state of dire need for change and feels
that CECI is making strides towards the improvement of the political
system that has plagued the Knesset for nearly 60 years.

    Neil Kadisha is quoted to say: "Time does not change things,
people do. We must support those that are working hard to preserve the
culture we all believe to be so precious in Israel while at the same
time recognizing that the current political system is flawed and must
be modified for the good of the people."

    For further information on CECI and its continued efforts for a
better Israel please visit their website at http://www.ceci.org.il.

Omninet Capital
Kevin Tanna, 310-300-4100

Copyright Business Wire 2008

© Thomson Reuters 2008. All rights reserved. Users may download and print extracts of content from
this website for their own personal and non-commercial use only. Republication or redistribution of
Thomson Reuters content, including by framing or similar means, is expressly prohibited without the
prior written consent of Thomson Reuters. Thomson Reuters and its logo are registered trademarks or
trademarks of the Thomson Reuters group of companies around the world.

Thomson Reuters journalists are subject to an Editorial Handbook which requires fair presentation and
disclosure of relevant interests.



**EXHIBIT 13**
10/29/2009 12:52 PM
**PAGE 131**

EXHIBIT 14

# BINGHAM

Peter N. Villar
Direct Phone: 714.830.0640
Direct Fax: 714.830.0719
peter.villar@bingham.com

**Via Email**

September 1, 2009

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:  Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Dylan:

As discussed, we have completed our review of Omni's privilege log and the privileged documents identified therein. This shall respond to the issues raised in your August 19 letter and our phone conference that day.

First, I want to make clear that Omni's privilege log does not contain the "same description for all 174 entries," as stated in your letter. The entries contain different dates, different authors and different recipients. The only similarity is that they all correctly indicate that the subject matter of the attorney-client communications includes legal advice regarding the Senior Secured Credit Facility. We believe the descriptions are adequate for Mattel and the court to determine that these communications are privileged and, as I have indicated, they provide more information than Mattel has provided in its privilege logs that we have obtained.

Further, during our phone conversation on August 19, I asked you to provide me an example (even hypothetically) of an entry that Mattel would deem to be sufficient. However, you indicated that you were unable to do so. I also asked you to provide me examples of Mattel privilege logs that you believe contain sufficient subject matter descriptions. You said that you would endeavor to do so, but, to date, you have not provided any such examples.

Notwithstanding, in an effort to avoid another unnecessary motion by Mattel, we are willing to provide additional information regarding the subject matter of these communications with the understanding that providing you such additional information will not be deemed a waiver of the privilege. Please confirm your agreement in writing.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

EXHIBIT *14*
PAGE 122

B. Dylan Proctor, Esq.
September 1, 2009
Page 2

Additionally, in response to your inquiry, I have confirmed that Kevin Tanna's role regarding the Wachovia debt acquisition was to provide legal advice and assistance as Omni's in-house attorney. His communications were in that capacity and are therefore privileged.

Finally, per your request, I have ascertained the roles of the individuals identified in your letter as follows: Naida Adida (accounting); Karen Kordes (administrative assistant); Alisa Malaki (accounting); and Mary Vanzo (administrative assistant).

We should be able to send you the amended privilege log by the end of this week. Accordingly, please confirm as soon as possible that you will not claim that we waive our privilege by providing you additional information.

If you have any questions, please give me a call.

Sincerely,

Peter N. Villar

cc:     Todd E. Gordinier, Esq.

Bingham McCutchen LLP
bingham.com

EXHIBIT 14
PAGE 133

EXHIBIT 15

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 16

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 17

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 18

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 19



Contact Us | Check TheMLS.com Email

| HOME | BECOME A MEMBER | PRODUCTS & SERVICES | GENERAL INFORMATION | GUEST SEARCH | HELP | WEEKEND EDITION | HOMES & OPEN HOUSES |

## Listings & Open House Search

Login

ROSTER SEARCH

Agent Roster for Kevin P. Tanna Realty

Found 1 members matching your criteria.

Page 1 of 1

**Tanna, Kevin P.**

| | |
|---|---|
| Office Name: | Kevin P. Tanna Realty |
| Office Address: | 9420 Wilshire Blvd. Beverly Hills, CA 90212 |
| Office Phone: | 310-300-4114 |
| Office Fax: | 310-300-4131 |
| | [ Office Map ] |

Page 1 of 1

◀ Back One Page

© 1995-2009 The MLS®/CLAW    Terms Of Use | Search By City | CLAW Maps | Forms | Compliance | Rules & Regulations | Resources | Contact Us

EXHIBIT 19
PAGE 190

10/21/2009 5:19 PM

EXHIBIT 20



# Chiefmall.com
*All Contractors localized on the web!*

**Tanna Tile & Construction**
**www.chiefmall.com/ca/tanna-tile&construction**



**Expertise**

General Building Contractor
Ceramic And Mosaic Tile Contractor

**Contact**

☎ (310) 595-5500

**Location**

Beverly Hills, CA 90212



## Tanna Tile & Construction

General Building Contractor
Ceramic And Mosaic Tile Contractor

✎ Update your listing!

### Contact us

☎ Call : (310) 595-5500

📧 Address: P O Box 6233, Beverly Hills, CA 90212

### Who we are?

Kevin Payam Tanna, SOLE OWNER

✎ Update your listing!

### Related contractors

Sierra Pacific Constructors

Nami Marandi - Design / Build - F

The Ultimate Handyman

Taylordevelopment

Kavin Fence And Construction Co

Home | FAQ | About | Join | Sign in | Terms | Contact

2008 - 2009 © ChiefMall.com, Inc. All Rights Reserved

EXHIBIT 20
PAGE 141

EXHIBIT 21

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 22

1

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4    - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6    - - -

**CERTIFIED COPY**

7    MATTEL, INC.,                          )
8                          Plaintiff,       )
                                            )
9               vs.                         )   No. CV 04-09049
                                            )
10   MGA ENTERTAINMENT, INC., ET. AL.,      )
                                            )
11                       Defendants.        )
     _____)   Motions
12   AND CONSOLIDATED ACTIONS,              )
                                            )
13   _____)

14

15   REPORTER'S TRANSCRIPT OF PROCEEDINGS

16   Riverside, California

17   Wednesday, February 11, 2009

18   10:03 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
24     Federal Official Court Reporter
          3470 12th Street, Rm. 134
25      Riverside, California   92501
              951-274-0844
          WWW.THERESALANZA.COM

69

1    **MR. NOLAN:**   I think it would invite, perhaps, some
2    speculation as to why there was a difference.   I think it was
3    in one of the cases cited, where it was slightly different, but
4    the variance wasn't all that great.

5    **THE COURT:**   But the remittitur standard would be          01:33
6    whether or not the awards were less than the total amount by
7    the evidence.

8    So what's different here is that the amounts happen
9    to be all the same.

10   **MR. NOLAN:**   All of the same, at the instruction and        01:33
11   at the request of Mattel.   That's actually the difference, Your
12   Honor.

13   And I go back to the cases that they cited where that
14   is an interesting question posited by the court, which we're
15   not here to address because it didn't happen here.   There was   01:33
16   an inconsistent verdict, so the court was taking a look at all
17   of that.

18   Here, you don't have that problem.   The jury did
19   exactly what Mattel asked them to do and what you instructed
20   them to do.                                                      01:33

21   **THE COURT:**   Not exactly.

22   **MR. NOLAN:**   As to the form.

23   But they did do, Your Honor, based on the
24   presumption -- you told them to award the full amount of
25   damages.   That was your instruction.   And that is why, if you  01:34

Mattel vs. MGA Entertainme:

EXHIBIT
PAGE

70

1    follow the logical reason, their full amount of damages, based

2    on the instructions that they were provided and the evidence

3    that they were given, comes out to a consistent verdict.

4              THE COURT:  I do understand your argument.  Thank

5    you, Counsel.

6              MR. ZELLER:  Your Honor --

7              THE COURT:  No.  I've allowed the moving party to

8    speak first and last, and let's stick to that.  You have well

9    briefed these things.

10             I next want to take up Omni 808's ex-parte          01:34

11    application to intervene for limited purposes.

12             Mr. Gordinier.

13             MR. GORDINIER:  Thank you for offering me the

14   opportunity to address the Court.

15             We've set out in our papers, really, what we're     01:34

16   looking for here.  The transaction by which Omni 808 acquired

17   its interest and stepped into the shoes of Wachovia was

18   straightforward and it was at arm's length.  And I, frankly,

19   although naively, believed that if we would get stipulated to

20   be a party to the proceeding going forward, to the extent the 01:35

21   Court --

22             THE COURT:  Where do those funds come from?

23             MR. GORDINIER:  Mr. Kadisha, Your Honor, is a very

24   substantial individual.  Mr. Kadisha, Neil Kadisha, who is the

25   president and CEO of Omni 808, was one of the founders of      01:35

EXHIBIT 22
PAGE 162

1   Qualcomm.  With everything that's gone on in the market in the

2   last six or seven months, I don't want to make any

3   representations, but Mr. Kadisha has from time to time appeared

4   on the Forbes 400 list.  I don't know what his net worth is.

5          What happened, Your Honor, is, Wachovia called the                01:35

6   note.  I don't know why.  I've been involved in these cases

7   where everybody feels like the world revolves around what's

8   happening in this courtroom.  As the Court knows, Wachovia had

9   other issues.

10         Wachovia and its syndicate wanted it off its balance            01:35

11  sheet, and MGA needed relief from the immediate need to pay

12  money they did not have.  And my client was approached and put

13  together people and bought the indebtedness and assumed the

14  debt at a discount, at a substantial discount; and he expects

15  to make money.                                                         01:36

16         THE COURT:  You're representing to the Court, though,

17  that this was not MGA's money; that this was -- from wherever

18  it came from, it came from someplace else.

19         MR. GORDINIER:  Your Honor, two things.  I've never

20  met Mr. Larian, and I know less about MGA than almost everybody      01:36

21  else.

22         THE COURT:  I'm not asking about what you know from

23  MGA but of what you know from your client.

24         MR. GORDINIER:  What I know from my client is, he put

25  in many millions of dollars.  He had a couple of investors with      01:36

72

1   him to put in many millions of dollars.

2          THE COURT:   Those investors and that money did not

3   come from MGA?

4          MR. GORDINIER:   That's the best of my understanding,

5   Your Honor.   That's true.                                          01:36

6          And the best way to resolve that is what the Court

7   has already done.   The Court did exactly the right thing and

8   set up Mr. Durkin, who's very accomplished, to look at MGA's

9   books.   Step number one, he can tell the Court what their

10  balance sheet is, what their income statement is, and also the     01:37

11  sources and uses of cash.

12         And if there are any issues -- and, by the way, I'm

13  happy to talk to Mr. Durkin or have Mr. Durkin talk to my

14  client.   This is not intended to be -- this wasn't a fraudulent

15  transaction, Your Honor.   We negotiated -- we -- I didn't do      01:37

16  it -- Omni 808 negotiated with Davis Polk on behalf of Wachovia

17  and bought at a discount; and Omni 808 expects to and would

18  like to make money on its investment, and will not be able to

19  do so, obviously, if MGA goes out of business.   So our interest

20  here is in protecting Omni 808's investment.   And part of that    01:38

21  is wanting a say in how MGA's business on this receiver issue

22  is dealt with.

23         THE COURT:   The interest to intervene is focused, as

24  you indicate in your papers, on the receivership issue?

25         MR. GORDINIER:   That's correct, Your Honor.   That's       01:38

1    correct.

2            THE COURT:  Very well.

3            Does anyone wish to be heard in opposition to the

4    ex-parte application?

5            MR. ZELLER:  Yes, Your Honor.                          01:38

6            I don't know that we've been -- and maybe the Court

7    heard it differently, but I still do not hear anything that

8    certainly approaches evidence that this was, in fact, an arm's

9    length transaction.

10           THE COURT:  I have a representation from respected      01:38

11   counsel.

12           MR. ZELLER:  Well, he said -- Your Honor, the

13   Court -- all he said was to the best of his knowledge.  He

14   didn't say it didn't come from it.

15           Second, the Court asked MGA; it didn't ask from        01:39

16   Larian, Larian's brother-in-law, his wife -- there are other

17   family members involved in this, and their fingerprints are on

18   this.  So, certainly, I want to be very clear, Your Honor, we

19   have not gone so far as to say, this is a fraud, this is a

20   sham, or so on.  The fact is that there are substantial         01:39

21   questions here as to the bona fides of this transaction and

22   whether or not this has been papered in a way to basically

23   create debt and credit, where, in fact, it would simply be

24   treated by the tax code, by the bankruptcy code, by the courts,

25   for every other purpose, as, in fact, being nothing but a loan, 01:39

EXHIBIT 22
PAGE 765

1   we'll go from there.

2          MR. ZELLER:   Thank you.

3          THE COURT:   Anything further?

4          Thank you.   Good day.

5

6

7

8

9

10                         CERTIFICATE

11

12   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
13   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
     the United States.

15

16   _Theresa A. Lanza_                      _2-13-09_
     THERESA A. LANZA, CSR, RPR                    Date
17   Federal Official Court Reporter

18

19

20

21

22

23

24

25

EXHIBIT 23

1

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3       EASTERN DIVISION

4       - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6       - - -

7   MATTEL, INC.,                    )
                                     )
8                    Plaintiff,      )
                                     )
9            vs.                     )   No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. Al., )
                                     )
11                   Defendants.     )   MOTIONS
                                     )
12  AND CONSOLIDATED ACTIONS,        )
                                     )

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16       RIVERSIDE, CALIFORNIA

17       MONDAY, MAY 18, 2009

18       1:52 P.M.

19

20

21

22

23       THERESA A. LANZA, RPR, CSR
         Federal Official Court Reporter
24       3470 12th Street, Rm. 134
         Riverside, California  92501
25       951-274-0844
         www.theresalanza.com

EXHIBIT 23
PAGE 167

1      So it's important to keep in mind that, even though

2  the language used with respect to these allegations might be

3  quite broad, from the Court's perspective anyway, the concern

4  has been and remains only whether or not any of these financial

5  transactions are in any way obstructing or affecting the      02:50

6  Court's orders.  That's my only concern.

7      My only concern here, with respect to Mr. Larian,

8  with respect to Omni 808, with respect to any of these

9  entities, is whether or not what the Court has found and what

10  the Court has ordered can be effectively implemented.  If      02:50

11  something is frustrating that, the Court is of concern.  If

12  it's not frustrating that, that is for other entities and other

13  authorities to be concerned with.

14      Do you understand what I'm saying?

15      MR. GORDINIER:  I do understand what you're saying,      02:50

16  Your Honor.  But Mattel has called it unlawful, and the Court

17  has expressed a concern about whether something that Omni 808

18  was involved in was intended to or have the effect of

19  frustrating any of the Court's orders.  And I want to assure

20  the Court today that it did not.                              02:50

21      And I'm prepared here to describe to the Court, in

22  however much detail the Court wants to hear, about how that

23  transaction was prepared, executed, and is operating today, to

24  satisfy yourself.

25      The short answer, Your Honor, is, it doesn't           02:51

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT 23
PAGE 768

45

1    implicate the IP at all.  And I don't think that's something

2    that's been made clear.

3         What happened was that Omni stepped into the shoes of

4    Wachovia.  It got nothing more and nothing less.  And that did

5    not include the IP; that did not include the intellectual          02:51

6    property.

7         THE COURT:  I think the concern is not so much -- I

8    don't think anybody disputes what you just said, other than --

9         MR. GORDINIER:  Actually, Mattel does.

10        THE COURT:  Well, the question, I think, that Mattel       02:51

11   raises is, first of all, who is Omni 808?

12        MR. GORDINIER:  They do raise that.

13        THE COURT:  Right.

14        And the second question is not so much that

15   directly -- that the IP, including part of their intellectual   02:51

16   property, is part and parcel of the security that has been

17 - encumbered by that transaction.

18        MR. GORDINIER:  That's what I'm just telling you,

19   Your Honor.  It is not.  The security did not include the

20   intellectual property.                                          02:52

21        THE COURT:  Okay.  Well --

22        MR. GORDINIER:  I mean, that's -- so there was

23   nothing involved in that transaction that either was intended

24   to or had the effect of either trying to evade or alter or

25   obstruct any of the Court's orders.                             02:52

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT 23
PAGE 169

1          **THE COURT:**   I appreciate your statements, Counsel.

2     The Court is not prepared -- I literally just received the

3     supplemental report, which responds to the reports that were

4     made last week.   Again, this is the subject of potentially a

5     third amended answer and counterclaim.   The Court is not going          02:52

6     to make a definitive statement.

7          I'm not going to fall into the mistake of prejudging

8     an issue which may very well be the subject of a trial; it may

9     be the subject of summary judgment motions.   I'm not prepared

10    to go there, given where this fits in to the litigation at this          02:53

11    point.

12          Do you understand that?

13          **MR. GORDINIER:**   I do understand it.   And I appreciate

14    it, Your Honor.

15          **THE COURT:**   We probably need to take -- the Court --          02:53

16    particularly with respect to the report, the forensic auditor's

17    report, I tried to take great care to keep that under seal.

18    And MGA, in responding to it, filed under seal; and Mattel did

19    as well.   You didn't.   Omni 808 did not place -- so I take it,

20    from your perspective, you're waiving any confidential issues          02:53

21    with respect to the contents of the forensic auditor's report.

22          **MR. GORDINIER:**   My brief speaks for itself.

23          We have nothing to hide.   I did not, as part of that,

24    attach the auditor's brief.   I read the Court's order, in fact,

25    to restrict me from even showing it to an expert or two that I          02:53

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT 23
PAGE 770

1   would have liked to have shown it to.  But I don't have

2   anything to hide, Your Honor; and I didn't feel it appropriate,

3   necessary, or desirable to file my brief under seal.  And I

4   don't have any problem with the Court or anybody reading what I

5   have to say, because I gave it a lot of thought, and I gave it          02:54

6   a lot of consideration.

7        Many hundreds of thousands of dollars have been, in

8   my judgment, wasted with irresponsible allegations.  There is

9   no factual support for either the allegation that Mattel has

10  made to Mr. O'Bryan that my client gifted $50 million to MGA,          02:54

11  or the allegation that they're making here, that somehow

12  Mr. Larian controls my client and can get all of that funding.

13  Neither is true.

14        THE COURT:  I understand that you are vociferously

15  objecting to those allegations, Counsel.                               02:54

16        MR. GORDINIER:  I am.  And I think the more they get

17  the light of day, the better they are.

18        And my concern today, Your Honor -- and I appreciate

19  it; I did not know that -- though I'm not surprised -- that

20  Mr. Durkin felt compelled to respond.                                  02:55

21        THE COURT:  He didn't feel compelled to respond.  He

22  was directed by the Court to respond.

23        MR. GORDINIER:  All right.

24        Well, it doesn't surprise me that a response was

25  necessary.  Because my client's transaction had no impact on           02:55

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.
                                        EXHIBIT 23
                                        PAGE 171

1    the balance sheet of MGA; and Mr. Durkin knew better; and had

2    no impact on the solvency of MGA.  If anything, it had a

3    positive impact on the cash position of MGA.  And Mr. Durkin

4    knew better.  And Mr. Durkin chose not to tell the Court,

5    apparently, about either the financial surroundings of the                    02:55

6    transaction or the nature of the transaction that was engaged

7    in.  And that was not right.

8          And, Your Honor, I just want to make sure that the

9    Court, going forward, doesn't have any concerns about Omni 808

10   that are going to prejudice my client going forward until we               02:55

11   resolve this.  Because, for example, as I was driving here

12   today, I understand that Mr. O'Bryan, the discovery master,

13   issued an order, in part, in reliance on what Mr. Durkin said

14   about my client.  So that's having a real and substantial,

15   immediate impact on my clients, who deserve to have their name          02:56

16   cleared.

17         So I don't want to rush the Court, and I'm perfectly

18   happy to have the Court release this supplemental report and

19   we'll work through all of this, because I am very confident

20   that when you understand what happened and why, not only will           02:56

21   you be satisfied that my client didn't do anything wrong,

22   you'll understand that MGA would not have survived, Your Honor,

23   MGA would not have survived to even see the order that you

24   issued in December.  It was going to be dismantled and

25   liquidated by Wachovia, who had its own problems, and ended up          02:56

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT 23
PAGE 172

49

1    disappearing altogether.

2           So I do want to drill down on this, Your Honor, and I

3    know you'll give me as much of an opportunity as I need to

4    respond to what Mr. Durkin is saying and to retain experts, if

5    necessary.  I just want to assure the Court that this is --          02:57

6    people can make whatever allegations, but this is a frolic in

7    detour.  This is not what Phase 2, at least as I understood it,

8    was about.  If Mattel wants to make it into this, fine.  But I

9    can tell the Court, it's baseless.

10          I can tell the Court, Omni put up its money in a very        02:57

11   difficult situation.  As I told the Court on February 11th,

12   $50 million, and we expect to and hope to make a profit on it.

13   And most fundamentally, Your Honor, my client -- and I urge you

14   to talk to Mr. Fraioli about this -- is part of the solution to

15   this, not part of the problem.  We have ways we can help solve      02:57

16   this problem.

17          If Mattel truly wants to work through this transition

18   and truly wants to effect a smooth transition of the IP, and

19   let the parties divorce and go their ways, we can help that.

20   And we should be allowed to help that.                              02:57

21          If, on the other hand, Mattel is intent on destroying

22   MGA, then it's not surprising they object to our involvement

23   and they're calling us names that aren't appropriate.

24          I apologize, and I appreciate the Court's indulgence.

25   And what I'm taking from the Court's sense is that we're going      02:58

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT 29
PAGE 173

125

1          MS. GLASER:   And we haven't had the benefit of that.

2     I think if we're paying -- at least temporarily, we at least

3     ought to see --

4          THE COURT:   Part of what will occur at this point is

5     a complete accounting of all money spent during the 20-day          05:05

6     temporary receivership.   You will be receiving that shortly

7     from Mr. Fraioli, which will account for all of the money

8     spent.   And on a going-forward basis, the Court will specify

9     how future payments are to be made.

10          And as I indicated before, at the end of the day,          05:05

11    everyone will have the opportunity to revisit the issue of cost

12    sharing.

13          MS. GLASER:   Thank you very much.

14          THE COURT:   Is there anything further?

15          MR. QUINN:   No, Your Honor.          05:06

16          THE COURT:   Have a good evening.

17          (Court is adjourned.)

18                    CERTIFICATE

19

20    I hereby certify that pursuant to section 753, title 28, United
      States Code, the foregoing is a true and correct transcript of
21    the stenographically recorded proceedings held in the above-
      entitled matter and that the transcript page format is in
22    conformance with the regulations of the Judicial Conference of
      the United States.

23

24    _____          _____
      THERESA A. LANZA, CSR, RPR                         Date
25    Federal Official Court Reporter                  May 29, 2009

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT 23
PAGE 174

EXHIBIT 24

1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    JENNIFER A. LOPEZ (SBN 232320)
4   jennifer.lopez@bingham.com
    600 Anton Boulevard
5   18th Floor
    Costa Mesa, CA  92626-1924
6   Telephone:  714.830.0600
    Facsimile:  714.830.0700
7

8   Attorneys for Non-party
    OMNI 808 INVESTORS, LLC
9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                   EASTERN DIVISION

13

14   Carter Bryant, an individual,        Case No. CV 04-9049 SGL (RNBx)

15              Plaintiff,                 **OMNI 808 INVESTORS, LLC'S** *EX*
                                           *PARTE* **APPLICATION FOR LEAVE**
16              v.                         **TO INTERVENE FOR LIMITED**
                                           **PURPOSE AS A MATTER OF**
17   Mattel, Inc., a Delaware Corporation, **RIGHT OR, IN THE**
                                           **ALTERNATIVE, FOR PERMISSIVE**
18              Defendant.                 **INTERVENTION**

19
                                           Judge:  Hon. Stephen G. Larson
20

21   AND CONSOLIDATED ACTIONS

22

23

24

25

26

27

28

                              2-3-09

A/72829697.5/3009108-0000335082

EXHIBIT 24
PAGE 175

1        Omni 808 Investors, LLC ("Omni") hereby applies *ex parte* pursuant to Rule

2   24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure and

3   Local Rule 7-19, for an order authorizing it to intervene for the limited purpose of

4   responding to Mattel, Inc.'s ("Mattel") *Ex Parte* Application for Appointment of a

5   Receiver for MGA Entertainment, Inc. ("MGA") and all other issues related to

6   Omni's status as a secured creditor of MGA.

7        Omni makes this application on the grounds that Mattel's request for the

8   appointment of a receiver at MGA may have an immediate and irreparable adverse

9   impact on Omni, MGA's largest secured creditor. Omni satisfies all of the

10   requirements to intervene as a matter of right: the application is timely; Omni has

11   a significantly protectable interest relating to the property or transaction involved

12   in the pending lawsuit; disposition of the lawsuit may adversely affect Omni's

13   interest unless intervention is allowed; and the existing parties do not adequately

14   represent Omni's interest. In the alternative, the Court should exercise its

15   discretion to grant permissive intervention because Omni has a claim that shares a

16   common question of law or fact with the main action.

17        Good cause exists to seek this relief on an *ex parte* basis because Mattel has

18   made its request for the appointment of a receiver on an *ex parte* basis. If the

19   Court appoints a receiver, Omni may suffer irreparable harm.

20        Pursuant to Local Rule 7-19, on February 2, 2009, Omni's counsel gave

21   notice of this *ex parte* application and the relief being sought to counsel for MGA,

22   Robert Herrington of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-

23   687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles, California

24   90071) and counsel for Mattel, Jon Corey of Quinn Emanuel Urquhart Oliver &

25   Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th

26   Floor, Los Angeles, California 90017-2543). Counsel for MGA stated that MGA

27   will not oppose this application. Counsel for Mattel stated that Mattel will oppose

28

- 1 -

EXHIBIT 24
PAGE 176

1   this application because it is Mattel's view that MGA as debtor can adequately

2   protest the interests of its largest secured creditor.  Omni disagrees.

3       This application is based on this Notice of *Ex Parte* Application, the

4   accompanying Memorandum of Points and Authorities, the records and files of this

5   Court, including without limitation the Phase 1 trial record, and all other matters of

6   which the Court may take judicial notice.

7

8   DATED:  February 3, 2009       Bingham McCutchen LLP

9

10

11                   By: _____

12                     Todd E. Gordinier
                            Attorneys for Non-party
                            Omni 808 Investors, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

EXHIBIT 24
PAGE 177

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 3 |
| III. | LEGAL ARGUMENT | | 6 |
| | A. | Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor | 6 |
| | | 1. Omni's Application Is Timely. | 7 |
| | | 2. Omni Has a Significantly Protectable Interest in the Receivership Issues Involved in the Pending Litigation. | 7 |
| | | 3. The Appointment of a Receiver May Impair or Impede Omni's Ability to Protect Its Interests. | 8 |
| | | 4. The Existing Parties May Not Adequately Represent Omni's Interest. | 9 |
| | B. | In the Alternative, This Court Should Grant Omni Permissive Intervention | 10 |
| IV. | CONCLUSION | | 11 |

-i-

A/72829697.5/3009108-0000335082

EXHIBIT 24
PAGE 178

# TABLE OF AUTHORITIES

FEDERAL CASES

Page(s)

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003)........................................................6, 9

*Beckman Indus. Inc. v. International Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992)...............................................................6

*Commerz Union Austalt v. Collectors' Guild, Ltd.,*
    792 F. Supp. 870 (S.D.N.Y. 1991)........................................................8

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
    187 F. Supp. 910 (S.D. Ohio 2001).......................................................9

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998)...............................................................6

*Engra, Inc. v. Gabel,*
    958 F.2d 643 (5th Cir. 1992)...............................................................7

*Forest Conservation Council v. United States Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995)...............................................................7

*Kootenai Tribe v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002)............................................................10

*League of United Latin American Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997)..............................................................6

*Lockyer v. U.S.,*
    450 F.3d 436 (9th Cir. 2006)...............................................................6

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
    906 F. Supp. 428 (E.D. Mich. 1995)......................................................9

*Mountain Top Condominium v. Dave Stabbert Master Builder,*
    72 F.3d 361 (3rd Cir. 1995)................................................................8

*NL Indus. v. Secretary of Interior,*
    777 F.2d 433 (9th Cir. 1985)...............................................................8

-ii-

EXHIBIT 24
PAGE 179

*Reich v. ABC/York-Estes Corp.,*
    64 F.3d 316 (7th Cir. 1995) ........................................................... 3

*Rumbaugh v. Beck,*
    491 F. Supp. 511 (E.D. Pa. 1980) .................................................. 9

*Saluck v. Rosner,*
    1999 WL 46620 (E.D. Pa. Jan. 6, 1999) ........................................ 9

*San Juan County v. U.S.,*
    503 F.3d 1163 (10th Cir. 2007) ..................................................... 7

*SEC v. Flight Transp. Corp.,*
    699 F.2d 943 (8th Cir. 1983) ......................................................... 8

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993) ....................................................... 8

*Southwest Center for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ..................................................... 3, 7

*Stringfellow v. Concerned Neighbors in Action,*
    480 U.S. 370 (1987) ....................................................................... 6

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) ....................................................................... 9

*U.S. v. South Florida Water Dist.,*
    922 F.2d 704 (11th Cir. 1991) ....................................................... 7

*United States v. State of Washington,*
    86 F.3d 1499 (9th Cir. 1996) ......................................................... 7

*Venegas v. Skaggs,*
    867 F.2d 527 (9th Cir. 1989) ....................................................... 11

*Yniguez v. Arizona,*
    939 F.2d 727 (9th Cir. 1991) ......................................................... 8

RULES

Fed. R. Civ. P. 24(a) ......................................................................... 6

Federal Rule of Civil Procedure 24(b)(2) ........................................ 10

A/72829697.5/3009108-0000335082

EXHIBIT 24
PAGE 180

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor of MGA Entertainment, Inc. ("MGA").  Omni recently was served with a sweeping subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting the production of documents relating to Omni's formation, governance, finances, business relationships and transactions.  Mattel's papers in support of its request to have the Court appoint a receiver to "oversee and control all business and financial aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel purports to describe to this Court.  Because the appointment of a receiver could significantly and irreparably harm Omni's interests as a senior secured creditor of MGA, Omni hereby seeks leave of Court to intervene in this action for this limited purpose.

Mattel's *ex parte* application is replete with false and misleading representations and demonstrates Mattel's profound misunderstanding, *inter alia*, of Omni and the circumstances surrounding its recent purchase of MGA's debt from non-party Wachovia.  The actual background of this transaction is both straightforward and easily explained.  In October 2006, Wachovia Bank, National Association and a syndicate of other financial institutions (collectively, "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank Credit Facility").  In July 2008, Wachovia accelerated the maturity of the outstanding debt obligations owed to Wachovia by MGA (over $310 million), demanding full and immediate payment of the entire unpaid balance as it was entitled to do under the terms of its Senior Bank Credit Facility.

In response to Wachovia's accelerated loan payment demand, MGA began efforts to find someone who would purchase the Senior Bank Credit Facility from Wachovia.  Neil Kadisha, the Managing Partner of a diversified investment firm, Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

EXHIBIT 24
PAGE 181

1   regarding a potential purchase of the Senior Bank Credit Facility. In September
2   2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for
3   this transaction) entered into an assignment and exchange agreement whereby
4   Omni acquired all right, title and interest in the Senior Bank Credit Facility
5   excluding approximately $21 million which was retained by Wachovia. Omni's
6   purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,
7   arms-length business deal between non-parties to this action.

8           In support of its argument for the appointment of a receiver, Mattel
9   insinuates, without any evidence, that there was something untoward about the
10  timing and circumstances of Omni's debt purchase transaction. Mattel falsely
11  represents to the Court that MGA received new "sudden funding" from an "off-
12  shore, non-operating" entity during the trial of this action. Even allowing for its
13  ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason
14  for such language. If by "funding" Mattel means the loan from Wachovia, that
15  funding was provided by Wachovia to MGA under the Senior Bank Credit Facility
16  beginning in 2006 -- *long before the trial and any judgment was entered against*
17  *MGA in this action in 2008*. If by "funding" Mattel means the Omni-Wachovia
18  transaction, the monies flowed *from Omni to Wachovia* as consideration for the
19  purchase of the debt owed by MGA. The timing of the Omni-Wachovia
20  transaction in September 2008 was driven by a host of factors, most proximately
21  by Wachovia's decision to accelerate the outstanding debt obligation under the
22  Senior Bank Credit Facility.

23          Moreover, the source was not an "off-shore, non-operating" entity, as Mattel
24  repeatedly suggests in its application. Wachovia (defined to include it and its
25  syndicate of bank and other institutional lenders), the original source of the
26  funding, are all substantial financial institutions; Omni, the assignee of the loan, is
27  a California limited liability company. Mattel's paranoiac rhetoric regarding this
28  transaction and the source of the funding is unfounded.

- 2 -

EXHIBIT 24
PAGE 162

1       Under federal law, a non-party is entitled to intervene *as a matter of right*
2   when it claims an interest relating to the property or transaction that is the subject
3   of the action and is so situated that disposing of the action may as a practical
4   matter impair or impede its ability to protect its interest.  A non-party may also
5   intervene, in the discretion of the court, when it has a claim that shares with the
6   main action a common question of law or fact.

7       Here, Omni has a secured interest in MGA's assets, including, *inter alia*,
8   MGA's inventory and accounts receivable, that is far greater and superior to any
9   alleged interest of unsecured creditors like Mattel.  Mattel is asking this Court for
10   an extraordinary remedy, solely to suit its own litigation and competitive interests,
11   which if granted could well cripple MGA's operations and would certainly impair
12   the security interests of Omni and other creditors.  Indeed, the proffered basis for
13   Mattel's opposition to Omni's application for leave to intervene -- that a debtor can
14   adequately represent the interests of its largest secured creditor -- speaks volumes
15   about Mattel's approach not only to this issue but also to its actual motivations in
16   making its request for a receiver.

17       For these reasons, Omni respectfully requests that the Court grant it leave to
18   intervene in this action for the purposes of challenging the appointment of a
19   receiver and related issues that could adversely affect Omni's security interests.

20

21   **II.    STATEMENT OF FACTS[1]**

22       On or about October 27, 2006, MGA entered into a Credit Agreement with
23   Wachovia Bank, National Association and a syndicate of other banks and

24

25   [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory
26   allegations contained in the motion. *Southwest Center for Biological Diversity v.*
     *Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.*, 64 F.3d
27   316, 321 (7th Cir. 1995).

28

-3-

EXHIBIT 24
PAGE 133

1  institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2  provided a senior revolving credit facility to MGA in an aggregate available

3  amount for borrowing up to $400 million, secured by a senior perfected security

4  interest in, *inter alia*, all of MGA's inventory and accounts receivable (the "Senior

5  Bank Credit Facility"). On July 21, 2008, Wachovia declared the Senior Bank

6  Credit Facility to be in default and accelerated the maturity of the outstanding debt

7  obligations owed to Wachovia by MGA, demanding full and immediate payment

8  of the entire unpaid $313,496,700 balance of the loans.

9  In response to Wachovia's accelerated loan payment demand, MGA

10  approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11  currently the Managing Partner of a diversified investment firm, Omninet Capital,

12  LLC.[2]  Mr. Kadisha and Omninet Capital, LLC have substantial experience

13  evaluating and investing in distressed debt and distressed companies. Mr. Kadisha

14  immediately commenced negotiations with Wachovia regarding a potential

15  purchase of the Senior Bank Credit Facility from Wachovia.

16  On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17  the Senior Bank Credit Facility, including the outstanding debt obligations from

18  Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19  amount of the debt obligations outstanding as of the acceleration date). After a

20  couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21  in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22  Credit Facility to Omni (the retained amount was then exchanged for unsecured

23  promissory notes issued by MGA to Wachovia). In order to fund the acquisition of

24

25  [2]  Omni is loathe to address the gratuitous ad hominem attacks concerning Mr. Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which

26  are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by those matters Omni is prepared to do so. Suffice it to say for now that the civil

27  litigation matter referred to by Mattel has not yet been finally resolved.

28

- 4 -

EXHIBIT 24
PAGE 184

1    the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2    formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3    liability company ("Omni")[3]. The formation of a special purpose entity is very

4    common for these types of transactions and is neither suspicious nor improper.

5         On or about September 3, 2008, Omni and Wachovia entered into a written

6    Master Assignment and Exchange Agreement whereby Omni acquired all right,

7    title and interest in the debt obligations under the Senior Bank Credit Facility,

8    other than the $21,944,769 exchanged for the unsecured promissory notes issued

9    by MGA to Wachovia Bank, National Association and the other original lenders.

10    As a result of the agreement, Omni stepped into and presently stands, as successor-

11    in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12    has a senior perfected security interest in MGA's assets, including, *inter alia,*

13    MGA's inventory and accounts receivable. Omni's secured interest is superior to

14    that of any potential unsecured creditors, including Mattel.

15         Omni has a compelling interest in the financial health and stability of MGA

16    and its assets. If MGA fails, MGA's ability to repay the outstanding debt

17    obligation in excess of $300 million owed to Omni will certainly be imperiled.

18    The appointment of a receiver to "oversee and control all financial and business

19    aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20    operate independently and efficiently and would infringe upon, or potential

21    foreclose, the interests of Omni and other creditors.

22

23

24

25

26    [3] Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*
27    application, which further demonstrates Mattel's confusion regarding the entities
involved.

28

EXHIBIT 24
PAGE 185

## III.   LEGAL ARGUMENT

### A.   Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor

Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a).  Rule 24(a) provides that a court must permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." *See also, Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006).  The Ninth Circuit construes Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).  The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate. *Donnelly*, 159 F.3d at 409.  "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations.  We generally interpret the requirements broadly in favor of intervention." *Id.*

When a non-party claims an interest relating to the subject property or transaction of the action, courts generally require four factors:  (1) a timely application; (2) the applicant has a "significantly protectable" interest relating to the property or transaction involved in the pending lawsuit; (3) the disposition of the lawsuit may adversely affect applicant's interest unless intervention is allowed; and (4) the existing parties may not adequately represent the would-be intervenor's interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Additionally, a district court has the discretion to grant a non-party limited intervention for certain issues or purposes. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

- 6 -

EXHIBIT 24
PAGE 186

1  470, 473 (9th Cir. 1992).  "A nonparty may have a sufficient interest for some

2  issues in a case but not others, and the court may limit intervention accordingly."

3  *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4  *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5           1.     Omni's Application Is Timely.

6           Courts generally consider the following factors relevant to the issue of

7  timeliness:  (1) the stage of the proceedings at the time the applicant seeks to

8  intervene;  (2) the prejudice to the existing parties from applicant's delay in seeking

9  leave to intervene; and (3) any reason for and the length of delay in seeking

10  intervention.  *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11  1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12          Here, Omni's application is timely.  On or about January 9, 2009, Mattel

13  served a subpoena on Omni requesting the production of documents relating to

14  Omni's formation, governance, finances, business relationships and transactions.

15  Omni also recently learned that Mattel filed an *ex parte* application for the

16  appointment of a receiver at MGA.  The Court has yet to decide the pending

17  request for the appointment of a receiver and Omni has acted without delay.

18          2.     Omni Has a Significantly Protectable Interest in
                   the Receivership Issues Involved in the Pending
19                 Litigation.

20          "[W]hether an applicant for intervention demonstrates sufficient interest in

21  an action is a practical, threshold inquiry.  No specific legal or equitable interest

22  need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23  810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24  Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25  F.3d 1489, 1493 (9th Cir. 1995).  "It is generally enough that the interest [asserted]

26  is protectable under some law, and that there is a relationship between the legally

27  protected interest and the claims at issue." *Southwest Center for Biological*

28  *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

- 7 -

EXHIBIT 24
PAGE 181

1   Cir. 1993)).  *See, e.g., NL Indus. v. Secretary of Interior,* 777 F.2d 433, 435 (9th

2   Cir. 1985) (corporate property owner that held unpatented mining claim on

3   particular property permitted to intervene in dispute over other mining claims on

4   that property).  An intervenor's interest must be "significantly protectable such that

5   it will be directly and immediately affected by the litigation."  *Werbungs und*

6   *Commerz Union Austalt v. Collectors' Guild, Ltd.,* 792 F. Supp. 870, 874

7   (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor

8   had secured appeal bond and owned collateral securing letter of credit).

9       Here, Omni is the largest secured creditor of MGA, with a superior interest

10  in MGA's assets to any unsecured creditors including Mattel.  Omni's interest is

11  directly related to issues raised by Mattel in its *ex parte* application for the

12  appointment of a receiver.  Therefore, Mattel has a significantly protectable

13  interest relating to the property or transaction which is the subject of this action.

14          3.      The Appointment of a Receiver May Impair or
                    Impede Omni's Ability to Protect Its Interests.
15

16      In order to show that the disposition of the action may impair or impede the

17  ability to protect a non-party's interest, the non-party need only show a "practical"

18  impairment, "not whether the decision itself binds them." *Yniguez v. Arizona,* 939

19  F.2d 727, 735 (9th Cir. 1991).  Courts consistently allow creditors to intervene "of

20  right" where a receiver has been appointed and taken control of a debtor's assets.

21  The rationale is that the first creditor's action may effectively foreclose the

22  interests of other creditors.  *See Sierra Club v. U.S.,* 995 F.2d 1478, 1486 (9th Cir.

23  1993); *SEC v. Flight Transp. Corp.,* 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*

24  *Top Condominium v. Dave Stabbert Master Builder,* 72 F.3d 361, 366-367 (3rd

25  Cir. 1995).

26      Here, the appointment of a receiver to "oversee and control all financial and

27  business aspects" of MGA, as Mattel proposes, could cripple MGA's business and

28  impair Omni's ability to protect its senior perfected security interest in its

- 8 -

EXHIBIT 24
PAGE 188

1  collateral, which includes MGA's inventory and accounts receivable and

2  ultimately in MGA's ability to repay its outstanding secured debt obligation to

3  Omni of in excess of $300 million. The financial and business affairs of MGA are

4  best handled independently by businessmen who understand its products and its

5  industry.[4]

6          4.    The Existing Parties May Not Adequately

7                Represent Omni's Interest.

8          In order to demonstrate the inadequacy of the existing parties to protect its

9  interest, the applicant's burden is minimal and is satisfied so long as the applicant

10 shows that representation by existing parties *"may be"* inadequate. *Trbovich v.*

11 *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers

12 three factors in determining the adequacy of representation: "(1) whether the

13 interest of a present party is such that it will undoubtedly make all of a proposed

14 intervenor's arguments; (2) whether the present party is capable and willing to

15 make such arguments; and (3) whether a proposed intervenor would offer any

16 necessary elements to the proceeding that other parties would neglect." *Arakaki*,

17 324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775,

18 778 (9th Cir.1986)). "The most important factor in determining the adequacy of

19 representation is how the applicant's interest compares with the interest of existing

20 parties." *Id.*

21

22 _____

   [4]  Courts are reluctant to appoint receivers to solvent corporations. *See, e.g.,*
23 *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 910, 925 (S.D.
   Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24 where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer
   Holdings, Inc.*, 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25 of a receivership would result in more harm than good in this case."); *Rumbaugh v.
   Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26 was presently operating in a successful manner, appointment of a receiver would
   "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner,*
27 1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
   of a solvent corporation is a drastic remedy.").

28

                                    - 9 -

EXHIBIT 24
PAGE 189

1    Here, the interests of the present parties are not such that they will

2    undoubtedly make all of Omni's arguments in opposition to the appointment of a

3    receiver. Obviously Mattel's interests are directly at odds with Omni's interests.

4    Further, although MGA also opposes the appointment of a receiver, there is no

5    reason to believe that it can or will make all of Omni's arguments on its behalf.

6    Omni's primary interest is in MGA's ability to repay its secured debt obligation of

7    in excess $300 million owed to Omni. Moreover, Omni is in the best position to

8    describe the facts and circumstances surrounding its purchase of the Senior Bank

9    Credit Facility from Wachovia.

10    According to Mattel's counsel, it is Mattel's view that MGA as debtor can

11    adequately protect the interests of its largest secured creditor. Mattel's position is

12    nonsensical as the financial interests of a debtor and secured creditor are, on their

13    face, aligned differently. Therefore, the existing parties may not adequately

14    represent Omni's interest regarding the appointment of a receiver and other issues

15    relating to Omni's status as a secured creditor.

16    **B.    In the Alternative, This Court Should Grant Omni**
      **Permissive Intervention**
17

18    Even if Omni were not entitled to intervene as a matter of right, the Court

19    should exercise its discretion and permit its intervention in this matter. Under

20    Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be

21    granted whenever the "applicant's claim . . . and the main action have a question of

22    law or fact in common," and when the intervention would not "unduly delay or

23    prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P.

24    24(b)(2). The existence of a "common question" is liberally construed. *Kootenai*

25    *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed

26    intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'

27    interest relating to the property or transaction which is the subject of the action.'"

28    *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

EXHIBIT 24
PAGE 190

1 *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2 requirements.

3          Here, as explained above, there are common questions of law and fact

4 between Omni's claims and the issues raised in Mattel's application to appoint a

5 receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6 adjudication of the rights of the original parties.  Omni's participation will be

7 limited to challenging Mattel's request to appoint a receiver and protecting its

8 interests as a secured creditor.  The burden is on the parties to plead and prove any

9 alleged prejudice. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10

11 **IV.    CONCLUSION**

12          For the foregoing reasons, Omni respectfully requests the Court grant this

13 application and authorize it to intervene for the limited purpose of responding to

14 Mattel's request for the appointment of a receiver for MGA and all other issues

15 related to the proposed receiver or Omni's status as a secured creditor of MGA.

16

17 DATED:  February 3, 2009              Bingham McCutchen LLP

18

19

20                                       By: _____

21                                          Todd E. Gordinier
                                           Attorneys for Non-party
22                                          Omni 808 Investors, LLC

23

24

25

26

27

28

-------------------------------------------------------------------------------

- 11 -

EXHIBIT 24
PAGE 191

EXHIBIT 25

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**