1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
5  San Francisco, CA  94105-2669
   Tel: (415) 773-5700/Fax: (415) 773-5759
6
   WILLIAM A. MOLINSKI (State Bar No. 145186)
7  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
9  Tel: (213) 629-2020/Fax: (213) 612-2499

10 THOMAS S. MCCONVILLE (State Bar No. 155905)
   tmcconville@orrick.com
11 ORRICK, HERRINGTON & SUTCLIFFE LLP
   4 Park Plaza, Suite 1600
12 Irvine, CA  92614-2258
   Tel: (949) 567-6700/Fax: (949) 567-6710
13
   Attorneys for MGA Parties
14
15              UNITED STATES DISTRICT COURT
16             CENTRAL DISTRICT OF CALIFORNIA
17                   SOUTHERN DIVISION

18 | CARTER BRYANT, an individual, | Case No.  CV 04-9049-DOC (RNBx) |
19 | Plaintiff, | Consolidated with: |
   |  | No. CV 04-9059 |
20 | v. | No. CV 05-2727 |
21 | MATTEL, INC., a Delaware corporation, | **[DISCOVERY MATTER]**<br>**[To be heard by Discovery Master Robert C. O'Brien]** |
22 | Defendant. |  |
23 |  | **MGA'S OPPOSITION TO MATTEL, INC.'S MOTION TO ENFORCE, TO COMPEL AND FOR SANCTIONS RE: THE MGA DEFENDANTS' AFFIRMATIVE DEFENSES** |
24 | AND CONSOLIDATED ACTIONS |  |
25 |  |  |
26 | **PUBLIC REDACTED VERSION** | [Declaration of William A. Molinski filed concurrently herewith] |
27 |  | Date:    TBD |
28 |  | Time:    TBD |

OPPOSITION TO MOTION TO COMPEL ADDITIONAL
SUPPLEMENTAL RESPONSE
CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Place:   Arent Fox LLP
         555 West Fifth St., 48th Fl.
         Los Angeles, CA  90013

**Phase 2**

Disc. Cut-off    June 1, 2010
Pre-trial Conf.:  None Set
Trial Date:      None Set

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................... 1

STATEMENT OF FACTS ........................................................................ 2

I.   MGA HAS COMPLIED WITH ITS OBLIGATION TO SUPPLEMENT MATTEL'S AMENDED SUPPLEMENTAL INTERROGATORY REGARDING MGA'S AFFIRMATIVE DEFENSES ...................................................................................... 5

   A.   Mattel's Claim That the MGA Parties Have Refused to Identify Witnesses is Patently False ................................................ 6

      1.   The MGA Parties Are in Compliance With Court Orders and Have Properly Responded to the Supplemental Requests ............................................................................. 6

      2.   The Interrogatories Are Compound and Constitute Multiple Interrogatories in Excess of Permitted Limits .......... 13

II.  MGA HAS PRODUCED OR IS CURRENTLY PRODUCING THE RESPONSIVE DOCUMENTS SOUGHT BY MATTEL ........................... 14

   A.   MGA Has Produced or Identified Documents on Which It Relied to Supplement Its Response to Mattel's Amended Supplemental Interrogatory Concerning MGA's Affirmative Defenses ................................................................................. 14

   B.   MGA's Letter of Request Application Establishes Only That MGA Is Actively Investigating and Obtaining Evidence in Support of Its Affirmative Defenses and MGA's Actions Show It Will Produce Documents ................................................. 15

III. THE RESPONSES ARE FULL AND COMPREHENSIVE ....................... 16

IV.  SANCTIONS AGAINST MGA ARE NOT WARRANTED BUT SHOULD BE AWARDED TO MGA FOR MATTEL'S IMPROPER CONDUCT ........................................................................................ 18

   A.   Mattel's Strong Arm Tactics Do Not Support Preclusion or Monetary Sanctions ....................................................... 18

   B.   Mattel Should Be Sanctioned for Its Inappropriate Conduct, Failure to Meet and Confer in Good Faith and Misrepresentation of the Nature of Its Motion ................................................. 20

CONCLUSION ..................................................................................... 21

1

## TABLE OF AUTHORITIES

2

3

### FEDERAL CASES

4

*C&W Construction Co. v. Brotherhood of Carpenters & Joiners of Am., Local 745, ALF-CIO,*
5
   108 F.R.D. 389 (D. Haw. 1985) .......................................................................... 19

6

*Campbell Indus. v. M/V Gemini,*
   619 F.2d 24 (9th Cir. 1980) .............................................................................. 19
7

*David v. Glemby Co., Inc.,*
8
   717 F. Supp. 162 (S.D.N.Y. 1989) ...................................................................... 6

9

*Dellums v. Powell,*
   566 F.2d 231 (D.C. Cir. 1977) .......................................................................... 19
10

*Hoffman v. Allentown State Hosp.,*
11
   1989 WL 126284 (E.D. Pa. Oct. 16, 1989) ........................................................ 19

12

*Jacobsen v. Desert Book Co.,*
   287 F.3d 936 (10th Cir. 2002) ............................................................................ 6
13

*Koury v. Derzhavin,*
14
   2005 WL 2372840 (E.D.N.Y. Apr. 25, 2005) ................................................... 19

15

*Penk v. Orgeon State Bd. of Higher Education,*
   816 F.2d 458 (9th Cir. 1987) ............................................................................ 19
16

*Rauenhorst v. U.S.,*
17
   104 F.R.D. 588 (D. Minn. 1985) ......................................................................... 6

18

*Sprint Comm's Co. L.P. v. Vonage Holdings Corp.,*
   500 F. Supp. 2d 1290 (D. Kan. 2007) ................................................................ 6
19

*U.S. v. Procter & Gamble Co.,*
20
   356 U.S. 677 (1958) ........................................................................................... 5

21

*U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.,*
   617 F.2d 1365 (9th Cir. 1988) .......................................................................... 19
22

23

### FEDERAL STATUTES

24

Fed. R. Civ. P. 26 ................................................................................... 5, 16

25

Fed. R. Civ. P. 26(b)(4) .............................................................................. 19

26

Fed. R. Civ. P. 26(e) ............................................................................... 5, 6

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Mattel falsely characterizes its instant motion as one to enforce a December 3, 2007 order, which addressed Mattel's request to serve a ***single additional Phase 1*** interrogatory seeking information about MGA's affirmative defenses to Mattel's ***Second Amended Answer and Counterclaims***. MGA complied with that order almost 21 months ago when MGA responded to the interrogatory and, following a meet and confer discussion with Mattel at that time, supplemented its response. Mattel accepted MGA's response and continued litigating Phase 1. Only recently has Mattel requested that MGA again supplement its response to this Phase 1 interrogatory to address the litany of new claims raised by Mattel and the affirmative defenses raised in response to those claims in Phase 2—a request that MGA agreed to comply with, and has complied with, within one month of Mattel's request. In fact, MGA provided additional information for both the original affirmative defenses and its thirteen new affirmative defenses against Mattel's Third Amended Answer and Counterclaims.

Thus, in reality, this motion concerns only a simple, albeit disingenuous, claim by Mattel, that MGA's recent supplemental response concerning information in support of its thirteen additional affirmative defenses is somehow deficient. But that argument, too, fails, as MGA has provided Mattel with a supplemental response and has explained to Mattel that it will produce all new information identified within those responses. More significantly, the response contains approximately 200 pages of information, including names of additional individuals and companies that may have information related to MGA's affirmative defenses— information that is far more complete than anything Mattel has provided to MGA in response to MGA's discovery concerning Mattel's trade secret misappropriation and RICO claims. Unsatisfied, Mattel filed the instant motion anyway. Mattel's motion, however, is devoid of any evidence that MGA has failed to comply with its

- 1 -

discovery obligations, much less failed to provide a full and complete supplemental response.  In sum, Mattel's motion should be denied because MGA has provided Mattel with a complete supplemental response.

## STATEMENT OF FACTS

*MGA Serves Its Response in January 2008.*  On December 3, 2007, the Court permitted Mattel to serve a Supplemental Interrogatory to obtain information concerning MGA Defendants' contentions regarding MGA's affirmative defenses to Mattel's Second Amended Answer and Counterclaims ("SAAC").  *See* Declaration of William A. Molinski ("Molinski Decl.") ¶ 2, Ex. A.  Mattel served the Supplemental Interrogatory Regarding Defendants' Affirmative Defenses that same day (the "Supplemental Affirmative Defense Interrogatory").  Molinski Decl., ¶ 3, Ex. B.  On January 8, 2008, MGA responded to the Supplemental Affirmative Defense Interrogatory detailing all information it possessed concerning its affirmative defenses to Mattel's SAAC.  Molinski Decl. ¶ 4, Ex. C.  On February 6, 2008, Mattel asserted that MGA's response was deficient and sought further detail.  Molinski Decl. ¶ 5, Ex. D.  MGA provided an additional supplemental response on April 28, 2008.  Molinski Decl. ¶ 6, Ex. E.  For at least 15 months thereafter, Mattel did not take issue with MGA's supplemental response, did not attempt to meet and confer on the contents of that response, and did not so much as hint that the response was in any way defective or deficient.  Rather, Mattel continued to litigate Phase 1 of the case.

*MGA Supplements Its Response on August 31, 2009.*  On May 21, 2009 Mattel was granted leave to file its Third Amended Answer and Counterclaims alleging vague, ambiguous, broad and unsupported claims of trade secret misappropriation and RICO Act violations (the "TAAC").  Molinski Decl. ¶ 7, Ex. F.  MGA filed its Answer to the TAAC on June 29, 2009, denying the frivolous

1   allegations made by Mattel and identifying thirteen additional affirmative defenses

2   to Mattel's claims.  Molinski Decl. ¶ 8, Ex. G.

3        One month later, Mattel demanded that MGA supplement its response to

4   Mattel's Supplemental Affirmative Defense Interrogatory by addressing the thirteen

5   new affirmative defenses.  Molinski Decl. ¶ 9, Ex. H.  In that same demand, Mattel

6   made the claimed assertion that MGA was somehow out of compliance with a

7   December 3, 2007 Court order because it had not provided a supplemental response

8   to the Supplemental Affirmative Defense Interrogatory.  *See id.*  Nonetheless,

9   Mattel agreed to provide an additional supplemental response even though Mattel

10   had not met and conferred on MGA's April 28, 2008 supplemental response and

11   had only made its request for an additional supplement on July 24, 2009.

12        True to its word, on August 31, 2009, MGA served its further supplemental

13   response, which updated its prior response and added information concerning the

14   thirteen additional affirmative defenses (the "August 31, 2009 Supplemental

15   Response").  Molinski Decl. ¶ 10, Ex. I.  The August 31, 2009 Supplemental

16   Response added new information concerning MGA's affirmative defenses and,

17   when it identified documents not referenced in the prior January and April 2008

18   responses, it identified them by reference to: (i) Bates number; (ii) deposition

19   exhibit number; and/or (iii) declaration exhibit number filed in support or

20   opposition to the litany of motions filed in this case.  *See id.*

21        On September 4, 2009, Mattel sent two separate letters, from two different

22   Mattel attorneys, purporting to identify deficiencies in MGA's August 31, 2009

23   Supplemental Response.  Molinski Decl. ¶¶ 11 & 12, Ex. J & Ex. K.  In its first

24   letter, Mattel suggested that it had not received all of the documents MGA

25   identified, described or referenced in the August 31, 2009 Supplemental Response.

26   Molinski Decl. ¶ 11, Ex. J.  Rather than identifying which documents it believed

27   were not produced, or requesting that MGA meet and confer on the supplemental

28   response, Mattel repeated its specious claim that MGA was somehow out of

- 3 -

1   compliance with the December 3, 2007 order, although MGA had complied when it

2   provided its January 2008 and April 2008 responses and supplemental response.

3   Despite Mattel's posturing, on September 10, 2009, MGA notified Mattel

4   that it believed the documents referenced in the response had already been

5   produced or were equally available to Mattel.  Molinski Decl. ¶ 13, Ex. L.  MGA's

6   letter also made a reasonable request that Mattel identify which documents

7   identified in the August 31, 2009 Supplemental Response it believed had not been

8   produced so that MGA could confirm whether the document had been produced

9   and produce it if necessary.  *See id.*  In response, Mattel identified only three items

10  from the 200-plus pages of supplemental response that it did not believe it had

11  received.  Molinski Decl. ¶ 14, Ex. M.  Mattel identified two Bates-numbered

12  pages, correspondence between Endemol U.S. and MGA, and correspondence

13  between Mattel and Cityworld's counsel.  *Id.*  With respect to the first item, MGA

14  has recently discovered that the identified documents were mislabeled.  MGA

15  59802 should have been identified in the response as MOO59802 and MGA

16  665527 should have been identified as MGA 3473855.  With respect to the second

17  item, MGA is reviewing its documents and will produce the documents identified

18  to the extent they exist.  MGA has told Mattel as much.  With respect to the third

19  item, the documents were the subject of previous motion practice, and those

20  documents are currently being produced.  Finally, MGA committed to working

21  with Mattel to produce any new documents identified in the interrogatory response

22  that Mattel identified as not having been previously produced.  Molinski Decl. ¶ 15,

23  Ex. N.

24  In Mattel's second September 4, 2009 letter, from a different Mattel attorney,

25  Mattel indicated that MGA's identification of current and former employees of

26  various entities as persons that may have information concerning MGA's

27  affirmative defenses was insufficient.  Molinski Decl. ¶ 12, Ex. K.  Ignored by

28  Mattel was the fact that MGA had complied with its obligation to supplement the

1    response, and the response collectively identified no fewer than 200 names.  Still,

2    on September 22, 2009, and again on September 23, 2009, MGA advised Mattel

3    that it would review the persons identified in its August 31, 2009 Supplemental

4    Response and provide any additional responsive information it had concerning

5    those individuals.  Molinski Decl. ¶ 15, Ex. N.

6         Rather than respond to these requests, a third Mattel attorney began

7    corresponding with MGA concerning the August 31, 2009 Supplemental Response.

8    MGA reiterated its commitment to provide Mattel information and continue its

9    meet and confer discussions regarding the supplemental response.  Molinski Decl. ¶

10   16, Ex. O.  MGA heard nothing more on the subject until it received the instant

11   motion.

12                                **ARGUMENT**

13

14   **I.    MGA HAS COMPLIED WITH ITS OBLIGATION TO SUPPLEMENT
         MATTEL'S AMENDED SUPPLEMENTAL INTERROGATORY
         REGARDING MGA'S AFFIRMATIVE DEFENSES.**

15

16        Despite protestations to the contrary, MGA has complied with its discovery

17   obligation to supplement its response to Mattel's Supplemental Affirmative

18   Defense Interrogatory.  Indeed, MGA agreed to supplement the response almost

19   immediately after the request was made by Mattel.  MGA spent untold hours

20   preparing a response to a single interrogatory since it was served almost two years

21   ago.  MGA's response totals 198 pages of information, identifies hundreds—if not

22   thousands—of pages of documents, and provides over 200 names of individuals

23   and companies that may have information supporting these affirmative defenses.

24   MGA also agreed to provide Mattel any documents that had not been previously

25   produced and MGA remains committed to doing so.  Yet Mattel continues to

26   suggest that MGA must do more.  Rule 26(e) and case authority do not support

27   Mattel's position.

28

1    Federal Rule of Civil Procedure 26 is intended to insure "proper litigation"
2  by making the "*trial* less a game of Blind man's bluff and more a fair contest with
3  the basic issues and facts disclosed to the fullest practicable extent." *U.S. v.*
4  *Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (emphasis added).  Notably,
5  being that the Court has yet to determine a trial date for this action, at a minimum,
6  Mattel's motion is premature in all respects, i.e., discovery remains ongoing and
7  many opportunities for the efficient supplementation of discovery responses
8  remain.  Moreover, courts readily set aside a party's supposed Rule 26 violations
9  when—in the court's broad discretion—the violation is justified or harmless.
10  *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).  *See, e.g., David*
11  *v. Glemby Co., Inc.*, 717 F. Supp. 162 (S.D.N.Y. 1989) (holding plaintiff's
12  supplemental interrogatory responses were timely for purposes of Fed. R. Civ. P.
13  26(e) even when filed on the last day of discovery); *Rauenhorst v. U.S.*, 104 F.R.D.
14  588 (D. Minn. 1985) (holding that even though a party may have failed to strictly
15  comply with Fed. R. Civ. P. 26(e), said conduct did not rise to level of fraud or
16  other misconduct since supplementation occurred before claims went to trial).
17    When determining whether a violation is justified or harmless, a court
18  considers: (1) the prejudice or surprise to the party against whom the evidence is
19  offered; (2) the ability of the party to cure the prejudice; (3) the extent to which
20  introducing the evidence would disrupt the trial; and (4) the moving party's bad
21  faith or willfulness.  *Id.  See also Sprint Comm's Co. L.P. v. Vonage Holdings*
22  *Corp.*, 500 F. Supp. 2d 1290 (D. Kan. 2007).  In this case, Mattel cannot be heard
23  to complain of prejudice or surprise since Mattel has many opportunities to explore
24  and challenge all of the information available before it prior to trial.  Moreover,
25  Mattel has waited some fifteen months to even address what it believes is deficient
26  with the supplemental response.  Absent the rhetorical embellishments of its
27  opening brief, Mattel can neither set forth any evidence that MGA is acting in bad
28  faith nor intentionally concealing evidence to Mattel's detriment.

A.   **Mattel's Claim That the MGA Parties Have Refused to Identify Witnesses is Patently False.**

1.   **The MGA Parties Are in Compliance With Court Orders and Have Properly Responded to the Supplemental Requests.**

Mattel's hyperbole-laced claim that the MGA Parties have refused to identify supporting witnesses is, frankly, nonsense.  The Supplemental Responses contain 198 pages of detailed facts supporting the MGA Parties' affirmative defenses—complete with detailed descriptions of the witnesses with knowledge of the specific facts, the companies where those individuals are employed, what they may know, and how MGA learned this information.  These responses contain pages upon pages of who said what to whom concerning Mattel's efforts to pressure retailers, vendors and others to cease doing business with MGA.  For example, the MGA Parties describe how:

- 7 -

OHS West:260750285.3

- 8 -

"Case 2:04-cv-09049-DOC-RNB Document 7038 Filed 10/27/09 Page 13 of 25 Page ID #:245733"



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION TO COMPEL ADDITIONAL
SUPPLEMENTAL RESPONSE
CV 04-9049 DOC (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



28     And the list goes on and on.  *See* Molinski Decl., ¶ 10, Ex. I.

1   All told, the MGA Parties identify more than 200 individuals and dozens of

2   companies that are witnesses, for example, to Mattel's acts of unclean hands, bad

3   faith and other conduct supporting the MGA Parties' affirmative defenses.

4   Moreover, the information that the MGA Parties provide is much more than

5   simply names: it includes the name of the entity that the person was employed by,

6   the date of the communications, how MGA learned of the information and what

7   exactly was said or done. Indeed, the MGA Parties have provided information at a

8   far more detailed level than Mattel has in response to similar requests. Where the

9   MGA Parties similarly sought the identity of each PERSON who had access to the

10  alleged trade secrets, the alleged secret to which each person had access and the

11  dates of access, Mattel provided only a list of names, with no indication to which

12  information each had access, when or how they had such access, or any other

13  requested details. Molinski Decl., ¶ 17, Ex. P, pp. 106-108. When the MGA

14  Parties asked for all facts supporting the claim of misappropriation, including all

15  persons with knowledge of the facts, Mattel again simply provided pages of names

16  with no indication what each person knew, where they were employed, or how they

17  might be contacted. Molinski Decl., ¶ 17, Ex. P, p. 294. The MGA Parties could

18  have employed the same approach and Mattel would never have known which

19  entities did not have names associated with them. The MGA Parties chose to be

20  more candid.

21  In all of these pages of detailed responses, and with the hundreds of names of

22  witnesses identified, Mattel identifies only twelve entities where an individual name

23  is not identified for that entity. Molinski Decl., Ex. K. That is correct—only

24  twelve entities for which a name is not provided compared with the hundreds where

25  names are provided. The fact that Mattel can point to only twelve alleged

26  omissions is a testament to the thoroughness and completeness of the MGA Parties'

27  work product.

28

1    In typical "make busywork fashion," Mattel demanded that the MGA Parties

2 immediately supplement this list or face motions practice and sanctions. When the

3 MGA Parties could not meet Mattel's demands, this Motion followed. Ironically—

4 and sadly—Mattel's motion actually proves the merit of the MGA Parties' defenses

5 of unclean hands and bad faith litigation conduct—conduct designed to overwhelm

6 a smaller competitor and occupy needed resources.

7    In truth, the MGA Parties do not know the names of individuals at most of

8 these entities. What the MGA Parties have learned of Mattel's undue pressure,

9 threats, and extortion of vendors and others is often learned second hand because

10 the person pressured is too afraid to speak with MGA out of fear of reprisal by

11 Mattel. Indeed, it is commonly known in the industry that one speaks out against

12 Mattel at one's own peril and that the result of doing so is often swift litigation of

13 one's own company. The MGA parties provided names where they had names.

14 For example, MGA was told by one individual, █████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████  MGA cannot disclose what it does not know.

19    Mattel, as it is apt to do, turns this lack of information into a conspiracy to

20 hide information from Mattel in dereliction of court orders. This is nonsense. The

21 MGA Parties have every reason to identify every witness with knowledge of

22 Mattel's bad acts—this information helps the MGA Parties' case.

23    Mattel has made no showing in its motion of why this information is

24 needed—and certainly no showing of why it is needed now. No suggestion is

25 made—because such a suggestion would make little sense—that the twelve missing

26 names are the crucial witnesses to these defenses. Indeed, they are similar to the

27 hundreds of other more specific and concrete examples provided by the MGA

28 Parties of Mattel's unlawful conduct. Mattel has yet to seek to depose any of the

OPPOSITION TO MOTION TO COMPEL ADDITIONAL
SUPPLEMENTAL RESPONSE
CV 04-9049 DOC (RNBx)

1   dozens of witnesses recently identified, or even most of the witnesses previously

2   identified in the MGA Parties' original response.

3       The MGA Parties made every good faith effort to be complete.  As additional

4   evidence is uncovered, the MGA Parties will, in due course, provide that

5   information.  The MGA parties have now been able to locate a few more names of

6   individuals who *may* have relevant information, based primarily on testimony at

7   depositions where Mattel was present.  In the event the MGA Parties belatedly

8   identify material information—not merely cumulative information—and it actually

9   threatens to prejudice Mattel, Mattel will have recourse to seek leave to depose any

10  late-identified witness.  In the meantime, Mattel's busywork motion should be

11  denied.

12      **2.**    <u>**The Interrogatories Are Compound and Constitute Multiple Interrogatories in Excess of Permitted Limits**</u>.

13

14      In truth, the MGA Parties do not believe this Supplemental Interrogatory

15  constitutes multiple interrogatories.  Mattel has taken the opposite position,

16  however, with respect to similar interrogatories propounded by the MGA Parties.

17  Molinski Decl., ¶ 18, Ex. Q.  The Discovery Master has rejected Mattel's position

18  previously, Molinski Decl., ¶ 19, Ex. R, and the MGA Parties have argued that the

19  Discovery Master should do it again.  Molinski Decl., ¶ 20, Ex. S.  In the event the

20  Discovery Master agrees with Mattel that MGA Mexico and MGA (HK)'s

21  contention interrogatories, nos. 1-11 and 1-25, respectively, constitute multiple

22  interrogatories each, then the interrogatories should similarly be counted as

23  containing multiple subparts.  Indeed, in Order No. 46, the Discovery Master

24  recognized that this Supplemental Interrogatory ██████████████████

25  ██████

26      Even if, however, the Supplemental Interrogatory is not counted as

27  containing multiple subparts, the law of this case has found that the MGA Parties

28  were not required to answer separately for each affirmative defense, but could

1   include a single, unitary recitation of the facts supporting all of the affirmative

2   defenses.  Molinski Decl., ¶ 19, Ex. R at  19:23-20:6 and Mattel Opposition to

3   Protective Order cited therein.  As a result, Mattel's claim that the MGA Parties did

4   not adequately identify facts supporting particular defenses is without merit.

5   **II.   MGA HAS PRODUCED OR IS CURRENTLY PRODUCING THE**

6   **RESPONSIVE DOCUMENTS SOUGHT BY MATTEL.**

7   **A.   MGA Has Produced or Identified Documents on Which It Relied**

8   **to Supplement Its Response to Mattel's Amended Supplemental Interrogatory Concerning MGA's Affirmative Defenses.**

9   MGA has supplemented its response with full and complete information

10  currently available to it concerning its affirmative defenses.  Indeed, when MGA

11  supplemented, any new documents it added were identified in one of three ways: by

12  Bates number of documents previously produced, by deposition exhibit number or

13  by exhibit number of documents filed in support or opposition to the litany of

14  motions filed in this case.  Moreover, MGA has agreed to supplement its

15  production of documents to the extent that Mattel can identify documents

16  referenced in MGA's response that it believes have not been previously produced.

17  Mattel, however, continues to assert that this is not enough.

18  Again relying on discovery orders that pre-date the supplemental

19  interrogatory response, Mattel asserts that MGA must produce *on Mattel's*

20  *timeframe.*  Ignored by Mattel are the thousands and thousands of documents that

21  have already been produced by MGA, which, in part, are the same documents on

22  which MGA has relied in forming its response to the Supplemental Affirmative

23  Defense Interrogatory.  Mattel also ignores MGA's willingness to confirm its

24  previous production of documents upon Mattel's notification that it does not

25  believe certain documents were received.  Finally, Mattel ignores MGA's continued

26  review of its supplemental response and any additional responsive documents and

27  commitment to produce documents on which it intends to rely at trial.  Indeed,

28  MGA has done all of this within two months of Mattel's request to supplement.

1  Mattel has no basis to suggest that MGA has done anything but comply with its

2  discovery obligations.

3       In any case, MGA remains willing to, and will, provide documents to Mattel

4  that Mattel does not have.  What MGA did not want, and what is unreasonable, is a

5  request that MGA go back through the effort of producing every single document—

6  again.  As reflected in Exhibit T, which highlights the additional documents that

7  MGA referenced in its August 31 Supplemental Response, MGA specifically

8  referenced documents, as indicated, by exhibit or Bates-stamp number.  Molinski

9  Decl., ¶ 21, Ex. T.  The remaining documents were referenced in prior iterations of

10  the response.  And not even Mattel is suggesting it has not received a single one of

11  the documents previously referenced.  Indeed, Mattel has identified a paltry few

12  documents that it does not have.  MGA will provide those and any others.

13       This is not a matter of MGA trying to "hide the ball."  It is an attempt to

14  reach some rational result where MGA does not have to dive through thousands and

15  thousands of pages of documents to find documents that were referenced in prior

16  iterations of the affirmative defense interrogatory response.  MGA's rationale for

17  this approach is simple.  Mattel has been sitting with this affirmative defense

18  interrogatory for almost two years.  Meanwhile, MGA has been producing

19  document after document.  At some point in this process, it cannot be that Mattel is

20  entitled, whenever it wishes, to demand an exhaustive re-review of documents and

21  further production of documents as though there has never been a production.

22  Again, MGA is committed to providing Mattel with any documents it does not

23  have.  It understands that obligation and will live up to it.

24      **B.**    **MGA's Letter of Request Application Establishes Only That MGA

25            Is Actively Investigating and Obtaining Evidence in Support of Its Affirmative Defenses and MGA's Actions Show It Will Produce

26            Documents.**

27       While Mattel continues to make serious and unsubstantiated claims that

28  MGA has acted improperly, nothing could be further from the truth.  MGA has

1   been actively investigating its belief that Mattel's claims are outside the statute of

2   limitations.  Part of that investigation includes an examination and investigation of

3   certain correspondence between Mattel and counsel for Cityworld.  *See* Dkt. # 6589

4   (Application for Issuance of Letter of Request for Judicial Assistance re: Danny

5   K.H. Yu and Bird & Bird ("Application")).  As reflected in MGA's Opposition to

6   Mattel's *Ex Parte* Application regarding documents attached to that Application,

7   Dkt. # 6883, evidence received by MGA counsel on August 17, 2009, and

8   September 1, 2009, Dkt. # 6883 (Hurst Decl. ¶ 5), reveals that there is evidence that

9   Mattel knew of its trade secrets claims outside the statute of limitations.  This

10   evidence impeaches prior testimony by Mattel's in-house counsel.  Dkt. # 6883 at

11   3; *see also* Dkt # 6589, 6714 (Reply in Support of Application).  As impeachment,

12   there is no requirement that such documents be produced.  *See* FED. R. CIV. P. 26.

13        In any case, the documents referenced in the Application have been

14   produced.  *See* Dkt. # 6883.  Mattel claims that it is "troubling" that it had to file an

15   *ex parte* application to obtain these documents, Mtn. at 24, but this statement omits

16   at least three critical facts.  First, MGA informed Mattel of the existence of these

17   documents within three days of receipt of the last one supporting its Application.

18   *See* Dkt. # 6589 (filed Sept. 4, 2009).  Second, this occurred within four days of the

19   August 31, 2009 service of MGA's supplemental response to the affirmative

20   defense interrogatory.  Third, MGA provided both documents when it actually

21   received notice of the *ex parte*, which was only after Mattel filed its *ex parte*

22   because Mattel sent its notice late in the evening of the day all counsel were

23   returning from a court hearing.  Dkt. # 6883 at 3-4.  The documents about which

24   Mattel complains have been produced.

25   **III.**   **THE RESPONSES ARE FULL AND COMPREHENSIVE**.

26        Mattel also claims that the affirmative defense responses are not full and

27   complete.  Of the thirteen defenses, it offers only two as falling short.  One to which

28   it points is the affirmative defense that there was "No Injury Sustained by Alleged

1  Creditor." MGA's response is three simple lines: (1) Mattel has not been injured;

2  (2) MGA made financial decisions to remain a going concern, and (3) those

3  decisions include the transactions identified in Mattel's TAAC.

4  　　Mattel does not claim that this response is incomprehensible. It does not

5  claim that the persons identified are farcical or somehow not responsive. Instead, it

6  claims that MGA does not identify what knowledge the persons possess. Mtn. at

7  15. By identifying the persons, however, there really cannot be any confusion that

8  the persons identified possess the information identified—that MGA engaged in the

9  identified financial transactions to remain a going concern.

10  　　Perhaps if this affirmative defense ran on for pages or contained a complex

11  set of facts, Mattel's argument might have some bite. But neither fact is true. The

12  affirmative defense is simply stated because it is a simple truth. MGA engaged in

13  the identified financial transactions—which are the ones that Mattel complains

14  about in its TAAC—to remain a going concern. The people identified are the

15  people who possess the information relevant to this statement.

16  　　As for the second response about which Mattel complains—the "Lack of

17  Authority" affirmative defense—there is a chicken-and-egg problem. MGA has

18  been struggling mightily to obtain from Mattel those specific facts that underlie its

19  claims. For example, MGA has requested that Mattel identify its trade secrets.

20  Mattel's response has been to identify thousands of pages of documents by Bates-

21  stamp range. Molinski Decl., ¶ 17, Ex. P. These documents contain information

22  that clearly cannot be trade secret information, such as █████████████

23  ████████████████████████████████████████████

24  ██████████████████████████████████ Molinski Decl., ¶

25  20, Ex. S, p. 8. Therefore, what specifically is a trade secret remains unknown.

26  And when MGA sought some greater clarification, Mattel served an interrogatory

27  response that was all objections. Molinski Decl., ¶ 22, Ex. U. The same is true of

28  Mattel's RICO claim. Molinski Decl., ¶ 23, Ex. V.

1    So, when Mattel claims that information concerning the "Lack of Authority"

2    defense is in MGA's possession, that proposition does not answer why it is MGA

3    responded as it did.   MGA responded as it did because, other than to offer broad

4    statements regarding what was done to it, Mattel has refused to actually identify

5    those things it claims were done.

6    The way to address this issue is not to point the finger at MGA.  Rather, the

7    solution is to require Mattel to finally commit to the facts it contends are at issue.

8    When that happens, MGA can provide a response that does not require it to say that

9    discovery is ongoing.

10   **IV.   SANCTIONS AGAINST MGA ARE NOT WARRANTED BUT
         SHOULD BE AWARDED TO MGA FOR MATTEL'S IMPROPER
11       CONDUCT.**

12       **A.    Mattel's Strong Arm Tactics Do Not Support Preclusion or
               Monetary Sanctions.**

13

14   Mattel continues to misrepresent the nature and timing of the instant dispute.

15   This motion does not concern MGA's compliance with prior court orders.  MGA

16   complied with the December 3, 2007 order by providing Mattel with a complete

17   and full response to the Supplemental Affirmative Defense Interrogatory on

18   January 8, 2008.  Mattel accepted the response and continued to litigate and try the

19   Phase 1 case.  Likewise, MGA agreed to supplement its response within weeks of

20   being asked by Mattel and then produced a supplemental response that contained

21   25 additional pages of information.  That Mattel is still not satisfied does not mean

22   that MGA has violated a court order.  Instead, MGA committed to meet and confer

23   on the supplemental response, and Mattel has simply ignored MGA's offers,

24   choosing to file the instant motion instead.  Preclusion sanctions are therefore

25   entirely inappropriate, and nothing in the case law cited by Mattel alters that fact.

26   Indeed, the cases on which Mattel relies are drastically different from the situation

27   presented here.

28

OPPOSITION TO MOTION TO COMPEL ADDITIONAL
SUPPLEMENTAL RESPONSE
CV 04-9049 DOC (RNBx)

1  For example, *Dellums v. Powell*, 566 F.2d 231 (D.C. Cir. 1977), concerns the
2  outright failure to respond to interrogatories at all, despite knowledge by the party
3  refusing to respond that it was obligated to do so.  The court found that the plaintiff
4  "understood that he was obligated to file answers to defendants' interrogatories and
5  that failure to do so would be grounds for dismissal." *Id.* at 236.  Likewise,
6  *Koury v. Derzhavin*, 2005 WL 2372840 (E.D.N.Y. Apr. 25, 2005), concerns a
7  complete failure by a party deponent to appear at his deposition.  The deponent's
8  counsel indicated that scheduling the deposition would be unproductive since his
9  client had not been in communication with his client. *Id.* at *1.  The same is true of
10  each of the other cases on which Mattel relies in support of its request for sanctions.
11  *See U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365 (9th Cir. 1988)
12  (finding sanctions appropriate only due to "willful and callous disregard of court
13  orders and discovery procedures," where even after six months of delay and a court
14  order to respond to interrogatories or face dismissal of the case, responses were not
15  provided); *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)
16  (awarding preclusion sanctions because of a flagrant violation of Rule 26(b)(4),
17  including the impermissible *ex parte* contact with an opposing sides' expert without
18  prior court permission); *C&W Construction Co. v. Brotherhood of Carpenters &*
19  *Joiners of Am., Local 745, AFL-CIO*, 108 F.R.D. 389 (D. Haw. 1985) (sanctions
20  appropriate when party responding had acted in bad faith); *Hoffman v. Allentown*
21  *State Hosp.*, 1989 WL 126284, at *2-3 (E.D. Pa. Oct. 16, 1989) (awarding
22  sanctions where "certain interrogatories were never answered, requests for
23  production were inadequately responded to and, thereafter, compliance with this
24  court's orders was effectively ignored."); *Penk v. Oregon State Bd. of Higher*
25  *Education*, 816 F.2d 458 (9th Cir. 1987) (sanctions excluding two experts
26  appropriate for violation of court scheduling orders).  In sum, none of these cases
27  address the instant situation.  Here, MGA has complied with its obligation by
28  providing responses, supplemental responses and amended supplemental responses.

1   MGA has not engaged in any of that egregious activity.  To the contrary, MGA has

2   sought to accommodate Mattel's request in good faith.  MGA has provided a

3   complete supplemental response, including additional information concerning its

4   thirteen additional affirmative defenses, and has indicated its willingness to produce

5   new documents referenced in that response.  This is not deserving of preclusion

6   sanctions.

7         The same is true of monetary sanctions.  Mattel's standard conduct is to file a

8   motion first and ask questions later.  In turn, MGA is required to expend resources

9   explaining to the Discovery Master that it has, or is, complying with its discovery

10  obligations.  Indeed, MGA is providing more information than Mattel has in

11  response to MGA's discovery requests.  Since MGA has consistently acted in good

12  faith, sanctions against MGA are not appropriate.

13  **B.    Mattel Should Be Sanctioned for Its Inappropriate Conduct,**
14  **Failure to Meet and Confer in Good Faith and Misrepresentation**
    **of the Nature of Its Motion.**

15        On the other hand, Mattel's discovery bullying does nothing more than

16  increase the cost of litigating the dispute.  Rather than meet and confer in good

17  faith, provide MGA with reasonable time to respond and accommodate MGA's

18  reasonable requests, Mattel simply files motions.  The discovery gamesmanship

19  must stop.  Mattel should be ordered to meet and confer with MGA and identify for

20  MGA the documents it believes have not been previously produced.  To deter

21  Mattel from filing frivolous motions such as these, Mattel should also pay for the

22  costs associated with preparing this Opposition.

23

24

25

26

27

28

1  **CONCLUSION**

2  For all of the foregoing reasons, Mattel's Motion should be denied and

3  Mattel should be ordered to pay sanctions to MGA for the costs associated with

4  opposing this motion.

5

6  Dated:  October 27, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP

7                                    By: _____

8                                         William A. Molinski
                                      Attorneys for MGA ENTERTAINMENT, INC.,
9                                     MGA ENTERTAINMENT HK, LTD., MGA de
                                      MEXICO, S.R.L. de C.V., and ISAAC LARIAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28