# Exhibit B

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   MICHAEL KEATS (admitted *pro hac vice*)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email:     mkeats@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
    Telephone: (310) 553-3000
9   Facsimile: (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**
                      **EASTERN DIVISION**
13

14  CARTER BRYANT, an individual,     Case No. CV 04-09049 SGL (RNBx)
                                       (consolidated with CV 04-9059 & 05-2727)
              Plaintiff,
15
          v.                          **DISCOVERY MATTER**
16
                                      **MGA ENTERTAINMENT INC.'S**
17  MATTEL, INC., a Delaware          **MOTION TO COMPEL**
    Corporation,
18              Defendant.
19
    AND CONSOLIDATED ACTIONS         [To be heard by Discovery Master Hon.
20                                    Edward Infante (Ret.) Pursuant to the
                                      Court's Order of December 6, 2006]
21
                                      Discovery Cut-off:     March 3, 2008
22                                    Pre-trial Conference:  June 2, 2008
                                      Trial Date:            July 1, 2008
23
24
25
26
27
28

                                      MGA'S MOTION TO COMPEL
                                      CV 04-09049 SGL (RNBX)

                                      Exhibit B - Page 38

## I.   INTRODUCTION

MGA Entertainment, Inc. ("MGA") respectfully submits this memorandum in support of its motion to compel Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for Production of Documents dated November 22, 2006 (the "Requests") under Rule 37(a) of the Federal Rules of Civil Procedure in the case originally captioned MGA Entertainment, Inc. v. Mattel, Inc. MGA, 05-02727 CBM (RZx).  The documents that MGA seeks relate directly to its Lanham Act and unfair competition claims against Mattel.  Specifically, MGA alleges that Mattel has engaged in a multifaceted predatory campaign to decimate MGA's business because MGA has successfully competed in the marketplace against Mattel by introducing a more appealing product -- the "Bratz" line of fashion dolls.  Faced with declining market share and a sagging share price, Mattel brazenly copied MGA's innovative BRATZ doll line, which it now purports to sell as part of the BARBIE "MY SCENE" line and conducted a wide-ranging campaign of intimidation and predation against its much smaller competitor, MGA.

MGA has been seeking discovery relating to these claims and allegations since it first filed suit.  Concerned about the broad scope of its wrongdoing, however, Mattel unilaterally and improperly refuses to produce entire categories of documents that are central to MGA's claims.  Illustrating Mattel's obstreperous and self-serving approach, Mattel, among other things, has refused to search for documents responsive to MGA's Requests unless MGA based them on facts specifically alleged in MGA's Complaint -- an unwarranted attempt to impose a heightened pleading standard in the discovery context.   Revealing Mattel's hypocrisy, Mattel also refuses categorically to produce documents even when it concedes that the Requests are based on specific allegations in the Complaint.  Mattel's position is insupportable and is plainly calibrated to obstruct legitimate discovery.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

Exhibit B - Page 39

As the Discovery Master may recall, Mattel originally complained, by way of a motion to compel, that MGA failed to produce documents related to its unfair competition claims as part of its initial disclosures[1] irrespective of the fact that such documents resided with Mattel and third parties.   Now that MGA seeks these documents directly from Mattel concerning these claims, Mattel has erected all manner of absurd obstructions to bar MGA's access to such documents.  As the Discovery Master noted in his Order denying Mattel's motion to compel, this case is well beyond the early stages of litigation.[2]  As such, MGA has sought pointed discussion, via the meet and confer process, concerning specific Requests it has propounded and Mattel's inadequate and improper responses.  Despite these efforts, Mattel continues to unjustifiably block MGA's access to discovery.  Accordingly, MGA reluctantly brings this dispute to the Discovery Master, seeking an Order compelling MGA to produce responsive documents.

## II.   BACKGROUND

### A.   The Instant Litigation

Mattel is the world's largest toy company, thanks chiefly to one product -- the BARBIE doll.[3]  Since its introduction in 1959 through to the late 1990's, the BARBIE doll quite simply dominated the fashion doll market and fueled Mattel's growth and success.[4]  By the late 1990's, BARBIE boasted sales of $1.8 billion and was the world's best-selling toy.[5]

Content to rest on BARBIE's past laurels, however, Mattel failed to anticipate or respond to shifts in consumer tastes, changing industry dynamics and

---

[1] Mattel's Motion To Compel Rule 26(a) Disclosures dated January 18, 2007
[2] Order Denying Mattel's Motion to Compel Rule 26(a) Disclosures dated February 13, 2007 at
[3] See Plaintiff-MGA's Complaint dated April 13, 2005 (hereinafter "Complaint") at ¶ 10.
[4] Id.
[5] Id.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

Exhibit B - Page 40

1    an increasing focus on technologically advanced and interactive toys.[6]  By 1997 the

2    BARBIE brand had lost its steam and sales quickly began to plummet.[7]  In 1998,

3    BARBIE sales decreased approximately $252 million and remained flat or declined

4    for the subsequent four years.[8]

5         Because BARBIE represented as much as 50% of Mattel's business,

6    BARBIE's collapse would have dire consequences for Mattel.[9]  In an effort to

7    diffuse the impact of BARBIE's sales slump on its bottom line, Mattel engaged in a

8    series of acquisitions to diversify its toy-brand portfolio, including purchasing the

9    companies behind "Matchbox" cars and "American Girl" dolls.[10]  Mattel continued

10    to founder and, in 1999, Mattel announced a lay-off of approximately 3,000

11    employees.[11]  Irrespective of Mattel's diversification and streamlining efforts,

12    Mattel's profit center was still BARBIE and BARBIE was still languishing.[12]  Then,

13    in 2001, came MGA's BRATZ.[13]

14         MGA's BRATZ line of dolls and branded products sported a hip, multi-

15    ethnic urban look that appealed to contemporary pre-teen and teenage girls.[14]

16    Introduced to consumers in June 2001, these dolls looked like no other, with

17    disproportionately large heads, big, dramatic eyes and lips, small thin bodies,

18    oversized feet and up-to-date fashions.[15]  The BRATZ line immediately supplanted

19    a portion of the market share (and shelf space) for fashion dolls by appealing to

20    "tween" girls who were no longer interested in the more traditional BARBIE.[16]

21

22    [6] Complaint at ¶¶ 11-12.
        [7] Id.

23    [8] Complaint at ¶¶ 29-30.
        [9] Complaint at ¶¶ 11-12.

24    [10] Complaint at ¶ 13.

25    [11] Complaint at ¶ 14.
        [12] Id.

26    [13] Complaint at ¶ 21.

27    [14] Complaint at ¶ 24.
        [15] Complaint at ¶ 25.

28    [16] Complaint at ¶ 27.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

The BRATZ line also received a number of industry accolades, including the Toy Industry Association ("TIA") Peoples Choice Toy of the Year and the Family Fun Toy of the Year Awards in 2001 and 2002; the TIA Property of the Year and Girl Toy of the Year Awards for 2003; and LIMA's (the licensing industry's official arm) Best Character License of the Year and Overall Best Licensed Property for 2003, just to name a few.[17]  In addition to industry accolades, the media took notice, with MSNBC naming BRATZ the Hottest Toy of the Year in 2004.[18]

Although only a tiny fraction of the size of Mattel, MGA's ability to chip away at Mattel's stranglehold on the fashion doll market apparently was perceived as a serious threat.  MGA's BRATZ had commandeered market share, shelf space and prestige that had for so long belonged solely to BARBIE.  Mattel's response to the threat posed by MGA and the BRATZ brand was no less than full scale corporate warfare.

Mattel engaged in a campaign of tortious, unfair and anti-competitive practices including systematic, serial copycatting and intellectual property infringement, aided by intimidation threats and other acts of unfair competition. When Mattel couldn't come up with an original product to compete with BRATZ, it came up with a new BARBIE giving her a BRATZ look with a disproportionately larger head, big, dramatic eyes and lips, a small thin body and up-to-date fashions.[19] Every member of this new BARBIE line, dubbed MY SCENE, was purposely designed to evoke the unique and distinctive look of one of the BRATZ dolls.[20] Everything about the MY SCENE line, from eye-shape to outfits to packaging to themed brand extensions, was a rip-off of MGA's BRATZ and became more so

---

[17] Complaint at ¶ 28.
[18] Id.
[19] Complaint at ¶ 34.
[20] Id.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

Exhibit B - Page 42

with each iteration.[21]  And, to make sure MGA did not succeed with its other products, Mattel did not limit its copying to BRATZ.  Mattel also copied versions of MGA's "4-Ever Best Friends," introducing  "Wee 3 Friends"; MGA's "Mommy's Little" dolls, introducing its "Little Mommy" doll; and MGA's Alien Racers line of toy racing vehicles, by re-branding a former Hot Wheels line under the AcceleRacerS mark and logo. [22]

Not content with its efforts to siphon consumers from MGA by infringing on MGA's intellectual property rights, Mattel concurrently sought to limit MGA's ability to compete by coercing and threatening retailers, licensees and suppliers both in the United States and abroad.  To the best of MGA's knowledge, these activities include, but are by no means limited to:  (a) threatening former Mattel employees now working for MGA with litigation for disclosing even publicly available information about Mattel; (b) warning a number of companies not to license MGA products or risk retribution; (c) pressuring distributors and retailers not to distribute BRATZ, to reduce shelf and display space for BRATZ and to place BRATZ in unfavorable locations at retail outlets; (d) locking MGA out of the market for doll hair, by purchasing the entire supply of doll hair from the two main hair supply companies; and (e) manipulating the retail market by having Mattel merchandisers tamper with MGA's retail displays and giving false information to retailers about MGA's customer relationships and future plans.[23]

As a result of Mattel's infringement of MGA's intellectual property rights and in response to Mattel's unfair and anti-competitive business practices, MGA brought suit seeking both equitable relief and damages for false designation of origin, affiliation, association or sponsorship and unfair competition pursuant to 15 U.S.C. §1125(a); dilution pursuant to 15 U.S.C. §1125(c), Cal. Bus & Prof. Code §

---

[21] Complaint at ¶¶ 34, 37-56.
[22] Complaint at ¶¶ 68-70.
[23] Complaint at ¶¶ 73-79

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

Exhibit B - Page 43

1    14330 and California common law; unfair competition pursuant to Cal. Bus. & Prof.

2    Code §17200 *et seq.* and California common law; and unjust enrichment.

3

### B.   MGA's First Set of Requests for Production of Documents and Mattel's Objections

4

5

6    Pursuant to Federal Rules of Civil Procedure 26(b) (1) and 34, MGA

7    propounded its Requests seeking discovery regarding, among other things: (a)

8    Mattel's copycatting efforts and activities with respect to BRATZ and other MGA

9    product lines; (b) specific anti-competitive business activities carried out by Mattel

10   which were enumerated in MGA's Complaint based upon information and belief;

11   and (c) any similar or related anti-competitive business activities relevant to

12   MGA's claims against Mattel.  Each of the document requests, served by MGA on

13   November 22, 2006, was tailored to elicit facts bearing on essential elements of its

14   claims.

15   In response, Mattel raised a number of improper general objections and flat-

16   out refused to produce documents responsive to any of MGA's requests related to

17   its unfair competition claims.  On March 1, 2007, pursuant to paragraph 5 of the

18   Order for the Appointment of a Discovery Master, MGA requested a meet and

19   confer to discuss Mattel's improper objections and the paucity of its responses.

20   MGA attended the meet and confer on March 9, 2007, but was unable to secure

21   Mattel's agreement to produce the vast majority of documents MGA sought.[24]

22   Thereafter on March 13, 2007, MGA wrote a letter to Mattel in an effort to resolve

23   or at least further narrow the discovery issues that were in dispute.[25]  To date,

24   Mattel has failed to respond to that letter.[26]  As MGA has been unable to obtain

25   discovery it legitimately requested from Mattel, MGA has no choice but to file this

26

27   [24] Declaration of Jennifer Glad ("Glad Decl.") ¶ 3.
     [25] Glad Decl. ¶ 4, Exhibit 1.
28   [26] Glad Decl. ¶ 5.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

motion to compel.

## III.   ARGUMENT

### A.   MGA Is Entitled to the Discovery It Seeks

Federal Rule of Civil Procedure 26(b) (1) grants a party "the right to discover non-privileged information "relevant to the claim or defense of any party."" *See Goodrich Corp. v. Emhart Indus.*, 2005 U.S. Dist. LEXIS 25160 (C. D. Cal. October 6, 2005) at *10. "Relevance is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Id*. A discovery request is proper if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). As set forth more fully below, MGA has rightfully requested discovery relevant to its claims. Mattel on the other hand, has failed to sustain its burden of showing that such discovery should not be allowed, notwithstanding its improper objections.

### B.   Mattel Has Withheld Documents Based on Improper General Objections

#### 1.   Mattel has withheld documents based on an improper general relevance objection

Inconceivably, Mattel has generally objected and flatly refused to respond to any of MGA's requests that are not related to facts specifically alleged with particularity in MGA's Complaint even if they are relevant to MGA's claims, thereby engrafting a Fed. R. Civ. P. 9(b) heightened pleading standard to discovery requests. Mattel has used this objection as a basis to withhold documents harmful to its case concerning (a) unfair or anti-competitive business activities which it

7

perpetrated against MGA which MGA could only learn of via the discovery process; and (b) unfair and anti-competitive activities as they relate to MGA products which were not individually enumerated in the Complaint.

This specious objection belies the entire foundation of the federal discovery system. MGA's requests speak to the very purpose of discovery – to find out what it is unaware of and potentially narrow issues for trial or promote settlement. *See Woods v. Kraft Foods, Inc.*, 2006 U.S. Dist. LEXIS 73126 (E. D. Cal. 2006) (purpose of discovery to make trial "less a game of blind man's bluff…with the basic issues and facts disclosed to the fullest practicable extent possible…and to narrow and clarify the issues in dispute" (citations omitted)); *see also* 6 Moore's Federal Practice §26.02 (3d ed. 2001) (purpose of disclosure of all relevant information is to allow "disputed issues to be based on full and accurate understanding of true facts").

Moreover, the focus is not on the specific facts alleged in the Complaint, but on the specific claims and defenses. 6 Moore's Federal Practice §26.41 (3d ed. 2001). As Professor Moore points out:

> "a court resolving a discovery dispute on the ground of relevance must…focus on the specific claim or defense alleged in the pleadings. This does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact. It means that the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery."

*Id.* Mattel may not refuse to produce documents relevant to MGA's claims of unfair competition merely because such documents discuss its anti-competitive activities which it conducted in secret and about which MGA could not possibly have any factual knowledge. Nor can Mattel refuse to produce relevant documents related to the BRATZ product line, solely because MGA did not specifically

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    enumerate each and every single BRATZ-related product or accessory in the

2    Complaint.  To allow Mattel to do so would put MGA at a severe disadvantage in

3    the discovery process and negate the liberal construction given Fed. R. Civ. P.

4    26(b).

5        In view of the foregoing, Mattel should not be allowed to withhold

6    documents on this basis.

7
8    2.    **Mattel has improperly limited the scope of its production of documents relating to MGA's BRATZ products**

9        Mattel has generally objected to and refrained from producing

10   documents relating to MGA's BRATZ dolls unless the documents are "in the

11   context" of Mattel's BARBIE or MY SCENE products on "relevance" grounds.

12   However, Mattel cannot unilaterally withhold documents concerning BRATZ

13   solely because they do not reference or contemplate BARBIE or MY SCENE.  At

14   the March 9th meet and confer, Mattel's ever-shifting rationale for withholding

15   documents that referenced BRATZ but not BARBIE or MY SCENE ranged from

16   (a) Mattel should not be required to go to the "Hot Wheels department" to ask

17   about "BRATZ" -- an objection based on burden not relevance; to (b) that this case

18   is about "BRATZ vs. "MY SCENE" -- which completely ignores MGA's non-MY

19   SCENE related unfair competition claims, for example MGA's assertion that

20   Mattel exerted pressure on licensees not to license, and retailers or distributors not

21   to distribute, BRATZ products, and therefore just is not true; to (c) the unsupported

22   assertions of Mattel's counsel that *he* had never seen documents discussing BRATZ

23   which did not discuss BARBIE, MY SCENE, or a specifically alleged act of unfair

24   competition.[27]  None of these purported objections justifies Mattel's attempts to

25   unilaterally and improperly narrow the scope of discovery or refuse production of

26   relevant materials.

27

28   _____
     [27] Glad Decl. at ¶3.

9

1    Following Mattel's logic, whole categories of documents related to MGA's

2    unfair competition claims reasonably could be excluded from production. For

3    example, documents pertaining to Mattel's tampering with BRATZ displays that

4    did not mention MY SCENE or BARBIE would, in Mattel's view, fall outside the

5    scope of responsive documents; as would documents showing that Mattel exerted

6    influence over licensees and others not to license or distribute BRATZ products

7    unless those documents also mentioned MY SCENE or BARBIE. In addition,

8    Mattel's position would hamper discovery in connection with MGA's Lanham Act

9    claims, including, for example, product development documents related to Mattel's

10   decision, plan or implementation of a strategy to copy BRATZ dolls outside of the

11   context of the BARBIE or MY SCENE products. Such documents are relevant to

12   MGA's claims that Mattel willfully infringed its intellectual property rights.

13   MGA advised in its March 13th letter, that it was willing to meet and confer

14   concerning any proposal Mattel wished to make for narrowing its search for

15   responsive documents.[28] Nevertheless, Mattel still is obliged to produce documents

16   relevant to all of MGA's claims -- including any documents referencing BRATZ in

17   connection with MGA's allegations of unfair competition under California state and

18   common law which do not reference BARBIE or MY SCENE -- not just those

19   documents Mattel feels like producing in connection with claims it feels like

20   defending. As such, Mattel should be compelled to produce documents concerning

21   MGA's BRATZ dolls regardless of whether such documents also reference or

22   contemplate Mattel's BARBIE or MY SCENE products.[29]

23

24

25

26

---

27  [28] Glad Decl. at ¶ 4, Exhibit 1.

28  [29] Mattel also has withheld documents relating to conduct occurring outside of the United States. This issue will be addressed in a separate motion.

3.   **Mattel Has Improperly Limited the Scope of Certain of MGA's Requests Concerning MY SCENE to "those aspects of the MY SCENE products that MGA has accused of infringement" in its Complaint**

MGA has sought documents referring or relating to Mattel's MY SCENE dolls including without limitation documents concerning the development of the product design trade dress or packaging trade dress of MY SCENE, or any changes thereto, as well as documents concerning the design, development, themes, conception or creation of packaging or artwork for MY SCENE. Although Mattel agreed to produce some documents, it improperly limited the scope of its production to only those aspects of MY SCENE that MGA accused of infringement in MGA's Complaint. Mattel effectively has limited the scope of discovery in this area to only its past infringement of the specific aspects of MGA's BRATZ products and packaging asserted in MGA's Complaint. As a result, Mattel apparently has withheld documents concerning potentially infringing items not mentioned in the Complaint and documents concerning the development of its MY SCENE product line from inception of this suit to the present.

As discussed more fully above, Mattel cannot refuse to produce relevant documents related to its MY SCENE dolls and packaging, solely because MGA did not specifically enumerate each and every single infringing MY SCENE item in the Complaint. Moreover, documents concerning the current development of MY SCENE may tend to show continuing infringement and therefore are relevant to MGA's claims that Mattel's conduct is willful and to MGA's claims for damages. As such, Mattel should be compelled to produce documents concerning MY SCENE regardless of whether such documents implicate a particular instance of infringement alleged in MGA's Complaint and also to produce documents concerning the development of MY SCENE products and packaging from the time MGA filed its Complaint through to the present.

11

C.   **Mattel Has Withheld Documents Based on Other Improper Objections**

In addition to its improper general objections, Mattel also has raised improper specific objections to MGA's Requests in an effort to withhold documents relevant to MGA's claims and defenses.  These are as follows:

1.   Mattel refused to produce communications between Mattel and sales personnel, merchandisers and retailers relating to the alteration of displays or retail spacing of non-BRATZ MGA products.  (Doc. Req. Nos. 32-33, 61.)

These documents are directly relevant to MGA's assertion in ¶79 of its Complaint that "Mattel merchandisers have been caught tampering with MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise instead" and thus to MGA's claims for unfair competition.  Mattel maintains it only need produce documents pertaining to tampering with BRATZ displays, but not other MGA product displays.  However, MGA's Complaint clearly alleges claims for unfair competition emanating from Mattel's tampering with "MGA displays" which may or may not be BRATZ displays.  Mattel's attempt to narrow the scope of its document review and production is improper.  Mattel should be compelled to produce documents in its possession that relate to *any* tampering with MGA displays.

2.   Mattel refused to produce communications between Mattel and CARU relating to MGA and restrictions to be placed on it; or documents supporting Mattel's allegation in its Answer that MGA violated CARU standards.  (Doc. Req. Nos. 37-39);

Such documents are directly relevant to MGA's assertions in ¶¶87-91 of its Complaint that "Mattel used its influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions on MGA advertisements, and to require MGA to amend aspects of commercials that have gone unchallenged in

12

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

Exhibit B - Page 50

1   other parties' commercials," and thus to MGA's claims for unfair competition and

2   unfair business practices. Mattel even refused to produce documents supporting its

3   own assertion that MGA violated CARU standards, which is directly relevant to

4   ¶80 of its Answer. At the March 9th meet and confer, Mattel indicated that it

5   needed to confirm that disclosure of CARU-related documents did not violate

6   Mattel's confidentiality agreement with CARU and would advise MGA of its

7   decision with respect to these documents.[30] To date, MGA has not received any

8   correspondence from Mattel advising of its decision.[31]

9       MGA believes that Mattel is basing its refusal to produce documents

10  responsive to these requests on a clause in its agreement with CARU preventing

11  *parties* thereto from subpoenaing documents (unless pursuant to a court order).

12  MGA is not a party to that agreement and therefore is not precluded from seeking

13  documents in Mattel's possession responsive to its requests. Moreover, Mattel does

14  not appear to be precluded from providing documents it has in its possession

15  concerning CARU, only from subpoenaing CARU for such documents. In any

16  event, Mattel has had ample time to clear up any confidentiality issues with CARU,

17  to the extent there are any, and now should be compelled to produce documents

18  responsive to this request.

19         3.   Mattel refused to produce documents relating to attempts by Mattel

20             to price "MY SCENE" below BRATZ (Doc. Req. No. 43.)

21       Such documents are likely to lead to admissible evidence relating to whether

22  Mattel has an organic process for setting its prices, or whether it set its prices based

23  on confidential information illicitly obtained from MGA. As such, these

24  documents would be relevant to MGA's unfair competition and serial copycatting

25  claims and Mattel should be compelled to produce them.

26

27  ———————————
[30] Glad Decl. ¶ 4.

28  [31] Id.

4.   Mattel has refused to produce documents relating to communications between Mattel and buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one of its lines.  (Doc. Req. No. 47.)

These documents are directly relevant to MGA's assertion in ¶79 of its Complaint that "Mattel has falsely told a major United States retailer that MGA was giving another major United States retailer below-market pricing and falsely told a United Kingdom retailer that MGA was discontinuing one of its lines" and thus to MGA's unfair competition claims.  As such, Mattel should be compelled to produce documents in its possession that relate to these or any similar communications.

5.   Mattel refused to produce documents relating to communications between Mattel and any buyers, merchandisers, general merchandise managers, retailers, suppliers, licensees, and potential licensees, relating to BRATZ, Larian or MGA regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of BRATZ or any other MGA product.  (Doc. Req. Nos. 48-50.)

These communications are directly relevant to MGA's assertions in ¶¶76-79 of its Complaint that Mattel interfered with its business dealings with third parties and thus are likely to lead to admissible evidence to MGA's claims for unfair competition and/or unfair business practices.  As such, Mattel should be compelled to produce documents in its possession that relate to any such communications.

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

Exhibit B - Page 52

6.    Mattel refused to produce documents relating to communications between Mattel and any public relations firms, members of the press, current or former MGA employees, or former Mattel employees, relating to BRATZ, Larian or MGA regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of BRATZ or any other MGA product. (Doc. Req. Nos. 51-55.)

At the heart of MGA's claims against Mattel is the allegation -- the truth of which is apparent from even a quick glace at Mattel's products -- that Mattel has engaged in serial imitation of MGA products in an orchestrated attempt to dilute their distinctiveness, create confusion in the marketplace and unfairly compete with MGA. The communications MGA seeks pertain directly to those allegations and are very likely to lead to admissible evidence relating to key issues in this case, such as the creation and ownership of BRATZ, Mattel's knowledge and awareness of BRATZ products and marketing and its attempt to imitate those products and dilute their distinctiveness, and MGA's other unfair competition claims. As such, Mattel should be compelled to produce documents in its possession that relate to any such communications.

7.    Mattel refused to produce documents relating to business dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and MGA. (Doc. Req. Nos. 56-58.)

MGA's request is specifically tailored to relate to documents in Mattel's possession, custody or control concerning MGA's business dealings with licensees, suppliers, manufacturers, retailers, distributors, or merchandisers and is not seeking all documents regarding Mattel's business dealings with these parties unrelated to MGA. Any such documents in Mattel's possession are likely to lead to admissible evidence relating to MGA's claims that Mattel interfered with MGA's business dealings with third parties, as alleged in ¶¶76-79 of MGA's Complaint and are therefore relevant to MGA's unfair competition claims. As such, Mattel should be

compelled to produce documents in its possession that relate to any such communications.

8.   Mattel refused to produce documents relating to (a) any interference with or inhibition of the licensing or potential licensing of MGA's products, or relating to any limitations or restrictions on any MGA licensee (Doc. Req. Nos. 59, 62-63); (b) any third party's licensing or potential licensing of MGA products (Doc. Req. No. 60); and (c) communications between Mattel and MGA's licensees and distributors referring to MGA, BRATZ or the claims in this lawsuit. (Doc. Req. Nos. 99, 101.)

As alleged in MGA's Complaint, one prong of Mattel's multi-faceted attack was to exert its influence on retailers and other third parties not to do business with MGA.  Indeed, MGA specifically alleged, in ¶76 of its Complaint, that as of part of this campaign, Mattel has "warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in retribution for licensing BRATZ."   The documents MGA requests therefore are not only directly relevant to MGA's specific allegations but are likely to lead to the discovery of admissible evidence related to MGA's claims for unfair competition and/or unfair business practices more generally.  As such, Mattel should be compelled to produce documents in its possession which relate to any such communications.

9.   Mattel refused to produce documents relating to (a) any third party's agreement or decision not to license, manufacture, promote, distribute or sell MGA products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such activities (Doc. Req. Nos. 64-65.); and (b) any interference with or inhibition of the supply of goods or services to MGA, or of MGA's distribution of its products.  (Doc. Req. Nos. 66-67.)

As with the communications discussed above, these documents are directly

16

relevant to MGA's claims that Mattel interfered with MGA's business dealings with distributors, retailers, and other third parties, as alleged in ¶¶76-79 of MGA's Complaint, and therefore is likely to lead to the discovery of admissible evidence related to MGA's claims for unfair competition and/or unfair business practices. As such, Mattel should be compelled to produce documents in its possession which relate to any such communications.

> 10. Mattel refused to produce communications between Mattel and Nickelodeon, the Cartoon Network or 4kids Entertainment, referring to MGA, BRATZ or Larian. (Doc. Req. Nos. 102-104.)

Such documents are likely to lead to admissible evidence relating to MGA's claims that Mattel interfered with MGA's business dealings with third parties and therefore is relevant to MGA's claims for unfair competition and/or unfair business practices. As such, Mattel should be compelled to produce documents in its possession which relate to any such communications.

## IV.   MATTEL SHOULD BE SANCTIONED

Under the Federal Rules, a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified…" Fed. R. Civ. P. 37(a)(4). The party being sanctioned has the burden of establishing substantial justification. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). Independently, sanctions may be imposed pursuant to 28 U.S.C. §1927, when a party "unreasonably and vexatiously" multiplies the proceedings.

Sanctions are appropriate here. Mattel does not have any legitimate basis for its repeated failure to produce clearly responsive documents on matters central to MGA's claims. Mattel has asserted a variety of general and specific objections that

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

have no basis in law or fact.  Moreover, Mattel continuously shifts its basis for withholding certain documents, making it virtually impossible for MGA to resolve discovery disputes with Mattel -- even via the meet and confer process.  MGA has made every effort to resolve the discovery issues raised in this brief with Mattel, but to no avail.  As such, Mattel and its counsel should be sanctioned for the fees and costs MGA has been forced to expend as a result of Mattel's evasions in connection with its document production.  MGA therefore requests that MGA be ordered to pay $4,700.00 as partial reimbursement of the fees and costs that MGA has incurred in making this motion.[32]

## V.   **CONCLUSION**

WHEREFORE, for the foregoing reasons, MGA respectfully requests that the Court: order Mattel to immediately produce their documents, and provide MGA such further relief as may be appropriate.

Dated: April 12, 2007                    O'MELVENY & MYERS LLP

By: Michael Keats
Attorneys for MGA Entertainment, Inc.

---

[32] Glad Decl. ¶5.

18

MGA'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1       **PROOF OF SERVICE**

2               I, Karen A. Nakatsu, declare:

3               I am a resident of the State of California and over the age of eighteen years, and
        not a party to the within action; my business address is 400 South Hope Street, Los Angeles,
4       California 90071-2899. On April 13, 2007, I served the within document(s):

5               **MGA ENTERTAINMENT INC.'S MOTION TO COMPEL**

6       ☒       by putting a true and correct copy thereof, together with an unsigned copy of this
                declaration, in a sealed envelope designated by the carrier, with delivery fees paid
7               or provided for, for delivery the next business day to the person(s) listed below,
                and placing the envelope for collection today by the overnight courier in
8               accordance with the firm's ordinary business practices. I am readily familiar with
                this firm's practice for collection and processing of overnight courier
9               correspondence. In the ordinary course of business, such correspondence collected
                from me would be processed on the same day, with fees thereon fully prepaid, and
10              deposited that day in a box or other facility regularly maintained by FedEx, which
                is an express carrier.
11
                Sandra Chan
12              Case Manager
                JAMS
13              Two Embarcadero Center, Suite 1500
                San Francisco, CA 94111
14              schan@jamsadr.com

15      ☒       by causing to be personally served the document(s) listed above to the person(s)
                listed below.
16
                Timothy Alger, Esq.
17              Quinn Emanuel Urquhart Oliver & Hedges, LLP
                865 South Figueroa Street, 10th Floor
18              Los Angeles, CA 90017
                talger@quinnemanuel.com
19

20              I declare under penalty of perjury under the laws of the United States that the
        above is true and correct.
21
                Executed on April 13, 2007, at Los Angeles, California.
22

23                                      _Karen A. Nakatsu_
24                                      Karen A. Nakatsu

25

26

27

28

LA2:822283.1