# Exhibit C

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                            EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     ORDER GRANTING IN PART AND
                                           DENYING IN PART MGA'S MOTION
16                                         TO COMPEL DOCUMENTS
                                           RESPONSIVE TO FIRST SET OF
17                                         REQUESTS FOR PRODUCTION OF
                                           DOCUMENTS DATED NOVEMBER
18  CONSOLIDATED WITH                      22, 2006
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20                                         I. INTRODUCTION

21       On April 13, 2007, MGA Entertainment, Inc. ("MGA") submitted a motion to compel

22  Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for

23  Production of Documents dated November 22, 2006 (the "requests"), which generally seeks

24  documents that MGA contends are relevant to its Lanham Act and unfair competition claims.  On

25  April 25, 2007, Mattel submitted its opposition brief, and on May 2, 2007, MGA submitted a

26  reply brief.  The matter was heard via telephonic conference on May 11, 2007.  Having

27

28  Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

Exhibit C - Page 58

1 | considered the motion papers and comments of counsel at the hearing, MGA's motion to compel
2 | is granted in part and denied in part.

## II. BACKGROUND

4 |     There are two themes underlying MGA's claims for unfair competition against Mattel.
5 | First, MGA alleges that Mattel has intentionally "serially imitated and copy-catted the look of
6 | MGA products, trade dress, trademarks, themes, ideas, advertising and packaging, including for
7 | the 'Bratz' line of dolls," to dilute MGA's brand, create customer confusion, and unfairly stifle
8 | competition. MGA's Complaint at ¶¶9, 65. Second, MGA alleges, on information and belief,
9 | that "Mattel has intimidated, coerced and threatened retailers, licensees, suppliers and others in
10 | the industry – both in the U.S. and internationally – in order to inhibit and stifle MGA's ability to
11 | compete with Mattel and to prevent MGA from obtaining licensees, contracts and supplies for its
12 | products." Id. at ¶9.

### The Alleged Copy-catting

14 |     Mattel's alleged serial copycatting "began with the 'Bratz' dolls themselves, but quickly
15 | extended to MGA's packaging, themes, accessories, advertising and even other product lines."
16 | Id. at ¶33. Mattel allegedly "designed its 'My Scene' dolls to evoke the unique and distinctive
17 | look of the 'Bratz' – also with disproportionately oversized heads, artfully made-up almond-
18 | shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-
19 | sized feet." Id. at ¶34. Mattel also allegedly "systematically proceeded to modify the 'My Scene'
20 | dolls since their original release, particularly their eyes, to increase their similarity to 'Bratz' more
21 | and more over time." Id.

22 |     Further, Mattel allegedly "modified its 'My Scene' packaging, and the manner in which
23 | the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and
24 | total image of MGA's 'Bratz.'" Id. at ¶41. For example, Mattel allegedly changed its packaging
25 | "to the open and transparent style of the 'Bratz' packaging." Id. at ¶43. Mattel also allegedly
26 | hung its packaging and product display to "look even more closely and confusingly similar to
27 |
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

Exhibit C - Page 59

1   MGA's packaging and '*tout ensemble*.'" Id. at ¶45.  Mattel also allegedly "discarded its

2   traditional rectangular shaped box, and like 'Bratz', adopted an unusual, non-rectangular shaped

3   box." Id. at ¶46.  Mattel also allegedly "adopted the 'flying banner' ribbon-style slogan running

4   across the middle of the box, similar to that used on the 'Bratz' packaging." Id.

5          In addition to the packaging changes, Mattel allegedly copied "MGA's practice of

6   regularly releasing new dolls in connection with a theme – but not just any theme, often MGA's

7   theme." Id. at ¶47.  For example, when MGA released its "Wintertime Wonderland" theme,

8   Mattel allegedly released "Chillin Out." Id. at ¶48.  Mattel also allegedly imitated Bratz

9   accessories and related products in order to create consumer confusion in the marketplace. Id. at

10  ¶52.  Further, Mattel allegedly "began running television commercials for its 'My Scene' dolls

11  bearing a remarkable similarity to 'Bratz' commercials, combining live action with animated

12  sequences set to similar sounding pop music and lyrics." Id. at ¶51.  MGA alleges that Mattel's

13  conduct described above "is a calculated and intentional effort unquestionably designed to trade

14  off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder

15  and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products."

16  Id. at ¶54.

17         Further, MGA alleges that when it "came out with a 'Bratz' 'Funky Fashion Makeover

18  Head,' Mattel came out with a confusingly similar – indeed, practically identical – 'My Scene'

19  styling head." Id. at ¶55.  Mattel also allegedly "used a portion of the Bratz doll's now-famous

20  trademarked tag line 'The Girls With a Passion for Fashion' on Mattel's website for its 'Diva

21  Starz' dolls, asking its website users: 'Do you have a passion for fashion?'" Id. at ¶58.

22         MGA also alleges that Mattel recently came out with a confusingly similar line of "My

23  Scene" plush pets that have the distinctive look of MGA's "Bratz" line. Id. at ¶59.  In addition,

24  Mattel allegedly "chose to package its pets the same way that MGA packaged its 'Bratz Petz',

25  sitting in an open box, with no top and with partial side panels that slope from a narrow front

26  panel to a higher back panel." Id. at ¶60.  MGA alleges that the similarity of the "My Scene" pets

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                            3

Exhibit C - Page 60

1  and the "Bratz Petz" has confused sophisticated retailers who have mistakenly merchandised the

2  products together. Id. at ¶61.

3       MGA alleges that Mattel's television commercials and "My Scene" products have become

4  so confusingly similar to MGA's commercials and products that advertising executives have

5  expressed concern. Id. at ¶62. MGA also alleges that the press has taken notice of Mattel's

6  alleged attempts to confuse consumers. Id. at ¶63. Further, MGA alleges that some customers

7  have contacted MGA seeking to purchase "My Scene" dolls. Id. at ¶64.

8       MGA alleges that Mattel's conduct has reached beyond "Bratz" to include other new

9  MGA toy lines. Id. at ¶67. For example, Mattel allegedly modeled its "Wee 3 Friends" line of

10 dolls and packaging on MGA's "4-Ever Best Friends" line. Id. at ¶68. Mattel also allegedly

11 modeled its "Little Mommy Potty Training Baby Doll" on MGA's "Mommy's Little Patient." Id.

12 at ¶69. Mattel also allegedly revamped and renamed one of its "Hot Wheels" lines with the

13 "AcceleRacerS" logo based upon MGA's "AlienRacers" radio controlled racing vehicles. Id. at

14 ¶70.

15                    Additional Allegedly Anti-Competitive Conduct

16      MGA alleges that Mattel has engaged in additional allegedly anti-competitive conduct,

17 including "sending threatening letters to several of its former employees who now work for MGA

18 warning them not to disclose *even publicly available information* about Mattel, including the

19 names and positions of Mattel employees." Id. at ¶75 (emphasis in original). Mattel has also

20 allegedly "warned a number of companies, including the biggest publishing entity in the United

21 Kingdom, not to license MGA products, or risk retribution." Id. at ¶76. MGA alleges that it has

22 lost valuable licensing opportunities as a result of Mattel's conduct. Id.

23      MGA also alleges that "Mattel has used similar intimidation to pressure distributors and

24 retailers, particularly in foreign countries, not to distribute 'Bratz', to reduce shelf and display

25 space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets." Id. at ¶77. MGA

26 further alleges that "[w]hen MGA faced a shortage of doll hair in October 2002, MGA is

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit C - Page 61

1 | informed and believes that the reason for that shortage was that Mattel had locked MGA out by

2 | buying up the supply from the two main hair supply companies." Id. at ¶78.

3 |      MGA also alleges that Mattel manipulated the retail market. More specifically, MGA

4 | alleges that "Mattel merchandisers have been caught tampering with MGA's retail displays,

5 | replacing favorably located MGA merchandise with Mattel merchandise instead." Id. at ¶79.

6 | MGA further alleges on information and belief that "Mattel has falsely told a major United States

7 | retailer that MGA was giving another major United States retailer below-market pricing and

8 | falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to

9 | make such line less attractive to buyers and thereby attempt to increase sales of the competitive

10 | Mattel product and improve its own sales, at MGA's expense." Id.

11 |      Next MGA alleges on information and belief that NPD Funworld ("NPD"), the leading

12 | supplier of sales statistics in the toy industry, terminated MGA's subscription ostensibly for

13 | misusing NPD data and that "the termination was the result of pressure from Mattel." Id. at ¶¶80-

14 | 85. MGA also alleges on information and belief that Mattel pressured NPD into changing certain

15 | product classifications for "Bratz" products to manipulate the data and preserve Mattel's market

16 | share rankings in the "fashion doll" category. Id. at ¶86.

17 |      MGA further alleges on information and belief that Mattel used its influence as a major

18 | contributor to the Children's Advertising Review Unit ("CARU"), which is a unit of the Council

19 | of Better Business Bureaus, to "place onerous restrictions on MGA advertisements, and require

20 | MGA to amend aspects of commercials that have gone unchallenged in other parties'

21 | commercials." Id. at ¶89. As a result of CARU's restrictions, MGA allegedly incurred

22 | unnecessary costs for reshooting and producing or re-editing its commercials. Id. at ¶90.

23 |      MGA also alleges on information and belief that Mattel's subsidiary, Fisher Price,

24 | "orchestrated" a change to the selection process for TIA's "Toy-of-the-Year Awards," which

25 | allegedly resulted in a Fisher Price toy beating out "BRATZ Formal Funk Super Stylin' Runway

26 | Disco." Id. at ¶¶92-96. MGA also alleges on information and belief that one year "Mattel was

27

28

1    instrumental in attempting to keep MGA from participating as a sponsor in the 'Kids' Choice

2    Awards.'" Id. at ¶97.

3            As a result of Mattel's alleged conduct described above, MGA has allegedly suffered, and

4    unless abated, will continue to suffer lost sales, lost licensing fees, lost contracts, lost

5    relationships, lost business opportunities and other damages. Id. at ¶100.  MGA also alleges that

6    its ability to enter new markets and product lines has been hampered and delayed. Id.

7    Furthermore, MGA alleges that "[i]ts production costs have increased, its reputation and

8    relationships with important players in the industry have been negatively impacted, the value of

9    its business has been diminished, and its ability to attract, hire and retain employees has been

10   affected." Id. Based upon the foregoing, MGA asserts claims for (1) false designation of origin

11   or affiliation in violation of 15 U.S.C. §1125(a); (2) unfair competition in violation of 15 U.S.C.

12   §1125(a) and unfair competition and unfair business practices in violation of Cal. Bus. & Prof.

13   Code §17200 *et seq.* and California common law; (3) dilution in violation of 15 U.S.C. §1125(c),

14   Cal. Bus. & Prof. Code §14330 and California common law; and (4) unjust enrichment.

                      <u>MGA's First Set of Requests for Production of Documents</u>

16           On November 22, 2006, MGA propounded one hundred fifteen (115) document requests

17   seeking discovery regarding, among other things:  (a) Mattel's alleged copycatting efforts and

18   activities with respect to Bratz and other MGA product lines; (b) anti-competitive business

19   practices allegedly carried out by Mattel; and (c) any similar or related activities.  In response,

20   Mattel objected to many requests primarily on the grounds that they were overly broad and

21   unduly burdensome.  Mattel agreed, however, to produce documents responsive to many of the

22   requests.

23           The parties met and conferred in person on March 9, 2007.  MGA's counsel demanded

24   that Mattel withdraw all objections based on relevance.  Alger Decl. in Support of Mattel's

25   Opposition at ¶7.  Mattel's counsel responded that Mattel was producing responsive documents

26   and would continue to produce responsive documents, but had concerns over the "lack of focus

27

28
      Bryant v. Mattel, Inc.,
      CV-04-09049 SGL (RNBx)

                                                                                        6

Exhibit C - Page 63

1  and infinite scope" of MGA's document requests. Id. Mattel's counsel suggested that MGA

2  narrow the requests to "those products, retailers, licensees, and time frames that MGA has put at

3  issue in its Complaint and response to interrogatories." Id. MGA's counsel, however, rejected

4  the proposal. Id.

5        A few days later, counsel for MGA sent Mattel's counsel a letter offering several

6  suggestions for limiting the requests. Glad Decl. in Support of MGA's Motion, Ex. 1. In

7  particular, MGA stated that "it would be amenable to certain limitations on the number and

8  identities of custodians whose files must be searched, so long as Mattel is willing to accept

9  reciprocal accommodations for MGA's own document review." Id. Mattel did not respond to the

10 letter, and the instant motion ensued.

11                        III. STANDARDS

12       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

13 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

14 party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

15 permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

16 2004) ("District courts need not condone the use of discovery to engage in 'fishing

17 expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

18 (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

19 (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

20 the phrase "subject matter involved in the pending action," were intended to target discovery that

21 swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

22 litigate the issues presented by the pleadings but to develop new claims or defenses.). Further,

23 pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit discovery where "the burden or

24 expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

25 the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

26 the litigation, and the importance of the proposed discovery in resolving the issues."

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

Exhibit C - Page 64

# IV. DISCUSSION

## A. General Objections

MGA contends that Mattel has improperly withheld documents based on three generalized objections. First, MGA contends that Mattel has asserted an objection based upon relevance to requests that are not related to facts specifically alleged in MGA's complaint. MGA contends the objection is improper because it essentially grafts a heightened pleading standard onto discovery requests, is inconsistent with the standard for discovery set forth in Rule 26(b), Fed.R.Civ.P., and goes against the very purpose of discovery. MGA denies "fishing" for new claims, contending that it is seeking discovery tending to support or refute existing claims.

Second, MGA contends that Mattel has improperly refused to produce "documents related to MGA's BRATZ dolls unless the documents are 'in the context' of Mattel's BARBIE or MY SCENE products." MGA's Motion at 9:10-11. MGA contends that all of the documents related to Bratz that it seeks are relevant, regardless of whether they refer to or contemplate Barbie or My Scene. In particular, MGA contends that documents related to Bratz, even if they do not refer to Barbie or My Scene, are relevant to its claims that (1) Mattel has exerted pressure on licensees not to license Bratz products; (2) Mattel has exerted pressure on retailers or distributors not to distribute Bratz products; (3) Mattel has tampered with Bratz displays; and (4) Mattel intentionally copied Bratz products.

Third, MGA contends that Mattel has improperly limited its production of My Scene documents to only those documents related to the specific acts of product and packaging infringement identified in MGA's complaint. MGA contends that it is entitled to far more, including documents concerning potential acts of infringement not mentioned in the complaint and documents concerning the development of the My Scene product line from inception of this suit to the present. In particular, MGA contends that documents concerning the current development of My Scene may tend to show continuing infringement, and therefore are relevant to prove that Mattel's conduct is willful.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

Exhibit C - Page 65

1    Mattel contends that it has produced documents in response to many of MGA's requests,

2  and will continue to do so.  Mattel objects, however, to those requests that require Mattel to

3  produce virtually every document, anywhere in the world, that mentions MGA, Larian, Bratz, or

4  any other MGA product.  Mattel contends that MGA is engaging in an improper fishing

5  expedition, casting its requests so broadly as to require production of documents relating to

6  products and entire product lines that are irrelevant to the suit.  Mattel also contends that the

7  requests are overbroad because they seek documents about subjects such as quality and pricing

8  which do not appear anywhere in MGA's pleadings.  Id.  Furthermore, Mattel contends that

9  MGA's requests are not linked in any manner to MGA's claims in the suit and do not reference

10  any particular alleged wrongdoing by Mattel.

11    Mattel also contends that responding to MGA's document requests would impose a

12  considerable, unjustifiable burden on Mattel.  Mattel emphasizes that it is a large company, with

13  over 140 subsidiaries and affiliates in approximately 43 different countries.  Mattel represents that

14  it has over 5,000 employees in the United States and more than 25,000 employees at subsidiaries

15  and affiliates worldwide.

16    Mattel also represents that its products are sold in thousands of stores.  It represents that it

17  deals with Wal-Mart, Target, K-Mart, and Toys "R" Us on a daily basis, and that these four

18  retailers have more than 4,500 stores in the United States.  Mattel also represents that it deals with

19  many hundreds more retailers domestically and overseas.  Further, Mattel represents that it has

20  relationships with more than 1,400 licensees and licensors.

21    Mattel also represents that the toys it produces vary widely, including collectible card

22  games, electronic handheld devices, toy cars, and the Barbie doll line.  Mattel asserts that it

23  introduces annually more than 2,000 different types of toys, dolls and other products in more than

24  150 nations throughout the world.  Mattel asserts that many products often involve the creation of

25  many categories of documents relating to design, marketing, consumer and market research,

26  planning, engineering, cost, manufacturing, distribution, sales and finance.  Mattel represents that

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                                                9

Exhibit C - Page 66

these types of documents are stored on Mattel's over 800 computer servers worldwide, and that countless others are stored in hardcopy or stored on individual employees' desktop computers and laptops.  Furthermore, Mattel represents that many of its network systems, including its e-mail system, are not readily searchable, or searchable at all, by use of keyword terms.  For example, Mattel asserts that the computer system used by Mattel's designers and engineers overwhelmingly consists of graphical files whose content cannot be searched by keywords.

Mattel estimates that MGA and its products are referenced in millions of pages of documents and computer files at Mattel.  More specifically, Mattel contends that many groups across Mattel, such as marketing, consumer research, sales, finance, human resources and safety testing, have documents that refer or relate to MGA or its products in some way.  Mattel also contends that a large volume of this information is from third party analysts and third party sources, including retail sales reports that track doll sales across the entire industry, newspaper and magazine articles, commercials and advertisements.  Mattel also represents that it collects great quantities of documents about its competitors that are readily available on the Internet or other public sources, including catalogs, advertising, press releases, and media reports, and from retailers and distributors throughout the world.

Furthermore, Mattel represents that its documents, particularly its marketing and sales research documents, often reference many competing products, not just the Bratz dolls at issue.  Mattel contends that these types of documents would be difficult to search and collect because, in many instances, the only way to determine whether a particular document mentions Bratz would be to review the entire document.

Mattel contends that virtually any employee at Mattel might have documents that are responsive to MGA's requests.  Mattel estimates that "to locate all such documents would take years, cost millions of dollars, and seriously interfere with the operation of Mattel's business."  Mattel's Opposition at 17.  Matter also asserts that "[s]uch efforts – including search of Mattel's servers, its employees' computer workstations, hard copy files, computer disks, and video files –

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

Exhibit C - Page 67

1   would be in addition to the cost of attorney review of the materials before they are produced in

2   litigation." Id. Mattel also contends that the burden and expense of production is multiplied

3   several times further if Mattel is required to search the files in the possession of its worldwide

4   subsidiaries.

5         Mattel contends that even if the search for responsive documents could be accomplished,

6   the resulting document production would provide MGA with countless documents with little or

7   no relevance. For example, Mattel anticipates that many documents would be discussions of the

8   competition in the context of irrelevant dolls, such as any number of mainline Barbie dolls.

9   Mattel contends that other documents would simply be third party market reports which are

10  equally available to MGA from public sources. Accordingly, Mattel requests that the motion be

11  denied in full.

12        In its reply, MGA counters that the requests are not unduly burdensome. MGA contends

13  that contrary to Mattel's assertions, the requests are factually self-limited, containing restrictive

14  language and defining the outer parameters for the documents sought. Furthermore, MGA

15  contends that it told Mattel that it would be amenable to certain limitations on the number and

16  identities of custodians whose files must be searched, so long as Mattel was amenable to

17  reciprocal accommodations for MGA's own document review. MGA contends that, at a

18  minimum, Mattel should be required to search the physical and electronic files of its employees.

19  MGA contends that Mattel should not be released wholesale from its discovery obligations based

20  on a purported burden, particularly when it failed to work with MGA in good faith to mitigate that

21  burden.

22        Lastly, MGA argues that any burden to Mattel is outweighed by the benefit to be secured

23  from the discovery. MGA contends that it "realistically has no other way of obtaining documents

24  tending to support its claims that Mattel engaged in a pattern of conduct with suppliers,

25  distributors, licensees and others constituting unfair competition except from Mattel." MGA's

26

27

28

1   Reply at 10.  Therefore, MGA believes that the benefits of the discovery it seeks are

2   immeasurable and that in contrast, the burden to Mattel is not unreasonable.[1]

3   B. Document Requests

4          In addition to the three general objections described above, Mattel has asserted other

5   objections to certain categories of document requests which MGA contends are improper.  The

6   general objections stated above, as well as the additional objections asserted by Mattel, are

7   reviewed herein in the context of the nine categories of document requests at issue.

8                          1. Document Request Nos. 32-33, 61

9          Request nos. 32, 33 and 61 seek production of communications with sales personnel,

10  merchandisers and retailers relating to alteration of displays or retail spacing of MGA products

11  other than Bratz.  MGA contends that the documents it seeks are relevant to the allegation in

12  paragraph 79 of its complaint that "Mattel merchandisers have been caught tampering with

13  MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise

14  instead."  In its reply brief, MGA clarifies that it "seeks information tending to show that at any

15  time after June 2001, Mattel sales personnel tampered with, or directed others to tamper with,

16  MGA's in-store displays."  MGA's Reply at 8.

17         During the meet and confer process, Mattel agreed to produce documents responsive to

18  request nos. 32-33 and 61 insofar as they related to displays, retail spacing, or shelf space for

19  Bratz, but refused to produce responsive documents relating to any other MGA products.  Glad

20  Decl. in Support of MGA's Motion, Ex. 1.  Mattel contends that request nos. 32 and 33 are

21  overbroad and unduly burdensome insofar as they require production of communications relating

22  to displays, retail spacing, or shelf-space for any other MGA products.  Mattel views the requests

23  as a directive to "go out and find, review and produce essentially all of its retailer

24  _____

25         [1] In a footnote, MGA mentions that Mattel has also withheld documents relating to conduct occurring
    outside of the United States, and that this issue will be addressed in a separate motion.  MGA's Motion at 10, n. 29.

26  Nothing in this Order is intended in any way to permit or foreclose discovery relating to conduct occurring outside of
    the United States.

27

28

Exhibit C - Page 69

1    communications about any 'change' in any 'display' or any 'retail spacing' for any MGA

2    product." Mattel's Opposition at 10. Mattel contends that MGA, not Mattel, should bear the

3    burden of identifying specific incidents of alleged tampering, and thereafter Mattel will attempt to

4    find and produce pertinent documents relating to those incidents. Id.

5           Mattel also contends that request no. 61 is overbroad and amounts to an improper fishing

6    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

7    product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

8    Opposition at 7-8. Mattel also contends that the request has no linkage to any possible consumer

9    confusion between Bratz and My Scene or between the other products mentioned in MGA's

10   complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

11          Request nos. 32, 33, and 61 seek documents relevant to MGA's allegation that "Mattel

12   merchandisers have been caught tampering with MGA's displays, replacing favorably located

13   MGA merchandise with Mattel merchandise instead." MGA's allegation of tampering is broader

14   than just Bratz products, and therefore, Mattel's objection to producing responsive documents for

15   MGA products other than the Bratz line is overruled.

16          Further, the requests are not unduly burdensome. Request nos. 32 and 33 are limited to

17   communications between Mattel and its sales personnel and merchandisers relating to alterations

18   of display or retail spacing for MGA products, and therefore do not require Mattel to search for

19   documents from every single one of its employees. Request no. 61 is also reasonably tailored to

20   seek relevant information, requiring production of communications between Mattel and any

21   retailer, sales person or merchandiser referring or relating to the allocation of shelf space, altering

22   of retail displays, or placement of Bratz in retail stores, including but not limited to

23   communications concerning the placement of "Bratz" relative to My Scene. Contrary to Mattel's

24   assertion, request no. 61 does not require Mattel to search for virtually all documents that mention

25   MGA, Larian, Bratz, or any other MGA product, whether or not they have anything to do with

26   anything placed at issue by MGA. Instead request no. 61 is clearly limited to a defined category

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

Exhibit C - Page 70

1    of communications with certain individuals and/or entities regarding a defined subject matter.  In

2    addition, MGA indicates in its reply brief that it seeks documents and communications from June

3    2001 forward.  With this temporal limitation, MGA's motion is granted as to request nos. 32, 33

4    and 61.

5                        2. Document Request Nos. 37-39

6          Request nos. 37 through 39 call for production of Mattel's communications with CARU

7    relating to MGA and restrictions to be placed on MGA, as well as documents supporting Mattel's

8    allegation in its answer that MGA violated CARU standards.  MGA contends that the documents

9    it seeks are relevant to its allegation in paragraph 89 of its complaint that "Mattel used its

10   influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions

11   on MGA advertisements, and to require MGA to amend aspects of commercials that have gone

12   unchallenged in other parties' commercials."

13         In its opposition brief, Mattel represents that is prepared to produce documents that bear

14   on MGA's claims and Mattel's defenses involving CARU, but nothing further.  Mattel contends

15   that the sweep of these requests "goes far beyond any particular advertisements or the allegations

16   in MGA's complaint that Mattel pressured CARU or obtained better treatment different than

17   MGA."  Mattel's Opposition at 10.  Furthermore, Mattel contends that the requests are improper

18   because CARU investigates complaints and claims in confidence.

19         MGA's request nos. 37 and 39 seek information relevant to MGA's allegation that Mattel

20   influenced CARU to place restrictions on MGA's advertisements.  The Federal Rules of Civil

21   Procedure do not require MGA to identify every instance when CARU imposed restrictions or

22   required amendments to MGA's advertisements before propounding discovery on the subject.

23         Request no. 38 is much broader, however, seeking all communications between Mattel

24   and CARU referring or relating to MGA, Larian, Bratz, or MGA products.  Request no. 38 is not

25   limited to the subject of MGA's advertisements, or any other subject that is at issue in the case.

26   Further, request no. 38 is, to a certain extent, cumulative of request nos. 37 and 39.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

Exhibit C - Page 71

1    Accordingly, MGA's motion is granted with respect to request nos. 37 and 39, but denied

2  as to request no. 38.

3                              3. Document Request No. 43

4    Request no. 43 seeks documents relating to any attempts by Mattel to price My Scene

5  below Bratz. MGA contends that the documents it seeks are likely to lead to admissible evidence

6  relating to whether Mattel has an "organic process" for setting prices, or whether it set prices

7  based on confidential information obtained from MGA. MGA's Motion at 13:22.

8    Mattel contends that there is no allegation in MGA's complaint of below-market pricing.

9  Further, Mattel contends that the request is overbroad and seeks documents that have no relevance

10  to any other subject matter in suit.

11    Request no. 43 seeks documents that have no relevance to any claim or defense in the

12  case. There is no allegation in MGA's complaint related to below-market pricing. Nor is there

13  any allegation that Mattel misappropriated confidential pricing information from MGA.

14  Accordingly, MGA's motion is denied as to request no. 43.

15                              4. Document Request No. 47

16    Request no. 47 calls for production of documents relating to Mattel's communications

17  with buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA

18  was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one

19  of its product lines. MGA contends that these documents are relevant to the allegation in

20  paragraph 79 of its complaint that "Mattel has falsely told a major United States retailer that

21  MGA was giving another major United States retailer below-market pricing and falsely told a

22  United Kingdom retailer that MGA was discontinuing one of its lines."

23    Mattel contends that request no. 47 is improper because it demands documents about

24  "alleged statements to an unidentified retailer and an unidentified toy line" without giving Mattel

25  "a hint as to where to look in order to perform a good-faith search for documents." Mattel's

26  Opposition at 12.

27

28
     Bryant v. Mattel, Inc.,                                                    15
     CV-04-09049 SGL (RNBx)

Exhibit C - Page 72

1    Request no. 47 seeks documents relevant to MGA's allegation that Mattel made a false

2    representation to a major United States retailer that MGA was giving another retailer below-

3    market pricing, and falsely told a United Kingdom retailer that MGA was discontinuing a product

4    line. The Federal Rules of Civil Procedure do not require MGA to identify the businesses to

5    whom Mattel allegedly made the false statements as a precondition to propounding discovery.

6    Nor is MGA required to identify every instance in which Mattel allegedly made such false

7    representations before propounding discovery.  Nevertheless, the request is extremely broad and

8    burdensome, requiring Mattel to search for "all documents referring or relating to any

9    communications between Mattel" and buyers, merchandisers, general merchandise managers, or

10   retailers referring or relating to whether MGA was giving another United States retailer below-

11   marketing pricing, or whether MGA was discontinuing one of its lines.  To alleviate some of the

12   burden to Mattel, the request is hereby limited to require production of only Mattel's

13   communications with any buyers, merchandisers, general merchandise managers or retailers

14   about MGA providing below-market pricing or MGA discontinuing a product line.  With this

15   limitation, MGA's motion is granted as to request no. 47.

16                    5. Document Request Nos. 48 – 50

17   Request nos. 48 through 50 essentially seek all documents referring or relating to Mattel's

18   communications with any buyers, merchandisers, general merchandise managers, retailers,

19   suppliers, licensees, and potential licensees, referring or relating to Bratz, Larian or MGA

20   regarding the origins, design, development, product launch, sales, promotions, advertising,

21   quality, or price of Bratz or any other MGA product.  During the meet and confer, Mattel agreed

22   to produce some, but not all, responsive documents.  In particular, Mattel objected to producing

23   documents relating to the pricing of Bratz or any MGA product.  Mattel also objected to

24   producing documents relating to Bratz unless the documents also referenced Mattel's My Scene

25   or Barbie products.

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                              16

Exhibit C - Page 73

1    MGA contends that these documents are relevant to its allegation that Mattel interfered

2    with its business dealings with third parties.  In its reply brief, MGA asserts that it seeks

3    documents and communications between Mattel and certain third parties "from June 2001 tending

4    to support or refute MGA's assertions that Mattel interfered with MGA's dealings with such

5    parties by providing false or misleading information concerning MGA products, the ownership of

6    'Bratz' and exerting pressure on these parties not to license or sell MGA products."  MGA's

7    Reply at 8.

8    Mattel contends that these requests are overbroad and amount to an improper fishing

9    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

10   product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's

11   Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

12   consumer confusion between Bratz and My Scene or between the other products mentioned in

13   MGA's complaint or MGA's responses to Mattel's contention interrogatories.  Id. at 8.

14   This category of requests is clearly overbroad, requiring production of documents that

15   merely mention MGA, Larian, Bratz or other MGA products, regardless of whether or not they

16   have anything to do with the claims and defenses in the case.  MGA has not made any attempt to

17   link these requests to any of the numerous and far-ranging allegations of unfair competition set

18   forth in its complaint.  Instead MGA makes a very generalized argument that the requests seek

19   information relevant to its allegation that Mattel interfered with MGA's business dealings with

20   third parties.  Furthermore, Mattel has carried its burden of establishing that the burden and

21   expense of complying with the requests far exceed their likely benefit, taking into account the

22   needs of the case.  Accordingly, MGA's motion is denied as to request nos. 48 through 50.

23                          6. Document Request Nos. 51 – 55

24   This category of document requests requires production of essentially all documents

25   referring or relating to any communications between Mattel and any public relations firms,

26   members of the press, current or former MGA employees, or former Mattel employees, relating to

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

Exhibit C - Page 74

1    Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales,

2    promotions, advertising, quality, or price of Bratz or any other MGA product.  During the meet

3    and confer process, Mattel agreed to produce some, but not all responsive documents.

4           MGA contends that these documents are relevant to its allegations that Mattel has engaged

5    in serial imitation of MGA products in an attempt to dilute their distinctiveness and create

6    confusion in the marketplace.  MGA also contends that these documents are likely to lead to

7    admissible evidence relating to the creation and ownership of Bratz, Mattel's knowledge and

8    awareness of Bratz products and marketing and its attempt to imitate those products and dilute

9    their distinctiveness.

10          Mattel contends that these requests are overbroad and amount to an improper fishing

11   expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

12   product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's

13   Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

14   consumer confusion between Bratz and My Scene or between the other products mentioned in

15   MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at 8.

16          Like the previous category of requests, this category of requests is grossly overbroad,

17   requiring production of documents that merely mention MGA, Larian, Bratz or other MGA

18   products, regardless of whether or not they have anything to do with the claims and defenses in

19   the case.  MGA has not made any attempt to link these requests to any of the allegations of unfair

20   competition set forth in its complaint or to the responses it provided to Mattel's contention

21   interrogatories.  Furthermore, Mattel has carried its burden of establishing that the burden and

22   expense of complying with these requests far exceed their likely benefit, taking into account the

23   needs of the case.  Accordingly, MGA's motion is denied as to request nos. 51-55.

24                              7. Document Request Nos. 56 – 58

25          This category of requests requires production of all documents relating to business

26   dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                        18

Exhibit C - Page 75

1  MGA.  MGA contends that these document requests are specifically tailored to documents in

2  Mattel's possession, custody or control concerning MGA's business dealings with licensees,

3  suppliers, manufacturers, retailers, distributors, or merchandisers, and are directly relevant to its

4  claims that Mattel interfered with MGA's business dealings with third parties.

5        Again, Mattel contends that these requests are overbroad and amount to an improper

6  fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other

7  MGA product, whether or not they have anything to do with anything placed at issue by MGA.

8  Mattel's Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

9  consumer confusion between Bratz and My Scene or between the other products mentioned in

10  MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at 8.  Mattel

11  also objects to request nos. 57 and 58 insofar as they require Mattel to produce documents that

12  refer "explicitly or implicitly" to business dealings involving MGA.

13        Like the previous two categories of document requests, this category of requests is grossly

14  overbroad.  Request nos. 56 and 57 require production of documents referring or relating to

15  MGA's business dealings, without specifying any products or other subject matter limitations.

16  Request no. 58 is narrower, but is unreasonable insofar as it requires Mattel to produce documents

17  that refer "explicitly or implicitly" to business deals involving MGA's Bratz or other products.

18  Furthermore, Mattel has carried its burden of establishing that the burden and expense of

19  complying with the requests far exceed their likely benefit, taking into account the needs of the

20  case.  Accordingly, MGA's motion is denied as to request nos. 56 through 58.

21                    8. Document Request Nos. 59, 60, 62-63, 99, 101

22        This category of requests requires production of all documents relating to (a) any

23  interference with or inhibition of the licensing or potential licensing of MGA's products, or

24  relating to any limitations or restrictions on any MGA licensee (request nos. 59, 62-63); (b) any

25  third party's licensing or potential licensing of MGA products (request no. 60); and (c)

26  communications between Mattel and MGA's licensees and distributors referring to MGA, Bratz

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

Exhibit C - Page 76

1    or the claims in this lawsuit (request nos. 99, 101). MGA contends that the documents it seeks are

2    relevant to its allegation that Mattel exerted its influence on retailers and other third parties not to

3    do business with MGA.

4           Mattel contends that request nos. 59, 60, 62 and 63 are overbroad, seeking all documents

5    that might bear on MGA's business without identifying any particular business dealings. Mattel

6    also contends that they are overbroad insofar as they require production of all documents related

7    to "any MGA PRODUCT world wide," where "product" is defined as "each image, character,

8    logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been

9    manufactured, marketed or sold by MGA or others under license." Mattel's Opposition at 9.

10          Mattel also contends that request nos. 99 and 101 are overbroad and amount to an

11   improper fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or

12   any other MGA product, whether or not they have anything to do with anything placed at issue by

13   MGA. Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any

14   possible consumer confusion between Bratz and My Scene or between the other products

15   mentioned in MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at

16   8.

17          Request nos. 59, 60, 62, and 63 seek information relevant to MGA's allegations, including

18   among others, that Mattel "warned a number of companies, including the biggest publishing

19   entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel

20   "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint

21   at ¶76. They are also reasonably tailored to require production of only those documents and

22   communications that refer or relate to interference with or inhibition of the licensing or potential

23   licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA

24   licensee, and that refer or relate to any third party's licensing or potential licensing of MGA

25   products. Mattel has not established that searching for theses types of responsive documents is

26   unduly burdensome. Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

Exhibit C - Page 77

1    In contrast, however, request nos. 99 and 101 are overbroad, requiring Mattel to search for

2    and produce all documents referring or relating to communications between Mattel and any MGA

3    licensee or distributor that refer or relate to MGA, Bratz, this lawsuit, other litigation involving

4    the parties or their employees, claims by MGA against Mattel or claims by Mattel against MGA

5    or its employees.  For example, the requests would potentially require production of documents

6    that merely mentioned MGA and Bratz but that otherwise have no relevance to the claims and

7    defenses in the suit.  Therefore, MGA's motion is denied as to request nos. 99 and 101.

8                              9. Document Request Nos. 64, 65, 66, 67

9        This category of requests requires production of all documents relating to (a) any third

10   party's agreement or decision not to license, manufacture, promote, distribute or sell MGA

11   products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such

12   activities (request nos. 64-65); and (b) any interference with or inhibition of the supply of goods

13   or services to MGA, or of MGA's distribution of its products (request nos. 66-67).  MGA

14   contends that these documents are relevant to its claims that Mattel interfered with MGA's

15   business dealings with distributors, retailers, and other third parties, as alleged in paragraphs 76-

16   79 of its complaint.

17       Mattel contends that these requests are overbroad, seeking all documents that might bear

18   on MGA's business without identifying any particular business dealings.  Mattel also contends

19   that they are overbroad insofar as they require production of all documents related to "any MGA

20   PRODUCT world wide," where "product" is defined as "each image, character, logo, doll, toy,

21   accessory, product, packaging or other thing or matter that is or has ever been manufactured,

22   marketed or sold by MGA or others under license."  Mattel's Opposition at 9.

23       These requests seek information relevant to MGA's allegation that Mattel interfered with

24   its business dealings.  In particular, MGA has alleged that Mattel "warned a number of

25   companies, including the biggest publishing entity in the United Kingdom, not to license MGA

26   products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                21

Exhibit C - Page 78

1    retribution for licensing Bratz." MGA's Complaint at ¶76.  MGA's requests are reasonably

2    calculated to lead to information relevant to this allegation.  Although the definition of product is

3    broad, the definition does not render the requests overbroad because they are otherwise limited in

4    subject matter.  Further Mattel has failed to establish that it is unduly burdensome to search for

5    and produce documents responsive to this category of requests.  Therefore, MGA's motion is

6    granted as to request nos. 64, 65, 66, and 67.

7                              10. Document Request Nos. 102-104

8         This category of requests requires production of Mattel's communications with three

9    companies referring to MGA, Bratz or Larian.  MGA contends that these documents are relevant

10   to its claims that Mattel interfered with its business dealings with third parties.

11        Mattel now represents that it will produce communications with Nickelodeon that bear on

12   MGA's allegation regarding sponsorship of the 2005 Kids Choice Awards.  Mattel contends,

13   however, that communications with Cartoon Network or 4kids Entertainment are not relevant to

14   any claim or defense in suit.

15        Mattel's communications with Nickelodeon regarding MGA, Bratz or Larian are relevant

16   in light of MGA's allegation that Mattel was "instrumental in attempting to keep MGA from

17   participating as a sponsor in the 'Kids' Choice Awards.'" Id. at ¶97.  Therefore, MGA's motion

18   is granted as to request nos. 102.  In contrast, MGA has failed to establish that similar

19   communications with Cartoon Network and 4kids Entertainment are relevant to a claim or

20   defense in suit.  Therefore, MGA's motion is denied as to request nos. 103 and 104.

21   //

22   //

23   //

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                          22

Exhibit C - Page 79

V. CONCLUSION

For the reasons set forth above, MGA's motion to compel is granted in part as to document request nos. 32 ( as modified), 33 (as modified), 61 (as modified), 37, 39, 47 (as modified) , 59, 60, 62, 63, 64, 65, 66, 67, and 102, and denied in part as to document request nos. 38, 43, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 99, 101, 103 and 104.  MGA's request for sanctions is denied.  Mattel shall produce responsive documents as set forth above no later than June 15, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 22, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

23

Exhibit C - Page 80

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 22, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 22, 2007, at San Francisco, California.

ANTHONY SALES

Exhibit C - Page 81