MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  +1-415-773-5700
Facsimile:   +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  +1-213-629-2020
Facsimile:   +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>          Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-9049-DOC (RNBx)<br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>[To Be Heard by Discovery Master Robert O'Brien]<br><br>**MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO MGA'S REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Date:           TBD<br>Time:          TBD<br>Courtroom:  TBD<br><br>**Phase 2**<br>Discovery Cutoff:      June 1, 2010<br>Pretrial Conference: None Set<br>Trial Date:              None Set |

**PUBLIC REDACTED VERSION**

1

# TABLE OF CONTENTS

2                                                                              **Page**

3   INTRODUCTION ......................................................................................................1

4   ARGUMENT.............................................................................................................2

5   I.      MATTEL HAS NOT PRODUCED WHERE IT REPRESENTS
        THAT IT HAS FULLY RESPONDED ....................................................2

6           A.      Mattel's Custodial Data Belies Its Representation That It
                Has Produced In Response To Hundreds Of Requests ..............2

7           B.      Mattel's Reliance on A Phase 1 Discovery Order
                Regarding Relevant Data Sources Is Inappropriate in
8               Phase 2.......................................................................................6

9           C.      It Is Mattel's Burden to Show Undue Burden Before It
                Can Refuse To Search Data Sources ........................................8

10          D.      Mattel Should Be Compelled To Identify the 485
                Requests And To Produce By A Date Certain...........................10

11  II.     MATTEL SHOULD BE COMPELLED TO PRODUCE IN
        RESPONSE TO THE REST OF THE REQUESTS THAT MATTEL
12      CONTESTS.............................................................................................12

13          A.      Mattel Should Produce In Response to Requests It
                Identifies as Merely Duplicative ..............................................12

14          B.      Mattel's Arguments That Requests Are Not Relevant Fail......14

15                  1.      Statute of Limitations & Document Retention .............14

16                  2.      Mattel's "Relevance" Objections Are Merely A
                        Reiteration of Its Improper Overbreadth Objections......16

17                  3.      Mattel's Overbreadth Objections Similarly Fail............18

18                  4.      Mattel's Boilerplate Language in Its Response To
                        The Separate Statements Cannot Justify Non-
19                      Production ...................................................................19

20                          a.      Mattel Refuses To Produce Documents
                                Regarding Products Central To MGA's
                                Claims and Defenses......................................19

21                          b.      Mattel Stonewalls Discovery With Respect
22                              to MGA's Claims for Relief................................21

23          C.      Prior Discovery Orders in Phase 1 Have No Bearing On
                These Requests ........................................................................22

24                  1.      The Requests At Issue Related To "Bratz,"
                        "Larian," "MGA" Or MGA's Business
25                      Relationships Are Narrower Than Those Previously
                        Rejected in May 2007 ................................................22

26                  2.      The Requests At Issue Are Narrower Than Those
                        Rejected in September 2007, And Mattel Is Best
27                      Positioned To Know Where Responsive
                        Information May Be Found............................................28

28

          3.    The April 14, 2008 Order Granted In Critical Part
                MGA's Motion to Compel............................................30

          4.    The Prior "Polly Pocket" Order Is Irrelevant In
                Light of More Recent Pleadings....................................32

III.   MATTEL CANNOT SHIELD PRODUCTION BASED ON ITS
       MISREPRESENTATION OF MEET AND CONFER EFFORTS.............33

CONCLUSION ..................................................35

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

Goodman v. U.S.,
369 F.2d 166 (9th Cir. 1966)...........................................................................12

Oakes v. Halvorsen Marine Ltd.,
179 F.R.D. 281 (C.D. Cal. 1998) .....................................................................13

## FEDERAL STATUTES

Fed. R. Civ. P. 26(b)(2)(B) ...........................................................................8

Fed. R. Civ. P. 34(b)(2)(C) ...................................................................11, 14

**INTRODUCTION**

It took MGA's filing of this Motion for Mattel to represent that it has or will fully produce in response to 485 requests, a representation that it never made during meet and confer and that may have narrowed the dispute as to more than half of the requests at issue.  However, as detailed below, Mattel's production in response to these 485 requests is seriously deficient.[1]  For example, Mattel's recently produced custodial data indicates that it has not produced *a single document* from at least ████████████████████████████████████ identified in its Initial Disclosures as having relevant information.  Such documents would be responsive at least to requests in MGA's Third Set of Requests for Production in Case No. CV 04-9049[2], in response to which Mattel represents that it has fully complied.  As there is no dispute as to the discoverability of information responsive to at least 485 requests, and Mattel's production is grossly deficient, the course of action is clear—Mattel should be ordered to identify with specificity the 485 requests and to produce all non-privileged responsive documents and a privilege log by date certain.

This leaves approximately 463 requests in dispute, fewer in number than Mattel has included in its own recent motions to compel.  Mattel's opposition and responses to separate statements do no more than reiterate its often unintelligible boilerplate objections with no greater specificity.  Instead, Mattel seeks to cloud the issues with its mischaracterizations of prior orders and meet and confer efforts from years ago, and to shift improperly the burden to MGA at every turn.  The simple fact is that the Requests at Issue in this Motion *were not considered in the prior*

---

[1] While Mattel states unambiguously that it has or will fully produce in response to 485 requests, it never clearly identifies the requests by number.  Instead, it identifies subsets of requests totaling more than 400, but less than 485 (as detailed in section I.D. below).

[2] Requests at Issue in this Motion were served in both Case Nos. CV 04-9049 ("9049") and CV 04-9059 ("9059") of these consolidated proceedings.  MGA Entertainment, Inc.'s Motion to Compel Further Responses to MGA's Requests for Production of Documents ("Motion") at 1 (identifying the "Requests at Issue"), 2-3.

*Discovery Master orders*, and now with the case in an entirely different posture, these prior orders regarding *different* requests are not dispositive.

Phase 2 is MGA's opportunity to have its claims against Mattel heard for the first time—claims based on sweeping acts of unfair competition conducted by Mattel over many years.  MGA is entitled to discovery on all of those acts, and the discovery rules oblige Mattel to conduct a reasonable search and to identify the custodians and data sources reasonably likely to have responsive information. Instead, Mattel's opposition represents merely another attempt by Mattel to sweep MGA's Phase 2 claims and defenses under the rug, arguing that issues were already decided in Phase 1 in an effort to prevent MGA from obtaining the discovery it needs.  This Motion takes a step toward putting an end to Mattel's improper litigation techniques and to force production of documents demonstrating Mattel's unfair trade practices.

**ARGUMENT**

## I.   MATTEL HAS NOT PRODUCED WHERE IT REPRESENTS THAT IT HAS FULLY RESPONDED.

Mattel represents that it has or will fully produce in response to 485 requests (Opp. at 14), yet this representation is belied Mattel's clearly deficient production. Accordingly, as there is no dispute as to the discoverability of responsive information, Mattel should be compelled to produce all responsive information by a date certain.

### A.   Mattel's Custodial Data Belies Its Representation That It Has Produced In Response To Hundreds Of Requests.

Mattel represents that it "has *fully complied* with at least 289 of MGA's Requests" (but lists only 287).  Opp. at 11 (emphasis added).   These requests include 9049 RFPs 182-383 in response to which Mattel claims it "has produced the information as to these individuals that is relevant or pertinent to this

litigation."[3]  Opp. at 10.  On September 23, 2009 (the same day this Motion was filed), Mattel produced custodial information regarding its production to MGA, pursuant to Order No. 56.  Dubois Decl. Ex. B.  A review of the custodial information provided by Mattel since the filing of the Motion confirms that Mattel's representations regarding its production are clearly false.

For example, Mattel has not produced a single document from at least ███████████ individuals who are current or former employees at Mattel and were specifically identified by Mattel in its Initial Disclosures as having relevant information.  To take one egregious example: ████████████████ ████████████████████████████████████████ Mattel's Consolidated Initial Disclosures, Rutowski Decl. Ex. 56.  ███████████████ ████████████████████████████████████████████████████████ ██████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[3] While Mattel states that it has produced information as to 9049 RFPs 182-383 on page 10, its list on page 11 omits 172.  In its response to the separate statement Mattel says that it will not produce in response to 172 because it implicates a foreign entity.  Because Mattel has (1) identified Roberto Isaias as being an employee of Mattel Chile, S.A. in its Initial Disclosures (Rutowski Decl. Ex. 56 at 2565), and (2) rolled up the financial results of its Latin American subsidiaries in its Form 10-K, indicating possession, custody or control over the information (Supplemental Declaration of Diana Rutowski ("Supp. Rutowski Decl.") Ex. A at 7 ("'Mattel' refers to Mattel, Inc. and its subsidiaries as a whole")), Mattel cannot avoid production in response to this request.

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 Dubois Decl. Ex. A.

6 ████████████████████████████████████████

7 ██████████████████████████████████████

8 ███████████████████████████████████████

9 ██████████████████████████████████████

10 ████████████████████████████████████████████

11 ███████████████████████████████████████████

12 █████████████████████████████████████████████

13 ██████████████████████████████████████████

14 ██████████████████████████████████████████

15 ██████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ██████████████████████ ████████████████████

18 ████████

19          To take another egregious example, Mattel has not produced a single

20 document held in the custody of █████ Mattel employees that Mattel identified as

21 having information relevant to █████████████████████

22 █████████████████████████████████

23 ████████████████████████████████████

24 ████████████████████████████████████

25 ████████████████████████████████████

26 ████████████████████████████████████

27 █████████████████████

28 ████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15   Dubois Decl. Ex. A.

16        Notable among these are

17

18

19

20

21

22

23

24

25

26                                                        To make matters

27   worse for Mattel, Mattel was ordered to produce all documents related to

28   communications with Matt Bousquette by September 28, 2007 by the prior

1   Discovery Master.  September 12, 2007 Order Granting in Part MGA's Motion to

2   Compel, Dart Decl. Ex. 9 at 207.  More than two years have passed, yet Mattel's

3   custodial data indicates that not a single document was produced from the custody

4   of Matt Bousquette.

5        Mattel simply cannot explain away the glaring deficiency in its production.

6   These are individuals that Mattel identified as having relevant information.  Yet,

7   there are no documents from ███████ of the custodians identified by Mattel in

8   its Initial Disclosures, and from whom Mattel agreed to produce documents in

9   response to MGA's requests.  Opp. at 10, 11.  Surely, if Mattel had searched these

10  custodians, there would be documents from them.  Mattel's production is seriously

11  deficient.

12  **B.   Mattel's Reliance on A Phase 1 Discovery Order Regarding
13        Relevant Data Sources Is Inappropriate in Phase 2.**

14       Mattel claims that it has complied "based on search techniques specifically

15  upheld by the Discovery Master" in Phase 1 (Opp. at 11) and seeks to limit its

16  search to data sources and search techniques that were the subject of an April 2008

17  order (Opp. at 12-14).  Mattel's argument ignores the simple fact that its discovery

18  obligations did not end in Phase 1, and it has new and different obligations with

19  respect to Phase 2 claims and defenses.

20       The April 2008 order on which Mattel relies (Opp. at 12, n.42) issued months

21  after Phase 2 discovery was stayed in February 2008.  Motion at 2.  The Order lists

22  the searches that Mattel conducted, including the hard drives and mailboxes of

23  thirty-one identified employees.  Dart Decl. Ex. 22 at 607-608.  Since April 2008,

24  there have been further changes to the parties, claims and defenses at issue in Phase

25  2.  Accordingly, the sources of relevant information and the search techniques

26  deemed appropriate in Phase 1 are not *ipso facto* sufficient to satisfy Mattel's

27  discovery obligations in Phase 2.  In fact, Mattel's custodial information shows

28  otherwise.

1    For example, MGA has identified at least the following ████████████

2    ███████████████████ as having information relevant to its unclean hands

3    defense: ████████████████████████████████████

4    ████████████████████████████████████████████

5    ██████████████████████████ Rutowski Decl. Ex. 62. ██████████████

6    ████████████████████████████████████████

7    ████████████████████████ Opp. at 13 (citing April 4, 2008 Order

8    Denying MGA's Motion to Compel). ████████████████████████

9    ████████████████████████████████████ Clearly, the list

10   of custodians identified by Mattel in Phase 1 is incomplete as to Phase 2 claims and

11   defenses.  This is further confirmed by Mattel's custodial data for the Mattel

12   employees identified by MGA in its affirmative defense interrogatory responses:



27   Dubois Decl. Ex. A.

28

1    Thus, Mattel's attempt to limit its discovery obligation to sources and

2    custodians it identified in Phase 1 or to search techniques deemed appropriate in

3    Phase 1 is should be rejected.

4    **C.    It Is Mattel's Burden to Show Undue Burden Before It Can Refuse**

5    **To Search Data Sources.**

6    Mattel's argument regarding data sources (Opp. at 12-15) and its argument

7    regarding burden objections (Opp. at 27-30) do not satisfy Mattel's discovery

8    obligations.  Rule 26 provides that:

9    A party need not provide discovery of electronically

10   stored information from sources that the party identifies

11   as not reasonably accessible because of undue burden or

12   cost.  On motion to compel discovery… *the party from*

13   *whom discovery is sought must show that the information*

14   *is not reasonably accessible because of undue burden or*

15   *cost.*  If that showing is made, the court may nonetheless

16   order discovery from such sources if the requesting party

17   shows good cause, considering the limitations of Rule

18   26(b)(2)(C).

19   Fed. R. Civ. P. 26(b)(2)(B).  Instead of abiding by this rule, Mattel seeks to shift the

20   burden to MGA to identify the proper custodians that have responsive information.

21   Moreover, even if the Discovery Master were to determine that Mattel has shown

22   undue burden or cost (in the absence of any evidence), MGA has shown good cause

23   for production under Rule 26.

24   Mattel's reliance on Discovery Master's Order No. 56 is unavailing. Opp. at

25   14. ████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████



Opp. at 14, 27-30.  If Mattel

believed that a search for data responsive to a particular request would impose an

undue burden, Mattel was obliged to put forth evidence showing such a burden

exists.  Mattel has not done so.[5]  MGA should not be forced to throw darts in the

dark at Mattel's organizational chart because of Mattel's refusal to abide by its

discovery obligations.

Mattel's ability to identify appropriate custodians is also questionable in light

of the number of documents, or lack thereof, from the custodians identified by

Mattel in Phase 1.  Mattel specifically identified custodians it believed to have

responsive documents in connection with its searches in Phase 1 (Opp. at 13) citing

April 4, 2008 Order Denying MGA's Motion to Compel.  Apparently, no

documents have been produced from at least three of the custodians identified in

this list, based on the custodial data produced by Mattel.  Dubois Decl. Ex. A (Rita

Liu, Ivy Palijo, and James Mills-Winkler).  The fact that no documents were

produced with custodial data from custodians specifically identified by Mattel as

_____

[5] In fact, the only requests in response to which Mattel does seek to show burden or
overbreadth are 9049 RFPs 572(2)-574(2), from 9049, [Second] Set Seven.  Mattel
submits in purported opposition to these requests the Declaration of Ian Hodges,
which only actually discusses 9049 RFP 574(2).

Mattel cannot simply avoid production by shipping documents and things to offsite
storage facilities.  These requests are an effort to confirm whether or not Mattel has
engaged in any such improper tactics.

1  most likely to have responsive documents casts serious doubt on Mattel's

2  identification of appropriate custodians.

3      **D.    Mattel Should Be Compelled To Identify the 485 Requests And To Produce By A Date Certain.**

4

5      Mattel unambiguously states that it has or will produce documents in full

6  compliance with 485 requests (Opp. at 14);  however, it is not at all clear from

7  Mattel's brief to which 485 requests Mattel is referring.  Instead, Mattel first

8  represents that it has fully complied with at least 289 requests, but lists only 287.

9  Opp. at 11.  Mattel then represents that it has or will fully produce in response to an

10  additional 136 requests, but lists only 134.  Opp. at 12.  All told, this adds up to 421

11  requests identified by number.[6]  Mattel must, therefore, be compelled to identify the

12  additional 64 requests and to produce as to those requests.

13      Undertaking to identify the 64 additional requests that would total 485, MGA

14  counted 52 additional requests in response to which Mattel agrees to produce

15  elsewhere in its opposition and responses.  These requests, detailed in the

16  Supplemental Declaration of Diana Rutowski filed herewith, are as follows:

17      9049 RFPs: 17, 46, 92, 113, 125, 127, 130, 386-387, 468, 540-542, 544, 547,

18  554, 557, 561-562, 586, 605-610, 678-690

19      9059 RFPs: 72-75,  87, 96-97, 189, 338-342

20  Supp. Rutowski Decl. ¶ 2.  While MGA cannot be certain whether or not the 52

21  additional requests identified above are counted among Mattel's 485, there is no

22  dispute as to the discoverability of responsive information because Mattel has

23  agreed to produce.  These 52 requests should clearly be subject to an order

24  compelling production.

25  ---

[6]    9049 RFPs: 1-16, 18-31, 36, 40-42, 44-45, 68-76, 79-81, 83-91, 93-94, 105-
26  112, 114-117, 123-124, 126, 128-129, 131-133, 168, 171-173, 176, 182-271, 273-
385, 388-422, 430-432, 452-454, 456-463, 466, 475, 481, 483, 485, 502, 516-518,
27  525, 550, 564, 583, 642-643, 653-655, 657, 676, 699-703, 716-719, 726-728, 732-
733, 757-758, 785.
28      9059 RFPs: 82-86, 89-90, 280, 283, 286-295, 298, 301, 308, 310, 312, 314,
316, 318-319, 321-322, 333-337, 348-349, 351-361.

- 10 -

MGA acknowledges that it did not include some of the 52 requests in its separate statements pursuant to Order 52, as explained in MGA's Motion.  Motion at 7-8, n.14 (citing Order 52, Rutowski Decl. Ex. 54).  Yet, Mattel confirms its agreement to produce in its opposition with respect to most of the requests omitted from the separate statements.[7]  The fact that Mattel previously agreed to produce, and in most cases confirms production, indicates that there is *no dispute* as to the discoverability of the requested documents.  Order 52 grants a motion to compel without a separate statement under such circumstances.  Mattel's effort to distinguish Order 52 is based on its blatantly false statement that "MGA Mexico had not produced a single document in this case" at the time of the motion practice in 2009.  Opp. at 8.  In fact, in 2007 and 2008 MGA Mexico produced more than 46,000 pages of documents—a fact that was made very clear to counsel for Mattel on multiple occasions.  Molinski Decl. ¶¶ 2-3, Ex. A.  With no dispute as to discoverability, no separate statement is required.

As Mattel has not identified any particular withholding, Mattel's production must encompass all responsive documents.  Fed. R. Civ. P. 34(b)(2)(C) ("[a]n objection to part of a request must specify the part and permit inspection of the rest").  Despite Mattel's representations, Mattel's production with respect to these requests is grossly deficient.  Accordingly, an order compelling by date certain (1) production as to the 421 requests identified on pages 11 and 12 of Mattel's Opposition, (2) identification and production as to the 64 additional requests making up the 485 requests cited on page 14 of Mattel's Opposition, and (3) production as to the 52 additional requests identified elsewhere in Mattel's papers as requesting only discoverable information, is warranted.

---

[7] *Compare, e.g.,* Opp. at 8 (complaining that there is no separate statement for 9049 RFPs 42, 68, 75, 89, 105, 114-117, 123-124, 126, 128-129, 131-133, 172-173, etc.) with Opp. at 10 (representing full compliance with the same requests).

## II.     MATTEL SHOULD BE COMPELLED TO PRODUCE IN RESPONSE TO THE REST OF THE REQUESTS THAT MATTEL CONTESTS.

Phase 2 is MGA's opportunity to have its affirmative claims against Mattel heard for the first time.  Mattel has engaged in a wide variety of unfair practices that have caused damage to MGA and its business.  Because Mattel's misconduct is extensive, so is MGA's co-extensive right to discovery.  Mattel's complete refusal to produce in response to hundreds of requests at issue in MGA's Motion is supported only by a lot of smoke and reiteration of Mattel's boilerplate objections.[8] Nowhere does Mattel so much as attempt to explain what searches it is not performing, what documents it is not collecting, or what information it is withholding in response to these requests.  Because Mattel has not asserted any proper objections, it must be compelled to produce.

### A.     Mattel Should Produce In Response to Requests It Identifies as Merely Duplicative.

With respect to the requests that Mattel contends are duplicative, without identifying the allegedly duplicative requests, the answer is easy—Mattel must be compelled to produce.  Motion at 13.  As Mattel itself has argued when the tables were turned: "Merely alleging that a request is cumulative and duplicative does not relieve MGA Mexico of its duty to produce all responsive, non-privileged documents."  Letter from Searcy to Khan dated April 2, 2009, Rutowski Decl. Ex. 8 at 37 (citing *Goodman v. U.S.*, 369 F.2d 166, 169 (9th Cir. 1966) (objecting party

---

[8] Excluding the 421 and 52 requests identified in section I.D. above leaves the following 463 disputed requests (a number that will shrink even further once Mattel identifies all 485 in response to which it has or will fully comply):
9049 RFPs: 34-35, 77-78, 82, 95-98, 100, 113, 170, 177, 180, 272, 423-429, 433-435, 437-452, 455, 464-465, 467-469, 471-474, 476-480, 482, 492-501, 503-515, 519-524, 540, 543, 545-546, 548-549, 551-553, 555-560, 563, 565-567, 569, 572-582, 572(2)-574(2), 584-585, 587-590, 594-600, 603, 611-641, 644, 646, 648-652, 656, 674-675, 677-690, 693-695, 697-698, 704-715, 720-725, 729-731, 734-735, 741, 743-746, 748-756, 770-784, 786-794 (255 requests).
9059 RFPs: 1-43, 47, 49-71, 76-81, 88, 91-95, 98, 100-167, 170-171, 175-179, 184-185, 191-223, 252-253, 255-257, 272-279, 343-347 (208 requests).

1    bears the burden of proving undue burden by "specific and compelling" proof;

2    conclusory assertions are insufficient)).

3         Nevertheless, Mattel represents in its opposition that "at least 99 of MGA's

4    requests are duplicative of other requests among the more than 900 it seeks to

5    compel."  Opp. at 25 (again apparently miscounting, as only 89 requests are listed).

6    In its response to the separate statements, Mattel states that MGA admitted that

7    requests were duplicative—a representation that is patently false and belied by the

8    very declaration exhibit cited by Mattel.  *See, e.g.*, Resp. to Sep. Stat. (9059, Set

9    One) at 6-7, n.3.  In fact, attached to the Dart Declaration is a letter from MGA not

10   only explaining that it is *Mattel's burden* to identify allegedly duplicative requests,

11   but also explaining why the requests are not, in fact, duplicative.  Dart Decl. Ex. 43

12   at 1039 (citing *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal.

13   1998) ("[t]he party who resists discovery has the burden to show that discovery

14   should not be allowed, and has the burden of clarifying, explaining, and supporting

15   its objections")).  Mattel has made no effort whatsoever, even in its response to the

16   separate statements, to identify the allegedly duplicative requests simply because

17   *they are not duplicative*.

18        The one example Mattel purports to raise in its opposition brief relates to

19   9049 RFP 92 (apparently a misprint for 9049 RFP 94) and 9049 RFP 787.  Opp. at

20   26.  Mattel agrees to produce in response to 94.  Opp. at 12.  In an effort to create

21   an argument that 787 is duplicative, Mattel omits critical distinguishing language.

22   9049 RFP 787 reads in full:

23            All DOCUMENTS REFERRING OR RELATING to any

24            survey, focus group, consumer research or other market

25            research (whether conducted by MATTEL or any third

26            party) concerning MY SCENE, BRATZ, or BARBIE,

27            *including but not limited to the focus groups discussed on*

28            *page 114 of the deposition of Kumi Croom and the*

                              - 13 -

1    *consumer research conducted by Mattel Worldwide*

2    *Consumer Research group (or any third party) discussed*

3    *beginning on page 132 of the deposition of Kumi Croom.*

4    (Emphasis added.)  The language in italics is omitted from Mattel's "reprint" of the

5    request.  Opp. at 26.  This later request, which is broader than 94 in certain respects,

6    was crafted after a deposition and is clearly not coterminous with 94.  It seeks

7    discoverable information, and Mattel must be compelled to produce.

8           Finally, Mattel fails to state what, if any, documents it is withholding based

9    on its objection that requests are duplicative as required by Rule 34.  Fed. R. Civ. P.

10   34(b)(2)(C) ("[a]n objection to part of a request must specify the part and permit

11   inspection of the rest").

12          For these reasons, Mattel should be compelled to produce documents in

13   response to the following 89 requests (Opp. at 25):

14          <u>9059 RFPs</u>: 1-16, 35-39, 47-48, 61-62, 72-79, 91-95, 98, 100-107, 110, 165-

15   166, 184-185, 191-192, 196-206, 209, 211-223, 255-257, 272-276, 279, 343.

16          **B.    <u>Mattel's Arguments That Requests Are Not Relevant Fail.</u>**

17          In its opposition, Mattel contends that a small subset of requests seek

18   information that is not relevant.  Opp. at 21-25.  First, Mattel discusses the statute

19   of limitations defense and document retention and destruction, both of which are

20   pending issues ripe for discovery in Phase 2.  Second, Mattel lobs what are

21   essentially disguised overbreadth objections at requests that it contends seek

22   documents beyond the scope of "Bratz" and "My Scene" and requests that it

23   contends seek employment documents beyond the scope of MGA's unfair

24   competition claims.  Mattel's arguments fail on all counts as explained in MGA's

25   Motion and Separate Statements, and as further discussed below.

26          **1.    <u>Statute of Limitations & Document Retention.</u>**

27          Mattel's strategy of arguing that issues were already litigated in Phase 1 is

28   merely an improper means of seeking to prevent MGA from obtaining the

discovery that it needs in connection with its Phase 2 claims and defenses.  The claims at issue in Phase 2 are different from those that were at issue in Phase 1, so the defenses are different, implicating different facts, and the relevant custodians and sources of documents are also different.

With respect to the statute of limitations defense, Mattel reiterates its opposition to MGA's Application for Issuance Letters of Request for Judicial Assistance Re: Danny K.H. Yu and Bird & Bird, arguing that MGA's statute of limitations defense should be precluded.  In its briefing in connection with that application, MGA pointed out all the reasons why Mattel's arguments fail, as they do here.  Specifically, in its reply brief, MGA addressed all of the orders cited by Mattel in its Opposition to this Motion and explained why they do not dismiss of MGA's defenses in Phase 2, which remain pending.  Supp. Rutowski Decl. Ex. F at 293-295.   So long as MGA's statute of limitations and laches defenses remain pending in Phase 2, MGA is entitled to discovery on its defenses.

Requests focused on the statute of limitations and laches defenses seek documents relating to Mattel's investigation and first knowledge of its Phase 2 claims against MGA (9059 RFP 572, 789; 9059 RFPs 88, 91-95, 100-101, 110-111, 167, 191-195, 210, 220-223); documents concerning the 2002 anonymous letter (9059 RFPs 252-253); and documents concerning the 2003 Wall Street Journal Article (9059 RFPs 277-278).  Motion at 22-25.  Mattel represents in its opposition that "Mattel produced its documents relevant to the statute of limitations in Phase 1."  Opp. at 22.  If this is true, why does Mattel continue to refuse to state that it has done so in response to the discovery requests themselves?  Instead, Mattel's representation is highly suspect, and Mattel should be compelled to produce.

Even if the Discovery Master is not inclined to grant the motion to compel as to these requests based on their relevance to the pending statute of limitations defense, they are also relevant to MGA's other affirmative claims and defenses.  For example, the fact that Mattel delayed in suing Carter Bryant because it wanted

1   Bryant to testify in an unrelated Mattel case is central to MGA's unclean hands

2   defense and unfair competition claims.  Rutowski Decl. Ex. 61 at 1950.

3        With respect to the document retention issue, Mattel's efforts to obstruct

4   production appear to be no more than a shield designed to prevent the discovery of

5   documents that may reflect lapses in preservation policies, spoliation, or other such

6   activities, as detailed in MGA's Motion at 25-26.  The fact that MGA's Motion for

7   Terminating Sanctions was denied more than two years ago does not preclude

8   MGA from seeking discovery on the issue now in Phase 2.  *See* Rutowski Decl. Ex.

9   61 at 2960-2961 (Spoliation of Evidence Affirmative Defense).  The types of

10  documents that Mattel is obligated to preserve and produce in connection with the

11  Phase 2 claims and defenses differ from the documents at issue during Phase 1, and

12  MGA is entitled to the discovery requested.

13         **2.**    <u>**Mattel's "Relevance" Objections Are Merely A Reiteration**</u>
<u>**of Its Improper Overbreadth Objections.**</u>

14

15       In its discussion of "Bratz," "My Scene" and "Barbie," Mattel does not,

16  because it *cannot*, argue that the requests do not seek relevant information, but

17  instead claims that the requests are not "limited or focused."  Opp. 23.  First, Mattel

18  discusses three requests from 9049 Set Six, failing to disclose that 9049 Set Six

19  includes an explicit instruction limiting all requests in time to January 1, 1998 to

20  the present.  Rutowski Decl. Ex. 32 at 1230 (Instruction 6).  9049 RFP 555, relates

21  specifically to brand briefs and creative briefs for "Barbie."  As alleged in MGA's

22  complaint, when Mattel's "Barbie" brand began to fail, Mattel began its campaign

23  of serial copying and unfair business practices with respect to MGA's successful

24  "Bratz" brand.  Mattel's brand strategy with respect to "Barbie," especially as it

25  changed after the introduction of "Bratz," is highly relevant.  9049 RFPs 555 and

26  567 seek documents concerning consumer or market research relating to fashion

27  dolls, again, only after January 1, 1998.  These requests are relevant not only to

28  Mattel's copying of "Bratz," but to its efforts to fund or commission market

research or studies that portray "Bratz" or MGA products negatively and to its false inflating of "Barbie" sales figures in an effort to mislead the public and retailers, as alleged in MGA's unclean hands defense. *See, e.g.*, *id*. Ex. 61 at 2949-2950.  The requests relate also to Mattel's alleged trade secrets in "Bratz."  Motion at 18.

Second, Mattel discusses one request from 9049 Set Seven, which contains an instruction limiting all requests in time to January 1, 1995 to the present. Rutowski Decl. Ex. 34 at 1286 (Instruction 6).  9049 RFP 693 seeks documents that refer or relate to claims, threat of litigation, litigation, arbitration or other legal proceedings that any current or former employee, freelancer or contractor has asserted against Mattel regarding the use or infringement of any design, idea, doll, toy or artwork.  If Mattel has been accused of using or infringing designs of other employees, such information would be highly relevant to MGA's claim that Mattel has built its business around misappropriating and copying other people's intellectual property. *See, e.g.* Rutowski Decl. Ex. 15 at 93 (Mattel engages in "borrowing liberally from its competitors").

Next, Mattel makes an argument about Carter Bryant's employment.  Opp. at 24.  Two of the requests it cites, 9059 RFP 186-187, are not at issue in this Motion. In response to the third request, 9049 RFP 130, Mattel represents that it has already produced.  Opp. at 10.  Thus, these arguments are moot.

Finally, Mattel argues that requests regarding its Employee Inventions Agreements are not relevant to MGA's unfair competition claims, citing to 9049 RFP 790.  Opp. at 24.  Such requests are relevant, for example, to Mattel's coercing its employees to accept restrictive covenants, non-compete clauses, and overbroad intellectual property assignment agreements.  Rutowski Decl. Ex. 61 at 2950; █

- 17 -

1

2

3

4                                     In addition to

5 9049 RFP 790, such requests concerning Mattel's overbroad non-compete and

6 intellectual property assignment agreements, include at least 9049 RFPs 543, 545-

7 546, 548, 770-774 and 791.

8         Accordingly, the Requests at Issue are relevant for all the reasons set forth in

9 MGA's Motion and Separate Statements, and Mattel fails to show otherwise.

10               **3.**      **Mattel's Overbreadth Objections Similarly Fail.**

11         Curiously, Mattel begins its overbreadth section by discussing the alleged

12 "overbreadth" of 9049 RFP 89 (Opp. at 25); however, Mattel agreed to produce

13 responsive non-privileged documents in its initial response to this request

14 (Rutowski Decl. Ex. 19 at 438) and confirmed that agreement in its opposition

15 (Opp. at 12).  Mattel's objection is meritless.

16         With respect to 9049 RFP 566, this request from Set Six is again limited in

17 time to January 1, 1998 to the present.  Rutowski Decl. Ex. 32 at 1230 (Instruction

18 6).  Mattel's allegation that it asks for every document related to every product ever

19 released by Mattel is false.  Opp. at 25.  Moreover, the request is related to business

20 plans, forecasts, budgets and projects, which would show how the relative markets

21 and plans for "Barbie" and "My Scene" developed during this critical period of

22 time when Mattel was moving off the failing "Barbie" brand and designing "My

23 Scene" to imitate "Bratz."

24         Mattel's acts of unfair competition are sweeping, and MGA is entitled to

25 discovery on all of those acts.  The requests are only as broad as Mattel's

26 misconduct.

27

28

### 4.   Mattel's Boilerplate Language in Its Response To The Separate Statements Cannot Justify Non-Production.

While all of MGA's properly propounded Requests at Issue in its Motion seek only discoverable information, Mattel continues to withhold production. In its responses to the separate statements, Mattel merely cuts and pastes often unintelligible boilerplate language that misrepresents the parties' meet and confer efforts and prior discovery orders. While too extensive to address each misrepresentation and deficient response in reply, MGA highlights some egregious examples below.

### a.   Mattel Refuses To Produce Documents Regarding Products Central To MGA's Claims and Defenses.

Mattel engaged in serial copying of MGA's products, themes, advertising and packaging when its own products were failing. MGA identifies many of both its products and Mattel's products in its pleadings and discovery responses in this case. Nevertheless, Mattel refuses production in its opposition and responses to the separate statements.

For example, Mattel's serial copying of MGA's "Bratz" in connection with its "My Scene" product line is central to MGA's claims and defenses. Nevertheless, in response to 9049 RFP 82 and 9059 RFP 113, which both seek documents sufficient to identify individuals who worked on "My Scene" (each with a different scope), Mattel refuses to confirm production. Instead, in its response to the separate statement regarding 9049 RFP 82, Mattel states that "the parties previously agreed on the scope of these Requests and Mattel agreed to produce documents in response" citing to a June 26, 2007 letter (Dart Decl. Ex. 30). Resp. to Sep. Stat. (9049, Set 1) at 289. Mattel's representation is *patently false*. Request 82 is *not* referenced anywhere in the letter. Dart Decl. Ex. 30. Moreover, while MGA provided a list of "My Scene" products and packaging in connection with which it requested production, MGA clarified "we *did not state* that MGA's claims

1   in this lawsuit were limited to the 'My Scene' products and packaging listed above"

2   (Dart Decl. Ex. 30 at 817) and the letter certainly does not indicate that "Mattel

3   agreed to produce documents in response" (Resp. to Sep. Stat. (9049, Set 1) at 289).

4   In response to 9059 RFP 113, Mattel errs in its "cut and paste job" by tailoring its

5   response to "Bratz Concept" which has no relation whatsoever to request 113.

6   Resp. to Sep. Stat. (9059, Set 1) at 775.  Mattel's responses should be completely

7   discredited.

8          As a further example, MGA identifies other products in its pleadings, yet

9   Mattel refuses to produce responsive documents:

10         Diva Starz:  Mattel's "Diva Starz" products are discussed in MGA's

11  Complaint (Rutowski Decl. Ex. 15 at 89) and Answer (Rutowski Decl. Ex. 61 at

12  2949), yet Mattel refuses to produce in response to at least 9059 RFPs 131-139.

13         Flavas:  Mattel's "Flavas" products are discussed in MGA's Complaint

14  (Rutowski Decl. Ex. 15 at 78), yet Mattel refuses to produce in response to at least

15  9059 RFPs 140-148.

16         My Scene Styling Head:  Mattel's "My Scene Styling Head" products are

17  discussed in MGA's Complaint (Rutowski Decl. Ex. 15 at 87-89) ████████████████

18  ████████████████████████████████  yet Mattel refuses to produce in

19  response to at least 9059 RFPs 122-130.

20         "We Believe in Girls":  Mattel's "We Believe in Girls" website is discussed

21  in MGA's Answer (Rutowski Decl. Ex. 61 at 2949), yet Mattel refuses to produce

22  in response to at least 9049 RFPs 472-474.

23         Hot Wheels:  Mattel's "Hot Wheels" products are discussed in MGA's

24  Complaint (Rutowski Decl. Ex. 15 at 92), yet Mattel refuses to produce in response

25  to at least 9049 RFP 652.

26         Mattel's responses to the separate statements should be given no weight

27  whatsoever as they do not take into consideration the particular request that they

28  purport to address and copy boilerplate language that is non-responsive.

MGA'S REPLY ISO MTC FURTHER RESPONSES TO RFPS
CV 04-9049 DOC (RNBx)

### b.   **Mattel Stonewalls Discovery With Respect to MGA's Claims for Relief.**

First, Mattel refuses to produce in response to dozens of requests tailored to MGA's claims for relief with respect to "My Scene," including documents seeking "My Scene" sales information, dolls sold, licenses, and the impact of "Bratz" on "My Scene" financials.[9]

Mattel argues, for example, ███████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███   Consistent with parties' discovery obligations under the Federal Rules, Mattel is obligated to produce documents within its possession, custody or control.  This request does not seek to impose a burden upon Mattel inconsistent with the Federal Rules.  Accordingly, Mattel's objections are without merit as to documents within its possession, custody or control.

Moreover, Mattel agrees to produce in response to similar requests seeking related, but not identical information.  For example, 9049 RFPs 727 and 728 seek information about Mattel's revenue and costs from the sale of "My Scene" products by Mattel or its licensees.  Rutowski Decl. Ex. 35.  In response to these requests, Mattel agrees to produce.  Opp. at 11.  9049 RFP No. 729 and 730 are close in form, but seek documents relating to profits and number of units sold.  Yet, Mattel refuses to produce in response to these requests.  Resp. to Sep. Stat. (9049, Set Seven) at 819-830.  Mattel's cherry picking of what discoverable information it will and will not produce should not be tolerated.

Second, MGA seeks additional documents *only to the extent that Mattel seeks particular relief.*[10]  As argued in MGA's Motion, many of the 9059 requests

---

[9]   9049 RFPs: 479, 565, 581-582, 651, 698, 704-715, 720-725, 729-731, 734-735.
      9059 RFP: 115.
[10]   9059 RFPs: 5-16, 20-25, 29-34, 38-43, 102-109, 116-121, 125-138, 142-164, 204-209.

- 21 -

1  in particular are narrowly tailored to seek categories of documents only to the

2  extent that Mattel intends to seek specific relief relating to the subject matter of the

3  documents requested.  Motion at 27.  For example, 9059 RFP 8 seeks documents in

4  Mattel's possession, custody, or control regarding the conception and development

5  of MGA's "Bratz Pack," but only to the extent that Mattel seeks recovery or

6  damages allegedly caused by "Bratz Pack."  Thus, the relevance of the information

7  sought in these requests is self-evident, yet Mattel unreasonably refuses to produce

8  responsive materials and must be compelled to do so.

9  **C.   Prior Discovery Orders in Phase 1 Have No Bearing On These**
   **Requests.**

10

11  The Requests at Issue were not part of prior discovery orders, nor does

12  Mattel argue that they were.  Rather, Mattel attempts to shield production by

13  arguing that they are "virtually identical" to those subject to prior orders, labeling

14  them as "re-propounded" or "rejected."  The Requests at Issue in this Motion were

15  never subject to prior orders and merit individual consideration, consideration that

16  reveals them to be more reasonably tailored than or otherwise distinguishable from

17  those previously rejected.  The prior orders upon which Mattel relies are a May 22,

18  2007 order, a September 12, 2007 order, an April 14, 2008 order and an April 19,

19  2007 order—each of which grants many requests similar in form to the Requests at

20  Issue, in addition to denying those referenced by Mattel.  Opp. at 15-20.   MGA

21  discusses each order below.

22

23  **1.   The Requests At Issue Related To "Bratz," "Larian,"**
     **"MGA" Or MGA's Business Relationships Are Narrower**
     **Than Those Previously Rejected in May 2007.**

24

25  Mattel's mischaracterizes the May 22, 2007 order, and relies upon this

26  mischaracterization to dismiss of certain requests.  Mattel seeks to portray the use

27  of the words "Bratz, Larian or MGA" as forbidden *in and of themselves*,

28  constituting an instant death sentence for the request.  This is a gross

mischaracterization—the prior Discovery Master rejected certain requests because "MGA ha[d] not made any attempt to link th[ose] requests to any of the *allegations of unfair competition set forth in [MGA's]complaint . . . ,*" (May 22, 2007, Dart Decl. Ex. 5 at 115 (emphasis added)) and not just because they made use of any particular terms.  The May 22, 2007 order only admonished against requests requiring "production of documents that merely mention MGA, Larian, Bratz, or other MGA products" to the extent that the requests were *not limited in some other way*.  *Id*.  Thus, the order has no bearing upon a request that is particularly tied to allegations of unfair competition, even if it uses these words.  Further, the prior Discovery Master's ruling should not be taken literally to require requests to relate to allegations of unfair competition.  At the time of the order, Mattel has not yet asserted counterclaims against MGA, and MGA first filed its affirmative defenses to Mattel's counterclaims months later on August 13, 2007.  *See* MGA's Answer and Affirmative Defenses to Mattel's Second Amended Answer and Counterclaims dated August 13, 2007, Docket Document No. 807.  Thus, the Requests at Issue may be "linked" to a much broader set of claims and defenses.

The Requests at Issue in this Motion are related to MGA's complaint or to its affirmative defenses.  For example:

9059 RFPs 1-3 and 5.  Curiously, for each of 9059 RFPs 1-3, Mattel argues in its response to the separate statement that this Motion is moot because MGA admitted in a March 2007 letter that Mattel already produced (and continues to produce) documents responsive to these requests, and that these requests are duplicative.  Dart Decl. Ex. 16.  First, this is not true.  Second, if it were true, then there is no dispute as to appropriateness of the request and Mattel should be compelled to produce.

Mattel's characterization is not true, however, because in the March 2007 letter, MGA points out why the requests are *not* duplicative, as discussed above.  *See* Letter from David Hurwitz to Michael Zeller, dated March 29, 2007, Dart Decl.

1    Ex. 43.  For example, MGA points out in the March 2007 letter why 9059 RFP 1

2    seeks a specific category of documents that have never been previously requested.

3    *Id*.  Moreover, nowhere in the letter does MGA acknowledge production.

4           With respect to the May 22, 2007 order, contrary to Mattel's assertion, these

5    requests do not seek documents that "merely mention . . . Bratz" (Opp. at 16), they

6    seek specific information related to "Bratz" product line, each properly "linked" to

7    MGA's allegations of trade dress infringement and unfair competition against

8    Mattel, and to Mattel's assertion of trade secret rights in "Bratz."  Specifically, the

9    requests are reasonably tailored to "Bratz  Intellectual Property," the "Bratz

10   Concept[11]," the "First Bratz Dolls," and the "Bratz Dolls," as defined by the

11   requests.  MGA contends that "Mattel designed its 'My Scene' dolls to evoke the

12   unique and distinctive look of the 'BRATZ . . . ."  MGA's Complaint for False

13   Designation of Origin etc. dated April 13, 2005, Rutowski Decl. Ex. 15 at 77.  9059

14   Request Nos. 1-3 and 5 only seek documents that are highly relevant to MGA's

15   claims and defenses and cannot be brushed away by simply citing to the prior

16   Discovery Master's rejection of substantially different requests.

17          9049 RFP 36.  While Mattel argues that 9049 RFP 36 is "essentially identical

18   to Request No. 38" that was previously rejected (Opp. at 16), the Discovery Master

19   need not consider the argument because Mattel represents that it "has or will fully

20   produce" in response to 9049 RFP 36 (Opp. at 12).

21          9049 RFP 98.  Once again Mattel tries to dispel with the request simply

22   because it mentions the forbidden words of "MGA" or "Bratz."  Unlike the rejected

23   requests, request 98 is focused on communications between Mattel and MGA's

24   competitors, which relates to MGA's allegations of unfair competition and unclean

25   hands.  For example, Mattel "intimidated, coerced and threatened retailers,

26   licensees, suppliers and others in the industry . . . in order to inhibit and stifle

27

28   _____
     [11] "Bratz Concept" refers to each "Bratz"-related image, drawing, picture, sculpt,
     mold, prototype and any other form of artwork predating the 'First Bratz Dolls.'

1    MGA's ability to compete with Mattel and to prevent MGA from obtaining licenses

2    [sic], contracts and supplies for its products" (as alleged in MGA's Complaint,

3    Rutowski Decl. Ex. 15 at 70) and ██████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████   Accordingly, request 98 is tailored to allegations regarding

8    Mattel's communications with MGA's competitors, as they exist in the pleadings to

9    date.  The May 22, 2007 order does not apply.

10         9049 RFP 433.  Mattel contends that request 433 is broad and that MGA

11    seeks to "relitigate such requests, without even disclosing that it is doing so, let

12    alone attempting to justify it . . . ."  Opp. at 18.  Mattel's objection places form over

13    substance.  As stated in MGA's separate statement, the instant request seeks

14    documents related to Mattel's efforts or attempts to create any press or publicity

15    about MGA, "Bratz," other MGA products, or officers or employees of MGA

16    (including, but not limited to Larian, Bryant, Treantafelles).  MGA has alleged,

17    such as in its unclean hands defense, that Mattel engaged in efforts to create

18    negative publicity or press about MGA, MGA products, Carter Bryant, Isaac

19    Larian, or MGA employees.  Rutowski Decl. Ex. 61 at 2929.  This is just one of the

20    many illegal, unethical, unfair and manipulative trade practices that have had a

21    negative impact on MGA's reputation and relationships with important players in

22    the industry.  Rutowski Decl. Ex. 15 at 98.  Mattel, not MGA, is clearly in the best

23    position to identify and produce such press or publicity.  Mattel's bald assertion that

24    this request is too broad should be ignored.

25         "List" of Other 9049 and 9059 Requests.  Mattel proclaims that "MGA's

26    other requests suffer from the same defects" (Opp. at 18), and then tries to shield its

27    non-response for to least 80 requests under this blanket statement.  Curiously,

28    Mattel agrees to produce in response to at least eighteen of these requests elsewhere

in its opposition.[12]  Apparently the purported "defects" with these requests are either not so egregious or not "defects" in light of the current case posture, and Mattel should not be allowed to avoid responding to these relevant requests.  A few examples of how the requests Mattel lists properly relate to MGA's claims and/or defenses in this action follow:

- 9049 RFPs 425-429[13]:  All these requests are reasonably tailored to seek documents/communications related to a specific individual who has information relevant to MGA's claim of unfair competition and/or to MGA's affirmative defenses, like unclean hands.  For example, requests 425 and 426 seek information related to Mattel's Erica Ashbrook.  MGA alleges that Mattel engaged in various unfair trade practices, ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████  Likewise, request 428 seeks communications between Mattel and Margo Eldridge (or employees of Eldridge Ink)████████████████ ██████████████████████████████████████  In the very order cited by Mattel, the prior Discovery Master previously granted a motion to compel two requests concerning alteration of product displays and retail spacing—which are at least as broad, but not coterminous, in scope.  Dart Decl. Ex. 5 at 110-111 (as to 9049 RFPs 32-33).[14]  Communications between these individuals and Mattel employees or retailers are clearly related to MGA's claims and defenses.

---

[12] 9049 RFPs 36, 88-91, 94, 168, 458-463, 466, 557, 583, 678; 9059 RFPs 333-334. Moreover, Mattel lists 9059 RFPs 424, 428, 429, 433 and 434, which do not exist and were not subject to the Motion.
[13] Although not on this particular Mattel "list," 9049 RFPs 427 and 429 are related to MGA's claims and affirmative defenses in similar fashion.
[14] This rationale equally applies to at least 9049 RFPs 180, 644, 646.

- **9049 RFPs 447-451**[15]: These requests are reasonably tailored to seek documents/communication regarding Mattel's interactions with the Smoby Group ("Smoby").  As alleged in MGA's unclean hands defense, for example, Mattel engaged in "efforts or intent to interfere with business dealings or contractual relationship between MGA and Smoby Group."  Rutowski Decl. Ex. 61 at 2949.  These requests are explicitly tailored to such "efforts or intent" and unlike those rejected in the order cited by Mattel.

- **9049 RFPs 519-524, 574-580**[16]:  MGA's Complaint and affirmative defenses allege that Mattel has wrongfully interfered with MGA's product sales and business relationships.  All of these requests are reasonably tailored to seek information related to Mattel's interference with MGA's business relationships with respect to *particular entities*.  For example, requests 520 and 574-580 relate to Early Light, and in response, Mattel says Early Light "is not even mentioned in MGA's complaint."  *See*, *e.g.*, Resp. to Sep. Stat. (9049, Set Five) at 252.  However, Mattel seeks to obfuscate the fact that ███████████ ████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████ Mattel is best positioned to determine what, if any, information it has regarding improper communications and acts of influence over these specifically named entities.

---

[15] Although not on this particular Mattel "list," 9049 RFPs 448-451 are related to MGA's claims and affirmative defenses with respect to Smoby.

[16] Although not on this particular Mattel "list," 9049 RFP 520 is a similarly structured request, in response to which Mattel does not agree to produce in its opposition or response to separate statements.

- • <u>9049 RFPs 787 and 788</u>[17]:  As discussed above in section II.A, these two requests revolve around any ad test reports or market research efforts conducted by Mattel, including documents referenced in deposition of Kumi Croom.  It is improper to prevent MGA from obtaining follow up discovery relating to a deposition.

**2.**   **<u>The Requests At Issue Are Narrower Than Those Rejected in September 2007, And Mattel Is Best Positioned To Know Where Responsive Information May Be Found.</u>**

Mattel relies on a September 12, 2007 order to refuse production as to fourteen requests, arguing that "MGA attempts to compel numerous requests suffering from the same defect[s]" as MGA's 9059 RFPs 262 and 263.  Opp. at 18.  Requests 262 and 263 were rejected by the prior Discovery Master for being overbroad because they potentially required Mattel to review documents relating to all of its current and former employees.  *See* September 12, 2007 Order at 15, Dart Decl. Ex. 9.  The prior Discovery Master was apparently troubled by the "burden and expense" of conducting a search for all documents "that evidence, relate or refer to any activities of any current or former Matter employee…" in connection with requests 262 and 263.[18]  The prior Discovery Master found that the requests as drafted asked Mattel to "*find evidence* that an employee…" engaged in some act without any further instruction, limitation or parameter that could have been used as

---

[17] Although not on this particular Mattel "list," 9049 Request No. 788 is related to MGA's claims and affirmative defenses in a similar fashion.

[18]   9049 RFP 262: *All DOCUMENTS* created after January 4, 1999 that *evidence, relate or refer to any activities of any current or former MATTEL employee* performed, while such person was employed by MATTEL, in connection with the conception, creation, design or development of any intellectual property done for or at the request of any company, entity or person other than MATTEL. (Emphasis added.)

   9049 RFP 263: *All DOCUMENTS* created after January 4, 1999 that *evidence, relate or refer to any activities of any current or former MATTEL employee* performed, while such person was employed by MATTEL, in connection with the conception, creation, design or development of any doll or toy done for or at the request of any company, entity or person other than MATTEL. (Emphasis added.)

a filter or a keyword in a search database.  *Id*. (emphasis added).  The instant requests are of a different ilk.

9049 RFP 559.  Mattel mischievously misquotes MGA's 9049 RFP 559 and omits pertinent language from the request.  *See* Opp. at 18-19.  Request 559 reads in full:

> All DOCUMENTS relating to each COMMUNICATION, whether written or oral, made to MATTEL by a MATTEL employee or independent contractor of "inventions... conceived or reduced to practice by [an employee or independent contractor] (along or jointly by others) at any time during [an employee's or independent contractor's] employment by Mattel" *as this phrase is used in the Inventions Agreement*.

9049 RFP 559 (emphasis added).  Surely, to the extent that an employee or contractor of Mattel disclosed to Mattel any invention pursuant to the overbroad Inventions Agreement, Mattel documents such disclosures.  Accordingly, the requested documents will *not* touch "[e]ach and every employee at the Mattel Design Center" as Mattel wrongly claims in its response to the separate statement, but only those that disclosed an invention while working at Mattel.  Such information is closely related to MGA's claims and defenses, and Mattel, not MGA, is able to identify which of its employees are implicated by the request.

"List" of Other 9049 and 9059 Requests.  Without further elaboration, Mattel lists thirteen additional requests that it contends should be rejected on the same grounds.  Opp. at 10.  Mattel agrees to produce in response to at least five of these requests earlier in its opposition, rendering its argument moot with respect to at least these requests.[19]  With respect to the others, for similar reasons the requests

_____

[19] 9049 RFPs 456, 457 (Opp. at 12); 9059 RFPs 333 (Opp. at 11), 334, 352 (Opp. at 12).

1   are not overbroad or unduly burdensome and cannot be properly shielded under the

2   September 12, 2007 order.  For instance, 9049 RFPs 543, 545, 546, 548, 558 and

3   560 similarly relate to disclosures and breaches of Mattel's overbroad and

4   restrictive employment agreements by its employees and contractors.  Such requests

5   are relevant, for example, to Mattel's coercing its employees to accept restrictive

6   covenants, non-compete clauses, and overbroad intellectual property assignment

7   agreements.  Rutowski Decl. Ex. 61 at 2950; ███████████████████████

8   █████████████████████████████████████████████████████

9   █████████████████████████████████████████████████

10  █████████████████████████████████████████████████

11  ██████████████████████████████████████████

12  ████████████████████████████████████  Mattel, not

13  MGA, knows where such documentation may be found.  Mattel's argument that the

14  September 12, 2007 order applies should be rejected and Mattel should be

15  compelled to produce.

16
17          **3.      The April 14, 2008 Order Granted In Critical Part MGA's
                      Motion to Compel.**

18          Mattel once again misrepresents the prior Discovery Master, this time in

19  connection with the April 14, 2008 order, which was *granted* in critical part as to

20  Mattel's request 48.  Request 48 was served by Mattel on MGA and sought

21  "communications that refer or relate to this action that (i) involve at least one MGA

22  employee who holds or held a position of manager or higher; (ii) involve MGA's

23  agents and/or attorneys acting on MGA's behalf; or (iii) involve a former Mattel

24  employee who communicated about this action while employed by MGA,

25  regardless of title." Narrowed Request No. 48, April 14, 2008 Order, Dart Decl. Ex.

26  21 at 598.

27          Mattel offered two justifications for the relevance of the request: (1)

28  impeachment evidence and witness biases, and (2) its RICO claims.  *Id*.  With

respect to impeachment and witness bias, the prior Discovery Master found that the request, as drafted, was not limited to those topics.  With respect to Mattel's RICO claims, the prior Discovery Master found that "the requested discovery is *premature in light of the stay on Phase 2 discovery*."  *Id*. at 600 (emphasis added).  Moreover, the prior Discovery Master found the request unduly burdensome insofar as it sought non-privileged communications from MGA's current or prior counsel. *Id*. at 601.  Nevertheless, the Discovery Master granted the request as to six individuals that had been identified by the parties during meet and confer efforts. *Id*. at 602.  Not only were the issues in the case different for "relevancy" purposes, but this order highlights Mattel's obligation to specifically state how a request is too broad, and to propose limits to its search to the extent it can demonstrate that such limits are justified.  Here, Mattel has made no such proposal or showing, and it should be compelled to produce.

9049 RFP 97. Contrary to Mattel's argument, 9049 RFP 97 is neither similarly situated nor identical to Mattel's rejected request 48.   First, instead of seeking communications that "REFER or RELATE TO this action," it seeks communications "regarding any fact or issue relating to this lawsuit."  Second, instead of specifically seeking communications involving "MGA's agents and/or attorneys," request 97 states "excluding privileged COMMUNICATIONS with or on behalf of counsel for MATTEL."  Third, MGA has alleged a wide range of unfair competition claims, including that Mattel improperly influenced retailers, industry groups, employees, etc., and this request seeks information regarding those claims and defenses at issue in Phase 2.  This request contains self-defined parameters relating to Phase 2 issues, and it explicitly excludes privileged communications.

"List" of Other 9049 and 9059 Requests.  The other requests listed by Mattel are at least as reasonably tailored, if not more so.  For example, 9049 RFP 96 seeks communications related to the lawsuit from any Mattel executive, anyone that

1    worked on "My Scene," or anyone at Mattel with responsibility for

2    communications with NPD Funworld, CARU or the Toy Industry Association—a

3    *limited* close-ended group of people tailored to specific allegations in MGA's

4    Complaint.  *See, e.g.,* Rutowski Decl. Ex. 15 at 95-100.  Similarly, 9049 RFPs 598

5    and 599 seek claims by or against Mattel regarding only any "CONTESTED

6    MATTEL PRODUCT, any BARBIE product, or any DIVA STARS [sic] product,"

7    as those terms are defined in Set Seven.  Rutowski Decl. Ex. 34.  As discussed

8    above, this set is limited in time to January 1, 1995 to the present.  *Id.* (Instruction

9    6).   Mattel cannot avoid production of discoverable information by reliance on an

10   inapplicable order granting, in part, one of its own requests.

11           **4.       The Prior "Polly Pocket" Order Is Irrelevant In Light of**
12                      **More Recent Pleadings.**

13           Mattel claims that at least thirty-five requests seek overbroad information

14   because they relate to "Polly Pocket."  Opp. at 20.  Mattel's argument rests entirely

15   on the outdated order of the prior Discovery Master, issued on April 19, 2007.  *Id.*

16   In that order, the prior Discovery Master considered a motion for a protective order

17   by Mattel limiting the scope of MGA's subpoenas regarding "Polly Pocket."  The

18   prior Discovery Master made three findings of note: (1) "Polly Pocket is not

19   mentioned in either MGA's or Bryant's complaint or any of the other pleadings

20   filed in this consolidated action," (2) discovery was allowed as to the "Polly

21   Pocket" commercial identified in MGA's interrogatory responses at the time, and

22   (3) discovery was allowed as to a request seeking "evidence of directives,

23   suggestions, or instructions from Mattel to its advertising agencies to create

24   advertisements for Polly Pocket using elements that are similar to or the same as

25   elements used in advertisements for "BRATZ," "ALIEN RACERS," or MGA

26   products."  Dart Decl. Ex. 1 at 13.

27           With respect to the first point, since the order MGA has filed pleadings

28   alleging that Mattel copied MGA's products, packaging, themes, and advertising,

1    including for "Polly Pocket."  Rutowski Decl. Ex. 61 at 2949.  For example,

2    MGA's answer to Mattel's counterclaims was not filed until August 13, 2007

3    (Docket Document No. 807), well after the April 2007 order.[20]  Accordingly, the

4    posture of the case has changed since the order on which Mattel seeks to rely, and

5    that outdated order cannot be used by Mattel to avoid production.

6          With respect to the second and third points, the Requests at Issue seek

7    information akin to the discovery *permitted* in the April 2007 order.  Specifically,

8    they are reasonably tailored to documents relevant to MGA's unfair competition

9    claim and unclean hands defense and should be compelled.  Dart Decl. Ex. 21 at 13.

10   **III.    MATTEL CANNOT SHIELD PRODUCTION BASED ON ITS

11   MISREPRESENTATION OF MEET AND CONFER EFFORTS.**

12         Mattel spends a lot of paper mischaracterizing meet and confer efforts,

13   apparently because looking to the substance of the Requests at Issue demands an

14   order compelling production.  Nevertheless, Mattel relies upon meet and confer

15   efforts that took place years ago, when the posture of the case and the claims and

16   defenses were different than they are today.  As stated above, MGA first filed its

17   answer and affirmative defenses, including unclean hands, to Mattel's

18   counterclaims on August 13, 2007 (Docket Document No. 807).  The meet and

19   confer efforts detailed in Mattel's opposition occurred before MGA's answer.  *See*

20   *e.g.* Opp. at 2, n. 2 (citing letters from June 26, 2007, March 15, 2007 and January

21   23, 2007).  The April 19, 2007 order regarding "Polly Pocket," the May 22, 2007

22   order, and the date on which MGA filed its motion to compel that resulted in the

23   September 12, 2007 order[21] also predated MGA's August 2007 answer.  Moreover,

24

_____

25   [20] While Mattel first filed counterclaims on January 1, 2007 (Docket Document No. 143), instead of answering MGA moved to dismiss (Docket Document No. 189).

26   On June 27, 2007, MGA's motion was granted in part and denied in part, and Mattel was granted ten days to amend its amended answer and counterclaims

27   (Docket Document No. 577).  Accordingly, Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007 (Docket Document No. 635, 636), and MGA filed its answer on August 13, 2007 (Docket Document No. 807).

28   [21] MGA filed the motion on July 3, 2007.

1   since MGA answered, Mattel itself has amended its answer and counterclaims once

2   and seeks to amend it yet again.[22]  Finally, Mattel discusses the order on MGA's

3   Motion to Compel Certification dated April 14, 2008, which issued *during* the stay

4   of Phase 2 discovery.  Opp. at 4, n.13; Motion at 2.  The prior meet and confer

5   efforts and motions to compel did not address the case in its current posture, despite

6   Mattel's attempts to cast a smoke screen of confusion over the issue.

7        Mattel's efforts to characterize "post-stay" meet and confer fare no better.

8   Instead of propounding even more requests (Mattel has propounded more than

9   2,500), through this Motion MGA seeks production in connection with the requests

10  already served.  Yet Mattel seeks to put MGA through the ringer.  Mattel's failure

11  to articulate whether it was withholding based on its objections *does not* shift the

12  burden to MGA preemptively to demonstrate relevance, consistent with Mattel's

13  position when the tables were turned.  Motion at 4-5; Rutowski Decl. ¶¶ 10-11.[23]

14  Nevertheless, when MGA did begin to make a relevancy showing during meet and

15  confer efforts, counsel for Mattel remained silent and those efforts stagnated.

16  Motion at 5; Rutowski Decl. ¶¶ 13-22.  Notably, two of the very requests discussed

17  by MGA during the call, and upon which Mattel refused to comment, are among

18  those in response to which Mattel agrees to comply now in its opposition—9049

19  ---

[22] Mattel's Third Amended Answer and Counterclaims was filed on May 22, 2009

20  (Docket Document No. 5566), MGA's Answer and Affirmative Defenses to
Mattel's Third Amended Answer and Counterclaims was filed on June 29, 2009

21  (Docket Document No. 5798) and on August 17, 2009 Mattel filed a motion for
leave to file a Fourth Amended Answer and Counterclaims (Docket Document No.

22  6295).
[23] In his declaration, Mr. Webster makes several false characterizations of the post-

23  stay meet and confer efforts.  For example, first, Mr. Webster states that MGA
declined to identify requests subject to prior orders in response to which it sought to

24  confirm compliance.  Webster Decl. ¶ 10.  To the contrary, MGA did send such a
letter, which Mr. Webster attaches to his declaration.  Webster Decl. Ex. 10

25  Second, Mr. Webster states that MGA revealed that some requests were
misnumbered during meet and confer, which he says forced Mattel "to undertake an

26  unnecessary review and that numerous Requests would have to be addressed
anew."  Webster Decl. ¶ 9.  This misnumbering implicated only four requests.

27  Rutowski Decl. ¶ 14.  Moreover, it was clear from the call that Mattel had not, in
fact, undertaken any review whatsoever, let alone an "unnecessary" review.  *Id*. at ¶

28  18.  Third, Mr. Webster's characterization of MGA's relevance showing is not
correct, as detailed in the Rutowski Declaration.  *Id*. ¶¶ 18-19.

MGA'S REPLY ISO MTC FURTHER RESPONSES TO RFPS
CV 04-9049 DOC (RNBx)

1  RFPs 1 and 40.  Rutowski Decl. ¶¶ 18-19; Opp. at 12.   Nevertheless, Mattel

2  subjected MGA to the expense and burden of filing this Motion before it would

3  confirm production.  The plain fact remains—in its opposition, Mattel represents

4  that it has or will fully produce in response to 485 requests, and it took MGA's

5  filing of this motion to obtain that information from Mattel.

6  **CONCLUSION**

7       For the foregoing reasons, those articulated in MGA's Motion and supporting

8  documents, its Separate Statements, and any presented during oral argument,

9  MGA's Motion to Compel should be granted, and Mattel should be ordered to

10 produce all responsive documents to the Requests at Issue and a privilege log by a

11 date certain.

12 Dated:      October 29, 2009         ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                                      By:   /s/ *Diana M. Rutowski*
                                                Diana M. Rutowski
15                                            Attorneys for MGA Parties

16

17

18

19

20

21

22

23

24

25

26

27

28