# Exhibit 1



1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   MATTEL, INC.,                    CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,            Consolidated with
                                      Case No. CV 04-09059
14        vs.                         Case No. CV 05-02727

15   MGA ENTERTAINMENT,               Hon. Stephen G. Larson

16              Defendant.            **FINAL VERDICT FORM AS GIVEN**

17

18   AND CONSOLIDATED ACTIONS

19
20
21
22
23
24
25
26
27
28

07209/2554627.7

7-17

EXHIBIT 1
PAGE 9

# VERDICT FORM

We answer the questions submitted to us as follows:

## Timing of Tangible Items

1.     For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113, 5-114/62-14/ 62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

-1-                    Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

EXHIBIT 1
PAGE 10

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

EXHIBIT 1
PAGE 11

2.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT 1
PAGE 12

3.      For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
| --- | --- | --- |
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

07209/2554627.7

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

EXHIBIT 1
PAGE 73

4.     For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| **Trial Exhibit No.** | YES | NO |
|---|---|---|
| The Three Dimensional Item Presented at Pitch Meeting | X | |
| Trial Exhibit 1136 | X | |

**Timing of Ideas**

5.     Has Mattel proven by a preponderance of the evidence that Carter Bryant conceived the "Bratz" characters while employed by Mattel?

Yes   X

No   ____

6.     Has Mattel proven by a preponderance of the evidence that Carter Bryant conceived the name "Bratz" while employed by Mattel?

Yes   X

No   ____

EXHIBIT 1
PAGE 14

1     **<u>Intentional Interference with Contractual Relations</u>**

2     7.    Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional

3 interference with contractual relations?

4       Yes   _X_

5       No   ____

6

7     8.    Is Isaac Larian liable to Mattel for intentional interference with

8 contractual relations?

9       Yes   _X_

10      No   ____

11

12     **<u>Aiding and Abetting Breach of Fiduciary Duty</u>**

13     9.    Is MGA liable to Mattel for aiding and abetting breach of fiduciary

14 duty?

15      Yes   _X_

16      No   ____

17

18     10.   Is Isaac Larian liable to Mattel for aiding and abetting breach of

19 fiduciary duty?

20      Yes   _X_

21      No   ____

22

23     **<u>Aiding and Abetting Breach of the Duty of Loyalty</u>**

24     11.   Is MGA liable to Mattel for aiding and abetting breach of the duty of

25 loyalty?

26      Yes   _X_

27      No   ____

28

EXHIBIT 1
PAGE 15

1       12.   Is Isaac Larian liable to Mattel for aiding and abetting breach of the

2  duty of loyalty?

3           Yes  _X_

4           No  ____

5

6                  **Conversion**

7      13.   Is MGA liable to Mattel for conversion?

8           Yes  _X_

9           No  ____

10

11     14.   Is Isaac Larian liable to Mattel for conversion?

12          Yes  _X_

13          No  ____

14

15     15.   Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16          Yes  _X_

17          No  ____

18

19

20     Once this verdict form is completed, the foreperson of the jury should sign

21  and date on the lines below.

22  DATED: _July 17_ , 2008

23

24

25                          Presiding Juror

26

27

28

07209/2554627.7

EXHIBIT 1
PAGE 16

# Exhibit 2



1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059 SGL (RNBx)<br>Case No. CV 05-02727 SGL (RNBx) |
| vs. | |
| MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| AND CONSOLIDATED ACTIONS | |

PHASE B VERDICT FORM AS GIVEN

**EXHIBIT** 2 **PAGE** 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

### I.  Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.    In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

       As to MGA:         $ _____20 MILLION_____

       As to Mr. Larian: $ _____10 MILLION_____

### Aiding and Abetting Breach of Fiduciary Duty

2.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

       As to MGA:         $ ____20 MILLION____

       As to Mr. Larian: $ ____10 MILLION____

### Aiding and Abetting Breach of the Duty of Loyalty

3.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

       As to MGA:         $ ___20 MILLION___

       As to Mr. Larian: $ ___10 MILLION___

PHASE B VERDICT FORM AS GIVEN

EXHIBIT __2__ PAGE _18_

## Conversion

4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA
Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for
conversion.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:                  $ _31,500 PLUS 7% INTEREST_

As to Mr. Larian:           $ _0_        CALCULATED FROM

As to MGA Hong Kong: $ _0_      THE DATE MATTEL'S
                                                         PROPERTY WAS
                                                         CONVERTED.

PHASE B VERDICT FORM AS GIVEN

EXHIBIT __2__ PAGE _19_

## II.  Copyright Infringement

5.     Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

Yes _____X_____

No _____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6.     Was MGA's copyright infringement willful?

Yes _____

No _____X_____

Answer Question 7.

7.     Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

Yes _____X_____

No _____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8.     Was Mr. Larian's copyright infringement willful?

Yes _____

No _____X_____

Answer Question 9.

9.     Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

Yes _____X_____

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___2___ PAGE _20_

1          No   ____

2    If your answer is "yes," then answer Question 10.

3    If your answer is "no," then answer Question 11.

4

5    10.   Was MGA Hong Kong's copyright infringement willful?

6          Yes   ____

7          No    X

8    Answer Question 11.

9

10   11.   What amount of damages, if any, should be awarded to Mattel for the

11   defendants' copyright infringement?

12   (a)   Copyright Infringement by MGA

13          $    6 Million

14   (b)   Copyright Infringement by Isaac Larian

15          Distributions Mr. Larian received from MGA attributable to Bratz-

16          related works:

17          $    3 Million

18          Value of Mr. Larian's ownership percentage of MGA attributable to

19          Bratz-related works:

20          $    0

21   (c)   Copyright Infringement by MGA Hong Kong:

22          $    1 Million

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

EXHIBIT   2   PAGE   21

### III. Punitive Damages

1

2    12.    Has Mattel proven by clear and convincing evidence that MGA acted

3  with malice, oppression, or fraud?

4        Yes  ____

5        No    X

6  If your answer is "yes," then answer Question 13.

7  If your answer is "no," then answer Question 14.

8

9    13.    What amount of punitive damages, if any, should be awarded against

10  MGA?

11        $ _____ 0 _____

12  Answer Question 14.

13

14    14.    Has Mattel proven by clear and convincing evidence that Isaac Larian

15  acted with malice, oppression, or fraud?

16        Yes  ____

17        No    X

18  If your answer is "yes," then answer Question 15.

19  If your answer is "no," then answer Question 16.

20

21    15.    What amount of punitive damages, if any, should be awarded against

22  Mr. Larian?

23        $ _____ 0 _____

24  Answer Question 16.

25

26    16.    Has Mattel proven by clear and convincing evidence that MGA Hong

27  Kong acted with malice, oppression, or fraud?

28        Yes  ____

07209/2609529.2608584

-6-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT __2__ PAGE __22__

1     No    X

2    If your answer is "yes," then answer Question 17.

3    If your answer is "no," then answer Question 18.

4

5    17.   What amount of punitive damages, if any, should be awarded against

6    MGA Hong Kong?

7    $_____ 0 _____

8    Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584

-7-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT __2__ PAGE __23__

1

### IV.  Fraudulent Concealment

2          (Answer all five questions in this section.)

3

4          18.     Has Mattel proven by a preponderance of the evidence that MGA

5   fraudulently concealed the bases for Mattel's claim of intentional interference with

6   contract against it until at least April 27, 2002?

7                  Yes     _X_

8                  No      ____

9

10         19.     Has Mattel proven by a preponderance of the evidence that Isaac Larian

11  fraudulently concealed the bases for Mattel's claim of intentional interference with

12  contract against him until at least April 27, 2002?

13                 Yes     ____

14                 No      _X_

15

16         20.     Has Mattel proven by a preponderance of the evidence that MGA

17  fraudulently concealed the bases for Mattel's claim of conversion against it until at

18  least April 27, 2001?

19                 Yes     _X_

20                 No      ____

21

22         21.     Has Mattel proven by a preponderance of the evidence that Mr. Larian

23  fraudulently concealed the bases for Mattel's claim of conversion against him until

24  at least April 27, 2001?.

25                 Yes     ____

26                 No      _X_

27

28

-8-

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___2___ PAGE _24_

1      22.     Has Mattel proven by a preponderance of the evidence that MGA Hong

2   Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3   until at least April 27, 2001?

4             Yes   _____

5             No    ✗

6

7        Once this verdict form is completed, the foreperson of the jury should sign

8   and date on the lines below.

9

10   DATED: *August 26, 2008*                   _____/s/_____

                                                   Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O7209/2609529.2608584                                    PHASE B VERDICT FORM AS GIVEN

EXHIBIT 2 PAGE 25

# Exhibit 3

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: December 3, 2008
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          James Holmes                          None Present
          Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                       1

EXHIBIT 3
PAGE 26

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order.  Filed concurrently herewith are:  (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above.  In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                              2

EXHIBIT 3
PAGE 27

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.      Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                                    3

EXHIBIT 3
PAGE 28

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

### B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90                                                         Initials of Deputy Clerk: jh
CIVIL -- GEN                              4

EXHIBIT 3
PAGE 29

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                              5

EXHIBIT 3
PAGE 30

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III.  Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                    6

EXHIBIT 3
PAGE 31

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.     § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]   Bryant's other characters were re-named before they were marketed: Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL – GEN                          7                          Initials of Deputy Clerk: jh

EXHIBIT 3
PAGE 32

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and
abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in
favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified
element of harm to Mattel and, as explained in more detail below, the Court is bound by that
implicit factual finding. <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th
Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the
plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act.
The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at
issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously
interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary
duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof.
Code § 17200.

### C.      § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate
injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may
> be enjoined in any court of competent jurisdiction. The court may make
> such orders or judgments, . . . as may be necessary to prevent the use
> or employment by any person of any practice which [either] constitutes
> unfair competition, . . . or as may be necessary to restore to any person
> in interest any money or property, real or personal, which may have
> been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to
restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified,
Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

### A.      Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court
trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL – GEN                          8

EXHIBIT 3
PAGE 33

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

EXHIBIT 3
PAGE 34

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]   Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.   Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.   You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.   And the jury has put that cap for us.

Id.   Although colorful, counsel's metaphor is not helpful.   Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences — both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.   But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.   In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.   See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:   "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."   Opp. at 21 n.30.   This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN                                         10                    Initials of Deputy Clerk: jh

EXHIBIT 3
PAGE 35

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

### B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                          11

EXHIBIT 3
PAGE 36

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm.  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right."  In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT 3
PAGE 37

plaintiff meets the burden of proving irreparable harm by making this
two-part showing.  And finally, the two-part test does not represent a
rule [prohibited by eBay] that an injunction automatically follows a
determination that a copyright has been infringed. . . .  In exercising
their equitable discretion, courts would still have the freedom to deny
injunctive relief when the public interest or the balance of hardships
weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case.  The
statutory directive to the Court is clear:  "Any court having jurisdiction of a civil action arising under
this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable
*to prevent or restrain infringement of a copyright*."  17 U.S.C. § 502 (emphasis added).  The
Court can envision no case more appropriate for a finding of irreparable harm.  Here, as the record
shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to
his employer (and keep confidential from all others) all copyrightable works he creates during the
term of his employment, not only fails to so communicate but actually secretly purports to convey
the rights thereto to a direct competitor of his employer.  The rights to those works are actively
concealed from their true owner (by both the employee and the competitor) for years while the
competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars.
After millions of pages of discovery are produced, thousands of filings are submitted, scores and
scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor
of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing
products.  Viewed in this light, Mattel has established irreparable injury on the basis of the MGA
parties' past infringement and the high probability of continued acts of infringement.

### 2.      Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop
the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate.  See
Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3.      Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court.  The Court has
expressed its concerns in this regard on the record.  The evidence at trial showed that, at least
historically, Bratz is the brand that has made MGA profitable.  And the proposed injunction
addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the
cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if
any -- weight.  Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995)
("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT 3
PAGE 38

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities favor Mattel.

### 4.   Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern.  However, there is also a strong public interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law.  Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement.  The injunction issued by the Court does no more than that.

### C.   Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1.   Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little.  In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2.   Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]  No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

EXHIBIT 3
PAGE 39

### 3. Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4. Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT**. Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

EXHIBIT 3
PAGE 40

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT 3
PAGE 41

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties.  The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court.  The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies.  Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

EXHIBIT 3
PAGE 42

# Exhibit 4



O

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

EASTERN DIVISION

11 | CARTER BRYANT, an individual,

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case Nos. CV 04-09059 & CV 05-2727

12 |        Plaintiff,

13 |     vs.

ORDER GRANTING MATTEL, INC.'S
MOTION FOR PERMANENT
INJUNCTION

14 | MATTEL, INC., a Delaware
corporation,

15 |       Defendant.

16

17 | AND CONSOLIDATED ACTIONS

18
19
20
21
22
23
24
25
26
27
28

07209/2650992.1

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

EXHIBIT 4 PAGE 43

ORDER

1
2          Having considered Mattel, Inc.'s Motion for Permanent Injunction (the
3    "Motion"), the opposition thereto, and all other papers, evidence and arguments
4    submitted in connection therewith, as well as the evidence admitted at trial and the
5    jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion
6    against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA
7    Hong Kong"), and Isaac Larian ("Larian") (MGA, MGA Hong Kong, and Larian
8    are, collectively, "Defendants"), and hereby ORDERS as follows:
9          1.    MGA, MGA Hong Kong, and Larian, along with their respective
10   officers, directors, principals, agents, representatives, servants, employees, affiliates,
11   successors or assigns, and any person or entity acting on their behalf or in concert or
12   participation with them, are hereby PERMANENTLY ENJOINED from
13   manufacturing, procuring the manufacture of, making, producing, reproducing,
14   copying, distributing, transferring, displaying, marketing, advertising, shipping,
15   importing, exporting, licensing, offering to license, selling or offering to sell:
16               (a)    Any doll, product or other item that embodies or depicts in whole
17                      or in part, or incorporates or uses in any manner, the head and/or
18                      body sculpt shown in Exhibit 1 (sometimes known as the "core
19                      Bratz fashion doll production sculpt"), which is incorporated
20                      herein by this reference.
21               (b)    Any doll, product or other item that embodies or depicts in whole
22                      or in part, or incorporates or uses in any manner, the head and/or
23                      body sculpt shown in Exhibit 2 (sometimes known as the "Bratz
24                      Movie sculpt"), which is incorporated herein by this reference.
25               (c)    Any doll shown in Exhibits 3 to 4, inclusive, which are
26                      incorporated herein by this reference, except Cloe's younger
27                      sister depicted at Exhibit 3, page 277; the younger version of
28                      Yasmin depicted at Exhibit 3, page 278; and the younger Alicia

EXHIBIT 4 PAGE 44

1                     depicted at Exhibit 4, page 379, if those dolls are packaged

2                     separately from a doll that includes a doll incorporating the core

3                     Bratz fashion doll production sculpt or Bratz Movie sculpt

4                     (Exhibits 1 and 2).

5     (d)   Any doll or portion of a doll shown in Exhibits 5 to 6, inclusive,

6            which are incorporated herein by this reference, except the dolls

7            depicted at Exhibit 5, pages 551 through 555, inclusive, and the

8            dolls depicted at Exhibit 6, pages 556, 557, 558, and 565.

9     (e)   Any product, packaging or other item that embodies or depicts in

10          whole or in part, or incorporates or uses in any manner, the

11          artwork shown on the packaging set forth in Exhibit 7, which is

12          incorporated herein by this reference.

13    (f)   Any doll, product, packaging or other item that embodies or

14         depicts in whole or in part, or incorporates or uses in any

15         manner, any of the Jade, Cloe, Yasmin and Sasha Bratz

16         characters, including without limitation the items shown in

17         Exhibits 3 and 5, which are incorporated herein by this reference.

18    (g)   Any marketing or advertising materials that embody or depict in

19         whole or in part, or incorporate or use in any manner, any of the

20         dolls, products, items or other matter described in paragraphs (a)

21         through (f) above, including without limitation the marketing or

22         advertising materials shown in Exhibits 8 (screen captures from

23         television commercials) to 9 (print advertisements depicting any

24         dolls incorporating the core Bratz fashion doll production sculpt

25         or Bratz Movie sculpt (Exhibits 1 and 2), inclusive, which are

26         incorporated herein by this reference.

27    (h)   Any doll, product, packaging, advertising or other item or

28         materials that counterfeits, copies or is substantially similar to

1     Mattel's copyright protected head and/or body sculpt shown in

2     Exhibit 10, which is incorporated herein by this reference,

3     including without limitation the Bratz fashion dolls known as

4     Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna,

5     Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee,

6     Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora,

7     Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya,

8     Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and

9     all other dolls employing a sculpt which is substantially similar

10    to Exhibit 10.

11  (i)  Any doll, product, packaging, advertising or other item or

12     materials that embodies or depicts in whole or in part, or

13     incorporates or uses in any manner, any of the Jade, Cloe,

14     Yasmin and Sasha Bratz characters depicted or described in

15     Exhibit 11, which is incorporated herein by this reference; and

16  (j)  Any doll, product, packaging, advertising or other item or

17     materials that counterfeit, copy or are substantially similar to

18     Mattel's Bratz-related copyrighted works, including without

19     limitation such works in Exhibits 11 and 12, inclusive, which are

20     incorporated herein by this reference.

21  2.  MGA, MGA Hong Kong, and Larian, along with their respective

22 officers, directors, principals, agents, representatives, servants, employees, affiliates,

23 successors or assigns, and any person or entity acting on their behalf or in concert or

24 participation with them, are further hereby PERMANENTLY ENJOINED from

25 engaging in any of the following acts:

26  (a)  Copying, imitating, selling, offering to sell, marketing,

27     distributing, importing, displaying or making any use of the

28

EXHIBIT 4 PAGE 46

1          copyrighted works shown in Exhibits 10 to 12, inclusive, which
2          works are owned by Mattel.
3     (b)  Engaging in any and all further acts of infringement of the
4          copyrighted works shown in Exhibits 10 to 12, inclusive, which
5          works are owned by Mattel.
6     (c)  Asserting any ownership of rights or any right, title or interest in
7          the copyrighted works shown in Exhibits 10 to 12, inclusive,
8          which works are owned by Mattel.
9     (d)  Transferring, disposing of, destroying, spoliating or secreting any
10         documents, records, recordings or materials, whether in
11         electronic or non-electronic form, that evidence, relate to or
12         pertain to any aspect of the dolls, products, packaging, items or
13         other materials referred to in paragraphs 1(a) through 1(k) above,
14         inclusive, including without limitation any and all agreements,
15         contracts, correspondence, communications, invoices, purchase
16         orders, sales orders, manufacturing records, import or export
17         records, sales records, ledgers, inventory records and shipping
18         records relating thereto.
19    (e)  Transferring, disposing of, destroying, spoliating or secreting any
20         documents, records, recordings or material, whether in electronic
21         or non-electronic form, that in any manner evidence, relate to or
22         pertain to any products, services or activities using or displaying
23         any simulation, counterfeit, reproduction or copy of, or are
24         derived from, Mattel's copyrighted works shown in Exhibits 10
25         to 12, inclusive, which are incorporated herein by this reference.
26    (f)  Transferring, disposing of, destroying, spoliating, secreting or
27         exporting any products, product packaging, labels, signs, prints,
28         dies, wrappers, receptacles, advertisements or any other tangible

-5-
ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

EXHIBIT 4 PAGE 47

1                  items (including without limitation computer files) that in any

2                  manner utilize, contain, evidence, reproduce, display, or relate to

3                  any simulation, counterfeit, reproduction or copy of, or are

4                  derived from, (i) the dolls, products, packaging, items or other

5                  materials referred to in paragraphs 1(a) through 1(k) above,

6                  inclusive, or (ii) Mattel's copyrighted works shown in Exhibits

7                  10 to 12, inclusive, which are incorporated herein by this

8                  reference.

9       (g)     Transferring, disposing of, destroying, spoliating, secreting or

10               exporting any plates, molds, matrices, and other means of

11               making or manufacturing (i) the dolls, products, packaging,

12               items or other materials referred to in paragraphs 1(a) through

13               1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy,

14               substantially similar likeness, or derivative of Mattel's

15               copyrighted works shown in Exhibits 10 to 12, inclusive.

16       (h)     Assisting, aiding or abetting any other entity or person in

17               engaging in or performing any of the activities referred to in

18               paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a)

19               through 2(h), inclusive.

20      3.      At Defendants' expense, Defendants shall deliver to Mattel's

21 counsel for impoundment, at such location in the Central District of California as

22 Mattel's counsel may direct, all dolls, products, product packaging, labels, signs,

23 prints, dies, wrappers, receptacles and advertisements, in the direct or indirect

24 possession, custody or control of Defendants, their officers, directors, principals,

25 agents, servants, employees, successors or assigns, or any person or entity acting on

26 their behalf or in concert or participation with them, that are referred to in

27 paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h),

28

1  inclusive, together with all plates, molds, matrices and other means of making the

2  same. Mattel's counsel is hereby appointed substitute custodian for all such items.

3        4.     Defendants are hereby ORDERED to procure the return, and to

4  withdraw and recall, from any and all channels of trade and distribution, including

5  without limitation from retail shelves and from on-line retailers, all of the dolls and

6  doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in

7  paragraphs 2(a) through 2(h), inclusive. As to each entity or person returning such

8  dolls and doll products, Defendants shall refund all monies paid by each entity or

9  person in connection with such dolls and doll products and shall reimburse each

10  such entity or person for all associated shipping charges.

11        5.     Defendants shall hand serve upon Mattel's counsel a declaration,

12  made under oath, that sets forth fully and completely the following information: (a)

13  the identity of each and every doll, product, package or other item manufactured,

14  marketed, displayed, distributed, imported, exported, sold or offered for sale by or

15  for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or

16  in paragraphs 2(a) through 2(h), inclusive; (b) for each such doll, product, package

17  or other item, the number of units manufactured, marketed, displayed, distributed,

18  shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for

19  each unit of each such doll, product, package or other item, the purchaser, transferee

20  or recipient of each such unit(s), the quantities acquired by such purchaser,

21  transferee or recipient and complete contact information (including limitation the

22  address, telephone number, fax number and email address where known) for each

23  such purchaser, transferee or recipient; (d) for each unit of such doll, product,

24  package or other item, the current or last known location of each such unit,

25  including without limitation the location of all such dolls, products, package or other

26  items in Defendant's inventory; and (v) for each person or entity to whom or which

27  Defendants have promoted, advertised, marketed or offered to sell any doll, product,

28  package or other item that is the subject of this Order, the identity of, and complete

-7-
ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

EXHIBIT 4 PAGE 49

1    contact information for (including limitation the address, telephone number, fax

2    number and email address where known), each such person or entity.

3            6.      At Defendants' expense, Defendants shall make written contact

4    (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler,

5    importer, exporter, customer, licensee or any other person and entity to or through

6    whom Defendants have shipped, transferred, imported, exported or sold any doll,

7    product or other item that is the subject of this Order; and (ii) each retailer,

8    distributor, wholesaler, licensee, potential licensee, customer, potential customer or

9    any other person and entity who Defendants have contacted (whether by mail,

10   electronic mail, orally or otherwise) within the past ninety (90) days in marketing,

11   promoting or advertising any doll, product or other item that is the subject of this

12   Order, and shall provide each such person and entity with a copy of this Order and

13   with a verbatim copy of the following notice, in legible and conspicuous print, in its

14   entirety (hereinafter, the "Notice"):

15                      NOTICE PUBLISHED PURSUANT TO

16              ORDER OF THE UNITED STATES DISTRICT COURT

17              YOU ARE HEREBY ADVISED as follows:

18              Recently you may have bought, seen, or been contacted regarding, the
19              sale of Bratz dolls or other Bratz products.

20              Pursuant to the rulings of the United States District Court, Mattel is the
21              owner of Bratz-related copyrights that are infringed by Bratz dolls,
                products and packaging manufactured by or for MGA.
22

23              The Court has ordered MGA to immediately cease any further
24              manufacture, sale, promotion, shipment or distribution of Bratz dolls,
                products and packaging.
25

26              In addition, the Court has ordered that Bratz dolls must be returned
                immediately to the following address:  MGA Entertainment, Inc., Attn:
27              Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys, CA
28              91406.

1
2          MGA will refund to you all monies paid by you for these dolls and
           reimburse you for all associated shipping charges.
3
4          7.     At Defendants' expense, Defendants shall post in legible and
5     conspicuous print a verbatim copy of the entire Notice set forth in Paragraph 6,
6     above, upon the home page of MGA's web site at www.mgae.com beginning within
7     twenty-four hours of receipt of notice of this Order and continuing for a period of no
8     less than one hundred and twenty (120) days.
9          8.     Defendants, and any person or entity acting on their behalf or in
10    concert or participation with Defendants, shall fully comply with Paragraphs 1 and 2
11    of this Order immediately, shall fully comply with Paragraph 6 of this Order within
12    two (2) calendar days of the date of this Order, shall fully comply with Paragraph 5
13    of this Order within seven (7) calendar days of the date of this Order and shall fully
14    comply with Paragraphs 3 and 4 of this Order within thirty (30) days of this Order.
15    In the event that any additional doll, product or item that is the subject of this Order
16    subsequently is delivered to or comes within the direct or indirect possession,
17    custody or control of Defendants, Defendants shall deliver such additional doll,
18    product or item to Mattel's counsel within two (2) calendar days in accordance with
19    the terms of Paragraph 3, above.
20         9.     Within forty (40) calendar days of the date of this Order,
21    Defendants shall file with the Court, and personally serve on counsel for Mattel, a
22    report in writing under oath setting forth the actions taken to comply with the terms
23    herein pursuant to 15 U.S.C. § 1116(a).  Such Report shall have appended to it
24    complete, true and accurate copies of each communication ordered to be sent
25    pursuant to Paragraph 6 of this Order.
26         10.    Pursuant to Federal Rule of Civil Procedure 53, the Court hereby
27    appoints a special master to supervise implementation of the requirements of this
28    Order (the "Special Master").

07209/2650992.1

-9-

ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION

1      11.    Any and all disputes arising out of this Order and/or motions or

2  applications seeking to enforce the terms of this Order shall be presented to the

3  Special Master for resolution in the first instance, once the Special Master is

4  appointed.  The Special Master shall have the authority to set the time, place and

5  manner of hearings and other proceedings he or she will conduct; to preside over

6  hearings, whether telephonic or in person; to take evidence in connection with

7  disputes before the Special Master; to make inspections in connection with the

8  requirements of this Order, including inspections of Defendants' facilities and

9  warehouses; to issue orders resolving motions, applications and matters arising out

10  of this Order and/or seeking to enforce the terms of this Order; to issue orders

11  awarding non-contempt sanctions, including, without limitation, the award of

12  attorney's fees; and to issue reports and recommendations on matters for which the

13  Special Master lacks jurisdiction to issue an order, including, without limitation,

14  reports and recommendations regarding contempt sanctions.  In addition to any

15  other filing procedures the Special Master may permit, the Special Master shall

16  permit the filing of *ex parte* applications to enforce the terms of this Order, which

17  must be heard and adjudicated within ten (10) calendar days of filing.  A party may

18  bring an *ex parte* application for relief pursuant to this provision only upon

19  certifying, as an officer of the Court, that such expedited adjudication is required

20  and could not be avoided in due course.  The parties shall file with this Court,

21  contemporaneously, the original of all submissions made to the Special Master such

22  that the Court's Docket shall be complete and include all pertinent submissions.

23  Third parties shall be bound by the Special Master's orders to the same extent as

24  Orders of this Court.

25      12.    The Special Master's orders, reports and recommendations shall

26  be treated as rulings made by a Magistrate Judge of this Court and may be reviewed

27  in the same manner and pursuant to the same procedures as this Court reviews such

28  orders, reports and recommendations of a Magistrate Judge.  A court reporter shall

07209/2650992.1

EXHIBIT 4 PAGE 52

1 | transcribe all hearings and proceedings held before the Special Master. The Special
2 | Master's fees, and other costs incurred in connection with proceedings before the
3 | Special Master, including the fees of court reporters, shall be paid one-half by
4 | Mattel, Inc. and one-half by MGA Entertainment, Inc. unless, consistent with the
5 | Federal Rules of Civil Procedure, the Special Master orders otherwise. The Special
6 | Master shall not have *ex parte* communications with a party or counsel.

7 |          13.   The Special Master shall be authorized to receive information
8 | designated "CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES
9 | ONLY" pursuant to the protective order dated January 4, 2005.

10 |          14.   This Court shall have jurisdiction to interpret and enforce the
11 | terms of this Permanent Injunction and to determine any issues which may arise
12 | concerning this Permanent Injunction.

13 |          **IT IS SO ORDERED**.

14 | DATED:  December 03, 2008

15 | Hon. Stephen G. Larson
United States District Judge

# Exhibit 5

O

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10                              EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 12          Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 13     vs. | |
| 14 MATTEL, INC., a Delaware corporation, | ORDER GRANTING DECLARATORY JUDGMENT |
| 15          Defendant. | |
| 16 | |
| 17 AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

07209/2641997.3

[PROPOSED] ORDER

EXHIBIT 5 PAGE 54

## ORDER

1.     The Court hereby DECLARES that Mattel owns all right, title and interest, including any and all copyright rights, in and to the Bratz-related works, ideas, and concepts that Carter Bryant conceived or created while employed by Mattel, as found by the jury in this case, including the idea for the name "Bratz" and the idea for the "Bratz" characters, which are protectible property interests as a matter of California state law, and the following works (identified by Trial Exhibit (TX) numbers):

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

EXHIBIT 5 PAGE 55

| |
|---|
| TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| TX 5-63, 758, 759, 760 |
| TX 5-64, 62-6, 795, 1152-14, 1750 |
| TX 5-65, 1152-7, 1152-8, 11789 |
| TX 5-66, 794, 1152-13 |
| TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| TX 5-73, 741, 742 |
| TX 5-76, 706 |
| TX 5-77, 707 |
| TX 5-78, 10539, 18501 |
| TX 5-136, 711 |
| TX 10579, 18281 |
| TX 15172 |
| TX 3-1, 779, 780, 1-1, 2-1, 778 |
| TX 3-2, 726, 727, 728, 1-4, 2-5 |
| TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| TX 3-5, 791, 1-8, 2-2 |
| TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| TX 3-10, 735, 736 |
| TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| TX 3-13, 793, 1-5, 2-3, 10-3 |
| TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| TX 1-2 |
| TX 3-11, |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2641997.3

-3-

[PROPOSED] ORDER

EXHIBIT 5 PAGE 56

| |
|---|
| TX 5-26, 712 |
| TX 5-27, 713 |
| TX 5-81, 720 |
| TX 5-82, 715 |
| TX 5-83, 723 |
| TX 3-4, 5-84, 716, 717 |
| TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| TX 5-80, 721, 722, 5-86 |
| TX 5-87, 5-108, 724, 725 |
| TX 5-34 |
| TX 5-89, 35-2, 323-32, 323-33 |
| TX 1107, 10638 |
| TX 1108, 10639 |
| TX 1109, 771 |
| TX 1110, 773 |
| TX 5-14, 10515 |
| TX 5-18, 10518 |
| TX 5-19, 10519 |
| TX 5-28, 10526 |
| TX 5-30 |
| TX 5-95 |
| TX 5-96 |
| TX 5-99 |
| TX 323-18 |
| TX 323-19 |
| TX 323-26 |
| TX 1136 |
| The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2641997.3

-4-

[PROPOSED] ORDER

EXHIBIT 5 PAGE 57

1      2.      The Court further hereby DECLARES that MGA Entertainment Inc.

2   ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do

3   not have any right, title or interest in or to the works, ideas and/or concepts listed

4   above. Any purported assignment from Carter Bryant to MGA of the rights to the

5   works, ideas or concepts listed above, including any purported assignment of such

6   rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,

7   2000, was invalid, ineffectual and void ab initio.

8      3.      In addition, the Court hereby ORDERS that all copyright registrations

9   MGA has obtained in and for the Bratz works listed above, including Registration

10   Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-

11   218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491

12   (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have

13   been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such

14   registrations.

15      4.      The Court further hereby ORDERS that all Bratz-related works listed

16   in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that

17   Defendants shall deliver the originals of such works to Mattel forthwith.

18          IT IS SO ORDERED.

19

20

21   DATED:  December 3, 2008

22                                          Hon. Stephen G. Larson
                                            United States District Judge
23

24

25

26

27

28

07209/2641997.3

[PROPOSED] ORDER

EXHIBIT 5  PAGE 58

# Exhibit 6



O

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10                              EASTERN DIVISION

11   CARTER BRYANT, an individual,        CASE NO. CV 04-09049 SGL (RNBx)
                                          Consolidated with
12            Plaintiff,                  Case Nos. CV 04-09059 & CV 05-2727

13        vs.

14   MATTEL, INC., a Delaware             **ORDER GRANTING MATTEL'S**
     corporation,                         **MOTION FOR CONSTRUCTIVE**
15                                        **TRUST AND FOR FINDING**
              Defendant.                  **LIABILITY AND INJUNCTIVE**
16                                        **RELIEF PURSUANT TO CAL. BUS. &**
                                          **PROF CODE § 17200**
17   AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27

28

07209/2649025.3

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

EXHIBIT 6 PAGE 59

1

## ORDER

2          Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive

3   Trust and for a Finding of Liability and Injunctive Relief Pursuant to California

4   Business & Professional Code § 17200, and all other papers and arguments

5   submitted in connection therewith, as well as the evidence admitted at trial and the

6   jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against

7   MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong

8   Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

9          1.     A constructive trust in favor of Mattel on all rights to trademarks,

10  service marks and domain names held by MGA or Larian, or any person or entity

11  acting on their behalf or for their benefit, anywhere in the world that include the

12  terms "Bratz" or "Jade," including all such trademark registrations and trademark

13  applications (including, without limitation, United States Trademark Registrations

14  identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465,

15  3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614,

16  2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942,

17  2789216 and 2836780 and United States Trademark Applications identified by

18  Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100,

19  78490324, 77443372 and 77575881), and the good will inhering therein, as well as

20  all such domain name registrations, is HEREBY ORDERED and all rights therein

21  are ORDERED transferred to Mattel.

22         2.     MGA and Larian are HEREBY ORDERED to (a) identify all

23  trademark registrations and applications held by them, or any person or entity acting

24  on their behalf or for their benefit, anywhere in the world that include the terms

25  "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in

26  which they, or any person or entity acting on their behalf or for their benefit, claim

27  to own trademark rights, whether or not such marks are subject to existing

28  trademark registrations or pending trademark applications, (c) identify all domain

EXHIBIT 6 PAGE 60

1   names and domain name registrations held by them, or any person or entity acting
2   on their behalf or for their benefit, anywhere in the world that include the terms
3   "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the
4   transfer and/or assignment of such marks and domain names and associated
5   applications and registrations to Mattel.  MGA shall fully comply with (a), (b) and
6   (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7        3.    The Court HEREBY FINDS that the MGA Defendants violated
8   California Business and Professions Code § 17200 and are liable to Mattel on its
9   twelfth claim for relief for unfair competition.

10        4.    The MGA Defendants, along with their respective officers,
11  directors, principals, agents, representatives, servants, employees, affiliates,
12  successors or assigns, and any person or entity acting on their behalf or in concert or
13  participation with them, are HEREBY PERMANENTLY ENJOINED from (a)
14  using the terms "Bratz" or "Jade," either alone or in combination and whether as a
15  trademark, domain name or otherwise, in connection with the manufacture,
16  promotion, advertising, distribution, offering for sale or sale of any goods or
17  services anywhere in the world and (b) taking any action to preclude Mattel from
18  using the terms "Bratz" or "Jade" in any such manner, including without limitation
19  as a mark in connection with goods and services.

20        **IT IS SO ORDERED.**

21

22   DATED:  December 3, 2008

23                                       Hon. Stephen G. Larson
                                         United States District Judge

24

25

26

27

28

07209/2649025.3

-3-

EXHIBIT 6 PAGE 61

# Exhibit 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: April 25, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:       ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                (IN CHAMBERS)

        This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

MINUTES FORM 90                                              Initials of Deputy Clerk:  jh
CIVIL – GEN                        Page 1

EXHIBIT 7
PAGE 102

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that
this Order necessarily relies on evidence subject to any party's objections, the objections are
implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional
interference with contractual relations, conversion, and unfair competition, arguing that these
claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the
subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general
scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th
Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted
qualitatively different from those protected under the Copyright Act, the state law claim is not
preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir.
2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim
addresses generally an issue within the subject matter of copyright -- the underlying wrong upon
which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual
relations is neither categorically preempted or categorically saved from preemption; rather, the
Court must engage in a determination of whether the substance of the tort claim differs
qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a
intentional interference claim was not preempted because it was based not on copyrights but on a
contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir.
2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different
from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged
interference with any copyrights that Mattel may have under the Inventions Agreement, it is
preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to
the extent that the claim is based on MGA's acts that may be found to have aided and abetted the
breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is
qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent
that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of
fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues:
Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

EXHIBIT 7
PAGE 163

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1] From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

EXHIBIT 7
PAGE 64

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

MINUTES FORM 90
CIVIL -- GEN

Page 4

Initials of Deputy Clerk: jh

EXHIBIT 7
PAGE 65

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

EXHIBIT 7
PAGE 66

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted). The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has raised a triable issue of fact as to the second. The fourth element may be resolved after the

EXHIBIT 7
PAGE 167

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

EXHIBIT 7
PAGE 68

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel.
As the issue is argued by the parties, the Court would be required to determine the legal issue of
whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice"
in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this
is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the
Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether
MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the
Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these
motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court
will consider the following issues:

Mattel's motion:  Issue (2)(c), whether there is a factual dispute regarding the timing of
certain drawings and a dummy model; Issue (3), whether the first-generation Bratz dolls are
substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by
Bryant and whether those are original, protectable works of expression; Issue (5), whether MGA
and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary
duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative
defense of statute of limitations.

Bryant's motion:  Whether Bryant is entitled to summary judgment as to Mattel's claim for
copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of
contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for
declaratory relief.

MGA's motion:  Whether Mattel's claims are time barred; and whether the fourth element of
intentional interference with contractual relations -- actual breach or disruption of the contractual
relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that
may be relevant to the statute of limitations, these issues are considered by the Court to be fully
briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations
will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue
shall be limited to addressing the status of outstanding discovery issues and/or recently produced
evidence.

**IT IS SO ORDERED.**

EXHIBIT 7
PAGE 169

Case 2:04-cv-09049-SGL-RNB      Document 3286      Filed 04/25/2008      Page 10 of 11

## NOTICE PARTY SERVICE LIST

Case No.   CV 04-09049 SGL(RNBx)      Case Title   Carter Bryant v. Mattel, Inc.

Title of Document   Minute Order of April 25, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | |
| BAP (Bankruptcy Appellate Panel) | |
| Beck, Michael J (Clerk, MDL Panel) | |
| BOP (Bureau of Prisons) | |
| CA St Pub Defender (Calif. State PD) | |
| CAAG (California Attorney General's Office – Keith H. Borjon, L.A. Death Penalty Coordinator) | |
| Case Asgmt Admin (Case Assignment Administrator) | |
| Catterson, Cathy (9th Circuit Court of Appeal) | |
| Chief Deputy Admin | |
| Chief Deputy Ops | |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

| | |
|---|---|
| US Attorneys Office - Civil Division -L.A. | |
| US Attorneys Office - Civil Division - S.A. | |
| US Attorneys Office - Criminal Division -L.A. | |
| US Attorneys Office - Criminal Division -S.A. | |
| US Bankruptcy Court | |
| US Marshal Service - Los Angeles (USMLA) | |
| US Marshal Service - Riverside (USMED) | |
| US Marshal Service -Santa Ana (USMSA) | |
| US Probation Office (USPO) | |
| US Trustee's Office | |
| Warden, San Quentin State Prison, CA | |

| ✓ | ADD NEW NOTICE PARTY (if sending by fax, mailing address must also be provided) |
|---|---|

Name:  Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor):  P.O. Box 581103

Salt Lake City,  UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| JUDGE / MAGISTRATE JUDGE (list below): |
|---|
| |
| |
| |

Initials of Deputy Clerk   jh

EXHIBIT 7
PAGE 70

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 25, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service -Santa Ana (USMSA) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Probation Office (USPO) |
| Chief Deputy Admin | US Trustee's Office |
| Chief Deputy Ops | Warden, San Quentin State Prison, CA |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

✓ **ADD NEW NOTICE PARTY**
(if sending by fax, mailing address must also be provided)

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (include suite or floor):  Two Embarcadero Center, Suite 1500, San Francisco,  CA  94111

*E-mail:

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk  jh

G-75  (03/07)                           NOTICE PARTY SERVICE LIST

EXHIBIT 7
PAGE 71

Case 2:04-cv-09049-SGL-RNB      Document 3286      Filed 04/25/2008      Page 1 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT, | CASE NUMBER |
|---|---|
| PLAINTIFF(S), | CV 04-09049 SGL (RNBx) |
| v. | |
| MATTEL, INC., et al., | |
| DEFENDANT(S), | NOTICE OF CLERICAL ERROR |

TO:     U. S. District Judge(s)
        U. S. Magistrate Judge(s)
        Counsel of Record

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action ☐ the following scanned document ☑ docket entry  have/has been corrected as indicated below.

Title of Scanned Document: __Minute Order of 4-25-08, Granting in part, Denying in part, and Deferring in Part the Parties' MSJ__

Filed Date: _4-25-08_____   Document Number: _3285_____

☐   Incorrect case number _____ was assigned to this ☐ action ☐ document.

☐   Case number has been corrected.  The correct case number is _____

☐   Incorrect judge's initials were indicated on this ☐ action ☐ document.  The correct judge's initials are _____

☐   Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document. The correct  magistrate judge's initials are _____

☐   Case has been reassigned from ☐ Judge ☐ Magistrate Judge _____ to

     ☐ Judge ☐ Magistrate Judge _____.  The initials of the new judge(s) are _____

☐   Case was assigned  to ☐ Western ☐ Southern ☐ Eastern division. Pursuant to General Order ☐ 349, ☐ 98-3 ☐ 02-06,

     the case has been reassigned to the ☐ Western ☐ Southern ☐ Eastern division. The former case number _____
     has been reassigned to new case number _____

☐   Subsequent documents must be filed at the ☐ Western ☐ Southern ☐ Eastern division. Failure to file at the proper location
     will result in your documents being returned to you.

☐   Case title is corrected from _____ to _____

☐   Document has been re-numbered as document number _____

☐   Incorrect ☐ Filed Date ☐ Date of Document ☐ ENTERED Date ☐ DATE ENTERED ON CM/ICMS was stamped on
     document.  The correct date is _____

☑   Document is missing page number(s): _7 and 8_____

☐   To ensure proper routing of documents, all documents filed  with the court must reflect the following case number and judge's
     initials: _____

☑   Other: a complete copy with missing pages are re-scanned for service on the parties.

CLERK, U.S. DISTRICT COURT

Date _4-25-08_____        By: _____Jim Holmes, CRD_____
                                          Deputy Clerk

*cc: Intake Supervisor / Deputy In Charge*

G-11 (06/05)                          **NOTICE OF CLERICAL ERROR**

EXHIBIT 7
PAGE 72

# Exhibit 8

Case 2:04-cv-09049-SGL-RNB     Document 6544     Filed 08/31/2009     Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES - GENERAL

Case No.     CV 04-09049-SGL(RNBx)                          Date: August 31, 2009

Title:       CARTER BRYANT -v- MATTEL, INC.
=======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Cindy Sasse                              Theresa Lanza
Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

John Quinn                               Annette L. Hurst
Michael T. Zeller                        Warrington S. Parker, III
B. Dylan Proctor                         William A. Molinski


PROCEEDINGS:    MOTIONS HEARING

        1.    Mattel Inc.'s Motion for Order for Preclusive Relief or, in the
              Alternative, Access to Active Files on the Larian Hard Drives, No.
              5760, 5769;

        2.    Mattel, Inc.'s Motion for Clarification of 6/18/09 Order,
              No. 5783;

        3.    Mattel Inc.'s Motion to Modify Scheduling Order,
              No. 6050

        4.    Order to Show Cause

        The Court addressed the issue the filings of sur-replies; all counsel are directed to follow
Local Rule 7-10 regarding the filing of replies.  The Court further heard oral argument and makes
the following rulings:

        First, in light of the parties' stipulation, as set forth on the record, the Court DENIES AS

MINUTES FORM 90                                              Initials of Deputy Clerk: cls
CIVIL -- GEN                    Page 1                        Time: 00/41

EXHIBIT __8__ PAGE _73_

**MOOT** Mattel Inc.'s Motion for Order for Preclusive Relief or, in the Alternative, Access to Active Files on the Larian Hard Drives.

Second, the Court **GRANTS** Mattel, Inc.'s Motion for Clarification.  The Court's June 18, 2009, Order is **CLARIFIED** in the following manner:  The Court's June 18, 2009, Order, including its discussion of willfulness, was intended to be and is limited to the equitable issue of the scope of an appropriate accounting, and shall not be construed to apply to any circumstances beyond the scope of an appropriate accounting.

Third, the Court **DENIES WITHOUT PREJUDICE** Mattel, Inc.'s Motion to Amend the Scheduling Order as premature.  The Court will re-visit the issue of the case scheduling order when it takes up Mattel, Inc.'s motion for leave to file a Fourth Amended Answer and Counterclaims on October 1, 2009.  In addition, the Court sets a status conference at which all lead counsel of record shall appear on September 21, 2009, at 1:30 p.m.  On or before September 18, 2009, the parties are **ORDERED** to file with the Court a report, not to exceed 10 pages, of the status of discovery for Phase 2 – what has been completed and what must still be completed prior to trial.  Counsel shall also advise the Court of the parties' positions with respect to (1) any further bifurcation of Phase 2 trial and (2) a stay of the trial of Phase 2 pending the Ninth Circuit's ruling on the appeal of Phase 1.

Finally, the Court addresses an issue of concern that arose in the papers submitted in advance of this hearing.  Specifically, Exhibit 2 to the Second Supplemental Declaration of Dylan Proctor in support of Mattel's Motion for Clarification, dated August 26, 2009, appears relevant to the issue of whether certain acts of copyright infringement were willful acts of infringement.  Upon consideration of the evidence in Phase 1, the jury found that the infringement was not willful.  However, this document, Bates Nos. MGA2 0070266-0070270, was not offered as evidence in Phase 1, as it was withheld by counsel for the MGA parties on a claim of attorney client privilege.  It was finally produced in its current, more complete form on August 21, 2009, well after the conclusion of Phase 1 of the trial, and only upon the eve of an impending *in camera* review of the document by the Discovery Master pursuant to his Order.[1]

The more complete version shows MGA employee Victoria O'Connor was concerned with Mr. Larian's representations to a media source regarding the timing of the creation of Bratz, the central issue tried in Phase 1.  Ms. O'Connor stated:  "[D]on't you think we should say Bratz was born in October when a certain person was no longer with their company?"  Mr. Larian responded: "[G]ood point.  Thanks."

---

[1] The document was produced earlier to Mattel in an incomplete form, but the produced version eliminates the communications most relevant to the issue of willfulness.  The document takes the form of an email string, a printed version of electronic communications now familiar to most individuals (and certainly to all litigation attorneys), with the most recent communication appearing first.  The incomplete document ends with Isaac Larian forwarding the communication, on Wednesday, October 23, 2002, at 1:35 a.m., to other individuals as an "FYI."  The more complete version continues with a response from Victoria O'Connor, at 8:38 a.m., and Mr. Larian's reply one minute later.

EXHIBIT  8  PAGE  74

This document has clear relevance to the claims and defenses at issue in the Phase 1 trial. The withholding of this document under a claim of privilege concerns the Court, as it implicates the duty of the Court to oversee the conduct of the lawyers who appear before it, and who are largely responsible for maintaining the integrity of the adversarial process.

Toward that end, the Court **ORDERS** counsel for the MGA parties to **APPEAR AND SHOW CAUSE** on September 21, 2009, at 1:30 p.m., why sanctions should not be imposed for their repeated failure to produce this document at an earlier date.

With respect to the email communications referenced in this Order, the Court **ORDERS** counsel for the MGA parties to file a report with the Court (served on all parties and Court-Appointed Officers) that, at a minimum, provides to and/or reports to the Court:

(1)   Copies of all versions of all privilege logs, whether or not provided to Mattel, the Discovery Master, the Court-Appointed Forensic Auditor, the Temporary Receiver, or the Monitor, upon which the document referred to above appears, including any version of this email exchange among the senders and recipients (including those "cc'd" or "bcc'd") that contains communications not set forth in the incomplete version of the document that was produced in discovery.

(2)   A description of the process whereby the document referred to above (or any version of it) came to appear on any privilege log. That description shall include, with respect to the document that bears Bates Nos. MGA2 0070266-0070270, the identity of any attorney responsible for the designation of the document as privileged, the identity of any attorney responsible for reviewing that designation, and the identity of any attorney who, upon discovery of the non-privileged nature of the document, continued to withhold the document from production. Each of those attorneys,[2] whether or not current or past counsel of record, shall file a declaration regarding what actions he or she took (or refrained from taking) with respect to this document.

(3)   Any other information known to any current or past counsel of record relevant to a determination of why this unprivileged, relevant document was withheld pursuant to a claim of privilege.

(4)   If any of the information referenced in (1)-(3) above is itself subject to a claim of either attorney-client or work-product privilege, that information may not be withheld from the Court, but need not be served on any party or Court-Appointed Officer (unless the Court orders otherwise) and shall instead be delivered to the Courtroom

---

[2] Each current and past counsel of record is **ORDERED** to disseminate a copy of this Order to every attorney (whether or not currently associated with any law firm that is or was counsel of record) whom is known to have been, or who is not known to have been but who is likely to have been, involved in the designation of maintenance of this document as privileged.

MINUTES FORM 90
CIVIL -- GEN                              Page 3

Initials of Deputy Clerk: cls
Time: 00/41

EXHIBIT  8  PAGE 15

Deputy Clerk, Cindy Sasse, in a separate, *in camera* filing.

Counsel for the MGA parties shall file their written report(s) no later than September 14, 2009.  Any party may respond no later than September 18, 2009.

The Court recognizes that the Court's current inquiry may overlap to a certain extent with Orders or issues or proceedings before the Discovery Master.  The focus of the Court's inquiry is on attorney conduct; the focus of the Discovery Master is on discovery of evidence.  Therefore, the Court's actions here should not be construed to impact in any way upon the Discovery Master's proceedings and Orders.  More specifically, but not exclusively, this OSC shall not be construed to limit the Discovery Master's ability to continue to hear and resolve discovery disputes on the schedule he sees fit to set, nor shall it be construed to extend any deadline or briefing schedule set by the Discovery Master, and nor shall it be construed to effectuate any delay on the Discovery Master's anticipated *in camera* inspection of certain documents identified as privileged, which may proceed (or be delayed) as the Discovery Master deems appropriate.

**IT IS SO ORDERED.**

Initials of Deputy Clerk: cls
Time: 00/41

EXHIBIT  8  PAGE 76

# Exhibit 9

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# Exhibit 10

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 10 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MATTEL, INC., a Delaware corporation,

    Defendant-counter-claimant - Appellee

v.

MGA ENTERTAINMENT, INC.; et al.,

    Counter-defendants - Appellants,

CARTER BRYANT, an individual,

    Plaintiff-counter-defendant,

CARLOS GUSTAVO MACHADO
GOMEZ, an individual; et al.,

    Counter-defendants,

ANNE WANG,

    Third-party-defendant,

OMNI 808 INVESTORS LLC,

    Movant.

No. 09-55673

D.C. No. 2:04-cv-09049-SGL
Central District of California,
Los Angeles

KW/MOATT

EXHIBIT 10 PAGE 138

| | |
|---|---|
| CARTER BRYANT, an individual, | No. 09-55812 |
| Plaintiff-counter-defendant - Appellee and | D.C. No. 2:04-cv-09049-SGL Central District of California, Los Angeles |
| MGA ENTERTAINMENT, INC.; et al., | |
| Counter-defendants - Appellees | ORDER |
| v. | |
| MATTEL, INC., a Delaware corporation, | |
| Defendant-counter-claimant - Appellant, | |
| CARLOS GUSTAVO MACHADO GOMEZ, an individual; et al., | |
| Counter-defendants. | |

Before: KOZINSKI, Chief Judge, PAEZ and TALLMAN, Circuit Judges.

The parties' motions to exceed page limitations are granted.

The parties' motions to seal documents are granted with one exception. The motion to seal the "Declaration of Isaac Larian in Support of Appellants' Reply" ("Larian Declaration") and "Exhibit A" thereto is denied. The parties agree that the Larian Declaration and its exhibit no longer need to be filed under seal.

Mattel's objections to Exhibit A to the Larian Declaration, a letter from Sears Holdings, are overruled. The court has also considered the response by Mattel and supporting Supplemental Declaration of Michael T. Zeller.

KW/MOATT                               2                               09-55673

EXHIBIT __10__ PAGE _139_

MGA Entertainment, Inc., MGA Entertainment HK Ltd. and Isaac Larian's ("MGA's") motion for a stay pending appeal is denied. MGA has not met the prevailing standard to show a substantial likelihood of ultimate success on the merits. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

MGA's unopposed motion to expedite the briefing and hearing is granted. The following briefing schedule governs these cross-appeals: MGA's principal brief is due July 10, 2009; Mattel's principal/response brief is due August 10, 2009; MGA's response/reply brief is due September 9, 2009; and Mattel's optional reply brief is due within 14 days after service of the response/reply brief. The briefs and all courtesy copies must be received by the court on or before the dates that the briefs are due. These cross-appeals will be calendared before the first available panel following the completion of briefing. The provisions of Ninth Circuit Rule 31-2.2(a) shall not apply to these cross-appeals. Any motions to extend time to file the briefs will be strongly disfavored.

Any pending motions not addressed by this order are referred to the panel that will hear the merits.

KW/MOATT                         3                         09-55673

EXHIBIT __10__ PAGE _140_

# Exhibit 11

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# Exhibit 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date: May 21, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=======================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

           Cindy Sasse                        None Present
           Courtroom Deputy                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:   ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
               NO. 11 (DOCKET #5185)

               ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
               ANSWER AND COUNTERCLAIMS (DOCKET #5143)

               ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
               APPEAL (DOCKET #5396)

               ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
               PRODUCT LINE INFORMATION (DOCKET #5425)

               ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
               APPOINTING MGA MONITOR

               ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
               REQUIRING MANDATORY SETTLEMENT CONFERENCE

     These matters were heard on May 18, 2009.

MINUTES FORM 90                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                     1             Time: 03/02

EXHIBIT 12
PAGE 189

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

MINUTES FORM 90
CIVIL -- GEN                                    2

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT 12
PAGE 190

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit
rather than their general powers and that, in any event, the relevant time period to measure
managing agent status is not at the time of deposition but is rather at the time of the events giving
rise to the lawsuit.  Although these arguments find some support, the Discovery Master's
conclusion regarding this first <u>Sugarhill</u> factor (and its <u>Libbey Glass</u> analog) is not contrary to law.
The first <u>Sugarhill</u> factor is clearly concerned with an employee's general power; the fourth factor,
which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities
regarding matters involved in the litigation.  The cases cited by Mattel support its timing argument;
however, cases cited by the MGA parties establish that other cases favor a contrary position.
Neither side's authority is controlling, and the Court therefore concludes the position adopted by
the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to
conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor
reported, could provide substitute testimony to them is clear error.  Mattel's ultimate point is that no
one can testify more accurately and more on point than can the two witnesses regarding their
alleged trade secret theft.  Again, this is not an invalid point.  Indeed, it is possible that if such theft
occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the
MGA parties and instead acted on their own accord (the MGA parties alternatively contend).   The
fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony
regarding any theft would not be on behalf of MGA at all.  Who can or cannot testify about these
events that may or may not have occurred on behalf of any MGA party -- let alone who can testify
best -- is far from clear.  This area of inquiry is fraught with uncertainty.  The Discovery Master's
conclusion one way or another on this issue, therefore, cannot be said to be clear error.  <u>See</u>
<u>Wolpin v. Philip Morris Inc.</u>, 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate
judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction
that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that
MGA Mexico's interests and the witnesses' interests are at odds.  The witnesses are currently
employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been
subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they
have separately retained counsel to represent their interests.  Additionally, the MGA parties have
maintained that if any trade secret theft occurred, it occurred without their knowledge or consent.
These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery
Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or
contrary to law, and the Court therefore DENIES Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

MINUTES FORM 90                                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              3                      Time: 03/02

EXHIBIT 12
PAGE 191

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

MINUTES FORM 90
CIVIL – GEN                                          4

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT 12
PAGE 192

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances*, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

[T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

EXHIBIT 12
PAGE 193

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

MINUTES FORM 90                             Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          6     Time: 03/02

EXHIBIT 12
PAGE 194

### III. EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18. For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

MINUTES FORM 90                                           Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          7                   Time: 03/02

EXHIBIT 12
PAGE 195

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

### IV.  EX PARTE APPLICATION RE DISCLOSURE OF 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason.  Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

### V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver.  In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents:  (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808.  In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

A.    <u>Expiration of Temporary Receivership</u>

IT IS ORDERED THAT:

1.    The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2.    The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3.    The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4.    The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

MINUTES FORM 90
CIVIL -- GEN                                    8

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT 12
PAGE 196

costs, on or before May 28, 2009;

5.    The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.    Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

## B.   Appointment of MGA Monitor

1.    For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

    a.    The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information. The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants. The Bratz Assets include, without limitation:

a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                       9                                   Time: 03/02

EXHIBIT 12
PAGE 197

Case 2:04-cv-09049-SGL-RNB    Document 5565    Filed 05/21/2009    Page 10 of 15

b.    The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.    The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.    The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b. All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c. All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d. All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e. All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f. All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g. All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h. "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            10          Time: 03/02

EXHIBIT 12
PAGE 198

e.   At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.   The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.   The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.   The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

I.   The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.   The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8]  The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90                                      Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          11              Time: 03/02

EXHIBIT 12
PAGE 199

k.   The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order.  The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties.  Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.   The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.   The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor.  The Monitor shall submit to the Court, in camera, monthly requests for approval of payment.  Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.   The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court.  Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.   Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.   The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.   No bond shall be required in connection with the appointment of the Monitor. Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

MINUTES FORM 90
CIVIL -- GEN                                    12

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT 12
PAGE 200

2.  Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.  MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season. MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.  No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.  For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.  Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.  All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

### VI. IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009. The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        13                Time: 03/02

EXHIBIT 12
PAGE 201

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses to the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          14                   Time: 03/02

EXHIBIT 12
PAGE 202

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

MINUTES FORM 90

CIVIL -- GEN                                                    15

Initials of Deputy Clerk __cls_____

Time: 03/02

EXHIBIT 12
PAGE 203