1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                     SOUTHERN DIVISION

| | |
|---|---|
| 11  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case No. CV 04-09039 Case No. CV 05-02727 |
| 13              Plaintiff, | **DISCOVERY MATTER** **[To Be Heard by Discovery Master Robert C. O'Brien Pursuant]** |
| 14        vs. | |
| 16  MGA ENTERTAINMENT, INC., a California corporation, et al., | MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR AN ORDER ENFORCING DISCOVERY MASTER ORDER NO. 66 AND COMPELLING MGA AND LARIAN TO RESPOND TO REQUESTS FOR ADMISSION |
| 17              Defendant. | |
| 19  AND CONSOLIDATED ACTIONS | |
| 21  **PUBLIC REDACTED VERSION** | [Separate Statement and Declaration of Scott L. Watson filed concurrently herewith] |
| 23 | Hearing Date:     TBD Time:             TBD Place:            Arent Fox |
| 25 | **Phase 2** |
| 26 | Discovery Cutoff:     June 1, 2010 Pre-trial Conference: Trial: |

28

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that, at a hearing date to be set by Discovery
3 Master Robert C. O'Brien, Mattel, Inc. ("Mattel") will and hereby does move the Court
4 for an order (1) enforcing Discovery Master Order No. 66; (2) compelling Isaac Larian
5 ("Larian") to answer Mattel's Requests For Admission to Isaac Larian Re: the Court's
6 Order to Show Cause Dated August 31, 2009; and (3) compelling MGA Entertainment,
7 Inc. ("MGA") to answer Mattel's Requests For Admission to MGA Re: the Court's
8 Order to Show Cause Dated August 31, 2009.

9       This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 36 and
10 37 on the grounds that the Requests for Admission seek relevant, discoverable
11 information, and that MGA and Larian (collectively, "the MGA Parties") have refused
12 to comply with Discovery Master Order No. 66 ordering them to respond to the
13 Requests and have asserted meritless objections in response to the Requests.

14       This Motion is based on this Notice of Motion and Motion, the
15 accompanying Memorandum of Points and Authorities, the accompanying Separate
16 Statement and Declaration of Scott L. Watson, the records and files of this Court, and
17 all other matters of which the Court may take judicial notice.

18                     **Statement of Compliance**

19       The parties met and conferred on October 20, 2009 regarding the issues set
20 forth in this motion, and at times thereafter.[1]

21

22 DATED: October 30, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES. LLP
23

24                                  By/s/ Scott L. Watson
25                                     Scott L. Watson
                                       Attorneys for Mattel. Inc.
26

27   [1]  See Declaration of Scott L. Watson, filed concurrently, ("Watson Decl."), ¶¶ 35,
28   36.

FACTUAL BACKGROUND ................................................................................ 2

ARGUMENT ....................................................................................................... 11

I.    THE DISCOVERY MASTER HAS ALREADY ORDERED MGA
      TO RESPOND TO EACH OF THE REQUESTS ..................................... 11

II.   THE REQUESTS SEEK RELEVANT, NON-PRIVILEGED
      INFORMATION ...................................................................................... 11

      A.    Many Requests Seek Purely Factual Information ........................... 12

      B.    The Remaining RFAs Seek Discoverable Facts and Opinions
            Related to MGA's Assertion of Privilege ...................................... 14

      C.    The Requests Are Not Vague .......................................................... 17

CONCLUSION .................................................................................................... 18

00505.07975/3180236.1

MATTEL'S MOTION TO ENFORCE ORDER AND COMPEL RESPONSES TO RFAS

# TABLE OF AUTHORITIES

**Page**

## Cases

B.F.G. of Illinois, Inc. v. Ameritech Corp.,
2001 WL 1414468 (N.D. Ill. Nov. 13, 2001).......................................................12

Bible v. Rio Props., Inc.,
246 F.R.D. 614 (C.D. Cal. 2007)..........................................................................13

Christian v. Janed Enterprises, Inc.,
2009 WL 1796074 (M.D. Ga. June 23, 2009)......................................................14

Clady v. County of Los Angeles,
770 F.2d 1421 (9th Cir. 1985) .............................................................................16

Convergent Bus. Sys., Inc. v. Diamond Reporting, Inc.,
1989 WL 92038 (E.D.N.Y. 1988) .......................................................................14

First Options of Chicago, Inc.v. Wallentsein,
1996 WL 729816 (E.D. Pa. 1996)........................................................................15

Fox v. California Sierra Financial Servs.,
120 F.R.D. 520 (N.D. Cal. 1988) ..................................................................13, 16

Griffith v. Davis,
161 F.R.D. 687 (C.D. Cal. 1995)..........................................................................15

Hartford Fire Ins. Co. v. Garvey,
109 F.R.D. 323 (N.D. Cal. 1985) .........................................................................16

Hergenroeder v. Travelers Property Cas. Ins. Co.,
249 F.R.D. 595 (E.D. Cal. 2008)..........................................................................16

Hise v Lockwood Grader Corp.,
153 F. Supp. 276 (D. Neb. 1957)..........................................................................14

Horsewood v. Kids "R" Us,
1998 WL 526589 (D. Kan. Aug. 13, 1998)..........................................................13

Jackson v. Montgomery Ward & Co., Inc.,
173 F.R.D. 524 (D. Nev. 1997) ......................................................................13, 14

Keller v. Untied States,
58 F.3d 1194 (7th Cir. 1995) ................................................................................12

Malletier v. Dooney & Bourke, Inc.,
2006 WL 3851150 (S.D.N.Y. Dec. 18, 2006)......................................................12

Marchand v. Mercy Med. Ctr.,
  22 F.3d 933 (9th Cir. 1994) ................................................................... 15

Markwest Hydrocarbon, Inc. v. Liberty Mutual Ins. Co.,
  2007 WL 1106105 (D. Colo. April 12, 2007) ................................. 12, 15

New Jersey v. Sprint Corp.,
  2009 WL 1917412 (D. Kan. July 2, 2009) ........................................... 12

Pulsecard, Inc. v. Discover Card Servs., Inc.,
  168 F.R.D. 295 (D. Kan. 1996) ............................................................ 16

Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc.,
  2008 WL 199709 (W.D. Tenn. Jan. 23, 2008) ..................................... 11

United States v. Lench,
  806 F.2d 1443 (9th Cir. 1986) .............................................................. 10

Weil v. Investment/Indicators, Research and Management, Inc.,
  647 F.2d 18 (9th Cir. 1981) ............................................................ 11, 16

**Miscellaneous**

Federal Rules of Civil Procedure 26(b)(5) ................................................. 2

Federal Rules of Civil Procedure 36 .................................................... 1, 15

1

**Preliminary Statement**

2        MGA and Larian categorically refuse to substantively answer RFAs related to

3   their decision to improperly withhold the 2002 Larian-O'Connor email. ███████████

4   ████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████"[2]   The District

7   Court subsequently confirmed that the improper withholding of this highly relevant

8   email remains open for further adjudication, including potentially the imposition of

9   evidentiary and other case-based sanctions.[3]   But when the time for the ordered

10  responses came, MGA and Larian served *only* objections to 78 of the RFAs and failed

11  to substantially respond to all but one of the rest. The objections are without merit, and

12  the MGA Parties should be ordered again to admit or deny the requests.

13        As to *every* Request, MGA asserted the relevance objections previously

14  overruled by the Discovery Master.  Also as to every Request, the MGA Parties

15  objected on the basis of privilege and work product. As with relevance, this objection

16  was litigated previously and ██████████████████████████████████████████████████

17  ████████████████████████████████████████████. The objection is in any

18  event meritless. Each of the requests calls for "statements or opinions of fact, or of the

19  application of law to fact," as expressly permitted by Rule 36. The Discovery Master

20  should order MGA and Larian to admit or deny each of the Requests for Admission.

21

22

23

24

25

26

_____

27   [2]  Discovery Master Order No. 66, dated September 17, 2009, Watson Decl., Ex. 1.

28   [3]  September 22, 2009 Order at 1-2, Watson Decl., Ex. 42.

00505.07975/3180236.1

1

### Factual Background

2      <u>Mattel Serves Document Requests to Which the Larian-O'Connor Email Is</u>

3   <u>Responsive.</u> On March 14, 2005, Mattel served MGA with its First Set of Requests for

4   Production seeking documents on core issues. The Larian-O'Connor email was clearly

5   responsive to a number of Mattel's requests,[4] as the District Court has since confirmed.[5]

6   MGA's initial production in response consisted of merely of a few thousand heavily

7   redacted pages.[6]   Accordingly, the prior Discovery Master ordered production of

8   documents responsive to many of Mattel's requests, including those calling for the

9   Larian-O'Connor email.[7]   Because MGA had failed to produce any meaningful

10  privilege log, the Discovery Master also explicitly ordered MGA to "produce a

11  privilege log in compliance with Rule 26(b)(5), Fed. R. Civ. P., no later than May 31,

12  2007."[8]

13      <u>MGA Conceals The Larian Email</u>.  MGA's compelled log, however,

14  contained no entry or other listing for the Larian-O'Connor email.  On January 23,

15  2008, a few days before the Phase 1 discovery cut-off, MGA served a privilege log

16  containing a total of 2153 new entries.  Two days later, without explanation, MGA

17  produced a "revised" version of that log that with a total of 2155 entries.[9]  Although the

18  significance of the January 25, 2008 revision to the January 23, 2008 log was unknown

19

20

21      [4]   Mattel's First Set of Requests for Production of Documents and Tangible Things
22  to MGA Entertainment, Inc., dated March 14, 2005, Request Nos. 7, 33, 36, 46, Watson Decl., Ex. 2.

23      [5]   August 31, 2009 Order, Watson Decl., Ex. 22.
    [6]   <u>See</u> Mattel's Motion to Compel Production of Documents and Interrogatory
24  Responses by MGA, dated February 2, 2007, Watson Decl., Ex. 3.
    [7]   <u>See</u> Phase 1 Discovery Master Order Granting Mattel's Motion to Compel
25  Production of Documents and Interrogatory Responses by MGA, dated May 15,
26  2007 ("May 15 Order"), at 2, Watson Decl., Ex. 4.
    [8]   May 15 Order at 14; <u>see also</u> <u>id</u>. at 8-9.
27      [9]   <u>See</u> January 25, 2008 Letter from R. Zuromski to S. Kidman, Watson Decl.,
28  Ex. 5.

1  to Mattel at the time, in retrospect the revision is striking.  The revised log differed
2  from the earlier version *only* in that it contained two additional entries amidst those
3  many thousands: Nos. 381 and 557, which are the concealed communications between
4  Larian and O'Connor.  These additional entries were inserted into the middle of the
5  thousands of other entries, without explanation or indication, and described as emails
6  "███████████████████████████."[10]  That same day, MGA
7  produced to Mattel—amid 7000 pages of other documents—the incomplete, sanitized
8  version of the Larian-O'Connor email which was eventually used at trial.[11]  Mattel
9  promptly filed a supplemental brief relating to its then-pending motion to compel
10  regarding MGA's logs.[12]  That supplemental notice specifically referenced Entry Nos.
11  381 and 557, along with several hundred other entries, as communications between
12  non-lawyers which, based on the log's descriptions, did not appear to be privileged.[13]

13      MGA Reviews The Entries And Claims Its Privilege Logs Are Proper.  In
14  opposing Mattel's motion, MGA insisted its logs were wholly proper and need not be
15  further reviewed and revised.[14]  MGA represented that "*[a] review of the documents*

16

17

18

19

20  [10]  Entry Nos. 381 and 557, Rev. Jan. 23 Log, Watson Decl., Ex. 35; compare
    Entry Nos. 381 and 557, Jan. 23 Log (unrevised), Watson Decl., Ex. 34.
21  [11]  See January 25, 2008 Letter from A. Tempkin to S. Kidman, Watson Decl.,
22  Ex. 6.
    [12]  See Mattel's Supplemental Notice of Motion and Memorandum in Support of
23  Motion to Compel Production of Previously Withheld Documents Only Portions of
24  Which are Allegedly Privileged, dated February 5, 2008 ("Supp. Phase 1 Motion"),
    Watson Decl., Ex. 7.
25  [13]  See id. at 2 n.4 (referring to the "revised" version of the January 23, 2008
26  privilege log as the "January 25" log because it had been produced on that day).
    [14]  Declaration of Richard J. Zuromski, Jr., in Support of MGA's Opposition to
27  Mattel's Supplemental Motions to Compel, dated February 29, 2008 ("Zuromski
28  Decl."), ¶ 11, Watson Decl., Ex. 8.

1 | *cited by Mattel confirms their privileged status.*"[15] In a sworn declaration, MGA
2 | specifically asserted that it had reviewed all of the entries at issue: "[I]n preparing
3 | MGA's opposition to Mattel's supplemental motions, *MGA has re-reviewed all of the*
4 | *documents that have been identified in those motions.*"[16]

5 |     <u>The Prior Discovery Master Agreed With Mattel That MGA Appeared To</u>
6 | <u>Be Withholding Non-Privileged Documents</u>. In March 2008, Judge Infante "agree[ed]
7 | with Mattel's position" on the central issues, and stated that MGA's logs included
8 | "documents that look like they're not privileged."[17] However, because MGA continued
9 | to produce both new logs and revised versions of its prior logs, Judge Infante believed
10 | it was "premature to issue an order" and directed the parties to meet and confer
11 | further.[18] As trial neared, Mattel informed the prior Discovery Master that no
12 | resolution was reached and requested an order on its pending motions, which had
13 | already been fully briefed and argued.[19] No order issued, however.

14 |     <u>MGA Certifies To The Court That Its Withholdings Are Proper</u>. The
15 | Court was then left to consider, at the start of trial, Mattel's challenge to MGA's
16 | privilege logs (as well as several other unresolved discovery motions). To avoid
17 | producing the concealed Larian-O'Connor email and other documents, MGA's counsel
18 | "certified" to the Court that all of the entries that Mattel had identified had been
19 | specifically reviewed by counsel and were privileged in their entirety. Although the
20 | Court indicated that it was "sympathetic" with Mattel's position given the breadth of

21 |

22 | [15] <u>See</u> MGA's Opposition to Mattel's Motion to Compel Production of
23 | Previously Withheld Documents Only Portions of Which Are Allegedly Privileged, dated February 7, 2009, at 8, Watson Decl., Ex. 9.
24 | [16] Zuromski Decl. ¶ 12 (emphasis added). As noted, Mattel's supplemental
25 | motion specifically referenced these entries.
   [17] March 10. 2008 Hearing Tr. at 85:2-3, 85:11-12, 86:15, Watson Decl.,
26 | Ex. 33.
   [18] <u>Id.</u> at 86:17-20.
27 | [19] <u>See</u> May 7, 2008 Letter from H. Olivar to J. Infante, Discovery Master,
28 | Watson Decl., Ex. 10.

1   the documents withheld by MGA, with trial underway the Court stated that it was "not

2   interested in looking at all of these documents" and denied at that time the relief sought

3   based on MGA's counsel's representations.[20]   The Court then issued an Order

4   confirming that it was denying relief "based on MGA's counsel's representations that

5   the communications at issue (1) have been individually reviewed by counsel and (2) are

6   privileged in their entirety or, to the extent they are only partially privileged, have

7   already been produced in redacted form such that all non-privileged information is

8   revealed."[21]

9         During the Phase 1 trial, Mattel questioned Larian about an incomplete

10   version of the concealed Larian email.[22]   Neither MGA nor Larian ever indicated that

11   there existed other, more complete, non-priviliged versions of this exchange which had

12   not been produced.

13         Mattel Renews Its Challenge In Phase 2.   After the Court lifted the stay of

14   Phase 2 discovery, Mattel once again began a lengthy meet and confer process with

15   MGA regarding its privilege logs, starting in early February of 2009.[23]   Once again,

16   Mattel specifically inquired as to Entry Nos. 381 and 557.[24]   Mattel then sought an

17

18

19

20

---

21   [20]   June 2, 2008 Hearing Tr. at 35:23-36:6 (emphasis added), Watson Decl., Ex.

22   11.

23   [21]   See Order Regarding Various Discovery Motions, Applications and Other
Matters Upon Which the Court Ruled on June 2, 2008, dated June 5, 2008, at ¶ 3,

24   Watson Decl., Ex. 12.

25   [22]   See Trial Tr. at 1647:10-1650:6 (June 5, 2009, PM session), Watson Decl.,
Ex. 13.

26   [23]   See February 8, 2009 Letter from J. Corey to A. Khan ("Feb 8 Letter"),
Watson Decl., Ex. 14. During this time, MGA's counsel was the law firm of Glaser,

27   Weil, Fink, Jacobs, Howard & Shapiro.

28   [24]   See id. at 3.

1   order from the current Discovery Master to compel *in camera* review of approximately

2   520 entries which did not appear to be legal communications.[25]

3          In opposing Mattel's motion, MGA expressly ███████████████

4   ████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████,"[26] Further, MGA asserted: "███

9   ████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████,"[27]

13         The Discovery Master Orders MGA's Documents Reviewed *In Camera*,

14  And MGA Delays.   The Discovery Master ████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ██████████████████[28] The Discovery Master Order required compliance within 45

18  days, or by July 2, 2009. Because of an intervening stay, this deadline was extended to

19  July 28, 2009.

20

21

---

22  [25]  See Motion to Compel *In Camera* Review and Production of Non-Attorney

23  or Non-Legal Communications Listed on MGA's Privilege Logs, dated March 27,

24  2009, Watson Decl., Ex. 15.

    [26]  See MGA's Opposition to Mattel's Motion to Compel *In Camera* Review and

25  Production of Non-Attorney and Non-Legal Communications Listed on MGA's

26  Privilege Logs, dated April 3, 2009, at 6, Watson Decl., Ex. 16.

    [27]  Id. at 7 n.4 (emphasis added).

27  [28]  See Phase 2 Discovery Matter Order No. 33, dated May 18, 2009, Watson

28  Decl., Ex. 17.

1  All the Discovery Master's Order required █████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████. Nevertheless, both MGA's prior

4  counsel and current counsel took the position that Order No. 33 required a lengthy

5  review before the documents could even be submitted *in camera* to the Discovery

6  Master. Thus, although the Discovery Master had already rejected MGA's efforts to

7  thwart scrutiny of its withheld documents, MGA continued to delay.[29]  MGA's

8  compliance date was extended to August 4, 2009.

9  Shortly before its extended deadline was to expire, MGA conceded that,

10  contrary to its earlier representations, approximately "40% of the documents" at issue

11  were not privileged.[30]  MGA then proposed, months after the Order had issued, a

12  wholesale reworking of the relief ordered by the Discovery Master. Instead of

13  producing the documents *in camera* as ordered, MGA suggested that it be given yet

14  more time (at least another two weeks) to review the documents, after which time it

15  would "serve a supplemental privilege log expanding upon the claims of privilege for

16  the documents continuing to be withheld . . . and then to let Mattel say which

17  documents they really believe require *in camera* review at which point we would turn

18  them over for review immediately without further discussion."[31]  Mattel rejected that

19  proposal, and MGA finally submitted some of its withheld documents to the Discovery

20  Master on August 4, 2009.

21  Even then, MGA continued to withhold other documents providing them

22  neither to Mattel nor to the Discovery Master. MGA took the position that it had no

23  obligation to produce documents subject to the Discovery Master's Order which MGA

24  had agreed to produce to Mattel voluntarily until after the Discovery Master had ruled

25  

26  [29] See Phase 2 Discovery Matter Order No. 41, Watson Decl., Ex. 18.

27  [30] See August 3, 2009 Letter from A. Hurst to R. O'Brien ("August 3 Letter"), Watson Decl., Ex. 19.

28  [31] See id.

on all of the remaining documents MGA submitted for *in camera* review.[32]  It was only after Mattel threatened to seek an order on MGA's non-compliance with Order No. 33 that MGA finally produced the concealed Larian-O'Connor email, and 94 other long-withheld documents, on August 21, 2009.[33]

   The Court Issues An Order to Show Cause.  On August 31, 2009, the Court issued an Order to Show Cause regarding the concealed Larian-O'Connor email. Having reviewed the newly-produced document in connection with Mattel's Motion for Clarification,[34] the Court found that the "document has clear relevance to the claims and defenses at issue in the Phase 1 trial," and that the "withholding of this document under a claim of privilege concerns the Court."[35]  The Court ordered counsel for the MGA Parties to appear and show cause "why sanctions should not be imposed for their repeated failure to produce this document at an earlier date."[36]

   Mattel Serves Requests for Admission Related to the Larian-O'Connor Email.  On September 11, 2009, Mattel served Requests For Admission to Larian and MGA Re the Court's Order to Show Cause Dated August 31, 2009.[37]  On September 14, 2009, Mattel filed an *ex parte* Application to expedite responses for those requests in light of the impending hearing on the Court's Order to Show Cause regarding

---

[32] See August 4, 2009 Letter from C. Lock to B. Proctor, Watson Decl., Ex. 20.
[33] See August 21, 2009 Letter from C. Lock to B. Proctor, Watson Decl., Ex. 21.
[34] August 31, 2009 Order, at 2, Watson Decl., Ex. 22.
[35] Id. at 3.
[36] Id.
[37] Mattel, Inc.'s Requests for Admission to MGA Re the Court's Order to Show Cause Dated August 31, 2009, Watson Decl., Ex. 23; Mattel, Inc.'s Requests for Admission to Isaac Larian Re the Court's Order to Show Cause Dated August 31, 2009, Watson Decl., Ex. 24.

1   MGA's improper withholding of the Larian-O'Connor email.[38]  In opposing Mattel's

2   Application, ███████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████

4   ████████████[39]  In Order No. 66, ████████████████████████████

5   ███████████████████████████████████████████████████████████████

6   ███████████████████████.[40]

7           The Court's September 22, 2009 Order Further Confirms the Relevance of

8   the Circumstances Surrounding the Withholding of the Larian-O'Connor Email.  The

9   Court held a hearing on September 22, 2009 regarding the OSC to MGA's counsel

10  regarding the MGA Parties' improper withholding of the Larian-O'Connor email.  The

11  Court ████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████

16  ████████████████████.".[42]

17          In responding to the Court's OSC, counsel for the MGA Parties informed

18  the Court that counsel "████████████████████████████████████████

19  ███████████████████████████████████████████████████████████████

20

21

---

22      [38]   See Mattel, Inc.' *Ex Parte* Application for an Order Shortening Time for MGA

23  and Larian to Respond to Requests for Admission and for Production of Privilege Log,

24  dated Sept. 14, 2009, Watson Decl., Ex. 25.

        [39]   See MGA Parties' Opposition to Mattel, Inc.'s *Ex Parte* Application for an

25  Order Shortening Time for MGA and Larian to Respond to Requests for Admission and

26  for Production of Privilege Log, dated Sept. 15, 2009, Watson Decl., Ex. 26.

        [40]   Order No. 66 at 7, Watson Decl., Ex. 1.

27      [41]   September 22, 2009 Sealed Hearing Tr. at 8:17-9:2, Watson Decl., Ex. 27.

28      [42]   Id.

1     █████████████████████████████.[43] In fact, ████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5     ████[44]   In its September 22 Order, the Court specifically noted that the Larian-

6 O'Connor email and issues surrounding its withholding remain open for further

7 discovery and adjudication, including potentially evidentiary and other case-based

8 sanctions.[45]

9            <u>MGA and Larian Defy the Discovery Master's Order to Respond to</u>

10 <u>Mattel's RFAs.</u>  On October 13, 2009, MGA and Larian served primarily objections to

11 Mattel's RFAs concerning the Larian-O'Connor email.[46]  Of the 87 RFAs Mattel

12 served, MGA and Larian provided no substantive response at all to 78 of them.[47]  Of

13 the nine remaining RFAs MGA and Larian responded to eight with the following non-

14 answer: "[MGA/Larian] admits that it has conducted a good faith diligent search and

15 reasonable inquiry for document responsive to Mattel's discovery requests . . . and has

16 provided those documents to counsel for MGA and Mr. Larian."  In all, of the 87

17 RFAs, the MGA Parties admitted or denied only one Request, and even then qualified

18 that admission with nearly a page of objections.

19 ──────────────

20     [43]  <u>Id.</u> at 6:15-17; 22:22-23:4.

    [44]  <u>Id.</u> at 13:4-10.

21     [45]  September 22, 2009 Order at 1-2, Watson Decl., Ex. 42.

22     [46]  MGA's Response to Mattel, Inc.'s Request for Admission to MGA related to MGA's Assertion of Privilege to Withhold Non-Privileged Larian Email

23 Communications That Are the Subject of the Court's Order to Show Cause Dated

24 August 31, 2009, dated October 13, 2009 ("MGA's Responses"), Watson Decl., Ex. 28; Larian's Response to Mattel, Inc.'s Request for Admission to MGA related to MGA's

25 Assertion of Privilege to Withhold Non-Privileged Larian Email Communications That

26 Are the Subject of the Court's Order to Show Cause Dated August 31, 2009, dated October 13, 2009 ("Larian's Responses"), Watson Decl., Ex. 29.

27     [47]  <u>See</u> MGA's Responses, Watson Decl., Ex. 28; Larian's Responses, Watson

28 Decl., Ex. 29.

**Argument**

I.   **THE DISCOVERY MASTER HAS ALREADY ORDERED MGA TO RESPOND TO EACH OF THE REQUESTS**

Discovery Master Order No. 66 ███████████████████

███████████████████████████████████████████████

███████████████ ,"[48]   In addition, the Court expressly ruled that the issues surrounding the Larian-O'Connor email remain open for discovery and adjudication going forward. See September 22, 2009 Order at 1-2.[49] Among other things, the Requests are directly relevant to whether Larian committed perjury in his Phase 1 trial testimony, which is part of Mattel's RICO claims.[50] They are also relevant to the decision to withhold the email, which also goes to Mattel's claim of obstruction of justice.  See United States v. Lench, 806 F.2d 1443, 1445 (9th Cir. 1986) (that defendant "failed to provide the information requested and lied" about it "is all that is necessary to obstruct justice").  Notwithstanding the MGA Parties' asserted relevance and privilege objections, ███████████████████████

███████████████ ."  Id. (emphasis added).  MGA's refusal to admit or deny 86 of 87 the RFAs violates that Order, and full responses should be ordered again.

II.   **THE REQUESTS SEEK RELEVANT, NON-PRIVILEGED INFORMATION**

The MGA Parties object to every RFA on the grounds of the attorney-client privilege. ███████████████████████

███████████████ , the MGA Parties cannot sustain their burden on this argument.

───────────────

[48]   Order No. 66 at 7, Watson Decl., Ex. 1.
[49]   Watson Decl., Ex. 42.
[50]   See Mattel's Third Amended Answer and Counterclaims, dated May 22, 2009, at ¶¶ 103, 104, 108, 151, Watson Decl., Ex. 43.

1  Weil v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18, 25 (9th
2  Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-
3  client privilege applies rests not with the party contesting the privilege, but with the
4  party asserting it."); Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc., 2008 WL
5  199709, at *3 (W.D. Tenn. Jan. 23, 2008) ("Mere, conclusory statements that the
6  privilege applies is not sufficient to meet [its] burden.").

7  ### A.    **Many Requests Seek Purely Factual Information**

8  Many of the RFAs seek indisputably factual information; many of them
9  facts MGA has conceded elsewhere yet refuses to admit to here. For example, in
10  the Requests directed at MGA:[51]

11  • RFA Nos. 1-4 seek admissions that the Larian-O'Connor email
12  was not produced prior to the date of the Phase 1 trial and that MGA was
13  aware that the email had previously been ordered produced;[52]

14  • RFA Nos. 23-26 seek admissions regarding when the email
15  appeared on MGA's privilege logs;[53]

16  • RFA Nos. 27-42 seek to determine whether MGA has now
17  produced all emails that are part of the Larian-O'Connor email chain and
18  whether certain log entries that appear to be the Larian-O'Connor email are
19  duplicates of each other.[54]

20  These Requests simply seek to establish facts about the Larian-O'Connor
21  email and the timing of its production (or lack thereof). They do not implicate the
22  privilege at all. Moreover, it is black letter law that "questions related to the existence
23  of attorney-client communications" are not protected by the privilege. Markwest
24

25  [51] See Mattel, Inc.'s Requests to MGA for Admission Re the Court's Order to
26  Show Cause Dated August 31, 2009, dated September 11, 2009, Watson Decl. Ex. 23.
27  [52] These correspond to RFAs to Larian Nos. 2-4, Watson Decl. Ex. 24.
   [53] These correspond to RFAs to Larian Nos. 26-29, Watson Decl. Ex. 24.
28  [54] These correspond to RFAs to Larian Nos. 30-45, Watson Decl. Ex. 24.

1 | Hydrocarbon, Inc. v. Liberty Mutual Ins. Co., 2007 WL 1106105, at *4 (D. Colo. April
2 | 12, 2007); see also New Jersey v. Sprint Corp., 2009 WL 1917412, at *18 (D. Kan. July
3 | 2, 2009) ("Questions regarding the existence, extent, or waiver of an attorney-client
4 | privilege or work-product immunity are not themselves privileged or protected");
5 | B.F.G. of Illinois, Inc. v. Ameritech Corp., 2001 WL 1414468, at *4 (N.D. Ill. Nov. 13,
6 | 2001) ("plaintiffs' counsel's proper questions regarding foundational facts going to the
7 | assertion of privilege were improperly objected to and the witness instructed not to
8 | answer"); Malletier v. Dooney & Bourke, Inc., 2006 WL 3851150, at *1 (S.D.N.Y.
9 | Dec. 18, 2006) (declarations submitted to support claim of privilege were improperly
10 | redacted because "plaintiff has effectively eliminated from the declarations much of the
11 | basic information that would be required to appear on a privilege log, together with the
12 | foundational facts that its adversary would be entitled to discover in order to test a
13 | privilege claim.").

14 | In fact, MGA has already conceded some of the facts sought by these
15 | RFAs, yet it refuses to admit them in discovery. For example, MGA refuses to answer
16 | RFAs 1-4, concerning when and whether the Larian-O'Connor email was produced to
17 | Mattel. ████████████████████████████████████████████████

18 | ████████████████████████████████████████████████

19 | ████████████████████████████████████████████████

20 | ████████████.[55]  MGA has no basis to refuse to admit facts for
21 | purposes of discovery when it obviously knows the answers. Although MGA conceded
22 | these facts in responding to the Court, Mattel is also entitled to receive admissions.
23 | Admissions, unlike pleadings or other evidentiary statements, are "binding upon the
24 | party making them. They may not be controverted at trial or on appeal. Indeed, they
25 | are 'not evidence at all but rather have the effect of withdrawing a fact from
26 |

27 | [55]  September 22, 2009 Sealed Hearing Tr. at 4:19-24; 8:17-9:11, 11:14-22 Watson
28 | Decl., Ex. 27.

-13-

1  contention.'" Keller v. Untied States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (quoting

2  Michael H. Graham, Federal Practice and Procedure: Evidence § 6726).

### B.    The Remaining RFAs Seek Discoverable Facts and Opinions Related to MGA's Assertion of Privilege

5         MGA Request Nos. 5-22 seek to establish facts concerning MGA's beliefs

6  about whether the Larian-O'Connor email is privileged, and when MGA formed those

7  beliefs.[56]  Parties routinely take positions as to whether documents are privileged

8  without invading the attorney-client or work product privileges; in fact, that is precisely

9  what a privilege log is. See Fox v. California Sierra Financial Servs., 120 F.R.D. 520,

10 524 (N.D. Cal. 1988) ("information identifying a communication for which a claim of

11 privilege is made is not itself privileged").[57]  Indeed, MGA has conceded that it does

12 not believe that the Larian-O'Connor email is privileged (and hence MGA produced it

13 on August 21, 2009),[58] yet it refuses to so admit here.

14

15    [56]  These correspond to Larian Request Nos. 5-25.

16    [57]  Likewise, MGA's boilerplate burden objections are meritless. A party seeking to
17 establish undue burden must support its claim with specific proof. See Jackson v.
   Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29 (D. Nev. 1997) (party claiming
18 a discovery request is "unduly burdensome must allege specific facts which indicate the
   nature and extent of the burden, usually by affidavit or other reliable evidence");
19 Horsewood v. Kids "R" Us, 1998 WL 526589, at *4 (D. Kan. Aug. 13, 1998) ("Mere
20 assertions by plaintiff of harassment and intimidation provide no evidence of undue
   burden."); Bible v. Rio Props., Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007) ("Contrary to
21 defendant's assertion, the party who resists discovery has the burden to show discovery
22 should not be allowed, and has the burden of clarifying, explaining, and supporting its
   objections."); Discovery Master Order No. 46, dated August 14, 2009, at 33 ("[T]he
23 party claiming that a discovery request is unduly burdensome must allege specific facts
24 which indicate the nature and extent of the burden, usually by affidavit or other reliable
   evidence.") (citing Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29
25 (D. Nev. 1997).   Responding to the RFAs at issue here can hardly be unduly
26 burdensome, especially in light of their indisputable relevance.
   [58]  See Letter from Cynthia Lock to Dylan Watson, dated August 21, 2009
27 (attaching the Larian-O'Connor email and 94 other previously withheld documents),
28 Watson Decl., Ex. 30.

1        In addition, these RFAs appropriately seek the knowledge of both the
2 MGA Parties and their counsel. A recipient of requests for admission is required to
3 respond informed by the knowledge of its counsel. Christian v. Janed Enterprises, Inc.,
4 2009 WL 1796074, at *2 (M.D. Ga. June 23, 2009) (party required to answer requests
5 for admission with knowledge in possession of the party and its counsel); Hise v
6 Lockwood Grader Corp., 153 F Supp 276, 278 (D. Neb. 1957) (plaintiff required to
7 respond to requests for admission with facts only in the possession of counsel).

8        Previous Discovery Master orders are on point. Mattel served RFAs on
9 Bryant related to his opinions about the enforceability of his employment contract with
10 Mattel and the copyrights related to Bratz. In compelling responses, the prior
11 Discovery Master overruled Bryant's privilege and "legal conclusion" objections and
12 ruled that "requests for admission calling for application of law to facts are permissible"
13 and that "[t]he fact that Bryant may need to consult with counsel to respond to the
14 requests does not make the response privileged."[59] Similarly, the prior Discovery
15 Master compelled MGA to respond to RFAs seeking information about MGA's
16 copyright registrations and the accuracy of MGA's statements to the press, emphasizing
17 that "requests calling for legal conclusions are permissible" so long as they are related
18 to the facts of the case.[60] The Discovery Master also reiterated that it is immaterial that
19 MGA may need to consult with counsel to answer the RFAs because "[t]o hold
20 otherwise would effectively gut the provisions of Rule 36 authorizing requests that call

21

22

23     [59] Phase 1 Discovery Master Order Granting Mattel's Motion to Compel Carter
24 Bryant to Answer Requests for Admission or to Order Requests Admitted, dated
25 August 21, 2007, at 6 (citing Convergent Bus. Sys., Inc. v. Diamond Reporting, Inc.,
1989 WL 92038, at *1 (E.D.N.Y. 1988)), Watson Decl., Ex. 31.
26     [60] Discovery Master Order Granting Mattel's Motion to Compel MGA to Answer
27 Requests for Admission, dated August 21, 2007, at 7 (citing Marchand v. Mercy Med.
Ctr., 22 F.3d 933, 937 (9th Cir. 1994); First Options of Chicago, Inc.v. Wallentsein,
28 1996 WL 729816 (E.D. Pa. 1996)), Watson Decl., Ex. 32.

1 for the application of law to fact." Id. The MGA Parties cannot hide behind
2 previously-rejected arguments.

3         Nor do RFAs 18-23, which seek information about whether MGA claims
4 (or ever claimed) that the Larian-O'Connor email reflected legal advice, invade the
5 privilege.  The privilege is not invaded by discovery that seeks to establish the
6 involvement of an attorney in a communication over which privilege is asserted.
7 Markwest Hydrocarbon, 2007 WL 1106105 at *2 (questions related to the involvement
8 of an attorney in a communication are not privileged).  Mattel is entitled to MGA's
9 position as to whether this document was withheld based on a claim of legal advice.

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ████████[61] Again, the MGA Parties cannot refuse to admit facts in discovery
15 after conceding them to the Court to avoid sanctions.

16         In any event, by voluntarily producing the email, MGA waived any
17 privilege as to that communication and the facts surrounding it.  Griffith v. Davis, 161
18 F.R.D.  687, 698 (C.D. Cal. 1995) ("Voluntary  disclosure  of  a  privileged
19 communication to a third person destroys confidentiality and constitutes a waiver of the
20 privilege.") (citing Clady v. County of Los Angeles, 770 F.2d 1421, 1433 (9th Cir.
21 1985)); Hergenroeder v. Travelers Property Cas. Ins. Co., 249 F.R.D. 595, 605 n.4
22 (E.D. Cal. 2008) ("It is well settled that when the holder of a privilege voluntarily
23 discloses the privileged material, the voluntary disclosure constitutes a waiver of the
24 privilege.") (citing Wright & Graham, 26A Federal Practice and Procedure § 5726

25 _____

26   [61] September 22, 2009 Sealed Hearing Tr. at 22:22-23:4, Watson Decl., Ex. 27; see
27 also id. at 13:4-10 (THE COURT: "And obviously Victoria O'Conner is not an
attorney; the argument is that she was conveying – without getting into the substance of
28 it – that she was conveying legal advice, reminding Mr. Larian of legal advice.");

1 (1992)); Hartford Fire Ins. Co. v. Garvey, 109 F.R.D. 323, 328 (N.D. Cal. 1985)

2 ("None of the documents reveal such an attorney client relationship on their face.

3 Furthermore, had any privilege existed, it would appear that [plaintiff] … voluntarily

4 waived the privilege by producing the documents"); Fox v. California Sierra Financial

5 Servs., 120 F.R.D. 520, 527 (N.D. Cal. 1988) (voluntary disclosure to third party

6 waived attorney-client privilege "as to the disclosed information and all information on

7 the same subject.") (citing Weil v. Investment/Indicators, Research & Management,

8 Inc., 647 F.2d 18, 24 (9th Cir. 1981)). Whatever privilege might have attached to this

9 email and any legal advice it reflects is now gone by its voluntary disclosure by MGA.

10 **C. The Requests Are Not Vague**

11 MGA and Larian assert conclusory and meritless "vagueness" objections

12 to virtually every Request, claiming, for example, to be confused by Requests asking

13 whether MGA or Larian have "stated" something. See MGA RFA Nos. 21, 22; Larian

14 RFA Nos. 24, 25. MGA and Larian also inconsistently claim that the phrase "the

15 portion of the document attached hereto as Exhibit 1 containing the email exchange

16 between Isaac Larian and Victoria O'Connor" as used in many of the Requests is vague.

17 In some cases, MGA and Larian object that this phrase is somehow vague, in others,

18 they apparently fully understand it. Compare Larian RFA Nos. 18-23 with Larian RFA

19 Nos. 24, 25; Compare MGA RFA Nos. 18-20 with MGA RFA Nos. 21, 22. MGA and

20 Larian also claim that references to "the document" are somehow vague – but Mattel

21 attached the Larian-O'Connor email as an exhibit to its Requests and specifically

22 referred to it in every relevant request. As explained in the Separate Statement, these

23 objections are meritless and should be overruled. See Pulsecard, Inc. v. Discover Card

24 Servs., Inc., 168 F.R.D. 295, 310 (D. Kan. 1996) (overruling vague and ambiguous

25 objections because "[r]espondents should exercise reason and common sense to

26 attribute ordinary definitions to terms and phrases utilized in interrogatories."). The

27 Requests are clear, and MGA cannot feign ignorance as to the admissions Mattel seeks.

28

1

2

## **Conclusion**

3    For the foregoing reasons, Mattel respectfully requests that its Motion be granted.

4

5    DATED:  October 30, 2009          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES. LLP
6

7                                      By /s/ Scott L. Watson
8                                          Scott L. Watson
                                           Attorneys for Mattel. Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28