# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 2

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     Michael T. Zeller (Bar No. 196417)
      Shane H. McKenzie (Bar No. 228978)
3   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
4   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
5
    Attorneys for Plaintiff and Counter-Defendant
6   Mattel, Inc.

7

8                      UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11

12   MATTEL, INC., a Delaware corporation,  )  Case No. CV 04-09059 NM (RNBx)
                                            )
13                    Plaintiff,            )
                                            )  MATTEL, INC.'S FIRST SET OF
14          v.                              )  REQUESTS FOR PRODUCTION
                                            )  OF DOCUMENTS AND
15   CARTER BRYANT, an individual           )  TANGIBLE THINGS TO MGA
                                            )  ENTERTAINMENT INC.
16                    Defendant.            )
                                            )
17   _____)
                                            )
18   CARTER BRYANT, on behalf of himself,  )
     all present and former employees of    )
19   Mattel, Inc., and the general public,  )
                                            )
20                    Counterclaimant,      )
                                            )
21          v.                              )
                                            )
22   MATTEL, INC., a Delaware corporation,  )
                                            )
23                    Counter-defendant.    )
                                            )
24

25

26

27

28
                                          EXHIBIT ___2___
                                          PAGE ___16___

07209/642197.1



1    Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>, Plaintiff
2  and Counter-Defendant Mattel, Inc. hereby requests that MGA Entertainment Inc.
3  make available for inspection and copying the following documents and things
4  within thirty days of the service of these Requests, at the offices of Quinn Emanuel
5  Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los
6  Angeles, California 90036.

7    These Requests shall be deemed to be continuing, and MGA
8  Entertainment Inc. shall be obligated to supplement its responses to these requests
9  at such times and to the extent required by <u>Rule</u> 26(e) of the <u>Federal Rules of Civil</u>
10  <u>Procedure</u>.

11

12    <u>DEFINITIONS</u>

13

14    For purposes of this Request for Production of Documents:

15    A.    "YOU" or "YOUR" means MGA Entertainment Inc. and any of
16  its current or former employees, officers, directors, agents, representatives,
17  attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and
18  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
19  authority or subject to its control.

20    B.    "MATTEL" means Mattel, Inc. and any of its current or former
21  employees, officers, directors, agents, representatives, attorneys, subsidiaries,
22  divisions, affiliates, predecessors-in-interest and successors-in-interest, and any
23  other PERSON acting on its behalf, pursuant to its authority or subject to its
24  control.

25    C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
26  "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>
27  <u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not
28  limited to, all writings and records of every type and description including, but not

EXHIBIT _____ 2

PAGE   1 7

-2-

FIRST REQUEST FOR PRODUCTION TO MGA

07209/642197.1

1  limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,
2  electronic mail ("e-mail"), records of telephone conversations, handwritten and
3  typewritten notes of any kind, statements, reports, minutes, recordings, transcripts
4  and summaries of meetings, voice recordings, pictures, photographs, drawings,
5  computer cards, tapes, discs, printouts and records of all types, studies, instruction
6  manuals, policy manuals and statements, books, pamphlets, invoices, canceled
7  checks and every other device or medium by which or through which information
8  of any type is transmitted, recorded or preserved.  Without any limitation on the
9  foregoing, the term "DOCUMENT" shall include all copies that differ in any
10 respect from the original or other versions of the DOCUMENT, including, but not
11 limited to, all drafts and all copies of such drafts or originals containing initials,
12 comments, notations, insertions, corrections, marginal notes, amendments or any
13 other variation of any kind.

14        D.    "REFER OR RELATE TO" means constituting, embodying,
15 containing, referring to, commenting on, evidencing, regarding, discussing,
16 describing, mentioning, reflecting, expressing, pertaining to, concerning,
17 supporting, contradicting, negating, revoking or otherwise relating to in any
18 manner.

19        E.    "PERSON" or "PERSONS" means all natural persons,
20 partnerships, corporations, joint ventures and any kind of business, legal or public
21 entity or organization, as well as its, its or her agents, representatives, employees,
22 officers and directors and any one else acting on its, its or her behalf, pursuant to
23 its, its or her authority or subject to its, its or her control.

24        F.    "BRYANT" means Carter Bryant, any of his current or former
25 agents, representatives, attorneys, employees, partners, joint venturers,
26 predecessors-in-interest and successors-in-interest, and any other PERSON acting
27 on his behalf, pursuant to his authority or subject to his control.
28

EXHIBIT ___2___
PAGE ___18___

FIRST REQUEST FOR PRODUCTION TO MGA

1    G.    "BRATZ" means any project ever known by that name
2  (whether in whole or in part and regardless of what such project is or has been
3  also, previously or subsequently called) and any doll or any portion thereof that is
4  now or has ever been known as, or sold or marketed under, the name or term
5  "Bratz" (whether in whole or in part and regardless of what such doll is or has
6  been also, previously or subsequently called) or that is now or has ever been sold
7  or marketed as part of the "Bratz" line, and all prototypes, models, samples and
8  versions of such doll or any portion thereof.
9    H.    "ANGEL" means any project that is the subject of
10  MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,
11  MGA000724-28 and MGA000734, and any doll (sometimes purportedly called
12  "Angel," "Angel Faces" and/or "Prayer Angels") or any portion thereof that is the
13  subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,
14  MGA000724-28 and MGA000734, including all prototypes, models, samples and
15  versions of such doll(s) or any portion thereof.  Without limiting the generality of
16  the foregoing, "ANGEL" means any project or any doll or any portion thereof that
17  is the subject of MGA000706-08, MGA000710-12, MGA000714-16,
18  MGA000718-20, MGA000724-28 and MGA000734, regardless of what any such
19  project or doll has in fact been called, and regardless of what any such project or
20  doll is or has been also, previously or subsequently called.
21    I.    "DESIGNS" means any and all works, designs, artwork,
22  sketches, drawings, illustrations, representations, depictions, blueprints,
23  schematics, diagrams, descriptions, sculptures, prototypes, models, samples,
24  reductions to practice, developments, know-how, ideas, concepts, inventions
25  and/or improvements, as well as all other items, things and DOCUMENTS in
26  which any of the foregoing are or have been expressed, embodied, contained,
27  fixed or reflected in any manner, whether in whole or in part.
28

EXHIBIT 2
PAGE 19

FIRST REQUEST FOR PRODUCTION TO MGA

1    J.    "COMMUNICATION" or "COMMUNICATIONS" means and

2 includes any disclosure, transfer or exchange of information between two or more

3 PERSONS, whether orally or in writing, including, without limitation, any

4 conversation or discussion by means of meeting, letter, telephone, note,

5 memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic

6 or other medium, including without limitation in written, audio or video form.

7    K.    The singular form of a noun or pronoun includes within its

8 meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

9 the masculine form of a pronoun also includes within its meaning the feminine

10 form of the pronoun so used, and *vice versa*; the use of any tense of any verb

11 includes also within its meaning all other tenses of the verb so used, whenever

12 such construction results in a broader request for information; and "and" includes

13 "or" and *vice versa*, whenever such construction results in a broader disclosure of

14 documents or information.

15

16                            INSTRUCTIONS

17

18    A.    Unless otherwise specified, these requests call for

19 DOCUMENTS prepared on or after January 1, 1995 through the present.

20 Documents shall be produced in their original file folders, or in lieu thereof, any

21 writing on the file folder from which each such document is taken shall be copied

22 and appended to such document and the person for whom or department, division,

23 or office for which the document or the file folder is maintained shall be

24 identified.

25    B.    YOU are to produce all DOCUMENTS requested hereby that

26 are in YOUR possession, custody and control.

27    C.    In the event that any document called for by these requests is to

28 be withheld on the basis of a claim of privilege or immunity from discovery, that

07209/642197.1

-5-

EXHIBIT _____2_____

PAGE ___20___

FIRST REQUEST FOR PRODUCTION TO MGA

1  document is to be identified by stating (i) any addressor and addressee; (ii) any

2  indicated or blind copy; (iii) the document's date, subject matter, number of pages,

3  and attachments or appendices; (iv) all persons to whom the document was

4  distributed, shown, or explained; (v) its present custodian; and (vi) the nature of

5  the privilege or immunity asserted.

6       D.   In the event that any document called for by these requests has

7  been destroyed or discarded, that document is to be identified by stating: (i) any

8  addressor and addressee; (ii) any indicated or blind copies; (iii) the document's

9  date, subject matter, number of pages, and attachments or appendices; (iv) all

10  persons to whom the document was distributed, shown, or explained; (v) the date

11  of destruction or discard, manner of destruction or discard, and reason for

12  destruction or discard; (vi) the persons who were authorized to carry out such

13  destruction or discard; and (vii) whether any copies of the document presently

14  exist and, if so, the name of the custodian of each copy.

15

16                    REQUESTS FOR PRODUCTION

17

18  REQUEST FOR PRODUCTION NO. 1:

19       All DOCUMENTS that REFER OR RELATE TO any agreement or

20  contract between YOU and BRYANT, including without limitation all drafts

21  thereof and all actual or proposed amendments, modifications and revisions

22  thereto.

23

24  REQUEST FOR PRODUCTION NO. 2:

25       All DOCUMENTS that REFER OR RELATE TO the performance of

26  any agreement or contract between YOU and BRYANT.

27

28

EXHIBIT __2__
PAGE __21__

07209/642197.1

-6-

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 3:

ALL DOCUMENTS that REFER OR RELATE TO the agreement dated as of September 18, 2000 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 4:

ALL DOCUMENTS that REFER OR RELATE TO the Modification and Clarification of the Agreement dated as of September 18, 2000 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 5:

ALL DOCUMENTS that REFER OR RELATE TO the agreement dated April 2001 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS prepared, created, received or transmitted (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO BRYANT.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS that REFER OR RELATE TO any work, activities or services, including without limitation any freelance work or consulting services, that BRYANT performed for or with YOU or on YOUR

EXHIBIT 2
PAGE 22

07209/642197.1

-7-

FIRST REQUEST FOR PRODUCTION TO MGA

1 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

2 prepared, created, received or transmitted, whether in whole or in part).

3

4 REQUEST FOR PRODUCTION NO. 8:

5          All DOCUMENTS that REFER OR RELATE TO any work,

6 activities or services, including without limitation any freelance work or

7 consulting services, that Anna Rhee performed for or with YOU or on YOUR

8 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

9 prepared, created, received or transmitted, whether in whole or in part).

10

11 REQUEST FOR PRODUCTION NO. 9:

12          All DOCUMENTS that REFER OR RELATE TO any work,

13 activities or services, including without limitation any freelance work or

14 consulting services, that Veronica Marlow performed for or with YOU or on

15 YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT

16 was prepared, created, received or transmitted, whether in whole or in part).

17

18 REQUEST FOR PRODUCTION NO. 10:

19          All DOCUMENTS that REFER OR RELATE TO any work,

20 activities or services, including without limitation any freelance work or

21 consulting services, that Sarah Halpern performed for or with YOU or on YOUR

22 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

23 prepared, created, received or transmitted, whether in whole or in part).

24

25 REQUEST FOR PRODUCTION NO. 11:

26          All DOCUMENTS that REFER OR RELATE TO any work,

27 activities or services, including without limitation any freelance work or

28 consulting services, that Jesse Ramirez performed for or with YOU or on YOUR

EXHIBIT 2
PAGE 23

07209/642197.1

-8-

FIRST REQUEST FOR PRODUCTION TO MGA

1 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

2 prepared, created, received or transmitted, whether in whole or in part).

3

4 REQUEST FOR PRODUCTION NO. 12:

5          All DOCUMENTS that REFER OR RELATE TO any work,

6 activities or services, including without limitation any freelance work or

7 consulting services, that Margaret Hatch (also known as Margaret Leahy and/or

8 Margaret Hatch-Leahy) performed for or with YOU or on YOUR behalf prior to

9 January 1, 2001 (regardless of when any such DOCUMENT was prepared,

10 created, received or transmitted, whether in whole or in part).

11

12 REQUEST FOR PRODUCTION NO. 13:

13          All DOCUMENTS that REFER OR RELATE TO any work,

14 activities or services, including without limitation any freelance work or

15 consulting services, that Elise Cloonan performed for or with YOU or on YOUR

16 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

17 prepared, created, received or transmitted, whether in whole or in part).

18

19 REQUEST FOR PRODUCTION NO. 14:

20          All agreements and contracts between YOU and Anna Rhee,

21 including without limitation all drafts thereof and amendments, modifications and

22 revisions thereto.

23

24 REQUEST FOR PRODUCTION NO. 15:

25          All DOCUMENTS that REFER OR RELATE TO any agreement or

26 contract between YOU and Anna Rhee, including without limitation all

27 COMMUNICATIONS that REFER OR RELATE thereto.

28

EXHIBIT _2_

PAGE _24_

-9-

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 16:**

All agreements and contracts between YOU and Veronica Marlow, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Veronica Marlow, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

**REQUEST FOR PRODUCTION NO. 18:**

All agreements and contracts between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all drafts thereof and amendments, modifications and revisions thereto.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

**REQUEST FOR PRODUCTION NO. 20:**

All agreements and contracts between YOU and Sarah Halpern, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

EXHIBIT _2_
PAGE _25_

-10-

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Sarah Halpern, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 22:

All agreements and contracts between YOU and Jesse Ramirez, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 23:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Jesse Ramirez, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 24:

All agreements and contracts between YOU and Elise Cloonan, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 25:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Elise Cloonan, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

EXHIBIT _2_
PAGE __26__

REQUEST FOR PRODUCTION NO. 26:

All DOCUMENTS that REFER OR RELATE TO DESIGNS that BRYANT produced, prepared, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 27:

All DOCUMENTS that REFER OR RELATE TO DESIGNS produced, prepared, created, authored, conceived of or reduced to practice prior to January 1, 2001 by BRYANT, whether alone or jointly with others, in which YOU have purported at any time to purchase, acquire or own any right, title or interest (whether in whole or in part).

REQUEST FOR PRODUCTION NO. 28:

All DOCUMENTS that REFER OR RELATE TO DESIGNS produced, prepared, created, authored, conceived of or reduced to practice prior to January 1, 2001 by Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), whether alone or jointly with others, in which YOU have purported at any time to purchase, acquire or own any right, title or interest (whether in whole or in part).

REQUEST FOR PRODUCTION NO. 29:

All DOCUMENTS, including without limitation all COMMUNICATIONS between YOU and any PERSON, that REFER OR RELATE TO any agreement or contract between BRYANT and Mattel, Inc.

REQUEST FOR PRODUCTION NO. 30:

All DOCUMENTS, including without limitation all COMMUNICATIONS between YOU and any PERSON, that REFER OR

EXHIBIT 2
PAGE 27

07209/642197.1

-12-

FIRST REQUEST FOR PRODUCTION TO MGA

1  RELATE TO any agreement or contract between Margaret Hatch (also known as
2  Margaret Leahy and/or Margaret Hatch-Leahy) and Mattel, Inc.
3
4  REQUEST FOR PRODUCTION NO. 31:
5        All COMMUNICATIONS between YOU and BRYANT that REFER
6  OR RELATE TO Mattel, Inc. or any officer, director, employee or representative
7  of Mattel, Inc.
8
9  REQUEST FOR PRODUCTION NO. 32:
10       All DOCUMENTS prepared, written, transmitted or received
11  (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE
12  TO BRATZ.
13
14  REQUEST FOR PRODUCTION NO. 33:
15       All DOCUMENTS that REFER OR RELATE TO BRATZ that
16  REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when
17  such document was prepared, written, transmitted or received, whether in whole or
18  in part).
19
20  REQUEST FOR PRODUCTION NO. 34:
21       All DOCUMENTS prepared, written, transmitted or received
22  (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE
23  TO ANGEL.
24
25  REQUEST FOR PRODUCTION NO. 35:
26       All DOCUMENTS that REFER OR RELATE TO ANGEL that
27  REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when
28

EXHIBIT ___2___
PAGE ___28___

FIRST REQUEST FOR PRODUCTION TO MGA

1  such document was prepared, written, transmitted or received, whether in whole or

2  in part).

3

4  REQUEST FOR PRODUCTION NO. 36:

5         All DOCUMENTS that REFER OR RELATE TO the origin(s),

6  conception or creation of BRATZ, including without limitation all DOCUMENTS

7  that REFER OR RELATE TO the timing of, and the method and manner in which,

8  BRATZ first came to YOUR attention.

9

10  REQUEST FOR PRODUCTION NO. 37:

11        All declarations, affidavits and other sworn written statements of any

12  other type or form by YOU that REFER OR RELATE TO BRATZ (other than

13  those previously filed and served in this action).

14

15  REQUEST FOR PRODUCTION NO. 38:

16        All transcripts and video and/or audio recordings of statements made

17  by YOU under oath, including without limitation all deposition transcripts, trial

18  transcripts and arbitration transcripts, that REFER OR RELATE TO BRATZ

19  (other than those taken in this action when Mattel, Inc.'s counsel was in

20  attendance).

21

22  REQUEST FOR PRODUCTION NO. 39:

23        All declarations, affidavits and other sworn written statements of any

24  other type or form by any PERSON that REFER OR RELATE TO ANGEL (other

25  than those previously filed and served in this action).

26

27

28

EXHIBIT _____$\partial$_____

PAGE _____ 29

07209/642197.1

-14-

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 40:**

All transcripts and video and/or audio recordings of statements made by any PERSON under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, that REFER OR RELATE TO ANGEL (other than those taken in this action when Mattel, Inc.'s counsel was in attendance).

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS that REFER OR RELATE TO BRATZ and/or ANGEL filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad Larian against Isaac Larian, including without limitation all declarations, affidavits and sworn testimony given by any PERSON in such suit or arbitration proceedings.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS that REFER OR RELATE TO any payment made to or on behalf of BRYANT prior to October 21, 2000 or for work or services performed by BRYANT prior to October 21, 2000 regardless of when such payment was actually made.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS that REFER OR RELATE TO any payment made to or on behalf of BRYANT for DESIGNS that BRYANT assigned or transferred to YOU prior to October 21, 2000, regardless of when such payment was actually made.

EXHIBIT 2
PAGE 30

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 44:

2          All DOCUMENTS that REFER OR RELATE TO invoices submitted

3  by BRYANT to YOU prior to January 31, 2001.

4

5  REQUEST FOR PRODUCTION NO. 45:

6          All of YOUR royalty statements to or for BRYANT.

7

8  REQUEST FOR PRODUCTION NO. 46:

9          All DOCUMENTS that REFER OR RELATE TO BRYANT'S

10  participation in the conception, creation, design, development, sculpting, tooling,

11  production or manufacture of BRATZ.

12

13  REQUEST FOR PRODUCTION NO. 47:

14          All DOCUMENTS that REFER OR RELATE TO BRYANT'S

15  participation in the conception, creation, design, development, sculpting, tooling,

16  production or manufacture of ANGEL.

17

18  REQUEST FOR PRODUCTION NO. 48:

19          All non-privileged COMMUNICATIONS between YOU and any

20  PERSON that REFER OR RELATE TO this action.

21

22  REQUEST FOR PRODUCTION NO. 49:

23          All DOCUMENTS that REFER OR RELATE TO any

24  indemnification that BRYANT has sought, proposed, requested or obtained in

25  connection with this action.

26

27

28

EXHIBIT  2
PAGE  31

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS that REFER OR RELATE TO any indemnification that YOU have sought, proposed, requested or obtained in connection with this action.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS that REFER OR RELATE TO each and every sculpt of BRATZ (including without limitation any model, prototype or sample thereof) prior to June 1, 2001.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS that REFER OR RELATE TO each and every sculpt of ANGEL (including without limitation any model, prototype or sample thereof).

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS that REFER OR RELATE TO the procurement, fabrication, preparation and production of each and every mold for BRATZ (including without limitation for any model, prototype or sample thereof) prior June 1, 2001, including without limitation all orders, purchase orders and invoices relating thereto.

**REQUEST FOR PRODUCTION NO. 54:**

DOCUMENTS sufficient to show when any mold for ANGEL (including without limitation for any model, prototype or sample thereof) was first ordered, procured, fabricated, prepared and produced.

EXHIBIT 2
PAGE 32

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 55:

2          All DOCUMENTS that REFER OR RELATE TO the exhibition, or

3  proposed, offered or requested exhibition, of BRATZ (including without limitation

4  any model, prototype or sample thereof) to any third party prior to June 1, 2001.

5

6  REQUEST FOR PRODUCTION NO. 56:

7          DOCUMENTS sufficient to show when ANGEL (including without

8  limitation any model, prototype or sample thereof) was first exhibited to any third

9  party.

10

11  REQUEST FOR PRODUCTION NO. 57:

12          DOCUMENTS sufficient to show when and where BRATZ

13  (including without limitation any model, prototype or sample thereof) was first

14  marketed to any wholesaler, distributor and/or retailer.

15

16  REQUEST FOR PRODUCTION NO. 58:

17          DOCUMENTS sufficient to show when and where ANGEL

18  (including without limitation any model, prototype or sample thereof) was first

19  marketed to any wholesaler, distributor and/or retailer.

20

21  REQUEST FOR PRODUCTION NO. 59:

22          DOCUMENTS sufficient to show when and where BRATZ

23  (including without limitation any model, prototype or sample thereof) was first

24  offered for sale to any wholesaler, distributor and/or retailer.

25

26

27

28

EXHIBIT _____2_____

PAGE _____33_____

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 60:

DOCUMENTS sufficient to show when and where ANGEL (including without limitation any model, prototype or sample thereof) was first offered for sale by YOU to any wholesaler, distributor and/or retailer.

REQUEST FOR PRODUCTION NO. 61:

DOCUMENTS sufficient to show when and where BRATZ was first shipped, distributed and sold.

REQUEST FOR PRODUCTION NO. 62:

DOCUMENTS sufficient to show when and where ANGEL was first shipped, distributed and sold.

REQUEST FOR PRODUCTION NO. 63:

All DOCUMENTS that REFER OR RELATE TO the licensing, including without limitation the proposed or requested licensing, of BRATZ prior to December 31, 2001.

REQUEST FOR PRODUCTION NO. 64:

All COMMUNICATIONS between YOU and any manufacturer, or any contemplated, proposed or potential manufacturer, that REFER OR RELATE TO BRATZ prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 65:

DOCUMENTS sufficient to identify when YOU first contacted any manufacturer, or any contemplated, proposed or potential manufacturer, for the manufacture of ANGEL.

EXHIBIT ___2___
PAGE ___34___

07209/642197.1

-19-

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 66:

2          All COMMUNICATIONS between YOU and any PERSON that

3  REFER OR RELATE TO the distribution or proposed or potential distribution of

4  BRATZ prior to June 1, 2001.

5

6  REQUEST FOR PRODUCTION NO. 67:

7          All COMMUNICATIONS between YOU and Universal Commerce

8  Corp., Ltd. prior to June 1, 2001.

9

10  REQUEST FOR PRODUCTION NO. 68:

11          All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that

12  were prepared, authored or created by Mattel, Inc. or any officer, director,

13  employee or representative of Mattel, Inc., that BRYANT has ever provided to,

14  shown, described to, communicated to or disclosed in any manner to YOU.

15

16  REQUEST FOR PRODUCTION NO. 69:

17          All COMMUNICATIONS between YOU and BRYANT prior to

18  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

19  phone records and letters, that reflect, record or memorialize or otherwise REFER

20  OR RELATE TO any such COMMUNICATIONS.

21

22  REQUEST FOR PRODUCTION NO. 70:

23          All COMMUNICATIONS between YOU and Elise Cloonan that

24  REFER OR RELATE TO BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee,

25  including without limitation all diaries, notes, calendars, logs, phone records and

26  letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO

27  any such COMMUNICATIONS.

28

EXHIBIT ___2___

PAGE ___35___

07209/642197.1

-20-

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 71:

2          All COMMUNICATIONS between YOU and Elise Cloonan prior to

3  June 11, 2002, including without limitation all diaries, notes, calendars, logs,

4  phone records and letters, that reflect, record or memorialize or otherwise REFER

5  OR RELATE TO any such COMMUNICATIONS.

6

7  REQUEST FOR PRODUCTION NO. 72:

8          All COMMUNICATIONS between YOU and Veronica Marlow prior

9  to January 1, 2001, including without limitation all diaries, notes, calendars, logs,

10  phone records and letters, that reflect, record or memorialize or otherwise REFER

11  OR RELATE TO any such COMMUNICATIONS.

12

13  REQUEST FOR PRODUCTION NO. 73:

14          All COMMUNICATIONS between YOU and Mercedeh Ward prior

15  to November 6, 2000, including without limitation all diaries, notes, calendars,

16  logs, phone records and letters, that reflect, record or memorialize or otherwise

17  REFER OR RELATE TO any such COMMUNICATIONS.

18

19  REQUEST FOR PRODUCTION NO. 74:

20          All COMMUNICATIONS between YOU and Margaret Hatch (also

21  known as Margaret Leahy and/or Margaret Hatch-Leahy) prior to January 1, 2001,

22  including without limitation all diaries, notes, calendars, logs, phone records and

23  letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO

24  any such COMMUNICATIONS.

25

26  REQUEST FOR PRODUCTION NO. 75:

27          All COMMUNICATIONS between YOU and Anna Rhee prior to

28  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

EXHIBIT ___2___

PAGE ___36___

07209/642197.1

-21-

1  phone records and letters, that reflect, record or memorialize or otherwise REFER
2  OR RELATE TO any such COMMUNICATIONS.
3
4  REQUEST FOR PRODUCTION NO. 76:
5         All COMMUNICATIONS between Veronica Marlow and Anna Rhee
6  prior to January 1, 2001, including without limitation all diaries, notes, calendars,
7  logs, phone records and letters, that reflect, record or memorialize or otherwise
8  REFER OR RELATE TO any such COMMUNICATIONS.
9
10  REQUEST FOR PRODUCTION NO. 77:
11         All COMMUNICATIONS between YOU and Sarah Halpern prior to
12  January 1, 2001, including without limitation all diaries, notes, calendars, logs,
13  phone records and letters, that reflect, record or memorialize or otherwise REFER
14  OR RELATE TO any such COMMUNICATIONS.
15
16  REQUEST FOR PRODUCTION NO. 78:
17         All COMMUNICATIONS between YOU and Jesse Ramirez prior to
18  January 1, 2001, including without limitation all diaries, notes, calendars, logs,
19  phone records and letters, that reflect, record or memorialize or otherwise REFER
20  OR RELATE TO any such COMMUNICATIONS.
21
22  REQUEST FOR PRODUCTION NO. 79:
23         Any personnel or vendor file that YOU have created or maintained
24  concerning BRYANT.
25
26  REQUEST FOR PRODUCTION NO. 80:
27         Any personnel file that YOU have created or maintained concerning
28  Paula Treantafellas.

EXHIBIT _____ 2
PAGE _____ 37

07209/642197.1

-22-

FIRST REQUEST FOR PRODUCTION TO MGA

1 REQUEST FOR PRODUCTION NO. 81:

2          Any personnel file that YOU have created or maintained concerning

3 Mercedeh Ward.

4

5 REQUEST FOR PRODUCTION NO. 82:

6          Any personnel or vendor file that YOU have created or maintained

7 concerning Margaret Hatch (also known as Margaret Leahy and/or Margaret

8 Hatch-Leahy).

9

10 REQUEST FOR PRODUCTION NO. 83:

11          Any personnel or vendor file that YOU have created or maintained

12 concerning Veronica Marlow.

13

14 REQUEST FOR PRODUCTION NO. 84:

15          Any personnel or vendor file that YOU have created or maintained

16 concerning Anna Rhee.

17

18 REQUEST FOR PRODUCTION NO. 85:

19          Any personnel or vendor file that YOU have created or maintained

20 concerning Jessie Ramirez.

21

22 REQUEST FOR PRODUCTION NO. 86:

23          Any personnel file that YOU have created or maintained concerning

24 Shirin Salemnia.

25

26 REQUEST FOR PRODUCTION NO. 87:

27          Any personnel file that YOU have created or maintained concerning

28 Victoria O'Connor.

EXHIBIT _2_

PAGE _38_

REQUEST FOR PRODUCTION NO. 88:

Any personnel file that YOU have created or maintained concerning Farhad Larian.

REQUEST FOR PRODUCTION NO. 89:

All telephone records for MGA Entertainment Inc. for the time period from January 1, 1998 through January 1, 2001.

REQUEST FOR PRODUCTION NO. 90:

All DOCUMENTS that REFER OR RELATE TO any copyright, patent or any other application or registration for BRATZ DESIGNS, including without limitation all COMMUNICATIONS pertaining thereto.

REQUEST FOR PRODUCTION NO. 91:

All DOCUMENTS that REFER OR RELATE TO any copyright, patent or any other application or registration for ANGEL DESIGNS, including without limitation all COMMUNICATIONS pertaining thereto.

REQUEST FOR PRODUCTION NO. 92:

All DOCUMENTS that REFER OR RELATE TO any testing of or sampling from any DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation any such testing or sampling in connection with any ink, paper or chemical analysis to date any such DOCUMENTS and including without limitation all results and reports relating thereto.

EXHIBIT ___2___
PAGE ___39___

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 93:

An electronic copy of each DOCUMENT that YOU have produced in this action, or that is responsive to these Requests, that is or was created, prepared, generated, maintained or transmitted in digital form.

REQUEST FOR PRODUCTION NO. 94:

The metadata for each DOCUMENT that YOU have produced in this action, or that is responsive to these Requests, that is or was created, prepared, generated, maintained or transmitted in digital form.

REQUEST FOR PRODUCTION NO. 95:

All DOCUMENTS that support, refute or otherwise REFER OR RELATE TO any facts underlying YOUR Affirmative Defenses in this action.

REQUEST FOR PRODUCTION NO. 96:

All doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ.

REQUEST FOR PRODUCTION NO. 97:

All doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO ANGEL.

REQUEST FOR PRODUCTION NO. 98:

All doll heads, sculpts, prototypes, models, samples and tangible items that Anna Rhee painted, whether in whole or in part, for or with YOU or on YOUR behalf or for or on behalf of BRYANT prior to January 1, 2001.

EXHIBIT 2

PAGE 40

07209/642197.1

-25-

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 99:

All doll heads, sculpts, prototypes, models, samples and tangible items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that BRYANT produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 100:

All doll heads, sculpts, prototypes, models, samples and tangible items that support, refute or otherwise REFER OR RELATE TO any facts underlying YOUR Affirmative Defenses in this action.

DATED:  March 14, 2005          QUINN EMANUEL URQUHART
                                OLIVER & HEDGES, LLP

                                By _____
                                    Shane Heather McKenzie
                                    Attorneys for Plaintiff/Counter-defendant
                                    Mattel, Inc.

EXHIBIT _____2_____
PAGE _____41_____

-26-

FIRST REQUEST FOR PRODUCTION TO MGA

07209/642197.1

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA ) ) SS
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.** on all interested parties in this action.

**Robert F. Millman, Esq.**
**Douglas A. Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
**FAX: 310-553-5583**

[   ]   By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ X ]   **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on March 14, 2005, at Los Angeles, California.

[   ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos
Print Name

Signature

EXHIBIT ___2___
PAGE ___42___

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA          )
                             ) SS
COUNTY OF LOS ANGELES        )

    I am employed in the county of Los Angeles State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017.

    On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.** on all interested parties in this action.

Paula E. Ambrosini, Esq.
O'Melveny & Meyers
400 So. Hope Street
Los Angeles, CA  90071
(213) 430-6407

[   ]  By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[   ]  **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]  **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ X ]  **BY PERSONAL SERVICE** I caused to be delivered such envelope by hand to the addressee.

Executed on March 14, 2005, at Los Angeles, California.

[   ]  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos
Print Name

Signature

EXHIBIT ___2___
PAGE ___43___

**EXHIBIT 3**

**ORIGINAL**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff and Cross-
   Defendant
9  Mattel, Inc.

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13  CARTER BRYANT, an          CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14                             Consolidated with
           Plaintiff,          Case No. CV 04-09059
15                             Case No. CV 05-02727
        vs.
16                             **DISCOVERY MATTER**
    MATTEL, INC., a Delaware
17  corporation,               **[To Be Heard By Discovery Master Hon.
                               Edward Infante (Ret.) Pursuant To The Court's
18         Defendant.          Order Of December 6, 2006]**

19                             MATTEL, INC.'S NOTICE OF MOTION AND
    AND CONSOLIDATED           MOTION TO COMPEL PRODUCTION OF
20  ACTIONS                    DOCUMENTS AND INTERROGATORY
                               ANSWERS BY MGA ENTERTAINMENT, INC.;
21
                               AND MEMORANDUM OF POINTS AND
22                             AUTHORITIES

23                             [Separate Statement and Declaration of Michael T.
                               Zeller filed concurrently herewith]
24
                               Hearing Date:  TBA
25                             Time:  TBA
                               Place:  TBA
26
                               Discovery Cut-off:  None Set
27                             Pre-trial Conference:  None Set
                               Trial Date:  None Set
28

07209/2046181.3

EXHIBIT ___3___
PAGE ___41___

MATTEL, INC.'S MOTION TO COMPEL

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that at a telephonic conference before

3  Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time

4  to be determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby

5  does, move the Court:

6       (1) to compel MGA Entertainment, Inc. ("MGA") to produce

7  documents responsive to Mattel Request Nos. 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 26, 27,

8  32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 45, 46, 49, 50, 51, 53, 55, 57, 59, 61, 63,

9  64, 66, 67, 69, 70, 88, 90, 91, 92, 96, 97, 98, 99, 100, including all documents,

10  regardless of date of creation, relating to the origins of Bratz and the design,

11  development and marketing of Bratz prior to June 31, 2001;

12       (2) to compel MGA to produce all redacted documents in un-redacted

13  form; serve a complete privilege log; and complete its production by producing

14  missing attachments, fax cover pages and the like;

15       (3) to compel MGA to answer fully and completely Mattel

16  Interrogatories Nos. 5-11; and

17       (3) for an award of sanctions against MGA in the amount of $6,700.00,

18  which represents a portion of the costs incurred by Mattel in bringing this Motion.

19       This Motion is made pursuant to Federal Rules of Civil Procedure 34

20  and 37 on the grounds that Mattel's Requests seek discoverable information and

21  MGA's objections lack merit.

22       This motion shall be heard by the Honorable Edward Infante,

23  Discovery Master. The parties met and conferred regarding this motion on August 8

24  and 16, 2006 and on January 26, 2007.

27  EXHIBIT 3
28  PAGE 45

1          This Motion is based on this Notice of Motion and Motion, the

2 accompanying Memorandum of Points and Authorities, the Declaration of

3 Michael T. Zeller filed concurrently herewith, the Separate Statement filed

4 concurrently herewith, the records and files of this Court, and all other matters of

5 which the Court may take judicial notice.

6

7 DATED: February 2, 2007         QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP

8

9                                By _____

10                                  Michael T. Zeller
                               Attorneys for Plaintiff and Cross-Defendant

11                                Mattel, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        EXHIBIT __3__

28                                         PAGE ___46___

1

## TABLE OF CONTENTS

2                                                                                      <u>**Page**</u>

3

4    MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

5    Preliminary Statement ...................................................................................... 1

6    Argument ......................................................................................................... 3

7    I.     MGA's Production Is Incomplete And Unintelligible. ..................................... 3

8    II.    MGA Has Engaged In A Practice Of Failing To Produce Responsive
            Documents Until Mattel Discovers Such Documents From Other
9           Sources. ........................................................................................................ 7

10   III.   MGA's Refusal To Produce Any Documents From Its Hong Kong
            Subsidiary Is Contrary To Law. ................................................................... 11
11

12   IV.    MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates
            Mattel's Ability To Gather Evidence And Identify Witnesses. ..................... 13

13   V.     MGA's Failure To Provide Full And Complete Answers To Mattel's
            Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's
14          Ability To Gather Evidence And Identify Witnesses. ................................... 15

15   VI.    MGA Should Be Sanctioned. ....................................................................... 18

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___3___
PAGE ___47___

-i-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

# TABLE OF AUTHORITIES

**Page**

## Cases

In re ATM Fee Antitrust Litigation,
233 F.R.D. 542 (N.D. Cal. 2005) ............................................................ 12

Bohannon v. Honda Motor Co., Ltd., et al.,
127 F.R.D. 536 (D. Kan. 1989) .............................................................. 14

Braley v. Campbell,
832 F.2d 1504 (10th Cir. 1987) ............................................................ 19

Davis v. Fendler,
650 F.2d 1154 (9th Cir. 1981) .............................................................. 16

Hyde & Drath v. Baker,
24 F.3d 1162 (9th Cir. 1994) ............................................................... 19

Miller v. Federal Express Corp.,
186 F.R.D. 376 (W.D. Tenn. 1999)......................................................... 17

RTC v. Dabney,
73 F.3d 262 (10th Cir. 1995) ............................................................... 19

Richmark Corp. v. Timber Falling Consultants,
959 F.2d 1468 (9th Cir.), cert. denied, 506 U.S. 948 (1992) ............... 16

U.S. v. Internaitonal Union of Petroleum and Industrial Workers,
870 F.2d 1450 (9th Cir. 1989).............................................................. 12

VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
1999 WL 386949 (D. Kan. 1999)........................................................... 17

## Statutes

28 U.S.C. § 1927......................................................................................... 19

Fed. R. Civ. P. 33(b)(3)  ............................................................................ 16

Fed. R. Civ. P. 33(b)(6) ............................................................................. 7

Fed. R. Civ. P. 33(d).................................................................................. 17

Fed. R. Civ. P. 34...................................................................................... i

Fed. R. Civ. P. 37(a)(4) ............................................................................ 19

EXHIBIT    3
PAGE       48

-ii-

1

**Miscellaneous**

2   Moore's Federal Practice § 33.174[2].........................................................................16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __3__

PAGE __49__

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel, Inc. ("Mattel") seeks to compel defendant MGA Entertainment, Inc. ("MGA") to produce all documents—regardless of their date of creation—relating to the origin, conception, design and development of Bratz and to fully answer Mattel's Interrogatories on those subjects.   As the Discovery Master observed in his recent Order granting Mattel's motion to compel against defendant Carter Bryant, "at the heart of this lawsuit is a dispute over the rights to the 'Bratz' dolls."[1]  The Order makes clear that documents relating to the origin, design and development of Bratz are thus discoverable.

MGA, however, continues to withhold information on these subjects and, despite Mattel's repeated requests, has failed to cure the deficiencies in MGA's production.  To date, Mattel has produced nearly 60,000 pages of documents.  In contrast, MGA has produced a few thousand pages.[2]  Not only are certain categories of critical documents relating to Bratz absent from MGA's production,[3] but what little MGA has produced is itself deficient.  Among other things, MGA's production includes pages that are replete with redactions, often to the point where all or most of the entire page is blank except for the Bates number, "Attorneys' Eyes Only" and "Redacted" stamps put on them by attorneys.[4]  The net result of these multiple deficiencies is to render MGA's production both woefully incomplete and

---

[1]   Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 2, attached as Exhibit 1 to the Declaration of Michael T. Zeller, dated February 1, 2007 and filed concurrently herewith ("Zeller Dec.").

[2]   Zeller Dec., ¶ 3.

[3]   For instance, MGA has not produced any internal documents from its Hong Kong office, even though it was involved in the development of Bratz.  See Zeller Dec., Exh. 7.

[4]   See e.g., sample pages from MGA's production, Zeller Dec., Exhs. 2-6.

EXHIBIT ___3___

PAGE ___50___

1  unintelligible, and MGA has failed to produce clearly relevant documents regarding
2  the origin, conception, design and development of Bratz. MGA's failure to comply
3  with its discovery obligations also extends to its incomplete or non-existent answers
4  to Mattel's Interrogatories seeking basic information about these same subjects.
5  These facts alone justify granting Mattel's Motion to Compel. However, these
6  deficiencies are even more disturbing in light of MGA's pattern of not producing
7  critical documents or identifying witnesses involved with Bratz until Mattel
8  independently discovers such documents from another source or such witnesses
9  come forward.

10         MGA also has no legitimate excuse for its stonewalling here. MGA's
11 arguments attempting to justify its incomplete and heavily redacted production, such
12 as its artificial "First Generation Bratz" distinction, are virtually identical to the
13 positions that Bryant had asserted in his refusals to produce relevant Bratz
14 documents and that the Discovery Master had rejected in his Order granting Mattel's
15 Motion to Compel against Bryant. Although MGA at one point stated that it would
16 reconsider its positions in light of that Order, MGA nevertheless opted to persist in
17 its failures and refusals. MGA should be compelled to produce responsive
18 documents without redactions (except to protect attorney-client privilege or attorney
19 work product and are reflected on a privilege log) responsive to Mattel's document
20 requests and to fully and completely answer Mattel's Interrogatories.

21         MGA's (and Bryant's) pattern of obstructionism notwithstanding,
22 Mattel has uncovered evidence confirming that (1) Bryant designed Bratz while
23 employed by Mattel; (2) Bryant used Mattel resources to design Bratz; (3) MGA
24 contracted with Bryant to obtain the rights to Bratz knowing that Bryant was
25 employed by Mattel; and (4) MGA paid Bryant for work performed on Bratz while
26
27
28

EXHIBIT ___3___
PAGE ___51___

-2-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1 | he was still employed by Mattel.[5] Furthermore, Mattel has uncovered evidence of,

2 | and is asserting claims for, trade secret theft, copyright infringement and acts of

3 | unfair competition by defendants.[6]   MGA's incomplete production and its

4 | inadequate Interrogatory answers jeopardize Mattel's ability to pursue its rights and

5 | to defend itself against MGA's own claims -- claims for which MGA recently

6 | announced it would be seeking "billions" of dollars in damages.[7] Mattel respectfully

7 | requests that the Discovery Master grant this motion in its entirety, including by

8 | ordering MGA to produce all non-privileged documents relating to the origin,

9 | conception, design and development of Bratz, and to fully answer Mattel's

10 | Interrogatories.

11

12 | **Argument**

13 | **I.   MGA's Production Is Incomplete And Unintelligible.**

14 | MGA's production contains numerous inappropriate redactions that do

15 | not appear to be based on privilege, such that more than half of MGA's production

16 | consists of pages that are <u>entirely</u> redacted.[8]  Pages with text are frequently so

17 | heavily redacted as to be unintelligible.  For instance, multiple emails produced by

18 | MGA have everything but the "To," "From" and "Subject" header information

19 | redacted.[9]  Other pages include illegible text or images and/or have text or other

20

21 | _____

22 | [5]  Mattel's Amended Answer and Cross-Complaint in *MGA v. Mattel, Inc.*, Case

23 | No. CV 05-2727 SGL (RNBx) (the "Unfair Competition Case") at ¶¶ 26-27, Zeller Dec., Exh. 8.

24 | [6]  <u>Id.</u> at ¶¶ 37-54.

25 | [7]  "Nightline" transcript at 5, Zeller Dec., Exh. 56.  MGA Complaint at ¶ 101-125, Zeller Dec., Exh. 9.  Moreover, MGA's Complaint states on its face that it

26 | seeks "tens of millions" of dollars from Mattel.  <u>Id.</u> at Prayer ¶ 2.

27 | [8]  <u>See, e.g.</u> Entirely redacted pages from MGA's production, Zeller Dec., Exh. 2.

28 | [9]  <u>See, e.g.</u> Heavily redacted emails from MGA's production Zeller Dec., Exh. 3.

EXHIBIT ___3___
PAGE ___52___

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

07209/2046181.3

1   information cut-off.[10]   Other pages reference attachments to emails and other
2   documents, but the attachments are missing.[11]   In addition, invoices are produced for
3   which no corresponding check stubs, purchase orders or requisitions were
4   produced.[12]   In some cases, the identifying information necessary to match invoices
5   with other financial documents may have been redacted.   Many other pages are even
6   redacted in their entirety.[13]

7          MGA's justifications for its heavy-handed redactions are almost
8   identical to the ones that Bryant had asserted and that were rejected by the
9   Discovery Master in his Order Granting Mattel's Motion to Compel Production of
10  Documents of Bryant.   For instance, like Bryant, MGA has withheld information
11  and documents relating to any Bratz product other than "First Generation" Bratz—
12  an artificial, and illogical, limitation which the Discovery Master rejected.[14]
13  Further, MGA imposed a "First Generation" Bratz limitation with regards to royalty
14  statements from MGA to Bryant, producing heavily redacted statements that show
15  only Bryant's earnings on the "First Generation" Bratz.   This limitation, too, was one
16  rejected by the Discovery Master in his Order.[15]   Like Bryant, MGA also stood on
17  its refusal to produce evidence relating to agreements between MGA and Bryant,
18  including their fee arrangements.   The Discovery Master similarly rejected this
19  limitation on discovery, noting that such agreements go to issues of liability, bias
20  and lack of credibility.[16]

21  _____

22  [10]   See, e.g., Cut-off and illegible pages from MGA's production, Zeller Dec.,
23  Exh. 4.
    [11]   See, e.g., Email with missing attachment from MGA's production, Zeller
24  Dec., Exh. 5.
25  [12]   See, e.g., Invoice from MGA's production, Zeller Dec., Exh. 6.
    [13]   See, e.g., Zeller Dec, Exh. 2.
26  [14]   See Discovery Master's Order at 12-13, Zeller Dec., Exh. 1.
27  [15]   Id. at 13-14.
    [16]   Id. at 12.
28

EXHIBIT ___3___

1    Consistent with the Discovery Master's Order, and because they seek
2  clearly discoverable information, MGA should be compelled to produce the
3  following categories of documents:

4    • Documents referring or relating to Bryant's agreements with MGA,
5      including communications exchanged by the parties and drafts of the
6      agreements;[17]

7    • Documents referring or relating to agreements discussed or negotiated
8      by Bryant and MGA while he was employed by Mattel other than
9      signed agreements that were "reached" while Bryant was employed by
10     Mattel;[18]

11   • Documents referring or relating to Bryant's fee agreements with MGA
12     or other indemnity agreements relating to this action;[19]

13   • All documents relating to works created or services provided by Bryant
14     to MGA during his Mattel employment, regardless of whether they
15     resulted in a Bratz doll released in June of 2001;[20]

16   • All non-privileged documents referring or relating to designs that
17     Bryant created, authored, produced, conceived of or reduced to practice
18     after October 20, 2000 as purported "works-made-for-hire" (whether in
19     whole or in part) for or on behalf of MGA;[21]

20   • All documents referring or relating to the conception, creation, design,
21     development, engineering or sculpting of Bratz;[22]

22
23  ───────────────
24  [17]  Id. at 12.
25  [18]  Id. at 12.
    [19]  Id. at 12.
26  [20]  Id. at 12-13.
27  [21]  Id. at 12-13.
    [22]  Id. at 12-13.
28

EXHIBIT ___3___
PAGE ____54____

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

07209/2046181.3

- All non-privileged documents referring or relating to work, activities or services that Bryant performed concerning Bratz after October 20, 2000;[23]

- All non-privileged documents referring or relating to Bryant's participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of Bratz;[24]

- All prototypes, models, samples and tangibles referring or relating to designs for dolls, doll accessories or toys that Bryant produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, for MGA;[25]

- All documents relating to Bryant's payments from MGA, including all royalty statements in unredacted form;[26]

- All communications between Bryant and MGA or third parties that relate to designs Bryant created while employed by Mattel;[27]

- All communications between Bryant and MGA that relate to Mattel employees;[28]

- All communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment;[29]

---

[23]   Id. at 12-13.
[24]   Id. at 12-13.
[25]   Id. at 12-13.
[26]   Id. at 13-14.
[27]   Id. at 15-16.
[28]   Id. at 15-16.
[29]   Id. at 15-16.

EXHIBIT ___3___
PAGE ___55___

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1    • All non-privileged communications between Bryant and MGA that
2      post-date Bryant's Mattel employment;[30] and

3    • All non-privileged documents referring or relating to any copyright,
4      patent or any other application or registration for designs that Bryant
5      produced, created, authored, conceived of or reduced to practice,
6      whether alone or jointly with others, since January 1, 1995, including
7      without limitation all communications pertaining thereto.[31]

8         An Order is necessary to ensure that MGA can no longer use artificial
9    distinctions to cherry-pick what documents it chooses to produce and which
10   documents it chooses to withhold from Mattel and to ensure that what MGA
11   produces is produced in unredacted from (unless it is to protect privilege and is
12   reflected on a privilege log).

13

14   **II.    MGA Has Engaged In A Practice Of Failing To Produce Responsive**
15   **Documents Until Mattel Discovers Such Documents From Other Sources.**

16        On multiple occasions, MGA has failed to produce responsive
17   documents until after a third party produces them.  For example, Anna Rhee, an
18   MGA vendor, produced documents in January 2005 pursuant to subpoena and
19   testified at her deposition that invoices she submitted to MGA in June 2000 were
20   invoices for Bratz face-painting.[32]  Subsequently, MGA produced the invoices in

21

22

23   [30]  Id. at 15-16.
24   [31]  Id. at 16.
25   [32]  Deposition of Anna Rhee ("Rhee Deposition"), dated January 7, 2005, at
     105:2-110:9, Zeller Dec., Exh. 10; Rhee Invoice, Zeller Dec., Exh. 11.  A more
26   detailed account of matters pertaining to Ms. Rhee's testimony and documents is
27   included in Mattel's motion to compel with respect to MGA's Rule 30(b)(6) witness,
     Kerri Brode.
28

EXHIBIT ____3____
PAGE ____56____

07209/2046181.3

-7-

1   question and their alleged internal backup.[33]  In September 2006, another third-party

2   witness, Steven Linker, produced design drawings, emails and other documents

3   relating to Bratz that Linker had received *from or exchanged with MGA and*

4   *Bryant* before Bryant left Mattel.[34]   Neither MGA nor Bryant had produced

5   previously many of these documents.

6          Linker's testimony and the documents he produced, including emails

7   and other documents relating to Bratz that pre-dated Bryant's departure from Mattel

8   and that had not been produced by MGA or Bryant, established that the Bratz

9   project was much further along before Bryant left Mattel than MGA and Bryant had

10   claimed.   For example, before Linker's testimony, MGA had produced an email

11   relating to Bratz development that Linker's design partner, Liz Hogan, had sent to

12   MGA on October 23, 2000, a date which was conveniently after Bryant left Mattel.

13   MGA, however, had not produced the earlier emails—those pre-dating Bryant's last

14   day of employment at Mattel—that Hogan had exchanged with MGA on that very

15   same subject.[35]   Mattel obtained those only when Linker produced them pursuant to

16   subpoena.   These were not the only documents that MGA withheld.   Among

17   Linker's production was a key design drawing for the three-dimensional Bratz

18   dolls—a drawing Bryant previously testified at his deposition that he had not created

19   until November 2000 after he had left Mattel.[36]   Linker's testimony and the

20

21   ───────────────────────

22   [33]   See, e.g., Rhee Invoice from MGA's Production, Zeller Dec., Exh. 12.
      [34]   Deposition of Steven Linker ("Linker Deposition"), dated September 13,
23   2006, at 56:21-59:23, 66:7-67:9, 76:22-78:23, 80:16-91:5, Zeller Dec., Exh. 13;
      Hogan emails, Zeller Dec., Exh. 14; packet produced by Steve Linker that he
24   received from MGA on October 19, 2000 that includes a Bratz design drawing by
      Carter Bryant, Bates No. SL00044, Zeller Dec., Exh. 15.
25   [35]   Hogan email from MGA's Production, Zeller Dec., Exh. 16.
      [36]   Deposition of Carter Bryant ("Bryant Deposition") at 350:16-350:25, 351:15-
26   353:13, 527:17-528:20, Zeller Dec., Exh. 17; Bratz design drawing by Carter
27   Bryant, Zeller Dec., Exh. 18.

28
                                                EXHIBIT ___3___

1  documents he produced, however, prove that MGA itself gave that same design
2  drawing (as well as other Bratz development documents) to Linker at a meeting with
3  MGA on October 19, 2000, <u>before</u> Bryant left Mattel.[37]  It was only after Linker's
4  deposition and MGA's glaring omissions had been revealed that MGA then
5  produced documents referencing the October 19, 2000 meeting between Linker and
6  MGA that Linker had testified.[38]

7          Although MGA produced a few documents referencing the October 19,
8  2000 meeting with Linker, and did so only after MGA's failure to produce highly
9  material documents was exposed, MGA still has not produced any drafts,
10  communications or similar documents relating to the materials that MGA gave
11  Linker before Bryant left Mattel.  Those materials, which include finished design,
12  marketing and pricing documents for Bratz, undoubtedly did not emerge from thin
13  air in full-blown fashion.  In fact, Hogan's emails show that the packaging team
14  needed detailed information about the Bratz doll products—size, piece-count, price,
15  etc.—before she and Linker could provide a quote for Bratz packaging work to
16  MGA.[39]  Yet, to this day, MGA has not produced documents or drafts showing how
17  or when the Bratz products reflected in the MGA materials that Linker produced
18  were designed, or how or when the retail prices, the product piece counts, the
19  information developed to describe each doll, and the prices for the dolls and
20  fashions that are listed in the materials were determined.

21          Further highlighting the point, there is, overall, an enormous disparity
22  between the extensive work that Mattel is now learning was done on Bratz
23  development before Bryant left Mattel and the minimalistic source documentation

24
25  [37]  Linker Deposition at 77:6-78:23, Zeller Dec., Exh. 13; Bratz design drawing
26  by Carter Bryant produced by Steve Linker, Zeller Dec., Exh. 15.
27  [38]  Day Planner Pages, Zeller Dec., Exh. 19.
     [39]  Hogan emails, Zeller Dec., Exh. 14.
28

EXHIBIT  3
PAGE  58

07209/2046181.3

-9-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  that MGA has produced for it.  Just two days before Linker's deposition in
2  September 2006, MGA produced for the first time bare bones invoices showing that
3  one vendor alone had already billed at least 169 hours for Bratz work she performed
4  before Bryant left Mattel.[40]  Although this and other evidence thus strongly suggests
5  that extensive Bratz design and development was underway before Bryant left
6  Mattel, many categories of documents and communications that undoubtedly were
7  created as a matter of course reflecting the particulars of all this activity (and likely
8  also showing additional Bratz activity) have not been produced by MGA and
9  Bryant.

10      Mattel has reason to believe other responsive documents are being
11  withheld as well.  MGA is obligated to produce bank records in its possession,
12  custody or control relating to products at issue in this case per a subpoena served on
13  Union Bank of California and an agreement the parties reached relating to those
14  records on June 20, 2006.[41]  Pursuant to this agreement, MGA produced certain
15  cancelled checks from Union Bank.[42]  However, Mattel's request was broader than
16  simply cancelled checks, encompassing signature cards, bank statements and deposit
17  slips.[43]  In addition, relevant and responsive checks appear not to have been
18  produced.  Cancelled checks from the Union Bank records and calendar entries from
19  a recent MGA production on January 4, 2007 identify David Dees as being a design

20

21  [40]  See Marlow invoices produced by MGA, Zeller Dec., Exh. 20.
22  [41]  Per the parties' agreement, MGA's counsel took possession of the documents
23  produced by Union Bank pursuant to the subpoena; MGA then was to produce any
    documents relating to products at issue in the litigation and to produce documents
24  relating to particular vendors at Mattel's request.  See Zeller Dec., ¶ 23; see also
25  Subpoena of Union Bank of California, Zeller Dec., Exh. 21.
    [42]  See, e.g., Cancelled checks produced by Union Bank, Zeller Dec., Exh. 22.
26  [43]  See Attachment A to Subpoena of Union Bank of California, Zeller Dec.,
27  Exh. 21; see also Dees Invoices from Union Bank's production, Zeller Dec., Exh. 22.

28      EXHIBIT 3
        PAGE 59

07209/2046181.3                    -10-
        MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  vendor who billed an extensive amount of work on Bratz—$4,000 worth as of
2  February 2001 and another $7,015 by mid May 2001.[44]  Nonetheless, Mattel has not
3  received other documents showing the design work that he did on the project before
4  then.  MGA was obligated under Mattel's Requests to provide documents relating to
5  Dees, a vendor who worked on Bratz during the relevant time period.  Moreover,
6  per the parties' agreement relating to the Union Bank records, Mattel can request
7  documents for a specific vendor by name; however, Mattel should not be forced to
8  guess which vendors performed work on Bratz.

9      Mattel cannot be expected to receive only those MGA documents it
10  happens to obtain from third parties who have responsive documents—particularly
11  given that MGA and Bryant also had failed to identify third parties who have
12  relevant knowledge and documents, such as Linker, in their Interrogatory
13  responses.[45]  MGA should be compelled to produce all documents—regardless of
14  date of creation—relating to the origin, creation, conception, design and
15  development of Bratz.

16

17  **III.   MGA's Refusal To Produce Any Documents From Its Hong Kong**
18        **Subsidiary Is Contrary To Law.**

19      MGA's Hong Kong office, MGA Entertainment (HK) Limited ("MGA
20  Hong Kong"), played a key role in Bratz and has documents and things responsive
21  to Mattel's document requests.  MGA, however, refuses to produce documents or
22  things from MGA Hong Kong, and instead has limited its production to only

23

24

25  [44]  Id.; see also Day planner pages, Zeller Dec., Exh. 23.
    [45]  See MGA's Response to Mattel's Interrogatory Nos. 5 & 6, Zeller Dec., Exh.
26  25; see also Mattel's Separate Statement In Support Of Mattel's Motion To Compel,
27  dated February 1, 2007 and filed concurrently herewith, ("Separate Statement") at
    60:16-60:26.
28

EXHIBIT ___3___
PAGE ___60___

1  communications between MGA in the U.S. and MGA Hong Kong.[46]   MGA
2  maintains that MGA Hong Kong is a separate company not located within the
3  jurisdiction of the United States and that documents and things located there are not
4  under MGA's "possession, custody or control."   However, MGA Hong Kong is
5  controlled by MGA and its central purpose is to implement parent MGA's policy.
6  Therefore, MGA has "legal control" over MGA Hong Kong and should be
7  compelled to produce any documents in its Hong Kong subsidiary's possession,
8  custody or control.  See In re ATM Fee Antitrust Litigation, 233 F.R.D. 542, 544
9  (N.D. Cal. 2005) (where the court ordered a company to produce any documents in
10  its wholly-owned subsidiary's custody that were responsive to the plaintiffs' requests
11  for production of documents as well as answer any interrogatories related to
12  information within the possession of the subsidiary).

13        Like MGA, the defendant in ATM conceded that its subsidiary had
14  responsive documents, but it contended that because the subsidiary was a "separate
15  legal entity," the defendant company did not have control over the documents.  Id. at
16  545.  The ATM court rejected this argument, instead applying the "legal control
17  standard" for a parent's obligation to produce documents in the possession and
18  custody of a subsidiary.  Id. at 545 (internal cites omitted).  A parent company has
19  "legal control" of its subsidiary if it has "the legal right to obtain documents upon
20  demand" and not simply the defendant's practical ability to obtain the documents
21  requested.  See U.S. v. Internaitonal Union of Petroleum and Industrial Workers,
22  870 F.2d 1450, 1463 (9th Cir. 1989).

23        Even based upon MGA's limited, heavily sanitized production, it is
24  clear that MGA exercises legal control over MGA Hong Kong.  There are numerous
25  emails in which MGA's CEO Isaac Larian gives specific direction to MGA Hong
26

27  [46]   Zeller Dec., Exh. 7.
28

EXHIBIT    2
PAGE    61

1  Kong about everything from personnel issues in Hong Kong to more general

2  manufacturing and sales issues.[47]  In addition, Mr. Larian and Jahangir Makabi, both

3  of whom are MGA officers, are the sole directors of MGA Hong Kong.  Bryant also

4  personally visited and worked at MGA Hong Kong in the Fall of 2000 to work on

5  Bratz.[48]  Obtaining discovery from MGA Hong Kong is critical because MGA Hong

6  Kong was intimately involved with the production of Bratz in 2000 and early 2001;

7  thus it unquestionably has internal documents and things that can shed light on this

8  critical, and contested, time period.  Further, in its Interrogatory responses, MGA

9  identifies only five people in the United States and then "various people then

10  employed in Hong Kong" as being involved in the conception, origin, creation, etc.

11  of the first embodiments of Bratz.[49]  On the one hand, MGA states that it is not

12  obligated to produce responsive documents from MGA Hong Kong in response to

13  the Requests; simultaneously, MGA states that it does not have to identify by name

14  individuals in Hong Kong who worked on Bratz in response to the Interrogatories

15  because their identities can be determined from the documents.  Neither argument

16  taken alone has merit, but together they certainly must fail.

17

18  **IV.   MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates**

19  **Mattel's Ability To Gather Evidence And Identify Witnesses.**

20          Initially, MGA categorically refused to produce any declarations,

21  affidavits or other sworn written statements of any type by MGA that referred or

22  related to Bratz or Angel—the name that Rhee testified she was told to use on her

23

24

---

25  [47]  See Larian email produced by MGA, Zeller Dec., Exhs. 26.

26  [48]  See Bryant Deposition at 489:12-490:9, Zeller Dec., Exh. 17.

27  [49]  See MGA's Response to Mattel's Interrogatory No. 5, Zeller Dec., Exh. 25;
    see also Separate Statement at 60:11-61:20.

28

EXHIBIT  2
PAGE  62

-13-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  early invoices for Bratz.[50]   Similarly, MGA categorically refused to produce any

2  transcripts or video and/or audio recordings of statements made by MGA under oath

3  that referred or related to Bratz or Angel.[51]   MGA also refused to produce any

4  documents that referred or related to Bratz or Angel that were filed, submitted and

5  served in the suit and/or arbitration proceedings brought by Farhad Larian—a

6  former MGA executive and Isaac Larian's brother.[52]   MGA maintained that such

7  documents were not relevant to the subject matter of the lawsuit or reasonably

8  calculated to lead to the discovery of admissible evidence.[53]

9          This argument is without merit.  Any statements of fact made by MGA

10  in other sworn testimony relating to the timing, origins, and creation of Bratz or

11  Angel are relevant to this case in myriad ways, including for purposes of identifying

12  additional witnesses, establishing admissions of fact and impeachment through prior

13  statements.  See Bohannon v. Honda Motor Co., Ltd., et al., 127 F.R.D. 536, 540 (D.

14  Kan. 1989) ("The transcripts of deposition testimony given and approved by

15  employees of [defendant]...are discoverable statements.")   The prior sworn

16  statements by MGA that Mattel has been able to obtain through a third party—but

17  that were never produced by MGA—revealed that (1) Bratz was first exhibited in

18  the fall of 2000 and (2) key Bratz design drawings that Bryant had testified in this

19

20

21

22

---

23    [50]   Zeller Dec., Exh. 7.
24    [51]   Id.
25    [52]   Id.  Farhad Larian brought suit against his brother because Farhad claimed
26   that Isaac had concealed the development of Bratz beginning in early 2000 from
     Farhad in order to buy Farhad's share of the company at a reduced price.  Thus
27   materials in the case would be directly relevant to the origins and timing of Bratz.
      [53]   Id.
28

EXHIBIT ___2___
PAGE ____63___

-14-

07209/2046181.3

1   case were created in 1998 were, in fact, created in 2000.[54] Both of these facts are

2   obviously highly relevant to the present suit.

3          Over the course of the parties' meet and confers, MGA stated that it

4   would explore the possibility of producing such testimony and sworn statements if

5   Mattel agreed to produce testimony regarding products such as Flavas.[55] However,

6   such products are at best only tangentially related to this suit. While Mattel may be

7   amenable to producing such materials, Mattel should not have to barter to get

8   discovery to which it is clearly entitled and has long sought. Such testimony

9   relating to Bratz is particularly important because the early development of Bratz is

10  highly contested in this case and MGA has made conflicting public statements over

11  the years regarding the origins of Bratz—attributing Bratz to everyone from Larian's

12  son to Larian himself to the result of some sort of doll design contest.[56]

13

14  **V.    MGA's Failure To Provide Full And Complete Answers To Mattel's**

15        **Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's**

16        **Ability To Gather Evidence And Identify Witnesses.**

17          The deficiencies in MGA's production are magnified by the equally

18  serious shortcomings in MGA's responses to Mattel's Interrogatories relating to the

19  origins of Bratz.[57]

20

21

22

23  [54]  See Larian affidavit, Zeller Dec., Exh. 27;  see also Lee Shiu Cheung affidavit and Exhibit LSC-3 to the affidavit, Zeller Dec., Exh. 28.

24  [55]  Torres Letter, Zeller Dec., Exh. 36.

25  [56]  See, e.g., Zeller Dec., Exh. 29.

26  [57]  See Mattel, Inc.'s Second Set of Interrogatories to Defendant MGA Entertainment, Inc. (the "Interrogatories"), Zeller Dec., Exh. 24; MGA's Response to

27  Mattel's Second Set of Interrogatories (the "Interrogatory Responses"), Zeller Dec., Exh. 25.

28

EXHIBIT   3

PAGE   84

1        As an initial matter, MGA failed to serve a response to Mattel's Second

2  Set of Interrogatories within the 30 days required by <u>Rule</u> 33(b)(3).[58] By failing to

3  serve a timely response (or timely objection), MGA has waived all objections. "Any

4  ground not stated in a timely objection is waived . . . ." <u>Federal Rule of Civil</u>

5  <u>Procedure</u> 33(b)(4).   Any objection not made within 30 days of service of an

6  interrogatory is waived unless the responding party seeks an extension of time to

7  answer or object. <u>Id.</u>; see Moore's Federal Practice § 33.174[2]; <u>Davis v. Fendler</u>,

8  650 F.2d 1154, 1160 (9th Cir. 1981) (holding that untimely service of response to

9  interrogatories waives objections); <u>Richmark Corp. v. Timber Falling Consultants</u>,

10  959 F.2d 1468, 1473 (9th Cir.) (stating that "failure to object to discovery requests

11  within the time required constitutes a waiver of any objection."), <u>cert. denied</u>, 506

12  U.S. 948 (1992).   Because MGA failed to provide full and complete responses

13  (without objection), Mattel may move the Court to order MGA to do so. <u>See, e.g.</u>,

14  <u>Richmark Corp.</u>, 959 F.2d at 1473.

15        Furthermore,  MGA's  responses  to  Mattel's  Second  Set  of

16  Interrogatories were, and remain, substantively deficient. Indeed, MGA's responses

17  to many of the Interrogatories simply consist of improper objections without any

18  substantive response. For example, the instructions to Mattel's Interrogatories direct

19  ———————————————

20    [58]  MGA's unverified Responses to Mattel's Second Set of Interrogatories were

21  faxed, without proof of service, at approximately 10:30 p.m. on May 30, 2006—six
    days after they were due. Mattel personally served its Second Set of Interrogatories

22  to Defendant MGA Entertainment, Inc. on April 28, 2005. Pursuant to <u>Federal Rule</u>
    <u>of Civil Procedure</u> 33(b)(3), MGA had thirty (30) days to respond to Mattel's

23  interrogatories. Judge Manella issued an order staying proceedings on May 20,

24  2005. At the time of the order, seven days remained for MGA to respond to Mattel's
    Second Set of Interrogatories. Judge Larson issued an order lifting the stay on May

25  17, 2006. Accordingly, taking the stay into account, MGA's responses were due no

26  later than May 24, 2006. <u>See</u> Zeller Dec., Ex. 30; <u>see also</u> Court's Order Staying

27  Discovery in <u>Mattel, Inc. v. Bryant</u>; <u>Bryant v. Mattel, Inc.</u>; and <u>MGA Entertainment,</u>
    <u>Inc. v. Mattel, Inc.</u>, dated May 20, 2005, Zeller Dec., Exh. 31.

28

EXHIBIT 3
PAGE 65

07209/2046181.3                          MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  MGA to provide particulars about responsive individuals such as each individual's
2  name, address, telephone number and relationship to MGA.[59]  MGA completely
3  disregarded this.  Interrogatory No. 5 asked MGA to identify each person who was
4  involved in the creation, design and development of Bratz.  In response, MGA
5  named a few individuals who were known already in this litigation, in addition to
6  wholly unspecified "various people then employed in Hong Kong, the names of
7  whom are contained in documents previously produced by MGA."

8         MGA's responses violate Fed. R. Civ. P. 33(d).  Rule 33(d) requires
9  MGA to identify referenced documents specifically and in detail, either by their
10 Bates numbers or else through a sufficiently detailed description of them to allow
11 Mattel to ascertain which specific documents are being referenced.  See, e.g., Miller
12 v. Federal Express Corp., 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (holding that,
13 under Rule 33(d), "[t]he responding party must specify the documents from which
14 the answer may be derived with sufficient detail to permit the requesting party to
15 locate it" and compelling party to identify such documents "by Bates numbers the
16 documents" being referenced); VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
17 1999 WL 386949, at *5 (D. Kan. 1999) (party may not "simply refer generically" to
18 documents produced in interrogatory response).  This deficiency is present in
19 MGA's response to Interrogatory No. 6 as well.  MGA's vague, generalized
20 reference to a heavily redacted, incomplete production also compounds the
21 shortcomings of an already deficient answer.  The particular information requested
22 in  Mattel's  instruction  is  exactly  the  type  of  information—among  other
23 information—that MGA redacted in its production or have explicitly stated it is
24 withholding, such as the MGA Hong Kong documents.

25
26
27      [59]   See Interrogatories at 4:1-5:5, Zeller Dec, Exh. 24
28

EXHIBIT   3
PAGE   66

-17-

1          Moreover, MGA simply objects to Interrogatory Nos. 7-9 and 11
2    without providing any substantive response.  As noted above, these objections were
3    waived by MGA's failure to timely respond to the Interrogatories.  Even if the
4    objections were timely, MGA's objections don't hold water.  Interrogatories 7 and 8
5    seek critical evidence that goes to the heart of this case—the earliest representations
6    of Bratz and the project known as "Angel."  As the Discovery Master has noted, the
7    rights to Bratz are at issue in this case.[60]  Further, MGA contests Anna Rhee's
8    testimony that work she performed work in June 2000 on Bratz, contending that
9    Rhee actually worked on a different project identified as "Angel" or "Prayer Angels"
10   at that time.  Interrogatory No. 9 asks MGA to identify each sworn statement that
11   refers or relates to the origins and creation of Bratz.  As with the evidence sought by
12   Interrogatory Nos. 7 and 8, this information is critical to this case.  Finally,
13   Interrogatory No. 11 asks MGA to identify phone numbers for its CEO Isaac Larian.
14   Given Mr. Larian's personal involvement in Bratz, this information may bear on the
15   defendants' story regarding the timing of Bratz.  Without the numbers, Mattel cannot
16   check for them against phone records.  MGA has no basis for withholding any of
17   this information and, therefore, should be compelled to provide full and complete
18   answers to the Interrogatories in question.

19

20   **VI.    MGA Should Be Sanctioned.**

21          Under the Federal Rules, a party bringing a motion to compel is entitled
22   to the "reasonable expenses incurred in making the motion, including attorney's fees,
23   unless the court finds that the motion was filed without the movant's first making a
24   good faith effort to obtain the disclosure or discovery without court action, or that
25   the opposing party's nondisclosure, response or objection was substantially justified,

26

27   _____

28   [60]   Discovery Master's Order at 2, Zeller Dec., Exh. 1.

07209/2046181.3

EXHIBIT ___3___
PAGE ___67___

-18-

1 | or that other circumstances make an award of expenses unjust." Fed. R. Civ. P.
2 | 37(a)(4). The burden of establishing substantial justification is on the party being
3 | sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).
4 | Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides
5 | that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably
6 | and vexatiously may be required by the court to satisfy personally the excess costs,
7 | expenses, and attorneys' fees reasonably incurred because of such conduct."
8 | Sanctions under this section are appropriate "for conduct that, viewed objectively,
9 | manifests either intentional or reckless disregard of the attorney's duties to the
10 | court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995), citing Braley v.
11 | Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987).

12 | Sanctions are called for here. MGA cannot offer any legitimate excuse
13 | for its repeated failure to produce clearly responsive documents and fully answer
14 | Interrogatories on matters that go to core issues in this case. MGA has asserted
15 | numerous objections that have no basis in law or fact. MGA has withheld, and
16 | continues to withhold, indisputably relevant information. MGA has redacted vast
17 | portions of documents, stripping them of salient information, and rendering them
18 | unintelligible. And MGA has produced documents that are demonstrably
19 | incomplete, including faxed communications that omit crucial information. Most
20 | troubling, MGA has been caught hiding the ball: failing to produce highly relevant
21 | MGA documents until after Mattel discovers the documents via third parties.
22 | MGA's actions are contrary to its obligations and imperil the truth-seeking function
23 | of the Court.

24 | Throughout the meet and confer process, MGA claimed it would
25 | remedy the deficiencies with its production, but never actually took any action to do

26

27

28

EXHIBIT ___3___

PAGE ___6 8___

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1   so.[61]  When Mattel again approached MGA after the holidays to obtain compliance

2   in the hopes of avoiding motion practice, MGA promised that it would rectify some

3   unspecified problems with the May 2005 production, but then still did not do so.

4   When queried as to its intent, during a meet and confer on January 26, 2007, all

5   MGA would commit to was making superficial changes to its production, such as

6   correcting illegible text and cut-offs, rather than addressing the production's

7   substantive defects.[62]  Although MGA represented at that time that it would review

8   the Discovery Master's recent Order compelling Bryant's production to determine

9   whether or not MGA would reconsider any of its positions and that it would let

10   Mattel know by January 30, that date came and went without further response by

11   MGA.[63]

12        MGA's stratagems are the definition of unreasonable and vexatious,

13   and MGA and its counsel should be sanctioned for the fees and costs Mattel has

14   been forced to expend as a result of its evasions in connection with its document

15   production and Interrogatory responses.  Mattel therefore requests that MGA be

16   ordered to pay $4,700.00 as partial reimbursement for the fees and costs that Mattel

17   has incurred on this Motion.[64]

18

19

20

21

22

23

24

---

25   [61]  See Zeller Dec., ¶ 34, Exh. 32-43.

26   [62]  See Zeller Dec., Exhs. 42 & 43.

27   [63]  See Zeller Dec. Exh. 43.

     [64]  See Zeller Dec., ¶ 57.

28

07209/2046181.3

EXHIBIT ___3___
PAGE ___69___

-20-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1

2                                    **Conclusion**

3            In light of the myriad deficiencies in MGA's production, Mattel

4    respectfully requests that MGA be compelled to fully answer Mattel's

5    Interrogatories and to produce all documents responsive to Mattel's document

6    requests, including, most importantly, those relating to the origin, conception,

7    design and development of Bratz.

8

9    DATED:  February 2, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
10

11                                     By_____
                                          Michael T. Zeller
12                                        Attorneys for Plaintiff and Cross-Defendant
                                          Mattel, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          EXHIBIT ___3___
28                                          PAGE ___70___

07209/2046181.3                             -21-
                                 MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

**EXHIBIT 4**

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00
CLERK U.S. DISTRICT COURT  CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE              RIVERSIDE
BY                    BY

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:   (415) 774-2611
Facsimile:   (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under submission pending the parties' submission of a proposed protective order, which was received

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT  4
PAGE  71

1   on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3                                    II.  BACKGROUND

4          A.  Requests for Documents

5          In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12         In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14         In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18         Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                          2

EXHIBIT ____4____
PAGE ____72____

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5    Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place.  In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11        Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17        Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26        [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                              3

EXHIBIT    4
PAGE       73

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6        Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12       Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17       Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21       In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          4

EXHIBIT ____4____
PAGE ____74____

1  to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2  49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3  Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4  have been released on the market.  In addition, MGA represents that it has agreed to produce

5  documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6  specifically, MGA represents that it agreed to review and produce documents provided to it by

7  Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8  Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9  Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional

11  reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12  unreleased products.  MGA asserts that its product design documents for its unreleased toy

13  concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14  designs and drawings for products currently under development, over six years after Bryant first

15  created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16  documents relating to unreleased products are ordered produced, MGA requests a protective order

17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18  than the current protective order provides.  In the alternative, MGA requests that any order

19  compelling production of documents relating to unreleased products should essentially be stayed

20  until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22  attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

EXHIBIT  4
PAGE _____ 75

1  | in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense."  MGA's
2  | Opposition at 24:9-12.[2]
3  |      Third, MGA asserts that Mattel is not entitled to review all non-public witness statements
4  | and litigation documents concerning Bratz for a variety of reasons, including because Mattel has
5  | refused to produce similar types of documents.  More significantly, MGA contends that Mattel's
6  | requests for non-public witness statements are "a blatant attempt to avoid the discovery
7  | limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations
8  | imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.
9  | MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,
10 | Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an
11 | attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel
12 | abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took
13 | the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA
14 | was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting
15 | foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created
16 | a situation in which MGA has been forced to give testimony and provide evidence related to
17 | issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.
18 |      Fourth, MGA contends that Mattel is not entitled to documents concerning a family
19 | dispute between MGA's chief executive officer and his brother because such documents are in no
20 | way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration
21 | proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,
22 | MGA contends that the brothers were bound by a protective order prohibiting the use of any
23 | documents or testimony for any purpose other than the arbitration.
24 |
25 | _____
26 |   [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.
27 |
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6



EXHIBIT __4__
PAGE __76__

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2  files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3  MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4  in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5  MGA objects to producing documents relating to any testing performed to determine the date that

6  Bratz documents were created. MGA contends that such discovery is premature and should not

7  proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10  however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections. MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18    III. DISCUSSION

19    A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT ___4___
PAGE ___77___

1    opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2    expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3    the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4    the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5    26(b)(2).

6        B. Document Requests

7            1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8                34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9        The requests above seek discoverable information regarding the origins of Bratz and

10   Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11   response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12   "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13   and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14   14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15   products and documents from MGA Hong Kong.

16        As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17   its production to "relevant and responsive non-objectionable documents" or documents

18   "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19   might be excluding documents that are responsive to the request based upon its unilateral

20   determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21   document requests ordered herein without these restrictions.

22                    Design Documents for Unreleased Products

23        MGA's design documents for unreleased products are relevant to Mattel's claims and

24   defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25   parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26   design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    8



EXHIBIT ___4___
PAGE ___78___

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2   has been approved and entered as an order of the court.  MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                               Documents from MGA Hong Kong

6            Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10           Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13           Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15                   2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16                      61, 63, 66, 67, 70, 88, 90, 91

17           Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21           As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25       //

26       //

27

28

EXHIBIT  4
PAGE _____ 79

### 3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

EXHIBIT   4
PAGE _____ 60

1    that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2    documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3    protective order that prohibits the use of any documents or testimony for any purpose other than

4    the arbitration.  MGA, however, has not provided any evidence of the protective order.

5    Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6            6. Documents Regarding Date-Testing (Request No. 92)

7            Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8    from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9    testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10   and including without limitation all results and reports relating thereto."  MGA contends that the

11   request is premature, and should proceed in the course of expert discovery.

12           The request calls for relevant discovery and there is no basis for delaying production of

13   responsive documents, other than expert reports.  The timing of expert reports is governed by

14   Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15           C. Interrogatories

16           Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17   MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18   responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19   interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20   court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21   served.  The district court lifted the stay on May 17, 2006.

22

23

24

25   _____

26   [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's
     personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
27   should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    11

EXHIBIT  4
PAGE _____  81

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2 when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3 will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5 conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6 tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7 before December 31, 2001, including a description of each person's role and the start and end

8 dates of each person's involvement. In response, MGA asserted numerous objections, but did

9 provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11 objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12 Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13 for confidential, proprietary or commercially sensitive information, or seeks information

14 protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15 it fails to provide the description of each person's role and the start and end dates of each person's

16 involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17 5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19 embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20 the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22 December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23 substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant

25 to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26 compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    12

EXHIBIT __4__
PAGE ____82____

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4         Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7         Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11        The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14        Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20        Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24        Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT __4__
PAGE __83__

1    January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2    limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3    boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5    declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6    provide a full response to Interrogatory No. 11.

7                      IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9    granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10    identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11    for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12    motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13    provide responses to interrogatories consistent with this Order, and produce a privilege log in

14    compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15    sanctions is denied.

16        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17    Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21    Dated: May 15, 2007

22                                   HON. EDWARD A. INFANTE (Ret.)

                                      Discovery Master

23

24

25

26

27

28

EXHIBIT 4
PAGE 84

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT ___ 4
PAGE ___ 85

**EXHIBIT 5**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SAN FRANCISCO, CALIFORNIA 94111-5974

TEL: (415) 984-6400
FAX: (415) 984-2698
www.skadden.com

**RECEIVED**

JAN 25 2008

FIRM/AFFILIATE OFFICES
——
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(415) 984-6463
EMAIL ADDRESS
RZUROMSK@SKADDEN.COM

January 25, 2008

<u>Via Hand Delivery</u>

Scott B. Kidman, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

     RE:   *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
            <u>(Consolidated With Case Nos. CV 04-09059 and CV 05-02727)</u>

Dear Scott:

     Enclosed please find a revised version of the privilege log served yesterday for Mr. Larian's document production.

     Very truly yours,

*Richard J. Zuromski, Jr.* /by ssc

Richard J. Zuromski, Jr.

Enclosure

cc:   Amy Park
      Andrew Temkin

EXHIBIT __5__

PAGE ____86

# EXHIBIT 6

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301-1908
———
TEL: (650) 470-4500

FAX: (650) 470-4570

www.skadden.com

DIRECT DIAL
(650) 470-4624
EMAIL ADDRESS
ATEMKIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
RESTON
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 25, 2008

**Via Hand Delivery**

Scott B. Kidman, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

        RE:    Mattel v. Bryant; Production of Documents

Dear Scott:

        Please find enclosed a CD containing single page TIFFs with Concordance load files for documents Bates-numbered MGA 3815507 - MGA 3815799  Please note that these Bates ranges include documents designated HIGHLY CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY under the stipulated protective order, as amended by subsequent stipulations and orders.

        Because of the commercially sensitive nature of these documents, we have placed them on a separate CD and in a separate package to help aid you in handling them as required for documents designated HIGHLY CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY.

        If you are unwilling or unable to handle the documents in the manner required under this designation, then we ask that you immediately return the CD and its documents to us.  Please let me know if you have any questions.

        Very truly yours,

        *Andrew C. Temkin*

        Andrew C. Temkin

Enclosure

EXHIBIT __6__

PAGE _____ 87



EXHIBIT _6_

PAGE _88_

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER