# EXHIBIT 8

RECEIVED

FEB 2 9 2008

1   THOMAS J. NOLAN (Bar No. 66992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, California 90071-3144
3   Telephone:  (213) 687-5000 / Facsimile:  (213) 687-5600
    E-mail:    tnolan@skadden.com
4
    RAOUL D. KENNEDY (Bar No. 40892)
5   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Four Embarcadero Center, 38th Floor
6   San Francisco, California 94111-5974
    Telephone:  (415) 984-6400 / Facsimile:  (415) 984-2698
7   E-mail:    rkennedy@skadden.com

8   Attorneys for Cross-Defendants
    MGA Entertainment, Inc., MGA
9   Entertainment (HK) Limited,
    MGAE De Mexico, S.R.L. De C.V.,
10  and ISAAC LARIAN

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                   EASTERN DIVISION

14  CARTER BRYANT, an individual    )  CASE NO. CV 04-9049 SGL (RNBx)
                                     )
15              Plaintiff,           )  Consolidated with Case No. 04-9059
                                     )  and Case No. 05-2727
16       v.                          )
                                     )  **DISCOVERY MATTER**
17  MATTEL, INC., a Delaware         )
    corporation                      )  **[To be heard by Discovery Master Hon.**
18                                   )  **Edward A. Infante (Ret.)]**
                Defendant.           )
19  _____ )  **DECLARATION OF RICHARD J.**
                                        **ZUROMSKI, JR. IN SUPPORT OF**
20  Consolidated with MATTEL, INC.      **MGA ENTERTAINMENT, INC.'S**
    v. BRYANT and MGA                   **MEMORANDUM OF POINTS AND**
21  ENTERTAINMENT, INC. v.              **AUTHORITIES IN OPPOSITION TO**
    MATTEL, INC.                        **MATTEL, INC.'S SUPPLEMENTAL**
22                                      **MOTIONS TO COMPEL**
                                        **(1) PREVIOUSLY WITHHELD**
23                                      **DOCUMENTS (2) DOCUMENTS**
                                        **CONTAINING TRADEMARK AND**
24                                      **OTHER "FACTUAL" DATA, AND (3)**
                                        **DOCUMENTS PROTECTED BY THE**
25                                      **COMMON INTEREST PRIVILEGE**

26                                   Hearing Date:  March 10, 2008
                                     Time:          8:30 a.m.
27                                   Place:         Telephonic

28

    _____
    DECL. OF RICHARD J. ZUROMSKI, JR. IN SUPPORT OF MGA ENTERTAINMENT, INC.'S MEMORANDUM
    OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S SUPPLEMENTAL MOTIONS

EXHIBIT ___8___
PAGE ___98___

1        ·I, Richard J. Zuromski, Jr., declare as follows:

2        1.    I am an attorney duly licensed to practice law in the State of

3  California and an associate of the law firm of Skadden, Arps, Slate, Meagher & Flom

4  LLP, counsel of record for MGA Entertainment Inc. ("MGA"), MGA Entertainment

5  (HK) Limited ("MGA HK"), MGAE De Mexico, S.R.L. De C.V. ("MGA Mexico")

6  and Isaac Larian in this action.  Except where otherwise noted, I have personal

7  knowledge of the facts set forth below and could competently testify thereto.

8        2.    Attached hereto as <u>Exhibit 1</u> is a true and correct copy of a letter

9  dated January 19, 2008, from Dylan Proctor to Amy Park.

10       3.    Attached hereto as <u>Exhibit 2</u> is a true and correct copy of a letter

11  dated February 6, 2008, from Dylan Proctor to José Allen.

12       4.    Attached hereto as <u>Exhibit 3</u> is a true and correct copy of a letter

13  dated February 13, 2008, from José Allen to Dylan Proctor.

14       5.    Attached hereto as <u>Exhibit 4</u> is a true and correct copy of a letter

15  dated February 26, 2008, from Jon Corey to Raoul Kennedy.  This letter contains

16  Mattel's purported description of the parties' Court-ordered meet and confer efforts.

17  Mattel's discussion of the motions at issue in this declaration begins on page 15,

18  paragraph 29 of the letter.

19       6.    Per the Discovery Master's February 11, 2008 order, on February

20  20, 2008, I met with Dylan Proctor at the offices of Quinn Emanuel in Los Angeles

21  to meet and confer regarding the following motions (and their respective

22  supplements) filed by Mattel:  (A) Motion to Compel Production of Previously

23  Withheld Documents Only Portions of Which Are Allegedly Privileged, (B) Motion

24  of Mattel, Inc. for Order Compelling Production of Withheld MGA: (1) Trademark

25  Search Results, (2) Date of First Use Information, and (3) Factual Information for the

26  Purpose of Filing Trademark or Other Intellectual Property Applications and (C)

27  Motion Compelling Production of Third Party Communications Improperly

28

-1-

EXHIBIT   8
PAGE      99

1  Withheld Under a Claim of "Common Interest" Privilege (collectively, "Motions to
2  Compel").

3        7.    At the commencement of the February 20 meeting, Mr. Proctor
4  stated Mattel's position that all of the documents sought in their Motions to Compel
5  related to Phase I of this matter, regardless of the date of the document, because of
6  the possibility that the document may have some information on the origins of Bratz.
7  I expressed MGA's disagreement with Mattel's position because it was highly
8  unlikely that non-privileged documents created after the public date of first use of
9  Bratz had any relevance to the "origins of Bratz" and that the documents sought by
10  Mattel were by and large created after that date.  Mr. Proctor disagreed and stated
11  that Mattel would not agree to limit its Motions to Compel to documents that were
12  clearly related to Phase I.  Mr. Proctor did state, however, that Mattel was willing to
13  accept any revised privilege logs prepared by MGA on a rolling basis.

14        8.    Mr. Proctor reiterated Mattel's position that so-called "trademark
15  search requests and results" (as opposed to trademark search *reports*) were *per se* not
16  privileged, regardless of how the results or requests were communicated between
17  attorney and client.  Thus, Mr. Proctor stated that the position Mattel took in its
18  Motions to Compel had not changed.  Specifically, it was Mattel's position that if an
19  attorney for MGA sends the results of a trademark search in a communication to
20  MGA which then goes on to provide legal advice about those results, the one
21  sentence of the communication describing the results should be produced and the
22  remainder of the communication should be redacted, as appropriate.  I expressed
23  MGA's disagreement with this position, particularly where the results and advice are
24  intertwined in the communication, because it would be difficult if not impossible to
25  distinguish and produce the "results" alone in redacted form.  I also expressed that
26  MGA's position was the same regarding the "date of first use" and any other
27  "factual" information that would be part of a privileged communication.  Mr. Proctor
28  offered no compromise to Mattel's position.

-2-

EXHIBIT __8__
PAGE __100__

1          9.     Mr. Proctor also reiterated Mattel's position that MGA had

2 improperly withheld documents under a claim of "common interest" and that Mattel's

3 moving papers were sufficient to explain their position without further discussion. I

4 explained MGA's position that third party communications can be properly withheld

5 if the parties have a common interest. Specifically, I explained that the relationship

6 between MGA and third parties such as Bandai (as discussed in the Declaration of

7 Samir Khare) would, in specific instances, rise to the level of common interest

8 necessary to prevent a waiver of privilege. Notwithstanding the new information

9 presented, Mattel offered no other information or compromise and continued to

10 disagree with MGA's position.

11          10.    I expressed MGA's position that Mattel's "supplemental" motions

12 to their Motions to Compel were untimely because they were filed after the January

13 28, 2008 fact discovery cut-off – a position I pointed out that Mattel had taken with

14 respect to motions filed by Carter Bryant – and that Mattel failed to meet and confer

15 regarding the logs discussed in their "supplemental" motions before filing such

16 motions. I also stated that Mattel never responded to MGA's February 13, 2008 offer

17 to meet and confer over the documents in the "supplemental" motions. Mr. Proctor

18 stated that Mattel disagreed with MGA's position.

19          11.    Finally, I informed Mr. Proctor that MGA had committed to re-

20 review all four thousand entries on the August 14, 2007 and September 5, 2007

21 privilege logs prepared by MGA's prior counsel and that MGA would be producing

22 those revised logs on a rolling basis beginning at the end of February 2008. I

23 informed Mr. Proctor that MGA did not intend undertake the tremendous burden of

24 conducting a similar review of any of the logs produced in November 2007 or

25 January 2008 because Mattel's contention was incorrect that MGA was withholding

26 documents that could be produced in redacted form. I informed Mr. Proctor that

27 MGA had in fact produced documents in redacted form in January and February

28 2008.

-3-

EXHIBIT ___8___
PAGE ___101___

1        12.    During the course of our discussion, it became evident that Mattel

2   was wedded to the positions it took in its Motions to Compel, specifically those

3   positions related to the production of so-called "trademark search results and other

4   factual information" as well as "information disclosed to third parties" for which

5   MGA claims the common interest exception to the doctrine of waiver applies.

6   Because of Mattel's unwavering position, it was apparent that a document-by-

7   document review of the documents listed in the November and January logs which

8   Mattel complains of in its Motions to Compel would not have been productive.  I did

9   not state, however, that MGA would be unwilling to engage in such a document by

10  document review with Mattel as it has done in the past.  In fact, it is MGA's position

11  that MGA remains willing to engage in such a review of the documents in Mattel's

12  "supplemental" motions, as it has done with regard to the documents on the August

13  and September privilege logs that are the subject of Mattel's original motions to

14  compel.  Furthermore, in preparing MGA's opposition to Mattel's supplemental

15  motions, MGA has re-reviewed all of the documents that have been identified in

16  those motions.

17        I declare under penalty of perjury under the laws of the United States of

18  America that the foregoing is true and correct.

19        Executed this 29th day of February, 2008, in San Francisco, California.

20

21                                        Richard J. Zuromski, Jr.

22

23

24

25

26

27

28

-4-

EXHIBIT ___8___
PAGE ___102___

EXHIBIT 1

EXHIBIT ___8___
PAGE ___103___

**quinn emanuel** ···· ····· , ··········

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 19, 2008

VIA FACSIMILE AND U.S. MAIL

Amy S. Park, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301

Re:     Mattel, Inc. v. Bryant

Dear Amy:

I write pursuant to our prior requests that MGA confirm that it has now produced privilege logs for all documents it has withheld on privilege grounds which it has produced to date. To my knowledge, we have never received such confirmation, leading to the inference that MGA has not done so.

This is of particular concern to us regarding the documents compelled by the Court in its August 13, 2007 Order. Although MGA has produced documents on a number of different days pursuant to this Order, the only log it has produced regarding such documents indicates at the top that it is limited to the "October 17 and October 19, 2007" document productions. As we have discussed in the past, we infer from this that MGA still has not produced a privilege log for any documents produced on *other* dates pursuant to the August 13 Order. Please let us know promptly if this is incorrect.

Also, Isaac Larian was compelled to have already provided to Mattel privilege logs for all of his withheld documents. Please be prepared to discuss whether that obligation has been satisfied.

In light of our repeated prior requests for assurance that MGA has provided logs for all its productions, as required by Court orders, and our prior discussions in this regard, Mattel intends to move to enforce the Courts prior orders, and for sanctions, potentially including waiver

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2360357.2

EXHIBIT ___1___
PAGE ___5___

EXHIBIT ___8___
PAGE ___104___

sanctions, if this matter is not promptly resolved.  Please consider this to be a request to meet and confer pursuant to the Discovery Master Order.

I look forward to hearing from you promptly.

Very truly yours,

*Dylan Proctor/sc*

B. Dylan Proctor

EXHIBIT  1
PAGE  6

EXHIBIT  8
PAGE  105

Jan 19 08 05:07p                    213 ᴏᴅᴅ 9301 ·            p.1

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   January 19, 2008        **NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Amy Park<br>Skadden | 650.470.4511 | 888.329.6334 |

**FROM:**   Dylan Proctor/Sandy Caruthers

**RE:**   Mattel v. Bryant

**MESSAGE:**

| CLIENT # 7209 | ROUTE/<br>RETURN TO: | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED? ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _1_
PAGE _7_

EXHIBIT _8_
PAGE _106_

EXHIBIT 2

EXHIBIT  8

PAGE   107

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 6, 2008

VIA FACSIMILE & U.S. MAIL

Mr. Jose Allen, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:   Mattel, Inc. v. Bryant, et al.

Dear Jose:

I write regarding the privilege logs which MGA and Isaac Larian recently produced on January 25, 28, and 30, 2008.

There are number of entries on the logs which raise concerns similar to those we have previously raised in our meet and confers regarding MGA's privilege logs.  All three logs list certain categories of documents which, from the log descriptions, do not appear to be privileged.

First, there are various entries for "photo[s],"[1] "design/drawing[s],"[2] and "pictoral presentation[s]."[3]  Given that these documents are not communications between an attorney and client, the application of the attorney-client privilege does not appear well-founded.  While some

---

[1]   See, e.g., January 25, 2008 Privilege Log Nos. 6, 7, 196, 197, 1414, 1421, 1618.

[2]   See, e.g., January 25, 2008 Privilege Log Nos. 2100, 2101, 2102; January 28, 2008 Privilege Log Nos. 47, 48, 82, 86, 87, 88.

[3]   See, e.g., January 25, 2008 Privilege Log Nos. 1874, 1875, 1881, 1882, 1884, 1885.

---

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2377023.1

EXHIBIT  2
PAGE  8

EXHIBIT  8
PAGE  108

of these entries also assert the work-product privilege, the descriptions offer little basis to determine that these documents were prepared in anticipation of litigation.

Second, as on the prior logs, numerous entries appear to be either communications disclosed to or from third parties[4] or documents from the public record, including such categories as press releases,[5] advertisements,[6] webpages,[7] excerpts from periodicals,[8] general company policies,[9] and certificates from the Trademark Office.[10]  Additionally, the logs contain a number of documents from various legal proceedings.[11]  From the descriptions given, these documents do not appear to be internal drafts, but rather operative legal documents such as subpoenas, complaints, declarations and the like.  As I am sure you will agree, the fact that a "notice of judgment" was "possibly sent to an attorney" or otherwise finds its way into the possession of MGA's attorneys does not transform an otherwise non-privileged document into one that it shielded from discovery by the attorney-client privilege.

Third, a number of the entries relate to communications regarding legal fees or invoices , vouchers, and other documents memorializing such payments.[12]  For example, entry 116 to the January 28, 2008 log is described as a "check register listing payments to counsel,"[13] and entry 118 from the same log is described as a "[s]ummary of law firm expenses for various litigation."[14]  While I appreciate that bills and other documents regarding legal fees may contain both privileged and non-privileged information, the logs suggest that these documents have been withheld in their entirety.

---

[4]  See, e.g., January 30 Privilege Log Nos. 281, 285, 287, 302.

[5]  See, e.g., January 30, 2008 Privilege Log Nos. 152, 153.

[6]  See, e.g., January 30, 2008 Privilege Log Nos. 154, 155, 156, 157.

[7]  See, e.g., January 25, 2008 Privilege Log No. 1646; January 30, 2008 Privilege Log Nos. 158, 290, 291, 301.

[8]  See, e.g., January 30, 2008 Privilege Log No. 252.

[9]  See, e.g., January 30, 2008 Privilege Log Nos. 244, 245, 246, 247.

[10]  See, e.g., January 30, 2008 Privilege Log Nos. 126, 211.

[11]  See, e.g., January 25, 2008 Privilege Log Nos. 102, 297, 782, 783, 784, 1023, 1715, 1718, 1849, 2123, 2126, 2128, 2129, 2130, 2131, 2132, 2133, 2134, 2135, 2136, 2137; January 28, 2008 Privilege Log No. 304, 431.

[12]  See, e.g., January 25, 2008 Privilege Log Nos. 335, 336, 337, 338, 339, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, 1075, 1076, 1077, 1078; January 28, 2008 Privilege Log Nos. 116, 117, 118, 150, 151, 190, 192, 193, 314, 315; January 30, 2008 Privilege Log No. 282.

[13]  January 28, 2008 Privilege Log No. 116.

[14]  January 28, 2008 Privilege Log No. 118.

**EXHIBIT** 2
**PAGE** 9

EXHIBIT 8
PAGE 109

Finally, some of the descriptions on the logs are so vague that it is impossible to tell the subject matter of the document or communication, much less determine whether the privilege has been appropriately claimed.  Specifically, a number of entries are simply described as "spreadsheet[s]" used "for the purposes of requesting legal advice," but give no indication as the type of information contained within or the attorneys involved.[15]  The same deficiency is apparent with regard to the numerous entries described as "chronolog[ies]."[16]  Other entries of a similar character which we would like to discuss include entries 1606, 1939, 2147, 2148, and 2046 to the January 25, 2008 log.

I ask that you review these documents and confirm whether MGA still stands on these assertions of privilege, and request a meet and confer pursuant to Section 5 of the Order for the Appointment of a Discovery Master.  If we are not able to resolve this matter, Mattel intends to file a motion to enforce and/or to compel production of the withheld documents, and may seek sanctions.  I look forward to hearing from you promptly.

Very truly yours,

B. Dylan Proctor /ZDK

B. Dylan Proctor

BDP:ZDK
07209/2377023.1

_____

    [15]  See, e.g., January 25, 2008 Privilege Log Nos. 578, 579, 580, 581, 600, 601, 602, 603, 604.

    [16]  See, e.g., January 28 Privilege Log Nos. 97, 110, 133, 215, 233, 236, 340, 356, 361.

07209/2377023.1                              3

EXHIBIT  2
PAGE  10

EXHIBIT  8
PAGE  110

02/06/2008 17:57 FAX  12134433100          QEUOH-LAO-2                    ☒001/004

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   February 6, 2008

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Mr. Jose Allen, Esq. Skadden, Arps, Slate, Meagher & Flom LLP 4 Embarcadero Center, Suite 3800 San Francisco, CA 94111 | (415) 984-6442 | (888)329-1260 |

**FROM:**   B. Dylan Proctor

**RE:**   Mattel, Inc. v. Bryant, et al.

**MESSAGE:**

Please see attached letter.

| CLIENT # | ROUTE/ RETURN TO: L. Kinsey | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED? ☐ No ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT  2
PAGE   11

EXHIBIT  8
PAGE   111

**EXHIBIT 3**

EXHIBIT ___8___

PAGE ___112___

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER
SUITE 3800
SAN FRANCISCO, CALIFORNIA 94111-4144
———
TEL: (415) 984-6400
FAX: (415) 984-2698
www.skadden.com

DIRECT DIAL
(415) 984-6442
EMAIL ADDRESS
JRALLEN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 13, 2008

Via Facsimile and Electronic Mail

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

RE:   *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
         (Consolidated With Case Nos. CV 04-09059 and CV 05-02727)

Dear Dylan:

       I write in response to your February 6, 2008 letter requesting to meet and confer regarding documents listed on the privilege logs produced by MGA and Isaac Larian on January 25, 28 and 30, 2008. As you state in the final paragraph of your letter, we take your request to meet and confer as a prelude to filing a motion to compel regarding the issues raised in your letter.

       We understand that Mattel has taken the position (including in a filing made yesterday evening with the Discovery Master) that the Court established January 28, 2008 as a firm cut-off for the filing of Phase 1 discovery motions. Thus, any Phase 1 motions filed after January 28, 2008 are untimely and improper, including any motions related to the issues in your February 6 letter. Accordingly, your request to meet and confer in anticipation of filing such a motion would appear to be pointless.

       Furthermore, after reviewing the privilege log entries you list in your letter, we note that many of the entries appear to have no bearing on any Phase 1 issues. As you are aware, all Phase 2 discovery has been stayed until further order from the Court. Thus, any meet and confer with respect to entries related to Phase 2 issues is premature. Please explain the relevance of the entries in question to Phase 1 issues.

EXHIBIT   3
PAGE   12

EXHIBIT   8
PAGE   113

B. Dylan Proctor, Esq.
February 13, 2008
Page 2

Next, you raise various issues regarding certain documents in the three privilege logs identified in your letter. We disagree with your contention that wholesale categories of documents are per se not privileged. We also disagree with your contention that because certain documents were disclosed to third parties they are no longer privileged.

Finally, we disagree with your contention that many entries are "vague" or otherwise deficient. We believe the descriptions are adequate for purposes of the privilege logs and are consistent with the descriptions Mattel has used in its own logs.

Very truly yours,

José R. Allen

EXHIBIT __3__
PAGE __13__

EXHIBIT __8__
PAGE __114__

**EXHIBIT 4**

EXHIBIT ___8___
PAGE ___115___

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 26, 2008

VIA FACSIMILE AND U.S. MAIL

Raoul Kennedy, Esq.                    John Trinidad, Esq.
Skadden Arps Slate Meagher & Flom, LLP    Keker & Van Nest, LLP
Four Embarcadero Center, Suite 3800    710 Sansome Street
San Francisco, California 94111        San Francisco, California 94111

Re:     Mattel v. Bryant

Dear Raoul:

I write regarding the parties' meeting of counsel on February 20 and 21, 2008, at which we discussed many of the pending discovery motions, and to memorialize certain agreements. The following is Mattel's understanding of where things currently stand:

1.      **Mattel's motion to compel (1) deposition of Carlos Gustavo Machado Gomez; and (2) consent to production of electronic mail messages.**

Mattel indicated that, because Mr. Machado's deposition pertains to Phase Two, Mattel is willing to take this motion off the Court's calendar, provided the parties stipulate that Mr. Machado will appear in Los Angeles for his deposition two weeks after the Phase Two stay is lifted. Mattel will contact Mr. Machado's counsel to raise this matter with him as well.

2.      **MGA's motion to compel Mattel to produce documents responsive to MGA's RFPs 526 and 528.**

MGA confirmed that this motion has been withdrawn until Phase Two discovery commences.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5107 FAX 858-812-5356

07200/2411230.1

EXHIBIT ___4___
PAGE ___14___

EXHIBIT ___8___
PAGE ___116___

3.       Mattel's motion to compel deposition of Littler Mendelson.

The parties discussed the possibility that Littler Mendelson will submit a declaration in place of sitting for deposition.  Mattel will prepare an initial draft of the declaration, and send it to counsel for Bryant for review.  If no agreement is reached regarding a declaration, Mattel will make a supplemental submission to Judge Infante and ask for a ruling on its pending motion.

4.       Mattel's motion to enforce the 5/15/07 order of the Discovery Master re production of Larian v. Larian documents and for sanctions.

In light of Isaac Larian's recent production of Larian v. Larian documents, Mattel suggested that it might be willing to withdraw this motion.  As I told you, however, Mattel has a few remaining questions on this subject.  You indicated that I should talk to your colleague, Jose Allen, regarding these questions.

5.       MGA, MGA HK, MGA Mexico and Isaac Larian's motion to quash subpoenas or, in the alternative, for protective order [re Mattel's subpoenas to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia, and Wells Fargo] and Mattel's countermotion to compel production.

MGA proposed that the parties work together to redraft the document requests in Mattel's subpoenas, so that the requests are limited to only those documents that Judge Infante has expressly ruled on, but which MGA has not produced to date.  As examples of documents falling into this category, MGA cited (1) documents sufficient to show Larian's gross income and sources of income for 2007, as well as (2) documents sufficient to show Larian's net worth from 1999-2004.  Mattel indicated that it would consider this approach for the Wells Fargo subpoena, but indicated that the other subpoenas at issue in this motion have additional issues that need to be addressed:

(a) ConsumerQuest:  As Mattel explained, this request should not be limited solely to Larian's and MGA's financial information.  Rather, ConsumerQuest has other information -- such as information pertaining to focus groups -- which Judge Infante has ruled relevant to this action and to which Mattel is entitled.  Thus, while Mattel is willing to work with defendants to remove any exclusively Phase Two materials from the ConsumerQuest subpoena, Mattel does not believe the subpoena should be otherwise narrowed as it relates to Phase One.  You agreed to speak to your clients to see whether they are willing to proceed with the ConsumerQuest subpoena in its current state, minus the Phase Two materials.

(b) The Larian Trusts and Moss Adams:  MGA represented that it had made an attempt to obtain compelled documents from the Trusts and Moss Adams, as both possess unique documents.  MGA agreed to follow up to determine whether these documents were subsequently produced to Mattel.  Mattel emphasized that it is looking to obtain the Trust formation documents, and any separate Trust financial statements, sought in the subpoena as well.  As to Moss Adams, Mattel noted that

EXHIBIT   4
PAGE     15

EXHIBIT   8
PAGE     117

documents from Moss Adams are in Larian's possession, custody and control, and Larian should have reviewed those records for documents that Judge Infante compelled Larian to produce. For example, Moss Adams likely has distribution amounts for Larian for years 2006-2007, which MGA's designee testified had not been produced to her. MGA agreed to identify, by Bates number, the 2006 and 2007 distribution information if it had been produced.

(c) Wachovia:  Mattel noted that Wachovia has already identified a set of documents related to the early loan MGA used to fund the first production of Bratz.  While MGA disputed Mattel's characterization of this loan, MGA stated that it is agreeable to having Wachovia produce loan documents from years 1999-2001.  Mattel responded that it is entitled to not only the loan documents themselves, but also all documents relating to the financing agreement between MGA and Wachovia.  In particular, Mattel is seeking the three boxes of documents Wachovia collected pursuant to Farhad Larian's request in a prior proceeding.  You agreed to present this issue to your clients and promised to get back to us.

Mattel also stated that it is seeking documents pertaining to any other loan transactions between MGA and Wachovia-- including documents pertaining to the 2006 transactions regarding Little Tykes.  As I explained during the meet and confer, this information is relevant to Mattel's Phase One damages claims.  Again, you agreed to follow up with your clients on this matter.

(d) Deloitte & Touche and Ernst & Young:  Mattel indicated that with respect to these subpoenas, it is seeking information necessary to test the validity of certain printouts that MGA has produced from its accounting system.

Additionally, Mattel seeks financial statements and MGA's general ledger for the year 2000, which Mattel believes may be in Deloitte's possession.  MGA responded that there is no MGA general ledger *per se*, but that there are statements showing historical trial balances.  MGA represented that it has already produced these trial balances, and indicated that it will attempt to get Mattel the relevant Bates numbers.  Mattel is aware of only excerpts.

MGA agreed to get back to Mattel with answers on each of these issues by Monday, February 25, 2008.

6.   **MGA's motion to compel Mattel to produce witnesses pursuant to notice of deposition under Rule 30(b)(6), or in the alternative, for leave to serve such notice.**

MGA acknowledged that Topic Nos. 11, 21-23, 48 and 71-85 in its Rule 30(b)(6) Notice are duplicative of topics in Carter Bryant's Notice of Deposition of Mattel, Inc.  Mattel further identified Topic Nos. 9(c), 12-17 and 39 (to the extent it pertains to copying) as duplicative.  MGA indicated that, provided it has an opportunity to ask questions on these topics at Bryant's

EXHIBIT  4
PAGE  16

EXHIBIT  8
PAGE  118

30(b)(6) deposition. MGA may be willing to withdraw these duplicative topics. The parties agreed to discuss these topics further following the deposition on Bryant's 30(b)(6) topics.

As to Topic Nos. 9(a) and (b) -- which pertain to MGA's showing of Bratz to focus groups and retailers in November 2000 [9(a)] and MGA's and Larian's encouragement, aiding and financing of Bryant to develop Bratz while he was a Mattel employee [9(b)] -- Mattel indicated that any responsive information it may have was obtained through discovery in this case and is thus designated "Attorney's Eyes Only." As such, Mattel cannot produce a knowledgeable witness on these topics. MGA responded that it is nonetheless entitled to a have a witness produced so that it may determine for itself whether Mattel possesses any relevant information outside of what has been produced in this litigation. In an effort to resolve this issue, Mattel offered to stipulate that it will not present a witness at trial to testify on this subject. MGA agreed to consider this proposal.

MGA stated that it will limit Topic No. 18 to information regarding Mattel's policies and practices in connection with employees who leave Mattel to work for competitors, and that it will not question Mattel's 30(b)(6) designee regarding specific employees.

For Topic No. 19, regarding Bryant's relationship or contacts with Paula Treantafelles during the time they were both employed at Mattel, Mattel noted that any information responsive to this topic would be in the possession of Bryant or Treantafelles -- not Mattel. Accordingly, Mattel will not designate a witness on this topic.

Mattel is also unwilling to designate a witness for Topic No. 20, regarding the floor plan and seating chart for Mattel's office in El Segundo, California in 1999 and 2000, as MGA has already received copies of the Mattel design center floor plan and seating chart, and several witnesses have already testified on this subject. Mattel will consider designating the testimony of those witnesses.

For Topic No. 26, MGA indicated that it is willing to limit this topic consistent with Judge Infante's February 11, 2008 Order on Mattel's motion for reconsideration. Specifically, MGA will limit Topic No. 26 to people employed in the Mattel design center from 1995 to the present.

As to Topic No. 27 -- the circumstances under which Bryant testified in September 2003 in the lawsuit brought by Gunther Wahl against Mattel -- Mattel informed MGA that it will have to consider whether there is anyone knowledgeable on this subject.

Mattel explained to MGA that, as stated in Mattel's RFA responses, Mattel is not seeking lost profits as Phase One damages. As such, Topic Nos. 28 and 29 are not relevant and Mattel will not produce witnesses on these topics. Nor will Mattel provide a witness on Topic No. 30, as Mattel is not seeking damages in Phase One for the devaluation of Barbie. MGA agreed to consult with its damages expert to determine whether it has all of the information it needs as to these topics and to review Mattel's responses to its requests for admission, and indicated that it might be willing to withdraw them.

07209/2411230.1                                    4

EXHIBIT __4__
PAGE __17__

EXHIBIT __8__
PAGE ___119___

Mattel informed MGA that it will not produce witnesses on Topic Nos. 31 or 58, as they are grossly overbroad.

Further, Mattel will not designate witnesses on Topic Nos. 32 or 60, as they appear to relate exclusively to Phase Two issues.

MGA recognized that to the extent Topic No. 39 pertains to trade secrets, it is a Phase Two matter, and thus agreed to withdraw that portion of No. 39 until the Phase Two discovery stay is lifted.

MGA stated that it is willing to limit Topic Nos. 42 and 47 to information pertaining to Diva Starz, and will withdraw the balance of these topics until Phase Two discovery commences.

Given its recent withdrawal of its unclean hands defense from the Phase One trial, MGA indicated that it would hold Topic No. 65 in abeyance until Phase Two.

For Topic No. 69, relating to the relationship between Fred Larian and Mattel, I informed you that I do not believe Mattel has any responsive information, as communications with Fred Larian were handled exclusively by Mattel's outside counsel. I agreed to follow up on this, and get back to you by Monday, February 25, 2008.

As to Topic No. 70, Mattel's communications internally or to third-parties concerning claims or potential claims against MGA or MGA products, MGA agreed to limit the topic to just communications with third-parties.

Finally, I agreed to go back through MGA's Rule 30(b)(6) Notice and to review several of the topics we discussed. I promised to get back to you by Monday, to let you know whether Mattel is willing to produce witnesses for any of these topics.

**7.   Mattel's motion for reconsideration of portions of Discovery Master's 12/31/07 Order [to require production of communications between Isaac Larian and Mattel employees from 1999 through the present].**

Mattel expressed its view that Judge Infante's December 31, 2007 Order granting Mattel's Request for Production No. 198 is unduly narrow, in that it is limited to communications between Isaac Larian and Mattel employees from 1999 to 2005. This date limitation is inconsistent with the allegations in Mattel's Second Amended Answer and Counterclaims, and in Mattel's Supplemental Responses to MGA's First Set of Interrogatories. You indicated that you would get back to us to let us know who we should talk to about this issue.

**8.   MGA's motion to compel Mattel to produce email.**

Mattel indicated that it appears that the electronic materials that MGA is seeking are related exclusively to Phase Two issues. As Mattel explained, any e-mails in electronic form that it possesses are either located on an exchange server that only retains files for 90 days, or on back-

07209/2411230 1                              5

EXHIBIT  4
PAGE  18

EXHIBIT  8
PAGE  120

up tapes which go back to April 2005. Given this date limitation, it is unclear how any of the electronic files MGA is requesting can be relevant to Phase One.

Mattel then noted that even assuming there are files relevant to Phase One, MGA's request for e-mail nonetheless poses a serious practical problem, given the vast number of back-up tapes that would have to be searched, and the unmanageable number of hits that would undoubtedly be returned. Further, Mattel has not received from MGA or Bryant any concrete proposal regarding (1) how the search is to be conducted (such as a reasonable list of keywords), and (2) how the costs of the search should be shifted to defendants.

Please let me know if you have a proposal for conducting this e-mail search and for shifting of costs. We look forward to discussing it with you.

In the course of discussing this motion, MGA also raised an issue not set forth in the motion as to whether Mattel had separately retained electronic documents related to other litigation -- specifically relating to Simba and Diva Starz. Mattel reminded MGA that it has already produced a substantial amount of documents to defendants regarding Simba and Diva Starz, but will look into the matter further.

9.    **MGA and MGA Mexico's motion for protective order from Mattel's fourth notice of deposition of MGA and notice of deposition of MGA Mexico.**

Mattel noted that the topics directed at MGA Mexico pertain to Phase Two discovery, and will therefore be put on hold until Phase Two discovery commences. As to the topics relevant to MGA, Mattel identified the following which pertain, at least in part, to Phase One: Topic Nos. 7-14, 82, 84-87, 89-95, 97, 98 and 102.

MGA disputed that Topic Nos. 7-14, 97 and 98 relate to Phase One, contending that because they refer to the "contested MGA products" they are, by definition, exclusive to Phase Two. Mattel responded that these topics are relevant to Phase One to the extent they relate to early Bratz development, but agreed to go back and reconsider them.

MGA contended that Topic No. 102 is duplicative of the financial information for which Lisa Tonnu was designated. Mattel responded that documents relevant to this topic were put in front of Ms. Tonnu at her first deposition, but that she did not have any knowledge or information regarding them. Thereafter, Ms. Tonnu was ordered to appear for further deposition. At the request of your colleague, Carl Roth, Mattel provided MGA with copies of the documents that had previously been presented to Ms. Tonnu. Mr. Roth indicated that he would inform Mattel if Ms. Tonnu was to be designated on this topic at the further deposition. Mr. Roth never so indicated. Accordingly, Mattel is now entitled to a witness on this topic.

MGA conceded that Topic Nos. 82, 84-87 and 94 are relevant to Phase One, but argued that they are duplicative of MGA's interrogatory responses.

EXHIBIT   4
PAGE   19

EXHIBIT   8
PAGE   121

MGA argued that Topic 95 is identical to Topic 34 in Mattel's Second Notice of Deposition Pursuant to Rule 30(b)(6) to MGA, which Judge Infante previously excluded.

As to Topic Nos. 89-93, which all pertain to Fred Larian, MGA has agreed to produce a witness, though was unable to identify who the witness will be or when that witness will be available. MGA did confirm, however, that it will be a single witness.

Finally, the parties recognized that Mattel has not yet filed an opposition to this motion. As you know, when Mattel requested additional time for the opposition, MGA indicated that Mattel can take as much time as it needs, provided that MGA is permitted 10 days thereafter to reply. The parties agreed that Mattel will file an opposition pertaining to the narrow issues of Topics 82, 84-87, 94 and 95, and possibly 7-14, 97 and 98. The parties further agreed to put the remaining issues in this motion off until the Phase Two stay is lifted.

**10.    Mattel's motion to (1) enforce the Court's 8/13/07 Order and to compel; and (2) for award of monetary sanctions.**

The parties agreed that this is a Phase Two motion and thus should be put off until Phase Two. However, Mattel noted that this motion may be withdrawn entirely if MGA can answer the questions raised in Mattel's January 31 and February 4, 2008 letters to your colleague, Andrew Temkin. MGA agreed to look into this issue and get back to Mattel.

**11.    Carter Bryant's Motion to Quash Mattel Inc.'s Subpoena Issued to People's Bank of the Ozarks or in the Alternative, for Protective Order.**

Mattel expressed its view that the notice arguments raised in Bryant's papers are moot, as Bryant has not suffered any prejudice. Bryant disagreed.

In an attempt to resolve this motion without further motion practice, Mattel proposed that the parties apply the same agreement they had reached as to the Foothill subpoena to the subpoena at issue here. Bryant agreed to consider this offer, but contacted Mattel following the meet and confer to reject this offer.

As such, this motion will be submitted to the Discovery Master for consideration.

**12.    Mattel's motion to compel production of documents improperly withheld as privileged by MGA, Isaac Larian and third party David Rosenbaum.**

Mattel noted that it has withdrawn that portion of its motion relating to MGA's waiver of privilege. The parties were unable to discuss the few outstanding issues in this motion, as you indicated that you had not yet had a chance to review Mattel's reply brief. You stated that you would look into this matter and get back to Mattel. We look forward to hearing from you.

7

EXHIBIT  4
PAGE  20

EXHIBIT  8
PAGE  122

13.    Mattel's motion to compel deposition of MGA Hong Kong and for sanctions.

MGA offered to provide a witness for an additional 7 hours of deposition, with such witness to be educated on 20 topics of Mattel's choosing. Pursuant to this proposal, the witness will only be responsible for prepping on the 20 specified topics. MGA indicated, however, that to the extent Mattel asks questions outside of those 20 topics, the witness will be permitted to answer as to his or her personal knowledge. That is, MGA will object to such questions as beyond the scope of the deposition, but will not instruct the witness not to answer.

Mattel will respond to this offer under separate cover.

14.    Mattel's motion to enforce the Court's 5/15/07 Order, to compel MGA to produce compelled calendars, and for sanctions.

In its reply to this motion, Mattel identified certain calendars and planners which it believed that MGA had failed to produce. MGA informed Mattel that it had in fact produced these materials, and provided the relevant Bates numbers. Thank you for identifying these calendars and planners. We are investigating MGA's claims in this regard.

MGA also confirmed that it has now produced to Mattel all year 2000 calendars and planners in its possession, both electronic and hard copy. MGA explained that many of the year 2000 calendars and planners no longer exist.

Mattel raised two issues with respect to Isaac Larian's calendar. First, Mattel noted that the produced copy of Larian's calendar has text which has been cut-off. MGA responded that the copy with portions cut-off is the only version in its possession. MGA further noted that it only has this calendar in hardcopy -- not the full electronic version. Mattel noted that this is inconsistent with MGA's repeated representations in this case that it preserves *all* electronic documents. MGA was unable to explain why the electronic version of Larian's 2000 calendar purportedly does not exist.

Second, Mattel pointed out that MGA has only produced Larian's calendar from October 1999 through 2000, and has omitted all entries that pre-date October 1999. Mattel also pointed out that MGA has not produced year 1999 calendars for any other individuals either. As we told you at the meet and confer, we have previously discussed with your colleague Mr. Temkin that Mattel's requests, on which MGA was ordered, seek all pre-2001 -- including 1999 -- calendars relating to Bratz. Indeed, it appears that late 1999 Larian calendar pages were produced for this reason. MGA responded that Bratz purportedly did not exist in 1999, and thus that 1999 calendars cannot possibly contain any materials which are responsive to Mattel's requests. However, as Mattel responded, there is no indication that MGA has even searched for 1999 calendars (other than the few months of Larian's calendar it has produced), so it is unclear how MGA could know that there will not be any responsive material in these earlier entries. Moreover, as you know, Mr. Larian's prior statements suggest MGA was involved with Bratz in 1999.

EXHIBIT   4
PAGE   21

EXHIBIT   8
PAGE   123

MGA agreed to look into the issue of whether the pre-October 1999 materials were searched. Mattel indicated that if MGA did in fact search for these materials, and has produced all responsive materials in its possession from both 1999 and 2000, Mattel will consider taking this motion off of the Court's calendar.

**15.**   **Mattel's motion to compel production of documents by MGA in response to Mattel's fifth set of requests for documents and things to MGA.**

Prior to our meeting on February 21, MGA had not made any response to these requests, and had only objected. However, MGA provided the following information at our conference:

MGA represented that it does not have a general ledger, but stated that it has produced historical trial balances for the period from 1996 to October 2007 — including the year 2000.

MGA claimed that it has produced documents showing MGA payments to Larian and others, and identified these documents by Bates numbers. MGA further stated that Lisa Tonnu has testified on this subject.

MGA stated that to the extent any documents showing any gifts or loans from MGA to Isaac Larian exist, they are covered by the materials that MGA has already produced and identified in this case.

MGA stated that it is not willing to produce MGA's and Larian's bank records, given that Judge Infante recently rejected an interrogatory which sought similar information. MGA further noted that it has already produced documents identifying the financial institutions where Larian's and MGA's accounts are located.

As to the requests seeking salary and payment information, MGA stated that it has already produced audited financial documents and trial balances which it claims cover these requests. MGA acknowledged that these produced materials are not broken down by person, but indicated that it is not willing to produce any further documents pursuant to these requests.

With respect to Request Nos. 40-47, MGA indicated that it will not produce the requested documents, on the grounds that these requests are purportedly overbroad.

As to Mattel's requests pertaining to corporate governance documents, MGA indicated that there are only two categories for which it is willing to produce any documents. MGA offered to produce the minutes for board of directors and shareholder meetings, insofar as they refer or relate to Carter Bryant or Bratz and are from the period 1999 to May 2001. Mattel responded that to the extent documents exist from the 1999 to 2001 period which refer or relate to Bratz, they should *already* have been produced pursuant to the Court's Order.

MGA agreed to produce all documents responsive to Mattel's Request No. 33 — which seeks documents sufficient to identify MGA's officers and directors, including all relevant positions and dates, from 1999 to 2007.

EXHIBIT   4
PAGE   22

EXHIBIT   8
PAGE   124

As to the remaining requests in Mattel's Fifth Set, MGA indicated that it will be standing on its objections.

Mattel will consider the information provided by MGA and respond shortly.

16. **MGA defendants' motion to quash subpoena to Bank of America or, in the alternative, for protective order.**

Mattel indicated that it would consider MGA's proposal that the parties work together to narrow Mattel's requests to those documents which Judge Infante has ordered produced, but which MGA has not yet produced to date.

17. **Mattel's motion to compel MGA to produce communications regarding this action [re RFP No. 48 in Mattel's first set of RFPs].**

MGA offered that if Mattel narrows its request insofar as it relates to MGA employees to a list of approximately 5-10 specifically identified employees, MGA will conduct a search and produce those individuals' communications that refer or relate to this action. The parties have engaged in follow up discussions on this issue since the meet and confer, and Mattel is hopeful we will be able to reach resolution.

MGA reiterated that it will not conduct such a search with respect to outside counsel or agents of MGA in any circumstances. Accordingly, this portion of the motion will need to go forward one way or another.

18. **Mattel's motion to compel MGA, MGA Hong Kong, Isaac Larian, and Carter Bryant to respond to Mattel's first set of RFAs propounded to MGA, Carter Bryant, MGA Hong Kong and Isaac Larian.**

Bryant has served supplemental responses and met and conferred with Mattel regarding those responses. As Mattel has separately advised, it is willing to withdraw the motion as to Bryant.

As to MGA, Mattel noted that it had just received MGA's supplemental responses to Mattel's First Set of Requests for Admission on the morning of February 21, 2008. While Mattel acknowledged that these supplemental responses are an improvement over MGA's initial responses, it stated that they nonetheless remain deficient. As Mattel explained, these supplemental responses are improper in that, for every request for admission, MGA denies both the positive and negative proposition. Mattel stated that unless MGA further supplements its responses to correct this issue, Mattel is unwilling to withdraw this motion as to MGA. Moreover, MGA has not supplemental some of the RFAs at issue in Mattel's motion at all.

The parties also discussed MGA's failure to timely file a substantive opposition to this motion, or to otherwise seek an extension, as Carter Bryant did. Notwithstanding the untimeliness of MGA's contemplated opposition, the parties agreed that MGA will be permitted to file it if it

07209/2411230.1                                10

EXHIBIT ___4___
PAGE ___23___

EXHIBIT ___8___
PAGE ___125___

does so promptly.  MGA confirmed that in light of Mattel's willingness to meet and confer on MGA's supplemental responses, MGA will not argue in any opposition it chooses to file that Mattel's motion should be denied because it purportedly failed to meet and confer as to the initial responses.

19.   **Carter Bryant's motion to compel responses to discovery requests [re ROG No. 20 of second set; first and second sets of RFAs; RFP Nos. 10, 21-32 of fourth set].**

Mattel reiterated its position, as reflected in its *ex parte* application to strike Bryant's motion to compel, that Bryant's motion -- which was filed after the close of Phase One discovery -- was untimely, and that Mattel should therefore not be required to file any substantive response to it. The Discovery Master ruled on this issue yesterday.

In order to alleviate the burden on the Discovery Master, Mattel suggested that the parties work together to find a way to present to Judge Infante Mattel's argument that Bryant's discovery requests were not properly served (as well as its untimeliness argument) before the Discovery Master considers Bryant's motion to compel.  As Mattel noted, if the Discovery Master were to rule in Mattel's favor on either the timeliness or service issue, then Bryant's motion is moot. Conversely, if the Discovery Master were to reject both of Mattel's arguments, then Mattel would serve supplemental responses to many of Bryant's discovery requests, and the parties could work to narrow their disputes as to any remaining requests, alleviating the burden on the Discovery Master (Bryant's motion relates to more than 300 separate discovery requests). Bryant rejected this proposal.

20.   **Mattel's motion to compel production of documents and things by MGA and for award of monetary sanctions [re 3rd Set RFPs, including Nos. 1-88].**

For Mattel's Request Nos. 1-30, seeking documents pertaining to other Bratz lawsuits, MGA complained that it has already produced more than 20,000 pages of documents with respect to other litigation, including sworn statements in connection with Requests Nos. 37 and 38 of Mattel's First Set of RFPs, and Requests Nos. 19-20 of Mattel's RFPs regarding unfair competition.  Accordingly, MGA indicated that it is unwilling to produce any further documents.

Mattel responded that the documents MGA produced in response to Nos. 37 and 38 of Mattel's First Set were limited to sworn statements.  Here, Mattel is not limited to just sworn statements, but rather is entitled to a broader set of responsive materials.  In order to ameliorate MGA's concern that producing further documents would be unduly burdensome, Mattel offered to start with the following: MGA will identify the relevant counsel, and Mattel will send someone to go through the non-privileged files.  MGA agreed to consider this proposal.

With respect to Mattel's Request No. 31, seeking documents relating to the use of the term "Jade," MGA offered to provide responsive documents through May 2001.  Mattel requested that MGA provide documents through September 2001.  You agreed to present this request to your clients.

EXHIBIT  4
PAGE  24

EXHIBIT  8
PAGE  126

As to Request Nos. 32 and 33, which seek documents regarding when Sandra Bilotto first came to MGA's attention and was first hired by MGA, MGA argued that even if these requests are relevant, they pertain to Phase Two.

For Request Nos. 34, 35, 37 and 39, MGA represented that it has already produced all documents and materials responsive to these requests in connection with other discovery requests, and that these productions were not limited by MGA's objections.

MGA contended that Request Nos. 36 and 38 are exclusively Phase Two issues.

For Request No. 40, pertaining to payments made by MGA to Bilotto, MGA offered to produce responsive materials through May 31, 2001. Mattel requested that MGA produce documents through September 2001, and that MGA use not the payment date as the relevant trigger, but rather the date the payment was requested. MGA agreed to consider this.

For Request No. 41, MGA represented that it has produced responsive materials up to January 1, 2001 and proposed to supplement this production with materials that refer or relate to Bryant or Bratz (though not Mattel products) through May 2001. Mattel again asked that the production be through September 2001, which you agreed to present to your clients.

For Request No. 42, communications between Larian and Paula Garcia, MGA indicated that it would be willing to search for and produce communications between Larian and Garcia, which refer or relate to Bryant or Bratz, through May 2001. MGA agreed to consider producing such communications through September 2001. MGA also noted that it may have already produced communications between Larian and Garica that post-date January 2001, in connection with other discovery requests. MGA agreed to confirm this.

As to Request No. 76, payments from MGA to Garcia, MGA represented that it has already produced any materials that pre-date January 1, 2001, but not those that post-date it. MGA agreed to produce such materials, through May 2001. After Mattel requested that MGA produce documents through September 2001, MGA agreed to consider it.

With respect to Mattel's requests seeking documents pertaining to Scooter Samantha and Space Babes, MGA contended that the requests are only relevant to Phase Two. Mattel responded however that the Scooter Samantha requests are relevant to Phase One, in that these requests go to Garcia's credibility.

For Request Nos. 78-86, which seek vendor and personnel files for various MGA employees and vendors, MGA represented that it had searched for and produced responsive materials from vendor files pre-dating January 1, 2001. MGA offered to supplement this production with materials through May 2001, and agreed to consider supplementing through September 2001. MGA also indicated that it would have to double check whether these individuals' personnel files had been searched in addition to their vendor files.

EXHIBIT ___4___
PAGE ___25___

EXHIBIT ___8___
PAGE ___127___

Request Nos. 87 and 88 ask for personnel and vendor files for MGA employees or vendors who previously worked for Mattel. MGA contended that these requests are limited to Phase Two. Mattel responded, however, that to the extent MGA identified former Mattel employees in its interrogatory responses who later worked on Bratz, these individuals are plainly relevant to Phase One. Mattel further stated that as to these people, Mattel wants their entire vendor and personnel files. To facilitate this process, Mattel agreed to get back to MGA with a list of people who fall into this category.

### 21.   MGA's motion to overrule Mattel's and Richard De Anda's objections to subpoena and to compel discovery.

With respect to MGA's requests regarding investigations conducted by Mr. De Anda, Mattel has previously represented to MGA that Mr. De Anda does not possess any responsive documents. MGA asked us to confirm that this representation is not limited to Mr. De Anda's personal files, but also includes his company's files. We confirmed that he does not possess responsive investigation materials in either his personal or company's records.

As to the balance of MGA's motion, MGA indicated that it is willing to narrow it to Request Nos. 5, 6 and 11. For Request No. 11, MGA stated that it is seeking any employment agreements between MGA and Mr. De Anda, as well as any documents related to such agreements. I informed you that my colleague Tim Alger would be meeting with Rob Herrington of your firm, to meet and confer regarding a broader discovery request that would encompass Request No. 11. I therefore suggested that the discussion regarding this request be wrapped into Tim's and Rob's discussions.

With respect to Request Nos. 5 and 6, MGA indicated that it is seeking documents sufficient to show (1) how much time Mr. De Anda has been devoting to his business, and (2) what type of work he has been doing in connection with his business. I responded that Mr. De Anda has previously testified that he does not devote much time to his business. Nevertheless, I agreed to follow up with Mr. De Anda to determine whether he maintains time records or possesses any other information responsive to these requests.

MGA stated that in producing materials responsive to Requests Nos. 5 and 6, Mr. De Anda is free to redact any private information pertaining to client identification.

### 22.   MGA and Carter Bryant's joint motion to compel an unredacted version of M0074400, Mattel's Investigative File 02-299 and the further deposition of Richard De Anda.

Mattel informed you that it is unwilling to produce Mr. De Anda for any further deposition, given the fact that MGA wasted the entire morning during his previous deposition. Mattel also informed you that it has submitted both the unredacted version of M0074400 and Mattel's Investigate File 02-299 to Judge Infante *in camera*, for his consideration.

07209/2411230 1                                   13

EXHIBIT  4
PAGE  26

EXHIBIT  8
PAGE  128

23.    **MGA's motion to overrule Mattel's relevance objection and compel discovery relevant to statute of limitations and laches defenses.**

With respect to MGA's Requests for Production, Mattel represented that it has not asserted relevance objections to Request Nos. 186-188 and 190. Mattel further noted that although it did assert a relevance objection to Request No. 189, that objection has nothing to do with MGA's statute of limitations or laches defenses. And, while it has raised relevance objections to Request Nos. 191-194, Mattel represented that it has not withheld any documents responsive to these requests on relevance grounds. Mattel offered to supplement its responses to MGA's Requests for Production to reflect this.

Mattel also represented that as to its responses to MGA's interrogatories, Mattel is not withholding responsive information on relevance grounds. MGA nonetheless contended that Mattel has purportedly failed to provide full and complete answers to Interrogatory Nos. 5, 9, 10 and 11. Mattel responded that its interrogatory responses are sufficient under the standard previously advocated by defendants and recently adopted by Judge Infante, which provides that interrogatory responses need only set forth "principal facts." Accordingly, Mattel indicated that it will not provide any further responses to MGA's interrogatories.

Mattel also stated that it will not supplement its answers to MGA's Requests for Admission, as the requests are defective on their face. Specifically, Mattel noted that MGA's requests are improperly compound.

24.    **Mattel's motion to compel the continued deposition of Isaac Larian and to overrule instructions not to answer.**

MGA stated that it would be amenable to producing Mr. Larian for a few additional hours of deposition, but that the examination would be limited to Phase Two topics and that the deposition would not take place until Phase Two. Mattel informed you that this proposal is unacceptable, as Mattel is entitled to examine Mr. Larian further on Phase One issues. Accordingly, this motion will have to be resolved by Judge Infante.

25.    **MGA Defendants' motion to quash deposition subpoenas [re non-parties Mel Woods, Daphne Gronich, Joe Tiongco, NPD Group, Inc., Ana Isabel Cabrera, Beatriz Morales, Moss Adams, and Wachovia Corp.; and Maria Elena Salazar].**

Mattel expressed its view that the Court's February 4, 2008 Order provides that depositions for which Judge Larson granted leave do not count toward the 24 deposition limit imposed by the Court. MGA disagreed, contending that the Court merely granted Mattel relief from the 24 deposition limit, but left open the question of whether those depositions count toward the limit.

Mattel informed MGA that it intends to proceed with its third-party depositions, notwithstanding MGA's erroneous reading of the Court's Order.

EXHIBIT  4
PAGE  27

EXHIBIT  8
PAGE  129

Additionally, Mattel stated its position that the February 4 Order granted Mattel leave to take the depositions of Joe Tiongco and Daphne Gronich regarding document preservation. MGA again disputed Mattel's reading, arguing that the document preservation issue is likewise an open issue to be decided by the Discovery Master.

26.   **MGA's and Carter Bryant's joint motion to compel production of improperly withheld Mattel documents showing Mattel's investigation of MGA and Carter Bryant prior to November 2003 and to compel production of all "NHB" documents.**

Mattel agreed to submit the two "NHB" documents at issue in this motion to Judge Infante *in camera* for his consideration. The parties were unable, however, to reach an agreement on MGA's and Bryant's demand that Mattel conduct a new search for all documents using "NHB."

Defendants reiterated their position that they are entitled to a new search for all "NHB" documents, but defendants were unable to articulate a basis for such a search, given that Mattel has represented that it has not withheld any unprivileged document that falls into a category that Mattel has agreed or been ordered to produce on the basis that it uses "NHB."

Indeed, as Mattel noted, the fact that Mattel inadvertently produced the two "NHB" documents at issue here, and its production of other, non-privileged "NHB" documents, demonstrates that Mattel has not withheld unprivileged "NHB" documents.

27.   **Mattel's motion to compel a complete response to Mattel's supplemental interrogatory re Test Projects.**

The parties were unable to reach any resolution on this matter. Accordingly, the motion will be submitted to Judge Infante.

28.   **Mattel's motion for order enforcing Court's 1/25/07 Order compelling Bryant to produce computer hard drives and for sanctions.**

The parties were unable to reach any resolution on this matter as well. Accordingly, the motion will also be submitted to Judge Infante.

29.   **Mattel's (I) motion to compel documents only portions of which are allegedly privileged; (II) motion for order compelling production of withheld MGA (1) trademark search results, (2) date of first use information, and (3) factual data communicated for the purpose of filing trademark or other intellectual property applications; and (III) motion compelling production of third party communications improperly withheld under a claim of "common interest" privilege.**

MGA reiterated its prior positions on these motions and stated that it would not be offering any compromises. MGA explained that it was still working on re-producing documents on its August and September logs in redacted form but did not offer further guidance as to when Mattel can expect to receive such documents. Mattel reiterated that it would not object to these

EXHIBIT   4
PAGE   23

EXHIBIT   8
PAGE   130

revisions being produced on a "rolling basis." MGA also confirmed that it would not reproduce any documents on its November or later logs in redacted form.

As to the second motion, MGA reiterated its position that because the communications at issue involved attorney-client communications, any factual information, including date of first use information and trademark search results, are shielded from disclosure. Mattel reiterated that it is not seeking any privileged advice, and that the documents containing date of first use information, trademark search results and the like can be produced in redacted form.

As to the third motion, MGA reiterated its position that its relationship with Bandai and other third parties entitles it to assert the common interest doctrine to avoid waiver of the underlying privilege. Mattel reiterated the reasons why it disagrees. Thus, this motion as well will have to be decided.

As to all the motions, MGA indicated that its position is that only the August and September logs are properly at issue. Specifically, although the deficiencies raised in each of Mattel's motions are common across all of MGA's logs, MGA stated that only the August and September logs had been the subject of Mattel's initial meet and confer letter. However, as Mattel stated, the lengthy meet and confer process was not limited to any specific logs, and the deficiencies in the later logs had been properly raised during the meet and confer process. Mattel offered to discuss on an entry-by-entry basis the specific entries from MGA's November and January logs raised in Mattel's pending motions. MGA refused to discuss any of these specific entries as "untimely." MGA also refused to discuss the specific entries raised in Mattel's letter of February 6, 2008 as "untimely." However, MGA did reiterate that its legal positions are the same as to all the logs.

MGA confirmed that, with the exception of the revised August and September logs it has promised to serve, the MGA parties and Larian have served all outstanding privilege logs.

Please let me know if you have any questions regarding the foregoing. I look forward to hearing from you soon.

Respectfully submitted,

*Jon D. Corey* /SN

Jon D. Corey


cc:   Amy Park, Esq.
      Tim Miller, Esq.
      Paul M. Eckles, Esq.

16

EXHIBIT  4
PAGE  29

EXHIBIT  8
PAGE  131

02-26-08   08:18pm   From-SKADDEN ,ARPS PALO ALTO          16504704576          T-362   P.01   F-586

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:   February 26, 2008                    NUMBER OF PAGES, INCLUDING COVER: 17

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Raoul Kennedy, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| John Trinidad, Esq./Keker & Van Nest, LLP | 415/391-5400 | 415/397-7188 |
| Amy Park, Esq./Skadden Arps Slate Meagher & Flom LLP | 650/470-4500 | 650/470-4570 |
| Timothy Miller, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| Paul M. Eckles, Esq./Skadden Arps Slate Meagher & Flom LLP | 212/735-3000 | 212/735-2000 |

FROM:   Jon D. Corey

Skadden, Arps, Slate

RE:   Mattel v. Bryant, et al.

FEB 2 6 2008

MESSAGE:

| CLIENT # | 07209 | ROUTE/ RETURN TO: | Tiffany Garcia | ☑ CONFIRM FAX ☑ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | CONFIRMED? | ☐ NO   ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

**EXHIBIT 4**
**PAGE 30**

EXHIBIT 8
PAGE 132

**EXHIBIT 9**

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail:   tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, Suite 3800
   San Francisco, CA 94111-5974
7  Telephone: (415) 984-6400
   Facsimile: (415) 984-2698
8  Email:     rkennedy@skadden.com

9  Attorneys for MGA Entertainment, Inc.,
   MGA Entertainment (HK) Limited,
10 MGAE de Mexico S.R.L. de C.V.,
   and Isaac Larian

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    EASTERN DIVISION

14  CARTER BRYANT, an individual      )   CASE NO. CV 04-9049 SGL (RNBx)
                                      )
15              Plaintiff,            )   Consolidated with Case No. 04-9059 and
                                      )   Case No. 05-2727
16         v.                         )
                                      )   **DISCOVERY MATTER**
17  MATTEL, INC., a Delaware          )
    corporation                       )   **[To be heard by Discovery Master
18                                    )   Hon. Edward A. Infante (Ret.)]**
                Defendant.            )
19                                    )   **MGA ENTERTAINMENT, INC.'S
                                      )   MEMORANDUM OF POINTS AND
20  Consolidated with MATTEL, INC. v. )   AUTHORITIES IN OPPOSITION
    BRYANT and MGA                    )   TO MATTEL, INC.'S MOTION TO
21  ENTERTAINMENT, INC. v.            )   COMPEL PRODUCTION OF
    MATTEL, INC.                      )   PREVIOUSLY WITHHELD
22                                    )   DOCUMENTS ONLY PORTIONS
                                          OF WHICH ARE ALLEGEDLY
23                                        PRIVILEGED**

24                                        Hearing Date: TBD
                                          Time:        TBD
25                                        Place:       TBD

26

27                                        EXHIBIT __9__

28                                        PAGE __133__

                        2-7-08

   MGA'S MEMO OF POINTS AND AUTHORITIES IN OPP. TO MATTEL, INC.'S MOTION TO COMPEL
   PRODUCTION PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE PRIVILEGED

1

## **TABLE OF CONTENTS**

2                                                                                                    **PAGE**

3   TABLE OF AUTHORITIES ................................................................................... ii

4   MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

5   I.   PRELIMINARY STATEMENT ........................................................... 1

6   II.   STATEMENT OF FACTS................................................................... 2

7        A.   The August 15 and September 5, 2007 Privilege Logs ............. 2

8        B.   The November 15, 2007 Privilege Log....................................... 4

9        C.   The January 15, 2008 Privilege Log .......................................... 5

10  III.   ARGUMENT........................................................................................ 6

11       A.   Mattel's Motion to Compel MGA to Produce Documents in
              Redacted Form Should Be Denied.............................................. 6

12       B.   The Documents Withheld by MGA Are Privileged.................... 7

13       C.   Mattel Has Failed to Engage in a Proper Meet and Confer
14            With Regard to the November 2007 and January 2008
              Privilege Logs ........................................................................... 9

15       D.   MGA Has Adequately Described the Documents on Its
16            Logs............................................................................................ 10

17  IV.   CONCLUSION .................................................................................... 11

18

19

20

21

22

23

24

25

26

27   EXHIBIT ___9___

28   PAGE ___134___

-i-

# TABLE OF AUTHORITIES

PAGE(S)

Cases

Connor Peripherals, Inc. v. W. Digital Corp.,
   No. C 93-20117 RMW/EAI 1993, U.S. Dist. LEXIS 20149
   (N.D. Cal. June 8, 1993)............................................................................. 8, 9

In re Grand Jury Investigation,
   974 F.2d 1068 (9th Cir. 1992)........................................................................ 10

Upjohn Co. v. United States,
   449 U.S. 383 (1981).................................................................................. 7, 8

Wrench LLC v. Taco Bell Corp.,
   212 F.R.D. 514 (W.D. Mich. 2002) ................................................................... 8

EXHIBIT ___9___

PAGE ___135___

-ii-

## MEMORANDUM OF POINTS AND AUTHORITIES

Counter-defendant MGA Entertainment, Inc. ("MGA") respectfully submits this opposition to Mattel, Inc.'s Motion to Compel Production of Previously Withheld Documents Only Portions of Which Are Allegedly Privileged, filed on January 22, 2008.

### I.   PRELIMINARY STATEMENT

By order dated December 19, 2007, the Discovery Master denied Mattel's Motion to Compel Production of Documents Withheld as Privileged in privilege logs prepared by MGA's prior counsel on August 14, September 5 and November 15, 2007. Undaunted by this adverse ruling, Mattel has launched a new attack on the August and September privilege logs. This time around Mattel complains that the logs are deficient because MGA has allegedly withheld from production entire documents which contain any privileged material instead of producing such documents in redacted form. Mattel also asserts that MGA has failed to adequately describe in the logs the documents it withheld from production.

Mattel's motion should be denied. First, as Mattel itself admits, during the meet and confer process MGA agreed to review the August and September logs and to produce in redacted form any documents it determined could be feasibly redacted. In light of this voluntary commitment, Mattel's motion to compel is wholly unnecessary and wasteful of judicial resources.

Second, Mattel has failed to meet and confer with respect to privilege logs produced by MGA in November 2007 and January 2008. Therefore, its attempt to bypass the meet and confer process is improper.

Third, Mattel's complaints about the adequacy of the descriptions of documents included on the privilege log are without merit. The descriptions adequately identify the documents withheld from production and the basis for the claim of privilege. Nothing more is required. In addition, the descriptions are strikingly similar to the descriptions Mattel used in its own privilege logs. If Mattel

-1-

EXHIBIT   9
PAGE   136

1 believes that descriptions in its own logs are adequate then similar descriptions by

2 MGA also should suffice.

3 **II.     STATEMENT OF FACTS**

4     **A.     The August 15 and September 5, 2007 Privilege Logs**

5           On August 14 and September 5, 2007, MGA's prior counsel prepared

6 and produced privilege logs listing documents that had been withheld from

7 production on the grounds of privilege. (Proctor Declaration in Support of Mattel's

8 Motion to Compel Production of Previously Withheld Documents Only Portions of

9 Which are Allegedly Privileged ("Proctor Decl.") ¶¶ 24, 25, Exs. 14, 15.) Mattel

10 subsequently moved to compel production of the documents listed on the August and

11 September logs on the ground that MGA's production of those logs was untimely.

12 Mattel also sought a ruling that MGA's alleged tardy production of the August and

13 September logs had resulted in a wholesale waiver of the attorney-client privilege as

14 to all documents listed in those logs. By order dated December 19, 2007, the

15 Discovery Master denied Mattel's motion to compel and its request for a finding of a

16 wholesale waiver of the attorney-client privilege. (Declaration of José R. Allen in

17 Support of MGA's Memoranda of Points and Authorities in Opposition to Mattel's

18 Motions to Compel (1) Previously Withheld Documents, (2) Documents Protected

19 by the Common Interest Privilege and (3) Documents Containing Trademark and

20 Other "Factual" Data ("Allen Decl.") ¶ 2, Ex. 1.)

21           On December 7, 2007, counsel for Mattel asked to meet and confer with

22 new counsel for MGA to discuss the August and September privilege logs. (Proctor

23 Decl. ¶ 11, Ex. 1.) In its meet and confer letter, which came almost four months

24 after receiving the August log and three months after receiving the September log,

25 Mattel raised a host of alleged deficiencies with regard to both privilege logs. (See

26 id.) First, Mattel's counsel asserted that it had been informed by MGA's prior

27 counsel that attachments to privileged documents had not been separately logged;

28 rather, if the initial document was privileged, all attachments to that document were

-2-

EXHIBIT _____ 7

PAGE _____ 137

1  treated as privileged and were not separately listed on the logs.  Second, Mattel's

2  counsel claimed that MGA's prior counsel had taken the position that if only a

3  portion of a document was privileged, the entirety of the document had been

4  withheld as privileged even if it was possible to produce the document in redacted

5  form.  Third, Mattel's counsel complained that many of the documents listed on the

6  log did not appear to involve communications with counsel.

7            On December 17, 2007, MGA's new counsel engaged in the first of

8  several meet and confer conferences with Mattel's counsel to discuss Mattel's

9  objections to the August and September privilege logs.  Because MGA's new counsel

10  had not been involved in the preparation of those logs and were not privy to any

11  prior discussions between Mattel's counsel and MGA's prior counsel regarding the

12  manner in which the logs had been prepared, MGA's new counsel were not able to

13  confirm the accuracy of the statements that had been attributed to MGA's prior

14  counsel by Mattel's counsel.  However, rather than spending time attempting to assay

15  the veracity of Mattel's assertions, and in the interest of avoiding needless motion

16  practice, MGA's new counsel informed Mattel on December 24, 2007, that MGA

17  would review all the entries on the August and September logs and prepare revised

18  logs. (Proctor Decl. ¶ 14, Ex. 4.)  MGA also stated that it would produce in redacted

19  form any documents that were capable of being redacted without revealing

20  privileged information and that it would provide revised descriptions of document

21  withheld from production where doing so would not result in divulging privileged

22  information or compromise any privilege.  (See id.)  Finally, MGA's new counsel

23  asked Mattel to confirm that Mattel had treated documents on its privilege log in the

24  same fashion as MGA had agreed to treat documents on its revised logs.  (See id.)

25            MGA's agreement to prepared revised logs was a massive undertaking

26  because the number of documents listed on the August and September logs exceeded

27  4,000 documents.  In light of the burdensomeness of the task, on January 7, 2008

28  MGA informed Mattel that it would take considerably longer than its initial estimate

-3-

EXHIBIT ___9___

PAGE ___138___

1  of three weeks to complete the revised privilege logs. (Proctor Decl. ¶ 17, Ex. 7.)  In
2  order to expedite the review process, MGA used contract attorneys and retained an
3  outside vendor to assist in reviewing the logs and preparing revised logs.  Because of
4  Mattel's delay until December 2007 in raising any issue with regard to either the
5  August or September logs and the considerable burden that MGA had voluntarily
6  agreed to shoulder, MGA declined Mattel's request to stipulate that Mattel could
7  bring a motion to compel with respect to the revised privilege logs after the Phase 1
8  discovery cutoff deadline.  In declining Mattel's' request MGA's new counsel noted
9  that Mattel had had ample time to raise any concerns about the logs and it was now
10  time for the parties to shift their focus from discovery motion practice to preparing
11  for trial.  Furthermore, in response to questions Mattel raised during the meet and
12  confer process about specific documents listed on the August and September logs,
13  MGA re-examined every document questioned by Mattel and either re-affirmed the
14  claim of privilege or withdrew the privilege claim and agreed that it would provide
15  the document in full or redacted form when the revised privilege logs were
16  completed. (Allen Decl. ¶ 3.)
17        **B.**   **The November 15, 2007 Privilege Log**
18               On November 15, 2007, MGA prepared another privilege log in
19  connection with documents that had been produced to Mattel in October 2007.  This
20  log listed various documents that MGA had determined should be withheld in their
21  entirety.  During a meet and confer on November 16, 2007, MGA's new counsel
22  informed Mattel that MGA would provide at a later date a separate redactions log
23  listing documents that would be produced in redacted form. (Allen Decl. ¶ 4, Ex. 2.)
24  On January 11, 2008, almost two months after the initial November log had been
25  produced, and in the midst of discussions regarding the August and September logs,
26  Mattel raised for the first time concerns about the documents listed on the November
27  log. (Proctor Decl. ¶ 18, Ex. 8.)  Among other things, Mattel asserted that some of
28  the entries listed on the November log did not appear to reflect confidential

-4-

EXHIBIT    9

PAGE    139

1  communications or legal advice and that it appeared that MGA had withheld
2  documents listed in the October logs in their entirety rather than producing them in
3  redacted form. (Id.)

4          On January 18 the parties conducted a meet and confer with regard to
5  the August and September logs. During the course of that conference MGA
6  reminded Mattel that the parties had previously agreed that MGA would produce two
7  logs for the October document production – one for documents withheld in their
8  entirety (the November log) and one for documents that would be produced in
9  redacted form. (Allen Decl. ¶ 5.) Therefore, Mattel's claim that MGA confirmed its
10  plan to produce the logs in two installments for the "first time" on January 18 is
11  untrue.

12      **C.    The January 15, 2008 Privilege Log**

13          On January 15 and 23, 2008, Isaac Larian produced privilege logs
14  listing documents withheld from production in connection with document requests
15  that Mattel had served on Mr. Larian. (Allen Decl. ¶¶ 6, 7, Exs. 3, 4.) The day after
16  Mattel received the January 15 log it sent yet another letter complaining about the
17  entries on this log. (Allen Decl. ¶ 8, Ex. 5.) Among other things, Mattel complained
18  that many of the entries on the log did not appear to involve counsel and that it
19  appeared that Mr. Larian was withholding documents in their entirety instead of
20  producing documents in redacted form.

21          On January 24 MGA responded to Mattel's complaints about the
22  January privilege logs, noting that the communications questioned by Mattel were
23  subject to the common interest privilege and that Mr. Larian would produce
24  documents in redacted form where it was appropriate to do. (Allen Decl. ¶ 9, Ex. 6.)
25  Mr. Larian's counsel also offered to meet and confer with Mattel regarding the logs
26  covering the documents produced by Mr. Larian. However, Mattel did not take
27  counsel up on this offer before filing its motion to compel. (Allen Decl. ¶ 9.)
28  Therefore, the parties have never met and conferred about the January log.

-5-

EXHIBIT ___7___
PAGE ___140___

## III.   ARGUMENT

MGA's new counsel has taken extraordinary steps to address the concerns raised by Mattel with respect to MGA's privilege logs.  It is evident, however, that Mattel is simply engaged in a game of raising serial complaints about the logs in an effort to protract the discovery process.  Mattel's desire to engage in endless discovery and motion practice is tellingly revealed by its request to be allowed to "engage in follow-up motion practice" after MGA produces any documents previously withheld under a claim of privilege and prepares amended privilege logs.  (Motion at 9:7-8.)  Mattel's assault on MGA's privilege logs has already consumed the limited resources of this Court and the parties.  At some point the discovery process must come to an end and the focus must shift to the trial.  Judge Larson's recent order makes clear that we have arrived at the end of the Phase I discovery process.  (Allen Decl. ¶ 10, Ex. 7.)  Accordingly, Mattel's attempt to prolong the process should be rejected and its motion to compel should be denied.

### A.   Mattel's Motion to Compel MGA to Produce Documents in Redacted Form Should Be Denied

Mattel's assertion that MGA intends to withhold documents in their entirety is false.  Mattel fails to disclose that four days before it filed its motion to compel, MGA produced a redactions log and redacted documents covering the documents produced by MGA in October 2007.  (Allen Decl. ¶ 11, Ex. 8.)  Mattel also fails to disclose that pursuant to a stipulation of the parties relating to documents to be produced by Isaac Larian, MGA agreed to produce a redactions log and redacted documents on January 23, 2008.  (Allen Decl. ¶ 12, Ex. 9.)  MGA produced the log and redacted documents on that day, as promised.  (Allen Decl. ¶ 7, Ex. 4.)

Furthermore, almost a month before Mattel filed its motion, MGA already had committed to revise the August and September 2007 privilege logs and to produce documents in redacted form where it is appropriate to do so.  (Proctor Decl. ¶ 14, Ex. 4.)  The sheer magnitude of this undertaking has been extraordinarily

-6-

EXHIBIT   9
PAGE   141

1 burdensome to MGA. In order to expedite the review process MGA has utilized

2 contract attorneys and retained third-party vendors to assist in the review. In all

3 likelihood, the revised logs would have been completed by now if MGA did not have

4 to divert its attention to drafting oppositions to Mattel's serial attacks on the privilege

5 logs. In any event, based upon the estimates provided by its vendor, MGA

6 anticipates that the revised August and September logs should be completed by the

7 end of February.

8        In light of the steps MGA already has undertaken to produce documents

9 in redacted form and to prepare revised privilege logs, Mattel's motion to compel

10 MGA to do what it has already done is wholly unnecessary and wasteful of judicial

11 resources. Therefore, Mattel's motion should be denied.

12     **B.**    **The Documents Withheld by MGA Are Privileged**

13        Mattel speculates that certain documents listed on the privilege logs are

14 "unlikely" to be privileged because the persons identified in "to/from" fields in the

15 privilege log are not attorneys. (Motion at 7:7.) Mattel points to entry 1058 on the

16 August log as support for its position. Although Mattel admits that this and similar

17 e-mails may contain privileged information, it argues that MGA must produce such

18 documents because no attorney appears to be involved in the chain of

19 communications.

20        Mattel is incorrect. Just because an e-mail is addressed to non-lawyers

21 does not mean that it is not a privileged communication. See Upjohn Co. v. United

22 States, 449 U.S. 383, 390 (1981) ("privilege exists to protect not only the giving of

23 professional advice to those who can act on it but also the giving of information to

24 the lawyer to enable them to give sound and informed advice" and includes

25 communications between managers and officers at the corporation or others who

26 possess the information the attorney needs to provide legal advice or who will act on

27 the attorney's advice); see also Wrench LLC v. Taco Bell Corp., 212 F.R.D. 514,

28 517-18 (W.D. Mich. 2002) (employees may share information received from counsel

-7-

MGA'S MEMO OF POINTS AND AUTHORITIES IN OPP. TO MATTEL, INC.'S MOTION TO COMPEL
PRODUCTION PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE PRIVILEGE

EXHIBIT ____9____
PAGE ___142___

1   with other employees with a "need to know").  A communication between employees

2   discussing advice provided by their attorney is entirely privileged.  See Upjohn, 449

3   U.S. at 390.

4               A review of the documents cited by Mattel confirms their privilege

5   status.  Entry number 1058 on the August log clearly reflects a communication in

6   which Kerri Legg, an MGA employee, reports to Isaac Larian and Paula

7   Treantafella's on advice that had been conveyed to her by MGA's counsel on the

8   registration of a trademark.[1]  Entry number 914 similarly reflects communications

9   among company employees regarding consultations with legal counsel about

10  pursuing copyright infringement claims against another company.[2]

11              Mattel also complains that MGA has refused to divulge the "potential

12  US trademark" to which certain communications refer, and that the subject of those

13  communications – the mark at issue – is not privileged.  Mattel cites two documents,

14  August log entries 2857 and 434, as support for its position.  (Motion at 7:11-8:10.)

15  As Mattel acknowledges, entry number 2857 on the August log reflects attorney-

16  client communications between MGA and its counsel regarding a trademark search

17  and legal advice as to the next steps MGA should take in response to the information

18  obtained as a result of the search.  These communications are plainly privileged.  See

19  Connor Peripherals, Inc. v. W. Digital Corp., No. C 93-20117 RMW/EAI, 1993 U.S.

20  Dist. LEXIS 20149, at *5 (N.D. Cal. June 8, 1993) (citation omitted).  Mattel does

21  not appear to argue to the contrary.  (Motion at 7:17-19.)[3]

---

22  [1]     If the Court requests, MGA is prepared to submit this document and any
23  others that Mattel has put at issue for in camera review.

    [2]     Mattel cites several other documents (August Log Nos. 914, 916 and 931) in
24  footnote 25 of its brief as examples of other instances in which no attorney appears
    to be involved in the communication.  As discussed in the text, these documents
25  were properly withheld as privileged attorney-client communications because they
    reflect legal advice that was conveyed by an attorney.  However, MGA does not
26  assert a claim of privilege with respect to entry number 916, which is an email
    communication between Dennis Medici and Isaac Larian.

27  [3]     MGA does not assert a privilege with regard to the attachments to the emails,
    which consist of the results of trademark search results from public databases.
28  Therefore, MGA will produce this document in redacted form.

-8-

EXHIBIT 9
PAGE 143

1  Similarly, August log entry 434 is a letter from one of MGA's trademark

2  counsel discussing their findings regarding a certain trademark and asking for

3  information to assist the attorney in completing the application. This document is

4  clearly a privileged communication between attorney and client. Connor Peripherals,

5  1993 U.S. Dist. LEXIS, at *5.[4]

6  **C.  Mattel Has Failed to Engage in a Proper Meet and Confer With**
   **Regard to the November 2007 and January 2008 Privilege Logs**

7

8  Pursuant to paragraph 5 of the Court's Order Appointing a Discovery

9  Master, prior to bringing a discovery motion "[t]he moving party shall first identify

10  each dispute, the relief sought, and identify the authority supporting the requested

11  relief in a meet and confer letter that shall be served on all parties by facsimile or

12  electronic mail." From December 7, 2007 through January 10, 2008, the parties'

13  entire meet and confer process centered on issues Mattel had raised in regard to

14  MGA's August and September logs. In the midst of the meet and confer regarding

15  those logs, Mattel casually tossed in complaints about the November privilege log.

16  (Proctor Decl. ¶ 18, Ex. 8.) The off-hand references to the alleged deficiencies in the

17  November log stand in sharp contrast to Mattel's detailed, 5-page letter of December

18  7, 2007 in which it outlined its concerns with the August and September 2007

19  privilege logs. (Proctor Decl. ¶ 11, Ex. 1.) More importantly, the parties have never

20  engaged in a document-by-document meet and confer with regard to the November

21  log. Although MGA offered to discuss each document individually, Mattel never

22  followed up on the offer to meet before it filed its motion. (Allen Decl. ¶¶ 15-17,

23  Exs. 12-14.)

24  Mattel has similarly ignored its meet and confer obligations with regard

25  to the January privilege logs. The parties have only exchanged correspondence

26

27  [4]   MGA does not assert a privilege, however, with regard to the attachment to
   the letter which consists of a communication provided by the Patent and Trademark

28  Office. Therefore, MGA will produce this document in redacted form.

-9-

EXHIBIT 9
PAGE 144

IV.   **CONCLUSION**

Mattel has burdened the Court with yet another unnecessary motion. MGA already has agreed to provide revised privilege logs and produce documents in redacted form where it is appropriate to do so.  In addition, Mattel has failed to engage in a proper meet and confer regarding MGA's November and January privilege logs before filing this motion.  Finally, MGA has adequately described the documents on its logs.  Therefore, Mattel's motion to compel should be denied.

DATED:  February 7, 2008

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Raoul D. Kennedy
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LTD., and MGAE de MEXICO S.R.L. de C.V.

-11-

MGA'S MEMO OF POINTS AND AUTHORITIES IN OPP. TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE PRIVILEGE

EXHIBIT   9
PAGE   145

**EXHIBIT 10**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3176

WRITER'S INTERNET ADDRESS
harryolivar@quinnemanuel.com

May 7, 2008

**VIA HAND DELIVERY**

Hon. Edward Infante (Ret.)
Discovery Master
c/o Sandra Chan
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, California 94111

Re:     Bryant v. Mattel, Inc., JAMS Ref. 1100049530

Dear Judge Infante:

I write to request Mattel's pending motions on two issues be decided along with the other motions that we understand will be decided this week.

First, Mattel respectfully requests an order on its pending Motion to Compel the Deposition Testimony of Littler Mendelson, submitted on December 13, 2007. As outlined in the motion, Mattel seeks testimony regarding these non-privileged matters:

- •      When and how Littler or its agents collected Bryant's computer hard drives.

- •      What was done with those drives once they were in Littler's possession, including how those drives were stored, whether evidence was preserved on backup images, and whether and when such drives were reviewed.

- •      Communications with third parties regarding collection and preservation of evidence that were the subject of representations made by Littler.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT ___10___
PAGE _____146

At the January 3, 2008 hearing, Your Honor recognized that the chain-of-custody type information Mattel sought by its motion was "relevant" and "essential and necessary to the preparation of the entire case," but "believe[d] that [Mattel] should take the deposition of Mr. Bryant on this question first." See January 3, 2008 Hearing Tr. at 69:19-25, attached as Exhibit 1. Mattel subsequently questioned Bryant on these matters at deposition, but Bryant was unable to provide the needed information. See Deposition Transcript of Carter Bryant, at 757:22-760:1, attached as Exhibit 2.

Accordingly, Mattel respectfully requests a ruling, as sought in its motion, that Littler Mendelson be ordered to provide deposition on the topics requested.

Second, Mattel respectfully requests an order on its pending motions relating to MGA's privilege logs. Those motions are captioned as follows:

(A) Mattel's Motion to Compel the Production of Previously Withheld Documents Only Portions of Which Are Allegedly Privileged, submitted on January 21, 2008;

(B) Mattel's Motion for Order Compelling Production of Withheld MGA (1) Trademark Search Results, (2) Date of First Use Information, and (3) Factual Data Communicated for the Purpose of Filing Trademark or Other Intellectual Property Applications, submitted on January 23, 2008;

(C) Mattel's Motion Compelling Production of Third Party Communications Improperly Withheld Under a Claim of "Common Interest" Privilege, submitted on January 23, 2008

At the March 10, 2008 hearing on these motion, Your Honor indicated that you "agree[ed] with Mattel's position" on the central issues, but believed it was then "premature to issue an order" because MGA had stated it would produce revised versions of two of its logs. See March 10, 2008 Hearing Tr. at 86:15-18, attached as Exhibit 3. You directed the parties to meet and confer further with respect to any new logs produced by MGA.

MGA has produced its revised logs, multiple meet and confer discussions have occurred, and the issues raised in the motions remain unresolved. Although there was some discussion of accommodating MGA's desire to put off resolution of the motion as to entries that may relate to Phase 2 matters, the parties were not able to come to agreement on this issue. MGA also has made clear its positions that (i) it is not willing to produce voluntarily any of the documents as to which Mattel has taken the position privilege is not properly claimed; and (ii) it believes every challenged document, regardless whether supported by an adequate log entry, needs to be reviewed *in camera* by Your Honor.

Mattel respectfully requests a ruling, as sought in its motions, that MGA has failed to satisfy its burden of proving privilege as to the following categories of documents described in the motions:

- Documents authored by non-lawyers or other non-privileged documents improperly withheld in their entirety as privileged.

2

EXHIBIT   10
PAGE   147

- Documents containing non-privileged factual information such as trademark search requests and results and dates of first use.
- Documents or communications involving various third-parties, including Bandai, which destroys any claimed privilege.

These problems persist in MGA's revised logs (enclosed, as exhibits 4 and 5, in the event Your Honor wishes to review them) in the entries identified in Appendices A, B, and C that Mattel has prepared (attached as Exhibit 6). Having first raised its challenges to MGA's logs with MGA in December 2007, Mattel hereby requests a ruling on its motions as Your Honor's earliest convenience.

Thank you for your continuing attention to this matter.

Very truly yours,

Harry A. Olivar /bdk

Harry A. Olivar, Jr.

HAO

3

EXHIBIT  10
PAGE  148

## Appendix A

**Revised August Log:** Nos. 101.1, 101.6, 129.1, 135, 161.2, 263.2, 280.2, 283.1, 295.2, 312.1, 434.1, 457, 526.1, 561.1, 561.1, 561.2, 562.1, 562.12, 573.1, 574.1, 583.1, 584, 585.1, 585.2, 585.3, 586.1, 606, 651r, 653, 661, 662, 664r, 669, 690r, 692, 712, 713, 716r, 719, 730, 732, 733, 735, 744, 764, 767, 773, 775, 777, 790, 852, 853, 866, 867, 869r, 874, 883r, 894r, 900, 912r, 931.1, 933, 934r, 961r, 962, 963, 965, 966, 967, 968, 980r, 981r, 983, 984, 985, 990, 1010r, 1037, 1040, 1042r, 1043, 1047, 1055r, 1056r, 1057, 1058, 1060r, 1061, 1062, 1068, 1077, 1078, 1088, 1089, 1090, 1091, 1095, 1097, 1098, 1101, 1103, 1105, 1110r, 1112, 1113r, 1132r

**Revised September Log:** Nos. 21.1r, 21.2r, 22.1r, 22.2r, 139, 140.1r, 203.2, 210.2, 217.2, 218.2, 255.7, 264.1r, 266.1, 329.1r, 603, 608.1, 608.2r, 874.2, 891.1, 896.1, 930.1, 1000.3, 1013.1, 1013.7, 1021.1, 1021.2, 1022, 1036.4, 1036.6, 1047.3, 1047.7, 1047.8, 1058.1, 1058.3, 1058.4, 1063.1, 1072.1, 1072.3, 1081.2, 1107.1, 1107.3, 1134.1, 1134.3, 1193.2, 1193.3, 1193.4, 1193.5, 1193.6, 1193.7, 1193.8, 1193.9, 1421.1, 1421.4, 1424.2, 1577.2, 1635, 1636, 1661.1, 1798.3, 1801.2, 1801.3, 1812.3, 1815.2, 1815.3, 1821.3, 1821.2, 1903, 1912.1, 1981.1, 2071.1, 2199, 2200, 2201, 2202, 2369.5, 2399.11, 2407, 2408, 2409, 2410, 2411, 2412, 2413.1, 2414, 2416.2, 2417, 2418.2, 2419, 2420.1, 2422.1, 2449, 2803.1, 2816.3, 2818.4, 2818.4, 2819.3, 2821,2, 2831.1, 2831.2, 2832.3, 2835.3, 2835.4, 2836.3, 2839.3, 2839.4, 2839.5, 2839.6, 2853, 2854.1

**November Log:** Nos. 3, 8, 39, 71, 104, 134, 135, 175, 261, 267, 539, 546, 824, 1036, 1046, 1047, 1068, 1123, 1124, 1406, 1462, 1463, 1466, 1467, 1481, 1506, 1514, 1780, 1781, 1782, 1784, 1941, 1942, 2063, 2073, 2074, 2090, 2101, 2117, 2256, 2259, 2260, 2262, 2263, 2267, 2269, 2271, 2274, 2672, 2677, 2694, 2724, 2728, 2732, 2761, 2765, 2772, 2775, 2786, 2787, 2802, 2807, 2814, 2815, 2830, 2833, 2845, 2848, 2849, 2851, 2852, 2853, 3213, 3299, 3332, 2226, 2227, 2240, 3360, 3367, 3368

**January 15 Log:** Nos. 59, 89, 98, 107, 145, 182, 208

**January 23 Log:** Nos. 3, 6, 7, 8, 20, 30, 31, 32, 50, 52, 57, 58, 59, 68, 70, 79, 96, 97, 102, 103, 104, 106, 107, 108, 110, 111, 114, 115, 118, 129, 133, 150, 151, 152, 153, 154, 155, 156, 157, 158, 182, 196, 205, 207, 209, 232, 233, 245, 253, 255, 262, 267, 287, 296, 297, 335, 336, 337, 338, 339, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 371, 372, 374, 375, 376, 381, 403, 404, 453, 536, 544, 545, 546, 547, 548, 549, 550, 551, 557, 577, 578, 579, 580, 581, 584, 585, 588, 589, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 609, 610, 611, 612, 614, 655, 656, 672, 683, 684, 693, 749, 759, 762, 764, 765, 767, 769, 771, 773, 782, 783, 784, 1023, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, 1075, 1076, 1077, 1078, 1083, 1172, 1173, 1178, 1179, 1254, 1262, 1275, 1277, 1281, 1285, 1287, 1292, 1301, 1302, 1306, 1309, 1318, 1322, 1324, 1356, 1360, 1364, 1365, 1366, 1367, 1374, 1399, 1413, 1414, 1418, 1420, 1421, 1424, 1435, 1437, 1438, 1439, 1440, 1460, 1463, 1465, 1468, 1471, 1473, 1474, 1475, 1476, 1509, 1525, 1529, 1536, 1587, 1603, 1609, 1618, 1622, 1623, 1624, 1625, 1627, 1635, 1641, 1646, 1655, 1662, 1701, 1702, 1703, 704, 1705, 1706, 1708, 1709, 1710, 1711, 1712, 1713, 1716, 1718, 1719, 1720, 1721, 1722, 1724, 1727, 1728, 1729, 1730, 1731, 1732, 1734, 1735, 1736, 1737, 1767, 1773, 1774, 1775, 1779, 1783, 1788, 1821, 1824, 1849, 1874,

4

EXHIBIT ___10___
PAGE _____149

1875, 1881, 1882, 1884, 1885, 1890, 1896, 1898, 1899, 1903, 1904, 1917, 1919, 1920, 1968, 1969, 1970, 1977, 1986, 1998, 2011, 2025, 2039, 2042, 2043, 2064, 2071, 2080, 2082, 2100, 2101, 2102, 2123, 2126, 2128, 2129, 2130, 2131, 2132, 2133, 2134, 2135, 2136, 2137 2144, 2149

**January 28 Log:** Nos. 3, 5, 8, 11, 15, 17, 27, 28, 30, 35, 36, 37, 41, 42, 43, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 64, 65, 66, 68, 69, 70, 71, 72, 74, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 93, 97, 104, 107, 110, 112, 115, 116, 117, 118, 119, 120, 123, 124, 133, 139, 140, 143, 145, 149, 150, 151, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 166, 167, 172, 173, 174, 175, 176, 182, 183, 185, 186, 187, 188, 189, 190, 192, 193, 215, 228, 233, 236, 239, 240, 244, 245, 247, 250, 254, 264, 268, 270, 276, 295, 296, 301, 302, 303, 304, 314, 315, 317, 318, 332, 340, 341, 356, 357, 361, 365, 367, 370, 371, 382, 402, 479, 500, 501, 502, 503, 504, 505, 506, 523, 559, 578, 604, 605, 606, 607, 610, 611, 619, 622, 630, 636, 638, 639, 668, 669, 670, 705, 706, 725, 726, 728, 729, 730, 731

**January 30 Log:** Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 42, 49, 50, 66, 122, 124, 126, 152, 152, 153, 154, 155, 156, 157, 158, 211, 225, 226, 244, 245, 246, 247, 252, 257, 281, 282, 285, 287, 290, 291, 294, 295, 296, 297, 298, 299, 300, 301, 302

EXHIBIT ___10___
PAGE ___150___

**EXHIBIT 11**

1



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

**CERTIFIED COPY**

MATTEL, INC.,                    )
                                 )
              PLAINTIFF,         )
                                 )
        VS.                      )   NO. ED CV 04-09049
                                 )   (LEAD LOW NUMBER)
MGA ENTERTAINMENT, INC., ET. AL.,)
                                 )
              DEFENDANTS.        )   MOTION HEARING
                                 )
AND CONSOLIDATED ACTIONS,        )
                                 )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY , JUNE 2 , 2008

1:33 P.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
WWW.THERESALANZA.COM

EXHIBIT __//__

PAGE __151__

34

1   ONE OF THOSE TWO CATEGORIES?  THAT ALL OF THE DOCUMENTS THAT

2   HAVE NOT BEEN BASED ON THIS COMMON INTEREST PRIVILEGE FALL INTO

3   ONE OF THOSE TWO CATEGORIES?

4          MR. ALLAN:  YES, YOUR HONOR.  AND I'LL DO YOU ONE

5   BETTER AND I'LL GO BACK AND DOUBLE CONFIRM THAT.  BUT THAT HAS          02:20

6   BEEN THE STANDARD THAT WE USED.

7          THE COURT:  VERY WELL.  THANK YOU, COUNSEL.

8          I'D LIKE TO HEAR FROM MATTEL ON THE SECOND ISSUE, AND

9   THAT'S ON MY CONCERN ABOUT CUMULATIVE EVIDENCE.  BECAUSE,

10  CERTAINLY, IF THERE WAS A TRADEMARK SEARCH OR IF MGA RECEIVED A        02:20

11  TRADEMARK SEARCH RESULT, WE DON'T NEED FIVE DOCUMENTS REFERRING

12  TO THAT PARTICULAR SEARCH OR THAT PARTICULAR SEARCH RESULT,

13  PROVIDED THAT YOU HAVE IT.

14         WOULD YOU AGREE?

15         MR. OLIVAR:  THIS WAS A MOTION ABOUT DOCUMENTS                  02:20

16  CLAIMED TO BE PRIVILEGE.  THE ARGUMENT IS NOW THEY ARE NOT

17  PRIVILEGED, BUT WE DON'T NEED WHAT WE'RE SEEKING.

18         THE COURT:  I UNDERSTAND THAT, BELIEVE ME.

19         MR. OLIVAR:  TAKING COUNSEL'S REPRESENTATION THEY MAY

20  NOT BE PRIVILEGED -- YES, WE DO NEED THE INFORMATION WE'RE            02:21

21  SEEKING AS TO FIRST USES OF BRATZ AND OTHER TRADEMARKS.

22         THE COURT:  FAIR ENOUGH.

23         MR. OLIVAR:  THIS IS WHAT I DISCOVERED, COUNSEL IS

24  SAYING; THAT'S NOT PRIVILEGED ON A TRADEMARK SEARCH.

25         THE COURT:  I AGREE.                                           02:21

EXHIBIT __11__
PAGE __152__

MONDAY, JUNE 2, 2008                          MOTIONS HEARING

35

1      IS THERE A CUMULATIVE DIMENSION?  DOES THERE COME A

2  POINT WHEN IT BECOMES OBVIOUS THAT --

3      **MR. OLIVAR:**  YOU HAVE TO SEE THE DOCUMENTS.

4      WITH ALL DUE RESPECT, WE DON'T ACCEPT MGA'S

5  REPRESENTATION THAT THERE IS NOTHING OF BENEFIT TO US IN THESE        02:21

6  DOCUMENTS.  I DON'T THINK IN THIS CASE WE OUGHT TO HAVE TO

7  ACCEPT THAT.

8      ONE FINAL THING, MR. ALLAN MADE REPRESENTATIONS ON

9  ONE AND THREE.  THERE ARE SOME DOCUMENTS THAT WE THINK ARE SO

10  CRITICAL THAT WE DON'T WANT TO TAKE COUNSEL'S REPRESENTATION IN        02:21

11  COURT THAT THEY ARE NOT PRIVILEGED.  WE WOULD SUBMIT A SMALL

12  NUMBER TO YOUR HONOR, LESS THAN 50, IN THE CRITICAL TIME

13  PERIOD, SUCH AS THE CONSULTING AGREEMENT IN AUGUST OF 2000 BY A

14  NONLAWYER THAT THEY SAY IS PRIVILEGED, FOR SOME REASON, FOR

15  YOUR HONOR'S REVIEW.  WE REQUESTED THE ABILITY TO DO THAT, LESS        02:22

16  THAN 50 DOCUMENTS, SO WE DON'T HAVE TO ACCEPT COUNSEL'S

17  REPRESENTATION THAT LOG ENTRIES THAT APPEAR TO BE IMPROPER ARE

18  REALLY PRIVILEGED.

19      WITH THAT, I'LL SUBMIT, YOUR HONOR.

20      **THE COURT:**  ALL RIGHT.                                         02:22

21      THE COURT IS GOING TO GRANT IN PART AND DENY IN PART

22  ALL THREE OF THESE MOTIONS.

23      I'M GOING TO DENY THE FIRST MOTION, BASED ON THE

24  REPRESENTATIONS MADE BY MR. ALLAN HERE BEFORE THE COURT TODAY

25  THAT ALL OF THE DOCUMENTS THAT HAVE BEEN REPRESENTED AS               02:22

EXHIBIT ___11___

PAGE ___153___

MONDAY, JUNE 2, 2008                          MOTIONS HEARING

36

1  COMMUNICATIONS BETWEEN NONLAWYERS ARE, IN FACT, PRIVILEGED AND

2  THAT MR. ALLAN HAS PERSONALLY ASSURED THE COURT THAT THOSE HAVE

3  BEEN REVIEWED AND, IN FACT, TO THE EXTENT THAT THEY ARE

4  PARTIALLY NONPRIVILEGED, THAT THEY HAVE BEEN PRODUCED IN

5  REDACTED FORM.  TO THE EXTENT THAT THEY HAVE NOT BEEN PRODUCED,    02:23

6  THAT IS BECAUSE THEY ARE FULLY PRIVILEGED.  HERE'S JUST SIMPLY

7  NOT A BASES FOR ANY PARTICULAR DOCUMENT OR ANY GROUP OF

8  DOCUMENTS FOR THE COURT TO ORDER A PRODUCTION AT THIS POINT.  I

9  DO ACCEPT MR. ALLAN'S REPRESENTATION.  SO THE FIRST MOTION I

10  WILL DENY; THAT'S THE MOTION TO COMPEL PRODUCTION OF PREVIOUSLY    02:23

11  WITHHELD DOCUMENTS, ONLY PORTIONS OF WHICH ARE ALLEGEDLY

12  PRIVILEGED.

13       WITH RESPECT TO THE SECOND MOTION IN THIS GROUPING

14  RELATED TO THE TRADEMARK SEARCH RESULTS, I'M GOING TO GRANT

15  THIS IN PART BY ORDERING THAT ALL DOCUMENTS WHICH REVEAL    02:23

16  TRADEMARK SEARCH RESULTS AND REQUESTS AND/OR TRADEMARK DATES OF

17  FIRST USE BE PRODUCED SUBJECT TO REDACTION FOR ANY PRIVILEGED

18  COMMUNICATIONS.

19       SO IF THE DOCUMENT MAKES A REFERENCE, TO USE AN

20  EXAMPLE, LIKE MR. ALLAN USED -- I CONDUCTED A TRADEMARK SEARCH    02:24

21  ON SUCH AND SUCH A DATE, THIS IS MY ADVICE; THE FORMER PART

22  WOULD BE PRODUCED, THE LATTER PART WOULD BE REDACTED.

23       WITH RESPECT TO THE THIRD MOTION CONCERNING THE

24  SO-CALLED BANDAI DOCUMENTS, THIS IS THE COMMON INTEREST

25  PRIVILEGE, THE COURT IS SETTING FORTH ITS FINDINGS AND ITS    02:24

EXHIBIT ___//___

PAGE ___154___

MONDAY, JUNE 2, 2008                      MOTIONS HEARING

37

1   LEGAL CONCLUSIONS THAT THE COMMON INTEREST PRIVILEGE ATTACHES

2   ONLY WHERE THE PARTIES SHARE IDENTICAL OR NEARLY IDENTICAL

3   LEGAL INTERESTS; AND TWO, THE COMMUNICATIONS ARE MADE AS PART

4   OF A COORDINATED LEGAL STRATEGY.

5           I'M CONFIDENT IN MR. ALLAN'S EXPLANATION OF HIS                    02:24

6   REVIEW, BUT I AM GOING TO REQUIRE THAT BASED ON SOME DEGREE OF

7   UNCERTAINTY OR A DESIRE TO DOUBLE CHECK, THAT HE MAKE A

8   COMPREHENSIVE REVIEW OF THE SO-CALLED BANDAI DOCUMENTS AND THAT

9   IS TO INCLUDE THE ACCLAIM GAME OR ANY OTHER THIRD-PARTY TO

10  WHICH THESE DOCUMENTS WERE DISCLOSED, AND SUBMIT APPROPRIATE      02:25

11  EVIDENCE TO THE COURT IN THE FORM OF A SWORN DECLARATION OF THE

12  REVIEW THAT WAS MADE, WHAT WAS DONE TO ENSURE THOSE HAVE BEEN

13  PROPERLY DESIGNATED ON THE PRIVILEGED LOGS.

14          MR. ALLAN:  ONE INQUIRY WITH REGARD TO THE SECOND

15  MOTION, AND THAT IS, WOULD THE COURT CONSIDER A DATE LIMITATION   02:25

16  WITH RESPECT TO THOSE TRADEMARK SEARCH RESULTS?  BECAUSE THERE

17  ARE A NUMBER OF DOCUMENTS THAT ARE 2002, 2003, WELL BEYOND THE

18  PERIOD THAT THEY WOULD REALLY HAVE ANY BEARING ON THE ISSUES

19  THAT ARE TEED UP FOR PHASE 1-A.

20          THE COURT:  COUNSEL?

21          MR. OLIVAR:  FIRST DATES OF FIRST USE ARE CRITICAL NO      02:26

22  MATTER WHEN THEY APPEAR.  IF IT'S A 2004 SEARCH FOR BRATZ, AND

23  IT'S REPRESENTED TO THE LAWYER BRATZ WAS FIRST USED IN AUGUST

24  OF 2000, THAT'S A DOCUMENT WE WANT; AT LEAST THE PART ABOUT THE

25  DATE OF FIRST USE.                                                02:26

EXHIBIT  //
PAGE    155

58

1   ASKING THE COURT TO ENTERTAIN A MOTION TO ALLOW THAT EXPERT TO

2   TESTIFY AND TO HAVE MGA CONSIDER THAT REPORT.

3           **MR. RUSSELL:**  YOUR HONOR, I RECEIVED NOTICE OF THIS

4   FROM MR. COREY APPROXIMATELY AN HOUR BEFORE I SHOWED UP IN

5   COURT.  IT'S DIFFICULT TO, WITH ANY CERTAINTY, RESPOND TO IT.          02:53

6           I GUESS WHAT I'D ASK IS I CAN TELL YOU NOW, MGA IS

7   GOING TO OBJECT, BECAUSE WE BELIEVE THEY HAVE HAD THE

8   OPPORTUNITY TO HAVE THIS REPORT LONG BEFORE THE EXPERT PROCESS

9   COMMENCED; SO IF IT'S THEIR INTENT TO USE THIS REPORT, I'D ASK

10  THEY BE GIVEN A DATE TO FILE THIS MOTION, LET'S SET UP A          02:54

11  BRIEFING SCHEDULE.  BECAUSE, IN OUR VIEW, THIS IS CLEARLY

12  UNTIMELY, INAPPROPRIATE, AND WE STRONGLY OBJECT.

13          **THE COURT:**  SINCE YOU'VE ONLY HAD AN HOUR TO THINK

14  ABOUT THIS, LET'S TALK ABOUT IT TOMORROW MORNING, AND WE'LL SEE

15  IF BRIEFING IS APPROPRIATE.          02:54

16          **MR. RUSSELL:**  THANK YOU, YOUR HONOR.

17          **MR. COREY:**  THANK YOU, JUDGE.

18                          CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
23

24  _____          6-3-08
                                             _____
25  THERESA A. LANZA, RPR, CSR                  DATE
    FEDERAL OFFICIAL COURT REPORTER

                                        EXHIBIT        11
                                        PAGE        156
    MONDAY, JUNE 2, 2008                MOTIONS HEARING

**EXHIBIT 12**

1

2

3

4

5

6

7

8                          UNITED STATED DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10                              EASTERN DIVISION

11   CARTER BRYANT, an individual,      )   CASE NO. CV 04-9049 SGL (RNBx)
                                        )
12                    Plaintiff,        )   Consolidated with Case No. 04-9059
                                        )   and Case No. 05-2727
13             v.                       )
                                        )   Honorable Stephen G. Larson
14   MATTEL, INC., a Delaware           )
     corporation,                       )   JOINT [~~PROPOSED~~] ORDER
15                                      )   REGARDING VARIOUS
                      Defendant.        )   DISCOVERY MOTIONS,
16   _____)   APPLICATIONS AND OTHER
                                        )   MATTERS UPON WHICH THE
17   AND CONSOLIDATED ACTIONS           )   COURT RULED ON JUNE 2, 2008
                                        )
18   _____)

19

20

21

22

23

24

25

26

27

28
     _____
            [Proposed] Order Regarding Certain Motions Heard on June 2, 2008
                       Case No. CV 04-9049 SGL (RNBx)

                                    EXHIBIT _12_
                                    PAGE ____157____

1
## ORDER

2      After consideration of the motions, applications and other matters heard by

3 the Court on June 2, 2008, and all papers filed in support thereof or opposition

4 thereto, and the argument of counsel, IT IS HEREBY ORDERED that:

5      1.      Mattel's Motion to Compel Production of Documents by Anne Wang,

6 as subsequently narrowed, is GRANTED. The Retention Agreement between Anne

7 Wang and/or the law firm of Pretty & Schroeder, P.C., with Carter Bryant, is

8 ordered produced. If the Retention Agreement contains any privileged material,

9 such information should be redacted. The Agreement must be produced no later

10 than close of business on Thursday, June 5, 2008.

11     2.      MGA's Motion to Quash Deposition Subpoenas is GRANTED IN

12 PART and DENIED IN PART. The Court DENIES MGA's motion as to the

13 deposition of Wachovia Corporation. The deposition of Wachovia is ordered to

14 proceed, and is limited to two hours. The motion is DENIED AS MOOT as to those

15 deponents who have already been deposed. The Court GRANTS the motion to

16 quash as to the remaining deponents who have not yet been deposed.

17     3.      Mattel's Motion to Compel Production of Previously Withheld

18 Documents Only Portions of Which are Allegedly Privileged is DENIED based on

19 MGA's counsel's representation that the communications at issue (1) have been

20 individually reviewed by counsel and (2) are privileged in their entirety or, to the

21 extent they are only partially privileged, have already been produced in redacted

22 form such that all non-privileged information is revealed.

23     4.      Mattel's Motion for an Order Compelling Production of Withheld

24 MGA: (1) Trademark Search Results, (2) Date Of First Use Information, and (3)

25 Factual Data Communicated For the Purpose of Filing Trademark or Other

26 Intellectual Property Applications is GRANTED IN PART. MGA is ordered to

27 produce all documents that contain actual or contemplated trademark names,

28

EXHIBIT   12
PAGE      158

1  trademark search results and/or requests, and/or trademark dates of first use, such

2  that the foregoing information, which is non-privileged, is revealed.  Any privileged

3  communications may be redacted from the documents to be produced.  MGA shall

4  produce such documents no later than the close of business on Friday, June 3, 2008.

5      5.    Mattel's Motion Compelling Production of Third Party

6  Communications Improperly Withheld Under a Claim of "Common Interest"

7  Privilege is DENIED.  Counsel for MGA shall conduct a comprehensive review of

8  the documents identified in Mattel's motion and submit a declaration supporting

9  MGA's assertion that the elements of the common interest exception are met for

10  each communication at issue.  MGA shall submit its declaration no later than the

11  close of business on Friday, June 3, 2008.

12      6.    Mattel's Motion to Compel Production of Documents Improperly

13  Withheld as Privileged by MGA, Isaac Larian and Third Party David Rosenbaum as

14  subsequently narrowed is GRANTED.  The MGA parties are ordered to produce

15  Entry No. 20 on the Supplemental Revised Privilege and Redaction Log for MGA's

16  2005 Document Production, Entry Nos. 864, 874, 887-891, and 1121-1125 on Isaac

17  Larian's January 23, 2008 Privilege Log and Entry No. 18 on David Rosenbuam's

18  Privilege Log, which MGA has informed the Court constitutes a single document—

19  a draft of the MGA / Bryant Assignment Agreement containing notations of

20  counsel—or pages of that same document.  MGA shall produce the relevant

21  documents no later than the close of business on Wednesday, June 4, 2008.  [MGA

22  proposes the following language be included and Mattel objects to its inclusion:

23  MGA's counsel represented that MGA would be re-reviewing the documents at

24  issue on this motion in light of the Court's prior orders and would be

25  producing additional documents in whole or redacted form that MGA believes

26  are not privileged by June 4, 2008.]   *SGL.*

27

28

EXHIBIT ___12___
PAGE _____159_____

Case 2:04-cv-09049-DOC-RNB   Document 7094-4   Filed 10/30/09   Page 68 of 84   Page ID
#:247897
Case 2:04-cv-09049-SGL-RNB     Document 3921     Filed 06/05/2008     Page 4 of 4

1      7.    Mattel's Motion to Compel MGA Entertainment, Inc., MGA

2 Entertainment (HK) Limited, Isaac Larian and Carter Bryant to Respond to Mattel's

3 First Set of Requests for Admission is GRANTED IN PART, DENIED IN PART

4 and DEFERRED IN PART. The MGA parties are ordered to supplement their

5 responses to Mattel's requests No. 36, 37, 38 and 39. The Court's decision on

6 Mattel's requests No. 63, 66 and 69 is deferred to Phase 1(b) of this trial. Mattel's

7 motion is denied as to the remaining requests.

8      8.    Mattel's Motion to Compel MGA and Carter Bryant to Return

9 Privileged Document and For Protective Order is DENIED.

10     9.    Mattel's Inc.'s *Ex Parte* Application (1) To Compel Depositions of Ana

11 Cabrera, Beatriz Morales and Maria Salazar; (2) For Guidance as to Evidence

12 Received From Ana Cabrera; and (3) For Sanctions, as subsequently narrowed, is

13 resolved as follows:  Mattel is permitted to use the evidence received from Ms.

14 Cabrera, and to permit a consultant to reconstruct the documents received from Ms.

15 Cabrera.  The admission of such evidence, however, remains subject to the general

16 rules of evidence.  The Court is not ruling on whether Mattel may submit an expert

17 report of such an expert or whether the expert may testify at trial.

18

19 IT IS SO ORDERED:

20

21 Dated: June 5, 2008

22                        The Honorable Stephen G. Larson

23

24

25

26

27

28

3

[Proposed] Order Regarding Certain Motions Heard on June 2, 2008
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _12_

PAGE _160_

**EXHIBIT 13**

1550

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    ---

4    **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5    ---

6    MATTEL, INC.,                          :    PAGES 1550 - 1668
                                           :
7              PLAINTIFF,                   :
                                           :
8         VS.                              :    NO. ED CV04-09049-SGL
                                           :    [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,              :    CV04-9059 & CV05-2727]
     ET AL.,                               :
10                                          :
11             DEFENDANTS.                  :
     _____      :

12

13

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  RIVERSIDE, CALIFORNIA

17               THURSDAY, JUNE 5, 2008

18                JURY TRIAL - DAY 8

19                 AFTERNOON SESSION

20

21

22   **CERTIFIED COPY**              MARK SCHWEITZER, CSR, RPR, CRR
                                      OFFICIAL COURT REPORTER
23                                    UNITED STATES DISTRICT COURT
                                      181-H ROYBAL FEDERAL BUILDING
24                                    255 EAST TEMPLE STREET
                                      LOS ANGELES, CALIFORNIA 90012
25                                    (213) 663-3494

EXHIBIT  13
PAGE  161

1551

1   **Appearances of Counsel:**

2

3   On Behalf of Mattel:

4       Quinn Emanuel
        By John B. Quinn, Esq.
5           B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6           Harry Olivar, Esq.
            John Corey, Esq.
7           Diane Hutnyan, Esq.
            William Price, Esq.
8       855 South Figueroa Street
        10th Floor
9       Los Angeles, CA 90017
        (213) 624-7707

10

11

12  On Behalf of MGA Entertainment:

13      Skadden, Arps, Slate, Meagher & Flom LLP
        By Thomas J. Nolan, Esq.
14          Carl Alan Roth, Esq.
            Jason Russell, Esq.
15          Lauren Aguiar, Esq.
            David Hansen, Esq.
16          Matthew Sloan, Esq.
        300 South Grand Avenue
17      Los Angeles, CA 90071-3144
        (213) 687-5000

18

19

20

21

22

23

24

25

EXHIBIT  /3
PAGE _____  162

1   T-shirt; correct?

2   A.   That's what it says.

3   Q.   And you notice that if you look at the drawing, it's

4   kind of showing her midriff here?

5   A.   That's correct.

6   Q.   And let's go to the fifth page of the exhibit.  Another

7   drawing where he shows a character showing there a bare

8   midriff?

9   A.   Yes.

10  Q.   Same if you look at the next page.  Number 6.

11  A.   Yes.

12  Q.   Also have these hiphugger pants and a bare midriff?

13  A.   Yes.

14  Q.   So certainly these were sort of fashion statements that

15  were shown to you in September of 2000?

16  A.   These are drawings that were shown to me in September

17  2000.

18  Q.   And I believe you testified that according to you, I

19  guess, there was no one who worked on Bratz in September

20  because there was no contract?

21  A.   I'm sorry.  Can you repeat the question?

22  Q.   Is it true -- is it your testimony that after this

23  meeting, no one did work on Bratz in September because there

24  was no contract?

25          MR. NOLAN:  Objection, your Honor.  Vague and

EXHIBIT ___13___
PAGE ___163___

1647

1    ambiguous as to drawings for the doll.

2              THE COURT:  Rephrase, Counsel.

3    Q.   BY MR. PRICE:  In September 2000, was there any work at

4    all done on these drawings or on doll designs or anything

5    pertaining to Bratz after this meeting?

6              MR. NOLAN:  Compound, your Honor.

7              THE COURT:  Overruled.

8              THE WITNESS:  I don't know if there was or not.

9    It's possible that there was.

10   Q.   BY MR. PRICE:  It's your belief, however, that it's in

11   this month of September 2000 that, to use your words, Bratz

12   was born?

13   A.   In September of 2000 Bratz was born?  What do you mean

14   by Bratz?  Bratz drawings or Bratz dolls?  Bratz dolls did

15   not come to the market until 2001.

16   Q.   Well, if you look at Exhibit 11907.

17   A.   Exhibit?

18   Q.   11907.

19   A.   Yes, go ahead.

20   Q.   You recognize that as an e-mail that includes you and

21   Victoria O'Connor and Sandrine de Raspide?

22   A.   Your pronunciation is better than mine.

23   Q.   You recognize it as one of your e-mails?

24   A.   That's correct.

25             MR. PRICE:  Your Honor, move Exhibit 11907 into

EXHIBIT 13
PAGE 164

1    evidence.

2              MR. NOLAN:   No objection, your Honor.

3              THE COURT:   It's admitted.

4              **(Exhibit 11907 received.)**

5    **Q.**   BY MR. PRICE:   This is one of those e-mails where

6    someone else has written you an e-mail and you're going

7    through and typing your comments or responses?

8    **A.**   That's correct.

9    **Q.**   So, for example, where it has this e-mail from Nathalie

10   Riesen to -- it says to ILarian at MGAE dot com.   Is that

11   you?

12   **A.**   That was my e-mail address at the time.

13   **Q.**   And you see it says:   "I have some questions about the

14   story of the Bratz.   I'd ask if you would" --

15   **A.**   I see that.

16   **Q.**   And one of the questions was date of birth of the Bratz,

17   time of development, first launch in the United States.

18              Do you see that?

19   **A.**   Yes.

20   **Q.**   And you've got -- what is typed here is your response;

21   correct?

22   **A.**   I'm sorry?   The one in capital is mine.

23   **Q.**   And your response is:   "Born September 2000.   Nine

24   months to develop, like a baby.   Launched in the USA in July

25   2001 and Spain June 2001, before USA."

EXHIBIT __17__
PAGE __165__

1      Do you see that?

2  A.   I do.

3  Q.   And I take it that for this birth in September of 2000,

4  you're not taking credit for the paternity of that; right?

5  A.   I'm sorry?

6  Q.   That is, where it says born in September 2000, you are

7  not the one who bore it?

8  A.   I personally?

9  Q.   Yes.

10 A.   No, I have not given birth to anybody yet.

11 Q.   Notify me if you do.  We can make a lot of money.

12      So you're talking about born in September 2000, the

13 person who you're referring to who gave birth to Bratz in

14 September of 2000 was Carter Bryant?

15 A.   MGA Entertainment gave birth to Bratz dolls and Bratz

16 brand.  Carter Bryant came up with the drawings that became

17 the inspiration for Bratz.

18 Q.   My understanding is you weren't aware of anything being

19 done in September 2000 regarding Bratz except Mr. Carter

20 Bryant presented to you Exhibit 302.  Isn't that right?

21 A.   No.  My testimony was that there could have been some

22 work done on the Bratz to see if it could be done, could be

23 made to a doll or not in September or October.  I just don't

24 know the detail of that.

25 Q.   Well, you certainly would agree that the date that --

EXHIBIT 13
PAGE 166

1650

1   using your word here, Bratz, the date that Bratz was created

2   was in September of 2000.

3   A.    No.  You should refer back to the date of the e-mail.

4   That's October 31st, 2002.  And Bratz dolls were in the

5   market already for about a year when I wrote that e-mail.

6   Q.    Well, if you'd look at Exhibit 551.

7   A.    I'm sorry?

8   Q.    Look at Exhibit 551.

9   A.    Should I put this away?

10  Q.    Yes, we're going to 551 now, a different document.

11          And that's already in evidence, your Honor.

12          THE COURT:  Very well.

13  Q.    BY MR. PRICE:  Mr. Larian, you're aware of this e-mail

14  between Nana Ashong and Victoria O'Connor, Paula

15  Treantafelles, now known as Paula Garcia, and Martin Hitch?

16  A.    I'm not.

17  Q.    You've never seen this before this trial?

18  A.    Only through this trial I have.

19  Q.    Who is Nana Ashong?

20  A.    She was product manager, to the best of my recollection,

21  at MGA at one time.

22  Q.    And I think you said Martin Hitch, was he in charge of

23  sales?

24  A.    He was in charge of international sales.

25  Q.    And how about Jackie Bielke?

EXHIBIT _13_
PAGE _____167

1651

1    **A.**    I have no recollection of her.

2    **Q.**    Do you know why Ms. Ashong, in September of 2001, was

3    sending an e-mail saying that the date of creation for Bratz

4    was September 18, 2000?

5    **A.**    I have no idea.

6    **Q.**    Do you recall that you sent an e-mail saying for legal

7    purposes, let's say it's October of 2000?

8    **A.**    I don't recall that.  I might have.  I don't recall.

9    **Q.**    All right.  If you'd look at Exhibit 12842.

10   **A.**    I'm sorry.  Can you repeat the number?

11   **Q.**    12842.  Do you recognize this as an e-mail that you

12   wrote sometime around June 27, 2002?

13   **A.**    It's an e-mail that I wrote.  I don't remember the date.

14           MR. PRICE:  Move Exhibit 12842 into evidence.

15           MR. NOLAN:  No objection, your Honor.

16           THE COURT:  It's admitted, and you may publish.

17           **(Exhibit 12842 received.)**

18   **Q.**    BY MR. PRICE:  There's an e-mail from Caymohr,

19   C-A-Y-M-O-H-R, at AOL dot com.

20           Do you have any idea who that is?

21   **A.**    I have no idea.

22   **Q.**    The "To," that's your e-mail address; correct?

23   **A.**    It is.

24   **Q.**    Do you know whose e-mail addresses are in the CC?

25   **A.**    Ricardo Cruz, I think, is one of them, and the other one

EXHIBIT __13__
PAGE __168__

1668

1   topic.

2          THE COURT:  Very well.  We'll adjourn for the day.

3   We'll have the jury back tomorrow at 9:00.

4

5              (Proceedings concluded at 4:55 P.M.)

6

7

8                 C E R T I F I C A T E

9

10

11       I hereby certify that pursuant to Title 28,

12   Section 753 United States Code, the foregoing is a true and

13   correct transcript of the stenographically reported

14   proceedings in the above Mattel.

15          Certified on June 5, 2008.

16

17

18   _____
     MARK SCHWEITZER, CSR, RPR, CRR
19   Official Court Reporter
     License No. 10514

20

21

22

23

24

25

EXHIBIT 13
PAGE 169

# EXHIBIT 14

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 8, 2009

## VIA FACSIMILE AND U.S. MAIL

Amman Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:   Mattel v. MGA Entertainment, Inc., et al.

Dear Amman:

I write in furtherance of our meeting of counsel of February 6, 2009 regarding various Phase 2 discovery issues.

First, regarding Mattel's Renewed Motion to Compel Production of Documents and Things by MGA Entertainment, Inc., filed January 26, 2008 and currently pending before the Discovery Master, you agreed that MGA would produce, within thirty days, all non-privileged documents responsive to Mattel's Request No. 48 from its First Set of RFPs for the twelve individuals indentified in Mattel's motion. You also agreed to produce, within thirty days, all non-privileged documents responsive to Mattel's Request Nos. 43-75 from its Third Set of RFPs regarding "Scooter Samantha," "Space Babies" and Scott Reyes, as set forth in Mattel's motion.

As to Mattel's Request Nos. 87 and 88, regarding personnel files for former Mattel employees and vendors, you stated that your objections to producing the personnel files in their entirety arose from concerns over employee privacy. As I stated at the conference, the prior Discovery Master and the Court have time and again held that the Protective Order in this case sufficiently ameliorates any such concerns. As an example, I direct your attention to the attached Discovery Master's May 15, 2007 wherein he overruled similar privacy objections and ordered the production of personnel files. See May 15, 2007 Order Granting Mattel's Motion to Compel Production of Documents and Things, at 3, 9 (overruling MGA's privacy objections on behalf of

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT ___14___
PAGE ___170___

third parties and ordering production of responsive documents); see also id. at 11 n.4 ("The personnel file may have documents relevant to Bratz, and therefore should be produced. The protective order is sufficient to alleviate . . . privacy concern[s]."). Similarly, in another Order the Discovery Master overruled Bryant's objections based on the privacy of third parties because "the protective order is sufficient to address . . . confidentiality concerns." January 26, 2007 Order Granting Mattel's Motion to Compel Production of Documents and Things, at 15.

I trust this adequately alleviates your concerns and that MGA will also produce these files. Separately, I explained that Mattel is not only interested in what may be in the personnel files, but what may not be in there, such as instances of no disciplinary action taken. Mattel will agree, however, to exclude from its request any health care specific information. Once MGA agrees to a stipulation so ordering the production of these documents, then Mattel will take its motion off-calendar.

Second, with regard to MGA's outstanding responses to a number of Mattel's Interrogatories, you agreed that MGA would respond to Interrogatory No. 41 within thirty days.

Regarding Mattel's Interrogatory Nos. 43, 44, 51-55 and 64, your colleague, Mr. Nouges proposed that, in light of Mattel's intention to seek summary adjudication of MGA's claims of trade dress infringement, MGA be permitted to delay its response to these interrogatories until thirty days after any ruling on Mattel's contemplated motion. I informed you that I would discuss your proposal with our client, but that I did not expect them to agree.

Additionally, you questioned whether MGAE de Mexico was bound by the Order compelling responses to Interrogatory Nos. 41-43. Both the original February 15, 2008 Order and the subsequent April 22, 2008 Clarification were directed to the "MGA Parties," including MGAE de Mexico.   Moreover, as I stated at the conference, the interrogatories to MGAE de Mexico are identical to those that Mattel propounded upon MGA, and assuming MGAE de Mexico takes the same positions that were advanced by MGA and rejected by the Discovery Master, there is no reason MGAE should not be similarly bound by the logic of the Order. As you indicated that you did not have the requests at issue, I have attached Mattel's interrogatories to MGAE de Mexico.

Third, regarding Mattel's request to schedule the continued deposition of Isaac Larian on Phase 2 matters, you indicated that as MGA's CEO, any such deposition would be impermissibly burdensome. You asked me why additional time was justified. I told you that, at most, Mattel had five hours to depose Mr. Larian regarding Phase 2 issues, that he was a named defendant, that there are tens of thousands, if no hundreds of thousands, of pages of documents that he authored or related to him and the five hours (much of which was devoted to further Phase 1 issues given that MGA and Larian produced the vast majority of their documents amounting to millions of pages after Mr. Larian was first deposed). As such, further deposition is warranted. Because we were unable to reach an agreement on this issue, Mattel will seek an order form the Discovery Master compelling Mr. Larian's further deposition testimony.

Fourth, regarding Mattel's request to schedule the continued deposition of Ron Brawer on Phase 2 matters, you took the position that his deposition was unwarranted because he had already been

2

EXHIBIT ___14___
PAGE ___171___

deposed and because you did not see Mr. Brawer's continued relevance. Mr. Brawer is a key witness and/or actor at the core of Mattel's Phase 2 allegations. His deposition was never completed, and now that Phase 2 has begun, it should be scheduled immediately. You agreed that you would consider this issue and to provide a response on Monday.

Fifth, regarding Mattel's intention to file a motion for reconsideration of the order compelling Isaac Larian's communications with Mattel employees, but limiting the response to communications that occurred prior to 2005, you indicated that you needed more time to consider the issue because you claimed that your firm did not have the documents, and you needed to determine whether compliance with Mattel's request would be unduly burdensome. I informed you that it was not my understanding that the Discovery Master's time limitation was based on burden considerations. As we discussed, the Discovery Master's prior order limited the scope of Mattel's request based on misapprehension of Mattel's counterclaims. The temporal limitation was not an issue discussed at the hearing or briefed, but a decision made, *sua sponte*, by the Discovery Master. Plainly Mr. Larian's communications with Mattel's employees are highly relevant—indeed, more so, if there may be, as you initially suggested, that Mr. Larian has had so many communications with Mattel employees that responding to such a request would impose an undue burden upon Mr. Larian or upon MGA. We agreed that you would provide me with a firm position on Monday.

Sixth, regarding Mattel's 30(b)(6) deposition of MGAE de Mexico and MGA, you agreed that at the conference on Monday you would be in a position to state which employees would be designated for which topics and their dates of availability. To assist you, I've am attaching Mattel's January 9, 2008 Deposition Notices of MGAE de Mexico and MGA.

Seventh, regarding MGA's supplemental document production regarding financial information, as required by Rule 26(e)(1) and the Discovery Master's Orders of December 28 and 31, 2007, you indicated that you were not in a position to respond to Mattel's request at this time because you did not have the document requests or orders at issue. To assist you, I am attaching Mattel's Requests Nos. 207, 208, 209 and the relevant Discovery Master orders. Please be prepared to respond substantively to Mattel's request on Monday.

Eighth, regarding Mattel's deposition notices of Mr. Vargas, Ms. Trueba and Ms. Salemnia, you agreed that MGA was no longer were objecting on the grounds that Judge Larson's January 7, 2008 order required all Phase 2 depositions to be completed by the end of January 2008. I requested, and you agreed, to provide by Monday, February 9, 2009, amended objections to those deposition notices with that objection omitted.

Ninth, regarding Ms. Salemnia's last known address, you indicated that you would be able to respond at our Monday conference.

Tenth, regarding the current procedures for discovery disputes, I had requested that MGA agree to amend the discovery master stipulation to reflect the parties' long-standing practice of conducting meetings of counsel telephonically. Further, we will take under consideration your request that we amend the procedures to allow a party extended time to file any opposition and reply.

EXHIBIT __14__
PAGE __172__

Finally, I must note that you were not adequately prepared to substantively discuss a number of issues which we had planned to address at last Friday's meeting of counsel. For a number of these disputes you did not even have the relevant pleadings or underlying orders. As a courtesy, I am providing you with those documents that you lack, but I am sure that your co-counsel has. We do not expect that your association in of this case will cause further delay in its prosecution or defense of this case. If the association of your firm was going to cause delay in any respect, then the time to raise that was with the Court upon the request for association. Your failure to do so does not justify any delay or excuses for not being fully prepared, particularly given that your firm is but one of MGA's counsel in this case.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Enclosures

cc:   Jean P. Nogues, Esq. (via electronic mail w/ enclosures)

4

EXHIBIT __14__
PAGE __173__

EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER