1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    405 Howard Street
5   San Francisco, CA  94105-2669
    Tel: (415) 773-5700/Fax: (415) 773-5759
6
    WILLIAM A. MOLINSKI (State Bar No. 145186)
7   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
8   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
9   Tel. (213) 629-2020/Fax: (213) 612-2499

10  THOMAS S. MCCONVILLE (State Bar No. 155905)
    tmcconville@orrick.com
11  ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza, Suite 1600
12  Irvine, CA 92614-2258
    Tel: (949) 567-6700/Fax: (949) 567-6710

13  Attorneys for MGA Parties

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                  SOUTHERN DIVISION

| | |
|---|---|
| 17  CARTER BRYANT, an individual, | Case No.  CV 04-9049-DOC (RNBx) |
| 18              Plaintiff, | Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727 |
| 19         v. | **REPLY BRIEF IN SUPPORT OF MOTION TO VACATE RECALL PROVISIONS OF INJUNCTION, OR, IN THE ALTERNATIVE TO CLARIFY AND/OR MODIFY SUCH RECALL PROVISIONS; MOTION TO CLARIFY AND/OR LIMIT MONITOR'S AUTHORITY AS AN ADJUDICATIVE OFFICER OF THE COURT** |
| 20  MATTEL, INC., a Delaware corporation, | |
|              Defendant. | |
| 21 | |
| 22  AND CONSOLIDATED ACTIONS. | |
| 23 | |
| 24 | Date:        November 9, 2009 |
| 25  **[PUBLIC REDACTED VERSION]** | Time:        8:30 a.m. |
| | Courtroom:  9D (Hon. David O. Carter) |
| 26 | |
| 27 | [Declarations of Michael J. Collins, Samir Khare, and Warrington S. Parker III and Supplemental Declaration of Jason Russell filed concurrently] |
| 28 | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT.........................................................................................................2

I.  THE COPYRIGHT RECALL ORDER SHOULD BE VACATED .............2

    A.  This Court Has Jurisdiction To Vacate The Recall Provisions. ..........2

    B.  The Copyright Recall Order Cannot Be Justified Under *Marlyn* .........5

        1.  This Motion Is Not "Cover" For Lack Of Preparation..............5

        2.  *Marlyn* Applies And Has Not Been Previously Considered ...............................................................................6

        3.  The *Marlyn* Recall Factors Have Not Been Met.......................8

            a.  Danger to the Public .......................................................8

            b.  Willfulness........................................................................8

            c.  The Burdens of the Recall.............................................10

II.  THE ALTERNATIVE REQUESTED CLARIFICATIONS AND MODIFICATIONS SHOULD BE GRANTED IF THE RECALL ORDER IS NOT VACATED .......................................................................12

    A.  A "Sweeping the Shelves" Interpretation Is Not Consistent With The Injunction Or Law................................................................12

    B.  The Copyright Recall Order Cannot Apply Outside of the United States.................................................................................15

    C.  The Requested Modifications To The Time Periods Make Sense In Light Of The Changed Circumstances. ......................................17

III.  ONLY MATTEL BELIEVES THAT THE MONITOR IS A SPECIAL MASTER.......................................................................................19

CONCLUSION ....................................................................................20

1

**TABLE OF AUTHORITIES**

2
                                                                              **Page**
3

**FEDERAL CASES**

4

5
*A&M Records, Inc. v. Napster, Inc.*,
6    284 F.3d 1091 (9th Cir. 2002)...................................................................3

*Abbot Spine, Inc. v. Gannon Rice Med., Inc.*,
7    2006 WL 2091709 (D. Ariz. July 21, 2006)...................................................7

8    *Amoco Prod. Co. v. Village of Gambell*,
     480 U.S. 531 (1987)............................................................................7
9
*Armstrong v. Virgin Records, Ltd.*,
10   91 F. Supp. 2d 628 (S.D.N.Y 2000) ..........................................................16

11   *Cherry River Music Co. v. Simitar Enter., Inc*
     38 F. Supp. 2d 310 (S.D.N.Y. 1999) ..........................................................14
12
*Coastal Corp. v. Texas Eastern Corp.*,
13   869 F.2d 817 (5th Cir. 1989).................................................................2, 3

14   *CyberMedia v. Symantec Corp.*,
     19 F. Supp. 2d 1070 (N.D. Cal. 1998)....................................................15, 16
15
*DSC Commc'ns Corp. v. Next Level Commc'ns*,
16   107 F.3d 322 (5th Cir. 1997)...................................................................18

17   *eBay v.MercExchange*,
     547 U.S. 388 (2006)............................................................................7
18
*Giraldes v. Prebula*,
19   2007 WL 2688780 (E.D. Cal. Sept. 12, 2007)...............................................4

20   *Gucci Am., Inc. v. Daffy's Inc.*,
     354 F.3d 228 (3d Cir. 2003)...............................................................7, 8
21
*Int'l Paper Co. v. Ouellette*,
22   479 U.S. 481 (1987)...........................................................................17

23   *Larami Corp. v. Lanard Toys Ltd.*,
     1992 WL 20320 (E.D. Pa. Jan. 30, 1992)...............................................3, 11
24
*Lewis v. Tobacco Workers' Int'l Union*,
25   577 F.2d 1135 (4th Cir. 1978)................................................................4

26   *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
     571 F.3d 873 (9th Cir. 2009)........................................................... passim
27
*McClatchy Newspapers v. Central Valley Typographical Union No. 46*,
28   686 F.2d 731 (9th Cir. 1982)...............................................................3, 4

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page

4

*Merit Diamond Corp. v. Frederick Goldman, Inc.*,
  376 F. Supp. 2d 517 (S.D.N.Y. 2005) ..................................................14

5

*Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.*,
  242 F.3d 1163 (9th Cir. 2001)...................................................3, 4

6

7

*Newton v. Consolidated Gas Co.*,
  258 U.S. 165 (1922)...........................................................................3

8

*Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*,
  25 F. Supp. 2d 372 (S.D.N.Y. 1998) ...................................................18

9

10

*Primavera Labs., Inc. v. Elizabeth Arden Co.*,
  1993 WL 319214 (S.D.N.Y. Aug. 13, 1993)........................................12

11

*Protect Our Water v. Flowers*,
  377 F. Supp. 2d 882 (E.D. Cal. 2004) ...................................................4

12

13

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
  204 F.3d 867 (9th Cir. 2000)...............................................................3

14

*Societe Civile Succession Richard Guino v. Int'l Found. for Anticancer Drug
  Discovery*,
  460 F. Supp. 2d 1105 (D. Ariz. 2006) ..................................................15

15

16

*Subafilms, Ltd. v. MGM-Pathe Comm'cs Co.*,
  24 F.3d 1088 (9th Cir. 1994)...............................................................16

17

18

*United States v. Vroman*,
  997 F.2d 627 (9th Cir. 1993)................................................................4

19

20

**STATE CASES**

21

*Conderback, Inc. v. Standard Oil Co.*,
  48 Cal. Rptr. 901 (Cal. App. 1966) ......................................................17

22

*Pacific Merchant Shipping Ass'n v. Voss*,
  48 Cal. Rptr. 2d 582 (Cal. 1995) ..........................................................17

23

24

**FEDERAL STATUTES**

25

15 U.S.C.

26

  § 2051(a)(3) ..............................................................................6

27

28

1

### TABLE OF AUTHORITIES
(continued)

**Page**

16 C.F.R.

§ 1000.1 ................................................................................6

§ 1000.2 ................................................................................6

17 U.S.C.

§ 502(a) ...............................................................................17

§ 503(a) ...............................................................................17

### MISCELLANEOUS

JAMES WM. MOORE, 12 MOORE'S FEDERAL PRACTICE § 62.06 (3d ed. 2009) ..........3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

In the Motions, MGA demonstrated that the pending recall order will be of no benefit to Mattel and will cause enormous burden to MGA, a family owned company.  MGA also demonstrated that the Copyright Recall Order cannot properly be interpreted to require MGA to sweep the shelves of retailers worldwide, and that the Monitor does not have adjudicatory powers.  Since the Motions were filed, the Monitor filed his Fifth Interim Report explaining that █████ ██████████████████████████████████████████████████████████  *See* Watson Decl. (Fifth Interim Report of Monitor Patrick Fraioli) Ex. 32 at 5.  All of these propositions strongly support the requested relief.

Remarkably, in response to the Motion to Vacate, Mattel *does not offer a single shred of evidence of its plans* ████████████████  Mattel relies upon its tired, vague, and conclusory declarations, and the same Monitor Report █████ ████████████████████████████████  The best that these can show is that Mattel is capable of having Bratz product in the market at ████ ██████████████████████████████████████ ███████████████████████████████████ ████████████████████████  Nor does Mattel rebut in any fashion the substantial economic harm that the recall will cause to MGA— indeed, why would it, since a terrible burden on its competitor can only help Mattel. In short, Mattel makes no meaningful attempt to justify the recall order under the benefit/burden analysis required by *Marlyn*, particularly given the remarkable scope of the Order that Mattel unconvincingly argues should apply—a requirement that MGA sweep the shelves on an international basis and include product for which it has already been compensated with a damages verdict.

Meanwhile, the Ninth Circuit has now set argument in this case for December 9.  Declaration of Warrington S. Parker III Ex. 5 (Hearing Notice).  In a very short period of time we are all going to have a good idea whether any of the

1    Court's injunctive orders can stand, and in the meantime the Copyright Recall

2    Order will go into effect and threatens to destroy MGA—despite the fact that

3    Mattel cannot be bothered to offer any evidence to support it.  This situation cries

4    out for relief, and the Court should grant it.

5                                    **ARGUMENT**

6    **I.    THE COPYRIGHT RECALL ORDER SHOULD BE VACATED.**

7            **A.    This Court Has Jurisdiction To Vacate The Recall Provisions.**

8            Mattel acknowledges, as it must, that Rule 62(c) and the Ninth Circuit

9    authorize this Court to modify injunctive orders that are pending on appeal.  *See*

10   Opp. at 13, 15.  The only dispute is a matter of degree.  Mattel argues that any

11   modification to the injunction should only be for the purpose of preserving the

12   "status quo."  Opp. at 13.  Mattel also argues that Rule 62(c) "does not allow for

13   'dissolution'" of an injunction.  Opp. at 14 (quoting *Coastal Corp. v. Texas Eastern*

14   *Corp.*, 869 F.2d 817, 819 (5th Cir. 1989)).  Since the Copyright Recall Order will

15   itself disturb the status quo (the very definition of a mandatory injunction), vacating

16   it is fully consistent with Mattel's view.  And since the injunctive orders otherwise

17   remain in effect, dissolution is a complete red herring.  Nor is MGA's position

18   inconsistent with the position it took on ███████████—where, unlike here,

19   the exact same issue was pending for review both in the Ninth Circuit and before

20   the Discovery Master.  This Court clearly has jurisdiction to vacate the recall

21   provisions.

22           <u>First</u>, Mattel nowhere explains how vacating the recall provisions would

23   disturb the status quo.  Exactly the opposite is true.  Because the recall requires the

24   return of product, the recall itself is the act that will disturb the status quo—

25   precisely why a recall order is recognized to be a form of mandatory injunction.

26   *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79

27   (9th Cir. 2009).  Mattel *does not dispute* that the Copyright Recall Order is a

28   mandatory injunction.  Vacating a mandatory injunction is the very definition of

1    preservation of the status quo.  In fact, this is precisely the conclusion reached by

2    the court in *Larami Corp. v. Lanard Toys Ltd.*, 1992 WL 20320 (E.D. Pa. Jan. 30,

3    1992), in which the court vacated the recall provisions of a preliminary injunction

4    even while an appeal was pending from the grant of that injunction.  The court

5    noted that the recall was a mandatory injunction that "disturb[ed] rather than

6    preserve[d] the status quo" and found that the circumstances did not warrant

7    imposition of a recall.  *Id.* at *2.  So here.[1]

8         <u>Second</u>, MGA made clear in its motion that it is *not* seeking to vacate the

9    injunction.  Mot. at 13.  The prohibitory provisions will remain in effect.  As the

10   Monitor also noted, ███████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   and it is preparing to do so.  Watson Decl. Ex. 32 at 14-15.  MGA's motion,

13   therefore, does not request "dissolution" of the injunctive orders.  If this Court

14   grants MGA's motion, many injunctive provisions (including the constructive trust)

15   remain in place.  The cases cited by Mattel are therefore wholly inapposite.  *See*

16   *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th

17   Cir. 2000) (request to vacate injunction); *Coastal Corp. v. Texas Eastern Corp.*,

---

[1] Moreover, when the Ninth Circuit says that a district court can modify an injunction while it is on appeal only to preserve the status quo, it means that a district court cannot decide the issue so as to change what is actually on appeal.  As reflected in a leading treatise, "*Maintaining the status quo* means that a controversy will still exist once the appeal is heard.  Any action on the district court's part which has the effect of divesting the court of appeals of its jurisdiction over the matter by eliminating the controversy prior to the hearing of the appeal, is inappropriate."  JAMES WM. MOORE, 12 MOORE'S FEDERAL PRACTICE § 62.06 (3D ED. 2009) (emphasis in original).  This is what the Ninth Circuit means when it says that Rule 62(c) does not empower a court to "'finally adjudicate substantial rights directly involved in the appeal.'"  *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 735 (9th Cir. 1982) (quoting *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (1922)); *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002) (same).  This is why the Ninth Circuit allowed the injunction to be modified in *Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.*, 242 F.3d 1163 (9th Cir. 2001), because the modification did not "materially alter the status of the case on appeal."  *Id.* at 1166 (citation and internal quote omitted).  As the Court emphasized, both before and after the modification, the appeal from the injunction remained unaffected because "neither modification at issue . . . impermissibly altered the status quo with respect to the appeal of the injunction."  *Id.* at 1168.

REPLY ISO MTN. TO VACATE OR MODIFY RECALL ORDER
CV 04-9049 DOC (RNBx)

1    869 F.2d 817, 819 (5th Cir. 1989) (court dissolves injunction in its entirety); *Lewis*

2    *v. Tobacco Workers' Int'l Union*, 577 F.2d 1135, 1139 (4th Cir. 1978) (request to

3    vacate entirety of injunction).

4        <u>Third</u>, against this backdrop, the appropriate inquiry—and one not addressed

5    by Mattel—is whether MGA is asking this Court to address an issue already

6    presented on appeal.  The answer is "no."  The issue of the propriety of the recall

7    order under *Marlyn* (or its proper interpretation) is not addressed in the appeal.  *See*

8    Dkt. # 7050 (Notice of Lodging).  This is why MGA's position on the ███████████

9    █████ before the Discovery Master is fully consistent with its position here—in that

10   instance *exactly the same issues* are presented on appeal and before the Discovery

11   Master.  *Compare* Dkt. # 7050 (Notice of Lodging) Mattel's Answering Brief at 75-

12   78 *with* Dkt. # 5035 ████████████████████; *see* Dkt. #  6380 (MGA

13   Suppl. Memo re Mtn. for Reconsideration); Dkt. # 6599 (MGA Reply ISO Mtn. for

14   Reconsideration).  In contrast, here, should this Court grant MGA's motion to

15   vacate or modify the recall provisions of that injunction, the validity of the

16   Copyright Injunction remains pending before the Ninth Circuit.  This Court will not

17   have "materially alter[ed] the status of the case on appeal," *Natural Resources*

18   *Defense Council, Inc.*, 242 F.3d at 1166, or "'finally adjudicate[d] substantial rights

19   directly involved in the appeal.'"  *McClatchy Newspapers,* 686 F.2d at 735.[2]

20       For these reasons, this Court has jurisdiction to grant all of the requested

21   relief, and as set out below, should do so.

22

23

---

24   [2] The remaining cases Mattel cites do not change this analysis.  *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882 (E.D. Cal. 2004), Opp. at 13, discusses the

25   standard for a stay pending appeal. *United States v. Vroman*, 997 F.2d 627 (9th Cir. 1993), Opp. at 13, involves a probation revocation and has nothing to say about

26   injunctions.  And finally, in *Giraldes v. Prebula*, 2007 WL 2688780 (E.D. Cal. Sept. 12, 2007), the only case Mattel cites in support of its argument that this Court

27   cannot consider MGA's alternative modification motion, Opp. at 14, the Court found that it did not have jurisdiction to modify a *summary judgment order* while it

28   was on appeal, but it *did* have authority to decide plaintiff's motion for preliminary injunction.

**B.     The Copyright Recall Order Cannot Be Justified Under *Marlyn*.**

In the Motions, MGA demonstrated that there is important new Ninth Circuit case law governing the standard for recalls that requires consideration of factors in addition to those set forth in *eBay*.  Mattel asserts that this whole motion is a cover for MGA's lack of preparation for a recall (Opp. at 16, 22), which is just plain false.  Part 1, *infra*.  Mattel also argues is that these new *Marlyn* factors do not really apply, and anyway it says, the recall has already been litigated extensively.  Opp. at 16.  This is also incorrect.  Part 2, *infra*.  Finally, Mattel makes a halfhearted attempt to address the required factors, but since it concedes, as it must, that there is no public safety risk and that the jury repudiated willfulness, and since Mattel put in no new evidence pertinent to the central factor—the benefit/burden analysis—its argument is wholly unconvincing.  Part 3, *infra*.

**1.     This Motion Is Not "Cover" For Lack Of Preparation.**

Mattel argues, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that this Motion is simply designed to cover for MGA's lack of preparation to conduct the recall. Nothing could be further from the truth.  As set out in the Motions, MGA has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pembleton Decl. ¶¶ 3-11, 15-16; *see* Supp. Russell Decl. ¶ 5; *see also* Declaration of Michael Collins ¶¶ 2-8; Declaration of Samir Khare.  Mattel's argument rests on ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Opp. at 12, 16.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ Watson Decl. Ex. 32 at 11.  In part, the Monitor simply misunderstood the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Collins Decl. ¶ 3-5.  ▮▮▮▮▮▮

1  t█████████████████████████████████████████

2  █████████████████████████████████  *See* Supp. Russell Decl. ¶¶

3  3-4.  ██████████████████████████████████████████

4  ███████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████

6  ████  *See* Collins Decl. ¶ 6; 16 C.F.R. §§ 1000.1-2 (2006) (The Consumer Product

7  Safety Commission is regulatory agency that protects the public against

8  unreasonable risk of injury created by consumer products); 15 U.S.C. § 2051(a)(3)

9  (Consumer Product Safety Act is necessary to protect "against unreasonable risk of

10  injury associated with consumer products").

11  █████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ██████  (Collins Decl. ¶ 8) using the exact procedures specified in the Order—and

14  more.  *Compare* Pembleton Decl. Ex. A *with* Copyright Recall Order ¶ 6.  MGA

15  stands ready to comply, and these Motions are emphatically *not* offered to cover

16  either a failure to prepare or willful noncompliance.

17           2.    ___*Marlyn* Applies And Has Not Been Previously Considered.___

18           Mattel's argument that the recall has been "litigated extensively" (Opp. at

19  16), is misleading, and its argument that the *Marlyn* factors do not apply (Opp. at

20  16-18), is wrong.

21           The propriety of the recall under *Marlyn* has never been addressed by this

22  Court (again, for obvious reasons since the case was decided on July 2, 2009), and

23  it is apparent from the Court's original reasoning that it relied exclusively on two of

24  the *eBay* factors to order the recall, a point that Judge Larson recently expressly

25  confirmed.  The litigation before the Monitor concerns ████████████████

26  ████████████████████████████████████████████████████████

27  Mattel's suggestion that there has been "extensive" litigation concerning the recall

28  is therefore misleading and inapt.

1    *Marlyn* is not limited in the fashion suggested by Mattel, either.  First, it is

2    not limited to cases involving preliminary injunctions.  It does not say so, and

3    anyway, "[t]he standard for a preliminary injunction is essentially the same as for a

4    permanent injunction with the exception that the plaintiff must show a likelihood of

5    success on the merits rather than actual success."  *Amoco Prod. Co. v. Village of*

6    *Gambell*, 480 U.S. 531, 546 n. 12 (1987).  Indeed, *Gucci*, from which the *Marlyn*

7    Court took the Ninth Circuit's new recall standard, *is* a permanent injunction case.

8    *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 230-31 (3d Cir. 2003).[3]

9    Nor are the *Marlyn* recall standards optional—either in the sense that the

10   recall factors are suggestions or in the sense that a plaintiff is relieved of its

11   obligation of "establish[ing] all seven factors," the four factors that justify a

12   prohibitory injunction and the three *Marlyn* factors that justify a recall.  Opp. at 17.

13   *Marlyn* held that a recall may be ordered only if a plaintiff establishes the factors

14   applicable to a prohibitory injunction *and* the three factors that would justify a

15   recall.  This is clearly what the Court meant when it held that "to justify a recall, the

16   infringed company must *first* satisfy the traditional standard for a prohibitory

17   injunction.  *In addition*, the district court must consider three further factors . . . ."

18   571 F.3d at 879 (emphasis added).

19   Moreover, these recall factors are factors that a "the district court *must*

20   consider . . . ."  *Id.* (emphasis added).  That these recall standards must be proven is

21   consistent with *Gucci*, which *Marlyn* adopts without reservations, wherein the court

---

22

23   [3] Inexplicably, Mattel cites *eBay v. MercExchange*, 547 U.S. 388 (2006), and *Abbot Spine, Inc. v. Gannon Rice Med., Inc.*, 2006 WL 2091709 (D. Ariz. July 21, 2006),

24   as proof that there is a meaningful distinction between preliminary and permanent injunctions.  Opp. at 17-18.  However, neither so holds.  *eBay* states the standard

25   for a permanent injunction, 547 U.S. at 391, citing among other cases, *Amoco Prod. Co. v. Village of Gambell*, which as noted, explicitly states that the preliminary and

26   permanent injunction standards are "essentially the same" with the exception of the success on the merits standard.  480 U.S. at 546 n. 12.  *Abbot Spine, Inc.*, and the

27   case it cites, draws a distinction between preliminary and permanent injunctions only for the purpose of stating that an appeal from a preliminary injunction does not

28   divest the district court of jurisdiction to consider a request for a permanent injunction.

1   states "the propriety of the court's recall decision is *governed by*" the three recall

2   factors adopted by *Marlyn*.  354 F.3d at 233 (emphasis added).

3          In short, *Marlyn* applies, the factors it adopts are not optional, and it has not

4   been considered in this case.

5              **3.    The *Marlyn* Recall Factors Have Not Been Met.**

6                   **a.    Danger to the Public.**

7          Mattel—rightly—agrees that there is no risk of danger to the public.  Mattel

8   argues this factor "should be given little weight" (Opp. at 19), but cites no authority

9   for this proposition.  There is a reason for this.  *Marlyn* does not hold that this

10  factor can be pushed to one side.  Indeed, it is the factor discussed most in *Marlyn*.

11  Strike one.

12                  **b.    Willfulness.**

13         Mattel cannot dispute that the jury rejected willful infringement, the Court

14  made no willfulness finding supporting the injunctive orders, and the Court again

15  refused to find willfulness when it entered its accounting of profits order.  Mattel's

16  only rejoinder, without a single case to support it, is that "MGA made the same

17  argument previously when it urged that it was 'important to consider'" and that the

18  Court properly "rejected MGA's argument."  Opp. at 18.  In making this assertion,

19  Mattel proves that the *Marlyn* factors were not considered, since non-willfulness is

20  a factor that both *Marlyn* and *Gucci* insist cannot be rejected.  Strike two.

21         Mattel does try another tack.  It says that the willfulness *might* have been

22  found had a particular document been disclosed earlier.  Opp. at 18.  As Mattel

23  notes, ██████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████

25  ██████████████████████████████████ Opp. at 11.  From this document, Mattel

26  apparently infers that the weight of evidence has now tipped the lever over the

27  fulcrum, and that MGA really was a willful infringer, despite that the proposition

28  has been thrice rejected.  These Motions are not the procedural mechanism, if there

1    is one, for Mattel to try to backdoor a willfulness finding.  Nor would its arguments

2    suffice to support one.

3          Indeed, Mattel has already claimed—in this very same Opposition brief—

4    that the "[o]verwhelming evidence" established "[t]he timing of Bryant's creation

5    of Bratz and MGA's knowledge thereof."  Opp. at 3.  Mattel insists this is true in

6    single space bullet points that recite over 25 exhibits.  *Id.* at 3-5.  Either Mattel's

7    three pages of bullet points were sufficient to establish willfulness, or not.  The jury

8    concluded that this timing evidence did not prove willfulness.  And—more to the

9    point of this new document—MGA never disputed that Bryant continued to work at

10   Mattel for a period of time while he also worked on Bratz with MGA.  Parker Decl.

11   Ex. 1 (5/27/08 Trial Tr. 250-62).   It was conceded that Bryant worked on Bratz at

12   MGA while still employed at Mattel—he had refused to quit immediately upon

13   giving his two weeks' notice as demanded by Mr. Larian.  *Id.*  The fight was all

14   over the issue whether Bryant created the original sketches in 1998 or not.  ████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ██████████   Parker Decl. Ex. 2 (Wang Depo. 48, 53-54); Ex. 3 (Rosenbaum Depo.

18   80, 82-85); Ex. 4 (5/22/08 Trial Tr. 51).  Although the jury apparently ultimately

19   rejected the view that the sketches were created in 1998 (without benefit of the

20   Rosenbaum or O'Connor emails), at least some of the jurors believed Bryant had

21   created it earlier than posited by Mattel, because the jury could not reach a verdict

22   on four of the disputed items.  Dkt. # 4125 (Phase 1A Verdict Form).

23          In a transparent attempt to prejudice consideration of this Motion, lards it

24   Opposition with facts having nothing to do with the merits of this Motion.  ████

25   ████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████   Opp. at 5-6,

27   10-12.  Proof that these facts are not relevant is shown by Mattel's own brief.

28   Mattel references neither fact in support of its willfulness argument.  *See* Opp. at

18.  That is for good reason.  Prior to entering the Copyright Injunction, the District Court addressed Mattel's crime-fraud exception argument, it reviewed documents in camera, and it concluded that there was no crime-fraud exception.  Dkt. # 3908; Parker Decl. Ex. 6 (6/20/08 Order).  ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Parker Decl. Ex. 7 (8/15/09 Trial Tr. 7645).  In any case, the proof is in the pudding.  The Copyright Injunction followed this and there was still no finding of willfulness by the District Court.

Moreover, none of this evidence shows anything at all about MGA's knowledge regarding the equally important second factor for infringement—legally actionable copying.  That was an issue that was also hotly contested at trial on which the jury appears to have accepted MGA's view that any infringement was very limited in scope to the first generation of dolls.  The jury first asked whether it could find the infringement was limited to the first generation of dolls before bringing in its verdict, and then rejected Mattel's astronomical damages claim for infringement (in excess of $1B), awarding only $10M against all three defendants.  (Of course, we do not know for certain whether this is what the jury meant, because Mattel convinced Judge Larson not to use a special verdict form.)  Thus, the dolls that are sought to be recovered by the recall order were never even found by the jury to be *infringing*, let alone MGA to be willful in marketing them.

In sum, there is no reason or basis to disturb three prior findings of non-willfulness in order to justify the Copyright Recall Order under *Marlyn*.

### c.    **The Burdens of the Recall.**

In its Motion, MGA presented evidence that the recall would cost MGA ████████████  Mot. at 17; Pembleton Decl. ¶¶ 12-16; Falcon Decl. ¶¶ 8-11. MGA presented evidence that the recall ███████████████████████████

1  ██████████████████████████████████████  Mot. at 18;

2  Pembleton Decl. ¶ 14; Falcon Decl. ¶ 12.  MGA presented evidence that, even if

3  ████████████████████████████████████████████████

4  ██████████████████████████████████████  Mot. at 19;

5  Falcon Decl. ¶¶ 8-12.  Since that filing, the Monitor filed a report ████████

6  ████████████████████████████████████████████████

7  ██████████████████████  Watson Decl. Ex. 32 at 5.

8      Against this showing, Mattel presents absolutely not one single shred of

9  evidence.  It has the burden of establishing that its benefit is greater than the burden

10 of a recall.  *Marlyn*, 571 F.3d at 879.  But Mattel offers nothing.  Strike three.

11     The only thing Mattel points to is the fact that the District Court found that a

12 recall was warranted in light of the scope of the infringement and in light of the fact

13 that the parties are competitors.  Opp. at 18-19.  But those are just the basic factors

14 that have to be considered under *eBay* for any prohibitory injunction.  The proper

15 consideration for a mandatory injunction as articulated in *Marlyn* is the *relative*

16 benefit and injury—whether the benefit to Mattel *outweighs* the burden to MGA.

17 *See also Larami Corp.*, 1992 WL 20320 * 2.  Even giving the recited District Court

18 findings all weight, they tell us nothing about the relative benefits and burdens of

19 the recall at present because the District Court in December 2008 did not have the

20 benefit of the intervening circumstances, the delay in Mattel's plan for bringing

21 Bratz to market, and the current burden to MGA.

22     Mattel has no Bratz product on the market.  The need to clear the shelves for

23 Mattel's version of Bratz was not the basis for the recall order.  Dkt. # 6851

24 (9/22/09 Order) at 2.  Remarkably, Mattel concedes that ██████████████████

25 ████████████████████████████████████████████████

26 ██████████████████  Opp. at 19-20 (emphasis original).  Mattel has studiously

27 avoided providing this Court any information concerning ████████████████

28 submitting now three sentences in its Opposition that only amount to the assertion

-11-

1   that the Monitor ████████████████████████████████████████ Opp. at

2   20.  That may be, but MGA has asked in discovery for this information, and Mattel

3   has refused to provide it, rendering it impossible for MGA to address this issue.

4   *See* Mot. at 18.

5          In any case, what is absolutely clear is that there is no doll now and ██████

6   ██████████████████████ even under Mattel's vague and conclusory estimates.

7   As courts have recognized—and Mattel does not respond to this at all—where, as

8   here, Mattel has no product on the market, this is a "decisive factor in the

9   burden/benefit analysis" and warrants against a recall even if the burden is slight

10  because "the benefit of a recall to [Mattel] would be even less than the slight burden

11  a recall would impose on defendant."  *Primavera Labs., Inc. v. Elizabeth Arden*

12  *Co.*, 1993 WL 319214 *1 (S.D.N.Y. Aug. 13, 1993); *see also* Mot. at 19.

**II.  THE ALTERNATIVE REQUESTED CLARIFICATIONS AND
       MODIFICATIONS SHOULD BE GRANTED IF THE RECALL
       ORDER IS NOT VACATED.**

**A.  A "Sweeping the Shelves" Interpretation Is Not Consistent With
     The Injunction Or Law.**

17         In arguing that MGA must in fact "sweep the shelves," Mattel focuses on the

18  first sentence of paragraph 4 of the Copyright Recall Order, reading the command

19  to "procure the return, and to withdraw and recall [Bratz products]" without regard

20  to the rest of the text of the Order or a fair reading of the cases.  This is improper

21  (although it does demonstrate exactly why this Order *drafted by Mattel* requires

22  clarification).

23         Mattel argues that the word "procure" in paragraph 4 of the Order means "to

24  get possession of; obtain by particular care and effort."  Opp. at 20 n. 119.  This

25  definition, according to Mattel signifies that MGA must sweep the shelves of

26  products.  But the Copyright Recall Order requires MGA to "procure *the return*" of

27  enjoined products.  Reading it to mean that MGA must "*get possession* of the

28  return" renders this requirement utterly nonsensical.  Mattel's attempt to define

1   "withdraw" fares no better.  Opp. at 20 n. 119.  The Copyright Recall Order applies

2   equally to products sitting in inventory as well as on shelves.  So, use of the word

3   "withdraw" is not somehow a signal that "sweeping the shelves" is what the Court

4   had in mind.  It means that MGA must "withdraw" enjoined products from

5   distribution.  And none of these definitions takes into account the second sentence

6   of paragraph 4, or any of paragraph 6, which specify in detail the means by which

7   MGA is required to effectuate the recall, and as spelled out in the Motion, are

8   inconsistent with the proffered interpretation.

9        Mattel offers three arguments in addition to its flawed definitions.  First,

10  Mattel claims that it is MGA's own fault that it finds itself in this position because

11  it continued to sell product that was infringing.  Second, Mattel claims that MGA's

12  real motive is to re-write the Copyright Recall Order to avoid the consequences of

13  its non-compliance.  Opp. at 22.  Third, Mattel claims that it is "commonplace" for

14  courts to require that a party "take an active role in removing its infringing

15  products."  Opp. at 21.  These arguments do not demonstrate that the order ever

16  meant, or should now be interpreted to mean, that MGA is obligated to "sweep the

17  shelves."

18       Indeed, it takes remarkable chutzpah for Mattel to make the argument that

19  this is all MGA's fault for continuing to market products, considering that it has

20  accused MGA of simultaneously being a willful infringer and of deliberate efforts

21  to destroy the Bratz brand by killing it before turning it over to Mattel.  *Compare*

22  Dkt. # 5783 (Motion for Clarification re Profits Order) *with* Dkt. # 6311 (Proposed

23  Fourth Amended Answer and Counterclaims ███████████████████

24  ███████████).  This damned-if-you-do, damned-if-you-don't approach

25  signifies Mattel's entire strategy with respect to the injunctive orders.  The fact that

26  MGA continued to sell product as authorized by the Court and as found by the

27  Monitor to be necessary to support the Bratz brand has nothing to do with proper

28  interpretation of the words in the Order—which was drafted by Mattel.  Mattel's

1   hypocrisy is no reason to construe the order in a fashion inconsistent with the text

2   thereof nor inconsistent with background law.

3          It takes similar gall to suggest that MGA is seeking to "avoid the

4   consequences of its non-compliance by rewriting the Injunction Order."  Opp. at 22.

5   As already noted, MGA has a ████████████████████████████████████

6   Moreover, as Mattel suggests, courts require that a party take "an active role" in a

7   recall, and that is exactly what MGA's ███████████████████████████████

8   █████████████████████████████████████████████████████████████████

9   ████

10         Mattel's argument that MGA is seeking to avoid the consequences of non-

11  compliance is revealed to be all the more shameless by the fact that not a single

12  case it cites supports its reading of the Copyright Recall Order.  Not even one.

13  *Cherry River Music Co. v. Simitar Enter., Inc.*, cited by Mattel, did *not* require the

14  infringing party to "sweep the shelves."  Opp. at 21.  Rather, it required the

15  defendant to "refund the wholesale price of units returned pursuant to the recall

16  order and pay shipping expenses."  38 F. Supp. 2d 310, 323 (S.D.N.Y. 1999).

17  Mattel also misleadingly cites *Merit Diamond Corp. v. Frederick Goldman, Inc.*,

18  376 F.Supp. 2d 517 (S.D.N.Y. 2005), for the proposition that the infringing

19  products were ordered to be "'*completely removed from store shelves.*'"  Opp. at 21

20  n. 123 (emphasis original).  But that requirement was imposed upon the named

21  defendants Kohl's and BJ's stores, *retailers* who were required to remove products

22  from their *own* shelves.  The *manufacturer* of the recalled products was required

23  "accomplish a recall by contacting wholesale customers other than Kohl's and BJ's

24  who have purchased the pendants and offering to pay the cost of returns."  *Id.* at

25  527.  Mattel points to *no* cases requiring a manufacturer defendant to "sweep the

26  shelves" because such cases are not only far from "commonplace," they have not

27  been found.[4]

28  ────────────────────
    [4] Mattel cites to four additional cases in its Opp. at 21 n. 122.  These cases also do

                                        -14-

1    Finally, as reflected in MGA's Motion, there are legal reasons why the

2    Copyright Recall Order cannot be read to impose a "sweeping of the shelves"

3    requirement, including due process concerns.  Mtn. at 20-21 (discussing *Societe*

4    *Civile Succession Richard Guino v. Int'l Found. for Anticancer Drug Discovery*,

5    460 F. Supp. 2d 1105 (D. Ariz. 2006)).  Mattel ignores this point entirely.

6    In short, neither the dictionary, the Copyright Recall Order, nor case law

7    supports Mattel's view that MGA must physically remove Bratz products from the

8    shelf.  They all establish the contrary.

9    **B.    The Copyright Recall Order Cannot Apply Outside of the United**

10   **States.**

11   With regard to extraterritoriality, Mattel argues that the "Injunction Order

12   clearly applies to infringing products wherever they are located."  Opp. at 22.

13   Mattel also asserts that both the District Court and the Ninth Circuit has rejected the

14   extraterritorial argument now made.  Opp. at 22-23.  Neither is true.  The Injunction

15   Order does not use the words "worldwide" or "extraterritorial," in stark contrast to

16   the Constructive Trust Order, a point wholly ignored by Mattel.  *See* Mot. at 23.

17   Nor has the District Court nor the Ninth Circuit ever passed on this particular issue.

18   To the extent they ruled on the propriety of the injunction,[5] they did not address

19   whether the Copyright Recall Order required an international recall.  No one

20   imagined that Mattel would insist that it be interpreted contrary to prevailing law.

21   Mattel raises three other arguments on extraterritoriality.  First, it claims that

22   a defendant can be held to answer for copyright infringement overseas.  Second, it

23   argues that this Court has jurisdiction over MGA HK.  Third, it argues that the

24   Copyright Injunction Order is based on state law claims as well.  Mattel sums up

25   not impose a requirement that a party must physically remove product from the
shelf.
26   [5] In fact, the Ninth Circuit did not actually rule on the injunction itself at all.  The
Ninth Circuit denied MGA a stay pending appeal based on its conclusion that MGA
27   failed to meet "the prevailing standard to show substantial likelihood of ultimate
success on the merits."  Watson Decl. Ex. 10.  Hence, this motion is brought on the
28   assumption that MGA has lost the on the merits.

1  these arguments by claiming that it is "immaterial" that the Copyright Injunction

2  Order requires "defendants to take action both within and outside of the United

3  States." Opp. at 23. But, it is plainly material whether a copyright *injunction* has

4  extraterritorial application—material enough for the Ninth Circuit to have

5  addressed it *en banc* and for a District Court within this Circuit to note that it had

6  never happened. *Subafilms, Ltd. v. MGM-Pathe Comm'cs Co.*, 24 F.3d 1088, 1095

7  (9th Cir. 1994) (en banc); *CyberMedia v. Symantec Corp.*, 19 F. Supp. 2d 1070,

8  1079 (N.D. Cal. 1998). Mattel does not contend otherwise. In fact, it does not even

9  mention *Subafilms*.

10      Instead, Mattel changes the subject, claiming that a defendant can be held to

11  answer for overseas infringement. But this proposition has nothing to do with the

12  scope of an injunction, a point made by *CyberMedia*, which Mattel cites in support

13  of this argument. Opp. at 23. In *CyberMedia*, the court ruminated that there might

14  be a cause of action "to recover *damages*" for extraterritorial infringement, but it

15  concluded that it could not locate a legal basis for *enjoining* extraterritorial

16  infringement. *Id.* at 1079 (emphasis in original). *Armstrong v. Virgin Records,*

17  *Ltd.*, 91 F. Supp. 2d 628 (S.D.N.Y 2000), also cited by Mattel, contemplates the

18  various scenarios under which an infringement of a U.S. copyright outside of the

19  U.S. might give rise to a cause of action for copyright infringement under the

20  Copyright Act. But it says nothing about recalls.

21      As for having personal jurisdiction over MGA HK, this has not been disputed

22  and MGA HK has been held to answer for any copyright infringement in which it

23  engaged. Unless or until the Copyright Injunction is overturned, it will abide by the

24  terms of that injunction, and it will deliver the means of manufacture as required by

25  paragraph 3 of the Order—

26                          That MGA HK will comply with an impound order affecting

27  only its private interests, in light of its desire to do the right thing, the potential

28  damages remedies, its corporate affiliation to MGA Entertainment and its status in

1  the suit, tells us absolutely nothing about the propriety of attempting to force

2  worldwide distributors and retailers unaffiliated with MGA who are not before this

3  Court to comply with its Order, when infringement has never been adjudicated

4  under their laws.

5      Finally, Mattel's assertion that the Copyright Injunction was issued under

6  state law as well as the Copyright Act is preposterous.  Mattel's motion that

7  resulted in the Copyright Infringement Order sought the injunction under the

8  Copyright Act.  Dkt. # 4306 (Motion for Permanent Injunction) at 2 (noting that

9  motion is brought pursuant to 17 U.S.C. §§ 502(a), 503(a)).  In fact, its notice of

10  motion and the Copyright Injunction mirror one another.  *Id.*  The District Court

11  ruled that it was issuing the Copyright Injunction pursuant to docket number 4306,

12  Dkt. # 4439 (Omnibus Order) at 8, and cited 17 U.S.C. § 503(a) as authority for the

13  injunction.  *Id.* at 14.  Mattel obtained a completely separate injunction, the

14  Constructive Trust Order, for its state law claims—and that order contains no recall

15  provision.  Dkt. # 4441.  And finally, even were this all not so, Mattel does not cite

16  a single case suggesting that an injunction issued pursuant to state law can require a

17  extraterritorial recall.[6]

18      In short, these arguments are meritless.

19  **C.    The Requested Modifications To The Time Periods Make Sense In**
20      **Light Of The Changed Circumstances.**

21      Finally, MGA demonstrated in the Motions that certain adjustments should

---

[6] Moreover, such an application of state law runs afoul of a variety of legal
principles.  First, the state's "regulatory power is necessarily limited to activities
carried out within the territorial limits of such state." *Conderback, Inc. v. Standard
Oil Co.*, 48 Cal. Rptr. 901, 910 (Cal. App. 1966).  Second, Mattel's suggested result
would frustrate Congress' intent that copyright injunctions *not* have extraterritorial
reach due to issues of national sovereignty and comity.  *See Int'l Paper Co. v.
Ouellette*, 479 U.S. 481, 492-96 (1987) (despite savings clause in federal statute
that allowed for state law claims, such claims were restricted to those that did not
frustrate Congressional intent); Mot. at 22.  Finally, Mattel's approach raises
Commerce Clause issues because the state law injunction would have the effect of
regulating interstate and foreign commerce without specific Congressional
authorization.  *See Pacific Merchant Shipping Ass'n v. Voss*, 48 Cal. Rptr. 2d 582,
587-89 (Cal. 1995).

be made to the timing requirements of the Copyright Recall Order in light of the change in circumstances since the order was first issued and legal principles against a punitive double recovery.  Mattel's responses fail to appreciate in any respect the burden to MGA of the recall, obviously because Mattel does not care about unduly burdening its competitor, which is exactly why the Court's intervention is needed.

For example, Mattel asserts that it would not be "especially burdensome" to send a form letter to pre-July 2008 customers.  Mattel offers no evidence for this *ipse dixit* in contrast to the real evidence of burden offered by MGA.  And, Mattel completely ignores that under paragraphs 4 and 6 of the Order, MGA will have to provide *refunds* for product returned in response to such notices, even though it has already accounted for such profits to Mattel and Mattel has already been awarded its share of MGA's economic recovery for that time period.  Mattel argues that the recall is "not a 'recovery,'" and that "it is designed to avoid still further harm to Mattel."  Opp. at 24.  But the question is "what further harm?"  Mattel received an award for infringement.  *See DSC Commc'ns Corp. v. Next Level Commc'ns*, 107 F.3d 322, 328 (5th Cir. 1997) (affirming denial of "the drastic solution of a permanent injunction" when damages awarded compensated plaintiff for the injury suffered).  And though MGA has squarely presented in this Motion the question of Mattel's future injury in the event that there is no recall, Mattel responded with no evidence at all.

The same is true of Mattel's argument that sending out letters to pre-July 2008 customers is "critical . . . to an effective recall"—Mattel simply offers no evidence to support this assertion.  Opp. at 24.  And, as for notice to purchasers generally, there is no obligation to notify them absent a showing that they acted in concert or participated in the infringement.  *See Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*, 25 F. Supp. 2d 372, 376 (S.D.N.Y. 1998).  There has been no such showing made, and there cannot be such a showing for the period at issue prior to the time of the verdicts.

1        Finally, Mattel does not really provide a substantive reason for denying

2  MGA's other requested modifications to the Copyright Recall Order, except to say

3  that this Court should not grant them because they "def[y] logic." Opp. at 24.

4  Mattel does not claim that it will be injured or prejudiced if MGA has additional

5  time to compile reports and declarations and deliver dolls to Mattel. *See* [Proposed]

6  Order ¶ 38(8, 9). Nor can Mattel really contest the reasonableness of removing

7  terms that require "immediate" compliance with recall provisions in light of the

8  Court's subsequent orders that have modified the Copyright Recall Order

9  provisions so that they are not immediate. *Id.* (7, 8).

10        The modifications sought are intended to reflect that the deadlines don't

11  continue to make sense and frankly are unnecessary to ensure MGA's full

12  compliance. Mattel's failure to assert any harm should resolve the matter.

**III.    ONLY MATTEL BELIEVES THAT THE MONITOR IS A SPECIAL MASTER.**

15        In the Motion to Modify and/or Limit the Monitor's Authority, MGA

16  demonstrated that the Monitor has not been appointed a Special Master with

17  adjudicative powers, and ███████████████████████ Mot. at 24-

18  25. Mattel's response to this Motion is slightly befuddling. Mattel argues that it "is

19  clear" that the May 21 Order appointed the Monitor. Opp. at 25. True. But it is

20  equally clear that the Monitor was not appointed as a Special Master pursuant to

21  paragraphs 10-13 of the Copyright Injunction, and it is also clear that ███████

22  ██████████████████████ Hurst Decl. Ex. 62 at 511; Ex. 59 at

23  505; Russell Decl. ¶ 4. The actual scope of the Monitor's authority is therefore a

24  complete mystery. Indeed, the Monitor ████████████████████

25  ████████████████████ Watson Decl. Ex. 32 at 13.

26        To obtain actual clarity from these confusing circumstances, MGA requests

27  two things. First, MGA requests an order striking paragraphs 10-13 of the

28  Copyright Injunction to make clear that it was not Court's intention to appoint the

1  Monitor as a Special Master pursuant to that Order.  Second, MGA requests an

2  order clarifying that the Monitor cannot take on the mantle of a position—judicial

3  officer—that even he does not believe he occupies.

### CONCLUSION

5    For all of the foregoing reasons, the Court should grant the requested relief.

6  Dated: November 2, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP

8    By: _____
9                    Annette L. Hurst
                Attorneys for MGA Defendants