QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                 Plaintiff,<br><br>         vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>                 Defendant.<br><br>AND CONSOLIDATED ACTIONS<br><br><br><br>         **[PUBLIC REDACTED]** | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]**<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION AND/OR *IN CAMERA* REVIEW OF NON-PRIVILEGED COMMUNICATIONS OF UNSUPERVISED PARALEGALS IMPROPERLY WITHHELD ON MGA'S PRIVILEGE LOGS<br><br>[Declaration of B. Dylan Proctor and Appendix of Privilege Log Entries Submitted Concurrently]<br><br>Hearing Date:        TBD<br>Time:                    TBD<br>Place:                   Arent Fox LLP<br><br>**Phase 2:**<br>Discovery Cut-off:        June 1, 2010<br>Pre-trial Conference:     TBD<br>Trial Date:                   TBD |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a hearing date to be set by Discovery Master Robert C. O'Brien, Mattel, Inc. ("Mattel") will and hereby does move the Court, pursuant to <u>Federal Rules of Civil Procedure</u> 26 and 37, for an order compelling MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") to produce to Mattel specified documents and communications improperly withheld on MGA's and Larian's privilege logs[1] under a claim of privilege, or in the alternative, to order these documents submitted for *in camera* review and, if appropriate based on such review, produced to Mattel.

This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 26 and 37 on the grounds that MGA and Larian are improperly withholding non-privileged documents and communications that are relevant to Mattel's claims and defenses, and that MGA and Larian have failed to establish the privileges claimed.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Appendix of MGA Privilege Log Entries, the concurrently filed Declaration of B. Dylan Proctor, the records and files of this Court, and all other matters of which the Court may take judicial notice.

---

[1]   The concurrently submitted Appendix A lists each privilege log entry at issue in this motion, including all the relevant information about such entries provided in the corresponding revised privilege logs produced by MGA and Larian. Excerpts from those privilege logs are attached to the concurrently filed Declaration of B. Dylan Proctor ("Proctor Decl."). <u>See</u> MGA's Supplemental Privilege Log – August 14, 2007, revised March 20, 2008 and April 17, 2009 ("Rev. Aug. Log"), Proctor Decl., Ex. 1; MGA's Supplemental Privilege Log – September 5, 2007, revised March 20, 2008 and May 5, 2009 ("Rev. Sept. Log"), Proctor Decl., Ex. 2; MGA's Privilege Log for MGA's October 17, and October 19, 2007 Document Production, dated November 16, 2008 ("Oct. Log"), Proctor Decl., Ex. 3; MGA's Privilege Log – January 23, 2008, revised January 25, 2008 and April 9, 2009 ("Rev. Jan. 23 Log"), Proctor Decl., Ex. 4; Isaac Larian's Privilege Log – January 30, 2008, revised April 9, 2009 ("Rev. Jan. 30 Log"), Proctor Decl., Ex. 5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Statement of Compliance**

On October 9, 2009, Mattel requested a meet and confer with MGA regarding the issues set forth in this Motion.   Thereafter, MGA refused to substantively engage Mattel on these issues.


DATED:  November 2, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _B. Dylan Proctor /2DK_
     B. Dylan Proctor
     Attorneys for Mattel, Inc.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT ............................................................................................. 5

I.     MGA BEARS THE BURDEN OF SUBSTANTIATING ITS CLAIMS OF PRIVILEGE AS TO ALL WITHHELD COMMUNICATIONS .............. 5

II.    AN UNSUPERVISED PARALEGAL'S LEGAL ADVICE IS NOT SHIELDED BY THE ATTORNEY-CLIENT PRIVILEGE ........................... 6

III.  MGA'S UNSUPERVISED PARALEGAL COMMUNICATIONS ARE NOT SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE ............ 9

IV.  MGA'S SUBJECTIVE BELIEFS ARE IRRELEVANT ............................... 13

CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

B.F.G. of Ill., Inc. v. Ameritech Corp.,
  2001 WL 1414468 (N.D. Ill. Nov. 13, 2001) ............................................... 15

Blankenship v. Hearst Corp.,
  519 F.2d 418 (9th Cir. 1975) ........................................................................ 5

Bryant v. Mattel, Inc.,
  2007 WL 5430887 (C.D. Cal. Jun. 20, 2007) .............................................. 5

Byrnes v. Empire Blue Cross Blue Shield,
  1999 WL 1006312 (S.D.N.Y. Nov. 4, 1999) ............................................... 8

Coleman v. Schwarzenegger,
  2008 WL 2732182 (E.D. Cal. Jul. 8, 2008) ................................................. 5

Dabney v. Inv. Corp. of Am.,
  82 F.R.D. 464 (E.D. Penn. 1979) ............................................................ 8, 14

Diversified Indus., Inc. v. Meredith,
  572 F.2d 596 (8th Cir. 1977) ........................................................................ 8

F.T.C. v. TRW, Inc.,
  479 F. Supp. 160 (D.D.C. 1979) .................................................................. 6

Fisher v. U.S.,
  425 U.S. 391 (1976) ...................................................................................... 8

In re Grand Jury Subpoena Duces Tecum,
  112 F.3d 910 (9th Cir. 1997) ................................................................. 13, 14

HPD Laboratories, Inc. v. Clorox Co.,
  202 F.R.D. 410 (D.N.J. 2001) ..................................................... 5, 6, 7, 8, 9, 13

In re Honeywell Int'l Inc. Sec. Litig.,
  230 F.R.D. 293 (S.D.N.Y. 2003) ............................................................... 12

Hsieh v. PMC-Sierra, Inc.,
  2002 WL 31957996 (O.C.A.H.O. Dec. 24, 2002) ...................................... 7

John Labatt Ltd. v. Molson Breweries,
  898 F. Supp. 471 (E.D. Mich. 1995) ........................................................... 8

Mancini v. Ins. Corp.,
  2009 WL 1765295 (S.D. Cal. June 18, 2009) ............................................. 5

00505.07975/3182759.1

*Natural Resources Defense Council v. Gutierrez,*
  2008 WL 2468494 (N.D. Cal. Jun. 17, 2008) ........................................ 5

*Swindler & Berlin v. U.S.,*
  524 U.S. 399 (1998) .............................................................................. 8

*United States v. Kovel,*
  296 F.2d 918 (2nd Cir. 1961) ............................................................... 6

*United States v. Martin,*
  278 F.3d 988 (9th Cir. 2002) ............................................................... 8

*United States v. Planche,*
  913 F.2d 1375 (9th Cir. 1990) ............................................................. 5

*Upjohn Co. v. U.S.,*
  449 U.S. 383 (1981)) (emphasis added ................................................ 8

*Von Bulow v. Von Bulow,*
  811 F.2d 136 (2nd Cir. 1987) ............................................................... 5

*Weil v. Inv./Indicators, Research & Mgmt., Inc.,*
  647 F.2d 18 (9th Cir. 1981) ................................................................. 8

*Williams v. Sprint/United Mgmt. Co.,*
  2006 WL 266599 (D. Kan. Feb. 1, 2006)............................................. 5

## **Statutes**

Cal. Bus. & Prof. Code § 6450(a)............................................................ 6

Cal. Bus. & Prof. Code § 6450(b)(1)....................................................... 6

## **Miscellaneous**

NALA Code of Ethics and Professional Responsibility, Canon 3(b) ........................ 6

Rules of Evidence for United States Courts and Magistrates,
  56 F.R.D. 183 (1973)........................................................................... 13

## Preliminary Statement

Mattel has explained the history of MGA's privilege logs previously. That history shows MGA's systematic use of its logs to conceal non-privileged evidence, including the critical Larian-O'Connor email the Court found was concealed prior to the Phase 1 trial. This motion presents yet another instance of MGA's concealment, which Mattel only recently discovered.

In particular, Mattel learned only recently, when MGA clarified this in response to a separate meet and confer, that MGA has withheld hundreds of communications involving in-house MGA paralegals and businesspeople—but no lawyers. Despite several opportunities to explain these withholdings, MGA has never even argued, let alone shown, that these paralegals worked on behalf of or under the supervision of a lawyer admitted to the bar. In fact, MGA appears to have had no in-house lawyers when many of the communications were made—instead, in-house "legal" work was done by paralegals. Paralegals cannot independently dispense legal advice, and communications seeking their advice are not privileged. MGA concededly is withholding communications seeking and providing paralegals' advice. All such communications should be ordered produced.

## Background

The history of MGA's inadequate privilege logs, and MGA's concealment of evidence through those logs, is well-detailed in Mattel's prior log-related motions.[2] We will not burden the Discovery Master by repeating that background here, but respectfully incorporate it by reference.

___

[2] See, e.g., Mattel's Motion to Compel *In Camera* Review and Production of Non-Attorney or Non-Legal Communications Listed on MGA's Privilege Logs, dated March 27, 2009, Proctor Decl., at 2-8, Ex. 6; Mattel's Motion to Compel *In Camera* Review of Improperly Withheld Non-Legal Larian Communications, dated October 13, 2009 ("Motion re Larian Non-Legal Communications"), at 1-7, Proctor Decl., Ex. 7.

1    <u>MGA's Assertions That Unsupervised Paralegals May Provide</u>

2    <u>Privileged Legal Advice Come to Light</u>.  In February 2009, shortly after the Court

3    lifted the Phase 2 discovery stay, Mattel sought to engage MGA in a meet and

4    confer regarding various deficiencies in its privilege logs, including hundreds of

5    entries for unattributed handwritten notes.[3]  After more than six months of delays,

6    MGA finally provided some further detail regarding the author and recipients for

7    some of these handwritten notes, which was necessary to assess its privilege claims.[4]

8    Many of the handwritten notes, according to MGA's letter, were authored by MGA

9    paralegals.[5]

10    A paralegal's communications certainly may be privileged in

11    appropriate circumstances.  But, in describing the allegedly privileged nature of

12    these paralegal communications, MGA took the position that paralegals may

13    provide privileged legal advice even absent an attorney's involvement, instruction or

14    supervision.  For example, MGA described one 2001 entry as "a draft document"

15    that "include[d] handwritten notations by Beth Cahill providing legal analysis of

16    proposed revisions to the draft document[.]"[6]  Nowhere did MGA provide any

17    indication of an attorney's involvement—indeed, MGA's privilege log simply left

18    the "author" and "recipient" columns blank for this entry.[7]  It was only in a letter

---

20    [3]  <u>See</u> February 8, 2009 Letter from J. Corey to A. Khan, Proctor Decl., Ex. 8; July 17, 2009 Letter from B. Proctor to C. Lock ("July 17 Proctor Letter"), Proctor Decl., Ex. 9.

21    [4]  <u>See</u> August 24, 2009 Letter from C. Lock to B. Proctor ("August 24 Lock Letter"), Proctor Decl., Ex. 10.  MGA identified the authors and recipients for *some* of these handwritten notes, while for others it has, so far, refused to provide sufficient information to establish their privileged nature.  Mattel's current motion does not challenge those notes which remain unattributed and are the subject of an outstanding Mattel request to meet and confer.  <u>See</u> September 15, 2009 Letter from B. Proctor to C. Lock, Proctor Decl., Ex. 11; October 21, 2009 Letter from B. Proctor to C. Lock, Proctor Decl., Ex. 12.

25    [5]  <u>See, e.g.</u>, August 24 Lock Letter at 8, Proctor Decl., Ex. 10.

26    [6]  <u>Id.</u> at 8 (describing Entry No. 623).

    [7]  <u>See</u> Entry No. 623.1, Rev. Aug. Log at 41, Proctor Decl., Ex. 1.  MGA's privilege log simply described this unattributed document as a " ████████████████████ " <u>Id.</u>

1  that MGA first disclosed that the withheld notes were actually those of a paralegal,

2  while still providing no evidence of an attorney's involvement.

3       In light of MGA's positions, Mattel pointed out in a letter to the

4  Discovery Master addressing other issues that MGA appeared to be investing its

5  paralegals with greater legal authority than their positions afford.[8]  MGA protested

6  that Ms. Cahill's "many years of experience" led MGA to "reasonably consider[]

7  her qualified to perform legal tasks"—including tasks which it admitted were "not

8  exclusively pursuant to the supervision of inside and outside counsel."[9]  MGA also

9  suggested that *any* non-lawyer can "qualify as a lawyer for purposes of privilege" if

10  MGA "reasonably believed" they were authorized to practice law.[10]

11      <u>MGA Refuses To Meet And Confer</u>.  Given MGA's remarkable

12  assertions that unsupervised paralegals can independently provide privileged legal

13  advice, Mattel promptly sought clarification with regard to the hundreds of paralegal

14  communications on MGA's privilege logs.  On October 9, 2009, Mattel requested a

15  meet and confer to discuss the status of MGA's withheld paralegal

16  communications.[11]

17       MGA refused to engage in any discussion of the issues—even though

18  MGA had, just days earlier, complained to the Discovery Master that Mattel should

19  engage MGA in the meet and confer process on this very issue:

20      . . . Mattel also questioned the withholding of documents related to

21      Beth Cahill because she was listed as a "paralegal."  Again, a letter is a

22      procedurally improper vehicle to overrule a claim of privilege.  If

23

24  _____

25  [8]  <u>See</u> September 15, 2009 Letter from B. Proctor to R. O'Brien, at 1-2, Proctor Decl., Ex. 13.

26  [9]  September 28, 2009 Letter from A. Hurst to R. O'Brien ("September 28 Hurst Letter"), at 3, Proctor Decl., Ex. 14.

27  [10]  <u>Id.</u>

28  [11]  <u>See</u> October 9, 2009 Letter from B. Proctor to A. Hurst, Proctor Decl., Ex. 15.

Mattel wishes to file a motion to compel, it should go through the required steps of identifying the log entries, explaining its concerns, and allowing MGA to respond.  Then, if necessary, it should file a noticed motion.[12]

As its excuses for not even meeting and conferring, MGA first argued that Mattel's request was moot because Mattel had filed an *unrelated* motion to compel regarding Mr. Larian's improper channeling of communications through legal personnel.[13]  When Mattel pointed out that MGA was conflating distinct motions and issues,[14] as Mattel's prior motion itself made clear,[15] MGA switched gears and argued that some unidentified "subset" of these entries identified by Mattel had already been reviewed for "every conceivable issue" in connection with MGA's prior reviews.[16]  That excuse also fails: out of the approximately 430 entries identified by Mattel, less than two dozen had been raised previously because they contained unattributed handwritten notes (a different issue altogether).[17]  That MGA may have reviewed the underlying document or identified the author or recipient of the unattributed handwritten notes says nothing about whether those documents or notes are properly withheld.  And nothing excuses MGA's refusal to meet and

---

[12]  September 28 Hurst Letter at 2, Proctor Decl., Ex. 14.

[13]  October 16, 2009 Letter from C. Lock to B. Proctor, Proctor Decl., Ex. 16; see Motion re Larian Non-Legal Communications at 1, Proctor Decl., Ex. 7.

[14]  See October 19, 2009 Letter from B. Proctor to C. Lock, Proctor Decl., Ex. 17. Mattel's October 13 motion challenged Larian's improper channeling of non-legal communications through legal personnel and identified approximately 1300 entries that warrant *in camera* review.  This motion, on the other hand, questions whether communications with MGA's unsupervised paralegals—whether by Larian or any other MGA businessperson—are or could be privileged.

[15]  Motion re Non-Legal Larian Comms at 13 n.33, Proctor Decl., Ex. 7 (noting that motion challenged certain "Larian-paralegal communications," but that "███████████████████████████████████████████████████████.").

[16]  October 20, 2009 Letter from C. Lock to B. Proctor, Proctor Decl., Ex. 18.

[17]  See July 17 Proctor Letter at 2-4, Proctor Decl., Ex. 9.

1   confer regarding the bulk of the entries that indisputably have never been raised by
2   Mattel in any form or for any purpose.

3   **Argument**

4   I.    **MGA BEARS THE BURDEN OF SUBSTANTIATING ITS CLAIMS**
5         **OF PRIVILEGE AS TO ALL WITHHELD COMMUNICATIONS**

6         As the party seeking to withhold responsive documents based on the
7   attorney-client privilege, MGA bears the "heavy burden" of showing that the
8   asserted privilege applies. <u>Mancini v. Ins. Corp.</u>, 2009 WL 1765295 at *1 (S.D. Cal.
9   June 18, 2009) (quoting <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir.
10  1975)); <u>see also</u> <u>Bryant v. Mattel, Inc.</u>, 2007 WL 5430887, at *2 (C.D. Cal. Jun. 20,
11  2007) (noting that the burden is on withholding party to "substantiate the claim of
12  privilege under Federal Rule of Civil Procedure 26(b)(5)" and ordering the
13  production of documents from privilege log); <u>United States v. Planche</u>, 913 F.2d
14  1375, 1379 (9th Cir. 1990) (burden is on the party asserting the attorney-client
15  privilege to prove that the privilege applies).

16        To substantiate this burden, MGA must make a "clear showing" that
17  the withheld communications are privileged. <u>See</u> <u>Williams v. Sprint/United Mgmt.</u>
18  <u>Co.</u>, 2006 WL 266599, at *4 (D. Kan. Feb. 1, 2006); <u>see also</u> <u>Natural Resources</u>
19  <u>Defense Council v. Gutierrez</u>, 2008 WL 2468494, at *3 (N.D. Cal. Jun. 17, 2008)
20  ("Once the privilege is invoked, the party asserting it must make a prima facie
21  showing that the privilege protects the documents in question.") (citations omitted).
22  Doing so requires more than simply listing items on a privilege log and declaring
23  them privileged—rather MGA must "provide enough information to permit the
24  court to review the applicability of the privilege to the documents at issue."
25  <u>Coleman v. Schwarzenegger</u>, 2008 WL 2732182, at *3 (E.D. Cal. Jul. 8, 2008).

26        Simply citing to an individual's status as a "paralegal," as MGA has
27  done here, does not satisfy that burden because a paralegal's "statements are not
28  inherently privileged merely because she is a legal employee." <u>HPD Laboratories,</u>

00505.07975/3182759.1

1 | Inc. v. Clorox Co., 202 F.R.D. 410, 417 (D.N.J. 2001) (ordering paralegal's
2 | communications disclosed); see also Von Bulow v. Von Bulow, 811 F.2d 136, 141
3 | (2nd Cir. 1987) (holding that "blanket assertions" of paralegal status are insufficient
4 | to sustain a claim of attorney-client privilege).  Rather, because the "privilege is not
5 | susceptible to categorical rules of application . . . courts must carefully scrutinize the
6 | particular circumstances involved each time a litigant invokes the privilege." HPD,
7 | 202 F.R.D. at 417.

8 | **II.     AN UNSUPERVISED PARALEGAL'S LEGAL ADVICE IS NOT**
9 | **SHIELDED BY THE ATTORNEY-CLIENT PRIVILEGE**

10 | By definition, a "paralegal" is someone who works "under the direction
11 | and supervision of an active member of the State Bar of California." Cal. Bus. &
12 | Prof. Code § 6450(a).  Like other agents of an attorney, a paralegal's participation in
13 | an otherwise privileged communication between attorney and client does not
14 | automatically destroy the privilege. United States v. Kovel, 296 F.2d 918, 921 (2nd
15 | Cir. 1961).[18]   However, as paralegals are themselves expressly prohibited from
16 | "provid[ing] legal advice," Cal. Bus. & Prof. Code § 6450(b)(1), and "must not . . .
17 | give legal opinions or advice,"[19] communications that request or render a paralegal's
18 | advice (rather than an attorney's) on legal matters are not shielded by the attorney-
19 | client privilege.

---

[18]   Courts have allowed a limited "exception to the rule that the communication must be directly between client and attorney," F.T.C. v. TRW, Inc., 479 F. Supp 160, 164 n.7 (D.D.C. 1979).  This exception extends the privilege to cover communications involving "persons who act as the attorney's agents." United State v. Kovel, 296 F.2d 918, 921 (2nd Cir. 1961) (citation omitted).  However, in keeping with the principle of narrow construction, the agent's assistance must be "necessary" for "obtaining *legal* advice *from the lawyer*."  Id. at 922 (emphasis in original).  There is no privilege for advice that is not the advice of the supervising attorney. See id.

[19]   National Association of Legal Assistants, NALA Code of Ethics and Professional Responsibility, Canon 3(b), http://nala.org/code.aspx (last visited Oct. 21, 2009), Proctor Decl., Ex. 25.

HPD Labs. v. Clorox Co., 202 F.R.D. 410 (D.N.J. 2001), is particularly instructive. At issue there were communications between various Clorox business and marketing employees an d "a longtime paralegal in Clorox's in-house legal department," who had "developed significant familiarity" with legal issues and was "routinely" consulted by Clorox employees. HPD, 202 F.R.D. at 410, 412. These communications were not business or "non-legal" communications—rather, Clorox's employees "clearly sought legal advice on a variety of issues" from the paralegal and the paralegal "expressed legal advice." HPD, 202 F.R.D. at 415, 416. Nevertheless, the communications were not privileged b ecause the legal advice sought and given was not, in fact, an attorney's legal advice:

> The disputed documents do not enjoy attorney-client protection because the statements contained in those documents were not made either *for the purpose of obtaining legal advice from an attorney* or *to assist an attorney to formulate and render legal advice to a client*. Instead, employees approached Ms. Peeff for her own legal views, which she willingly provided. Although Ms. Peeff may be a skilled advisor on marketing and regulatory matters, she is not an attorney. Accordingly, when she independently dispensed legal advice, her statements were not privileged.

HPD, 202 F.R.D. at 415 (emphasis in original). To deem such communications privileged "would stretch the privilege well beyond its established bounds" and "would be tantamount to recognizing a new privilege for independent paralegal advice." HPD., 202 F.R.D. at 417. While there was "nothing wrong with Clorox employees using Ms. Peeff as a legal resource, there is also nothing privileged about their communications to her in this instance." HPD, 202 F.R.D. at 415. The court ordered disclosure. Id.; see also Hsieh v. PMC-Sierra, Inc., 2002 WL 31957996, at *9 (O.C.A.H.O. Dec. 24, 2002) (reviewing documents *in camera* after finding privilege log inadequate and concluding, "[a] number of documents were

communications from paralegals offering their own opinion . . . which is not protected by the attorney-client privilege.").[20]

Underlying the HPD court's well-reasoned opinion is the principle, repeatedly stressed by the Ninth Circuit, that the attorney-client privilege should be "strictly construed" in accordance with its purpose because it "impedes full and free discovery of the truth." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quoting Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981)); see also Fisher v. U.S., 425 U.S. 391, 403 (1976) ("since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose."). The purpose of the attorney-client privilege is "to encourage full and frank communication *between attorneys and their clients* . . ." Swindler & Berlin v. U.S., 524 U.S. 399, 403 (1998) (citing Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981)) (emphasis added). Consequently, courts have resisted expanding the privilege beyond communications between parties who "bear the relationship of attorney and client." Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1977). Privileging a paralegal's (or any other non-lawyer's) independent communications would be unprecedented. See HPD, 202 F.R.D. at 416; see also Dabney v. Inv. Corp. of Am., 82 F.R.D. 464, 465 (E.D. Penn. 1979) ("[t]o extend the attorney-client privilege . . . would unnecessarily blur

---

[20]   A number of courts have also considered other attorneys' agents besides paralegals and likewise held that a non-attorney's legal advice is not within the scope of the attorney-client privilege. See Byrnes v. Empire Blue Cross Blue Shield, 1999 WL 1006312, at *4 (S.D.N.Y. Nov. 4. 1999) (communications between attorney's actuarial consultant and client not privileged because attorney-client privilege does not "cover communications between a non-attorney and a client that involve the conveyance of legal advice offered by the non-attorney"); John Labatt Ltd. v. Molson Breweries, 898 F. Supp. 471, 477 n.3 (E.D. Mich. 1995) (where legal agent was not acting as a conduit to and from counsel, no privilege applies; "Labatt Ltd. may use [agent] for his own legal opinions. Yet, doing so does not create an attorney-client privilege for the communications."); Dabney v. Inv. Corp. of Am., 82 F.R.D. 464, 465 (E.D. Penn. 1979) (privilege did not attach to communications with in-house legal employee who was not yet admitted to bar).

1  the dividing line between qualified and unqualified attorneys, to the . . . ultimate
2  detriment of the legal profession.").

3  **III.   MGA'S UNSUPERVISED PARALEGAL COMMUNICATIONS ARE**
4  **NOT SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE**

5  Mattel has identified approximately 430 withheld paralegal
6  communications on MGA's privilege logs.  To date, MGA has offered no evidence
7  that any of these involve an attorney's advice, involvement or supervision.

8  Many involve Beth Cahill, a paralegal at MGA from October 15, 2001,
9  to April 11, 2003.[21]  MGA claims that all of Ms. Cahill's withheld communications
10 must be privileged because "she was a paralegal" and "MGA employed at least two
11 in-house counsel who supervised Ms. Cahill's overall employment during her
12 tenure."[22]  However, simply because Ms. Cahill was a "legal employee" under "the
13 theoretical direction of an attorney" does not mean her statements are "inherently
14 privileged."  HPD, 202 F.R.D. at 417.  Rather, because the "privilege is not
15 susceptible to categorical rules of application," each withheld communication must
16 be "carefully scrutinize[d]" based on the "particular circumstances."  Id.  It was for
17 this reason that Mattel specifically identified withheld paralegal communications on
18 MGA's logs that did not appear to involve an attorney and requested that MGA
19 review its withholdings to ensure that each was made "for the purpose of obtaining
20 legal advice from an attorney or to assist an attorney to formulate and render legal
21 advice to a client."  HPD, 202 F.R.D. at 415 (emphasis removed).  MGA refused to
22 engage in such a review.[23]

23 Moreover, MGA's assertion regarding Ms. Cahill's supervision is, at
24 the very least, substantially incomplete as a factual matter:  MGA appears not to

25 _____

26 [21]  September 28 Hurst Letter, at 3, Proctor Decl., Ex. 14.
27 [22]  Id.
28 [23]  See supra at 4.

1 | have had *any* in-house lawyer on staff until Ms. Julie Mote's arrival in March
2 | 2002[24]—well after Ms. Cahill's tenure began in 2001.[25]  Yet there are approximately
3 | 130 withheld communications on the logs involving Ms. Cahill and MGA
4 | businesspeople (and no lawyers) from 2001 and early 2002, before Ms. Mote
5 | arrived.[26]

6 | And, even after Ms. Mote started in 2002, MGA had no in-house legal
7 | department until the summer of 2003 when Mr. Mitchell Kamarck joined as General
8 | Counsel.  Indeed, Mr. Kamarck testified that his initial responsibilities involved "████
9 | ████████████████████████████████████████████████████████████████████"
10 | because "████████████████████████████████████████████████████████████
11 | ████████████████████████████████████████████████"[27]  It was only
12 | after mid-2003, MGA's General Counsel testified, that MGA's employees were
13 | "████████████████████████████████████████████████████████████████████
14 | ████"[28]

15 | Prior to that time, MGA frequently went to Ms. Cahill—a non-
16 | lawyer—with legal issues.  The sheer breadth of withheld Cahill communications,
17 | of which there are hundreds, shows this.[29]  Contemporaneous documents also show

---

[24]   Victoria O'Connor testified ███████████████████████████████████
███████████████████ See O'Connor Depo. Tr at 13:14-16:3, Proctor Decl., Ex. 19.  Later, she
recalled that ██████████████████████████ See id. at 242:25-243:2 ("█████████████
███████").  ████████████████████████████████ See, e.g.,
MGA 1117092, Proctor Decl., Ex. 26 (████████████████████████████████████.")
[25]   September 28 Hurst Letter, at 3, Proctor Decl., Ex. 14.
[26]   See Appendix A.
[27]   See Deposition of Mitchell Kamarck at 23:12-22, Proctor Decl., Ex. 20 (emphasis added).
[28]   Id. at 23:24-24:1.
[29]   See Appendix A.

1  this.[30]   Likewise, the privilege log entries show this—in the withheld Cahill

2  communications, MGA's business employees "████" legal advice on various

3  topics directly from Ms. Cahill, and she purports to "████" legal advice in

4  response.   The following are typical:

5      • Oct. Log No. 1077: A January 2002 email from Isaac Larian

6        to Beth Cahill, withheld as an attorney-client communication
         and described as an "███████████████████████████████

7        ████████████████████████████████"[31]

8      • Rev. Sept. Log No. 1426: A January 2002 email from Isaac

9        Larian to Beth Cahill, withheld as an attorney-client
         communication and described as "███████████████████

10       ████████████"[32]

11     • Rev. Aug Log No. 989: A December 2001 email from Beth

12       Cahill to Victoria O'Connor, MGA's licensing director,
         withheld as an attorney-client communication and described

13       as an "██████████████████████████████████████████

14       ████████"[33]

15     • Rev. Aug. Log No. 991: A December 2001 email from Beth

16       Cahill to Isaac Larian, Paula Garcia, MGA's Bratz brand
         manager, and Abe Mirza, MGA's COO, withheld as an

17       attorney-client communication and described as an "████████

18       ████████████"[34]

19

20  In each of these communications, legal advice is requested from or is rendered by a

21  paralegal.  These documents may not be withheld.

22  ───────────────────────

23  [30]  For example, in an October 2001 email about trademark issues, Larian noted, "████
    ████████████████████████████████████████████████████████"  See MGA

24  3772955-957, Proctor Decl., Ex. 21 (emphasis in original).  In a later communication in
    that same chain, Larian notes "████████████████████████████████████████████

25  ████████████████████" and instructed her to address certain licensing issues.  Id.

26  [31]  Entry No. 1077, Oct. Log at 83, Proctor Decl., Ex. 3.
    [32]  Entry No. 1426, Rev. Sept. Log at 83, Proctor Decl., Ex. 2.

27  [33]  Entry No. 989, Rev. Aug. Log at 89, Proctor Decl., Ex. 1.
    [34]  Entry No. 991, Rev. Aug. Log at 89, Proctor Decl., Ex. 1.

28

Nor can it simply be presumed that, for example, a communication which MGA's log itself plainly describes as a request *to Ms. Cahill* for legal advice was, in reality, a request that she act as a conduit and relay the request to a duly licensed attorney.   Indeed, where that is the case, MGA's log describes such requests differently—for example, one communication between Victoria O'Connor and Beth Cahill is described as an "████████████████████████ ██████████████████"[35]   MGA may claim that it should not be bound by its own privilege log descriptions, but the <u>Rules</u> do not permit a party to "re-engineer [its] privilege logs to align [its] privilege assertions with [its] legal arguments" after the fact.   <u>In re Honeywell Int'l Inc. Sec. Litig.</u>, 230 F.R.D. 293, 299 (S.D.N.Y. 2003).   And the facts are inconsistent with any claim that Ms. Cahill was supervised at all times.   MGA **admits** Ms. Cahill performed "legal tasks" which were "not exclusively pursuant to the supervision of inside and outside counsel."[36] MGA admits that because "MGA's legal department was small . . . its paralegals were entrusted with a great deal of authority."[37]   MGA has touted Ms. Cahill's title of "Director of Legal Affairs," and admits she performed legal work such as drafting agreements.[38]   Indeed, even after 2003, when Mr. Kamarck came in as General Counsel, Ms. Cahill needed little supervision as "██████████████████ ████████████████████████████████████████ ██████████"[39]

─────────────────────

[35]   Entry No. 2686, Oct. Log at 214, Proctor Decl., Ex. 3 (emphasis added).
[36]   September 28 Hurst Letter at 3, Proctor Decl., Ex. 14.
[37]   <u>Id.</u>
[38]   <u>See, e.g.</u>, MGA 0830775-76, Proctor Decl., Ex. 22 (February 2002 Beth Cahill communication with licensee requesting information so she could "███████ █"); MGA 0830505, Proctor Decl., Ex. 23 (April 2002 Victoria O'Connor email noting that she would "███████████████████"); MGA 0830547-48, Proctor Decl., Ex. 24 (June 2002 Victoria O'Connor communication with licensee noting "███████████████████████████████").
[39]   <u>See</u> Kamarck Depo. Tr. at 25:13-16, Proctor Decl., Ex. 20.

1   These communications should be recognized for what they are—a

2   corporation's request for legal advice made to a paralegal acting without an in-house

3   legal department (or, really, acting as *the* in-house legal department).   There is

4   "nothing wrong with [MGA's] employees using Ms. [Cahill] as a legal resource,"

5   but "there is also nothing privileged about their communications to her in this

6   instance." HPD, 202 F.R.D. at 415.  Because "[c]ourts do not . . . safeguard advice

7   that paralegals develop and disseminate on their own," HPD, 202 F.R.D. at 416,

8   these communications must be disclosed.

9   ## IV.   MGA'S SUBJECTIVE BELIEFS ARE IRRELEVANT

10   Conceding that it has treated its paralegals as lawyers, MGA has argued

11   that its paralegals could give privileged legal advice regardless of whether they were

12   supervised by an attorney.   Indeed, according to MGA, *any* "non-lawyer could

13   qualify as a lawyer for purposes of the privilege," so long as MGA "reasonably

14   believed that the person was authorized to practice law."[40]   MGA claims its Cahill

15   communications are privileged because MGA "reasonably considered her qualified

16   to perform legal tasks" due to her "many years of experience."[41] There is no support

17   for this position.

18   MGA rests its argument on language from a *proposed* (but never

19   adopted) Federal Rule of Evidence.[42]   That proposed rule has been interpreted to

20   exclude the exact kind of argument MGA now advances.  See In re Grand Jury

21   Subpoena Duces Tecum, 112 F.3d 910, 923 (9th Cir. 1997) (discussing the proposed

22   rule and stating "we know of no authority. . . holding that a client's beliefs,

23

24

_____

25   [40]   September 28 Hurst Letter at 3, Proctor Decl., Ex. 14.

26   [41]   Id.

27   [42]   See Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 235 (1973) (setting forth the proposed rules).

28

subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one").

Courts have delimited only three "mistakes of fact" scenarios where a mistaken subjective belief may be reasonable—where "[1] the client reasonably believed that a poseur was in fact a lawyer, [2] reasonably believed that a lawyer represented the client rather than another party, or [3] reasonably believed that a conversation with a lawyer was confidential. . . ." In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997), cert. denied 512 U.S. 1105 (1997).  None of these limited exceptions is remotely applicable here.  While the first scenario applies to communications with a non-attorney, there is no suggestion that Ms. Cahill held herself out to be a licensed attorney; by contrast, the second and third scenarios are only applicable to communications with attorneys who simply are not, in fact, a particular client's attorney, which is plainly not the case here.

MGA's mistaken belief that it could seek legal advice from an unsupervised paralegal and shield those communications as privileged is a far cry from those limited scenarios.  More apposite is the scenario presented by Dabney v. Inv. Corp. of Am., 82 F.R.D. 464 (E.D. Penn. 1979), in which a corporation sought (unsuccessfully) to shield communications with an in-house employee who was a recent law school graduate but was not yet a licensed attorney nor supervised by a licensed attorney.  Although the employee was entrusted with "the duties of an attorney, was regarded and treated as an attorney, and was made privy to certain confidential information that would have been disclosed only to an attorney," no privilege could attach to such communications.  Id. at 465.  Here, like Dabney, to allow a claim of privilege based on the fact that MGA "reasonably believed" its paralegals were authorized to practice law and were therefore "entrusted with a great

1  deal of authority"[43] would "poorly serve the purpose of the privilege," which cannot

2  be established or "preserved by a bona fide mistake." <u>Id.</u> at 466, 465.

3

4                                    <u>**Conclusion**</u>

5           For the foregoing reasons, Mattel respectfully requests that the

6  Discovery Master order the unsupervised paralegal communications identified in

7  Appendix A produced to Mattel.[44]

8

9  DATED:  November 2, 2009         QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
10

11                                   By _B. Dylan Proctor /ZDK_

12                                       B. Dylan Proctor
                                         Attorneys for Mattel, Inc.
13

14

15

16

17

18

19

20

21

22  [43]   September 28 Hurst Letter at 3, Proctor Decl., Ex. 14.

23  [44]   Mattel believes that production is the appropriate remedy here because the legal
    content of the underlying communications is not at issue.  Like the communications in
24  <u>HPD</u>, these communications may well pertain to legal issues; what governs their status is
    not their factual content but the legal issue of whether a relationship giving rise to the
25  privilege existed.  However, if the Discovery Master believes that the underlying content
    will assist in this analysis, Mattel requests that these communications be submitted to the
26  Discovery Master for <em>in camera</em> review and, if appropriate based on such review, produced
    to Mattel.  If such a review reveals evidence that MGA has used a paralegal's status "to
27  apply a veneer of privilege to non-privileged business communications, the court should
    impose costs on [MGA]." <u>B.F.G. of Ill., Inc. v. Ameritech Corp.</u>, 2001 WL 1414468, at *
28  7 (N.D. Ill. Nov. 13, 2001).