MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. 2:04-CV-09049-DOC-RNBx<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br>**DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Robert C. O'Brien]**<br>DECLARATION OF ISAAC LARIAN IN SUPPORT OF:<br>MGA PARTIES' OPPOSITION TO:<br>(1) MATTEL, INC.'S MOTION TO COMPEL IN CAMERA REVIEW OF ALLEGEDLY NON-LEGAL LARIAN COMMUNICATIONS; AND<br>(2) MATTEL, INC.'S MOTION TO COMPEL PRODUCTION AND/OR IN CAMERA REVIEW OF ALLEGEDLY NON-PRIVILEGED COMMUNICATIONS OF PARALEGALS<br>MGA'S CROSS-MOTION FOR A PROTECTIVE ORDER. |

I, Isaac Larian, declare as follows:

1. I am the Chief Executive Officer for MGA Entertainment, Inc. I make this declaration in support of MGA Entertainment, Inc., MGA Entertainment HK, Ltd., MGAE De Mexico, S.R.L. De C.V., and Isaac Larian's (collectively, the "MGA Defendants") Opposition to Mattel's Motion to Compel an *In Camera* Review of Non-Legal Larian Communications. I make this declaration of my own personal knowledge and, if called as a witness unless indicated as to information and believe, I could and would testify competently to the truth of the matters set forth herein.

2. Prior to 2002, MGA did not employ any in-house counsel. Our first General Counsel was Julie Mote, who started work for MGA in March 2002. Prior to that time, MGA relied exclusively on outside counsel for legal services. We had relationships with many outside counsel for a variety of different types of matters. David Rosenbaum worked with us on transactional licensing matters. Alan Rose of Oppenheimer (now deceased) worked with us on patent prosecution and other IP matters. Lucy Arant worked with us on trademark matters. Patty Glaser handled our litigation. In working with our outside counsel, I always understood that their employees, including paralegals and secretaries, were included within the scope of the privilege.

3. MGA's first legal employee was Beth Cahill. I hired Ms. Cahill with the title Director of Legal in 2001. When I hired her, Ms. Cahill was a certified paralegal who had worked at several large companies as a paralegal and contract administrator. Ms. Cahill had 10 years of experience as a paralegal and, in her last position before we hired her, managed the legal department of Applause. Ms. Cahill's experience included working with outside counsel on a variety of matters, including intellectual property matters.

4. I hired Ms. Cahill principally because the volume of communications between outside counsel and MGA had become difficult to manage with our

- 2 -

LARIAN DECL. ISO OPPOSITION TO MTC *IN CAMERA* REVIEW OF ALLEGEDLY NON-LEGAL LARIAN COMMUNICATIONS
CV 04-9049 DOC (RNBx)

1  existing personnel. Ms. Cahill's principal duty when she was hired was to manage
2  the flow of information to and from our various outside counsel, with particular
3  responsibility for assisting me in developing a network of outside attorneys to
4  handle worldwide trademark, patent and IP protection. During her initial tenure
5  prior to the time MGA hired Ms. Mote as General Counsel, Ms. Cahill was our
6  primary point of contact for outside counsel with the responsibility for coordinating
7  our communications with them. During this time, Ms. Cahill assisted me in hiring
8  a number of lawyers to work on IP matters on a worldwide basis.

9      5. I did not believe there was any difference in how the attorney-client
10 privilege applied to my communications with outside counsel depending on
11 whether it was a paralegal employed by MGA, or one employed by their firms, who
12 was serving as the point of contact and managing the flow of information. It made
13 much more sense to me for MGA to save money by having a salaried employee
14 perform the functions needed by outside counsel in terms of collecting and
15 managing MGA's information, rather than having MGA provide all of it en masse
16 to outside counsel and letting them do the work. I always believed that my
17 communications with Ms. Cahill after she was hired were covered by the attorney-
18 client privilege, because her duties were to coordinate MGA's services from outside
19 counsel.

20     6. Once Julie Mote was hired as General Counsel, Ms. Cahill was
21 supervised by the General Counsel at MGA.

22     7. Throughout her tenure at MGA, Ms. Cahill interacted closely with
23 MGA's employees and acted as a liaison between MGA's employees and inside or
24 outside counsel. Ms. Cahill often received requests for legal advice or that legal
25 action be taken from MGA's employees. Ms. Cahill would then communicate
26 these requests for advice or action to MGA's in-house and/or outside counsel. Ms.
27 Cahill also frequently, and at the request of outside counsel, obtained information
28 that outside counsel needed to provide MGA with legal advice.

LARIAN DECL. ISO OPPOSITION TO MTC IN CAMERA REVIEW OF ALLEGEDLY NON-LEGAL LARIAN COMMUNICATIONS
CV 04-9049 DOC (RNBx)

8. I understand that the following attorneys employed by MGA are identified in connection with Mattel's Motion: Julie Mote, Mitchell Kamarck, Donna Cunningham, Daphne Gronich, David Oakes and Judy Kim. All of these attorneys were employed exclusively for the purpose of providing legal advice to MGA. None of them had business responsibilities such as business development, negotiation of business terms of contracts, public relations, government lobbying, or the other types of business duties that lawyers sometimes fulfill.

9. When Donna Cunningham was first hired, she was hired by Mel Woods (MGA's then President) with the following title: Chief Administrative Officer, General Counsel. She and Mr. Woods had worked together at Saban. Ms. Cunningham was only with the company for a short period of time—one month—as an employee. Although we initially contemplated that she would serve a broader role that included business responsibilities, because of her short tenure with the company all of her duties with MGA were legal in nature. After she resigned, she continued to serve in an exclusively legal capacity on a contract basis for MGA.

10. Over time I have communicated with MGA's in-house and outside attorneys on many subjects. Sometimes I cc:ed them on an e-mail addressed to others in the company for the purpose of letting them know I wanted their input on a matter. Sometimes I cc:ed them on an e-mail addressed to others in the company to keep them apprised of facts and circumstances that I believed did not require immediate legal advice but might warrant their future attention in a legal capacity.

11. MGA has always been a company with a small number of executives, and we have not observed formalities in our e-mail communications. When I want to disseminate information to make sure all key executives are apprised of that information, I copy everyone whom I believe needs to know the information in order to fulfill their duties. I copied in-house counsel on such communications not because I was trying to "shield" or "funnel" business communications through lawyers, but for purposes of efficiency in communicating the information people

needed in order to do their jobs. I always understood in doing so that my communications for the purposes of obtaining legal advice, or giving facts necessary to obtain legal advice, were privileged. In connection with litigation, it has been the responsibility of MGA's outside counsel to make the legal determination as to which documents were privileged.

    I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was hereby executed on November 4, 2009, at Van Nuys, California.

_____
Isaac Larian

- 5 -

LARIAN DECL. ISO OPPOSITION TO MTC *IN CAMERA* REVIEW OF ALLEGEDLY NON-LEGAL LARIAN COMMUNICATIONS
CV 04-9049 DOC (RNBx)