1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
5  San Francisco, CA  94105-2669
   Tel: (415) 773-5700/Fax: (415) 773-5759
6
   WILLIAM A. MOLINSKI (State Bar No. 145186)
7  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
9  Tel. (213) 629-2020/Fax: (213) 612-2499

10 THOMAS S. MCCONVILLE (State Bar No. 155905)
   tmcconville@orrick.com
11 ORRICK, HERRINGTON & SUTCLIFFE LLP
   4 Park Plaza, Suite 1600
12 Irvine, CA 92614-2258
   Tel: (949) 567-6700/Fax: (949) 567-6710

13 Attorneys for MGA Parties

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                  SOUTHERN DIVISION

17

18 | CARTER BRYANT, an individual, | Case No.  CV 04-09049-DOC (RNBx) |
   
   Plaintiff,

19       v.

20 MATTEL, INC., a Delaware
21 corporation,

22       Defendant.

23

24 AND CONSOLIDATED ACTIONS

25

26

27

28

Case No.  CV 04-09049-DOC (RNBx)

Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727

**[CORRECTED] NOTICE OF MOTION AND MOTION FOR TRIAL SETTING CONFERENCE AND FOR ORDER REQUIRING MATTEL TO FILE A RICO CASE STATEMENT**

Date:        November 30, 2009
Time:           8:30 a.m.
Courtroom:  9D (Hon. David O. Carter)

[Corrected Declarations of Annette Hurst and Warrington S. Parker III filed concurrently]

**[CORRECTED] NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 30, 2009 at 8:30 a.m., before the Honorable David O. Carter, United States District Court for the Central District of California, Southern Division, 411 West Fourth Street, Santa Ana, California 92701-4516, Counter-Defendants MGA Entertainment, Inc., MGA Entertainment HK Ltd., MGA de Mexico S.R.L. de C.V. and Isaac Larian (collectively "MGA Parties" or "MGA"), will, and hereby do, move pursuant to Federal Rule of Civil Procedure 16 for a trial setting conference and requiring lead counsel for the parties to meet and confer in person in advance thereof, and for a RICO Case Statement ("RCS").

Rule 16 Conference

Following the recent reassignment of this complicated case (which has no pre-trial conference or trial date set), and in light of this Court's Standing Orders regarding case management, counsel for the MGA Parties requested that lead counsel for all parties meet in person to discuss the status, management, and scheduling of Phase 2 proceedings (which concern claims in MGA's Complaint, and remaining claims in Mattel's Third Amended Answer and Counterclaim ["TAAC"]).  Counsel for the MGA Parties contemplated that the parties would discuss the topics to be covered in a Rule 26(f) conference and this Court's Standing Orders, such as status of the pleadings and parties, discovery that remains to be done, the scheduling of discovery, trial dates, the issues to be tried, and other case management issues.  Mr. Machado's counsel agreed, but counsel for Mattel refused to meet.  Since it has been years since a Rule 26(f) conference, since Mattel has amended its counterclaims several times (and filed a motion to do so *again*), since this case has been tried in phases and there is disagreement as to what should be tried in Phase 2, and since Mattel refuses to meet on this issue, the MGA Parties request that this Court hold a Rule 16 trial setting conference and order that lead

1    counsel for all parties meet in person in advance of such conference to discuss the

2    matters contemplated by the Court's Scheduling Order and any other matters that

3    would promote the efficient, speedy and just resolution of the Phase 2 proceedings.

4            RICO Case Statement

5            A RICO Case Statement ("RCS") is advisable here because Mattel's two

6    RICO claims are vast and vague, complicated and confusing, and may be the

7    subject of yet another motion to substantially amend them.  (One of the matters

8    MGA contemplated the parties would discuss at the conference of counsel that

9    Mattel refused to attend is whether it intends to proceed with that further

10   amendment or not.)  The MGA Parties have tried to address the deficiencies of

11   Mattel's RICO claims in discovery, but Mattel has refused to provide substantive

12   responses, thus precipitating time-consuming and costly discovery motions.  At the

13   same time, Mattel has used its wide-ranging RICO claims as a launching pad for

14   massive amounts of discovery aimed at non-parties who are not defendants, but

15   who did have the nerve to loan funds to Mattel's competitor, MGA.  This

16   unsatisfactory situation will be exacerbated should Mattel re-notice its motion for

17   leave to amend and be granted leave to file a *Fourth* Amended Answer and

18   Counter-claim that proposes to add more RICO counter-defendants, more un-

19   charged 'racketeers,' another RICO "enterprise" and another "conspiracy."

20           An RCS will provide notice of the factual and legal issues that must be

21   addressed at trial, help focus discovery and motions practice, and aid the parties and

22   the Court in the expeditious management and trial of this matter.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

1

**Certificate of Compliance**

2        MGA sent Mattel a letter regarding the issues set forth herein on October 9,

3    2009, and followed up with several additional e-mails explicating its position and

4    requesting that the parties meet.  Hurst Decl. Exs. A-D.  Counsel for Mr. Machado

5    agreed to meet (*id.* Ex. B & C), but Mattel refused to meet or to provide a RICO

6    Case Statement.  *Id.* Exs. B-D.

7    Dated:  November 6, 2009              ORRICK, HERRINGTON & SUTCLIFFE LLP

8

9                             By:   _____
                                            /s/ Annette L. Hurst
10                                       ANNETTE L. HURST
                                         Attorneys for MGA Parties

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

1

**TABLE OF CONTENTS**

2
                                                                                    **Page**

3    INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

4    STATEMENT OF FACTS ...................................................................... 4

5        A.    Procedural Background. .................................................. 4

6        B.    Facts Pertinent To The Phase 1 Proceedings. ...................... 5

7        C.    What Remains To Be Tried. ............................................. 6

8        D.    Mattel's RICO Claims. ................................................... 8

9              1.    The Alleged Racketeers Are Not Linked to Predicate Acts ....... 9

10             2.    The Counter-Defendants Are Not Linked to Predicate

11                   Acts ........................................................................... 11

12             3.    It Is Not Clear What Predicate Acts Are In Issue ..................... 12

13             4.    Multiple Racketeering Enterprises Are Muddled Together ..... 12

14             5.    The Racketeering Conspiracies Are Similarly Muddled ......... 13

15             6.    No RICO Injuries to Business or Property Are Alleged .......... 14

16       E.    MGA Asks Mattel To Meet To Discuss Case Management. ............. 14

17   ARGUMENT ...................................................................................... 15

18   I.   THE COURT SHOULD SET A PRE-TRIAL CONFERENCE AND

19        REQUIRE THE PARTIES TO MEET IN ADVANCE TO DISCUSS

20        THE MATTERS TO BE ADDRESSED ...................................................... 15

21   II.  THE COURT SHOULD ORDER A RICO CASE STATEMENT TO

22        MAKE MATTEL'S RICO CLAIMS INTELLIGIBLE AND

23        MANAGEABLE ...................................................................... 17

24        A.    An RCS Is A Useful Tool In The Rule 16 Arsenal .......................... 17

25        B.    A RICO Case Statement Would Facilitate Discovery, Focus Any

26              Needed Motions to Compel, And Orient The Case Properly For

27              Purposes Of Dispositive Motion Practice And Trial ......................... 18

28             1.    An RCS Would Clarify The Pleadings ..................................... 19

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

1

**TABLE OF CONTENTS**
**(continued)**

2
                                                                          **Page**
3       2.      Unfortunately, Discovery Has Not Been The Answer For

4               These Problems ........................................................................... 22

5  CONCLUSION ......................................................................................................... 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4
*Banks v. Gail,*
  2008 WL 4661705 *1 (C.D. Cal. 2008) ........................................................ 18

5

*Barsekian v. First Am. Loanstar Trustee Servs.,*
6  2009 WL 56893 *2 (C.D. Cal. 2009) ............................................................ 18

7
*Beck v. Prupis,*
  529 U.S. 494 (2000) ...................................................................................... 20
8

*Evercrete Corp. v. H-Cap Ltd.,*
9  429 F. Supp. 2d 612 (S.D.N.Y. 2006) .......................................................... 19

10
*Figueroa Ruiz v. Alegria,*
  896 F.2d 645 (1st Cir. 1990) .................................................................... 1, 18
11

*Marriott Brothers v. Gage,*
12  911 F.2d 1105 (5th Cir. 1990) ...................................................................... 18

13
*McHenry v. Renne,*
  84 F.3d 1172 (9th Cir. 1996)......................................................................... 19
14

*Neibel v. Trans World Assurance Co.,*
15  108 F.3d 1123 (9th Cir. 1997) ...................................................................... 20

16
*Northland Ins. Co. v. Shell Oil Co.,*
  930 F.Supp. 1069 (D.N.J. 1996) ................................................................... 18
17

*Odom v. Microsoft Corp.,*
18  486 F.3d 541 (9th Cir. 2007)......................................................................... 17

19
*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n,*
  298 F.3d 768 (9th Cir. 2002).......................................................................... 21
20

*Salinas v. U.S.,*
21  522 U.S. 52 (1997) ........................................................................................ 20

22
*Smith v. Jackson,*
  84 F.3d 1213 (9th Cir. 1996).......................................................................... 19
23

*Wagh v. Metris Direct, Inc.,*
24  348 F.3d 1102 (9th Cir. 2003) ...................................................................... 17

25
*Zavala v. Wal-Mart Stores, Inc.,*
  447 F. Supp. 2d 379 (D.N.J. 2006) ............................................................... 21
26

27

28

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

**STATUTES**

15 U.S.C. § 1125(a) ................................................................................ 6

15 U.S.C. § 1125(c) ................................................................................ 6

18 U.S.C. § 152(7) ................................................................................ 12

18 U.S.C. § 1961(1) .............................................................................. 12

18 U.S.C. § 1961(1)(A) ......................................................................... 12

18 U.S.C. § 1961(1)(B) ......................................................................... 12

18 U.S.C. § 1964(c) ................................................................................ 3

18 U.S.C. §1962(c) ......................................................................... passim

18 U.S.C. §1962(d) ............................................................................ 2, 6

Fed. R. Civ. P. § 16 ........................................................... 2, 16, 17, 18

Fed. R. Civ. P. § 16(a) ........................................................................... 2

Fed. R. Civ. P. § 16(a)(3) ..................................................................... 17

Fed. R. Civ. P. § 16(c)(2) ..................................................................... 15

Fed. R. Civ. P. § 26 .............................................................................. 16

Fed. R. Civ. P. § 26(f) ........................................................... 2, 14, 16, 17

**OTHER AUTHORITIES**

Cal. Bus. & Prof. Code § 14330 ............................................................ 6

Cal. Bus. & Prof. Code §17200 *et seq.* ............................................... 6

Central District of California, Local Rule 16-2 .................................... 16

District of Hawaii, Local Rule 9.1 ....................................................... 17

Eastern District of Washington, Local Rule 3.2 .................................. 17

Manual for Complex Litigation, Fourth,
    § 35.1 at 691 (Fed. Judicial Ctr. 2004) .......................................... 17

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND SUMMARY OF ARGUMENT

This case originates with Carter Bryant, a former Mattel employee, who had an idea for a doll which he shared with MGA and then was hired to create and bring to market.  On the basis of a boilerplate contract, Mattel claimed to exclusively own the idea for the name of that doll—Bratz—and the copyright in Bryant's drawings of that doll.  In Phase 1 of this bifurcated case, a jury determined that MGA Entertainment ("MGA"), MGA Entertainment HK Ltd. ("MGA HK") and Mr. Larian interfered with Bryant's contract with Mattel, aided and abetted his breach of fiduciary duty and duty of loyalty, and infringed Mattel's copyrights to the Bratz dolls.  As a result of these findings, the jury awarded Mattel damages and disgorgement of MGA profits, and the District Court issued two injunctions that are on appeal before the Ninth Circuit and set to be heard on December 9, 2009.

The Phase 2 proceedings consist of Plaintiff MGA's trade dress infringement and unfair competition claims pending since 2005, and Mattel's remaining counterclaims against MGA, MGA HK and Mr. Larian as well as counterclaims against MGA de Mexico, S.R.L. de C.V. ("MGA Mexico") and Carlos Gustavo Machado Gomez ("Machado"), neither of whom were parties in Phase 1.  MGA alleges that Mattel has engaged in acts of unfair competition against MGA in various respects, in particular that it has (a) infringed MGA's trade dress through its serial copying of MGA's products, packaging, product themes and advertising in Mattel's My Scene line of products and other Mattel products including Wee 3 Friends and Acceleracers, and (b) engaged in a wide variety of other acts of unfair competition against MGA including threatening retailers and suppliers to cease doing business with MGA, engaging in unlawful restrictive covenants and otherwise intimidating employees to stay away from MGA, obtaining confidential information regarding unreleased products through false pretenses, and wrongfully influencing and interfering with MGA's relations with industry groups and other

[Corrected] Motion for Pre-trial Conference and
RICO Case Statement
CV 04-9049 DOC

1  entities.  In response, Mattel alleges two civil RICO claims, claims for trade secret

2  misappropriation by various named and unnamed former Mattel employees,

3  MGA's claimed interference with the contract of various named and unnamed

4  former Mattel employees, breach of fiduciary duty, aiding and abetting breach of

5  fiduciary duty, breach of the duty of loyalty and aiding and abetting the same, and

6  fraudulent transfers of assets.

7        FRCP 16(a) calls for one or more pre-trial conferences to expedite the

8  disposition of an action, impose sound case management, discourage wasteful pre-

9  trial activities, and improve "the quality of the trial" through preparation.  This

10  Court's Standing Orders reflect the same concern for efficient prosecution of

11  actions and careful case management leading to a streamlined trial of issues.  Phase

12  1 of this case took two months to try to the jury.  Regarding Phase 2, Mattel's CEO

13  recently told analysts during Mattel's Q3 earnings call that "[Mattel] will invest

14  whatever it takes for however long it takes as long as somebody wants to continue

15  litigating this."  Parker Decl. Ex. N at 521.  Phase 2 of this case would greatly

16  benefit from a Rule 16 conference – now – at which the parties and the Court could

17  discuss how to achieve proper case management goals.  Mattel may not have

18  concerns about the costs of this litigation; Mattel may wish to win at all costs;

19  Mattel may wish to make litigation an end in itself.  But MGA literally and

20  figuratively cannot afford to have this matter proceed indefinitely in its current

21  chaotic fashion and conclude with a trial of indeterminate length.  The Court should

22  set a trial setting conference, and the parties should be ordered to sit down in person

23  with lead counsel in advance of that conference to talk about how the case is going

24  to be tried—and when—in order to report to the Court in advance of that

25  conference.  Part I, *infra*.

26        One of the most significant causes of case management difficulties is

27  Mattel's pair of sprawling RICO claims (conducting the affairs of racketeering

28  enterprises and conspiring to do so, in violation of 18 U.S.C. §1962(c) and (d)).

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

Lured by the prospect of enormous triple damages and attorneys' fees with which to bludgeon MGA, its much smaller competitor, Mattel has gone to great lengths to transform every counterclaim against MGA into a RICO "predicate act," 18 U.S.C. § 1964(c).

All RICO cases are difficult to try, but Mattel's RICO claims are unusually complicated and difficult to understand.  They constitute the bulk of the Third Amended Answer and Counterclaim ("TAAC"), filed in May 21, 2009, which runs 101 pages, more than 240 paragraphs, and 665 pages of exhibits.  The RICO claims involve three overlapping "enterprises," three overlapping conspiracies, and *twenty-eight* persons and entities who allegedly committed *nine* different predicate acts over *ten years*.  But the TAAC never clearly lays out who did what, on behalf of which enterprise or conspiracy, that amounted to "predicate acts" comprising a "pattern of racketeering."  Equally unhelpful, the TAAC never identifies any actual concrete financial harm to Mattel's "business or property" that was proximately caused by any racketeering.  In sum, the TAAC provides little or no limitation or other means to manage the scope of the RICO counterclaims for discovery or at trial.

MGA did not attack the deficiencies of the TAAC, or seek an RCS, when it was filed in May 2009, believing the most expedient way to dispose of the amorphous RICO claims (and not delay the trial then set for March 2010) would be to answer, conduct discovery, and file motions that would cut the bluff and bluster from Mattel's TAAC.  But it is has become evident that discovery will not fill the bill.  Mattel has refused to respond to all but one of the Phase 2 interrogatories served by the MGA Parties to explore the basis of the RICO claims.  This is despite the fact that Mattel's CEO Robert A. Eckert, on Mattel's Q3 2009 Earnings Call, claimed "[t]he facts are friendly … the evidence for phase 2 of the trial is compelling." Parker Decl. Ex. N at 521.  At the same time, Mattel's overblown RICO claims have precipitated an avalanche of discovery to non-parties, including

1   a request for eighteen depositions of non-parties all directed to just a single

2   transaction, the Wachovia debt acquisition by Omni 808.  *See* Dkt. # 6275 (Mattel's

3   Motion for Leave to Take Additional Depositions).

4       Further complicating case management is that Mattel may want to re-notice

5   its August 17, 2009 motion for leave to file a *Fourth* Amended Answer and

6   Counterclaim ("FAAC").  Judge Larson already has expressed concern over how

7   changes to the RICO claims in the current TAAC was shifting the focus of Phase 2:

8   "'[M]y understanding [was] that the gravamen of the allegation [for Phase 2] was

9   that in addition to the copyright infringement alleged in phase one, . . . that it was

10  all related to this notion of theft, of commercial theft . . . ."  But the TAAC "seems

11  to be getting us farther afield from what was the core of that second phase."  Parker

12  Decl. Ex. M at 502.

13      Whether or not Mattel is permitted to further amend its RICO counterclaims,

14  a RICO Case Statement ("RCS") is warranted, to provide clear notice of the

15  specific factual and legal issues to be tried, focus discovery and motion practice

16  (and limit their abuse and waste of resources), and aid the Court's efficient

17  management of this case for trial.  Part II, *infra*.

## STATEMENT OF FACTS

### A.     Procedural Background.

20      Mattel initiated these consolidated cases on April 27, 2004 by filing a

21  complaint in Los Angeles County Superior Court against its former employee and

22  creator of the BRATZ dolls concept, Carter Bryant.  Case No. 2:04-cv-09059 Dkt.

23  # 1 (Notice of Removal).  MGA intervened in the original suit, 09059 Dkt. # 36

24  (Order Permitting MGA to Intervene as a Party), and filed its own suit alleging

25  trade dress infringement and unfair competition concerning Bratz and several other

26  products.  2:05-cv-02727 Dkt. # 1 (Complaint).  Mattel filed counterclaims in

27  MGA's suit, which it has amended several times.  2:04-cv-09049 Dkt. # 142, 143,

28  635, 5566 (Order regarding Mattel's Motion to File Amended Complaint, Amended

1   Answer to Complaint, Second Amended Answer).  Mattel's Motion for Leave to

2   File Fourth Amended Answer and Counterclaims was filed on August 17, 2009 and

3   MGA filed its opposition on September 17, 2009, but the matter was ordered off

4   calendar by Judge Larson pending reassignment and Mattel has not re-noticed its

5   motion before this Court.  Dkt. # 6311 ( Motion for Leave to File Fourth Amended

6   Answer and Counterclaims).[1]

7          The consolidated cases were bifurcated.  Phase 1 has been tried and is the

8   subject of an appeal set for hearing on December 9, 2009.  *See* Dkt # 7050 (Notice

9   of Lodging of Ninth Circuit Briefs); Parker Decl. Ex. J (Hearing Notice).  As

10  explained more fully below, the Phase 2 proceedings consist of Plaintiff MGA's

11  trade dress infringement and unfair competition claims pending since 2005, and the

12  Mattel counterclaims not tried in Phase 1.

13          **B.     Facts Pertinent To The Phase 1 Proceedings.**

14          The Phase 1 proceedings concerned Mattel's claims that it owned Bryant's

15  work product under his Inventions Agreement, that MGA improperly interfered

16  with that contractual interest, and that MGA infringed Mattel's copyrights therein.[2]

17  The Phase 1 trial was bifurcated and lasted nearly two months.  In Phase 1A, the

18  jury found MGA liable on all the state law claims.  Dkt. # 4125 (Phase A Verdict

19  Form).  The jury found that 74 of the 78 contested Bratz drawings, and a

20  preliminary doll sculpt and the dummy doll Bryant made for the pitch, were created

21  by Bryant, alone or jointly with others, while he was employed by Mattel.  Dkt. #

22  4125; Dkt. # 6981 at 207-358 (Exhibits Corresponding to Verdict); *see id.* at 360.

23          Phase 1B concerned the extent to which the Bratz dolls infringed the Bryant

24  sketches and the resultant damages.  The jury found MGA liable for copyright

25  _____

26  [1] A more complete procedural history can be found at Dkt. #s 6375 (MGA Opp. to
    Motion to Modify Scheduling Order), 6778 (MGA Opp. to Leave to File 4AAC).

27  [2] A fuller recitation of the facts can be found in MGA's Ninth Circuit briefs lodged
28  with this Court, Dkt. # 7050, and in MGA's Motion to Vacate Recall, Dkt. # 7051.

infringement, but it concluded that the infringement was not willful.  Dkt. # 4279 (Phase B Verdict Form).  The jury awarded $10 million in damages on the copyright claims—a tiny fraction of the $1.4 billion dollar damages figure Mattel demanded.  Dkt. # 4279; Dkt. # 6981 (Motion to Vacate Recall) at 366-70, 377-79. On each of the two aiding and abetting claims and the interference claim, the jury verdict form appears to reflect an award of $30 million against Larian and MGA Entertainment on each claim for a total of $90 million in combined damages.  It also awarded $31,500 for conversion of the physical drawings.  Dkt. # 4279.

### C.    What Remains To Be Tried.

What remains to be tried are MGA's trade dress infringement and unfair competition claims pending since 2005, and the remainder of Defendant and Counterclaimant Mattel's counterclaims.  MGA's Claims are: the First (False Designation of Origin, violation of 15 U.S.C. §1125(a)); the Second (Unfair Competition in violation of 15 U.S.C. §1125(a), Unfair Competition and Unfair Business Practices in violation of Cal. Bus. & Prof. Code §17200 *et seq.* and California Common Law); the Third (Dilution in violation of 15 U.S.C. §1125(c); Cal. Bus. & Prof. Code § 14330, and California Common Law); and the Fourth (Unjust Enrichment).

Mattel's remaining Counterclaims are:  the Second (RICO, violation of 18 U.S.C. §1962(c)); the Third (RICO conspiracy, violation of §1962(d)); the Fourth (trade secret misappropriation, alleging MGA obtained information stolen by counter-defendant Machado, Mattel employees Trueba, Vargas, Brisbois, Castilla, and unspecified others, *see* ¶ 157); the Sixth (MGA's intentional interference with the contracts of Machado, Mattel employees Trueba, Vargas, Brisbois, Castilla, Cabrera, Morales, Salazar and unspecified others, *see* ¶ 173); the Seventh (Machado's breach of fiduciary duty, *see* ¶ 180); the Eighth (MGA's aiding and abetting breach of fiduciary duty by "Mattel employees," *see* ¶ 189); the Ninth (Machado's breach of duty of loyalty, *see* ¶ 193); the Tenth (MGA's aiding and

1   abetting breach of duty of loyalty by "Mattel employees," *see* ¶ 202); the Eleventh

2   (conversion, *see* ¶ 206); the Twelfth (unfair competition, *see* ¶ 215); the Thirteenth

3   (violation of the Uniform Fraudulent Transfer Act, *see* ¶ 218); and the Fourteenth

4   (declaratory relief, *see* ¶ 225).

5          Exactly what Mattel intends to submit to a jury on its remaining

6   counterclaims, however, is substantially uncertain and subject to material disputes

7   and complex difficulties of proof.  For example, Mattel recently interposed a claim

8   of trade secret misappropriation related to Bratz that is not found anywhere in the

9   Counterclaims, *see* Parker Decl. Ex. K, Supplemental Response to Interrog. # 20,

10  which is seemingly completely belied by Mattel's Phase 1 concession that "Bratz is

11  not proprietary."  *See id.* Ex. L at 500.

12         Another example concerns the copyright infringement predicate for the

13  RICO counterclaims.  The Phase 1 jury rejected Mattel's claim that MGA or

14  Larian's copyright infringement was willful (Dkt. # 4125, Jury Verdict), but Mattel

15  intends to continue pursuing criminal (specific intent) copyright infringement as a

16  RICO predicate act in Phase 2 (¶141(i)).  Dkt. # 4279 (Phase B Verdict Form).

17  That apparently amounts to retrying all or a substantial part of Phase 1, with triple

18  damages hanging in the balance.  Moreover, Mattel apparently intends to base its

19  criminal infringement theory at least in part on the MGA Parties' sales of various

20  Bratz products during the period that the injunctive orders were expressly stayed by

21  Judge Larson, and during a period when MGA was subject to Court-imposed

22  supervisory requirements by Patrick Fraioli in his capacity as Temporary Receiver

23  and later Court Monitor.  Mr. Fraioli supervised MGA's exploitation of Bratz

24  throughout most of 2009, including signing licensing product approvals that he

25  expressly found to support the Bratz brand to be conveyed to Mattel.  *See* Dkt. #

26  5783 (Mattel Motion for Clarification of Court Order).  But the Court's May 21,

27  2009 order appointing Mr. Fraioli seems to say that he enjoys complete immunity,

28  and it is not even clear whether he can be subpoenaed to testify as a witness.  *See*

1    Dkt. # 5565 at 13 (Minute Order).  Special case management problems are posed by

2    the idea of asking the Phase 2 jury to interpret the Phase 1 jury's verdict, Judge

3    Larson's orders, and the effect of Mr. Fraioli's status in order to determine whether

4    the MGA Parties 'willfully' infringed since mid-2008.

5            **D.    Mattel's RICO Claims.**

6            The copyright infringement predicate act is just the tip of the iceberg when it

7    comes to problems with the RICO Counterclaims.

8            On January 12, 2007, pursuant to Court order, Dkt. # 142 (Order Regarding

9    Mattel's Motion to file Amended Complaint), Mattel filed its Amended Answer and

10   Counterclaims ("AAC").  Dkt. #143 (Amended Answer to Complaint).  With

11   respect to RICO, this initial pleading alleged one enterprise, one conspiracy and

12   five predicate acts against six counter-defendants.  *Id.*  Mattel filed a Second

13   Amended Answer and Counter-claims ("SAAC") on July 12, 2007.  Dkt. #635

14   (Second Amended Answer Volume I), #636 (Second Amended Answer Volume II),

15   and entry after Dkt. # 640 (Proof of Service).  The SAAC added a second RICO

16   enterprise and second RICO conspiracy.

17           On April 8, 2009, Mattel filed its Motion for Leave to File Third Amended

18   Answer and Counterclaims ("TAAC").  Dkt. # 5143.  Mattel argued that the TAAC

19   would "not significantly expand the scope of the case, if at all."  Dkt. # 5143 at 16.

20   But Mattel added a third enterprise, a third conspiracy, and four new predicate acts.

21   Mattel also added claims concerning certain financial transactions—all of which

22   occurred in 2008.  They include the acquisition by Omni 808 of a debt MGA owned

23   to Wachovia Bank, ¶¶ 105-17, which Mattel claimed reflected "related-party

24   transactions structured to conceal the ultimate source of the funds."  Dkt. # 5143 at

25   5.[3]  The other challenged transactions are August 2008 shareholder loans to MGA

26   _____

27   [3] Mattel alleges that Omni 808 purchased at a "massive discount" a $313M MGA
     note held by Wachovia Bank and that counter-defendants Larian and MGA used
28   other entities (including IGWT Group, IGWT 826 Investments, Lexington
     Financial Limited, and Vision Capital, which Mattel relates to one another via

and MGA (HK), ¶ 121, and a July 2008 purchase of Bratz inventory from MGA at alleged "fire sale" prices by IGWT Group and IGWT 826.  ¶¶ 122-26.

### 1.    The Alleged Racketeers Are Not Linked to Predicate Acts.

Mattel names *28* supposed racketeers in the TAAC (individuals, business entities, and family trusts),[4] and *nine* different predicate acts, but it fails to state what each of those persons did to violate the RICO act.

Mattel begins with a sweeping claim in paragraph 141 that "each" member of the three enterprises engaged in "multiple" acts of racketeering.[5]  But the ensuing subparts of the paragraph – specifying the nine alleged predicate acts at issue – do not link the acts of racketeering to the members of the enterprises.  In fact, nowhere in the TAAC is this done.  Mattel does identify, as to each of the nine predicate acts, *some* persons who allegedly committed those offenses, ¶ 141(a)-(i), but it repeatedly tacks on the following boilerplate: "as well as *some or all* other members of the MGA, Bratz, and IGWT Criminal Enterprises," and "*certain* of the Doe

_____

alleged secured creditor relationships) to disguise the true sources of funds for (and the principals of) that acquisition.  ¶¶ 105-09.  The goal, Mattel claims, was to frustrate the jury's awards of damages to Mattel and to obtain creditor priority over Mattel's claims against MGA.  ¶114.  Mattel also names two individuals as being involved:  Neil Kadisha (Omni 808's CEO) and Leon Neman (Vision Capital's principal).  ¶¶ 108, 116, 136.  Mattel's theory has not panned out.  *See* n. 31, *infra*.

[4] For ease of reference, unless otherwise warranted, "persons" references these individuals, business entities and family trusts.

[5] The MGA Enterprise allegedly has eleven employees/associates:   MGA, MGA de Mexico, MGA (HK), Larian, Bryant, Machado, Ron Brawer, Mariana Trueba Almada, Pablo Vargas San Jose, Jorge Castilla, and Janine Brisbois.  ¶ 134.  The IGWT Enterprise allegedly has twenty employees/associates:  MGA, MGA (HK), Larian, IGWT Group, IGWT 826 Investments, Lexington Financial Limited, Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust, and The Shirin Larian Makabi Qualified Annuity Trust.  ¶ 136.  The Bratz enterprise allegedly has four employees/associates:  MGA, MGA (HK), Larian, and Bryant.  ¶ 135.

1   Counter-Defendants." (emphasis added).  Mattel compounds this ambiguity, by

2   adding boilerplate allegations that each of the 20 actors was aiding and abetting all

3   of the others – without ever stating how.  ¶ 141.

4        A closer look at the TAAC confirms this problem.  Ten of the 28 supposed

5   employees/associates of racketeering enterprises are never directly linked to a

6   single predicate act.[6]  Mattel merely claims that some of them are alter egos of

7   Larian, and some were used by him to engage in concealment and manipulation of

8   assets.  ¶¶ 17, 19.  Mattel also alleges they made shareholder loans *to* MGA and

9   MGA (HK) in 2008.  ¶ 121.  But Mattel never provides a basis for concluding there

10  was anything wrong – let alone criminal – in making *or* accepting those loans.

11       Another seven of the 28 reputed racketeers are not directly linked to any

12  predicates acts, but are charged with violating § 1962(c) anyway.[7]  ¶¶ 141, 145.

13  Those seven were allegedly involved, in the summer of 2008, in the acquisition of a

14  MGA note held by Wachovia Bank.  ¶¶ 105-17.  But the TAAC does not state the

15  elements of any predicate act and relate them to the Wachovia transaction to show

16  if – or how – the act was committed and if – or how – it injured Mattel.  Two of

17  those seven were also allegedly involved in purchasing Bratz inventory from MGA

18  at "fire sale" prices in July 2008.[8]  ¶¶ 122-26.  Again, the TAAC does not state the

19  elements of any predicate act and relate them to the "fire sale" to show if or how the

20  act was committed and if or how it injured *Mattel*.

21       Five more of the 28 "racketeers" who allegedly violated § 1962(c) are linked

22

23

24  [6] Fred Mashian, Jahangir Eli Makabi, Shirin Larian Makabi, Angela Larian, The
    Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified

25  Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Mak-
    abi Qualified Annuity Trust, The Shirin Larian Makabi Qualified Annuity Trust.

26
    [7] Omni 808, Neil Kadisha, Lexington Financial Limited, Vision Capital, Leon
27  Neman, IGWT Group, and IGWT 826 Investments.

28  [8] IGWT Group and IGWT 826 Investments.

only to claimed trade secret thefts. [9]  Trade secret theft is not even a predicate act listed in § 1961.  Mattel apparently is attempting to characterize the thefts as an episode of mail or wire fraud.  But nowhere does the TAAC plead the elements of mail/wire fraud and relate them to those persons' alleged trade secret thefts.

### 2.     The Counter-Defendants Are Not Linked to Predicate Acts.

Mattel's RICO theory against the counter-defendants is no more precise. MGA Mexico and MGA (HK) are rarely mentioned in the TAAC.  Mattel alleges no particular acts by MGA Mexico, but it is charged with committing six predicate acts.  ¶ 141(a)-(e), (i).  MGA (HK) is charged with all nine predicate acts, ¶ 141(a)-(i), but the only specific allegation against it is receipt of shareholder loans in August 2008.  ¶ 121.  There is no identification of what acts of racketeering the two entities committed, through what agents, and how they "conducted" the affairs of a RICO "enterprise" in violation of 18 U.S.C. § 1962(c).  ¶¶ 137, 138 139.

The TAAC often refers to the remaining five alleged counter-defendants (Larian, Bryant, Machado, and MGA Entertainment), but the allegations are internally inconsistent.  For example, Bryant and Machado are charged with wide-ranging mail and wire fraud schemes, the goals of which included the transfer, laundering and concealment of assets.  ¶ 141(a), (b).  But neither man is charged with those predicate acts.  *See* ¶ 141(f), (g), (h).

Mattel also alleges Machado destroyed evidence and obstructed justice.  ¶ 141(c), (d).  But Machado is not mentioned in paragraphs 103, 104 or 141(c) and (d), which describe those alleged offenses.  Similarly confusing, Mattel charges Machado with criminal copyright infringement in paragraph 141(i), based not only on the Bratz works, but also on "documents containing trade secret and confidential information" of Mattel.  Mattel alleges that Machado stole confidential trade secret

---

[9] Mariana Trueba Almada and Pablo Vargas San Jose (Mexico, March-April 2004, ¶ 44, *et seq.*); Ron Brawer (September 2004, ¶ 62, *et seq.*); Janine Brisbois (Canada, September 2005, ¶ 88, *et seq.*); and Jorge Castilla (March 2006, ¶ 77, *et seq.*)

marketing and sales documents, ¶ 49, *et seq.*, but the TAAC nowhere states an infringement theory based on those types of documents (even assuming such would be legally viable).

MGA and Larian allegedly committed all nine of the predicate acts identified by Mattel, ¶ 141(a)-(i), but the allegations against them are strewn throughout 150 paragraphs of the TAAC.

### 3.    It Is Not Clear What Predicate Acts Are In Issue.

In addition to leaving unclear who committed what predicate acts, the TAAC does not even make clear whether Mattel is limiting its RICO theory to the nine predicate acts listed in paragraph 141 (a)-(i).  Mattel repeatedly alleges the misappropriation of trade secrets, *see, e.g.*, ¶¶ 1, 4, 7, 44, 77, 88, 137, 139, 152, but trade secret theft is not a predicate act of RICO.  *See* 18 U.S.C. § 1961(1)(B).  Mattel also cites "concealment of assets" in violation of 18 U.S.C. § 152(7) as a predicate act, ¶ 141(h), but that statute is also not found within § 1961(1).  Mattel also alleges bribery of its personnel, *see, e.g., ¶¶* 1, 4, 6, which *can* be a predicate act under § 1961(1)(A), but paragraph ¶ 141(a)-(i) of the TAAC does not list bribery among the predicate acts in issue.

### 4.    Multiple Racketeering Enterprises Are Muddled Together.

The TAAC also fails to distinguish the enterprises from each other in terms of identity or conduct.[10]  For example, Mattel alleges that "some or all" of the members of the IGWT Criminal Enterprise (*see* n. 16), engaged in mail and wire fraud, travel in aid of racketeering, money laundering, monetary transactions in unlawful proceeds, concealment of assets, and copyright infringement.  ¶ 141(a), (b), (e) – (i).  But the only transactions mentioned in the TAAC which seem to

---

[10] Even in the use of terminology, Mattel is inconsistent.  Mattel alleges that the MGA Criminal Enterprise is "*made up of*" certain persons (¶ 134); that the Bratz and IGWT Criminal Enterprises have persons who are "*employed by and associated-in-fact with*" them (¶¶ 135, 136); and that all three of the enterprises had "*members*" who committed various predicate acts (¶ 141).

1   involve employees/associates of the IGWT Enterprise are:  a) the Wachovia debt

2   acquisition; b) shareholder loans to MGA and MGA (HK); and c) the Bratz

3   inventory "fire sale."  Mattel provides no basis to conclude those transactions

4   involved the commission of any (much less all) of the predicate acts noted above or

5   caused it any harm to its business or property.  *Id*.

6        Most of the persons linked to the IGWT Enterprise are not named among

7   those charged with committing *any* of the predicate acts in paragraph 141 (or any

8   other paragraph).  The few members of the IGWT Enterprise who are named as

9   committing predicate acts (MGA, MGA (HK), Larian) are also members of the

10  other two enterprises.  Mattel fails to make clear if their actions were taken on

11  behalf of one, two or all three of the enterprises.  Similarly, the Bratz Enterprise is

12  not charged with committing *any* predicate acts, although the IGWT and MGA

13  Enterprises are.  *See* ¶ 141.  Yet all four of the Bratz's Enterprises employees/

14  associates are also employees/associates of the MGA Enterprise (which is charged

15  with committing *all nine* predicate acts).  ¶ 141.  Additional ambiguity results from

16  Mattel's claiming that as many as seven Does are linked to each of the three

17  enterprises.  ¶¶ 134, 135, 136.  In sum, even when one can determine when a

18  particular counter-defendant allegedly committed a particular predicate act, it is

19  difficult to determine which *enterprise*'s affairs were being conducted in violation

20  of § 1962(c).

21        **5.    The Racketeering Conspiracies Are Similarly Muddled.**

22        The conspiracies also overlap in personnel and activities.  *See* ¶¶ 147-50.

23  Mattel is unclear about whether there are one, two, or three conspiracies.  *Cf*. ¶¶

24  147-50 (three), 152 (two), 153 (one), and 155 (multiple).  Mattel does not link

25  specific persons to specific overt acts of a specific conspiracy that caused specific

26  harm to Mattel's business or property.  Instead, Mattel makes a sweeping allegation

27  that all of the alleged racketeers committed "numerous overt acts, including but *not*

28  *limited t*o those set forth in the foregoing paragraphs" (¶ 153, italics added), and

[Corrected] Motion for Pre-trial Conference and
RICO Case Statement
CV 04-9049 DOC

1   those acts caused Mattel "substantial [but unidentified] damages" (¶ 155).

2            **6.     No RICO Injuries to Business or Property Are Alleged.**

3       The TAAC does not identify the nature of any injuries Mattel claims it

4   suffered through racketeering activity.  Mattel merely parrots the statutory text with

5   conclusory allegations.  ¶¶ 150-51, 162-63.  Mattel alleges mail and wire fraud,

6   illegal monetary transactions, money laundering and hiding assets in contemplation

7   of bankruptcy, in relation to events in 2008.  *E.g.*, ¶¶ 105-26, 141.  But all of those

8   alleged acts occurred *after* the supposed theft of trade secrets and years of allegedly

9   infringing Bratz sales.  Mattel similarly fails to plead injuries to its business or

10  property proximately caused by obstruction of justice, document tampering, and

11  interstate and foreign travel in aid of racketeering.  ¶ 141(e)-(h).

12      Even as to more common predicate acts whose injurious effects are more

13  conceivable—*e.g.*, mail/wire fraud, copyright infringement—Mattel fails to allege

14  any injury.  The TAAC does not state if Mattel seeks lost profits for Bratz sales that

15  infringed on Mattel's copyrights.  Nor does it allege any other form of concrete

16  harm to Mattel (as opposed to gains to MGA).  The TAAC fails to distinguish

17  between harm suffered by Mattel and harm suffered by its Canadian and Mexican

18  subsidiaries – which are not counterclaimants. *See* TAAC, ¶ 44, *et seq*., ¶ 88, *et seq*.

19           **E.     MGA Asks Mattel To Meet To Discuss Case Management.**

20      Consistent with this Court's Standing Order, on October 8, 2009, counsel for

21  MGA wrote to counsel for Mattel, requesting an in-person meeting of lead counsel

22  to discuss case management issues, including the scheduling of the case for trial

23  and a RICO Case Statement.  Hurst Decl. Ex. A.  In that letter and follow-on

24  correspondence, MGA counsel explained that the parties needed to arrive at a

25  schedule and discuss various issues set forth in this Court's Standing Order.  *Id*.

26  Exs. A, C.  Counsel for MGA noted that this was of particular importance given the

27  amount of time that has passed since the original Rule 26(f) conference and in light

28  of the various amendments to Mattel's complaint.  *Id.*  Mattel refused to meet,

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

1   stating MGA should place its proposal in writing, that Mattel's counsel would

2   discuss it with Mattel, and that Mattel would then respond "if appropriate." *Id*, Exs.

3   B, D.

4                              **ARGUMENT**

5   **I.   THE COURT SHOULD SET A PRE-TRIAL CONFERENCE AND**
        **REQUIRE THE PARTIES TO MEET IN ADVANCE TO DISCUSS**
6       **THE MATTERS TO BE ADDRESSED.**

7          Rule 16(a) provides:

8              (a) Purposes of a Pretrial Conference.  In any action, the
               court may order the attorneys and any unrepresented
9              parties to appear for one or more pretrial conferences for
               such purposes as:  (1) expediting disposition of the action;
10             (2) establishing early and continuing control so that the
               case will not be protracted because of lack of
11             management; (3) discouraging wasteful pretrial activities;
               (4) improving the quality of the trial through more
12             thorough preparation; and (5) facilitating settlement.

13  At a pretrial conference, "the court may consider and take appropriate action" on

14  issues including:  "formulating and simplifying the issues"; "amending the

15  pleadings"; "obtaining admissions and stipulations about facts and documents";

16  "determining the appropriateness and timing of summary adjudication"; "control-

17  ling and scheduling discovery"; "adopting special procedures for managing

18  potentially difficult or protracted actions that may involve complex issues, multiple

19  parties, difficult legal questions, or unusual proof problems"; and "facilitating in

20  other ways the just, speedy, and inexpensive disposition of the action."  Rule

21  16(c)(2).

22         This Court's Standing Order Setting Scheduling Conferences (1:24) also

23  reflects a desire to obtain a "just, speedy, and inexpensive determination of every

24  action," and to efficiently manage cases for the benefit of the parties and litigants in

25  other cases (3:15-16).  *See also* Standing Scheduling Order (3:17-18), noting

26  crowded docket and requiring diligent trial preparation.

27         This case merits a pretrial conference at the Court's earliest opportunity to set

28  a trial date and address the Rule 16 issues cited above and the matters identified in

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

this Court's Standing Orders.  Mattel's original complaint was filed in April, 2004, and the last Rule 26(f) conference was in February, 2007; there is no trial date or final pretrial conference; Mattel's RICO theories were substantially amended in May 2009 – and Mattel may seek further substantial amendments; this case has very recently been reassigned; there are discovery disputes and motions almost daily;[11] the parties will undoubtedly be filing motions aimed at narrowing or eliminating claims, defense, and issues; and the parties cannot even agree on the Phase 2 issues to be tried (and addressed in discovery).  A modest investment of time by the parties and the Court could pay huge dividends in preparing this case for a fair and efficient trial.

Additionally, the Court should order lead counsel for all parties to meet in person in advance of the requested pretrial conference.  Rules 16 and 26, this District's Local Rule 16, and this Court's Standing Scheduling Order all recognize that a face-to-face discussion is the most efficient way to establish the issues remaining for trial.  *See, e.g.,* Local Rule 16-2 (requiring counsel to meet in person in advance of the final pretrial conference); Advisory Committee's Note to Rule 26 ("Moreover, it is desirable that the parties' proposals regarding discovery be developed through a process where they meet in person, informally explore the nature and basis of the issues, and discuss how discovery can be conducted most efficiently and economically.")

The dry exchange of proposals demanded by Mattel as a condition to even considering whether it will show up for a meeting does nothing to advance the potential for agreement or resolution of disputed issues.  Mattel's petulant refusal to meet accomplishes nothing except to subject this Court and MGA to prolonged and vexatious motion practice to settle issues that might otherwise be resolved—or at

---

[11]  There have been more than *70* rulings by the Discovery Master.  *See, e.g.,* Parker Decl. Exs. A, B, C (DM Order Nos. 56, 59, 71); Dkt. # 6738, 6740, 6742, 7056.

the very least narrowed to specific points of contention—in the course of a conference involving an actual discussion.  This is precisely the sort of "wasteful pretrial activity" that Rule 16 is intended to prevent.  Fed. R. Civ. Pro. 16(a)(3).  Accordingly, MGA requests that the Court exercise its authority pursuant to Rule 16 to compel an in-person meeting of the parties in advance of the trial setting conference to discuss those matters contemplated by Rule 26(f) and the Court's Standing Orders.

## II. THE COURT SHOULD ORDER A RICO CASE STATEMENT TO MAKE MATTEL'S RICO CLAIMS INTELLIGIBLE AND MANAGEABLE.

Perhaps the biggest case management factors are Mattel's two RICO counter-claims.  They are undeniably dangerous (involving stigmatizing allegations and triple damages), and undeniably complicated and confusing for all of the reasons summarized above.  If the MGA Parties cannot fathom the RICO allegations, one despairs of the jury's ability to do so.  The present situation is a recipe for disaster, one that can be averted by use of a common case management tool – the RICO Case Statement.

### A. An RCS Is A Useful Tool In The Rule 16 Arsenal.

There is almost uniform agreement that "RICO [is] 'arcane,' 'tormented,' 'complicated,' and 'agonizingly difficult.'  Litigation under the statute is often time-consuming and burdensome . . . ."  Manual for Complex Litigation, Fourth, § 35.1 at 691 (Fed. Judicial Ctr. 2004) ("MCL") (citations omitted).  Thus, courts recognize that "[t]he RICO case statement has proven useful in RICO litigation."  *Id*., §35.31, p. 705.[12]

A court can order an RCS to be filed pursuant to its broad case management

---

[12] Numerous district courts in numerous circuits, including the Ninth Circuit, have employed an RCS.  *See Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1107-08 (9th Cir. 2003), *overruled on other grounds in Odom v. Microsoft Corp*., 486 F.3d 541, 551 (9th Cir. 2007).  *See also* Eastern District of Washington (Local Rule 3.2, eff. 3/5/09); District of Hawaii (Local rule 9.1, eff. 5/14/03).

authority under Rule 16.  *Northland Ins. Co. v. Shell Oil Co.*, 930 F.Supp. 1069, 1074 (D.N.J. 1996).  AN RCS  provides "clarity and precision."  *Id.*, at 1074.  It "assists in the identification . . . and narrowing" of legal and factual issues.  *Id.*  It focuses discovery and provides a "blue print for trial."  *Id.*; *see also Figueroa Ruiz v. Alegria*, 896 F.2d 645, 646, 650 (1st Cir. 1990) (affirming use of an RCS, based on a "need for expeditious and orderly progress of . . . litigation," which is particularly pronounced in a civil RICO suit because of its "quasi-criminal" nature and consequent "stigmatizing effect on those named as defendants"); *Marriott Brothers v. Gage*, 911 F.2d 1105 (5th Cir. 1990) (RCSs are "useful, sometimes indispensable, means to understand the nature of the claims asserted and how the allegations satisfy the RICO statute"); *see also* MCL § 35.31 at 706 ("The RICO case statement, together with a reading of the complaint, will help narrow the issues and identify claims that lack merit, which can then be dismissed (with or without prejudice) before significant time and effort is spent").

In the Central District, Judges Snyder and Matz have used RCSs to facilitate case management.  *See Barsekian v. First Am. Loanstar Trustee Servs.*, 2009 WL 56893 *2 (C.D. Cal. 2009) and *Banks v. Gail*, 2008 WL 4661705 *1 (C.D. Cal. 2008).  A copy of *Barsekian*, with its RCS, is Ex. D to the Parker Decl.  *See also* Standing Order of Judge Matz (similar RCS; Ex. E to Parker Decl.).  MGA proposes that Mattel be ordered to prepare an RCS of the sort used by Judge Snyder to ameliorate the many problems of the TAAC, as discussed above in the Statement of Facts, *supra*, and below.

**B.    A RICO Case Statement Would Facilitate Discovery, Focus Any Needed Motions to Compel, And Orient The Case Properly For Purposes Of Dispositive Motion Practice And Trial.**

Part D of the Statement of Facts, *supra*, summarizes Mattel's RICO claims. The deficiencies revealed by that summary strongly warrant an RCS of the type used by Judge Snyder.

### 1.   An RCS Would Clarify The Pleadings.

For example, the deficiencies in linking counter-defendants and alleged conspirators to predicate acts leaves everyone guessing as to the true nature of the case.  Extracting the allegations and trying to link MGA and Larian to possible predicate acts, is a puzzle requiring "outlines to determine who is being sued for what."  *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  Thus, the MGA Parties "are . . . put at risk that their outline differs from the judge's [and] that plaintiff[] will surprise them with something new at trial . . . ."  *Id.* at 1180.  The lack of clarity regarding the bedrock issue of who committed what predicate acts to harm Mattel through a pattern of racketeering would largely be cured by requiring an RCS, which would force Mattel to plainly state:  each counter-defendant's alleged misconduct and basis of liability; each other wrongdoer's misconduct; the predicate acts that allegedly were violated, including the dates of commission, the participants in the acts, and the facts surrounding the acts.  Parker Decl. Ex. E (Snyder RCS) at *2, ¶¶ 2, 3, 5(a), (b).  Where Mattel relies on mail and wire fraud, the RCS would require the circumstances to be identified with particularity – *i.e.*, Mattel must identify the specific misrepresentations, who made them, and to whom they were made.  *Id.* ¶ 5(c).  Given the stakes in this RICO action, the precise bases of Mattel's claims should be neither a guessing game nor a treasure hunt.

Similarly, the lack of clarity regarding what predicate acts are truly intended to be the basis for the RICO claims would be cured by an RCS.  If Mattel intends to re-package misappropriation of trade secrets as a form of mail or wire fraud, the MGA Parties are entitled to a clear presentation of that theory, to ensure Mattel is not creating *sub rosa* a new predicate act.  *See Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996) (dismissal appropriate because copyright infringement was not then a predicate act and appellants' RICO counts merely "reformulated" infringement allegations "under the label of mail and wire fraud"); *see also Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 631 (S.D.N.Y. 2006) ("All

- 19 -

1   businesses use interstate mail or wires . . . .  Plaintiffs may not reformulate garden

2   variety trade mark infringement claims into mail or wire fraud in order to state a

3   violation of RICO").  An RCS would eliminate this type of confusion, because it

4   would require Mattel to specify the "misconduct" of each counter-defendant or

5   other wrongdoer, Parker Decl. Ex. E (Snyder RCS) at *2, ¶¶ 2, 3, and describe "in

6   detail" the pattern of racketeering, including:  a list of the alleged predicate acts

7   (with related statutes), a description of the participants in and facts surrounding the

8   predicate acts; an explanation of how the predicate acts form a "pattern"; and an

9   account of how the predicate acts relate to each other as part of a common plan.  *Id.*

10  ¶ 5 (a), (b), (f) and (g)).

11        An RCS would reduce the conspiracy clutter, as well.  In the current

12  pleading, neither the counter-defendants nor the Court can figure out:  a) how and

13  when each of the numerous conspirators reached agreement(s) to have some part in

14  directing an enterprise's affairs; b) what exactly the various conspirators agreed to

15  do; c) who committed what overt acts pursuant to which conspiracy ; and d) which

16  acts of which conspiracy proximately caused Mattel concrete financial harm.  *See*

17  *Beck v. Prupis*, 529 U.S. 494, 506-07 (2000); *Salinas v. U.S.*, 522 U.S. 52, 63

18  (1997); *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1128 (9th Cir. 1997).

19  In an RCS, Mattel will have to:  list each defendant and state its "alleged

20  misconduct and basis of liability"; list each additional wrongdoer, and state its

21  "alleged misconduct"; and "describe in detail the alleged conspiracy."  Parker Decl.

22  Ex. E (Snyder RCS) at *2, ¶¶ 2, 3; *3, ¶ 14.

23        Finally, an RCS should solve the riddle of how the alleged acts harmed

24  Mattel in a sense legally cognizable under the RICO statutes.  To be sure, Mattel is

25  not required at this point to put a number on it.  But Mattel can and should be

26  required to at least allege *theories* of how it has been harmed that meet the legal

27  requirements for RICO claims.  Mattel does not plead facts showing how the acts in

28

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

2008 proximately caused any new or additional injury to its business or property.[13] It pleads no such harm resulting *per se* from the act of misappropriating information; and it pleads no instance in which misappropriated information was *used* to its financial detriment (not just to MGA's advantage). Similarly, Mattel reprises its criminal copyright infringement theory, without any specific allegations of harm to its business or property. (The $100M disgorgement verdict in Phase 1 did not reflect *losses* to *Mattel*.)

Additionally, Mattel *prevailed* in Phase 1A, a result completely at odds with the idea that (unsuccessful) attempts to skew the judicial process somehow harmed it. It is even harder to fathom how any amount of interstate or foreign travel of any sort could have harmed Mattel's business or property. In sum, the MGA Parties know that Mattel wants to triple its damage award in the next trial phase, but they know very little about what facts comprise those damages. An RCS would force Mattel to stop hiding the ball regarding its claimed injuries. Mattel would have to: describe alleged injuries to its business or property; describe the "direct causal relationship" between those injuries and the "violation of the RICO statute"; and "[l]ist the damages sustained for which each defendant is allegedly liable." Parker Decl. Ex E (Snyder RCS) at *3, ¶¶15-17; *see also* *2, ¶ 4 ("List the alleged victims and state how each victim was allegedly injured.").

/ / /

---

[13] *See Oki Semiconductor Co. v. Wells Fargo Bank*, *Nat'l Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) (where racketeer laundered proceeds *after* others stole and sold semiconductors, but did not participate in thefts, the "direct and proximate cause of Oki's loss was not [racketeer's] money laundering at Wells Fargo"); *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 388 (D.N.J. 2006) ("Plaintiffs contend that '[m]oney laundering also directly harmed plaintiffs inasmuch as it shielded the enterprise from detection and thereby continued its existence.' This statement is paradoxical because it fails to actually allege any direct harm while claiming to do so. Rather, on its face, it alleges only that money laundering allowed an injurious process to continue; its effect is, at most, an indirect one.").

2.     **Unfortunately, Discovery Has Not Been The Answer For These Problems.**

In recent Phase 2 discovery, Mattel has refused to answer any interrogatories regarding the bases of its RICO claims.  On July 29, 2009, MGA HK and MGA Mexico served RICO interrogatories on Mattel, seeking specific information about the TAAC.  Dkt. # 6738 (Motion to Compel Responses to MGA de Mexico's Interrogatories Nos. 1-1 and MGA Entertainment HK's Interrogatories Nos. 1-25).[14]  On August 28, 2009, Mattel responded to both sets of interrogatories with nothing but objections.  Parker Decl. Exs. F, G.  Not a single sentence containing support for its RICO claims was provided.  *Id.*  The MGA Parties have been forced to move to compel.  Dkt. # 6780 (Motion to Compel Responses to MGA De Mexico's Interrogatories Nos. 1-11 and MGA Entertainment HK's Interrogatories Nos. 1-25); *see also* #6902 (Mattel's Opposition), #6917 (MGA Parties' Reply).  A hearing before Discovery Master has not yet been set.  *Id.*[15]  When a RICO

---

[14] For example, Mattel was asked to identify: "which PERSONS employed by or associated with which RICO enterprise(s) committed that RICO predicate act," "each PERSON that aided and abetted a predicate act committed against MATTEL … and … the predicate act that person aided and abetted…."  Parker Decl. Ex. G, Interrog. #s 1, 4-6, 9-17, 19-25.  MGA also asked Mattel to identify the underlying "RICO predicate act (by statute) and state all facts regarding the acts and omissions establishing that RICO predicate act," and to "IDENTIFY which PERSONS employed by or associated with which RICO enterprise(s) committed that RICO predicate act."  *Id.*  To dispel confusion about the predicate acts in issue, MGA de Mexico specifically asked:  "[w]ith respect to the allegations … that the defendants stole MATTEL trade secrets in Mexico, state all facts regarding … every RICO predicate act committed through that conduct …."  *Id.* Ex. F, Interrog. #10.  Mattel was also asked to give "all facts" pertaining to "each RICO enterprise alleged in the Counterclaims of the TAAC," such as the purpose and goal of the enterprise, the RICO predicate acts committed by the enterprise, and the duration of the enterprise.  Parker Decl. Ex. G, Interrog. #7.  Mattel was asked to provide similar specific information to support its claims about RICO conspiracy(s).  *See* Parker Decl. Ex. G, Interrog. #8.  And wherever Mattel identified a wrong that perhaps was a predicate act, MGA methodically asked: "which PERSONS employed by or associated with which RICO enterprises committed those predicate acts."  *Id.* Ex. G, Interrog. #s 10-23.

[15] Mattel did respond to one Phase 2 interrogatory from MGA, seeking information about Mattel's claimed RICO damages.  Parker Decl. Ex. H, Interrog. #5.  But the

- 22 -

1    complaint is unclear and confusing, adequate discovery is critical.  Providing such

2    discovery is the (modest) price for making charges of 'racketeering' and seeking

3    triple damages.  When a RICO plaintiff like Mattel insists on hiding the ball in its

4    pleading *and* in discovery, an RCS is a tool for leveling the playing field.

5         At the same time, an RCS will prevent Mattel from pointing to vague,

6    unsubstantiated claims to justify broad and intrusive discovery seeking to burden

7    non-party investors in MGA with the undoubted purpose of scaring them off further

8    investment.  An RCS would help restrain Mattel's penchant for using its sprawling

9    RICO claims to inundate non-parties with discovery requests of marginal, if any,

10   relevance.[16]  When a claim covers ten years, names 28 'racketeers,' alleges nine

11   different predicate acts, and identifies multiple 'enterprises' and conspiracies, there

12   is a great potential for discovery to become excessive, burdensome, time-wasting,

13   and ruinously expensive.[17]  If, as the MGA Parties expect, an RCS would flush out

---

15   response was admittedly tentative, preliminary and incomplete.  *Id*.  It was also
16   conclusory and redundant, and raised more questions than it purported to answer –
     questions addressed in the interrogatories that MGA (HK) and MGA Mexico
17   served and that Mattel in essence ignored.

18   [16] Mattel already obtained a wealth of discovery in Phase 1 on RICO-related issues
     that overlapped with Phase 1 claims.  In fact, since the consolidated cases were
19   filed, Mattel has propounded 119 interrogatories, 3212 requests for production, and
     4754 requests for admission.  Parker Decl. ¶ 2.  Millions of pages of documents
20   have been produced.  At least 178 deposition sessions have taken place in this
     matter to date—111 of them by Mattel and 70 of those during the period of time
21   when there was no Phase 2 discovery stay in effect.  *Id*. ¶ 3.  Many of the
     depositions taken by Mattel prior to the stay included examination of issues related
22   to Mattel's Phase 2 Counterclaims.  *Id*. ¶ 4.  For example, Mattel questioned
     deponents about the alleged violation of RICO in at least 30 depositions, RICO
23   conspiracy in at least 17 depositions; misappropriation of trade secrets in at least
     seven depositions; and unfair competition in at least ten depositions.  *Id*.
24

25   [17]  Discovery also can become unduly intrusive.  Mattel has insisted on delving into
     MGA's and Larian's finances from 2001 to the present.  Parker Decl. Exs. I,
26   Interrog. # 1-5.  When asked to justify other interrogatories seeking information
     back to 2005—prior to any alleged financial improprieties, all of which are dated in
27   2008—Mattel pointed to its allegation that the improprieties began "at least as early
     as 2007."  Inexplicably, the Discovery Master accepted that explanation.  That
28

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

1    some of the incurable legal and factual defects of Mattel's RICO claims, motions

2    for summary adjudication could be used to curtail further discovery in those areas --

3    and facilitate the trial of this matter.

4          Prime candidates for such an approach are the financial transactions of 2008

5    (the Wachovia debt acquisition, the "fire sale" of Bratz inventory, and certain

6    shareholder loans; *see* Facts Part D, *supra*).  As to the Wachovia transaction (and

7    other alleged racketeering events that occurred during or after the Phase 1 trial),

8    Judge Larson recently stated they "seem[] to be getting us farther afield from what

9    was the core of that second phase [of trial]. . . .  from a case management

10   perspective, I'm developing some concerns about where this all is going."  Parker

11   Decl. Ex. M at  502-03.  Indeed, the debt acquisition and inventory sale have

12   become a cottage industry of discovery for Mattel – and a source of much motion

13   practice. *See* Dkt. ## 4992, 5365 (Discovery Master Orders 3 & 27).  Mattel has

14   obtained thousands of pages of documents relating just to the Wachovia debt

15   acquisition, and has deposed Neil Kadisha, Leon Neman and Fred Mashian (whom

16   the TAAC claims were involved in efforts to conceal MGA assets, whom the

17   proposed FAAC earmarks for counter-defendant status, but whose depositions

18   refuted Mattel's theory of the transaction).  (For more detail, *see* Dkt.# 6719,

19   MGA's opposition to Mattel's motion for leave to file a FAAC, pp. 5-7.)

20         Mattel claims this burdensome, intrusive discovery is needed, because the

21   challenged transactions involve concealment of assets in contemplation of

22   bankruptcy, or money laundering, or illegal monetary transactions.  Dkt. # 6311,

23   6427 (Motion to File Fourth Amended Answer, Order regarding motion to modify

24   Scheduling Order).  But, in fact, despite its expensive discovery campaign, Mattel

25   is no closer to showing those predicate acts occurred, or that they caused Mattel any

26   cognizable harm.  In fact, the Discovery Master has expressly rejected Mattel's

27   _____

28   decision will be reviewed by this Court.  *See* Dkt. # 6476, 6476-2, 6863, 6884 (Mr.
     Larian's Obj. to DM Order No. 46 and Reply ISO Obj.).

[CORRECTED] MOTION FOR PRE-TRIAL CONFERENCE AND
RICO CASE STATEMENT
CV 04-9049 DOC

1  theory that Larian has an interest in Omni 808 or that the debt acquisition was not

2  an arm's length transaction.  Dkt. # 5365 at 6 (DM Order No. 27).  Careful case

3  management, including use of motions for summary adjudication could prevent

4  discovery from becoming an end in itself, thereby saving substantial time, effort

5  and money for the parties, avoiding undue interference with MGA's business

6  operations, mitigating the inconvenience, expense, and embarrassment suffered by

7  third-parties, and streamlining this case for trial.

8

9                              **CONCLUSION**

10      Based on the foregoing, the MGA Parties ask the Court to grant this Motion

11

12  Dated:  November 6, 2009                    Respectfully submitted,

13                                              ANNETTE L. HURST
                                                Orrick, Herrington & Sutcliffe LLP

14

15                              By:    _____/s/ Annette L. Hurst_____

16                                              ANNETTE L. HURST
                                                Attorneys for MGA Parties

17

18

19

20

21

22

23

24

25

26

27

28