1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SOUTHERN DIVISION

| | |
|---|---|
| 11  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 12                        Plaintiff, | |
| 13           vs. | **DISCOVERY MATTER** |
| 14  MGA ENTERTAINMENT, INC., a California corporation, et al. | **[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]** |
| 15 | |
| 16                      Defendant. | REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL PRODUCTION AND/OR *IN CAMERA* REVIEW OF DOCUMENTS IMPROPERLY WITHHELD ON OMNI 808'S PRIVILEGE LOG |
| 17  AND CONSOLIDATED ACTIONS | |
| 18 | |
| 19 | [Supplemental Declaration of B. Dylan Proctor filed concurrently herewith] |
| 20       **PUBLIC REDACTED** | |
| 21 | Hearing Date:       TBD Time:                    TBD Place:                   Arent Fox LLP |
| 22 | |
| 23 | **Phase 2:** Discovery Cut-off:        TBD Pre-trial Conference:   TBD Trial Date:               TBD |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................ 2

I.   OMNI FAILS TO SHOW THAT ITS "WORK PRODUCT" WAS PREPARED IN ANTICIPATION OF LITIGATION .................................. 2

    A.   Work-Product Does Not Apply Simply Because A Business Transaction Is Completed With Litigation In The Background ............. 2

    B.   The Attorney-Client Privilege Is Not A Substitute For Inaccurate Work-Product Assertions ........................................................ 5

II.  OMNI OFFERS NO JUSTIFICATION FOR ITS CONCEALMENT OF NUMEROUS ATTACHMENTS ................................................... 6

III. OMNI HAS FAILED TO SHOW THAT ANY OF THE WITHHELD TANNA COMMUNICATIONS INVOLVE LEGAL ADVICE ...................... 8

IV.  OMNI'S COMPLAINTS ABOUT THE MEET AND CONFER PROCESS ARE GROUNDLESS ................................................... 13

V.   OMNI'S FACTUAL MISREPRESENTATIONS WARRANT CORRECTION ...................................................................... 14

VI.  OMNI'S REQUEST FOR SANCTIONS IS UNWARRANTED .................. 17

CONCLUSION ................................................................................ 17

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

AAMCO Transmissions, Inc. v. Marino,
  1991 WL 193502 (E.D. Pa. Sept. 24, 1991)........................................10

AT&T Corp. v. Microsoft Corp.,
  2003 WL 21212614 (N.D. Cal. Apr. 18, 2003)........................3, 4, 9, 13

Adams v. Gateway, Inc.,
  2003 WL 23787856 (D. Utah Dec. 30, 2003) ...............................3

Allen v. Woodford,
  2007 WL 309945 (E.D. Cal. 2007) ........................................15

B.F.G. of Ill., Inc. v. Ameritech Corp.,
  2001 WL 1414468 (N.D. Ill. 2001)..................................10, 13

Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez,
  2003 WL 21277139 (S.D.N.Y. June 2, 2003)...............................3

Chaudhry v. Gallerizzo,
  174 F.3d 394 (4th Cir. 1999) ...........................................3

City of Wichita, Kan. v. Aero Holdings, Inc.,
  2000 WL 1480499 (D. Kan. 2000)........................................7

Clavo v. Zarrabian,
  2003 WL 24272641 (C.D. Cal. Sept. 24, 2003) ...........................8

In re Diagnostics Sys. Corp.,
  2008 WL 6556378 (Fed. Cir. Dec. 2, 2008).......................9, 10, 12

Drumm v. Morningstar, Inc.,
  2009 WL 2612311 (N.D. Cal. Aug. 24, 2009)............................7

Duplan Corp. v. Moulinage et Retorderie de Chavanoz,
  509 F.2d 730 (4th Cir. 1974) ..........................................3

F. H. Krear & Co. v. 19 Named Trustees,
  90 F.R.D. 102 (S.D. N.Y. 1981).......................................3

In re Fischel,
  557 F.2d 209 (9th Cir. 1977) ..........................................4

Fox v. Cal. Sierra Fin. Servs.,
  120 F.R.D. 520 (N.D. Cal. 1988) ......................................3

*In re Grand Jury Subpoena*,
   357 F.3d 900 (9th Cir. 2004) ....................................................................... 4, 5

*Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*,
   215 F.R.D. 466 (S.D.N.Y. 2003) ....................................................................... 6

*In re Heritage Bond Litig.*,
   2004 WL 1970058 (C.D. Cal. July, 23, 2004) ................................................. 9

*Holmgren v. St. Farm Mut. Auto. Ins. Co.*,
   976 F.2d 573 (9th Cir. 1992) ............................................................................. 3

*Howard v. Shay*,
   1998 WL 566648 (C.D. Cal. Aug. 10, 1998) ................................................... 7

*LG Electronics v. Whirlpool Corp.*,
   2009 WL 3294802 (N.D. Ill. June 22, 2009) .................................................... 6

*McCaugherty v. Siffermann*,
   132 F.R.D. 234 (N.D. Cal. 1990) ............................................... 2, 5, 6, 11, 12

*Mold-Masters Ltd. v. Husky Injection Molding Sys. Ltd.*,
   2001 WL 1558303 (N.D. Ill. Dec. 6, 2001) ................................................. 8, 9

*Neuberger Berman Real Estate Income Fund, Inc. v.*
   *Lola Brown Trust No. 1B*,
   230 F.R.D. 398 (D. Md. 2005) ..................................................... 2, 5, 10, 11, 12

*Newport Pac. Inc., v. County of San Diego*,
   200 F.R.D. 628 (S.D. Cal. 2001) ...................................................................... 3

*O'Connor v. Boeing N. Am., Inc.*,
   185 F.R.D. 272 (C.D. Cal. 1999) ...................................................................... 8

*Smithkline Beecham Corp. v. Apotex Corp.*,
   193 F.R.D. 530 (N.D. Ill. 2000) ..................................................................... 13

*Starn O'Toole Marcus & Fisher v. U.S.*,
   2008 WL 2653451 (D. Haw. July 7, 2008) ...................................................... 3

*U.S. v. Derr*,
   1993 WL 226100 (N.D. Cal., Jan. 22, 1993) ................................................... 9

*United Inv. Life Ins. Co. v. Nationwide Life Ins. Co.*,
   233 F.R.D. 483 (N.D. Miss. 2006) ................................................................... 6

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) .......................................................................................... 3

*Wiener v. F.B.I*,
   943 F.2d 972 (9th Cir. 1991) ......................................................................... 13

<u>Ziemack v. Cent. Corp.</u>,
  1995 WL 314526 (N.D. Ill. May 19, 1995).............................................................6

## <u>Statutes</u>

<u>Fed. R. Civ. P.</u> 26(b)(3).................................................................................3

<u>Fed. R. Civ. P.</u> 37(a)(5).................................................................................15

<u>Fed. R. Civ. P.</u> 37.......................................................................................15

<u>Local Rule</u> 7-9...........................................................................................7

## **Preliminary Statement**

Omni's opposition is rife with factual misstatements and labored efforts to blame Mattel for Omni's own deficient privilege log entries, culminating in a groundless request for sanctions.  What is lacking is an answer to the key points at issue.

First, Omni asserts that nearly every communication on its privilege log is work product, despite having provided no evidence that these communications were made *in anticipation of litigation.*  Omni's unsupported work-product assertions should be overruled.

Second, Omni offers no excuse for its withholding of attachments nor any evidence substantiating that these attachments are work product or privileged.  In fact, Omni hardly even acknowledges this issue.  These attachments should be ordered produced to Mattel.

Third, in an effort to stave off *in camera* review of communications involving Kevin Tanna, Omninet's Vice President of Development, Omni offers a general and conclusory declaration that Mr. Tanna acted as an "attorney."  The Court has specifically expressed its restricted view of the scope of privilege in such circumstances, emphasizing that a distinction must be drawn between in-house communications that seek legal advice and those that further business goals.  Mr. Tanna's declaration does not show which category each of the twenty-seven Tanna communications fit into.  These communications should be reviewed *in camera* to confirm their non-privileged status.

**Argument**

**I.    OMNI FAILS TO SHOW THAT ITS "WORK PRODUCT" WAS PREPARED IN ANTICIPATION OF LITIGATION**

**A.    Work-Product Does Not Apply Simply Because A Business Transaction Is Completed With Litigation In The Background**

Omni has claimed work-product protection for nearly every entry in its log without making any attempt to explain their connection to any anticipated litigation.  Omni refused to explain its position on this issue during the parties' meet and confer even though Mattel specifically raised the issue. (Mot. at 4.)  Omni now responds in its opposition that every withheld document contains an attorney's "████████████████████." (Opp. at 21.)  But even if true, that is legally insufficient.  Omni is wrong on the law and offers nothing on the facts.

A document is not work product simply because it reflects an attorney's mental thought or impressions:  "Mental impressions by themselves do not qualify for protections under the work product doctrine." Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 423 (D. Md. 2005).  Rather, "[s]uch impressions must be related to specific litigation, actual or anticipated." Id.  Although it is "axiomatic that work product protection . . . may extend only to documents prepared 'in anticipation of litigation or for trial,'" McCaugherty v. Siffermann, 132 F.R.D. 234, 245 (N.D. Cal. 1990) (quoting Fed. R. Civ. Proc. 26(b)(3)), Omni's opposition, tellingly, never even utters the phrase "in anticipation litigation."

The weight of authority finding that materials prepared "in the ordinary course of business" do not qualify for work product protection is unchallenged.  Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988); see Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez, 2003 WL 21277139, at *2 (S.D.N.Y. June 2, 2003) ("Coudert Brothers' due diligence work performed for [lender regarding credit agreement] is not protected by the work product doctrine."); Adams

1    v. Gateway, Inc., 2003 WL 23787856, at *15 (D. Utah Dec. 30, 2003) ("Documents

2    showing business or negotiation strategy are not matters of litigation strategy

3    protected by the work product privilege."); Starn O'Toole Marcus & Fisher v.

4    U.S., 2008 WL 2653451, at *4 (D. Haw. July 7, 2008) (transactional counsel's

5    advice regarding "real property transactions, and financing and partnership issues"

6    not work product); F. H. Krear & Co. v. 19 Named Trustees, 90 F.R.D. 102, 103-04

7    (S.D. N.Y. 1981) (in-house counsel's business negotiations were unrelated to

8    litigation and thus not protected).[1]   Indeed, even the authorities Omni cites make

9    plain that the work-product doctrine does not protect a document or communication

10   "that would have been generated in the normal course of business even if no

11   litigation was anticipated." AT&T Corp. v. Microsoft Corp., 2003 WL 21212614, at

12   *5 (N.D. Cal. April 18, 2003).[2]

13

_____

14   [1]    Ignoring the cases that are directly on point, Omni goes to great lengths to
15   distinguish two Ninth Circuit cases cited by Mattel as not "███████████." (Opp. at
     10.) Omni's reading of In re Fischel, 557 F.2d 209 (9th Cir. 1977), is simply wrong—the
16   Ninth Circuit noted that the "limited work product immunity extends only to certain
17   materials prepared by an attorney in anticipation of litigation" and found that the
     documents at issue "were not prepared in such a setting." 557 F.2d at 212-213.  As for In
18   re Grand Jury Subpoena, 357 F.3d 900 (9th Cir. 2004), the point was that because work
19   product extends only to documents created in anticipation of litigation, documents that
     could have a "dual purpose" would be protected only to the extent that "their litigation
20   purpose so permeates any non-litigation purpose that the two purposes cannot be discretely
     separated from the factual nexus as a whole." 357 F.3d at 910.  That is not a standard
21   Omni comes even close to meeting here.
22   [2]    See also Newport Pac. Inc., v. County of San Diego, 200 F.R.D. 628, 632 (S.D. Cal.
     2001) (work product is limited to those materials that "**would not have been generated**
23   **but for the pendency or imminence of litigation**") (emphasis added); Upjohn Co. v.
24   United States, 449 U.S. 383, 398 n.7 (1981) (work-product must be "prepared in
     **anticipation of litigation or for trial**") (emphasis added); Holmgren v. St. Farm Mut.
25   Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992) ("[t]he primary purpose of the work
     product rule is to 'prevent exploitation of a party's efforts in **preparing for litigation**'")
26   (emphasis added); Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730,
27   734 (4th Cir. 1974) (work-product doctrine "grants a qualified immunity to 'documents
     and tangible things . . . **prepared in anticipation of litigation**'") (emphasis added);
28      (footnote continued)

1    Omni has also failed to prove that its withheld documents were actually

2    prepared in anticipation of litigation.  Omni's privilege log includes descriptions of

3    "███████████" under the "████████████████" and related "████

4    █████████" and "████████████," various "█████████" and

5    "███████," and ordinary deal documents such as a "██████," a "████

6    ██" and a "██████████."[3] That such business-oriented communications may

7    have taken place "████████████████████████" between Mattel and

8    MGA is of no moment given that Omni has never claimed, much less proven, that

9    these communications were made in anticipation of involvement in that litigation.

10   Indeed, Mr. Tanna's declaration, which is all Omni offers, states only that his

11   communications "████████████████████████████████████

12   ████████████████████████." (Tanna Decl. ¶ 5.)  Nowhere does Mr.

13   Tanna indicate—as required—whether one of those "█████" was anticipated

14   litigation or whether such communications "would not have been [made] in

15   substantially similar form but for the prospect of that litigation."  In re Grand Jury

16   Subpoena, 357 F.3d 900, 907, 908 (9th Cir. 2004).[4]

17        McCaugherty v. Siffermann, 132 F.R.D. 234, 245 (N.D. Cal. 1990),

18   turned on similar facts.  A troubled company enmeshed in litigation and receivership

19   sold some of its assets.  When the buyers later sued for fraud and sought various

---

21   Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir. 1999) (work product protects "facts

22   developed by his efforts in **preparation of the case** or opinions he has formed about . . . **the litigation**") (emphasis added).

23   [3]    See, e.g., Amended Omni Log Entry Nos. 1, 9, 43, 66, 93, 109, 135, 146 and 159,

24   attached as Exhibit 1 to the previously filed Declaration of B. Dylan Proctor ("Proctor Decl."), at p. 1, 2, 10, 14, 20, 23, 32, 34 and 37.

25   [4]    Moreover, Omni has provided no "specific factual support for its assertion" that

26   these documents, in fact, reflect an attorney's mental opinions, and for that reason as well, its assertions must be rejected.  Neuberger Berman Real Estate Income Fund, Inc. v. Lola

27   Brown Trust No. 1B, 230 F.R.D. 398, 418 (D. Md. 2005) (noting that "a party cannot simply rely on conclusory statements in its memoranda" to support work-product claim).

28

1  documents relating to the sale, the defendants claimed work-product protection
2  because the sale-related documents had been created while other litigation was
3  pending.      Notwithstanding declarations from their attorneys attesting to the
4  communications' status as work-product, the court rejected this claim:

> [M]ost, if not all, of the documents on the log apparently were prepared
> in connection with the effort to sell [the assets], an effort that clearly
> had a "business" purpose. While the [other] litigation formed part of
> the environment in which the sale transaction was made, the defendants
> have not pointed to a single document on their log that they claim was
> generated primarily for use in that case.

11  McCaugherty, 132 F.R.D. at 246.  The same is true here.  Neither the fact that the
12  Mattel/MGA litigation was ongoing nor Omni's later intervention renders these
13  unrelated communications work-product.  See also Gulf Islands Leasing, Inc. v.
14  Bombardier Capital, Inc., 215 F.R.D. 466, 476 (S.D.N.Y. 2003) ("Litigation against
15  a separate entity . . . is insufficient to show that the documents were created
16  'because of' Bombardier Capital's own anticipation of litigation."); Ziemack v.
17  Cent. Corp., 1995 WL 314526, at *6 (N.D. Ill. May 19, 1995) ("the mere fact that
18  litigation eventually ensues does not, alone, protect all documents related to the
19  subject matter of the litigation") (citation omitted).

20       **B.    The Attorney-Client Privilege Is Not A Substitute For Inaccurate**
21            **Work-Product Assertions**

22           Conceding their lack of merit, Omni suggests that it doesn't matter
23  whether its work-product assertions are valid "████████████████
24  ████████████████████████████████████████."  (Opp. at 22)
25  (emphasis in original).  As a factual matter this is incorrect—as discussed below in
26  Part II, Omni's improperly logged attachments are only alleged to be work-product.
27  Moreover, the very purpose of a privilege log is to require a party, acting in good
28  faith, to accurately articulate the basis for its withholding of responsive documents.

1   Omni has not done so.  Its work product assertions should be overruled.  See, e.g.,

2   LG Electronics v. Whirlpool Corp., 2009 WL 3294802, at *4 (N.D. Ill. June 22,

3   2009) (ordering party to withdraw improper work-product assertions where there

4   was no evidence that they were created in anticipation of litigation).  Indeed, that is

5   particularly warranted given that Omni's indiscriminate claims of work product fly

6   in the face of its own prior assertions that its " ███████████████████████████

7   ███████████████████████████████████████████████████████████████████████

8   ███████████████████ "[5] and was not " ██████████████████████████████ ."[6]

9   **II.      OMNI OFFERS NO JUSTIFICATION FOR ITS CONCEALMENT OF**

10         **NUMEROUS ATTACHMENTS**

11         Mattel's motion detailed how Omni initially concealed the fact that it

12   was withholding attachments and subsequently failed to separately log or otherwise

13   substantiate its claims that at least three dozen attachments are work-product.  (Mot.

14   at 12-14.[7])  In response, Omni dismisses its wrongdoing as " ████████████████

15   ██████ " (Opp. at 5), devoting only that sentence to the issue.  This amounts to a

16   concession.  C.D. Cal. Local Rule 7-9 (requiring party opposing a motion to include

17   "a statement of all of the reasons in opposition" to the motion); see, e.g., Howard v.

18   Shay, 1998 WL 566648, at *2 (C.D. Cal. Aug. 10, 1998) ("Defendants implicitly

19   concede this factor by failing to address it in their opposition."); Drumm v.

20   Morningstar, Inc., 2009 WL 2612311, at *8 (N.D. Cal. Aug. 24, 2009) (party

21   "implicitly conceded this point by failing to respond" in opposition).[8]

22   ───────────────────────────

23   [5] Omni's Request to Strike Summary and Responsive Reports of Ronald L. Durkin,
     dated June 8, 2009, at 3:23-4:1, Proctor Decl., Ex. 21.
24   [6] Omni's Statement of Position re Order to Show Cause re Appointment of Permanent
25   Receiver, dated May 14, 2009, at 10:15-19, Proctor Decl., Ex. 25.
     [7] The specific entries at issue are set forth in Appendix B, filed concurrently with
26   Mattel's initial motion.
     [8] See also City of Wichita, Kan. v. Aero Holdings, Inc., 2000 WL 1480499, *2 (D.
27   Kan. 2000) (although party opposed document production, party's "brief contain[ed] no
28         (footnote continued)

1    This is not a mere technical fault.   Omni's log shows at least 36

2    attachments of some kind that have been withheld because the attachment

3    "██████" an "████████████████████████," yet Omni provides

4    absolutely **no information** as to who authored such documents, when they were

5    created, or for what purpose.   Omni has provided no basis to support its

6    withholdings.   See Clavo v. Zarrabian, 2003 WL 24272641, at *3 (C.D. Cal. Sept.

7    24, 2003) (holding work-product assertions inadequate and ordering documents

8    produced where "privilege log does not reveal who created and viewed them or why

9    they were created").   Notably, unlike the bulk of Omni's withheld communications,

10   Omni has not asserted that the attachments themselves contain or reflect privileged

11   communications.[9]

12   It is precisely for this reason that courts consistently require that where

13   a party seeks to withhold both a communication and its attachments on a privilege

14   log, the "attachment or enclosure must be listed as a separate document on the

15   privilege log; otherwise, such attachment or enclosure must be disclosed."

16   O'Connor v. Boeing N. Am., Inc., 185 F.R.D. 272, 280 (C.D. Cal. 1999); Mold-

17   Masters Ltd. v. Husky Injection Molding Sys. Ltd., 2001 WL 1558303, at *3 (N.D.

18   Ill. Dec. 6, 2001) (because privilege assertions are determined on a "document-by-

19   document basis," the "attachment to a document must appear as a separate entry on

20   the privilege log"); U.S. v. Derr, 1993 WL 226100, at *1 (N.D. Cal., Jan. 22, 1993)

21

22   _____

23   arguments in opposition to the motion to compel" and "[t]hus, [party] waived his rights

24   concerning [discovery] . . . and the motion shall be granted as an uncontested matter.").

     [9] See, e.g., Entry No. 12, Amended Omni Log, Proctor Decl., Ex. 1 ("████████

25   ████████████████████████████████████████████████████████████████")

26   (emphasis added).   To the extent that the Discovery Master overrules Omni's work-

27   product assertions, then, at a minimum, these attachments must be ordered produced to

     Mattel since it is well-settled that the "mere transmittal of documents to a lawyer is

28          (footnote continued)

1 (because "attachments to privileged documents are not themselves privileged

2 without an independent basis for claiming the privilege," a privilege log is

3 inadequate if it does not establish an attachment's privileged status "independent of

4 the primary document").   Even Omni's own cited authorities hold that "[a]n

5 attachment must qualify on its own for attorney-client privilege and '**must be listed**

6 **as a separate document on the privilege log**.'" <u>AT&T</u>, 2003 WL 21212614, at *4

7 (emphasis added, citation omitted).

8         Having failed to separately log these attachments (as required) or even

9 defend its improper practice (as also required), Omni should be required to produce

10 these withheld attachments immediately.  <u>See, e.g.</u>, <u>In re Heritage Bond Litig.</u>, 2004

11 WL 1970058, at *5 (C.D. Cal. July, 23, 2004) (granting motion to compel "as to the

12 attachments to these documents, which are not separately listed on the privilege

13 log"); <u>see also</u> <u>Mold-Masters Ltd.</u>, 2001 WL 1558303, at *4 (withheld documents

14 included attachments not described on privilege log and "for that reason, the

15 attached message must be disclosed").

16 **III.**  **OMNI HAS FAILED TO SHOW THAT ANY OF THE WITHHELD**

17       **TANNA COMMUNICATIONS INVOLVE LEGAL ADVICE**

18         Judge Carter has cautioned that there must be a "distinction drawn"

19 between "documents created when [a corporation's in-house attorneys are]

20 functioning primarily as attorneys representing [the corporation] and documents

21 created when the [corporation's in-house attorneys are] functioning primarily in the

22 capacity of corporate executives furthering the business goals of [the company]." <u>In</u>

23 <u>re Diagnostics Sys. Corp.</u>, 2008 WL 6556378, at *1 (Fed. Cir. Dec. 2, 2008)

24 (affirming district court's order requiring production of in-house communications

25 withheld as allegedly privileged; quoting Judge Carter's opinion).  To withhold such

26

27      insufficient to bring documents under the umbrella of the attorney-client privilege." <u>Clavo</u>

28      (footnote continued)

1  communications as privileged, a corporation must "make a clear showing that the
2  primary purpose of the communication was securing legal advice" or the "assertion
3  of privilege [will be] overturned." Id.

4        Omni has not made that showing here.  Instead, the bulk of Omni's
5  opposition is misspent needlessly establishing that Mr. Tanna is an attorney.[10]  But
6  Mr. Tanna's *status* as an attorney is not the issue; what matters here is whether the
7  specific twenty-seven communications identified by Mattel "were made for the
8  express purpose of securing legal not business advice."  AAMCO Transmissions,
9  Inc. v. Marino, 1991 WL 193502, at *3 (E.D. Pa. Sept. 24, 1991).  Nothing in
10  Omni's opposition or the Tanna Declaration constitutes the required clear showing.
11  The Tanna Declaration does not establish that the "primary purpose" of these
12  specific communications was to secure legal, not business advice.  While it provides
13  generalized representations regarding Mr. Tanna's role as an attorney, it does not
14  offer any specific representations regarding the alleged legal content of the
15  communications at issue.

16        As the Neuberger case (which Omni does not substantively
17  distinguish[11]) recognized, that failure is conclusive when the underlying transaction

18

19  v. Zarrabian, 2003 WL 24272641, at *2 (C.D. Cal. Sept. 24, 2003).

20  [10] See, e.g., Opp. at 13 ("████████████████████████
21  ████████"); Opp. at 14 (". . .
22  ████████"); Opp. at 15 ("████████████ . . .").

23  [11] Rather than discuss the analogous facts of Neuberger, Omni mistakenly claims that
    the court "████████████████████████████████████████████████"
24  (Opp. at 17, emphasis in original).  To the contrary, the Neuberger court noted, correctly,
25  that "many courts impose a higher burden on in-house counsel to 'clearly demonstrate'
    that advice was given in a legal capacity," and further found that the affidavits there to be
26  so conclusory that they did not establish the privilege even under a "general standard."
    230 F.R.D. at 411 n.20.  Nor does Omni's here.  Further, Mattel cited numerous other
27  authorities showing that "there is a particular burden on that corporation to demonstrate
    why communications [with in-house counsel] deserve protection and are not merely
28      (footnote continued)

1   involves a business transaction in which communications with counsel as to
2   business advice would not be privileged.   In Neuberger, as here, the attorney
3   affirmed that the work he "perform[ed] for the [defendants] is the provision of legal
4   advice or oversight" and that all of the "[c]ommunications listed on defendants'
5   privilege log between [himself and defendant's business employee's] are either
6   requests for legal advice, provision of legal advice, or provision of information to
7   [counsel] for use in the provision of legal advice" regarding the business transaction.
8   Id. at 407.   The Neuberger court held the affidavit was insufficient, noting that it
9   "rel[ied] mistakenly on [the attorney's] status as a lawyer" while "failing to provide
10  the factual support [on a] document-by-document" basis.   Id.   Given that the
11  transaction was a business transaction and that "communications by a corporation
12  with its attorney" who is "at the time" acting "as a business advisor" would not be
13  privileged, such "general and conclusory" statements were insufficient to establish
14  the "factual predicate" that they both contained legal advice and that any such "legal
15  advice [was not] merely incidental to business advice," but "predominate[d]." Id. at
16  411.

17       Mr. Tanna's declaration fares similarly.   While he states that "██████
18  ████████████████████████████████████████████████████████████████
19  ████████████████████" (Tanna Decl.   ¶ 5), Omni does not show either that the
20  communications involved legal advice or that any such legal advice predominated,
21  nor that the communications would not have been made because of a business
22  purpose regardless of whether there may have been a "perceived additional interest

23

24

25

26

27  business documents." B.F.G. of Ill., Inc. v. Ameritech Corp., 2001 WL 1414468, at *6
28  (N.D. Ill. 2001); see also Mot at 6-7 (collecting cases).

1    in securing legal advice." <u>McCaugherty</u>, 132 F.R.D. at 238.  In fact, Omni offers no

2    evidence at all in this regard, let alone on a document-by-document basis.[12]

3           Indeed, while Mr. Tanna makes his declaration generally applicable to

4    " ███████████████████████████████████████████████████ ,"

5    there is no specific representation that Mr. Tanna has even reviewed the

6    approximately twenty-seven communications at issue; he makes no attempt to show

7    the "detailed, factual predicate" required to establish the privilege, including a

8    "document-by-document demonstration of the elements required under the

9    governing law of attorney-client privilege."  <u>Neuberger</u>, 230 F.R.D. at 408.  Instead,

10   as in <u>Neuberger</u>, we "are simply asked to believe that [Mr. Tanna] was at the time of

11   the communication . . . engaged in the request for, or response to, legal advice and

12   acting in whatever capacity (and no other) that would insure its confidential status

13   and thus privileged nature as an attorney-client communication."  <u>Id.</u>  That is clearly

14   insufficient.  <u>See id.</u>; <u>see also</u> <u>McCaugherty</u>, 132 F.R.D. at 238 ("the court should

15   sustain an assertion of privilege only when there is a clear evidentiary predicate for

16   concluding that each communication in question was made primarily for the purpose

17   of generating legal advice"); <u>In re Diagnostics Sys. Corp.</u>, 2008 WL 6556378, at *1

18   (withholding party must "make a clear showing that the primary purpose of the

19   communication was securing legal advice" or the "assertion of privilege [will be]

20   overturned").

21          Having failed to clearly show these communications are privileged,

22   Omni argues that <em>in camera</em> review is not warranted because there is no " ████

23   ██████████████████ " that the communications identified by Mattel " █████

24   _____

25   [12]    Further, Mr. Tanna concedes that in addition to any " █████████ ," he also
     provided " █████████████ ," which he does not claim had a legal character.
26   (Tanna Decl. ¶ 5.) That such communications might have been " █████████████
27   █████████ " does not render them so as a legal matter.

28

1  ███████████████████████████." (Opp. at 16.) (emphasis added).  But it is Omni's

2  burden to show that these communications involved legal advice, not Mattel's

3  burden to show they did not.  See Smithkline Beecham Corp. v. Apotex Corp., 193

4  F.R.D. 530, 534 (N.D. Ill. 2000) (it is "the party asserting the privilege who bears

5  the burden of establishing its applicability. More often than not, parties proceed in

6  such a manner that would suggest they believe their opponent must undermine their

7  unsupported claims of privilege or that it is the court's task to protect their

8  communications for them. Neither, of course, is the case.").   In the face of a

9  documentary record that clearly establishes that Mr. Tanna's role, even as an

10  attorney, was not limited to providing legal advice—that he participated in business

11  discussions about such issues as "███████████"[13]—Omni's failure to meet its

12  burden is determinative.  Because, as here, there is "no way" that Mattel or the

13  Court can distinguish between business and legal communications withheld by

14  Omni based on the record, in camera review is warranted. B.F.G. of Ill., 2001 WL

15  1414468, at *6.[14]

16

17

18

_____

19  [13]   See OMNI 0002110, Proctor Decl., Ex. 15 (telling Brian Wing of MGA that Tanna

20  was "███████████████████████████" and scheduling a
time for them to discuss the issue further).

21  [14]   Omni contends that in camera review is "███████." (Opp. at 18.) Even if true,

22  that says nothing about whether it is appropriate here.  In fact, the threshold for such
review is, as Omni's own cited authorities observe, set "purposefully low." AT&T, 2003

23  WL 21212614, at *8.  As the Discovery Master has previously noted, in camera review

24  can be the appropriate remedy when the parties are in dispute regarding the applicability of
privilege. See Phase 2 Discovery Matter Order No. 33, dated May 18, 2009, attached as

25  Exhibit 2 to the Supplemental Proctor Declaration ("Supp. Proctor Decl."), at 55-56

26  ("████████████████████████████████████████

27  ████████████").

28

## IV.    OMNI'S COMPLAINTS ABOUT THE MEET AND CONFER PROCESS ARE GROUNDLESS

Omni's lead argument in opposition is that Mattel "█████████ ███████████████████████." (Opp. at 10.)  This claim is absolutely groundless. On August 13, 2009, after Omni failed to produce a timely log, the Discovery Master ordered the parties to meet and confer on the adequacy of Omni's privilege log.[15]  The parties engaged in a conference on August 19, 2009, discussing all of the substantive issues in Mattel's motion. In addition, several letters were exchanged— on August 14th, 18th, and 19th, as well as on September 1st and 3rd—which set forth the parties' respective positions in great detail.[16]  Although Omni produced an "amended" privilege log, it still contained the same deficiencies, which are now the subject of this Motion.

Omni's suggestion that it was not on "██████" that Mattel would resort to motion practice should these matters remain unresolved is simply not true.  Omni itself noted it was revising its log "in an effort to avoid" a motion.[17]  There is no basis for Omni's claim that Mattel was required to start another meet and confer process after Omni amended its privilege log (which did not address Mattel's

_____

[15]   See Order No. 51, at 24 n.1, Proctor Decl., Ex. 4 ("██ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████").

[16]   See August 14, 2009 Letter from B. Proctor to P. Villar, Proctor Decl., Ex. 6; August 18, 2009 Letter from P. Villar to B. Proctor, Proctor Decl., Ex. 7; August 19, 2009 Letter from B. Proctor to P. Villar, Proctor Decl., Ex. 8; September 1, 2009 Letter from P. Villar to B. Proctor, Proctor Decl., Ex. 9; September 3, 2009 Letter from B. Proctor to P. Villar, Proctor Decl., Ex. 14.

[17]   September 1 Letter, at 2, Proctor Decl., Ex. 9.

1  concerns) when the parties had <u>already</u> met and conferred on precisely these issues.

2  Mattel adequately met and conferred.[18]

3  **V.    OMNI'S FACTUAL MISREPRESENTATIONS WARRANT**

4  **CORRECTION**

5        Omni repeatedly misstates the facts and shrilly attacks Mattel in an

6  effort to divert attention from its own failings.  These assertions, though irrelevant,

7  warrant correction.

8        Omni declares it "███████" if "████████████" to say that it

9  "████████████████████████████." (Opp. at 2.)  Indeed, Omni accuses

10  Mattel of making "████████████████████████████████

11  ████████████████," which it claims is "████████████████

12  ████████████████." (Opp. at 6 n.4.)    Obviously, Omni *eventually*

13  provided a belated privilege log; after all, that is the subject of this Motion.  But as

14  Mattel correctly stated (but Omni purposefully misquotes[19]), Omni did "████

15  ████████████████," and when challenged it argued that its tardiness

16  was justified because the Discovery Master had not specifically mandated one.[20]

17

18  ───────────────

19  [18]   <u>See, e.g.</u> Phase 2 Discovery Order No. 6, dated March 13, 2009, at 3, Supp. Proctor Decl., Ex. 4 ("████████████████████████████████

20  ████████████████████████████████████████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████"); <u>Allen v. Woodford</u>, 2007 WL 309945, at *7 (E.D. Cal. 2007) (rejecting parties claim that "there

23  was inadequate meet and confer" where an issue "was discussed by counsel," but remained

24  unresolved since "further meet and confer would be fruitless").

[19]   This misquote appears yet again when Omni declares, without citing to Mattel's

25  brief that "████████████████████████████████████████████"

26  (Opp. at 6 n.4.).

[20]   <u>See</u> May 7, 2009 Letter from P. Villar to B. Proctor, Proctor Decl., Ex. 5

27  ("[N]either of the Discovery Master's Orders (Nos. 3 and 21) even mentions a privilege

28  (footnote continued)

1    Even after Mattel sent several more demands for a privilege log, Omni (as Mattel

2    correctly sated) "███████████████████████████."[21]   Indeed, Omni did not

3    provide a privilege log until more than three-and-a-half months after it had been

4    ordered to produce documents, a delay that the Discovery Master found "█████

5    ████."[22]

6            Omni also argues that the Discovery Master did not make "████████

7    ███████████████████████" (Opp. at 7.)  The Discovery Master clearly

8    stated that Omni's tardy privilege log was "relatively sparse"[23] and directed Omni to

9    meet and confer with Mattel regarding the adequacy of its log, noting that Mattel

10   could bring a motion and seek sanctions if these issues remained unresolved: "I'm

11   very concerned about the fact that the privilege log was produced 24 hours after

12   Mattel had to file a motion.  And that's why I'm denying—with respect to the

13   sanctions, I'm denying it without prejudice, so that if the meet-and-confer process

14   isn't successful and you don't feel like you got a privilege log that was proper, you

15   can bring a motion and request for sanctions at that time."[24]

16           Omni   declares   it  "█████"   that   "during   ████████████

17   ████████," Mattel allegedly was "██████" to "███████████████" of "████

18   ███████████████████████████." (Opp. at 8.)  As set forth

19   in the parties' correspondence, Mattel indicated that it could not advise Omni on

20   _____

21   log.").  Tellingly, while Omni's opposition selectively quotes from this letter, it does not

22   attach it.
      [21]  See, e.g., Order No. 51, at 21, Proctor Decl., Ex. 4 (stating that it was "████████"

23   that "██████████████████████████████████").
      [22]  Order No. 51, at 21, Proctor Decl., Ex. 4 (emphasis added).

24   [23]  August 13, 2009 Hearing Tr. at 7:19, Proctor Decl., Ex. 5.
      [24]  See August 13, 2009 Hearing Tr. at 18:9-17, Supp. Proctor Decl., Ex. 1; Order No.

25   51, at 24 n.1, Proctor Decl., Ex. 4 ("At the August 13, 2009 hearing, I instructed the parties

26   to meet and confer regarding this issue and further stated that, if the parties  are unable to
      resolve their dispute, Mattel may file a motion to compel seeking to compel the production

27   of a more detailed privilege log as well as sanctions of the motion is justified.").

28

1  how to adequately describe its documents because Mattel had not seen them, but

2  referred Omni to prior orders from this case regarding the proper assertion of

3  privilege.[25]

4        Omni also finds it "███████" that after they requested examples from

5  Mattel's own privilege log, "████████████████████████████████████████

6  ████████████████████████████" (Opp. at 8.) That is simply untrue. Mattel

7  indicated that it believed comparing different parties' privilege logs was not a

8  worthwhile endeavor because "different types of documents on different subject

9  matters will require different descriptions and varied levels of detail."[26]

10  Nevertheless, Mattel provided several examples and explained why it believed those

11  descriptions provided more adequate detail than Omni's.[27]

12        Omni next attacks Mattel's privilege logs, claiming that Mattel's

13  arguments are "████████████████" and "████████████████" because Omni

14  allegedly "██████████" its privilege logs after Mattel's. (Opp. at 4, 5) Mattel's

15  privilege logs are not at issue.[28] Moreover, Omni's arguments are purposefully

16  misleading since the Mattel privilege logs it purports to cite <u>are from 2007</u> and have

17  been supplemented numerous times; the descriptions Omni claims have been

18

19  _____

20  [25]  <u>See</u> September 3, 2009 Letter from B. Proctor to P. Villar ("September 3 Proctor

21  Letter"), Proctor Decl., Ex 14 ("As to what further information should be provided to sustain Omni's claims of privilege, as I told you during our conference, these are Omni's

22  documents, not Mattel's, and therefore I cannot make that judgment for you. I can, however, direct you to the Discovery Master's [prior orders].").

23  [26]  September 3 Proctor Letter at 1, Proctor Decl., Ex. 14.
    [27]  <u>Id.</u> at 1-2.

24  [28]  The Discovery Master has previously rejected MGA's attempt to shift examination

25  of its own inadequate privilege assertions by pointing out alleged flaws in Mattel's logs. <u>See</u> Phase 2 Discovery Order No. 33, dated May 18, 2009, at 55 n.25, Supp. Proctor Decl.,

26  Ex. 2 (rejecting MGA's argument that "████████████████████████████████████

27  ████████████" because "████████████████████████████████████████████████

28  ████████████████████"). The Discovery Master should do the (footnote continued)

1  repeated verbatim have actually been supplemented and amended; and Mattel's

2  privilege log contains hundreds of individualized descriptions.[29]  Omni's shrill and

3  unsupported complaints cannot divert scrutiny of its improper withholdings.

4  **VI.   OMNI'S REQUEST FOR SANCTIONS IS UNWARRANTED**

5      Finally, Omni's request for sanction is frivolous.   Under Rule 37,

6  sanctions are warranted only if (1) the movant has not made a good faith effort to

7  obtain the disclosure or discovery without court action; (2) the losing party was not

8  substantially justified in making or opposing the motion; (3) other circumstances do

9  not make an award of expenses unjust.  See Fed. R. Civ. P. 37(a)(5).   For the

10  reasons set forth above, this motion should be granted; in any case, it is certainly not

11  sanctionable.

**Conclusion**

13      For the foregoing reasons, Mattel respectfully requests that its motion

14  be granted in its entirety.

16  DATED:  November 10, 2009      QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

18

19                                 By/s/ B. Dylan Proctor
20                                    B. Dylan Proctor
                                      Attorneys for Mattel, Inc.

---

same here—especially given that Omni, who is not seeking discovery from Mattel, has no standing to challenge the adequacy of Mattel's withholdings.

[29]  For example, Entry No. 1 in Mattel's Privilege Log, dated September 18, 2007, which Omni attaches, previously read "[d]iscussion of potential litigation matter," see Villar Decl., Ex. C at 52, but now reads "[c]ommunications of legal advice to Board regarding stockholder proposals and potential litigation matter."   See Mattel's Supplemental Privilege Log, dated October 12, 2009, Supp. Proctor Decl., Ex. 3.