# Exhibit 1

RECEIVED

SEP 0 5 2007

1   DALE M. CENDALI (admitted *pro hac vice*)
    DAVID I. HURWITZ (S.B. #174632)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, CA 90071-2899
    Telephone: (213) 430-6000
4   Facsimile: (213) 430-6407
    Email:     dhurwitz@omm.com
5
    PATRICIA GLASER (S.B. #55668)
6   CHRISTENSEN, GLASER, FINK,
    JACOBS, WEIL & SHAPIRO, LLP
7   10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA 90067
8   Telephone: (310) 553-3000
    Facsimile: (310) 557-9815
9
    Attorneys for MGA Entertainment, Inc.

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

                       EASTERN DIVISION

13

14

15   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

16              Plaintiff,                 **MGA ENTERTAINMENT, INC.'S**
                                           **NOTICE OF DEPOSITION OF**
17         v.                              **MATTEL, INC. PURSUANT TO**
                                           **FED. R. CIV. P. 30(b)(6)**
18   MATTEL, INC., a Delaware
     Corporation,

19              Defendant.

20   CONSOLIDATED WITH                     Judge: Hon. Stephen G. Larson

21   MATTEL, INC. v. BRYANT and            Date:              September 19, 2007
                                           Discovery Cut-Off: March 3, 2008
22   MGA ENTERTAINMENT, INC. v.            Pretrial Conference: June 2, 2008
     MATTEL, INC.                          Trial Date:        July 1, 2008

23

24

25

26

27

28

EXHIBIT 1
PAGE 6

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6), MGA Entertainment, Inc. ("MGA") will take the deposition upon oral examination of Mattel, Inc. ("Mattel") regarding the matters described below beginning on September 19, 2007, at 9:30 a.m., and continuing from day to day thereafter, excluding weekends and holidays, or as otherwise agreed by counsel, until completed.

The deposition will be held at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, telephone: (213) 430-6000. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound and visual means. The stenographic recordation method may provide for the instant visual display of the testimony at deposition. MATTEL shall designate one or more officers, directors, managing agents or other PERSONS who consent to testify on MATTEL's behalf, who shall testify as to matters known or reasonably available to MATTEL relating to the topics listed in Attachment A.

Dated:  September 5, 2007

O'MELVENY & MYERS LLP

By _____
David Hurwitz
Attorneys for Plaintiff MGA
Entertainment, Inc.

# ATTACHMENT A

EXHIBIT 1
PAGE 8

# ATTACHMENT A

## DEFINITIONS

1.    "ACCELERACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "AcceleRacerS," "Acceleracers," or "Accelleracers."

2.    "ACTION" shall mean this action consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.,* first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entm't, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

3.    "ADVERTISEMENT" means a commercial message or advertisement in any medium, including without limitation, television, radio, movies, magazines, newspapers, the Internet, signage, and billboards.

4.    "ALIEN RACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Alien Racers."

5.    "BARBIE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Barbie."

6.    "BRATZ" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known

EXHIBIT 1
PAGE 7

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1    as, or sold and marketed under the name, "Bratz."

2        7.    "BRAWER" means Ron Brawer.

3        8.    "BRISBOIS" means Janine Brisbois.

4        9.    "BRYANT" means Carter Bryant.

5        10.    "CARU" shall mean and refer to the Children's Advertising Review

6    Unit of the Council of Better Business Bureaus, Inc. and any of its past or present

7    principals, directors, officers, agents, employees, representatives, consultants,

8    attorneys, entities and persons acting in joint-venture or partnership relationships

9    and all others acting on its behalf, pursuant to its authority or subject to its control.

10        11.    "COMMUNICATIONS" means any disclosure, transfer or exchange

11    of information between two or more PERSONS, whether orally or in writing,

12    including without limitation any conversation or discussion by means of meeting,

13    letter, telephone, note, memorandum, telex, telecopier, electronic mail, or any other

14    electronic or other medium.

15        12.    "COUNTERCLAIM[S]" means Mattel's Second Amended Answer in

16    Case No. 05-02727 and Counterclaims for: 1. Copyright Infringement; 2. Violation

17    of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy to

18    Violate the Racketeer Influenced and Corrupt Organizations Act; 4.

19    Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional

20    Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting

21    Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting

22    Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13.

23    Declaratory Relief filed July 12, 2007.

24        13.    "COUNTER-DEFENDANTS" means MGA, LARIAN, BRYANT,

25    MGA HK, MGA MEXICO, MACHADO, and Does 4 through 10.

26        14.    "DIVA STARZ" means and refers to each image, character, logo, doll,

27    styling head, plush toy, toy, accessory, product, packaging or other thing or matter

28    that is or has ever been manufactured, marketed or sold by MATTEL, or others

EXHIBIT 1
PAGE 10

1    under license by MATTEL, as part of a line of goods or merchandise commonly

2    known as, or sold and marketed under the name, "Diva Starz."

3    15.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

4    Civil Procedure 24, and shall be construed in the broadest sense to mean any and all

5    writings, tangible things and property, of any kind, that are now or that have been in

6    YOUR actual or constructive possession, custody or control, including, but not

7    limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

8    punched, copied, recorded, transcribed, graphic or photographic matter of any kind

9    or nature, in, through, or from which information may be embodied, translated,

10   conveyed or stored, whether an original, a draft or copy, however produced or

11   reproduced, whether sent or received or neither, including, but not limited to, notes,

12   memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

13   inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

14   records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

15   estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

16   telephone records, telegrams, telexes, literature, invoices, contracts, purchase

17   orders, estimates, recordings, transcriptions of recordings, records, books,

18   pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio

19   and digital recordings, television commercials, story boards, website or other spot

20   advertisements, movies, movie trailers, prototypes, samples, products, diaries,

21   calendars, charts, drawings, sketches, messages, photographs and data contained in

22   or accessible through any electronic data processing system, including, but not

23   limited to, computer databases, data sheets, data processing cards, computer files

24   and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche,

25   electronic mail, website and web pages and transcriptions thereof and all other

26   memorializations of any conversations, meetings and conference, by telephone or

27   otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

28   where such copy is not an identical duplicate of the original, whether because of

EXHIBIT 1
PAGE __11__

A-3

1  deletions, underlinings, showing of blind copies, initialing, signatures, receipt

2  stamps, comments, notations, differences in stationery or any other difference or

3  modification of any kind.

4      16.    "ELECTRONIC RECORDS" means electronic documents, data or

5  electronically stored information — including writings, drawings, graphs, charts,

6  photographs, sound recordings, images, and other data or data compilations stored

7  in any medium from which information can be obtained, including but not limited

8  to emails (Outlook, Exchange, etc.), word processing files (Word, WordPerfect,

9  etc.), spreadsheets (Excel, etc.), databases (Access, SQL, etc.), presentations

10  (PowerPoint, etc.), picture files (gif, tif, jpg, etc.), graphic files (DWG, PCX, EPS,

11  high or multi-dimension, etc.), audio files (wav, snd, rmp, etc.), video files (mpg,

12  mov, etc.), or any other compilation of data used by YOU.

13      17.    "FLAVAS" means and refers to each image, character, logo, doll,

14  styling head, plush toy, toy, accessory, product, packaging or other thing or matter

15  that is or has ever been manufactured, marketed or sold by MATTEL, or others

16  under license by MATTEL, as part of a line of goods or merchandise commonly

17  known as, or sold and marketed under the name, "Flavas."

18      18.    "4-EVER BEST FRIENDS" means and refers to each image,

19  character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or

20  other thing or matter that is or has ever been manufactured, marketed or sold by

21  MGA, or others under license by MGA, as part of a line of goods or merchandise

22  commonly known as, or sold and marketed under the name, "4-Ever Best Friends."

23      19.    "INITIAL DISCLOSURE WITNESS(ES)" means and refers to each

24  person listed in YOUR Consolidated Initial Disclosures, served on January 5, 2007.

25      20.    "LARIAN" means MGA's Chief Executive Officer, Isaac Larian.

26      21.    "LITTLE MOMMY" means and refers to each image, character, logo,

27  doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

28  matter that is or has ever been manufactured, marketed or sold by MATTEL, or

EXHIBIT 1
PAGE 12

A-4

1    others under license by MATTEL, as part of a line of goods or merchandise

2    commonly known as, or sold and marketed under the name, "Little Mommy."

3         22.    "MACHADO" means Carlos Gustavo Machado Gomez.

4         23.    "MATTEL," "YOU" and "YOUR" shall mean and refer to defendant

5    Mattel, Inc. and any of its past or present officers, directors, agents, employees,

6    representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

7    predecessors-in-interest and successors-in-interest, entities and persons acting in

8    joint venture or partnership relationships with MATTEL and any others acting on

9    MATTEL's behalf, pursuant to its authority or subject to its control.

10         24.    "MGA" shall mean and refer to plaintiff MGA Entertainment, Inc. and

11    any of its past or present officers, directors, agents, employees, representatives,

12    consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

13    interest (including ABC International Traders, Inc. and Micro Games of America,

14    Inc.) and successors-in-interest, entities and persons acting in joint venture or

15    partnership relationships with MGA and any others acting on MGA's behalf,

16    pursuant to its authority or subject to its control.

17         25.    MGA HK shall mean counter-defendant MGA Entertainment (HK)

18    Ltd. and any of its past or present officers, managers, agents, employees,

19    representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

20    and successors-in-interest, entities and persons acting in joint venture or partnership

21    relationships with MGA HK and any others acting on MGA HK's behalf, pursuant

22    to its authority or subject to its control.

23         26.    MGA MEXICO shall mean counter-defendant MGAE de Mexico,

24    S.R.L. de C.V. and any of its past or present officers, managers, agents, employees,

25    representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

26    and successors-in-interest, entities and persons acting in joint venture or partnership

27    relationships with MGA MEXICO and any others acting on MGA MEXICO's

28    behalf, pursuant to its authority or subject to its control.

**EXHIBIT 1**
**PAGE _13_**

27.   "MOMMY'S LITTLE…" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the names beginning with, "Mommy's Little…," including but not limited to the phrase "Mommy's Little Patient."

28.   "MY SCENE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "My Scene."

29.   "MY SCENE THEMES" means and refers to the following themes for MY SCENE products: "Chillin Out!," "Night on the Town," "Jammin' in Jamaica," and "My Bling Bling."

30.   "NPD" shall mean and refer to The NPD Group, Inc. and NPD Funworld, and any of their past or present principals, directors, officers, agents, employees, representatives, consultants, attorneys, entities and persons acting in joint-venture or partnership relationships and all others acting on their behalf, pursuant to its authority or subject to its control.

31.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

32.   "POLLY POCKET" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

A-6

1    merchandise commonly known as, or sold and marketed under the name, "Polly
2    Pocket."
3        33.    The terms "RELATE TO" and "REFER TO" should each be construed
4    in the broadest possible sense to mean concerning, consisting of, referring to,
5    describing, discussing, constituting, evidencing, containing, reflecting, mentioning,
6    pertaining to, citing, summarizing, analyzing or bearing any logical or factual
7    connection with the matter discussed.
8        34.    "RELEVANT TIME PERIOD" means the period from January 1,
9    1998 through the present.
10        35.    "TIA" shall mean and refer to the Toy Industry Association, Inc., and
11    any of its past or present principals, directors, officers, agents, employees,
12    representatives, consultants, attorneys, entities and persons acting in joint-venture
13    or partnership relationships and all others acting on its behalf, pursuant to its
14    authority or subject to its control.
15        36.    "TREANTAFELLES" means Paula (Treantafelles) Garcia, currently
16    MGA's Vice President of Product Design and Development.
17        37.    "TRUEBA" means Mariana Trueba Alamada.
18        38.    "VARGAS" means Pablo Vargas San Jose.
19        39.    "WEE 3 FRIENDS" means and refers to each image, character, logo,
20    doll, styling head, plush toy, toy, accessory, product, packaging or other thing or
21    matter that is or has ever been manufactured, marketed or sold by MATTEL, or
22    others under license by MATTEL, as part of a line of goods or merchandise
23    commonly known as, or sold and marketed under the name, "Wee 3 Friends."
24        40.    "WSJ REPORTERS" means and refers to any current or former
25    reporters for the *Wall Street Journal* (including, but not limited to, Maureen
26    Tkacik) and any of their agents, assistants, investigators, employees, or
27    representatives.
28        41.    "WSJ STATEMENTS" means and refers to any and all of the

EXHIBIT 1
PAGE 15

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

following statements that appeared in the *Wall Street Journal* article, dated July 18, 2003, entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd":

> ....Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998....

> Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers. But most Barbie designers had seen the prototypes, his former colleagues say. ...

> The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project. But the Bratz's oversized heads -- with their pursed lips and cartoonish eyes -- are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

> Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. ... She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet -- they were all the same" as the Bratz.

> The Mattel dolls were scrapped in testing, current and former designers say, because Mattel had strict quotas that allowed only one "flanker brand" -- that is, a brand that would compete with Barbie for shelf space -- on the market at a time. At the time, Mattel chose a product called "What's Her Face" -- a doll with a blank face on which kids could draw expressions. ...

## EXAMINATION TOPICS

1.     MGA's and MGA MEXICO's alleged theft and use of, or direction of others to steal and use on MGA's or MGA MEXICO's behalf, MATTEL's trade secrets in Mexico as alleged in paragraphs 37-54 of YOUR COUNTERCLAIMS, including but not limited to (a) any trade secrets or confidential or proprietary information of MATTEL stolen or used by MGA or MGA MEXICO; (b) MGA and LARIAN's alleged enticement and direction of MACHADO, VARGAS or TRUEBA to steal MATTEL's trade secrets; (c) the specific DOCUMENTS and data allegedly copied, taken, accessed or modified by MACHADO, VARGAS, or TRUEBA; (d) YOUR policies and procedures for protecting the confidentiality of

EXHIBIT 1
PAGE

1  the DOCUMENTS and data YOU contend were improperly taken by MACHADO,

2  TRUEBA or VARGAS; (e) the factual basis of YOUR information and belief that

3  MACHADO, TRUEBA or VARGAS delivered an internal line list to LARIAN or

4  another MGA officer as alleged in paragraph 49 of YOUR COUNTERCLAIMS;

5  (f) YOUR knowledge of any use of the allegedly misappropriated information by

6  MGA for unfair advantage in the United States and Mexico as alleged in paragraph

7  50 of YOUR COUNTERCLAIMS; (g) alleged efforts by MACHADO, TRUEBA

8  and VARGAS to conceal their alleged theft as alleged in paragraph 51 of YOUR

9  COUNTERCLAIMS; (h) YOUR investigation of facts and circumstances

10  concerning the departure of MACHADO, VARGAS or TRUEBA from MATTEL

11  and the alleged theft and use, including any proof of actual use by them or MGA

12  MEXICO, of MATTEL trade secrets in Mexico; (i) when YOU first learned the

13  facts and circumstances alleged in paragraphs 37-54 of YOUR

14  COUNTERCLAIMS; (j) YOUR and YOUR agents' and attorneys' roles in,

15  participation in or knowledge of any and all investigations by Mexican government

16  authorities as alleged in paragraph 53 of YOUR COUNTERCLAIMS; and (n)

17  YOUR knowledge of COMMUNICATIONS between MGA, LARIAN, or other

18  MGA or MGA MEXICO employees or agents on the one hand and MACHADO,

19  VARGAS or TRUEBA on the other hand, including but not limited to the

20  recruitment and hiring MACHADO, VARGAS or TRUEBA and the use of "Plot

21  04" email account.

22        2.       MGA's alleged hiring of BRAWER to facilitate its theft and use,

23  including any proof of actual use, of MATTEL's business methods and practices as

24  alleged in paragraphs 55-69 of YOUR COUNTERCLAIMS, including but not

25  limited to (a) the specific confidential and proprietary information YOU contend

26  that BRAWER took from MATTEL as alleged in 68-69 of YOUR

27  COUNTERCLAIMS; (b) BRAWER's Employee Invention and Trade Secret

28  Agreement with Tyco; (c) BRAWER's access to confidential information about

1   Mattel and its business; (d) YOUR COMMUNICATIONS with BRAWER

2   concerning MATTEL's Code of Conduct and protecting MATTEL's confidential

3   and proprietary business information; (e) the contents of the cardboard box

4   allegedly carried by BRAWER out of MATTEL's offices on September 15, 2004

5   as alleged in paragraph 62 of YOUR COUNTERCLAIMS; (f) the taking by

6   BRAWER of the 2004 sales plan for one of MATTEL's significant customers as

7   alleged in paragraph 62 of YOUR COUNTERCLAIMS; (g) YOUR

8   COMMUNICATIONS with BRAWER during his exit interview; (h) when YOU

9   first learned the facts and circumstances alleged in paragraphs 55-69 of YOUR

10  COUNTERCLAIMS; (i) YOUR investigation of facts and circumstances

11  concerning BRAWER's departure from MATTEL and BRAWER's alleged theft

12  and use of MATTEL's highly valuable business methods and practices; and (j)

13  BRAWER's alleged targeting of and COMMUNICATIONS with MATTEL

14  employees in an effort to induce them to join MGA and misappropriate confidential

15  MATTEL information as alleged in paragraph 69 of YOUR COUNTERCLAIMS,

16  including the IDENTITIES of the MATTEL employees contacted by BRAWER

17  and YOUR knowledge of the substance of those COMMUNICATIONS.

18      3.      MGA's alleged theft and actual use of, or direction of others to steal

19  and use on MGA's behalf, MATTEL's trade secrets in Canada as alleged in

20  paragraphs 70-76 of YOUR COUNTERCLAIMS, including (a) the specific

21  DOCUMENTS and data allegedly copied, taken, accessed or modified by

22  BRISBOIS; (b) when YOU first learned the facts and circumstances alleged in

23  paragraphs 70-76 of YOUR COUNTERCLAIMS; and (c) YOUR investigation of

24  facts and circumstances concerning BRISBOIS's departure from MATTEL and

25  alleged theft and use of, including any proof of actual use by MGA of, MATTEL

26  trade secrets in Canada, including MATTEL's participation in any investigation by

27  Canadian government authorities.

28

**EXHIBIT 1**
**PAGE _18_**
MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

4.   Any other instances where YOU contend that MGA misappropriated or attempted to misappropriate MATTEL trade secrets for the benefit of MGA, or persuaded MATTEL employees to join MGA to misappropriate MATTEL trade secrets as alleged in paragraph 77 of YOUR COUNTERCLAIMS, including (a) the IDENTITY of all former MATTEL employees who allegedly copied, took, accessed, modified or actually used MATTEL confidential information; (b) confidential information or trade secrets allegedly copied and taken from MATTEL; (c) MATTEL confidential information or trade secrets allegedly disclosed to and used by MGA; (d) when each theft occurred; (e) when MATTEL first learned of each theft or attempted theft; and (f) what MATTEL did in response to each theft or attempted theft.

5.   The IDENTITY, origin, source, meaning and authenticity of all materials YOU contend were MATTEL trade secrets improperly taken by employees of MGA, including M0019162-M0032318, M0059836-M0059836, M0074952-M0074961, and M0075253-M0076446 and YOUR policies and procedures for protecting the confidentiality of the DOCUMENTS YOU contend were MATTEL trade secrets improperly taken by employees of MGA.

6.   LARIAN's alleged misrepresentations to retailers about MATTEL's and MGA's products, as alleged in paragraphs 78-81 of YOUR COUNTERCLAIMS, including (a) the customers and retailers to whom YOU allege LARIAN made false representations; (b) the retailer who cancelled and subsequently reinstated its order for 75,000 units of MY SCENE BLING BLING product; (c) the alleged false and misleading press releases; and (d) YOUR COMMUNICATIONS with any retailers concerning the alleged statements by LARIAN.

7.   YOUR knowledge of all acts YOU contend are the predicate acts constituting a pattern of racketeering activity in violation of RICO as alleged in

A-11

1 | paragraph 93 of YOUR COUNTERCLAIMS and Exhibit C to YOUR
2 | COUNTERCLAIMS.

3 |     8.    Any injury or damages suffered by MATTEL resulting from the acts
4 | alleged in MATTEL's COUNTERCLAIMS.

5 |     9.    MGA's alleged theft of "BRATZ" from YOU, including but not
6 | limited to (a) MGA's showing of BRATZ prototypes or products to focus groups
7 | and retailers in November 2000 as alleged in paragraph 29 of YOUR
8 | COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding,
9 | and financing of BRYANT to develop BRATZ while he was a MATTEL employee
10 | as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and
11 | MGA's alleged concealment of facts that prevented MATTEL from discovering
12 | that MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35
13 | of YOUR COUNTERCLAIMS.

14 |     10.    COMMUNICATIONS between YOU (including YOUR agents and
15 | attorneys) and law enforcement authorities in Mexico, Canada or the United States,
16 | including but not limited to the United States Attorney's Office, the Department of
17 | Justice and any national, federal, regional, state, provincial, or local authorities,
18 | concerning any of the allegations in YOUR COUNTERCLAIMS or any other
19 | alleged taking of confidential MATTEL information by MGA or persons currently
20 | or formerly employed by MGA, including MACHADO, VARGAS, TRUEBA,
21 | BRISBOIS, and Jorge Castilla, and DOCUMENTS YOU or YOUR agents or
22 | attorneys provided to such law enforcement authorities.

23 |     11.    MATTEL's knowledge or information about the involvement of
24 | BRYANT or any person then employed by MATTEL (directly or via a temporary
25 | employment agency), in the origin, creation, design or and development of BRATZ,
26 | including, but not limited to (a) when MATTEL first learned about BRYANT's
27 | involvement with the origin and development of BRATZ; and (b) who at MATTEL
28 | knew about the involvement of BRYANT or any person then employed

1  MATTEL with the origin, creation, design or development of BRATZ, and when

2  and how each individual came to possess such knowledge or information.

3      12.   The use of any MATTEL materials, property or resources by

4  BRYANT or any person then employed by MATTEL (directly or via a temporary

5  employment agency) in connection with creation, design, or development of the

6  original or first wave of BRATZ fashion dolls and accessories introduced in the

7  U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly

8  involved in putting together the three dimensional dummy used by BRYANT in

9  meeting with MGA; and (b) the specific MATTEL materials, property or resources

10  allegedly used in putting together the three dimensional dummy used by BRYANT

11  in meeting with MGA.

12      13.   MATTEL's knowledge about BRYANT's performance of services for

13  MGA, including, without limitation (a) when and how MATTEL first learned about

14  BRYANT's performance of any services for MGA; (b) when and how MATTEL

15  first learned about the first instance of BRYANT's performance of services for

16  MGA; and (c) who at MATTEL knew about BRYANT's performance of any

17  services for MGA.

18      14.   MATTEL's knowledge about BRYANT's contacts with MGA,

19  including, without limitation (a) when and how MATTEL first learned of any

20  contacts BRYANT had with MGA; (b) when and how MATTEL first learned of the

21  first contact BRYANT had with MGA; and (c) who at MATTEL knew about

22  BRYANT's contacts with MGA.

23      15.   MATTEL's knowledge of BRYANT's contract with MGA, including

24  without limitation (a) when, how and who at MATTEL first became aware of its

25  existence; (b) when MATTEL first became aware of its terms; and (c) when

26  MATTEL or its agents first obtained a copy of the contract.

27      16.   The WSJ STATEMENTS, including, but not limited to (a) YOUR

28  knowledge of who made the WSJ STATEMENTS, or provided any of the

EXHIBIT 1
PAGE 21

1  information contained in the WSJ STATEMENTS, to any WSJ REPORTERS;

2  (b) the identity of all fashion doll or doll designers who left MATTEL in 2001;

3  (c) any efforts by YOU to facilitate the publication of the WSJ STATEMENTS,

4  including, but not limited to, assisting a WSJ REPORTER to obtain the WSJ

5  STATEMENTS or the information contained in the WSJ STATEMENTS, to

6  identify people for WSJ REPORTERS to contact and interview, and to verify the

7  WSJ STATEMENTS or the information contained in the WSJ STATEMENTS;

8  (d) when YOU first learned or became aware of the WSJ STATEMENTS;

9  (e) YOUR response or reaction to the WSJ STATEMENTS after YOU first learned

10  or became aware of them; (f) any actions taken by YOU (including, but not limited

11  to, any investigation or interviews) in response to the WSJ STATEMENTS; and

12  (g) COMMUNICATIONS among MATTEL employees regarding the WSJ

13  STATEMENTS.

14        17.    MATTEL's internal and external investigations of the facts related to

15  this ACTION, including, but not limited to (a) investigations of or concerning

16  BRYANT, Richard Irmen, BRYANT's family, LARIAN, LARIAN's family,

17  MGA, MGA's current and former officers and employees, BRAWER, Farhad

18  (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel,

19  Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park,

20  and Jahangir Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's

21  family, LARIAN, LARIAN's family, MGA, MGA's current and former officers

22  and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin

23  Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica

24  Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates

25  and times of surveillance, and the identities of the persons who conducted such

26  surveillance; (c) written or recorded statements; (d) the origin, source, meaning and

27  authenticity of DOCUMENTS produced in this ACTION from YOUR Global

28  Security department files.

**EXHIBIT 1**
**PAGE 22**

A-14

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

18.   YOUR policies and practices concerning interviews and investigations of employees who leave MATTEL to work for competitors, including but not limited to MGA, and YOUR knowledge of the reason(s) why each of your employees, including but not limited to the following former employees or contractors ceased working for MATTEL or a MATTEL subsidiary to work for MGA or an MGA subsidiary as employees or contractors, including what YOU learned through exit interviews: BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Eve Bennett; Kami Gilmour; Sarah Halpern; Margaret Leahy; Veronica Marlowe; Maureen Mullen; Amy Myer; Anna Rhee; TREANTAFELLES; Odette Vandenburg; Mercedeh Ward; Daniel Cooney; Janet Han; Steve Chang; Lui Domingo; Pui Pootipong; Ellen Komatsu; Shirin Salemnia; Joe Feldman; Ricardo Abundis; Ian Bate; Nanette Black; John E. Bloodworth III; Kevin Bloomfield; Jorge Castilla; Suzy Chang; Steve Cheng; Gerry Cody Jr.; Nick Contreras; Maria De La Cruz; Karen Dixon; Greg Paul Dominguez; Craig Forrest; Mia Garcia; Eduardo Gonzalez; Tracy Hall; Melody Hansen; Todd Hansen; Jill Hatch; Michael Hinh; Janet Hsu; Alice Kao; Ken Kaufman; Pamela Keller; Alejandro Gabriel Keossian; Joyce Kim (Lee); Young Ran Kim; Kristen Kirst; Jill Larson; Adrian (Chi Shing) Law; Bo Lumabao; Dorothy Marks; Raymond John Martin; Aye Aye Min; Yumi Nakamura; Marvin Natareno; Christine Nigoghossian; Amelia Ivy Arafiles Palijo; Danny Pestonji; Denise Phelan; Michael Pickard; Ronald Rae; Leland Ratleff; Desiree Elisabeth Ronquillo; Micaela Ruiz; Natasha Sasic-Koetsier; Maria Elena Salazar; Harvey Scott; Steffen J. Smith; Jier Su; Dennis Soai; Marla Thompson; Chau Ngoc Tran; Esteban Umana; Gail Upshaw; Chang-Chin Wang; Lance Ward; Dawn Whittaker; Jenny Wong; Troy Augborne; Carter Bryant; Reyna Zetino; Daryoush Aryapour; Janet Blaser; Mari Joanne Bower Violette; Lilia Brown; Gabriella Burlando; Fabienne Chonavel; Christine Dailey; Steve Feicht; Christopher Hardouin; Martin Hitch; Jeff Ho; James Huntley; Randi Kagan; Andreas Koch; Lyn Carol Mayer; Susan McBride; Frank Mils; Xuanian Nguyen;

EXHIBIT 1
PAGE 23

A-15

1   Gary Thomas O'Brien; Jose Otero; Dan Owen; Nicolletta Parasole; Ana Mancia

2   Parkinson; Roger Rambeau; Wendy Reed; Scot Anthony Reyes; Lon Ross; Dena

3   Schwartz; Brandi Shaver; Holly Stinnett; Lisa Tawil; Gord Terry; Joseph Whitaker;

4   Patrick Williams; Tong Wong; Cherrise Wright; Dave Zbojniewicz; Lourdes

5   Aguilar; Juan Carlos Virrueta Camacho; Alejandro Gurza Romay; Lidia Ivete

6   Montero Leyva; Laura Ochoa; Andrea Ramirez.

7       19.   BRYANT's relationship or contacts with TREANTAFELLES during

8   the time they were both employed at MATTEL, including, but not limited to: (a)

9   YOUR knowledge of whether BRYANT's workspace was next to or near

10  TREANTAFELLES' workspace, and, if so, exactly when and for how long; (b)

11  YOUR knowledge of whether BRYANT and TREANTAFELLES worked together

12  on any projects for MATTEL and, if so, during what time period(s) and specific

13  projects; (c) YOUR knowledge of whether BRYANT and TREANTAFELLES

14  were social acquaintances and, if so, during what time period(s); and (d) any

15  evidence that supports YOUR contention that BRYANT and TREANTAFELLES

16  knew each other during the time they were both employed at MATTEL (including,

17  but not limited to, that they had workspaces near or next to each other, worked on

18  projects together, and/or were social acquaintances), including, but not limited to,

19  any documentary evidence and potential witnesses.

20      20.   The floor plan and seating chart for MATTEL's offices in El Segundo,

21  California in 1999 and 2000, specifically the Design Center and the work spaces of

22  BRYANT, including the origin, source, authenticity, meaning and use of

23  DOCUMENTS produced by MATTEL as M13361-M13368, including M13365A,

24  and the physical proximity of the work spaces of BRYANT and other MATTEL

25  current or former employees, contract workers or PERSONS working for or at

26  MATTEL, including without limitation TREANTAFELLES, Rene Pasko, Lily

27  Martinez, Kislap Ongchangko, Joni Pratt, Barbara Miller, Maureen Mullen and any

28  other PERSON MATTEL claims had confidential information accessed by Bryant

EXHIBIT 1
PAGE 21

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1  or MGA (including any current or former employees who were employees, contract

2  workers or vendors of MATTEL at the relevant time).

3      21.    YOUR COMMUNICATIONS and COMMUNICATIONS made on

4  YOUR behalf with Anna Rhee that refer or relate to BRATZ, MGA, BRYANT or

5  Elise Cloonan, including the COMMUNICATIONS with Anna Rhee's counsel and

6  YOUR contacts with Anna Rhee, including but not limited to when she began

7  working for or with MATTEL, what projects she worked on for MATTEL and the

8  dates of such work, and payments made by MATTEL to her.

9      22.    YOUR COMMUNICATIONS and COMMUNICATIONS made on

10  YOUR behalf with Steve Linker that refer or relate to BRATZ, MGA, BRYANT,

11  this ACTION or the asserted or potential allegations or defenses therein, any

12  witnesses in this ACTION, and DOCUMENTS that refer or pertain to any of the

13  above subjects, and YOUR contacts with Steve Linker, including but not limited to

14  when he began working for or with MATTEL, the projects on which he worked for

15  MATTEL and the dates of such work, and payments made by MATTEL to him,

16  and DOCUMENTS that refer or pertain to any of the above subjects.

17      23.    YOUR COMMUNICATIONS and COMMUNICATIONS made on

18  YOUR behalf with Matt Bousquette, Elise Cloonan, David Dees, Sara Halpern,

19  Margaret Hatch aka Margaret Leahy, Rachel Harris, Liz Hogan, Andreas Koch,

20  Steve Linker, Kris Lynch, Veronica Marlowe, Len Mazzocco, Maureen Mullen

21  Chianese, Billy Ragsdale, Wendy Ragsdale, Brian Schmidt, Cassidy Park, Pam

22  Peretz, Jesse Ramirez and Ivy Ross, or any current or former MGA employee or

23  person you know or believe to be a current or former MGA freelancer, where the

24  COMMUNICATIONS refer or relate to BRATZ, MGA, BRYANT, this ACTION

25  or the asserted or potential allegations or defenses therein, any witnesses in this

26  ACTION, and DOCUMENTS that refer or pertain to any of the above subjects.

27

28

**EXHIBIT 1**
**PAGE 25**
MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

24.   The process(es) by which MATTEL evaluates and approves ideas for new fashion dolls, including, but not limited to, any changes to such process(es) after BRATZ dolls were released in 2001.

25.   MATTEL'S hiring and recruiting practices, including its practices of recruiting and hiring PERSONS who have been employed by MATTEL competitors, including, but not limited to, MGA, Hasbro, Leap Frog, Jakks Pacific, Maui Toys, Malibu Toys, Galoob Toys, the number of such people MATTEL has hired since 1998, and YOUR efforts to ensure that new employees did not bring confidential information from their former employers.

26.   For each and every agreement requested by MATTEL concerning confidentiality, ownership of intellectual property, and/or any post-employment restrictions or obligations to MATTEL, the number, percentage, and identity of MATTEL employees who have refused to sign such agreement(s) since 1998.

27.   The circumstances under which BRYANT testified in September 2003 in the lawsuit brought by Gunther Wahl against MATTEL, including when and what any individual, including MATTEL'S in-house and outside counsel with direct or supervisory responsibility for this litigation, knew of BRYANT'S anticipated appearance and testimony and the role that appearance and testimony played in the timing of MATTEL'S lawsuit against BRYANT.

28.   The identity of, and the sales, revenues, and profits of, any MATTEL product(s) MATTEL contends have been impacted by BRATZ, including, but not limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE, and any accessories, and licensed products, from 1990 to the present.

29.   The impact BRATZ has had, if any, on the sales and sales revenues of any Mattel product(s), including but not limited to BARBIE, DIVA STARZ, FLAVAS, any accessories and licensed products, and any product not listed herein that Mattel claims have been impacted by BRATZ.

**EXHIBIT 1**
**PAGE 26**
A-18

30.   The net worth or value of MATTEL'S "BARBIE" brand, including, but not limited to, its "My Scene" "Barbie" line of products, from 1990 to the present.

31.   The INITIAL DISCLOSURE WITNESSES, including, but not limited to:  (a) the specific knowledge or information relevant to YOUR allegations and defenses that YOU believe each INITIAL DISCLOSURE WITNESS possesses; (b) YOUR COMMUNICATIONS with each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures; (c) YOUR COMMUNICATIONS with any PERSON concerning each INITIAL DISCLOSURE WITNESS' knowledge of the subject matters YOU identified in YOUR Consolidated Initial Disclosures; and (d) any DOCUMENTS pertaining to information known by each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures.

32.   YOUR awareness of and response to "BRATZ," including, but not limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first released in 2001; (b) when and why YOU first began to consider "BRATZ" a competitive threat to YOUR business; (c) YOUR strategies and efforts to compete with "BRATZ" since its release in 2001, including, but not limited to, (i) the creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the origin, source, meaning and authenticity of the "Bratz Brief" produced in this ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source, meaning and authenticity of the "WWBD: What Would Brawer Do?" document produced at M0047508; (vii) the origin, source, meaning and authenticity of notes produced at PMH 2273, 2379-83, 1303-07, 2122-27, 2242-59, 2147-49 and any meeting(s) at which these notes were taken; and (viii) the origin, source, meaning

1   and authenticity of Board of Directors Update, dated September 2005, produced at

2   M0093291-93314; and (d) the extent to which "BRATZ" products are present at

3   YOUR offices, including, but not limited to, (i) the current and former MATTEL

4   employees who have or have had "BRATZ" products in their offices or

5   workspaces; and (ii) whether or not YOU have a room or area in YOUR offices

6   dedicated to "BRATZ" products.

7       33.   "MY SCENE," including, but not limited to: (a) the origins or sources

8   of inspiration of the "MY SCENE" female fashion dolls and packaging, including,

9   without limitation, (i) the purpose for which "MY SCENE" fashion dolls and

10   packaging were created; and (ii) the extent to which "BRATZ" fashion dolls and

11   packaging were an inspiration or factor in the development of "MY SCENE"

12   fashion dolls and packaging; (b) any changes to the appearance of the "MY

13   SCENE" female fashion dolls and packaging (including, but not limited to, any

14   changes to the head sculpts, facial features, or face painting) since their initial

15   release; (c) "MyScene Platypus" and the origin, source, meaning and authenticity of

16   the document produced at M0086367-M0086428; (d) the origins or sources of

17   inspiration for the MY SCENE THEMES and the extent to which any "BRATZ"

18   themes were an inspiration or factor in their development; (e) the origins or sources

19   of inspiration for the "MY SCENE" styling heads and the extent to which any

20   "BRATZ" "Funky Fashion Makeover Heads" were an inspiration or factor in their

21   development; (f) the origins or sources of inspiration for the "MY SCENE" plush

22   pets and packaging and the extent to which any "BRATZ PETZ" and packaging

23   was an inspiration or factor in their development; (g) marketing strategies and

24   consumer demographics for "MY SCENE"; and (h) the selection, approval process,

25   design and development of "MY SCENE" products and themes (including timing

26   and release dates).

27       34.   "WEE 3 FRIENDS," including, but not limited to (a) the origins or

28   sources of inspiration of "WEE 3 FRIENDS" and the extent to which EXHIBIT R

PAGE 28

A-20

1  BEST FRIENDS" was an inspiration or factor in the development; and

2  (b) marketing strategies and consumer demographics for "WEE 3 FRIENDS"; and

3  (c) the selection, approval process, design and development of "WEE 3 FRIENDS"

4  (including timing and release dates).

5      35.   "LITTLE MOMMY," including but not limited to (a) the origins or

6  sources of inspiration of "LITTLE MOMMY" and the extent to which

7  "MOMMY'S LITTLE…" was an inspiration or factor in the development of

8  "LITTLE MOMMY"; (b) marketing strategies and consumer demographics for

9  "LITTLE MOMMY"; and (c) the selection, approval process, design and

10 development of "LITTLE MOMMY" (including timing and release dates).

11     36.   "ACCELERACERS," including, but not limited to (a) the origins or

12 sources of inspiration of "ACCELERACERS" and whether "ALIEN RACERS"

13 was a source of inspiration for or factor in the development of ACCELERACERS;

14 (b) YOUR decision re-brand one of YOUR "Hot Wheels" toy lines

15 "ACCELERACERS"; (c) marketing strategies and consumer demographics for

16 "ACCELERACERS"; and (d) the selection, approval process, design and

17 development of "ACCELERACERS" (including timing and release dates).

18     37.   "DIVA STARZ," including, but not limited to (a) the origins or

19 sources of inspiration of YOUR tag line "Do you have a passion for fashion?" and

20 the extent to which MGA's tag line "The Girls with a Passion for Fashion" was an

21 inspiration or factor; (b) the origins or sources of inspiration of the redesign of

22 "DIVA STARZ" fashion dolls including, without limitation, (i) the purpose for

23 which the redesigned "DIVA STARZ" products were created; and (ii) the extent to

24 which "BRATZ" was an inspiration or factor in the development of the redesigned

25 "DIVA STARZ"; (c) marketing strategies and consumer demographics for "DIVA

26 STARZ"; and (d) the selection, approval process, design and development of

27 "DIVA STARZ" (including timing and release dates).

28     38.   "FLAVAS," including, but not limited to (a) the origins or sources of

EXHIBIT 1
PAGE 27

A-21

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1 inspiration of "FLAVAS" and the extent to which "BRATZ" was an inspiration or
2 factor in the development of "FLAVAS"; (b) marketing strategies and consumer
3 demographics for "FLAVAS"; and (c) the selection, approval process, design and
4 development of "FLAVAS" (including timing and release dates).

5     39.    To the extent not covered by any of the topics above, the identity of
6 any product, project or concept that YOU contend MGA copied or infringed or
7 about which YOU contend that MGA misappropriated MATTEL's trade secrets or
8 other confidential information, and, for each such product, project or concept, (a)
9 all facts concerning its origin, creation, design and development; and (b) any facts
10 underlying YOUR claim or contention that MGA copied or infringed such product,
11 project or concept; and (c) MGA's use of MATTEL'S intellectual property,
12 confidential information or trade secret information in connection therewith.

13     40.    MATTEL's advertising, promotion, and licensing of MY SCENE,
14 BARBIE and DIVA STARZ, including but not limited to any direction or
15 information provided by or from any MATTEL employee to any MATTEL
16 advertising firm, public relations or publicity firm, or licensee concerning any
17 MGA products or advertising.

18     41.    The names, locations, job descriptions and length of employment of
19 current and former MATTEL employees and independent contractors responsible
20 for, who contributed to or who were involved in any aspect of the creation,
21 marketing, sales, design, and development of "MY SCENE," "WEE 3 FRIENDS,"
22 "LITTLE MOMMY," "ACCELERACERS," "DIVA STARZ," and "FLAVAS."

23     42.    Legal actions and claims regarding "MY SCENE" and/or "DIVA
24 STARZ," including, without limitation, any lawsuits, claims, or cease and desist
25 letters that (a) YOU have asserted against any PERSON regarding such PERSON's
26 alleged infringement of "MY SCENE" or "DIVA STARZ" or (b) any PERSON has
27 asserted against YOU that "MY SCENE" or "DIVA STARZ" infringes such
28 PERSON's intellectual property rights.

EXHIBIT 1
PAGE 30

A-22

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

43.     YOUR claimed intellectual property rights in "MY SCENE" and "DIVA STARZ," including, without limitation, (a) any applications for registration and registration for copyright, patent, trademark, or any other right sought or obtained by YOU, and any COMMUNICATIONS pertaining thereto; and (b) any trademark searches performed in connection with the selection of the "MY SCENE" or "DIVA STARZ" names.

44.     Any evidence of confusion among consumers, retailers, licensees, suppliers, wholesalers, members of the press, or any other PERSONS between any MATTEL product or packaging on the one hand, and any MGA product or packaging, including, but not limited, to "MY SCENE" and "BRATZ" on the other, and the origin, source, meaning and authenticity the document produced at M0079817-39.

45.     Any statements or comments by any PERSON that a MATTEL product, packaging or ADVERTISEMENT is a copy or "knock off" of an MGA product, packaging or ADVERTISEMENT, including, but not limited, to such comments reflected in YOUR Wal-Mart Fall 2004 Toy Fair Recap (M0080055-65).

46.     Efforts by MATTEL to copy and imitate MGA's ADVERTISEMENTS, including, without limitation, the extent to which ADVERTISEMENTS for "BRATZ" or "ALIEN RACERS" were an inspiration or factor in the development of ADVERTISEMENTS for "MY SCENE" or "ACCELERACERS."

47.     Other than those previously filed and served in this ACTION or in which MGA's counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER or RELATE TO DIVA STARZ, MY SCENE, FLAVAS, and BARBIE that REFER OR RELATE TO the RELEVANT TIME PERIOD (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

**EXHIBIT 1**
**PAGE 31**
MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

48. All COMMUNICATIONS between MATTEL on the one hand and present or former employees or contractors of MGA on the other.

49. The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO DIVA STARZ, MY SCENE, FLAVAS, BARBIE, ACCELERACERS, LITTLE MOMMY, WEE 3 FRIENDS and POLLY POCKET, or their designs RELATING thereto, sought, made or obtained by, for or on behalf of YOU, including without limitation COMMUNICATIONS pertaining thereto.

50. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with distributors and retailers (including, but not limited to, Wal-Mart, Target, Toys 'R Us, Zellers, Bandai, Jumbo, and Woolworth U.K.), including, but not limited to (a) pressuring or influencing distributors or retailers not buy, sell or distribute "BRATZ" or other MGA products, to reduce shelf and display space for "BRATZ" or other MGA products, or to place "BRATZ" or other MGA products in unfavorable locations at retail outlets; and (b) COMMUNICATIONS with retailers or distributors RELATING TO whether MGA is providing below-market pricing or discontinuing a product line.

51. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere, modify, tamper with or alter MGA's retail product displays, including, but not limited to, COMMUNICATIONS between YOU (including, but not limited to, Erika Ashbrook and Connie Hibbert) and any current or former employee or representative of Wal-Mart (including, but not limited to, Heather Hocut and Barb Lubestine) regarding interfering, modifying, tampering with or altering MGA's retail product displays at Wal-Mart.

52. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with a licensee or licensing agent (including, but not limited to, Smith & Brooks, Zeon, Gemma International,

1  MV Sports, Hart Concepts, Random House, Egmont, Euromic, Character Licensing

2  and Marketing, JNH Israel, SuperRTL, Candide, and Rose Art Industries) and/or to

3  decline to renew a licensing agreement based in whole or in part on that licensee's

4  or licensing agent's relationship (or proposed relationship) with MGA.

5       53.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

6  worldwide to interfere with or inhibit MGA's business with suppliers, factories, or

7  manufacturing facilities, including, but not limited to, Asahi Kasei Life & Living

8  Corporation, L.A.M.P. S.p.A. (a.k.a. Filo), Jetta Company Ltd., Early Light

9  Industrial Co. Ltd., Kaneka Corp., and Universal Commerce Corporation Limited.

10       54.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

11  worldwide to interfere with or inhibit MGA's business, including, without

12  limitation (a) any threats or attempts to reduce advertising spending if a publication

13  reported on MGA, "BRATZ" or other MGA products; (b) any threats, directions or

14  instructions to market research firms (including, but not limited to,

15  ConsumerQuest) not to work with MGA; (c) any efforts to prevent or influence

16  former MATTEL employees or independent contractors (including, but not limited

17  to, Charlotte Broussard, Margo Eldridge, and Andrew Gallerani) from or against

18  working for, with, or on behalf of MGA; (d) COMMUNICATIONS with

19  Nickelodeon regarding MGA's proposed sponsorship of the "Kids' Choice

20  Awards" and MGA's ability to advertise on Nickelodeon; (e) YOUR efforts to

21  pressure or influence 4Kids Entertainment to cancel or discontinue "Bratz"

22  programming; (f) YOUR efforts to interfere with MGA's investment in or

23  acquisition of Zapf Creation AG; and (g) YOUR plans, attempts, efforts or intent to

24  interfere with business dealings or contractual relations between MGA and Smoby

25  Group, including, but not limited to, YOUR plans to acquire the "Majorette" brand.

26       55.    YOUR COMMUNICATIONS with any PERSON, including, but not

27  limited to, any supplier, factory manufacturer, distributor, retailer, licensee,

28  licensing agent, market research firm, and independent contractor, REFERRING

1   OR RELATING TO such PERSON'S business with MGA, including, but not

2   limited to, any efforts by MATTEL to persuade that PERSON (a) to cease doing

3   business with MGA; (b) to limit or reduce its business with MGA; or (c) increase

4   such PERSON'S business with MATTEL at the expense of that PERSON'S

5   business with MGA.

6       56.    YOUR knowledge of MGA's non-public information (regardless of

7   the source) and YOUR efforts worldwide to monitor, "spy on" or gain knowledge

8   of MGA's activities, unreleased products, and product creation, design and

9   development, including, but not limited to (a) contacts with MGA's current or

10  former employees about MGA or its business; (b) use or attempt to use confidential

11  informants, spies, or moles within MGA; (c) knowledge of any MGA product

12  before its release to the public; (d) the origin, source, meaning and authenticity of

13  the document produced at M0065557-58; (e) instances of obtaining access to MGA

14  showrooms, including obtaining access on false pretenses; (f) access to MGA's

15  products or showroom at any Toy Fair; (g) access to retailer's Plan-o-Grams or

16  merchandising display plans or display areas; and (h) access to MGA's confidential

17  product and pricing information through "competitive management agreements" or

18  "category management agreements" with retailers.

19      57.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

20  worldwide to unfairly compete with MGA by eroding or damaging its goodwill,

21  including, but not limited to (a) efforts to generate negative publicity or consumer

22  comments about MGA, LARIAN, "BRATZ" or other MGA products;

23  (b) COMMUNICATIONS with any PERSON concerning whether "BRATZ" are

24  too sexy or otherwise inappropriate for girls; (c) any publicly-released studies or

25  market research about "BRATZ" or MGA products commissioned by or funded by

26  MATTEL; and (d) efforts to provide negative information about MGA to financial

27  or investment analysts (including, but not limited, to J.P. Morgan) regarding MGA

28  or MGA products.

58.     YOUR COMMUNICATIONS with former MATTEL employees who now work (or subsequently worked) for MGA, including but not limited to letters sent to former MATTEL employees warning them not to disclose information about MATTEL.

59.     YOUR hiring of, or consideration of hiring, former MGA employees, including, without limitation, any procedures YOU have adopted to ensure that MGA's confidential proprietary information is protected.

60.     The magnitude and scope of layoffs of MATTEL employees during the RELEVANT PERIOD.

61.     NPD, including, but not limited to, (a) YOUR payments to NPD, (b) COMMUNICATIONS with NPD regarding MGA's alleged misuse of NPD data; (c) YOUR involvement with and knowledge of NPD's decision to terminate MGA's subscription; (d) YOUR use and misuse of NPD data since 2001; and (e) YOUR efforts to pressure, convince, or request that NPD change product classifications categories involving "BRATZ" or other MGA products and whether such efforts were successful.

62.     CARU, including, but not limited to (a) COMMUNICATIONS with CARU regarding MGA's ADVERTISEMENTS, amendments to MGA ADVERTISEMENTS, or MGA's website, including, but not limited to, restrictions placed or suggested to be placed on the foregoing; (b) any formal or informal complaints to CARU regarding MGA's ADVERTISEMENTS or MGA's website; and (c) subsidies given to CARU by MATTEL.

63.     TIA, including, but not limited to (a) MATTEL's role in planning, its participation in, or involvement with TIA's Toy-of-the-Year Awards since 2001; and (b) the change in the voting procedures of "Toy of the Year" award from a "people's choice" award to an award based on votes from retailers, the media, and based on NPD data.

**EXHIBIT 1**
**PAGE 35**
MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO: CV 04-09049 SGL (RNBx)

64.   The facts supporting each of the Affirmative Defenses in YOUR Second Amended Answer in Case No. 05-2727, dated July 12, 2007.

65.   The facts REFERRING OR RELATING to MGA's Third Affirmative Defense of Unclean Hands in MGA's Answer and Affirmative Defenses dated August 13, 2007, including, but not limited to (a) MATTEL'S efforts to undermine MGA's business and to "kill" Bratz at any cost, including but not limited to Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products MY SCENE, DIVA STARZ, WEE 3 FRIENDS, ACCELERACERS, and POLLY POCKET) and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against MATTEL; (b) MATTEL'S efforts to create negative publicity or press about MGA, MGA products, BRYANT, LARIAN, or MGA employees; (c) MATTEL'S efforts to fund or commission market research or studies that portray BRATZ or MGA products negatively; (d) MATTEL'S efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; (e) MATTEL'S efforts to include negative references to MGA or BRATZ on MATTEL's "We Believe in Girls" website; (f) MATTEL'S efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; (g) influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; (h) assisting parties in lawsuits against MGA; (i) monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and/or product development; (j) gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; (k) wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; (l) inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; (m) covertly investigating MGA, its officers and employees,

1    and their family members; (n) contacting persons under false pretense in order to

2    interrogate them about BRATZ and this litigation; (o) coercing MATTEL

3    employees to accept restrictive covenants (right before massive layoffs) and non-

4    compete clauses and other efforts to prevent prospective MGA employees from

5    accepting offers of employment; (p) MATTEL'S delay in suing BRYANT because,

6    *inter alia*, MATTEL wanted BRYANT to testify in an unrelated MATTEL case;

7    (q) falsely inflating its BARBIE sales figures in an effort to mislead the public and

8    retailers; and (r) taking all measures to conceal its bad acts, including the willful

9    non-retention and destruction of documents.

10         66.    The name, address and telephone number of each PERSON or entity

11   with whom MATTEL has communicated regarding this ACTION or the facts and

12   circumstances giving rise to this ACTION; the facts and circumstances surrounding

13   each such COMMUNICATION, including, without limitation, the date, nature and

14   substance of each such COMMUNICATION; and the name, address and telephone

15   number of each PERSON or entity that may have discoverable knowledge,

16   information or DOCUMENTS.

17         67.    All efforts made by MATTEL, directly or indirectly, to contact or

18   communicate with BRYANT since the commencement of the ACTION regarding

19   any subject, whether or not related to or involving the ACTION, and MATTEL's

20   knowledge of any efforts by third-parties or its counsel to contact or communicate

21   with BRYANT since the commencement of the ACTION.

22         68.    The existence, nature and extent of any third-party funding or

23   reimbursement of fees and costs incurred by MATTEL in prosecuting or defending

24   this ACTION, the sharing with any third-party in the financial outcome of this

25   litigation, and the nature and extent of any insurance, indemnification, or similar

26   agreement or arrangement to fund, pay for or reimburse MATTEL for any potential

27   liability it may incur in connection with this ACTION, and the fee arrangement

28   between MATTEL and Quinn Emanuel Urquhart Oliver & Hedges LL

69.   The relationship between Farhad (Fred) Larian and MATTEL, including, but not limited to (a) COMMUNICATIONS between Farhad (Fred) Larian and MATTEL's counsel; (b) the identity of any DOCUMENTS that Farhad (Fred) Larian has provided to or made available for inspection by MATTEL (including MATTEL's counsel); (c) the identity of any DOCUMENTS that MATTEL (including its counsel) has provided to or made available for inspection by Farhad (Fred) Larian; and (d) MATTEL's efforts to hire Farhad (Fred) Larian as a consultant or expert.

70.   MATTEL's COMMUNICATIONS internally or to third-parties, or assistance to third parties, concerning claims or potential claims against MGA, or relating to MGA products, either directly or indirectly, including COMMUNICATIONS with Art Attacks Ink, LLC; Hasbro; Toys & Trends (Hong Kong) Limited; Cityworld Limited; Jurg Willi Kesselring; UbiSoft Entertainment, S.A. ; and Dyscom Corp. dba FilmBratz Productions and Hans Dys.

71.   YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

72.   The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS relevant to the design, development, sales and marketing of YOUR accused products, as identified in the COMPLAINT.

73.   The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS created or stored by BRYANT; TREANTAFELLES; BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Richard de Anda and any person working with him in Mattel's Global Security department involved in any way in investigating BRYANT, Cassidy Park, Ann Driskill, MGA, LARIAN or any current or former MGA employee; Tim Kilpin; Matthew Bousquette; Robert Eckert; Chuck Scothon; Kislip Ongchanko; Jill Nordquist; Rob Hudnut; Ivy Ross; Alan Kaye; Rene Pasko; Adrienne Fontanella; Tina Patel; Julia Jensen;

Marine; Fred Kawashima; Evelyn Viohl; Anna Rhee; and any other person who currently works or previously worked for MATTEL who MATTEL knows or has reason to believe has knowledge or information concerning the claims or defenses in this litigation or the facts underlying them.

74.   YOUR policies, practices and procedures, written or otherwise, regarding employee use of company computers and ELECTRONIC RECORDS during the RELEVANT TIME PERIOD, including but not limited to (a) Desktop computers; (b) Laptop computers; (c) Home-based computers used for company business or communication purposes; (d) Removable media (e.g., USB drives); and (e) PDAs (Personal Digital Assistants).

75.   Computers currently in use and computers no longer in use by YOU during the RELEVANT TIME PERIOD, including (a) Number, types and locations; (b) Operating systems with versions and dates of use; and (c) Application software with versions and dates of use.

76.   YOUR policies, practices and procedures, written or otherwise, regarding the processing of YOUR computers after an employee leaves YOUR employ.

77.   YOUR network architecture during the RELEVANT TIME PERIOD, including (a) Network topology; (b) File-naming conventions; (c) Access authorization; and (d) Remote access.

78.   Document management systems used by YOU during the RELEVANT TIME PERIOD.

79.   Email systems used by YOU during the RELEVANT TIME PERIOD.

80.   Instant messaging systems used by YOU during the RELEVANT TIME PERIOD.

81.   YOUR intranets deployed during the RELEVANT TIME PERIOD.

82.   YOUR archival systems and procedures, including to/from disk, tape, or other media during the RELEVANT TIME PERIOD.

EXHIBIT 1
PAGE 39
MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1      83.    YOUR backup procedures, inventories and schedules, including tape

2  reuse cycles for ELECTRONIC RECORDS during the RELEVANT TIME

3  PERIOD.

4      84.    YOUR efforts to identify and preserve potentially physical and

5  ELECTRONIC RECORDS potentially relevant to the claims and defenses in this

6  ACTION, the dates and circumstances of each and every such efforts, the

7  circumstances surrounding such efforts, and whether such efforts were in

8  anticipation of litigation involving YOU, BRYANT, and/or MGA.

9      85.    YOUR policies, practices and procedures, written or otherwise,

10  regarding monitoring or reviewing of employee-created ELECTRONIC RECORDS

11  by any technical means or by or at the direction of any department at MATTEL,

12  including but not limited to Information Technology, Human Resources and/or

13  "Global Security" or "Worldwide Security" during the RELEVANT TIME

14  PERIOD.

15      86.    YOUR COMMUNICATIONS with American Greetings regarding

16  BRATZ and competing with BRATZ, including by using research and dolls such as

17  Holly Hobby.

18  1697009

19

20

21

22

23

24

25

26

27

28

# Exhibit 2

# *** Public Redacted***

# This Exhibit is Filed Under Seal Pursuant To Protective Order

# Exhibit 3

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Thursday, November 05, 2009 3:45 PM
**To:** Marshall Searcy; acote@scheperkim.com; Michael T Zeller
**Subject:** RE: Elias deposition

Marshall:

Thanks, this date will work for us, and I believe counsel for Mr. Machado as well.  Please let us know who will attend so we can put them on our building security list.  What time will you be prepared to commence on November 16?

Regards,
Annette

**From:** Marshall Searcy [mailto:marshallsearcy@quinnemanuel.com]
**Sent:** Thursday, November 05, 2009 2:31 PM
**To:** Hurst, Annette; 'acote@scheperkim.com'; Michael T Zeller
**Subject:** RE: Elias deposition

Annette;

As a correction, and clarification to my prior e-mail and our conversation, Jaime Elias is appearing as a designee in response to **all** topics in MGA's Notice of Deposition of Mattel (**First** Phase 2 Notice).

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Thursday, November 05, 2009 2:10 PM
**To:** Marshall Searcy; acote@scheperkim.com; Michael T Zeller
**Subject:** RE: Elias deposition

Thanks, Marshall.  It would help to evaluate this request to know which topics upon which Mr. Elias will be designated (I think you mentioned topic 12 in our call, but I look back at the notice and see only 5, so I'm somewhat confused), and whether any other witnesses will be produced so that we can conduct this deposition on a day-to-day basis until completed.

**From:** Marshall Searcy [mailto:marshallsearcy@quinnemanuel.com]
**Sent:** Thursday, November 05, 2009 1:52 PM
**To:** acote@scheperkim.com; Michael T Zeller; Hurst, Annette
**Subject:** Elias deposition

Counsel,

Jaime Elias will be a Mattel designee in response to MGA's Notice of Deposition of Mattel (Second Phase 2 Notice), and will be available for deposition on Monday, November 16.  Please let me know right away if this date is workable so that Mr. Elias may plan his schedule.
"EMF <orrick.com>" made the following annotations.

1

EXHIBIT ___3___ PAGE _51_

```
------------------------------------------------------------------
==================================================================
```

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.


```
==================================================================
```

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
```
==================================================================
==================================================================
```

EXHIBIT __3__ PAGE _52_

# Exhibit 4

RECEIVED

SEP 28 2009

CALENDARED

MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-SGL (RNBx)<br><br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**NOTICE OF DEPOSITION OF MATTEL, INC.**<br><br>(Second Phase 2 Notice) |

EXHIBIT 4 PAGE 53

OHS West:260723566.1

9:28

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2       PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal

3   Rules of Civil Procedure, Counter-Defendants MGA Entertainment, Inc., MGAE

4   de Mexico S.R.L. de C.V., MGA HK Ltd., and Isaac Larian (collectively, "MGA

5   Parties"), by their attorneys, will take the deposition of Mattel, Inc. ("Mattel") upon

6   oral examination before an officer authorized by law to administer oaths, beginning

7   at 9:00 a.m. on October 14, 2009, at the offices of Orrick, Herrington & Sutcliffe

8   LLP, 777 South Figueroa Street, Suite 3200, Los Angeles, California, 90017-5855.

9       Mattel is hereby directed to designate one or more of its officers, directors,

10  managing agents, or other persons who agree to testify on its behalf as to the

11  matters identified in the list of Deposition Topics attached hereto as Schedule A,

12  and Mattel is further requested to notify counsel for the MGA Parties of the identity

13  of the designee or designees at least three (3) business days prior to the deposition.

14      This deposition will continue from day to day until completed.  The

15  deposition will be stenographically recorded by a certified court reporter and may

16  be recorded by videographic and/or audio means pursuant to Rule 30(b)(2) of the

17  Federal Rules of Civil Procedure.  You are invited to have counsel attend and cross-

18  examine as authorized by the Rules of Civil Procedure.

19  Dated:  September 28, 2009         ORRICK, HERRINGTON & SUTCLIFFE LLP

20

21                      By: _____

22                              William A. Molinski
                                Attorneys for MGA Parties

23

24

25

26

27

28

EXHIBIT __4__ PAGE _54_

SECOND PHASE 2 NOTICE OF DEPOSITION OF MATTEL
CV 04-9049 SGL (RNBx)

OHS West:260723566.1

# SCHEDULE A – DEPOSITION TOPICS

For the purpose of the below topics, "MATTEL TRADE SECRETS" means that trade secrets that Mattel claims in its Third Amended Answer and Counterclaim were misappropriated by the MGA Parties (as defined in the Notice).

1. The existence and identity of information that Mattel contends constitute MATTEL TRADE SECRETS.

2. The identity of documents that Mattel contends contain information that constitutes MATTEL TRADE SECRETS.

3. The creation, preparation and/or compilation of the information that Mattel contends constitutes MATTEL TRADE SECRETS.

4. The independent economic value that MATTEL TRADE SECRETS derive from not being generally known to the public or other persons who can obtain economic value from the disclosure or use of the MATTEL TRADE SECRETS.

5. Mattel's efforts to maintain the secrecy of the MATTEL TRADE SECRETS.

6. The facts supporting any claim by Mattel that the MGA Parties acquired MATTEL TRADE SECRETS through improper means.

7. The facts supporting any claim by Mattel that the MGA Parties knew or had reason to know that a person or persons acquired MATTEL TRADE SECRETS through improper means.

8. The facts supporting any claim by Mattel that the MGA Parties disclosed or used MATTEL TRADE SECRETS without Mattel's express or implied consent.

9. The facts supporting any claim by Mattel that the MGA Parties knew or had reason to know that at the time of the MGA Parties' use or disclosure of MATTEL TRADE SECRETS that a person or persons acquired MATTEL TRADE SECRETS under circumstances giving rise to a duty to maintain its secrecy or limit its use.

10. Mattel's policies, procedures and practices for stamping or otherwise designating materials as confidential, proprietary or trade secret.

11. Mattel's policies, procedures and practices for educating, notifying or otherwise informing its employees as to what information Mattel considers to be its trade secrets, or its confidential or proprietary information.

12. Mattel's investigation of the facts and circumstances concerning the departure and alleged theft of trade secrets by Machado, Vargas, Trueba, Castilla, Brawer, Brisbois, Contreras, and Cooney and any other individuals who previously worked for Mattel before working for the MGA Parties.

13. Any harm Mattel claims resulted from the alleged misappropriation of trade secrets by the MGA Parties.

14. The nature of the relationship between Mattel and its subsidiaries in Mexico and Canada concerning the use and/or licensing of trade secret information owned by each other.

15. The distinction between trade secret information owned by Mattel versus trade secret information owned by Mattel's subsidiaries in Mexico and Canada.

16. Agreements or arrangements between Mattel and its subsidiaries in Mexico and Canada concerning the use, licensing, payment, ownership and sharing of trade secret information.

17. Payments made by Mattel's subsidiaries in Mexico and Canada for use of any trade secret information owned by Mattel.

18. Payments made by Mattel's subsidiaries in Mexico and Canada for use of Mattel's trade secrets.

19. How Mattel accounts and/or records in its financial records, books, balance sheets or other corporate financial records of the use by Mattel and its subsidiaries in Mexico and Canada of each others' trade secret information.

EXHIBIT __4__ PAGE __56__

SECOND PHASE 2 NOTICE OF DEPOSITION OF MATTEL
CV 04-9049 SGL (RNBx)

# **DECLARATION OF SERVICE**

I Jeffrey Lopez, declare I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is USA Network, Inc., 350 S. Figueroa Street, Suite 196, Los Angeles, California 90071.

On September 28, 2009, I served the following documents:

**NOTICE OF DEPOSITION OF MATTEL, INC.**

☒   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below:

Counsel for Mattel, Inc.
Michael T. Zeller, Esq.
michaelzeller@quinnemanuel.com
Brett D. Proctor
dylanproctor@quinnemanuel.com
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 28, 2009, at Los Angeles, California.

_____           _____
Jeffrey Lopez                                          USA Network, Inc.

EXHIBIT ___4___ PAGE _57_

# PROOF OF SERVICE

I, Maria Mercado-Navarro, declare:

I am more than eighteen years old and not a party to this action. My business address is Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa Street, Suite 3200, Los Angeles, California 90017-5855.

## NOTICE OF DEPOSITION OF MATTEL, INC.

On September 28, 2009, I served the following document:

☒      By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐      By depositing a true and correct copy of the document(s) listed above with Fed Ex in Los Angeles, California, enclosed in a sealed envelope.

☐      (by Electronic Mail), I caused such documents to be transmitted by electronic mal to the offices of the addressee.

### SEE ATTACHED SERVICE LIST

I am employed in the county from which the mailing occurred. On the date indicated above, I placed the sealed envelope(s) for collection and mailing at this firm's office business address indicated above. I am readily familiar with this firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the firm's correspondence would be deposited with the United States Postal Service on this same date with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 28, 2009, at Los Angeles, California.

_____
Maria Mercado-Navarro

OHS West:260690921.1

- 1 -

EXHIBIT __4__ PAGE 58

## PHASE 2 DISCOVERY SERVICE LIST

<u>Counsel for Carlos Gustavo Machado Gomez</u>
Mark E. Overland, Esq.
moverland@scheperkim.com
Alexander H. Cote, Esq.
acote@scheperkim.com
SCHEPER KIM & OVERLAND LLP
601 W. 5th Street, 12th Floor
Los Angeles, CA  90017
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

<u>Additional Counsel:</u>
Jason D. Russell, Esq.
jason.russell@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Ave., Suite 3400
Los Angeles, CA 90071-3144
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600

EXHIBIT _4_ PAGE _59_

# Exhibit 5

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     johnquinn@quinnemanuel.com
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    Jon D. Corey (Bar No. 185066)
     (joncorey@quinnemanuel.com)
5    865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
6  Telephone:  (213) 443-3000
   Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                 SOUTHERN DIVISION

| | |
|---|---|
| 12  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| 13 | Consolidated with |
|     Plaintiff, | Case No. CV 04-09059 |
| 14 | Case No. CV 05-02727 |
| 15  vs. | Hon. David O. Carter |
| 16  MGA ENTERTAINMENT, INC., a California corporation, et al. | MATTEL, INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC. |
| 17      Defendants. | |
| 18 ────────────────────── | Phase 2: |
| 19  AND CONSOLIDATED ACTIONS | Discovery Cut-off:    June 11, 2010 |
|     | Pre-trial Conf.:      TBD |
| 20 | Trial Date:           TBD |

21

22

23

24

25

26

27

28

00505.07975/3143770.2

EXHIBIT 5
PAGE 60

### Preliminary Statement

Mattel has not yet completed its investigation of the facts relating to this action, has not yet reviewed all documents relating to this action, has not yet interviewed all witnesses in this action, and has yet to receive all discovery from defendants MGA Entertainment, Inc. ("MGA"), Isaac Larian, Carter Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., Carlos Gustavo Machado Gomez, and from third parties with regard to this action (collectively, "Defendants"). Consequently, Mattel reserves the right to amend and/or supplement its objections if and when additional facts or documents are discovered. Mattel's objections to any of the Topics set forth in MGA's Second Phase II Notice of Deposition of Mattel, Inc. (the "Notice") are not to be construed as a waiver of any of its objections or its right to object to any other Topic.

### General Objections

Mattel generally objects to the Notice and each of the Topics set forth in the Notice on each and every one of the following grounds, which are incorporated into and made a part of Mattel's response to each and every individual Topic:

1.      Mattel objects to the Notice and the 19 Topics contained in the Notice (collectively the "Topics") on the grounds that they are overbroad, unduly burdensome, vague and harassing. The Topics fail to describe with reasonable particularity the matters on which examination is requested and, on their face, call for vast, undefined categories of information--spanning various unreasonably long time periods and without geographical limitation--that would potentially require dozens of witnesses to address.

2.      Mattel objects to the Notice and the Topics on the grounds that they are unduly burdensome, premature and vague and ambiguous in that they seek information uniquely within the possession, custody, and control of Defendants and

00505.07975/3143770.2

-2-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

EXHIBIT 5
PAGE 61

1 | third parties within the control of Defendants and is not known by Mattel at this

2 | juncture, including because Defendants refuse to disclose such information.

3 |     3.    Mattel objects to the Notice and the Topics on the grounds that they

4 | seek disclosure of information that is in the possession of independent parties over

5 | whom Mattel has no control, or that is publicly available and hence equally

6 | available to all parties in this litigation.

7 |     4.    Mattel objects to the Notice and the Topics on the grounds that they

8 | seek to impose obligations beyond those required by the <u>Federal Rules of Civil</u>

9 | <u>Procedure</u>.

10 |     5.    Mattel objects to the Notice and the Topics on the grounds that they

11 | call for information that is not relevant to the subject matter of the pending action,

12 | nor reasonably calculated to lead to the discovery of admissible evidence.

13 |     6.    Mattel objects to the Notice and the Topics on the grounds that they

14 | call for the disclosure of information subject to the attorney-client privilege, the

15 | attorney work-product doctrine and other applicable privileges, including the joint

16 | defense and common interest privileges and the privilege against disclosure of the

17 | identities and work product of consulting experts.  Such information will not be

18 | disclosed.

19 |     7.    Mattel objects to the Notice and the Topics on the grounds that they

20 | seek they seek trade secret, proprietary or otherwise confidential information of

21 | Mattel or third parties or would violate the terms of any agreement or contracts with

22 | third parties.  Any such information will be disclosed, if at all, only pursuant to and

23 | in reliance upon the Protective Order entered in this case.

24 |     8.    Mattel objects to the Notice and the Topics on the grounds that they

25 | seek information about matters that are not within the subject matter jurisdiction of

26 | the Court or seek to directly interfere with and intrude into on-going criminal

27 | proceedings.  Any discovery by Mattel will be limited to those matters within the

28 | Court's jurisdiction, in compliance with foreign laws limiting disclosure and

X0505.07975/3143770.2

-3-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

**EXHIBIT 5**
**PAGE 62**

1  discovery and consistent with governmental or prosecutorial limitations.  Without

2  limiting the generality of the foregoing, Mattel will not undertake to produce

3  witnesses to testify as to the activities of any governmental officials conducting

4  prosecutorial or investigatory functions.

5       9.     Mattel objects to the Notices and the Topics on the grounds that they

6  are phrased as legal contentions and purport to require Mattel witnesses to proffer

7  legal theories and analysis.  To the extent Mattel produces any witnesses in response

8  to the Notices, such persons will testify only as to facts known or reasonably

9  ascertainable to Mattel.

10      10.    Mattel objects to the times and places specified in the Notice.  Mattel

11 will produce witnesses for deposition in this matter at times and places, and in a

12 manner, that is reasonable, convenient and mutually agreed upon by the parties.

13

14              **Specific Objections and Responses**

15              Each of the following objections and responses  is expressly made

16 subject to the above Preliminary Statement and General Objections, all of which are

17 incorporated in each of the following objections and responses to specific topics.

18      1.     In addition to the general objections above, which are incorporated

19 herein by reference, Mattel objects to Topic No. 1 because by using the phrase

20 "existence and identity of information," it fails to describe with reasonable

21 particularity the matters on which examination is requested and is vague and

22 ambiguous.  Mattel further objects to Topic No. 1 as overbroad and unduly

23 burdensome, and seeks information that is appropriate for written discovery (and has

24 been the subject of extensive written discovery), not as a subject of 30(b)(6)

25 deposition testimony.  Mattel further objects to Topic No. 1 as cumulative and

26 duplicative of prior discovery.  Mattel also objects to Topic No. 1 on the grounds

27 that it calls for the disclosure of information protected by the attorney-client

28 privilege and work product doctrine.  Mattel further objects to Topic No. 1 to the

00505.07975/3143770.2

-4-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC.

EXHIBIT 5
PAGE 63

1  extent it seeks information from non-party, foreign subsidiaries of Mattel.

2  Defendants have refused to respond to discovery on behalf of similarly situated

3  subsidiaries.

4      2.    In addition to the general objections above, which are incorporated

5  herein by reference, Mattel objects to Topic No. 2 because by using the phrase

6  "identity of documents," it fails to describe with reasonable particularity the matters

7  on which examination is requested and is vague and ambiguous.  Mattel further

8  objects to Topic No. 2 as overbroad and unduly burdensome, and seeks information

9  that is appropriate for written discovery (and has been the subject of extensive

10  written discovery), not as a subject of 30(b)(6) deposition testimony.  Mattel further

11  objects to Topic No. 2 as cumulative and duplicative of prior discovery.  Mattel also

12  objects to Topic No. 2 on the grounds that it calls for the disclosure of information

13  protected by the attorney-client privilege and work product doctrine.  Mattel further

14  objects to Topic No. 2 to the extent it seeks information from non-party, foreign

15  subsidiaries of Mattel.  Defendants have refused to respond to discovery on behalf

16  of similarly situated subsidiaries.

17      3.    In addition to the general objections above, which are incorporated

18  herein by reference, Mattel objects to Topic No. 3 because by using the terms

19  "creation, preparation, and/or compilation," it fails to describe with reasonable

20  particularity the matters on which examination is requested and is vague and

21  ambiguous.  Mattel further objects to Topic No. 3 as overbroad and unduly

22  burdensome, and seeks information that is appropriate for written discovery (and has

23  been the subject of extensive written discovery), not as a subject of 30(b)(6)

24  deposition testimony.  Mattel further objects to Topic No. 3 as cumulative and

25  duplicative of prior discovery.  Mattel also objects to Topic No. 3 on the grounds

26  that it calls for the disclosure of information protected by the attorney-client

27  privilege and work product doctrine.  In addition, Mattel objects to Topic No. 3 on

28  the grounds that it seeks information not relevant to the subject matter of this lawsuit

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

**EXHIBIT 5**
**PAGE** 64

1  or reasonably calculated to lead to the discovery of admissible evidence. Mattel

2  further objects to Topic No. 3 to the extent it seeks information from non-party,

3  foreign subsidiaries of Mattel. Defendants have refused to respond to discovery on

4  behalf of similarly situated subsidiaries.

5          4.      In addition to the general objections above, which are incorporated

6  herein by reference, Mattel objects to Topic No. 4 because by broadly seeking

7  testimony on "the independent economic value that MATTEL TRADE SECRETS

8  derive from not being generally known to the public or other persons who can obtain

9  economic value from the disclosure or use of the MATTEL TRADE SECRETS," it

10  fails to describe with reasonable particularity the matters on which examination is

11  requested and is vague, ambiguous, and compound. Mattel further objects to Topic

12  No. 4 as overbroad and unduly burdensome, and seeks information that is

13  appropriate for written discovery (and has been the subject of extensive written

14  discovery), not as a subject of 30(b)(6) deposition testimony. Mattel further objects

15  to Topic No. 4 as cumulative and duplicative of prior discovery. Mattel also objects

16  to Topic No. 4 on the grounds that it calls for the disclosure of information protected

17  by the attorney-client privilege and work product doctrine. Mattel further objects to

18  Topic No. 4 to the extent it seeks information from non-party, foreign subsidiaries

19  of Mattel. Defendants have refused to respond to discovery on behalf of similarly

20  situated subsidiaries. Mattel also objects to Topic No. 4 on the ground and to the

21  extent that it is premature because its subject matter may be the subject of expert

22  testimony at trial, and to the extent defendants purport to seek to limit the expert

23  testimony that Mattel may seek to introduce at trial. Matters of expert testimony

24  shall be disclosed at the time and in the manner called for by the Rules and the

25  Court's Orders.

26          5.      In addition to the general objections above, which are incorporated

27  herein by reference, Mattel objects to Topic No. 5 because by seeking information

28  on "Mattel's efforts to maintain the secrecy of the MATTEL TRADE SECRETS," it

-6-

**EXHIBIT 5
PAGE 65**

MATTEL, INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC.

1 | fails to describe with reasonable particularity the matters on which examination is

2 | requested and is vague, ambiguous, and compound.  Mattel further objects to Topic

3 | No. 5 as overbroad and unduly burdensome, and seeks information that is

4 | appropriate for written discovery (and has been the subject of extensive written

5 | discovery), not as a subject of 30(b)(6) deposition testimony.  Mattel further objects

6 | to Topic No. 5 as cumulative and duplicative of prior discovery.  Mattel also objects

7 | to Topic No. 5 on the grounds that it calls for the disclosure of information protected

8 | by the attorney-client privilege and work product doctrine.  In addition, Mattel

9 | objects to Topic No. 5 to the extent that it seeks information not relevant to the

10 | subject matter of this lawsuit or reasonably calculated to lead to the discovery of

11 | admissible evidence.  Mattel further objects to Topic No. 5 to the extent it seeks

12 | information from non-party, foreign subsidiaries of Mattel.  Defendants have

13 | refused to respond to discovery on behalf of similarly situated subsidiaries.

14 |       6.      In addition to the general objections above, which are incorporated

15 | herein by reference, Mattel objects to Topic No. 6 because seeking "facts supporting

16 | any claim by Mattel that the MGA parties acquired MATTEL TRADE SECRETS

17 | through improper means," it fails to describe with reasonable particularity the

18 | matters on which examination is requested and is vague, ambiguous, and compound.

19 | Mattel further objects to Topic No. 6 as overbroad and unduly burdensome, and

20 | seeks information that is appropriate for written discovery (and has been the subject

21 | of extensive written discovery), not as a subject of 30(b)(6) deposition testimony.

22 | Mattel further objects to Topic No. 6 as cumulative and duplicative of prior

23 | discovery.  Mattel also objects to Topic No. 6 on the grounds that it calls for the

24 | disclosure of information protected by the attorney-client privilege and work

25 | product doctrine.  In addition, Mattel objects to Topic No. 6 to the extent that it

26 | seeks information not relevant to the subject matter of this lawsuit or reasonably

27 | calculated to lead to the discovery of admissible evidence.  Mattel further objects to

28 | Topic No. 6 to the extent it seeks information from non-party, foreign subsidiaries

00505.07975/3143770.2

-7-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

**EXHIBIT 5**
**PAGE** _66_

1  of Mattel.  Defendants have refused to respond to discovery on behalf of similarly

2  situated subsidiaries.  Mattel further objects to Topic No. 6 on the grounds that it is

3  premature, unduly burdensome, and harassing in that it calls for information

4  uniquely known by defendants and by third parties within defendants' control, but is

5  not known by Mattel at this juncture, including because defendants have refused or

6  failed to produce discovery relating to this Topic, including discovery that the Court

7  has ordered MGA to produce.  Mattel also objects to Topic No. 6 on the ground and

8  to the extent that it is premature because its subject matter may be the subject of

9  expert testimony at trial, and to the extent defendants purport to seek to limit the

10  expert testimony that Mattel may seek to introduce at trial.  Matters of expert

11  testimony shall be disclosed at the time and in the manner called for by the Rules

12  and the Court's Orders.

13      7.     In addition to the general objections above, which are incorporated

14  herein by reference, Mattel objects to Topic No. 7 because the phrases "knew or had

15  reason to know" and "improper means," fail to describe with reasonable particularity

16  the matters on which examination is requested and are vague, ambiguous, and

17  compound.  Mattel further objects to Topic No. 7 as overbroad and unduly

18  burdensome, and seeks information that is appropriate for written discovery (and has

19  been the subject of extensive written discovery), not as a subject of 30(b)(6)

20  deposition testimony.  Mattel further objects to Topic No. 7 as cumulative and

21  duplicative of prior discovery.  Mattel also objects to Topic No. 7 on the grounds

22  that it calls for the disclosure of information protected by the attorney-client

23  privilege and work product doctrine.  Mattel further objects to Topic No. 7 to the

24  extent it seeks information from non-party, foreign subsidiaries of Mattel.

25  Defendants have refused to respond to discovery on behalf of similarly situated

26  subsidiaries.  Mattel further objects to Topic No. 7 on the grounds that it is

27  premature, unduly burdensome, and harassing in that it calls for information

28  uniquely known by defendants and by third parties within defendants' control, but is

00505.07975/3143770.2

-8-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

EXHIBIT 5
PAGE 67

1 | not known by Mattel at this juncture, including because defendants have refused or
2 | failed to produce discovery relating to this Topic, including discovery that the Court
3 | has ordered MGA to produce. Mattel also objects to Topic No. 7 on the ground and
4 | to the extent that it is premature because its subject matter may be the subject of
5 | expert testimony at trial, and to the extent defendants purport to seek to limit the
6 | expert testimony that Mattel may seek to introduce at trial. Matters of expert
7 | testimony shall be disclosed at the time and in the manner called for by the <u>Rules</u>
8 | and the Court's Orders.

9 |         8.      In addition to the general objections above, which are incorporated
10 | herein by reference, Mattel objects to Topic No. 8 because seeking "facts supporting
11 | any claim by Mattel that the MGA Parties disclosed or used MATTEL TRADE
12 | SECRETS without Mattel's express or implied consent" fails to describe with
13 | reasonable particularity the matters on which examination is requested and is vague,
14 | ambiguous, and compound. Mattel further objects to Topic No. 8 as overbroad and
15 | unduly burdensome, and seeks information that is appropriate for written discovery
16 | (and has been the subject of extensive written discovery), not as a subject of
17 | 30(b)(6) deposition testimony. Mattel further objects to Topic No. 8 as cumulative
18 | and duplicative of prior discovery. Mattel also objects to Topic No. 8 on the
19 | grounds that it calls for the disclosure of information protected by the attorney-client
20 | privilege and work product doctrine. Mattel further objects to Topic No. 8 to the
21 | extent it seeks information from non-party, foreign subsidiaries of Mattel.
22 | Defendants have refused to respond to discovery on behalf of similarly situated
23 | subsidiaries. Mattel further objects to Topic No. 8 on the grounds that it is
24 | premature, unduly burdensome, and harassing in that it calls for information
25 | uniquely known by defendants and by third parties within defendants' control, but is
26 | not known by Mattel at this juncture, including because defendants have refused or
27 | failed to produce discovery relating to this Topic, including discovery that the Court
28 | has ordered MGA to produce. Mattel also objects to Topic No. 8 on the ground and

-9-

**EXHIBIT 5**
**PAGE 68**

1 │ to the extent that it is premature because its subject matter may be the subject of

2 │ expert testimony at trial, and to the extent defendants purport to seek to limit the

3 │ expert testimony that Mattel may seek to introduce at trial.  Matters of expert

4 │ testimony shall be disclosed at the time and in the manner called for by the <u>Rules</u>

5 │ and the Court's Orders.

6 │      9.    In addition to the general objections above, which are incorporated

7 │ herein by reference, Mattel objects to Topic No. 9 because the phrases "knew or had

8 │ reason to know" and "circumstances giving rise to a duty to maintain its secrecy or

9 │ limit its use" fail to describe with reasonable particularity the matters on which

10 │ examination is requested and are vague, ambiguous, and compound.  Mattel further

11 │ objects to Topic No. 9 as overbroad and unduly burdensome, and seeks information

12 │ that is appropriate for written discovery (and has been the subject of extensive

13 │ written discovery), not as a subject of 30(b)(6) deposition testimony.  Mattel further

14 │ objects to Topic No. 9 as cumulative and duplicative of prior discovery.  Mattel also

15 │ objects to Topic No. 9 on the grounds that it calls for the disclosure of information

16 │ protected by the attorney-client privilege and work product doctrine.  Mattel further

17 │ objects to Topic No. 9 to the extent it seeks information from non-party, foreign

18 │ subsidiaries of Mattel.  Defendants have refused to respond to discovery on behalf

19 │ of similarly situated subsidiaries.  Mattel further objects to Topic No. 9 on the

20 │ grounds that it is premature, unduly burdensome, and harassing in that it calls for

21 │ information uniquely known by defendants and by third parties within defendants'

22 │ control, but is not known by Mattel at this juncture, including because defendants

23 │ have refused or failed to produce discovery relating to this Topic, including

24 │ discovery that the Court has ordered MGA to produce.  Mattel also objects to Topic

25 │ No. 9 on the ground and to the extent that it is premature because its subject matter

26 │ may be the subject of expert testimony at trial, and to the extent defendants purport

27 │ to seek to limit the expert testimony that Mattel may seek to introduce at trial.

28 │

**EXHIBIT 5**
**PAGE 69**

-10-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

1  Matters of expert testimony shall be disclosed at the time and in the manner called

2  for by the <u>Rules</u> and the Court's Orders.

3       10.   In addition to the general objections above, which are incorporated

4  herein by reference, Mattel objects to Topic No. 10 because seeking "Mattel's

5  policies, procedures, and practices for stamping or otherwise designating materials

6  as confidential, proprietary, or trade secret" fails to describe with reasonable

7  particularity the matters on which examination is requested and is vague,

8  ambiguous, and compound.  Mattel further objects to Topic No. 10 as overbroad,

9  unduly burdensome, and not reasonably calculated to lead to the discovery of

10  admissible evidence, including without limitation, that it seeks testimony about

11  information that is not at issue in this suit and is unlimited as to time and geographic

12  scope.  Mattel further objects to Topic No. 10 as cumulative and duplicative of prior

13  discovery.  Mattel also objects to Topic No. 10 on the grounds that it calls for the

14  disclosure of information protected by the attorney-client privilege and work

15  product doctrine.  Mattel further objects to Topic No. 10 to the extent it seeks

16  information from non-party, foreign subsidiaries of Mattel.  Defendants have

17  refused to respond to discovery on behalf of similarly situated subsidiaries.

18       11.   In addition to the general objections above, which are incorporated

19  herein by reference, Mattel objects to Topic No. 11 because seeking "Mattel's

20  policies, procedures, and practices for educating, notifying, or otherwise informing

21  its employees as to what information Mattel considers to be its trade secrets, or its

22  confidential or proprietary information" fails to describe with reasonable

23  particularity the matters on which examination is requested and is vague,

24  ambiguous, and compound.  Mattel further objects to Topic No. 11 as overbroad,

25  unduly burdensome, and not reasonably calculated to lead to the discovery of

26  admissible evidence, including without limitation, that it seeks testimony about

27  information that is not at issue in this suit and is unlimited as to time and geographic

28  scope.  Mattel also objects to Topic No. 11 on the grounds that it calls for the

**EXHIBIT 5**

**PAGE 70**

1 disclosure of information protected by the attorney-client privilege and work

2 product doctrine. Mattel further objects to Topic No. 11 to the extent it seeks

3 information from non-party, foreign subsidiaries of Mattel. Defendants have

4 refused to respond to discovery on behalf of similarly situated subsidiaries. Mattel

5 further objects to Topic No. 11 as cumulative and duplicative of prior discovery.

6      12.    In addition to the general objections above, which are incorporated

7 herein by reference, Mattel objects to Topic No. 12 because seeking "Mattel's

8 investigation of the facts and circumstances concerning the departure and alleged

9 theft of trade secrets by Machado, Vargas, Trueba, Castilla, Brawer, Brisbois,

10 Contreras, and Cooney and any other individuals who previously worked for Mattel

11 before working for the MGA Parties" fails to describe with reasonable particularity

12 the matters on which examination is requested and is vague, ambiguous, and

13 compound. Mattel further objects to Topic No. 12 as overbroad, unduly

14 burdensome, and not reasonably calculated to lead to the discovery of admissible

15 evidence, including without limitation, that it seeks testimony about

16 "investigation[s]" as to persons who are not at issue in this suit and is unlimited as to

17 time and geographic scope. Mattel also objects to Topic No. 12 on the grounds that

18 it calls for the disclosure of information protected by the attorney-client privilege

19 and work product doctrine. Mattel further objects to Topic No. 12 to the extent it

20 seeks information from non-party, foreign subsidiaries of Mattel. Defendants have

21 refused to respond to discovery on behalf of similarly situated subsidiaries. Mattel

22 further objects to Topic No. 12 as cumulative and duplicative of prior discovery.

23 Mattel also objects to Topic No. 12 on the ground and to the extent that it is

24 premature because its subject matter may be the subject of expert testimony at trial,

25 and to the extent defendants purport to seek to limit the expert testimony that Mattel

26 may seek to introduce at trial. Matters of expert testimony shall be disclosed at the

27 time and in the manner called for by the Rules and the Court's Orders.

28

**EXHIBIT 5**
**PAGE** 71

13.    In addition to the general objections above, which are incorporated herein by reference, Mattel objects to Topic No. 13 because the phrase "[a]ny harm Mattel claims resulted from the alleged misappropriation of trade secrets by the MGA Parties" fails to describe with reasonable particularity the matters on which examination is requested and is vague, ambiguous, and compound. Mattel further objects to Topic No. 13 as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including without limitation, that it is unlimited as to time and geographic scope and not limited to the trade secrets at issue in this case. Mattel further objects to this Topic on the grounds that it seeks information that is appropriate for written discovery (and has been the subject of extensive written discovery), not as a subject of 30(b)(6) deposition testimony. Mattel further objects to Topic No. 13 as cumulative and duplicative of prior discovery. Mattel also objects to Topic No. 13 on the grounds that it calls for the disclosure of information protected by the attorney-client privilege and work product doctrine. Mattel further objects to Topic No. 13 to the extent it seeks information from non-party, foreign subsidiaries of Mattel. Defendants have refused to respond to discovery on behalf of similarly situated subsidiaries. Mattel objects to Topic No. 13 on the ground and to the extent that it is premature because its subject matter may be the subject of expert testimony at trial, and to the extent defendants purport to seek to limit the expert testimony that Mattel may seek to introduce at trial. Matters of expert testimony shall be disclosed at the time and in the manner called for by the <u>Rules</u> and the Court's Orders. Mattel further objects to Topic No. 13 on the grounds that it is premature, unduly burdensome, and harassing in that it calls for information uniquely known by defendants and by third parties within defendants' control, but is not known by Mattel at this juncture, including because defendants have refused or failed to produce discovery relating to this Topic, including discovery that the Court has ordered MGA to produce.

00505.07975/3143770.2

-13-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

EXHIBIT 5
PAGE 72

1          14.    In addition to the general objections above, which are incorporated

2    herein by reference, Mattel objects to Topic No. 14 because the phrase "nature and

3    relationship between Mattel and its subsidiaries" fails to describe with reasonable

4    particularity the matters on which examination is requested and is vague,

5    ambiguous, and compound.  Mattel further objects to Topic No. 14 and as

6    overbroad, unduly burdensome, and not reasonably calculated to lead to the

7    discovery of admissible evidence, including without limitation, that it is unlimited as

8    to time and not limited to the trade secrets at issue in this case.  Mattel also objects

9    to Topic No. 14 on the grounds that it calls for the disclosure of information

10   protected by the attorney-client privilege and work product doctrine.  Mattel further

11   objects to Topic No. 14 to the extent it seeks information from non-party, foreign

12   subsidiaries of Mattel.  Defendants have refused to respond to discovery on behalf

13   of similarly situated subsidiaries.  Mattel further objects to Topic No. 14 as

14   cumulative and duplicative of prior discovery.

15         15.    In addition to the general objections above, which are incorporated

16   herein by reference, Mattel objects to Topic No. 15 because seeking "[t]he

17   distinction between trade secret information owned by Mattel versus trade secret

18   information owned by Mattel's subsidiaries in Mexico and Canada" fails to describe

19   with reasonable particularity the matters on which examination is requested and is

20   vague, ambiguous, and compound.  Mattel further objects to Topic No. 15 as

21   overbroad, unduly burdensome, and not reasonably calculated to lead to the

22   discovery of admissible evidence, including without limitation, that it is unlimited as

23   to time and is not limited to the trade secrets at issue in this case.  Mattel also

24   objects to Topic No. 15 on the grounds that it calls for the disclosure of information

25   protected by the attorney-client privilege and work product doctrine.  Mattel further

26   objects to Topic No. 15 to the extent it seeks information from non-party, foreign

27   subsidiaries of Mattel.  Defendants have refused to respond to discovery on behalf

28

**EXHIBIT 5
PAGE 73**

1   of similarly situated subsidiaries.  Mattel further objects to Topic No. 15 as

2   cumulative and duplicative of prior discovery.

3          16.    In addition to the general objections above, which are incorporated

4   herein by reference, Mattel objects to Topic No. 16 because seeking information

5   about agreements or arrangements "concerning the use, licensing, payment,

6   ownership, and sharing or trade secret information" fails to describe with reasonable

7   particularity the matters on which examination is requested and is vague,

8   ambiguous, and compound.  Mattel further objects to Topic No. 16 and as

9   overbroad, unduly burdensome, and not reasonably calculated to lead to the

10  discovery of admissible evidence, including without limitation, that it is not limited

11  as to time and is not limited to the trade secrets at issue in this case.  Mattel also

12  objects to Topic No. 16 on the grounds that it calls for the disclosure of information

13  protected by the attorney-client privilege and work product doctrine.  Mattel further

14  objects to Topic No. 16 to the extent it seeks information from non-party, foreign

15  subsidiaries of Mattel.  Defendants have refused to respond to discovery on behalf

16  of similarly situated subsidiaries.  Mattel further objects to Topic No. 16 as

17  cumulative and duplicative of prior discovery.

18         17.    In addition to the general objections above, which are incorporated

19  herein by reference, Mattel objects to Topic No. 17 because the phrase "[p]ayments

20  made by Mattel's subsidiaries in Mexico and Canada for use of any trade secret

21  information owned by Mattel" fails to describe with reasonable particularity the

22  matters on which examination is requested and is vague, ambiguous, and compound.

23  Mattel further objects to Topic No. 17 and as overbroad, unduly burdensome, and

24  not reasonably calculated to lead to the discovery of admissible evidence, including

25  without limitation, that it is not limited as to time and is not limited to the trade

26  secrets at issue in this case.  Mattel also objects to Topic No. 17 on the grounds that

27  it calls for the disclosure of information protected by the attorney-client privilege

28  and work product doctrine.  Mattel further objects to Topic No. 17 to the extent it

1   seeks information from non-party, foreign subsidiaries of Mattel.  Defendants have

2   refused to respond to discovery on behalf of similarly situated subsidiaries.  Mattel

3   further objects to Topic No. 17 as cumulative and duplicative of prior discovery.

4       18.     In addition to the general objections above, which are incorporated

5   herein by reference, Mattel objects to Topic No. 18 because seeking "[p]ayments

6   made by Mattel's subsidiaries in Mexico and Canada for use of Mattel's trade

7   secrets" fails to describe with reasonable particularity the matters on which

8   examination is requested and is vague, ambiguous, and compound.  Mattel further

9   objects to Topic No. 18 and as overbroad, unduly burdensome, and not reasonably

10  calculated to lead to the discovery of admissible evidence, including without

11  limitation, that it is not limited as to time and is not limited to the trade secrets at

12  issue in this case.  Mattel also objects to Topic No. 18 on the grounds that it calls for

13  the disclosure of information protected by the attorney-client privilege and work

14  product doctrine.  Mattel further objects to Topic No. 18 to the extent it seeks

15  information from non-party, foreign subsidiaries of Mattel.  Defendants have

16  refused to respond to discovery on behalf of similarly situated subsidiaries.  Mattel

17  further objects to Topic No. 18 as cumulative and duplicative of prior discovery.

18      19.     In addition to the general objections above, which are incorporated

19  herein by reference, Mattel objects to Topic No. 19 because seeking "[h]ow Mattel

20  accounts and/or records in its financial records, books, balance sheets, or other

21  corporate financial records of the use by Mattel and its subsidiaries in Mexico and

22  Canada of each others' trade secret information" fails to describe with reasonable

23  particularity the matters on which examination is requested and is vague,

24  ambiguous, and compound.  Mattel further objects to Topic No. 19 and as

25  overbroad, unduly burdensome, and not reasonably calculated to lead to the

26  discovery of admissible evidence, including without limitation, that it is not limited

27  as to time and is not limited to the trade secrets at issue in this case.  Mattel also

28  objects to Topic No. 19 on the grounds that it calls for the disclosure of information

00505.07975/3143770.2

-16-

MATTEL, INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC.

EXHIBIT 5
PAGE 25

1 | protected by the attorney-client privilege and work product doctrine.  Mattel further
2 | objects to Topic No. 19 to the extent it seeks information from non-party, foreign
3 | subsidiaries of Mattel.  Defendants have refused to respond to discovery on behalf
4 | of similarly situated subsidiaries.  Mattel further objects to Topic No. 19 as
5 | cumulative and duplicative of prior discovery.  Mattel also objects to Topic No. 19
6 | on the ground and to the extent that it is premature because its subject matter may be
7 | the subject of expert testimony at trial, and to the extent defendants purport to seek
8 | to limit the expert testimony that Mattel may seek to introduce at trial.  Matters of
9 | expert testimony shall be disclosed at the time and in the manner called for by the
10 | Rules and the Court's Orders.

11 | DATED:  October 8, 2009

QUINN EMANUEL URQUHART OLIVER &
HEDGES. LLP

By

Marshall M. Searcy III
Attorneys for Mattel. Inc.

EXHIBIT 5
PAGE 76
-17-

MATTEL. INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL. INC.

00505.07975/3143770.2

1
2
3
4
5
6
7

**QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

8

Attorneys for Mattel, Inc.

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

## SOUTHERN DIVISION

| | |
|---|---|
| 12  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| 13 | Consolidated with: |
| 14            Plaintiff, | Case No: CV 04-09039 |
|                 vs. | Case No. CV 05-02727 |
| 15 | **PROOF OF SERVICE** |
| 16  MGA ENTERTAINMENT, INC, a California corporation, et al., | |
| 17            Defendant. | |
| 18 | |
| 19  AND CONSOLIDATED ACTIONS | |

20
21
22
23
24
25
26
27
28

EXHIBIT 5
PAGE  77

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On October 8, 2009, I served true copies of the following documents described as:

MATTEL, INC.'S OBJECTIONS TO MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC.

on the parties in this action as follows:

| | |
|---|---|
| Orrick, Herrington & Sutcliffe LLP<br>William A. Molinski<br>777 S. Figueroa Street, STE 3200<br>Los Angeles, CA 90017<br>wmolinski@orrick.com | *Attorneys for the MGA Parties* |
| Orrick, Herrington & Sutcliffe LLP<br>Annette L. Hurst<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94104<br>ahurst@orrick.com | *Attorneys for the MGA Parties* |
| Skadden, Arps, Slate, Meagher & Flom LLP<br>   Thomas J. Nolan, Esq.<br>   Jason Russell, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>   tnolan@skadden.com<br>   jrussell@skadden.com | Attorneys for *the MGA Parties*<br><br><br><br>Telephone: 213.687.5000<br>Facsimile: 213.687.5600 |
| Overland Borenstein Scheper & Kim LLP<br>   Mark E. Overland, Esq.<br>   Alexander H. Cote, Esq.<br>601 W. 5th Street, 12th Floor<br>Los Angeles, CA 90017<br>   moverland@obsklaw.com<br>   acote@obsklaw.com | Attorneys for *Carlos Gustavo Machado Gomez*<br><br><br>Telephone: 213.613.4655<br>Facsimile: 213.613.4656 |
| Bingham McCutchen LLP<br>Todd Gordinier, Esq.<br>Peter Villar, Esq.<br>600 Anton Boulevard, 18th Floor<br>Costa Mesa, CA 92626<br>todd.gordinier@bingham.com | Attorneys for *Omni 808 Investors, LLC* |

1  **BY MAIL:**  I enclosed the foregoing in a sealed envelope addressed as shown

2  above, and I deposited such envelope in the mail at Los Angeles, California.  The

3  envelope was mailed with postage thereon fully prepaid.

4        I declare that I am employed in the office of a member of the bar of this

5  court at whose direction the service was made.

6

7      Executed on October 8, 2009, at Los Angeles, California.

8

9

10

11                   Matthew Korhonen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 6

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

October 30, 2009

<u>VIA E-MAIL</u>

William Molinski, Esq.
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017

Re:   <u>Mattel v. MGA</u>

Dear Bill:

I write to follow up on our conference from October 28 concerning MGA's most recent 30(b)(6) notice to Mattel. As I stated on the phone, Mattel will try to obtain deposition dates for this notice by early next week. However, as I also told you, there is a threshold issue to be addressed: namely, whether MGA believes that the "one deposition rule" applies to the corporate entities in this case.

As you know, without leave of the court, parties are limited to deposing a witness only one time. <u>See Fed. R. Civ. P.</u> 30(a)(2)(ii) ("A party must obtain leave of court…if the deponent has already been deposed in the case"). This "one deposition rule" has been applied to entities as well as natural persons. <u>Burdick v. Union Sec. Ins. Co.</u> 2008 WL 5102851, at *3 (C.D. Cal., Dec. 3, 2008) (citing <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 244 F.3d 189, 192 (1st Cir. 2001)).

Accordingly, if the one deposition rule applies here, MGA's latest 30(b)(6) notice to Mattel is invalid on its face. <u>See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.</u>, 170 F.R.D. 111, 119 (S.D.N.Y. 1997) (denying motion to redepose witness "because plaintiffs breached Federal Rule of Civil Procedure ('Rule') 30(a)(2)(B) by seeking leave of this Court for [witness'] second

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100

CHICAGO | 250 South Wacker Drive, Suite 250, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962

LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100

TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

**EXHIBIT** ___6___ **PAGE** _80_

deposition after plaintiffs already had served her with a subpoena" – which was a "violation of Rule 30(a)(2)(B)"); In re Sulfuric Acid Antitrust Litig., 2005 WL 1994105, at *2 (N.D. Ill. Aug. 19, 2005) ("The defendants here issued their second Rule 30(b)(6) subpoenas without leave of the court, despite the unambiguous requirement of Rule 30(a)(2)(B). The notices and subpoenas are thus invalid.").

During our call, I asked you to state whether MGA's position on whether the one deposition rule applies to the entities in this case. You told me that you did not believe the issue was appropriate to our conference. It being a threshold issue for the deposition, Mattel respectfully disagrees, and asks that MGA provide its position in writing as to the appropriateness of MGA's serial deposition notices to Mattel. If MGA's position is that the one deposition rule does not bar subsequent Rule 30(b)(6) notices, we also expect MGA to enter into a stipulation to that effect.

Very truly yours,

/s/ Marshall M. Searcy III

Marshall M. Searcy III
07975/3176357.1

EXHIBIT __6__ PAGE 81

# Exhibit 7

# *** Public Redacted***

# This Exhibit is Filed Under Seal Pursuant To Protective Order