# Exhibit 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date: January 7, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS

===========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          Theresa Lanza
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  **Christa Martine Anderson**     **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:             ATTORNEY PRESENT FOR CARLOS
**Thomas J. Nolan**                        GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                           **Mark E. Overland**
**Anna Park**

                                       ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-              STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND               ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**              KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART
               MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL
               DISCOVERY (DOCKET #1134)**

               **ORDER GRANTING MOTION TO ENFORCE THE COURT'S
               ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR
               SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90
CIVIL -- GEN                          1           Initials of Deputy Clerk: jh
                                                  Time: 1/30

EXHIBIT __8__ PAGE _95_

**ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)**

**ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)**

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

**MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)**

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT __8__ PAGE 96

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel.  Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13).  Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes.  Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant.  The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**.  The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language.  Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ___8___ PAGE _97_

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

## MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**. The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. _See_ Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard _prior to_ the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

## DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ___8___ PAGE _98_

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ___8___ PAGE _99_

# Exhibit 9

DALE M. CENDALI (admitted *pro hac vice*)
DIANA TORRES (S.B. #162284)
WILLIAM J. CHARRON (S.B. #220518)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407
wcharron@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone:   (310) 553-3000
Facsimile:   (310) 557-9815

Attorneys for MGA Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-9049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727) |
| Plaintiff, | **[DISCOVERY MATTER]** |
| v. | **[PUBLIC REDACTED]** |
| MATTEL, INC., a Delaware corporation, | **MGA ENTERTAINMENT, INC'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO MATTEL'S THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6) AND FOR SANCTIONS** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date: Time: |
| | Discovery Cutoff: January 14, 2008 Pre-trial Conference: April 7, 2008 Trial Date: April 29, 2008 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................ 1

II.     WITHOUT COURT-GRANTED LEAVE, MATTEL IS NOT
        PERMITTED TO DEPOSE MGA AGAIN ........................................ 2

III.    MATTEL FAILED TO SHOW GOOD CAUSE TO REDEPOSE MGA,
        *INSTEAD OF ISAAC LARIAN*, ABOUT STATEMENTS MADE BY MR.
        LARIAN TO PRESS OUTLETS ........................................................ 4

IV.     MATTEL FAILED TO SHOW GOOD CAUSE TO DEPOSE MGA *A
        SECOND TIME* ABOUT ITS STORAGE OF EMPLOYEES'
        ELECTRONIC INFORMATION ........................................................ 6

V.      MATTEL FAILED TO SHOW GOOD CAUSE TO DEPOSE MGA
        ABOUT DETAILS FOR ITS INTERVIEW/EMPLOYMENT
        CONSIDERATIONS FOR *EVERY EMPLOYEE HIRED SINCE* 1995
        "TEST PROJECTS" ............................................................................ 9

VI.     MATTEL FAILED TO SHOW GOOD CAUSE TO DEPOSE MGA
        ABOUT PAYMENTS MADE TO MR. LARIAN AND THIRD-PARTY
        NON-WITNESSES .............................................................................. 12

V.      CONCLUSION .................................................................................. 15

EXHIBIT 9
PAGE _10_

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. F.B.I.,*
   186 F.R.D. 137 (D.D.C. 1998) ..................................................8, 10

*American Civil Liberties Union v. Gonzales,*
   237 F.R.D. 120 (E.D. Pa., 2006) ....................................................11

*Ameristar Jet Starter, Inc. v. Signal Composites, Inc.,*
   244 F. 3d 189 (1st Cir. 2001) ..........................................................2

*Barron v. Caterpillar, Inc.,*
   168 F.R.D. 175 (E.D. Pa. 1996) ......................................................3

*Boland Marine & Mfg. Co. v. M/V Bright Field,*
   1999 U.S. Dist. LEXIS 6964 (D. La. May 3, 1999)........................9

*Capital Ventures, Int'l v. Network Commerce, Inc.,*
   2006 U.S. LEXIS 40106, *5 (W.D. Wash. June 14, 2006)............3

*Chenoweth v. Schaaf,*
   98 F.R.D. 587 (D. Pa. 1983)...........................................................15

*Dey, L.P. v. Eon Labs, Inc.,*
   2005 WL 3578120, at *6 (C.D. Cal. Dec. 22, 2005)......................7

*E.E.O.C. v. HBE Corp.,*
   157 F.R.D. 465 (E.D.Mo.1994).......................................................8

*Expert Choice, Inc. v. Gartner,*
   2006 U.S. Dist. LEXIS 41466 (D. Conn. June 21, 2006) ..............2

*Hecht v. Pro-Football, Inc.,*
   46 F.R.D. 605 (D.D.C.1969)..........................................................13

*IGT v. Alliance Gaming Corp.,*
   2006 U.S. Dist. LEXIS 72165, 7-8 (D. Nev. Sept. 28, 2006) ....6, 9

*In re Applied Micro Circuits Corp. Secs. Litig.,*
   2003 U.S. Dist. LEXIS 9371 (S.D. Cal. May 20, 2003) ................6

*In re Indep. Serv. Org. Antitrust Litig.,*
   168 F.R.D. 651 (D. Kan. 1996) ...............................................3, 9, 10

*In re Sulfuric Acid Antitrust Litig.,*
   2005 U.S. Dist. LEXIS 17420 (D. Ill. Aug. 19, 2005)................2, 3

*Innomed Labs, LLC v. Alza Corp.,*
   211 F.R.D. 237 (S.D.N.Y.,2002)..................................................2, 5

*Lackawanna Refuse Removal, Inc. v. Proctor & Gamble Paper Products Co.,*
   2 F.R.Serv. 2d 375 (D. Pa. 1978) ..................................................16

*Mattel, Inc. v. Walking Mountain Prod.,*
   353 F.3d 792 (9th Cir. 2003) ..........................................................10

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,*
   134 F.R.D. 275 (N.D. Cal. 1991) .....................................................8

- ii -

**EXHIBIT 9**
**PAGE 102**

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Melhorn v. N.J. Transit Rail Operations, Inc.,*
    203 F.R.D. 176 (D. Pa. 2001) ................................................................3

*Nicholas v. Wyndham Int'l, Inc.,*
    373 F.3d 537 (4th Cir. 2004) ...........................................................6, 13

*Skinner v. Aetna Life Ins. Co.,*
    1984 U.S. Dist. LEXIS 19817, 2-3 (D.D.C. 1984) ...............................15

*Smithkline Beecham Corp. v. Apotex Corp.*
    2000 WL 116082, *9 (N.D. Ill. Jan. 24, 2000) .................................8, 10

*Snoddy v. City of Nacogdoches,*
    98 Fed. Appx. 338 (5th Cir. 2004) .........................................................4

*U.S. v. Mass. Indus. Fin. Agency,*
    162 F.R.D. 410 (D. Mass. 1995) ............................................................3

*United States v. District Council of New York City,*
    1992 WL 208284 at *15 (S.D.N.Y. Aug. 19, 1992) ...............................8

*Westside Marrero Jeep Eagle, Inc. v. Chrysler Corp.,*
    1999 WL 458767, at *1 n.1 (E.D. La. 1999)...........................................3

*Zappia Middle E. Constr.,*
    1995 U.S. Dist. LEXIS 17187, 1995 WL 686715, at *6 (S.D.N.Y.
    Nov. 17, 1995) ......................................................................................9

**RULES**

Fed R. Civ. P. 26(b)(2) ................................................................................6, 7

Fed. R. Civ. P. 30(a)(2)(B) ...........................................................................2, 6

Fed. R. Civ. P. 30(b)(6) ................................................................................5, 7

**TREATISES**

Moore's Federal Practice 3D, at § 30.05[1][c] ................................................6

CC1:767852.3

## I. Introduction

Mattel's current motion amounts to nothing more than a transparent effort in its ongoing attempt to distract the Court and the parties from its own discovery dereliction and misconduct by using discovery motions to distort the record and attack MGA. It is black letter law that a party cannot serve a second—much less a third—deposition notice of a company without moving for and obtaining leave from the Court. On June 5, 2007, Mattel served its third 30(b)(6) deposition notice on MGA. It filed no motion for leave before doing so, and no leave was granted for Mattel to seek a third deposition of MGA. Yet now Mattel moves to compel MGA to produce witnesses under a deposition notice it had no right to serve—and has the temerity to request sanctions as a reward for doing so.

While it is true that Mattel's need to "change the debate" with discovery motions and other diversionary tactics has never been greater—especially now that Mattel's willful destruction of its electronic files has finally been brought to light in MGA's pending motion for terminating and other sanctions[1]—this in no way excuses its filing a motion seeking to punish MGA for rightly refusing a demand Mattel has no right to make under the clear mandates of the Federal Rules. Nor does it justify that motion exceeding the 25-page limit that applies to all briefs filed in the Central District absent permission to do so. Had Mattel not dedicated nearly a third of its brief to accusations and aspersions about discovery disputes long-since briefed and resolved by this Court, it easily could have filed a brief that complied with the Court's briefing rules.

And if filing a motion that was substantively defective (no leave to take a third deposition) and procedurally barred (exceeds the page limits) were not enough, Mattel also attempts to improperly shift the burden of proof. A party seeking leave to redepose a corporate party bears the burden of showing good cause, which Mattel tried to avoid by

---

[1] On July 24, 2007, MGA filed a motion for terminating sanctions against Mattel, Inc. due to spoliation of evidence. The motion addresses Mattel's willful failure to stop its automatic deletion of emails for nearly three years after it was aware of the claims at issue in this lawsuit. *See* Charron Decl. Exh. C (MGA Entertainment, Inc.'s Motion for Terminating Sanctions Against Mattel, Inc. Due to Spoliation of Evidence).

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

EXHIBIT 9
PAGE 107

1   filing a motion to compel instead of seeking leave.  As such, its motion is fatally devoid of

2   any showing of good cause for deposing MGA again.  Instead of showing cause, Mattel

3   repeatedly argues, incorrectly—that MGA "bears the burden of proof."  (*E.g.* Mot. at

4   22:9-10).  The rules of civil procedure exist for good reason.  Mattel should be required to

5   follow them, and its motion should be denied.

6   **II.  Without Court-Granted Leave, Mattel Is Not Permitted to Depose MGA Again**

7           Mattel's motion to compel should be denied for the simple reason that it failed to

8   obtain the Court's permission to take MGA's deposition another time before it served the

9   deposition notice.  30(b)(6) depositions, like all others, are governed by Rule 30(a)(2)(B)

10  which provides that before a second deposition can occur:  "A party must obtain leave of

11  court . . . if, without the written stipulation of the parties, the person to be examined has

12  been deposed in the case."  Fed. R. Civ. P. 30(a)(2)(B).  *See also, Expert Choice, Inc. v.

13  Gartner*, 2006 U.S. Dist. LEXIS 41466 (D. Conn. June 21, 2006) (Rule 30(a)(2)(B)

14  "applies to an entity being deposed pursuant to Rule 30(b)(6).").

15          Courts "have routinely denied motions seeking leave to re-depose a party for

16  failure to comply with Rule 30(a)(2)(B)."  *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D.

17  237, *239-40 (S.D.N.Y.,2002) (quashing overbroad 30(b)(6) subpoena issued without

18  leave of court).  Leave would be required even if Mattel's third notice sought information

19  on topics different from those examined under its first and second deposition notices,

20  which it does not.  *See In re Sulfuric Acid Antitrust Litig.*, 2005 U.S. Dist. LEXIS 17420

21  (D. Ill. Aug. 19, 2005) (rejecting chemical companies' related argument they had no

22  obligation to seek leave and holding that the subpoenas and notices issued were invalid).

23          In short, because Mattel's "second Rule 30(b)(6) subpoena was issued [] without

24  leave of the court, it was invalid."  *Ameristar Jet Starter, Inc. v. Signal Composites, Inc.*,

25  244 F. 3d 189, 192 (1st Cir. 2001).  As such, Mattel's motion to seeks to compel MGA to

26  designate witnesses in response to an invalid deposition notice, and should be denied on

27  that ground alone.

28          Mattel's substantive failure, however, to even begin to satisfy its burden of proving

- 2 -

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

EXHIBIT 9
PAGE 105

1     that an additional deposition of MGA is warranted, provides an additional basis for

2     denying its motion to compel. The burden of proof lies on the party seeking leave to

3     make a showing, and "[a]bsent some showing of need or good reason for doing so, a

4     deponent should not be required to appear for a second deposition." *Melhorn v. N.J.*

5     *Transit Rail Operations, Inc.*, 203 F.R.D. 176, 180 (D. Pa. 2001) (denying leave where

6     defendant failed to show good cause for conducting a second deposition of the plaintiff).

7     Here Mattel does not even attempt to argue it satisfied this burden, and instead claims

8     (wrongly) that the burden of proof lies with MGA. This completely ignores both the rule

9     and its underlying rationale for requiring leave before depositions can be taken again.

10       Leave of court is required so as to avoid the situation into which we find ourselves,

11     where "an inevitably self-interested party determines that [its] discovery is consistent with

12     the principles stated in Rule 26(b)(2)" and proceeds with impunity. *Sulfuric Acid,* 2005

13     U.S. Dist. LEXIS 17420, at *6. The 30(b)(6) subpoena is an expensive and burdensome

14     discovery tool of last resort that courts tend to disfavor. If less expensive and less

15     burdensome means are either available or have already proven successful, then leave to

16     proceed with a 30(b)(6) designation may be denied. *See, e.g., In re Indep. Serv. Org.*

17     *Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective order and finding

18     30(b)(6) deposition notice overbroad, burdensome, and highly inefficient since party

19     failed to prove that the information is seeks cannot be discovered by less problematic

20     means or is not already available in the voluminous discovery previously conducted).[2]

21       Where a second 30(b)(6) notice is concerned, regardless of relevance, rather than

22     indulge a party who chose to waste earlier notices in other areas, the court may deny

23     leave. *Capital Ventures, Int'l v. Network Commerce, Inc.*, 2006 U.S. LEXIS 40106, *5

24

---

[2] *See also U.S. v. Mass. Indus. Fin. Agency,* 162 F.R.D. 410, 412 (D. Mass. 1995) ("It is evident to the Court that MIFA could have done a better job in preparing Mr. Slattery for the deposition. . . . [But] the most the Court will do, as indicated to the parties at hearing, is to require MIFA to produce more documents and clarify its position in response to a number of interrogatories."); *Barron v. Caterpillar, Inc.*, 168 F.R.D. 175, 178 (E.D. Pa. 1996) (requiring interrogatory responses and document production); *Westside Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 1999 WL 458767, at *1 n.1 (E.D. La. 1999) ("After Daimler Chrysler has produced a representative to answer questions, the use of interrogatories may be appropriate.").

1   (W.D. Wash. June 14, 2006).  Where a party had opportunity to "formulate substantive

2   questions" and could have noticed the same topics in the first place, but failed to do so, it

3   "must live with its deposition choices." *Id*.  Such treatment can come as no surprise to

4   these parties, because the "Federal Rules expressly state that a district court may limit a

5   party's discovery if that party 'has had ample opportunity ... to obtain the information

6   sought.'" *Snoddy v. City of Nacogdoches*, 98 Fed. Appx. 338, 340 -341 (5th Cir. 2004) [3]

7          Mattel had ample opportunity, and in many cases already obtained the information

8   it moves to compel.  This may explain why it completely circumvented the procedure for

9   taking an additional deposition of a corporate party.  By doing so it attempted to avoid the

10  need to prove why good cause exists to force MGA to be deposed on each of the

11  additional 16 topics in its third notice.  Many of those topics are duplicative of areas of

12  examination already explored with MGA designees, and as such never would have

13  survived briefing on whether leave should be granted.  Moreover, all of the topic areas

14  were known to Mattel when it served its previous notices, such that good cause can hardly

15  be shown for its delay identifying them as areas of examination until now.  Finally, certain

16  of the topics are thinly-veiled efforts to redepose Isaac Larian without seeking leave to

17  take his deposition a second time – a tactic that the Court surely would not have

18  countenanced had Mattel properly sought leave to add those topics before serving its

19  notice of deposition.  Thus, Mattel's motion for leave should be denied because it is based

20  on an invalid 30(b)(6) deposition notice that was served without leave of the court, and

21  without having ever been put to the test of justifying the inclusion of each of the topics.

22  Below MGA demonstrates how Mattel would never have been granted leave to redepose

23  MGA on any of the topics subject to this motion, even had it filed a motion for leave as

24

25  [3] The Court affirmed a motion to quash 30(b)(6) deposition in this TITLE VI case, where Snoddy
    alleged he suffered employment discrimination with respect to promotion, where similar
26  discovery was obtained from other officers deposed and could have been obtained from other
    discovery means.  Snoddy argued that the deposition should not have been quashed because
27  previous deponent did not reveal the information he sought - the identity of the official
    responsible for the promotion decision and the educational and experiential qualifications of the
28  white candidate who was selected.  Regardless, the court denied him. *Id*.

1    required under the Federal Rules.

2    **III.  Mattel Failed to Show Good Cause to Redepose MGA, *Instead of Isaac Larian*,**

3    **about Statements Made by Mr. Larian to Press Outlets**

4           Three of Mattel's new topics pertain to specific statements attributed to Mr. Larian

5    in three specific news articles.  This is a clear misuse if the 30(b)(6) procedure—clearly

6    Mr. Larian is the person making the statements, and clearly Mr. Larian is the person who

7    should be or (as is the case here) have been deposed on these matters.  Rule 30(b)(6)'s

8    procedure was intended to supplement existing discovery practice.  *See* Fed.R.Civ.P.

9    30(b)(6) Advisory Committee's note.  This new procedure was meant to prevent the

10   necessity of naming several company representatives in order to find the one with

11   knowledge of the relevant facts whose testimony could bind the company.  *Id.*; *see also*

12   *Innomed, supra*,  211 F.R.D., at 240 ("The purpose of [Rule 30(b)(6)] is to avoid the

13   difficulties encountered by both sides when the party to be examined is unable to

14   determine who within the corporation would be best able to provide the information

15   sought.").

16          No supplementation is necessary here.  Not only does Mattel know that Mr. Larian

17   is the person who knows the most about what he said to the press (given its self-evidence),

18   but Mattel has *already deposed Mr. Larian about his press statements on July 18, 2006*.

19

20

┌─────────────────────────────────────────┐
│                                          │
│   **Redacted Pursuant to Protective Order**   │
│                                          │
└─────────────────────────────────────────┘

22

23                                   4

24          Despite this prompting from MGA's counsel, Mattel opted limit its examination at

25   that time to one article.  Mattel chose to limit its inquiry—there is no question Mattel was

26   aware of other press accounts—its counsel admitted as much when he began his line of

27

28   _____
     [4] Isaac Larian Depo. Tr., Charron Decl., Exh. B at 56:7-15.

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

questioning on the subject of press statements.[5] In fact all of the press accounts Mattel lists in its notice preceded that deposition by two or three years. There is no doubt that Mattel had a chance to fully question Mr. Larian on these press accounts. That it failed to do in no way justifies Mattel's efforts to redepose MGA on the same topics. "In an adversary system, deposing lawyers can be reasonably expected to make [] inquiries" and when "counsel fails to make reasonable inquiry, a court would be justified in denying a second deposition." Moore's Federal Practice 3D, at § 30.05[1][c].

The fact that Mattel already deposed Mr. Larian about his press statements also makes this third notice both cumulative and duplicative, under Rule 26(b)(2), which guides the Court's analysis for leave under Rule 30(a)(2)(B). Despite Mattel's suggestion otherwise, Rule 26 empowers the court to "limit the frequency or extent of use of otherwise permissible discovery methods where it determines that the discovery sought is cumulative or duplicative, that the party has had ample opportunity to discover the information sought, or that the burden or expense of the proposed discovery outweighs its likely benefit." *In re Applied Micro Circuits Corp. Secs. Litig.*, 2003 U.S. Dist. LEXIS 9371 (S.D. Cal. May 20, 2003. And limit is precisely what the court should do in this case—Mattel should be limited to its earlier questioning of Mr. Larian—at the deposition it noticed and Mr. Quinn himself conducted, where Mattel chose to focus on other, concededly more relevant, areas of inquiry. *See* Zeller Decl., Exh. 33.

Mattel could avail itself of other discovery methods, such as interrogatories or requests for admission with respect to these publications, but in no event is it entitled to what it seeks—to harass Mr. Larian with another deposition. *See, e.g., Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (affirming district court's denial of the 30(b)(6) subpoena as cumulative, duplicative, unduly burdensome, and harassing since both corporate officers had previously been deposed and an "excessive amount of discovery ha[d] already been conducted"); *IGT v. Alliance Gaming Corp.*, 2006 U.S.

---

[5] *Id.* at 55:6-8 ("People want to write about you, and that means lawyers read about what's written about you.")

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

1   Dist. LEXIS 72165, 7-8 (D. Nev. Sept. 28, 2006) (30(b)(6) deposition notices unduly

2   burdensome where "[m]ost of the 30(b)(6) deposition topics have parallel interrogatories

3   and requests for production").

4   **III. Mattel Failed to Show Good Cause to Depose MGA *A Second Time* about Its**

5   **Storage of Employees' Electronic Information**

6          Despite the fact that Mattel already deposed an MGA designee on the general topic

7   of how and where it preserved the electronic data for its employees, Mattel now seeks to

8   redepose MGA about the storage for specific individuals.  As explained below, that

9   inquiry was undertaken in a previous deposition and any admissible evidence another

10  inquiry could uncover is already subject to other discovery requests by Mattel.

11         Mattel asked, and Kenneth Lockhart answered, about the information known or

12  reasonably available to Mattel regarding the storage practices of its employees.  Mattel

13  admits as much in its Motion (*See* Mot. at 13-14): "To be sure," Mattel admits, "Lockhart

14  testified about the location and disposition of MGA employees' hard drives and storage

15  devices in general." (*Id*. at 13).  So what's Mattel's quibble?  Mr. Lockhart could not say

16  what steps were taken by certain individuals - most of whom are no longer employed by

17  MGA - "outside of [MGA's] normal process." *Id*. at 15.  Neither Mr. Lockhart nor MGA

18  can know every "hard drive" that any given former employee used to store data, nor are

19  they expected to.  According to Rule 30(b)(6), a corporate designee must testify as to

20  information known or "reasonably available" to the corporation.  Fed. R. Civ. P. 30(b)(6).

21         Moreover, the information about the specific storage of specific hard drives for

22  specific people is irrelevant, or at the very least insufficiently relevant to outweigh the

23  burden of subjecting Mr. Lockhart a second deposition or any MGA representative to the

24  exercise Mattel proposes.  Mattel claims information about the particular devices where

25  particular individuals store their data is needed, as it may lead to additional "data related

26  to the 'Bratz' or 'Angel' projects that are squarely at issue" (but to which, they admit,

27  their 30(b)(6) is in fact not tailored but merely "includes," *see* Motion at 2:11-15).  If

28  uncovering this data, and not harassing MGA, is Mattel's true purpose, then Mattel can

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

1   simply request—*as it has*—that MGA (or, in certain instances, those individuals) produce

2   the particular documents from those individuals, however they may have been stored.

3   Requiring MGA to gather information about where the documents another other

4   information is stored, when it has already demanded and received the documents stored in

5   those computers, is pointless.  No doubt, were Mattel allowed to proceed with such a

6   deposition, and Mr. Lockhart were to forget even some of that useless information, it

7   would doubtlessly file another motion complaining about that fact.  But the 30(b)(6)

8   deposition is not meant to be a "memory test."  *Alexander v. F.B.I.*, 186 F.R.D. 137, 141-

9   43 (D.D.C. 1998) (further noting that Rule 30(b)(6) "puts several duties on the designating

10  party and on the deponent, but one of them is not omniscience.").

11      If Mattel truly were interested in ascertaining the precise details about the computer

12  storage for a specific individual, the proper means to acquire that information would be an

13  interrogatory—*not a third 30(b)(6) deposition*.  As the Northern District of Illinois

14  recognized when it denied further 30(b)(6) inquiry into a topic when the party "could

15  readily have obtained the same information in a more efficient manner by propounding

16  'standard' interrogatories upon its opponent [and by] doing so, [the party] could obtain the

17  same information with infinitely less intrusion."  *Smithkline Beecham Corp. v. Apotex*

18  *Corp.* 2000 WL 116082, *9 (N.D. Ill. Jan. 24, 2000)(citations omitted).  *See also,*

19  *McCormick-Morgan. Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991)

20  (recognizing that interrogatories are more appropriate that Rule 30(b)(6) depositions for

21  capturing all information available to the corporation), *rev'd on other grounds* ("[W]e are

22  concerned that in a case like this, no one human being can be expected to set forth,

23  especially orally in deposition, a fully reliable and sufficiently complete account"

24  covering all the information sought).

25      When asked about individuals and how they stored their data, Lockhart made it

26  clear that he could not say if those individuals stored data outside of MGA's storage

27  practices.  Mattel has proffered no reason to require MGA to interview employees about

28  where their personal storage (interviews that may prove fruitless regardless) is kept,

- 8 -

1  designate an agent to memorize all that information, and then deliver it to Mattel via a

2  costly deposition. The same interviews may be had and, furthermore, admissible

3  information discovered, through the written discovery process. And where such is the

4  case, 30(b)(6) may be denied regardless of relevancy.

5      Indeed, courts routinely reject the abuse of 30(b)(6) notices that seek a witness to

6  "respond to what are essentially a form of contention interrogatories." *Indep. Serv. Org.*,

7  168 F.R.D. at 654 (citation omitted); *IGT, supra*, 2006 U.S. Dist. LEXIS 72165, 11-12

8  (30(b)(6) notices denied because interrogatories were more appropriate method for more

9  complex issues); *see also Zappia Middle E. Constr.*, 1995 U.S. Dist. LEXIS 17187, 1995

10  WL 686715, at *6 (S.D.N.Y. Nov. 17, 1995) (when deponent lacked information about

11  all entities on a certain list, better course was to obtain production of document rather than

12  depose another witness who would merely testify to contents of list after reviewing it);

13  *Boland Marine & Mfg. Co. v. M/V Bright Field*, 1999 U.S. Dist. LEXIS 6964 (D. La. May

14  3, 1999) (denying motion to compel additional 30(b)(6) witness where inquiry "would

15  either be better addressed to individually identified and deposed fact witnesses or can be

16  more easily determined by submitting an interrogatory or by reference to particular

17  documents.").

18  **IV  Mattel Failed to Show Good Cause to Depose MGA about Details for Its**

19  **Interview/Employment Considerations for *Every Employee Hired Since 1995***

20      Mattel seeks to depose MGA with regard to how it proceeded with hiring virtually

21  every single employee hired since 1995, through its request to inquire as to "test projects"

22  assigned to prospective candidates. The sheer breadth and tangential relevance of such an

23  inquiry is more than enough justification to deny this request.

24      Moreover, MGA cannot prepare a witness to answer questions about the phrase

25  "test projects," without knowing Mattel's definition of that phrase. Mattel seeks to play

26  cute rather than provide this definition, by claiming that "Defendants use that term to

27  describe one of their own supposed defenses in the case" (Mot. at 2:27-28). It turns out

28  the only party who used that phrase is Mattel. Bryant testified he did a "tryout kind of a

- 9 -

EXHIBIT 9
PAGE 112

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

1   project" (Mot. at 19), and "kind of a test" (Mot. at 20), "a test assignment" (*id.*). Mattel

2   makes much of MGA's counsel's use of the phrase in questioning a Mattel witness. This

3   is a particularly breathtaking display of Mattel's willingness to twist the facts to meet its

4   ends - a review of the record bears out that MGA's counsel was quoting *from Mattel's*

5   *interrogatory responses*, and referring to that exhibit when questioning the witness as

6   follows:

> **Redacted Pursuant to Protective Order**

7                                                                              This being

8   the case, Mattel's counsel's objection to its own phrase on vagueness grounds only adds

9   to the evidence of Mattel's intent to harass MGA.

10          Arguably, in its Motion, Mattel finally defines the term, as "having an employment

11  prospect create artwork as part of the job interview process," claiming this was Bryant's

12  explanation. (Mot. at 22:3-4). Even if the Discovery Master accepts Mattel's attempt to

13  cure the ambiguity of its request, relevance and overbreadth remain as ailments. Mattel is

14  requesting that MGA designate a witness who can review and potentially memorize

15  information about every single person who has applied for a job at MGA since 1995. But

16  "the recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its

17  factual evidence to prepare a witness to be able to testify regarding a defense or claim,"

18  particularly when the information is discoverable from other sources. *SmithKline*, 2000

19  WL 116082 at *9; *see also Indep. Serv. Orgs.*, 168 F.R.D. 651, 654 (affirming protective

20  order against 30(b)(6) deposition notice as overbroad, unduly burdensome, and sought

21  duplicative discovery, where information sought could be discovered by other means or

22  was already available in the voluminous discovery previously conducted); *Alexander*,

23  supra, 186 F.R.D, at 143 (30(b)(6) deponent not under duty of omniscience); *Mattel, Inc.*

24  *v. Walking Mountain Prod.*, 353 F.3d 792, 813-15 (9th Cir. 2003) (affirming District

25  Court's decision to quash Mattel's 30(b)(6) subpoena and award attorney's fees to

26

27  ⁶ Mattel conveniently omits this question, which immediately precedes the portion quoted in its
28  Motion. *Compare* Mot. at 21, fn. 61, *with* Sandy Yonemoto Depo Tr., Charron Decl., Exh. A at
    73:2-75:25.

                                    - 10 - EXHIBIT 9        MGA'S OPPOSITION TO MATTEL'S
                                    PAGE  113               MOTION TO COMPEL
                                                           CASE NO. CV 04-9049

1   opposing party where Mattel served overbroad subpoenas requesting for information of

2   non-parties. The court, finding a "clear" "pattern" whereby Mattel's counsel filed

3   oppressive subpoena requests against employers even when clear that employee was not

4   speaking for the employer, and concluded that "the Subpoena was served for the purpose

5   of annoying and harassment and not really for the purpose of getting information.").

6       If in this instance Mattel seeks not to harass, but instead to learn what supports

7   Bryant's claim as to industry practice, a contention interrogatory to Bryant appears most

8   appropriate. *See, e.g., American Civil Liberties Union v. Gonzales*, 237 F.R.D. 120,

9   *122 (E.D. Pa., 2006) (court had "granted defendant's motion to quash and found that

10  plaintiffs had not adequately proven to me that oral deposition testimony on the topics

11  listed in their notice of deposition was the least intrusive or burdensome means by which

12  to garner discoverable information from defendant and that the requested information

13  could instead be gained through contention interrogatories," despite the fact that

14  information sought - the DOJ's applied definition of "obscene" and "harmful to minors" -

15  was squarely related to challenging constitutionality of the Child Online Protection Act.)

16      But even if Mattel were entitled to the more burdensome path it proposes, because

17  this entire topic is only relevant to Bryant's transition from Mattel, Mattel's proposed time

18  frame is overbroad as applied to MGA. Mattel chose 1995 as a time-marker, it claims,

19  because it "is congruent with the time period Bryant has been in the toy industry." Mattel

20  further notes it needs MGA's "1995 to the present" information to refute "assertions that

21  Bryant's working for MGA while employed by Mattel was no different than a supposedly

22  standard industry practice of having candidates for creative positions make artwork as part

23  of the job interview." (*See* Mot. at 22:9-19). In other words, the only relevance of the

24  proposed time period is as relates to Bryant's work for Mattel - not MGA, much less the

25  hiring process to which MGA subjected each of its applicants for the past 12 years.

26      No one disputes that Bryant was not working for MGA in 1995. Even by Mattel's

27  contentions, Bryant only began working for MGA in late 2000 at the earliest. Thus the

28  only MGA practice relevant to Mattel's attempt at refuting Bryant's claim - that his 2000

- 11 -   **EXHIBIT 9**
**PAGE 114**

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

1   work for MGA was standard industry practice at that time - is MGA's practice in the year

2   2000, when it interviewed Bryant. Mattel does not claim that "standard industry practice"

3   vis-à-vis jobs in the toy industry is stagnant, *i.e.* that the practice in 1995 remained the

4   practice through today. But even if it did, such a showing would not tend to prove or

5   disprove what the practice was in 2000. The only way Mattel can make its case that the

6   practice in 2000 was different than Bryant claimed is with reference to that year; pointing

7   to MGA's practice in 1995, 1996, 1997, 1998, 1999, 2001, 2002, 2003, or even 2007 gets

8   Mattel nowhere. Moreover, MGA's practice alone does not tend to prove or disprove the

9   "standard industry practice" of any time period. Such is more properly the subject of

10  expert testimony.

11       Mattel points to the discovery it had to answer, pursuant to Bryant's requests, as

12  rendering 1995 relevant. Again, this has no bearing on MGA. Mattel was forced to

13  designate witnesses for 1995 because Bryant worked for Mattel "from 1995" as Mattel

14  freely admits. (Mot. at 22:20-24) Thus, Mattel's contracts with its employees during that

15  time include its first and subsequent contracts with *Bryant*, including the contract at issue

16  in this litigation.

17  **V. Mattel Failed to Show Good Cause to Depose MGA about Payments Made to Mr.**

18  **Larian and Third-Party Non-Witnesses**

19       Mattel seeks to redepose MGA to force a corporate designee to testify about

20  payments made by MGA to Mr. Larian, as well as two individual who have nothing to do

21  with this lawsuit—Mr. Larian's brother, and the individual who arbitrated a dispute

22  between the two of them. Such payments, if any, have no relevance to this current

23  lawsuit. Mattel's only attempt to show otherwise is to argue that the Court previously

24  compelled the production of sworn statements made in the arbitration between Mr. Larian

25  and his brother that *pertain to the development and creation of Bratz items*. By Mattel's

26  reasoning, because the Court found those statements relevant, anything else connected to

27  that arbitration in any way must ergo be relevant as well, including in this instance

28  payments made at any time after 1999 to any of the people involved in that arbitration—

- 12 -

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

EXHIBIT 9
PAGE 115

1    regardless of whether those payments have any connection to that proceeding. In other

2    words, Mattel attempts to bootstrap every element of that arbitration into discovery here

3    relying on the Court's permitting discovery into the only items expressly found to relate to

4    one of the topics that underlies this litigation. This does not come close to a sufficient

5    showing of good cause to allow another deposition of MGA on the broad issue of

6    payments to individuals.

7         Recognizing that this attempt may fail, Mattel then tries another ruling on for size -

8    the one by which the Discovery Master ordered MGA to produce documents showing its

9    payments to Mr. *Bryant*. To be clear, this is the same Bryant who was formerly Mattel's

10   employee, against whom Mattel initially filed this lawsuit, and the timing of whose

11   employment at MGA and Mattel is a contested issue. Mattel admits, because it must, that

12   the Discovery Master held these payments relevant because they "could show when and

13   what trade secret information Bryant and other defendants allegedly misappropriated from

14   Mattel." (Mot. at 24, citing Zeller Dec., Exh. 32). And this is as far as this argument can

15   go - payments flowing from MGA to the Larians and an arbitrator have no bearing on the

16   date and substance of Mattel's alleged stolen trade secrets.

17        With respect to Mr. Larian's brother and the arbitrator, Mattel seeks private

18   financial records of persons who are neither parties nor witnesses in this action, and

19   whose only connection is knowing people involved in the lawsuit. In instances such as

20   this, where a party seeks financial information of non-related third parties, courts deny

21   attempts to invade the privacy interests of such individuals::

22       The fact that they may be allied to the parties as argued by learned counsel
         for the plaintiffs does not necessarily change the situation even though it
23       may be of some interest. The right of privacy and the right to keep
         confidential one's financial affairs is well recognized. It seems to be part of
24       human nature not to desire to disclose them. It is not privileged matter in
         the legal sense of the term, but even if the information is not privileged, and
25       it is not, it still may be oppressive or unreasonable to require disclosure at
         the taking of a deposition. This information can be obtained at the trial if
26       the trial progresses to a point where it becomes relevant. It seems oppressive
         and unreasonable to require these persons to disclose this information in
27       advance when many things may happen between now and the trial that
         might make the disclosure unnecessary.

28

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

1   *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, *607 (D.D.C.1969) (plaintiff claimed he'd

2   been prevented from organizing a professional football club because of a league's illegal

3   exclusive agreement for stadium use, and issued subpoenas seeking profit and loss

4   statements and records showing prices non-party witnesses paid for and/or earned for

5   sales of partnership interest in one of the league's clubs, which the court ruled invalid).

6          Even if Mattel's argument could render the payments made to non-parties relevant

7   and non-protected, "the simple fact that requested information is discoverable under Rule

8   26(a) does not mean that discovery must be had." *Nicholas, supra*, 373 F. 3d, at 543.  The

9   court "may limit the frequency and extent of use of the discovery methods otherwise

10  permitted under the Rules," and is warranted in so doing where, as here, plaintiffs seek

11  information with "tenuous connection to the underlying lawsuit." *Id.*  This is another fight

12  with another dog - the financial relationship between the Larian brothers is not an issue

13  here, much less their arbitration fees.

14          With regard to MGA's payments to Mr. Larian, as with press accounts, Mattel had

15  the opportunity to ask Mr. Larian about the arbitration and payments made to him in

16  connection with that action at his July 18, 2006 deposition.  Mr. Larian volunteered the

17  arbitration and provided the perfect opportunity for a seasoned litigator such as Mr. Quinn

18  to conduct the very inquiry that Mattel claims must be conducted (again) now.[7]  In fact,

19  Mattel did ask about payments made between the parties in that arbitration, and Mr.

20  Larian testified on that subject—Mr. Larian made clear he made no payments to his

21  brother in conjunction with the arbitration.[8]  No further discovery on that subject should

22  be permitted.

23          As for the broader subject of virtually *any payment from MGA to Mr. Larian* since

24  1999, the only argument Mattel can muster for why such payments are relevant is that

25  they relate to his net worth—a topic they claim they will have a right to inquire into

26

27  [7] Charron Decl., Exh. B (Larian Depo. at 14:2-12).  In fact, Mr. Quinn took full advantage of this
    opportunity and obtained Mr. Larian's answer to this question already.  *Id.* at 161:9-162:12

28  [8] Charron Decl., Exh. B (Larian Depo. at 161:13-162:12).

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

1  should they win the right to punitive damages. But Mattel has not made the required

2  threshold showing to be permitted to proceed with "net worth" discovery at this time. The

3  law is clear on this point. Where a party only has proffered the allegations in its

4  complaint—"nothing other than statements, conclusive in nature"—and so left the Court

5  "unable to say that there is a real possibility that punitive damages will be an issue," a

6  30(b)(6) notice for financial information is improper. *Chenoweth v. Schaaf*, 98 F.R.D.

7  587, 590 (D. Pa. 1983) (granting protective order and denying motion to compel) (The

8  Court made clear that "[t]his in no way prohibits plaintiff from obtaining punitive

9  damages should a sufficient evidentiary showing be made at trial." *Id.*); *see also Skinner*

10 *v. Aetna Life Ins. Co.*, 1984 U.S. Dist. LEXIS 19817, 2-3 (D.D.C. 1984) ("defendant [not

11 required] to respond to and produce documents and records to a pervasive request for

12 documents and records concerning [its] financial condition....especially in light of the

13 amount of discovery conducted to date, including the deposition of at least five (5) of the

14 defendant's employees involved in handling [the underlying insurance application and

15 subsequent claim.]").

16       Even if Mattel had a right to "net worth" discovery at this time, discovery into one

17 of Mr. Larian's many sources of income, without other discovery into his other assets and

18 all of his liabilities, cannot establish his net worth. As such, this inquiry would only be an

19 exercise in harassment.

20       Mattel failed to provide any reason, much less good cause, to redepose MGA to

21 inquire as to payments made to either Mr. Larian or non-parties and non-witnesses.

22

23

24

25

26

27

28

- 15 -

EXHIBIT 9
PAGE 118

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

## VI. Conclusion

For the foregoing reasons, Mattel's Motion to Compel Production of Witnesses for Deposition pursuant to its Third Notice to MGA, should be denied in its entirety and no sanctions should be awarded.[9]

Dated: July 31, 2007

DALE M. CENDALI
DIANA TORRES
WILLIAM J. CHARRON
O'MELVENY & MYERS LLP

By: _____
       William J. Charron

Attorneys for MGA Entertainment, Inc.

---

[9] With regard to Mattel's request for sanctions, in light of its failure to satisfy even the most basic requirements of civil procedure (as established by the numerous cases cited on the subject) before proceeding with service of its deposition notice, to say nothing of this motion to compel, no sanctions should be awarded in response to its motion.

- 16 - EXHIBIT 9
PAGE 119

MGA'S OPPOSITION TO MATTEL'S
MOTION TO COMPEL
CASE NO. CV 04-9049

# Exhibit 10

# CONFORMED COPY

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

11   CARTER BRYANT, an individual,

12          Plaintiff,

13      v.

14   MATTEL, INC., a Delaware corporation,

15          Defendant.

16

17

18

19   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
20   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.

21

22

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND
DENYING IN PART MATTEL'S
MOTION TO COMPEL MGA TO
PRODUCE WITNESSES PURSUANT
TO THIRD NOTICE OF DEPOSITION
UNDER RULE 30(b)(6); DENYING
REQUEST FOR SANCTIONS**

23                      ## I. INTRODUCTION

24          On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25   Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26   Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27   to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28

2007 SEP 26  PM 2: 28
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

FILED

EXHIBIT 10
PAGE 126

1    July 31, 2007, MGA submitted an opposition brief. On August 6, 2007, Mattel submitted a reply

2    brief. The matter was heard on September 24, 2007. Having considered the motion papers and

3    the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4    sanctions is denied.

5                             II. BACKGROUND

6        Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7    which specified eight topics for deposition. Mattel served a Second Notice of Deposition of

8    MGA in February of 2007, which specified forty-six topics for deposition. On June 5, 2007,

9    Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10    the present motion to compel. The Third Notice specifies sixteen topics for deposition. On June

11    29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12    conferred. The parties were not able to resolve their disputes regarding four subject matters: hard

13    drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14    8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15    and Morad Zarabi (Topic 11-13). The topics at issue are set forth below.

16                  Hard Drives and Other Storage Devices

17        1.      The IDENTITY, current or last known location, and disposition of

18    each STORAGE DEVICE that each of the following PERSONS has used to

19    create, generate, prepare, draft, send and/or receive any DOCUMENT or

20    DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21    ANGEL at any time since January 1, 1999, including without limitation the date

22    of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23    Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24    Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25    Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26    O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27    Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

1       2.     The IDENTITY, current or last known location, and disposition of

2   each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of

3   this Notice, including without limitation the date of creation and the date of

4   disposition of each such backup or copy.

5       3.    YOUR search for and production of DOCUMENTS and DIGITAL

6   INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this

7   Notice.

8                <u>Prior Inconsistent Statements to the Press</u>

9       6.    YOUR statements to Christopher Palmeri in connection with the

10   Business Week article entitled "To Really Be A Player, Mattel Needs Hotter

11   Toys," published on or about July 28, 2003, including without limitation in

12   connection with the statement that Isaac Larian "got the idea for Bratz after seeing

13   his own kids run around in navel-bearing tops and hip-huggers."

14       7.    YOUR statements to Denise I. O'Neal in connection with the

15   Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll

16   World," published on or about March 5, 2004, including without limitation in

17   connection with the statements that MGA's "creative team decided the name

18   should be catchy and not have more than six letters. Keeping with today's trend

19   of making names more 'cool' by changing the spelling, MGA executives decided

20   to replace the 's' with a 'z'"

21       8.    YOUR statements to Jeff Weiss in connection with the San

22   Fernando Valley Business Journal article entitled "Immigrant's Creative

23   Company Shakes Up Toy Industry," published on or about March 29, 2004,

24   including without limitation in connection with the statement that "[i]t was

25   Jason's idea for Bratz."

26                <u>"Test Projects" for MGA</u>

27       9.    The IDENTITY of each PERSON who YOU had perform, or who

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 10
PAGE 122

1    YOU requested, asked or solicited to perform, any "test project" in advance of or

2    in consideration of employment by YOU since January 1, 1995, including without

3    limitation the IDENTITY of each such PERSON who was a MATTEL employee

4    at the time.

5         Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

6         11.    Payments of money or any other item of value that YOU have

7    made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8    Larian since January 1, 1999, including without limitation (a) the amounts of such

9    payment and the equivalent dollar value of each of item of value, (b) the dates of

10   such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11   IDENTITY of each bank or financial institution account to which such payment

12   was made and (e) the reasons for each such payment.

13        12.    Payments of money or any other item of value that YOU have

14   made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15   Larian since January 1, 1999, including without limitation (a) the amounts of each

16   such payment and the equivalent dollar value of each of item of value, (b) the

17   timing of each such payment, (c) the IDENTITY of each recipient of each such

18   payment, (d) the IDENTITY of each bank or financial institution account to

19   which such payment was made and (e) the reasons for each such payment.

20        13.    Payments of money or any other item of value that YOU have

21   made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22   Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23   such payment and the equivalent dollar value of each item of value, (b) the timing

24   of each such payment, (c) the IDENTITY of each recipient of such payment,

25   (d) the IDENTITY of each bank or financial institution account to which such

26   payment was made and (e) the reasons for each such payment.

27   Zeller Decl., Ex. 23.

28

1        Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2  9 and 11-13, and overruling all of MGA's objections and limitations. Mattel contends that the

3  testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4  cumulative or duplicative of any other deposition testimony already given in the case.

5        MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6  of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7  MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8  examining MGA any further. MGA further contends that Mattel has not established the requisite

9  good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10  its objections to the Third Notice. Lastly, MGA contends that Mattel has had many opportunities

11  to obtain, and in many cases has already obtained, the information it now moves to compel.

12                  III. STANDARDS

13      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

16  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17      Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18  use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19  cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20  burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21  discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22  proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23  amount in controversy, the parties' resources, the importance of the issues at stake in the

24  litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25  26(b)(2)(C).

26      Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27  a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

1   30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2   court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3   Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4   30(a)(2)(B).

5                                    IV. DISCUSSION

6          As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7   to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8   party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9   Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22            Hard Drives and Other Storage Devices (Topics 1-3)

23          Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1.  Topic 3 seeks information regarding MGA's search for and production of documents

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    6

EXHIBIT 10
PAGE 125

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2         MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means.  Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8         Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things."  A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18        Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel.  Mattel's Reply at p.7.

24        Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28

1   or failed to search for and produce responsive documents located on the hard drives of the other

2   individuals named in Topic 1.  It is burdensome and expensive to prepare a witness to testify

3   about the locations and dispositions of hard drives used for 24 different individuals. The likely

4   benefit of undergoing such a burden and expense is doubtful.  Furthermore, there are other less

5   burdensome and less expensive means of assessing whether MGA has complied with its

6   discovery obligations, including for example, document requests and interrogatories.  Therefore,

7   Mattel's motion is denied as to Topics 1-3.

8                    <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9          Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz.  MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence.  MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means.  Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant.  MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18         Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian.  Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him.  Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial.  Mattel's Reply at p.6.

24         MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8.  MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

EXHIBIT 10
PAGE 127

1    MGA now.  MGA also contends that Mattel could avail itself of other discovery methods, such as

2    interrogatories or requests for admission, to obtain further information about the publications

3    identified in Topics 6-8.

4         Topics 6-8 seek information relevant to the central issue in the case:  who conceived of

5    Bratz.  Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6    bind the corporation.  The testimony Mattel now seeks is not unreasonably cumulative or

7    duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8    questioned Isaac Larian about only one of the articles identified in Topics 6-8.  Further, the likely

9    benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10   6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11   seeks.  Mattel's motion is granted as to Topics 6-8.

"Test Projects" for MGA (Topic 9)

12

13        In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14   requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15   employment by MGA since January 1, 1995.  MGA objected to Topic 9 as irrelevant, not

16   reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17   burdensome, and unreasonably cumulative and duplicative.  MGA also objected to Topic 9 as

18   vague and ambiguous, particularly with respect to the term "test project."  MGA also objected to

19   Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20   less burdensome and less expensive means.  MGA also objected to Topic 9 as seeking

21   confidential, proprietary, and commercially sensitive information with no relevance to the

22   litigation.

23        When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24   of a project for" MGA.  Zeller Decl., Ex. 29 at 9:19-20.  He also referred to this "tryout" project

25   as a "test assignment."  Id. at 515-516.  In light of Bryant's testimony, Mattel's stated purpose of

26   Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27   working for MGA while employed by Mattel was no different than a supposedly standard

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 10
PAGE 128

1  industry practice of having candidates for creative positions make artwork as part of the job

2  interview." Mattel's Motion at p.22.

3        MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5  objectionable as overbroad, reasoning that it would require MGA to provide information "with

6  regard to how it proceeded with hiring virtually every single employee hired since 1995."

7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8  MGA to have a designee review and potentially memorize information about every single person

9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12        Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23  <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)</u>

24        In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

1    also objected to Topics 11-13 to the extent that the information sought is obtainable through

2    other, more convenient, less burdensome and less expensive means.  MGA also objected to

3    Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4    relevance to the litigation.

5         Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6    Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7    that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8    alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9    Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10   therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11   Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12   claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13   acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14   contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15        MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16   objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17   parties nor witnesses in this action, and whose only connection is knowing people involved in the

18   lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19   that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20   also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21   this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22   made to him would not establish his net worth because they represent only one of many sources

23   of income and do not account for his other assets and liabilities.

24        MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25   defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26   and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27   relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 10
PAGE 130

1   net worth, even if they represent one source of income. The burden of producing such information

2   does not outweigh its relevance, taking into consideration the circumstances of this case.

3   Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4   motion is granted as to Topics 11 and 12.

5        In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6   litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7   payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8   affairs.  Mattel's motion is denied as to Topic 13.

9                           V. CONCLUSION

10        For the reasons set forth above, it is hereby ordered as follows:

11       1.    Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12       2.    Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13   deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14   regarding Topic 9 that is limited to the years 1998 through 2004.

15       3. Mattel's request for sanctions is denied.

16   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17   Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20   Dated: September _25_, 2007

21                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                    12

EXHIBIT 10
PAGE 131

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

*Sandra Chan*

Sandra Chan

EXHIBIT 10
PAGE 132

# Exhibit 11

**\*\*\* Public Redacted\*\*\***

# This Exhibit is Filed Under Seal Pursuant To Protective Order

# Exhibit 12



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA 90017-5855

*tel* +1-213-629-2020
*fax* +1-213-612-2499
WWW.ORRICK.COM

October 21, 2009

William A. Molinski
(213) 612-2256
wmolinski@orrick.com

*VIA E-MAIL MARSHALLSEARCY@QUINNEMANUEL.COM*

Mr. Marshall M. Searcy
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

Re:   <u>MGA v. Mattel</u>

Dear Marshall:

This letter further responds to your October 8, 2009 letter addressed to Annette Hurst and me regarding MGA's Second Phase 2 Notice of Deposition of Mattel, Inc. (the "Second Phase 2 Deposition"). This is also a follow up to my emails to you and Mike Zeller seeking to obtain compliance from Mattel to the Second Phase 2 Deposition Notice. As you know, we sought on several occasions to obtain Mattel's agreement to make a witness available. Mattel refused to do so and simply relied on its objections in refusing to make a witness available.

In light of the Discovery Master's Order No. 71, Regarding: The Motion of MGA Entertainment, Inc. (1) To Compel The Attendance Of Matter, Inc. at 30(b)(6) Deposition; (2) For Protective Order Requiring Advance Designation of 30(b)(6) Witnesses; (3) To De-Designate Document Under Protective Order Related to Subject Matter of Requested 30(b)(6) Testimony; and (4) Sanctions ("Order No.71"), demand is made that your identify and produce a witnesses concerning the topics identified in the Second Phase 2 Deposition.

As the Discovery Master noted in his order, "Rule 37(d)(2) is unambiguous. In pertinent part, it states that '[a] failure [to produce a 30(b)(6) witness] is not excused on the grounds that the discovery sought was objectionable, *unless the party failing to act has a pending motion for protective order under Rule 26(c).*' (Fed. R. Civ. P. 37(d)(2). This lanague further appears underneath a bold-faced heading that reads 'Unacceptable Excuse for Failing to Act.' (*Id.* [emphasis omitted]). Because Mattel did not have a pending motion for protective order on file when it failed to appear, it must produce a witness or witnesses to testify on the topics set forth in the Deposition Notice." *See* Order No. 71, pg 7 (emphasis in original). The Discovery Master further ordered that the parties identify the corporate designee(s) that will testify at least three business days prior to the date noticed in the deposition. *See* Order No. 71, pg 11. This order applies equally to Mattel's failure to produce a witness or witnesses in response to the Second Phase 2 Deposition. Since Mattel did not

EXHIBIT __12__ PAGE _146_



## ORRICK

Mr. Marshall M. Searcy
October 21, 2009
Page 2

have a protective order on file before the date designated for the deposition, Mattel failed to comply with the Federal Rules.

Please provide us with available dates certain within the next three weeks that the witness or witnesses will be made available.  Please provide dates for the deposition no later than this Friday, October 23, 2009.

Failure to comply with this request will result in the filing of a motion to compel compliance and a request for sanctions.

Very truly yours,

William A. Molinski

cc:     Annette L. Hurst, Esq.
        Alex Cote, Esq.
        Michael Zeller, Esq.
        Jason Russell, Esq.

EXHIBIT __12__ PAGE __147__

# Exhibit 13

# CONFORMED COPY

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

                            EASTERN DIVISION
9

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO COMPEL MGA TO
                                           PRODUCE WITNESSES PURSUANT
17                                         TO THIRD NOTICE OF DEPOSITION
                                           UNDER RULE 30(b)(6); DENYING
18                                         REQUEST FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                          **I. INTRODUCTION**

24          On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25  Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26  Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27  to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT *13* PAGE *148*

1  July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply

2  brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and

3  the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4  sanctions is denied.

5                                    II. BACKGROUND

6         Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7  which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of

8  MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007,

9  Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10 the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June

11 29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12 conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard

13 drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14 8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15 and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

16                          Hard Drives and Other Storage Devices

17        1.      The IDENTITY, current or last known location, and disposition of

18    each STORAGE DEVICE that each of the following PERSONS has used to

19    create, generate, prepare, draft, send and/or receive any DOCUMENT or

20    DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21    ANGEL at any time since January 1, 1999, including without limitation the date

22    of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23    Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24    Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25    Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26    O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27    Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __13__ PAGE __147__

2.    The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3.    YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

<u>Prior Inconsistent Statements to the Press</u>

6.    YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7.    YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters. Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8.    YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

<u>"Test Projects" for MGA</u>

9.    The IDENTITY of each PERSON who YOU had perform, or who

1   YOU requested, asked or solicited to perform, any "test project" in advance of or

2   in consideration of employment by YOU since January 1, 1995, including without

3   limitation the IDENTITY of each such PERSON who was a MATTEL employee

4   at the time.

5       <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi</u>

6         11.    Payments of money or any other item of value that YOU have

7   made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8   Larian since January 1, 1999, including without limitation (a) the amounts of such

9   payment and the equivalent dollar value of each of item of value, (b) the dates of

10   such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11   IDENTITY of each bank or financial institution account to which such payment

12   was made and (e) the reasons for each such payment.

13         12.    Payments of money or any other item of value that YOU have

14   made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15   Larian since January 1, 1999, including without limitation (a) the amounts of each

16   such payment and the equivalent dollar value of each of item of value, (b) the

17   timing of each such payment, (c) the IDENTITY of each recipient of each such

18   payment, (d) the IDENTITY of each bank or financial institution account to

19   which such payment was made and (e) the reasons for each such payment.

20         13.    Payments of money or any other item of value that YOU have

21   made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22   Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23   such payment and the equivalent dollar value of each item of value, (b) the timing

24   of each such payment, (c) the IDENTITY of each recipient of each such payment,

25   (d) the IDENTITY of each bank or financial institution account to which such

26   payment was made and (e) the reasons for each such payment.

27   Zeller Decl., Ex. 23.

28   

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __13__ PAGE _/5/_

4

1    Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2    9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the

3    testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4    cumulative or duplicative of any other deposition testimony already given in the case.

5        MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6    of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7    MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8    examining MGA any further.  MGA further contends that Mattel has not established the requisite

9    good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10   its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities

11   to obtain, and in many cases has already obtained, the information it now moves to compel.

12                                III. STANDARDS

13       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

16   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17       Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18   use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19   cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21   discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23   amount in controversy, the parties' resources, the importance of the issues at stake in the

24   litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25   26(b)(2)(C).

26       Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27   a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

1   30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2   court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3   Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4   30(a)(2)(B).

5                                          IV. DISCUSSION

6            As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7   to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8   party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9   Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22                      Hard Drives and Other Storage Devices (Topics 1-3)

23            Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1.  Topic 3 seeks information regarding MGA's search for and production of documents

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _13_ PAGE _153_

6

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2       MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence. MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means. Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8       Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10   privileged, that is relevant to the claim or defense of any party, including "the existence,

11   description, nature, custody, condition, and location of any books, documents or other things." A

12   portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13   information already provided by Mr. Lockhart. MGA designated Mr. Lockhart as a 30(b)(6)

14   witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15   information systems and application software, employees' electronic messaging systems, and

16   MGA's policies regarding the use of transportable media. Mr. Lockhart testified about the

17   location and disposition of MGA employees' hard drives and storage devices in general.

18       Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19   testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20   locations and dispositions of hard drives used by 24 named individuals. Mattel contends that the

21   testimony it seeks will enable it to assess MGA's production, including whether any documents

22   requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23   to Mattel. Mattel's Reply at p.7.

24       Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25   legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26   circumstances of this case. Mattel has accused MGA of obstructing discovery, and in particular

27   withholding Bryant's computer. There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __13__ PAGE _154_

7

1   or failed to search for and produce responsive documents located on the hard drives of the other

2   individuals named in Topic 1.  It is burdensome and expensive to prepare a witness to testify

3   about the locations and dispositions of hard drives used for 24 different individuals. The likely

4   benefit of undergoing such a burden and expense is doubtful.  Furthermore, there are other less

5   burdensome and less expensive means of assessing whether MGA has complied with its

6   discovery obligations, including for example, document requests and interrogatories.  Therefore,

7   Mattel's motion is denied as to Topics 1-3.

8                 <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9        Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz.  MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence.  MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means.  Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant.  MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18        Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian.  Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him.  Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial.  Mattel's Reply at p.6.

24        MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8.  MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

1    MGA now.  MGA also contends that Mattel could avail itself of other discovery methods, such as

2    interrogatories or requests for admission, to obtain further information about the publications

3    identified in Topics 6-8.

4         Topics 6-8 seek information relevant to the central issue in the case:  who conceived of

5    Bratz.  Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6    bind the corporation.  The testimony Mattel now seeks is not unreasonably cumulative or

7    duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8    questioned Isaac Larian about only one of the articles identified in Topics 6-8.  Further, the likely

9    benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10   6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11   seeks.  Mattel's motion is granted as to Topics 6-8.

             "Test Projects" for MGA (Topic 9)

13        In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14   requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15   employment by MGA since January 1, 1995.  MGA objected to Topic 9 as irrelevant, not

16   reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17   burdensome, and unreasonably cumulative and duplicative.  MGA also objected to Topic 9 as

18   vague and ambiguous, particularly with respect to the term "test project."  MGA also objected to

19   Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20   less burdensome and less expensive means.  MGA also objected to Topic 9 as seeking

21   confidential, proprietary, and commercially sensitive information with no relevance to the

22   litigation.

23        When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24   of a project for" MGA.  Zeller Decl., Ex. 29 at 9:19-20.  He also referred to this "tryout" project

25   as a "test assignment."  Id. at 515-516.  In light of Bryant's testimony, Mattel's stated purpose of

26   Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27   working for MGA while employed by Mattel was no different than a supposedly standard

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                             9

EXHIBIT _13_ PAGE _156_

1   industry practice of having candidates for creative positions make artwork as part of the job

2   interview." Mattel's Motion at p.22.

3         MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4   its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5   objectionable as overbroad, reasoning that it would require MGA to provide information "with

6   regard to how it proceeded with hiring virtually every single employee hired since 1995."

7   MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8   MGA to have a designee review and potentially memorize information about every single person

9   who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12        Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23  Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)

24        In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___13___  PAGE __15__ 7

1   also objected to Topics 11-13 to the extent that the information sought is obtainable through

2   other, more convenient, less burdensome and less expensive means.  MGA also objected to

3   Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4   relevance to the litigation.

5         Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6   Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7   that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8   alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9   Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10   therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11   Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12   claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13   acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14   contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15         MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16   objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17   parties nor witnesses in this action, and whose only connection is knowing people involved in the

18   lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19   that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20   also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21   this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22   made to him would not establish his net worth because they represent only one of many sources

23   of income and do not account for his other assets and liabilities.

24         MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25   defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26   and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27   relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

1   net worth, even if they represent one source of income. The burden of producing such information

2   does not outweigh its relevance, taking into consideration the circumstances of this case.

3   Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4   motion is granted as to Topics 11 and 12.

5          In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6   litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7   payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8   affairs.  Mattel's motion is denied as to Topic 13.

9                                  V. CONCLUSION

10         For the reasons set forth above, it is hereby ordered as follows:

11         1.     Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12         2.     Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13   deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14   regarding Topic 9 that is limited to the years 1998 through 2004.

15         3.  Mattel's request for sanctions is denied.

16   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17   Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20   Dated: September 25, 2007

21                                    HON. EDWARD A. INFANTE (Ret.)
                                         Discovery Master
22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _13_ PAGE _159_   12

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT __13__ PAGE __160__

# Exhibit 14

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

October 8, 2009

**VIA E-MAIL**

Annette L. Hurst, Esq.
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

William Molinski, Esq.
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017

Re:     Mattel v. MGA

Dear Annette and Bill:

Please find enclosed Mattel's objections to MGA's Second Phase 2 Notice of Deposition of Mattel, Inc. As you can see from the objections, and as Mike Zeller notified you in earlier emails, Mattel does not currently intend to provide a witness to testify on the date unilaterally selected by MGA in the notice. Once we have met and conferred, and if we come to agreement on the topics and a time and place for the deposition, Mattel will identify its witness(es) within the 3 day time period, as agreed upon by the parties.

I look forward to hearing from you.

Kind regards,

/s/ Marshall M. Searcy

Marshall M. Searcy III
07975/3144909.1

EXHIBIT __14__ PAGE _161_

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712