UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No.    CV04-9049-DOC(RNBx)                     Date    November 9, 2009

Title    CARTER BRYANT v. MATTEL, INC.

Present: The Honorable   David O. Carter, U.S. District Judge

| Lori Anderson | Jane Rule | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Zeller<br>B. Dylan Proctor | Annette Hurst<br>Thomas McConville<br>Gabriel M. Ramsey |

Proceedings:   MOTION BY MGA PARTIES TO VACATE RECALL PROVISION OF INJUNCTION,
OR, IN THE ALTERNATIVE TO CLARIFY AND /OR MODIFY SUCH RECALL
PROVISIONS; MOTION TO CLARIFY AND/OR LIMIT MONITOR'S AUTHORITY
AS AN ADJUDICATIVE OFFICER OF THE COURT [6981];

Tentative ruling issued to counsel, a copy of which is attached hereto.

The matter is called. Counsel state their appearances. Court notes the appearance of Patrick A.
Fraioli, Court-Appointed Monitor. Case is recessed to afford counsel the review of the tentative ruling.
Case will be re-called later today at 5:00pm.

The case is re-called and counsel re-state their appearances for the record. The Court and counsel
confer regarding the tentative ruling, status of the case, scheduling dates and discovery issues.

The parties shall appear before assigned Magistrate Judge Robert N. Block  for settlement
proceedings as the judge may conduct or direct.

The Court Orders this portion of the hearing along with the transcript to be sealed . The Court
and counsel confer re the above referenced motion. The Court unseals the hearing and has further
discussion with counsel.

The Court recesses for informal discussion with the parties and reconvenes.

Motion is taken under submission. The Court continues the hearing to Tuesday, November 10,
2009, at 3:00 pm.

| | | 3 | : | 41 |
|---|---|---|---|---|
| | Initials of Prepare | lma | | |

1
2
3
4
5
6
7
8                    UNITED  STATES  DISTRICT  COURT
9           FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA
10

| 11 | CARTER BRYANT, an individual, | ) | CASE NO.  CV 04-9049 DOC (RNBx) |
|----|---|---|---|

11  CARTER BRYANT, an individual,     )     CASE NO.  CV 04-9049 DOC
                                      )     (RNBx)
12              Plaintiff(s),         )
                                      )
13          v.                        )     [TENTATIVE] O R D E R
                                      )     DENYING MOTION TO VACATE
14  MATTEL, INC., a Delaware          )     RECALL PROVISIONS OF
    corporation,,                     )     INJUNCTION OR, IN THE
15                                    )     ALTERNATIVE, TO CLARIFY
            Defendant(s).             )     AND/OR MODIFY SUCH RECALL
16                                    )     PROVISIONS; STRIKING AS
                                      )     MOOT MOTION TO CLARIFY
17                                    )     AND/OR LIMIT MONITOR'S
                                      )     AUTHORITY AS AN
18                                    )     ADJUDICATIVE OFFICER OF
                                      )     THE COURT
19                                    )
20  _____

21        Before the Court are two Motions concurrently filed by Counter-Defendants MGA

22  Entertainment, Inc., MGA Entertainment HK Ltd., and Isaac Larian (collectively "MGA" or

23  "MGA Defendants"): (1) a Motion to Vacate Recall provisions of Injunction or, in the

24  alternative, to Clarify and/or Modify Such Recall Provisions (the "Motion to Vacate"); and  (2) a

25  Motion to Clarify and/or Limit Monitor's Authority as an Adjudicative (the "Motion to

26  Clarify").  After considering the moving, opposing, and replying papers, [as well as the parties'

27  oral argument,] the Court [DENIES] the Motion to Vacate and [STRIKES as MOOT] the

28  Motion to Clarify.

# I.     Background

## A.     Procedural History

On April 27, 2004, Mattel, Inc. ("Mattel") filed a complaint against Carter Bryant in California Superior Court alleging that Bryant had improperly acquired and infringed Mattel's copyright in creating the Bratz line of fashion dolls with an unnamed competitor.  Bryant removed the case to the Central District of California.  On November 2, 2004, Bryant filed suit against Mattel seeking a declaration of non-infringement.  On April 13, 2005, MGA Entertainment, Inc. filed a complaint against Mattel alleging that Mattel had copied MGA's Bratz line of dolls.

The District Court consolidated the three cases, after which Mattel filed counterclaims against the MGA Defendants alleging violations of federal copyright law and various state law claims. On July 2, 2007, the Court bifurcated the trial into two phases.  The Court ordered that Phase 1 of the trial would resolve all issues regarding the ownership of Bratz.  The Court further divided Phase 1 into Phases 1(a) and 1(b) and 1(c): "Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings."  (Dkt. 608 at 2.)  Phase 1(c), conducted after the jury delivered its verdict, was a tried in equity to the Court.

On July 17, 2008, following the conclusion of Phase 1(a) of the trial, the jury found that Carter Bryant was employed by Mattel at the time he conceived the Bratz character and name, and that the MGA Defendants were therefore liable for intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, aiding and abetting breach of the duty of loyalty, and conversion.  On August 26, 2008, the jury issued its Phase 1(b) verdict that, in relevant part, awarded Mattel damages arising out of the MGA Defendants' liability and found that none of the MGA Defendants acted willfully or with malice.

On December 3, 2008, the Court issued a permanent injunction (the "Injunction Order") as part of three injunctive orders issued pursuant to its extensive and deliberate Minute Order, which applied the jury's findings against various equitable factors including, but not limited to:

(1) the irreparable injury, if any, suffered by Mattel in the absence of a permanent injunction; (2) the availability of other legal remedies to Mattel in the absence of a permanent injunction; (3) hardship, if any, suffered by the MGA Defendants following the issuance of a permanent injunction; and (4) effects to the public interest. Upon consideration of the above factors, the Court issued the Injunction Order that, in relevant part, required the impoundment and destruction of the Bratz dolls, the recall of infringing products from retailers, and the appointment of a special master to monitor the implementation of the permanent injunction. In addition, the Court issued a declaratory judgment that affirmed Mattel's ownership of Bratz and imposed a constructive trust. The Court specified in its December 3 order that its grant of injunctive relief was non-final.

On December 11, 2008, the MGA Defendants applied *ex parte* to stay the December 3 orders. The MGA Defendants concurrently filed a motion before the Ninth Circuit on December 19, 2008 seeking a stay pending appeal of the Court's injunction. On January 12, 2009, the Ninth Circuit dismissed the appeal for lack of jurisdiction, noting that the Court's injunctive relief was non-final. On December 30, 2008, the Court likewise denied the MGA Defendants' motion for stay pending appeal but delayed the recall date, in accommodation of the MGA Defendants' objections, to December 31, 2009. On April 27, 2009, the Court finalized all of the injunctive orders. The MGA Defendants also applied to this Court *ex parte* for a stay pending appeal. The Court denied the MGA Defendants' request. The Court also denied an oral request by the MGA Defendants to stay the recall provisions, noting "the scope of infringement found by the Court (which was broad) and . . . the fact that the Bratz dolls compete directly with existing Mattel products."

MGA Defendants appealed in part the Court's Injunction Order to the Ninth Circuit on May 4, 2009. Concurrently, the MGA Defendants filed an emergency motion before the Ninth Circuit seeking a stay of the Injunction Order pending appeal, but the Ninth Circuit denied their request on the grounds that "MGA has not met the prevailing standard to show a substantial likelihood of ultimate success on the merits." The MGA Defendants' appeal is presently pending before the Ninth Circuit and is scheduled for oral argument on December 9, 2009.

## B.   The Recall Provisions of the Injunction Order

As previously mentioned, the Injunction Order required, *inter alia*, the MGA Defendants to recall remaining Bratz dolls. Paragraph 4 of the Injunction Order defines the contours of the recall, and identifies the precise products to be recalled:

> 4.   Defendants are hereby ORDERED to procure the return, and to withdraw and recall, from any and all channels of trade and distribution, including without limitation from retail shelves and from on-line retailers, all of the dolls and doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive. As to each entity or person returning such dolls and doll products, Defendants shall refund all monies paid by each entity or person in connection with such dolls and doll products and shall reimburse each such entity or person for all associated shipping charges.

In addition, Paragraph 6 of the Injunction Order requires the MGA Defendants to disclose the obligations imposed by the Injunction Order to their retailers:

> 6.   At Defendants' expense, Defendants shall make written contact (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler, importer, exporter, customer, licensee or any other person and entity to or through whom Defendants have shipped, transferred, imported, exported or sold any doll, product or other item that is the subject of the Order; and (ii) each retailer, distributor, wholesaler, licensee, potential licensee, customer, potential customer or any other person and entity who Defendants have contacted (whether by mail, electronic mail, orally or otherwise) within the past

1  ninety (90) days in marketing, promoting or advertising any

2  doll, product or other item that is the subject of this Order,

3  and shall provide each such person and entity with a copy of

4  this Order and with a verbatim copy of the following notice,

5  in legible and conspicuous print, in its entirety (hereinafter,

6  the "Notice"):

7  <u>NOTICE PUBLISHED PURSUANT TO</u>

8  <u>ORDER OF THE UNITED STATES DISTRICT COURT</u>

9  Recently you my have bought, seen, or been contacted regarding, the

10  sale of Bratz dolls or other Bratz products.

11  Pursuant to the rulings of the United States District Court, Mattel is

12  the owner of Bratz-related copyrights that are infringed by Bratz

13  dolls, products and packaging manufactured by or for MGA.

14  The Court has ordered MGA to immediately cease any further

15  manufacture, sale, promotion, shipment or distribution of Bratz dolls,

16  products and packaging.

17  In addition, the Court has ordered that Bratz dolls mus be returned

18  immediately to the following address: MGA Entertainment, Inc.,

19  Attn: Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys,

20  CA 91406.

21  MGA will refund to you all monies paid by you for these dolls and

22  reimburse you for all associated shipping charges.

23  Paragraphs 10-13 of the Injunction Order provided for the appointment of a Special

24  Master pursuant to Federal Rule of Civil Procedure 53. The Special Master was to "supervise

25  the implementation of the requirements" of the Injunction Order and resolve in the first instance

26  disputes between the parties. Notwithstanding the terms of Paragraphs 10-13 of the Injunction

27  Order, the Court has not, as yet appointed a Special Master to supervise the implementation of

28  the requirements of the Injunction Order.

## C.   Temporary Receiver and Monitor

On January 7, 2009, as a result of a December 11, 2008 financial report submitted by the MGA Defendants, the Court appointed a Forensic Auditor, Mr. Ronald Durkin, to investigate and report on MGA's finances. Mr. Durkin's report counseled the appointment of a Receiver, and the Court found "just cause" to appoint a temporary receiver, concluding that "it appears likely that the MGA parties, agents and related entities . . . are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunctions." Mr. Patrick Fraioli was named temporary receiver.

On May 21, 2009, following the expiration of Mr. Fraioli's first term as temporary receiver, the Court declined to appoint a Permanent Receiver. Instead, the Court appointed Mr. Fraioli the "MGA Monitor," empowering him to "take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of Monitorship." Those Court's May 21, 2009 Order further provided that Mr. Fraioli, as Monitor, "shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Order")."

The Monitor has remained in close contact with the MGA Defendants and their representatives, interpreting the provisions of the Injunction Order and tracking their compliance with its terms. In addition, the Monitor has submitted five interim reports to the Court, detailing the parties' progress in complying with the terms of the three post-judgment Orders. The Monitor has informed this Court, and the MGA Defendants agree, that MGA has contracted with Stericycle and RQA to conduct the recall. Moreover, the MGA Defendants have supplied a "Bratz Recall Plan" and a "MGA Bratz Recall Plan Milestones Task List" to the Monitor, in an effort to demonstrate their apparent good-faith effort at complying with the terms of the Injunction Order. Among the issues at dispute between the MGA Defendants and the Monitor, all of which are the subject of the present Motions, are: (1) the extra territorial scope, if any, of

1   the Injunction Order; (2) the MGA Defendants' positive obligations, if any, arising out of the

2   Injunction Order; and (3) the Monitor's authority to resolve disputes and enforce the terms of the

3   Injunction Order.

4   **II.     Discussion**

5          **A.     Motion to Vacate**

6          The parties dispute the terms of the Recall Provisions of the Injunction Order and, more

7   specifically, disagree about the relevance of the recent Ninth Circuit decision in *Marlyn*

8   *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009).  The MGA

9   Defendants argue that the *Marlyn* decision requires this Court to consider equitable factors (not

10  previously considered when granting the Injunction Order) that uniformly compel against the

11  Bratz recall.  Furthermore, MGA directs the Court's attention to Mattel's recent prediction that it

12  would not be able to sell the Bratz products itself until April 2010 at the earliest.  According to

13  MGA, the harm it will likely suffer as a result of the Bratz recall far outweighs the minimal, if

14  any, financial consequence to Mattel in the absence of recall.  Moreover, MGA notes that the

15  current recall deadline is January 2010.  Given the limited quantity of remaining dolls in the

16  marketplace, MGA requests that the Court permit its retailers to simply sell the remaining stock

17  of Bratz dolls.

18         Mattel responds that the Court lacks jurisdiction over the MGA Defendants' Motion to

19  Vacate, as a result of the appeal pending before the Ninth Circuit.  Moreover, Mattel asks the

20  Court to not disregard the considerations that resulted in the issuance of the April 27, 2009

21  injunction, which required the recall of products.  The Court, Mattel notes, has already

22  considered a variety of equitable factors, including the factors cited by the MGA Defendants.

23  Moreover, absolving the MGA Defendants of the recall obligations permits them to continue to

24  profit from Bratz sales, as well as market a doll that directly competes with Mattel's existing

25  product line.

26         **1.     Jurisdiction**

27         Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an

28  interlocutory order of final judgment that grants, dissolves, or denies an injunction, the court

7

1   may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure

2   the opposing party's rights." Rule 62(c) is an exception to the general principle that "[o]nce a

3   notice of appeal is filed, the district court is divested of jurisdiction over the matters being

4   appealed." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400 (1982)

5   (per curiam). Thus, a district court's exercise of jurisdiction under Rule 62(c) is generally

6   directed to "preserve the status quo during the pendency of an appeal." *Natural Resources*

7   *Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The Rule

8   "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *Id.*

9   (citing *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731,

10  734 (9th Cir. 1982)). Most importantly, "any action taken pursuant to Rule 62(c) may not

11  materially alter the status of the case on appeal." *Id.* (internal citation and quotation marks

12  omitted).

13          The MGA Defendants move this Court to vacate the recall provisions of the Injunction

14  Order or, in the alternative, to modify those provisions so as to limit the temporal and

15  substantive scope of the recall. Mattel argues that the Court lacks jurisdiction to consider both

16  alternatives due to the MGA Defendants' pending appeal before the Ninth Circuit. Mattel cites

17  several cases for the proposition that a district court lacks jurisdiction to vacate or even modify

18  an injunctive order, while that order is on appeal. *See Prudential Real Estate Affiliates, Inc. v.*

19  *PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. 2000); *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d

20  817 (5th Cir. 1989); *Lewis v. Tobacco Workers' Int'l Union*, 577 F.2d 1135 (4th Cir. 1978).

21  However, in all three cases, the moving party sought to dissolve the injunction in its entirety

22  while it was on appeal. The MGA Defendants only request that this Court vacate the recall

23  provisions of the Injunction Order. Moreover, even after an injunction is appealed, the district

24  court retains power to vacate or alter its provisions to the extent required to "maintain[] the

25  status quo." *Coastal Corp.*, 869 F.2d at 820.

26          The Court recognizes the fragile logic of the MGA Defendants' claim that their appeal

27  does not concern the recall provisions of the Injunction Order. *See* Reply ISO Mtn., at 4. After

28  all, the core concern raised by MGA's appeal before the Ninth Circuit is that the facts of this

1  case (and the juries' findings) failed to support the injunctive relief, including, in whole, the

2  Injunctive Order. (*See* Exh. 1 to Dkt. # 7050, at 5.)  The MGA Defendants' appeal does not

3  exclude the recall provisions from its ambit.  Nor do the MGA Defendants argue that the Ninth

4  Circuit lacks jurisdiction over any provision of the Injunction Order, including Paragraphs 4 and

5  6 of that order, which are the recall provisions.  In short, this Court's consideration of the MGA

6  Defendants' Motion to Vacate would run afoul of the general principle that "a federal district

7  court and a federal court of appeals should not attempt to assert jurisdiction over a case

8  simultaneously." *Griggs*, 459 U.S. at 58, 103 S. Ct. at 402.

9      The MGA Defendants' nonetheless argue that an exception to the general rule in *Griggs*

10  is warranted here.  First, MGA claims that its desired relief would preserve the status quo

11  because vacating the recall provisions would not absolve MGA of the Injunction Order's other

12  requirements – *i.e.*, its prohibitory provisions and its requirement that MGA deliver the means of

13  manufacture of the allegedly infringing items.  MGA seeks relief from its positive obligations to

14  contact retailers and recover Bratz dolls already in the marketplace.  However, MGA conflates

15  the factual status quo with the legal status quo, a curious error given their own explanation of the

16  concept in footnote 1 to their reply brief.  "Maintaining the status quo means that a controversy

17  will still exist once the appeal is heard.  Any action on the district court's part which has the

18  effect of divesting the court of appeals of its jurisdiction over the matter by eliminating the

19  controversy prior to the hearing of the appeal is inappropriate." James Wm. Moore, 12 Moore's

20  Federal Practice § 62.06 (3d ed. 2009).  Thus, the Court's inquiry must necessarily examine

21  whether vacating or otherwise modifying the recall provisions of the Injunction Order would

22  frustrate the Ninth Circuit's ability to properly adjudicate MGA's appeal.

23      Notwithstanding the broad brush with which the MGA Defendants' object to the Court's

24  Injunction Order, the basis for their appeal is that the injunction should not have been issued

25  "upon the standard that any work was infringed if it was only *substantially similar* to the original

26  drawings and prototype." (emphasis in original).  The appeal therefore does not ask the court to

27  review the equities relevant to the grant of an injunction.  Rather, it is concerned with whether

28  the factual predicates were sufficient to trigger the judgment.  Thus, the Court considers its

exercise of jurisdiction over a separable provision of the Injunction Order (*i.e.*, the recall provisions) insufficient to divest the Court of Appeals of its jurisdiction to evaluate the general basis for the Injunction Order. *See Larami Corp. v. Lanard Toys Ltd.*, Civ. A. No. 91-7923, 1992 WL 20320, *1 (E.D. Pa. Jan. 30, 1992) (vacating recall provision of preliminary injunction while grant of injunction was on appeal).

The Court likewise retains jurisdiction to consider the MGA Defendants' Motion to Vacate to the extent that it seeks a modification of the recall provisions. Mattel argues that the Court lacks the authority to make changes to the time constraints imposed by the Injunction Order while that order is on appeal. Not so. In *Natural Resources*, the court defined the time constraints imposed by the injunction while the injunction was on appeal. 242 F.3d 1167. In so doing, the court claimed to vindicate the "underlying purposes of the original requirements." *Id.* The MGA Defendants ask the Court to limit the Monitor's directive that MGA "sweep the shelves" and clarify that the recall need not be effected extra territorially. They claim that both modifications would more faithfully apply the Injunction Order and, in particular, give meaning to the requirements in Paragraph 6.

MGA's Motion to Vacate requests that the Court target the recall provisions of the Injunction Order, none of which is the specific subject of the pending Ninth Circuit appeal. Moreover, MGA's desired relief would preserve, and not alter, the status quo, as it does not request that that the Court vacate any other provisions of the Injunction Order including, most notably, the prohibitions on MGA's future conduct. The same is true for MGA's requested modifications, which MGA claims vindicate the purpose of the Injunction Order. Most importantly, the Court's consideration of these issues will not interfere with the Ninth Circuit's review; nor is there even a remote possibility of dual or conflicting judgments. Accordingly, the Court finds that it has jurisdiction over MGA's Motion to Vacate.

### 2.      Reconsideration of the Injunction Order

MGA argues that "changes in the law and facts warrant vacating the Recall Order." Mtn., at 13. More specifically, MGA argues that in granting the Injunction Order, the Court failed to consider equitable factors that counsel for the limitation or removal of the recall provisions.

10

1    MGA also argues that the Ninth Circuit's recent decision in *Marlyn*, coupled with the revelation

2    that Mattel will not release the Bratz doll to its shelves before April 2010, tip the balance of

3    equities against the imposition of a costly and unnecessary recall.

4        When it issued the Injunction Order, the Court cited to the Supreme Court's decision in

5    *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, which identified the factors a

6    plaintiff seeking a permanent injunction must satisfy before a court may grant such relief.  "A

7    plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies

8    available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

9    that, considering the balance of hardships between the plaintiff and defendant, a remedy in

10    equity is warranted; and (4) that the public interest would not be disserved by a permanent

11    injunction." 547 U.S. at 391.  The Supreme Court's consideration of the four factors was not

12    discretionary; rather, "this Court has consistently rejected invitations to replace traditional

13    equitable considerations with a rule that an injunction automatically follows a determination that

14    a copyright has been infringed." *Id.* at 392.

15        The MGA Defendants presume that the Court issued the Injunction Order with no due

16    consideration of the equities, repeatedly informing the Court in their Reply brief that the

17    Injunction Order issued by the Court was drafted by Mattel.  However, the Court's December 3,

18    2008 analysis remains applicable, especially in light of the Court's subsequent attempts to

19    accommodate MGA by delaying the recall date.  First, the Court considered relevant the injury to

20    Mattel arising out of the continued infringement of its copyright and, "in light of the scope of the

21    infringement," considered recall proper.  Second, the Court determined the enjoinder was

22    necessary to resolve at least some of the harm suffered by Mattel as a result of this infringement.

23    Third, the Court considered MGA's hardship – lost profits – inconsequential when balanced

24    against the harm suffered by Mattel including, in significant part, "the fact that the injunction

25    addresses products ***that directly compete with Mattel's products***." (emphasis added).  Fourth,

26    the Court acknowledged the strong public interest inherent in the enforcement of copyright laws.

27        MGA nonethelss claims that the Ninth Circuit's recent decision in *Marlyn* compels

28    reconsideration.  In *Marlyn*, the court was confronted with the propriety of issuing a preliminary

1    injunction.  The court recognized the two types of preliminary injunctions available: (1) a

2    prohibitory injunction, which "preserves the status quo pending a determination of the action on

3    the merits;" and (2) a mandatory injunction, which "are not generated unless extreme or very

4    serious damage will result and are not issued in doubtful cases or where the injury complained of

5    is capable of compensation in damages."  571 F.3d at 879.  As the desired recall constituted a

6    mandatory injunction, the court suggested that the ordinary equities are incapable of themselves

7    properly calculating the propriety of a mandatory injunction.  In addition to the factors ordinarily

8    considered when determining whether to grant a prohibitory preliminary injunction, the court

9    incorporated the Third Circuit's standard, which requires a district court to consider: (1) the

10   willful or intentional infringement by the defendant; (2) whether the risk of confusion to the

11   public and injury to the trademark owner is greater than the burden of recall to the defendant;

12   and (3) substantial risk of danger to the public due to the defendant's infringing activity.  *Id.*

13   (citing *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 233 (3d Cir. 2003)).

14        Before applying these three factors to the present case, the Court must first determine

15   whether (and to what extent) *Marlyn* is applicable.  Mattel argues that *Marlyn*'s concern was

16   with the issuance of a preliminary injunction and that this Court's concern with the undue

17   obstruction of a business is considerably lower, as it has already been determined that MGA

18   infringed on Mattel's copyright.  However, *Gucci*, the case invoked by *Marlyn*, was a permanent

19   injunction case, which similarly held that a recall requirement was not warranted even after trial

20   had concluded and the district court had determined that defendant had infringed on plaintiff's

21   trademark.  Moreover, "[t]he standard for a preliminary injunction is essentially the same as for a

22   permanent injunction with the exception that the plaintiff must show a likelihood of success on

23   the merits rather than the actual outcome."  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S.

24   531, 546 n. 12, 107 S. Ct. 1396 (1987).

25        *Amoco*'s general principle does not assume the existence of additional factors to be

26   considered before granting a mandatory injunction.  The issue therefore is not whether

27   preliminary injunctions and permanent injunctions should be subjected to identical standards of

28   review, but whether preliminary mandatory injunctions and permanent mandatory injunctions

1    should.  In other words, the Court is unconvinced by MGA's suggestion that the harmonization

2    of preliminary and permanent injunctions, in the context of prohibitory injunctions, likewise

3    demands that the standards that apply to mandatory injunctions be aligned.  Thus, the Court must

4    return to *Gucci*, in which the court noted only that the additional three factors were equities to be

5    balanced and not, as MGA would suggest, hurdles to be cleared.  *See* 354 F.3d at 234.  Even in

6    *Marlyn*, the court reviewed the district court's consideration of only the third factor, implying

7    that the existence of a significant public health concern could itself justify recall.  571 F.3d at

8    879.

9         In addition, MGA fails to acknowledge that *Marlyn*'s use of the three *Gucci* factors was

10   based upon a restrictive reading of *Gucci*; indeed, the court held that "we join [*Gucci*] in

11   requiring the district court to consider these factors before granting a ***preliminary injunction***

12   ***directing product recall in a trademark infringement case***."  *Id.*  Furthermore, the reasons for

13   the court's incorporation of the *Gucci* factors included: (1) a desire to maintain the status quo;

14   and (2) the fact that the injury could be adequately compensated for through damages.  *Id.*

15   Neither factor is relevant here.  First, MGA has failed to substantiate the Court's interest in

16   maintaining the status quo, given the fact that the issue of infringement has been determined.

17   MGA only offers the interest in not causing irreparable harm prior to the completion of its

18   appeal, but that is a concern more apt for the Court's determination of a stay, which this Court

19   (and the Ninth Circuit) has already denied.  Moreover, the "status quo" prior to granting a recall

20   is very different from the one which follows its grant and subsequent affirmations of that recall

21   despite numerous challenges.  Indeed, this case proves that the parties continue to act in reliance

22   upon the Court's Injunction Order and the Court is aware of no authority, in the Ninth Circuit or

23   otherwise, which requires   the Court to vacate a recall by applying equitable factors that were

24   not relevant at the time the recall was granted.  Second, the December 3, 2008 Order already

25   identified the inadequacy of damages to compensate for Mattel's injuries.  Thus, the Court is

26   unconvinced that had the *Marlyn* court been confronted with a permanent mandatory injunction,

27   issued after a finding of liability, that it would have likewise required this Court's consideration

28   of the *Gucci* factors.

1       In any event, the Court concurs with Mattel that considering the *Gucci* factors will not

2   change the outcome here. First, notwithstanding the jury's Phase 1(b) finding that the MGA

3   Defendants did not act with malice, Judge Larson has already observed that improperly withheld

4   e-mail is "directly relevant to the issue of willfulness." The MGA Defendants ask this Court to

5   ignore such evidence as subordinate to the jury's finding and this Court is inclined to agree,

6   however, it does not agree that this first factor therefore weighs *against* the issuance of a recall

7   order. Second, the risk of confusion to the public is great, as already considered by the

8   December 3, 2008 order, but the injury to Mattel is even greater. MGA relies on a September

9   18, 2009 deposition delivered to the Monitor by Mattel's Senior Vice President Timothy Kilpin,

10  in which Mr. Kilpin implied that Mattel would not begin its release of the Bratz dolls until April

11  2010 at the earliest. Mattel disagrees. *See* Opp'n, at 20 (The Monitor is "satisfied, based upon

12  these presentations, that there will be a Sprint [sic] 2010 Bratz line manufactured by Mattel.")

13  Notwithstanding the questionable relevance of a single executive's prediction, MGA ignores that

14  the Injunction Order's recall provisions were not issued to secure Mattel's ability to release the

15  Bratz products, but rather to rid the market of infringing products that "directly compete with

16  Mattel's products." The Court considers Mattel's interest in avoiding having to compete with

17  products that it owns the copyright to sufficiently strong so as to overwhelm the remaining *Gucci*

18  factors. Third, Mattel concedes that there is no danger to the public to be considered in the

19  absence of recall. However, the Court agrees that the remaining equities (including the equities

20  relevant to the issuance of a permanent injunction) weigh against vacating the recall provisions

21  of the Injunction Order.

22      Finally, in a plea that does not fit well into any one equitable factor, MGA urges this

23  Court to consider the burdens of recall to MGA; namely the fact that "the Copyright Recall

24  Order could cost MGA anywhere between $10M and $20M or even more in out-of-pocket

25  expenses and product reimbursement costs, depending upon the geographic scope of the recall

26  (as addressed herein) and the rate of compliance by third parties with the recall notices." But

27  these are issues already considered by the Court and it has rejected all prior attempts by MGA to

28  raise this concern. Accordingly, the Court finds no ground to vacate the recall provisions even

14

1    upon consideration of the *Gucci* factors.

2    ### 3.    Clarification and/or Modification of the Recall Order

3    MGA asks the Court to clarify and/or modify the recall order in three ways: (1) clarify

4    that MGA need not "sweep the shelves" of Bratz products; (2) clarify that the recall order does

5    not apply outside the United States; and (3) modify the recall order so that MGA does not need

6    to send the recall letter to pre-July 2008 retailers.

7    ### a.    Requirement that MGA "sweep the shelves"

8    According to counsel for the MGA Defendants, the Monitor has interpreted Paragraph 4

9    of the Injunction Order to require MGA to "go out into the marketplace and directly secure

10   product by 'sweeping the shelves'." Mtn., at 20. Instead, MGA argues that they must only issue

11   letters to retailers and pay for shipping costs. The Court fails to see how MGA reads Paragraph

12   4's requirement that it "procure the return" of infringing products to somehow require only its

13   passive participation. It is true that the Injunction Order does not require that MGA invade its

14   retailers and steal product from their shelves, but this is a straw man perpetuated by MGA's

15   misrepresentation of the Monitor's guidance.

16   While MGA is certainly correct that it need not effectuate "impoundment by removing

17   the product from the shelves and taking possession of it," neither the Court nor the Monitor is

18   requiring such an absurdity. Accordingly, MGA's concern that it no longer has title to the Bratz

19   product after its sale is a red-herring – the issue is not whether MGA is adequately seizing the

20   Bratz products without the consent of its retailers but whether it is adequately encouraging its

21   retailers to surrender such products and be repaid by MGA. For the same reasons, the recall

22   order does not as yet require MGA to purchase remaining Bratz dolls at "retail price."

23   The Court has not involved itself in the logistics of the recall and does not intend to do so

24   now. Rather, the appointment of the Monitor was designed to accomplish this very task, and

25   ensure that MGA "make a diligent effort to recall all infringing dolls already distributed so that

26   they, too, may be destroyed." *See Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 223

27   (S.D.N.Y. 1974). The Court declines to further define the Injunction Order, whose terms are

28   eminently clear. Notwithstanding the Court's disinclination to involve itself in effectuating the

recall, it notes MGA's apparent progress in identifying and working with a vendor, issuing recall letters, and attempting to cooperate with the Monitor. Accordingly, the MGA Defendants' request that the Court "clarify" the Injunction Order by requiring that MGA not "sweep the shelves" is [DENIED.]

### b.   Extra Territorial Recall

MGA's objection to the Monitor's guidance that the recall provisions apply extra territorially falsely conflates a finding of liability with the issuance of an injunction. MGA cites *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994) for the proposition that the "Copyright Act does not authorize a court to give an injunction 'extraterritorial reach.'" But MGA neglects to draw the Court's attention to *Subafilms* repeated consideration that "infringing actions that take place ***entirely outside the United States*** are not actionable in United States federal courts." 24 F.3d at 1096 (citing *Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir. 1996)) (emphasis added). Liability has already been adjudicated in this case. To the extent that MGA asks the Court to link liability to recall in order to extend the injunction internationally, such a request is not supported by the law in this Circuit or any other. *See CyberMedia v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998) (noting that where extraterritorial conduct is "part of, or a consequence of, an act of infringement occuring within the United States," it is actionable under the Copyright Act). Accordingly, the MGA Defendants' request that the Court "clarify" the Injunction Order so as to exclude extra territorial recall is [DENIED.]

### c.   Modification of Deadlines

The Injunction Order requires that MGA deliver a recall notice to all of its retailers. MGA argues that this requirement is burdensome and unnecessary in light of its diminishing sales and the low likelihood that any pre-July 2008 retailers have purchased Bratz products in the recent past. Moreover, MGA argues that Mattel has already received damages for pre-July 2008 sales and that extending the recall provisions beyond that date would impose a double penalty upon MGA. The Court is not unsympathetic to the great burden imposed upon the MGA Defendants by the recall. Indeed, Mattel's claim that the recall is limited to "the

1   requirement that [MGA] send recall notices to all retailers and distributors to whom it has sold

2   infringing products" directly contradicts its earlier arguments that the Injunction Order imposes

3   affirmative burdens upon MGA.  Notwithstanding these concerns, the Court reiterates the

4   important role played by the Monitor in ensuring that the recall provisions are sensibly

5   implemented, including, if necessary, a suspension on the requirement that MGA deliver recall

6   notices to pre-July 2008 retailers.

7       Nor is the Court convinced that it need interfere with the recall deadlines, as it has already

8   accommodated MGA's request to extend these deadlines on several occasions.  Accordingly, the

9   MGA Defendants' request that this Court modify the Recall Order is [DENIED.]

10              **B.    Motion to Clarify**

11      Paragraphs 10 through 13 of the Injunction Order contemplated the appointment of a

12  Special Master to, in relevant part, adjudicate the parties' compliance with the terms of the

13  Injunction Order.  The Court neglected to appoint a Special Master, but did appoint a Monitor.

14  The Court further provided in its May 21, 2009 Order that the Monitor would conduct many of

15  the tasks appropriated to the Special Master by the Injunction Order.  However, the Court failed

16  to designate Mr. Fraioli as Special Master.

17      Mattel's argument, that Mr. Fraioli is Special Master by virtue of the terms of the May 21,

18  2009 Order is untenable.  However, MGA's suggested remedy – limiting the Monitor's authority

19  – would require this Court to seize the task of adjudicating compliance with the Injunction

20  Order.  Accordingly, the Court hereby appoints Mr. Patrick Fraioli as Special Master, as

21  contemplated by Paragraphs 10-13 of the Injunction Order.  The MGA Defendants' Motion to

22  Limit Monitor's Authority is therefore [STRICKEN as MOOT.]

23      **III.    Disposition**

24      For the foregoing reasons, the Court [DENIES] the MGA Defendants' Motion to Vacate

25  and [STRIKES as MOOT] the MGA Defendants' Motion to Clarify.  The Court further

26  APPOINTS Mr. Patrick Fraioli Special Master to perform the role specified in Paragraphs 10

27  through 13 of the Injunction Order.

28

1  IT IS SO ORDERED.

2  DATED: TBA

3

4
                                          _____
5                                              DAVID O. CARTER
                                          United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28