**EXHIBIT 8**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

September 30, 2009

**VIA E-MAIL**

Discovery Master Robert C. O'Brien, Esq.
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Re:    Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Mr. O'Brien:

I write to respond to MGA's September 28, 2009 letter regarding Mattel's request that MGA be required to provide to Mattel the index of individuals submitted pursuant to Order No. 50.

First, there is nothing procedurally "improper" or "defective" about Mattel's request, nor is there a need for Mattel to identify an outstanding document request calling for the index. This is not about MGA's failure to produce documents in response to a request for production. It is about MGA's failure to adequately substantiate its privilege claims, compounded by its subsequent failure serve Mattel with a submission it made to the Discovery Master in this litigation for the purpose of belatedly remedying the inadequacies of its privilege logs.

The normal rule, of course, is that information submitted to the Court should be served on one's adversary. Fed. R. Civ. P. 5(a) (filings must be "served on every party"); Local Rule 5-3.3 ("Documents excluded from electronic filing (refer to General Order 08-02) must be served using traditional means of service in the manner prescribed for such service by the Federal Rules"); General Order 08-02 Part V(a) (documents not filed electronically must be "served upon the parties in accordance with the applicable Federal Rules").

MGA has offered no justification for its failure to abide by the service requirements here. Although MGA repeatedly states that its submission was "compiled by MGA in-house and

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712


EXHIBIT 6
PAGE 20

outside attorneys" and is a "reflection of work product" and of attorney "effort," nowhere does MGA claim, let alone prove, that the submission actually contains privileged information. It may be that the index is "a valuable piece of work product compiled by counsel," but once it became a filing it obviously lost any claim to the protections afforded to work product that has not left counsel's files. This is far from analogous to the hypothesized "document request on Mattel for all of its witness lists and identifying role information compiled for purposes of creating privilege logs." It is not as though Mattel has asked for every draft of the index submitted to the Discovery Master. What Mattel seeks is just the actual filing. Unless it contains privileged information, which is neither demonstrated nor likely given that no privileged information was requested, there is no basis for MGA's failure to serve it on Mattel. And even if the index does contain some such information, a redacted version certainly could be served.

There is nothing technical about this request. The rules of service are fundamental to the adversarial process, which can serve its function only when both the filing party and its adversary have access to the information submitted to the Court. *In camera* submissions are "generally disfavored," Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 700 (D. Nev. 1994), precisely because "[i]n camera review does not permit effective advocacy." Wiener v. F.B.I., 943 F.2d 972, 979 (9th Cir. 1991). In the context of privilege disputes, they are "appropriate only after the [withholding party] has submitted as detailed public affidavits and testimony as possible." Wiener, 943 F.2d at 979; see also Diamond State Ins., 157 F.R.D. at 700 ("Resort to in camera review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible."). Of course here, MGA has never submitted *any* public declaration or disclosed any other evidence justifying its privilege assertions at issue in Order No. 33. Indeed, MGA initially avoided any substantive defense of its withholdings by arguing that the question had already been decided; only after the Discovery Master ordered MGA's withheld documents submitted *in camera* did MGA finally attempt to articulate a defense for its improper withholdings. That it has done so *ex parte* by *in camera* submissions not provided to Mattel is inappropriate and contrary to well-settled law that "*[i]n camera* review should not replace effective adversarial testing of the claimed privileges or protection." Burns v. Family Practice Assoc., 162 F.R.D. 624, 627 (S.D. Cal. 1995).[1]

MGA's letter response is a case in point, and itself demonstrates why service is important here. According to MGA, it has "generally tailored" its employees' or third parties' "role descriptions" in its submission to the Discovery Master to the particular documents at issue, and apparently may be disclosing something other than its employees' "technical title[s]." That stated practice raises significant concerns regarding the potential for abuse and inaccuracy. MGA has submitted

---

[1]    MGA, apparently, agrees. On the same day it submitted its response to the Discovery Master, MGA argued elsewhere that if Mattel were permitted to make an *in camera* submission to the Monitor it "would completely—and impermissibly—undermine the adversarial process, in denial of even the most basic due process rights enjoyed by the MGA Parties." MGA's Statement of Position Regarding Scope of Existing Product Recall and Impoundment, dated September 28, 2009, at 9 n.5 (attached as Exhibit A).

EXHIBIT 8
PAGE 31

information presumably with a view of obtaining a ruling in MGA's favor. To allow the truth-seeking function of the adversarial process to perform as intended, Mattel should be permitted to see what MGA is telling the Discovery Master so that Mattel may respond as appropriate.

It was a concern over this very type of "tailoring" which prompted Mattel's discussion of Beth Cahill, who has been variously described as a "paralegal" and as a "Director of Legal Affairs," as an example showing why disclosure should be ordered. The point, for the moment, is not whether communications by her properly may be withheld (such that Mattel should bring a motion to compel); it is whether she is being described in MGA's submissions as a non-lawyer, as she should be. In any case, MGA's lengthy gloss on the role of the paralegal as an *attorney's agent* is misplaced. The point of Mattel's authorities—ignored by MGA—is that a paralegal is not an attorney, and cannot give privileged legal advice. See HPD Laboratories, Inc. v. Clorox Co., 202 F.R.D. 410, 415 (D.N.J. 2001) ("Although [the paralegal] may be a skilled advisor . . . , she is not an attorney. Accordingly, when she independently dispensed legal advice, her statements were not privileged."). MGA's response on this issue, far from putting the matter to rest, raises more questions than it answers.[2]

The basic factual information requested by Order No. 50 is not privileged. Though MGA claims its submission reflects work product and somehow "implicates" privilege issues, MGA nowhere claims it actually contains any privileged information. At a minimum the index should be disclosed. Moreover, for these same reasons, MGA should be required to serve whatever other *in camera* submissions accompanied its initial submission of the withheld communications at issue in Order No. 33, at least in redacted form, so that Mattel can examine the representations it is making to the Discovery Master. See, e.g., Ocean Atlantic Dev. Corp. v. Willow Tree Farm, L.L.C., 2002 WL 649043, at *8 (N.D. Ill. Apr. 19, 2002) (holding that *in camera* affidavits submitted to support privilege assertions should be disclosed to opposing party). The proper

---

[2]      Remarkably, MGA now argues that due to Ms. Cahill's "many years of experience," MGA "reasonably considered her qualified to perform legal tasks"—including tasks which it admits were "not exclusively pursuant to the supervision of inside and outside counsel." That position is unsupported by law. HPD Laboratories, 202 F.R.D. at 415 (although paralegal had "developed significant familiarity with" legal issues through "more than fifteen years," and was "often sought out [for] her opinions," such advice was not privileged). And even more troubling is MGA's newly-minted argument that *any* non-lawyer can "qualify as a lawyer for purposes of the privilege" if MGA "reasonably believed" they were authorized to practice law. This language from a *proposed* (but never adopted) amendment to Fed. R. Evid. 503 does not compel a conclusion that otherwise non-privileged conversations become privileged merely because a client mistakenly believed them to be so; rather, it applies to circumstances where a client is factually mistaken about a lawyer's status. See generally In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (9th Cir. 1997) (discussing the proposed rule and stating "we know of no authority. . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one"). MGA's resort to such logic raises yet another red flag as to the validity and integrity of its privilege assertions.

3

EXHIBIT 6
PAGE 31

functioning of the adversarial process, and the history of MGA's privilege representations in this case, both demonstrate why the <u>Rules</u> requiring service of filings should be followed here.

Thank you for your continuing attention to this matter.

Very truly yours,

/s/ B. Dylan Proctor

B. Dylan Proctor

cc:     Annette L. Hurst, Esq.
        Jason Russell, Esq.

4

EXHIBIT 8
PAGE 23

# EXHIBIT A

EXHIBIT 8
PAGE 54

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
and MGA ENTERTAINMENT (HK) LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES. | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable David O. Carter<br><br>**BEFORE THE MONITOR<br>PER COURT ORDER**<br><br>MGA PARTIES' STATEMENT OF POSITION REGARDING SCOPE OF EXISTING PRODUCT RECALL AND IMPOUNDMENT;<br><br>**FILED UNDER SEPARATE COVER:**<br>DECLARATION OF JASON D. RUSSELL IN SUPPORT THEREOF.<br><br>DATE: October 12, 2009<br>TIME: 9:30 a.m. |

## **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

1  for Stay Pending Appeal (Dkt 5495)) at 8-9; 1/5 Tr. 8:17-24) and that retailers would not be
2  affected by any "gap" in access to Bratz products (1/5/09 Tr. 8:25-9:2; 11/10/08 Tr. 86:7-
3  19), Mattel hedged its (wholly unsubstantiated) "commitment" to market and sell Bratz as
4  contingent on the "assum[ption that] MGA Entertainment has not already irrevocably
5  damaged the Bratz brand." (Ex. 11 (Kilpin Decl. ISO Mattel Opp'n to Stay (Dkt 5496)) ¶ 5.)

6        Mattel executive Mr. Kilpin's declaration, on which Mattel has repeatedly relied to
7  make this assertion of planned use of Bratz, also makes it abundantly clear that as of mid-
8  May Mattel had barely begun, if at all, the design and development process for the Spring
9  2010 Bratz line (see id. (Mattel had not yet "started" design and development of the Bratz)),
10  and was only contemplating a "roadshow" to present said line to retailers. (Id.) MGA has
11  since attempted to learn the extent to which Mattel is planning to develop and market its
12  own line of Bratz and is awaiting Mattel's response. (See Ex. 14 (emails requesting proof
13  of Mattel's offer to sell Bratz branded products in Spring 2010), Ex. 15 (MGA's 3d Set of
14  Phase 2 Req. for Prod. of Documents & Things to Mattel) at RFP 175-177, 179-80, 183,
15  194, 195, 197.)[5]

16        Moreover, even if it exists, Mattel cannot show that its hypothetical Bratz line will be
17  harmed by the sale of the relatively limited remaining inventory of the Non-Recalled Bratz
18  Products. As Mattel pointed out repeatedly in its motion practice in May and as the Monitor
19  is well aware from its review of MGA's accountings, Bratz sales have plummeted
20

21  [5]     To date, Mattel has taken the position that, at most, it will make an *in camera* submission to
22  the Monitor and will object to even permitting MGA's outside counsel from reviewing any
    evidence that Mattel has offered a Bratz line for sale in Spring 2010. At the risk of stating the
23  obvious, Mattel's position is absurd.    The confidentiality order in this Action permits the
    designation of materials under an AEO designation precisely to handle concerns such as those
24  leveled (albeit in predictably bombastic fashion) by Mattel's counsel. Moreover, again at the risk
    of stating the obvious, the Monitor cannot rely on evidence received *in camera* to make such a
25  crucial determination without allowing MGA and its counsel the opportunity to challenge and
26  undermine any supposed evidence that Mattel is in fact making an offer for sale of Bratz products
    in the Spring of 2010. To hold otherwise would completely – and impermissibly – undermine the
27  adversarial process, in denial of even the most basic due process rights enjoyed by the MGA
28  Parties.

EXHIBIT 6
PAGE 34

1 should only include injunctive terms that have a common sense relationship to the needs of
2 the specific case, and the conduct for which a defendant has been held liable." MGM
3 Studios, Inc., 518 F. Supp. 2d at 1226-27. The reason for this is clear: injunctions are
4 "designed to deter, not to punish." Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 61
5 (1975); accord Loya v. I.N.S., 583 F.2d 1110, 1114 (9th Cir. 1978) ("Injunctive relief is
6 designed to deter future misdeeds, not to punish for past conduct"). Ninth Circuit courts
7 considering requests to permanently enjoin infringing conduct likewise recognize that "an
8 injunction may deter future harm, but it may not punish." Hynix Semiconductor Inc. v.
9 Rambus Inc., 609 F. Supp. 2d 951, 969 (N.D. Cal. 2009) (refusing to grant injunction in
10 light of "the court's firm conviction that Rambus's motive in seeking an injunction is not to
11 prevent irreparable harm but either (a) to increase its leverage in negotiating an ongoing
12 license with Hynix or (b) to punish Hynix out of spite for its decision to contest Rambus's
13 infringement allegations and over a variety of other grievances" (id. at 985)); accord MDY
14 Indus., LLC v. Blizzard Entm't, Inc., 2009 WL 649719, at *1 (D. Ariz. Mar. 10, 2009)
15 (citing Rondeau). MGA should not be made to replace tooling for components that are not
16 infringing at its own expense – there was nothing wrongful about the components that the
17 tooling was used to make.

18 **CONCLUSION**

19     For the foregoing reasons, the MGA Parties respectfully submit that Mattel's request
20 to expand the scope of the recall of Bratz products should be denied and the impoundment
21 of the "means of making" Bratz be narrowly circumscribed.

22

23 DATED: September 28, 2009    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

24

25     By: _Thomas J. Nolan /JKdC_

26                 Thomas J. Nolan
                Attorneys for the MGA Parties

27

28

EXHIBIT 6
PAGE 31

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

      Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

      Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED COPY**

AND CONSOLIDATED ACTIONS.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Friday, October 16, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 121491

EXHIBIT 9
PAGE 38

1    made a proper response -- assuming we put the Beth Cahill

2    issue aside that's referenced in the letter, do you feel

3    like you've made enough of a response that I can read the

4    letters and --

5            MS. HURST:   I don't think there's more we would

6    say.  I mean, without arguing the characterization of what

7    the original letter said, I don't think there's more we'd

8    say about whether our response to order No. 50 should

9    remain in camera or not, other than, you know, it was

10   prepared specifically for the in-camera inspection, the

11   descriptions of the roles that people had with respect to

12   privileged communications were, in our understanding, for

13   your eyes only, and apart from all of that, it was a great

14   deal of work product that went into preparing that, and I

15   just think that if we sent Mattel a document request

16   asking them to give us their witness, you know, charts and

17   witness lists, they would immediately object on the ground

18   that that's at least qualified work product and refuse to

19   produce those and so --

20           Now, we've both had our argument and --

21           MR. O'BRIEN:   Okay.  I want to read the letters

22   before I decide, but I just want to make sure that I --

23   what I don't want to have happen is the process, which is

24   already, I think, relatively streamlined for the parties

25   and puts everybody under a lot of pressure, both sides, on

Page 11

EXHIBIT  9
PAGE  94

1    these 5-day returns and the oppositions with, you know,

2    relatively limited time, I don't want it to turn into

3    either a letter-writing or e-mail-type process, because I

4    don't think it's good for either side and it kind of goes

5    against the ideas of notice and allowing both sides to be

6    properly heard on those issues.

7            Having said that, if both parties -- if I have

8    both of your agreements to review the letters and then,

9    Mr. Proctor, you said there's a reply letter that you sent

10   in reply to Ms. Hurst's letter?

11           MR. PROCTOR:  Correct.

12           MR. O'BRIEN:  All right.

13           MS. HURST:  Why don't I go back, if it's all

14   right with you, and just review them and confirm that --

15   because I have to confess, I didn't actually read the

16   reply letter so --

17           MR. O'BRIEN:  I haven't read any of them at this

18   point.  Let me suggest the following.  If -- you're

19   content to have me rule on the letter record as it stands,

20   Mattel is; is that correct?

21           MR. PROCTOR:  Correct.

22           MR. O'BRIEN:  Okay.  I'm not going put you on the

23   spot until you read the letters --

24           MS. HURST:  Okay.

25           MR. O'BRIEN:  -- Ms. Hurst, but if you'd like me

Page 12

EXHIBIT 9
PAGE 40

1     to rule on issue based on the letters that have been

2     submitted, just in the interest of judicial economy and

3     efficiency, send me an e-mail, on which you cc Mattel and

4     all the key players.  If you would rather not have me rule

5     on letters and believe it's something that should be the

6     subject of a motion, then put that in the e-mail as well.

7     And, you know, at that point I think you have to file a

8     motion on the issue, which maybe nothing more than your

9     letters attached to a declaration --

10              MR. PROCTOR:  Attaching the letter.

11              MR. O'BRIEN:  -- and, you know, a notice of

12    motion.

13              So the ball is in your court, Ms. Hurst, on how

14    you want me to decide the issue.  I haven't looked at it

15    so I can't give either party any guidance or make any

16    suggestions on meet-and-confer issues until I get a chance

17    to see the letters.  I'm going to hold off on reviewing

18    them until I receive a communication from you one way or

19    the other, Ms Hurst, if that is acceptable?

20              MS. HURST:  Sure.

21              MR. PROCTOR:  Just for the record, I mean, this

22    was an issue that we raised by letter because it was a

23    service issue to us, this was a submission, a filing that

24    was made with the Discovery Master that was not served on

25    opposing parties.  As a service issue, we thought it was

EXHIBIT 9
PAGE 41

1    appropriate to raise in a somewhat informal manner.

2             In terms of the, quote, unquote, briefing on it,

3    MGA submitted its response letter approximately 10 days or

4    two weeks after we submitted the letter.

5             But, in any case, if Ms. Hurst or the

6    Discovery Master would like us to file a notice of motion,

7    that's fine.  I would appreciate just getting information

8    about that as soon as possible so that we can go ahead and

9    prepare that motion.

10            MS. HURST:  I can't represent that I'll respond

11   this afternoon because I'm going to go to the airport and

12   get on a plane, but I will be happy to respond within, you

13   know, 2 or 3 business days at the latest.

14            MR. O'BRIEN:  That would be fine.

15            MR. PROCTOR:  Thank you.

16            MR. O'BRIEN:  So the ball will be in Ms. Hurst's

17   court, and we'll either proceed with the letters or

18   we'll -- I assume you'll file a motion if the letter

19   briefing isn't acceptable.

20            And I wasn't being pejorative in the fact, if you

21   sent a letter -- either party can always send me a letter

22   on any issue, and then we'll raise it, and we'll decide if

23   it needs to be briefed.  So I'm not suggesting that an

24   e-mail -- you shouldn't send an e-mail or shouldn't send a

25   letter, because we've, obviously, ruled on, and resolved

Page 14

EXHIBIT 9
PAGE 42

1   lots of issues regarding timing and that sort of thing,

2   with e-mails from both parties.  So I'm not telling you

3   not to send an e-mail or send a letter.

4          On this particular matter, it sounds like it may

5   be more substantive than just the letter or it may not be,

6   and it may be that all the arguments of both sides are in

7   the letters and we can just dispose of if.  But I'll leave

8   that to Ms. Hurst to see how we'd like to proceed -- how

9   she'd like to proceed and then we'll go accordingly.

10          What I'll do is set some hearings, or maybe we

11   can dispose of -- depending when these motions are fully

12   briefed, maybe we can have a hearing that disposes of all

13   five of the pending motions and maybe the letter request

14   situation.  I don't know if all of them need to be --

15   require oral arguments, so I'll take a look at all the

16   various motions and then I'll try and set a hearing date

17   in the not too distant future to dispose of the now

18   pending motions that we're not dealing with today.  And

19   the idea is, you know, I want to make sure that everybody

20   has the guidance that they need to go forward in discovery

21   and that you're not waiting on things because there's a

22   backlog of orders here.  We've tried to stay up to speed

23   with you, but it does take some effort because counsel on

24   both sides are diligent in protecting themselves and

25   seeking to protect their rights in discovery.  By the way,

EXHIBIT 9
PAGE 43

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated:    OCT 22 2009    _____

22

23             _Cheryl R. Kamalski_

24             CHERYL R. KAMALSKI
              CSR No. 7113

25

EXHIBIT 9
PAGE 44

**EXHIBIT 10**

## Zachary Krug

**From:** Dylan Proctor
**Sent:** Thursday, October 22, 2009 11:17 AM
**To:** MGA / Bryant Team
**Subject:** FW: MGA/Mattel

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Thursday, October 22, 2009 11:15 AM
**To:** obrien.robert@arentfox.com
**Cc:** hansen.drew@arentfox.com; Dylan Proctor; Molinski, William; Marshall Searcy; Villar, Peter N.
**Subject:** MGA/Mattel

Mr. O'Brien:

MGA agrees that the Discovery Master may decide the issue of whether MGA's *in camera* response to Order No. 50 must be provided to Mattel on the basis of the letters submitted by the parties, without need for further briefing. We do object to consideration of the other issues raised in the letters (such as the Beth Cahill issue) by way of letter rather than noticed motion, but as I understand Mr. Proctor's comments from the last hearing, those are to be addressed in separate motion practice anyway and were not intended to be an additional request for relief.

Respectfully,
Annette Hurst



O R R I C K

**ANNETTE L. HURST**
*Partner*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
SAN FRANCISCO

*tel* (415) 773-4585
*fax* (415) 773-5759
ahurst@orrick.com

www.orrick.com

"EMF <orrick.com>" made the following annotations.
---------------------------------------------------------------------------
=========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under

EXHIBIT 10
PAGE 45

the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.

============================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
============================================================
================================================================

EXHIBIT 10
PAGE 416

**EXHIBIT 11**

1   Robert C. O'Brien (SBN 154372)
2   ARENT FOX LLP
    555 West Fifth Street, 48th Floor
3   Los Angeles, CA 90013-1065
    Telephone: 213.629.7400
    Facsimile:  213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                     SOUTHERN DIVISION

11

12   CARTER BRYANT, an individual,        Case No. CV 04-09049 DOC (RNBx)

13              Plaintiff,
                                          Consolidated with
14        v.                              Case No. CV 04-09059
                                          Case No. CV 05-2727
15   MATTEL, INC., a Delaware
     corporation,                         **PHASE 2 DISCOVERY MATTER**
16
                Defendant.                **ORDER NO. 73, REGARDING:**
17
                                              **REQUEST OF MATTEL, INC.**
18                                            **FOR INFORMATION PROVIDED**
                                              **BY MGA ENTERTAINMENT,**
19                                            **INC. AND ISAAC LARIAN TO**
                                              **THE DISCOVERY MASTER IN**
20                                            **CONNECTION WITH ORDER**
                                              **NOS. 33 AND 50**
21   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
22   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                         ORDER NO. 73
                                          [Case No. CV 04-09049 DOC (RNBx)]

                                                     EXHIBIT 11
                                                     PAGE 47

1    This Order sets forth the Discovery Master's ruling on the request of Mattel,

2    Inc. ("Mattel") for information provided by MGA Entertainment, Inc. and Isaac

3    Larian (collectively, the "MGA Parties") to the Discovery Master pursuant to Order

4    Nos. 33 and 50 (the, "Letter Motion"). The Discovery Master, having considered

5    Mattel's Letter Motion, the Opposition to the Letter Motion, and the Reply in

6    Support of the Letter Motion, rules as set forth below:

7    **I.    RELIEF SOUGHT BY MATTEL**

8        On September 15, 2009, Mattel submitted a letter brief requesting that the

9    MGA Parties "be ordered to produce the index submitted to the Discovery Master"

10   pursuant to Order No. 50 "with any genuinely privileged information redacted."

11   (September 15, 2009 correspondence from Dylan Proctor to Robert C. O'Brien, p.

12   2). In its Reply dated September 30, 2009, Mattel also requested that the MGA

13   Parties be ordered "to serve whatever other *in camera* submissions accompanied its

14   initial submission of the withheld communications at issue in Order No. 33, at least

15   in redacted form, so that Mattel can examine the representations it is making to the

16   Discovery Master." (September 30, 2009 correspondence from Dylan Proctor to

17   Robert C. O'Brien, p. 3).

18   **II.   THE MGA PARTIES' OPPOSITION**

19       The MGA Parties oppose the Letter Motion on three grounds. First, they

20   argue that it is procedurally improper, since "Mattel has not identified any

21   outstanding document request that calls for the list it now demands." (September

22   28, 2009 correspondence from Annette Hurst to Robert C. O'Brien, p. 1). Second,

23   they argue that the "submission was made solely for the purposes of the Discovery

24   Master's use in connection with the *in camera* inspection" and contains "numerous

25   sources of work product and privileged information." (*Id.*). Finally, they argue that

26   Mattel has already received the information necessary to assess their privilege

27   assertions and that "MGA has provided additional information upon request." (*Id.*).

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 73
[Case No. CV 04-09049 DOC (RNBx)]

EXHIBIT 11
PAGE 46

III.   **ANALYSIS**

A.   **The Letter Motion Is Denied**

Having considered all of the parties' arguments, I find that the MGA Parties are not required to produce the index the MGA Parties submitted pursuant to Order No. 50 or any of the submissions that accompanied the production of the withheld documents required by Order No. 33. The Letter Motion is denied for three reasons.

First, the submissions were ordered solely for purposes of facilitating my *in camera* review of the withheld communications. They were not intended to create additional responsive materials that Mattel could discover.

Second, redacting the submissions is not possible in many instances because the documents are entirely privileged and/or comprise attorney work product, and even producing redacted documents could disclose privileged information.

Finally, ordering the production of the materials now would be inequitable. If the MGA Parties had known that the information they were submitting to me *in camera* would also have to be produced to Mattel, the MGA Parties may have phrased the submissions in another manner or appealed my rulings in Order No. 33 and/or Order No. 50 to the Court. That the MGA Parties believed the materials would not have to be produced to Mattel is evidenced by their refusal to produce the submissions as well as their claim in the Opposition that "[t]he submission[s] w[ere] made solely for the purposes of the Discovery Master's use in connection with the *in camera* inspection." (September 28, 2009 correspondence from Annette Hurst to Robert C. O'Brien, p. 1).

B.   **The Parties Must Comply With Federal Rule Of Civil Procedure 26(b)(5)(A)(ii)**

Notwithstanding the foregoing, the parties must comply with their respective obligations concerning privilege logs. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii), a party withholding documents under claim of privilege must

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-2-

ORDER NO. 73
[Case No. CV 04-09049 DOC (RNBx)]

EXHIBIT 11
PAGE 49

1  "describe the nature of the documents, communications, or tangible things not

2  produced or disclosed – and do so in a manner that, without revealing information

3  itself privileged or protected, will enable other parties to assess the claim." (Fed. R.

4  Civ. Proc. 26(b)(5)(A)(ii)).

5       As a practical matter, this rule requires that the party claiming the privilege

6  should set forth the following information in its privilege log: (1) the general

7  nature of the document (without disclosing its contents); (2) the identity and

8  position of its author; (3) the date it was written; (4) the identity and position of all

9  addressees and recipients; (5) the document's present location; and (6) the specific

10  reason(s) it was withheld (i.e., which privilege is claimed, etc.). (*United States v.*

11  *Construction Products Research, Inc.*, 73. F.3d, 464, 473 (2nd Cir. 1996)); *Harper*

12  *v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 664 (S.D.Ind.1991); *Resolution Trust*

13  *Corp. v. Diamond*, 137 F.R.D. 634, 641–642 (S.D.N.Y. 1991); *see also* Wright &

14  Miller, 8 Federal Practice & Procedure § 2016.1).

15       To ensure that their respective privilege logs meet the requirements of

16  Federal Rule of Civil Procedure 26(b)(5)(A)(ii), the parties are ordered to review

17  their privilege logs again.   The Parties must cure any deficiencies in such logs by

18  providing supplemental privilege logs to the opposing party within forty-five (45)

19  days from the date of this Order. If the adequacy of any privilege log entry remains

20  in question following the expiration of this time period, the parties may seek

21  appropriate relief after having met and conferred.

22  **IV.   DISPOSITION**

23       The Discovery Master **ORDERS** as follows:

24       1.     Mattel's Letter Motion is **DENIED**.

25       2.     The parties are ordered to review their respective privilege logs and

26  ensure that they satisfy the requirements of Federal Rule of Civil Procedure

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 73
[Case No. CV 04-09049 DOC (RNBx)]

EXHIBIT _ll_
PAGE 50

1  26(b)(5)(A)(ii). Any deficiencies in the privilege logs must be corrected within

2  forty-five (45) days of this Order.

3

4  Dated:  October 30, 2009

5

6                                        By:        /s/ Robert C. O'Brien
                                                    ROBERT C. O'BRIEN
7                                                   Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 73
[Case No. CV 04-09049 DOC (RNBx)]

EXHIBIT 11
PAGE 61