O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,          )     CASE NO. CV 04-9049 DOC (RNBx)
                                       )
                Plaintiff(s),          )
                                       )     O R D E R DENYING MOTION TO
        v.                             )     VACATE RECALL PROVISIONS
                                       )     OF INJUNCTION OR, IN THE
MATTEL, INC., a Delaware               )     ALTERNATIVE, TO CLARIFY
corporation,                           )     AND/OR MODIFY SUCH RECALL
                                       )     PROVISIONS; GRANTING IN
                Defendant(s).          )     PART AND DENYING IN PART
                                       )     MOTION TO CLARIFY AND/OR
                                       )     LIMIT MONITOR'S AUTHORITY
                                       )     AS AN ADJUDICATIVE OFFICER
                                       )     OF THE COURT
                                       )
_____ )

Before the Court are two Motions concurrently filed by Counter-Defendants MGA

Entertainment, Inc., MGA Entertainment HK Ltd., and Isaac Larian (collectively "MGA" or

"MGA Defendants"): (1) a Motion to Vacate Recall provisions of Injunction or, in the

alternative, to Clarify and/or Modify Such Recall Provisions (the "Motion to Vacate"); and  (2) a

Motion to Clarify and/or Limit Monitor's Authority as an Adjudicative Officer (the "Motion to

Clarify").  After considering the moving, opposing, and replying papers, as well as the parties'

oral argument, the Court DENIES the Motion to Vacate and GRANTS in part and DENIES in

part the Motion to Clarify.

## I.      Background

### A.      Procedural History

On April 27, 2004, Mattel, Inc. ("Mattel") filed a complaint against Carter Bryant in California Superior Court alleging that Bryant had improperly acquired and infringed Mattel's copyright in creating the Bratz line of fashion dolls with an unnamed competitor.  Bryant removed the case to the Central District of California.  On November 2, 2004, Bryant filed suit against Mattel seeking a declaration of non-infringement.  On April 13, 2005, MGA Entertainment, Inc. filed a complaint against Mattel alleging that Mattel had copied MGA's Bratz line of dolls.

The District Court consolidated the three cases, after which Mattel filed counterclaims against the MGA Defendants alleging violations of federal copyright law and various state law claims. On July 2, 2007, the Court bifurcated the trial into two phases.  The Court ordered that Phase 1 of the trial would resolve all issues regarding the ownership of Bratz.  The Court further divided Phase 1 into Phases 1(a) and 1(b) and 1(c): "Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings."  Phase 1(c), conducted after the jury delivered its verdict, was tried in equity to the Court.

On July 17, 2008, following the conclusion of Phase 1(a) of the trial, the jury found that Carter Bryant was employed by Mattel at the time he conceived the Bratz character and name, and that the MGA Defendants were therefore liable for intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, aiding and abetting breach of the duty of loyalty, and conversion.  On August 26, 2008, the jury issued its Phase 1(b) verdict that, in relevant part, awarded Mattel damages arising out of the MGA Defendants' liability and found that none of the MGA Defendants acted willfully or with malice.

On December 3, 2008, the Court issued a permanent injunction (the "Injunction Order") as part of three injunctive orders issued pursuant to its extensive and deliberate Minute Order, which applied the jury's findings against various equitable factors including, but not limited to:

(1) the irreparable injury, if any, suffered by Mattel in the absence of a permanent injunction; (2) the availability of other legal remedies to Mattel in the absence of a permanent injunction; (3) hardship, if any, suffered by the MGA Defendants following the issuance of a permanent injunction; and (4) effects to the public interest.  Upon consideration of the above factors, the Court issued the Injunction Order that, in relevant part, required the impoundment and destruction of the Bratz dolls, the recall of infringing products from retailers, and the appointment of a special master to monitor the implementation of the permanent injunction.  In addition, the Court issued a declaratory judgment that affirmed Mattel's ownership of Bratz and imposed a constructive trust.  The Court specified in its December 3 order that its grant of injunctive relief was non-final.

On December 11, 2008, the MGA Defendants applied *ex parte* to stay the December 3 orders.  The MGA Defendants concurrently filed a motion before the Ninth Circuit on December 19, 2008 seeking a stay pending appeal of the Court's injunction.  On January 12, 2009, the Ninth Circuit dismissed the appeal for lack of jurisdiction, noting that the Court's injunctive relief was non-final.  On December 30, 2008, the Court likewise denied the MGA Defendants' motion for stay pending appeal but delayed the recall date, in accommodation of the MGA Defendants' objections, to December 31, 2009.  On April 27, 2009, the Court finalized all of the injunctive orders.  The MGA Defendants also applied to this Court *ex parte* for a stay pending appeal.  The Court denied the MGA Defendants' request.  The Court also denied an oral request by the MGA Defendants to stay the recall provisions, noting "the scope of infringement found by the Court (which was broad) and . . . the fact that the Bratz dolls compete directly with existing Mattel products."

MGA Defendants appealed in part the Court's Injunction Order to the Ninth Circuit on May 4, 2009.  Concurrently, the MGA Defendants filed an emergency motion before the Ninth Circuit seeking a stay of the Injunction Order pending appeal, but the Ninth Circuit denied their request on the grounds that "MGA has not met the prevailing standard to show a substantial likelihood of ultimate success on the merits."  The MGA Defendants' appeal is presently pending before the Ninth Circuit and is scheduled for oral argument on December 9, 2009.

**B.     The Recall Provisions of the Injunction Order**

As previously mentioned, the Injunction Order required, *inter alia*, the MGA Defendants to recall remaining Bratz dolls.  Paragraph 4 of the Injunction Order defines the contours of the recall, and identifies the precise products to be recalled:

> 4.     Defendants are hereby ORDERED to procure the return, and to withdraw and recall, from any and all channels of trade and distribution, including without limitation from retail shelves and from on-line retailers, all of the dolls and doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive.  As to each entity or person returning such dolls and doll products, Defendants shall refund all monies paid by each entity or person in connection with such dolls and doll products and shall reimburse each such entity or person for all associated shipping charges.

In addition, Paragraph 6 of the Injunction Order requires the MGA Defendants to disclose the obligations imposed by the Injunction Order to their retailers:

> 6.     At Defendants' expense, Defendants shall make written contact (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler, importer, exporter, customer, licensee or any other person and entity to or through whom Defendants have shipped, transferred, imported, exported or sold any doll, product or other item that is the subject of the Order; and (ii) each retailer, distributor, wholesaler, licensee, potential licensee, customer, potential customer or any other person and entity who Defendants have contacted (whether by mail, electronic mail, orally or otherwise) within the past ninety (90) days in marketing, promoting or advertising any

4

1           doll, product or other item that is the subject of this Order,

2           and shall provide each such person and entity with a copy of

3           this Order and with a verbatim copy of the following notice,

4           in legible and conspicuous print, in its entirety (hereinafter,

5           the "Notice"):

6                NOTICE PUBLISHED PURSUANT TO

7      ORDER OF THE UNITED STATES DISTRICT COURT

8           Recently you my have bought, seen, or been contacted regarding, the

9           sale of Bratz dolls or other Bratz products.

10           Pursuant to the rulings of the United States District Court, Mattel is

11           the owner of Bratz-related copyrights that are infringed by Bratz

12           dolls, products and packaging manufactured by or for MGA.

13           The Court has ordered MGA to immediately cease any further

14           manufacture, sale, promotion, shipment or distribution of Bratz dolls,

15           products and packaging.

16           In addition, the Court has ordered that Bratz dolls must be returned

17           immediately to the following address: MGA Entertainment, Inc.,

18           Attn: Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys,

19           CA 91406.

20           MGA will refund to you all monies paid by you for these dolls and

21           reimburse you for all associated shipping charges.

22        Paragraphs 10-13 of the Injunction Order provided for the appointment of a Special

23 Master pursuant to Federal Rule of Civil Procedure 53.  The Special Master was to "supervise

24 the implementation of the requirements" of the Injunction Order and resolve in the first instance

25 disputes between the parties.  Notwithstanding the terms of Paragraphs 10-13 of the Injunction

26 Order, the Court has not, as yet appointed a Special Master to supervise the implementation of

27 the requirements of the Injunction Order.

28

### C.      Temporary Receiver and Monitor

On January 7, 2009, as a result of a December 11, 2008 financial report submitted by the MGA Defendants, the Court appointed a Forensic Auditor, Mr. Ronald Durkin, to investigate and report on MGA's finances.  Mr. Durkin's report counseled the appointment of a Receiver, and the Court found "just cause" to appoint a temporary receiver, concluding that "it appears likely that the MGA parties, agents and related entities . . . are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunctions."  Mr. Patrick Fraioli was named temporary receiver.

On May 21, 2009, following the expiration of Mr. Fraioli's first term as temporary receiver, the Court declined to appoint a Permanent Receiver.  Instead, the Court appointed Mr. Fraioli the "MGA Monitor," empowering him to "take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of Monitorship."  Those Court's May 21, 2009 Order further provided that Mr. Fraioli, as Monitor, "shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Order")."

The Monitor has remained in close contact with the MGA Defendants and their representatives, interpreting the provisions of the Injunction Order and tracking their compliance with its terms.  In addition, the Monitor has submitted five interim reports to the Court, detailing the parties' progress in complying with the terms of the three post-judgment Orders.  The Monitor has informed this Court, and the MGA Defendants agree, that MGA has contracted with Stericycle and RQA to conduct the recall.  Moreover, the MGA Defendants have supplied a "Bratz Recall Plan" and a "MGA Bratz Recall Plan Milestones Task List" to the Monitor, in an effort to demonstrate their apparent good-faith effort at complying with the terms of the Injunction Order.  Among the issues at dispute between the MGA Defendants and the Monitor, all of which are the subject of the present Motions, are: (1) the extra territorial scope, if any, of the Injunction Order; (2) the MGA Defendants' positive obligations, if any, arising out of the

1   Injunction Order; and (3) the Monitor's authority to resolve disputes and enforce the terms of the

2   Injunction Order.

3   **II.    Discussion**

4       **A.    Motion to Vacate**

5         The parties dispute the terms of the Recall Provisions of the Injunction Order and, more

6   specifically, disagree about the relevance of the recent Ninth Circuit decision in *Marlyn*

7   *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009).  The MGA

8   Defendants argue that the *Marlyn* decision requires this Court to consider equitable factors (not

9   previously considered when granting the Injunction Order) that uniformly compel against the

10  Bratz recall.  Furthermore, MGA directs the Court's attention to Mattel's recent prediction that it

11  would not be able to sell the Bratz products itself until April 2010 at the earliest.  According to

12  MGA, the harm it will likely suffer as a result of the Bratz recall far outweighs the minimal, if

13  any, financial consequence to Mattel in the absence of recall.  Moreover, MGA notes that the

14  current recall deadline is January 2010.  Given the limited quantity of remaining dolls in the

15  marketplace, MGA requests that the Court permit its retailers to simply sell the remaining stock

16  of Bratz dolls.

17        Mattel responds that the Court lacks jurisdiction over the MGA Defendants' Motion to

18  Vacate, as a result of the appeal pending before the Ninth Circuit.  Moreover, Mattel asks the

19  Court to not disregard the considerations that resulted in the issuance of the April 27, 2009

20  injunction, which required the recall of products.  The Court, Mattel notes, has already

21  considered a variety of equitable factors, including the factors cited by the MGA Defendants.

22  Moreover, absolving the MGA Defendants of the recall obligations permits them to continue to

23  profit from Bratz sales, as well as market a doll that directly competes with Mattel's existing

24  product line.

25      **1.    Jurisdiction**

26        Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an

27  interlocutory order of final judgment that grants, dissolves, or denies an injunction, the court

28  may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure

the opposing party's rights."  Rule 62(c) is an exception to the general principle that "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400 (1982) (per curiam).  Thus, a district court's exercise of jurisdiction under Rule 62(c) is generally directed to "preserve the status quo during the pendency of an appeal."  *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).  The Rule "does not restore jurisdiction to the district court to adjudicate anew the merits of the case."  *Id.* (citing *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982)).  Most importantly, "any action taken pursuant to Rule 62(c) may not materially alter the status of the case on appeal."  *Id.* (internal citation and quotation marks omitted).

The MGA Defendants move this Court to vacate the recall provisions of the Injunction Order or, in the alternative, to modify those provisions so as to limit the temporal and substantive scope of the recall.  Mattel argues that the Court lacks jurisdiction to consider both alternatives due to the MGA Defendants' pending appeal before the Ninth Circuit.  Mattel cites several cases for the proposition that a district court lacks jurisdiction to vacate or even modify an injunctive order, while that order is on appeal.  *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. 2000); *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817 (5th Cir. 1989); *Lewis v. Tobacco Workers' Int'l Union*, 577 F.2d 1135 (4th Cir. 1978).  However, in all three cases, the moving party sought to dissolve the injunction in its entirety while it was on appeal.  The MGA Defendants only request that this Court vacate the recall provisions of the Injunction Order.  Moreover, even after an injunction is appealed, the district court retains power to vacate or alter its provisions to the extent required to "maintain[] the status quo."  *Coastal Corp.*, 869 F.2d at 820.

The Court recognizes the fragile logic of the MGA Defendants' claim that their appeal does not concern the recall provisions of the Injunction Order.  *See* Reply ISO Mtn., at 4.  After all, the core concern raised by MGA's appeal before the Ninth Circuit is that the facts of this case (and the juries' findings) failed to support the injunctive relief, including, in whole, the

Injunction Order.  (*See* Exh. 1 to Dkt. # 7050, at 5.)  The MGA Defendants' appeal does not exclude the recall provisions from its ambit.  Nor do the MGA Defendants argue that the Ninth Circuit lacks jurisdiction over any provision of the Injunction Order, including Paragraphs 4 and 6 of that order, which are the recall provisions.  In short, this Court's consideration of the MGA Defendants' Motion to Vacate would run afoul of the general principle that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously."  *Griggs*, 459 U.S. at 58, 103 S. Ct. at 402.

The MGA Defendants nonetheless argue that an exception to the general rule in *Griggs* is warranted here.  First, MGA claims that its desired relief would preserve the status quo because vacating the recall provisions would not absolve MGA of the Injunction Order's other requirements – *i.e.*, its prohibitory provisions and its requirement that MGA deliver the means of manufacture of the allegedly infringing items.  MGA seeks relief from its positive obligations to contact retailers and recover Bratz dolls already in the marketplace.  However, the MGA Defendants conflate the factual status quo with the legal status quo, a curious error given their own explanation of the concept in footnote 1 to their reply brief.  "Maintaining the status quo means that a controversy will still exist once the appeal is heard.  Any action on the district court's part which has the effect of divesting the court of appeals of its jurisdiction over the matter by eliminating the controversy prior to the hearing of the appeal is inappropriate."  James Wm. Moore, 12 Moore's Federal Practice § 62.06 (3d ed. 2009).  Thus, the Court's inquiry must necessarily examine whether vacating or otherwise modifying the recall provisions of the Injunction Order would frustrate the Ninth Circuit's ability to properly adjudicate MGA's appeal.

Notwithstanding the broad brush with which the MGA Defendants' object to the Court's Injunction Order, the basis for their appeal is that the injunction should not have been issued "upon the standard that any work was infringed if it was only *substantially similar* to the original drawings and prototype."  (emphasis in original).  The appeal therefore does not ask the court to review the equities relevant to the grant of an injunction.  Rather, it is concerned with whether the factual predicates were sufficient to trigger the judgment.  Thus, the Court considers its

1  exercise of jurisdiction over a separable provision of the Injunction Order (*i.e.*, the recall

2  provisions) insufficient to divest the Court of Appeals of its jurisdiction to evaluate the general

3  basis for the Injunction Order.  *See Larami Corp. v. Lanard Toys Ltd.*, Civ. A. No. 91-7923,

4  1992 WL 20320, *1 (E.D. Pa. Jan. 30, 1992) (vacating recall provision of preliminary injunction

5  while grant of injunction was on appeal).

6       The Court likewise retains jurisdiction to consider the MGA Defendants' Motion to

7  Vacate to the extent that it seeks a modification of the recall provisions.  Mattel argues that the

8  Court lacks the authority to make changes to the time constraints imposed by the Injunction

9  Order while that order is on appeal.  Not so.  In *Natural Resources*, the court defined the time

10  constraints imposed by the injunction while the injunction was on appeal.  242 F.3d 1167.  In so

11  doing, the court claimed to vindicate the "underlying purposes of the original requirements."  *Id.*

12  The MGA Defendants ask the Court to limit the Monitor's directive that MGA "sweep the

13  shelves" and clarify that the recall need not be effected extra territorially.  They claim that both

14  modifications would more faithfully apply the Injunction Order and, in particular, give meaning

15  to the requirements in Paragraph 6.

16       MGA's Motion to Vacate requests that the Court target the recall provisions of the

17  Injunction Order, none of which is the specific subject of the pending Ninth Circuit appeal.

18  Moreover, MGA's desired relief would preserve, and not alter, the status quo, as it does not

19  request that that the Court vacate any other provisions of the Injunction Order including, most

20  notably, the prohibitions on MGA's future conduct.  The same is true for MGA's requested

21  modifications, which MGA claims vindicate the purpose of the Injunction Order.  Most

22  importantly, the Court's consideration of these issues will not interfere with the Ninth Circuit's

23  review; nor is there even a remote possibility of dual or conflicting judgments.  Accordingly, the

24  Court finds that it has jurisdiction over MGA's Motion to Vacate.

25                 **2.       Reconsideration of the Injunction Order**

26       MGA argues that "changes in the law and facts warrant vacating the Recall Order."  Mtn.,

27  at 13.  More specifically, MGA argues that in granting the Injunction Order, the Court failed to

28  consider equitable factors that counsel for the limitation or removal of the recall provisions.

MGA also argues that the Ninth Circuit's recent decision in *Marlyn*, coupled with the revelation that Mattel will not release the Bratz doll to its shelves before April 2010, tip the balance of equities against the imposition of a costly and unnecessary recall.

When it issued the Injunction Order, the Court cited to the Supreme Court's decision in *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, which identified the factors a plaintiff seeking a permanent injunction must satisfy before a court may grant such relief. "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." 547 U.S. at 391. The Supreme Court's consideration of the four factors was not discretionary; rather, "this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *Id.* at 392.

The MGA Defendants presume that the Court issued the Injunction Order with minimal consideration of the equities, repeatedly informing the Court in their Reply brief that the Injunction Order issued by the Court was drafted by Mattel. However, the Court's December 3, 2008 analysis remains applicable, especially in light of the Court's subsequent attempts to accommodate MGA by twice delaying the recall date. First, the Court considered relevant the injury to Mattel arising out of the continued infringement of its copyright and, "in light of the scope of the infringement," considered recall proper. Second, the Court determined the enjoinder was necessary to resolve at least some of the harm suffered by Mattel as a result of this infringement. Third, the Court considered MGA's hardship – lost profits – inconsequential when balanced against the harm suffered by Mattel including, in significant part, "the fact that the injunction addresses products ***that directly compete with Mattel's products***." (emphasis added). Fourth, the Court acknowledged the strong public interest inherent in the enforcement of copyright laws.

MGA nonetheless claims that the Ninth Circuit's recent decision in *Marlyn* compels

reconsideration.  In *Marlyn*, the court was confronted with the propriety of issuing a preliminary injunction.  The court recognized the two types of preliminary injunctions available: (1) prohibitory injunctions, which "preserve[] the status quo pending a determination of the action on the merits;" and (2) mandatory injunctions, which "are not generated unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."  571 F.3d at 879.  As the desired recall constituted a mandatory injunction, the court suggested that ordinary equitable considerations were insufficient.  In addition to the factors ordinarily considered when determining whether to grant a prohibitory preliminary injunction, the court incorporated the Third Circuit's standard, which requires a district court to consider: (1) the willful or intentional infringement by the defendant; (2) whether the risk of confusion to the public and injury to the trademark owner is greater than the burden of recall to the defendant; and (3) substantial risk of danger to the public due to the defendant's infringing activity.  *Id.* (citing *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 233 (3d Cir. 2003)).

Before applying these three factors to the present case, the Court must first determine whether (and to what extent) *Marlyn* is applicable.  Mattel argues that *Marlyn*'s concern was with the issuance of a preliminary injunction and that, in this case, the risk of undue obstruction to MGA's business is considerably lower, as the jury already determined that MGA infringed on Mattel's copyright.  However, *Gucci*, the case invoked by *Marlyn*, was a permanent injunction case, which similarly held that a recall requirement was not warranted even after trial had concluded and the district court had determined that defendant had infringed on plaintiff's trademark.  Moreover, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than the actual outcome."  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S. Ct. 1396 (1987).

*Amoco*'s general principle does not assume the existence of additional factors to be considered before granting a mandatory injunction.  The issue therefore is not whether preliminary injunctions and permanent injunctions should satisfy identical standards, but

1    whether preliminary mandatory injunctions and permanent mandatory injunctions should.  In

2    other words, the Court is unconvinced by MGA's suggestion that the harmonization of

3    preliminary and permanent injunctions, in the context of prohibitory injunctions, likewise

4    demands that the standards that apply to mandatory injunctions be aligned.  Thus, the Court must

5    return to *Gucci*, in which the court noted only that the additional three factors were equities to be

6    balanced and not, as MGA would suggest, hurdles to be cleared.  *See* 354 F.3d at 234.  Even in

7    *Marlyn*, the court reviewed the district court's consideration of only the third factor, implying

8    that the existence of a significant public health concern could itself justify recall.  *See* 571 F.3d

9    at 879.

10          MGA fails to acknowledge that *Marlyn*'s use of the three *Gucci* factors was based upon a

11   restrictive reading of *Gucci*; indeed, the court held that "we join [*Gucci*] in requiring the district

12   court to consider these factors before granting a ***preliminary injunction directing product recall***

13   ***in a trademark infringement case***."  *Id.* (emphasis added).  Furthermore, the reasons for the

14   court's incorporation of the *Gucci* factors included: (1) a desire to maintain the status quo; and

15   (2) the fact that the injury could be adequately compensated for through damages.  *Id.*  Neither

16   factor is relevant here.  First, MGA has failed to substantiate the Court's interest in maintaining

17   the status quo, given the fact that the issue of infringement has been determined.  MGA only

18   offers the interest in not causing irreparable harm prior to the completion of its appeal, but that is

19   a concern more apt for the Court's determination of a stay, which this Court (and the Ninth

20   Circuit) has already denied.  Moreover, the "status quo" prior to granting a recall is very

21   different from the one which follows its grant and subsequent affirmations of that recall despite

22   numerous challenges.  Indeed, this case proves that the parties continue to act in reliance upon

23   the Court's Injunction Order and the Court is aware of no authority, in the Ninth Circuit or

24   otherwise, which requires the Court to vacate a recall by applying equitable factors that were not

25   relevant at the time the recall was granted.  Second, the December 3, 2008 Order already

26   identified the inadequacy of damages to compensate for Mattel's injuries.  Thus, the Court is

27   unconvinced that the *Marlyn* court would have likewise required this Court's consideration of

28   the *Gucci* factors prior to imposing a permanent mandatory injunction.

In any event, the Court concurs with Mattel that considering the *Gucci* factors will not change the outcome here. First, notwithstanding the jury's Phase 1(b) finding that the MGA Defendants did not act with malice, Judge Larson has already observed that one e-mail withheld by MGA is "directly relevant to the issue of willfulness." The MGA Defendants ask this Court to ignore such evidence as subordinate to the jury's finding and this Court is inclined to agree, however, it does not agree that this first factor therefore weighs *against* the issuance of a recall order. Second, the risk of confusion to the public is great, as already considered by the December 3, 2008 order, but the injury to Mattel is even greater. MGA relies on a September 18, 2009 deposition delivered to the Monitor by Mattel's Senior Vice President Timothy Kilpin, in which Mr. Kilpin implied that Mattel would not begin its release of the Bratz dolls until April 2010 at the earliest. Mattel disagrees. *See* Opp'n, at 20 (The Monitor is "satisfied, based upon these presentations, that there will be a Sprint [sic] 2010 Bratz line manufactured by Mattel.") Notwithstanding the questionable relevance of a single executive's prediction, MGA ignores that the Injunction Order's recall provisions were not issued to secure Mattel's ability to release the Bratz products, but rather to rid the market of infringing products that "directly compete with Mattel's products." The Court considers Mattel's interest in avoiding having to compete with products that it owns the copyright to sufficiently strong so as to overwhelm the remaining *Gucci* factors. Third, Mattel concedes that there is no danger to the public to be considered in the absence of recall. However, the Court agrees that the remaining equities (including the equities relevant to the issuance of a permanent injunction) weigh against vacating the recall provisions of the Injunction Order.

Finally, in a plea that does not fit well into any one equitable factor, MGA urges this Court to consider the burdens of recall to MGA; namely the fact that "the Copyright Recall Order could cost MGA anywhere between $10M and $20M or even more in out-of-pocket expenses and product reimbursement costs, depending upon the geographic scope of the recall (as addressed herein) and the rate of compliance by third parties with the recall notices." But these are issues already considered by the Court and it has rejected all prior attempts by MGA to raise this concern. Accordingly, the Court finds no ground to vacate the recall provisions even

1  upon consideration of the *Gucci* factors.

2  **3.     Clarification and/or Modification of the Recall Order**

3  MGA asks the Court to clarify and/or modify the recall order in three ways: (1) clarify

4  that MGA need not "sweep the shelves" of Bratz products; (2) clarify that the recall order does

5  not apply outside the United States; and (3) modify the recall order so that MGA does not need

6  to send the recall letter to pre-July 2008 retailers.

7  **a.     Requirement that MGA "sweep the shelves"**

8  Paragraph 4 of the Injunction Order reads as follows:

9      4.     Defendants are hereby ORDERED to procure the

10            return, and to withdraw and recall, from any and all

11            channels of trade and distribution, including without

12            limitation from retail shelves and from on-line

13            retailers, all of the dolls and doll products that are

14            referred to in paragraphs 1(a) through 1(k), inclusive,

15            and/or in paragraphs 2(a) through 2(h), inclusive.  As

16            to each entity or person returning such dolls and doll

17            products, Defendants shall refund all monies paid by

18            each entity or person in connection with such dolls and

19            doll products and shall reimburse each such entity or

20            person for all associated shipping charges.

21  MGA argues that Paragraph 4 must be read in conjunction with Paragraph 6, which

22  requires the MGA Defendants to mail notices of recall to retailers.  More specifically, MGA

23  argues that Paragraph 6 clarifies that Paragraph 4 requires no affirmative efforts to recall

24  products.

25  The Court recognizes that the burdens of recall are acute and that the MGA Defendants

26  have retained Stericycle and RQA in an apparent effort to comply with the Order's recall

27  provisions.  Moreover, the authorities Mattel cites as supportive of the requirement that MGA

28  "sweep the shelves" are inapposite.  *See* Opp'n at 21-22 (citing *Cherry River Music Co. v.*

15

1  *Simitar Ent., Inc.*, 38 F. Supp. 2d 310, 323-24 & n. 122-23 (S.D.N.Y. 1999); *Fisher-Price Toys*

2  *v. My-Toy Co.*, 385 F. Supp. 218, 223 (S.D.N.Y. 1974); *Chere Amie, Inc. v. Windstar Apparel,*

3  *Corp.*, 175 F. Supp. 2d 562, 566 (S.D.N.Y. 2001); *Kiki Undies Corp. v. Promenade Hosiery*

4  *Mills, Inc.*, 308 F. Supp. 489 (S.D.N.Y. 1969); and *Merit Diamond Corp. v. Frederick Goldman,*

5  *Inc.*, 376 F. Supp. 2d 517, 527 (S.D.N.Y. 2005)).

6       First, none of Mattel's cited cases involve the interpretation of recall provisions that are

7  identical to those at issue here.  Indeed, in *Cherry River*, the court's inquiry was whether recall

8  was appropriate at all, despite the court's recognition that "no recall order effectively could

9  reach all of the product that remains unsold."  38 F. Supp. 2d at 324.  Second, none of the cases

10 required that the infringing party "sweep the shelves" – even *Fisher Price*, the case relied upon

11 by Mattel's counsel at oral argument ordered the defendant to make a "diligent effort to recall all

12 infringing dolls already distributed."  385 F. Supp. at 223; *see also Kiki Undies*, 308 F. Supp. at

13 493 (ordering defendant to perform recall in part by "offering reimbursement for [products] and

14 deliver the same to plaintiff, at plaintiff's place of business").  Nowhere in their briefing do the

15 MGA Defendants suggest that they shall not likewise make diligent efforts to recall infringing

16 products, and the Monitor's reports suggest that the MGA Defendants have already taken

17 affirmative efforts to "offer[] reimbursement" to retailers.  *Id.*  Third, none of the cases held that

18 an infringing party did not comply with a recall order solely because of its failure to aggressively

19 remove infringing products from its retailers' shelves.  *See, e.g.*, *Chere Amie*, 175 F. Supp. 2d at

20 566 (finding non-compliance in part because defendant "offered no documentary evidence

21 demonstrating when it notified [retailer] of the preliminary injunction or what steps it took to

22 carry out the recall").  Surely, Mattel recognizes that the MGA Defendants' willingness to mail

23 notices of recall, and to retain contractors that specialize in the process of recall, distinguish this

24 case from *Chere Amie*.  More importantly, in *Chere Amie*, the court found that defendant had not

25 complied, largely because it neglected to inform a *defendant retailer* of its obligations pursuant

26 to the recall.  *See also Merit Diamond*, 376 F. Supp. 2d at 527 (imposing recall requirement

27 upon defendant retailers).  Here, by contrast, the recall provisions of the Injunction Order do not

28 speak of retailers' obligations, nor do the MGA Defendants argue that they should be permitted

1   to avoid contacting retailers.  MGA only argues that its failure to "sweep the shelves" of

2   products does not rise to the level of non-compliance, and this Court agrees.

3         At the same time, the Court recognizes the danger in overhauling the terms of the

4   Injunction Order and/or affirmatively restricting MGA's obligations under the same.  Indeed, the

5   Court is aware of no case in which the Court identified *non-obligations* in an Injunction Order.

6   There is good reason for this.  Particular exigencies may ultimately require that MGA "sweep

7   the shelves" in order to vindicate the recall provisions' objective to rid the market of infringing

8   products that erode Mattel's market share.  For example, the Court will become more concerned

9   with the continued availability of Bratz products as the January recall date approaches.  To guard

10   against this possibility, this Court will take a more active role in requiring that the MGA

11   Defendants produce evidence of their efforts and the Court will permit Mattel every opportunity

12   to raise its concerns about MGA's efforts.  However, the Court sees no purpose in restricting

13   MGA's obligations in an Injunction Order that the Court itself will ultimately enforce.  The

14   objective is the removal of Bratz products from retailers' shelves.  The mechanics of the recall

15   are neither the expertise nor the province of the Court.

16         Accordingly, the MGA Defendants' request that the Court "clarify" the Injunction Order

17   by requiring that MGA not "sweep the shelves" is DENIED.

18           **b.**    **Extra Territorial Recall**

19         MGA's objection to the Monitor's guidance that the recall provisions apply extra

20   territorially falsely conflates a finding of liability with the issuance of an injunction.  MGA cites

21   *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994) for the

22   proposition that the "Copyright Act does not authorize a court to give an injunction

23   'extraterritorial reach.'" But MGA neglects to draw the Court's attention to *Subafilms* repeated

24   consideration that "infringing actions that take place ***entirely outside the United States*** are not

25   actionable in United States federal courts."  24 F.3d at 1096 (citing *Peter Starr Prod. Co. v. Twin*

26   *Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir. 1996)) (emphasis added).  Liability has

27   already been adjudicated in this case.

28         Moreover, MGA's proposed solution – restricting the dissemination of recall notices to

1    domestic retailers – would encourage the infringement of a domestic copyright where a

2    significant international market for the product exists.  This Court may not have jurisdiction to

3    order all foreign retailers to comply with the recall provisions of the Injunction Order.  However,

4    the Injunction Order does not impose any obligations upon domestic retailers either.  It simply

5    requires affirmative efforts of the MGA Defendants and the Court is unaware of any authority

6    which counsels against a district court's ability to impose injunctive relief with international

7    consequences.  It is true that the court in *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d

8    1070, 1079 (N.D. Cal. 1998) declined to extend the obligations of a recall order to international

9    retailers.  However, there the court recognized that monetary damages could adequately

10   compensate plaintiff for its losses.  *Id.*  In light of two extensions to the recall deadline, and the

11   Court's prior-stated concern that Bratz products compete with Mattel, monetary damages appear

12   insufficient.  Moreover, were *CyberMedia* read to prohibit the recall of products internationally,

13   the Court is unaware of how this would not extend to all other non-recall obligations imposed by

14   the Injunction Order, an outcome that treads upon jurisdictional limits as this case is on appeal.

15   *See id.* (noting the absence of cases "in which extraterritorial manufacture and distribution of

16   infringing products was *enjoined* on the basis of copyright infringement occurring within the

17   United States") (emphasis in original).

18        No doubt, there are many smaller international retailers with whom the MGA Defendants

19   will struggle to make contact and neither this Court nor Mattel is in a good position to determine

20   who those retailers are and where they may be located.  This Court will not look favorably on

21   any indication that the MGA Defendants intend to conceal the extent of their knowledge.  The

22   Court further expects that MGA's international reach and its longstanding relationships with

23   many retailers should enable it to contact retailers with little difficulty.  As such, the Court

24   directs the Monitor to supply the Court with information and analysis concerning the extent of

25   the MGA Defendants' efforts to contact international retailers and the MGA Defendants' success

26   in recovering infringing products from those international retailers that it does contact.

27        Accordingly, the MGA Defendants' request that the Court "clarify" the Injunction Order

28   so as to exclude extra territorial recall is DENIED.

1              **c.      Modification of Deadlines**

2              The Injunction Order requires that MGA deliver a recall notice to all of its

3      retailers.  MGA argues that this requirement is burdensome and unnecessary in light of its

4      diminishing sales and the low likelihood that any pre-July 2008 retailers have purchased Bratz

5      products in the recent past.  Moreover, MGA argues that Mattel has already received damages

6      for pre-July 2008 sales and that extending the recall provisions beyond that date would impose a

7      double penalty upon MGA.  However, the MGA Defendants have been on notice since April 27

8      of their obligation to contact pre-July 2008 retailers.  Had the Court not granted MGA two

9      extensions, there would be little dispute that if the recall provisions were to have any effect, they

10     would require the MGA Defendants to contact pre-July 2008 retailers.  While the MGA

11     Defendants' concerns about double-recovery are duly noted, the recall provisions were imposed

12     in order to protect Mattel losing market share to products over which it holds a copyright.

13     Accordingly, the MGA Defendants' request that this Court extend the recall deadlines and/or

14     limit the temporal scope of the recall is DENIED.

15              **B.      Motion to Clarify**

16              Paragraphs 10 through 13 of the Injunction Order contemplated the appointment of a

17     Special Master to, in relevant part, adjudicate the parties' compliance with the terms of the

18     Injunction Order.  The Court neglected to appoint a Special Master, but did appoint a Monitor.

19     The Court further provided in its May 21, 2009 Order that the Monitor would conduct many of

20     the tasks appropriated to the Special Master by the Injunction Order.  However, the Court failed

21     to designate Mr. Fraioli as Special Master.

22              Mattel's argument, that Mr. Fraioli is Special Master by virtue of the terms of the May

23     21, 2009 Order is untenable.  The plain language of the May 21 Order makes no reference to

24     Federal Rule of Civil Procedure 53(b), which provides for the appointment of a Special Master.

25     Nor does the May 21 Order permit the Monitor to exercise adjudicative or interpretive powers as

26     to the terms of the Injunction Order.  The Court recognizes the parties' confusion about the

27     Monitor's role, authority, and relevance.  The Court is also sympathetic to the impact of such

28     confusion upon the MGA Defendants' ability to faithfully comply with the Injunction Order as

1   well as Mattel's obvious interest in MGA's compliance and the transparent application of the

2   Injunction Order.

3            Moreover, burdening the Monitor with adjudicative and interpretative obligations may

4   interfere with the Monitor's ability to perform his more natural duties of monitoring and

5   reporting.  Such an outcome threatens to cut the Court out of the process of tracking the progress

6   of the parties in complying with the terms of the Court's prior Order, a delegation of authority

7   that the Court considers imprudent.  Accordingly, and in light of the parties' oral argument at the

8   hearing on this Motion, the Court hereby AMENDS only Paragraphs 10 and 11 of the Injunction

9   Order as follows:

10           10.   Pursuant to Federal Rule of Civil Procedure 53, the Court

11                 may appoint a special master to supervise implementation of

12                 the requirements of this Order (the "Special Master").  Absent

13                 the appointment of a Special Master, Paragraphs 12 and 13 of

14                 this Order will remain inapplicable.

15           11.   Any and all disputes arising out of this Order and/or motions

16                 or applications seeking to enforce the terms of this Order shall

17                 be submitted to the Court in the first instance in accordance

18                 with ordinary filing procedures, including any and all

19                 applicable Local Rules.  The Court may conduct any

20                 inspection or investigation necessary to resolve such motions

21                 or applications and may issue any relief it considers necessary

22                 to enforce the terms of this Order.  Should the Court appoint a

23                 Special Master pursuant to Paragraph 10 of this Order, the

24                 Court shall, at its discretion, refer any motions or applications

25                 to the Special Master for his or her adjudication.  If appointed,

26                 the Special Master shall have the authority to set the time,

27                 place and manner of hearings and other proceedings he or she

28                 will conduct; to preside over hearings, whether telephonic or

1      in person; to take evidence in connection with disputes before

2      the Special Master, to make inspections of Defendants'

3      facilities and warehouses; to issue orders resolving motions,

4      applications and matters arising out of this Order and/or

5      seeking to enforce the terms of this Order; to issue orders

6      awarding non-contempt sanctions, including, without

7      limitation, the award of attorney's fees; and to issue reports

8      and recommendations on matters for which the Special

9      Master lacks jurisdiction to issue an order, including, without

10      limitation, reports and recommendations regarding contempt

11      sanctions.  In addition to any other filing procedures the

12      Special Master may permit, the Special Master shall permit

13      the filing of *ex parte* application for relief pursuant to this

14      provision only upon certifying, as an officer of the Court, that

15      such expedited adjudication is required and could not be

16      avoided in due course.  Third parties shall be bound by the

17      Special Master's orders to the same extent as Orders of this

18      Court.

19      Section V.B. of this Court's May 21, 2009 Order, which concerns the "Appointment of

20  MGA Monitor," remains in effect with the following amendments:

21      1(d).   The Monitor shall monitor compliance by the parties with this

22      Court's Injunction and other Orders as directed by the Court,

23      specifically this Court's December 3, 2008, Order Granting

24      Mattel, Inc.'s Motion for Permanent injunction, January 7,

25      2009, Order re Modification and Stay of Permanent

26      Injunction Order, April 27, 2009, Omnibus Order (the

27      "Injunction Order"), November 16, 2009, Order Denying

28      Motion to Vacate Recall Provisions of Injunction Order, and

all other Orders that so construe the terms of the Injunction Order.

1(j).   The Monitor shall file bi-weekly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations.  Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  The Monitor may report orally to the Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel.

As these amendments are intended to make clear, the Monitor shall no longer interpret the terms of the Injunction Order or adjudicate the MGA Defendants' compliance with the terms of the Injunction Order.  The Court shall hear any and all disputes with regard to the MGA Defendants' compliance and shall treat the Monitor's bi-weekly reports as relevant to, but not dispositive of, such disputes.

**III.   Disposition**

For the foregoing reasons, the Court DENIES the MGA Defendants' Motion to Vacate and GRANTS in part and DENIES in part the MGA Defendants' Motion to Clarify.

IT IS SO ORDERED.

DATED: November 16, 2009

_David O. Carter_

_____
DAVID O. CARTER
United States District Judge