QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>Hon. David O. Carter<br><br>[AMENDED PER COURT ORDER] MATTEL, INC.'S OPPOSITION TO THE MGA DEFENDANTS' MOTION FOR TRIAL SETTING CONFERENCE AND FOR ORDER REQUIRING MATTEL TO FILE A RICO CASE STATEMENT<br><br>[Declaration of Joseph Sarles submitted concurrently]<br><br>Hearing Date:  November 30, 2009<br>Time:          8:30 a.m.<br>Place:         Courtroom 9D<br><br>**Phase 2:**<br>Discovery Cut-off:      TBD<br>Pre-trial Conference:   TBD<br>Trial Date:             TBD |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND ......................................................................................2

    A.    The MGA Criminal Enterprise.............................................3

    B.    The Bratz Criminal Enterprise ............................................4

    C.    The IGWT Criminal Enterprise...........................................5

    D.    The Counter-Defendants Are Linked to Predicate Acts.......................6

    E.    Mattel's RICO Injuries Are Properly Alleged.........................6

    F.    Mattel Has Provided Extensive Discovery On Its RICO Claims ..........7

    G.    MGA Has Stonewalled Discovery Critical to Mattel's RICO Claims.........................................................................8

ARGUMENT........................................................................................14

I.    A RICO CASE STATEMENT CANNOT BE USED TO ALTER PLEADING STANDARDS...............................................................14

    A.    The Ninth Circuit Has Expressed Disapproval Of RICO Case Statements As Pleading Devices .......................................14

    B.    MGA Has Waived Any Challenges To The Sufficiency Of Mattel's Operative Counterclaims.......................................16

II.    A RICO CASE STATEMENT IS PREMATURE.......................................18

III.    MGA'S MOTION FOR A TRIAL SETTING CONFERENCE IS MOOT .......................................................................................20

CONCLUSION ....................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4   <u>American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.</u>,
      135 F. Supp. 2d 1031 (N.D. Cal. 2001) ..........................................21

5

6   <u>BMC-The Benchmark Management Co. v. Ceebraid-Signal Corp.</u>,
      2006 WL 2189706 (N.D. Ga. Aug. 1, 2006) ......................................21

7   <u>Banks v. Gail</u>,
      2008 WL 4661705 (C.D. Cal. 2008) ................................................18

8

9   <u>Barsekian v. First Am. Loanstar Trustee Servs.</u>,
      2009 WL 56893 (C.D. Cal. Jan. 6, 2009) ....................................17, 18

10  <u>Beery v. Hitachi Home Electronics (Am.), Inc.</u>,
      157 F.R.D. 477 (C.D. Cal. 1993) ....................................................18

11

12  <u>Bryant v. Mattel, Inc.</u>,
      573 F. Supp. 2d 1254 (C.D. Cal. 2007) ......................... 1, 3, 7, 17, 18

13

14  <u>Cabrera v. Cordis Corp.</u>,
      134 F.3d 1418 (9th Cir. 1998)........................................................21

15  <u>Claar v. Burlington Northern R. Co.</u>,
      29 F.3d 499 (9th Cir. 1994)............................................................21

16

17  <u>Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.</u>,
      271 F.3d 374 (2d Cir. 2001)...........................................................16

18

19  <u>Figueroa Ruiz v. Alegria</u>,
      896 F.2d 645 (1st Cir. 1990) ..........................................................18

20  <u>HMBI, Inc. v. Schwartz</u>,
      2009 WL 3390865 (N.D. Ind. 2009) ...............................................19

21

22  <u>Lyman Steel Co. v. Shearson Lehman Bros., Inc.</u>,
      1986 U.S. Dist. LEXIS 29346 (N.D. Ohio Feb. 13, 1986)................16

23  <u>Marriot Bros. v. Gage</u>,
      911 F.2d 1105 (5th Cir. 1990).....................................................18, 19

24

25  <u>Mendoza v. Zirkle Fruit Co.</u>,
      2000 WL 33225470 (E.D. Wash. Sept. 27, 2000),
      <u>overruled on other grounds</u>, 301 F.3d 1163 (9th Cir. 2002)...............16

26

27  <u>New Haven Temple SDA Church v. Consolidated Edison Corp.</u>,
      1995 WL 358788 (S.D.N.Y. June 13, 1995) ....................................20

28

<u>Northland Ins. Co. v. Shell Oil Co.</u>,
930 F. Supp. 1069 (D. N.J. 1996)..................................................................18

<u>Prakash v. Pulsent Corp. Employee Long Term Disability Plan</u>,
2008 WL 3905445 (N.D. Cal. Aug. 20, 2008) ...................................................19

<u>Sanderson v. International Flavors and Fragrances, Inc.</u>,
950 F. Supp. 981 (C.D. Cal. 1996)..................................................................21

<u>Stewart v. Wachowski</u>,
2005 WL 6186374 (C.D. Cal. June 14, 2005) ...................................................16

<u>United Nat'l Records, Inc. v. MCA, Inc.</u>,
6090 F. Supp. 33 (N.D. Ill. 1984)....................................................................19

<u>United States v. Tenet Healthcare Corp.</u>,
481 F. Supp. 2d 689 (W.D. Tex. 2007) ............................................................19

<u>Wagh v. Metris Direct, Inc.</u>,
348 F.2d 1102 (9th Cir. 2003).......................................... 15, 16, 17, 18, 19

<u>Wolfe v. O'Neill</u>,
336 F. Supp. 1255 (D. Alaska 1972) ...............................................................21

<u>Ziemack v. Centel Corp.</u>,
1995 WL 729295 (N.D. Ill. Dec. 7, 1995)........................................................20

## <u>Statutes</u>

17 U.S.C. § 506(a)(1)(A) ...................................................................3, 4, 5, 6

18 U.S.C. § 152(7)..........................................................................................5

18 U.S.C. § 1341 ..............................................................................3, 4, 5, 6

18 U.S.C. § 1343 ..............................................................................3, 4, 5, 6

18 U.S.C. § 1503 ................................................................................3, 4, 6

18 U.S.C. § 1512 ................................................................................3, 4, 6

18 U.S.C. § 1952 ..............................................................................3, 4, 5, 6

18 U.S.C. § 1956 ............................................................................................5

18 U.S.C. § 1957 ............................................................................................5

18 U.S.C. § 2319(a) ..........................................................................3, 4, 5, 6

<u>Fed. R. Civ. Proc.</u> 8(a) ...............................................................................1, 16

<u>Fed. R. Civ. Proc.</u> 9(b) .......................................................................1, 16, 19

MATTEL'S OPP. TO MGA'S MOTION FOR TRIAL SETTING CONFERENCE AND RICO CASE STATEMENT

1  Fed. R. Civ. Proc. 12(b)(1)........................................................................19

2  Fed. R. Civ. Proc. 12(h)(1)........................................................................19

3  Fed. R. Civ. Proc. 16...............................................................................21

4

## __Other Authorities__

5

6  2A Moore, et al., Moore's Federal Practice ¶ 9.03 (2d ed. 1984) ...........................19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Preliminary Statement**

MGA's request for a RICO case statement is premature at best and contrary to Ninth Circuit law at worst.  It should be denied.

To the extent MGA seeks to require the statement as a part of or addition to Mattel's pleading, as some courts have done, the request should be denied altogether. The Ninth Circuit has specifically ruled that RICO case statements cannot be used to alter the pleading requirements of Rules 8(a) and 9(b).  Moreover, MGA's earlier choice not to move to dismiss or for a more definite statement waived any pleading challenges to Mattel's Third Amended Answer and Counterclaims ("TAAC").  In fact, this Court has already upheld the pleading of Mattel's RICO allegations, rejecting MGA's motion to dismiss them in a published decision[1] and noting again this year that Mattel's RICO allegations are "successfully pleaded."[2]  To the extent MGA seeks to now require a RICO case statement as a pleadings requirement, there is no basis for the request.

To the extent MGA seeks to use the RICO case statement as a quasi-interrogatory response to frame the issues for summary judgment, the request is at best premature and in Mattel's view unnecessary.  Mattel has already provided interrogatory responses explaining the bases for its claims based on the evidence revealed to date. Mattel has responded to interrogatories seeking the facts supporting *all* of Mattel's Counterclaims and the harms Mattel has suffered as a result of MGA's RICO violations, and Mattel's substantive responses span hundreds of pages.[3]  But much discovery remains to be provided by MGA; as the Court is aware, Mattel is endeavoring to obtain discovery into further particulars of the facts relevant to its RICO claims.  Critical evidence has not yet been produced.  This includes:

- • MGA's 30(b)(6) testimony on trade secrets and other RICO issues;
- • the testimony of MGA employees who are named racketeers;

---

[1] See Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254, 1260-70 (C.D. Cal. 2007).
[2] See May 21, 2009 Order at 6, Dkt. No. 5565.
[3] See infra, notes 5, 7, and 8.

- documents Mattel has long been seeking which demonstrate Larian's perjury at the Phase 1 trial and which may themselves constitute predicate acts relevant to obstruction of justice, as alleged by Mattel;

- documents the Court appointed Forensic Auditor discovered on MGA's systems more than six months ago which *still* have not been produced. Defendants' position, all along, was that Larian had no involvement in the purported Wachovia debt acquisition by Omni 808. In fact, Omni's counsel expressly represented this to the Court, while MGA stood by silent: "What documents do we have that show that either Mr. Larian or MGA paid money into this to purchase this debt? I can tell you there are none."[4] MGA documents discovered by the Forensic Auditor prove the falsity of these representations, yet MGA continues to withhold them.

- even basic information relating to the financial transactions at issue -- such as core agreements and other evidence showing from where the monies emanated;

- interrogatory responses on basic issues, such as Larian's financial connections to the relevant transactions, some of which were compelled months ago but which still have not been answered;

- discovery relating to the 2002 Larian-O'Connor email in which Larian "thanked" and commended an MGA executive for suggesting that he lie about when Carter Bryant created Bratz. Although there are no lawyers on this email, it was listed on MGA's privilege logs and "certified" by MGA to be privileged upon Mattel's challenge during Phase 1. Judge Larson found that the Phase 1 jury findings may well have been affected by the wrongful withholding of this critical evidence.

Mattel has done what it can at this juncture – it has disclosed facts it is aware of that support its claims. To require it to do more than that would be unwarranted. Mattel does not believe a RICO case statement should be required at all, but if one is to be required it should be ordered submitted only after Mattel has had an opportunity to take meaningful discovery on its RICO claims.

## Background

MGA's complaints about the lack of clarity and specificity in Mattel's pleading are overstated. The TAAC identifies and defines three RICO enterprises: the MGA Criminal Enterprise (¶ 134), the Bratz Criminal Enterprise (¶ 135), and the IGWT Criminal Enterprise (¶ 136). The members of each enterprise are clearly set forth. ¶¶ 134, 135, and 136. The predicate acts that Mattel alleges were committed by

---

[4]  March 4, 2009 Hearing Tr. at 51:3-8; see also February 11, 2009 Hearing Tr. at 71:16 to 72:5 ("THE COURT: Those investors and that money did not come from MGA? MR. GORDINIER: That's the best of my understanding, Your Honor. That's true.").

each enterprise are clearly identified.  ¶¶ 137 and 138.  The purpose of each enterprise is listed as well.  Id.[5]  In addition, the TAAC identifies which individual Counter-defendants are specifically alleged to have committed which predicate acts.  ¶ 141.

### A.   The MGA Criminal Enterprise

As pleaded in the TAAC, the MGA Criminal Enterprise employs or is associated-in-fact with MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Isaac Larian, Jorge Castilla, Ron Brawer, Carter Bryant, Carlos Gustavo Machado Gomez ("Machado"), Mariana Trueba Almada ("Trueba"), Pablo Vargas San Jose ("Vargas"), and Janine Brisbois, as well as certain of the Doe Counter-defendants.  See ¶ 134.  The MGA Criminal Enterprise is linked to the following predicate acts: mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), influencing or injuring officer or juror generally (18 U.S.C. § 1503), tampering with a witness, victim, or informant (18 U.S.C. § 1512), interstate and foreign travel to aid racketeering (18 U.S.C. § 1952), and criminal copyright infringement (18 U.S.C. § 2319(a) and (17 U.S.C. § 506(a)(1)(A)).  ¶ 137.

The MGA Criminal Enterprise's alleged predicate acts are detailed both in the TAAC and in Mattel's interrogatory responses.[6]  Many of the predicate acts have been physically attached to the pleading, pursuant to the Court's instructions, to detail the senders, recipients and dates of the communications.[7]  The predicate acts involve a

---

[5] Mattel intends to clarify these purpose descriptions in its amended pleading, and has already provided MGA with a preliminary, non-final version of the amendment showing that clarification.

[6]   See, e.g., Mattel's Second Supplemental Response to MGA's First Set of Interrogatories, dated May 23, 2008, Interrogatory No. 1; Corrected Supplemental Objections and Responses of Mattel, Inc. to MGA Entertainment, Inc.'s First Set of Phase 2 Interrogatories, dated October 9, 2009, Interrogatory Nos. 4, 5, 9, 10, and 11; Mattel's Second Supplemental Objections and Responses to Interrogatory Nos. 20-23 and 28 in MGA Entertainment, Inc.'s Second Set of Interrogatories, dated September 14, 2009, Interrogatory Nos. 22 and 28; Mattel's Second Supplemental Objections and Responses to MGA Entertainment, Inc.'s Second Set of Interrogatories, dated July 7, 2009, Interrogatory No. 29.

[7]   See TAAC Exhibits, Dkt No. 5607; Bryant v. Mattel, 573 F. Supp. 2d at 1264 (requiring that Mattel detail attach instances of alleged mail and wire fraud to its pleading to satisfy Rule 9(b)).

1   pattern of racketeering for the purpose of defrauding Mattel and stealing Mattel's trade

2   secrets and proprietary information in the United States, Mexico, and Canada,

3   infringing Mattel's rights, and concealing the misconduct by means of tortious,

4   fraudulent, and criminal conduct.  ¶ 137.  The facts relating to this pattern of

5   racketeering and the thefts of trade secrets are detailed in Mattel's pleading, which is

6   lengthy precisely because it provides so much information.  ¶¶ 44-94.

7        **B.**   **The Bratz Criminal Enterprise**

8        As pleaded in the TAAC, the Bratz Criminal Enterprise employs or is

9   associated-in-fact with MGA, MGA Entertainment (HK) Limited, Larian and Bryant,

10   as well as certain of the Doe Counter-defendants.   ¶ 135.  The Bratz Criminal

11   Enterprise is linked to the following predicate acts: mail fraud, wire fraud, influencing

12   or injuring officer or juror generally, tampering with a witness, victim, or informant,

13   interstate and foreign travel to aid racketeering, and criminal copyright infringement. ¶

14   137.

15        The Bratz Criminal Enterprise's alleged predicate acts are detailed both in

16   the TAAC and in interrogatory responses.[8]  They involve a pattern of racketeering for

17   the purpose of "executing and attempting to execute the scheme to improperly defraud

18   Mattel and steal its trade secret or otherwise confidential and proprietary information

19   and infringe Mattel's rights and conceal such misconduct."  ¶ 137.  They include

20   allegations that Bratz Criminal Enterprise members:

21       •   willfully infringed Mattel's copyrights in Bratz works (¶ 141(i));

22       •   submitted false information in sworn applications to the U.S. Copyright Office and the U.S. Patent Office (¶ 141(d)(i));

23       •   gave knowingly false testimony during the Phase 1 trial (¶ 141 (d)(ii));

24       •   tampered with evidence by altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from Mattel's offices (¶ 141(c)(i));

25

26       •   altered numerous original drawings created by Bryant by back-dating the drawings (¶ 141(c)(ii));

27   _____

28   [8]   See supra note 6.

1      •    destroyed electronic and other evidence, including by destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives and evidence in possession of Farhad Larian (¶ 141(c)(iii)); and

2

3      •    altered tax records and other business documents, including by use of false names and false social security numbers, to conceal the bribery of Mattel employees (¶ 141(c)(iv)).

4

5  **C.   The IGWT Criminal Enterprise**

6          As pleaded in the TAAC, the IGWT Criminal Enterprise employs or is

7  associated-in-fact with MGA, MGA Entertainment (HK) Limited, Larian, IGWT

8  Group, IGWT 826 Investments, Lexington Financial Limited, Omni 808, Vision

9  Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Larian

10  Makabi, Angela Larian, The Makabi Living Trust, The Larian Living Trust, The

11  Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust,

12  The Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified

13  Annuity Trust, and certain of the Doe Counter-defendants. ¶ 136. The IGWT Criminal

14  Enterprise is linked to the following predicate acts: mail fraud, wire fraud, interstate

15  and foreign travel to aid racketeering, concealment of assets, money laundering, use of

16  unlawful funds, and criminal copyright infringement. ¶ 138.

17          The IGWT Criminal Enterprise's alleged predicate acts are detailed both in

18  the TAAC and in interrogatory responses.[9] They involve a pattern of racketeering for

19  the purpose of infringing Mattel's rights and transferring, transporting or laundering the

20  ill-gotten gains from their infringements and the MGA and Bratz Criminal Enterprises'

21  thefts and infringements, and secreting MGA assets and purportedly obtaining priority

22  over Mattel by means of tortious, fraudulent, and criminal conduct. ¶ 138.

23          Mattel alleges that MGA and Larian have engaged in a complex scheme to

24  transfer, launder or otherwise hide the ill-gotten funds they have obtained by virtue of

25  their unlawful conduct and have gone to extensive lengths to cover up and obscure such

26  activities. ¶ 105. The racketeers employed by and associated-in-fact with the IGWT

27  _____

28  [9]  See supra note 6.

1   Criminal Enterprise have funded further wrongdoing by MGA and Larian, including
2   the purported purchase, at a substantial discount, of the note held by MGA's then-
3   largest creditor, Wachovia.   ¶ 107.   By this scheme, Larian and his co-conspirators
4   sought to disguise their identities and to obtain purported priority as an alleged secured
5   creditor (rather than as a shareholder) over Mattel's claims against MGA's assets.   Id.
6   MGA and Larian conducted and participated in this scheme with the purpose of
7   concealing and manipulating their assets and liabilities and the appearance of their
8   financial condition in anticipation of their liability to Mattel, and for the purpose of
9   minimizing any exposure due to that liability.   Id.

10         **D.      The Counter-Defendants Are Linked to Predicate Acts**

11              MGA's contention that the Counter-defendants are not linked to predicate
12   acts is not correct.   Mattel specifically links each of the Counter-defendants to predicate
13   acts.   See ¶ 141 (a)-(i).   MGA, MGA Entertainment (HK) Limited, and Larian are
14   linked to all nine predicate acts.   MGA de Mexico, Machado, and Bryant are linked to
15   mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), tampering with a witness
16   victim, or informant (18 U.S.C. § 1512), influencing or injuring officer or juror
17   generally (18 U.S.C. § 1503), interstate and foreign travel in aid of racketeering
18   enterprises (18 U.S.C. § 1952), and criminal copyright infringement (18 U.S.C. §
19   2319(a) and 17 U.S.C. § 506(a)(1)(A)).   Mattel also clearly identifies predicate acts at
20   issue in its pleading, both in those paragraphs and in the attached exhibits which detail
21   mail and wire fraud communications.[10]

22         **E.      Mattel's RICO Injuries Are Properly Alleged**

23              Contrary to MGA's contentions, Mattel identifies the nature of its injuries
24   suffered through the Counter-defendants' RICO activities.   These include specific
25   allegations of injury to Mattel, not just benefit to MGA, such as ¶ 41 ("Counter-
26   defendants' continued use, sale, distribution and licensing of Bratz thus infringes upon

27   _____
28   [10]   TAAC ¶ 141 and Exhibits thereto, Dkt No. 5607.

1   Mattel's rights" and "injures Mattel"), ¶ 98 ("the misappropriated confidential and
2   proprietary information taken from Mattel is being disclosed to and used … to the
3   detriment of Mattel"), and ¶ 122 ("These transactions have had the effect of … further
4   infringing Mattel's intellectual property").  As the Court has recognized, "[d]amages
5   easily flow from theft of trade secrets and confidential information committed by a
6   direct competitor and from infringement of copyrights that are alleged to have been
7   used to make millions – if not billions – of dollars."[11]

8        MGA argues that Mattel cannot be injured by obstruction of justice and
9   perjury because Mattel "prevailed" in Phase 1, but this Court previously rejected that
10  exact argument.  In granting Mattel leave to file the TAAC, this Court did not credit
11  MGA's argument that there can be no injury from its and Larian's perjury because
12  "Mattel prevailed in Phase 1A."  First, "Mattel need not prove that each and every
13  predicate act itself caused harm."[12]   Moreover, MGA's flat claim that Mattel
14  "prevailed" in Phase 1 ignores that the jury did not find that MGA's infringement was
15  willful – a verdict that Judge Larson expressly found very well may have been affected
16  had MGA not wrongfully suppressed a document on its privilege log.[13]

17        **F.    Mattel Has Provided Extensive Discovery On Its RICO Claims**

18        As this Court has already held in granting Mattel leave to file the TAAC, a
19  "successfully pleaded RICO claim" often involves "a multitude of seemingly unrelated
20  acts," but "[t]he details are filled in by discovery."[14]  Here, while the facts continue to
21  be investigated, known details have already been supplied at great length.  Mattel has
22  responded to dozens of interrogatories seeking the bases for its claims.

23        For example, MGA's first three interrogatories in this case asked Mattel to
24  "state all facts, with particularity, and IDENTIFY ALL DOCUMENTS" that support
25  Mattel's contentions in this case, identify all persons with knowledge of those facts, and

---

[11]  Bryant v. Mattel, 573 F. Supp. 2d at 1269,
[12]  May 21, 2009 Order at 5, Dkt. No. 5565.
[13]  See Sealed In Chambers September 22, 2009 Hearing Tr. at 8:17-9:2.

"[s]tate, with particularity, the nature, amount, cause and calculation of every item of [Mattel's] alleged damages" in this case.   Mattel's responses to those three interrogatories span over 250 pages.  Mattel has also responded at length to MGA's Interrogatory No. 28, which asked Mattel to "describe in detail the complete factual basis for YOUR COUNTERCLAIMS."  MGA ignores in its Motion that Mattel has responded at length to multiple MGA interrogatories seeking information concerning Mattel's spoliation claims, which are directly relevant to the obstruction of justice predicate acts.[15]  MGA also claims that Mattel has "refused" to answer interrogatories concerning its RICO claims, but admits in a footnote that Mattel has responded to a sweeping interrogatory asking it to "IDENTIFY ANY damages . . . suffered as a result of" MGA's RICO violations.[16]   Despite MGA's complaints, it is no surprise that Mattel's response to a RICO damages interrogatory is "preliminary" at this stage, subject to ongoing fact discovery and forthcoming expert discovery.  In fact, the Discovery Master specifically ruled that Mattel need only provide a preliminary response now, subject to being supplemented based on further fact and expert discovery.[17]

### G.   MGA Has Stonewalled Discovery Critical to Mattel's RICO Claims

Meanwhile, MGA has habitually refused discovery in this case and continues to do so.  Numerous examples illustrate MGA's and related parties' stonewalling, and its impact on the state of Mattel's knowledge in this case:

- o   Until September 16, **2009**, MGA Mexico had not produced a single document even though it is a named defendant and figures centrally in Mattel's Phase 2 claims.[18]

---

[14]   May 21, 2009 Order at 5, 6, Dkt. No. 5565.
[15]   See Supplemental Objections and Responses of Mattel, Inc. to MGA Entertainment, Inc.'s First Set of Phase 2 Interrogatories, dated October 9, 2009, Interrogatory Nos. 9, 10, and 11.
[16]   See Parker Decl. Ex. H.
[17]   Discovery Master Order No. 56, dated September 3, 2009, at 50-51, Dkt. No. 6591.
[18]   See Mattel, Inc.'s Notice of Motion and Motion to Compel Production of Documents (footnote continued)

o   MGA Canada and Janine Brisbois have yet to produce documents or appear for deposition, even though Mattel first moved prior to the Phase 1 trial for a Letter of Request for the depositions and document production of each.[19]

o   Mattel noticed the depositions of Pablo Vargas and Mariana Trueba in January 2009, on the day after a year-long stay on discovery was lifted. MGA Mexico refused to produce these witnesses, even though they were employed by MGA Mexico and MGA was paying their attorneys fees.[20]

o   On January 9, 2008, Mattel served Notices of Deposition on MGA and MGA Mexico.[21]   MGA has refused to produce witnesses on Topic Nos. 1-14, 16-18, 20-32, 33, 35-47, 48-77, 79-81, 83, 85, 86, 88, and 96-101 of the Notice.   Topics 33, 35-47, 83, 85, 86, 88 and 96-101 directly relate to Mattel's RICO claims, including at least obstruction of justice, mail fraud, wire fraud, and criminal copyright infringement.  Many others relate to the trade secret thefts, which are relevant to Mattel's RICO claims.

o   Prior to Phase 1, MGA would not produce a 30(b)(6) witness for MGA Canada, claiming it did not have to produce 30(b)(6) witnesses for foreign subsidiaries.  Now, in connection with Mattel's Letter of Request, MGA has claimed that Mattel should not be allowed to depose MGA Canada 30(b)(6) witnesses because they could have obtained the testimony in the U.S.

o   On August 21, 2009, MGA produced for the first time an email chain between Larian and MGA executive Victoria O'Connor which MGA listed on a privilege log prior to the Phase 1 trial.  The chain begins with Larian

---

and Things in Response to Mattel, Inc.'s First Set of Requests for Documents and Things to MGAE de Mexico, S.R.L. de C.V., dated July 15, 2009, at 1, Dkt. No. 5971.

[19]   MGA's Preliminary Response to Mattel's Motion for Letters of Request, dated February 15, 2008, Dkt. No. 2231.

[20]   See Phase 2 Discovery Master Order No. 52, dated August 26, 2009, at 35 (granting Mattel's Motion for Issuance of Letters of Request for Vargas and Trueba), Dkt. No. 6437.

[21]   See Mattel, Inc.'s Fourth Notice of Deposition of MGA Entertainment, Inc., dated Jan. 1, 2008; Mattel, Inc.'s Notice of Deposition of MGAE De Mexico, S.R.L. DE CV.

forwarding to O'Connor his statement to a reporter that Bratz was "Born on September 2000," which was a time when Carter Bryant was still employed by Mattel.  In the previously unproduced portion of the email, O'Connor responded, "*don't you think we should say Bratz was born in October when a certain person was no longer with their company?*" to which Larian responded, "good point.  Thanks."[22]  The Court has recognized that this email should have been produced in Phase 1.  It was withheld only based on representations made by MGA's counsel in open Court to Judge Larson that this document and others were entirely privileged.[23]  Then, when Mattel renewed its challenges to MGA's logs earlier this year, MGA again sought to avoid producing this document, claiming MGA's counsel's prior "certifications" as to the privileged nature of the documents on its logs controlled.[24]  Even in the face of a Discovery Master Order compelling responses, MGA continues to resist discovery into this document.[25]

o MGA also continues to avoid review of additional documents related to crime-fraud issues.[26]  Mattel has alleged that Larian committed perjury during the Phase 1 trial when he testified that MGA investigated and believed that Carter Bryant created Bratz in 1998, when he was not employed by Mattel.[27]  After Mattel raised the issues in Phase 2,[28] the Discovery Master ruled that MGA had waived privilege as to

---

[22] See August 31, 2009 Order, Dkt. No. 6544.
[23] Mattel, Inc.'s Response Regarding the Court's August 31, 2009 Order to Show Cause, dated September 18, 2009 at 7-9, Dkt. No. 6812.
[24] Id. at 9-11.
[25] See Mattel, Inc.'s Motion for an Order Enforcing Discovery Master Order No. 66 and Compelling MGA and Larian to Respond to Requests for Admission, dated October 30, 2009, Dkt. No. 7094.
[26] Discovery Master Order No. 42, dated July 29, 2009, Dkt. No. 6098; MGA Parties' Motion for Reconsideration of Order No. 42, dated August 11, 2009, Dkt. No. 6272.
[27] See *Sealed In Chambers* August 15, 2009 Hearing Tr. at 7631:24-7632:20; 7643:25-7644:1.
[28] See Mattel's Motion To Compel Production of Documents In Furtherance Of Crimes And Frauds and For Which MGA Waived Privilege, dated March 13, 2009. Dkt. No. (footnote continued)

communications about the timing of the creation of Bratz, including by producing communications between MGA and their lawyers which they deem favorable and by Larian's touting of his lawyers' investigations into that issue at the Phase 1 trial.[29]   MGA refuses to produce these critical documents, which may themselves constitute predicate acts, and has avoided even *in camera* review of them to date based on an alleged jurisdictional paradox.  According to MGA, the Court lacks jurisdiction because crime-fraud and waiver issues are before the Ninth Circuit,[30] while the Ninth Circuit *also* lacks jurisdiction over such issues because they are not properly before it.[31]   Mattel asked the Ninth Circuit to remand the matter so this Court could resolve the crime-fraud and waiver issues,[32] but MGA opposed that request as well, claiming the Ninth Circuit did not have jurisdiction to clarify that the Court has jurisdiction.[33]   MGA also successfully persuaded the Discovery Master not to even review the documents *in camera* until these issues are resolved.[34]

o   MGA refused to allow any meaningful time to depose Larian and Ron Brawer regarding Mattel's Phase 2 claims -- despite the fact that both are critical witnesses who appear on hundreds of thousands of documents.

---

5035.

[29]   See Discovery Master Order No. 42, dated July 29, 2009, Dkt. No. 6098.

[30]   MGA Parties' Motion for Reconsideration of Order No. 42, dated August 11, 2009, Dkt. No. 6272; see also MGA Parties' Supplemental Memorandum in Support of Motion for Reconsideration, dated August 18, 2009, Dkt No. 6380.

[31]   See Opposition to Motion for Limited Remand of Cross-Appeal Under Crateo, Inc. v. Intermark, Inc. to Allow District Court to Rule on a Pending Motion, dated October 23, 2009, Case No. 09-55673, 09-55812, Dkt. No. 128.

[32]   See Mattel, Inc.'s Motion for Limited Remand of Cross-Appeal, Under Crateo, Inc. v. Intermark, Inc., to Allow District Court to Rule on a Pending Motion, dated October 13, 2009, Case No. 09-55673, 09-55812, Dkt. No. 125.

[33]   Id.

[34]   Discovery Master Order No. 48, dated August 14, 2009, Dkt. No. 6291.

o   MGA refuses to provide metadata from Larian's computer, even though Discovery Order No. 34 required MGA to produce Larian's hard drive for inspection and gave Mattel access to "any and all information" on it.[35]

o   In November 2007, Mattel sought production of metadata from MGA to prove that emails Mattel attached to its Counterclaims were sent across state and national borders as relevant to RICO.[36]   Pursuant to MGA's opposition,[37] the prior Discovery Master denied Mattel's motion with respect to all metadata MGA had not already collected.[38]

o   Discovery into the purportedly "arms-length" Wachovia debt purchase is at an early stage.  While MGA sat by silently, Omni 808 initially represented to Judge Larson and the Discovery Master that Isaac Larian had no involvement in the debt acquisition whatsoever: "MR. GORDINIER: What documents do we have that show that either Mr. Larian or MGA paid money into this to purchase this debt?  I can tell you there are none."[39] Later, after the Court-appointed Forensic Auditor concluded otherwise, this Court concluded that "[good] cause exists to believe that the MGA parties . . . have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets."[40]  Omni then publicly attacked the Court appointed Auditor as a "racist" and its counsel was reprimanded by the

---

[35]   Discovery Master Order No. 34, dated May 18, 2009, Dkt. No. 5510.
[36]   See Mattel, Inc.'s Motion to Compel Production of Metadata, dated November 21, 2007, Dkt No. 1138.
[37]   MGA's Opposition to Mattel, Inc.'s Motion to Compel Production of Metadata, dated November 30, 2009, at 5:13-25, 7:12-8:13, Dkt. No. 1167.
[38]   Order Regarding Mattel, Inc.'s Motion to Compel Production of Metadata, dated January 9, 2008, Dkt. No. 1506.
[39]   March 4, 2009 Hearing Tr. at 51:3-8.  See also February 11, 2009 Hearing Tr. at 71:16 to 72:5 ("THE COURT: Those investors and that money did not come from MGA?  MR. GORDINIER: That's the best of my understanding, Your Honor.  That's true.").

Court in a lengthy opinion.[41]  Although it has admitted to possessing them, MGA has refused to produce at least 46 of the documents on which the Court-appointed Forensic Auditor based his analysis and conclusions.[42]

o  Although Mattel first served subpoenas on Omni 808 Investors LLC, Omninet LLC, and Vision Capital LLC, all entities involved in the transaction, more than six months ago, each entity's Court-ordered production is woefully incomplete.  Vision Capital produced a total of 149 pages, featuring an outdated MGA sales presentation.  Supposedly Vision Capital got the money for the transaction from Lexington Financial, an offshore entity run by "Mr. Samhoui" and doing business in this District, but there is also not a single document, check, wire transfer, or email referencing any relationship between Vision and Lexington, much less a $10 million relationship.  The production also contains no reference, much less any supporting documents, evidencing the transfer of the $10 million allegedly provided by Vision Capital to fund the debt acquisition.

o  Two days after the Phase 2 stay was lifted, Mattel propounded Requests to both MGA and Larian seeking information related to the financial transactions that are the subject of Mattel's RICO claims.[43]  Even though MGA and Larian objected to each and every Request, and refused to produce any documents in response,[44] they nevertheless assisted Omni's

---

[40]  April 27, 2009 Order at 16, Dkt. No. 5273.
[41]  July 9, 2009 Order, Dkt. No. 5934.
[42]  On November 10, 2009, MGA produced one of these emails, from Larian to Leon Farahnik (a purported investor in Omni 808), in which Larian asks for money so Larian can pay back other purported Omni 808 investors.
[43]  See Mattel, Inc.'s First Set of Requests for Document and Things to Isaac Larian (Phase 2), dated January 8, 2009; Mattel, Inc.'s First Set of Requests for Document and Things to MGA Entertainment, Inc. (Phase 2), dated January 8, 2009.
[44]  See, e.g., Responses to Requests for Documents and Things to MGA Entertainment, Inc. (Phase 2), dated February 6, 2009, at Request Nos. 17 (documents relating to any transfer of items of value to IGWT Group, LLC); 27 (documents relating to agreements between MGA and Vision Capital); 28-30 (documents sufficient to identify owners of IGWT Parties and Omni).

1  stonewalling by representing to the Discovery Master in March that Mattel

2  could get all the documents relating to the financial transactions from them

3  instead of the Omni parties.[45]   Despite those representations, MGA and

4  Larian still have not produced a single page of such documents to date.

5  o   On March 4, 2009, Mattel served its First Set of Phase 2 Interrogatories on

6  Larian, asking Larian to identify any entity (1) in which he and Angela

7  Larian have an ownership interest; or (2) in which any trust he owns has an

8  ownership interest – basic information needed for net worth, to untangle

9  financial transactions alleged in the TAAC, and to conduct follow-up

10  discovery.  Mattel moved to compel long ago, and the Discovery Master

11  ordered Larian to answer those interrogatories.[46]   Rather than comply,

12  Larian filed objections, which are currently pending before the Court.[47]

13  **Argument**

14  **I.   A RICO CASE STATEMENT CANNOT BE USED TO ALTER**

15  **PLEADING STANDARDS**

16  **A.   The Ninth Circuit Has Expressed Disapproval Of RICO Case**

17  **Statements As Pleading Devices**

18  To the extent MGA seeks a RICO case statement as a pleading device, its

19  request is improper.  The Ninth Circuit has expressly disapproved of RICO case

20  statements as pleading devices.  In a footnote to its Motion, MGA cites Wagh v. Metris

21  Direct, Inc., 348 F.2d 1102 (9th Cir. 2003), as support for its assertion that other courts

22  have used RICO case statements.[48]   The version of Wagh to which MGA cites was

23  subsequently amended, at 363 F.3d 821 (9th Cir. 2003).  More importantly, MGA does

24  not disclose that in both versions of the decision the Ninth Circuit expressly

25

---

26  [45]   March 4, 2009 Hearing Tr. at 84:6-7.
   [46]   Phase 2 Discovery Master Order No. 46, dated August 14, 2009, Dkt No. 6407.
27  [47]   Larian's Objections to Discovery Master Order No. 46 Regarding Responses to Phase 2 Interrogatories, dated August 28, 2009, Dkt. No. 6476.
28  [48]   Motion at 17, n.12.

1   disapproves of the use of RICO case statements as pleading devices because they can

2   "require far more information from plaintiffs than is required under either Rule 8(a) or

3   9(b) of the Federal Rules."  See Wagh, 363 F.3d at 828.  The Court said this while

4   citing a RICO case statement form that is virtually identical to that proposed by MGA.

5   See Wagh, 363 F.3d at 827 (noting that the RICO case statement at issue was nearly

6   verbatim to that issued in Lyman Steel Co. v. Shearson Lehman Bros., Inc., 1986 U.S.

7   Dist. LEXIS 29346 (N.D. Ohio Feb. 13, 1986)); compare MGA's [Proposed] Order

8   with Lyman.[49]  Thus, under Ninth Circuit law, the use of the RICO case statement form

9   sought by MGA, at least as a pleading device, would be improper and in conflict with

10   the Federal Rules.[50]

11          In Wagh, 363 F.3d at 828, the Ninth Circuit approved of a "cautious"

12   approach adopted by the Second Circuit in Commercial Cleaning Servs., L.L.C. v.

13   Colin Serv. Sys., Inc., 271 F.3d 374, 385-86 (2d Cir. 2001).  That case held that when a

14   "Standing Order calls for information far in excess of the essential elements of a RICO

15   claim . . . it may not make the prosecution of the action dependent on the plaintiff's

16   ability to furnish more information than is required, as a matter of law, to prove the

17   essential elements of a claim."  That appears to be what MGA requests here.  MGA's

18   motion demands that Mattel's discovery and prosecution of this case be limited not by

19   its pleading, but by its ability – before it has had an opportunity to take, let alone

20   complete, significant discovery – to articulate every conceivably relevant fact and

21   theory.  Under Wagh, that is impermissible.  Indeed, the procedure set forth in

22   Barsekian v. First Am. Loanstar Trustee Servs., 2009 WL 56893 (C.D. Cal. Jan. 6,

23   _____

24   [49]   Lyman Steel Co. v. Shearson Lehman Bros., Inc., 1986 U.S. Dist. LEXIS 29346 (N.D. Ohio Feb. 13, 1986), Sarles Decl., Ex. 1.

25   [50]   See also Stewart v. Wachowski, 2005 WL 6186374, at *6 (C.D. Cal. June 14, 2005) (citing Wagh and refusing to consider "failure timely to file a RICO case statement" as a basis for dismissal of a complaint, including mail and wire fraud claims); Mendoza v.

26   Zirkle Fruit Co., 2000 WL 33225470, at *5 (E.D. Wash. Sept. 27, 2000) ("Plaintiffs raise a valid concern that a local rule which heightens the pleading standard may be

27   inconsistent with the spirit and intent of Rule 8 and its clear mandate of notice pleading"), overruled on other grounds, 301 F.3d 1163 (9th Cir. 2002).

28

1  2009), which MGA requests be implemented here,[51] directly conflicts with the Ninth

2  Circuit's decision in <u>Wagh</u>.  Specifically, <u>Barsekian</u> states that the RICO case statement

3  will be treated as part of plaintiff's pleading and failure to file it will result in dismissal

4  of plaintiff's RICO claim.   <u>See</u> <u>Barsekian</u>, 2009 WL at 56893, *2.   That is

5  impermissible under <u>Wagh</u>.

6  **B.    <u>MGA Has Waived Any Challenges To The Sufficiency Of Mattel's</u>**

7  **<u>Operative Counterclaims</u>**

8        MGA spends over 15 pages of its brief raising arguments about the

9  supposed insufficiency of Mattel's RICO allegations.  But MGA chose not challenge

10  the sufficiency of the TAAC's allegations when it had the chance.  MGA did not move

11  to dismiss and did not request a more definite statement; instead, after leave to file the

12  TAAC was granted, MGA simply answered the TAAC several months ago.[52]  Notably,

13  MGA also failed to move to dismiss or request a more definite statement as to Mattel's

14  SAAC, which was filed on *July 12, 2007*.  And this all came after MGA *did* move to

15  dismiss when Mattel first filed its Counterclaims, in early 2007 (after seeking leave to

16  file them in November 2006).[53]  MGA cites numerous cases in support of the notion

17  that RICO case statements are proper, but those cases imposed such a requirement prior

18  to defendants' answer or at the motion to dismiss stage.[54]  That stage has come and

19

20  [51]  Motion at 18:15-19.
    [52]  MGA Parties' Answer and Affirmative Defenses to Mattel, Inc.'s Third Amended
21  Answer and Counterclaims, dated June 29, 2009, Dkt. No. 5798.
    [53]  <u>See</u> <u>Bryant v. Mattel, Inc.</u>, 573 F. Supp. 2d 1254, 1260-70 (C.D. Cal. 2007); Notice
22  of Motion and Motion for Leave to File Amended Complaint, dated Nov. 20, 2006, Dkt.
    No. 89.
    [54]  <u>See</u> <u>Wagh</u>, 363 F.3d at 825 (considering a motion to dismiss); <u>Barsekian</u>, 2009 WL
23  56893, at *2 (granting motion to dismiss with leave to amend); <u>Banks v. Gail</u>, 2008 WL
    4661705, at *1 (C.D. Cal. 2008) (noting that Court had previously granted a motion to
24  dismiss, with leave for plaintiff to amend and file a RICO case statement); <u>Northland Ins.</u>
    <u>Co. v. Shell Oil Co.</u>, 930 F. Supp. 1069, 1070-71 (D. N.J. 1996) (noting that plaintiff's
25  allegations were extremely vague and that defendant had not yet answered); <u>Figueroa</u>
    <u>Ruiz v. Alegria</u>, 896 F.2d 645, 646-47 (1st Cir. 1990) (court granting motion to dismiss
26  with prejudice for failure to state a claim and improper service, as well as for failure to
    file RICO case statement in conjunction with amended complaint).  The one exception,
27  <u>Marriot Bros. v. Gage</u>, 911 F.2d 1105, 1107-08 (5th Cir. 1990), dealt with a RICO case
    statement ordered at the summary judgment stage.  However, the Ninth Circuit in <u>Wagh</u>
28  (footnote continued)

gone.  As the <u>Federal</u> <u>Rules</u> recognize, MGA cannot now claim to be confused or unable to understand RICO allegations to which it has already answered, and which this Court has expressly ruled are sufficient.

In 2007, this Court considered at great length and upheld the sufficiency of Mattel's RICO allegations, with the exception of the mail and wire fraud predicate acts, which the Court gave Mattel leave to amend (and which Mattel then pleaded with greater particularity).  <u>See</u> <u>Bryant v. Mattel, Inc.</u>, 573 F. Supp. 2d 1254, 1260-70 (C.D. Cal. 2007).  This Court ruled that "Mattel has sufficiently pleaded the existence of a RICO enterprise," and sufficiently alleged predicate acts of evidence tampering, Travel Act violations, criminal copyright violations, and RICO damages, including specifically from theft of trade secrets, flowing from those predicate acts.  The Court granted Mattel leave to amend its mail fraud and wire fraud predicate acts and, based on MGA's representations, expected the MGA parties to subsequently file "a motion to dismiss the [then-forthcoming] SAAC." <u>Id.</u> at 1266.  MGA never did so.  Nor did MGA challenge the sufficiency of the TAAC.  MGA apparently has understood these allegations for two and a half years; it cannot now argue that Mattel's allegations have become "deficient" or "lack clarity."  In any event, MGA has waived any arguments on this basis.  <u>See</u> <u>Beery v. Hitachi Home Electronics (Am.), Inc.</u>, 157 F.R.D. 477, 480 (C.D. Cal. 1993) (motion for more definite statement cannot be made after party files responsive pleading).

MGA also claims that a RICO case statement is necessary to require circumstances surrounding the TAAC's mail and wire fraud predicate acts "to be identified with particularity."[55]  The TAAC's fraud allegations already are stated with particularity.  In any event, MGA has waived its right to object on this ground as well. <u>Prakash v. Pulsent Corp. Employee Long Term Disability Plan</u>, 2008 WL 3905445, at *2 (N.D. Cal. Aug. 20, 2008) ("Plaintiffs waived their objections under 9(b)" because

_____

expressly addressed *and disapproved of* <u>Marriot Bros.</u>  <u>See</u> <u>Wagh</u>, 363 F.3d at 827-28.

1   they "did not assert this defense in a timely manner" and "Rule 12(h)(1) waiver
2   provisions apply to Rule 9(b) motion[s].") (citing United Nat'l Records, Inc. v. MCA,
3   Inc., 6090 F. Supp. 33, 39 (N.D. Ill. 1984).[56]

4   **II.    A RICO CASE STATEMENT IS PREMATURE**

5            Mattel has already provided MGA with extensive interrogatory responses
6   containing the information Mattel has learned to date.[57]  As the Court is aware, Mattel
7   intends to further amend its Counterclaims.  MGA acknowledges that "substantial
8   amendments"[58] may yet be made to Mattel's RICO claims, but nonetheless demands a
9   RICO case statement immediately.[59]  It would make no sense to require a RICO case
10  statement prior to a ruling on Mattel's Motion for leave to amend its Counterclaims,
11  which the Court has instructed should not be brought until Mattel has had a fair
12  opportunity to obtain the discovery necessary to perfect the details of the RICO claims.
13  As discussed above, Mattel is awaiting discovery from MGA on numerous issues
14  critical to its RICO claims.   MGA cannot insist that Mattel provide complete
15  information concerning its claims even as MGA continues to withhold from Mattel
16  material facts that are in MGA's exclusive possession.

17           In addition to the many outstanding fact discovery issues, several of the
18  topics in MGA's proposed RICO case statement call for information that will be the
19  subject of expert testimony.  Topic 9 asks for a description of the "benefits" MGA

20  _____

21  [55]   Motion at 19.
    [56]   see also United States v. Tenet Healthcare Corp., 481 F. Supp. 2d 689, 697 (W.D.
22  Tex. 2007) ("A party who fails to raise a Rule 9(b) objections normally waives the
    requirement.") (citing 2A Moore, et al., Moore's Federal Practice ¶ 9.03 (2d ed. 1984));
23  HMBI, Inc. v. Schwartz, 2009 WL 3390865, at *6 (N.D. Ind. 2009) ("A party who fails
    to raise a Rule 9(b) objection normally waives the requirement.  The time limitation . . .
24  is analogous to Rule 12(h)(1), regarding defenses under Rules 12(b)(1) through (5).")
    (internal citations omitted).
25  [57]   See supra, at 8.
    [58]   Motion at 16:3-6,
26  [59]   Motion at 15:27-28 (requesting pretrial conference "at the Court's earliest
    opportunity"); Amended [Proposed] Order Granting Motion for Trial Setting Conference
27  and for Order Requiring Mattel to File a RICO Case Statement, dated Nov. 12, 2009
    (proposing that Mattel file and serve RICO case statement 10 days prior to pretrial
28  conference).

1    received from its racketeering.  Topic 15 asks for a description of all alleged injuries,

2    and Topic 17 asks that each of Mattel's alleged damages be listed and linked to

3    individual defendants.  To the extent Mattel has not already answered these questions

4    through its interrogatory responses, further information will be obtained via expert

5    analysis.  Courts routinely recognize that many damages issues, including theories of

6    damages, cannot be determined until expert testimony is completed.[60]  The Discovery

7    Master has likewise already recognized this as to this very issue.[61]

8             Further, Topic 16 of MGA's proposed RICO case statement requires

9    Mattel to set forth "the direct causal relationship between" its alleged injuries and

10   MGA's RICO violations.  A causation analysis is an area suited for expert analysis.

11   See American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031,

12   1042 (N.D. Cal. 2001) ("only expert testimony can demonstrate that any injury to

13   plaintiffs was caused by defendants' unlawful conduct").[62]   Before Mattel can

14   determine and disclose precisely all the harm it has suffered as a result of MGA's

15   wrongdoing, the MGA Parties must stop stonewalling as to information essential to

16   define that wrongdoing.  In any case, expert analyses are not yet due.  Thus, even if a

17   RICO case statement were appropriate, it would be counterproductive to require one

18   until discovery progresses in a meaningful fashion and Mattel obtains the information

19   necessary.

20   _____

21   [60]  See New Haven Temple SDA Church v. Consolidated Edison Corp., 1995 WL
     358788, at *5 (S.D.N.Y. June 13, 1995) (sustaining objections to interrogatory because
22   "[t]o the extent that the theories of damages applicable to these claims may be related to
     the damages sought by plaintiff's fourth claim, the interrogatory is premature"); Ziemack
23   v. Centel Corp., 1995 WL 729295, at *2-3 (N.D. Ill. Dec. 7, 1995) (granting in part
     motion to compel but noting that "this Court does not expect Plaintiffs to address the
24   issues that will be more appropriately dealt with by experts, at a later date" and "[s]ince
     experts have not been either retained or deposed, much of the remaining discovery is also
25   premature.").
     [61]  Discovery Master Order No. 56, dated September 3, 2009, at 50-51, Dkt. No. 6591.
26   [62]  See also Cabrera v. Cordis Corp., 134 F.3d 1418, 1423 (9th Cir. 1998); Claar v.
     Burlington Northern R. Co., 29 F.3d 499, 504 (9th Cir. 1994) (expert testimony
27   necessary to establish causation required by FELA); Sanderson v. International Flavors
     and Fragrances, Inc., 950 F.Supp. 981, 985 (C.D. Cal. 1996) (expert testimony required
28   to establish causation in personal injury action).

III.   **MGA'S MOTION FOR A TRIAL SETTING CONFERENCE IS MOOT**

Since MGA filed its Motion requesting a <u>Rule</u> 16 pre-trial conference, the parties have discussed scheduling with the Court at length, and will continue to do so. To the extent MGA seeks a more formal <u>Rule</u> 16 conference where binding trial management decisions are made, Mattel submits that this too is premature.  Indeed, as many courts have recognized, a <u>Rule</u> 16 pre-trial conference should be held only *after* the close of discovery and briefing.  <u>See, e.g.</u>, <u>BMC-The Benchmark Management Co. v. Ceebraid-Signal Corp.</u>, 2006 WL 2189706, at *6 (N.D. Ga. Aug. 1, 2006) ("A Rule 16 conference is premature.  The issues to be litigated in this case will not be fully developed until the completion of discovery and summary judgment briefing."); <u>Wolfe v. O'Neill</u>, 336 F. Supp. 1255, 1264 (D. Alaska 1972) ("since discovery is not yet complete at this time, the Court finds to motion for pre-trial conference to be premature").

<b><u>Conclusion</u></b>

For the foregoing reasons, MGA's Motion should be denied in its entirety.

DATED:  November 17, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Michael T. Zeller
      Michael T. Zeller
      Attorneys for Mattel, Inc.