QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et. al.,<br><br>　　　　Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br><u>Hon. David O. Carter</u><br><br>**MATTEL, INC.'S RENEWED NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 60 REGARDING RFPS 75, 85, 95, 105, AND 115 OF MATTEL'S FIRST SET OF REQUESTS RE UNFAIR COMPETITION; AND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:　December 7, 2009<br>Time:　　　　8:30 a.m.<br>Place:　　　Courtroom 9D<br><br>**Phase 2**<br><br>Discovery Cut-off:　　TBD<br>Pre-trial Conference:　TBD<br>Trial Date:　　　　TBD |

00505.07975/3207979.2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 7, 2009, at 8:30 a.m. or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701-4516, or at such other place and time as the Court may direct, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an order granting Mattel's September 23, 2009 Motion Objecting to Portions of Discovery Master Order No. 60 Regarding RFP's 75, 85, 95, 105 and 115 of Mattel's First Set of Requests Re Unfair Competition ("Mattel's Motion").  Mattel's Motion was originally noticed for hearing on November 16, 2009 (Dkt. No. 6847).  This hearing date was vacated following the September 24, 2009 transfer of these consolidated actions to the docket of the Honorable David O. Carter.  Accordingly, Mattel is hereby re-noticing the motion for hearing.

This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u> 72(a) on the grounds that Discovery Master Order No. 60, to the extent it refused to require the production of witness fee agreements that the Court and the prior Discovery Master previously held were relevant and discoverable, was clearly erroneous and contrary to law.

This Motion is based on this Renewed Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

MATTEL'S RENEWED MOTION TO ENFORCE

1

**Statement of Rule 7-3 Compliance**

2          The parties conferred on the issues presented by this motion on July 17,

3   2009, July 20, 2009 and other dates thereafter.

4   DATED:  November 17, 2009          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES. LLP
5

6                                       By /s/ B. Dylan Proctor
7                                          B. Dylan Proctor
                                           Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ...................................................................... 1

BACKGROUND ........................................................................................ 2

ARGUMENT ............................................................................................ 8

I.   THE DISCOVERY MASTER'S ANALYSIS OF RELEVANCE WAS
     CLEARLY ERRONEOUS AND CONTRARY TO LAW ............................... 8

     A.   Payment of Legal Fees Is Relevant to the Substance of Mattel's
          Claims ...................................................................................... 8

     B.   Payments of Legal Fees, Including The Terms of Fee
          Arrangements, Are Critical to Bias and Credibility ..................... 11

II.  THE DISCOVERY MASTER'S ANALYSIS OF THE BURDEN ON
     MGA WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW ........... 12

III. THE ISSUES OF RELEVANCE AND BURDEN WERE SETTLED
     BY THE FIRST ORDER ...................................................................... 15

CONCLUSION ......................................................................................... 17

1

## TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

Atlantic Coast Insulating Co. v. United States,
  34 F.R.D. 450 (E.D.N.Y. 1964) ........................................................... 11

5

6

Bible v. Rio Props., Inc.,
  246 F.R.D. 614 (C.D. Cal. 2007) ......................................................... 13

7

Bryant v. Mattel, Inc.,
  573 F. Supp. 2d 1254 (C.D. Cal. 2007) ............................................... 11

8

9

Bryant v. Mattel, Inc.,
  2007 WL 5430887 (C.D. Cal. June 20, 2007) ..................................... 11

10

Calderon v. Presidio Valley Farmers Ass'n,
  863 F.2d 384 (5th Cir. 1989) ............................................................... 15

11

12

Calgene, Inc. v. Enzo Biochem, Inc.,
  1993 WL 645999 (E.D. Cal. August 27, 1993) ................................... 11

13

Diapulse Corp. of Am. v. Curtis Publ'g Co.,
  374 F.2d 442 (2d Cir. 1967) ................................................................ 15

14

15

Eidukonis v. Se. Penn. Transp. Authority,
  1987 WL 16321 (E.D. Pa. August 27, 1987) ................................. 15-16

16

17

El-Shaddai v. Wheeler,
  2009 WL 301824 (E.D. Cal. February 5, 2009) .................................. 13

18

GTE Products Corp. v. Gee,
  115 F.R.D. 67 (D. Mass. 1987) ........................................................... 11

19

20

In re Honda Am. Motor Co.,
  168 F.R.D. 535 (D. Md. 1996) ............................................................ 10

21

Horsewood v. Kids "R" Us,
  1998 WL 526589 (D. Kan. Aug. 13, 1998) ......................................... 13

22

23

Huber v. Marine Midland Bank,
  51 F.3d 5 (2d Cir. 1995) ...................................................................... 16

24

25

Jackson v. Montgomery Ward & Co., Inc.,
  173 F.R.D. 524 (D. Nev. 1997) ........................................................... 13

26

Marshall v. Rain,
  2008 WL 2186184 (S.D. Cal. May 23, 2008) ..................................... 13

27

28

N.L.R.B. v. Trailways, Inc.,
   729 F.2d 1013 (5th Cir. 1984) .................................................................. 19

Perez v. Consolidated Edison Corp. of New York,
   2008 WL 194615 (S.D.N.Y. January 23, 2008) ..................................... 11-12

Reed Paper Co. v. Proctor & Gamble Distrib. Co.,
   144 F.R.D. 2 (D. Me. 1992) ....................................................................... 10

Richmark Corp. v. Timber Falling Consultants,
   959 F.2d 1468 (9th Cir. 1992) .................................................................. 15

Rubin v. General Tire & Rubber Co.,
   18 F.R.D. 51 (S.D.N.Y. 1955) ................................................................... 10

Syfu v. Cooke,
   2003 WL 21938898 (C.D. Cal. 2003) ....................................................... 16

United States v. Afram Lines (USA), Ltd.,
   159 F.R.D. 408 (S.D.N.Y. 1994) ............................................................... 10

United States v. Ayres,
   166 F.3d 991 (9th Cir. 1999) .................................................................... 16

United States v. Castellano,
   610 F. Supp. 1151 (S.D.N.Y. 1985) ............................................................ 9

United States v. Cathcart,
   2009 WL 1764642 (N.D. Cal. 2009) ......................................................... 11

United States v. Pape,
   144 F.2d 778 (2d Cir. 1944) ....................................................................... 8

Whitehouse v. United States Dist. Court for Dist. of Rhode Island,
   53 F.3d 1349 (1st Cir. 1995) ....................................................................... 8

Young & Assocs. Pub. Relations, L.L.C. v. Delta Air Lines, Inc.,
   216 F.R.D. 521 (D. Utah 2003) ................................................................. 10

**Rules/Statutes**

Fed. R. Civ. P. 30(b)(6) .............................................................................. 10

Fed. R. Civ. P. 31(a)(4) .............................................................................. 10

Fed. R. Civ. P. 32 ........................................................................................ 10

Fed. R. Civ. P. 32(a)(3) .............................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA's payment of legal fees on behalf of witnesses in this case is relevant and discoverable.  Mattel has a right to know the terms and conditions of MGA's agreements to pay such fees.  The prior Discovery Master explicitly so held, requiring MGA to produce all documents evidencing payment of legal fees on behalf of Carter Bryant as well as all payments to five other former Mattel employees who Mattel alleges stole its trade secrets for MGA.   This Court subsequently upheld the Order as to Carter Bryant.  MGA never appealed the Order as to the other five, indeed, it conceded before the Discovery Master that it was required to produce these documents, and agreed to do so.

After the Phase 2 discovery stay was lifted earlier this year, Mattel moved to compel complete answers to interrogatories seeking information regarding MGA's payments to former and current Mattel employees.  The Discovery Master granted Mattel's motion, and MGA's subsequent answers made clear that MGA's earlier document production was deficient and did not comply with the prior Discovery Master's Order to produce documents regarding payments.   Mattel accordingly moved to enforce that Order compelling documents (as well as the 2009 Order requiring full interrogatory responses).

MGA opposed that motion, claiming that Mattel was seeking privileged documents, that its requests were not properly worded, and that Mattel had conceded that it had all the information it needed.  The Discovery Master properly rejected each of these arguments in Order No. 60.   Nevertheless, the Discovery Master limited Mattel's discovery for reasons not even urged by the parties, much less briefed by them, ruling that MGA need not produce documents compelled by the prior Discovery Master and this Court because they are only relevant to bias and credibility and their production "could be" burdensome.  Both those conclusions are

clearly erroneous.  The fee agreements are indeed relevant to Mattel's substantive claims; even if they weren't, there is no authority for discounting their relevance when the evidence in this very case suggests that the fee agreements may include provisions conditioning payment on the content of testimony.  MGA did not even claim that production would involve an undue burden, nor did it produce a declaration detailing the burden.  Moreover, under this Court's July 9 Order, as well as prevailing authority, speculation as to burden is not enough; MGA bore the burden of proving actual, undue burden.  Even more fundamentally, because this decision came on a motion to enforce a valid Order, the Discovery Master's analysis should have been limited to the question whether MGA complied with the earlier Order, which it plainly did not.  Order No. 60, denying Mattel clearly relevant discovery which both the prior Discovery Master and the Court had already ordered to be produced, for reasons which are themselves clearly erroneous, should be overruled, and MGA should be compelled to produce its withheld fee information.

## **Background**

   **Mattel's Trade Secret and RICO Claims.**  Mattel has asserted trade secret claims identifying five specific former Mattel employees—Gustavo Machado, Pablo Vargas, Mariana Trueba, Janine Brisbois, and Ron Brawer—and alleging that they stole Mattel's trade secrets and took them to MGA.  Mattel has also asserted RICO claims alleging that these trade secret thefts were part of the pattern of wrongdoing in which MGA sought to build its business by stealing from and lying to Mattel.[1]

---

   [1]   Mattel first raised its claims regarding these trade secret thefts and RICO violations when it sought leave to amend its complaint on November 20, 2006.  See Mattel, Inc.'s Notice of Motion and Motion for Leave to File Amended Complaint, dated November 20, 2006, Docket No. 89; Notice of Lodging of First Amended Complaint, dated November 20, 2006, Docket No. 90.  Following ruling on Mattel's motion, Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.  Those counterclaims contained a full recitation of the trade secret thefts and RICO claims Mattel has alleged here.  See Docket Nos. 653-654.  While
   (footnote continued)

**Machado, Vargas and Trueba.**  Machado, Vargas and Trueba were three high ranking employees of Mattel Mexico.  On April 19, 2004, all three resigned at the same time to open the offices of MGA Mexico.  Following these resignations, Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel for over three months prior to their resignations.  Mattel likewise discovered that they had copied and taken numerous Mattel documents with them when they left, including virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere.  Mattel notified Mexican authorities about the theft of its trade secret, and law enforcement searched MGA's facilities in Mexico City.  In that search, the Mexican authorities found and seized from MGA's offices both electronic and paper copies of a large number of documents containing Mattel trade secrets, including those that Mattel discovered through its forensic investigations, plus many others that Mattel had not known had been stolen.[2]

**Brisbois.**  Janine Brisbois was a Director of Sales for the Mattel Girls Division in Canada.  She resigned from Mattel to join MGA's Canadian office on September 26, 2005.  Four days before she resigned, Brisbois copied approximately 45 Mattel documents onto a USB or "thumb" drive and took them with her when she left.  These documents included a variety of Mattel trade secrets, including a document listing the price, cost, sales plan and quantity of every Mattel product

---

Mattel has since amended its complaint to expand the RICO allegations in light of newly-discovered evidence that the pattern of wrongdoing continued throughout the trial and afterwards; the claims relevant to this motion were fully and properly considered by the prior Discovery Master and the Court in their earlier rulings.  If anything, the subsequent amendments only strengthen the case for discovery of the continued operation of the enterprise, in which payment of legal fees is critically relevant to establishing the relationships which define a RICO enterprise.  See Mattel, Inc.'s Third Amended Answer and Counterclaims, dated May 22, 2009 ("TAAC"), at ¶ 1, Docket No. 5607.

[2]   TAAC at ¶¶ 45-61.

ordered by every Mattel customer in 2005 and 2006; a competitive analysis of Mattel vis-à-vis its competitors in Canada; a document containing the product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006; and numerous other trade secrets.  After Mattel discovered that Brisbois had copied these sensitive documents to a thumb drive, Mattel notified Canadian law enforcement authorities.  Law authorities recovered from Brisbois a thumb drive containing the documents that Brisbois had copied from Mattel's computer system.  Mattel later learned that while she was working as a Vice President of Sales at MGA, Brisbois accessed and modified documents on that thumb drive.[3]

**Brawer.**  Ron Brawer was Mattel's Senior Vice President and General Manager.  He left Mattel to join MGA in October 2004.  Mattel has alleged that he too has stolen Mattel's trade secrets for MGA's benefit.  Mattel has also alleged that he targeted other Mattel employees with access to Mattel proprietary information in order to induce them to join MGA and to steal Mattel confidential information and trade secrets.[4]

The allegations regarding these five former employees constitute a major part of the basis for Mattel's claims against MGA for misappropriation of trade secrets, conspiracy to violate and violation of the Racketeer Influenced and Corrupt Organizations Act.[5]

**MGA Is Ordered to Produce All Documents Reflecting Fee Payments.**  In Mattel, Inc.'s First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA Entertainment, Inc., dated December 18, 2006, Mattel propounded five Requests for Production seeking documents relating

---

[3]  Id. at ¶¶ 88-94.
[4]  Id. at ¶¶ 62-76.
[5]  See, e.g., id. at ¶¶ 134, 137, 139, 141, 147-148, 152, 157.

to payment made for or on behalf of these former Mattel employees.  In particular, the Requests sought: "All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to [Machado, Trueba, Vargas, Brisbois or Brawer], whether directly or indirectly, by YOU."[6]

MGA objected to each of the requests on relevance grounds, and on the grounds that they sought confidential third-party information, and refused to produce any documents.[7]  MGA did ***not*** object that producing the documents would be an undue burden.[8]

Mattel moved to compel the production of documents responsive to these Requests on February 2, 2007.  In its opposition, MGA *agreed* to produce the documents at issue here, and was ordered to do so by the prior Discovery Master on August 13, 2007.[9]  MGA did not appeal that decision, nor could it, given that it waived its objections.  In an earlier decision, appealed to the Court and upheld by Judge Larson, MGA was ordered to produce documents reflecting such payments to Carter Bryant as well.[10]

---

[6]   See Mattel, Inc.'s First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA Entertainment, Inc., dated December 18, 2006, at Request Nos. 75, 85, 95, 105, and 115.

[7]   See MGA Entertainment, Inc.'s Response to Mattel, Inc.'s First Set of Requests for Documents and Things Re Claims of Unfair Competition, dated January 17, 2007, at Response Nos. 75, 85, 95, 105, and 115.  MGA did not raise any objection based on attorney-client privilege.

[8]   Id.

[9]   See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Production of Documents By MGA Entertainment, Inc. and For Award of Monetary Sanctions, dated July 3, 2007, at 6 ("So as to avoid further burdening the Court, MGA agrees to produce any remaining documents responsive to Request Nos. 65-117, 119."); Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents By MGA; Denying Request for Monetary Sanctions, dated August 13, 2007, at 12, Docket No. 804 ("In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request Nos. 65-117 and 119 . . . Mattel's motion is granted as to these requests.").

[10]   Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at p. 10, Docket No. 487.

**MGA's 2009 Interrogatory Responses Establish That MGA Did Not Comply with the 2007 Orders.**  On March 30, 2009, after the Phase 2 discovery stay was lifted, the Discovery Master compelled the MGA Parties to provide interrogatory responses identifying all payments they have made to former Mattel employees.[11]  Those responses, while deficient in many respects, revealed that MGA's document production was deficient as well and failed to comply with the prior Orders.  In particular, the interrogatory responses reflected payments to former Mattel employees that were absent from the defendants' document production.  For example, MGA's interrogatory responses referenced payments of legal fees for Machado, but MGA failed to produce any documents reflecting those payments.[12]  It was clear that MGA had not produced all responsive documents, particularly since at least one document reflecting payments for Machado's and Castilla's legal fees was produced not by MGA, but by a third party in response to a subpoena.[13]

**Mattel's Motion to Enforce.**  Mattel accordingly brought a motion to enforce the August 13, 2007 Order and to require MGA to supplement its production.[14]  MGA made three arguments in opposition.  First, it argued—contrary to both its written responses and its statements before the prior Discovery Master— that to the extent the Requests sought documents referring to payment of legal fees,

---

[11]  Phase 2 Discovery Matter Order No. 11, dated March 30, 2009 at 23-25, Docket No. 5093.

[12]  Supplemental Response of MGA Entertainment, Inc. to Interrogatory Nos. 68 and 69 Pursuant to Discovery Master's Order of March 31, 2009, dated June 15, 2009.

[13]  See, e.g., IGWT 0051324 – IGWT 0052143 at IGWT 0051510, IGWT 0051920, Row 7457 (reflecting payments for Machado); IGWT 0051451, IGWT 0051861, Row 5111 (reflecting payments for Castilla).

[14]  Mattel, Inc.'s Notice of Motion and Motion to Enforce Prior Court Orders and to Compel Re: Interrogatory Nos. 68 and 69 and RFPs 75, 85, 95, 105, and 115 of Mattel's First Set of Requests Re Unfair Competition, dated July 22, 2009, Docket No. 6008.

they sought privileged documents that need not be produced.[15]   Second, it claimed that, despite the fact that the Requests clearly sought payments made "directly or indirectly" to the named employees, they nevertheless did not seek payments of legal fees, because those payments were made "on behalf of" the employees, rather than "to" them.[16]   Finally, it argued that Mattel conceded it had all relevant information from the interrogatory responses—when, in fact, the Discovery Master had required MGA to supplement those responses because they too were deficient.[17]

The Discovery Master rejected each of these assertions.  He found that Mattel's Requests do not seek privileged information and that MGA need only produce non-privileged documents.[18]   He found MGA's linguistic quibbling unpersuasive and held that the Requests as phrased included documents regarding payment of legal fees.[19]   Finally, he acknowledged that Mattel did not concede it had all necessary information, and that Mattel sought to corroborate the information provided by MGA.[20]

Nevertheless, despite rejecting each of MGA's asserted bases for refusing to produce documents, the Discovery Master proceeded to limit MGA's obligation to produce documents for reasons never raised by MGA.  He considered documents related to legal fees to be of marginal relevance and speculated that, although neither claimed nor proven by MGA, the burdens imposed on MGA in producing such documents could be significant. He therefore held, contrary to the

---

[15]   See MGA Parties' Opposition to Mattel, Inc.'s Motion to Enforce Prior Court Orders and Compel Re Interrogatory Nos. 68 & 69 and RFPs 75, 85, 95, 105 & 115 of First Set of Requests Re Unfair Competition, dated July 29, 2009, at 5-6, Docket No. 6087.

[16]   Id. at 6-7.

[17]   Id. at 7; Phase 2 Discovery Matter Order No. 60, dated September 9, 2009,, Docket No. 6630, at 23.

[18]   Id.

[19]   Id.

[20]   Id.

earlier, valid Order, that MGA need *not* produce documents relating to their payments of legal fees to Vargas, Trueba, Machado, Brisbois, or Brawer.[21]

## Argument

Order No. 60 is clearly erroneous in its analysis of relevance and its speculation as to burden.  If allowed to stand, it would deny Mattel access to evidence that is highly relevant both to bias and credibility and to Mattel's substantive claims without any showing whatsoever or even objection by MGA that production would be burdensome.

I.   **THE DISCOVERY MASTER'S ANALYSIS OF RELEVANCE WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW**

A.   **Payment of Legal Fees Is Relevant to the Substance of Mattel's Claims**

The Discovery Master ruled that legal fee payments, while potentially relevant to bias and credibility, do not relate to the substance of Mattel's claims. This ruling—which was made without the benefit of argument, because MGA did not contest relevance—is simply incorrect.

First, the payments that MGA and Larian made or offered to Mattel's employees are relevant to the relationships between these parties, which is a critical, substantive element of Mattel's RICO claims.  See Whitehouse v. United States Dist. Court for Dist. of Rhode Island, 53 F.3d 1349, 1352 n. 1 (1st Cir. 1995) (under RICO, "evidence that legal representation was provided by a benefactor, for participation in a criminal enterprise, [could be] relevant to prove existence of criminal enterprise"); United States v. Pape, 144 F.2d 778, 782 (2d Cir. 1944) (defendant's payment of legal fees for woman accused of prostitution could be used

---

[21]  Id. at 23-24.

to show that defendant's "interest in the woman went to the point of retaining and paying for a lawyer to secure her release"); <u>United States v. Castellano</u>, 610 F. Supp. 1151, 1160 (S.D.N.Y. 1985) ("benefactor payments of attorneys' fees by one defendant in behalf of another might suggest the existence of an association in fact, since payment of another person's legal fees may imply facts about a prior or present relationship with that person") (quotation omitted).  This Court itself has—at least twice—explicitly recognized that the "relationship" between the parties is directly and critically relevant to Mattel's claims.   <u>See</u> Trial Tr. at 3105:10-17 (holding MGA's payment of legal fees for Carter Bryant was relevant both for purposes of credibility and to establish the "relationship between MGA and Carter Bryant"); July 9, 2009 Order, Docket No. 5934, at 5 (finding that error in applying incorrect burden of proof was "magnified by the recent filing of the TAAC, which significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham may be related . . . .").

Second, such payments are directly relevant to Mattel's trade secret claims.  Defendants have asserted that they had no knowledge of any plan to steal Mattel's trade secrets, and that if these former Mattel employees stole anything they were acting on their own and without any encouragement from MGA.[22]  Legal fee agreements are relevant to show that defendants and these former Mattel employees acted in concert and shared loyalty to one another.  An agreement to pay legal fees that was created immediately after—or even before—these employees began work

---

[22]   <u>See, e.g.</u>, Declaration of Isaac Larian in Support of MGAE de Mexico, S.R.L. de C.V.'s Reply in Support of Its Motion to Dismiss Mattel's Amended Answer and Counterclaims, dated April 11, 2007, at ¶ 4, Docket No. 371; Excerpts of the Deposition Transcript of Susana Kuemmerle, dated January 28, 2008, at 221:19-25; MGA Parties' Opposition to Mattel, Inc.'s 2-09-09 Motion to Compel Depositions of Vargas and Trueba and Request For Sanctions, dated February 13, 2009, at 4, 10, Docket No. 4860.

at MGA would support the conclusion that they colluded to steal Mattel's trade secrets from the very beginning.

Third, the agreements are directly relevant to the question of how depositions of these witnesses may be used at trial.  Whether the corporation is paying the employee's legal fees bears directly on the "identity of interests" that is an important factor in the test for using such testimony against MGA.  See, e.g., Fed. R. Civ. P. 32 ("An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."); Young & Assocs. Pub. Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 523 (D. Utah 2003) (listing one of factors for determining managing agent status as "whether the agent's interests are identified with those of the principal"); Reed Paper Co. v. Proctor & Gamble Distrib. Co., 144 F.R.D. 2, 4 (D. Me. 1992) (managing agent for purposes of Rule 32(a)(3) "should be a person who can be expected to identify himself with the interests of the corporation rather than with those of the other parties") (quoting Rubin v. General Tire & Rubber Co., 18 F.R.D. 51, 56 (S.D.N.Y. 1955)); In re Honda Am. Motor Co., 168 F.R.D. 535, 541 (D. Md. 1996) ("The 'paramount test' is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's.").  The Discovery Master earlier concluded that Mattel had failed, based on the evidence to date, to establish that Vargas and Trueba were "managing agents" for purposes of noticing their depositions.[23]  Mattel is entitled to seek evidence that could lead to a different result when the managing agent test is applied at trial.  See, e.g., United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 414 (S.D.N.Y. 1994) (stating that final determination of managing agent status should be deferred until a party can obtain "full discovery from its

_____

[23]   See Phase 2 Discovery Matter Order No. 11, dated March 30, 2009, at 36, Docket No. 5093.

adversary on the status of the proposed deponent"); <u>Calgene, Inc. v. Enzo Biochem, Inc.</u>, 1993 WL 645999, at *13 n.12 (E.D. Cal. August 27, 1993) (determination of managing agent status made for purposes of discovery is not binding on trial court); <u>GTE Products Corp. v. Gee</u>, 115 F.R.D. 67, 69 (D. Mass. 1987) (party may take discovery regarding witness' managing agent status with corporation for purposes of using deposition against corporation at trial); <u>Atlantic Coast Insulating Co. v. United States</u>, 34 F.R.D. 450, 452 (E.D.N.Y. 1964) (determination of managing agent status made for purposes of noticing deposition is "legally useless" to determination of use of deposition at trial).

### B. <u>Payments of Legal Fees, Including The Terms of Fee Arrangements, Are Critical to Bias and Credibility</u>

The Discovery Master's error in assessing relevance was compounded by his assumption that if the fees were *only* relevant to bias and credibility, that should argue against their production.  No authority was cited for the proposition that bias and credibility are somehow less important in assessing relevance.  In fact, the evidence in this case suggests just the opposite.

The amount of legal fees paid on behalf of an employee is obviously relevant in assessing that employee's testimony.  Indeed, a published decision in this very case has established that fact.  <u>Bryant v. Mattel, Inc.</u>, 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007) ("fee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees"); <u>see also</u> <u>Bryant v. Mattel, Inc.</u>, 2007 WL 5430887, *2 (C.D. Cal. June 20, 2007) (ordering production of fee agreement); <u>see also</u> <u>United States v. Cathcart</u>, 2009 WL 1764642, *2 (N.D. Cal. 2009) (overruling magistrate order limiting discovery regarding payment of legal fees because this information is relevant to "the issue of defendant's credibility and bias"); <u>Perez v. Consolidated Edison Corp. of New York</u>, 2008 WL 194615, *1 (S.D.N.Y. January 23, 2008) ("Con Ed's agreement to pay

1  defendant Wallace's legal fees could be relevant to his credibility if he testifies and I
2  will not preclude such evidence, *in limine*.").

3      Nor does the relevance of fee arrangements to bias and credibility end
4  with the amount paid.  The terms of the agreements are also critical information.  By
5  its terms, however, the Discovery Master's Order appears to allow MGA to
6  withhold ***any*** documents relating to the payment of legal fees.  The Order thus
7  applies not only to redacted invoices (which was the basis for his speculation of
8  burden), but also to the fee agreements themselves.  Thus, under the Discovery
9  Master's ruling, even if the former employees had a fee payment agreement with
10  MGA which included an explicit *quid pro quo* for specific testimony—and even if it
11  was entered into before that employee even left Mattel—Mattel would not discover
12  that fact because defendants no longer need produce those agreements.

13      This is not hypothetical conjecture.  After extensive motion practice in
14  2007, Mattel obtained the fee agreement of a central MGA witness.  That
15  agreement, Mattel learned, included a specific term stating that MGA could seek to
16  recover fees paid if the witness did not testify to MGA's liking.

17      Mattel has a right to know both how much MGA has spent on behalf of
18  the witnesses at issue and the terms under which those payments were made.  If the
19  Discovery Master believed that producing invoices would be burdensome, at the
20  most he should have ordered that client invoices need not be produced.  By giving
21  MGA permission to withhold all documents related to legal fees—including the
22  documents reflecting the terms of the fee agreements themselves—Mattel is being
23  denied highly relevant documents whose relevance is undisputed and whose
24  production no one has even suggested would be burdensome.  This was clear error.

25  **II.  THE DISCOVERY MASTER'S ANALYSIS OF THE BURDEN ON**
26      **MGA WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW**

27      A party opposing discovery has the burden of showing that it should
28  not be allowed, and of documenting any objections with specific evidence.  See,

1  e.g., El-Shaddai v. Wheeler, 2009 WL 301824, *2 (E.D. Cal. February 5, 2009)

2  ("The party opposing discovery has the burden of showing that discovery should not

3  be allowed, and of clarifying, explaining and supporting its objections."); Marshall

4  v. Rain, 2008 WL 2186184, *1 (S.D. Cal. May 23, 2008) ("the burden of resisting

5  discovery is on the party opposing discovery"); Bible v. Rio Props., Inc., 246 F.R.D.

6  614, 618 (C.D. Cal. 2007) ("Contrary to defendant's assertion, the party who resists

7  discovery has the burden to show discovery should not be allowed, and has the

8  burden of clarifying, explaining, and supporting its objections."); Jackson v.

9  Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29 (D. Nev. 1997) (party

10  claiming a discovery request is "unduly burdensome must allege specific facts

11  which indicate the nature and extent of the burden, usually by affidavit or other

12  reliable evidence"); Horsewood v. Kids "R" Us, 1998 WL 526589, at *4 (D. Kan.

13  Aug. 13, 1998) ("Mere assertions by plaintiff of harassment and intimidation

14  provide no evidence of undue burden.").

15          Indeed, in multiple other Orders, both this Court and the Discovery

16  Master have properly held that the party resisting discovery must prove undue

17  burden.  See Phase 2 Discovery Matter Order No. 46, dated August 14, 2009,

18  Docket No. 6407, at 33 (citing Jackson, 173 F.R.D. at 528-29); Phase 2 Discovery

19  Matter Order No. 22, dated April 28, 2009, Docket No. 5279, at 44 (burden was on

20  MGA to show that discovery should not be allowed) (citing El-Shaddai, 2009 WL

21  301824 at *2; Marshall, 2008 WL 2186184 at *1); see also July 9, 2009 Order,

22  Docket No. 5934, at 4 ("[A]lthough Mattel bears an initial burden of establishing

23  relevancy, the party resisting discovery thereafter has the burden of establishing that

24  discovery should be denied.").

25          Here, MGA never even argued, much less offered evidence, that

26  producing the requested documents would be unduly burdensome.  Instead, MGA

27  conceded that documents should be produced in response to the original motion to

28  compel, and only made arguments unrelated to burden in opposing the motion to

-13-

enforce.  Given these facts, the Discovery Master's inquiry should have ended upon a finding of relevance, and the documents ordered produced.

Instead, the Discovery Master proceeded to limit MGA's production of documents based on speculation that the burden of producing such documents *could be* significant. Rather than relying on any evidence of burden introduced by MGA, the Discovery Master emphasized that Mattel had argued that producing its trial counsel's redacted invoices related to its representation of its own client would be burdensome.  See Order No. 60 at 24.  In its motion, however, Mattel properly had asserted a burden objection to producing every invoice sent by its trial counsel, Quinn Emanuel, to Mattel.  Mattel supported that argument with a declaration setting forth specific evidence regarding the number of invoices that exist and the time it would take to redact them.[24]  There is simply no comparison between the effort it would take for MGA to produce documents showing its payment of fees for five former Mattel employees and the burden on Mattel of producing its own trial counsel's invoices for over five years of intensive litigation against multiple parties. Indeed, in the same motion the Discovery Master cites, Mattel did *not* object to providing documents related to payments for legal fees for third parties, precisely because the burden to such a production was smaller.[25]

By limiting Mattel's Requests because of a mere possibility of burden that was never even asserted by MGA, the Discovery Master misapplied the

---

[24]   See Declaration of Scott L. Watson in Support of Mattel, Inc.'s (1) Response to MGA's Motion to Compel Documents Responsive to Requests for Production Nos. 530 and 531 and (2) Cross-Motion to Compel and Motion for Limited Reconsideration Of Order No. 11, dated August 6, 2009, at ¶ 15, Docket No. 6230. 21.

[25]   See Mattel, Inc.'s (1) Response to MGA's Motion to Compel Documents Responsive to Requests for Production Nos. 530 and 531 and (2) Cross-Motion to Compel and Motion for Limited Reconsideration of Order No. 11, dated August 6, 2009 ("Mattel does not object to providing a reasonable set of documents responsive to MGA's Request No. 530 regarding payments of legal fees [to any person in connection with this action], provided that MGA is compelled to do so as well."), Docket No. 6227.

1  standard for blocking relevant discovery.  The Order was therefore clearly erroneous

2  and contrary to law.

3  **III.   THE ISSUES OF RELEVANCE AND BURDEN WERE SETTLED BY**

4  **THE FIRST ORDER**

5  Finally, the Order is clearly erroneous because it is based on the

6  resolution of issues that were not properly before the Discovery Master on Mattel's

7  2009 motion and that had been repeatedly waived by MGA.

8  In response to Mattel's original Requests for the documents at issue

9  here, MGA raised only two objections:  that they (1) were irrelevant; and (2) sought

10  disclosure of information that "would implicate the rights of third parties to protect

11  private, confidential, proprietary or trade secret information."[26]  When Mattel moved

12  to compel in 2007, MGA waived even those objections, *agreed* to produce all

13  responsive documents, and was ordered to do so.[27]   Having failed to raise these

14  objections either in its original responses, or in opposing Mattel's motion to compel,

15  it unquestionably waived them years ago.  See, e.g., Richmark Corp. v. Timber

16  Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) (party waived objections it

17  failed to make in discovery responses or opposition to motion to compel); Calderon

18  v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 389 (5th Cir. 1989) (party waived

19  claim it failed to raise in opposition to discovery motion); Diapulse Corp. of Am. v.

20  Curtis Publ'g Co., 374 F.2d 442, 445 (2d Cir. 1967) ("Any other 'conditions'

21  plaintiff now seeks are clearly afterthoughts which were waived by failure to request

22  them in opposition to defendant's motion."); Eidukonis v. Se. Penn. Transp.

23  _____

24  [26]   MGA Entertainment, Inc.'s Response to Mattel, Inc.'s First Set of Requests
for Documents and Things Re Claims of Unfair Competition, dated January 17,

25  2007, at Response Nos. 75, 85, 95, 105, and 115.
[27]   See Order Granting in Part and Denying in Part Mattel's Motion to Compel

26  Production of Documents By MGA; Denying Request for Monetary Sanctions,
dated August 13, 2007, at 12, Docket No. 804 ("In its opposition brief, MGA agrees

27  to produce documents responsive to Mattel's Request Nos. 65-117 and 119 . . .
Mattel's motion is granted as to these requests.").

28

1   <u>Authority</u>, 1987 WL 16321, *5 (E.D. Pa. August 27, 1987) ("Defendant claims that

2   while plaintiff never argued for this limitation in opposing the prior motion, nor did

3   this Court limit such discovery to the last set of active duty orders, this argument

4   and all objections the plaintiff attempts to set forth now are waived. This Court

5   agrees.").  The only issue that should have been before the Discovery Master on the

6   motion to enforce was whether MGA complied with the original Order.  <u>See, e.g.</u>,

7   <u>United States v. Ayres</u>, 166 F.3d 991, 995 (9th Cir. 1999) ("It is a long-standing rule

8   that a contempt proceeding does not open to reconsideration the legal or factual

9   basis of the order alleged to have been disobeyed and thus become a retrial of the

10  original controversy.") (internal quotes omitted); <u>Huber v. Marine Midland Bank</u>, 51

11  F.3d 5, 8 (2d Cir. 1995) (same).  Since MGA never moved to reconsider or clarify

12  that Order, it was incumbent upon it to comply with it.  <u>Syfu v. Cooke</u>, 2003 WL

13  21938898, *2 (C.D. Cal. 2003) (rejecting argument that order was unclear where

14  party never sought clarification of that order).

15          Indeed, in another Order, the Discovery Master refused to consider

16  arguments MGA did not raise in its first opposition to a motion to compel for

17  exactly this reason.

18              "Here, the MGA Parties did not assert the vast majority of

19              their objections in the opposition they submitted to the

20              prior discovery master. . . .  Specifically, they did not

21              invoke any privilege objection, compound objection, or

22              unduly burdensome objection, or claim that the requested

23              information has already been produced or is more readily

24              accessible to Mattel. . . . Accordingly, the MGA Parties

25              abandoned every other objection by failing to raise them in

26              their original opposition. . . . Because the MGA Parties did

27              not properly preserve the vast majority of their objections

28

1      to the Interrogatories, they cannot rely on the objections

2      now."[28]

3      The same rule governed here.  Because the MGA parties did not

4 properly preserve any relevance or undue burden objection—and never raised, much

5 less preserved, a burden objection—they cannot be allowed to prevail on those

6 grounds.  If the original Order was valid—and it is undisputed that it was—the only

7 issue should have been whether MGA complied, which the Discovery Master found

8 it had not.

9 **Conclusion**

10      For the foregoing reasons, Mattel respectfully requests that the Court

11 overrule Order No. 60 to the extent it permits MGA to withhold documents

12 reflecting their fee agreements and understandings and otherwise related to their

13 payment of legal fees to the former Mattel employees.

14

15 DATED:  November 17, 2009    QUINN EMANUEL URQUHART OLIVER &
                      HEDGES, LLP

16

17

18                By /s/ B. Dylan Proctor

19                  B. Dylan Proctor
                  Attorneys for Mattel, Inc.

20

21

22

23

24

25

26

---

27  [28]  Phase 2 Discovery Matter Order No. 22, dated April 28, 2009, at 45-46, Docket No. 5279.

28