QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Jon D. Corey (Bar No. 185066)
joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendants. | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S REPLY IN SUPPORT OF OBJECTIONS TO CERTAIN PORTIONS OF DISCOVERY MATTER ORDER NO. 73** |
| AND CONSOLIDATED ACTIONS | Date: December 7, 2009<br>Time: 8:30 a.m<br><br>**<u>Phase 2</u>**<br>Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

## Preliminary Statement

MGA claims that Mattel has no need to be apprised of the arguments it advances in its *ex parte* submissions to the Discovery Master because Mattel has "already won" *in camera* review. But the adversary process does not end simply because the Discovery Master is conducting an *in camera* privilege review—indeed, that review means nothing if MGA is now permitted to skew the process with untested factual and legal assertions. Because the Discovery Master's decision as to which documents have been improperly withheld will be based on MGA's one-sided arguments, Mattel has every need and right to this information.

MGA claims that because its attorneys chose which facts to include in its submissions—a supplemental privilege log and an index of individuals—disclosure would reveal their underlying mental processes and is therefore protected. Not so. Just because an attorney does something that doesn't make it work product. This reply brief is not work product, even though it resulted from the same kind of factual culling and mental processes as MGA's *ex parte* submissions. And far from supporting the work product claim, MGA's repeated emphasis that its log and index were intended only for use in this proceeding underscores the fact that MGA's submissions are advocacy, nothing more. They should be disclosed to Mattel or withdrawn.

## Argument

### I. MGA'S *EX PARTE* SUBMISSIONS ARE NOT JUSTIFIED

#### A. Having Refused To Substantively Defend Its Privilege Assertions Initially, MGA Should Not Now Be Permitted To Do So In Secret

MGA argues that its *ex parte* submissions are appropriate because a party "must be given an opportunity to present evidence and argument in support of its claim of privilege." (Opp. at 8.) Absolutely. But MGA *was* given such an opportunity, twice: first, when it prepared the logs; and second, when it opposed Mattel's motion for their review and disclosure. Instead, it prepared woefully

inadequate logs and then made the tactical decision to rest its opposition on procedural arguments rather than mounting a substantive defense of its withholdings.[1] Having rejected MGA's only defense, disclosure would have been appropriate at that point. Instead, the Discovery Master decided to review the documents *in camera*. It was only then that MGA presented the evidence and explanation which should have been included in the original logs and, if not there, then in its opposition. Both of those filings would have been served on Mattel, as should these ones.

MGA also argues that Mattel has "no need of the information" in its *ex parte* submissions "because it has already won the *in camera* review" of the documents at issue. (Opp. at 5.) This is not about making work for the Discovery Master. Mattel is entitled not just to the review of withheld documents but to the disclosure of non-privileged documents. The issue before the Discovery Master is whether documents under review have been improperly withheld. The appearance of fairness, if not also fairness and accuracy, is compromised if MGA is now permitted to justify its withholdings through one-sided factual assertions and legal arguments untested by the adversary system.

There is certainly ample evidence in the record to support Mattel's legitimate concern. MGA has repeatedly made assertions of questionable accuracy to the Discovery Master in connection with its improper privilege assertions, which have only been corrected because Mattel was there to challenge them. Given MGA's past record—demonstrably inaccurate descriptions, including identifying a non-lawyer, repeatedly, as an attorney; misinforming the Discovery Master that its paralegal had always been supervised by two MGA in-house attorneys when it turned out that she had been hired well before the attorneys; and withholding as privileged during Phase

[1] See Phase 2 Discovery Matter Order No. 33, dated May 18, 2009 (Docket No. 5514), at 55-56.

1 hundreds of documents, including a highly critical email chain, that should have been disclosed—it should not be permitted to submit "facts" and argument that may skew the review process without the countervailing check of the adversarial system.

### B. *Ex Parte* Submissions Are Disfavored Whether Solicited Or Not

*Ex parte* submissions are a "'disfavored exception' in our adversarial system."[2] Numerous cases establish this basic rule.[3] MGA seeks to distinguish those cases by ridiculing as utterly irrelevant two FOIA decisions and on that basis, concluding that outside the FOIA context, parties "are *not* required to submit affidavits or anything of the sort." (Opp. at 12-13). MGA is mistaken. A host of authorities (in cases that *solely* involve the attorney-client privilege) hold otherwise. See Flanagan v. Benicia Unif. Sch. Dist., 2008 WL 2073952, at *4 (E.D. Cal. May 14, 2008) (stating that "the party with the burden must make a sufficient showing to create a privilege issue *before* in camera review is appropriate" and noting that "detailed affidavits often necessary to supplement privilege log"); Burns v. Family Practice Assoc., 162 F.R.D. 624, 627 (S.D. Cal. 1995) (ordering documents produced without *in camera* review where "[n]o detailed affidavits or other evidence was submitted setting forth any privilege or protection necessitating such a

[2] App. Materials. v. Adv. Micro-Fab., 2009 WL 3429575, at *3 (N.D. Cal. Oct. 22, 2009) (quoting U.S. v. Thompson, 827 F.2d 1254, 1257 (9th Cir. 1987)).

[3] See PG&E v. U.S., 71 Fed. Cl. 205, 207, 210 (Fed. Cl. 2006) (ordering *ex parte* submissions disclosed in redacted form); B.F.G. of Ill. v. Ameritech Corp., 2001 WL 1414468, at *3 (N.D. Ill. Nov. 13, 2001) (denying leave for *ex parte* submission because the "factual information (including any affidavit) necessary to support their claims of privilege or work product" should be provided first); In re Grand Jury Proc., 2001 WL 1167497 at *1 (S.D.N.Y. Oct. 3, 2001) (*ex parte* submission must be justified, served on opposing counsel or withdrawn); LaBelle v. Phillip Morris, 2000 WL 33957170, at *2 (D.S.C. June 6, 2000) (court's reliance on *ex parte* submission "will deprive the [party seeking disclosure] of a fair hearing"); Seibu Corp. v. KPMG LLP, 2002 WL 87461, at *1 n.3 (N.D. Tex. Jan. 18, 2002) ("party may not tender materials *in camera* in order to establish a claim of privilege as to other documents" which had "not been provided to [opposing] counsel").

review," because "[p]rior to an *in camera* review there must first be a sufficient evidentiary showing of a legitimate issue as to application of a privilege or other protection. *In camera* review should not replace effective adversarial testing of the claimed privileges and protection."). Although MGA claims that its *ex parte* submissions are "neither improper, prejudicial nor unusual" (Opp. at 9), it does not cite a single analogous authority condoning *ex parte* submissions in the context of *in camera* review of documents whose privileged status is contested. The few authorities it musters, most of which do not even involve analogous privilege reviews, show *ex parte* submissions permitted only in unique circumstances.[4] MGA offers no such compelling circumstance here.

All it offers is an inapt distinction between "unsolicited" and "solicited" *ex parte* submissions, claiming that all of Mattel's authorities involved "unsolicited" submissions in which the court "merely declined to consider the offered evidence but did not disclose it to the adversary." (Opp. at 10.) MGA misreads these cases.

---

[4] In In re John Doe, Inc., 13 F.3d 633, 636 (2d Cir. 1993), which did not involve privilege review, the court cautioned that "an *in camera* submission 'deprive[s] one party to a proceeding of a full opportunity to be heard on an issue,' and its use is justified only by a compelling interest," but permitted it in those circumstances "[b]ecause of a concern for preserving grand jury secrecy," but noted that where there is a "need for adversary examination" then the opposing party should be given "full or limited access" to the submissions. Id. MGA's remaining authorities are equally unhelpful. In re Gen. Motors, 153 F.3d 714 (8th Cir. 1998), involved application of the crime/fraud exception and the unique considerations raised by *in camera* review of documents already deemed to be privileged without disclosing their contents. In Allegheny v. Nippon Steel, 1990 WL 9837 (E.D. Pa. 1990), a patent infringement case, the *ex parte* submission "contain[ed] detailed summaries of privileged information derived from the subject documents" under *in camera* review, which, MGA has never claimed to be true regarding its advocacy pieces. Finally, Burton v. R.J.R. Tobacco., 175 F.R.D. 321 (D. Kan. 1997), involved an *in camera* review of a tobacco defendant's documents to determine when they knew of nicotine's addictive properties and an "in camera memorandum" submitted therewith.

In Labelle and B.F.G., the parties sought leave to submit *ex parte*, *in camera* submissions and were denied leave because such submissions would be inconsistent with the adversary system.[5] In PG&E, the *ex parte*, *in camera* submissions were, in fact, **affirmatively solicited** by the court, but then, after being challenged, were ordered **disclosed** in redacted form.[6] In First Security (which MGA does not even mention), the court, while ordering *in camera* review, preemptively required that any corresponding affidavit should be served on opposing counsel.[7] Only Seibu and In re Grand Jury Proceedings involved truly "unsolicited" submissions—in the former, the court declined to consider them; in the latter, the court ordered them to be justified, withdrawn or served on opposing counsel.[8]

In any event, the distinction MGA draws is meaningless. An unsolicited *ex parte* submission lodged with the court without notice or prior leave may be more improper as procedural matter, but that says nothing about when an *ex parte* submission is substantively appropriate. None of Mattel's authorities were premised

---

[5] See LaBelle, 2000 WL 33957170, at *2; B.F.G., 2001 WL 1414468, at *3.

[6] See PG&E, 71 Fed. Cl. at 210. MGA avoids substantive discussion of PG&E, arguing that because it involves the deliberative process privilege it is irrelevant. Thus, MGA asserts that affidavits in a deliberative process case "fulfill the same role as Rule 26 privilege log," and suggests that because MGA has already produced privilege logs PG&E does not counsel disclosure of its *ex parte* submissions here. (Opp. at 11.) MGA is mistaken. The *ex parte*, *in camera* submissions at issue in PG&E were not akin to a privilege log—indeed, in its initial opinion the PG&E court expressly noted the affidavits were "filed after the government had already claimed the deliberative process privilege over the documents in its privilege log." PG&E v. U.S., 70 Fed. Cl. 128, 142 (Fed. Cl. 2006), *modified*, 71 Fed. Cl. 205. Because those submissions were no different than MGA's *ex parte* submissions here, the logic of PG&E (which is really about *ex parte* submissions generally, not deliberative process specifically), is equally applicable and persuasive here. See PG&E v. Lynch, 2002 WL 32812098, *3 (N.D. Cal. 2002) ("primary rationales for the deliberative process privilege and the attorney client privilege are analogous").

[7] See First Sec. Sav., 115 F.R.D. at 184.

on whether the submissions were solicited or not. Rather, in each, the court concluded that to rely on an *ex parte* submission—whether solicited or not[9]—without the necessary check of countervailing argument would be inappropriate. MGA's *ex parte* submissions should either be withdrawn or produced to Mattel.[10]

## II. MGA'S SUBMISSIONS ARE ADVOCACY, NOT WORK PRODUCT

The crux of MGA's opposition is that its submissions are work product—that because it engaged in the "collection, selection and narrative presentation" of facts to support its arguments to the Discovery Master, disclosure of those arguments would necessarily reveal its counsel's "mental impressions and legal opinions." (Opp. at 6.) This remarkable claim is both unsupported, and ultimately, unsupportable. Its submissions are advocacy, not work product.

The bulk of the information in MGA's submissions is hardly more than that required by a privilege log—its first submission is simply a "supplemental log," while its second is an index of individuals. MGA concedes the point (and claims, misleadingly, that its logs did contain such details[11]), but asserts that its submissions go further, in particular by providing the "'role' each person played." (Opp. at 6).

---

[8] See Seibu, 2002 WL 87461, at *1 n.3; In re Grand Jury Proc., 2001 WL 1167497 at *1.

[9] MGA's argument is undermined by its own conduct—just weeks ago it submitted an unsolicited *ex parte* declaration to the Discovery Master to support its privilege assertions with regard to Larian's communications with MGA's in-house counsel. See Notice of *In Camera* Submission of the Declaration of Amy S. Park, dated November 4, 2009 (Docket No. 7132).

[10] MGA misleadingly states that "Mattel does not merely ask that the Discovery Master not consider this material," but rather seeks a "wholly extraordinarily order" that these submissions be compelled. (Opp. at 11.) As shown, such an order would hardly be extraordinary; but Mattel's objections clearly state that *either* the material should be produced *or* withdrawn. (Mot. at 1.)

[11] If MGA's logs did provide such information, the Discovery Master would not have needed to request it. In fact, MGA's logs generally provide no more than the name of an individual, with no information as to their employer, job title, or role.

The compiling of such factual information or its narrative presentation is not work product—in fact, the prior Discovery Master, Judge Infante, rejected this very argument as "without merit" when MGA made it in Phase 1.[12]

Tellingly, MGA does not cite even a single case holding that such role descriptions are work product. Nor could it. Courts frequently require parties to provide greater detail on the roles of individuals than provided in the often cursory descriptions of a privilege log, without any suggestion that the additional "work" required by the parties' attorneys renders the result work product. See, e.g., AAB Joint Venture v. U.S., 75 Fed. Cl. 432, 447 (Fed. Cl. 2007) (court required withholding party to "review each of the challenged documents" and "provide a more complete description of each of the documents" including, inter alia, "all of the persons who sent or received the communication, **the role of each of those persons** . . . and why it qualifies for protection under the attorney-client privilege") (emphasis added).[13] Because this information is not work product, courts do not hesitate to require disclosure, even where the documents themselves will be subject to *in camera* review. See, e.g., Bogosian v. Gulf Oil Corp., 1983 WL 1841, at *1 (E.D. Pa. May 20, 1983) (ordering documents submitted for *in camera* review "together with such detailed explanations as [the withholding party] deems

---

[12] See Phase 1 Discovery Master Order, dated May 15, 2007 (Docket No. 487) (ordering MGA to provide interrogatory responses "including a description of each person's role" and holding MGA's objections, including those based on the attorney-client and work product privileges, were "without merit").

[13] See Bell v. Pfizer, 2006 WL 2529762, at *5 (S.D.N.Y. Aug. 31, 2006) (ordering production of "a more detailed privilege log, along with affidavits setting forth facts supporting their claim of attorney-client privilege-including the identities, titles, and roles of the authors, recipients, and individuals cc'ed on these communications, and the purpose of the communications"); Vantage v. Lutron Elec., 2006 WL 539517, at *1 (D. Utah Mar. 6, 2006) (previously ordering party to provide "an appendix to its privilege log including identification of the roles of all

(footnote continued)

appropriate, provided, however, that such detailed explanations shall not be submitted in camera and a copy of such . . . be provided to all counsel").[14]

Nowhere does MGA address the basic question of whether a claim of work product could ever be maintained when that "work product" itself was purposefully created for submission to the Court in order to advance a specific position. While MGA cites to a handful of work product authorities, they all involve attempts by a party to seek disclosure of an opposing party's internal litigation-related activities.[15] MGA is not submitting previously created work product to prove a certain point; rather, it has affirmatively marshaled certain facts and/or legal arguments to convince the Discovery Master that its withholdings are proper. Indeed, it makes much of the fact that these submissions were created "solely for the purposes of the

---

persons identified" with "a narrative or description of the document to establish privilege").

[14] See also U.S. v. AT&T, 86 F.R.D. 603, 651 (D.D.C. 1979) (ordering party to submit document *in camera* with "all substantiating materials . . . served upon the party challenging the claim of privilege"); First Sec. Sav., 115 F.R.D. at 184 (requiring contested document to be submitted *in camera* but supporting affidavit regarding "identity and position" of individuals involved and "reasons" for withholding to be served on opposing counsel). In a brief filed only days ago, MGA justified a different *ex parte* as appropriate because its did "not contain factual information or foundational facts concerning the privileged communications that would be described in MGA's privilege logs." See MGA's Response re Objections to Park and Larian Declarations, dated Nov. 30, 2009 (Docket No. 7311), at 4:16-17. That is precisely what it has submitted to the Discovery Master here.

[15] Three present "classic" examples of work product—information stored privately by attorneys. See Sporck v. Peil, 759 F.2d 312 (3rd Cir. 1985) (work product doctrine prevented the production of documents relied upon by defense counsel in preparing his client for a deposition); Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir. 1985) (prohibited attempt to depose opposing trial counsel about documents in his possession); U.S. v. Cook, 2006 WL 3474184 (W.D. Wash. Nov. 16, 2006) (binder of documents selected by counsel was work product). In the final case, Bagley v. TRW, 212 F.R.D. 554 (C.D. Cal. 2003), the court merely held that the defendant should not have access to mandatory disclosures by a qui tam plaintiff to the government, which were preparatory documents never filed with the court.

Discovery Master's use" (Opp. at 4), which just proves Mattel's point that these submissions have nothing to do with work product.

> Documents filed with the court are not prepared "in anticipation of litigation"; they are part of the litigation. Under [this] view, any document filed with the court which is not provided to an adversary is attorney work product and subject to confidentiality, a notion in direct contrast to the long history of open access to court documents. We decline to expand the attorney work product doctrine in this manner.

U.S. v. Porter, 988 F. Supp. 519, 526 (M.D. Pa. 1997) (rejecting claim that *ex parte* submission was work product). MGA's position that its legal and factual arguments to the Discovery Master are independently protected work product, expands the doctrine far beyond its proper limits and would ultimately render it meaningless. By MGA's peculiar logic, Mattel would be permitted to file this very reply brief *ex parte*, *in camera*, since it consists of the "collection, selection, and narrative presentation of the reasons why it believes" MGA's *ex parte* submissions "are [not] privileged and/or attorney work product." (Opp. at 7.) Surely that would be improper, as MGA would not be in a position to review or, if necessary, respond to Mattel's factual and legal assertions.[16]

At bottom, the work product doctrine is intended to "facilitate[] zealous advocacy in the context of an adversarial system of justice by ensuring that the sweat of an attorney's brow is not appropriated by the opposing party." In re Grand Jury Subpoena, 274 F.3d 563, 574 (1st Cir. 2001) (citing Hickman v. Taylor, 329 U.S. 495 (1947)). MGA strains to place it submissions under this rubric, claiming

[16] Courts have long held that court papers are not protected work product once filed. See Intel Corp. v. VIA Tech., Inc., 204 F.R.D. 450, 452 (N.D. Cal. 2001) ("In the present case, the declaration at issue was clearly work product right up until the moment it was filed."). The potential "disclos[ure] [of] counsel's legal theories or other work product . . . alone is not justification for *ex parte* submission." Bell v. True, 356 F. Supp. 2d 613, 617 (W.D. Va. 2005) (explaining that document could not be filed *ex parte* merely to avoid disclosure of its legal theory to adversary).

that it expended "hundreds of hours" toiling to prepare them, while suggesting that, all the while, Mattel "laid in wait" so that it could "free ride of the efforts of MGA's Parties' attorneys." (Opp. at 3, 8.)[17] It is MGA's burden to substantiate its privilege claims—that it ultimately did so not in its logs or in opposing *in camera* review but in supplemental *ex parte* submissions does not render these submissions work product, any more than the log and the original opposition were. Mattel does not seek to appropriate MGA's efforts, but only to counter the factual representations and legal advocacy which are now before the Discovery Master, untested and unverified by the adversarial system.[18]

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court grant Mattel's Objections in their entirety.

DATED: November 30, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Dylan Proctor
B. Dylan Proctor
Attorneys for Mattel, Inc.

[17] MGA's claim that Mattel should have objected sooner—which MGA never argued below, nor did the Discovery Master so hold—lacks merit. As MGA concedes (Opp. at 2), its first submission was not required to be submitted *in camera* (or even required at all), thus Mattel could not have objected until after it was submitted. As for the second, Mattel did object weeks before the submissions were made. See Mot. at 4 n. 4.

[18] Mattel previously acknowledged that it is "*conceivable*" that the first submission "*could*" reveal the content of any allegedly privileged material, but that MGA had not shown that it did so. MGA seizes on this as "conced[ing]" that these materials are privileged. It does not. And if there is any privileged material, it should simply be redacted.