FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC - 7 2009

CENTRAL DISTRICT OF CALIFORNIA
BY       DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT,<br><br>　　　　Plaintiff(s),<br><br>　　v.<br><br>MATTEL, INC.,<br><br>　　　　Defendant(s). | CASE NO. SACV 04-9049 DOC (RNBx)<br><br>**O R D E R** OVERRULING AMENDED OBJECTIONS TO CERTAIN PORTIONS OF DISCOVERY ORDER NO. 73 AND DENYING MATTEL, INC.'S REQUEST FOR RELIEF |

Before the Court is Mattel, Inc. ("Mattel")'s Amended Objections to Certain Portions of Discovery Matter Order No. 73 ("Order No. 73 Objections"). After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court hereby OVERRULES the Order No. 73 Objections. The Court further DENIES Mattel's request that "MGA's *ex parte* submissions be withdrawn from the Discovery Master's consideration or produced to Mattel."

**I.	Background**

During phase 1 of this lawsuit, Defendants MGA Entertainment, Inc. and Isaac Larian

("MGA") developed privilege logs that listed a variety of documents responsive to Mattel's requests for production. These privilege logs were created and produced in apparent response to Mattel's August 9, 2007 Motion to Compel production of all documents withheld by MGA. The privilege logs were further produced as a result of several meet and confers between MGA and Mattel with respect to MGA's alleged failure to timely develop privilege logs that identified documents withheld by MGA. On January 21, 2008 and following MGA's production of its privilege logs, Mattel filed a Motion to Compel Production of Previously Withheld Documents Only Portions of Which are Allegedly Privileged. By its January 21, 2008 Motion, Mattel sought the production of redacted versions of some of the documents listed on MGA's privilege logs. On June 5, 2008, the Court denied Mattel's Motion on the grounds that MGA had already produced redacted versions of partially privileged documents capable of redaction.

At the start of phase 2, Mattel moved to compel *in camera* review of more than 500 entries on MGA's privilege logs. *See* Mattel's Mot. to Compel *In Camera* Review and Prod. of Non-Attorney or Non-Legal Commc'ns Listed on MGA's Privilege Logs, dated March 27, 2009. MGA opposed on the ground that Mattel's Motion was precluded by the Court's June 5, 2008 Order, but the Discovery Master disagreed, noting that the June 5, 2008 Order only denied Mattel's request to the extent that Mattel sought redacted versions of documents marked as privileged. By contrast, Mattel's March 27, 2009 Motion contested the invocation of privilege itself, and requested the *in camera* review of certain documents listed on MGA's privilege logs. Accordingly, by Discovery Matter Order No. 33 on May 18, 2009, the Discovery Master ordered MGA to produce, for the Discovery Master's *in camera* review, 500 documents and emails identified as privileged. Pursuant to *In re Grand Jury Witness*, 695 F.2d 359 (9th Cir. 1982), *United States v. Martin*, 278 F.3d 988 (9th Cir. 2002), and *Coleman v. Schwarzenegger*, 2008 WL 2732182 (E.D. Cal. July 8, 2008), the Discovery Master also invited MGA to submit "a log . . . that contains a column with a detailed explanation of why the documents are privileged . . . The sole purpose of this Log, should the MGA Parties choose to submit such a document, shall be to facilitate that Discovery Master's evaluation of the privilege claims asserted by the MGA Parties."

2

1  On August 4, 2009, MGA submitted for the Discovery Master's *in camera* review the 500
2  documents and emails, as well an *ex parte* submission in compliance with Discovery Matter
3  Order No. 33. On August 19, 2009, the Discovery Master issued Discovery Matter Order No.
4  50, which required MGA to provide a list of the individuals who "authorized or received" the
5  submitted documents and identify the "employer, job title, and role of that person." With respect
6  to attorneys, Discovery Matter Order No. 50 required MGA to list the "law firm or entity to
7  which that person was associated," as well as the "name of the individuals or entities for whom
8  that person acted as lawyer in connection with the communication in question." MGA submitted
9  this information to the Discovery Master in an *ex parte* submission on September 11, 2009 on
10 the grounds that the "list reflects a tremendous amount of our work product and we are also
11 concerned that some of the descriptions and role information themselves implicates privilege, so
12 we are making this submission *in camera*." See Mot. at 4:14-16.
13  By an August 26, 2009 letter from B. Dylan Proctor to Annette Hurst, Mattel requested
14 that MGA serve Mattel with MGA's *ex parte* submissions. Mattel submitted its letter
15 subsequent to Discovery Matter Order Nos. 33 and 50, but before MGA filed its second *ex parte*
16 submission. Upon MGA's refusal to comply with Mattel's request, Mattel submitted a letter to
17 the Discovery Master on September 15, 2009, requesting disclosure of the two *ex parte*
18 submissions or, in the alternative, the redacted production of MGA's two *ex parte* submissions.
19 MGA submitted a letter to the Discovery Master in opposition. On October 30, 2009, by Phase 2
20 Discovery Matter Order No. 73, the Discovery Master denied Mattel's request. The Discovery
21 Master stated that production of the two *ex parte* submissions would be "inequitable" as MGA's
22 submissions "were not intended to create additional responsive materials that Mattel could
23 discover." The Discovery Master also noted that "the MGA Parties believed that the materials
24 would not have been produced to Mattel" and that "the MGA Parties may have phrased the
25 submission in another manner or appealed my rulings in Order No. 33 and/or Order No. 50 to the
26 Court" had they expected otherwise. Finally, the Discovery Master rejected Mattel's request in
27 the alternate for redacted versions of the two *ex parte* submissions on the grounds that "redacting
28 the submissions is not possible in many instances because the documents are entirely privileged

3

and/or comprise attorney work product, and even producing the redacted documents could disclose privileged information."

Orrick Herrington & Sutcliffe ("Orrick") was retained as counsel for MGA in early July, approximately six weeks after the Discovery Master issued Order No. 33. According to MGA, Orrick has taken great pains to comply with the Discovery Master's Order by expediting the receipt of documents, conducting an exhaustive and rapid re-review of the documents (over Mattel's objection), and "invest[ing] hundreds of hours preparing a detailed index containing narrative descriptions of what MGA's attorneys believed to be the relevant role each person mentioned in the document played in the events giving rise to this litigation." Opp'n at 3:14-16. When preparing the *ex parte* submissions requested and ordered by the Discovery Master, MGA states that Orrick expected that the submissions would be evaluated *in camera*.

## II. Legal Standard

The Court will not reach a result contrary to the Discovery Master simply because the Court "may have weighed the evidence differently." *Bryant v. Mattel, Inc.*, No. CV 04-9049 SGL (RNBx), 2007 WL 5430885, *2 (C.D. Cal. July 2, 2007). Instead, the Court reverses only those Orders of the Discovery Master that are "contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a) (a district court judge must "modify or set aside any part of [a magistrate judge's order] that is clearly erroneous or is contrary to law")

## III. Discussion

Mattel requests that the Court order MGA's *ex parte* submissions be withdrawn from the Discovery Master's consideration or produced to Mattel on the grounds that the *ex parte* submissions are not privileged and circumvent the adversarial process. In opposition, MGA argues that the *ex parte* submissions are privileged as work product, were specifically requested and ordered of MGA by the Discovery Master, and that the ex-post production of the *ex parte* submissions to Mattel would be inequitable. MGA further argues that courts frequently request *ex parte* submissions of parties in order to facilitate *in camera* review of withheld documents.

As a matter of fact, *ex parte* argument in support of a claim of privilege circumvents the adversarial process. However, examining sensitive information and argument *in camera* allows

the Court to evaluate privilege claim(s) and avoid the premature disclosure of sensitive information. Moreover, *ex parte* submissions enable the party invoking privilege to satisfy its burden of proof. Thus, courts frequently review documents *in camera* in order to determine whether such documents are in fact privileged. *See, e.g., In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1093 (9th Cir. 2007). For example, courts have accepted *ex parte* submissions, such as affidavits and argument submitted by the party claiming privilege. *See id.*; *see also In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1993) (affirming district court's consideration of *in camera* affidavits submitted to substantiate government's reference to crime fraud exception); *Alleghany Ludlum Corp. v. Nippon Steel Corp.*, No. 89-5940, 1990 WL 9837, *1-2 (ED. Pa. Feb. 1, 1990) (allowing submission of two *in camera* affidavits explaining basis of privilege); *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 329 (D. Kan. 1997) (allowing "an *in camera* memorandum concerning the nature of the subject documents and arguments relating to the claimed privilege").

In none of the above-cited cases did a court later order the disclosure of *ex parte* submissions. However, in *Pacific Gas & Electric v. United States*, 71 Fed. Cl. 205 (Fed. Cl. 2006) ("*PGE*"), the court ordered defendant to produce for plaintiff's consideration certain *ex parte* affidavits that defendant had submitted in support of the invocation of the deliberative process privilege. *After* review, consideration, and application of the *ex parte* affidavits, the court ordered defendant to turn over the affidavits to plaintiff. More specifically, the court referenced plaintiff's claim that it "is entitled to know what harm the government claimed in its affidavit so that [plaintiff] can [,] in turn, argue that its need outweighs the assert[ed] harm by the government." *Id.* at 207 (citing Pl.'s Surreply at 3).

The timing of Mattel's Motion complicates the Court's inquiry. *PGE* is distinguishable, as the deliberative process privilege requires a balancing of the equities and the attorney-client privilege does not. Nonetheless, the court in *PGE* was correct to utilize the adversarial process both to test the merits of a claimed privilege and, more importantly, to secure the legitimacy of the ultimate outcome in the eyes of both parties. The instant Motion represents an excellent example of how *ex parte* submissions breed mistrust between parties. Notwithstanding Mattel's

justifiable concern about the content and unobstructed influence of MGA's *ex parte* submissions, this Court cannot ignore that the Discovery Master invited and ordered the respective submissions and that MGA may have altered its behavior in two ways.[1]

First, had MGA expected that its arguments and descriptions would be disclosed to Mattel, it may have immediately appealed Discovery Matter Order Nos. 33 and/or 50. The parties in many of the cases cited by Mattel could not have suffered the same harm, since the courts in those cases did not order *ex parte* submission. Instead, "a party made an *unsolicited* attempt to submit evidence *in camera* to the court, which declined the offer." *See* Opp'n at 10:7-9 (citing *B.F.G. of Illinois, Inc. v. Ameritech Corp.*, 2001 WL 1414468, *2 (N.D. Ill. Nov. 13, 2001); *LaBelle v. Phillip Morris, Inc.*, 2000 WL 33957170, *1 (D.S.C. June 6, 2000)). Second, MGA may not have included privileged information on its "cover sheets" to the approximately 500 documents and emails with knowledge that those *ex parte* submissions would find their way into Mattel's hands. The disclosure of the *ex parte* submissions to Mattel *over MGA's objection* is inequitable and unduly prejudicial to MGA.

Moreover, *ex parte* submissions constitute work product and often excerpt or otherwise reference the underlying documents over which privilege is claimed. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986).

Mattel's alternative – that the *ex parte* submissions be withdrawn from the Discovery Master's consideration – is belated (not by any fault of Mattel's). It has been over one month since Discovery Matter Order No. 73 was issued and nearly four months since MGA produced the approximately 500 documents and emails for the Discovery Master's *in camera* review.

---

[1] Mattel argues that Discovery Matter Orders Nos. 33 and 50 did not order MGA to submit its supplementary submissions *ex parte* and that MGA should therefore produce for Mattel's review the two *ex parte* submissions. First, the Discovery Master did not order that MGA's *ex parte* submissions be re-submitted and served on Mattel. *See, e.g., B.F.G. of Illinois, Inc. v. Ameritech Corp.*, No. 00 C 4604, 2001 WL 1414468, *2 (N.D. Ill. Nov. 13, 2001) (ordering party invoking privilege to share its arguments with opposing party). MGA should not be punished by having to disclose sensitive or privileged information to Mattel. Second, Discovery Matter Order No. 73 suggests that the Discovery Master intended for MGA's filings to be submitted *ex parte*.

6

Depositions of critical witnesses are imminent and both parties have an interest in accessing and using documents during those depositions. Mattel and MGA can object to any subsequent Discovery Matter Order that concerns the non-production or production of any or all of the 500 documents and emails at issue. At the present time, the Court sees no reason to second-guess the Discovery Master's need for MGA's *ex parte* submissions.

## IV. Disposition

For the foregoing reasons, the Court hereby ORDERS as follows:

(1) Mattel's Objections to Discovery Matter Order No. 73 are OVERRULED.

(2) Mattel's Request that the Court Withdraw MGA's *ex parte* submissions to the Discovery Master pursuant to Discovery Matter Order Nos. 33 and 50 is DENIED.

(3) Mattel's Request that Court order the production to Mattel of MGA's *ex parte* submissions to the Discovery Master pursuant to Discovery Matter Orders Nos. 33 and 50 is DENIED.

IT IS SO ORDERED.

DATED: December 7, 2009

*David O. Carter*
DAVID O. CARTER
United States District Judge