```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3            HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 4                         - - - - - - -

 5

 6   CARTER BRYANT,                    )
                                       )
 7            Plaintiff,               )
                                       )
 8        vs.                          ) No. SACV 04-9049-DOC
                                       )
 9   MATTEL, INC.,                     )
                                       )
10            Defendant.               )
     _____)
11

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                          Motions

16                    Santa Ana, California

17                  Monday, November 16, 2009

18

19

20

21
     Jane C.S. Rule, CSR 9316
22   Federal Official Court Reporter
     United States District Court
23   411 West 4th Street, Room 1-053
     Santa Ana, California 92701
24   (714) 558-7755

25   09-11-16 Mattel
```

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR MGA ENTERTAINMENT, INC.:

 4           ORRICK, HERRINGTON & SUTCLIFFE, LLP
             BY:  THOMAS S. MC CONVILLE
 5                Attorney at Law
             4 Park Plaza Suite 1600
 6           Irvine, California 92614
             (949) 567-6700
 7
             - AND -
 8
             ORRICK, HERRINGTON & SUTCLIFFE, LLP
 9           BY:  ANNETTE L. HURST
                  Attorney at Law
10           405 Howard Street
             San Francisco, California 94105
11           (415) 773-5700

12

13   FOR MATTEL, INC.:

14           QUINN, EMANUEL, URQUHART, OLIVER & HEDGES
             By:  MICHAEL T. ZELLER
15                BRETT DYLAN PROCTOR
                  SCOTT WATSON
16                MICHAEL MOORE
                  Attorneys at Law
17           865 South Figueroa Street
             10th Floor
18           Los Angeles, California 90017-2543
             (213) 443-3000
19

20   ALSO PRESENT:

21
             PATRICK FRAIOLI, Attorney, Court-Appointed Monitor
22

23

24

25
```

**I N D E X**

MOTION BY MGA PARTIES TO VACATE RECALL PROVISION OF INJUNCTION, OR IN THE ALTERNATIVE, TO CLARIFY AND/OR MODIFY SUCH RECALL PROVISIONS; MOTION TO CLARIFY AND/OR LIMIT MONITOR'S AUTHORITY AS AN ADJUDICATIVE OFFICER OF THE COURT

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

```
 1              SANTA ANA, CALIFORNIA, MONDAY, NOVEMBER 16, 2009
 2                              (11:50 p.m.)
 3              THE COURT:  We are on the record on behalf of
 4    Mattel.
 5              MR. ZELLER:  Yes, Michael Zeller on behalf of
 6    Mattel, your Honor.
 7              MS. HURST:  And Annette Hurst on behalf of the MGA
 8    parties, your Honor.
 9              THE COURT:  Thank you.
10              Now, the Court has had an informal discussion with
11    counsel concerning the notice of deposition.  I now have
12    that notice of deposition in front of me, which includes
13    one, two, three, four, and two things are obvious to the
14    Court.  First of all -- there's two arguments.
15              First of all, from Mattel's position, and what
16    other purpose from your standpoint would there be in
17    following a person around for weeks other than strategy, not
18    a business decision?  Therefore, it would be attorney
19    product from your position, but the equally strong argument
20    is that perhaps Mattel was having a drain on their
21    personnel, so they wanted to understand who was taking their
22    trade secrets, and that then becomes a business decision.
23    What I don't know enough about your case is the timing.  In
24    other words, it's all fact intensive.  When did that occur?
25              Apparently, Mr. Brawer is your senior vice
```

```
 1   president of Mattel, and the little I know is he was hired
 2   at some point in time, apparently Mattel is concerned, hires
 3   the agency that you informally told the Court about, and
 4   after some surveillance, which you stated was approximately
 5   two weeks or more, it leads to nothing.
 6           First, what is relevant are not the total money
 7   expenditures of the investigator or investigating agency,
 8   but what is certainly relevant is the length of time, how
 9   they surveil them, how often they surveil them, all those
10   questions, the who and the how is absolutely permissible.
11           I've been trying to wrestle with the allegations
12   of bribery and narrow those as well.  And it would seem to
13   me that you -- that MGA ought to be minimally able to ask
14   specifically about money, goods, not broad enough in terms
15   of my definition, but those opportunities for bribery, and
16   you ought to be able to minimally ask about investigators
17   and experts.  I've asked you to draft some specific
18   questions so that we're not dealing with the breadth of your
19   request.  I'm a little concerned that Mattel didn't file
20   objections prior to this, but so be it.  And Mattel is about
21   to tell me why they object to each and every one of these
22   questions.
23           MR. ZELLER:  The objection has more to do with the
24   scope of these parallel one another.  And first of all, it
25   doesn't exclude consulting experts.  And of course, there is
```

```
 1    a consulting expert privilege, which I don't know of any
 2    basis that MGA has presented as to why they should be
 3    entitled to know the identity of a consulting expert, that's
 4    black letter law.
 5              Number two, this gets --
 6              THE COURT:  Because the bribes that there are may
 7    be past a consulting expert.
 8              MR. ZELLER:  I can certainly understand asking
 9    questions about money with that -- to that extent, but
10    again, saying that they are entitled to intrude upon the
11    consulting expert privilege just to go on this fishing
12    expedition, I don't think is appropriate.  I think there are
13    questions they can certainly ask.  Questions like, did money
14    go to anybody, to Mexican law enforcement?  And I'm -- and
15    also just let me say for the record, I mean, there is
16    absolutely no evidence behind any of these allegations that
17    MGA is pursuing on accusing Mexican law enforcement of being
18    bribed.  But be that as it may, they are asking these
19    questions, but certainly it doesn't not provide a basis, and
20    certainly not on this record, to invade the consulting
21    expert privilege and ask about their identities, what they
22    did, and the like.
23              Number two, there is a fair amount of circularity
24    involved in this, in these particular questions because it
25    leads us back to, what did Mattel pay lawyers?  Because
```

```
 1   these are lawyers who are also encompassed in these
 2   questions.  There may be a set of questions in which they
 3   ask questions about sums paid, if they ultimately -- if
 4   there is some item of value, money, or whatever it is, that
 5   goes to Mexican law enforcement, I think they can ask an
 6   appropriate series of questions, but these questions are not
 7   tied to them.
 8            THE COURT:  Thank you.
 9            MR. ZELLER:  Thank you.
10            THE COURT:  Counsel?
11            MS. HURST:  Your Honor, consulting experts are
12   routinely required to be identified in protective orders and
13   other situations where there are competitive concerns.  We
14   are not asking for their work product or anything like that,
15   just identification and sums paid and a very general
16   statement and the services rendered.  Same thing with
17   respect to lawyers.  They represent Mattel "servicios" in
18   connection with the preparation of pleadings and the
19   lawsuits, something like that.  It's not privileged
20   information.
21            THE COURT:  These questions seem entirely
22   appropriate.  You are going to be allowed to ask them
23   tomorrow, Counsel.
24            MS. HURST:  Thank you, your Honor.
25            THE COURT:  The second thing is I'm deeply
```

```
 1   concerned, and I think Bill Sopp (phonetic) feels the same
 2   way in San Francisco.  I have a tremendously difficult and
 3   increasing problem with what I call in-house counsel
 4   compared to outside counsel.  In-house counsel attend most
 5   board meetings, they become part and parcel of the
 6   corporation, apparently not only give advice, but also are a
 7   part of the decision-making process of many corporations.  I
 8   don't know if that's true or not with your respective
 9   corporations, yet, but I've written occasionally in this
10   area, and I can tell you when I'm dealing with in-house
11   counsel, unfortunately, I think the lines have become
12   blurred.  So I think that that's enough guidance for
13   tonight.
14           And my next question is, how are we doing with our
15   873 pages, and our redundant exhibits that seem to be
16   attached to most of these?
17           MS. HURST:  We have an agreement governing future
18   filings, your Honor.
19           THE COURT:  I want to hear the agreement.  And if
20   it meets with my approval, I'll do anything you want.  If I
21   think it's too expensive, I'll narrow it for you.  So this
22   is your opportunity.  Make sure --
23           MS. HURST:  Your Honor, for motions other than
24   summary judgment, opening brief of no more than 20 pages.
25           THE COURT:  That's acceptable.
```

```
 1               MS. HURST:  Opposition brief of no more than 20
 2    pages.
 3               THE COURT:  That's acceptable.
 4               MS. HURST:  Reply brief of no more than 10 pages.
 5               THE COURT:  That's acceptable.  Thank you.  That's
 6    what we'll do.
 7               MS. HURST:  Your Honor, no more than 50 pages
 8    total of declaration and exhibits to go with either the
 9    motion or the opposition.
10               THE COURT:  Why aren't I simply getting a summary
11    page?  And if I need more, I'll call for it.  And why aren't
12    exhibits -- and believe me, I'm just getting into your case,
13    but they seem to be redundant, many of the same exhibits
14    attached again and again.  In other words, it's just using
15    paper.
16               MS. HURST:  It's part of the agreement, your
17    Honor.
18               THE COURT:  That may be part of the agreement, but
19    I am not agreeing to that part of it.
20               MS. HURST:  Then we'll refile it and anything
21    previously filed.
22               THE COURT:  Excellent.
23               MS. HURST:  Docket numbers only, page sites, we
24    even wrote that down before we saw the order, your Honor.
25               THE COURT:  Let's do this.  Let me trust your
```

```
 1   judgment and your agreement to begin with.  I am not going
 2   to call for a summary page.  Let's see how this works.
 3              MS. HURST:  Thank you, your Honor.
 4              THE COURT:  So I'm going to bow to your wisdom.
 5   There is no reason for me to be obstinate about that.  So
 6   I'm going to take counsel's --
 7              MR. ZELLER:  What I would suggest is, with respect
 8   to the filings, even though we've now tidied them up,
 9   perhaps we resubmit them in accordance with what we agreed
10   to, as well as the Court's order today.  Obviously, we
11   assume that everything would be dealt with and be treated
12   this timely as filed.
13              THE COURT:  That's true.  Is that in agreement by
14   both parties?
15              MS. HURST:  Your Honor, I didn't want to resubmit
16   the motion for trial setting.
17              THE COURT:  Sure you do.  Remember, fresh start,
18   new judge.
19              MS. HURST:  Thank you, your Honor.  I'll resubmit.
20              THE COURT:  Let's cut it down.  I am not looking
21   at 873 pages.
22              MS. HURST:  Your Honor, it's only this big,
23   honest.  It's only an inch, not even.  May I please leave
24   that one on calendar, your Honor?
25              THE COURT:  Oh, that's the motion you previously
```

```
 1   filed that we're looking at now.
 2              MS. HURST:  Yes.
 3              THE COURT:  That's fine.
 4              MS. HURST:  Thank you, your Honor.
 5              THE COURT:  You do not have to refile that.  We
 6   are already into that process, so there is no reason to
 7   refile it because we are looking at it.
 8              MS. HURST:  Thank you, your Honor.
 9              THE COURT:  No, I apologize.  I didn't focus.
10              All right.
11              MR. ZELLER:  The rest of them, I think, are the
12   discovery kinds of motions.  We can bring those pages down,
13   as well as the additional materials that are attached,
14   drastically in light of this new standard.
15              THE COURT:  Let's just start in good faith with
16   that, and let me compliment you.  I think that if you are
17   able to control this, then I don't have to.  And I think
18   that's really a good-faith start on your part.  So I bow to
19   your wisdom.
20              Thank you.
21              Now, anything else this evening?
22              MR. ZELLER:  Not this evening.
23              THE COURT:  I'll be standing there 10 minutes to
24   8:00 waiting for you.
25              MS. HURST:  Thank you, your Honor.
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

```
1            THE COURT:  Goodnight.
2            (Recess.)
3                         -oOo-
4                       CERTIFICATE
5
6         I hereby certify that pursuant to Section 753,
7    Title 28, United States Code, the foregoing is a true and
8    correct transcript of the stenographically reported
9    proceedings held in the above-entitled matter and that the
10   transcript page format is in conformance with the
11   regulations of the Judicial Conference of the United States.
12
13   Date:  December 1, 2009
14
15
16                       _____
                         JANE C.S. RULE, U.S. COURT REPORTER
17                       CSR NO. 9316
18
19
20
21
22
23
24
25
```