QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>     vs.<br><br>MGA Entertainment, Inc., a California corporation, et al.,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>MATTEL, INC.'S OBJECTIONS TO PROPOSED ORDER SUBMITTED BY DEFENDANT GUSTAVO MACHADO |

00505.07975/3283892.3

OBJECTIONS

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTS .................................................................................................................... 3

    A.    Machado's Theft of Mattel Trade Secrets. .............................................. 3

    B.    Machado's Assertion of the Fifth Amendment...................................... 5

II.    MACHADO'S PROPOSED ORDER IS CONTRARY TO LAW .................... 8

    A.    The Fifth Amendment and Statutory Use Immunity. ............................ 8

    B.    The Court Should Not Preclude Disclosure And Use Of Machado's Testimony In A Foreign Jurisdiction On Immunity Grounds. ................................................................................................ 9

III.    MACHADO'S PROPOSED ORDER IS UNFAIR.......................................... 12

CONCLUSION..................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

In re Dual-Deck Video Cassette Recorder Antitrust Litigation,
  10 F.3d 693 (9th Cir. 1993) ........................................................................... 11

Munaf v. Geren,
  128 S.Ct. 2207 (U.S. 2008) .......................................................................... 10

Murphy v. Waterfront Commission,
  378 U.S. 52 (1964) ......................................................................................... 9

Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon,
  2009 WL 1796074 (M.D. Ga. June 23, 2009) ............................................. 11

Pillsbury Co. v. Conboy,
  920 F.2d 1462 (9th Cir. 1990) ....................................................................... 9

Press-Enterprise Co. v. Superior Court,
  464 U.S. 501 (1985) ....................................................................................... 7

United States v. Balsys,
  524 U.S. 666 (1998) ............................................................................. 8, 9, 10

Valenzuela v. U.S.,
  286 F.3d 1223 (11th Cir. 2002) ................................................................... 11

**Statutes**

18 U.S.C. § 6002 .................................................................................................. 8

## Preliminary Statement

Mattel agrees that Machado should be a testifying witness in this case, rather than refuse to answer questions on Fifth Amendment grounds. But much of the proposed order[1] that he insists on as a condition to doing what other civil litigants are obligated to do is overreaching and inappropriate.

Machado is a named defendant. He also was an executive of defendant MGAE de Mexico until recently, and his attorney's fees were long (and still may be) paid by MGA. When Machado worked at Mattel Mexico, MGA recruited him and two others, Pablo Vargas and Marianna Trueba, to leave Mattel. On their way out of Mattel and evidently even before then, the three of them downloaded and extracted thousands of pages containing Mattel trade secrets. Mattel reported the theft to Mexican law enforcement authorities, who executed a search warrant on MGA's Mexico City offices and discovered stolen Mattel trade secrets.

At his compelled deposition on October 14, 2008, Machado asserted the Fifth Amendment over 100 times, refusing to answer questions about his access to and theft of Mattel trade secrets and MGA's use of them. For well over another year, Machado maintained his invocation, including by refusing to produce documents -- a refusal that continues even now. Before last week Machado never proposed that he be granted immunity so he may testify. Nor did MGA propose that when Machado invoked. To the contrary, the MGA Parties long have refused Mattel key discovery, including Rule 30(b)(6) testimony, on the grounds that Machado was allegedly unavailable to them as a consequence of his invocation. To this day, and even in the face of this Court's recent order, MGA has failed and refused to explain how Mattel's trade secrets ended up in its Mexico City offices.

---

[1] Notice of Lodging of [Proposed] Order Directing Testimony of Carlos Gustavo Machado Gomez, dated January 13, 2010 (Docket No. 7395).

Mattel does not know why Machado's request here was not made years ago. The only apparent new fact is that, two months ago, the U.S. Attorney's Office for the Central District gave Machado a letter advising that he is not a subject of a criminal investigation related to Mattel in this District. But that hardly justifies Machado's last-minute demand for immunity. If anything, it cuts the other way: Machado would have needed immunity to testify *before* he was assured he would not be prosecuted, not once he was given that assurance. Granting immunity at this late date would reward Machado and MGA for stymieing discovery *for years* by allowing him to present his story with only weeks left before discovery ends.

Thus, Machado's circumstances do not support the extraordinary relief he seeks – and Machado has provided no authority for his proposition that the Court should grant him immunity in a civil case to which the Government is not even a party without consulting with the Government. Nevertheless, Mattel does not oppose Machado's request for domestic statutory use immunity so long as it is limited to his testimony in this action and so long as Mattel remains entitled to seek appropriate evidentiary and other rulings based on Machado's prior invocations.

Machado's proposed order seeks more than domestic statutory use immunity, however, and the remainder of the relief Machado requests as a precondition to testifying is improper and should not be granted. First, Machado does not appear to seek only use immunity as to domestic prosecutions. His proposed order would preclude the use of his testimony "in any criminal proceeding," including foreign ones such as the on-going Mexican prosecutions. The Fifth Amendment applies only to domestic prosecutions, and use immunity can be no broader than the Fifth Amendment. An order providing that Machado's testimony cannot be used in any proceeding worldwide is contrary to law and would interfere with well-established notions of international comity and sovereignty.

Second, Machado does not seek just immunity. He asks that Mattel be barred from disclosing his testimony and any other information derived therefrom beyond

this action. Machado does not even attempt to meet the substantial burden for such an extraordinary order. It also would provide Machado with incentives to falsely testify that only he, and no one else at MGA, was involved in the thefts – a tack other MGA witnesses have employed. After all, Machado would be permitted to testify without any consequences in the Mexican criminal proceedings, and his practical exposure to civil liability may be limited since he is likely to be indemnified by MGA (which has paid his fees). A disclosure bar also would be unfair because while Mattel would be precluded from using discovery in this action in the Mexican proceedings, MGA and Machado would be free to use discovery obtained from Mattel as they see fit in Mexico.

## **Facts**[2]

### **A.    Machado's Theft of Mattel Trade Secrets.**

In April 2004, Machado, Vargas and Trueba left Mattel Mexico for MGA.[3] Before they left Mattel, they stole virtually everything a competitor would want to know about Mattel's worldwide operations.[4] In addition, these employees were

---

[2] As previously directed by the Court, Mattel is not submitting full supporting documentation with these objections but will promptly provide it on request.

[3] Machado's Answer to Second Am. Answer and Counterclaims, August 13, 2007, at ¶ 38 (Docket No. 808) ("Machado Answer"); Mattel's Third Am. Answer and Counterclaims, May 22, 2009, at ¶ 48 (Docket No. 5607) ("TAAC").

[4] TAAC, at ¶ 55. The stolen information included internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products; customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and
    (footnote continued)

privy to Mattel trade secrets and confidential information that were not in written form. Machado was the "filter" for Mattel Mexico and therefore saw unreleased products in order to determine whether they should be sold in Mexico.[5]

Machado and the others were "recruited" to MGA by Isaac Larian (MGA's CEO), Thomas Park (MGA's then COO) and Susanna Kuemmerle (head of MGA's Mexican operations).[6] Emails reflect Larian's heavy involvement in the misconduct. Before Machado and the others left Mattel, Kuemmerle informed Larian that all three would all be simultaneously resigning from Mattel -- "you cant believe my smile!," she commented. Machado initially admitted (but now refuses to confirm) that in the months prior to their resignations, he and his two colleagues "discussed with MGA personnel, including Larian, employment at MGAE de Mexico" through an AOL email account with a noteworthy address, <plot04@aol.com>.[7] At his recent deposition, Larian professed to have paid no attention to that remarkable email address, even though his name appears on several <plot04@aol.com> emails.[8] Even now, the MGA Parties continue to refuse to disclose who set up the

---

strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials. Id.

[5] TAAC, at ¶ 45.
[6] TAAC, at ¶ 50.
[7] Machado Answer, at ¶ 43.
[8] E.g., Dep. of Isaac Larian, December 10, 2009, at 690:21-691:9 ("A. ... I mean Mattel put in your allegation that they had this e-mail address called -- what did you call it? Plot -- Plot 04, and that's the only time I pay attention to it. Q. Is it true then that the first time it came to your attention that there was this Plot 04 e-mail address was when it was brought up in this lawsuit? A. To the best of my recollection, that's the first time I paid attention to it. That's, again, a few years back. I don't remember otherwise.").

00505.07975/3283892.3

<plot04@aol.com> account.[9] The day after Machado left Mattel, Machado reported to Larian about the damage they had all inflicted on Mattel -- gloating that "Rome is on fire."

When Machado, Trueba and Vargas left Mattel on April 19, 2004, they refused to tell Mattel where they were going.[10] Machado's Mattel computer also mysteriously would not function after he left. Mattel investigated and discovered that Machado and the others had downloaded and stolen thousands of pages containing Mattel trade secrets. Mattel reported the theft to Mexican law enforcement officials, who subsequently executed a search warrant on MGA's Mexico City offices.[11] There, they found not only the information Mattel believed had been stolen, but thousands of other pages of proprietary Mattel information as well.[12] The Mexican government filed criminal charges against Machado, Vargas and Trueba, charging *inter alia* disclosure of information considered as trade secret. Those criminal proceedings are ongoing.

### B. **Machado's Assertion of the Fifth Amendment**

In November 2006, this Court granted Mattel leave to file amended claims that included causes of action for trade secret misappropriation against the MGA

---

[9] The Court's recent Order (on Judge Smith's Report and Recommendation) requires MGA to disclose who the <plot04@aol.com> account's owners are, but MGA has refused to comply, claiming that all information about the account's owners "is protected by the attorney-client privilege and work-product doctrine". MGA Parties' Response to December 24, 2009 Report and Recommendation of Electronic Discovery Special Master, dated January 11, 2010, at 12:8-13 (not docketed); see Report and Recommendation of Electronic Discovery Special Master, dated December 24, 2009, at 6:11-13 (requiring MGA to provide such information), entered as Court Order on January 15, 2009 (Docket No. 7404).
[10] TAAC, at ¶ 48; Machado Answer, at ¶ 41.
[11] TAAC, at ¶ 60; Machado Answer, at ¶ 53.
[12] TAAC, at ¶ 60.

Parties and Machado.[13]  Machado, who was living in California by this time[14] as a result of MGA's having promoted him despite (and perhaps because of) his theft, evaded service for months.  Once served, Machado refused to be deposed.[15]

The Court compelled Machado's deposition.[16]  During his deposition on October 14, 2008, Machado invoked the Fifth Amendment to refuse to answer questions regarding his access to and theft of Mattel trade secrets and their disclosure to MGA.  Nor would he answer questions regarding MGA's use of such trade secrets in developing or marketing Bratz or other products; he invoked the Fifth Amendment to block Mattel from discovering even such basic information as which MGA products he was involved with.  In total, Machado invoked the Fifth Amendment over 100 times.

For years, starting in 2007, Machado invoked the Fifth Amendment to refuse other discovery as well.  He refused to produce documents,[17] answer

---

[13]  Order Re Mattel's Motion for Leave to Amend, dated January 11, 2007 (Docket No. 142).

[14]  TAAC, at ¶ 61; Machado Answer, at ¶ 54.

[15]  This was a familiar pattern for the MGA Parties.  Each of their main witnesses -- including Isaac Larian and Carter Bryant -- refused to sit for deposition until repeatedly ordered by the Court to do so.  See Oct. 5, 2004 Court Order (Case No. BC 314398) (ordering Bryant to sit for deposition); Oct. 20, 2004 Court Order (Case No. BC 314398) (ordering Bryant to sit for deposition); Sept. 28, 2007 Court Order (Docket No. 1035) (ordering Bryant to appear for additional deposition time); Mar. 23, 2005 Court Order (Case No. 04-09059, Docket No. 195) (ordering Larian to sit for deposition); June 16, 2006 Court Order (Case No. 04-09059, Docket No. 230) (ordering Larian to sit for deposition); Mar. 10, 2008 Discovery Master Order (ordering Larian to sit for additional deposition time).

[16]  Order Setting Various Briefing Schedules, dated September 2, 2008, at ¶ 4. (Docket No. 4293).

[17]  E.g., Machado's Objections to Mattel's First Set of Requests for Documents and Things, dated October 15, 2007.

interrogatories[18] or answer requests for admission[19] based on the Fifth Amendment. The entirety of Machado's produced discovery -- over the past three years since he was named as a defendant -- consists of only 200 pages of filler materials such as copies of pleadings and print outs from web sites.  The MGA Parties have not filled the gaps left by Machado's failure to produce discovery and, in fact, have sought to benefit from those gaps.  The MGA Parties have refused to provide 30(b)(6) testimony on key topics such as how Mattel's trade secrets ended up in MGA's offices, including on the grounds that Machado was allegedly unavailable to them as a source of information.[20]  Even now, despite the Court's December 17, 2009 order compelling such discovery, MGA still has not provided it.[21]

In November 2009, Machado's counsel received a letter from an Assistant United States Attorney advising that Machado "is not a target or a subject in any criminal matter related to Mattel pending in the United States Attorney's Office in the Central District of California."[22]  The circumstances surrounding the issuance of this letter are not known to Mattel and have not been disclosed by Machado.

---

[18] E.g., Machado's Objections to Mattel's Fourth (As Amended) Through Seventh Set of Interrogatories, dated November 19, 2007.

[19] E.g., Machado's Responses to Mattel's Second Set of Requests for Admission, dated January 22, 2008.

[20] E.g., Dep. of Louis Small, dated December 12, 2009 at 1151:25-1152:3 (MGA counsel attempting to justify MGA 30(b)(6) witness' lack of knowledge based on Machado's invocation of Fifth Amendment).

[21] Just yesterday, upon the resumption of MGA's 30(b)(6) deposition, Mr. Small again claimed not to have the information that this Court, at the December 17, 2009 hearing, ordered MGA to disclose, including how the stolen trade secrets were delivered to MGA's offices, among other questions.

[22] Declaration of Michael T. Zeller, dated January 14, 2010 and filed concurrently herewith, Exh. A.

## Argument

## II. MACHADO'S PROPOSED ORDER IS CONTRARY TO LAW

Having received written assurance that he will not be prosecuted in the Central District, Machado appears to no longer have a "real and substantial" risk of domestic criminal prosecution, and therefore may not have any Fifth Amendment rights at this stage at all. Nevertheless, he requests that the Court grant him use and derivative use immunity under 18 U.S.C. § 6002 such that any testimony he gives in this action cannot be used against him in a criminal proceeding, regardless of jurisdiction. Machado also seeks an order that "any party to this action shall not use or disclose any testimony by [Machado] compelled under this Order, or any information directly or indirectly derived from such testimony, in any matter, other than in this action, including, but not limited to any proceedings in Mexico."

Mattel is aware of no authority for the domestic immunity Machado seeks under the circumstances presented here. But whether the Court chooses to grant that domestic immunity or not, it should not extend Section 6002 immunity to bar the use and derivative use – and even the disclosure – of Machado's testimony proceedings outside of the United States, most particularly in the criminal proceeding now pending in Mexico. Such an order would be contrary to Supreme Court precedent. Moreover, it would deny the Mexican court, sitting as trier of fact, access to all relevant evidence surrounding Machado's conduct, would prohibit Mattel from asserting its rights as a victim under Mexican law and would be contrary to well-established notions of comity and international sovereignty.

### A. The Fifth Amendment and Statutory Use Immunity.

The Fifth Amendment protects against compelled self-incrimination. In <u>United States v. Balsys</u>, 524 U.S. 666 (1998), the Supreme Court considered whether a witness may invoke the Fifth Amendment where he feared prosecution only from a foreign jurisdiction (there, Lithuania, Israel and Germany), not federal or state authorities. The Court held that the Fifth Amendment's protections do not

extend to concerns over foreign prosecutions. Id. at 673-74. Thus, a witness may invoke the Fifth Amendment based only on a fear of domestic prosecution, not foreign prosecution. Valenzuela v. U.S., 286 F.3d 1223, 1229 (11th Cir. 2002) ("[T]he Supreme Court's decision in United States v. Balsys forecloses petitioners' argument that the Self-Incrimination Clause has extraterritorial application.").

The "use or derivative use" immunity reflected in 18 U.S.C. § 6002 protects against the use of compelled testimony and evidence derived therefrom. 18 U.S.C. § 6002. Importantly, the immunity provided by § 6002 was designed "*not* to provide an 'immunity bath,' but was to be 'no broader than' the Fifth Amendment privilege." Pillsbury Co. v. Conboy, 459 U.S. 248, 253 n.8 (1983) (quoting H.R. No. 91-1549, p. 5 (1970), U.S. Code Cong. & Admin. News 1970, p. 4007); see also Murphy v. Waterfront Commission, 378 U.S. 52, 107 (1964) ("immunity must be broad as, but not harmfully and wastefully broader than, the privilege against self-incrimination") (White, J., concurring) (quoted with approval in 116 Cong.Rec. 35,291 (1971) (statement of Rep. Poff)). Thus, a grant of use immunity must be coextensive with -- but no broader than -- the scope of the Fifth Amendment privilege. Pillsbury, 459 U.S. at 254.[23]

### B. The Court Should Not Preclude Disclosure And Use Of Machado's Testimony In A Foreign Jurisdiction On Immunity Grounds.

Machado has obtained a letter from the U.S. Attorney's Office for the Central District advising that he is not a target or a subject of any criminal investigation

---

[23] For many years a witness who exchanged his testimonial silence for prosecutorial immunity could not be charged for any conduct about which he testified. Pillsbury, 459 U.S. at 252-53. This sort of "transactional immunity" was expressly repealed when § 6002 was put in place in 1970; Congress sought to make federal statutory immunity less expansive and more useful to law enforcement through the statutory changes. Id.

related to Mattel in this District. This seemingly calls into question the propriety of providing any sort of immunity protection at all, since the law generally requires a "real and substantial" risk of prosecution. Balsys, 524 U.S. at 671 n.1, 672. More fundamentally, Mattel is aware of no authority that supports Machado's request for immunity in a civil case where the Government is neither a party nor present to object. Nevertheless, Mattel does not oppose an order that would provide Machado (and Machado alone) with use immunity—as defined and construed under 18 U.S.C. § 6002—to provide further protection against domestic prosecution.

But Machado's further, overly broad request for immunity "in any criminal proceeding" is wholly improper, as is his related request for a protective order that "any party to this action shall not use or disclose any testimony by Carlos Gustavo Machado Gomez compelled under this Order, or any information directly or indirectly derived from such testimony, in any manner, other than in this action, including, but not limited to any proceedings in Mexico." Machado has cited no case supporting such restrictions, under 6002 or otherwise. Under Balsys, Machado does not have a Fifth Amendment right against self-incrimination arising from a fear of foreign prosecution. Inasmuch as Machado has no Fifth Amendment right based on criminal prosecution in Mexico, he also is not entitled to use immunity protection that extends to Mexico. Use immunity is coextensive with the scope of the Fifth Amendment; it is to be "no broader than" the Fifth Amendment. If the Fifth Amendment privilege is not triggered by the threat of prosecution in Mexico, then an order of statutory immunity limiting use of Machado's testimony also cannot extend to the Mexican prosecution. Nor should it: principles of international comity and foreign sovereignty would be offended by an Order providing that certain evidence is not admissible in a foreign proceeding. See, e.g., Munaf v. Geren, 128 S.Ct. 2207, 2224 (U.S. 2008) ("the same principles of comity and respect for foreign sovereigns that preclude judicial scrutiny of foreign convictions

necessarily render invalid attempts to shield citizens from foreign prosecution in order to preempt such nonreviewable adjudications.") (citation omitted).[24]

Moreover, Machado has not even attempted to justify his proposed sealing order barring disclosure of his testimony under traditional protective order principles. Protective orders are designed to safeguard sensitive information, not to hide evidence from other courts. See, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 696 (9th Cir. 1993) ("Privacy of proprietary information, not immunity from suit, was the legitimate purpose of the protective order."). Machado will have to testify at trial in this case; he has not justified his demand that his testimony, both at deposition and at trial, be sealed from the world. Such a sealing Order could offend the First Amendment. See Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon, 920 F.2d 1462, 1465 (9th Cir. 1990) ("Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents. … This presumed right can be overcome only by an overriding right or interest 'based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'") (citing Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1985)).[25]

---

[24] The proposed order also purports to block Mattel's use of Machado's testimony against Vargas, Trueba and MGA in any other proceeding, including in Mexico. That turns Section 6002 on its head. Immunity is not granted to a witness to prevent his or her testimony from being used against others; quite the opposite.

[25] In order to give the trier of fact in the Mexican prosecution access to all the relevant evidence, the Mexican court could order disclosure of Machado's testimony. Mattel would then be in an unfair box: compliance in Mexico would be a contempt before this Court, and Mattel's failure to comply in Mexico would be a violation of that court's order.

Machado's request for immunity from foreign prosecution and to seal his testimony and evidence derived therefrom should be rejected.

### III. MACHADO'S PROPOSED ORDER IS UNFAIR.

The proposed order's provisions seeking protections beyond domestic use immunity for Machado are also inherently unfair. Mattel's claims in this litigation against the MGA Parties and Machado based on Machado's misconduct have been pending since November 2006. MGA and Machado have offered no explanation for their failure to make an immunity request long ago, when Machado first began invoking in 2007 and 2008.[26] In the intervening years, Machado has refused to respond to discovery based on his invocation of the Fifth Amendment repeatedly. MGA has stonewalled Mattel on discovery into Machado's conduct, including by taking refuge in Machado's assertions of the Fifth Amendment. With only weeks of the discovery period remaining, Machado's eleventh hour sand-bagging tactics would reward Machado and MGA -- which long employed him as an executive and paid his attorney's fees -- for stymieing discovery for years and deny Mattel an effective opportunity to obtain follow-up discovery to challenge whatever story Machado presents. MGA is continuing to obstruct such discovery, including yesterday during the resumption of its 30(b)(6) deposition. And, even now, Machado has given no indication that he will produce documents or any other of the discovery he has been withholding on supposed Fifth Amendment grounds.

Further, by protecting Machado from criminal consequences in Mexico for his actions as revealed by his testimony, the proposed order would provide Machado with incentives to present false testimony. This includes, in particular, false

---

[26] Nor is there any explanation why Machado also delayed for another two months before even disclosing the existence of the November non-prosecution letter and making his present request for immunity.

testimony that seeks to maximize Machado's own culpability in an effort to exculpate MGA and his other fellow MGA executives who are potentially subject to prosecution and/or civil liability. After all, Machado would be assured that his testimony would risk no criminal liability in Mexico, and U.S. civil remedies against him individually are potentially limited since MGA likely will indemnify him and whatever assets he has are likely outside the U.S. Nor is this a hypothetical scenario. Other MGA personnel have repeatedly interjected into their testimony sweeping exculpatory statements about MGA while simultaneously blocking any cross-examination into the facts supposedly supporting the statements, including by invoking the Fifth Amendment.[27]

Equally troubling, the proposed order would preclude use of "any information directly or indirectly derived from such testimony." This proviso evidently is intended to mean that even information subsequently obtained *from MGA* that came to light after Machado's deposition is subject to being suppressed from any and all other proceedings; this will create protracted and pointless disputes over what of MGA's information was "directly or indirectly derived from" Machado's testimony. Extending such protections to MGA is unsupported by authority, and is neither fair nor supported by the purpose or language of Section 6002.

---

[27] E.g., Dep. Tr. of Jorge Castilla, October 22, 2008, at 376:25-380 (after refusing to answer hundreds of questions posed by Mattel's counsel on Fifth Amendment grounds, MGA manager answers questions posed by MGA's counsel that purport to exonerate MGA from involvement in trade secret theft and then invokes further in response to questions by Mattel's counsel relating to his answers); Dep. Tr. of Peter Marlow, May 2, 2008, at 79:5-83:15 (MGA vendor attempting to exculpate MGA from involvement in pattern of bribery of three Mattel employees who worked on Bratz that spanned a five-year period while refusing to answer other questions on Fifth Amendment grounds).

Last, the proposed order would create an imbalance. While Machado's request would bar Mattel from using discovery in this action in the Mexican criminal proceedings, MGA and Machado would remain free to use as they see fit in Mexico any and all discovery obtained from Mattel in this litigation. Indeed, because the proposed order applies to "parties," the proposed order apparently would allow Vargas and Trueba to use in the Mexican proceedings even the very Machado deposition transcript and other discovery that Mattel would be barred from using. These imbalances sought by the proposed order are untenable.[28]

### Conclusion

For the foregoing reasons, the proposed Order submitted by Machado should issue, if at all, only if modified as discussed herein.

DATED: January 16, 2010         QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[28] Many of the proposed order's unfairness problems are intrinsic and cannot be avoided by simply modifying it. Nevertheless, to the extent the Court is inclined to grant Machado's request to unduly restrict Mattel's use of his statements in Mexico, then the MGA Parties and all of their current and former employees (including Machado, Vargas and Trueba) should equally be prohibited from using in the Mexican proceedings any of the discovery taken in this case, including from Mattel's witnesses. This at least fosters the fundamental notions of fairness that the discovery process is designed to promote and that the justice system seeks to protect. To avoid any later arguments about the Court's ability to preclude their use of discovery obtained in this case, the Court also should condition the issuance of any order for Machado on Vargas' and Trueba's unequivocal acknowledgement that they are subject to the jurisdiction of this Court for this purpose.