# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., ) | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff(s), ) | |
| v. ) | **O R D E R** REGARDING<br>**DISCOVERY MATTERS** |
| MGA ENTERTAINMENT, INC., ) | |
| Defendant(s). ) | |

Before the Court are a number of discovery disputes pending between Plaintiff Mattel, Inc. ("Mattel") and Defendants MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian"). Defendants MGA and Larian are collectively referred to herein as the "MGA Parties" or "Defendants". The disputes were first introduced to the Court's attention during two hearings on January 9, 2010 and January 10, 2010. During the hearings, the parties submitted arguments on nearly thirty pending discovery disputes and the Court instructed the parties to submit, for the Court's review, a list of pending disputes, as well as a list of disputes that the parties had resolved by stipulation. On January 12, 2010, Mattel, Inc. lodged a "[Proposed] Order Re: Discovery," and the MGA Parties lodged a "[Proposed] Stipulation And Order Re

Discovery Matters Submitted by MGA Parties." On January 14, 2010, Mattel lodged its "Response to MGA's Revisions to Proposed Order Re Discovery." The parties disagree about the proper resolution of approximately twenty four discovery matters.

### 1.     Issue 1: Bank Records Relating to Omni 808 Transaction

The parties dispute whether IGWT Group, LLC and IGWT 826 Investments, LLC (collectively the "IGWT entities"), which are two non-parties that are purported participants, whether directly or indirectly, in the Omni 808-Wachovia transaction, should be compelled to produce banking records that identify bank account numbers in full. The parties further dispute the use and consequence(s), if any, of the disclosure of such bank account information.

Strong confidentiality interests permit the IGWT entities to protect full bank account numbers. However, both Mattel and the MGA Parties agreed at the hearing that information pertaining to the Omni 808 transaction is relevant and discoverable. However, Mattel's proposed language that "[i]n the event that any digits of a bank account number are redacted, the party producing the document is conclusively barred from asserting in any manner that there is any ambiguity as a result of such redaction . . ." is premature and puts the MGA Parties and the IGWT entities in the position of having to choose between keeping bank account numbers confidential and asserting a (potentially) viable defense. In the event that the MGA Parties elect to assert any such defense, the Court may exercise its discretion and require production of the full account number or, in the alternative, may sustain an objection by Mattel as to the assertion of any such defense. For the time being, and in light of the fact that the MGA Parties have not indicated an intent to assert such a defense, the Court need not rule on the issue. The dispute with respect to the notice, if any, afforded to the parties prior to obtaining a subpoena is likewise premature. The parties may apply *ex parte* for: (1) the production of a complete bank account number; and/or (2) a subpoena to be served on any financial institution.

Accordingly, the Court hereby ORDERS that: **Mattel, the MGA Parties, and the IGWT entities shall not redact or withhold bank account, wire account or other financial information from their documents produced in discovery or from other discovery disclosures (except to the extent as provided below), and all previously produced materials**

1 **with such redactions shall be produced without redaction on or before February 2, 2010.**
2 **Such information may properly be designated as Attorney's Eyes Only under the**
3 **Protective Order. In the case of bank account numbers, and bank account numbers only,**
4 **the last four digits of the account shall not be redacted, although the other digits of the**
5 **bank account numbers may be.**

6     **2.**     <u>**Issue 2: Production of Fee and Indemnity Agreements**</u>

7     The parties dispute whether the production of fee and indemnification agreements must
8 also include documents relating or referring to such fee and indemnification agreements. The
9 Court considers the prior orders by Judge Larson inconsequential to its resolution of this issue
10 because: (1) those prior orders did not contemplate Mattel's reciprocal obligations; and (2) those
11 prior orders independently bind the MGA Parties to produce the documents discussed therein.
12 Indeed, the MGA Parties represented to the Court at the January 10, 2010 hearing that they
13 would produce the Carter Bryant fee and indemnification agreement to Mattel on or before
14 January 11, 2010.

15     Notwithstanding the above, the Court considers such fee and indemnification agreements,
16 including documents referring or relating to them, relevant to the issues of bias and control.
17 Accordingly, the Court ORDERS that **Mattel and the MGA Parties shall, on or before**
18 **February 2, 2010, produce all nonprivileged documents referring or relating to fee and/or**
19 **indemnity agreements concerning Carter Bryant and/or Pablo Vargas, including the**
20 **agreements themselves, as well as any demands for payment and/or indemnification.**

21     **3.**     <u>**Issue 3: Financing Applications**</u>

22     The parties have stipulated as to the language with respect to this topic. Accordingly, the
23 Court hereby ORDERS that **the MGA Parties shall, on or before February 2, 2010, produce**
24 **to Mattel all non-privileged documents referring or relating to any effort to obtain credit**
25 **or other funding or financing on or after January 1, 2007, including without limitation all**
26 **financial information provided to banks or financial institutions.**

27     **4.**     <u>**Issue 4: Net Worth**</u>
28     In light of the parties' representations, the Court hereby ORDERS that **the MGA Parties**

1 **shall, on or before February 2, 2010, produce to Mattel all non-privileged documents**
2 **referring or relating to their net worth, including the net worth of Isaac Larian, for any**
3 **time period on or after January 1, 2007. Such information may properly be designated as**
4 **Attorney's Eyes Only under the Protective Order.**

### 5. Issue 5: Documents containing financial information

The parties disagree as to whether the MGA Parties should be required to produce cash flow reports and monthly statements of operations in addition to audited and unaudited financial statements, balance sheets, and profit and loss statements. The Court fails to see a relevant distinction between the types of financial documents that the MGA Parties object to and those that the MGA Parties do not object to. Accordingly, the Court hereby ORDERS that **the MGA Parties shall, on or before February 2, 2010, produce to Mattel all audited and unaudited financial statements, balance sheets, profit and loss statements, cash flow reports, and monthly statements of operations for any time period on or after January 1, 2007.**

### 6. Issue 6: Agreements to Transfer Funds or Pay Fees

The parties dispute the extent to which the MGA Parties should produce documents concerning the relationship, if any, between the MGA Parties, the IGWT entities, and other Omni 808 investors. First, the inclusion of "other item[s] of value" in Mattel's proposed order is entirely appropriate, in light of the fact that it reflects the relationship, if any, between the Omni 808 investors and the MGA Parties. Second, the inclusion of language with regard to current and former members of the Omni 808 investors is likewise relevant to the determination of how and whether any consideration was received from the MGA Parties for Omni 808's transaction with Wachovia. Third, the restriction to legal fees connected with this litigation is also obstructive to relevant discovery. Nonetheless, Mattel's proposed inclusion of language reflecting prior requests for production is unnecessary – Mattel can seek to compel responses by separate Motion filed with this Court in accordance with Court's Minute Order re filing procedures. Accordingly, the Court hereby ORDERS that **the MGA Parties shall, on or before February 2, 2010, produce to Mattel all non-privileged documents relating to any actual, promised, proposed or prospective transfer of money or any other item of value to, from or**

1 **involving Omni 808 Investors, LLC, any of its current or former members and/or anyone**
2 **with an interest in those current or former members.  Without limitation, this includes all**
3 **documents referring or relating to the payment of any legal fees for or on behalf of any of**
4 **the foregoing.  This paragraph shall apply to the IGWT entities.**

**7.     Issue 7: Communications regarding alleged theft of trade secrets**

The parties dispute the scope of discoverable communications regarding the theft of any Mattel trade secrets.  First, the Court notes that communications in the MGA Parties' possession that were made by former employees of the MGA Parties are discoverable, as they fall within the time period contemplated by Mattel's RICO allegations.  Second, Mattel's RICO allegations are clearly broader than any "investigation or prosecution initiated by Mattel" in Mexico, which is the limiting language proposed by the MGA Parties.

Accordingly, the Court hereby ORDERS that **the MGA Parties shall, on or before February 2, 2010, produce to Mattel all communications by or on behalf of any of the MGA Parties with law enforcement in Mexico, Canada, and/or the United States that refer or relate to any alleged theft or taking of alleged Mattel confidential or trade secret information by MGA or persons currently or formerly employed by MGA or any other allegation contained in Mattel's claims in this action.**

**8.     Issue 8: Payments for Attorney's and Investigators**

The parties appear to disagree as to the breadth of this discovery request.  The Court notes that if Mattel is unsatisfied with the extent of the MGA Parties' production, which will be due by an earlier date, then Mattel may move the Court to compel further production in line with Mattel's proposed order.  Accordingly, the Court hereby ORDERS that **Mattel and the MGA Parties shall, on or before February 2, 2010, produce all documents reflecting invoices from and payments made directly or indirectly to any vendors or any other person or entity in Mexico, including without limitation attorneys, law firms, expert witnesses, translators and consultants in, as well as any payments made by such attorneys, law firms, expert witnesses, translators and consultants in Mexico, relating to any actual or potential investigation or prosecution of Pablo Vargas, Mariana Trueba, Gustavo Machado, MGAE**

**de Mexico S.R.L. de C.V., Isaac Larian or Jahangir Makabi in connection with Mattel's claims of theft of industrial secrets and damage of computer property. The content of bills for legal fees need not be produced pursuant to this Order.**

**9. Issue 9: Documents with respect to theft of trade secret claims**

The Court notes that it already provided direction to the parties during the hearings. Accordingly, the Court hereby ORDERS that **the MGA Parties shall, on or before February 2, 2010, produce to Mattel documents sufficient to show, by product, the gross and net price of products sold by the MGA Parties during and for the six month time period before and the six month time period after Vargas, Trueba and Machado left Mattel**.

**10. Issue 10: Forecasting and Inventory Systems**

The parties dispute whether the MGA Parties should produce forecasting and inventory systems that were "considered, contemplated, or discussed" after Castilla began working for MGA. The potential for Mattel's misuse of this information is tremendous. Accordingly, the Court hereby ORDERS that **Mattel and the MGA Parties shall, on or before February 2, 2010, produce documents sufficient to demonstrate and describe the function and method and manner of operation of any forecasting or inventory system or process used by them at any time during the six month time period before and the six month time period after Castilla began working for MGA. Mattel and the MGA Parties shall further produce, for the Court's *in camera* review, documents sufficient to demonstrate and describe the function and method and manner of operation of any forecasting or inventory system or processed considered, contemplated or discussed by them during the subject time period.**

**11. Issue 11: Investigation Files**

The parties dispute which investigation files Mattel should produce for the Court's *in camera* review. Specifically, Mattel objects to the inclusion of one file that Judge Larson deemed privileged. The Court recognizes that discovery into the investigation file in question may have been properly rejected. However, the Phase 2 causes of action have been clarified since Judge Larson's order. Accordingly, the Court hereby ORDERS that **on or before February 2, 2010, Mattel shall produce to the Court for *in camera* inspection the following**

1 **investigation files from Mattel's Security Department: Investigative files 02-115, 02-299**
2 **(related to 02-115 per M 0074310), 03-664 as well as "Confidential" Case Package**
3 **referenced at M 0074403, 02-1680, 03-034, 04-0287, 04-423, 05-0579, 06-0147, as well as the**
4 **investigative files concerning Dan Cooney, Dan King, Nick Contreras, and any**
5 **investigation of allegations that MyScene or Acceleracers violated any rights of MGA in:**
6 **(1) the form in which they were produced to MGA; and (2) a complete form including all**
7 **assertedly non-privileged materials.**

      **12.**    **Issue 12:  Communication concerning Investigation Files**

The parties' dispute as to this issue is, in part, resolved by the Court's consideration of Issue 11.  In addition, the parties' dispute as to whether the communications should include e-mails received by the designated Mattel employees should be resolved in favor of the MGA Parties because: (1) the partial production of e-mail threads that omits incoming e-mails would remove context to any exchange; and (2) the incoming e-mails are no less relevant than outgoing emails and are not distinguishable as a matter of law.  Accordingly, the Court hereby ORDERS that **Mattel shall, on or before February 2, 2010, produce to the MGA Parties: (a) all non-privileged e-mails generated or received by Mr. Elias, Mr. De Anda, Mr. Simoneau and other members of Mattel's Security Department in the course of and in connection with investigations by Mattel's Security Department on all matters related to the investigative files set forth in item 11 hereof; and (b) submit to the Court any emails for *in camera* inspection that are withheld on privilege or work product grounds.**

      **13.**    **Issue 13: Video Footage**

The parties dispute whether Mattel should be required to produce video footage of individuals other than Ron Brawer.  The Court does not recall this issue being raised at the January 9 and January 10 hearings.  Accordingly, the Court restricts the ruling, but grants the MGA Parties leave to file a Motion, in accordance with the Court's Minute Order re filing procedures, not to exceed five (5) pages, requesting the Court to compel the production of other videotapes.  Should the MGA Parties file such a Motion, the Court will set an accelerated briefing and hearing schedule, for a hearing at which all lead counsel shall be present.

Accordingly, the Court hereby ORDERS that **Mattel shall, on or before February 2, 2010, produce to the MGA Parties copies of all video used to construct the compilation video produced at M 0079230, as well as copies of all other video taken of Mr. Ron Brawer subsequent to his departure from Mattel.**

### 14. Issue 14: List of Misappropriated Documents

It is the Court's recollection that the list of documents requested by the MGA Parties was relevant, insofar as it clarified certain deposition testimony given by Mr. Elias. Accordingly, the Court hereby ORDERS that **Mattel shall, on or before February 2, 2010, produce to the MGA Parties any written list, and/or any document(s) comprising a list, of the documents and/or file names on the CD seized in connection with the execution of the Mexican search warrant at the MGAE de Mexico office that was provided to Mr. Elias.**

### 15. Issue 15: Operation of Purported Security Device

The parties dispute whether the discovery of any emails captured by a purported Mattel security device and that use the terms "MGA," "Bratz," and/or "Mr. Larian" is overbroad. The Court notes that this issue was not raised at the January 9 and January 10 hearings and that the MGA Parties may move for an order compelling the production of such emails in accordance with the filing procedures outlined by the Court's Minute Order. Accordingly, the Court hereby ORDERS that **Mattel shall, on or before February 2, 2010, produce to the MGA Parties documents sufficient to describe and explain the operation of the security device testified to in the Elias deposition. Any documents withheld on privilege grounds shall be submitted for the Court's *in camera* review.**

### 16. Issue 16: Hard Drive Analysis

The parties dispute whether Mattel must produce the analysis that was the subject of testimony by Mr. Elias. The Court recognizes that this issue was not raised at the January 9 and January 10 hearings, but fails to see the basis for Mattel's objection: after all, the third clause of the proposed stipulation would appear to encompass such a report. To the extent that Mattel suggests that some privilege protects the harddrive analysis (a dubious suggestion), the credibility of that claim can be tested by an *in camera* review. Accordingly, the Court hereby

1  ORDERS that **Mattel and the MGA Parties shall produce, on or before February 2, 2010,**
2  **any analysis or reports pertaining to any hard drive of Ron Brawer, including but not**
3  **limited to the analysis that was the subject of the deposition testimony by Mr. Elias.  To the**
4  **extent that any such report or analysis is withheld on privilege grounds, the withholding**
5  **party shall submit the purportedly privileged documents to the Court for *in camera* review**
6  **on or before February 2, 2010.**

      **17.     Issue 17:  Agreements with Pablo Vargas**

The parties dispute whether the MGA Parties should be required to produce designated agreements "referring or relating" to Pablo Vargas, instead of designated agreements "with" Vargas.  The Court recognizes that the production of such documents is relevant to bias.  At the same time, agreements with other individuals that refer to Pablo Vargas fail to reflect upon the bias, if any, of Vargas himself.  Nonetheless, the parties failed to contest this issue at the January 9 and January 10 hearings and so, the Court affords them the opportunity to submit such documents for its *in camera* review.  Accordingly, the Court hereby ORDERS that **Mattel and the MGA Parties shall, on or before February 2, 2010, produce any confidentiality, cooperation, fee and/or indemnification agreement(s) with Pablo Vargas.  Mattel and the MGA Parties shall further produce, on or before February 2, 2010, any confidentiality, cooperation, fee and/or indemnification agreement(s) referring or relating to Pablo Vargas, OR, in the alternative, submit such agreement(s) referring or relating to Pablo Vargas for the Court's *in camera* review on or before February 2, 2010.**

      **18.     Issue 18: Documents relevant to Eckert's continued deposition**

The parties dispute whether Mattel shall produce documents responsive to MGA's Fourth Set of Phase 2 Document Requests prior to the resumed deposition of Mr. Eckert on February 22, 2010.  The Court's recollection is that the extent of the parties' discussion at the January 9 and January 10 hearings was that the MGA Parties requested documents identified by Eckert at his prior deposition, as well as reports generated by Eckert that were referred to during that deposition.  The Court tentatively granted this request at the January 10 hearing.  Accordingly, the Court hereby ORDERS that **at least one week in advance of the resumption of Mr.**

1 **Eckert's deposition on February 22, 2010, Mattel shall produce all nonprivileged**
2 **documents previously identified by Eckert during his deposition, as well as any reports**
3 **generated by Eckert that he referred to during his deposition.**

### 19. Issue 19: NHB Documents

The parties dispute the extent to which internal Mattel documents containing a code-term for MGA – "NHB" – should be produced. Given the lack of clarity as to the parties' positions on this issue, the Court, in line with its tentative ruling at the January 10 hearing, hereby ORDERS that **Mattel shall, on or before February 2, 2010, produce all documents referring or relating to NHB. To the extent that Mattel withholds any documents on grounds of privilege, it shall submit these documents to the Court for its *in camera* review on or before February 2, 2010.**

### 20. Issue 20: Nick Contreras and Susan Kim Documents

The parties have reached an agreement as to this issue. Accordingly, the Court hereby ORDERS that **Mattel shall, on or before February 2, 2010, produce all non-privileged Mattel communications with Susan Kim regarding Nick Contreras' alleged request that she provide him with materials on a thumb drive.**

### 21. Issue 21: Removal of Products from Shelves

The parties dispute certain reciprocity requirements as to the prodution of privileged documents. The Court has already instructed the parties that any restrictions will apply equally. Accordingly, the Court hereby ORDERS that **Mattel shall, on or before February 2, 2010, produce to the MGA Parties all non-privileged documents evidencing any instruction or suggestion by Mattel (or anyone it controls) to remove MGA products from retail shelves or to alter the position of such products on retail shelves (e.g., put them in the back), or reflecting any indication that such acts were performed by someone subject to Mattel's control. The scope of this request is worldwide. The scope of this request does not include attorney communications related to the recall ordered by the Court's December 3, 2008 orders.**

The Court further ORDERS that **the MGA Parties shall, on or before February 2,**

**2010, produce to Mattel all nonprivileged documents referring or relating to any alleged removal of MGA products from the shelves by Mattel (or anyone it controls) or to alter the position of such products on the shelves (e.g., put them in the back) by Mattel or anyone it controls, or reflecting any indication that such acts were performed by someone subject to Mattel's control.  The scope of this request is worldwide.  The scope of this request does not include attorney communications related to the recall ordered by the Court's December 3, 2008 order.**

IT IS SO ORDERED.

DATED: January 26, 2010

_____
DAVID O. CARTER
United States District Judge