QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF OPPOSITION TO DISCOVERY OF ONGOING VARGAS SETTLEMENT NEGOTIATIONS<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br><br>**Phase 2**<br><br>Discovery Cutoff: TBD<br>Pre-trial Conference: TBD<br>Trial: TBD |

00505.07975/3305340.1

MATTEL'S REPLY ISO OPPOSITION TO DISCOVERY OF ONGOING SETTLEMENT NEGOTIATIONS

**PRELIMINARY STATEMENT**

Disclosure of ongoing discussions regarding potential settlement between Mattel and Pablo Vargas San Jose that have not resulted in any settlement is unwarranted. In urging otherwise, MGA seeks to create an artificial distinction between a "witness" or "non-party," whose communications purportedly are open season, and a party engaged in settlement discussions. This distinction is unavailing. Vargas is, in fact, a party to the criminal proceedings in Mexico which could be resolved if he and Mattel reach a settlement. Settlement communications between parties to other lawsuits have been routinely protected from disclosure.

MGA's opposition, moreover, is premised on the faulty assertion that the Confidentiality Agreement indicates that Vargas will provide Mattel information *separate and apart* from their ongoing settlement negotiations. Under the Agreement, precisely the opposite is true.[1] MGA similarly inexplicably claims that Mattel never argued that disclosure would cause *actual* harm, even though Mattel has indeed stated that disclosure risks "disrupt[ing] the settlement process ….," See Mattel Br. at 4.

In addition, MGA's opposition is devoid of any persuasive authority – indeed it barely offers any case law at all – to rebut Mattel's position that in the absence of any final agreement, ongoing, inchoate settlement communications between Vargas and Mattel have no relevance or probative value.

In short, MGA fails to justify its disclosure request, and it should be denied.

---

[1] As Mattel has made clear, it is not asserting the Confidentiality Agreement as a basis for denying disclosure. Rather, Mattel opposes discovery into the content of ongoing, uncompleted settlement discussions as irrelevant because they have not resulted in an actual settlement agreement and as bad policy because it would chill potential settlement. Mattel recognizes that once -- and if -- there is an actual settlement with Vargas, it will become relevant and thus be produced, as was the Bryant settlement agreement. Ironically, the only party that continues to deliberately withhold documents relating to actual indemnity, fee and similar agreements with key witnesses is MGA.

# ARGUMENT

## I. MGA CANNOT REBUT MATTEL'S SHOWING THAT ONGOING SETTLEMENT DISCUSSIONS SHOULD NOT BE DISCOVERED

MGA spends most of its opposition attacking an argument Mattel does *not* make – that Federal Rule of Evidence 408 "is not a rule of discovery" but "is a rule concerning admissibility." MGA Opp. at 6. This recitation is meaningless since Mattel never claimed that Rule 408 is an "absolute ban on all evidence regarding settlement negotiations." Id. Indeed, such a conclusion is belied by this Court's ruling that Carter Bryant's settlement agreement was discoverable – a determination Mattel itself pointed out. Mattel Br. at 3.

At the same time, MGA ignores the argument Mattel *does* make – that a heightened balancing test is required for discovery of ongoing, confidential settlement communications. MGA neither rebuts this standard nor demonstrates how it is met. Indeed, although at the hearing on January 7, 2010, MGA initially told the Court disclosure was required to demonstrate control or bias, MGA *never mentions* such rationales in its opposition. On this basis alone, MGA's request should be denied.

After backpedaling from these assertions, MGA resorts to a "fairness" argument that it is "entitled to know what discovery and information Vargas is providing to Mattel" and "MGA is entitled to know what Mattel is saying to Vargas." Opp. at 7. This vague and amorphous rationale cannot even begin to satisfy the heightened scrutiny and particularized showing of relevance required for disclosure of ongoing settlement negotiations. Although MGA seeks to minimize the uncertain nature of these negotiations, the fact remains that no final agreement has been reached, and no certainty exists as to whether Vargas will ever reach a settlement or cooperate. As a result, the inchoate settlement communications between Vargas and Mattel are not relevant, and premature disclosure would have a chilling and disruptive effect and quite likely torpedo any prospect of settlement.

1  Perhaps that is MGA's goal, but this Court should not be used as a conduit for such
2  an inappropriate tactic. As is clear from its submission, MGA's disclosure request
3  is unwarranted.

## II. MGA'S ATTEMPTS TO RECHARACTERIZE THE ONGOING DISCUSSIONS REGARDING SETTLEMENT FAIL

MGA disputes that Mattel and Vargas are engaged in "settlement negotiations" because Vargas purportedly is merely a "witness" in the dispute between MGA and Mattel. Opp. at 3. This assertion is baseless. It is undisputed that Mattel and Vargas are engaged in settlement negotiations for purposes of determining whether the criminal proceeding against Vargas could be terminated. Indeed, the Confidentiality Agreement recites that the talks cannot be used to "imply or … imply in the future the assumption that the victims are willing to grant a pardon in favor of Mr. Vargas or any other defendant or parties, since only *final settlement* with each of them could eventually establish that in favor only of the individual or individuals that could take part in the said *final settlement*." (Confidentiality Agreement) (emphases added). In other words, the only significance of these discussions is to arrive at a *settlement.* MGA's unsupported effort to cast these negotiations as something other than "settlement negotiations" is contrary to the facts.

Moreover, even if Vargas were a "non-party" or a "witness," the case law does not support the distinction MGA offers and would not *ipso facto* justify disclosure of ongoing settlement communications. For instance, in Flynn v. Portland Gen. Elec. Corp., 1989 U.S. Dist. LEXIS 11219 (D. Or. Sept. 21, 1989), the court enforced the confidentiality provisions of a settlement agreement defendant had reached in another case and refused to allow plaintiffs to subpoena an attorney to testify concerning matters within the scope of the settlement agreement's confidentiality provision. Similarly, in Kalinauskas v. Wong, 151 F.R.D. 363 (D. Nev. 1993), a plaintiff sought information concerning a confidential settlement

agreement the defendant had previously reached with a third party in a similar lawsuit. The court enforced the confidentiality agreement and ruled that plaintiff could question the third party as to relevant factual matters, but could not inquire into the confidential settlement with defendant. MGA's claim that Vargas is a "non-party" or a "witness" is thus of no moment.

In addition, throughout its brief, MGA erroneously assumes that Mattel is seeking to bar disclosure because it "is using those conversations with Vargas to obtain information relevant to this case." MGA Opp. at 4. As its sole support for this presumption, MGA argues that the Confidentiality Agreement "contemplates *both* that there will be negotiations *and* that Mattel will obtain information." Id. (emphasis added). In arguing that the Confidentiality Agreement supports disclosure, however, MGA misstates the plain terms of the Confidentiality Agreement in several respects. It overlooks the express language and sentence structure of the Agreement which makes clear that the information exchanged is "*pursuant* to these negotiations." (Confidentiality Agreement) (emphasis added). "Pursuant" means "to execute or carry out in accordance with or by reason of something." Henry Campbell Black, BLACK'S LAW DICTIONARY 647 (5th ed. 1983). In this case, that "something," under the terms of the Agreement, is the settlement discussions. Hence, information will only be exchanged in order to "execute or carry out" the settlement – not to further any other purpose including the Mattel-MGA civil action.

Indeed, MGA's asserted distinction between "negotiations" and "information" is a red herring. Nothing in the Confidentiality Agreement's allowance that the parties can use information *independently obtained* either prior to, or after, commencement of settlement negotiations changes the fact that the parties are engaged in ongoing settlement discussions. Nor does the Agreement's provision that the parties may communicate the content of the discussions to their attorneys transform the negotiations into a fishing expedition for Mattel's civil suit

with MGA.  Quite the opposite, the Agreement expressly requires "all the participants [to] assume their obligation to keep the strictest confidentiality of the *negotiations* to be carried out and information exchanged *pursuant to these negotiations*."  Id. (emphases added).  Likewise, MGA's claim that "Mattel has not agreed that it will not use any information provided to it by Vargas" in the civil case, (MGA Opp. at 6), ignores the plain terms of the Confidentiality Agreement, which require the parties to keep such communications confidential.[2]

In short, MGA's assertions that disclosure is warranted because Vargas is not truly engaged in settlement discussions and/or that the Confidentiality Agreement itself justifies disclosure should be rejected.

## Conclusion

For the reasons stated, MGA's disclosure request should be denied.

DATED: February 2, 2010     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

---

[2]  MGA's claim that Mattel's enforcement of the Confidentiality Agreement violates the Rules of Professional Responsibility is baseless.  This is not a case in which an attorney is encouraging a party to become an "unavailable" witness, (MGA Opp. at 5-6), or otherwise obstruct the judicial process.  Parties voluntarily enter into confidential settlement negotiations every day and courts routinely uphold such agreements.  See Baker v. General Motors Corp., 522 U.S. 222, 239 (1998) (finding nothing wrong with an agreement that "could operate against [a non-party] to preclude him from *volunteering* his testimony.") (emphasis in original); Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932 (9th Cir. 1993) (reversing dismissal of plaintiff's claim for violation of confidentiality agreement that prevented disclosure of documents and information produced by plaintiff in prior proceeding).  Taken to its logical conclusion, MGA's ethics argument would topple a central practice of the legal profession – entering into, and enforcing, confidentiality agreements.  Clearly, the ethics laws do not compel such an absurd result.