SACV 04-9049-DOC - 01/06/2010

1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                    - - - - - - -

5

6  CARTER BRYANT,                    )
                                     )
7           Plaintiff,               )
                                     )
8       vs.                          ) No. SACV 04-9049-DOC
                                     )
9  MATTEL, INC.,                     )
                                     )
10          Defendant.               )
   _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  Status Conference

16               Santa Ana, California

17           Wednesday, January 6, 2010

18

19

20

21  Jane C.S. Rule, CSR 9316
22  Federal Official Court Reporter
    United States District Court
23  411 West 4th Street, Room 1-053
    Santa Ana, California 92701
24  (714) 558-7755

25  10-01-06 Mattel

        JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

1    **APPEARANCES OF COUNSEL:**

2

3    FOR INTERVENOR DEFENDANT MGA ENTERTAINMENT, INC.:

4            ORRICK, HERRINGTON & SUTCLIFFE, LLP
             BY:  THOMAS S. MC CONVILLE
5                 Attorney at Law
             4 Park Plaza Suite 1600
6            Irvine, California 92614
             (949) 567-6700
7
                 - AND -
8
             ORRICK, HERRINGTON & SUTCLIFFE, LLP
9            BY:  ANNETTE L. HURST
                 Attorney at Law
10           405 Howard Street
             San Francisco, California 94105
11           (415) 773-5700

12

13   FOR DEFENDANT MATTEL, INC.:

14           QUINN, EMANUEL, URQUHART, OLIVER & HEDGES
             By:  MICHAEL T. ZELLER
15                Attorney at Law
             865 South Figueroa Street
16           10th Floor
             Los Angeles, California 90017-2543
17           (213) 443-3000

18

19

20

21

22

23

24

25

1        **I N D E X**

2

3

4        **STATUS CONFERENCE**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            SANTA ANA, CALIFORNIA, WEDNESDAY, JANUARY 6, 2010

 2                           (1:10 p.m.)

 3            THE COURT:  Okay.  We are on the record and

 4    counsel are present.

 5            Counsel, sit down and just make your appearances,

 6    and don't worry about standing up.

 7            MR. ZELLER:  Good afternoon, your Honor.  Mike

 8    Zeller for Mattel.

 9            MS. HURST:  Good afternoon, your Honor.  Annette

10    Hurst for MGA Entertainment.

11            MR. MC CONVILLE:  Tom McConville also for MGA,

12    your Honor.

13            THE COURT:  Good afternoon.

14            MS. HURST:  Your Honor, I've spoken with

15    Mr. Larian in Hong Kong.  He will be present on Saturday.

16    If that's the Court order, he's absolutely committed to be

17    here.  And your Honor, I would just --

18            THE COURT:  No.  Let's talk about that, now.  This

19    was becoming a matter of court management.  This is going to

20    be who is going to control this process.

21            Having heard his commitment now to be here is

22    telling me something that I needed to know right from the

23    get-go; who is going to control this?  I am.

24            What's changed from my perspective isn't the

25    necessity for this particular Saturday.
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

```
1          MGA apparently is a smaller company, and he
2    apparently does truly need to be in Hong Kong.  I understand
3    that.
4          MS. HURST:  Thank you, your Honor.
5          THE COURT:  When I hear his willingness to be
6    present and not to fly in the face of this Court's
7    authority, when I say "X," I mean "X," then that gives me
8    hopefully the wisdom and discretion, now, to exercise my
9    authority appropriately.
10          What shifted under my feet was the Ninth Circuit's
11   decision, and it's apparent from Judge Trott's discussion
12   that he is as concerned as any of us should be that a
13   company could potentially literally go out of business
14   because of litigation; that's been your complaint.  I don't
15   think that Mattel means to put Mr. Larian maliciously in
16   that position, but by the same token, from your position,
17   Mattel is making that demand, which they are, that he be
18   present Saturday.  And with my indication that he, a long
19   time ago, was told to be present on Saturday, it was
20   disturbing to me, and what was disturbing was the audacity
21   of just getting on a plane and making a schedule during the
22   week.
23          With this representation, that he will be present
24   this Saturday, let me go back in chambers for just a moment
25   and think about what my position would be, now.  I know that
```

SACV 04-9049-DOC - 01/06/2010

6

```
 1   that toy fair is essential, and I know that it doesn't have
 2   anything to do with this litigation, and the right for him
 3   to try to keep his company in business is something that I
 4   think I should pay close attention to.
 5          Now, what other information do you have that you
 6   wanted to share with me?
 7          MS. HURST:  Your Honor, just on terms of
 8   scheduling his resumed deposition, he committed to be back
 9   on the 16th.  We can start it then or --
10          THE COURT:  Just a moment.  Let me write down that
11   information.  Hang on.
12          Well, he might like one night's rest because the
13   other side might like lucid answers.
14          MS. HURST:  That's true, your Honor.  The dates we
15   offered were to resume on the 18th, which is that first
16   Monday, and then continue as needed.
17          THE COURT:  Now, the problem is I've also gotten a
18   call in the last couple of days from the State Department if
19   I will go to Armenia, which I will -- I will go anyplace for
20   our country -- and I need to check that schedule because I
21   need to be present when Larian's testimony takes place.  I
22   anticipate some issues and some problems, and I anticipate
23   you are going to need access to the Court.
24          In addition to that, I will use my same discretion
25   if I grant Mr. Larian's request, that I can't -- that may
```

SACV 04-9049-DOC - 01/06/2010

7

```
 1    change the playing field.  I need to have some forbearance

 2    in terms of the deadlines for the RICO.  I need to give you

 3    some discretion on the other side on behalf of Mattel and

 4    not be as adamant about the deadlines, et cetera, okay?  So

 5    let me go back and think about that for a few moments; do

 6    you mind?

 7                 MS. HURST:  Not at all.

 8                 THE COURT:  You don't have a choice, Counsel.

 9                 (Laughter.)

10                 THE COURT:  Thank you for that information.

11                 (Recess.)

12                 THE COURT:  We are back on the record.

13                 I read those affidavits with particular care.

14    It's obvious to me that this is a very important toy fair.

15    It's not obvious to me that the earlier engagements were as

16    necessary as this weekend, but having heard Mr. Larian's

17    position, I'm going to acquiesce, and I think wisdom tells

18    me that we are going to start his deposition at a later

19    date.  But here is my problem, and I'm going to give Mattel

20    its choices, tactically.

21                 I have to leave January 19th at 5:00, and I don't

22    return until January 25th.  I think that a lot of these

23    depositions can be conducted without me being present, and

24    if you want a special master present during that period of

25    time, so be it.  I don't think it's necessary with the
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACV 04-9049-DOC - 01/06/2010

8

1    run-of-the-mill problems that you are having, and I can

2    resolve those when they come back, but if you want a special

3    master and get an initial decision, I'll do that for you so

4    you can excuse those people at the end of the deposition.

5    If you don't, then you can conduct the deposition without a

6    special master, but then that means that that person is

7    probably coming back if you run into problems on the 26th to

8    visit with me to sort out those problems, so it's who is

9    being inconvenienced.

10           The second problem is I literally have to be gone

11   from the 15th, the 16th, the 17th and the 18th, so if you

12   start a deposition in that period of time --

13           MR. MC CONVILLE:  I'm sorry, your Honor, February

14   or January?

15           THE COURT:  I mean January, January 15th, 16th,

16   17th and 18th.

17           Now, I was planning on not -- well, it's long and

18   complicated.  Part of it is business, part of it is

19   personal, and I can certainly be back, and I can cut those

20   days down.  But I just fear Eckert and Larian's testimony,

21   and the objections that can come out of those.

22           Number two, I need to find out what you are doing

23   on behalf of Mattel in terms of the e-mail.  I'm giving you

24   the option of conducting the deposition without knowing

25   what, if anything, I'm going to release, or you can conduct

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

9

```
1    Larian at a later time, but then I need to be cognizance of
2    your RICO time deadlines, and, of course, I'm going to move
3    those back in light of Mr. Larian's position.  So maybe that
4    requires a phone call on your part, you know, John, your
5    co-counsel, and -- what's his last name?
6              MR. ZELLER:  Quinn.
7              THE COURT:  Quinn, to find out what he wants to
8    do.
9              MR. ZELLER:  I don't know if that's so much
10   necessary.  I want to make sure, though, about the time
11   period.  So your Honor expects to be gone starting from the
12   15th?
13             THE COURT:  Yeah, although I'm back on the morning
14   of the 19th.  I can resolve problems.  It's just that I may
15   have a busy calendar that day.
16             MR. ZELLER:  Oh, I see, so the time period you are
17   gone is the 15th through the 19th?
18             THE COURT:  Well, the 15th through the 18th, the
19   evening, and then I'm back the 19th, but I probably have to
20   leave here about 2:00 for LAX to catch the 5:00 to Germany,
21   and then on to Armenia.
22             MR. ZELLER:  And then that's when you'll be gone
23   until the 25th.
24             THE COURT:  That's where I'm gone until the 25th.
25   So if you want me here, so be it.  If you want the special
```

SACV 04-9049-DOC - 01/06/2010

10

```
1   master, if you want to take a dry run at this without
2   knowing if there are any e-mails or not.  See, I don't know
3   what you are going to do about the e-mails yet.  The ball is
4   really in your park.
5              MR. ZELLER:  I think on that -- I think the plan
6   is, in any event, that we would enter into some sort of
7   voluntary dismissal.  The mechanics of it, and then that
8   should put it squarely in your Honor's court.
9              THE COURT:  How soon -- for over a month make a
10  ruling.
11             MR. ZELLER:  It just depends on when I get an
12  answer from MGA.  It's been raised last night, and we can --
13             THE COURT:  There they are.  Go over and talk to
14  them.
15             MR. ZELLER:  Okay.
16             MS. HURST:  I don't have our final position on
17  that, yet, your Honor.  I apologize.
18             THE COURT:  That's okay.  Who is making the final
19  decision?
20             MS. HURST:  Your Honor, I have to -- I have to
21  confer with my partner, who is the lead on the appeal in
22  New York, Josh Rosenkranz.
23             THE COURT:  Oh, go talk to him.  Give him a call.
24  Tell him I want an answer now.
25             MS. HURST:  Okay, your Honor.
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACV 04-9049-DOC - 01/06/2010

11

```
 1          THE COURT:  Here is the point.  The four of you
 2  are the decision-makers.  I'm being very good about this.
 3          MS. HURST:  Right.
 4          THE COURT:  Go place the call, but otherwise, tell
 5  him to him to get out here and sit with us, because if he is
 6  making these decisions and delaying me --
 7          MS. HURST:  No, your Honor.  He's not making the
 8  decision, but I need his input for the client, who is going
 9  to make the ultimate decision.
10          THE COURT:  Go make the call and see you at 2:00;
11  fair enough?
12          MS. HURST:  Thank you, your Honor.
13          THE COURT:  We'll know right away, and that way
14  you'll know whether you want to proceed with Larian on that
15  date.  You'll know whether you want to delay that date.
16  You'll know whether you want to go with e-mails or no
17  e-mails, depending upon what my decision is, or a portion
18  thereof, and we'll move those RICO dates back; remember
19  that, okay?
20          MR. ZELLER:  Yes.
21          THE COURT:  By a couple of weeks.
22          MR. ZELLER:  I appreciate that.
23          THE COURT:  Not months, okay?
24          MS. HURST:  Thank you, your Honor.
25          THE COURT:  Now, is that fair?  I hope that that's
```

 1    fair to both sides.  That gives Mr. Larian his livelihood

 2    back.  He's a smaller company, for goodness sakes.  It also

 3    takes away any taint that he's being run out of business

 4    through litigation because it's that important to him.  I

 5    understand that.  And also, though, believe me, we were

 6    heading in an entirely different direction, without telling

 7    you what was going to happen, it was not going to be good.

 8    Both parties need to know that I'll run the time schedule,

 9    and they are not doing that, and that's why getting on that

10    plane, that's the message that was sent to the Court, and

11    that's not going to happen.

12                Okay.  See you at 2:00.

13                MS. HURST:  Thank you, your Honor.

14                *(Recess.)*

15                THE COURT:  Okay.  We are on the record on Mattel.

16    All counsel are present.

17                Counsel?

18                MS. HURST:  I think we've agreed to the

19    January 18th date, your Honor.

20                THE COURT:  Okay.  Okay, which is -- I didn't even

21    bring my calendar.

22                Okay, Monday?  Did you know that's a judicial

23    holiday that day?  It's a Court --

24                MR. MC CONVILLE:  Oh, is the Court --

25                THE COURT:  Yeah, it's a non-day, and you know

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

SACV 04-9049-DOC – 01/06/2010

13

```
 1    that I'm not here that day, so as long as you get started

 2    that day, that's fine.  And then I'll be here on the 19th in

 3    the morning to sort out any problems for you.  I'll have a

 4    calendar that day.  I am not available that afternoon, as

 5    you know, okay?

 6              Thank you very much.

 7              MS. HURST:  Thank you.

 8              MR. ZELLER:  We'll start on the 18th, and

 9    obviously just continue, and we all recognize that the Court

10    is not available, but at least we'll get that time out of

11    the way, and if there are any issues, we'll raise it with

12    the Court --

13              THE COURT:  That's the day -- remember with

14    Mr. Larian and Mr. Eckert, I want the special master here,

15    or whatever you call them.

16              MS. HURST:  Yeah, Mr. O'Brien had asked us to keep

17    him apprised of the scheduling and --

18              THE COURT:  Okay.  Tell him he's here or --

19    probably O'Brien.

20              MS. HURST:  Yeah.  He was there for the first part

21    of Mr. Larian's depo, so --

22              THE COURT:  All right.  Now, what do we have --

23    today is Thursday.  What are we doing tomorrow?

24              MR. MC CONVILLE:  Today is Wednesday, isn't it?

25              THE COURT:  Wednesday?
```

SACV 04-9049-DOC - 01/06/2010

14

```
 1              MS. HURST:  I've lost track.

 2              THE COURT:  Today is Wednesday.

 3              MR. MC CONVILLE:  Today is Wednesday.

 4              (Laughter.)

 5              THE COURT:  So I'm here for you tomorrow, okay?

 6              MS. HURST:  The other thing we want to request,

 7     your Honor, there was a Discovery Master Order Number 81 --

 8              THE COURT:  Okay.

 9              MS. HURST:  -- and it was the report and

10     recommendation of Mr. O'Brien that letters of request be

11     issued for the witness, Danny Yu (phonetic), in Hong Kong,

12     and there was no objection after the report and

13     recommendation by Mattel.  So we just need the Court to get

14     the letter to request issued, and Lori asked us for the

15     docket number, and we don't have it yet, but we're getting

16     it right now, and we'll supply it to her shortly.

17              THE COURT:  I'll have it signed for you by

18     tomorrow when you come in, okay?

19              MS. HURST:  Thank you, your Honor.

20              THE COURT:  Now, how are you doing with the rest

21     of the depos?

22              MR. ZELLER:  That's one of the two issues, your

23     Honor.  One is just to finish off the issue about the

24     voluntary dismissal.  As I understand MGA's position is that

25     it's not -- it's not at this juncture in a position to agree
```

SACV 04-9049-DOC - 01/06/2010

15

```
 1    that the conditional cross appeal be voluntarily dismissed.
 2            THE COURT:  Okay.  Now, that's fine, but everybody
 3    recognizes that I'll probably bring Mr. Larian back.  In
 4    fact, not "probably."  I will bring Mr. Larian back.
 5            MS. HURST:  We understand that, and we may change
 6    that in the next day or so --
 7            THE COURT:  It's going to bring him back because
 8    I'm going to give Mattel time to absorb information if, in
 9    fact, I'm releasing the information, so we'll wait.
10            Okay.  See you tomorrow.
11            MR. ZELLER:  I'm sorry, there was one other issue
12    which pertains to the deposition of Ms. Coleman.  She is
13    Mr. Castillas' former supervisor there at MGA.  Her
14    deposition was started yesterday.  It was not completed, and
15    there is an issue about its resumption, and as we understood
16    it, the witness was available to resume the deposition --
17            THE COURT:  Okay.
18            MR. ZELLER:  -- Thursday and Friday, but there's
19    been no agreement by MGA to do that, and so we wanted to
20    bring this to the Court's attention.
21            THE COURT:  Well, first of all, why was it
22    conducted up in Los Angeles?  Why wasn't it up here?
23            MR. ZELLER:  We did that as an accommodation to
24    her.  It was her request for child care reason.  She has
25    two --
```

 1          MS. HURST:  She's breastfeeding 10-week-old twins,

 2    your Honor.

 3          THE COURT:  That's a good reason.  Thank you very

 4    much.  It's an excellent reason.

 5          MR. ZELLER:  And so we accommodated her on that

 6    and were happy to and have worked with her hours, and the

 7    like, trying not to interfere with her obligations in that

 8    way.  However, as we said, we have not completed the

 9    deposition, and we -- we would like it to resume either on

10    Thursday or Friday to --

11          THE COURT:  Why can't we get it done?

12          MS. HURST:  Your Honor, I would have -- I have not

13    had an opportunity to confer about the substance of this

14    deposition, but it's my understanding that nearly seven

15    hours were spent on the record with this witness who is no

16    longer an MGA employee, that she was examined about

17    everything related to Mr. Castillas and his employment and

18    any potential trade secret misappropriation, as well as a

19    number of other topics about which she had no knowledge.

20    And your Honor, I would like an opportunity to evaluate

21    whether, on her behalf, an objection should be interposed to

22    exceeding the seven-hour rule.

23          THE COURT:  No, that seven-hour rule doesn't mean

24    too much.  That's why I've had a special master.  I've only

25    taken the special master away to save money, being

SACV 04-9049-DOC - 01/06/2010

17

```
 1   particularly concerned with Mr. Larian's finances.  This
 2   wouldn't be a problem if I simply impose the special master
 3   on all the depos.  I've only taken him off because of my
 4   concern about the cost.
 5            So if I had a special master at this proceeding,
 6   he or she would have been able to tell me this is harassing,
 7   you know, the same kinds of questions.  It's not your
 8   evaluation.  In other words, it's not your judgment call,
 9   its mine.  And since I don't know, and you don't know, this
10   deposition is going to go on.
11            Now, if you are concerned after talking to her,
12   okay, then I'll run a special master down there.
13            MS. HURST:  All right.
14            THE COURT:  And she is more than welcome to bring
15   the baby.
16            MS. HURST:  Two.
17            THE COURT:  She is more than welcome to bring both
18   babies.  I have six children.  I love children, okay?
19            MS. HURST:  I understand.
20            THE COURT:  But let's get the special master
21   there, let's get it done.  It's for her benefit, okay?
22            MS. HURST:  All right.
23            THE COURT:  Otherwise, she is going on.
24            MS. HURST:  So I need an opportunity to confer
25   with the witness about what days and --
```

JANE C.S. RULE, CSR NO. 9316 - U.S. COURT REPORTER

 1          THE COURT:  Tell me tomorrow morning.

 2          MS. HURST:  Tomorrow morning.

 3          THE COURT:  I expect it to be done by the end of

 4   this week, okay?

 5          MR. ZELLER:  The other thing, your Honor, is that

 6   there are a number of discovery issues that pertain to the

 7   Omni parties.  As you know, they were represented by the

 8   Bingham firm, and what I would request is that at least

 9   tomorrow, perhaps on other sessions, they be present so that

10   we can start dealing with some of these discovery issues.

11          THE COURT:  Well, do you have a deposition

12   tomorrow with one of the Omni entities?

13          MR. ZELLER:  Not -- no, I don't believe that they

14   will be present for a deposition tomorrow.  I think that the

15   next one was at least -- well, in fact, some of this

16   pertains to, in fact, two of the depositions that they are

17   responsible for, the deposition of Joe Moinian and David

18   Nazarian.

19          THE COURT:  And what are some of the issues?

20          MR. ZELLER:  Well, one pertains to -- well, one is

21   an issue pertaining to the location of these depositions.

22   Joe Moinian --

23          THE COURT:  They are here.

24          MR. ZELLER:  Right, and that's what we have asked

25   is for dates here in Santa Ana, and -- and what we were told

SACV 04-9049-DOC – 01/06/2010

19

```
1   is that they would be in New York and Beverly Hills.
2           THE COURT:  No.  They are here.
3           MR. ZELLER:  That's what we've conveyed to the
4   Omni parties.
5           THE COURT:  Well, but there is --
6           MR. ZELLER:  But there is, shall we say, not
7   agreement.
8           MR. MC CONVILLE:  Your Honor, I don't want to
9   speak for the Omni people, but I believe their position
10  would be, if they were here, that Joe Moinian lives and
11  resides and works in New York, and he's prepared -- and he's
12  offered multiple dates that he would be available to be
13  deposed, you know, beginning as late as 5:00 at night so
14  they can continue the deposition and continue until they are
15  done, and that the man doesn't reside within the
16  jurisdiction of the courthouse --
17          THE COURT:  So I don't have jurisdiction or
18  authority.
19          MR. MC CONVILLE:  I believe that's what they would
20  argue.
21          THE COURT:  Okay.
22          MR. ZELLER:  Well --
23          THE COURT:  Well, I can always accede to that, but
24  then I'm going to want a special master present.
25          MR. MC CONVILLE:  Understood, your Honor.  I --
```

```
 1              THE COURT:  If somebody is going to New York, we
 2    need that time, et cetera, and then I find out, because I --
 3    I -- I trust your input, after you talk to your clients, you
 4    know, and the depositions, it's not that.  It's just that I
 5    don't know how harassing that is or how many questions were
 6    asked, and I just can't take the litigant's perception of
 7    it.
 8              So Todd Gordinier?
 9              MR. ZELLER:  Correct.
10              THE COURT:  The one with the chart?
11              MR. ZELLER:  Yes.
12              (Laughter.)
13              THE COURT:  Why don't you pay the courtesy, each
14    of you, calling Mr. Gordinier seeing if he can be present on
15    maybe Friday.  Tomorrow seems a little precipitous just to
16    call him in.  And I don't know our schedule Friday, but why
17    don't we take a look at Friday morning?
18              Okay.  How about Friday at 9:00 so Mr. Gordinier
19    isn't inconvenienced?
20              THE CLERK:  Okay.  All right.
21              THE COURT:  Yeah, and why don't you call him and
22    see if he can be present, and we'll sort out the location
23    and whether a special master is needed.  And the date of the
24    deposition is --
25              MR. ZELLER:  Well, there were dates that were
```

1    offered in these other locations.

2              THE COURT:  What are those dates?

3              MR. ZELLER:  Those dates that were offered --

4              THE COURT:  So let's take Mr. Moinian.

5              MR. ZELLER:  Mr. Moinian was offered for the 11th

6    in New York.

7              THE COURT:  January 11th in New York, and --

8              MR. ZELLER:  David Nazarian on the 13th in Beverly

9    Hills.

10             THE COURT:  Nazarian on the 13th.

11             Now, I don't have jurisdiction over Nazarian?

12             MR. ZELLER:  Clearly you do.

13             THE COURT:  I think I do.  So what's my problem

14   with Mr. Nazarian?

15             MR. MC CONVILLE:  Again, we don't represent

16   them --

17             THE COURT:  Okay.

18             MR. MC CONVILLE:  -- but I believe the last e-mail

19   I saw, your Honor, if you want Orange County, just say

20   "Orange County."  I think what they were trying to do is

21   accommodate --

22             THE COURT:  I want it in Orange County.

23             MR. MC CONVILLE:  I wasn't --

24             THE COURT:  No.  I want it in Orange County.

25   That's the end of it.

SACV 04-9049-DOC – 01/06/2010

22

1              Now, with Mr. Moinian on the 11th, that doesn't

2     give us enough time to get the special master on the plane.

3     Maybe we should see Mr. Gordinier tomorrow.  Maybe we could

4     ask before we order that Mr. Gordinier be present at 9:00.

5              And counsel, we'll resolve it tomorrow at 9:00,

6     and then if we need a special master, we'll put a special

7     master on the plane.  Because I think to find Mr. Samhoui,

8     Mr. Moinian and Mr. Nazarian might be helpful?

9              MR. ZELLER:  They might be, your Honor.  They are

10    investors and owners in Omni 808 California Companies.

11             THE COURT:  All right.  So that might be very

12    helpful.

13             Thank you very much.

14             MR. ZELLER:  Thank you.

15             MR. MC CONVILLE:  Thank you, your Honor.

16             *(Recess.)*

17                            -oOo-

18

19

20

21

22

23

24

25

SACV 04-9049-DOC - 01/06/2010

23

-oOo-

**CERTIFICATE**

      I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.


Date:  January 19, 2010



                        _____
                        JANE C.S. RULE, U.S. COURT REPORTER
                        CSR NO. 9316