MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710
Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-9049-DOC (RNBx) |
| Plaintiff, | Consolidated with: Case No. CV 04-9059 Case No. CV 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | Hon. David O. Carter |
| Defendant. | **MGA'S OBJECTION TO RECOMMENDATION NO. 5 OF JANUARY 21, 2010 ELECTRONIC DISCOVERY SPECIAL MASTER'S REPORT AND RECOMMENDATION** |
| AND CONSOLIDATED ACTIONS | Hearing Date: March 8, 2010 Hearing Time: 8:30 a.m. Location: Courtroom of the Hon. David O. Carter |

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on March 8, 2010, at 8:30 a.m., or as soon as

3    counsel may be heard, in the Courtroom of the Honorable David O. Carter, located

4    at 411 West Fourth Street, Santa Ana, California 92701, the MGA Parties will, and

5    hereby do, move the Court to reject Recommendation Number 5 of the January 21,

6    2010 Electronic Discovery Special Master Report and Recommendation ("1/21

7    Report") providing that Mattel and/or the Court's Rule 706 forensic expert have

8    unfettered access to the active files on Mr. Larian's hard drives.

9    This Motion is made on the grounds that Recommendation No. 5 lacks any

10   findings sufficient sustain the recommendation thereof, and is erroneous and

11   contrary to law.

12   This Motion is based on this Notice of Motion and Motion, the

13   accompanying Memorandum of Points and Authorities, the Declarations of Frank

14   Rorie and Cynthia Lock, the docket entries cited herein, the materials lodged with

15   the Court concurrent with this Motion and all other matters which may be presented

16   to the Court regarding this matter prior to or at the hearing of this Objection.

17                          Statement Of Compliance

18   The parties have conferred regarding the issues raised in this Objection on

19   numerous occasions since 2008.

20   Respectfully submitted,

21   Dated: February 2, 2010              ORRICK, HERRINGTON & SUTCLIFFE LLP

22

23                                      By:   _/s/ Warrington S. Parker III_____
24                                            Warrington S. Parker III
                                              Attorneys for MGA Parties
25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

    A.    To Obtain The Original Order Authorizing Inspection Of Mr. Larian's Hard Drives, Mattel Represented That It Did Not Want Access To Active User Generated Content And Mattel Agreed To A Protocol Specifying That .......................................................... 3

    B.    MGA Responds To Mattel's Claim That Documents Have Been Deleted And Mattel Never Calls Its Expert At Trial ........................... 4

    C.    In March And June 2009, Mattel Again Repeatedly Loses Motions Seeking Unfettered Access To The Content Of Mr. Larian's Hard Drives ............................................................................. 6

    D.    Mattel's Experts Access And Seek To Provide To Quinn Emanuel Active User File Data In Contravention Of The Orders And Agreements .................................................................................. 9.

    E.    To Resolve The Dispute, The Parties Agree To A Revised Protocol ......................................................................................... 10

    F.    Mattel Reneges On Its Promise Not To Search Active User Files And Reasserts Its Hackneyed Argument With Judge Smith ............. 11

    G.    The Report And Recommendation Makes No Findings As To Why Unfettered Access Is Necessary And Fails To Take Account Of The Burden And Prejudice To MGA Thereof ............... 11

ARGUMENT .......................................................................................................... 13

I.      THE REPORT DOES NOT JUSTIFY UNFETTERED ACCESS TO MR. LARIAN'S HARD DRIVES .................................................... 13

    A.    Mattel Has Not Demonstrated A Need For Unfettered Access .......... 13

    B.    Unfettered Access Will Implicate Numerous Privilege And Privacy Concerns And Will Create An Undue Burden And Prejudice To MGA ...................................................................... 16

II.    MATTEL SHOULD BE ESTOPPED FROM INSPECTING ACTIVE USER FILES ON MR. LARIAN'S HARD DRIVES .................................. 17

    A.    Inconsistency Of Position .................................................... 18

    B.    Judicial Acceptance Of Earlier Position ............................... 19

    C.    Unfair Advantage From Later Position ................................. 19

**TABLE OF CONTENTS**
**(continued)**

Page

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Benton v. Dlorah, Inc.,*
2007 WL 3231431 (D. Kan. 2007) ................................................................. 16

*Bethea v. Comcast,*
218 F.R.D. 328 (D. D.C. 2003) ...................................................................... 13

*Diepenhorst v. City Of Battle Creek,*
2006 WL 1851243 (W.D. Mich. 2006) ........................................................... 13

*Disimone v. Browner,*
121 F.3d 1262 (9th Cir. 1997) ........................................................................ 19

*Hamilton v. State Farm Fire & Cas. Co.,*
270 F.3d 778 (9th Cir. 2001) .......................................................................... 17

*In re Ford Motor Co.,*
345 F. 3d 1315 (11th Cir. 2003) ..................................................................... 13

*Risetto v. Plumbers & Steamfitters Local 343,*
94 F.3d 597 (9th Cir. 1996) ............................................................................ 17

*Russell v. Rolfs,*
893 F.2d 1033 (9th Cir. 1990) ........................................................................ 18

*Scotts Co. LLC v. Liberty Mut. Ins. Co.,*
2007 WL 1723509 (S.D. Ohio 2007) ........................................................ 13, 16

*Thielen v. Buongiorno USA, Inc.,*
2007 WL 465680 (W.D. Mich. 2007) ............................................................ 16

*United States v. Bauer,*
132 F.3d 504 (9th Cir. 1997) .......................................................................... 16

*United States v. Hook,*
195 F.3d 299 (7th Cir. 1999) .......................................................................... 17

*Williams v. Mass. Mut. Life Ins. Co.,*
226 F.R.D. 144 (D. Mass. 2005) .................................................................... 13

## STATUTES

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................ 6

Fed. R. Civ. P. 34 ....................................................................................... 2, 13

Fed. R. Civ. P. 53(f)(3) .................................................................................... 13

**OBJECTION TO ELECTRONIC DISCOVERY SPECIAL MASTER REPORT AND RECOMMENDATION (1/21/2010)**

MGA Entertainment Inc. hereby objects to Recommendation No. 5 of the 1/21 Report.

**INTRODUCTION**

For two years, this Court has limited the inspection of Mr. Larian's computers so that active files would not be accessed because the hard drives indisputably contain numerous attorney client privileged communications and other materials implicating Mr. Larian's fundamental right to privacy, and the burden of reviewing hard drives spanning a more than ten year period to enable such a fishing expedition would be enormous and enormously expensive. Accordingly, and in part based upon Mattel's repeated express representations that it sought no access to active files, Judge Larson and Discovery Master O'Brien repeatedly limited access to Mr. Larian's computers to areas that are likely to have evidence regarding spoliation—i.e. Mr. Larian's deleted files. The spoliation analysis was permitted to continue despite the fact that there is absolutely no basis to conclude that any evidence related to this litigation has been spoliated by Mr. Larian. And, Mattel's forensic experts were permitted access to active files for the purpose of evaluating MGA's forensic expert specific findings that documents allegedly deleted were present elsewhere in active files.

When a new Judge was appointed, and in turn a new Electronic Discovery Special Master, Mattel saw an opportunity to renege on its four prior agreements and express representations to Judge Larson, and to again seek reconsideration of the prior orders. Mattel saw the change in judicial officers as an opportunity to reassert to a new audience the same request for unfettered access to Mr. Larian's computers that had been rejected at least four prior times. Mattel should never have been permitted to resurrect this argument before Judge Smith, it is estopped by its representations and its agreements from doing so.

1    Yet, even without estoppel, Mr. Larian and MGA have done nothing to

2  warrant such an intrusive inspection.  There is no evidence of spoliation.   And

3  because Mattel has not made this showing and because Judge Smith made no such

4  findings, the Report and Recommendation cannot be sustained in this regard.  Such

5  an order violates Rule 34 of the Rules of Civil Procedure.  Moreover, the enormous

6  and costly burden placed on MGA of such a review must be considered, especially

7  when its attorneys are embroiled in triple-tracked depositions and are trying to

8  prepare this case for a possible April trial that may encompass not only Phase 2, but

9  also Phase 1 issues.  Affording complete access to anyone—Mattel's expert or the

10  Court's expert—requires MGA to review whatever is located for privilege.  To

11  date, Orrick (let alone prior counsel) has spent over a thousand hours on privilege

12  log issues at a tremendous cost.  The most recent supplemental privilege log served

13  by Orrick pursuant to the auspices of Discovery Master O'Brien had 13,500 lines

14  logging each separate e-mail in every e-mail chain, including all of those involving

15  Mr. Larian.  To allow an unfettered inspection now and to require at least another

16  thousand hours to be spent on privilege review would irretrievably prejudice MGA

17  in its conduct of discovery and preparation for trial.

18    In short, Mattel has not met its burden of demonstrating a need for access to

19  the entire content of Mr. Larian's hard drives—whether by Mattel or the Court's

20  Rule 706 expert.  The Court previously circumscribed Mattel's ability to inspect

21  these hard drives for good reason; it should not disregard those reasons now. [1]

22

23

24

25

26  [1] Concurrent with this motion, the MGA Parties lodges with this Court the
following documents which were filed with Judge Smith: 1) the MGA Parties
11/18/09 Status Brief Submitted to Hon. James Smith; 2) Mattel's Motion to

27  Compel Re Electronic Discovery Issues; 3) 12/11/09 Declaration of Warrington S.
Parker III; 4) 12/11/09 Declaration of Annette L. Hurst; 5) 12/11/09 Declaration of

28  Samuel Rubin.

## STATEMENT OF FACTS

**A.** **To Obtain The Original Order Authorizing Inspection Of Mr. Larian's Hard Drives, Mattel Represented That It Did Not Want Access To Active User Generated Content And Mattel Agreed To A Protocol Specifying That.**

During Phase 1 proceedings, Mattel sought access to Mr. Larian's hard drives, the Discovery Master denied that request.[2]  The Discovery Master concluded that Mattel's request was a "fishing expedition." Dkt. No. 1439 at 16-17 (Dec. 31, 2007 Discovery Master Order).  Mattel then appealed to the District Court and argued that it was entitled to evidence of spoliation because "[s]poliation is an element of Mattel's RICO claim and would also support an evidentiary inference of intent and guilty knowledge on defendants' part." Dkt. No. 2186 (Mattel's Reply Br.) at 27.  Mattel asserted as well that its requests for production were narrowly tailored to discover evidence of improperly deleted files. *Id.* at 24.

At the hearing on that motion, Mattel represented that it did not want to view Mr. Larian's "actual documents on the hard drives."  As stated by Mattel:

> Mr. Quinn: … we are seeking this evidence to prove the predicate act of deletion of information from the hard drives.
>
> The Court:  *As opposed to the actual documents on the hard drives themselves*.
>
> Mr. Quinn:  *Yes.  Exactly*.

Dkt. No. 6074 (7/27/09 Hurst Decl.) Ex. B (2/25/08 Tr. 264 (emphasis added).

On February 27, 2008, the District Court issued an order authorizing Mattel to take a forensic image of Mr. Larian's hard drives and giving Mattel's consultant the right to inspect the hard drives to determine "whether, when and by whom any information was deleted, written over, lost, exported moved, spoliated or otherwise

---

[2] Mattel claimed that the drives were relevant to its First Set of Requests for Documents and Things on Isaac Larian, which included Request  No. 222, asking Mr. Larian to produce "Each STORAGE DEVICE that YOU have used to create, prepare, generate, transmit, receive, delete, or modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL, OR BRYANT." Dkt. No. 5510 at 1 (May 18, 2009 Discovery Master Order).

1   rendered inaccessible or unreadable," whether such attempts were made, the

2   software or hardware used and whether the information could be recovered.  Dkt.

3   No. 2362 at 3 (February 27, 2008 Order).

4        Consistent with its representation at the hearing, and *after* the Court's order,

5   in May 2008, Mattel drafted, and the parties agreed, to a stipulated protocol

6   governing the Larian hard drive inspection.  The protocol provides in relevant part:

7        With respect to the hard drives, [Mattel's consultant] 42

8        Consulting, LLC, may inspect the images of the hard drives in

9        their entirety, including … metadata for all files (allocated and

10       unallocated) … . Notwithstanding the foregoing, 42 Consulting,

11       LLC shall not access the user generated content of any active

12       file that exists on the hard drives. …

13  Dkt. No. 6452 (8/27/09 Hurst Decl.) Ex. G.[3]  In May 2008, Mr. Larian turned over

14  seven computer hard drives for inspection and analysis.  42 LLC, Mattel's current

15  experts, inspected and analyzed the media over the course of forty-three days.

16  Christopher Pavan documented his findings in a June 2008 "Preliminary

17  Examination Report."  Dkt. No. 5770, Ex. 7.  That report concluded that the drives

18  contained evidence of deletion.  *Id.* at 137.

19     **B.**   **MGA Responds To Mattel's Claim That Documents Have Been
20  Deleted And Mattel Never Calls Its Expert At Trial.**

21       In response to Mattel's Preliminary Examination Report, MGA issued a

22  report of its own.  What MGA pointed out was that the claimed "evidence" of

23  deletion was not evidence of deletion at all.  First, MGA's experts concluded that

24  the only evidence of deletion on the hard drives was consistent with "normal

25  system operation, common computer usage, and the manner in which MGA IT

26  personnel administered the Larian Media."  Dkt. No. 5770 (MGA Expert Report)

27  

28    [3] The protocol is also attached to Exhibit B to MGA's November 18, 2009 Status
Brief submitted to Judge Smith.  It is numbered pages 29 to 32.

Ex. 2 at 16.  Second, consistent with the findings of Mattel's experts, MGA experts concluded that there were no wiping tools found on any of the Larian hard drives. *Id.*; *see also* Declaration of Frank D. Rorie In Support Of MGA's Objections To 1/21/10 EDM Report ("Rorie Decl.") Ex. 4 (Depo. of Mattel Expert Tr. 62-63). Third, MGA's experts concluded that "nearly all of the relevant files [Mattel's expert] lists as deleted exist on media in active, accessible format."  *Id.*[4]

Further, what MGA's expert noted was that Mattel's expert "could have but chose not to determine whether" deleted files were otherwise active on one of Mr. Larian's seven hard drives.  Dkt. No. 5770 (MGA Expert Report) Ex. 2 at 9. The methods that could have been used but were not included, *inter alia*, using fingerprints generated by hash algorithms that compare the contents of files to determine whether they are identical.  *Id*. Ex. 2 at 9; Dkt. No. 6074 Ex. C (6/26/08 Pavan Depo Tr. 116-17).  By running such an analysis on two files, they can be compared without any review of the contents.  Dkt. No. 5770 Ex. 2 at 9.  Such an analysis would have assisted Mattel's consultant in determining that, although a file (*e.g.*, a Word document) may have been deleted on one of Mr. Larian's hard drives, the same document, in fact, was active (or not deleted) on one or more of his other hard drives.  *Id*. Ex. 2 at 14; Dkt. No. 6074 Ex. C at 274-275, 277-78.  Mattel's expert agreed that comparing hash values would have been a "very valid technique" that would have matched active file "fingerprints" to their deleted counterparts. *Id.* Ex. C at 279-80.  42 LLC apparently cared little for the fairness of its analysis, however, since that concededly valid alternative technique, which might have wholly undermined its preliminary conclusion, was "not on the list of things to get done in priority order."  Dkt. No. 6074 Ex. C at 279.

---

[4] Of the 633 "intentionally deleted" files, 227 were automatically deleted by the Windows operating system, not a user; of the remaining 406 files, 397 were active and accessible on at least one other computer.  The remaining 9 had been previously preserved on MGA systems.  Dkt. No. 5770 (MGA Expert Report) Ex. 2 at 5-9.

1    After MGA's report issued, Mattel did not call its expert in Phase 1 to opine

2    regarding spoliation in connection with Mr. Larian's hard drives.

3    **C.    In March And June 2009, Mattel Again Repeatedly Loses Motions Seeking Unfettered Access To The Content Of Mr. Larian's Hard Drives.**

4

5    When Phase 2 discovery began in earnest, in March 2009, Mattel demanded

6    that Mr. Larian "supplement" his production by allowing Mattel's expert to inspect

7    electronic media that Mr. Larian had used since the May 2008 inspection pursuant

8    to Fed. R. Civ. P. 26(e)(1)(A). Mattel also demanded that it be allowed access to

9    the entire content of Mr. Larian's hard drives. Dkt. No. 5510 (Discovery Master

10   Order No. 34) at 4.

11   The Discovery Master ordered a supplemental production, but emphatically

12   rejected Mattel's request for access to the active user files on Mr. Larian's drive for

13   four reasons. First, the Discovery Master found that the Court had "expressly

14   limited the scope of the inspection to determining whether any electronic evidence

15   had been destroyed" and "there [was] no connection between Mattel's claim that it

16   was entitled to view active files and the inspection permitted by the Court related to

17   deleted files." Dkt. #5510 at 9-10 (emphasis in original). Second, "there has been

18   no showing by Mattel that all of the active files it seeks to access are relevant to

19   Phase 2 issues." *Id.* at 10. Third, "Mattel does not have the right to rifle through

20   Larian's electronic files looking for unspecified information." *Id.* at 10. And

21   finally, "allowing Mattel unrestricted access to active files on the Hard Drives

22   would improperly permit [Mattel] to discover attorney-client privileged

23   information." *Id.* at 11.

24   On June 24, 2009, Mattel belatedly appealed Discover Master Order No. 34

25   to the District Court. It framed its motion as a Motion for Preclusive Relief, or, in

26   the alternative, Access to Active Files on the Larian Hard Drives. Dkt. No. 5769.

27   But it was a motion for reconsideration. Dkt. No. 6045 (Opposition) at 14-15.

28   Mattel claimed that it should be entitled to unfettered access to Mr. Larian's

hard drives because MGA's experts criticized Mattel's expert for failing to access active files.  However, as noted above, MGA criticized Mattel not for failing to review active files but for failing to assess, using available forensic techniques, whether files it thought were deleted from one machine were alive and well on one of the other hard drives being inspected.  Dkt. No. 5770 Ex. 2 at 7, 14; Dkt. No. 6074 Ex. C at 279-80; Dkt. No. 5770 Ex. 8 at 159 ¶ 6.  These forensically sound methods could have been performed without opening a single nondeleted file on Mr. Larian's computer.  Dkt. No. 5770 Ex. 2 at 9 ("… although unable to view the content of active files on the Larian Media, 42 LLC could … [listing various forensic techniques for reconciling deleted versus nondeleted files]").

Furthermore, the May 12, 2008, protocol that Mattel's attorneys drafted expressly condemned the notion of any review of user generated files and provided that MGA's expert could take all steps necessary to prevent Mattel's expert from accessing Mr. Larian's files:

> Nothing herein shall limit in any way the ability of [MGA's
> expert] to take steps necessary to prevent any unauthorized
> inspection by 42, including, among other things, any attempt by
> 42 to gain access to the user-generated content on the Hard
> Drive Images other than as permitted herein.

Dkt. No. 6452 (8/27/09 Hurst Decl.) Ex. G ¶ 4.  Indeed, the May 12 protocol repeatedly confirmed that Mattel was not to have access to active files: "42 agrees not to access the content of any user-created data, except with respect to data residing in unallocated space … ."  *Id.* ¶ 5.  Furthermore, Mattel's expert was permitted to inspect only "metadata and file information about *recoverable deleted* documents or files for which there remains an entry in the File System.  *Id.* ¶ 5(a)(ii) (emphasis added).  Only user-generated content in the deleted space was to be the subject of any inspection, *and only after prior MGA review*.  *Id.* ¶¶ 5(a)(ii), 5(c). Mattel's June 24, 2009 motion to compel made *no mention* of this

1    final agreement or of the weeks of back-and-forth negotiations that produced it.

2        On August 24, 2009, *after* Mattel filed its motion before the District Court,

3    and *before* the hearing on that motion, Mattel *again* agreed to abide by a protocol

4    that did not involve direct access to Mr. Larian's active user files.  Mattel's expert,

5    Christopher Pavan, signed an agreement that expressly states that 42 LLC will

6    abide by the May 12, 2008 protocol and will be bound by Discovery Master Order

7    No. 34. *Id.* Ex. H.[5]

8        At the hearing on Mattel's motion, and to address Mattel's lingering concern

9    that MGA would respond to any analysis by 42 LLC by using active user files,

10   MGA proposed a solution to which Mattel agreed.  It did not give Mattel access to

11   active user files.  As proposed by MGA's counsel,

12       Hurst: So if the information exists in another file, an active file,

13       and if our expert has relied on that—and I think there is a

14       substantial dispute about that . . . but if our expert goes and

15       looks at the content in response to their expert's report that says

16       'it appears to us from the deleted files that this user-generated

17       content has been deleted,' if our expert looks at that and then he

18       goes and finds it somewhere else, then we can simply print those

19       files out and give it to them with all of the custodial information

20       about where it was found on the drive.  And if they need to

21       inspect, for the limited purpose of confirming that it's found

22       there—

23       The Court: That's where I was going to go.

24       Hurst: —we can do that.  But you don't need to give access to

25       the whole thing in order to accomplish that.

26   12/11/09 Parker Decl. Ex. A (8/31/09 Tr. 7-8).

27

28   _____

[5] Attached as Exhibit B, page 11 to 12, to MGA's Status Brief.

Mattel agreed to this proposal.  According to Mattel, "I think that is substantially along the lines of what we had been proposing."  *Id.* at 9.  Mattel continued: "We've never said that we want to see every single active file on those drivers [sic]; that has never been our position."  *Id.*  The Court agreed, with Judge Larson noting: "What I like about this solution is that it doesn't go down that road of getting into all of the active files and all of the potential privilege and the quagmire that I can see erupting if that was all turned over.  So this sounds good."  *Id.*

**D.**    **Mattel's Experts Access And Seek To Provide To Quinn Emanuel Active User File Data In Contravention Of The Orders And Agreements.**

On August 31, 2009, 42 LLC began its review of Mr. Larian's hard drives. Pursuant to the protocol, on September 11 and 17, 2009, 42 LLC provided to MGA's forensic expert, Stroz Friedberg, files that 42 LLC wished to remove from Stroz Friedberg's offices. 12/11/09 Rubin ¶¶ 8-10.  A review of the data revealed that 42 LLC was inspecting every file, including user-generated content files and active files.  42 LLC had not run a word search to narrow the scope of its review, as is expressly required by the May 2008 protocol.  Dkt. No. 6452 Ex. G  ¶ 5(a)(ii); 12/11/09 Rubin Decl. ¶ 10(b).  42 LLC also intended to provide to Mattel's counsel information such as user generated metadata, Mr. Larian's internet activity, listings of active files, and even a listing of events logged, such as when system was turned on or off, and who logged on to the system.  12/11/09 Rubin Decl. ¶ 10 (discussing these items in detail).  42 LLC collected information that could be used to garner non-public information, information unrelated to this case, private information, and information protected by the attorney-client privilege.  *Id.* ¶ 11.  MGA objected, noting that this violated the protocols and the orders prohibiting access to the user generated content of active files.

**E.     To Resolve The Dispute, The Parties Agree To A Revised Protocol.**

On November 10, 2009, counsel for MGA and Mattel met and conferred to see if they could fully and finally resolve their disputes regarding the inspection of Mr. Larian's hard drives.  MGA offered that it would not pursue a motion for sanctions against Mattel based on 42 LLC's attempt to access active user files in violation of the previous Court orders constraining the scope of its review.  12/11/09 Hurst ¶¶ 2-4.  That offer was subject to Mattel's commitment to a revised protocol that addressed Mattel's needs but continued to preserve the attorney-client privilege and Mr. Larian's privacy interests.  The offer also alleviated the need for and the enormous burden of trying to screen the entire contents of eleven hard drives for privilege, privacy and other concerns.  12/11/09 Hurst Decl. ¶ 5.  Quinn Emanuel partner Marshall Searcy considered MGA's proposal, took several breaks to confer with Mattel's expert (and others by telephone, perhaps including Mr. Zeller and/or the Mattel client representatives), suggested some modifications to it, and ultimately agreed to a revised protocol.  12/11/09 Hurst Decl. ¶¶ 2, 6.  The parties agreed that:

- Mattel's experts could "construct[] a model of all the contents of everything that was ever on Mr. Larian's hard drive . . . to see whether it's all there or not. . . . under [MGA's] experts' supervision."
- "[A]fter [Mattel's] experts conduct their preliminary analysis modeling this data and make whatever initial conclusions they are going to make about things that may be missing," the experts "would share that with" MGA and MGA would respond explaining whether it could validate the presence of any assertedly deleted material in other locations.
- Mattel is then given "the chance to be able to validate the responsive preliminary analysis given by Stroz . . . ."

11/18/09 MGA Status Brief Ex. C at 4-6.  This was precisely consistent with the stipulation reached by the parties before Judge Larson mooting Mattel's motion for

- 10 -

reconsideration.

**F.    Mattel Reneges On Its Promise Not To Search Active User Files And Reasserts Its Hackneyed Argument With Judge Smith**

On November 18, 2009, only one week after agreeing (with a court reporter present to transcribe it) to a revised protocol and a full compromise regarding the inspection of Mr. Larian's hard drives, Mattel filed its Status Brief with the Electronic Discovery Special Master.  In that brief, Mattel unabashedly renewed its request that it be given unfettered access to Mr. Larian's hard drives.  Mattel provided no explanation as to how or why this request was any different from its previous attempts to gain unfettered access to Mr. Larian's hard drives.  Not surprisingly, Mattel did not mention the Court's previous orders denying its requests or its November 10 agreement on the record not to pursue Mr. Larian's active user files.  Thereafter, Mattel filed its motion to compel regarding electronic discovery issues.  The issue of unfettered access to Mr. Larian's hard drives was the focal point of Mattel's motion.

**G.    The Report And Recommendation Makes No Findings As To Why Unfettered Access Is Necessary And Fails To Take Account Of The Burden And Prejudice To MGA Thereof.**

On January 21, 2010, Discovery Master Smith issued his Report and Recommendation regarding the electronic discovery issues that Mattel had previously raised.  Regarding the inspection of Mr. Larian's hard drives, the Report noted as follows:

> Isaac Larian is the CEO of MGA.  Pursuant to an earlier Court Order Larian produced his hard drives for inspection by Mattel consultant, but the consultant was denied access to the active files on the drives.  There is a protective order in place that limits the disclosure and use of the data recovered from any inspection by Mattel's consultant.  The Special Master will

1    recommend MGA be given the option of allowing Mattel's ESI

2    consultant to conduct an inspection of the Isaac Larian hard

3    drives without limiting access in any way.  If this option is not

4    acceptable to MGA then the hard drives should be submitted to

5    the Court-appointed expert for forensic examination in

6    compliance with the protocol agreed to in the letter of May 12,

7    2009[6] from counsel for Mattel (Jon Corey) to counsel for MGA

8    (Lance A. Etchevery).

9    *See* 1/21/10 Report and Recommendation at 6.

10        The Recommendation did not contain any findings as to why unfettered

11   access to Mr. Larian's hard drives was necessary or appropriate.  *Id*. at 6, 10.

12   Additionally, the Report did not address the burden and prejudice to MGA of

13   requiring it to engage in additional privilege reviews of Mr. Larian's hard drives

14   coincident with an inspection of active user generated content either by Mattel's

15   forensic expert or the Court's Rule 706 expert.  No matter who inspects the drives,

16   MGA will be required to engage in the same enormously labor-intensive screen for

17   privilege covering a ten year period of time, and preparation of privilege logs in

18   which it has already repeatedly engaged, most recently serving a 13,500 line

19   supplemental privilege log in December.

20        Indeed, as the Discovery Master found in Discovery Master Order No. 34,

21   Dkt. No. 5510, there are countless privileged documents on Mr. Larian's hard

22   drives.  To give some sense of the breadth of the number of privileged documents

23   that are implicated, MGA has created more than a dozen privilege logs in this case

24   that collectively reference well over 10,000 documents. Lock Decl. ¶ 2.  More than

25   4,000 of these documents are currently under review for *in camera inspection* by

26   Discovery Master O'Brien.  *Id*.  Orrick (let alone prior counsel) has spent over one

27

28   [6] The reference to 2009 appears to be a typo.  The letter from Jon Corey to Lance Etchevery memorializing an inspection protocol is dated May 12, 2008.

thousand hours reviewing documents for privilege and addressing privilege log issues. *Id.*

## ARGUMENT

### I.   THE REPORT DOES NOT JUSTIFY UNFETTERED ACCESS TO MR. LARIAN'S HARD DRIVES.

#### A.   Mattel Has Not Demonstrated A Need For Unfettered Access.

Without "a factual finding of some non-compliance with discovery rules" unfettered access to Mr. Larian's hard drives simply cannot be ordered. *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (so holding on writ of mandamus that reversed discovery order allowing access by opposing party).  And here there is no such finding.[7]  Nor does the evidence begin to suggest such a finding is appropriate.  There is no evidence that Mr. Larian has spoliated a single document.  Indeed, Mattel's experts have already attempted to find such evidence and failed.

As reflected in *Ford*, such an order is unwarranted and legally unsound because Rule 34 expressly prohibits unfettered access as a matter of course.  *Id.*  There is no routine right of access to a party's computer system or hard drive.  Indeed, courts are cautioned to "guard against" any such order.  "The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information ***is not meant to create a routine right of direct access to a party's electronic information system***…Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." *See* Notes of Advisory Committee on 2006 amendments to Fed. R. Civ. P. 34(a) (emphasis added); *see also, e.g., Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 1723509 *2 (S.D. Ohio June 12, 2007) (denying request to allow access to computers); *Diepenhorst v. City Of Battle Creek*, 2006 WL 1851243 *2-4  (W.D. Mich. June 30,

---

[7] Even were there such a finding, which there is not, such a finding is subject to de novo review.  *See* Fed. R. Civ. P. 53(f)(3).

1   2006) (same); *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass.

2   2005) (same); *Bethea v. Comcast*, 218 F.R.D. 328, 329-30 (D.D.C. 2003) (same).

3       Mattel claims that it needs unfettered access to Mr. Larian's hard drive for

4   three reasons—none of which are convincing. First, Mattel argues that it needs

5   access to determine whether the hard drives contain any evidence of spoliation.

6   12/7/2009 Mattel Motion. This argument belies common sense, however, because

7   evidence of spoliation (if it exists at all) should reside amongst deleted or inactive

8   files on Mr. Larian's hard drives. By definition, active user files have not been

9   deleted so they are not relevant to a spoliation claim except as necessary to validate

10  that deleted files remain present elsewhere—a type of access to which MGA has

11  already agreed. Mattel does not dispute this.

12      Instead, Mattel argues that unfettered access to active user files is essential

13  because "[t]he content (or a portion of the content) of an active file can be deleted

14  without deleting the file itself." 12/7/2009 Mattel Motion at 7:19-20. Essentially,

15  Mattel argues that it cannot be certain that Mr. Larian's hard drives contain no

16  evidence of spoliation until each and every active user file on those computers is

17  reviewed. This is pure speculation—a made-up attorney argument at the eleventh

18  hour designed to overcome multiple prior court orders and agreements. There is no

19  foundation whatever for any finding that any such activity has occurred. Moreover,

20  there is no evidence to suggest that Larian used or had access to the type of

21  software that would allow for such systematic cryptic deletion. 12/11/09 Rubin

22  Decl. ¶ 14.[8] In the absence of such evidence, as noted in the cases cited *supra* at

23  page 14, Mattel has not carried its burden of demonstrating a need for unfettered

24  access to Mr. Larian's hard drives.

25      Mattel next argues that it needs unfettered access to determine whether a

26  "wiping" software was ever used or installed to erase information. 12/7/2009 Mattel

27  Motion at 7:1-2. Mattel alleges that similar software was installed on the personal

28  ─────────────────
    [8] This declaration was filed before Judge Smith and is lodge with this Court.

hard drive of Carter Bryant and the Mattel hard drive of Gustavo Machado. *Id.* But those computers have absolutely nothing to do the hard drives that are currently at issue, and there is no evidence whatsoever of any connection to Mr. Larian. Moreover, Mattel's own forensic experts found that Mr. Machado's Mattel hard drive "was not wiped, but damaged," Rorie Decl. Ex. 5, and additionally that such damage most likely occurred as a result of the normal operation of the computer. Rorie Decl. Ex. 6. Nor is there any evidence to suggest that any commercially-available software, such as "Evidence Eliminator" was ever used on the Larian hard drives. 12/11/2009 Rubin Decl. ¶ 14. Indeed, Mattel's experts agreed that there was no wiping software used at all. Dkt. No. 5770 (MGA Expert Report) Ex. 2 at 16; Rorie Decl. Ex. 4. If it had been used, artifacts from its use would have been visible to Mattel through their previous inspections. *Id.* The absence of such artifacts demonstrates that no wiping software was ever used on the drives.

Finally, Mattel claims that it needs access to active user files because MGA's expert supposedly had access to active user files when he conducted his analysis of the drives. 12/7/2009 Mattel Motion at 1:19-21.[9] Mattel's "me too" argument is of not convincing, however, because Judge Larson dispensed with it at an August 31, 2009, hearing when MGA proposed and Mattel agreed that Mattel could have access to whatever active user files MGA's expert used to rebut Mattel's inaccurate claims of spoliation. 12/11/2009 Parker Declaration Ex. A (8/31/2009 Tr. at 7:5-9:25).[10] Mattel cannot turn this negotiated compromise into a reason to seek unfettered access to all Mr. Larian's computers .

[9] This argument is based on a mischaracterization of MGA's response to Mattel's inaccurate accusation that certain files were improperly deleted from Mr. Larian's hard drives. As MGA has repeatedly explained, MGA criticized Mattel not for failing to inspect active user files on the hard drives, but for failing to ascertain whether any of the deleted files it found existed in active form elsewhere on the drives. 12/11/2009 MGA Opposition at 6:24-7:24.

[10] Indeed, one of the reasons why Judge Larson liked this approach "is that it doesn't go down that road of getting into all the active files and all of the potential privilege and the quagmire that I can see erupting if that was all turned over. So this sounds good." 12/11/2009 Parker Declaration Ex. A (8/31/2009 Tr. at 9:14-18). A

1    Because Mattel has failed to demonstrate any legitimate reason or need for

2    unfettered access to Mr. Larian's hard drives, its request should be denied.

3    **B.      Unfettered Access Will Implicate Numerous Privilege And Privacy**
         **Concerns And Will Create An Undue Burden And Prejudice To**
4        **MGA.**

5    When Discovery Master O'Brien denied Mattel's April 2009 request to

6    search active user files on the Larian hard drives, one of the reasons he did so was

7    because of privilege and privacy concerns.  As he stated in his ruling, "if Mattel is

8    given access to all active files on the Hard Drives, the Discovery Master cannot see

9    how Larian can protect his privileged information."  Dkt. No. 5510 (Order No. 34)

10   at 11:2-13.  Judge Larson echoed these same concerns in August 2009 when he

11   cautioned against "getting into all the active files and all of the potential privilege

12   and the quagmire that I can see erupting if that was all turned over." 12/11/2009

13   Parker Declaration Ex. A (8/31/2009 Tr. at 9:14-18).

14       The attorney-client privilege is "the most sacred of all legally recognized

15   privileges and its preservation is essential to the just and orderly operation of our

16   legal system."  *See United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997).

17   Court's routinely guard against privilege and privacy concerns when the inspection

18   of a computer hard drives is allowed.  *See, e.g., Thielen v. Buongiorno USA, Inc.*,

19   2007 WL 465680 *2 (W.D. Mich. 2007 ("it seems incumbent upon the court to take

20   steps to satisfy the discovery request without the result being wholesale rummaging

21   through plaintiff's filing cabinet.");  *Benton v. Dlorah, Inc.*, 2007 WL 3231431 *2-

22   3 (D. Kan. 2007) (where personal computer contained privileged and confidential

23   information, access was limited only to evidence of deleted files).  Courts also deny

24   full unfettered access to hard drives for this reason.  *See Scotts Co. LLC*, 2007 WL

25   1723509 *4 (S.D. Ohio 2007).

26

27

28   copy of this Parker Declaration, which was filed before Judge Smith, is lodged with
     this Court.

                                    - 16 -

Nor is it any answer that MGA will be able to review documents or information before it is provided to Mattel.  MGA has already spent countless hours reviewing files for privilege in this case—most recently producing a supplemental privilege log of more than 13,500 lines wherein the Orrick firm accounted for every e-mail in every thread previously listed on MGA and Mr. Larian's privilege logs.  Lock Decl. ¶ 2.  Orrick took this obligation very seriously.  Forcing MGA's counsel to engage in yet another privilege review is not only inordinately burdensome and expensive, but it is extremely prejudicial at this point in the case.  The parties are already engaged in double and triple-tracked depositions, and the possibility of a trial in April remains.  It is almost impossible for MGA's counsel simultaneously to conduct this discovery and to prepare for trial even without this added burden.  Adding yet another enormous privilege document review would literally make it impossible for MGA's counsel to conduct the necessary discovery, and to prepare for trial.

## II.   MATTEL SHOULD BE ESTOPPED FROM INSPECTING ACTIVE USER FILES ON MR. LARIAN'S HARD DRIVES.

Estoppel is an equitable doctrine that precludes a party from gaining an unfair advantage by asserting one position and then later taking a different, incompatible position.  *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-601 (9th Cir. 1996).  The doctrine is intended to preserve "the orderly administration of justice and regard for the dignity of judicial proceedings" and to protect against "a litigant playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

There are three requirements for application of the doctrine: (1) inconsistency of a position; (2) judicial acceptance of the earlier position; and (3) unfair disadvantage from the later position.  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999).  All three elements are satisfied here.

### A.   Inconsistency Of Position.

Mattel has repeatedly taken the position that it does not seek access to active user files on the Larian hard drives.  Mattel first took this position when it asked Judge Larson to grant it access to the drives.  At the hearing before Judge Larson on February 25, 2008, Mattel made it clear that it was not interested in searching active user files:

> Mr. Quinn:   …we are seeking this evidence to prove the
>
> predicate act of deletion of information from the hard drives.
>
> The Court:   As opposed to the actual documents on the hard
>
> drives themselves?
>
> Mr. Quinn:   Yes. Exactly.

Dkt. No. 6074 (7/27/09 Hurst Decl.) Ex. B (2/25/08 Tr. 264).  Thereafter, Mattel drafted the May 12, 2008 protocol governing inspection of the hard drives and confirmed that active user files were off-limits.[11]  In August of 2009 at a hearing before Judge Larson, Mattel repeated its position that:  "We've never said that we want to see every single active file on those drives; that has never been our position."  12/11/2009 Parker Decl. Ex. A (8/31/2009 Tr. 9:12-13).  Most recently on November 10, 2009, Mattel agreed to a revised protocol that did not involve unfettered access to active user files.[12]

### B.   Judicial Acceptance Of Earlier Position.

The Court has twice permitted Mattel limited access to the Larian hard drives for a spoliation analysis because of Mattel's agreed-upon limitation regarding active files.  The first acceptance occurred on February 25, 2008, when the Court granted access to the hard drives but clarified that, in accord with Mr. Quinn's

---

[11] In that protocol, Mattel expressly stated that:  "Notwithstanding the foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that exists on the hard drives."  Dkt. No. 6452 (8/27/09 Hurst Decl.) Ex. G.

[12] Mattel's agreement was part of a negotiated compromise of all disputes regarding inspection of the Larian hard drives.  12/11/2009 Hurst Decl. ¶¶ 2-6; 11/18/2009 Status Brief, Ex. C (11/10/2009 Tr. 4:4 – 10:19).

1   express representation, Mattel would not access the "actual documents on the hard

2   drives themselves."  Dkt. No. 6074 (7/27/09 Hurst Decl.) Ex. B (2/25/08 Tr. 264).

3   The second acceptance occurred on August 31, 2009, when the Court addressed the

4   inspection issue and Mattel again clarified that it "did not want to see every file on

5   those drives."  12/11/2009 Parker Decl. Ex. A (8/31/2009 Tr. 9:12-13).

6         **C.**    **<u>Unfair Advantage From Later Position.</u>**

7         Mattel's constant flip-flopping regarding the inspection of Mr. Larian's hard

8   drives has clearly put MGA at a disadvantage.  Among other things, MGA has

9   spent a tremendous amount of time, money and energy securing several court

10  orders prohibiting Mattel from searching active user files.  These efforts will have

11  been entirely in vain if Mattel is allowed to reverse course and search the entirety of

12  Mr. Larian's hard drives.  Further, MGA recently abandoned its motion for

13  sanctions against Mattel for accessing active user files in violation of the Court's

14  order in exchange for a full release and compromise of this inspection issue.  That

15  resolution will be worthless if Mattel is permitted once again to change its mind.

16        That MGA has suffered and will continue to suffer because of Mattel's

17  renewed request to inspect active user files cannot reasonably be disputed .[13]  Ninth

18  Circuit law is clear that "[n]o litigant deserves an opportunity to go over the same

19  ground twice, hoping that the passage of time or changes in the composition of the

20  court will provide a more favorable result the second time."  *Disimone v. Browner*,

21  121 F.3d 1262, 1266 (9th Cir. 1997).  It is especially offensive for Mattel to do so

22  here, where it is clearly attempting to exploit the change in judicial personnel.

23  Mattel's request is tantamount to being denied repeatedly by one parent and then

24  

---

25  [13] On November 10, 2009, MGA expressly and specifically agreed not to seek contempt sanctions against Mattel based on its violation of the Court order

26  forbidding access to active user files. 12/11/2009 Hurst Decl. ¶¶ 2-6;  11/18/2009 Status Brief, Ex. C (11/10/2009 Tr. 4:4 – 10:19).  MGA expressly made this

27  promise in exchange for Mattel's agreement to abide by the terms of a revised protocol that did not involve access to active user files except as necessary for

28  purposes of validating the analysis of MGA's forensic experts regarding such files. *Id.*

1   seeking a different answer from another.  Experience demonstrates that allowing

2   such requests leads to a complete breakdown in discipline.  This situation is no

3   different, and Mattel must be held to its own prior agreements as well as the Court's

4   prior orders.

5                              **CONCLUSION**

6            For the foregoing reasons, MGA respectfully requests that the Court sustain

7   its objection to Recommendation No. 5 of the 1/21 Report.

8            Respectfully submitted,

    Dated:      February 2, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP

9

10

11                                        By: */s/ Warrington S. Parker III*
                                              Warrington S. Parker III
12                                            Attorneys for MGA Parties

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28