Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No.  CV 04-09049 DOC (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | **PHASE 2 DISCOVERY MATTER** |
| | **ORDER NO. 92, REGARDING:** |
| Defendant. | ***IN CAMERA* REVIEW PURSUANT TO ORDER NO. 88** |
| CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

The Discovery Master, having received documents and information submitted by Omni 808 for *in camera* review pursuant to Order No. 88, and having completed the *in camera* review of those documents, **ORDERS** as follows:

## I. FACTUAL BACKGROUND

In Order No. 88 I granted in part and denied in part Mattel, Inc.'s ("Mattel") Motion to Compel *In Camera* Review of Documents Improperly Withheld on Omni 808's Privilege Log ("Motion") [Docket No. 7022], and ordered Omni 808 to produce for *in camera* review the documents described as the Tanna Documents (listed as Appendix A to the Motion), including any attachments to those documents. (Order No. 88, p. 17). I also ordered Omni 808 to revise its Amended Privilege Log consistent with the standard set forth in Order No. 88, including with respect to the Attachments. (*Id.*).

Omni 808 produced the documents for *in camera* review on or about January 4, 2010.

## II. ANALYSIS

### A. Legal Standard

In reviewing the documents submitted by Omni 808, I applied certain well-established principles related to the applicability of the attorney-client privilege, the attorney work product doctrine, and any other basis for withholding asserted by Omni 808, including the applicability of those principles to communications with corporate in-house counsel, which are summarized below.

#### 1. The Attorney-Client Privilege

The attorney-client privilege is the primary protection asserted by Omni 808 as to the documents reviewed *in camera*. The privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." (*In re Grand Jury Investigation,* 974 F.2d 1068, 1070 (9th Cir. 1992) [citations omitted]). The attorney-client privilege applies where the party asserting it can demonstrate that:

"(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." (*Baxter Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL 5214330, *2 (N.D. Cal. 2008) [citing *In Re Grand Jury Investigation*, 599 F.2d at 1233; *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)]).

Most of the documents at issue here involve the question of protection under the attorney-client privilege either in the context of communications in the corporate context, where employees communicate with in-house counsel, with outside counsel, or with each other regarding legal advice.

The application of the attorney-client privilege to communications with a corporation's in-house counsel is a well-established principle. "In determining the existence of a privilege, no attempt is made to distinguish between 'inside' and 'outside' counsel." (*U.S. v. Rowe* 96 F.3d 1294, 1296 (9th Cir. 1996) [citations omitted]).

The leading case discussing the application of the attorney-client privilege to communications in the corporate context is *Upjohn v. United States*, 449 U.S. 383 (1981) ("*Upjohn*"). The Supreme Court recognized in *Upjohn* that "[i]n light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law . . . ." (*Upjohn*, 449 U.S. at 392 [citation omitted]). "In *Upjohn*, the Supreme Court rejected limiting the definition of 'client' to merely the corporation's 'control group,' instead focusing on the subject matter of the

1  attorney's communication with the employee." (*Hynix Semiconductor Inc. v.
2  Rambus Inc.*, 2008 WL 350641, *3 (N.D. Cal. 2008) [citing *Upjohn*, 449 U.S. at
3  394-95]). "In a sense, whether an employee is a 'client' collapses into whether the
4  communication between the attorney and the employee constitutes the giving or
5  receiving of legal advice." (*Id.*).

6  Indeed, the fact that a communication conveying legal advice is made
7  between a corporation's employees, and not between an attorney and the
8  corporation, is "not necessarily [] fatal to the attorney-client privilege." (*Id.* [citing
9  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 1065, 1077 (N.D. Cal.
10 2002)]). The issue is whether the employees are conveying to one another "legal
11 advice, which would be privileged, or [an employee's] business analysis, which
12 would not." (*Id.*).

13 Almost all of the documents provided by Omni 808 constitute e-mail chains,
14 each of which forwards multiple past communications. The question of whether an
15 e-mail chain or its various sub-communications are privileged requires analysis into
16 each of the e-mail communications in the chain, since "[e]ach email is a separate
17 communication, for which a privilege may or may not be applicable." (*Baxter
18 Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL 4547190
19 (N.D. Cal. 2008)). But, "even though one email is not privileged, a subsequent and
20 privileged email which forwards that prior non-privileged email, will allow the
21 privilege to attach to the entire email chain, including the non-privileged email
22 message." (*Rhoads Indus., Inc. v. Building Materials Corp. of America*, 254 F.R.D.
23 238, 240 (E.D. Penn. 2008) [citing *Upjohn*, 449 U.S. 383 (1981); *Muro v. Target
24 Corp.*, 243 F.R.D. 301, 307 (N.D. Ill. 2007)]; *see also Barton v. Zimmer*, 2008 WL
25 80647 (N.D. Ind. 2008) ["As applied to emails, this means that even though one
26 email is not privileged, a second email forwarding the prior email to counsel might
27 be privileged in its entirety."]).
28 //

And, where an e-mail chain contains communications between corporate employees both before and after a privileged communication contained within the chain, either some or all of that e-mail chain may nevertheless remain privileged. "[A]lthough written communication between corporate management employees is not necessarily protected by the attorney-client privilege, a party may be able to successfully demonstrate applicability of privilege by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice." (*Williams v. Sprint/United Management Co.*, 2006 WL 266599, *3 (D. Kan. 2006) [citing *Lintz v. American Gen. Finance, Inc.*, 1999 WL 450197, *4 (D. Kan. June 24, 1999); *United States v. Chevrontexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *In re Grand Jury Proceedings*, M-11-189, 2001 WL 1167497, at *24 (S.D.N.Y. Oct.3, 2001); *Penn Valley Pump Co., Inc. v. Alfa Laval Pumps, Inc.*, No. 97-5194, 1999 WL 1293348 (E.D. Pa. Dec. 30, 1999); *First Chicago Intern. v. United Exchange Co. Ltd.*, 125 F.R.D. 55, 58 (S.D.N.Y. 1989); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988); *United States v. American Tel. & Tel. Co.*, 86 F.R.D. 603, 619 (D.D.C. 1979); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 39 (D. Md. 1974); *Eutectic Corporation v. Metco, Inc.*, 61 F.R.D. 35, 40 (E.D.N.Y. 1973); *Danisch v. Guardian Life Insur. Co. of Am.*, 18 F.R.D. 77, 80 (S.D.N.Y. 1955)]).

"In deciding whether the attorney-client privilege [applies,] the Court must determine whether the communication is 'designed to meet problems which can fairly be characterized as predominantly legal.'" (*Rowe v. E.I. duPont de Nemours and Co.*, 2008 WL 4514092, *8 (D. N.J. Sept. 30, 2008); *see also In re Pappas*, 2009 WL 1574923, *2 (Bkrtcy. D. Del. 2009) ["To the extent these emails do not direct questions to the copied attorneys, discuss legal advice previously rendered, discuss whether legal advice should be sought in the future, or are not included within an email chain that was directed at some point to attorneys, such emails are not protected by the attorney client privilege . . . ."]).

### 2. The Attorney Work Product Doctrine

The attorney work product doctrine provides limited protection from disclosure of materials prepared by a party or its representative in anticipation of litigation. (*See* Fed.R.Civ.P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495 (1947)). It protects a 'zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories,' and is confined to "materials prepared in anticipation of litigation or for trial." (*Western Trails, Inc. v. Camp Coast To Coast, Inc.*, 139 F.R.D. 4, 9 (D. D.C. 1991) [citations omitted]).

## B. Outcome Of *In Camera* Review

Applying the legal standards summarized above to the documents provided by Omni 808 in response to Order No. 88, I make the following findings. For the parties' convenience, my findings are organized into two categories, namely: (1) documents properly withheld; and (2) documents that must be produced without redaction.

### 1. Documents Properly Withheld

Document Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16, and 27.

### 2. Documents To Be Produced Without Redaction

Documents Nos. 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 28.

## III. DISPOSITION

Omni 808 must produce those documents identified for production herein within ten (10) days of this Order. However, in the event that Omni 808 objects to this ruling, the production of any documents to which the appeal relates shall be stayed pending a final determination by the District Court. In the event that either

//
//
//

1 party objects to this order, such objection must be filed with the District Court
2 within seventy two hours.

4 Dated: February 11, 2010

By: /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master