Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:   213.629.7400
Facsimile:   213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>            Plaintiff,<br><br>       v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant. | Case No.  CV 04-09049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**AMENDED ORDER NO. 92, REGARDING:**<br><br>***IN CAMERA* REVIEW PURSUANT TO ORDER NO. 88** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 92
[Case No. CV 04-09049 DOC (RNBx)]

The Discovery Master, having considered the February 12, 2010 e-mail from counsel for Omni 808 and having determined that it is appropriate to correct an inadvertent error in the numerical designation of the documents referred to in Section II.B of Order No. 92, hereby issues the following Amended Order No. 92. Amended Order No. 92 supersedes and replaces Order No. 92, including revising Section II.B of the prior order.

## I.     FACTUAL BACKGROUND

In Order No. 88 I granted in part and denied in part Mattel, Inc.'s ("Mattel") Motion to Compel *In Camera* Review of Documents Improperly Withheld on Omni 808's Privilege Log ("Motion") [Docket No. 7022], and ordered Omni 808 to produce for *in camera* review the documents described as the Tanna Documents (listed as Appendix A to the Motion), including any attachments to those documents.  (Order No. 88, p. 17).  I also ordered Omni 808 to revise its Amended Privilege Log consistent with the standard set forth in Order No. 88, including with respect to the Attachments.  (*Id.*).

Omni 808 produced the Tanna Documents for *in camera* review on or about January 4, 2010.

## II.     ANALYSIS

### A.     Legal Standard

In reviewing the documents submitted by Omni 808, I applied certain well-established principles related to the applicability of the attorney-client privilege, the attorney work product doctrine, and any other basis for withholding asserted by Omni 808, including the applicability of those principles to communications with corporate in-house counsel, which are summarized below.

#### 1.     The Attorney-Client Privilege

The attorney-client privilege is the primary protection asserted by Omni 808 as to the documents reviewed *in camera*.  The privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as

1    an attorney's advice in response to such disclosures." (*In re Grand Jury*

2    *Investigation,* 974 F.2d 1068, 1070 (9th Cir. 1992) [citations omitted]).  The

3    attorney-client privilege applies where the party asserting it can demonstrate that:

4    "(1) the asserted holder of the privilege is or sought to become a client; (2) the

5    person to whom the communication was made (a) is a member of the bar of a court,

6    or his subordinate and (b) in connection with this communication is acting as a

7    lawyer; (3) the communication relates to a fact of which the attorney was informed

8    (a) by his client (b) without the presence of strangers (c) for the purpose of securing

9    primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some

10   legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4)

11   the privilege has been (a) claimed and (b) not waived by the client." (*Baxter*

12   *Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL 5214330, *2

13   (N.D. Cal. 2008) [citing *In Re Grand Jury Investigation*, 599 F.2d at 1233; *United*

14   *States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)]).

15        Most of the documents at issue here involve the question of protection under

16   the attorney-client privilege either in the context of communications in the

17   corporate context, where employees communicate with in-house counsel, with

18   outside counsel, or with each other regarding legal advice.

19        The application of the attorney-client privilege to communications with a

20   corporation's in-house counsel is a well-established principle.  "In determining the

21   existence of a privilege, no attempt is made to distinguish between 'inside' and

22   'outside' counsel." (*U.S. v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996) [citations

23   omitted]).

24        The leading case discussing the application of the attorney-client privilege to

25   communications in the corporate context is *Upjohn v. United States*, 449 U.S. 383

26   (1981) ("*Upjohn*").  The Supreme Court recognized in *Upjohn* that "[i]n light of the

27   vast and complicated array of regulatory legislation confronting the modern

28   corporation, corporations, unlike most individuals, constantly go to lawyers to find

1    out how to obey the law . . . ."  (*Upjohn*, 449 U.S. at 392 [citation omitted]).  "In

2    *Upjohn*, the Supreme Court rejected limiting the definition of 'client' to merely the

3    corporation's 'control group,' instead focusing on the subject matter of the

4    attorney's communication with the employee."  (*Hynix Semiconductor Inc. v.*

5    *Rambus Inc.*, 2008 WL 350641, *3 (N.D. Cal. 2008) [citing *Upjohn*, 449 U.S. at

6    394-95]).  "In a sense, whether an employee is a 'client' collapses into whether the

7    communication between the attorney and the employee constitutes the giving or

8    receiving of legal advice."  (*Id.*).

9            Indeed, the fact that a communication conveying legal advice is made

10   between a corporation's employees, and not between an attorney and the

11   corporation, is "not necessarily [] fatal to the attorney-client privilege."  (*Id.* [citing

12   *United States v. ChevronTexaco Corp.*, 241 F. Supp. 1065, 1077 (N.D. Cal.

13   2002)]).  The issue is whether the employees are conveying to one another "legal

14   advice, which would be privileged, or [an employee's] business analysis, which

15   would not."  (*Id.*).

16           Almost all of the documents provided by Omni 808 constitute e-mail chains,

17   each of which forwards multiple past communications.  The question of whether an

18   e-mail chain or its various sub-communications are privileged requires analysis into

19   each of the e-mail communications in the chain, since "[e]ach email is a separate

20   communication, for which a privilege may or may not be applicable."  (*Baxter*

21   *Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL 4547190

22   (N.D. Cal. 2008)).  But, "even though one email is not privileged, a subsequent and

23   privileged email which forwards that prior non-privileged email, will allow the

24   privilege to attach to the entire email chain, including the non-privileged email

25   message."  (*Rhoads Indus., Inc. v. Building Materials Corp. of America*, 254 F.R.D.

26   238, 240 (E.D. Penn. 2008) [citing *Upjohn*, 449 U.S. at 383; *Muro v. Target Corp.*,

27   243 F.R.D. 301, 307 (N.D. Ill. 2007)]; *see also Barton v. Zimmer*, 2008 WL 80647

28   (N.D. Ind. 2008) ["As applied to emails, this means that even though one email is

not privileged, a second email forwarding the prior email to counsel might be privileged in its entirety."]).

And, where an e-mail chain contains communications between corporate employees both before and after a privileged communication contained within the chain, either some or all of that e-mail chain may nevertheless remain privileged. "[A]lthough written communication between corporate management employees is not necessarily protected by the attorney-client privilege, a party may be able to successfully demonstrate applicability of privilege by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice." (*Williams v. Sprint/United Management Co.*, 2006 WL 266599, *3 (D. Kan. 2006) [citing *Lintz v. American Gen. Finance, Inc.*, 1999 WL 450197, *4 (D. Kan. June 24, 1999); *United States v. Chevrontexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *In re Grand Jury Proceedings*, M-11-189, 2001 WL 1167497, at *24 (S.D.N.Y. Oct.3, 2001); *Penn Valley Pump Co., Inc. v. Alfa Laval Pumps, Inc.*, No. 97-5194, 1999 WL 1293348 (E.D. Pa. Dec. 30, 1999); *First Chicago Intern. v. United Exchange Co. Ltd.*, 125 F.R.D. 55, 58 (S.D.N.Y. 1989); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988); *United States v. American Tel. & Tel. Co.*, 86 F.R.D. 603, 619 (D.D.C. 1979); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 39 (D. Md. 1974); *Eutectic Corporation v. Metco, Inc.*, 61 F.R.D. 35, 40 (E.D.N.Y. 1973); *Danisch v. Guardian Life Insur. Co. of Am.*, 18 F.R.D. 77, 80 (S.D.N.Y. 1955)]).

"In deciding whether the attorney-client privilege [applies,] the Court must determine whether the communication is 'designed to meet problems which can fairly be characterized as predominantly legal.'" (*Rowe v. E.I. duPont de Nemours and Co.*, 2008 WL 4514092, *8 (D. N.J. Sept. 30, 2008); *see also In re Pappas*, 2009 WL 1574923, *2 (Bkrtcy. D. Del. 2009) ["To the extent these emails do not direct questions to the copied attorneys, discuss legal advice previously rendered, discuss whether legal advice should be sought in the future, or are not included

1   within an email chain that was directed at some point to attorneys, such emails are
2   not protected by the attorney client privilege . . . ."]).

### 2.   The Attorney Work Product Doctrine

4   The attorney work product doctrine provides limited protection from
5   disclosure of materials prepared by a party or its representative in anticipation of
6   litigation.  (*See* Fed.R.Civ.P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495
7   (1947)).  It protects a 'zone of privacy within which to think, plan, weigh facts and
8   evidence, candidly evaluate a client's case, and prepare legal theories,' and is
9   confined to "materials prepared in anticipation of litigation or for trial."  (*Western
10  Trails, Inc. v. Camp Coast To Coast, Inc.*, 139 F.R.D. 4, 9 (D. D.C. 1991) [citations
11  omitted]).

### B.   Outcome Of *In Camera* Review

13  Applying the legal standards summarized above to the documents provided
14  by Omni 808 in response to Order No. 88, I make the following findings.  For the
15  parties' convenience, my findings are organized into two categories, namely: (1)
16  documents properly withheld; and (2) documents that must be produced without
17  redaction.

### 1.   Documents Properly Withheld

19  Document Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 26, and 27.

### 2.   Documents To Be Produced Without Redaction

21  Document Nos. 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25.

## III.   DISPOSITION

23  Omni 808 must produce those documents identified for production herein
24  within ten (10) days of this Order being filed.  In the event that either Omni 808 or
25  //
26  //
27  //
28  //

1  Mattel objects to this order, such objection must be submitted to the District Court

2  within seventy-two hours of the filing of this Order.

3

4  Dated:  February 16, 2010

5

6                                          By:        /s/ Robert C. O'Brien
                                                      ROBERT C. O'BRIEN
7                                                     Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28