1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    405 Howard Street
5   San Francisco, CA  94105-2669
    Tel: (415) 773-5700/Fax: (415) 773-5759
6
    WILLIAM A. MOLINSKI (State Bar No. 145186)
7   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
8   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
9   Tel: (213) 629-2020/Fax: (213) 612-2499

10  THOMAS S. MCCONVILLE (State Bar No. 155905)
    tmcconville@orrick.com
11  ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza, Suite 1600
12  Irvine, CA 92614-2258
    Tel: (949) 567-6700/Fax: (949) 567-6710

13  Attorneys for MGA Parties

14                  UNITED STATES DISTRICT COURT

15                 CENTRAL DISTRICT OF CALIFORNIA

16                       SOUTHERN DIVISION

17
    CARTER BRYANT, an individual,      Case No.  CV 04-9049-DOC (RNBx)
18                                      Consolidated with: Case No. CV 04-9059
              Plaintiff,                and Case No. CV 05-2727
19
         v.                             Hon. David O. Carter
20
    MATTEL, INC., a Delaware            THE MGA PARTIES' MOTIONS
21  corporation,                        RELATING TO ISSUE NOS. 2, 4, 6,
                                        AND 7 OF THIS COURT'S ORDER
              Defendant.                OF FEBRUARY 12, 2010
22                                      Courtroom:  9D
    AND CONSOLIDATED ACTIONS.
23

24

25

26

27

28
                                        MGA PARTIES' MOTIONS RE COURT ORDER OF FEB. 12,
                                        2010
                                        CV 04-9049 DOC (RNBx)

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to this Court's Order of February 12, 2010, the MGA Parties hereby file with this Court the attached Motions Relating to Issue Nos. 2, 4, 6 and 7.  Each motion is limited to two pages as provided for in this Court's Order.  They are provided under one cover for ease of the Court.

The declarations supporting these motions are also filed under one, separate cover filed concurrently with this filing.

For purpose of further guidance, the motions can be found on the following pages:

Issue No. 2—Failure to Produce Eckert Documents…………………1-2

Issue No. 4—Deposition of Matthew Bousquette…………………….3-4

Issue No. 6—Failure to Produce Documents…………………………5-6

Issue No. 7—Deposition of Patrick Ma……………………………....7-8

Respectfully submitted,

Dated: February 16, 2010              ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   _/s/ Annette L. Hurst_         __  _____
                                   Annette L. Hurst
                                Attorneys for MGA Parties

## ISSUE NO. 2—FAILURE TO PRODUCE ECKERT DOCUMENTS

Mr. Eckert, Mattel's CEO, testified about the existence of numerous types of documents that Mattel had not produced.  On January 26, 2010, this Court ordered production, stating that Mattel must produce "all nonprivileged documents previously identified by Eckert during his deposition, as well as any reports generated by Eckert that he referred to during his deposition" at least one week prior to his next deposition beginning February 22, 2010.  Dkt. No. 7434 at 9-10.  Thereafter, in order to ensure compliance, MGA sent Mattel a detailed list of the twenty-three types of documents identified by Mr. Eckert, with cites to his deposition transcript.  Dkt. No. 7488-2.  Mattel failed to produce any documents for twenty-one of the twenty-three identified types of documents—and many of the documents it did produce were the very same Form 10-Ks that MGA had already marked at Mr. Eckert's recent deposition session.

Mattel claims an ambiguity in the order (of which it did not seek clarification) that permits it to refuse to produce based on some unexplained distinction between identified "categories" of documents and "specific" documents.  If ever there were a distinction without a difference, this was it:  the "categories" in large part reflected regularly produced materials such as quarterly financials, weekly point-of-sale reports, Board Minutes, Board Agendas, and the like.  MGA was not required to go through and confirm that the materials were in fact produced in every single period about which the witness testified in order to establish the existence of regularly prepared documents.  The Court should again order immediate production, as detailed in the chart supplied by MGA.

## ARGUMENT

In the previous session with the Court covering disputed discovery issues, MGA requested that the Court order production of all documents identified by Mr. Eckert during his deposition.  The Court agreed, and issued its January 26 Order specifying that <u>all</u> nonprivileged documents identified by him be produced.  These

- 1 -

documents are relevant to numerous issues of liability and damages in the case, and producing the reports and other documents identified by Mr. Eckert affords MGA an opportunity to make a full examination of him regarding the issues.

Mattel had a full opportunity to provide input on the wording of the order after multiple discussions and filings—indeed, Mattel had the last word.  Nonetheless, Mattel refused to produce the documents ordered by the Court, objecting that MGA's chart identified "entire categories of documents" and refusing to produce anything other than "the *specific* documents identified by Mr. Eckert in his deposition"—whatever that meant.  Dkt. No. 7488-3 (emphasis added).  Last night (February 15), the date for compliance, Mattel produced only a handful of Form 10-Ks and certain NPD market share reports, completely failing to produce nearly all of the numerous documents identified by Mr. Eckert in his deposition.  Declaration of Diana Rutowski, ¶¶ 3-5.  Mattel produced no Board Minutes, no Board Memoranda, no Board Meeting Agendas or any other documents responsive to the other *twenty-one* types of documents identified by the witness.

Yet, in its letter Mattel pointed to only one "broad category of documents" that it found objectionable: "intellectual property license agreement(s) that Mr. Eckert has approved while at Mattel." Dkt. No. 7488-3.  The Discovery Master has ordered Mattel to produce license agreements "as they relate to MGA's ability to assess its alleged damages." Dkt. No. 7396 at 13.[1]  Mattel's sole objection fails.

Mr. Eckert's deposition continues on February 22, now less than a week away.  For the foregoing reasons, Mattel should be compelled to produce without further delay all documents about which Mr. Eckert testified, as identified in Exhibit A to MGA's List of Outstanding Discovery Issues, Dkt. No. 7488-2.

---

[1] Moreover, the chart provided by MGA included the Disney Princess license about which Mr. Eckert testified.  Dkt. No. 7488-2 at 8.  Disney Princess was a competitive product with Barbie and Bratz, and any license agreements entered into by Mattel are likely to show Mattel's valuation of this competitive product.  Such valuation is relevant not only to Mattel's damages claim for alleged trade secret misappropriation with respect to Bratz, but also to MGA's claim that Mattel has engaged in unfair competitive practices.

### ISSUE NO. 4—DEPOSITION OF MATTHEW BOUSQUETTE

This Court has directed that depositions be taken in Santa Ana to the extent possible.  Consistent with that MGA has produced witnesses, or offered dates for witnesses, associated with its side to testify in Santa Ana, including former MGA employees.

Mattel has not offered a date for Matthew Bousquette in Santa Ana, asserting that it does not control Mr. Bousquette.  Mr. Bousquette is the former President of Mattel Brands.  Mr. Bousquette has his own counsel, whose fees are being paid by Mattel.  Declaration of Thomas McConville ¶ 2.[2]  On November 9, 2009, MGA identified Mr. Bousquette to Mattel and the Court as one of the 25 witnesses it would depose.

MGA requested, both from Mattel and Mr. Bousquette's counsel, any date within the month of February 2010 for Mr. Bousquette to travel to California for deposition.  Mr. Bousquette has refused to come to California.  Instead, Mr. Bousquette was offered in Illinois, purportedly his state of residence, on February 25, 2010.

Consistent with the practice of the parties and consistent with this Court's rules, Mr. Bousquette should be ordered to appear in Santa Ana for deposition.

### ARGUMENT

The practice for deposition scheduling has been for each side to coordinate the scheduling of witnesses associated with their respective sides.  In this case, Mattel has been coordinating the dates for Mr. Bousquette's deposition, as he is a former Mattel executive.  Mattel advised MGA that Mr. Bousquette is unwilling to travel to Santa Ana for his deposition.  On February 1, 2010, Mr. Bousquette's counsel confirmed that position directly to MGA.

---

[2] Mr. Bousquette was previously deposed during Phase 1.  However, that deposition did not occur until after MGA moved to compel the deposition, and the Discovery Master entered an order requiring Mr. Bousquette to sit for his deposition.  *See* Docket No. 2738.

1    According to Mr. Bousquette's counsel, he currently resides in Illinois.

2    Records searches show that Mr. Bousquette owns a residence in California.

3    McConville Decl. Ex. 1.

4    MGA seeks assistance from the Court in having Mr. Bousquette come to

5    Santa Ana for his deposition.  Mr. Bousquette is a former executive of Mattel, and

6    Mattel is paying his legal fees.  Mr. Bousquette is a critical witness for MGA's

7    affirmative claims; recently-produced documents confirm that Mr. Bousquette

8    received confidential information concerning MGA product development in 2004.

9    McConville Decl. Ex. 2.

10    MGA has been and remains flexible on when that deposition should be

11    scheduled, understanding that witnesses who no longer work (or who have never

12    worked) for the parties have other pressing commitments.  However, because no

13    date has been offered for Mr. Bousquette to come for deposition in Santa Ana,

14    MGA seeks the Court's assistance.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Motions Re Court Order of Feb. 12, 2010
CV 04-9049 DOC (RNBx)

## ISSUE NO. 6—FAILURE TO PRODUCE DOCUMENTS

The following are documents requested from Mattel, but not yet produced:[3]

### (1)    CREATION OF MATTEL'S ALLEGED TRADE SECRETS

Mattel claims that MGA misappropriated hundreds of documents that contain Mattel trade secrets.  Mattel asserts that each of these documents--from templates for employee evaluations, to formats used for media calendars, to marketing presentations and price lists--were all created through substantial effort by Mattel and, thus, are extremely valuable.  Some of these materials are merely public information that Mattel has gathered.  To evaluate the claim that these are trade secrets of Mattel, to determine their value to Mattel, and to assess (among other things) damages, MGA has requested documents evidencing the time and effort spent by Mattel in creating these documents, including drafts, prior versions, and the like.  Molinski Decl., ¶ 2.

### (2)    MATTEL NON DISCLOSURE AGREEMENTS

Certain documents that Mattel claims were misappropriated are documents obtained from retail customers, like Walmart and Toys R Us.  MGA has requested copies of nondisclosure agreements between Mattel and these retailers to determine if the retailers were permitted to provide these documents or were under an obligation not to provide them.  Molinski Decl., ¶ 3.

### (3)    FORMER MATTEL EMPLOYEE HARD DRIVES

Mattel asserts that eight former employees engaged in "suspicious" behavior in their final few weeks at Mattel, such as requesting copies of, printing or downloading certain documents.  MGA has asked that Mattel produce the Mattel hard drives of these employees to see (1) the context of the behavior Mattel claims is "suspicious", (2) whether they were working on more significant or competitively sensitive information that they could have taken but did not; and (3)

---

[3] Even when Mattel has produced documents, portions of certain documents have been redacted inexplicably.  *See* Declaration of William A. Molinski filed concurrently herewith ("Molinski Decl."), ¶ 10.

1  whether there were communications contradicting Mattel's claims regarding the

2  circumstances of their departure.  Molinski Decl., ¶ 4.

3      **(4)    COMPETITIVE INFORMATION OBTAINED THROUGH**

4                **FALSE PRETENSES**[4]

5      Ron Brawer testified in deposition that individuals in the marketing group at

6  Mattel were tasked with obtaining information about Mattel's competitors'

7  products.  Molinski Decl. ¶ 5.  These individuals would use fake identification

8  cards to gain access to competitors' private showrooms to obtain future line lists,

9  catalogs and pricing information.  Mattel has failed to produce any documents from

10  the files of these individuals, including Sal Villasenor and others in his group.

11  Molinski Decl., ¶ 7.

12      **(5)    FALSE REPORTS BY MATTEL TO RETAILERS**[2]

13      Mr. Brawer also testified that Matt Bousquette and others at Mattel would

14  create false reports that misinformed retailers of what Mattel's competitors were

15  buying so as to induce the retailers to buy more product from Mattel.  Molinski

16  Decl., ¶ 6.  None of these reports have been produced.  They are relevant to MGA's

17  unfair competition claims.  Molinski Decl., ¶ 8.

18      **(6)    MATTEL'S OWNERSHIP OF TRADE SECRETS**

19      Mattel, Inc. cannot state a claim for trade secret misappropriation unless it –

20  as opposed to Mattel Mexico or Mattel Canada – owns the trade secrets at issue.

21  MGA has sought documents relating to ownership which have not yet been

22  produced.  Molinski Decl., ¶ 9.

23

24

25

26  [4] Some of the document requests at issue in this category are part of MGA's
Omnibus Motion To Compel, Dkt. No. 6816, for which the Court has already
27  ordered Mattel to produce documents and/or provide responses by February 21 and
March 4, 2010.  For purposes of this brief, MGA is focusing on requests that are
28  not subject to that order and are not part of MGA's Omnibus Motion To Compel.

## ISSUE NO. 7—PATRICK MA DEPOSITION

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and the Court's Order of February 12, 2010, the MGA Parties hereby seek an order excusing Patrick Ma from appearing to provide further deposition testimony in this case.  The basis for the requested relief is set forth below:

1) Patrick Ma is, and has been since 2002, the top ranking financial executive at MGA Hong Kong.  Mr. Ma is a CPA and a Hong Kong resident.

2) Mr. Ma came to the United States the week of February 1, 2010 to have his deposition taken at the request of counsel for Mattel.  Mattel counsel indicated that his deposition would take two days.

3) Mr. Ma has been deposed for almost 28 hours.  *See* Declaration of Mark P. Wine ("Wine Decl."), ¶ 3.  On February 4, he was deposed from 8 a.m. to just before 8 p.m. and on February 5, from 8 a.m. until 6:30 p.m.  Minimal breaks were taken and lunch was brought in.  *See* Wine Decl., ¶ 4.  After these two days, MGA revised Mr. Ma's travel plans and produced him for further deposition testimony on Sunday, February 7 commencing at 9 a.m. and ending at 6:45 p.m. to enable Mr. Ma to travel back to Hong Kong.  *See* Wine Decl., ¶ 5.

4) Mattel has indicated that it wants additional dates for the continuation of the Ma deposition.  *See* Wine Decl., ¶ 6.

5) There is no justification for requiring this individual to be brought back to the United States to sit for additional deposition days.  *See* Wine Decl., ¶ 7.

a) Mr. Ma testified in English for the entirety of his deposition.  Although an interpreter was present he only used the interpreter a handful of times to translate the question into Cantonese so that he could have a better understanding of what was being asked.  *See* Wine Decl., ¶ 8.

b) The pleadings and discovery responses by Mattel in this case only identify two specific issues relating to MGA Entertainment (HK) Limited ("MGA Hong Kong"):  i) loans allegedly made by Isaac Larian and family members to

1   MGA Hong Kong; and, ii) alleged knowledge by unnamed persons at MGA Hong

2   Kong related to Carter Bryant.  Mr. Ma indicated on the record what he knew about

3   the loans.  With respect to the Bryant allegations, Mr. Ma indicated that he had no

4   knowledge.  *See* Wine Decl., ¶¶ 9-10.

5         c)  During the course of the three days of testimony, Mr. Ma was

6   shown a total of 14 exhibits, 4 of them having been marked in previous depositions.

7   *See* Wine Decl., ¶ 11.  Counsel for Mattel often spent literally hours with Mr. Ma

8   on a single exhibit.  *See* Wine Decl., ¶¶ 12-13.

9         d)  A substantial amount of the time spent deposing Ma was on areas

10  unrelated to his duties where he had absolutely no knowledge.  One line of

11  questioning concerned Mr. Ma's opinion concerning why consumers purchased

12  dolls.  *See* Wine Decl., ¶ 15.  Mr. Ma answered with some variant of "No" or "I don't

13  know" a total of  561 times.  Conversely, when asked questions about his duties as

14  CFO at MGA Hong Kong, Mr. Ma provided complete and detailed responses.  *See*

15  Wine Decl., ¶ 16.

16    6)  Patrick Ma has been deposed for a period of time – nearly 28 hours on the

17  record – which would be sufficient to complete the questioning of a key witness in

18  most cases much less a witness with such a minor role in the overall context of the

19  case.

20    7) Finally, Mr. Ma is not the only source of information about MGA Hong

21  Kong in this case.  His immediate superior in the company, Managing Director

22  Edmond Lee, has been deposed three times in this case and will be deposed again

23  by Mattel on February 25 and 26.  *See* Wine Decl., ¶ 17.

24    A protective order should be issued preventing further efforts to depose Mr.

25  Ma.

26

27

28

MGA Parties' Motions Re Court Order of Feb. 12, 2010
CV 04-9049 DOC (RNBx)

1    Respectfully submitted,

2    Dated: February 16, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP

3

4                                       By:    /s/ Annette L. Hurst

5                                              Annette L. Hurst
                                               Attorneys for MGA Parties
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28