Bingham McCutchen LLP
TODD E. GORDINIER (SBN 82200)
todd.gordinier@bingham.com
PETER N. VILLAR (SBN 204038)
peter.villar@bingham.com
CRAIG A. TAGGART (SBN 239168)
craig.taggart@bingham.com
600 Anton Boulevard, 18th Floor
Costa Mesa, CA  92626-1924
Telephone:  714.830.0600
Facsimile:  714.830.0700

Attorneys for Non-Party
OMNI 808 INVESTORS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | Case No. CV 04-09049 DOC (RNBx)<br>c/w Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**OMNI 808 INVESTORS, LLC'S RESPONSE TO MATTEL, INC.'S SUBMISSION PURSUANT TO ORDER OF FEBRUARY 12, 2010 REGARDING THE DEPOSITION OF NON-PARTY JOSEPH MOINIAN**<br><br>Date:  TBD<br>Time:  TBD<br>Ctrm:  9D<br><br>**Phase 2**:<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

A/73296724.1

## I. INTRODUCTION

Non-party Omni 808 Investors, LLC ("Omni") respectfully submits the following response to Mattel's submission pursuant to this Court's Order of February 12, 2010, regarding the scheduling of the deposition of Joseph Moinian. As a preliminary matter, further depositions of Omni members serve no proper purpose and are being pursued in utter derogation of the FRCP. There is no question that $10 million of Omni's equity came from Mr. Moinian directly.

Indeed, and contrary to Mattel's representations to the Court, Omni has produced thousands of pages of documents in its possession regarding the Wachovia debt acquisition including documents showing *the source of all funds* used to purchase the debt. Mattel has known for at least the past 10 months where every dollar came from that Omni used to purchase the MGA debt obligation from Wachovia Bank. Mattel's representation to the Court last Thursday that the Omni Parties "*have produced virtually nothing*," is just the latest in a series of false representations its counsel has made for the improper purpose of harassing Omni and its members.

In fact, non-party Omni, its non-party members and its non-party attorneys have produced well in excess of 30,000 pages of documents relating to the Wachovia transaction, including the source of all equity and debt financing, and have endured many hours of deposition discussing all aspects of the transaction. Mattel's problem is not a lack of information, rather Mattel's problem is that the abundance of testimony and documentary evidence refutes each of its baseless theories.

As Omni's counsel outlined to the Court (and uncontroverted by Mattel in that discussion), the Omni members funded its equity without any equity capital coming from Mr. Larian. (See Summary and Uses of Funds and Omni's equity investors' wire transfer confirmation receipts attached hereto as Exhibits A and B, respectively.) Notably, these are among the many "source of funds" documents

A/73296724.1
- 1 -

produced to Mattel long ago that Mattel falsely *claimed* to be lacking in paragraph 7 of its claimed Listing of Certain Discovery Disputes.

All of the documents and testimony have long since demonstrated that Mr. Larian did not provide any of Omni's equity funding, is not a member of Omni and has no ability to control or direct any of Omni's activities. As Mr. Kadisha explained at his deposition, Larian caused certain entities to make a loan to Omni with "no equity participation in it, and there is no control whatsoever in the operation of Omni 808 or decision-making process." (Kadisha Depo., 78:6-15.)[1] Accordingly, the uncontradicted documents and testimony reflect that there is no basis for any allegation that Mr. Larian was the source of any Omni equity and, as a result, has no interest in or control over the affairs of Omni. This includes the money directly transferred from Mr. Moinian's bank account to Omni's bank account for use in connection with Omni's purchase of the MGA debt from Wachovia. (See Exhibit B.) Accordingly, Omni respectfully requests that the Court put a stop to this serial discovery abuse respecting non-party Omni and direct this nonsense to cease.

Mattel's assertion that "Emails produced by defendants indicate Larian funneled money for the Wachovia debt acquisition through Mr. Moinian" is also false. The emails themselves belie that assertion and further corroborate the overwhelming and uncontroverted testimony and documentary evidence in this case, including without limitation the wire transfer documents, all of which demonstrate that the Omni members funded its equity without any money coming from Mr. Larian.[2]

---

[1] Mr. Kadisha explained that "I will reduce my risk if Mr. Larian is, in a way, putting some money as a loan here and has some skin at risk." (Kadisha Depo., 171:10-12.)

[2] As Mr. Kadisha explained at his deposition, Larian caused certain entities to make a loan to Omni with "no equity participation in it, and there is no control

(Footnote Continued on Next Page.)

1    As Mattel well knows, the unspecified "emails" referenced by Mattel, as Mr.
2 Larian testified, not only establish that the money transferred by Mr. Moinian was
3 his but related instead to a hoped for plan to refinance the debt on more favorable
4 terms if market conditions permitted. A combination of the credit market's
5 continuing crisis and Judge Larson's December 10, 2008 Order made such a
6 transaction unfeasible. The bottom line, as Mattel well knows, and despite
7 whatever Mr. Larian hoped to do, is that Mr. Moinian invested his own money and
8 retains an equity interest in Omni to this day.
9    In describing the history of the parties' efforts to schedule Mr. Moinian's
10 deposition, Mattel conveniently fails to advise the Court of the most pertinent facts
11 and circumstances. Mattel, MGA, Omni and Mr. Moinian had mutually agreed to
12 schedule Mr. Moinian's deposition <u>in New York on January 11, 2010</u>. After
13 reaching that agreement, and days before the deposition was scheduled to occur,
14 Mattel's counsel abruptly started creating false issues surrounding it, including a
15 flat out denial that any such date had been agreed upon (the Court can refer to the
16 Joint Schedule filed in December to see that Mattel's counsel denial was simply
17 another falsehood).
18    As both the Court and Omni learned during the subsequent Court discussion,
19 the real reason Mattel changed its position was because Mattel's counsel, Mr.
20 Zeller, had a hearing in Los Angeles on another case that conflicted with his prior
21 agreement and which he wanted to attend. Rather than simply act professionally
22 Mattel went on the attack as is its wont.[3]

---

(Footnote Continued from Previous Page.)

whatsoever in the operation of Omni 808 or decision-making process." (Kadisha Depo., 78:6-15.) Mr. Kadisha explained that "I will reduce my risk if Mr. Larian is, in a way, putting some money as a loan here and has some skin at risk." (Kadisha Depo., 171:10-12.)

[3] Mattel misrepresents to the Court that Omni is a "intervening party-defendant". As Mattel knows, Omni has never been a defendant and only intervened in the case

(Footnote Continued on Next Page.)

A/73296724.1                             - 3 -

1      Contrary to Mattel's assertions, the Court does not have "jurisdiction" to
2 compel Mr. Moinian to fly 3,000 miles from his home in New York to California
3 for a deposition.  Mr. Moinian is a non-party to this litigation, and he resides and
4 works in New York.[4]

5      Mattel is improperly conflating issues of "personal jurisdiction" concerning
6 parties to a lawsuit with "subpoena jurisdiction" over non-parties.  The Court
7 correctly stated in its Order Regarding Discovery Issues dated February 12, 2010,
8 that, "since Mr. Moinian is not a party to this lawsuit, nor in the control of any
9 party to this lawsuit, the Court is unclear on the basis for Mattel's request." (Order
10 at 3, paragraph 12.)  Furthermore, the case law Mattel cites provides, of course, no
11 support for its argument that the Court possesses the authority to compel a

---

(Footnote Continued from Previous Page.)

for a limited purpose regarding the appointment of a receiver, which is no longer an issue.  In fact, Mattel has successfully argued to the Discovery Master that Omni did not have standing to raise certain discovery issues because it is not a party and no longer an intervener. The hypocrisy is stunning, but not new.  Nor, for that matter, is Omni's counsel being paid by MGA.  Repeating a falsehood doesn't make it any more factual.  It would be difficult to believe that Mattel could insert so many knowing falsehoods in so little space were it not for the fact that it has become, unfortunately, standard practice.

[4] The law governing the Court's authority to compel a nonparty to travel more than 100 miles to attend a deposition is well settled.  The Federal Rules of Civil Procedure require courts to modify or quash subpoenas that, *inter alia*, "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person …" (Fed. R. Civ. P. 45(c)(3)(A)(ii)).  "A subpoena *must* be quashed or modified if it purports to require a nonparty to travel to a place more than 100 miles from his or her residence or employment." *Matthias Jans & Assocs. v. Dropic*, 2001 U.S. Dist. LEXIS 4841 (W.D. Mich. Apr. 9, 2001) (emphasis in original); *see also Comm-Tract Corp., v. Northern Telecom, Inc.* 168 F.R.D. 4, 7 (D. MA 1996) (quashing a deposition subpoena that required a nonparty to travel to a place more than 100 miles from, at the time of service of the subpoena, the place where he resides, works and where he transacts business.); *In re Yukos Hydrocarbons Investments, Ltd.*, 2009 U.S. Dist. LEXIS 121268 (N.D.N.Y Dec. 30, 2009) (same).  As noted above, Mr. Moinian is a nonparty to this litigation.  He resides, is employed and regularly transacts business in New York.  Mattel's request that this Court order Mr. Moinian to travel 3,000 miles (30 times the jurisdictional limit) to attend a deposition is contrary to established law and, therefore, should be denied.

nonparty to travel 3,000 miles to attend a deposition.[5]

In light of the overwhelming and uncontroverted evidence that establishes exactly who funded Omni's acquisition of the Wachovia debt, Mr. Moinian's deposition is inappropriate and unnecessary at this stage. However, if the Court deems otherwise, no Order is necessary even if it were procedurally proper. As Omni has endeavored to do to date (despite the now proven maxim that no good deed goes unpunished), Omni will find out when Mr. Moinian may be deposed in New York, or see if there are dates and times in the future when Mr. Moinian will be in California and available to sit for deposition here.[6]

DATED: February 17, 2010    Bingham McCutchen LLP

By:  /s/  Todd E. Gordinier
     Todd E. Gordinier
     Attorneys for Non-Party
     Omni 808 Investors, LLC

---

[5] Moreover, Omni's counsel never "consented" to jurisdiction in California. Omni has always objected to it. Rather, as a favor to the Court, Omni's counsel asked Mr. Moinian if he would appear for deposition on his next visit to California, which at the time, was scheduled for early February. Unfortunately, Mr. Moinian's scheduled trip to California changed and he presently has no plans to be in California in the near future. Mattel's authority did not even consider deposition subpoenas, let alone a court's authority to compel a nonparty to travel in excess of 100 miles to attend a deposition. *See e.g. Wilson v. Paladin Enterprises*, 186 F.Supp.2d 1140, 1145-46 (D. Or. 2001) (denying defendant's motion to dismiss entire lawsuit for lack of personal jurisdiction); and *Pardazi v. Cullman Medical Center*, 896 F.2d 1313, 1317-18 (11th Cir. 1990) (holding that the defendant waived its personal jurisdiction and service of process objections because it failed to assert these objections it its pre-answer motion to dismiss.)

[6] The Court's concern about discovery disputes and the need for the Discovery Master's presence is likely not warranted. Since the January hearing Mr. Nazarian's deposition was taken and completed without incident -- providing yet more testimony regarding the funding of Omni and further establishing that none of the equity money came from Mr. Larian -- and there is no reason to believe Mr. Moinian's deposition would proceed differently.