MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**THE MGA PARTIES' OPPOSITIONS RELATING TO ISSUE NOS. 8, 10, 11, 12, 13, 16, 17, 18, 19(A)-19(F) AND 20 OF THIS COURT'S ORDER OF FEBRUARY 12, 2010**<br><br>Courtroom:  9D |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to this Court's Order of February 12, 2010, the MGA Parties hereby file with this Court the attached Motions Relating to Issue Nos. 8, 10, 11, 12, 13, 16, 17, 18, 19 and 20.

The declarations supporting these motions are also filed under one, separate cover filed concurrently with this filing.

For purpose of further guidance, the motions can be found on the following pages:

Issue No. 8—MGA's 30(B)(6) Witness………….…..………………1-2

Issue No. 10—MGA de Mexico 30(B)(6)……………………………3-4

Issue No. 11—The Deposition of Isaac Larian………………………5-6

Issue No. 12—The Deposition of Mr. Moinian………………………7-8

Issue No. 13—Machado and Trueba………………………………....9-10

Issue No. 16—Forensic Auditor Documents….……..………………11-12

Issue No. 17—MGA Financial Documents……………………….13-14

Issue No. 18—Indemnification and Fee Agreements………………...15-16

Issue No. 19(A)—Larian Depo. Transcripts….………………….....17

Issue No. 19(B)—Mattel's 4th Request for Documents...……………18

Issue No. 19(C)—Samples of All Products………………………….19

Issue No. 19(D)—Production of Financial Data………………….....20

Issue No. 19(E)—Identifying Which Entity Produce What………....21-22

Issue No. 19(F)—Eckert Deposition Exhibits………………………..23

1

Issue No. 20—Responses to RFAs……………………………………...24-25

2

Respectfully submitted,

3

Dated: February 16, 2010                ORRICK, HERRINGTON & SUTCLIFFE LLP

4

5

                                   By:   _/s/ Annette L. Hurst_____ __

6

                                          Annette L. Hurst
                                          Attorneys for MGA Parties

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE NO. 8—MGA'S 30(B)(6) WITNESS**

Mattel is moving to compel testimony on 151 topics contained in three 30(b)(6) notices. It does so despite the fact that: (i) certain of the topics have already been testified about by 30(b)(6) witnesses and witnesses in their individual capacities; (ii) other topics are the subject of a motion for protective order (Dkt. No. 1660) and an order precluding testimony on specific topics (Dkt. No. 3564); and (iii) the remaining topics are fatally overbroad. Moreover, if each identified topic were limited to one hour of testimony, the deposition would last almost nineteen days.

First, some of these topics have been testified to by 30(b)(6) witnesses. For example, Lisa Tonnu testified on behalf of MGA for topics 15, 19, and 78 (Fourth Notice).[1] McConville Decl., ¶ 6. Additionally, Sam Khare testified regarding topics 82, 84, 87, and 94 (Fourth Notice). McConville Decl. ¶ 6. Similarly, individual witnesses have testified on many of these topics. For example, there are multiple topics relating to MGA's forecasting and inventory systems which Nicole Coleman, the then V.P. of Sales for MGA, testified about in deposition for two days. McConville Decl. ¶ 13. Additionally, Topic 36 (Fourth Notice), seeks information related to the seizure of documents by Mexican authorities from MGA Mexico. This is a topic on which multiple MGA witnesses have testified as well as multiple MGA Mexico's 30(b)(6) witnesses. McConville Decl., ¶ 10. Despite the extensive existing testimony, Mattel apparently insists by its motion that MGA provide witnesses again.

Second, MGA has already moved for a protective order relating to ninety-six of these topics. Dkt. No. 1660. This order was granted as to four topics and tabled as to the remaining Phase 2 topics.[2] Dkt. No. 3564 (82, 84, 87, 94).

---

[1] Additionally, both MGA Mexico and MGA Canada have provided multiple 30(b)(6) witnesses.
[2] Additionally, Mattel agreed that topics 84-87 were Phase one topics. McConville Decl., ¶ 7.

Finally, the remaining topics are simply overbroad.[3]  McConville Decl., ¶¶ 8-10, 12-13.  For example, Topic 101 (Fourth Notice) seeks testimony regarding "DOCUMENTS created by each of the FORMER MATTEL EMPLOYEES in the first six months after each joined MGA."  This request encompasses thousands, if not hundreds of thousands of "DOCUMENTS", especially given the lack of subject matter limitation and the fact that "DOCUMENTS" includes email communications.  Accordingly, an email sent by an MGA employee to her spouse about non-work issues would be fair game.  Moreover, even if MGA could collect all such DOCUMENTS, preparing a witness to testify about the universe of documents would take months.  This request is merely representative of the problems with Mattel's 151 topics.

What these facts reveal is that Mattel's 151 topic 30(b)(6) demand is simply abusive.  And its arguments seeking enforcement fail to account for prior protective orders, prior testimony given by 30(b)(6) witnesses and individual witnesses.  This is not an instance where Mattel has come forward with specific needs.  It is a blunderbuss approach in the hopes that this Court will give them something because Mattel has asked for so much.  With respect, MGA asks the Court to simply deny Mattel's request.  If there is a true need here, Mattel has not come forward with it.

Ultimately, if this Court is inclined to grant Mattel's motion, it should limit the length of the deposition.  That is, regardless of the number of topics Mattel is allowed, the deposition should last no more than two days.

---

[3] MGA has not waived its right to object.  To the contrary, for the Fourth Notice, MGA has filed a protective order.  Docket No. 1660.  For Mattel's Phase Two Notice, Mattel unilaterally set this deposition for February 5, 2010 and MGA contacted Mattel on February 1, 2010 to discuss scheduling of the deposition.  Both parties agreed that the deposition would be postponed.  McConville Decl., ¶ 2-4.

**ISSUE NO. 10—MGA DE MEXICO 30(B)(6)**

MGAE de Mexico, S.R.L. de C.V. ("MGA Mexico") made two witnesses available for its 30(b)(6) deposition, Mrs. Susana Kuemmerle and Mr. Lewis Small—each subjected to a total of 28 and 19 hours of questioning, respectively. Both of MGA Mexico's witnesses were knowledgeable, well-prepared, and provided.  The Court should not penalize MGA Mexico by compelling it to offer additional 30(b)(6) testimony simply because Mattel did not like the testimony elicited.  Moreover, by its motion, Mattel also seeks possession of a document purportedly listing Mattel trade secrets that were seized from MGA Mexico's offices; yet this document was prepared at the direction of counsel and is thus privileged.

## I.  MGA MEXICO FULLY COMPLIED WITH THE COURT'S ORDER OF DEC. 17, 2010

Mattel claims that that Mr. Small "has not re-appeared for deposition after preparing to answer questions," this is simply untrue.  Mr. Small appeared for deposition in December 2009.  He left, and continued to gather information relevant to his status as a 30(b)(6) witness.  He interviewed sixteen current and/or former employees of MGA Mexico.  Declaration of Lewis L. Small ¶¶ 4-5 and 7.  In fact, Mr. Small spoke with each individual employee who was present the day the Mexican authorities raided MGA Mexico's offices.  *Id.* ¶ 9.  Upon concluding his investigation, and pursuant to the Court's instructions, Mr. Small was re-deposed on January 15, 2010 *for an additional full day of questioning* concerning, among other things, the alleged presence of Mattel trade secrets in MGA Mexico's offices. *Id.* ¶ 8.  As a result of his investigation and preparation, Mr. Small was prepared to testify, and indeed did testify, as the person most knowledgeable.  Mattel's assertions to the contrary are false.  Declaration of André De La Cruz ¶ 3.

The real issue, however, is not whether Mr. Small was adequately prepared—which he was—but whether he can be required to produce information that MGA

1  Mexico does not have.  Mattel wants MGA Mexico to verify that a CD left on a
2  desk of an employee was a genuine copy of a CD taken by the Mexican authorities
3  the day of the raid.  Mr. Small interviewed every employee present during the raid
4  and no one witnessed the authorities locating the CD, copying and placing it on the
5  MGA employee's desk.  *Id.* ¶ 3.  It appears that only the Mexican authorities can
6  provide the information Mattel seeks.  Thus, regardless of whether Mattel is
7  satisfied with the adequacy of Mr. Small's testimony, there is simply no other
8  person more knowledgeable on the noticed topics.  Having already provided
9  complete testimony on the designated topics, MGA Mexico should not be
10 compelled to produce yet another designee for a deposition that will most assuredly
11 not result in the gathering of any new information.

12 ## II.  THE "INVENTORY DOCUMENT" IS PRIVILEGED

13         At the December 17, 2010 hearing, Mattel requested that Mr. Small review a
14 document believed to be an inventory of documents purportedly found and seized
15 from MGA Mexico's offices.[4]  Upon investigation, it was discovered that this
16 document was prepared at the direction of Mexican counsel for the MGA individual
17 employees charged with a criminal offense in Mexico a few months after the
18 execution of the search warrant on MGA Mexico's offices.  Declaration of Cesar
19 Prieto ¶¶ 2-4.  Immediately upon this discovery, and during the second deposition
20 of Mr. Small, MGA made a claw back request on the record and demanded that all
21 copies of this document be either returned or destroyed.  Mattel complied with this
22 request and reserved its right to challenge the privilege asserted over the document
23 in question.  Now that MGA Mexico has assessed the privileged nature of the
24 document, it is clear and unequivocal that it should never have been produced.  This
25 is precisely the situation that falls squarely within the provisions of Federal Rule of
26 Evidence 502(b).

27
28

---

[4] The document referenced on the record bears Bates range: MGA 04358596 – 598. 12/17/2010 Hearing Tr. p. 16:5-6.

## ISSUE NO. 11—THE DEPOSITION OF ISAAC LARIAN

After Mattel deposed Mr. Larian in December for 2 full days, Mattel requested that MGA schedule an additional three days of deposition.  MGA did so, and Mr. Larian sat for the full three days in January answering questions both relevant and irrelevant.  At all times, the Discovery Master was present.

So now, Mr. Larian has now been deposed for seven days in this action, five of those days with the Discovery Master present. He testified at trial for seven days. He testified about products, Carter Bryant, the Omni transaction and various other topics, including damages.  Any claimed "outbursts" were handled and addressed by the Discovery Master, which included the conduct of Mattel's counsel.  Parker Decl. ¶ 2.  The emotional distress claims were stipulated to as not presently being involved in this case, and Mattel agreed that it would not ask questions based on that stipulation. *Id.* ¶ 3.  The Discovery Master ruled on the questions regarding perjury and obstruction. *Id.* ¶ 4.  And, Mr. Larian should not be ordered to answer for the reasons set forth in MGA's Objections to Discovery Master Order No. 90. Dkt. No. 7473.  Finally, as to the claim that Mr. Larian was obstructionist or evasive, he answered questions in deposition.  Mr. Larian was not designated as a 30(b)(6) witness with an obligation to prepare himself on particular topics, but MGA nonetheless offered that it would prepare him on any particular documents that Mattel chose to identify.  Mattel declined that offer.  *Id.* ¶ 5.

The depositions have been so extensive that Mattel has now gone off course, apparently in search of RICO claims.  It has asked about the exportation of electronics into Mexico without paying customs duties, MGA's sale of products containing chemicals known as phthalates in foreign countries, the receipt of a notice to recall a product containing a banned colorant, and allegations that MGA engaged Chinese manufacturers who had questionable labor practices.  Parker Decl. ¶¶ 6-9.  In short, Mattel is using its RICO claims as a pretext to conduct a wide-ranging investigation into every nook and cranny of MGA's business trying to

ferret out any evidence of potential unlawful acts in hopes of a RICO claim.

Mattel started down this road in November with the examination of MGA employee Brad Schneider regarding allegations of phthalates and smuggling.  It has continued this strategy in the depositions of Mr. Larian, Patrick Ma and others.  There is seemingly no means of limiting this wide-ranging inquiry by Mattel, which is why MGA asked for a RICO Case Statement and asked the Court to set deadlines for amendment of pleadings.  Now, MGA is being forced to use up its own depositions to adduce evidence that Mattel sells products containing banned phthalates, has had product safety and integrity problems, and has knowingly engaged Chinese manufactures with an enormous range of abusive labor practices and unsafe working conditions.  Mattel started it and is forcing MGA to respond in kind.  At this juncture, MGA is looking for any guidance the Court will provide as to whether there is any method acceptable to the Court to shut down this irrelevant, burdensome and harassing inquisition.

Months ago, Discovery Master O'Brien allowed an additional eleven hours of examination for Mr. Larian.  Since that Order, Dkt. No. 6591, Mr. Larian has sat for four times that number of hours of deposition.  No good cause exists for any further deposition of Mr. Larian.  If the Court disagrees and does find good cause, and for any reason is inclined to order further examination of Mr. Larian, then MGA and Mr. Larian respectfully request that such examination be limited to one more day, and that it occur only after the pending motions regarding production of privileged documents have been resolved.  That way, one more day is really only one more day—not one more day now and more days later.

## ISSUE NO. 12—THE DEPOSITION OF MR. MOINIAN

Joseph Moinian has no affiliation with MGA.  Mr. Moinian is an equity investor in Omni 808, the entity that purchased the nearly $300 million in debt owed by MGA to Wachovia on September 3, 2008.  Mr. Larian is not the source of Mr. Moinian's equity investment, a fact that Mattel well knows, but chooses to ignore.  Omni 808 stands in the shoes of whatever rights Wachovia had against MGA for that debt.  Mr. Moinian has his own counsel, who has filed a brief on this issue.  When or if Mr. Moinian's deposition occurs, MGA will have a representative present.

## ARGUMENT

Mr. Moinian is not a party to this case.  His only involvement is as an equity investor—one of 5—in Omni 808.  Mattel has made much of Omni 808, and has typically has not been troubled by the facts when it makes its arguments.

The facts, as adduced by Mattel at various depositions are:  certain equity investors put up money to purchase for approximately $109M a debt MGA owed to Wachovia, valued at approximately $300M.  Certain of those equity investors, Neil Kadisha, Leon Neman, and David Nazarian, have been deposed.  Each has said that Isaac Larian is not the source of the equity.  (Kadisha transcript, pgs. 78, 85-86, 103-107; Nazarian transcript, pgs. 57, 59; Neman transcript, pgs 141-144).  Mr. Larian has testified to this as well.

Certain of the $109M came from a loan from a $60M loan to Omni 808 from IGWT 826, an Isaac Larian affiliated company.  MGA has produced the documents reflecting the transfer of the $60M loan to Omni 808.

Mr. Kadisha, the leader of the Omni 808 investment group, testified that he told Wachovia early in the negotiations that Omni 808 wanted Mr. Larian to loan money for the transaction to increase Omni 808's leverage and Mr. Larian's risk in the event the deal ultimately was not successful.  (Kadisha transcript, pgs. 110-114).

1    Mr. Moinian is another equity investor for Omni 808.  Mr. Moinian was
2  prepared to testify, in New York, on January 11, 2010.  At Mattel's request, that
3  deposition was taken off calendar.

4    Mattel's repeated (and continual) allegations concerning Mr. Larian's role as
5  an equity investor in Omni 808 are not supported by fact.  During his deposition,
6  Mr. Larian explained his role in the transaction.  Mr. Kadisha confirmed that Mr.
7  Larian has no control over Omni 808.  Mattel does not like these facts, so it chooses
8  to ignore them.

9    At some point, this discovery must stop.  Whether that occurs before or after
10  Mr. Moinian's deposition, is for the Court to decide.  If Mr. Moinian is deposed,
11  MGA will have a representative present.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ISSUE NO. 13—MACHADO AND TRUEBA

Mattel seeks an Order compelling the testimony of Gustavo Machado and Marianna Trueba over their assertions of the protections of the 5th Amendment. MGA does not control these witnesses.  It does not represent them.  But what MGA does know, and what the facts demonstrate, is that any difficulty in getting these witnesses to provide substantive testimony stems from Mattel's actions.  The notion that MGA should suffer an adverse inference due to Mattel's actions is wrong.

## ARGUMENT

MGA does not represent these individuals.  Each has their own counsel. Nevertheless, in order to facilitate the taking of substantive testimony which MGA believes will assist it in defending against Mattel's claims, it arranged for these witnesses to come to California to testify on January 19, 2010.

In advance of that date, Mr. Machado's counsel submitted a proposed immunity order.  Mattel did not object to the entry of an immunity for Mr. Machado as it related to a U.S. prosecution, but did object to extraterritorial immunity.  *See* Mattel, Inc.'s Objections to Proposed Order Submitted by Defendant Gustavo Machado at 10 ("Nevertheless, Mattel does not oppose an order that would provide Machado (and Machado alone) with use immunity—as defined and construed under 18 U.S.C. § 6002.")

On January 19, 2010, both witnesses appeared, but neither was granted immunity—though the Court only addressed the issue as it related to Mr. Machado. After the hearing, both were deposed and asserted the 5th Amendment.

These witnesses are in this situation due to Mattel's actions.  Mattel initiated a criminal proceeding against these two in Mexico. Dkt. Nos. 7441, 7442. Mattel has the ability to stop that proceeding.  It chooses to continue.

MGA has made every effort to have these witnesses provide substantive testimony.  Mattel has not.  Mattel has claimed that an adverse inference should flow to MGA because of the actions Mattel has taken.  Mattel has commenced a

1    criminal proceeding and then blames the witnesses (and MGA) for these witnesses

2    concerns about testifying.  As the Court has stated, Mattel should not benefit from

3    the fact that Mattel's actions has caused these witnesses to remain silent.

4          On the issue of whether the Court can enter an Order compelling them to

5    testify over the claims of the 5th Amendment, the Court has a record as it relates to

6    Mr. Machado.  The Court does not have such a record as it relates to Ms. Trueba,

7    though it may ultimately be the same as Mr. Machado.

8          As to personal jurisdiction over Ms. Trueba, a search has found no cases that

9    stand for the proposition that by agreeing to come to the U.S. for a deposition, a

10   witness consents to a U.S. court's jurisdiction.  The closest parallel are cases that

11   state, if a witness voluntarily appears, the witness should not be subject to further

12   process.  *Viking Penguin, Inc. v. Janklow*, 98 F.R.D. 763, 765-66 (S.D.N.Y. 1983)

13   The case cited by Mattel, *United States v. Vacant Land*, 15 F.3d 128 (9th Cir. 1993)

14   is inapt, as it relates to substantive claims asserted by an interested party.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Opp. Re Court Order of Feb. 12, 2010
                           CV-04-9049 DOC (RNBx)

### ISSUE NO. 16—FORENSIC AUDITOR DOCUMENTS

MGA has produced the Durkin exhibits.  Mattel has used them at depositions to examine witnesses.  Its statement that it has attached a "list of exhibits to the Durkin reports which MGA has failed to produce" appears to be another example of hyperbole in the extreme.  Indeed, this is yet another example of make work for MGA, spending its time, money and energy on discovery rather than preparing for trial.

### ARGUMENT

Of the documents listed by Mattel in its Exhibit C, all relevant, responsive MGA documents have been produced, and were produced months ago.  Mattel has used them at deposition to examine witnesses.  For example, one document "MGA has failed to produce" is referenced as Durkin Exhibit 20.  It can be found at MGA2 0540620-22.  At his deposition on December 12, 2009, Mr. Larian was questioned at length about it, and over multiple days.  Indeed, one document, Durkin Exhibit 26 (at MGA2 0540062), was hand delivered, in Court, to counsel for Mattel, at which time Mattel's counsel acknowledged to the Court that he had received it.

Had Mattel asked, MGA would have directed them to the documents.  However, that would have avoided litigation.  That would have avoided costs.  That would have avoided time and energy.  Litigation is the means and the end, and cooperative discussion will not feed that need.

Attached as Exhibit 3 is a listing of the location of the produced Durkin Exhibits.  Not all Durkin exhibits were produced, as some were not generated by MGA.  Others were not produced as they are totally irrelevant.  As the Court will recall, Mr. Durkin, as a court-appointed auditor, had broad access to MGA, and reviewed information that has nothing to do with this litigation.  Thus, contrary to more hyperbole in its brief, Mattel is not entitled to all the documents Mr. Durkin received.  What Mattel has received, and what it should appropriately receive, are relevant documents.

But beyond the Durkin Exhibits, MGA has also produced documents from the hard drives of various custodians which Mr. Durkin collected.  This process, as MGA explained (and Mattel apparently does not accept), has taken time.  This process includes a review of data on hard drives that is potentially privileged.  Nevertheless,  Mattel can find these documents at the following numbers: MGA2 0550000–0554123; MGA2 0554139–0559940; MGA2 0561919–0578347; MGA2 0600099–0607648; MGA2 0692778–0696789; MGA2 0697159–0701300;  MGA2 074196–0734750; and MGA2 0774667–0844962.

In the future, rather than resort to hyperbole and litigation, Mattel could simply ask.

1

## ISSUE NO. 17—MGA FINANCIAL DOCUMENTS

2    MGA has produced thousands and thousands of pages of financial

3    documents.  MGA has produced financial statements from 2002 to the present, both

4    audited and unaudited. It produced consolidated income statements for 2002

5    through 2009.  It has produced consolidated balance sheets from 2006 to 2009.  It

6    has produced cash flow statements for 2007 through 2009.  It produced daily cash

7    flow reports for 2007 through 2009.  It has produced profit and loss statements

8    which reflects sales, revenues, net returns, operating expenses, development

9    expenses depreciation rates and so on for each month and for each segment of

10   MGA's operations, including Hong Kong, China, Mexico, Europe, and MGA U.S.

11   from 2004 through the end of 2009.  Just one of these documents runs 1,223 pages.

12   It has produced budget forecasts. It produced trial balance detail sheets for MGA

13   HK and MGA for 2005 through August 2009, each document running into

14   thousands of pages.  It has produced trial balance sheets for January 2007 to the end

15   of 2009.  It has produced sales by customer from 2006 through 2009  It has

16   produced sales by SKU, meaning by product, for 2007 through 2009.  It has

17   produced ledgers of advertising expenses for 2007 to August 2009.  It has produced

18   licensing payments received by entity and by date from 2003 through 2009.  It has

19   produced financials from MGA Mexico.  Parker Decl. ¶ 6.

20   This list is in paragraph 2 is not exhaustive and does not cover all of the years

21   produced.  As reflected in Mattel's letter to MGA requesting a supplemental

22   production, Mattel has additional financial documents.  Parker Decl. ¶ 7, Ex. 1.   In

23   response to Mattel's letter, MGA supplemented the production in November and

24   December 2009.  Parker Decl. ¶ 10

25   In its Order of February 12, 2010, this Court noted that Mattel failed to

26   identify the relevancy of the documents it requests.  Now, Mattel offers that they

27   are relevant to net worth, fraudulent transfers and Mattel's damages.  However, the

28   issue with this is that Mattel does not explain how what it has is insufficient or does

1  not contain the information it seeks.  Take, for example, the sales report referenced

2  by John Woolard, MGA has produced sales by customer, as noted.  Take, the

3  financial packages, MGA has produced profit and loss statements which reflects

4  sales, revenues, net returns, operating expenses, development expenses depreciation

5  rates and so on for each month and for each segment of MGA's operations,

6  including Hong Kong, China, Mexico, Europe, and MGA U.S..  MGA has

7  produced revenues attributable to Bratz by month for January 2007 to August 2009.

8  And again, these are just examples of documents.

9       What this request shows is Mattel's request for financial data is insatiable.

10  Mattel does not stop to convince this Court that some particular item is missing that

11  it needs.  Instead, it just keeps asking for document after document simply because

12  someone at deposition references a particular financial, even if the information

13  sought is already reflected in the financial information possessed.

14       And particularly with financial data, this strategy is pernicious and

15  burdensome.  At some stage underlying all financial data are the little pieces of

16  paper that are compiled to make a financial report, from the invoices received to the

17  purchase orders that go out.  At it cannot be enough to say that because someone

18  has referenced some form of data, that Mattel is thereby entitled to it.  At some

19  point, and frankly it should be now, Mattel should be held to answer for what it

20  needs specifically, and not just general claims that there might be more out there.

21

22

23

24

25

26

27

28

### ISSUE NO. 18—INDEMNIFICATION AND FEE AGREEMENTS

MGA has fully complied with Discovery Master Order No. 60, which required both parties to summarize their respective payment of legal fees on behalf of individual witnesses in this case.  By its express terms, the order did **not** require MGA to produce any documents concerning the payment of these fees.  *See* Dkt. No. 60 (Order No. 60) at 28 ("MGA need not produce any documents concerning the payment of legal fees.").

Despite this unambiguous language, Mattel has twisted the Discovery Master's order into something it is not.  A plain reading of the order reveals that the production of documents related to the payment of legal fees is not required.  At best, the order requires both sides to disclose payment information in verified discovery responses.  MGA provided the requisite responses on October 2, 2009.  *See* Supplemental Responses of MGA Entertainment, Inc. To Interrogatory Nos. 67, 68 and 69 Pursuant To Discovery Master Order No. 60 Dated September 9, 2009, at 8-13, 15-18, 21-22, and 23.

Mattel is reaching when it claims that Order No. 60 obligates MGA to produce Ron Brawer's recent employment contract.  As noted, the order says nothing about MGA having to produce documents related to the payment of fees.  Quite the opposite, the order disclaims any obligation by MGA to produce such documents.  Further, it is a stretch for Mattel to argue that Mr. Brawer's recent contract comes within the ambit of Order No. 60.  Just because the contract contains indemnification language does not mean it records or reflect the payment of legal fees.  Finally, and perhaps most importantly, Mr. Brawer's contract did not even exist in executed form until January 22, 2010 (as Mr. Brawer made clear in his deposition).  Therefore, even if it were somehow responsive, MGA could not have produced this document in executed form when Order No. 60 was issued in September 2009.

1      Notwithstanding Mattel's failure to link Mr. Brawer's employment contract

2  to Order No. 60, MGA will in fact produce a copy of the agreement that Mattel now

3  seeks.  However, there is no support for Mattel's spurious accusation that MGA has

4  somehow failed to produce documents responsive to Order No. 60.  As explained

5  above, Mr. Brawer's employment agreement cannot be used as an example of

6  MGA somehow withholding documents responsive to Order No. 60.  Mattel's

7  motion to compel should therefore be denied.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ISSUE NO. 19(A)—LARIAN DEPOSITION TRANSCRIPTS

2       Deposition transcripts of Isaac Larian taken in other actions have been

3  produced.

**ISSUE NO. 19(B)—MATTEL'S 4TH REQUEST FOR DOCUMENTS**

Mattel's Fourth Request for Production of Documents seeks documents relating to MGA's expenditures on Moxie Girlz, a product MGA introduced after the Court ordered that it no longer had rights to Bratz, Little Tykes and Bratz, apparently to compare and contrast these expenditures.  Mattel claims that these are relevant to its claims that MGA intentionally harmed Bratz in violation of the constructive trust and that it is relevant to MGA's claims of injury to the Bratz brand.  Parker Decl. ¶ 8, Ex. 2.  To come out with a new product when one has been deprived of a product by court order cannot be wrongful.  That is not intentional wrongdoing, even if there were a cause of action for violation of a constructive trust, which there is not.  *See, e.g., Batt v. San Francisco*, 65 Cal. Rptr. 3d 716, 728 (Cal. App. 2007).  Moreover, during much of the time period following the injunction giving Mattel the rights to Bratz, MGA was under the supervision of a Receiver and Monitor who was expressly charged with "monitor[ing], supervis[ing], and oversee[ing] the exploitation" of Bratz, Dkt. No. 5565 at 10, and "manage[ing], preserve[ing], and maximize[ing] the profits of . . . the Bratz Brand . . . ."  Dkt. No. 5273 at 17.

As for the claim that these documents are relevant to Mattel's defenses and MGA's claims, other than to say it, Mattel does not explain how or why.  Expenditures as to Moxie Girlz as compared to Little Tykes as compared to Bratz is in no way relevant.

In short, these requests are simply proof that Mattel wishes to make any action taken by MGA an issue in this case.  Under Mattel's theories, if MGA comes out with a new product because its rights to another have been removed, that is wrongful.  And not only is it wrongful, it entitles Mattel to information about every MGA product.  This discovery is irrelevant and should not be allowed.

## ISSUE NO. 19(C)—SAMPLES OF ALL PRODUCTS

MGA does not oppose inspection.  It opposes production.  Mattel's demand that MGA produce samples of each of the CONTESTED PRODUCTS is beyond the scope of MGA's obligations under the Federal Rules of Civil Procedure. Because most of the infringed products are no longer in inventory, and because MGA only has one version of most of the infringed products, MGA does not have within its custody or control samples of all infringed products to produce to Mattel. MGA is currently in the process of determining which samples of the infringed products that it can provide to Mattel and will do so by February 26, 2009.  MGA has, and will continue to, produce for inspection any infringed products that it contends infringes and for which samples cannot be produced to Mattel.  MGA also will produce additional products for inspection no later than February 26, 2009.

1    **ISSUE NO. 19(D)—PRODUCTION OF FINANCIAL DATA**

2         MGA has produced financial documents.  It produced documents in

3    November 2009, December 2009 and most recently in response to this Court's

4    January 26, 2010 order.  Mattel's claim that MGA has refused to supplement is

5    false.  Parker Decl. ¶¶ 10-11.

6         There are two additional issues that MGA has with Mattel's request.  First,

7    Mattel is claiming that the information provided "is stale."  Under this theory,

8    MGA will be ever producing financial documents to Mattel.  When MGA

9    supplemented in November 2009 and December 2009, it provided the information

10   then available.  Mattel should not be allowed to continue to ask MGA to provide

11   supplements.  Under the rules, MGA understands its obligations but it is simply

12   burdensome to again be asked to provide documents, particularly when, as reflected

13   by Mattel's Exhibit D, Mattel insists on claiming that MGA has not produced

14   anything, when it has.

15        Second, as with its claim that MGA has failed to supplement, MGA has

16   provided documents in native file format when requested by Mattel.  This is

17   consistent with the parties' agreement that they will provide documents in native

18   file format when requested.  To date, MGA has not refused to provide financial

19   information in native file format when Mattel has made that request.  It will

20   continue to do so.  To suggest that MGA is in violation of some court order or

21   otherwise has refused Mattel is simply wrong in every sense.  Parker Decl. ¶ 12.

22

23

24

25

26

27

28

# ISSUE NO. 19(E)—IDENTIFYING WHICH ENTITY PRODUCED WHAT

Mattel is making a mountain out of a mole hill.  Though not entirely clear from its prose, Mattel appears to be asking for three things.  First, Mattel seeks an explanation as to why MGA's September 16, 2009, production letter referenced certain bates ranges for which Mattel claims it never received documents.  Second, Mattel seeks to confirm the identity of the producing party for the September 21, 2009, production.  Third, Mattel seeks documents referenced in Exhibit E to its motion (to the extent they exist and are not "true" gaps).  MGA's response to each of these requests is set forth below.

## Explanation Regarding September 16, 2009 Production

On September 16, 2009, MGA Mexico produced an external hard drive containing thousands of documents responsive to Discovery Master Order No. 52.  In a separate cover letter that preceded this production, counsel for MGA made clear that MGA Mexico was the producing party.  *See* Declaration of William A. Molinski filed herewith ("Molinski Declaration"), Ex. A (9/15/2009 Letter from W. Molinski to M. Searcy)

In this same letter, and as required by DM Order No. 52, counsel for MGA also identified a list of documents that MGA Mexico had previously produced— separate and apart from its production on September 16.  *Id.* (Exhibit A to 9/15/2009 Letter).  This list identified documents previously produced by bates number and by MGA Mexico custodian.  *Id.*

Upon receipt of this list, Mattel apparently cross-referenced it with the MGA documents in its possession.  Mattel claimed that the list referenced thousands of pages that Mattel never received.  Molinski Decl., Ex. B (9/21/2009 Letter from M. Searcy to W. Molinski).

Counsel for MGA reviewed Mattel's list of "missing" documents and subsequently identified some 46,000 pages that Mattel had in fact received.  Molinski Decl., Ex. C (10/1/2009 Letter from W. Molinski to M. Searcy). MGA

1   even included the production dates for those documents to show they had been

2   produced to Mattel in some cases more than two years ago. *Id*. As for the

3   remaining documents, MGA noted that a gap in its production did not necessarily

4   mean that Mattel was missing any documents as there were "true gaps" in MGA's

5   production. *Id*.

6   **Producing Party For September 21, 2009 Production**

7   On September 21, 2009, MGA Mexico produced an additional 279,000 pages

8   of documents. As Mattel previously surmised, the custodial data for this production

9   indicated that MGA Mexico was the producing party. In fact, MGA Mexico was

10  the producing party. There is nothing further to discuss regarding this item.

11  **Documents Identified In Exhibit E To Mattel's Motion**

12  The documents identified by bates range in Exhibit E to Mattel's motion is

13  the very same list that Mattel provided on September 21, 2009. Molinski Decl., Ex.

14  B. MGA has already identified some 46,000 pages of documents on that list—

15  some of which  Mattel has had in its possession for years. Molinski Decl., Ex. C.

16  Nevertheless, in an effort to resolve this issue once and for all, MGA will

17  search its production database for any and all documents that fall within Mattel's

18  specified bates ranges. MGA will further extract and produce all such documents

19  in electronic form—even where they have previously been produced to Mattel. To

20  the extent there are any discrepancies between MGA's production and the bates

21  ranges identified within Exhibit E, MGA will confirm that those are true gaps and

22  that no bates-labeled documents exist for those ranges

23

24

25

26

27

28

MGA PARTIES' OPP. RE COURT ORDER OF FEB. 12, 2010
CV-04-9049 DOC (RNBx)

## ISSUE 19(F)—ECKERT DEPOSITION EXHIBITS

MGA will produce for inspection no later than February 26, 2009, Exhibits 7511, 7515, 7516, 7517, 7524, 7525, 7526 and 7527 to the Eckert deposition.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ISSUE NO. 20—RESPONSES TO RFAS

Mattel has moved to compel substantive responses to fourteen allegedly defective requests for admission that it propounded on MGA Mexico on December 4, 2009.  MGA Mexico provided Mattel with its timely responses on January 4, 2010.  The problem with Mattel's motion is this: its requests for admission seek information unknown to MGA Mexico.  Mattel is therefore seeking to compel MGA Mexico to admit or deny facts about which it has no knowledge.  For example, Request for Admission No. 7, which Mattel contends "MGA Mexico failed to provide [a] substantive answer[] to," states as follows:

> Admit that the MATTEL-AUTHORED DOCUMENTS were in YOUR possession before YOU produced them to MATTEL in THIS ACTION.

In response, MGA Mexico provided a *substantive* response:

> Subject to and without waiving the foregoing objections, MGA states that on October 27, 2005, Mexican authorities executed a search warrant on MGA de Mexico's office in Mexico City.  During this search, the Mexican authorities purportedly found and seized certain documents that Mattel contends are MATTEL-AUTHORED DOCUMENTS.  Also, according to the deposition testimony of Mrs. Susana Kuemmerle, upon her return to MGA de Mexico's office space, she discovered a copy of what appeared to be material that the Mexican authorities seized on her desk, which she subsequently sent to MGA's outside counsel.  MGA has produced a subset of the documents defined by Mattel as MATTEL-AUTHORED DOCUMENTS.  Except as so stated MGA denies this request.

Thus, as opposed to simply admit or deny, MGA Mexico actually provided more information than is necessary under the Federal Rules.  The fact is, even after appropriate inquiry, no one within MGA Mexico can say positively that the documents the Mexican authorities allegedly found—both on a CD and in hard copy form—were actually seized from MGA Mexico's offices nor can anyone vouch for their authenticity.

Moreover, Mattel categorically suggests that MGA Mexico has direct control over Machado, Trueba, and Vargas and can "readily obtain" responsive information from each of them.  Or, at least obtain enough information to either admit or deny

the requests in issue.[5]  In fact, however, these individuals have not been employees of the company since June 2009 and are independently represented by counsel.[6]  Accordingly, for the Court to compel MGA Mexico to either admit or deny these requests is tantamount to requiring that it completely guess as to what exists or does not exist in each individual's home.

Furthermore, Mattel contends that MGA Mexico improperly responded to requests stating that "MGA Mexico has also refused to either admit or deny that MGA did not author or prepare the Mattel documents."[7]  Mattel fails to mention, however, that its requests define MATTEL-AUTHORED DOCUMENTS as encompassing thousands of pages of documents, making each request incredibly onerous and facially uncertain.  Even with this, to the extent MGA Mexico was in a position to either admit or deny a specific request, it did so.  For example, in response to Request No. 49, which seeks to determine whether MGA Mexico prepared or authored MATTEL-AUTHORED DOCUMENTS, MGA Mexico stated "that several of the supposed MATTEL-AUTHORED DOCUMENTS originated from third parties, including, for example, The NPD Group Inc. (MGA 0105094-MGA 0105104) and ACNielsen (MGA 0139370-MGA 0139533).  Except as so stated, MGA lacks sufficient information to admit or deny this request."  Because some of the purported Mattel authored documents were *actually* prepared by third parties, it is likely that several of those documents were prepared for or by MGA Mexico, but absent that affirmation, MGA Mexico has responded as best it could.

Accordingly, and in light of the substantive responses already given, the Court should deny Mattel's motion to compel MGA Mexico's further responses.

---

[5] Specifically, Request Nos. 31-36 each require that MGA Mexico respond as to what existed in each individuals' **home** during a span of **six years**.
[6] As the Court is aware, Mr. Vargas is in active "settlement" negotiations with Mattel and is presently not cooperating with MGA Mexico.
[7] Seemingly referring to Request Nos. 49-52 and 63-64.

1

Respectfully submitted,

2

Dated: February 17, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP

3

4

By:    */s/ Annette L. Hurst*

5

Annette L. Hurst
Attorneys for MGA Parties

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -