MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DECLARATIONS IN SUPPORT OF THE MGA PARTIES' OPPOSITIONS RELATING TO ISSUE NOS. 8, 10, 11, 12, 13, 16, 17, 18, 19(A)-19(F) AND 20 OF THIS COURT'S ORDER OF FEBRUARY 12, 2010** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to this Court's Order of February 12, 2010, the MGA Parties hereby file with this Court the attached Declarations of Thomas McConville, Warrington S. Parker III, William A. Molinski, Lewis L. (Bud) Small, Andre de la Cruz, and Cesar Antonio Prieto Palma.

For purpose of further guidance, the declarations can be found on the following pages:

Issue No. 8—Thomas McConville Declaration…..…………………1-6

Issue Nos. 11, 17, 19(B), (D)—Warrington S. Parker III
        Declaration……………...…………………………….7-9

Issue No. 19(E)—William Molinski Declaration………………….. 10

Issue No. 10—Lewis L. (Bud) Small Declaration…………………...11-14

Issue No. 10—Andre De La Cruz Declaration………………………14-16

Issue No. 10—Cesar Antonio Prieto Palma Declaration…………….17

Respectfully submitted,

Dated: February 17, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   _/s/ Annette L. Hurst_ __
          Annette L. Hurst
       Attorneys for MGA Parties

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ISSUE NO. 8**

I, Thomas S. McConville, declare as follows:

1.      I am a member of the Bar of the State of California and admitted to practice before this Court, and a partner with the law firm of Orrick, Herrington & Sutcliffe LLP, lead counsel for the MGA Parties.  I make this declaration in support of the MGA Parties' Opposition To Mattel Inc.'s Motion to Compel MGA Entertainment Inc.'s Production of 30(b)(6) Witnesses.  I have personal knowledge of the facts set forth in this Declaration, unless stated as to information and belief, in which case I am informed and believe it to be true.  If called as a witness, I could and would testify competently to such facts under oath.

**Meet and Confer Regarding Mattel's First Phase 2 Notice**

2.      On or about February 1, 2010, I spoke to counsel for Mattel, Mr. Scott Watson, regarding Mattel's First Phase 2 Notice of Deposition on MGA Entertainment, Inc.

3.      During my conversation with Mr. Watson, I confirmed with Mr. Watson that Mattel would not be expecting MGA to produce a witness on February 5, 2010 as specified in the notice.

4.      Mr. Watson indicated that he understood that no witness would be appearing on that day.

**Mattel's 30(b)(6) Notices to the MGA Parties**

5.      Mattel has served five separate 30(b)(6) notices on MGA Entertainment, Inc., two 30(b)(6) notices on MGAE de Mexico, and one 30(b)(6) notice on MGA Entertainment Canada.  All together these notices include more than 300 topics.

**Mattel's Fourth Notice of Deposition of MGA Entertainment, Inc.**

6.      Lisa Tonnu has testified on behalf of MGA regarding Topics 15, 19, and 78.  Sam Khare testified as a 30(b)(6) witness regarding topics 82, 84, 87, and

94.

7.    As set forth in MGA's Motion for Protective Order from Mattel, Inc.'s Fourth Notice of Deposition of MGA, Docket No. 1660, Topics 1-4, 6-14, 16, 20-29, 31, 33, 35, 38, 42, 49-54, 56-66, 68-88, and 95-102 are unduly burdensome, duplicative and cumulative of prior discovery, or are not reasonably particular. [1] MGA's motion also seeks a protective order for topics No. 5, 17, 18, 30, 37, 39-41, 43-48, 55, 67, 89-21, and 94 on the grounds that they are not properly the subject of 30(b)(6) testimony, but rather should be served as properly framed interrogatories. Mattel has previously agreed that Topics 84-87, relating Carter Bryant and his employment agreement with MGA, were part of Phase One.

8.    The objectionable nature of many of the topics in the Fourth Notice is apparent.  For example, Topic 101 seeks testimony regarding "DOCUMENTS created by each of the FORMER MATTEL EMPLOYEES in the first six months after each joined MGA."  This request includes thousands, if not hundreds of thousands of documents, especially when considering "DOCUMENTS" includes email communications.  Further, documents are not limited by subject matter. Accordingly, an email sent by a worker to his or her spouse about non-work issues would be fair game under this topic.  Moreover, even if MGA could collect all such documents, preparing a witness to testify would take months.

9.    Many other topics are also overbroad, unduly burdensome and vague, including, but not limited to:

No. 18:    "The number of units of the CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in inventory, imported, exported, shipped, sold, or offered for sale by any PERSON, including but not limited to YOU."

No. 20:    "Any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to the returns of, or the number of or rate of defects for, such products."

---

[1] The topics are attached as Exhibit A to Mattel, Inc's Submission Pursuant to Order of February 12, 2020, Regarding Certain Discovery Disputes, pp. 21-33.

No. 26:      "To the extent not disclosed in response to any other
Topic, all other facts RELATING TO any claim made by YOU against
MATTEL or the CONTESTED MATTEL PRODUCTS, and the
IDENTITY of all PERSONS with knowledge thereof."

No. 33:      "YOUR receipt, reproduction, copying, storage,
transmission, transfer, retention, destruction, deletion or use of any
DOCUMENTS, data and/or information, including but not limited to
any compilation of information, that was prepared, made, created,
generated, assembled or compiled by or for MATTEL and that was not
publicly available at the time of YOUR receipt of such DOCUMENT,
data and/or information."

No. 41:      "COMMUNICATIONS with any PERSON, RELATING
TO YOUR receipt, reproduction, copying, storage, transmission,
transfer, retention, destruction, deletion or use of any DOCUMENTS,
data and/or information, including but not limited to any compilation
of information, that was prepared, made, created, generated, assembled
or compiled by or for MATTEL and that YOU received, directly or
indirectly, from any FORMER MATTEL EMPLOYEE."

No. 63:      "COMMUNICATIONS between YOU and any PERSON
RELATING TO the retention, destruction, transfer, or use of any
information or DOCUMENTS known to or possessed by any current
or former MATTEL employee or contractor."

No. 79:      "The identity of DOCUMENTS that YOU have reason to
believe were created by or originated from MATTEL (excluding
MATTEL products that YOU purchased at retail) at any time since
January 1, 1998."

No. 83:      "The public perception of the CONTESTED MGA
PRODUCTS, including without limitation with respect to the
appropriateness or suitability of Bratz for children."

10.      Additionally, the duplicative nature of many of these topics has only
increased in the two years since the Fourth Notice was served.  For example, Mattel
is demanding a 30(b)(6) witness about MGA's communications with Janine
Brisbois, Ron Brawer, Carlos Gustavo Machado and Mariana Treuba Almada prior
to their start dates (Topics 44-47) even though each of these individuals have been
deposed in this action, sometimes multiple times.  Topic 36, which seeks
information related to the seizure of documents by Mexican authorities from MGA
Mexico is also a topic on which multiple MGA witnesses have testified
individually, as well as at least two MGA Mexico 30(b)(6) witnesses.  Topic 88
seeks testimony regarding "the factual basis for YOUR affirmative defenses."

- 3 -

MGA is asserting thirty-five affirmative defenses in this action, so in essence this request seeks testimony on thirty-five topics.  Moreover, MGA has provided 837 pages worth of interrogatory responses to contention interrogatories directed at its affirmative defenses.  Finally, Topics 49-59 seek testimony regarding the factual bases for MGA's affirmative claims.  MGA has already provided detailed responses, totaling almost two hundred pages, setting forth the factual bases behind its affirmative claims in response to Mattel's contention interrogatories.

**Mattel's First Phase 2 Notice of Deposition of MGA Entertainment, Inc.**

11.     Mattel's First Phase 2 Notice of Deposition of MGA Entertainment, Inc. is equally objectionable.  First, Topics 1-3, 13, 17, 24, 26, 27, 36 are duplicative of topics included in Mattel's Fourth Notice and subject to MGA's motion for protective order.

12.     Second, the topics are objectionable in so far as they are unduly burdensome, duplicative and cumulative of prior discovery, or are not reasonably particular.  Examples of these objectionable topics include, but are not limited to:

No. 4:        "The factual basis for the claims YOU are alleging or asserting in this ACTION against MATTEL."

No. 5:        "The formation, operations, activities and management of IGWT, LEXINGTON, VISION CAPITAL, LLC, and OMNI 808 INVESTORS, LLC, including but not limited to the IDENTITY of their current and former officers, directors, owners, members, and managing members, the amount and source of any capital contributions, money borrowed or other cash or assets acquired, the IDENTITY of any bank or investment account with any financial institution for them, PAYMENTS and transfers made to and from such accounts, and the IDENTITY of any PERSON who has transferred or drawn funds from, or is authorized to transfer or draw funds from, any such bank or investment account.

No. 6:        "Actual and/or contemplated transactions involving IGWT, OMNI 808 INVESTORS, LLC, LEXINGTON, VISION CAPITAL, LLC, and/or THE ALLEGED INVESTORS (including but not limited to transactions RELATING TO the purchase of a portion of YOUR debt from Wachovia), and the terms and conditions of such transactions, including but not limited to YOUR transfer of any funds to or from them; the purported sale or transfer of YOUR PRODUCTS to or from them; YOUR COMMUNICATIONS with them; any information, including without limitation YOUR financial information,

transmitted to or from or discussed with them; and all direct and indirect sources of funds used in any such transactions."

No. 11:      "PAYMENTS YOU have made in excess of $100,000 since January 1, 2004 to any PERSON, including without limitation the recipients thereof and reasons therefor."

No. 12:      "Transactions between YOU and LARIAN, or any PERSON affiliated with LARIAN, between 2004 and the present, including without limitation transactions involving the sale of BRATZ PRODUCTS."

No. 13:      "The quantity of each BRATZ PRODUCT sold by YOU or YOUR licensees for each year from 2001 to the present to each purchaser, and YOUR profits from such sales, including without limitation: revenues; gross, net and incremental profits; cost of goods sold, unit cost and other costs; customer returns, rebates or credits; marketing and advertising costs, budgets, expenditures and investments (including media and nonmedia advertising, promotions, photography, online advertising, and merchandising)."

No. 15:      "YOUR acquisition of all or any portion of LITTLE TIKES, ZAPF, and SMOBY, including without limitation the amounts and sources of funds used in connection therewith, the timing thereof, YOUR financial condition before and after such acquisition and YOUR investments therein."

No. 16:      "YOUR investments in BRATZ, MOXIE GIRLZ, LITTLE TIKES, BFC, INK., SMOBY, and ZAPF, and the PRODUCTS associated therewith, from 2001 to the present (or for each year for which the PRODUCT was designed, manufactured, distributed or sold by YOU or on YOUR behalf), including but not limited to YOUR advertising, market research, product development, product design, promotional expenditures, website development, and any other costs associated with or incurred in connection with their development, production or promotion."

No. 19:      "YOUR COMMUNICATIONS with retail buyers and distributors regarding anticipated and actual volume of sales and shelf space for YOUR PRODUCTS and MATTEL's PRODUCTS."

No. 28:      "YOUR product development processes for each year from 2001 to the present, including but not limited to product research, line planning, marketing planning, focus groups, testing, viability studies, design freezes for product and packaging, tool start, final engineer pilot runs, and pre-production samples."

No. 30:      "Analyses, commentary, awards, complaints or COMMUNICATIONS from retailers or distributors RELATING TO YOUR in-stock performance, as well as clearance of and markdown on YOUR PRODUCTS, from 2001 to the present."

No. 47:      "YOUR preservation of, searches for, collections of and productions of DOCUMENTS in connection with this ACTION, including without limitation which sources of information and

STORAGE DEVICES YOU have searched for responsive DOCUMENTS in connection with this ACTION (and which YOU have not) and YOUR search methods in connection with those searches."

No. 48:     "Any and all efforts by YOU or by any PERSON acting on YOUR behalf to search for, identify, locate, preserve, remove or delete any DOCUMENT, physical or electronic, that contains or contained any portion of any DOCUMENT originating from or authored by MATTEL, including without limitation any DOCUMENT containing internal MATTEL information, and the results of such efforts, including the identification of DOCUMENTS located and the location, including custodian, file name, or STORAGE DEVICE (including path and file name), where any such DOCUMENT was discovered."

13.     Third, there has already been extensive testimony or other discovery about many of the requests.  For example, Topics 23-27, 29 relate to MGA's forecasting and inventory software and practices from January 1, 2001 to the present.  Just prior to serving this notice, Mattel took the deposition of Nicole Coleman, MGA's former vice president of sales operations for two full days, during which these topics were extensively explored.  Similarly, Topic 4 seeks testimony regarding "The factual basis for the claims YOU are alleging or asserting in this ACTION against MATTEL."  MGA has already provided almost two hundred pages worth of interrogatory responses detailing the factual basis behind MGA's affirmative claims.

Executed this 17th day of February 2010, at Los Angeles, California.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

       s/ *Thomas S. McConville*       
       Thomas McConville

**ISSUE NOS. 11, 17, 19(B), 19(D)**

I, Warrington S. Parker III, declare:

1.     I am a member of the bar of the State of California, admitted to practice before this Court, and am counsel with the law firm of Orrick, Herrington & Sutcliffe LLP ("Orrick"), counsel for the MGA Parties.  I make this declaration based on personal knowledge and if called and sworn as a witness, I could and would testify competently  as follows.

2.     Mattel asked questions concerning the exportation of electronics into Mexico without paying customs duties in the December 10, 2010 deposition of Mr. Larian.  The questions and answers appear on pages 619 to 629 of that deposition.

3.     Mattel asked questions concerning the use of phthalates in the January 18, 2010 deposition of Mr. Larian.  The questions and answers appear on pages 1109 to 1110.  Mattel asked more questions on this topic in the January 20, 2010 deposition of Mr. Larian.  The questions and answers appear on pages 1978 to 1979 and 1987 to 1996 of that deposition.

4.     Mattel asked questions concerning the use of a banned colorant in the January 20, 2010 deposition of Mr. Larian.  The questions and answers appear on pages 1979 to 1986.

5.     Mattel asked questions concerning Chinese labor practices in the January 20, 2010 deposition of Mr. Larian.  The questions and answers appear on pages 1996 to 2016 of that deposition.

6.     MGA has produced thousands and thousands of pages of financial documents.  MGA has produced financial statements from 2002 to the present, both audited and unaudited. It produced consolidated income statements for 2002 through 2009.  It has produced consolidated balance sheets from 2006 to 2009.  It has produced cash flow statements for 2007 through 2009.  It produced daily cash flow reports for 2007 through 2009.  It has produced profit and loss statements

which reflects sales, revenues, net returns, operating expenses, development expenses depreciation rates and so on for each month and for each segment of MGA's operations, including Hong Kong, Mexico, Europe, and MGA U.S. from 2004 through the end of 2009.  Just one of these documents runs 1,223 pages.  It has produced budget forecasts. It produced trial balance detail sheets for MGA HK and MGA for 2005 through August 2009, each document running into thousands of pages.  It has produced trial balance sheets for January 2007 to the end of 2009.  It has produced sales by customer from 2006 through 2009  It has produced sales by SKU, meaning by product, for 2007 through 2009.  It has produced ledgers of advertising expenses for 2007 to August 2009.  It has produced licensing payments received by entity and by date from 2003 through 2009.  It has produced financials from MGA Mexico.

7.     This list is in paragraph 6 is not exhaustive and does not cover all of the years produced.  As reflected in Mattel's letter to MGA requesting a supplemental production, Mattel has additional financial documents.  Attached as Exhibit 1 is a true and correct copy of the letter of September 17, 2009 from Mattel relating to financial documents.  In response to Mattel's letter, MGA supplemented the production in November and December 2009.

8.     Attached as Exhibit 2 is a true and correct copy of Mattel's January 12, 2010 letter regarding its Fourth Set of Request for Production of Documents.

9.     In response to this Court's January 26, 2010 discovery order, MGA produced to Mattel the 2008 Mexico sales to customer, sales by SKU, and returns by item, identified by SKU.

10.     In November and December 2009, and in response to Exhibit 1, which lists virtually the same documents as Mattel's Exhibit MGA supplemented its production and produced to Mattel the most current documents that it had identified as follows:

-Ad Media Expenses through August 2009;

-Lovins Royalty Reports through Q4 2008;

-Parinchy Royalty Report through Q4 2008;

-Price Lists through 2009;

-DVD, TV, Revenue, Production Costs through YTD August 2009;

-MGA Distributions List through August 2009;

-Trial Balance sheets (this was produced on February 9, 2010);

-Cost, Product, Inventory Lists as of September 30, 2009;

-Sales by Customer—produced with information through August 2009;

-MGA Returns by SKU through August 2009;

-Sales by SKU through August 2009;

-Tooling and Depreciation Mold;

-License Payment log through 2009.

11.    MGA kept, by no longer keeps, the following financial documents: Bratz Sales by Profit Center, MGA Asset Allocations, DVD, TV, Music Revenue, Bratz US v. Worldwide Sales, MGA Worldwide Segment P&L.  It therefore did not supplement these documents.

12.    At Mattel's request, many of these documents were produced in native file format.  MGA has not refused to produce any financial documents to date in native file format when requested by Matte.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of February, 2010, at San Francisco, California.


/s/ Warrington S. Parker III
Warrington S. Parker III

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ISSUE NO. 19(E)**

I, WILLIAM A. MOLINSKI, declare:

1.      I am an attorney at the law firm of Orrick, Herrington & Sutcliffe LLP ("Orrick"), counsel of record for MGA Parties in the above-captioned action. I am a member in good standing of the State Bar of California and am admitted to practice before this court. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      Attached hereto as Exhibit 4 is a true and correct copy of a letter I sent to Marshall Searcy dated September 15, 2009.

3.      Attached hereto as Exhibit 5 is a true and correct copy of a letter I received from Marshall Searcy dated September 21, 2009.

4.      Attached hereto as Exhibit 6 is a true and correct copy of a letter I sent to Marshall Searcy dated October 1, 2009.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed at Los Angeles, California on February 17, 2010.

_/s William A. Molinski_
William A. Molinski

DECLS. ISO OPP. RE ORDER OF FEB. 12, 2010
CV-04-9049 DOC (RNBX)

## DECLARATION OF LEWIS L. (BUD) SMALL

I, Lewis L. (Bud) Small, declare as follows:

1.      I am an independent investigator hired by the MGA Parties to conduct an investigation into the facts that may be known to MGAE de Mexico S.R.L. de C.V. ("MGAE Mexico") regarding various topics identified by Mattel, Inc., ("Mattel") in a Notice of Deposition of MGAE Mexico dated January 9, 2008. Among the topics that I was asked to investigate were: (1) MGAE Mexico's possession, custody or access to documents created by Mattel; (2) any use or access to any Mattel created or originated documents; (3) a raid conducted by Mexican officials at MGAE Mexico's Offices and communication related thereto; (4) any receipt or use of a Mattel line list or any such document identifying Mattel product in its planning phase; and (5) the identity of any document received by MGAE Mexico, if any, that were prepared or authored by Mattel.

2.      I am a retired FBI field agent/supervisor who has conducted many investigations spanning the course of 21 years with the agency. I was also Inspector General of the United States Printing Office for 7 years.

3.      One issue of particular importance to Mattel was to determine whether anyone at MGAE Mexico could verify that a copy of a CD placed by someone on the desk of Susana Kuemmerle, an employee of MGAE Mexico, was a copy of a CD that was purportedly taken by the Mexican authorities as part of their raid. Despite every effort to determine this information, I was unable to locate anyone who could positively testify to being able to view the complete chain of custody of that CD. Although certain individuals could offer testimony – albeit at times conflicting, which is expected when being interviewed about an event occurring over six years ago – there was no one who saw a CD taken from Mr. Machado's office by the police, copied, logged, and then placed on the desk of Ms. Kuemmerle. Even the collective knowledge of everyone I interviewed could not

1   establish that the CD Ms. Kuemmerle found on her desk a week after the raid was a
2   copy of what was taken by the police.

3       4.      Detailed below are my efforts to obtain information to be able to
4   testify to the above listed topics. All total, I interviewed eleven current or former
5   MGAE Mexico employees, attempted to interview an additional five individuals,
6   and spent numerous hours reviewing documents and meeting with counsel to be
7   able to testify.

8       5.      As part of my investigation, during the week of December 7, 2009, I
9   spoke with and interviewed the following individuals, all of which are former or
10  current employees of MGAE Mexico:

11          a.  Sergio Villalobos
12          b.  Emilio Menotti
13          c.  Ingrid Martinez
14          d.  Alma Morin
15          e.  Griselda Morales
16          f.  Carlos Aguirre

17      I interviewed these witnesses because they are the current and former MGAE
18  Mexico employees that were believe to most likely have information on the topics
19  above.

20      6.      On December 12, 2009, I was deposed by one of Mattel, Inc.'s
21  attorneys for the entire day.

22      7.      During the weeks of December 21, 1009 and January 11, 2010, and in
23  furtherance of my investigation, I spoke with and attempted to interview the
24  following individuals, all of which are former employees of MGAE Mexico:

25          a.  Pablo Vargas – Mr. Vargas refused to be interviewed and cited the
26              pending criminal proceedings as the reason.
27          b.  Lourdes Aguilar[*]

28  _____
    [*] Although Ms. Aguilar initially refused to answer any of my questions, she

c. Andrea Ramirez[†]

d. Cecilia Herrera

f. Brenda Yaxi Olvera

g. Laura Ochoa

h. Mariana Trueba

i. Gustavo Machado – Mr. Machado, through his counsel, refused to be interviewed and cited the pending criminal proceedings as the reason.

During the same week, I also re-interviewed:

a. Emilio Menotti

b. Carlos Aguirre

8.    On January 15, 2010, I was deposed by one of Mattel, Inc's attorneys for another full day.

9.    From my various interviews and to the best of my knowledge, I was able to determine that I had spoken with every single MGAE Mexico employee that was present on the day the search warrant was executed.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct, and that this declaration was executed this 16th day of February, 2010, in Palm Desert, California.

Lewis L. (Bud) Small

----

subsequently lent herself to a short interview.
[†] Although I attempted to interview Ms. Ramirez, she refused to answer any of my questions, stating that she wanted to live her life without involvement in "anything like this."

**DECLARATION OF ANDRÉ DE LA CRUZ**

I, André De La Cruz, declare as follows:

1.      I am an attorney with the law firm of Orrick, Herrington & Sutcliffe LLP, counsel for the MGA Parties in this action, and a member of the State Bar of California.  Except where stated upon information and belief, I have personal knowledge of the facts stated herein and could competently testify thereto if called as a witness.

2.      I have reviewed the deposition transcript of Mr. Lewis Small as MGA Mexico's 30(b)(6) designee.  Referenced below are true and correct portions of Mr. Small's deposition testimony.  Upon the Court's request, the MGA Parties will lodge a certified copy of Mr. Small's deposition transcript for the Court's consideration.

3.      Mattel asserts the following in its moving papers concerning this issue:

    a.      that Mr. Small "testified that he did not know whether the produced trade secrets were ever in MGA Mexico's offices"

        i.  Mr. Small testified as follows:

> Q.  And your purpose in talking to [an MGA Mexico employee] was to find out everything you could about the identity of the documents that were collected during the search; right?
> A.  I had specifically asked [him] if there were any documents related to Mattel that he could identify in the package of material that was seized [from MGA Mexico's offices].
> Small Depo Tr. pp. 1379:18-1380:2.

    b.      that Mr. Small did not know "whether they were ever used by MGA Mexico"

        i.  Mr. Small testified as follows:

> A.  During my interviews, I asked those being interviewed if they had ever seen or possessed or had or held or in any way had any knowledge of any

-𝒳-14

Mattel documents while they were at MGA, and the responses generally were—they were no, their responses were no.
Small Depo Tr. p. 1453:8-13.

c.    that Mr. Small did not know "how MGA's counsel obtained them"

i.    Undisputed.  MGA Mexico's prior 30(b)(6) designee, Mrs. Kuemmerle already testified that she sent the seized materials to MGA's U.S. counsel.

d.    that Mr. Small "made no effort to learn whether the documents were copied or used by MGA Mexico"

i.    Mr. Small testified as follows:

A.  During my interviews, I asked those being interviewed if they had ever seen or possessed or had or held or in any way had any knowledge of any Mattel documents while they were at MGA, and the responses generally were—they were no, their responses were no.
Small Depo Tr. p. 1453:8-13.

e.    that Mr. Small "did not speak with counsel that produced the documents to determine how they had been received"

i.    Undisputed.  MGA Mexico's prior 30(b)(6) designee, Mrs. Kuemmerle already testified that she sent the seized materials to MGA's U.S. counsel.

f.    that Mr. Small "chose not to meaningfully question Gustavo Machado, Pablo Vargas, or Mariana Trueba"

i.    Mr. Small testified as follows as to Mr. Machado:

Q.  And it looks like on the—there's a note on the bottom of the last page, the last four lines.  What does that say?  What does that refer to, excuse me?
A.  That—excuse me.  That refers to a call to a Mr. Alexander Cote, an attorney for Gustavo Machado.  I

called him requesting an interview with Mr. Machado, and he advised me that he could not allow Mr. Machado to speak to me, indicating there was a Fifth Amendment issue concerning Mr. Machado, and that that issue would be resolved on the 19th of January, and, if it was resolved in a certain fashion, he would then make Mr. Machado available for an interview.
Small Depo. Tr. p. 1206:5-18.

ii.  Mr. Small testified as follows as to Mrs. Trueba:

Q.  Did you try to speak with Mariana Trueba?
A.  Yes.
Q.  And were you able to interview her?
A.  No.
Q.  Describe to me your efforts to speak with Ms. Trueba?
A.  I made a telephone call to her, and she stated that she knew nothing, and the conversation ended at that.
Small Depo. Tr. p. 1208:6-15.

iii.  Mr. Small testified as follows as to Mr. Vargas:

Q.  I'm sorry, anyone else?
A.  Yes.  A partial interview with a Miss or Mrs. Aguilar, and an attempted interview with Mr. Vargas.
Q.  And when you say "attempted interview," what does that mean?
A.  I was unable to complete the interview with Mr. Vargas at his request.  Small Depo Tr. p. 1205:10-13.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed this 17th day of February, 2010, in Irvine, California.

André De La Cruz

## DECLARATION OF CESAR ANTONIO PRIETO PALMA

I, Cesar Antonio Prieto Palma, declare as follows:

1.      I am a Mexican attorney defending Carlos Gustavo Machado Gómez, Mariana Trueba Almada, and Pablo Vargas San Jose in the pending Mexican criminal action regarding the alleged appropriation of Mattel's trade secrets, Criminal Action No. 130/2007, pending before the Tenth Federal Criminal Court in Mexico City.

2.      I have represented Mr. Machado, Mrs. Trueba, and Mr. Vargas since December 2005.

3.      On October 27, 2005, I understand that various Mexican authorities executed a search warrant on the offices of MGAE de Mexico in Mexico City, during which time they purported to discover Mattel information in the offices of my clients, Mr. Machado, Mrs. Trueba, and Mr. Vargas.

4.      Approximately at the ending of December 2005 or early January 2006, and in connection with my representation of my clients, I requested that Mrs. Trueba prepare an inventory of items that she believed were supposedly found and seized at MGA de Mexico's offices. Since it was prepared at my direction, that document is privileged under the laws of Mexico.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed this 15th day of February, 2010, in Mexico City, Mexico.

_____
César Antonio Prieto Palma

-19-