QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>            Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTIONS RELATING TO ISSUE NOS. 2, 4, 6, AND 7 OF THIS COURT'S ORDER OF FEBRUARY 12, 2010**<br><br>[Declaration of Marshall M. Searcy III filed concurrently herewith]<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

Pursuant to the Court's Order of February 12, 2010 (the "Order"), Mattel hereby submits its opposition as to issues numbered 2, 4, 6 and 7 in the Order.

**ISSUE NO. 2: MGA SEEKS TO REWRITE THE COURT'S JANUARY 26 ORDER REGARDING DOCUMENTS IDENTIFIED BY MR. ECKERT**

MGA argues that Mattel has failed to produce documents that were compelled by the Court's January 26 Order and that are necessary to complete the deposition of Mr. Eckert. That is not true. On February 15, pursuant to the January 26 Order, Mattel produced every document that Mr. Eckert identified at his deposition. MGA now seeks to expand the Court's order that Mattel produce "all nonprivileged documents previously identified by Mr. Eckert during his deposition" to include all "*types*" of documents mentioned by Mr. Eckert. What MGA does not disclose is that as part of its background questioning of Mr. Eckert, it asked him to describe generally *every kind of report he reviewed regularly in his ten years as CEO of Mattel regardless of what they relate to.* Mr. Eckert answered and provided general descriptions of those types of documents.[1] Now MGA seeks to compel disclosure of each and every page of each and every *type* of report generated over the last ten years until today.

As an example of the over-breadth of MGA's position, MGA demands the contents of every package of briefing materials sent to Mattel's Board of Directors for every meeting held from 1995 to the present. Such a production would not only consist of almost entirely irrelevant information, but would also contain some of the most highly sensitive information Mattel possesses, including reports about potential M&A targets, analyses of potential stock repurchase plans, and discussions of the levels of dividends to declare. The briefing packages sent to the Board are classic "insider information" that is subject to rigorous SEC regulation. They have nothing to do with this lawsuit. Production of this information thus presents exactly the sort of "potential

---

[1] 12/16/09 Eckert Depo Tr. at 209:17-211:14.

for . . . misuse" that led the Court to limit MGA's production of forecasting and inventory information.[2]

MGA also claims that the Order requires Mattel to produce all "license agreements to intellectual property which Mr. Eckert approved or was involved in the negotiation of." But Mr. Eckert never discussed any specific license agreements. Instead, in response to the question whether "Mattel [has] ever acquired intellectual property from a third party in order to launch a product," Mr. Eckert responded "yes," and further explained that, "[a]s an example, when we produced toys related to a movie which we didn't produce . . . we may acquire through a licensing agreement the rights to produce toys supporting the" movie or its characters.[3] Mattel's production of all licensing agreements during the past ten years would serve no legitimate purpose in this litigation, could give MGA an inside track in any negotiations with the same third parties, and is not contemplated by the January 26 Order.

MGA further claims that the January 26 Order requires Mattel to produce all audit reports and quarterly financial results generated by independent auditors. As with the license agreements, Mr. Eckert never identified or discussed a single audit report in his testimony. Instead, this demand is based on Mr. Eckert's testimony that "I meet with our independent auditors every quarter, at minimum, prior to a meeting of the Board's Audit Committee, to review the documents[,] . . . the financial results of the Company for the quarter." Again, MGA has made no showing that all these quarterly reports generated over the past ten years are relevant to this case or are necessary to allow MGA to meaningfully depose Mr. Eckert. They too are beyond the scope of the January 26 Order.

---

[2] Order Regarding Discovery Matters, dated January 26, 2010, Dkt. No. 7434 at 6:13.

[3] 12/18/09 Eckert Depo Tr. at 711:10-22.

The Court should reject MGA's attempt to abuse the Court's Order.  Mattel has produced the documents that Mr. Eckert specifically identified at his deposition, and it therefore has complied fully with the Court's January 26 Order.

**ISSUE NO. 4:  MGA SHOULD AGREE TO CONDUCT THE DEPOSITION OF MATTHEW BOUSQUETTE IN ILLINOIS**

Matthew Bousquette is a former Mattel executive who left Mattel in late 2005.  He currently lives in a suburb of Chicago and is employed as the Chairman and CEO of Enesco Inc., an Illinois-based producer of giftware and home and garden decor products.  He is not under Mattel's control and he is represented by his own counsel (the Caldwell Leslie firm).[4]

Although not obligated to do so, Mattel has spoken to Mr. Bousquette's counsel a number of times in an effort to arrange his deposition.  While Mr. Bousquette has agreed to appear for deposition, there remains an issue as to the location of that deposition.  Mr. Bousquette's counsel offered to produce Mr. Bousquette for deposition in or near Chicago on February 25, 2010.  MGA rejected this offer, refused to accommodate Mr. Bousquette and insisted that he appear in Santa Ana.

Mattel understands that Mr. Bousquette's business commitments (which have resulted in him travelling extensively domestically and internationally over the last month and a half) and his personal responsibilities, including care for his three small children for a period of time during the end of February and the beginning of March, do not readily permit him to appear for deposition in Santa Ana.  Mr. Bousquette explains these circumstances in more depth in his declaration in support of his response to MGA's request that he appear for deposition in Santa Ana.  Given Mr.

---

[4] Mr. Bousquette, through his counsel, is filing concurrently a response to MGA's request that he appear for deposition in Santa Ana.

Bousquette's situation and his status as a non-party witness, Mattel asks that the Court permit Mr. Bousquette's deposition to take place in Illinois.[5]

**ISSUE NO. 6: MATTEL HAS NOT FAILED TO PRODUCE RESPONSIVE DOCUMENTS**

MGA raises a series of issues never raised in any meet and confer with Mattel. Based on the single day notice, Mattel answers as follows:

**(1) Creation of Mattel Trade Secrets. --** Citing Request Nos. 1-3 of MGA Mexico's First Set, MGA says it needs every draft or prior version of Mattel's trade secret documents in order to evaluate whether the documents are trade secrets, determine their value and access damages. Drafts, revisions and prior versions have no bearing on these issues and MGA fails to explain how they do. Indeed, for many of Mattel's trade secrets, these requests are simply inapplicable. Many of the trade secrets consist of periodic reports generated from Mattel's systems and databases. There are no drafts or prior versions, only separate trade secret documents, which MGA has no right to, with similar categories of information covering different time periods  For other trade secrets, Mattel has already produced information showing development costs. To the extent such information exists for other trade secrets and has not already been produced, Mattel will do so.

**(2) Non Disclosure Agreements. --**Mattel is willing to produce relevant confidentiality agreements with its customers. However, in its broadly-worded Requests, MGA seeks <u>every</u> confidentiality agreement used by Mattel since 1995. Request No. 239 from MGA's Fifth Set seeks "[a]ll non-disclosure agreements utilized by Mattel, Inc. at any time between 1995 and the present." Request No. 246 seeks "[a]ll non-disclosure agreements by or between MATTEL and its [sic]

---

[5] Mattel has continued to engage in good faith discussions with MGA and Mr. Bousquette's counsel concerning the location of Mr. Bousquette's deposition; MGA has tentatively agreed to depose Mr. Bousquette in the Chicago area, provided that the parties can agree to a mutually convenient date.

manufacturer, supplier, distributor, or licensee at any time between 1995 and present."  Broad requests such as these improperly seek wholesale production of information without regard to its relevance to the case.  Mattel should not have to search for every confidentiality agreement with any customer, manufacturer, supplier or licensee in the past fifteen years.

**(3) Former Employees Hard Drives. --**MGA wrongly claims that Mattel has failed to produce hard drive data for Trueba, Vargas, Machado, Brisbois, and Castilla.[6]  Mattel made those drives available to MGA months ago, allowing MGA unrestricted access to them.[7]  MGA has <u>actually conducted an inspection</u> of the very same drives it here accuses Mattel of withholding.  MGA's consultant, Stroz Friedberg, visited Mattel's consultant's offices roughly 15 times between the dates of December 1, 2009 and December 21, 2009.  During these visits, MGA's consultant identified particular non-user generated data on drives that it wished to analyze.  On December 21, MGA's consultant requested the particular data it wished to analyze and Mattel's consultant provided this data to Stroz on December 30.[8]  As there is nothing to compel, MGA's Request should be denied.

**(4) Competitive Information Obtained Through False Pretenses; and (5) False Reports by Mattel to Retailers . --**Mattel has not located any documents responsive to the requests MGA cites.  MGA states that Mattel has not produced documents from the files of Sal Villasenor, an ex-employee of Mattel not identified in MGA's disclosures.  Mattel will conduct a reasonable search for Mr. Villasenor's files and produce any responsive documents.  MGA also identifies Mr. Bousquette

---

[6] <u>Id.</u> at ¶4.
[7] <u>See</u> letter from B. Dylan Proctor to William Molinski and Christopher Chaudoir, dated August 18, 2009.
[8] <u>See</u> email chain between Thomas Plunkett and Chris Pavan, dated December 21, 2009-December 28, 2009, attached as Exhibit 1 to the Declaration of Marshall M. Searcy in Support of Mattel, Inc.'s Opposition to the MGA Parties' Motions Relating to Issue Nos. 2, 4, 6 and 7 of This Court's Order of February 12, 2010.

1  (discussed above) as having created false reports; Mattel has produced 2386
2  documents relating to Mr. Bousquette, but it has located none that are responsive..
3     **(6) Mattel's Ownership of Trade Secrets.** –In the requests MGA cites here,
4  MATTEL is defined to include all of its subsidiaries; these requests were not – as
5  MGA now claims – designed to seek information about ownership among Mattel
6  entities.  Nonetheless, Mattel will produce documents sufficient to show trade secret
7  ownership among Mattel entities.

## ISSUE NO. 7:  MATTEL IS ENTITLED TO FURTHER DEPOSITION TIME WITH PATRICK MA

10    Patrick Ma is the Vice President of Finance at MGA Hong Kong ("MGA
11  HK") and a central witness to Mattel's Phase 2 claims.  In many respects, Mr. Ma is
12  the only suitable MGA witness to testify to matters concerning the finances of MGA
13  Hong Kong and of MGA's other Asian affiliates.
14    Mattel was unable to complete Mr. Ma's deposition because it did not have an
15  opportunity to examine Mr. Ma concerning myriad financial documents related to
16  MGA Hong Kong that Mr. Ma discussed at his deposition, but that have not been
17  produced to Mattel.  As Mattel discusses in its February 16 submission, those
18  documents include audited financial statements and corresponding representation
19  letters for years 2001-2006 and 2008; a list of related companies in the general
20  ledger; correspondence relating to the termination of the HSBC credit facility;
21  financial statements and corresponding representation letters for MGA Shenzhen;
22  MGA HK financial information presented to Ernst & Young to prepare 2009
23  financial statements; the attachments referenced in Exhibit 8127; MGA HK's
24  accounting journal; monthly financial packages for MGA HK and MGA Shenzhen;

1 daily cash reports for MGA HK; MGA HK budgets; Excel spreadsheets of Bratz
2 sales; and P&L statements for Bratz by brand.[9]

These documents are relevant to, among other things, MGA's financial condition, its failure to protect the Phase 1 constructive trust res, potentially fraudulent transfers of MGA capital, and Mattel's damages. To the extent these documents concern MGA Hong Kong or MGA's other Asian affiliates, Mr. Ma is the best-suited, if not the only, MGA witness to testify concerning them. Mattel should have the opportunity to complete Mr. Ma's deposition once such documents have been produced.

Moreover, even apart from the missing documents, Mattel was unable to complete Mr. Ma's deposition because of delays related to Mr. Ma's difficulty with the English language. Mr. Ma's first language is Cantonese, and although Mattel provided him with a Cantonese interpreter, he chose to conduct the majority of his deposition in English.[10] While MGA claims his choice expedited his deposition, the opposite is actually true. Because of Mr. Ma's limited abilities with the English language and his heavy accent, his deposition was plagued by lengthy pauses and delays, repeated questions and answers, and requests for clarification and explanations that would have been unnecessary with a native English-speaking witness.[11] For example, when discussing the duties of MGA employees working in the People's Republic of China (PRC) for the November, 2002 time period, Mr. Ma testified that MGA employees were responsible for performing quality control checks.[12] Mattel's counsel then asked, "Were the MGA people in the PRC during that time period doing anything other than inspecting for quality control?" After

---

[9] See Mattel, Inc.'s Submission Pursuant to Order of February 12, 2010 Regarding Certain Discovery Disputes, at 12-13.
[10] Deposition Tr. of Patrick Ma (Vol. 1), at 2:4-12.
[11] See attached video of the deposition of Patrick Ma.
[12] Deposition Tr. of Patrick Ma (Vol. 1), at 35:19-25.

pausing for almost 30 seconds, Mr. Ma responded, "I don't recall all of them."[13] Such pauses and non-responsive answers, present throughout Mr. Ma's deposition, consumed much of the available questioning time and contributed to Mattel's inability to complete his deposition.  Mattel is lodging concurrently video excerpts of the Ma deposition to provide the Court with examples of the slow pace of the deposition. Accordingly, Mr. Ma should be ordered to return to the United States for the completion of his deposition.

DATED:  February 17, 2010         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                  By  /s/ Michael T. Zeller
                                     Michael T. Zeller
                                     Attorneys for Mattel, Inc.

---

[13]  Id. at 36:1-4.