QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OBJECTIONS TO PORTIONS OF DISCOVERY MASTER ORDER NOS. 89 AND 91;**<br><br>**APPENDICES IN SUPPORT THEREOF: (1) SUMMARY OF OBJECTIONS AS TO SPECIFIC REQUESTS; (2) DECLARATION OF PHILIP MOORE**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on a date to be determined by the Court, in the Courtroom of The Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule portions of the Discovery Master's Order No. 89, dated January 13, 2010, as amended by Order No. 91, dated February 2, 2010. This Motion is made pursuant to Federal Rule of Civil Procedure 72(a) on the grounds that the Discovery Master's Order, which compelled a broad search of Mattel systems for nearly a thousand Requests for Production served in Phase 1 by MGA, failed to properly take into account or consider the overbreadth and undue burden of the ordered search, compelled irrelevant and overbroad information as to 71 individual requests, and failed to make the imposed search and production obligations reciprocal.

Accordingly, Mattel seeks an Order:

1) overruling the scope of electronic search obligations imposed in Order No. 89 and ordering the parties to submit the issues of appropriate reciprocal electronic search obligations to the Electronic Discovery Special Master;

2) overruling the Discovery Master's Order compelling the production of all documents responsive to Case 9049 Request Nos. 3, 45, 98, 168, 423, 452, 462, 463, 466, 512, 513, 514, 515, 545, 558, 559, 583, 598, 599, 606, 608, 610, 611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 622, 623, 624, 625, 627, 628, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 648, 656, 677, 678, 694, 708, 725, 776, and 787; and Case 9059 Request Nos. 5, 7, 9, 11, 13, 15, 18, 189, 212, and 218; and

3) making the production obligations under Order Nos. 89 and 91 reciprocal with respect to the MGA Parties.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting summary of objections and

declaration of Philip Moore, any matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

**Statement of Compliance**

Mattel met and conferred on the underlying motion before the Discovery Master at various times between July 28, 2009 and December 17, 2009.

DATED: February 18, 2010

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

Page

Preliminary Statement ..... 1

Background ..... 2

Argument ..... 6

I. THE ORDERS' REQUIREMENT THAT MATTEL SEARCH EVERY SERVER IN NORTH AMERICA AND HUNDREDS OF FILES AND HARD DRIVES SHOULD BE OVERRULED ..... 6

A. The Ordered Search of More than 1,200 Servers Should Be Overruled ..... 6

B. The Ordered Searches of Hundreds of Employees' Personal Computers and Files Should Be Overruled ..... 9

C. MGA Cannot Demonstrate Good Cause to Require Searches of Inaccessible Sources, Nor Did Order No. 89 Make that Finding ..... 11

II. THE ORDERS COMPELLED OVERBROAD, IRRELEVANT REQUESTS ..... 12

A. The Discovery Master Erred in Compelling Overbroad Requests ..... 13

B. The Discovery Master Erred in Compelling Requests Related to Polly Pocket ..... 15

C. The Discovery Master Erred in Compelling Mattel to Produce Irrelevant Documents About Employees' Disclosures of Inventions ..... 17

D. The Discovery Master Erred in Compelling Mattel to Produce Irrelevant Information Concerning Other Lawsuits ..... 17

III. RECIPROCITY SHOULD BE REQUIRED ..... 18

Conclusion ..... 20

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 247 F.R.D. 567 (D. Minn. 2007) .......... 8

*Cache la Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614 (D. Colo. 2007) .......... 12

*Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44 (S.D.N.Y. 2009) .......... 9

*Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127 (E.D. Mich. 2009) .......... 12

*Na Pali Haweo Cmty. Ass'n v. Grande*, 252 F.R.D. 672 (D. Haw. 2008) .......... 6

*OpenTY v. Liberate Technologies*, 219 F.R.D. 474 (N.D. Cal. 2003) .......... 7

*Petcou v. C.H. Robinson Worldwide, Inc.*, 2008 U.S. Dist. LEXIS 13723 (N.D. Ga. Feb. 25, 2008) .......... 8

*Thompson v. Jiffy Lube Int'l, Inc.*, 2006 U.S. Dist. LEXIS 84961 (D. Kan. Nov. 21, 2006) .......... 10

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) .......... 12

**Statutes**

Fed.R.Civ.P. 26 .......... 9, 12

Fed.R.Civ.P. 26(b)(2) .......... 6, 7

Fed.R.Civ.P. 26(b)(2)(C) .......... 11

Fed.R.Civ.P. 26(b)(2)(B) .......... 6, 7, 8, 9, 11

**Miscellaneous**

The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production, 2nd Ed. (June 2007) .......... 10

## Preliminary Statement

Discovery Master Order Nos. 89 and 91 compelled 915 Requests for Production served by MGA during Phase 1, and imposed new and burdensome electronic search requirements as to all of these Requests. In an effort to proceed expeditiously with discovery, Mattel is not appealing the Orders as to 844 requests, and is proceeding to search for and produce documents responsive to those requests. But Mattel cannot be expected to produce every document that refers or relates to Bratz, or to the purchase of doll hair, or every document from every lawsuit – ever – that involved BARBIE, much less search every server in North America (there are more than 1,200 of them) and every hard drive and laptop and file of every individual who has been mentioned in initial disclosures, interrogatory responses, or depositions (there are well over 200 of them) for these documents. That and more is what these Orders compel.

As detailed in the Summary of Objections appended to this brief, some 71 of the compelled requests are facially overbroad and unrelated to the issues in this case, and should not be compelled regardless of the scope of the search. As to the rest, the Discovery Master decided, without considering the proper legal standard, to impose an unprecedented expansion of the previously accepted rules as to electronic discovery, overruling Judge Infante without explanation in the process. Mattel stands ready to confer with MGA and to work with Judge Smith on any appropriate revisions of the standards governing electronic searches in this case. But the requirement that Mattel "search every server" in North America and "search" all laptop and desktop hard drives and files of every individual whose name was ever mentioned in discovery, imposed without any opportunity for briefing and without any consideration of the value or the costs of doing so, cannot stand. Indeed, the Orders fail even to recognize the differences among the various servers and the files they contain, many of which are not even searchable as a practical matter.

In all events, as this Court has repeatedly held, discovery obligations should be reciprocal. Mattel has prepared, and will promptly provide at the Court's request,[1] a Proposed Order properly imposing upon both parties, reciprocally, the obligations of the 844 Requests that Mattel is not appealing, as well as any of the remaining requests that this Court may choose to compel. That order should be entered to avoid an unfair, lopsided situation in which MGA need not turn over documents of the very same type that Mattel has been compelled to produce.

**Background**

MGA's Motion to Compel on "Phase 1" Requests. On September 23, 2009, MGA filed a massive motion to compel responses to 918 Requests for Production that it had served previously in the litigation. Although MGA had already served numerous additional requests since the stay on Phase 2 discovery was lifted, in this motion MGA argued that *all* of its Requests served during Phase 1 were now relevant to "Phase 2 issues."[2] The parties submitted thousands of pages of briefing devoted to the 918 requests at issue: the Separate Statements totalled some 7,600 pages.[3]

MGA Adds New Arguments in Its Reply Related to the Scope of Search. In support of its motion, MGA filed a 35-page reply brief.[4] In reply, MGA urged that Mattel's search and collection efforts must have been deficient because certain individuals from Mattel's initial disclosures were not listed as "custodians" for Mattel's documents.[5] In fact, as Mattel set forth in briefing before Judge Smith, Mattel produced thousands of documents from the individuals, but they were not

---

[1] Because there are 915 requests, the Proposed Order is quite voluminous, so Mattel is not submitting it here, consistent with the Court's prior instructions. Mattel has also not submitted other evidence cited herein, but will promptly provide any and all cited materials to the Court upon request.

[2] Dkt. No. 6816 at 1.

[3] Dkt. Nos. 6988-6999.

[4] Dkt. No. 7144.

[5] Id. at 2-7.

listed as custodians because Mattel collected many documents at the department level.[6] MGA made no request in its reply that Mattel search every server located in North America.

At the Hearing, MGA Proposes to Radically Alter Electronic Search Methods. At the December 11, 2009 hearing on MGA's motion, the Discovery Master asked MGA to address whether it was seeking documents from Mattel servers worldwide, noting that "there does seem to be a significant cost issue we're talking about with that sort of breadth."[7] MGA responded that it was seeking material from Mattel servers in U.S., Canada, and Mexico and speculated that "there would not be tremendous burden involved" in providing such materials.[8] MGA further asserted that Mattel should be required to search the hard drives of each person listed on either parties' initial disclosures or in Mattel's interrogatory responses.[9]

The rules governing Mattel's electronic discovery obligations were established in this case in response to a similar -- albeit narrower -- request made by MGA that was rejected by Judge Infante in April 2008. At that time, the prior Discovery Master ruled that Mattel had complied with its obligations by searching electronic data compilations which included (a) over 130 hard drives at Mattel's El Segundo headquarters and Mattel's Design Center; (b) the hard drives, archived emails, and mailboxes of dozens of additional former and current employees; (c) over 184 gigabytes of emails to and from Mattel employees with keywords relating to Bratz, MGA, and related issues; and (d) Mattel's SYMM system for network storage prior to 2003.[10] In light of these extensive searches, Judge Infante held that

---

[6] See Mattel's Opposition to MGA's Brief Regarding Mattel's Electronic Search Methods and Privilege Log, dated December 11, 2009 at 12-14.

[7] Transcript of December 11, 2009 Hearing ("December 11 Hearing Tr.") at 4:4-15.

[8] Id., at 6:19-7:14 (emphasis added).

[9] Id., at 8:2-8:16.

[10] April 24, 2008 Order at 5-6 (Dkt. No. 3276).

Mattel had "shown that the electronic information MGA now seeks is not reasonably accessible because of undue burden and cost," in part because searching them "would cost tens of millions of dollars" not even counting paralegal or attorney reviewing time.[11] Judge Infante also expressly rejected MGA's claim that there was "good cause" to require additional searches.[12]

At the hearing before the present Discovery Master, in response to MGA's request to jettison these rules, Mattel pointed out that a radical change in search obligations had not been raised in a meet and confer process, nor in either party's briefing, as it should have been: "The point is to all of it that these issues could have been addressed and could have been discussed and weren't."[13]

> Mr. O'Brien: "It sounds like Ms. Hurst has narrowed – at least given us a narrower interpretation than maybe the papers suggested this evening. So for example, she's talking about the servers for Canada, Mexico and the U.S. and this list of custodians from the initial disclosure and interrogatory responses. So it sounds like MGA has moved in that direction."
>
> Mr. Searcy: "And that's certainly something worth discussing; but that discussion never took place."

Rather than provide for additional briefing, the Discovery Master requested that the parties submit proposed orders setting out a scope for the search, and the Discovery Master would "choose one of them and issue it."[14] The parties submitted proposed orders on December 22, 2009, as directed. MGA proposed that Mattel be compelled to search every Mattel server in the U.S., Canada, and Mexico, and search all the files of every individual mentioned in any pleading, initial disclosure, discovery response, and deposition.[15] Mattel proposed to continue using the

---

11 Id. at 6.

12 Id. at 5-6.

13 December 11 Hearing Tr., at 13:3-14:12.

14 Id., at 19:21-22:21.

15 MGA Proposed Order, dated December 22, 2009.

previously-approved search methods, agreed to produce responsive documents to hundreds of requests, and requested denial of MGA's motion as to the rest.[16]

Order Nos. 89 and 91 Impose Dramatically Expanded Search Requirements. Discovery Master Order Nos. 89 and 91 granted virtually all of MGA's motion to compel responses to Phase 1 document requests, compelling ***915*** of the 918 requests MGA put at issue. In addition, the Discovery Master overruled the prior Discovery Master's April 24, 2008 Order which had approved of the scope of Mattel's electronic searches and had found that searches of additional servers would be unduly burdensome and costly. Without discussing burden or cost, the Discovery Master ruled that Mattel now:

> must search its servers located in the United States, Mexico and Canada, the computers and files for those individuals listed in the parties' initial disclosures, and the computers and files for those individuals identified by Mattel in responses to interrogatories or at deposition as having knowledge of Phase 2 issues.[17]

The Discovery Master acknowledged he formulated this new search scope on his own, "[i]nstead of adopting the position advanced by either party."[18] Referencing Mattel's statement that it would be "worth discussing" the scope of searches, but that no such discussion had been held, the Discovery Master concluded without any factual findings that "it is not only worth discussing but a reasonable limitation at this stage."[19] The Discovery Master apparently believed that these requirements would not be onerous; in ordering Mattel to search what is more than 1,200 servers,

---

16 Mattel Proposed Order, dated December 22, 2009.

17 Discovery Matter Order No. 89, dated January 13, 2010, at 19-20 (Dkt. No. 7396).

18 Id. at 19. The Discovery Master's Order, while it tracked most of MGA's proposals, adopted a slightly different definition of what individuals' files must be served.

19 Id. at 20.

he said he was *rejecting* MGA's proposal that Mattel "search dozens of servers" because MGA had "fall[en] short" of justifying that request.[20]

## Argument

### I. THE ORDERS' REQUIREMENT THAT MATTEL SEARCH EVERY SERVER IN NORTH AMERICA AND HUNDREDS OF FILES AND HARD DRIVES SHOULD BE OVERRULED

### A. The Ordered Search of More than 1,200 Servers Should Be Overruled

The Federal Rules were amended in 2006 to set forth clear guidelines for the scope of electronic discovery. See Rule 26(b)(2); 2006 Advisory Committee Notes. Order No. 89 does not even cite Rule 26(b)(2), much less discuss the relevant factors. That is contrary to law. Na Pali Haweo Cmty. Ass'n v. Grande, 252 F.R.D. 672, 674 (D. Haw. 2008) ("A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.").

The purpose of Rule 26(b)(2) is to reasonably limit the burden of producing electronically stored information. See 2006 Advisory Committee Notes (the amendment is "designed to address issues raised by difficulties in locating, retrieving, and providing discovery of some electronically stored information. . . . In a particular case, these burdens and costs may make the information on such sources not reasonably accessible"). Under Rule 26(b)(2)(B), "a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." The 2006 Advisory Committee Notes further state that "[t]he decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case."[21]

[20] Id. at 19.

[21] The Advisory Committee Notes identifies the following factors: "(1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant

Rule 26's requirement of "accessibility turns largely on the expense of production." OpenTY v. Liberate Technologies, 219 F.R.D. 474, 477 (N.D. Cal. 2003).

MGA challenged the scope of Mattel's electronic searches for documents prior to the Phase 1 trial, seeking to compel additional searches of all of Mattel's email servers.[22] The prior Discovery Master set forth and considered the Rule 26(b)(2) factors.[23] Specifically, Judge Infante held that the cost of searching Mattel's servers and tapes made them "not reasonably accessible" under Rule 26(b)(2)(B) and that MGA had "not shown the requisite good cause to justify compelling Mattel to search for and produce the requested electronic information," in particular because the searches were "unreasonably cumulative and duplicative."[24] Considering all the relevant factors, and addressing a much narrower search request (only email servers) than at issue here, Judge Infante concluded that "the burden and expense of requiring Mattel to produce the requested electronic discovery substantially outweigh the likely benefit of the discovery sought."[25]

Without briefing on the issue, without citing the applicable Rules, and without considering the applicable factors, Order No. 89 has overruled all of that. Although Order No. 89 stated that MGA's showing had "fall[en] short of requiring Mattel to search *dozens* of servers," it nonetheless orders Mattel to search every server in North America – a total of 1,239 servers.[26] The requirement that Mattel search more than 1,200 servers, regardless of what type of information they contain or what form

---

information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources."

[22] April 24, 2008 Order at 2 (Dkt. No. 3276).

[23] Id. at 7.

[24] Id. at 6, 7.

[25] Id. at 7.

[26] Declaration of Philip Moore, filed concurrently ("Moore Decl."), ¶ 3.

it is in, is plainly overbroad. Mattel maintains over 360 terabytes of data in its North American servers and hosts over 5,600 users.[27] A terabyte is equal to 1,000 gigabytes; for perspective, the Library of Congress print collection holds roughly 10 terabytes of information.[28] Mattel demonstrated in 2008 that many of its servers are not "reasonably accessible because of undue burden and cost." April 24, 2008 Order at 6; Rule 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonable accessible because of undue burden or cost."); Petcou v. C.H. Robinson Worldwide, Inc., 2008 U.S. Dist. LEXIS 13723 (N.D. Ga. Feb. 25, 2008) (finding that the cost of searching for deleted emails among defendants' 5,300 employees made the data "not reasonably accessible because of undue burden and cost."); Best Buy Stores, L.P. v. Developers Diversified Realty Corp., 247 F.R.D. 567 (D. Minn. 2007) (holding that information "no longer in a searchable format" and with a high cost to restore is not reasonably accessible). That has not changed. If anything, the undue burden and cost that Mattel demonstrated in 2008 has significantly increased, as Mattel's electronic data sources have continued to expand.

In its recent objections to the Special Master's Recommendation that Larian's hard drives be inspected, MGA argued that reviewing a mere *11 hard drives* for privilege – with no actual search requirements falling on MGA – would be unduly burdensome and "require at least [a] thousand hours" of attorney time.[29] Those "burdens" pale in comparison to the astronomical costs at issue here. As explained in further detail in the accompanying declaration of Philip Moore, a great deal of the information on Mattel's servers cannot be keyword searched at all; searching it

---

27 Moore Decl., ¶ 4.

28 See http://news.cnet.com/2100-1041_3-6147409.html (last visited, February 15, 2010).

29 See MGA's Objections to Report and Recommendation No. 5 of January 21, 2010 Electronic Discovery Special Master's Report and Recommendation, dated February 2, 2010, at 2, 16-17 (Dkt. No. 7467).

would require a manual review of unprecedented scope.[30] Even as to information that can be keyword searched, developing the necessary tools would cost millions of dollars and implementing those tools will impair the operation of the servers and could damage Mattel's systems and compromise its data integrity.[31] And that does not include the costs of actually conducting the searches and of attorney review, which would be massive – likely running into the tens of millions of dollars. All of this has been ordered absent any consideration of the relative benefits and burdens and the other applicable factors.

Mattel stands ready to present additional evidence to this Court, to the Electronic Discovery Master, or to the Discovery Master demonstrating that compliance with this Order as written is neither reasonable nor feasible. The concurrently filed declaration of Philip Moore, one of Mattel's Information Technology officers, begins to explain and quantify the immense burdens and accessibility issues. Under Rule 26, such evidence should have been considered before entering such an Order, and must be weighed before it can be affirmed.

**B. The Ordered Searches of Hundreds of Employees' Personal Computers and Files Should Be Overruled**

In Order No. 89, the Discovery Master further ordered Mattel to search the computers and files of all former and current Mattel employees named in MGA's and Mattel's initial disclosures, Mattel's interrogatory responses, and all depositions, who potentially have knowledge of any Phase 2 issue. Mattel has initially identified at least 200 witnesses that fall into these categories. To comply with Order No. 89, Mattel would need to search the hard drives, emails, and offices of each of those witnesses for responsive documents. In addition, over 230 days of depositions have been taken in this case. Under Order No. 89, Mattel would be required to review each transcript for persons named as potentially knowledgeable,

---

[30] Moore Decl., at ¶¶ 5-6.
[31] Moore Decl., at ¶¶ 7-9.

and then search all their files and media. Even identifying this set of individuals is a massive task, requiring a manual review of hundreds of transcripts, not to mention the actual searches.

Searches for documents contained in computer drives and paper files should be limited to key individuals who are potential witnesses in the litigation.[32] In Capitol Records, Inc. v. MP3tunes, LLC, 261 F.R.D. 44, 54 (S.D.N.Y. 2009), for example, the defendant requested that the plaintiffs be required to search the files of all "current and former management and marketing personnel who have any information related to the distribution of free downloads." Having shown that the 2 terabytes of data on their email servers relied upon daily by 120 employees was "not reasonably accessible within the meaning of Fed.R.Civ.P. 26(b)(2)(B)," the court rejected the defendant's request and directed that only "the emails of the fifteen marketing persons with the most senior titles be searched." Id.; see also Thompson v. Jiffy Lube Int'l, Inc., 2006 U.S. Dist. LEXIS 84961 (D. Kan. Nov. 21, 2006) (denying discovery of "every manager's email account" as overbroad).

Indeed, the Discovery Master's own prior rulings have denied broad discovery relating to all witnesses identified in the parties' initial disclosures. See Order No. 89 at 19. For example, in February 2009, Mattel moved to compel MGA to identify each payment MGA or Larian have made since January 1, 1998 to any person identified in either party's initial disclosure when that person was not an employee of MGA.[33] Mattel argued that the interrogatory was relevant to its commercial bribery claims, as well as bias. The Discovery Master held that this was

[32] The Sedona Conference, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production, 2nd Ed. (June 2007) ("It is neither reasonable nor feasible for a party to search or produce information from every electronic file that might potentially contain information relevant to every issue in the litigation, nor is a party required to do so. It should be reasonable, for example, to limit searches [] to the accounts of key witnesses in the litigation.").

[33] Mattel's Motion to Compel Discovery Responses, February 10, 2009 (Dkt. No. 4817), at 12.

not enough to justify discovery of information as to every individual named in the initial disclosures, and ruled that the request was overbroad because it was not limited to the "potential witness[es] from the Complaint."[34] Similarly, the prior Discovery Master denied in part Mattel's motion to compel documents related to some 274 witnesses because searching "so many employees for potentially responsive communications is unwarranted."[35]

Mattel has already searched the files of the individuals who have significant knowledge and are likely sources of relevant and responsive documents, and will do so again for the requests at issue here. But searching the files of hundreds of additional individuals simply because they are named in interrogatories or depositions, without regard to whether they are likely to have responsive documents, is overbroad and unreasonable.

**C. MGA Cannot Demonstrate Good Cause to Require Searches of Inaccessible Sources, Nor Did Order No. 89 Make that Finding**

Under Rule 26(b)(2)(B), burdensome searches of inaccessible sources may only be compelled where the requesting party makes a "good cause" showing. MGA did not make that showing, and the Discovery Master erred in not requiring it.

Considering MGA's prior request to expand the scope of electronic searches, Judge Infante analyzed the "good cause" factors and ruled that "taking into consideration the circumstances of this case," MGA had "not shown the requisite good cause to justify compelling Mattel to search for and produce the requested electronic information." April 24, 2008 Order at 6, 7. Discussing the applicable Rule 26(b)(2)(C) factors, Judge Infante noted that MGA's requested searches were "unreasonably cumulative and duplicative," and that "MGA has had ample opportunity to obtain discovery." Id. at 7. MGA still has not and cannot make the necessary good cause showing. In particular, MGA has not shown why Mattel

---

34 Order No. 11, dated March 30, 2009 (Dkt. No. 5088), at 24.

35 April 14, 2008 Order (Dkt. No. 3092), at 5.

should be required to depart from the system approved by Judge Infante, in which Mattel was charged with searching wherever documents are likely to be found, with no blanket requirement that every server be searched for every request. See Cache la Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 624-28 (D. Colo. 2007) (company using over 400 servers need not conduct "systemwide keyword searches"; producing documents from the computers and files of relevant witnesses was sufficient).

Indeed, faced with the growing cost of electronic searches generating marginally relevant or duplicative material, courts increasingly shift costs to the requesting party. See Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 323 (S.D.N.Y. 2003) (shifting costs where expensive searches might lead to some relevant material, but were unlikely to result in a "gold mine"); Laethem Equip. Co. v. Deere & Co., 261 F.R.D. 127, 146 (E.D. Mich. 2009) (shifting costs where "demands for ESI include not only information [believed] to be valuable, but also marginal information whose primary utility would be found in the burden and cost of production to the other side"). If MGA honestly believes it is worth the cost to search thousands of servers and hard drives, rather than the data sources that are reasonably likely to have responsive information, MGA should bear that cost. Alternatively, Mattel requests that the parties be ordered to meet and confer to arrive at an acceptable, reciprocal expansion of their search obligations, and that in the absence of such an agreement, the issue be remanded to the Electronic Special Master for a ruling consistent with Rule 26.

## II. THE ORDERS COMPELLED OVERBROAD, IRRELEVANT REQUESTS

Mattel is not objecting to over 800 of the requests compelled by the Discovery Master, even though there are multiple issues with many of those requests. But 71 of these requests are so plainly overbroad and/or unrelated to the case that Mattel cannot fairly be expect to respond.

### A. The Discovery Master Erred in Compelling Overbroad Requests

Twenty-eight of the requests compelled by the Discovery Master are, on their face, clearly overbroad.[36] Each of these requests seeks general categories of documents relating to Mattel's business which, if produced, would consist of massive numbers of documents having nothing to do with this case.

The Summary of Objections details their overbreadth, but a few examples illustrate the problem. Case 9049 Request 45 seeks:

> All DOCUMENTS REFERRING OR RELATING TO MATTEL's purchase of doll hair, at any time since June 2001.

While MGA has alleged that Mattel improperly "bought up" the doll hair supply in October 2002,[37] Request No. 45 seeks every document that even tangentially relates to Mattel's purchase of doll hair, and it seeks every such document from 2001 to the present in spite of the markedly more limited temporal scope of MGA's allegation. By its terms, Request No. 45 includes every receipt, purchase order, email, and so on related to Mattel's purchases of doll hair for every one of the many dolls Mattel makes each year. The request vastly exceeds the scope of MGA's claim that Mattel attempted to interfere with its purchase of doll hair in October of 2002.

In the same vein, Case 9049 Request 98 seeks:

> All COMMUNICATIONS, and all DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS, between YOU on the one hand and any employee, officer, director, agent, representative, or counsel for any competitor of MGA REFERRING OR RELATING TO MGA, "BRATZ," or this lawsuit, or other litigation involving the parties hereto or their employees.

For this request, "YOU" is defined to include all of Mattel's past and present employees and agents. The request thus seeks all communications between any past

---

[36] These are: Case 9049 Request Nos. 3, 45, 98, 168, 423, 462, 463, 466, 583, 606, 608, 610, 648, 677, 678, 694, 708, 725, 776, and 787 and Case 9059 Request Nos. 5, 7, 9, 11, 13, 15, 18, and 189.

[37] Complaint for False Designation of Origin, Affiliation, Association or Sponsorship, dated April 13, 2005, at ¶ 78. Dkt. No. 1 in Case No. CV-05-02727.

or present Mattel employee or agent and any employee or agent for a competitor of MGA that refers or relates to MGA, Bratz, or any litigation involving Mattel or MGA or any of their employees. The request also seeks every document that refers or relates to any of these communications. Such documents and communications are not connected to any claim by or against MGA in this litigation.

A third example – Case 9059 Request 5 seeks:

> All DOCUMENTS mentioning, referring or relating to BRATZ DOLLS, if YOU seek in this case to enjoin the sale of BRATZ DOLLS, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by BRATZ DOLLS.

This request for *every* document "mentioning, referring or relating to BRATZ DOLLS" is grossly overbroad. Bratz dolls were a major competitive product; the fact that a communication mentioned, referred or related to a leading toy product hardly connects it to the claims in this lawsuit, particularly where there are no limitations whatsoever on the nature, timing, or content of the documents. Even broader is MGA's request for all documents "referring or relating to the initial design and development of... BARBIE" including internal memos and market research dating back fifty years. See Case 9049, Request No. 3.

The Discovery Master's failure to require that these requests be narrowed to relate to the parties' claims and defenses may have been a product of the voluminous nature of MGA's motion and the accompanying briefing, but that is not a sufficient reason to require Mattel to respond to patently overbroad requests. By requesting every document that mentions Bratz or Barbie or doll hair, or any litigation involving Mattel, these requests are untethered to any claim or defense, and would impose vast burdens on Mattel with no countervailing benefits and no relevance.

**B.    The Discovery Master Erred in Compelling Requests Related to Polly Pocket**

Overruling another decision of Judge Infante, the Discovery Master compelled in full the following requests related to "Polly Pocket", a mini-doll Mattel has distributed since the 1990s: Case 9049 Request Nos. 452, 512-515, 611-625, 627-641 and 656. Judge Infante granted Mattel a Protective Order on this very subject and explicitly held that MGA could only seek "Polly Pocket" documents that related to a single commercial,[38] because the only proffered justification for the requests was "an interrogatory response in which MGA claims that one of Mattel's Polly Pocket commercials was allegedly filmed in the same mall using the same escalator as an MGA Bratz commercial."[39]  As Judge Infante explained, the Rules "do not permit MGA [] to use broad discovery requests, untethered to a claim or defense, to fish for new claims."[40]  MGA did not appeal that ruling to the Court.

In Order No. 89, the Discovery Master granted in full 34 "Polly Pocket" Requests because "the scope of issues raised by the pleadings has changed since the issuance of the order on which Mattel seeks to rely."[41]  But in substance, MGA's pleadings are no different than they were at the time of the prior Discovery Master's ruling.  The only change offered by MGA in its brief to the Discovery Master is a passing reference to "Polly Pocket" in its Unclean Hands Affirmative Defense to Mattel's Third Amended Counterclaims.[42]   When MGA responded later, on

---

[38] See April 19, 2007 Order Granting in Part and Denying in Part Mattel's Motion for Protective Order Regarding "Polly Pocket" Documents at 6-7 (Dkt. No. 411).
[39] Id. at 6.
[40] Id. at 6-7.
[41] Dkt. No. 7396 at 27.  Two additional "Polly Pocket" requests (452 and 619) were also compelled in a different part of the Order.
[42] Dkt. No. 7144 at 33.  MGA states that "This Affirmative Defense is based, in part, on Mattel's efforts to undermine MGA's business and to 'kill' Bratz at any cost which include, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including

November 30, 2009, to Mattel's interrogatory that asked MGA to "[s]tate all facts upon which YOU intend to rely at trial to support YOUR affirmative defenses," the only reference to "Polly Pocket" under MGA's unclean hands defense was the statement that "Mattel filmed a Polly Pocket commercial in the same mall and featuring the same escalator as appeared in a previous Bratz commercial"[43] – the same single, narrow allegation at issue when Judge Infante ruled the requests were overbroad.

Like the "Polly Pocket" requests rejected by the prior Discovery Master, the requests compelled in Order No. 89 seek documents that have nothing to do with the commercial referenced in MGA's unclean hands defense. For example, Case 9049 Request No. 614 seeks:

> Photographs or pictures sufficient to illustrate every variation or version of POLLY POCKET ever released as a commercial product, including without limitation, any variation in face paint, face paint plans or designs, eye designs, drafts, ideas or concepts.

Other requests are equally irrelevant. 9049 Request No. 631 seeks:

> DOCUMENTS sufficient to determine total sales, revenue, royalties, costs of goods sold and any other costs attributable to net profits REFERRING OR RELATING TO POLLY POCKET.

Mattel has been distributing "Polly Pocket" since the early 1990s. These requests seek documents that are not only irrelevant as to subject matter, but far removed from any relevant time period in the case. Order No. 89 wrongly compelled them.

---

for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy, to name a few) …" Dkt. No. 5798 at 21.

[43] MGA's Supplemental Response to Mattel, Inc.'s Second Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated November 30, 2009.

**C. The Discovery Master Erred in Compelling Mattel to Produce Irrelevant Documents About Employees' Disclosures of Inventions**

Order Nos. 89 and 91 also require Mattel to produce information relating to disclosures to Mattel by its employees of their inventions. For example, 9049 Request Nos. 558 and 559 seek:

> All DOCUMENTS relating to each disclosure, whether written or oral, made to MATTEL by a MATTEL employee or independent contractor of "Proprietary Subject Matter made or conceived during the term of [an employee's or independent contractor's] employment" as this phrase is used in MATTEL's "Proprietary Information Checkout" form.
>
> All DOCUMENTS relating to each COMMUNICATION, whether written or oral, made to MATTEL by a MATTEL employee or independent contractor of "inventions... conceived or reduced to practice by [an employee or independent contractor] (along or jointly by others) at any time during [an employee's or independent contractor's] employment by Mattel" as this phrase is used in the Inventions Agreement.[44]

None of the disclosures described in these requests relate to the issues in this case. While MGA once alleged that Mattel somehow abuses and unfairly enforces its employee inventions agreements,[45] those claims were rejected years ago.[46] In any case, the disclosures sought by Request Nos. 545, 558, and 559 do not tend to prove or disprove such an allegation. Instead, the broad range of information that MGA seeks would show only that Mattel employees submit inventions, not that Mattel somehow abuses the agreements pursuant to which they are submitted.

**D. The Discovery Master Erred in Compelling Mattel to Produce Irrelevant Information Concerning Other Lawsuits**

Order Nos. 89 and 91 require Mattel to produce a host of information relating to other lawsuits and not to this action. Case 9049 Request Nos. 598 and 599 seek:

---

[44] 9049 Request No. 545 seeks similar information. See Separate Statement filed concurrently herewith.

[45] Complaint for False Designation of Origin, Affiliation or Sponsorship, dated April 13, 2005, at ¶ 75, Dkt. No. 1 in Case No. CV-05-02727.

[46] Order Granting Motions to Dismiss, dated July 18, 2006 (Dkt. No. 63) (dismissing claims related to Mattel's employee invention agreements).

> ALL DOCUMENTS and COMMUNICATIONS REFERRING OR RELATING TO any demand, claim or lawsuit by MATTEL (other than this ACTION) alleging infringement of MATTEL'S intellectual property rights in any CONTESTED MATTEL PRODUCT, any BARBIE product, or any DIVA STARS product.
>
> ALL DOCUMENTS and COMMUNICATIONS REFERRING OR RELATING TO any demand, claim or lawsuit against MATTEL (other than this ACTION) alleging that any CONTESTED MATTEL PRODUCT, any BARBIE product, or any DIVA STARS product infringes the intellectual property rights of another PERSON.

These requests seek every document and every communication that refers or relates to *any* claim – not just lawsuits or demands – made by Mattel with respect to its products. The requests are thus not only incredibly broad, but the information they seek bears no relevance to any claim in this suit.

Similarly, Case 9059 Request Nos. 212 and 218 seek:

> All COMMUNICATIONS mentioning, referring to, or relating to any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was a party.
>
> All COMMUNICATIONS sent to or received from any party to any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was party, or any agent or representative of such party, including such party's attorney.

As with Request Nos. 598 and 599, these requests seek information unrelated to any claim or defense in this action. Request 212 seeks information about other legal proceedings, which are by definition unrelated to the present action. Request 218 seeks every communication between Mattel and any party to lawsuits in which MGA has been a party. This request is not only unlimited in time, but seeks wholesale production of communications regardless of their subject or content. The Orders should be overruled as to all of these requests.

## III. RECIPROCITY SHOULD BE REQUIRED

Both parties to this litigation have offices, employees, and servers in Mexico, the United States, and Canada. In their Initial Disclosure and Interrogatory

Responses, both parties have identified several hundred former and current employees and contractors who potentially have knowledge of Phase 2 issues. Accordingly, to the extent Mattel's electronic search obligations are to be expanded, as a matter of fairness, the scope of the search order should be made reciprocal.[47]

Likewise, the compelled requests should be compelled reciprocally. Order Nos. 89 and 91 compelled 915 requests in one broad swath. Simple fairness requires that MGA be required to produce the same breadth and types of documents. Absent an order providing for appropriate reciprocity, MGA will have obtained a grossly unfair litigation advantage by, in one fell swoop, both dramatically increasing Mattel's litigation expenses and obtaining broad categories of documents MGA itself has failed and refused to produce. The Proposed Order Mattel has prepared and will provide to the Court upon request imposes reciprocal obligations on the parties as to the 915 requests compelled in the Orders. MGA should be ordered to comply with the same production obligations imposed on Mattel.

[47] MGA's document production and deposition testimony make clear that MGA has not conducted anything even approaching the virtually unlimited search it demands of Mattel. For example, MGA Canada's 30(b)(6) witness recently testified that MGA Canada personnel save their "regular documents" locally on their personal computers, and only upload to the shared network documents that must be shared with others. See Deposition of Diane Goveia-Gordon, Feb. 3, 2010, (ROUGH) at 314:4-316:8. Similarly, Kenneth Lockhart, MGA's 30(b)(6) witness on its computer systems, testified that employees routinely store emails on their personal computers. Deposition of Kenneth Lockhart, June 14, 2007 at 98:9-103:6. Therefore, to locate potentially relevant documents, MGA should be searching the individual desktop computers of at least all significant Phase 2 witnesses. Although MGA has stated that it backs up the "My Documents" folder on many employees' desktop computers, it has apparently made no effort to collect documents saved in other locations which may be freely used on its employees' desktop and laptop computers. See, e.g., Deposition of Susana Kuemmerle, January 28, 2008, at 138:10-138:17; Deposition of Mei Wah (Sarah) Chui, September 28, 2007, at 66:23-67:15. Indeed, MGA has apparently not even searched the hard drives of the key witness in this case, Isaac Larian. See Mattel's Opposition to MGA's MGA's Objection to Recommendation No. 5 of January 21, 2010 Electronic Discovery Special Master's Report and Recommendation, dated February 16, 2010, at 15-16.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court overrule the portions of Order Nos. 89 and 91 compelling Mattel to respond to Requests that are overbroad and/or irrelevant, and impose reciprocal obligations on MGA as to all Requests with which Mattel must comply.  Mattel also requests that the Court overrule Order No. 89's electronic search requirements.  Since any Order expanding the scope of Mattel's search obligations should be made reciprocal, and since these were not briefed and are, at core, electronic discovery issues, Mattel suggests that the Court order the parties to address the issues regarding an appropriate reciprocal scope of electronic search for Phase 2 before Judge Smith.

DATED:  February  18, 2010

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.