MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710
Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**MGA'S REPLY IN SUPPORT OF OBJECTIONS TO ELECTRONIC DISCOVERY SPECIAL MASTER'S REPORT AND RECOMMENDATION (1/21/2010)**<br><br>Hearing Date: March 8, 2010<br>Hearing Time: 8:30 a.m.<br>Location: Courtroom of the Hon. David O. Carter |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 1
ARGUMENT ............................................................................................................... 2
   I.    THE LAW DOES NOT SUPPORT UNFETTERED ACCESS TO
       MR. LARIAN'S HARD DRIVES ............................................................... 2
   II.   MATTEL HAS NOT CITED ANY CREDIBLE OR CONVINCING
       EVIDENCE OF SPOLIATION BY MR. LARIAN ...................................... 4
   III.  MATTEL CANNOT JUSTIFY THE ENORMOUS BURDEN THAT
       MGA WILL ENDURE IF UNFETTERED ACCESS IS ALLOWED .......... 7
   IV.  MATTEL SHOULD BE ESTOPPED FROM CONTRADICTING ITS
       PREVIOUS REPRESENTATIONS AND AGREEMENTS ......................... 9
CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Analytics LLC v. Lundin*,
2008 U.S. Dist. LEXIS 17407 [248 F.R.D. 331] (D.D.C. 2008) ........................ 3

*Bethea v. Comcast*,
218 F.R.D. 328 (D.D.C. 2003) ........................................................................... 8

*Diepenhorst v. City of Battle Creek*,
2006 WL. 1851243 (W.D. Mich. 2006) ............................................................ 3

*Disimone v. Browner*,
121 F.3d 1262 (9th Cir. 1997) ........................................................................... 9

*Ferron v. Search Cactus, LLC*,
2008 WL. 1902499 (S.D. Ohio 2008) ............................................................... 3

*G.D. v. Monarch Plastic Surgery, P.A.*,
239 F.R.D. 641 (D. Kan. 2007) ..................................................................... 3, 4

*In re Ford Motor Co.*,
345 F.3d 1315 (11th Cir. 2003) ................................................................ 2, 4, 8

*Playboy Enterprises, Inc. v. Welles*,
60 F. Supp. 2d 1050 (S.D. Cal. 1999) ............................................................... 3

*Williams v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 144 (D.Mass. 2005) ........................................................................ 8

## FEDERAL STATUTES

Fed. R. Civ. P. 34(a) Advisory Committee Notes On 2006 Amendment ................. 2

**INTRODUCTION**

The only logic to Mattel's opposition, Mattel's repeated requests to obtain access to Mr. Larian's hard drives, and Mattel's various representations as to the scope of access and the reasons for it is this: Mattel will say anything that will suit the moment. When it first sought an order to obtain access, it claimed it did not want access to active user files. When it sought more access, it agreed in open court, on August 31, 2009, that a protocol that did not allow it access to all files was appropriate. And in November 2009, just days before the appointment of Judge Smith, Mattel agreed to yet another protocol restricting access.

Nothing has changed, with one exception: there is a new Discovery Master and a new Court.

And while Mattel claims that it need not establish spoliation before being allowed access, even the cases that Mattel cites hold that there must be evidence of spoliation before access can be ordered. And what is remarkable about Mattel's motion is that it claims that there is evidence of spoliation based on documents it has in its hands. To state it otherwise, in almost every instance, the document itself is in the hands of Mattel. By definition, that means there is no spoliation.

What is also remarkable about Mattel's motion is the length to which Mattel will stretch the facts to justify its claimed evidence of spoliation. First, much of the claimed spoliation has nothing to do with Mr. Larian. Second, to give an example of just how far Mattel will twist a fact, Mattel claims that "*MGA and Bryant removed Bratz drawings from a Mattel design notebook,*" citing to the trial testimony in Phase 1. Opp. at 12. However, what is clear is that Mattel does not believe that MGA removed those drawings from the Mattel notebook. As it stated in closing argument in Phase 1, it believed Carter Bryant removed the drawings. Rorie Reply Decl. Ex. 7 (7/10/08 Tr.) 4870-71.

And to take another example, Mattel repeats for this Court that Machado wiped his computer. Opp. at 12-13. This, of course, ignores the fact that Evident

Data, whose report Mattel cites in support of its claim, concluded as follows "EvidentData determined that Mr. Machado's hard drive had not been wiped, but damaged," Rorie Decl. Ex. 5 at 22, which according to yet a second review Mattel commissioned was due to "normal use of the hard drive." *Id.* Ex. 6 at 26. This is not evidence of spoliation by Mr. Larian.

Given this, the law does not support Judge Smith's recommendation, and the enormous burden that would be placed on the Court, the Discovery Master, and MGA to conduct a privilege review for potentially thousands of documents (and deal with the inevitable motion practice that would follow) pales in comparison to any benefit that Mattel might derive from carte blanche searching.

There is no reason to give Mattel yet another opportunity to rifle through Mr. Larian's electronic files in the hopes of finding some as of yet unidentified document. The law does not condone such speculative or intrusive discovery. MGA's objections to the report and recommendation of Judge Smith should be sustained.

## ARGUMENT

### I. THE LAW DOES NOT SUPPORT UNFETTERED ACCESS TO MR. LARIAN'S HARD DRIVES

Mattel claims that it need not prove spoliation to gain access. Opp. at 14. It claims that *In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003), was decided before the 2006 amendment to Rule 34 and therefore can be disregarded for this reason and on its facts. *Id.* However, while quoting some portion of the 2006 Advisory Committee Notes, Mattel completely ignores that other portions of the 2006 Advisory Committee Notes do not undermine *Ford*. They support it. Those same Notes caution that "[t]he addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information **is not meant to create a routine right of direct access to a party's electronic information system**…Courts should guard against undue intrusiveness resulting from inspecting

- 2 -

MGA's Reply to Mattel's Opp. to MGA's Mtn To
Compel re Interrogatory Nos. 20-23 and 28
CV 04-9049 DOC (RNBx)

1  or testing such systems." Advisory Committee Notes On 2006 Amendments To
2  Fed R. Civ. P. 34(a) (emphasis added).

3      In fact, one of the cases on which Mattel relies expressly finds that the 2006
4  amendments do not justify the relief Mattel seeks absent proof of spoliation. As
5  stated in *Ferron v. Search Cactus*, *LLC*, 2008 WL 1902499 (S.D. Ohio 2008), and
6  expressly referencing the 2006 amendments, the court noted that "without a
7  qualifying reason, Defendants are no more entitled to access to Plaintiff's electronic
8  information storage systems than to Plaintiff's warehouses storing paper
9  documents." *Id.* * 2. In that case, the court did find a qualifying reason only
10  because Plaintiff did not preserve evidence.

11      And if there is any question about what type of showing needs to be made,
12  one need only look at *Playboy Enterprises*, *Inc. v. Welles*, 60 F. Supp. 2d 1050
13  (S.D. Cal. 1999), also cited by Mattel. There, the defendant deleted, and continued
14  to delete, e-mails that were called for in discovery. *Id.* at 1051.[1] Given this, as
15  reflected in both the cases cited by MGA *and* Mattel, and as reflected in *Ford*, there
16  must be evidence of spoliation before access can be ordered. And here there is no
17  such evidence or any factual finding that there is such evidence.[2]

18      Nor can *Ford* be distinguished on its facts, as Mattel tries to do. Opp. 14. It
19  is true, as Mattel claims that *one* of the issues in *Ford* was the failure to impose a
20  protocol for the review of Ford's computers. 345 F.3d at 1317. However, the *first*

---

[1] Mattel also cites *G.D. v. Monarch Plastic Surgery*, *P.A.*, 239 F.R.D. 641, 648 (D. Kan. 2007), and *Analytics LLC v. Lundin*, 2008 U.S. Dist. Lexis 17407 [248 F.R.D. 331] (D.D.C. 2008), as support for its claim. However, both are inapposite. In *Monarch Plastic Surgery*, *P.A.*, the computer to be searched was literally thrown away to be collected for garbage and abandoned by the party claiming that the search was intrusive. In *Lundin*, the court denied the request and the parties later *agreed* to the search. 248 F.R.D. at 332 ("[T]the parties are now agreed that a computer forensic specialist should be permitted to examine . . . [the] computer.")
[2] *See also Diepenhorst v. City of Battle Creek*, 2006 WL 1851243 *3 (W.D. Mich. 2006) ("The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data. In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance.").

1 issue discussed was the district court's failure to find that *Ford* failed to comply
2 with its discovery obligations. And so here. Here, there is no finding that Mr.
3 Larian has spoliated evidence. *Id.*
4     This stands to reason. As noted in MGA's Objections, Mattel has already
5 searched Mr. Larian's hard drive and found no credible evidence of spoliation, not
6 even the existence of wiping software.

## II. MATTEL HAS NOT CITED ANY CREDIBLE OR CONVINCING EVIDENCE OF SPOLIATION BY MR. LARIAN

    A primary theme in MGA's moving papers is the absence of any evidence to suggest that Mr. Larian somehow spoliated evidence on his computers. MGA appears to have struck a nerve with this point, as Mattel spends nearly half its opposition trying to establish otherwise. The litany of misleading, stale, and irrelevant facts that Mattel cites only serves to underscore MGA's point: there is no credible or convincing evidence of spoliation by Mr. Larian in this case.

    One of the key pieces of "evidence" that Mattel cites is a 2001 email from Mr. Larian to Victoria O'Connor instructing Ms. O'Conner to "white out" a header on a fax. As noted, Mr. Larian denies that he did this. Even if credited, this claimed instruction took place in 2001, three years before any case was filed. It literally cannot be evidence of spoliation in connection with this case. Moreover, what is clear is that this has nothing to do with Mr. Larian's hard drive.

    Mattel also claims that Mr. Larian instructed O'Connor to destroy every copy of a document. The document is dated two years prior to this litigation, which means there could not have been an intent to destroy it so it could not be used in this case. Also, it is clear from the context that Mr. Larian was not seeking to hide evidence. He was seeking to avoid the continued promulgation of false information to customers. Proctor Decl. Ex. 1.

    In its Opposition, Mattel also refers to Mr. Larian's brother, Farhad Larian, claiming that Mr. Larian instructed his brother to destroy documents and that

1   Mr. Larian's brother did, in fact, destroy documents. But what Mattel fails to note,
2   and what appears in the depositions transcripts cited, is that Mr. Larian and his
3   brother were on the opposite sides of a lawsuit. And the email Mattel touts is one
4   where Farhad accuses Mr. Larian of destroying documents and Mr. Larian denies
5   this. At trial, Farhad Larian stated that this accusation was not true. Rorie Reply
6   Decl. Ex. 9 (Trial Tr.) at 3785, 3809-10.

7   Moreover, Mr. Larian's brother erased documents from a USB drive and
8   destroyed documents following the settlement of his dispute with Mr. Larian. As
9   Mr. Larian's brother testified, no one from MGA instructed him to do this; no one
10  from MGA helped him. Rorie Reply Decl. Ex. 8 (Farhad Larian Depo.) at 53, 56-
11  57, 65-67. Also, the items on the USB drive were copied off of MGA's systems so
12  that the brother's erasure from a USB drive is not spoliation.

13  Beyond these examples, Mattel cites "facts" that it hopes will justify a
14  request for unconditional access, but they have absolutely nothing to do with
15  Mr. Larian or his laptop computers. First, Mattel references documents that appear
16  on MGA's privilege log. To pause just there, this is quite solid evidence—to say
17  the least—that the documents were not destroyed or even withheld *by Mr. Larian*.
18  And, this certainly is not evidence that Mr. Larian spoliated or hid evidence on his
19  hard drives. That there are disputes about what should and should not be on the
20  privilege log is not altogether surprising in a case that is this contentious. But in
21  any event, as this Court wells knows, the subject of what should and should not
22  appear on privilege logs has been the subject of litigation both on the part of MGA
23  and Mattel, with both parties charging that items should not appear on the
24  respective privilege logs. *See* Dkt. Nos. 7375, 7381, 7382.

25  Second, Mattel trots out accusations concerning what it claims is wrongful
26  conduct by Mr. Larian—perjury, smuggling, falsifying records—but except to
27  smear Mr. Larian, this is not evidence that Mr. Larian has destroyed documents.
28  This is just a smear. Indeed, Mattel goes so far as to reference representations made

1  by counsel for the Omni Parties, claiming that representations were made "with
2  MGA's complicity." Opp. at 13. Although not true, more fundamentally for this
3  motion, what Mattel does not say is that documents were not produced or were
4  destroyed. Mattel's only attempt is to claim that Mr. Larian continues to conceal
5  evidence of other payments to investors in Omni 808, but the evidence of payments
6  has been produced. Mattel's argument of "not so," is a reflection of the strength of
7  Mattel's claim and its insistence that it has one despite the lack of evidence.

8  Relatedly and third, when Mattel claims that others have destroyed evidence,
9  at most, this is evidence *that others* have done something improper. Mattel tries to
10 paint the brush broader by prefacing the claimed wronging-doing by others with
11 "while working with MGA." Opp. at 12. But missing is Mr. Larian and even
12 MGA. The only time Mattel gets close to actually pinning something on MGA it is
13 to falsely state that "MGA and Bryant removed Bratz drawings from a Mattel
14 design notebook." Opp. at 12. However, not even in the Phase 1 trial did Mattel
15 try to pin this on MGA, generally, or Mr. Larian, specifically. Rorie Reply Decl.
16 Ex. 7 (7/10/08 Tr.) 4870-71.

17 Finally, just to underscore the steps that Mattel will take, Mattel notes that
18 Carter Bryant and Gustavo Machado both ran "wiping" software on their laptop
19 computers. Neither has anything to with Mr. Larian or his laptop computers. And
20 the irony is that it has been conclusively established that Mr. Larian did not use any
21 such software on *his* laptop computers. Dkt. No. 7521, Ex. 4 (Paven Depo.) at
22 62:23-63:1; Dkt. No. 5770, Ex. 2 (MGA Expert Report) at 16 . Moreover, at least
23 two experts that Mattel hired concluded that Gustavo Machado did not use any
24 "wiping" software on his computer either. *See* Rorie Decl. Exs. 5, 6.

25 The fact of the matter is that, no matter how many "facts" Mattel throws at
26 the wall, it cannot paint a picture that does not exist. Mattel tested Mr. Larian's hard
27 drives extensively prior to trial in 2008, and discovered nothing that it deemed
28 worthy of presenting as evidence at trial.

1  Now Mattel wants a third bite at not just the apple, but the entire tree.
2  Having failed to find evidence of spoliation, now Mattel wants access to every
3  single thing on Mr. Larian's hard drive. The facts don't support this outcome.
4  They support the exact opposite result. There is no evidence of spoliation. Having
5  reached that result, the law simply does not allow greater access.

### III. **MATTEL CANNOT JUSTIFY THE ENORMOUS BURDEN THAT MGA WILL ENDURE IF UNFETTERED ACCESS IS ALLOWED**

8  With this litigation now in its seventh year, the number, frequency and
9  amount of attorney client privileged communications is truly staggering. As noted
10  in the Declaration of Cynthia Lock submitted in support of MGA's objections,
11  MGA's Orrick attorneys alone have spent well over one thousand hours reviewing
12  documents for privilege and reviewing privilege log issues. And that has only been
13  since July of 2009 when Orrick first entered this case. *See* Dkt. No. 7468 (2/2/10
14  Lock Decl.) ¶ 2.

15  As the head of MGA, Mr. Larian regularly uses his laptop computers to
16  communicate with MGA attorneys on a variety of issues subject to the attorney
17  client privilege. Judge Larson and Discovery Master O'Brien both recognized this
18  indisputable fact. *See* Dkt. No. 7467, Ex. 3 (8/31/2009 Hearing Tr. [Exhibit B to
19  12/11/2009 Parker Decl.]) at 9:14-18 (Judge Larson expressing concern about
20  "getting into all the active files and all of the potential privilege and the quagmire
21  that I can see erupting if that was all turned over."); Dkt. No. 5510 (DM Order
22  No. 34) at 11:2-3 (Master O'Brien stating that "if Mattel is given access to all
23  active files on the Hard Drives, the Discovery Master cannot see how Larian can
24  protect his privileged information.")

25  Mattel's response to this is essentially to ignore it. Mattel argues that a
26  privilege review will only be a large task "if there are large amounts of relevant
27  information on the drives." Opp. at 17. But this argument misses the point as
28  privileged documents that discuss this case unquestionably reside on Mr. Larian's.

1   The salient issue is whether MGA should have to bear the enormous cost and
2   burden of reviewing those documents when Mattel has made no showing that
3   relevant documents have been withheld. As noted above, there is no right of access
4   to an adversary's computer on the mere suspicion that it contains relevant
5   documents. *See In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003); *Williams v.*
6   *Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D.Mass. 2005); *Bethea v. Comcast*,
7   218 F.R.D. 328, 329-30 (D.D.C. 2003).

8   Furthermore, when Mattel claims that MGA's claims must fall away because
9   there is no justification for leaving information "undiscovered because reviewing it
10  for privilege would be a distraction or burden," Opp. at 17, the false assumption is
11  that information is "undiscovered." And the point that MGA is making is that it
12  would have to re-do a privilege review because the process that Mattel
13  contemplates would require MGA having to go through the entirety of documents
14  pulled to again reassert privilege and work product.

15  In short, the fact that MGA will have an opportunity to review documents for
16  privilege prior to their production to Mattel does not mean that MGA should endure
17  the cost and burden of doing so—especially when Mattel has not shown that
18  unfettered access to Mr. Larian's computers is necessary or appropriate.

### IV. **MATTEL SHOULD BE ESTOPPED FROM CONTRADICTING ITS PREVIOUS REPRESENTATIONS AND AGREEMENTS**

21  Mattel does not mention or dispute that it has only come this far by
22  consistently stating that it did not seek full access. Indeed, as recently as August
23  31, 2009, Mattel proudly proclaimed in open court that "We've never said that we
24  want to see every single active file on those [Larian] drives; ***that has never been***
25  ***our position***." *See* Dkt. No. 7467, Ex. 3 (8/31/2009 Hearing Tr. [Exhibit B to
26  12/11/2009 Parker Declaration]) at 9:12-13 (emphasis added). The most that
27  Mattel can muster to sheepishly deflect this unambiguous statement is that limited
28  access to Mr. Larian's hard drives "was not Mattel's preferred result" and by

1  claiming that "matters are quite different now than they were before." Opposition
2  at 19 n. 63.

3  However, as reflected in Mattel's Opposition, these "facts" are not newly
4  discovered. For example, the issue with the white-out and the fax, the Bryant
5  notebook, and Farhad Larian were all part of the Phase 1 trial. *See, e.g.,* Opp. at 9
6  fns. 24, 27-28, 41-43. And this explanation does not explain the fact that in a
7  subsequent meet and confer session of November 10, 2009, counsel for both parties
8  agreed on the record after an arms length negotiation to a revised protocol that—
9  once again—did not involve unfettered access to Mr. Larian's computers. *See* Dkt.
10 No. 7467, Ex. 4 (12/11/2009 Hurst Decl.) ¶¶ 2-6. Mattel's reluctance to address
11 these issue stems from the fact that, just a few days after this transcribed meet and
12 confer session, Mattel blind-sided MGA with yet another request for unfettered
13 access—this time to the newly appointed Discovery Master Smith.

14 Mattel's constant flip-flopping has put MGA at distinct disadvantage in terms
15 of having to spend time, money and energy defending against Mattel's requests and
16 securing multiple court orders prohibiting Mattel from searching active user files.
17 Ninth Circuit law is clear that "[n]o litigant deserves an opportunity to go over the
18 same ground twice, hoping that the passage of time or changes in the composition
19 of the court will provide a more favorable result the second time." *Disimone v.*
20 *Browner*, 121 F.3d 1262, 1266 (9th Cir. 1997). But that is exactly what Mattel is
21 attempting to do here by asking Judge Smith and the Court to reconsider an issue
22 that has already been litigated multiple times before. Mattel must be held to its
23 prior representations and agreements regarding the inspection of Mr. Larian's hard
24 drives, assuming that access is appropriate at all, which it is not.

## CONCLUSION

26 For the foregoing reasons, MGA's objections should be sustained.

- 9 -

MGA'S REPLY TO MATTEL'S OPP. TO MGA'S MTN TO
COMPEL RE INTERROGATORY NOS. 20-23 AND 28
CV 04-9049 DOC (RNBx)

| | | |
|---|---|---|
| Dated: | February 22, 2010 | ORRICK, HERRINGTON & SUTCLIFFE LLP |

By: */s/ Warrington S. Parker III*
Warrington S. Parker III
Attorneys for MGA Parties