MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710
Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**DECLARATION OF FRANK D. RORIE IN SUPPORT OF MGA'S REPLY RE OBJECTIONS TO ELECTRONIC DISCOVERY SPECIAL MASTER'S REPORT AND RECOMMENDATION (1/21/2010)**<br><br>Hearing Date: March 8, 2010<br>Hearing Time: 8:30 a.m.<br>Location: Courtroom of the Hon. David O. Carter |

I, Frank D. Rorie, declare as follows:

1. I am an associate at the law firm of Orrick, Herrington & Sutcliffe LLP, counsel of record for the MGA Parties in the above-captioned action. I am a member in good standing of the State Bar of California and am admitted to practice before this Court. I have personal knowledge of the facts set forth in this declaration unless otherwise expressly stated, in which case it is on information and belief. If called as a witness, I could and would testify competently to such facts under oath.

2. Attached hereto as **Exhibit 7** is a true and correct copy of an excerpt from the Reporter's Transcript of Proceedings dated July 10, 2008.

3. Attached hereto as **Exhibit 8** is a true and correct copy of an excerpt from the deposition transcript of Farhad Larian dated February 4, 2008.

4. Attached hereto as **Exhibit 9** is a true and correct copy of an excerpt from the Reporter's Transcript of Proceedings dated July 1, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of February, 2010, at Los Angeles, California.

*/s Frank D. Rorie*
Frank D. Rorie

# EXHIBIT 7

4764

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                          - - -

 4       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 5                          - - -

 6   MATTEL, INC.,              :  PAGES 4764 - 4889
                                :
 7            PLAINTIFF,         :
                                :
 8       VS.                    :  NO. ED CV04-09049-SGL
                                :  [CONSOLIDATED WITH
 9   MGA ENTERTAINMENT, INC.,   :  CV04-9059 & CV05-2727]
     ET AL.,                    :
10                              :
              DEFENDANTS.       :
11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 RIVERSIDE, CALIFORNIA

17                THURSDAY, JULY 10, 2008

18                  JURY TRIAL - DAY 22

19                    MORNING SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23                          UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24                          255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494
```

**CERTIFIED COPY**

Exhibit 7
Page 2

1       All rise.

2       (Recess taken.)

3       THE COURT: You may proceed, Counsel.

4       MR. QUINN: Thank you, your Honor.

5       Now we come to the surprise documentary evidence
6  that MGA and Carter Bryant never thought we would have.
7  Exhibit 1155, the black notebook. You'll have it with you in
8  the jury room. In July or August of 1999, Mr. Bryant started
9  drawing in the notebook that he was using at the time.
10 That's this black notebook. As he admitted to you, his very
11 first, his very first Bratz sketches are Exhibits 5-39, 5-40,
12 5-41, and 5-42 that you see there on the screen.

13      That is his testimony. And we asked him about
14 these. And he confirmed that these were -- these exhibits,
15 he did that very day when he came home from Kickapoo High.
16 He drew these drawings. These were the first ones. You're
17 going to see a lot of Bratz drawings back in the jury room,
18 but everybody agrees that those are the first ones.

19      So dating them is very, very important.

20      It's undisputed now that the first drawings of
21 Bratz were down on these pages, those exhibits, 5-39, -40,
22 -41, and -42. And these pages were torn out of this black
23 notebook, Exhibit 1155. Based on forensic testing, the
24 indentation analysis done by Lloyd Cunningham, he positively
25 concluded that two of those first Bratz drawings, 5-39 and

Exhibit 7
Page 3

4871

```
 1   5-42, were torn out of that notebook, and MGA did not dispute
 2   that. It didn't call their expert to contest that.
 3             That analysis changed this case. Before
 4   Mr. Cunningham reached this conclusion Mr. Bryant testified.
 5   He testified that he no longer had the notebook, that the
 6   drawings came from a notebook that he didn't have. Here it
 7   is again. Do you still have the original notebook? No, I
 8   don't. Do you know where it is? No idea. You tossed it?
 9   More than likely.
10             He did that because he tore out more than half the
11   pages of the notebook to conceal what was in them. Only 54
12   of the original 120 sheets remain in Exhibit 1155.
13             Now, if you've ever torn pages out of one of these
14   notebooks with a spiral binder, it's something you got to do
15   with care. You can't do a whole clump of them. It's hard.
16   These wires hold the pages pretty tight. You have to
17   deliberately pull them out one at a time. And when
18   Mr. Bryant tore out those pages, that was a deliberate act of
19   physically separating the original Bratz drawings from the
20   1999 notebook where they came from that placed them in time.
21   He knew that that notebook, what remained in it, the Jewel
22   drawings, his 1999 bank records, would betray his lies.
23             By ripping those pages free, he believed that he
24   could make his Bratz drawings timeless. He was destroying
25   the only record that existed of their birth at Mattel. Once
```

Exhibit 7
Page 4

# EXHIBIT 8

Page 1

1           UNITED STATES DISTRICT COURT
2          CENTRAL DISTRICT OF CALIFORNIA
3                 EASTERN DIVISION
4
5  CARTER BRYANT, AN           )
   INDIVIDUAL,                 )
6                              ) CASE NO.
        PLAINTIFF,             ) CV 04-9049 SGL(RNBX)
7                              )
    V.                         ) CONSOLIDATED WITH
                               ) CASE NO. 04-9059
8                              )           AND
   MATTEL, INC., A DELAWARE    )
9  CORPORATION,                ) CASE NO. 05-2727
                               )
10      DEFENDANT.             )
                               )
11                             )
   AND CONSOLIDATED ACTION(S)  )
12                             )
13
14        CONFIDENTIAL ATTORNEYS' EYES ONLY
15        VIDEOTAPED DEPOSITION OF FARHAD
16        LARIAN, VOLUME I, TAKEN ON BEHALF OF
17        MATTEL, INC., AT 10250 CONSTELLATION
18        BOULEVARD, 20TH FLOOR, LOS ANGELES,
19        CALIFORNIA, COMMENCING AT 9:39 A.M.,
20        MONDAY, FEBRUARY 4, 2008, BEFORE
21        PAULA A. PYBURN, C.S.R. 7304,
22        R.P.R., C.L.R.
23
24
25

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

Exhibit 8
Page 5

Page 53

1  REVIEWED IN A DAY?
2          MS. MORGENTHALER LEVER: OBJECTION; VAGUE
3  AND AMBIGUOUS, ASSUMES FACTS NOT IN EVIDENCE, LACK
4  OF FOUNDATION.
5          MR. ALLEN: JOIN.
6          THE WITNESS: IT DEPENDS ON THE PERSON, IT
7  DEPENDS HOW MANY PEOPLE, IT DEPENDS -- YEAH, IT
8  COULD HAVE BEEN REVIEWED IN ONE DAY.
9  BY MR. ZELLER:
10     Q.  AND WHAT WAS THE QUANTITY OF WHAT YOU HAD
11 GIVEN YOUR ATTORNEY BY THAT TIME?
12     A.  SOME BOXES.
13     Q.  HOW MANY?
14     A.  DON'T REMEMBER.
15     Q.  MORE THAN ONE?
16     A.  YEAH, MORE THAN ONE. PROBABLY 10 TO 12.
17     Q.  ISN'T IT TRUE THAT BY THAT TIME YOU HAD
18 GIVEN YOUR ATTORNEY A U.S.B. DEVICE THAT CONTAINED
19 EMAILS?
20         MS. MORGENTHALER LEVER: OBJECTION.
21         THE WITNESS: YES, I HAD.
22 BY MR. ZELLER:
23     Q.  DO YOU KNOW WHERE THAT U.S.B. DEVICE IS
24 TODAY?
25     A.  PROBABLY AT MY HOME.

Page 56

```
 1    THESE EMAILS ON IT OR MORE THAN ONE?
 2        A.   ONE.
 3        Q.   SO AT SOME POINT IN 2005 YOU GOT IT BACK
 4    FROM YOUR ATTORNEYS.  AND YOU'VE BEEN IN POSSESSION
 5    OF IT SINCE THEN?
 6        A.   THE U.S.B. DRIVE, YES.
 7        Q.   HAVE ANY COPIES OF IT BEEN MADE?
 8        A.   NO.
 9        Q.   IN CONNECTION WITH THIS LAWSUIT WITH MATTEL
10    DID YOU GIVE THE U.S.B. DEVICE TO YOUR ATTORNEYS?
11        A.   NO.
12        Q.   DID YOU PRINT OFF ANY EMAILS FROM THAT
13    U.S.B. DEVICE AND GIVE THEM TO YOUR ATTORNEYS?
14        A.   THERE ARE NO EMAILS ON THAT U.S.B. DRIVE.
15        Q.   I'M SORRY?
16        A.   THERE ARE NO EMAILS ON THAT DRIVE ANYMORE.
17        Q.   WHAT HAPPENED TO THEM?
18        A.   I ERASED THEM.
19        Q.   WHEN DID YOU DO THAT?
20        A.   SOON AFTER I DROPPED THE LAWSUIT -- OR THE
21    ARBITRATION.
22        Q.   AND WHY DID YOU ERASE THEM?
23        A.   I HAD DROPPED MY ARBITRATION, I WANTED TO
24    MOVE ON, I WAS CONCERNED THAT MY ATTORNEY HAD --
25    THAT YOU HAD SEEN DOCUMENTS THAT MAY HAVE BEEN
```

Page 57

1    PRIVILEGED OR CONFIDENTIAL, AND I SIMPLY DID NOT
2    WANT TO BE DEPOSED.
3        Q.   AND WERE YOU THE ONE WHO PERSONALLY ERASED
4    THE EMAILS FROM THE U.S.B. DRIVE?
5        A.   YES, I AM.
6        Q.   DID ANYONE ELSE HELP YOU WITH THAT?
7        A.   NO.
8        Q.   IS THAT SOMETHING YOU DISCUSSED WITH ANYONE
9    AT M.G.A. --
10       A.   NO.
11       Q.   -- AT ANY TIME?
12       A.   NO.
13       Q.   AT ANY TIME?
14       A.   NEVER.
15       Q.   YOU DID -- YOU ERASED THE EMAILS THAT WE'VE
16   BEEN TALKING ABOUT FROM THE U.S.B. DRIVE AFTER YOU
17   RECEIVED THE LETTERS FROM MY LAW FIRM THAT WE TALKED
18   ABOUT EARLIER ASKING YOU TO PRESERVE DOCUMENTS;
19   RIGHT?
20            MS. MORGENTHALER LEVER:   OBJECTION --
21            THE WITNESS:   THAT'S NOT WHAT I SAID.
22            MS. MORGENTHALER LEVER:   OBJECTION; ASSUMES
23   FACTS NOT IN EVIDENCE, LACK OF FOUNDATION.
24            MR. ALLEN:   JOIN.
25   ///

Page 65

1   WOULD HAVE BEEN SOME OF THE CATEGORIES THAT RELATED
2   TO BRATZ.
3           I THINK I ALSO HAD THE PLEADING -- SOME OF
4   THE PLEADINGS FROM MATTEL VERSUS M.G.A. OR CARTER
5   BRYANT, THAT WHOLE CASE, AND ALSO THE ART ATTACKS
6   CASE.
7   BY MR. ZELLER:
8       Q.   WERE THERE OTHER CATEGORIES RELATING TO
9   BRATZ THAT WAS ON THE U.S.B. DEVICE?
10      A.   I HAD DONE SOME TRADEMARK SEARCHES, SO -- I
11  MENTIONED THE TRADEMARKS, I THINK.  NOT THAT I
12  RECALL.
13      Q.   DO YOU THINK THAT THERE WERE OTHER
14  CATEGORIES, YOU JUST CAN'T REMEMBER WHAT THEY ARE?
15          MS. MORGENTHALER LEVER:  OBJECTION --
16          THE WITNESS:  IF I DON'T RECALL, I DON'T
17  RECALL.
18          MS. MORGENTHALER LEVER:  -- MISSTATES THE
19  WITNESS'S TESTIMONY.
20          MR. ZELLER:  WHAT EXHIBIT ARE WE ON?
21      Q.   OTHER THAN THE U.S.B. DEVICE, AT ANY TIME
22  SINCE 2000 HAVE YOU DISCARDED OR GOTTEN RID OF ANY
23  INFORMATION ABOUT BRATZ?
24      A.   YES.
25      Q.   WHAT ELSE HAVE YOU GOTTEN RID OF?

Page 66

1   A.   SOME OF THE BOXES THAT I RECEIVED BACK FROM
2   MY ATTORNEY.
3   Q.   WHICH ATTORNEYS?
4   A.   RICHARD KELLNER AND ROB SMITH -- BOB SMITH.
5   Q.   AND DID YOU GET THOSE BOXES BACK FROM YOUR
6   ATTORNEYS AFTER YOU HAD DISMISSED YOUR -- YOUR
7   ARBITRATION PROCEEDING AGAINST --
8   A.   YES.
9   Q.   -- ISAAC?
10  A.   YES.
11  Q.   AND WHEN DID YOU GET RID OF THOSE BOXES?
12  A.   WITHIN A FEW DAYS OF GETTING THEM BACK FROM
13  MY ATTORNEY.
14  Q.   WAS THIS ABOUT THE SAME TIME WHEN YOU
15  ERASED THE INFORMATION FROM THE U.S.B. DEVICE?
16  A.   YES.
17  Q.   AND HOW DID YOU DISCARD THE -- THE BOXES?
18  A.   I THREW THEM IN THE TRASH.
19  Q.   WAS THAT AT HOME OR SOMEWHERE ELSE?
20  A.   HOME.
21  Q.   WAS THAT THE 10 TO 12 BOXES THAT YOU
22  MENTIONED EARLIER OR A DIFFERENT SET OF BOXES?
23       MS. MORGENTHALER LEVER:   OBJECTION;
24  MISSTATES THE WITNESS'S TESTIMONY, LACK OF
25  FOUNDATION.

Page 67

1   THE WITNESS: IT WAS SOME OF THOSE 10 -- 10
2   TO 12 BOXES.
3   BY MR. ZELLER:
4   Q.   WHAT WAS IN THE BOXES THAT YOU GOT RID OF?
5   A.   I DON'T REMEMBER EXACTLY. THE EMAILS I
6   THINK WERE SOME OF THEM.
7   Q.   THE EMAILS THAT YOU DESCRIBED EARLIER THAT
8   PERTAINED TO BRATZ?
9   A.   NOT ONLY TO BRATZ. LUCASFILM MATTER,
10  WHATEVER I HAD. IT WASN'T JUST BRATZ.
11  Q.   BUT IT INCLUDED BRATZ?
12  A.   IT INCLUDED BRATZ, YES.
13  Q.   AND DID ANYONE ASSIST YOU IN DISCARDING
14  THOSE BOXES THAT -- OF THOSE MATERIALS THAT WE'VE
15  BEEN TALKING ABOUT?
16  A.   PROBABLY OUR HOUSEKEEPER.
17  Q.   ANYONE ELSE?
18  A.   I'M NOT SURE IF MY WIFE HELPED ME OR NOT.
19  Q.   ANYONE ELSE?
20  A.   NO.
21  Q.   AND DID YOU MAKE THE DECISION TO ERASE THE
22  INFORMATION FROM THE U.S.B. DEVICE AT THE SAME TIME
23  YOU DECIDED TO DISCARD THE BOXES?
24  A.   YES.
25  Q.   NOW, OTHER THAN, AS WE'VE TALKED ABOUT,

# EXHIBIT 9

3690

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3                      EASTERN DIVISION
 4                          - - -
 5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
 6                          - - -
 7   MATTEL, INC.,                )
                                  )
 8                   PLAINTIFF,   )
                                  )
 9        VS.                     )   NO. CV 04-09049
                                  )
10   MGA ENTERTAINMENT, INC., ET. AL., )
                                  )
11                   DEFENDANTS.  )   TRIAL DAY 18
                                  )   MORNING SESSION
12   AND CONSOLIDATED ACTIONS,    )   PAGES 3690-3821
                                  )
13
14
15       REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS
16                    RIVERSIDE, CALIFORNIA
17                   TUESDAY, JULY 1ST, 2008
18                         8:44 A.M.
19
20
21
22
23            THERESA A. LANZA, RPR, CSR
              FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
              RIVERSIDE, CALIFORNIA  92501
25                   951-274-0844
                 WWW.THERESALANZA.COM
```

CERTIFIED COPY

```
 1  A    WHAT HAPPENED WAS, IN THE FIREMAN'S FUND CASE, AS I SAID,
 2  WE WERE PLAYING TIT-FOR-TAT; WE WERE BICKERING AT EACH OTHER;
 3  AND HE DID NOT WANT ME INVOLVED IN THE CASE.  THERE WAS ONE
 4  DOCUMENT THAT WE HAD GIVEN COPIES OF TO THE ATTORNEYS, AND THE
 5  ORIGINAL WAS EXACTLY THE SAME AS THE COPY.  HE SIMPLY DIDN'T
 6  WANT ME INVOLVED IN THE CASE, AND THAT'S WHY HE TOLD ME NOT TO
 7  GIVE IT.
 8  Q    SO HE TOLD YOU IN THAT CASE NOT TO MAKE THE LEGIBLE
 9  ORIGINALS AVAILABLE TO FIREMEN'S FUND; CORRECT?  THAT'S WHAT HE
10  TOLD YOU?
11  A    BECAUSE HE WAS GOING TO HANDLE IT HIMSELF.
12  Q    YOU WROTE AN E-MAIL ABOUT THIS; CORRECT?
13  A    YES.
14  Q    YOU DIDN'T MAKE ANY MENTION OF THE FACT IN THE E-MAIL THAT
15  HE WAS GOING TO HANDLE IT HIMSELF, DID YOU?
16  A    AS I SAID, WE WERE PLAYING TIT-FOR-TAT, AND I WAS TRYING
17  TO SAY, 'I GOT YOU,' AND HE WAS TRYING TO SAY HE GOT ME; SO WE
18  HAD -- WE HAD A SIBLING RIVALRY.
19  Q    AND THE 'I GOT YOU' THAT YOU GAVE TO HIM WAS THAT YOU
20  REMINDED HIM THAT IN THIS FIREMAN'S FUND CASE, HE HAD
21  INSTRUCTED YOU NOT TO MAKE SOME ORIGINAL DOCUMENTS AVAILABLE,
22  AND YOU SAID, 'I DID IT ANYWAY.'
23       YOU SAID YOU DID IT ANYWAY; CORRECT?
24  A    THAT'S TRUE.
25  Q    NOW, AFTER YOU DISMISSED YOUR FRAUD CASE AGAINST
```

3809

```
 1              THE COURT:   MR. NOLAN, ANYTHING FURTHER?
 2              MR. NOLAN:   YES.
 3                        RECROSS-EXAMINATION
 4   BY MR. NOLAN:
 5   Q    LET'S GO BACK TO EXHIBIT 13380.                                11:5
 6              DO YOU REMEMBER FOCUSING ON THE E-MAIL EXCHANGE THAT
 7   YOU HAD WITH YOUR BROTHER ISAAC?
 8              MR. NOLAN:   THIS IS IN EVIDENCE, YOUR HONOR.
 9              THE COURT:   YES.
10   BY MR. NOLAN:
11   Q    MR. QUINN ASKED YOU TO LOOK AT YOUR MESSAGE TO ISAAC.
12              AND THAT'S ON THE BOTTOM; CORRECT?
13   A    YES.
14   Q    AND THIS IS THE PORTION THAT YOU SAY YOU MADE UP, IN TERMS
15   OF BEING TIT-FOR-TAT; IS THAT CORRECT?                              11:5
16   A    YES.
17   Q    THAT INFORMATION WAS FALSE; CORRECT?
18   A    YES.
19   Q    WELL, MR. QUINN DIDN'T SHOW YOU THE RESPONSE FROM
20   ISAAC LARIAN AT THE SAME TIME; RIGHT?                               11:5
21   A    CORRECT.
22   Q    SAME DATE.  YOU SENT THE E-MAIL AT 6:32 P.M., AND ISAAC,
23   YOUR BROTHER, RESPONDED AT 7:15 P.M.; RIGHT?
24   A    CORRECT.
25   Q    IF YOU WOULD READ FOR THE JURY THE FIRST LINE OF THE           11:5
```

```
                                                                      3810

 1   E-MAIL RESPONSE FROM ISAAC LARIAN TO YOU.
 2   A    "YOUR ALLEGATION STATED BELOW IS FALSE AND SELF-SERVING,
 3   AS USUAL."
 4   Q    AND YOU AGREED THAT ISAAC WAS RIGHT; IT WAS FALSE; RIGHT?
 5   A    YES, I DID.
 6        MR. NOLAN:  YOUR HONOR, EXHIBIT 18569 WAS PRODUCED.
 7   IT HAS BATES NUMBER KBK 012296 CK.  AND WITH PERMISSION, I'D
 8   LIKE TO PRESENT THIS TO MR. LARIAN.
 9        THE COURT:  VERY WELL.
10        IS THAT THE BATES-STAMPED COPY YOU HAVE HERE?
11   BY MR. NOLAN:
12   Q    THIS IS WHAT I WAS ASKING YOU IN DIRECT EXAMINATION.  JUST
13   GO BACK IN TIME, MR. LARIAN, IF YOU DON'T MIND.
14        JUST TO SET THIS UP, RICHARD KELLNER WAS YOUR LAWYER;
15   CORRECT?
16   A    YES.
17   Q    AND ROBERT TURNER WAS COUNSEL FOR ISAAC AND MGA.
18   A    CORRECT.
19   Q    IN CONNECTION WITH THE LITIGATION THAT ENDED UP IN
20   ARBITRATION.
21   A    YES.
22        MR. NOLAN:  YOUR HONOR, WE'D OFFER EXHIBIT 18569.
23        THE COURT:  ANY OBJECTION?
24        MR. QUINN:  NO OBJECTION.
25        THE COURT:  IT'S ADMITTED.
```

TUESDAY, JULY 1, 2008                      TRIAL DAY 18, MORNING SESSION

Exhibit 9
Page 15