QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Jon D. Corey (Bar No. 185066)
joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>MGA Entertainment, Inc. et al.<br><br>　　　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. 04-09049 DOC (RNBx)<br><br>Consolidated with Case<br>Nos. CV 04-09059 and CV 05-02727<br><br>**MATTEL, INC.'S OBJECTIONS TO DISCOVERY MASTER'S PRIVILEGE RULINGS CONCERNING KEYWORDS AT DEPOSITION OF MICHAEL MOORE**<br><br>Hearing Date:　　TBD<br>Time:　　　　　　TBD<br>Place:　　　　　Courtroom 9D<br><br>**Phase 2**<br>Discovery:　　　　　TBD<br>Pre-trial Conference:　TBD<br>Trial Date:　　　　　TBD |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on a date to be determined, in the Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule and/or clarify the Discovery Master's ruling made during the February 17, 2010 deposition of Michael Moore that Mattel waived the attorney work product privilege as to the keywords it used to implement an e-mail security tool. This Motion is made on the grounds that the Discovery Master erroneously concluded that the keywords Mattel used are privileged attorney work product and that Mattel waived that privilege.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael Zeller, any matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

**Statement of Compliance**

Mattel met and conferred on the underlying motion before the Discovery Master on February 17, 2010.

DATED: February 22, 2010         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Until now, MGA has consistently taken the position in this case that its conduct in preserving and collecting documents for purposes of discovery is privileged information. MGA has shut down questioning of at least five witnesses on this basis. MGA has now done an about face. Before Judge Smith, MGA recently demanded that Mattel disclose its efforts to search for ESI for certain emails – a request that was granted. Then, at the deposition of a Mattel in-house counsel on Thursday, MGA argued that the specific keywords Mattel used in implementing an e-mail security tool are *not* protected because the tool purportedly related to document preservation and collection, even as MGA refused to stipulate more generally that search terms used and other search, collection and preservation efforts made in connection with discovery are not privileged.

MGA cannot have it both ways. The Discovery Master held that keywords were generally protected but compelled Mattel to disclose the keywords Mattel used in connection with the e-mail security tool system between December 2003 and April 2005. So long as MGA too must disclose comparable information that it has been withholding for years, Mattel does not object to disclosing those keywords as ordered. Thus, reciprocity should be ordered. Moreover, the basis for disclosing the keywords should be clarified or corrected. The Discovery Master ruled that Mattel *waived* the privilege as to the keywords. That is not correct, and the erroneous ruling could serve to allow MGA to continue with its inconsistent positions regarding privilege – arguing that only Mattel, but not MGA, must disclose information about the use and selection of the keywords and, more generally, about its document collection and preservation efforts.

## Relevant Background

Throughout this case, MGA has instructed its witnesses not to respond to questions and has otherwise refused to provide information concerning its document

preservation and collection efforts on the grounds that such questions purportedly invade the attorney work product or attorney client privileges. For example:

- At deposition on July 19, 2007, MGA instructed Lisa Tonnu – *MGA's designee concerning its document preservation efforts* – not to respond to questions concerning who was involved in MGA's document collection efforts, the locations that were searched for documents, the people who MGA asked to search for documents, and the procedures MGA followed with respect to collecting and producing documents.[1]

- At deposition on January 28, 2008, MGA instructed Daniel Cooney, MGA's Vice President of Sales, not to respond to questions concerning whether MGA searched Mr. Cooney's computer.[2]

- At deposition on February 4, 2008, MGA instructed Farhad Larian, Isaac Larian's brother, not to respond to questions concerning whether MGA destroyed or withheld responsive documents.[3]

---

[1] See Tonnu Deposition at 215:15-216:10 (refusing to identify which MGA employees "collected documents that Mattel has requested in this case"; refusing to state whether she knows if "non-MGA employees took steps to collect documents"); 217:16-218:3 (refusing to state whether she knows what "offices or file locations" were searched for purposes of MGA's responses to Mattel's discovery requests); 219:14-221:9 (refusing to answer whether MGA searched off-site document storage locations, files of MGA's subsidiaries, files of MGA's employees who work at home, or the files of MGA's contractors, vendors or consultants); 224:22-233:22 (e.g., refusing to state whether she knows "what procedures were followed with respect to the collection of documents responsive to Mattel's requests," what "steps were taken to ensure that all Bratz design documents between 2000 and 2001 were collected and produced," and what "locations were searched" for Bratz design documents). Indeed, despite Mattel's counsel agreement that "what was done to collect documents is not privileged," counsel for MGA refused to allow Ms. Tonnu to respond to any questions concerning MGA's document collection efforts based on the concern that such testimony could be deemed a waiver of the attorney-client privilege. Id. at 229:6-233:22.

[2] See Cooney Deposition at 168:3-17 (instructing Mr. Cooney not to answer whether he has "ever given any MGA attorney access to [his] MGA computer").

[3] See F. Larian Deposition at 275:22-280:13, 370:13-371:16 (instructing Mr. Larian not to respond to a series of questions concerning his communications with
(footnote continued)

- At deposition on May 2, 2008, MGA limited MGA General Counsel Daphne Gronich's testimony concerning MGA's efforts to search for responsive documents, including with respect to MGA's efforts to obtain responsive documents from MGA's third party vendors.[4]

- At deposition on October 22, 2008, MGA instructed Jorge Castilla, MGA's manager of sales planning, not to respond to questions concerning the types of documents he was told to preserve and whether documents in his control had been searched.[5]

When it comes to Mattel's discovery, however, MGA is now taking the opposite position. MGA recently moved to compel the production of information purportedly related to the "adequacy" of Mattel's search for electronic information.[6]

---

Isaac Larian regarding MGA's document preservation and/or destruction and whether MGA withheld certain documents).

[4] See Gronich Deposition at 79:24-84:10 (e.g., instructing witness not to respond to questions asking for the "efforts" MGA made "to collect certain documents and materials related to the origin and initial development of Bratz" and "to collect relevant materials from its vendors" on the grounds that such questions call for "privileged communications or work product").

[5] See Castilla Deposition at 76:20-77:7 (instructing witness not to respond to question asking whether anyone from MGA "search[ed] [his] hard copy files to determine whether or not there were any Mattel documents in those files"); 85:17-86:16 (instructing witness not to answer question asking whether "anyone at MGA . . . ever search[ed] any files that are in your possession . . . to find out whether or not you had Mattel confidential or trade secret information in those files"); 90:13-23 (instructing witness not to answer question asking whether "[t]o your knowledge . . . anyone at MGA [has] ever searched any electronic files that you have on your work computers there at MGA for any documents that relate to Mattel"); 108:9-22 (instructing witness not to answer question asking whether anyone at MGA has ever "searched the [witness's] HP iPaq device for any files"), 243:25-244:10 (asserting attorney-client and work product objections, and instructing witness not to answer, question asking for basis of witness's statement suggesting that MGA has "searched [his] documents for documents that are relevant to this litigation").

[6] See MGA's Motion to Compel ESI for [Certain E-mails], dated January 20, 2010, at 1.

That motion was granted.[7] Then, at the deposition of Mattel in-house attorney Michael Moore, MGA insisted that the keywords Mattel used for purposes of implementing an e-mail security tool are discoverable because they concern "Mattel's conduct with respect to collecting [the] universe of documents" that it preserved for purposes of discovery.[8]

The Discovery Master ultimately agreed with MGA and ordered Mr. Moore to disclose all the keywords Mattel used with its e-mail tool for the time period between December 2003, when the e-mail security tool was implemented, and April 2005, when Mattel ceased its practice of recycling internal e-mails, such that it was able to preserve e-mails apart from the e-mail tool.[9] However, the Discovery Master ordered disclosure not because, as MGA argued, the keywords were not subject to work product protection in the first place, but rather because Mattel purportedly waived the work product privilege by partially disclosing the keywords.[10] Specifically, the Discovery Master concluded that Mr. Moore's prior disclosure of two of the keywords in an affidavit he was compelled by Court order to submit, and Mr. Moore's disclosure of two other keywords earlier in his deposition, waived work product protection over all the keywords.[11] This was despite MGA's position in the deposition of its own in-house counsel that no waiver could be effectuated by

---

[7] See Report and Recommendation of Electronic Discovery Special Master, dated February 5, 2010.

[8] Michael Moore Rough Tr. Vol. 1, dated February 17, 2010 ("Moore Rough Tr.") at 249:13-20; see also id. at 220:8-9 (MGA's counsel stating her "view is that facts are not privileged, so I don't view [disclosure of keywords] as a waiver").

[9] The Discovery Master made clear that its disclosure order was limited to the keywords themselves, stating that "MGA has not asked and I'm not ordering [Mr. Moore] to explain why he [or Mattel] picked certain keywords," and that his disclosure order was limited to "what words were used." Id. at 252:19-25.

[10] Id. at 252:3-9 (ruling that "at a minimum there's been a waiver and you can't just give some of the words and say we're not going to give you any at all[,] and there was no stipulation . . . that granted a limited right to give the key words but not all of them without waiving further key words.").

[11] Id. at 252:3-9.

the declarations because they were compelled by the Court.[12]  Mattel stated its intention to appeal the ruling, and this motion resulted.[13]

**Argument**

**I.   THE DISCOVERY MASTER'S PRIVILEGE WAIVER RULING WAS ERRONEOUS**

The attorney work-product doctrine protects from disclosure the thought processes and mental impressions of attorneys. <u>Hickman v. Taylor</u>, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."). The rule provides qualified protection to "documents and tangible things . . . prepared in anticipation of litigation or for trial" by or for a party, or by or for a party's representative. <u>Fed. R. Civ. P.</u> 26(b) (3).

As MGA itself argued at Mr. Moore's deposition, the attorney work product doctrine does not extend to the conduct of attorneys with respect to preserving and collecting documents for purposes of litigation.[14]  Information about discovery

---

[12] <u>See</u> Gronich Deposition at 80:15-18, 82:20-83:5 (asserting work product objection over questions concerning MGA's document preservation efforts, and that Ms. Gronich's affidavit concerning that issue was "something that was ordered to be filed").

[13] Consistent with the procedure for such rulings, the witness has not answered the contested questions pending resolution of the issues by this Court. <u>See</u> Order of February 20, 2010, at 2 ("Even where the Special Discovery Master overruled the MGA Parties' objections, the instruction not to answer was preserved in order to set the stage for an appeal before this Court."). During the deposition, counsel for Mattel asked counsel for MGA if MGA would stipulate that search terms and keywords used by the parties for the purposes of collecting and preserving documents in this case are not privileged information. Counsel for MGA would not agree to that stipulation. <u>See</u> Declaration of Michael T. Zeller, dated February 22, 2010, at ¶ 2.

[14] <u>See</u> Moore Rough Tr. at 220:8-10 (MGA's counsel stating: "My view is that facts are not privileged, so I don't view that as a waiver."); 249:18-20 ("I haven't asked why or what communications were made in connection with [the e-mail filter] or anything like that. Only what happened. What was Mattel's conduct with respect to collecting this universe of documents.").

conduct is, and must be, discoverable for purposes of establishing whether a party has complied with its discovery obligations.  See e.g., Smith v. Life Investors Ins. Co. of America, 2009 WL 2045197, at *7 (W.D. Pa. 2009) (compelling disclosure of search terms despite assertion of attorney work product privilege); Wingnut Films, Ltd. v. Katja Motion Pictures Corp., 2007 WL 2758571, at *14 (C.D. Cal. Sep. 18, 2007) (defendant failed to demonstrate reasonableness of search for documents where "no witness can say with any degree of certainty what individuals searched their own email files or how any of those searches were conducted"); Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 262 (D. Md. 2008) (defendants failed to meet burden of demonstrating reasonableness of document search where they "neither identified the keywords selected nor the qualifications of the persons who selected them to design a proper search"); see also Victor Stanley, 250 F.R.D. at 262 ("'Parties should expect that their choice of search methodology will need to be explained, either formally or informally, in subsequent legal contexts (including in depositions, evidentiary proceedings, and trials).'") (quoting *Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 189, 194-95).

Because the keywords themselves are not privileged work product, Mattel's alleged partial disclosure of those keywords cannot be a waiver.  A waiver of privileged work product requires, of course, a voluntary disclosure of privileged work product.  See In re McKesson HBOC, Inc., 2005 WL 934331, at *6 (N.D. Cal. March 31, 2005) (citations omitted) (waiver of work product "will be found only where the work product was voluntarily disclosed such that it may become readily accessible to an adversary").  The Discovery Master's ruling that Mattel waived the attorney work product privilege as to the keywords therefore is erroneous and should be overruled.

Mattel understands that the ruling it asks this Court to issue may lead to the same result as the Discovery Master's erroneous waiver ruling – that is, Mattel's

disclosure of the keywords. Nonetheless, the Discovery Master's privilege waiver ruling is not harmless error and should be corrected. First, as noted, MGA has taken inconsistent positions on the question whether the parties' discovery conduct is privileged. Given that, and the risk that it may reverse course again and attempt to rely on the Discovery Master's ruling to shield its own discovery conduct from disclosure, the Court needs to settle the issue whether the parties' discovery conduct, such as their selection and use of keywords for purposes of document collection and preservation, is subject to work product protection.

Furthermore, if the Discovery Master's waiver ruling stands, MGA may seek to abuse it by arguing for a broader disclosure of Mattel's privileged information. MGA's counsel statement at Mr. Moore's deposition that, "***right now***," MGA is not asking "why or what communications were made in connection with" Mattel's selection of the keywords, portends that such questions will be forthcoming.[15] The Court should preempt such misguided argument, and the inevitable disputes and briefing that would result, by clarifying that Mattel did not waive work product protection over the keywords because such keywords are not privileged work product in the first place.[16]

---

[15] Indeed, MGA has already tried to expand upon the Discovery Master's erroneous waiver ruling by asking Mattel to include in this motion questions about the discoverability of the search terms Mattel used with its SMPT logs, so that MGA could obtain a ruling as to whether that information is discoverable even though those search terms were not subject to the Discovery Master's disclosure order.

[16] To the extent the keywords *were* privileged work product, the Discovery Master's ruling that Mattel must disclose them because it waived was not correct. Mr. Moore's disclosure of two of the keywords in his affidavit submitted in opposition to MGA's motion for terminating sanctions was not a waiver because Mr. Moore was compelled by Court Order to submit that affidavit. See Order Requiring Filing of Affidavits re Evidence Preservation, dated August 27, 2007, Docket No. 895, at 5 (ordering parties "to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation"); see also In re McKesson HBOC, Inc., 2005 WL 934331, at *6 ("the subsequent disclosure of the disputed materials in this case pursuant to court orders does not constitute waiver of work product protection"). Indeed, MGA has taken this same position
    (footnote continued)

## II. MGA SHOULD BE ORDERED TO RE-PRODUCE WITNESSES FOR FURTHER EXAMINATION CONCERNING MGA'S DISCOVERY PRACTICES

Despite asserting at Mr. Moore's deposition that discovery conduct is not privileged, MGA would not agree to bring back any of its witnesses – including its prior 30(b)(6) witness – to respond to questions concerning MGA's discovery conduct that those witnesses previously refused to answer following MGA's assertions of privilege.[17]  MGA should not be able to have it both ways by obtaining disclosure of Mattel's discovery efforts on the grounds that such conduct is not privileged, while shielding its own discovery conduct from disclosure based on the opposite argument.

MGA should therefore be ordered to produce for further deposition all the witnesses who it instructed not to respond to questions concerning MGA's discovery conduct. As noted above, those witnesses include its prior 30(b)(6) witness Lisa Tonnu, Daniel Cooney, Farhad Larian, Daphne Gronich and Jorge Castilla.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court overrule the Discovery Master's erroneous ruling that Mattel waived the attorney work product privilege over the keywords it used for its e-mail tool. Mattel also requests

---

with respect to information included in an affidavit it was compelled by the Court to submit.  See Gronich Deposition at 80:15-18, 82:20-83:5 (asserting work product objection over questions concerning MGA's document preservation efforts, and noting that Ms. Gronich's affidavit concerning that issue was "something that was ordered to be filed"). Likewise, Mr. Moore's disclosure of two other words at deposition was not a waiver because the words he disclosed were *not* selected in anticipation of litigation, and thus were not protected information. See Moore Rough Tr. at 87:13-88:11.

[17]  Moore Rough Tr. at 245:1-9 (noting MGA's refusal to agree to bring back its witnesses for further examination).

that this Court provide guidance as to whether the parties' discovery conduct, including their conduct with respect to preserving and collecting documents and selecting and using document search terms, is subject to attorney work product protection. Finally, consistent with MGA's current position that discovery conduct is not privileged, the Court should order Lisa Tonnu, Daniel Cooney, Farhad Larian, Daphne Gronich and Jorge Castilla to return for further deposition examination concerning MGA's discovery conduct.

DATED: February 22, 2010

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.