QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>        vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OBJECTIONS TO THE DISCOVERY MASTER'S PRIVILEGE RULINGS ON QUESTIONS REGARDING MATTEL'S COPYRIGHT REGISTRATIONS DURING THE DEPOSITION OF MICHAEL MOORE**<br><br>Date:    TBD<br>Time:    TBD<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:   TBD<br>Trial Date:  TBD |

MATTEL'S OBJECTIONS TO PRIVILEGE RULINGS IN THE MOORE DEPOSITION

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on a date to be determined, in the

3   Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Santa

4   Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the

5   Court to overrule the Discovery Master's privilege rulings regarding Mattel's copyright

6   registrations during the February 17, 2010 deposition of Michael Moore.  This Motion

7   is made on the grounds that the Discovery Master's rulings erroneously compel the

8   disclosure of privileged attorney-client communications and protected attorney work-

9   product and wrongly compelled responses to improper questions.

10          Specifically, Mattel seeks an Order overruling the Discovery Master's

11   instructions to Michael Moore to answer the questions at 262:10-12, 263:1-4, 272:11-

12   14, 273:11-14, 274:7-10, 274:21-24, 275:19-22, 277:1-5, 277:14-17, 278:2-7, 279:17-

13   22, 280:8-18, 281:3-7, 281:13-17 and 281:23-282:3 of the rough transcript of the

14   February 17, 2010 deposition of Michael Moore.

15          This Motion is based on this Notice of Motion and Motion, the

16   accompanying Memorandum of Points and Authorities, any matters of which the Court

17   may take judicial notice, and such further evidence and argument as may be presented

18   at or before the hearing on this matter.

19                          **Statement of Compliance**

20          Mattel met and conferred on the underlying motion before the Discovery

21   Master on February 17, 2010.

22

23   DATED:  February 22, 2010          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
24

25

26                                      By /s/ Michael T. Zeller
                                          Michael T. Zeller
27                                        Attorneys for Mattel, Inc.

28

00505.07975/3333530.5

**Preliminary Statement**

During the deposition of Michael Moore, in-house counsel for Mattel, MGA questioned Mr. Moore concerning certain Bratz copyright registrations that Mattel sought to obtain in October 2006 in connection with this litigation.  These registrations were filled out by and at the direction of outside litigation counsel as part of this lawsuit.  MGA sought testimony from Mr. Moore about Mattel's reasons for filling out the forms the way it did, and Mattel's beliefs and intent at the time.  These questions suffered from several problems.

First, revealing Mr. Moore's knowledge about the preparation of the forms would necessarily require the disclosure of attorney-client communications.   To the extent Mr. Moore knows why Mattel filled out the form the way it did, he knows that *only* based on privileged discussions with outside counsel.  MGA itself has repeatedly contended that a party need not disclose information learned exclusively through privileged discussions.  If that is right, then Mr. Moore need not answer these questions; if it is wrong, then numerous MGA witnesses should be brought back to answer questions they refused to answer.

Second, the questions MGA asked were improper for reasons apart from privilege, including because they lacked any defensible foundation.  In each, MGA asked Mr. Moore, a single in-house lawyer (and not a 30(b)(6) witness), what "*Mattel's*" beliefs and claims are – something the witness could not possibly speak to. The questions were improper, and the Discovery Master erred in compelling answers to them.

**Statement of Facts**

Mattel Obtains Copyright Registrations for Carter Bryant's Bratz Drawings.  In October 2006, during the course of this litigation, Mattel sought to register with the Copyright Office a series of Bratz drawings that Bryant created while he was a Mattel

employee.  Mattel subsequently obtained registrations for each of the drawings.[1]  The decision to register the drawings was made by Mattel's outside litigation counsel.  In fact, all of the decisions regarding the applications -- including what information should be included, how the form should be filled out, and why -- were made by outside litigation counsel solely for purposes of the ongoing litigation with MGA in this case.  Mattel's outside counsel communicated the decisions to Mattel's in-house counsel, Michael Moore, and filled out the registrations.[2]  Mr. Moore then instructed a Mattel paralegal to sign and cause to be filed the registration forms with the Copyright Office.

MGA Deposes Michael Moore About Mattel's 2006 Copyright Registrations. On February 17 and 18, 2010, MGA deposed Mr. Moore.  During the deposition, MGA asked Mr. Moore a series of questions relating to the fact that boxes 6(a) and 6(b) of Mattel's 2006 Bratz copyright registrations are blank.  Boxes 6(a) and 6(b) of the copyright registrations apply to "derivative works" and ask the applicant to list any preexisting materials and what new material has been added if the registered work is a "derivative work."[3]

Mr. Moore answered MGA's questions regarding information that was listed on the face of the copyright registrations, such as the fact that the registrations left Boxes 6(a) and 6(b) blank.[4]  On the other hand, Mr. Moore testified that he could not answer other MGA questions regarding the preparation of the forms without revealing privileged communications.[5]  The questions at issue are:

(1)    "Is Mattel claiming that this group drawing of dolls upon which it obtained a registration, Exhibit 13875, is a derivative work?"[6]

---

[1]   See TX 13873, TX 13874, TX 13875, TX 13876, TX 13877, TX 13878.
[2]   Michael Moore Rough Tr. Vol. 1, dated February 17, 2010 ("Moore Rough Tr.") at 276:3-6.
[3]   See TX 13873, TX 13874, TX 13875, TX 13876, TX 13877, TX 13878.
[4]   Moore Rough Tr. at 262:20-263:1.
[5]   Id. at 186:8-12.
[6]   Id. at 262:10-12.

(2)    "Mr. Moore, Mattel is not claiming that the work group drawing of dolls upon which it obtained a registration in Exhibit 13875 is a derivative work or compilation; isn't that correct?"[7]

(3)    "In filing the application for registration set forth in Exhibit 13875, was Mattel claiming that the group drawing of dolls identified therein was a derivative work?"[8]

(4)    "Mr. Moore in fact Mattel did not claim in its application that became the registration of Exhibit 13875 that the group drawing of dolls identified therein was a derivative work?"[9]

(5)    "At the time that Mattel filed its copyright application in Exhibit 13875, was the group drawing of dolls identified therein based on any pre-existing work?"[10]

(6)    "At the time Mattel filed Exhibit 13875 with the Copyright Office did it believe at the group drawing of dolls identified in that application was based on any pre-existing work?"[11]

(7)    "At the time Mattel filed its copyright application in Exhibit 13875, did the group drawing of dolls identified in that application incorporate any pre-existing material?"[12]

(8)    "At the time Mattel filed its copyright application in Exhibit 13875, did it believe that the group drawing of dolls identified in that application incorporated any pre-existing material?"[13]

---

[7]  Id. at 263:1-4.
[8]  Id. at 272:11-14.
[9]  Id. at 273:11-14.
[10]  Id. at 274:7-10.
[11]  Id. at 274:21-24.
[12]  Id. at 275:19-22.
[13]  Id. at 277:1-5.

(9)     "Is thank you [sic] group drawing of dolls identified in Mattel's copyright application, Exhibit 13875 based on the Toon Teens creation of Mattel's employee Lily Martinez?"[14]

(10)    "At the time Mattel filed its application for copyright registration of the group drawing of dolls set forth in Exhibit 13875, did it believe that the work identified therein was based on in whole or in part based on the work of Mattel's employee Lily Martinez referred to as Toon Teens?"[15]

(11)    "At the time that Mattel filed its copyright application for group drawing of dolls identified in Exhibit 13875, did it believe that that group drawing of dolls incorporated any pre-existing material from the work Toon Teens work of Mattel's employee Lily Martinez?"[16]

(12)    "In filing the copyright application marked as part of Exhibit 13875 at this time mode knowly [sic] fail to identify Toon Teens as pre-existing material upon which the group drawing of dolls identified in Exhibit 13875 was based?"[17]

(13)    "In filing with the copyright office its application sets forth in Exhibit 13875, did Mattel deliberately choose not to identify Toon Teens as pre-existing material upon which the group drawing of dolls set forth therein was based?"[18]

(14)    "In filing the copyright application marked as part of Exhibit 13875, did Mattel know knowingly fail to identify the group drawing of dolls identified therein as based on a pre-existing work in the form of Lily Martinez's Toon Teens?"[19]

(15)    "In filing the copyright application marked as part of Exhibit 13875, did Mattel deliberately choose not to identify the group drawing of dolls set forth therein as based on pre-existing work in the form of Lily Martinez's Toon Teens?"[20]

---

[14] Id. at 277:14-17.
[15] Id. at 278:2-7.
[16] Id. at 279:17-22.
[17] Id. at 280:8-18.
[18] Id. at 281:3-7.
[19] Id. at 281:13-17.
[20] Id. at 281:23-282:3.

MATTEL'S OBJECTIONS TO PRIVILEGE RULINGS IN THE MOORE DEPOSITION

1    The Discovery Master directed Mr. Moore to answer each of these questions.[21]

2                                   **Argument**

3    **I.    THERE IS NO FOUNDATION FOR THIS TESTIMONY BY COUNSEL**

4          At the outset, even apart from the privilege issues discussed below, the questions

5    listed above are all clearly improper.  Each of them demands disclosure of Mattel's

6    beliefs underlying and claims regarding the 2006 Bratz copyright registrations.  Even

7    assuming those beliefs are relevant and discoverable, MGA's questions about what

8    ***Mattel's*** beliefs and claims are, propounded to an individual witness and not a Fed. R.

9    Civ. P. 30(b)(6) witness, are wholly improper.  See, e.g., In re Motor Fuel Temperature

10   Sales Practices Litigation, 2009 WL 5064441 *2 (D. Kan. 2009) ("[W]hen a person

11   testifies in his individual capacity under Rule 30(b)(1), he speaks on behalf of himself,

12   not his company.").  Particularly improper were Question Nos. 1 and 2 above seeking

13   Mattel's current legal contentions, as revealed by the phrasing of MGA's questions

14   about what Mattel "is" and "is not" "claiming."  Question Nos. 5-8 and 10-11, all of

15   which are divorced from the registrations, but instead ask about Mattel's beliefs and

16   claims at the time of their preparation, likewise ask for Mattel's assessment of its legal

17   claims at that juncture.  MGA's demonstrable failure to even attempt to lay a proper

18   foundation for its questions alone warrants rejection of MGA's demands that the

19   questions be answered.

20         Each of the questions also were phrased in conclusory legal terms, which courts

21   have recognized are improper.  See, e.g., BB&T Corp. v. U.S., 233 F.R.D. 447, 449

22   (M.D.N.C. 2006) (granting protective order, stating that "until a party has first shown

23   that the interrogatory process cannot be used, it may not seek to use depositions for

24   contention discovery.").  They should not be compelled for this reason as well.

25         MGA's questions regarding whether Mattel "knowingly failed" or "deliberately

26   chose" to not disclose that the Bratz drawings are "derivative" of Lily Martinez's

27

28   [21]  Id. at 265:18-266:20.

1   "Toon Teens" – a line of Mattel dolls – also improperly assume that Mattel *believed*

2   that the Bratz drawings are derivative of Toon Teens – a purported fact that has never

3   been in evidence.  See Questions 12-15, supra.  These argumentative questions assumed

4   facts not in evidence and should not be compelled for this further reason.

5   **II.      RESPONDING TO MGA'S QUESTIONS WOULD REVEAL THE**

6   **SUBSTANCE OF ATTORNEY-CLIENT COMMUNICATIONS**

7   Whatever knowledge Mr. Moore has of Mattel's "beliefs" and "claims"

8   underlying the registrations and of "why" Mattel filled out the forms the way it did is

9   solely derived from communications with outside counsel.  Outside counsel decided

10  how to fill out the registration forms at issue and in fact filled out their content.  In light

11  of this, Mr. Moore was properly instructed not to answer the questions.

12  In fact, there is a long record of MGA instructing witnesses not to answer

13  questions where the information requested was claimed to have been conveyed to the

14  witness by counsel.  To pick a few examples:

15  •      When Susan Kuemmerle testified that she learned from counsel where Machado

16  and others obtained documents on a CD containing Mattel's trade secrets that was

17  discovered in MGA Mexico's offices, MGA instructed Kuemmerle not to answer even

18  basic foundational questions, such as which counsel she learned this from, let alone

19  what she actually learned on the subject.[22]  MGA even went so far as to instruct her not

20  to answer a yes or no question about whether she knew which counsel told her where

21  the documents were from.[23]

22  •      MGA instructed Isaac Larian just weeks ago not to answer questions about

23  whether he believes that the Larian-O'Connor email about concealing the timing of the

24  _____

25  [22]   Deposition Transcript of Susan Kuemmerle, dated January 28, 2008, at 144:14-145:4, 145:11-16.

26  [23]   Id. at 76:10-16 ("Q:  You can answer that yes or no.  Do you know which

27  counsel told you where the documents came from?  MR. ALLEN:  I'm going to

     object because imbedded in that question is attorney-client communication, and I'm

28  going to instruct the witness not to answer.").

1  creation of Bratz is privileged, apparently on the grounds that he had communications

2  with counsel on this topic.[24]  MGA instructed Mr. Larian not to answer yes or no

3  questions regarding even whether he or anyone at MGA participated in the decision to

4  withhold the email from Mattel.[25]  MGA even instructed Larian not to answer a

5  question about what Carter Bryant told Larian on the grounds that Larian may have

6  later related Bryant's statements to his counsel.[26]

7  •      MGA instructed Lisa Tonnu not to answer yes or no questions about who at

8  MGA collected documents and whether non-MGA employees had collected documents

9  unless she had knowledge "other than what was communicated to [her] by counsel."[27]

10  MGA also instructed Ms. Tonnu not to answer yes or no questions about what areas

11  where searched for documents unless she had knowledge "apart from what [she]

12  learned from counsel."[28]  MGA even instructed Ms. Tonnu not to disclose whether

13  MGA stores paper files off-site unless she had knowledge "other than from counsel."[29]

14  •      MGA instructed Paula Garcia not to answer yes or no questions regarding

15  whether she was aware of the arbitration between Isaac Larian and Farhad Larian "if

16  she learned from counsel."[30]

17       Mattel's knowledge, beliefs, and claims regarding the registrations at issue and

18  how to complete them were communicated from outside counsel to Mr. Moore to

19  explain the legal advice that was provided.  These communications were clearly

20  privileged.  Mattel properly instructed Mr. Moore not to answer the questions he was

21  asked because doing so would reveal the substance of the privileged communications

22  and legal advice.  That is especially the case regarding Question Nos. 5-8 and 10-11, all

---

[24]  Deposition Transcript of Isaac Larian, dated December 11, 2009, at 948:18-24, 949:25-950:17, 951:7-19.

[25]  Id. at 952:4-18, 953:4-17.

[26]  Id. at 888:19-889:5.

[27]  Deposition Transcript of Lisa Tonnu, dated July 19, 2007, at 215:15-216:10.

[28]  Id. at 217:16-218:3.

[29]  Id. at 218:12-16.

[30]  Deposition Transcript of Paula Garcia, dated May 25, 2007, at 349:7-14.

of which are divorced from the registrations and instead ask about Mattel's beliefs and claims at the time, squarely seeking Mattel's assessment of its legal claims during the course of this litigation -- which was conveyed to Mr. Moore through attorney communications providing legal advice. And, MGA's questions about Mattel's current assessment of legal contentions, such as those in Question Nos. 1-2 above, seek the same disclosure of communications with outside counsel as well as Mr. Moore's current impressions about what Mattel is and is not claiming in its legal positions, even though such positions have not been disclosed. <u>Logan v. Commercial Union Ins. Co.</u>, 96 F.3d 971, 976 n.4 (7th Cir. 1996) (recognizing that "heightened protection" is afforded to an attorney's mental impressions and opinions when such impressions concern an aspect of the litigation); <u>In re Cendant Corp. Securities Litigation</u>, 343 F.3d 658, 663 (3rd Cir. 2003) (identifying "mental impressions, conclusions, opinion or legal theories" of attorneys as "core work product" entitled to near absolute protection against discovery); <u>Garcia v. City of El Centro</u>, 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("Opinion work product, containing an attorney's mental impressions or legal strategies, enjoys nearly absolute immunity and can be discovered only in very rare circumstances.").

On the other hand, if Mr. Moore is to be compelled to answer these questions, MGA's witnesses should be held to do the same. Not only has MGA repeatedly instructed witnesses not to answer questions on similar claims of privilege, but MGA has repeatedly argued that the reasons why actions were taken by litigation counsel are simply off limits. For example, to defend its refusals to answer compelled RFAs, MGA has urged that providing virtually any information about why the critical Larian-O'Connor email about concealing the timing of the creation of Bratz was withheld for years would invade the privilege.[31]  Those arguments (which are currently pending

---

[31]   Objections of Isaac Larian and MGA Entertainment to Discovery Master Order No. 90 Compelling MGA and Larian to Respond to Requests for Admission, dated January 29, 2010, Dkt. No. 7473 at 11-14.

1  before the Court) are dead wrong, but – right or wrong – they cannot be jibed with

2  MGA's contrary assertions to the Discovery Master here – assertions that what Mattel

3  "chose to disclose or not to disclose" to the Copyright Office is a "fact" and "it may be

4  that a lawyer made that choice, but that doesn't make it a privileged communication or

5  work product."[32]  Again, MGA cannot have it both ways, and if the instructions to Mr.

6  Moore are not sustained on privilege grounds, then MGA should be required to bring *its*

7  witnesses back to answer questions objected to on privilege grounds.[33]

8  ## Conclusion

9      For the foregoing reasons, Mattel respectfully requests that the Court overrule the

10  Discovery Master's instructions to answer MGA's questions at 262:10-12, 263:1-4,

11  272:11-14, 273:11-14, 274:7-10, 274:21-24, 275:19-22, 277:1-5, 277:14-17, 278:2-7,

12  279:17-22, 280:8-18, 281:3-7, 281:13-17 and 281:23-282:3 of Volume 1 of Michael

13  Moore's rough deposition transcript.

14

15  DATED:  February 22, 2010       QUINN EMANUEL URQUHART OLIVER &

16                         HEDGES, LLP

17

18                    By  /s/ Michael T. Zeller

19                      Michael T. Zeller
                    Attorneys for Mattel, Inc.

20

21                                     
[32]  Moore Rough Tr. at 201:19-23.

22  [33]  That the questions at issue now were asked of a Mattel **lawyer** rather than a

23  Mattel 30(b)(6) designee or directly of Mattel in some other form (interrogatories or
RFAs, for instance) is a critical distinction here.  It certainly **is** proper to ask a party

24  what its contentions are in most contexts – that is one reason why the RFAs Mattel
propounded to MGA, which it has refused to answer, are proper:  they properly seek

25  MGA's admissions as to relevant issues.  But it is quite another thing to demand that

26  an individual witness-lawyer disclose in deposition his or her mental impressions

27  and "beliefs" in the context of ongoing litigation absent a showing that such
information in that regard as may be relevant cannot be obtained from the party

28  itself.