MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>                    Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br><u>Hon. David O. Carter</u><br><br>**THE MGA PARTIES' OPPOSITION TO MATTEL'S OBJECTIONS TO PORTIONS OF DISCOVERY ORDER NOS. 89 AND 91**<br><br>**DECLARATION OF DIANA RUTOWSKI IN SUPPORT THEREOF**<br><br>**APPENDIX IN RESPONSE TO MATTEL'S APPENDIX 1 IN SUPPORT OF MATTEL, INC.'S OBJECTIONS TO PORTIONS OF DISCOVERY ORDER NOS. 89 AND 91** |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

    A.    The 71 Requests At Issue ................................................................... 2

    B.    Order Nos. 89 and 91 Set Forth Clear Parameters and Procedures For Mattel's Search and Production ................................ 5

    C.    Since The Issuance Of These Orders, Mattel Stalls Production Of Documents MGA Has Been Awaiting For Years .......................... 6

    D.    Mattel Dribbles Out Highly Relevant Documents On The Eve Of Deposition .................................................................................... 7

ARGUMENT ....................................................................................................... 8

I.    THE DISCOVERY MASTER'S ORDER MAY BE REVERSED ONLY IF CLEARLY ERRONEOUS OR CONTRARY TO LAW ............. 8

II.    THE DISCOVERY MASTER CONSIDERED MATTEL'S BURDEN ARGUMENTS AND ISSUED ORDER NO. 89 IN VIEW THEREOF ........ 9

    A.    The Discovery Master Narrowed And Limited The Requests and Mattel's Obligation to Search and Produce ........................... 9

    B.    The Discovery Master Correctly Found That Mattel's Phase 2 Discovery Obligations Are Not Governed By An Outdated Order ................................................................................................ 11

    C.    The Cases Relied On By Mattel Do Not Compel A Different Conclusion ....................................................................................... 12

III.    MATTEL'S OBJECTION THAT 71 REQUESTS ARE OVERBROAD AND IRRELEVANT IS MERITLESS IN LIGHT OF THE PARAMETERS OF ORDER NO. 89 ................................................. 13

    A.    Mattel Previously Agreed That It Has Or Will Comply With Twelve Requests ............................................................................... 14

    B.    With Respect To The Remaining 59 Requests, The Discovery Master Resolved Mattel's Objections ............................................. 15

IV.    MATTEL SHOULD BE ORDERED TO PRODUCE FORTHWITH ........ 17

V.    MATTEL'S DEMAND FOR RECIPROCITY IS A NONSENSICAL RED HERRING ............................................................................................. 19

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Best Buy Stores, L.P.* v. *Developers Diversified Realty Corp.*,
247 F.R.D. 567 (D. Minn. 2007) ................................................................. 9, 12

*Capitol Records, Inc.* v. *MP3tuness, LLC*,
261 F.R.D. 44 (S.D.N.Y. 2009) ...................................................................... 12

*Grimes* v. *San Francisco*,
951 F.2d 236 (9th Cir.1991) ........................................................................ 8, 9

*Hirschfeld* v. *New Mexico Corr. Dept.*,
916 F.2d 572 (10th Cir. 1990) .......................................................................... 9

*Petcou* v. *C. H. Robinson Worldwide, Inc.*,
2008 WL 542642 (N.D.Ga. Feb. 25, 2008) ..................................................... 12

*Reko* v. *Creative Promotions, Inc.*,
70 F. Supp. 2d 1005 (D. Minn. 1999) ............................................................... 9

*Thompson* v. *Jiffy Lube Int'l, Inc.*,
2006 WL 3388502 (D. Kan. Nov. 21, 2006) ................................................... 12

## FEDERAL STATUTES

28 U.S.C. § 636(b)(1)(A) ................................................................................... 8

Fed. R. Civ. P. 72(a) ...................................................................................... 8, 9

Fed. R. Civ. P. 26(b)(2) ..................................................................................... 9

**INTRODUCTION**

Mattel promised to produce documents as to requests it was not appealing.  It represented that "***Mattel is not appealing the Orders as to 844 requests***, and is proceeding to search for and produce documents responsive to those requests" (Dkt. # 7523 at 1).  Yet, Mattel did not produce ***a single document*** on February 21, the extended deadline for production pursuant to Order 89 (Dkt. # 7482), and on February 22, Mattel produced a mere smattering of documents relating to upcoming depositions, on the eve of those depositions.  As for the merits of the requests to which Mattel objects, of the 71 requests, Mattel previously agreed to comply with twelve of them.  Of the remainder, while Mattel claims they are overbroad, the Discovery Master specifically limited them to Phase 2 issues in this case.  For example, the Discovery Master limited requests regarding Mattel's acts of unfair competition through improper interference with MGA's business relationships, such as 9049 RFP Nos. 98, 648, 677 and 694, to "MGA's claim that Mattel sought to interfere with MGA's business relationships and MGA's ability to compete fairly in the toy industry." Dkt. # 9396 at 11.

As to the scope of the search, it is clear that Mattel has not done a full and adequate search.  This is proven by the fact that Mattel routinely produces relevant documents on the eve of depositions.  Therefore, from the start, Mattel's claim that the Discovery Master order requires Mattel to engage in unnecessary searching can be rejected.

In addition, while Mattel argues that the search parameters are overbroad, Mattel has never offered an alternative scope of search, nor has Mattel ever claimed that relevant documents do not exist on the servers ordered to be searched.  This is true of Mattel's briefing before the Discovery Master, Mattel's oral argument, and it remains true now.  Indeed, what continues to be a mystery is the places Mattel is searching.  And one thing is clear, the Discovery Master's order resolves that

mystery and properly so.  Mattel cannot show that the Discovery Master's discovery rulings are clearly erroneous or contrary to the law.

Mattel's failure to produce responsive documents, some outstanding for more than five years, threatens to seriously prejudice MGA's preparation of its case and its defense against Mattel's if it does not come to an end.  This is made blatantly clear by important documents that Mattel has elected to roll out just prior to the deposition of their custodian.  MGA has taken more than 230 days of deposition without the benefit of these documents, except those select few Mattel has produced on the eve of deposition—MGA has waited long enough.  Mattel's Objections should be rejected and Mattel's compliance with Discovery Order Nos. 89 and 91 should be ordered by date certain.

## STATEMENT OF FACTS

### A.  The 71 Requests At Issue.

The Discovery Master issued Order No. 89 on January 13, 2010, granting MGA's Motion to Compel Further Responses to MGA's Requests for Production of Documents ("Motion") as to 888 requests.  Dkt. # 7396.  Order No. 91 issued on February 2, 2010, granting MGA's Motion as to an additional twenty-seven requests.  Dkt. # 7465.  Together, Order Nos. 89 and 91 granted 915 of the 918 requests upon which MGA moved.

Mattel puts 71 specific requests at issue in its Objections.[1]  In response to twelve of these, Mattel previously agreed that it has complied, or will comply, subject to certain conditions.  *See* Order No. 89, Appendix B, Dkt. # 7396 at 32[2]

---

[1] In addition to the brief filed in support of its objections (Dkt. # 7523), Mattel filed appendices (Dkt. # 7523-1).  These appendices included: Appendix 1, comprised of charts in which Mattel presents arguments in objection to each of the 71 requests; and Appendix 2, a declaration from Mattel's Senior Director of Global Information Technologies for Mattel, Inc.  In addition to MGA's brief and supporting declaration, MGA files herewith an appendix in response to Mattel's Appendix 1.  MGA's appendix is comprised of charts that mirror Mattel's but include an additional column for MGA's response to Mattel's arguments.
[2] 9049 RFP Nos. 3, 45, 168, 452, 462, 463, 466, 583.

1  and Order No. 91, Dkt. # 7465 at 1, 4[3].   The Discovery Master entered its order as

2  to these requests because MGA had raised substantial questions as to whether

3  Mattel had, in fact, complied.

4      The remaining 59 requests fall within Appendix A, which renders the

5  requests narrowed and limited as to relevance and search techniques as set forth in

6  Order No. 89.  Dkt. # 7396 at 28.  These 59 requests are placed by Mattel into the

7  following four categories.

8      First, thirty-five requests relate to Polly Pocket, an issue separately

9  considered by the Discovery Master in Order No. 89, where he explicitly found that

10  the April 19, 2007 order of the prior Discovery Master no longer applies in light of

11  the current status of claims and defenses in Phase 2 (Order No. 89, Dkt. # 7396 at

12  26-28).[4]  As observed by the Discovery Master, all the requests related to Polly

13  Pocket "involve the facts regarding Mattel's design of specific characteristics of

14  'Polly Pocket' (e.g., pose) and Mattel's awareness of similarities between those

15  characteristics and characteristics of MGA products, including, specifically, 'Bratz'"

16  and are thus relevant to MGA's unfair competition claim and affirmative defenses.

17  Dkt. # 7396 at 27-28.

18      Second, three requests relate to invention disclosures made by Mattel

19  employees in connection with agreements that Mattel itself has put at issue in this

20  litigation (*see, e.g.*, Dkt. # 7144 at 17-19).[5]  Additionally, disclosures under the

21  agreements are relevant to MGA's unfair competition claims and unclean hands

22  defense, which allege that Mattel has coerced its employees to accept overbroad

23  intellectual property assignment agreements and solicits confidential and trade

24  secret information from new employees.  *Id.*  The Discovery Master agreed,

25  ordering Mattel to produce documents relating to "Mattel's alleged improper

26  restraints on employees in the toy industry, either in employee contracts or through

27  ───────────────
   [3] 9049 RFP No. 606, 608, 610; 9059 RFP No. 189.

28  [4] 9049 RFP No. 512-515, 611-625, 627-641, 656.
   [5] 9049 RFP No. 545, 558, 559.

1   intimidation and threats." *See* Order No. 89, Dkt. # 7376 at 12.

2        Third, four requests relate to other lawsuits or legal proceeding involving

3   either a "contested Mattel product" or  MGA (*see, e.g.*, Dkt. # 7144 at 32)[6].  In

4   connection with 9049 RFP Nos. 598 and 599, which relate to lawsuits involving

5   contested products, any statements made by Mattel regarding Mattel products at the

6   core of Phase 2 issues would be highly relevant and likely to lead to the discovery

7   of admissible evidence, such as Mattel's definition, assessment and valuation of its

8   intellectual property.  In connection with 9059 RFP Nos. 212 and 218, which relate

9   to Mattel's communications regarding MGA's involvement in lawsuits to which

10  Mattel was not a party, responsive documents are likely to relate to the claims and

11  defenses at issue in Phase 2, such as Mattel's improper interference in those

12  lawsuits or Mattel's knowledge of its claims against MGA prior to the statute of

13  limitations period.

14        Fourth, Mattel includes  a catchall category of seventeen other requests

15  Mattel claims are overbroad.[7]  For example, 9049 RFP Nos. 423, 776, and 787

16  relate to "Bratz" and "My Scene" products, including unreleased "My Scene"

17  products, Mattel's purchase of "Bratz" products, and surveys or focus groups with

18  respect to the products.  As another example, 9049 RFP Nos. 98, 648, 677 and 694

19  relate to Mattel's unfair practices through improper interference with MGA's

20  business relationships and were limited by the Discovery Master to documents

21  related to interference with MGA's business relationships and MGA's ability to

22  compete fairly in the toy industry.  *Id.*  at 11.

23        Although Mattel claims that these requests are overbroad, the Discovery

24  Master specifically limited the subject matter of the requests to seven categories

25  related to Phase 2 claims and defenses.  Dkt. # 7396 at 8.  For each category, the

26  requests are further limited by specific parameters that the Discovery Master

27  [6] 9049 RFP No. 598, 599; 9059 RFP No. 212, 218.

28  [7] 9049 RFP No. 87, 423, 648, 677, 678, 694, 708, 725, 776, 787; 9059 RFP No. 5, 7, 9, 11, 13, 15, 18.

determined sufficiently "limit and focus" the requests.  *Id.* at 8-17.  For example, requests related to the first broad category, namely, "Bratz" and "My Scene" product lines, are further limited to seven specific issues set forth in Order No. 89, including, for example, documents related to the conception and changes in the design of "My Scene" and "Bratz" products, packaging and advertising.  *Id.* at 9.

### B.    Order Nos. 89 and 91 Set Forth Clear Parameters and Procedures For Mattel's Search and Production.

The Discovery Master considered the scope of Mattel's search, and specifically the search scope proposed by the two parties in their respective proposed orders.[8]  MGA proposed that Mattel search and produce responsive documents from all servers and custodians from which Mattel reasonably expects to find relevant information.  MGA Proposed Order, December 22, 2009.  Mattel did not propose an alternate search scope but contended that the data sources and custodians identified in Phase 1 and deemed sufficient by Judge Infante in Phase 1 was an adequate search scope in Phase 2.  Mattel Proposed Order, December 22, 2009; Dkt. # 7396 at 16.  Mattel did not identify any additional servers or hard drives of witnesses it was willing or planning to search in light of Phase 2 issues.

The Discovery Master rejected Mattel's argument explaining that there had been "considerable change in the scope of Phase 2 issues since the prior Discovery Master issued his April 24, 2008 Order," therefore, the search techniques adopted by the prior Discovery Master were not adequate.  Dkt. # 7396 at 18-19.  The Discovery Master also rejected MGA's suggestion that Mattel conduct a preliminary search to identify custodians of potentially responsive e-mails, and search those particular servers and e-mail files.  *Id.* at 19.

Instead, the Discovery Master limited Mattel's search to its servers in the United States, Canada, and Mexico finding that "this was a reasonable limitation at

---

[8] MGA and Mattel submitted proposed orders to the Discovery Master on December 22, 2009 in response to the Discovery Master directions at the Hearing. Dec. 11, 2009 Hearing Tr. at 19:21-22:21.

1   this stage." *Id.* at 19-20.[9]  The Discovery Master further limited Mattel's search to

2   files and computers of individuals identified in the parties' initial disclosures,

3   responses to interrogatories, or at deposition as having knowledge of Phase 2

4   issues.  Order No. 91 left the procedure and limitations set forth in Order No. 89

5   undisturbed.

6         **C.    Since The Issuance Of These Orders, Mattel Stalls Production Of**

7              **Documents MGA Has Been Awaiting For Years.**

8         MGA served the requests at issue between January 31, 2005 and December

9   28, 2007.  Dkt. # 6816 at 2-3.  MGA has been awaiting production in response to

10  these requests for years.  After the Court lifted the stay on discovery of Phase 2

11  issues in February 2009, MGA renewed its meet and confer efforts with respect to

12  these requests served in Phase 1 seeking discovery relevant to Phase 2 issues.  After

13  months of unproductive meet and confer efforts, on September 23, 2009, MGA

14  filed its motion to compel more than 900 outstanding requests relevant to Phase 2

15  issues to which Mattel refused to provide responsive documents or to confirm

16  production.  Dkt. # 6816 at 1.

17        Order Nos. 89 and 91 gave Mattel thirty days to comply.  Dkt. # 7396 at 29,

18  Dkt. # 7465 at 4.  Mattel's initial deadline fell on February 12, 2010 with respect to

19  Order No. 89 and will fall on March 4, 2010 with respect to Order No. 91.  No

20  documents have been produced.

21        Mattel did not file its Objections to Order No. 89 within the requisite 72

22  hours, waiting until after MGA's Motion for Partial Reconsideration (Dkt. # 7411)

23  was granted.  Even then, Mattel sought a further extension of time to file its

24  objections due to personal hardships of counsel.  The Court granted Mattel an

25  

26  ─────────────

    [9] At the December 11, 2009 hearing on MGA's motion, MGA had proposed this

27  limitation explaining that given Mattel's trade secret allegations involving Canada

    and Mexico, the search should include U.S., Mexico, and Canada.  Dkt. # 7396 at

28  20; Dec. 11, 2009 Hearing Tr. at 7:1-14.

1  extension until February 18, 2010 to file its Objections.  Dkt. # 7482.  The Court

2  also extended the deadline for compliance with Order No. 89 until February 21,

3  2010.  *Id.*

4      On the deadline to file its Objections, Mattel wrote to MGA informing MGA

5  that it intended to file a motion to stay its obligations under Order Nos. 89 and 91,

6  and that it intended to object to only a "limited number of RFPs," assuring MGA

7  that it was "proceeding as fast as it can be done to produce documents responsive to

8  the remaining 850 odd requests" and that "***we will have major productions***

9  ***forthcoming*** on those, so the stay is not intended to slow down the process".

10  Declaration of Diana Rutowski In Support of MGA's Opposition to Mattel's

11  Objections to Portions of Discovery Master Order Nos. 89 and 91 ("Rutowski

12  Decl."), Ex. A (emphasis added).  That same day, Mattel filed its Objections (Dkt. #

13  7523) and an *ex parte* motion to stay enforcement of Order Nos. 89 and 91 (Dkt. #

14  7524).  The Court granted Mattel's request for a stay on February 19, 2001 (Dkt. #

15  7527).  In its Objections, Mattel again assured MGA that "***Mattel was not***

16  ***appealing the Orders as to 844 requests***, ***and is proceeding to search for and***

17  ***produce documents responsive to those requests***."  Dkt. # 7523 at 1 (emphasis

18  added).  MGA has yet to receive a responsive production.

19      **D.    Mattel Dribbles Out Highly Relevant Documents On The Eve Of**
        **Deposition.**
20

21      Instead, of providing a comprehensive and complete production, Mattel is

22  producing a small number of documents days before, if not the night before,

23  scheduled depositions.  Mattel's production history over the past month

24  demonstrates this.  In the last month, Mattel has made sixteen small productions,

25  each production ranging from a few documents to a couple hundred documents,

26  consisting of documents relevant to upcoming scheduled depositions.  Rutowski

27  Decl., ¶ 3.

28

For example, on February 2, 2010, the day before MGA deposed Erika Ashbrook, Mattel produced a small set of forty-six documents from Ms. Ashbrook's custody, at least twelve of which were used as exhibits in Ms. Ashbrook's deposition.  Rutowski Decl., ¶¶ 4-5.  On January 18, 2010, Mattel produced 51 documents, thirty-one from the custody of Steve Totzke, who was scheduled to be deposed that very same day, and the remaining twenty from the custody of Neil Friedman who was scheduled to be deposed two days later on January 21 and 22.  *Id.*, ¶¶ 6-8.  At least one document was used at Mr. Totzke's deposition, and at least eighteen documents from this production were used as exhibits at Mr. Friedman's deposition.  *Id.*

Keeping with its practice dribbling highly relevant documents close to a scheduled deposition, Mattel made another production on February 22, 2010 consisting of approximately 185 documents.  Rutowski Decl, ¶ 10.  A significant number of the documents relate to Mr. Tim Kilpin who is scheduled to be deposed on February 26, 2010, and Russel Arons whose deposition date is being negotiated in early March.  *Id.*, ¶¶ 11-12.

Mattel has not made a production in compliance with Order Nos. 89 and 91, but instead rolls out documents that it apparently deems to be relevant to a deposition that is just around the corner.

## ARGUMENT

## I.   THE DISCOVERY MASTER'S ORDER MAY BE REVERSED ONLY IF CLEARLY ERRONEOUS OR CONTRARY TO LAW

A district court will reverse a magistrate judge's order on a nondispositive discovery matter only if it is "***clearly erroneous or contrary to law***."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) (emphasis added).  In this case, "the Discovery Master's rulings resolving discovery disputes … shall be treated as a ruling made by a Magistrate Judge of the United States District Court."  Dkt. # 107 at 5.  Therefore, in reviewing the Discovery Master's decisions in Orders 89 and 91, this Court is

1   required to "defer to the [Discovery Master's] order unless they are clearly

2   erroneous or contrary to the law." *Grimes v. San Francisco,* 951 F.2d 236, 240 (9th

3   Cir. 1991)(*citing* Fed. R. Civ. P. 72(a)). "This is an extremely deferential

4   standard". *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 247

5   F.R.D. 567, 568 (D. Minn. 2007); *see also Reko v. Creative Promotions, Inc.,* 70

6   F.Supp.2d 1005, 1007 (D. Minn. 1999). Under the clearly erroneous standard, this

7   Court must accept the decision unless "on the entire evidence [one] is left with the

8   definite and firm conviction that a mistake has been made." *Hirschfeld v. New*

9   *Mexico Corr. Dept.*, 916 F.2d 572, 580 (10th Cir. 1990).

10      Mattel did not and cannot demonstrate that the Discovery Master's rulings set

11  forth in Order Nos. 89 and 91 were clearly erroneous or contrary to law and should

12  be reversed.

13  **II.   THE DISCOVERY MASTER CONSIDERED MATTEL'S BURDEN**

14  **ARGUMENTS AND ISSUED ORDER NO. 89 IN VIEW THEREOF**

15      **A.   The Discovery Master Narrowed And Limited The Requests and Mattel's Obligation to Search and Produce.**

16      Mattel's first argument is make-weight. Mattel contends that the Discovery

17  Master's decision is contrary to law because Order No. 89 does not cite Rule

18  26(b)(2) or discuss the relevant factors fails because to the extent Mattel sought to

19  argue undue burden or cost, the Discovery Master addressed Mattel's argument in

20  Order No. 89. Dkt. # 7396 at 17-20.[10] The fact is that the Discovery Master did.

21      The Discovery Master considered the burden imposed on Mattel, even

22  though Mattel failed to specifically identify particular sources as not reasonably

23  accessible or to put forth any evidence of burden except for an inadequate

24  declaration addressing only three requests. Dkt. # 7396 at 17-19, Dkt. # 7144 at 9,

25  FN 5[11]. Specifically, the Discovery Master stated "I already found such burden to

26  _____

    [10] Indeed, by Mattel's own logic its objection fails, because its opposition "does not cite Rule 26(b)(2)", so it cannot now be a proper basis for objection.

27  [11] Addressing the inadequacies of a declaration addressing undue burden and

28  overbreadth with respect to only 9049 RFP 572(2)-574(2). To the extent Mattel now seeks to add to the record additional factual information about burden and cost

- 9 -

1   exist in connection with other unlimited requests propounded by MGA" (Dkt. #
2   7396 at 19, citing Order No. 56), and in light of that finding, the Discovery Master
3   limited Mattel's obligation in the following two significant ways.

4   First, the Discovery Master narrowed requests based on categories of
5   relevance to Phase 2 issues.  Dkt. # 7396 at 8-16, 28.  In particular, the requests are
6   limited to seven categories of relevance, with each category further limited by
7   specific parameters to ensure that the requests are sufficiently "limited or focused."
8   (Dkt. # 7396 at 8-16).  For example, MGA's requests relating to unfair competition
9   through serial copying have been limited to the nine specific products identified by
10  MGA, including "My Scene," "Polly Pocket," and "AcceleRacerS."  Dkt. # 7396 at
11  10.  Similarly, MGA's requests relating to improper restraints on employee mobility
12  is limited to Mattel's alleged improper restraints on employees in the toy industry,
13  either in employee contracts or through intimidation and threats.  Dkt. # 7396 at 12.

14  Second, in finding that requiring Mattel to search all its servers or individual
15  employee computers worldwide would be an undue burden, the Discovery Master
16  substantially limited Mattel's search scope to its servers in the United States,
17  Canada and Mexico.  Dkt. # 7396 at 17-19. This is not contrary to law as the scope
18  of discovery should commensurate with the scope of the claims and defenses at
19  issue.  Mattel has asserted broad claims against MGA, including trade secret and
20  conversion claims involving witnesses in the U.S., Canada and Mexico.  Similarly,
21  MGA's unfair competition claim implicates Mattel's conduct worldwide.  Given the
22  scope, magnitude, and duration of this litigation, the requirement that Mattel search
23  its servers in the U.S., Mexico and Canada is clearly not contrary to law.

24  While Mattel protests these limitations through its Objections and its Motion
25  to Stay, nowhere does Mattel say that relevant documents will not be located on the
26  servers it has been ordered to search.  Moreover, Mattel gives no hint as to what

27

28  through the Declaration of Philip Moore, such information is untimely and should
    be stricken.  Dkt. # 7523-1, Appendix 2.

1   servers and custodians, if any, it *is searching* or why it has selected those servers or

2   custodians.  Though Mattel talks about "the data sources that are reasonably likely

3   to have responsive information," Mattel has never given any indication as to what

4   those data sources are, nor that it is searching those data sources.  Dkt. # 7523 at 12.

5   Mattel had numerous opportunities to explain its search parameters during months

6   of meet and confer and briefing that resulted in Order Nos. 89 and 91, yet Mattel

7   made the deliberate decision not to do so.[12]  Mattel's time is up.  No further time or

8   resources should be spent on this matter, either in the form of additional meet and

9   confer efforts or Discovery Master consideration as suggested by Mattel in yet

10  another effort to stall.  Objections, Dkt. # 7523 at 9.  Mattel's search and production

11  must be ordered and enforced by date certain.

### B.   The Discovery Master Correctly Found That Mattel's Phase 2 Discovery Obligations *Are Not* Governed By An Outdated Order.

12
13
14      The Discovery Master analyzed Judge Infante's Discovery Order of April 24,

15  2008 in detail and correctly determined that the scope of Mattel's prior search,

16  discussed therein, was inadequate at this stage because it did not sufficiently

17  address Phase 2 issues.  Dkt. # 7396 at 17-18; Dkt. # 7144 at 6-7.  Specifically, the

18  Discovery Master found that the sources listed in the April 24, 2008 Order did not

19  include the hard drives or email folders of witnesses with knowledge of claims and

20  defenses that were added to the parties' pleadings and discovery responses since the

21  date of that order, let alone the date of Mattel's prior searches.  Dkt. # 7396 at 18.

22      Mattel does not so much as contend that this finding of the Discovery Master

23  is erroneous, let alone explain wherein lies any alleged error.  Instead, Mattel's

24  Objections do no more than reiterate its argument that the scope of the search that it

25  _____

26  [12] While Mattel complains that MGA added "new arguments" in its reply related to the scope of the search (Objections, Dkt. # 7523 at 2), Mattel has never countered with any indication whatsoever as to what the scope of its actual or intended search is.  Moreover, MGA's "new arguments" were not new arguments, but factual information about the custodians from whom Mattel produced documents provided to MGA on *the same day* that MGA filed the underlying Motion.  Dkt. # 7144 at 2-3.  Having produced this information, Mattel cannot feign surprise.

MGA'S OPP. TO MATTEL'S OBJS TO
DISCOVERY ORDER NOS. 89/91
CV 04-9049 DOC (RNBx)

1    conducted as set forth in its briefing and declarations leading up to the April 24,

2    2008 Order remains adequate.  Dkt. # 7523 at 7.  From this, Mattel would have this

3    Court conclude that its search and production conducted years ago in Phase 1

4    satisfy its current obligations.  The Discovery Master correctly found that the

5    sources and searches of Mattel's prior search, as discussed in the April 24, 2008

6    Order, do not capture information in the possession or custody of new witnesses

7    with knowledge of claims and defenses that have been added and amended since

8    then.  Dkt. # 7144 at 6-7.  *See also* Dkt. # 7144 at 6-8.

9        **C.    The Cases Relied On By Mattel Do Not Compel A Different**

10            **Conclusion.**

11       The cases cited by Mattel do not involve facts even remotely analogous to

12   those at issue here with respect to either the servers or custodians that Mattel must

13   search.

14       With respect to the search ordered of Mattel's servers in the United States,

15   Canada and Mexico, neither of the cases cited by Mattel involve similarly situated

16   servers.  In *Petcou v. C. H. Robinson Worldwide, Inc.*, 2008 WL 542642, at *1

17   (N.D.Ga. Feb. 25, 2008), the court considered searching for deleted emails, a

18   scenario that is not covered by Orders Nos. 89 or 91.  In *Best Buy Stores, L.P. v.*

19   *Developers Diversified Realty Corp.*, 247 F.R.D. 567, 568 (D. Minn. 2007), the

20   data source involved was a database that had been downgraded and was no longer

21   live.

22       With respect to the employee files that Mattel has been ordered to search, in

23   the cases cited by Mattel the scope of the search ordered was commiserate with the

24   claims made.  The Discovery Master did the same here.  For example, in *Capitol*

25   *Records, Inc. v. MP3tuness, LLC*, 261 F. R. D. 44, 46 (S.D.N.Y. 2009), at issue was

26   only a single copyright claim, and the court tailored discovery to that claim.  The

27   same is true of *Thompson v. Jiffy Lube Int'l, Inc.*, 2006 WL 3388502, at *1 (D. Kan.

28   Nov. 21, 2006).  Further, in *Thompson*, the request at issue implicated a search of

1    over 450 employees using very common keywords such as "dollars." *Id*. at *2.  The

2    situation here is very different.  Order No. 89 does not require Mattel to search

3    emails of all its employees.  Indeed, the Discovery Master specifically found such a

4    search to be overbroad and limited the search to the key witnesses identified in

5    disclosures, interrogatories and depositions.  Dkt. # 7396 at 19.

6         Given the breadth and scope of the claims and defenses at issue in this

7    litigation, it is not surprising that 200 people could be identified as having relevant

8    and responsive information.  Mattel alone has asserted multiple and extremely

9    broad claims, including a RICO claim with predicate acts ranging from mail fraud

10   to interstate and foreign travel to criminal copyright infringement, with multiple

11   enterprises, multiple conspiracies and multiple actors.  Its trade secret and

12   conversion claims involve witnesses in at least three countries, namely, the United

13   States, Mexico and Canada.  Having asserted such extremely broad claims against

14   MGA, Mattel cannot now complain and withhold relevant discovery because too

15   many potential witnesses have been identified.  The scope of discovery is

16   commensurate with the scope of the claims and defenses at issue, and MGA is

17   entitled to the discovery it needs to defend against Mattel's claims as well as to

18   prosecute its unfair competition claims against Mattel.

19   **III.   MATTEL'S OBJECTION THAT 71 REQUESTS ARE OVERBROAD**
     **AND IRRELEVANT IS MERITLESS IN LIGHT OF THE**
20   **PARAMETERS OF ORDER NO. 89**

21        As discussed above, Mattel seeks once again to raise its overbreadth and

22   irrelevance objections as to 71 requests.  These objections were resolved by the

23   Discovery Master in Order Nos. 89 and 91 by narrowing the requests in a way that

24   was neither clearly erroneous nor contrary to law.  Mattel's attempt to revive its

25   objections fails.[13]

_____

[13] A more detailed response to Mattel's objections can be found in Appendix A
hereto, which adds a column to the chart Mattel provided in its appendices (Dkt. #
7523-1) with MGA's response.  A more detailed account of why each request
should be granted can be found in MGA's briefing and separate statements filed in
connection with the underlying Motion.

A.   **Mattel Previously Agreed That It Has Or Will Comply With Twelve Requests.**

In response to twelve requests, Mattel previously agreed that it has complied, or will comply, subject to certain conditions.  *See* Order No. 89, Appendix B, Dkt. # 7396 at 32[14] and Order No. 91, Dkt. # 7465 at 1, 4[15].  Recognizing the need to ensure Mattel's compliance with these requests, the Discovery Master placed these requests in Appendix B and ordered compliance using the search techniques detailed in the order.  Mattel cannot now raise new objections in an effort to avoid its prior statement of compliance.

In response to eight of these requests, namely 9049 RFP Nos. 3, 45, 168, 452, 462, 463, 466, and 583, Mattel stated that it "has or will fully produce subject only to limitations based on privilege or work product, or on prior rulings of the Discovery Master as to overbreadth and relevance."  Dkt. # 6988 at 12.  In Order No. 89, the Discovery Master found that orders of the prior Discovery Master "overlook differences in the requests and the broadened scope of issues in Phase 2" and crafted the order accordingly.  Dkt. # 7396 at 16.  Having previously withdrawn all other objections and agreed to produce, Mattel is bound to that agreement and cannot now raise new objections.

With regard to three requests, namely 9049 RFP Nos. 606, 608 and 609, Mattel previously represented that "documents responsive to this Request have been produced."  Dkt. # 6818-36 at 1364-1368.  Having shown that Mattel's search and production is not adequate or complete, MGA is entitled to an order on these requests.

With respect to the remaining request, 9059 RFP No. 189, Mattel conceded years ago that it agrees not to withhold documents responsive ***based on its relevance objection***.  Dkt. # 7433 at 4-5; Dkt # 2859 at 8-9.  Mattel cannot now revive that objection.  Further, responsive documents regarding any contemplation

---

[14] 9049 RFP Nos. 3, 45, 168, 452, 462, 463, 466, 583.
[15] 9049 RFP No. 606, 608, 610; 9059 RFP No. 189.

1    of MGA would likely tend to show Mattel's analysis and valuation of MGA's

2    intellectual property, information relevant to all of MGA's claims and defenses.

3        Having said before that it would produce, Mattel should not now be

4    permitted to avoid production.

**B.    With Respect To The Remaining 59 Requests, The Discovery Master Resolved Mattel's Objections.**

7        In granting MGA's motion, the Discovery Master placed these requests in

8    Appendix A, which renders the requests narrowed and limited as to those categories

9    of relevance and search techniques set forth in Order No. 89 and detailed below.

10   Dkt. # 7396 at 28.

11       Contrary to Mattel's boilerplate objections in its Appendix 1, Order No. 89

12   does not order production of responsive documents without any limitations, nor

13   were MGA's discovery requests served without limitations in the instructions to

14   each set.  In Order No. 89, the Discovery Master set forth clear limiting parameters

15   that resolved Mattel's objections with regard to overbreadth, burden and relevance.

16   Dkt. # 7396 at 8.  Instead, the requests are limited to seven categories of documents.

17   *Id*.  Each broad category is then further limited by specific parameters to ensure that

18   the requests are sufficiently "limited or focused."  *Id*. at 8-16.  Mattel's revived

19   objections to not take into account the Discovery Master's limitations or the

20   limitations in the instructions to each set (e.g. time limitations).  Dkt. # 7523 at 13-

21   18.  Mattel's objections to these requests fail.

22       Polly Pocket:  Mattel seeks to renew its objections to thirty-five requests

23   related to Polly Pocket (Dkt. # 7523-1 at 4-9), an issue considered by the Discovery

24   Master in Order No. 89, where he explicitly found that the April 19, 2007 order of

25   the prior Discovery Master no longer applies in light of the current status of claims

26   and defenses in Phase 2 (Order No. 89, Dkt. # 7396 at 26-28).  Further, because all

27   the requests related to Polly Pocket "involve the facts regarding Mattel's design of

28   specific characteristics of 'Polly Pocket' (e.g., pose) and Mattel's awareness of

1  similarities between those characteristics and characteristics of MGA products,

2  including, specifically, 'Bratz'", the Discovery Master found the requests to be

3  relevant to MGA's unfair competition claim and affirmative defenses.  Dkt. # 7396

4  at 27-28.  Finally, Mattel ignores the fact that the requests are limited in time to

5  January 1, 1995 through the present based on the instructions at the beginning of

6  the set of requests served by MGA.  Dkt. # 6818-35 at 1286.  Thus, MGA's requests

7  related to Polly Pocket are neither foreclosed by Judge Infante's April 19, 2007

8  Order nor are they overbroad in light of the current claims and defenses.

9      <u>Employee Disclosures of Inventions</u>:  Mattel seeks to stand on its objections

10  to three requests that concern invention disclosures made by Mattel employees.

11  Dkt. # 7523-1 at 10.  These requests relate to employee agreements that Mattel

12  itself has put at issue in its Phase 2 allegations (*see, e.g.*, Dkt. # 7144 at 17-19), and

13  disclosures under the agreements are also relevant to MGA's unfair competition

14  claims and unclean hands defense, which allege that Mattel has coerced its

15  employees to accept overbroad intellectual property assignment agreements and

16  solicits confidential and trade secret information from new employees (*id*.).  The

17  Discovery Master agreed, ordering Mattel to produce documents relating to

18  "Mattel's alleged improper restraints on employees in the toy industry, either in

19  employee contracts or through intimidation and threats."  Order No. 89, Dkt. # 7376

20  at 12.  Moreover, these requests are limited in time by the instructions to the set of

21  requests served by MGA.  Dkt. # 6818-35 at 1286 (limiting the responsive

22  documents to January 1, 1995, to the present).  Any overbreadth and/or relevance

23  objection by Mattel to requests in this category is therefore resolved by the

24  narrowing parameters set forth in Order 89.  Dkt. # 7396 at 12.

25      <u>Other Lawsuits</u>:  Mattel objects to four requests that relate to other lawsuits

26  or legal proceeding involving either a contested product or  MGA.  Specifically,

27  9049 RFP Nos. 598 and 599 relate to lawsuits involving contested products.  Any

28  statements made by Mattel regarding Mattel products at the core of Phase 2 issues

MGA'S OPP. TO MATTEL'S OBJS TO
DISCOVERY ORDER NOS. 89/91
CV 04-9049 DOC (RNBx)

1    are highly relevant and likely to lead to the discovery of admissible evidence, such

2    as Mattel's definition, assessment and valuation of its intellectual property.  9059

3    RFP Nos. 212 and 218 relate to Mattel's communications regarding MGA's

4    involvement in lawsuits to which Mattel was not a party are likely to lead to the

5    discovery of information relevant to the claims and defenses at issue in Phase 2,

6    such as information regarding improper interference by Mattel in those lawsuits or

7    information about Mattel's knowledge of its claims against MGA prior to the statute

8    of limitations period.  Any overbreadth and/or relevance objection are resolved by

9    the limitations set forth in Order No. 89.

10         Other Objections Based on Overbreadth:  Mattel objects to seventeen other

11   requests under a catchall category on the basis of overbreadth.  Dkt. # 7523 at 13.

12   Again, the limitations and parameters set forth in Order 89 resolve any such

13   objection.  For example, four requests, namely 9049 RFP Nos. 423, 776, 787, and

14   9059 RFP 18 relate to "Bratz" and "My Scene Products" and are limited to the

15   seven specific issues listed in Order 89.  Dkt. # 7396 at 9-10.  As another example,

16   9049 RFP Nos. 98, 648, 677 and 694 relate to Mattel's unfair practices through

17   improper interference with MGA's business relationships and are limited to

18   documents related to interference with MGA's business relationships and MGA's

19   ability to compete fairly in the toy industry.  *Id*. at 11.  Finally, 9049 RFP Nos. 708

20   and 725 relate to the relief sought by the parties and are limited accordingly by the

21   Discovery Master.  *Id*. at 15-16.  Mattel's objections are resolved and cannot evade

22   production.

23   **IV.   MATTEL SHOULD BE ORDERED TO PRODUCE FORTHWITH**

24         At issue here are requests for documents relevant to Phase 2 issues that have

25   been pending for at least two and up to five years.  Mattel has had since the

26   discovery requests were served to provide information about its data sources and

27   search techniques, including during months of meet and confer since the stay of

28   Phase 2 discovery was lifted and the five months since MGA's Motion was filed.

MGA'S OPP. TO MATTEL'S OBJS TO
DISCOVERY ORDER NOS. 89/91
CV 04-9049 DOC (RNBx)

1   Mattel should not be permitted to further delay its production, as it suggests, with

2   any additional, yet unidentified, briefing, declarations, meet and confer efforts, or

3   consideration by the Court, the Discovery Master or the Electronic Discovery

4   Master. *See* Dkt. # 7523 at 9, 12.

5       Nevertheless, through its Objections, Mattel seeks to introduce a new

6   declaration as an appendix. The declaration of Philip Moore, Senior Director of

7   Global Information Technologies for Mattel, Inc., was not part of the record before

8   the Discovery Master when MGA was moving for an even greater scope of search

9   and production. Dkt. # 7523-1. The declaration is striking in several ways. First,

10  Mattel never denies that the data sources contain relevant information. Second, the

11  declaration confirms that even servers at Mattel's headquarters in El Segundo are

12  beyond Mattel's intended search. *Id*. at ¶ 4. Third, the declaration demonstrates

13  that the data sources subject to Order Nos. 89 and 91 ***do in fact contain relevant***

14  ***information***, including "hundreds of thousands of emails" sent and received in El

15  Segundo each workday between Mattel employees and "Mattel business partners,

16  including vendors, retailers, distributors, manufacturers, shippers and so forth." *Id*.

17  Finally, Mr. Moore states that "many" servers "are not searchable by any search

18  tool." *Id*. at ¶ 3. This is beyond comprehension. Certainly Mattel employees have

19  means for searching and accessing documents on those servers, otherwise the

20  servers would be useless.

21      MGA should not be further penalized for Mattel's failure to produce

22  documents in response to requests that have pending for years. More than 230 days

23  of deposition have already occurred without the benefit of Mattel's production, and

24  Mattel's strategic tactic of dribbling out documents that are highly relevant to a

25  particular deponent just prior to the scheduled deposition must come to an end.

26  Whatever Mattel may say about the scope of the search ordered by the Discovery

27  Master, Mattel's production has been entirely deficient up to this point. The fact is

28  that Mattel has not conducted a complete and sufficient search and production in

MGA'S OPP. TO MATTEL'S OBJS TO
DISCOVERY ORDER NOS. 89/91
CV 04-9049 DOC (RNBx)

response to more than 900 requests, and only now represents that "major productions" are forthcoming.  When Mattel does produce, MGA should not have to engage in costly motion practice to take depositions of witnesses that may become necessary in light of new productions nor to resist motions seeking to protect Mattel witnesses from being deposed based on a claim that MGA has already deposed the witnesses at some prior date.  MGA should be allowed to continue depositions of witnesses until Mattel's production is complete.

## V.   MATTEL'S DEMAND FOR RECIPROCITY IS A NONSENSICAL RED HERRING

Mattel's demand for "reciprocity" is nonsensical in the context of MGA's underlying Motion, which focuses on years of unfair business practices by Mattel, and the documents and custodians in Mattel's possession, custody or control reasonably likely to reveal information about those practices.  Mattel's demand should be seen for what it is: yet another attempt to stall and avoid production.  Moreover, though MGA's production is not at issue here, MGA has produced more than a million pages of documents *in Phase 2 discovery alone*, in stark contrast to the less than a million Bates-numbered pages produced *in this entire case* by Mattel.  Mattel's requests that the production obligations under Order Nos. 89 and 91 be reciprocal, a request that simply makes no sense, should be rejected.

### CONCLUSION

For the foregoing reasons, Mattel's objections to Discovery Order Nos. 89 and 91 should be rejected and a date certain should be set for Mattel's compliance with Discovery Master Order Nos. 89 and 91.

Respectfully submitted,

Dated: February 23,  2010          ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  __/s/ Diana M. Rutowski_____
                                                        Diana S. Rutowski

Attorneys for MGA Parties