MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**THE MGA PARTIES' OPPOSITION TO MATTEL'S OBJECTIONS TO DISCOVERY MASTER'S RULINGS CONCERNING KEYWORDS AT DEPOSITION OF MICHAEL MOORE**<br><br>Date:     TBD<br>Time:     TBD<br>Courtroom: 9D<br><br>**Phase 2**<br>Discovery Cutoff: June 1, 2010<br>Pretrial Conference: None Set<br>Trial Date: None Set |

## INTRODUCTION

The only issue before the Court is whether the Discovery Master's ruling that Mattel waived any work-product privilege in the key words used in its e-mail monitoring tool for document preservation from December 2003 to April 2005 is clearly erroneous.[1]

The Discovery Master found and it is undisputed that Michael Moore, Mattel's in-house counsel, "had already put a number of . . . [these] keywords . . . into the record." Based on this voluntary disclosure, the Discovery Master found that Mattel had waived any work-product privilege in the key words used in its e-mail monitoring tool from December 2003 to April 2005. Because Mattel did not and cannot show that the Discovery Master's ruling is clearly erroneous, the Court should overrule Mattel's Objections.

## STATEMENT OF FACTS

Mattel has consistently asserted attorney-client and/or attorney work-product privilege over the keywords and terms used in its automated e-mail search tool from December 2003 to April 2005 for document preservation.[2] Yet, Mr. Moore voluntarily disclosed some of the keywords on at least two separate occasions. First, Mr. Moore submitted a sworn affidavit dated September 10, 2007, in support of Mattel's opposition to MGA's motion for terminating sanctions due to spoliation of evidence. In his affidavit, Mr. Moore voluntarily disclosed certain key words. Moore 2/17/2010 Rough Tr. at 237:15-19; 238:24-239:4; 242:15-18. Second, at his

---

[1] After April 2005, Mattel started preserving data using means other than the e-mail tool.
[2] *See, e.g.,* Kawashima 9/13/2007 Deposition at 558:17-24 (instructing witness not to answer on privilege grounds to the question "[w]hat are the keywords that you know"); Moore 2/17/2010 Rough Tr. at 87:13-18 (asserting attorney client privilege to the question "[w]hat were any of the terms that you're aware were implemented in the e-mail monitoring system"); *Id.* at 88:12-13 (asserting privilege when asked if "MGA" was one of the terms); *Id.* at 221:17-21 (asserting attorney work-product to the question "what were the key words used for the e-mail filter"); *Id.* at 242:19-21 (asserting attorney-client and attorney work product privilege to the question "[w]hat were the other key word terms [used] by the filter").

- 1 -

1  recent deposition, Mr. Moore volunteered testimony as to two more keywords used
2  in the e-mail security tool. *Id.* at 88:7-11, 242:10-14.
3        Based on these voluntary disclosures, the Discovery Master found that Mattel
4  had waived any privilege and/or attorney work-product protection for the keywords
5  Mattel used in its e-mail security tool for document preservation from December
6  2003 to April 2005. As made clear by MGA's counsel and the Discovery Master,
7  the scope of the waiver is this: the key words at issue are the keywords that Mattel
8  used in its initial e-mail filter for preservation and do not implicate any further
9  searches that may have been done within a mailbox. *Id.* at 221:2-222:7.
10       As explained by the Discovery Master:

> ***As far as this specific question goes, the witness has already put a number of ... keywords ... into the record both in his affidavits and in his testimony today.*** So, at a minimum there's been a waiver and you can't just give some of the words and say we're not going to give you any at all and there was no stipulation as far as I'm aware that granted a limited right to give the keywords but not all of them without waiving further key words.

Moore 2/17/2010 Rough Tr. at 251:23-252:9 (emphasis supplied).

## ARGUMENT

### I. THE DISCOVERY MASTER DID NOT ERR WHEN HE RULED THAT MATTEL HAD WAIVED ANY WORK-PRODUCT PROTECTION WITH RESPECT TO KEYWORDS USED IN PRESERVATION.

Mr. Moore voluntarily disclosed some of the keywords at issue on at least two separate occasions: (1) in his sworn affidavit submitted in support of Mattel's opposition to MGA's motion for terminating sanctions due to spoliation of evidence; and (2) in his recent deposition. Moore 2/17/2010 Rough Tr. at 237:15-19; 238:24-239:4; 242:15-18; 88:7-11, 242:10-14. This voluntary disclosure of

work product results in waiver of the privilege. *In re McKesson HBOC*, 2005 WL 934331, at *6 (N.D. Cal. March 31, 2005); *see also Phoenix Solutions Inc. v. Wells Fargo Bank*, N.A. 254 F.R.D. 568, 576 (N.D. Cal. 2008)(voluntary disclosure of the content of a privileged communication constitutes a waiver of the privilege as to all other such communication on the same subject matter). Therefore, the Discovery Master's ruling that Mattel had waived any work-product privilege it had with regard to the keywords used from December 2003 to April 2005 for preservation was not clearly erroneous or contrary to the law.

Mattel's argument of no waiver is premised on its claim that Mr. Moore's disclosure of key word search terms in his sworn affidavit was compelled. Obj. at 7 n. 16. However, while the Court ordered both parties to set forth their preservation efforts and policies, there was nothing in the Court's order that required Mattel to disclose any of its keywords used in searches for preservation. Dkt. No. 895 at 5 ("[T]he Court ORDERS all parties to set forth, . . . , their preservation efforts and policies . . . ."). Mattel's disclosure of its keywords was entirely voluntary, it was not compelled.

The case that Mattel cites to, *In re McKesson HBOC* (Obj. at 7 n. 16) is inapposite and does not compel a different conclusion. In *In re McKesson*, the Magistrate Judge issued a discovery order compelling defendant to produce a report that the defendant contended was protected by work-product. Pursuant to the Magistrate Judge's Order, defendant produced it to the other side. On appeal, the district court found that the report was work-product and any disclosure of the report to the other side pursuant to the Magistrate's order was not a waiver. *In re McKesson HBOC*, 2005 WL 934331, at *1,*7 (N.D. Cal. March 31, 2005). Here, there was nothing in the Court order that compelled Mattel to disclose its keywords.

Thus, Mattel did not and cannot show that the Discovery Master's decision that Mattel waived its privilege was erroneous, let alone clearly erroneous. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)(a district court will reverse a

magistrate judge's order on a nondispositive discovery matter only if it is "clearly erroneous or contrary to law").

## II. THE DISCOVERY MASTER'S FINDING OF WAIVER RELATES TO THE SPECIFIC ISSUE OF KEYWORDS AS USED IN PRESERVATION EFFORTS AND THERE IS NO BASIS FOR EXPANDING THIS ISSUE BEYOND THE SPECIFIC WAIVER AT ISSUE.

Rather than addressing the issue before the Court, Mattel tries to conflate the issue by trying to bring into question all discovery preservation and collection efforts for all time. But, as the Discovery Master made clear, the only issue is whether Mattel waived any work-product privilege in the keywords used in its e-mail security tool for preservation from December 2003 to April 2005. Moore 2/17/2010 Rough Tr. at 250:25-252:3. Further, the Discovery Master made clear that the waiver was limited to the keywords themselves, stating that "MGA has not asked and I am not ordering [Mr. Moore] to explain why he [or Mattel] picked certain keywords" and the disclosure was limited to "what words were used." Moore 2/17/2010 Rough Tr. at 252:19-25.

Mattel does not contend that MGA ever made a voluntary waiver of search terms used in connection with preservation efforts. And none of the deposition snippets cited by Mattel in its Objections bears on the issue of voluntary waiver of work product protection for preservation search terms. Mattel cannot be heard to convert its own voluntary waiver into a discovery club to use against MGA.

## CONCLUSION

For the foregoing reasons, Mattel's objections to the Discovery Master's privilege rulings on keywords should be overruled.

Respectfully submitted,

Dated: February 25, 2010      ORRICK, HERRINGTON & SUTCLIFFE LLP

By: ____/s/ Warrington S. Parker____
Warrington S. Parker
Attorneys for MGA Parties