QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S REPLY IN SUPPORT OF OBJECTIONS TO THE DISCOVERY MASTER'S PRIVILEGE RULINGS ON QUESTIONS REGARDING MATTEL'S COPYRIGHT REGISTRATIONS DURING THE DEPOSITION OF MICHAEL MOORE**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:   TBD<br>Pre-trial Conference:   TBD<br>Trial Date:   TBD |

**Preliminary Statement**

MGA finally admits in its opposition here that "a party cannot wrap non-privileged facts in the mantle of privilege simply by communicating them to or through counsel." That is, of course, the dispositive issue with respect to the Wing documents and testimony; MGA repeatedly invoked the privilege during Mr. Wing's testimony precisely on the grounds that information had allegedly passed through counsel.

MGA's belated recognition of this principle does not permit it to invade the privileged communications and work product it seeks here. Mr. Moore's thought processes, and those of outside counsel advising him as to how to fill out registration forms in light of ongoing litigation, are protected. MGA asserts without explanation that it was not asking Mr. Moore to reveal "the nature or content of his communications with counsel," but that is precisely the import of questions asking him to explain why certain boxes were or were not checked on the form. The fact that the document itself was "publicly filed," which seems to be MGA's only answer, does not strip the privilege from the communications leading up to its filing, or every tax lawyer in the country would have to give Miranda warnings to his or her clients.

**Argument**

**I. MGA'S QUESTIONS SEEK PRIVILEGED COMMUNICATIONS AND WORK PRODUCT**

**A. The Questions Seek Disclosures Beyond That Found in the Registration Forms**

In support of its argument that Mr. Moore should be compelled to answer its questions, MGA claims that it seeks nothing more than "[f]actual information that is publicly filed."[1] Indeed, MGA's sole basis for distinguishing its own repeated instruction to witnesses in circumstances where there was plainly no expectation of confidentiality is that MGA's questions to Mr. Moore involve "information that ha[s]

---

[1] Opposition at 1:11.

already been disclosed in publicly filed documents."[2] On their face, however, the content of MGA's questions go well beyond what has "already been disclosed in publicly filed documents." Nearly half of MGA's 15 questions concern Toon Teens and, in particular, whether Mattel "believes" that the works in the registration forms are based on Toon Teens.[3] Not only do such questions seek information well beyond what has been disclosed in the registration forms, but they also require the disclosure of attorney-client communications and attorney work product.

MGA argues that the information it seeks is non-privileged because Mattel later filed the registration forms as public documents. But courts long ago rejected this so-called "conduit theory," where the lawyer who assists in the preparation of an intellectual property application is viewed as merely a conduit for information that will eventually be publicly filed, holding instead that the eventual public filing of an intellectual property application will not defeat the privilege that attaches to attorney-client communications made in preparing the application. See, e.g., Knogo Corp. v. United States, 213 U.S.P.Q. (BNA) 936 (Ct. Cl. 1980) (rejecting "conduit theory"). Contrary to MGA's theory that Mattel's filing of the registration forms somehow stripped Mattel of its privilege with regard to these forms, courts routinely hold that communications between counsel and clients regarding the preparation of intellectual property applications are privileged. Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc., 144 F.R.D. 372, 378 (N.D. Cal. 1992) (private dialogue between inventor and patent lawyer is integral part of "shaping and focusing a patent application" which is privileged and entitled to protection from discovery where attorney and client reasonably believe such communications were intended to be kept confidential); Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc., 144 F.R.D. 372, 378 (N.D. Cal. 1992) (communications from inventor to patent lawyer are presumptively

---

[2] Opposition at 3:18-19.
[3] See Moore Rough Tr. at 277:14-17, 278:2-7, 279:17-22, 280:8-18, 281:3-7, 281:13-17 and 281:23-282:3.

protected by the attorney-client privilege and should be ordered disclosed only a very compelling showing).  Indeed, because the application and filing process for intellectual property rights often entails significant legal advice, communications regarding the application process are considered privileged even where the matters are both business and legal in nature.  <u>Hynix Semiconductor Inc. v. Rambus, Inc.</u>, 591 F.Supp.2d 1038, 1068 (N.D. Cal. 2006) (finding drafts of applications and discussions thereof to be privileged on the basis that legal advice is sought in preparing the application for the very purpose of putting forth the information in a most favorable light).[4]

      To the extent that MGA does indeed seek nothing more than  publicly disclosed information, MGA can obtain that information from Mattel's copyright registrations, without the need to question one of Mattel's attorneys about them.  If, on the other hand, MGA seeks information beyond what is available in the forms, as appears to be the case, such information may legitimately be subject to a claim of privilege, regardless of the public nature of the information contained in the forms.  And when the additional information sought concerns communications made in the preparation of the intellectual property forms, the law is clear: such communications are to be treated as any other attorney-client communication as privileged information.

---

[4]  Indeed, MGA itself previously prevailed on this very point earlier in the litigation with respect to an MGA patent application.  In 2007, Mattel sought certain drawings prepared by MGA's patent illustrator in connection with MGA's patent application for a Doll With Aesthetic Changeable Footgear.  MGA resisted discovery of the drawings, arguing that because they were prepared for MGA's counsel in connection with the patent application they were privileged.  MGA even relied on some of the same cases cited here, including <u>Knogo</u> and <u>Advanced Cardiovascular</u>.  <u>See</u> MGA's Opposition to Mattel's Motion to Compel Production of Draft Patent Illustrations, dated December 18, 2007, Dkt. No. 1355.  The previous Discovery Master agreed with MGA and denied Mattel's motion to compel production of the drawings on the grounds that they were privileged.  Hearing Tr., dated January 3, 2008, at 53:17-54:12.  Having won, MGA is judicially estopped from changing its position here.

### B. MGA's Questions Intrude On Attorney-Client Privileged Communications and Work Product

MGA argues that none of its questions requires Mr. Moore to reveal "the nature or content of his communication with counsel…."[5] As Mattel explained in its Objections, however, Mattel filed the copyright registrations at issue in October 2006 as a prerequisite to amending its claims in this litigation to include a claim for copyright infringement. Because the filing of the registrations was part of Mattel's litigation strategy, decisions about how to fill out the forms were made by Mattel's outside litigation counsel and communicated to Mr. Moore. Accordingly, Mr. Moore's only basis for answering MGA's questions is his communication with Mattel's outside counsel. Any answer he could provide would necessarily reveal the "nature or content of his communications with counsel."

In addition to seeking disclosure of communications with outside counsel, many of the questions seek disclosure of Mr. Moore's beliefs -- the mental impressions of counsel actively working on this litigation -- about Mattel's claims.[6] An attorney's mental impressions are regarded as core work product and enjoy heightened protection from discovery. Logan v. Commercial Union Ins. Co., 96 F.3d 971, 976 n.4 (7th Cir. 1996) ("heightened protection" is afforded to an attorney's mental impressions and opinions when such impressions concern an aspect of the litigation); In re Cendant Corp. Securities Litigation, 343 F.3d 658, 663 (3rd Cir. 2003) ("mental impressions, conclusions, opinion or legal theories" of attorneys are "core work product" entitled to near absolute protection against discovery); Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("Opinion work product, containing an attorney's mental impressions or legal strategies, enjoys nearly absolute immunity and can be discovered only in very rare circumstances.").

---

[5] Opposition at 3:7-8.
[6] See, e.g., Moore Rough Tr. at 262:10-12 and 263:1-4.

## II. THE PROBLEMS WITH MGA'S QUESTIONS ARE COMPOUNDED BY THEIR LACK OF FOUNDATION

MGA's questions not only suffer from privilege-related problems, they also suffer from serious foundational issues. They seek to elicit from an individual, non-30(b)(6) witness testimony about what *Mattel* is claiming. Though MGA suggests that a witness testifying in his individual capacity may nonetheless provide 30(b)(6) testimony, it cites no authority for its position that a witness need only have "knowledge sufficient to answer the question" in order to bind the company with his testimony.[7] Indeed, in its questioning of Mr. Moore, MGA did not even attempt to lay a foundation that would justify such questioning of "Mattel's" beliefs here -- undoubtedly because it knew that it could establish none.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court overrule the Discovery Master's instructions to answer MGA's questions at 262:10-12, 263:1-4, 272:11-14, 273:11-14, 274:7-10, 274:21-24, 275:19-22, 277:1-5, 277:14-17, 278:2-7, 279:17-22, 280:8-18, 281:3-7, 281:13-17 and 281:23-282:3 of Volume 1 of Michael Moore's rough deposition transcript.

DATED: February 26, 2010         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
　　Michael T. Zeller
　　Attorneys for Mattel, Inc.

---

[7] Opposition at 2:21-22.