MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**THE MGA PARTIES' RESPONSE TO ORDER DATED FEBRUARY 24, 2010 (DKT. NO. 7562) AND OBJECTION TO MATTEL'S NOTICE OF LODGING OF AMENDED REQUESTS FOR ADMISSION (DKT. NO. 7577)**<br><br>Date:    TBD<br>Time:    TBD<br>Courtroom: 9D |

## INTRODUCTION

In its Order of February 24, 2010, this Court asked the parties to meet and confer regarding the RFAs that were the subject of Discovery Master Order No. 90, noting that the RFAs should be "tightened in order to not tread on the protections of the attorney-client privilege." Dkt. No. 7562 at 2. If what Mattel has submitted *in camera* to this Court, Dkt. No. 7577, even remotely resembles the amended requests for admission that Mattel shared with the MGA Parties, Mattel has flouted this Court's Order. The "amended" RFAs are, in many instances different, and even more objectionable than those were at issue in Discovery Master Order No. 90.

During the meet and confer process, the MGA Parties proposed that two modifications be implemented and that the RFAs been drafted with these two modifications in mind. First, the MGA Parties requested that the word "MGA" be defined so that the definition did not include attorneys. The MGA Parties noted that the RFAs served on Mr. Larian *did not*, when it used the term "YOU" to reference Mr. Larian, define Mr. Larian to include attorneys. The MGA Parties noted that they believed that this was appropriate given that, at most, it is Mr. Larian's knowledge that is at issue. Second, the MGA Parties requested that the RFAs make explicit reference to the fact that they were excluding any communications with attorneys. Parker Decl. ¶¶ 2-3.

In response, Mattel provided the MGA Parties proposed amended requests for admission. Parker Decl. Exhibits 1 and 2. Mattel claimed that it was an "attempt to satisfy some of the stated concerns." Parker Decl. Exhibit 3.

However, rather than satisfy any concerns, Mattel *added* RFAs and *rephrased* RFAs so that they take into account the objections *by demanding the objected to information*. Rather than modify the RFAs in an attempt to obtain the relevant information and rather than "tighten" the RFAs, Mattel has expanded them. Now, Mattel is expressly seeking attorney-client privilege and work product

- 1 -

information. Indeed, Mattel has added RFAs that ask Mr. Larian and MGA to respond by admitting or denying what their attorneys knew or did not know. *See, e.g.,* Parker Decl. Exhibit 1, RFA No. 2; Exhibit 2, RFA No. 16.

In short, the Court should not accept Mattel's submission. It is more objectionable than those that were actually at issue originally. Moreover, these are not the RFAs that have been the subject of any motions practice. The MGA Parties should not be ordered to answer these RFAs.

## ARGUMENT

### I. THE MGA PARTIES PROPOSE A SOLUTION TO RESOLVE THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT OBJECTIONS AND TO NARROW THE SCOPE OF THE RFAS TO WHAT THE PARTIES TO THIS ACTION KNEW OR DID

In addition to issues of relevance, the crux of the MGA Parties' objections to the RFAs at issue is that they seek attorney-client privileged and work product information. They do not seek information from Mr. Larian or MGA. Rather, as phrased, they seek answers that would be supplied solely by counsel, such as whether the document at issue was or was not protected by the attorney-client privilege. *See* MGA RFA Nos. 8-17, 33-38; Larian RFA Nos. 8-17, 36-41.

The MGA Parties proposed solution was that the RFAs should be re-phrased to eliminate this issue. First, the MGA Parties proposed that the RFAs explicitly state that they do not seek communications with counsel. Second, the MGA Parties proposed that the term "MGA" be defined to exclude counsel. With respect to this latter proposal, the MGA Parties noted that the original RFAs served on Mr. Larian did not define Mr. Larian as including attorneys, lessening the concern that these RFAs sought privileged and work product information. (The term "YOU" is defined in the original RFAs served on Mr. Larian as "Mr. Larian."). Parker Decl. ¶¶ 2-3.

The MGA Parties noted that modifications with these two proposals in mind would then provide the MGA Parties an ability to respond without intruding on the attorney-client privilege and work product doctrine. As well, the MGA Parties noted that this would provide Mattel what the MGA Parties believed that Mattel was after, which was responses from the parties, as opposed to privileged and work product information from the attorneys.

## II. MATTEL RESPONDS BY ADDING RFAS THAT ARE THE REASONS FOR THE OBJECTIONS.

### A. The Isaac Larian RFAs.

Rather than make any attempt to accommodate these requests, Mattel did exactly the opposite. Mattel's response to these proposals was to add RFAs and re-phrase the RFAs to highlight the objections made and to add entirely new RFAs that expressly call for the objected to privileged and work product information. To give an illustration of what was added, Mattel has now proposed to Mr. Larian RFA Nos. 1 and 3. Parker Decl. Exhibit 1.[3] These both ask Mr. Larian to admit that "YOU knew the document" was not produced to Mattel and "YOU knew" that the document was relevant. Neither appeared in the prior RFAs. Instead, in the prior RFAs to Mr. Larian, Mattel asked whether "*MGA* knew the document" was not produced and "*MGA* knew" that the document was relevant. Larian RFA Nos. 4, 5 Thus, rather than re-define MGA to exclude attorneys, Mattel just came up with new RFAs—ones it did not ask at all.

And then to compound the issue, Mattel proposes RFA Nos. 2 and 4, which ask "Admit that *YOUR counsel* in this litigation knew the document" was not produced, and "Admit that *YOUR counsel* in this litigation knew" that the document was relevant. Parker Decl. Exhibit 1. So, rather than address the objection, Mattel has taken the objection and made it into RFAs. Setting aside the utility of a meet and confer process that obtains such a result, the RFAs now do

---

[3] Mattel has made cross-referencing the prior RFAs with the amended RFAs difficult by renumbering the amended RFAs.

1  precisely what the MGA Parties have objected to before this Court.  Moreover,
2  rather than address this Court's concern that the RFAs should be "tightened in order
3  to not tread on the protections of the attorney-client privilege," Dkt. No. 7562, these
4  RFAs have been broadened to ensure that they attorney-client communications are
5  at issue *and* ensures that there is no question but that attorney-work product must
6  also be disclosed.

7  Other examples of this appear in proposed RFA Nos. 17, 18, 19, 20, 26 and
8  27.  Parker Decl. Exhibit 1.  In the original RFAs, these were not asked at all.  So,
9  again Mattel has taken this Court's directive to "tighten" the RFAs as a license to
10 serve entirely new RFAs, ones that the MGA Parties have not been heard on at all.

11 Moreover, these RFAs all ask Mr. Larian to admit that "YOU and/or YOUR
12 COUNSEL" knew or did this or that.  In addition to being compound and
13 objectionable on that basis alone, these RFAs now seek expressly what it is an
14 attorney knew or did, which is the basis for the original objections as well as this
15 Court's order.

16 And finally, the RFAs that ask Mr. Larian to admit or deny whether the
17 document was or was not protected by the attorney-client privilege and work
18 product doctrine, simply have not been revised or "tightened" at all.  *Compare*
19 Parker Decl. Exhibit 1 (Larian RFA Nos. 7-16, 33-38) *with* Original Larian RFA
20 Nos. 8-17, 36-41.  This is little wonder.  It now clear that the MGA Parties'
21 attorney-client privilege and work product doctrine objections were well-taken.
22 Mattel *is* seeking privileged and work product information.

23 **B. The MGA RFAs.**

24 The proposed amended RFAs for MGA follow the same pattern.  Mattel did
25 exclude attorneys from the definition of "MGA."  Parker Decl. Exhibit 2 at 2.  But
26 it then added RFAs so that this information directly from the attorneys is expressly
27 sought.

28 For example, proposed RFA No. 16 is entirely new, and it asks MGA to

- 4 -

admit or deny decisions and actions taken by MGA counsel. *See also* RFA Nos. 2, 4, 6, 7, 8, 16, 18, 21-24, 29, 30, 31, 32, 34, 36, 38. Now Mattel asks MGA to "admit that *MGA's counsel* . . .knew the document . . . never was protected by attorney-client privilege." RFA No. 16. This runs into the heart of the privilege, a privilege acknowledged by Judge Larson. Rather than tighten the RFAs to exclude privilege issues, Mattel has now ensured that it is seeking privileged communications and work product information.

The same is true of the other "modifications," which are actually just an entirely new set of RFAs. Another example should suffice, RFA No. 34 asks MGA to admit or deny that "*MGA's counsel* in this litigation believed or knew" that the email at issue "reflects legal advice." Exhibit 2, RFA No. 34. Whereas before, the MGA Parties noted that the information that Mattel sought could only come from an attorney, these re-formatted RFAs ensure that this is true.[4]

Mattel has laid bare its hand. Rather than take this Court's invitation to ensure that the RFAs did not seek attorney-client privileged information, Mattel has ensured that they seek privileged information and attorney work product.

To say the least, Mattel has not met and conferred in good faith and that is frustrating. However, beyond the mere frustration there is this. First, Mattel has perverted the meet and confer process by taking the MGA Parties' objections and made them into RFAs, requiring this response. That is not merely frustrating that is bad faith. Second, and most importantly, Mattel has flouted this Court's Order. It did not tighten or narrow the RFAs to exclude obtaining privileged information. It expanded them.

Mattel's amended RFAs should be rejected entirely.

---

[4] In addition, Mattel made no attempt to revise the RFAs that ask whether the document was or was not protected by the attorney-client privilege or work product doctrine. These appear in the proposed amended RFAs unaltered. Parker Decl. Exhibit 2 RFA Nos. 9-15, 17, 19, 20, 41-46.

**CONCLUSION**

For the foregoing reasons, the MGA Parties ask this Court to reject Mattel's proposed amended RFAs.

Respectfully submitted,

Dated: February 28, 2010        ORRICK, HERRINGTON & SUTCLIFFE LLP

By: ___*/s/ Warrington S. Parker*___
Warrington S. Parker
Attorneys for MGA Parties