QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>           Plaintiff,<br><br>    vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>           Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**REPLY IN SUPPORT OF MATTEL, INC.'S OBJECTIONS TO PORTIONS OF DISCOVERY MASTER ORDER NOS. 89 AND 91**<br><br>Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

**Preliminary Statement**

Rather than defend the vastly overbroad and enormously burdensome searches required by Order No. 89, MGA engages in misdirection. It claims it has been "awaiting" documents for years. Not so. During Phase 1 discovery, Mattel produced hundreds of thousands of pages in response to the requests at issue here. MGA did not choose to challenge Mattel's objections that sought to reasonably limit the requests until it brought a motion to compel years later. And its prior efforts contesting the scope of Mattel's electronic searches failed.

The issue before the Court now is the scope of electronic searches and 71 overbroad requests for production compelled in Order Nos. 89 and 91. MGA fails to provide any basis for upholding these Orders. As to the electronic searches, MGA represents that all it wants is for Mattel to "search and produce responsive documents from all servers and custodians from which Mattel reasonably expects to find relevant information." Opp. at 5:10-12. But that scope would actually be in keeping with Judge Infante's April 24, 2008 Order, which approved Mattel's "reasonable search . . . of electronic media in its possession that were likely to have responsive documents." Contrary to Judge Infante's Order, however, Order No. 89 requires searches of every server in North America and of the hard drives of every Mattel employee ever mentioned in discovery, regardless of whether those sources can reasonably be expected to have relevant information. In imposing these requirements, the Discovery Order failed to consider the proper legal standard under Rule 26(b)(2). Without such consideration, and without any justification by MGA for such an onerous search requirement, the Order does not withstand scrutiny.

As to Mattel's objections to 71 of the specific requests compelled by the Discovery Master, MGA again avoids the merits. It claims Mattel somehow waived objections by agreeing to respond to certain requests, but acknowledges that Mattel only agreed to respond to those requests *subject* to its objections. MGA also claims the Discovery Master imposed limitations on many of the requests at issue here

Case 2:04-cv-09049-DOC-RNB   Document 7586   Filed 03/01/10   Page 3 of 11   Page ID
 #:258680

when, in fact, he did not. If MGA believed that the requirements of Order Nos. 89 and 91 were reasonable, then it would surely be willing to search its own files and electronic media and produce documents in accordance with those same requirements. Tellingly, MGA refuses to do so. Order Nos. 89 and 91 exceed the reasonable scope for discovery and should be overruled or, alternatively, MGA should be ordered to comply reciprocally.

## Argument

### I.  MGA CANNOT DEFEND ORDER NO. 89'S OVERBROAD ELECTRONIC SEARCHES

#### A.  MGA Ignores The Provisions Of Rule 26(b)(2)

MGA suggests that Mattel's electronic search objections were properly considered and rejected by the Discovery Master. Opp. at 9. The record is clear they were not. As Mattel pointed out, and MGA does not dispute, the scope of electronic search was not even *raised* until after the close of briefing before the Discovery Master. See Mot. at 3-4. The Discovery Master's Order did not cite or discuss Rule 26(b)(2), and the Rule was not briefed or discussed by the parties.[1]

MGA similarly ignores Rule 26(b)(2) in its Opposition here. MGA asserts that electronic discovery should be "commensurate with the scope of the claims and defenses at issue." Opp. at 10. But MGA makes no attempt to explain why a search of over 1,200 computer servers scattered throughout North America is appropriate. Under Rule 26(b)(2), the relevant inquiries are the cost, burden, the specificity of the discovery requests,[2] the likelihood of finding relevant, responsive information, and the availability of less burdensome discovery. Fed. R. Civ. P. 26(b)(2)(B), (C). MGA fails to address those factors, as did the Discovery Order.

---

[1] MGA notes Mattel's opposition before the Discovery Master also did not discuss Rule 26(b)(2), (Opp. at 9, n.10), but of course, the issue was not raised until after Mattel's brief had been filed. Had MGA not delayed in raising the scope issue until after Mattel's opposition was filed, Rule 26(b)(2) would have been briefed.

[2] A particularly important (and as-yet unconsidered) factor here given the sweeping requests that have been compelled (e.g., all documents referring or relating to Mattel's purchase of doll hair over a nine-year period).

00505.07975/3343606.1
-2-
REPLY ISO MATTEL, INC.'S OBJECTIONS TO DISCOVERY MASTER ORDER NOS. 89 AND 91

### B. Mattel's Servers Are Inaccessible Due to Burden and Cost, and MGA Makes No Attempt To Show The Required Good Cause

Consistent with Rule 26(b)(2), Mattel previously demonstrated that many of its servers are not "reasonably accessible because of undue burden and cost." April 24, 2008 Order at 6; Mot. at 8. MGA does not dispute this, except to say it is "beyond comprehension" that Mattel cannot search many of its servers by keyword, claiming servers "would be useless" if they cannot be searched. Opp. at 18. MGA ignores that there are many types of servers, including servers like Zeus that store overwhelmingly graphical materials that cannot be keyword searched (except by file name, which Mattel has done and even provided to MGA a complete file listing as MGA had requested). Indeed, it was only two months ago that MGA claimed that its *own* email servers are not searchable, even though they (unlike many of Mattel's servers which host information other than emails) are specifically designed to allow keyword searching. See Dec. of Samuel S. Rubin, dated December 11, 2009 at ¶ 17. Here, Mattel is not just being asked to search all email servers, but all servers of *every* type, including those containing complex engineering and graphical models that cannot be searched except file-by-file. MGA's insistence that Mattel be required to search far-flung servers and the hard drives of every person ever mentioned in discovery is aimed at imposing unnecessary expense and burden, and not on locating pertinent discovery. MGA's position is all the more indefensible considering it has never searched the hard drives of *Isaac Larian*, the most important witness in the case, and refuses to even make them available for inspection, despite multiple Orders compelling their production.[3]

MGA also fails to distinguish Mattel's authorities concerning the proper scope of electronic discovery. MGA misreads Petcou as applying only to

---

[3] See Mattel's Opp. to MGA's Obj. to Recommendation No. 5 of Jan. 21, 2010 Electronic Discovery Special Master's Report and Recommendation, dated Feb. 16, 2010, at 15-16; cf. MGA's Reply in Support of Objections to Electronic Discovery Special Master's Report and Recommendation, dated Feb. 22, 2010 (Dkt. No. 7545) (failing to dispute showing that MGA had failed to search Larian's hard drives).

"searching for deleted emails" (Opp. at 12), but <u>Petcou</u> focused on the *cost and burden* of producing emails, not whether the emails were deleted. <u>Petcou v. C.H. Robinson Worldwide, Inc.</u>, 2008 WL 542684 at *1-2 (N.D. Ga. Feb. 25, 2008). Balancing the benefits and burdens of electronic discovery, <u>Petcou</u> denied production of emails where there was a high cost and burden. <u>Id.</u> Similarly, MGA claims <u>Best Buy</u> concerned a "downgraded database," but that is no distinction at all; what is pertinent is that the court there analyzed the cost, burden, and availability of less burdensome discovery. <u>Best Buy Stores, L.P. v. Developers Diversified Realty Corp.</u>, 247 F.R.D. 567, 570-71 (D. Minn. 2007). MGA dismisses <u>Capital Records</u> with the irrelevant observation that it involved "only a single copyright claim." Opp. at 12. But the claim involved alleged *nationwide* copyright infringement, and a requested search of a "global infrastructure" of some two terabytes of data on various servers. The court considered the relevant costs, burdens, and benefits, and ordered targeted searches of a limited universe of electronic sources. <u>Capital Records, Inc. v. MP3tunes, LLC</u>, 261 F.R.D. 44, 47-54 (S.D.N.Y. 2009).

As courts recognized, even if it may be relevant under <u>Rule</u> 26(b)(1), it is contrary to law to order discovery that is excluded by <u>Rule</u> 26(b)(2)(B) and (C). <u>Langboard v. U.S. Dept. of the Treasury</u>, 2008 WL 4748174 at *3 (E.D. Pa. Oct. 22, 2008) ("[E]ven if [the requested discovery] were relevant under Rule 26(b)(1), [the responding party] would be protected from having to produce any electronic drafts by Rule 26(b)(2)(B)."). The courts cited here and the prior Discovery Master correctly considered <u>Rule</u> 26(b)(2)(B) and (C) in determining the scope of electronic discovery, but Order No. 89 did not, nor does MGA in its Opposition.

### C. **Searching Hundreds of Employees' Computers Is Overbroad**

MGA makes no showing that Mattel should be required to search emails of every one of its employees, much less the hard drives and files of every person mentioned in discovery. MGA attempts to distinguish <u>Thompson v. Jiffy Lube Int'l</u>,

00505.07975/3343606.1

-4-
REPLY ISO MATTEL, INC.'S OBJECTIONS TO DISCOVERY MASTER ORDER NOS. 89 AND 91

Inc. by claiming that it involved a search of "over 450 employees" and that "Order No. 89 does *not* require Mattel to search emails of all its employees." Opp. at 12 (emphasis added). But Order No. 89 requires Mattel to search *all* its North American servers, which contain the emails and other files (including non-keyword-searchable files) for *thousands* of Mattel employees. As to the individual hard drives and files, the search required by Order No. 89 is not limited to "key witnesses" as MGA suggests (Opp. at 13), but rather requires a search of every person ever mentioned in depositions, initial disclosures, and interrogatories. In short, the scope at issue here is far broader than the searches rejected or limited in Thompson and Capital Records.[4] Indeed, Mattel has located no case, nor has MGA cited any, involving (must less actually requiring) a sweeping search of all servers on a continent, or all employees mentioned in discovery.

To defend the enormous burden and cost of these searches, MGA notes that there are "witnesses" in the U.S., Mexico and Canada. But that witnesses might be so located does not justify searching every server anywhere in those countries. Rather, search requirements must be reasonable. For example, in Daimler Truck N. Am. LLC v. Younessi, 2008 WL 2519845 at *4 (W.D. Wash. June 20, 2008), the court agreed that the requesting party had not met its burden to show good cause to compel searches of 89 computers spread over five locations in Washington, Alaska and Canada. Instead, the court ordered searches of a smaller subset of devices to which the parties agreed and the court found to be reasonable. Id. at *5.

## II. MGA'S COMPLAINTS ARE IRRELEVANT AND INACCURATE

MGA's complaints about Mattel's productions in response to these requests are based on a fundamental mischaracterization. *All* of the 915 requests at issue in

---

[4] In fact, MGA previously resisted responding to even a single, focused, and highly relevant category of discovery -- namely, fee and indemnification agreements -- for those identified in its initial disclosures based on its contention that all such persons were *not* "witnesses." The Discovery Master agreed (Discovery Matter Order No. 11 (Docket No. 5093), only later to accept MGA's complete about-face and compel vastly broader categories for all such persons against Mattel.

Order No. 89 were served and responded to during Phase 1. Years ago, Mattel timely objected and the parties met and conferred dozens of times. Mattel produced nearly a million pages of documents during Phase 1 in response to these very requests. MGA did not move to compel further responses. It did not move to overrule Mattel's objections. MGA did not file after "awaiting" documents for years; it received nearly a million documents and then decided, years later, to file.

In support of its opposition, MGA also complains about production of documents prior to Mattel depositions. The point is irrelevant here, and in any event Mattel has produced responsive documents, pursuant to its good-faith search efforts, in advance of every deposition to date. For its part, however, MGA has repeatedly produced relevant documents the night before and even during the depositions of its witnesses. MGA produced documents the night before and on the second day of MGA Canada's 30(b)(6) deposition. It also produced documents relevant to Isaac Larian, Susana Kuemmerle, and others *during* their depositions. And MGA *still* has not searched Isaac Larian's hard drives for relevant information.[5]

## III. THE ORDERS COMPELLED OVERBROAD, IRRELEVANT REQUESTS

MGA argues that the Discovery Master "resolved" Mattel's objections to these 71 Requests "by narrowing the requests in a way that was neither clearly erroneous nor contrary to law." Opp. at 13:22-24. Not so. The majority of these

---

[5] If any party feels relevant documents have not been produced sufficiently in advance of deposition, the Court has made clear the remedy is to seek to re-depose the witness. Instead of doing so, MGA makes yet another half-hearted request to stay these proceedings and "continue depositions of witnesses until Mattel's production is complete." Opp. at 19. Having not identified a single deposition at which it was unable to properly examine the witness with relevant documents, MGA's request for a blanket delay of these proceedings is improper. MGA likewise complains that Mattel has made 16 separate document productions in the past month (Opp. at 7) -- an argument that is irrelevant to the overbreadth of the discovery at issue and ignores MGA has made *fifteen* productions in the same period.

Requests were not narrowed in the Orders at all, and those that were are still overbroad. The rulings as to these 71 requests are erroneous.[6]

### A. Mattel Agreed To Comply With Twelve Of The Requests Subject To Its Objections, Which Order No. 89 Overruled

As to twelve of the Requests at issue, MGA admits that Mattel agreed to produce responsive documents *subject to certain objections and limitations*. Opp at 14:2-3. Nevertheless, MGA opposes Mattel's motion on the grounds that "Mattel cannot now raise new objections in an effort to avoid its prior statement of compliance." Opp at 14:8-9. That is nonsensical. Mattel's objections to these Requests are not new. The issue, which MGA ignores, is whether Order No. 89 erred in overruling the long-standing objections and limitations subject to which Mattel had previously produced.

MGA argues that for three of the Requests (9049 RFP Nos. 606, 608, and 610), Mattel must abandon its objections solely because "Mattel has previously represented that 'documents responsive to this Request have been produced.'" Opp. at 14:18-20. However, Mattel's response that it had produced responsive documents was subject to objections, including relevance and overbreadth.[7] In effect, MGA is asking the Court to punish Mattel for having produced documents subject to objections. MGA offers no argument whatsoever that Mattel's objections were not well taken, nor does it attempt to justify the overbreadth of the Requests.

As to eight of the Requests (9049 RFP Nos. 3, 45, 168, 452, 462, 463, 466, and 583), MGA argues that Mattel has given up its objections because Order No. 89 held that "orders of the prior Discovery Master 'overlook differences in the requests and the broadened scope of issues in Phase 2.'" Opp at 14:10-16 (citing Order No.

---

[6] MGA argues that Order No. 89 can only be reviewed for "clear error". However, under Fed. R. Civ. P. 53(f)(4), a district court "must decide de novo all objections to conclusions of law made or recommended by a master." *See also Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1072 (9th Cir. 1991) ("[T]he district court . . . considers [the special master's] conclusions of law *de novo*.") (citations omitted).

[7] See Dkt. No. 6818, Ex. 36, at 31-33 and 35.

89 at 16). However, five of these eight Requests are not among the 143 requests the Discovery Master identified as affected by his overruling of the prior Discovery Master Orders.[8] Moreover, Mattel's objections to these five do not rely on the prior Discovery Master Orders at issue; MGA's argument is a non-sequitur. As for the three Requests for which the Discovery Master has specifically overruled Mattel's objections, or prior orders they relied upon, MGA's "argument" is nothing more than a statement of the obvious: that Mattel is objecting to the Discovery Master's ruling. MGA, like the Order, fails to refute the merits of Mattel's objections.

As to 9059 Request No. 189, seeking all documents related to consideration by Mattel of acquiring MGA, MGA argues that Mattel is seeking to "revive" a relevance objection. Opp. at 14. In fact, Mattel also objected to this request on other grounds, including overbreadth. The request is clearly overbroad and seeks information related to settlement negotiations between Mattel and MGA, even though the mediation agreement that MGA signed with Judge Tevrizian forbids it.[9]

Mattel's limitations as to these requests are proper and it was clear error for the Discovery Master to overrule them. MGA provides no argument to the contrary.

### B. Mattel's Objections To The Remaining 59 Requests Should Be Sustained

Here as well, MGA fails to address the merits of Mattel's objections. With respect to the 35 "Polly Pocket" Requests, MGA does not even attempt to link them to any of its pleadings or interrogatory responses. Instead, MGA argues that the Requests are relevant because "the Discovery Master found the requests to be relevant to MGA's unfair competition claim and affirmative defenses." Opp. at 16:2-3. This only begs the question. The *only* allegation about "Polly Pocket" offered by MGA in its unfair competition claim and affirmative defenses is the statement that "Mattel filmed a Polly Pocket commercial in the same mall and

---

[8] 9049 Request Nos. 3, 45, 168, 452, and 583 are not ruled upon. See Order 89 at 16-17, 20-28.

[9] JAMS' agreement is found at (www.jamsadr.com/mediation-forms/).

featuring the same escalator as appeared in a previous Bratz commercial."[10] The Requests at issue have nothing to do with this allegation. The Discovery Master's ruling that these sweeping Requests are relevant was erroneous.[11]

With respect to the rest of the Requests, MGA falsely claims that they were limited in subject matter by Order No. 89 because they "fall within Appendix A, which renders the Requests narrowed and limited as to relevance." Opp. at 3:4-5. However, these Requests were not so limited. After identifying the relevance limitations applicable to Appendix A, the Discovery Master stated that "responses to the Requests should be limited to the categories and subcategories discussed above **unless I specifically discuss the Requests below, in which case my more specific finding controls**." Order No. 89 at 16:7-9 (emphasis added). Of the 24 non-"Polly Pocket" Requests at issue in Mattel's objections, 20 of them are "discussed below" in Order No. 89 Section II.B, and are compelled without *any* of the limitations applicable to the other Requests in Appendix A.[12]

Thus, for example, 9049 Request No. 787 is expressly *not* "limited to the seven specific issues listed in Order No. 89" as MGA claims. Opp. at 17:14-15. Rather, the Order compelled Request No. 787 in full, seeking all documents referring or relating to any survey, focus group, consumer research or other market research concerning "My Scene," Bratz or "Barbie." Order No. 89 at 22. For the reasons stated in Mattel's Objections, and unrefuted by MGA, this Request, like the rest, is impermissibly overbroad.[13]

---

[10] MGA's Supp. Response to Mattel's Second Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated Nov. 30, 2009.
[11] Further, these Requests were not narrowed by the Discovery Master. The limitations Order No. 89 imposed on other Requests are also erroneous to the extent they include documents related to "Polly Pocket." See Order 89 at 10:6-11:4.
[12] Specifically, 9049 Request Nos. 545, 558, and 559 at 23:27-24:11 and 23:17; 9049 Request Nos. 598, 599, and 694, and 9059 Request Nos. 212 and 218 at 24:27-28 and 26:8-11; and 9049 Request Nos. 98, 648, 677, 678, 776, and 787, and 9059 Request Nos. 3, 5, 7, 9, 11, and 13 at 22:21-24.
[13] 9049 Request No. 423, 708, and 725, and 9059 Request No. 18 are subject to limits by the Discovery Master, but as explained in Appendix 1, these Requests are overbroad even as so limited.

## IV. RECIPROCITY IS A MATTER OF FAIRNESS

MGA dismisses reciprocity as a "red herring," but tellingly balks at abiding by the same standards imposed on Mattel. Opp. at 19. The point is simple: if MGA believes searches of thousands of media for hundreds upon hundreds of sweeping discovery requests are "commensurate with the scope of the case," then MGA must conduct the same search and produce the same types of documents as Mattel has been ordered to produce. As this Court has recognized, reciprocity is a basic matter of fairness;[14] the documents MGA has demanded from Mattel, if relevant, are equally relevant when coming from MGA. See Silicon Knights, Inc. v. Epic Games, Inc., 2008 WL 2414046 (E.D.N.C. June 13, 2008) (granting request for reciprocal production requirements because "judicial economy would be served by the court's addressing the request at this time"). As stated in Mattel's Objections, Mattel has prepared a Proposed Order that details what should be imposed on MGA as to each request (both those appealed and those not). Since, like the MGA Requests at issue, the Proposed Order is extremely voluminous, Mattel has not submitted it pending further instruction by the Court and awaits the Court's direction.

### Conclusion

Mattel respectfully requests that its motion be granted.

DATED: February 28, 2010

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[14] See, e.g., the Court's January 26, 2010 Order, Dkt. No. 7434 at 10-11.