UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC.,<br><br>   Plaintiff(s),<br><br> v.<br><br>MGA ENTERTAINMENT, INC.,<br><br>   Defendant(s).<br>_____ | CASE NO. CV 04-9049 DOC (RNBx)<br><br>**O R D E R GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ISAAC LARIAN'S ATTENDANCE AT DEPOSITION** |

   Before the Court is Mattel, Inc. ("Mattel")'s request that the Court order Defendant Isaac Larian ("Larian") to re-appear for deposition (the "Motion to Compel"). After considering the moving and opposing papers, the Court GRANTS IN PART AND DENIES IN PART the Motion to Compel.

**I.  Background**

   Over the last three months, Larian has been deposed by Mattel for five full days with respect to Phase 2 claims. Mattel argues that Larian should nonetheless be required to reappear in light of: (1) frequent "outbursts" at Mattel's counsel, which detracted from Mattel's

ability to depose Larian; (2) a new claim of emotional distress raised by Larian regarding the alleged mal-treatment of his young son by a relative of one of Mattel's attorneys; (3) Larian's failure to respond to questions relevant to a number of claims, including claims asserted by MGA Entertainment, Inc. and Larian (the "MGA Parties"); (4) Larian's failure, at the direction of his counsel, to respond to questions about the withholding of certain emails that are the subject of Discover Matter Order No. 90; and (5) Larian's failure to supply responsive answers to questions about his relationship with certain Omni 808 investors, including Joseph Moinian. *See* Dkt. 7506 at 4-8.  At the Court's direction, Mattel lodged with the Court the complete deposition transcripts from Larian's depositions on December 10, 2009, December 11, 2009, January 18, 2010, January 19, 2010, and January 20, 2010.  In addition, Mattel lodged Larian's deposition transcripts from January 18, 2006 and March 26, 2008, the two dates on which Larian was deposed prior to Phase 2.

    Federal Rule of Civil Procedure 30(d)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours.  The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."  In Phase 2 alone, Larian has been deposed for nearly forty hours, well over the seven hour limit.  However, the Court recognized that the complexity of the RICO allegations, which encompass the Omni 808 transaction and the alleged theft of Mattel trade secrets at the direction of the MGA Parties' officers, warranted a departure from Rule 30(d)(1)'s seven hour rule.  The Court also instructed that, notwithstanding the important role Larian allegedly played in the conduct alleged by Mattel, the MGA Parties were entitled to depose Mattel's Chief Executive, Mr. Robert Eckert, for an equivalent period of time in order to obtain testimony relevant to the MGA Parties' contemplated defenses against Mattel's claims.

**II.    Discussion**

  **A.    Demeanor**

    Without the Court's solicitation, Mattel lodged with the Court excerpted video recordings of Larian's deposition testimony during Phase 2 discovery.  Presumably, Mattel

expects that the videotaped testimony will aid the Court to judge Larian's demeanor. The Court has already instructed counsel, in the context of investigation videotapes of former Mattel employee Ron Brawer, that snippets of videos have a tendency to distort and can be unduly prejudicial. Moreover, the Court's order directing the production of Larian's deposition transcripts stressed the Court's concern that Mattel was not receiving relevant discovery. The manner in which Larian interacts with Mattel's attorneys and/or his own attorneys is of no consequence, so long as it does not interfere with the provision of responsive testimony. *See, e.g.*, *Auguste v. Alderden*, No. 03-cv-00256-WYD-KLM, 2008 WL 2113343, at *2 (D. Colo. May 9, 2008) (deponent failed to answer questions about her children and her employment). Indeed, Federal Rule of Civil Procedure 30(b)(1) provides that, subject to limited exceptions, "[t]he examination and cross-examination of a deponent proceed as they would at trial . . ." Few exchanges in the voluminous deposition transcripts reviewed by the Court are of the variety prohibited at trial.

Nor are excerpts of Larian's videotaped depositions necessary to illustrate the relationship between the parties and counsel. The transcripts are more than adequate. *See, e.g.*, Larian Depo. Tr. at 55:6-19; *id.* at 68:6-7; *id.* at 146:13-23; *id.* at 160:24-25; *id.* at 166:11-13; *id.* at 554:6-7; *id.* at 1750:1-3; *id.* at 1769; . Indeed, one of the main points of personal contention involves Larian's repeated remarks about Mattel's counsel's use of nicotine gum. *See, e.g.*, *id.* at 1795-96. Based upon the number, type, and tone of the pending discovery disputes in this case, it is a small wonder that counsel for *all* parties have not partaken in such substances.

### B. The Omni Transaction

Mattel has identified the Omni transaction as relevant on three grounds. First, a full inquiry into the transaction will shed light on whether Mattel has priority rights to ownership of Bratz intellectual property and MGA's assets insofar as Mattel seeks to recover the $100 million judgment rendered by the Phase 1 jury. Second, a full inquiry into the transaction is relevant to the net worth of MGA with respect to proving damages at the Phase 2 trial and/or the remanded and consolidated trial of Phase 1 and Phase 2 issues. Third, a full inquiry into the transaction is relevant with respect to Mattel's RICO allegations as set forth in the operative

3

Third Amended Answer and Counterclaims.

Thus, counsel for Mattel wasted no time in asking Larian questions about the source of funds for the "Omni 808 transaction." *See id.* at 530-533 (providing testimony as to contributions of Nazarian, Moinian, Neman, Gozini, and Kadisha), as well as any attempt by Larian to purchase the individual Omni members' interest in MGA's debt to Wachovia, *see id.* at 860. Larian testified that neither he, nor any entity acting on his behalf, entered into an agreement with any of the Omni 808 investors (with the exception of an agreement with Gozini related to a real estate transaction, *see id.* at 862-63) to repay any of funds they contributed to the Omni 808 transaction. *See id.* at 534-535; *but see id.* at 537 (acknowledging that he "wanted to buy . . . other people's investment in [Omni 808]"); *see id.* at 1001-05 (discussing agreements with Omni investors); *see also id.* at 1136-38 (discussing any agreements with Kadisha); *id.* At 1131-34 (discussing agreements with Nazarian). Larian has testified about the contributions of the IGWT 826 entity to the Omni 808 transaction. *See id.* at 548:11. Indeed, counsel for Mattel has asked Larian about exchanges between Larian and his counsel with respect to the Omni 808 transaction and Larian was properly[1] instructed not to answer. *See id.* at 542. Finally, and perhaps most significantly as far as the enforcement of the Phase 1 judgment is concerned, Larian testified about whether Omni received any security interest in MGA's intellectual property as consideration, as well as the priority of that interest against other MGA creditors. *See id.* at 1115-16; *id.* at 1159.

Still, Mattel argues that Larian has not provided adequate responses to relevant

---

[1]  *See Anderson v. Montgomery Ward & Co., Inc.*, No. 82 C 7277, 1987 WL 5682, at *1 (N.D. Ill. Jan. 16, 1987) ("Allowing specific inquiry into the subject matter of privileged communications inevitably would erode the privilege and hinder the free exchange of information and ideas that is vital to the attorney-client relationship.") (citing *Cohen v. Uniroyal*, 80 F.R.D. 480, 482 (E.D. Pa. 1978); *Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962); and *J.P. Foley & Co., Inc. v. Vanderbilt*, 65 F.R.D. 523, 526 (S.D.N.Y. 1974)). Mattel conflates the issue of whether a privilege attaches to the subject matter of the communication, *see Greyhound Corp. v. Superior Court*, 56 Cal.2d 355, 397, 15 Cal.Rptr. 90 (1961), with the instant issue of whether a privilege attaches to the fact of the communication about a particular subject matter.

1  questions about his contribution to the Omni 808 transaction through the IGWT 826 vehicle.
2  The deposition transcript is replete with responsive testimony about IGWT and the search and
3  production of IGWT documents.  *See id.* at 1161-63; *see also id.* at 1167 (discussing loan to
4  OMNI as prerequisite to Omni transaction); *see also* 1741-1742 (discussing satisfaction of
5  discovery obligations related to IGWT).  At issue is the following exchange (involving a
6  question that was read back to Larian several times):

7         Q     So is it the case that if someone had represented to the court
8              in this case that none of the money for the $109 million debt
9              acquisition came from you would consider that to be a true
10             statement or a false statement?
11        A     I don't know who said that and if it's true or not.  All I can
12             testify as to what I know is that IGWT 826 provided $60
13             million to Omni 808 so they can buy the Wachovia debt.

14 *Id.* at 548:15-23.

15         The issue of whether any "of the money for the $109 million debt acquisition came
16 from [Larian]" could have (and should have) been resolved by the production of documents
17 already received by Mattel.  In addition, Larian conceded that he "and [his] sister and [their]
18 spouses" are "ultimately, the owners of IGWT 826."  *Id.* at 552:15-20; *see also id.* at 553
19 (acknowledging that he owns 81 percent of IGWT 826, and his sister owns the remainder); *see*
20 *also id.* at 554 (admitting that purpose of creating IGWT 826 was to "loan money to Omni 808
21 so that they could do the transaction and buy Wachovia's debt"); *id.* at 567 (noting that he called
22 Neil Kadisha, a contact from other business ventures, after adverse verdict in Phase 1 and
23 solicited Kadisha's help to purchase Wachovia debt); *id.* at 577-78 & 863 (discussing loans to
24 Farahnik); *id.* at 581-82 (discussing efforts to recover money owed under past due loans to pay
25 Omni 808 investors); *id.* at 601:14-15 (admitting that $66 million of Omni 808 transaction came
26 from Larian or his companies); *id.* at 1016-17 (discussing contemplated purchase of Gozini's
27 investment in Omni).
28         Mattel expresses concern that Larian has not adequately testified as to his

relationship with Joseph Moinian, one of the Omni investors via a vehicle by the name of Vision Capital.  First, Mattel's request is partially obviated by its pending motion for an order compelling the testimony of Moinian.  Second, Larian *did* provide testimony about Moinian. *See id.* at 1007-10.

Larian also testified that he had previously issued loans to MGA and that he lacked knowledge about the interest rate on those loans.  Mattel argues that Larian failed to provide responses to relevant questions during the following exchange:

> Q   And do you know if that rate went down?
> A   I don't know.
> Q   What time period did this happen?
> A   I don't remember.
> Q   Was it in the last two years?
> A   I don't remember.
> Q   You don't recall the finance person?
> A   No.

*Id.* at 599.

Notwithstanding the marginal relevance of the change in interest rate on Larian's prior loans to MGA, the surrounding context of the exchange suggests that Larian was hardly attempting to conceal the manner in which his personal finances were intertwined with MGA's. To the extent that Mattel seeks to contrast Larian's prior loans with the Omni 808 transaction, the Court is unclear of whether Larian's re-appearance for deposition will accomplish much.

To review in length the deposition transcript as it relates to the Omni transaction is unnecessary given the nature of the instant dispute.  The problem is that Mattel's briefing does not reasonably distinguish those questions to which Larian would understandably lack recollection – *e.g.*, prior conversations, remembering the context of a particular communication – from those circumstances in which a non-answer is inexplicable, *see, e.g.*, *id.* at 1736 (declining to answer "without . . . specifics" a question about competitive advantage of beating a Mattel product to the shelves).  Again, re-calling Larian for deposition is unlikely to achieve

6

1  much in the way of making him respond; these non-answers are likely to continue and result in
2  exchanges that are wasteful of counsels' (and the Court's) resources.  At least with respect to the
3  Omni transaction, the Court finds that Mattel has failed to satisfy the Court's instruction that it
4  "identify, with absolute specificity, the precise questions which Mr. Larian has not responded to,
5  and which Mattel is entitled to ask pursuant to Fed. R. Civ. P. 26."  Still, the Court recognizes,
6  based on its review of the transcript, that Larian's relationship with the Omni investors needs
7  further substantiation.  Moreover, Mattel should be afforded one last opportunity to narrow its
8  questions, and seek responsive answers to the questions to which Larian has yet failed to provide
9  answers.
10            Accordingly, the Court ORDERS that Mattel be limited to three hours of
11 questioning with respect to the Omni transaction at Larian's resumed deposition.  Mr. Larian is
12 advised to prepare to be deposed as to his relationship with Omni investors in the interim. .
13            **C.     Emotional Distress Claims**
14            At issue is an exchange between counsel for Mattel and Larian, in which Larian
15 referenced a potential claim for emotional distress.  *See id.* at 1497.  Specifically, Larian testified
16 that his son was being harassed by the relative of an attorney who works at the law firm
17 representing Mattel, Quinn Emanuel Urquhart Oliver & Hedges, LLP.  The Court is satisfied by
18 the representation by the MGA Parties that, notwithstanding Larian's statement at the deposition,
19 a claim for emotional distress will not be asserted by the MGA Parties.  *See id.* at 1510; *see also*
20 *id.* at 1507-08.
21            Mattel protests Larian's reference to emotional distress as diversionary.  The
22 record reflects that both parties bear culpability for the more than thirty minutes of wasted time
23 on this line of questioning.  The parties are further advised to resolve the underlying issue with
24 haste – the potential harassment of the child of a party to this lawsuit is of great concern to the
25 Court.
26            **D.     Testimony as to MGA's Affirmative Claims**
27            Mattel argues that Larian has provided insufficient testimony on *how* Mattel's
28 products resemble MGA's.  The deposition transcript supports Mattel's contention: on a number

1  of occasions, Larian testified that he could not speak to similarities between the products without
2  first looking at the products and on other occasions, he continued to think of new similarities as
3  the deposition progressed.

4        The Court recognizes Mattel's interest in obtaining testimony as to Larian's
5  conclusions and so, on that basis, ORDERS that Larian re-appear and testify about the
6  similarities between Mattel's products and MGA's products for a period not to exceed three
7  hours. The parties shall make sure to have samples of the products at issue available for the
8  deposition.

### E. O'Connor-Larian Email

10       The instant dispute has been resolved by the Court's minute order disposing of the
11 MGA Parties' objections to Discovery Matter Order No. 90. Larian shall re-appear for
12 deposition and provide responses, subject to the assertion of privilege, to questions regarding the
13 O'Connor-Larian email produced after Phase 1. The questioning on this topic shall not exceed
14 two hours.

## III. Disposition

16       For the foregoing reasons, the Court hereby ORDERS the parties to meet and
17 confer and determine a date and time at which Larian shall re-appear for deposition in Santa
18 Ana, California for a period of time not to exceed eight hours in accordance with the limitations
19 outlined above. The parties are encouraged to make wise use of the time at deposition and
20 Larian is encouraged to prepare for his deposition. At the conclusion of the resumed deposition,
21 Mattel may request additional time and the Court shall grant the request upon a showing of
22 inadequate preparation and/or non-responsive testimony as to relevant topics.

24 IT IS SO ORDERED.
25 DATED: February 25, 2010

*David O. Carter*
_____
DAVID O. CARTER
United States District Judge