UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., | CASE NO. SACV 04-9049 DOC (RNBx) |
| Plaintiff(s), | |
| v. | **[TENTATIVE] O R D E R RE OBJECTIONS TO DISCOVERY MATTER ORDER NO. 90** |
| MGA ENTERTAINMENT, INC., | |
| Defendant(s). | |

   Before the Court is MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") (collectively the "MGA Parties") objections to Discovery Matter No. 90 (the "Objections"). The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, [as well as the parties' oral argument,] the Court hereby [ORDERS] as follows.[1]

---

[1]   On January 24, 2010, the Court considered the Objections and ordered the parties to meet and confer in order to resolve the objections and effectuate appropriate modifications to the Requests for Admission (RFAs) at issue. The parties met and

## I.     Background

Prior to the Phase 1 trial – that concerned ownership of Bratz – Mattel served the MGA Parties with certain Requests for Production that encompassed documents relevant to the origin of the Bratz.  Prior counsel for the MGA Parties neglected to produce one portion of an e-mail exchange between Victoria O'Connor, a former MGA executive, and Larian.  In that October 2002 exchange, O'Connor opined on an embedded e-mail thread between Larian and a news reporter, in which Larian remarked that Bratz was "BORN SEPTEMBER 2000; 9 MONTH TO DEVELOP | LIKE A BABY."  See MGA2 0070266.  In response to Larian's comment, O'Connor questioned: "don't you think we should say Bratz was born in October when a certain person was no longer with their company?" *Id.* (emphasis added).  Larian responded: "good point.  Thanks." *Id.*

The e-mail exchange was listed on a privilege log by the MGA Parties' former counsel, the law firm of Skadden, Arps, Slate, Meagher & Flom ("Skadden"), and Judge Larson declined to conduct an *in camera* review of the document (and others listed on the privilege log) prior to the Phase 1 trial.  The Phase 1 jury found that ownership of the Bratz line resided with Mattel, because the inspiration for Bratz – certain sketches by former Mattel designer Carter Bryant – was developed while Bryant was still employed by Mattel.  However, the Phase 1 jury found that any copyright infringement by the MGA Parties was done without knowledge and/or intent.  Mattel argues that the O'Connor-Larian e-mail suggests otherwise.

After Phase 1, the MGA Parties substituted Skadden with present counsel, the law firm of Orrick Herrington & Sutcliffe ("Orrick").  Upon retention by the MGA Parties, Orrick conducted a review of all documents listed as privileged by Skadden and produced the O'Connor-Larian e-mail exchange at issue.  Judge Larson directed an Order to Show Cause to

---

conferred on January 25 and January 26, 2010, but failed to reach an agreement.  Pursuant to the Court's January 24, 2010 Order, Mattel, Inc. ("Mattel") submitted an amended list of RFAs for the Court's in camera review.  Having found that the amended list does not meaningfully cure the deficiencies in the prior list, the Court returns to the original list of RFAs that were the subject of Discovery Master Order No. 90 and the MGA Parties' Objections.

1  Skadden and instructed Skadden to explain the basis for the non-production of the
2  O'Connor-Larian e-mail prior to the Phase 1 trial.  Skadden submitted a response for Judge
3  Larson's *in camera* review, and an Order to Show Cause hearing followed.  At that hearing,
4  Judge Larson discharged the Order to Show Cause.  Judge Larson also rejected Mattel's request
5  for a disclosure of Skadden's in camera submission, despite Mattel's suggestion that disclosure
6  would facilitate the enlightenment contemplated by Socrates and Glaucon in *The Republic*.
7           On September 11, 2009, Mattel propounded the RFAs at issue upon MGA and
8  Larian separately.  In sum, the RFAs ask MGA and Larian to admit that:
9           (1)     they did or did not withhold the O'Connor-Larian e-mail prior to the Phase
10                  1 trial;
11          (2)     they did or did not know the O'Connor-Larian e-mail was privileged prior
12                  to the Phase 1 trial;
13          (3)     the O'Connor-Larian email was or was not withheld on privilege and/or
14                  work product grounds;
15          (4)     the O'Connor-Larian email is or is not protected by the attorney-client
16                  privilege and/or work product doctrine;
17          (5)     the O'Connor-Larian email was never protected by the attorney-client
18                  privilege and/or work product doctrine;
19          (6)     they knew the O'Connor-Larian email was never protected by the
20                  attorney-client privilege and/or work product doctrine;
21          (7)     there was no basis for withholding the O'Connor-Larian email on grounds
22                  of attorney-client privilege and/or work product doctrine;
23          (8)     the O'Connor-Larian email was withheld because it reflects legal advice;
24          (9)     they waived any attorney-client privilege and/or work product protection by
25                  producing the O'Connor-Larian email;
26          (10)    the O'Connor-Larian email does or does not reflect legal advice;
27          (11)    they stated that the O'Connor-Larian email did or did not reflect legal
28                  advice;

        (12)    they believed and/or knew that the O'Connor-Larian email did or did not reflect legal advice;

        (13)    all versions of the O'Connor-Larian e-mail have or have not been produced.

*See* Discovery Matter Order No. 90.

        Mattel argues that the subject matter of each and every RFA is relevant to its Phase 2 RICO cause of action, which *inter alia* alleges predicate acts of obstruction of justice and perjury. The MGA Parties object to the RFAs as irrelevant and improperly solicitous of legal conclusions, and in addition, contend that responding to some or all of the RFAs will impose upon the attorney-client privilege and/or work product doctrine.

        Discovery Matter Order No. 66 compelled the MGA Parties to issue responses to the RFAs and the MGA Parties' responses contained objections. Thereafter, Mattel moved to compel substantive responses to the RFAs and, in Order No. 90, the Discovery Master largely granted Mattel's motion.

    **II.**    **Discussion**

        The MGA Parties have appealed to this Court on the grounds that the RFAs seek to re-open an area foreclosed by Judge Larson's discharge of the Order to Show Cause. More specifically, the MGA Parties argue that Judge Larson already ruled that the decision to withhold the O'Connor-Larian e-mail was made by counsel for the MGA Parties, and not the MGA Parties themselves. Indeed, the MGA Parties argue, it would have been inconceivable for Larian and MGA to make fundamentally legal determinations about whether the e-mail did or did not reflect legal advice and therefore, whether the document was or was not privileged.

        Mattel responds that Judge Larson made no such finding at the Order to Show Cause hearing and that the discharge of the OSC demonstrates that Judge Larson held the parties, and not Skadden, to blame for the wrongful withholding of the O'Connor-Larian email. Mattel also argues that the MGA Parties can and should be held liable for counsel's decision under principles of agency.

        Though the Discovery Master addressed the issues of relevance, scope, and privilege in that sequence, the Court considers the reverse analysis more appropriate.

4

### A.     Attorney-Client Privilege and Work Product

The attorney-client privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677 (1981). The privilege protects a client's ability to "make a full disclosure" to their attorney(s) free from the "consequences or the apprehension of disclosure." *See id.* (citing *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125 (1888)); *see also id.* at 390 ("the giving of information to the lawyer to enable him to give sound and informed advice"). The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Id.* at 677.

In addition and separate from the attorney-client privilege, the work product doctrine guards against the disclosure of "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *See Upjohn*, 497 U.S. at 397-98.

There are four distinct privilege and/or work product concerns at issue here. First, to the extent the RFAs are directed to counsel, the elicitation of responsive testimony from the latter about prior beliefs and conclusions may implicate the work product doctrine. Second, to the extent the RFAs are directed to parties, the elicitation of beliefs or legal conclusions informed by counsel or formed in consultation with counsel may implicate the attorney-client privilege. Third, to the extent the RFAs seek present applications of law to fact as to whether the O'Connor-Larian e-mail is privileged, work product, or reflective of legal advice, they may implicate the attorney-client privilege by requiring disclosure of the fact that a particular communication was made between counsel and the client. Fourth, to the extent the RFAs seek the substance of what the MGA Parties or counsel "stated" as to whether the O'Connor-Larian e-mail was privileged, work product, or reflective of legal advice, they may implicate the attorney-client privilege.

Discovery Matter Order No. 90 rejected the MGA Parties' privilege concerns on four grounds: (1) "[b]ecause the [RFAs] are yes or no propositions, they do not require

disclosure of an attorney's work product or the details of his or her analysis"; (2) "[t]he type of information sought by the [RFAs] is the same as what a privilege log reveals"; (3) "the MGA Parties waived any privilege protecting the content of the Larian-O'Connor E-mail by voluntarily producing it"; and (4) the fact that the MGA Parties need to consult with counsel to complete the RFAs "does not make the responses privileged." *See* Order No. 90 at 26-27.[2]

However, the mere fact that an RFA seeks a "yes or no" answer does not automatically eliminate privilege concerns. Quite the contrary, when the provision of a response – even a "yes or no" response – requires the responding party to reveal, *not draw from*, the content of conversations with counsel, the unwarranted disclosure of privileged information is at hand. *See Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08 C 50078, 2010 WL 257253, at *4 (N.D. Ill. Jan. 22, 2010) (denying motion to compel when denial of certain requests for admission "may divulge communications otherwise protected by the attorney-client privilege"); *Chopra v. Townsend, Townsend and Crew LLP*, No. 07-cv-02447-MSK-MEH, 2008 WL 5101571, at *4 (D. Colo. 2008) (noting lack of dispute as to whether requests for admission seek disclosure of attorney-client communications); *Ohio Cas. Ins. Co. v. Firemen's Ins. Co. Of Washington, D.C.*, No. 5:07-CV-149-D, 2008 WL 413851, at *3 (E.D.N.C. Feb. 13, 2008) (denying motion to compel responses to requests for admission that implicated privileged communications); *Sorensen v. Black & Decker Corp.*, No. 06cv1572-BTM (CAB), 2007 WL 1976652, at *6 (same); *Cohen v. McDonnell Douglas Corp.*, No. 4:92CV1048 GFG (CDP), 1993 WL 835279, at *3 (E.D. Mo. July 12, 1993) (same); *Matter of Interco Inc.*, 137 B.R. 1008, 1010 (E.D. Mo. 1992) (same). Requests for admission by definition solicit a "yes or no" response, and the Discovery Master's analysis would exclude from the protections of the privilege any response to an RFA.

---

[2] With the exception of an unavailing argument about waiver, addressed *infra*, Mattel parrots many of the Discovery Master's arguments. Thus, while the Court declines to address Mattel's briefing with specificity, the embedded review of Order No. 90 is sufficient to dispose of Mattel's concerns.

6

Nor do the RFAs request information of the variety found on a privilege log.[3] Fed. R. Civ. P. 26(b)(5) provides that a privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." As an initial matter, the plain language of many of the RFAs requires the disclosure of information not ordinarily included on a privilege log. *See* Order No. 90 at 9:3-18; 9:25-10:8, 12:6-13:6, 13:21-16:24. Second, the RFAs at issue pervert the purpose of a privilege log, which is to allow opposing counsel and the Court to assess the merit of the privilege designation. *See* Fed. R. Civ. P. 26(b)(5). Indeed, it is unclear how the MGA Parties' prior belief about the merit of the privilege designation is relevant to whether the document is actually privileged, nor does a privilege log ordinarily require the withholding party to reference representations made to counsel in preparing the privilege log. *See Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) (listing information found on privilege log). Third, to the extent that the information is in fact reflective of the information already found on a privilege log, the RFAs are duplicative and do not require a response. *See* Fed. R. Civ. P. 26(b)(2) (providing that discovery may be limited if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive").

Moreover, the uniform application of the Discovery Master's waiver analysis would permit the issuance of such RFAs with respect to *every* document produced by any party in any lawsuit. Such a task would result in infinite and needless burden to litigants. To the extent that the Discovery Master relied upon the document's prior listing on a privilege log sufficient to render it privileged, it is the province of the Court and not the parties to make determinations as to privilege. Finally, *even if there was a waiver*, the waiver extends to the "subject matter" of the disclosed communications – *i.e.*, the birth of Bratz – and not to

---

[3] The MGA Parties reach this conclusion on the grounds that "the attorney's decision" will be placed before the jury, but this is a non sequitur. These concerns are better directed to whether the RFAs require the disclosure of privileged information. However, privilege logs frequently reveal information about attorney-client contact.

communications *about* the communications. *Weil v. Investment/Indicators, Rsrch & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the subject"). At issue here – and indeed, the subject of the RFAs – is whether the O'Connor-Larian communication is privileged. To hold that the MGA Parties have waived any privilege with respect to the decision-making process involved in making a privilege designation ignores clear precedent and contradicts Judge Larson's denial of Mattel's request to review the contents of the *in camera* document produced by Skadden pursuant to the Order to Show Cause. *See Transamerica Computer Co. v. IBM*, 573 F.2d 646, 651 (9th Cir. 1978) ("[A] disclosure of confidential material constitutes a waiver of the attorney-client privilege only if it is voluntary and not compelled").

Finally, the Discovery Master's reference to the permissibility of requests for admission that elicit the application of law to fact is accurate, but also inapposite for three reasons.[4]

**First**, the point is not that counsel is involved in the provision of responses, but

---

[4] Admittedly, the Discovery Master's argument properly responds to the MGA Parties' confused briefing on this issue. *See* Objections at 11-12 (focusing on the fact that responses to RFAs must be issued at direction of counsel). Almost any discovery response – whether purely factual or the application of law to fact – requires counsel's input. The MGA Parties attempt to distinguish ordinary requests for admission that require application of law to fact from these RFAs on the grounds that "the ***only*** source of the information, the ***only*** basis for any admission or denial, is the attorney's work product and the privileged communications between counsel and client." *See id.* at 12:15-16 (emphasis added). This is no distinction at all. First, applications of law to fact are not permissible only when the client's input is solicited in the preparation of a response – such a requirement is unrealistic and unenforceable. Second, *pace* MGA, their counsel's determination of whether a document is privileged requires no more rigor and legal expertise than an attorney's determination of whether a patent is valid. *See* Opposition at 12. Even if the MGA Parties' argument is construed to mean that a request for admission is improper when counsel would have to both supply the facts and the application of law to facts, that is neither accurate – many law to fact requests for admission require significant prior fact-finding by counsel – nor applicable – the context of the communication is likely a fact the client provides the attorney, and not vice versa.

8

that the content of those responses encompasses privileged attorney-client communications. For example, RFA No. 21 to MGA asks the MGA Parties to "[a]dmit that MGA stated, prior to August 21, 2009, that the portion of the document attached hereto as Exhibit 1 containing the email exchange between Isaac Larian and Victor O'Connor reflects legal advice." *See* Order No. 90 at 11:1-4. The RFA clearly contemplates statements made to counsel – in fact, that **may be** the only interpretation of the RFA that preserves its relevance, and nonetheless ensuring that it is not duplicative of the information available on a privilege log.[5]

**Second**, if *arguendo*, O'Connor's e-mail conveyed privileged legal advice to Larian, then admitting that the e-mail is privileged, work product, or reflective of legal advice results in the disclosure of the privileged nature of a communication. There has been some disagreement between the parties as to whether specific inquiry into the fact of a communication between counsel and the client implicates the privilege. *See* Order Granting in Part and Denying in Part Motion to Compel Continued Deposition of Isaac Larian at 4 n.1. The issue here is somewhat distinguishable but appeals to a related principle: does the privilege attach not just to the content of the communication, but does a separate privilege attach to the fact that it is a privileged communication? Unlike a privilege log, where the harm resulting from disclosure of the fact of the communication is minimized by the non-disclosure of the content, the danger appears to be greater in this case, as the disclosure of content has already occurred. In other words, the Court's concern is that the disclosure of content is only rendered meaningful by the disclosure of the associated fact that the content is a privileged communication. [The parties are instructed to be prepared to argue this issue at the March 4, 2010 hearing and to consider the collateral issue of privilege waiver.]

**Third**, a majority of the RFAs require very little "application" at all; rather, they require disclosure of the product of the ***prior*** application (if any) of law to fact. *See, e.g.*, Order No. 90 at 10:7-8 ("Admit that MGA knew the document attached hereto as Exhibit 1 never was

---

[5] The Discovery Master was not presented with argument concerning the crime-fraud exception, nor does the briefing before this Court address the exception.

protected by attorney-client privilege."). To the extent that this RFA exceeds the information available from the designation of the document as privileged on the MGA Parties' previous privilege log, it indisputably seeks attorney work product. *See Upjohn*, 449 U.S. at 397-98 (noting that work product doctrine extends to "written statements, private memoranda and ***personal recollections*** prepared or formed by an adverse party's counsel in the course of his legal duties") (emphasis added) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385 (1947)). Mattel itself concedes in two ways that the RFAs go to the beliefs formed by the MGA Parties' former counsel: (1) the Definitions that introduce the RFAs include "attorneys" within the scope of the responding party; and (2) Mattel's briefing relies upon a legally correct theory of agency in which the client is liable for the acts of the attorney.[6]

       Thus, what appears to be a semantic distinction – between an RFA that properly asks about whether a document is privileged and an RFA that improperly asks about **belief** as to whether a document is privileged – should be considered against the broader purpose of a request for admission, which is "to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981) (citing *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir. 1978)). Many of the RFAs at issue speak to underlying issues themselves privileged, unlike

---

[6] Ruile 26(b)(3) permits the discovery of non-opinion work product "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3); *see Upjohn*, 449 U.S. at 401. In addition, "opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling." *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992); *see also Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 932 (N.D. Cal. 1976) (compelling production of opinion work product when content of attorney's mental impressions was at issue – and was made at issue by party opposing discovery) (citing 4 J. Moore, Federal Practice P26.64(4), at 26-447 (2d ed. 1975) ("[W]hen the activities of counsel are inquired into ***because they are at issue in the action before the court***, there is cause for production of documents that deal with such activities, though they are 'work product.'"). The parties should prepare to argue at the March 4, 2010 hearing whether this showing of need has been satisfied.

a more commonplace request for admission.  Contrast, for example, a request for admission that reads "you acted negligently," with the following requests for admission: "you and your attorney believed you acted negligently" or "you stated to your counsel that you acted negligently". Responding to the latter requests for admission requires disclosure **both** of a belief formed in consultation with counsel **and** of the fact that a particular belief was formed in consultation with counsel.  While some courts have permitted such an inquiry when reliance of counsel is at issue, *see, e.g.*, *Sayre Enters., Inc. v. Allstate Ins. Co.*, No. CIV 506CV00036, 2006 WL 3613286, at *3 (W.D. Va. Dec. 11, 2006) (compelling response to requests for admission that inquired into whether insurer's decision to deny defense was based on advice of counsel), this Court considers such an approach an improper run-around the application of the crime fraud exception in this instance.

        The prior discussion is sufficient to encompass the RFAs that address the beliefs and conclusions of prior counsel, statements by the MGA Parties to prior counsel, and the MGA Parties present application of law to fact.  Those RFAs that address the MGA Parties' prior beliefs, formed independent of counsel's input, remain. On this issue, the MGA Parties appear to be in a bind.  Either the MGA Parties had no independent *or* preexisting belief as to any of these issues, and a simple denial would be sufficient, or they did and the later communication of that belief to counsel is insufficient for the privilege to attach. *See Upjohn*, 449 U.S. at 389 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]").

        Accordingly, the Court [SUSTAINS IN PART AND OVERRULES IN PART] the Objections to Order No. 90 on privilege grounds. [The parties should prepare to discuss the following issues at the March 4, 2010 hearing:

    1.    Can all RFAs directed to the MGA Parties (and not counsel) be constrained to include only those legal conclusions formed independent of counsel's advice?

    2.    To the extent that the RFAs are directed to the MGA Parties and seek prior legal conclusions formed in conjunction with counsel, does the crime fraud

exception apply?

3. To the extent that the RFAs are directed to the content of statements made to counsel, does the crime fraud exception apply?[7]

4. To the extent that the RFAs are directed to legal conclusions formed solely by former counsel, does either: (a) a showing of need pursuant to *Holmgren*; or (b) an exception to the work product doctrine apply?

5. To the extent that the RFAs are directed to present applications of law to fact about whether the O'Connor-Larian document is, or is not, privileged, work product, and/or reflective of a legal conclusion, does the attorney-client privilege extend to protect the ***fact*** of a communication being privileged and not just the content of that communication?

6. On what grounds can any assertion of privilege or work product doctrine apply to the remaining RFAs – *e.g.*, whether all versions of the O'Connor-Larian e-mail have been produced.]

### B. Provision of Legal Opinion

The MGA Parties further object to the RFAs on the grounds that they seek improper legal opinion. As noted, RFAs may seek responses that apply law to facts. *See Astellas Pharma, Inc. v. Impax Labs., Inc.*, No. C 08-3466 JW (RS), 2009 WL 2392166, at *3 (N.D. Cal. Aug. 9, 2009). Only a small sub-set of the RFAs seek the application of law to fact, and those that do are not improper under Rule 36..

### C. Relevance

The Discovery Master held that the RFAs at issue are relevant in light of the following allegation in Mattel's Third Amended Answer and Counterclaims:

> On information and belief, Larian and MGA have . . . destroyed,

---

[7] The MGA Parties should prepare for an *in camera* hearing as to the application of the crime fraud exception, as is appropriate in such circumstances. *United States v. de la Jara*, 973 F.2d 746, 748 (9th Cir. 1992) (citing *United States v. Zolin*, 491 U.S. 554, 574-75, 109 S.Ct. 2619 (1989)).

1         altered, fabricated and back-dated documents and engaged in other

2         acts of spoliation to conceal the existence, nature and breadth of their

3         wrongful conduct.

4 . . .

5         On information and belief, Larian and MGA have also conspired to

6         commit perjury and engaged in other ats of obstruction in connection

7         with MGA's theft of Mattel's property and Mattel's claims relating

8         thereto.

9 *See* TAAC ¶¶ 103 & 104.[8]

10         The vast majority of the RFAs are relevant to these claims for reasons articulated

11 by the Discovery Master. In addition, the Court rejects outright the MGA Parties' reliance on

12 Judge Larson's purported conclusion that the decision to withhold the O'Connor-Larian e-mail

13 was made by former counsel and not the parties. First, Mattel is correct that a party may be held

14 liable for the acts of its attorney(s) under principles of agency. *See Newman v. Checkrite Calif.,*

15 *Inc.*, 912 F. Supp. 1354 (E.D. Cal. 1995). Second, at the *in camera* Order to Show Cause

16 hearing, Judge Larson made no finding as to the decision-making process that preceded the

17 privilege designation – indeed, he declined to do so in light of the possibility that in so

---

[8] The Objections declare that "facts concerning a discovery dispute are not 'material facts' that will be at issue in trial." *See* Objections at 11:6-7. But the authority cited by the MGA Parties – *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) – does not so hold. First, in *Quaker*, the claimed discovery abuse was invoked in an effort to obtain an adverse inference against the non-disclosing party at trial unlike here, where the non-disclosure is a predicate act to a cause of action in the operative pleading. *See id.* Second, even if *Quaker State* implicitly stands for the proposition that conduct during trial is not a predicate act for a RICO cause of action, the holding in that case did not categorically preclude inquiry into discovery abuse. *See id.* (citing 31A C.J.S. Evidence § 156(2); 29 Am. Jur. 2d *Evidence* § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."). The determination of "intent," "fraud," and a "desire to suppress the truth" is not unlike the analysis necessary to reach a finding as to obstruction of justice and perjury.

communicating he would disclose the privileged contents of Skadden's *in camera* submission. Third, even if Judge Larson were to have made a factual finding as to Skadden's conduct, the Seventh Amendment stands in the way of the MGA Parties' attempt to estop further factual inquiry. *See Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir. 1997) ("where there is a genuine issue of fact on a substantive issue . . . ordinarily the controlling principles of summary judgment and, ***if there is a jury demand and a material issue of fact***, the Seventh Amendment, require submission to a jury") (emphasis added).

### D. Request to Defer Ruling

The MGA Parties conclude with a request that the Court defer a ruling on their Objections until after their appeal of the Phase 1 verdict before the Ninth Circuit. This argument is made on the grounds that a hypothetical reversal would have rendered the O'Connor-Larian e-mail immaterial to the Phase 1 verdict. But that does not render the e-mail irrelevant, and in any event, the document was not withheld on relevance grounds. Thus, it is unclear how Mattel's obstruction of justice predicate and/or its perjury predicate are implicated by the outcome of the Phase 1 litigation.

### III. Disposition

For the foregoing reasons, the Court [SUSTAINS IN PART AND OVERRULES IN PART] the Objections.

IT IS SO ORDERED.

DATED: March 4, 2010

_____
DAVID O. CARTER
United States District Judge