UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., <br>           Plaintiff(s), <br>     v. <br> MGA ENTERTAINMENT, INC., <br>           Defendant(s). | CASE NO. SACV 04-9049 DOC (RNBx) <br><br> **[TENTATIVE] O R D E R SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS TO THE DISCOVERY MASTER'S PRIVILEGE RULINGS ON QUESTIONS REGARDING MATTEL'S COPYRIGHT REGISTRATIONS DURING THE DEPOSITION OF MICHAEL MOORE** |

Before the Court is Mattel, Inc. ("Mattel")'s Objections to the Discovery Master's Privilege Rulings on Questions Regarding Mattel's Copyright Registrations During the Deposition of Michael Moore (the "Objections"). After considering the moving, opposing, and replying papers, [as well as the parties' oral argument,] the Court [SUSTAINS IN PART AND OVERRULES IN PART] the Objections.

**I.    Background**

        In October 2006, Mattel worked with its outside counsel, the law firm of Quinn Emanuel Urquhart Oliver & Hedges ("outside counsel") to register with the Copyright Office "a

series of Bratz drawings that [Carter] Bryant created while he was a Mattel employee." *See* Objections at 1:26-2:1.  According to Mattel, the decision to register the drawings and ancillary decisions regarding the content of the copyright applications, "were made by outside litigation counsel ***solely for purposes of the ongoing litigation with MGA in this case.***" *Id.* at 2:4-5 (emphasis added).  Moore effectuated the advice received from outside counsel, completed the copyright applications, and submitted the same to the Copyright Office.

At issue is the fact that boxes 6(a) and 6(b) of the 2006 copyright registrations – which require the applicant to "list any preexisting materials and what new material has been added if the registered work is a 'derivative work'" – were left blank by Mattel. *See id.* at 2:13-15.  Moore testified as to the fact that the boxes were left blank, but was instructed not to answer the following questions on attorney-client privilege grounds:

(1) "Is Mattel claiming that this group of drawings upon which it obtained a registration, Exhibit 13875, is a derivative work?"

(2) "Mr. Moore, Mattel is not claiming that the work group drawing of dolls upon which it obtained a registration in Exhibit 13875 is a derivative work or compilation; isn't that correct?"

(3) "In filing the application for registration set forth in Exhibit 13875, was Mattel claiming that the group drawing of dolls identified therein was a derivative work?"

(4) "Mr. Moore in fact Mattel did not claim in its application that became the registration of Exhibit 13875 that the group drawing of dolls identified therein was a derivative work?"

(5) "At the time that Mattel filed its copyright application in Exhibit 13875, was the group drawing of dolls identified therein based on any pre-existing work?"

(6) "At the time Mattel filed Exhibit 13875 with the Copyright Office did it believe at [sic] the group drawing of dolls identified in that application was based on any pre-existing work?"

2

|   |      |   |
|---|------|---|
| 1 | (7)  | "At the time Mattel filed its copyright application in Exhibit 13875, did the group drawing of dolls identified in that application incorporate any pre-existing material?" |
| 4 | (8)  | "At the time Mattel filed its copyright application in Exhibit 13875, did it believe that the group drawing of dolls identified in that application incorporated any pre-existing material?" |
| 7 | (9)  | "Is thank you [sic] group drawing of dolls identified in Mattel's copyright application, Exhibit 13875 based on the Toon Teens creation of Mattel's employee Lily Martinez?" |
| 10 | (10) | "At the time Mattel filed its application for copyright registration of the group drawings of dolls set forth in Exhibit 13875, did it believe that the work identified therein was based on in whole or in part based on the work of Mattel's employee Lily Martinez referred to as Toon Teens?" |
| 14 | (11) | "At the time that Mattel filed its copyright application for group drawing of dolls identified in Exhibit 13875, did it believe that that group drawing of dolls incorporated any pre-existing material from the work Toon Teens work of Mattel's employee Lily Martinez?" |
| 18 | (12) | "In filing the copyright application marked as part of Exhibit 13875 at this time mode knowly [sic] fail to identify Toon Teens as pre-existing material upon which the group drawing of dolls identified in Exhibit 13875 was based?" |
| 22 | (13) | "In filing with the copyright office its application set forth in Exhibit 13875, did Mattel deliberately choose not to identify Toon Teens as pre-existing material upon which the group drawing of dolls set forth therein was based?" |
| 26 | (14) | "In filing the copyright application marked as part of Exhibit 13875, did Mattel know knowingly fail to identify the group drawing of dolls identified therein as based on a pre-existing work in the form of Lily Martinez's Toon |

3

Teens?"

(15) "In filing the copyright application marked as part of Exhibit 13875, did Mattel deliberately choose not to identify the group drawing of dolls set forth therein as based on pre-existing work in the form of Lily Martinez's Toon Teens?"

The Discovery Master overruled Mattel's objections on the grounds that the underlying copyright registration was a public filing, and the parties agreed that Moore would re-appear for deposition after the Court rules on the instant Objections.

**II.   Discussion**

    **A.   Foundation**

Mattel argues that the MGA Parties impermissibly requested that a 30(b)(1) witness testifying in his individual capacity respond to questions about conclusions reached by Mattel, the entity.  The Court need not reach this issue until trial because Rule 30(c)(2) permits counsel to instruct a deponent not to respond "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).  Mattel's instruction to Moore was therefore improper to the extent that it relied upon a lack of foundation.  The Court nonetheless rejects the MGA Parties' request that the Court sanction Mattel for an improper instruction not to answer – it is clear that the instruction was tied up with the assertion of privilege, which is a proper basis for an instruction, and it is unclear whether counsel would have similarly instructed Moore absent a claim of privilege.

    **B.   Privilege**

The instant issue bears remarkable similarity to the parties' dispute concerning Discovery Matter Order No. 90 and certain requests for admission propounded by Mattel in an effort to elicit information about the MGA Parties' belief with regard to the designation of a document as privileged.  More specifically, Mattel asked the MGA Parties to admit that "they believed" a particular document was privileged, qualified as work-product, and/or reflected legal advice.  The MGA Parties objected on the grounds that their belief, if any, was imbued with advice received from outside counsel and any response would therefore result in the disclosure

4

of the privileged communication. That dispute is still pending and will be argued at March 4, 2010 hearing before this Court. However, this Court recognized that the simple fact that advice of counsel informs a party's belief is insufficient to cloak that belief in the attorney-client privilege. *See* Tentative Order Sustaining in Part and Overruling in Part Objections to Discovery Matter Order No. 90.

The attorney-client privilege encourages "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677 (1981). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Id.* at 677.

Questions 1, 2, 3, 4, 5, 7, 8, 13 and 15 seek Moore's present opinion and/or testimony as to underlying facts, neither of which is protected by the privilege. *See Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385 (1947) ("either party may compel the other to disgorge whatever facts he has in his possession"); *see also Prot. Nat'l Ins. Co. v. Comm'w Ins. Co.*, 137 F.R.D. 267, 280 (D. Neb. 1989) ("There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel."). The remaining questions – 6, 8, 10, 11, and 14 – seek testimony as to Mattel's legal conclusions, which Mattel argues were informed by the provision of advice by outside counsel.

Mattel cites no authority for the proposition that the privilege attaches to ***independent*** conclusions that are informed by the advice of counsel. Nor have courts so ruled in similar circumstances. *See, e.g.*, *Am. Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, No. 06-607, 2007 WL 2823337, at *1 n.1 (W.D. Pa. Sept. 26, 2007) (noting lack of indicia of evidence that meeting notes were inspired by legal advice but generally describing potential abuses that would result if meeting notes could be withheld on grounds of privilege); *Case v. Unified School Dist. No. 223*, Civ. A. No. 94-2100-GTV, 1995 WL 477705, at *2 (D. Kan. Aug. 11, 1995) ("Discovery of a lay opinion, impression or conclusion formed independently, even after receiving legal advice, and which does not necessarily disclose the content of the attorney-client

communication, on the other hand, does not violate the privilege.").

The question therefore is whether the legal conclusions sought by this second group of questions were formed "independently" by Mattel. As an initial matter, Mattel bears the burden of proving the application of the privilege. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). Since the Discovery Master overruled Mattel's objections on other grounds, it is unclear whether Mattel showed that: (a) privileged attorney-client communications were issued with respect to the 2006 copyright registration and (b) Mattel formed no knowledge and intent as to the "derivative works" portion of the copyright registrations that was independent of advice provided by outside counsel. Should Mattel satisfy its burden, there is good reason for the privilege to attach: allowing unfettered access into a client's acquired beliefs as to litigation strategy would encourage a run-around the protections of the privilege and encourage apprehension instead of transparency between counsel and clients. The MGA Parties – and, indeed Mattel, in the parallel dispute concerning Order No. 90 – may seek the application of the crime-fraud exception, or may, in addition or in the alternative, argue that since the content of such communications and/or knowledge and intent are relevant to claims or affirmative defenses that cannot be adjudicated without disclosure. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1992)). But to hold that the scope of the privilege does not extend to beliefs about litigation related decisions that are, in their entirety, dictated by privileged communications, would ignore the purpose of the privilege.[1]

Accordingly, the Court [OVERRULES] Mattel's objections on attorney-client privilege grounds with respect to questions 1, 2, 3, 4, 5, 7, 9, 13, and 15 and [SUSTAINS IN PART AND OVERRULES IN PART] Mattel's objections on attorney-client privilege grounds

---

[1] Courts' treatment of 30(b)(6) witnesses who review work product and privileged documents in the course of their preparation is instructive. *See Prot. Nat'l Ins. Co. v. Comm'w Ins. Co.*, 137 F.R.D. 267, 278-82 (D. Neb. 1989) (holding that 30(b)(6) may testify as to facts learned from work product used in preparation but not as to content of attorneys' impressions); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 509 (W.D. La. 1988) (same).

with respect to questions 6, 8, 10, 11, and 14. [Mattel shall make a foundational showing as to privilege at the March 4, 2010 hearing.]

### C.  Work Product Doctrine

Mattel also invokes the work product doctrine, which protects "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *See Upjohn*, 497 U.S. at 397-98. More specifically, Mattel argues that Moore's responses to questions about the content of the copyright registration applications – including those responses formulated within the deposition – are protected "work product." The MGA Parties simply respond that the questions seek conclusions of fact.

The MGA Parties miss the point. The work product doctrine includes both opinion work product and non-opinion work product. Fed. R. Civ. P. 26(b)(3) (permitting disclosure "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means"); *see Upjohn*, 449 U.S. at 401. In addition, "opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling." *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992); *see also Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 932 (N.D. Cal. 1976) (compelling production of opinion work product when content of attorney's mental impressions was at issue – and was made at issue by party opposing discovery) (citing 4 J. Moore, Federal Practice P26.64(4), at 26-447 (2d ed. 1975) ("[W]hen the activities of counsel are inquired into ***because they are at issue in the action before the court***, there is cause for production of documents that deal with such activities, though they are 'work product.'") (emphasis added).

The questions directed to Moore request non-opinion work product, which includes "purely factual information." *See Schmidt v. Levi Strauss & Co.*, No. C04-01026 RMW (HRL), 2007 WL 628660, at *5 (N.D. Cal. Feb. 28, 2007) (citing *Holmgren*, 976 F.2d at 577). It is therefore not surprising that courts have required a substantial showing of need even prior to a deposition of an in-house counsel, something Mattel did not request here. *See Shelton v. Am.*

7

1 *Motors Corp.*, 805 F.2d 1323 (9th Cir. 1986); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d
2 1095, 1112 (10th Cir. 2001); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65,
3 71-72 (rejecting unyielding adherence to *Shelton* in favor of flexible approach which balances all
4 applicable factors, including but not limited to "need to depose the lawyer, the lawyer's role in
5 connection with the matter on which discovery is sought and in relation to the pending litigation,
6 the risk of encountering privilege and work-product issues, and the extent of discovery already
7 conducted"). In this case, a showing of need is likely satisfied – Moore possesses unique
8 knowledge about the business decisions made by Mattel during the time period at issue in this
9 lawsuit – but [the parties are instructed to prepare to argue the issue at the March 4 hearing.]

Accordingly, the Court [SUSTAINS IN PART AND OVERRULES IN PART the Objections to the extent they are based on the work product doctrine and directs the parties to submit additional argument at the March 4, 2010 hearing with respect to the need for disclosure.]

**III.    Disposition**

For the foregoing reasons, the Court [SUSTAINS IN PART AND OVERRULES IN PART the Objections.

IT IS SO ORDERED.

DATED: March 4, 2010

_____
DAVID O. CARTER
United States District Judge