QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL DOCUMENTS FROM INTERNATIONAL CORPORATE ADVISORS AND MARIA BASHAW**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:   TBD<br>Pre-trial Conference:   TBD<br>Trial Date:   TBD |

**Preliminary Statement**

Mattel's subpoenas to International Corporate Advisors and its principal Maria Bashaw (collectively, "ICA") seek relevant information about who Lexington actually is, Lexington's involvement in the Wachovia debt acquisition and Lexington's relationship to the parties. ICA has refused to comply. In opposing Mattel's motion, ICA argues -- inconsistently -- that it has no documents and that it would be unduly burdensome to produce those non-existent documents.

ICA performed business services for Lexington from their Southern California offices. It therefore must possess documents showing, at the least, who hired it and who paid it. And, even if ICA returned Lexington's own documents to Lexington as ICA claims, ICA must have some record showing where the documents went, to whom they were sent and when.

This shell game must come to an end. Mattel is entitled to discovery about who is behind Lexington and who financed this debt acquisition. Given the prospect that Mr. Samhoui is an affirmative fabrication made by MGA witnesses under oath, this evidence is relevant both to Mattel's claims and to the basic integrity of this Court's proceedings. The Court should order ICA to produce all responsive, non-privileged documents and provide a privilege log without further delay.

**Argument**

**I.   MATTEL'S REQUESTS FOR DOCUMENTS ARE PROPERLY TAILORED TO OBTAIN RELEVANT INFORMATION**

**A.   Mattel's Document Requests are Relevant**

ICA asserts that the discovery sought by Mattel is irrelevant. The argument is without merit. As the Court knows, Mattel has been pursing basic discovery into the sources of funding for the Omni members' purchase of the Wachovia debt since it learned of Omni's existence last year. With the MGA Parties' assent and through counsel who is paid by MGA, the Omni Parties initially denied that Larian provided *any* of the approximately $109 million in funding for that acquisition. Mattel later

discovered (from third-party discovery) that far from being uninvolved, Isaac Larian directly provided at least $60 million of that financing.

That leaves another $49 million purportedly contributed by Omni members to account for. Echoing their prior (false) denials, the MGA Parties and the Omni Parties continue to flatly deny that Larian was behind any of this remaining financing, notwithstanding e-mails and testimony evidencing Larian's obligation to repay Mr. Nazarian, Mr. Gozini and others for their contributions. And neither Omni nor MGA has produced to Mattel a single page showing where Leon Neman, an Omni member and Larian relative, obtained his supposed $10 million contribution.[1] Mr. Neman swore under oath that it came from Lexington and Mr. Samhoui. Yet, not one page of documentary evidence produced to Mattel mentions "Mr. Samhoui," identifies any principals in Lexington or shows Lexington as the actual source of this $10 million in funds.

After Lexington failed to appear for its 30(b)(6) deposition, Mattel brought a proceeding in the High Court of Justice in London to obtain discovery from OfficeFront, the London mail drop that Lexington identified as its business address in its UCC filings with the State of California.[2] The documents produced by OfficeFront in the U.K. proceeding led back to Southern California — and to ICA. According to these documents, ICA set up, maintained and made payments for Lexington's London mail drop, and ICA did so from its Southern California offices. For example, a June 4, 2008 fax cover page from ICA to OfficeFront is entitled "Payment For Lexington Financial Ltd".[3] OfficeFront documents also show that mail and other communications for Lexington to the London mail drop address were forwarded to ICA's Southern California office and that ICA was invoiced for

---

[1] Nor apparently did they provide that discovery to the Court *in camera* as required by this Court's February 12, 2010 Order, Docket No. 7497.
[2] See Declaration of Michael T. Zeller, dated March 7, 2010, Exh. 1.
[3] See Zeller Dec., ¶ 3.

OfficeFront's services for Lexington.[4]  Further, refuting ICA's present claims to have ***no*** responsive documents other than Mattel's subpoenas themselves (Opp. at 6:9-19), OfficeFront produced ***an email from Ms. Bashaw*** dated January 13, 2010 in which she responded to a notice about Mattel's U.K. proceedings by stating:  "***We [ICA] are working with the principal of Lexington*** to address this matter."[5]

Mattel's subpoenas seek relevant information from ICA about Lexington's formation, its management and its relationship to Larian and Larian's associates.  The requests call for information about the source of funds for the Wachovia debt purchase, including the alleged contributions from the mysterious "Mr. Samhoui."  The requests also call for information about spoliation and concealment of evidence relating to such matters.  This information is directly relevant to Mattel's RICO claims, including to Mattel's claims that the MGA Parties and Omni Parties have engaged in acts of obstruction and perjury.  Furthermore, it is directly relevant to the credibility of key MGA witnesses, who swore under oath that the $10 million in funding from Lexington came not from Larian, but from Mr. Samhoui.[6]

The Court has made clear that information related to Lexington, Mr. Samhoui and the ultimate source of funds for the acquisition of the Wachovia debt is directly relevant in Phase 2.[7]  Indeed, the Court has observed that it was "starting to form the impression that Mr. Samhoui doesn't exist" and that it may "issue an adverse inference that's going to be very harmful to MGA."[8]  Likewise, the Discovery Master has ruled that similar requests for information by Mattel are relevant to

---

[4] See Zeller Dec., ¶ 4.
[5] See Zeller Dec., Exh. 2.
[6] See Paulsen v. Case Corp., 168 F.R.D. 285, 287-88 (C.D. Cal. 1996) (evidence relevant to the credibility is discoverable); Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995) (same); U.S. v. City of Torrance, 164 F.R.D. 493, 495 (C.D. Cal. 1995) (same).
[7] See Order Regarding Discovery Matters, dated January 26, 2010, Docket No. 7434, at 2-5.
[8] Hearing Tr., dated January 7, 2010, at 7:24-8:7.

Phase 2. For example, in Order No. 27, the Discovery Master found that requests to Vision Capital and OmniNet for "all documents referring or relating to [] the source of funding for Lexington Financial," among other requests, were relevant.[9]

ICA's unexplained relevance arguments are without merit and provide no basis for its refusals to produce discovery.

### B. The Subpoenaed Parties Fail to Substantiate Any Privilege Claim

ICA asserts privilege as a basis for refusing to produce documents. Although it bears the burden of proving privilege,[10] ICA fails to explain why responsive documents are privileged. In fact, ICA fails to show that its communications with Lexington or anyone else could be privileged at all. The documents produced by OfficeFront show that they were acting as business agents of Lexington, not as legal counsel, as ICA itself also concedes.[11]

Further, even if some documents are privileged (which is unproven), this does not entitle ICA to refuse to produce documents altogether. Rather, the appropriate response is to withhold privileged documents and provide a privilege log.

---

[9] See Discovery Matter Order No. 27, dated May 6, 2009 at 16 (Docket No. 5365, at 16. ICA's off-handed comment that it provided services to form Lexington in 2006, "well before any transactions at issue in this case transpired" (Opp. at 2:9), is both puzzling and misses the point. In fact, transactions at issue in this case go back to 2006 and earlier. Nor would it matter to Mattel's claims if it were otherwise. One reason for this discovery is to determine whether the testimony that the money came from Mr. Samhoui is an affirmative fabrication and therefore constitute obstruction of justice and perjury. Any evidence that Lexington is or ever has been the vehicle of anyone other than Mr. Samhoui would tend to bear on that issue.

[10] Order of March 5, 2010, at 4 ("The party invoking the privilege bears the burden of establishing its applicability."). See also Mancini v. Ins. Corp., 2009 WL 1765295, at *1 (S.D. Cal. June 18, 2009) (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)); United States v. Munoz, 2333 F.3d 1117, 1128 (9th Cir. 2000) (burden is on party asserting privilege to establish all of its elements).

[11] Opp. at 2:10-11 (stating that "ICA was hired in its capacity as a business consultancy company to register Lexington in Nevis and other related business matters."); id. at 2:16-17 (stating that Ms. Bashaw "has a business relationship" with another Lexington agent, Trust Services (Nevis) Ltd.).

## II. ICA'S CLAIM TO POSSESS NO DOCUMENTS IS WITHOUT MERIT AND INCONSISTENT WITH ITS BURDEN ARGUMENTS

ICA simultaneously claims that "there are no documents to be produced" and complains of the burden of production. Not only are these contentions flatly inconsistent with one another, but each is groundless.

First, it is contrary to the evidence -- and implausible -- that ICA has no responsive documents. ICA has performed work for Lexington, as shown by the OfficeFront production and conceded by ICA.[12] ICA therefore must possess some documents showing, at the very least, who hired ICA and who paid ICA. This must include, also at the very least, ICA's own internal records, such as invoices and payment records, reflecting payments for the services ICA rendered for Lexington and the monies ICA paid to OfficeFront and others such as Trust Service (Nevis) Ltd. on behalf of Lexington. Indeed, Mattel made this point in its motion (Motion at 3 n. 10), and ICA does not deny it. Even if ICA returned Lexington's own documents to Lexington, as ICA claims (Opp. at 6:13-14), ICA must have records showing where the Lexington documents went and when.

Particularly troubling on this score is the email produced by OfficeFront noted above -- an email *from Ms. Bashaw* dated January 13, 2010. From her ICA email address and after receiving notice of Mattel's U.K. proceedings to obtain discovery from OfficeFront, Ms. Bashaw wrote: "We [ICA] are working with the

---

[12] E.g., Opp. at 2:10-11 (stating that "ICA was hired in its capacity as a business consultancy company to register Lexington in Nevis and other related business matters."). ICA nevertheless attempts to suggest (Opp. at 11-22) that Mattel's basis for serving the subpoenas was a call that Ms. Bashaw made to Mattel's counsel. Ms. Bashaw spoke to Dylan Proctor (not Mike Zeller as she claims) and stated in advance of the 30(b)(6) deposition that Lexington would be filing a protective order motion. No such motion was ever forthcoming. That event, however, was not what prompted the subpoenas. Mattel served the subpoenas because OfficeFront's documents from the U.K. proceeding showed that ICA and Ms. Bashaw specifically were acting as business agents for Lexington in maintaining the London mail-drop that Lexington listed as its offices in its California UCC filings.

principal of Lexington to address this matter."  This email alone directly refutes ICA's present claims to have *no* documents other than Mattel's subpoenas.  The email -- which ICA must have but fails to mention -- is itself responsive.  The email also shows that ICA has been in recent contact with "the principal of Lexington," which in turn renders ICA's claim that Lexington is "no longer ICA's client" (Opp. 6:13-14) highly questionable and, if true now, a most recent development.  The email also suggests that any disappearance of Lexington's documents (Opp. at 6:14) -- which ICA necessarily admits once existed and were in its possession -- is also a very recent development.  Like the January 13, 2010 email that ICA failed to disclose, documents relating to these events are responsive to Mattel's subpoenas and may evidence further efforts to thwart these proceedings.

Second, ICA's repeated claims that the "burden" of producing documents "outweighs any possible benefit to Mattel" are entirely without merit.  Opp. at 9:1-11:5.  ICA provides no explanation, let alone proof, of how the requested discovery could be unduly burdensome.  Nowhere does it show or even suggest that the volume or nature of its supposedly non-existent documents would be burdensome to locate, review and produce.  Because ICA bears the burden of proving its burden claim, this failure is fatal to its argument.[13]  In any event, given the failure of the

---

[13] Order of July 9, 2009, at 4, Docket No. 5561 ("[T]he party resisting discovery has the burden of establishing that discovery should be denied."); <u>Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.</u>, 2006 WL 3149362, at *9 (D. Nev. 2006) ("Generalized and unsupported allegations of undue burden are not sufficient to prevent enforcement of a subpoena or to defeat a motion to compel production of documents."); <u>Cory v. Aztec Steel Bldg., Inc.</u>, 225 F.R.D. 667, 672 (D. Kan. 2005) ("In opposing discovery on the grounds of burdensomeness, a party has the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."); <u>Jackson v. Montgomery Ward & Co., Inc.</u>, 173 F.R.D. 524, 528-29 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.").

MGA Parties and the Omni Parties to produce to Mattel basic information about Lexington and Mr. Samhoui, discovery from ICA is critical and outweighs any burden claim.

### B. Nonparties Are Not Excused From Discovery

While ICA is not a party to the litigation, it is certainly not an innocent bystander or "unrelated," as it claims. As shown, and as ICA concedes, ICA has acted as Lexington's agent. And even as a nonparty, ICA is not excused from responding to Mattel's document subpoenas. Its own cases recognize that discovery rules apply to nonparties. See Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993) ("Discovery of persons not party to the litigation is contemplated by the Rules.").

Indeed, ICA exaggerates the degree to which nonparty status factors into the burden analysis. ICA cites Exxon Shipping Co. v. U.S. Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994), for the proposition that courts "afford non-parties special heightened protection against burdensome discovery." Opp. at 9. However, the cited reference in Exxon was specifically discussing the protections of Fed. R. Civ. P. 45(c)(3)(A)(ii), which permits a court to quash or modify a subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business." This provision clearly does not apply to ICA, which is based in Irvine.

Exxon also actually overruled the district court, which had wrongly decided that the government could instruct employees not to respond to subpoenas in cases in which the government was not a party. Id. at 780. Similarly, the other cases cited by ICA did not conclude that a nonparty would be unduly burdened primarily because of its status. Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 425 (Fed. Cir. 1993) (denying discovery on grounds that moving party failed to show "relevance and need for the information"); American Stndard Inc. v. Phizer Inc., 828 F.2d 734, 738 (Fed. Cir. 1987) (denying discovery on grounds that moving

Case 2:04-cv-09049-DOC-RNB   Document 7618   Filed 03/07/10   Page 9 of 11   Page ID
 #:258893

party sought competitor's trade secret information); <u>Solarex Corp. v. Arco Solar, Inc.</u>, 870 F.2d 642, 644 (Fed. Cir. 1989) (denying discovery on grounds that moving party's "speculative" request did not justify disclosure of confidential information). Rather, the cases cited by ICA make clear that a party cannot defeat a discovery request "on the sole ground that discovery was sought from a nonparty." <u>American Standard</u>, 828 F.2d at 739. ICA has failed to make any showing of undue burden and cannot rely on its bare nonparty status for its refusals to produce documents.

### III.  **MATTEL'S MOTION IS PROCEDURALLY PROPER.**

Mattel apologizes for burdening the Court with the history involved here, but ICA asserts procedural challenges to Mattel's motion that Mattel failed to meet and confer or to credit ICA's representations that the subpoenaed parties lack documents. Mattel served its subpoenas well over a month ago.[14] Both ICA and Ms. Bashaw objected that every request was burdensome and barred by privilege and refused to produce a single document.[15] Mattel sought to resolve the matter, explaining that the requested information was relevant and discoverable and that any privileged information could be withheld so long as it was properly logged.[16]

ICA did *not* say that it lacked documents either in its objections to Mattel's subpoena or during the meet and confer. Rather, Ms. Bashaw asserted during the meet and confer only that "[w]ith respect to International Corporate Advisors, LLC ('ICA'), I do not have sufficient information to respond to [Mattel's] statements or allegations" that had been made in Mattel's initial request to resolve the matter.[17]

---

[14] <u>See</u> Notice of Subpoena Issued to Maria M. Bashaw, Esq., dated January 25, 2010; Notice of Subpoena Issued to International Corporate Advisors, LLC, dated January 25, 2010.

[15] <u>See</u> Non-Party Maria M. Bashaw, Esq.'s Objections to Mattel, Inc.'s Subpoena to Produce Documents, dated February 8, 2010, Dkt. #7480; Non-Party International Corporate Advisors, LLC's Objections to Mattel, Inc.'s Subpoena to Produce Documents, dated February 8, 2010, Dkt. #7479.

[16] Email from Michael T. Zeller to Maria M. Bashaw, dated February 23, 2010.

[17] Email from M. Bashaw to M. Zeller dated Feb. 24, 2010.

00505.07975/3356615.2
-8-
REPLY ISO MATTEL, INC.'S MOTION TO COMPEL DOCUMENTS FROM ICA AND MARIA BASHAW

1  Mattel's follow-up inquiries regarding ICA went without a substantive response.[18]
2  For her part, Ms. Bashaw's objections did not claim she lacked responsive
3  documents either. To the contrary, like ICA, her objections claimed that producing
4  them would be too burdensome. During the meet and confer, Ms. Bashaw then
5  claimed that she individually lacked documents. Mattel thus proposed that she
6  amend her objections to so state.[19] In response, Ms. Bashaw said "I will reply to
7  your email in a separate email from my computer rather than my phone."[20] But she
8  did not respond further, and to this day, has not provided amended objections stating
9  that she has no responsive documents. That is for good reason. Ms. Bashaw's
10 January 13, 2010 email produced by OfficeFront alone shows that any such
11 statement would be false.

   Not only did Mattel attempt to resolve the matter before filing its motion, but
13 ICA does not claim that further meet and confer would have changed anything.
14 Even now, it refuses to produce *anything* and has not served or promised to serve
15 amended objections stating that no responsive documents exists.

   Also spurious are ICA's complaints about the briefing on this motion. ICA
17 had almost a week to file its opposition (not a day or two as it insinuates). Indeed,
18 after ICA's counsel initially stated that she would file the opposition within a day of
19 Mattel's filing, Mattel repeatedly attempted to set a briefing schedule with ICA's
20 counsel and offered her more time if she wanted or needed it, which ICA accepted.[21]

---

[18] Email from M. Zeller to M. Bashaw, dated Feb. 25, 2010 ("[P]lease clarify what you mean by the last paragraph. Obviously, ICA has an obligation to obtain information sufficient to respond to our subpoena and our meet and confer request. Are you saying ICA has no documents? If so, what happened to them and where did they go?").

[19] Email from M. Zeller to M. Bashaw, dated Feb. 25, 2010.

[20] Email from M. Bashaw to M. Zeller, dated Feb. 25, 2010.

[21] E.g., email exchanges between M. Zeller and M. Bashaw, dated Feb. 28, 2010 (ICA's counsel stating that ICA would file an opposition on February 28,

Mattel continued to offer more time if it was needed, but ICA simply stopped communicating.[22]  ICA's suggestions that it was denied time or otherwise denied any courtesy are false.[23]

### Conclusion

Mattel respectfully requests that its motion be granted and that the Court compel International Corporate Advisors and Maria Bashaw to produce all responsive documents and a privilege log identifying any withheld documents.

DATED:  March 7, 2010

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By  /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

Mattel offering to set a schedule and asking if ICA's counsel wanted more time and ICA's counsel stating that ICA would file the opposition on Tuesday, March 2.)

[22]  Email from M. Zeller to M. Bashaw, dated March 3, 2010.

[23]  ICA's other procedural challenge is even more misplaced. The Joint Stipulation process under Local Rule 37-1 does not apply here. See, e.g., Order No. 3 at 7 (Docket No. 4992).  Indeed, this Court has made clear that motions to compel in the first instance are to be filed as motions with the Court.  Likewise, ICA's requests for costs under Fed. R. Civ. P. 37(a)(5)(B) is baseless.  "On any motion to compel, even those that have been … fully denied, expenses may not be awarded if the position of the non-prevailing party was 'substantially justified.'" Masse v. Waddington, 2008 WL 4951048, at *1 (W.D. Wash. 2008).  Because Mattel has ample, and meritorious, grounds for moving to compel, ICA's request must be rejected.