QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S *EX PARTE* APPLICATION FOR AN ORDER TO SHOW CAUSE RE: OMNI 808'S FAILURE TO COMPLY WITH THE COURT'S FEBRUARY 12, 2010 ORDER;**<br><br>**DECLARATION OF B. DYLAN PROCTOR**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Local Rule 7-19 and the Court's inherent authority, Mattel, Inc. ("Mattel") hereby respectfully applies ex parte for an Order to Show Cause why Omni 808 Investors, LLC ("Omni 808") should not be sanctioned for its repeated failures to comply with its discovery obligations and with Court Orders.

Despite the clear requirements of the Court's February 12, 2010 Order, Omni 808 has refused to comply. Mattel respectfully requests that the Court: (1) enforce its prior Order and again compel compliance; (2) issue an Order to Show Cause regarding Omni 808's failure and refusal to comply with the Court's February 12 Order; (3) award coercive sanctions against Omni 808 in the amount of $5,000 for each day of continued non-compliance; and (4) award monetary sanctions against Omni 808 in the amount of $5,000, which represents a portion of the fees and costs incurred by Mattel in bringing this Ex Parte Application.

Pursuant to Local Rule 7-19, on March 8, 2010, Mattel's counsel gave notice of this Application and the relief being sought to counsel for Omni 808, Todd E. Gordinier and Peter N. Villar, Bingham McCutchen LLP, 600 Anton Boulevard, 18th Floor, Costa Mesa, CA 92626, telephone (714) 830-0600, and e-mail todd.gordinier@bingham.com and peter.villar@bingham.com. Counsel for Omni 808 did not respond with Omni 808's position.

This Application is based on the accompanying Memorandum of Points and Authorities, the accompanying declaration of B. Dylan Proctor, the records and files of this Court and all other matters of which the Court may take judicial notice.

DATED: March 8, 2010            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

                                By /s/ Michael T. Zeller
                                   Michael T. Zeller
                                   Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 2

ARGUMENT .................................................................................................................... 8

I. THE COURT SHOULD SANCTION THE OMNI PARTIES FOR THEIR NON-COMPLIANCE WITH COURT ORDERS ................................ 8

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

### Cases

In re ATM Fee Antitrust Litigation,
   233 F.R.D. 542 (N.D. Cal. 2005) .................................................................................. 5

Braley v. Campbell,
   832 F.2d 1504 (10th Cir. 1987) ............................................................................. 10, 11

Chambers v. NASCO, Inc.,
   501 U.S. 32 (1991) .................................................................................................... 8

Corder v. Howard Johnson & Co.,
   53 F.3d 225 (9th Cir. 1994) ....................................................................................... 8

Cunningham v. Hamilton County,
   527 U.S. 198 (1999) ................................................................................................ 10

FTC v. Affordable Media LLC,
   179 F.3d 1228 (9th Cir. 1999) ................................................................................... 8

FTC v. Productive Marketing, Inc.,
   136 F. Supp. 2d 1096 (C.D. Cal. 2001) ............................................................... 8, 10

In re Fannie Mae Securities Litigation,
   552 F.3d 814 (D.C. Cir. 2009) ................................................................................... 9

G-K Properties v. Redevelopment Agency of City of San Jose,
   577 F.2d 645 (9th Cir. 1978) ..................................................................................... 9

Grimes v. City and County of San Francisco,
   951 F.2d 236 (9th Cir. 1991) ..................................................................................... 9

IBM Corp. v. United States,
   493 F.2d 112 (2nd Cir. 1973) .................................................................................... 9

International Union, United Mine Workers v. Bagwell,
   512 U.S. 821 (1994) ............................................................................................ 9, 10

In re Phenylpropanolamine (PPA) Prods. Liability Litig.,
   460 F.3d 1217 (9th Cir. 2006) ................................................................................... 9

Resolution Trust Corp. v. Dabney,
   73 F.3d 262 (10th Cir. 1995) ................................................................................... 11

Richmark Corp. v. Timber Falling Consultants,
   959 F.2d 1468 (9th Cir. 1992) ................................................................................... 9

Soroko v. Aina,
   1998 WL 395139 (D.D.C. July 09, 1998) ............................................................... 10

U.S. v. Westinghouse Elec. Corp.,
  648 F.2d 642 (9th Cir. 1981) .................................................................................. 9

Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.,
  982 F.2d 363 (9th Cir. 1992) .................................................................................. 8

United States v. Rose,
  437 F. Supp. 2d 1166 (S.D. Cal. 2006) .................................................................. 9

Whittaker Corp. v. Execuair Corp.,
  953 F.2d 510 (9th Cir. 1992) .................................................................................. 9

**Statutes**

Fed. R. Civ. P. 37(a) ................................................................................................ 10

Fed. R. Civ. P. 37(a)(5) ............................................................................................ 10

## Preliminary Statement

As much as Omni 808, its members and their principals claim to be innocent bystanders who have no relevant information, their involvement in MGA's scheme to shield its monetary and intellectual property assets from Mattel and to obstruct the Court's Orders is central to Mattel's Phase 2 RICO claims. The Court has ordered the Omni Parties to produce documents Mattel has long been seeking. The Court encouraged them to produce these documents directly to Mattel during hearings months ago and directed Mattel to compile a separate list of the documents it needs to facilitate their prompt compliance. When Mattel explained later that the Omni Parties had refused to produce the documents, the Court ordered them – in no uncertain terms – to produce for the Court's *in camera* review "**all documents responsive** to the 'list' purportedly delivered by Mattel's counsel to Omni 808's counsel that is referenced in Paragraph 7 of Mattel's Listing of Certain Discovery Disputes" by February 16.[1]

Mattel has now learned that the Omni Parties have refused to comply with that Order. As the Court knows, Omni 808 transmitted a letter to the Court on February 16, 2010, which it did not serve on Mattel. The Court *sua sponte* ordered that Omni 808 serve that letter (and other *in camera* letters) by March 2. On March 3, a day after the deadline, Omni 808 served its February 16 letter. The letter is a six-page tirade against Mattel, which Omni 808 improperly sought to present *ex parte*. More troublesome is what the substance of the letter, stripped of its rhetoric, acknowledges: Omni 808 decided not to provide the ordered documents. Instead, Omni 808 presented to the Court documents cherry-picked from those it *already* had produced to Mattel. Omni 808's knowing disregard for the Court's Order merits sanctions.

At this late stage of the case, when Mattel's current deadline to amend its counterclaims is imminent, the Court should not permit Omni 808 to continue to delay and disregard Court Orders. Omni 808 should again be ordered to promptly produce,

---

[1] Order Re: Discovery Issues, dated February 12, 2010, Docket No. 7497 at 3.

either to Mattel or for the Court's *in camera* review, all the documents that the Court had ordered produced in the February 12 Order. Moreover, an Order to Show Cause should issue and the Omni Parties should be sanctioned.

## Relevant Background

**Mattel Seeks Documents From The Omni Parties.** Mattel has sought relevant discovery from the Omni Parties (who include Neil Kadisha, Joseph Moinian, David Nazarian, Leon Neman, Arsalan Gozini, Vision Capital, LLC, and Lexington Financial Limited) since it learned of their role in the purported acquisition of MGA's debt to Wachovia. The Omni Parties have long refused that discovery, and produced what they have only after multiple orders were issued. The Discovery Master issued two orders compelling the Omni Parties to produce documents; Mattel was required to move to enforce *both* of these Orders, and the Discovery Master granted both of Mattel's motions to enforce.[2] In granting Mattel's second motion to enforce, the Discovery Master specifically noted that "[a]lthough thousands of documents were produced relating to the $69 million portion of the $109 million used to fund the Debt Acquisition, only a few pages appear to have been produced by Omni 808 regarding the remaining $49 million used to purchase the Wachovia note."[3]

Critical documents nevertheless remain unproduced. In fact, the Omni Parties *still* have failed to produce documents showing the ultimate sources of funding for the "investments" in Omni 808 and other documents needed to get to the bottom of the Wachovia debt acquisition. The Omni Parties also are continuing to refuse to comply with subpoenas seeking their documents.[4] At hearings before the Court in December

---

[2] Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, Docket No. 4992; Phase 2 Discovery Matter Order No. 27, dated May 6, 2009, Docket No. 5365; Phase 2 Discovery Matter Order No. 21, dated April 23, 2009, Docket No. 5253; Phase 2 Discovery Matter Order No. 70, dated October 15, 2009, Not Docketed.
[3] Order No. 70 at 8:2-5.
[4] On December 3, 2009, Mattel served subpoenas on the Moinian Development Group, LLC, Omni TMG LLC, Arsalan Gozini and the Arsalan Gozini Charitable

2009, at which counsel for the Omni Parties was present, the Court permitted Mattel to provide counsel for the Omni Parties with a list of documents that Mattel needs to investigate the Omni transaction. Counsel for the Omni Parties admits that he received that list – and also that he did nothing with it.[5]

**The Court Orders The Omni Parties To Produce All Documents Responsive To The List.** Mattel notified the Court of the Omni Parties' failure to provide documents in response to that list at hearings over the next two months. Mattel then raised the issue again in its February 11 Listing of Certain Discovery Disputes.[6] On February 12, the Court ordered compliance:

> "[T]he Omni Parties shall, on or before February 16, 2010, submit for the Court's *in camera* review all documents responsive to the 'list' purportedly delivered by Mattel's counsel to Omni 808's counsel that is referenced in Paragraph 7 of Mattel's Listing of Certain Discovery Disputes."[7]

On the day of that Order, at the Omni Parties' request, Mattel once again provided counsel for the Omni Parties with the list of documents the Omni Parties had now been ordered to produce – the same list that Mattel had provided months earlier.[8]

Mattel had no reason to know that the Omni Parties had failed to comply with the Court's Order on February 16, as ordered, or that the documents included on Mattel's list had been withheld from the Court. On March 1, 2010, however, the Court ordered

---

Lead Annuity Trust. Despite the passage of three months, none of them have produced a single document in response to these subpoenas.

[5] Notice of Lodging in Response to Court's March 1, 2010 Order Directing Lodging of Letter Briefs ("Notice of Lodging"), filed March 3, 2010, Docket No. 7608 at 4, n. 2.

[6] Mattel, Inc.'s Listing of Certain Discovery Disputes, dated February 11, 2010, at 3.

[7] Order Re: Discovery Issues, dated February 12, 2010, Docket No. 7497 at 3.

[8] Declaration of B. Dylan Proctor ("Proctor Dec."), Ex. 1-2 (e-mails from Michael Zeller to Todd Gordinier, Peter Villar, et al., dated February 12, 2010).

the parties to serve the cover letters that accompanied their *in camera* submissions.[9] Omni 808's letter, which Mattel received a day after the deadline for service (and only after Mattel notified the Omni Parties of their non-compliance), revealed that the Omni Parties wholly failed to comply with the Court's February 12 Order.[10]

**The Omni Parties' Non-Compliance.** According to the letter, Omni 808 provided to the Court, *in camera*, "a CD containing all documents relating to the Wachovia transaction, including the sources of funding, *that have been produced by the Omni Parties.*"[11] Omni 808 also attached to its letter cherry-picked documents favorable to it to support its request for sanctions against Mattel (though Omni 808 did not include these exhibits in its Notice of Lodging).[12]

What Omni 808 did ***not*** do, however, is to comply with the Order's requirement to provide "all documents responsive to the 'list'" of documents sought by Mattel. Instead, Omni 808 buried in a footnote its admission that it did not comply, claiming that it should not have to because, in its view, the Court was wrong and its Order misguided: "I assume you have never seen the document Mattel is now referring to [i.e., the list] but it purports to request documents that have nothing whatsoever to do with the *sources of funding for the Wachovia debt acquisition.*"[13] Elsewhere the letter argues that any "relevant" documents (as unilaterally determined by Omni 808 based on undisclosed criteria) have been produced and that "Mattel's other requests are entirely improper," confirming that Omni 808 is indeed withholding documents that the Omni Parties were ordered to provide – those it believes are not relevant – and confirming its non-compliance.[14]

---

[9] Order Directing Lodging of Letter Briefs, dated March 1, 2010, Docket No. 7598.
[10] Notice of Lodging at 3-8.
[11] Notice of Lodging at 5 (emphasis added).
[12] Notice of Lodging at 5-6.
[13] Notice of Lodging at 4-5, n. 2 (emphasis in original).
[14] Notice of Lodging at 6, n. 6.

Nor did Omni 808 fulfill its obligation to gather documents responsive to the list from its members and affiliates. Indeed, the "Omni Parties" did not respond to the Court's Order at all and instead unilaterally determined that "Omni Parties" (written in plural in the Order) must "mean non-party Omni 808 Investors, LLC" (the singular).[15] That is so even though the list provided by Mattel – to which the "Omni Parties" were ordered to produce all documents – makes clear that the requests relate to Omni 808 *and* its members and principals of those members. See, e.g., Request No. 1 (seeking documents relating to transfers involving "Omni 808, any member of Omni 808 or any individual involved in an Omni 808 member since January 1, 2007"). And that is so even though Omni 808 is legally obligated to gather documents from its affiliates even if the Order's directive to the "Omni Parties" ran only to "Omni 808." See In re ATM Fee Antitrust Litigation, 233 F.R.D. 542, 544-45 (N.D. Cal. 2005) (corporate entities are obligated to produce documents in possession of affiliates).

**Mattel Seeks An Explanation, And Receives None.** When Mattel finally received the Omni Parties' letter, Mattel sent an e-mail to their counsel, noting their apparent violations of the Court's February 12, 2010 Order and asking whether the Omni Parties wish to respond or clarify their position.[16] Mattel also notified the Omni Parties that it would seek relief from the Court, including the issuance of an Order to Show Cause regarding sanctions. Though counsel for the Omni Parties have responded to Mattel's counsel concerning other issues since then, Mattel received no response to this e-mail.

**Omni 808's Arguments Are An Attempt To Mislead The Court.** Omni 808 presumably will seek to justify its non-compliance by repeating the arguments made in its *ex parte* letter that Mattel is on a fishing expedition because "uncontradicted" evidence purportedly shows that "there is no basis for any allegation that Mr. Larian

---

[15] Notice of Lodging at 3.
[16] Proctor Dec. Ex. 3 (e-mail from Dylan Proctor to Todd Gordinier and Peter Villar, dated March 3, 2010).

was the source of any Omni equity."[17] Of course, whether Omni 808 considers the ordered documents to be relevant or not is not the issue; the issue is its non-compliance with a Court Order. In any event, Omni 808's arguments are simply false.

While the true sources of the funding used to acquire the Wachovia debt remain a mystery, Mattel already has uncovered evidence that Larian is behind the acquisition, despite the Omni Parties' refusal to produce discovery. For example, as early as February 12, 2008, before Omni contacted Wachovia to acquire the debt, Larian suggested in an e-mail that "[m]ay be we should look at this and buy the [Wachovia] loans at a discounts [sic] *through some friends*?"[18] Then, by September 13, 2008, just days after the Omni debt acquisition closed, Larian asked Omni member Joe Moinian if it was "OK for me to return your money by December."[19] In December 2008, Larian told his friend, Leon Farahnik, that "David Nazarian, Joe [Moinian] and Arsalan [Gozini]" – three Omni members – "all want there [sic] money this month[]."[20]

Although Larian has denied that he refunded any of the Omni Parties,[21] former MGA head of finance Brian Wing recently confirmed that Larian re-paid Gozini and Moinian for their investments in Omni 808, and that the Omni transaction was never at arm's length.[22] And in fact, it is beyond dispute that Larian did repay Gozini the amount of $5,065,753.42 in December 2008. Larian now claims this was a "loan" from Larian to Gozini unrelated to Gozini's $5 million investment in Omni, as evidenced by a promissory note,[23] but Mr. Wing testified that the payment represented Mr. Gozini's investment in Omni 808 plus interest, and that the promissory note was created "after

---

[17] Notice of Lodging at 4.
[18] MGA2 1034508.
[19] MGA2 0540626.
[20] MGA2 0540632.
[21] Dep. Transcript of Isaac Larian ("Larian Depo.") at 535:2-18.
[22] Dep. Transcript of Brian Wing ("Wing Depo.") at 138:10-139:6, 141:7-152:23.
[23] Larian Depo. at 535:19-537:1; 1141:2-16.

the fact."[24]  Indeed, as noted, documents show that it was Larian's intent from the outset to buy the debt at a discount "through some friends," not at arm's length.[25]

This evidence, and more, refutes Omni 808's claims that the transaction was at arm's length and that Larian has no interest in Omni 808.  This evidence also shows how incomplete the Omni Parties' production is.  The Omni Parties have failed and refused to produce documents relating to Larian's repayments to them *even though such documents obviously exist*, such as the Larian e-mail to Omni member Joe Moinian discussed above – an e-mail that is obviously in the Omni Parties' possession, custody or control but which has never been produced by them.[26]  The list prepared by Mattel would capture these documents; Omni 808's refusal to comply with the Court's Order means that these and other relevant documents remain unproduced.  Omni 808 was established by Larian and Neil Kadisha for the single purpose of investing in MGA by acquiring debt.  It has no basis to complain that documents responsive to Mattel's requests are purportedly irrelevant.  Apart from being mistaken that the documents are irrelevant, the Omni Parties simply have no right to refuse to comply with the Court's Order.[27]

---

[24] Wing Depo. at 147:16-148:19.  Larian himself admitted that the promissory note was not executed until months after his purported loan to Gozini, though he blamed that delay on issues that the "lawyers were negotiating".  Larian Depo. at 1146:7-1147:19.

[25] MGA2 1034508.

[26] MGA2 0540626.

[27] Omni 808 suggests that Mattel's inquiries into the source of Omni 808 member Leon Neman's $10 million in funding is a non-issue because Omni has already explained that such funding came from Lexington Financial Limited and its principal, "Mr. Samhoui."  Notice of Lodging at 7.  What Omni 808 fails to state, however, is that the present state of the record, including Lexington's failure to produce a witness for deposition, suggests that "Mr. Samhoui" – whose actual name and contact information remain unknown, and whose existence even Larian denies – was invented for purposes of concealing the true source of Mr. Neman's investment into Omni.  As the Court recognized in its February 12 Order, Mattel is entitled to

## Argument

### I. THE COURT SHOULD SANCTION THE OMNI PARTIES FOR THEIR NON-COMPLIANCE WITH COURT ORDERS

Courts have long exercised the authority to compel compliance with their orders through civil contempt and other remedies. See Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp., 982 F.2d 363, 368 (9th Cir. 1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"). A court's inherent power to punish for contempt "reaches both conduct before the court and that beyond the court's confines." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (citation omitted) (affirming sanction order that applied to parties and non-parties alike, and to conduct that occurred before other tribunals); see also Corder v. Howard Johnson & Co., 53 F.3d 225, 232 (9th Cir. 1994) ("a court may impose attorney's fees to sanction a non-party whose actions or omissions cause the parties to incur additional expenses"); FTC v. Productive Marketing, Inc., 136 F.Supp.2d 1096, 1112-13 (C.D. Cal. 2001) (issuing contempt sanctions against non party). The standard for civil contempt "is well settled: [t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." United States v. Rose, 437 F. Supp. 2d 1166, 1170 (S.D. Cal. 2006) (quoting FTC v. Affordable Media LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quotation omitted)).

As discussed above, the Omni Parties have consistently refused to provide relevant, responsive discovery to Mattel. The Court directed Mattel to prepare a stand-alone list of discovery it needs on these issues. Mattel provided that list, and the Omni Parties did nothing in response. Then, when the Court unambiguously ordered the discovery from the Omni Parties that may establish their fraudulent transactions and obstruction of justice.

Omni Parties to provide all listed documents to the Court for an *in camera* review, the Omni Parties continued to refuse to comply – and buried their admission of non-compliance in a footnote to their *in camera* submission. At this point, finding Omni 808 to be in civil contempt is more than justified. Accordingly, the Court should Order Omni 808 to Show Cause as to why it should not be held in contempt for its failure to comply with the Court's February 12 Order. See In re Fannie Mae Securities Litigation, 552 F.3d 814, 821-825 (D.C. Cir. 2009) (affirming finding of civil contempt against non party for violating discovery order); see also In re Phenylpropanolamine (PPA) Prods. Liability Litig., 460 F.3d 1217, 1227-28 (9th Cir. 2006) (upholding sanction of dismissal of plaintiffs' claims when they failed to comply with the court's discovery orders); G-K Properties v. Redevelopment Agency of City of San Jose, 577 F.2d 645, 647 (9th Cir. 1978) (same).

Independently, the Court should impose coercive monetary sanctions against Omni 808 to effectuate compliance with the February 12 Order. See Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992) (citation omitted) (sanctions imposed for civil contempt are appropriate "for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.").[28] Indeed, although contempt is warranted here, coercive sanctions may issue under Rule 37 even without a finding of contempt. See Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991) (coercive discovery sanctions may be imposed even apart from civil contempt). Coercive sanctions often take the form of a per diem fines. Such "daily fines . . . constitute '[t]he paradigmatic coercive, civil contempt sanction.'" Soroko v. Aina, 1998 WL 395139, *1 (D.D.C. July 09, 1998) (quoting International Union, United Mine Workers v. Bagwell, 512 U.S.

---

[28] See also Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1480 (9th Cir. 1992) (upholding use of coercive monetary sanctions to secure compliance with a discovery order); U.S. v. Westinghouse Elec. Corp., 648 F.2d 642, 651-652 (9th Cir. 1981) (same); IBM Corp. v. United States, 493 F.2d 112, 115-116 (2nd Cir. 1973) (same, where fine was $150,000 per day).

821, 828 (1994)).[29]  The Omni Parties have shown that they will not comply with basic discovery requirements, even in the face of a specific Order compelling such compliance, without the imposition of coercive sanctions.  Coercive sanctions should be awarded in the amount of $5,000 for each day of Omni 808's continued noncompliance, with the per diem fine amounts being paid to the Court.  See Productive Marketing, Inc., 136 F.Supp.2d at 1112-13 (imposing coercive per diem monetary sanction against non-party).

Finally, Omni 808 should be ordered to pay $5,000 as partial reimbursement for the fees and costs Mattel has incurred in bringing this application.  See Fed. R. Civ. P. 37(a)(5) (if disclosure is ordered following a motion, "the court must," absent substantial justification for the non-disclosure, "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."); see also Cunningham v. Hamilton County, 527 U.S. 198, 207-210 (1999) (approving monetary sanction award against non-party attorney under Rule 37(a)).  This is the third time Mattel has had to bring a motion just to *enforce* a prior Order compelling the Omni Parties to produce documents.  There can be no justification for the Omni Parties' deliberate, and continuing, non-compliance here.  Sanctions should issue.[30]

---

[29]  As the Supreme Court explained in Bagwell, "[a] close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.  Like civil imprisonment, such fines exert a constant coercive pressure."  Bagwell, 512 U.S. at 829.

[30]  Another source of sanctions power is 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  Resolution Trust Corp. v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)).

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court: (1) enforce its prior Order and again compel compliance; (2) issue an Order to Show Cause regarding Omni 808's failure and refusal to comply with the Court's February 12 Order; (3) award coercive sanctions against Omni 808 in the amount of $5,000 for each day of continued non-compliance; and (4) award monetary sanctions against Omni 808 in the amount of $5,000, which represents a portion of the fees and costs incurred by Mattel in bringing this Ex Parte Application.

DATED: March 8, 2010            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

                                By /s/ Michael T. Zeller
                                    Michael T. Zeller
                                    Attorneys for Mattel, Inc.