Bingham McCutchen LLP
TODD E. GORDINIER (SBN 82200)
todd.gordinier@bingham.com
PETER N. VILLAR (SBN 204038)
peter.villar@bingham.com
MICHAEL D. MORTENSON (SBN 247758)
michael.mortenson@bingham.com
600 Anton Boulevard, 18th Floor
Costa Mesa, CA  92626-1924
Telephone:  714.830.0600
Facsimile:  714.830.0700

Attorneys for Non-Party
OMNI 808 INVESTORS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendants.<br><br><br>AND CONSOLIDATED ACTIONS. | Case No. CV 04-09049 DOC (RNBx)<br>c/w Case Nos. CV 04-09059 & CV 05-2727<br><br>Hon. David O. Carter<br><br>**NON-PARTY OMNI 808 INVESTORS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE RE COURT'S FEBRUARY 12, 2010 ORDER**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 9D<br><br>**Phase 2**:<br>Discovery Cut-off:        TBD<br>Pre-trial Conference:    TBD<br>Trial Date:                   TBD |

A/73311565.3

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ....................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ..................................... 5

III.  THERE IS NO LEGAL BASIS FOR EX PARTE RELIEF ......................... 8

      A.    Mattel's *Ex Parte* Application Should Be Denied Because It
            Has Failed To Show Any Exigent Circumstances Or Irreparable
            Harm.......................................................................................... 8

      B.    Mattel's *Ex Parte* Application Should Be Denied Because It
            Failed To Provide Notice Under Local Rules 7-19 And 7-19.1 ......... 9

IV.   MATTEL'S REQUEST FOR AND *EX PARTE* CONTEMPT
      ORDER IS PROCEDURALY AND SUBSTANTIVELY MERITLES .... 11

V.    CONCLUSION ......................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Dusa Pharmaceuticals, Inc. v. Skin Deep*
    Case No. CIV-F-05-1482 AWI SMS 2007 U.S. Dist. LEXIS 33841 (E.D. Cal. April
    21, 2007) ................................................................................................................12

*Hoffman v. Beer Drivers & Salesman's Local Union No. 888,*
    536 F.2d 1268, 1277 (9th Cir. 1976) ......................................................................12

*In re Oliver*
    333 U.S. 257, 275 (1948).........................................................................................11

*Mattel, Inc. v. Walking Mountain Productions*
    353 F.3d 792, 814 (9th Cir. 2003) .........................................................................5, 7

*Mission Power Engineering Co. v. Continental Casualty Co.*
    883 F. Supp. 488, 490 (C.D. Cal 1995) ............................................................1, 8, 10

*Pennwalt Corp. v. Durand-Wyland, Inc.*
    708 F.2d 492, 495 (9th Cir. 1983) ..........................................................................12

*Samsung SDI Co. v. Matsushita Electric Indust. Co.*
    No. 05-8493 PA (SHx), 2006 WL 5097404 (C.D. Cal. June 15, 2006)....................9

*Schoenberg v. Shapolsky Publishers, Inc.*
    971 F.2d 926, 935 (2nd Cir. 1992) ..........................................................................11

*Tranzact Tech., Inc. v. 1Source Worldsite*
    406 F.3d 851, 855 (7th Cir. 2005) ..........................................................................11

*U.S. v. Alter*
    482 F.2d 1016, 1024 (9th Cir. 1973) .......................................................................12

*U.S. v. Powers*
    629 F.2d 619, 626 (9th Cir. 1980) ..........................................................................11

*United States v. Hawkins*
    501 F.2d 1029, 1031 (9th Cir. 1974) .......................................................................11

**OTHER STATE CASES**

*Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd.*
    No. CV 05-3945 PA............................................................................................8

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**OTHER AUTHORITIES**

4

Fed. R. Civ. P. 43(a) ........................................................................................................12

5

Fed. R. Civ. P. 43(e) ........................................................................................................12

6

Local Rule 7-19.1 ...............................................................................................................9

7

Rules 7-19 ...........................................................................................................................9

8

Moore's Fed. Practice 3d. § 37.5[7][a] ...........................................................................11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Mattel, Inc.'s *ex parte* application for an Order to Show Cause regarding non-party Omni 808 Investors, LLC's *alleged* failure to comply with the Court's February 12, 2010 Order is procedurally and substantively meritless.  It is just the latest manifestation of the scorched-earth strategy Mattel has adopted toward Omni that has nothing to do with the issues framed in Phase 2 of this litigation between Mattel and MGA.

Mattel's *ex parte* application must be denied on procedural grounds <u>alone</u> because this application, like all of its predecessors directed at Omni, does not comply with the Central District Local Rules or Ninth Circuit precedent.  Mattel first notified Omni of its intent to seek *ex parte* relief by an email sent Monday night, March 8, 2010, at 7:50 pm.  <u>Less than two hours later</u>, at 9:30 pm, before Omni's counsel had a chance to read or respond to Mattel's "notice," Mattel filed its 15 page *ex parte* application, which it had clearly been preparing for many days, to be considered by the Court at 6 pm the next day, Tuesday, March 9, 2010.  Mattel's attempt to obtain contempt sanctions against a non-party on an *ex parte* basis with only a few hours notice is a violation of the Local Rules, FRCP, and constitutional due process.

Equally problematic, Mattel has not shown any emergency, nor any other legitimate basis for ignoring the applicable notice requirements before seeking *ex parte* relief.  The Central District has cautioned litigants that **"filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'  There had better be a fire."** *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal 1995).  It is evident from Mattel's *ex parte* application that there is no smoke, let alone fire.  Indeed, Mattel's only attempt to show some sort of urgency is its assertion that its current deadline to amend its counterclaims -- <u>for a fourth time</u> -- is "imminent."  The fact that Mattel apparently has no factual basis

1   to support its counterclaims -- despite a year and a half of unfettered discovery into

2   the Omni-Wachovia transaction -- does not come close to satisfying the established

3   Ninth Circuit precedent.

4       Mattel's *ex parte* application is not only procedurally defective, but it is also

5   substantively meritless. Late Friday afternoon on February 12, 2010, Omni's

6   counsel received a copy of an "Order Regarding Discovery Issues" that was issued

7   the same day in the *Mattel v. MGA* case. On page 3, paragraph 15 of the Order, the

8   Court instructed Omni to "submit for the Court's *in camera* review documents

9   responsive to the 'list' purportedly delivered by Mattel's counsel to Omni 808's

10  counsel that is referenced in Paragraph 7 of Mattel's Listing of Certain Discovery

11  Disputes," on or before Tuesday, February 16, 2010. Omni was not given an

12  opportunity to respond to Mattel's submission, or be heard, prior to the issuance of

13  the Order. In other words, a non-party, Omni, was given one court day to collect,

14  review and produce potentially thousands of documents referenced in a "list"

15  prepared by Mattel's counsel that was **never formally served on Omni, never**

16  **discussed, never the subject of any subpoena or motion to compel, and which**

17  **the Court had apparently never seen.**

18      Upon receipt of the Court's Order, despite the impossible time constraints

19  and procedural and due process concerns, Omni spent the President's Day

20  weekend trying to ascertain what documents Mattel could possibly be referring to

21  in its submission to the Court and to comply with the Court's Order. Omni

22  reviewed Paragraph 7 of Mattel's Listing of Certain Discovery Disputes filed on

23  Thursday, February 11, 2010, which was the expressed basis of the Court's Order.

24  Incredibly, Omni learned that Mattel had misrepresented to the Court in Paragraph

25  7 of its submission (captioned "**Documents Showing The Source Of The $49**

26  **Million In Funding**") that "MGA and the Omni Parties are still withholding

27  documents relating to the sources of funding … for the Wachovia debt

28  acquisition." It is remarkable that Mattel not only claimed that Omni is

A/73311565.3                                    - 2 -

1   withholding documents, but also falsely represented to the Court that Omni "*ha[s]*

2   *produced virtually nothing*" relating to the sources of funding.[1]

3        Contrary to Mattel's false representations to the Court that Omni had

4   produced "virtually nothing," and as the Court now knows, Omni has produced

5   **thousands of pages of documents in its possession regarding the Wachovia**

6   **debt acquisition including numerous documents showing *the source of all***

7   ***funds* used to purchase the debt.** The truth is that Mattel has known for at least

8   the past 10 months where every dollar came from that Omni used to purchase the

9   MGA debt obligation from Wachovia Bank. Non-party Omni, its non-party

10  members and its non-party attorneys have produced well in excess of 30,000

11  documents relating to the Wachovia transaction, including the source of all equity

12  and debt financing, and have endured many hours of deposition discussing all

13  aspects of the transaction. Mattel's problem is not a lack of information, rather

14  Mattel's problem is that the abundance of testimony and documentary evidence

15  refutes each of its baseless theories.

16       After receiving the Court's Order and reviewing Paragraph 7 of Mattel's

17  false submission to the Court, Omni's counsel immediately contacted Mattel's

18  counsel, Michael Zeller, to obtain a copy of the "list" that he claimed to have

19  previously delivered to Omni's counsel at an unspecified time in the past. Omni's

20  counsel recalled being handed a document by Mr. Zeller without comment last

21  year. However, since that time, Mattel has never *mentioned* it again and there has

22  been no discussion of it in Omni's counsel's presence by anyone. As a result, not

23  only is there no "discovery" outstanding respecting Omni, no dispute has ever been

---

25  [1] Mattel also misrepresented in that paragraph that MGA is paying Bingham's fees.
    Mattel's counsel knows that is untrue - even if it were pertinent - as he was told by
26  Mr. Kadisha, under oath, that Omni is paying Bingham's fees but intends to seek
    from MGA the reimbursement it is entitled to under the terms of the original
27  Wachovia loan documents since assumed by Omni.

1   raised by Mattel with Omni. The reason for that is clear – because Mattel knows

2   that any documents in Omni's possession that are conceivably relevant to this

3   action have been produced.

4       Despite the fact that the "list" was never formally served on Omni, never

5   discussed, never the subject of any subpoena or motion to compel, and had

6   apparently never even been shown to the Court, in an effort to comply with the

7   Court's Order, Omni's counsel spent many hours over the weekend gathering

8   "documents showing the source of the $49 million in funding," which was the

9   basis of Mattel's submission and the Court's Order, and all other documents

10   relating to the Omni transaction. In compliance with the Court's Order, Omni

11   produced **31,095** pages of documents the next court day after receiving the Order.

12       Contrary to Mattel's baseless speculation, Omni did not "cherry pick" from

13   documents it already produced to Mattel. Omni produced <u>all documents</u> in its

14   possession relating to the Omni transaction (most of which were produced on a CD

15   and some of which were printed out to highlight Mattel's misrepresentations

16   regarding the sources of funding), which <u>as Mattel finally now concedes</u>, have

17   already been produced to Mattel. Mattel should be ordered to explain why it

18   previously represented to the Court that Omni produced "virtually no documents,"

19   yet now concedes that it has received <u>in excess of 30,000 documents</u>, including

20   numerous documents showing the sources of all funding.

21       Omni did everything it could possibly do within the timeframe to comply

22   with the Court's Order and to respond to Mattel's *purported* concerns regarding

23   Omni's production of "documents showing the source of the $49 million in

24   funding." It is entirely unclear from Mattel's improper *ex parte* application what

25   <u>additional</u> documents relating to the sources of funding, or any other issues in

26   Phase 2, were not produced. Oddly, Mattel continues to suggest that it has not

27   received documents reflecting any *alleged* equity interest of Isaac Larian in Omni.

28   However, since no such interest exists, there are no documents reflecting such

A/73311565.3

- 4 -

nonexistent interest.  If Mattel believes there are additional documents relating to the Omni transaction that have not been produced, the Court should order Mattel to follow the applicable Local Rules and FRCP to obtain any such documents.

In *Mattel, Inc. v. Walking Mountain Productions*, Judge Lew of the Central District Court sanctioned Mattel and this same counsel for serving discovery requests intended to "exert pressure" on non-party witnesses and found that "a pattern is clear in this case that [Mattel's counsel] files these oppressive subpoena requests ... for the purpose of annoying and harassment and not really for the purpose of getting information.")  The Ninth Circuit Court of Appeals affirmed the ruling and the sanctions.  This is precisely the same type of conduct that Mattel and its counsel are engaging in here.

For the foregoing reasons, the Court should deny Mattel's *ex parte* application in its entirety, and impose sanctions against <u>Mattel</u> for making a series of <u>undeniably false representations</u> to the Court to obtain the Order in the first place, for misrepresenting to the Court that Omni had produced "virtually no documents," and for filing this unsupported and procedurally improper *ex parte* application in violation of Central District Local Rules and Ninth Circuit precedent.

## II.    STATEMENT OF RELEVANT FACTS

Beginning in April, 2009, Omni has produced approximately 10,498 documents responsive to Mattel's various requests, its attorneys have produced an additional 20,500 documents, and its members have produced several hundred additional documents (the "Omni Productions").  The Omni Productions contained numerous documents that detailed the sources of its equity and debt capital and its use of these funds.  For example, the Omni Productions included several copies of a document titled *Omni 808 Investors, LLC Summary Of Uses Of Funds* (Bates

Nos. OMNI0001692, 0005449, 0005451) that identifies Omni's sources of funds as follows:

*Equity Capital*

| | |
|---|---|
| Neil Kadisha[2] | $10,000,000 |
| Gold Leaf Investments, LP | $10,000,000 |
| Moinian Development Group[3] | $10,000,000 |
| Vision Capital, LLC | $10,000,000 |
| Nazarian Family Trust | $ 5,000,000 |
| Gozini Charitable Trust | $ 5,000,000 |

*Debt Capital*

| | |
|---|---|
| IGWT 826 Investments, LLC | $60,000,000 |

The Omni Productions also included unredacted copies of wire transfer confirmation receipts showing where the above funds originated (i.e., the respective Omni members' bank accounts) as well as records of the Omni bank account into which such funds were deposited and eventually transferred by wire to Wachovia on the transaction's closing date (See Bates Nos. OMNI0010390-96, and VISION000151). The Omni Productions also included other documents that clearly identify its debt and equity financing sources, including for example, its Limited Liability Company Agreement (Bates No. OMNI0010257) and its Amendment to the Limited Liability Company Agreement (Bates No. OMNI0010245) that identified the sources of its equity capital, the "Secured Delayed Draw Demand Notice" (Bates No. OMNI0000003), the "Amended and

---

[2] Mr. Kadisha testified at his deposition that he subsequently acquired Mr. Gozini's interest in Omni in 2009 so he now has $15,000,000 interest in Omni.

[3] Pursuant to the First Amendment to the Limited Liability Agreement of Omni 808 Investors, LLC (Bates No. OMNI0010245), Moinian Development Group transferred its interest to Omni TMG (The Moinian Group), LLC in or about April 2009.

1  Restated Subordinated Promissory Note" (Bates No. OMNI0003991) that

2  identified IGWT 826 Investors, LLC as the entity that provided Omni's $60

3  million for debt capital.

4      Finally, in addition to the more than 30,000 documents contained in the

5  Omni Productions, Mattel has taken the depositions of Omni 808 members Neil

6  Kadisha, Leon Neman and David Nazarian and the attorney for Vision Capital and

7  Lexington Financial, Fred Mashian.  Mattel was scheduled to also take the

8  depositions of Omni 808 members Arsalan Gozini and Joseph Moinian in mid-

9  January, but Mattel requested to postpone those depositions which have been

10  rescheduled in March.

11      Despite the thousands of documents contained in the Omni Productions and

12  hours of deposition testimony, on February 11, 2010, Mattel filed its Listing of

13  Certain Discovery Disputes (Docket # 7487) in which it falsely alleged and

14  misrepresented to the Court that "the Omni Parties are still withholding documents

15  relating to the sources of funding ... for the Wachovia debt acquisition" and that

16  the Omni Parties "have produced virtually nothing" relating to the sources of

17  funding.  This is demonstrably untrue. [4]

18      At approximately 4:00 p.m. on Friday, February 12, 2010, Omni's counsel

19  received the Order Regarding Discovery Issues ("Order") that was issued the same

20  day in the *Mattel v. MGA* case.  The Court instructed the MGA Parties and Omni

21  Parties to "submit for the Court's in camera review all documents responsive to the

22

23  [4] Certainly, had Mattel suspected that additional information existed but was not produced, Mattel would have filed however many motions necessary to compel the

24  production of such information.  Mattel is no stranger to motion practice.  Because Omni already produced the relevant information that Mattel requests, and because

25  Mattel's other requests are entirely improper, it appears Mattel had no purpose for asking the Court to order Omni to produce documents (which it already possesses)

26  other than to harass the Omni Parties -- a strategy for which Mattel and its lead trial counsel are infamous in this Circuit. *See Mattel, Inc. v. Walking Mountain*

27  *Productions*, 353 F. 3d 792, 814 (9th Cir. 2003).

28

'list' purportedly delivered by Mattel's counsel to Omni 808's counsel that is referenced in Paragraph 7 of Mattel's Listing of Certain Discovery Disputes," on or before Tuesday, February 16, 2010.  (Order at 3.)  Despite the fact that Omni was never afforded any opportunity to respond to Mattel's Listing of Certain Discovery Disputes, or any other opportunity to be heard on the issue, and despite the fact that there was neither before the Court nor Omni any valid discovery request, subpoena, motion to compel or any other discovery dispute, and having less than a single court day to respond, in compliance with the Court's Order, Omni produced more than 30,000 documents contained in the Omni Productions for the Court's *in camera* review.

Last night, March 8, 2010, at 7:50 pm Mattel "notified" Omni's counsel that it intended to apply *ex parte* for sanctions for Omni's alleged failure to comply with the Court's Order and requested that Omni respond with its position. However, at 9:30 pm, <u>less than two hours later</u> and before Omni's counsel even had a chance to read or respond to Mattel's "notice," Mattel filed its 15 page *ex parte* application, which it had clearly been preparing for many days, to be considered by the Court at 6 pm today, Tuesday, March 9, 2010, less than 24 hours from the time Mattel filed its application.

## III.    THERE IS NO LEGAL BASIS FOR *EX PARTE* RELIEF

### A.    <u>Mattel's *Ex Parte* Application Should Be Denied Because It Has Failed To Show Any Exigent Circumstances Or Irreparable Harm</u>

"An *ex parte* application is solely for extraordinary relief." *Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd.*, No. CV 05-3945 PA (FMOx), 2005 WL 5960924, at *1 (C.D. Cal. Oct. 4, 2005).  "Ex parte motions are rarely justified . . . ." *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal 1995).  Indeed, "filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'

1    There had better be a fire." *Id.*  Under well established precedent in this district, *ex*

2    *parte* relief requires a showing of exigent circumstances and irreparable harm. *Id.*;

3    *see also Samsung SDI Co. v. Matsushita Electric Indust. Co.*, No. 05-8493 PA

4    (SHx), 2006 WL 5097404, at *1 (C.D. Cal. June 15, 2006).  None of these factors

5    are satisfied in this case.

6         Mattel has not shown any emergency, nor any other legitimate basis for

7    ignoring the applicable notice requirements and seeking *ex parte* relief.  Nor has it

8    shown any prejudice or irreparable harm it would suffer.  As demonstrated above,

9    the Omni Productions have included countless documents which describe in detail

10   the sources and uses of Omni's equity and debt capital.  There remains no mystery

11   to Omni's funding sources.  Indeed, Mattel's only attempt to show some sort of

12   urgency is its assertion that its current deadline to amend its counterclaims -- <u>for a</u>

13   <u>fourth time</u> -- is "imminent."  However,  the fact that Mattel apparently has no

14   factual basis to support its counterclaims -- after a year and a half of unfettered

15   discovery into the Omni-Wachovia transaction -- does not satisfy the established

16   Ninth Circuit precedent.

17        Accordingly, because Mattel has not demonstrated any exigent

18   circumstances or irreparable harm to relieve it from following the regular noticed

19   motion procedures, this Court should deny Mattel's *ex parte* application.

20   **B.    <u>Mattel's *Ex Parte* Application Should Be Denied Because It Failed</u>**

21   **<u>To Provide Notice Under Local Rules 7-19 And 7-19.1</u>**

22   Central District Local Rule 7-19.1 provides, in pertinent part:

23            It shall be the duty of the attorney so applying (a) to
24            make a good faith effort to advise counsel for all other
             parties, if known, of the date, time and substance of the
25            proposed ex parte application and (b) to advise the Court
             in writing of efforts to contact other counsel and whether
26            any other counsel, after such advice, opposes the
             application or has requested to be present when the
27            application is presented to the Court.

28

1    Mattel brought its *ex parte* application in violation of the Central District

2    Local Rules by failing to advise Omni, in *good faith*, in advance of the date and

3    time of the proposed *ex parte* application.  Indeed, Mattel first notified Omni of its

4    intent to seek *ex parte* relief by an email sent Monday night, March 8, 2010, at

5    7:50 pm.  Less than two hours later, at 9:30 pm, before Omni's counsel had a

6    chance to read or respond to Mattel's "notice," Mattel filed its 15 page *ex parte*

7    application, which it had clearly been preparing for many days, to be considered by

8    the Court at 6 pm the next day, Tuesday, March 9, 2010.  Mattel failed to include

9    Omni's position in its papers because Omni's counsel had not even had a chance to

10   review and discuss Mattel's email in advance of its improper filing.

11       The *Mission Power* court explained the significant problems that *ex parte*

12   motions create:

13           Though the adversary does have a chance to be heard, the
             parties' opportunities to prepare are grossly unbalanced.
14           Often, the moving party's papers reflect days, even
             weeks of investigation and preparation; the opposing
15           party has perhaps a day or two.  This is due primarily to
             gamesmanship.
16

17                                    . . .

18
             All of this detracts from a fundamental purpose of the
19           adversary system, namely, to give the court the best
             possible presentation of the merits and demerits of the
20           case on each side.  The opposing party can rarely make
             its best presentation on such short notice.
21

22   883 F. Supp. at 490-91.

23       The *Mission Power* court's analysis is particularly instructive in this instance

24   considering that Omni is a non-party, that Mattel failed to comply with the *ex parte*

25   notice requirements under the Central District Local Rules, and that Mattel's filing

26   permitted Omni less than 24 hours to respond in advance of today's hearing date.

27   Mattel has failed to demonstrate any reason why its application should not have

28   been filed as a regular notice motion, affording Omni an opportunity, and the Court

1   the benefit, of fully briefing the germane issues.  Moreover, Mattel's attempt to

2   obtain contempt sanctions against a non-party on an *ex parte* basis with only a few

3   hours notice demonstrates its *bad faith* and constitutes a clear violation of the

4   Local Rules, FRCP, and constitutional due process.

5

6   **IV.   MATTEL'S REQUEST FOR AN *EX PARTE* CONTEMPT**

7   **ORDER IS PROCEDURALY AND SUBSTANTIVELY**

8   **MERITLESS**

9       In contempt proceedings, "due process of law ... requires that one charged

10   with contempt of court be advised of the charges against him, have a reasonable

11   opportunity to meet them by way of defense or explanation, have the right to be

12   represented by counsel, and have a chance to testify and call other witnesses in his

13   behalf, either by way of defense or explanation." *In re Oliver*, 333 U.S. 257, 275

14   (1948).  "A court may not impose a contempt sanction without first satisfying the

15   procedural requirements that are rooted in the due process clause." Moore's Fed.

16   Practice 3d., § 37.51[7][a].  "A contempt proceeding of any kind should be

17   preceded by <u>clear notice</u> of the alleged disobedience, as well as an <u>adequate</u>

18   <u>opportunity to present a defense to the allegations</u>." *Id.* (emphasis added), *see also*

19   *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 935 (2nd Cir. 1992);

20   *Tranzact Tech., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) ("Due

21   process requires a district court to resolve relevant factual disputes-allowing

22   discovery and holding an evidentiary hearing if necessary-in a civil contempt

23   proceeding.").

24       In the Ninth Circuit, alleged contemnors in contempt proceedings are

25   "entitled to the procedural safeguards of notice and a <u>reasonable time to prepare a</u>

26   <u>defense</u>." *U.S. v. Powers*, 629 F.2d 619, 626 (9th Cir. 1980) (emphasis added); *see*

27   *also United States v. Hawkins*, 501 F.2d 1029, 1031 (9th Cir. 1974), *cert. denied*,

28   419 U.S. 1079 (1974).  A civil contempt proceeding in the Ninth Circuit is "a trial

A/73311565.3                   - 11 -

1   within the meaning of Fed. R. Civ. P. 43(a) rather than a hearing on a motion

2   within the meaning of Fed. R. Civ. P. 43(e)[;] . . . the issues may not be tried on the

3   basis of affidavits." *Pennwalt Corp. v. Durand-Wyland, Inc.*, 708 F.2d 492, 495

4   (9th Cir. 1983); *quoting Hoffman v. Beer Drivers & Salesman's Local Union No.*

5   *888*, 536 F.2d 1268, 1277 (9th Cir. 1976).  Due process requires an "uninhibited

6   adversary hearing . . . The constitutional guarantee of due process of law means

7   more than a silhouette of justice; it requires that judicial determinations affecting

8   the freedom of the individual be openly arrived at after full, fair, and vigorous

9   debate on both sides of all substantial issues." *U.S. v. Alter*, 482 F.2d 1016, 1024

10  (9th Cir. 1973); *see also Dusa Pharmaceuticals, Inc. v. Skin Deep*, Case No. CIV-

11  F-05-1482 AWI SMS 2007 U.S. Dist. LEXIS 33841, *6 (E.D. Cal. April 21,

12  2007)(recognizing that unless the affidavits in support of contempt are

13  uncontroverted, a full hearing is normally held).

14          As explained above, late Friday afternoon on February 12, 2010, Omni's

15  counsel received a copy of an "Order Regarding Discovery Issues" that was issued

16  the same day in the *Mattel v. MGA* case.  On page 3, paragraph 15 of the Order, the

17  Court instructed Omni to "submit for the Court's *in camera* review documents

18  responsive to the 'list' purportedly delivered by Mattel's counsel to Omni 808's

19  counsel that is referenced in Paragraph 7 of Mattel's Listing of Certain Discovery

20  Disputes," on or before Tuesday, February 16, 2010.  Omni was not given an

21  opportunity to respond to Mattel's submission, or be heard, prior to the issuance of

22  the Order.  Consequently, a non-party, Omni, was given one court day to collect,

23  review and produce potentially thousands of documents referenced in a "list"

24  prepared by Mattel's counsel that was never formally served on Omni, never

25  discussed, never the subject of any subpoena or motion to compel, and which the

26  Court had apparently never seen.

27          Upon receipt of the Court's Order, despite the impossible time constraints

28  and procedural and due process concerns, Omni spent the weekend trying to

A/73311565.3                                    - 12 -

1    ascertain what documents Mattel could possibly be referring to in its submission to

2    the Court and to comply with the Court's Order.  Omni reviewed Paragraph 7 of

3    Mattel's Listing of Certain Discovery Disputes filed on Thursday, February 11,

4    2010, which was the expressed basis of the Court's Order.  Omni learned that

5    Mattel had misrepresented to the Court in Paragraph 7 of its submission (captioned

6    "Documents Showing The Source Of The $49 Million In Funding") that "MGA

7    and the Omni Parties are still withholding documents relating to the sources of

8    funding … for the Wachovia debt acquisition."  In fact, Mattel not only claimed

9    that Omni is withholding documents, but also falsely represented to the Court that

10   Omni "*ha[s] produced virtually nothing*" relating to the sources of funding.

11        Contrary to Mattel's representations to the Court that Omni had produced

12   "virtually nothing," and as the Court now knows, Omni has produced thousands of

13   pages of documents in its possession regarding the Wachovia debt acquisition

14   including numerous documents showing *the source of all funds* used to purchase

15   the debt.

16        After receiving the Court's Order and reviewing Paragraph 7 of Mattel's

17   false submission to the Court, Omni's counsel immediately contacted Mattel's

18   counsel to obtain a copy of the "list" that he claimed to have previously delivered

19   to Omni's counsel at an unspecified time in the past.  Despite the fact that the "list"

20   was never formally served on Omni, never discussed, never the subject of any

21   subpoena or motion to compel, and had apparently never even been shown to the

22   Court, in an effort to comply with the Court's Order, Omni's counsel spent many

23   hours over the weekend gathering "documents showing the source of the $49

24   million in funding," which was the basis of Mattel's submission and the Court's

25   Order, and all other documents relating to the Omni transaction.  In compliance

26   with the Court's Order, Omni produced **31,095** pages of documents the next court

27   day after receiving the Order.

28

A/73311565.3

- 13 -

1     Contrary to Mattel's assertions, Omni did not "cherry pick" from documents

2  it already produced to Mattel.  Omni produced <u>all documents</u> in its possession

3  relating to the Omni transaction (most of which were produced on a CD and some

4  of which were printed out to highlight Mattel's misrepresentations regarding the

5  sources of funding), which <u>as Mattel finally now concedes</u> have already been

6  produced to Mattel.

7     Omni did everything it could possibly do within the timeframe to comply

8  with the Court's Order and to respond to Mattel's *purported* concerns regarding

9  Omni's production of "documents showing the source of the $49 million in

10  funding."  Therefore, Mattel's request for an *ex parte* contempt order is not only

11  procedurally and substantively meritless, but also a clear violation of constitutional

12  due process.  It is entirely unclear from Mattel's improper *ex parte* application

13  what <u>additional</u> documents relating to the sources of funding, or any other issues in

14  Phase 2, were not produced.  However, if Mattel believes there are additional

15  documents relating to the Omni transaction that have not been produced, the Court

16  should order Mattel to follow the applicable Local Rules and FRCP to obtain any

17  such documents.

18

19  **V.     CONCLUSION**

20     For the foregoing reasons, Omni respectfully requests that the Court deny

21  Mattel's *ex parte* application and all relief requested therein.

22

23  DATED:  March 9, 2010            Bingham McCutchen LLP

24

25

26                    By:  /s/  Todd E. Gordinier
                        Todd E. Gordinier
27                      Attorneys for Non-Party
                        Omni 808 Investors, LLC

28

1      **PROOF OF SERVICE BY FEDERAL EXPRESS TO COUNSEL**

2          I am over eighteen years of age, not a party in this action, and employed in

3      Orange County, California at 600 Anton Boulevard, 18th Floor, Costa Mesa,

4      California 92626-1924. On **March 9, 2010**, I served the attached document(s)

5      listed below on this date before 5:00 p.m. PST:

6          **NON-PARTY OMNI 808 INVESTORS, LLC'S MEMORANDUM OF
       POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL,**

7      **INC.'S *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE
       RE COURT'S FEBRUARY 12, 2010 ORDER**

8

9      ☒   I served copies of said papers on March 9, 2010 by attaching them to an email
           addressed to:

10

11     John B. Quinn
       johnquinn@quinnemanuel.com

12     Michael T. Zeller, Esq.
       michaelzeller@quinnemanuel.com
13

14     Jon D. Corey, Esq.
       joncorey@quinnemanuel.com

15     Jason D. Russell, Esq.
       jason.russell@skadden.com
16

17     Mark E. Overland, Esq.
       moverland@scheperkim.com

18     Alexander H. Cote, Esq.
       acote@scheperkim.com
19

20     Melinda Haag
       mhagg@orrick.com

21     Annette L. Hurst
       ahurst@orrick.com
22

23     Warrington S. Parker
       wparker@orrick.com

24     William A. Molinski
       wmolinski@orrick.com
25

26     Thomas S. McConville
       tmcconville@orrick.com

27

28

A/73311565.3                                    - 15 -

1    I declare that I am employed in the office of a member of the bar of this
2    court at whose direction the service was made and that this declaration was
3    executed on **March 9, 2010**.
4
5                                               *Paul A. McConnell*
6                                               Paul A. McConnell
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28