UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> MGA ENTERTAINMENT, INC., <br><br> Defendant(s). | CASE NO. SACV 04-9049 DOC (RNBx) <br><br> **O R D E R OVERRULING OBJECTIONS TO THE DISCOVERY MASTER'S PRIVILEGE RULINGS ON QUESTIONS REGARDING MATTEL'S COPYRIGHT REGISTRATIONS DURING THE DEPOSITION OF MICHAEL MOORE** |

Before the Court is Mattel, Inc. ("Mattel")'s Objections to the Discovery Master's Privilege Rulings on Questions Regarding Mattel's Copyright Registrations During the Deposition of Michael Moore (the "Objections"). After considering the moving, opposing, and replying papers, as well as the parties' oral argument at both the March 4, 2010 and the March 9, 2010 hearings, the Court OVERRULES the Objections.

**I.     Background**

In October 2006, Mattel worked with its outside counsel, the law firm of Quinn Emanuel Urquhart & Sullivan LLP ("outside counsel") to register with the Copyright Office "a

series of Bratz drawings that [Carter] Bryant created while he was a Mattel employee." *See* Objections at 1:26-2:1. According to Mattel, the decision to register the drawings and ancillary decisions regarding the content of the copyright applications, "were made by outside litigation counsel ***solely for purposes of the ongoing litigation with MGA in this case.***" *Id.* at 2:4-5 (emphasis added). Moore effectuated the advice received from outside counsel, completed the copyright applications, and submitted the same to the Copyright Office.

At issue is the fact that boxes 6(a) and 6(b) of the 2006 copyright registrations – which require the applicant to "list any preexisting materials and what new material has been added if the registered work is a 'derivative work'" – were left blank by Mattel. *See id.* at 2:13-15. Moore testified as to the fact that the boxes were left blank, but was instructed not to answer the following questions on attorney-client privilege grounds:

(1) "Is Mattel claiming that this group of drawings upon which it obtained a registration, Exhibit 13875, is a derivative work?"

(2) "Mr. Moore, Mattel is not claiming that the work group drawing of dolls upon which it obtained a registration in Exhibit 13875 is a derivative work or compilation; isn't that correct?"

(3) "In filing the application for registration set forth in Exhibit 13875, was Mattel claiming that the group drawing of dolls identified therein was a derivative work?"

(4) "Mr. Moore in fact Mattel did not claim in its application that became the registration of Exhibit 13875 that the group drawing of dolls identified therein was a derivative work?"

(5) "At the time that Mattel filed its copyright application in Exhibit 13875, was the group drawing of dolls identified therein based on any pre-existing work?"

(6) "At the time Mattel filed Exhibit 13875 with the Copyright Office did it believe at [sic] the group drawing of dolls identified in that application was based on any pre-existing work?"

(7) "At the time Mattel filed its copyright application in Exhibit 13875, did the group drawing of dolls identified in that application incorporate any pre-existing material?"

(8) "At the time Mattel filed its copyright application in Exhibit 13875, did it believe that the group drawing of dolls identified in that application incorporated any pre-existing material?"

(9) "Is thank you [sic] group drawing of dolls identified in Mattel's copyright application, Exhibit 13875 based on the Toon Teens creation of Mattel's employee Lily Martinez?"

(10) "At the time Mattel filed its application for copyright registration of the group drawings of dolls set forth in Exhibit 13875, did it believe that the work identified therein was based on in whole or in part based on the work of Mattel's employee Lily Martinez referred to as Toon Teens?"

(11) "At the time that Mattel filed its copyright application for group drawing of dolls identified in Exhibit 13875, did it believe that that group drawing of dolls incorporated any pre-existing material from the work Toon Teens work of Mattel's employee Lily Martinez?"

(12) "In filing the copyright application marked as part of Exhibit 13875 at this time mode knowly [sic] fail to identify Toon Teens as pre-existing material upon which the group drawing of dolls identified in Exhibit 13875 was based?"

(13) "In filing with the copyright office its application set forth in Exhibit 13875, did Mattel deliberately choose not to identify Toon Teens as pre-existing material upon which the group drawing of dolls set forth therein was based?"

(14) "In filing the copyright application marked as part of Exhibit 13875, did Mattel know knowingly fail to identify the group drawing of dolls identified therein as based on a pre-existing work in the form of Lily Martinez's Toon

Teens?"

(15) "In filing the copyright application marked as part of Exhibit 13875, did Mattel deliberately choose not to identify the group drawing of dolls set forth therein as based on pre-existing work in the form of Lily Martinez's Toon Teens?"

The Discovery Master overruled Mattel's objections on the grounds that the underlying copyright registration was a public filing, and the parties agreed that Moore would re-appear for deposition after the Court rules on the instant Objections.

## II. Discussion

### A. Foundation

Mattel argues that the MGA Parties impermissibly requested that a 30(b)(1) witness testifying in his individual capacity respond to questions about conclusions reached by Mattel, the entity. The Court need not reach this issue until trial because Rule 30(c)(2) permits counsel to instruct a deponent not to respond "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Mattel's instruction to Moore was therefore improper to the extent that it relied upon a lack of foundation. The Court nonetheless rejects the MGA Parties' request that the Court sanction Mattel for an improper instruction not to answer – it is clear that the instruction was tied up with the assertion of privilege, which is a proper basis for an instruction, and it is unclear whether counsel would have similarly instructed Moore absent a claim of privilege.

### B. Privilege

The attorney-client privilege encourages "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677 (1981). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Id.* at 677; *see also Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385 (1947) ("either party may compel the other to disgorge whatever facts he has in his possession"); *see also Prot. Nat'l Ins. Co. v.*

4

1  *Comm'w Ins. Co.*, 137 F.R.D. 267, 280 (D. Neb. 1989) ("There is simply nothing wrong with
2  asking for facts from a deponent even though those facts may have been communicated to the
3  deponent by the deponent's counsel."). The party invoking the privilege bears the burden of
4  proving its applicability. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992)

5          The privilege does not attach to conclusions reached independent of counsel's
6  advice. *See*, *Am. Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, No. 06-607, 2007 WL 2823337, at *1
7  n.1 (W.D. Pa. Sept. 26, 2007) (noting lack of indicia of evidence that meeting notes were
8  inspired by legal advice but generally describing potential abuses that would result if meeting
9  notes could be withheld on grounds of privilege); *Case v. Unified School Dist. No. 223*, Civ. A.
10 No. 94-2100-GTV, 1995 WL 477705, at *2 (D. Kan. Aug. 11, 1995) ("Discovery of a lay
11 opinion, impression or conclusion formed independently, even after receiving legal advice, and
12 which does not necessarily disclose the content of the attorney-client communication, on the
13 other hand, does not violate the privilege.").

14         Mattel attempted to lay a foundation as to privilege at a March 9, 2010 hearing,
15 during which Moore testified that the 2006 Copyright Registrations were completed at the
16 direction of outside counsel. Specifically, Moore testified that outside counsel came up with the
17 idea to register Bryant's Bratz drawings with the Copyright Office, communicated the idea to
18 Moore, completed the forms for Mattel, and delivered the forms to Moore for his signature.
19 Moore disclaimed any personal knowledge or opinion of the reason for filing and/or content of
20 the forms, the completion of boxes 6(a) and 6(b) of the applications, and the broader issue of
21 whether Bratz is a derivative work. Moore also testified that the registrations were filed solely
22 for the benefit of Mattel's position in the instant litigation, and that the forms' filing did not
23 provide Mattel with any "business"-related benefit.

24         The Court considers Moore's testimony as to the 2006 Copyright Registrations
25 unaligned with Moore's admissions about his role and activity at Mattel both before and after the
26 filing of the Copyright Registrations. Moore is the Executive Counsel for Mattel, and worked in
27 Mattel's in-house intellectual property practice in 2006. Moore testified that, prior to the filing
28 of the 2006 Copyright Registrations, he oversaw the filing of approximately 10 to 50 Copyright

Registrations, only twenty percent of which involved the input of outside counsel. Moore was also intimately familiar with the instant litigation, having served as an in-house Mattel attorney since its incipiency.

Mattel therefore failed to lay a foundation as to privilege, and the Court finds that Moore and Mattel formed independent beliefs about whether Bratz was a derivative work of Toon Teens, based on extensive prior experience with identical copyright registration applications and the facts at issue. The outsourcing of a task of the type that Moore had long supervised is troubling – it represents the use of outside counsel as a subterfuge to protect Moore's own beliefs about what a derivative work is and whether Bratz is or was a derivative work. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer."). While *Rhone-Poulenc* recognized that "[f]acts are discoverable, the legal conclusions regarding those facts are not," *id.*, it is inconceivable, based on the extensive record developed at the March 9, 2010 hearing, that Moore did not form independent legal conclusions that were then filtered through outside counsel. While such conclusions may constitute Moore's attorney work product, *see Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992), they are not protected by the privilege.

Finally, even if the Court were to find that Moore had no independent beliefs about the content of the 2006 Copyright Registrations, that does not shield the underlying issues from discovery. *See In re Six Grand Jury Witnesses*, 979 F.2d 939, 945 (2d Cir. 1992).

This does not mean that Moore and/or Mattel must testify about the content of their communications with outside counsel. Such a disclosure would only be necessary in the event that Mattel waived the attorney-client privilege with respect to the 2006 Copyright Registrations, *see Rhone-Poulenc*, 32 F.3d at 864 (dismissing decisions that require disclosure of communications where client's state of mind is at issue), or upon a showing that the crime-fraud exception applies, s*ee Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1992)).

6

This issue overlaps with the distinguishable issue of whether 30(b)(6) witnesses must disclose knowledge obtained through communications with counsel.  In such circumstances, courts have held that 30(b)(6) witnesses may testify as to facts learned from review of work product, but not as to content of attorneys' impressions.  *See Prot. Nat'l Ins. Co. v. Comm'w Ins. Co.*, 137 F.R.D. 267, 278-82 (D. Neb. 1989); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 509 (W.D. La. 1988) (same).  Here, the MGA Parties' proposed inquiry does not focus on the content of Mattel's communications with outside counsel, the advice rendered by outside counsel, or any beliefs uniquely formed as a result of communications with outside counsel.  The MGA Parties wish to ask Moore about his beliefs. And the Court finds, based on Moore's testimony, that Moore had independent beliefs about the content of the registrations.

### C.   Work Product Doctrine

Moore is nonetheless an attorney, whose independent beliefs constitute work product. *See* Fed. R. Civ. P. 26(b)(3) (permitting disclosure "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means"); *see Upjohn*, 449 U.S. at 401.  The work product doctrine protects both "non-opinion" work product – *e.g.*, factual conclusions – and "opinion work product" – *e.g.*, beliefs as to a claim. "Opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling."  *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992); *see also Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 932 (N.D. Cal. 1976) (compelling production of opinion work product when content of attorney's mental impressions was at issue – and was made at issue by party opposing discovery) (citing 4 J. Moore, Federal Practice P26.64(4), at 26-447 (2d ed. 1975) ("[W]hen the activities of counsel are inquired into ***because they are at issue in the action before the court***, there is cause for production of documents that deal with such activities, though they are 'work product.'") (emphasis added); *see also Schmidt v. Levi Strauss & Co.*, No. C04-01026 RMW (HRL), 2007 WL 628660, at *5 (N.D. Cal. Feb. 28, 2007) (citing *Holmgren*,

7

976 F.2d at 577) (discussing heightened showing of need with respect to opinion work product).

Mental impressions and conclusions reached by in-house counsel are far more likely to constitute work product, as opposed to mental impressions and conclusions reached by any other corporate employee. As a result, courts have required a substantial showing of need even prior to a deposition of an in-house counsel. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (9th Cir. 1986); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (rejecting unyielding adherence to *Shelton* in favor of flexible approach which balances all applicable factors, including but not limited to "need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted"). Though Mattel did not request such a showing here, the showing is likely satisfied.

This litigation is distinct. The parties are direct competitors in a small market. Over the last several months, each party has sought unprecedented inquiry into the operations of the other, claiming that almost every business decision has implications not just in a broader legal sense, but on the progress of this very case. As a result, the "business operations" and "legal operations" have become almost indistinguishable, and the instant dispute represents just one example of how the business operations of each company have been marshaled by outside counsel to effect progress in the underlying litigation. For Mattel and the MGA Parties, litigation has apparently become the present business operation. And Moore, as an in house attorney deeply involved in both the business operations and the legal decisions of Mattel, is a necessary witness: he possesses knowledge about Mattel's internal decision-making and state of mind, which is directly relevant to the MGA Parties' defenses and affirmative claims. Not only is Moore a necessary deponent, despite being an in-house attorney, but the disclosure of his opinion work product is supported by the compelling need for such materials under *Holmgren*.

8

| | |
|---|---|
| 1 | **III.   Disposition** |
| 2 | For the foregoing reasons, the Court OVERRULES the Objections. |

IT IS SO ORDERED.

DATED: March 11, 2010

_____
DAVID O. CARTER
United States District Judge