QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>              Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**MATTEL'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS**<br><br>Date:    TBD<br>Time:    TBD<br>Place:  Courtroom 9D<br><br>Discovery Cut-off:  June 11, 2010<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

00505.07975/3324534.4

CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on a date and time to be determined, in the Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to compel the MGA Parties to produce, either to Mattel or for the Court's *in camera* review, all documents related to MGA's purported "internal investigations" concerning Mattel's allegations of trade secret theft, including any Mattel documents uncovered during or in connection with these investigations, any evidence of MGA's use or consideration of Mattel information, any witness statements, any documents concerning how these investigations were conducted, any communications regarding the investigations and/or their results, and any reports that summarize the findings of the investigations, on the grounds that such information is relevant and non-privileged.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

## **Statement of Compliance**

The parties discussed these issues, including with the Court, on several occasions beginning on January 6, 2010 and did not reach resolution.

DATED: March 11, 2010          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

                               By /s/ Michael T. Zeller
                                  Michael T. Zeller
                                  Attorneys for Mattel, Inc.

00505.07975/3324534.4

-i-   CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel learned for the first time at Isaac Larian's deposition in December 2009 that MGA purportedly conducted "internal investigations" to determine whether any MGA employees took or obtained Mattel's trade secret information.[1] Diane Goveia-Gordon, MGA Canada's 30(b)(6) witness, similarly testified that an internal investigation was conducted after the Peel Police in Canada contacted Ms. Brisbois about her theft from Mattel Canada. These "investigations" are obviously highly relevant, including to show MGA's state of mind, yet MGA refuses to produce any information about them on privilege grounds. Its privilege assertions are unsupported and misguided. MGA should be compelled to promptly produce either directly to Mattel or for the Court's *in camera* review all documents relating to the "investigations," including documents that refer or relate to the mechanics of MGA's investigations, any reports or summaries of the findings of the investigations, and any of Mattel's documents or evidence of use of Mattel's information that MGA discovered.

## Relevant Background

One of Mattel's core Phase 2 claims is that MGA engaged in widespread, and intentional, misappropriation of Mattel's protected trade secrets. In particular, Mattel alleges that Larian and others at MGA induced several Mattel employees to leave Mattel for MGA and to steal Mattel's most sensitive business information.[2] Mattel's allegations of trade secret theft are central to several of its Phase 2 claims, including for RICO violations and for misappropriation of trade secrets.

Despite the relevance of information concerning MGA's trade secret thefts, MGA has attempted to thwart Mattel from taking meaningful discovery on that issue. In particular, MGA managers Jorge Castilla, Mariana Trueba, and Gustavo

---

[1] See Larian Depo. Tr., dated December 10, 2009, at 667:1-673:10.
[2] See TAAC at ¶¶ 1-7, 28-94, 98, 156-165.

Machado have all invoked their purported Fifth Amendment rights to refuse to respond to deposition questions and to produce documents.[3] Mr. Castilla invoked over 500 times and refused to answer any question involving his access to Mattel confidential and trade secret information, his theft of such information, his attempts to destroy evidence in this case, and his use of Mattel's information for MGA's benefit.[4] Mr. Machado invoked over 100 times and, at his most recent deposition, refused to answer any questions at all, including questions such as: "Did you also, before you left Mattel, take Mattel confidential information from the offices of Mattel?"[5] and "Did you use any of the Mattel confidential information that you had at MGA?"[6] Ms. Trueba refused to answer any and all questions at her deposition as well, including, "Did you use any of the Mattel confidential information that you had while you were at MGA in Mexico?" and "Did you use any of the Mattel confidential information that you had while you were at MGA in Mexico?"[7] Indeed, Ms. Trueba even invoked as to questions necessary to establish whether she has a Fifth Amendment right in the first place, such as whether she had asked for or received a non-prosecution letter from any state or federal prosecutor, or whether she had any apprehension of being prosecuted in the United States.[8]

---

[3] See, e.g., Castilla Depo. Tr., dated October 22, 2008, at 51:15-21, 80:15-20, 108:4-7, 108:24-111:10-21, 112:11-23, 113:19-23, 142:15-25, 146:11-14, 151:152:22, 168:17-20, 180:22-181:1, 190:13-22, 229:13-17, 251:24-253:14, 271:2-4, 344:6-8; Machado Depo. Tr. Vol. 1, dated October 14, 2008, at 53:10-14, 61:23-63:3, 91:10-13, 91:20-24, 106:5-107:2, 111:18-112:11; Machado Depo. Tr. Vol. 2, dated January 19, 2010, at 10:3-16:22; Trueba Depo. Tr., dated January 20, 2010, at 8:16-20:14.

[4] See, e.g., Castilla Depo. Tr. at 51:15-21; 80:15-20; 108:4-7; 108:24-111:10-21; 112:11-23; 113:19-23; 142:15-25; 146:11-14; 151:152:22; 168:17-20; 180:22-181:1; 190:13-22; 229:13-17; 251:24-253:14; 271:2-4; 344:6-8.

[5] Machado Depo. Tr. Vol. 2, dated January 19, 2010, at 11:8-12.

[6] Id. at 14:14-17.

[7] Trueba Depo. Tr., dated January 20, 2010, at 12:12-17, 14:8-14.

[8] Id. at 16:23-20:6.

And as the Court knows, MGA's 30(b)(6) witness on trade secret issues, Louis Small, claimed complete ignorance about how certain Mattel documents were in MGA Mexico's possession, despite repeated orders that MGA Mexico provide that information.[9]

At his deposition on December 10, 2009, Isaac Larian testified that MGA has done an "investigation internal" to determine whether any of MGA's employees have ever taken or obtained Mattel's trade secrets.[10]  Although Mr. Larian provided only vague information about the investigations, he testified that they were prompted by Mattel's allegations that MGA employees including Castilla, Brisbois, Trueba and Vargas, and possibly others, took Mattel's documents with them when they left Mattel and joined MGA.[11]  Mr. Larian explained that the purported purpose of these investigations was so that he would "know if [those employees] had followed [his] direction" that they not bring anything to MGA when they came from Mattel.[12]

Similarly, at the deposition of MGA Canada's 30(b)(6), MGA Canada's President, Diane Goveia-Gordon, testified that an "investigation" was conducted into the theft of Mattel information by Janine Brisbois.[13]  MGA's counsel instructed Ms. Goveia-Gordon not to answer questions about the substance of that "investigation" and indeed would not even let her answer whether the "investigation" resulted in some kind of report.[14]  That is so despite the witness' testimony that she reviewed documents relating to the investigation in preparation

---

[9] Lewis Small Depo. Tr. at 1449:17-1456:4.
[10] Larian Depo. Tr. at 667:9-13.
[11] Id. at 669:4-15, 672:3-7.
[12] Id. at 672:14-22.
[13] Goveia-Gordon Depo. Tr. at 632:5-11, 728:14-23.
[14] Id. at 729:13-24, 733:23-735:3.

1  for her deposition which refreshed her recollection, and which nevertheless have not
2  been produced to Mattel.[15]

3  Despite Mattel's requests, MGA is refusing to produce any documents
4  relating to these "investigations," including even any Mattel documents that were
5  discovered in them. MGA claims that its investigations are privileged and that
6  MGA is not relying on them "for purposes of defending this lawsuit," such that Mr.
7  Larian's discussion of the investigations does not "implicat[e] the waiver of
8  attorney-client privilege."[16] Notably, that is exactly what MGA claimed in Phase 1,
9  only to later sandbag Mattel by relying on its purported internal investigations at
10 trial. In fact, after expressly disclaiming any intent to rely on counsel,[17] Larian
11 repeatedly injected his lawyers' purported investigation into Bryant's ownership
12 rights in Bratz to show purported good faith during the Phase 1 trial, knowing that
13 Mattel did not have the relevant documents to rebut his claims.[18]

## Argument

### I. DOCUMENTS RELATED TO MGA'S "INTERNAL INVESTIGATIONS" INTO MATTEL'S TRADE SECRET THEFT ALLEGATIONS ARE HIGHLY RELEVANT

Evidence relating to MGA's theft of Mattel's trade secrets goes to the heart of Mattel's Phase 2 claims. Indeed, Larian admitted that MGA's purported investigations were prompted by Mattel's allegations of trade secret theft and that

---

[15] Id. at 634:15-636:13.
[16] Larian Depo. Tr. at 670:6-10.
[17] See MGA Parties' Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion *In Limine* No. 7 to Prevent MGA From Asserting or Relying on an Advice of Counsel Defense ("MGA Opp. to Mattel's MIL No. 7"), Docket No. 3387 at 2 ("Thus, the MGA Parties did not plead, and do not intend to rely upon, the advice of counsel defense.").
[18] See Motion of Mattel, Inc. for Order Compelling Production of Communications Made in Furtherance of Crimes and Frauds And as to Which MGA has Waived Attorney-Client Privilege ("Mattel's Crime-Fraud Motion"), Docket No. 5035 at 22-27.

the purpose of the investigations was to uncover whether any such thefts occurred. The investigations and documents relating to them are all clearly relevant, including to show MGA's state of mind, a key issue. See E.E.O.C. v. Safeway Store, Inc., 2002 WL 31947153, *7 (N.D. Cal. Sept. 16, 2002) (compelling production of evidence concerning defendant's internal investigative report, including "investigator's comments about the evidence (e.g., witness credibility)," where such report contained evidence that "goes to [defendant's] state of mind, an element directly relevant to" plaintiff's claim); Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (compelling disclosure of "all documents relating to any internal investigation of the alleged incident" because such information "will allow [plaintiff] to ascertain defendant's version of the facts, identify witnesses, and potentially impeach the [defendant's] trial testimony").

Accordingly, absent any showing of privilege, MGA should be ordered to produce all documents that refer or relate to its internal investigations into Mattel's trade secret allegations, including any documents concerning how these investigations were conducted, any reports that summarize the findings of these investigations, any witness statements, and any of Mattel's documents that were located by MGA in the course of these investigations.

## II. THE INFORMATION MATTEL SEEKS IS NOT PRIVILEGED

MGA has refused to produce any information relating to its "investigations" on privilege grounds. MGA has the burden of demonstrating that any claimed privileges apply. U.S. v. Martin, 278 F.3d 988, 999-1000 (9th Cir. 2002) ("The burden is on the party asserting the [attorney-client] privilege to establish all the elements of the privilege."); A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 192 (C.D. Cal. 2006) ("The party claiming work product immunity has the burden of proving the applicability of the doctrine."); see also In re Syncor Erisa Litig., 229 F.R.D. 636, 643 (C.D. Cal. 205) (quoting United States v. Gray, 876 F.2d 1411,

00505.07975/3324534.4

- 5 -

CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATION

1415 (9th Cir. 1989)) ("Because the attorney-client privilege is in derogation of the search for truth, it is 'narrowly and strictly construed.'").  It has not met that burden.

### A. Facts Concerning MGA's Trade Secret Theft Are Not Protected By The Attorney-Client Privilege

The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. 383, 395 (1981).  Nor can a party "conceal a fact merely by revealing it to his lawyer." Id.  Thus, any underlying facts uncovered in MGA's "investigation" certainly are not privileged.

The attorney-client privilege also has no application to any documents stolen from Mattel which were uncovered by MGA in its "investigations"; any documents evidencing MGA's use of information in those Mattel documents at MGA; and any documents containing other factual information concerning MGA's trade secret theft, including such information contained in reports or summaries of MGA's findings.  See E.E.O.C., 2002 WL 31947153, *4 (attorney-client privilege inapplicable where defendants' internal investigative reports "do not appear to involve any communications between [defendant] as a client and its counsel for the purpose of obtaining or providing legal advice"); Elliott v. Webb, 98 F.R.D. 293, 297 (D.C. Idaho 1983) (compelling disclosure of factual data contained in "records of the police department's internal investigation," and stating that if "the defendants believe that portions of the internal investigation reports contain evaluative summaries or recommendations that should not be discovered, the reports may be submitted to the court for in camera inspection prior to delivery to plaintiff").  Relevant factual information is discoverable even if it was later communicated to MGA's attorneys.  See Upjohn, 449 U.S. at 395.

### B. Facts Concerning MGA's Trade Secret Theft Are Not Protected Attorney Work Product

Like the attorney-client privilege, "[t]he work product doctrine does not protect relevant, objective and evidentiary facts, and the identity of persons with knowledge of those facts, even if counsel became privy to those facts during interviews or investigation in the course of litigation." 7 Moore's Federal Practice § 33.62 [2], at 33-57, Mathew Bender 3d ed.  Thus, "factual information is discoverable even when the information was obtained through the attorney's own investigation." Doan v. Astrue, 2009 WL 3246776 (S.D. Cal. 2009).

Moreover, even where it applies, "the work-product doctrine is not an absolute privilege, but a qualified one." E.E.O.C., 2002 WL 31947153, *6. "Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship." Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989).  Indeed, even where a document contains "some degree of [an attorney's] opinion or mental impression," the document may nevertheless be discoverable upon a showing of need. E.E.O.C., 2002 WL 31947153, *6 (even though "summaries of witness interviews" arguably reflected "some degree of opinion or mental impression," they were "largely a factual narrative," and the plaintiff established that such information "cannot be obtained from any other equivalent means").

Here, the work product doctrine clearly would not protect any of Mattel's underlying documents that MGA discovered during its internal investigation, nor any evidence of MGA's use of Mattel's information.  Even if there is some factual information that reflects a degree of attorney thought process (as, for example, witness interviews might), Mattel nevertheless is entitled to such information

because it has a compelling need for evidence concerning MGA's theft of its trade secrets, and MGA has refused to provide such evidence through other discovery means. Indeed, MGA consistently has impeded Mattel's attempts to obtain evidence to prove its trade secret theft claims, including through repeated invocations of the Fifth Amendment and stonewalling at 30(b)(6) depositions on these issues. And this evidence uniquely goes to MGA's state of mind, since it shows what it knew; Mattel has a compelling need for it.

Accordingly, Mattel's compelling need for evidence concerning MGA's trade secret theft and use, and Mattel's inability to obtain such evidence through other means, warrant disclosure of any fact-based work product concerning MGA's internal trade secret investigations. See Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc., 553 F. Supp. 45, 50-51 (S.D.N.Y. 1982) (where defendant's principals had invoked their privilege against self incrimination at deposition, plaintiff "carried its burden of demonstrating that it has a substantial need of the factual findings made in the [defendant's internal] investigation and that it is unable without undue hardship to obtain the substantial equivalent of the desired information by other means"); In re Grand Jury Subpoena, 81 F.R.D. 691, 695 (S.D.N.Y. 1979) (defendant's "claim of work-product privilege" over notes, summaries and reports from its internal investigation "must give way to the government's need for information" where defendants' witnesses are "effectively unavailable" because of their "refus[al] to testify absent immunity from prosecution").

### C. Any Allegedly Privileged, Non-Factual Information Should Be Either Produced Or Submitted *In Camera.*

Finally, even if MGA can meet its burden of showing that certain documents related to its investigations contain opinion work product or are attorney-client communications, they should be submitted *in camera* to ensure that all underlying factual information is produced to Mattel. See Burlingame v. County of Calaveras, 2007 WL 2317301, *3 (E.D. Cal. 2007) (underlying factual information involved in

00505.07975/3324534.4

- 8 -

CASE NO. CV 04-9049 SGL (RNBx)
MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATION

investigation report prepared for the county by an attorney is discoverable even though attorney's mental impressions, conclusions and/or legal theories are not). There is certainly ample reason to doubt the legitimacy of MGA's privilege assertions in this case, and these documents are clearly critical.

Moreover, barring a binding Order that MGA may not rely on its "internal investigations" at trial or for any purpose in any way, either expressly or implicitly, there can be no basis for MGA's privilege claims, even as to any opinion work product. At the Phase 1 trial, MGA sought to have the best of both worlds by (1) relying on its lawyer's purported investigations, and (2) *not* producing any unfavorable documents about those investigations.[19] That was despite Mattel's filing, before trial, of a motion *in limine* to prevent just that, to which MGA responded – falsely – that it would not rely on its lawyer's investigations at trial.[20] MGA should not be permitted to sandbag Mattel yet again. Barring a binding preclusion Order, *all* information relating to the "investigations" should be immediately produced because Mattel must obtain access to MGA's documents concerning its investigations -- and take follow-up discovery based thereon -- to rebut any assertions that MGA acted in good faith by conducting such investigations.[21]

## Conclusion

For the foregoing reasons, this motion should be granted in its entirety.

---

[19] Mattel's Crime-Fraud Motion, Docket No. 5035 at 22-27.
[20] MGA Opp. to Mattel's MIL No. 7, Docket No. 3387 at 2.
[21] The law is clear that MGA's express or implied reliance on its lawyers' supposed investigations to establish its good faith would constitute a waiver of any privilege that might apply to documents related to the investigation. See e.g., In re Broadcom Corp. Sec. Litig., 2005 WL 1403516, *1 (C.D. Cal. Feb. 10, 2005) ("A reliance on counsel privilege waiver does not require a party's direct statement that counsel was relied upon. It may also arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the party's own benefit."); see also Mattel's Crime-Fraud Motion, Docket No. 5035 at 22-27.

| | | |
|---|---|---|
| 1 | DATED: March 11, 2010 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP |

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.