SACV 04-9049 DOC - 3/11/2010 - Volume I

1

1       **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                       - - - - - - -

5   CARTER BRYANT,                    )
                                      )
6           Plaintiff,                )
                                      )
7       vs.                           ) No. SACV 04-9049 DOC
                                      )       Volume I
8   MATTEL, INC.,                     )
                                      )
9           Defendant.                )
    _____)

10

11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                      Pretrial Motions

15                   Santa Ana, California

16                 Thursday, March 11, 2010

17

18

19

20  Debbie Gale, CSR 9472, RPR
    Federal Official Court Reporter
21  United States District Court
    411 West 4th Street, Room 1-053
22  Santa Ana, California 92701
    (714) 558-8141

23

24  04cv9049 Mattel 2010-03-11 SC V1

25

1   **APPEARANCES OF COUNSEL:**

2

    FOR INTERVENER DEFENDANT MGA ENTERTAINMENT, INC.:

3

            ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
4           BY:  THOMAS S. McCONVILLE
                 Attorney at Law
5           4 Park Plaza
            Suite 1600
6           Irvine, California 92614
            (949) 567-6700
7
            - AND -
8
            ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
9           BY:  WILLIAM A. MOLINSKI
                 Attorney at Law
10          777 South Figueroa Street
            Suite 3200
11          Los Angeles, California 90017
            (213) 612-2256
12

13

14  FOR DEFENDANT MATTEL, INC.:

15          QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
            BY:  MICHAEL T. ZELLER
16               MARSHALL M. SEARCY III
                 Attorneys at Law
17          865 South Figueroa Street
            10th Floor
18          Los Angeles, California 90017
            (213) 443-3000
19

20

21

22

23

24

25

DEBBIE GALE, U.S. COURT REPORTER

1                          **I N D E X**

2     **PROCEEDINGS**                                **PAGE**

3     Pretrial motions                                4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SACV 04-9049 DOC - 3/11/2010 - Volume I

4

|   |   |
|---|---|
|   | 1 | **SANTA ANA, CALIFORNIA, THURSDAY, MARCH 11, 2010** |
|   | 2 | **Volume I** |
|   | 3 | (11:36 a.m.) |
| 11:36 | 4 | THE COURT:  All right.  We're on the record. |
| 11:36 | 5 | Because of the incessant and constant bickering |
| 11:36 | 6 | between Mattel and MGA concerning the samples and exhibits, |
| 11:36 | 7 | the Court has been informally inquiring of counsel after |
| 11:36 | 8 | I've received a notation from Deputy Clerk Jim Holmes from |
| 11:36 | 9 | the Phase I trial.  New court order this morning: |
| 11:36 | 10 | All first-generation dolls and original Carter |
| 11:36 | 11 | Bryant drawings and all drawings created by trial shall |
| 11:36 | 12 | remain in the custody of the clerk of the court.  All |
| 11:36 | 13 | remaining trial exhibits shall be returned to counsel for |
| 11:36 | 14 | safekeeping until any appeal period has run. |
| 11:37 | 15 | The Court, through Adrian's incredible efforts, |
| 11:37 | 16 | has found that -- what it believes are the first generation |
| 11:37 | 17 | dolls and drawings that Mr.-- well, that Judge Larsen had at |
| 11:37 | 18 | the time of trial.  If this is accurate, then the Court |
| 11:37 | 19 | believes that the other exhibits have been returned to |
| 11:37 | 20 | counsel.  Counsel, quite frankly, presently don't know at |
| 11:37 | 21 | this exact moment what's been returned to their offices. |
| 11:37 | 22 | Phone calls have been placed by Mr. Zeller and |
| 11:37 | 23 | Mr. McConville and Bill -- |
| 11:37 | 24 | MR. MOLINSKI:  Molinski. |
| 11:37 | 25 | THE COURT:  -- trying to figure out what's been |

SACV 04-9049 DOC - 3/11/2010 - Volume I

5

| 11:37 | 1 | returned. |
| 11:37 | 2 | I'm going to order all returned dolls, all |
| 11:38 | 3 | returned exhibits are to be to this Court by 8:00 o'clock |
| 11:38 | 4 | Saturday morning, whether they're in San Francisco or |
| 11:38 | 5 | Los Angeles.  I'll make a further order at that time.  But |
| 11:38 | 6 | all of the returned exhibits are to be here by 8:00 o'clock |
| 11:38 | 7 | Saturday morning for both parties. |
| 11:38 | 8 | Any exhibit not here will meet with sanctions. |
| 11:38 | 9 | You have plenty of time now.  And counsel will include a |
| 11:38 | 10 | list of those returned exhibits.  You have plenty of time |
| 11:38 | 11 | now to accomplish that.  So we're not waiting for an |
| 11:38 | 12 | associate to report back to you, just go do it now. |
| 11:38 | 13 | And that should stop the constant bickering. |
| 11:38 | 14 | Because, at the present time, neither party has great |
| 11:38 | 15 | credibility with the Court in terms of their recordkeeping. |
| 11:38 | 16 | It's been farmed out to associates, and lead counsel have to |
| 11:38 | 17 | call various associates.  I've got new counsel on behalf of |
| 11:39 | 18 | MGA, who weren't present at the first case.  So I think that |
| 11:39 | 19 | that's the easy way to resolve it. |
| 11:39 | 20 | Now, at that time I'll decide, after listening to |
| 11:39 | 21 | lead counsel, whether I capture those exhibits for trial and |
| 11:39 | 22 | freeze those, or not.  That's the first step, so we won't |
| 11:39 | 23 | move to that second step, and we may never move to that |
| 11:39 | 24 | second step, if an accommodation can be worked out in the |
| 11:39 | 25 | meantime by all counsel. |

| | | |
|--|--|--|
| 11:39 | 1 | I'm not saying that necessarily freezes -- which |
| 11:39 | 2 | is your concern for trial purposes, Mr. McConville -- the |
| 11:39 | 3 | exhibits, but it almost freezes it.  If there's one missing |
| 11:39 | 4 | doll, et cetera -- but we need to start completing this now. |
| 11:39 | 5 | It's unduly consumptive of my time. |
| 11:39 | 6 | Hopefully, that resolves it. |
| 11:39 | 7 | Millie, I'm going to request that you -- or order, |
| 11:39 | 8 | whatever -- that you check with Jim Holmes and make |
| 11:39 | 9 | absolutely certain that we've gotten everything; that this |
| 11:39 | 10 | is his memory also.  I don't need an attestation.  I trust |
| 11:39 | 11 | the Court's recordkeeping. |
| 11:40 | 12 | Adrian, would you keep this back in a safe |
| 11:40 | 13 | location for me.  And I need this Saturday morning at |
| 11:40 | 14 | 8:00 o'clock in the morning. |
| 11:40 | 15 | Or give that to Stephanie so Adrian doesn't have |
| 11:40 | 16 | to come in.  We'll deposit it back in a secure location, |
| 11:40 | 17 | maybe in our storage room right down the hallway. |
| 11:40 | 18 | Any other questions, Millie.  I want you to be in |
| 11:40 | 19 | the loop. |
| 11:40 | 20 | DEPUTY IN CHARGE:  Do you want us to find a place |
| 11:40 | 21 | for these dolls so that there's access for counsel? |
| 11:40 | 22 | THE COURT:  Yes. |
| 11:40 | 23 | DEPUTY IN CHARGE:  If we can get an idea how big |
| 11:40 | 24 | of a space we're looking at, it would be helpful. |
| 11:40 | 25 | MR. ZELLER:  My recollection of the overall volume |

| | | |
|---|---|---|
| 11:40 | 1 | of this is about 40 boxes. |
| 11:40 | 2 | DEPUTY IN CHARGE:  40 boxes the size of a doll? |
| 11:40 | 3 | That type of box? |
| 11:40 | 4 | MR. ZELLER:  No.  I apologize.  Actually, more |
| 11:40 | 5 | like -- not perhaps that size of box. |
| 11:40 | 6 | THE COURT:  That size? |
| 11:40 | 7 | MR. ZELLER:  Yes, more this size. |
| 11:40 | 8 | THE COURT:  That's not a large volume. |
| 11:40 | 9 | MR. ZELLER:  I might be off on the number, but |
| 11:40 | 10 | that's my general recollection. |
| 11:40 | 11 | THE COURT:  Yeah.  Just check with Jim Holmes.  I |
| 11:41 | 12 | want to make sure he's satisfied and his memory is one box. |
| 11:41 | 13 | If he has a different memory -- 'cause some of this -- they |
| 11:41 | 14 | were in Judge Larsen's chambers, but his law clerks are no |
| 11:41 | 15 | longer there, and he's no longer there. |
| 11:41 | 16 | DEPUTY IN CHARGE:  Right. |
| 11:41 | 17 | MR. ZELLER:  The plan is we will have them |
| 11:41 | 18 | physically delivered at 8:00 a.m. |
| 11:41 | 19 | THE COURT:  Physically delivered at 8:00 o'clock |
| 11:41 | 20 | in the morning.  Come in.  I want to see everything that's |
| 11:41 | 21 | been returned to your offices.  That way, if you believe |
| 11:41 | 22 | something's not been returned, we know it now.  And we'll go |
| 11:41 | 23 | back and search and see if there's something missing in the |
| 11:41 | 24 | court records, so we don't get up to trial or the complaint |
| 11:41 | 25 | that we didn't have discovery and the chance -- that we |

11:41  1   didn't have the chance to look at that.  Okay?  Thank you

11:41  2   very much.

11:41  3              DEPUTY IN CHARGE:  Okay.

11:41  4              MR. ZELLER:  Thank you.

11:41  5              MR. McCONVILLE:  Thank you, Your Honor.

11:41  6                 *(Pause in the proceedings at 11:41 a.m.)*

11:42  7                 *(Proceedings resumed at 11:44 a.m.)*

11:44  8              THE COURT:  The order concerning the Wing

11:44  9   privilege will be out right after lunch.  Okay.  So what I

11:44 10   did yesterday with Mr. Wing and those privileges and

11:44 11   nonprivileges, you'll have a formal order after lunch.  So.

11:44 12              I'm going to refer to Issue No. 19, the Motion to

11:44 13   Compel Production of False Reports by Mattel to Retailers.

11:44 14              You wanted to additionally be heard on that on

11:44 15   behalf of Mattel.

11:44 16              MR. ZELLER:  Yes, Your Honor.  Thank you.

11:44 17              Just very briefly, the -- MGA's papers reference

11:44 18   the Ron Brawer deposition; that this is what the basis is

11:44 19   for the motion.  In fact, Mr. Brawer, the only person he

11:44 20   identified as being a person who actually created fabricated

11:44 21   reports was himself, and this was when he was a Mattel

11:44 22   executive.  This is his testimony.  He is now over at MGA.

11:45 23   Obviously, we view that testimony as highly suspect at best.

11:45 24              There are -- there is no evidence in this case the

11:45 25   Matt Bousquette or anyone else, contrary to the papers,

| | |
|---|---|
| 11:45 | 1 |
| 11:45 | 2 |
| 11:45 | 3 |
| 11:45 | 4 |
| 11:45 | 5 |
| 11:45 | 6 |
| 11:45 | 7 |

1    created any sort of false reports.  We have been through

2    Mr. Bousquette's documents, as the Court knows.  We're

3    unaware of any such supposed false reports.  Mr. Brawer,

4    himself, during the deposition was asked in many different

5    ways:  Which reports are these?  Who are the retailers?

6    What meetings did this occur?  He could not even identify

7    one.

8             So, Your Honor, as far as we're concerned, we have

9    searched for whatever this would be.  But, frankly, the

10   motion ought to be denied because there's no basis and it's

11   so ambiguous at this point that, absent some sort of

12   identification by MGA as to what this is -- because,

13   obviously, any number of communications go with retailers,

14   but none of it has been identified by any witness as being

15   "Here is a false report made in this meeting," or even this

16   particular retailer.  So there's this nonspecificity to it

17   that is of concern.

18             THE COURT:  Okay.

19             Counsel, MGA.

20             MR. MOLINSKI:  Your Honor, one thing to point out

21   is the reason there's no evidence of what Mr. Bousquette has

22   done is because we have zero documents from Mr. Bousquette.

23   That's been a constant issue that, despite his key role in

24   these actions, we have gotten nothing produced from his

25   files.

DEBBIE GALE, U.S. COURT REPORTER

11:46    1          THE COURT:  Should this wait until after

11:46    2    Mr. Bousquette's deposition?  In other words, it's being

11:46    3    taken now.  Am I ruling on this prematurely?  Is there

11:46    4    something that could come out of that deposition?

11:46    5          MR. MOLINSKI:  It's possible.  I don't expect

11:46    6    Mr. Bousquette will concede he was doing false reports.  And

11:46    7    to contradict the testimony, Mr. Brawer said he and others

11:46    8    were routinely directed by Mr. Bousquette to inflate numbers

11:46    9    and reports to one retailer so as to encourage them to buy

11:46   10    more.  They would tell Wal-Mart that Toys "R" Us was buying

11:47   11    a whole lot more than they were so that Wal-Mart would buy

11:47   12    more.  He said this was a routine practice that was done on

11:47   13    a weekly and monthly basis, and a number of people were

11:47   14    involved.  We think there's an adequate foundation laid for

11:47   15    us getting those reports.

11:47   16          THE COURT:  Now, the lay billing, though, is of

11:47   17    concern.  Because, up in front of the jury, if you start

11:47   18    with "Showing you Exit No. 153 in response to the motion to

11:47   19    compel production of false reports by Mattel," that is not

11:47   20    appropriate.  In other words, the labeling, to begin with,

11:47   21    may be appropriate for the Court to consider the motion.

11:47   22    It's not appropriate in front of a jury.  So from this point

11:47   23    forward, in terms of any jury proceedings, this document is

11:47   24    not referred to in that way.

11:47   25          MR. MOLINSKI:  I understand that, Your Honor.

| | | |
|---|---|---|
| 11:47 | 1 | THE COURT:  It's prejudicial. |
| 11:47 | 2 | All right.  Motion No. 20, or MGA's Motion to |
| 11:48 | 3 | Compel Production of Documents Related to Mattel's Ownership |
| 11:48 | 4 | of Trade Secrets. |
| 11:48 | 5 | MR. ZELLER:  I understand that that has been |
| 11:48 | 6 | addressed.  The -- we have produced documents sufficient to |
| 11:48 | 7 | show matters of ownership.  However, I think it's overbroad |
| 11:48 | 8 | when it says "all."  Or if that's what the motion is |
| 11:48 | 9 | intending, I think it's unclear as to what the true scope of |
| 11:48 | 10 | what they're asking.  But we have produced agreements that I |
| 11:48 | 11 | understand either has been or will be the subject of further |
| 11:48 | 12 | testimony by Mr. Storie. |
| 11:48 | 13 | MR. MOLINSKI:  Your Honor, they did produce a |
| 11:48 | 14 | handful of agreements that were the agreements between |
| 11:48 | 15 | one -- to back up:  One of the claims is that Mattel is |
| 11:48 | 16 | suing on trade secrets that it doesn't own.  Mattel Mexico |
| 11:48 | 17 | owns it.  They produced certain distribution agreements that |
| 11:48 | 18 | purport to transfer rights.  Those agreements were entered |
| 11:48 | 19 | into after the lawsuit was filed. |
| 11:48 | 20 | THE COURT:  What about the agreements before the |
| 11:48 | 21 | lawsuit?  Those are the ones you should be interested in. |
| 11:48 | 22 | MR. MOLINSKI:  That's what we're interested in. |
| 11:48 | 23 | We have not received any such. |
| 11:48 | 24 | MR. ZELLER:  My understanding -- and I believe |
| 11:48 | 25 | that this will be confirmed by the witness -- is, is that -- |

SACV 04-9049 DOC - 3/11/2010 - Volume I

12

| | | |
|---|---|---|
| 11:49 | 1 | THE COURT:  Which witness? |
| 11:49 | 2 | MR. ZELLER:  Mr. Storie. |
| 11:49 | 3 | I understand he's the 30(b)(6) on this subject. |
| 11:49 | 4 | THE COURT:  For Mattel? |
| 11:49 | 5 | MR. ZELLER:  For Mattel. |
| 11:49 | 6 | THE COURT:  And he's going to say that these were |
| 11:49 | 7 | produced? |
| 11:49 | 8 | MR. ZELLER:  In direct response to the Court's |
| 11:49 | 9 | question:  My understanding is that there were -- that the |
| 11:49 | 10 | agreements were not written prior to that time; that there |
| 11:49 | 11 | were other -- that there were agreements and there were |
| 11:49 | 12 | operational ways. |
| 11:49 | 13 | THE COURT:  Let me repeat that back.  There are no |
| 11:49 | 14 | agreements written prior to the filing of this lawsuit; yes |
| 11:49 | 15 | or no? |
| 11:49 | 16 | MR. ZELLER:  Prior -- prior to the ones that we |
| 11:49 | 17 | produced. |
| 11:49 | 18 | THE COURT:  That's not what I asked. |
| 11:49 | 19 | MR. ZELLER:  I understand. |
| 11:49 | 20 | THE COURT:  You're changing my question.  You |
| 11:49 | 21 | heard my question.  My question is -- the accusation by MGA |
| 11:49 | 22 | is, yes, you did produce agreements, but they were |
| 11:49 | 23 | agreements after the filing of the lawsuit, which is not |
| 11:49 | 24 | relevant from their perspective.  That's not what they're |
| 11:50 | 25 | looking for.  Based upon the deposition testimony, they're |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:50 | 1 | inquiring about any agreements prior to the time of the |
| 11:50 | 2 | lawsuit. |
| 11:50 | 3 | Have you produced those or do they not exist? |
| 11:50 | 4 | MR. ZELLER:  My problem in answering the question |
| 11:50 | 5 | as phrased is I would have to know the day of the |
| 11:50 | 6 | agreements.  I know that there was a point in time, as I |
| 11:50 | 7 | understand it -- |
| 11:50 | 8 | THE COURT:  What's the date of the lawsuit? |
| 11:50 | 9 | MR. ZELLER:  The original -- those claims were |
| 11:50 | 10 | added. |
| 11:50 | 11 | THE COURT:  What's the date of the lawsuit?  What |
| 11:50 | 12 | date is dispositive from your viewpoint?  What date are you |
| 11:50 | 13 | seeking? |
| 11:50 | 14 | MR. MOLINSKI:  When they added the claims of trade |
| 11:50 | 15 | secrets. |
| 11:50 | 16 | THE COURT:  What date? |
| 11:50 | 17 | MR. MOLINSKI:  I don't know the date of that. |
| 11:50 | 18 | THE COURT:  What date?  I want a specific date. |
| 11:50 | 19 | MR. MOLINSKI:  I can certainly get that.  I |
| 11:50 | 20 | believe it was in '06 or '07, but I will get that date. |
| 11:50 | 21 | THE COURT:  Call.  In other words, it's not good |
| 11:50 | 22 | enough in this cloud of confusion to simply make a demand |
| 11:51 | 23 | without specificity. |
| 11:51 | 24 | And you are going to be ordered to comply with |
| 11:51 | 25 | specificity. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:51 | 1 | MR. McCONVILLE:  Your Honor, while we're waiting |
| 11:51 | 2 | for that, you indicated you were going to issue a ruling on |
| 11:51 | 3 | Wing.  We would, as the party -- as the holder of the |
| 11:51 | 4 | privilege, would like to make a few points, if we could, for |
| 11:51 | 5 | the Court's consideration. |
| 11:52 | 6 | THE COURT:  I have all your opposition.  I'll pay |
| 11:52 | 7 | you that courtesy, but they're going to be very few points |
| 11:52 | 8 | now. |
| 11:52 | 9 | MR. McCONVILLE:  Okay. |
| 11:52 | 10 | THE COURT:  Okay.  And that's the benefit of the |
| 11:52 | 11 | court personally reviewing the documents. |
| 11:52 | 12 | MR. McCONVILLE:  Understood. |
| 11:52 | 13 | THE COURT:  Now, who's your 30(b)(6)?  Who's your |
| 11:52 | 14 | person from Mattel's perspective who can definitively answer |
| 11:52 | 15 | on the record whatever date that is given for the trade |
| 11:52 | 16 | secret claims added by Mattel to the counterclaim -- this |
| 11:52 | 17 | date that we're going to have -- who can respond to that, |
| 11:52 | 18 | whether there were agreements before that date? |
| 11:52 | 19 | MR. ZELLER:  Mr. Storie. |
| 11:53 | 20 | THE COURT:  Excellent.  So to remove this motion, |
| 11:53 | 21 | why can't we simply have Mr. Storie come down and tell us |
| 11:53 | 22 | that now in my presence?  In other words, this is a whole |
| 11:53 | 23 | motion taking -- unduly consumptive of time, and we can |
| 11:53 | 24 | resolve it, and I can make an order, at least as to this, |
| 11:53 | 25 | almost immediately. |

| | | |
|---|---|---|
| 11:53 | 1 | MR. ZELLER:  Your Honor, I think it would be |
| 11:53 | 2 | punishing the wrong party. |
| 11:53 | 3 | THE COURT:  It's not punishing.  It's simply -- |
| 11:53 | 4 | because right now the tentative is going against you.  Okay? |
| 11:53 | 5 | So this is a great opportunity for Mattel to potentially |
| 11:53 | 6 | correct a wrong that the Court was about to impose.  And the |
| 11:53 | 7 | plaintiff jumps through hoops when you're asking for |
| 11:53 | 8 | something. |
| 11:53 | 9 | Now that we've gotten through that inappropriate |
| 11:53 | 10 | comment by you, why can't Mr. Storie simply give me that |
| 11:53 | 11 | answer on the record in a few moments when we have the date? |
| 11:53 | 12 | MR. ZELLER:  We can -- we had a deposition |
| 11:53 | 13 | scheduled, as I understood it.  If, instead we do it that |
| 11:54 | 14 | way -- |
| 11:54 | 15 | THE COURT:  No.  I don't want to wait.  I can |
| 11:54 | 16 | remove this immediately from my motion calendar.  And I'm |
| 11:54 | 17 | going to wait for the usual disagreements on a 30(b)(6), and |
| 11:54 | 18 | both of you back in court.  So I can remove this. |
| 11:54 | 19 | MR. MOLINSKI:  And we're waiting for that |
| 11:54 | 20 | information, Your Honor.  I can say, on Mr. Storie, he was |
| 11:54 | 21 | an empty vessel.  We will be raising this issue with, |
| 11:54 | 22 | Your Honor. |
| 11:54 | 23 | THE COURT:  Doesn't matter. |
| 11:54 | 24 | MR. MOLINSKI:  He was woefully unprepared. |
| 11:54 | 25 | THE COURT:  It doesn't matter.  What does that |

| 11:54 | 1 | have to do with what I'm asking?  What does that have to do |
| 11:54 | 2 | with what I just asked?  I just asked Mattel who can answer |
| 11:54 | 3 | that.  They told me Mr. Storie.  That's just a general |
| 11:54 | 4 | diatribe about his unpreparedness.  This ties Mattel to a |
| 11:54 | 5 | statement that we have produced or that they don't exist, |
| 11:54 | 6 | which is what Mr. Zeller just said. |
| 11:54 | 7 | MR. ZELLER:  We produced the earliest agreements |
| 11:54 | 8 | we had. |
| 11:54 | 9 | THE COURT:  I'm going to find out. |
| 11:54 | 10 | MR. ZELLER:  In writing. |
| 11:54 | 11 | THE COURT:  All I need is one question, one |
| 11:54 | 12 | statement.  "Have you produced all agreements prior to the |
| 11:55 | 13 | date of," yes or no. |
| 11:55 | 14 | MR. ZELLER:  Right. |
| 11:55 | 15 | THE COURT:  "Yes, we have." |
| 11:55 | 16 | "Thank you very much, Mr. Storie."  Motion |
| 11:55 | 17 | resolved. |
| 11:55 | 18 | Or "No, we haven't." |
| 11:55 | 19 | "When will they be produced?" |
| 11:55 | 20 | "Thank you, Mr. Storie." |
| 11:55 | 21 | And then I don't have to wait for the 30(b)(6) and |
| 11:55 | 22 | the two or three days and the usual bickering that's gone |
| 11:55 | 23 | forth. |
| 11:55 | 24 | Where is Mr. Storie located? |
| 11:55 | 25 | MR. ZELLER:  I believe he's in El Segundo. |

SACV 04-9049 DOC - 3/11/2010 - Volume I

17

| | | |
|---|---|---|
| 11:55 | 1 | THE COURT:  Can we accomplish that today? |
| 11:55 | 2 | Tonight?  It's a quick trip down and quick trip back. |
| 11:55 | 3 | MR. ZELLER:  I will check on where he is. |
| 11:55 | 4 | THE COURT:  It's very simple and it resolves it. |
| 11:55 | 5 | MR. ZELLER:  And I certainly do think that going |
| 11:55 | 6 | forward the same procedure ought to be used with similar |
| 11:55 | 7 | disputes that we have with MGA. |
| 11:55 | 8 | THE COURT:  It may be.  But we'll wait for those |
| 11:55 | 9 | disputes -- unless you want my ruling now on behalf of |
| 11:55 | 10 | Mattel.  Would you like my ruling now? |
| 11:56 | 11 | I'm glad to give you a ruling.  I don't think it's |
| 11:56 | 12 | going to be favorable.  So I suggest you comply. |
| 11:56 | 13 | You should have these answers, Counsel.  You |
| 11:56 | 14 | should have these readily for the Court. |
| 11:56 | 15 | MR. MOLINSKI:  I -- |
| 11:56 | 16 | THE COURT:  No.  You should have these |
| 11:56 | 17 | immediately. |
| 11:56 | 18 | MR. MOLINSKI:  January 12, 2007. |
| 11:56 | 19 | THE COURT:  All right.  That's going to be the |
| 11:56 | 20 | definitive date. |
| 11:56 | 21 | MR. ZELLER:  And I know that's not correct. |
| 11:57 | 22 | THE COURT:  Just a moment.  Is that the definitive |
| 11:57 | 23 | date? |
| 11:57 | 24 | MR. McCONVILLE:  That's what he said. |
| 11:57 | 25 | THE COURT:  Yes or no, MGA? |

SACV 04-9049 DOC - 3/11/2010 - Volume I

18

| 11:57 | 1 | MR. MOLINSKI: Not yet, Your Honor. I apologize. |
| 11:57 | 2 | THE COURT: When will I have that answer? |
| 11:59 | 3 | Counsel, the Court's becoming persuaded that the |
| 11:59 | 4 | parties may have all the necessary information for trial |
| 11:59 | 5 | purposes. Now we're getting into minutia, and the discovery |
| 11:59 | 6 | process is supposed to work between the parties; and if |
| 11:59 | 7 | you're both being untruthful with each other or not |
| 11:59 | 8 | complying, I'm not too certain that there may not be enough |
| 11:59 | 9 | for me simply to start denying these motions. |
| 11:59 | 10 | But what's the definitive date? |
| 11:59 | 11 | MR. MOLINSKI: November 21st. |
| 11:59 | 12 | MR. McCONVILLE: November 21st, 2006. |
| 11:59 | 13 | THE COURT: Is that the definitive date from your |
| 11:59 | 14 | perspective? Because Mattel just blurted out it wasn't -- |
| 11:59 | 15 | the other date. The 2007. Is that the definitive date? |
| 11:59 | 16 | MR. ZELLER: The 2006 date is the definitive date. |
| 11:59 | 17 | THE COURT: November 21st, 2006, is that the |
| 11:59 | 18 | definitive date? |
| 11:59 | 19 | MR. ZELLER: Correct. |
| 11:59 | 20 | THE COURT: Okay. There's a stipulation that |
| 11:59 | 21 | that's the definitive date. |
| 11:59 | 22 | Has Mattel produced all agreements prior to |
| 12:00 | 23 | November 21st, 2006? |
| 12:00 | 24 | MR. ZELLER: We have -- as to "all," I cannot |
| 12:00 | 25 | answer. What I can say is, is that the agreements we have |

DEBBIE GALE, U.S. COURT REPORTER

12:00  1    produced -- and this is what doesn't make very much sense

12:00  2    about what Mr. Molinski said -- we produced two agreements.

12:00  3    These are the ones that we believe are the operative

12:00  4    agreements showing ownership.

12:00  5              One is dated January 1st, 1994, which is obviously

12:00  6    well before that date.

12:00  7              THE COURT:  Do you have that, Mr. Molinski?

12:00  8              MR. MOLINSKI:  I have that agreement, Your Honor.

12:00  9    It does not address --

12:00  10             THE COURT:  Okay.

12:00  11             MR. ZELLER:  The second agreement is a

12:00  12   distribution agreement dated January 21st, 2005, so, yet

12:00  13   again, before the date.  So I don't understand the

12:00  14   commentary about that these are only post dates of the

12:00  15   lawsuit and the claims for trade secret misappropriation.

12:00  16             THE COURT:  And what's your concern, Mr. Molinski?

12:00  17             MR. MOLINSKI:  Your Honor, that agreement is

12:00  18   effective '05.  It was signed in '08, which is after the

12:01  19   date.

12:01  20             THE COURT:  So you believe that there are other

12:01  21   agreements that were reached prior to November 21, 2006?

12:01  22             MR. MOLINSKI:  We think there actually are none,

12:01  23   but we want a definitive statement that there is no

12:01  24   agreement prior to that pivotal date that addresses

12:01  25   ownership of trade secrets or intellectual property between

12:01   1   those entities.

12:01   2           THE COURT:  Why can't we get that statement?  I

12:01   3   don't understand.

12:01   4           MR. ZELLER:  Frankly, I don't know.  Because it

12:01   5   was not raised with me.

12:01   6           THE COURT:  It's easy to resolve.  Why can't we

12:01   7   get that statement?

12:01   8           MR. ZELLER:  I can certainly look into it.

12:01   9           THE COURT:  Who would we call?

12:01  10           MR. ZELLER:  I'm going to have to call one of the

12:01  11   partners who was handling these particular agreements.

12:01  12           THE COURT:  Which partner?

12:01  13           MR. ZELLER:  There were two.

12:01  14           THE COURT:  Which ones?

12:01  15           MR. ZELLER:  Jon Corey and Scott Kidman.

12:01  16           THE COURT:  Would you get them on the line,

12:01  17   please.

12:01  18           MR. ZELLER:  And -- I will.  And, by the way, if

12:02  19   we can --

12:02  20           THE COURT:  Would you get them on the line,

12:02  21   please.

12:02  22           MR. ZELLER:  Yes.

12:02  23             *(Pause in the proceedings at 12:02 p.m.)*

12:02  24             *(Proceedings resumed at 12:07 p.m.)*

12:07  25           THE COURT:  All right.  Counsel.  Mr. Zeller.

12:07    1              MR. ZELLER:  So at this point, Your Honor, I can

12:07    2    confirm that the two agreements that I identified are the

12:07    3    agreements that relate to the trade secrets.  That's it.

12:07    4              THE COURT:  That's all?

12:07    5              MR. ZELLER:  And Mr. Molinski is -- in talking

12:07    6    about 2008, is incorrect.  He wants to make an argument

12:08    7    about those agreements.  But the agreements that I

12:08    8    identified are the agreements.

12:08    9              THE COURT:  So there's absolutely no reason for

12:08   10    me, then, not to grant MGA's motion, so I set the precedent

12:08   11    and I set the standard.  And I'm going to deem, based on

12:08   12    Mr. Zeller's representation that this has been completed;

12:08   13    therefore, MGA's motion is granted -- based upon the

12:08   14    representation of Mr. Zeller.  There's been compliance by

12:08   15    Mattel.

12:08   16              Okay.  Why don't you go get some lunch, and we'll

12:08   17    continue to work on the privilege matters concerning

12:08   18    Mr. Wing.  And, counsel I'll give you brief argument on

12:08   19    that.

12:08   20              MR. MOLINSKI:  Your Honor, there was one other

12:08   21    thing you directed me to do last night.  I don't know if you

12:08   22    wanted me to give you that, but you asked me to find a case

12:09   23    that talked about the efforts used to create a trade secret

12:09   24    goes to the definition of trade secret.  And I found one

12:09   25    better.  It's a jury instruction; that is, the CACI 4412

12:09    1    says, "The amount of time, money, or labor or effort that

12:09    2    plaintiff expended in developing the alleged trade secret is

12:09    3    one of the factors the jury should consider in determining

12:09    4    whether something has indicated economic value."

12:09    5            THE COURT:  Thank you very much for recalling

12:09    6    that.  Okay.  Have a nice lunch.

12:09    7            Why don't you make it 1:30, 1:45 instead.  We've

12:09    8    got work to do in chambers.  That way you can be on the

12:09    9    phone and getting our exhibits.

12:09   10            Okay.  Have a good lunch.

12:09   11            (Lunch recess held at 12:09 p.m.)

12:09   12            (Further proceedings reported by Jane Rule

12:09   13        in Volume II.)

12:09   14                            -oOo-

12:09   15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

SACV 04-9049 DOC - 3/11/2010 - Volume I

23

12:09    1                              -oOo-

12:09    2

12:09    3                           CERTIFICATE

12:09    4

12:09    5          I hereby certify that pursuant to Section 753,

12:09    6    Title 28, United States Code, the foregoing is a true and

12:09    7    correct transcript of the stenographically reported

12:09    8    proceedings held in the above-entitled matter and that the

12:09    9    transcript page format is in conformance with the

12:09   10    regulations of the Judicial Conference of the United States.

12:09   11

12:09   12    Date:  March 15, 2010

12:09   13

12:09   14
12:09
12:09   15    _____
12:09
12:09   16          DEBBIE GALE, U.S. COURT REPORTER
                    CSR NO. 9472, RPR

12:09   17

12:09   18

        19

        20

        21

        22

        23

        24

        25

DEBBIE GALE, U.S. COURT REPORTER