**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

- - - - - - -

| | |
|---|---|
| CARTER BRYANT, | ) |
| Plaintiff, | ) |
| vs. | ) No. SACV 04-9049 DOC |
| | )     Volume I |
| MATTEL, INC., | ) |
| Defendant. | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Court's Ruling on Pretrial Motions

Santa Ana, California

Friday, March 12, 2010

Debbie Gale, CSR 9472, RPR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-8141

04cv9049 Mattel 2010-03-12 SC V1

```
 1  APPEARANCES OF COUNSEL:

 2

    FOR INTERVENER DEFENDANT MGA ENTERTAINMENT, INC.:
 3
               ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
 4             BY:  THOMAS S. McCONVILLE
                    Attorney at Law
 5             4 Park Plaza
               Suite 1600
 6             Irvine, California 92614
               (949) 567-6700
 7

 8

 9  FOR DEFENDANT MATTEL, INC.:

10             QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
               BY:  MICHAEL T. ZELLER
11                  Attorneys at Law
               865 South Figueroa Street
12             10th Floor
               Los Angeles, California 90017
13             (213) 443-3000

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 2:04-cv-09049-DOC-RNB   Document 7649   Filed 03/15/10   Page 3 of 20   Page ID #:259120
SACV 04-9049 DOC - 3/12/2010 - Volume I

3

1 **I N D E X**

2 **PROCEEDINGS** **PAGE**

3 Court's ruling on Pretrial Motions                           4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:04-cv-09049-DOC-RNB   Document 7649   Filed 03/15/10   Page 4 of 20   Page ID #:259121
SACV 04-9049 DOC - 3/12/2010 - Volume I

4

**SANTA ANA, CALIFORNIA, FRIDAY, MARCH 12, 2010**

**Volume I**

(12:34 p.m.)

THE COURT: All right. We're on the record in the Mattel v. MGA. Counsel are present.

The Court had issued an order a few hours ago and realized that after doing so, in its redacted form, that the Court needed to reconsider this.

On January 16, going back over my own records, I had ordered that "Mattel and the MGA parties shall, on or before February 6, 2010, produce all nonprivileged documents referring or relating to fee and/or indemnity agreements concerning Carter Bryant and/or Pablo Vargas, including the agreements themselves, as well as any demands for payment and/or indemnification."

Mattel promptly complied with the Court's orders. MGA parties did not. I refer you to "Bryant 2000017."

The instant dispute, therefore, comes before the Court upon Mattel's motion for an order compelling the production of all nonproduced fee agreements entered into between the MGA parties and Bryant and Vargas, as well as any other fee agreements entered into between the MGA parties and other potential witnesses to this lawsuit.

On March 11th and 12th, 2010, the Court has heard arguments concerning the following agreements which relate

| | | |
|---|---|---|
| 12:36 | 1 | to the payment of certain legal fees by MGA.  It was |
| 12:36 | 2 | represented to the Court by the MGA parties that such |
| 12:36 | 3 | agreements would be presented to the Court for its in camera |
| 12:36 | 4 | review by 10:00 a.m. on March 12, 2010.  MGA parties only |
| 12:36 | 5 | partially have done so. |
| 12:36 | 6 | Upon further review of the agreement at issue, as |
| 12:36 | 7 | well as the parties' concerns and arguments, this Court is |
| 12:36 | 8 | tentatively ordering that the MGA parties produce |
| 12:36 | 9 | Bates-stamped, unredacted versions of the below-identified |
| 12:36 | 10 | fee agreements and joint representation agreement on or |
| 12:36 | 11 | about 1:00 p.m. on March 13, 2010.  The amounts charged for |
| 12:36 | 12 | legal fees, as represented in the agreements, are relevant |
| 12:36 | 13 | to the extent of the MGA parties' commitment to the |
| 12:36 | 14 | representations at issue and are, therefore, potentially |
| 12:36 | 15 | relevant to bias. |
| 12:36 | 16 | Any free agreements entered into between Mattel |
| 12:36 | 17 | and any potential witness to this lawsuit should be produced |
| 12:36 | 18 | in unredacted form to the MGA parties.  Noncompliance, if |
| 12:37 | 19 | the Court makes this a final order, will, in fact, now |
| 12:37 | 20 | result in sanctions. |
| 12:37 | 21 | The below agreements have already been disclosed |
| 12:37 | 22 | in redacted form to the parties pursuant to the Court's |
| 12:37 | 23 | March 12, 2010 Order Compelling Production of Redacted Fee |
| 12:37 | 24 | Agreements and Joint Representation Agreement.  That was |
| 12:37 | 25 | done a few hours ago. |

Case 2:04-cv-09049-DOC-RNB   Document 7649   Filed 03/15/10   Page 6 of 20   Page ID #:259123
SACV 04-9049 DOC - 3/12/2010 - Volume I

6

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
| 12:37 | 1  | First, the May 4, 2010 letter memorializing joint                            |
| 12:37 | 2  | representation of MGA Entertainment, MGA de Mexico,                          |
| 12:37 | 3  | MGA (HK), Isaac Larian, Didier Pietri, by Orrick, Herrington                 |
| 12:37 | 4  | & Sutcliffe LLP.                                                             |
| 12:37 | 5  | Second, the May 13, 2004 "Engagement Agreement"                              |
| 12:37 | 6  | entered into between Littler Mendelson and Carter Bryant.                    |
| 12:37 | 7  | Third, the January 7, 2010 representation letter                             |
| 12:37 | 8  | from Bienert, Miller and Katzman to Ms. Mariana Trueba.                      |
| 12:37 | 9  | Fourth, the July 19, 2007 letter from Keker and                              |
| 12:38 | 10 | Van Nest LLP to Craig Holden, MGA Entertainment, Inc.                        |
| 12:38 | 11 | Fifth, the March 25, 2008 retention letter from                              |
| 12:38 | 12 | Stockwoods Barristers to Jeanine M. Pisoni, attaching                        |
| 12:38 | 13 | Retainer, Retainer Agreement, and Notice of Intent to                        |
| 12:38 | 14 | Defend.                                                                      |
| 12:38 | 15 | Sixth, the August 28th letter from Scheper Kim and                           |
| 12:38 | 16 | Overland to Jeanine Pisoni entitled Mattel v. MGA                            |
| 12:38 | 17 | Entertainment, et al.                                                        |
| 12:38 | 18 | Seventh, the May 14, 2008 letter from Orrick                                 |
| 12:38 | 19 | Herrington & Sutcliffe LLP to Jeanine Pisoni entitled                        |
| 12:38 | 20 | Representation of Jorge Castilla.                                            |
| 12:38 | 21 | Eight, the December 11, 2006 letter from Beck,                               |
| 12:38 | 22 | DeCorso, Daly, Kreindler & Harris to Jorge Castilla entitled                 |
| 12:38 | 23 | "Government Investigation."                                                  |
| 12:38 | 24 | And ninth, the February 24, 2010 letter from                                 |
| 12:38 | 25 | Lynette Brawer, Esquire, entitled "Invoice for Services                      |

Case 2:04-cv-09049-DOC-RNB   Document 7649   Filed 03/15/10   Page 7 of 20   Page ID #:259124
SACV 04-9049 DOC - 3/12/2010 - Volume I

7

```
12:38    1   Rendered."
12:38    2            The Court at the present time does not find that
12:38    3   the funneling is -- if it is occurring, is apparent.  And I
12:38    4   address this to Mattel's counsel on its face.  These seem to
12:39    5   be fees that potentially are within the range of counsel,
12:39    6   depending upon their competency.
12:39    7            MR. ZELLER:  Right.
12:39    8            THE COURT:  The issue goes to bias, I think.  The
12:39    9   real issue is how committed is Mattel or how committed are
12:39   10   MGA to these different witnesses they're either
12:39   11   representing, paying for, or indemnifying.  That's critical.
12:39   12            Now, there's two ways to handle that.  Of course,
12:39   13   I don't want fees let out into the public.  But by the same
12:39   14   token, I can make this "Attorneys Eyes Only" for the present
12:39   15   time -- that way the discovery is out there -- to protect
12:39   16   counsel.  But, quite frankly, if push comes to shove, I'm
12:39   17   going to release these.
12:39   18            I also think that this is a trial issue.  I think
12:39   19   you should be entitled to it for discovery purposes.  You
12:39   20   should know and weigh whether this truly represents a bias.
12:39   21   But I would encourage you not to ask these at deposition,
12:39   22   unless you have a well-founded belief or reason for doing
12:39   23   so.
12:39   24            I think the second thing is, this becomes
12:39   25   in limine motions for the Court when we get to trial.  They
```

Case 2:04-cv-09049-DOC-RNB   Document 7649   Filed 03/15/10   Page 8 of 20   Page ID #:259125
SACV 04-9049 DOC - 3/12/2010 - Volume I

8

```
12:39   1    may or may not be relevant.  Right now, it's the commitment
12:40   2    of each party and the representation to represent certain
12:40   3    parties that appear to be critical to the Court.  I accept
12:40   4    Mattel's argument in that regard.  But I do want to tread
12:40   5    cautiously in terms of the fee agreements.  That commitment,
12:40   6    though, does mean a lot.  If you're paying an attorney a
12:40   7    thousand dollars an hour, that's a major commitment compared
12:40   8    to a hundred dollars an hour.  And that may have a lot to do
12:40   9    with the attorney's competency, but it may not.  It may have
12:40  10    to do with MGA or Mattel's commitment, you know, to that
12:40  11    person.
12:40  12              So I can understand how that's relevant.  And you
12:40  13    apparently and in good faith and in obeyance of my order
12:40  14    complied with this.
12:40  15              MR. ZELLER:  Correct.
12:40  16              THE COURT:  I'm giving MGA some wiggle room in
12:40  17    this regard, because it did state "all nonprivileged
12:40  18    documents."  So I can accept the fact that you believe that
12:40  19    those sums are privileged at the present time.
12:40  20              But from this point forward, this is an order I'm
12:40  21    inclined to make final, but I'm going to hear from Mattel
12:41  22    for just a moment, and then MGA.
12:41  23              MR. ZELLER:  And we agree with the Court's ruling.
12:41  24    We submit on that.
12:41  25              The one point I would add, in addition, is our
```

| | | |
|---|---|---|
| 12:41 | 1 | concern more about funneling has had to do with the Mexican |
| 12:41 | 2 | law firms, which we think is also covered by another order, |
| 12:41 | 3 | which they were required to provide us that information. |
| 12:41 | 4 |         THE COURT:  We're going to get as far as we can |
| 12:41 | 5 | today with these orders.  But my intent now is that the |
| 12:41 | 6 | attorneys have full disclosure, at least for depositions and |
| 12:41 | 7 | discovery. |
| 12:41 | 8 |         Counsel on behalf of MGA. |
| 12:41 | 9 |         MR. McCONVILLE:  Yes, sir.  With regard to the |
| 12:41 | 10 | first order that the Court said that we did not comply with |
| 12:41 | 11 | that related to Carter Bryant, those agreements had |
| 12:41 | 12 | previously been produced.  We did not reproduce them. |
| 12:41 | 13 |         THE COURT:  They have been produced? |
| 12:41 | 14 |         MR. McCONVILLE:  They have been produced.  Any |
| 12:41 | 15 | agreement we have with Carter Bryant has been produced. |
| 12:41 | 16 |         THE COURT:  Is that true, Mattel?  In other words, |
| 12:41 | 17 | I can strike that portion.  I don't want to be harsh with |
| 12:41 | 18 | either party. |
| 12:41 | 19 |         MR. ZELLER:  I actually don't think it's true, and |
| 12:41 | 20 | the reason is, is that there is another document that I did |
| 12:42 | 21 | want to raise at the appropriate junction with the Court. |
| 12:42 | 22 | MGA made a presentation to the IRS in which they represented |
| 12:42 | 23 | that MGA was obligated to indemnify -- "obligated" to |
| 12:42 | 24 | indemnify Mr. Bryant.  There was apparently a package of |
| 12:42 | 25 | materials that were provided to the IRS that encompassed |

```
12:42   1    this agreement.
12:42   2            Mr. Wing testified that this was a -- basically a
12:42   3    super-secret agreement.  He had to get it directly from
12:42   4    Isaac Larian and with Isaac Larian's permission.  Apparently
12:42   5    it was very difficult to get.
12:42   6            We have asked for that agreement.  We have not
12:42   7    seen it.  We don't know what it is.  In fact, we asked that
12:42   8    the IRS presentation packet be turned over.  They basically
12:42   9    said, as far as we know, it would be the original Bryant
12:42   10   agreement back in, you know, 2000 that Mr. Bryant had with
12:42   11   MGA, which couldn't be possible.
12:42   12           THE COURT:  Bring that up tomorrow.  Every time I
12:42   13   start to make a ruling, you seem to like to expand that
12:42   14   ruling.
12:42   15           MR. ZELLER:  No, I --
12:42   16           THE COURT:  Thank you very much.  We'll bring that
12:42   17   up at a separate time.  I'm simply getting compliance with
12:43   18   what we're doing --
12:43   19           MR. ZELLER:  Understood.
12:43   20           THE COURT:  -- at the present time and we'll
12:43   21   discuss that tomorrow.  That's a whole separate issue as far
12:43   22   as the Court's concerned.  This has to do with agreements.
12:43   23           MR. McCONVILLE:  I don't have to address that?
12:43   24           THE COURT:  You don't have to address that at all.
12:43   25   It was a nice speech, probably intended to prejudice the
```

```
12:43   1    Court, and I'm going to disregard it.
12:43   2               MR. McCONVILLE:  Appreciate that, Your Honor.
12:43   3               THE COURT:  Absolutely.  You don't have to respond
12:43   4    to that.
12:43   5               MR. McCONVILLE:  With regard -- so we produced the
12:43   6    Carter Bryant agreements, and we have no agreements for
12:43   7    Vargas.  So that was the Court's order.  To the extent that
12:43   8    we didn't provide the Court with that information, I
12:43   9    apologize.  That's my fault.  But I thought the obligation
12:43  10    was to produce to the parties, and we already had produced
12:43  11    with regard to Carter Bryant and Pablo Vargas.
12:43  12               THE COURT:  Now, for both Mattel and MGA, you
12:43  13    represented to me informally, before I got on the record,
12:43  14    that you could have these documents within half an hour to a
12:43  15    couple hours today.  At least, that was your representation
12:43  16    informally.  I'd informally asked you if 1:00 p.m. tomorrow,
12:44  17    on March 13th, would be acceptable to make absolutely
12:44  18    certain that these agreements are given to the other party,
12:44  19    and the representations made on the record at 1:00 p.m.
12:44  20    tomorrow.
12:44  21               Is that still acceptable to Mattel?
12:44  22               MR. ZELLER:  It is, Your Honor.
12:44  23               THE COURT:  Still acceptable to MGA?
12:44  24               MR. McCONVILLE:  Yes, Your Honor.
12:44  25               THE COURT:  All right.  Now, in the past, I've now
```

Case 2:04-cv-09049-DOC-RNB   Document 7649   Filed 03/15/10   Page 12 of 20   Page ID
 #:259129
SACV 04-9049 DOC - 3/12/2010 - Volume I

12

| | | |
|---|---|---|
| 12:44 | 1 | had a chance to read a substantial amount of this record. |
| 12:44 | 2 | I'm not willing yet, out of caution, to make a broad |
| 12:44 | 3 | pronouncement, but it's apparent that there's been, let's |
| 12:44 | 4 | kindly say, some reluctance to comply with court orders. |
| 12:44 | 5 | Any terminal sanctions, issue preclusion, or egregious |
| 12:44 | 6 | amount of sanctions in this Court's opinion have to start |
| 12:44 | 7 | with warnings and then an escalation, a slow escalation.  I |
| 12:44 | 8 | don't see any reason where this shouldn't be a sanction of a |
| 12:44 | 9 | thousand dollars per hour beginning at 1:00 o'clock tomorrow |
| 12:44 | 10 | for any noncompliance or, quote/unquote, "missing" or "late" |
| 12:45 | 11 | documents. |
| 12:45 | 12 | So let me turn to Mattel.  What would be unfair or |
| 12:45 | 13 | inappropriate about that? |
| 12:45 | 14 | MR. ZELLER:  I don't see anything unfair or |
| 12:45 | 15 | inappropriate about it. |
| 12:45 | 16 | THE COURT:  What would be unfair or inappropriate |
| 12:45 | 17 | about that, Mr. McConville, based upon these |
| 12:45 | 18 | representations? |
| 12:45 | 19 | MR. McCONVILLE:  Your Honor, my only caveat is |
| 12:45 | 20 | that we've been on the case for a short -- I know the |
| 12:45 | 21 | Court's -- we've been on the case for a short amount of |
| 12:45 | 22 | time.  While I've been sitting in this courtroom, I've been |
| 12:45 | 23 | trying to get these people to gather the documents.  I want |
| 12:45 | 24 | to consult with them to make sure that we have everything. |
| 12:45 | 25 | That being said, I believe that we can comply tomorrow at |

| | | |
|--|--|--|
| 12:45 | 1 | 1:00 o'clock. |
| 12:45 | 2 | THE COURT:  That will be the order of this Court. |
| 12:45 | 3 | I'll add this to this document so it's explicit. |
| 12:45 | 4 | And that will be the first, initial and cautious |
| 12:45 | 5 | beginning to say to each party, as I said yesterday, "Now |
| 12:45 | 6 | the sanctions start very gently for non-compliance with my |
| 12:46 | 7 | orders."  Those sanctions will gradually escalate if I find |
| 12:46 | 8 | that either of you are in violation.  I warn you:  Those |
| 12:46 | 9 | could lead to issue preclusion, or they could lead to |
| 12:46 | 10 | terminal sanctions.  And having made that statement, I hope |
| 12:46 | 11 | that that's clearly heard by each of the parties. |
| 12:46 | 12 | I'm very concerned, reading this record, about |
| 12:46 | 13 | what happened in Judge Larsen's court.  I'm very concerned |
| 12:46 | 14 | about the late or reluctant divulgence of evidence by one or |
| 12:46 | 15 | both parties, and, quite frankly, at different times by each |
| 12:46 | 16 | party, and the tit-per-tat.  Because something wasn't |
| 12:46 | 17 | complied by one party on one order, the other party wasn't |
| 12:46 | 18 | going to give in good faith or follow the Court's order. |
| 12:46 | 19 | Those days are done, gentlemen. |
| 12:46 | 20 | Now, I'm going to be available and tell you -- on |
| 12:46 | 21 | the last occasion I was in Pakistan and didn't see you |
| 12:46 | 22 | before that time.  I am going to be gone from March 17 to |
| 12:46 | 23 | April 1st.  I'm not hiding that from you.  I'm telling you |
| 12:47 | 24 | that. |
| 12:47 | 25 | But in an effort to make certain that sanctions |

```
12:47   1   don't reach egregious numbers, I'm going to be available to
12:47   2   you at all hours of the day or night, including at 3:00 a.m.
12:47   3   in the morning.  And I'm not joking.  So to stop these
12:47   4   sanctions, if they're employed in the next couple of days,
12:47   5   beginning with this order, all you need to do is call the
12:47   6   marshal's office.  But I want all lead counsel, I want
12:47   7   Mr. Zeller, and I want your cohort, Mr. Quinn, standing out
12:47   8   there at 3:00 a.m. when I drive into this court.  I want
12:47   9   Mr. McConville and I want Ms. Hurst.  And that's an order.
12:47  10   Only lead counsel.  All four of you will be standing there
12:47  11   with these documents, and I will come into court at
12:47  12   3:00 a.m. in the morning, if necessary, so that one of you
12:47  13   isn't sanctioned unnecessarily because it's the wee hours of
12:47  14   the morning.  I think that's a tremendous commitment by this
12:47  15   Court, quite frankly, to make.
12:47  16              Now, I'm going to go back and redraft the first
12:47  17   portion of this, based upon your representations.  I want to
12:48  18   be as kind as possible for each of the parties at the very
12:48  19   beginning of this.  And I will include the sanction portion.
12:48  20   And I'm going to excuse you for the rest of the day.  Now I
12:48  21   think your time's best spent on making certain that at
12:48  22   1:00 o'clock tomorrow we're not wasting time.  You go back
12:48  23   and get the various items to the Court and I think your
12:48  24   time's well spent.
12:48  25              Mr. McConville.
```

```
12:48   1              MR. McCONVILLE:  Yes, Your Honor.  Thank you.
12:48   2              So I just want to make sure I understand the
12:48   3    parameters.  As the Court told us yesterday, you wanted to
12:48   4    get the fee agreements for those witnesses that had been
12:48   5    deposed.  Is that still the extent of what it is we need to
12:48   6    bring in to the Court tomorrow?  And they need to be Bates
12:48   7    numbered for production and not redacted?
12:48   8              THE COURT:  Unredacted.
12:48   9              MR. McCONVILLE:  Okay.
12:48  10              THE COURT:  No redactions.  Because now I think
12:48  11    that the amounts potentially do go to bias.  But I am making
12:48  12    a record now that, at least in the Court's first review, I
12:48  13    don't accept Mattel's argument that I'm seeing funneling
12:48  14    going on, you know, large amounts going out to counsel that
12:49  15    are being disbursed.  I see a range of fees, some of which
12:49  16    seem very high to the Court; others seem, quite frankly,
12:49  17    reasonable or even low -- without comment about which
12:49  18    counsel is making the representation -- because there's
12:49  19    various levels of firms and competency.  So I'm not arguing
12:49  20    with the fees.  By the same token, those fees have something
12:49  21    to do with the commitment.  And I repeat my hypothetical;
12:49  22    and that is, when one of the parties makes a fee commitment
12:49  23    for $900 for an hour, they're really what I call in the
12:49  24    game.  Hundred dollars an hour, they're kind of in the game.
12:49  25    But that commitment can become important.
```

| | | |
|---|---|---|
| 12:49 | 1 | Now, I can make that "For Attorneys Eyes Only" at |
| 12:49 | 2 | the present time and trust your discretion for depositions |
| 12:49 | 3 | so that this isn't a matter of public record for the time |
| 12:49 | 4 | being.  And if each of you agree to that, I'll do so. |
| 12:49 | 5 | MR. McCONVILLE:  Yes, Your Honor. |
| 12:49 | 6 | THE COURT:  Without a stipulation, I'm not going |
| 12:49 | 7 | to be too concerned, quite frankly. |
| 12:49 | 8 | MR. ZELLER:  Just in fairness, we, ourselves, had |
| 12:50 | 9 | designated the fee agreements that we produced "Attorney |
| 12:50 | 10 | Eyes Only." |
| 12:50 | 11 | THE COURT:  Counsel, do you want "Attorney's Eyes |
| 12:50 | 12 | Only"? |
| 12:50 | 13 | MR. McCONVILLE:  Yes. |
| 12:50 | 14 | THE COURT:  "Attorneys Eyes Only," then.  That |
| 12:50 | 15 | gives you all the discovery, but protects the fee |
| 12:50 | 16 | arrangements for the present time. |
| 12:50 | 17 | This then becomes an issue for the Court when we |
| 12:50 | 18 | get to trial about whether that's relevant or not.  So we |
| 12:50 | 19 | can preserve that for another day.  But it also gives you |
| 12:50 | 20 | the ability to undertake depositions.  I just ask you to |
| 12:50 | 21 | really be cautious about that.  And the special master will |
| 12:50 | 22 | report to me whether these are questions that need to be |
| 12:50 | 23 | answered by a witness about the amount of fees being paid. |
| 12:50 | 24 | Okay?  I just don't think that we should have the cost of |
| 12:50 | 25 | retracing the depos. |

| | | |
|---|---|---|
| 12:50 | 1 | Now, Counsel, I'm going to excuse you until |
| 12:50 | 2 | tomorrow at 1:00 o'clock.  Your time is best spent someplace |
| 12:50 | 3 | else.  Thank you very much. |
| 12:50 | 4 | Your documents will come into the loading dock |
| 12:51 | 5 | tomorrow.  You'll be here by at 8:00 o'clock.  We'll talk |
| 12:51 | 6 | about that. |
| 12:51 | 7 | MR. ZELLER:  We plan on having somebody here. |
| 12:51 | 8 | They estimate their arrival at 7:45 a.m. |
| 12:51 | 9 | THE COURT:  I'll be here at 7:00, 7:30 with the |
| 12:51 | 10 | Mongols nextdoor.  I can sign that order for the loading |
| 12:51 | 11 | dock, Stephanie. |
| 12:51 | 12 | We'll get that out today, and have somebody down |
| 12:51 | 13 | there for you. |
| 12:51 | 14 | MR. ZELLER:  If I may inquire, Mr. Eckert, of |
| 12:51 | 15 | course, will be here tomorrow.  Should he plan on |
| 12:51 | 16 | 1:00 o'clock?  Have him here at 8:00 o'clock?  Mr. Eckert |
| 12:51 | 17 | the CEO of Mattel. |
| 12:51 | 18 | THE COURT:  I don't care when he comes down.  He |
| 12:51 | 19 | can come down at 6:00 o'clock in the morning for all I care. |
| 12:51 | 20 | I don't get it. |
| 12:51 | 21 | MR. ZELLER:  Well, I'm not clear on when the |
| 12:51 | 22 | session is starting tomorrow.  Because I know the |
| 12:51 | 23 | testimony -- |
| 12:51 | 24 | THE COURT:  You are here at 8:00 o'clock arranging |
| 12:51 | 25 | my dolls.  The hearing is not starting until 1:00 o'clock. |

```
12:51   1   I thought that was clear.
12:51   2           MR. ZELLER:  I knew we were going to be here at
12:51   3   8:00.
12:51   4           THE COURT:  You are here at 8:00 o'clock finding
12:52   5   my dolls and stuff.  Okay?  But as far as Mr. Eckert's
12:52   6   concerned, I don't care if he ever comes down right now.
12:52   7   Mr. Larian has to be here.  But I don't care.
12:52   8           MR. ZELLER:  Thank you.
12:52   9           THE COURT:  The formal session starts at
12:52  10   1:00 o'clock.  And the only reason I told you that is I
12:52  11   didn't want to inconvenience Mr. Nolan and Mr. Larian
12:52  12   sitting here during the Mongol case.  When I heard that
12:52  13   Annette Hurst couldn't be here until 1:30, I thought, in
12:52  14   fairness, she should be here.  And the idea I'd start at
12:52  15   8:00 o'clock and not allow counsel to be present didn't seem
12:52  16   to be appropriate, from my standpoint.  So I want MGA to be
12:52  17   fully staffed for this hearing.
12:52  18           MR. ZELLER:  Thank you.
12:52  19           THE COURT:  Therefore, when I heard that the two
12:52  20   of you hadn't reached an agreement on that matter, I stepped
12:52  21   in and 1:30.  This fact, I'm going to wait until she gets
12:52  22   here.  If it's 2:45, I'm going to wait.  If it's 5:00
12:53  23   o'clock tomorrow, I'm going to wait.  But Mr. Larian's now
12:53  24   waiting.  Because the representation was that at 1:00 or
12:53  25   1:30 she'd be here, so I'm ready to go at that time.  But
```

```
12:53    1    I'm going to make sure MGA is staffed on this matter.
12:53    2              MR. McCONVILLE:  What's going to happen tomorrow,
12:53    3    Your Honor?  Is it going to be like an in camera with the
12:53    4    Court?
12:53    5              THE COURT:  (No response.)
12:53    6              MR. McCONVILLE:  Thanks.
12:53    7              (Proceedings adjourned at 12:53 p.m.)
12:53    8              (Further proceedings reported by Jane Rule
12:53    9         in Volume II.)
12:53   10                              -oOo-
12:53   11
        12
        13
        14
        15
        16
        17
        18
        19
        20
        21
        22
        23
        24
        25
```

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:   March 15, 2010

```
                                    _____
                                    DEBBIE GALE, U.S. COURT REPORTER
                                    CSR NO. 9472, RPR
```