MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710
Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**MGA'S SUPPLEMENTAL BRIEFING PURSUANT TO 2/27/2010 ORDER RE OBJECTIONS TO ELECTRONIC DISCOVERY SPECIAL MASTER REPORT AND RECOMMENDATION NO. 5**<br><br>Location: Courtroom of the Hon. David O. Carter |

MGA Entertainment Inc. and Isaac Larian (collectively the "MGA Parties") hereby respond to the Court's Order of February 27, 2010, requesting supplemental briefing regarding the MGA Parties' Objections To Recommendation No. 5 Of Electronic Discovery Special Master Report And Recommendation (1/21/2010).

## I. GLOSSARY OF TECHNICAL TERMS

In addition to the five specific questions listed in the Court's Order of February 27, 2010, the Court also inquires generally about certain terminology used to describe the inspection of Mr. Larian's hard drives. For example, in the first paragraph on page two of its Order the Court asks: to what extent are active files distinguishable from non-active files? In order to best answer the Court's questions clearly and to explain the terminology previously used in the MGA Parties' briefing, the MGA Parties hereby respectfully submit a glossary of technical terms used in this response and used previously in connection with the motion practice regarding the Larian hard drives. *See* 3/15/2010 Declaration of Samuel S. Rubin ("3/15/10 Rubin Decl.") filed concurrently herewith. In addition, to the extent the parties' experts concur with respect to these definitions, it will narrow the issues in dispute between the parties with respect to the Larian hard drives issues.

# GLOSSARY OF TERMS

**Active Files:** An active file is any electronic file (whether User-created or System-generated) that has not been deleted and exists within allocated space on the hard drive of a computer. Unless hidden or otherwise locked, active files are readily accessible by the computers user.

**Allocated Space:** Allocated space is the portion of a hard drive that is occupied by active files or system configuration data specifically reserved for use by the computer system. The amount of allocated space depends on the number of active files on the hard drive and will change as files are added to the computer or deleted. The remainder of the physical space on a hard drive is called "unallocated space." The unallocated space is the portion on the hard drive that is available for new active files to be written to that space.

**Deleted Recoverable File:** A deleted recoverable file refers to a file that was once active on the system and, whether through user interaction or system operation, has been deleted, but can still be recovered from unallocated space with all of its data intact because it has not actually been overwritten by any new data. These files still have an entry in the MFT or FAT (defined below). Deleted recoverable files reside in unallocated space.

**Deleted Overwritten File**: A deleted overwritten file refers to a file that was once active on the system and, whether through user interaction or system operation, has been deleted, but can no longer be recovered from unallocated space with all of its data intact because either a portion or the entirety of the file has been overwritten by new data. These files may have an entry in the MFT or FAT (defined below). When a deleted file has not been entirely overwritten, the remaining portion (or fragment) of the file that has not been overwritten can be recovered by use of forensic software and expertise.

**File Deletion by System:** Active, system-generated files can be deleted by normal computer processes. For example, web browsing software on a computer system creates Internet cache files—sometimes referred to as temporary Internet files. When a user visits a website using a web browser like Internet Explorer or Firefox, files related to that website are stored in temporary cache locations. Over time, normal computer processes will delete the active, system-generated files in these cache locations and the disk space previously occupied by such files will become unallocated space.

**File Deletion by User:** Generally, when a computer user intends to delete a file in Windows, they simply hit the delete key, click and drag the file to the "Recycle Bin" with the computer mouse, or "right-click" with the mouse on the file and select "Delete". These actions, however, will not actually delete the file from allocated space as described above, but instead will assign the file to the Recycle

Bin on the computer's hard drive. Files sent to the Recycle Bin remain in allocated space and are still accessible to the user until the Recycle Bin is emptied by the user. When the Recycle Bin is emptied, the entry for that file in the MFT or FAT is changed to indicate that the file has been deleted and the allocated space that the file previously occupied is deemed unallocated and available to be occupied by new files. Until the deleted file is actually overwritten, however, the content of the file remains intact and sits in unallocated space. The deleted file is not physically moved to a new or different location on the hard drive. The file still occupies the same physical space on the hard drive until it is overwritten by new data.

**File Wiping Software:** Because deleted files are recoverable from unallocated space until overwritten, there exists specialized software, commonly referred to as "wiping" software, designed to allow a user to render said data unrecoverable. This process thwarts the forensic recovery of deleted files. Wiping software overwrites the unallocated portions of a hard drive with new data to render the deleted files unrecoverable by forensic software and tools.

**INFO2:** INFO2 is a system-generated file in the Recycle Bin that maintains the dates and times when files are moved to the Recycle Bin, assigning sequentially ascending index numbers to the files moved there. When the Recycle Bin is emptied, the INFO2 file is deleted. When the system is rebooted, the sequential numbering starts over at 1. Like any other deleted file, a deleted INFO2 file resides in unallocated space until it is overwritten by new data. Until the file is actually overwritten, it can be recovered by forensic software and tools.

**MD5 Hash Value (aka "hash value"):** The MD5 hash algorithm (aka "hash value") is commonly used for verifying the integrity of digital evidence of electronic files. A hash function is a formula that read the bits that make up an item of digital evidence or a file and produces a unique identifying number. Calculating a hash value for an item of digital evidence or file enables an examiner to make sure that the evidence or file has not changed in any way over time. This can be accomplished by applying the algorithm to the item of evidence or file at any time. If the evidence or file has not changed, the algorithm will produce the same hash value as previously produced. The MD5 hash value can also be used for file comparison purposes. If two files are identical they will yield the same hash value upon application of the has algorithm

**Master File Table or File Allocation Table:** A Windows computer uses a database called the Master File Table (MFT), or in some instances, a File Allocation Table (FAT) to record the location, size and other information about each file on a computer. One piece of information recorded in the MFT or FAT is whether the file is active and residing in allocated space, or whether it has been deleted and the space occupied by the file is therefore unallocated and available for

new data. When a file is deleted (whether by the user or by the system) the space that the file occupies on the hard drive is designated as unallocated space, which means it is available to be overwritten with a new file. Deleted files are overwritten in the ordinary use and operation of a computer by new user-created or system-generated files.

**Recycle Bin:** The Recycle Bin, which can have various names such as "Recycled" or "Recycler" depending on the version of the Windows operating system installed, is a directory that holds the files that a user generally intends to delete. Files in the Recycle Bin are considered active files until the Recycle Bin has been emptied, at which time the files are deleted and can be overwritten at any time by the computer.

**System-generated Files:** System-generated files are created and maintained programmatically by the computer's operating system and are necessary for the system to perform its many functions. These files can contain information *about* user-created files, but do not contain the *content* of user-created files. Consequently, system-generated files are often referred to as "non-content files". Examples of system-generated files include: system or application log files; the Windows Registry; Internet history; and INFO2 files. Forensic analysis of system-generated files can reveal, for example, file system metadata (e.g., file names, file types, file path information, file accessed/created/modified times); information on file deletion activity; a list of recently accessed files; use of specific software; and other computer usage information.

**Unallocated Space:** Unallocated space is the portion of a hard drive that is not occupied by active files. Unallocated space can contain unused disk space, deleted recoverable files (i.e., deleted files that have not yet been overwritten by new active files), or fragments of files that have been only partially overwritten. The operating system sees this area of the hard drive as available for storage of new data. Unallocated space cannot be accessed by a typical user of the computer; forensic tools are needed to review unallocated space. Unallocated space on a hard drive is not a single, contiguous segregated physical section on the hard drive. Rather, unallocated space is comprised of the unused disk space and all the portions of the hard drive where deleted files were once active.

**User-created Files:** User-created files are files that a human being (i.e., a computer user) acts upon in the course of using the computer for his or her ordinary purposes. These files typically contain the content and substance of any communication or document that a user wishes to manipulate or store on a computer. Examples of user-created files include email, Microsoft Word documents, Excel spreadsheets, digital pictures, digital music files, design drawings, and many other types of information. These files are sometimes referred

to as "content files" because they contain user-created content.  User-created files can reside on a computer either as active files in allocated space or as deleted files in unallocated space.

**Windows Registry:**  The Windows registry is a database or data store that holds the information and settings Windows needs to operate properly.  The registry is typically considered a system-generated file and contains a wealth of data about a Windows computer, including items like the installation date of the operating system, user accounts that have been created on the system, and what hardware and software are installed on the system.  The primary Windows registry files are the SYSTEM, SECURITY, SAM, SOFTWARE, and each user's NTUSER.DAT file.

## II. ANSWERS TO QUESTIONS

**Question 1: Why have the active files on Larian's hard drive not already been analyzed for documents responsive to Mattel's many discovery requests? If they have been so analyzed, why have the MGA Parties not already performed a privilege review?**

**MGA Parties' Answer to Question 1:** Of the approximately 520,694 documents produced by MGA to date, 72,805 documents include the keyword "Larian" and another 18,114 documents include the keyword "Isaac" without Larian. The MGA Parties have produced more than 33,000 documents where Isaac Larian was identified as the custodian.

Because of the number of prior law firms and attorneys within those firms who were involved in collecting and producing documents, current counsel cannot presently certify exactly what was done, or most pertinently, that each and every one of the files on the hard drives was subjected to some appropriate collection and review technique. Accordingly, current counsel offered back in November of 2009 to review the hard drives using a reasonable set of keywords identified by Mattel. We repeated that offer in the hearing with Judge Smith. Each time, Mattel refused. We repeated the offer again last week to the Court, and again proposed that we would review the content of the hard drives using a reasonable set of search terms. It is reasonable to wait for search terms approved by Mattel and the Court, because MGA should not be required to keep doing this over and over again. With the Court's guidance, Mattel finally provided a list of keywords and entered into such negotiations on March 9. MGA respectfully requests that the process be completed, and will continue working with Mattel in an effort to reach an agreement on as many of the remaining disputed terms as possible.

With respect to privilege review, thousands of documents referencing Mr. Larian were identified as privileged on privilege logs served by O'Melveny & Myers or Skadden Arps. Current counsel re-reviewed thousands of these

1   documents when serving the supplemental privilege log ordered by Discovery
2   Master O'Brien in Order 73 (in fact, we reviewed at least every document
3   referencing Mr. Larian that did not include an attorney on the communication).
4   Current counsel created and served a new privilege log of 13,500 lines listing every
5   single e-mail in every thread in the many thousands of documents we re-reviewed.

6   In light of the Court's concerns regarding the O'Connor e-mail, current
7   counsel is also now going back and re-reviewing whatever remaining documents on
8   the previously served privilege logs by OMM and Skadden were not already re-
9   reviewed pursuant to the Discovery Master's Order 73.

10  **Question 2: Mattel argues that a forensic analysis of the active files on**
11  **Larian's harddrives is necessary to rebut the MGA Parties' expert's prior**
12  **claim that evidence of spoliation may be deceptive, as files perceived to be**
13  **deleted may continue to exist on active files. If such files continue to exist and**
14  **are relevant and responsive to pending discovery requests, why have such files**
15  **not already been produced? Why should not the MGA Parties be provided**
16  **with the choice of: (a) producing the active files for forensic inspection; or (b)**
17  **being estopped from arguing that deleted files may continue to reside in**
18  **Larian's active files.**

19  **MGA Parties' Answer to Question 2:** As to the first part of question 2,
20  many documents have been produced. Unfortunately, as noted, current counsel
21  cannot certify exactly what was done by prior counsel, but we can state that the
22  MGA Parties have produced 520,694 documents comprising more than 6,000,000
23  pages. Of those approximately 520,694 documents, 72,805 documents include the
24  keyword "Larian" and another 18,114 documents include the keyword "Isaac"
25  without Larian. Current counsel can also certify that Mr. Larian's e-mail from the
26  2000 through 2002 period were independently reviewed for communications related
27  to Carter Bryant and that nothing was found that hadn't already been produced or
28  logged on a privilege log. Nonetheless, our inability to certify (despite extensive

and ongoing investigation) exactly what was done, is why Orrick has been offering since November to conduct a new keyword search of the Larian hard drives using a reasonable set of keywords supplied by Mattel.  The parties came to an agreement regarding an initial set of such keywords in Court on March 9, 2010, and as soon as that list is finalized the MGA Parties are prepared to proceed to search and produce (or log) anything new that is found in response to the Court-approved search terms.  This should take care of any issue regarding the Active User-created Files.

The second part of the Court's question concerning review of active files for purposes of assessing spoliation implies a false dichotomy.  Mattel has *not* argued that a *forensic analysis* of Active User-created Files on Mr. Larian's hard drives is necessary to rebut the claim that a file perceived to be deleted may continue to exist on Active User-created Files.  Mattel has demanded instead that it be allowed to *review,* i.e., open and look at, the contents of Active User-created Files in order to see what is there.  But this is exactly the issue that was addressed by Judge Larson to his satisfaction in the August hearing based on a stipulation entered into by Mr. Zeller and Ms. Hurst on the record at that hearing, and was subsequently confirmed in detail in the agreed-upon protocol.  *See* Dkt. No. 7467 at 8-9.

In particular, Mattel's experts were embarrassed once during Phase 1 when they presented a spoliation analysis and it turned out that every file they had identified in fact was still in existence.  While there is disagreement as to whether Mattel's experts could have avoided that problem based on the old protocol, the MGA Parties put that disagreement aside and resolved the issue with the new stipulation before Judge Larson that Mattel would have access to anything used to rebut its experts' contentions of User-created File deletion.  That stipulation was then implemented in a new protocol agreed between Ms. Hurst and Mr. Searcy with a court reporter and both parties' experts present for the negotiation.

The new protocol provided that Mattel's experts would first do their analysis and create an initial list of User-created Files they contended had been deleted—

call it the Deleted List.  Then, MGA's experts would take the Deleted List and would see whether they could identify those files as Active User-created Files either on the hard drives or in another location maintained by the Company for purposes of evidence preservation (such as the company's servers)—call this the "Rebuttal List."  MGA agreed that if MGA's experts identified files from the Deleted List and said that they were found—that is, MGA placed them on the Rebuttal List—then *Mattel's experts would be given access to the contents of the files on the Rebuttal List to verify the analysis of MGA's experts* (so long as the contents were not privileged).  In other words, the MGA Parties have been in agreement since last summer that Mattel could have access to the contents of any file that MGA would use to rebut a specific contention of spoliation regarding a specific file.  Judge Larson found that this was fair, it is fair, and because it is fair Mattel agreed to it again in the protocol meeting between the parties' experts and counsel.  There is literally no good reason why Mattel repudiated this protocol other than a desire to have access to the Active User-created Files for discovery purposes (rather than for purposes of assessing spoliation).

Because the contents of the files on the Rebuttal List will be available to Mattel's experts, the issue of whether anything had been deleted from them is simply a red herring.  By definition, the content of the files on the Deleted List and the content of the files on the Rebuttal List will be identical, or MGA will not have rebutted the deletion.  Moreover, to the extent that Mattel posits that it requires broad access to all Active User-created Files to determine whether *only portions* thereof have been deleted, with all due respect that is the definition of a fishing expedition.  There is simply no evidence of such a practice.

Nor, more importantly, could Mattel's experts actually tell by reading a document whether contents have been deleted—the entire hypothesis is invalid.  *See* Dkt. No. 5769; 2/2/10 MGA Not. Of Lodging Ex. 2 at 83-84.[1]  When the

---

[1] The pages referenced in any cites to the Notice of Lodging are the pages of the

1  content of an Active User-created File changes, System-generated Files and other
2  related information on the system are modified to reflect such changes.  For
3  example, if a paragraph is added or removed from a Microsoft Word document,
4  metadata associated with the file (e.g., accessed/modified/created times, file size,
5  etc.), as well as the file's hash value, will change.  Thus, examination of such
6  System-generated Files, including file metadata, is sufficient to determine whether
7  the actual content of an Active User-created File has been changed without
8  accessing the actual content of the Active User-created File itself.  3/15/10 Rubin
9  Decl., ¶ 11.[2]

10  Finally, it makes no sense to suggest that forensic examination of the content
11  of Active User-created Files can somehow demonstrate "spoliation" because it
12  might reveal modifications made to the substance of the files.  In the first place, the
13  hard drives at issue are or were actively used by Mr. Larian throughout this case.
14  Therefore, it will be hardly remarkable that he modified documents on which he
15  was actively working and before the completion of that document.  In any event,
16  examination of the content of such Active User-created Files would not evidence
17  spoliation because neither the content, nor any System-generated Files, will reflect
18  the type of change made (i.e., whether a paragraph has been added or subtracted
19  from the document).  3/15/10 Rubin Decl. ¶ 11.  While the *fact* of such a change
20  might be found in the System-generated Files, which Mattel's expert has always
21  had access to, the substance of the change made would not be found in either the
22  content of the Active User-created Files or the System-generated Files.  *Id.*  Hence,
23  Mattel's demand to review the content of Active User-created Files, even if
24  granted, would not serve the very purpose it claims would be served – revealing the

---

25  exhibit as sequentially numbered by counsel in compliance with the local rules that
26  require that all pages of a document be sequentially numbered. This device is used
    to avoid having cites that are exhibits to the exhibits of the Notice of Lodging.
27  [2] Moreover, the issue has been that Mattel has consistently accessed Active User-
    created Files in violation of the protocols which were in place for a variety of
28  reasons, including the fact that the hard drives have enormous volumes of
    privileged and personal information on them.  *See* Dkt. No. 7467 at 15-16.

1  substance of a change to a document.  As a result, the *content* of Active User-
2  created Files in this case will not aid in assessing spoliation except as necessary for
3  Mattel's experts to verify the Rebuttal List.

4  **Question 3:  To what extent is any additional evidence redundant and**
5  **duplicative of any evidence of spoliation found in Larian's inactive files?  And,**
6  **is there any evidence of spoliation of active files or is Mattel's evidence of**
7  **spoliation restricted to the deletion of entire files and not the content of still**
8  **existing files?**

9  **MGA Parties' Answer to Question 3**:  A review of the content of still
10  existing files is not one that presents an issue of redundancy or duplication.  Rather,
11  the issue presented is that a review of the content of Active Files will not reveal
12  evidence of spoliation.  A review of Mr. Larian's hard drives for spoliation should
13  look to deleted files in Unallocated Space.

14  Active Files may be modified or changed for a variety of reasons,
15  particularly here since at issue are hard drives that are and were actively used by
16  Mr. Larian.  For this reason alone, the content of still existing Active Files on Mr.
17  Larian's hard drives will not evince spoliation.

18  Moreover, as also noted, an examination of the content of such Active User-
19  created Files would not evidence spoliation because neither the content, nor any
20  System-generated Files, will reflect the type of change made.  3/15/10 Rubin Decl.
21  ¶ 11.  While the *fact* of such a change might be found in the System-generated
22  Files, which Mattel's expert has always had access to, the substance of the change
23  made would not be found in either the content of the Active User-created Files or
24  the System-generated Files.  *Id.*

25  Finally, if Mattel is intent on focusing on Active User-created Files, it still
26  need not open and review the content of those files.  When the content of an Active
27  User-created File changes, System-generated Files and other related information on
28  the system are modified to reflect such changes.  For example, if a paragraph is

Case 2:04-cv-09049-DOC-RNB   Document 7651   Filed 03/15/10   Page 13 of 14   Page ID
 #:259151

1  added or removed from a Microsoft Word document, metadata associated with the
2  file (e.g., accessed/modified/created times, file size, etc.), as well as the file's hash
3  value, will change. Thus, examination of such System-generated Files, including
4  file metadata, is sufficient to determine whether the actual content of an Active
5  User-created File has been changed without accessing the actual content of the
6  Active User-created File itself. 3/15/10 Rubin Decl. ¶ 11.

7  **Question 4: How will the mere discovery of such software prove
8  spoliation in a non-circumstantial manner?**

9  **MGA Parties' Answer to Question 4**: The question of whether file-wiping
10 software exists on Mr. Larian's hard drives is a moot issue. Mattel's expert has
11 already admitted that no such software exists on Mr. Larian's drives:

12     Q.    Did you find any wiping tools on any of the seven Larian hard drives?
13     A.    I did not find any wiping tools on any of them.
14 Dkt. No. 7521, Ex. 4, pp. 11-12.

15 Had any such software been installed on Mr. Larian's computers, Mattel
16 would have known about it because its use would have left behind some digital
17 artifact, such as an entry in the Windows Registry for Mr. Larian's computers. *See*
18 Not. of Lodging Ex. 5 at 126 ¶ 14. Mattel has had full access to the Windows
19 Registry for Mr. Larian's hard drives in every production and nothing was ever
20 found to suggest that file-wiping software was ever installed or used. *Id.*

21 **Question 5: Why are these arguments not equally responsive to Mattel's
22 objections to Discovery Master Order No. 89/91? And why should not the
23 parties be required to meet and confer to attempt to find a mutual
24 accommodation that disposes of both these objections and Mattel's objections
25 to Discovery Matter Order No. 89/91?**

26 **MGA Parties Answer to Question 5:** Mattel is talking out of both sides of
27 its mouth when it claims that a review of documents responsive to Discovery
28 Master Order No. 89/91 would be burdensome for Mattel, but a review of the

MGA'S SUPPLEMENTAL BRIEFING RE
OBJECTIONS TO EDSM R&R NO. 5
CV 04-9049 DOC (RNBx)

entirety of Mr. Larian's hard drives for spoliated and responsive documents would not be burdensome for MGA. As noted in MGA's moving papers and the Declaration of Cynthia Lock filed in support, MGA's current privilege log references over 10,000 documents in 13,500 lines, and includes reference to each attachment and each email in the email strings. Dkt. No. 7468 at ¶ 2. Further, MGA's present counsel has spent well over one thousand hours in this case reviewing documents for privilege and addressing privilege log issues at a very high cost to MGA. *Id.*

If anything, Mattel's burden in having to review documents responsive to Discovery Master Order 89/91 is less because the documents that Mattel must review for privilege have already been found to be relevant. Moreover, Mattel's search does not implicate the privacy concerns of anyone. In contrast, if the Court orders unfettered access to Mr. Larian's computers, the MGA Parties will have to review those files for privilege, for privacy and for relevance. This will place a greater burden on the MGA Parties than Mattel will encounter in complying with Discovery Master Order 89/91. Consequently, if MGA's burden and expense objections cannot be sustained in this instance, Mattel's objections should not be sustained either.

Dated: March 15, 2010         ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Warrington S. Parker III*
Warrington S. Parker III
Attorneys for MGA Parties