MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710
Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**DECLARATION OF SAMUEL S. RUBIN IN SUPPORT OF MGA'S SUPPLEMENTAL BRIEFING PURSUANT TO 2/27/2010 ORDER RE OBJECTIONS TO ELECTRONIC DISCOVERY SPECIAL MASTER REPORT AND RECOMMENDATION NO. 5**<br><br>Location: Courtroom of the Hon. David O. Carter |

1   I, Samuel S. Rubin, declare as follows:

2   1.   I provide this declaration in support of the MGA Parties' ("MGA")
3   Supplemental Briefing Pursuant to the 2/27/2010 Order re: Objections to Electronic
4   Discovery Special Master Report and Recommendation No. 5.

5   2.   My prior declarations filed in this case have set forth the details of
6   Stroz Friedberg's engagement with MGA as well as my expertise, qualifications and
7   background.

8   **GLOSSARY OF TECHNICAL FORENSIC TERMS**

9   3.   Counsel for MGA has asked me to define the following technical
10  terms, which are commonly used in the context of digital forensics:

11  a.   **Active Files:**  An active file is any electronic file (whether User-
12  created or System-generated) that has not been deleted and exists within allocated
13  space on the hard drive of a computer.  Unless hidden or otherwise locked, active
14  files are readily accessible by the computer user.

15  b.   **Allocated Space:**  Allocated space is the portion of a hard drive
16  that is occupied by active files or system configuration data specifically reserved
17  for use by the computer system.  The amount of allocated space depends on the
18  number of active files on the hard drive and will change as files are added to the
19  computer or deleted.  The remainder of the physical space on a hard drive is called
20  "unallocated space."  The unallocated space is the portion of the hard drive that is
21  available for new active files to be written to that space.

22  c.   **Deleted Recoverable File:**  A deleted recoverable file refers to a
23  file that was once active on the system and, whether through user interaction or
24  system operation, has been deleted, but can still be recovered from unallocated
25  space with all of its data intact because it has not actually been overwritten by any
26  new data.  These files still have an entry in the MFT or FAT (defined below).
27  Deleted recoverable files reside in unallocated space.

28  d.   **Deleted Overwritten File**:  A deleted overwritten file refers to a

- 1 -

file that was once active on the system and, whether through user interaction or system operation, has been deleted, but can no longer be recovered from unallocated space with all of its data intact because either a portion or the entirety of the file has been overwritten by new data.  These files may have an entry in the MFT or FAT (defined below).  When a deleted file has not been entirely overwritten, the remaining portion (or fragment) of the file that has not been overwritten can be recovered by use of forensic software and expertise.

e. **File Deletion by System:**  Active, system-generated files can be deleted by normal computer processes.  For example, web browsing software on a computer system creates Internet cache files—sometimes referred to as temporary Internet files.  When a user visits a website using a web browser like Internet Explorer or Firefox, files related to that website are stored in temporary cache locations.  Over time, normal computer processes will delete the active, system-generated files in these cache locations and the disk space previously occupied by such files will become unallocated space.

f. **File Deletion by User:**  Generally, when a computer user intends to delete a file in Windows, they simply hit the delete key, click and drag the file to the "Recycle Bin" with the computer mouse, or "right-click" with the mouse on the file and select "Delete".  These actions, however, will not actually delete the file from allocated space as described above, but instead will assign the file to the Recycle Bin on the computer's hard drive.  Files sent to the Recycle Bin remain in allocated space and are still accessible to the user until the Recycle Bin is emptied by the user.  When the Recycle Bin is emptied, the entry for that file in the MFT or FAT is changed to indicate that the file has been deleted and the allocated space that the file previously occupied is deemed unallocated and available to be occupied by new files.  Until the deleted file is actually overwritten, however, the content of the file remains intact and sits in unallocated space.  The deleted file is not physically moved to a new or different location on the hard drive.  The file still

occupies the same physical space on the hard drive until it is overwritten by new data.

g. **File Wiping Software:** Because deleted files are recoverable from unallocated space until overwritten, there exists specialized software, commonly referred to as "wiping" software, designed to allow a user to render said data unrecoverable. This process thwarts the forensic recovery of deleted files. Wiping software overwrites the unallocated portions of a hard drive with new data to render the deleted files unrecoverable by forensic software and tools.

h. **INFO2:** INFO2 is a system-generated file in the Recycle Bin that maintains the dates and times when files are moved to the Recycle Bin, assigning sequentially ascending index numbers to the files moved there. When the Recycle Bin is emptied, the INFO2 file is deleted. When the system is rebooted, the sequential numbering starts over at 1. Like any other deleted file, a deleted INFO2 file resides in unallocated space until it is overwritten by new data. Until the file is actually overwritten, it can be recovered by forensic software and tools.

i. **Master File Table or File Allocation Table:** A Windows computer uses a database called the Master File Table (MFT), or in some instances, a File Allocation Table (FAT) to record the location, size and other information about each file on a computer. One piece of information recorded in the MFT or FAT is whether the file is active and residing in allocated space, or whether it has been deleted and the space occupied by the file is therefore unallocated and available for new data. When a file is deleted (whether by the user or by the system) the space that the file occupies on the hard drive is designated as unallocated space, which means it is available to be overwritten with a new file. Deleted files are overwritten in the ordinary use and operation of a computer by new user-created or system-generated files.

j. **MD5 Hash Value:** The MD5 hash algorithm (aka "hash value") is commonly used for verifying the integrity of digital evidence or electronic files. A

1  hash function is a formula that reads the bits that make up an item of digital
2  evidence or a file and produces a unique indentifying number.  Calculating a hash
3  value for an item of digital evidence or file enables an examiner to make sure that
4  the evidence or file has not changed in any way over time.  This can be
5  accomplished by applying the algorithm to the item of evidence or file at any time.
6  If the evidence or file has not changed, the algorithm will produce the same hash
7  value as previously produced.  The MD5 hash value can also be used for file
8  comparison purposes.  If two files are identical they will yield the same hash value
9  upon application of the hash algorithm.

10      k**. Recycle Bin:**  The Recycle Bin, which can have various names
11  such as "Recycled" or "Recycler" depending on the version of the Windows
12  operating system installed, is a directory that holds the files that a user generally
13  intends to delete.  Files in the Recycle Bin are considered active files until the
14  Recycle Bin has been emptied, at which time the files are deleted and can be
15  overwritten at any time by the computer.

16      l. **System-generated Files:**  System-generated files are created and
17  maintained programmatically by the computer's operating system and are necessary
18  for the system to perform its many functions.  These files can contain information
19  *about* user-created files, but do not contain the *content* of user-created files.
20  Consequently, system-generated files are often referred to as "non-content files".
21  Examples of system-generated files include: system or application log files; the
22  Windows Registry; Internet history; and INFO2 files.  Forensic analysis of system-
23  generated files can reveal, for example, file system metadata (*e.g.*, file names, file
24  types, file path information, file accessed/created/modified times); information on
25  file deletion activity; a list of recently accessed files; use of specific software; and
26  other computer usage information.

27      m. **Unallocated Space:**  Unallocated space is the portion of a hard
28  drive that is not occupied by active files.  Unallocated space can contain unused

disk space, deleted recoverable files (*i.e.*, deleted files that have not yet been overwritten by new active files), or fragments of files that have been only partially overwritten. The operating system sees this area of the hard drive as available for storage of new data. Unallocated space cannot be accessed by a typical user of the computer; forensic tools are needed to review unallocated space. Unallocated space on a hard drive is not a single, contiguous segregated physical section on the hard drive. Rather, unallocated space is comprised of the unused disk space and all the portions of the hard drive where deleted files were once active.

n. **User-created Files:** User-created files are files that a human being (*i.e.*, a computer user) acts upon in the course of using the computer for his or her ordinary purposes. These files typically contain the content and substance of any communication or document that a user wishes to manipulate or store on a computer. Examples of user-created files include email, Microsoft Word documents, Excel spreadsheets, digital pictures, digital music files, design drawings, and many other types of information. These files are sometimes referred to as "content files" because they contain user-created content. User-created files can reside on a computer either as active files in allocated space or as deleted files in unallocated space.

o. **Windows Registry:** The Windows registry is a database or data store that holds the information and settings Windows needs to operate properly. The registry is typically considered a system-generated file and contains a wealth of data about a Windows computer, including items like the installation date of the operating system, user accounts that have been created on the system, and what hardware and software are installed on the system. The primary Windows registry files are the SYSTEM, SECURITY, SAM, SOFTWARE, and each user's NTUSER.DAT file.

**LARIAN MEDIA INSPECTION**

4. A component of Stroz Friedberg's work for MGA has included

1  oversight of the inspection of forensic images of laptop computers used by Isaac
2  Larian (the "Larian Media"). In two separate time periods, first from May through
3  June 2008 and then again from August 31, 2009 through December 14, 2009, I was
4  principally responsible for the oversight of this inspection, which was performed by
5  Mattel's forensic expert, 42 LLC ("42"). In both periods, 42's inspection involved
6  an examination of the deletion activity and other digital artifacts on the Larian
7  Media in an effort to identify evidence of potential data destruction, including the
8  installation and use of File Wiping Software.

9      5.    The 2008 inspection, and Stroz Friedberg's oversight of it, was bound
10 by the terms of a May 12, 2008 letter from Jon Corey to Lance Etcheverry (the
11 "Protocol"). The 2009 inspection was conducted pursuant to the parties'
12 Agreement to be Bound by Order No 34 and Subsequent Orders Related to the
13 Inspection of Hard Drives used by Issac Larian (the "Agreement"), which
14 incorporated the same terms as the May 12, 2008 letter.

15     6.    The Protocol and Agreement were designed to allow 42 to conduct an
16 examination of the deletion activity on the Larian Media, but also to afford
17 protections to the data contained on the media to ensure that no document discovery
18 beyond the activities related to deletion was performed. One component of these
19 protections was that 42 was not permitted to examine or produce the content of
20 Active User-created Files. (See May 12, 2008 letter from Corey to Etcheverry). 42
21 was, however, permitted to inspect all other portions of the Larian Media hard
22 drives, including all information derived from Deleted Recoverable Files, Deleted
23 Overwritten Files, INFO2 records, MFT information, System-generated Files,
24 Unallocated Space, and the Windows Registry.

25     7.    What this meant in practice was that 42 had full access to the Larian
26 Media hard drives, except that they could not read the contents of Active User-
27 created Files. If a User-created File was found deleted and residing in Unallocated
28 Space, however, 42 had access to the content of such deleted files subject to the

Protocol's and Agreement's conditions.

8. This arrangement was entirely adequate to perform a thorough and exhaustive search for deletion activity. Using the Unallocated Space and Active System-generated Files on the Larian Media that 42 had full access to, it should have been able to generate a comprehensive list of files and emails that had been deleted from any of the Larian Media. It also should have been able to determine which of those files, if any, still exist in active format on any of the Larian Media. And it should have been able to limit its conclusions and findings to only those deleted files that did not also exist in active format on any of the Larian Media.

9. In its initial examination of deletion activity on the Larian Media from May through June 2008, 42 could have, but simply chose not to determine whether deleted files it had identified resided in active format across the Larian Media. This could have been accomplished through file name comparison and/or MD5 hash file analysis. When asked in a deposition on June 26, 2008 why he did not search for file entries in the allocated space on the Larian Media, Christopher Pavan ("Pavan") of 42 simply explained, "it was not on the list of things to get done in priority order -- order that we were prioritizing things that we needed to get done in that time period," and admitted, "We could have searched hash values." (See Transcript of Deposition of Christopher Pavan, at p. 116:13-20. (June 26, 2008)).

10. In its second examination of the Larian Media starting in August of 2009, while bound by the same Protocol, 42 could and did run search queries across the Allocated Space of the Larian Media; could and did analyze Active System-generated Files (including the Window Registry, restore point files, link files, INFO2 records, and Internet browsing history); and could and did analyze the MFT metadata available for Active User-Created files. (See December 11, 2009 Rubin Declaration for a detailed listing of areas 42 reviewed). These steps were adequate both to identify deleted files and to determine whether or not the deleted files still exist in active form on any of the Larian Media. In fact, on December 14, 2009, 42

1  produced to Stroz Friedberg a spreadsheet that purports to be a listing of files and
2  emails that were deleted and not in an active state on any of the Larian Media.

3        11.    Furthermore, when the content of an Active User-created File changes,
4  System-generated Files and other related information on the system are modified to
5  reflect such changes.  For example, if a paragraph is added or removed from a
6  Microsoft Word document, while the substance of the added or removed paragraph
7  cannot be known by examining the content of the file, metadata associated with the
8  file (e.g., accessed/modified/created times, file size, etc.), as well as the file's MD5
9  hash value, will change and thereby reflect the fact of such a change to the
10 document.  Thus, 42 does not need access to the actual content of the Active User-
11 created File to determine whether an active version of a deleted file is substantially
12 different in content than the deleted file.  The metadata and hash value of the files
13 can allow such a determination to be made without accessing the actual content of
14 the Active User-created File.

15     I declare under penalty of perjury under the laws of the United States that the
16 foregoing is true and correct.  Executed on March 15, 2010, at Los Angeles,
17 California.

                          Samuel S. Rubin

- 8 -

Dec. of S. Rubin ISO MGA's Supp. Briefing Re
Objections to EDSM R&R No. 5
CV 04-09049 DOC (RNBx)