1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                       SOUTHERN DIVISION

12  MATTEL,   INC.,   a   Delaware    | CASE NO. CV 04-9049 DOC (RNBx)
    corporation,
13                                    | Consolidated with Case Nos. CV 04-
                  Plaintiff,          | 09059 and CV 05-02727
14
         vs.                          | Hon. David. O. Carter
15
    MGA  ENTERTAINMENT,  INC.,  a     | MATTEL, INC.'S SUBMISSION IN
16  California corporation, et al.,   | RESPONSE TO THE COURT'S
                                      | FEBRUARY 27, 2010 ORDER
17                Defendant.          | REGARDING LARIAN HARD DRIVE
                                      | INSPECTION; AND
18  
    AND CONSOLIDATED ACTIONS         | SUPPLEMENTAL DECLARATION OF
19                                    | CHRISTOPHER PAVAN

20                                      Date:   TBD
                                        Time:   TBD
21                                      Location:  Courtroom 9D

22                                      **Phase 2**
                                        Discovery: TBD
23                                      Pre-trial Conference:  TBD
                                        Trial Date:  TBD

24

25

26

27

28

07975/3356802.4

The Court's February 27, 2010 Order requested briefing from the parties on the following questions:

1. Why have the active files on Larian's hard drive not already been analyzed for documents responsive to Mattel's many discovery requests? If they have been so analyzed, why have the MGA Parties not already performed a privilege review?

2. First, if [deleted] files continue to exist [in active portions of Larian's hard drives] and are relevant and responsive to pending discovery requests, why have such files not already been produced? Second, why should not the MGA Parties be provided with the choice of: (a) producing the active files for forensic inspection; or (b) being estopped from arguing that deleted files may continue to reside in Larian's active files.

3. To what extent is any additional evidence redundant and duplicative of any evidence of spoliation found in Larian's inactive files? And, is there any evidence of spoliation of active files or is Mattel's evidence of spoliation restricted to the deletion of entire files and not the content of still existing files?

4. How will the mere discovery of such software [that enables electronic spoliation] prove spoliation in a non-circumstantial manner?

5. Why are these arguments [regarding MGA's purported burden in privilege review of Larian hard drive material] not equally responsive to Mattel's objections to Discovery Matter Order No. 89/91? And why should not the parties be required to meet and confer to attempt to find a mutual accommodation that disposes of both these objections and Mattel's objections to Discovery Matter Order No. 89/91?

Answers to some of these issues are exclusively in possession of MGA. Mattel addresses each in turn to the extent it is able.

**Responses To Questions**

I.    **THE COURT'S EXPERTS OR MATTEL'S INDEPENDENT EXPERTS
      SHOULD PERFORM THE SEARCH FOR RELEVANT FILES**

The Court's first question concerns why MGA has not already searched Larian's hard drives for relevant information and performed any necessary privilege review.   Mattel is unaware of any legitimate basis that MGA has had for not searching Larian's hard drives, and MGA has never provided one to Mattel.   The uncontradicted evidence shows that, in fact, the drives have not been thoroughly searched (if they have been searched at all) for relevant evidence, even though MGA has had *years* to do so.[1]   MGA's apparent failure to analyze the drives is all the more unjustified given that MGA itself has (a) obtained Mattel drives of certain witnesses to analyze[2] and (b) recently moved to obtain the hard drive(s) of Mattel's CEO.[3]

Given this record, Mattel respectfully submits that the long-overdue search for relevant information on Larian's hard drives should be performed either by Mattel's independent forensic experts or by the Court-appointed forensic experts.[4]   The drives

---

[1]   This evidence comes from MGA itself.   In response to Mattel's interrogatory seeking all sources of information from which MGA collected documents, MGA listed over 100 specific computer hard drives from which it claimed to have collected documents.   This list did not include a single Larian hard drive.   MGA Entertainment, Inc.'s Objections and Responses to Mattel, Inc.'s Supplemental Set of Interrogatories, dated February 8, 1008, at 47-56.   Mattel has previously pointed out its understanding from this evidence that Larian's "drives have not been searched *at all,*" and MGA did not dispute it.   Mattel's Opposition to MGA's Objections to Recommendation No. 5 of January 21, 2010 Electronic Discovery Special Master's Report and Recommendation, dated February 16, 2010 ("Mattel's Opposition") (Dkt. No. 7532).
[2]   August 18, 2009 Letter from B. Dylan Proctor to William Molinski and Christopher Chaudoir (providing that MGA's experts could "inspect the images of the hard drives in their entirety" with respect to the Mattel hard drives used by Machado, Vargas, Trueba, Castilla, and Brisbois).
[3]   Despite its unsupportable complaints about the supposed burden of examining Larian's hard drives, MGA filed a motion with the Electronic Discovery Special Master seeking full access to Robert Eckert's hard drives *and* Mattel's email systems, even though there is no evidence whatsoever of spoliation by Mr. Eckert.   See MGA Entertainment, Inc.'s Motion for Review of Robert Eckert's Mattel Hard Drives and Mattel's Email Systems for Evidence of Spoliation, dated February 13, 2010.
[4]   MGA claims that if the parties can agree on search terms, independent experts are not necessary.   But during recent in-Court discussions on this topic, MGA rejected Mattel's proposed search terms for the Larian hard drives, including
(footnote continued)

07975/3356802.4

1   must be turned over for inspection by forensic experts in any case to locate evidence

2   of spoliation; the drives should be searched for relevant evidence at the same time.  A

3   search conducted by Mattel's forensic experts or the Court-appointed experts also

4   would provide transparency and better avoid ongoing disputes about the adequacy of

5   any supplemental search MGA might be ordered to conduct.

6   **II.     MGA SHOULD NOT BE GIVEN THE OPTION OF CONCEALING**

7   **ACTIVE FILES BY AGREEING NOT TO USE THEM TO REBUT**

8   **MATTEL'S EXPERTS**

9           The Court's second question concerns (1) why active files purportedly showing

10  that deleted files continue to exist have not already been produced; and (2) why MGA

11  should not be given the choice of either producing the files or being estopped from

12  arguing that deleted files continue to exist as active files.  As discussed above, Mattel

13  is unaware of any proper reason why MGA has not thoroughly searched Larian's

14  hard drives and produced all responsive documents, especially given that it has had

15  years to do so, and submits that a search for such files by Mattel's forensic experts or

16  the Court's independent experts is appropriate at this juncture to ensure integrity to

17  the process and avoid further delays, among other reasons.

18          As to the second question – why MGA should not be permitted to choose

19  between relying on active files and producing them, or not relying on them and

20  keeping them concealed – the answer is that there is no basis or cause for

21  concealment rather than production.  Mattel previously filed a motion seeking to

22  preclude MGA from relying on active files on Larian's hard drives while denying

23  _____

24  objecting to obviously relevant terms such as "Farahnik" and "Gozini."  In contrast,
    Mattel agreed to every search term MGA proposed for Matt Bousquette's Mattel hard

25  drive.  Yet as to Larian's drives, MGA even refused to use the same or similar search
    terms it insisted on for Bousquette's.  Having failed to search Larian's drives for

26  years, MGA still refuses to search them under the same procedures used to search
    Mattel drives.  Judge Smith's recommendation that independent experts perform the

27  search should therefore be entered.  Indeed, forensic experts will be required in any
    event in order to perform the ordered spoliation analysis, even if (unlike here)

28  particular search terms for the hard drives were agreed to or ordered.

1    Mattel access to those same files, or in the alternative, to obtain access to the active

2    files.[5]  In an attempt to avoid giving Mattel access to the active files, MGA stated that

3    it would produce any and all active files on which its experts intend to rely in

4    purporting to show that deleted files still exist in active portions of the drives.[6]  But

5    rather than produce any such files, MGA insisted on yet another lengthy meet and

6    confer in an effort to restrict Mattel's analysis of the drives and its access to

7    information on the drives.  Although Mattel's forensic experts completed their very

8    limited analysis in December 2009 (which was constrained as a result of MGA's

9    conditions), MGA has for three months now refused to release the results to Mattel's

10   counsel, to say nothing about whether and when MGA will decide if it intends to rely

11   on active files in response to Mattel's analysis and produce them to Mattel.  As

12   discussed more fully in Mattel's Opposition to MGA's Objections to the Special

13   Master's Recommendation, the length and complexity of this process has only

14   fostered delay, not discovery.  These delays were a key reason why the Court

15   appointed the Electronic Discovery Special Master in the first place.  Permitting

16   MGA to pick and choose what files it will produce and when is not appropriate.

17          More importantly, it is not MGA's prerogative to conceal relevant files on

18   Larian's hard drives by unilaterally deciding it will not rely on them.  The active files

19   on Larian's hard drives should be searched for all relevant information, including

20   evidence of spoliation, regardless of whether MGA chooses to rely on that

21   information or not.  That is the only way to gain a complete picture of spoliation

22   activity.  Indeed, full access is precisely the level of search Mattel has permitted of its

23   own hard drives.[7]  As Mattel's experts have stated, "[w]ithout full access to the

24   _____

25   [5]     Mattel, Inc.'s Motion for Preclusive Relief, or in the Alternative, Access to
     Active Files on the Larian Hard Drives, dated June 24, 2009 (Dkt. No. 5759).
26   [6]     August 31, 2009 Hearing Tr. at 6-8.  In light of MGA's promises, the Court
     denied the remainder of Mattel's motion as moot.  See August 31, 2009 Order at 1-2
27   (Dkt. No. 6544).
     [7]     August 18, 2009 Letter from B. Dylan Proctor to William Molinski and
28   Christopher Chaudoir; see also Mattel's Opposition (Dkt. No. 7532), at 6.

1  information contained in the hard drive images, it is not possible to conduct a

2  complete forensic examination of the images."[8]   That is because "reviewing the

3  contents of documents, Internet cache, archive files (i.e., ZIP files), and email . . .

4  allows the examiner to fully understand what was occurring on the computer, creating

5  a more complete profile of a user's intention and actions."[9]

6        Preventing access to active files, on the other hand, hinders analysis of

7  spoliation activity in a number of ways.  First, as the Court noted,[10] and as explained

8  more thoroughly in the concurrently-filed Supplemental Declaration of Christopher

9  Pavan, the content of active files may be deleted without deleting the file itself, such

10 that the deletion activity could **only** be detected through a review of the active files

11 themselves.[11]  "Though its content has been deleted, the files thus remains allocated

12 (i.e., it is technically still active) and the deletion would be undetectable under the

13 current protocol."[12]  Moreover, when a computer expert searches "electronic media

14 for signs of spoliation, the active content is often reviewed for signs that the subject

15 conducted research and/or communicated with someone about ways in which data

16 can be deleted."[13]  At his deposition, former MGA executive Brian Wing testified

17 that, in October-November 2008, Isaac Larian instructed him to permanently delete

18 an email related to Mattel from MGA's systems.[14]  Mr. Wing further testified that he

19 received an email from MGA's IT department confirming that the spoliation had been

20 completed, which also was deleted.[15]  Active files on Larian's hard drives (such as

21

22

23  [8]  Declaration of Christopher Pavan, dated December 7, 2009, at ¶ 5.
    [9]  Id.
24  [10]  Order Directing Supp. Briefing With Respect To MGA's Objs. to
    Recommendation No. 5 of Jan. 21, 2010 Special Master's Report and
25  Recommendation, at 2-3.
    [11]  See Supplemental Declaration of Christopher Pavan, filed concurrently, at ¶ 4.
26  [12]  Id. at ¶ 6.
    [13]  Id.
27  [14]  Dep. of B. Wing, Feb. 19, 2010 ("Wing Depo."), at 615:6-617:13; 633:19-
    634:2.
28  [15]  Id. at 885:9-888:20.

1  emails) may contain evidence of this spoliation, as well as, potentially, additional

2  instructions from Mr. Larian to MGA employees to delete relevant material.

3      None of this information will be recovered if active files are not analyzed.

4  Active files thus should be analyzed whether or not MGA intends to rely on them.

5  **III.**  **ADDITIONAL EVIDENCE OF SPOLIATION WILL NOT BE**

6      **REDUNDANT**

7      The Court's third question is:  "To what extent is any additional evidence

8  redundant and duplicative of any evidence of spoliation found in Larian's inactive

9  files?  And, is there any evidence of spoliation of active files or is Mattel's evidence

10  of spoliation restricted to the deletion of entire files and not the content of still

11  existing files?"

12      There is certainly substantial evidence of spoliation by MGA in this case,[16] and

13  there is testimony about spoliation of emails by Larian specifically.[17]  But MGA's

14  refusal to make the Larian drives available for a thorough analysis has prevented

15  Mattel from obtaining evidence of spoliation of active files on these drives and has

16  also prevented Mattel from obtaining adequate evidence of spoliation of inactive

17  files.  Thus, there is no possibility that additional searches will yield merely

18  duplicative or redundant evidence of spoliation.

19      Mattel's experts' Phase I analysis of inactive files on certain of Larian's hard

20  drives revealed evidence of spoliation.[18]  MGA criticized this conclusion based on its

21  own experts' analyses of active files,[19] even though Mattel's expert was not permitted

22  to analyze active files.  That has hampered Mattel's ability to get to the bottom of the

23  spoliation question as to even the inactive files, let alone active files.  For example, if

24  permitted to analyze active content, Mattel's expert or the Court's expert may be able

25

26  [16]  Mattel's Opposition. (Dkt. No. 7532), at 8-14.

27  [17]  Wing Depo. at 615:6-617:13; 633:19-634:2.
     [18]  Preliminary Examination Report, Larian Hard Drives & USB Drive, by
28  Christopher Pavan, dated June 24, 2008.

1    to determine whether the supposedly active versions of deleted files are duplicates of

2    the deleted files or not.[20]   In addition, analysis of the content of files would permit

3    "temporary" files to be compared with active and deleted files, which can

4    demonstrate deletion activity and cannot be performed without access to content.[21]

5        Mattel's experts completed limited analyses of inactive files on December 19,

6    2009.  However, MGA refuses to release to Mattel's counsel the results of even the

7    restricted analysis Mattel's experts were permitted to conduct.  Thus, Mattel does not

8    even know to what extent spoliation has been uncovered in inactive files on Larian's

9    hard drives because MGA refuses to provide access to that information.  Mattel is

10   also unaware of the extent to which active files on the Larian hard drives may be used

11   to purportedly rebut the deletion of other files, as Mattel has not been permitted to

12   analyze active files.  In any case, the searches could not have uncovered evidence of

13   spoliation in the content of active files, because access to such files was not granted.

14   **IV.   CONTEMPLATION OR USE OF SOFTWARE DESIGNED FOR OR**

15        **ENABLING SPOLIATION IS CRITICALLY RELEVANT**

16       The Court's fourth question is:  "How will the mere discovery of such software

17   [enabling electronic spoliation] prove spoliation in a non-circumstantial manner?"

18   The presence of software enabling spoliation is itself relevant to spoliation.  Using an

19   example from this case, Carter Bryant's hard drives had -- in the active portion of the

20   drives -- a program called "Evidence Eliminator" installed.  After discovering the

21   existence of the program, Mattel conducted forensic analyses showing that the

22   program had not only been *installed* but had been *run*[22] and evidence of this,

23   including Bryant's testimony, was introduced at trial.[23]   Here as well, analyzing

24   spoliation-enabling software in conjunction with system information could reveal

25

26   [19]   Report of Larian Media Analysis, dated July 1, 2008 at 2.  Deposition of
     Samuel Rubin, dated July 3, 2008, at 64:5-65:10; 113:12-14.

27   [20]   Supplemental Pavan Declaration, at ¶ 5.
     [21]   Id. at ¶ 6.
     [22]   Trial Tr. at 2682:17-25; 2691:19-2692:12.

28

1   when the software was installed, if and when it was accessed or run, who was logged

2   onto the system when the software was run, what files were erased and when those

3   files were erased, among other relevant information.  Thus, discovery of software

4   enabling spoliation would potentially reveal, or lead directly to the revelation of,

5   affirmative, direct evidence of intentional spoliation.

6   **V.**   **ORDER NO. 89/91'S REQUIRED SEARCHES ARE EXPONENTIALLY**

7        **LARGER AND MORE BURDENSOME THAN A SEARCH OF**

8        **LARIAN'S HARD DRIVES**

9        The Court's final questions are:  "Why are these arguments [regarding MGA's

10  purported burden in conducting privilege review of responsive material from Larian's

11  hard drives] not equally responsive to Mattel's objections to Discovery Matter Order

12  No. 89/91?  And why should not the parties be required to meet and confer to attempt

13  to find a mutual accommodation that disposes of both these objections and Mattel's

14  objections to Discovery Matter Order No. 89/91?"

15       The search of Larian hard drives and the searches required by Order No. 89/91

16  are vastly different in scope, burden, and the likelihood that the searches will uncover

17  relevant information.  As to scope, Mattel is informed there are 11 Larian hard drives

18  to be searched.  In contrast, Order No. 89 requires Mattel to search over 1,200

19  servers, *each* of which is far larger than a single personal hard drive.  In terms of the

20  data to be searched, Mattel's servers are thousands of times larger than the Larian

21  hard drives.  In addition to the 1,239 servers, Order No. 89 also requires Mattel to

22  search the hard drives of *every* Mattel individual *ever mentioned* in discovery,

23  including depositions, interrogatories, or initial disclosures.  Mattel has identified

24  well over 200 such hard drives.  Thus, while MGA is being asked to search 11 hard

25  drives of the most critical witness in the case, Order No. 89 requires a search of over

26  ***200*** hard drives, most of which relate to immaterial personnel, in addition to over

27  ───────────────

28  [23]   Id.

1  1,200 servers, each of which is substantially larger than the hard drive of a personal

2  computer.  In short, the scope of search is different by many orders of magnitude.

3        The burden of the searches at issue is also vastly different.  As Mattel detailed

4  in its Objections to Order Nos. 89 and 91, in addition to the enormous size of the

5  searches, the servers to be searched contain large amounts of information that cannot

6  be searched except file-by-file.[24]  Moreover, "a great many of Mattel's servers

7  contain databases, system tools and applications, and other graphical and numerical

8  type information that are not searchable by keyword" and "also contain information

9  that can only be accessed through a proprietary" system such as Oracle.[25]

10        This burden on Mattel would be further increased by the substantial risk that

11  searches of every server in North America would compromise both the operation and

12  data integrity of Mattel's systems.  "This is because in order to carry out [such] data

13  searches . . . the layers of security around servers must be compromised (including

14  security related to file systems, firewalls, network access controls, and others)."[26]

15  This in turn risks causing "data losses and system malfunctions that could severely

16  impact Mattel's business operations and regulatory compliance."[27]

17        In contrast, MGA has made no showing of burden as to a search of Larian's

18  hard drives.  Instead, MGA has made the unsupported assertion that reviewing the

19  relevant documents on Larian's hard drives for privilege would take a "thousand

20  hours" of attorney review time.[28]  Even if this were true, it is a tiny fraction of the

21  time it would take Mattel to search (let alone review for responsiveness and privilege)

22

---

23  [24]  See Appendix 2 to Mattel's Objections to Portions of Discovery Master Order Nos. 89 and 91 (Declaration of Philip Moore), dated February 18, 2010, at ¶ 5

24  (stating that "[m]any of the files and data formats on Mattel's servers cannot be meaningfully searched except on a manual, file-by-file basis, and in particular cannot

25  be searched through the use of key words.") (Dkt. No. 7523).
    [25]  Id. at ¶ 6.
    [26]  Id. at ¶ 8.

26  [27]  Id.
    [28]  MGA's Objections to Recommendation No. 5 of January 21, 2010 Electronic

27  Discovery Special Master's Report and Recommendation, dated February 2, 2010 (Dkt. No. 7467), at 2.

28

1    the many thousands of times more data required to be searched by Order No. 89.

2    Moreover, the Larian hard drives have already been imaged and delivered to forensic

3    experts.   Searching them will have zero impact on MGA's ongoing business

4    operations.  Searching every Mattel server, on the other hand, will have significant

5    effects on Mattel's business operations and data integrity.

6         Order Nos. 89 and 91 also require searches that are not targeted toward likely

7    sources of relevant information.  Many of Mattel's 1,239 servers scattered throughout

8    North America are unlikely to have relevant information; nor is every Mattel

9    employee ever mentioned in discovery likely to have relevant information.  Larian,

10   on the other hand, is the most important witness in Phase II, and there is ample

11   evidence that he has personally engaged in spoliation.  Searching the hard drives of

12   this critical witness is justified.  Searching every Mattel server on the continent and

13   every Mattel employee ever mentioned in discovery is not.

14        Finally, as Mattel has noted, because MGA has been given the option of having

15   *either* Mattel's experts or the Court's experts analyze the Larian drives, there is no

16   legitimate complaint about burden or expense.  That is particularly true given that

17   MGA is now asking Mattel to turn over Bob Eckert's hard drive(s) to MGA's experts.

18                              **Conclusion**

19        For the foregoing reasons and those stated in Mattel's briefing before Judge

20   Smith and its Opposition to MGA's Objections to Judge Smith's Recommendation,

21   the Court should enter Judge Smith's Recommendation requiring a full and complete

22   search of Larian's hard drives by either the Court's experts or Mattel's.

23   DATED:  March 9, 2010          QUINN    EMANUEL    URQUHART    &
                                    SULLIVAN, LLP
24

25

26                                 By/s/ Michael T. Zeller
                                   Michael T. Zeller
27                                 Attorneys for Mattel, Inc.

28

                                   -10-