QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br><u>Hon. David O. Carter</u><br><br>SUPPLEMENTAL DECLARATION OF CHRISTOPHER PAVAN IN SUPPORT OF MATTEL, INC'S SUBMISSION IN RESPONSE TO THE COURT'S FEBRUARY 27, 2010 ORDER REGARDING LARIAN HARD DRIVE INSPECTION<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

00505.07975/3360378.2

PAVAN DECLARATION

# DECLARATION OF CHRISTOPHER PAVAN

I, Christopher Pavan, declare as follows:

1.  I am an EnCase Certified Examiner working for 42 LLC, a digital forensic solutions company based in San Marino, California. I have been performing computer forensic examinations and data recovery operations for over five years. Prior to becoming a computer forensic examiner, I honorably served for four years in the United States Army as an Electronic Warfare technician and worked for the Department of Defense as a contractor providing computer and electronics systems support for another four years. As a contractor I was responsible for setting up and securing U.S. Classified networks in support of Military and State Department operations around the globe. I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.  I have performed numerous computer forensic examinations, preservations, and recoveries for government, corporations, and law enforcement. Additionally, I volunteer my time assisting different law enforcement agencies in the southern California region as a subject matter expert.

3.  A true and correct copy of my curriculum vitae can be found attached hereto as Exhibit A.

4.  I explained in my prior Declaration, dated December 7, 2009, that it is not possible to do a thorough review of Mr. Larian's hard drives for possible spoliation without accessing active files on those drives. I have been asked to provide additional examples of the ways in which forensic analysis of Mr. Larian's hard drives will be inhibited without access to their active content.

5.  First, as discussed in my prior Declaration, there are a variety of techniques a user can employ to delete the content of a file without deleting the metadata and system information related to that file. For example, there are commercially available "wiping" tools that are designed to allow a user to delete the

content of a file while leaving all metadata and system information in place. It is possible to run such a program without even installing it on the hard drive to be wiped. The use of such a tool would be undetectable if only inactive files were accessible. Moreover, even without using such a tool, a user can simply open a file and manually delete its contents or a portion thereof, while leaving the file name and system information intact. A prohibition of analysis of the active contents of files would prevent this type of deletion activity from being uncovered.

6. In addition, many programs on a user's computer – such as Microsoft Word – generate and keep "temporary" versions of a file as a user works in the file. Thus, the presence of a temporary file indicates that the user worked on the current version of the temporary file on that computer, and the absence of a current version of the file can show that the current version was deleted from the computer. In order to determine whether the current versions of the temporary files still exist on a hard drive, it is necessary to run keyword searches on the drive based on the content of the temporary file – i.e., based on the active contents of the drive. If the content of the temporary file does not appear in any full active files on the computer, it is likely that these files were deleted. Without access to the active content of these files, however, this technique is unavailable to an examiner, and deleted content may remain uncovered.

7. Last, as discussed in my prior Declaration, dated December 7, 2009, I was not permitted to examine the content of active files in my prior analyses of some of the Larian media. MGA claimed that files I identified as deleted in fact existed in active portions of the Larian media. But without examining active content, it is impossible to determine whether the active files MGA identified were truly duplicate versions of the deleted files I identified. Access to active content can resolve this issue. For example, as described above, the content of the active version may have been deleted, showing that the file is not an active version of the deleted file. Additionally, opening the supposed active version of a deleted file can

reveal that the file is actually a different type of file than the file extension indicates. So, for example, opening a file that is a supposed active version of a Microsoft Word document can reveal that the active document is actually a PDF document, not a Word document, which again would show that the active file is not a duplicate active version of the deleted file.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 9, 2010, at Los Angeles, California.

_____
Christopher Pavan