Bingham McCutchen LLP
TODD E. GORDINIER (SBN 82200)
todd.gordinier@bingham.com
PETER N. VILLAR (SBN 204038)
peter.villar@bingham.com
MICHAEL D. MORTENSON (SBN 247758)
michael.mortenson@bingham.com
600 Anton Boulevard, 18th Floor
Costa Mesa, CA  92626-1924
Telephone:  714.830.0600
Facsimile:  714.830.0700

Attorneys for Non-Party
OMNI 808 INVESTORS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>        Defendants.<br><br>AND CONSOLIDATED ACTIONS. | Case No. CV 04-09049 DOC (RNBx)<br>c/w Case Nos. CV 04-09059 & CV 05-2727<br><br>Hon.  David O. Carter<br><br>**OMNI 808 INVESTORS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S MOTION FOR LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS**<br><br>**[DECLARATION OF PETER N. VILLAR FILED CONCURRENTLY]**<br><br>Hearing Date:    April 26, 2010<br>Time:           8:30 a.m.<br>Place:          Courtroom 9D<br><br>**Phase 2**:<br>Discovery Cut-off:      TBD<br>Pre-trial Conference:   TBD<br>Trial Date:           TBD |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................ 7

    A.   Wachovia Entered Into A Credit Agreement With MGA In
        2006 ........................................................................................................ 7

    B.   The Credit Crisis Had A Profound Impact On Wachovia,
        Which Led It To Declare MGA In Default In July 2008 .................... 7

    C.   Omni Places An Offer And Purchases The MGA Debt From
        Wachovia ................................................................................................ 8

    D.   Omni's Members And The Sources And Uses Of Omni's Funds
        Are Well Known Facts ....................................................................... 10

    E.   Omni's Purchase Of The MGA Debt From Wachovia
        Benefitted MGA, Wachovia And Mattel ........................................... 12

III.  THE COURT SHOULD DENY MATTEL'S MOTION TO ADD
     OMNI AS A NEW PARTY BECAUSE THE PROPOSED
     AMENDMENT IS FUNDEMANTALLY UNFAIR, DILATORY,
     FUTILE AND PREJUDICIAL ................................................................... 13

    A.   Mattel's Undue Delay In Filing This Motion Requires Denial ......... 15

    B.   The Proposed Amendment To Add Omni Would Be Futile
        Because Mattel's Proposed Claims Are Factually And Legally
        Baseless ................................................................................................ 17

    C.   Omni Would Be Substantially Prejudiced If It Was Added At
        This Late Stage ..................................................................................... 22

IV.   CONCLUSION ............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*
  781 F.2d 1393 (9th Cir. 1996) ................................................................. 16

*Adorno v. Crowley Towing & Transp. Co.*
  443 F3d 122 (1st Cir. 2006) ..................................................................... 18

*AmerisourceBergen Corp. v. Dialysist W., Inc.*
  465 F.3d 946 (9th Cir. 2006) .............................................................. 15, 17

*Ascon Properties, Inc. v. Mobil Oil Co.*
  866 F.2d 1149 (9th Cir. 1989) ................................................................. 13

*Aughe v. Shalala*
  885 F. Supp. 1428 (W.D. Wash. 1995) .................................................... 14

*Bechtel v. Robinson*
  886 F.2d 644 (3d Cir. 1989) ..................................................................... 23

*Benjamin v. Diamond (In re Mobile Steel Co.)*
  563 F.2d 692 (5th Cir. 1977) .................................................................... 21

*Bonin v. Calderon*
  59 F.3d 815 (9th Cir. 1995) ...................................................................... 17

*Butler v. Robar Enter.*
  208 F.R.D. 621 (C.D. Cal. 2002) .............................................................. 14

*Campbell v. Emory Clinic*
  166 F.3d 1157 (11th Cir. 1999) ................................................................ 23

*Chapman & Cole v. Itel Container Int'l B.V.*
  865 F.2d 676 (5th Cir. 1989) .................................................................... 21

*Chapman v. YMCA of Greater Buffalo*
  161 F.R.D. 21 (W.D.N.Y. 1995) .............................................................. 23

*Gabrielson v. Montgomery Ward & Co.*
  785 F.2d 762 (9th Cir. 1986) .................................................................... 14

*Hartsfield v. Vidor*
   199 F.3d 305 (6th Cir. 1999) ................................................................ 18

*Heyl & Patterson, Int'l, Inc. v. F.D. Rich Housing*
   663 F.2d 419 (3d Cir. 1981)) ................................................................ 23

*In re Stanwich Fin. Servs. Corp.*
   317 B.R. 224 (Bkrtcy. D. Conn. 2004) ................................................ 22

*Invest Almaz v. Temple-Inland Forest Prods. Corp.*
   243 F.3d 57 (1st Cir. 2001) .................................................................. 16

*ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*
   No. C05-2010Z, 2007 WL 666593 (W.D. Wash. Feb. 27, 2007) ....... 21

*Jackson v. Bank of Hawaii*
   902 F.2d 1385 (9th Cir. 1990) ............................................................. 17

*Kaplan v. Rose*
   49 F.3d 1363 (9th Cir. 1994) ............................................................... 17

*Lafrenier v. Congress of U. S.*
   308 Fed. Appx. 202, 2009 WL 118135 (9th Cir. Jan. 14, 2009) ......... 17

*Lauter v. Anoufrieva*
   642 F. Supp. 2d 1060 (C.D. Cal. 2008) ............................................... 22

*Layfield v. Bill Heard Chevrolet Co.*
   607 F.2d 1097 (5th Cir. 1979), *cert. denied*, 446 U.S. 939 (1980) .... 16

*McCarty Farms, Inc. v. Burlington N., Inc.*
   787 F. Supp. 937 ................................................................................. 14

*McQuillion v. Schwarzenegger*
   369 F.3d 1091 (9th Cir. 2004) ............................................................. 18

*Milanese v. Rust–Oleum Corp.*
   244 F.3d 104 (2d Cir. 2001) ................................................................ 18

*Miller v. Rykoff-Sexton, Inc.*
   845 F.2d 209 (9th Cir. 1988) ............................................................... 18

*Mir v. Fosburg*
   646 F.2d 342 (9th Cir. 1980) ............................................................... 13

*Moore v. Kayport Package Express, Inc.*
   885 F.2d 531 (9th Cir. 1989) ................................................................... 14

*Morongo Band of Mission Indians v. Rose*
   893 F.2d 1074 (9th Cir. 1990) ................................................ 14, 23, 24

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*
   366 F.3d 930 (C.A.D.C. 2004) ............................................................. 18

*Native Am. Arts, Inc. v. Specialty Merch. Corp.*
   451 F. Supp. 2d 1080 (C.D. Cal. 2006) ............................................. 18

*Saul v. U.S.*
   928 F.2d 829 (9th Cir. 1991) ................................................................. 17

*Sisseton-Wahpeton Sioux Tribe v. United States*
   90 F.3d 351 (9th Cir. 1996) ................................................................... 13

*Solomon v. North American Life Ins.*
   151 F.3d 1132 (9th Cir. 1998) ............................................................. 14

*Stein v. United Artists Corp.*
   691 F.2d 885 (9th Cir. 1982) ................................................................. 16

*Thomas-Lazear v. FBI*
   851 F.2d 1202 (9th Cir. 1988) ............................................................. 14

*Union Pac. R.R. Co. v. Nev. Power Co.*
   950 F.2d 1429 (9th Cir. 1991) ............................................................. 13

*Vincent v. Trend W. Technical Corp.*
   828 F.2d 563 (9th Cir. 1987) ................................................................. 16

*Visioneer, Inc. v. KeyScan, Inc.*
   626 F. Supp. 2d 1018 (N.D. Cal. 2009) ............................................. 22

*W. Shoshone Nat'l Council v. Molini*
   951 F.2d 200 (9th Cir. 1991), *cert. denied*, 951 U.S. 822 (1992) ...................... 17

*Walker v. Benter*
   41 F. Supp. 2d 1067 (N.D. Cal. 1999) ............................................... 14

*Washington v. Phillip/Seco Indus., Inc.*
   116 F.Supp.2d 776 (E.D. Tex. 2000) ................................................. 22

*Williams v. County of Ventura*
    No. CV07 7665 AHM, 2009 U.S. Dist. Lexis 110167 (C.D. Cal. Aug. 7, 2009) ..................................................................................................14

**FEDERAL STATUTES**

11 U.S.C. § 510(c) ..................................................................................21

# I.   INTRODUCTION[1]

Toy giant Mattel, Inc. ("Mattel") and its competitor MGA Entertainment, Inc. ("MGA") have been embroiled in this litigation over the rights to Bratz dolls since April 2004.  In this war of attrition between Barbie and Bratz, Mattel has purportedly spent $200 million in attorney fees "to litigate MGA to death" and, in the process, has amassed the largest case docket in the history of the Central District (nearly 8,000 entries and counting).  Now, six years into this legal battle, Mattel improperly seeks to expand this case yet again by amending its complaint for the <u>fourth time</u> to add, *inter alia*, "civil RICO conspiracy" claims against a <u>new party</u>, Omni 808 Investors, LLC ("Omni").  Mattel's inflammatory and defamatory proposed allegations against Omni arise solely from Omni's acquisition of preexisting MGA debt obligations from a syndicate of financial institutions led by Wachovia Bank, N.A. ("Wachovia") in September 2008 (more than four years after the case began).

These purported "claims" against Omni alleged in Mattel's proposed Fourth Amended Answer and Counterclaims are not only factually and legally baseless (Mattel has not shown and cannot show how Omni's acquisition of a preexisting debt from Wachovia was wrongful or how it injured Mattel in any way) but also **are premised on the same set of allegations, theories and purported "evidence" that it had when it filed its Third Amended Answer and Counterclaims in May 2009.**  Indeed, in Mattel's Motion for Leave to File its <u>Third</u> Amended Answer and Counterclaims, which it filed <u>more than a year ago</u>, Mattel asserted that the Omni-Wachovia transaction is "an extension of the fraudulent scheme at

---

[1]  Omni files this Opposition pursuant to the Court's invitation at the March 11, 2010 status conference.  In granting Mattel's request for an extension of time to file its motion, the Court stated without objection from Mattel:  "That way there can be intervention by Omni if you join them . . . . If you are joining Omni, then I want Omni to be able to be heard." (March 11, 2010 Transcript, p. 36:1-15.)

1   the heart of Mattel's existing RICO claims." Yet, despite these inflammatory

2   allegations, Mattel did not name Omni as a defendant. Therefore, Mattel's motion

3   to now add Omni as a defendant to an alleged decade-old "civil RICO conspiracy"

4   premised on these baseless, previously known allegations must be denied under

5   well-established precedent because (1) it was filed with undue delay, (2) it is futile,

6   and (3) it would cause substantial prejudice to Omni.

7        In October 2006, nearly two years before the Phase 1 trial in this litigation

8   began, MGA entered into a Credit Agreement with Wachovia, pursuant to which

9   Wachovia provided a senior revolving credit facility to MGA (the "Senior Bank

10  Credit Facility"). In July 2008, in the midst of the global credit crisis, Wachovia

11  declared the Senior Bank Credit Facility to be in default, accelerated the maturity

12  of the outstanding debt obligations owed to Wachovia by MGA, demanded full and

13  immediate payment of the entire unpaid $313 million balance, and instructed

14  MGA's vendors to pay all sums due to it rather than MGA. Faced with near

15  certain extinction -- since all of its available cash had been swept away and all

16  future revenue (including sales having nothing whatsoever to do with Bratz) would

17  go directly to Wachovia -- MGA hired a financial consultant (Mesirow Financial)

18  to help it consider its alternatives.

19       MGA approached Neil Kadisha, the Managing Partner of a diversified

20  investment firm with substantial experience evaluating and investing in distressed

21  debt and distressed companies (who knew both MGA's CEO Isaac Larian and

22  Mattel's CEO Robert Eckert from their work and participation in the community).

23  Mr. Kadisha considered the proposal, evaluated the risk/reward profile, analyzed

24  the available information, and presented an offer to acquire the Senior Bank Credit

25  Facility, including the outstanding debt obligations, from Wachovia for

26  approximately $110 million (representing 35% of the $313 million principal

27

28

1  amount of the debt obligations outstanding as of the acceleration date).[2]  The

2  Omni-Wachovia transaction was heavily negotiated by the parties, albeit in a

3  compressed time frame given the exigent circumstances, with legal representation

4  from Davis Polk & Wardwell on behalf of Wachovia and Bingham McCutchen on

5  behalf of Omni.  An agreement was reached and the transaction was entered into

6  on September 3, 2008.

7       Six years after this litigation began and approximately one and a half years

8  after the Omni-Wachovia transaction, Mattel seeks to amend its counterclaims for

9  a fourth time to include, among other things, RICO claims against non-party Omni.

10  Courts routinely reject such amendments when they are based on undue delay,

11  when they would be futile or when they would cause prejudice -- and particularly

12  amendments seeking to add new parties.  All are present here.  In fact, no court has

13  ever permitted a party to file an amended complaint against a new defendant (let

14  alone a fourth amended complaint involving an alleged RICO conspiracy that

15  began a decade before the new defendant existed) when an action has been pending

16  for six years and where the party seeking the amendment knew all of the facts

17  before it filed (and indeed alleged them in) its prior amended complaint filed a year

18  earlier.

19       • First, Mattel has unduly delayed the filing of its amendment to add

20  Omni as a party.  In fact, all of the material allegations relating to Omni in Mattel's

21  proposed Fourth Amended Answer and Counterclaims were known by Mattel

22  when it filed and were alleged in its Third Amended Answer and Counterclaims,

23  yet Mattel did not name Omni as a defendant.  (**A chart detailing this point is**

24

25  [2] As explained below, the acquisition was funded with a $50 million equity
26  contribution from Omni, and $60 million debt funding from a Larian-affiliated
    entity, IGWT 826 Investments, LLC.  Neil Kadisha explained at his deposition that
27  in his view requiring Larian to have "some skin at risk" would incentivize MGA to
    repay the debt.

28

1    attached hereto as Appendix A.)

2        On April 8, 2009, a year ago, Mattel filed its motion for leave to file its

3    Third Amended Answer and Counterclaims to add claims regarding the Omni-

4    Wachovia transaction but without adding Omni as a defendant. As it does now,

5    Mattel asserted then that the Omni-Wachovia transaction is "an extension of the

6    fraudulent scheme at the heart of Mattel's existing RICO claims." It asserted then,

7    as it does now, that it had uncovered evidence that MGA's CEO, Isaac Larian,

8    through IGWT 826 Investments, provided funding to Omni to acquire the Senior

9    Bank Credit Facility from Wachovia and sought "to add new allegations regarding

10    the Omni Parties and IGWT transactions in support of existing unfair competition

11    and RICO claims, including allegations regarding additional predicate acts of

12    money laundering, concealing assets and engaging in monetary transactions

13    involving property derived from unlawful activity." The Court granted Mattel's

14    motion and Mattel filed its Third Amended Answer and Counterclaims on May 22,

15    2009, which specifically identified Omni and its members as civil RICO co-

16    conspirators and included at least 32 paragraphs of alleged RICO violations and

17    purported fraudulent transfers arising out of the Omni transactions, but did not

18    name Omni as a party. (See Third Amended Answer and Counterclaims, ¶¶ 18, 20,

19    105-121, 136, 138-141, 145, 149-155.)

20        Instead, Mattel spent the past year propounding unilateral, serial subpoenas

21    on non-party Omni, its members and its attorneys. Now, Mattel seeks to file its

22    Fourth Amended Answer and Counterclaims to add the same "civil RICO

23    conspiracy" and "fraudulent transfer" claims against Omni based on the same

24    alleged conduct "discovered" by Mattel before it filed (and alleged in) its Third

25    Amended Answer and Counterclaims. Courts routinely deny motions to amend

26    under such circumstances.

27        •   Second, the proposed amendment to add Omni is futile because no set

28    of facts can be proved under the amendment that would constitute a valid claim.

1    Mattel simply cannot show that Omni's acquisition of the preexisting Senior Bank

2    Credit Facility from Wachovia was either wrongful or caused any injury to Mattel.

3    In fact, when <u>Mattel's Chief Executive Officer</u>, Robert Eckert, was recently asked

4    at his deposition on December 18, 2009 (well after he authorized the filing of the

5    Third Amended Answer and Counterclaims and proposed Fourth Amended

6    Answer and Counterclaims against Omni) how Mattel was injured by this

7    transaction, he admitted having no clue.

8      *Q:    If Omni acquired preexisting debt of MGA Entertainment from*

9      *Wachovia Bank and the money in the transaction flowed from Omni to*

10     *Wachovia Bank, I'd like for you to explain to the jury how exactly that*

11     *harmed Mattel.*

12     *A:    I don't know enough about Omni who -- who invested in Omni, what*

13     *it did, how it did it to develop an opinion on what was wrong about that*

14     *transaction ..."* (Eckert Depo. Transcript, Volume IV, 689:25-690:10.)

15     Mr. Eckert's testimony is not surprising.  He joins the company of everyone

16    involved in this case, *including Mattel's attorneys*, who remain unable to explain

17    how the Omni-Wachovia transaction injured Mattel given that Omni simply

18    stepped into the shoes of Wachovia as the senior secured creditor.  Mattel's

19    position was not impacted at all, either positively or negatively, by the transaction.

20    Mattel's inflammatory rhetoric and 14 plus months of serial discovery abuse

21    changed nothing about the essential legal nature of that transaction -- it is just

22    angry that MGA was not driven out of business.  This Court <u>should not</u> permit

23    Mattel to throw another wrench in the current proceedings, drag Omni into a six-

24    year-old case based on an 11-year-old "civil RICO conspiracy," involving an

25    unprecedented court docket and discovery, and delay this case for another year or

26    more.

27        • <u>Third</u>, permitting the amendment at this stage of the proceedings

28    would substantially prejudice Omni.  Mattel claims that Omni is part of an alleged

1   "civil RICO conspiracy" that began "from approximately **1999** through the filing

2   of the Fourth Amended Answer and Counterclaims . . . ." (Proposed Fourth

3   Amended Answer and Counterclaims, ¶ 129) (emphasis added). This alleged

4   RICO conspiracy therefore began approximately <u>a decade before Omni existed</u> or

5   acquired the Senior Bank Credit Facility from Wachovia (which further

6   demonstrates the speciousness of these claims).

7        The parties have been litigating aspects of this alleged conspiracy <u>for the</u>

8   <u>past six years</u> and have exchanged **millions of pages of documents**; have taken

9   approximately **195 depositions (spanning 323 days)**; have propounded

10   approximately **81 sets of written discovery** (containing thousands of requests and

11   responses); and have served **dozens of third party subpoenas**. Omni, as a non-

12   party, has provided Mattel with tens of thousands of documents and multiple

13   depositions for more than a year, but has been afforded no opportunity to conduct

14   discovery of its own. Inserting Omni at this stage of the action would be

15   irreparably prejudicial, entirely aside from the fact that there is no factual or legal

16   support for the allegations. Omni cannot possibly "catch up" on the eve of trial

17   (which the Court indicated will occur with "breathtaking" speed) regarding

18   allegations that date back more than 10 years and have been the subject of years of

19   discovery.[3]

20        In this case, permitting Mattel to add baseless, previously known, allegations

21   against a new defendant at this stage of the proceedings would shift the nature of

22   the case and create a fundamentally unfair and unlevel playing field. Thus,

23   Mattel's Motion for Leave should be denied.

24

25

26   _____

[3] At a recent status conference, the Court warned the parties that they are "going to
27   be in trial at a breath-taking speed" that could be as early as April 20, 2010.
(March 9, 2010 Transcript, p. 10:22-11:6.)

28

## II.   STATEMENT OF FACTS

### A.   Wachovia Entered Into A Credit Agreement With MGA In 2006

On or about October 27, 2006, MGA and Wachovia entered into a Credit Agreement with Wachovia, pursuant to which Wachovia provided a senior revolving credit facility to MGA in an aggregate available amount for borrowing up to $400 million (the "Senior Bank Credit Facility"). (Villar Decl., Ex. A.) The Senior Bank Credit Facility was secured by a senior perfected security interest in all of MGA's inventory and accounts receivable including, *inter alia*, Moxi, Little Tikes and Bratz products. (*Id.*) As of December 2007, the principal balance of the Senior Bank Credit Facility was $313 million. (*Id.*) There is no dispute about the legitimacy of that transaction or the Senior Bank Credit Facility. As explained below, Omni did nothing more than step into the shoes of Wachovia.

### B.   The Credit Crisis Had A Profound Impact On Wachovia, Which Led It To Declare MGA In Default In July 2008

In 2008, the subprime mortgage crisis inflicted severe damage on banks and other financial institutions resulting in a large decline in the capital and a tightening of credit around the world. The five largest U.S. investment banks either went bankrupt (Lehman Brothers), were taken over by other companies (Bear Stearns and Merrill Lynch), or were bailed-out by the U.S. government (Goldman Sachs and Morgan Stanley). Not surprisingly, Wachovia was also significantly affected by the credit crisis. On April 14, 2008, Wachovia reported a first-quarter loss of approximately $400 million, accompanied by a 41% dividend cut, plans to eliminate 500 jobs, and a move to sell $7 billion worth of stock. (Villar Decl., Ex. B.)

As the credit markets began to tighten, Wachovia declared MGA in default of the Senior Bank Credit Facility in July 2008 and accelerated the maturity of

1    MGA's outstanding debt obligations owed to Wachovia, demanding full and

2    immediate payment of the entire unpaid $313 million balance.  (Villar Decl., Ex.

3    C.)

4            The acceleration of the MGA debt was unexpected and meant the demise of

5    MGA unless another entity came in and purchased the debt from Wachovia and

6    gave MGA breathing room to get back on its feet.  Unfortunately, Wachovia was

7    not in a position to provide the required breathing room.  Due to the faltering

8    economy and the well-known tightening of the credit markets, Wachovia continued

9    to experience problems of its own.  As a result, Wachovia sought to increase its

10   liquidity by, among other things, selling off or accelerating the debt of delinquent

11   loans, including the MGA debt.  Wachovia was faced with one of two scenarios:

12   (1) Wachovia could foreclose, force bankruptcy, and liquidate assets; or (2)

13   Wachovia could achieve immediate liquidity, and eliminate costs and uncertainty

14   by selling the debt to another party.

15          **C.    Omni Places An Offer And Purchases The MGA Debt**

16                  **From Wachovia**

17          Given the looming demise of MGA resulting from Wachovia's decision to

18   accelerate the MGA debt, MGA frantically sought potential purchasers of the

19   MGA debt and hired Mesirow Financial Consulting LLC to shop the transaction to

20   various lenders, including Neil Kadisha.  Neil Kadisha is the Managing Partner of

21   a diversified investment firm with substantial experience evaluating and investing

22   in distressed debt and distressed companies.  Notably, Mr. Kadisha was not the

23   only, or even the first, potential purchaser that MGA and Wachovia approached to

24   purchase the MGA Debt.[4]

25   _____

26   [4] Mesirow Financial Consulting apparently shopped the transaction to prospective
     lenders including, without limitation, Bank of Ireland, Cerberus Capital
27   Management, L.P., and Silver Point Capital, L.P.

28

A/73333321.12                                    8

1   On July 29, 2008, Mr. Kadisha, on behalf of Omninet Capital, LLC, made an

2   offer to purchase the Senior Bank Credit Facility, including the outstanding debt

3   obligations, from Wachovia for approximately $110 million (representing 35% of

4   the $313 million principal amount of the debt obligations outstanding as of the

5   acceleration date).

6   The terms of the agreement between Omni and Wachovia were heavily

7   negotiated between Omni, Wachovia, and their respective legal counsel at

8   Bingham McCutchen and Davis Polk, and the transaction was entered into on

9   September 3, 2008. (Villar Decl., Ex. E.)  Omni and Wachovia entered into a

10  written Master Assignment and Exchange Agreement ("Agreement") whereby

11  Omni acquired all right, title and interest in the debt obligations under the Senior

12  Bank Credit Facility, other than $21,944,769 exchanged for the unsecured

13  promissory notes issued by MGA to Wachovia Bank.

14  To complete the transaction, Mr. Kadisha created a special purpose entity,

15  Omni 808 Investors, LLC, a California limited liability company.  The formation

16  of a special purpose entity is very common for these types of transactions.  Omni's

17  members entered into a Limited Liability Company Agreement.  (Villar Decl., Ex.

18  F.)  As a result of the Agreement, Omni stepped into and presently stands, as

19  successor-in-interest, in the position of Wachovia under the Senior Bank Credit

20  Facility and has a senior perfected security interest in MGA's assets, including,

21  *inter alia,* MGA's inventory and accounts receivable.  Omni's secured interest is

22  superior to that of any potential unsecured creditors, including Mattel.[5]

23

24  [5] Ironically, Mattel has "claimed" that Omni acquired the Senior Bank Credit
    Facility in an effort to somehow circumvent its rights to the Bratz intellectual
25  property that Mattel obtained pursuant to the Court's December 4, 2008 injunction
    order.  That, of course, made absolutely no sense given that Omni merely stepped
26  into the shoes of Wachovia, acquired the rights to a preexisting credit facility
    issued in October 2006, which did not include Bratz IP, and given that the Omni-
27  Wachovia transaction closed three months before the Court's injunction order.

28

**D.   Omni's Members And The Sources And Uses Of**
**Omni's Funds Are Well Known Facts**

The identities of Omni's members and the structure of the funding for the transaction is well-known to everyone. The Omni members invested $50 million with the hope and expectation of making a profit on their investment.[6] This amount includes investments by Neil Kadisha ($15 million), Benjamin Nazarian ($10 million), Leon Neman ($10 million), David Nazarian ($5 million), and Joseph Moinian ($10 million).[7] In addition, given Omni's desire for leverage, the impossibly tight credit market for financing, the compressed time schedule, and the belief that it should maximize MGA's incentive and ability to repay the debt, Omni asked Mr. Larian to finance the remaining amount needed to acquire the debt, which he agreed to do through a business entity known as IGWT 826 Investment, LLC ("IGWT").

Mr. Kadisha explained his decision to require Mr. Larian to loan Omni money to purchase the MGA debt:

> I discussed this with Wachovia very early on because they also didn't
> want to deal with Mr. Larian on this transaction. I told them that I will
> not be buying this unless Mr. Larian had something at risk because I
> don't have enough time to do as much as I want due diligence. I can
> do a certain level of due diligence, but I have to rely on his integrity
> and also the fact that he has something more to lose if things go down
> with MGA. So in a way, as a lender to Omni 808, I ensured that if

---

[6] "Sources of Uses of Funds" (Bates No. OMNI 0001692) produced to Mattel on April 28, 2009.

[7] As Omni has previously disclosed, Mr. Kadisha purchased Mr. Gozini's $5,000,000 interest in Omni, and pursuant to the First Amendment to Omni's Limited Liability Agreement, Moinian Development Group, LLC transferred its $10,000,000 interest to another Moinian entity, Omni TMG, LLC.

1  MGA was going to go down and numbers were not correct that we

2  were getting, Mr. Larian had another $60 million as a lender to Omni

3  808 at risk.

4 (Villar Decl., Ex. G [Kadisha Depo. 113:11-23].) Mr. Kadisha further explained:

5  I said, "To be honest, there are so many moving targets here, including

6  the lawsuit, including the Bratz, including what's happening in the

7  company, that nobody knows about it more than Mr. Larian. And for

8  me to take your place and not have Mr. Larian have any exposure

9  would be risky. I will reduce my risk if Mr. Larian is, in a way,

10  putting some money as a loan here and has some skin at risk. This

11  way, I feel more comfortable that at least he believes in the future of

12  the company . . . ."

13 (Villar Decl., Ex. G [Kadisha Depo. 171:5-16].)

14  Mr. Kadisha also explained how he arrived at the amount of the loan from

15 Mr. Larian and his personal investment:

16  Out of that 100 and -- approximately $100 million, I knew that I do not

17  want to put more than $50 million. Whether I invested all of it myself

18  or my friends invested with me. I did not want to be investing more

19  than $50 million. And I had to look to $50 or $60 million loan, and if

20  Mr. Larian was not willing to commit to that, then maybe I would not

21  have been interested. So this was more or less the condition. I never

22  thought of him as being my partner in buying this. He was supposed

23  to provide the leverage so that our $50 million has a potential of higher

24  income because of the risk involved.

25 (Villar Decl., Ex. G [Kadisha Depo. 166:18 - 167:5].) In summary, there is

26 nothing suspicious about the structure and funding of the Wachovia transaction,

27 which made perfect business sense given the inability to conduct comprehensive

28 due diligence in the short time frame.

1     E.    **Omni's Purchase Of The MGA Debt From Wachovia**

2             **Benefitted MGA, Wachovia And Mattel**

3        Mattel cannot articulate any harm resulting from the Omni-Wachovia

4 transaction because Omni merely stepped into the shoes of Wachovia and acquired

5 a preexisting Senior Bank Credit Facility.  Indeed, the truth is that Omni's

6 purchase of the Wachovia debt benefited everyone, including MGA, Wachovia and

7 Mattel.  MGA benefited from the transaction because Wachovia returned the $26

8 million in cash to MGA, Wachovia halted its remedies including foreclosure

9 proceedings and MGA was given a "grace period" before commencing interest

10 payments and, consequently, had a chance to get back on its feet.  Furthermore,

11 Wachovia benefited because it did not have the time or the capital to finish the

12 foreclosure on the debt and needed to position itself as a viable acquisition target,

13 which it successfully did, resulting in its purchase by Wells Fargo in October

14 2008.[8]

15        Finally, the Omni-Wachovia transaction benefitted Mattel (assuming that

16 Mattel wants to collect on any potential final judgment it may obtain from its

17 lawsuit against MGA).  If Omni had not stepped in and acquired the debt,

18 Wachovia would have enforced all of its rights as the senior secured lender against

19 MGA's loan default and forced MGA into liquidation and/or bankruptcy.  There is

20 no dispute that Wachovia, as a senior secured creditor, would have had priority

21 over an unsecured judgment creditor, leaving little if any assets remaining to

22

23   [8] On September 26, 2008, Wachovia's stock price plunged 27 percent due to the

24 U.S. government's seizure of Washington Mutual the previous night.  (Villar Decl., Ex. H.)  On September 29, 2008, the FDIC announced that Citigroup would

25 acquire Wachovia's banking operations.  On October 3, 2008, Wells Fargo announced that it would acquire Wachovia for $15 billion ($7 per share), nullifying

26 the Citigroup deal.  On October 22, 2008, Wachovia reported a staggering $24 billion third-quarter loss, then a record quarterly loss for a banking company in the

27 global credit crisis.  (Villar Decl., Ex. I.)

28

1    satisfy a judgment.

2         In sum, the Omni-Wachovia transaction was entirely driven by Wachovia's

3    decision to accelerate the MGA debt and sweep MGA's accounts.  Had Omni not

4    stepped in to consummate the Omni-Wachovia transaction, MGA would likely

5    have been dismantled and liquated in 2008.  Thus, as a potential creditor of MGA,

6    Mattel benefitted from the Omni-Wachovia transaction.

7    **III.   THE COURT SHOULD DENY MATTEL'S MOTION TO ADD**

8    **OMNI AS A NEW PARTY BECAUSE THE PROPOSED**

9    **AMENDMENT IS FUNDEMANTALLY UNFAIR, DILATORY,**

10   **FUTILE AND PREJUDICIAL**

11        More than six years after this litigation commenced, more than a year and a

12   half after Omni purchased the Wachovia debt, and more than a year since Mattel

13   purportedly obtained "evidence" of Omni's involvement in an alleged "civil RICO

14   conspiracy," Mattel now seeks leave to amend its Counterclaims for a **fourth** time

15   and add Omni as a new party to an alleged RICO conspiracy, which began a

16   decade before Omni existed, based on allegations that Mattel not only knew about

17   before, but also alleged in its Third Amended Counterclaims filed a year earlier

18   (yet chose not to add Omni).  No court, in the Ninth Circuit or elsewhere, has ever

19   granted leave to amend a complaint under remotely similar circumstances.

20        Under longstanding Ninth Circuit precedent, district courts have "broad"

21   discretion to "deny leave to amend . . . where (as here) [a] plaintiff has previously

22   amended [its] complaint.'"  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90

23   F.3d 351,  355 (9th Cir. 1996) (emphasis added) (quoting *Ascon Properties, Inc. v.*

24   *Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *see also Mir v. Fosburg*, 646

25   F.2d 342, 347 (9th Cir. 1980).  Furthermore, courts are far less likely to exercise

26   their discretion where leave is sought to add **new parties**.  *See Union Pac. R.R. Co.*

27   *v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) ("Amendments seeking to

28   add claims are to be granted more freely than amendments adding parties").

1    Consistent with the reluctance to permit parties to amend their pleadings to

2   add new parties, courts routinely exercise their discretion to deny motions for leave

3   in such circumstances. *See, e.g., Gabrielson v. Montgomery Ward & Co.*, 785 F.2d

4   762, 765-66 (9th Cir. 1986) (affirming denial of motion for leave to amend

5   complaint to add new defendant because amendment would be futile); *Thomas-*

6   *Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir. 1988); *Williams v. County of*

7   *Ventura*, No. CV07 7665 AHM, 2009 U.S. Dist. Lexis 110167, *2-3 (C.D. Cal.

8   Aug. 7, 2009) (denying motion for leave to amend complaint to add

9   new defendants because of undue delay and futility).[9]  Similarly, courts are also

10   reluctant to grant leave to add new claims, particularly where, as here, there is a

11   substantial risk of prejudice to the opposing parties. *See Morongo Band of Mission*

12   *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Solomon v. North American*

13   *Life Ins.*, 151 F.3d 1132, 1138-39 (9th Cir. 1998).

14    In determining whether to grant leave to amend, the Ninth Circuit Court of

15   Appeals has held that a party's undue delay, bad faith or dilatory motive, futility of

16   amendment, prejudice to opposing party, and/or repeated failure to cure

17   deficiencies by previous amendments alone, or in combination, may justify denial.

18   *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

19   As set forth below, each of these factors weighs heavily in favor of denying

20   Mattel's Motion for Leave.

21

22

23

24   [9] *See also Aughe v. Shalala*, 885 F. Supp. 1428, 1433-34 (W.D. Wash. 1995) (denying motion for leave to amend complaint to add new plaintiff because of futility); *McCarty Farms, Inc. v. Burlington N., Inc.*, 787 F. Supp. 937, 944-47 (D.

25   Mont. 1992) (denying motion for leave to amend complaint because of futility); *Butler v. Robar Enter.*, 208 F.R.D. 621, 623 (C.D. Cal. 2002) (denying motion for

26   leave to amend complaint to substitute new defendant because of futility); *Walker v. Benter*, 41 F. Supp. 2d 1067, 1070-72 (N.D. Cal. 1999) (denying motion for

27   leave to amend complaint to add new defendant because request was untimely and prejudicial).

28

A.   **Mattel's Undue Delay In Filing This Motion Requires Denial**

In Mattel's Motion for Leave to File its <u>Third</u> Amended Answer and Counterclaims, which it filed <u>more than a year ago</u>, Mattel asserted that the Omni-Wachovia transaction is "an extension of the fraudulent scheme at the heart of Mattel's existing RICO claims." (Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims, p. 22.) At that time, the Court granted Mattel leave to "add new allegations regarding the Omni Parties and IGWT transactions in support of existing unfair competition and RICO claims, including allegations regarding additional predicate acts of money laundering, concealing assets and engaging in monetary transactions involving property derived from unlawful activity." (*Id.*, pp. 7, 12.) Mattel's Third Amended Answer and Counterclaims specifically identified Omni and its members as participants in an alleged civil RICO conspiracy and included at least 32 paragraphs of *alleged* civil RICO violations and purported fraudulent transfers arising out of the Omni-Wachovia transaction. (*See* Third Amended Answer and Counterclaims, ¶¶ 18, 20, 105-121, 136, 138-141, 145, 149-155.) Despite these extensive and inflammatory allegations, however, Mattel did not add Omni as a civil RICO defendant or assert any other claim against Omni or its members. Mattel's present motion for leave to <u>now</u> add Omni as a defendant is based on the exact <u>same</u> facts that existed last year. (*See* Appendix A.)[10]

Leave to amend has been denied where the moving party either knew or should have known when drafting the original pleading the facts on which the amendment is based. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d

---

[10] Incredibly, despite specifically identifying Omni and its members in 32 separate paragraphs of the Third Amended Counterclaims, Mattel falsely alleges in its Fourth Amended Counterclaims that it is adding Omni as a "DOE" defendant (DOE 4) and that the "true name and capacity" of Omni was "unknown to Mattel" when it filed its Third Amended Counterclaims. (Mattel's Fourth Amended Answer and Counterclaims, ¶ 17.)

1   946, 953 (9th Cir. 2006) (affirming denial of leave to amend and stating "in

2   evaluating undue delay, we also inquire 'whether the moving party knew or should

3   have known the facts and theories raised by the amendment in the original

4   pleading'"). Furthermore, the Ninth Circuit has regularly affirmed denial of leave

5   to add new parties where the facts relating to the new parties were known when

6   previous versions of the complaint were filed. *See, e.g., Vincent v. Trend W.*

7   *Technical Corp.*, 828 F.2d 563, 570-71 (9th Cir. 1987) (affirming denial of leave to

8   amend where moving party presented no new facts, only new theories and

9   provided no satisfactory explanation for failure to develop contentions originally);

10  *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982) (same); *see also*

11  *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979)

12  (affirming denial of leave to amend where plaintiff knew all facts relevant to

13  proposed amendment when she filed her original complaint), *cert. denied*, 446 U.S.

14  939 (1980); *Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 72

15  (1st Cir. 2001) ("What the plaintiff knew or should have known and what he did or

16  should have done are relevant to the question of whether justice requires leave to

17  amend under this discretionary provision.").

18      Here, justice requires denial of Mattel's motion for leave to add Omni as a

19  defendant to the case because Mattel knew more than a year ago the purported

20  factual basis for its claims, but chose not to add Omni at that time. Mattel's

21  present motion is based on the same set of facts and purported "evidence" that it

22  had when it filed its Third Amended Answer and Counterclaim. (*See* Appendix

23  A.) Furthermore, even if Mattel asserted new theories based on the previously

24  known facts (which they do not), such new theories do not justify amendment. *See*

25  *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th

26  Cir. 1996) ("[L]ate amendments to assert new theories are not reviewed favorably

27  when the facts and the theory have been known to the party seeking amendment

28  since the inception of the cause of action.").

1    Moreover, Mattel's motion for leave offers no explanation as to why it chose

2    not to add Omni as a party in its Third Amended Answer and Counterclaims. *See*

3    *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (affirming denial

4    of leave to amend because *nine month delay* from time of obtaining facts until

5    filing amended complaint was unreasonable) (emphasis added); *W. Shoshone Nat'l*

6    *Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (affirming denial of motion

7    for leave to amend where motion was filed two and a half years after litigation

8    began and there was no reason for the delay), *cert. denied*, 951 U.S. 822 (1992);

9    *see also AmerisourceBergen v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir.

10   2006); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (denying leave to

11   amend because moving party knew or should have known when drafting original

12   pleading, facts on which amendment was based, but failed to include them in

13   original pleading).

14       Mattel's unjustified and unexplained failure to add Omni last year, when

15   the facts on which it now moves to add Omni were known, warrants denial of its

16   motion for leave.

17   **B.**   **The Proposed Amendment To Add Omni Would Be Futile**

18          **Because Mattel's Proposed Claims Are Factually And**

19          **Legally Baseless**

20       Mattel's motion should also be denied because its alleged claims against

21   Omni are futile. "Futility of amendment can, by itself, justify the denial of a

22   motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995);

23   *see also Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991) (holding that leave to

24   amend may be denied if proposed amendment is futile or would be subject to

25   dismissal); *see also Lafrenier v. Congress of U. S.*, 308 Fed. Appx. 202, 2009 WL

26   118135, at *1 (9th Cir. Jan. 14, 2009) (affirming district court's denial of leave to

27   amend where amendment would be futile due to lack of standing).

28       A proposed amendment is "futile" where it cannot withstand a motion to

1   dismiss. *See Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)

2   (noting that leave should be denied where "proposed new claim cannot withstand a

3   12(b)(6) motion to dismiss for failure to state a claim"); *see also Miller v. Rykoff-*

4   *Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (holding proposed amendment is

5   "futile" if no set of facts can be proved under amendment that would constitute

6   valid claim or defense). Thus, in assessing "futility," federal courts apply the same

7   standard that governs motions to dismiss under Federal Rule of Civil Procedure

8   12(b)(6). *See Adorno v. Crowley Towing & Transp. Co.*, 443 F3d 122, 126 (1st

9   Cir. 2006).

10         Mattel cannot satisfy this standard because, among other reasons, it cannot

11   show any cognizable injury and has no standing. Courts routinely deny motions to

12   amend on the ground of futility where a plaintiff cannot show any cognizable

13   injury. *See, e.g., McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir.

14   2004) (holding that amendment would be futile because no cognizable damages);

15   *Native Am. Arts, Inc. v. Specialty Merch. Corp.*, 451 F. Supp. 2d 1080, 1083-

16   84 (C.D. Cal. 2006) (stating that plaintiff's failure to establish any injury rendered

17   proposed amended complaint "futile, and therefore, the Court does not grant leave

18   to amend the Complaint." ); *see also Hartsfield v. Vidor*, 199 F.3d 305, 307 (6th

19   Cir. 1999) ("motion to supplement [complaint] was denied as futile because

20   plaintiff failed to allege any actual injury"); *Nat'l Wrestling Coaches Ass'n v. Dep't*

21   *of Educ.*, 366 F.3d 930, 939-45 (C.A.D.C. 2004) (affirming denial of motion for

22   leave to amend because plaintiff failed to establish existence of redressable injury).

23         Here, despite more than six years of discovery from MGA and its affiliates,

24   and more than one year of unfettered discovery from Omni, its members, attorneys

25   and others, Mattel's motion for leave and proposed Fourth Amended Answer and

26   Counterclaims lack sufficient factual bases to state any claim against Omni, let

27   alone a claim for civil RICO. Specifically, Mattel has not established any factual

28   basis to establish: (i) it has standing to sue Omni (its competitor's lender); and/or

1    (ii) Omni caused it to suffer some cognizable damage.

2         In Mattel's Fourth Amended Answer and Counterclaims, as in its Third

3    Amended Answer and Counterclaims, Mattel "complains" about (1) the personal

4    relationships between various Omni members and Isaac Larian; (2) IGWT's loan

5    to Omni as part of the funding to acquire the Senior Bank Credit Facility from

6    Wachovia; (3) Larian's purported attempt to "buy back" equity interests in Omni;

7    and (4) Omni's failure to disclose aspects of the Omni-Wachovia transaction to

8    Mattel (including sources of funding).  Each of these complaints are factually and

9    legally baseless and, perhaps more importantly, are utterly irrelevant given that,

10   even if true, Mattel has failed to establish how any are wrongful or injured Mattel.

11   Mattel, MGA's competitor, simply has no standing to complain about Omni's

12   acquisition of preexisting MGA debt obligations from Wachovia.

13        Among other things, Mattel has offered no factual or legal bases to explain

14   how any of the following issues violate the law or harmed Mattel in any way:

15        (1) Larian's relationship to Omni members:  Mattel cannot articulate how

16   there is anything wrong with Isaac Larian having a social or familial relationship

17   with members of Omni.  Nor can Mattel explain how these relationships caused

18   Mattel any harm.

19        (2) IGWT's $60 million loan to fund Omni:  Mattel cannot articulate how

20   there is anything improper with IGWT loaning money to Omni to fund the Omni-

21   Wachovia transaction, or why Mattel believes it has standing to raise the issue.

22   Moreover, Mattel has yet to explain how IGWT's funding of the Omni-Wachovia

23   transaction caused any harm to Mattel.

24        (3) Larian's alleged attempt to "buy back" equity interests in Omni:  While

25   Mattel claims that Larian wanted to buy an equity interest in Omni, the undisputed

26   evidence shows that it never happened.  Nevertheless, even hypothetically, if MGA

27   or Larian had bought an equity interest in Omni, there would have been nothing

28   improper.  In fact, notably, Mattel alleges in its Fourth Amended Answer and

1  Counterclaims that "**MGA itself did not attempt to buy the debt from**

2  **Wachovia, even though doing so would have been in its and its creditor's best**

3  **interests.**" (Mattel's Fourth Amended Answer and Counterclaims, ¶ 99.)

4  Moreover, Mattel has failed to articulate how Mattel suffered injury as a result of

5  Larian's alleged attempt to buy an equity interest in Omni.

6       (4) <u>Omni's alleged failure to disclose the Wachovia transaction to Mattel</u>:

7  Mattel's allegations that Omni "concealed" the Wachovia transaction from Mattel

8  are specious.  Omni had no duty to disclose its business transaction with Wachovia

9  to Mattel, but regardless, Mattel's CEO, Robert Eckert, <u>admitted</u> that Mr. Kadisha

10  called him to tell him that he intended to purchase MGA's debt from Wachovia.

11  (*See* Eckert Depo. Transcript, Volume IV, 684:19-685:22, Villar Decl., Ex. D.)

12       As Mr. Eckert testified:

13  *Q.       Would you say that Mr. Kadisha's call to you reporting in part*

14  *         that he had acquired the debt of MGA was a concealment of the*

15  *         transaction?*

16  *A.       No, not if he told me he had acquired the debt.*

17  (Eckert Depo, Transcript,  Vol. IV, 691:17-22, Villar Decl., Ex. D.)   Omni also

18  publicly disclosed the transaction through UCC-1 filings.  Therefore, Mattel's

19  allegations are not only demonstrably false, but Mattel cannot explain why Omni

20  had any duty to disclose the transaction to Mattel or how Mattel was harmed by

21  any alleged "concealment."

22       Significantly, the testimony of Mattel's Chief Executive Officer illustrates

23  this inability to articulate what injury, if any, Mattel has suffered because one of its

24  competitor's lenders purchased its competitor's debt from another lender, or how,

25  if at all, such a transaction was wrongful:

26  *Q:       If Omni acquired preexisting debt of MGA Entertainment from*

27  *         Wachovia Bank and the money in the transaction flowed from Omni to*

28  *         Wachovia Bank, I'd like for you to explain to the jury how exactly that*

*harmed Mattel.*

> A:   *I don't know enough about Omni who -- who invested in Omni,*
> *what it did, how it did it to develop an opinion on what was wrong*
> *about that transaction . . . ."*

(Eckert Depo. Transcript, Volume IV, 689:25-690:10, Villar Decl., Ex. D.)

Mattel's glaring failure to specify any injury is even more pronounced given that it seeks <u>civil RICO damages</u> against Omni, which "[g]iven the resulting proliferation of civil RICO claims and the potential for frivolous suits in search of treble damages, greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims or defenses prior to bringing such suit or risk sanction for failing to do so." *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989); *see also ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*, No. C05-2010Z, 2007 WL 666593, at *7 (W.D. Wash. Feb. 27, 2007).

Moreover, Mattel's purported fraudulent transfer claim against Omni is also factually and legally meritless, and therefore, futile because Mattel, unlike Omni, is not yet a creditor of MGA -- at most it possesses an unliquidated, unsecured claim against MGA. Mattel is trying to jump to the front of the line, in front of the position Wachovia would have otherwise had if it had retained the Senior Bank Credit Facility. Indeed, even if Mattel obtained a judgment against MGA and became a creditor, Mattel's interest would not be affected at all by Omni's senior secured interest.[11] In short, there is no legal or factual basis for Mattel's proposed

---

[11] Any allegation that Omni's priority over Mattel's hypothetical judgment is inequitable and should be subordinated is also legally (and factually) baseless and, in all events, not ripe. Such a claim would only ripen in the hypothetical situation where (i) Mattel obtained a judgment against MGA (which it has not); (ii) MGA could not satisfy this hypothetical judgment; (iii) MGA sought or was forced into bankruptcy; and (iv) only then can Mattel raise its purported claims that Omni's senior secured interest ought to be equitably subordinated to Mattel's hypothetical judgment. *See* 11 U.S.C. § 510(c); *see also Benjamin v. Diamond (In re Mobile*

(Footnote Continued on Next Page.)

1  fraudulent transfer claim against Omni and, in all events, Mattel cannot establish

2  any legally cognizable injury caused by the Omni-Wachovia transaction.

3       Mattel's inability to establish its standing to complain about Omni's

4  acquisition of MGA's debt, or how it was harmed by Omni's acquisition, is fatal to

5  its claims. *See Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1095-96 (C.D. Cal.

6  2008) (dismissing claim without leave to amend because plaintiff lacked standing

7  so amendment would be futile); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,

8  366 F.3d 930, 939-45 (D.C. Cir. 2004) (affirming denial of leave to amend because

9  appellants' motion failed to allege facts sufficient to demonstrate standing or

10  redressable injury); *Visioneer, Inc. v. KeyScan, Inc.*, 626 F. Supp. 2d 1018, 1027

11  (N.D. Cal. 2009) (denying motion for leave to amend complaint for lack of

12  standing); *Washington v. Phillip/Seco Indus., Inc.*, 116 F.Supp.2d 776, 777 (E.D.

13  Tex. 2000) (denying motion for leave to amend complaint for lack of constitutional

14  standing to assert fraud and negligence claims); *In re Stanwich Fin. Servs. Corp.*,

15  317 B.R. 224, 230 (Bkrtcy. D. Conn. 2004) (denying motion for leave to amend

16  complaint for lack of standing).

17       Therefore, because Mattel has no legal or factual basis for any of its

18  purported claims against Omni, its proposed claims are futile and its motion for

19  leave should be denied.

20  **C.    Omni Would Be Substantially Prejudiced If It Was Added**

21         **At This Late Stage**

22       Given that the parties have been litigating this case for six years and have

23  now almost completed discovery, Omni would be substantially prejudiced if it is

24  (Footnote Continued from Previous Page.)

25  *Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977) (to establish claim for equitable
   subordination, creditor must demonstrate: (1) claimant has engaged in inequitable
26  conduct; (2) conduct caused injury to other creditors or conferred an unfair
   advantage on claimant; and (3) equitable subordination of claim is not inconsistent
27  with provisions of Bankruptcy Code.)

28

1    added as a party to the case at this late stage in the proceedings. An amendment is

2    prejudicial if the defendant is "'unfairly disadvantaged or deprived of the

3    opportunity to present facts or evidence.'" *Bechtel v. Robinson*, 886 F.2d 644, 652

4    (3d Cir. 1989) (citing *Heyl & Patterson, Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d

5    419, 426 (3d Cir. 1981)); *see also Morongo Band of Mission Indians*, 893 F.2d at

6    1079 (denying leave to add RICO claims that would radically shift nature of case

7    at late stages of proceedings); *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D.

8    21, 24 (W.D.N.Y. 1995) ("Prejudice may result where the amendment seeks to add

9    a new claim, derived from a different set of facts of which the original complaint

10   did not provide adequate notice.").

11        Mattel unjustifiably delayed in seeking to add Omni as a civil RICO

12   defendant, despite possessing, at the time it filed its Third Amended Answer and

13   Counterclaims, the same "evidence" it now claims is the basis for its "new" claims.

14   The consequence of Mattel's delay is that it now seeks to add Omni as a party to

15   this six-year-old litigation in the final stages of this case, permitting Omni virtually

16   no opportunity to conduct discovery on Mattel's claims or its defenses. "Prejudice

17   and undue delay are inherent in an amendment asserted after the close of discovery

18   and after dispositive motions have been filed, briefed, and decided." *Campbell v.*

19   *Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (motion "on the eve of the

20   discovery deadline" properly denied because it would have required reopening

21   discovery, thus delaying proceedings).

22        *Morongo* is instructive on this issue. There, the Ninth Circuit Court of

23   Appeals affirmed the trial court's denial of leave to amend where the amendment

24   (adding RICO claims) would *radically shift* the nature of the case and "*would have*

25   *required defendants to have undertaken, at a late hour, an entirely new course of*

26   *defense*"; coupled with the fact that the added claim was "*tenuous*" and plaintiff

27   was guilty of "*inordinate delay*" (amendment sought nearly two years after action

28   commenced). *Morongo Band of Mission Indians*, 893 F.2d at 1079 (emphasis

A/73333321.12                                    23

1 | added).

2 |      Similar to *Morongo*, permitting Mattel to add baseless, previously known

3 | allegations against a new defendant at this late stage of the proceedings, when it

4 | could have and should have done so last May, would radically shift the nature of

5 | the case and create a fundamentally unfair and unlevel playing field. Indeed, in

6 | this now six-year-old litigation, Mattel and MGA have exchanged millions of

7 | pages of documents, taken nearly 200 depositions, propounded approximately 81

8 | sets of written discovery containing thousands of requests and responses, and have

9 | served dozens of third party subpoenas.

10 |      While Omni, as a non-party, has produced tens of thousands of documents to

11 | Mattel and sat for multiple depositions over the last year, it has not had any

12 | opportunity to conduct discovery of its own. Furthermore, despite Mattel's

13 | allegations that this supposed RICO conspiracy, of which it alleges Omni played

14 | an integral role, commenced nearly 11 years ago (1999), Omni has not discovered

15 | a single document, propounded a single interrogatory, or received a single word of

16 | deposition testimony from its accusers. Forcing Omni to play "catch up" on more

17 | than six years of litigation involving allegations dating back more than 10 years all

18 | in the final stages of this litigation would be an unconscionable violation of due

19 | process, result in unprecedented prejudice and run counter to well established

20 | Ninth Circuit precedent. *See Morongo Band of Mission Indians*, 893 F.2d at 1079.

21 |      Accordingly, Mattel's motion should be denied.

22 | **IV.   CONCLUSION**

23 |      Mattel's attempt to drag Omni into this real life saga straight out of Dickens'

24 | Bleak House, by asserting these baseless, previously known claims at this stage of

25 | these interminable legal proceedings should be denied because it is legally and

26 | factually infirm, fundamentally unfair, futile, and unduly prejudicial. Like the case

27 | of *Jarndyce v. Jarndyce* portrayed in Dickens' novel, this action has long since

28 | ceased to be about the vindication of legal rights; it is now an ill-conceived effort

1    to achieve an improper anti-competitive aim through never-ending litigation.

2         For each of the foregoing reasons, non-party Omni respectfully requests that

3    the Court deny Mattel's Motion for Leave to File Fourth Amended Answer and

4    Counterclaims in its entirety and, specifically, deny Mattel's motion to add Omni

5    as a defendant.

6

7

DATED:  April 5, 2010              Bingham McCutchen LLP

8

9

10                                 By:   /s/  Todd E. Gordinier
                                         Todd E. Gordinier
11                                       Attorneys for Non-Party
                                         Omni 808 Investors, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A

APPENDIX A TO OMNI'S OPPOSITION TO MATTEL'S MOTION FOR
LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 17. Counter-defendant Omni 808 Investors, LLC ("Omni 808") is, on information and belief, a limited liability company organized and existing under the laws of the State of California, formed on August 12, 2008, with its principal place of business in Beverly Hills, California. Mattel, previously being ignorant of the nature, extent and scope of involvement and complicity of Omni 808 in the conduct alleged herein and having designated Omni 808 previously in Mattel's Counterclaims as Doe 4, hereby amends its Counterclaims by substituting Omni 808 for the fictitious Doe name Doe 4. | <ul><li>Third Amended Answer and Counterclaims ¶ 18, 108;</li><li>Mattel's *Ex Parte* Application for Appointment of Receiver for MGA or For Alternative Relief at 5 (Dec. 28, 2008);</li><li>Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas at 1, 3 (Feb. 2, 2009);</li><li>Omni's *Ex Parte* Application to Intervene at 5 (Feb. 3, 2009);</li><li>Mattel's Opp. to Omni's *Ex Parte* Application to Intervene at 4 and Zeller Declaration, Ex. 1 to Opposition, (Feb. 5, 2009);</li><li>Sealed Forensic Auditor Report, Ex. 16 (April 23, 2009);</li><li>Omni's Statement of Position at 8 (May 14, 2009)</li></ul> |
| 97. On October 27, 2006, MGA entered into a Credit Agreement with a syndicate of banks led by Wachovia bank (the "Credit Agreement") pursuant to which Wachovia provided a senior revolving credit facility to MGA in an aggregate available amount for borrowing up to $400 million (the "Credit Facility"). Before opening the Credit Facility, MGA had little to no debt. As of December 2007, the principal balance of the Credit Facility was $313 million. The Credit Agreement was secured by certain assets that did not include MGA's purported intellectual | <ul><li>Third Amended Answer and Counterclaims ¶ 113;</li><li>Omni's *Ex Parte* Application to Intervene at 5 (Feb. 3, 2009);</li><li>Sealed Forensic Auditor Report at 4, Ex. 8 (April 23, 2009);</li><li>Omni's Statement of Position at 8 (May 14, 2009)</li></ul> |

## APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| property rights. | |
| 99. In response to Wachovia's measures, and in an effort to maintain control over MGA's ill-gotten gains and Mattel's intellectual property, to frustrate the jury's verdicts and obstruct the Court's orders in Mattel's favor, and to hinder, delay and defraud Mattel and MGA's other creditors, Larian, as he had done before, decided to use a front to buy the Credit Facility from Wachovia at a massive discount "through some friends." MGA itself did not attempt to buy the debt from Wachovia, even though doing so would have been in its and its creditors' best interests. | • Third Amended Answer and Counterclaims ¶ 114;<br>• Omni's Ex Parte Application to Intervene at 5 (Feb. 3, 2009);<br>• Omni's Statement of Position at 8 (May 14, 2009);<br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 4-20 (May 15, 2009);<br>• Mattel's Brief in Support of Appointment of Permanent Receiver at 7-8 (May 15, 2009) |
| 100. To effectuate this part of the scheme, in 2008 Larian approached his friend Neil Kadisha and proposed that he, Kadisha and possibly others jointly acquire MGA's debt to Wachovia. Larian and Kadisha then assembled a group of friends and family members, including Joseph Moinian, Arsalan Gozini and Leon Neman, ostensibly for the purpose of pooling together assets to use to acquire the Credit Facility from Wachovia. | • Third Amended Answer and Counterclaims ¶¶ 105, 107, 114;<br>• Sealed Forensic Auditor Report at 5 (April 23, 2009);<br>• Omni's Statement of Position at 6-8 (May 14, 2009);<br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 7-10 (May 15, 2009) |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
| --- | --- |
| 101. The participants in Omni 808's acquisition of the Credit Facility (the "Omni transaction") all have long business and personal relationships with each other apart from that transaction. For example, Larian and Kadisha, and their respective wives, are social friends. Leon Neman is Larian's brother-in-law and a former director of MGA. Joseph Moinian is a friend of Larian's and Kadisha's "very close friend." | • Third Amended Answer and Counterclaims ¶ 116;<br>• Sealed Forensic Auditor Report at 5, 26-27 (April 23, 2009);<br>• Omni's Statement of Position at 6-8 (May 14, 2009);<br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 7-10 (May 15, 2009) |
| 102. On July 29, 2008, Kadisha made an offer to acquire the Credit Facility from Wachovia for approximately $110 million (representing 35% of the $313 million principal amount of the debt obligations outstanding as of the acceleration date). A July 29, 2008 offer letter to Wachovia states that Larian would have a "non-voting limited interest" in the loan acquisition. | • Third Amended Answer and Counterclaims ¶ 115;<br>• Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 5 (April 8, 2009);<br>• Omni's Document Production (April 28, 2009) Bates No. OMNI0007322-7326;<br>• Omni's Statement of Position at 7 (May 14, 2009); |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 103. On August 12, 2008, Omni 808 was formed for the special purpose of acquiring the Credit Facility from Wachovia. On August 31, 2008, the members of Omni 808 entered into the Limited Liability Company Agreement of Omni 808 Investors LLC. On August 29, 2008, the members of Omni 808, who at all material times have been the agents of Omni 808, summarized the purported sources of Omni 808's funding as follows: <br>• Neil Kadisha: $10 million; <br>• A trust controlled by Arsalan Gozini: $5 million; <br>• Gold Leaf Investments, LP (controlled by Benjamin Nazarian): $10 million; <br>• Vision Capital, LLC (controlled by brothers Leon, Yoel and John Neman): $10 million; <br>• David and Angella Nazarian Family Trust: $5 million; and <br>• Moinian Development Group, LLC (controlled by Joseph Moinian): $10 million. | • Third Amended Answer and Counterclaims ¶ 108; <br>• Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 5 (April 8, 2009); <br>• Omni's *Ex Parte* Application to Intervene at 5 (Feb. 3, 2009); <br>• Consolidated Reply in Support of Mattel's Mot. for Reconsideration of Phase II Discovery Matter Order No. 3 at 5-8, (April 22, 2009); <br>• Omni's Document Production (April 28, 2009) Bates No. OMNI 0001692 ("Sources of Uses of Funds"); <br>• Sealed Forensic Auditor Report at 5-6, 26-27 (April 23, 2009); <br>• Omni's Statement of Position at 7 (May 14, 2009); <br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 7-10 (May 15, 2009) |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 104. Initially, Larian, Omni 808 and their agents and co-conspirators denied, including in representations to the Court, that Larian or MGA contributed any of the funding for the debt acquisition. Specifically, Omni 808's counsel told the Court that it is "true" that the "investors and . . . money" used for the Omni 808 transaction did not come from MGA or Larian and that there are no documents showing that "either Mr. Larian or MGA paid money . . . to purchase this debt." MGA stood by silently as Omni 808 made those false representations to the Court. | <ul><li>Third Amended Answer and Counterclaims ¶ 115;</li><li>Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 7-8, 18 (April 8, 2009);</li><li>Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 2, 7, 9, 13 (March 24, 2009);</li><li>Mattel's *Ex Parte* Application for an Order to Show Cause re Omni 808's failure to Comply with Court Order at 2, 6-12 (April 21, 2009);</li><li>Consolidated Reply in Support of Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 2, 5, 8, 11, 15 (April 22, 2009);</li><li>Mattel's *Ex Parte* Application for Order for Preservation of Documents at 1 (April 3, 2009);</li><li>Mattel's Brief in Support of Appointment of a Permanent Receiver at 6-7 (May 15, 2009)</li></ul> |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 105. It was only later, in the face of incontrovertible evidence, that Counter-defendants admitted that the majority of the funds used for that transaction– at least $60 million, and likely far more – was provided to Omni 808 by Larian and his family members. Larian and his family members made a purported $60 million loan to Omni 808 through Larian's IGWT 826 entity, which Larian formed on August 27, 2008 – the day after the Phase 1 trial ended. IGWT 826 is registered at the home address of Shirin Makabi and Jahangir Eli Makabi. Shirin Makabi is Isaac Larian's sister, Jahangir Eli Makabi is Isaac Larian's brother-in-law, and both are shareholders or beneficial shareholders of MGA through various trusts. IGWT 826's "loan" to Omni 808 for the Wachovia debt acquisition came via wire transfers from Mr. Larian through his family trusts. The funds IGWT 826 ostensibly loaned to Omni were, in whole or in part, generated by Larian's and MGA's wrongful conduct towards Mattel and transferred through Larian-controlled conduits to conceal the true source of the funds. | • Third Amended Answer and Counterclaims ¶¶ 108-114; <br> • Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 7-8, 18 (April 8, 2009); <br> • Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 2, 7, 9, 13 (March 24, 2009); <br> • Mattel's *Ex Parte* Application for an Order to Show Cause re Omni 808's failure to Comply with Court Order at 10-11 (April 21, 2009); <br> • Consolidated Reply in Support of Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 2, 5-8, 11, 15 (April 22, 2009); <br> • Mattel's *Ex Parte* Application for Order for Preservation of Documents at 1 (April 3, 2009); <br> • Mattel's Brief in Support of Appointment of a Permanent Receiver at 6-7 (May 15, 2009) |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 106. On September 3, 2008, Omni 808, MGA and Wachovia entered into a Master Assignment and Exchange Agreement whereby Wachovia assigned approximately $291.5 million of its interest in the Credit Facility to Omni 808 for a payment of approximately $110 million, with Wachovia retaining an approximately $22 million priority loan. Omni 808 provided its funding to Wachovia through use of wire transfers. At the same time, Omni 808 undertook in a promissory note to pay back IGWT 826 the principal sum of $60 million. | <ul><li>Third Amended Answer and Counterclaims ¶¶ 117-118;</li><li>Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 5 (April 8, 2009);</li><li>Omni's *Ex Parte* Application to Intervene at 6 (Feb. 3, 2009);</li><li>Wachovia Bank Document Production March 16, 2009 (Bates No. Wachovia 002752-2764;</li><li>Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 13-14 (March 24, 2009);</li><li>Sealed Forensic Auditor Report at 5 (April 23, 2009);</li><li>Omni's Statement of Position at 8-9 (May 14, 2009)</li></ul> |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS **BEFORE** IT FILED, AND ALLEGED THEM IN, ITS **THIRD** AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 107. Also on September 3, 2008, MGA, Larian and their coconspirators-- recognizing that Wachovia's existing security package under the Credit Agreement that would be assigned to Omni 808 did not include MGA's purported intellectual property rights – entered into a "Side Letter Agreement" in an effort to encumber the Bratz intellectual property rights that, just weeks earlier, the Court and jury had found belonged to Mattel. In the Side Letter Agreement, MGA purported to grant or agree to grant to Omni 808 a "first priority perfected security interest . . . in not only the current Collateral securing Obligations, but also the following additional Collateral: a security interest in substantially all of the personal property assets of each Obligor, including each Obligor's rights in intellectual property." MGA, Larian and their co-conspirators "contemplated and intended" from the onset of the transaction that MGA's debt obligations to Omni 808 "would be secured by an expanded collateral package comprising substantially all of the Obligors' personal[] property assets, as described in the Guarantee and Subordination Agreement and in the Side Letter Agreement." MGA's and Larian's motive to attempt to encumber the Bratz intellectual property rights is clear: to prevent Mattel from obtaining and benefitting from it. | • Mattel's Reply in Response to the MGA Parties' Opposition to Compel Production of Documents Responsive to Third Party Subpoenas at 8-9, 16 (Feb. 24, 2009);<br>• Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 14, 18 (March 24, 2009);<br>• Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 22 (April 8, 2009);<br>• Mattel's Brief in Support of the Appointment of a Permanent Receiver at 7 (May 15, 2009);<br>• Wachovia Bank Document Production March 16, 2009 (Bates No. Wachovia 002752-2764) |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 108. Although Larian and his co-conspirators now admit that Larian contributed $60 million to the debt acquisition (after they initially claimed that Larian was behind none of the funding for the debt acquisition), Larian appears to have contributed substantially more than that. Larian and his co-conspirators have disguised and continue to seek to disguise the level of Larian's funding and the true source of the funds used for the debt acquisition by relying on shell companies and undisclosed side-agreements between Larian and the members of Omni 808. | <ul><li>Third Amended Answer and Counterclaims ¶¶ 112,114, 117;</li><li>Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 7, 18 (April 8, 2009);</li><li>Wachovia Bank Document Production March 16, 2009 (Bates No. Wachovia 002752-2764;</li><li>Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 2, 7, 9, 13 (March 24, 2009);</li><li>Consolidated Reply in Support of Mattel's Mot. for Reconsideration of Phase II Discovery Matter Order No. 3 at 1, 5-8, 11, 15 (April 22, 2009);</li><li>Mattel's *Ex Parte* Application for Order for Preservation of Documents at 1 (April 3, 2009);</li><li>Mattel's Brief in Support of Appointment of a Permanent Receiver at 6-7 (May 15, 2009)</li></ul> |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 109. Among the shell entities used for purposes of the Omni transaction is Vision Capital, formed on August 19, 2008. Vision Capital's purported principal, former MGA director Leon Neman, is Larian's brother-in-law. He testified that a company called Lexington Financial Limited funded Vision Capital's $10 million investment in Omni 808. Lexington is registered in the Caribbean island nation of Nevis, which is known for its secrecy laws. Lexington's London address is a company that provides "virtual office" services. Despite Mattel's efforts during discovery, Mattel has yet to discover the actual source of funds used for Vision Capital's investment in Omni. | • Third Amended Answer and Counterclaims ¶¶ 108, 116, 120; <br>• Mattel's Ex Parte Application for Appointment of Receiver for MGA or For Alternative Relief at 5 (Dec. 28, 2008); <br>• Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 5-8 (April 8, 2009); <br>• Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas at 1, 3 (Feb. 2, 2009); <br>• Mattel's Opp. to Omni's *Ex Parte* Application to Intervene at 8 (Feb. 3, 2009); <br>• Mattel's Mot. for Reconsideration of Discovery Master Order No. 3 at 2 (March 24, 2009); <br>• Mattel's Reply in Support of Mot. for Reconsideration of Discovery Master Order No. 3 at 18 (April 22, 2009) |
| 110. Although Larian and his co-conspirators persist in their denials, evidence shows that Larian agreed to "pay back" at least three Omni 808 members, representing at least $20 million of the funding Omni 808 purportedly used to acquire the Wachovia note, shortly after the Omni transaction closed. On September 13, 2008, just days after the Omni debt acquisition closed, Larian asked Omni 808 member Joe Moinian if it was "OK for me to return your money by December." On November 12, 2008, | • Sealed Forensic Auditor Report at 7, 26-27; DFI 22-001-002; DFI 23-001-002; DFI 25-001; DFI 21--01-002, (April 23, 2009); <br>• IGWT 826 Investments, LLC Document Production (Bates Nos. IGWT 14548-50; 14397; 14394-96); <br>• Mattel's Brief in Support of the Appointment of a Permanent Receiver at 3, fn. 14 and 15, (May 15, 2009); <br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 8-10 (May 15, 2009) |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| Larian told his wife and sister that "[w]e need to pay back [Arsalan Gozini's] $5mil by end Nov (IGWT – Omni)." And, in December 2008, Larian told his close friend Leon Farahnik that "David Nazarian, Joe [Moinian] and Arsalan [Gozini]" – three Omni members – "all want there [sic] money this month[]." | |
| 111. Larian claims that he was lying to Farahnik, one of his closest friends, about his need to repay those Omni 808 members. But as is now known, in December 2008 Larian did repay Gozini, through a wire transfer, the sum of $5,065,753.42, which represented Gozini's $5 million investment in Omni 808 plus accrued interest. Larian claims this was a "loan" from Larian to Gozini unrelated to Gozini's $5 million investment in Omni, as evidenced by a promissory note that bears a date of December 1, 2008. But that promissory note was not prepared until March 2009, and was prepared then for the purpose of misleading Mattel, the Court and the Court-appointed forensic auditor during his examination of MGA's finances. Larian and his co-conspirators further sought to disguise Larian's acquisition of Gozini's interest in Omni by creating a document, in May 2009, through which Gozini purports to assign his interest to Kadisha in a transfer that does not appear or purport to be supported by | • Sealed Forensic Auditor Report at 7, 26-27; DFI 22-001-002; DFI 23-001-002; DFI 25-001; DFI 21--01-002 (April 23, 2009); <br> • IGWT 826 Investments, LLC Document Production (Bates Nos. IGWT 14548-50; 14397; 14394-96); <br> • Mattel's Brief in Support of the Appointment of a Permanent Receiver at 3, (May 15, 2009); <br> • Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 8-10, 12-13 (May 15, 2009) |

### APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| consideration. | |
| 112. On October 16, 2008, Larian, MGA and their co-conspirators entered into another series of fraudulent transactions to hide their assets and hinder Mattel's rights as a creditor. First, Omni 808 executed an Amended and Restated Subordinated Promissory Note regarding IGWT's $60 million loan. Second, MGA and Omni 808 executed a Secured Delayed Draw Demand Note (the "Draw Demand Note"), with a face value of $40 million, through which Omni 808 agreed to provide additional funds to MGA beyond the Wachovia debt purchase. Third, Omni 808 and IGWT 826 executed a Senior Promissory Note with a face value of $40 million. | • Third Amended Answer and Counterclaims ¶¶ 118-120; <br> • Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 5-8 (April 8, 2009); <br> • Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas at 1, 3 (Feb. 2, 2009); <br> • Mattel's Opp. to Omni's *Ex Parte* Application to Intervene at 8 (Feb. 5, 2009); <br> • Mattel's *Ex Parte* Application for an Order to Show Cause re Omni 808's failure to Comply with Court Order at 10-11 (April 21, 2009); <br> • Consolidated Reply in Support of Mattel's Mot. for Reconsideration of Phase II Discovery Matter Order No. 3 at 5-8, (April 22, 2009); <br> • Wachovia Bank Document Production March 16, 2009 (Bates No. Wachovia 002752-2764) |

## APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 113. Pursuant to the terms of the Draw Demand Note, Omni 808 agreed to make available up to $40 million of additional purported credit to MGA. MGA, Larian and their co-conspirators structured the Draw Demand Note as a "back to back line" with the Senior Promissory Note whereby any draws by MGA on the Draw Demand Note would be funded by draws by Omni 808 on the Senior Promissory Note with IGWT 826. The parties structured the transaction in that manner to enable Larian (through IGWT) to obtain "first position" secured debt with respect to funds Larian loaned to MGA, thus effectively converting the illegal proceeds of MGA's misconduct into Larian's purportedly secured debt. Moreover, as with Larian's initial $60 million purported loan to Omni 808 through his IGWT 826 entity, the Draw Demand Note allowed Larian to receive purported interest payments that were financed by MGA and ultimately delivered to Larian through Omni 808 and IGWT 826. On or about October 17, 2008, pursuant to a written request submitted by MGA to Omni 808, Omni 808 provided MGA $6 million in funding under the Draw Demand Note. Those funds were, in whole or in part, generated by Larian's and MGA's wrongful conduct towards Mattel and transferred through Larian-controlled conduits to conceal the true source of the funds | <ul><li>Third Amended Answer and Counterclaims ¶¶ 108-114, 118;</li><li>Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 18 (April 8, 2009);</li><li>Consolidated Reply in Support of Mattel's Mot. for Reconsideration of Phase II Discovery Matter Order No. 3 at 5-8 (April 22, 2009);</li><li>Wachovia Bank Document Production March 16, 2009 (Bates Nos. Wachovia 002752-2764)</li></ul> |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 114. Since the Omni transactions closed, Larian and his coconspirators have continued to engage in fraudulent conduct to create the appearance of an arm's length relationship between Omni 808 and MGA. On December 31, 2008, at Larian's request, Kadisha sent a letter to Larian in which Omni 808 declared MGA to be in default under the Credit Agreement and threatened to initiate remedies. Larian asked Kadisha to prepare that letter for the purpose of frustrating the Court's Orders and Mattel's rights. That Kadisha's December 31, 2008 letter is a sham intended to mislead is confirmed by Larian's statement that regardless of MGA's financial condition, Omni 808 would "never" put MGA into bankruptcy because of MGA's "friendly relationship" with Omni. | • Third Amended Answer and Counterclaims ¶¶ 114, 115, 117, 119, 120;<br>• Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 22 (April 8, 2009);<br>• Consolidated Reply in Support of Mattel's Mot. for Reconsideration of Phase II Discovery Matter Order No. 3 at 5-8 (April 22, 2009) |
| 115. Also in December 2008, Larian asked Kadisha, and Kadisha agreed, to prepare a letter to send to the Court to express Omni 808's "disappoint[ment]" with the injunction ruling, as well as Omni 808's "commit[ment] to providing financing for MGA and its principals." That letter was intended to mislead the Court into believing that because Omni 808 – a purported independent third party lender to MGA – stood behind MGA, MGA would be able to satisfy a monetary judgment. Of course, the actual purpose of Omni 808 was precisely the opposite of | • Third Amended Answer and Counterclaims ¶¶ 114, 117, 119;<br>• Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 18 (April 8, 2009);<br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 8-10 (May 15, 2009) |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| what it represented in the letter to the Court; that is, Omni 808 was formed to frustrate Mattel's ability to recover from MGA money and property rightfully belonging to Mattel, not to ensure that Mattel would be able to collect on a judgment against MGA. | |
| 116. Omni 808, funded largely or entirely by Larian himself, claims to have as much as a $350 million security interest in "everything [MGA] has," potentially including MGA's intellectual property rights that rightly belong to Mattel. The full extent of the fraudulent acts committed by Larian and his coconspirators with respect to the Omni transaction is not yet known to Mattel because such information is in the exclusive possession and control of Larian and his coconspirators, and they have refused to disclose information to Mattel. | • Third Amended Answer and Counterclaims ¶¶ 108, 119, 120, 136, 138;<br>• Sealed Forensic Auditor Report at 7 (April 23, 2009);<br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 5 (May 15, 2009) |

### APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 129. Beginning at various times from approximately 1999 through the filing of this Fourth Amended Answer and Counterclaims, and continuing into the future, in the Central District of California and elsewhere, Counter-defendants Larian, MGA, MGA HK, MGA de Mexico, Bryant, Machado, IGWT 826, Omni 808, certain of the Doe Counter-defendants, and others acting in concert with or on behalf of the foregoing, knowingly, willfully, and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(d) by furthering, promoting, and facilitating the Criminal Enterprise detailed in paragraphs 28-29, 31-32, 35-36, 48-57, and 60-120 in violation of 18 U.S.C. § 1962(c). | • Third Amended Answer and Counterclaims ¶¶ 108-121, 136-145, 149-155; <br>• Mattel's Mot. for Leave to File Third Amended Answer and Counterclaims at 12 (April 8, 2009); <br>• Mattel's Opp. to MGA Parties' Motion to Quash Subpoenas Issued by Mattel to Omni 808 Investors, LLC, OmniNet Capital, LLC, IGWT Group, LLC, IGWT 826 Investments, LLC, and Vision Capital, LLC, at 14-15 (Feb. 10, 2009); <br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 2-20 (May 15, 2009) |
| 130. Counter-defendant Omni 808, knowing that the Criminal Enterprise was engaged in a scheme to aid MGA in unfairly and wrongfully competing with Mattel, and knowing that the scheme was being furthered by the commission of two or more predicate acts in a ten year period, agreed to assist, advance and further that Enterprise's unlawful objectives including by participating in and structuring the purchase of the Wachovia debt so as to conceal the origin of the funds, thwart the Court's Orders and the jury verdicts, and secure priority over Mattel and burden its rights to Bratz. | • Third Amended Answer and Counterclaims ¶¶ 108-121, 136-145, 149-155; <br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 2-20 (May 15, 2009). |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| 131. In furtherance of this unlawful conspiracy and its multiple objects, as alleged herein, Counter-defendants Larian, MGA, Bryant, MGA HK, MGA de Mexico, Bryant, Machado, IGWT 826, Omni 808, and various coconspirators committed numerous overt acts, including but not limited to those set forth in paragraphs 28-29, 31-32, 35-36, 48-57, and 60-120. | • Third Amended Answer and Counterclaims ¶¶ 136-145, 149-155; <br> • Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 2-20 (May 15, 2009) |
| 132. Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts constituting the pattern of racketeering activity. As a result of the conspiracy between and among Counterdefendants Larian, MGA, MGA HK, MGA de Mexico, Bryant, Machado, IGWT 826 and Omni 808 to violate 18 U.S.C. § 1962(c), Mattel has suffered substantial damages, in an amount to be proved at trial. Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(d). | • Third Amended Answer and Counterclaims ¶¶ 136-155; <br> • Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 2-20 (May 15, 2009) |
| 207. MGA engaged in fraudulent transfers, including, without limitation: (a) Upon information and belief, and as set forth on Exhibit X hereto, between 2004 | • Third Amended Answer and Counterclaims ¶¶ 108-121, 136-145, 152, 217-222; <br> • Mattel's Memorandum Regarding the |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| and 2008 MGA paid more than $320 million in dividends and distributions to Larian and/or to trusts controlled by Larian (the "Dividend Transfers"). Upon information and belief, the Dividend Transfers – which Mattel first learned about only within the past year, because MGA failed and refused to provide information about them during discovery, and indeed continues to do so –were made with the intent to wrongfully transfer assets away from MGA to ensure that such assets would not be available to satisfy claims by MGA's creditors, particularly including Mattel following the filing of this action in 2004. Moreover, as part of the Dividend Transfers, MGA paid substantial sums as purported interest to Larian through his IGWT 826 entity, and through Omni 808, as discussed at paragraph 113.<br>(b) As discussed in paragraph 107, on or about September 3, 2008, in connection with Omni 808's purchase of the Wachovia Debt at a significant discount to face value, MGA purported to transfer a security interest in its Bratz-related intellectual property to Omni 808 pursuant to the Side Letter Agreement. The transfer was specifically intended to frustrate the Phase 1 jury verdict and Court orders finding that MGA did not have valid and enforceable title to the Bratz-related intellectual property (the "IP Transfer," | MGA/Omni 808 Transactions at 2-20 (May 15, 2009) |

### APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| and collectively with the Dividend Transfer, the "Fraudulent Transfers"). | |
| 208. Upon information and belief, these Fraudulent Transfers were made by MGA with actual intent to hinder, delay, and/or defraud MGA's creditors, including Mattel. Cal. Civ. Code § 3439.04(a)(1). As previously set forth in paragraphs 97-116 above, and among other things:<br>(a) Each of the Fraudulent Transfers was made to insiders of MGA. Larian is the controlling shareholder and President of MGA. Moreover, Omni 808 was controlled by Larian and/or by insiders, affiliates or parties related to MGA and Larian, who exercised the power to direct or cause the direction of its management and policies.<br>(b) Each of the Fraudulent Transfers was made with the intent to defraud creditors of MGA, including Mattel, by stripping MGA of money and other assets to ensure that such money and assets would not be available to satisfy claims against MGA and to move assets that could not be completely stripped into friendly hands so that any attempt by MGA's creditors to satisfy their claims against MGA would be rendered more difficult and expensive.<br>(c) Each of the Fraudulent Transfers occurred after MGA was on notice of Mattel's actual or potential claims against MGA and at times when MGA understood the significant likelihood that Mattel's | • Third Amended Answer and Counterclaims ¶¶ 108-121, 136-145, 152, 217-222;<br>• Mattel's Memorandum Regarding the MGA/Omni 808 Transactions at 2-20 (May 15, 2009) |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| claims would result in judgment in Mattel's favor. <br> (d) The Fraudulent Transfers, in the aggregate and individually, comprise a significant percentage of MGA's assets as of the respective times of the Fraudulent Transfers. Moreover, a significant amount of the Dividend Transfers and the entirety of the IP Transfer were made in 2007 and 2008, years in which MGA itself claims it sustained net losses of $137.0 million and $150.4 million respectively. | |
| 209. Mattel does not know, at this time, the full scope of the unlawful transfers MGA and Larian have made and continue to make because such facts are exclusively in the possession of and known by Counter-defendants. On information and belief, MGA's and Larian's unlawful transfers are ongoing, and unless stopped by the Court will continue to occur and be made in the future. | • Third Amended Answer and Counterclaims ¶¶ 120, 121, 217-222 |
| 210. Counter-defendants are each liable to Mattel for the value of the assets transferred to them or to the extent necessary to satisfy all of Mattel's claims against MGA in full, whichever is less, plus pre-judgment interest at the highest rate determined to be applicable by the Court, pursuant to Cal. Civil Code § 3439.08. | • Third Amended Answer and Counterclaims ¶¶ 217-222 |
| 211. Alternatively, each of the Fraudulent Transfers should be avoided and attached to the extent necessary to satisfy all of | • Third Amended Answer and Counterclaims ¶ 222 |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| Mattel's claims against MGA in full plus pre-judgment interest at the highest rate determined to be applicable by the Court, pursuant to Cal. Civil Code § 3439.07. | |
| 212. Counter-defendants engaged in the Fraudulent Transfers with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against Counterdefendants in an amount to be determined at trial. | • Third Amended Answer and Counterclaims at 99, ¶¶ 10-13 |
| 216. After Mattel's claims had arisen, MGA engaged in fraudulent transfers, Cal. Civ. Code §§ 3439.04(a)(2), 3439.05(a), including, without limitation, the Dividend Transfers and the IP Transfer. | • Third Amended Answer and Counterclaims ¶¶ 217-222 |
| 217. At the time of the Fraudulent Transfers, MGA was insolvent or was rendered insolvent by the Fraudulent Transfers, and/or was about to engage in a business or transaction for which its remaining assets were unreasonably small and, on information and belief, intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they became due. | • Third Amended Answer and Counterclaims ¶¶ 217-222 |
| 218. MGA received less than reasonably equivalent value in exchange for the Fraudulent Transfers. Cal. Civ. Code §§ 3439.04(a)(2), 3439.05(a). MGA did not receive any consideration for the Dividend Transfers, consisting of dividends and distributions. Any funds made available to MGA in exchange for the IP Transfer | • Third Amended Answer and Counterclaims ¶ 219 |

APPENDIX A

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| constituted less than reasonably equivalent value in view of the significant value of the Bratz-related intellectual property that was purportedly encumbered by the IP Transfer. | |
| 219. Mattel does not know, at this time, the full scope of the unlawful transfers MGA and Larian have made and continue to make because such facts are exclusively in the possession of and known by Counter-defendants. On information and belief, MGA's and Larian's unlawful transfers are ongoing, and unless stopped by the Court will continue to occur and be made in the future. | • Third Amended Answer and Counterclaims ¶¶ 120, 121, 217-222 |
| 222. Counter-defendants engaged in the Fraudulent Transfers with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against Counterdefendants in an amount to be determined at trial. | • Third Amended Answer and Counterclaims at 99, ¶¶ 10-13 |
| 240. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or | • Third Amended Answer and Counterclaims at 97, ¶ 1 |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS BEFORE IT FILED, AND ALLEGED THEM IN, ITS THIRD AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz. | |
| 241. Mattel seeks a declaration of the Court that any and all agreements between Bryant and/or any other individuals then-employed by Mattel, on the one hand, and MGA, on the other hand, in which Bryant or any of them purport to assign to MGA any right, title or interests in any work or properties that they conceived, created or reduced to practice while Mattel employees, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant and/or any other such individuals had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest. | • Third Amended Answer and Counterclaims at 99, ¶ 2 |
| 242. Mattel seeks a declaration of the Court that any and all encumbrances, security interests or rights of priority that Larian, IGWT 826, Omni 808, or any agent, affiliate or alter ego of any of them, purports to hold senior or preferred to Mattel's rights as a creditor of MGA are invalid and/or are equitably subordinated to Mattel's rights as a creditor of MGA. | • Third Amended Answer and Counterclaims ¶ 222 |
| 243. Mattel seeks a declaration of the Court that Counter-defendants have no rights over the "Moxie Girlz" name or mark, that Mattel is the true beneficial owner of that name and mark, and Mattel | • Third Amended Answer and Counterclaims at 99, ¶ 1 |

**APPENDIX A**

| MATTEL'S ALLEGATIONS RELATING TO OMNI IN ITS PROPOSED FOURTH AMENDED ANSWER AND COUNTERCLAIMS | MATTEL KNEW THE FACTUAL BASIS OF EACH OF ITS ALLEGATIONS <u>BEFORE</u> IT FILED, AND ALLEGED THEM IN, ITS <u>THIRD</u> AMDENDED ANSWER AND COUNTERCLAIMS |
|---|---|
| is entitled to an accounting and imposition of a constructive trust over Moxie Girlz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Moxie Girlz. | |