# EXHIBIT D

CONFIDENTIAL - ATTORNEYS' EYES ONLY

676

```
 1           UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA
 3                SOUTHERN DIVISION
 4
 5   ------------------------------
 6   CARTER BRYANT, an individual,  )
 7           Plaintiff,             )
 8      vs.                         ) No. CV 04-9049-DOC
 9   MATTEL, INC., a Delaware       )    (RNBx)
10   Corporation,                   ) Consolidated with:
11           Defendant.             ) Case No. CV 04-9059
12   ------------------------------) Case No. CV 05-2727
13   (AND CONSOLIDATED ACTIONS      ) VOLUME IV
14
15        CONFIDENTIAL - ATTORNEYS' EYES ONLY
16
17      Continued Videotaped Deposition of
18      ROBERT A. ECKERT, taken at 404 West
19      Fourth Street, Suite D, Santa Ana,
20      California, commencing at 8:07 A.M.,
21      Friday, December 18, 2009, before
22      Wendy S. Schreibers, CSR No. 3558,
23      RPR, CLR.
24
25   PAGES 676 - 806
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

684

```
1      A.   Area code (310) 252-5000, area code
2   (310) 252-5001.
3      Q.   Do you ordinarily answer your phone or have
4   it screened by an assistant?
5      A.   I ordinarily do not answer my phone.  It is      08:14:10
6   usually picked up by an assistant.
7      Q.   In the case of the call from Mr. Kadisha,
8   did you pick up the phone directly or was it
9   screened by an assistant?
10     A.   I picked up the phone directly, as I recall.    08:14:20
11     Q.   And why, if you recall, was that -- why was
12  it that you were answering the phone directly at
13  that time?
14     A.   Because it was a Friday afternoon, as I
15  remember.  My assistant leaves generally before I do    08:14:34
16  on Friday afternoons and on occasion when the phone
17  rings and there doesn't seem to be anybody around
18  picking it up, I pick it up.
19     Q.   What was the date of the telephone call that
20  you picked up from Mr. Kadisha?                         08:14:53
21     A.   I don't remember other than I know -- I'm
22  quite sure it was a Friday afternoon.  I don't know
23  which Friday it was.
24     Q.   Can you say what year it was?
25     A.   I believe it was 2008.  It could have been      08:15:11
```

685

1   earlier in this year, 2009, but I think it's more
2   likely that in my mind's eye that it was 2008 and
3   not 2009.
4       MS. HURST:  Do you want to state your
5   appearances?                                              08:15:33
6       MS. HAULER:  Bridget Hauler for Mattel.
7       MR. NORMILE:  Bob Normile, Mattel.
8   BY MS. HURST:
9       Q.  Tell me as much as you remember of the
10  conversation -- telephone conversation that you had    08:15:51
11  with Mr. Kadisha.
12      A.  It was a very brief conversation.  These
13  aren't going to be the exact words but my -- what I
14  remember of the phone call is he called me.  He told
15  me that he had become involved in MGA, and I don't     08:16:06
16  know whether he said he had acquired the debt but
17  that would be my best recollection today; that he --
18  he or he and partners or he and his company or some
19  group had acquired the debt of MGA and he thought it
20  would be a good idea for he and I to get together      08:16:29
21  perhaps over lunch to see if we could resolve the
22  dispute between MGA and Mattel.
23      Q.  What was your response?
24      A.  I told him we are not going to get together
25  to discuss this case; that he's -- now if he's         08:16:48

CONFIDENTIAL - ATTORNEYS' EYES ONLY

689

1        MR. QUINN:  Same objections.

2        THE WITNESS:  I think any transaction that

3   MGA does that is wrong in some way, if we have some

4   claim to some property at MGA somehow flows to

5   Mattel.                                                08:21:55

6   BY MS. HURST:

7        Q.   You understand that the debt between MGA and

8   Wachovia was outstanding at the time of the

9   transaction with Omni, correct?

10       MR. QUINN:  You're asking him to assume           08:22:11

11  that?

12       MS. HURST:  No, and I'm asking him if he

13  understands it.  That was my word, Mr. Quinn.

14       THE WITNESS:  No, I don't understand that.

15       Q.   Okay.  You understand that the transaction   08:22:18

16  between Omni -- well, the transaction was actually a

17  transaction between Wachovia Bank and Omni whereby

18  Omni acquired preexisting debt of MGA Entertainment

19  from Wachovia Bank.  Do you understand that?

20       MR. QUINN:  Calls for speculation, lacks          08:22:36

21  foundation.

22       THE WITNESS:  No, I'm not familiar with the

23  transaction.

24  BY MS. HURST:

25       Q.   If Omni acquired preexisting debt of MGA     08:22:40

CONFIDENTIAL - ATTORNEYS' EYES ONLY

690

1    Entertainment from Wachovia Bank and the money in
2    the transaction flowed from Omni to Wachovia Bank,
3    I'd like you to explain for the jury how exactly
4    that harmed Mattel.
5         MR. QUINN:  Incomplete hypothetical,                08:23:02
6    improper opinion, calls for speculation.
7         THE WITNESS:  I don't know enough about Omni
8    who -- who invested in Omni, what it did, how it did
9    it to develop an opinion on what was wrong about
10   that transaction.  Again, I'm just not familiar with    08:23:22
11   that transaction that you're describing.
12   BY MS. HURST:
13        Q.   Putting aside whether you have an opinion
14   about whether there was something wrong with the
15   transaction, I'm asking you how it harmed Mattel.       08:23:32
16   So if that was a transaction whereby Omni 808
17   acquired preexisting debt of MGA Entertainment to
18   Wachovia Bank and the transaction was consummated by
19   Omni paying Wachovia Bank money for that debt, a
20   distressed debt transaction, how did that harm          08:24:04
21   Mattel?  Can you articulate any reason why that
22   harmed Mattel as you sit here today?
23        MR. QUINN:  Same objections.  It's compound
24   now as well.
25        THE WITNESS:  Again, you're now describing         08:24:16

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                                                              691

1    the debt to me as distressed.  You clearly know a

2    lot more about this transaction than I do and about

3    the parties involved, so I'm not going to be able to

4    give you an opinion on how Mattel was harmed in that

5    transaction since I just don't know enough about it.   08:24:34

6    BY MS. HURST:

7        Q.   Are you aware that Mattel sought the

8    appointment of a receiver for MGA in this action in

9    part based on the allegation that the Omni

10   acquisition of Wachovia debt was concealed from        08:25:48

11   Mattel?

12           MR. QUINN:  Assumes facts not in evidence.

13           THE WITNESS:  I am aware that Mattel

14   requested a receiver in this case.  I don't know the

15   specific rationale behind that.                        08:26:00

16   BY MS. HURST:

17       Q.   Would you say that Mr. Kadisha's call to you

18   reporting in part that he had acquired debt of MGA

19   was a concealment of that transaction?

20           MR. QUINN:  Argumentative, improper opinion.   08:26:21

21           THE WITNESS:  No, not if he told me he had

22   acquired the debt.

23   BY MS. HURST:

24       Q.   Has Bratz lost market share since December

25   of 2008?                                               08:27:00
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

803

```
 1   STATE OF CALIFORNIA    ) ss:
 2   COUNTY OF LOS ANGELES  )
 3
 4           I, WENDY S. SCHREIBER, C.S.R. No. 3558, do
 5   hereby certify:
 6           That prior to being examined, the witness
 7   named in the foregoing deposition, ROBERT A. ECKERT,
 8   was by me duly sworn to testify to the truth, the
 9   whole truth and nothing but the truth;
10           That said deposition was recorded
11   stenographically by me, and was thereafter reduced
12   to print by means of computer-aided transcription,
13   and that the foregoing pages contain a full, true
14   and accurate record of all proceedings and
15   testimony;
16           I further certify that I am neither
17   counsel for any party in said action, nor am I
18   related to any party to said action, nor am I in any
19   way interested in the outcome thereof.
20           IN WITNESS WHEREOF, I have subscribed my
21   name this 21st day of December, 2009.
22
23
24                    _____
25           WENDY S. SCHREIBER, CSR No. 3558, RPR
```