MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with: CV 04-9059, CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS**<br><br>Date:          April 26, 2010<br>Time:          8:30 a.m.<br>Courtroom:  9D<br>Judge:        Hon. David O. Carter<br><br>**[DECLARATION OF WARRINGTON S. PARKER III FILED CONCURRENTLY]** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

    A.    Mattel Has Alleged Theft Of Trade Secrets  From Mattel Mexico Since January 2007 And Expressly Elected Three Years Ago Not To Sue On Behalf Of Mattel Mexico ..................................... 6

    B.    Mattel Fails To Identify Bratz, Jade Or Moxie As A Trade Secret ................................................................................................. 6

    C.    Mattel's Allegations Acknowledge That Mattel Has Known Of Bryant's Role In Bratz And Jade Since At Least 2003 And Mattel Has Known About Moxie Since The Beginning Of 2007 ........ 9

    D.    The Third Amended Counterclaims Allege Facts Concerning Omni 808 And IGWT 826, But Mattel Previously Failed To Add Them As Parties And Denied The Necessity Of Doing So ........ 10

ARGUMENT ...................................................................................................... 12

I.    THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED ON GROUNDS OF UNDUE DELAY, RESULTING PREJUDICE AND BAD FAITH .......................................................................................... 12

    A.    Mattel Has Unduly Delayed In Seeking To Add New Parties And Claims ................................................................................... 12

        1.    Mattel Has Unduly Delayed Seeking To Add Its Subsidiary Mattel Mexico As A Counter-Claimant ................. 12

        2.    Mattel Has Unduly Delayed Seeking to Add Omni 808 and IGWT 826 .................................................................... 14

        3.    No Further Doe Parties Should Be Permitted ........................... 16

    B.    Mattel Has Unduly Delayed In Identifying Its New Trade Secret Claims ......................................................................................... 16

    C.    The Undue Delay Prejudices MGA ...................................................... 17

    D.    Mattel's Amendments Are Made In Bad Faith .................................... 17

        1.    Mattel Chose Not To Identify Bratz and Jade As Trade Secrets To Obtain The Phase 1 Verdict .................................. 18

        2.    Mattel Is Not Entitled To Amend In An Effort To Avoid Properly Raised Defenses .......................................................... 19

II.    IF THE COURT PERMITS ANY AMENDMENT, IT SHOULD NOT PERMIT THE PROPOSED NEW SIXTEENTH COUNTERCLAIM BECAUSE THERE IS NO SUCH THING AS A CLAIM FOR BREACH OF CONSTRUCTIVE TRUST .................................................. 20

CONCLUSION ................................................................................................... 20

- i -

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AmerisourceBergen Corp.* v. *Dialysist West, Inc.*,
465 F.3d 946 (9th Cir. 2006)..................................................................1, 4, 5

*Ascon Properties, Inc.* v. *Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) ............................................................................8

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009) ....................................................................................1

*Bryant* v. *Mattel*,
573 F. Supp. 2d 1254 (C.D. Cal. 2007)...........................................................1, 5

*Digital Envoy, Inc.* v. *Google, Inc.*,
370 F. Supp. 2d 1025 (N.D. Cal. 2005).............................................................6

*Jackson* v. *Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990)........................................................................1, 5

*Kaplan* v. *Rose*,
49 F.3d 1363 (9th Cir. 1994)....................................................................1, 2, 4, 5

*Re-Alco Indus., Inc.* v. *Nat'l Ctr. for Health Educ., Inc.*,
812 F. Supp. 387 (S.D.N.Y. 1993) .....................................................................8

*Serrato* v. *City of Long Beach*,
2009 WL 1212833 (C.D. Cal. 2009) ...................................................................4

*In re Syntex Corp. Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996)................................................................................2

*Texaco, Inc.* v. *Ponsoldt*,
939 F.2d 794 (9th Cir. 1991)...........................................................................1, 4

*Townsend* v. *Univ. of Alaska*,
543 F.3d 478 (9th Cir. 2008)..............................................................................8

*Williby v. California*,
276 Fed. Appx. 663 (9th Cir. 2008) ....................................................................4

## STATE CASES

*Batt v. City and County of San Francisco*, 65 Cal. Rptr. 3d 716 (Cal. App. 2007)..........................................................................................................................8

*Del Costello* v. *State of California*,
185 Cal. Rptr. 582 (Cal. App. 1982) ..................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Glue-Fold, Inc.* v. *Slautterback Corp.*,
98 Cal. Rptr. 2d 661 (Cal. App. 2000) ................................................................. 8

*K.C. Multimedia, Inc.* v. *Bank of Am. Tech. & Operations, Inc.*,
90 Cal. Rptr. 247 (Cal. App. 2009) ................................................................. 6, 7

**STATUTES**

Cal. Civ. Code § 3426.1(b) ................................................................. 7

Federal Rule of Civil Procedure 15 ................................................................. 1, 8

**MISC.**

Restatement Restitution § 160 (1937) ................................................................. 8

## INTRODUCTION AND SUMMARY OF ARGUMENT

In November, this Court gave Mattel the unprecedented opportunity to conduct discovery *before* filing its proposed Fourth Amended Answer and Counterclaims ("FAAC"). *Cf. Ashcroft v. Iqbal*. 129 S. Ct. 1937 (2009).  One would expect that, given this opportunity, Mattel would file a proposed pleading raising claims based on facts previously unknown to Mattel.  But Mattel has not done that.  Instead, Mattel has caused the MGA Parties to spend thousands of hours and millions of dollars in discovery these last several months on tangential issues, just so that Mattel can propose the addition of parties and issues that it has mostly known about for years, some since the inception of the lawsuit.

Mattel does not present this Court with a pleading based on new or different facts shoring up the deficiencies in its RICO claims previously identified in MGA's Motion for RICO Case Statement.  Instead, the goals of this pleading remain: (a) to prematurely litigate the issue of creditor priority in connection with an assumed right to eventual enforcement of the Phase 1 verdict; (b) to attempt to shore up defects revealed by the appeal from the Phase 1 equitable orders; and (c) to attack MGA's entirely new doll product line named "Moxie" in an effort to wipe MGA off the face of the earth as a Mattel competitor once and for all.  Within the framework of Federal Rule of Civil Procedure 15, Mattel has waited too long, there is prejudice, and these proposed amendments reflect bad faith.  The Motion should be denied.

***"New" Parties.***  Mattel first proposes to add a new party on its side of the ledger, its subsidiary Mattel de Mexico, S.A. de C.V. ("Mattel Mexico").  FAAC ¶ 10.  Mattel has known about its subsidiary as a potential counter-claimant since Mattel Mexico's employees departed for MGA de Mexico in April 2004.  In April 2005, both Mattel *and* Mattel Mexico sought criminal prosecution of Vargas, Trueba and Machado.  But, in order to avoid dismissal here in light of subject matter jurisdiction, foreign choice of law and international comity concerns, Mattel

told Judge Larson almost three years ago that it was "not attempting to sue for damages incurred by its subsidiaries . . . ." *Bryant v. Mattel*, 573 F. Supp. 2d 1254, 1269 (C.D. Cal. 2007). Mattel's about-face on this issue is the essence of undue delay, prejudice and bad faith. Part I(A)(1), *infra*.

Mattel also proposes to add Omni 808 and IGWT 826 as counter-defendants, claiming that it was "previously ignorant of the nature, extent and scope of involvement and complicity of" Omni 808 and IGWT 826. FAAC ¶¶ 17, 18. This is simply false. Since at least December 2008, Mattel has been attacking Omni's status as a creditor of MGA. In December 2008, when Mattel claims to have become aware of the Omni 808 transaction, Mattel filed an *ex parte* application for the appointment of a receiver alleging the impropriety of this transaction. Since that time, Mattel's claims against Omni 808 and IGWT 826 have been repeatedly rolled out by Mattel in various filings with the Court. By attacking the Omni transaction, Mattel seeks to preserve its purported position with respect to the Bratz IP for eventual post-judgment enforcement. The attack on the Omni transaction is simply a premature state law enforcement of judgment proceeding between two non-diverse parties dressed up as a RICO predicate act.

Indeed, Mattel specifically identified Omni 808 and IGWT 826 and their claimed roles in the Third Amended Answer and Counterclaims ("TAAC"), which accuses them of the very same conduct alleged in the proposed FAAC. Mattel asserted in the TAAC that Omni 808 and IGWT 826 were part of a RICO enterprise ("the IGWT Criminal Enterprise") and that they were members of a RICO conspiracy precisely because they engaged in the same conduct alleged in the proposed FAAC. TAAC ¶¶ 136, 138, 141(a), (b), (e), (f), (g), (h), (i), 149-50, 152. Based on allegations of secret dealings involving these entities, Mattel obtained the appointment of a temporary receiver, a forensic auditor and the monitor. But Mattel did not seek to add Omni or IGWT 826 as parties in December 2008—in fact, recognizing the prejudice to MGA that would result and a likely denial of

amendment, Mattel vociferously *denied* that Omni and IGWT 826 would have to be added as parties when Mattel sought leave to file the TAAC in the Spring of 2009, stating "Mattel seeks . . . relief that does not depend on any absent parties . . . ." Dkt. No. 5335 at 1-2.  Again, Mattel's complete about-face signals undue delay, prejudice and bad faith.  Part I(A)(2), *infra*.

Nor should Mattel be allowed to name any further Doe counter-defendants. There have been millions of pages of documents produced; there have been at least ninety-four depositions taken by Mattel.  There can be no viable claim that Mattel continues to be unaware of the existence of any potential defendants to these claims.  *See*  Part I(A)(3), *infra*.

*"New" Claims.*  Turning from the attempt to add new parties to the allegations made, Mattel continues to pursue its hypocritical changes of legal theory.  Mattel proposes to add Bratz, Jade and Moxie for the first time as the basis for its trade secret claims.  FAAC ¶¶ 93, 134.  Mattel first sued Carter Bryant on Bratz and Jade in April 2004, and that pleading contained no trade secret misappropriation claim.  The creation of Bratz and Jade, and Carter Bryant's disclosure of Bratz and Jade to MGA, were the subject of the entire Phase 1 trial. On the eve of that trial, *Mattel expressly disclaimed that the name Bratz is proprietary*.  5/23/2008 Tr. 79-80 (Phase 1 Pretrial Conference).  Moreover, as Judge Larson has previously found and Mattel's proposed FAAC admits, Mattel has known about Byrant's role with regard to Bratz and Jade since at least November 2003.[1]  Jade is the name of one of the Bratz dolls first released in 2001 and, along with the name Bratz, a subject of the December 3, 2008 equitable orders already tried and on an appeal that is *fully submitted* before the Ninth Circuit.  But it was not until September 2009 in interrogatory responses that Mattel first claimed

---

[1] The MGA Parties believe that the evidence establishes Mattel's awareness prior to 2003.  *See* Dkt. No. 2499 at 15-19.  However, whether Mattel delayed seven years to identify Bratz and Jade as trade secrets or some additional time period is immaterial.  The delay is not justified and reflects bad faith.

that Bratz and Jade were trade secrets.  This about-face on the proprietary status of Bratz is an affront to the Court and a complete waste of judicial resources

As for Moxie, it is an entirely different line of dolls marketed by MGA for the first time in 2009.  Moxie has no relationship to Bratz.  Mattel does not assert that "Moxie" infringes on Bratz or uses Bratz intellectual property.  Rather, Mattel now claims that the name "Moxie" was somehow a trade secret of Mattel.  But Mattel does not allege that it ever considered use of the name, how Mattel protected the name as a trade secret and derived economic value from it not being generally known, how Carter Bryant allegedly had access to the name at Mattel, or any of the other basic facts necessary to allege a trade secret claim.  Mattel has known since at least October 2007 that Moxie was a name suggested to MGA by Bryant, and has known of MGA's intended use of the name "Moxie" since at least May 2009. Despite that knowledge, Moxie was not identified as a trade secret in any pleading or discovery response served since October 2007, and indeed even as recently as December 2009, Mattel's 30(b)(6) witness on trade secrets uttered not a word about Moxie when describing *all* of the trade secrets Mattel claims were taken.  Part I(B), *infra*.

The delay in adding new parties and raising new trade secret claims prejudices MGA.  Adding Mattel Mexico substantially changes the nature of the Mexican trade secret claims for purposes of fact and expert discovery, and raises a whole host of complicated new legal issues involving subject matter jurisdiction, comity, foreign choice of law and the like.  Adding new counter-defendants entitles them to take discovery in order to defend themselves.  Adding new legal theories of trade secret misappropriation related to Carter Bryant completely confounds the completion of the Phase 1 discovery and trial.  Bryant left Mattel 10 years ago, has been deposed and testified at trial for days.  *No* trade secret theory of any kind involving Bratz, Jade or Moxie was in the case at the time discovery was taken of all of the Phase 1 witnesses concerning the events at Mattel in the 1998-2000 time

OPP. TO MOT. FOR LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

1   frame.  An enormous portion of the Phase 1 discovery of former Mattel employees

2   (including Bryant) will have to be re-done if these new trade secret theories are

3   permitted to be added to the case, and the witnesses' memories regarding events

4   that happened *ten years ago* will have faded even further.  Part I(C), *infra*.

5       There is also the issue of bad faith.  All but one claim tried in the Phase 1

6   trial—the copyright claim being the exception—would have been preempted by

7   California's Uniform Trade Secrets Act had Mattel alleged prior to the Phase 1 trial

8   that Bratz and Jade were trade secrets.  The verdict on those state law tort claims

9   could not have resulted.  The equitable orders based on those state law tort claims

10  could not have issued.  The time and money spent appealing those state law issues

11  would not have been incurred.  Mattel decided against asserting Bratz and Jade as

12  trade secrets because it knew this and because it wants multiple bites at the same

13  apple.  All of these purportedly "new" issues are purely lawyer-driven attempts to

14  augment and plug holes in the Phase 1 result, at the expense of any notion of

15  consistency of position.  Mattel's 180-degree turns in the proposed FAAC rival that

16  of the spinning head of Linda Blair in *The Exorcist*.  This is, by definition, bad

17  faith.  Part I(D), *infra*.

18      Finally, with a single exception, MGA will not belabor in this Opposition all

19  of the defects in the FAAC under the heading of futility.  If the Court permits any

20  amendment, then MGA will address those defects in subsequent motion practice as

21  authorized by the FRCP.  But, as to the claim for Breach of Constructive Trust,

22  FAAC ¶¶ 232-37, there is simply no such thing.  It is a legal theory that is defective

23  on its face, and no amount of factual pleading could suffice to cure it.  It is a cause

24  of action that does not exist, so amendment to add it would be futile in the strictest

25  application of that term.  *See* Part II, *infra*.

26      Mattel's motion should be denied.

27

28

OPP. TO MOT. FOR LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

1

## STATEMENT OF FACTS

2

**A.    Mattel Has Alleged Theft Of Trade Secrets  From Mattel Mexico Since**

3

**January 2007 And Expressly Elected Three Years Ago Not To Sue On Behalf Of Mattel Mexico.**

4

When Mattel filed its First Amended Answer and Counterclaims ("AAC") in

5

January 2007, the first complaint to mention trade secrets, Mattel alleged that MGA

6

stole trade secrets from Mattel Mexico.  Mattel claimed that MGA opened for

7

business in Mexico, "approached three employees of Mattel's Mexican subsidiary

8

("Mattel Mexico"), enticed them to steal Mattel's most sensitive business planning

9

materials, and then hired them to assist in establishing and running MGA's new

10

Mexican subsidiary."  Dkt. No. 143 ("AAC") ¶ 37; *see also id.* ¶¶ 38-54 (detailing

11

how this alleged theft took place).  These same allegations were repeated in

12

Mattel's Second Amended Answer and Counterclaims ("SAAC") and its Third

13

Amended Answer and Counterclaims ("TAAC").  Dkt. No. 635 SAAC  ¶ 37; *see*

14

*also id.* ¶¶ 38-54; Dkt. No. 5607 TAAC ¶ 44; *see also id.* ¶¶ 45-61.

15

Although its claims with regard to the theft of trade secrets from Mattel

16

Mexico have remained unchanged for over three years, Mattel de Mexico, S.A. de

17

C.V. is not identified as a counter-claimant or even a potential party in any of these

18

complaints.  Indeed, the Court denied a motion to dismiss almost three years ago

19

because Mattel was "not attempting to sue for damages incurred by its subsidiaries .

20

. . ." *Bryant*, 573 F. Supp. 2d at 1269.

21

**B.    Mattel Fails To Identify Bratz, Jade Or Moxie As A Trade Secret.**

22

In its original complaint against Carter Bryant filed in April 2004, there was

23

no claim that Bryant misappropriated trade secrets.  On January 12, 2007, when

24

Mattel filed its AAC, Dkt. No. 143,[2] Mattel again made no mention of Bratz, Jade

25

or Moxie as trade secrets.  To be sure, the AAC made a number of claims, including

26

a claim for trade secret misappropriation.  However, no mention was made of Bratz,

27

---

28

[2] The Court allowed the amendment, but required Mattel to file it as a counterclaim in Case No. 2:05-cv-2727.  Dkt. No. 142.

OPP. TO MOT. FOR LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

Jade or Moxie as a trade secret.  The same is true of the Second Amended Answer and Counterclaims ("SAAC") which were filed on July 12, 2007, exactly six months later and which is the pleading on which Mattel proceeded to trial in Phase 1.  Dkt. Nos. 635, 636, and unnumbered entry after Dkt. No. 640.  Nor did the Third Amended Answer and Counterclaims ("TAAC") filed on May 22, 2009, mention Bratz, Jade or Moxie as trade secrets. Dkt. No. 5607.

While each of the amended complaints mention Bratz, they are careful *not* to identify Bratz as a trade secret.  And as to Moxie and Jade, Mattel said nothing in these complaints.  For example, in its AAC, Mattel identified those acts it believed gave rise to its claims against MGA and Carter Bryant for the taking and use of Bratz.  *See, e.g.,* Dkt. No. 143 ¶¶ 1, 20, 26. No mention was made of Bratz or Jade as a trade secret.  In fact, Mattel's trade secret claims were set apart from its claims relating to Bratz and Bryant. *See*, *e.g., id.* at ¶ 20 ("MGA intentionally stole not just specific Mattel property, such as Bratz designs, prototypes, and related materials, *but also* a vast array of trade secrets and other confidential information that comprise Mattel's' intellectual infrastructure.") (emphasis added).

The AAC identified the alleged trade secrets as "Mattel's proprietary business methods, practices and information" that underpin its "infrastructure," specifically the "plans, strategy, and business information" misappropriated from Mattel Mexico, the "contact file" Ron Brawer retained, and the "trade secrets regarding Mattel's customers, sales projects, advertising and strategy" misappropriated from Canada.  *Id. at* ¶¶ 20, 41, 68, 70.  Throughout, Mattel identified the specific individuals it alleged misappropriated trade secrets: Machado, Trueba, Vargas, Brawer, and Brisbois.  *Id.* at ¶¶ 41, 68, 74.[3]  Neither

---

[3] Mattel's Fourth Counterclaim specifically alleges that "Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of, or at the direction of MGA and/or Larian" stole trade secrets. *Id.* ¶ 107. Given that the AAC refers to Bryant by name throughout (indeed, the Third and Fifth Counterclaims bracketing Mattel's trade secret counterclaim both mention him by name) and identifies the specific conduct attributable to him, no reasonable interpretation of the AAC alleges that Bryant took a trade secret called Bratz or any

Bryant, Bratz, Jade or Moxie were *ever* mentioned *at all* in relation to allegations regarding misappropriation of trade secrets. *Id.* at ¶¶ 37-77.

Mattel's SAAC followed precisely the same pattern. *See, e.g.,* Dkt. No. 635 ¶¶ 20, 41, 68, 70. Again, neither Carter Bryant nor Bratz was anywhere associated with the misappropriation of trade secrets. *Id.* ¶¶ 37-77, 107. And Mattel's TAAC only added Jorge Castilla, who Mattel alleges misappropriated "documents related to inventory management and forecasting" and "future international business strategies and marketing priorities," to the group accused of misappropriating trade secrets. Dkt. No. 5607 at ¶ 84; *see also id.* ¶¶ 44-94, 157.

Were there any question about Bratz, Jade and Moxie as a trade secret, it is answered by Mattel's identification of trade secrets in March 2007, after Mattel filed its AAC. It is also reflected in Mattel's representations prior to the Phase 1 trial. In a letter dated March 2, 2007, Mattel identified documents that it alleged contained the trade secrets that were misappropriated. None identify Bratz, Jade or Moxie. Parker Decl. ¶ 2, Ex. 1. At a hearing before the Discovery Master on March 19, 2007, Mattel claimed that "the trade secrets that we claim to have misappropriated has [sic] occurred in 2005, 2004, and 2006." Parker Decl. Ex. 2 at 12. Any misappropriation of Bratz had to have occurred prior to 2001. FAAC ¶ 93; Dkt. No. 7676 ¶¶ 31-32 (noting that MGA has distributed Bratz since 2001); Trial Tr. at 68:25-69:4 (Mattel's opening statement, noting same).[4]

Only on July 31, 2009, a year after the Phase 1 trial and after the filing of the TAAC did Mattel identify Bratz and Jade as a trade secret in interrogatory responses. And even then, Moxie *was not* identified as a trade secret. Parker Decl. ¶ 4.

---

trade secret at all.
[4] Instead, and consistent with Mattel's claims and identified trade secrets, Mattel was claiming that "MGA lacked an appropriate intellectual infrastructure for a company of its size and it became difficult to manage" and so stole trade secrets that enabled MGA to *market and commercialize* Bratz. *See* AAC ¶¶ 20, 37, 68, 70; SAAC ¶¶ 20, 37, 68, 70; TAAC ¶¶ 27, 44, 75, 84, 88.

OPP. TO MOT. FOR LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

**C.**   **Mattel's Allegations Acknowledge That Mattel Has Known Of Bryant's Role In Bratz And Jade Since At Least 2003 And Mattel Has Known About Moxie Since The Beginning Of 2007.**

Mattel has known since at least 2003 about Bratz and Jade when it claims to have learned that Bryant allegedly wrongfully took the Bratz doll and name to MGA. FAAC ¶ 30-31. It has known since at least that point in time as well that Bryant allegedly took the name Jade because that is one of the names of the Bratz dolls, which hit the market in 2001.  Dkt. No. 7676 ¶¶ 31-32; Trial Tr. at 68:25-69:4. Moreover, discovery produced in advance of the Phase 1 trial established that Jade was one of the names by which Bryant, in 2000, identified one of the original four Bratz dolls. *See, e.g.,* Parker Decl. ¶ 5, Ex. 3.

As for Moxie, it is an entirely separate doll line that MGA marketed after the Court's orders enjoining Bratz.  Mattel does not claim that the doll infringes on any of its products.  And Mattel knew in October 2007—at the latest—that Moxie was a name suggested by Carter Bryant.  Parker Decl. Ex. 4 (Dep. Tr. of Paula Garcia, dated October 10, 2007 at 1068-69)  Mattel has known since at least May 2009 *before the filing of the* TAAC of MGA's intent to place a doll by that name on the market—well before the first Moxie doll hit the shelves in Fall 2009.  Parker Decl. ¶ 7, Exs. 5, 6.  Indeed, Mattel's counsel, Michael Zeller, inspected the Moxie dolls in May 2009 before they hit the market and before the filing of Mattel's TAAC. *See* Parker Decl. ¶ 7, Ex. 5 (stating that MGA provided Mattel with access to the 2009 Moxie line in response to Mattel's request); *see also* Parker Decl. ¶ 7, Ex. 6 (memorializing inspection of Moxie dolls).  Despite this, in July 2009, when Mattel identified Jade and Bratz as trade secrets for the first time, no mention was made of Moxie as a trade secret.  Parker Decl. ¶ 8.

Indeed, not only has there been no mention of Moxie as a trade secret until the present proposed complaint, Moxie was not even identified as a trade secret during the deposition of Mattel's 30(b)(6) witness on trade secrets taken on December 16 and 17, 2009. *See* Deposition Tr. of Keith Storie, dated December 16-

17, 2009.  Nor, in fact, as recent as January 2010, when Mattel supplemented its identification of trade secrets was Moxie mentioned.  Parker Decl. ¶ 8.

In addition, Mattel was certainly aware of its trade secret claim at the time of trial because it convinced Judge Larson that Bryant breached his fiduciary duty because he possessed and disclosed "Proprietary Information," a term found in Bryant's employment agreement with Mattel.  "Proprietary Information" is defined by Mattel in precisely the same way a trade secret is defined in California's Uniform Trade Secret Act.

Judge Larson instructed the jury that Bryant had a fiduciary duty to Mattel because he entered into an Inventions Agreement with Mattel.  Specifically, Judge Larson instructed the jury that Bryant's fiduciary duty "is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep *Proprietary Information confidential*."  Dkt. No. 4115 at 31 (emphasis added).  In turn, and as the jury was instructed, Proprietary Information is defined by Mattel in precisely the same way—using the same words—that a trade secret is defined.  According to Mattel's Inventions Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential from not being generally known to the public or other persons who can obtain economic value from its disclosure or use . . . ."  Paragraph 1(a). According the California's Uniform Trade Secret Act, a trade secret "means information, including formula, pattern, compilation, device, method, technique or process, that: derives independent economic value, actual or potential from not being generally known to the public or other persons who can obtain economic value from its disclosure or use . . . ."  Cal. Civ. Code § 3426.1(d)(1).

**D.     The Third Amended Counterclaims Allege Facts Concerning Omni 808 And IGWT 826, But Mattel Previously Failed To Add Them As Parties And Denied The Necessity Of Doing So.**

As early as December 2008, Mattel knew that MGA obtained funding from

Omni 808.  Neil Kadisha, the principal of Omni 808, called Mattel's CEO, Robert Eckert, and informed him of the transaction.   Deposition Tr. of Neil Kadisha, dated August 28, 2009 at 41-43; Deposition Tr. of Robert Eckert, dated  December 18, 2009 at 683-86.  Indeed, in December 2008, Mattel ran into court on a *ex parte* application seeking the appointment of a receiver because MGA allegedly falsely denied that MGA received credit from Omni 808.  According to Mattel, this transaction raised questions concerning the existence of insider transactions *and* fraud on creditors, including Mattel.  Dkt. No. 4600 (Mattel's Reply ISO Ex Parte for Appointment of Receiver) at 1; *see also* Dkt. No. 4540 (Mattel's Ex Parte App. for Appointment of Receiver).

Mattel continued this theme when it opposed Omni 808's *ex parte* application filed in February 2009 seeking leave to intervene.  Mattel argued that the transaction was suspect, that the transaction was not "arms-length" and that the transaction was intended to shield MGA assets from creditors, such as Mattel.  Dkt. No. 4776 (Mattel Opp. to Omni 808 Ex Parte App. For Leave to Intervene) at 8.

Moreover, at least since April 2009, Mattel has known of the existence of IGWT 826, and Mattel made a deliberate choice not to name it as a party.  Mattel justified the filing of its TAAC based on the claim that there was evidence, produced on March 16, 2009, that established that Mr. Larian, through IGWT 826, provided money to Omni 808.  Dkt. No. 5153 (Mattel Mot. for Leave to File TAAC) at 7-8.  The Motion for Leave to File the TAAC summarized the Wachovia debt acquisition by Omni 808, arguing that it reflected "related-party transactions *structured to conceal the ultimate source of the funds.*"  *Id.* at 5 (emphasis added).  The following persons and entities were argued by Mattel in the motion to have participated in this alleged "concealment" effort:  Omni 808 (*id.* at 5), Vision Capital (*id.* at 6), Lexington Financial Ltd. (*id.*), Fred Mashian (*id.*), and Leon Neman (*id.* at 7).  And IGWT 826 was the entity, or at least one of them, that was being concealed.  *Id.* at 8.

1   But, on April 8, 2009, when Mattel filed its Motion for Leave to File its

2   TAAC, Mattel did not name Omni 808 or IGWT 826 as counter-defendants. *See*

3   Dkt. No. 5153; Dkt. No. 5142 (Proposed TAAC). This was not an oversight. It was

4   a studied choice. MGA pointed out in its opposition to Mattel's Motion for Leave

5   to File its TAAC that these parties—Omni 808 and IGWT 826—had to be added as

6   counter-defendants for Mattel to have a viable claim for Avoidance of Fraudulent

7   Transfer Counterclaim. This was to make the point that adding these parties would

8   result in protracted litigation. Dkt. No. 5272 at 6-7. Mattel argued vociferously in

9   its Reply that this would not be required and would therefore not hamper the case.

10  Dkt. No. 5335 (Reply ISO Motion for Leave to File TAAC) at 2-4.

11                          **ARGUMENT**

12  **I.    THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED ON
13         GROUNDS OF UNDUE DELAY, RESULTING PREJUDICE AND
        BAD FAITH**.

14  **A.    Mattel Has Unduly Delayed In Seeking To Add New Parties And Claims.**

15       There have been 176 depositions covering 270 days since Mattel filed its

16  original complaint in April 2004, and 165 depositions covering 260 days since the

17  filing of its First Amended Answer and Counterclaims in January 2007. Parker

18  Decl ¶ 9. It is far too late to add new parties and new claims to this case—

19  especially where Mattel has known about all of them for years and in some cases

20  since the inception of this suit.

21              **1.    Mattel Has Unduly Delayed Seeking To Add Its Subsidiary
22                   Mattel Mexico As A Counter-Claimant.**

23       This is Mattel's fifth crack at amending its claims. Vargas, Trueba and

24  Machado left the employ of Mattel Servicios (they were not even employed by

25  Mattel Mexico, the new putative counter-claimant) in April 2004, before this

26  lawsuit was filed. Mattel Mexico sought criminal charges against them in April

27  2005 shortly before the one year period of the statute of limitations expired in

28  Mexico. And during the entire time, not a word was spoken about Mattel Mexico

1    being a counter-claimant in this civil action.

2         This was a calculated decision by Mattel.  Almost three years ago, Mattel

3    affirmatively stated that it was "not attempting to sue for damages incurred by its

4    subsidiaries . . . ." *Bryant*, 573 F. Supp. 2d at 1269.  And, as the Court warned at

5    the time "Mattel may not sue for damages incurred by its foreign subsidiaries." *Id.*

6    Mattel's studied decision to go it alone cannot now be undone.

7         The decision to wait is undue delay.  *Jackson v. Bank of Hawaii*, 902 F.2d

8    1385, 1388 (9th Cir. 1990) (eight month delay).  Mattel has, since January 2007,

9    alleged the theft of trade secrets from Mattel Mexico.  It affirmatively knew (and

10   should have known) the facts and theories raised by the amendment at the time of

11   each of its prior pleadings.  Mattel has waited too long.  *See, e.g.,*

12   *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir.

13   2006); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991).

14        Moreover, Mattel's delay is prejudicial.  It will necessitate entirely new

15   discovery directed to this new counter-claimant.  *See AmerisourceBergen Corp.*,

16   465 F.3d at 953 (noting that although the discovery cut-off was eight months off,

17   the parties should not be required to pursue discovery on issues that could have

18   been raised in prior complaint); *see also Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th

19   Cir. 1994) ("expense, delay and wear and tear on individuals and companies count

20   toward prejudice").  MGA has spent significant resources establishing what trade

21   secrets at issue are owned by Mattel, as opposed to being owned by one of Mattel's

22   foreign subsidiaries, and MGA has focused its attention on that more narrow

23   universe of alleged secrets.  Several of the topics of MGA's 30(b)(6) notice of

24   deposition to Mattel in fact, was on the ownership information between Mattel Inc.

25   and its subsidiaries, and considerable effort was spent on these topics.

26        Among other things, discovery will be needed to determine which claims are

27   specific to Mattel Mexico.  (This would be true even if Mattel had not decided to

28   confuse the issue further by referring to Mattel and Mattel Mexico collectively as

1  "Mattel" so that Mattel Mexico shares every one of the claims with Mattel.  FAAC

2  ¶ 10.)  Also, discovery will have to be  taken in the following areas:  discovery into

3  the trade secrets allegedly specific to Mattel Mexico; the specific damages Mattel

4  Mexico suffered as opposed to Mattel; Mattel Mexico's employment agreements,

5  trade secret procedures and market circumstances; and whether or not Mattel

6  Mexico can raise any claims due to the statute of limitations given that the claims

7  regarding trade secret misappropriation occurred almost six years ago.[5]

8  In short, Mattel has had chance after chance to amend its pleadings to add

9  Mattel Mexico.  It made the decision not to do that.  Now it is too late. *Kaplan*, 49

10  F.3d at 1370 ("a district court's discretion over amendments is especially broad

11  where the court has already given a plaintiff one or more opportunities to amend his

12  complaint").

13  **2.    Mattel Has Unduly Delayed Seeking to Add Omni 808 and
       IGWT 826.**

14

15  Mattel has known about Omni 808 and IGWT 826 and their alleged roles in

16  this case since December 2008, for Omni 808, and at least since March 2009 (if not

17  before), for IGWT 826.  Neither the lapse of time nor this Court's decision to allow

18  Mattel discovery concerning the Omni 808 transaction could have been the critical

19  factor in Mattel's decision to add Omni 808 and IGWT 826 as counter-defendants.

20  In fact, the allegations leveled against Omni 808 and IGWT 826 in the TAAC

21  are no different than the claims now made.  Mattel alleges that in an effort to

22  maintain control over MGA's "ill-gotten gains" and Mattel's intellectual property,

23  to frustrate the jury's verdicts and the Court's orders, and to hinder and defraud

24  ─────────────
   [5] This latter inquiry requires discovery into Mattel's assertion that Mattel Mexico
25  "shares an identity of interest with Mattel," FAAC ¶ 10, sufficient to allow Mattel
   Mexico to suddenly raise claims it never has asserted. *See, e.g.*, *In re Syntex Corp.*
26  *Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996) (noting that whether claims for newly
   added plaintiffs relate back depends in part on whether there was a shared identity
27  of interest).  The fact that Mattel has proposed to insert Mattel Mexico as a counter-
   claimant speaks loudly to the fact that there is no shared interest.  And there is a
28  substantial question whether this Court should or could entertain claims that
   concern matters occurring entirely in Mexico.

1    creditors Mr. Larian arranged to have a Wachovia credit facility and agreement

2    purchased ("the Wachovia debt").  FAAC ¶ 99, 107, 113; *see* TAAC ¶¶ 108, 114,

3    115, 117, 118, 119, 138.  Mattel claims the purchase was not an arm's length

4    transaction.  FAAC  ¶¶ 100-01; *see* TAAC ¶ 119. Omni 808 purchased the

5    Wachovia debt using money from others—the source of funds for which are

6    unknown.  FAAC ¶¶ 103, 108; *see* TAAC ¶¶ 117-20.  Initially, Mr. Larian and

7    Omni 808 denied Mr. Larian's involvement and used shell corporations, such as

8    Vision Capital and Lexington Financial and IGWT 826, to hide Mr. Larian's

9    involvement.  FAAC ¶¶ 104-05, 108-09; *see* TAAC ¶ 115, 117, 118.

10         Even the minor factual differences between the FAAC and the TAAC are not

11   the result of newly discovered facts.  For example, the FAAC makes explicit the

12   allegation that there was a side letter that gave Omni 808 MGA's intellectual

13   property rights, which, according to Mattel, was an attempt to encumber the Bratz

14   intellectual property rights and prevent Mattel from obtaining them.  FAAC ¶ 107.

15   However, prior to filing of the TAAC, Mattel represented to the Court that MGA

16   gave Omni 808 MGA's intellectual property rights "to thwart this Court's rulings

17   and the jury's verdict by purporting to encumber Bratz intellectual property."  Dkt.

18   No. 5495 (Mattel's Opp. to MGA Ex Parte App. for Stay) at 6.  In December 2008

19   Mattel sought the appointment of a receiver because "a new creditor, Omni 808

20   International, LLC has taken an [sic] security interest in all or substantially all of

21   MGA's assets."  Dkt. No. 4540 (Mattel Ex Parte App. for Appointment of

22   Receiver) at 5.[6]  Mattel's own pleadings establish that it knew the facts giving rise

23   to its claim as long ago as December 2008.

24   _____

[6] Also, while the FAAC now identifies Neil Kadisha, Leon Neman, Joe Mashian,
25   Arsalan Gozini and Joseph Monian as "friends," details the nature of the payments
     made to fund Omni 808, and details alleged payments to Gozini and Monian,
26   FAAC ¶¶ 99-101, 110-11, these additional allegations are merely flourishes on
     what Mattel has been alleging all along—at least since December 2008.
27   Specifically, that the Omni 808 transaction was a sham, was not an arm's length
     transaction, and was intended to injure Mattel. *See* Dkt. No. 4540 at 5-6; Dkt. No.
28   4600 at 5-7; Dkt. No. 4776 at 1-6; Dkt. No. 5153 at 4-8; Dkt. No. 5495 at 5-6; *see
     also* TAAC ¶ 119.

OPP. TO MOT. FOR LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

### 3. No Further Doe Parties Should Be Permitted.

Whatever the propriety of naming Doe defendants in the first instance, the time has passed where such allegations should be allowed. Mattel "has been given ample time to discover the identity of the Doe defendants" and Mattel should not be allowed in an amended complaint to continue with those allegations. *Serrato v. City of Long Beach*, 2009 WL 1212833 * 13 (C.D. Cal. 2009); *see also Williby v. California*, 276 Fed. Appx. 663, 665 (9th Cir. 2008) (dismissing Doe claims as to complaint filed four years prior and after plaintiff had conducted extensive discovery).

### B. Mattel Has Unduly Delayed In Identifying Its New Trade Secret Claims.

Mattel has known about Bratz and Jade for at least seven years, since 2003 if Mattel's allegations are believed. FAAC ¶ 30. Yet, Mattel did not identify Bratz or Jade as trade secrets at any point until July 2009, when it first identified these two items as trade secrets in interrogatory responses. Indeed, this case went to trial without any claim that Bratz or Jade was a trade secret. Also as noted, Mattel has known that Bryant proposed the name Moxie since at least 2007. And since at least May 2009, Mattel knew that MGA intended to market Moxie Girlz dolls. But until this proposed FAAC, it did not claim Moxie as a trade secret.

This is the very definition of undue delay. *See, e.g., AmerisourceBergen Corp.*, 465 F.3d at 953; *Ponsoldt*, 939 F.2d at 799. Mattel knew about Bratz and Jade from the very start. It has known about Moxie since at least May 2009, and when called on to identify its trade secrets, no mention has been made of Moxie.

Finally, as noted where Mattel has already had prior opportunities to amend, the discretion to deny further amendment is particularly broad. *Kaplan*, 49 F.3d at 1370. And this is the case here. Mattel has had chance after chance to assert that Bratz, Jade and Moxie were trade secrets, but instead of doing so expressly disclaimed that it would. These are precisely the circumstances under which courts have properly denied amendment. *See Kaplan*, 49 F.3d at 1370.

**C.      The Undue Delay Prejudices MGA.**

Where, as here, the undue delay is also prejudicial, amendment should be denied.  *Jackson*, 902 F.2d at 1387-88; *Kaplan*, 49 F.3d at 1370.  Adding new parties and claims means more discovery, and more expense, for MGA.  Indeed, in recognition of the prejudice to MGA of adding parties, Mattel previously expressly disclaimed the necessity to do so.  It should not be permitted to retract that position.

Adding Bratz, Jade and Moxie as trade secrets now that the parties have engaged in discovery practice on all of the Phase 1 issues and nearly all of the Phase 2 trade secret issues will necessitate yet another massive round of discovery regarding this new trade secret claim.  Requiring MGA to engage in this additional discovery is prejudice.  *See AmerisourceBergen Corp.*, 465 F.3d at 953 (noting that although the discovery cut-off was eight months off, the parties should not be required to pursue discovery on issues that could have been raised in prior complaint); *see also Kaplan*, 49 F.3d at 1370 ("expense, delay and wear and tear on individuals and companies count toward prejudice").  Moreover, Bryant left Mattel 10 years ago.  So, in addition to having to re-open discovery on an entirely new claim, the MGA Parties will necessarily be faced with faded memories at best, and hunting down former Mattel employees to determine whether the names Bratz, Jade or Moxie were ever even considered at Mattel, were disclosed (or undisclosed), were bandied about Mattel freely or kept under wraps, were of value to Mattel, who else knew about the names and whether anyone at Mattel considered them to be something of value.

**D.      Mattel's Amendments Are Made In Bad Faith.**

There is also the issue of bad faith in two respects—in identifying Bratz and Jade as trade secrets and in amending the complaint to avoid the legal infirmities in the claims made.

1.   **Mattel Chose Not To Identify Bratz and Jade As Trade Secrets To Obtain The Phase 1 Verdict.**

In Phase 1 of this case, Mattel proceeded to trial on its claims that MGA intentionally interfered with Carter Bryant's contract, aided and abetted his breach of fiduciary duty and aided and abetted his breach of duty of loyalty, and unfair competition.  As a result of these claims, Mattel obtained a damage verdict and injunctions against MGA.  Dkt. No. 4125 (Phase 1(a) verdict); Dkt. No. 4279 (Phase 1(b) verdict); Dkt. No. 4439 (granting constructive trust and injunction as to Bratz and Jade based on Mattel's unfair competition claim); Dkt. No. 4441 (same)

However, had Mattel identified Bratz and Jade as trade secrets prior to the Phase 1 trial, it could not have proceeded to trial on the state law claims that it tried in Phase 1.  Such claims are preempted by the California Uniform Trade Secret Act.  The Act preempts "common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 247, 261 (Cal. App. 2009).  This preemption extends to those claims tried in Phase 1—interference with contract, aiding and abetting a breach of a position of confidence and the unfair competition claims on which the Court based an injunction and the constructive trust that is now the subject of MGA's appeal before the Ninth Circuit.  *Id.* at 261-64; *see also Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025 (N.D. Cal. 2005) (cited favorably by *K.C. Multimedia, Inc.*).

Mattel may claim that its state law claims did not depend on the disclosure and use of Bratz and Jade to MGA, but that is belied by the Phase 1 trial, which turned on the disclosure and use of Bratz and Jade.  Mattel's theory in Phase 1 was that MGA interfered with Bryant's contract and aided and abetted the breach of his duties to Mattel because Bryant disclosed Bratz and Jade to MGA and helped MGA use and develop Bratz.  This is what Mattel said in its SAAC on which it proceeded to trial.  SAAC at ¶¶ 21-36.  It is what Mattel contended at trial.  *See, e.g.*, Trial Tr.

62-65 (Mattel's opening statement—MGA improperly took Bratz, which belonged to Mattel); Trial Tr. 5002 ("It's unfair if a company competes with you by stealing from you.  It's unfair if a company competes with you by taking one of your best designers, while he still works for you, and gives you ideas, effort and helps you get into the market to compete").

Such claims are preempted.  They fall squarely within the definition of trade secret misappropriation under the Uniform Trade Secret Act.  Cal. Civ. Code § 3426.1(b) (defining misappropriation as the disclosure or use of a trade secret acquired under circumstances giving rise to a duty to maintain its secrecy or limits it use); *see also K.C. Multimedia, Inc.*, 90 Cal. Rptr. at 263 (holding that an interference with contract claim was preempted which alleged that defendants caused another to breach his contract by taking trade secrets and caused him to be employed by defendants).

Additionally, Mattel did not parse out of its state law claims those acts that did not relate to the taking and use of Bratz and Jade—which it now claims is a trade secret—and those acts that did not.  Mattel collected on any claim it might now have for the misappropriation of Bratz and Jade.

## 2. <u>Mattel Is Not Entitled To Amend In An Effort To Avoid Properly Raised Defenses.</u>

Mattel's amendment is additionally made in bad faith given the impetus for the proposed amendment.  A number of the proposed amendments seek to avoid MGA's defenses and arguments already developed at great cost to the MGA Parties.  For example, Mattel seeks to add Mattel Mexico to avoid the problem that MGA has developed powerful evidence that Mattel Inc. *does not own many of the purported trade secrets at issue*.  Mattel adds Bratz and Jade as trade secrets despite its prior express disclaimer that the name Bratz was not proprietary, in order directly to address the MGA Parties' powerful argument on appeal to the Ninth Circuit that Mattel cannot own an idea for a name—an argument that at least in part

resulted in the Ninth Circuit staying the very equitable orders Mattel previously obtained by avoiding the preemption issue with its express disclaimer.  Amending a complaint to avoid adverse rulings just to arrive at a theory that might work is bad faith.  *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989).

## II.  IF THE COURT PERMITS ANY AMENDMENT, IT SHOULD NOT PERMIT THE PROPOSED NEW SIXTEENTH COUNTERCLAIM BECAUSE THERE IS NO SUCH THING AS A CLAIM FOR BREACH OF CONSTRUCTIVE TRUST.

The proposed new Sixteenth Counterclaim is futile, *see Townsend v. Univ. of Alaska*, 543 F.3d 478, 485 n.6 (9th Cir. 2008), because there is no such thing as a claim for breach of a constructive trust.[7]  A constructive trust is a remedy.  It is not a "claim[] at all."  *Batt v. City and County of San Francisco*, 65 Cal. Rptr. 3d 716, 728 (Cal. App. 2007); *Glue-Fold, Inc. v. Slautterback Corp.*, 98 Cal. Rptr. 2d 661, 663 n. 3 (Cal. App. 2000)); *see also Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 390 n.1 (S.D.N.Y. 1993) ("Constructive trust is actually a remedy, and as such cannot be breached.").[8]

## CONCLUSION

For all of the foregoing reasons, and in the respects indicated, Mattel's Motion should be denied.

---

[7] As previously noted, MGA is briefing this opposition only under Rule 15 futility as understood in its purest sense—that is, no such theory is legally viable irrespective of the facts alleged.  Accordingly, only the Sixteenth Claim for Relief is addressed herein under the futility standard.  If the Court permits any amendment, then MGA fully intends to attack the numerous other defects in the proposed FAAC when it responds to whatever pleading Mattel is permitted to file.

[8] Nor does a constructive trust remedy create the type of relationship that Mattel imagines.  The MGA Parties deny that there is any basis for Mattel's claim that they have acted wrongfully, but it nonetheless bears emphasis that a constructive trust does not require MGA, Larian or any others "to act as faithful trustees" with respect to Mattel.  FAAC ¶ 233.  A constructive trust is a remedy, and does not create or establish a fiduciary relationship.  *Del Costello v. State of California*, 185 Cal. Rptr. 582, 586 (Cal. App. 1982); *see also* RESTATEMENT RESTITUTION § 160 cmt. a (1937) ("A constructive trust, unlike an express trust, is not a fiduciary relation . . . .").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:     April 5, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE
LLP


By: */s/ Annette L. Hurst*
ANNETTE L. HURST
Attorneys for MGA Parties

- 21 -