QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS**<br><br>Date:    TBD<br>Time:   TBD<br>Place:   Courtroom 9D<br><br>Discovery Cut-off:  TBD<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

00505.07209/3412631.1

CASE NO. CV 04-9049 DOC (RNBx)

**MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT .................................................................................................... 1

I.   MGA SHOULD BE ORDERED TO PRODUCE DOCUMENTS RELATED TO ITS INTERNAL TRADE SECRET INVESTIGATIONS ............................................................................... 1

    A.   MGA Ignores Entire Categories of Documents Mattel Seeks ................ 1

    B.   MGA Has Not Met Its Burden Of Establishing Privilege Over "Notes, Reports, and Memoranda" Prepared by Counsel ....................... 2

        1.   MGA Has Not Established Attorney-Client Privilege ................. 3

        2.   MGA Has Not Established Any Work Product Protection. ......... 5

II.  MGA SHOULD BE BARRED FROM RELYING ON ITS INVESTIGATION UNLESS IT PRODUCES THE UNDERLYING DOCUMENTS ........................................................................................ 9

CONCLUSION ............................................................................................... 10

505.07209/3412631.1

-i-   CASE NO. CV 04-9049 DOC (RNBx)

**MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS**

# TABLE OF AUTHORITIES

**Page**

## Cases

Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,
　881 F.2d 1486 (9th Cir. 1988) .................................................................. 3, 5

Baker v. General Motors Corp.,
　209 F.3d 1051 (8th Cir. 2000) ....................................................................... 5

Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.,
　553 F. Supp. 45 (S.D.N.Y. 1982) .................................................................. 8

Doan v. Astrue,
　2009 WL 3246776 (S.D. Cal. 2009) .............................................................. 2

E.E.O.C. v. Safeway Store, Inc.,
　2002 WL 31947153 (N.D. Cal. 2002) ........................................................ 5, 6

In re Grand Jury Subpoena Dated December 19, 1978
　Issued to General Counsel,
　81 F.R.D. 691 (S.D.N.Y. 1979) ..................................................................... 8

Griffith v. Davis,
　161 F.R.D. 687 (C.D. Cal. 1995) ................................................................... 4

Jackson v. County of Sacramento,
　175 F.R.D. 653 (E.D. Cal. 1997) ................................................................. 10

Synopsys, Inc. v. Ricoh Co.,
　2006 WL 2479109 (N.D. Cal. Aug. 28, 2006) ............................................... 4

U.S. v. Martin,
　278 F.3d 988 (9th Cir. 2002) ......................................................................... 4

United States v. Bergonzi,
　216 F.R.D. 487 (N.D. Cal. 2003) ................................................................... 4

United States v. Sawyer,
　878 F. Supp. 295 (D. Mass. 1995) ................................................................. 4

Upjohn Co. v. United States,
　449 U.S. 383 (1981) ....................................................................................... 3

505.07209/3412631.1

-ii-

CASE NO. CV 04-9049 DOC (RNBx)

**MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA claims that it conducted internal investigations to determine whether any MGA employees took or obtained Mattel's trade secret information. MGA also admits that it "gathered information" and generated "many" documents in connection with its investigations. MGA does not dispute the relevance of those documents to Mattel's claims for trade secret theft and RICO violations. Yet MGA admits that it has not produced any of those documents to Mattel. Rather, MGA is withholding those documents based on a blanket and conclusory assertion that every page of every document that was generated during or discovered through the investigations is protected by both the attorney-client and attorney work product privileges. That cannot be correct.

Documents that MGA discovered during the investigations, such as Mattel's trade secret documents, and other factual information concerning MGA's trade secret theft are neither communications between MGA and its counsel nor work product prepared by MGA's lawyers. Those documents are not privileged and must be produced. Further, even if portions of the documents MGA generated during its investigations reflect attorney work product, Mattel's compelling need for evidence concerning MGA's trade secret theft and its inability to obtain such evidence elsewhere justifies the disclosure of, at a minimum, any fact-based work product. MGA should be ordered to produce all documents related to its trade secret investigations either to Mattel or to the Court for an *in camera* inspection.

## Argument

### I. MGA SHOULD BE ORDERED TO PRODUCE DOCUMENTS RELATED TO ITS INTERNAL TRADE SECRET INVESTIGATIONS

#### A. MGA Ignores Entire Categories of Documents Mattel Seeks

MGA does not dispute that, as the proponent of the attorney-client and work product privileges, it has the burden of demonstrating that the privileges apply.

MGA has not met its burden of establishing that every single document related to its internal trade secret investigations is privileged. In fact, MGA does not even address entire categories of documents that Mattel seeks, including documents describing the mechanics of MGA's investigations or the factual findings of the investigations, or any Mattel trade secret documents that were discovered during the investigations. Any such documents are *not* privileged. Indeed, MGA's counsel has acknowledged that "if an investigation found Mattel documents on [MGA's] system, [MGA] would have to produce those, absolutely true, don't disagree with that at all."[1] MGA also does not dispute that factual information – even if it was discovered during the course of an attorney-led investigation in anticipation of trial – is discoverable. See, e.g., Doan v. Astrue, 2009 WL 3246776 at *3 (S.D. Cal. 2009) ("factual information is discoverable even when the information was obtained through the attorney's own investigation").[2]

Accordingly, MGA should be ordered to produce to Mattel all documents related to MGA's internal trade secret investigations that contain factual information concerning MGA's theft of Mattel's trade secrets, including any of Mattel's trade secret documents that were discovered during the investigation.

### B. MGA Has Not Met Its Burden Of Establishing Privilege Over "Notes, Reports, and Memoranda" Prepared by Counsel

The only documents that MGA chooses to address are "notes" taken and "memoranda" and "reports" purportedly prepared by MGA's litigation counsel. Even as to those documents, MGA has not come close to establishing that they are

---

[1] Dep. of Ronald Brawer, dated March 24, 2010 ("Brawer Dep.") at 100:8-11.
[2] At the deposition of MGA's 30(b)(6) witness on trade secret issues, MGA refused to allow its witness to testify about MGA's internal investigation by claiming such questions invaded the attorney-client and attorney work product privileges. While noting that whether and to what extent the investigation is privileged was pending before the Court, the Discovery Master overruled MGA's objections on the ground that "the investigation is a proper area of inquiry, to see what facts were . . . gleaned from the investigation," and made a tentative ruling that "the privilege [does not extend] to . . . the entire investigation." Brawer Dep., at 110:15-111:25. MGA has not objected to or appealed that ruling.

505.07209/3412631.1

-2-   CASE NO. CV 04-9049 DOC (RNBx)
MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS

privileged. Indeed, MGA devotes only five lines of its Opposition to discussing its internal investigations and the "notes," "memoranda," and "reports" that resulted. (Opp. at 2). MGA then devotes several pages of its brief to arguing why Mattel does not need those documents because Mattel purportedly has already obtained equivalent evidence elsewhere (which, as discussed below, is incorrect). MGA has it backwards. MGA's burden is to first establish that the indisputably relevant information Mattel seeks is privileged. Only if MGA meets that burden does Mattel's need to obtain such information despite privilege become relevant. As shown below, MGA has not met its burden of establishing that either the attorney-client or work product privileges applies to any document MGA is withholding.

### 1. MGA Has Not Established Attorney-Client Privilege

MGA argues that because there is no "unavailability exception" to the attorney-client privilege, Mattel is not entitled to "memoranda" prepared by MGA's attorneys. (Opp. at 7). Mattel is not relying on an "unavailability" exception to the attorney-client privilege. Rather, Mattel seeks documents that are not protected by privilege in the first place because they are not communications between MGA and its counsel for the purpose of seeking or providing legal advice. Upjohn Co. v. United States, 449 U.S. 383, 395 (1981) (the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").[3]

The cursory information MGA provides is insufficient to establish that any of the notes and memoranda MGA claims were prepared during its investigations involve communications between MGA and its counsel for the purpose of obtaining or providing legal advice. MGA does not explain, for example, how many

---

[3] Because Mattel is not relying on a purported "unavailability exception" to the attorney-client privilege, MGA's reliance on Admiral Insurance is misplaced. That case declined to extend the unavailability exception that applies to work product protection to the attorney-client privilege. Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1988). Mattel never claimed there was such an exception for the attorney-client privilege or that it applies here.

1  documents were generated; who authored them; when the documents were prepared;
2  what communications they contain; or to whom the documents were distributed.
3  MGA also does not provide any information concerning the mechanics of its
4  investigations, such as when those investigations occurred, what they entailed, or
5  who participated in them. Nor is any of that information contained in the
6  declaration of William Molinski, one of MGA's current lawyers, which is the only
7  evidence MGA submits to support its blanket claims of privilege.[4]

8      Rather than provide any foundational information that would establish that
9  the privilege applies, MGA just assumes that the privilege applies, arguing that
10 ***"[g]iven that the attorney-client privilege applies***, Mattel is not entitled" to the
11 documents it seeks. (Opp. at 7, emphasis added). That conclusory assertion is
12 insufficient to establish the applicability of the attorney-client privilege. See U.S. v.
13 Martin, 278 F.3d 988, 1000 (9th Cir. 2002) ("Blanket assertions are 'extremely
14 disfavored.'") (citation omitted). Because MGA has failed to meet its burden of

---

[4] The only specific information that MGA provides concerning its investigations is that Brisbois and Castilla were interviewed and that they had their personal counsel present at such interviews. (Opp. at 7, n. 1). MGA argues that the presence of those witnesses' personal lawyers "does not waive the privilege." (Id.) Again, MGA has placed the cart before the horse, as "for the common interest privilege to apply, [the proponent] must first demonstrate that the attorney-client privilege is applicable" – something that MGA has not done. Synopsys, Inc. v. Ricoh Co., 2006 WL 2479109, at *1 (N.D. Cal. Aug. 28, 2006). Moreover, even if an underlying privilege had been shown, MGA's conclusory common interest showing is clearly inadequate, including because MGA has done nothing to show that Castilla and Brisbois had agreed with MGA to pursue, or otherwise shared, an alleged common interest, or that Castilla and Brisbois participated in the interviews to further that alleged common interest. United States v. Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (common interest privilege applies only to communications designed to further a matter of common interest). Indeed, absent a showing that the common interest privilege applies, the presence of Brisbois' and Castilla's personal counsel at the interviews would destroy any privilege that might otherwise protect communications between MGA's counsel and those employees. See Griffith v. Davis, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (no joint defense privilege where employee gave interview primarily for purpose of company's investigation of incident, and not "primarily for the purpose of obtaining legal advice . . . [or] furthering a common defense" with his employer); United States v. Sawyer, 878 F. Supp. 295, 297 (D. Mass. 1995) (no common interest where company's attorneys "met with the defendant [employee] not to promote a joint defense, but as part of an internal investigation to discover facts relevant to the defendant's expenditures," and defendant did not "meet with [company's] in-house counsel to further his 'joint defense,' but rather to fulfill his duties and obligations to report to his employer").

505.07209/3412631.1

-4-     CASE NO. CV 04-9049 DOC (RNBx)
**MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS**

establishing that the notes, memoranda or reports generated during its internal trade secret investigation are privileged, MGA should be ordered to produce those documents at least to the Court for *in camera* inspection. See <u>E.E.O.C. v. Safeway Store, Inc.</u>, 2002 WL 31947153 at *3-4 (N.D. Cal. 2002) (where party failed to meet its burden of demonstrating that documents were privileged through affidavits or other evidence, court conducted *in camera* review and assessed privilege "based on the face of the document itself").

### 2. **<u>MGA Has Not Established Any Work Product Protection.</u>**

MGA also fails to establish that the notes, reports and memoranda related to its internal trade secret investigations are protected work product. Again, MGA has failed to provide any specific information that would support a finding of work product protection over any specific document. MGA also does not dispute, or even address, Mattel's authority holding that even witness interview memoranda are not absolutely protected from disclosure. See <u>E.E.O.C.</u>, 2002 WL 31947153 at *7 (ordering disclosure of report containing "summaries of witness interviews" prepared by counsel where even though "some degree of opinion or mental impression arguably inheres in such summaries," the report was "largely a factual narrative" and the information in the report "cannot be obtained from any other source").[5] Indeed, it is well-established that work product materials may be ordered disclosed upon a showing of a "substantial need *or* inability to obtain the equivalent without undue hardship." <u>Admiral Ins.</u>, 881 F.2d at 1494 (emphasis added). Mattel has made both showings.

---

[5] MGA cites to <u>Baker v. General Motors Corp.</u>, 209 F.3d 1051 (8th Cir. 2000), to argue that an attorney's witness interview notes are opinion, not fact-based, work product that is subject to heightened protections. As <u>E.E.O.C.</u> demonstrates, however, the level of work product protection that applies to any particular "witness interview notes" is a fact-driven determination that should be made by a court upon an *in camera* inspection; even witness summaries that contain some degree of "opinion or mental impression" may be discoverable upon a sufficient showing of need. See <u>E.E.O.C.</u>, 2002 WL 31947153 at *7 (compelling disclosure after conducting *in camera* review of the subject documents).

1    First, MGA does not dispute that factual information uncovered during
2 MGA's internal trade secret investigations goes to the heart of Mattel's Phase 2
3 trade secret theft and RICO claims.  Mattel is not on a fishing expedition here.
4 Mattel has a substantial need for evidence concerning whether MGA's employees
5 stole Mattel trade secret documents, whether they did so at the direction of others at
6 MGA, and whether they acted with the requisite state of mind.  The centrality of
7 such information strongly supports the disclosure of documents concerning MGA's
8 trade secret investigation.  See E.E.O.C., 2002 WL 31947153 at *7 (compelling
9 defendant's internal investigative report where such report contained evidence that
10 "goes to [defendant's] state of mind, an element directly relevant to" plaintiff's
11 claim, and defendant "has not identified any substitute for this information").

12   Second, Mattel has demonstrated that it cannot obtain the equivalent of
13 MGA's trade secret investigation documents, including witness statements,
14 elsewhere without undue hardship.  Mattel showed in its moving papers that its
15 efforts to obtain discovery from three of the principal participants in MGA's trade
16 secret theft – Gustavo Machado, Mariana Trueba and Jorge Castilla – have been
17 stymied by assertions of the Fifth Amendment, among other reasons.  While
18 admitting that Trueba "has refused to answer any questions regarding MGA's
19 alleged plot" (Opp. at 9), MGA tries to dispute that Machado and Castilla have been
20 effectively unavailable to Mattel.  As for Machado, MGA notes that he is set to be
21 deposed in April, for the third time, and that *this time*, he will provide full and
22 complete testimony without invoking the Fifth Amendment.  (Opp. at 3).  But
23 Machado has already been deposed once after the Court explicitly found he had no
24 Fifth Amendment rights, yet he still refused to testify.  At this point, any claim that
25 Machado will provide full, complete deposition testimony is entitled to no weight.

26   As for Castilla, while MGA admits that he has refused to provide testimony
27 concerning "actions *he* took" (Opp. at 4, emphasis in original), it argues that
28 Castilla's testimony was nonetheless complete and adequate because Castilla

1 exonerated MGA from any knowledge of his misconduct. (Opp. at 4). But even taking Castilla's assertions at face value, they only underscore that Castilla is the sole source of information about his theft of Mattel's trade secrets, and that Mattel cannot, and has not, obtained evidence concerning his thefts from other witnesses. MGA also fails to note that Castilla provided this supposedly exculpatory testimony only in response to questions posed by MGA's counsel. When Mattel asked him questions regarding his theft and use of Mattel's trade secrets, he repeatedly invoked the Fifth Amendment. Accordingly, Mattel has indeed been unable to obtain from Trueba, Machado and Castilla evidence that is equivalent to statements they gave during MGA's internal investigations.

MGA also argues that even if those key witnesses are unavailable, Mattel has been able to obtain equivalent evidence elsewhere, including from MGA's and MGA Mexico's 30(b)(6) witnesses. That is not so. As the Court is well aware, Mattel has deposed MGA Mexico's 30(b)(6) witness Louis Small on four occasions to obtain answers to such basic questions as what documents were taken by Machado and Trueba, whether and how they were used, and whether they were seized in a search of MGA Mexico's offices by Mexican authorities. Mr. Small was unable to respond to those questions.[6] Indeed, in recognition of the inadequacy of Mr. Small's testimony, on March 31 the Court Ordered the parties to show cause why MGA Mexico should not be required to produce another 30(b)(6) witness for deposition.[7] Nor was the information that Mr. Small could not provide available

---

[6] Even at his most recent deposition, Mr. Small still could not provide answers to any of these questions, in large part because he had not talked to Machado and Trueba. Louis Small Depo. Tr., dated March 17, 2010, at 1492:8-10. Mr. Small also could not identify a single document seized in the search of MGA Mexico's office by the Mexican authorities and could not explain how the Mattel-authored documents got there or how they were used once there. Id. at 1581:25-1582:5; 1584:8-1585:10. In fact, Mr. Small testified that he was aware of *no efforts* by MGA to determine whether it had any documents showing use of the stolen Mattel trade secrets. Id. at 1591:11-17.

[7] See Order re Ex Parte Application to Strike and Remove From the Docket the Exhibits to Mattel's Proposed Fourth Amended Answer and Counterclaims and for Sanctions, dated March 31, 2010, at 2.

from other sources. MGA notes that Mattel has deposed Larian and Kuemmerle, but omits that both disclaimed any knowledge of what specific documents were taken or how they were used.

The recent deposition of MGA's 30(b)(6) witness, Ron Brawer, was equally unproductive. As with Mr. Small, Brawer was ill-prepared and purported to have little or no information concerning the issues most central to the thefts. Prior to his deposition, Brawer did not even attempt to contact Castilla to obtain relevant information.[8] Brawer also was unqualified or ill-prepared to testify on behalf of MGA as to search methodologies employed by MGA to find Mattel documents; whether appropriate MGA hard drive images had been searched for Mattel documents; and whether appropriate MGA hard drives had even been imaged.[9] Brawer also refused to respond to questions concerning MGA's communications with Machado, Trueba and other witnesses related to MGA's trade secret theft, and to questions concerning trade secrets stolen by Bryant, Machado, Trueba, Vargas, Brisbois, Salazar, Cabrera and Morales.[10] Further, MGA refused to designate a 30(b)(6) witness regarding MGA's inventory system and changes made to it following Castilla's theft, and Brawer did not testify to those issues.[11]

Accordingly, MGA's argument that Mattel has no need for documents related to MGA's internal trade secret investigation because Mattel has obtained equivalent information elsewhere is without basis and belied by the record. Rather, Mattel's compelling need for such evidence, and its inability to obtain it elsewhere, strongly counsel in favor of requiring MGA to produce any fact-based work product resulting from MGA's internal trade secret investigations.[12]

---

[8] Brawer Dep., at 24:7-21.
[9] Brawer Dep., at 63:16-64:24; 121:10-23; 129:2-17; 130:7-13; 134:24-135:2; 139:4-22; 140:1-9.
[10] Brawer Dep., at 25:6-22; 45:16-47:3; 151:22-152:2.
[11] March 21, 2010 letter from A. Hurst to M. Zeller refusing to designate a witness for topic 12(e).
[12] MGA fails to persuasively distinguish Mattel's authority holding that the unavailability of witness testimony counsels in favor of compelling the production

## II. MGA SHOULD BE BARRED FROM RELYING ON ITS INVESTIGATION UNLESS IT PRODUCES THE UNDERLYING DOCUMENTS

MGA does not address Mattel's argument that MGA's history of asserting that it will *not* rely on its lawyers' advice, but then doing just that, supports compelling the disclosure of all documents related to MGA's internal trade secret investigation. (Mot. at 9). Given MGA's history of abusing its purported reliance on "advice of counsel," and barring a binding Order precluding MGA from relying on its "internal investigations" at trial, Mattel must be able to review documents related to MGA's internal investigations so it will be able to rebut MGA's assertions concerning its purported good faith reliance on the results of the investigations.

Indeed, MGA is already laying the foundation to repeat its practice of preventing Mattel from taking discovery into its counsel's activities and then later sandbagging Mattel with its purported reliance on those activities. When MGA's counsel was asked directly by the Discovery Master whether MGA would not "use the investigation [at trial in] any way, shape or form," MGA's counsel hemmed and hawed and responded that "if we ultimately waive that investigation and use it at trial, we understand that opens the door to all this discovery" concerning the investigation.[13] Likewise, in its opposition, MGA states only that "the MGA Parties *are not relying* on any internal investigation," but does not commit that it will not do so in the future. (Opp. at 1, emphasis added). By the time of trial, it will be too late

---

of work product containing prior witness statements. See Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc., 553 F.Supp. 45, 51 (S.D.N.Y. 1982) ("[T]he extraordinary difficulties that [plaintiff] has encountered in trying to collect information about the findings of the investigation make clear that [plaintiff] cannot obtain the information it seeks except by gaining access to the work product material."); In re Grand Jury Subpoena Dated December 19, 1978 Issued to General Counsel, 81 F.R.D. 691, 695 (S.D.N.Y. 1979) (compelling production of work product information in face of "evidentiary barrier" created by defendants' witnesses). The witnesses who actually stole Mattel's trade secrets have refused to provide testimony concerning their theft, and now MGA has invoked purported privileges to further stifle Mattel's attempts at discovery. As in the cases Mattel has cited, discovery of fact-based work product is called for.

[13] Brawer Dep., at 97:8-16.

505.07209/3412631.1

-9-   CASE NO. CV 04-9049 DOC (RNBx)

**MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO MGA'S INTERNAL TRADE SECRET INVESTIGATIONS**

for Mattel to take meaningful discovery into MGA's trade secret investigation, and Mattel will be severely prejudiced.

Further, MGA has already announced its intent to rely on expert testimony to establish that its employees did not steal Mattel's trade secrets.[14] If Mattel is kept in the dark about MGA's trade secret investigations, then Mattel will be unable to effectively cross-examine MGA's expert or rebut MGA's reliance on such an expert. See Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (compelling disclosure of "all documents relating to any internal investigation of the alleged incident" where such information "will allow [plaintiff] to ascertain defendant's version of the facts, identify witnesses, and potentially impeach the [defendant's] trial testimony"). The risk of abuse is especially acute here. If the prior internal investigations in fact uncovered evidence of trade secret thefts, then MGA can simply steer its experts away from those locations and have them only look elsewhere, in places where MGA knows such evidence does not exist. There is the real possibility that neither Mattel nor the Court would ever learn that that occurred without knowing where the evidence was in the first place. Accordingly, absent an order precluding MGA from relying in "any way, shape or form" at trial on any internal trade secret investigation, including one conducted by any experts, Mattel's need for discovery of such information is critical.

## Conclusion

For the foregoing reasons, Mattel's motion should be granted.

DATED: April 6, 2010         QUINN EMANUEL URQUHART &
                             SULLIVAN, LLP


                             By  /s/ Michael T. Zeller
                                 Michael T. Zeller
                                 Attorneys for Mattel, Inc.

---

[14]   Brawer Dep., at 95:3-96:9.