MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**EX PARTE APPLICATION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY CONCERNING MARKETING OF BRATZ 2010 AND MONSTER HIGH** |

# EX PARTE APPLICATION

Per the parties' discussion and agreement on the record at the deposition of Mr. Kilpin, MGA hereby files this Ex Parte Application seeking an order compelling Mattel to produce documents and testimony regarding the following: (1) the brand positioning or brand attributes relevant to Mattel's development of any Bratz product ("Mattel Bratz 2010"); (2) any discussion of any potential effect of Mattel Bratz 2010 or Monster High dolls on the sales of any other Mattel products.

The Mattel Bratz 2010 documents and testimony are relevant to Mattel's damages assertions that it (a) lost an opportunity to market Bratz that it would have otherwise exploited when Carter Bryant failed to disclose that opportunity to Mattel; and (b) that Bratz products unlawfully took sales from dozens or hundreds of Mattel's other products. The Monster High documents and testimony are likewise relevant to the issue of "cannibalization"—that is, the expected effect of one doll product line on other product lines—which goes directly to the issue of whether Bratz took sales from Mattel's products. Because Mattel apparently intends to claim that every sale of a Bratz product deprived Mattel of a profitable sale of another product, Mattel's understanding of the marketplace and its own efforts and consideration of how to prevent cannibalization from the introduction of new products is directly pertinent to the question of whether the introduction of Bratz had any effect on sales of Barbie dolls. In particular, discussion of age segmentation and cannibalization is directly pertinent to the question whether Bratz in fact took sales from Mattel's products, or whether it instead expanded the market to an age group of older girls that Mattel was no longer serving when Bratz was introduced.[1]

---

[1] As agreed by the parties and ordered by the Discovery Master, MGA gave notice of this Application to counsel for Mattel, Inc., Marshall Searcy, of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017) on the record of the Kilpin deposition.

## FACTUAL BACKGROUND

In Interrogatory No. 8 served during Phase 2, MGA requested that Mattel identify all products for which sales were harmed by any alleged unlawful act or omission of MGA as alleged in Mattel's Counterclaims. After multiple motions to compel, Mattel finally responded to this interrogatory with a lengthy litany of claims of harm. The thousands of pages of documents incorporated by reference into the interrogatory response include brand and product line profit and loss statements identifying literally hundreds of products sold by Mattel since 2001. The brands identified as MATTEL HARMED PRODUCTS include virtually all Mattel products marketed since 2001 except for the Fisher-Price brand products, including those sold under BARBIE, MY SCENE, BERRY BEST FRIENDS, SWEET SISTERS, SOFT FRIEND, BEAUTY CUTIES, CABBAGE PATCH, COROLLE, DISNEY licensed products including DISNEY PRINCESSES, LITTLE MERMAID, POOH FOR GIRLS, DIVA STARZ, DOGGY DAY CARE, ELLO, FLAVAS, HANNA MONTANAH, POLLY POCKET, HIGH SCHOOL MUSICAL, LITTLE MOMMY, MATTEL LARGE DOLLS, WHAT'S HER FACE, POUND PUPPIES, WEE 3 FRIENDS, WINX, DISNEY BOYS licensed brands including action figures, HOT WHEELS, MATCHBOX, POWER RANGERS, SPONGEBOB, and TYCO ELECTRIC RACING. Some two hundred products are found on the list compiled from the documents identified in this interrogatory response.

Mr. Kilpin testified in his deposition that Mattel's MY SCENE dolls were targeted to an older girl segment than BARBIE dolls and that MY SCENE is therefore a "flanker" brand to BARBIE. 4/8/10 Kilpin Rough at 424:10-425:6. Mr. Kilpin admitted that Bratz, like MY SCENE, also was targeted to older girls. *Id.* at 423:4-10. Mr. Kilpin also testified that one of the brand attributes of Bratz was "edgy," that the only "edgy" doll ever marketed by Mattel was FLAVAS, that

FLAVAS failed because it was "too edgy," and that Mattel has never introduced a product to counter-program against Barbie.  4/8/10 Rough at 424:3-9; 425:7-426:9.

## ARGUMENT

Mattel's interrogatory responses indicate that it is claiming damages spanning a nearly ten year period across almost its entire line of products sold from 2001 through 2010.  Mattel claimed damages of nearly $2B in Phase 1 of this case.  Although it has not yet put a number on its Phase 2 claims, it seems apparent that Mattel is gearing up to argue that every sale of every Bratz product by MGA or any of its licensees deprived Mattel of a sale of some other product.  The likely scope of such a damages claims is even larger than Phase 1.

Mattel's view of the challenges and opportunities inherent in marketing its own version of Bratz branded products relative to its other products, and to Barbie in particular, is directly relevant to whether it would have pursued that opportunity at an earlier time given a potential fear of cannibalization or otherwise inconsistent brand messages.  Mr. Kilpin's testimony strongly suggests that Mattel would never have marketed Bratz because its "edgy" attributes were inconsistent with the BARBIE brand positioning.  If Mattel has marketing documents admitting that it struggled with positioning Bratz 2010 relative to its other brands, then such documents would constitute powerful evidence undercutting its lost opportunity theory.  The passage of time is of no moment.  As Mr. Kilpin himself testified in his declaration previously submitted to this Court dated May 13, 2009, any different set of people can consistently manage a well-articulated brand.  Dkt. #5496 (5/13/09 Kilpin Decl.) ¶11 ("Properly developed brand architecture can and should be managed by any competent team of marketing professionals").

Similarly, discussion of age segmentation as a strategy with respect to Bratz 2010 or Monster High, will be directly pertinent to the question of cannibalization and Mattel's understanding of how the market for fashion dolls works.  This bears directly on the effect, if any, that Bratz in fact had on Mattel's products.

1  Dated:     April 8, 2010          ANNETTE L. HURST
2                                    Orrick, Herrington & Sutcliffe LLP
3
4                                    By:     /s/ *Annette L. Hurst*
                                             ANNETTE L. HURST
5                                            Attorneys for MGA Parties

- 4 -