# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)            Date: April 10, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

**DOCKET ENTRY**
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                                               Date:_____ Deputy Clerk: _____

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Nancy Boehme                                     Not Present
Courtroom Clerk                                 Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS

       Before the Court is Mattel, Inc. ("Mattel")'s Motion for Leave to File a Fourth Amended Answer and Counterclaims (the "Motion"). Also before the Court is MGA Entertainment, Inc. and Isaac Larian (collectively the "MGA Parties") *ex parte* Application to Strike and Remove from the Docket the Exhibits to Mattel's Proposed Fourth Amended Answer and Counterclaims and for Sanctions (the "Application"). The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; Local R. 7-15. After considering the moving and opposing papers,[1] and for the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART the Motion and thereby ORDERS that Mattel shall have leave to file its Fourth Amended Answer and Counterclaims in compliance with this Court's Order on or before 5:00 p.m. on April 12, 2010. The Court further

---

     [1] As a result of the parties' predictably outstanding briefing on the Motion, it is unnecessary to consider reply and/or sur-reply briefs.

MINUTES FORM 11 DOC                                   Initials of Deputy Clerk   nkb
CIVIL - GEN                                                       Page 1 of 11

ORDERS that the exhibits attached to Mattel's Fourth Amended Answer and Counterclaims be filed under seal, that Docket 7676 remain under seal, and that the MGA Parties' *ex parte* Application be STRICKEN AS MOOT.

## I. Background

Pursuant to the Court's March 2, 2010 Amended Order and the brief extension granted thereto, Mattel filed the instant Motion, which attached the proposed FAAC, on March 24, 2010. Mattel first moved for leave to file a proposed Fourth Amended Answer and Counterclaims on August 17, 2009, while this lawsuit was still pending before the Honorable Stephen G. Larson. Judge Larson declined to rule on Mattel's motion, in light of the impending transfer of the lawsuit to this Court's docket, and took Mattel's motion off-calendar. Mattel orally alerted the Court to the Motion following the lawsuit's transfer and the Court instructed Mattel to re-submit a final, revised Motion after the completion of discovery.

The proposed FAAC makes a number of changes to the operative TAAC, which was filed on May 22, 2009:

First, the proposed FAAC names Mattel de Mexico S.A. de CV ("Mattel Mexico") as a plaintiff. *See* Proposed FAAC at 30.

Second, the proposed FAAC names Omni 808, LLC and IGWT 826 as counter-defendants to the FAAC's second counter-claim for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* Proposed FAAC at 71. The second counter-claim alleges, in relevant part, that proposed counter-defendant Omni 808, LLC "knowing that the Criminal Enterprise was engaged in a scheme to aid MGA in unfairly and wrongfully competing with Mattel, and knowing that the scheme was being furthered by the commission of two or more predicate acts in a ten year period, agreed to assist, advance and further that Enterprise's unlawful objectives including by participating in and structuring the purchase of the Wachovia debt so as to conceal the origin of the funds, thwart the Court's Orders and the jury verdicts, and secure priority over Mattel and burden its rights to Bratz."

Third, the proposed FAAC asserts a claim for breach of constructive trust predicated on MGA Entertainment, Inc. and Isaac Larian (collectively the "MGA Parties") failure to comply with the terms of the constructive trust imposed by Judge Larson following the Phase 1 jury trial. The counter-claim for breach of constructive trust is brought against the MGA Parties and, more specifically, alleges that the MGA Parties "wrongfully permitted and intentionally caused Bratz to lose value" and thereby "failed to act as faithful trustees."

Fourth, the proposed FAAC asserts a claim for prohibited distributions under Cal. Corp. Code §§ 501, 506. Cal. Corp. Code 501 provides that:

> Neither a corporation nor any of its subsidiaries shall make any distribution to the corporation's shareholders [] if the corporation or the subsidiary making the distribution is, or as a result thereof would be, likely to be unable to meet its liabilities (except those whose payment is otherwise adequately provided for) as they mature.

Cal. Corp. Code 506 provides that any shareholder receiving a prohibited distribution may be liable to the corporation for the amount of the distribution and that suit may be brought "in the name of the corporation to enforce the liability (1) to creditors . . . or (2) to shareholders . . . ."

The counter-claim for prohibited distributions is brought derivatively *ex rel.* all MGA Creditors against Larian.

Fifth, the proposed FAAC adds MGA de Mexico and Gustavo Machado as defendants to the first counterclaim for violation of RICO,[2] alleging predicate acts of: (1) mail fraud based on an alleged scheme to defraud Mattel of its "rights to receive honest services from its employees," including the alleged theft of Mattel trade secrets nd property, as well as obstruction of the judicial process; (2) wire fraud based on an alleged scheme to defraud Mattel of its "rights to receive honest services from its employees," including the alleged theft of Mattel trade secrets and property, as well as obstruction of the judicial process; (3) spoliation and concealment of evidence based on the alteration, destruction, mutilation or concealment of more than one record with intent to impair the object's integrity or availability for use in an official proceeding; (4) obstruction of justice/influencing or injuring officer or juror based on purported acts of perjury made in an attempt to obstruct justice; (5) interstate and foreign travel in aid of racketeering enterprises based on purports acts of commercial bribery; and (6) criminal copyright infringement based on the purported infringement of Mattel's copyrights.[3]

Sixth, the proposed FAAC adds Gustavo Machado as a defendant to its counter-claim for breach of contract, which previously named only Carter Bryant. In relevant part, the proposed FAAC alleges that Machado breached his contractual obligation to Mattel to "not divulge any company

---

[2] The first cause of action already named as defendants Isaac Larian, MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Carter Bryant.

[3] Not all of these allegations are unique to the FAAC. In an attempt to distinguish those allegations that were unique to the FAAC, on April 6, 2010, the Court ordered Mattel to produce a comparison of the FAAC to TAAC, preferably in "red-line" form. The comparison delivered to the Court did not assist the Court's analysis, as the manner in which the TAAC was modified – *i.e.*, changes in the location of certain allegations that remained textually identical – was not conducive to a line-by-line comparison that isolated language unique to the FAAC.

information to unauthorized recipients" and not "get involved in any type of outside business activity, transaction or action which, due to its nature . . . may . . . have a negative impact on Mattel's capacity to compete." The proposed FAAC alleges that Machado breached his agreement with Mattel by disclosing Mattel trade secret information to Mattel's direct competitors.

Seventh, the proposed FAAC brings a counter-claim for Avoidance of Actual Fraudulent Transfers under Cal. Civ. Code §§ 3439.04(a)(1), 3439.07, and 3439.08 against the MGA Parties, Omni 808 and IGWT 826. Cal. Civ. Code § 3439.04(a)(1) identifies as fraudulent as to a creditor a transfer made or obligation incurred by a debtor if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.07 identifies the relief available to the creditor in such circumstances. And Cal. Civ. Code § 3439.08 identifies and restricts certain exceptions to the general prohibition established under § 3439.04. In relevant part, the proposed FAAC alleges that Mattel is a creditor by virtue of its "several claims" against the MGA Parties and that the MGA Parties paid several "dividends and distributions" to Larian and/or trusts controlled by Larian with the intent to "wrongfully transfer assets away from MGA to ensure that such assets would not be available to satisfy claims by MGA's creditors." The proposed FAAC further alleges that MGA "purported to transfer a security interest in its Bratz-related intellectual property" as part of a "Side Letter" agreement incident to the purchase of the Wachovia Debt by Omni 808.

Eighth, the proposed FAAC brings a separate counter-claim for avoidance of constructive fraudulent transfers under Cal. Civ. Code §§ 3439.04(a)(2), 3439.05, 3439.07, and 3439.08 that alleges, in relevant part, that MGA received "less than reasonably equivalent value" for purported dividend transfers made to Larian and/or trusts controlled by Larian. In addition, Mattel alleges that the purported transfer of Bratz intellectual property, as well as the potential transfers of other MGA intellectual property, was made for less than reasonably equivalent value.

## II.    Legal Standard

Rule 15(a) provides that, following the entry of a responsive pleading, a court "should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has liberally applied Rule 15's policy favoring amendments. *See Johnson*, 975 F.2d at 607. After the filing of a responsive pleading, "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Id.*

## III.   Discussion

Both the MGA Parties and Omni 808 Investors, LLC ("Omni") submitted oppositions to the Motion. While a non-party lacks standing to oppose for leave to amend because it is "not yet [a] named part[y]," *State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C.*, 246 F.R.D. 143, 146 n. 1 (E.D.N.Y. 2007) (citing *Vazquez v. Summit Women's Ctr., Inc.*, 301 CV 955 (PCD), 2001 WL 34150397, at *1 n. 1 (D. Conn. Nov. 16, 2001) ("The standing of non-parties to challenge a motion for

leave to file an amended complaint that seeks to add them is, at best, dubious.")); *see also Dungan v. Academy at Ivy Ridge*, No. 06-CV-0908, 2009 WL 2176278, at *2 (N.D.N.Y. July 21, 2009),[4] the Court sees no reason not to consider the arguments raised by Omni in its brief, especially in light of Omni's knowledge of the lawsuit, developed through its active participation in the discovery process to date.

In essence, the MGA Parties and Omni argue that Mattel was aware of the material facts that form the basis for the FAAC before the TAAC was filed and that Mattel's conduct in filing the proposed FAAC is therefore dilatory. In addition, the MGA Parties argue that the proposed addition of Mattel Mexico as a named plaintiff, as well as the addition of trade secret claims predicated on Bratz, Moxie and Jade, violates certain instructions delivered by Judge Larson earlier in the lawsuit and, more significantly, calls into question the integrity of the Phase 1 jury trial verdict. The Court addresses each of these arguments separately but begins with a general analysis of the state of this litigation.

No Scheduling Order has been issued with respect to Phase 2 of this litigation. Soon after this lawsuit was transferred to this Court's docket in October 2009, the Court held a status conference with all parties, at which the Court declined to impose scheduling deadlines in light of the pending appeal before the Ninth Circuit, the complexities of the on-going discovery process, and Mattel's then pending request to file an amended pleading. Notwithstanding the Court's decision to not impose a formal schedule for the litigation going forward, the Court nonetheless instructed the parties to complete the deposition process by late February. Though a few depositions spilled over into the month of March, and a few continued depositions remain, the parties have for the most part complied with the Court's direction.

In addition, the Court and the parties (including Omni) have scheduled a remarkable number of hearings, including Saturday and after-hours hearings, at which the Court has demanded specificity as to the nature of both parties' allegations, including allegations to be included in Mattel's anticipated FAAC. For example, the Court held an extensive after hours hearing about proper scope of Mattel's discovery of the purported Omni-Wachovia transaction, at which counsel for Omni was afforded time to present a reasoned argument, complete with illustrations, of why Mattel's discovery into the Omni-Wachovia transaction was misguided and should be restricted. In another example, the Court held a nearly five hour long hearing, at which counsel for Omni was against present, during which the parties discussed whether Omni's rights during the discovery process were adequately secure, and, in addition, discussed critical privilege issues, the disposition of which required the rendering of witness testimony. The Court has conducted a hearing on nearly every one of the dozens of discovery motions submitted to date, due in large part to the Court's strong disinclination to refer the discovery disputes in this matter to a Magistrate Judge or a Special Discovery Master.

The Court and the parties (including Omni) have benefitted tremendously from the

---

[4] There is good reason for this rule. As far as a non-party is concerned, the suit only initiates with the filing of the proposed amended pleading.

manner in which discovery has proceeded. While demanding of attorneys' time, the many hearings have avoided the needless paperwork and endless requests for clarification that frustrated earlier discovery efforts. For example, over the course of two hearings in March 2010, the Court heard the parties' dispute as to the sufficiency of Mattel's production of certain documents relating to Mattel's ownership of trade secrets. This dispute had been pending between the parties for many months and had been the subject of lengthy and time-consuming correspondence between the parties. At the hearing, it was explained that MGA only sought the production of such documents within a specified time frame, and the Court directed counsel for MGA to call his associate counsel and identify with specificity the date range for which MGA sought production of relevant documents. After some delay, a time range was crystallized and Mattel responded that it lacked responsive documents for that time frame. The dispute required a few minutes to resolve, and the hearing helped to achieve finality on an issue, while illuminating the scope of discovery for the Court and the parties. The Court has likewise developed a deep understanding of the discovery since October 2009, which has been staggering in its scope. The parties have conducted nearly 50 depositions and reviewed tens of thousands of documents in preparing for the filing deadline of the instant Motion, as well as forthcoming motion-cut off and trial dates.

As such, the Court is skeptical that the post-October 2009 discovery has provided Mattel with no further facts in support of its proposed claims – the sheer volume of documents and number of depositions suggest otherwise. The Court also disregards claims of prejudice, in light of the fact that no discovery deadlines have been set. *See Baker v. Chin & Hensolt, Inc.*, No. C-09-4168 MMC, 2010 WL 1222783, at *1 (N.D. Cal. Mar. 24, 2010) (noting that amendment prior to deadlines posed minimal risk of prejudice). Moreover, the scope of discovery to date has encompassed nearly every factual allegation made in the FAAC – in other words, the MGA Parties and Omni have been on notice of these claims all along. Indeed, in a chart attached to Omni 808's brief, Omni establishes with great detail that many of the allegations contained in the FAAC were, in some manner, made in the TAAC as well. *See* Appendix A to Omni Opp'n. The Court ordered that Mattel refrain from filing an amended complaint until after Phase 2 discovery was complete in light of the fact that the parties understood the general basis of Mattel's claims, and on the grounds that Mattel would not require further discovery (and thus could not seek further amendment) after discovery had completed. This will be Mattel's final pleading, and the Court sees no grounds on which to support a blanket finding of bad faith, undue delay, or prejudice, let alone futility, all of which are relevant to a Rule 15 analysis. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). Mattel filed its Motion in compliance with this Court's Orders and in view of dozens of hearings at which all parties (and Omni) were repeatedly informed that the Court would allow one final pleading to reflect new facts obtained during Phase 2 discovery (including facts learned prior to transfer).

Having provided proper context to the circumstances leading up to Mattel's Motion, the Court turns its attention to the arguments made in the oppositions submitted by the MGA Parties and Omni:

### A.     Undue Delay

#### 1.     Prior Knowledge of the Purported Omni-Wachovia Transaction

Both Omni and the MGA Parties argue that Mattel was aware of the circumstances of the purported Wachovia-Omni transactions well before filing the TAAC. This is correct to some extent and, indeed, the TAAC includes numerous factual allegations and two causes of action in part predicated on the Wachovia-Omni transaction. *See* TAAC at 62-69; *id.* at 71-83. However, the FAAC alleges a number of new facts and otherwise fleshes out the existing allegations, a relevant consideration in view of Mattel's need to comply with the heightened pleading standards of Rule 9(b), as most of Mattel's claims related to the Wachovia-Omni transactions allege fraud. Even the chart submitted by Omni recognizes that Mattel's allegations as to the relationship shared by the Omni members and Larian have evolved significantly due to discovery obtained over the last several months. While the TAAC identified Leon Neman, one of the purported Omni investors, as Larian's brother-in-law, the FAAC notes that "[t]he participants in Omni 808's acquisition of the Credit Facility . . . ***all*** have long business and personal relationships with each other apart from that transaction." This distinction is not trivial – while Mattel may have previously declined to join Omni on the grounds that only one of its investors shared an intimate personal relationship with Larian, purported revelations that all of the Omni members maintained close contact with Larian may have led Mattel to believe that a claim of fraud could be sustained against Omni generally.

The proposed FAAC also alleges a list of the amounts contributed by each Omni investor, *see* FAAC at 59-60 and, in addition, alleges that Larian contributed to the Omni investment, another fact specific to the fraud allegations at issue. *See* FAAC at 60 (alleging that "the majority of the funds used for that transaction – at least $60 million, and likely far more – was provided to Omni 808 by Larian and his family members"). While Omni and the MGA Parties now argue that these facts were known by Mattel prior to the filing of the TAAC, the record suggests otherwise: not only was the extent of Larian's participation in the purported Wachovia-Omni transaction not disclosed to Mattel prior to the filing of the TAAC, but the recent depositions of several Omni investors, including Joseph Moinian, Arsalon Gozini, and Larian, as well as other individuals familiar with the purported transaction, like Brian Wing, show that many questions remain unanswered and several answers were only first provided during depositions. The Court has conducted a privilege review of thousands of documents produced by MGA *for the first time* in March of 2010 that relate directly to the purported transaction and to which Mattel was denied access prior to the TAAC. These documents – including documents previously in the possession of Brian Wing – shed light on the relationship between the Omni investors and provide facts clearly not in the possession of Mattel prior to the TAAC's filing.

Finally, Omni's claim that "<u>no court</u> has ever permitted a party to file an amended complaint against a new defendant (let alone a fourth amended complaint involving an alleged RICO conspiracy that began a decade before the new defendant existed) when an action has been pending for six years and where the party seeking the amendment knew all the facts before it filed (and indeed

alleged them in) its prior amended complaint filed a year earlier" is both obvious and irrelevant. *See* Omni Opp. at 3 (emphasis in original). One of the implications of Omni's statement appears to be that a six year break between the commencement of a lawsuit and the filing of an amended pleading does not indicate that new facts were revealed, but that the party seeking amendment waited to act on certain facts long in its possession. However, while courts *have* permitted amendment to add a new party, *see, e.g.*, *State Farm Mut. Auto. Ins., supra*, the remarkable specificity with which Omni's sentence is phrased demonstrates an important point: no other court has encountered these particular circumstances at all. Indeed, the Omni claims are unique because the purported Omni transaction occurred *after* the vast majority of this six year lawsuit, including the Phase 1 jury trial, had completed. Omni admits as much. *See* Omni Opp. at 3 ("An agreement was reached and the transaction was entered into on September 3, 2008."). The reason why no other court has permitted amendment more than six years after a lawsuit commenced is because discovery is not usually in full force six years after the filing of a complaint. But this case was not only bifurcated early in the litigation, but did not meaningfully proceed until a number of jurisdictional issues were resolved both at the trial court and appellate levels.

Even if Mattel was in possession of some or all of the new facts in the FAAC before it filed the TAAC, the inquiry relevant to the Court's analysis is not simply knowledge but whether Mattel acted with bad faith or undue delay. Certainly, one way of measuring "undue delay" is to determine whether Mattel reserved information for later use; the pleadings define the scope of discovery and the late addition of certain claims requires the court to needlessly re-open discovery. Such was not the case here. Indeed, the Court instructed Mattel to gather all the facts relevant to its claims arising out of the Omni-Wachovia transaction, even if later discovered facts did not meaningfully bolster the allegations in the FAAC. Moreover, the discovery process was not hampered by the existing TAAC – quite the contrary, the Court frequently monitored discovery, and required that Mattel provide constant updates on the claims it anticipated making in its FAAC.

Here, the discovery process involved the MGA Parties and Omni, proceeded with the Court's oversight and guidance, and was transparent. Both parties obtained expansive and reciprocal discovery and Mattel obtained volumes of documents and dozens of hours of deposition testimony about the purported Wachovia-Omni transaction. While some of the discovery obtained by Mattel may have been superfluous, the delayed amendment – at the Court's instruction – was both efficient, as it precluded further amendment, and transparent, as all parties were aware of the scope of discovery throughout. The Court therefore finds that Mattel was not in possession of the FAAC's new facts prior to the filing of the TAAC and, even if it was, the failure to speculatively plead those facts in the TAAC was not the product of bad faith and/or undue delay.

### 2. Claims on Behalf of Mattel Mexico

In a way, the MGA Parties rebut their own argument with respect to the purportedly late and therefore impermissible joinder of Mattel's subsidiary, Mattel Mexico, as a plaintiff. By the proposed FAAC, Mattel Mexico brings causes of action for misappropriation of trade secret

information against Machado and MGA de Mexico. According to the MGA Parties, Mattel Mexico, and indeed Mattel, were aware of the facts giving rise to Mattel Mexico's claim well before Mattel filed a single pleading in this matter.

In support of this claim, the MGA Parties cite Judge Larsons June 27, 2007 Order on the MGA Parties' Motion to Dismiss Mattel's First Amended Answer and Counterclaims. *See Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254 (C.D. Cal. 2007). In that Order, Judge Larson rejected the MGA Parties' challenge to Mattel's standing to seek recovery under RICO for injury to business or property that flowed from the alleged theft of Mattel Mexico's trade secrets. *See id.* at 1269. While Judge Larson noted the MGA Parties' argument that "Mattel lacks standing to sue on behalf of its subsidiaries," *id.*, he nonetheless concluded that the recovery sought by Mattel was not for damages incurred by its subsidiaries, but for damages "[Mattel] sustained" as a result of the alleged theft of trade secrets. *Id.* The obvious import of Judge Larson's Order was that *two* entities – both Mattel Mexico and Mattel – may have suffered damage as a result of the alleged theft of trade secrets, and Mattel could not as a matter of law seek to recover damages incurred by its subsidiary. The MGA Parties characterize language in the Order – "Mattel may not sue for damages incurred by its foreign subsidiaries" – as a "warning," when in fact, it was a statement of law. *Id.*

The MGA Parties also argue that Mattel's delay, which may also refer to Mattel Mexico's delay, will "necessitate entirely new discovery directed to this new counter-claimant." MGA Opp. at 13. The Court will not restrict such discovery and, indeed, will subject Mattel Mexico and perhaps even Mattel to expansive and demanding discovery as a result of the added Mattel Mexico claims. Moreover, while the Court recognizes that Mattel and its subsidiary may now be required to produce discovery as to "what trade secrets at issue are owned by Mattel, as opposed to being owned by one of Mattel's foreign subsidiaries," the basic claims at issue, concerning the alleged theft of Mattel proprietary information, has long been a subject of this lawsuit. As such, the proposed addition of one new party does not meaningfully affect the MGA Parties' ability to formulate an effective defense. *See In re Glacier Bay*, 746 F. Supp. 1379, 1379 (D. Alaska 1990) ("The addition of new plaintiffs who are similarly situated to the original plaintiffs does not cause defendants any prejudice except that defendants incur the potential to increase liability."). While cases like *Glacier Bay* are somewhat distinguishable on the grounds that the liability to all plaintiffs, including the new plaintiffs, was inseparable and flowed from the same nucleus of conduct, it is notable that the only "new" discovery the MGA Parties may require distinguishes between trade secrets that belong to Mattel Mexico and damages incurred by Mattel Mexico. Additional discovery is not required as to the underlying facts giving rise to these claims.

### 3. New Trade Secret Claims

The proposed FAAC alleges, for the first time, that the doll lines Bratz, Jade, and Moxie are Mattel trade secrets that were misappropriated by the MGA Parties and, in part, Carter Bryant. *See* FAAC ¶ 134. By contrast, the TAAC *does not* expressly identify Bratz, Jade, and Moxie as trade

secrets, and does not identify Carter Bryant as a defendant to its counter-claim for misappropriation of trade secrets. Mattel's Motion simply glosses over the issue and focuses on the addition of "Moxie" as an identified trade secret.

The facts relevant to the Bratz and Jade line of dolls were in Mattel's possession long before its first pleading in this lawsuit and the claims with respect to Bratz should have been the subject of the Phase 1 jury trial. The Court therefore DENIES WITHOUT PREJUDICE the Motion as it relates to claims predicated on the identification of Bratz and Jade as "trade secrets." Mattel may file for leave to add claims related to the Bratz and Jade lines after the Ninth Circuit issues a ruling on the MGA Parties' appeal.

### B.     Bad Faith

The timing of Mattel's Motion does not evidence bad faith. As previously mentioned, Mattel filed its Motion pursuant to Court Order and after the Court expressly declined to rule on Mattel's previous motion for leave to file an amended pleading. In addition, Mattel's Motion is not made with the intent to subject the MGA Parties or Omni to additional needless discovery – Mattel submitted its Motion in view of the Court's warning that no further discovery would be permitted after Mattel's allotted twenty five depositions had completed, and that a discovery deadline was otherwise rapidly approaching. Finally, Mattel's FAAC also attempts to satisfy the heightened pleading requirements of Rule 9(b).

The MGA Parties argue that a number of tactical decisions by Mattel evidence bad faith. First, the MGA Parties reference the delayed addition of trade secret misappropriation claims predicated on Bratz and Jade. The Court has already ruled that such claims should have been properly brought prior to Phase 1 and that their late addition poses the risk of at least partially inconsistent verdicts. Second, the MGA Parties cite Mattel's purported "bad faith" in waiting to add the Moxie line as a purported trade secret. But the claims arising out of the Moxie line were only subject to discovery over the last few months. Separately, Omni argues that the late addition of Mattel's claims against Omni evidences bad faith. This claim has already been addressed by the Court in its general discussion about the scope and transparency of the discovery process thus far.

### C.     Prejudice

The prejudice cited by the MGA Parties and Omni results from the purported burdens of additional discovery. These "added burdens" would have been imposed even if these claims had been made by an earlier pleading. And neither the MGA Parties nor Omni are restricted from conducting the discovery they are entitled to under Fed. R. Civ. P. 26.

### D.     Futility

Omni argues that the proposed FAAC's claims against Omni are futile, that Mattel lacks standing to bring those claims, and that Mattel has suffered no damages as a result of the alleged conduct by Omni. While futility is a factor that the Court should consider when conducting a Rule 15 analysis, the Court considers these arguments better addressed in motions filed pursuant to Rule 12(b)(6) and Rule 56.

## IV.     Disposition

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Motion. Mattel is granted leave to a file an amended pleading in compliance with the instant Order on or before 5:00 p.m. on April 12, 2010

The Clerk shall serve this minute order on all parties to the action.