1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   SOUTHERN DIVISION

11  MATTEL, INC., a Delaware            CASE NO. CV 04-9049 DOC (RNBx)
    corporation,                        Consolidated with
12                                       Case Nos. CV 04-09059 & CV 05-2727
                Plaintiff,
13                                       Hon. David O. Carter
         vs.
14                                       **MATTEL, INC.'S OPPOSITION TO
    MGA ENTERTAINMENT, INC., a          MGA ENTERTAINMENT, INC.'S *EX
15  California corporation, et al.,      PARTE* APPLICATION TO COMPEL
                                         PRODUCTION OF COMPLETE
16              Defendant.               BOARD MINUTES AND
                                         PRESENTATIONS WITH
17                                       REDACTIONS ONLY FOR
    AND CONSOLIDATED ACTIONS            ATTORNEY-CLIENT PRIVILEGE**
18
                                         **[Declaration of Marshall M. Searcy III
19                                       filed concurrently herewith]**

20                                       Hearing Date:      TBD
                                         Time:              TBD
21                                       Place:             Ctrm. 9D

22                                       **Phase 2:**
                                         Discovery Cut-off:      TBD
23                                       Pre-trial Conference:   TBD
                                         Trial Date:             TBD

24

25

26

27

28

**Preliminary Statement**

The MGA Parties castigate Mattel for producing Board of Directors Minutes redacted to include only discussions of performance of Mattel's Girls' Brand and Boys' Brand products.  The MGA Parties argue that they need unredacted Board Minutes for information they would contain about the performance of products Mattel claims were damaged by sales of Bratz.  However, the MGA Parties' ex parte application does not disclose four key facts.

First, the MGA Parties fail to disclose to the Court that their lead trial counsel agreed in writing that Mattel could redact its Board Minutes in exactly this manner.  MGA's counsel even asked Mattel's counsel to be sure to inform the Court that the parties had reached this agreement.  MGA should be held to its agreement.

Second, the MGA Parties do not disclose that they know from previous productions that Mattel's Board Minutes do not contain discussions of the performance of products Mattel claims were damaged by sales of Bratz.  Accordingly, that information, to which MGA claims its entitled, has not been redacted from any of the Board Minutes produced to the MGA parties and an order requiring their complete production would not accomplish the purpose that the MGA Parties proclaim.

Third, the MGA Parties do not disclose that Mattel already has produced comprehensive information about the performance of products Mattel claims were damaged by sales of Bratz.  Mattel has produced its Form 10-K and Form 10-Q financial statements for the company's performance for each of the past ten years.  Mattel has produced its year-end financial packages for every year from 2000 to the present.  Mattel has produced its quarterly forecasts from 2000 to the present.  Mattel has produced its Brand Profit and Loss Statements for the last ten years covering every product for which Mattel has alleged lost sales, which contain detailed product cost and sales information broken down by category (e.g., Girls, Boys, etc.) and by individual product.  And Mattel has produced literally hundreds of market research reports analyzing consumer preferences and the reasons for changes in consumer purchasing

1  patterns.  (In contrast, MGA continues to withhold precisely this type of information

2  from Mattel.)   In short, redacting the irrelevant discussions from Mattel's Board

3  Minutes that MGA's counsel agreed could be redacted does not prevent the MGA

4  Parties from full discovery into Mattel's damages.

5        Finally, the MGA Parties do not mention that the discussions they want produced

6  include sensitive internal discussions about product lines such as Fisher-Price that are

7  not at issue in this case but do compete directly with MGA's non-Bratz products, as

8  well as internal corporate financing and governance discussions that have nothing to do

9  with this case.  This information could be dangerous in the hands of a fierce direct

10  competitor and should not be compelled.

11        The MGA Parties should live with the deal they made and confirmed in writing.

12  This ex parte should be denied.

13  ## Statement of Facts

14  <u>MGA's Demand For All Documents Reviewed by Eckert Regardless of Subject</u>.

15  When the MGA Parties deposed Robert Eckert in December 2009, they began the

16  deposition with general background questions about his ten years as CEO of Mattel.

17  The MGA Parties then asked Mr. Eckert to describe generally ***every kind of report he***

18  ***reviewed regularly in his ten years as Mattel CEO regardless of what they relate to***.

19  Mr. Eckert provided general descriptions of those types of documents.[1]  The MGA

20  Parties then took the position that because Mr. Eckert answered these questions, Mattel

21  was obligated to produce copies of each and every such document that he read over the

22  past ten years, regardless of whether they had anything to do with any issue in this case.

23  The MGA Parties' position effectively was that if Mr. Eckert said he read the *Wall*

24  *Street Journal* every day, Mattel was obligated to produce every *Wall Street Journal* for

25  the past ten years.  Mattel resisted these absurdly overbroad demands.

---

[1]  12/16/09 Eckert Depo Tr. at 209:17-211:14, attached as Exhibit 1 to the Declaration of Marshall M. Searcy ("Searcy Decl."), dated April 15, 2010 and filed concurrently herewith.

On February 25, after MGA raised the dispute with the Court, the Court ruled that:

1.     The parties shall meet and confer on or before March 1, 2010 and attempt to reach agreement about the permissible scope of the MGA Parties' request;

2.     In the event that the parties do not reach an agreement, Mr. Eckert shall re-appear for deposition on or before March 8, 2010 and identify with specificity every document relied upon in his provision of responsive answers to relevant questions by the MGA Parties.  Mattel shall produce all such documents on or before March 10, 2010, and Mr. Eckert shall re-appear for deposition as to the contents of those documents on or before March 13, 2010.[2]

<u>MGA Agrees to Mattel Redacting Its Board Minutes</u>.  In accordance with paragraph 1 of the Court's February 25 Order, the parties began negotiations over the permissible scope of MGA's requests.  The ruling posed a problem for the MGA Parties, however, because Mr. Eckert did not rely on *any* of these broad categories of documents in providing answers to relevant questions; he merely described the categories of documents that he reviewed on a regular basis over the past ten years, as requested by MGA.  Nevertheless, in an effort to resolve the matter, Mattel agreed to produce its year-end financial packages for every year from 2000 to the present and its quarterly forecasts from 2000 to the present.[3]

One type of document that Mr. Eckert testified that he received during his ten years at Mattel consisted of materials that were mailed to the Board of Directors.[4]  Mr. Eckert went on to explain that the Mattel Board generally meets five times a year and

---

[2] Dkt # 7591.
[3] Searcy Decl., Exh. 2 at 4.
[4] 12/16/09 Eckert Depo Tr. at 209:17-211:14 (Searcy Decl., Exh. 1).

1  before most meetings Board members are sent a package containing various materials.[5]

2  Based upon this testimony, MGA demanded production of all Minutes of every meeting

3  of Mattel's Board for the past ten years.[6]  As negotiations resulting from the Court's

4  February 25 Order continued, Mattel offered, in an email sent on March 03, 2010, to

5  produce the Board of Directors Minutes *redacted* so that they would only reflect

6  discussions concerning Mattel's Girls' Brands or the performance of executives

7  responsible for Girls' Brands.  Mattel's offer explicitly was conditioned on these

8  redactions:

9  > With respect to the other outstanding item, Mattel is willing to produce

10  > any agendas, minutes and Eckert memos to the Board concerning

11  > Mattel's Girls' Brands or the performance of executives responsible for

12  > Girls' brands, *as long as we can redact all non-responsive*

13  > *information*.  This is necessary because the minutes, in particular,

14  > contain highly sensitive, irrelevant info such as info re contemplated

15  > acquisitions."[7]

16  After a series of emails about licensing agreements, lead trial counsel for the

17  MGA Parties confirmed the agreement in writing in an email sent on March 5, 2010:

18  > *I agree to the proposal as we've discussed* with the limitation that this

19  > does not permanently preclude us from seeking the documents we've

20  > compromised in other contexts, but even if we ever do so we will not

21  > urge further production of those as a basis for further deposition of Mr.

22  > Eckert.

23  > I need a date certain for production and proposed dates for the

24  _____

25  [5]  12/16/09 Eckert Depo Tr. at 211:15-213:18 (Searcy Decl., Exh. 1).

26  [6]  Earlier in the case, the MGA Parties requested and received the Minutes of all Mattel Board of Directors meetings which referred to MGA, Larian, Bryant or Bratz with the only redactions being for attorney-client privilege.  One of two sets of Minutes produced

27  in response are attached to the Searcy Declaration as Exhibit 3.  This *ex parte*, thus, concerns only the Minutes that do *not* refer to MGA, Larian, Bryant or Bratz.

28  [7]  Searcy Decl., Exh. 2  at 1 (emphasis added).

resumption of the deposition at least a week later and that are not in the last week of March which is spring break.[8]

Mattel's counsel confirmed that the parties had an agreement three minutes later, and counsel for MGA asked that Mattel inform the Court that the parties had an agreement: "[i]f you are going to be there tomorrow am please tell him [the Court] *we have a deal*."[9]  (emphasis added).  On March 6, as MGA's lead counsel requested, the parties informed the Court that they had a deal.

A few days later, the MGA Parties acknowledged that redacting the Board Minutes was part of the Parties' agreement when they sought to include discussions of products other than Mattel's Girls' Brands in the materials that would not be redacted.[10] Because of these concerns, Mattel did not redact information from the Minutes it produced about discussions of either the Girls' Brands or Boys' Brands, thus covering every product line for which it is seeking damages.  Mattel also produced all presentations it could locate in its Board files concerning the performance of its Girls' or Boys' Brands.[11]

## **Argument**

## I.   **MGA AGREED TO THE REDACTIONS MATTEL MADE**

Incredibly, MGA's ex parte never mentions the fact that its lead trial counsel agreed in writing that Mattel could redact its Board Minutes in precisely the way it did. On February 25, the Court directed the parties to negotiate a compromise on MGA's demands in connection with the Eckert deposition or proceed with the deposition with the scope limited as the Court set forth in its Order.  MGA chose not to proceed with the deposition but, rather, to negotiate a compromise.  The terms of that compromise stated in writing that Mattel would redact its Board Minutes to eliminate anything other

---

[8]   Searcy Decl., Exh. 4 at 2 (emphasis added).
[9]   Searcy Decl., Exh. 4 at 1 (emphasis added).
[10]   Searcy Decl., Exh. 5.  MGA requested information regarding Mattel's Boys Brands as well because Mattel has asserted damages claims regarding Boys products.
[11]   Searcy Decl., ¶ 7.
(footnote continued)

than references to Mattel's Girls' Brands or the performance of executives responsible for Girls' Brands.[12]  Lead counsel for MGA agreed in writing stating "*I agree to the proposal as we've discussed*."[13]  Counsel for MGA further confirmed its agreement by telling lead counsel for Mattel: ""[i]f you are going to be there tomorrow am please tell him [the Court] *we have a deal*.""[14]

Mattel lived up to its end of the deal by producing the documents.  The MGA Parties should not be allowed to change the deal after Mattel complied with its end.

## II.   UNREDACTED MINUTES ARE NOT RELEVANT TO MATTEL'S DAMAGES CLAIMS

The MGA Parties claim that they require unredacted copies of the Minutes of every meeting of Mattel's Board for the last ten years to "take discovery regarding Mattel's alleged damages."[15]  They base this on the theory that "Mattel is gearing up to argue that every sale of every Bratz product by MGA or its licensees deprived Mattel of a sale of some other product."[16]  But the MGA Parties know that unredacted Board Minutes will not contain information concerning the impact of Bratz' sales on Mattel products.  The unredacted Board Minutes produced earlier in the case show this.  Those Minutes show that the types of discussions the MGA Parties claim to seek simply do not appear in Board Minutes.   Moreover, the MGA Parties have received comprehensive data for the last ten years regarding sales of every product that Mattel claims was harmed by sales of Bratz.

### A.   Unredacted Minutes Do Not Contain Information Pertinent To Mattel's Damages Claims

The MGA Parties argue, without supporting evidence, that "unredacted board meeting minutes provide . . . insight into the manner in which Mattel would have

---

[12] Searcy Decl., Exh. 2 at 1.
[13] Searcy Decl., Exh. 4 at 2 (emphasis added).
[14] Searcy Decl., Exh. 4 at 1 (emphasis added).
[15] Application at 3.

valued the Bratz intellectual property given its valuation and monetization of its own intellectual property during that time frame."[17]  However, the MGA parties know that this is incorrect.  Earlier in the case, the MGA Parties requested and received the Minutes of every Mattel Board of Directors meeting which referred to MGA, Larian, Bryant or Bratz, with the only redactions being for attorney-client privilege.  Those Minutes are attached to the Searcy Declaration as Exhibit 3.  They show that Minutes of Mattel's Board simply do not contain valuations of Mattel's intellectual property, let alone how Mattel would have valued Bratz or the impact of Bratz sales on the sales of Mattel's Boys or Girls products.[18]  Of the 26 pages of those Minutes, less than one page discusses performance of the Girls' Brands or Boys' Brands.  The balance discusses entirely unrelated subjects.

The first page of those Minutes discusses housekeeping matters such as identifying who attended the meeting.  The next seven pages concern amending Mattel's revolving credit facility.  Then, on the bottom of page 8 and top of page 9, the Minutes identify various executives who made presentations about their business units and indicate that "a discussion ensued."  After this, there was a discussion for a page and a half of Mattel's Children's Foundation (a charitable organization) followed by a paragraph about the Compensation/Options Committee, a four and a half page description of the business of the Nominations/Corporate Governance Committee, a one page discussion of the business of the Capital Allocation Committee, a one page discussion of the business of the Audit Committee, a one half page report by the

---

[16] Application at 3.

[17] Application at 5.

[18] MGA also overlooks that it has successfully withheld from Mattel the MGA documents that directly and specifically value Bratz intellectual property.  See Hearing Tr., dated March 10, 2010, at 10:22-11:3 ("[Mr. McConville: ]To go to the point of the Bratz valuation and its relevancy now, I mean, that's retrying Phase 1, and we're not in Phase 1.  So we would submit on that argument.  The Court: Mattel's motion is denied.  If we enter into Phase 1 again, I'll reconsider that, so you have leave to bring this back before the Court, but at this time, it's denied.").  Obviously, if Mattel is compelled to produce information on this basis, the MGA Parties should be compelled to do so as well.

General Counsel, several pages of resolutions concerning Mattel's shareholder rights plan and annual shareholder meeting, a page and a half discussion of Mattel's deferred compensation and pension plans, a page and a half discussion of replacing the retiring Company Treasurer and a brief redacted discussion of proceedings with Mattel's trial counsel in this case.[19]

In short, Board Minutes simply do not contain the detailed information about the performance of its Boys and Girls Brands products that MGA claims to be seeking.

## B.   MGA Has Comprehensive Data About Mattel's Damages Claims

Not only do the Board Minutes not contain the information MGA claims to be seeking, but the MGA parties fail to disclose in their ex parte that Mattel has already produced the information they seek.

Previously, Mattel had produced its Form 10-K and Form 10-Q financial statements for the company's performance for each of the past ten years.  In addition, Mattel agreed to and has produced its year-end financial packages for every year from 2000 to the present and its quarterly forecasts from 2000 to the present.[20]  Moreover, Mattel has also provided its Brand Profit and Loss Statements for the last ten years *covering every product for which Mattel has alleged lost sales*.  These P&Ls contain far more detailed information regarding product sales than any Board materials.  The P&Ls contain detailed product cost and sales information broken down by category (e.g., Girls, Boys, etc.) and by individual product.  Finally, even though MGA continues to improperly withhold its own market research, Mattel has produced literally hundreds of market research reports analyzing consumer preferences and the reasons for changes in consumer purchasing patterns.[21]

The documents produced by Mattel address in detail the information MGA claims it needs: information about the sales of products by Mattel that were harmed by

---

[19] Searcy Decl., Exh. 3.
[20] Searcy Decl., ¶ 5.
[21] Searcy Decl., ¶ 5.

1  sales of Bratz.  Opening up every discussion by the Board of Directors to the MGA

2  Parties would not provide them with the information they claim to seek; it would,

3  however, provide one of Mattel's fiercest competitors with a detailed roadmap of

4  Mattel's inner workings from 2000 through today.

5  **III.   UNREDACTED MINUTES WOULD GIVE MATTEL'S COMPETITOR**

6       **ACCESS TO CRITICAL, PRIVATE DELIBERATIONS CONCERNING**

7       **MATTEL'S BUSINESS**

8       The MGA Parties claim that because Mattel claims damages for lost sales of its

9  Girls' Brand and Boys' Brand products, "Mattel has injected as an issue the performance

10  of nearly its entire company . . . ."[22]  The contention is baseless.  For example, Mattel

11  has not claimed any lost sales from its Fisher-Price Brand as damages in this case.

12  According to the latest 10-K information, Fisher-Price provides close to as much

13  revenue as Mattel's Girls' Brands and Boys' Brands combined.  Although internal

14  Mattel information about Fisher-Price is irrelevant to this case, it could be very useful

15  to MGA because Fisher-Price products compete directly with MGA's Little Tikes line

16  of products.  In addition, there is simply no relevance to this case to the vast majority of

17  material presented in Mattel's Board Minutes.  No issue in this case is affected by

18  deliberations and decisions regarding Mattel's revolving credit facility, Mattel's

19  shareholder rights plan, Mattel's various pension plans, Mattel's Nominations/Corporate

20  Governance Committee, Mattel's Capital Allocation Committee, or Mattel's Audit

21  Committee or the other myriad of business that has been presented to Mattel's Board in

22  the past ten years.

23       On the other hand, the potential for mischief with such information by a fierce

24  direct competitor such as MGA is great.

25

26

27  ―――――――――――――

28  [22]   Application at 1.

1

<u>**Conclusion**</u>

2

For the reasons above, MGA's *ex parte* application should be denied.

3

DATED:  April 15, 2010          QUINN EMANUEL URQUHART &
                                   SULLIVAN. LLP

4

5

                       By  /s/ Marshall M. Searcy

6

                         Marshall M. Searcy
                         Attorneys for Mattel. Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-10-