QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO LEXINGTON FINANCIAL LTD. AND MARIA BASHAW'S *EX PARTE* APPLICATION TO CONSIDER ITS POSITION PAPER IN CONNECTION WITH APRIL 20, 2010 OSC RE PROTECTIVE ORDER**<br><br>Date:   April 20, 2010<br>Time:  5:30 p.m.<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

**Preliminary Statement**

As part of their long-standing efforts to keep the Court and Mattel from discovering the truth about the Omni entities, Lexington Financial Ltd. ("Lexington")[1] and Maria Bashaw[2] both request that this Court affirmatively order the destruction of documentary evidence. While Mattel does not take issue with the request to keep the documents confidential, the request that Mattel destroy evidence is absurd and unwarranted.

As the Court will recall, Ms. Bashaw and International Corporate Advisors ("ICA"), California residents who have acted as Lexington's agents, repeatedly represented to the Court that they had no documents pertaining to Lexington. This turned out to be false, as did Ms. Bashaw's denials of any relationship with Omni or Bingham.[3] After this Court's Order compelling production, Ms. Bashaw and ICA produced hundreds of pages of documents. Among other things, they show that Fred Mashian prepared the papers directing ICA and Ms. Bashaw to incorporate Lexington. Mr. Mashian is a California attorney who works for two Omni members, Leon Neman (Isaac Larian's brother-in-law) and Joseph Moinian (an Isaac Larian friend who acted as a front for Mr. Larian in funding Omni). The documents directly contradict the testimony of Mr. Mashian, who flatly denied under oath that he had any involvement in setting up Lexington. The documents also demonstrate that Lexington has conducted extensive, continuous business in California, contrary to its earlier claims that it had no contacts with or agents in California.[4] Indeed, they

---

[1] Lexington's Ex Parte Application for Consideration of Position Pater in Connection with April 20, 2010 OSC Re: Protective Order, Docket No. 7738.

[2] Joinder filed by Objector Maria M Bashaw joining in Lexington's Ex Parte Application for Consideration of Position Pater in Connection with April 20, 2010 OSC Re: Protective Order, Docket No. 7739.

[3] Bingham originally appeared as Lexington's counsel in this action. Memorandum in Opposition to Ex Parte Application for Order for Deeming Lexington Financial LLC served, Docket No. 4927.

[4] Id. at 4, 12.

show that after Mattel began serving discovery to and about Lexington, its agents began attempting to cut their ties to Lexington in a further effort to obscure who is behind Lexington.

Four days after the documents were produced by Ms. Bashaw, she re-produced them in redacted versions and demanded that the original production be destroyed. The information that was redacted was Lexington bank account numbers—information potentially relevant to Mattel's efforts to piece together the paper trail between Lexington, the Omni entities, MGA, and Mr. Larian. Mattel has treated, and continues to treat, the produced documents as confidential. Nevertheless, Lexington and Ms. Bashaw now request that the Court affirmatively order Mattel to destroy the non-redacted versions of this evidence. The request is baseless. Ms. Bashaw and ICA had every opportunity to argue, on Mattel's motion to compel, that they should be permitted to redact some or all of this information. They did not do so, but instead attempted to persuade the Court that no documents existed at all. Having lost at that gambit, neither they nor Lexington should be heard on a motion for reconsideration, let alone on a belated, *ex parte* basis as they request here. Furthermore, Lexington's and Ms. Bashaw's unsupported, untimely demand for destruction of evidence is not only unnecessary, but, given the repeatedly false representations made to the Court and Mattel about the existence of these documents and the circumstances under which these documents were produced, may well create an opportunity for Lexington (who purports to appears specially and may well disappear again after this application) to permanently hide bank account information that may be relevant to Mattel's on-going discovery into Lexington.

The Court should deny Lexington's and Ms. Bashaw's *ex parte* application and deny their request to destroy the documents at issue.

**Factual Background**

As the Court knows, Mattel has been pursing discovery into the sources of funding for the Omni members' purchase of the Wachovia debt since it learned of Omni's existence. As MGA stood silently by, the Omni Parties initially denied that Larian provided *any* of the approximately $109 million in funding for that acquisition. Mattel later discovered (from third-party discovery) that far from being uninvolved, Isaac Larian *directly* provided at least $60 million of that financing.

Mattel continues with discovery into the sources of the remaining $49 million. Evidence has since proven that, contrary to his sworn denials, Mr. Larian had buy-back deals with at least two other Omni members, Joseph Moinian and Arsalan Gozini, and therefore was behind at least another $15 million in Omni's funding.

One $10 million tranche of Omni's funding was ostensibly provided by Leon Neman, Isaac Larian's brother-in-law. Mr. Neman testified that he obtained the money not from Isaac Larian, but instead from Lexington and a "Mr. Samhoui." After Lexington failed to appear for its properly noticed 30(b)(6) deposition, Mattel brought a proceeding in the High Court of Justice in London to obtain discovery from OfficeFront, the London mail drop that Lexington identified as its business address in its UCC filings with the State of California.[5] The documents obtained in the United Kingdom lead back to the United States—to ICA and Ms. Bashaw.

Mattel served document subpoenas on ICA and Bashaw on January 25, 2010. On February 8, 2010, both ICA and Ms. Bashaw objected that every request was burdensome and barred by privilege and refused to produce a single document.[6]

---

[5] Mattel's Reply in Support of Motion to Compel documents from International Corporate Advisors and Maria Bashaw, dated March 7, 2010, Docket No. 7618, at 2.

[6] See Non-Party Maria M. Bashaw, Esq.'s Objections to Mattel, Inc.'s Subpoena to Produce Documents, dated February 8, 2010, Docket No. 7480;  Non-Party

During a subsequent meet and confer, Ms. Bashaw claimed that she did not possess any documents. Mattel proposed that she amend her objections to so state,[7] but she did not do so. After fruitless meet-and-confers, Mattel moved to compel on February 27, 2010.[8]

In her opposition to the motion on behalf of herself and ICA, Ms. Bashaw again represented to the Court that she had no responsive documents in her possession.[9] On March 9, 2010, this Court held a hearing on Mattel's motion to compel documents in ICA and Ms. Bashaw's possession related to Lexington or Omni.[10] In her opposition to the motion and during the hearing, Ms. Bashaw represented to the Court that 1) she had no responsive documents in her possession, and 2) she had had no contact with the Omni entities or their counsel.[11] However, when the Court showed Ms. Bashaw that a footer on her opposition corresponded to pleadings filed in this case by Bingham, Omni's counsel, Ms. Bashaw accepted the Court's invitation to obtain counsel, and the Court continued the hearing. The next day, the Court granted Mattel's motion, ordering Ms. Bashaw and ICA to produce all relevant, responsive documents.[12] The Order did *not* include any provision for the redaction of any non-privileged information. Nor at any point in their papers or

---

International Corporate Advisors, LLC's Objections to Mattel, Inc.'s Subpoena to Produce Documents, dated February 8, 2010, Docket No. 7479.
   [7] Mattel's Reply in Support of Motion to Compel documents from International Corporate Advisors and Maria Bashaw, dated March 7, 2010, Docket No. 7618, at 9.
   [8] Mattel's Motion to Compel documents from International Corporate Advisors and Maria Bashaw, dated February 27, 2010, Docket No. 7582.
   [9] Opposition to Motion to Compel documents from International Corporate Advisors and Maria Bashaw, dated March 5, 2010, Docket No. 7617, at 3.
   [10] Minutes of Status Conference and Motion Hearing, Dated March 9, 2020, Docket No. 7929.
   [11] Hearing Tr. dated March 9, 2010 at 34:18-35:1; 36:12-37:7.
   [12] Order Granting Mattel's Motion to Compel documents from International Corporate Advisors and Maria Bashaw, dated March 9, 2010, Docket No. 7631.

during argument did ICA or Ms. Bashaw request that they be allowed to redact any non-privileged information.

In response to that Order, Ms. Bashaw and ICA produced 466 pages of documents related to Lexington, Omni and the Wachovia transaction. These documents reflect that Fred Mashian prepared the papers directing ICA and Ms. Bashaw to incorporate Lexington. Mr. Mashian is a California attorney who works for two Omni members, Leon Neman (Isaac Larian's brother-in-law)[13] and Joseph Moinian (an Isaac Larian friend who acted as a front for Mr. Larian in funding Omni).[14] The documents are directly contrary to the testimony of Mr. Mashian, who flatly denied under oath that he had any involvement in setting up Lexington.[15] The documents also demonstrate that Lexington has conducted extensive, continuous business in California, contrary to its earlier claims that it had no contacts with or agents in California. Indeed, they show that after Mattel began serving discovery to and about Lexington, its agents began attempting to cut their ties to Lexington in a further effort to obscure who is behind Lexington.

Lexington now seeks to destroy this evidence. Three days after producing the documents, Ms. Bashaw sought to supplant the production with versions which redact account numbers and other tracing information and demanded that the original production be destroyed.[16] On April 15, counsel for Lexington—which did not produce a witness for a properly noticed 30(b)(6) deposition[17]—contacted Mattel to request that the documents be maintained confidential, a request to which Mattel agreed.[18] Despite this agreement, inexplicably, the next day Lexington announced its intention to move *ex parte* to request that, as part of the April 20

---

[13] See Mashian Depo. Tr. dated Sept. 10, 2009 at 97:24-98:6.
[14] See Moinian Depo. Tr. dated March 22, 2010 at 35:13-36:6.
[15] See Mashian Depo. Tr. dated Sept. 10, 2009 at 37:24-38:1.
[16] Bashaw Decl., ¶ 5.
[17] 30(b)(6) Dep. Tr. of Lexington, dated Dec. 12, 2009 (non-appearance).
[18] Ranahan Decl., ¶ 3.

proceedings, the Court order the destruction of the original production.[19] Mattel's counsel noted that in light of Mattel's agreement to maintain the confidentiality of the documents such a motion would be frivolous and opposed.[20] Indeed, MGA's own counsel expressed confusion as to why any such motion was necessary.[21] Nevertheless, on the eve of the hearing on the protective order issues, Lexington filed this *ex parte* application.

## Argument

As described above, the documents at issue were produced under troubling circumstances, and only after numerous court proceedings in multiple jurisdictions. Given the nature of Lexington, which is designed to obscure those behind its operations, and given Ms. Bashaw's and ICA's false denials that any responsive documents even existed, ordering the destruction of the non-redacted versions could lead to the permanent destruction of critical documentary evidence.

Courts have noted that where there is "a strong indication of unreliability of the financial information" provided by a defendant, disclosure of account numbers may be necessary. Walker v. County of Contra Costa, 2006 WL 2228943, 4 (N.D. Cal. 2006). Mattel had not been able to obtain any documentary evidence of Lexington's involvement in the Wachovia transaction prior to Ms. Bashaw's and ICA's production, let alone reliable information. Indeed, witness after witness, including Mr. Larian, Neil Kadisha, Mr. Neman and Mr. Mashian, made repeated, false statements under oath about Lexington and their involvement with Lexington. Here, there is every indication that any attempt to obtain further information regarding Lexington will be stymied; indeed, Lexington has "specially appeared" in

---

[19]   Ranahan Decl., ¶ 4.
[20]   Ranahan Decl., ¶ 5.
[21]   Replying to the email chain in which Lexington announced its intention to file the instant application, MGA's counsel, Annette Hurst, asked "Why is there still an issue on this?" Ranahan Decl., Ex. E.

order to make the instant *ex parte* application, presumably on the grounds that it is not subject to the Court's jurisdiction.[22]

Lexington and Ms. Bashaw provide no justification for the proposed destruction of documents. They provide no explanation as to why destruction of documents is warranted under these (or indeed any) circumstances and provide no case law supporting its argument. Furthermore, there is no provision in the Protective Order for the destruction of documents. Lexington and Ms. Bashaw thus ask the Court to craft an unprecedented remedy affirmatively ordering the destruction of evidence and do so on in a belated, *ex parte* request for reconsideration no less. Ms. Bashaw, ICA and Lexington all had ample opportunity to argue *before* the Court compelled production that they should be allowed to redact information. They did not do so. Ms. Bashaw then produced the documents—documents that she and ICA previously denied even existed—pursuant to the Court's Order.[23] These documents also were not inadvertently produced in non-redacted form, and Lexington and Ms. Bashaw make no argument otherwise. And for good reason. No provision in the Order authorized the redaction of financial information; it instead mandated that ICA and Ms. Bashaw "shall produce all non-privileged documents responsive to Mattel's subpoena and produce a

---

[22] By bringing this application, Lexington has waived any arguments that it is not subject to the jurisdiction of this Court. See Trans World Airlines, Inc. v. Mattox, 897 F.2d 773, 786 (5th Cir. 1990), abrogated on other grounds by Heimann v. Nat'l Elevator Indus. Pension Fund, 187 F.3d 493 (5th Cir.1999)) (finding that motion by non-parties to deny plaintiffs' TRO constituted request for affirmative relief subjecting them to court's jurisdiction even though non-parties described themselves as "specially appearing"); see also Wright v. Interbank Capital, Inc., 1999 WL 354516, *2 (N.D.Cal. 1999) (defendant waived jurisdictional defense by seeking to transfer case to another venue). Moreover, substantial evidence additionally shows that Lexington has conducted continuous business in and with California, by acting through in-state agents.

[23] Order Granting Mattel's Motion to Compel documents from International Corporate Advisors and Maria Bashaw, dated March 10, 2010, Docket No. 7631.

1  privilege log specifying and documents withheld on the basis of privilege or work
2  product."[24]

3  As it has confirmed repeatedly, Mattel does not object to maintaining the
4  confidentiality of the documents at issue.  But the drastic remedy of evidence
5  destruction that Lexington and Ms. Bashaw demand should be rejected.

### Conclusion

7  Mattel respectfully requests that Lexington's *ex parte* application be denied
8  and that the Court decline to order the destruction of the March 23rd Bashaw
9  production.

DATED:  April 20, 2010

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[24] <u>Id.</u>