QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | Hon. David O. Carter |
| Defendants. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM BASED ON THEFT OF BRATZ |
| AND CONSOLIDATED ACTIONS | |
| | [Declaration of Scott L. Watson Submitted Herewith] |
| | Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D |
| | Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, at a date and time as the Court may order, in the Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to rule that Mattel's pending claim for trade secret misappropriation encompasses the theft of Bratz-related trade secrets, or to permit Mattel to amend its Fourth Amended Answer and Counterclaims to include the theft of Bratz trade secrets.

Mattel makes this Motion on the grounds that MGA's opposition to Mattel's motion for leave to file its Fourth Amended Answer and Counterclaims misrepresented the record and prior pleadings, wrongly claiming that MGA was not aware that Mattel's existing trade secret claim encompassed Bratz when the record is to the contrary.  MGA has long recognized that Mattel is pursuing in Phase 2 a claim for theft of Bratz-related trade secrets, and it has taken, and continues to take, extensive discovery into that claim and its purported defenses thereto.  Even if MGA were right that an amendment is required to specifically add this claim, that amendment should be allowed because there has been no prejudice, no undue delay, no bad faith,  and the amendment is not futile. Mattel should therefore be permitted to pursue that claim.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Scott L. Watson, any matters of which the Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

### Statement of Compliance

The parties discussed these issues on April 22, 2010, and dates thereafter, and did not reach resolution.

1  DATED:  May 4, 2010          QUINN EMANUEL URQUHART &
                               SULLIVAN. LLP
2

3                               By /s/ John B. Quinn
4                                  John B. Quinn
                                   Attorneys for Mattel. Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.   MATTEL'S CLAIM FOR THEFT OF BRATZ-RELATED TRADE SECRETS HAS LONG BEEN AT ISSUE IN THIS CASE ........................... 2

    A.   The Amended Answer and Counterclaims Has, From the Outset, Encompassed Mattel's Claims as to the Theft of Bratz ......................... 2

    B.   MGA Has Long Known That Mattel's Trade Secret Claim Includes Bratz-Related Trade Secrets ......................................................... 5

    C.   MGA Has Taken Extensive Discovery On Mattel's Bratz-Related Trade Secret Claim .............................................................. 7

    D.   Mattel Should Not Be Precluded From Raising Its Bratz-related Trade Secret Claim In Phase 2 Based On the Bifurcation That MGA Sought .......................................................................... 12

II.  EVEN IF AN AMENDMENT IS REQUIRED, MATTEL SHOULD STILL BE PERMITTED TO PURSUE ITS BRATZ-RELATED TRADE SECRET CLAIM IN PHASE 2 ....................................................... 13

CONCLUSION ................................................................................................... 16

MATTEL, INC.'S MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM BASED ON THEFT OF BRATZ

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4

<u>999 v. C.I.T. Corp.</u>,
5
 776 F.2d 866 (9th Cir. 1985) ................................................................ 6

6

<u>Bell Atl. Corp. v. Twombly</u>,
 550 U.S. 544 (2007) ........................................................................... 3

7

<u>Cascade Capital, Inc. v. Global Materials Corp.</u>,
8
 2004 WL 1683132 (D. Or. July 27, 2004) ...................................... 4

9

<u>Conley v. Gibson</u>,
 355 U.S. 41 (1957) ............................................................................ 4

10

<u>DCD Programs, Ltd. v. Leighton</u>,
11
 833 F.2d 183 (9th Cir. 1987) ...................................................... 13, 14

12

<u>Howey v. United States</u>,
 481 F.2d 1187 (9th Cir. 1973) ......................................................... 15

13

<u>In re Hunt</u>,
14
 238 F.3d 1098 (9th Cir. 2001) ........................................................... 6

15

<u>Islamic Republic of Iran v. Boeing Co.</u>,
 771 F.2d 1279 (9th Cir. 1985) ......................................................... 14

16

<u>PVM Redwood Co., Inc. v. U.S.</u>,
17
 686 F.2d 1327 (9th Cir. 1982) ........................................................... 4

18

<u>U.S. v. Webb</u>,
 655 F.2d 977 (9th Cir. 1981) ........................................................... 14

19

<u>Yamaguchi v. U.S. Dept. of the Air Force</u>,
20
 109 F.3d 1475 (9th Cir. 1997) ........................................................... 4

21

### <u>Statutes</u>

22

Fed. R. Civ. P.
23
 Rule 8 ............................................................................... 1, 3, 4
24
 Rule 8(a) ................................................................................ 14
 Rule 8(a)(2) ........................................................................... 3, 4
25
 Rule 15(a) .............................................................................. 13
 Rule 54(b) ............................................................................. 7

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

In its response to Mattel's Motion for Leave to File a Fourth Amended Answer and Counterclaims ("Motion"), MGA claimed that Mattel should not be able to "add" a "new" claim for trade secret misappropriation based on MGA's theft of Bratz-related trade secrets because MGA did not learn of Mattel's intent to pursue such a claim until 2009 and would be unfairly prejudiced because the claim should have been tried in Phase 1. That is simply wrong. Mattel's trade secret claim was broadly pleaded, consistent with <u>Rule</u> 8. Mattel expressly sought to include its Bratz-related trade secret claim in the Phase 1 trial in its pre-trial orders submitted in 2008. MGA itself insisted that Mattel try its Bratz-related trade secret claim in Phase 2 rather than Phase 1. During Phase 2, MGA has taken, and continues to take, extensive discovery into this claim; indeed, it has continued to focus on this claim in discovery taken after this Court's April 10 order.[1]

Although the Court noted in its Order that Mattel is free to move for leave to "add claims related to the Bratz and Jade lines after the Ninth Circuit issues a ruling on the MGA Parties' appeal" (Order at 10), compelling reasons support Mattel's decision to bring a motion at this time. First, Mattel is concerned that any delay in bringing these issues to the Court's attention may be cited by other parties as a basis for denying relief on the ground of undue delay and prejudice; while discovery remains ongoing, no such claim can credibly be raised. Second, resolution of this issue affects the scope of ongoing discovery: despite MGA's position that Mattel's Bratz-related trade secret claim has never been at issue in Phase 2, it is continuing to take costly and time-consuming discovery into that very claim, including as to statute of limitations issues which would otherwise be irrelevant. While Mattel would have no substantive

---

[1] That Order denied without prejudice Mattel's motion to the extent it sought to add "claims predicated on the identification of Bratz and Jade as 'trade secrets.'" April 10, 2010 Order ("Order"), Dkt. 7712, at 10.

00505.07975/3436632.7

1  objection to such discovery if the claim were properly at issue, which Mattel believes it
2  is, such discovery would be improper and irrelevant if the claim is not at issue in Phase
3  2.  The Court's guidance on the status of the claim is therefore required.  Finally,
4  MGA's opposition to Mattel's FAAC and its claims of delay and prejudice as to this
5  claim were premised on misrepresentations which the Court appears to have relied upon
6  (see Order at 9-10), and which Mattel had no opportunity to correct before the Court
7  ruled.  In fact, the inclusion of Mattel's Bratz-related trade secret claim in Phase 2,
8  whether because the claim has long been at issue or by its addition now through
9  amendment, will result in no prejudice to MGA given its long awareness of the claim
10 and the scope of the discovery it already has taken.  If an amendment to add the claim is
11 indeed required, the liberal policy favoring amendments, and the absence of any
12 countervailing concern of prejudice, undue delay, bad faith or futility, counsel that
13 Mattel should be permitted to pursue the claim in Phase 2.

14      Accordingly, Mattel respectfully requests that the Court rule that Mattel's Bratz-
15 related trade secret claim is properly at issue in the case.

16                                    **Argument**

17 **I.    MATTEL'S CLAIM FOR THEFT OF BRATZ-RELATED TRADE**
18      **SECRETS HAS LONG BEEN AT ISSUE IN THIS CASE**

19      **A.    The Amended Answer and Counterclaims Has, From the Outset,**
20           **Encompassed Mattel's Claims as to the Theft of Bratz**

21      The very first paragraph of Mattel's Amended Answer and Counterclaims
22 ("Counterclaims"), as filed on January 12, 2007, states:

23           For years, MGA Entertainment, Inc. has engaged in a pattern of stealing
24           and using Mattel, Inc.'s property and trade secrets.  MGA's use of the
25           stolen property and trade secrets caused and continues to cause significant
26           harm to Mattel.  ***MGA first stole "Bratz," a fashion doll, from Mattel,***

27
28

*and then continued to steal Mattel's confidential and proprietary information to fuel MGA's growth*.[2]

In the paragraphs that follow, which detail MGA's theft of Mattel's confidential and proprietary information, Mattel repeatedly referenced the theft of Bratz.[3] In particular, Mattel detailed how Bryant and other MGA Parties had "misappropriated and misused Mattel property and Mattel resources for the benefit of Bryant and MGA," including the "concept, design and name of Bratz."[4] Mattel explained that MGA "stole a fashion doll that was owned by Mattel – 'Bratz,'" as well as "other confidential information that comprise Mattel's intellectual infrastructure. MGA's rapid growth was not organic, but rather was based upon its theft of Bratz."[5] Mattel alleged that Bryant's theft of Mattel's proprietary materials was in violation of Bryant's employment agreement with Mattel, which prohibited the use or disclosure of Mattel's "Proprietary Information."[6] Mattel's trade secret misappropriation claim incorporated all the substantive allegations concerning MGA's and Bryant's theft of Bratz-related information,[7] and broadly pleaded a claim for misappropriation of "the documents, materials and information stolen by" four enumerated individuals and "other persons acting for, on behalf of or at the direction of MGA and/or Larian," including "Other Former Employees" of Mattel.[8]

In accordance with <u>Fed. R. Civ. P.</u> 8(a)(2)'s liberal "notice pleading" requirements, Mattel's pleading was sufficient to put MGA on notice that its misappropriation claim included MGA's theft of Bratz-related trade secrets. <u>Rule</u> 8 requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007) (citation

---

[2] Counterclaims, ¶ 1 (emphasis added).
[3] <u>Id.</u> at ¶¶ 21-36.
[4] <u>Id.</u> at ¶ 26.
[5] <u>Id.</u> at ¶ 20.
[6] <u>Id.</u> at ¶¶ 23, 26, 36, Ex. A.
[7] <u>Id.</u> at ¶ 106.
[8] <u>Id.</u> at ¶ 107.

omitted).  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Id.</u>; <u>see</u> <u>Yamaguchi v. U.S. Dept. of the Air Force</u>, 109 F.3d 1475, 1481 (9th Cir. 1997) (under notice pleading, it is not required that claimant "set out in detail the facts upon which he bases his claim") (citation omitted).  Such a simplified pleading standard is "made possible by the liberal opportunity for discovery and other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47-48 (1957).

As Judge Larson already found in granting Mattel leave to file its Third Amended Counterclaims, <u>Rule</u> 8 did not require Mattel to specifically identify each trade secret at issue in its pleading; provided that Mattel include "a short and plain statement" of the claim, which it did, "***[t]he details are filled in by discovery***."  Dkt. 5565, at 6 (emphasis added); <u>see also</u>  <u>PVM Redwood Co., Inc. v. U.S.</u>, 686 F.2d 1327, 1331 (9th Cir. 1982) ("The function of pleadings is to give the opposing party fair notice of the nature and basis or grounds of the claim, and a general indication of the type of litigation involved. . . .  The discovery process bears the burden of filling in the details.") (internal citations omitted); <u>Cascade Capital, Inc. v. Global Materials Corp.</u>, 2004 WL 1683132, at * 1 (D. Or. July 27, 2004) (complaint adequately stated a claim because "Fed. R. Civ. P. 8(a)(2) 'indicates the objective of the rules is to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details.'") (citing 5 Wright & Miller, Federal Practice and Procedure, Civil 2d § 1215).

Accordingly, Mattel's misappropriation of trade secrets claim was broadly pleaded in accordance with <u>Rule</u> 8 to include allegations of theft of Bratz-related trade secrets.  When Mattel substantially modified all its counterclaims in the Fourth

1  Amended Counterclaims to address MGA's previously expressed concerns about lack
2  of clarity and conciseness, including by adding the word "Bratz" in two places, Mattel
3  reiterated that – as both parties have long known – Mattel's trade secret
4  misappropriation claim includes elements of Bratz.  MGA should not be permitted to
5  seize on that clarification to dispose entirely of a claim that already was at issue in the
6  case.

7  **B.  <u>MGA Has Long Known That Mattel's Trade Secret Claim Includes</u>**
8  **<u>Bratz-Related Trade Secrets</u>**

9  MGA states that "Mattel did not identify Bratz or Jade as trade secrets at any
10 point until July 2009, when it first identified these two items as trade secrets in
11 interrogatory responses."  (Opp. at 16; <u>see also</u> Opp. at 3 ("Mattel proposes to add
12 Bratz, Jade and Moxie for the first time as the basis for its trade secret claims."); Opp.
13 at 3-4 ("[I]t was not until September 2009 in its interrogatory responses that Mattel first
14 claimed that Bratz and Jade were trade secrets.")).[9]  If there was any uncertainty as to
15 the scope of Mattel's trade secret claim, and specifically whether it included Bratz-
16 related trade secrets, that uncertainty was categorically addressed in April 2008, when
17 the parties exchanged drafts of a joint Phase 1 Pre-Trial Conference Order ("PTCO").
18 Explicitly recognizing the overlap between its trade secret claim *as it relates to Bratz*
19 and other Phase 1 issues, Mattel proposed in multiple drafts of the PTCO to include
20 *that part* of its trade secret claim in Phase 1.  Thus, Mattel's PTCO expressly stated
21 Mattel's intent to pursue in the Phase 1 trial a claim for misappropriation of trade
22 secrets that would require Mattel to prove the following:

23    1)    That Mattel owned the Bratz drawings;
24    2)    That the Bratz drawings were trade secrets at the time of the
25          misappropriation;

---

[9]  MGA's reference to July 2009 at one point in its opposition and September 2009 at another is never explained.  In fact, neither date is accurate.

3)   That Mr. Bryant, MGA, MGA HK, and/or Mr. Larian improperly acquired, used or disclosed the trade secrets;

4)   That Mr. Bryant, MGA, MGA HK, and/or Mr. Larian was unjustly enriched; and

5)   That Mr. Bryant's, MGA's, MGA HK's, and/or Mr. Larian's acquisition, use or disclosure of the trade secrets was a substantial factor in causing them to be unjustly enriched.[10]

Mattel's multiple drafts of the PTCO unequivocally provided MGA with notice that the trade secret claim raised by Mattel encompassed Bratz-related information stolen by MGA.[11]

Mattel's proposed jury instructions further confirmed that its trade secret claim encompassed the theft of Bratz trade secrets. Prior to the Phase 1 trial, Mattel provided to MGA proposed Phase 1 jury instructions explicitly addressed to the claim for trade secret misappropriation based on the MGA Parties' alleged theft of "***Bratz drawings [that] were trade secrets at the time of the misappropriation.***"[12] Indeed, Mattel proposed six separate instructions in support of that claim, including instructions that specified what Mattel would need to establish "to prove that the Bratz drawings were trade secrets."[13] MGA did not overlook those instructions. Instead, it objected to each of them on the grounds that "Mattel does not assert a claim for misappropriation of trade secrets ***in Phase One***."[14] MGA also filed a motion *in limine* to preclude evidence of Mattel's Phase 2 claims, arguing that Mattel's proposed jury instructions "spend

---

[10] See April 18, 2008 draft proposed PTCO, at 18, 23-24, Declaration of Scott. L. Watson ("Watson Dec."), Ex. 1.

[11] See In re Hunt, 238 F.3d 1098, 1101-02 (9th Cir. 2001) (a "pre-trial order 'has the effect of amending the pleadings'") (citation omitted); 999 v. C.I.T. Corp., 776 F.2d 866, 871 n. 2 (9th Cir. 1985) (affirmative defense was not waived despite its omission from the pleadings where it was included in the pre-trial order).

[12] Mattel's Proposed Jury Instructions, April 1, 2008, at 46-51 (emphasis added), Watson Dec., Ex. 2.

[13] Id. at 47.

[14] MGA's Objections to Mattel's Proposed Jury Instructions, April 16, 2008, at 72-83 (emphasis added), Watson Dec., Ex. 3.

pages setting out the elements of a claim for Misappropriation of Trade Secrets that ***will not be tried until Phase Two***."[15]   Likewise, the MGA Parties argued in the proposed PTCO filed with the Court that they "did not focus their discovery efforts on Mattel's misappropriation of trade secrets claim on the understanding that it was a Phase 2 claim and because they were never informed by Mattel that this claim related to ownership of Bratz," and that "[t]he MGA parties and Bryant would be prejudiced by any revision of the Court's bifurcation and trial phasing order at this late date."[16]

Mattel reaffirmed its intent to pursue a Bratz-related trade secret claim shortly after Phase 2 discovery commenced in January 2009.  On February 13, 2009, the parties, at the Court's request, submitted briefing concerning "whether the Court should enter judgment under Rule 54(b)."[17]   In its brief, Mattel argued that judgment under Rule 54(b) was not appropriate "because of the substantial overlap between the issues and claims in Phase 1 and Phase 2."[18]   Such a substantial overlap was inevitable, Mattel stated, because it "***is pursuing in Phase 2 a misappropriation of trade secrets claim against MGA based in part on the theft of the Bratz designs***," which claim "clearly overlaps with Phase 1 issues."[19]

All this shows that MGA's recent representations that "Mattel did not identify Bratz or Jade as trade secrets at any point until July 2009" or September 2009 are not accurate.

## C.   MGA Has Taken Extensive Discovery On Mattel's Bratz-Related Trade Secret Claim

MGA argued in its opposition that it will be prejudiced because adding Bratz-related trade secrets to the case "now that the parties have engaged in discovery practice

---

[15]   MGA's Motion *in Limine* No. 6, April 14, 2008, at 5 n.4 (emphasis added).
[16]   Amended Final Pre-Trial Conference Order for Phase 1 Trial, May 23, 2008, at 17, Watson Dec., Ex. 4.
[17]   Memorandum of Mattel, Inc. Regarding Entry of Judgment Pursuant to Rule 54(b) and Phase 1, February 13, 2009, Dkt. 4835, at 1.
[18]   Id.
[19]   Id. at 5.

on all of the Phase 1 issues and nearly all of the Phase 2 trade secret issues will necessitate yet another massive round of discovery regarding this new trade secret claim." (Opp. 17). MGA did not, however, identify what discovery it allegedly would need to take. That is because MGA already has obtained substantial discovery on Mattel's Bratz-related trade secret claim, and is continuing to take such discovery.

On July 31, 2009, Mattel responded to MGA interrogatories asking it to "identify with specificity each alleged trade secret."[20] In its response, Mattel identified, expressly, "[a]ll information relating to any ideas, designs, conceptions, or names for Bratz," and also included a list of documents containing such trade secrets.[21] MGA does not contend that Mattel's interrogatory responses were untimely or incomplete.

Since then, MGA has continued to take discovery on Mattel's Bratz-related trade secret claim, expressly relying on the pendency of that claim to obtain it. For example, on December 17, 2009, arguing that Mattel's CEO should be ordered to answer deposition questions about whether, on certain assumptions, MGA did anything "wrong" in contracting with Bryant and exploiting Bratz, counsel for MGA argued to the Discovery Master: "Well, let me say this. It's part of Phase 2. **They have made a trade secret misappropriation claim based on Bratz.** Let me say that again. **There is a trade secret misappropriation claim in Phase 2 with an allegation of willful misappropriation of trade secrets against MGA Entertainment and Mr. Larian based on Bratz.**"[22] MGA made the same point earlier in a motion to compel its document requests, arguing that its requests sought relevant information because they "**relate . . . to Mattel's alleged trade secrets in 'Bratz.'**"[23] At another deposition, MGA's counsel,

---

[20] See Mattel, Inc.'s First Supplemental Objections and Responses To Interrogatory nos. 20-23 and 28 In MGA Entertainment, Inc.'s Second Set of Interrogatories, July 31, 2009, at 4, Watson Dec., Ex. 5.

[21] Id. at 16-18.

[22] Robert Eckert Dep., December 17, 2009, at 488:7–490:5, Watson Dec., Ex. 6 (emphasis added).

[23] MGA's Reply in Support of Motion to Compel Further Responses to MGA's Requests for Production of Documents, October 29, 2009, Dkt. 7066, at 17 (emphasis added).

00505.07975/3436632.7

again in the context of seeking answers to questions over Mattel's objection, invited Mattel to "[f]eel free to withdraw the trade secret claims on Bratz and then we won't have to do this."[24]

MGA also has taken extensive discovery on its purported timeliness defenses to Mattel's Bratz-related trade secret claim. Among other things, MGA has asked numerous witnesses about Mattel's 2002 investigation into whether or not Bratz infringed an unreleased Mattel product called "Toon Teens"; the phrase "Toon Teens" appears more than 150 times in the two Phase 2 deposition transcripts of Mattel's in-house counsel, Michael Moore, and dozens more times in other Phase 2 depositions.[25] MGA also examined Michael Moore and Mattel's General Counsel Robert Normile at length about the timing and substance of each of their communications with Danny K. H. Yu, an attorney in Hong Kong whom MGA claims had information concerning the timing of Mattel's discovery of its Bratz-related counterclaims, including Mattel's Bratz-related trade secret claim.[26] With respect to Phase 2 claims, the Toon Teens "investigation" and Mattel's interactions with Mr. Yu could be relevant, if at all, only to MGA's claimed timeliness defenses to Mattel's Bratz-related trade secret claim.

A motion MGA filed with the Discovery Master makes this abundantly clear. In that motion, which sought the issuance of Letters of Request for Judicial Assistance regarding the deposition of and documents from Danny K. H. Yu, MGA claimed it needed this discovery to further its timeliness defenses to "***Mattel's counterclaim for misappropriation of purported trade secrets in BRATZ***."[27] MGA noted in its motion that "[o]n November 20, 2006, Mattel moved to assert counterclaims in this litigation

---

[24]   Jaime Elias Dep., November 18, 2009, at 732:14-732:16.
[25]   See Michael Moore Dep., February 17 and 18, 2010; see also Richard De Anda Dep., January 27 and 28, 2010 (56 hits total); Robert Normile Dep., February 15, 2010 (32 hits); Robert Eckert Dep., February 22, 2010 (22 hits).
[26]   See Michael Moore Dep., February 18, 2010 at 423:12–429:18, 430:25–441:13, 445:7–460:12; Robert Normile Dep., February 15, 2010, at 185:24–192:21, 197:2–202:4, 204:24–210:20, 214:2–219:22, 221:23–224:11.

against MGA and Larian for, among other things, misappropriation of trade secrets," and explained that a claim for trade secret misappropriation must be raised within three years of its discovery.[28]   With that background, MGA argued that the discovery it sought, which concerned information that purportedly was available to Mattel in 2002 and 2003 (more than three years before Mattel moved for leave to file the Counterclaims in 2006) was relevant because:

> Whether or not Mattel discovered or, by the exercise of reasonable diligence, should have *discovered the alleged misappropriation of purported trade secrets in 'Bratz' more than three years before putting them at issue in this litigation*, is directly at issue in connection with MGA's statute of limitations defense to the trade secret misappropriation counterclaim.[29]

MGA claimed that it "has reason to believe that" the discovery it sought "will reveal highly relevant evidence in this litigation, and specifically evidence that may show *Mattel's trade secret counterclaim based on 'Bratz'* (and any other state law tort claims based on 'Bratz') is time-barred."[30]

Over Mattel's objection, the Discovery Master granted MGA's motion, noting that "the [Third Amended Counterclaims] alleges that the MGA Parties engaged in a massive and pervasive theft of Mattel's confidential and trade secret information" and that the discovery MGA sought – which specifically concerned Bratz-related trade secrets – could be relevant to its defense of that claim.[31]   MGA thus sought, and obtained, discovery by affirmatively relying upon the position that it now vehemently disputes:  that Mattel's Bratz-related trade secret claim was put "at issue" in the January

---

[27]   MGA Parties' Notice and Application for Issuance of Letter of Request for Judicial Assistance Re: Danny K.H. Yu and Bird & Bird, September 4, 2009, Dkt. 6589, at 2 n.1 (emphasis added).
[28]   Id. at 2.
[29]   Id. at 2-3 (emphasis added).
[30]   Id. at 5 (emphasis added).

MATTEL, INC.'S MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM BASED ON THEFT OF BRATZ

1  2007 Counterclaims.  Although MGA purported to "reserve[] its right," in a footnote to

2  its argument, to later assert that Mattel's claim for misappropriation of Bratz trade

3  secrets had not been "adequately pled and/or asserted by November 20, 2006,"[32]

4  MGA's argument nonetheless shows that its present assertions of prejudice based on its

5  claimed need to take "another massive round of discovery" into a "new" and previously

6  undisclosed claim were not accurate.[33]

7      MGA continues to take discovery into Mattel's Bratz-related trade secret claim.

8  Indeed, just this week MGA examined Mattel's CEO extensively concerning fashion

9  doll royalty rates, stating that such discovery is relevant to Mattel's damages claims.[34]

10  MGA also is continuing to pursue its efforts to depose Danny Yu in support of its

11  alleged statute of limitations defense to Mattel's Bratz-related trade secret claim.  While

12  Mattel would have no substantive objection to such discovery if its Bratz-related trade

13  secret claim is pending, such discovery would be improper and irrelevant otherwise.

14      In sum, for the past two years MGA has repeatedly acknowledged that Mattel is

15  pursuing a claim for theft of Bratz-related trade secrets.  MGA insisted that the claim be

16  tried in Phase 2, and during Phase 2 MGA relied on the pendency of the claim as a

17  basis for discovery.  MGA's reversal of position in its opposition to Mattel's Motion

18  was a misleading attempt to seize on minor changes Mattel made to its pleading to

19

20

21

---

22  [31]  Discovery Master Order No. 77, November 9, 2009, at 2, 5.

[32]  Dkt. 6589, at 3-4 n.4.

23  [33]  Moreover, to the extent Mattel's Bratz-related trade secret claim overlaps with issues litigated in Phase 1, MGA also has the benefit of discovery and other evidence

24  disclosed during Phase 1.  Indeed, on January 10, 2010, in response to a request by counsel for MGA for "sources we can turn to for prior testimony on the alleged Bryant

25  trade secrets,"  Mattel provided to MGA's counsel a list of witnesses who testified at deposition during Phase 1 concerning Bryant's theft of Bratz.  See January 7, 2010 e-

26  mail from W. Molinski to J. Corey, and January 10, 2010 response e-mail from J. Corey to W. Molinski.  Mattel offered to discuss the issue further, but MGA has not

27  responded.

[34]  See, e.g., Robert Eckert Dep. Vol. 7 (Rough), April 27, 2010, at 220:15-225:23;

28  id. Vol. 8, April 28, 2010, at 1606:7-1615:22.

-11-

MATTEL, INC.'S MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM
BASED ON THEFT OF BRATZ

1   make it more clear and concise.  Mattel should be permitted to pursue its claim for theft

2   of Bratz-related trade secrets.[35]

3   **D.**  **Mattel Should Not Be Precluded From Raising Its Bratz-related**

4   **Trade Secret Claim In Phase 2 Based On the Bifurcation That MGA**

5   **Sought**

6   MGA argues that Mattel unduly delayed by purportedly failing to raise its trade

7   secret claim as it relates to Bratz in Phase 1, noting that "this case went to trial without

8   any claim that Bratz or Jade was a trade secret." (Opp. at 16).  MGA's suggestion that

9   Mattel is to blame for not including its Bratz-related trade secret claim in the Phase 1

10  trial is ironic and unfair.  From the time when bifurcation was first proposed, Mattel

11  consistently *opposed* bifurcation, including on the grounds that its trade secret and

12  RICO claims overlap with the issues relating to Bratz ownership, such that bifurcation

13  would be unduly complicated and inefficient.[36]  Judge Larson nonetheless ordered the

14  case to be bifurcated at MGA's urging.  Mattel then proposed again shortly before the

15  Phase 1 trial that its trade secret claim be included in the Phase 1 trial *to the extent it*

16  *turns on theft of Bratz trade secrets*.  And, again, MGA insisted that it be tried in

17  Phase 2.  It would be inequitable to now preclude Mattel from raising that claim in

18  Phase 2.

19

20  _____

21  [35]  Nothing MGA cites establishes that Mattel intentionally excluded Bratz from its trade secret claim.  Contrary to MGA's argument, Mattel did not "disclaim" Bratz as a trade secret on the eve of trial.  (Opp. at 3).  Rather, Mattel disclaimed a copyright

22  claim based on the term "Bratz" "because there's doctrine that says short phrases and statements couldn't be copyright."  May 23, 2008 Hearing Tr., at 79-80.  Nowhere in

23  the cited exchange did Mattel discuss its trade secret claims at all.  Further, Mattel's March 2, 2007 letter concerning its trade secret claim (see Opp. at 8) did not purport to

24  include an exhaustive listing of Mattel's trade secrets; its language makes clear that the Bates numbers listed were not exhaustive.  Finally, at the March 19, 2007 hearing cited

25  by MGA (Opp. at 8) Mattel merely acknowledged that its trade secret damages were continuing through 2006, not that the claim dated back only to 2004.

26  [36]  Jan. 8, 2007 Hearing Tr., at 8:3-9:17, Watson Dec., Ex. 7 (arguing that "the whole episode with respect to Mr. Bryant and the original creation of Bratz was just

27  one of a series of events which have happened," and that all of the alleged thefts of Mattel trade secrets and information constitute a "pattern of racketeering activity . . .

28  that has to be addressed in one proceeding").

MATTEL, INC.'S MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM
BASED ON THEFT OF BRATZ

Trying this aspect of the trade secret claim in Phase 2 also will not lead to inefficiencies or additional burdens on the Court or the parties. The theft of Bratz trade secrets is already at issue in the Phase 2 trial in connection with Mattel's RICO claims. Since it first raised its RICO claims, Mattel has included the theft of Mattel's "confidential, proprietary and otherwise valuable" property as a factual basis for its RICO and RICO conspiracy claims.[37] This was made clear from the first pleading of the RICO claims; more than 150 predicate act communications attached to Mattel's counterclaims since 2007 are communications *in furtherance of the theft of Bratz*.[38] Trying Mattel's Bratz trade secret claim in Phase 2 will therefore lead to no additional burdens or inefficiencies because the same factual issues already are, and always have been, at issue in Phase 2.

## II.  EVEN IF AN AMENDMENT IS REQUIRED, MATTEL SHOULD STILL BE PERMITTED TO PURSUE ITS BRATZ-RELATED TRADE SECRET CLAIM IN PHASE 2

Because Mattel was not seeking leave to add a new claim concerning Bratz-related trade secrets, Mattel did not discuss the addition of that claim in its Motion for Leave to Amend, as the Court noted (Order at 10). But if the Court, even on the full record, concludes that Mattel is required to amend its pleading to *add* a claim for Bratz-related trade secret theft, Mattel should be permitted to do so. Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires" and that its "policy of favoring amendments to pleadings should be applied with extreme liberality." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185-186 (9th Cir. 1987) (citation and internal quotation omitted). None of the four factors that are "commonly used to determine the propriety of a motion for leave to amend" – bad faith, undue delay, prejudice to the opposing party, or futility of amendment – is present here. Id.

---

[37] Counterclaims, ¶¶ 91-93, 99-101.
[38] See Second Amended Counterclaims, Ex. C, Dkt. 654.

MATTEL, INC.'S MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM BASED ON THEFT OF BRATZ

1        There was no undue delay.  To the extent Mattel's Bratz-related trade secret

2   claim was not adequately pleaded in the Counterclaims, which Mattel contends it was,

3   the claim has been at issue from both parties' perspectives since, at the latest, early

4   2008 when the parties exchanged Phase 1 pre-trial documents.  MGA's argument that

5   Mattel "delayed" until July 2009 before it identified Bratz as a trade secret is belied by

6   the record.  Further, that Mattel did not earlier formally amend its pleading to add a

7   Bratz-related trade secret claim does not reflect delay, but rather that Mattel believed

8   that the claim was already at issue in the Counterclaims, which includes numerous

9   allegations about MGA's theft of Bratz proprietary information.  In contrast, Mattel did

10  move for leave to amend the Second Amended Counterclaims to add allegations about

11  Jorge Castilla's trade secret theft because Mattel had not previously included any

12  specific allegations about Castilla in its pleading.[39]  Even in that circumstance, Judge

13  Larson ruled that Mattel's amendments were proper because Mattel's allegations

14  concerning Castilla "are already within the scope of the" Second Amended

15  Counterclaims, such that the amendments were "in the nature of 'clean up' amendments

16  that succinctly state existing issues fairly stated in the SAAC when measured by the

17  requirements of Rule 8(a)."[40]  Such is the case here with respect to Mattel's addition of

18  the words "Bratz" and "Jade" in two places in its pleading; those changes merely "clean

19  up" and clarify Mattel's previously stated trade secret claim, and they therefore are

20  timely even if they could have been made earlier.

21       In any event, "delay, by itself, is insufficient to justify denial of leave to amend."

22  DCD Programs, 833 F.2d at 186 (citing U.S. v. Webb, 655 F.2d 977, 980 (9th Cir.

23  1981) ("[D]elay alone no matter how lengthy is an insufficient ground for denial of

24  leave to amend.") (citation omitted)); see also Islamic Republic of Iran v. Boeing Co.,

25  771 F.2d 1279, 1287 (9th Cir. 1985) (two year delay between discovery of the

26

27  ───────────────

28  [39]   See Mattel's Motion for Leave to File Third Amended Answer and Counterclaims, dated April 8, 2009, Dkt. 5153, at 10-11.

-14-

1  counterclaims and moving to amend did not, by itself, necessitate denial of leave to

2  amend); Howey v. United States, 481 F.2d 1187, 1191 (9th Cir. 1973) ("Only where

3  prejudice is shown or the movant acts in bad faith are courts protecting the judicial

4  system or other litigants when they deny leave to amend a pleading.").  MGA can show

5  no prejudice; as discussed above, MGA already has taken substantial discovery into this

6  claim, and it is not barred from taking more discovery if needed.  There also is no bad

7  faith.  Mattel has unambiguously indicated its intent to pursue a Bratz-related trade

8  secret claim since before the Phase 1 trial, and it did not "choose" not to disclose that

9  claim for any strategic reason.[41]  Finally, MGA did not claim – nor could it credibly do

10  so – that Mattel's Bratz-related trade secret claim is futile.

11       Accordingly, even if Mattel had not previously stated a claim for Bratz-related

12  trade secret theft, it should be permitted to amend its pleading to include such claim

13  now.

---

[40]  Order Granting Leave to File a Third Amended Answer and Counterclaims, dated May 21, 2009, Dkt. 5565 at 5-6.

[41]  MGA's assertions of "bad faith" regarding CUTSA preemption were without basis.  (Opp. at 18-19).  According to MGA, had Mattel "identified Bratz and Jade as trade secrets prior to the Phase 1 trial, it could not have proceeded to trial on the state law claims that it tried in Phase 1" because those claims would have been preempted by CUTSA.  (Opp. at 18).  But as discussed herein, Mattel *did* identify Bratz-related trade secrets prior to the Phase 1 trial and, moreover, MGA *did* raise its CUTSA preemption defense to Mattel's other state law claims, albeit unsuccessfully, in its JMOL motions. See MGA Parties' Motion for Partial Judgment as a Matter of Law (Phase 1b), August 18, 2008, Dkt. 4264, at 5, n. 4; MGA Parties' Motion for Partial Judgment as a Matter of Law for Phases 1A and 1B, December 22, 2008, Dkt. 4496.  In fact, CUTSA preemption was one of the grounds MGA cited in seeking an emergency stay pending appeal with the Ninth Circuit.  See Ninth Circuit Emergency Motion for Stay Pending Appeal, December 19, 2008, at 44-45.

MATTEL, INC.'S MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM
BASED ON THEFT OF BRATZ

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**Conclusion**</u>

For the reasons discussed above, the Court should confirm that Mattel's trade secret misappropriation claim based on Bratz-related trade secrets is at issue in Phase 2.


DATED:  May 4, 2010                     QUINN EMANUEL URQUHART & SULLIVAN, LLP



                                        By /s/ John B. Quinn
                                           John B. Quinn
                                           Attorneys for Mattel, Inc.

-16-
MATTEL, INC.'S MOTION TO CONFIRM PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM BASED ON THEFT OF BRATZ