1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
5  San Francisco, CA  94105-2669
   Tel: (415) 773-5700/Fax: (415) 773-5759
6
   WILLIAM A. MOLINSKI (State Bar No. 145186)
7  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
9  Tel. (213) 629-2020/Fax: (213) 612-2499

10 THOMAS S. MCCONVILLE (State Bar No. 155905)
   tmcconville@orrick.com
11 ORRICK, HERRINGTON & SUTCLIFFE LLP
   4 Park Plaza, Suite 1600
12 Irvine, CA 92614-2258
   Tel: (949) 567-6700/Fax: (949) 567-6710
13 Attorneys for MGA Parties

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                   SOUTHERN DIVISION

17
   CARTER BRYANT, an individual,       Case No.  CV 04-9049-DOC (RNBx)
18
              Plaintiff,               Consolidated with:
19                                     Case No. CV 04-9059
         v.                            Case No. CV 05-2727
20
   MATTEL, INC., a Delaware            Hon. David O. Carter
21 corporation,
                                       **MGA'S OPPOSITION TO**
22            Defendant.               **MATTEL'S MOTION TO COMPEL**
                                       **FURTHER MGA 30(B)(6)**
23                                     **DEPOSITION**

24 ─────────────────────────────

25 AND CONSOLIDATED ACTIONS

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................. 2

    A.      MGA's Pending Motion for Protective Order. ................................... 2

    B.      Mattel Refused to Meet and Confer to Prioritize Its 151 Topics for a Three-Day 30(b)(6) Deposition on MGA. ................................ 3

    C.      MGA Diligently Prepared and Offered its Designees on 38 Separate Topics for Deposition. ...................................................... 4

    D.      MGA Agreed to Continue the 30(b)(6) Deposition Related to its Affirmative Claims. ........................................................................ 5

III.    MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY ON CATEGORIES 1-25 SHOULD BE DENIED. ................ 5

    A.      Mattel's Motion on MGA's Affirmative Claim Topics (Categories 26 and 28) Is Premature and Unfounded. ..................... 6

    B.      Mattel's Motion on Categories 3, 5, and 6 Ignores The Court's Prior Protective Order. ................................................................... 6

    C.      Mattel's Motion Ignores that MGA Has Already Provided 30(b)(6) Testimony on Categories 13, 17, and 21. ............................ 7

    D.      Mattel's Motion on Categories 7, 8, 9, 10, and 11 Is Cumulative of 30(b)(6) Testimony Provided by MGA Mexico. .......................... 8

    E.      Mattel's Categories 14, 15, and 22 Are Not Relevant to Any Remaining Claim or Defense. ........................................................ 9

    F.      Mattel's Motion on Categories 1, 16, and 25 Seeks Improper 30(b)(6) Testimony. ..................................................................... 10

IV.     MGA PROPERLY LIMITED TESTIMONY ON THE REMAINING CATEGORIES ......................................................................................... 11

    A.      MGA Properly Limited The Scope of Testimony on Category 4. ..... 11

    B.      MGA Properly Limited the Scope of Testimony on Category 12. ..... 12

    C.      MGA Did Not Limit Testimony Regarding MGA's Payments or Finances (Categories 2, 23, and 24). ............................................ 13

    D.      Mattel's Argument Regarding MGA's Affirmative Claims Is Premature and Unfounded. ......................................................... 14

V.      MGA WITNESSES WERE ADEQUATELY PREPARED AND SHOULD NOT BE COMPELLED TO RETURN FOR DEPOSITION. ........................................................................................ 14

    A.      MGA More Than Adequately Prepared Its Designee (Mr. Brawer) on Trade Secret-Related Topics (Category 12). ................ 15

    B.      MGA More Than Adequately Prepared Its Designee (Mr. Schultz) on Financial Topics (Categories 2, 19, 23, and 24). ........... 17

    C.      MGA More Than Adequately Prepared Its Designee (Mr. Woolard) on Categories 18 and 23. ............................................... 18

**TABLE OF CONTENTS**
**(Continued)**

**Page**

D.  MGA Has Agreed to Continue the 30(b)(6) Deposition of MGA on the Remaining affirmative claim topics..........................................20

VI.  CONCLUSION ............................................................................20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*McCormick-Morgan, Inc.* v. *Teledyne Indus., Inc.*,
134 F.R.D. 275 (N.D. Cal. 1991), rev'd in part on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) ..................................................................... 9, 10

## STATE CASES

*3M Co* v. *Kanbar*,
No. C06-01225, 2007 WL. 1794936 (N.D. Cal. June 19, 2007) ...................... 10

*FDIC* v. *Wachovia Insurance, Inc.*,
2007 WL. 2460685 (D.Conn. 2007) .................................................... 13

*Google Inc.* v. *American Blind & Wallpaper Factory, Inc.*,
2006 WL. 2318803 (N.D.Cal. 2006) .............................................. *passim*

*In re JDS Uniphase,*
2007 WL. 219857 (N.D.Cal. 2007) ..................................... 13, 15, 20

*In re Ski Train,*
2006 WL. 1328259 (S.D.N.Y. 2006) .................................... 10, 12, 14

## FEDERAL STATUTES

Fed. R. Civ. Pro. 30(b)(6) ........................................................... 2, 8, 13

## I.    INTRODUCTION

Mattel's motion to compel further testimony from MGA offers a distorted view of Mattel's 30(b)(6) deposition of MGA.  Mattel argues that MGA only provided designees on eight out of its 28 "categories" for deposition, that MGA unilaterally narrowed certain of Mattel's categories, and that MGA failed to adequately prepare its witnesses for deposition.

Mattel's motion is fundamentally flawed because it fails to consider the 30(b)(6) testimony that Mattel has received, it fails to consider the efforts that MGA and its designees made to prepare, and it completely ignores Mattel's own gamesmanship and disinclination for taking topical depositions.

Contrary to Mattel's assertion that MGA only designated witnesses on eight topics, in truth MGA designated and prepared four witnesses on 38 of Mattel's separately noticed topics.  This arithmetic disconnect is the result of Mattel's purported "prioritization" of 28 deposition categories, which still subsume more than 131 deposition topics that Mattel has refused to reduce to a number that could reasonably be accomplished in the three days ordered by the Court.

Moreover, contrary to Mattel's suggestion of lack of preparation, MGA's counsel and its designees spent more that 250 hours reviewing thousands of documents, scores of depositions, and conferred with dozens of individuals in order to prepare for the designated topics.  MGA's four designees collectively provided in excess of 30 hours of 30(b)(6) testimony.  And, MGA had agreed to continued the 30(b)(6) deposition related to its affirmative claims topics.

Finally, Mattel noticeably omits from its motion the fact that in each of the depositions of MGA's four designees, Mattel pursued irrelevant and time consuming lines of questioning and failed to examine each of these witnesses on the topics for which they were designated and prepared. and which Mattel contends goes to the heart of its case.  Stunningly, Mattel now moves the Court to compel MGA to offer these same witnesses on different topics still.  Mattel's motion to

compel is a thinly-veiled attempt to foist on MGA the Sisyphusian task of continuing to prepare and defend unending 30(b)(6) depositions.

Because MGA made a reasonable and good faith effort to prepare its witnesses on the relevant matters known or reasonably available to MGA, Mattel's motion with respect to its Categories 1-25 should be denied.  Furthermore, because MGA has agreed to continue the deposition on its affirmative claims-related topics, Mattel's motion on topics 26-28 is premature and should be denied.

## II.   STATEMENT OF FACTS

### A.   MGA's Pending Motion for Protective Order.

On January 9, 2008, Mattel served 30(b)(6) deposition notices on MGA Entertainment, Inc. ("MGA") and MGAE de Mexico ("MGA Mexico"), setting them both for January 23, 2008.  On January 17, 2008, MGA and MGA Mexico served objections to the deposition notices.  The next day, and before the date noticed for the deposition, MGA and MGA Mexico timely filed and served a motion for protective order on all of the topics in Mattel's January 8, 2008 notice.[1]

On February 4, 2008, while that motion for protective order was pending, Judge Larson issued a minute order staying all Phase 2 discovery until after the Phase 1 trial.[2]  Even so, on February 15, 2008, MGA filed a reply to the motion for protective order, notifying the court that the stay affected certain topics in the deposition notices and that the parties would continue to meet and confer on the Phase 1 issues.[3]  On February 20 and 21, 2008, the parties met and conferred on the topics identified and agreed that most topics concerned Phase 2 issues.[4]  The parties agreed that Mattel would file an opposition pertaining to narrowed issues and further agreed to "put the remaining issues in this motion off until the Phase Two

---

[1] 1/18/08 MGA's Notice of Motion and Motion for Protective Order from Mattel, Inc.'s Deposition Notices to MGA Entertainment, Inc. and MGAE de Mexico, S.R.I. de C.V. Pursuant to Fed. Rule of Civ. Pro. 30(b)(6); *see also* 1/18/2008 Separate Statement No. 1 in support of MGA's Motion for Protective Order.
[2] 2/4/08 Civil Minute Order.
[3] 2/15/08 MGA's Reply in support of its Motion for Protective Order.
[4] 2/26/08 J. Corey letter to R. Kennedy.

stay is lifted."[5]  Mattel filed an opposition as to Topics 82, 84, 87, and 94[6] and, as to each of these topics, the Court granted MGA's motion for protective order.[7]  At no time did Mattel confirm, much less suggest, that MGA took the remainder of its motion for protective order "off calendar," withdrew the motion or agreed to waive the issues raised therein with respect to the Phase 2 topics.

In January 2009, the Court lifted its stay on Phase 2 discovery.  On November 2, 2009, Mattel wrote to MGA to renew its request for a 30(b)(6) deposition.[8]  On November 9, 2009, MGA responded advising Mattel that MGA has a pending motion for protective order that was previously filed and was ripe for adjudication but also offered to meet and confer to reach agreement on topics identified in Mattel's notices.[9]  Rather than meet and confer with MGA, Mattel instead propounded yet another 30(b)(6) notice on January 26, 2010 on yet another 49 topics.  But, as set forth in Appendix A, Mattel's January 26, 2010 topics substantially overlap with (and are subject to the same defects as) its still pending January 8, 2008 topics.  Again, MGA attempted to meet and confer with Mattel to reach agreement on the scope of 30(b)(6) testimony but MGA but was unable to do so.

In February, MGA raised the issue of Mattel's vast 30(b)(6) notices with the Court and sought clarification as to which of Mattel's 150-plus topics were appropriate topics for deposition.  The Court declined to delve into a topic-by-topic analysis of the 150-plus topics at issue.

**B.    Mattel Refused to Meet and Confer to Prioritize Its 151 Topics for a Three-Day 30(b)(6) Deposition on MGA**.

In early March, the Court adopted MGA's proposal that it produce a 30(b)(6)

---

[5] 2/26/08 J. Corey letter to R. Kennedy.
[6] 4/25/08 Mattel's Opposition to MGA's and MGA de Mexico's Motion for Protective Order.
[7] 5/12/08 Order Granting MGA's and MGA de Mexico's Motion for Protective Order from Mattel's Fourth Notice of Deposition.
[8] 11/2/09 D. Proctor letter to W. Molinski.
[9] 11/9/2009 W. Molinski letter to D. Proctor.

witness for three days of deposition and that the parties meet and confer in advance to reach agreement on the topics for that deposition.  But Mattel refused to meet and confer with MGA to limit or prioritize topics for deposition.  Instead, on March 2, Mattel sent a letter purporting to narrow its 151 topics into 28 "categories" of testimony.  In reality, these 28 broad categories included 120 of the 151 topics at previously at issue and added at least 11 new topics that have never been the subject of a deposition notice.[10]  MGA wrote to Mattel and asked that it make a good faith effort to prioritize a subset of topics that could be covered in three days of deposition, noting that if Mattel spent just one hour on each of topic identified in its March 2 letter, the 30(b)(6) deposition would take more than three weeks to complete.[11]  Mattel refused to respond.

In the absence of any meaningful meet and confer, MGA used its best judgment to prioritize from Mattel's list of topics a subset that could reasonably be addressed in three days.  MGA wrote to Mattel on March 21 and provided Mattel with notice of the topics on which MGA would designate a witness – 38 topics in all.[12]

### C.    MGA Diligently Prepared and Offered its Designees on 38 Separate Topics for Deposition.

As set forth in more detail in the accompanying declaration, MGA prepared four witnesses on 38 separate topics and provided more than 30 hours of testimony over three days.[13]  Collectively, counsel for MGA spent more than 250 hours interviewing employees, searching for and collecting documents and relevant information, and reviewing documents and deposition testimony to prepare its designees for deposition.  In addition, counsel for MGA spent more than nine days with its witnesses preparing them for deposition, not even counting another three days spent in the deposition with the witnesses.

---

[10] 3/9/10 M. Phillips letter to M. Zeller.
[11] 3/9/10 M. Phillips letter to M. Zeller.
[12] 3/21/10 A. Hurst letter to M. Zeller.
[13] 3/21/10 A. Hurst letter to M. Zeller.

### D.   MGA Agreed to Continue the 30(b)(6) Deposition Related to its Affirmative Claims.

In addition, MGA agreed to provide a continued 30(b)(6) deposition on its affirmative claims-related topics.[14]  Mattel's argument that MGA has not been forthcoming in providing a date is a stretch.  Mattel never raised the issue of scheduling a continued 30(b)(6) deposition in any of the countless meet and confers between the parties between late March and late April.[15]  Rather, the only half-hearted attempt at a meet and confer was an e-mail that Mr. Zeller apparently sent to Ms. Hurst on April 8, to which he received no response, and as to which he never followed up.  Once notified of the e-mail, counsel for MGA confirmed its agreement to provide a 30(b)(6) witness on the remaining affirmative claims topics.[16]  In addition, as set forth below, MGA will provide a 30(b)(6) witness on the related issues of the factual bases for MGA's affirmative defenses.

## III.   MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY ON CATEGORIES 1-25 SHOULD BE DENIED.

Mattel's motion to compel is premature and unfounded.  It seeks to compel testimony on topics on which MGA has been granted a protective order or has a protective order pending.  It seeks to compel 30(b)(6) testimony that is cumulative of other testimony, and even other 30(b)(6) testimony, that Mattel has already been provided.  And it seeks to compel testimony that is untethered to any of the claims and defenses at issue.  Because Mattel's motion seeks to compel testimony on a broad array of topics that have little to do with the issues in this case and/or would impose an undue hardship on MGA, it should be denied.  For the Court's convenience, Mattel's 28 categories for deposition, the underlying 131 topics, and MGA's position on each are set forth in the attached Appendix A.

---

[14] 3/25/10 30(b)(6) S. Khare Dep. Tr. at 773:16-774:18.
[15] Declaration of Deborah E. Fishman In Support of MGA's Opposition to Mattel's Motion to Compel Further 30(b)(6) Testimony (hereafter "Fishman Decl.") at ¶ 2.
[16] 4/29/10 A. Hurst email to M. Zeller.

**A.  Mattel's Motion on MGA's Affirmative Claim Topics (Categories 26, 27 and 28) Is Premature and Unfounded.**

As discussed above, MGA had agreed to provide a continued 30(b)(6) deposition on its affirmative claims-related topics.[17]  In addition, MGA agrees to provide a 30(b)(6) witness on the related issues of the factual bases for MGA's affirmative defenses.  Mattel's Category 27 regarding MGA's damages claim is premature because it is the subject of on-going discovery and expert testimony.  Because Mattel's motion to compel testimony on Categories 26, 27, and 28 is premature, it should be denied.

**B.  Mattel's Motion on Categories 3, 5, and 6 Ignores The Court's Prior Protective Order.**

Mattel's motion is an end-run around the Court's May 12, 2008 Protective Order.  Mattel contends that Category #3 derives from its January 8, 2008 30(b)(6) Notice, Topic 94.[18]  But, as MGA has repeatedly informed Mattel, MGA was granted a protective order on 1/9/08 Notice, Topic 94.[19]  Moreover, Category #3 bears no relation to 1/9/08 Notice, Topic 94 and Mattel has failed to identify any other noticed topic that may support it.  *See* Appendix A.  Mattel's Category #6 likewise relies on noticed topics on which MGA was granted a protective order.[20]  Mattel contends that Category #6 derives from Topics 82, 84, 85, 86, and 87 from its January 8, 2008 30(b)(6) Notice.[21]  The Court expressly granted a protective order on Topics 82, 84, and 87 finding, among other things, that these topics are "unreasonably cumulative of Mattel's prior interrogatories to which MGA has already responded" and that "Mattel has had more than ample opportunity to conduct discovery into Topic 82, 84, and 87 through several depositions."[22]

In addition, as to Category #5 (and its underlying 1/8/08 Notice, Topic #61),

---

[17] 3/25/10 30(b)(6) S. Khare Dep. Tr. at 773:16-774:18.
[18] See 3/2/10 M. Zeller letter to A. Hurst.
[19] 5/12/08 Protective Order.
[20] 5/12/08 Protective Order.
[21] See 3/2/10 M. Zeller letter to A. Hurst.
[22] 5/12/08 Protective Order at 4, 8.

1  MGA moved for protective order on Topic #61, which motion is still pending.[23]

2  Category #5, like Category #6, relates to communications between MGA and any

3  other person regarding the obligations of former Mattel employees to Mattel.  The

4  Court's Protective Order notes that Mattel already received discovery in the form of

5  interrogatory responses on MGA's belief that it did not intentionally interfere with

6  the INVENTIONS AGREEMENT by entering into the BRYANT/MGA

7  AGREEMENT (Interrogatory No. 34) and did not aid or abet any breach by

8  entering into the BRYANT/MGA AGREEMENT (Interrogatory No. 35) and that a

9  30(b)(6) deposition on these topics would be greatly outweighed by the burden and

10  expense to MGA of preparing a witness to testify on these topics.[24]  Against the

11  background that MGA's motion for protective order was granted (in part), largely

12  unopposed by Mattel, and remains pending, Mattel's arguments regarding waiver

13  are disingenuous.

###      C.      Mattel's Motion Ignores that MGA Has Already Provided 30(b)(6) Testimony on Categories 13, 17, and 21.

16  Mattel's Category #13 seeks information regarding MGA's preservation,

collection, search and production of documents.  But MGA has already provided

30(b)(6) testimony on the subject of its preservation and collection of documents.

Specifically, Lisa Tonnu testified as an MGA 30(b)(6) designee about the collection

of hard copy documents and Kenneth Lockhart testified as to MGA's collection of

electronic documents.[25]  Moreover, to the extent Mattel seeks information regarding

the search and production of documents, this Court has confirmed that such matters

are attorney client privileged information or attorney work product.[26]

---

[23] *See* 1/18/08 MGA's Motion for Protective Order; *see also* 1/18/08 Separate Statement No. 1 ISO MGA's Motion for Protective Order at 48.
[24] 5/12/08 Protective Order at 7-8.
[25] *See* 9/25/07 L. Tonnu 30(b)(6) Dep. Tr. at 589:18-622:19, 642:18-728:6; *see also* 6/14/07 K. Lockhart 30(b)(6) Dep. Tr. at 41:22-43:15, 47:12-53:18 and 6/15/07 K. Lockhart 30(b)(6) Dep. Tr. at 246:5-292:23.
[26] *See* 2/26/10 Order Denying Objections to Discovery Master's Privilege Rulings Concerning Keywords at Deposition of Michael Moore; *see also* 2/25/10 MGA Opposition to Mattel's Objections to Discovery Master's Privilege Rulings Re Keywords at Deposition of Michael Moore.

Category 17 seeks testimony regarding the assignment of IP rights to Omni or other persons, which Mattel contends is relevant to its claim of avoidance of fraudulent transfers.  Mattel questioned MGA's 30(b)(6) designee, Mr. Woolard, at length regarding its Category 17 and, in particular, the draft forbearance agreement or side letter agreement between MGA and Omni 808.[27]  Mr. Woolard consistently testified that the Bratz IP had never been assigned to Omni.[28]  Moreover, counsel for MGA represented no such agreement to assign Bratz IP right to Omni exists.[29]  Because Mattel has already taken fulsome discovery on this topic ,Mattel's motion to compel on this Category should be denied.

Mattel's Category 21 seeks testimony regarding Bratz sales and profits.  MGA's 30(b)(6) designee on finances testified that MGA's financial records do not allocate costs on a brand basis and, therefore, MGA's financial records do not report profitability on a brand basis.[30]  Because MGA does not keep or have reasonably available to it financial records the reflect profits on a product line basis, it cannot be required to provide a 30(b)(6) designee on this topic.[31]

### D.   Mattel's Motion on Categories 7, 8, 9, 10, and 11 Is Cumulative of 30(b)(6) Testimony Provided by MGA Mexico.

Mattel's motion to compel seeks 30(b)(6) testimony from MGA that is more properly the subject of 30(b)(6) testimony from MGA Mexico and where the underlying information has already been provided to Mattel during discovery.

In particular, Categories #7-11 seek information regarding MGA's communications with law enforcement, MGA's payments in Mexico relating to any actual or potential investigation, any actual or contemplated payments to law enforcement, the search and seizure of documents from MGA Mexico by Mexican authorities, and MGA's agreements with Vargas, Trueba, and Machado.

---

[27] See 3/26/10 J. Woolard 30(b)(6) Dep. Tr. at 825-828, 842-847, 865-880.
[28] See 3/26/10 J. Woolard 30(b)(6) Dep. Tr. at 825:10-826:6; 869:4-14; 872:14-874:3.
[29] See 3/26/10 J. Woolard 30(b)(6) Dep. Tr. at 854:25-855:13.
[30] 3/26/10 Schultz 30(b)(6) Dep. Tr. At 1170-1171.
[31] See Fed. R. Civ. Pro. 30(b)(6).

For each of these Categories, the information sought is uniquely within the possession of MGA Mexico and MGA Mexico has or will provide a 30(b)(6) designee.  For example, Category 10 seeks testimony regarding the search and seizure of documents from MGA Mexico, a topic that is uniquely within the possession of MGA Mexico and on which Mattel has already had two different 30(b)(6) witnesses from MGA de Mexico testify.[32]  MGA US would need to acquire all of the knowledge of MGA Mexico in order to provide a designee on this topic and any information that MGA has regarding the incident would necessarily be included in the testimony MGA de Mexico has already provided, multiple times. Where, as here, the information sought by 30(b)(6) deposition of a parent company is uniquely in the possession of its subsidiary, the parent will not be required to testify to those matters in a manner that binds the parent, a separate legal entity.[33]

In addition, each of these categories seeks by way of 30(b)(6) testimony lists of information that where MGA has already provided to Mattel the underlying information in discovery.  For example, MGA has already provided to Mattel all fee agreements  as well as lists of the fee payments relating to these agreements. Accordingly, to require MGA to provide a 30(b)(6) witness to summarize this previous testimony, or any other information provided through the discovery process, is an unnecessary burden.[34]

### E.  Mattel's Categories 14, 15, and 22 Are Not Relevant to Any Remaining Claim or Defense.

Mattel's Category 14 seeks testimony regarding the origins, creation, and development of MGA's 2005 and 2006 product lines.  To the extent that Category 14 seeks testimony regarding products that are the subject of MGA's affirmative trade dress claims, these topics are subsumed in Category 26 regarding MGA's

---

[32] See 12/7/09 Kuemmerle 30(b)(6) Dep. Tr. at 47-79, 239-282, 294-318, and 918-950; see also 12/12/09 Small 30(b)(6) Dep. Tr. at 1057-1075 and 1214-1303.
[33] *See In re Ski Train*, 2006 WL 1328259 (S.D.N.Y. 2006).
[34] *McCormick-Morgan*, 134 F.R.D. at 286 (holding that there is "no reason to permit the parties . . . to pursue the kind of information through more than one discovery device.").

affirmative claims, on which MGA has agreed to produce a witness.  *See* Appendix A.  In that regard, MGA has agreed that in light of the Phase 1 findings and equitable orders by the Court, MGA will not assert or enforce a claim of trade dress based on Bratz dolls.[35]  But because Mattel's Category 14 seeks testimony on ***all*** of MGA's product lines and, thus, is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Category 15 seeks testimony regarding "MGA's copying or use of Mattel products, packaging or  designs."  Relying on its newly-pled allegations that Bratz, is a trade secret, Mattel claims that this Category goes to the heart of its trade secret claims.[36]  Other than its allegations regarding Bratz and Moxie, Mattel has no other claim of copying that would make Category 15 relevant, and the Court has already determined that a claim for trade secret misappropriation based on Bratz is not properly within the scope of Phase 2.[37]

Mattel's Category 22 seeks testimony regarding MGA's support for and investment in Bratz, including as compared to little Tykes, Zapf and Smoby.  Mattel fails to identify how this Category is relevant to any pending claims or defenses and its reference to its Fourth Amended Answer and Counterclaims is not illuminating.[38]

### F.    Mattel's Motion on Categories 1, 16, and 25 Seeks Improper 30(b)(6) Testimony.

Categories 1 and 25 seek testimony regarding "MGA's spoliation" of evidence in this case and "MGA's participation in smuggling," which are both inflammatory and improperly seek an admission and legal conclusion through 30(b)(6) testimony.[39]  Moreover, as discussed with respect to Category 13 above,

---

[35] 3/24/10 A. Hurst letter to M. Zeller.
[36] See Mattel Motion at 7.
[37] *See* 4/10/10 Order Granting in Part and Denying in Part Mattel's Motion for Leave to File Fourth Amended Answer and Counterclaims at 9-10.
[38] See Mattel Motion at 9; see also Mattel's FAAC ¶¶ 91-92.
[39] *See 3M Co v. Kanbar*, No. C06-01225, 2007 WL 1794936, at *2 (N.D. Cal. June 19, 2007); *see also McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D 275, 286 (N.D. Cal. 1991), rev'd in part on other grounds, 765 F. Supp. 611 (N.D.

1   MGA has already provided multiple 30(b)(6) witnesses on the subject of document
2   preservation and collection.

3          Category 16 improperly seeks information protected by the work product

4   doctrine.  In particular, Category 16 seeks "MGA's investigations into allegations

5   or issues in this action."  This has been a subject of motion practice before the

6   Court and the Court has determined that MGA investigations (as distinguished from

7   the facts underlying such investigations) were initiated after commencement of

8   litigation and are, thus, protected by the attorney work product doctrine.[40]  Because

9   Category 16 seeks testimony regarding MGA's investigations into the allegations at

10  issue in this lawsuit, it improperly seeks attorney work product information and

11  should be denied.

12  **IV.   MGA PROPERLY LIMITED TESTIMONY ON THE REMAINING
13         CATEGORIES**

14         **A.     MGA Properly Limited The Scope of Testimony on Category 4.**

15         Mattel does not contest that MGA offered, prepared and produced a witness

16  (Mr. Brawer) to testify regarding "Any MGA communications with Kao, Castilla,

17  Cooney, Contreras, Kim, and Brawer, while each individual was still employed by

18  Mattel."[41]  But Mattel contends that MGA improperly excluded communications

19  regarding Vargas, Machado, Trueba, and Brisbois from the scope of the MGA

20  30(b)(6) deposition.  Because the communications with Vargas, Machado, Trueba,

21  and Brisbois involved MGA Mexico and MGA Canada, and because each of these

22  entities has and will provide corporate designees on precisely this topic, MGA

23  should not be required to educate itself to provide 30(b)(6) testimony that is

24  cumulative of 30(b)(6) testimony provided by these other entities.[42]

25         As Mattel acknowledges, Vargas, Machado, and Trueba left Mattel Mexico

26  _____

    Cal. 1991).
27  [40] 4/12/10 Order re Mattel's Motion to Compel Document Production re MGA
    Internal Trade Secret Investigations at 2.
28  [41] 3/21/10 A. Hurst letter to M. Zeller; *see also* Mattel Motion at 16-20.
    [42] *See In re Ski Train*, 2006 WL 1328259 (S.D.N.Y. 2006).

1  to join MGA Mexico.  Two designees on behalf of MGA Mexico have already been

2  questioned at length regarding these communications.  Moreover, the Court has

3  already ordered Ms. Kummerle, MGA Mexico's designee, to sit for additional

4  deposition this week regarding, among other things, MGA Mexico communications

5  with Machado, and Trueba.[43]  Likewise, Mattel recognizes that when Ms. Brisbois

6  left Mattel Canada, she joined MGA Canada, not MGA.  MGA Canada has already

7  provided a designee, Ms. Goveia-Gordon, who interviewed Ms. Brisbois and

8  provided testimony on behalf of MGA Canada on precisely this topic.[44]

9      Finally, Mattel complains that MGA refused to designate a witness to testify

10  as to each of these employees' job duties at MGA.  But Mattel has already obtained

11  this testimony from the individuals most knowledgeable on the subject – the

12  employees' supervisors at MGA.  For example, Ms. Goveia-Gordon was deposed

13  regarding Ms. Brisbois' job responsibility.[45]  Likewise, Ms. Kuemmerle testified

14  about the job responsibilities of Machado, Vargas, and Trueba; Nicole Coleman

15  testified regarding Mr. Castilla's job responsibilities; and nd Mr. Brawer provided

16  testified regarding Mssrs. Contreras and Cooney, whom he directly supervised.

17  Finally, because there is no allegation by Mattel that Kao used or disclosed Mattel

18  trade secret information while at MGA, this discovery is simply irrelevant.

19      **B.    MGA Properly Limited the Scope of Testimony on Category 12.**

20      Mattel argues that MGA unduly limited the scope of its Category 12 because

21  MGA US did not designate a witness on alleged trade secrets taken by Bryant,

22  Machado, Trueba, Vargas, Brisbois, Salazar, Cabrera, and Morales.  But Mattel has

23  or will receive 30(b)(6) deposition testimony from MGA Mexico and MGA Canada

24  as to Machado, Trueba, and Brisbois.  And trade secret misappropriation by Bryant,

25  Salazar, Cabrera, and Morales are not properly part of Mattel's Fourth Amended

26  ---

[43] 4/29/10 Order for Continued Deposition of Susana Kuemmerle.
[44] 2/3/10 Goveia-Gordon 30(b)(6) Dep. Tr. at 12-17, 19-20, 26-27, 110, 117, 155-156, 160, 276-279, 291-292; see also 2/4/10 Goveia-Gordon 30(b)(6) Dep. Tr. at 480-680.
[45] 2/4/10 Goveia-Gordon 30(b)(6) Dep. Tr. at 480-680.

Answer and Counterclaims.[46]

Mattel also contends that MGA refused to designate a witness on the steps and measure MGA has taken to protect its trade secrets.  This is simply incorrect as correspondence between the parties reflects that Mr. Khare was designated and prepared on precisely that topic.[47]

### C.   MGA Did Not Limit Testimony Regarding MGA's Payments or Finances (Categories 2, 23, and 24).

Mattel argues that MGA improperly limited 30(b)(6) testimony by: (1) refusing to designate a witness on third-party or vendor payments made to Mattel employees; and (2) refusing to allow testimony into privileged communications regarding considerations of bankruptcy.  Because both limitations are entirely appropriate, Mattel's motion should be denied.

First, Mattel argues that payments by vendors or other third parties to Mattel employees is the proper subject of 30(b)(6) testimony.[48]  But Mattel does not argue, let alone demonstrate, that these third parties or vendors are or were acting as agents of MGA.  Because third party payments are not known or reasonably available to MGA, MGA is not required to prepare or designate a witness to bind the company on this topic.[49]

Next, Mattel complains that MGA limited testimony into its solvency and considerations of bankruptcy.  Mr. Woolard testified that the only conversations that MGA had regarding solvency were made in consultation with outside bankruptcy lawyers and were, therefore, privileged communications.  Mattel

---

[46] See FAAC ¶¶133-142; see also 4/10/10 Order Granting in Part and Denying in Part Mattel's Motion for Leave to File Fourth Amended Answer and Counterclaims at 9-10

[47] 3/24/10 A. Hurst letter to M. Zeller.

[48] Mattel also raises issue of "vendor payments" in the context MGA payments to Mr. Larian, his family members, and their trusts.  This is a complete red herring that is an artifact of how payments are coded in MGA's financial systems.  As discussed below, MGA's designee was prepare on and testified regarding every payment that MGA made to Mr. Larian, his family members, and trusts.

[49] See Fed. R. Civ. Pro. 30(b)(6); see also FDIC v. Wachovia Insurance, Inc., 2007 WL 2460685 (D.Conn. 2007), at * 2-4; see also In re Ski Train, 2006 WL 1328259 (S.D.N.Y. 2006), at *7.

mischaracterizes this entirely appropriate privilege instruction as a refusal to designate a witness.

### D.   Mattel's Argument Regarding MGA's Affirmative Claims Is Premature and Unfounded.

Mattel argues that MGA refused to produce a witness to testify regarding: (a) similarities and dissimilarities between the products at issue in MGA's claims; (b) the products that MGA claimed in lawsuits are similar or dissimilar to the MGA products that MGA has sued upon; (c) when MGA first became aware of Mattel's alleged copying, infringement or dilution; (d) the factual basis for MGA's claims that Mattel's actions have caused actual dilution; (e) the basis for MGA's claim that Mattel copied the look of MGA's products; (f) MGA's relationship and communications with NPD, CARU and TIA; and (g) the bases for MGA's claims related to NPD, CARU, and TIA.  Mattel Motion at 15-16.

Mattel's argument is unfounded.  First, sub-topics (c)-(g) are subsumed in the affirmative claim topics as set forth in MGA's March 21, 2010 letter to Mattel.[50] Next, sub-topic (b) is not part of Mattel's Category 26 nor is it part of Mattel's notices for deposition.  *See* Appendix A.  Finally, sub-topic (a) calls for a physical comparison of products and is not readily amenable to 30(b)(6) testimony.

Moreover, Mattel's motion on MGA's affirmative claims topics is premature because MGA agrees that this deposition is not yet completed.  Because Mattel's motion is premature and unfounded, it should be denied.

## V.   MGA WITNESSES WERE ADEQUATELY PREPARED AND SHOULD NOT BE COMPELLED TO RETURN FOR DEPOSITION.

Mattel contends that each of MGA's four 30(b)(6) witnesses were "unprepared on every category, even as MGA had limited them."  Mattel's argument is not credible.

MGA provided four separate witnesses for more than 30 hours of testimony over three days, who collectively were prepared to testify as to 38 separately

---

[50] 3/21/10 A. Hurst letter to M. Zeller.

1    noticed topics in Mattel's deposition notices.[51]  Counsel for MGA spent more than

2    250 hours interviewing employees, searching for and collecting documents and

3    relevant information, and reviewing documents and deposition testimony to prepare

4    its designees for deposition.[52]  Counsel for MGA spent more than 9 days with its

5    designees preparing them for deposition.  In that time, the witnesses reviewed

6    scores of deposition transcripts, spoke with dozens of people, and reviewed

7    thousands of documents.[53]

8           Unable to identify true substantive deficiencies in these witnesses

9    preparation, Mattel identifies picayune and often irrelevant questions in the

10   deposition to support its argument that MGA's designees were unprepared.  But

11   Rule 30(b)(6) does not require perfection.  Rather, it requires a corporation to make

12   reasonably diligent efforts to prepare its designee on matters reasonably available to

13   the company so that he or she can answer questions regarding the relevant subject

14   matter.[54]  Mattel's inability to identify real deficiencies in MGA's 30(b)(6)

15   witnesses' testimony speaks volumes regarding the merit of its motion to compel.

16         Finally, Mattel chose to waste its time with each of MGA's 30(b)(6)

17   designees by asking irrelevant questions beyond the scope of the witnesses'

18   designations and by engaging in unnecessary and unproductive colloquy.  At the

19   same time, Mattel failed to ask even a single question about critical topics on which

20   MGA had designated and prepared its witnesses.  Mattel's gamesmanship should

21   not be countenanced and, accordingly, Mattel's motion should be denied.

### A.   MGA More Than Adequately Prepared Its Designee (Mr. Brawer) on Trade Secret-Related Topics (Category 12).

23   Mr. Brawer provided 11.5 hours of 30(b)(6) deposition testimony, staying

---

[51] 3/21/10 A. Hurst letter to M. Zeller.
[52] See Fishman Decl. ¶ __.
[53] See Fishman Decl. ¶ __.
[54] *See In re JDS Uniphase*, 2007 WL 219857 (N.D.Cal. 2007), at *1-2.  Likewise, while 30(b)(6) deponents must be prepared and knowledgeable, "they need not be subjected to a 'memory contest.'"  *See Google Inc. v. American Blind & Wallpaper Factory, Inc.*, 2006 WL 2318803 (N.D.Cal. 2006), at *2-3.

until 11:40 pm, at which point Discovery Master Hansen noted, "I think we have had an opportunity to question him for today."[55]  Mr. Brawer provided substantive testimony regarding the hiring of Kao, Contreras, and Cooney and communications with Kim, as well as testimony regarding whether Mattel's alleged trade secret information was allegedly retained by former Mattel US employees and whether it was ever brought to MGA.

Nonetheless, Mattel argues that Mr. Brawer was inadequately prepared because he could not testify as to MGA's searches to locate documents that Mattel alleges were misappropriated and because he purportedly didn't talk to the "right people" or ask the "right questions."  Mattel Motion at 19-20.

Mattel's argument mischaracterizes Mr. Brawer's deposition testimony.  In reality, Mr. Brawer was instructed, consistent with this Court's order, not to testify on privilege grounds regarding what MGA did to investigate or search for any Mattel documents in its possession.[56]  Once counsel for Mattel agreed that Mr. Brawer could testify regarding the results of MGA's search without waiving privilege, Mr. Brawer was able to confirm that a comprehensive search had been conducted and that all of the results of the search had been produced to Mattel.[57]

Moreover, Mr. Brawer spoke to at five or six people, reviewed portions of 18 deposition transcripts, and reviewed hundreds if not thousands of documents to prepare for his deposition.[58]  Contrary to Mattel's argument, Mr. Brawer reviewed Ms. Coleman's deposition testimony, he reviewed Mr. Cooney's deposition testimony (who testified at length regarding embedded Excel formulas) and he spoke with Mr. Contreras regarding whether MGA recruited Ms. Kim and was

---

[55] 3/24/10 Brawer 30(b)(6) Dep. Tr. at 417:2-3.
[56] 3/24/10 Brawer 30(b)(6) Dep. Tr. at 61-62; *see also* 4/12/10 Order re Mattel's Motion to Compel Document Production re MGA Internal Trade Secret Investigations at 2.
[57] 3/24/10 Brawer 30(b)(6) Dep. Tr. at 123, 125-130, 132-133.
[58] See Fishman Decl. ¶¶ 4-7.  Notably, Mr. Brawer did not speak with Machado, Vargas, Trueba or Brisbois because his designation was limited to US trade secrets.

1   consistently informed that MGA did not recruit her.[59]

2       Incredibly, Mr. Zeller never examined Mr. Brawer on each of Mattel's

3   alleged trade secret documents and whether or not each such document was in fact

4   a trade secret or otherwise protectable, a topic on which Mr. Brawer spent

5   substantial time preparing.  Instead, Mr. Zeller spent more than two hours asking

6   Mr. Brawer what he did to prepare for deposition,[60] he spent hours questioning Mr.

7   Brawer about MGA's trade secret investigation (the subject of motion practice

8   before the Court),[61] and spent another hour or so questioning Mr. Brawer about

9   MGA's document collection efforts, a topic on which he was not designated.[62]

10      **B.   MGA More Than Adequately Prepared its Designee (Mr. Schultz)
            on Financial Topics (Categories 2, 19, 23, and 24).**

11      Mr. Schultz met with counsel over the course of three days, reviewed and

12  prepared volumes of financial reports, and spoke to at least seven MGA employees

13  in order to prepare for his 30(b)(6) deposition.[63]  For more than six hours, Mr.

14  Schultz testified on those 30(b)(6) topics for which he was designated including:

15  (1) MGA payments made to Carter Bryant while he was purportedly employed by

16  Mattel;[64] (2) search results for MGA payments made to Ron Brawer, Beatrice

17  Morales, Ana Cabrera, and Maria Salazar;[65] (3) detailed payments and financial

18  transactions between MGA and Isaac Larian, his family members, and family

19  trusts;[66] (4) loans between Mr. Larian and MGA, the "Due to/Due from"

20  spreadsheet showing accounts with the Larian family trusts, and spreadsheets

21  showing various types of payments to Larian family members;[67] and (5) MGA's

22  P&L and balance sheets.[68]

23  _____

24  [59] See 3/24/10 Brawer 30(b)(6) Dep. Tr. at 9-67.
    [60] Id.

25  [61] See 3/24/10 Brawer 30(b)(6) Dep. Tr. at 65-79, 85-115, 145-149.
    [62] See 3/24/10 Brawer 30(b)(6) Dep. Tr. at 116-145, 228-254, 367-400.

26  [63] See Fishman Decl. at ¶¶ 15-18.
    [64] Id. at 1049:11-19, 1066:2-8, 1109:10-1114:7

27  [65] Id. at 1055:2-1060:6
    [66] Id. at 1069:13-1074:6, 1079:3-1092:5

28  [67] Id. at 1122:16-1158:7
    [68] Id. at 1161:4-1198:14

1    Notwithstanding Mr. Schultz's admirable degree of preparation and the

2    substance of his deposition, Mattel argues that Mr. Schultz was unprepared because

3    he did not speak with Isaac Larian, his family member, or trust administrators.

4    Mattel's argument is a red herring.  Mr. Schultz searched MGA's books and records

5    and had MGA employees search MGA's record at his direction, which records

6    would reflect all payments made by MGA.  Mr. Schultz did not need to speak to

7    Mr. Larian or anyone else to ascertain payments made by MGA.

8    Again, Mattel wasted much of Mr. Schultz's deposition time on subjects

9    outside the scope of the designated topics.  For example, Mattel's counsel spent

10   considerable time asking about MGA's internal controls, as well as questions about

11   MGA's past and present accounting software packages, Great Plains and Axapta.[69]

12   Moreover, Mattel's counsel re-hashed the same questions about Omni 808 and the

13   draft forebearance agreement that it had pursued with Mr. Woolard, a subject that

14   was clearly outside the scope of Mr. Schultz's designated topics.[70]

15   **C.    MGA More Than Adequately Prepared Its Designee (Mr.
       Woolard) on Categories 18 and 23.**

16   Mattel ignores the fact that Mr. Woolard spent a substantial portion of his

17   deposition testifying on his designated 30(b)(6) topics, namely Category 18 (MGA

18   transactions with IGWT 826 Investments, IGWT Group, OMNI 808, Lexington, or

19   Vision Capital) and Category 23 (non-privileged information regarding MGA's

20   bankruptcy considerations).[71] Mr. Woolard testified that after requesting a keyword

21   search through the entire accounting system, he could confirm that no payments

22   were made to the entities, "Lexington" or "Vision Capital."[72]  He also testified as to

23   interest payments made both on the credit and the principal loan between MGA and

24   Omni 808, as well as legal fee reimbursements.[73] Next, Mr. Woolard testified as to

25

26   [69] Id. at 1019:7-1048:25;
27   [70] Id. at 1075:7-1079:1, 1094:2-1108:21
     [71] See 3/21/2010 A. Hurst letter to M. Zeller.
28   [72] 3/26/10 Woolard 30(b)(6) Dep. Tr. at 788-801.
     [73] *Id.* at 809-819, 823-825, 913, 952-955.

non-privileged information regarding MGA's consideration of filing for bankruptcy protection.[74]  In addition, Mr. Woolard provided testimony on Mattel Category 17 and confirmed that there was no agreement regarding the transfer of any intellectual property rights in Bratz between MGA and Omni.[75]

Mattel ignores this testimony and argues instead that MGA failed to adequately prepare Mr. Woolard for deposition because he did not personally run searches on MGA's system software, MGA's searches were limited to vendor payments, and Mr. Woolard did not know who were members of Omni 808 or how Omni 808 or IGWT were funded, and he did not speak to Isaac Larian.

First, Mr. Woolard testified that MGA's financial systems could not issue direct payments to the entities named in Mattel's topics unless the payee were set up as a vendor in the system.[76]  So, Mr. Woolard's search of vendor payments was a comprehensive search that would have recorded every payment made by MGA in the relevant timeframe.  Next, Mattel's complaints regarding the formation and funding of OMNI or IGWT completely ignores corporate formalities.  While Mattel is free to depose Mr. Larian on these topics (and has done so), MGA has not made any such payments Mattel also incorrectly argues that Mr. Woolard spoke to no one and reviewed no documents or transcripts regarding MGA's consideration of bankruptcy.  As discussed *infra*, MGA's only bankruptcy considerations were with outside bankruptcy counsel and Mr. Woolard was instructed not to answer on the basis of privilege.[77]

Notably, Mr. Zeller wasted a substantial amount of time in the deposition by posing improper question that were beyond the scope of Mr. Woolard's designated

---

[74] Id. at 917-921.
[75] *Id*. at 843, 869.
[76] 3/26/10 Woolard 30(b)(6) Dep. Tr. At 793.  To the extent that Mattel argues that Mr. Woolard should have made inquiries into "indirect payments."  (e.g., payments to the relatives of Omni 808 investors) such an argument improperly transforms Mr. Woolard's obligation to make reasonable inquiries into one in which he must explore every permutation of Mattel's baseless accusations.
[77] *Id*. At 917-922.

1    testimony, [78] asking memory-test type questions regarding terms of the prior

2    Wachovia loan agreement, documents which speak for themselves and have been in

3    Mattel's possession for some time,[79] and asking questions that continually sought

4    disclosure of attorney-client privileged communication or attorney work product

5    materials.  Because Mr. Woolard was prepared and knowledgeable regarding

6    relevant matters that were reasonably within the possession of MGA, Mattel's

7    motion should be denied. [80]

8        **D.    MGA Has Agreed to Continue the 30(b)(6) Deposition of MGA on the Remaining affirmative claim topics.**

9

10   As discussed above, Mattel's motion to compel regarding MGA's

     affirmative claims is both premature and unnecessary.  MGA had already agreed to

11   provide a continued 30(b)(6) deposition on its Affirmative Claims related topics.

12   Until that deposition concludes, Mattel's motion to compel is premature and should

13   be overruled.

14   **VI.   CONCLUSION**

15       For the foregoing reasons, Mattel's Motion to Compel Further 30(b)(6)

16   testimony should be denied.

17   Dated:    May 4, 2010                    DEBORAH E. FISHMAN
18                                            Orrick, Herrington & Sutcliffe LLP

19

20                                            */s/ Deborah E. Fishman /s/*
21                                            Deborah E. Fishman
                                              Attorney for MGA Parties

22

23   OHS West:260906878.2

24

25   _____

26   [78] 3/26/10 Woolard 30(b)(6) Dep. Tr. at 825-833, 845-847, 850-868, 872-879.
     [79] *Id*. at 833-842
27   [80] *See In re JDS Uniphase*, 2007 WL 219857 (N.D.Cal. 2007), at *1-2.  Likewise, while 30(b)(6) deponents must be prepared and knowledgeable, "they need not be subjected to a 'memory contest.'"  *See Google Inc. v. American Blind & Wallpaper Factory, Inc.*, 2006 WL 2318803 (N.D.Cal. 2006), at *2-3.

28