**SCHEPER KIM & HARRIS LLP**
DAVID C. SCHEPER (State Bar No. 120174)
dscheper@scheperkim.com
ALEXANDER H. COTE (State Bar No. 211558)
acote@scheperkim.com
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**LAW OFFICES OF MARK E. OVERLAND**
MARK E. OVERLAND (State Bar No. 38375)
mark@overlaw.net
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401
Telephone: (310) 459-2830
Facsimile:  (310) 459-4621

**Attorneys for**
**Carlos Gustavo Machado Gomez**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with CV 04-9059 and CV 05-2727 |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS FIRST COUNTERCLAIM UNDER RULE 30(b)(6); NOTICE OF JOINDER IN MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT BY MGA PARTIES** |
| MATTEL, INC, | |
| Defendant. | |
| AND CONSOLIDATED CASES | |
| | Date:    June 7, 2010 |
| | Time:    9:00 AM |
| | Crtrm.: Honorable David O. Carter |
| | **Phase** 1 |
| | Discovery Cut Off: January 28, 2008 |
| | Pre-Trial Conf.:     May 5, 2008 |
| | Trial Date:            May 27, 2008 |

1

# **TABLE OF CONTENTS**

2
3

**Page**

I.    INTRODUCTION ................................................................................... 3

II.   FACTUAL BACKGROUND ...................................................................... 4

    A.    General Factual Allegations Against Mr. Machado ................................ 4

    B.    RICO Allegations Against Mr. Machado ................................ 5

III.  LEGAL ANALYSIS ................................................................................. 7

    A.    Legal Standard Under Rule 12(b)(6) and *Ashcroft* ................................ 7

    B.    RICO Requires A Pattern Of Racketeering Activity Be Alleged Against Each Defendant .......................................................................... 8

    C.    The FAAC Fails to Allege Open-Ended Continuity ............................... 8

    D.    The FAAC Fails to Allege Closed-Ended Continuity ......................... 10

    E.    Mattel Cannot Manufacture A Year Long Pattern With Two Isolated and Unrelated Email Communications ....................................... 12

    F.    Mattel Has Failed To Plead That the Post-Resignation Emails Are Related to the Underlying Fraud Or Other Predicate Acts ............ 13

IV.   CONCLUSION ..................................................................................... 15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i


# **TABLE OF AUTHORITIES**

**Page**

## **FEDERAL CASES**

*Allwaste, Inc. v. Hecht,*
    65 F. 3d 1523 (9th Cir. 1995) ....................................................................8, 11

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) ..........................................................................7, 12, 13

*Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.,*
    528 F. 3d 1001 (8th Cir. 2008) .........................................................................8

*Epstein v. Wash. Energy Co.,*
    83 F.3d 1136 (9th Cir. 1996) .............................................................................7

*H.J. Inc. v. Northwestern Bell Telephone Co.,*
    492 U.S. 229 (1989) ...............................................................8, 10, 12, 13

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991) ...........................................................................14

*Medallion Television Enterprises v. SelecTV,*
    833 F. 2d 1360 (9th Cir. 1987) .........................................................................9

*Miller v. Yokohama Tire Corp.,*
    358 F. 3d 616 (9th Cir. 2004) ...........................................................................8

*Religious Tech. Ctr. v. Wollersheim,*
    971 F. 2d 364 (9th Cir. 1992) ...............................................................3, 10, 11

*Turner v. Cook,*
    362 F.3d 1219 (9th Cir. 2004) ..................................................................*passim*

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,*
    806 F. 2d 1393 (9th Cir. 1986) ....................................................................9, 13

*Sever v. Alaska Pulp Corp.,*
    978 F.2d 1529 (9th Cir. 1992) ....................................................................9, 10

*United States v. Blitz,*
    151 F.3d 1002 (9th Cir. 1998) ........................................................................10

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ........................................................................14

## FEDERAL STATUTES

Federal Rule of Civil Procedure 12(b)(6)....................................................................2

Federal Rule of Civil Procedure 9(b)........................................................................14

## MISCELLANEOUS

18 U.S.C. § 1961(1) .................................................................................................6, 7

18 U.S.C. § 1962(c) ....................................................................................................8

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  PLEASE TAKE NOTICE that on June 7, 2010, at 8:30 AM, or as soon

3  thereafter as the matter may be heard, in the courtroom of the Honorable David O.

4  Carter, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, Carlos

5  Gustavo Machado Gomez will, and hereby does, (1) join in the concurrently filed

6  motions to dismiss and for summary judgment by MGA Entertainment, Inc., MGA

7  HK, MGA de Mexico, S.R.L. de C.V. and/or Isaac Larian (collectively "MGA

8  Parties") with respect to Mattel, Inc. and/or Mattel de Mexico's (collectively,

9  "Mattel") First, Second, Third, Fifth, Seventh, Ninth and Eleventh Counterclaims

10  and (2) move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an

11  order dismissing Mattel's First Counterclaim.

12  Mr. Machado joins the MGA Parties' motions on all the grounds stated

13  therein, with the exception of the MGA Parties' arguments with respect to personal

14  jurisdiction. Mr. Machado makes his own motion on the ground that Mattel has

15  failed to allege a pattern of racketeering activity on the part of Mr. Machado. Mr.

16  Machado's own motion is based on the accompanying Memorandum of Points and

17  Authorities and all pleadings and papers on file with the Court in this action.

18  **Statement of Local Rule 7-3 Compliance**

19  Counsel for all parties conferred on this motion on May 4, 2010.

20  DATED: May 10, 2010                  Respectfully submitted,

21                                       SCHEPER KIM & HARRIS LLP

22                                       DAVID C. SCHEPER
                                         ALEXANDER H. COTE

23                                       MARK E. OVERLAND

24

25                                       By:  /s/ *Alexander H. Cote*
                                              Alexander H. Cote

26                                            Attorneys for Carlos Gustavo Machado
                                              Gomez

27

28

## JOINDER IN MGA PARTY MOTIONS TO DISMISS
## AND FOR SUMMARY JUDGMENT

Mr. Machado hereby joins in the motions to dismiss and for summary judgment concurrently filed herewith by the MGA Parties with respect to Mattel's First, Second, Third, Fifth, Seventh, Ninth and Eleventh Counterclaims, with the exception of the MGA Parties' arguments with respect to personal jurisdiction.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION TO DISMISS FIRST COUNTERCLAIM

### I.   INTRODUCTION

Mattel accuses Gustavo Machado and two other employees of taking copies of some Mattel files with them when they left their employment at Mattel Mexico and began work at MGA Mexico. From the straw of this straightforward story, Mattel attempts to spin RICO gold. Yet, the allegations in Mattel's Fourth Amended Answer and Counterclaims ("FAAC") fail to allege that Mr. Machado participated in a "pattern of racketeering activity" as required under RICO.

The problem is timing. Mattel alleges that Mr. Machado first contemplated leaving Mattel Mexico for MGA Mexico on February 9, 2004 and that he copied the files in the weeks before he resigned on April 19, 2004. As a result, Mattel alleges that nearly all of Mr. Machado's supposed predicate acts, including *every* instance of purported "mail fraud," *every* instance of purported "spoliation and concealment of evidence" and the bulk of the purported instances of "wire fraud," occurred between February and May 2004.

In *Religious Tech. Ctr. v. Wollersheim*, 971 F. 2d 364, 366-67 (9th Cir. 1992), the Ninth Circuit doubted that any case could find RICO's "requirement to be satisfied by a pattern of activity lasting less than a year." It should be no surprise then that Mattel scrambles to stretch three months of activity to exactly a year's duration, particularly by adding a February 2005 email to its list of predicate wire

1  frauds. Yet, while tacking away from one authority, Mattel runs aground on another:

2  the Ninth Circuit has also held that where "almost all of the alleged fraudulent

3  communications occurred during [a] two month period [and additional] categories of

4  communication occurred only sporadically" at some other time, plaintiffs "have

5  failed to allege a series of related predicates extending over a substantial period of

6  time" as required by RICO. *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004).

7        *Turner*'s conclusion is only made stronger by the complete absence of

8  allegations relating the extraneous emails to the underlying "fraudulent" scheme.

9  Once Mr. Machado copied Mattel's documents and resigned from Mattel, "the

10  fraud, if indeed it was a fraud, was complete." *Id.* at 1230. The fact that Mr.

11  Machado used email at his new job – standing alone – cannot transform purported

12  trade secret misappropriation into a RICO pattern of racketeering. If it could, then

13  indeed *every* civil case would be so transformed, given the virtual certainty that the

14  defendant eventually drafted or received an email about *some* topic, regardless of its

15  relationship to the supposed underlying scheme. That is not, and cannot, be the law.

16  Accordingly, Mr. Machado respectfully requests that Mattel's First Counterclaim be

17  dismissed.

18  **II.   FACTUAL BACKGROUND**

19        **A.    General Factual Allegations Against Mr. Machado**

20        In contrast to its sweeping allegations against MGA, Mattel's allegations

21  against Mr. Machado are (by comparison) rather limited.[1] Specifically, Mattel

22  alleges that in February 2004, Mr. Machado decided to leave his employment at

23  "Mattel Mexico" – one of Mattel's subsidiaries in Mexico[2] – and work for MGA's

24  _____

25  [1] Mr. Machado assumes as true the factual allegations in the FAAC for purposes of

26  this motion, and by restating them here Mr. Machado does not admit to their truth.

27  [2] Mattel contends that Mr. Machado was employed by "Mattel de Mexico, S.A. de
   C.V." (FAAC ¶¶ 10, 37.) Although the Court must accept this allegation as true

28  (footnote continued)

                                           4

1  subsidiary in Mexico ("MGA Mexico"). (FAAC ¶ 43.) Two other Mattel Mexico

2  employees – Mariana Trueba and Pablo Vargas – also decided to resign from Mattel

3  Mexico and work for MGA Mexico. (*Id.*) Mattel alleges that in the "weeks" before

4  they resigned, Mr. Machado, Trueba and Vargas copied Mattel information to

5  portable USB storage devices connected to their Mattel computers. (FAAC ¶ 46.)

6  Mattel claims that the information copied by Mr. Machado, Trueba and Vargas was

7  "confidential," "proprietary" and/or "sensitive" (FAAC ¶¶ 43, 45, 46), and

8  contained "trade secrets." (FAAC ¶ 53.) Mattel also claims that Mr. Machado ran

9  software on his Mattel Mexico computer to conceal his activities. (FAAC ¶¶ 54 &

10  95.)

11        Mr. Machado, Trueba and Vargas resigned on April 19, 2004 and began

12  working for MGA Mexico shortly thereafter. (FAC ¶ 51.) Mattel alleges that Mr.

13  Machado, Trueba and Vargas "proceeded to use the Mattel trade secrets that they

14  had stolen" in order to increase MGA Mexico's "market share by 90 percent over

15  the prior year." (FAC ¶ 53.)

16        **B.    RICO Allegations Against Mr. Machado**

17        Assuming the foregoing allegations are true, the FAAC might allege a

18  straightforward misappropriation of trade secrets claim: employee leaves his job to

19  go to a competitor, and brings confidential documents with him. However,

20  misappropriation of trade secrets is not a predicate act under RICO. 18 U.S.C. §

21  1961(1). Accordingly, Mattel accuses Mr. Machado of ancillary predicate acts: mail

22  fraud, wire fraud, spoliation of evidence and criminal copyright infringement.

23        ***Alleged Mail Fraud***: The FAAC identifies only two instances of mail fraud:

24  the delivery by courier of MGA's employment contracts with Mr. Machado, Trueba

25

26  when considering a motion to dismiss, there is no dispute that Mr. Machado was
    actually employed by an entirely different entity, "Mattel Servicios, S.A. de C.V."
27  which is not a party to this action.

28

1   and Vargas from MGA's offices to Mexico (where Mr. Machado and the others

2   could sign them) and delivery back to MGA's offices. (FAAC ¶ 124(a); Ex. R at

3   303-307.) According to Mattel, the courier transportation of the employment

4   contracts took place on April 16 and 17, 2004. (FAAC Ex. R at 303.)

5       ***Alleged Wire Fraud***: The purported "wire fraud" appears to be a series of

6   email and phone communications among Mr. Machado and others that fall into two

7   categories. (FAAC ¶ 124(b).) First, Mattel identifies six emails and several calls Mr.

8   Machado had with MGA employees that occurred while Mr. Machado was still a

9   Mattel Mexico employee or before he joined MGA.[3] (FAAC Ex. W at 672-686.)

10  These communications took place between February 9, 2004 and April 21, 2004.

11  (*Id.*)

12      Second, Mattel identifies five internal MGA emails which were prepared after

13  Mr. Machado began working at MGA.[4] Three of the five emails bear dates from

14  May 2004, one is dated October 15, 2004 and the final email – which Mr. Machado

15  received but did not author – is dated February 4, 2005. (FAAC Ex. W at 687-709.)

16      Notably, the FAAC fails to allege that the foregoing mail and wire

17  communications furthered any *fraudulent* scheme by Mr. Machado. In fact, as

18  argued in the MGA Parties' motions, the FAAC fails to allege any *fraudulent*

19  activity by Mr. Machado at all. At best, the FAAC might allege theft of trade

20  secrets, but it is silent on fraud.

21  _____

22  [3] Exhibit W to the FAAC purports to identify an additional three pre-resignation

23  communications: items 8, 9 and 10 on the chart at page 671. However, the described
    communications are not included in the pages that follow.

24  [4] The Exhibit W to the FAAC purports to identify only two communications

25  occurring after April 2004: items 11 and 12 on the chart at page 671. However, the

26  pages that follow actually include five post-April emails, two of which appear in the
    exhibit twice. (*Compare* FAAC Ex. W at 687-691 *with* Ex. W at 698-702; *compare*

27  FAAC Ex. W at 695-697 *with* Ex. W at 703-705.)

28

1   ***Alleged Spoliation of Evidence***: Mattel also alleges spoliation and

2   concealment of evidence as a predicate act, premised on its allegation that Mr.

3   Machado took steps to "erase information, including information that would reveal

4   the addresses to which he had sent [and] received email messages." (FAAC ¶¶ 54,

5   124(c).) Specifically, Mattel alleges that Mr. Machado "ran a program called

6   'System & Internet Washer Pro" on April 19, 2004, "the day of his resignation." (*Id.*

7   at ¶ 95.)

8   ***Alleged Criminal Copyright Infringement***: Finally, Mattel alleges criminal

9   copyright infringement as a predicate act. (FAAC ¶ 124(f).) However, apart from

10  the bare allegation, the FAAC provides no details. For example, the FAAC fails to

11  allege that any of the information purportedly misappropriated by Mr. Machado in

12  Mexico was protected by United States copyright law or the copyright laws of any

13  country. (*See generally* FAAC ¶¶ 36-56, 124(f) (alleging only that the documents

14  contained "trade secret and confidential information").) Notably, Mattel did not

15  name Mr. Machado as a cross-defendant in its Fourth Counterclaim for Copyright

16  Infringement. (FAAC ¶¶ 143-148.)

17  **III.   LEGAL ANALYSIS**

18      **A.   <u>Legal Standard Under Rule 12(b)(6) and *Ashcroft*</u>**

19  "To survive a motion to dismiss, a complaint must contain sufficient factual

20  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

21  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) "A claim has facial plausibility when

22  the plaintiff pleads factual content that allows the court to draw the reasonable

23  inference that the defendant is liable for the misconduct alleged." *Id.* "[C]onclusory

24  allegations of law and unwarranted inferences are insufficient to defeat a motion to

25  dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136,

26  1140 (9th Cir. 1996).

27

28

**B.    RICO Requires A Pattern Of Racketeering Activity Be Alleged Against Each Defendant**

RICO liability under section 1962(c) "requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Miller v. Yokohama Tire Corp.*, 358 F. 3d 616, 620 (9th Cir. 2004) (internal quotation marks omitted). "The requirements of § 1962(c) must be established as to each individual defendant." *See Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F. 3d 1001, 1027 (8th Cir. 2008); *see also Allwaste, Inc. v. Hecht*, 65 F. 3d 1523, 1530 (9th Cir. 1995)(noting that the complaint failed to allege a pattern against certain defendants accused of an "isolated act").

To allege a "pattern of racketeering activity," a complaint must show both that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). The Supreme Court expounded on RICO's continuity requirement, stating:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement[.]

*H.J. Inc.*, 492 U.S. at 241-242. An open-ended continuity requires predicate misconduct that "by its nature projects into the future with a threat of repetition." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing authorities). "Conversely, an alleged 'series of related predicates' not 'extending over a substantial period of time' and not 'threatening ... future criminal conduct' fails to charge closed-ended continuity. *Id.*

**C.    The FAAC Fails to Allege Open-Ended Continuity**

The claims against Mr. Machado allege a single "fraudulent" scheme: the

8

1  copying of Mattel trade secrets prior to his departure from Mattel Mexico on April

2  19, 2004, and taking it to his new employer, MGA Mexico. (FAAC ¶ 46.) Although

3  a pattern of racketeering activity may be based on a single scheme, Mattel's

4  allegations of multiple predicate acts concerning this single scheme cannot establish

5  an open-ended pattern of racketeering.

6      In *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004), the plaintiffs alleged a

7  RICO violation involving illegal efforts to collect a judgment. *Turner*, 362 F.3d at

8  1223-25. The Ninth Circuit affirmed the District Court's dismissal of the RICO

9  claim, noting that the allegations "failed to satisfy *H.J. Inc.*'s open-ended continuity

10 requirement since the alleged actions were finite in nature in that the mailings, faxes

11 and telephone calls would cease once appellees" accomplished their alleged goal of

12 "collect[ing] the outstanding tort judgment. *Id.* at 1230, *see also Schreiber*

13 *Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F. 2d 1393 (9th Cir.

14 1986)(holding that multiple alleged acts of mail and wire fraud in the course of

15 fraudulently diverting a single shipment of goods for sale in violation of a

16 distribution agreement did not state a RICO claim, due to the lack of the requisite

17 "pattern").

18     Similarly, in *Medallion Television Enterprises v. SelecTV*, 833 F. 2d 1360

19 (9th Cir. 1987), the plaintiff alleged that the defendant fraudulently induced it into

20 entering a television contract, by way of predicate acts of mail fraud and wire fraud.

21 In *Medallion*, the Ninth Circuit affirmed the grant of summary judgment for the

22 defendant, because the defendant's numerous falsehoods were "parts of its single

23 effort to induce Medallion to form the joint venture…" *Id.* at 1364. "Medallion's

24 allegations concern a single fraudulent inducement to enter a contract. Once the

25 [contract was entered into], the fraud, if indeed it was a fraud, was complete." *Id.* at

26 1365. Also critical to the Ninth Circuit's decision in *Medallion* was its conclusion

27 that "there was but a single victim involved." *Sever v. Alaska Pulp Corp.*, 978 F.2d

28 1529, 1535 (9th Cir. 1992); *see also Religious Tech. Ctr. v. Wollersheim*, 971 F.2d

9

1 364, 366 (9th Cir. 1992) (dismissing of certain RICO defendants after holding "that,

2 since the only goal of the Greene defendants was the successful prosecution of the

3 Wollersheim state tort suit, there was no threat of activity continuing beyond the

4 conclusion of that suit").

5      Here, Mattel does not and cannot allege that the predicate acts identified in

6 the complaint, by their nature, had any risk of continuing into the future. Mail and

7 wire fraud are completed when the relevant mail and wire transmissions are made.

8 *United States v. Blitz*, 151 F.3d 1002, 1011 (9th Cir. 1998). The other alleged

9 predicate acts were also completed at the time alleged.

10      Mattel's allegations thus fit the same mold as those brought by the plaintiffs

11 in *Turner, Sever, Medallion* and *Schreiber*. Mattel accuses Mr. Machado of a single

12 scheme: taking documents with him when he resigned from Mattel Mexico and

13 began working for MGA Mexico. The multiple predicate acts alleged by Mattel,

14 including a course of emails and phone calls prior to his departure, were all in

15 furtherance of this one goal, and no others. The purported scheme had a single

16 victim: Mattel. The scheme was completed when Mr. Machado left Mattel and

17 began work at MGA. The predicate acts themselves were also completed and posed

18 no threat of continuing. In short, "although [Mattel] alleges a number of 'acts,' [Mr.

19 Machado's] collective conduct is in a sense a single episode having the singular

20 purpose of [alleged misappropriation of trade secrets], rather than a series of

21 separate, related acts." *Sever*, 978 F.2d at 1535. Accordingly, Mattel has failed to

22 allege open-ended continuity.

23      **D.    The FAAC Fails to Allege Closed-Ended Continuity**

24      "Closed-ended" continuity is established by showing that related predicate

25 acts occurred over a "substantial period of time." *H.J. Inc.*, 492 U.S. at 242.

26 "Predicate acts extending over a few weeks or months and threatening no future

27 criminal conduct do not satisfy this requirement," because "Congress was concerned

28 in RICO with long-term criminal conduct." *Allwaste, Inc. v. Hecht*, 65 F. 3d 1523,

1  1527 (9th Cir. 1995). Although there is no "bright line" rule on the duration of

2  conduct necessary to establish closed-ended continuity, *see id.*, less than a year of

3  activity is generally insufficient to satisfy the closed-end continuity requirement of

4  RICO. *See Religious Tech. Ctr. v. Wollersheim*, 971 F. 2d 364, 366-67 (9th Cir.

5  1992) ("We have found no case in which a court has held the requirement to be

6  satisfied by a pattern of activity lasting less than a year").

7          With two exceptions detailed below, all of the alleged predicate acts occurred

8  during a three month period. Taking them chronologically, Mattel first accuses Mr.

9  Machado of speaking with Susanna Kuemmerle by telephone on February 9, 2004

10  (FAAC ¶ 43, Ex. W at 671:14.) Mattel then contends that Mr. Machado

11  subsequently emailed Kuemmerle and others, but those communications stopped on

12  April 15, 2010. (FAAC Ex. W at 671:12, 682.) Next, on April 16, 2004, MGA

13  delivered by courier Mr. Machado's employment contract to Mexico for signature,

14  which was returned the next day, on April 17, 2004. (FAAC Ex. R at 303.) Mattel

15  then alleges that Mr. Machado ran software to conceal evidence on April 19, 2004.

16  (FAAC ¶¶ 54, 95.) The phone calls ceased the same day. (FAAC Ex. W at 671:14.)

17  Finally, Mattel identifies three emails dated between May 7 and May 12, 2004,

18  within a month of Mr. Machado's resignation.[5] (FAAC Ex. W at 687-705.)

19  Assuming that each of the foregoing communications gave rise to mail or wire

20  fraud, the entire range of predicate acts alleged by Mattel concluded in three

21  months.[6] This is clearly an insufficient period of time to allege a pattern of

22  _____

23  [5] As noted below, the FAAC fails to allege how any communications that occurred

24  after Mr. Machado resigned could further any "fraudulent" scheme to
    misappropriate Mattel's trade secrets. But even assuming that these May emails are

25  properly alleged predicate acts, Mattel fails to allege a pattern of racketeering.

26  [6] Mattel also alleges that Mr. Machado committed criminal copyright infringement,
    but fails to put a date on this supposed predicate act. More importantly, Mattel

27  completely fails to allege any facts supporting its contention as to Mr. Machado.

28  (footnote continued)

11

1  racketeering under RICO. *See, e.g., H.J. Inc.*, 492 U.S. at 242. ("[p]redicate acts

2  extending over a few weeks or months and threatening no future criminal conduct

3  do not satisfy this requirement").

4    E.    **Mattel Cannot Manufacture A Year Long Pattern With Two**

5         **Isolated and Unrelated Email Communications**

6         The fact that all of the foregoing predicate acts occurred within a three month

7  period was obviously not lost on Mattel when it drafted the FAAC. As a result,

8  Mattel alleges two additional post-resignation emails as predicate acts, including

9  one email dated almost exactly a year after the first predicate act. Inclusion of these

10  later emails among the purported predicate acts, however, does nothing to save

11  Mattel's RICO counterclaim.

12         *Turner* is again instructive. There, the RICO predicate acts were fraudulent

13  communications sent to 94 companies between June and July 2001, along with

14  "some follow-up calls to these communications at an unspecified time." *Turner,* 362

15  F.3d at 1231. Critically, the Court noted that "[b]esides these 94 communications,

16  appellants only specifically alleged three additional fraudulent communications"

17  including letters on August 4, 2000 letter and September 20, 2000. *Id.* Much like the

18  case at bar, these additional communications extended the time period of predicate

19  acts from two months (where the bulk of the communications occurred) to nearly a

20  year.

21         Nevertheless, the Ninth Circuit held that inclusion of these isolated events

22  was insufficient to satisfy RICO's continuity requirements:

23         Because almost all of the alleged fraudulent communications occurred
           during the two month period between June and July of 2001, and the
24         additional three categories of communication occurred only

25  _____

26  Accordingly, Mattel has failed to properly allege this predicate act. *Ashcroft*, 129

27  S.Ct. at 1949 (explaining that federal courts need not credit "conclusory statements"
    unsupported by alleged facts).

28

                                        12

1
2

> sporadically in the preceding year (and one of these communications was sent to one of the appellants) appellants have failed to allege a "series of related predicates extending over a substantial period of time."

3
4

*Id.* at 1231. Accordingly, the mail and wire fraud lacked "the requisite continuity," and the District Court properly dismissed the RICO claim. *Id.*

5
6
7
8
9
10

*Turner* compels the same result here. The bulk of the purported wire fraud, all of the mail fraud and the sole act of spoliation occurred between February and May of 2004. As in *Turner*, Mattel has included additional communications that "occurred only sporadically" at other times, and therefore, Mattel has "failed to allege a series of related predicates extending over a substantial period of time." Accordingly, dismissal of Mattel's RICO counterclaim is proper.

11
12

### F.   Mattel Has Failed To Plead That the Post-Resignation Emails Are Related to the Underlying Fraud Or Other Predicate Acts

13
14
15
16
17
18
19
20

*Turner*'s conclusion is only made stronger by the complete absence of FAAC allegations relating the post-resignation emails to the underlying "fraudulent" scheme or the other predicate acts. To state a RICO claim, Mattel must allege that all the predicate acts are related, that is, "they have the same or similar purposes, results, participants, victims or methods of commission." *H.J. Inc.*, 492 U.S. at 240. Mattel bears the burden of pleading *facts* that allow the Court to "draw the reasonable inference" that the post-resignation emails were in any related to the pre-resignation predicate acts alleged in the FAAC. *Ashcroft*, 129 S.Ct. at 1949.

21
22
23
24
25
26
27
28

Moreover, because the predicate acts at issue are wire fraud, Mattel must also allege that the wire communications further a scheme to defraud. "[A] wire fraud violations consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F. 2d 1393, 1400 (9th Cir. 1986). Allegations of wire fraud must satisfy the heightened pleading requirements of

13

1 | Federal Rule of Civil Procedure 9(b). *See, e.g., Lancaster Community Hosp. v.*
2 | *Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (dismissing RICO
3 | claim for failure to allege predicate acts of mail fraud with particularity). To meet
4 | the standard of Rule 9(b), plaintiffs must identify not only the "who, what, when,
5 | where, and how" of the alleged misstatements, but also "what is false or misleading
6 | about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d
7 | 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted).

8 |     Mattel utterly fails to relate the post-resignation emails to the underlying
9 | scheme, opting instead to throw the emails on a list entitled "Machado Wire Fraud"
10 | with no further explanation. In fact, as discussed in the MGA parties' briefs, *none* of
11 | the fraud allegations against Mr. Machado are adequately pled, as Mattel has
12 | completely failed to allege with particularity *any* misstatements by Mr. Machado or
13 | why the statements are false, let alone when, where and to whom the false
14 | statements were made. Nowhere is this more obviously true than in the case of the
15 | post-resignation emails – drafted at a time when neither Mr. Machado, Trueba and
16 | Vargas (or anyone else at MGA) had *any* contact with Mattel, such that they might
17 | make false statements that Mattel could rely on to its detriment.

18 |     Nor could Mattel make such an allegation: the supposed fraudulent purpose of
19 | the mail and wire communications was the misappropriation of Mattel's trade
20 | secrets. That purported goal was accomplished on the date of Mr. Machado's
21 | resignation from Mattel, well before the dates of the post-resignation emails. Once
22 | Mr. Machado had the documents and resigned from Mattel, "the fraud, if indeed it
23 | was a fraud, was complete." *Turner,* 362 F.3d at 1230. Internal MGA emails,
24 | drafted months later, have no relation to that purported scheme or any of its
25 | contemporaneous predicate acts.

26 |     Nor does the content of the post-resignation emails give rise to an inference
27 | that they have any relationship to a fraudulent scheme. The October 15, 2004 email,
28 | drafted some six months after Mr. Machado resigned from Mattel, is nothing more

than a report on "marketing status." (FAAC Ex. W at 706-07.) The observations therein are entirely prosaic: observations on recent television commercials and contests designed to market dolls; anticipated television advertising for dolls; sponsorship of an upcoming race against breast cancer; and recent doll sales. (*Id.*) There is nothing in the email, either implied or explicit, supporting the inference that it was in anyway related to any "fraudulent" scheme.

Similarly, Mattel's inclusion of the February 4, 2005 email, drafted some 10 months after Mr. Machado resigned from Mattel, is also unavailing. (FAAC Ex. W at 708-09.) This email, too, is remarkable only for how utterly unremarkable it is. It addresses the potential late arrival of doll shipments from Asia and MGA's attempts to place advertisements on television, among other entirely mundane concerns for a toy company. (*Id.*) Indeed, Mr. Machado did not even write any portion of the February 4, 2005 email, and with no mention or even inference concerning Mattel's purported trade secrets, this email too has no relation to any "fraudulent" scheme.[7]

Routine emails, untethered from any supposedly criminal or fraudulent scheme, cannot transform an otherwise unremarkable misappropriation of trade secrets into a RICO claim. Absent some factual explanation for how these innocuous emails might further any fraudulent scheme, Mattel has utterly failed to allege a proper RICO claim under *any* pleading standard, let alone under Rule 9(b).

## IV.   CONCLUSION

The alleged predicate acts do not satisfy the open-ended continuity requirements of a "pattern of racketeering activity" established by *H.J. Inc.* and

---

[7] Mattel has had months if not years to conduct discovery on its RICO claims. It is thus telling that after reviewing the thousands of emails Mr. Machado drafted or received in the ordinary course of his duties at MGA Mexico and later at MGA, Mattel could find no better examples to illustrate a continuous pattern of racketeering than these two anemic selections.

1  Ninth Circuit precedent because there is no threat of continuing racketeering activity

2  alleged. Neither does the FAC satisfy the substantial period closed-ended continuity

3  requirement of *H.J. Inc.* and *Turner*. Mattel lists two post-resignation emails as

4  "racketeering acts" in an attempt to establish this closed-ended requirement, but

5  occasional and sporadic communications do not make a RICO pattern. Moreover,

6  Mattel utterly fails to allege how these unrelated emails, drafted months after the

7  alleged "fraudulent" scheme and predicate acts were concluded, might possibly

8  further that scheme. In short, the FAAC fails to allege a "series of related predicates

9  extending over a substantial period of time." *Turner*, 362 F.3d at 1231. Accordingly,

10  the Court should dismiss of Mattel's First Counterclaim as to Gustavo Machado.

11  DATED: May 10, 2010                    Respectfully submitted,

12                                              SCHEPER KIM & HARRIS LLP
13                                              DAVID C. SCHEPER
                                                ALEXANDER H. COTE
14                                              MARK E. OVERLAND

15
                                                By:   /s/ *Alexander H. Cote*
16                                                    Alexander H. Cote
17                                                    Attorneys for Carlos Gustavo Machado
                                                     Gomez
18

19

20

21

22

23

24

25

26

27

28