MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel: (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and
IGWT 826 Investments LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-9049-DOC (RNBx)<br>Consolidated with Nos. CV 04-9059 and CV 05-2727<br><br>Hon. David O. Carter<br><br>**[REDACTED] NOTICE OF MOTIONS AND MOTIONS OF COUNTER-DEFENDANTS MGA PARTIES AND IGWT 826 TO DISMISS RICO AND CREDITOR CLAIMS AND FOR SUMMARY ADJUDICATION OF RICO CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: June 7, 2010<br>Time: 8:30 a.m.<br>Dept: Courtroom 9D |

**REDACTED – PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTIONS AND MOTIONS ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES........................................... 1

INTRODUCTION ................................................................................................... 1

SUMMARY OF ARGUMENT................................................................................ 2

STATEMENT OF FACTS ...................................................................................... 4

    A.    Procedural Background.......................................................................... 4

    B.    Summary Of Pertinent FAAC Allegations. .......................................... 6

    C.    Mattel's Claims Of Racketeering Injury................................................ 8

ARGUMENT ........................................................................................................... 3

I.    THE RICO COUNTERCLAIMS SHOULD BE DISMISSED PURSUANT TO RULES 9(B) AND 12(B)(6)................................................ 3

    A.    Mattel Fails to Plead A Proper RICO Enterprise.................................. 3

    B.    Mattel Fails To Plead A Valid Conspiracy Under §1962(d). ............. 15

    C.    The Predicate Acts Are Defective........................................................ 17

        1.    Mattel Fails To Plead A Valid Mail Or Wire Fraud Scheme................................................................................ 17

            a.    Deprivation Of Honest Services Cannot Be A RICO Predicate Act....................................................... 19

            b.    Mattel Cannot Use Mail And Wire Fraud To Make a Predicate Act of Trade Secret Theft. .......................... 20

            c.    Obstruction Of Justice Is Not Mail/Wire Fraud............. 21

            d.    Concealing Assets Is Not Mail/Wire Fraud. ................. 22

            e.    In All Events, Mattel Fails To Plead A Scheme To Defraud........................................................................ 22

**TABLE OF CONTENTS**
(continued)

Page

2.     Mattel Fails To Plead A Travel Act Offense Based On Bribery. ................................................................... 24

II.   ADDITIONALLY, SUMMARY ADJUDICATION SHOULD BE GRANTED WITH RESPECT TO THE RICO COUNTERCLAIMS. ........ 26

A.   Civil RICO's Proximate Cause And Injury Standards Are More Stringent Than Those of Common Law. ............................................. 27

B.   Mattel Cannot Prove Injury To Business Or Property That Directly Resulted From Any Of The Remaining Alleged Predicate Acts. ...................................................................... 28

1.     Mattel Has Agreed To Forego The Only Theoretically Available Cognizable Harm From Alleged Obstruction Of Justice And Evidence Tampering. ............................................. 28

2.     As A Matter Of Law Mattel Has Suffered No Racketeering Injury From Alleged Criminal Copyright Infringement Because The Undisputed Facts Show It Cannot Prove That Predicate Act. ............................................. 29

C.   Mattel's Other Claimed Injuries Are Not Cognizable Under RICO .......................................................................... 30

1.     MGA Satisfies Both Prongs Of The *Celotex* Burden As To The Claim Of Lost Opportunity. ........................................... 30

2.     MGA Satisfies Both Prongs Of The *Celotex* Burden As To The Claim Of Lost Profits. ................................................ 32

3.     Mattel Cannot Prove Legally Cognizable Harm From The Alleged Concealment Of Assets. ........................................... 34

III.   THE THIRTEENTH THROUGH FIFTEENTH CREDITOR-BASED COUNTERCLAIMS SHOULD ALSO BE DISMISSED PURSUANT TO RULES 9(B), 12(B)(6) AND 28 U.S.C. SECTION 1367. .................... 35

A.   Mattel's Thirteenth Through Fifteenth Counterclaims Should Be Dismissed Pursuant To 28 U.S.C. 1367 ................................. 35

B.   The Thirteenth Counterclaim Must Be Dismissed for Failure to Satisfy the Specificity Requirements of Rule 9(b). ........................... 36

**TABLE OF CONTENTS**
**(continued)**

Page

C.    The Fifteenth Counterclaim Is Legally Defective. ............................ 37

IV.    THE SIXTEENTH COUNTERCLAIM FOR BREACH OF CONSTRUCTIVE TRUST FAILS TO STATE A CLAIM FOR RELIEF....................................................................................... 39

CONCLUSION.............................................................................................. 39

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adams* v. *County of Erie*,
2009 WL 3087214 (W.D. Pa. Sept. 23, 2009) ................................................ 19

*Anza* v. *Ideal Steel Supply Co.*,
547 U.S. 451 (2006) ........................................................................ 33, 34

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009) .................................................................... 14, 15

*Atkinson* v. *Anadarko Bank & Trust Co.*,
808 F.2d 438 (5th Cir. 1987) ................................................................ 15

*Beck* v. *Prupis*,
529 U.S. 494 (2000) .......................................................................... 27

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007) .................................................................. 14, 16, 17

*Black* v. *U. S.*,
129 S. Ct. 2379 (2009) ...................................................................... 19

*Blyden* v. *Mancusi*,
186 F.3d 252 (2d Cir. 1999) ................................................................. 29

*Bridge* v. *Phoenix Bond & Indem. Co.*,
128 S. Ct. 2131 (2008) ...................................................................... 27

*Bryant* v. *Mattel, Inc.*,
573 F. Supp. 2d 1254 (C.D. Cal. 2007) ...................................................... 29

*Bucklew* v. *Hawkins, Ash, Baptie & Co.*,
329 F.3d 923 (7th Cir. 2003) .................................................................. 1

*Burke* v. *Dowling*,
944 F. Supp. 1036 (E.D.N.Y. 1995) .......................................................... 17

*Burkhart Grob Luft Und Raumfahrt GMBH & Co.* v. *E-Systems., Inc.*,
257 F.3d 461 (5th Cir. 2001) ................................................................. 31

*Burnett* v. *Rowzee*,
2007 WL 2735682 (C.D. Cal. Aug. 28, 2007) ............................................... 36

*C & W Const. Co.* v. *Bhd. of Carpenters and Joiners of Am.*,
687 F. Supp. 1453 (D. Hawaii 1988) ........................................................ 17

*C.B. & D.M. Entertainment, Inc.* v. *Galardi*,
2007 WL 4219409 (C.D.Cal. Nov. 28, 2007) ................................................ 33

MOTIONS TO DISMISS AND FOR SUMMARY
ADJUDICATION OF RICO AND CREDITOR CLAIMS

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*Cal. Pharm. Mgt., LLC v. Redwood Fire & Cas. Ins. Co.*,
   SACV 09-141 DOC(ANx), *slip op* at 12 (7/29/09) ....................................18, 28

4

*Carnegie-Mellon Univ.* v. *Cohill*,
   484 U.S. 343 (1988) ................................................................................................ 35

5

6

*Carter* v. *U.S.*
   530 U.S. 255 (2000) ................................................................................................ 19

7

*Cedric Kushner Promotions, Ltd.* v. *King*,
   533 U.S. 158 (2001) ................................................................................................ 15

8

9

*Celotex Corp.* v. *Catrett*,
   477 U.S. 317 (1986) ..........................................................................................26, 31

10

*Chagby* v. *Target Corp.*,
   2008 U.S. Dist. LEXIS 107738 (C.D. Cal. Oct. 28, 2008) ..............................21

11

12

*Cheek* v. *U.S.*,
   498 U.S. 192 (1991) ................................................................................................ 29

13

*Cleveland* v. *U.S.*,
   531 U.S. 12 (2000) ........................................................................................18, 20, 21

14

15

*In re Countrywide Financial Corp. Mortg. Mktg. and Sales Practices Litig.*,
   601 F. Supp. 2d 1201 (S.D.Cal. 2009) ...............................................................16

16

*DeMauro* v. *DeMauro*,
   115 F.3d 94 (1st Cir. 1997) ...................................................................................22

17

18

*Deane* v. *Weyerhaeuser Mortg. Co.*,
   967 F. Supp. 30 (D. Mass. 1997)..........................................................................15

19

*Devereaux* v. *Abbey*,
   263  F.3d 1070 (9th Cir. 2001).............................................................................26

20

21

*Diaz* v. *Gates*,
   380 F.3d 480 (9th Cir. 2004)...........................................................................19, 27

22

*In re Ditech Networks, Inc. Deriv. Litig.*, 2008 WL 820705
    (N.D.Cal. Mar. 26, 2008)  .................................................................................14

23

24

*Eshelman* v. *Orthoclear Holdings, Inc.*,
   2009 WL 506864 (N.D. Cal. Feb. 27, 2009).......................................................38

25

*Evercrete Corp.* v. *H-Cap Ltd.*,
   429 F. Supp. 2d 612 (S.D.N.Y. 2006).................................................................21

26

*Flores* v. *Emerich & Fike, P.C.*,
   2008 WL 2489900 (E.D.Cal. June 18, 2008).....................................................22

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Forsyth* v. *Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) ................................................................... 6

*Greenstein* v. *Peters*,
   2009 WL. 722067 (C.D. Cal. Mar. 16, 2009) ...................................... 16

*Gross* v. *Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009) ................................................... 2

*Hemi Group, LLC* v. *City of New York*,
   130 S. Ct. 983 (2010) .............................................................................. 27

*Holmes* v. *Securities Investor Prot. Corp.*,
   503 U.S. 258 (1992) ................................................................................ 27

*Houseman* v. *U.S. Aviation Underwriters*,
   171 F.3d 1117 (7th Cir. 1999) ............................................................... 30

*Howard* v. *Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000) ................................................................. 17

*Ideal Steel Supply Corp.* v. *Anza*,
   2009 WL. 1883272 (S.D.N.Y. June 30, 2009) ..................................... 33

*Imagineering, Inc.* v. *Kiewit Pacific Co.*,
   976 F.2d 1303 (9th Cir. 1992) .......................................................... 28, 31

*In re Jacks*,
   243 B.R. 385 (C.D. Cal. 1999), ............................................................. 38

*Jennings* v. *Auto Meter Prods., Inc.*,
   495 F.3d 466 (7th Cir. 2007) ................................................................. 23

*Johnson Elec. N. Am. Inc.* v. *Mabuchi Motor Am. Corp.*,
   98 F. Supp. 2d 480 (S.D.N.Y. 2000) ..................................................... 21

*Katzman* v. *Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) ........................................................... 15

*Lancaster Comm. Hosp.* v. *Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991) ........................................................... 18, 34

*Lerner* v. *Fleet Bank, N.A.*,
   459 F.3d 273 (2nd Cir. 2006) ................................................................ 27

*McDaniel* v. *Anheuser-Busch, Inc.*,
   987 F.2d 298 (5th Cir. 1993) ................................................................. 30

*Marfut* v. *City of North Port Fla.*,
   2009 WL. 790111 (M.D. Fla. Mar. 25, 2009) ...................................... 19

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Markey* v. *Kudelski S.A.*,
   2008 WL. 65401 (S.D. Cal. Jan. 3, 2008) ........................................... 25

*Miller* v. *Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ............................................................... 21

*Monterey Plaza Hot. Ltd. P'ship* v. *Local 483 of Hot. Employees*,
   215 F.3d 923 (9th Cir. 2000) ............................................................... 34

*Montgomery* v. *Practice Mgt. Assoc., Inc.*,
   1990 U.S. Dist. LEXIS 7731 (N.D. Cal. Apr. 5, 1990) ...................... 36

*Neubronner* v. *Milken*,
   6 F.3d 666 (9th Cir. 1993) ................................................................... 36

*Oki Semiconductor Co.* v. *Wells Fargo Bank, Nat'l Ass'n*,
   298 F.3d 768 (9th Cir. 2002) ............................................................... 22

*Overnite Transp. Co.* v. *Int'l Bhd. of Teamsters*,
   168 F. Supp. 2d 826 (W.D. Tenn. 2001) ............................................. 17

*Pa. Ass'n of Edwards Heirs* v. *Rightenour*,
   235 F.3d 839 (3rd Cir. 2000) .............................................................. 16

*Parker* v. *Learn the Skills Corp.*,
   530 F. Supp. 2d 661 (D. Del. 2008) .................................................... 28

*Physicians Mut. Ins. Co.* v. *Greystone Svg. Corp., Inc.*,
   2009 WL. 855648 (S.D.N.Y. Mar. 25, 2009) ...................................... 15

*Priestley* v. *Comrie*,
   2007 U.S. Dist. LEXIS 87386 (S.D.N.Y. Nov. 27, 2007) .................. 38

*Proven Methods Seminars, LLC* v. *Am. Grants & Affordable Hous. Inst.*,
   2008 WL. 269080 (E.D. Cal. Jan. 29, 2008) ....................................... 31

*Re-Alco Indus., Inc.* v. *Nat'l Ctr. for Health Educ., Inc.*,
   812 F. Supp. 387 (S.D.N.Y. 1993) ...................................................... 13

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ............................................................................. 16

*In re Rhone-Poulenc Rorer, Inc.*,
   51 F.3d 1293 (7th Cir. 1995) ............................................................... 29

*Richard* v. *Hoechst Celanese Chem. Group*,
   355 F.3d 345 (5th Cir. 2003) ............................................................... 30

*Richmark Corp.* v. *Timber Falling Consultants, Inc.*,
   730 F. Supp. 1525 (D. Or. 1990) ........................................................ 17

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3   *Riverwoods Chappaqua Corp.* v. *Marine Midland Bank*,
        30 F.3d 339 (2d Cir. 1994) ................................................................ 15

4

5   *Salinas* v. *U.S.*,
        522 U.S. 52 (1997) ........................................................................... 16

6   *Scheduled Airlines Traffic Offices, Inc.* v. *Objective, Inc.*,
        180 F.3d 583 (4th Cir. 1999) ............................................................ 31

7

8   *Screws* v. *U.S.*,
        325 U.S. 91 (1945) ........................................................................... 29

9   *Sedima, S.P.R.L.* v. *Imrex Co., Inc.*,
        473 U.S. 479 (1985) ..................................................................... 27, 30

10

11  *Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*,
        130 S. Ct. 1431 (2010) ..................................................................... 37

12  *Shoregood Water Co., Inc.* v. *U.S. Bottling Co.*,
        2009 U.S. Dist. LEXIS 69624 (D. Md. Aug. 10, 2009) ...................... 38

13

14  *Skilling* v. *U.S.*,
        130 S. Ct. 393 (2009) ....................................................................... 20

15  *Slaughter* v. *Levy*,
        39 F.3d 1188 (9th Cir. 1994) ............................................................ 36

16

17  *Smith* v. *Jackson*,
        84 F.3d 1213 (9th Cir. 1996) ............................................................ 20

18  *Sprewell* v. *Golden State Warriors*,
        266 F.3d 979 (9th Cir. 2001) ............................................................ 14

19

20  *St. Clair Shores Gen. Employees Ret. Sys.* v. *Eibeler*,
        2006 U.S. Dist. LEXIS 72316 (S.D.N.Y. Oct. 4, 2006) ..................... 38

21  *Steele* v. *Hosp. Corp. of Am.*,
        36 F.3d 69 (9th Cir. 1994) ................................................................ 27

22

23  *Sunnyside Dev. Co.* v. *Cambridge Display Tech. Ltd.*,
        2008 U.S. Dist. LEXIS 74850 (N.D. Cal. Sept. 26, 2008) ................. 36

24  *Swartz* v. *KPMG LLP*,
        476 F.3d 756 (9th Cir. 2007) ....................................................... 14, 17

25

26  *Sybersound Records, Inc.* v. *UAV Corp.*,
        517 F.3d 1137 (9th Cir. 2008) .......................................................... 33

27  *TAS Distributing Co., Inc.* v. *Cummins Engine Co.*,
        491 F.3d 625 (7th Cir. 2007) ........................................................ 31-32

28

MOTIONS TO DISMISS AND FOR SUMMARY
ADJUDICATION OF RICO AND CREDITOR CLAIMS

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Tuscano* v. *Tuscano*,
   403 F. Supp. 2d 214 (E.D.N.Y. 2005)................................................38

4

5

*U. S.* v. *Acevedo-Cruz*,
   2006 WL 448680 (D.P.R. Feb. 23, 2006) ........................................29

6

*U.S.* v. *Bohonus*,
   628 F.2d 1167 (9th Cir. 1980)...............................................19, 20

7

8

*U.S.* v. *Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ............................................16

9

*U.S.* v. *Gallant*,
   570 F. Supp. 303 (S.D.N.Y. 1983) ......................................21

10

11

*U.S.* v. *Goss*,
   803 F.2d 638 (11th Cir. 1986) ............................................29

12

*U.S.* v. *Green*,
   592 F.3d 1057 (9th Cir. 2010).............................................18, 19

13

14

*U.S.* v. *Heilman*,
   614 F.2d 1133 (7th Cir. 1980) ............................................29

15

*U.S.* v. *Moran*,
   757 F. Supp. 1046 (D. Neb. 1991) .....................................29

16

17

*U.S.* v. *Murdock*,
   290 U.S. 389 (1933) .............................................................29

18

*U.S.* v. *Philip Morris USA, Inc.*,
   396 F.3d 1190 (D.C. Cir. 2005) .........................................30

19

20

*U.S.* v. *Polizzi*,
   500 F.2d 856 (9th Cir. 1974)...............................................25

21

*U.S.* v. *Williams*,
   441 F.3d 716 (9th  Cir. 2006) .............................................19

22

23

*U.S.* v. *Wise*,
   550 F.2d 1180 (9th Cir. 1977) ............................................29

24

*Vess* v. *Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)............................................14

25

26

*Weyhrauch* v. *U.S.*,
   129 S. Ct. 2863 (2009) .......................................................19

27

*Zavala* v. *Wal-Mart Stores, Inc.*,
   447 F. Supp. 2d 379 (D.N.J. 2006).....................................22

28

MOTIONS TO DISMISS AND FOR SUMMARY
ADJUDICATION OF RICO AND CREDITOR CLAIMS

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Zhang* v. *Am.n Gem Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) ................................................................ 30

**STATE CASES**

*Batt* v. *City and County of San Francisco*,
  155 Cal. App. 4th 65 (2007) .................................................................. 39

*Buxbom* v. *Smith*,
  23 Cal. 2d 535 (1944) ............................................................................ 19

*Copeland* v. *Baskin Robbins, U.S.A.*,
  96 Cal. App. 4th 1251 (Cal. App. 2002) .............................................. 34

*Glue-Fold, Inc.* v. *Slautterback Corp.*,
  82 Cal. App. 4th 1018 (2000) ................................................................ 39

*Kids' Universe* v. *In2Labs*,
  116 Cal. Rptr. 2d 158 (Cal. App. 2002) ................................................ 30

*Metro Traffic Control Inc.* v. *Shadow Traffic Network*,
  22 Cal. App. 4th 853 (1994) .................................................................. 19

*Racine & Laramie, Ltd.* v. *Dept. of Parks & Rec.*,
  11 Cal. App. 4th 1026 (1992) ................................................................ 34

**FEDERAL STATUTES**

17 U.S.C. §504 ............................................................................................ 1

18 U.S.C.
  §1341 ................................................................................... passim
  §1343 ................................................................................... passim
  §1346 ................................................................................ 7, 19, 20
  §1503 ............................................................................................ 7
  §1832 .......................................................................................... 30
  §1952 ....................................................................... 3, 7, 24, 25
  §1961 .......................................................................................... 20
  §1962 ................................................................................... passim
  §2391 ............................................................................................ 7

28 U.S.C. §1367 .................................................................................. 3, 35

Fed. R. Civ. P.
  9(b) ..................................................................................... passim
  12(b)(6) ........................................................................................ 6
  12(f) ........................................................................ 3, 13, 14, 35
  23.1 ........................................................................................ 3, 37

**STATE STATUTES**

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Civ. Code §3439 ................................................................................ 35

Cal. Corp. Code
   §501 ..................................................................................... 35, 37
   §506 ................................................................................... 35, 37, 38

Cal. Penal Code
   §641.3 ................................................................................. 3, 7, 25

## NOTICE OF MOTIONS AND MOTIONS

PLEASE TAKE NOTICE that on June 7, 2010 at 8:30 a.m. before the Honorable David O. Carter, Presiding, in Courtroom 9D, 411 West Fourth Street, Santa Ana, California 92701, Counter-defendants MGA Entertainment, Inc. ("MGA"), MGAE de Mexico S.R.L. de C.V. ("MGAE de Mexico), MGA HK Ltd. ("MGA HK"), Isaac Larian ("Larian") (collectively, the "MGA Parties") and IGWT 826 Investments LLC ("IGWT"), pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 28 U.S.C. §1367, 12(b)(6), 12(f), 23.1, and 56, the MGA Parties and IGWT will, and hereby do, move to dismiss, move to strike, and move for summary adjudication of the First and Second Claims, and to dismiss the Thirteen through Sixteenth Claims of Mattel's Fourth Amended Answer and Counterclaims ("FAAC") for the reasons and on the grounds set forth below.

To wit:  MGA moves to dismiss with prejudice the First (RICO) claim of the FAAC on the grounds that the claim fails to plead facts showing a proper RICO enterprise; moves to dismiss and/or strike with prejudice the predicate act of mail fraud on the ground that Mattel fails to plead facts sufficient to state such a predicate act and fails to plead the facts with the requisite specificity; moves to dismiss and/or strike with prejudice the predicate act of wire fraud on the ground that Mattel fails to plead facts sufficient to state such a predicate act and fails to plead the facts with the requisite specificity; moves to dismiss and/or strike with prejudice the predicate act of a violation of the Travel Act through commercial bribery on the ground that Mattel fails to plead facts sufficient to establish such a predicate.  MGA further moves to dismiss with prejudice the Second (RICO Conspiracy) claim on the ground that it fails to plead facts sufficient to state a conspiracy, and on the ground that the First claim is defective.  MGA further moves pursuant to Rule 56(a) for summary adjudication of the First and Second claims on the ground that the undisputed facts show that Mattel cannot prove injury to its business or property by reason of a violation of Section 1962 by MGA; in the

alternative, MGA moves pursuant to Rule 56(d) that the Court find such issues as are not reasonably subject to dispute.  MGA further moves to dismiss the Thirteenth and Fourteenth (Actual and Constructive Fraudulent Transfer) claims on the ground that the Court lacks and/or should not exercise supplemental jurisdiction over those claims.  MGA moves to dismiss the Thirteenth claim for Fraudulent Transfer as failing to plead facts demonstrating a fraud.  MGA moves to dismiss the Sixteenth (Breach of Constructive Trust) claim for failure to state a claim upon which relief can be granted.

Larian moves to dismiss with prejudice the First (RICO) claim of the FAAC on the grounds that the claim fails to plead facts showing a proper RICO enterprise; moves to dismiss and/or strike with prejudice the predicate act of mail fraud on the ground that Mattel fails to plead facts sufficient to state such a predicate act and fails to plead the facts with the requisite specificity; moves to dismiss and/or strike with prejudice the predicate act of wire fraud on the ground that Mattel fails to plead facts sufficient to state such a predicate act and fails to plead the facts with the requisite specificity; moves to dismiss and/or strike with prejudice the predicate act of a violation of the Travel Act through commercial bribery on the ground that Mattel fails to plead facts sufficient to establish such a predicate.  Larian further moves to dismiss with prejudice the Second (RICO Conspiracy) claim on the ground that it fails to plead facts sufficient to state a conspiracy, and on the ground that the First claim is defective.  Larian further moves pursuant to Rule 56(a) for summary adjudication of the First and Second claims on the ground that the undisputed facts show that Mattel cannot prove injury to its business or property by reason of a violation of Section 1962 by Larian; in the alternative, Larian moves pursuant to Rule 56(d) that the Court find such issues as are not reasonably subject to dispute.  Larian further moves to dismiss the Thirteenth through Fifteenth (Actual and Constructive Fraudulent Transfer, Creditor Derivative) claims on the ground that the Court lacks and/or should not exercise supplemental jurisdiction

over those claims.  Larian moves to dismiss the Thirteenth claim for Fraudulent Transfer as failing to plead facts demonstrating a fraud.  Larian moves to dismiss the Fifteenth (Creditor Derivative) claim pursuant to Rule 23.1 on the grounds that Mattel cannot pursue a creditor derivative claim in federal court and has a disabling conflict of interest, and pursuant to Rule 12(b)(6) on the ground that it fails to plead facts entitling Mattel to relief.  MGA moves to dismiss the Sixteenth (Breach of Constructive Trust) claim for failure to state a claim upon which relief can be granted.

MGA HK moves to dismiss with prejudice the First (RICO) claim of the FAAC on the grounds that the claim fails to plead facts showing a proper RICO enterprise; moves to dismiss and/or strike with prejudice the predicate act of mail fraud on the ground that Mattel fails to plead facts sufficient to state such a predicate act and fails to plead the facts with the requisite specificity and moves to dismiss and/or strike with prejudice the predicate act of wire fraud on the ground that Mattel fails to plead facts sufficient to state such a predicate act and fails to plead the facts with the requisite specificity.  MGA HK further moves to dismiss with prejudice the Second (RICO Conspiracy) claim on the ground that it fails to plead facts sufficient to state a conspiracy, and on the ground that the First claim is defective.  MGA HK further moves pursuant to Rule 56(a) for summary adjudication of the First and Second claims on the ground that the undisputed facts show that Mattel cannot prove injury to its business or property by reason of a violation of Section 1962 by MGA HK; in the alternative, MGA HK moves pursuant to Rule 56(d) that the Court find such issues as are not reasonably subject to dispute.

MGAE de Mexico moves to dismiss with prejudice the First (RICO) claim of the FAAC on the grounds that the claim fails to plead facts showing a proper RICO enterprise; moves to dismiss and/or strike with prejudice the predicate act of wire fraud on the ground that Mattel fails to plead facts sufficient to state such a

MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION OF RICO AND CREDITOR CLAIMS

predicate act and fails to plead the facts with the requisite specificity.  MGA de Mexico further moves to dismiss with prejudice the Second (RICO Conspiracy) claim on the ground that it fails to plead facts sufficient to state a conspiracy, and on the ground that the First claim is defective.  MGAE de Mexico further moves pursuant to Rule 56(a) for summary adjudication of the First and Second claims on the ground that the undisputed facts show that Mattel cannot prove injury to its business or property by reason of a violation of Section 1962 by MGAE de Mexico; in the alternative, MGAE de Mexico moves pursuant to Rule 56(d) that the Court find such issues as are not reasonably subject to dispute.

IGWT moves to dismiss with prejudice the Second (RICO Conspiracy) claim on the ground that it fails to plead facts sufficient to state a conspiracy, and on the ground that the First claim is defective.  IGWT further moves to dismiss the Thirteenth and Fourteenth (Actual and Constructive Fraudulent Transfer) claims on the ground that the Court lacks and/or should not exercise supplemental jurisdiction over those claims.  IGWT moves to dismiss the Thirteenth claim for Fraudulent Transfer as failing to plead facts demonstrating a fraud.  IGWT further moves pursuant to Rule 56(a) for summary adjudication of the Second claim on the ground that the undisputed facts show that Mattel cannot prove injury to its business or property by reason of a violation of Section 1962 by IGWT (indeed, Mattel does not even plead that IGWT committed any predicate act as an overt act in furtherance of the conspiracy); in the alternative, IGWT moves pursuant to Rule 56(d) that the Court find such issues as are not reasonably subject to dispute.

The foregoing motions are based on the attached Memorandum of Points and Authorities ("MPA"), the accompanying Separate Statement of Uncontroverted Facts and Conclusions of Law, the Kieckhefer Declaration and Exhibits, and Appendix of Previously Marked Exhibits filed herewith, the papers and pleadings filed in this action as referenced by docket number in the MPA, and any other and further evidence and argument presented prior to or at the hearing on the motions.

Statement of Compliance

Pursuant to L.R. 7-3, counsel for all parties met and conferred regarding these motions on Tuesday, May 4, 2010.

Dated:    May 10, 2010.

Respectfully submitted,

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP

By: _____
ANNETTE L. HURST

Attorneys for MGA Parties and IGWT

MOTIONS TO DISMISS AND FOR SUMMARY
ADJUDICATION OF RICO AND CREDITOR CLAIMS

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Copyright Act does not provide for exemplary damages (other than a modest enhancement of statutory damages).  17 U.S.C. §504;  *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923 (7th Cir. 2003).  It does not permit recovery of damages attributable to elements other than the infringement.  17 U.S.C. §504.  Correctly recognizing these limitations, the Phase 1 jury awarded a small fraction of the massive sums of damages demanded by Mattel.

So, Mattel has employed a backup plan to make up for its perceived defects in the principal legal theory concerning the alleged theft by MGA and subsequent exploitation of Bratz.  Mattel has alleged RICO claims to take advantage of that statute's treble damages, and to demonize MGA and drive it from the marketplace.

These RICO claims are reflective of the general strategy Mattel has employed over the course of this litigation.  Mattel has had no fewer than five chances to either assert or amend its claims.  Mattel has used these opportunities to engage in a game of bait-and-switch litigation.  When facts unfavorable to Mattel come to light, Mattel amends its pleading, swapping out old for new–whether they are legal claims, factual allegations, or even parties.  Mattel's First and Second Counterclaims (for RICO violations) and Thirteenth, Fourteenth, and Fifteenth Counterclaims (for fraudulent transfers) are only the latest example of this tiresome strategy, which has also resulted in the last-minute addition of a new counterclaimant (Mattel Mexico) in every claim, and two new counter-defendants (Omni 808 Investors, LLC and IGWT 826 Investments, LLC) in a few claims.  The problem with Mattel's *ad hoc* pleading strategy, is that it is *ad hoc*—merely an attempt to grab at whatever Mattel can.

Lured by the prospect of reaping triple damages, ruining reputations, and rendering this litigation as onerous and expensive as possible, Mattel persists through "lawyerly sleight of hand" and  "shoehorned pleadings" that have

1    "overreached well beyond the bounds of the law's reasonable construction and fair-

2    minded litigation."[1]  It is time to put an end to these tactics.  Mattel has suffered

3    marketplace failures, not injuries—let alone racketeering injuries due to MGA.  It

4    has no viable RICO claim against the counter-defendants.

5         Mattel's presumptuous fraudulent transfer claims, apparently designed to

6    safeguard its power to enforce a judgment it does not yet–and may never–have, are

7    also legally defective.  In short, Mattel's lawyer-generated attempts to augment or

8    to backstop its verdict from Phase 1 should be dismissed with prejudice.

9                        **SUMMARY OF ARGUMENT**

10        Mattel's RICO counterclaims fail to state a claim for relief, because Mattel

11   fails to plead a proper RICO enterprise.  Mattel pleads an association-in-fact

12   comprised of MGA, its subsidiaries, and its agents – all of which are counter -

13   defendants.  This does not suffice to plead an enterprise that is separate from the

14   persons who conducted its affairs through a pattern of racketeering.  Part I(A),

15   *infra*.

16        Mattel's Second Counterclaim (RICO conspiracy, 18 U.S.C. §1962(d)) also

17   fails because it alleges a conspiracy to conspire to aid and abet a violation of 18

18   U.S.C. section 1962(c).[2]  There is no such theory.  Also, Mattel fails to plead the

19   minimal facts needed to plead a conspiracy claim against any of the MGA Parties

20   or new counter-defendant IGWT 826, which is not even linked to a predicate act.

21   Part I(B), *infra*.

22        Mattel's First Counterclaim (conducting the affairs of an enterprise through a

23   pattern of racketeering, §1962(c)) also fails to allege valid predicate acts of mail

24

25   [1] *See Gross v. Waywell*, 628 F. Supp. 2d 475, 479-80 (S.D.N.Y. 2009) (observing
     that plaintiffs lose most civil RICO cases through motions to dismiss or for
26   summary judgment, and that "in 98 percent of the [145] RICO appellate cases
     surveyed [nationwide, from 1999 – 2001], which do not include RICO actions
27   dismissed by the district courts but not appealed, plaintiffs and counsel invested
     extensive time and energies in litigation only to come away with a total loss.")
28   [2] Unless otherwise stated, all statutes cited in the RICO arguments are to Title 18.

fraud (§1341), wire fraud (§1343), or violation of the Travel Act (§1952) through commercial bribery (Cal. Penal Code §641.3).  Part I(C), *infra*.

The fraud theories are defective.  Mattel bases them on trade secret misappropriation and deprivation of honest services, neither of which suffice as predicate acts.  Mattel does not plead any *scheme to defraud* it of money or property; it at most pleads a scheme to *harm* it in various ways.  Part I(C)(1), *infra*.  Mattel's claim that MGA and Larian violated the Travel Act by acts of commercial bribery also fails.  Even assuming the Travel Act (a tool for fighting organized crime) reached this sort of conduct (including alleged bribery, in Mexico and Canada, of employees of foreign subsidiaries), this predicate act has the same defect as the honest services fraud:  failure to plead facts showing the MGA Parties corruptly induced any Mattel employees to injure Mattel.  Part I(C)(2), *infra*.

Finally, summary adjudication also should be granted as to Mattel's two RICO counterclaims.  Mattel cannot prove the requisite injury to business or property.  Mattel's claimed injuries are either speculative and non-existent (*e.g.*, future inability to enforce a judgment, lost opportunity to develop Bratz itself), legally unavailable (*e.g.*, various forms of disgorgement by the MGA Parties or others, harm from non-criminal copyright infringement), and/or the product of intervening causal factors independent of the alleged predicate acts (*e.g.*, numerous factors affecting lost market share and profits).  Part II, *infra*.

Mattel's Fraudulent Transfer Claims (Thirteenth, Fourteenth, and Fifteenth Counterclaims) are equally flawed.  Since the only commonality of these state law claims between non-diverse parties is a RICO fraud predicate that is inadequately pled and as a matter of law shows no racketeering injury, these claims should be dismissed pursuant to 28 U.S.C. §1367.  The summary "information and belief" allegations of the Thirteenth Counterclaim fail to plead facts showing any fraudulent transfer, and the Fifteenth Counterclaim violates Rule 23.1.  Part III, *infra*.

1    Finally, the Sixteenth Counterclaim for Breach of Constructive Trust fails to

2    allege facts stating any claim for relief, because there is no such legal theory.  Part

3    IV, *infra*.

4                              **STATEMENT OF FACTS**

5         **A.    <u>Procedural Background.</u>**

6         ***A Brief History of Mattel's Counterclaims.***  On November 20, 2006, Mattel

7    filed a Motion for Leave to File Amended Complaint, seeking leave to amend its

8    Complaint in *Mattel v. Bryant*.  Dkt. #89.  On January 11, 2007, the Court allowed

9    the amendment, but required Mattel to file it as a counterclaim in Case No. 2:05-cv-

10   2727 ("05-2727 action").  Dkt. #142.  Mattel then filed its Amended Answer and

11   Counterclaims ("AAC") on January 12, 2007.  Dkt. #143.[3]

12        The initial set of counterclaims filed in January 2007 in the 05-2727 action

13   included thirteen claims.  *Id.*  The Second Amended Answer and Counterclaims

14   ("SAAC") was filed on July 12, 2007, exactly six months later.  *Id.*  Dkt. #635, 636,

15   and unnumbered entry after Dkt. # 640.  In the SAAC, Mattel pled an additional

16   RICO enterprise, and a corresponding new RICO conspiracy.  *Id.* ¶¶ 89, 100.  On

17   April 8, 2009, Mattel filed its Motion for Leave to File Third Amended Answer and

18   Counterclaims ("TAAC").  Dkt. # 5143.  In the TAAC, Mattel augmented the scope

19   of its RICO claims further to include the Omni transaction and added its first

20   Avoidance of Fraudulent Transfer Counterclaim.  Dkt. # 5597, 5598, and 5607.

---

21   [3] Fact cite conventions used in this MPA are as follows: cites to the docket in the
22   consolidated actions are abbreviated as "Dkt. #___"; cites to facts and supporting
     evidence set forth in the MGA Parties and IGWT 826 Separate Statement of
23   Uncontroverted Facts and Conclusions of Law ("Sep. St.") are abbreviated as "UF
     #___"; deposition and trial testimony excerpts are attached as exhibits to the
24   Declaration of L. Kieran Kieckhefer in Support of MGA Parties and IGWT 826
     Motions for Summary Adjudication, abbreviated as "LKK Decl. Ex. ___" with the
25   witness names following the exhibit letter in parentheses; written discovery
     responses and documents not previously marked as exhibits are attached as exhibits
26   to the LKK Declaration; previously marked deposition exhibits other than the
     alleged trade secret documents are included in the Appendix of Previously Marked
27   Exhibits, abbreviated as "App. Ex."; and all trade secret materials identified by
     Mattel in its Supplemental Response to Interrogatory No. 20 are included in the
28   Compendium of Alleged Trade Secret Documents, abbreviated as "Comp. TS,"
     including previously marked exhibits that fall within this category.

On August 17, 2009, Mattel sought to file a Fourth Amended Answer and Counterclaims ("FAAC") that (among other material changes) would have added four new counter-defendants (Omni 808, IGWT Group, IGWT 826, and Neil Kadisha, *id.* ¶¶16-19), new purported conspirators (*id.* ¶23), and a new claim for "Breach of Constructive Trust," based on counter-defendants' wrongfully acquiring and then failing to preserve "Mattel's valuable property, including Bratz" (*id.* ¶236).  Dkt. # 6295.  The motion was taken off calendar when Judge Larson left the Court, *see* Dkt. # 6882, and the proposed pleading was never filed.

On April 12, 2010, Mattel filed a different FAAC.  It added a new counterclaimant, its subsidiary Mattel de Mexico, S.A. de C.V. ("Mattel Mexico").  FAAC ¶¶10, 21.  The FAAC also added new counter defendants, Omni 808 Investors, LLC and IGWT 826 Investments, LLC, claiming (inexplicably) that Mattel was "previously ignorant of the nature, extent and scope of involvement and complicity of" Omni 808 and IGWT 826.  ¶¶17, 18.  The FAAC reprised (with some changes) the claims in its TAAC, added a claim for breach of constructive trust, split its fraudulent transfer claim into two (actual and constructive transfers), and tacked on a California statutory claim for improper corporate distributions.  Thus, Mattel's counterclaims are now 17 in number, and brought by two claimants against eight different entities and persons.

***The Phase 1 Trial***.  On July 2, 2008, the Court bifurcated the case for trial, and put the claims concerning ownership and infringement of Carter Bryant's drawings into Phase 1.  Dkt. #608.  The Phase 1 trial was further bifurcated.  *Id.*.  In Phase 1(a), the jury found MGA liable on all the state law claims.  Dkt. #4125 (Phase 1(a) Verdict Form).  Phase 1(b) concerned the extent to which the Bratz dolls infringed the Bryant sketches and the resultant damages.  The jury found MGA liable for copyright infringement, but it concluded that the infringement was not willful.  Dkt. #4279 (Phase 1(b) Verdict Form).

### B.   Summary Of Pertinent FAAC Allegations.

***Summary of Mattel's RICO Claims.***  While Mattel's two RICO claims have always been based on the same two subsections of 18 U.S.C. section 1962, Mattel's theory has evolved substantially.  Mattel's initial Amended Answer and Counterclaims pleaded one enterprise, one conspiracy and five predicate acts against six counter-defendants.  Dkt. #143 ¶¶89-93.  Mattel's SAAC added a second RICO enterprise and second RICO conspiracy, and alleged the same five predicate acts against the same six counter-defendants.  Dkt. #635 ¶¶89-93, 100.  Mattel's TAAC added a third enterprise, a third conspiracy, and four more predicate acts against the same six counter-defendants.  Dkt. #5597 ¶¶134-141.  It also named (but did not sue) as "racketeers" an additional 22 persons and entities.  *Id.* ¶¶145, 147-149.  The TAAC added claims concerning certain financial transactions—all of which occurred in 2008, most notably the acquisition by Omni 808 of a debt MGA owed to Wachovia Bank, which Mattel alleged were related-party transactions structured to conceal the ultimate source of the funds.  *Id.*  ¶¶105-117.  Mattel's first proposed FAAC (never filed) proposed to "clarify" its RICO theory by adding a *fourth* enterprise (Dkt. # 6311, ¶141), a *fourth* conspiracy (*id.* ¶¶155-58, 160), *four* more counter-defendants (*id.* ¶¶16-19, 23, 143-45, 147, 151), and ten more persons or entities allegedly "employed by and associated-in-fact" with racketeering enterprises (*id.* ¶¶155-158).

Mattel's recently filed FAAC is thus its fifth attempt to state a RICO claim.  It completes a remarkable circle of pleading, because Mattel returns to alleging one enterprise and one conspiracy; it deletes three predicate acts; and it deletes many previously named (but uncharged) "racketeers." [4]  In essence, Mattel now alleges that MGA, MGA (HK), MGA Mexico, Larian, Bryant and Machado comprised a

---

[4] Mattel inexplicably alleges in the FAAC that it incorporates all of Mattel's prior pleadings by reference.  FAAC at 27.  An amended pleading *supersedes* the prior pleadings, rendering them legally inoperative.  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997).  MGA therefore moves to strike the allegation of incorporation by reference.  *See* FRCP 12(f).

RICO enterprise, and each conducted the affairs of that enterprise through a pattern of racketeering that caused injury to Mattel's business or property. Those same persons, together with Omni 808 and IGWT 826, are also charged with conspiring to violate RICO. The alleged racketeering activity began more than ten years ago, in 1999 and continues "into the future." FAAC ¶123. That activity consists of a wide-ranging scheme to unlawfully compete with Mattel by stealing its trade secrets and other confidential information and property, infringing on its rights, depriving Mattel of the "honest services" of its employees (§1346), secreting the ill-gotten gains from the foregoing misconduct, and concealing and obstructing Mattel's and the Court's efforts to remedy that misconduct. FAAC ¶¶1, 123. Mattel claims the foregoing wrongs constituted RICO predicate acts of mail fraud (§1341), wire fraud (§1343), spoliation and concealment of evidence (§1512), obstruction of justice (§1503), violation of the Travel Act through commercial bribery (§1952; Cal. Penal Code §641.3), and criminal copyright infringement (§2319(a)). FAAC ¶124(a)-(f).

The honest services fraud that permeates Mattel's racketeering scheme, and in particular the alleged mail and wire fraud, is a new theory. The gist of it is that Mattel's employees (beginning with Bryant, and continuing through Machado, Trueba, Vargas, Brawer, Brisbois, Castilla, Cabrera, Morales, Salazar, Contreras, Cooney and many unnamed others) were induced to breach their duties to Mattel, defect to MGA (or MGA Mexico), and take with them valuable trade secrets and other confidential information. *Id.* ¶¶23-93. This loss of honest services occurred in Mexico (Machado, Trueba, Vargas), in Canada (Brisbois), and in the United States (Bryant and the remaining former Mattel employees, including newly mentioned Nick Contreras and Daniel Cooney). *Id.*

The RICO conspiracy claim against newly added Omni 808 and IGWT 826 arises out of relatively recent events. Mattel alleges that in an effort to maintain control over MGA's "ill-gotten gains" and Mattel's intellectual property, to

frustrate the jury's verdicts and the Court's orders, and to hinder and defraud creditors, Larian arranged to have a Wachovia credit facility and agreement purchased in 2008 ("the Wachovia debt").  FAAC ¶¶99, 107, 113.  Mattel claims the purchase was not an arm's length transaction.  *Id.* ¶¶100-01.  Omni 808 purchased the Wachovia debt using money from others—the source of funds for which are unknown.  *Id.* ¶¶103, 108.  Initially, Mr. Larian and Omni 808 denied Mr. Larian's involvement and used shell corporations, such as Vision Capital and Lexington Financial and IGWT 826, to hide Mr. Larian's involvement.  *Id.* ¶¶104-05, 108-09.  The FAAC also alleges there was a side letter that gave Omni 808 MGA's intellectual property rights, which, according to Mattel, was an attempt to encumber the Bratz intellectual property rights and prevent Mattel from obtaining them.  *Id.* ¶107.

   *Summary of Mattel's Creditor Claims*.  Mattel's Thirteenth and Fourteenth Counterclaims are state law claims attacking the Omni transaction and numerous shareholder distributions over a five-year period, under California's Uniform Fraudulent Transfer Act, its Fifteenth Counterclaim is a derivative claim purportedly brought against Larian on behalf of all creditors of MGA.  FAAC ¶¶205-30.  The Sixteenth Counterclaim asserts "breach of constructive trust" for alleged diminution in value of Bratz.  *Id.* ¶¶231-37.

   **C.**   **Mattel's Claims Of Racketeering Injury.**

   Both of Mattel's RICO claims end in conclusory assertions that Mattel was injured in its business or property by the alleged racketeering activity, and tack on a demand for triple damages under section 1964(c).  *Id.* ¶¶126-27, 132.  In its interrogatory response regarding RICO injury, Mattel claims twenty-one categories of harm.  LKK Decl. Ex. 75 (Supp. Resp. MGA HK Rog. 1); *see* UF #1.  Once the redundant and patently non-cognizable alleged injuries are eliminated, ███████

███████████████████████████████████████████████████████████████████████

████████████   *See* UF ##1-16.   ████████████

1  a █████████████████████████████████████

2  █████████████████████████████████████████

3  ██████████████████████████████████████

4  █████████████████████████████████████████

5  █████████████████████████LKK Decl. Ex. 9 (Eckert Depo.) at

6  1007:19-09:20.[5]

7  █████████████████████████████████████

8  ████████████████████████████████████

9  ████████████████████████████████████

10  ███████████████████████████████████

11  ████████████████████████████████████

12  ██████████████████████████████████

13  ██████████████████████████████████

14  ████████████████████████████████████

15  ████████████████████████████████████

16  █████████████████████████████████████

17  ██████████████████████████████████

18  ████████████████████████████████████

19  █████████████████████████████████████

20  ████████████████████████

21  ████████████████████████████████

22  ███████████████████████

23  ████  ██████

24  █ ████████████████████████████████████

25  ███████████████████████████████████████

26  ███████████████████████████████████████

27  █████████████████

28  █ ██████████████████████████████████



MOTIONS TO DISMISS AND FOR SUMMARY
ADJUDICATION OF RICO AND CREDITOR CLAIMS





MOTIONS TO DISMISS AND FOR SUMMARY
ADJUDICATION OF RICO AND CREDITOR CLAIMS

**ARGUMENT**

**I.    THE RICO COUNTERCLAIMS SHOULD BE DISMISSED PURSUANT TO RULES 9(B) AND 12(B)(6).**

18 U.S.C. section 1964(c) permits a plaintiff injured in its "business or property" to recover for injuries sustained "by reason of" (*i.e.* proximately caused by) violations of section 1962.  Mattel pleads two RICO violations:  Section 1962(c) (barring a person "employed by or associated with" and "enterprise" from conducting or participating in the conduct of the enterprise's affairs through a "pattern of racketeering" (*i.e.* two or more related predicate acts); and section 1962(d) (barring a person from conspiring to violate "subsections (a), (b), or (c) of this section").  Neither RICO counterclaim states a valid claim for relief.

1    Notwithstanding Rule 8, "a plaintiff's obligation to provide the 'grounds' of

2    his 'entitle[ment] to relief' requires more than labels and conclusions, and a

3    formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

4    *Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  Plaintiff must plead "allegations

5    plausibly suggesting (not merely consistent with)," an entitlement to relief.  *Id.* at

6    557. "While legal conclusions can provide the framework of a complaint, they must

7    be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950

8    (2009).  "[P]leadings that . . . are no more than conclusions, are not entitled to the

9    assumption of truth."  *Id.* ; *see also Sprewell v. Golden State Warriors*, 266 F.3d

10   979, 988 (9th Cir. 2001).

11   Additionally, to survive a motion to dismiss under Rule 12(b)(6), a fraud

12   claim must satisfy FRCP 9(b), and allege a fraud with particularity.  *See, e.g., Vess*

13   *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  In addition to

14   alleging "'the who, what, when, where, and how' of the misconduct charged, . . .

15   the plaintiff must set forth what is false or misleading about a statement, and why it

16   is false." *Id.* at 1106.  Rule 9(b) applies "even if the word 'fraud' is not used,"

17   when "the plaintiff [] allege[s] a unified course of fraudulent conduct and rel[ies]

18   entirely on that course of conduct as the basis of a claim.  *Id.* at 1103-04, 1105.  *See*

19   *also*, *e.g.*, *In re Ditech Networks, Inc. Deriv. Litig.*, 2008 WL 820705 *6 (N.D.Cal.

20   Mar. 26, 2008) (breach of fiduciary duty claim).  In a case of  multi-defendant

21   fraud, it is not enough to "lump multiple defendants together."  *Swartz v. KPMG*

22   *LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  A plaintiff must at least identify "the

23   role of [each] defendant[] in the alleged fraudulent scheme."  *Id.*

24   ### A.    Mattel Fails To Plead A Proper RICO Enterprise.

25   Mattel alleges that MGA, its two wholly-owned subsidiaries, and three key

26   employees constituted a RICO "association-in-fact" enterprise that each of them

27   operated through a pattern of racketeering.  FAAC ¶123.[8]  That is not sufficient.

28   ───────────────
[8] Mattel alleges that Bryant and Machado were employed by MGA (¶¶12, 16); that

- 14 -

1      A plaintiff "must allege . . . the existence of two *distinct* entities: (1) a

2  'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a

3  different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161

4  (2001) (emphasis added).  Mattel's association-in-fact enterprise comprised of

5  MGA, its subsidiaries and employees fails this standard.  The alleged RICO

6  enterprise "consists merely of a corporate defendant associated with its own

7  employees or agents carrying on the regular affairs of the [corporate] defendant."

8  *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir.

9  1994); *see also Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438 (5th Cir.

10  1987) (allegations fail when alleged violator is corporation and enterprise is

11  corporation, its holding company, and three corporate employees); *Greenstein v.*

12  *Peters*, 2009 WL 722067 *2 (C.D. Cal. Mar. 16, 2009) (same when enterprise

13  consisted of corporation and its employees); *Physicians Mut. Ins. Co. v. Greystone*

14  *Svg. Corp., Inc*., 2009 WL 855648 *7 (S.D.N.Y. Mar. 25, 2009) (same regarding

15  closely related corporations and their individual employees/conspirators); *Deane v.*

16  *Weyerhaeuser Mortg. Co*., 967 F.Supp. 30, 34 (D. Mass. 1997) (same regarding

17  subsidiaries and parent corporation); *Katzman v. Victoria's Secret Catalogue*, 167

18  F.R.D. 649, 658 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (same

19  regarding enterprise comprised of parent, subsidiaries, and employees).

20      **B.    Mattel Fails To Plead A Valid Conspiracy Under §1962(d).**

21      In its Second Counterclaim, Mattel asserts that the MGA Parties, Bryant,

22  Machado, and two new counter-defendants – IGWT 826 and Omni 808 – violated

23  section 1962(d).  Mattel's allegations are patently insufficient to plead a claim

24  against any of the MGA Parties or IGWT 826 (or Omni 808, as addressed in its

25  Motion).

26

27  Larian is the President/CEO of MGA and the principal, owner and/or alter ego of
the three MGA entities (¶¶14,19); and that MGA Mexico is MGA's "Mexican

28  subsidiary" (¶36).  Mattel also claims MGA HK is a "wholly owned subsidiary."
Suppl. Response to MGA (HK) Interrogatory No. 3, p. 116.

1    First, Mattel's RICO conspiracy alleges a claim that does not exist.  Mattel

2    alleges a convoluted conspiracy to "further[], promot[e] and facilitate[e] "a

3    violation of section 1962(c)—in other words, a conspiracy to *aid and abet*.  FAAC

4    ¶129.  No such theory exists.  *Reves v. Ernst & Young*, 507 U.S. 170, 178-79

5    (1993); *Pa. Ass'n of Edwards Heirs v. Rightenour*,  235 F.3d 839, 841 (3rd Cir.

6    2000) (dismissing claim of aiding and abetting predicate acts); *see also In re*

7    *Countrywide Financial Corp. Mortg. Mktg. and Sales Practices Litig.*, 601 F. Supp.

8    2d 1201, 1219 (S.D.Cal. 2009) (rejecting aiding and abetting liability for §1962(c)).

9    Second, the FAAC fails to properly plead a conspiracy to violate section

10   1962(c).  It offers no factual allegations showing the conspiracy.  *See Twombly*, 550

11   U.S. at 566, 577 (dismissing antitrust conspiracy claim because "nothing contained

12   in the complaint invests either the action or inaction [of the defendants] with a

13   plausible suggestion of conspiracy" and noting that "terms like 'conspiracy,' or

14   even 'agreement,' are border-line: . . .  a court is not required to accept such terms

15   as a sufficient basis for a complaint").  It fails to allege facts showing that the

16   alleged conspirators "'knowingly agree[] to facilitate a scheme which includes the

17   operation or management of a RICO enterprise.'"  *U.S. v. Fernandez*, 388 F.3d

18   1199, 1230 (9th Cir. 2004).  It fails to allege facts tending to show that the alleged

19   conspirators were "'aware of the essential nature and scope of the enterprise and

20   intended to participate in it.'"  *Id.* (citations omitted).  Indeed, Mattel never even

21   alleges which counter-defendants agreed with whom to commit what substantive

22   RICO violation and to commit what two predicate acts.  *But cf. Salinas v. U.S*., 522

23   U.S. 52, 63, 66 (1997) (§1962(d) violated where sheriff "committed at least two

24   acts of racketeering activity when he accepted numerous bribes and [his deputy]

25   knew about and agreed to facilitate the scheme.").

26   Third, the above assumes a level of clarity that simply does not exist.  Mattel

27   muddies the waters by alleging – at this late date – that various additional *unnamed*

28   co-conspirators committed "numerous overt acts, including but not limited to those

- 16 -

set forth" in various paragraphs of the FAAC.  *See* FAAC ¶131.  Also, instead of specifying which counter-defendant engaged in which particular overt acts, Mattel lumps all *eight* counter-defendants together and refers back to overt acts alleged in *ninety paragraphs* of the FAAC.  *Id*.  This violates Rule 9(b), if nothing else.  *See Swartz*, 476 F.3d at 764-65.  But it also renders the conspiracy claim factually incomprehensible.

IGWT 826's role is especially inexplicable.  Mattel not only fails to identify any overt acts or agreements by IGWT 826 (which was not formed until 8/27/08, *see* FAAC ¶18), but completely *omits* IGWT 826 when it lists the alleged racketeering activity.  S*ee Id*. ¶124 (a)-(f) (charging all counter-defendants except IGWT 826 with the commission of various predicate acts).

Finally, "[p]laintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Because Mattel's section 1962(c) claim fails for lack of a proper enterprise and the other reasons set forth herein, so goes its section 1962(d) claim.

### C.    The Predicate Acts Are Defective.

In addition to the fundamental failure to plead a valid RICO enterprise, Mattel's section 1962(c) claim also fails to allege valid theories of mail fraud, wire fraud, or Travel Act/commercial bribery violations and those predicate acts either should be dismissed or stricken.[9]

---

[9] Courts have relied upon both Rules 12(b)(6) and 12(f) in dispensing with fewer than all predicate acts in pleading motions.  *Overnite Transp. Co. v. Int'l Bhd. of Teamsters*, 168 F. Supp. 2d 826, 844 (W.D. Tenn. 2001); *Burke v. Dowling*, 944 F.Supp. 1036, 1066 (E.D.N.Y. 1995); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 730 F.Supp. 1525, 1532 (D. Or. 1990); *C & W Const. Co. v. Bhd. of Carpenters and Joiners of Am.*, 687 F.Supp. 1453, 1468 (D. Hawaii 1988).  The MGA Parties and IGWT 826 move to dismiss (Rule 12(b)(6) and/or strike (12(f)) these predicate acts, as well as incorporating the challenge to their legal sufficiency within the motion for summary adjudication made pursuant to Rule 56.

### 1.   **Mattel Fails To Plead A Valid Mail Or Wire Fraud Scheme.**

Mail fraud (§1341) has two elements:  "(1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)."  *Carter v. U. S.,* 530 U.S. 255, 261 (2000).  "[F]or purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim."  *Cleveland v. U.S.*, 531 U.S. 12, 15 (2000).  The elements of wire fraud (§1343) are parallel to those of mail fraud, and it is "well settled" that cases construing either statue are applicable to the other. *U.S. v. Green*, 592 F.3d 1057, 1063, n.3 (9th Cir. 2010).

A plaintiff cannot plead a mail or wire fraud simply by linking alleged false statements to wrongdoing; an actual *fraudulent scheme* must be alleged.  *See, e.g., Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 406 (9th Cir. 1991).  Even if the "conduct may be unacceptable," increasing market share or stealing customers is not enough to create a wire or mail fraud *scheme*.  *Id.*; *see also Cal. Pharm. Mgt., LLC v. Redwood Fire & Cas. Ins. Co.*, SACV 09-141 DOC(ANx), *slip op* at 12 (7/29/09) ("Plaintiffs have essentially pled a scheme to *harm* rather than a scheme to *defraud*"; much of defendants' conduct may be "wrongful" but court has "hard time treating it as deceptive" (emphasis original)).

Mattel's FAAC alleges a sprawling decade-long mail and wire fraud scheme by the MGA parties to "unlawfully compete with Mattel."  FAAC ¶¶1, 2-6, 123, 124(a), 124(b).  Mattel adds a new twist to this fifth version of its fraud theory: deprivation of its employees' honest services.  *Id.* ¶123, ¶124(a), (b).  Despite that addition, Mattel's fraud theory remains as defective as before, because:  1) deprivation of honest services is not a predicate act; 2) Mattel cannot re-package trade secret thefts as mail or wire fraud since trade secret theft is not a RICO predicate act; 3) the obstruction of justice allegations do not show a fraudulent scheme aimed at Mattel; and 4) the allegations of hiding and transferring of assets

do not show a fraudulent scheme aimed at Mattel; 5) in all events, Mattel fails to plead facts showing a *scheme to defraud*.

### a. Deprivation Of Honest Services Cannot Be A RICO Predicate Act.

Mattel's new theory that the MGA Parties defrauded it of its employees' "honest services" does not pass muster. *See* FAAC ¶¶123, 124(a), (b). No known case in this circuit has applied honest services fraud in a civil RICO case. This stands to reason. Civil RICO requires *tangible* harm to business or property. Plaintiff must have "proof of concrete financial loss, not 'mere injury to a valuable *intangible property interest*.'" *Diaz v. Gates*, 380 F.3d 480, 483, 484 (9th Cir. 2004) (en banc) (emphasis added). By definition, indeed, by its express terms, section 1346 only protects "*an intangible right*." 18 U.S.C. §1346. Some courts have held it cannot be considered a predicate act at all. *Marfut v. City of N. Port Fla.*, 2009 WL 790111 *10 n.5 (M.D. Fla. Mar. 25, 2009); *Adams v. County of Erie*, 2009 WL 3087214 *6 (W.D. Pa. Sept. 23, 2009).[10]

Even were it to apply through section 1341, honest services fraud has *not* been applied in this circuit to private actors (such as the MGA Parties) who were *not* fiduciaries of the supposed victim. *See U.S. v. Williams*, 441 F.3d 716, 724 (9th Cir. 2006). Even then, "[n]either breach of a fiduciary duty, nor the receipt of secret profits, then, would suffice, standing alone, to show a §1341 violation; there must be a recognizable scheme formed with intent to defraud." *U.S. v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980).

In any event, Mattel cannot plead the required deprivation. Workers in this country are free to change jobs. *See, e.g.*, *Buxbom v. Smith*, 23 Cal. 2d 535, 547 (1944) (under California law, "it is not ordinarily a tort to hire the employees of

---

[10] Additionally, the statute is unconstitutionally vague and should not properly be used as a basis for a RICO claim, or any claim at all. *See Green*, 592 F.3d at 1065 n. 4 (citing *Skilling v. United States*, 130 S. Ct. 393 (2009); *Weyhrauch v. U.S.*, 129 S. Ct. 2863 (2009); *Black v. U.S.*, 129 S. Ct. 2379 (2009)).

MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION OF RICO AND CREDITOR CLAIMS

another for use in the hirer's business."); *Metro Traffic Control Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 860 (1994) ("absent a showing of unlawful purpose or means, [a competitor] is privileged and not liable for inducing … employees to leave and move to" the competitor).  Abandoning one's job for a better one is different than corruptly abandoning one's *duties* while *on* the job. Section 1346 has never been applied to the hiring away of a competitor's employee.[11]

### b.   Mattel Cannot Use Mail And Wire Fraud To Make a Predicate Act of Trade Secret Theft.

Trade secret misappropriation is not listed in section 1961 as a predicate act. In 1996, Congress added section 1832 to Title 18 and criminalized the theft of trade secrets, including "by fraud, artifice, or deception."  But Congress did not add section 1832 to the list of predicate acts in section 1961.  Nor has it included state or common law trade secret theft claims as predicate acts.  Mattel cannot re-label its trade secret theft theory as a "mail fraud" or "wire fraud" to concoct a new RICO predicate act, when Congress already has *declined* to do so.

Consistent with the Supreme Court's desire to avoid a "sweeping expansion of federal [ ] jurisdiction" via the mail fraud statute, *Cleveland*, 531 U.S. at 24-25, the Ninth Circuit has rejected efforts to recast non-predicate acts as mail/wire frauds that might support RICO theories.  Before criminal copyright infringement

_____

[11] Even the one incident Mattel pleads with a modicum of specificity fails to allege honest services fraud.  Mattel claims that for at least five years, three pattern and sample makers worked on Bratz for MGA while employed by Mattel.  Mattel alleges MGA and Larian learned of their work, allowed it to continue, and knew the use of Mattel employees was "wrongful."  FAAC ¶¶86-90.  Try as it might, Mattel cannot make a fraud out of moonlighting.  There are no claims that the three individuals failed to do their jobs at Mattel, or abused their positions (by, *e.g.*, choosing vendors or suppliers based on kickbacks or other personal benefit), or took Mattel property, or leaked its confidential information.  As alleged, the employees merely used their skills for MGA *outside* their Mattel workday.  ¶89. Even if the employees were deemed to have breached a duty of exclusive service to Mattel by moonlighting, that would not amount to a fraud.  *See Bohonus*, 628 F.2d at 1172.

was expressly added as a predicate act, in *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996), the Court affirmed dismissal for failure to state a RICO claim because "appellants' RICO counts do no more than allege copyright infringement under the label of mail and wire fraud."  *See also Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 618 (9th Cir. 2004) (same conclusion re state law wage claims); *Chagby v. Target Corp.*, 2008 U.S. Dist. Lexis 107738 *12, *14 (C.D. Cal. Oct. 28, 2008) (plaintiff not permitted to "shoehorn a BCA violation into a RICO violation"); *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 631 (S.D.N.Y. 2006) (rejecting attempt to characterize trademark infringement as mail and wire fraud); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 491 (S.D.N.Y. 2000) (rejecting attempt to characterize patent infringement as mail and wire fraud); *U.S. v. Gallant*, 570 F.Supp. 303, 309 (S.D.N.Y. 1983) (criticizing attempt "to bootstrap a violation of the copyright laws into a violation of the mail fraud statute").

Mattel's trade secret misappropriation allegations cannot legitimately be considered part of any predicate act.

### c.  <u>Obstruction Of Justice Is Not Mail/Wire Fraud.</u>

The third aspect of the fraudulent scheme alleged by Mattel concerns concealment of wrongdoing and obstruction of justice to prevent Mattel from righting those wrongs.  FAAC ¶¶1, 6, 124(a), (b).  (This same activity is the subject of separate predicate acts of obstruction of justice and evidence tampering.  *Id.* ¶¶124(c), (d).)  Even assuming the truth of Mattel's claims of false statements and evidence tampering, the MGA Parties' actions were aimed at skewing the course of litigation and concealing prior misconduct – not obtaining Mattel's money or property.[12]  Thus, Mattel fails to allege any cognizable mail or wire fraud scheme.

---

[12] This conclusion also applies to allegedly false filings with the copyright and patent offices.  FAAC ¶96.  Mattel does not allege the filings were directed to or relied upon by it.  *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007) (alleged fraud on Patent Office did not give rise to RICO claim).  And

- 21 -

### d.     <u>Concealing Assets Is Not Mail/Wire Fraud.</u>

The third aspect of the fraudulent scheme alleged by Mattel concerns the MGA Parties' alleged transfer and hiding of assets to prevent Mattel from eventually enforcing a judgment against them, pertaining to the Omni transaction and a series of shareholder distributions between 2004 and 2008.  FAAC ¶¶94, 97-121, 124(a), (b).  The shareholder distributions are also the subject of Mattel's Thirteenth and Fourteenth counterclaims for violation of California's Uniform Fraudulent Transfer Act.  The UFTA, however, is not a RICO predicate act.  Even taken as true, the alleged scheme plainly sought not to obtain Mattel's money or property but to keep the *MGA Parties*' money from falling into Mattel's hands.  That is not a mail or wire fraud against Mattel.  Concealment after the fact is not a cognizable harm.  *See*, *e.g.*, *Oki Semiconductor Co. v. Wells Fargo Bank*, *Nat'l Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) (laundering proceeds *after* theft and sale of semi-conductors, was *not* the "direct and proximate cause of Oki's loss"); *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 388 (D.N.J. 2006) (dismissing RICO claim that "'[m]oney laundering also directly harmed plaintiffs inasmuch as it shielded the enterprise from detection and thereby continued its existence'").

In all events, as a matter of law Mattel's fear of losing priority or otherwise being hindered in its enforcement of a possible future judgment is not a RICO injury.  *See DeMauro v. DeMauro*, 115 F.3d 94, 95-97 (1st Cir. 1997); *see also Flores v. Emerich & Fike, P.C.,* 2008 WL 2489900 *17 (E.D.Cal. June 18, 2008).

### e.     <u>In All Events, Mattel Fails To Plead A Scheme To Defraud.</u>

Despite the requirement of Rule 9(b) and years of extensive discovery, Mattel's FAAC fails to plead a scheme to defraud with particularity.  Indeed, in the very first paragraph of the FAAC, Mattel alleges a "scheme of stealing and using

---

such filings were not a fraud on the government either.  *Cleveland,* 531 U.S. at 23-24 (patent "implicates the Government's role as sovereign, not as property holder").

Mattel property and trade secrets," and a "scheme to unfairly and unlawfully compete with Mattel" through various wrongs – but *not* a mail or wire fraud scheme.  FAAC ¶1.  Although Mattel later tries to plead mail and wire fraud, it fails to identify any specific false statement or other deceptive conduct by the MGA Parties that targeted Mattel's trade secrets or other money or property.  Mattel fails to identify any contact between the MGA Parties and defecting Mattel employees (meetings, phone calls, letters, or emails) – *before or after* they left Mattel – in which a fraudulent intent or inducement by any of the MGA Parties was revealed.[13]

This fatal defect is not cured by the mass of exhibits attached to the FAAC. They show ample use of the mail and the wires, but they do not show a *fraudulent scheme*, including any fraudulent inducement of Mattel employees.  Significantly, Mattel does not cite any of those documents to properly plead a specific false statement by a particular counter-defendant aimed at obtaining Mattel's money or property, or depriving it of its employees' honest services.[14]

Mattel claims Larian and MGA "aided and abetted" Bryant's sale of Bratz work to MGA, and interfered with his contractual and fiduciary duties to Mattel. FAAC ¶2.  But when it comes time to plead the particulars, there are no facts showing the MGA Parties induced him to *steal Mattel property*, including his Bratz drawings.  Mattel properly alleges only that MGA hired Bryant away from Mattel and contracted for his services.  *See id.* ¶¶23-35.  That is not a scheme to defraud.

---

[13] The FAAC's fraud allegations also fail to distinguish between the claims of Mattel and Mattel de Mexico.  Such pleading fails to provide the requisite particularity of either company's fraud claim.

[14] The lack of particularity as to counter-defendants MGA HK and MGA Mexico warrants special mention.  Both are charged with wire fraud, and MGA HK is charged with mail fraud.  But the FAAC mentions them only rarely and in conclusory fashion.  *See* FAAC ¶¶13, 15, 19, 123, 124(a), (b).  They are never linked to deceptive conduct and Mattel fails to identify any agent of either who engaged in fraudulent actions.  The claims against MGA HK and MGA Mexico fail to satisfy Rules 9(b) or 12(b)(6).

1    Similarly, Mattel claims MGA "hired away three key Mattel employees in

2    Mexico" and "induced them to steal" Mattel trade secrets. *Id.* ¶3.  But when it later

3    addresses their departure, Mattel alleges no particular statements or actions by the

4    MGA Parties that induced any of those employees to steal Mattel property. *Id.*

5    ¶¶36-56.  Instead, Mattel belatedly reiterates on "information and belief" only the

6    bare conclusion that MGA did so. *Id.* ¶¶39, 44, 45, 51.  The same is true of Janine

7    Brisbois, who defected from Mattel in Canada. *Id.* ¶4.  Mattel accuses MGA of the

8    "same pattern" of misconduct, but when her defection is described (*id.* ¶¶57-63),

9    there is no assertion, let alone facts, that the MGA Parties induced her to steal

10    Mattel property. *Id.* ¶61.  That is not a scheme to defraud.

11    Mattel also broadly asserts that "MGA bribed employees in addition to

12    Bryant" and induced them to violate their contractual obligations and duties of

13    loyalty by stealing trade secrets.  FAAC ¶5.  But it alleges no factual support for

14    that conclusion either.  *See id.* ¶¶64-67 (MGA contracted with Ron Brawer for his

15    services and, "on information and belief," he took Mattel information; but no

16    conclusion, let alone facts, alleged that the MGA Parties induced him to do so); *id.*

17    ¶¶68-78 (same as to Jorge Castilla); *id.* ¶¶79-81 (same as to Nick Contreras); *id.*

18    ¶¶82-84 (same as to Dan Cooney).  Mattel also insists – again on information and

19    belief alone – that many other employees were "recruited" and hired by MGA,

20    "including by Larian and Brawer," based on confidential Mattel information they

21    could and in fact did "access." *Id.* ¶85.  This charge is made without identifying

22    any Mattel individual, any Mattel information, or any specific acts of inducement

23    by anyone at MGA.  Even assuming trade secret misappropriation could be recast

24    as a mail and wire fraud predicate act (which it cannot), Rule 9(b) requires specific

25    facts that are found nowhere in the pleading.

26

27

28

## 2. __Mattel Fails To Plead A Travel Act Offense Based On Bribery.__

Mattel next alleges that MGA and Larian violated 18 U.S.C. section 1952 (the Travel Act) by traveling in interstate and foreign commerce, or using the mail or other facility of interstate or foreign commerce, with the intent to commit commercial bribery in violation of California Penal Code section 641.3.  FAAC ¶¶1-5, 124(e).  This predicate act is fatally flawed.

First, Mattel is again trying to stretch a federal crime well beyond its intended reach, to reap triple damages under RICO.  "The legislative history of §1952 does demonstrate that [the Travel Act's] main purposes are to attack organized crime and to aid local authorities in combating  it.  Courts would simply not allow it to be used to extend federal prosecutions far from these purposes." *U.S. v. Polizzi*, 500 F.2d 856, 874 (9th Cir. 1974).  The courts may be careful not to unduly expand the statute's reach, but Mattel surely is not.  It wishes to make a federal crime out of the pedestrian (albeit fierce) competition of toy makers for skilled workers, and then pair that crime with its equally expansive view of mail and wire fraud to concoct a federal RICO case.

Second, section 641.3 lacks language making it applicable "extra-territorially," which would be required here.  "California courts have long held that 'a court should not ordinarily construe a statute as regulating occurrences outside the state unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute." *Markey v. Kudelski S.A.*, 2008 WL 65401 *12 (S.D. Cal. Jan. 3, 2008) (rejecting extra-territorial application of §641.3 to wrongful termination in violation of public policy).  Nonetheless, Mattel seeks to apply the statute to supposed briberies of employees who were working for foreign companies outside this country (Machado, Trueba and Vargas in Mexico and Brisbois in Canada).

MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION OF RICO AND CREDITOR CLAIMS

1    Third, Mattel fails to properly plead that MGA or Larian bribed any Mattel

2    employees, *i.e.*, offered them something of value to "use their position" to injure or

3    defraud their employer.  As shown above regarding the honest services fraud theory

4    (Part I(C)(1), *supra*), Mattel alleges nothing more than MGA's competition for

5    skilled workers, and its hiring of a few moonlighting employees.  That does not

6    amount to corruption of Mattel's employees, or bribery.  That was not a violation of

7    the Travel Act.

## II.    ADDITIONALLY, SUMMARY ADJUDICATION SHOULD BE GRANTED WITH RESPECT TO THE RICO COUNTERCLAIMS.

10    Mattel purports to allege six legally distinct predicate acts:  (1) mail fraud;

11    (2) wire fraud; (3) Travel Act; (4) obstruction of justice; (5) evidence tampering;

12    and (6) criminal copyright infringement.  The first three predicate acts are legally

13    defective on the face of the FAAC for the reasons set out in Part I, *supra*; those

14    arguments are also incorporated by reference here with respect to the MGA Parties

15    and IGWT's motion for summary adjudication.  As to the latter three predicate acts,

16    Mattel cannot prove racketeering injury either because those predicate acts did not

17    cause legally cognizable harm, because any harm Mattel suffered did not flow from

18    any those predicate acts, or because the types of harm Mattel asserts it has suffered

19    simply do not suffice under the RICO statute.

20    Because Mattel bears the burden of proof at trial with respect to its RICO

21    counterclaims, MGA is entitled to summary judgment of the racketeering injury

22    requirement either by (1) negating an element of Mattel's case, or (2) by a showing

23    that Mattel lacks sufficient evidence to support its counterclaims at trial.  *See*

24    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Devereaux v. Abbey*, 263

25    F.3d 1070, 1076 (9th Cir. 2001) (en banc).  MGA has no obligation on summary

26    judgment to produce any evidence proving the absence of a genuine issue of

27    material fact; rather, its burden is discharged by "pointing out to the district court

28    that there is an absence of evidence to support the nonmoving party's case."

*Celotex*, 477 U.S. at 325.  Nonetheless, MGA has proffered a wealth of undisputed facts demonstrating that Mattel cannot prove racketeering injury because its asserted harms cannot satisfy the proximate causation requirement of the statute. The Motion for Summary Adjudication succeeds under either prong of *Celotex*.

### A.    Civil RICO's Proximate Cause And Injury Standards Are More Stringent Than Those of Common Law.

18 U.S.C. section 1964(c) provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  The damages sought must "flow from the commission of the predicate acts."  *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 483, 497 (1985).  There is no recovery for harm caused by *non*-predicate acts – even if the harm was a direct result, and was intended by the defendant.  *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 991-92 (2010); *see also Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 284 (2nd Cir. 2006) ("the term 'proximate causation' thus takes on a meaning that is different from its ordinary meaning at common law").

The civil RICO plaintiff must plead and prove "some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Hemi Group*, 130 S. Ct. at 989 (citation omitted).  The "direct-relation" requirement "avoids the difficulties associated with attempting 'to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.'"  *Bridge v. Phoenix Bond & Indem. Co*., 128 S.Ct. 2131, 2142 (2008) (quotation omitted).  The requirement also limits RICO's reach.  *See, e.g., Hemi Group, supra*.[15]

---

[15] A civil RICO conspiracy must cause harm to business or property resulting from "an act that is independently wrongful under RICO," *i.e.* a predicate act or violation of RICO's substantive provisions.  *Beck v. Prupis*, 529 U.S. 494, 505-07, 511 (2000).  Mattel's conspiracy claim also fails for lack of RICO injury.

The *type* of cognizable injury further limits RICO.  "[N]ot all injuries are compensable under RICO"; plaintiff must have "proof of concrete financial loss, not 'mere injury to a valuable intangible property interest.'"  *Diaz*, 380 F.3d at 483, 484; *see also Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (limiting standing to persons "injured in [their] business or property" has "restrictive significance which helps assure RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff" (citations, internal quotation marks omitted); *Imagineering, Inc. v. Kiewit Pacific Co.*,  976 F.2d 1303, 1311 (9th Cir. 1992) (complaint defective because "[i]t is impossible to determine  . . . whether the plaintiffs are claiming loss of opportunity to realize profits or loss of specific identifiable profits"); *Cal. Pharm. Mgt., LLC v. Redwood Fire & Cas. Ins. Co.*, SACV 09-141 DOC(ANx), *slip op* at 13 (7/29/09) (damages that are possible or likely to occur are insufficient under RICO; plaintiff must actually suffer "monetary injury as a result of Defendants' conduct"); *Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 678 (D. Del. 2008) (plaintiff must allege and prove "actual monetary loss, *i.e.*, an out-of-pocket loss"; plaintiff did not allege that "orders for goods or services plaintiff provided were actually cancelled as a result of alleged RICO conduct").

**B.**   **Mattel Cannot Prove Injury To Business Or Property That Directly Resulted From Any Of The Remaining Alleged Predicate Acts.**

**1.**   **Mattel Has Agreed To Forego The Only Theoretically Available Cognizable Harm From Alleged Obstruction Of Justice And Evidence Tampering.**

The alleged obstruction of justice and evidence tampering is MGA and Larian's purported concealment of evidence related to this action—put simply (if possible), a cover-up of its purported Bratz theft and subsequent continued economic exploitation thereof while concealing that theft during the pendency of this action.  But Mattel has stipulated that it will not seek attorneys' fees as

1  damages in this action.  LKK Decl. Ex. 9 (Eckert Depo.) at 1013:14-15:19.

2  Accordingly, even assuming that Mattel had pled or could prove obstruction of

3  justice or evidence tampering as a RICO predicate act,[16] it has foregone the remedy

4  that compensates the only even arguably direct harm to Mattel's business or

5  property.

6          **2.**      **As A Matter Of Law Mattel Has Suffered No Racketeering**

7                    **Injury From Alleged Criminal Copyright Infringement**

                     **Because The Undisputed Facts Show It Cannot Prove That**

8                    **Predicate Act.**

9       To establish its criminal copyright predicate act, Mattel must prove "'three

10  elements: (1) infringement of a copyright (2) done willfully (3) for purposes of

11  commercial advantage or private financial gain.'"  *Bryant v. Mattel, Inc.*, 573 F.

12  Supp. 2d 1254, 1268 (C.D. Cal. 2007) (quoting *U.S. v. Goss*, 803 F.2d 638, 642

13  (11th Cir. 1986)).  Criminal copyright infringement requires the degree of

14  willfulness defined by the Supreme Court in the context of criminal tax evasion and

15  other criminal statutes. *U.S. v. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977) (defining

16  willfulness by reference to *Screws v. U.S.*, 325 U.S. 91 (1945)); *U.S. v. Heilman*,

17  614 F.2d 1133, 1137 (7th Cir. 1980) (defining willfulness by reference to *Screws*

18  and *U.S. v. Murdock*, 290 U.S. 389 (1933)); *U. S. v. Acevedo-Cruz*, 2006 WL

19  448680 *3 (D.P.R. Feb. 23, 2006) (defining willfulness by reference to *Cheek v.*

20  *U.S.*, 498 U.S. 192 (1991)); *U.S. v. Moran*, 757 F. Supp. 1046, 1049 (D. Neb. 1991)

21  (same). Willfulness thus requires a showing of "[a]n evil motive to accomplish that

22  which the statute condemns."  *Screws,* 325 U.S. at 101.  Mattel must prove that the

23  MGA Parties infringed on Mattel's copyright with the "specific intent to deprive

24  [Mattel] of a . . . right."  *Id.* at 103.

25       The undisputed facts show that Mattel cannot establish criminal copyright

26  infringement under this standard because the jury has already rejected civil

27

28  ──────────────
   [16] *But see* Part I(C)(1)(d), *supra* (concealment that prevents discovery of prior wrongdoing, and prior injury, does not cause new harm to business or property).

1   willfulness.  In Phase 1(b), the jury found that no defendant had willfully infringed.

2   Dkt. # 4279.  This finding bars any further consideration of the matter.  As a matter

3   of constitutional law, estoppel principles, and law of the case, the issue of

4   willfulness cannot be presented to another jury.  *In re Rhone-Poulenc Rorer, Inc.*,

5   51 F.3d 1293, 1303 (7th Cir. 1995) (7th Amendment and principles of estoppel bar

6   presentation of same issue to a second jury); *see also Blyden v. Mancusi*, 186 F.3d

7   252, 268-69 (2d Cir. 1999) (same); *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d

8   298, 305 (5th Cir. 1993) (same); *Zhang v. Am.n Gem Seafoods, Inc.*, 339 F.3d 1020,

9   1035 & n. 9 (9th Cir. 2003) (estoppel precludes an inconsistent finding in second

10  phase of a bifurcated case); *Houseman v. U.S. Aviation Underwriters*, 171 F.3d

11  1117, 1127 (7th Cir. 1999) (law of the case precludes second-guessing).

12          Because Mattel cannot prove its copyright infringement predicate act, it

13  cannot prove any legally cognizable racketeering injury flowing from that predicate

14  act.  *See Sedima*, 473 U.S. at 483, 497.

15          **C.      Mattel's Other Claimed Injuries Are Not Cognizable Under RICO**

16          The only forms of harm that Mattel makes even a token effort to support as

17  racketeering injury are essentially four-fold:  (█████████████████████████████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ██████████      None of these is sufficient to demonstrate racketeering injury.  The

23  fourth element was disposed of above.  Part II(B)(1), *supra*.  The remaining three

24  are disposed of below.

25

26  _____
    [17] Mattel's interrogatory responses also describe numerous categories of purported
27  harm based on disgorgement of profits.  *See* UF ## 12-13.  It is axiomatic, however,
    that disgorgement is an unavailable remedy for civil RICO.  *U.S. v. Philip Morris*
28  *USA, Inc.*, 396 F.3d 1190,1200-02 (D.C. Cir. 2005); *Richard v. Hoechst Celanese*
    *Chem. Group*, 355 F.3d 345, 354-55 (5th Cir. 2003).

MOTIONS TO DISMISS AND FOR SUMMARY
ADJUDICATION OF RICO AND CREDITOR CLAIMS

1. **MGA Satisfies Both Prongs Of The *Celotex* Burden As To The Claim Of Lost Opportunity.**

A claim of lost opportunity to exploit a new product is a speculative one under the best of circumstances. *See, e.g.*, *Kids' Universe v. In2Labs*, 116 Cal. Rptr. 2d 158, 167-172 (Cal. App. 2002) (applying California law, existing business' claim of lost profits speculative when damages based on new product); *TAS Distributing Co., Inc. v. Cummins Engine Co.*, 491 F.3d 625, 633 (7th Cir. 2007) (applying Illinois law, same); *Burkhart Grob Luft Und Raumfahrt GMBH & Co. v. E-Systems., Inc.*, 257 F.3d 461, 467 (5th Cir. 2001) (applying Texas law, same); *Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc.*, 180 F.3d 583, 588-89 (4th Cir. 1999) (applying Virginia law, same). Mattel's theory that it lost the opportunity to exploit Bratz is especially speculative, however, and moreover is completely inconsistent with the undisputed facts. Mattel cannot satisfy the stringent RICO proximate harm requirement from this claim. *See Imagineering*, 976 F.2d at 1311 (no recovery for "loss of opportunity to realize profits"); *Proven Methods Seminars, LLC v. Am.n Grants & Affordable Hous. Inst.*, 2008 WL 269080, *5-6 (E.D. Cal. Jan. 29, 2008).

Even assuming the lost opportunity theory were legally available, no reasonable jury could ever find that Mattel would have marketed a product called Bratz. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ For Mattel to claim ten years later that it would have marketed Bratz is ridiculous—especially when considered in the context of the stringent RICO direct-relation requirement. Nor, looking at it from the perspective of the second prong of *Celotex*, can Mattel prove

1    that it would have marketed Bratz.  No witness in a position to have made that

2    decision has testified that s/he would have done so, nor has any witness offered any

3    testimony to support that such a decision would have been made at the time.

4    Indeed, such testimony would be pure speculation— ████████████████████████

5    ███████████████████████████████████████████████████████████████████████

6    ███████████████████████████   We can hardly go back ten years and conduct

7    research to determine what Mattel would have done.

8         Finally, there is the serious problem of loss causation.  Mattel has no

9    evidence at all that Carter Bryant's decision to withhold his Bratz drawings from

10   Mattel and to bring them to MGA had anything to do with any predicate act

11   committed by MGA. ████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████████████████████

13   ███████████████████████████   For all of these reasons, Mattel's theory of lost

14   opportunity simply cannot satisfy the RICO racketeering injury requirement.

15              **2.   MGA Satisfies Both Prongs Of The *Celotex* Burden As To**
              **The Claim Of Lost Profits.**
16

17        Mattel claims lost sales, and consequently lost profits, due to sales of

18   infringing Bratz doll products.  Of course, MGA invested a lot of its own

19   independent work in taking Carter Bryant's two-dimensional drawings and turning

20   them into a marketable three-dimensional product.  That work alone should be

21   considered sufficient to break the causal chain for RICO injury purposes.  But

22   putting aside all of (1) MGA's work to create Bratz, (2) the fact that Mattel cannot

23   demonstrate criminal copyright infringement, and (3) the substantial problems with

24   instructing the Phase 2 jury on the scope of infringement in light of the Phase 1

25   copyright damages verdict, the bottom line is that even if one assumed that Mattel

26   could prove its copyright infringement predicate act, its claimed harm of Barbie lost

27   profits does not suffice to show racketeering injury.

28



The vast number and variety of the intervening causal factors affecting Mattel's performance in the marketplace precludes as a matter of law any finding of racketeering injury in this case based on a claim of lost profits. *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 459 (2006) (finding lack of causation because "Ideal's lost sales could have resulted from factors other than [petitioner National Steel Supply's] alleged acts of fraud."); *see also Ideal Steel Supply Corp. v. Anza*, 2009 WL 1883272 *6 (S.D.N.Y. June 30, 2009) (dismissing complaint on remand because "'a multitude of imaginable factors may have contributed to [plaintiff's] diminished profitability,' such as 'managerial decisions,' 'pricing strategy,' 'local economic trends,' 'consumer demand,' and the 'actions undertaken by [plaintiff's] competitors.'" (quotation omitted)); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1147-49 (9th Cir. 2008); *C.B. & D.M. Entertainment, Inc. v. Galardi*, 2007 WL 4219409 (C.D. Cal. Nov. 28, 2007).

1

2

3

4

5

6

7  the courts have made it abundantly clear that such lost market share cannot satisfy

8  RICO injury requirements as a matter of law.  *Lancaster Comm. Hosp.*, 940 F.2d at

9  406 (finding that market share is not property); *see also Anza,* 547 U.S. at 460 ("A

10  RICO plaintiff cannot circumvent the proximate-cause requirement simply by

11  claiming that the defendant's aim was to increase market share at a competitor's

12  expense"); *Monterey Plaza Hot. Ltd. P'ship v. Local 483 of Hot. Employees*, 215

13  F.3d 923, 926-927 (9th Cir. 2000) (customers and prospective customers are not a

14  property interest).

15  ### 3.   Mattel Cannot Prove Legally Cognizable Harm From The Alleged Concealment Of Assets.

16

17       Finally, Mattel's claims of harm from lost priority or potential inability to

18  enforce a judgment it doesn't have—and may never get—likewise hold no water.

19  Mattel's complaint that the Omni transaction was concealed from it is simply false,

20  as Omni's managing director Kadisha informed Mattel CEO Eckert of the

21  transaction promptly upon its occurrence.  LKK Decl. Ex. 9 (Eckert Depo.) at

22  995:11-1019:19, 1003:17-22; *id.* Ex. 16 (Kadisha Depo.) at 1711:12-13:7.

23  Moreover, it is pure speculation that someday circumstances might occur that

24  would result in a loss of priority of Mattel versus Omni.  Indeed, Mattel's position

25  vis-à-vis MGA is no worse than it was before Omni assumed the Wachovia debt,

26  because all of this discovery, time and money has been spent arguing over a Side

27  Letter that on its face is no more than an "agreement to negotiate"—at best

28  enforceable only to the very limited extent that the parties were required to

1   negotiate in good faith as to its terms.  *See Copeland v. Baskin Robbins*, U.S.A., 96

2   Cal. App. 4th 1251 (Cal. App. 2002); *see also Racine & Laramie, Ltd. v. Dept. of*

3   *Parks & Rec.*, 11 Cal. App. 4th 1026, 1032-33 (1992) (discussing cases).  Mattel's

4   claim of harm from shareholder distributions is likewise as speculative.  Even if one

5   assumes the distributions were fraudulent for purposes of this Motion, the only

6   circumstances in which it could matter would be if Mattel someday gets an

7   enforceable judgment and that judgment cannot be satisfied by MGA's assets—

8   definitely not sufficient for racketeering injury.  *See* Part I(C)(1)(d), *supra*.

9        In short, Mattel's claims of harm and injury are the epitome of what the

10  Supreme Court and lower courts have ruled time and again will *not* suffice to

11  establish a RICO claim.  Summary adjudication and dismissal with prejudice of the

12  First and Second Counterclaims should be granted.

13  **III.   THE THIRTEENTH THROUGH FIFTEENTH CREDITOR-BASED**
    **COUNTERCLAIMS SHOULD ALSO BE DISMISSED PURSUANT**
14  **TO RULES 9(B), 12(B)(6) AND 28 U.S.C. SECTION 1367.**

15       Counterclaims Thirteen and Fourteen are brought under the California

16  Uniform Fraudulent Transfer Act (California Civil Code §3439) and Counterclaim

17  Fifteen is brought derivatively under California Corporations Code sections 501

18  and 506 – all purely state law claims, brought by and on behalf of non-diverse

19  parties. FAAC ¶¶205-230.  MGA, Larian and IGWT 826 move to dismiss the

20  Thirteenth and Fourteenth Counterclaims, and Larian moves to dismiss the

21  Fifteenth Counterclaim, on the several grounds set forth below.

**A.   Mattel's Thirteenth Through Fifteenth Counterclaims Should Be**
22  **Dismissed Pursuant To 28 U.S.C. 1367.**

23

24       Mattel's creditor claims challenge the Omni transaction and numerous

25  shareholder distributions made over a lengthy period of time from March 2004

26  through 2008.  FAAC ¶¶207, 217, 225 & Ex. X.  Mattel's primary objective in

27  bringing these claims as a creditor is apparently because it is seeking to enforce a

28  judgment that has not yet been entered.  *Id.* ¶¶215-216.  There is no ordinary

1   expectation, however, that claims related to enforcement shall be brought as part of

2   the main action.  28 U.S.C. §1367(a); *Carnegie-Mellon Univ. v. Cohill,* 484 U.S.

3   343, 349 (1988).

4   Because Mattel would not otherwise be entitled to enforce under state law

5   against a non-diverse party in the main federal question action, it has cast about for

6   a federal claim in which to attack these transactions—RICO.  But, as set out in

7   detail in Part I(C)(1)(d), *supra*, Mattel clearly does not satisfy RICO requirements

8   for the predicate acts challenging these transactions.  Moreover, since the RICO

9   claims should be dismissed, the Court certainly should also dismiss the UFTA

10  claims.  28 U.S.C. §1367(c); *Slaughter v. Levy,* 39 F.3d 1188 (9th Cir. 1994)

11  (affirming dismissal of pendent state law claims upon dismissal of RICO claims).

12  The UFTA claims involve complex issues of insolvency under state law with

13  respect to dozens of transactions.  The witnesses and testimony necessary to

14  examine those dozens of transactions are not common to the other remaining

15  claims, especially when the relevant RICO predicate act is out of the case.  The

16  UFTA claims also will create significant issues with respect to community

17  property, estate planning, trust administration and a whole host of facts, witnesses

18  and legal questions that presently have no role in this case.  And, all of that is at

19  least arguably completely unnecessary *since Isaac Larian is already a named*

20  *defendant* and the recipient of the allegedly fraudulent transfers.

21  **B.**     **The Thirteenth Counterclaim Must Be Dismissed for Failure to**

22  **Satisfy the Specificity Requirements of Rule 9(b).**

23  In addition, Mattel's Thirteenth Counterclaim should be dismissed for failing

24  to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure

25  9(b).  A claim for fraudulent transfer "sounds in fraud" and thus must meet the Rule

26  9(b) pleading requirements.  *Burnett v. Rowzee,* 2007 WL 2735682 *9 (C.D. Cal.

27  Aug. 28, 2007); *see also Sunnyside Devel. Co. v. Cambridge Display Tech. Ltd.,*

28  2008 U.S. Dist. LEXIS 74850 *11 (N.D. Cal. Sept. 26, 2008).

1    Instead of providing the type of detailed allegations that Rule 9(b) requires,

2  Mattel has simply attached Exhibit X to the FAAC and asserted that hundreds of

3  transactions are fraudulent "*upon information and belief*."  FAAC ¶¶207(a), 217 &

4  Ex. X.  Mattel's bare recitation of "information and belief" does not satisfy Rule

5  9(b).  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also*

6  *Montgomery v. Practice Mgmt. Assoc., Inc.*, 1990 U.S. Dist. LEXIS 7731 *10

7  (N.D. Cal. Apr. 5, 1990).

8    Mattel's view seems to be that the mere acts of making distributions or

9  engaging in estate planning while a lawsuit was pending is somehow fraudulent ███

10 ████████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████████ -

12 ████████  Even Rule 8 requires the allegation of facts that suggest a plausible

13 claim—not just a mere possibility of fraud.  *Twombly*, 550 U.S. at 555, 557; *Iqbal*,

14 129 S.Ct. at 1950.  Mattel has deposed Isaac Larian for eight days.  It is required to

15 allege facts showing that the basis for its information and belief is something more

16 than the mere pendency of a lawsuit and transfers of funds, otherwise it has done

17 nothing more than allege the possible.

18    Mattel also attacks the Omni 808 transaction with the completely misguided

19 allegation that the Side Letter Agreement was a fraudulent transfer of intellectual

20 property rights.  FAAC ¶207(b).  For the reasons set out in Part II(C)(3), *supra*, that

21 Letter was not a transfer at all because it was no more than an "agreement to agree"

22 under California law.

23    **C.    The Fifteenth Counterclaim Is Legally Defective.**

24    Mattel purports to bring the Fifteenth Counterclaim "derivatively and on

25 behalf of all MGA creditors," regarding prohibited distributions under California

26 Corporations Code sections 501 and 506.  FAAC ¶¶ 224-30.  This claim is deficient

27 for three independent reasons.

28

1    First, Rule 23.1 governs "derivative actions" brought in federal court.  Fed.

2    R. Civ. P. 23.1.  Rule 23.1 only permits derivative actions brought on behalf of

3    shareholders or members of corporations or unincorporated associations.  Rule 23.1

4    does not authorize creditor derivative actions.  Accordingly, this claim cannot be

5    maintained in federal court.  *Cf. Shady Grove Orthopedic Assocs., P.A. v. Allstate*

6    *Ins. Co.*, 130 S. Ct. 1431 (2010) (Rule 23 governs class requirements despite

7    contrary provision of New York law).

8        Second, Mattel cannot sue MGA derivatively, because doing so requires it to

9    stand in the shoes of MGA as a nominal defendant and the true plaintiff, and to

10   represent all creditors fairly in doing so.  Mattel has a conflict of interest on both

11   counts.  Mattel cannot possibly claim to assume a fiduciary capacity to MGA at the

12   same time it is suing MGA on numerous direct claims for liability.  Nor would it be

13   fair to entrust a direct competitor with MGA's most sensitive and detailed vendor

14   relationship terms and financial data.  Finally, Mattel cannot act as a fair and

15   adequate representative of MGA's creditors, as it is apparent that there is a conflict

16   of interest between Mattel and Omni.  These circumstances in total plainly

17   represent an irresolvable conflict of interest in this situation.  *Eshelman v.*

18   *Orthoclear Holdings, Inc.,* 2009 WL 506864 *9, *10 (N.D. Cal. Feb. 27, 2009);

19   *Shoregood Water Co., Inc. v. U.S. Bottling Co*., 2009 U.S. Dist. LEXIS 69624 *10-

20   12 (D. Md. Aug. 10, 2009); *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223

21   (E.D.N.Y. 2005); *Priestley v. Comrie*, 2007 U.S. Dist. LEXIS 87386 *16-18

22   (S.D.N.Y. Nov. 27, 2007); *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*,

23   2006 U.S. Dist. LEXIS 72316 *23 (S.D.N.Y. Oct. 4, 2006).

24       Third, even assuming the Fifteenth Counterclaim could surmount the

25   foregoing two hurdles, Mattel also fails to allege facts sufficient to show it has

26   standing to attack each of the hundreds of distributions that are listed on Exhibit X.

27   California Corporations Code section 506 requires Mattel to have been a creditor at

28   the time of the distribution in order to have standing to challenge it—a preexisting

1    creditor.  *See In re Jacks*, 243 B.R. 385, 392 n.13 (C.D. Cal. 1999), *overruled on*

2    *other grounds* 266 B.R. 728 (C.D. Cal. 2001).  Mattel has failed to plead facts

3    explaining how or why (or even that it was) a creditor at the time of each of the

4    challenged distributions.

5    **IV.    THE SIXTEENTH COUNTERCLAIM FOR BREACH OF**
     **CONSTRUCTIVE TRUST FAILS TO STATE A CLAIM FOR**
6    **RELIEF.**

7        The Sixteenth Counterclaim should be dismissed, because there is no action

8    for breach of a constructive trust.  A constructive trust is a remedy.  It is not a

9    "claim[] at all."  *Batt v. City and County of San Francisco*, 155 Cal. App. 4th 65, 81

10   (2007); *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023 (2000);

11   *see also Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387,

12   390 n.1 (S.D.N.Y. 1993) ("Constructive trust is actually a remedy, and as such

13   cannot be breached.").

14                              **CONCLUSION**

15       For all of the foregoing reasons, the First, Second, and Thirteenth through

16   Sixteenth Counterclaims for Relief of the FAAC should be dismissed with

17   prejudice.

18   Dated:   May  *10* , 2010              Respectfully submitted,

19

20                                          ANNETTE L. HURST
                                            Orrick, Herrington & Sutcliffe LLP
21

22                                  By:    *Annette L. Hurst s/*

23                                          ANNETTE L. HURST

24                                          Attorneys for MGA Parties and IGWT

25

26

27

28