1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building, 405 Howard Street
5  San Francisco, CA 94105
   Tel. (415) 773-5700/ Fax: (415) 773-5759
6
   WILLIAM A. MOLINSKI (State Bar No. 145186)
7  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
9  Tel. (213) 629-2020/Fax: (213) 612-2499
10 THOMAS S. McCONVILLE (State Bar No. 155905)
   tmcconville@orrick.com
11 ORRICK, HERRINGTON & SUTCLIFFE LLP
   4 Park Plaza, Suite 1600
12 Irvine, CA 92614-2258
   Tel: (949) 567-6700/Fax: (949) 567-6710
13 Attorneys for MGA Parties and IGWT 826 Investments
   LLC
14
15              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
16                  SOUTHERN DIVISION

17 CARTER BRYANT, an individual,      Case No.  CV 04-9049-DOC (RNBx)
                                      Consolidated with No. CV 04-9059 and
18           Plaintiff,               No. CV 05-2727

19      v.                            Hon. David O. Carter

20 MATTEL, INC., a Delaware           [REDACTED] NOTICE OF MOTIONS
   corporation,                       AND MOTIONS OF MGA
21                                    ENTERTAINMENT, INC. AND ISAAC
             Defendant.               LARIAN TO DISMISS AND/OR FOR
22                                    SUMMARY ADJUDICATION
                                      REGARDING U.S.-BASED TRADE
23 AND CONSOLIDATED ACTIONS          SECRET AND EMPLOYEE-BASED
                                      STATE LAW TORT CLAIMS
24                                    BROUGHT BY MATTEL INC.

25                                    Date: June 7, 2010
                                      Time: 8:30 a.m.
26                                    Dept: Courtroom 9D

27          REDACTED – PUBLIC VERSION

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTIONS AND MOTIONS ................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES............................. 1

SUMMARY OF ARGUMENT ................................................................. 1

STATEMENT OF FACTS ........................................................................ 4

    A.   Mattel's Pertinent Employment Practices.............................. 4

    B.   MGA's Hiring To Support Its Growth. ................................. 5

    C.   The Accused Former Mattel Inc. Employees. ....................... 7

          1.   Ron Brawer. ............................................................... 7

          2.   Nick Contreras. ......................................................... 9

          3.   Jorge Castilla. ......................................................... 10

          4.   Dan Cooney. ............................................................ 12

    D.   Mattel's Belated Trade Secret Claims ................................ 13

ARGUMENT............................................................................................ 14

I.     SUMMARY ADJUDICATION SHOULD BE GRANTED AS TO MGA AND LARIAN WITH RESPECT TO THE TRADE SECRET CLAIMS ALLEGING ACTS OCCURRING WITHIN THE UNITED STATES. ....................................................................................... 14

    A.   There Is No Evidence That MGA Unlawfully Acquired Any Trade Secrets Removed Or Retained By The Former U.S. Employees. ...................................................................... 14

    B.   There Is No Evidence Of Wrongful Use Or Disclosure Of Mattel Trade Secret Information By MGA Or Larian. ...................... 15

          1.   Mattel Cannot Prove The Required Elements Of Its Claims Against MGA And Larian Concerning The Conduct Of Ron Brawer ...................................... 15

          2.   Mattel Cannot Prove The Required Elements Of Its Claims Concerning The Conduct Of Dan Cooney. ................. 17

          3.   Mattel Cannot Prove The Required Elements Of Its Claims Against MGA And Larian Concerning The Conduct Of Jorge Castilla. ............................................... 18

          4.   Mattel Cannot Prove The Required Elements Of Its Claims Against MGA And Larian Concerning The Conduct Of Nick Contreras. ...................................... 19

    C.   Mattel Has Not Demonstrated Reasonable Efforts To Protect The Secrecy Of Its Trade Secrets................................... 20

II.    THE SIXTH THROUGH TWELFTH CLAIMS FOR RELIEF SUFFER FROM VARIOUS LEGAL DEFECTS AND SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)................................ 21

    A.   The Sixth Through Twelfth Claims Are Preempted By CUTSA. ...... 21

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

# TABLE OF CONTENTS
## (continued)

                                                                                          **Page**

B.      The Eleventh Claim Is Defective............................................................24

CONCLUSION..............................................................................................25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>**CASES**</u>

4

*Alamar Biosciences, Inc.* v. *Difco Labs, Inc.*,
5
    1995 U.S. Dist. LEXIS 21342 (E.D. Cal. Oct. 12, 1995) ................................. 15

6
*Axis Imex Inc.* v. *Sunset Bay Rattan, Inc.*,
    2009 WL. 55178 (N.D. Cal. Jan. 7, 2009) ......................................... 19, 20

7
*Brown* v. *Adidas Int.*,
8
    938 F. Supp. 628 (S.D. Cal. 1996) ................................................ 13

*CVD, Inc.* v. *Raytheon Co.*,
9
    769 F.2d 842 (1st Cir. 1985) ....................................................... 17

10
Cal. Rptr. 3d ____, 2010 WL. 1713241 (Cal. App. Apr. 29, 2010)........................... 2

11
*Celotex Corp.* v. *Catrett*,
    477 U.S. 317 (1986) ................................................................ 1, 3
12

13
*Central Valley Gen. Hosp.* v. *Smith*,
    162 Cal. App. 4th 501 (2008) ..................................................... 2, 14

14
*Cheng* v. *Comm'r Internal Revenue Serv.*,
15
    878 F.2d 306 (9th Cir. 1989) ......................................................... 1

16
*Computer Sciences Corp.* v. *Computer Assoc. Int'l, Inc.*,
    1999 WL. 675446 (C.D. Cal. Aug. 12, 1999) ..................................... 15

17
*Compuware Corp.* v. *Health Care Service Corp.*,
18
    203 F. Supp. 2d 952 (N.D. Ill. 2002)............................................. 14

19
*Cytodyn, Inc.* v. *Amerimmune Pharmaceuticals, Inc.*,
    160 Cal. App. 4th 288 (2008) ....................................................... 2

20
*Danjaq LLC* v. *Sony Corp.*,
21
    1999 WL. 317629 (C.D. Cal. Mar. 11, 1999) .................................... 15

22
*Devereaux* v. *Abbey*,
    263 F.3d 1070 (9th Cir. 2001)........................................................ 3

23
*Digital Envoy, Inc.* v. *Google, Inc.*,
24
    370 F. Supp. 2d 1025 (N.D. Cal. 2005)........................................... 19

25
*Droeger* v. *Welsh Sporting Goods Corp.*,
    541 F.2d 790 (9th Cir. 1976) ........................................................ 2

26
*Dynamics Research Corp.* v. *Analytic Sciences Corp.*,
27
    9 Mass. App. Ct. 254, 400 N.E.2d 1274 (Mass. 1980) ....................... 18

28
*Eaton Corp.* v. *Appliance Valves Corp.*,
    526 F. Supp. 1172 (D. Ind. 1981), *aff'd*, 688 F.2d 842 (7th Cir. 1982) ............. 13

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page(s)

4   *Electro-Craft Corp.* v. *Controlled Motion, Inc.*,
      332 N.W.2d 890 (Minn. 1983) ......................................................................... 17

5   *FLIR Systems, Inc.* v. *Parrish*,
      174 Cal. App. 4th 1270 (2009) ..................................................................... 2, 16

6

7   *Gabriel Technologies Corp.* v. *Qualcomm Inc.*,
      2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) ................................................. 19

8   *Gemisys Corp.* v. *Phoenix American, Inc.*,
      186 F.R.D. 551 (N.D. Cal. 1999) .................................................................. 18

9

10  *Gibson-Homans Co.* v. *Wall-Tite, Inc.*,
      1992 U.S. Dist. LEXIS 21909 (C.D.Cal. Oct. 27, 1992) ...................... 1, 2, 3, 11

11  *Globespan, Inc.* v. *O'Neill*,
      151 F. Supp. 2d 1229 (2001) ......................................................................... 15

12

13  *Hoffman* v. *Impact Confections, Inc.*,
      544 F. Supp. 2d 1121 (S.D. Cal. 2008) ......................................................... 17

14  *JustMed, Inc.* v. *Byce*,
      2010 U.S. App. LEXIS 6976 (9th Cir. Apr. 14, 2010) .................................. 11

15

16  *K.C. Multimedia, Inc.* v. *Bank of Am. Tech. & Operations, Inc.*,
      171 Cal. App. 4th 939 (2009) .............................................................. 18, 19, 20

17  *Lies* v. *Farrell Lines, Inc.*,
      641 F.2d 765 (9th Cir. 1981) ........................................................................... 1

18

19  *Mattel* v. *Goldberger Doll Manufacturing Co.*,
      236 F.R.D. 175 (S.D.N.Y. 2006) ........................................................... 3, 10, 11

20  *Melchior* v. *New Line Prods., Inc.*,
      106 Cal. App. 4th 779 (2003) ........................................................................ 22

21

22  *Olschewski* v. *Hudson*,
      87 Cal. App. 282 (1927) ................................................................................ 22

23  *PCO, Inc.* v. *Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro,*
      *LLP*,
      150 Cal. App. 4th 384 (2007) ........................................................................ 21

24

25  *Robi* v. *Five Platters, Inc.*,
      918 F.2d 1439 (9th Cir. 1990) ......................................................................... 1

26

27  *Roger-Vasselin* v. *Marriot Int'l, Inc.*,
      2006 WL 2038291 (N.D.Cal. July 19, 2006) .................................................. 1

28

- iv -

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Silvaco Data Sys.*,
  2010 WL. 1713241 ............................................................................. 18

*Silvaco Data Sys. v. Intel Corp* .......................................................... 2

*Therapeutic Research Faculty* v. *NBTY, Inc.*,
  488 F. Supp. 2d 991 (E.D. Cal. 2007) .......................................... 2, 11

*Thomas & Betts Corp.* v. *Panduit Corp.*,
  108 F. Supp. 2d 968 (N.D. Ill. 2000) ............................................. 20

*Webster Engineering and Mfg. Co.* v. *Francis*,
  1993 WL. 406025 (D. Kan. Oct. 12, 1993) .................................... 17

*Whyte* v. *Schlage Lock Co.*,
  101 Cal. App. 4th 1443 (2002) ...................................................... 15

## STATUTES

Cal. Civ. Code
  § 3426.1 ........................................................................................ 17
  § 3426.1(a) .................................................................................. 2, 3
  § 3426.1(b) ...................................................................................... 2
  § 3426(1)(1) .................................................................................... 2
  § 3426.7 ........................................................................................ 18

Federal Rules of Civil Procedure
  12(b)(6) ..................................................................................... 1, 18
  56(a) ............................................................................................... 1
  56(d) ........................................................................................... 1, 2

§ 7      ............................................................................... 18

14 West's U. Law Ann. (2005) ............................................................ 18

¶¶ 64-65, 67    ............................................................................ 11

¶¶ 72, 74     ............................................................................. 11

¶ 83-84     .................................................................................. 11

¶ 134      .................................................................................. 19

¶ 157, 169, 181 ................................................................................... 20

¶¶ 161, 162, 189 ................................................................................. 21

¶¶ 161, 188    ............................................................................. 21

¶ 194 [& 196]    ......................................................................... 22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

¶¶175, 195, 203 ......................................................................................................... 19

OHS West:260912305.4

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

## NOTICE OF MOTIONS AND MOTIONS

PLEASE TAKE NOTICE that on June 7, 2010 at 8:30 a.m. before the Honorable David O. Carter, Presiding, in Courtroom 9D, 411 West Fourth Street, Santa Ana, California 92701, Counter-defendants MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, MGA and Larian will, and hereby do, move for summary adjudication of the Third Claim regarding U.S.-based trade secret claims, and to dismiss with prejudice the Sixth through Twelfth Claims of Mattel's Fourth Amended Answer and Counterclaims ("FAAC") for the reasons and on the grounds set forth below.  Furthermore, Counter-defendants MGA Entertainment, Inc. ("MGA"),  MGA HK Ltd. ("MGA HK"), and Isaac Larian ("Larian") will, and hereby do, move to dismiss with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) the Eleventh and Twelfth Claims of the FAAC for the reasons and on the grounds set forth below.

To wit:  MGA moves pursuant to Rule 56(a) for summary adjudication of the Third Claim of the FAAC on the ground that Mattel cannot prove that MGA acquired Mattel trade secrets through improper means, or wrongfully used or disclosed Mattel trade secrets.  In the alternative, MGA moves pursuant to Rule 56(d) that the Court find that Mattel cannot prove the required elements as to each of the purported trade secrets identified by Mattel.  MGA further moves to dismiss with prejudice the Sixth through Twelfth Claims of the FAAC (Intentional Interference with Contract; Breach of Fiduciary Duty; Aiding and Abetting Breach of Fiduciary Duty; Breach of Duty of Loyalty; Aiding and Abetting Breach of Loyalty; Conversion; and Unfair Competition) on the ground that the claims are preempted by the California Uniform Trade Secrets Act and claims of conversion cannot be predicated upon the conversion of intangible property.

Larian moves pursuant to Rule 56(a) for summary adjudication of the Third Claim of the FAAC on the ground that Mattel cannot prove that Larian acquired

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1  Mattel trade secrets through improper means, or wrongfully used or disclosed

2  Mattel trade secrets.  In the alternative, Larian moves pursuant to Rule 56(d) that

3  the Court find that Mattel cannot prove the required elements as to each of the

4  purported trade secrets identified by Mattel.  Larian further moves to dismiss with

5  prejudice the Sixth through Twelfth Claims of the FAAC (Intentional Interference

6  with Contract; Breach of Fiduciary Duty; Aiding and Abetting Breach of Fiduciary

7  Duty; Breach of Duty of Loyalty; Aiding and Abetting Breach of Loyalty;

8  Conversion; and Unfair Competition) on the ground that the claims are preempted

9  by the California Uniform Trade Secrets Act and claims of conversion cannot be

10  predicated upon the conversion of intangible property.

11  MGA HK moves to dismiss with prejudice the Eleventh and Twelfth Claims

12  of the FAAC (Conversion and Unfair Competition) on the ground that the claims

13  are preempted by the California Uniform Trade Secrets Act and claims of

14  conversion cannot be predicated upon the conversion of intangible property.

15  The foregoing motions are based on the attached Memorandum of Points and

16  Authorities ("MPA"), the accompanying Separate Statement of Undisputed Facts

17  and Conclusions of Law, Compendium of Alleged Trade Secrets, Kieckhefer

18  Declaration and Exhibits, Bacon Declaration and Exhibits, Request for Judicial

19  Notice, and Appendix of Previously Marked Exhibits filed herewith, the papers and

20  pleadings filed in this action as referenced by docket number in the MPA, and any

21  other and further evidence and argument presented prior to or at the hearing on the

22  Motions.

### Statement of Compliance

23

24  Pursuant to L.R. 7-3, counsel for MGA met and conferred with counsel for

25  Mattel regarding these motions on Tuesday, May 4, 2010.

26

27

28

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1

2
Dated:    May 10, 2010

3                                              ANNETTE L. HURST
                                               Orrick, Herrington & Sutcliffe LLP
4

5                                              By:
                                                   ANNETTE L. HURST
6                                                  Attorneys for MGA Parties

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY OF ARGUMENT

Mattel's Third Counterclaim covers an enormous ground—with eight former employees alleged to have purloined trade secret materials, two counterclaimants and multiple counter-defendants.  MGA and Larian demonstrate herein an entitlement to summary adjudication of all trade secret claims pertaining to the U.S.-based Mattel, Inc. former employees who were employed by MGA, other than Carter Bryant.[1]

A party is not required to defeat the entirety of a claim in order to be entitled to partial summary judgment or summary adjudication.  Fed. R. Civ. P. 56(a), (d).  Instead, a court may grant summary judgment as to those certain issues encompassed within a claim for which there is no disputed issue of fact.  *See Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990) (granting summary adjudication of issues); *Cheng v. Comm'r Internal Revenue Serv.*, 878 F.2d 306, 309 (9th Cir. 1989) (granting summary judgment in favor of government on certain of plaintiff's claimed tax deductions); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 768-69 & n. 3 (9th Cir. 1981) (noting that purpose of Rule 56(d) is to authorize summary adjudication that falls short of a final determination of a single claim).  Thus, a party making broad claims may not avoid summary adjudication by dint of the artful pleading device of "group[ing] more than one claim into a single cause of action."  *Roger-Vasselin v. Marriot Int'l, Inc.*, 2006 WL 2038291 *2 n.1 (N.D.Cal. July 19, 2006).

The California Uniform Trade Secrets Act ("CUTSA") identifies three ways that a trade secret can be misappropriated:  (1) the acquisition of a trade secret through improper means, or (2) the wrongful disclosure or (3) use of a trade secret.

---

[1] As the other matters concerning Bryant remain pending with the Ninth Circuit and as Mattel has recently filed a motion to "confirm" the scope of the FAAC regarding Bryant-related trade secret misappropriation, MGA defers addressing them at this time.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

Cal. Civ. Code §3426.1(b).  When an employee leaves an employer, his actions in removing confidential information are not automatically imputed to the new employer.  *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976) (employee exposure to trade secret information is not imputed to employer); *Gibson-Homans Co. v. Wall-Tite, Inc.*, 1992 U.S. Dist. LEXIS 21909 *10 (C.D.Cal. Oct. 27, 1992) (company not liable for misappropriation just because employee retained trade secret document from former employer).  Instead, for the new employer to be responsible, it must have "induced" the breach of secrecy.  Civ. Code §3426.1 (a); *see Silvaco Data Sys. v. Intel Corp.*, ___ Cal. Rptr. 3d ___, 2010 WL 1713241 * 6 (Cal. App. Apr. 29, 2010).  MGA and Larian therefore cannot be found liable unless they imported the acquisition of trade secrets with knowledge, or reason to know, that doing so involved a breach of an obligation.  *See Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal. App. 4th 288, 296 (2008).

Similarly, mere possession of trade secret information without more does not constitute misappropriation.  *FLIR Systems, Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1279 (2009); *Central Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528-29 (2008).  And, of course, a misappropriation claim also requires that the plaintiff prove that the information in fact was a trade secret at the time of the alleged wrongful acquisition, use or disclosure *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F.Supp. 2d 991, 999 (E.D. Cal. 2007).  To qualify as a trade secret, the information must "Derive[] independent economic value, actual or potential, from not being generally known . . ." to the public, and to be a trade secret the information must also be the subject of reasonable efforts to protect its secrecy.  CUTSA § 3426(1)(a), (d)(1).

Finally, because Mattel bears the burden of proof at trial with respect to its trade secret misappropriation counterclaims, MGA is entitled to summary judgment of them requirement either by (1) negating an element, or (2) by a showing that

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

1  Mattel lacks sufficient evidence to support a required element at trial. *See Celotex*

2  *Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Devereaux v. Abbey*, 263 F.3d 1070,

3  1076 (9th Cir. 2001) (en banc). MGA has no obligation on summary judgment to

4  produce any evidence proving the absence of a genuine issue of material fact;

5  rather, its burden is discharged by "pointing out to the district court that there is an

6  absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at

7  325.

8      With respect to the actions of the U.S. employees, Brawer, Contreras, Castilla

9  and Cooney, the papers and pleadings on file demonstrate that Mattel cannot prove

10  trade secret misappropriation. There is no evidence that MGA or Larian acquired

11  any Mattel trade secrets through these persons, let alone used "improper means" to

12  do so. CUTSA § 3426.1(a) (defining "improper means" as theft, bribery,

13  misrepresentation, breach or inducement of breach of secrecy, or espionage).

14  Instead, the only evidence is that these few departing Mattel employees retained

15  information that Mattel now claims is a trade secret. What these individuals

16  arguably acquired or retained from their employment at Mattel, however, is *not* the

17  same as *MGA* or *Larian* acquiring Mattel trade secrets by improper means.

18      Similarly, there is no evidence that MGA or Larian disclosed or used Mattel

19  trade secret information. Mattel has not described any alleged trade secret

20  *disclosure* by MGA or Larian in its discovery responses. *Gibson-Homans Co.*,

21  1992 U.S. Dist. LEXIS 21909 at *10. As to use, Mattel's claim as is premised

22  almost entirely on its conjecture that since some (but not all) of these employees

23  took documents from Mattel, they must have used those documents at MGA. As to

24  Larian, there is not even conjecture as to use. Where there is evidence of actual use

25  by one of the former employees, it is as to materials that no one can reasonably

26  claim were a trade secret at the time—such as contact list and personal

27  compensation information (which Mattel now admits is not a trade secret) and

28  blank forms and templates. These speculative inquiries do not entitle Mattel to get

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1   to a jury.  Under both prongs of *Celotex*, MGA and Larian are entitled to summary

2   judgment of the U.S.-based trade secret misappropriation claims.

3                              **STATEMENT OF FACTS**

4        A.     **Mattel's Pertinent Employment Practices.**

5          Mattel operates around the world through numerous foreign subsidiaries.  *See*

6   LKK Decl. Ex. 29 (Tiburcio Depo.) at 3661:7-12, 3777:7-3778:3; RFJN Ex. 6.[2]

7   Mattel Inc. is the parent company and is located in El Segundo, California.  Mattel

8   uses form employment agreements that it imposes upon its many employees

9   worldwide.  *E.g.* FAAC Ex. J.  The employees sign agreements with the companies

10  who employ them, which outside the United States are subsidiaries of Mattel Inc.

11  *Id.* Ex. J, App. Ex. 6903, Ex. 6694, Ex. 6696, Ex. 6707.  Mattel also uses a variety

12  of questionnaires, handbooks and codes of conduct in its effort to regulate



[2] Fact cite conventions used in this MPA are as follows: cites to the docket in the consolidated actions are abbreviated as "Dkt. #      "; cites to facts and supporting evidence set forth in the MGA Parties and IGWT 826 Separate Statement of Uncontroverted Facts and Conclusions of Law ("Sep. St.") are abbreviated as "UF #     "; deposition and trial testimony excerpts are attached as exhibits to the Declaration of L. Kieran Kieckhefer in Support of MGA Parties and IGWT 826 Motions for Summary Adjudication, abbreviated as "LKK Decl. Ex. ___" with the witness names following the exhibit letter in parentheses; written discovery responses and documents not previously marked as exhibits are attached as exhibits to the LKK Declaration; previously marked deposition exhibits other than the alleged trade secret documents are included in the Appendix of Previously Marked Exhibits, abbreviated as "App. Ex."; and all trade secret materials identified by Mattel in its Supplemental Response to Interrogatory No. 20 are included in the Compendium of Alleged Trade Secret Documents, abbreviated as "Comp. TS," including previously marked exhibits that fall within this category.

8    **B.    MGA's Hiring To Support Its Growth.**

9        MGA Entertainment, Inc. was founded in 1979, which achieved moderate

10  success selling a variety of hand-held electronic games, radio-controlled cars and

11  other toys.

12       MGA introduced Bratz in Europe in June, 2001.  LKK Decl. Ex. 34 at 4360.

13  MGA introduced Bratz in the United States in August, 2001.  *Id.*  In 2001, MGA

14  hired approximately 7 employees who had previously worked for Mattel.

15  Declaration of Schuyler Bacon ("Bacon Decl.") ¶ 5.  By 2002, MGA began a hiring

16  spree to support the growth of the company, ultimately hiring more than seven

17  hundred new employees.  *Id.* ¶ 2.

18       From 2002 to 2007, of its more than 700 new employees, MGA hired just

19  over one hundred employees who had previously worked at Mattel: 7 in 2001, 10 in

20  2002, 13 in 2003, 25 in 2004, 20 in 2005, and 22 in 2006.  *Id.* ¶ 5.  MGA also hired

21  dozens of employees who had worked at other toy companies, as well as numerous

22  employees who had no toy industry background.  *Id.* ¶ 4.  These employees came to

23  MGA through various means:  on-line job postings, references, employment

24  agencies, personal contacts with existing MGA employees, and the like.  *Id.* ¶ 3.

25  MGA's employment agreements reminded its new hires that they should respect the

26  confidential information of their former employers, and that they should not retain,

27  use or disclose it at MGA.  *Id.* Ex. B.

28

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1   By the end of April 2004, Mattel had sued Carter Bryant over Bratz. Mattel

2   Complaint, BC 314398 dated April 17, 2004. By that point, Mattel had also sent a

3   number threatening letters to MGA on a variety of subjects including postings to

4   Yahoo! user groups, and the employment of a number of former Mattel employees.

9   LKK Decl. Ex. 21 at 2397:12-23. Mattel was

10  widely known in the toy industry as highly litigious. LKK Decl. Ex. 4 at 228:8-20;

11  *see Mattel v. Goldberger Doll Manufacturing Co.*, 236 F.R.D. 175 (S.D.N.Y. 2006)

12  (refusing to vacate a judgment against Mattel of non-infringement pursuant to

13  stipulation of settlement because of Mattel's litigiousness and aggressiveness with

14  lawsuits, and the fact that it is a "repeat player" in the courts warrants the public

15  knowing that not every female doll is a Barbie knock-off).

16  Accordingly, MGA adopted a practice of taking added precautions to ensure

17  that employees coming from Mattel did not take any information with them. MGA

18  required new employees who left Mattel to sign a letter agreement in addition to

19  their standard form employment agreements expressly verifying that they did not

20  take any information from Mattel. Bacon Decl. ¶ 6-7; Ex. B. That letter provided:

21      "It is MGA's policy to honor the agreements of a competitive
22      company to the fullest extent required by applicable state and federal
        law. ....In this regard, if you accept MGA's offer of employment,
23      among other things, *you should not retain any of Mattel's property or*
        *confidential and proprietary information*, including Mattel's customer-
24      related information (or any information regarding prospective
        customers), nor should you use or disclose Mattel's property and/or
25      confidential and proprietary information in connection with your
26      employment at MGA or otherwise. All of Mattel's property and
        confidential and proprietary information must be returned to Mattel
27      before you commence work for MGA and, to the extent that any

28

Mattel confidential and proprietary information, including Mattel customer-related information (or any information regarding prospective customers), is stored on your personal digital assistant (PDA), and/or Blackberry, and/or home and/or laptop computers, or in personal files, *all such information must be left at or returned to Mattel and you should not retain any copies in a hard copy or an electronic form.*" (emphasis added).

MGA employees who interviewed and hired employees coming from Mattel repeatedly told these employees that they were being hired for their skills and general knowledge and that they should not bring any information to MGA from Mattel. Bacon Decl. ¶ 7.

### C. The Accused Former Mattel Inc. Employees.

#### 1. Ron Brawer.

Prior to October 1, 2004, Ron Brawer was a Senior Vice President at Mattel responsible for marketing. FAAC ¶ 64. Mr. Brawer had previously worked for Tyco Toys, Inc. since 1996 and became an employee of Mattel when Mattel acquired Tyco in 1997. *Id.* Mr. Brawer held various positions with Tyco and Mattel and he remained an at-will employee at Mattel until his departure.

Brawer first had discussions with MGA in 2003, but they led nowhere. In

121:23-122:3. These negotiations started and stopped for the better part of a year as Brawer and MGA discussed potential terms of employment.

On September 17, 2004, Brawer accepted a position with MGA as the Executive Vice President Marketing and Strategic Sales Planning. UF # 119. On September 17, 2004, Brawer gave notice of his resignation to Mattel █████████
████████████████████████ UF # 120-121. Brawer began work for MGA on October 5, 2004. He did not perform any work for MGA prior to October 5, 2004.



1
2
3
4
5
6
7
8
9 After a prior lawsuit against
10 Brawer that went nowhere and was dismissed, [3] and years of discovery in this
11 action, Mattel now claims

14 126-129.  Shortly prior to the filing of this Motion, Mattel conceded that it would
15 not pursue that its other claim of trade secret misappropriation by Brawer
16 concerning his contact list.

19 was no Mattel information in the form that Brawer presented to MGA, nor was the
20 document labeled as having come from Mattel.  Mattel acknowledges as such,

22 [3] On October 21, 2004, Mattel filed a declaratory relief action against Brawer.  In
23 that action, Mattel made allegations concerning Brawer's purported theft of trade
secrets, suggesting, as it does here, that he had access to trade secrets that were
24 taken from Mattel.  The California Superior Court (Los Angeles County) dismissed
with prejudice that lawsuit for failure to state a claim for relief, expressing concern
25 that Mattel was using a declaratory relief claim to get discovery from a competitor.
Mattel appealed the dismissal with prejudice, arguing that there was a real
26 controversy because Brawer had failed to respond to its demands for assurances.
Ultimately the Court of Appeal reversed the "with prejudice" part of the dismissal
27 finding that perhaps Mattel could come up with some facts to state a controversy,
but Mattel nonetheless dropped the action and pursued the allegations against
28 Brawer no further until three years later when it filed its counterclaims in these
consolidated actions.  Request for Judicial Notice, Exhs. 1-5.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

page

15    Mattel's last item of claimed misappropriation by Brawer is product themes

16  allegedly taken in his head—a claim that was only recently concocted in this

17  litigation years after Brawer left MGA.  UF # 126-128.  There is no evidence that

18  Brawer took any document concerning Mattel's unreleased products, that he

19  specifically memorized anything related to them, or that he had any involvement in

20  the development of what Mattel now claims were similar themes released by MGA.

21          **2.     <u>Nick Contreras</u>.**

22    Nick Contreras was a Mattel employee from August 1994 through November

23  12, 2004.  UF # 132.  During that time, Contreras worked out of Mattel's offices in

24  El Segundo.  He held several positions during his tenure but worked primarily in

25  space planning and customer marketing.  LKK Decl. Ex. 7 (Contreras Depo.) at

26  750-753.  Contreras has numerous family members who have also worked for

27  Mattel, including his father, two uncles, a cousin, and a sister.  *Id.* at 745-749.

28

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1    After Brawer announced he was leaving, Contreras expressed interest in

2    joining MGA as well.  Contreras then sent his resume to MGA's Human Resources

3    department, and approximately a week or two later interviewed with MGA.  UF

4    #133.  MGA hired Contreras as Vice President Customer Marketing on October 28,

5    2004.  *Id.* at 739.  The next day Contreras notified Mattel that he was resigning

6    effective November 12, 2004.  App. Ex. 1917.  Contreras's first day as an MGA

7    employee was Monday December 6, 2004, and he did not perform any work for

8    MGA prior to then.  Before beginning work at MGA, Contreras affirmed in writing

9    that he had not and would not take any confidential information from Mattel.  UF #

10   136.

11   Mattel's claim with respect to Contreras is that he *attempted* to procure

12   confidential information.  There is no evidence MGA or Larian had anything to do

13   with this.  Supposedly Contreras had lunch with a former co-worker and asked for

14   copies of certain documents (he denies it), but even she agrees *that she never gave*

15   *him the documents*.  LKK Decl. Ex. 93 (Kim Depo) at 5714:13-16; Ex. 7 (Contreras

16   Depo.) at 768.3-5.  Mattel has no evidence that MGA ever used or disclosed any

17   Mattel trade secret purportedly provided by Contreras.  *Id.* Ex. 28 (Storie Depo.) at

18   266-2667.  Mattel also asserts that he copied various documents during the week he

19   left, but Mattel concedes it has no evidence that he took these documents, no

20   evidence he brought them to MGA, and no evidence that MGA used any of these

21   documents.  *Id.*

22            **3.    Jorge Castilla.**

23   Before being hired by MGA, Jorge Castilla was a Mattel employee from

24   November 1999 through March 24, 2006.  UF # 165.  Castilla had separate stints in

25   Mattel's offices in Europe and El Segundo.  He primarily worked on Mattel's sales

26   forecasting and inventory management systems.

27   In late February 2006, Castilla submitted his resume online for an open

28   position at MGA.  He had had no prior contact with MGA.  MGA interviewed

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
                                                    AND FOR SUMMARY ADJUDICATION

1  Castilla, and on March 13, 2006 he accepted an offer of employment with MGA.

2  UF # 167.  That same day, Castilla notified his Mattel supervisor that he would be

3  resigning from Mattel, effective March 26, 2006 and he was asked to leave the

4  premises by day's end.  Castilla's last day as a Mattel employee was Friday, March

5  24, 2006.  UF # 166.  His first day as an MGA employee was Monday, April 3,

6  2006.  Castilla did not perform any work for MGA prior to April 3, 2006.

7        During the interview and hiring process, Castilla was instructed several times

8  by MGA that he should not bring any documents or information from Mattel.

9  MGA required Castilla to confirm in writing that he had not taken any information

10  from Mattel.  UF # 169.  Although Castilla confirmed to MGA he had not taken any

11  Mattel documents *at all*, apparently (unbeknownst to MGA) that was not accurate.

12  Instead, he retained a number of documents that he had apparently placed on a

13  portable storage device.

 

 

 

 

10          **4.**    **Dan Cooney.**

11         Prior to joining MGA, Daniel J. Cooney was a Mattel employee from January

12   2004 through May 12, 2006.  UF # 268.  During most of that time, Cooney worked

13   out of his home office in Mt. Laurel, New Jersey.  He was a member of the Toys-R-

14   Us sales team at Mattel.  *Id.*

15         In early 2006, Cooney interviewed for a position at Fisher Price—a different

16   division of Mattel.  Cooney was passed over.  He subsequently spoke with Ron

17   Brawer, who had been a friend of his from Mattel, who suggested Cooney apply at

18   MGA.  MGA interviewed and then hired Cooney on April 27, 2006.  UF # 270.

19   The next morning, on April 28, 2006, Cooney notified his Mattel supervisor,

20   Eugene Murtha, that he resigned from Mattel effective May 12, 2006.  UF # 269.

21   Cooney's last day as a Mattel employee was Friday, May 12, 2006.  His first day as

22   an MGA employee was Monday, May 15, 2006.  UF # 273.  Cooney did not

23   perform any work for MGA prior to May 15, 2006.  Before coming to work at

24   MGA, Cooney signed a letter agreement confirming that he had not, and would not

25   bring any documents or information to MGA from Mattel.  UF # 272.

Mattel has no evidence that MGA

3   or Larian had anything to do with this copying.

17   **D.   <u>Mattel's Belated Trade Secret Claims.</u>**

18        Mattel conducted detailed investigations of these individuals, in at least one

19   case (Castilla) even before he left Mattel's employ.  App. Ex. 7981.

# ARGUMENT

## I. SUMMARY ADJUDICATION SHOULD BE GRANTED AS TO MGA AND LARIAN WITH RESPECT TO THE TRADE SECRET CLAIMS ALLEGING ACTS OCCURRING WITHIN THE UNITED STATES.

Mattel cannot prove that MGA or Larian induced the removal of any confidential information, that any of these former Mattel employees used a Mattel trade secret (as opposed to a blank form) at MGA, or that Larian used or induced them to use a Mattel trade secret at MGA. Summary adjudication should be granted on the U.S.-based claims.

### A. There Is No Evidence That MGA Unlawfully Acquired Any Trade Secrets Removed Or Retained By The Former U.S. Employees.

The undisputed fact is that MGA repeatedly instructed these individuals orally and in writing not to take anything with them when they left Mattel. Each of Brawer, Cooney, Contreras and Castilla was required to sign agreements attesting to the fact that they understood their confidentiality obligations to Mattel and did not take any information from Mattel. UF # 135, 146, 168, 271, 272. There is no evidence that MGA or Larian knew these employees had kept Mattel materials, let alone that MGA or Larian asked, directed or requested that they do so. In fact, according to the allegations of the FAAC, each of Mattel's former U.S. employees acquired Mattel's alleged trade secrets *while still employed by Mattel*. For example Mattel claims that:

- Ron Brawer failed to return information he had acquired *during his employment at Mattel*. FAAC ¶¶ 64-65, 67.
- Jorge Castilla transferred information to a "To Take" folder *three days before resigning* from Mattel. FAAC ¶¶ 72, 74.
- Daniel Cooney transferred documents to a "Dan's Files" folder *the week before* resigning from Mattel. FAAC ¶ 83-84.

1    Therefore, the conduct of these individuals, while still employed by Mattel, cannot

2    be attributed to MGA. *See Gibson-Homans Co.*, 1992 U.S. Dist. LEXIS 21909 at

3    *10 (company not liable for misappropriation just because employee retained trade

4    secret document from former employer).

5
                **B.**     **There Is No Evidence Of Wrongful Use Or Disclosure Of Mattel
6                         Trade Secret Information By MGA Or Larian.**

7        Nor is there any evidence of use or disclosure by MGA or Larian of any

8    Mattel trade secrets. Use or disclosure requires possession or control by defendant

9    and conduct that reduces the commercial value of the trade secret, *i.e.* that the

10    information actually be used to the detriment of Mattel in the market. *JustMed, Inc.*

11    *v. Byce,* 2010 U.S. App. LEXIS 6976 *31, *32 (9th Cir. Apr. 14, 2010) (defendant

12    must have actually put the trade secret to some commercial use); *Gibson-Homans*

13    *Co.*, 1992 U.S. Dist. LEXIS 21909 at *10 (no misappropriation where no evidence

14    that defendants used plaintiff's formulas or otherwise impaired their commercial

15    benefit to plaintiff); *Therapeutic Research Facility,* 488 F.Supp. 2d at 999 (plaintiff

16    has burden to show trade secrets were, in fact, used by defendants). As set forth

17    below, Mattel cannot show that MGA or Larian ever used any Mattel trade secret,

18    let alone used it in such a way that impaired Mattel.

19
                **1.**     **Mattel Cannot Prove The Required Elements Of Its Claims
20                         Against MGA And Larian Concerning The Conduct Of Ron
                        Brawer.**

21        There is no evidence that Mr. Brawer took anything from Mattel that could

22    even potentially be considered a trade secret. As a result, there can be no evidence

23    that MGA used or disclosed any such information. But even as to the information

[REDACTED]

. The claim

3 | that a blank job description template contains any element unknown to the industry

4 | and derives economic value from being unknown is frankly absurd, and Mattel

5 | admits it cannot prove it owns it, nor that MGA nor Larian had anything to do with

6 | Brawer using it, nor that MGA or Larian ever used it thereafter.

[REDACTED]

Not a shred of evidence has been presented of any use or disclosure of

17 | that sales data document at MGA, or by Larian.

18 |      Lastly, Mattel asserts that Brawer used his knowledge of certain My Scene

19 | doll themes in development at Mattel in 2004 so that MGA could create similar

20 | themes of Bratz. Mattel concedes that Brawer did not remove any documents

21 | relating to these dolls and, thus that any information he may have "taken" was

22 | information in his head. App. Ex. 8558 at 2088. The three themes Mattel claims

23 | MGA used are "Hollywood," "Blind Date" and a doll that had switchable heads

24 | with different hair styles. *Id.* Mattel has no evidence from which it could be

25 | reasonably inferred that these doll themes were purloined from Brawer's head at

26 | MGA. *Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996) (allegations of

27 | similarity in a products design, without more, do not support a claim of

28 | misappropriation); *Eaton Corp. v. Appliance Valves Corp.*, 526 F. Supp. 1172,

1 | 1181 (D. Ind. 1981) ("The similarity of the final products does not constitute proof

2 | of misappropriation of trade secrets."), *aff'd*, 688 F.2d 842 (7th Cir. 1982).  Indeed,

6 | products that Mattel claims copied Mattel themes, in fact, were on the market by at

7 | least 2005, and Mattel was well-aware at that time that Brawer had seen Mattel's

8 | products while he was at Mattel.  Yet the first time Mattel claimed that the MGA

9 | products were based on Mattel's information was in 2009.  It is grasping at straws.

10 | **2.   Mattel Cannot Prove The Required Elements Of Its Claims Concerning The Conduct Of Dan Cooney.**

11 |

12 | Mattel's claim involving MGA's supposed misappropriation of trade secrets

13 | with respect to the actions of Dan Cooney is even more overreaching, if possible.

14 | There is not a shred of evidence of MGA or Larian using any Mattel information

15 | sourced through Cooney—trade secret or otherwise.

21 | misappropriation claim.  *Central Valley General Hospital v. Smith*, 162 Cal. App.

22 | 4th 501, 528-28 (2008) (possession does not show misappropriation).

4  ███████████████████████ Neither did Mattel ever seek to have his use of these forms enjoined.

5  *Compuware Corp. v. Health Care Service Corp.*, 203 F. Supp. 2d 952, 957-58

6  (N.D. Ill. 2002) (delay in filing suit and failure to seek preliminary injunction

7  resulted in dismissal for lack of reasonable efforts).  Given the missing elements

8  with respect to each one of these claims as against each counter-defendant, it is

9  apparent that Mattel cannot prove trade secret misappropriation by MGA or Larian.

10               **3.**    **Mattel Cannot Prove The Required Elements Of Its Claims**

11                     **Against MGA And Larian Concerning The Conduct Of Jorge Castilla.**

12        Nor is there any evidence MGA or Larian acquired, used or disclosed a

13  Mattel trade secret through Castilla—the man whose copied documents were ████

14  ████████████████████████████ Mattel has no evidence that

15  Castilla's actions were instigated in any way by MGA or Larian; to the contrary,

16  MGA insisted he sign an agreement that he would not retain or bring anything from

17  Mattel.  UF # 168-169.  There is no physical way that MGA or Larian could have

18  used or disclosed documents they never received.  At his deposition, Castilla

19  testified that he never made a copy of the files on the device, and that he did not

20  have a copy of these files in his possession when he began working for MGA.

21  LKK Decl. Ex. 6 (Castilla Depo.) at 703:14-704:8.  No evidence contradicts this

22  testimony.  Accordingly, there is no way that MGA or Larian could have

23  misappropriated the files that Castilla copied.

24  ████████████████████████████████████████

25  ████████████████████████████████████████

26  completely inconsistent with a desire to maintain trade secret protection for these

27  materials.  *See Alamar Biosciences, Inc. v. Difco Labs, Inc.*, 1995 U.S. Dist. LEXIS

28  21342, at \*18-19 (E.D. Cal. Oct. 12, 1995) (explaining that a party requesting trade

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1    secret protection must demonstrate that it exercised "eternal vigilance").  Mattel

2    apparently hoped to leverage the evidence to use him as an informant at MGA—a

3    tactical decision that is completely inconsistent with trade secret protection.

4    [REDACTED]

                                                                              Conjecture as

7    to such use will not suffice, particularly as it is inconsistent with California's

8    disdain for the theory of inevitable disclosure.  A court may not infer

9    misappropriation solely based upon access to trade secret information.  *Whyte v.*

10   *Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464 (2002); *Globespan, Inc. v. O'Neill*,

11   151 F. Supp. 2d 1229, 1235 (2001); *Danjaq LLC v. Sony Corp.*, 1999 WL 317629

12   *1, n.1 (C.D. Cal. Mar. 11, 1999); *Computer Sciences Corp. v. Computer Assoc.*

13   *Int'l, Inc.*, 1999 WL 675446 *15, *16 (C.D. Cal. Aug. 12, 1999).  That the

14   employees had access to information or even that they took information that could

15   be useful does not support an inference of actual use sufficient to get to a jury.

16            **4.    Mattel Cannot Prove The Required Elements Of Its Claims**
              **Against MGA And Larian Concerning The Conduct Of Nick**
17            **Contreras.**

18   [REDACTED]

19

20

21   93 at 5714.  Pursuing claims against MGA and Larian where there is no evidence

22   they had anything to do with the alleged request, no evidence he obtained anything,

23   and no evidence that anything was ever used at MGA, is grasping at straws.

24            This series of claims of trade secret misappropriation as to the U.S.-based

25   employees are extremely weak.  Mattel relies throughout on speculative theories of

26   how MGA "could use" information.  App. Ex. 8558 at 1894-1935.  That is plainly

27   not sufficient to get the claims to trial.  In fact, in *Flir Systems, Inc.*,  the court

28   found that even where there was evidence of a former employee downloading data

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1    to a personal hard drive immediately before leaving and going to a competitor, it

2    was insufficient to support a claim of misappropriation since evidence of actual use

3    was required.  The bringing of that lawsuit based on mere speculation of use was

4    deemed by the court to be bad faith.  *See* 174 Cal. App. 4th 1270.  Summary

5    adjudication should be entered dismissing all of the claims of misappropriation

6    against MGA and Larian based on the actions of these former Mattel employees.

7         **C.**     **Mattel Has Not Demonstrated Reasonable Efforts To Protect The
8               Secrecy Of Its Trade Secrets.**

9       Finally, the undisputed facts set out above demonstrate that with respect to all

10    of the claims concerning U.S.-based trade secrets, Mattel has failed to undertake

11    reasonable efforts to maintain the documents at issue as trade secrets.  For

12    information to be a trade secret, it must be "the subject of efforts that are reasonable

13    under the circumstances to maintain its secrecy."  CUTSA §3426.1  But Mattel has

14    never given its employees any instruction as to exactly what types of information

15    they should consider a trade secret.

16

17

18   

19

20

21

22

23

24

25

26

27    (Storie Depo.) at 2577:8-2578:11.  This kind of overbroad, vague and blanket

28    assertion of secrecy is not a "reasonable effort."  *Electro-Craft Corp. v. Controlled*

1   *Motion, Inc.*, 332 N.W.2d 890, 902-03 (Minn. 1983) (vague language in

2   employment agreements of need to protect confidential information was inadequate

3   where employer did not define what it considered to be confidential); *Webster*

4   *Engineering and Mfg. Co. v. Francis*, 1993 WL 406025 * 4 (D. Kan. Oct. 12, 1993)

5   ("it is necessary to inform employees what information is considered confidential").

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   secret. *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 853 (1st Cir. 1985) (company's

9   failure to abide by its own written policy to stamp confidential documents with a

10   restrictive legend was significant to whether information was a trade secret);

11   *Hoffman v. Impact Confections, Inc.*, 544 F.Supp. 2d 1121, 1126 (S.D. Cal. 2008)

12   (granting summary judgment on reasonable measures based on failure to stamp as

13   confidential the materials at issue); *Gemisys Corp. v. Phoenix American, Inc.*, 186

14   F.R.D. 551, 558-560 (N.D. Cal. 1999) (plaintiff failed to place confidentiality

15   markings on materials claimed to be trade secrets).

16   ████████████████████████████████████████████████████████

17   ██████████ what are its trade secrets to be kept confidential, Mattel has failed to

18   adequately protect these secrets. *Dynamics Research Corp. v. Analytic Sciences*

19   *Corp.*, 9 Mass. App. Ct. 254, 277-278, 400 N.E.2d 1274, 1287-1288 (Mass. 1980)

20   (employment agreement vaguely defining trade secrets as all business and customer

21   information did not put employee on notice of what was trade secrets, particularly

22   where contract could restrain employee from using general skill and knowledge).

23   **II.**   **THE SIXTH THROUGH TWELFTH CLAIMS FOR RELIEF SUFFER**
**FROM VARIOUS LEGAL DEFECTS AND SHOULD BE DISMISSED**

24   **PURSUANT TO RULE 12(B)(6).**

25        **A.**   **The Sixth Through Twelfth Claims Are Preempted By CUTSA**

26        Mattel's Sixth through Twelfth counterclaims are all premised at least in part

27   upon the same allegations as its Third Claim for trade secret misappropriation, and

28   accordingly must be dismissed to the extent preempted by the California Uniform

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

Trade Secrets Act ("CUTSA"). CUTSA occupies the field broadly preempts all other state law causes of action premised upon the alleged theft of confidential information. *Silvaco Data Sys.*, 2010 WL 1713241 * 14; *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 957 (2009). CUTSA's preemption provision preempts all civil remedies which are based upon misappropriation of trade secrets. *Compare* Cal. Civ. Code § 3426.7 *with* 14 West's U. Law Ann. (2005) U. Trade Secrets Act, § 7, subd. (a), p.651. Accordingly, any cause of action that is based on the same nucleus of facts as a misappropriation of trade secrets claim is preempted under CUTSA. *Silvaco Data Sys.*, 2010 WL 1713241 * 15; *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 958-59. The Court must look at the gravamen of the complaint and dismiss the non-trade secret causes of action to the extent they "rest[] on factual allegations of trade secret misappropriation." *Id.* at 959 (citing *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005)); *Digital Envoy, Inc. v. Google*, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (claims of unfair competition and unjust enrichment arising out of same nucleus of facts were preempted).

Here, Mattel has stated its trade secret misappropriation claim so broadly that it clearly preempts all of its other state law claims relating to its former employees. In outlining its trade secret misappropriation claim, Mattel sweepingly defines its "Trade Secret Material" to include all the "documents, materials, designs, names, and other information stolen by Machado, Vargas, Brisbois, Castilla, Cooney, Contreras, Brawer and other former Mattel employees." FAAC ¶ 134.[4] Thus, by its own pleading, Mattel's trade secret misappropriation claim encompasses *all* Mattel information allegedly stolen by *any* of the former Mattel employees.

---

[4] For the reasons set forth in the accompany motion by MGAE de Mexico concerning the Mexico and Canada claims, the Third Counterclaim as to the foreign allegations should also be dismissed for lack of personal jurisdiction and on grounds of *forum non conveniens*. Additionally, to the extent the foreign aspects of the claims are pled against MGA and Larian, summary adjudication should be granted. To the California law even applies to the tort claims concerning the foreign employees, the preemption argument applies equally to those allegations.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

1        By their express terms, Mattel's Eighth, Eleventh, and Twelfth counterclaims

2   rest on Mattel's trade secret misappropriation allegations, accordingly, must be

3   dismissed.  FAAC ¶¶175, 195, 203; *Gabriel Technologies Corp. v. Qualcomm Inc.*,

4   2009 WL 3326631 *11-13 (S.D. Cal. Sept. 3, 2009) (claims for conversion, unfair

5   competition, fraud, tortious interference, and unjust enrichment preempted because

6   "[i]f the 'trade secret' facts are removed from the claims…, the claims fail to retain

7   sufficient independent facts"); *Axis Imex Inc. v. Sunset Bay Rattan, Inc.*, 2009 WL

8   55178 *5 (N.D. Cal. Jan. 7, 2009) (finding preemption because if the "'trade secret'

9   facts are removed from [the unfair competition and intentional interference] claims,

10  neither [claim] retain[s] sufficient independent facts to survive.").

11       Mattel's broad definition of "Trade Secret Materials" also requires a finding

12  of preemption of its remaining causes of action based upon the alleged actions of

13  the former Mattel employees.  *Thomas & Betts Corp. v. Panduit Corp.*, 108 F.

14  Supp. 2d 968, 972-73 (N.D. Ill. 2000) (breach of fiduciary duty claim premised on

15  theft of confidential information is preempted by UTSA).  For example, Mattel's

16  Seventh and Ninth claims for breach of fiduciary duty, and breach of duty of loyalty

17  are based upon Machado's alleged use of Mattel information and his alleged "work

18  for a Mattel competitor".  FAAC ¶ 157, 169, 181.[5]  As to the former, Machado's

19  alleged use of Mattel information is included in the "Trade Secret Materials" (all

20  "documents materials, designs, names, and other information stolen by Machado")

21  and thus falls squarely within the trade secret misappropriation claim.  Further, the

22  latter allegations relating to Machado's "work for a competitor" concern the alleged

23  misappropriation, as the work allegedly performed was the collection and

24  disclosure of Mattel information.  FAAC ¶¶46, 48-50.

25       The same analysis applies to Mattel's Sixth and Tenth counterclaims for

26  intentional interference with contract and aiding and abetting breach of duty of

27

28  [5] Each of these claims includes allegations relating to Carter Bryant, which were tried in Phase 1, and therefore are not relevant to the current preemption analysis.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

loyalty.[6] *Axis Imex Inc.*, 2009 WL 55178 at *5 (finding intentional interference claim preempted); *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 958-59 (holding claim for interference with contract was preempted).  These claims rest on allegations that MGA was aware that Mattel employees had a duty not to disclose Mattel information to a competitor or work for a competitor while employed by Mattel, FAAC ¶¶ 161, 188, but that MGA encouraged and caused the former Mattel employees to disclose information and work for MGA, a competitor, FAAC ¶¶ 161, 162, 189.  The incorporation of allegations relating to disclosure of Mattel information causes the alleged misconduct to be part of Mattel's "Trade Secret Material", which explicitly includes all documents or information taken by the former employees identified in the claims.  Further, any work allegedly performed by these former Mattel employees for MGA is simply the alleged collection of Mattel information and documents, FAAC ¶¶ 46, 48-50, 61, 68, 74, 75, 80, 84, and again falls within Mattel's "Trade Secret Material."

In its FAAC, Mattel chose (after many prior opportunities) to assert its trade secret misappropriation claim broadly.  As a consequence, that misappropriation claim encompasses the alleged wrongdoing by each of the former Mattel employees identified as the basis for these seven claims and results in the preemption of them because they are based upon the same nucleus of facts.  Accordingly, Mattel's Sixth through Twelfth claims are preempted and must be dismissed.

**B.    The Eleventh Claim Is Defective.**

Even in the absence of preemption, Mattel's Eleventh Counterclaim fails to state a common law claim for conversion.  Under California law, a claimant must prove three elements to state a claim for conversion: (i) ownership or right to possession of personal property; (ii) a defendant's wrongful interference with the

---

[6] As explained in Section __ below, the allegations relating to Ana Isabel Cabrera, Beatriz Morales, and María Elena Salazar relate to Bratz and should have been addressed in Phase 1 of this litigation.  The allegations relating to these individuals should not be considered in the preemption analysis.

1  claimant's possession; and (iii) damage to the claimant. *PCO, Inc. v. Christensen,*
2  *Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395
3  (2007).  Mattel's allegations fail to establish the claim for two reasons.

4      First, Mattel argues that MGA and Larian converted property and tangible
5  materials that Bryant created.  FAAC ¶¶ 194, 196.  These claims were each the
6  subject of Phase 1 of this litigation and should have been addressed at that time.  As
7  recently described by this Court, "[t]he facts relevant to the Bratz and Jade line of
8  dolls were in Mattel's possession long before its first pleading in this lawsuit and
9  the claims with respect to Bratz should have been the subject of the Phase 1 jury
10 trial."  Dkt. No. 7712 at 9.  Accordingly, conversion claims that rely on Phase 1
11 allegations cannot form the basis for a claim for conversion now.

12     Second, Mattel relies on allegations that MGA converted trade secret
13 information.  These allegations are also inadequate as a matter of law to prove
14 conversion.  "Conversion requires interference with tangible rather than intangible
15 property. . . ."  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 792-93
16 (2003); *see also Olschewski v. Hudson*, 87 Cal. App. 282, 286 (1927).  Interference
17 with intangible property may constitute "plagiarism or *misappropriation*," but not
18 conversion.  *Melchior* 106 Cal. App. 4th at 792 (emphasis added).  Mattel's specific
19 allegations concern the alleged *misappropriation* by MGA of intangible property —
20 purported Mattel Trade Secret Material.  FAAC ¶ 195.  This is the type of
21 information that California case law has deemed legally insufficient to establish a
22 conversion claim.  Even if not preempted, then, the Eleventh counterclaim must be
23 dismissed with prejudice.

## CONCLUSION

25     For all of the foregoing reasons, the Third and Sixth through Twelfth
26 counterclaims should be dismissed with prejudice.

27

28

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1

2    Dated:    May 10, 2010                      ANNETTE L. HURST
                                                 Orrick, Herrington & Sutcliffe LLP
3
                                                                         Bar # 198444
4                                                By: _____

5                                                        ANNETTE L. HURST
                                                      Attorneys for MGA Parties
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
                                                     AND FOR SUMMARY ADJUDICATION