1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building, 405 Howard Street
5   San Francisco, CA 94105
    Tel. (415) 773-5700/ Fax: (415) 773-5759
6
    WILLIAM A. MOLINSKI (State Bar No. 145186)
7   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
8   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
9   Tel. (213) 629-2020/Fax: (213) 612-2499

10  THOMAS S. McCONVILLE (State Bar No. 155905)
    tmcconville@orrick.com
11  ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza, Suite 1600
12  Irvine, CA 92614-2258
    Tel: (949) 567-6700/Fax: (949) 567-6710
13
    Attorneys for MGA Parties and IGWT 826 Investments
14  LLC

15              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
16                    SOUTHERN DIVISION

17  CARTER BRYANT, an individual,      Case No.  CV 04-9049-DOC (RNBx)
                                       Consolidated with No. CV 04-9059 and
18              Plaintiff,             No. CV 05-2727

19       v.                           Hon. David O. Carter

20  MATTEL, INC., a Delaware          [REDACTED] NOTICE OF MOTIONS
    corporation,                      AND MOTIONS BY MGAE DE
21                                     MEXICO TO DISMISS FOR LACK OF
                Defendant.            PERSONAL JURISDICTION AND ON
22                                     GROUND OF FORUM NON
                                       CONVENIENS, MOTION BY MGA AND
23  AND CONSOLIDATED ACTIONS          ISAAC LARIAN FOR SUMMARY
                                       ADJUDICATION OF FOREIGN TRADE
24                                     SECRET CLAIMS; MEMORANDUM
                                       OF POINTS AND AUTHORITIES
25
                                       Date: June 7, 2010
26                                     Time: 8:30 a.m.
                                       Dept: Courtroom 9D
27
                   REDACTED – PUBLIC VERSION
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

STATEMENT OF FACTS ................................................................................ 2

    A.    Mattel's Mexican And Canadian Operations ...................................... 2

    B.    Relevant Principles Of Mexican And Canadian Law Regarding Trade Secret Misappropriation ............................................................ 3

    C.    MGAE de Mexico ................................................................................ 4

    D.    MGA Canada ........................................................................................ 6

    E.    Mattel's Investigations And Other Actions Involving These Former Employees .............................................................................. 7

ARGUMENT .................................................................................................... 9

I.    THE TRADE SECRET CLAIMS BASED ON ACTS OCCURRING OUTSIDE OF THE UNITED STATES SHOULD BE DISMISSED PURSUANT TO RULES 12(B)(6), 56 AND THE DOCTRINE OF FORUM NON CONVENIENS ................................................................ 9

    A.    The Court Lacks Personal Jurisdiction Over MGAE de Mexico ....... 10

    B.    The Court Should Dismiss The Claims Involving Conduct In Mexico And Canada Under The Doctrine Of Forum Non Conveniens ....................................................................................... 12

II.    ALTERNATIVELY, SUMMARY ADJUDICATION ALSO SHOULD BE GRANTED AS TO THE MEXICAN AND CANADIAN TRADE SECRET CLAIMS ................................................ 17

    A.    Mattel Does Not Have Standing To Sue For Trade Secrets It Does Not Own .................................................................................. 18

        1.    The Disputed Trade Secrets in Mexico Were Owned By Mattel Servicios ....................................................................... 18

        2.    The Disputed Trade Secrets in Canada Were Owned by Mattel Canada ......................................................................... 20

    B.    Mattel Cannot Meet Its Burden Of Proving Trade Secret Misappropriation In Mexico And Canada ........................................ 21

        1.    Mattel Cannot Shown That The Information Taken In Mexico or Canada Was Protectable Trade Secrets ................. 22

        2.    Mattel Cannot Prove Use Of Any Trade Secrets In Mexico or Canada ................................................................... 23

        3.    The Mattel Parties Have Failed To Show Harm To Them Nor Benefit To MGA Or MGAE Mexico From Any Alleged Use ...................................................................... 25

III.    THE REMAINING STATE LAW CLAIMS ARE PREEMPTED BY THE CUTSA (SIXTH THROUGH TWELFTH CLAIMS) ....................... 25

CONCLUSION ............................................................................................... 26

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*Brayton Purcell LLP* v. *Recordon & Recordon,*
    575 F.3d 981 (9th Cir. 2009)................................................................. 11

*CVD, Inc.* v. *Raytheon,*
    769 F.2d 842 (1st Cir. 1988) .......................................................... 23, 24

*Check n Go of Virginia* v. *Lassere,*
    2005 U.S. Dist. LEXIS 16591 (W.D. Virginia).................................. 18

*Contract Lumber Co.* v. *P.T. Moges Shipping Co. Ltd.,*
    918 F.2d 1446 (9th Cir. 1990).............................................................. 14

*Dole Food Co.* v. *Watts,*
    303 F.3d 1104 (9th Cir. 2002)......................................................11, 13

*Gibson-Homan Co.* v. *Well-Tite, Inc.,*
    1992 U.S. Dist. LEXIS 21900 (C.D. Cal. 1992) ............................... 24

*Gulf Oil Corp.* v. *Gilbert,*
    330 U.S. 501 (1947) ........................................................................... 14

*Home Ins. Co.* v. *Dick,*
    281 U.S. 397 (1930) ........................................................................... 14

*Ingram Micro, Inc.* v. *Tessco Communications, Inc.,*
    2002 WL 1290197 (C.D. Cal. May 6, 2002) ...................................... 10

*JustMed, Inc.* v. *Byce,*
    2010 U.S. App. LEXIS 6976 (9th Cir. April 14, 2010) ...................... 24

*Kasel* v. *Remington Arms Company,*
    24 Cal. App. 3d 711 (1972).................................................................. 14

*Keeton* v. *Hustler Magazine, Inc.,*
    465 U.S. 770 (1984) ........................................................................... 10

*Koster* v. *Lumberments Mut. Cas. Co.,*
    330 U.S. 518 (1947) ........................................................................... 13

*Menken* v. *Emm,*
    503 F.3d 1050 (9th Cir. 2007)............................................................. 12

*Piper Aircraft Co* v. *Reyno,*
    454 U.S. 235 (1981).............................................................................. 13

*Scharmer* v. *Carrollton Manufacturing,*
    1973 U.S. Dist. LEXIS 13796 (N.D. Ohio) ....................................... 18

*Schwarzenegger* v. *Fred Martin Motor Co.,*

# TABLE OF AUTHORITIES
## (continued)

Page(s)

374 F.3d 797 (9th Cir. 2004) .................................................................. 10

*Sinochem Int'l. Co. Ltd.* v.. *Malaysia Int'l Shipping*,
549 U.S. 422 (2007) ............................................................................ 12

*Sun Media Systems, Inc.* v. *KDSM, LLC*,
564 F. Supp. 2d 946 (S.D. Iowa 2008) .............................................. 23

*Terracom* v. *Valley Nat. Bank*,
49 F.3d 555 (9th Cir. 1995) ................................................................ 12

*Therapeutic Research Faculty* v. *NBTY, Inc.*,
488 F. Supp. 2d 991 (E.D. Cal. 2007) ................................................ 22

*Univ. Computing Co.* v. *Lykes-Younstown Corp.*,
504 F.2d 518 (5th Cir. 1974) .............................................................. 24

*Van Schijndel* v. *Boeing Co.*,
434 F. Supp. 2d 766 (C.D. Cal. 2006) ................................... 12, 13, 14

*Venango River Corporation* v. *Nipsco Industries, Inc.*,
1994 U.S. Dist. LEXIS 17898 (N.D. Ill.) ........................................... 18

*Vivendi SA* v. *T-Mobile USA Inc.*,
586 F.3d 689 (9th Cir. 2009) .............................................................. 12

## STATUTES

Cal. Civ. Code
§ 3426.7 ............................................................................................. 25

Federal Rules of Civil Procedure
Rule 12(b)(2) ........................................................................................ 1
Rule 12(b)(6) ...................................................................................... 11
Rule 56(a) ....................................................................................... 1, 2
Rule 56(d) ....................................................................................... 1, 2

## OTHER AUTHORITY

Schwartzer, Tashima & Wagslatte, Cal. Proc. Guide: Fed. Civ. Pro Before
Trial 4:886 (The Rutter Group 2010 .................................................. 12

OHS West:260895591.16

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

## NOTICE OF MOTIONS AND MOTIONS

PLEASE TAKE NOTICE that on June 7, 2010 at 8:30 a.m. before the Honorable David O. Carter, Presiding, in Courtroom 9D, 411 West Fourth Street, Santa Ana, California 92701, Counter-defendants MGA Entertainment, Inc. ("MGA"), MGAE de Mexico S.R.L. de C.V. ("MGAE de Mexico), MGA HK Ltd. ("MGA HK"), Isaac Larian ("Larian") (collectively, the "MGA Parties"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6) and 56 will, and hereby do, move to dismiss and move for summary adjudication of the Third Claim of Mattel's Fourth Amended Answer and Counterclaims ("FAAC") for the reasons and on the grounds set forth below.  Furthermore, the MGA Parties will, and hereby do, move to dismiss the Sixth to Twelfth Claims pursuant to Federal Rules of Civil Procedure 12(b)(6).

To wit:  MGA moves to dismiss with prejudice the Third Claim of the FAAC to the extent it alleges misappropriation of trade secrets in Mexico and Canada on the basis of *forum non conveniens*.  MGA moves pursuant to Rule 56(a) for summary adjudication of the Third Claim of the FAAC on the ground that Mattel cannot prove that MGA acquired Mattel trade secrets in Mexico or Canada through improper means, that MGA wrongfully used or disclosed Mattel trade secrets, that Mattel cannot prove ownership of such trade secrets, and that Mattel cannot prove damages resulted from any alleged trade secret misappropriation.  In the alternative, MGA moves pursuant to Rule 56(d) that the Court find that Mattel cannot prove the required elements as to each of the purported trade secrets identified by Mattel. MGA further moves to dismiss with prejudice the Sixth through Twelfth Claims of the FAAC (Intentional Interference with Contract; Breach of Fiduciary Duty; Aiding and Abetting Breach of Fiduciary Duty; Breach of Duty of Loyalty; Aiding and Abetting Breach of Loyalty; Conversion; and Unfair Competition) on the ground that the claims are preempted by the California Uniform Trade Secrets Act

and claims of conversion cannot be predicated upon the conversion of intangible property.

MGA de Mexico moves to dismiss moves to dismiss with prejudice the Third Claim to the extent it alleges misappropriation of trade secrets in Mexico and Canada on the basis of *forum non conveniens*. MGA de Mexico moves pursuant to Rule 56(a) for summary adjudication of the Third Claim of the FAAC on the ground that this Court lacks personal jurisdiction over it, and on the grounds that Mattel cannot prove that MGA de Mexico acquired Mattel trade secrets in Mexico or Canada through improper means, that MGA de Mexico wrongfully used or disclosed Mattel trade secrets, that Mattel cannot prove ownership of such trade secrets, and that Mattel cannot prove damages resulted from any alleged trade secret misappropriation. In the alternative, MGA de Mexico moves pursuant to Rule 56(d) that the Court find that Mattel cannot prove the required elements as to each of the purported trade secrets identified by Mattel. MGA de Mexico further moves to dismiss with prejudice the Eleventh and Twelfth Claims of the FAAC (Conversion and Unfair Competition) on the ground that the claims are preempted by the California Uniform Trade Secrets Act and claims of conversion cannot be predicated upon the conversion of intangible property.

Larian moves pursuant to Rule 56(a) for summary adjudication of the Third Claim of the FAAC on the ground that Mattel cannot prove that Larian acquired Mattel trade secrets in Mexico or Canada through improper means, that Larian wrongfully used or disclosed Mattel trade secrets, that Mattel cannot prove ownership of such trade secrets, and that Mattel cannot prove damages resulted from any alleged trade secret misappropriation. In the alternative, Larian moves pursuant to Rule 56(d) that the Court find that Mattel cannot prove the required elements as to each of the purported trade secrets identified by Mattel. Larian further moves to dismiss with prejudice the Sixth through Twelfth Claims of the FAAC (Intentional Interference with Contract; Breach of Fiduciary Duty; Aiding

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

and Abetting Breach of Fiduciary Duty; Breach of Duty of Loyalty; Aiding and Abetting Breach of Loyalty; Conversion; and Unfair Competition) on the ground that the claims are preempted by the California Uniform Trade Secrets Act and claims of conversion cannot be predicated upon the conversion of intangible property.

The foregoing motions are based on the attached Memorandum of Points and Authorities ("MPA"), the accompanying Separate Statement of Undisputed Facts and Conclusions of Law, the Kieckhefer Declaration, the Huerta Bleck Declaration, and Exhibits, the Request for Judicial Notice, the Compendium of Alleged Trade Secret Documents, and the Appendix of Previously Marked Exhibits filed herewith, the papers and pleadings filed in this action as referenced by docket number in the MPA, and any other and further evidence and argument submitted prior to or at the hearing on the motions

Dated:    May 10, 2010

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP

By: /s/ Annette L. Hurst
ANNETTE L. HURST
Attorneys for MGA Parties

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

As set forth in the accompanying motions, the MGA Parties are entitled to dismissal and/or summary adjudication of the RICO claims and the U.S.-based trade secret claims. There is no reason why this Court should involve itself further in the remaining trade secret claims which are centered in Mexico and Canada. These claims involving foreign entities—Mattel de Mexico and MGAE de Mexico in Mexico, and Mattel Canada and MGA Canada in Canada—are already pending elsewhere. The conduct giving rise to the claims occurred in Mexico and Canada, and under choice of law rules, should be determined under Mexican and Canadian law. Indeed, it appears that Mattel may seek to litigate the Mexican claims here in order to avoid substantial limitations of Mexican law—including a ruling by the Mexican courts that there was no evidence of misappropriation by Isaac Larian.

To emphasize this point, Mattel has instituted actions in Mexico and Canada based *on the exact same conduct at issue here.* Mattel and Mattel de Mexico can, and have, availed themselves of the judicial systems of the home countries to these disputes. But MGAE de Mexico (and the other counter-defendants) are hampered in defending themselves in the United States based on Mexican claims. That fact was underscored this week when Mattel informed MGA that it was filing a motion to have Pablo Vargas, an important witness, deposed in Mexico. Vargas has been under Mattel's control for some time as Mattel has offered to "pardon" him in Mexico for his testimony. If Mattel cannot get Vargas here for deposition, the problems the Court and parties will face in getting non-parties to attend a trial will be insurmountable.

Mattel's foreign claims should be dismissed for several reasons. First, the Court lacks personal jurisdiction over MGAE de Mexico. Part I(A), *infra.* Second, even if the Court had jurisdiction over the parties and claims here, it should dismiss under established principles of *forum non conveniens.* Part I(B), *infra.* Finally,

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

Mattel and Mattel Mexico have failed to prove the necessary elements of a claim of trade secret misappropriation involving the foreign conduct. Most significantly, neither Mattel nor Mattel Mexico own the purported trade secrets at issue—these alleged trade secrets are owned by two other Mattel entities who are not parties to this action, Mattel Servicios and Mattel Canada.

## STATEMENT OF FACTS

A.   <u>Mattel's Mexican And Canadian Operations.</u>

Mattel operates around the world through numerous foreign subsidiaries. Mattel Inc. is the parent company and is located in El Segundo, California. FAAC ¶ 9. Mattel operates at least two subsidiaries in Mexico, Mattel Servicios, S.A. de C.V. ("Mattel Servicios") and Mattel de Mexico, S.A. de C.V. ("Mattel Mexico")[1]. UF # 327, 328. Mattel Servicios is a separate corporate entity that is incorporated under the laws of Mexico with its principal place of business in Mexico City. UF # 328. Mattel de Mexico also is a separate corporate entity that is incorporated under the laws of Mexico with its principal place of business in Mexico City. UF # 327.

---

[1] Fact cite conventions used in this MPA are as follows: cites to the docket in the consolidated actions are abbreviated as "Dkt. #    "; cites to facts and supporting evidence set forth in the MGA Parties and IGWT 826 Separate Statement of Uncontroverted Facts and Conclusions of Law ("Sep. St.") are abbreviated as "UF #    "; deposition and trial testimony excerpts are attached as exhibits to the Declaration of L. Kieran Kieckhefer in Support of MGA Parties and IGWT 826 Motions for Summary Adjudication, abbreviated as "LKK Decl. Ex.    " with the witness names following the exhibit letter in parentheses; written discovery responses and documents not previously marked as exhibits are attached as exhibits to the LKK Declaration; previously marked deposition exhibits other than the alleged trade secret documents are included in the Appendix of Previously Marked Exhibits, abbreviated as "App. Ex."; and all trade secret materials identified by Mattel in its Supplemental Response to Interrogatory No. 20 are included in the Compendium of Alleged Trade Secret Documents, abbreviated as "T.S. Comp. Ex.," including previously marked exhibits that fall within this category.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

3    353.  Mexican law requires companies to share a certain percentage of their profits

4    each year with their employees.[2]

8        Mattel also operates a subsidiary in Canada, Mattel Canada Inc.  Request for

9    Judicial Notice ("RFJN") Ex. 6.  Mattel Canada Inc. is a business entity organized

10   and existing under the laws of Toronto, Ontario.  *Id.*

15   **B.    Relevant Principles Of Mexican And Canadian Law Regarding
16         Trade Secret Misappropriation.**

17       In Mexico, there is no civil claim for misappropriation of trade secrets.

18   Declaration of Alberto Huerta-Bleck.  ¶ 3.  There is a criminal statute for theft of

19   industrial secrets, but the elements of that claim are significantly different than a

20   claim for violation of the California Uniform Trade Secrets Act.  *Id.* ¶¶ 4-10.  For

21   example, under Mexican law, to be protectable, a trade secret must be clearly

22   designated as such with a confidential legend and the secrets must be reflected in

23   documents or electronic files – information in one's head does not qualify.  Huerta-

24   Bleck Decl. ¶ 9.  There is also no Mexican equivalent for breach of fiduciary duty,

25   breach of loyalty, or tortious interference with contract.  *Id.* ¶¶ 11-21.

26

27

28   ---
     [2] Ley Federal del Trabajo [L.F.T.] [Federal Labor Law], *as amended*, Articulo 127,
     Diario Oficial de la Federacion [D.O.], 1 de abril de 1970 (Mex.)

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
                                                              AND FOR SUMMARY ADJUDICATION

C.   **MGAE de Mexico.**

Prior to September 2004, MGA distributed its products in Mexico through Hasbro.  UF # 301.  In late 2003, MGA decided that it would be more efficient for it to sell its products in Mexico directly, so MGA sought to establish a subsidiary in Mexico to do that.  UF # 298-302.  To recruit employees to run the Mexican subsidiary, MGA asked Susana Kuemmerle, who, at the time was an independent contractor assisting MGA with distribution in Mexico, to help locate employees for the soon-to-be established MGA de Mexico.  LKK Decl. Ex. 19 (Kuemmerle Depo.) at 1960:21-23.

Kuemmerle, who had previously worked at Tyco Toys in Mexico, approached her past colleague Gustavo Machado to see if he was interested in coming to MGA Mexico.  LKK Decl. Ex. 19 (Kuemmerle Depo.) at 335:20-336:6. At the time Machado was employed by Mattel Servicios in Mexico City as the Boys Marketing Manager.  UF # 330.  Machado then asked two friends at Mattel, Mariana Trueba, the Girls Marketing Manager, and Pablo Vargas, the Trade Marketing Manager, if they were interested.  LKK Decl. Ex. 20 (Machado Depo.) at 2156:2-18.  All three decided to apply for positions with MGAE de Mexico.  *Id.* 2156:24-2157:2.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

7        Beginning in April 2004 upon their departure from Mattel Servicios,

8   Machado, Vargas and Trueba were employed by MGAE de Mexico.  UF # 298,

9   339, 345.  At first, MGAE de Mexico had no offices and they worked from

10  Machado's apartment.  LKK Decl. Ex. 20 (Machado Depo.) at 2067:14-25.  Later

11  they were officed in Mexico City at MGAE de Mexico's offices.  UF # 308, 311,

12  314.  At the time of their hire by MGAE de Mexico, and throughout the time they

13  were employed by MGAE de Mexico, all three were residents of Mexico.  UF #

14  307, 310, 313.  All three received their paychecks from MGA de Mexico and held

15  positions with MGA de Mexico.  LKK Decl. Ex. 20 (Machado Depo.) at 2306:10-

16  23.  From April 26, 2004 to 2006, neither Machado nor Trueba nor Vargas held

17  positions with MGA (U.S.) or had any duties or responsibilities to MGA (U.S.).

18  LKK Decl. Ex. 20 (Machado Depo.) at 744:3-746:5.

19        Upon agreeing to work for MGAE de Mexico, Machado, Trueba and Vargas

20  were all required to sign a contract stating that they would not use at MGAE de

21  Mexico any privileged information that they had from their prior employer,

22  including any industrial secrets that they may have had access to by virtue of their

23  prior jobs.  UF # 335-336, 341-342, 347-348.  Contrary to MGAE de Mexico's

24  instructions, Machado, Vargas and Trueba apparently did collect documents prior

25  to their departure from the employ of Mattel Servicios and Machado kept them on

26  his personal computer.  UF # 304-306.  There is no evidence MGA or Larian asked

27  these individuals to take documents from Mattel or knew that they had done so at

28  the time.  UF # 335, 341, 347.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

**D.   MGA Canada.**

MGA Canada is a pre-existing entity organized and existing under the laws of Canada with its principal place of business in Toronto. UF # 435.

MGA Canada hired Janine Brisbois in October 2005. UF # 437. Brisbois worked for Mattel Canada in Toronto between August 1999 and September 2005, taking a maternity leave from May 2004 to May 2005. UF # 430. MGA Canada first contacted Brisbois in mid-2004, when it was looking to fill an opening in its Canada sales department. LKK Decl. Ex. 12 (Goveia-Gordon Depo.) at Goveia-Gordon 1351:6-10. Brisbois had been suggested as a potential candidate by a Wal-Mart Canada sales executive. *Id.* at 1351:4-1352:1; 1356:20-1357:3; 291:19-292:9. Brisbois told MGA Canada that she had just begun her maternity leave and was uninterested in shortening that leave to come back to work. *Id.* at 1353:9-1354:17; LKK Decl. Ex. 5 (Brisbois Depo.) at 366:17-368:5.

A year later, in mid-2005, MGA Canada again needed a new salesperson. LKK Decl. Ex. 12 (Goveia-Gordon Depo.) 1386:21-1387:3. MGA Canada tried one more time, reaching out to Brisbois in September 2005. *Id.* at 1388:3-16; 1396.1:24-1396.3:6. This time, Brisbois expressed interest in the position. *Id.* at

Depo.) at 364:17-365:20. Upon joining MGA Canada, Brisbois was instructed orally and signed an employment agreement requiring her not to bring anything with her from Mattel Canada. UF # 438.

AND FOR SUMMARY ADJUDICATION

E.   **Mattel's Investigations And Other Actions Involving These Former Employees.**

Upon discovering that Machado, Vargas and Trueba took what Mattel claims was "virtually every category of Mattel's sensitive and trade secret business plans and information for the Mexican market" (FACC ¶ 3), and knowing that they would soon be working for MGA in Mexico, Mattel did not contact any of the three of them to tell them that Mattel knew they took this information and demand that it be brought back.  In Mexico, Mattel filed its complaint with the Mexican Attorney

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1   General on April 6, 2005—twelve months after these individuals resigned and long

2   after Mattel's investigation found evidence of theft—but just one day before the

3   statute of limitations ran.  UF # 325.

4       In 2006, the Mexican court denied Mattel's request for an arrest warrant

5   against Machado, Trueba and Vargas, finding insufficient evidence of theft of

6   industrial secrets.  UF # 324.  The Mexican tribunal also denied Mattel's request for

7   an arrest warrant against Isaac Larian and Jahangir Makabi, as representatives of

8   MGA de Mexico, for alleged use of stolen industrial secrets, finding no evidence of

9   any such use by MGA.  *Id.*  Mattel eventually obtained an arrest warrant in 2007

10  against Machado, Trueba and Vargas through an appeal, but the appellate court

11  affirmed the lower court's ruling denying an arrest warrant against Larian and

12  Makabi finding no evidence—not even circumstantial evidence—of use or

13  disclosure of Mattel information by MGA.  *Id.*  ("What is actually proved in the file

14  is that the industrial secrets at issue were taken, but there is no proof of the

15  information contained therein having in any manner been used by principals or

16  third parties . . . there is no proof that any officer from MGAE de Mexico already

17  knew about that information, let alone its use.")  The criminal action against the

18  three individuals is still pending in Mexico.  UF # 326.  Mattel has conceded,

19  however, that it has the power to have charges dropped at any time and that it is in

20  discussions with Vargas to do just that in return for favorable testimony.  LKK

21  Decl. Ex. 29 (Tiburcio Depo.) at 3798:19-3799:15.

22      In Canada, Mattel learned within a month of Brisbois' departure that she had

23  transferred files to a portable device.  Mattel did not confront her with its Mattel's

24  findings.  On September 21, 2007, Mattel Canada Inc. filed a Statement of Claim

25  and Notice of Action against Janine Brisbois, MGA Entertainment (Canada)

26  Company and MGA Entertainment (Inc.) in the Ontario Superior Court of Justice

27  (Court File No. 07-CV-340468 PDI) for contract and tort damages.  RJN Ex. 6.

28  Mattel Canada Inc.'s claims for damages are based on the identical factual

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

allegations pertaining to Janine Brisbois and MGA Canada that Mattel Inc. has brought in the instant action and concern purported breaches of fiduciary duty and theft of trade secrets. *Id.* The Canada case is pending.

**ARGUMENT**

**I.** **THE TRADE SECRET CLAIMS BASED ON ACTS OCCURRING OUTSIDE OF THE UNITED STATES SHOULD BE DISMISSED PURSUANT TO RULES 12(B)(6), 56 AND THE DOCTRINE OF FORUM NON CONVENIENS.**

Mattel alleges that three former employees of its *Mexican* subsidiary stole trade secrets *in Mexico* related to the *Mexican* toy market and brought those trade secrets to MGA's *Mexican* subsidiary *in Mexico*. Both Mattel *and* its Mexican subsidiaries filed a complaint *in Mexico* with the *Mexican* authorities against MGAE de Mexico and Isaac Larian, based upon the very same alleged theft of trade secrets *in Mexico*. Indeed, the section of Mattel's FAAC involving the alleged conduct of Machado, Vargas and Trueba is entitled "MGA Steals Mattel Trade Secrets *In Mexico.*" (emphasis added). FAAC at 36. The other day, Mattel moved for a protective order to require the MGA Parties and Machado to go *to Mexico* for the deposition of Pablo Vargas, claiming it is inconvenient for him and he is unwilling to travel to the United States for his deposition (let alone his trial testimony). LKK Decl. Ex. 100 (email from opposing counsel re anticipated filing). A theme has developed: these claims should be litigated *in Mexico*.

Similarly, in Canada, Mattel *Canada*, who is not a party here, has an action pending *in Canada* against MGA *Canada*—again, not a party here—and Brisbois based on the exact same conduct at issue here, which Mattel concedes all occurred *in Canada*. In its complaint in Canada, Mattel Canada claims it owns, in whole or in part, all of the trade secrets allegedly taken by Brisbois in Canada. RFJN Ex. 6. The Canadian complaint also makes clear that the purported trade secrets were taken for use by MGA *Canada* in the *Canadian* market. *Id.* These claims should be litigated *in Canada*.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

## A.   The Court Lacks Personal Jurisdiction Over MGAE de Mexico

Summary adjudication should be granted dismissing MGAE de Mexico from the trade secret misappropriation claim for lack of personal jurisdiction.

Personal jurisdiction may be either general or specific.  For general jurisdiction to apply to a non-resident defendant, a defendant "must engage in 'continuous and systematic general business contacts'. . . that 'approximate a physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F. 3d 797, 801 (9th Cir. 2004) (citations and internal quote omitted).  No basis exists for a finding of general jurisdiction over MGAE de Mexico.  MGAE de Mexico serves the Mexican market and engages in no business in the United States; let alone continuous and systematic business.  MGAE de Mexico's only connection to the U.S. is that its parent is located there.  Under established law, that connection alone provides insufficient minimum contacts with this forum.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984) ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary.  Each defendant's contacts with the form state must be assessed individually." (citations omitted)); *see also Ingram Micro, Inc. v. Tessco Communications, Inc.*, 2002 WL 1290197 at *2 (C.D. Cal. May 6, 2002) (dismissing the case based on lack of jurisdiction over the defendant and noting that the defendant in the case was a separate subsidiary, independent from its parent and sister companies' forum contacts).

Nor is MGAE de Mexico subject to specific jurisdiction in this forum.  Specific jurisdiction exists where:  (1) the defendant "purposefully direct[s] his activities or consummate[s] some transaction with the forum" or "perform[s] some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) "the claim . . . [is] one which arises out of or relates to the defendant's forum-related activities;" and (3) the exercise of jurisdiction is reasonable in that it

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

"comport[s] with fair play and substantial justice . . . ." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). None of these three factors support the exercise of jurisdiction here.[3]

To establish the first element, "purposeful direction," the plaintiff must show that the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *See Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 986 (9th Cir. 2009). None of these conditions exist here. Mattel cannot prove that MGAE de Mexico engaged in any intentional conduct that was purposefully aimed at California. MGAE de Mexico was formed to serve the Mexico toy market. UF # 299. Mattel concedes that the three individuals' conduct in removing documents from Mattel was done solely in Mexico, and there is no evidence that any agent of MGA Entertainment, Inc. in the U.S. procured the removal of those documents—to the contrary, the undisputed fact is that they were instructed in writing not to remove any documents. UF # 335, 341, 347. There is no evidence that any alleged use of any trade secret by MGAE de Mexico was aimed at Mattel's U.S. business or that MGAE de Mexico knew that Mattel would likely suffer harm in the U.S., and none whatsoever that it did suffer any harm in the United States based on the alleged misappropriation by Machado, Vargas and Trueba.[4] UF # 316-319, 321.

Since MGAE Mexico had no forum related activities, it cannot be the case that the conduct arose out of such activities. Indeed, the claim here arises out of

---

[3] In denying MGAE de Mexico's Rule 12(b)(6) motion regarding personal jurisdiction, the Court found that Mattel had at least pled sufficient facts to demonstrate purposeful availment by MGA de Mexico. Dkt. #577 at 30. Discovery has now confirmed, however, that the allegations relied upon by the Court cannot be proven. Moreover, the fact that Mattel has now included Mattel Mexico as a plaintiff only bolsters the fact that this is a dispute between Mexican companies and Mexican residents that occurred in Mexico and should, therefore, be located there.

[4] To survive an earlier jurisdictional challenge Mattel relied on the allegation that MGA Mexico induced these individuals to take Mattel trade secrets. That allegation also cannot be proven.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

activities conducted solely in Mexico. The information taken by Machado et al was taken in Mexico. The proximate causation element of specific jurisdiction requires a "but-for" relationship between the contacts and the claim. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007); *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995). Mattel cannot hope to establish that here.

Finally, the exercise of jurisdiction over MGAE de Mexico on claims brought here does not comport with any notion of fair play. Through this suit, Mattel seeks to apply California's trade secrets law to conduct by three Mexican employees in Mexico. Mexican law has substantially different requirements and limitations. *See, generally*, Huerta-Bleck Decl. Indeed, Mattel admits that there is no civil claim for trade secret misappropriation in Mexico. Mattel and Mattel Mexico are seeking to circumvent the limitations of Mexican law. That tactic surely *offends* fair play.

**B.    The Court Should Dismiss The Claims Involving Conduct In Mexico And Canada Under The Doctrine Of Forum Non Conveniens**

MGAE de Mexico and MGA Entertainment, Inc. also move to dismiss the foreign claims of Mattel Inc. and Mattel Mexico on the ground of *forum non conveniens*.

Under the doctrine of *forum non conveniens*, a court has the discretion to dismiss or stay an action when the balance of public and private interests weigh in favor of litigating the dispute in a foreign country. *Sinochem Int'l. Co. Ltd. v.. Malaysia Int'l Shipping*, 549 U.S. 422, 429 (2007). Further, the showing required for dismissal under this doctrine is reduced when, as here, the plaintiff (or cross-complainant) is a foreign resident. *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 693 (9th Cir. 2009). "The bottom line is suits by foreign plaintiffs in federal court on claims arising outside the U.S. are likely to be dismissed on forum non conveniens grounds." SCHWARZER, TASHIMA & WAGSLATTE, CAL. PROC. GUIDE: FED. CIV. PRO BEFORE TRIAL 4:886 (The Rutter Group 2010); *see also Van Schijndel v. Boeing Co.*, 434 F.Supp.2d 766, 775 (C.D. Cal. 2006) (dismissing the

NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY ADJUDICATION

case on forum non conveniens grounds and noting "in the case of a foreign plaintiff, the choice of forum 'deserves less deference' than that of a citizen plaintiff, and therefore less showing is required to obtain a forum non conveniens dismissal." (citing *Piper Aircraft Co v. Reyno*, 454 U.S. 235, 256 (1981)).

To establish that the chosen forum is improper, defendants can either: "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent; or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumberments Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). "Whether such a showing has been made is determined by an analysis of the so-called 'private' and 'public' interest factors." *Van Schijndel*, 434 F. Supp. 2d at 774.

The first step of the *forum non conveniens* analysis is Defendants' showing that an alternative forum is available. *Dole Foods Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir 2002). Here the availability of alternative forums is unquestionable.[5] Two actions in other *fora* are already pending. Mattel Canada has already brought an identical trade secret claim against MGA Canada and Brisbois *in a Canadian court*. If this action against MGA is dismissed in favor of Canada and Mattel Canada seeks to join it in the Toronto proceeding, MGA fully expects that it will promptly establish under Canadian law that it is not liable for the acts of its subsidiary. Meanwhile, in Mexico, the Mattel entities are pursuing criminal actions against the former Mexican employees in Mexico. UF # 324-326. And there, Larian has *already* established that he doesn't belong in the litigation. *Id.*; LKK Decl. Ex. 95 (Mexican Appellate Order). Mattel is like a pinball bouncing between these various jurisdictions in an effort to hit the highest value target. This Court should put a stop to that conduct.

---

[5] It is irrelevant that the foreign country may apply substantive laws that are less favorable. *Piper Aircraft Co.*, 454 U.S. 233.

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1    The next part of the test requires the examination of private interest factors.

2    These include: "(1) the relative ease of access to sources of proof; (2) residence of

3    the parties and witnesses; (3) availability of compulsory process for attendance of

4    witnesses; (4) costs of bringing willing witnesses and parties to the place of trial;

5    (5) access to physical evidence and other sources of proof; (6) enforceability of

6    judgments; and (7) all other practical problems that make trial of a case easy,

7    expeditious and inexpensive." *Van Schijndel*, 434 F. Supp. 2d at 775 (citing *Gulf*

8    *Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Contract Lumber Co. v. P.T. Moges*

9    *Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990)).

10    Collectively, all factors weighs heavily in favor of having the respective

11    Canadian and Mexican claims tried in their respective home jurisdictions.  First and

12    most significantly, even were the claims to proceed here, they would have to

13    proceed under Mexican and Canadian law, respectively.  Under the Restatement 2d

14    of Conflict of Laws, "the rights and liabilities of the parties with respect to an issue

15    in tort are determined by the local law of the state which, with respect to that issue,

16    has the most significant relationship to the occurrence and the parties . . ." *See*

17    *Kasel v. Remington Arms Company*, 24 Cal. App. 3d 711, 730 - 731 (1972) (noting

18    that California follows the Restatement formula, while emphasizing the the place

19    where the relationship, if any, between the parties is centered); *see also Home Ins.*

20    *Co. v. Dick*, 281 U.S. 397, 408 (1930) (holding that application of Texas law to

21    void a limitation of action clause in an insurance policy violated due process

22    because: (i) the policy had been issued in Mexico; (ii) to a Mexican citizen; (iii)

23    covering a Mexican risk; and (iv) the insurer was also Mexican).  At bottom, the

24    place where the relationship of Mattel Mexico, MGA Mexico, Mattel Canada and

25    MGA Canada are centered are in their home jurisdictions.

26    Undoubtedly, Mattel desires that U.S. law govern because in Mexico, there is

27    no civil claim for misappropriation of trade secrets.  Huerte-Bleck Decl ¶3.  There

28    is a criminal statute for theft of industrial secrets, but that the elements of that claim

- 14 -

1   is significantly different than a claim for violation of CUTSA. *Id.* ¶4-10. For

2   example, under Mexican law, to be protectable, a trade secret must be clearly

3   designated as such with a confidential legend and the secrets must be reflected in

4   documents or electronic files – information in one's head would not qualify. *Id.* at

5   9. There is also no Mexican equivalent for breach of loyalty or tortious

6   interference. Declaration of Huerta Bleck ¶¶ 11-21. As a result, employees'

7   conduct in Mexico, which would not otherwise subject them to civil liability, is

8   now being questioned under a law none of these employees agreed to be bound by

9   or expected would apply to their actions.

10        The same is true of the claims related to Brisbois and her departure from

11  Mattel Canada for employment at MGA Canada. Nowhere in Mattel's allegations

12  do they assert a relationship between Brisbois, Mattel Canada or MGA Canada with

13  a California entity. Rather, the assertions are that Brisbois, as a Mattel Canada

14  employee, left Mattel Canada with Mattel Canada trade secrets and went to work

15  for MGA Canada. FAAC ¶ ¶ 57-59. Despite the fact that there is no evidence that

16  Brisbois used Mattel Canada information while at MGA Canada, even if she had, it

17  would be subject to Canadian, not California law. Conceding this fact, Mattel

18  Canada has filed suit in Canada against MGA Canada and Brisbois concerning her

19  actions in Canada. RFJN Ex. 6.

20        Moreover, each of the current employees with knowledge of the claims reside

21  in the respective countries and the information purportedly accessed and taken are

22  also located in the respective countries. And that is not even to discuss the former

23  employees of all of the respective entities, with whom no one has any connection

24  and many of whom possess relevant information. For example, MGAE de Mexico,

25  MGA and Larian have no way to compel MGAE de Mexico's former employees to

26  come and testify that they never used anything from Mattel that was in the

27  possession of Machado, Vargas and Trueba. It is extremely difficult to prove a

28  negative under the best of circumstances, requiring the testimony of numerous

1   witnesses. Mattel's scattershot allegations make the problem extremely difficult

2   here, since they identify no specific acts taken by MGAE de Mexico that they claim

3   resulted from use of particular trade secrets. Meanwhile, MGAE de Mexico laid off

4   many of its employees. UF # 303. When MGAE de Mexico's 30(b)(6) witness

5   sought to interview its former employees, several refused even to be interviewed for

6   fear of reprisal by Mattel. Convincing them to appear voluntarily in the U.S. would

7   be impossible. That leaves counter-defendants trying to dispel a gauzy web of

8   innuendo. The only decent means of doing so is with clear and specific denials

9   from everyone who knew the accused and worked alongside them in the Mexican

10  workplace, but MGA, MGAE de Mexico and Larian have no means of procuring

11  such testimony.

12        In contrast, Mexico and Canada each have the ability to compel the

13  attendance of their own citizens for purposes of investigating the claims and

14  compelling their attendance in those countries is far less expensive and time

15  consuming than requiring them to be present in the United States. Indeed, as noted

16  above, Mattel will be filing a motion to force MGA *to take the deposition of Pablo*

17  *Vargas in Mexico.* LKK Dec. Ex. 100 at 5958. Apparently Vargas won't appear

18  for deposition, let alone trial, in the United States—despite the fact that he is

19  cooperating with Mattel.

20        Moreover, any foreign judgment would also be more easily enforceable in the

21  jurisdictions where the purported wrongs occurred against the entities that allegedly

22  committed the acts. On the other hand, one only need look to the difficulties in

23  having these witnesses appear for deposition in the United States to conclude that

24  the foreign jurisdictions are better suited for those claims. Finally, the instant

25  action is already filled with overbroad and burdensome claims against MGA. UF #

26  356 - 426. Insisting that a trial move forward against foreign entities will only

27  serve to make the trial far more complicated, more time consuming and more

28  expensive. Accordingly, the Court should dismiss the claims involving Mexican

- 16 -

and Canadian acts and parties in favor of having those claims litigated in their respective home forums.

## II.   ALTERNATIVELY, SUMMARY ADJUDICATION ALSO SHOULD BE GRANTED AS TO THE MEXICAN AND CANADIAN TRADE SECRET CLAIMS.

If the Court does not dismiss the Third Counterclaim insofar as it is premised upon acts taking place in the Mexican and Canadian *fora*, then it should be dismissed on the merits because Mattel and Mattel Mexico cannot prove essential elements of the claim.

As noted above, Mattel's claim involving the alleged theft of trade secrets in Mexico and Canada must be determined under Mexican and Canadian law, not U.S. law.  Mattel, however, has expressly predicated its claims on California trade secrets law.  (FAAC, Third Counterclaim ¶¶ 36-56).  Under Mexican law, there is no civil trade secrets statute.  Huerta-Black Decl. ¶ 3.  And under Mexican law there is a significant difference in what must be shown from what is permitted under the CUTSA.  *Id.*  Since Mexican law requires trade secrets to be expressly designated to employees as such, and since only a handful of the purported trade secrets at issue in Mexico were so designated, the claim under Mexican law would fail as a matter of law.  Huerta-Bleck Decl. ¶ 11-21.  Indeed, applying Mexican criminal trade secrets law, the court in Mexico has already found that there is insufficient evidence of use by MGA to support a charge against its principals.  UF # 324.  The Mexican court, in fact, found a complete dearth of even circumstantial evidence to support such a claim.  *Id.*

Assuming, *arguendo*, however, that inapplicable California law even applies here, Mattel has failed to meet its burden.

A.     **Mattel Does Not Have Standing To Sue For Trade Secrets It Does Not Own.**

It is axiomatic that a party cannot sue for the theft of trade secrets that it does not own.[6] *Venango River Corporation v. Nipsco Industries, Inc.*, 1994 U.S. Dist. LEXIS 17898 (N.D. Ill.) (summary judgment granted for defendants where plaintiff corporation did not own the trade secrets at issue; plaintiff was managing corporation and sole shareholder of entity that actually owned the secrets.) *Scharmer v. Carrollton Manufacturing*, 1973 U.S. Dist. LEXIS 13796 (N.D. Ohio) (summary judgment granted for defendants where plaintiff shareholder did own the trade secrets of his corporation.)  Absent a valid assignment, a parent corporation does not own the trade secrets belonging to a subsidiary.  *Check 'n Go of Virginia v. Lassere*, 2005 U.S. Dist. LEXIS 16591 (W.D. Virginia) (judgment entered for defendants where damages of plaintiff subsidiary were based on development costs incurred by non-party parent corporation; legal rights of parent and subsidiary corporation are separate; plaintiff must assert own legal rights and interests, and cannot rest claim on legal rights of third parties.)

Here, Mattel and Mattel Mexico have sued for misappropriation of trade secrets owned by two other Mattel subsidiaries—Mattel Servicios and Mattel Canada—who are not parties to this litigation.  FAAC ¶¶ 9-10.  Neither Mattel nor Mattel Mexico having standing to assert these claims.  Moreover, Mattel and Mattel Mexico cannot show that they own the trade secrets they claim were misappropriated.

1.     **The Disputed Trade Secrets in Mexico Were Owned By Mattel Servicios**



NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

**2.    The Disputed Trade Secrets in Canada Were Owned by Mattel Canada**

The alleged theft of trade secrets by Brisbois in Canada presents even greater problems for Mattel.  While Mattel has belatedly – – and ineffectively – – tried to fix its standing problems in Mexico by adding Mattel Mexico, Mattel has made no such effort with Canada.  Mattel Canada has not been and is not now a party to this action.  Neither is MGA Canada a defendant in this action.  Yet again, however, the purported secrets that were taken were not owned by the counterclaimants, but by Mattel Canada.

It is undisputed that Brisbois was employed by Mattel Canada until September 26, 2005, and thereafter became employed by MGA Canada.  UF # 429.

---

[7] The only possible exception is a single document that was generated by Mattel, Inc. that Mattel claims was taken by Trueba.  That document—a viability study—itself, however, addresses the sale of Mattel products in the Mexican market, and, although apparently created in the United States, it was created for use in Mexico by employees of Mattel Servicios.  Moreover, there is no evidence of any use of that document at MGA.  UF # 356(h).

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

1   Mattel Canada and MGA Canada are separate subsidiaries incorporated under the

2   laws of Canada.  At all times relevant to this dispute, Brisbois was a Canadian

3   resident who worked in Toronto, Canada.  At no time was she employed by Mattel,

4   Inc. or MGA (U.S.).  The alleged theft of trade secrets by Brisbois was done

5   entirely in Canada.  The documents taken by Brisbois consist of materials created

6   by Brisbois or by other employees of Mattel Canada.  These documents related to

7   the Canadian toy market.  Moreover, it is undisputed that Brisbois only accessed

8   three of the documents she removed from Mattel.  Two of these—the waterfall

9   chart and calendar—were created by her or people at Mattel Canada that she

10   supervised, the third document had been originally developed at Mattel, but

11   modified by Mattel Canada and it is that modified version that she took and

12   accessed at MGA.

13        In a compelling judicial admission, Mattel Canada—not Mattel Inc.—filed a

14   civil suit in Canada asking for the return of Mattel Canada's trade secrets that

15   "Mattel Canada has invested substantial amounts of money over many years to

16   develop *its* business methods and practices," and it claims it was these methods and

17   practices that were misappropriated.  RJN Ex. 6 (Complaint ¶ 7).  That suit involves

18   the very same purported trade secrets at issue here.  Again, this leaves Mattel

19   lacking on a crucial element of its case:  that it owns the trade secrets it accuses

20   MGA of misappropriating.

21   **B.**      **Mattel Cannot Meet Its Burden Of Proving Trade Secret**
             **Misappropriation In Mexico And Canada.**

22

23        Assuming Mattel and Mattel Mexico can overcome the fundamental problem

24   of not actually being the owners of the purported trade secrets at issue, and

25   assuming California law applies to this foreign conduct and parties, they would

26   need to prove three prima facie elements to survive this motion.  Mattel and Mattel

27   Mexico need to show, with respect to the conduct in Mexico and Canada, that (1)

28   the misappropriated information constitutes legally protectable trade secrets; (2)

1   each of the named defendants "used" the trade secret, and (3) the plaintiff was

2   actually damaged by the misappropriation or the defendant was unjustly enriched

3   by such misappropriation and use.  *Therapeutic Research Faculty v. NBTY, Inc.*,

4   488 F.Supp. 2d 991, 999 (E.D. Cal. 2007).  Mattel and Mattel Mexico cannot prove

5   any of these elements.

6           **1.      Mattel Cannot Prove That The Documents Taken In Mexico**

1  the industry.  UF # 449, 477.  *CVD, Inc. v. Raytheon*, 769 F.2d 842, 852 (1st Cir.

2  1988) (finding that chemical vapor process was well known in scientific

3  community and, thus, not a trade secret).

19  4330:14.  *CVD*, 769 F.2d at 853 (failure to abide by one's own policy of stamping

20  materials confidential significant to finding the information was not a trade secret).

21  Simply telling employees that everything is a trade secret does not allow employees

22  to distinguish between what can be used as one's general knowledge and skills with

23  what is actually a trade secret.

24             2.     **Mattel Cannot Prove Use.**

25        Machado concedes he took documents with him when he left Mattel

26  Servicios, and it appears some of these documents were brought on a CD to MGAE

16   use of these documents at MGAE de Mexico.  UF # 320, 356(h), 357(h); *JustMed,*

17   *Inc. v. Byce,* 2010 U.S. App. LEXIS 6976, * 31-32 (9th Cir. April 14, 2010) (where

18   employee already had possession of trade secrets as an employee, plaintiff must

19   show actual commercial use for claim of misappropriation); *Univ. Computing Co.*

20   *v. Lykes-Younstown Corp.,* 504 F.2d 518, 539 (5th Cir. 1974) ("the defendant must

21   have actually put the trade secret to some commercial use.  The law governing

22   protection of trade secrets essentially is designed to regulate unfair business

23   competition, and is not a substitute for criminal laws against theft."); *Gibson-*

24   *Homan Co. v. Well-Tite, Inc.,* 1992 U.S. Dist. LEXIS 21900, at *10 (C.D. Cal.

25   1992).  Mattel has certainly not shown any use of information that qualifies as a

26   trade secret.  UF # 356(k)-425(k).

[REDACTED]

4   the toy industry.  In short, Mattel has failed to show any use of any trade secrets in

5   Canada by MGA Canada.  And Mattel has not even sued MGA Canada—it sued

6   MGA and MGAE de Mexico.  There is no showing that has been made that MGA

7   or MGAE Mexico used any information taken by Brisbois.

8          **3.     The Mattel Parties Cannot Prove Harm To Them Nor Benefit To MGA Or MGAE Mexico From Any Alleged Use.**

[REDACTED]

14

15          In Canada, presumably the only harm that even potentially would accrue

16   would be to Mattel Canada and the only potential benefit would be to MGA

     Canada—neither of which are parties.  How Mattel intends to establish this

17   requisite element is incomprehensible and certainly has not been shown, despite the

18   extensive discovery provided to Mattel.

19

20   **III.    THE REMAINING STATE LAW CLAIMS ARE PREEMPTED BY THE CUTSA (SIXTH THROUGH TWELFTH CLAIMS).**

21          As detailed in the accompanying motion to U.S.-based claims, and assuming,

22   *arguendo*, the application of California law, each of the remaining claims against

23   the MGA parties arising out of conduct in Mexico or Canada is preempted by the

24   CUTSA, Cal. Civ. Code § 3426.7.

25

26

27

28

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION

## CONCLUSION

For the foregoing reasons, the Court should dismiss those aspects of the Third Counterclaim involving foreign conduct.

Dated:    May 10, 2010

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP


By: /s/ Annette L. Hurst
ANNETTE L. HURST
Attorneys for MGA Parties

NOTICE OF MOTIONS AND MOTIONS TO DISMISS
AND FOR SUMMARY ADJUDICATION