Bingham McCutchen LLP
TODD E. GORDINIER (SBN 82200)
todd.gordinier@bingham.com
PETER N. VILLAR (SBN 204038)
peter.villar@bingham.com
CRAIG A. TAGGART (SBN 239168)
craig.taggart@bingham.com
600 Anton Boulevard, 18th Floor
Costa Mesa, CA  92626-1924
Telephone:  714.830.0600
Facsimile:  714.830.0700

Attorneys for Counter-defendant
OMNI 808 INVESTORS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>　　　　Defendants. | Case No. CV 04-09049 DOC (RNBx)<br>c/w Case Nos. CV 04-09059 & CV 05-2727<br><br><u>Hon. David O. Carter</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OMNI 808 INVESTORS, LLC'S MOTION TO DISMISS MATTEL, INC.'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS**<br><br>Date:   June 7, 2010<br>Time:  8:30 a.m.<br>Place:  Courtroom 9D |
| AND CONSOLIDATED ACTIONS. | **Phase 2**:<br>Discovery Cut-off:　　　TBD<br>Pre-trial Conference:　　TBD<br>Trial Date:　　　　　　　TBD |

A/73355284.14

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................... 1

II.   STATEMENT OF MATTEL'S ALLEGATIONS ........................................ 4

    A.    MGA's Line Of Credit With Wachovia Bank ............................... 4

    B.    Wachovia Declares MGA In Default And Seeks To Sell The
    Distressed Debt To Other Lenders ............................................ 5

    C.    Omni Purchases The MGA Debt From Wachovia .......................... 5

III.  MATTEL HAS NOT MET THE HEIGHTENED PLEADING
BURDEN UNDER RULE 9(B) OR THE TWOMBLY AND IQBAL
"PLAUSIBILITY" STANDARD ........................................................... 7

IV.   MATTEL FAILS TO PLEAD A RICO CONSPIRACY CLAIM
AGAINST OMNI .............................................................................. 8

    A.    Omni's Acquisition Of The Wachovia Credit Facility Cannot
    Be Part Of Mattel's Bratz RICO Enterprise Claim ........................ 9

    B.    Mattel Fails To Allege That Omni Was Aware Of And Agreed
    To Participate In The Bratz RICO Enterprise ............................... 11

        1.    Mattel Has Not Alleged that Omni Was Aware Of The
        Essential Nature And Scope Of The Bratz RICO
        Enterprise ..................................................................... 11

        2.    Mattel Fails To Allege That Omni Agreed To Participate
        In The Alleged RICO Scheme ........................................... 12

    C.    Mattel Has Not Suffered Any Injury-In-Fact Nor Has It
    Sustained  Any Injury That Omni Proximately Caused ................... 14

        1.    Mattel Has Not Sustained An Actual Injury From The
        Alleged Omni Related Conduct .......................................... 14

        2.    Mattel Fails To Plead That Omni's Conduct Proximately
        Caused Mattel's Purported RICO Injury .............................. 17

V.    MATTEL FAILS TO PLEAD A FRAUDULENT TRANSFER
CLAIM AGAINST OMNI .................................................................. 18

    A.    Mattel Fails To Plead A Claim For Actual Fraudulent Transfer
    As To Omni .......................................................................... 19

        1.    Mattel Does Not Allege That MGA Made Any Transfer
        Of Property To Omni ....................................................... 19

        2.    Mattel Does Not Allege Any Harm Resulting From The
        Purported Transfers To Omni ........................................... 22

TABLE OF CONTENTS
(continued)

Page

B.      Mattel Fails To Plead A Claim For Constructive Fraudulent Transfer As To Omni .............................................................23

VI.     MATTEL'S DECLARATORY RELIEF CLAIM AGAINST OMNI SHOULD BE DISMISSED.............................................................25

VII.    CONCLUSION .............................................................25

1
2

# TABLE OF AUTHORITIES

3                                                                           **Page(s)**

4   **FEDERAL CASES**

5   *Alves v. Players Edge, Inc.,*
6       No. 05CV1654 WQH (CAB), 2007 WL 6004919 (S.D. Cal. Aug. 8,
        2007) ........................................................................................................ 12
7
8   *Apparel Art Int'l, Inc. v. Jacobson,*
        967 F.2d 720 (1st Cir. 1992) ............................................................. 10, 11
9
10  *Ashcroft v. Iqbal,*
        129 S. Ct. 1937 (2009) ..................................................................... 3, 7, 8
11
12  *Atkins v. Apollo Real Estate Advisors, L.P.,*
        No. CV-05-4365, 2008 WL 1926684 (E.D.N.Y. Apr. 30, 2008) ...................... 13
13
14  *Baumer v. Pachl,*
        8 F.3d 1341 (9th Cir. 1993) ................................................................ 11
15
16  *Bell Atl. Corp. v. Twombly,*
        550 U.S. 544 (2007) ................................................................. 3, 7, 8, 13
17
18  *Bernstein v. Misk,*
        948 F. Supp. 228 (E.D.N.Y. 1997) ........................................................ 9
19
20  *Canter & Associates, LLC, v. Teachscape, Inc.,*
        No. C 07-3225 RS, No. C 07-3225 RS, 2007 WL 4365480 (N.D. Cal.
        Dec. 12, 2007) ............................................................................... 18
21
22  *Chichester v. Mason,*
        43 Cal. App. 2d 577 (1941) ............................................................... 20
23
24  *Craft v. U.S.,*
        65 F. Supp. 2d 651(W.D. Mich. 1999) .................................................. 20
25
26  *Desoto v. Condon,*
        No. 08-56832, 2010 WL 1141521 (9th Cir. Mar. 24, 2010) ...................... 17, 18
27
28  *Freedom Med. Inc. v. Gillespie,*
        No. 06-3195, 2007 WL 2850589 (E.D. Pa. Oct. 1, 2007) ........................... 12

*Grimmett v. Brown,*
   75 F.3d 506 (9th Cir. 1996) ................................................................................ 15

*Hamid v. Price Waterhouse,*
   51 F.3d 1411 (9th Cir. 1995) ........................................................................ 17, 18

*Hemi Group, LLC v. City of New York, N.Y.,*
   130 S. Ct. 983 (2010) .................................................................................... 15, 17

*Holmes v. Sec. Investor Prot. Corp.,*
   503 U.S. 258 (1992) ........................................................................................ 17

*Howard v. Am. Online Inc.,*
   208 F.3d 741 (9th Cir. 2000) ............................................................................ 9

*In re Jamster Marketing Litigation,*
   No. 05cv0819 JM(CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009.) ......... 14

*In re Ponce Nicasio Broad., L.P,*
   Bankruptcy No. 04-26256-B-7, 2008 WL 361081 (Bkrtcy. E.D. Cal. Feb.
   7, 2008) ............................................................................................................ 19

*In re Unified Commercial Capital,*
   2002 WL 32500567 (W.D. N.Y. June 21, 2002) ............................................. 21

*International Harvester Co. v. Deere & Co.,*
   623 F.2d 1207 (7th Cir. 1980) ........................................................................ 25

*Kaplan v. Reed,*
   28 F. Supp. 2d 1191 (D. Colo. 1998) ......................................................... passim

*Lincoln House, Inc. v. Dupre,*
   903 F.2d 845 (1st Cir. 1990) ....................................................................... 15, 16

*Mangindin v. Wash. Mut. Bank,*
   637 F. Supp. 2d 700 (N.D. Cal. 2009) ............................................................ 25

*Martinelli v. Petland, Inc.,*
   No. CV-09-529-PHX-DGCI, 2010 WL 376921 (D. Ariz. Jan. 26, 2010) ......... 13

*Natomas Gardens Inv. Group LLC v. Sinadinos,*
   No. S-08-2308 FCD/KJM, 2009 WL 1363382 (E.D. Cal. May 12, 2009) ........ 11

*Oki Semiconductor Co. v. Wells Fargo Bank,*
   298 F.3d 768 (9th Cir. 2002) ...........................................................13, 17

*Quantum Technology Partners II, L.P. v. Altman Browning and Co.,*
   No. 08-CV-376-BR, 2008 WL 4525769 (D. Or. Oct. 2, 2008) ..................17, 18

*Sedima, S.P.R.L. v. Imrex Co.,*
   473 U.S. 479 (1985) .......................................................................15

*Soloman v. Blue Cross & Blue Shield Ass'n,*
   574 F. Supp. 2d 1288 (S.D. Fla. 2008)..............................................13

*Sunnyside Development. v. Cambridge Display Tech.,*
   No. C 08-01780 MHP, 2008 WL 4450328 (N.D. Cal. Sept. 29, 2008)..............19

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ..........................................................7

*U.S. v. Craft,,*
   535 U.S. 274 (2002) ......................................................................20

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ........................................................7

**STATE CASES**

*In re Holly Hill Med. Ctr., Inc.,*
   44 B.R. 253 (Bkrtcy. Fla. 1984) .....................................................20

**FEDERAL STATUTES**

18 U.S.C. § 1961(1) .........................................................................10

18 U.S.C. § 1962(c) ..........................................................................9

18 U.S.C. § 1964..............................................................................14

**STATE STATUTES**

Cal. Civ. Code § 3439.04...........................................................18, 19, 23

Cal. Civ. Code § 3439.05................................................................18

Cal. Civ. Code § 3439.07..................................................................18

Cal. Civ. Code § 3439.08..................................................................18

**RULES**

Federal Rule of Civil Procedure 9(b) ...............................................passim

## I.    INTRODUCTION

Mattel's claims against newly added defendant Omni 808 ("Omni") in its Fourth Amended Counterclaim ("FAAC") should be dismissed in their entirety. Mattel has not satisfied its burden to plead sufficient facts (as opposed to impermissible legal conclusions accompanied by inflammatory labels) to state any claim for relief.  The fundamental and legally insurmountable defect is that Mattel asserts that Omni's acquisition in September 2008 of a pre-existing loan owed by MGA to a syndicate of banks led by Wachovia Bank was undertaken to frustrate Mattel's ability to enforce a *potential* judgment against MGA (a judgment that it did not have at the time, does not have today, and one that it may never obtain). Mattel's tortured attempt to connect Omni to what is alleged to be a ten year RICO enterprise dating back to 1999 by MGA to steal Bratz from Mattel and to unfairly compete with Mattel ("Bratz RICO Enterprise") is not only legally infirm but is factually unsupportable and logically fallacious.

The claims against Omni are factually deficient and legally defective in at least three fundamental ways.  First, Omni's acquisition of the Wachovia debt in 2008 is not related to the alleged "pattern of racketeering activity" asserted against MGA and others.[1]  Mattel's effort to connect Omni's acquisition of Wachovia's loan to the alleged 10 year Bratz RICO Enterprise fails because it is not connected with or related to the purported "pattern of racketeering" that is the subject of the Bratz RICO Enterprise.  Indeed, as this Court observed in its Order granting

---

[1] Mattel and MGA have been in heated litigation over the rights to the Bratz dolls for over six years.  Over the course of several amended pleadings, Mattel has alleged numerous versions of its RICO theories against MGA, all centered around MGA's alleged Bratz RICO Enterprise (dating back to 1999) to steal the Bratz concept from Mattel.  In its latest RICO theory, Mattel once again alleges a 10 year Bratz RICO Enterprise centered around MGA's alleged theft of Bratz, but this time, Mattel attempts to tack on Wachovia's September 2008 sale and transfer of MGA's pre-existing loan to Omni.

1    Mattel's motion for leave to file the FAAC: "[T]he Omni claims are unique

2    because the purported Omni transaction occurred *after* the vast majority of this six

3    year lawsuit, including the Phase 1 jury trial, had completed." (April 10, 2010

4    Order at 8).

5        Mattel's RICO conspiracy claim against Omni fails for a second,

6    independent reason. Although Mattel has conducted extensive one-sided discovery

7    over the past 14 months that has been "staggering in its scope," including

8    "volumes of documents and dozens of hours of deposition testimony about the

9    purported Wachovia-Omni transaction," (*Id.* at 6-8), Mattel does not and cannot

10   plead any facts at all showing that Omni or its members knew about the Bratz

11   RICO Enterprise, let alone knowingly agreed to join the enterprise. These

12   essential allegations are missing from Mattel's complaint and render its RICO

13   conspiracy claims fatally deficient.

14       Mattel's RICO conspiracy and fraudulent conveyance claims fail for a third

15   independent reason as well. It has suffered no injury from Omni's acquisition of

16   the Wachovia debt. The hypothetical future injury about which it complains is

17   speculative and may never be incurred at all because it has not obtained an

18   enforceable judgment, has no present right or claim to any of MGA's assets, and

19   may never attain any. "[A] defendant's alleged actions in fraudulently transferring

20   and concealing his assets does not result in an injury to a plaintiff's property until

21   such time as the plaintiff has an actual judgment in hand." *Kaplan v. Reed*, 28 F.

22   Supp. 2d 1191, 1205 (D. Colo. 1998). Because Mattel has no present right to

23   collect on any claims against MGA (and such right may never materialize), any

24   potential future harm that may be caused by the alleged transfer or concealment of

25   MGA's assets is speculative and premature.

26       Unable to allege facts on legally essential issues, Mattel instead

27   impermissibly relies heavily on formulaic assertions accompanied by inflammatory

28   labels and conclusions regarding the familial and social connections between

A/73355284.14                                2

1   members of Omni and MGA. In its recent decisions in *Twombly* and *Iqbal*, the

2   Supreme Court made it clear that such conclusory assertions and labels are not

3   entitled to the assumption of truth and must be disregarded in assessing the

4   sufficiency of a complaint. Stripped of the impermissible labels and conclusions,

5   there is no question that the few factual allegations left in the FAAC do not meet

6   the "plausibility" standard under *Twombly*.

7       Mattel's convoluted conspiracy theory fails the "plausibility" standard

8   because the facts (when stripped of legal conclusions and inflammatory labels) are

9   more compatible with what, in fact, actually transpired, a lawful business

10  transaction to acquire distressed debt. The fact is that Omni's purchase of the

11  Wachovia debt was neither illegal, improper nor harmful to Mattel. Omni and its

12  managing member (Neil Kadisha who has experience purchasing distressed debt)

13  recognized an opportunity to buy distressed debt (which is a common business

14  practice) from Wachovia at a discounted price (approximately 35 cents on the

15  dollar). The most obvious explanation and motivation for anybody, including

16  Omni, to acquire distressed debt at a steep discount is the same for any investor,

17  bank or financial institution which acquires distressed debt at a discount -- i.e., to

18  make a profit on the investment by collecting as much of the balance on the loan as

19  possible. This is neither wrongful nor illegal and cannot form the basis of a RICO

20  conspiracy or fraudulent conveyance claim, and is a more plausible and obvious

21  explanation for Omni's acquisition of the Wachovia debt than the conspiracy

22  theory alleged by Mattel.

23      Although Omni's acquisition of the Wachovia loan has not caused any

24  injury to Mattel, its legally improper motivation for adding Omni as a defendant to

25  the Bratz RICO Enterprise claim is abundantly clear from its Declaratory Relief

26  claim: to jump in front of the line to gain priority over a senior secured creditor.

27  Had Wachovia held onto the loan itself, as the senior secured lender in MGA's

28  assets, Wachovia would have priority to MGA's collateralized assets with rights

1   senior to any potential unsecured judgment creditors.  In purchasing the debt from

2   Wachovia, Omni merely stepped into the shoes of Wachovia -- it has not claimed

3   any greater or lesser rights than Wachovia had as the senior secured lender.

4        Mattel's attempt to connect alleged conduct to avoid the enforcement of a

5   potential judgment from a 10 year RICO enterprise is specious.  Omni's

6   acquisition of the Wachovia debt was a business opportunity created by

7   Wachovia's decision to foreclose on its debt.  Neither Wachovia's business

8   decision to sell the debt nor Omni's business decision to buy it, is related in any

9   way to MGA's allegedly illegal business conduct, nor does it bear any rational

10  relation to the pattern of alleged racketeering activity for the alleged Bratz RICO

11  Enterprise.

12       The abuse of process here is Mattel's premature attempt to leap ahead of the

13  rights of MGA's senior secured lender through this action and be put in a better

14  position than it would have been had Wachovia retained the loan itself.  Mattel

15  should not be permitted to abuse and manipulate the judicial process to gain

16  priority rights over a prior secured creditor through baseless and tenuous RICO

17  allegations and through Mattel's grinding process of litigation.

18  **II.     STATEMENT OF MATTEL'S ALLEGATIONS**

19       **A.     MGA's Line Of Credit With Wachovia Bank**

20       On October 27, 2006, MGA obtained a $200 million line of credit (later

21  increased to $400 million) from a syndicate of banks led by Wachovia Bank (the

22  "Credit Facility").  (FAAC ¶ 97.)  The Credit Facility was secured by a security

23  interest in all of MGA's inventory and accounts receivable (no security interest

24  was granted in MGA's intellectual property).  (*Id.*)  As of December 2007, MGA

25  had borrowed $313 million from the Credit Facility.  (*Id.*)  Mattel's FAAC does

26  not allege that the Credit Facility was invalid and does not and cannot dispute that,

27  as a result, Wachovia was MGA's senior secured lender with perfected security

28  interests in MGA's inventory and accounts receivable.

1    **B.    Wachovia Declares MGA In Default And Seeks To**

2    **Sell The Distressed Debt To Other Lenders**

3        On July 21, 2008, Wachovia declared the Credit Facility to be in default and,

4    pursuant to the Credit Agreement, Wachovia demanded full and immediate

5    payment of the entire unpaid $313 million loan balance.  (FAAC ¶ 98) (Request for

6    Judicial Notice "RJN," Ex. A.)  Wachovia also "swept" away nearly $26 million in

7    MGA's bank accounts and notified all of MGA's customers that further payments

8    should be made directly to Wachovia.  These actions taken by MGA's senior

9    secured lender, as authorized under the Credit Agreement, put additional financial

10   strain on MGA.

11       During this same time, Wachovia and the syndicate of banks (like many

12   banks and institutional lenders) faced its own financial difficulties due to the

13   faltering economy and the nationwide (and worldwide) tightening of the credit

14   markets.  Wachovia sought to increase its own liquidity, and eliminate costs and

15   uncertainty, by selling the distressed debt.  This alternative also had the potential of

16   benefiting MGA if the new lender were willing to work with MGA to renegotiate

17   the terms of the Credit Facility and/or to allow MGA sufficient time to come in

18   compliance with the loan covenants.

19   **C.    Omni Purchases The MGA Debt From Wachovia**

20       As part of MGA's and Wachovia's efforts to find a lender to purchase the

21   MGA debt, MGA's CEO, Isaac Larian, eventually approached Neil Kadisha, the

22   Managing Partner of a diversified investment firm, Omninet Capital, LLC, who

23   has substantial experience evaluating and investing in distressed debt and

24   distressed companies.  (FAAC ¶ 99.)

25       After evaluating the transaction, Mr. Kadisha recognized that the purchase

26   of this distressed debt at a discounted price could be a profitable investment, and

27

28
A/73355284.14                                    5

Mr. Kadisha assembled a group of investors for the purpose of acquiring the Credit Facility from Wachovia. (FAAC ¶ 100.)[2]  On July 29, 2008, Mr. Kadisha made an offer to purchase the Credit Facility, including the outstanding debt obligations, from Wachovia for approximately $110 million (representing 35% of the $313 million principal amount of the debt obligations outstanding as of the acceleration date). (FAAC ¶ 102.)  A special purpose entity, Omni 808 Investors, LLC, a California limited liability company ("Omni"), was created in August 2008 to acquire the Credit Facility. (FAAC ¶ 103.)

On September 3, 2008, Omni and Wachovia entered into a written Master Assignment and Exchange Agreement whereby Wachovia assigned approximately $291.5 million of its interest in the Credit Facility to Omni for a payment of approximately $110 million, with Wachovia retaining an approximately $22 million priority loan. (FAAC ¶ 106) (RJN, Ex. B.)  In connection with Omni's agreement to acquire the distressed debt from Wachovia, Omni (as the new lender) and MGA (as the debtor) also agreed to work in good faith to negotiate a loan "workout" and restructure the Credit Facility. (FAAC ¶ 107) (RJN, Ex. C.) Because Wachovia (as the original lender) was not a party to the agreement between MGA and Omni, this agreement was documented in the "Side Letter Agreement" that was executed contemporaneously with the Master Assignment and Exchange Agreement. (*Id.*)

As a result of Omni's acquisition of the Credit Facility, Omni stepped into and presently stands, as successor-in-interest, in the position of Wachovia as the senior secured lender under the Credit Facility, foreclosure was averted, Wachovia

---

[2] While the FAAC devotes a lot of space to describing the relationships between Larian, Kadisha and the other Omni members, Mattel does not and cannot allege that these relationships were improper, unlawful or, most importantly, caused any harm to Mattel.

A/73355284.14

1    returned the $26 million in cash it previously swept away from MGA's bank

2    account, Wachovia halted its default remedies, and MGA was given an opportunity

3    to negotiate a loan workout to cure its existing default under the Credit Agreement.

4    (RJN, Ex. C.)

5    **III.**    **MATTEL HAS NOT MET THE HEIGHTENED PLEADING**

6          **BURDEN UNDER RULE 9(b) OR THE *TWOMBLY* AND**

7          ***IQBAL* "PLAUSIBILITY" STANDARD**

8        Where, as here, a complaint alleges claims that sound in fraud, the factual

9    allegations must satisfy the heightened pleading standards of Federal Rule of Civil

10    Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.

11    2003) (citations omitted).[3] To satisfy Rule 9(b), fraud claims must specify "the

12    who, what, when, where, and how of the misconduct charged" (*Vess*, 317 F.3d . at

13    1106) (internal citations omitted), and must specify "the role of [each] defendant[ ]

14    in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65

15    (9th Cir. 2007) (citations omitted).

16        In addition to the heightened pleading requirements of Rule 9(b), plaintiffs

17    must also meet the "plausibility" standard established under *Bell Atl. Corp. v.*

18    *Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950

19    (2009). In *Twombly* and *Iqbal*, the Supreme Court clarified a plaintiff's burden to

20    plead sufficient facts (not conclusions and labels) to state a "plausible" claim for

21    relief, and established a two prong approach for analyzing the sufficiency of a

22    plaintiff's allegations on a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1950. First,

23    courts are to identify and disregard the non-factual, conclusory allegations and

24

25    [3] This Court previously held, in ruling on Mattel's motion for leave to file the

26    FAAC, that Mattel "need[s] to comply with the heightened pleading standards of
      Rule 9(b), as most of Mattel's claims related to the Wachovia-Omni transactions

27    allege fraud." (April 10, 2010 Order at 7) (Docket No. 7712.)

28

1    labels in the complaint that are "not entitled to the assumption of truth." *Id.*; *see*

2    *also Twombly*, 550 U.S. at 570.  Next, after stripping the complaint of its

3    conclusory allegations and labels, courts consider the "factual allegations in [the]

4    complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*,

5    129 S. Ct. at 1951.

6         Determining plausibility is a "context-specific task that requires the

7    reviewing court to draw on its judicial experience and common sense." *Id.* at 1950

8    (citations omitted).  A claim is "plausible" when the factual allegations "allow[]

9    the court to draw the reasonable inference that the defendant is liable for the

10   misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  The

11   plausibility standard requires the complaint to allege facts creating inferences

12   supporting the claim that are more plausible (more persuasive) than competing

13   inferences, and a claim is *not* plausible when the conduct alleged is "compatible

14   with . . . [and] more likely explained by, lawful . . . behavior." *Id.* at 1950 (citing

15   *Twombly*, 550 U.S. at 567 (determining that plaintiff's conspiracy claim was not

16   plausible because there was "an obvious alternative explanation").)

17        As shown below, Mattel's claims against Omni, stripped of their conclusory

18   assertions and inflammatory labels, fail to plead sufficient facts with enough

19   particularity to satisfy either Rule 9(b) or the "plausibility" standard under

20   *Twombly* and *Iqbal*.

21   **IV.   MATTEL FAILS TO PLEAD A RICO CONSPIRACY CLAIM**

22   **AGAINST OMNI**

23        The FAAC does *not* name Omni as a RICO defendant under its RICO claim

24   (1st Counterclaim).  Nor does it allege that Omni committed <u>any</u> of the alleged

25   predicate acts that form the basis of Mattel's RICO claim.  Instead, Mattel

26   impermissibly names Omni as an alleged co-conspirator in its RICO conspiracy

27   claim (2nd Counterclaim).  Mattel's RICO conspiracy claim against Omni fails as

28   a matter of law and should be dismissed for three independent reasons.  <u>First</u>, the

A/73355284.14                                                    8

1  allegations against Omni are not related to the purported Bratz RICO Enterprise

2  and do not constitute a "pattern of racketeering activity" in furtherance of the

3  alleged Bratz RICO Enterprise. <u>Second</u>, Mattel fails to allege facts showing that

4  Omni was aware of and agreed to participate in the Bratz RICO Enterprise. <u>Third</u>,

5  Mattel has not suffered any injury from the Omni-Wachovia transaction.

**A.    Omni's Acquisition Of The Wachovia Credit Facility**

**Cannot Be Part Of Mattel's Bratz RICO Enterprise Claim**

8  The allegations against Omni are not "related" to the purported Bratz RICO

9  Enterprise. To plead a claim for violation of RICO, Mattel must allege "a pattern

10  of racketeering activity." 18 U.S.C. § 1962(c). "Establishment of a pattern

11  'requires the showing of a ***relationship*** between the predicates and of the threat of

12  continuing activity.'" *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir.

13  2000) (citation omitted) (emphasis added). Predicate acts and allegations that are

14  not "related" to other claimed predicate acts cannot be considered part of a RICO

15  claim. *Id.* at 748-49 (affirming order that predicate acts did not relate to other

16  predicate acts and therefore could not be considered part of the plaintiffs' RICO

17  claim).[4] "'Related' conduct 'embraces criminal acts that have the ***same or similar***

18  ***purposes, results, participants, victims, or methods of commission***, or otherwise

19  are interrelated by distinguishing characteristics and are not isolated events.'"

20  *Howard*, 208 F.3d at 749 (citation omitted) (emphasis added).

21  Mattel alleges that defendants MGA, MGA (HK), MGA Mexico, Larian,

22  Bryant and Machado comprised the Bratz RICO Enterprise and conducted the

23  affairs of that enterprise to steal Bratz and unfairly compete with Mattel through a

---

[4] *See, e.g., Bernstein v. Misk*, 948 F. Supp. 228, 237 (E.D.N.Y. 1997) (where alleged frauds "bear almost no relation to the predicate acts which allegedly injured the plaintiffs, they cannot be properly considered as part of the 'pattern' of racketeering activity").

1   pattern of racketeering that began more than ten years ago (in 1999).  (FAAC ¶

2   123.)  In the latest theory alleged in the FAAC, Mattel has tacked on Omni's

3   acquisition of the Wachovia Credit Facility in 2008 to its Bratz RICO Enterprise

4   and alleges that this acquisition was allegedly undertaken to "frustrate Mattel's

5   ability to recover from MGA money and property rightfully belonging to Mattel"

6   and to "purportedly obtain priority over Mattel . . . ."  (FAAC  ¶¶ 115, 124(a).)

7        Mattel's attempt to connect alleged conduct to avoid the enforcement of a

8   potential judgment from a 10 year RICO enterprise is logically fallacious and

9   legally unsupportable.  Omni's acquisition of the Wachovia debt was a business

10  opportunity created by Wachovia's decision to accelerate and sell the debt.

11  Neither Wachovia's business decision to sell the debt nor Omni's business decision

12  to buy it, is related in any way to MGA's allegedly illegal business conduct, nor

13  does it bear any rational relation to the pattern of alleged racketeering activity for

14  the alleged Bratz RICO Enterprise.

15       Courts have long recognized such distinctions.  In *Apparel Art Int'l, Inc. v.*

16  *Jacobson*, 967 F.2d 720, 721 (1st Cir. 1992), the plaintiff asserted a RICO claim

17  alleging that defendant fraudulently procured a government contract and that the

18  defendant fraudulently conveyed its assets in order to prevent the plaintiff from

19  reaching those assets to enforce the arbitration award resulting from such conduct.

20  In affirming the dismissal of the claim, the court of appeal held that the fraudulent

21  transfer predicate act was not "related" to the other predicate acts:

22       That conveyance was not part of the conduct aimed at securing the

23       contract, and, according to the complaint, it took place several years

24       later.  If we assume that this activity falls within the scope of a RICO

25       predicate criminal statute, *see* 18 U.S.C. § 1961(1), we nonetheless

26       find the conduct too *un* related- *too* separate, *too* distinct, *too*

27       obviously related to a simple effort to avoid a later court judgment-to

28       permit a finding that, taken together with the earlier acts, it is part of a

1         racketeering "pattern."

2   *Id.* at 724 (citation omitted) (emphasis added).

3         The allegations relating to Omni's acquisition of the Wachovia Credit

4   Facility are not related at all to the alleged Bratz RICO Enterprise.  The alleged

5   theft of Bratz took place in 1999, almost a decade before Omni was formed in late

6   2008.  Furthermore, the alleged Omni-related conduct (i.e., to frustrate the ability

7   of Mattel to collect on a later hypothetical and potential judgment), had a different

8   purpose than any other aspect of the alleged Bratz RICO Enterprise (i.e., to steal

9   Bratz and unfairly compete with Mattel).  The alleged Omni conduct also had

10   different participants and constitutes a single, isolated transaction -- resulting from

11   a business decision undertaken by Wachovia to foreclose on the debt -- entirely

12   unrelated to the alleged Bratz RICO Enterprise.

13         Thus, even as alleged by Mattel, the allegations against Omni are not

14   sufficiently related to the Bratz RICO Enterprise.  Like the alleged transfers to

15   frustrate the arbitration award in *Apparel*, the Omni-Wachovia transaction is

16   simply "too *un* related - *too* separate, [and] *too* distinct, . . . to permit a finding that

17   . . . it is part of a racketeering pattern."  *Apparel*, 967 F.2d at 724.

18       **B.**    **Mattel Fails To Allege That Omni Was Aware Of And**

19            **Agreed To Participate In The Bratz RICO Enterprise**

20          1.    Mattel Has Not Alleged that Omni Was Aware Of The

21              Essential Nature And Scope Of The Bratz RICO Enterprise

22         "[C]onspiracy to violate RICO requires a showing that defendant 'was

23   *aware of the essential nature and scope of the enterprise* and intended to

24   participate in it.'"  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (citation

25   omitted) (emphasis added).  Where a plaintiff fails to allege that a purported co-

26   conspirator had knowledge of the essential nature and scope of the RICO scheme,

27   the RICO conspiracy claims must be dismissed.  *See, e.g., Natomas Gardens Inv.*

28   *Group LLC v. Sinadinos*, No. S-08-2308 FCD/KJM, 2009 WL 1363382, at *19

1  (E.D. Cal. May 12, 2009) (dismissing claims against co-conspirators where

2  plaintiff failed to allege knowledge of RICO conspiracy and an intent to participate

3  in it).[5]  Mattel does not allege any *facts* that Omni was aware of the nature, scope

4  or any details of the purported Bratz RICO Enterprise, and instead relies on

5  conclusory, formulaic statements that Omni had "knowledge" of the alleged RICO

6  scheme.  (FAAC ¶ 130).  Such conclusory assertions are not entitled to the

7  presumption of truth in evaluating the sufficiency of Mattel's claims and does not

8  even come close to satisfying the heightened pleading standard of Rule 9(b) or the

9  plausibility standard which require factual allegations and not conclusory

10  assertions.[6]  In the absence of factual allegations that Omni had knowledge of the

11  alleged Bratz RICO Enterprise, the FAAC does not meet its pleading burden of

12  showing that Omni had knowledge of the purported RICO scheme and intended to

13  participate in it.  *See Freedom Med. Inc. v. Gillespie*, No. 06-3195, 2007 WL

14  2850589, *3 (E.D. Pa. Oct. 1, 2007) (denying motion to add party as RICO

15  conspiracy defendant where "[t]here [was] no allegation that [the party] knew of

16  any alleged fraudulent activity by the other defendants or that he joined or actively

17  participated in any such activity.")

18              2.    Mattel Fails To Allege That Omni Agreed To Participate In The

19                    Alleged RICO Scheme

20        Mattel's RICO conspiracy claim also fails because there is no factual

21  allegation that Omni agreed to participate in the Bratz RICO Enterprise.  "The

---

22

23  [5] *See also Alves v. Players Edge, Inc.*, No. 05CV1654 WQH (CAB), 2007 WL
    6004919, at *13 (S.D. Cal. Aug. 8, 2007) (finding that plaintiffs failed to state a

24  RICO conspiracy claim and "conclud[ing] that Plaintiffs have not plausibly alleged
    that the [defendants] were 'aware of the essential nature and scope of the enterprise

25  and intended to participate in it.'") (citation omitted).

26  [6] Mattel's reliance on such conclusory assertions is particularly revealing given
    that Mattel has subpoenaed tens of thousands of documents from Omni and have

27  taken the depositions of Mr. Kadisha and the other members of Omni.

28

A/73355284.14                                    12

1    essence of a RICO conspiracy claim is that each defendant has *agreed* to

2    participate in the conduct of an enterprise's illegal activities." *Soloman v. Blue*

3    *Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) (emphasis

4    in original).[7]

5         There is no agreement alleged in the FAAC.  Nor can any agreement be

6    inferred from the allegations in the FAAC.  Mattel merely states that Mr. Larian

7    approached Mr. Kadisha in 2008 to purchase MGA's debt from Wachovia and that

8    they assembled their friends together to pool assets to purchase the credit facility.

9    (FAAC ¶ 100.)  Mattel's allegation that the participants in Omni "all have long

10   business and personal relationships with each other apart from that transaction," is

11   no substitution.  (FAAC ¶ 101.)  Without this critical missing allegation, there is no

12   basis to form an inference that Omni agreed to participate in the Bratz RICO

13   Enterprise.

14        Unable to plead a fraudulent agreement or any wrongdoing, Mattel attempts

15   to concoct a fraudulent scheme based solely on the allegation that Mr. Larian's

16   funding of a portion of the purchase of the MGA debt from Wachovia was

17   "disguised" from Mattel.  However, even assuming the truth of these facts for the

18   purpose of this motion, there is *nothing wrong* with Mr. Larian loaning money to

19

20   [7] "An agreement to violate RICO is the essential element of a RICO conspiracy
     claim." *Martinelli v. Petland, Inc.*, No. CV-09-529-PHX-DGCI, 2010 WL
21   376921, at *7 (D. Ariz. Jan. 26, 2010) (citing *Oki Semiconductor Co. v. Wells
     Fargo Bank*, 298 F.3d 768, 774 (9th Cir. 2002)).  "To satisfy [the] pleading
22   requirements for a conspiracy claim, the complaint must include allegations
     'plausibly suggesting (not merely consistent with) agreement.'" *Id.* at *8 (citing
23   *Twombly*, 550 U.S. at 557).  The FAAC does not contain factual allegations but
     instead only conclusory assertions that Omni "agreed to assist" the alleged RICO
24   enterprise, which is insufficient to satisfy Mattel's pleading burden. (*See* FAAC ¶¶
     129-30); *see also Twombly*, 550 U.S. at 557 ("a conclusory allegation of agreement
25   at some unidentified point does not supply facts adequate to show illegality");
     *Atkins v. Apollo Real Estate Advisors, L.P.*, No. CV-05-4365, 2008 WL 1926684 at
26   *15 (E.D.N.Y. Apr. 30, 2008) (dismissing conclusory RICO conspiracy allegations
     that failed to "allege a 'factual basis for a finding of a conscious agreement
27   between the parties.'").

28

1   Omni to purchase the debt from Wachovia.  Given Omni's desire for leverage, the

2   impossibly tight credit market for financing, the compressed time schedule, and the

3   belief that it should maximize MGA's incentive and ability to repay the debt (i.e.,

4   have some "skin at risk"), Omni asked Mr. Larian to finance a portion needed to

5   acquire the debt, which he agreed to do through a business entity known as IGWT

6   826 Investment, LLC ("IGWT").  (FAAC ¶ 105.)  Nor is there anything wrong

7   with Mr. Larian loaning the money to Omni through IGWT or not wanting MGA's

8   competitors to know that he loaned money to Omni to help purchase the debt from

9   Wachovia.  Just as Mattel would assert that MGA has no right to know the details

10   of the sources for every dollar that has been loaned to Mattel over the years, no one

11   involved in the Omni-Wachovia transaction owed any duty to Mattel, a competitor

12   of MGA, to disclose the sources of the funding for the Omni-Wachovia

13   transaction.[8]

### C.   Mattel Has Not Suffered Any Injury-In-Fact Nor Has It Sustained Any Injury That Omni Proximately Caused

#### 1.   Mattel Has Not Sustained An Actual Injury From The Alleged Omni Related Conduct

18   Civil RICO claims may only be pursued by those persons "injured in his

19   business or property by reason" of a criminal RICO violation under § 1962.  18

20   U.S.C. § 1964 (emphasis added).  A RICO plaintiff "only has standing if, and can

---

[8] While Mattel's FAAC relies heavily on inflammatory conclusions and labels (including the liberal use of terms and phrases such as "ill-gotten gains," "defraud," "disguise," "use of fronts," "scheme," "co-conspirators"), "Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers" in place of actual factual allegations.  "The challenge for Plaintiffs is to set forth sufficient allegations to distinguish ordinary business conduct from fraudulent conduct.  Pleading by adjective does not comply with Rule 9(b)." *In re Jamster Marketing Litigation*, No. 05cv0819 JM(CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009.) (granting motion to dismiss RICO claim because plaintiffs' "conclusory allegations were woefully inadequate to state a claim for relief.").

1   only recover to the extent that, he has been injured in his business or property by

2   the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S.

3   479, 496 (1985).  A RICO claim is not ripe for adjudication where the injury is

4   speculative and based on contingent events that have not yet occurred.  *Lincoln*

5   *House, Inc. v. Dupre,* 903 F.2d 845, 847 (1st Cir. 1990) ("the most important

6   consideration in determining whether a claim is ripe for adjudication is the extent

7   to which 'the claim involves uncertain and contingent events that may not occur as

8   anticipated, or indeed may not occur at all'").[9]

9        "[A] defendant's alleged actions in fraudulently transferring and concealing

10   his assets does not result in an injury to a plaintiff's property until such time as the

11   plaintiff has an actual judgment in hand." *Kaplan v. Reed,* 28 F. Supp. 2d 1191,

12   1205 (D. Colo. 1998).  "Prior to obtaining a judgment, a plaintiff's claimed injury

13   is based only on a 'hypothetical inability to recover.'"  *Id.* (citation omitted).

14   Thus, "a judgment creditor who claims that his judgment is uncollectible because

15   of the defendant's conduct ***may not*** pursue the RICO treble damages remedy

16   unless he is first able to show that his right to execute on his judgment has been

17   successfully frustrated."  *Id.* (emphasis added).

18        In *Lincoln House,* the plaintiff (Lincoln) brought a breach of contract action

19   against the defendant in state court.  Lincoln subsequently brought a separate

20   RICO action in federal court against the defendant and his wife on the grounds that

21   the husband fraudulently transferred assets to his wife through a sham divorce to

22   hide assets and prevent Lincoln from reaching such assets if defendant lost the

23   breach of contract case.  *Lincoln House,* 903 F.2d at 845-46.  The district court

---

25   [9] *See also Hemi Group, LLC v. City of New York, N.Y.,* 130 S. Ct. 983 (2010) ("A
    link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."
26   (citation omitted)); *Grimmett v. Brown,* 75 F.3d 506, 517 (9th Cir. 1996) (noting
    that damages are "uncertain" when the injury is "speculative" and "it is not known
27   whether it will occur at all").

1   dismissed the RICO claim and the court of appeals affirmed the dismissal,

2   explaining as follows:

3        Lincoln's alleged injury is clearly contingent on events that may not

4        occur as anticipated or may not occur at all.  The only injury alleged is

5        contingent upon Lincoln's prevailing in its pending state court action

6        … Lincoln does not allege that the [husband's and wife's] purported

7        pattern of racketeering caused damages which Lincoln has already

8        incurred.  Rather, it alleges only that [husband and wife] have engaged

9        in a pattern of racketeering activity to divert the assets of [husband] so

10       that those assets might not be reached by the Lincoln House, Inc., an

11       organization that has a pending claim against [husband] ….

12  *Id.* at 847.

13       Mattel is only a <u>potential</u> judgment creditor at this point; it does not have an

14  enforceable judgment against MGA, and it may never get one.  To have any

15  interest here at all, Mattel must first obtain an enforceable judgment, which is a

16  contingent and hypothetical event. Mattel does not allege that the Omni-Wachovia

17  transaction or any other Omni-related conduct "caused damages" which Mattel

18  "has already incurred."  Rather, the only alleged harm that the Omni-related

19  conduct caused Mattel is the speculative frustration of its hypothetical ability to

20  collect on a hypothetical judgment that it may or may not obtain. [10]  Thus, like the

21  plaintiff in *Lincoln House*, Mattel's injury is speculative at best and contingent on

22

23  [10] Furthermore, even assuming Mattel obtains an enforceable judgment, it could
     attempt to collect on that judgment from MGA.  If MGA satisfied that judgment,

24  Mattel would have suffered no harm from Omni's alleged conduct and would have
     no basis to challenge distributions or the rights of Omni or other creditors.  Only if

25  Mattel was unable to collect on its judgment would it possibly have standing to
     challenge the alleged fraudulent distributions or the rights of other creditors *vis-à-*

26  *vis* MGA assets.  Only in the event that both of these hypothetical and contingent
     events occur would Mattel possibly be injured or damaged by any alleged

27  fraudulent distributions or obligations incurred.

28

1    a series of hypothetical events that may never occur.

2              2.    Mattel Fails To Plead That Omni's Conduct Proximately

3                    Caused Mattel's Purported RICO Injury

4         In addition to its failure to plead that it suffered an injury-in-fact, Mattel has

5    also failed to plead "that the defendants' violation of section 1962 was the

6    proximate cause of their injury." *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419

7    (9th Cir. 1995); *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774

8    (9th Cir. 2002) ("RICO liability requires a direct and proximate causal relationship

9    between the asserted injury and the alleged misconduct"). "'A plaintiff may not

10   sue directly if his injury is derived wholly from an injury to a third party.'"

11   *Quantum Technology Partners II, L.P. v. Altman Browning and Co.*, No. 08-CV-

12   376-BR, 2008 WL 4525769, *14 (D. Or. Oct. 2, 2008) (citing *Holmes v. Sec.*

13   *Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992)). In such circumstances, the

14   plaintiff's injury is "generally said to stand at too remote a distance to recover."

15   *Holmes*, 503 U.S. at 268-69; *see also Hemi*, 130 S. Ct. at 984 (holding that city

16   alleged damages could not meet direct relationship requirement). Mattel has not

17   sufficiently pled this proximate causation requirement against Omni.

18        Mattel's alleged harm arises out of its position as a potential judgment

19   creditor of MGA, and its damage theory hinges upon the wrongful transfer and

20   distributions of MGA's assets. However, creditors of a corporation "generally do

21   not have standing under RICO." *Hamid*, 51 F.3d at 1420; *Desoto v. Condon*, No.

22   08-56832, 2010 WL 1141521, at *1 (9th Cir. Mar. 24, 2010). "'The creditor

23   generally sustains injury only because he has a claim against the corporation. **The**

24   **creditor's injury is derivative of that of the corporation and is not caused**

25   **proximately by the RICO violations**.'" *Hamid*, 51 F.3d at 1420. (quoting

26

27

28

*Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d. Cir. 1993) (emphasis added)).[11]

Mattel's RICO claim based on the Omni-Wachovia transaction is entirely derivative in nature to the alleged wrongful transfer and distribution of MGA's assets. Mattel has not alleged, and certainly cannot prove, any harm relating to this transaction -- let alone any harm that is distinct from that to other creditors. Mattel's fraudulent transfer based claims are entirely derivative of alleged harms suffered by MGA and are the exact same claims and purported injuries that every other creditor or potential shareholder would have. Because Mattel's potential injury is only indirect and is not proximately caused by the alleged Omni conduct, it cannot support a claim under this theory.

## V.  MATTEL FAILS TO PLEAD A FRAUDULENT TRANSFER CLAIM AGAINST OMNI

The FAAC purports to allege two fraudulent transfer counterclaims against Omni: the Thirteenth Counterclaim for avoidance of alleged actual fraudulent transfers (Cal. Civ. Code §§ 3439.04(a)(1), 3439.07, 3439.08), and the Fourteenth Counterclaim for avoidance of alleged constructive fraudulent transfers (Cal. Civ. Code §§ 3439.04(a)(2), 3439.05, 3439.07, 3439.08).[12]

---

[11] Courts consistently dismiss claims of creditors for lack of standing where the harm is derivative of the harm to the corporation. *See, e.g., Hamid*, 51 F.3d at 1420 (affirming dismissal of shareholder/creditor claims for lack of standing); *Desoto*, 2010 WL 1141521, at *1 ("district court properly concluded that the [plaintiff/creditor] lacks RICO standing."); *Quantum Tech. Partners II L.P. v. Altman Browning and Co.*, No. 08-CV-376-BR, 2008 WL 4525769, at *14-15 (D. Or. Oct. 2, 2008) (dismissing RICO derivative claims for lack of standing).

[12] If the Court dismisses Mattel's federal RICO conspiracy claim against Omni, both fraudulent transfer claims must be dismissed on jurisdictional grounds because there would be no basis for supplemental jurisdiction over Mattel's state law claims. *See Canter & Associates, LLC, v. Teachscape, Inc.*, No. C 07-3225 RS, No. C 07-3225 RS, 2007 WL 4365480, at *2 (N.D. Cal. Dec. 12, 2007) (plaintiff's "remaining claims are all brought under state law," and "[u]ntil and unless [plaintiff] can plead a viable claim under federal law, there is no basis to exercise supplemental jurisdiction over those state law claims."). However, even if the Court considers the merits of these claims, they must be dismissed because Mattel has failed to satisfy its pleading requirements. Because Mattel's fraudulent

(Footnote Continued on Next Page.)

1  **A.    Mattel Fails To Plead A Claim For Actual Fraudulent Transfer**
2  **As To Omni**

3    To establish a claim for actual fraudulent transfer, Mattel must allege

4  specific facts showing that: 1) Mattel has a right to payment from MGA for a

5  certain amount; 2) MGA transferred property to Omni; 3) MGA transferred the

6  property with the intent to hinder, delay, or defraud Mattel; 4) Mattel was harmed;

7  and 5) MGA's conduct was a substantial factor in causing Mattel's harm. *See* Cal.

8  Civ. Code § 3439.04(a)(1); CACI 4200; *In re Ponce Nicasio Broad., L.P.,*

9  Bankruptcy No. 04-26256-B-7, 2008 WL 361081, at *7 (Bkrtcy. E.D. Cal. Feb. 7,

10  2008).  Here, Mattel cannot plead the essential elements to its fraudulent transfer

11  claim.

12    1.    Mattel Does Not Allege That MGA Made Any Transfer Of

13         Property To Omni

14    In support of its fraudulent transfer claims, Mattel alleges only two

15  purported acts:  (1) MGA's alleged payment of dividends and distributions to Mr.

16  Larian and/or his trusts (the so-called "Dividend Transfers"); and (2) MGA's

17  purported agreement to grant a security interest in Bratz-related intellectual

18  property to Omni pursuant to the "Side Letter Agreement" (the so-called "IP

19  Transfer").  (FAAC ¶ 207 (a) (b).)  Neither of these purported acts involve

20  transfers of property by MGA to Omni let alone to hinder, delay or defraud Mattel.

21    a.    The Purported "Dividend Transfers"

22

23

24  (Footnote Continued from Previous Page.)

25  transfer claims are premised on purported "fraudulent" conduct, Mattel is required
    to plead them with particularity under Rule 9(b).  *See Sunnyside Development. v.*
26  *Cambridge Display Tech.,* No. C 08-01780 MHP, 2008 WL 4450328, at *8 (N.D.
    Cal. Sept. 29, 2008)  (dismissing fraudulent transfer claim for failure to satisfy
27  Rule 9(b)'s heightened pleading requirement).

28

1      The alleged Dividend Transfers do not involve Omni at all.  Rather, Mattel

2 alleges that MGA paid dividends and distributions <u>to Larian</u> and/or his trusts

3 between 2004 and 2008 (before Omni was even formed).  Indeed, Mattel does not

4 even allege that Omni was aware of any such dividends or distributions, let alone

5 received any of them.  Therefore, the Dividend Transfers cannot support a claim

6 against Omni under the Uniform Fraudulent Transfer Act.

7      Unable to hold Omni liable for the alleged Dividend Transfers from MGA to

8 Larian (before Omni was formed), Mattel instead argues that Mattel should not

9 have paid interest payments on additional funds that Omni loaned to Mattel.

10 Mattel alleges that "Omni 808 executed a Secured Delayed Draw Demand Note

11 (the "Draw Demand Note") with a face value of $40 million, through which <u>Omni</u>

12 <u>808 agreed to provide additional funds to MGA</u> beyond the Wachovia debt

13 purchase."  (FAAC ¶ 112.)  Mattel further alleges "Omni 808 provided MGA $6

14 million in funding under the Draw Demand Note."  (FAAC ¶ 113.)  Mattel does

15 not allege anything wrongful in connection with the additional $6 million in funds

16 loaned by Omni to MGA.  Instead, it complains that MGA should not have paid

17 interest on that loan.[13]  These allegations are specious, have nothing whatsoever to

18 do with the purported Dividend Transfers, and do not remotely support a

19 fraudulent transfer claims against Omni.[14]

20        —————————————

21 [13] Mattel alleges that as part of the Dividend Transfers, MGA paid "purported

22 interest to Larian through his IGWT 8265 entity, and through Omni 808, as discussed at paragraph 113" of the FAAC.

23 [14] Moreover, the payment of interest by a debtor to a creditor cannot form the basis

24 of a fraudulent transfer claim as a matter of law.  Similar to Section 548 of the Bankruptcy Code, the purpose of the UFTA is "to prevent debtors from placing

25 property which legitimately should be available for the satisfaction of demands of creditors beyond their reach . . . ."  *Chichester v. Mason*, 43 Cal. App. 2d 577, 584

26 (1941).  However, "payment of interest, taxes and insurance premiums ***did not constitute fraudulent conveyances*** under the Uniform Act."  *Craft v. U.S.*, 65 F.

27 Supp. 2d 651, 661(W.D. Mich. 1999), *rev'd. on other grounds by U.S. v. Craft*, 535 U.S. 274 (2002) (emphasis added); *see also In re Holly Hill Med. Ctr., Inc.*, 44

28 B.R. 253, 255 (Bkrtcy. Fla. 1984) (holding that interest payments made by debtor

                          (Footnote Continued on Next Page.)

b.    The Purported "IP Transfer"

The alleged "IP Transfer" did not involve a transfer to Omni either.  As explained above, in connection with Omni's agreement to acquire the distressed debt from Wachovia, Omni (as the new lender) and MGA (as the debtor) also agreed to work in good faith to negotiate a loan "workout" and restructure the Credit Facility because MGA was in default under the existing terms of the Credit Agreement, and was unable to immediately pay the $313 loan balance that was due as a result of MGA's default.  Because Wachovia (as the original lender) was not a party to the agreement between MGA and Omni, this agreement to negotiate a workout was documented in an agreement termed as the "Side Letter Agreement" that was executed contemporaneously with the Master Assignment and Exchange Agreement.  (RJN, Ex. C.)  Mattel falsely alleges, in conclusory fashion, that "MGA purported to transfer a security interest in its Bratz-related intellectual property to Omni 808 pursuant to the Side Letter Agreement."  (FAAC ¶ 207(b).)  However, this conclusory allegation is contradicted by Mattel's specific allegations in paragraph 107 of the FAAC and also by the Side Letter Agreement itself (which Mattel references but not coincidentally fails to attach as one of the many exhibits to its FAAC).  (RJN, Ex. C.)

Consistent with the purpose of the agreement, it expressly states that the parties shall "cooperate and work with the other and its representatives in good faith … to negotiate and enter into such amendments to, and such amendments and restatements of, the existing Loan Documents … as will be mutually agreeable in order to restructure the existing credit facilities" including, without limitation, a

--------

(Footnote Continued from Previous Page.)

to third party's creditor were not fraudulent transfers where credit had been extended for benefit of debtor and thus, debtor had received reasonably equivalent value for interest payments); *In re Unified Commercial Capital*, 2002 WL 32500567, at *9 (W.D. N.Y. June 21, 2002) (same).

1   new maturity date, a waiver of existing defaults, and, an expanded collateral

2   package. (*Id.*, at ¶ 7.) **It does not transfer, or purport to transfer, anything to**

3   **Omni**. (*Id.*)

4         Moreover, it does not transfer, or purport to transfer, "a security interest in

5   its Bratz-related intellectual property," as mischaracterized in the FAAC. (FAAC ¶

6   207(b).)  Nor does it purport to transfer any alleged rights of Mattel.  Indeed, as

7   Mattel concedes, the parties agreed to negotiate the potential future additional

8   collateral including "a security interest in substantially all of the personal property

9   assets of each Obligor, including each **Obligor's rights** in intellectual property."

10  (FAAC ¶ 107.)  It is axiomatic that MGA could not transfer rights in Bratz-related

11  intellectual property that the Court determines it does not have.  Section 9-

12  203(b)(2) of the Uniform Commercial Code states that a security interest is only

13  enforceable if the party granting the security interest has rights in the collateral (or

14  the power to transfer rights in the collateral to a secured party).  Mattel simply does

15  not and cannot allege that any transfer of Bratz IP happened and is simply trying to

16  create a controversy where one does not exist.

17         2.   Mattel Does Not Allege Any Harm Resulting From The

18              Purported Transfers To Omni

19         Mattel's fraudulent transfer claim also fails because Mattel does not and

20  cannot allege that it suffered any harm as a result of the purported transfers.  Mattel

21  vaguely alleges that the transfers were "intended to frustrate the Phase 1 jury

22  verdict and Court orders," but notably does not allege that the jury verdict or Court

23  orders, in fact, have been frustrated.  The legally insurmountable problem with

24  Mattel's claim is that it has suffered no legally cognizable injury because it has not

25

26

27

28

1   obtained an enforceable judgment, has no present right or claim to any of MGA's

2   assets, and may never attain any.[15]

3         In addition to being only a potential, hypothetical judgment creditor, Mattel

4   cannot possibly be injured by the Draw Demand Note, ***which resulted in the***

5   ***infusion of $6 million into (not out of) MGA***.  Nor could there possibly be injury

6   to Mattel for making theoretical interest payments arising from the infusion.  There

7   are no allegations that the theoretical interest payments were at an excessive rate in

8   comparison to loans in the industry.  Mattel cannot be injured by the Side Letter

9   Agreement as it is simply an agreement to re-negotiate in good faith a loan

10  workout on a distressed loan and does not purport to transfer any property, nor

11  could MGA grant enforceable security interests to Omni in property that it did not

12  own.  Thus, Mattel's fraudulent transfer claims must be dismissed.

13       **B.    Mattel Fails To Plead A Claim For Constructive Fraudulent**

14             **Transfer As To Omni.**

15        Mattel's constructive fraudulent transfer claim, like its actual fraudulent

16  transfer claim, is based solely on the purported "Dividend Transfers" and "IP

17  Transfer."  (FAAC ¶ 216.)  Therefore, like Mattel's actual fraudulent transfer

18  claim, Mattel's constructive fraudulent transfer claim fails because Mattel has

19  failed to plead any transfer to Omni or any actual harm to Mattel.[16]

20  _____

21  [15] "[A] defendant's alleged actions in fraudulently transferring and concealing his
    assets does not result in an injury to a plaintiff's property until such time as the
22  plaintiff has an actual judgment in hand." *Kaplan*, 28 F. Supp. 2d at 1205.  "Prior
    to obtaining a judgment, a plaintiff's claimed injury is based only on a
23  'hypothetical inability to recover.'"  *Id.* (citation omitted).  Because Mattel has no
    present right to collect on any claims against MGA (and such right may never
24  materialize), any potential future harm that may be caused by the alleged transfer
    or concealment of MGA's assets is speculative and premature.

25  [16] In order to establish a constructive fraudulent transfer claim, like an actual
26  fraudulent transfer claim, Mattel must establish that MGA transferred property to
    Omni and that Mattel suffered harm as a result of the transfer.  In addition, Mattel
27  must allege that MGA did not receive a reasonably equivalent value in exchange
    for the transfer and that MGA was insolvent at the time of the transfer.  Cal. Civ.)

28  A/73355284.14                          23                    (Footnote Continued on Next Page.)

1    In addition, beyond mere *boilerplate* allegations, Mattel fails to plead facts

2   showing that MGA did not receive a reasonably equivalent value in exchange for

3   the purported "transfers" to Omni.  While Mattel alleges that "MGA did not

4   receive any consideration for the Dividend Transfers," Mattel concedes, as

5   explained above, that MGA did not pay any dividends or distributions to Omni.

6   (FAAC ¶ 218.)  Rather, Mattel alleges that Omni made a $6 million loan to MGA

7   and that MGA made "purported interest payments" for the loan.  There is no

8   allegation that these interest payments were "unreasonable" for the amount of the

9   loan.  In fact, the 9% interest rate was the same rate paid to Wachovia under the

10   Credit Facility.  Moreover, while Mattel alleges that "any funds made available to

11   MGA in exchange for the IP Transfer constituted less than reasonably equivalent

12   value," as explained above, there was no transfer of any Bratz intellectual property.

13   (*Id.*)  Therefore, Mattel's speculative and conclusory allegation that any potential

14   funds made in exchange for this non-existent transfer were "inadequate" does not

15   come close to satisfying Mattel's heightened pleading requirement.

16    Mattel's conclusory allegations also do not give rise to any reasonable

17   inference that MGA was either insolvent or about to become insolvent as a result

18   of the Dividend or IP Transfers.  Mattel's bare allegation that "MGA was insolvent

19   or rendered insolvent by the Fraudulent Transfers" is not only unsupported by

20   sufficient factual allegations but it is also specious given that Omni provided

21   millions of dollars of cash to MGA.  (FAAC ¶ 217.)  Indeed, since Omni actually

22   infused capital into MGA, and did not receive any transfer of intellectual property,

23   it is entirely unclear what remedy Mattel is seeking from the Court in connection

24   with its "avoidance of fraudulent transfer" claims.

25   

26   (Footnote Continued from Previous Page.)

27   Code §3439.04(a)(2); 3439.05; CACI 4202.

28

## VI.   MATTEL'S DECLARATORY RELIEF CLAIM AGAINST OMNI SHOULD BE DISMISSED

A complaint seeking declaratory relief must allege (1) facts showing existence of an actual controversy, (2) regarding a matter or claim that is otherwise within federal court subject matter jurisdiction. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). Mattel's declaratory relief claim must be dismissed because the FAAC fails to state a claim against Omni upon which relief can be granted, for the reasons set forth above. Where, as here, a declaratory relief claim is "entirely commensurate with the relief sought through … other causes of action," it is "duplicative and unnecessary" and must be dismissed. *See Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009). Mattel's declaratory relief claim also fails because Mattel cannot establish the existence of an actual controversy, as discussed above. Mattel has suffered no injury from Omni's alleged conduct and is instead seeking an advisory opinion subordinating Omni's rights as a senior secured lender to Mattel's junior rights as an unsecured potential judgment creditor. Accordingly, Mattel's claim for declaratory relief must be dismissed.

## VII.   CONCLUSION

For each of the foregoing reasons, Omni respectfully requests that the Court dismiss each of Mattel's counterclaims against Omni including Mattel's Second Counterclaim; Thirteenth Counterclaim; Fourteenth Counterclaim; and Seventeenth Counterclaim.

DATED:  May 10, 2010                    Bingham McCutchen LLP


                                        By:   /s/  Todd E. Gordinier
                                              Todd E. Gordinier
                                              Attorneys for Counter-defendant
                                              Omni 808 Investors, LLC