# EXHIBIT C

EXHIBIT C - PAGE 70

## SIDE LETTER AGREEMENT

September 3, 2008

OMNI 808 Investors LLC
9420 Wilshire Boulevard, Suite 400
Beverly Hills, California 90212

Re:     Certain additional agreements regarding the purchase of the Assigned Interests by Omni 808 Investors, LLC under the Master Purchase and Exchange Agreement

Ladies and Gentlemen:

Reference is made to (i) that Master Assignment and Exchange Agreement dated as of September 3, 2008 (the "**Master Assignment**"), by and among OMNI 808 Investors LLC, a California limited liability company, as assignee ("**Assignee**"), each of the assignors listed on the signature pages thereof (each an "**Assignor**" and collectively, "**Assignors**"), MGA Entertainment Inc., a California corporation ("**Borrower**"), MGA Entertainment (Mexico), Inc., a California corporation ("**MGA Mexico**") and The Little Tikes Company, an Ohio corporation ("**Little Tikes**" and, collectively with MGA Mexico, the "**Subsidiary Guarantors**"), and Wachovia Bank, National Association ("**Wachovia**"), as agent for the lenders under the Credit Agreement referred to below (in such capacity, "**Agent**"), and (ii) that Credit Agreement dated as of October 27, 2006, as amended (as so amended, the "**Credit Agreement**"), by and among the Borrower, the Assignors and the Agent.

1.     **Intent.** This side letter agreement ("**Side Letter Agreement**") is intended to memorialize certain additional agreements by the Borrower and each Subsidiary Guarantor (collectively, the "**Obligors**") in favor of the Assignee with respect to the Assignee's purchase of the Assigned Interests under the Master Assignment.

2.     **Terms.** Capitalized terms used but not defined in this Side Letter Agreement shall have the respective meanings specified for such terms in the Master Assignment, and if such terms are not defined therein, then as defined in the Credit Agreement.

3.     **Existing Events of Default.** Each Obligor acknowledges and agrees that as of the date hereof, the following Events of Default, among others, have occurred and are continuing under the Credit Agreement:

(a)     The Borrower's failure to comply with the covenant set forth in Section 9.1(a) of the Credit Agreement (fixing a maximum ratio of Total Indebtedness to EBITDA) for each period of four consecutive fiscal quarters ending September 30, 2007, December 31, 2007, March 31, 2008 and June 30, 2008;

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

(b) The Borrower's failure to comply with the covenant set forth in Section 9.1(b) of the Credit Agreement (fixing a minimum ratio of EBITDA to Fixed Charges) for each period of four consecutive fiscal quarters ending December 31, 2007, March 31, 2008 and June 30, 2008;

(c) The Borrower's failure to comply with Sections 8.1 and 8.3 of the Credit Agreement by failing to deliver, within 45 days after the end of the Borrower's fiscal quarter ending March 31, 2008, certified copies of the unaudited consolidated and, if available, consolidating balance sheet of the Borrower and its Subsidiaries as at the end of such period and the related unaudited consolidated and, if available, consolidating statements of income, stockholders' equity and cash flows of the Borrower and its Subsidiaries for such period, accompanied by a signed compliance certificate; and

(d) The Borrower's failure to comply with Sections 8.2 and 8.3 of the Credit Agreement by failing to deliver as soon as available, but in any event within 90 days after the end of the MGA's fiscal year ending December 31, 2007, certified copies of the audited consolidated and, if available, consolidating balance sheet of the Borrower and its Subsidiaries as at the end of such fiscal year and the related audited consolidated and, if available, consolidating statements of income, stockholders' equity and cash flows of the Borrower and its Subsidiaries for such fiscal year, accompanied by a signed compliance certificate.

4. **Certain Remedies.** Each Obligor acknowledges and agrees that each of the Events of Defaults described in Paragraph 3 above is an automatic Event of Default under Section 10.1(c)(i) of the Credit Agreement, entitling the Lenders and Agent to take certain remedial actions against the Loan Parties, which the Lenders and Agent initiated on July 21, 2008, including:

(a) Accelerating the outstanding Loans and all other Obligations owing to the Lenders and Agent under the Loan Documents, whereupon such Loans and other Obligations became immediately due and payable; and

(b) Terminating the Commitments, the Alternate Currency Commitments, the Swingline Commitment and the obligation of the Lenders to make any Loans under the Credit Agreement, of Agent, on behalf of the Lenders, to issue Letters of Credit thereunder, and the Lenders or Agent to make or extend any other credit or financial accommodation pursuant to or under the Credit Agreement and the other Loan Documents.

Each Obligor further acknowledges and agrees that Borrower has not repaid the outstanding Loans or satisfied the other outstanding Obligations, and the failure to repay the Obligations, which, by virtue of the foregoing acceleration, became immediately due and payable, constitutes an additional Event of Default under Sections 10.1(a) and (b) of the Credit Agreement.

5. **No Commitments; Accounting.** Each Obligor further acknowledge, reaffirms and agrees, and represents and warrants to the Assignee that as of the Effective Date, after giving effect to (a) the return of the Proceeds of Remedies to Borrower and Little Tikes as described in Section 2 of the Master Assignment and (b) the purchase and assumption of the Assigned

2

LA1 1246997v.2
A/72639083.2/3001762-0000334318

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

EXHIBIT C - PAGE 72
OMNI0001597

Interest pursuant to the Master Assignment and other Exchange Transaction Documents, as follows: Unless and until Assignee shall have waived in writing in accordance with Section 12.6 of the Credit Agreement all Events of Default then in existence:

(a) The Commitments, the Alternate Currency Commitments and the Swingline Commitment remain terminated under the Loan Documents, and that there is no obligation on the part of Assignee, as the assignee of the Lenders, or of Successor Agent, as the successor to Agent, to make or advance any Loans (including any Swingline Loans), to issue any Letters of Credit or otherwise to extend any credit or other financial accommodation to Borrower or any other Loan Party pursuant to or under the Credit Agreement and the other Loan Documents;

(b) Assignee, as the assignee of the Lenders, and Successor Agent, as the successor to Agent, have reserved all rights and remedies available to them under the Loan Documents and Applicable Law (i) with respect to the existing Events of Default described in Paragraphs 3 and 4 above and (ii) with respect to any Default or Event of Default under any of the Loan Documents which might otherwise exist or which might hereafter occur.

(c) The accounting of the Obligations outstanding and presently due and owing under the Credit Agreement and the other Loan Documents as set forth in Schedule II-A to the Master Agreement and in the Closing Certificate attached hereto as Attachment A is true, accurate and complete; and

(d) All such Obligations owing by Borrower and the other Obligors, in each case together with interest accrued and accruing thereon, and all fees, costs, expenses and other charges now payable by each Borrower to Assignee, as the assignee of the Lenders, or to Successor Agent, as the successor to Agent, are unconditionally owing by Borrower and the other Obligors, without offset, defense, withholding, counterclaim or deduction of any kind, nature or description whatsoever.

6. **Reaffirmation of Loan Documents and Confirmation of Liens.** Each Obligor hereby acknowledges, confirms and agrees that each Loan Document to which it is a party and the Obligations owing or payable thereunder constitute the valid and binding obligations of such Obligor enforceable against such Obligor in accordance with their respective terms, and each such Obligor hereby reaffirms its obligations under such Loan Documents. Each Obligor hereby acknowledges, confirms and agrees that Successor Agent, as successor to Agent, for the benefit of Assignee, as successor to the Lenders, has a continuing valid, enforceable and perfected first-priority security interest in the Collateral described in the Security Documents and other Loan Documents, subject only to Permitted Liens.

7. **Further Assurances.** Each Obligor and Assignor agree that it shall (and shall cause each of its Subsidiaries to) cooperate and work with the other and its representatives in good faith to assist with such legal and other diligence as to which Assignee may reasonably request and to negotiate and enter into such amendments to, and such amendments and restatements of, the existing Loan Documents (including, without limitation, a term loan note, an amended and restated Credit Agreement and an amended and restated Security Agreement) and

3

into such additional Loan Documents as will be mutually agreeable in order to restructure the existing credit facilities described in and evidenced by the Loan Documents substantially in accordance with the following contemplated material terms:

(a) as a non-amortizing term loan (the "Term Loan") having the same stated maturity date as the Termination Date presently set forth in the Credit Agreement and bearing a fixed rate of interest (without giving effect to any default interest) equal to the Base Rate as in effect on the Effective Date plus four percent (4%), *provided* that interest accruing from the Effective Date through February 28, 2009 shall be paid as PIK interest by being added to the principal amount of the Obligations on the first Business Day of the immediately subsequent month;

(b) as having an noncommitted "accordion" provision (the "Accordion Facility") pursuant to which Borrower may request an additional draw-down facility of up to a maximum aggregate amount of $50,000,000 on substantially the same economic terms as the Term Loan (except that all interest shall be cash interest), with each such borrowing under the Accordion Facility to be at the sole discretion of Assignee;

(c) as being secured by a first priority perfected security interest, subject only to Permitted Liens, in not only the current Collateral securing Obligations, but also the following additional Collateral: a security interest in substantially all of the personal property assets of each Obligor, including each Obligor's rights in intellectual property (subject to such nonmaterial exclusions as the parties shall mutually agree and limiting the pledge of the equity in the direct and indirect foreign subsidiaries Borrower to 65% of the outstanding capital stock of each first tier foreign subsidiaries as provided in the current Collateral);

(d) a waiver of all existing defaults; and

(e) such other provisions, including, without limitation, such representations and warranties, affirmative, negative and financial covenants, events of defaults and other provisions as the parties shall, in good faith, mutually agree.

8. **Miscellaneous Provisions.**

(a) **Severability.** Each part of this Side Letter Agreement is intended to be severable. If any term, covenant, condition or provision hereof is unlawful, invalid, or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Side Letter Agreement, then all such remaining parts hereof shall be valid and enforceable and shall have full force and effect as if the invalid or unenforceable part had not been included.

(b) **Amendment.** This Side Letter Agreement may not be amended except by an instrument in writing signed by a duly authorized representative of each of the parties hereto.

4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

EXHIBIT C - PAGE 74
OMNI0001599

(c) **Headings.** The headings contained in this Side Letter Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Side Letter Agreement or any provision hereof.

(d) **Successors and Assigns.** This Side Letter Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including any exhibits hereto, shall be binding upon and shall inure to the benefit of the undersigned parties and their respective successors and assigns.

(e) **Counterparts.** This Side Letter Agreement may be executed and delivered in any number of counterparts, each of which shall constitute an original, but all of which shall constitute but one and the same instrument.

(f) **No Third-Party Beneficiaries.** No Person, organization or association other than the parties hereto shall have any rights, claims or obligations under this Side Letter Agreement. This Side Letter Agreement shall confer no rights upon Borrower or any of its Subsidiaries or Affiliates or any other Person.

*[Signatures follow on the next page.]*

LA1 1246997v.2
A/72639083.2/3001762-0000334318

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

EXHIBIT C - PAGE 75
OMNI0001600

Dated: September 3, 2008

MGA ENTERTAINMENT INC.

Name: ISAAC LARIAN
Title: CEO

MGA ENTERTAINMENT (MEXICO), INC.

Name: ISAAC LARIAN
Title: CEO

THE LITTLE TIKES COMPANY

Name: ISAAC LARIAN
Title: CEO

Acknowledged and consented to:

OMNI 808 INVESTORS LLC

Name: Neil Kadisha
Title: Chief Executive Officer

[SIGNATURE PAGE TO SIDE LETTER AGREEMENT]

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

EXHIBIT C - PAGE 76
OMNI0001601

Dated: September 3, 2008

                          MGA ENTERTAINMENT INC.

                          MGA ENTERTAINMENT (MEXICO), INC.

                          _____
                          Name:
                          Title:

                          THE LITTLE TIKES COMPANY

                          _____
                          Name:
                          Title:

Acknowledged and consented to:

**OMNI 808 INVESTORS LLC**

_/s/ Neil Kadisha_
Name: Neil Kadisha
Title: Chief Executive Officer

[SIGNATURE PAGE TO SIDE LETTER AGREEMENT]

A/72636015.2/3001762-0000334318
LA1 1246997v.2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

EXHIBIT C - PAGE 77
OMNI0001602