MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with: CV 04-9059, CV 05-2727<br><br>**MGA PARTIES' NOTICE OF CROSS-MOTION AND MOTION TO STRIKE AND OPPOSITION TO MATTEL'S "MOTION TO CONFIRM" PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM BASED ON THEFT OF BRATZ AND CROSS-MOTION TO STRIKE ALLEGATIONS OF FAAC REGARDING SAME**<br><br>Date:      TBD<br>Time:      TBD<br>Courtroom: 9D<br>Judge:     Hon. David O. Carter |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF CROSS-MOTION AND CROSS-MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on a date and time to be determined by the Discovery Master, Plaintiffs and Counter-defendants MGA Entertainment Inc., MGA HK Limited, MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, the "MGA Parties" or "MGA") will, and hereby do, cross-move pursuant to Fed. R. Civ. P. 12(f) to strike references in paragraphs 28, 34 and 134 of the Fourth Amended Answers and Counterclaims ("FAAC") to the extent, and because, they reference Bratz as a trade secret and allege that "other former Mattel employees" took Mattel trade secrets, which are not identified, but can be read to include Carter Bryant.

The grounds for this Cross-Motion is that the Court denied Mattel's motion for leave to amend to the extent it sought to identify Bratz-related and Jade trade secrets and ordered an amended pleading in compliance with that order.  Dkt. # 7712.   Mattel's FAAC violates this Order.

This Cross-Motion is based upon this Notice and Motion, the memorandum of points and authorities following herein, the papers and pleadings previously filed with the Court in this action and referenced herein, and such further evidence and argument as may be presented prior to or at the hearing on this Cross-Motion.

1

## CERTIFICATE OF COMPLIANCE

2          Counsel for the MGA Parties informed counsel for Mattel that the MGA

3     Parties would seek the relief set forth above.

4

5     Dated:     May 12, 2010                    Respectfully submitted,

6                                                WARRINGTON S. PARKER III
                                                 Orrick, Herrington & Sutcliffe LLP

7

8                                                By:/s/ *Warrington S. Parker III*

9                                                     Warrington S. Parker III
                                                     Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. TO STRIKE AND OPP. TO MOT. RE BRATZ TRADE
SECRET
CV-04-9049 DOC (RNBx)

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

STATEMENT OF FACTS .......................................................................................... 2

    A.    Mattel Fails To Identify Bratz As A Trade Secret ................................ 2

        1.    Mattel's Pleadings Fail To Identify Bratz As A Trade Secret ........................................................................................ 2

        2.    Discovery Proceedings Confirm That Mattel Does Not Assert Bratz As A Trade Secret .................................................. 4

    B.    Mattel Disavows The Name Bratz As A Trade Secret And Deliberately Waits Until After It Obtains A Verdict In Phase 1 To Assert Bratz As A Trade Secret ...................................................... 6

ARGUMENT .............................................................................................................. 8

I.    MATTEL'S MOTION SHOULD BE DENIED AS AN IMPROPER MOTION FOR RECONSIDERATION AND MGA'S CORRESPONDING MOTION TO STRIKE SHOULD BE GRANTED ....................................................................................................... 8

II.    MATTEL'S ATTEMPT TO INTRODUCE BRATZ AS A TRADE SECRET IS IN BAD FAITH .......................................................................... 9

    A.    Mattel Disavowed Bratz As A Trade Secret, And Mattel's Witnesses Acknowledge That It Is Not A Trade Secret .................... 10

    B.    Mattel's Delay In Asserting Bratz As A Trade Secret Was Intended To Avoid Preemption ........................................................ 11

    C.    MGA Has Not Taken The Discovery Anyway .................................. 13

III.    THE DENIAL WITHOUT PREJUDICE DOES NOT HARM MATTEL ................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ascon Properties, Inc. v. Mobil Oil Co.,*
    866 F.2d 1149 (9th Cir. 1989)..................................................................8, 9

*Axis Imex Inc. v. Sunset Bay Rattan, Inc.,*
    2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ............................................. 10

*Digital Envoy, Inc. v. Google, Inc.,*
    370 F. Supp. 2d 1025 (N.D. Cal. 2005) ............................................. 10

*Gabriel Technologies Corp. v. Qualcomm Inc.,*
    2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) ..................................... 10

*Idema v. Dreamworks, Inc.,*
    162 F. Supp. 2d 1129 (C.D. Cal. 2001).............................................. 10

*School Dist. No. 1J v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993).................................................................7

## STATE CASES

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.,*
    90 Cal. Rptr. 3d 247 (Cal. App. 2009) ..........................................9, 10

*Silvaco Data Sys.,*
    2010 WL 1713241 (Cal. App. Apr. 29, 2010) .....................................9

## FEDERAL STATUTES

17 U.S.C. §301 ................................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND SUMMARY OF ARGUMENT

Mattel's "Motion to Confirm" is a motion for reconsideration in all but name. Mattel asks this Court to scratch out the words "Grants ~~in Part and Denies in Part~~" from the title of the Court's April 10, 2010 Order, as well as the corresponding discussion therein.  The Court clearly ordered that Bratz and Jade as trade secrets are not in the case.  Dkt. # 7712 at 10.  Mattel then flagrantly disregarded that order and included the allegations anyway in paragraphs 28, 34 and 134 of the Fourth Amended Answer and Counterclaims ("FAAC).  Having defied the Court's Order, Mattel now makes a motion to "confirm" that it was entitled to do so.  Notice of Motion at i.

Chutzpah cannot transform the substance of Mattel's motion.  Mattel does not even try to establish that it can meet the standard of Local Rule 7-18(c).  There has been no new fact or intervening change of law, and certainly no clear error, nor does Mattel even make an effort to identify such.  On this basis alone, the "Motion to Confirm" should be denied, and paragraphs 28, 34, and 134 of the FAAC should be stricken.

The merits of the "Motion to Confirm" fare no better.  None of Mattel's pleadings prior to the FAAC identified Bratz as a trade secret—if they had, then the redlined amendments proposed by Mattel would have been wholly unnecessary.  Nor has Mattel ever availed itself of the requisite discovery pleading identifying Bratz as one of its trade secrets as required under California Civil Code Section 2019.210.  Prior to the Phase 1 trial, Mattel expressly disclaimed that Bratz is "proprietary," a word that means trade secret using the parlance of Mattel's form employment agreement.  Unsurprisingly, in light of this history even Mattel's interrogatory responses did not identify Bratz (or Jade) as a trade secret.

It was not until a year after the Phase 1 trial, in Mattel's supplemental responses to interrogatories served *on July 31, 2009*, that Mattel finally purported to

1   identify Bratz as a claimed trade secret.  All of MGA's comments regarding the

2   need for discovery directed to the claim of Bratz as a trade secret were in the

3   context of that interrogatory response.  (MGA has not actually taken that discovery.

4   For example, it has not taken the deposition of Danny Yu in Hong Kong regarding

5   the statute of limitations issue because the claim was not in the case and because of

6   the matters pending for decision in the Ninth Circuit.)

7        The Court was correct to deny Mattel's motion for leave to amend to claim

8   Bratz as a trade secret, although, frankly, the motion could easily have been denied

9   with prejudice.  Among other reasons, Mattel's amendment regarding Bratz as a

10  trade secret was proposed in bad faith.  Mattel *now* wants to claim the name Bratz

11  as a trade secret, when it already told the Court that it was *not* claiming that the

12  name was a Mattel trade secret.  It *now* wants to claim the name as a trade secret

13  when decision makers at the highest levels of Mattel determined at the time that the

14  name Bratz was inconsistent with Mattel's image.  Mattel *now* wants to claim Bratz

15  as a trade secret because it has its Phase 1 verdict in hand and no longer risks

16  complete preemption of the common law tort claims by the California Uniform

17  Trade Secrets Act.  Mattel *now* wants to claim Bratz as a trade secret in order to add

18  to its big-picture strategy of taking two bites at the same apple.

19       The "Motion to Confirm" should be denied.  In fact, the Court should *now*

20  make clear that it is denied with prejudice.

## STATEMENT OF FACTS

**A.**   **Mattel Fails To Identify Bratz As A Trade Secret** .

          **1.**   **Mattel's Pleadings Fail To Identify Bratz As A Trade Secret.**

24  In its original complaint against Carter Bryant filed in April 2004 alleging

25  state law contract and tort claims, there was no claim that Bryant had

26  misappropriated trade secrets at all, let alone in the form of Bratz.  Case No. 2:04-

27  cv-09059 Dkt. # 1.  But, in April 2004, Mattel already knew everything that it now

28

MOT. TO STRIKE AND OPP. TO MOT. RE BRATZ TRADE
SECRET
CV-04-9049 DOC (RNBx)

asserts entitles it to premise a trade secret misappropriation claim on Bratz.[1]  Mattel knew that it had considered using that name for Diva Starz, knew whether Carter Bryant had had access to that proposed name for Diva Starz, knew that Carter Bryant had worked on Bratz at MGA, and certainly knew that MGA had used that name for its doll product.  There is nothing about the passage of an additional six years of time that has materially changed the state of Mattel's knowledge on this subject.

On January 12, 2007, when Mattel filed its Amended Answer and Counterclaims ("AAC"), Dkt. # 143, Mattel again made no mention of Bratz as trade secrets.  By that time, Mattel had already deposed Carter Bryant and many others at MGA.  To be sure, the AAC made a claim for trade secret misappropriation.  But no mention was made of Bratz as a trade secret.  The same is true of the Second Amended Answer and Counterclaims ("SAAC") filed on July 12, 2007, exactly six months later, which is the pleading on which Mattel proceeded to trial in Phase 1.  Dkt. Nos. 635, 636, and unnumbered entry after Dkt. # 640.  Again, no mention of Bratz as a trade secret.  Nor did the Third Amended Answer and Counterclaims ("TAAC") filed on May 22, 2009, mention Bratz as a trade secret.  Dkt. # 5607.

In fact, while each of the amended complaints mention Bratz, they are careful *not* to identify Bratz as a trade secret.  In its AAC, Mattel identified those acts it believed gave rise to its claims against MGA and Carter Bryant for the taking and use of Bratz.  *See, e.g.,* Dkt. # 143 ¶¶ 1, 20, 26.  Mattel's trade secret claims were set apart from its claims relating to Bratz and Bryant.  *See, e.g., id.* at ¶ 20 ("MGA intentionally stole not just specific Mattel property, such as Bratz designs, prototypes, and related materials, *but also* a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure.")

---

[1] Throughout this brief, the MGA Parties use the term "Bratz," unless otherwise specified, to include Mattel's "Bratz-related" trade secrets, including the names Bratz and Jade.

MOT. TO STRIKE AND OPP. TO MOT. RE BRATZ TRADE SECRET
CV-04-9049 DOC (RNBx)

1   (emphasis added).

2        Indeed, although the AAC identified the trade secrets and the persons that

3   took them by name, absent from the list were Bryant and Bratz.  The AAC

4   identified the alleged trade secrets as "Mattel's proprietary business methods,

5   practices and information" that underpin its "infrastructure," specifically the "plans,

6   strategy, and business information" misappropriated from Mattel Mexico, the

7   "contact file" Ron Brawer retained, and the "trade secrets regarding Mattel's

8   customers, sales projects, advertising and strategy" misappropriated from Canada.

9   *Id.* at ¶¶ 20, 41, 68, 70.  Mattel identified the specific individuals it alleged

10  misappropriated trade secrets as Machado, Trueba, Vargas, Brawer and Brisbois.

11  *Id.* at ¶¶ 41, 68, 74.

12       And while the AAC referred to the fact that "Other Former Employees"

13  misappropriated trade secrets, *id.* ¶ 107, no reasonable interpretation of the AAC

14  could read the phrase "other former employees" to include Bryant. The AAC

15  specifically refers to Bryant by name throughout (indeed, the Third and Fifth

16  Counterclaims, which bracket Mattel's trade secret counterclaim, both mention him

17  by name) and identifies the specific conduct attributable to him.   In short, neither

18  Bryant or Bratz were *ever* mentioned *at all* in relation to allegations regarding

19  misappropriation of trade secrets.  *Id.* at ¶¶ 37-77.

20       Mattel's SAAC followed precisely the same pattern.  *See, e.g.,* Dkt. # 635  ¶¶

21  20, 41, 68, 70.  Again, neither Carter Bryant nor Bratz was anywhere associated

22  with the misappropriation of trade secrets.  *Id.* ¶¶ 37-77, 107.  Mattel's TAAC only

23  added Jorge Castilla, who Mattel alleges misappropriated "documents related to

24  inventory management and forecasting" and "future international business

25  strategies and marketing priorities," to the group accused of misappropriating trade

26  secrets.  Dkt. # 5607 at ¶ 84; *see also id.* ¶¶ 44-94, 157.

27

28

MOT. TO STRIKE AND OPP. TO MOT. RE BRATZ TRADE
SECRET
CV-04-9049 DOC (RNBx)

2.    **Discovery Proceedings Confirm That Mattel Does Not Assert Bratz As A Trade Secret.**

Mattel's discovery responses likewise revealed no intention to assert Bratz as a trade secret.  Mattel never served a 2019.210 disclosure.  It purported to identify its trade secrets in a letter dated March 2, 2007.  Dkt. # 7691 (Parker Decl. ¶ 2), Ex. 1.  That blanket identification of a Bates range of documents "containing" trade secrets was grossly overbroad and provided no notice of anything.  But even with that grossly overbroad identification, *none of the documents identified Bratz or any aspect of Bratz as a trade secret*.  Dkt. # 7691 (Parker Decl. ¶ 2), Ex. 1.

Remarkably, despite its obligation to give clear notice of what it is claiming is a trade secret (which under California law would have prevented any discovery on the claim *at all* until it had complied), Mattel now claims that this list which it once asserted satisfied CCP 2019.210 was not complete.  Mot. at 12 n. 35 (the letter "did not purport to include an exhaustive listing of Mattel's trade secrets . . . .")  But the only reservation the letter contained was the fact that additional discovery might disclose additional claims of trade secret misappropriation.  Dkt. # 7691 (Parker Decl. ¶ 2), Ex. 1.  Of course, Mattel long knew by March 2007 of any claimed taking of Bratz.  FAAC ¶¶ 30-31 (Mattel learned about taking of Bratz in 2003).

Shortly after service of the March 2, 2007 letter, Mattel again made statements inconsistent with the notion that it was claiming Bratz as a trade secret.  At a hearing before the Discovery Master on March 19, 2007, Mattel claimed that "the trade secrets that we claim to have misappropriated has [sic] occurred in 2005, 2004, and 2006."  Dkt. # 7691 (Parker Decl.) Ex. 2 at 12.[2]  Since Carter Bryant left Mattel in 2000 and MGA launched the products using the Bratz trademark by 2001,

---

[2] Mattel insists that this reference was intended to convey that Mattel was "merely acknowled[ing] that its trade secret damages were continuing through 2006, not that the claim dated back only to 2004."  Mot. at 12 n. 35.  But this was not what was said.

this assertion precluded any possibility that Mattel was claiming Bratz as a trade secret.  *See* FAAC ¶ 93; Dkt. # 7676 ¶¶ 31-32 (noting that MGA has distributed Bratz since 2001); Trial Tr. at 68:25-69:4 (Mattel's opening statement, noting same).[3]

Nor at any point did Mattel identify in response to interrogatories seeking the identification of trade secrets Bratz as a trade secret until July 31, 2009.  Dkt. # 7691 (Parker Decl.) ¶ 4.

**B.**   **Mattel Disavows The Name Bratz As A Trade Secret And Deliberately Waits Until After It Obtains A Verdict In Phase 1 To Assert Bratz As A Trade Secret.**

Mattel references a *draft* Pretrial Conference Order as proof that the MGA Parties knew that Mattel claimed Bratz as a trade secret.  It cannot point to the actual Pretrial Conference Order because Bratz is not identified as a trade secret in any one of the three versions of that Order that were filed with the Court.  Dkt. # 3470 (Pretrial Conference Order); Dkt. # 3694 (Amended Pretrial Conference Order); Dkt. # 3765 (Amended Pretrial Conference Order).

Not only that, but at the actual Pretrial Conference itself Mattel expressly disavowed the name "Bratz" as a trade secret:  "[W]e have not said that the name Bratz is, quote, *proprietary*, end quote, to Mattel.  That is not the basis of our theory."  Parker Decl. Ex. 1 (5/23/08 Pre-Trial Conf. Tr.) at 79:20-22.  Undoubtedly this statement was made at least in part because Adrienne Fontanella, the former President of Mattel's Girls Division, had testified clearly and explicitly on January 15, 2008 that Mattel had rejected use of the name Bratz as inconsistent with the company's image.

"I and also the Marketing group had a very strong

---

[3] Instead, and consistent with Mattel's claims and identified trade secrets, Mattel's trade secrets related to those necessary to market and commercialize Bratz. According to Mattel, "MGA lacked an appropriate intellectual infrastructure for a company of its size and it became difficult to manage" and so stole trade secrets that enabled MGA to *market and commercialize* Bratz.  *See* AAC ¶¶ 20, 37, 68, 70; SAAC ¶¶ 20, 37, 68, 70; TAAC ¶¶ 27, 44, 75, 84, 88.

> obligation and loyalty to girls to present things that were in—good taste and had—didn't suggest anything negative or not appropriate.  And in looking at the Bratz name I didn't like the idea of what Bratz connoted."

*See* Laura K. Kieckefer Decl. ("LLK Decl.") filed May 10, 2010, Ex. 10 (Fontanella Depo.) at 1257:2-12.  If it is not "proprietary" to Mattel, the name cannot be a trade secret.  Bryant's employment agreement with Mattel contained a provision defining proprietary information.  Paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep *Proprietary Information confidential*."  *See* Dkt. # 4115 at 31 (jury instruction regarding term of Bryant's employment contract) (emphasis added).  In turn, Mattel defines Proprietary Information in precisely the same way—and using the same statutory words—that a trade secret is defined.  *Compare id. with* Cal. Civ. Code § 3426.1(d)(1).[4]

Despite all of the foregoing, Mattel asserts that MGA's objection to trying the trade secret claim in Phase 1 somehow shows that MGA knew what Mattel was claiming.  *See* Mot. at 7.  But Mattel misleadingly omits two of the three reasons given by MGA's counsel for the objection, and in particular omits that MGA objected in part because "they were never informed by Mattel that this claim related to ownership of Bratz."  Dkt. # 3470 at 16-17; Dkt. # 3694 at 16-17; Dkt. # 3765 at 17.  This is precisely the point presently being made—that Mattel never set forth this theory clearly, and in fact made statements inconsistent with it.

Following the Phase 1 trial, even when the MGA Parties called out Mattel as having effectively identified Bratz as a trade secret by defining it as "proprietary information," Mattel denied that this was so.  Dkt. # 4496 (MGA's Mot. for Partial JMOL) at 7-8.  In response, Mattel denied that they were trying a trade secret claim,

---

[4] Moreover, the only mention of trade secrets by Mattel in the Pretrial Conference Order was a footnote that read "Mattel has claims for misappropriation that are being reserved for Phase II of this litigation.  To the extent defendants seek to raise the issue of trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel reserves its right to argue its misappropriation of trade secrets claim in Phase I."  Dkt. # 3470 at 11 n. 3; Dkt. # 3694 at 11 n. 2 Dkt. # 3765 at 13 n. 2.

1  noting that the Trade Secret Act "does not preempt claims that are not based on

2  trade secrets; and none of the claims at issue here depended on proof that the Bratz

3  inventions are trade secrets." Dkt. # 4683 (Mattel's Opp. to MGA's Renewed Mtn.

4  for Partial JMOL) at 9.

5      Thus, it was only long after obtaining a verdict on the Phase 1 trial that

6  Mattel finally again raised the issue it had raised in the eleventh hour service of a

7  draft pretrial conference order. *See* Dkt. # 4835.  And even then, Mattel had not yet

8  identified Bratz as a trade secret in response to interrogatories that required it to

9  identify trade secrets.  In fact, Mattel never identified its trade secrets at all in

10  response to that interrogatory until July 30, 2009, even though that interrogatory

11  had first been served *on December 4, 2007*.  Dkt. # 6785 Ex. C (identifying trade

12  secrets).

13      If Bratz is now to be a trade secret, then there will have to be a raft of new

14  discovery taken.  Carter Bryant will have to be re-deposed, as will everyone else

15  who had any involvement in Mattel's purported consideration of the name.  MGA

16  will have to proceed to Hong Kong to take the deposition of Danny Yu regarding

17  statute of limitations issues.  In light of the issues pending before the Ninth Circuit

18  and the Court's Order, MGA has not taken the deposition discovery that would be

19  necessary to address the issue of Bratz as a trade secret.

20                          **ARGUMENT**

21  **I.    MATTEL'S MOTION SHOULD BE DENIED AS AN IMPROPER**
        **MOTION FOR RECONSIDERATION AND MGA'S**
22      **CORRESPONDING MOTION TO STRIKE SHOULD BE GRANTED.**

23      The Court's April 10 Order is quite clear that Bratz and Jade are not part of

24  this case and that the issue may be revisited after the Ninth Circuit rules in the

25  pending appeal.  Mattel violated the Order by including the allegations in its FAAC

26  anyway.  Apparently it did so that it could make a "Motion to Confirm" instead of

27  the "Motion for Reconsideration" that is actually required to change the outcome of

28  a court order from denial to grant.  It is truly remarkable that Mattel seeks to turn its

1  flagrant defiance of the Court's order into a vehicle to avoid compliance with the

2  requirements of Local Rule 7-18(c).

3       There has been no showing of newly discovered evidence, clear error,

4  manifest injustice or any intervening change in law.  Local Rule 7-18(c); *School*

5  *Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  The most that

6  Mattel can muster is to claim that Mattel claimed Bratz as a trade secret prior to its

7  July 2009 discovery response.  *See, e.g.*, Mot. at 1.  This is false.  As demonstrated,

8  Mattel has careered about to avoid being pinned down on anything while at the

9  same time making statements clearly inconsistent with the theory that Bratz was a

10  trade secret.

11       And, Mattel had good tactical reasons for doing so.  It faced two enormous

12  legal issues related to claiming Bratz as a trade secret, either of which would have

13  deprived it of one or more claims.  If it were claiming the Bratz name as a trade

14  secret, its tort law claims faced preemption under the CUTSA.  If it were claiming

15  the Bratz drawings as a trade secret, it faced preemption under the Copyright Act.

16  *See* Part II(B), *infra*.  It is therefore apparent from the circumstances that Mattel's

17  decision not to claim Bratz as a trade secret was a deliberate tactical choice

18  designed to maximize its prospects for a Phase 1 tort verdict and a second bite at

19  the apple in Phase 2.

20       Whatever truth to Mattel's positions there may be, it was well known to

21  Mattel at the time it filed the motion for leave to amend.  The burden was on Mattel

22  to justify all of its proposed pleading amendments, and it did not.  Not only should

23  Mattel's motion be denied, this Court should strike pursuant to Rule 12(f) the

24  allegations Mattel made in defiance of the Court's order, and furthermore should

25  now do so with prejudice.

26  ## II.  MATTEL'S ATTEMPT TO INTRODUCE BRATZ AS A TRADE SECRET IS IN BAD FAITH.

27

28       Given the record described herein, the Court had ample reason to deny

1   Mattel's motion for leave to amend as to Bratz as a trade secret.  The MGA Parties

2   will not repeat every argument raised in their opposition to Mattel's motion for

3   leave to file its FAAC.  Dkt. # 7690.  Suffice it to say that Mattel has known about

4   Bratz and Jade for many years and did not assert a trade secret claim as to either

5   until the FAAC.  Mattel did not identify either as a trade secret until July 2009.  It

6   had its tactical reasons for doing so, but now it wants to have things both ways.

7   **A.    Mattel Disavowed Bratz As A Trade Secret, And Mattel's Witnesses
       Acknowledge That It Is Not A Trade Secret.**

8

9       Mattel is asserting the *name* Bratz as a trade secret when it already has

10  expressly stated that the name Bratz was not a trade secret.  Therefore, in addition

11  to failing to identify the name Bratz as a trade secret before Phase 1, Mattel went

12  one step further.  Mattel made quite clear that it was *not* claiming that the name

13  Bratz was proprietary to Mattel.  "[W]e have not said that the name Bratz is, quote,

14  *proprietary*, end quote, to Mattel.  That is not the basis of our theory."  Parker Decl.

15  Ex. 1 (5/23/08 Pre-Trial Conf. Tr.) at 79:20-22. As reflected above, that necessarily

16  means it was not a Mattel trade secret.

17      In addition, not only is the name Bratz not a trade secret for the purposes of

18  this case, the name is not a trade secret, period.  That name had no value to Mattel.

19  In fact, quite the opposite—Mattel considered the use of the name to be

20  affirmatively injurious of its image and interests.  According to Adrienne

21  Fontanella, Mattel's President of Barbie, Large Dolls and Small Dolls, Mattel

22  considered using the name Bratz, but rejected it because it was not appropriate.  It

23  was negative.

24              "I and also the Marketing group had a very strong
                obligation and loyalty to girls to present things that were
25              in—good taste and had—didn't suggest anything negative
                or not appropriate.  And in looking at the Bratz name I
26              didn't like the idea of what Bratz connoted."

27  *See* LKK Decl. filed May 10, 2010, Ex. 10 (Fontanella Depo.) at 1257:2-12.[5]

28  _____
    [5] Additionally, as mentioned in the MGA Parties' Opposition to Mattel's Motion

MOT. TO STRIKE AND OPP. TO MOT. RE BRATZ TRADE
SECRET
CV-04-9049 DOC (RNBx)

1  Another witness testified that the Mattel legal department would not "clear" the

2  name for use by Mattel.  *Id.* Ex. 27 (Ross Depo.) at 2560:22-61:19.  This is not

3  surprising, since MGA also had to go to considerable lengths to do so, litigating the

4  issue at some length and ultimately settling it.  Dkt. # 6983, Ex. 1 at 12.

5  **B.**   **Mattel's Delay In Asserting Bratz As A Trade Secret Was Intended To**

6  **Avoid Preemption.**

7       The timing of Mattel's assertion of Bratz as a trade secret allowed it to avoid

8  preemption, a fact noted in the MGA Parties' Opposition to Mattel's Motion for

9  Leave to Amend, Dkt. # 7690 at 18-19, and a fact not addressed at all by Mattel in

10  its "Motion to Confirm," except to say that the MGA Parties are wrong as to the

11  date when Mattel identified Bratz as a trade secret.  Mot. at 15 n. 41.

12       Mattel delayed introducing Bratz as a trade secret because it knew that it

13  could not proceed to trial in Phase 1 on its state law claims were Bratz also

14  identified as a trade secret.  CUTSA was intended to "occupy the field of trade

15  secret liability to the exclusion of other civil remedies."  *Silvaco Data Sys. v. Intel*

16  *Corp.*, ___ Cal. Rptr. 3d ___, 2010 WL 1713241 * 14 (Cal. App. Apr. 29, 2010).

17  The Act preempts "common law claims that are 'based on the same nucleus of facts

18  as the misappropriation of trade secrets claim for relief.'"  *K.C. Multimedia, Inc. v.*

19  *Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 261 (Cal. App. 2009).

20       This preemption extends to all tort claims, including claims for intentional

21  and negligent misrepresentation concerning the use of those trade secrets.  *Silvaco*

22  *Data Sys.*, 2010 WL 1713241 * 14.  And it certainly encompasses those claims

23  tried in Phase 1—interference with contract, aiding and abetting a breach of a

24  for Leave to Amend, Dkt. # 7690 at 19-20, Mattel adds Bratz and Jade as trade
25  secrets despite its prior express disclaimer that the name Bratz was not proprietary
    in order directly to address the MGA Parties' powerful argument on appeal to the
26  Ninth Circuit that Mattel cannot own an idea for a name—an argument that at least
    in part resulted in the Ninth Circuit staying the very equitable orders Mattel
27  previously obtained by avoiding the preemption issue with its express disclaimer.
    Amending a complaint to avoid adverse rulings just to arrive at a theory that might
28  work is bad faith.  *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161
    (9th Cir. 1989).

1   position of confidence and the unfair competition claims on which the Court based

2   an injunction and the constructive trust that is now the subject of MGA's appeal

3   before the Ninth Circuit.  *K.C. Multimedia, Inc.*, 90 Cal. Rptr. 3d at 261-64; *see*

4   *also Gabriel Technologies Corp. v. Qualcomm Inc.*, 2009 WL 3326631 *11-13

5   (S.D. Cal. Sept. 3, 2009) (finding plaintiff's claims for conversion, unfair

6   competition, fraud, tortious interference, and unjust enrichment preempted because

7   "[i]f the 'trade secret facts' are removed from the claim, the claims fail to retain

8   sufficient independent facts"); *Axis Imex Inc. v. Sunset Bay Rattan, Inc.*, 2009 WL

9   55178 *5 (N.D. Cal. Jan. 7, 2009) (finding preemption because if the "trade secret

10  facts were removed from the [unfair competition and intentional interference]

11  claims, neither claim retain[s] sufficient independent facts to survive."); *Digital*

12  *Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025 (N.D. Cal. 2005) (cited favorably

13  by *K.C. Multimedia, Inc.*).

14          Had Mattel asserted Bratz as a trade secret, it faced a substantial prospect that

15  it would not have been able to obtain unfettered tort damages and injunctive relief

16  on its claims.  The name Bratz is not a trade secret.  It is doubtful whether an idea

17  for a product name based on a common word could ever be a trade secret.  In any

18  event, Mattel never intended to use it.  These circumstances plainly would have

19  defeated the claims altogether.  Even were the name Bratz found to be a

20  misappropriated trade secret, damages would have been limited to treble, while

21  under common law tort claims exemplary damages had no limit.  Most importantly,

22  Mattel never could have been awarded a constructive trust over the trademark on a

23  trade secret theory because the time had long since passed when Bratz was a trade

24  secret.  Treating Bratz as a trade secret would have destroyed most of Mattel's

25  Phase 1 case—and that is even without regard to the related copyright preemption

26  issue with respect to the drawings.  A claim for misappropriation by use of the

27  drawings is virtually impossible to distinguish from the copyright infringement

28  claim.  *See* 17 U.S.C. §301; *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129,

MOT. TO STRIKE AND OPP. TO MOT. RE BRATZ TRADE
SECRET
CV-04-9049 DOC (RNBx)

1    1194-95 (C.D. Cal. 2001).

2         Mattel does not deny that the Phase 1 trial claims turned on MGA's use of

3    Bratz and every aspect of Bratz that is now claimed to be a trade secret.  As the

4    authorities above reflect, such claims are preempted.  Mattel's attempt to bring

5    these claims now is obvious bad faith.

6    **C.     MGA Has Not Taken The Discovery Anyway.**

7         Finally, while Mattel claims that the MGA Parties have had all the discovery

8    needed concerning Bratz trade secret misappropriation, that is simply false.  Even at

9    this stage of the proceedings, the MGA Parties are still chasing after discovery—

10   even relating to Bratz as a RICO predicate and damages claims— that should have

11   been produced a long time ago.  *See, e.g.*, Dkt. # 7815 (MGA Response to 5/1/10

12   Order to Show Cause).

13        Moreover, this issue is tied up in the matters on appeal, and MGA has

14   avoided deposing witnesses in the meantime that are otherwise purely Phase 1

15   witnesses.  For example, MGA has not re-deposed Carter Bryant.  Nor has it re-

16   deposed anyone else who would be in a position to flesh out the contours of

17   Mattel's trade secret claim—namely, all those employees in the Mattel Design

18   Center back in the 1999-2000 time frame who had anything to do with the potential

19   consideration of the name Bratz, everyone on the Mattel marketing staff involved in

20   what Ms. Fontanella termed a deliberate decision not to use the name because of its

21   negative connotations, nor has it deposed anyone in the legal department on

22   Mattel's apparent failure to "clear" the name Bratz for itself.  *See* LKK Decl. filed

23   May 10, 2010, Ex. 10 (Fontanella Depo.) at 1257:2-12; Ex. 27 (Ross Depo.) at

24   2560:22-61:19.  Indeed, once the Court issued its April 10 Order denying the Bratz

25   trade secret theory, MGA put its plans to pursue the Hong Kong deposition of

26   Danny Yu on hold in light of his limited relevance to Bratz statute of limitations

27   issues then seemingly no longer in the case.

28        Mattel's assertion that there is no prejudice because MGA has already taken

- 13 -

all of the relevant discovery (or even could have) is plainly incorrect.

## III.  THE DENIAL WITHOUT PREJUDICE DOES NOT HARM MATTEL.

Finally, Mattel's "Motion to Confirm" fails to explain how it is harmed in any way by this Court's decision such that it requires the resolution of this issue at this moment.  Mattel cannot claim that it has no discovery related to Bratz from MGA.  It does—and loads of it.  Mattel's request has been denied without prejudice, presumably to allow any dust to settle from the Ninth Circuit's decision.  While the MGA Parties respectfully submit that Mattel should be held to its tactical choices and the allegations stricken with prejudice, there is no possible way that Mattel is being harmed in the meantime as matters currently stand.

## CONCLUSION

For all of the foregoing reasons, Mattel's Motion should be denied.

Dated:    May 12, 2010                    Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Warrington S. Parker III*
                    Warrington S. Parker III
                    Attorneys for MGA Parties