QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>                Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER FROM THE MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC. (THIRD PHASE 2 NOTICE)**<br><br>Date:  TBD<br>Time:  TBD<br>Courtroom:  9D<br><br>**Phase 2**<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:   TBD<br>Trial Date:   TBD |

07975/3500524.7

MATTEL. INC.'S MOTION FOR PROTECTIVE ORDER FROM 30(b)(6) DEPOSITION NOTICE

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on a date and at a time to be determined, in the

3  Courtroom of The Honorable David O. Carter, located at 411 West Fourth Street,

4  Santa Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does,

5  move the Court pursuant to Federal Rule of Civil Procedure 26(c)(1)(A) for an order

6  sustaining its objections to Topics 1-27 of the Third Notice of Deposition of Mattel,

7  Inc. ("Third Notice") served by MGA Entertainment, Inc. ("MGA"), as set forth

8  herein.

9  This Motion is made on the grounds that the Topics in the Third Notice are

10  defective and warrant issuance of a protective order because they fail to describe the

11  information sought with the "reasonable particularity" required by Rule 30(b)(6) of

12  the Federal Rules of Civil Procedure; seeks information that is not properly the

13  subject of a Rule 30(b)(6) deposition; that the challenged topics are overbroad,

14  unduly burdensome, duplicative and/or cumulative of other discovery already

15  obtained by MGA, and seek discovery that is neither relevant to the claims and

16  defenses in this action nor reasonably calculated to lead to the discovery of

17  admissible evidence, as set forth in Mattel's Separate Statement (Federal Rule of

18  Civil Procedure 26(b)(2)(C)(i)-(iii)).

19  This Motion is based upon this notice of Motion and accompanying

20  memorandum of points and authorities, the accompanying Separate Statement, and

21  all other matters of which the Court may take judicial notice.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

-ii-

1

2

## **Local Rule 7-3 Certification**

3            Mattel attempted to meet and confer with MGA regarding the

4   Rule 30(b)(6) deposition notice and this Motion, but MGA refused.

5   DATED:  May 17, 2010            QUINN EMANUEL URQUHART &
                                    SULLIVAN. LLP
6

7                                   By /s/ Jon Corey
                                       Jon Corey
8                                      Attorneys for Mattel. Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3

4 PRELIMINARY STATEMENT ................................................................................. 1

5 BACKGROUND ..................................................................................................... 2

6 ARGUMENT............................................................................................................ 2

7 I.    THE COURT SHOULD ISSUE A PROTECTIVE ORDER
      REGARDING MGA'S THIRD NOTICE OF DEPOSITION .......................... 2

8
  II.   TOPIC NOS. 1-3, 19-21, AND 25 IN MGA'S THIRD NOTICE
9       DUPLICATE PRIOR TOPICS AND TESTIMONY ....................................... 3

10 III.  TOPIC NOS. 4-5, 8-16, 18, 23, 25 AND 27 ARE OPPRESSIVE AND
      UNDULY BURDENSOME ................................................................................ 6

11
  IV.  TOPIC NOS. 8, 9, 10, 16, 18, AND 25 ARE NOT REASONABLY
12       PARTICULARIZED AND OVERBROAD ...................................................... 9

13 V.    TOPIC NOS. 6, 7, 11-15, 17, 22-24,  AND 26- 27 SEEK
      IRRELEVANT INFORMATION...................................................................... 11

14
  VI.  TOPIC NOS. 8, 10 AND 23  SEEK TESTIMONY THAT IS NOT
15       REASONABLY AVAILABLE TO MATTEL ............................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## Cases

CSX Transp., Inc. v. Vela,
  2007 WL 3334966 (S.D. Ind. Nov. 8, 2007)......................................................3

Cummings v. General Motors Corp.,
  2002 WL 32713320 (W.D. Okla. June 18, 2002) ..................................................3

Innomed Labs, LLC v. Alza Corp.,
  211 F.R.D. 237 (S.D.N.Y 2002) .........................................................................9

Reed v. Bennet,
  193 F.R.D. 689 (D. Kan. 2000) ..........................................................................9

Southern Boston Management Corp. v. BP Prods. North America Inc.,
  2006 WL 162916 (S.D.N.Y. Jan 19, 2006)..........................................................9

Static Control Components, Inc. v. Lexmark Intern., Inc.,
  2006 WL 3256767 (E.D. Ky. Nov. 9, 2006) .......................................................5

## Statutes

Fed. R. Civ. P. 26(b)(2)(C) ...................................................................................3

Fed. R. Civ. P. 26(b)(2)(C)(i) ...............................................................................5

Fed. R. Civ. P. 26(c)(1)..........................................................................................2

Fed. R. Civ. P. 30(a)(2)..........................................................................................3

Fed R. Civ. P. 30(b)(6) ..........................................................................................9

Fed. R. Civ. P. 37(d)(2) .........................................................................................2

### **Preliminary Statement**

Mattel's Rule 30(b)(6) designees have already provided over 31 days of testimony in this case, much of it on the very topics -- such as the harm suffered by Mattel (Topics 19 and 20) -- that are again repeated in the Third Notice.[1] In addition to duplicating topics that MGA never previously complained were inadequately addressed, MGA's Third Notice includes topics so broad that no witness could be properly prepared to address them. "All Mattel financial documents that have been produced in the course of this litigation, including but not limited to all Mattel brand profit and loss statements" (Topic 25) encompasses literally hundreds of thousands of pages of documents. MGA also includes topics relevant only to claims it has withdrawn: for example, MGA seeks testimony on the creation, development, configuration and packaging of Mattel's "Fashion Fever" line of products, "including but not limited to the evaluation of other potentially competitive product lines during development, including MGA's Tokyo-a-Go-Go or Flashback Fever." (Topics 6 and 7). However, MGA has withdrawn its claims of trade dress infringement based on these two Bratz themes. Another Topic (Topic 11) attaches over 250 pages of exhibits and seeks "[a] complete explanation of the precise circumstances in which Mattel acquired" the information contained therein. Yet to date the MGA Parties have failed to provide a corporate witness who can explain how Mattel's trade secret documents were discovered in MGA Mexico's offices during the federal authorities' search in 2006. For the reasons set forth below, and in the accompanying Separate Statement, Mattel respectfully requests that the Court grant the requested protective order.

---

[1] For the convenience of the Court, a copy of the Third Notice, without its hundreds of pages of exhibits, is attached to this brief. If the Court requests, Mattel will lodge the Third Notice with exhibits.

## Background

On December 21, 2004, Carter Bryant served two Notice of Deposition of Mattel, one containing 56 topics and the other containing nine.  Mattel provided witnesses to testify on some but not all of those topics.  MGA moved to compel Mattel to provide witnesses on the remaining topics; Mattel opposed the motion, including by challenging MGA's standing to enforce Bryant's Notice of Deposition.  Judge Infante rejected that argument, sustained some of Mattel's objections and ordered Mattel to produce additional witnesses as to others, which it did.  On September 5, 2007, MGA served its first notice of deposition with 86 topics.  MGA moved to compel certain of those Topics and Mattel provided additional testimony on them.

On July 27, 2009, MGA served its First Phase 2 Notice of Deposition of Mattel with 5 topics and 45 sub-topics.  Pursuant to a ruling by the Discovery Master, Mattel provided four days of 30(b)(6) testimony on these topics.  On September 28, 2009, MGA served its Second Phase 2 Notice.  It contained 19 topics.  Through agreement of the Parties, Mattel produced witnesses who provided nine days of testimony on those topics.

On April 27, 2010, MGA served Mattel with its third notice of deposition. It sought testimony on 27 topics; including "sub-topics," the Notice sought testimony on some 98 topics.  On its face, this latest Notice contains Topics that are substantially identical to ones in MGA's and Bryant's prior notices, including topics as to which Mattel has already provided testimony. When Mattel asked MGA to meet and confer regarding this Notice, MGA refused to do so, thus forcing Mattel to bring this Motion to preserve its objections.

## Argument

## I.   THE COURT SHOULD ISSUE A PROTECTIVE ORDER REGARDING MGA'S THIRD NOTICE OF DEPOSITION

A Court may issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ.

P. 26(c)(1).   Mattel brings this motion because the Discovery Master has ruled that a party must seek a protective order to preserve objections to a Rule 30(b)(6) notice. See Discovery Matter Order No. 71 at 7-8; Fed. R. Civ. P. 37(d)(2)) ("[a] failure [to produce a 30(b)(6) witness] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)").   As set forth below, good cause exists to limit the discovery sought in the Topics of MGA's Third Notice.

## II.   TOPIC NOS. 1-3, 19-21, AND 25 IN MGA'S THIRD NOTICE DUPLICATE PRIOR TOPICS AND TESTIMONY

Many of the topics in the Third Notice unreasonably duplicate discovery already sought and obtained by MGA.  A party is not entitled to unreasonably duplicative or cumulative discovery.  See Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 30(a)(2); see also CSX Transp., Inc. v. Vela, 2007 WL 3334966, at *3 (S.D. Ind. Nov. 8, 2007) (granting motion for protective order where party sought Rule 30(b)(6) deposition on matters the noticed party had previously answered in discovery because "additional testimony is unduly burdensome"); Cummings v. General Motors Corp., 2002 WL 32713320, at *6 (W.D. Okla. June 18, 2002) (granting protective Order where Rule 30(b)(6) notice was duplicative of other notices).

As set forth in detail in Mattel's Separate Statement, Mattel has already provided discovery on seven of the Topics in MGA's Third Notice.  These include:

**Topic No. 1**: Mattel's understanding of the meaning of all terms of all agreements between Carter Bryant and Mattel.  Mattel has already provided a day of 30(b)(6) testimony on this very topic.[2]  There have been no intervening new facts to justify a second examination on this Topic.

---

[2]   See Deposition Trancript of Lissa Freed, Vol. 1, dated May 3, 2007.

1    **Topic No. 2**: Agreements between Mattel and its employees governing the

2    ownership of inventions and the use, disclosure, or protection of confidential

3    information.  Mattel has already provided a day of 30(b)(6) testimony on Mattel's

4    "Employee Confidential Information and Inventions Agreement," "Conflict of

5    Interest Agreement," and "Proprietary Information Checkout" form.[3]  There are no

6    new facts on this Topic.  Moreover, the Discovery Master held that a Topic seeking

7    information about Mattel's employment policies extending back to 1995 was

8    "overbroad in terms of the specified time frame because Bryant did not begin

9    working at MGA until the year 2000."  See Dkt. No. 1013 at 10.  Yet Topic 2 seeks

10   this same information going back to *1975*.

11   **Topic No. 3**: Mattel's policies, practices, and procedures limiting the

12   disclosure of confidential information and concerning the ownership of inventions.

13   Mattel has provided 30(b)(6) testimony in Phase 2 on its policies for protecting its

14   proprietary information.[4]  It has also provided a day of testimony on its agreements

15   concerning the ownership of inventions.[5]

16   **Topic No. 19**: This seeks testimony on the harm Mattel claims it suffered as a

17   result of defendants' alleged misconduct, including the identity of and sales

18   information for the harmed Mattel products.  Mattel has already provided 30(b)(6)

19   testimony in Phase 2 on the harm it has suffered from defendants' misappropriation

20   of Mattel trade secrets,[6] as well as a day of Phase 2 30(b)(6) testimony on the

21

22   [3]  Id.

23   [4]  See Deposition Transcript of Keith Storie, Vol. 1, dated December 16, 2009;
Deposition Transcript of Keith Storie, Vol. 2, dated December 17, 2009; Deposition

24   Transcript of Keith Storie, Vol. 3, dated February 22, 2010; Deposition Transcript of
Keith Storie, Vol. 4, dated February 23, 2010; Deposition Transcript of Keith Storie,

25   Vol. 5, dated April 29, 2010; Deposition Transcript of Keith Storie, Vol. 6, dated

26   April 30, 2010.

27   [5]  See Freed Depo., Vol. 1, dated May 3, 2007.

28   [6]  See Storie Depo., Vol. 1, dated December 16, 2009; Storie Depo., Vol. 2,
dated December 17, 2009; Storie Depo., Vol. 3, dated February 22, 2010; Storie

1  identity of, and the sales, revenues, and profits of the Mattel products harmed by

2  Bratz.[7]

3      **Topic No. 20**: This seeks testimony on the harm Mattel claims it suffered as a

4  result of defendants' misconduct, including the alleged acts of trade secret theft and

5  the identity of the trade secrets at issue.  Mattel has provided Phase 2 30(b)(6)

6  testimony on the harm Mattel claims resulted from the alleged misappropriation of

7  trade secrets by the MGA Parties.[8]  Mattel has also provided 30(b)(6) testimony on

8  the trade secrets themselves, including on their identity, creation, and Mattel's

9  efforts to maintain their confidentiality.[9]

10      **Topic No. 21**: the forensic analyses Mattel has conducted on the electronic

11  data of former employees in connection with this litigation.  Mattel has already

12  provided three days of Phase 2 30(b)(6) testimony on the investigation into the

13  thefts by the former employees, including the forensic analyses conducted on the

14  electronic data of former employees related to the theft of Mattel's trade secrets.[10]

15      **Topic No. 25**: Mattel's financial documents, including its profit and loss

16  statements.  Mattel has provided a 30(b)(6) witness to testify on the financial

17

18

19

---

20  Depo., Vol. 4, dated February 23, 2010; Storie Depo., Vol. 5, dated April 29, 2010;
    Storie Depo., Vol. 6, dated April 30, 2010.

21     [7]  <u>See</u> Deposition Transcript Douglas Kerner, Vol. 1, dated  June 6, 2009.

22     [8]  <u>See</u> Storie Depo., Vol. 1, dated December 16, 2009; Storie Depo., Vol. 2,
    dated December 17, 2009; Storie Depo., Vol. 3, dated February 22, 2010; Storie

23  Depo., Vol. 4, dated February 23, 2010; Storie Depo., Vol. 5, dated April 29, 2010;
    Storie Depo., Vol. 6, dated April 30, 2010.

24

25     [9]  <u>See</u> Deposition Transcript of Laura Owens, Vol. 1, dated December 14, 2009;
    Deposition Transcript of Laura Owens, Vol. 2, dated December 15, 2009;

26  Deposition of Laura Owens, Vol. 3, dated December 16, 2009.

27     [10]  <u>See</u> Deposition Transcript of Jaime Elias, Vol. 1, dated November 16, 2009;
    Deposition Transcript of Jaime Elias, Vol. 2, dated November 18, 2009; Deposition

28  Transcript of Jaime Elias, Vol. 3, dated November 19, 2009.

1   information, including profit and loss statements, related to the Mattel products

2   harmed by Bratz.[11]

3          In reviewing the duplication of requests, testimony provided by Mattel based

4   on Bryant's notices should count equally with testimony provided in response to

5   MGA's.   MGA was not only present and had an opportunity to ask questions at

6   every single one of Bryant's 30(b)(6) depositions, it conducted much of the

7   examinations.  Mattel should not have to prepare a corporate witness on these same

8   Topics again.  Fed. R. Civ. P. 26(b)(2)(C)(i) (protective order must issue where "the

9   discovery sought is unreasonably cumulative or duplicative"); Static Control

10  Components, Inc. v. Lexmark Intern., Inc., 2006 WL 3256767, at *5 (E.D. Ky. Nov.

11  9, 2006) (denying defendant's motion to compel, because topics were duplicative of

12  another defendant's previous Rule 30(b)(6) depositions, and because moving

13  defendant was present at those depositions and had an opportunity to ask questions).

14  **III.    TOPIC NOS. 4-5, 8-16, 18, 23, 25 AND 27 ARE OPPRESSIVE AND**

15  **UNDULY BURDENSOME**

16  **Topic No. 18**:  requires a designee to testify as to:

17       All qualitative and quantitative consumer research conducted by Mattel
     concerning or including any MGA product, any attributes of any MGA
18       product, or any MGA product packaging, including the manner and
     methodology of such research, the results of such research, any reports
19       concerning such research, and the distribution within Mattel of any
     reports concerning such research.

20          Mattel conducts voluminous internal consumer research, including almost

21  daily focus groups on competitive toy products.[12]  MGA has sold, directly or

22  indirectly through licensees, thousands of products.  These include such diverse

23  products as a "Spiderman" memory game, a "Creature Mix" line of mix-and-match

24  animals, and Little Tykes products.[13]  The scope of this Topic is therefore

25  extraordinarily wide.  The prior Discovery Master granted MGA and MGA Mexico

26

27       [11]   See Kerner Depo., Vol. 1, dated  June 6, 2009.

28       [12]   See Dkt. No. 441 at ¶ 9.
         [13]   Id. ¶ 6.

1   a protective order in just such circumstances.  The Discovery Master denied Mattel's

2   motion to compel a <u>Rule</u> 30(b)(6) topic which sought, "[t]he identity of each doll,

3   accessory, product, work or item produced, developed, manufactured, licensed, sold

4   or offered for sale by or for YOU or on YOUR behalf that was  BASED ON any

5   BRATZ DESIGN or any design derivative of any BRATZ DESIGN."  The

6   Discovery Master ruled that the definitions provided for "BRATZ" and "DESIGN"

7   were "so sweeping that it would be utterly unrealistic and unduly burdensome for

8   MGA and MGA Mexico to prepare a witness to testify on [the Topic]."  <u>See</u> Dkt.

9   No. 3564 at 9.  Topic 18 of MGA's Third Notice is also a topic "so sweeping" that it

10   would be "utterly unrealistic and unduly burdensome" to prepare a witness on it.

11   Mattel should also be granted a protective order.

12       **<u>Topic No. 25</u>**:  "All Mattel financial documents that have been produced in

13   the course of this litigation, including but not limited to all Mattel brand profit and

14   loss statements."  Mattel has produced hundreds of thousands of pages of financial

15   documents in this action, of all different kinds.  Examples of such documents

16   include financial statements, inventory reports, sales reports by product, results of

17   investment in specific promotions, compensation schedules, product costing

18   information, shipping and import costs, raw materials supplier terms, and the list

19   goes one and on.  Preparing a designee for examination on all of these documents is

20   "utterly unrealistic."

21       **<u>Topic Nos. 12-15 and 27</u>:**  For Topics Nos. 12-15 and 27, MGA attaches

22   over 200 pages of exhibits to the Third Notice and demands that, for each exhibit,

23   Mattel prepare a witness to testify on virtually every aspect of the document,

24   including "all purposes for which it was used, any and all revisions to this

25   document, and the source of every piece of information contained therein."  These

26   exhibits, including a 100 page "Information Package" on Mattel's Corporate

27   Strategic Plan for 2004, address areas of Mattel's business that have nothing to do

28   with any issue in this case.  The burden of preparing a witness to testify on "the

source of every piece of information contained therein" would greatly outweigh any potential benefit to MGA.

**Topic No. 11**:   MGA attaches 25 exhibits that total over 250 pages and seeks for each "[a] complete explanation of the precise circumstances in which Mattel acquired all of the information concerning MGA and/or MGA's products."  For ten of these exhibits, MGA also seeks testimony on "any additional communications concerning the subject matter therein."  The other sub-topics are even broader.  For example, sub-topics (a), (g), and (h) seek testimony on:

> a.       Communications regarding the 2004 Hong Kong Toy Fair and Bratz and all follow-ups, including those found at Ex. 7790, M 0743524 (Exhibit 1 hereto); Ex. 7795, M 0933415 (Exhibit 2 hereto); Ex. 8747, M 0941091-092 (Exhibit 3 hereto); Ex. 8748, M 0941278 (Exhibit 4 hereto);

> g.       Communications regarding MGA's Spring 2004 products, including those found at Ex. 2107, M 0082020-021 (Exhibit 11 hereto); Ex. 8816, M 0082026 (Exhibit 12 hereto);

> h.       Communications regarding MGA's 2004 Bratz product lines, including those found at Ex. 8666, M 0949654-56 (Exhibit 13 hereto); Ex. 8747, M 0941091-92 (Exhibit 3 hereto); Ex. 8817, M 0937972-973 (Exhibit 14 hereto); M 0932863-865 (Exhibit 15 hereto);

The Notice defines "communication" to mean "the transmittal of information by any means and in any form."  The time and expense that would be required to prepare a witness on this Topic and sub-topics would be inordinate.

**Topic No. 23**:  This topic seeks similar information about a report prepared by Bain & Company entitled "Project Doll."  Among the sub-topics of information noticed are:

> c.       all rough drafts, revised copies, notes, electronic mails, updated copies, communications and all other materials concerning "Project Doll";

> d.       all sources of information regarding "Project Doll," including but not limited to notes, drafts, tape recordings, electronic mail, phone messages referring or relating to the source(s) of information for each and every factual representation set forth in the document entitled "Project Doll – Final Handover Materials" dated September 7, 2004.

The burden of testifying on the minutia of every "communication" made relating to "Project Doll" by anyone at either Bain or Mattel is enormous.  Similarly, testimony on the "sources of information regarding 'Project Doll,' including but not limited to notes, drafts, tape recordings, electronic mail, phone messages referring or relating to the source(s) of information for each and every factual representation set forth in the document" – the final report alone is almost 70 pages – would impose a burden that greatly outweighs any potential benefit to MGA.

**Topic Nos. 4-5:**  These Topics seek every conceivable piece of information related to Mattel's "Wee 3 Friends" products: all communications, development, market research, trademark clearances, marketing, advertising, all cost information, sales and revenue information by SKU for the life of each of the products.  The burden of preparing a witness on many of the sub-topics – such as sub-topic 5(b), "[a]ll communications with vendors, retailers or other industry third parties regarding marketing, advertising, shelf space or pricing for the Wee 3 Friends product line" – would greatly outweigh any possible benefit to MGA.

**Topic Nos. 8-10 and 16:** As explained in Section IV, <u>infra</u>, these Topics are so overbroad that preparation of a witness, if possible, would impose an inordinate burden.

## IV.   TOPIC NOS. 8, 9, 10, 16, 18, AND 25 ARE NOT REASONABLY PARTICULARIZED AND OVERBROAD

Rule 30(b)(6) notices must identify with "reasonable particularity the matters for examination."  Fed R. Civ. P. 30(b)(6).  Failure to describe the deposition topics with sufficient particularity prevents counsel from adequately identifying and preparing corporate witnesses.  <u>Southern Boston Management Corp. v. BP Prods. North America Inc.</u>, 2006 WL 162916, at *1-2 (S.D.N.Y. Jan 19, 2006); <u>Innomed Labs, LLC v. Alza Corp.</u>, 211 F.R.D. 237, 240 (S.D.N.Y 2002); <u>Reed v. Bennet</u>, 193 F.R.D. 689, 692 (D. Kan. 2000).

**Topic No. 16**:   MGA seeks testimony of "[a]ll fashion doll concepts (including ideas, drawings, prototypes and the like and independent of the precise stage of creation) considered by Mattel for potential marketing between 1990 and 2002, whether such concepts were presented by internal or external sources, whether such concepts were accepted or rejected, the reasons for such acceptance or rejection, and any market research concerning such doll concepts considered in connection with the decision whether to accept or reject them."  Mattel typically releases more than 2000 new products a year, a substantial share of which are fashion dolls.[14]  In seeking "[a]ll fashion doll concepts (including ideas, drawings, prototypes and the like and independent of the precise stage of creation)" considered for marketing – or "potential marketing" – as well as the reasons for acceptance or rejection, *and* all market research connected to those concepts, beginning in 1990, makes it virtually impossible for Mattel to determine the outer limits of the areas of inquiry noticed.[15]

**Topic Nos. 8-10:**  Topic 8 seeks any non-public and/or confidential information about any of Mattel's competitors.  It  is not limited to MGA, much less to the MGA products at issue.  It contains no time limit, and no geographic limitations.  It asks Mattel to determine what information its competitors consider confidential.  As written, Mattel would have to seek information from all 30,000 of its current employees to answer these questions.[16]

Topic 9 seeks every communication between any current or former employee of Mattel with a licensee regarding MGA.  It suffers from similar defects.  It is not limited to products at issue: it includes products as to which MGA has withdrawn claims (AlienRacers) or that never were at issue (Little Tykes).  It is not limited geographically.  Mattel has over 1000 licensees and licensors in the United States

---

[14]   <u>See</u> Declaration of Lori Pantel, dated August 5, 2009, Dkt. No. 6225 at ¶ 2.
[15]   <u>See</u> Dkt. No. 6225 at ¶ 8.
[16]   See Dkt. No. 6225 at ¶ 3.

1  alone, and hundreds more worldwide.[17]  And, they come and go.  It is not limited by

2  time--other than implicitly by MGA's date of creation, in the early 1980s.

3       Topic 10 seeks testimony on "[a]ny and all efforts, attempts, or other actions

4  taken to reduce shelf and display space for Bratz, to specify the location of Bratz

5  products in retail planograms, or to alter the placement of Bratz products once on

6  the shelves at retail outlets."  It is not even limited to actions taken by Mattel

7  employees or on their behalf.  Compliance with this Topic would not be feasible.

8  **V.     TOPIC NOS. 6, 7, 11-15, 17, 22-24,  AND 26- 27 SEEK IRRELEVANT**

9  **INFORMATION**

10       Many of MGA's Topics seek testimony on matters that are not relevant to the

11  case.  The Court should protect Mattel from having to designate a witness on these

12  Topics.

13       **Topic Nos. 6 and 7:**  MGA seeks testimony related to Mattel's "Fashion

14  Fever" line of products.   But the "Fashion Fever" line is not relevant to any claim or

15  defense in this litigation.  Although MGA had earlier suggested that this line

16  infringed the trade dress of the Bratz "Tokyo-a-Go-Go" and "Flashback Fever"

17  products, MGA now says that with the exception of claims related to Bratz's

18  trapezoidal packaging, it has withdrawn its claims as to trade dress infringement

19  based on the Bratz dolls.  See Dkt. No. 7684, Exhibit 1.  Mattel's "Fashion Fever"

20  products were not identified by MGA's corporate designee as having trapezoidal

21  packaging, or as being otherwise relevant to MGA's claims.  See Dkt. No. 7648 at ¶¶

22  4-5.  Nor did MGA prepare a Rule 30(b)(6) witness to testify about allegations

23  regarding "Fashion Fever."  Id.  These topics are not relevant.

24       **Topic No. 17:**  This Topic, seeking "[a]ll facts Mattel intends to introduce at

25  trial to show that it would have chosen to market Bratz products had Carter Bryant

26

27

28  _____
         [17]   See Dkt. No. 537 at 3.

disclosed his Bratz drawings to Mattel" is no longer at issue based on the Phase 1 jury verdict.  It is irrelevant to any Phase 2 claims or defenses.

**Topic No. 22**: This Topic seeks testimony on Mattel's Bratz copyright applications.  However, both the Court and the Discovery Master have ruled that Mattel's post-Injunction plans for Bratz are not relevant to the case.[18]  Nor is there any other relevance to the contents of Mattel's Bratz copyright applications.

**Topic No. 23:**  The Topic seeks testimony on all sources of information in the report, regardless of whether the information, or its receipt by Bain & Company, is relevant to any allegation or defense in the case.  Certain sub-topics, such as the retention arrangement and any confidentiality agreements with Bain, are entirely irrelevant to any issues in the case.

**Topic No. 24**: This Topic seeks testimony about any product Mattel has ever sold with trapezoidal packaging – despite the fact that MGA has only identified three specific products with trapezoidal packaging at issue, and has never alleged that the shape of the packaging of non-Barbie or My Scene products are relevant to its trade dress infringement claims.

**Topic No. 26:** This Topic demands "[a] complete explanation of the precise circumstances in which Mattel acquired" copyright registrations for Bratz filed by MGA in Brazil.  There is no possible relevance to the circumstances of Mattel's acquisition of this document.

**Topic Nos. 12-15 and 27**: Most of the information sought in these Topics--discussed above--are irrelevant.  The source of information in these presentations, the dates the documents were in use, and purposes for which they were used are not relevant to any claim or defense in the case.

---

[18]   See Discovery Matter Order No. 56, Dkt. No. 6591 at 43.  At a Saturday session on January 9, 2010, MGA's counsel, with no court reporter present, Annette Hurst, asked that Mattel be compelled to produce documents concerning Mattel's 2010 Bratz.  The Court denied the request on the grounds that such information was irrelevant.

**Topic No. 11**: This Topic also seeks irrelevant information.  MGA has made no showing why all communications relating to the 250 pages of exhibits it attaches to the Third Notice are relevant to the litigation.

## VI.   TOPIC NOS. 8, 10 AND 23  SEEK TESTIMONY THAT IS NOT REASONABLY AVAILABLE TO MATTEL

A protective order should be granted that limits the topics to knowledge uniquely within Mattel's knowledge.

**Topic No. 10** : MGA does not even purport to limit the matter of examination to information involving or available to Mattel:

> Any and all efforts, attempts, or other actions taken to reduce shelf and display space for Bratz, to specify the location of Bratz products in retail planograms, or to alter the placement of Bratz products once on the shelves at retail outlets.

This Topic would seemingly include a retailer's re-stocker *putting Bratz products on the shelves* or an attempt by an MGA employee to *increase* or otherwise specify the layout of Bratz planograms.  Not only do these matters have no bearing on any claim or defense in this case, they are neither known to Mattel nor reasonably available to it.

**Topic Nos. 8 and 23:** Topic 8, seeking information about Mattel's receipt of non-public and/or confidential information, almost exclusively covers information that Mattel does not have.  What information *competitors* consider non-public and/or confidential is not generally within Mattel's knowledge nor readily available to it.  Topic 23 also seeks to examine a Mattel designee on information not reasonably available to the company.  It seeks testimony on "all sources of information regarding 'Project Doll'" – much of which Mattel is not reasonably available to Mattel.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant it a protective order as to the topics in MGA's Third Notice.

1

2   DATED:  May 17, 2010            QUINN EMANUEL URQUHART &
                                    SULLIVAN. LLP
3

4                                   By_/s/ Jon D. Corey_____
                                       Jon D. Corey
5                                      Attorneys for Mattel. Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Appendix 1

CALENDAR

RECEIVED

APR 2 8 2010

1  MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
5  San Francisco, CA 94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759
6
WILLIAM A. MOLINSKI (State Bar No. 145186)
7  wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
9  Tel. (213) 629-2020/Fax: (213) 612-2499

10  THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
11  ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
12  Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710
13
Attorneys for MGA Parties
14
15                  UNITED STATES DISTRICT COURT
16                 CENTRAL DISTRICT OF CALIFORNIA
17                      SOUTHERN DIVISION

18  CARTER BRYANT, an individual,      Case No. CV 04-9049-DOC (RNBx)

19               Plaintiff,            Consolidated with: Case No. CV 04-9059
                                       and Case No. CV 05-2727
20          v.

21  MATTEL, INC., a Delaware           **NOTICE OF DEPOSITION OF**
corporation,                          **MATTEL, INC.**
22
                 Defendant.           (Third Phase 2 Notice)
23
                                       Date:   May 17, 2010
24  AND CONSOLIDATED ACTIONS           Time:   8:00 a.m.
                                       Place:  404 West Fourth Street, Suite D
25                                             Santa Ana, A 92701
26
27
28

1   **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2       **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure

3   30(b)(6), Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-

4   Defendants MGAE de Mexico S.R.L. de C.V., MGA HK Ltd., and Isaac Larian

5   (collectively, "MGA Parties"), by their attorneys, will take the deposition upon oral

6   examination of Mattel, Inc. ("Mattel") before an officer authorized by law to

7   administer oaths, beginning at 8:00 a.m. on May 17, 2010 and continuing on such

8   dates thereafter as are agreed by the parties or ordered by the Court, at the offices of

9   Orrick, Herrington & Sutcliffe LLP, 404 West Fourth Street, Suite D, Santa Ana,

10   California, 92701.

11       The deposition will be stenographically recorded by a certified court reporter

12   and may be recorded by videographic and/or audio means pursuant to Rule 30(b)(2)

13   of the Federal Rules of Civil Procedure.  You are invited to have counsel attend and

14   cross-examine as authorized by the Rules of Civil Procedure.

15       **PLEASE TAKE FURTHER NOTICE** that Mattel is hereby required to

16   designate one or more of its officers, directors, managing agents, or other persons

17   as are most qualified, knowledgeable, and competent to testify on behalf of Mattel

18   as to all matters known or reasonably available to it to testify accurately and

19   completely with respect to each of the following subjects, and for each person

20   designated, to set forth all matters on which the person will testify on behalf Mattel

21   in a written response to be served on or before three (3) business days prior to the

22   deposition:

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)

**DEFINITIONS**

1.     As used herein, "4-Ever Best Friends" means any project, product, doll or design ever known by that name (whether in whole or in part) and any product, doll, or design or any portion thereof that is now or has ever been known as, or sold, or marketed under, the name or term "4-Ever Best Friends," "4Ever Best Friends," "Forever Best Friends," or "4EBF" (whether in whole or in part) or that is now or has ever been sold or marketed as part of the "4-Ever Best Friends" line, and each version or iteration of such product, doll, or design or any portion thereof.

2.     As used herein, "Bratz" means any project, product, doll or design ever known by that name (whether in whole or in part) and any product, doll, or design or any portion thereof that is now or has ever been known as, or sold, or marketed under, the name or term "Bratz" (whether in whole or in part) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll, or design or any portion thereof.

3.     As used herein, "Bryant" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint ventures, predecessors-in-interest and successors-in-interest, and any other person acting on his behalf, pursuant to his authority or subject to his control.

4.     As used herein, "communication" means the transmittal of information by any means and in any form.

5.     As used herein, "consolidated proceedings" means the <u>Bryant v. Mattel</u>, CV 04-09049 DOC consolidated action, which comprises the following three previously separate cases: 1) <u>Bryant v. Mattel, Inc.</u>, CV 04-9049; 2) <u>Mattel, Inc. v. Bryant</u>, CV 04-9059; and 3) <u>MGA Entertainment, Inc. v. Mattel, Inc.</u>, CV 05-02727.

6.     As used herein, "document" means any information maintained in any form, whether tangible or intangible, transitory or permanent, including without limitation e-mail, metadata, data or data compilations.

1    7.    As used herein, "Mattel" means Mattel, Inc., and all of its directors,

2    officers, employees, attorneys, accountants, consultants, representatives, agents,

3    divisions, subsidiaries, or affiliates, past or present, any partnership or joint

4    ventures to which they are a party and all others acting on behalf of Mattel.

5    8.    As used herein, "MGA" means MGA Entertainment, Inc., any of its

6    current or former employees, officers, directors, agents, representatives, attorneys,

7    parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-

8    in-interest, and any other person acting on its behalf, pursuant to its authority or

9    subject to its control.

10    9.    As used herein, "My Scene" means any project, product, doll or design

11    ever known by that name (whether in whole or in part) and any product, doll, or

12    design or any portion thereof that is now or has ever been known as, or sold, or

13    marketed under, the name or term "My Scene" (whether in whole or in part) or that

14    is now or has ever been sold or marketed as part of the "My Scene" line, and each

15    version or iteration of such product, doll, or design or any portion thereof.

16    10.    As used herein, "Wee 3 Friends" means any project, product, doll or

17    design ever known by that name (whether in whole or in part) and any product,

18    doll, or design or any portion thereof that is now or has ever been known as, or

19    sold, or marketed under, the name or term "Wee 3 Friends," "Wee Three Friends,"

20    or "W3F" (whether in whole or in part) or that is now or has ever been sold or

21    marketed as part of the "Wee 3 Friends" line, and each version or iteration of such

22    product, doll, or design or any portion thereof.

23    ### DEPOSITION TOPICS

24    For purposes of the topics set forth herein, unless otherwise specified

25    the relevant time period is 1985 to the present.  Examination is requested on the

26    following matters:

27    1.    Mattel's understanding of the meaning of all terms of all agreements

28    between Carter Bryant and Mattel, including without limitation the "Employee

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)



Confidential Information and Inventions Agreement," dated November 6, 1995, and the "Employee Confidential Information and Inventions Agreement," dated January 4, 1999.

2.     Each form of agreement in use by Mattel from 1975 to the present between Mattel and its employees or independent contractors that Mattel contends governs (a) the ownership or assignment of any original works of authorship or inventions of its employees or independent contractors, and/or (b) the use, disclosure, or protection of information that Mattel considers to be confidential to which its employees or independent contractors were privy, including without limitation:

    a. Mattel's understanding of the meaning of each and every term of each such form of agreement in use during the applicable time period;

    b. The consideration for each term of each such form of agreement in use during the applicable time period;

    c. The categories of employees at Mattel who signed, or were expected to sign, each such form of agreement;;

    d. The total number of employees in each category who signed, or were expected to sign, each such form of agreement;

    e. The identity of the drafter(s) of each such form of agreement;

    f. The reasons for all changes in the form of agreement over time;

    g. Any practices or procedures in use at Mattel for the disclosure of original works of authorship or inventions pursuant to each such form of agreement; ;

    h. Mattel's practices or procedures with respect to requiring employees to sign revised forms of such agreements after such employees were employed and whether Mattel offered any additional or new consideration therefore;

    i. Mattel's waiver or modification for any employee of any term of any

1             form of agreement encompassed by this topic.

2       3.      Any form of agreement not already identified in response to topic 2, as

3 well as all policies, practices and procedures used by Mattel during the period 1985

4 to the present to limit the disclosure of purportedly confidential information, or

5 concerning the ownership or assignment of original works of authorship or

6 inventions of its employees, including without limitation:

7           a. All documents circulated to employees instructing employees how to

8              classify information as confidential;

9           b. All training whether in written, electronic, oral or other form, Mattel

10              provides to its employees from the period 1985 to the present

11              concerning the creation, maintenance and handling of Mattel trade

12              secrets and confidential information;

13           c. Mattel's Employee Manual or Handbook, including when and to

14              whom that manual was provided and any revisions and amendments to

15              that manual during the specified time period;

16           d. The Mattel survey found at M 0097977;

17           e. Mattel's exit interview process and the Exit Interview Checkout

18              Form(s) used by Mattel during the specified time period;

19           f. The "Conflict of Interest Questionnaire(s)" Mattel used during the

20              specified time period.

21       4.      The creation, design, development, product configuration and

22 packaging of Mattel's Wee 3 Friends products, including during the period of time

23 when the Wee 3 Friends project was designated by code names such as Project

24 Double Trouble, Project X and Wee 3 prior to adoption of the final name of Wee 3

25 Friends, including without limitation:

26           a. Evaluation of other competitive product lines during development,

27              including MGA's 4-Ever Best Friends line of dolls;

28           b. Evaluation of product name and branding including any logos or

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)

1   slogans considered, and any trademark, copyright or other clearance

2   searches conducted in connection with any name, brand, trademark,

3   service mark, logo, slogan, tagline, packaging, product configuration

4   or design considered in connection with the Wee 3 Friends product

5   line.

6      5.     The marketing, first commercial use or sale, sales, and profitability of

7   the Wee 3 Friends product line including, but not limited to:

8        a.  Advertising, marketing, and commercials in print, television, Internet,

9          and other media;

10        b.  All communications with vendors, retailers or other industry third

11          parties regarding marketing, advertising, shelf space or pricing for the

12          Wee 3 Friends product line;

13        c.  Any market research or analysis regarding the Wee 3 Friends product

14          line including consumer research, potential consumer base, target

15          market and market share including any documents or presentations

16          regarding such information and how such information was compiled;

17        d.  Any instances of consumer or retailer confusion between any Wee 3

18          Friends products and any 4-Ever Best Friends products;

19        e.  Unit sales, pricing, discounts, gross and net revenues associated with

20          the sales of Wee 3 Friends products on a per-sku and monthly basis for

21          the period that Mattel sold the Wee 3 Friends products,

22        f.  All costs, both variable and fixed, associated with the development,

23          manufacturing, marketing, sale and delivery to customers of the Wee 3

24          Friends product line, including without limitation the following:

25            i.  All variable costs for manufacturing the product on a per-sku

26              basis, including the raw materials, packaging supplies and direct

27              variable labor, as identified and defined by Thomas Debrowski

28              at page 122:21-25 of his deposition;

ii.   The Bill of Materials ("BOM") for each product in the line, including the cost of manufacturing the dolls, accessories and package for each sku offered by Mattel in the Wee 3 Friends product line, as well as all manufacturing cost variances from such BOMs;

iii.   Any other element of manufacturing cost for each sku offered by Mattel in the Wee 3 Friends product line not already identified in response to topic (f)(i), including without limitation the costs of any tooling;

iv.   All distribution and shipping costs, including all transportation costs, associated with every unit of Wee 3 Friends sold by Mattel;

v.   All development and design costs for Wee 3 Friends, whether variable or allocated;

vi.   All marketing and sales costs including all forms of media and non-media advertising expenditures, research, trade advertising allowances, television production costs, advertising time purchase expenses, and all other costs associated with the marketing and sale of the Wee 3 Friends product;

vii.   Mattel's allocation of any share of fixed costs and/or overhead to the Wee 3 Friends product line, including fixed costs associated with development, manufacturing, marketing, sales and all other activities, as well as its methodology of allocation of such costs;

viii.   Any other cost of Mattel in any way associated with the Wee 3 Friends product line.

6.   The creation, design, development, product configuration and packaging of Mattel's Fashion Fever product line(s), including the product line

- 7 -

1    during such time as alternative names or codenames such as "Fashion 4" were used

2    for the product, including but not limited to the evaluation of other potentially

3    competitive product lines during development, including MGA's Tokyo-a-Go-Go

4    or Flashback Fever.

5        7.    The marketing, first commercial use or sale, sales, and profitability of

6    Mattel's Fashion Fever product line(s) including, but not limited to sales, revenue,

7    pricing, costs (whether variable or fixed), and profit information on a monthly,

8    quarterly and annual basis.

9        8.    The receipt by Mattel of any non-public and/or confidential

10   information about competitors' products or pricing, product development,

11   advertising plans, marketing plans or research, actual or estimated product costs or

12   sales, including any practice of anyone at Mattel of visiting the showrooms of

13   competitors during any Hong Kong or New York Toy Fair(s), including but not

14   limited to how Mattel gained admittance to any competitors' showrooms as well as

15   how Mattel controls access to its own showrooms.

16       9.    Communications between Mattel and its licensees and/or potential

17   licensees regarding potential or actual licenses with MGA, including but not limited

18   to any and all discussions concerning Bratz and 4-Ever Best Friends.

19       10.    Any and all efforts, attempts, or other actions taken to reduce shelf and

20   display space for Bratz, to specify the location of Bratz products in retail

21   planograms, or to alter the placement of Bratz products once on the shelves at retail

22   outlets.

23       11.    A complete explanation of the precise circumstances in which Mattel

24   acquired all of the information concerning MGA and/or MGA's products found in

25   the following documents:

26           a. Communications regarding the 2004 Hong Kong Toy Fair and Bratz

27               and all follow-ups, including those found at Ex. 7790, M 0743524

28               (Exhibit 1 hereto); Ex. 7795, M 0933415 (Exhibit 2 hereto); Ex. 8747,

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)

1      M 0941091-092 (Exhibit 3 hereto); Ex. 8748, M 0941278 (Exhibit 4
2      hereto);

3    b. Ex. 8679, M 0297397-605 (Exhibit 5 hereto) and any additional
4      communications concerning the subject matter therein;

5    c. Ex. 8749, M 0943517 (Exhibit 6 hereto) and any additional
6      communications concerning the subject matter therein;

7    d. Communications regarding "MGA's Best Friend Assortment" and all
8      follow-ups, including those found at Ex. 2114, M 0083032 (Exhibit 7
9      hereto); Ex. 8751, M 0942504 (Exhibit 8 hereto);

10   e. M 0943492 (Exhibit 9 hereto) and any additional communications
11     concerning the subject matter therein;

12   f. M 0937971 (Exhibit 10 hereto) and any additional communications
13     concerning the subject matter therein;

14   g. Communications regarding MGA's Spring 2004 products, including
15     those found at Ex. 2107, M 0082020-021 (Exhibit 11 hereto); Ex.
16     8816, M 0082026 (Exhibit 12 hereto);

17   h. Communications regarding MGA's 2004 Bratz product lines,
18     including those found at Ex. 8666, M 0949654-56 (Exhibit 13 hereto);
19     Ex. 8747, M 0941091-92 (Exhibit 3 hereto); Ex. 8817, M 0937972-
20     973 (Exhibit 14 hereto); M 0932863-865 (Exhibit 15 hereto);

21   i. Ex. 8760, M 0943386 (Exhibit 16 hereto) and any additional
22     communications concerning the subject matter therein;

23   j. Communications regarding screener or advance copies of MGA's
24     videos, DVDs, or sales thereof, including those found at Ex. 8667, M
25     0949670 (Exhibit 17 hereto); Ex. 8668, M 0949669 (Exhibit 18
26     hereto);

27   k. Communications regarding confidential or competitive information
28     regarding MGA's videos, DVDs, or sales thereof, including those

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)

1   found at Ex. 8669 M 0940887 (Exhibit 19 hereto); Ex. 8671, M

2   0949698 (Exhibit 20 hereto);

3       l. Ex. 8758, M 0941541-542 (Exhibit 21 hereto) and any additional

4       communications concerning the subject matter therein;

5       m. Ex. 8670, M 0949732-734 (Exhibit 22 hereto) and any additional

6       communications concerning the subject matter therein;

7       n. Ex. 8672, M 0949731 (Exhibit 23 hereto) and any additional

8       communications concerning the subject matter therein;

9       o. M 0940479 (Exhibit 24 hereto) and any additional communications

10       concerning the subject matter therein;

11       p. Ex. 1148, M 0014331 (Exhibit 25 hereto) and any additional

12       communications concerning the subject matter therein;

13       12.   M 0065871-92 (Exhibit 26 hereto), including but not limited to the

14   person(s) who requested creation of this document, the person(s) who authored the

15   document, the person(s) who contributed to or were involved in any way in the

16   creation of this document, the date(s) this document was in use, all purposes for

17   which it was used, any and all revisions to this document, and the source of every

18   piece of information contained therein.

19       13.   Ex. 1812A, M 0086631-676 (Exhibit 27 hereto), including but not

20   limited to the person(s) who requested creation of this document, the person(s) who

21   authored the document, the person(s) who contributed to or were involved in any

22   way in the creation of this document, the date(s) this document was in use, all

23   purposes for which it was used, any and all revisions to this document, and the

24   source of every piece of information contained therein.

25       14.   Ex. 1805, M 0079765-771 (Exhibit 28 hereto) and all research

26   referenced therein, including but not limited to the person(s) who requested creation

27   of this document, the person(s) who authored the document, the person(s) who

28   contributed to or were involved in any way in the creation of this document, the

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)

1  date(s) this document was in use, all purposes for which it was used, any and all

2  revisions to this document, and the source of every piece of information contained

3  therein.

4      15.  M 0941568-578 (Exhibit 29 hereto), including but not limited to the

5  person(s) who requested creation of this document, the person(s) who authored the

6  document, the person(s) who contributed to or were involved in any way in the

7  creation of this document, the date(s) this document was in use, all purposes for

8  which it was used, any and all revisions to this document, and the source of every

9  piece of information contained therein.

10      16.  All fashion doll concepts (including ideas, drawings, prototypes and

11  the like and independent of the precise stage of creation) considered by Mattel for

12  potential marketing between 1990 and 2002, whether such concepts were presented

13  by internal or external sources, whether such concepts were accepted or rejected,

14  the reasons for such acceptance or rejection, and any market research concerning

15  such doll concepts considered in connection with the decision whether to accept or

16  reject them.

17      17.  All facts Mattel intends to introduce at trial to show that it would have

18  chosen to market Bratz products had Carter Bryant disclosed his Bratz drawings to

19  Mattel at any point in time between January 1, 1999 and October 19, 2000.

20      18.  All qualitative and quantitative consumer research conducted by

21  Mattel concerning or including any MGA product, any attributes of any MGA

22  product, or any MGA product packaging, including the manner and methodology of

23  such research, the results of such research, any reports concerning such research,

24  and the distribution within Mattel of any reports concerning such research.

25      19.  The harm Mattel claims it suffered as a result of defendants' alleged

26  misconduct including:

27          a.  The identity of every Mattel Product that you contend sustained

28            damage in any way by defendants' alleged misconduct;

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)

b. The period the alleged misconduct took place;

c. Any alleged lost profits, lost sales, price erosion, lost sales opportunities or diversion of sales suffered by Mattel Products as a result of defendants' alleged misconduct, including but not limited to lost sales of Barbie, including quantification and analysis of lost profits, lost sales, price erosion, lost sales opportunities or diversion of sales by period, region, product and brand;

d. Any increase in expenses alleged to have been experienced by Mattel as a consequence of defendants' alleged misconduct;

e. Sales and/or financial forecasts or projections of every Mattel Product whose sales you contend were harmed by MGA's alleged misconduct;

f. Market share analysis, shelf space analysis, retail space analysis or reports of every Mattel Product whose sales you contend were harmed by MGA's alleged misconduct.

20. The harm Mattel claims it suffered as a result of defendants' alleged misconduct including purported theft of trade secrets through MGA's employment of Mattel's former employees including:

a. Alleged acts of disloyalty and misconduct of Mattel's former employees;

b. Compensation or monies paid by Mattel to Mattel's former employees during such periods as Mattel contends such employees were disloyal or engaged in misconduct;

c. Mattel's assets, resources, property, proprietary or confidential information, trade secrets or intellectual property and value of them that Mattel alleges were converted or diverted by Mattel's former employees and used by defendants;

d. Alleged actual losses suffered by Mattel caused by defendants' alleged misappropriation of trade secrets including the causes of loss, dates of

- 12 -

1    loss and the quantification of loss;

2       e.   All aspects of Mattel's claim that the name "Moxie" was and is

3            confidential and trade secret Mattel information.

4       21.    Any and all forensic analysis upon which Mattel intends to rely to

5    support its claims or defenses in these consolidated actions, including but not

6    limited to:

7       a.   The identity of all current and former Mattel employee(s) whose

8            electronic data/information was subjected to forensic analysis;

9       b.   The date(s) and time(s) of each forensic analysis;

10      c.   The methodologies employed in each analysis;

11      d.   The results of such analysis and any reports thereof.

12      22.    The contents of each copyright application filed by Mattel regarding

13   Bratz drawings, including but not limited to those found at Ex. 13886, M 0920260-

14   64 (Exhibit 30 hereto); Ex. 13887, M 0920265-69 (Exhibit 31 hereto); Ex. 13888,

15   M 0920270-74 (Exhibit 32 hereto); Ex. 13873, M 0920195-99 (Exhibit 33 hereto);

16   Ex. 13874, M 0920200-04 (Exhibit 34 hereto); Ex. 13875, M 0920205-09 (Exhibit

17   35 hereto); Ex. 13876, M 0920210-14 (Exhibit 36 hereto); Ex. 13877, M 0920215-

18   19 (Exhibit 37 hereto); Ex. 13878, M 0920220-24 (Exhibit 38 hereto); Ex. 13879,

19   M 0920225-29 (Exhibit 39 hereto); Ex. 13880, M 0920230-34 (Exhibit 40 hereto);

20   Ex. 13881, M 0920235-39 (Exhibit 41 hereto); Ex. 13882, M 0920240-44 (Exhibit

21   42 hereto); Ex. 13883, M 0920245-49 (Exhibit 43 hereto); Ex. 13884, M 0920250-

22   54 (Exhibit 44 hereto); Ex. 13885, M 0920255-59 (Exhibit 45 hereto).

23      23.    M 1241745-813 (Exhibit 46 hereto), including but not limited to:

24      a.   the retention arrangement between Mattel and Bain & Company

25           regarding this document including but not limited to the scope of the

26           assignment; the identity of all Mattel personnel involved in "Project

27           Doll"; the dates Bain & Company was retained to complete "Project

28           Doll"; and the fees paid by Mattel to Bain & Company regarding

1    "Project Doll";

2    b. the confidentiality agreement(s) entered into between Mattel and Bain

3    & Company, as well as any other third parties, regarding "Project

4    Doll";

5    c. all rough drafts, revised copies, notes, electronic mails, updated copies,

6    communications and all other materials concerning "Project Doll";

7    d. all sources of information regarding "Project Doll," including but not

8    limited to notes, drafts, tape recordings, electronic mail, phone

9    messages referring or relating to the source(s) of information for each

10    and every factual representation set forth in the  document entitled

11    "Project Doll – Final Handover Materials" dated September 7, 2004.

12    24.    Identification of all Mattel products marketed or sold in trapezoidal

13 packaging, including but not limited to the My Scene Sound Lounge and Barbie

14 Happy Birthday, as well as all facts concerning:

15    a. the creation, design, development of the packaging, including

16    evaluation of competitive product lines;

17    b. the adoption of each such packaging;

18    c. any trademark, copyright, patent or other clearance searches conducted

19    in connection with the packaging;

20    d. Mattel's awareness of any trademark or trade dress registrations or

21    design patents for trapezoidal packaging, including but not limited to

22    those owned by MGA;

23    b. the marketing, first commercial use or sale, sales, and profitability of

24    the products.

25

26

27

28

1    25.    All Mattel financial documents that have been produced in the course

2   of this litigation, including but not limited to all Mattel brand profit and loss

3   statements.

4    26.    A complete explanation of the precise circumstances in which Mattel

5   acquired the following document: M 0151750-762 (Exhibit 47 hereto).

6    27.    Ex. 8677, M 0951650-764 (Exhibit 48 hereto), including but not

7   limited to the person(s) who requested creation of this document, the person(s) who

8   authored the document, the person(s) who contributed to or were involved in any

9   way in the creation of this document, the date(s) this document was in use, all

10  purposes for which it was used, any and all revisions to this document, and the

11  source of every piece of information contained therein.

12

13

14  Dated:  April 27, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16                                  By:  _____*/s/ Annette L. Hurst*_____

17                                          Annette L. Hurst
                                            Attorneys for MGA Parties

18

19

20

21

22

23

24

25

26

27

28

THIRD PHASE 2 DEPOSITION NOTICE OF MATTEL
CV 04-9049 SGL (RNBx)