1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6  Attorneys for Mattel, Inc.

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                    EASTERN DIVISION

10

11 | MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) |

12 |            Plaintiffs, | Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727 |

13 |      vs. | Hon. David O. Carter |

14 | MGA ENTERTAINMENT, INC., a California corporation, | MATTEL, INC.'S OPPOSITION TO OMNI 808 INVESTORS, LLC'S MOTION TO DISMISS MATTEL, INC.'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS |

15

16 |            Defendants. | |

17 | AND CONSOLIDATED ACTIONS | |

18 | | **PUBLIC REDACTED** |

19

20 | | Hearing Date: June 7, 2010
Time: 8:30 a.m.
Place: Courtroom 9D |

21

22 | | Discovery Cut-off: TBD
Pre-trial Conference: TBD
Trial Date: TBD |

23

24

25

26

27

28

00505.07975/3502271.1

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I.    MATTEL HAS STATED A VALID RICO CONSPIRACY CLAIM...............7

    A.    Mattel's RICO Conspiracy Claim Is Controlled By *Rule* 8(a)................7

    B.    Mattel States a Valid RICO Conspiracy Claim Against Omni.................8

        1.    Omni Had Sufficient Knowledge of the Criminal Enterprise........9

        2.    Omni Agreed to Participate in the Criminal Enterprise ...............10

    C.    Mattel Has Standing to Raise Its RICO Conspiracy Claim....................11

II.   MATTEL HAS STATED VALID CLAIMS AGAINST OMNI FOR ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFERS..............14

    A.    Mattel Has Standing To Raise Its Fraudulent Transfer Claims..............14

    B.    Mattel Has Alleged Fraudulent Transfers from MGA to Omni .............15

        1.    MGA's "IP Transfer"To Omni Was Fraudulent...........................15

        2.    MGA's Interest Payments to Omni Are Fraudulent Transfers .................................................................................17

    C.    Mattel States a Valid Constructive Fraudulent Transfer Claim.............18

    D.    Mattel Has Stated a Valid Declaratory Relief Claim Against Omni......19

III.  TO THE EXTENT THIS MOTION IS GRANTED, MATTEL SHOULD BE GRANTED LEAVE TO AMEND ..............................................20

CONCLUSION.................................................................................................20

1

## TABLE OF AUTHORITIES

2                                                                                    **Page**

3                                                    <u>Cases</u>

4   *Aetna Cas. Sur. Co. v. P&B Autobody,*
5       43 F.3d 1546 (1st Cir. 1994) ................................................................. 9

6   *Allard v. DeLorean,*
        884 F.2d 464 (9th Cir. 1989)................................................................. 14

7   *Am. Twine Ltd. P'ship v. Whitten,*
8       392 F. Supp. 2d 13 (D. Mass. 2005)....................................................... 20

9   *Ashcroft v. Iqbal,*
        129 S. Ct. 1937 (2009) ....................................................................... 7

10  *Bankers Trust Co. v. Rhoades,*
11      859 F.2d 1096 (2d Cir. 1988).............................................................. 13

12  *Beck v. Prupis,*
        529 U.S. 494 (2000) ........................................................................... 8

13
    *Bryant v. Mattel, Inc.,*
14      573 F. Supp. 2d 1254 (C.D. Cal., 2007)............................................. 3, 8

15  *Couch v. Cate,*
        2010 WL 1936277 (9th Cir. May 14, 2010)........................................... 20

16
    *Gutierrez v. Givens,*
17      1 F. Supp. 2d 1077 (S.D. Cal. 1998) ................................................ 10, 12

18  *Hamilton v. Willms,*
19      2005 WL 3797562 (E.D. Cal. Oct. 28, 2005) ......................................... 9

20  *Hecht v. Summerlin Life and Health Ins. Co.,*
        536 F. Supp. 2d 1236 (D. Nev. 2008) ................................................... 13

21
    *Holmes v. Sec. Investor Prot. Corp.,*
22      503 U.S. 258 (1992) ......................................................................... 12

23  *Jeffreys v. Exten,*
        784 F. Supp. 146 (D. Del. 1992) .......................................................... 12

24
    *Kaplan v. Reed,*
25      28 F. Supp. 2d 1191 (D. Colo. 1998)..................................................... 13

26  *Klein v. Tabatchnick,*
        610 F.2d 1043 (2d Cir. 1979).............................................................. 18

27
    *Lauter v. Anoufrieva,*
28      642 F. Supp. 2d 1060 (C.D. Cal. 2009).................................................. 7

MATTEL'S OPPOSITION TO OMNI'S MOTION TO DISMISS

*Lincoln House, Inc. v. Dupre*,
  903 F.2d 845 (1st Cir. 1990) ............................................................... 13

*Lockheed Martin Corp. v. Boeing Co.*,
  314 F. Supp. 2d 1198 (M.D. Fla. 2004) ............................................... 11

*Miller v. Glen & Helen Aircraft, Inc.*,
  777 F.2d 496 (9th Cir.1985) ................................................................ 13

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009) ............................................................... 20

*National Capital Orthopedic Associates, P.C. v. Goltz*,
  1997 WL 625117 (D. Md. Sept. 29, 199) ............................................. 13

*Norfolk Monument Co. v. Woodlawn Mem'l Gardens, Inc.*,
  394 U.S. 700 (1969) ............................................................................ 10

*Oki Semiconductor Co. v. Wells Fargo Bank*,
  298 F.3d 768 (9th Cir. 2002) ......................................................... 10, 11

*In re Roco Corp.*,
  701 F.2d 978 (1st Cir. 1983) ............................................................... 18

*Rose v. Bartle*,
  871 F.2d 331 (3d Cir. 1989) .................................................................. 7

*Rothberg v. Chloe Foods Corp.*,
  2007 WL 2128376 (E.D.N.Y. July 25, 2007) ...................................... 12

*In re Sahlen & Assoc., Inc. Sec. Lit.*,
  773 F. Supp. 342 (S.D. Fla. 1991) ....................................................... 10

*Salinas v. U.S.*,
  522 U.S. 52 (1997) ...................................................................... 8, 9, 11

*Sec. Investor Prot. Corp. v. Vigman*,
  908 F.2d 1461 (9th Cir. 1990) ............................................................. 11

*Smith v. Berg*,
  247 F.3d 532 (3d Cir. 2001) ................................................................ 11

*U.S. v. Fernandez*,
  388 F.3d 1199 (9th Cir. 2004) ............................................................... 8

*U.S. v. Rastelli*,
  870 F.2d 822 (2d Cir. 1989) .................................................................. 9

*U.S. v. Zichettello*,
  208 F.3d 72 (2d Cir. 2000) .................................................................... 9

MATTEL'S OPPOSITION TO OMNI'S MOTION TO DISMISS

1

## Statutes

2   *Cal. Civ. Code* § 3439.01 (emphasis added) ................................................................ 14

3   *Cal. Civ. Code* § 3439.01 ................................................................................................ 14

4   *Cal. Civ. Code* § 3439.04(a) .......................................................................................... 14

5   *Cal. Civ. Code* § 3439.08(b) .......................................................................................... 15

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S OPPOSITION TO OMNI'S MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

A motion to dismiss challenges the sufficiency of the allegations in a pleading. Omni purports to do that in its motion. But the allegations Omni challenges are not those Mattel raised in the Fourth Amended Counterclaims. Rather, Omni challenges the sufficiency of the allegations it wishes Mattel raised, and ignores those that Mattel actually did. Then Omni argues that because Mattel's allegations are "conclusory," Mattel fails to state claims for RICO conspiracy or fraudulent transfers.

Mattel alleges much more than what Omni addresses in its motion. Mattel alleges that, at a time when MGA was facing the loss of its most valuable asset to Mattel, Omni was created to further MGA's ongoing unlawful enterprise and hide the proceeds of its unfair competition from Mattel and the courts. In furtherance of that scheme, Omni's members knowingly agreed to invest in Omni on behalf of Larian and to conceal that Larian was behind their investments, including by using shell companies, entering into undisclosed side agreements, fabricating sham loan documents, and lying at depositions. Mattel alleges that Omni facilitated MGA's fraudulent conveyances of money and intellectual property rights that, if judgment is entered on the verdicts that already have issued, will rightfully belong to Mattel. By these actions, and others detailed in *twenty paragraphs* of substantive factual allegations that Omni glosses over and ignores, Omni knowingly and intentionally agreed to join the conspiracy to further the Criminal Enterprise's unlawful objects. Omni does not address those allegations, nor argue why they are insufficient to support Mattel's claims. Omni's attack on Mattel's pleading as "conclusory" is without merit.

Omni also argues that its alleged conduct is too "unrelated" to the purported "Bratz RICO Enterprise" to be actionable. But Mattel nowhere alleges the existence of a "Bratz RICO Enterprise." Rather, the "*Criminal Enterprise*" that Mattel alleges encompasses much more than the theft of Bratz, including the enterprise members' interrelated efforts to conceal the proceeds of their many thefts from Mattel and to

1  obstruct the efforts of Mattel and the courts to uncover and remedy this wrongdoing.

2  Omni agreed to further and facilitate that Enterprise.  Omni also proposes pleading

3  standards and substantive RICO requirements that do not apply to claims for RICO

4  conspiracy.  When the correct standards are applied in light of the full scope of the

5  allegations Mattel actually includes, Mattel's allegations are more than sufficient to state

6  claims against Omni for RICO conspiracy and fraudulent conveyances.  Omni's motion

7  to dismiss should be denied.

8                **Response to Omni's Statement of Mattel's Allegations**

9        Omni's purported "statement of Mattel's allegations" starts and ends with Omni's

10  acquisition of the Wachovia debt.  According to Omni, Mattel "merely states that Mr.

11  Larian approached Mr. Kadisha in 2008 to purchase MGA's debt from Wachovia and

12  that they assembled their friends together to pool assets to purchase the credit facility."

13  Mot. at 13.  Omni discusses a "Bratz RICO Enterprise" that Mattel purportedly alleges,

14  even though that term is nowhere included in the FAAC.  Omni argues that the "alleged

15  Omni conduct . . . had different participants and constitutes a single, isolated transaction

16  – resulting from a business decision undertaken by Wachovia to foreclose on the debt –

17  entirely unrelated to the Bratz RICO Enterprise."  Mot. at 11.  It also argues that based

18  on Mattel's "conclusory assertions," Mattel has failed to show that Omni knowingly

19  agreed to further a RICO enterprise, and that Mattel has failed to show anything

20  wrongful about the fraudulent transfers.  Omni wholly mischaracterizes Mattel's

21  allegations and simply ignores most of them; it is only by doing so that Omni avoids the

22  conclusion that Omni knowingly agreed to join the RICO conspiracy that Mattel

23  described, and intentionally participated in a scheme to defraud Mattel.

24        **Mattel Alleges a Broad "Criminal Enterprise".**  The FAAC details the

25  operation of an ongoing "Criminal Enterprise" that is much broader than the so-called

26  "Bratz RICO Enterprise" Omni discusses.  Mattel alleges that the Criminal Enterprise

27  "was and is engaged in a scheme to unlawfully compete with Mattel, by stealing the

28  trade secrets and confidential and proprietary information of Mattel, by depriving Mattel

-2-

of the honest services of its employees, by infringing on Mattel's rights, *by concealing its wrongdoing and reaping the benefits of such unlawful competition against Mattel, and by obstructing efforts by Mattel and the Court to address and remedy this wrongdoing.*" FAAC at ¶ 123 (emphasis added). Mattel explains the activities of the Criminal Enterprise throughout its counterclaims in more than 70 pages of text, and by attaching hundreds of predicate acts, none of which Omni addresses.

**Mattel Alleges Omni's Knowing Participation to Facilitate and Further the Criminal Enterprise.** Mattel includes dozens of detailed factual allegations supporting its claim that Omni, knowing that the Criminal Enterprise was engaged in a scheme of unfairly and wrongfully competing with Mattel, agreed to assist, advance and further that Enterprise's unlawful objectives. FAAC at ¶¶ 97-116.[1] Mattel details how Omni's members – all close friends or family members of Larian – agreed to create a sham financing entity, called Omni 808, and to secretly invest in Omni on behalf of Larian while holding themselves out as Omni's true owners. FAAC at ¶¶ 99-111. Omni's members also used shell companies to invest in Omni, including the secretive Lexington company and its purported principal "Mr. Samhoui," which allegedly financed Leon Neman's (Larian's brother-in-law's) $10 million investment in Omni. Id. ¶ 109.

Omni's members disguised Larian's financing by entering into undisclosed side-deals whereby Larian secretly agreed to repay the Omni members for their investments, and did so, and then created false documents to conceal these transactions. FAAC at ¶¶ 110-111. MGA and Omni also entered into a "Side Letter Agreement" in which MGA granted or agreed to grant to Omni a gratuitous security interest in all of its intellectual property rights, including Bratz, even though the Phase 1 jury had concluded just weeks before that those rights belonged to Mattel. FAAC at ¶ 107. While Omni now argues that the parties did not make a transfer *through the Side Letter Agreement*, it does not

---

[1]   Mattel also attaches to the FAAC more than a dozen documents evidencing the MGA Parties' and Omni's use of mail and wire communications to further their fraudulent scheme to encumber MGA's assets. See FAAC at Exs. S-41-44, 46-50, 52-54, 62, 77. Omni does not address those exhibits in its Motion.

1   address its own earlier statement that Omni and MGA "contemplated and intended" from

2   the outset that MGA's purported debt to Omni would be secured by the "expanded

3   collateral package" described in the Side Letter Agreement.  Id.  Indeed, Omni's

4   principal, Neil Kadisha, testified that ███████████████████████████

5   ███████████████████████████.[2]  Larian also stated, in an e-mail

6   attached to the FAAC, that "███████████████████."  FAAC at Ex. S-62.

7        Mattel alleges that MGA and Omni agreed to a purported line of credit, called the

8   "Draw Demand Note," that was a mechanism for Larian to siphon money out of MGA

9   and into his pockets, via Omni and his "IGWT 826" entity – an entity that Larian formed

10  on August 27, 2008, the day after the Phase 1 trial ended, and which he named "826" to

11  memorialize that event.  FAAC at ¶¶ 105, 112-113.  The interest payments MGA made

12  to Omni pursuant to the Draw Demand Note, which were then paid by Omni to IGWT

13  826, are fraudulent distributions to Larian that are illegal in light of MGA's obligations

14  to Mattel and to its other creditors.

15       Mattel also details how Omni and its members have taken pains to conceal the true

16  nature of these transactions, and, in particular, Larian's involvement in them.  Among

17  other things, Omni has made affirmative misrepresentations to the Court that Larian and

18  MGA did not contribute *at all* to the acquisition of the Wachovia debt.  FAAC at ¶ 104.

19  We now know, however, that Larian, using proceeds generated from MGA's illegal sales

20  of Bratz, contributed at least $60 million of the $110 million purchase price through his

21  IGWT 826 entity, and that he contributed, or agreed to contribute, tens of millions more

22  through his undisclosed side deals with the members of Omni.  The evidence of these

23  side deals is overwhelming, including e-mails showing Larian's obligation to "repay" the

24  members of Omni within weeks after the deal closed and documents confirming that

25  Larian did in fact repay at least one member of Omni, Arsalan Gozini, by December 1,

26  2008.  FAAC at ¶¶ 110, 111.  The Omni members have denied that these side deals exist,

27

28  [2]   Kadisha Dep., August 28, 2009, at 213:16-213:24.

00505.07975/3502271.1

1   and have gone so far as to fabricate and backdate loan documents in an attempt to show
2   that Larian's payment to Gozini was an independent loan from Larian to Gozini,
3   unrelated to Gozini's investment in Omni; indeed, Neil Kadisha testified under oath that
4   ████████████████████████████████████████████████████. Id.[3]

5       The Omni parties also conspired to obstruct justice by preparing sham
6   correspondence intended to show that MGA was in default under the Credit Agreement
7   and that Omni was ready to implement default remedies, even while defendants had
8   admitted elsewhere that Omni would "never" put MGA into bankruptcy because of
9   MGA's "friendly relationship" with Omni. FAAC at ¶ 114. Omni also conspired with
10  Larian to prepare a letter to the Court, purportedly on behalf of Omni, but drafted by
11  MGA, conveying Omni's alleged "disappoint[ment]" with the Court's injunction ruling,
12  and Omni's "commit[ment] to providing financing for MGA and its principals." FAAC
13  at ¶ 115. That letter was intended to mislead the Court into believing that because Omni,
14  a purported independent third party lender to MGA, stood behind MGA, MGA would be
15  able to satisfy a monetary judgment such that an injunction was unnecessary. Id. Of
16  course, the actual purpose of Omni is just the opposite: Omni was formed to frustrate
17  Mattel's ability to recover anything from MGA, not to ensure Mattel's rights. Id.

18      As a result of these transactions involving Omni and MGA, Omni – funded largely
19  or entirely by Larian himself – claims to have as much as a $350 million security
20  interest, purportedly senior to Mattel's, in "everything [MGA] has," potentially including

21

22  [3]   Specifically, in an e-mail dated November 19, 2008, which was not produced in
23  this case until April 5, 2010 (after Mattel moved for leave to file the FAAC), ████████
24  ████████████████████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████████ See
28  Gozini Rr. Tr., dated May 11, 2010, at 106-121.

1   MGA's intellectual property rights.  FAAC at ¶ 116.  Omni stands ready to assert its

2   purported security interests to ensure that if judgment is entered in this case in Mattel's

3   favor, Mattel will be unable to recover anything of value from MGA.

4           **Mattel Alleges that Omni Engaged in Fraudulent Transfers.**  In addition to its

5   RICO conspiracy claim, Mattel names Omni as a defendant in two claims brought

6   pursuant to California's Uniform Fraudulent Transfer Act, <u>Cal. Civ. Code</u> §§ 3439, <u>et</u>

7   <u>seq.</u> ("CUFTA").  Omni opposes those claims on the grounds that Mattel has not alleged

8   the transfer of anything from MGA to Omni.  Mot. at 19-22.  Not so.  Mattel alleges that

9   MGA granted to Omni a security interest in its purported Bratz intellectual property

10  rights and also made payments to Omni pursuant to the Draw Demand Note that were

11  effectively distributions from MGA to Larian.   In its thirteenth counterclaim for

12  Avoidance of Actual Fraudulent Transfers, Mattel alleges that those fraudulent transfers

13  were intended "to defraud creditors of MGA, including Mattel, by stripping MGA of

14  money and other assets to ensure that such money and assets would not be available to

15  satisfy claims against MGA and to move assets that could not be completely stripped

16  into friendly hands so that any attempt by MGA's creditors to satisfy their claims against

17  MGA would be rendered more difficult and expensive."  FAAC at ¶ 208.

18          In its fourteenth counterclaim for Avoidance of Constructive Fraudulent Transfers,

19  Mattel alleges that MGA was insolvent a the time of the fraudulent transfers (FAAC at ¶

20  217), and that "MGA received less than reasonably equivalent value in exchange" for

21  those transfers," including because "[a]ny funds made available to MGA in exchange for

22  the IP Transfer constituted less than reasonably equivalent value in view of the

23  significant value of the Bratz-related intellectual property that was purportedly

24  encumbered by the IP Transfer," and because MGA received no value in return for the

25  payments it made to Omni pursuant to the Draw Demand Note.  FAAC at ¶ 218.

26          As to both its claims against Omni under the CUFTA, Mattel seeks the avoidance

27  of the IP Transfer and the improper interest payments or, alternatively, the recovery of

28

1  the value of the transferred assets to the extent necessary to satisfy Mattel's claims

2  against MGA, as well as other relief.  FAAC at ¶¶ 210-213, 220-223.

3  **Argument**

4  **I.      MATTEL HAS STATED A VALID RICO CONSPIRACY CLAIM**

5          In an effort to defeat Mattel's properly pleaded RICO conspiracy claim, Omni

6  bounces back and forth, without acknowledgment, between the standards required to

7  establish a substantive RICO claim – which Mattel did not allege against Omni – and the

8  significantly less onerous requirements necessary to establish a RICO conspiracy claim –

9  which Mattel does claim as to Omni.  Omni also mischaracterizes, and largely ignores,

10  the most fundamental allegations in Mattel's pleading in an effort to downplay Omni's

11  integral role in the RICO conspiracy.   When the claim Mattel actually alleges is

12  considered in light of the proper standards, it is clear that Mattel more than adequately

13  states a claim against Omni for RICO conspiracy.  See Ashcroft v. Iqbal, 129 S.Ct. 1937,

14  1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient

15  factual matter, accepted as true, to state a claim to relief that is plausible on its face.")

16  (internal citations omitted); al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009) (a

17  "claim for relief that is plausible [] should be allowed to proceed").

18      **A.      Mattel's RICO Conspiracy Claim Is Controlled By *Rule* 8(a)**

19          Omni asserts that because Mattel's complaint "alleges claims that sound in fraud,

20  Mattel's RICO conspiracy allegations must be pled in accord with Rule 9(b).  Mot. at 7-

21  8.  That is not the law.  Rather, in considering a Rule 12(b)(6) motion to dismiss a RICO

22  conspiracy claim under 1962(d), the Court measures the sufficiency of conspiracy

23  allegations under the standard set forth in Rule 8(a).  See, e.g., Rose v. Bartle, 871 F.2d

24  331, 366 (3d Cir. 1989) ("Allegations of conspiracy are not measured under the

25  Fed.R.Civ.P. 9(b) standard, which requires greater particularity of allegation of fraud, but

26  are measured under the more liberal Fed.R.Civ.P. 8(a) pleading standard.") (internal

27  citations omitted).  That a RICO conspiracy claim relies on predicate acts involving

28  fraud, which must be pled under Rule 9(b), is of no consequence.  See Lauter v.

1   Anoufrieva, 642 F. Supp. 2d 1060, 1080-1081 (C.D. Cal. 2009) ("RICO claims not

2   predicated upon fraud [] need not be pleaded with particularity.").[4]

3          **B.    Mattel States a Valid RICO Conspiracy Claim Against Omni**

4          The Supreme Court has provided the following description of the behavior

5   necessary to establish culpability as a RICO conspirator:

6          "A conspirator must intend to further an endeavor which, if completed,

7          would satisfy all of the elements of a substantive criminal offense, but it

8          suffices that he adopt the goal of furthering or facilitating the criminal

9          endeavor.  He may do so in any number of ways short of agreeing to

10         undertake all of the acts necessary for the crime's completion.  One can be

11         a conspirator by agreeing to facilitate only some of the acts leading to the

12         substantive offense."

13  Salinas v. U.S., 522 U.S. 52, 65 (1997).  In Salinas, the Supreme Court held that an

14  individual's knowing agreement to facilitate a RICO enterprise was sufficient to

15  establish culpability as a RICO conspirator even where he did not commit *any* of the

16  predicate acts in a conspiracy. Id. at 65-66; see U.S. v. Fernandez, 388 F.3d 1199, 1228-

17  30 (9th Cir. 2004) (rejecting RICO conspiracy standards set forth prior to Salinas and

18  adopting a test that "removes any requirement that the defendant have actually conspired

19  to operate or manage the enterprise herself"; "a defendant is guilty of conspiracy to

20  violate § 1962(c) if the evidence showed that she 'knowingly agree[d] to facilitate a

21  scheme which includes the operation or management of a RICO enterprise'"); Beck v.

22  Prupis, 529 U.S. 494, 507 (2000) (the very purpose of permitting civil claims based on

23  1962(d) is to allow plaintiffs to "sue co-conspirators who might not themselves have

24  violated one of the substantive provisions of § 1962").  Although Omni spends several

25

26  [4] Judge Larson reached this conclusion in ruling on MGA's prior Motion to Dismiss:
    "In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the Court
    measures the sufficiency of alleged predicate acts of wire fraud and mail fraud by the

27  Rule 9(b) 'pleading-with-particularity' standard; however, the Court measures the
    sufficiency of all other predicate acts by the more lenient standard set forth in Rule 8(a)."

28  Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254, 1261 (C.D. Cal., 2007).

1  pages arguing that Mattel has not shown a pattern of racketeering (Mot. at 9-11), notably

2  absent from the Supreme Court's formulation is any requirement that a RICO plaintiff

3  allege any such thing as to RICO conspirators.  Rather, to state a valid RICO conspiracy

4  claim against Omni, Mattel need only allege that Omni had knowledge of the Criminal

5  Enterprise and agreed to further it.  See Salinas, 522 U.S. at 65.  Mattel has done that.

6          **1.**    **Omni Had Sufficient Knowledge of the Criminal Enterprise**

7        A defendant may be held liable for his participation in a RICO conspiracy even if

8  he had knowledge only of "the general contours of the conspiracy."  U.S. v. Zichettello,

9  208 F.3d 72, 100 (2d Cir. 2000); see U.S. v. Rastelli, 870 F.2d 822, 828 (2d Cir. 1989)

10  ("the government need not prove that a [RICO] conspirator-defendant agreed with every

11  other conspirator, or knew all the other conspirators, or had full knowledge of all the

12  details of the conspiracy"); Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1562

13  (1st Cir. 1994) (defendant need not have knowledge of the "entire conspiratorial sweep"

14  to be said to have knowingly participated in or facilitated it).  The knowledge

15  requirement may even be satisfied by evidence that the defendant knew what other

16  conspirators "were up to" and knew or suspected that she was part of a larger enterprise.

17  Hamilton v. Willms, 2005 WL 3797562, at *10 (E.D. Cal. Oct. 28, 2005).

18        While Omni characterizes Mattel's allegations concerning its knowledge of the

19  conspiracy as "conclusory assertions" (Mot. at 12), Mattel actually provides detailed

20  allegations supporting that conclusion.  Mattel describes at length, among other things,

21  how Omni attempted to encumber Bratz intellectual property rights through a gratuitous

22  grant from MGA, at a time when the jury had just determined that Mattel owned such

23  rights (FAAC at ¶ 107); structured an additional purported line of credit that was merely

24  a front to allow Larian to siphon more money out of MGA and into his hands (FAAC at

25  ¶¶ 112, 113); lied repeatedly to the Court and to Mattel, including under oath, about the

26  true nature of the Omni transaction and about the relationship between MGA and Omni

27  (FAAC at ¶¶ 104, 108-111, 114-116); and, through its members and managing agents,

28  secretly invested in Omni on behalf of Larian and entered into and backdated sham

1   promissory notes and other loan documents to conceal Larian's role in the purchase of

2   MGA's debt.  FAAC at ¶¶ 100-111.  Such detailed factual allegations are more than

3   sufficient to create a plausible inference that Omni had knowledge of the general nature

4   of the Criminal Conspiracy to defraud Mattel.  Indeed, the knowledge requirement under

5   § 1962(d) may be – and often is – met by circumstantial evidence tending to show that

6   the defendant was aware of the general nature of the conspiracy.  See, e.g., Gutierrez v.

7   Givens, 1 F. Supp. 2d 1077, 1080 (S.D. Cal. 1998) (allegations of defendant's partial

8   control of a bank sufficient to establish that bank had knowledge of defendant's use of

9   the bank to transfer assets beyond the reach of defendant's creditors and to show that

10  bank was a RICO conspirator).  Mattel has amply alleged facts establishing Omni's

11  knowledge of the general nature of the conspiracy.

12  **2.    Omni Agreed to Participate in the Criminal Enterprise**

13  The "agreement" element of a RICO conspiracy claim is a legal construct, and in

14  no way mandates that a group of co-conspirators must have entered into any formal or

15  express agreement.  See, e.g., Norfolk Monument Co. v. Woodlawn Mem'l Gardens,

16  Inc., 394 U.S. 700, 704 (1969) ("it is settled that no formal agreement is necessary to

17  constitute an unlawful conspiracy") (internal citations omitted).  The presence of an

18  illegal "agreement" for purposes of 1962(d) may be inferred either from the co-

19  conspirators' behavior or from the "interdependence of activities and persons involved."

20  Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002); In re

21  Sahlen & Assoc., Inc. Sec. Lit., 773 F. Supp. 342, 370 (S.D. Fla. 1991) (asserting that

22  plaintiff need not allege that defendants entered into an "explicit pact to commit a pattern

23  of racketeering in violation of the substantive provisions of the statute").

24  Mattel's allegations concerning Omni's acts in furtherance of the Criminal

25  Enterprise – most of which Omni ignores entirely – are more than sufficient to create a

26  plausible inference that Omni agreed to participate in the Criminal Enterprise.  Indeed,

27  there is no other plausible explanation for why Omni and its members would have agreed

28  to invest in Omni on behalf of Larian and then conceal their side deals with Larian.

1    While Omni argues that Larian was simply "not wanting competitors to know that he

2    loaned money to Omni to help purchase the debt from Wachovia" (Mot. at 14), that

3    argument has no support, has never been raised by MGA, and does not explain why the

4    Omni members themselves, who presumably do not share Larian's concerns about

5    MGA's competitors, would engage in lies and deceit.  In any event, merely because

6    Omni can concoct what it purports to be a plausible explanation for part of the conduct at

7    issue does not mean that the inferences Mattel draws from the same facts are not

8    plausible.  Mattel has amply pleaded facts supporting its conspiracy claim.

9        **C.    Mattel Has Standing to Raise Its RICO Conspiracy Claim**

10       Omni argues that Mattel's RICO conspiracy claim fails because Mattel has not

11   alleged that it suffered injury proximately caused by Omni. Mot. at 14-18.  Omni cites

12   no authority for the proposition that Mattel must allege such injury, nor is that the law.

13       In terms of injury, all a plaintiff must plead to sustain a claim under 1962(d) is a

14   cognizable injury caused by a predicate act committed by *at least one* conspirator; there

15   is no need to prove injury caused by *each* conspirator.  Smith v. Berg, 247 F.3d 532, 538

16   (3d Cir. 2001) ("The plain implication of the standard set forth in Salinas is that one who

17   opts into or participates in a conspiracy is liable for the acts of his co-conspirators which

18   violate section 1962(c) even if the defendant did not personally agree to do, or to

19   conspire with respect to, *any* particular element."); see Lockheed Martin Corp. v. Boeing

20   Co., 314 F. Supp. 2d 1198, 1217 n.13 (M.D. Fla. 2004) ("[P]laintiff need only allege that

21   the defendant conspired to violate some substantive provision of RICO, that some

22   member of the conspiracy committed an overt act of racketeering, and that the act of

23   racketeering injured the plaintiff.").  Moreover, all conspirators are liable for the acts of

24   their co-conspirators, whether their individual actions proximately caused the plaintiff's

25   injuries or not.  See Oki Semiconductor, 298 F.3d at 775 ("If a RICO conspiracy is

26   demonstrated, all conspirators are liable for the acts of their co-conspirators."); see also

27   Salinas, 522 U.S. at 64 ("so long as they share a common purpose, conspirators are liable

28   for the acts of their co-conspirators."); Sec. Investor Prot. Corp. v. Vigman, 908 F.2d

1461, 1468 (9th Cir. 1990) (holding RICO conspirators jointly and severally liable for the damage inflicted by the conspiracy reflects the notion that "a conspiracy is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole").[5]   Mattel has alleged ample facts showing its injuries caused by multiple predicate acts committed by members of the conspiracy.  FAAC at ¶¶ 23-121.[6]  Mattel need do no more to establish standing to raise a RICO conspiracy claim against Omni.

In any event, even though not required to do so, Mattel has adequately alleged injury-in-fact proximately caused by Omni, including with respect to the harm Omni caused to Mattel's rights as a creditor of MGA.  FAAC at ¶¶ 97-116, 206-223.  Such injury is actionable under RICO.  See Gutierrez, 1 F. Supp. 2d at 1086 (allegation that defendant "was a knowing and active participant in coordinating fraudulent wire transfers and laundering [co-conspirator's] assets" for the purpose of hindering plaintiff's ability to collect on a judgment were sufficient to state a RICO claim); Rothberg v. Chloe Foods Corp., 2007 WL 2128376, at *11-12 (E.D.N.Y. July 25, 2007) (plaintiff adequately alleged RICO injury based on allegations that "the RICO Defendants manipulated a group of legal entities so as to fraudulently transfer the assets of [the debtor RICO Defendant] to entities controlled by [another RICO defendant] in a manner which rendered plaintiff's debt uncollectible, as well as the debt of other creditors, and which also caused her to incur attorney's fees in her attempt to collect on the debt and in the present action"); Jeffreys v. Exten, 784 F. Supp. 146, 159 (D. Del. 1992) ("Plaintiff alleges that the dissipation of corporate assets was directed specifically at hindering his

---

[5]   Rev'd on other grounds sub nom, Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258 (1992).

[6]   Mattel also incorporates herein by reference its arguments in Section II of its opposition to the MGA Parties' Motion to Dismiss RICO and Creditor Claims, demonstrating that Mattel was injured by the acts committed by the MGA Parties in furtherance of the Criminal Enterprise.

1   ability to collect his debt . . . .   Accordingly, the Court holds that the Plaintiff has

2   standing to bring his RICO claims against the Defendant.").[7]

3     It also is settled that a RICO plaintiff may seek to recover attorneys' fees and costs

4   expended to recover on a judgment due to the defendant's attempts to transfer or conceal

5   assets. See, e.g., Bankers Trust Co. v. Rhoades, 859 F.2d 1096 (2d Cir. 1988) (creditor

6   who agreed to a reorganization plan for an allegedly bankrupt defendant could later

7   claim as "RICO injury" legal fees incurred in litigating against a defendant who sought

8   to subvert the legal process by making misrepresentations to the court and other

9   misconduct).[8]   Here, Mattel has expended millions of dollars in legal fees and costs for

10  the forensic auditor to uncover MGA's and Omni's wrongful conduct which, as

11  described above, was plainly designed to subvert Mattel's rights as a judgment creditor.

12  Thus, even assuming Mattel was required to show injury caused by Omni to have

13  standing to raise its RICO conspiracy claim, Mattel has done so.

14

15

16    [7]  Omni's authorities purporting to hold that Mattel's injury to its rights as a creditor

17  is not actionable under RICO are distinguishable. Mot. at 14-16. In Lincoln House, Inc.
    v. Dupre, 903 F. 2d 845 (1st Cir. 1990), the *only* RICO injury the plaintiff alleged was

18  harm to its rights to recover a potential judgment in a separate lawsuit against the
    defendant. Id. at 847; see also Kaplan v. Reed, 28 F. Supp. 2d 1191 (D. Colo. 1998)

19  (same).   Here, however, Mattel has alleged a host of other RICO injuries already
    incurred and its RICO claim is therefore ripe for adjudication apart from the harm Mattel

20  suffered to its rights as a creditor.   Lincoln House is also distinguishable because it
    involved separate proceedings, whereas here, Mattel raises its allegations of fraudulent

21  conveyances in the same case in which its rights to recover from MGA will be
    adjudicated.   See National Capital Orthopedic Associates, P.C. v. Goltz, 1997 WL

22  625117, *3 (D. Md. Sept. 29, 199) (denying motion to dismiss fraud claim as unripe and
    distinguishing Lincoln House on the grounds that it involved proceedings in different

23  courts, while in the instant case, the defendant's participation in the allegedly fraudulent
    distributions were "part and parcel of [the defendant's alleged] intent to defraud [the

24  plaintiff]," such that the "issues are likely to come up whether [the defendant] is a party
    or not," and it "would thus be impractical to dismiss the claims against her only to retry

25  the very same issues later"); Hecht v. Summerlin Life and Health Ins. Co., 536 F. Supp.
    2d 1236, 1241 (D. Nev. 2008) (distinguishing Lincoln House and other cases that "dealt

26  with situations where the action to determine liability on the underlying claim and the
    indemnification or contribution claim were brought in separate actions").

27    [8]  See also Miller v. Glen & Helen Aircraft, Inc., 777 F.2d 496 (9th Cir.1985)
    (expenses of prior litigation were available as damages under RICO where expenses

28  were caused by defendant's alleged obstruction of justice in violation of RICO).

-13-

MATTEL'S OPPOSITION TO OMNI'S MOTION TO DISMISS

## II. MATTEL HAS STATED VALID CLAIMS AGAINST OMNI FOR ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFERS

Under the CUFTA, a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;" – an "*actual fraudulent transfer*" – "or (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction [or] (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due" – a "*constructive fraudulent transfer*." Cal. Civ. Code § 3439.04(a). Mattel has adequately stated claims against Omni for actual and constructive fraudulent transfers.

### A. Mattel Has Standing To Raise Its Fraudulent Transfer Claims

Omni argues that Mattel cannot state fraudulent transfer claims against it because Mattel "has not obtained an enforceable judgment, has no present right or claim to any of MGA's assets, and may never attain any." Mot. at 22-23. That argument is incorrect as a matter of law. Under Cal. Civ. Code § 3439.01, a "creditor" for purposes of the CUFTA is a "person who has a claim," and a "claim" is a "right to payment, *whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured*." Cal. Civ. Code § 3439.01 (emphasis added); see Allard v. DeLorean, 884 F.2d 464, 466 (9th Cir. 1989) ("An individual with a contingent claim for damages is a 'creditor' within the meaning of Cal. Civ. Code § 3439.01.").

By virtue of its claims against MGA as raised in this lawsuit, Mattel is a creditor of MGA even if its claims have yet to be reduced to judgment – particularly in light of the Phase One verdicts in Mattel's favor. Mattel therefore has standing to raise its

1   fraudulent transfer claims against Omni to the extent Omni is a transferee of MGA's
2   fraudulent transfers. See Cal. Civ. Code § 3439.08(b) (allowing judgment to be entered
3   against transferees of fraudulently transferred assets).

### B.   Mattel Has Alleged Fraudulent Transfers from MGA to Omni

5   Omni does not challenge Mattel's fraudulent transfer claims because of a
6   purported absence of fraudulent intent, but claims that they fail because Mattel has not
7   alleged the transfer of anything from MGA to Omni in the first place. Mot. at 19-21.
8   Certainly, to the extent the "Dividend Transfers" (i.e., distributions from MGA to
9   Larian) were not transferred to Omni, Mattel does not intend to state a fraudulent transfer
10  claim against Omni based on such Dividend Transfers. However, in addition to the
11  Dividend Transfers that were paid directly to Larian, Mattel alleges that (i) MGA's grant
12  to Omni of a security interest in its intellectual property rights; and (ii) MGA's purported
13  payments of interest to Omni, which in turn were paid by Omni to Larian's IGWT 826
14  entity, were fraudulent, and that Omni, as a transferee, is liable to Mattel for those
15  fraudulent transfers. Mattel has valid claims for fraudulent transfers.

### 1.   MGA's "IP Transfer" To Omni Was Fraudulent

17  Mattel alleges that "[i]n the Side Letter Agreement, MGA purported to grant or
18  agree to grant to Omni a 'first priority perfected security interest . . . in not only the
19  current Collateral securing Obligations, but also . . . in substantially all of the personal
20  property assets of each Obligor, ***including each Obligor's rights in intellectual***
21  ***property***.'" FAAC at ¶ 107. Mattel further alleges that such transfer, which was made
22  from Larian to a company nominally controlled by Larian's friends and family members
23  in which Larian himself was the largest investor, and at time when MGA was about to
24  lose control over its Bratz intellectual property rights, was a fraudulent attempt to
25  encumber the Bratz intellectual property rights so as to "prevent Mattel from obtaining
26  and benefitting from" those rights. Id.

27  In response, Omni argues that Mattel cannot have been "injured by the Side Letter
28  Agreement as it is simply an agreement to re-negotiate in good faith a loan workout."

1   Mot. at 23.  Mattel does not claim injury based on the Side Letter Agreement, itself, but
2   based on MGA's transfer of a security interest in its purported Bratz-related intellectual
3   property rights, whether made pursuant to the Side Letter or otherwise.  Should it turn
4   out, contrary to the testimony of certain Omni members, that no such transfer was  made,
5   Mattel obviously would have no claim to avoid that transfer.  But, at this point, given the
6   conflicting testimony and evidence, Mattel has raised sufficient facts to create a plausible
7   inference that such transfer actually was made and was fraudulent.

8          Specifically, even if the Side Letter Agreement is just an "agreement to agree,"
9   that document plainly required MGA and Omni "to negotiate and enter into" an
10  agreement providing that MGA's obligations to Omni under the Credit Agreement are
11  secured by MGA's intellectual property rights.  FAAC at ¶ 107; <u>see also</u> Mot. at 21
12  (citing Side Letter Agreement).  Notably, Omni does not deny that the parties did in fact
13  later consummate such a transfer, as they expressly agreed they would.  Omni also does
14  not address Mattel's allegation that Omni and MGA "'contemplated and intended' from
15  the onset of the transaction that MGA's debt obligations to Omni 808 'would be secured
16  by an expanded collateral package . . . as described in the . . . Side Letter Agreement."
17  FAAC at ¶ 107.  And, Omni does not deny that – the purported preliminary nature of the
18  Side Letter Agreement notwithstanding – it claims to have a security interest in MGA's
19  purported intellectual property rights, including in Bratz.  In fact, ███████████████
20  ████████████████████████████████████████████████████████████████
21  ████████████████████████████████████████████████████████████████
22  ████████████████████████████████████████████████████████████████
23  ██████████████████████████████████"  FAAC at Ex. S-62.

24         Accordingly, Mattel's allegations are more than sufficient to create an inference
25  that Omni purported to receive a security interest in MGA's Bratz intellectual property
26
27
28  ⁹  Kadisha Dep., August 28, 2009, at 213:16-213:24.

1  rights and, as Omni does not challenge that such transfer was made with intent to hinder,

2  delay or defraud Mattel's rights as a creditor of MGA.[10]

3  **2.      MGA's Interest Payments to Omni Are Fraudulent Transfers**

4  Mattel also states valid fraudulent transfer claims against Omni based on interest

5  payments that MGA has made pursuant to the Draw Demand Note. Contrary to Omni's

6  argument that "Mattel does not allege anything wrongful in connection with the

7  additional $6 million in funds loaned by Omni to MGA" pursuant to the Draw Demand

8  Note (Mot. at 20), Mattel in fact alleges that this purported loan was part and parcel of

9  Larian's and Omni's scheme to convert the illegal proceeds of MGA's wrongdoing into

10  Larian's purportedly secured debt in an effort to ensure that Mattel is unable to recover

11  anything from MGA.  FAAC at ¶ 113.  Specifically, IGWT 826, using proceeds

12  distributed to Larian from MGA (generated from sales of Bratz), loaned money to Omni

13  in exchange for interest payments from Omni.  In turn, Omni loaned the money it

14  received from IGWT 826 to MGA, in exchange for interest payments, which it used to

15  pay interest to IGWT 826.  As a result, Larian was effectively siphoning money from

16  MGA and loaning it back to MGA, while obtaining "first position" secured debt in the

17  process, and further benefiting from interest payments from MGA that, but for this

18  scheme, MGA would have no need to pay.  Id.  Those interest payments are distributions

19  by MGA to Larian, via Omni and IGWT 826, and they are actionable fraudulent

20  transfers because, as Mattel alleges, they were made with the intent to defraud Mattel

21  and hinder its rights as a creditor.[11]  Because Omni facilitated the transfer of those

22

---

23  [10]  Omni also argues that it is "axiomatic that MGA could not transfer rights in Bratz-related intellectual property that the Court determines it does not have."  Mot. at 22.

24  Mattel does not dispute that.  Nevertheless, until the Court reaches that conclusion, Mattel is entitled to protect its rights to collect on the judgment that may issue by

25  ensuring that MGA's Bratz-related intellectual property remains in MGA's control and available for Mattel's recovery.  That is precisely why the CUFTA allows creditors

26  whose claims have yet to be reduced to judgment to challenge fraudulent transfers, and that is precisely what Mattel is seeking to do.

27  [11]  Omni's broad contention that "the payment of interest by a debtor to a creditor cannot form the basis of a fraudulent transfer claim as a matter of law" is false.  Mot. at

28  20, n.14.  None of the cases Omni cites in support states such a categorical rule, and none (footnote continued)

1  distributions to Larian, Omni – as MGA itself has insisted – is a proper, if not a

2  necessary, party to this claim.[12]

### C.   <u>Mattel States a Valid Constructive Fraudulent Transfer Claim</u>

4      Omni challenges Mattel's constructive fraudulent transfer claim, as to both the IP

5  Transfer and the interest payments, on the grounds that Mattel has failed to "plead facts

6  showing that MGA did not receive a reasonably equivalent value in exchange for the

7  purported 'transfers' to Omni." Mot. at 24. Mattel has done so.

8      As to the IP Transfer, Mattel alleges that MGA purported to encumber the entirety

9  of its intellectual property rights, including as to Bratz, to provide Omni with an

10  "expanded collateral package" without any additional consideration in return. FAAC at

11  ¶¶ 107, 218. Omni argues, as it has many times before, that it merely "stepped into the

12  shoes of Wachovia" (Mot. at 4); if so, that only underscores that MGA did not receive

13  anything in return, let alone reasonable value, for the additional, gratuitous grant to Omni

14  of a security interest in all its intellectual property rights.

15      As to the interest payments, MGA effectively received no reasonable value in

16  return, as MGA was merely paying Larian – the ultimate beneficiary of the interest

17  payments – for the benefit of being returned funds that never should have been siphoned

18  from MGA in the first place. Mattel has therefore alleged that MGA did not receive

19  reasonable value in return for the fraudulent transfers.[13]

20      Omni also challenges the sufficiency of Mattel's allegations that MGA was

21  insolvent at the time of the fraudulent transfers. Mot. at 24. As the beneficiary of

22  Wachovia's willingness to sell MGA's "distressed debt" to it at thirty cents on the dollar,

---

24  concerns the present situation in which the underlying obligation that gave rise to the
purportedly legitimate interest payments was alleged to be fraudulent.

25  [12]   <u>See</u> MGA's Opposition to Mattel's Motion for Leave to File Third Amended

26  Answer and Counterclaims, April 27, 2009, at 6 (arguing that Mattel "*must* join" each
alleged transferee of a fraudulent transfer, including Omni) (emphasis in original).

27  [13]   In any event, what constitutes "reasonably equivalent value" is a question of fact
which cannot be properly be resolved on a motion to dismiss. <u>See, e.g.</u>, <u>Klein v.</u>

28  <u>Tabatchnick</u>, 610 F.2d 1043, 1047 (2d Cir. 1979) ("Fairness of consideration is generally
a question of fact"); <u>In re Roco Corp.</u>, 701 F.2d 978, 981-82 (1st Cir. 1983).

this challenge is not only ironic, but also without merit. Mattel alleges that by the time of the fraudulent transfers, MGA owed $313 million to Wachovia under the Credit Agreement (FAAC at ¶ 97); MGA had siphoned off hundreds of millions of dollars to Larian and his family members, causing Wachovia to declare events of default under the Credit Agreement (FAAC at ¶ 98); and even before May 2008, MGA was in "financial distress" as a result of its misconduct. Id. Mattel also alleges that MGA itself acknowledged its lack of financial viability at the time of the fraudulent transfers, including in its representation to the Ninth Circuit in August 2008 that it was facing imminent "financial[] ruin." FAAC at ¶ 119. Moreover, Omni details in its Motion that MGA was under "financial strain" at the time of the Omni transaction, and it describes MGA's debt to Wachovia as "distressed debt." Mot. at 5. Mattel has stated ample facts from which a reasonable inference of MGA's insolvency can be drawn.[14]

### D.   Mattel Has Stated a Valid Declaratory Relief Claim Against Omni

Omni argues that because Mattel "fails to state a claim against Omni" and "cannot establish the existence of an actual controversy," Mattel's declaratory relief claim also fails. Mot. at 25. As discussed above, Mattel has stated valid claims against Omni for RICO conspiracy and fraudulent transfers. Mattel's declaratory relief claim, which, as against Omni, seeks a declaration that any security interests purportedly held by Omni that are senior to Mattel's "are invalid and/or are equitably subordinated to Mattel's rights as a creditor of MGA," is likewise valid in that it seeks a different remedy to redress the harm caused by Omni's conduct detailed in the FAAC. Omni has failed to meet its burden of establishing that such a claim fails as a matter of law.[15]

---

[14]   Notably, MGA itself, which is also named in Mattel's constructive fraudulent transfer claim, does not challenge in its motion to dismiss the sufficiency of Mattel's allegations concerning its insolvency.

[15]   Omni has argued elsewhere that its purported priority over Mattel cannot be subordinated outside of a bankruptcy proceeding. Omni does not make that argument again here, and in any event, it is not the law. See Am. Twine Ltd. P'ship v. Whitten, 392 F. Supp. 2d 13, 21 (D. Mass. 2005) (applying principles "commonly associated with bankruptcy cases" to claims in non-bankruptcy proceeding for equitable subordination and debt recharacterization).

00505.07975/3502271.1

MATTEL'S OPPOSITION TO OMNI'S MOTION TO DISMISS

### III.   TO THE EXTENT THIS MOTION IS GRANTED, MATTEL SHOULD BE GRANTED LEAVE TO AMEND

If the Court is inclined to grant Omni's Motion in any respect, then Mattel requests leave to amend to address the Court's concerns. "[R]equests for leave to amend should be granted with 'extreme liberality.'" Couch v. Cate, 2010 WL 1936277, *1 n.3 (9th Cir. May 14, 2010) (quoting Moss v. U.S. Secret Service, 572 F .3d 962, 972 (9th Cir. 2009)).  Leave to amend is particularly appropriate here because Omni's primary challenge to Mattel's pleading is that it does not include sufficient facts to state valid claims against it.  While Mattel contends that the FAAC already is sufficient, Mattel also is continuing to receive critical information in discovery that supports Mattel's claims. Indeed, just in the past two weeks Mattel has received documents confirming that, despite Omni's and the MGA's Parties' repeated denials, Omni member Arsalan Gozini did in fact assign his interest in Omni to Larian's IGWT 826 entity.[16]  Mattel still has not completed depositions of all witnesses with knowledge of the Omni transaction, nor received all documents responsive to its requests, including the promissory note and "legal documents" referenced in note 3, *supra*.  Accordingly, if the Court concludes that Mattel has not stated sufficient facts, then Mattel should be given leave to amend.

### Conclusion

For the reasons set forth above, Mattel respectfully requests that the Court deny Omni's Motion to Dismiss in full.

DATED:  May 17, 2010                QUINN EMANUEL URQUHART & SULLIVAN. LLP


By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc.

---

[16]   In particular, on May 6, 2010, Mr. Gozini produced what appears to be a modification of the purported December 2008 promissory note (the one that was prepared in March 2009 but backdated to December 2008) in which he and IGWT 826 agree that Gozini can satisfy his alleged payment obligation to IGWT 826 pursuant to the promissory note by assigning his interest in Omni to IGWT 826. See SG 0031.