1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
    John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
4 | Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
5 | Facsimile: (213) 443-3100

6 | Attorneys for Mattel, Inc.

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | SOUTHERN DIVISION

11

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiffs, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | MATTEL INC.'S OPPOSITION TO THE MGA PARTIES' AND IGWT 826'S MOTION TO DISMISS RICO AND CREDITOR CLAIMS |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | Date: June 7, 2010 Time: 8:30 a.m. Courtroom: 9D |
| **PUBLIC REDACTED VERSION** | **Phase 1:** Discovery Cut-Off:  TBD Pre-Trial Conference: TBD Trial Date:  TBD |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

05.07975/3502479.1

# **TABLE OF CONTENTS**

Page

I.    MATTEL'S RICO CLAIMS ARE PROPERLY ALLEGED................................ 2

    A.    Mattel Has Properly Alleged A RICO Enterprise......................................... 2

    B.    MGA Mischaracterizes Mattel's Well-Pleaded Conspiracy Claim ............ 4

    C.    The Mail And Wire Fraud Predicate Acts Are Properly Pleaded............... 5

        1.    Mattel Has Pleaded Mail And Wire Fraud With Particularity ........ 5

        2.    The Scheme To Defraud Is Pleaded With Particularity And
            The Attached Mail And Wire Fraud Acts Furthered That
            Scheme .......................................................................................... 6

            (a)    18 U.S.C. § 1346 Is Expressly Included In RICO................ 10

            (b)    Defendants' Scheme To Defraud Mattel Through Trade
                 Secret Theft Supports Mail And Wire Fraud ....................... 11

            (c)    Defendants' Scheme Of Obstruction, Perjury, And
                 Spoliation Supports Mail And Wire Fraud........................... 12

            (d)    Defendants' Scheme To Conceal Assets Through
                 Fraudulent Transfers Supports Mail And Wire Fraud.......... 13

    D.    MGA And Larian Traveled In And Used Interstate And Foreign
       Commerce With An Intent To Commit Commercial Bribery .................. 14

II.   MGA'S RICO INJURY ARGUMENTS, RAISED VIA EMAIL, ARE
    MERITLESS.................................................................................................. 16

    A.    There Is No "Racketeering Injury" Requirement....................................... 17

    B.    Defendants Substantially Injured Mattel's Business And Property.......... 17

    C.    Defendants' Criminal Copyright Infringement Injured Mattel................ 18

III.  MATTEL'S FRAUDULENT TRANSFER AND DISTRIBUTION
    CLAIMS ARE PROPERLY PLEADED ........................................................ 19

    A.    Mattel's UFTA Claims Are An Integral Part Of This Case...................... 19

    B.    Mattel States A Valid Claim For Actual Fraudulent Transfers ............... 20

    C.    Mattel States A Valid Claim For Prohibited Distributions...................... 21

IV.   MGA'S INTENTIONAL DESTRUCTION OF PROPERTY HELD IN
    CONSTRUCTIVE TRUST FOR MATTEL IS ACTIONABLE....................... 23

CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Allard v. DeLorean,*
884 F.2d 464 (9th Cir. 1989) ............................................................. 13

*Annod Corp. v. Hamilton & Samuels,*
100 Cal. App. 4th 1286 (2002) .......................................................... 21

*Atkinson Anadarko Bank & Trust Co.,*
808 F.2d 438 (5th Cir. 1987) .............................................................. 3

*Batt v. City and County of San Francisco,*
155 Cal. App. 4th 65 (2007) ............................................................. 25

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,*
402 U.S. 313 (1971) ......................................................................... 19

*Bonyton v. Headwaters, Inc.,*
243 Fed. Appx. 610 (Fed. Cir. 2007) ............................................... 25

*Bowoto v. Chevron Corp.,*
481 F. Supp. 2d 1010 (N.D. Cal. 2007) ........................................... 16

*Bridge v. Phoenix Bond & Indem. Co.,*
128 S. Ct. 2131 (2008) ....................................................................... 6

*Bryant v. Mattel, Inc.,*
573 F. Supp. 2d 1254 (C.D. Cal. 2007) ...................................... *passim*

*Cadle v. Schultz,*
779 F. Supp. 392 (N.D. Texas 1991) .................................................. 7

*California Pharm. Mgmt, LLC v. Zenith Ins. Co.,*
669 F. Supp. 2d 1152 (C.D. Cal. 2009) .............................................. 7

*Carpenter v. U. S.,*
484 U.S. 19 (1987) ................................................................. 7, 11, 18

*Cedric Kushner Promotions v. King,*
533 U.S. 158 (2001) ........................................................................... 3

*City of Chicago v. Int'l Coll. of Surgeons,*
522 U.S. 156 (1997) ......................................................................... 20

*In re Countrywide Fin. Corp.,*
601 F. Supp. 2d 1201 (S.D. Cal. 2009), cited by MGA .......................... 4

*Credit Managers Ass'n of S. Cal. v. Fed. Co.,*
629 F. Supp. 175 (C.D. Cal. 1985) .................................................. 22

*DLG Mortgage Capital v. Kontogiannis,*
594 F. Supp. 2d 308 (E.D.N.Y. 2009) ............................................. 20

-ii-

*David v. Hermann,*
  129 Cal. App. 4th 672 (2005) .................................................................................24

*Deane v. Weyerhauser Mortg. Co.,*
  967 F. Supp. 30 (D. Mass. 1997) ............................................................................3

*Doe v. Roe,*
  756 F. Supp. 353 (N.D. Ill. 1991) ........................................................................11

*Doe v. Roe,*
  958 F.2d 763 (7th Cir. 1992) ................................................................................11

*Dooley v. Crab Boat Owners Ass'n,*
  2004 WL 902361 (N.D. Cal. April 26, 2004) ........................................................5

*In re Dunoco Corp.,*
  56 B.R. 137 (Bankr. C.D. Cal. 1985) ..................................................................22

*Elliot v. Elliot,*
  231 Cal. App. 2d 205 (1964) ................................................................................24

*Engle v. Matrix Golf & Hospitality Phila. LLC,*
  2009 WL 880680 (E.D. Pa. Mar. 31, 2009) ........................................................20

*Farmers Ins. Ex. v. Zerin,*
  53 Cal. App. 4th 445 (1997) .................................................................................24

*Fidelity Nat. Fin., Inc. v. Friedman,*
  2009 WL 1160234 (C.D. Cal. Apr. 27, 2009) .....................................................14

*Fithian v. Fithian,*
  74 Cal. App. 3d 397 (1977) ..................................................................................24

*Florida Evergreen Foliage,*
  135 F. Supp. 2d 1271 (S.D. Fla. 2001) ................................................................13

*Formax, Inc. v. Hostert,*
  841 F.2d 388 (Fed. Cir. 1988) .............................................................................12

*Glue-Fold, Inc. v. Slautterback Corp.,*
  82 Cal. App. 4th 1018 (2000) ..............................................................................25

*Greenstein v. Peters,*
  2009 WL 722067 (C.D. Cal. Mar. 16, 2009) ........................................................3

*Grunenthal GmbH v. Hotz,*
  712 F.2d 421 (9th Cir. 1983) ...............................................................................16

*Gutierrez v. Givens,*
  1 F. Supp. 2d 1077 (S.D. Cal. 1998) ...................................................................14

*Heckmann v. Ahmanson,*
  168 Cal. App. 3d 119 (1985) ...............................................................................24

*Ideal Steel Supply Corp. v. Anza,*
   373 F.3d 251 (2d Cir. 2004), <u>overruled on other grounds,</u> 547 U.S. 451 (2006) . 18

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996) .......................................................................... 3

*Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta,*
   530 F.3d 1339 (11th Cir. 2008) ........................................................................ 16

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,*
   431 F.3d 353 (9th Cir. 2005) .................................................................... 13, 18

*Markey v. Kudelski S.A.,*
   2008 WL 65401 (S.D. Cal. Jan. 3, 2008) .......................................................... 15

*McCarthy v. Poulsen,*
   173 Cal. App. 3d 1212 (1985) .......................................................................... 24

*Mendoza v. Zirkle Fruit Co.,*
   301 F.3d 1163 (9th Cir. 2002) .......................................................................... 17

*Munger v. City of Glasgow Police Dept.,*
   227 F.3d 1082 (9th Cir. 2000) .......................................................................... 20

*Natomas Gardens Inv. Group LLC v. Sinadinos,*
   2009 WL 1363382 (E.D. Cal. May 12, 2009) .................................................... 17

*Norton v. Bassett,*
   154 Cal. 411 (1908) ......................................................................................... 24

*Odom v. Microsoft Corp.,*
   486 F.3d 541 (9th Cir. 2007) ............................................................................. 3

*Olson v. Toy,*
   46 Cal. App. 4th 818 (1996) ............................................................................. 24

*Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.,*
   2008 WL 4616796 (S.D. Cal. Aug. 1, 2008) ...................................................... 20

*Pa. Ass'n of Edwards Heirs v. Rightenour,*
   235 F.3d 839 (3d Cir. 2000) .............................................................................. 4

*Perrin v. U. S.,*
   444 U.S. 37 (1979) ........................................................................................... 14

*Pharmacare v. Caremark,*
   965 F. Supp. 1411 (D. Hawaii 1996) ................................................................. 15

*Physicians Mut. Ins. Co. v. Greystone Svg. Corp.,*
   2009 WL 855648 (S.D.N.Y. Mar. 25, 2009) ........................................................ 3

*In re PillowTex Corp.,*
   2010 WL 1506922 (Bkrtcy. D. Del. 2010) .......................................................... 20

*Poulos v. Ceasars World, Inc.,*
379 F.3d 654 (9th Cir. 2004) .............................................................................. 16

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.,*
812 F. Supp. 387 (S.D.N.Y. 1993) ...................................................................... 16

*Reves v. Ernst & Young,*
507 U.S. 170 (1993) .............................................................................................. 4

*In re Rhone-Poulenc Rorer, Inc.,*
51 F.3d 1293 (7th Cir. 1995) .............................................................................. 19

*Riverwoods Chappaqua Corp. v. Marine Midland Bank,*
30 F.3d 339 (2d Cir. 1994) ................................................................................... 3

*Rose v. Bartle,*
871 F.2d 331 (3d Cir. 1989) ................................................................................. 5

*Rothberg v. Chloe Foods Corp.,*
2007 WL 2128376 (E.D.N.Y. July 25, 2007) ..................................................... 13

*In re SDR Capital Mgmt., Inc.,*
2007 WL 3450999 (Bankr. N.D. Cal. Nov. 14, 2007) ........................................ 22

*SEC v. Clark,*
915 F.2d 439 (9th Cir. 1990) .............................................................................. 12

*Salinas v. U. S.,*
522 U.S. 52 (1997) ................................................................................................ 4

*Savage v. Glendale Union High Sch.,*
343 F.3d 1036 (9th Cir. 2003) ............................................................................ 19

*Schmuck v. U. S.,*
489 U.S. 705 (1989) .............................................................................................. 6

*Sedima*
473 U.S. 479 .......................................................................................................... 17

*Sequa Corp. v. Gelmin,*
1996 WL 745448 (S.D.N.Y. Dec. 31, 1996),
rev'd on other grounds, 156 F.3d 136 (2d Cir. 1998) ......................................... 11

*Shoregood Water Co. v. U. S. Bottling Co.,*
2009 U.S. Dist. LEXIS 69624 (D. Md. Aug. 10, 2009) ...................................... 23

*Smith v. Jackson,*
84 F.3d 1213 (9th Cir. 1996) .............................................................................. 12

*Snider v. Consolidation Coal Co.,*
973 F.2d 555 (7th Cir. 1992), cert. denied, 113 S. Ct. 981 ................................ 19

*St. James Armenian Church of Los Angeles v. Kurkjian,*
47 Cal. App. 3d 547 (1975) ................................................................................ 24

1    *Steinberg v. Alpha Fifth Group*,
     2010 WL 1332840 (S.D.Fla. 2010) ........................................................................20

2

3    *Stochastic Decisions v. DiDomenico*,
     995 F.2d 1158 (2d Cir. 1993) ................................................................................18

4    *Streck v. Peters*,
     855 F. Supp. 1156 (D. Haw. 1994)........................................................................13

5

6    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007).............................................................................................22

7    *Torch Liquidating Trust ex rel. Bridge Assocs. v. Stockstill*,
     561 F.3d 377 (5th Cir. 2009) ................................................................................13

8

9    *Tr. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*,
     333 F.3d 923 (9th Cir. 2003) ..........................................................................19, 20

10

11    *U. S. v. Fiander*,
     547 F.3d 1036 (9th Cir. 2008) ................................................................................4

12    *U. S. v. Frega*,
     179 F.3d 793 (9th Cir. 1999) ..................................................................................5

13

14    *U. S. v. Halbert*,
     640 F.2d 1000 (9th Cir. 1981) ................................................................................6

15    *U. S. v. Louderman*,
     576 F.2d 1383 (9th Cir. 1978) ..............................................................................12

16

17    *U.S. v. Nader*,
     542 F.3d 713 (9th Cir. 2008) ................................................................................14

18    *U. S. v. Pegg*,
     782 F.2d 1498 (9th Cir. 1986) ..............................................................................25

19

20    *U. S. v. Pemberton*,
     121 F.3d 1157 (8th Cir. 1997) ................................................................................6

21    *U. S. v. Tille*,
     729 F.2d 615 (9th Cir. 1984) ..................................................................................5

22

23    *U. S. v. Welch*,
     327 F.3d 1081 (10th Cir. 2003) ............................................................................14

24    *U. S. v. Bagnariol*,
     665 F.2d 877 (9th Cir. 1981) ................................................................................14

25

26    *U. S. v. Bohonus*,
     628 F.2d 1167 (9th Cir. 1980) ..............................................................................11

27    *U. S. v. Phillip Morris USA, Inc.*,
     566 F.3d 1095, 1130-31 (D.C. Cir. 2009),
28      pet. for cert. filed (U.S. Feb. 19, 2010) (No. 09-980)............................................16

*U. S. v. Tavelman,*
    650 F.2d 1133 (9th Cir. 1981) ............................................................16

*U. S. v. Williams,*
    441 F.3d 716 (9th Cir. 2006) .........................................................10, 11

*Van-Amer. Ins.. v. Schiappa,*
    191 F.R.D. 537 (S.D. Ohio 2000)........................................................20

*Watts v. Allstate Indem. Co.,*
    2009 WL 1905047 (E.D. Cal. Jul. 1, 2009).........................................3

*World Wrestling Ent., Inc. v. Jakks Pacific, Inc.,*
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ...............................................11

*Zhang v. Am. Gem Seafoods, Inc.,*
    339 F.3d 1020 (9th Cir. 2003) ...........................................................19

### Statutes

18 U.S.C. § 2  ...........................................................................................4
18 U.S.C. § 1346...............................................................................10, 11
18 U.S.C. § 1952.....................................................................................16
18 U.S.C. § 1961(1)(B).............................................................................15
18 U.S.C. § 1962(c) ..................................................................................4
18 U.S.C. § 1962(d) .............................................................................2, 4

28 U.S.C. 2072(c) ...................................................................................22

Civil Code § 3439.01 .............................................................................13

Corporation Code § 506...........................................................................22
Corporation Code § 506(b) ......................................................................23

Penal Code § 641.3 ...................................................................................6
Penal Code § 7 ........................................................................................16
Penal Code § 27(a) ..................................................................................16

Federal Rule Civil Procedure 8................................................................20
Federal Rule Civil Procedure 8(a) ............................................................5
Federal Rule Civil Procedure 8(a)(2)......................................................20
Federal Rule Civil Procedure 9(b) ..............................................5, 20, 21
Federal Rule Civil Procedure 12..............................................................17
Federal Rule Civil Procedure 23.1...........................................................22
Federal Rule Civil Procedure 56..............................................................17

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### Preliminary Statement

3   MGA's motion re-hashes arguments rejected by the Court years ago. The Court long

4   ago ruled that attaching the predicate acts of mail and wire fraud to Mattel's pleading would

5   satisfy <u>Rule</u> 9(b); that Mattel's alleged enterprise consisting of MGA, MGA subsidiaries

6   and employees, and certain Mattel employees was properly pleaded; that Mattel's Travel

7   Act claim was viable; and that RICO injuries "easily flow" from the alleged thefts of trade

8   secrets and copyright infringement at issue here. MGA challenges these long-settled

9   rulings, and Mattel's claims, by mischaracterizing Mattel's allegations and repeatedly

10  misstating the law. Its motion should be rejected in its entirety.

11

### Summary of Mattel's Pleading

12  **Mattel's RICO Allegations.** Mattel alleges that from 1999 to the present,

13  defendants Larian, MGA, MGA HK, MGA de Mexico, Bryant, Machado, and Doe

14  defendants were and are associated-in-fact in a criminal enterprise. FAAC at ¶ 123. The

15  purpose of the enterprise was and is to unlawfully and fraudulently compete with Mattel by

16  stealing Mattel's trade secrets and confidential information, depriving Mattel of its right to

17  the honest services of its employees, and infringing on Mattel's rights; to conceal such

18  wrongdoing and fraudulently reap the benefits of it; and to obstruct the efforts of Mattel and

19  the Court to uncover and address this wrongdoing. <u>Id.</u> Mattel alleges numerous predicate

20  acts, including mail fraud, wire fraud, spoliation and concealment of evidence, obstruction

21  of justice, interstate travel in aid of commercial bribery, and criminal copyright

22  infringement. FAAC at ¶ 124. The mail and wire fraud acts are alleged to be in furtherance

23  of a scheme to defraud Mattel by depriving it of its rights to maintain the secrecy of its

24  confidential and trade secret information and to receive honest services, by stealing its

25  confidential and trade secret information, by transferring the ill-gotten gains of these thefts

26  and wrongs, and by seeking to obtain priority over Mattel and to obstruct the judicial

27  process. FAAC at ¶ 124(a), (b). Mattel alleges numerous injuries to its business and

28  property as a direct and proximate result of this racketeering activity. <u>E.g.</u>, FAAC at ¶¶

1 | 126-127, 132. Mattel also alleges that the above defendants, along with defendants Omni
2 | 808 and IGWT 826, conspired together to further, promote, and facilitate the enterprise in
3 | violation of 18 U.S.C. § 1962(d). FAAC at ¶¶ 120-132.

4 | **Defendants' Challenges to the FAAC.** Stripped of summary judgment arguments,
5 | defendants' motion challenges Mattel's pleading in five respects:

6 | 1. Defendants' ability to form an enterprise;

7 | 2. Defendants' conspiracy to further the enterprise;

8 | 3. The particularity of Mattel's mail and wire fraud allegations and scheme to
9 | defraud under Rule 9(b);

10 | 4. MGA and Larian's commission of Travel Act violations; and

11 | 5. Mattel's creditor and distribution claims.

12 | The MGA Parties previously raised the first, third, and fourth challenges in a 2007
13 | motion to dismiss. See Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254 (C.D. Cal. 2007). In its
14 | Order, the Court upheld as properly pleaded Mattel's allegations that MGA, MGA HK,
15 | MGA de Mexico, Larian, Bryant, and Machado had all associated-in-fact in a criminal
16 | enterprise, and upheld Mattel's Travel Act allegations. Id. at 1262-64, 66-67. As to the
17 | particularity of Mattel's mail and wire fraud allegations, the Court granted Mattel leave to
18 | amend and instructed Mattel to attach alleged acts of mail or wire fraud to its pleading. Id.
19 | at 1264-65. Mattel did so in its Second Amended Counterclaims (see SAAC Exh. C), and
20 | defendants did not move to dismiss thereafter, until now. In the FAAC, Mattel has again
21 | attached alleged acts of mail or wire fraud, described which defendants are alleged to have
22 | committed each such act, and described the aspect of the scheme to defraud that the
23 | communications furthered. FAAC at ¶ 124(a), (b), Exhs. O-W.

24 | **Argument**

25 | **I.    MATTEL'S RICO CLAIMS ARE PROPERLY ALLEGED**

26 | **A.    Mattel Has Properly Alleged A RICO Enterprise**

27 | MGA contends that Mattel's enterprise claim is deficient because it consists of
28 | "MGA, its two wholly-owned subsidiaries, and three key employees." Mot. at 14. The

1 │ Court rejected that argument previously. See Bryant, 573 F. Supp. 2d at 1262. In
2 │ upholding Mattel's RICO allegations, the Court noted that Cedric Kushner Promotions v.
3 │ King, 533 U.S. 158, 161 (2001), "revers[ed the] lower court's ruling that no RICO claim
4 │ was stated where [a] president and sole shareholder of a corporation was alleged to have
5 │ associated with his wholly owned corporation as a RICO 'enterprise,' and rel[ied] on [the]
6 │ fact that person and corporation were separate legal entities." Id.

7 │ MGA's argument that it cannot associate-in-fact with the other defendants fails now
8 │ as it did in 2007. Indeed, two enterprise members, Machado and Bryant, were employed by
9 │ *Mattel* when they joined the enterprise,[1] and neither continues to work for MGA. MGA
10 │ cannot avoid RICO liability by hiring fellow enterprise members after their unlawful
11 │ association has begun. Moreover, MGA's entire argument is misguided; under Kushner,
12 │ even Isaac Larian is deemed separate from MGA for RICO purposes despite being the
13 │ president/owner of MGA. Kushner, 533 U.S. at 160 (holding that Don King and Don King
14 │ Productions were sufficiently separate). Likewise, and as Ninth Circuit law provides,
15 │ parent and subsidiary companies may form an associated-in-fact enterprise. See Odom v.
16 │ Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (subsidiary is "a legally different entity
17 │ with different rights and responsibilities due to its different legal status" and there is
18 │ "nothing in the statute that requires more 'separateness' than that") (quoting Kushner);
19 │ Watts v. Allstate Indem. Co., 2009 WL 1905047, at *4-6 (E.D. Cal. Jul. 1, 2009)
20 │ (subsidiaries may be enterprise members because they are legally distinct). The only
21 │ published cases MGA cites were decided before Kushner,[2] and the two unpublished cases
22 │ are inapposite; in fact, neither even involved an alleged association-in-fact enterprise.[3]

23 │
24 │ [1] See FAAC at ¶¶ 27-35 (Bryant); ¶¶ 37-40, 43-46, 49-56 (Machado).
   │ [2] Mot. at 15 (citing Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339
25 │ (2d Cir. 1994); Atkinson Anadarko Bank & Trust Co., 808 F.2d 438 (5th Cir. 1987); Deane v. Weyerhauser Mortg. Co., 967 F. Supp. 30 (D. Mass. 1997); Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996)).
26 │ [3] See Greenstein v. Peters, 2009 WL 722067 (C.D. Cal. Mar. 16, 2009); Physicians Mut. Ins. Co. v. Greystone Svg. Corp., 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009). The
27 │ plaintiffs in those cases alleged that a corporate defendant was itself the enterprise, and that its subsidiaries and/or employees were the RICO "persons." Greenstein, at *2; Physicians
28 │ Mut., at *7. Neither case is relevant here, where Mattel has alleged an associated-in-fact (footnote continued)

1       **B.   MGA Mischaracterizes Mattel's Well-Pleaded Conspiracy Claim**

2       To support its claim that Mattel has somehow pleaded "aiding and abetting" rather

3 than conspiracy, MGA misquotes the FAAC. The FAAC does not allege, as MGA claims,

4 a "conspiracy to 'further[], promot[e] and facilitate[e] [sic]' a violation of section 1962(c)."

5 Mot. at 16. It alleges that defendants unlawfully conspired, in violation of § 1962(d), "by

6 furthering, promoting, and facilitating ***the Criminal Enterprise*** . . . in violation of 18

7 U.S.C. § 1962(c)."[4] Mattel alleges exactly what is required for conspiracy: an "agree[ment]

8 to facilitate the objective of [a] RICO conspiracy." U. S. v. Fiander, 547 F.3d 1036, 1043

9 (9th Cir. 2008); Salinas v. U. S., 522 U.S. 52, 65 (1997) ("it suffices that [defendant] adopt

10 the goal of furthering or facilitating the criminal endeavor").

11       MGA's cited cases are off point. Neither Reves v. Ernst & Young, 507 U.S. 170

12 (1993), nor Pa. Ass'n of Edwards Heirs v. Rightenour, 235 F.3d 839 (3d Cir. 2000),

13 involved a RICO conspiracy claim under § 1962(d); neither even mentions the word

14 "conspiracy." The Reves Court ruled that, to impose liability under § 1962*(c)*, a defendant

15 must show "some participation in the operation or management of the enterprise," 507 U.S.

16 at 185-86; Mattel's Second Counterclaim is for violations of § 1962(d), not (c). The

17 plaintiff in Edwards Heirs pleaded a "common law-based RICO civil aiding and abetting

18 claim," which does not exist. 235 F.3d at 840. Here there is no "aiding and abetting

19 conspiracy" claim, as MGA would have it—there is a conspiracy claim.[5]

20       Defendants argue Mattel must allege "which counter-defendant engaged in which

21 particular overt acts," and allege "which counter-defendants agreed with whom to commit

22 what substantive RICO violation and to commit what two predicate acts," and identify

23 "racketeering activity" committed by IGWT. Mot. at 17. MGA provides only a "but cf."

24

25 enterprise and described the roles of each defendant in that association in detail. As the Court ruled in 2007, and as Kushner dictates, Mattel has adequately alleged an association-

26 in-fact.

27     [5]   FAAC at Second Counterclaim heading and ¶ 129 (emphasis added). In re Countrywide Fin. Corp., 601 F. Supp. 2d 1201, 1224 (S.D. Cal. 2009), cited by MGA, involved a claim for aiding and abetting under 18 U.S.C. § 2. The court held it did

28 not exist, but *denied* the motion to dismiss plaintiff's RICO conspiracy claim.

1 | cite to <u>Salinas</u> as its claimed authority, recognizing that <u>Salinas</u> rejects MGA's argument.
2 | 522 U.S. at 63-65 ("so long as the purpose of the agreement is to facilitate commission of a
3 | crime, the actor need not agree 'to commit' the crime"; RICO conspiracy statute
4 | "broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at
5 | the same time [require a plaintiff] to prove each conspirator agreed that he would be the one
6 | to commit two predicate acts."); <u>see also</u> <u>U. S. v. Tille</u>, 729 F.2d 615, 619 (9th Cir. 1984)
7 | (Section 1962(d) "does not require proof that a defendant participated personally, or agreed
8 | to participate personally, in two predicate offenses"); <u>U. S. v. Frega</u>, 179 F.3d 793, 810 n.21
9 | (9th Cir. 1999); <u>Dooley v. Crab Boat Owners Ass'n</u>, 2004 WL 902361, at *8 (N.D. Cal.
10 | Apr. 26, 2004) ("For purposes of conspiracy liability, a plaintiff is not required to show that
11 | each defendant agreed to commit two predicate acts.").[6]

12 | Contrary to MGA's unsupported argument (Mot. at 17), Mattel's conspiracy
13 | allegations are not subject to <u>Rule</u> 9(b) and need not be pleaded with particularity. <u>Rose v.</u>
14 | <u>Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989) ("Allegations of conspiracy are not measured
15 | under the <u>Fed. R. Civ. P.</u> 9(b) standard . . . , but are measured under the more liberal <u>Fed. R.</u>
16 | <u>Civ. P.</u> 8(a) pleading standard.") (internal citations omitted).  Nonetheless, the FAAC
17 | provides ample factual support for its conspiracy claim, as evidenced by MGA's complaint
18 | that "ninety paragraphs" of description is too many.  Mot. at 17.

19 | **C.    The Mail And Wire Fraud Predicate Acts Are Properly Pleaded**
20 | MGA claims Mattel's mail and wire fraud allegations lack particularity, yet spends
21 | seven pages of its brief discussing the allegations in detail, undercutting its own contention.

22 | **1.    Mattel Has Pleaded Mail And Wire Fraud With Particularity**
23 | The Court previously ruled that attaching mail and wire fraud acts to Mattel's
24 | pleading satisfies <u>Rule</u> 9(b).[7]   Relying on the Court's Order—as it did with the
25 |

26 | [6] MGA also claims Mattel did not allege "agreements" by IGWT, but that is simply false. See FAAC at ¶ 129 (alleging IGWT "did conspire, combine, confederate and agree"
27 | to further the Criminal Enterprise).
[7] <u>Bryant</u>, 573 F. Supp. 2d at 1264 (granting leave "to file a SAAC that incorporates and
28 | attaches and/or describes the communications and contents").

1  unchallenged SAAC and TAAC—Mattel attached to the FAAC 126 exhibits constituting
2  wire fraud acts[8] and 28 exhibits constituting mail fraud acts.[9]  These 154 exhibits provide
3  MGA with every possible detail of the alleged acts of mail and wire fraud.  MGA's
4  contention that "Mattel does not cite any of those documents" (Mot. at 23) is false; the
5  FAAC cites them expressly, alleges that they furthered the fraudulent scheme and identifies
6  the defendants associated with them.[10]

7  Mattel's mail and wire fraud acts need not "identify [] specific false statement[s]," as
8  MGA asserts.  Mot. at 23.  Again, MGA ignores both binding law and the Court's prior
9  Order that "given the broad scope of the alleged scheme to defraud . . . otherwise innocuous
10  and routine communications regarding day-to-day operations and product development may
11  be found to be in furtherance of that scheme."[11]  "A defendant's activities can be a scheme
12  or artifice to defraud whether or not any specific misrepresentations are involved." U. S. v.
13  Halbert, 640 F.2d 1000, 1007 (9th Cir. 1981); Bridge v. Phoenix Bond & Indem. Co., 128
14  S. Ct. 2131, 2138-39 (2008) ("Using the mail to execute or attempt to execute a scheme to
15  defraud is mail fraud, and hence a predicate act of racketeering under RICO, even if no one
16  relied on any misrepresentation."); Schmuck v. U. S., 489 U.S. 705, 712 (1989); U. S. v.
17  Pemberton, 121 F.3d 1157, 1170-71 (8th Cir. 1997) ("an innocent mailing—that is, a
18  mailing that is entirely true—may satisfy the mailing element of a mail-fraud conviction.").

19  ## 2.  The Scheme To Defraud Is Pleaded With Particularity And The Attached Mail And Wire Fraud Acts Furthered That Scheme

20  Faced with the detailed exhibits and descriptions of the wire and mail fraud acts,
21  MGA argues Mattel does not plead facts showing a "scheme to defraud." Mot. at 18, 22-
22  24.  Not so.  "[T]he words 'to defraud' in the mail fraud statute have the common
23  understanding of wronging one in his property rights by dishonest methods or schemes, and

---

25  [8] See FAAC, Exhs. S-W.
  [9] See FAAC, Exhs. O-R.
26  [10] See FAAC at ¶¶ 124(a) (citing documents in Exhibits O, P, Q, and R and identifying the defendants involved in those communications); 124(b) (same as to Exhibits S, T, U, V,
27  and W).
  [11] Bryant, 573 F. Supp. 2d at 1265 (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
28  551 U.S. 308 (2007)).

1  usually signify the deprivation of something of value by trick, deceit, chicane or
2  overreaching." Carpenter v. U. S., 484 U.S. 19, 25 (1987) (internal quotations omitted).[12]

3       Mattel alleges a scheme "to defraud Mattel of its rights to receive honest services
4  from its employees and to maintain the secrecy of its confidential and trade secret
5  information and property; to transfer the ill-gotten gains from such thefts and wrongs,
6  secret MGA assets and purportedly obtain priority over Mattel; and to obstruct the judicial
7  process and thwart the verdicts of the jury and Orders of the Court."[13]  This scheme is well-
8  pleaded with dozens of supporting pages of details, and Mattel pleads numerous acts of
9  mail and wire fraud that furthered it.

10      MGA argues that "Mattel fails to identify any contact between the MGA Parties and
11 defecting Mattel employees." Mot. at 23. That is simply false. Mattel alleges extensive
12 contact between the MGA Parties and Mattel employees, including Carter Bryant,[14]
13 Machado/Vargas/Trueba,[15] Janine Brisbois,[16] and Yoon Jung Kim,[17] while each was still
14 employed by Mattel. Moreover, the documents attached to the FAAC show, among other
15 things: ███████████████████████
16 ███████████████████████
17 ███████████████████████
18 ███████████████████████
19

20 [12]  California Pharm. Mgmt, LLC v. Zenith Ins. Co., 669 F. Supp. 2d. 1152, 1162 (C.D. Cal. 2009) (Carter, J.) (mail and wire fraud acts done to "effectuat[e] this scheme" of "intending to deceive" sufficiently pled); Cadle v. Schultz, 779 F. Supp. 392, 399 (N.D. Texas 1991) ("the language of the mail fraud statute is broad enough to encompass any conduct that fails to reflect "moral uprightness, ... fundamental honesty, fair play and right dealing in the general and business life of members of society").
22 [13]  See FAAC at ¶ 124(a), (b) (incorporating by reference the details alleged in paragraphs 24-121 of the FAAC).
23 [14]  See, e.g., FAAC at ¶¶ 28-29; 31, 33.
[15]  See, e.g., FAAC at ¶¶ 44-46 (alleging "frequent personal, telephonic and e-mail
24 contact with MGA personnel, including Larian, for over two months before their resignations on April 19, 2004," including specifically through the plot04@aol.com e-mail
25 address).
[16]  See, e.g., FAAC at ¶ 61 ("Brisbois spoke with Larian, MGA's CEO, on September
26 22, 2005, four days before she resigned" from Mattel.").
[17]  FAAC at ¶ 81.
27 [18]  See FAAC, Exh. S-1, S-12.
[19]  FAAC, Exh. S-15, Exh. V-3 (same); see also Exhs. S-16, S-17 (MGA emailing Bratz
28 agreements to Bryant before he left Mattel); Exhs. V-4, V-5 (same).

-7-

1  ███████████████████████████████████████████

2  ███████████████████████████████████████████

3  ███████████████████████████████████████████

4  ███████████████████████████████████████████

5  ███████████████████████████████████████████

6  ███████████████████████████████████████████

7  ███████████████████████████████████████████

8  ███████████████████████████████████████████

9  ████████████████████[22]

10   MGA boldly claims "there are no facts" showing it induced Bryant to steal Mattel

11  property, Mot. at 23, ignoring both Mattel's allegations and the Phase 1 jury's findings.

12  Mattel alleges that "MGA and Larian knew that Bryant was employed by Mattel as a doll

13  designer and that he owed duties of loyalty and trust to Mattel" and that they "encouraged,

14  aided and financed Bryant's development of Bratz, knowing full well that Bryant, by

15  performing such working, including design-related work . . . would be, and was, in breach

16  of his contractual, statutory and common law duties to Mattel." FAAC at ¶ 33. Mattel also

17  alleges, and the Phase 1 jury found, that MGA "fraudulently concealed" the theft of Bratz.[23]

18  Mattel alleges and attaches specific acts of mail and wire fraud in furtherance of this

19  portion of the scheme.[24]  These include, among many others, ████████████████████

20  ███████████████████████████████████████████

21  ███████████████████████████████████████████

22  ███████████████████████████████████████████

23

24

─────────────────────
[20]  FAAC, Exh. S-18, Exh. V-6 (same).
[21]  FAAC, Exh. S-19; see also Exh. S-24 (MGA acknowledging Bryant's work at MGA while he was still employed by Mattel and discussing his compensation for that work).
[22]  FAAC, Exh. S-45; see also Exhs. S-58, S-73 (same).
[23]  See Phase 1B Verdict, at ¶ 18.
[24]  See FAAC at ¶ 124 (a), (b); see also id. at ¶¶ 24-35.
[25]  FAAC, Exh. S-21.
[26]  FAAC, Exh. S-22, S-59.

1    ████████████████████████████████████████████████████████

2    ████████████████████████████████████████

3        MGA claims there is no "factual support" for the wire and mail fraud acts in

4    furtherance of its other thefts (Mot. at 24), but ignores Mattel's allegations.  Mattel alleges

5    the thefts in Mexico, Canada and the United States at length, (FAAC at ¶¶ 36-85), and

6    pleads numerous mail and wire fraud acts furthering that aspect of the scheme.   These

7    include, among many examples, ████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████.[31]

16       Finally, Mattel also alleges that MGA used the mail and wires to transfer or hide its

17   ill-gotten gains and property.  FAAC at ¶¶ 97-116.  Mail and wire fraud acts alleged in the

18   FAAC furthered this portion of the scheme, including: ████████████████

19

20   [27]   FAAC, Exh. S-23; see also Exhs. O-1, O-4, O-10; Exhs. S-56, 60, 65, 75 ; V-7.
     Among the many other allegations Mattel makes, Mattel alleges that the Enterprise used the
21   mail to deliver fraudulent applications to the U.S. Copyright Office and the Patent &
     Trademark Office, falsely representing the inventor and owner of Bratz, FAAC, Exhs. O-5-
22   9, 11, and used the mail to ship products interstate and overseas to manufacture Bratz,
     furthering its theft.   See FAAC, Exh. O-12, O-13; see also P-1 through 7; Exhs. Q-1
23   through 4; T-1 through 4; V-1, V-2.
        [28]   FAAC, Exh. S-30.
        [29]   FAAC, Exh. S-31.
24      [30]   FAAC, Exh. S-37.
        [31]   FAAC, Exh. S-40; see also FAAC, Exhs. O-14, O-15; Exhs. R-1, R-2; Exhs. S-25
25   through 40, 55, 63, 64, 66-72, 79, 80, 84, 85, 86, 87, 90, 91, 92, 94; Exhs. U-1 through 16;
     Exhs. W-1 through 14 (communications between Machado, Vargas and Trueba and MGA
26   while still employed at Mattel; emails of trade secret information between Vargas,
     Machado and Trueba days before their resignations from Mattel; emails between MGA and
27   then-current Mattel employees, who later left and joined MGA, bringing stolen trade
     secrets; phone call records between Machado, Vargas and Trueba and MGA personnel
28   months prior to their departures from Mattel).

1

2

3

4

5

6

7       MGA addresses four specific aspects of the scheme to defraud pleaded by Mattel. Its

8 arguments as to each fail.

9              **(a)**     **18 U.S.C. § 1346 Is Expressly Included In RICO**

10       Workers may be "free to change jobs"( Mot. at 19), but they are not free to secretly

11 work with, aid, and be paid by competitors while still employed by their employer, nor may

12 they deliver to competitors property stolen from their employer, nor may competitors

13 induce such misconduct. Mattel alleges all of this and more, and it is precisely the sort of

14 honest services deprivation § 1346 and RICO are designed to combat.

15       Ignoring the clear language of 18 U.S.C. § 1346 and the very purpose for which it

16 was created, MGA argues that depriving Mattel of its right to receive honest services is

17 beyond the reach of the RICO statute.[37] Congress expressly created 18 U.S.C. § 1346 to

18 make clear that a scheme to defraud by depriving another of the right to honest services *can*

19 *and does* support mail and wire fraud predicate acts. See U. S. v. Williams, 441 F.3d 716,

20 720 (9th Cir. 2006) ("Section 1346 thus codifies an 'intangible rights' theory of fraud.

21 Under this theory, the object of the fraudulent scheme is the victim's intangible right to

22 receive honest services."). Courts have repeatedly held that § 1346 can support predicate

23

---

24 [32]   See FAAC, Exhs. S-41, 42. 44, 49, 50, 54; see also Exhs. S-46, 47, 78 (emails between Larian and the Omni 808 investors devising a plan to buy the Wachovia debt).

25 [33]   Exh. S-43.
[34]   See FAAC, Exh. 48 to Exh. S-48; see also Exhs. S-52, 53.
[35]   See FAAC, Exh. S-51.

26 [36]   Exhs. S-62, 77.
[37]   MGA's claim that deprivation of honest services "is not a predicate act"(Mot. at 18),

27 also misses the point. The FAAC alleges defendants' deprivation of honest services as an aim of defendants' overall scheme to defraud Mattel, which defendants furthered through

28 mail and wire fraud predicate acts.

OPPOSITION TO MOTION TO DISMISS RICO AND CREDITOR CLAIMS

1  acts of mail or wire fraud in the civil RICO context. See, e.g., World Wrestling Ent., Inc. v.

2  Jakks Pac., Inc., 530 F. Supp. 2d 486, 507 (S.D.N.Y. 2007) (RICO claim stated under §

3  1346); see also Doe v. Roe, 756 F. Supp. 353, 360 n.12 (N.D. Ill. 1991) (honest services

4  fraud "could be evidence of a pattern of racketeering activity supporting a claim for civil

5  liability"); Doe v. Roe, 958 F.2d 763, 769 n.5 (7th Cir. 1992) ("claim sounding in the loss

6  of honest services ... could serve as predicate racketeering acts"); Sequa Corp. v. Gelmin,

7  1996 WL 745448, at *90-91 (S.D.N.Y. Dec. 31, 1996) (honest services claim under § 1346

8  is an alternative means of establishing the predicate acts required in civil RICO action),

9  rev'd on other grounds, 156 F.3d 136 (2d Cir. 1998). The Ninth Circuit held the same even

10 before the statute was enacted. U. S. v. Bohonus, 628 F.2d 1167, 1172 (9th Cir. 1980)

11 ("depriving an employer of one's honest services and of its right to have its business

12 conducted honestly can constitute a 'scheme to defraud' under [the mail fraud statute]").[38]

13
### (b)  Defendants' Scheme To Defraud Mattel Through Trade Secret Theft Supports Mail And Wire Fraud

14

15  Citing no relevant authority, MGA argues that mail and wire fraud cannot "make a

predicate act of trade secret theft." Mot. at 20. The Court has expressly held that they can.
16
Bryant, 573 F. Supp. 2d at 1269 (holding that "theft of trade secrets and confidential
17
information committed by a direct competitor" easily qualifies as an "injur[y] flowing from
18
predicate acts"). Not only does MGA provide no basis for reconsidering this ruling, but the
19
Court's prior Order hardly created a "new RICO predicate act" as MGA argues. Mot. at 20.
20
"Confidential business information has long been recognized as property." Carpenter v. U.
21
S., 484 U.S. 19, 26 (1987). Therefore, trade secret theft can support predicate acts of mail
22
and wire fraud. Id. at 25-28 (recognizing that "[c]onfidential information acquired or
23

24  [38] Claiming that honest services fraud requires a fiduciary relationship, MGA cites U. S. v. Williams, 441 F.3d 716, 723-24 (9th Cir. 2006). Mot. at 19. But that case expressly
25  declined "to decide whether . . . § 1346 applies to persons who are not fiduciaries" in holding that the statute *does* apply "in the employee/employer context." Id. In any event,
26  the Court long ago ruled that Bryant, an enterprise member, owed Mattel a fiduciary duty, and the jury found MGA liable for aiding and abetting Bryant's breach of that duty. See
27  Final Jury Instructions As Given, dated July 10, 2008, at No. 28 ("As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel."); see also Final
28  Verdict Form as Given, dated July 17, 2008, at ¶¶ 9, 10.

1  compiled by a corporation in the course and conduct of its business is a species of property
2  to which the corporation has the exclusive right to and benefit," and holding that "the
3  conspiracy here to trade on the Journal's confidential information is not outside the reach of
4  the mail and wire fraud statutes"). Many other courts have reached the same conclusion.
5  See Formax, Inc. v. Hostert, 841 F.2d 388, 390 (Fed. Cir. 1988) ("Activities such as those
6  alleged in the instant case--misappropriation of trade secrets--fall within the definition of
7  property and fraud under the mail and wire fraud statutes and thus can fulfill some elements
8  of a RICO violation."); U. S. v. Louderman, 576 F.2d 1383, 1387 (9th Cir. 1978)
9  (upholding wire fraud conviction based on scheme "to obtain intangible, commercial
10 information which the telephone company and post office chose to keep confidential");
11 SEC v. Clark, 915 F.2d 439, 449 (9th Cir. 1990) (addressing securities fraud claims) ("It is
12 well settled that misappropriation and use of confidential information in breach of a
13 fiduciary or similar duty amounts to fraud within the meaning of [RICO] statutes.").[39]

14         **(c)   Defendants' Scheme Of Obstruction, Perjury, And Spoliation Supports Mail And Wire Fraud**

15         Again citing no relevant authority (or indeed any authority at all), MGA argues that
16 its acts of obstruction, perjury, and evidence tampering cannot support mail or wire fraud
17 because its actions "were aimed at skewing the course of litigation and concealing prior
18 misconduct" (Mot. at 21), which purportedly is not actionable. But Mattel alleges that
19 MGA's actions were aimed at, among other things, "defraud[ing] Mattel of its rights to
20 receive honest services from its employees and to maintain the secrecy of its confidential
21 and trade secret information and property."[40] These allegations must be accepted as true.
22 Moreover, a scheme "aimed at skewing the course of litigation and concealing prior

---

[39] MGA cites a series of irrelevant cases holding activities *other than* thefts of property not to
be actionable under RICO. Mot. at 21 (citing Smith v. Jackson, 84 F.3d 1213 (9th Cir. 1996)
(upholding dismissal of RICO claims because, where jury had found no copyright
infringement, "none of appellees' activity in disseminating their songs could be
'fraudulent'")). MGA's other cases concerning wage claims, BCA violations, and
trademark and patent infringement are similarly irrelevant. None of these cases addresses
whether theft of trade secrets and other property may be part of a scheme to defraud, much less
purport to overrule the numerous authorities which expressly hold that thefts of property can
support mail and wire fraud claims. MGA's argument should be rejected.
[40] FAAC at ¶ 124(a).

1  misconduct," is precisely the kind of fraudulent scheme *actionable* under RICO; Ninth
2  Circuit law is clear that schemes involving obstruction of justice, perjury, and spoliation
3  can serve as the basis for mail and wire fraud predicate acts. See Living Designs, Inc. v.
4  E.I. Dupont de Nemours and Co., 431 F.3d 353, 364-65 (9th Cir. 2005) (upholding claims
5  for mail and wire fraud based on "falsification, destruction, and misrepresentation of
6  evidence"); see also Florida Evergreen Foliage, 135 F. Supp. 2d 1271, 1275-78 (S.D. Fla.
7  2001) ("fraudulent acts, such as concealing and altering data and defying judicial orders to
8  turn over information[,] . . . witness tampering and obstruction of justice . . . may form the
9  basis for predicate racketeering acts"); Streck v. Peters, 855 F. Supp. 1156, 1162 (D. Haw.
10  1994) ("the better reasoned position is that acts of perjury may, under appropriate
11  circumstances, constitute RICO predicate acts").

### (d)  Defendants' Scheme To Conceal Assets Through Fraudulent Transfers Supports Mail And Wire Fraud

MGA claims its alleged scheme to encumber and transfer MGA's assets—including money and Bratz intellectual property rights which were awarded to Mattel (FAAC at ¶¶ 97-121)—was merely "to keep the MGA Parties' money from falling into Mattel's hands" (Mot. at 22), which is purportedly not actionable. But Mattel is a creditor of MGA's under California law,[41] and MGA's scheme to transfer and encumber Mattel's rights and to prevent Mattel from enforcing them certainly are actionable under RICO. Rothberg v. Chloe Foods Corp., 2007 WL 2128376, *11-12 (E.D.N.Y. July 25, 2007) (RICO injury stated by allegations that "the RICO Defendants manipulated a group of legal entities so as to fraudulently transfer the assets of [the defendant] to entities controlled by [another defendant] in a manner which rendered plaintiff's debt uncollectible . . . and which also caused her to incur attorney's fees in her attempt to collect on the debt and in the present

---

[41]  Under Cal. Civ. Code § 3439.01, a "creditor" is a "person who has a claim," and a "claim" is a "right to payment, *whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.*" Cal. Civ. Code § 3439.01 (emphasis added); Allard v. DeLorean, 884 F.2d 464, 466 (9th Cir. 1989) ("An individual with a contingent claim for damages is a "creditor" within the meaning of Cal. Civ. Code § 3439.01.").

1  action"); Gutierrez v. Givens, 1 F. Supp. 2d 1077, 1086 (S.D. Cal. 1998) (RICO claim

2  properly based on defendants' scheme to coordinate fraudulent wire transfers and launder

3  assets hindered plaintiff's ability to collect a judgment against defendant); Fidelity Nat.

4  Fin., Inc. v. Friedman, 2009 WL 1160234, at *17 (C.D. Cal. Apr. 27, 2009) ("Fidelity has

5  raised questions of fact as to whether transfers conducted by ITSA were fraudulent.

6  Because these transactions were conducted via wire, they potentially qualify as "predicate

7  acts" under RICO.") (citing Gutierrez, 1 F. Supp. 2d at 1085-86).

8  **D.   MGA And Larian Traveled In And Used Interstate And Foreign Commerce With An Intent To Commit Commercial Bribery**

9

10  MGA's argument that Mattel is "trying to stretch a federal crime well beyond its

11  intended reach" through its Travel Act allegations (Mot. at 25), is contrary to precedent.

12  Bryant, 573 F. Supp. 2d at 1266-67 (upholding Mattel's Travel Act allegations); see also

13  Perrin v. U. S., 444 U.S. 37, 40-41, 50 (1979) (because "Congress intended 'bribery . . . in

14  violation of the laws of the State in which committed' as used in the Travel Act to

15  encompass conduct in violation of state commercial bribery statutes," affirming

16  conviction under the Travel Act for bribing an employee in violation of state law); U. S. v.

17  Welch, 327 F.3d 1081, 1090-91 (10th Cir. 2003) (violation of Utah commercial bribery

18  statute supported Travel Act conviction).   An *intrastate* mailing or phone call made in

19  furtherance of the scheme is sufficient,[42] and the Travel Act only requires *intent* to commit

20  the underlying state offense.[43]   RICO expressly provides that it may be predicated on

21  Travel Act violations.[44]

22  MGA argues that "Mattel fails to properly plead that MGA or Larian bribed any

23  Mattel employees." Mot. at 26. But in fact the FAAC alleges that MGA and Larian (1)

24  "paid Bryant while he was still employed by Mattel" in order to steal Mattel's property;[45]

25  (2) "induced [Machado, Trueba and Vargas] to steal Mattel's most sensitive and

---

26  [42]  U.S. v. Nader, 542 F.3d 713, 722 (9th Cir. 2008); U. S. v. Bagnariol, 665 F.2d 877, 898-99 (9th Cir. 1981).
27  [43]  Pharmacare v. Caremark, 965 F. Supp. 1411, 1416-17 (D. Haw. 1996).
    [44]  18 USC § 1961 (1)(B).
28  [45]  FAAC at ¶ 28; Exhs. S-17, 24.

1  confidential business planning materials;"[46] (3) "offered Kim a job at MGA, as well as a

2  substantial raise . . . . [and] also asked for 'help' in copying Mattel files;"[47] (4) "targeted

3  Castilla—and the Mattel-specific knowledge that he possessed—and lured him to

4  MGA;"[48] and (5) "knowingly bribed and secretly used [Cabrera, Morales, and Salazar] to

5  work on MGA products, including Bratz, while they were Mattel employees."[49]  These

6  acts are not ordinary "competition" or "moonlighting."  MGA and Larian used mail and

7  interstate commerce, including interstate and foreign travel,[50] with intent to promote the

8  theft of Mattel's property.  This was done "corruptly" because MGA and Larian intended

9  to injure or defraud Mattel.  Bryant, 573 F. Supp. 2d at 1260.

10  MGA argues that § 641.3 "lacks language making it applicable extra-territorially"

11  to its bribes of employees in Mexico and Canada, citing generic authority holding that

12  California courts "should not ordinarily construe a [state] statute as regulating occurrences

13  outside the state."  Markey v. Kudelski S.A., 2008 WL 65401, at *12 n.9 (S.D. Cal. Jan. 3,

14  2008).  MGA and Larian, however, offered bribes to Machado, Trueba, Vargas, and

15  Brisbois via emails and letters *sent from California*—Larian and MGA communicated

16  with Mattel's employees in Mexico[51] and Canada,[52] via phone, email, fax, and letter, with

17  intent to promote the theft of Mattel's trade secrets and confidential information.  The act

18  of bribery was committed, "in whole or in part," in California, for the benefit of a

19  California corporation.  Cal. Penal Code § 27(a) (penal code applies to "[a]ll persons who

20  commit, in whole or part, any crime within this state").[53]  All the elements of a Travel Act

21

---

22  [46]  Id. at ¶¶ 36-43.
    [47]  Id. at ¶ 81; Exhs. S-64, 79, 87.
23  [48]  Id. at ¶ 77; Exh. S-72.
    [49]  Id. at ¶¶ 86-90.
    [50]  Id. at ¶ 43 (Larian and Kuemmerle traveled to New York to meet Machado);id. at ¶
24  44 (Larian and Kuemmerle traveled to Mexico City to meet Machado, Vargas, and Trueba).
    [51]  FAAC at ¶¶ 36, 43-47, 52, 56; Exh. O-14; Exhs. R-1, 2; Exhs. S-26-36, 55; Exhs. U-
25  1-4; Exhs. W-1-6.
    [52]  Id. at ¶¶ 61-63; Exh. O-15; Exhs. S-40, 80.
26  [53]  "[T]he word 'person' includes a corporation as well as a natural person . . . ." Cal.
    Penal Code § 7. MGA argues that a California crime committed abroad cannot serve as a
27  RICO predicate. But see Bowoto v. Chevron Corp., 481 F. Supp. 2d 1010, 1016 n.4 (N.D.
    Cal. 2007) (Travel Act only requires that "such conduct be chargeable as a general matter;
28  i.e., that such conduct is criminal under state law").

-15-

1  violation occurred in California: the use of an interstate facility, the intent to commit the
2  crime, and the overt act in furtherance of the crime.  Extraterritorial application is
3  irrelevant.[54]  In any case, Mattel alleges numerous acts of bribery that occurred in
4  California, including payments made to at least four Mattel employees to work on Bratz
5  while employed by Mattel.[55]  Consequently, Mattel has alleged a violation of the Travel
6  Act with regard to both Mattel's domestic and foreign employees.

7  **II.    MGA'S RICO INJURY ARGUMENTS, RAISED VIA EMAIL, ARE
         MERITLESS**

8
9       After the Court struck section II of MGA's motion—the only portion raising issues
10  regarding Mattel's showing of injury—MGA's lead counsel purported to raise the issue via
11  email, claiming that it "is discussed in several places" in the motion other than Section II
12  and declaring that the issue "was not stricken by the Court."[56]  MGA's email assertion is
13  incorrect:  the Notice of Motion does not include a motion to dismiss related to RICO
14  injury at all (see Notice of Motion at 1:13-28), and MGA's injury arguments, both in the
15  Notice and in the brief, are styled solely as Rule 56 arguments.  When Mattel asked MGA
16  where, other than in the stricken Section II, MGA's injury arguments are made,[57] MGA
17  chose not to respond.  MGA's effort to use a one paragraph email as a substitute for a
18  motion it did not make should be rejected; there is no motion pending on injury issues.

19  ---

     [54]   See U. S. v. Tavelman, 650 F.2d 1133, 1138 (9th Cir. 1981) (violation of § 1952
20  requires "(1) interstate commerce or use of an interstate facility (2) with intent to promote
     an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful
21  activity").  Even if some commercial bribery also occurred outside of the United States, the
     Ninth Circuit has held that RICO applies to extraterritorial predicate acts if either the
     "conduct" or "effects" test is satisfied.  Poulos v. Ceasars World, Inc., 379 F.3d 654, 663
22  (9th Cir. 2004).  Both tests are satisfied here.  The "conduct" test is satisfied because
     MGA's and Larian's use of the mail or facility in interstate commerce occurred in
23  California, and the beneficiaries of the theft reside in California.  See Grunenthal GmbH v.
     Hotz, 712 F.2d 421, 424 (9th Cir. 1983); Liquidation Comm'n of Banco Intercontinental,
24  S.A. v. Renta, 530 F.3d 1339, 1352 (11th Cir. 2008).  The "effects" test is satisfied because
     the theft of Mattel's trade secrets and confidential information by Machado, Trueba,
25  Vargas, and Brisbois included information regarding the United States market that was
     exploited here by MGA and Larian.  U. S. v. Phillip Morris USA, Inc., 566 F.3d 1095,
     1130-31 (D.C. Cir. 2009), pet. for cert. filed (U.S. Feb. 19, 2010) (No. 09-980).
26       [55]   See FAAC, at ¶¶ 28, 87-90.
     [56]   See May 14, 2010 email from A. Hurst (stating that the MGA Parties and IGWT
27  "intend to press the issue" of whether "Mattel has failed to plead facts showing a plausible
     entitlement to relief . . . because it has failed to plead facts showing RICO harm").
28       [57]   See May 14, 2010 email from D. Proctor to A. Hurst.

1    Nonetheless, out of an abundance of caution, Mattel briefly summarizes injuries flowing
2    from defendants' racketeering activity.

3       **A.    There Is No "Racketeering Injury" Requirement**

4       MGA repeatedly argues, in the stricken Section II, that Mattel has failed to prove a
5    "racketeering injury." Mot. at 30, 32. There is no such requirement. Sedima, S.P.R.L. v.
6    Imrex Co., Inc., 473 U.S. 479 (1985) ("A reading of the statute belies any 'racketeering
7    injury' requirement."). Mattel need only provide "general factual allegations of injury
8    resulting from the defendant's conduct." Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th
9    Cir. 2002). Any further requirement, including a specific showing of proximate cause, is
10   not required at the pleading stage. Id. at 1168-69 (reversing dismissal under Rule 12
11   because proximate cause elements required factual development); Natomas Gardens Inv.
12   Group LLC v. Sinadinos, 2009 WL 1363382, at *13 (E.D. Cal. May 12, 2009) (proximate
13   cause is typically not an issue that is well-suited for dismissal on the pleadings).

14      **B.    Defendants Substantially Injured Mattel's Business And Property**

15      MGA claims Mattel has proven no injuries flowing from defendants' racketeering
16   activity, but the FAAC is replete with factual allegations of injury, both general and
17   specific. FAAC at ¶¶ 84, 85, 91-93, 113, 115, 117, and 121. There is no reason to
18   reconsider the Court's prior ruling that RICO injuries "easily flow from theft of trade
19   secrets and confidential information committed by a direct competitor" (Bryant, 573 F.
20   Supp. 2d at 1269), particularly in light of the Supreme Court's ruling in Carpenter,
21   discussed supra at 11. "[W]here a complaint contains allegations of facts to show that the
22   defendant engaged in a pattern of fraudulent conduct that is within the RICO definition of
23   racketeering activity and that was intended to and did give the defendant a competitive
24   advantage over the plaintiff, the complaint adequately pleads proximate cause, and the
25   plaintiff has standing to pursue a civil RICO claim." Ideal Steel Supply Corp. v. Anza, 373
26   F.3d 251, 262-63 (2d Cir. 2004), overruled on other grounds, 547 U.S. 451 (2006).

27      In addition to injuries flowing from thefts of property, Mattel alleges injuries to its
28   business or property suffered as a direct result of MGA's obstruction, perjury, and evidence

1  tampering, including the payment of nearly $2 million in auditor fees. FAAC at ¶¶ 121,

2  126-127. These are recoverable RICO injuries.[58] Mattel has also alleged injuries caused by

3  Omni, including harm to Mattel's rights as a judgment creditor of MGA. FAAC at ¶ 115.

4      **C.**     **Defendants' Criminal Copyright Infringement Injured Mattel**

5      Mattel also alleges injuries from defendants' criminal copyright infringement.

6  FAAC at ¶ 126. MGA seeks to adjudicate such issues by relying on the Phase 1 jury

7  verdict that it did not act willfully in infringing Mattel's Bratz copyrights. Mot. at 29-30. It

8  is hard to see how this issue could be raised on a motion to dismiss (and it was not), but it

9  fails under any standard, for numerous reasons. These include: (1) Mattel's criminal

10  copyright infringement allegations are *not* limited to the infringement of Bratz copyrights,

11  but also include the copying of knowingly stolen trade secret and confidential documents[59];

12  (2) issues of MGA's *post-verdict* infringement of Bratz copyrights have yet to be tried; and

13  (3) ████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████ MGA's efforts to apply collateral estoppel to the

19  Phase 1 willfulness finding thus fail: "A party has not had the requisite full and fair

20  opportunity if he or she was unable to present critical evidence in the initial proceeding."

21  Snider v. Consolidation Coal Co., 973 F.2d 555, 559 (7th Cir. 1992) (citations omitted),

22  cert. denied, 113 S. Ct. 981; Jack Faucett Assocs., Inc. v. Am. Tel. and Tel. Co., 744 F.2d

23  118, 128-29 (D.C. Cir. 1984) ("[N]ewly discovered evidence, even if insufficient to justify

24

25     [58]   See Stochastic Decisions v. DiDomenico, 995 F.2d 1158, 1167 (2d Cir. 1993) (fees
    expended by judgment creditor in collecting judgments constituted a RICO injury); Living

26      Designs, 431 F.3d at 368-69 ("[E]vidence that knowledge of the withheld evidence . . .
    would have increased the settlement value of the case substantially" is sufficient to show

27      RICO injury).
   [59]   FAAC at ¶ 124(f)

28     [60]   September 22, 2009 *In Chambers* Hearing Tr. at 8:22-25 (emphasis added).

1  setting aside a judgment, may warrant refusal to give the judgment preclusive effect in

2  other actions.").[61]  Finally, MGA's appeal of the Phase 1 verdict undercuts its effort to

3  accord it collateral estoppel effect.

### III.  MATTEL'S FRAUDULENT TRANSFER AND DISTRIBUTION CLAIMS ARE PROPERLY PLEADED

#### A.  Mattel's UFTA Claims Are An Integral Part Of This Case

MGA's argument that, six years into this litigation, the Court should sever Mattel's state law claims is misguided.  Mattel's state law claims involve the "same facts and circumstances that form the basis of [its RICO claims]" and are thus appropriate for pendent jurisdiction.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1051 (9th Cir. 2003); Tr. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003) (pendent jurisdiction appropriate where many of the same issues would arise at both a federal and state trial). Trying Mattel's state law claims against the interrelated entities in this case clearly serves "the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine."  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997) (internal cites omitted).  This Court's "familiarity with this complex case and the lengthy history of litigation" weighs in favor of exercising pendent jurisdiction.  Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co., 2008 WL 4616796, at *1-2 (S.D. Cal. Aug. 1, 2008); Munger v. City of Glasgow Police Dept., 227 F.3d 1082, 1089 n.4 (9th Cir. 2000).  MGA's argument that because some claims arise under state law or concern "non-diverse parties" the Court should not exercise jurisdiction has been squarely rejected by the Supreme Court.  City of Chicago, 522 U.S. at 167 ("The whole point of supplemental jurisdiction is to allow the district courts to exercise pendent jurisdiction over claims as to which original jurisdiction is lacking.").

---

[61]  Defendants cite dicta from In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1303 (7th Cir. 1995), which decertified a class based on the district court's plan to have serial trials on issues such as proximate cause, for the unremarkable proposition that "a jury verdict can have collateral estoppel effect."  The case has no relevance here, where the Court has already noted that defendants' misconduct likely tainted the verdict.

1

**B.    Mattel States A Valid Claim For Actual Fraudulent Transfers**

2      MGA challenges Mattel's thirteenth counterclaim for Avoidance of Actual
3 Fraudulent Transfers (but not its Fourteenth, for Avoidance of Constructive Fraudulent
4 Transfers) on the grounds that Mattel did not plead the claim with specificity under <u>Rule</u>
5 9(b). Even if this claim is governed by <u>Rule</u> 9(b) – and that is at least an open issue[62] –
6 Mattel has met that standard. While MGA suggests that Mattel has done nothing more than
7 identify generally the transfers it challenges and then assert, without any explanation, that
8 they are fraudulent, Mattel has done much more than that. It has specified precisely which
9 transfers it is challenging, including, as to the "Dividend Transfers," by providing the dates,
10 the amounts, and the recipients of the transfers. FAAC at ¶¶ 117, 207, Exh. X. Mattel also
11 alleges in detail why those transfers are fraudulent, including because they were made to
12 insiders of MGA, at times when Mattel had claims against MGA, and MGA "understood
13 the significant likelihood that Mattel's claims would result in judgment in Mattel's favor,"
14 and because the transfers "comprise a significant percentage of MGA's assets as of the
15 respective" dates of the transfers. FAAC at ¶¶ 107, 207-208. Mattel details MGA's
16 scheme to defraud Mattel by siphoning assets from MGA to the point where it was
17 insolvent and then using Omni as a front to become MGA's largest purported creditor,
18 ahead of Mattel. Mattel has alleged facts to support its claim that the Dividend Transfers
19 were made with actual intent to hinder, delay and defraud Mattel's rights as a creditor. <u>See</u>
20 <u>Annod Corp. v. Hamilton & Samuels</u>, 100 Cal. App. 4th 1286, 1294 (2002) (determination
21 of actual intent to hinder, delay, or defraud is fact-specific and requires consideration of the
22 circumstances surrounding the transaction).[63]

23

24  [62]  <u>See, e.g.</u>, <u>In re PillowTex Corp.</u>, 2010 WL 1506922, at *8 (Bkrtcy. D. Del. 2010) ("claims of constructive fraud (i.e., fraudulent transfers) are evaluated using Rule 8(a)(2)"); <u>Steinberg v. Alpha Fifth Group</u>, 2010 WL 1332840, at *2 (S.D. Fla. 2010) (Rule 8 applies
25  to fraudulent transfer claims under Florida's UFTA because "despite the use of the word 'fraud,' a fraudulent transfer claim is significantly different from other fraud claims to
26  which Rule 9(b) is directed"); <u>DLG Mortgage Capital v. Kontogiannis</u>, 594 F. Supp. 2d 308, 330 (E.D.N.Y. 2009) (fraudulent transfer claims do not need to be pleaded with special
27  particularity); <u>Van-Amer. Ins. v. Schiappa</u>, 191 F.R.D 537, 541 (S.D. Ohio 2000) (same).
     [63]  MGA argues that Mattel's inclusion of a single "information and belief" allegation
28  renders its entire claim deficient under <u>Rule</u> 9(b). Mot. at 37. Yet the critical information (footnote continued)

-20-

1  Finally, MGA argues that the Side Letter Agreement was not a fraudulent transfer
2  because it was just an "agreement to agree." Mot. at 37. This misses the point. Mattel is
3  challenging MGA's purported or attempted grant to Omni of a security interest in Bratz
4  intellectual property rights, whether made pursuant to the Side Letter Agreement or
5  otherwise. The Side Letter Agreement is, at least, evidence that such purported transfer
6  occurred, and as detailed in Mattel's Opposition to Omni's Motion to Dismiss, ample other
7  evidence demonstrates that such transfers were made.[64]

8  ## C. Mattel States A Valid Claim For Prohibited Distributions

9  MGA raises three challenges to Mattel's fifteenth counterclaim for Prohibited
10  Distributions under Cal. Corp. Code § 506. First, MGA argues that Mattel cannot raise this
11  claim because Fed. R. Civ. P. 23.1 "only permits derivative actions brought on behalf of
12  shareholders or members of corporations or unincorporated associations." Mot. at 38. Rule
13  23.1 contains no such prohibition. It expressly applies to derivative claims raised by
14  *shareholders*, but it does not purport to prohibit derivative actions by *creditors*. Indeed,
15  federal courts have recognized the rights of creditors to bring derivative actions against
16  insolvent corporations, including under Cal. Corp. Code § 506. See, e.g., In re Dunoco
17  Corp., 56 B.R. 137, 140 (Bankr. C.D. Cal. 1985) ("Section 506 provides that a
18  nonconsenting creditor may bring suit in the name of the corporation against any
19  shareholder who knowingly receives a distribution that makes or would make the
20  corporation unlikely to meet its liabilities."); In re SDR Capital Mgmt., Inc., 2007 WL
21  3450999, at *1 (Bankr. N.D. Cal. Nov. 14, 2007) (acknowledging § 506 claim but declining
22  to enforce based on the facts); Credit Managers Ass'n of S. Cal. v. Fed. Co., 629 F. Supp.

23
24
25  concerning this claim, including the descriptions of the specific transfers Mattel challenges and the reasons why those transfers are fraudulent, are not made on information and belief. See Engle v. Matrix Golf & Hospitality Phila. LLC, 2009 WL 880680, at *4-5, (E.D. Pa.
26  Mar. 31, 2009) (finding that complaint alleging fraudulent transfer satisfied Rule 9(b), even though "most of Engle's allegations concerning the fraudulent transfer were based upon
27  information and belief," because paragraph where Engle alleged the fraudulent transaction at the heart of his case was not based upon information and belief).
28  [64] See Omni Opp. at 16-18; see also FAAC at ¶ 107.

1 | 175, 188 (C.D. Cal. 1985) (same); see also Torch Liquidating Trust ex rel. Bridge Assocs.
2 | v. Stockstill, 561 F.3d 377, 385 (5th Cir. 2009) ("If a corporation becomes insolvent,
3 | however, its creditors become the appropriate parties to bring a derivative suit on behalf of
4 | the corporation where those in control of it refuse to assert a viable claim belonging to it
5 | because the creditors are the beneficiaries of any increase in value.").[65]

6 |       Second, MGA argues that Mattel cannot raise a claim on behalf of MGA's creditors
7 | because it has asserted direct claims against MGA and because it has a conflict of interest
8 | with Omni, another purported MGA creditor. Mot. at 38. MGA's own cases make clear,
9 | however, that "courts have stopped short of implementing a per se rule barring a
10 | shareholder from bringing a derivative suit on behalf of a company while simultaneously
11 | asserting a direct claim against the same company." Shoregood Water Co. v. U. S. Bottling
12 | Co., 2009 WL 2461689, at *4 (D. Md. Aug. 10, 2009). MGA has not identified any
13 | conflict that would prohibit Mattel from adequately representing the interests of MGA's
14 | creditors. As one of the largest creditors of MGA, if not the largest legitimate creditor,
15 | Mattel is an appropriate party to bring this claim, particularly where the other purported
16 | significant creditor of MGA, Omni, is affiliated with MGA and has no incentive to do so.
17 | And a remedy Mattel seeks through its creditor claims is to return the value of the
18 | distributions to *MGA*, for the benefit of MGA and its creditors.

19 |       Third, MGA claims that Mattel has not alleged sufficient facts to show that it was a
20 | creditor at the time of the challenged distributions. Mot. at 38. Cal. Corp. Code § 506(b)
21 | provides that "[s]uit may be brought . . . by any one or more creditors of the corporation
22 | whose debts or claims arose prior to the time of the distribution . . . whether or not they
23 | have reduced their claims to judgment." Mattel alleges that it was a creditor of MGA "as of
24 | the date of the Dividend Transfers," which occurred between 2004 and 2008, "because
25 | Mattel has claims against MGA including but not limited to the claims that have already

---

[65] Moreover, interpreting Rule 23.1 as a bar to creditor derivative actions as authorized under Cal. Corp. Code § 506 would violate 28 U.S.C. § 2072(c), which states that a federal procedural rule cannot be applied if doing so will "abridge, enlarge or modify any substantive right."

15.07975/3502479.1

OPPOSITION TO MOTION TO DISMISS RICO AND CREDITOR CLAIMS

1 resulted in a jury verdict in Mattel's favor in this action." FAAC at ¶ 228. Mattel asserted
2 its claims in its original complaint on April 27, 2004, and alleges the claims arose long
3 before, when MGA first stole Bratz from Mattel. FAAC at ¶¶ 23-35.

4 **IV. MGA'S INTENTIONAL DESTRUCTION OF PROPERTY HELD IN CONSTRUCTIVE TRUST FOR MATTEL IS ACTIONABLE**

5
6    MGA does not dispute Mattel's allegations that MGA intentionally harmed the Bratz
7 assets while holding them in constructive trust for Mattel, but argues that it cannot be held
8 liable for breaching the constructive trust imposed by this Court. This flies in the face of
9 the Court's December 3, 2008 constructive trust Order, under which MGA had an
10 affirmative duty to preserve and protect the Bratz assets. That duty applied during the
11 pendency of the District Court's stay and MGA's appeal of that Order. Under California
12 law, a constructive trustee owes three duties to the beneficiary: (1) to preserve and protect
the trust property;[66] (2) to account for the treatment and disposition of the property;[67] and
13 (3) to turn over the property.[68] MGA violated its duties by failing to maintain a viable
14 Bratz line after the constructive trust was imposed on December 3, 2008 and intentionally
15 diverting its resources away from Bratz and to a competing line of dolls, Moxie.[69] Mattel
16 has properly stated a claim for breach of constructive trust under California law.
17
18    Mattel alleges that MGA breached its duty to preserve and protect the Bratz assets
19 and is therefore "subject to the remedies against unfaithful trustees." Fithian v. Fithian, 74
20 Cal. App. 3d 397, 405-06 (1977). "The usual theory upon which a principal recovers secret
21 profits garnered by his agent is by imposition of a constructive trust. However, where the
22 constructive trustee has dissipated the fund or property that would constitute the res of the
23 constructive trust that theory will not do equity and it is proper in such a situation to award,

24 ───────────
[66] Elliot v. Elliot, 231 Cal. App. 2d 205, 208-09 (1964). The term "property" refers to
25 all tangible and intangible property rights subject to constructive trust *at the moment of its creation*, including the enhanced value of the property caused by the trustee's actions
between the date of the wrongful acquisition and the date of the trust's creation. Id. at 209-
26 10.
[67] David v. Hermann, 129 Cal. App. 4th 672, 690 (2005).
[68] Olson v. Toy, 46 Cal. App. 4th 818, 823 (1996); Norton v. Bassett, 154 Cal. 411,
27 415 (1908).
[69] FAAC at ¶¶ 91-93.
28

1  instead, a judgment for money damages." <u>St. James Armenian Church of Los Angeles v.</u>
2  <u>Kurkjian</u>, 47 Cal. App. 3d 547, 553 (1975). "The constructive trust doctrine is a remedial
3  device which would lose its efficacy if a trustee were permitted to defeat recovery by
4  wrongfully permitting the res to become valueless, as here. The courts have recognized the
5  right of a beneficiary under a constructive trust to obtain a money judgment in lieu of a
6  destroyed res, and to recover the value of trust property commingled by a constructive
7  trustee with his own properties, so that the identity thereof could no longer be traced."
8  <u>Elliot v. Elliot</u>, 231 Cal. App. 2d 205, 209-10 (1964) (internal citations omitted). Courts in
9  California and the Ninth Circuit have recognized that breach of constructive trust is a valid
10 cause of action. <u>See</u> <u>U. S. v. Pegg</u>, 782 F.2d 1498, 1498-1501 (9th Cir. 1986) (affirming
11 money judgment for breach of constructive trust); <u>Bonyton v. Headwaters, Inc.</u>, 243 Fed.
12 Appx. 610, 613 (Fed. Cir. 2007) ("[I]n order to have a claim for breach of constructive
13 trust, a party must first obtain a judicial decision creating a constructive trust."); <u>Farmers</u>
14 <u>Ins. Ex. v. Zerin</u>, 53 Cal. App. 4th 445, 451, 457 (1997) (plaintiff did not properly plead a
15 claim for breach of constructive trust because it had "no lien, equitable or otherwise, on any
16 portion" of the res).

17      MGA cites two California cases for the proposition that a constructive trust is a
18 remedy only, and not a claim. Mot. at 39 (citing <u>Batt v. City and County of San Francisco</u>,
19 155 Cal. App. 4th 65, 82 (2007) and <u>Glue-Fold, Inc. v. Slautterback Corp.</u>, 82 Cal. App. 4th
20 1018, 1023 n.3 (2000)). But both cases address claims to *impose* a constructive trust, not
21 claims for *breach of* a constructive trust.[70] In <u>Glue-Fold</u>, the Court noted that plaintiff's
22 claim "seeking imposition of a constructive trust" is not itself a claim but "merely a type of
23 remedy" that is "dependent upon a substantive basis of liability." 82 Cal. App. 4th at 1023
24 n.3. Mattel does not allege a claim for "imposition of a constructive trust" here; the Court
25

26      [70] The same applies to MGA's out-of-state authority. <u>See Re-Alco Indus., Inc. v. Nat'l</u>
<u>Ctr. for Health Educ., Inc.</u>, 812 F. Supp. 387, 390 n.1 (S.D.N.Y. 1993). The case did not
27 involve a situation where the plaintiff sought damages for devaluation of the res after the
constructive trust was imposed by the Court. Rather, plaintiff simply sought the imposition
28 of a constructive trust that had not yet been imposed. <u>Id.</u>

1 | already imposed that equitable remedy. The FAAC alleges that MGA breached its duty to

2 | preserve and protect the Bratz assets already held in constructive trust. Courts recognize

3 | that claim for breach, and MGA provides no contrary authority.

4 |                                   **Conclusion**

5 |         For the foregoing reasons, the Court should deny defendants' motions to dismiss. If

6 | the Court is inclined to grant the motions in any respect, Mattel requests leave to amend to

7 | address those concerns.[71]

8 | DATED: May 17, 2010              QUINN EMANUEL URQUHART &
                                     SULLIVAN. LLP
9 |

10 |                                 By _____

11 |                                    John B. Quinn
                                        Attorneys for Mattel. Inc.

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 | [71]  The Ninth Circuit has consistently held that "requests for leave to amend should be
      granted with 'extreme liberality.'" Couch v. Cate, 2010 WL 1936277, at *1 n.3 (9th Cir.
28 | May 14, 2010) (quoting Moss v. U.S. Secret Service, 572 F .3d 962, 972 (9th Cir. 2009)).

05.07975/3501133.1

-25-
OPPOSITION TO MOTION TO DISMISS RICO AND CREDITOR CLAIMS