| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>  John B. Quinn (Bar No. 090378)<br>  johnquinn@quinnemanuel.com<br>  Michael T. Zeller (Bar No. 196417)<br>  michaelzeller@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California  90017-2543<br>Telephone:  (213) 443-3000<br>Facsimile:   (213) 443-3100<br><br>Attorneys for Mattel, Inc. | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO MOTION BY MGA ENTERTAINMENT, INC. AND ISAAC LARIAN TO DISMISS SIXTH THROUGH TWELFTH CLAIMS FOR RELIEF PURSUANT TO RULE 12(B)(6)**<br><br>Date:   June 7, 2010<br>Time:  8:30 a.m.<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 2

I.  MATTEL'S STATE LAW TORT CLAIMS ARE NOT PREEMPTED ....... 2

    A.  Mattel's Claims Are Also Based on Wrongdoing Separate and Apart From Alleged Thefts Of Trade Secrets ........................................ 2

    B.  Mattel's Sixth, Seventh and Eighth Counterclaims Are Based On Contractual Rights .................................................................................. 6

    C.  Mattel's Claims Are Based on Thefts of Non-Trade Secret Information ............................................................................................. 7

II. MATTEL'S CONVERSION CLAIM SHOULD NOT BE DISMISSED ... 11

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## Cases

Ali v. Fasteners for Retail, Inc.,
　544 F. Supp. 2d 1064 (E.D. Cal. 2008) ................................................... 3, 10, 12

Arizona v. California,
　460 U.S. 605 (1983) ............................................................................................ 2

Axis Imex Inc. v. Sunset Bay Rattan, Inc.,
　2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ........................................................... 9

Bourns, Inc. v. Raychem Corp.,
　331 F.3d 704 (9th Cir. 2003) ............................................................................... 2

CRS Recovery, Inc. v. Laxton,
　600 F.3d 1138 (9th Cir. 2010) ........................................................................... 13

Core Wealth Management, LLC v. Heller,
　2010 WL 1453068 (Cal. Ct. App. Apr. 13, 2010) ............................................... 6

Digital Envoy, Inc. v. Google, Inc.,
　370 F. Supp. 2d 1025 (N.D. Cal. 2005) .............................................................. 9

FMC Corp. v. Capital Cities/ABC, Inc.,
　915 F.2d 300 (7th Cir. 1990) ......................................................................... 9, 12

Fowler v. Varian Assocs. Inc.,
　196 Cal. App. 3d 34 (Cal. Ct. App. 1987) .......................................................... 5

Fremont Indemnity Co. v. Fremont General Co.,
　148 Cal. App. 4th 97 (Cal. Ct. App. 2007) ....................................................... 14

G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.,
　958 F.2d 896 (9th Cir. 1992) ............................................................................. 13

Gabriel Technologies Corp. v. Qualcomm Inc.,
　2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) ...................................................... 9

Global Med. Technologies Inc. v. Jackson,
　2006 WL 3735581 (Cal. Ct. App. Dec. 20, 2006) .............................................. 8

Interserve, Inc. v. Fusion Garage PTE,
　2010 WL 1445553 (N.D. Cal. Apr. 9, 2010) .................................................. 7, 9

J2 Global Communications, Inc. v. Blue Jay Inc.,
　2009 WL 4572726 (N.D. Cal. Dec. 1, 2009) .................................................... 12

J. C. Peacock, Inc. v. Hasko,
  196 Cal. App. 2d 353 (Cal. Ct. App. 1961) ..................................................... 5

Jan Marini Skin Research, Inc. v. Allure Cosmetic USA, Inc.,
  2007 WL 1508686 (Cal. App. 2007) .............................................................. 3

K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.,
  171 Cal. App. 4th 939 (Cal. Ct. App. 2009) .................................................. 8

Kremen v. Cohen,
  337 F.3d 1024 (9th Cir. 2003) ...................................................... 9, 12, 13, 14

Melchior v. New Line Prods., Inc.,
  106 Cal. App. 4th 779 (Cal. Ct. App. 2003) ................................................ 14

Olschewski v. Hudson,
  87 Cal. App. 282 (Cal. Ct. App. 1927) ........................................................ 14

Parks Sch. of Bus., Inc. v. Symington,
  51 F.3d 1480 (9th Cir. 1995) ....................................................................... 10

Phoenix Technologies Ltd. v. DeviceVM,
  2009 WL 4723400 (N.D. Cal. Dec. 8, 2009) ................................................. 8

Postx Corp. v. Secure Data in Motion, Inc.,
  2004 WL 2663518 (N.D. Cal. Nov. 20, 2004) ..................................... 3, 8, 11

Silvaco Data Systems v. Intel Corp,
  -- Cal. Rptr. 3d --, 2010 WL 1713241(Cal. Ct. App. Apr. 29, 2010) ......... 8, 9

Stokes v. Dole Nut Co.,
  41 Cal. App. 4th 285 (Cal. Ct. App. 1995) .................................................... 5

Think Village-Kiwi, LLC v. Adobe Systems, Inc.,
  2009 WL 902337 (N.D. Cal. Apr. 1, 2009) ......................................... 8, 10, 11

Thomas Betts & Corp. v. Panduit Corp.,
  108 F. Supp. 2d 968 (N.D. Ill. 2000) ............................................................. 9

**Statutes**

Cal. Civ. Code § 3426.7 .................................................................................... 2

Cal. Civ. Code § 3426.7(b)(1) .......................................................................... 6

Cal. Civ. Code § 3426.7(b)(2) ................................................................... 2, 3, 7

Cal. Labor Code §§ 2856, 2860, 2863 .............................................................. 5

Fed.R.Civ.P. 12(g)(2) ...................................................................................... 12

00505.07209/3500689.2

-iii-

MATTEL'S OPPOSITION TO MOTION TO DISMISS

**Preliminary Statement**

By its express terms, the California Uniform Trade Secrets Act ("CUTSA") does not affect claims that are not based on the misappropriation of a trade secret. None of the counterclaims MGA[1] and Larian (collectively, "MGA") seek to dismiss are premised solely on the theft of trade secrets: each of these claims is supported by allegations of other wrongful conduct separate and apart from the taking of Mattel's trade secret information, such as bribing Mattel employees to work on MGA products while employed by Mattel. A number of these claims sound in contract, which CUTSA does not address. Moreover, even as to the taking of Mattel's information, Mattel's claims involve both trade secrets and protectable information that does not rise to the level of trade secrets. Holding that such non-trade secret claims are preempted by CUTSA, as MGA urges, would leave Mattel with no remedy for clear violations of state law. For that reason, many courts have held that plaintiffs should be allowed to plead CUTSA and other state law tort claims in the alternative to preserve their rights in the event that the information at issue is found to be confidential but not a trade secret. At a minimum, it would be premature to dismiss any of Mattel's other state law tort claims at this stage of the proceedings.

MGA separately attacks the Eleventh counterclaim (conversion) because it incorporates Phase I–related arguments. The FAAC does not distinguish among claims based on Phases. In any event, conversion is a properly-pled claim in Phase II. As the Ninth Circuit has repeatedly recognized, California law clearly affords a remedy for conversion of intangible as well as tangible property. MGA's argument to the contrary is based on bad law.

---

[1] This opposition responds to Section II of MGA Entertainment and Isaac Larian's Motion to Dismiss the Sixth through Twelfth Counterclaims (Docket No. 7832, cited as "Motion"), and Section III of the MGA Parties Motion to Dismiss in connection with the Foreign Trade Secrets Claims (Docket No. 7834).

MGA's motion to dismiss Mattel's Sixth through Twelfth counterclaims should be denied.[2]

## Argument

### I. MATTEL'S STATE LAW TORT CLAIMS ARE NOT PREEMPTED

#### A. Mattel's Claims Are Also Based on Wrongdoing Separate and Apart From Alleged Thefts Of Trade Secrets

MGA argues that Mattel's Sixth through Twelfth counterclaims are preempted because they are "premised at least in part" on the same allegations as Mattel's Third counterclaim for trade secret misappropriation. (Motion at 21.) That is not the standard. The fact that these claims are based "at least in part" on misconduct *other than* the alleged theft of trade secrets means that they are not preempted.

By its express terms, CUTSA preemption, to the extent that it is even recognized as such in this district,[3] does not extend to claims based on anything

---

[2] The Court previously ruled that MGA waived its CUTSA preemption argument in the first phase of the trial by failing to raise it. (Dkt. No. 5273 at 4). "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). Should MGA be permitted to raise CUTSA preemption now, claims that were not preempted in the first phase could be preempted in the second, leading to inconsistent results.

[3] CUTSA does not expressly state that it preempts any other causes of action. Rather, it merely identifies certain "remedies" that it does not "affect," including "other civil remedies that are not based upon misappropriation of a trade secret." See Cal. Civ. Code § 3426.7. Neither the California Supreme Court nor the Ninth Circuit has addressed head-on the issue of whether the claims MGA is challenging even can be preempted by the California Uniform Trade Secrets Act. MGA cites to no such cases, and Mattel was unable to locate any. Indeed, although the case law in California has evolved since then, in 2003, the Ninth Circuit ruled that the CUTSA did *not* preempt a cause of action for intentional interference with contracts, citing Cal. Civ. Code § 3426.7(b)(2). See Bourns, Inc. v. Raychem Corp., 331 F.3d 704, 709 (9th Cir. 2003). The CUTSA holding in Bourns has never been criticized, nor has the case been distinguished on those grounds.

other than theft of a trade secret. See Cal. Civ. Code § 3426.7(b)(2) ("This title does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret"). In light of this unequivocal language, courts have repeatedly ruled that claims are not preempted—even if they allege trade secret theft—where they include additional and/or independently sufficient allegations of wrongdoing other than thefts of information. See, e.g., Ali v. Fasteners for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (claim for breach of fiduciary duty not preempted by CUTSA where "based on much broader spectrum of misconduct than simply misappropriating trade secrets," including that defendant secretly designed and tested a product while an NDA was in effect, secretly negotiated with a third party while an exclusivity agreement was in place, and took affirmative steps to design around plaintiff's patent); Postx Corp. v. Secure Data in Motion, Inc., 2004 WL 2663518, at *3 (N.D. Cal. Nov. 20, 2004) (unfair competition claim not preempted by CUTSA where based on "an alternative theory of liability as well as on new facts"); Jan Marini Skin Research, Inc. v. Allure Cosmetic USA, Inc., 2007 WL 1508686, at *26 (Cal. Ct. App. May 24, 2007) (a "claim for interference with prospective economic advantage is not preempted by the UTSA if it depends on factual allegations in addition to those that form the basis of the misappropriation claim").

None of the counterclaims at issue here is predicated solely on the theft of trade secrets:

- Mattel's counterclaim for intentional interference with contract is based expressly on the bribery of Mattel employees to "work for or assist MGA" while on Mattel's payroll – an act of wrongdoing that is wholly independent of the trade secret thefts.[4]

- Mattel's claims for breach of duty of loyalty and aiding and abetting breach of duty of loyalty include allegations that that Mattel employees worked for or assisted MGA while employed by Mattel

---

[4] FAAC ¶¶ 160-161.

and used Mattel property and resources to for the benefit of and to aid and assist MGA and were bribed or induced by Larian to do so.[5]

- Likewise, Mattel's counterclaims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty incorporate allegations that former Mattel employees used Mattel property and resources for the benefit of MGA and were "bribed or induced to work for or assist MGA while Mattel employees."[6]

- Mattel's Eleventh counterclaim for conversion refers specifically to the conversion of non-trade secret "tangible property, including Bratz inventory" that MGA "transferred, sold, alienated or otherwise purported to encumber . . . despite Mattel's rights therein."[7]

- Mattel's Twelfth counterclaim for unfair competition incorporates the bribery and other acts of unlawful, unfair and/or fraudulent acts of unfair competition set forth in the other claims.[8]

MGA argues that Mattel's allegations regarding Mattel employees working for and assisting MGA while on Mattel's payroll add nothing beyond the theft of trade secret allegations because "any work allegedly performed by these former Mattel employees for MGA is simply the collection of Mattel information and documents." (Motion at 24.) But nowhere does Mattel allege that the work or assistance provided by the former Mattel employees was limited to the collection of Mattel information and documents. To the contrary, Mattel specifically alleges other work and assistance, including that MGA "knowingly bribed and secretly used" former Mattel employees Cabrera, Morales and Salazar "to work on MGA products, including Bratz, while they were Mattel employees,"[9] and that Machado, Trueba and Vargas aided MGA in "setting up MGA offices in Mexico City" while

---

[5] FAAC ¶¶180-181, ¶¶179 and 186 (incorporating ¶¶ 160-161) and ¶188.
[6] FAAC ¶166 (incorporating ¶¶160-161), ¶¶168-169, and ¶173 (incorporating ¶¶ 160-161 and 168-169).
[7] FAAC ¶¶ 193-196.
[8] FAAC ¶ 203.
[9] FAAC ¶¶ 86-90.

still employed by Mattel.[10] Such disloyal work for a competitor is actionable for reasons having nothing to do with trade secret law: it is wrong for a company to pay a competitor's employees to aid it even if no secrets are delivered.

In fact, California law is quite clear on this point. Every California employee owes a duty of undivided loyalty to his employer and may not take any action that is adverse to his employer. See Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 295 (Cal. Ct. App. 1995); Fowler v. Varian Assocs. Inc., 196 Cal. App. 3d 34, 41 (Cal. Ct. App. 1987); J. C. Peacock, Inc. v. Hasko, 196 Cal. App. 2d 353, 357 (Cal. Ct. App. 1961); 4 KIRBY WILCOX AND ERICA GRUBB, CALIFORNIA EMPLOYMENT LAW § 70.04 (2003). This duty of loyalty is codified in the Labor Code, which obligates every employee to comply with his employer's directions, to assign to the employer everything (except compensation) the employee acquires by virtue of his employment, and to give preference to the business of the employer over his own similar interests. Cal. Labor Code §§ 2856, 2860, 2863.

MGA claims in a footnote that the allegations regarding Cabrera, Morales and Salazar – who had nothing to do with either trade secrets or confidential information – "should have been addressed in Phase 1 of this litigation" and therefore "should not be considered in the preemption analysis." (Motion at 24, n.6.) Not so. Phase 1 of this litigation involved issues related to the ownership of Bratz.[11] The allegations regarding MGA bribing these individuals to work on Bratz while employed by Mattel in violation of their contractual and other duties to Mattel do not relate to the ownership of Bratz. They should go forward now.[12]

---

[10] FAAC ¶¶ 44-45.
[11] See July 2, 2007 Order, at 2 (Docket No. 608).
[12] Similarly, MGA's unsupported assertion that all allegations relating to Carter Byrant were tried in Phase 1 and "therefore are not relevant to the current preemption analysis" (Motion at 23, n.5) has no merit. For example, as set forth below in Section II, the name "Moxie," another piece of Mattel property that Bryant

### B. Mattel's Sixth, Seventh and Eighth Counterclaims Are Based On Contractual Rights

MGA also overlooks the exclusion from CUTSA preemption for claims based on contractual rights, even to the extent they *are* based on trade secret thefts. Cal. Civ. Code § 3426.7(b)(1) (by its terms, CUTSA "does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret."). Mattel's Sixth counterclaim for intentional interference with contract, Seventh counterclaim for breach of fiduciary duty and Eighth counterclaim for aiding and abetting breach of fiduciary duty are exempt from CUTSA preemption by the terms of the statute itself. See id.; Core Wealth Management, LLC v. Heller, 2010 WL 1453068, at *6 (Cal. Ct. App. Apr. 13, 2010) (applying carve-out that CUTSA does not preempt contractual remedies where defendant induced the breach of an employment contract, and also ruling that the claim was saved because employees both stole trade secrets and were "working for the benefit of Peritus I").

Mattel's Sixth counterclaim for intentional interference with contract is, of course, based in contract. Mattel expressly alleges that "[v]alid contracts existed" between Mattel and the Mattel Employees, that the Mattel Employees had certain duties under those contracts, including the duty "not to work for or assist any competitor of Mattel," and that MGA and Larian "induced and encouraged the Mattel employees to breach their contracts with Mattel."[13]  Similarly, the fiduciary duties underlying Mattel's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims are rooted in contract. Castilla, Contreras and Cooney signed Inventions Agreements in which they specifically acknowledged: "The

---

created while a Mattel employee and disclosed to MGA, was neither addressed in Phase I, nor should it have been, as this Court already recognized in granting Mattel's motion for leave to file the FAAC with respect to Moxie.

[13] See FAAC ¶¶ 160-162.

Company depends on me to maintain that confidentiality, and I accept that position of trust."[14]  Immediately above the signature line, the Agreement emphasizes: "**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST** . . . ."[15]  The Court previously ruled, as to Bryant, that identical language created fiduciary obligations.[16]  The fiduciary duties of the Mexico employees likewise arise out of their respective employment agreements.[17]  The FAAC specifically alleges the contractual underpinnings of the fiduciary duty claims, noting that Bryant and Machado "confirmed their relationship of trust with Mattel in respective employee agreements."[18]  Because the duties the Mattel Employees breached and were induced to breach arose under their contracts with Mattel, any remedies based on the violation of those duties may still be pursued, whether or not based on trade secret misappropriation.

### C. Mattel's Claims Are Based on Thefts of Non-Trade Secret Information

MGA's arguments also overlook that Mattel's state law tort claims are expressly based on thefts of non-trade secret, but otherwise protectable, information.  Throughout Mattel's pleading, Mattel makes clear that these claims are predicated on thefts not only of trade secret information, but also "confidential" and "proprietary" information."[19]  Such claims expressly are *not* limited to theft of trade secrets, and therefore are not barred.  See Cal. Civ. Code § 3426.7(b)(2) ("This title does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret"); Interserve, Inc. v. Fusion Garage PTE, 2010

---

[14] Inventions Agreement ¶ 1(a), FAAC at Exh. I (Castilla), Exh. J (Contreras), Exh. K (Cooney.
[15] Id.
[16] May 21, 2008 Order, at 4 (Docket No. 3758).
[17] See FAAC ¶¶ 37-40 and Exhs. C, D and E (Machado), ¶ 41 and Exh. F (Trueba) and ¶ 42 and Exh. G (Vargas).
[18] FAAC ¶ 167.
[19] See, e.g., FAAC ¶¶ 47, 67, 74, 77, 84, 93, 160-161 and 169.

WL 1445553, at *2-*3 (N.D. Cal. Apr. 9, 2010) (claim for misappropriation of non-trade secret business ideas not preempted by CUTSA because misappropriation of business ideas is a separate tort in California); <u>Phoenix Technologies Ltd. v. DeviceVM</u>, 2009 WL 4723400, at *4-*5 (N.D. Cal. Dec. 8, 2009) (claims for interference with contract, violation of the UCL, conversion and constructive trust not preempted by CUTSA where they may be based on non-trade secret information; court should not dismiss before confidential information is determined to be a trade secret or not); <u>Think Village-Kiwi, LLC v. Adobe Systems, Inc.</u>, 2009 WL 902337, at *2 (N.D. Cal. Apr. 1, 2009) (claims for common law misappropriation and breach of confidence not superseded to the extent that plaintiff is pleading in the alternative that the information described in the claims might be proprietary but not trade secret information); <u>Postx Corp.</u>, 2004 WL 2663518, at *1, *3 (unfair competition claim not preempted by CUTSA where based on theft of confidential customer list); <u>Global Med. Technologies Inc. v. Jackson</u>, 2006 WL 3735581, at *8 (Cal. Ct. App. Dec. 20, 2006) (ruling that conversion claim would survive if converted property was not a trade secret, as "Global Med . . . must prove only that Jackson converted property Global Med owned or possessed").

MGA's reliance on <u>Silvaco Data Systems v. Intel Corp.</u>, -- Cal. Rptr. 3d --, 2010 WL 1713241(Cal. Ct. App. Apr. 29, 2010) and <u>K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.</u>, 171 Cal. App. 4th 939 (Cal. Ct. App. 2009) for the proposition that CUTSA preempts "all other state law causes of action premised on the theft of confidential information" (Motion at 22) is misplaced. Neither <u>Silvaco</u> nor <u>K.C. Multimedia</u> involved common law claims based on independently protectable confidential information. See <u>K.C. Multimedia,</u> 171 Cal. App. 4th at 959 ("the complaint as a whole rests on factual allegations of ***trade secret misappropriation***") (emphasis added); <u>Silvaco</u>, 2010 WL 1713241, at *16 ("All of Silvaco's claims . . . depend on Intel's supposed use,

in Silvaco's words, of 'software . . . which embodies and uses . . . Silvaco Trade Secrets.'"). Indeed, central to the court's ruling in <u>Silvaco</u> was its determination that the "claims are either based upon misappropriation of a trade secret . . . or they are based upon no legally significant events at all." 2010 WL 1713241, at *15. That is not the case here. If anything, <u>Silvaco</u> confirms that where, as here, additional acts of wrongdoing are alleged, including the taking of non-trade secret, but otherwise protectable information, preemption is improper. <u>See</u> <u>Interserve</u>, 2010 WL 1445553, at *3 (quoting <u>Think Village-Kiwi, LLC</u>, 2009 WL 902337, at *3) (There is "'no authority holding that CUTSA preempts common law claims even if the confidential information is a protectible interest other than a trade secret.'").[20]

      The broad proposition MGA argues for here would lead to absurd results. Mattel has protectable interests in its confidential business information. <u>See</u> <u>Kremen v. Cohen</u>, 337 F.3d 1024, 1033 (9th Cir. 2003) (finding that California law recognizes protectable property interest in "music recordings, radio shows, customer lists, regulatory filings, confidential information and even domain names"); <u>FMC Corp. v. Capital Cities/ABC, Inc.</u>, 915 F.2d 300, 304 (7th Cir. 1990) (holding that, under California law, a defendant could be liable for depriving plaintiff of the use of his confidential information). Each of the former Mattel employees named in the

---

[20] None of the other cases cited by MGA are any more helpful. In <u>Digital Envoy, Inc. v. Google, Inc.</u>, 370 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2005), plaintiff's common law tort claims were "based on the identical facts alleged in its claims for misappropriation of trade secrets." <u>Gabriel Technologies Corp. v. Qualcomm Inc.</u>, 2009 WL 3326631, at *11-13 (S.D. Cal. Sept. 3, 2009) and <u>Axis Imex Inc. v. Sunset Bay Rattan, Inc.</u>, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) both turned on the court's finding that if the trade secret facts are removed, the claims at issue failed to retain sufficient independent facts to survive. Similarly, <u>Thomas Betts & Corp. v. Panduit Corp.</u>, 108 F. Supp. 2d 968, 972-73 (N.D. Ill. 2000), a case decided under Illinois law at the summary judgment stage, involved claims that turned solely on the misappropriation of trade secrets.

FAAC had contractual, fiduciary and/or statutory duties not to disclose such confidential information, including to competitors such as MGA. Mattel alleges that MGA and Larian bribed or otherwise induced each of these former employees to breach those duties. By MGA's reasoning, Mattel is without a remedy for this wrongful conduct unless the stolen confidential information rises to the level of a trade secret. CUTSA should not be construed so as to deny Mattel a remedy for a clearly cognizable harm.[21]

For this same reason, numerous courts have held that a plaintiff may plead a claim under CUTSA and other state law tort claims in the alternative, so that if the court or fact finder determines that certain information is not a trade secret, but is otherwise protectable, the plaintiff does not suffer a wrong for which there is no remedy. See, e.g., Think Village-Kiwi, LLC, 2009 WL 902337, at *2 (claims for common law misappropriation and breach of confidence not superseded to the extent that plaintiff is pleading in the alternative that the information described in the claims might be proprietary but not trade secret information); Ali v. Fasteners for Retail, Inc., 544 F. Supp. 2d at 1072 (finding that it would be premature to dismiss conversion claim, even though based on same facts as CUTSA claim,

---

[21] MGA urges that the additional allegations regarding the taking and use of confidential or proprietary information add nothing beyond the theft of trade secret allegations because "Trade Secret Material," as defined in Mattel's theft of trade secret claim, purportedly includes any and all information and thus any confidential or proprietary information allegation must be read as a trade secret allegation. But, with the exception of Mattel's conversion claim, the term "Trade Secret Material" does not appear in any of the challenged common law tort claims and the conversion claim clearly distinguishes "Trade Secret Materials" from other tangible property, including Bratz inventory. (FAAC ¶¶ 193-196.) Moreover, MGA's attempt to turn every allegation regarding confidential or proprietary information into a trade secret allegation in this manner is inconsistent with the requirement that on a motion to dismiss pursuant to Rule 12(b)(6) the allegations of the complaint are to be "construe[d] in the light most favorable to the nonmoving party." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

because "it is still unclear how much of the allegedly misappropriated information was a trade secret"); Postx Corp., 2004 WL 2663518, at *3 (unfair competition claim not preempted by CUTSA where based on "an alternative theory of liability as well as on new facts" and where the property alleged was non-trade secret property).  As one court recently stated, "Defendants cannot have it both ways" and "[D]efendants' current argument – that the trade secret allegations are preempted by CUTSA – contradicts their primary defense that [plaintiff's] information does not constitute trade secrets." Think Village-Kiwi, LLC, 2009 WL 902337, at *2 (quoting and citing Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 295 F.Supp.2d 430, 437 (D. Del. 2003)) (internal quotation marks omitted).  That is exactly what MGA seeks to do here, arguing at length in its stricken summary judgment Separate Statement that the stolen information does not constitute trade secrets (Sep. Stmt. at 139-505) and yet that Mattel's other state law claims purportedly fail because they allege theft of trade secrets.  Each of the non-CUTSA state law tort claims state viable claims for relief as to confidential, non-trade secret information that was taken.  The Mattel employees had contractual, fiduciary and/or statutory duties not to disclose Mattel's confidential information, whether or not such information constituted a trade secret, and MGA and Larian encouraged the breach of those duties.  At a minimum, it would be premature to dismiss any of these claims on preemption grounds at this stage of the proceedings.

## II. MATTEL'S CONVERSION CLAIM SHOULD NOT BE DISMISSED

MGA seeks to eliminate Mattel's entire conversion claim on the basis that two specific allegations are insufficient:  "property and materials that were created by Bryant" and intangible property.  In fact, the Eleventh counterclaim includes several other allegations that MGA – by not challenging them here – effectively concedes are sufficient to state a claim, thus directly undercutting its motion to

dismiss. Fed.R.Civ.P. 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion"); see e.g., J2 Global Communications, Inc. v. Blue Jay Inc., 2009 WL 4572726, at *4 (N.D. Cal. Dec. 1, 2009) (finding that "in his motion to dismiss, [defendant] could have raised the issue of service of process but did not do so, thus waiving the challenge").

For example, the FAAC's allegations concerning MGA's theft of confidential information plainly support Mattel's conversion claim.  See Kremen, 337 F.3d at 1033 (stating that California law "recognizes conversion of music recordings, radio shows, customer lists, regulatory filings, confidential information and even domain names"); FMC Corp., 915 F.2d at 304 (holding that, under California law, a defendant could be liable for depriving the plaintiff of the use of his confidential information).   See also Ali v. Fasteners for Retail, Inc., 544 F.Supp.2d at 1072 (finding that, on a motion to dismiss, "it is still unclear how much of the allegedly misappropriated information was a trade secret.  Therefore, it would be premature to hold that CUTSA preempts Plaintiff's conversion claim").

Further, MGA's invitation to strike the phrase "property and materials that were created by Bryant" should be refused for two reasons.  First, the FAAC – properly – does not concern itself with the allocation of claims between Phase I and Phase II.  MGA cites no authority for the proposition that Phase I-related allegations should be excised from the complaint.

Second, not all conversion claims that involved property and materials created by Bryant were adjudicated in Phase I; on the contrary, Phase I was focused narrowly on property relating to Bratz:

> Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address

> approximately two-hundred Bratz products that are potentially derivative of the original drawings. ***This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings.*** A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

July 2, 2007 Order, at 2 (Docket No. 608) (Larson J.) (emphasis added). For example, the name "Moxie," another piece of Mattel property that was pled as created and converted by Bryant,[22] was neither addressed in Phase I, nor should it have been, as this Court already recognized in granting Mattel's motion for leave to file the FAAC with respect to Moxie. See April 10, 2010 Order, at 5, 9 and 10 (Docket No. 7712) (finding Moxie allegations an appropriate part of Phase II). Accordingly, the alleged conversion of "property and materials that were created by Bryant" describes viable Phase II claims and should be retained as pled.

Finally, MGA's contention that California case law has deemed intangible property "legally insufficient to establish a conversion claim" (Motion at 25) is simply wrong. The Ninth Circuit has made clear that California law recognizes a claim for conversion of intangible property. Kremen v. Cohen, 337 F.3d 1024, 1036 (9th Cir. 2003) (holding that registrants have an intangible property right in their domain name capable of sustaining a claim for conversion); see also CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1144 (9th Cir. 2010) (observing that "[t]he parties do not dispute that a domain name is intangible property, subject to an action for conversion under California law"); G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 902 (9th Cir. 1992) (holding that rights afforded by a government issued license were properly the subject of a claim for conversion based upon the Court's assertion that an interest on which a claim of

---

[22] FAAC ¶¶ 6, 92, 93.

1 conversion is based "need not be one that was considered property at common law
2 and, of course, need not be tangible").
3   MGA's cited authority is not good law.  <u>Melchior v. New Line Prods., Inc.</u>,
4 106 Cal. App. 4th 779 (Cal. Ct. App. 2003) did not reach the conversion claim
5 before it, ruling instead that it was preempted by copyright law.  The language
6 quoted by MGA was that court's description of another court's decision that,
7 likewise, did not resolve the conversion claim because, like the court in <u>Melchior</u>,
8 it decided that the claims were preempted by copyright law.  In short, the statement
9 upon which MGA hinges its entire argument is dicta relying upon dicta.  MGA's
10 secondary authority fares no better.  In <u>Olschewski v. Hudson</u>, 87 Cal. App. 282
11 (Cal. Ct. App. 1927) the California Court of Appeals rejected binding California
12 Supreme Court authority to arrive at its result.  <u>Olschewski</u> has been explicitly
13 rejected by the Ninth Circuit in <u>Kremen</u> , 337 F.3d at 1031-32,  and by the
14 California Court of Appeals in <u>Fremont Indemnity Co. v. Fremont General Co.</u>,
15 148 Cal. App. 4th 97, 125 (Cal. Ct. App. 2007)—the latter being an in-depth
16 analysis of California conversion law in support of its holding that a properly
17 alleged claim for "the misappropriation of intangible net operating losses . . .
18 supports a cause of action for conversion." <u>Id.</u> at 125-126.

## Conclusion

For the foregoing reasons, the Mattel parties respectfully request that the Court deny MGA's motion to dismiss Mattel's Sixth through Twelfth counterclaims pursuant to Rule 12(b)(6).

DATED: May 17, 2010     QUINN EMANUEL URQUHART &
               SULLIVAN, LLP

            By  /s/ Michael T. Zeller
              Michael T. Zeller
              Attorneys for Mattel, Inc.