MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**MGA PARTIES' OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO MATTEL'S REQUESTS FOR PRODUCTION** |

# INTRODUCTION

In Mattel's hastily-filed Motion to fend off MGA's summary judgment motion, it omits one important fact: MGA was ordered to and did produce most of the documents it now demands. Mattel seeks documents related to forecasting and inventory systems, but the Court already resolved that issue in its January 26, 2010 Order ("January 26 Order"), requiring MGA to produce "all documents sufficient to demonstrate and describe the function and method and manner of operation of any forecasting or inventory system." As ordered, on February 9, 2010, MGA produced all such documents, producing 138 responsive documents containing 38,942 pages of documents on MGA's forecasting and inventory systems.

Mattel also demands documents showing communications with law enforcement. But in its January 26 Order, the Court already addressed this as well, ordering production of "all communications by or on behalf of any of the MGA Parties with law enforcement in Mexico, Canada and/or the United States . . ." On February 9 and 19, 2010, MGA complied with this Order, producing communications with law enforcement.

Mattel also demands production of pricing strategies at MGA, but again the Court resolved this issue in its January 26 Order, and MGA complied with that Order, producing pricing documents in February, 2010.

Mattel inexplicably does not even mention the Court's Order addressing the issues it now raises. The only explanations for Mattel moving to compel documents it already received is either (a) it threw this Motion together in an effort to create a basis for delaying summary judgment, or (b) whoever wrote this Motion simply never checked to see if Mattel already had the documents requested. Or both. In any event, documents on MGA's forecasting and inventory systems, documents showing communications with law enforcement, and pricing data have been produced. To the extent the current Motion goes beyond what was ordered by the Court on these requests, it should be denied.

# FACTUAL BACKGROUND

Omitted from Mattel's depiction of the factual background is the fact that MGA was ordered to and did produce many of the documents Mattel seeks to compel.

### A. Forecasting Documents Were Produced Pursuant to Court Order In February 2010 And Earlier

On January 26, 2010 the Court ordered that:

> The parties dispute whether the MGA Parties should produce forecasting and inventory systems that were "considered, contemplated, or discussed" after Castilla began working for MGA. The potential for Mattel's misuse of this information is tremendous. Accordingly, the Court hereby ORDERS that Mattel and the MGA Parties shall further produce, for the Court's in camera review, documents sufficient to demonstrate and describe the function and method and manner of operation of any forecasting or inventory system or processed considered, contemplated or discussed by them during the subject time period.

Dkt. No. 7434 at 6, ¶ 10. MGA produced all responsive documents on February 9, 2010[1]. A total of over 38,000 pages of documents were produced detailing MGA's forecasting and inventory system both before and after Castilla came to MGA.

Prior to that Order, MGA had already produced detailed records showing the type of system used at MGA for forecasting and inventory and detailing Castilla's role in developing that system. MGA had produced hundreds of pages of user guides, emails or technical documents detailing the systems used at MGA. MGA previously produced, on December 4, 2009, over a hundred pages documents of documents relating to MGA's forecasting and inventory management systems,

---

[1] The parties agreed to a one-week extension from the Court's order that ordered production on February 2, 2010.

1  including User Manuals for those systems.  *See* William Molinski letter to Michael
2  Zeller et al, dated December 4, 2009; *e.g.* MGA2 0543092-107, MGA2 0543004-
3  86.
4        Mattel used various documents produced by MGA relating to its forecasting
5  and inventory systems at the deposition of Castilla's former boss at MGA, Nicole
6  Coleman, who provided detailed testimony on MGA's development of its
7  forecasting and inventory systems.  *See, e.g.*, Coleman Depo., Exhs. 7534-7552.
8  Ms. Coleman also testified at length, and MGA produced documents, as to the
9  reasons for MGA's upgrades to or replacements of any existing inventory systems
10 at MGA.  *See* Coleman depo. at 121-125, 161-164.  Ms. Coleman also testified to,
11 and MGA produced documents, on the expected benefits to the various forecasting
12 systems it employed.  *See* Coleman Depo. at 63-70, 92-121, 170-71.

13     **B.**   **Communications Relating To Criminal Investigations Have Been Produced Pursuant to Court Order**
14

15       In the Court's January 26 Order, MGA was also required to produce all
16 communications with law enforcement officials related to the criminal proceedings
17 initiated by Mattel in Mexico, Canada and the United States.  Dkt. No. 7434 at 5,
18 ¶ 7.  MGA produced all such documents not previously produced on February 9
19 and 19, 2010.[2]  On April 19, 2010, MGA's counsel certified in writing to Mattel
20 that all communications with law enforcement had been produced.  Glen Liu letter
21 to Diane C. Hutnyan, dated April 19, 2010.

22     **C.**   **Pricing Documents Were Produced Pursuant to the Court's Order**
23       Mattel also previously raised, and the Court has resolved, the issue of what
24 pricing documents MGA is required to produce.  In its January 26 Order, the Court
25 previously rejected Mattel's blunderbuss requests for all pricing documents of
26 / / /
27 / / /
28 [2] One additional communication was located and produced on April 19, 2010.

- 3 -      MGA'S OPPOSITION TO MOTION TO COMPEL
    CV-04-0049 DOC (RNBx)

MGA, regardless of time, product or relevance.  It instead imposed a reasonable restriction, requiring:

> The Court hereby ORDERS that **the MGA Parties shall, on or before February 2, 2010, produce to Mattel documents sufficient to show, by product, the gross and net price of products sold by the MGA Parties during and for the six month time period before and the six month time period after Vargas, Trueba and Machado left Mattel**.

Dkt. No. 7434 at 6, ¶ 9.  MGA complied with this Order, producing responsive documents in February 2010.  *See, e.g.*, MGA2 0759221-22, MGA2 0853503-645.

## ARGUMENT

### A. MGA has Produced Responsive Documents On Forecasting And Inventory Systems

Mattel's requests for documents related to forecasting and inventory systems have already been fulfilled.  The problem is not in what has or has not been produced, it is that Mattel's theory has not panned out.

In its January 26 Order, the Court required MGA to produce forecasting and inventory system documents to the period six months before and six months after Castilla joined MGA in April 2006.  Dkt. No. 7434 at 6, ¶ 10.  Mattel's current requests ignore the Court's limitation and seek all documents related to such systems from 2001 to the present.  Mattel does not even mention the Court's recent resolution of this issue in its January 26 Order.  To the extent Mattel's requests seek documents beyond the Court's January 26 Order concerning forecasting and inventory systems at MGA, such requests should be denied as overbroad and an improper attempt to have the Court reconsider the January 26 Order.  No showing has been made by Mattel to justify ignoring the time limitation, established by the Court in its Order.

/ / /

Mattel's claim of relevance is that it needs to know every aspect of MGA's inventory and forecasting systems to see if Castilla used any information *in his head* to help MGA improve these systems. MGA has provided detailed documents showing (1) the types of system used for inventory and forecasting before Castilla came; (2) the systems used after he arrived; (3) the development of these systems, including specifications, user manuals, emails, facts and requirements documents; and (4) documents evidencing any involvement by Castilla in any of that design or development.

What these documents show is that, contrary to Mattel's hypothesis, MGA had a robust inventory and forecasting system in place before Castilla arrived. In fact, MGA had replaced both its inventory and management systems shortly *before* hiring Castilla. (The new John Galt forecasting system went live on January 1, 2006 – three months before Castilla's arrival in March, 2006 – and the Axapta inventory system went live on 2006, again, before Castilla was hired). MGA has produced detailed records reflecting this. MGA has also produced records showing that Castilla had little, if any, involvement in the inventory system upgrade at MGA and that his role in replacing the forecasting system in 2007 was in implementing the vision and requirements established for that system by various others at MGA, including his boss, Ms. Coleman, who had designed a forecasting system from the ground up at her prior job. MGA has produced responsive documents; Mattel just does not like what it sees.

**B.    MGA Has Produced All Responsive Documents On Communications With Law Enforcement**

Pursuant to the Court's January 26 Order, MGA produced all communications with law enforcement related to the criminal proceedings initiated by Mattel. MGA confirmed in writing on April 19, 2010 that it was in full compliance. Mattel's Motion to Compel those documents, which does not even reference MGA's production, this Court's Order or MGA's written certification of

compliance, is an obvious attempt to create a discovery record for delaying a decision on summary judgment.

### C. Mattel's Requests For Pricing Information Is Overbroad And Harassing and MGA Has Already Produced Pricing Data it was Ordered to Produce

Mattel seeks every document at MGA related to its strategies for pricing, implementation and changes in pricing. Mattel also vaguely asks for every document MGA ever considered or discussed in setting its prices. The requests are unbounded by time, asking for every document from 2001 to the present, are unbounded by product, and are so broadly and ill-defined to encompass millions of pages of documents. The requests are also duplicative of many previous requests, for which documents have been produced. Mattel might as well have said simply "Give us everything you have on pricing." For a company selling consumer goods, where the price charged for a product relates to almost every aspect of its business, the scope of these requests is almost limitless.

Moreover, Mattel again ignores the Court's January 26 Order that has already resolved this very issue. In that Order, the Court addressed similar requests for pricing information from MGA, which Mattel justified with the same arguments it makes here. The Court ordered a production of certain pricing information, but imposed a reasonable limitation for documents "sufficient to show, by product, the gross and net price of products sold by the MGA Parties during and for the six month time period before and the six month period after Vargas, Trueba and Machado left Mattel." Dkt. No. 7434 at 6, ¶ 9. Mattel's Motion ignores entirely this Court's Order, and the limitations imposed by that Order, and instead seeks a broad swath of pricing documents with no limitations on scope or time. Mattel has not justified why the Court's January 26 Order should be ignored. Mattel also does not justify why it deserves every pricing- related document from 2001 to the present when it alleges only that certain individuals took pricing documents for some limited period of time and only for certain products and customers.

Further, the requests are not relevant and are barred by fundamental principles of trade secrets laws.  The only claimed relevance of the requests is that individuals left Mattel with information about Mattel's pricing.  Mattel admits it has no evidence of MGA using any Mattel information to set MGA's price, or even that any of these individuals even disclosed Mattel's prices to MGA.  The Court's rejection of inevitable disclosure doctrine was intended to prevent a plaintiff from asserting that a former employee had access to certain information, and must have used that information at his new employer.  *Whyte v. Schlage Lock*, 101 Cal. App. 4th 1443, 1463-64 (2002).  Merely asserting that individuals retained information from Mattel on its pricing, without proof that they ever disclosed that information to MGA, does not give Mattel free reign to obtain MGA's pricing strategies and plans in the hopes that Mattel might find some evidence of use.

### D. **Mattel's Remaining Requests, Relating to MGA's Alleged Use of "Other Mattel Confidential Information," Are Overbroad And Improper**

Again ignoring the Court's January 26 Order, Mattel seeks an almost limitless set of documents in its effort to find some evidence that shows any sort of Mattel information, not limited to its purported trade secrets, was disclosed to MGA or actually used by MGA.  This demand is based upon requests served by Mattel as long ago as October 2007.  Mattel's cursory arguments regarding the relevance of these documents does not support the requests on their face, nor does it justify the overbreadth of the requests and the burden that they impose on MGA.

These requests go far beyond the named former employees that Mattel alleges took information to MGA.  These requests seek any and all Mattel documents disclosed to MGA, directly or indirectly by Mattel employees, in the past twelve years.  Request Nos. 3-9 (Fourth Set – Appendix A).  Mattel demands that MGA produce all documents received by MGA authored by anyone at Mattel from 1998 to the present.  *Id.*  Compelling production of these documents would mean compelling the production of every email ever sent by a Mattel employee to

anyone at MGA from January 1, 1998 to the present, as such a document is "authored by Mattel" and "relates to Mattel." *See* Request No. 9. Further, any document in the public domain "authored by Mattel" that "relates to Mattel," such as released advertisements or television ads, would also be responsive to these requests, as MGA's receipt of such documents, even in the public domain, would be the result of an "indirect" disclosure by a Mattel employee. Mattel's intention to compel the production all such documents is clear from its inclusion of Request No. 80. Request No. 80 demands the production of any "MATTEL DOCUMENT delivered to [MGA]," with "MATTEL DOCUMENT" defined as "all DOCUMENTS authored by MATTEL *or* taken from MATTEL and in the possession of MGA." Mattel's Fourth Set of Requests for Production to MGA at 4, ¶ P.

Compounding the overbreadth of those requests are the next group of requests, which demand the production of all communications relating to the "Mattel authored documents" that "relate to Mattel" which were "directly or indirectly disclosed" by a Mattel employee. Request Nos. 10-16 (Fourth Set – Appendix A). In essence, if compelled to produce responsive documents, MGA would be required to produce any communication by any employee relating to Mattel or a Mattel product from January 1, 1998 to the present. *See* Request No. 16 (Fourth Set – Appendix A). Mattel has not set forth a basis for the relevance of these documents and such broad discovery demands are inappropriate at this stage of the litigation.

Mattel also demands that the Court compel MGA's production of "all documents that refer or relate to MGA's product or product line offerings, or contemplated or proposed product line offerings" for 2003, 2004, 2005, 2006, 2007, and 2008. Request Nos. 100-105 (Fourth Set – Appendix A). Mattel's motion does not contain any argument to support the relevance of these requests, nor could it. In essence these requests would require the production of every document created or

authored by anyone working in design or development for MGA for six years. It is these types of requests that illustrate exactly how overreaching Mattel's production demands are in the first place.

Similarly, even where the requests are tied to specific former employees, Mattel's requests are similarly broad and overreaching. The requests are not narrowed to specific topics on which the employees are alleged to have stolen trade secrets but rather broadly demand production of all documents relating to their new employment at MGA. *E.g.* Request Nos. 20-23, 25, 27, 29, 33, 34, 39, 41-44, 46, 47, 51 (Fourth Set – Appendix A). For example, Mattel demands:

- All documents created, prepared or sent by Brawer or Contreras "relating to MGA's sales strategy, technique or plans," Request Nos. 20, 51 (Fourth Set – Appendix A);
- All documents created, prepared or sent by Machado or Treuba "relating to MGA's market planning and product development" in Mexico, Request Nos. 25, 27 (Fourth Set – Appendix A);
- All documents created, prepared or sent by Vargas "relating to MGA's promotion spending and activities" in Mexico, Request No. 29 (Fourth Set – Appendix A);
- All documents Castilla created, prepared or sent "relating to sales planning or inventory management," Request No. 39 (Fourth Set - Appendix A);
- All documents created, prepared or sent by Cooney relating to Toys 'R' Us, Request Nos. 33, 34 (Fourth Set – Appendix A); and
- All documents created, prepared or sent by Brisbois relating to Wal-Mart or Toys 'R' Us, Request Nos. 41-44 (Fourth Set – Appendix A).

In essence, Mattel is requesting that the Court order MGA to produce all documents created, prepared or sent by Brawer, Contreras, Machado, Trueba, Vargas, Cooney and Brisbois as part of their employment at MGA. There is simply no justification

for such broad-brush discovery, especially after six years of largely unlimited discovery. Such unreasonable discovery demands should no longer be entertained.

### E. Mattel's Motion Is Insufficient to Support Its Demands

Mattel's thirteen-page motion to compel includes more than 175 requests for production from three sets of request, going back as far as October 2007. However, Mattel does not even mention many of the requests at issue in its motion itself. Rather, Mattel attempts to rely on "examples" of its requests, as providing justification for all requests relating to its very broad topics of "forecasting and inventory management systems," "pricing strategy," "criminal investigations," and the illusive "other confidential information." It is Mattel's burden to justify its requests, both on relevance and scope, and its current motion does not do so. Accordingly, Mattel's motion should be denied.

### CONCLUSION

Based upon the foregoing, MGA respectfully requests that Mattel's motion be denied in its entirety.

Dated:   May 19, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   /s/ *William A. Molinski*
          WILLIAM A. MOLINSKI
          Attorneys for MGA Parties