QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

MATTEL, INC., a Delaware corporation,

Plaintiff,

vs.

MGA ENTERTAINMENT, INC., a California corporation, et al.,

Defendant.

AND CONSOLIDATED ACTIONS

**PUBLIC REDACTED VERSION**

CASE NO. CV 04-9049 DOC (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

Hon. David O. Carter

**MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION TO QUASH MATTEL'S SUBPOENA TO THE INTERNAL REVENUE SERVICE; AND**

**CROSS-MOTION TO COMPEL MGA PARTIES TO EXECUTE A RELEASE TO PERMIT THE INTERNAL REVENUE SERVICE TO DISCLOSE THE SUBPOENAED DOCUMENTS**

Date: TBD
Time: TBD
Place: Courtroom 9D

**Phase 2**
Discovery Cut-off: TBD
Pre-trial Conference: TBD
Trial Date: TBD

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 1

ARGUMENT ........ 5

**I. MATTEL'S SUBPOENA SEEKS RELEVANT DOCUMENTS THAT MGA HAS REFUSED TO PRODUCE** ........ 5

**II. MGA'S MOTION TO QUASH SHOULD BE DENIED** ........ 6

**III. THE COURT SHOULD GRANT MATTEL'S CROSS-MOTION TO COMPEL MGA TO SIGN A RELEASE FOR THE DOCUMENTS** ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page**

## Cases

A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186 (C.D. Cal. 2006) .......... 8

Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691 (D. Nev. 1994) .......... 7

Estate of Ungar v. Palestinian Authority, 400 F. Supp. 2d 541 (S.D.N.Y. 2005) .......... 7

Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist., 2006 WL 2255538 (E.D. Cal. Aug. 7, 2006) .......... 8

Green v. Baca, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005) .......... 7

Johnson v. Kraft Foods North America, Inc., 236 F. Supp. 2d 535 (D. Kan. 2007) .......... 9

Olsen v. Egger, 594 F. Supp. 644 (S.D.N.Y. 1984) .......... 9

Stockwitz v. U.S., 831 F.2d 893 (9th Cir. 1987) .......... 8

In re Yassai, 225 B.R. 478 (Bankr. C.D. Cal. 1998) .......... 7

## Statutes

26 C.F.R. § 301.6103(c)-1 .......... 1, 9, 10

26 C.F.R. § 301.6103(c)-1(b) .......... 9

26 C.F.R. § 301.6103(c)-1(c)(1)(i)(C) .......... 10

26 C.F.R. § 301.9000-2 .......... 8

26 C.F.R. § 301.9000-2(a) .......... 8

26 U.S.C. § 6103 .......... 8

26 U.S.C. § 6103(b)(1), (2) .......... 9

26 U.S.C. § 6103(b)(6), .......... 9

26 U.S.C. § 6103(c) .......... 9

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on a date and at a time to be determined by the Court, before the Honorable David O. Carter, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court, pursuant to Federal Rules of Civil Procedure 34 and 37 and its inherent authority, to compel MGA Entertainment, Inc. to execute a release pursuant to 26 C.F.R. § 301.6103(c)-1 permitting the Internal Revenue Service (IRS) to disclose documents responsive to Mattel's May 4, 2010 subpoena to the IRS.

Mattel makes this motion to compel on the grounds that the subpoena seeks relevant, discoverable information, regarding which MGA has no proper basis to withhold production.

This Motion is based on the accompanying Memorandum of Points and Authorities, the records and files of this Court, and all other matters of which the Court may take judicial notice.

DATED: May 21, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Dylan Proctor
B. Dylan Proctor
Attorneys for Mattel, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

For years, in the face of multiple Court orders requiring production, MGA claimed that it had no agreement to indemnify Carter Bryant. Indeed, MGA boasted to the Phase 1 jury time and again that ***Bryant*** agreed to indemnify ***MGA***, purportedly showing MGA's good faith reliance on Bryant's alleged promises about who owned Bratz. Recently obtained evidence shows that MGA's assertions have been false: [REDACTED] Thus, MGA either made misrepresentations to the Court [REDACTED] about who agreed to indemnify and who was to be indemnified when MGA used Bryant to steal Mattel's property. Mattel is entitled to find out which of MGA's conflicting assertions is true.

Thus, Mattel is not "going to the IRS to seek documents already produced," as MGA claims. Mot. at 1. On the contrary, Mattel is going to the IRS because critical documents [REDACTED] have never been produced, and the IRS is likely to have them. Mattel is entitled to take third-party discovery to obtain documents that MGA refuses to produce, as it has been forced to do literally throughout this case (Mr. Wing's production of MGA documents never produced by MGA was only the latest in a series of such episodes).

Because Mattel is clearly entitled to obtain these long-concealed documents, if they exist, MGA's motion to quash the subpoena should be denied, and Mattel's cross-motion to compel MGA to authorize the release of the records should be granted.

## Background

Mattel Seeks Production of Agreements and Correspondence Between Carter Bryant and MGA. Mattel has repeatedly sought the production of any agreement that would require MGA to indemnify Bryant for damages or legal expenses in connection

with this case, as well as related correspondence.[1] The Court ordered these documents produced years ago[2] and again ordered them produced earlier this year.[3] There is no dispute that all documents relating to indemnification agreements between MGA and Bryant have been compelled and must be produced.

The only dispute is whether all such documents have already been produced. MGA has continually represented, as recently as February 23, 2010, that there is no indemnification agreement running from MGA to Bryant, but rather that Bryant is required to indemnify MGA.[4] At trial, MGA stressed to the jury that Bryant was required to indemnify MGA if his representations about ownership of Bratz proved false.[5] In fact, this was a theme that MGA returned to at trial time and again, including in closing arguments.[6] The agreement that MGA has relied on, arguing that it contains

---

[1] See, e.g., Request for Production No. 1 in Mattel Inc.'s First Set of Requests for Production of documents and Tangible Things to MGA Entertainment, Inc., dated March 14, 2005 (seeking "All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and BRYANT, including without limitation all drafts thereof and all actual or proposed amendments, modifications, and revisions thereto"); id. at Request No. 49 ("All DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this action.").

Mattel has not attached source materials to this motion to avoid burdening the Court. Mattel will promptly provide any and all cited materials upon the Court's request.

[2] See, e.g., Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 16, 2007, at 10 (Dkt. No. 487).

[3] Order Regarding Discovery Matters dated January 26, 2010, at 3 ("Court ORDERS that Mattel and the MGA Parties shall, on or before February 2, 2010, produce all nonprivileged documents referring or relating to fee and/or indemnity agreements concerning Carter Bryant . . ., including the agreements themselves, as well as any demands for payment and/or indemnification.") (Dkt. No. 7434).

[4] See Email from Annette Hurst to Michael Zeller, dated February 23, 2010.

[5] Trial Tr. at 257:7-23; 2138:10-2139:25.

[6] Trial Tr. at 4957:6-22 ("Carter Bryant is telling us, representing to us, through the lawyers, that he has the right and is free to execute this agreement to grant the rights granted by him to MGA . . . . 'He shall comply with all laws. He shall

promises by Bryant to indemnify MGA, was introduced and featured prominently at trial, and has been in the public record since 2008.[7]

[redacted][8] [redacted][9]

[redacted] At his deposition, MGA's former Senior Vice President of Finance, Brian Wing, confirmed that [redacted]

indemnify and hold MGA harmless from and assist against and [sic] all claims, losses, costs, and judgments.' We did what every company does.").

[7] Trial Exh. No. 15, Pg. 3-4.

[8] [redacted]

[9] Id. (emphasis added).

 [10] the agreement MGA produced in this case—which MGA has argued contains a promise by Bryant to indemnify MGA—had long since been made public.[11] Despite this unequivocal documentary and testimonial evidence of a wholly different indemnification agreement that has never been produced, MGA still has not produced it and denies its existence.[12]

There are other reasons to doubt that MGA has produced all relevant documents as well. [14]

---

[10]

[11] Trial Exh. No. 15, Pg. 3-4.

[12] See Decl. of Mark Wine at ¶ 5 (Docket No. 7857).

[13]

[14] In its March 12, 2010 Order, the Court observed that MGA only partially produced fee and/or indemnity agreements for the Court's *in camera* review. Order Compelling Production of Fee Agreements and Joint Representation Agreement, dated March 12, 2010, at 1-2 (Dkt. No. 7643) ("It was represented to the Court by

## Argument

### I. MATTEL'S SUBPOENA SEEKS RELEVANT DOCUMENTS THAT MGA HAS REFUSED TO PRODUCE

This Court has long held that indemnification agreements are relevant to this case, and it recently reaffirmed that documents referring or relating to any indemnification agreement with Carter Bryant would be "relevant to the issues of bias and control."[15] MGA does not dispute the relevance of these documents, nor can MGA claim they are privileged. Several Orders have held that such agreements with witnesses are not privileged and must be produced.[16] In fact, the "MGA Parties represented to the Court at the January 10, 2010 hearing that they would produce the Carter Bryant fee and indemnification agreement to Mattel on or before January 11, 2010."[17] In its March 12, 2010 Order, the Court threatened to impose "sanctions of $1,000 per hour" if MGA did not produce particular fee and/or indemnity agreements concerning Carter Bryant.[18]

MGA's defense is that there is no and never has been any agreement in which MGA agreed to indemnify, but that flatly conflicts with other evidence in this case.

---

the MGA Parties that all [fee and/or indemnity agreements concerning Carter Bryant] would be presented to the Court for its *in camera* review by 10:00 a.m. on March 12, 2010. The MGA Parties only partially did so.").

[15] Order Regarding Discovery Matters dated January 26, 2010, at 3 (Dkt. No. 7434).

[16] See, e.g., id.; Order Regarding MGA Entertainment, Inc.'s Request For Stay or Modification of Discovery Orders, dated June 21, 2007 (Dkt. No. 564).

[17] Order Regarding Discovery Matters, dated January 26, 2010, at 3 (Dkt. No. 7434).

[18] Order Compelling Production of Fee Agreements and Joint Representation Agreement, dated March 12, 2010, at 2 (Dkt. No. 7643).

[redacted][19] Brian Wing testified that [redacted][20] There is every reason to think, based on MGA's own documents and witnesses, that an agreement in which MGA agreed to indemnify Bryant exists. And there is every reason to doubt, based on MGA's belated productions of indemnity documents throughout this case [redacted]

Mattel is entitled to inquire further, and with third parties, to get those answers.

## II. MGA'S MOTION TO QUASH SHOULD BE DENIED

With MGA swearing that the missing indemnification documents do not exist, third-party discovery is the only mechanism to test that claim and obtain all relevant discovery. The four categories contained in Mattel's subpoena are narrowly drafted to seek documents that, if they exist, are clearly relevant. The first and second requests

---

[19] [redacted]

[20] [redacted] MGA also cites the retention letters with the Littler and Keker firms, which previously represented Carter Bryant in this case, but they are wholly irrelevant. These documents do not contain any indemnity language or any promise by MGA to indemnify Bryant; they are simply gratuitous, as MGA would have it, promises by MGA to pay Bryant's legal fees. [redacted] Nor would those documents be described as unusually sensitive. In any event, the argument simply undermines MGA's own position. [redacted]

seek documents and communications related to agreements between MGA and Bryant, or legal fees paid on his behalf. The third request seeks communications relating to the tax treatment of legal expenses incurred by MGA in connection with this litigation,

[REDACTED]

These requests are all narrowly tailored to obtain relevant documents. If the indemnity agreement does not exist, as MGA claims, no harm will come to MGA from compliance with the subpoena; and if it does exist, Mattel is entitled to obtain it. In either case, there is simply no reason to quash the subpoena.

In all events, because only the IRS is subject to Mattel's subpoena, MGA does not have standing to bring a motion to quash it. See In re Yassai, 225 B.R. 478, 480-81 (Bankr. C.D. Cal. 1998) (motion to quash can only be brought by the entity "subject to" the subpoena). "Because [MGA] was not the recipient of the subpoena[], it has standing . . . only where its challenge asserts that the information is privileged or protected to itself." Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 695 (D. Nev. 1994); see also Green v. Baca, 2005 WL 283361, at *1 (C.D. Cal. Jan. 31, 2005) ("[A] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right.") (citation omitted); Estate of Ungar v. Palestinian Authority, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005) ("In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness.") (citation omitted). The IRS has not

challenged Mattel's subpoena, and MGA does not claim any privilege in the materials Mattel seeks in its motion.[21] It thus lacks standing to bring its motion.

MGA purports to bring its motion under 26 U.S.C. § 6103, but it has no right to do so. The lone case cited by MGA recognizes that there is "no indication in either the language of section 6103 or its legislative history that Congress intended to enact a general prohibition against public disclosure of tax information." Stockwitz v. U.S., 831 F.2d 893, 896 (9th Cir. 1987). The IRS "authorizing official" responding to the subpoena—not the taxpayer—must evaluate whether § 6103 bars disclosure of return information in the first instance. 26 C.F.R. § 301.9000-2(a). The taxpayer's rights under § 6103 do not accrue unless and until there has been an improper disclosure by the IRS. Stockwitz, 831 F.2d at 897. MGA cannot step into the IRS's shoes and make a § 6103 objection on its behalf. 26 C.F.R. § 301.9000-2 (discussing various factors that an IRS "authorized official" must consider when responding to a subpoena in connection with a non-IRS matter).

MGA's motion to quash should be denied.

[21] Nor could it. [redacted]; indeed, the delivery of documents even to one's own attorney does not have such transformative effect. See generally Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist., 2006 WL 2255538, at *1 (E.D. Cal. Aug. 7, 2006) ("forwarding an e-mail . . . to an attorney does not transform it into the attorney's work product" and "forwarding an e-mail several times until it reaches an attorney does not amount to 'attorney client communication'"). Moreover, even if the qualified privilege that applies to tax returns could somehow apply to the documents at issue here, the documents are discoverable because they are relevant, not otherwise available, and there is a compelling need. A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 190-91 (C.D. Cal. 2006) (applying qualified privilege test to tax documents but granting motion to compel production subject to the Protective Order).

## III. THE COURT SHOULD GRANT MATTEL'S CROSS-MOTION TO COMPEL MGA TO SIGN A RELEASE FOR THE DOCUMENTS

In addition, the Court should compel MGA to authorize the release of the subpoenaed documents. Pursuant to 26 U.S.C. § 6103(c) and its implementing regulation, 26 C.F.R. § 301.6103(c)-1, MGA has the authority to execute a release [REDACTED] See, e.g., Olsen v. Egger, 594 F. Supp. 644, 646 (S.D.N.Y. 1984) ("The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure . . . .") (quoting 26 U.S.C. § 6103(c)).[22]

The Court properly may require MGA to execute a release pursuant to these provisions. Johnson v. Kraft Foods North America, Inc., 236 F. Supp. 2d 535 (D. Kan. 2007) (under appropriate circumstances the Court may grant a motion to compel "requesting Plaintiff to execute a release allowing Defendants to obtain Plaintiff's tax records from third parties"). The Court should do so. MGA has never disclosed what it has done to search for the indemnity documents Mattel has long been seeking, [REDACTED][23] [REDACTED]

---

[22] This release must be (1) a separate written document, (2) signed and dated by the taxpayer, and must include (3) the taxpayer identity information (described in 26 U.S.C. § 6103(b)(6)), (4) the identity of the person to whom the disclosure is to be made, (5) the type of return or return information that is to be disclosed (as those terms are defined in 26 U.S.C. § 6103(b)(1), (2)), and (6) the taxable year or years covered by the return or return information. 26 C.F.R. § 301.6103(c)-1(b).

[23] [REDACTED]

[redacted] Thus, MGA properly may be ordered to execute a release that complies with 26 C.F.R. § 301.6103(c)-1, a proposed form of which is submitted herewith.[24]

## Conclusion

MGA's motion is rife with inconsistent positions. [redacted] It argues that the subpoenaed documents are not relevant even though the Court has repeatedly held to the contrary and ordered MGA to produce them. [redacted] Mattel respectfully requests that the Court deny MGA's motion to quash and that the Court compel MGA to execute a release that complies with 26 C.F.R. § 301.6103(c)-1.

DATED: May 21, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Dylan Proctor
B. Dylan Proctor
Attorneys for Mattel, Inc.

---

[redacted]

[24] By law, the release should include the text of Mattel's four requests, which contain "[s]ufficient facts . . . to enable the Internal Revenue Service to determine the nature and extent of the information or assistance requested and the returns or return information to be disclosed." 26 C.F.R. § 301.6103(c)-1(c)(1)(i)(C).