**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                                                              Date: May 23, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

DOCKET ENTRY
      [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
      Date:_____ Deputy Clerk: _____

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Stephanie Mikhail                          Not Present
Courtroom Clerk                                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                              NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER SUSTAINING IN PART AND OVERRULING IN PART TIONGCO'S OBJECTIONS TO DISCOVERY MASTER RULINGS; OVERRULING MATTEL'S OBJECTIONS TO DISCOVERY MASTER RULINGS

      Before the Court are related objections: (1) Mattel, Inc. ("Mattel")'s Objections to the Discovery Master's Rulings During the Deposition of Joe Tiongco; and (2) Joe Tiongco ("Tiongco")'s Objections to the Discovery Master's Rulings During the Deposition of Joe Tiongco. The Court finds the matters appropriate for decision without oral argument. After considering the moving, opposing, and replying papers, as well as the April 30, 2010 Tiongco Deposition Transcript, the Court OVERRULES Mattel's Objections and SUSTAINS IN PART AND OVERRULES IN PART Tiongco's Objections.

      Mattel deposed MGA employee Joe Tiongco in Santa Ana, California on April 30, 2010. Tiongco has served as MGA's director of network services since approximately February 30, 2010, prior to which he held the title of Vice President of Information Technology at MGA. Tiongco's duties as director of network services include purchasing, maintaining, and directing the use of network

---

equipment. Six MGA employees directly report to Tiongco – Anthony Pimentel, Amir Suman, Gilbert Keyes, John Relosa, Kenneth Robles, and George Cusi.

   Counsel for Mattel questioned Tiongco about the reason, if any, for his demotion from Vice President of Information Technology to director of network services. MGA's counsel instructed Tiongco not to respond on relevance grounds in the following colloquy:

> Q. Do you have an understanding as to why your position was changed?
>
> A. It's not related to Mattel. So I - -
>
>  Mr. Parker: I also instruct the witness not to answer further.
>
>  Ms. Hauler: Is this an instruction based on privilege?
>
>  Mr. Parker: No.
>
>  Ms. Hauler: What's - -
>
>  Mr. Parker: Based on - - on relevancy.
>
>  Ms. Hauler: You're basing it - - you're instructing him not to answer on the basis of relevance?
>
>  Mr. Parker: Yes, I am.
>
>  Ms. Hauler: And - - that's not - - as you know, that's not a proper instruction not to answer. Do you have any - -
>
>  Mr. Parker: I'm not going to - - that's the basis.

*See* Tiongco Deposition Transcript, 138:7-24.

   In the face of MGA's counsel's wrongheaded instruction, *see* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."); *see also United Trading & Investment Co. v. Kiritchenko*, 2007 WL 2300740, at *3 (N.D. Cal. Aug. 2, 2007), Mattel requested that the Discovery Master preside over the remainder of the deposition. The Discovery Master arrived a little over an hour later. After a brief conversation off the record between the witness, counsel, and the Discovery Master, the Discovery Master found that it was "clear that the witness would benefit from the presence of his personal counsel, who I believe is Dan Nixon from the Byrne & Nixon firm in

MINUTES FORM 11 DOC                    Initials of Deputy Clerk sdm
CIVIL - GEN                                Page 2 of 8

Los Angeles." *See* Tiongco Tr. at 204:9-13.  Tiongco's counsel was invited to attend the remainder of the deposition.  The Discovery Master nevertheless overruled MGA's relevance instruction as "not . . . well taken," finding that "it would not be a proper ground to instruct on those grounds."

Tiongco's personal attorney entered the deposition at 12:58 p.m.  After a brief discussion concerning the payment of legal fees charged Tiongco by his personal counsel, counsel for Mattel asked the following question:

> Q. Mr. Tiongco, are you aware of anyone at MGA pirating movies?

*See* Tiongco Tr. at 239:14-15.

Tiongco's counsel instructed him not to answer on the basis of Tiongco's "right to remain silent under the United States Constitution and the California Constitution."  *Id.* at 239:20-22.  Tiongco then testified that he had never been subpoenaed or interviewed by American law enforcement authorities.  *Id.* at 240.

Counsel for Mattel then asked Tiongco whether he knew if he was the subject of a criminal investigation in the United States.  *Id.* at 241.  Tiongco was instructed not to answer the question on the basis of his privilege against self-incrimination.  The Discovery Master overruled the instruction, but did not compel the witness to provide responsive testimony.  Mattel's counsel then asked Tiongco a series of questions, to which Tiongco was instructed not to answer on the basis of the privilege against self-incrimination.  Those questions were:

> Q. Have you received any written notice that you're the target of a criminal investigation in the United States?
>
> Q. Have you received any kind of notice that you're the target of a criminal investigation in the United States?
>
> Q. Do you know if you're a person of interest in the United States?
>
> Q. Have you been told that you are under investigation for criminal conduct in the United States?
>
> Q. Do you believe you will be subject to criminal prosecution in the United States?  If yes, why do you say that?
>
> Q. What is the basis for any belief that you have that you will be the subject of criminal prosecution in the United States?

*Id.*

   Counsel for Mattel then asked Tiongco about the substance of such "illegal downloading activity" at MGA.  Tiongco was instructed not to answer such substantive questions by counsel on the basis of the Fifth Amendment privilege against self-incrimination.  The Discovery Master sustained without prejudice the objections to Mattel's line of substantive questions.  Since Mattel's substantive questions occupied nearly one and a half hours of testimony, the Court declines to cite those questions in their entirety.  The substantive questions can be found between pages 247 and 296 of Tiongco's deposition transcript.  A representative sample of those questions follows:

> Q. Have you - - have you ever witnessed anyone else at MGA illegally download materials?
>
> Q. Has Isaac Larian ever asked you to illegally download materials?
>
> Q. How many people are you aware of at MGA that knew about the - - who knew about the illegal downloading activity?
>
> Q. Were any steps taken to hide the illegal downloading activity?

   In short, the Discovery Master sustained the invocation of the privilege against self-incrimination as to Mattel's substantive questions, and overruled the invocation as to Mattel's foundational questions.  Both Tiongco and Mattel appeal.

## II. Legal Standard

   The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . ."  This right against self-incrimination applies in the context of a civil proceeding.  *See Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316 (1973); *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653 (1972). Nevertheless, the privilege against self-incrimination is unavailable in the civil context unless "the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution or could lead to other evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) (citing *United States v. Bodwell*, 66 F.3d 1000, 10001 (9th Cir. 1995)).

   The privilege against self-incrimination "covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence."  *Id.* (citing *United Liquor Co. v. Gard (In re Spear)*, 705 F.2d 1499, 1501 (9th Cir. 1983)). It is axiomatic that even the mere "possibility" of prosecution can give rise to the proper invocation of the privilege against self-incrimination.  *See id.*; *see also Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 1880381, at *12 n. 15 (N.D. Cal. June 29, 2007).

### III.   Discussion

As previously stated, Tiongco appeals the Discovery Master's rulings to the extent they overrule Tiongco's invocation of the Fifth Amendment in response to certain "foundational questions" posed to him by Mattel's counsel.  And Mattel appeals the Discovery Master's rulings to the extent they sustain Tiongco's invocation of the Fifth Amendment in response to certain "substantive questions" posed to him by Mattel's counsel.

#### A.   Objections to Foundational Questions

The vast majority of the foundational questions to which Tiongco objects do not implicate the privilege against self-incrimination.  The questions at issue concerned Tiongco's knowledge, or lack of knowledge, of any pending criminal investigation by governmental authorities.  He argues that by responding to such questions, he "may have provided evidence of [his] knowledge of the criminal nature of the alleged conduct."  *See* Tiongco Mot. at 7.  But knowledge of a pending criminal investigation is not akin to knowledge of the wrongfulness of the conduct subject to investigation, a point Mattel ably makes in its Opposition.  *See* Opp. at 3 (citing *United States v. James*, 609 F.2d 36 (2d Cir. 1979)).

The contrary argument made by Tiongco's counsel at the deposition was that "the mere fact of being identified as a target could be used as a basis to establish some knowledge with respect to criminal activity."  Tiongco argues that his responsive testimony could be used in a criminal prosecution charging liability under four federal statutes – 17 U.S.C. §§ 506, 1201, 1204, and 18 U.S.C. § 371 – and/or unidentified state laws.  Mot. at 5.  Knowledge of a pending investigation or prosecution does not satisfy the statutes' *mens rea* requirements.

Perhaps counsel fears that Tiongco's commission of prohibited activity, despite awareness of an ongoing investigation into such activity, may be used as circumstantial evidence of knowledge of wrongfulness.  This concern does not appear in Tiongco's briefing and, in any event, is not implicated by the questions posed by Mattel's counsel.  None of the questions concern Tiongco's knowledge of the wrongfulness of the conduct at issue.  And some of the questions have nothing to do with a pending investigation at all.  *See, e.g.*, Mot. at 6 ("Have you ever heard of Napster?"); *id.* ("Do you believe you will be subject to criminal prosecution in the United States?").  Even if knowledge of a pending investigation may satisfy the criminal statutes' *mens rea* requirements – and the Court is aware of no precedent that so holds – Mattel's counsel did not ask about Tiongco's knowledge *prior* to his demotion.  In other words, Mattel's counsel was not interested in whether Tiongco knew of an investigation or prosecution prior to (or while) engaging in the activity which resulted in his demotion.  Tiongco's scant briefing does not leave this Court with any basis to conclude that the questions at issue implicate the Fifth Amendment.

Nevertheless, Tiongco is correct that substantive questions as to the underlying conduct

implicate the privilege against self-incrimination. The Discovery Master purportedly overruled Tiongco's invocation of the privilege with respect to the following questions, none of which appear to be foundational:

> Q. What were the reasons that you were informed you were being demoted?
>
> Q. Why do you believe that the decision [to demote you] was made . . .?
>
> Q. Does MGA's I.T. department have the ability to mass duplicate CDs or DVDs?

The nexus between the third question and any criminal charge against Tiongco is somewhat attenuated. Nonetheless, the question is dissimilar from the other "foundational" questions asked by Mattel; indeed, it goes to the heart of the issue of whether Tiongco was able to illegally pirate movies while at MGA. And there are numerous other avenues for Mattel to discover MGA's technological capabilities without implicating the Fifth Amendment privilege.

Accordingly, Tiongco's objections are OVERRULED as to the questions listed on page 6 of his moving papers, and SUSTAINED as to the questions listed on page 7 of his moving papers.

### B.    Objections to Substantive Questions

The Court considers Tiongco's invocation of the privilege well-founded with respect to the "foundational" questions that concern the basis for Tiongco's termination. It is therefore not surprising that the Court concludes that the Discovery Master did not err when he sustained Tiongco's objections to the substantive questions posed by Mattel's counsel. Mattel objects to the Discovery Master's rulings as to more than 100 questions posed by Mattel's counsel. These questions included questions about MGA's practice of illegally downloading software and movies, Tiongco's role in the illegal download of software and movies, any direction Tiongco received with respect to the illegal downloading of software and movies, and any disciplinary measures taken by MGA after it was purportedly revealed that Tiongco and others at MGA illegally downloaded software and movies.

As the court in *Nursing Home Pension Fund* expressly recognized, the presence of a statute attaching criminal liability to the conduct at issue presents serious privilege concerns. In that case (as here), there was no cited evidence that the deponent lacked knowledge of any investigation or prosecution. *See* 2007 WL 1880381, at *11-12. Nevertheless, the court found that the provision of responsive testimony would be harmful given the clear "***possibility*** of prosecution under [18 U.S.C. § 1512(c)." *Id.* at *12 (emphasis added). In this case, the possibility of prosecution for the acts being inquired into by Mattel's counsel is likewise evident and, for that matter, uncontested by Mattel. And Mattel's counsel has not distinguished any of the "substantive" questions as incapable of eliciting incriminating testimony.

Mattel simply errs on the law.  Mattel specifically overemphasizes the importance of a pending criminal investigation or prosecution.  While such investigation or prosecution would certainly substantiate the potential for incrimination, it is not the *only* way to get there.  *See Englebrick v. Worthington Indus., Inc.*, 670 F. Supp. 2d 1048, 1050 ("A valid assertion of the privilege does not require an imminent criminal prosecution or investigation.").  Indeed, as *Englebrick* noted, a court should not engage in idle speculation about potential action by a prosecutor – absent a grant of immunity, the running of the statute of limitations, the applicability of double jeopardy, and/or other concrete indications that a prosecution is barred, the privilege is properly invoked where responsive testimony can trigger criminal liability.  *Id.* (citing *Belmonte v. Lawson*, 750 F. Supp. 735, 739 (E.D. Va. 1990)).  Indeed, when this Court overruled Defendant Machado's invocation of the Fifth Amendment, it expressly considered relevant the fact that the U.S. Attorney's Office for the Central District of California informed Machado that he was not being investigated by that office.  No such letter has been issued to Mr. Tiongco.

Nor is Tiongco's knowledge of a pending investigation or prosecution particularly relevant.  The Fifth Amendment does not constrain the privilege against self-incrimination to circumstances in which a person knows that the disclosure will be used against him.  Grafting such a requirement onto Fifth Amendment jurisprudence would force individuals to supply the very evidence that spurs a criminal investigation and potential prosecution against them.  It would result in a baseless evisceration of the privilege against self-incrimination with no support in precedent or the plain text of the Fifth Amendment.

Mattel cites *Industrial Indem. Co. v. Niebling*, 844 F. Supp. 1374 (D. Ariz. 1994) for the proposition that criminal proceedings concerning the conduct at issue must actually exist before the privilege can be invoked.  But *Niebling* does not so hold.  In that case, the only argument made in support of the privilege related to the existence of pending criminal proceedings.  *See id.* at 1376.  The court found that absent evidence that the criminal proceedings actually concerned the conduct at issue, the privilege was not properly invoked.  *Id.* at 1377 (finding that "Defendants have not adequately identified and explained the nature of the pending criminal matters alluded to").  But Tiongco does not rest his invocation of the privilege upon any pending criminal proceeding.  He argues that a number of federal and state statutes prohibit the conduct being inquired into by Mattel.  This argument is a *separate* basis for the privilege; Tiongco need not *also* show that criminal proceedings are pending.  *See Englebrick*, *supra*.

Finally, Mattel makes a number of unconvincing arguments with respect to the need for Tiongco's responsive testimony.  At the outset, "need" is not a recognized exception to the privilege against self-incrimination.  The fact that Mattel seems to think that such an exception exists is news to this Court, as well as countless law enforcement officers and district attorneys across the country.

Moreover, even if "need" were an exception to the Fifth Amendment, there is no need for Tiongco's responsive testimony.  Mattel argues that "[i]f Mr. Tiongco and his colleagues were involved

in wholesale criminal copyright infringement with the knowledge of MGA's CEO, this would go directly to the credibility of Mr. Tiongco's sworn statements regarding the preservation and destruction of documents related to this action." This is a *non sequitur*. A software pirate does not a liar make. In any event, it is debatable whether evidence of Tiongco's downloading activities would be relevant to rebut his statements about the integrity of MGA's software collection practices. *See* Fed. R. Evid. 608(b).

Mattel next argues that Tiongco may have been illegally downloading Mattel's copyrighted works and that an admission to this effect is "relevant to Mattel's RICO claims and trade secret claims." That may be so. But the fact remains that the questions about Tiongco's conduct with respect to the illegal downloading of copyrighted materials – including Mattel's intellectual property – are also the questions that most severely implicate the privilege against self-incrimination. Moreover, Mattel has ready access to, and has availed itself of, alternative methods of discovering this very information, including the recent deposition of former MGA executive Brian Wing.

Finally, Mattel argues that even evidence of the illegal downloading of **non**-Mattel copyrighted material may be admissible as relevant to "establishing MGA's and Mr. Larian's intent" under Federal Rule of Evidence 404(b). Without prematurely engaging the merits of whether such evidence would be probative, the Court simply notes that Mattel does not allege that Larian and MGA marshaled file sharing software to effectuate the grand scheme of trade secret misappropriation and copyright infringement alleged in the FAAC. Even the case cited by Mattel – *United States v. Cherer*, 513 F.3d 1150, 1157-58 (9th Cir. 2008) – concerned the admissibility of evidence of other bad acts probative as to a "***modus operandi***" common to both schemes. *See* Mattel's Mot. at 9 (emphasis added).

Mattel's objections are therefore OVERRULED.

IV. Disposition

For the foregoing reasons, the Court OVERRULES Mattel's Objections and OVERRULES IN PART AND SUSTAINS IN PART Tiongco's Objections.

The Clerk shall serve this minute order on all parties to the action.