**SCHEPER KIM & HARRIS LLP**
DAVID C. SCHEPER (State Bar No. 120174)
dscheper@scheperkim.com
ALEXANDER H. COTE (State Bar No. 211558)
acote@scheperkim.com
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**LAW OFFICES OF MARK E. OVERLAND**
MARK E. OVERLAND (State Bar No. 38375)
mark@overlaw.net
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401
Telephone: (310) 459-2830
Facsimile:  (310) 459-4621

**Attorneys for**
**Carlos Gustavo Machado Gomez**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT,<br><br>   Plaintiff,<br><br>  v.<br><br>MATTEL, INC,<br><br>   Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with CV 04-9059 and CV 05-2727<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST COUNTERCLAIM UNDER RULE 12(b)(6)**<br><br>Date: May 28, 2010<br>Time: 8:00 AM<br>Crtrm.: Honorable David O. Carter<br><br>**Phase** 2<br>Discovery Cut Off: TBD<br>Pre-Trial Conf.:  TBD<br>Trial Date:    TBD |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 2

II. MATTEL HAS FAILED TO ALLEGE CLOSED-ENDED CONTINUITY ....... 3

    A. The Alleged Wire Frauds Lying Outside the Three Month Period Are Not Sufficiently Pled .......................................................... 3

    B. Mattel Fails To Allege Criminal Copyright Infringement ............ 6

    C. Mattel Fails To Allege Continuous Acts of Spoliation ................. 7

    D. Even Conceding Each Supposed Predicate Act, Mattel's RICO Counterclaim Still Fails as a Matter of Law ................................. 9

III. MATTEL HAS FAILED TO ALLEGE OPEN-ENDED CONTINUITY ............ 9

IV. CONCLUSION ...................................................................................... 11

## TABLE OF AUTHORITIES

Page

**Federal Cases**

*Arthur Andersen LLP v. United States,*
   544 U.S. 696 (2005) .................................................................................. 8

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ................................................................................ 6

*Bro-Tech Corp. v. Thermax, Inc.,*
   651 F.Supp.2d 378 (E.D. Pa. 2009) ..................................................... 5, 10

*Carpenter v. United States,*
   484 U.S. 19 (1987) .................................................................................... 4

*H.J. Inc. v. Northwestern Bell Telephone Co.,*
   492 U.S. 229 (1989) .................................................................................. 2

*Kann v. United States,*
   323 U.S. 88 (1944) .................................................................................... 4

*Kelly v. L.L. Cool J.,*
   145 F.R.D. 32 (S.D.N.Y. 1992) ................................................................ 7

*Macias v. Tomanek,*
   2008 WL 94806, *2 (N.D. Cal. 2008) ...................................................... 4

*Parr v. United States,*
   363 U.S. 370 (1960) .................................................................................. 4

*Turner v. Cook,*
   362 F.3d 1219 (9th Cir. 2004) ................................................................... 9

*Schneider v. California Dept. of Corrections,*
   151 F.3d 1194, n. 1 (9th Cir. 1998) .......................................................... 7

*TEG Staffing, Inc. v. Platt,*
   2008 WL 4571257, *3 (N.D. Cal. 2008) .................................................. 4

*United States v. Aguilar,*
   515 U.S. 593 (1995) .................................................................................. 8

*United States v. Maze,*
   414 U.S. 395 (1974) .................................................................................. 4

*United States v. Reich,*
   479 F.3d 179 (2d Cir. 2007) ...................................................................... 8

**Federal Statutes**

18 U.S.C. § 1503 .................................................................................................................. 8
18 U.S.C. § 1512(b)(2) ....................................................................................................... 8
18 U.S.C. § 1512(c)(1) ....................................................................................................... 8
18 U.S.C. § 1512(c)(2) ....................................................................................................... 8
18 U.S.C. § 1832 ................................................................................................................ 3
18 U.S.C. § 1961(1)(B) ...................................................................................................... 3
18 U.S.C. § 1341 ................................................................................................................ 3
18 U.S.C. § 1343 ................................................................................................................ 3

## I. INTRODUCTION

"Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). But, the Fourth Amended Answer and Counterclaims ("FAAC") accuses Mr. Machado of a trade secret misappropriation scheme lasting just three months, which is insufficient to satisfy RICO's closed-ended continuity requirement. Mattel, Inc.'s Opposition does nothing to rectify this failure. First, although Mattel identifies two wire communications falling outside the three month period, these communications do not relate to the "scheme to defraud" Mattel of its trade secrets. Rather, that purported scheme was complete when Mr. Machado resigned from Mattel. Later *use* of the misappropriated property may be an element of trade secrets theft, but such *use* is not a predicate act under RICO. Wire fraud, which gives rise to Mattel's RICO counterclaim is complete upon the *taking*. Second, although Mattel makes a passing reference to criminal copyright infringement, it utterly fails to allege that a single document copied by Mr. Machado was protected by copyright. Third, Mattel's "new" theory of spoliation of evidence utterly fails to satisfy the elements of that criminal statute. As a result, Mattel is left with predicate acts spanning just three months, and therefore fails to allege closed-ended continuity.

Mattel's effort to argue open-ended continuity fails for many of the same reasons. Mattel alleges that Mr. Machado's supposed predicate acts had the risk of extending into the future, because he might have used Mattel's trade secrets after misappropriating them. However, the "scheme to defraud" ends when the alleged secret is taken, and later *use* is not criminal activity that falls within RICO's ambit. Nor was there any risk of ongoing *taking* of trade secrets by Mr. Machado, as he could hardly go back to Mattel's employ to steal some more after he resigned. Finally, Mr. Machado has no further access to either of the two computers from which he allegedly spoliated evidence.

1 Because Mattel has failed to allege either open-ended or closed-ended continuity, it has failed to plead a pattern of racketeering. Accordingly, Mr. Machado respectfully requests that the RICO counterclaim be dismissed.

## II. MATTEL HAS FAILED TO ALLEGE CLOSED-ENDED CONTINUITY

### A. The Alleged Wire Frauds Lying Outside the Three Month Period Are Not Sufficiently Pled

As noted in the Motion, Mattel alleges that Mr. Machado first contemplated leaving Mattel Mexico for MGA Mexico on February 9, 2004, that he copied the files in the weeks before he resigned on April 19, 2004, and began working for MGA "shortly after." (FAAC ¶ 52.) Recognizing that three months of wire fraud is not sufficient to plead a closed-ended continuity under RICO, Mattel first attempts to extend this time period with two emails that post-date May 2004.[1] (*See* Opp. at 4:20-6:25, FAAC Ex W at 706-709.) Mattel alleges that these emails are "part of the fraudulent scheme pleaded by Mattel [that] involves not just the *taking* of information, but its *use* and *exploitation* for MGA's benefit." (Opp. at 5:9-11.) Notably, Mattel concedes that these emails have nothing whatsoever to do with the *taking* of Mattel's property. This admission is fatal.

The RICO prerequisite "racketeering activity" defined in 18 U.S.C. § 1961(1)(B) includes mail and wire fraud under 18 U.S.C. §§ 1341, 1343, but does not include misappropriation of trade secrets (*see, e.g.*, 18 U.S.C. § 1832). Although Mattel takes issue with this point (*see* Opp. at 5:18-20), it cannot seriously dispute

---

[1] Mattel suggests that there may be additional "communications in furtherance of the use of Mattel's information [which] continued to take place at least through October 27, 2005." (Opp. at 5:14-16.) Of course, these later "communications" are neither alleged in the FAAC nor included in its exhibits, as Mattel concedes is required by Rule 9(b) and this Court's prior orders. (Opp. at 10 n. 10.) More importantly, these unalleged communications suffer from the same fatal flaw as the post-May emails discussed *infra*.

3
REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST COUNTERCLAIM UNDER RULE 12(b)(6)

the plain text of the statute. Instead, Mattel cites cases holding that trade secrets can be "property" for purposes of the mail and wire fraud statutes, a point which Mr. Machado does not dispute. *See, e.g., Carpenter v. United States*, 484 U.S. 19, 25 (1987).

Although a scheme to misappropriate a trade secret may give rise to mail or wire fraud, a scheme to *use* and *exploit* a trade secret does not, because wire fraud ends at the time of the *taking*. *See, e.g., Kann v. United States*, 323 U.S. 88, 94 (1944) (finding that after-the-fact mailings were not material to execution of the fraud because the "scheme ... had reached fruition. The persons intended to receive the money had received it irrevocably."); *Parr v. United States*, 363 U.S. 370, 393 (1960) ("Here, as in *Kann*, '[t]he scheme in each case had reached fruition' when [those charged] received the goods and services complained of."); *United States v. Maze*, 414 U.S. 395, 401 (1974) (noting that "Respondent's scheme had reached fruition when he checked out of the motel"). As these "well-settled Supreme Court precedent[s establish], if the mailings occur after the consummation of the fraudulent scheme's objective, such mailings will not support a mail [or wire] fraud charge." *Macias v. Tomanek*, 2008 WL 94806, *2 (N.D. Cal. 2008)(citing *Kann*, 323 U.S. at 94); *see also TEG Staffing, Inc. v. Platt*, 2008 WL 4571257, *3 (N.D. Cal. 2008).[2]

Because the post-May emails relate only to the *use* of Mattel's trade secrets and not the *taking*, they do not relate to any actionable fraudulent scheme under RICO. Since the "scheme to defraud" ended at the time of the taking, the emails

---

[2] "There are two recognized exceptions to the general rule restricting liability for post-consummation instances of mail fraud," including communications that "lull" the victim into complacency and communications that are essential to the perpetuation of a series of repeated schemes. *Macias v. Tomanek*, 2008 WL 94806, *2 (N.D. Cal. 2008). Neither exception is alleged here.

1  lying outside the three month period are not sufficiently related to that "scheme to
2  defraud."
3     A recent decision on almost identical material facts is instructive. In *Bro-Tech*
4  *Corp. v. Thermax, Inc.*, 651 F.Supp.2d 378 (E.D. Pa. 2009), the complaint described
5  a scheme where four of plaintiff's "employees who knew or could access
6  [plaintiff's] proprietary chemical technology and sales information would
7  accumulate it, quit [plaintiff], and go to work for [defendant], bringing [plaintiff]'s
8  proprietary information with them for their new employer's use and benefit." *Id.* at
9  385. Two of the resigning employees used "thumb drives" to take the confidential
10 information with them. *Id.* at 393-94. Plaintiff brought a RICO counterclaim,
11 alleging a closed-ended continuity that included "an episode of alleged use of the
12 misappropriated information." *Id.* at 404.
13    Exactly like Mattel does here, plaintiff in *Bro-Tech* attempted to craft a
14 closed-ended continuity by identifying email communications relating only to "use"
15 of the misappropriated trade secrets, months and years after the secrets were taken
16 by the departing employees. Yet the Court rejected this argument, finding that "the
17 alleged scheme to misappropriate [Plaintiff]'s information through fraud *concluded*
18 when the targeted information was misappropriated and all relevant Defendants left
19 [Plaintiff's] employ." *Id.* at 404 (emphasis added). Only communications related to
20 the *taking* of the trade secrets, could be considered when determining whether a
21 closed-ended continuity had been established. *Id.* at 404-405. A RICO plaintiff
22 cannot allege a pattern of racketeering by "conflate[ing] the *use* of the proceeds of a
23 scheme to defraud and the *fraud itself*." *Id.* at 404 (emphasis added).
24    Mattel makes the same error. The scheme to defraud Mattel of its property
25 ended once that goal was accomplished, *i.e.*, when Mr. Machado allegedly took the
26 Mattel documents and resigned from Mattel. Because "[t]he alleged subsequent
27 business use of the misappropriated information does not function to extend the
28 fraudulent scheme's duration, because such use is not a predicate act of the

scheme," *id.* at 404, the three month scheme alleged in the FAAC cannot be expanded by identifying wire communications relating to later *use* of the trade secrets.

### B. Mattel Fails To Allege Criminal Copyright Infringement

Mattel next attempts to enlarge the three month fraudulent scheme with criminal copyright infringement allegations. (Opp. at 7:1-22.) However, with respect to this predicate act, the FAAC offers nothing more than a "naked assertion devoid of further factual enhancement" that must be disregarded. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(quotations omitted). As a result, the criminal copyright infringement allegations cannot rescue Mattel's closed-ended continuity.

Although the Opposition argues that "Mattel alleges that its copyright-protected information was being infringed on a daily basis for a year and a half at MGA offices in Mexico," this allegation *never appears anywhere in the FAAC*.[3] (Opp. at 7:16-17) To the contrary, the FAAC *never* alleges that any document supposedly taken by Mr. Machado was protected by United States copyright law or indeed the copyright law of any nation. (*See generally* FAAC ¶¶ 36-56, 124(f) (alleging only that the documents contained "trade secret and confidential information").) The FAAC's silence on this point is amplified by its later allegations, where Mattel identifies twenty-eight copyright registrations allegedly infringed by MGA, Bryant and others. (FAAC ¶ 144.) But there is no allegation that

---

[3] Mattel cites paragraphs 55 and 56 of the FAAC to support this argument. The cited paragraphs never mention the word "copyright" and never cite to the copyright statutes. Paragraph 55 alleges that Mexican police searched MGA Mexico's offices, where they allegedly found "a large number of documents containing Mattel *trade secrets*," not documents that were subject to *copyright*. (FAAC ¶ 55.) Paragraph 56 says nothing about the character or nature of the misappropriated documents at all, and only complains that Mr. Machado was later promoted at MGA and that MGA is paying his attorneys fees. These paragraphs do not allege criminal copyright infringement. (FAAC ¶ 56.)

Mr. Machado infringed on any of these copyrights, and there is no allegation that any of these registrations apply to documents purportedly taken by Mr. Machado.

In addition, Mattel omits Mr. Machado from its civil copyright claim against Mr. Machado. (FAAC ¶¶ 143-148.) Where there is no civil copyright infringement, there can be no criminal liability. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. 1992) ("conduct that does not support a civil action for infringement cannot constitute criminal conduct under 17 U.S.C. § 506(a)"). Mattel's failure to allege *civil* copyright infringement against Mr. Machado, coupled with its utter failure to allege that any of the documents he allegedly took are protected by United States copyright, precludes any allegation of *criminal* copyright infringement. Accordingly, this purported predicate act cannot enlarge the three month fraudulent scheme alleged in the FAAC.

### C. Mattel Fails To Allege Continuous Acts of Spoliation

The only instance of spoliation alleged in the FAAC occurred on April 19, 2004, when Mr. Machado allegedly took steps to "erase information, including information that would reveal the addresses to which he had sent [and] received email messages" using a program called "System & Internet Washer Pro." (FAAC ¶¶ 54, 95, 124(c).) This purported predicate act does nothing to bolster closed-ended continuity because it occurred during the same three month period as the other alleged predicate acts.

Recognizing this, Mattel attempts to inject new instances of spoliation that are *not* alleged in the complaint: that Mr. Machado gave his personal laptop to his father, who later sold it for spare parts when stopped working. Presenting new allegations in opposition to a motion to dismiss is clearly improper. *See, e.g., Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998)("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") However, even if the Court were

1 | willing to consider allegations beyond the four corners of the FAAC on this motion
2 | to dismiss, these acts do not amount to criminal spoliation of evidence.

3 |     18 U.S.C. § 1512(c)(1) provides that "[w]hoever corruptly ... alters, destroys,
4 | mutilates, or conceals a record, document, or other object, or attempts to do so, with
5 | the intent to impair the object's integrity or availability for use in an official
6 | proceeding ... shall be fined under this title or imprisoned not more than 20 years, or
7 | both." In *United States v. Aguilar*, 515 U.S. 593 (1995), the Supreme Court held the
8 | government must prove beyond a reasonable doubt that the defendant *knew* that his
9 | conduct was likely to affect the official proceeding to sustain a conviction of
10 | obstruction of justice in violation of 18 U.S.C. § 1503. *Id.* (no evidence that
11 | defendant knew false statements would be provided to grand jury even though
12 | defendant knew of existence of grand jury investigation). In *Arthur Andersen LLP v.*
13 | *United States*, 544 U.S. 696 (2005), the Court held that 18 U.S.C. § 1512(b)(2)
14 | similarly imposed a *mens rea* requirement. The "nexus requirement" established in
15 | *Aguilar* also applies to 18 U.S.C. § 1512(c)(2). *United States v. Reich*, 479 F.3d 179,
16 | 185 (2d Cir. 2007).

17 |     Mattel cannot seriously allege that Mr. Machado *knew* that giving his old
18 | laptop to his father would affect this "official proceeding." In 2005, Mr. Machado
19 | purchased a new home computer. This was a year after he resigned from Mattel,
20 | months before the purported search in Mexico and at a time when he had no reason
21 | to expect that Mattel was investigating him or might name him as a party to a civil
22 | lawsuit in the United States.[4] Having no further use for the old machine, he gave it

---

[4] Notably, Mr. Machado lived in Mexico at this time, and it is doubtful Mr. Machado ever suspected that he could be dragged into a lawsuit in another country for the alleged theft of documents by a Mexican citizen, in Mexico, from a Mexican company. This argument is fully addressed in MGA's accompanying motions, which Mr. Machado joined.

to his father. In 2006, well before Mattel added him as a counter-defendant, Mr. Machado learned that his father had dropped the computer and it stopped working. His father decided to sell it for spare parts, rather than repair it. There is no evidence that Mr. Machado's father informed Mr. Machado of this decision, or asked his consent, before selling it. In short, the timing of events precludes Mattel from alleging that Mr. Machado acted with the requisite intent to affect this proceeding.

### D. Even Conceding Each Supposed Predicate Act, Mattel's RICO Counterclaim Still Fails as a Matter of Law

Notably, the RICO counterclaim fails *even if* Mattel had properly alleged a few predicate acts lying outside the three month period. The law in the Ninth Circuit is clear: where "almost all of the alleged fraudulent communications occurred during [a] two month period [and additional] categories of communication occurred only sporadically" at some other time, plaintiffs "have failed to allege a series of related predicates extending over a substantial period of time" as required by RICO. *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004).

Mattel attempts to distinguish *Turner* by arguing again that the supposed *use* of Mattel trade secrets continued after Mr. Machado resigned. (Opp at 6-7 n. 6.) This argument fails for the reasons described above: the wire fraud "scheme to defraud" ended upon the alleged *taking* of Mattel's information. Its later *use* is not actionable as a predicate RICO act, nor does it extend the fraudulent scheme for months and years later. At best, this case is almost exactly like *Turner*: a flurry of supposed mail and wire fraud within a three month period, and then only sporadic alleged predicate acts months later. That fails to establish closed-ended continuity.

### III. MATTEL HAS FAILED TO ALLEGE OPEN-ENDED CONTINUITY

Open-ended continuity requires predicate misconduct that "by its nature projects into the future with a threat of repetition." *Turner*, 362 F.3d at 1229. Mattel contends that the FAAC alleged an open-ended continuity, arguing again that the risk of trade secret *use* continued after Mr. Machado resigned.

9

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST COUNTERCLAIM UNDER RULE 12(b)(6)

Mattel's argument was rejected in *Bro-Tech*. There, the plaintiff argued that it had established continuity that was "open-ended because, now that [defendant] has seen the [plaintiff's] information, it can never 'unlearn' it and could potentially use it for years to come." *Bro-Tech*, 651 F. Supp. 2d at 404. However, the "RICO Defendants' alleged ongoing business use of the information, relied on by Plaintiffs to demonstrate open-ended continuity, is simply not the type of long-term criminal activity that RICO prohibits." *Id.* at 405. Thus, while "[c]auses of action for misappropriation of trade secrets or unfair competition, among others, may allow [Mattel] a remedy [for use,] such use, occurring after the conclusion of the fraudulent scheme and employing its proceeds, does not itself amount to or threaten future criminal activity." *Id.* at 405. As *Bro-Tech* concludes, "[t]he law on this point is clear." *Id.* (citing cases). Simply put, *use* of trade secrets is not a criminal act that can give rise to open-ended continuity under RICO.

Nor is there any risk of Mr. Machado *taking* additional trade secrets in the future. Once Mr. Machado

> left [Mattel's] employ and put his trade secrets to work [at MGA], the harm to [Mattel] was done and the scheme ended. There could be no ongoing theft of trade secrets by defendants as they could hardly go back to [Mattel's] employ to steal more. Rather than a federal court action with potential treble damages, plaintiff's remedy is to seek damages from defendants for theft of trade secrets.

*Bro-Tech*, 651 F. Supp. 2d at 405 n. 205 (alterations in original omitted)(*citing Clement Communications, Inc. v. American Future Sys., Inc.,* No. 89-6280, 1990 WL 106762, *6 (E.D.Pa. July 19, 1990)(alterations omitted).) Mattel cannot allege that there is any risk of Mr. Machado acquiring additional Mattel trade secrets after he resigned from Mattel, because after his resignation he no longer had any access to additional Mattel trade secrets.

The predicate act of evidence spoliation also poses no risk of continuing into the future. The only spoliation allegation in the FAAC concerns Mr. Machado's work computer at Mattel. Obviously, Mr. Machado has had no access to that

computer in the six years since he resigned. Mattel also argues that Mr. Machado spoliated evidence when he gave his old computer to his father and his father later sold its parts. But, that computer is gone, and Mr. Machado can hardly give it to his father again.

In short, Mattel must plead a risk of ongoing RICO predicate criminal activity to establish open ended continuity. Instead, Mattel has alleged conduct that is not a RICO predicate crime, *i.e.*, *use* of trade secrets, and conduct that has no risk of continuing in the future, *i.e.*, *taking* of trade secrets and spoliation of evidence. These are insufficient to allege open-ended continuity, and therefore the RICO counterclaim fails.

## IV. CONCLUSION

The fundamental problem with Mattel's RICO counterclaim remains one of timing. To satisfy RICO's requirement of a "pattern of racketeering," Mattel must allege a series of related statutorily enumerated predicate acts that either extend over a substantial period of time or threaten future criminal conduct. Mattel has done neither here. Accordingly, Mr. Machado respectfully requests that the RICO counterclaim be dismissed.

DATED: May 24, 2010           Respectfully submitted,

                              SCHEPER KIM & HARRIS LLP
                              DAVID C. SCHEPER
                              ALEXANDER H. COTE

                              By:  /s/ *Alexander H. Cote*
                                   Alexander H. Cote
                                   Attorneys for Carlos Gustavo Machado Gomez