MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826 Investments LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**REDACTED VERSION OF REPLY IN SUPPORT OF MOTION TO DISMISS REGARDING EMPLOYEE-BASED STATE LAW TORT CLAIMS (Counterclaims 6-12)**<br><br>Date: May 28, 2010<br>Time: 8:00 a.m.<br>Dep't: 9D |

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ............................................................................................. 1

**ARGUMENT** ..................................................................................................... 2

**I.   MATTELS' SIXTH THROUGH TWELFTH CLAIMS ARE PREEMPTED** ............................................................................................. 2
  A. The Claims Are Based Upon The Same Nucleus of Facts As Mattel's Trade Secret Misappropriation Claim ..................... 3
  B. The "Contractual Remedies" Exception Does Not Apply ................... 6
  C. Mattel's Confidential Information Argument Is Precluded By Mattel's Pleading and Is Specious ........................................................ 9

**II.  MATTEL'S SIXTH AND TENTH COUNTERCLAIMS SHOULD SEPARATELY BE DISMISSED AGAINST MGA AND LARIAN AS THOSE CLAIMS RELATED TO MEXICO** ...................................... 12

**III. MATTEL'S CONVERSION CLAIM MUST BE DISMISSED** ............. 12

**CONCLUSION** ................................................................................................ 13

# TABLE OF AUTHORITIES

Page

## CASES

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F. Supp 2d 941 (N.D. Cal. 2003) .................................................... 8, 11

*Airdefense Inc. v. Airtight Networks*,
  2006 WL 2092053 (N.D. Cal. 2006) ............................................................ 6

*Amer. Credit Indem. Co. v. Sacks*,
  213 Cal. App. 3d 622 (1989) ........................................................................ 8

*Axis Imex Inc. v. Sunset Bay Rattan Inc.*,
  2009 WL 55178 (N.D. Cal. Jan. 7, 2009) .................................................... 9

*Bancroft-Whitney Co. v. Glen*,
  64 Cal. 2d 327 (Cal. 1966) ........................................................................... 5

*BMW of N. Am. v. Gore*,
  517 U.S. 559 (1996) ................................................................................... 10

*Boon Rawd Trading Int'l. Co. v. Paleewong Trading Co., Inc.*,
  2010 WL 668063 (N.D. Cal. Feb. 19, 2010) .............................................. 13

*Digital Envoy v. Google, Inc.*,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ................................................. 8, 12

*Easton Sports, Inc. v. Warrior LaCrosse, Inc.*,
  2005 WL 2234559 (E.D. Mich. Sept 14, 2005) ........................................... 9

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*,
  403 F. Supp. 2d 968 (N.D. Cal. 2005) ......................................................... 6

*Ernest Paper Prods., Inc. v. Mobil Chem. Co.*,
  1997 WL 33483520 (C.D. Cal. Dec. 2, 1997) ............................................. 8

*Exxess Electronixx v. Heger Realty Corp.*,
  64 Cal. App. 4th 698 (1998) ........................................................................ 7

*FMC Corp. v. Capital Cities/ABC, Inc.*,
  915 F.2d 300 (7th Cir. 1990) ..................................................................... 11

*Gabriel Techns. Corp. v. Qualcomm, Inc.*,
  2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) ............................................... 9

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations*,
  171 Cal. App. 4th 939 (2009) ................................................... 5, 8, 9, 11, 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................................................... 7

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) .................................................................................. 11

*Mamou v. Trendwest Resorts, Inc.*,
   165 Cal. App. 4th 686 (Cal. App. 2008) ...................................................................... 5

*Samsung Elecs. Am, Inc. v. Bilbruck*,
   2006 WL 3012875 (Cal. Sup. Ct. Oct. 16, 2006) ......................................................... 12

*Silvaco Data Sys. v. Intel Corp.*,
   2010 WL 1713241 (Cal. App. Apr. 29, 2010) ..........................................................8, 11

**STATUTES**

Cal. Bus. & Prof. Code §16600 ..................................................................................... 11

Cal. Civ. Code § 3426.7(b)(1) ......................................................................................... 7

Cal. Civ. Code §§ 3294 .................................................................................................. 7

Cal. Civ. Code §§ 3294(a) .............................................................................................. 7

Cal. Civ. Code §§ 3300 .................................................................................................. 7

Cal. Civ. Code §§ 3301 .................................................................................................. 7

Cal. Civ. Code §§ 3333 .................................................................................................. 7

Cal. Civ. Code §3426.3(c) ............................................................................................. 10

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................ 12

## INTRODUCTION

Mattel's sixth through twelfth claims in its Fourth Amended Answer and Counterclaims are preempted by the California Uniform Trade Secrets Act because they are based upon the "same nucleus of fact" as Mattel's trade secret misappropriation claim. Mattel's opposition agrees that the "same nucleus of fact" test is correct, but then tries its best, through smoke and mirrors, to argue that its claims are not based upon the same nucleus of facts. Ultimately, Mattel's arguments fail. A close examination of the facts demonstrates that the factual allegations in the complaint, which admittedly are contorted into multiple claims for relief, all relate to Mattel's alleged "Trade Secret Materials." Additionally, Mattel's claim that some of its claims are "contract claims" which are not preempted is disputed by the plain language of the statute and a long history of case law. Finally, Mattel's argument that its claims are either based upon separate "confidential" or "proprietary" information or should be allowed to proceed in case its "Trade Secret Materials" do not actually amount to trade secrets is illogical and not supported by either the legislative intent or the "same nucleus of facts" test that Mattel concedes applies here. In sum, while Mattel pleads with the Court that preemption would leave it without redress actionable conduct, these pleas should fall on deaf ears. Mattel has had almost limitless discovery for six years, four opportunities to plead these claims and it has no alternative factual basis on which to base these claims. Accordingly, Mattel's superfluous state law claims should be dismissed on preemption grounds, in accordance with California legislative intent and California case law.

As to the conversion claim, Mattel has failed to provide any allegation that can support that claim. Mattel concedes that it has tied its claim to the purported theft of trade secrets, an assertion that is both preempted by the CUTSA and barred by California authority concerning intangible property. Likewise, Mattel's conversion claim concerning Bryant's activities either should have been addressed

in Phase 1 or concerns the purported taking of an intangible name. The conversion claim must therefore be dismissed.

**ARGUMENT**

**I. MATTELS' SIXTH THROUGH TWELFTH CLAIMS ARE PREEMPTED.**

In the Motion, MGA established that the Sixth through Twelfth Counterclaims are subject to dismissal because they are all based on the same nucleus of operative facts as the Third Counterclaim for trade secret misappropriation, and therefore are preempted. Motion to Dismiss State Law Tort Claims ("Motion") at 21-24. In its Opposition Mattel concedes, as it must, that the California Uniform Trade Secrets Act ("CUTSA") preempts other causes of action insofar as they are based upon the same nucleus of facts underlying its trade secret misappropriation claim. Opposition to Motion to Dismiss State Law Tort Claims ("Opp.") at 2-3. Having made this concession, Mattel is forced to argue that its state law tort claims are not based "solely" on the trade secret thefts after all, that preemption does not apply because there were contracts involved, and that it can evade the limitations of CUTSA by suing on confidential information that is not a trade secret.[1] Opp. at 2-11.

Each of these arguments should be soundly rejected. The Sixth through Twelfth Counterclaims are all premised on trade secret misappropriation allegations, and to the extent there are any stray allegations of moonlighting employees in two of the claims, those allegations do not defeat preemption because

---

[1] Mattel argues, in a footnote, that granting MGA's preemption motion could "lead[] to inconsistent results because the Court did not grant MGA's preemption argument in the first phase. Opp. at 2 n.2 As this Court is well aware, Mattel did not raise any trade secret claims relating to Bratz until the 11th hour before the Phase 1 trial and there were no trade secret claims actually tried in Phase 1. Dkt. # 7850 at 2-6. Moreover, preemption issues are one reason why it would be inequitable for Mattel to be allowed to plead trade secret claims relating to Bratz now. *Id.* at 11-12. Further, the Phase 1 preemption arguments related to Bratz, which is not related to the claims at issue in this motion. Accordingly, Mattel's inconsistency concern is disingenuous, at best.

- 2 -

REPLY IN SUPPORT OF MOTION TO DISMISS STATE LAW TORT CLAIMS
CV-04-9049 DOC (RNBx)

Mattel cannot lump multiple claims together in order to avoid defenses.  Part A, *infra*.

The argument that the counterclaims are not covered because the departing employees had contracts and Section 3426.7 does not preempt "contractual remedies" is silly.  Mattel has not sued the MGA Parties for breach of contract — nor could it since MGA had no contracts with Mattel — but for tort–based claims of interfering with contracts and aiding and abetting the breach of certain duties.  Numerous courts have held that the "contractual remedies" limitation does not apply with respect to *tort* claims, even where those tort claims involve some contractual obligation.  This argument would eviscerate preemption were it accepted by the Court.  Part B, *infra*.

Finally, Mattel's third argument that it can maintain tort claims based on the alleged misappropriation of confidential information and not have to prove the requirements elements of the trade secret statute really turns the law on its head.  So, Mattel proposes, if it fails in its burden of proof to show *trade secret* misappropriation, then the Court should charge the jury on tort theories that have the potential for exemplary damages limited only by the Constitutional guarantee of due process—far more than authorized by the California Legislature for trade secret misappropriation.  So, Mattel proposes, it can fail in its proof and get a potentially *greater* remedy as a result.  Merely to state this argument is to refute it.  Part C, *infra*.

**A.    The Claims Are Based Upon The Same Nucleus of Facts As Mattel's Trade Secret Misappropriation Claim.**

Mattel's Sixth through Twelfth causes of action are based upon factual allegations relating to its former employees in the United States and Mexico.  And, those factual allegations in the preceding sections of the FAAC all relate to trade secret misappropriation.

1   With regard to Mexico, for example, all of Mattel's factual allegations
relating to acts that occurred in Mexico fall under the heading "MGA Steals Trade
Secrets in Mexico." (Fourth Amended Answer and Counterclaims ("FAAC") at 36,
¶¶ 36-56. In summarizing this section, Mattel states, "MGA stole Mattel's plans,
strategy and business information for the Mexico market and trade secrets related to
Mattel's worldwide business strategies." FAAC at ¶ 36. Moreover, when
explaining what it is that Mattel alleges Machado, Trueba and Vargas did wrong,
Mattel states that "Machado, Trueba and Vargas Steal Confidential Trade Secret
Marketing and Sales Documents for MGA's Benefit." FAAC at 39, ¶¶ 39-56. The
detailed allegations within this section set forth that these three "[stole] as much
Mattel confidential and proprietary information as they could access and [brought]
it with them to MGA." FAAC at ¶ 45, 39-56.

Mattel's factual allegations regarding alleged misconduct in the United States
are the same. They fall under the title "MGA Hires and Seeks to Hire Key Mattel
Personnel to Obtain Mattel's Trade Secret And Highly Confidential Information."
FAAC at 46, ¶¶ 64-85. In its specific allegations in this section, Mattel claims that
each of the former Mattel employees wrongfully retained Mattel trade secrets.
FAAC at ¶¶ 67, 74, 80, 84.

Nevertheless, Mattel's opposition claims that its counterclaims are not
predicated solely on the above factual allegations. Opp. at 3-4. In making that
argument, Mattel cites to no independent factual allegations and instead points
solely to the charging language of the claims themselves. Opp. at 3-4, & nn.4-8.
Mattel goes on to argue at length that California law provides a remedy for
breaches of the duty of loyalty. Opp. at 4-5. This all misses the point. At the
present time no one is disputing that these causes of action exist, or that pre-
CUTSA, Mattel could have pled various tort claims based upon these factual
allegations. Instead, the point is that post-CUTSA these claims are preempted
because they are predicated upon the same nucleus of fact Mattel's trade secret

1  claim.  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations*, 171 Cal. App. 4th
2  939, 958-59 (2009).

3  Moreover, the factual allegations that Mattel claims prevent preemption
4  either do not belong in this Court in the first instance, or are limited to two specific
5  claims.  Mattel does not even try to claim that it has stated unique factual
6  allegations relating to any alleged tortious acts involving U.S. employees, Brawer,
7  Castilla, Contreras, and Cooney.  *See* Opp. at 4-5.  Rather, the only non-trade secret
8  allegations Mattel claims would prevent preemption relate to (1) the Mexico
9  employees, and (2) the alleged disloyalty of the three seamstresses.  *Id.*  Neither can
10 prevent preemption.

11 With regard to the Mexico employees, Mattel claims that it has a separate
12 factual allegation that Machado, Vargas, and Trueba "aided in 'setting up MGA
13 offices in Mexico City' while still employed at Mattel."  Opp. at 4-5.  Mattel's
14 FAAC, however, does not contain such a factual allegation.  Rather, paragraph 45
15 states that Machado, Vargas, and Trueba "discuss[ed] . . . specific details regarding
16 setting up MGA offices in Mexico City."  FAAC ¶ 45.  Employees discussing the
17 terms and conditions of their future employment such as office location simply is
18 not actionable.  *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 346 (Cal. 1966)
19 (holding that an employee may make preparations to compete); *see Mamou v.
20 Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 718-720 (Cal. App. 2008)
21 (formation of a competing company does not breach duty of loyalty).  Moreover,
22 that paragraph goes on to allege that "Prior to their resignations Larian and others at
23 MGA directed Machado, Trueba and Vargas to steal as much confidential and
24 proprietary information as they could access."  FAAC ¶ 45.  Accordingly, when the
25 paragraph is read as a whole, the factual allegation is that when discussing setting
26 up MGA offices in Mexico City, Machado, Trueba and Vargas were instructed to
27 steal Mattel's trade secrets.  Thus, even this allegation relates to Mattel's trade
28 secret misappropriation claim and cannot prevent preemption.

1    With respect to the seamstresses, Ana Isabel Cabrera, Beatriz Morales and Maria Elena Salazar, Mattel's complaint alleges that these three individuals improperly moonlighted at MGA, working on Bratz, while they were employed by Mattel.  FAAC ¶ 86.  This allegedly impermissible moonlighting of these three women is referenced in only two of the state law causes of action—the sixth Counterclaim for intentional interference with contract, and the tenth Counterclaim for aiding and abetting breach of the duty of loyalty.  FAAC ¶¶ 160, 188.  The incorporation of these allegations into two of the six claims does not prevent preemption of those claims, except as to these three individuals.

Finally, even if Mattel has alleged facts in support of these claims that are not part of the trade secret misappropriation nucleus of facts, then it has engaged in the impermissible lumping together of different claims under the same banner.  Mattel cannot defeat preemption and avoid dismissal through its lumping together different claims.  Each of these claims is a combination of multiple separate scenarios involving the departure of eight separate former Mattel employees.  These different sets of facts could and arguably should have been pled as separate claims altogether; in all events, the preemption analysis should be made separately for each congruent set of facts.  *See, e.g., Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 978 (N.D. Cal. 2005) (granting motion to dismiss unfair competition claim for portions based upon misappropriation of trade secrets and denying it with regard to claims unrelated to trade secret misappropriation); *Airdefense Inc. v. Airtight Networks*, 2006 WL 2092053, at *5-8 (N.D. Cal. 2006) (analyzing preemption of "unlawful" and "unfair" bases of unfair competition claim separately).

### B.    The "Contractual Remedies" Exception Does Not Apply.

Mattel's second argument is that its tort claims for intentional interference with contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty are not preempted because they are "contract claims," which fall within the

narrow exemption from preemption in the CUTSA statute. Opp. at 6-7. Mattel's argument ignores the express language of the statute, the express purpose of the statute, and a line of cases that hold that tort claims premised on contractual relationships are preempted.

First, Mattel argues that the statute excludes "claims based upon contractual rights" from preemption. However, the statute states that it does not affect "contractual *remedies.*" Cal. Civ. Code § 3426.7(b)(1) (emphasis added). "Contractual remedies" are those available when the invasion of the primary right is a breach of contract, not a tort. *Compare* Cal. Civ. Code §§ 3300 (contract damages are limited to amount that will compensate plaintiff for harm proximately caused by breach), 3301 (contract damages must be clearly ascertainable in both nature and origin), 3294(a) (punitive damages are not available for breach of contract claims) *with* Cal. Civ. Code §§ 3333 (tort damages may include all harm caused by tort), 3294 (plaintiff may be entitled to recover punitive damages for tort claim if statutory prerequisites are pled and proven)[2]; *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1157 (2003) (stating that claim for intentional interference with contract is a tort claim); *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 708 (1998) (explaining that a claim for breach of fiduciary duty is a tort and "is not 'on a contract'"). As is plain from the factual allegations, there is no contract between Mattel and MGA, and thus Mattel's state law tort claims are not claims seeking "contractual remedies."

Second, the legislative history makes clear that CUTSA preemption is to be construed broadly to encompass all tort theories. "The contribution of the Uniform [Trade Secrets] Act is *substitution* of unitary definitions of trade secret and trade

---

[2] Given that Mattel's FAAC contains a plea for punitive damages in connection with its intentional interference with contract claim and its aiding and abetting breach of fiduciary duty claim, FAAC ¶¶ 165, 178 and that Mattel requested punitive damage claims in Phase 1 for its intentional interference with contract claim and its aiding and abetting breach of fiduciary duty claim, Dkt. # 4267 (Phase 1B Jury Instructions) at 41, 42, 4279 (Phase 1B Verdict Form) at 6-7, it is clear that Mattel does not actually consider either of these claims "contract claims."

secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law." Supplemental Request for Judicial Notice, Ex. 1 (Letter from Assemblyman Elihu Harris, Sponsor of AB 501, to George Deukmajian Governor of California (Sept. 12, 1984)) at 143-44; *see also Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp 2d 941, 953-54 (N.D. Cal. 2003) (finding that by enacting CUTSA, "general and comprehensive legislation," the California legislature intended to "occupy the field"); *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 630 (1989) (noting that the stated purpose of CUTSA was the substitution of a uniform definition and a single cause of action for the various claims utilized at common law).

Finally, as numerous courts have explained, CUTSA's explicit preemption provision would be rendered meaningless if tort claims based upon trade secret misappropriation were not preempted by CUTSA. *E.g., Silvaco Data Sys. v. Intel Corp.*, 2010 WL 1713241, at *13 (Cal. App. Apr. 29, 2010) (finding that "[t]he chosen construction nonetheless implies an expectation that CUTSA would have a supersessive effect on existing laws; otherwise the savings clauses would have been superfluous."); *K.C. Multimedia,* 171 Cal. App. 4th at 958 (agreeing that the preemption provision "'would appear to be rendered meaningless if, in fact, claims which are based on trade secret misappropriation are not preempted by the state's statutory scheme.'") (quoting *Digital Envoy v. Google, Inc.*, 370 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2005)); *Accuimage Diagnostics*, 260 F. Supp. 2d at 953 ("[I]n indicating what statutes and other remedies are superseded . . . [t]he implication is that common law remedies based on misappropriation of trade secrets are superseded."); *Ernest Paper Prods., Inc. v. Mobil Chem. Co.*, 1997 WL 33483520, at *8 (C.D. Cal. Dec. 2, 1997) (explaining that interpreting CUTSA as not affecting noncontractual remedies "renders 3426.7(b) surplusage"). Moreover, courts have routinely found that intentional interference with contract claims are preempted,

*Gabriel Techns. Corp. v. Qualcomm, Inc.*, 2009 WL 3326631, at *11-13 (S.D. Cal. Sept. 3, 2009) (holding claim for intentional interference with contract was preempted by CUTSA); *K.C. Multimedia*, 171 Cal. App. 4th at 961 (explaining that claim for intentional interference with contract was preempted by CUTSA because "that conduct falls within the statutory definition of 'improper means' of acquiring a trade secret, which includes . . . breach or inducement of a breach of a duty to maintain secrecy" and "the conduct derives from the 'same nucleus of facts' as the trade secrets claim"); *Axis Imex Inc. v. Sunset Bay Rattan Inc.*, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) (finding claim for intentional interference with contract was preempted by CUTSA), as well as fiduciary duty claims, *Easton Sports, Inc. v. Warrior LaCrosse, Inc.*, 2005 WL 2234559, at *3 (E.D. Mich. Sept 14, 2005) (applying both CUTSA and Michigan USTA and finding breach of fiduciary duty claim was preempted).

### C. Mattel's Confidential Information Argument Is Precluded By Mattel's Pleading and Is Specious.

Mattel finally throws a hail-Mary pass in an effort to avoid preemption, claiming that its Sixth through Twelfth claims are predicated on its "non-trade secret but otherwise protectable information," including its "'confidential' and 'proprietary' information.'" Opp. at 7. This argument is contradicted by Mattel's pleading, is plainly inconsistent with the preemption analysis, and is specious.

First, Mattel's FAAC precludes this argument. Mattel broadly defines its "Trade Secret Material" to include *all* Mattel information taken by *any* former Mattel employee. FAAC ¶ 134. Mattel made no distinction between trade secrets and some lesser form of confidential and proprietary information in its FAAC. *Id.*[3] Thus, rather than respond to this argument head-on, Mattel buries its response in a

---

[3] Nor, frankly, would it have had a contract for protection of such information if it had done so, because the [redacted]

1  footnote and even then skirts the issue. Opp. at 10 n.21. Mattel argues that since
2  the defined term "Trade Secret Material" does not appear in any of the state law
3  claims (except for conversion), Mattel must be given the benefit of the doubt.
4  However, there is no alternative reading of Mattel's explicit incorporation of all
5  Mattel "documents, materials, designs, names and other information stolen" into its
6  "Trade Secret Material." This term does not exclude certain "confidential" or
7  "proprietary" material from its broad scope. Rather, it incorporates all of the
8  materials alleged taken by the individuals identified in the six claims at issue and,
9  thus, preempts each of the six claims at issue.[4]

10  Nor, had Mattel made such an exclusion, would there be any merit to
11  permitting *tort* claims based on an alleged misappropriation of confidential
12  information that is not a trade secret. Mattel argues that it should be permitted to
13  premise alternative claims on what amounts to *a failure of proof* on the claim it did
14  plead. Opp. at 10-11. As the legislative history and authorities cited above make
15  clear, the entire purpose of enactment of CUTSA and its preemption provision was
16  to get rid of a patchwork quilt of legal requirements and replace them with a
17  uniform standard. That uniformity would be immediately destroyed were plaintiffs
18  permitted to plead in the alternative under a different set of requirements less
19  stringent than the statutory definition of trade secrets. Moreover, it defies credulity
20  that the California Legislature specified a detailed set of remedies, including the
21  conditions under which exemplary damages may be awarded (Cal. Civ. Code
22  §3426.3(c)), but nonetheless intended that common law tort claims limited only by
23  the strictures of Constitutional due process (*see BMW of N. Am. v. Gore*, 517 U.S.

---

[4] MGA has been forced to expend substantial resources in conducting discovery on Mattel's trade secrets claim because Mattel has so broadly over-defined its alleged trade secrets to include almost every piece of paper its former employees ever saw and even the information in their heads. For Mattel to now suggest that some of that information is not actually a trade secret is the height of hypocrisy. MGA cannot possibly be expected to start discovery over on thousands of documents Mattel initially claimed to be trade secrets to determine if any of these documents instead met some lower threshold for being merely "confidential" or "proprietary" information.

1  559, 581 (1996) (suggesting any single digit multiplier likely to survive
2  constitutional scrutiny)), would remain available for something that is *not a trade*
3  *secret*.  The overly robust protection of confidential information has its own set of
4  problems, including limiting the movement of labor and potentially impairing
5  competition.  Other California statutes reflect a desire to prevent such a result.  *E.g.*,
6  Cal. Bus. & Prof. Code § 16600.

7        In fact, the California cases that explore the legislative intent behind the
8  preemption provision in CUTSA determined that "CUSTA's 'comprehensive
9  structure and breadth' suggests a legislative intent to occupy the field." *K.C.*
10 *Multimedia*, 171 Cal. App. 4th at 957 (citing *Accuimage Diagnostics*, 260 F. Supp.
11 2d at 953); *Silvaco Data Sys.*, 2010 WL 1713241, at *14 (Cal. App. Apr. 29, 2010)
12 (finding that "[T]he central purpose of [CUTSA] was precisely to displace that web
13 [of disparate laws] with a relatively uniform and consistent set of rules defining –
14 and thereby limiting – liability.").  The court in *K.C. Multimedia* explicitly
15 determined that claims which sought "something more" – such as protection for
16 "confidential" or "proprietary" information in addition to trade secrets – have been
17 preempted.  *K.C. Multimedia*, 171 Cal. App. 4th at 958.  The cases Mattel cites in
18 support of its argument do not establish that it must be afforded a remedy outside of
19 trade secret misappropriation.  In fact, those cases do not discuss preemption and
20 relate to types of materials that are not all issue in this case.  *See Kremen v. Cohen*,
21 337 F.3d 1024, 1033 (9th Cir. 2003) (holding that a domain name is property);
22 *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 304 (7th Cir. 1990)
23 (explaining that a company may have its original documents returned).

24       Finally, allowing claims to proceed in the alternative is in direct conflict with
25 the "nucleus of facts" test adopted by California courts.  *See, e.g.*, *K.C. Multimedia*
26 (adopting the "federal cases applying California law, which hold that section
27 3426.7, subdivision (b), preempts common law claims that are 'based on the same
28 nucleus of facts as the misappropriation of trade secrets claim for relief'" and

indirectly disapproving of the line of federal cases which has not followed this rule) (citing *Digital Envoy*, 370 F. Supp. 2d at 1035). Under California law, the test is not whether the claims arise out of the same nucleus of facts *and those facts are sufficient to state a trade secret misappropriation claim. See id.* Rather, the question is merely whether the claims are based upon the same nucleus of facts, which as shown above, these claims are. Accordingly, all of Mattel's theories to defeat preemption fail and the Court should grant MGA's Motion.

## II. MATTEL'S SIXTH AND TENTH COUNTERCLAIMS SHOULD SEPARATELY BE DISMISSED AS THOSE CLAIMS RELATED TO MEXICO

As detailed in MGA's Reply in Support of Motions to Dismiss for Lack of Personal Jurisdiction and on Grounds of Forum Non Conveniens, the applicable law the Court should apply related to the claims based on conduct in Mexico is Mexican law. *See* Reply at Section II.B. As Mattel concedes, there are no legally recognized claims under Mexican law for tortious interference with contract or breach of the duty of loyalty. Dkt. # 7884 (Opp. to Motion to Dismiss (1) For Lack of Personal Jurisdiction; and (2) on Forum Non Conveniens Grounds) at 15. As a result, to the extent Mattel's sixth counterclaim (Tortious Interference with Contract) and Tenth Counterclaim (Aiding and Abetting Breach of Duty of Loyalty) are premised upon conduct in Mexico, those claims should be dismissed under Fed. R. Civ. Proc. 12(b)(6).

## III. MATTEL'S CONVERSION CLAIM MUST BE DISMISSED.

Mattel confirms that its conversion claim is based, at least in part, on a purported theft of its trade secrets as defined in Mattel's FAAC. *See* Opp. at 10 n. 21. As discussed above, a conversion claim based on purported trade secrets is clearly preempted by the CUTSA. *See Samsung Elecs. Am., Inc. v. Bilbruck*, 2006 WL 3012875, at *2 (Cal. Sup. Ct. Oct. 16, 2006) ("Consequently, there can be no conversion of trade secrets . . . Instead, the remedy for the taking of these

1  intangibles is an injunction"). Mattel's claims of conversion based on trade secret
2  theft must therefore be dismissed.

3  Likewise, claims concerning property and materials created by Bryant that
4  were known to Mattel during Phase 1 of this trial cannot form the basis of a claim
5  for conversion. Mattel simply ignores this Court's order confirming that Bratz and
6  Jade should have been part of Phase 1. Nonetheless, those allegations cannot form
7  the basis of Mattel's conversion claim now. Lastly, with respect to the only other
8  item Mattel alleges was converted – the name Moxie – Mattel offers no authority to
9  suggest that an idea for a proper name can be converted. To the contrary, the most
10 recent case law addressing the law of conversion in California declined to extend
11 conversion to this very type of abstract intangible. *See Boon Rawd Trading Int'l.*
12 *Co. v. Paleewong Trading Co., Inc.*, 2010 WL 668063, at *12 (N.D. Cal. Feb. 19,
13 2010) (rejecting a claim for conversion of business goodwill and import rights). In
14 sum, Mattel has not alleged a single fact that could form the basis of a conversion
15 claim other than the claim it already tried for conversion of Carter Bryant's
16 drawings. Accordingly, Mattel's Eleventh Counterclaim should be dismissed.

## CONCLUSION

18 The Sixth through Twelfth Counterclaims are preempted in their entirety, and
19 should the Court find there is any extent to which they are not then (such as the
20 seamstresses), then dismissal with prejudice should be granted as to the theories
21 that are preempted.

22 Dated: May 24, 2009           Respectfully submitted,
23                               ORRICK, HERRINGTON & SUTCLIFFE LLP
24
25                               By:   /s/ Annette L. Hurst
                                       ANNETTE L. HURST
26                                     Attorneys for MGA Parties and IGWT 826
27
28

- 13 -    REPLY IN SUPPORT OF MOTION TO DISMISS STATE LAW TORT CLAIMS
          CV-04-9049 DOC (RNBx)