MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826 Investments LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>No. CV 04-9059<br>No. CV 05-2727<br><br><u>Hon. David O. Carter</u><br><br>**REDACTED VERSION OF REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ON GROUND OF** *FORUM NON CONVENIENS*<br><br>Date:  May 28, 2010<br>Time: 8:00 a.m.<br>Dept: Courtroom 9D |

1

**TABLE OF CONTENTS**

2

Page

3   INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

4   ARGUMENT ............................................................................................................ 2

5   I.   THE COURT LACKS PERSONAL JURISDICTION OVER MGAE
         DE MEXICO ................................................................................................... 2

6        A.   Mattel Comes Nowhere Close To Demonstrating Contacts Of
              MGAE De Mexico That Approximate Physical Presence ................... 3

7        B.   Mattel Has Not Made A *Prima Facie* Case Of Specific
              Jurisdiction ......................................................................................... 7

8            1.   Only The Contacts Giving Rise To The Alleged
9                 Misappropriation Are Relevant To The Jurisdictional
                  Analysis ...................................................................................... 7

10           2.   There Was No Purposeful Availment Or Direction By
                  MGAE De Mexico At All, Let Alone At California, In
11                Connection With The Alleged Misappropriation ...................... 8

12       C.   Jurisdiction Of A Claim Against MGAE De Mexico Is
              Unreasonable ...................................................................................... 11

13       D.   This Is Not An Improper Motion For Reconsideration ..................... 14

14  II.  MATTEL'S CONCESSION THAT MEXICAN LAW PROVIDES
         NO CIVIL REMEDY FOR TRADE SECRET MISAPPROPRIATION
15       REQUIRES DISMISSAL OF THE MEXICAN CLAIMS EITHER
         UNDER *FORUM NON CONVENIENS* OR RULE 12(B)(6) ..................... 15

16       A.   Claims May Be Dismissed On *Forum Non Conveniens* Grounds ...... 15

17       B.   Mexican Law Governs These Trade Secret Claims And As
              Mattel Concedes, Provides No Civil Remedy Thus Requiring
18            Dismissal On The Merits .................................................................... 15

19       C.   An Adequate Alternative Forum Is Available ................................... 18

20           1.   The Claimed Limitations On The Actions In Mexico Are
                  Not Sufficient To Preclude Dismissal, Even Were They
                  Accepted As True ....................................................................... 19

21       D.   Allowing Mattel And Mattel Mexico To Pursue Their Mexican
              Claims Here Is Prejudicial To The Counter-Defendants And
22            Unreasonable ...................................................................................... 21

23           1.   Private Factors Weigh In Favor Of Mexico ............................. 21

             2.   The Public Interest Favors Granting The Motion ...................... 22

24  III. THE CANADIAN CLAIM ALSO SHOULD BE DISMISSED
         *UNDER FORUM NON CONVENIENS* ........................................................ 23

25  CONCLUSION ...................................................................................................... 25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Abogados v. AT&T, Inc,*
  223 F.3d 932 (9th Cir. 2000). ............................................................... 16

*In re Air Crash Disaster Near New Orleans,*
  821 F.2d 1147 (5th Cir. 1987) ............................................................... 15

*Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.,*
  551 F.2d 784 (9th Cir. 1977) ................................................................... 2

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,*
  1 F.3d 848 (9th Cir. 1993) ...................................................................... 3

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.,*
  480 U.S. 102 (1987) ............................................................................. 12

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
  223 F.3d 1082 (9th Cir. 2000) ................................................................. 3

*Banyan Licensing, L.C. v. Orthosupport Int'l, Inc.,*
  296 F. Supp. 2d 885 (N.D. Ohio 2003) ................................................. 17

*Bates v. Cook, Inc.,*
  615 F. Supp. 662 (M.D. Fla. 1984) ...................................................... 17

*BFI Group Divino Corp. v. JSC Russian Alumninum,*
  481 F. Supp. 2d. 274 (S.D.N.Y. 2007) ................................................. 23

*Bhatnagar v. Surrendra Overseas Ltd.,*
  52 F.3d 1220 (3rd Cir. 1995) ............................................................... 24

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ................................................................ 2

*Boston Telecommunications Group v. Wood,*
  588 F.3d 1201 (9th Cir. 2009) ............................................................. 23

*In re BP P.L.C. Derivative Litig.,*
  507 F. Supp. 2d 302 (S.D.N.Y. 2007) ................................................. 18

*Brand v. Menlove Dodge,*
  796 F.2d 1070 (9th Cir. 1986) ........................................................... 3, 6

*Buffet Crampon S.A.S. v. Schreiber & Keilwerth Musikinstrumente GMBH,*
  2009 WL 3675807 (N.D. Ind. Nov. 2, 2009) ....................................... 15

*CAE Inc. v. Three Cities Research, Inc.,*
  2009 WL 3839423 (D. Or. Nov. 16, 2009) .......................................... 25

*Cairns v. Franklin Mint Co.,*
    120 F. Supp. 2d 880 (C.D. Cal. 2000) ........................................................ 18

*Chandler v. Roy,*
    985 F. Supp. 1205 (D. Az. 1997) ................................................................ 8

*Congoleum Corp. v. DLW Aktiengesellschaft,*
    729 F.2d 1240 (9th Cir. 1984) .................................................................... 5

*Core-Vent Corp. v. Nobel Indus. AB,*
    11 F.3d 1482 (9th Cir. 1993) ...................................................... 11, 13, 14

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,*
    557 F.2d 1280 (9th Cir. 1977) .............................................................. 2, 15

*Delta Brands, Inc. v. Danieli Corp.,*
    2002 WL 31875560 (N.D. Tex. Dec. 20, 2002) ...................................... 13

*Doe v. Unocal Corporation,*
    248 F.3d 915 (9th Cir. 2001) ...................................................................... 7

*Droegar v. Welsh Sporting Goods Corp.,*
    541 F.2d 790 (9th Cir. 1976) ...................................................................... 8

*EFCO Corp. v. Aluma Sys. USA, Inc.,*
    268 F.3d 601 (8th Cir. 2001) .................................................................... 25

*Fahmy v. Hogge,*
    2008 WL 4614322 (C.D. Cal. 2008) ...................................................... 2, 3

*FDIC v. British Am. Ins. Co.,*
    828 F.2d 1439 (9th Cir. 1987) .................................................................. 13

*Fields v. Sedgwick Assoc. Risks,* Ltd.,
    796 F.2d 299 (9th Cir. 1986) ............................................................ 2, 3, 5

*Gator.com Corp. v. L.L. Bean, Inc.,*
    341 F.3d 1072 (9th Cir. 2003) .................................................................... 4

*Gator.com v. L.L. Bean,* Inc.,
    366 F.3d 789 (9th Cir. 2004) ...................................................................... 4

*Gibson-Homans Co. v. Wall-Tite, Inc.,*
    1992 WL 512411 (C.D. Cal. 1992) ............................................................ 8

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
    284 F.3d 1114 (9th Cir. 2002) .................................................................... 5

*Gonzalez v. Chrysler Corp.,*
    301 F.3d 377 (5th Cir. 2002) .............................................................. 20, 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ............................................................................ 3, 6

*Hirsh v. Blue Cross, Blue Shield of Kansas City*,
  800 F.2d 1474 (9th Cir. 1986)........................................................................4

*Holland America Line Inc. v. Wartsila North America Inc.*,
  485 F.3d 450 (9th Cir. 2007)...........................................................................6

*Ingram Micro, Inc. v. Tessco Communications, Inc.*,
  2002 WL 12980197 (C.D. Cal. 2002)..............................................................6

*Jackson v. Grupo Indus. Hotelero, S.A.*,
  2008 WL 4648999 (S.D. Fla. Oct. 20, 2008)................................................20

*JustMed, Inc. v. Byce*,
  600 F.3 1118 (9th Cir. 2010).........................................................................9

*Kendall v. American Automatic Loom Co.*,
  198 U.S. 477 (1905) .......................................................................................6

*Kitaru Innovations, Inc. v. Chandaria*,
  2010 WL 1050985 (S.D.N.Y. Mar. 23, 2010) ...............................................25

*L.D. Reeder Contractors v. Higgins Industries, Inc.*,
  265 F.2d 768 (9th Cir. 1959)..........................................................................5

*Lake v. Lake*,
  817 F.2d 1416 (9th Cir. 1987)........................................................................2

*Leon v. Million Air, Inc.*,
  251 F.3d 1305 (11th Cir. 2001).....................................................................24

*Life Alert Emerg. Response, Inc. v. Lifealert Sec., Inc.*,
  2008 WL 5412431 (C.D. Cal. Dec. 29, 2008) ...............................................25

*Lockman Found. v. Evangelical Alliance Mission*,
  930 F.2d 764 (9th Cir. 1991)...........................................................20, 22, 25

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001)..........................................................18, 20, 22

*Lumiere v. Mae Edna Wilder, Inc.*,
  261 U.S. 174 (1923) .......................................................................................6

*Menken v. Emm*,
  503 F.3d 1050 (9th Cir. 2007)......................................................................12

*Mercier v. Sheraton Int'l, Inc.*,
  981 F.2d 1345 (1st Cir. 1992) ......................................................................21

*Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.*,
  671 F. Supp. 1525 (C.D. Cal. 1987)................................................................3

*Oakley v. JOFA AB*,
  287 F. Supp. 2d 1111 (C.D. Cal. 2003)..........................................................2

*Online Payment Solutions, Inc. v. Svenska Handelsbanken AB,*
   638 F. Supp. 2d 375 (S.D.N.Y. 2009) .............................................................23

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait,*
   757 F.2d 1058 (9th Cir. 1985) ................................................................. 13, 14

*Pacific Atl. Trading Co. v. M/V Main Express,*
   758 F.2d 1325 (9th Cir. 1985) ................................................................. 13, 14

*Paulsen v. CNF, Inc.,*
   559 F.3d 1061 (9th Cir. 2009) ........................................................................16

*Perkins v. Benguet Consolidated Mining Co.,*
   342 U.S. 437 (1952) .........................................................................................5

*Peterson v. Kennedy,*
   771 F.2d 1244 (9th Cir. 1985) .........................................................................7

*Piper Aircraft Co. v. Reyno,*
   454 U.S. 235 (1981) ................................................................................. 19, 20

*Quillen v. Int'l Playtex, Inc.,*
   789 F.2d 1041 (4th Cir. 1986) ......................................................................18

*Rio Properties, Inc. v. Rio Int'l Interlink,*
   284 F.3d 1007 (9th Cir. 2004) .........................................................................8

*Rocke v. Canadian Auto. Sport Club,*
   660 F.2d 395 (9th Cir. 1981) ................................................................... 12, 13

*Rosenberg Bros. & Co. v. Curtis Brown Co.,*
   260 U.S. 516 (1923) ....................................................................................6, 7

*Sacks v. Four Season Hotel Ltd.,*
   2006 WL 783441 (E.D. Tex. 2006) ...............................................................21

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ........................................................... 4, 5, 6, 11

*Scott v. Breeland,*
   792 F.2d 925 (9th Cir. 1986) ...........................................................................2

*Scottish Air Int'l v. British Caledonian Group,*
   81 F.3d 1224 (2d Cir. 1996) ..........................................................................15

*Scully Signal Co. v. Joyal,*
   881 F. Supp. 727 (D.R.I. 1995) .....................................................................17

*Seiko Epson Corp. v. Print-Rite Holdings, Ltd.,*
   2002 WL 32513403 (D. Ore. April 30, 2002)..................................................6

*Sinclair v. Servicemaster Co.,*
   2007 WL 2254448 (E.D. Cal. 2007) .............................................................18

*Snaza v. Howard Johnson Franchise Sys., Inc.*,
   2008 WL 5383155 (N.D. Tex. Dec. 24, 2008) ...............................................21

*Spring Patents, Inc. v. Avon Rubber & Plastics, Inc.*,
   183 F. Supp. 2d 1212 (D. Haw. 2001) ...............................................3, 10, 11

*Stewart v. Dow Chemical Co.*,
   865 F.2d 103 (6th Cir. 1989)...............................................25

*Terracom v. Valley National Bank*,
   49 F.3d 555 (9th Cir. 1995)...............................................8

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006)...............................................24

*U.S.O. Corp. v. Mizuho Holding Co.*,
   2007 WL 2893628 (N.D. Ill. Sept. 27, 2007) ...............................................13

*United States v. Bestfoods*,
   524 U.S. 51 (1998)...............................................6

*Uston v. Hilton Casinos, Inc.*,
   564 F.2d 1218 (9th Cir. 1977)...............................................5

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
   556 F.2d 406 (9th Cir. 1977)...............................................15

*Wong v. PartyGaming Ltd.*,
   589 F.3d 821 (6th Cir. 2009)...............................................20

**STATE CASES**

*Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc.*,
   160 Cal. App. 4th 288 (2008)...............................................9

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010)...............................................16

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002)...............................................9

**RULES**

Circuit Rule 36-3(a) ...............................................4

Fed. R. Civ. Proc.
   12(b)(2)...............................................2, 14
   12(b)(6)...............................................1, 17

**OTHER AUTHORITIES**

4 Charles A. Wright and Arthur Miller Federal Practice and Procedure
   §1067.6 (3d Ed. 2002)...............................................2

REPLY MPA ISO MTD PERSONAL JURISDICTION
AND FORUM NON CONVENIENS

Oppenheimer, Jerry, *Toy Monster: The Big, Bad World of Mattel*
    (John Wiley & Sons, Inc. 2009) ................................................................. 22

R. SHARP, IN RE AIRCRASH DISASTER, NEW ORLEANS: A NEW VIEW OF FORUM NON
    CONVENIENS, 25 TORT AND INS.
    L.J. 892 (Summer 1990) ............................................................................. 15

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Mattel's opposition does nothing to avoid the simple fact that its allegations concerning acts in foreign countries against foreign defendants should not be tried here.  Despite Mattel's FAAC allegations and opposition arguments, Mattel has failed to meet its burden to show that jurisdiction is proper in this forum.  Indeed, even if Mattel could show a sufficient connection between these alleged foreign acts or foreign entities with this forum—they cannot—the particular claims against and concerning MGAE de Mexico and MGA Canada are more appropriately brought in their respective jurisdictions.  In sum, Mattel cannot establish proof of personal jurisdiction—general or specific—over MGAE de Mexico and cannot establish that claims concerning actions in Canada should be litigated here.  Accordingly, MGA's Motion to Dismiss for lack of personal jurisdiction and for forum non conveniens should be granted in its entirety.

If, however, the Court keeps the claims involving the foreign parties and conduct, Mattel makes two concessions in its opposition that are fatal to those claims.  First, Mattel does not dispute the fact that ███████████████ ███████████████████████████████████████████████ ████████   Second, Mattel concedes that ███████████████████ ████████████████████████████   Mattel concedes, in fact, that ██████ ████████████████████████████████████████████  With no viable legal claims under the law that is to be applied, the Court should dismiss these claims under Fed. R. Civ. Proc. 12(b)(6).

Whether the Court decides that this forum or the fora of Mexico and Canada are better suited for the foreign claims, the result is the same for this action:  the foreign trade secret claims from this action get dismissed.  This is only right since Mattel has availed itself of tribunals in Mexico and Canada for the very same conduct.  It is also the right result since, in the court in Mexico, Mattel has already sought to demonstrate the use of its trade secrets at MGA, but failed in that proof

1   and had its claims against MGA Mexico and Larian rejected.  There is no basis to

2   allow Mattel to have a second bite at the apple under inapplicable law and in an

3   improper forum.  The foreign trade secret claims should be dismissed.

**ARGUMENT**

4

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER MGAE DE MEXICO.

5

6

7        On a Rule 12(b)(2) motion, the plaintiff (or here cross complainant) has the

8   burden to make a prima facie showing of jurisdictional facts sufficient to establish

9   personal jurisdiction.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

10  Especially where, as here, there has been ample discovery, the party asserting

11  jurisdiction "is 'obligated to come forward with facts, by affidavit or otherwise,

12  supporting personal jurisdiction.'"  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.

13  1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th

14  Cir. 1977)); *see also* 4 Charles A. Wright and Arthur Miller Federal Practice and

15  Procedure §1067.6 (3d Ed. 2002); *Oakley v. JOFA AB*, 287 F. Supp. 2d 1111, 1114

16  (C.D. Cal. 2003).  Under such circumstances, the party asserting jurisdiction cannot

17  simply rely on the allegations of the pleadings where such allegations have been

18  controverted by evidence from the moving party seeking dismissal.  In particular,

19  the Court may not assume the truth of allegations in a pleading that are contradicted

20  by affidavit or other evidence.  *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d

21  1280, 1284 (9th Cir. 1977); *Fahmy v. Hogge*, 2008 WL 4614322 (C.D. Cal. 2008)

22  (granting reconsideration and dismissal under this standard based on plaintiff's

23  failure to put in jurisdictional evidence).

24        In the event of a conflict in evidence (rather than a conflict between evidence

25  and pleading allegations), inferences are resolved in Mattel's favor (comparable to

26  a summary judgment standard)—if the Court chooses not to conduct a full-blown

27  evidentiary hearing.  *See Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987); *Fields v.

28  Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986).  But, as noted

above and also similar to the summary judgment standard, Mattel only gets the benefit of that standard if it puts in *evidence* rather than simple reliance upon the allegations of its pleadings.  *See Fahmy*, 2008 WL 4614322 at *2*; *Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.*, 671 F. Supp. 1525, 1532 (C.D. Cal. 1987) ("plaintiffs fail to put forth any evidence linking NEC's alleged wrongful actions to any of NEC's alleged contacts with the forum") (failure to sustain burden of producing evidence to establish prima facie case of specific jurisdiction); *Spring Patents, Inc. v. Avon Rubber & Plastics, Inc.*, 183 F. Supp. 2d 1212, 1213 (D. Haw. 2001) (Plaintiff opposing motion to dismiss for lack of personal jurisdiction may not rest on base allegations of complaint, but must come forward with facts, by affidavit or otherwise.)

Mattel has failed to satisfy its burden to come forward with sufficient evidence rather than mere pleading allegations, and for the reasons set forth below does not meet the prima facie standard to establish jurisdiction over MGAE de Mexico.

### A. Mattel Comes Nowhere Close To Demonstrating Contacts Of MGAE De Mexico That Approximate Physical Presence.

To establish general jurisdiction, Mattel must show that MGAE de Mexico has "substantial" or "continuous and systematic" contacts with California, and that those contacts approximate a "physical presence" in California.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  The standard is a high one.  *Fields*, 796 F.2d at 301.  It has been described as an "exacting" standard that the Ninth Circuit rarely applies to foreign defendants because it permits them to be haled into the forum court on any claim—even one unrelated to its contacts with the state.  *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986); *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n. 3 (9th Cir. 1993); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

801 (9th Cir. 2004).  The important factors to consider include "whether the defendant makes sales, solicits or engages in business, serves the forum state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated [in the forum state]"  *Hirsh v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986).  The Court previously rejected Mattel's assertion of general jurisdiction over MGAE de Mexico, even when accepting Mattel's unsupported allegations as true.  Dkt. # 577 (6/27/07 Court Order) at 26-32.  With Mattel now having to come forward with *evidence* to support its allegations, the case for general jurisdiction becomes nonexistent.

Mattel admits that MGAE de Mexico is organized and operates under the laws of the country of Mexico and has its principal place of business in Mexico City.  FAAC ¶ 15.  The uncontroverted record evidence also shows that ██████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ ██████████████████ ████████████████████████████  Dkt. #371 (Declaration of Isaac Larian) ¶ 8;  Dkt. #370 (Declaration of Jahangir Makabi) ¶ 4; Dkt. #374 (Declaration of Daphne Gronich) ¶ 3; Dkt. #268 (Declaration of Susan Kuemmerle) ¶¶ 1-6; Dkt. # 372 (Declaration of Pedro Crisanti) ¶ 6; Dkt. # 373 (Declaration of Charnayne Brooks) ¶¶ 4-5; Dkt. # 314 (Declaration of Jose F. Salem), Ex. B at 10-18.

Mattel's response to this evidence is *Perkins*.[1]  Opp. at 9.  Relying on *Perkins*, it argues that the relationship between subsidiary MGAE de Mexico, and

---

[1] Mattel also cites *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003), but that opinion was vacated by the Ninth Circuit and can no longer be cited as precedent.  *See Gator.com v. L.L. Bean, Inc.*, 366 F.3d 789 (9th Cir. 2004).  *See* Circuit Rule 36-3(a).

1   parent MGA in California, is sufficient to confer general jurisdiction.  This

2   argument cannot be accepted.

3        In *Perkins*, the office of a Philippine mining corporation was forced to

4   relocate to Ohio because of Japanese occupation during World War II.  During the

5   war, the president of the company conducted business from an office in Ohio,

6   where the company held directors' meetings, maintained local bank accounts, sent

7   and received company correspondence, and generally carried on the affairs of the

8   corporation.  *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445

9   (1952).  Under these circumstances, the Supreme Court held that the corporation

10  was subject to general personal jurisdiction in Ohio, and therefore could be sued on

11  any claim in Ohio.  *Id*. at 448.  Since this series of circumstances plainly

12  approximated physical presence—in fact there was physical presence of the offices

13  if not the mine itself back in the Philippines—this is hardly that controversial a

14  conclusion.  But the facts in *Perkins* were unusual, bear no relationship to this case,

15  and general jurisdiction has not been found by the Supreme Court since.  *See*

16  *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984);

17  *L.D. Reeder Contractors v. Higgins Industries, Inc.*, 265 F.2d 768, 775 (9th Cir.

18  1959); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d

19  1114, 1125 (9th Cir. 2002).

20       Still, Mattel tries to contort the record regarding MGAE de Mexico's

21  relationship with parent company MGA into the *Perkins* mold.  It argues that ████

22  ███████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████

24  ████████████████████████████████████ Opp. at 5-7.  But courts

25  routinely reject such evidence as insufficient to establish general jurisdiction.  *See*

26  *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d at 302 (parent corporation's ties

27  to a forum do not create personal jurisdiction over subsidiary); *Uston v. Hilton*

28  *Casinos, Inc.*, 564 F.2d 1218, 1219 (9th Cir. 1977); *Ingram Micro, Inc. v. TESSCO*

1   *Communications*, *Inc*., 2002 WL 1290197 *1-2 (C.D. Cal. 2002) (each defendant's

2   contacts with forum must be analyzed separately; subsidiary was independent from

3   parent's contacts); *Holland America Line Inc. v. Wartsila North America Inc*., 485

4   F.3d 450, 459 (9th Cir. 2007) (where parent and subsidiary are separate and distinct

5   entities, the presence of one in a forum state may not be attributed to the other);

6   *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("it is 'entirely appropriate' for

7   directors of a parent corporation to serve as directors of its subsidiary"); *Seiko*

8   *Epson Corp. v. Print-Rite Holdings*, *Ltd*., 2002 WL 32513403 (D. Ore. April 30,

9   2002) (courts presume that parent managers wear their subsidiary hats when acting

10  for the subsidiary); *Lumiere v. Mae Edna Wilder, Inc*., 261 U.S. 174, 177 (1923)

11  (presence of executive in forum state does not confer general jurisdiction over

12  nonresident corporation); *Kendall v. American Automatic Loom Co*., 198 U.S. 477,

13  482 (1905) (service of process on treasurer in forum state did not confer personal

14  jurisdiction over nonresident corporation).

15      Mattel also argues that ████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  Opp. at 5-7.  These facts indicate nothing more than the normal discourse between

19  parent and subsidiary, and if they were sufficient then the rule that the contacts of

20  one cannot be imputed to the other would be meaningless.  Moreover, as a matter of

21  law, these facts are insufficient to establish general jurisdiction.  *See Brand*, *supra*,

22  796 F.2d at 1073 (fact that defendant imported cars through California did not

23  support jurisdiction); *Schwarzenegger*, *supra*, 374 F.3d at 801 (fact that cars were

24  imported through California did not establish defendant's "physical presence"

25  there); *Helicopteros*, *supra*, 466 U.S. at 415 (purchasing helicopters, equipment,

26  and training services for substantial sums in Texas did not subject defendant to

27  general jurisdiction in Texas; neither did sending nonresident employees to forum

28  state for training); *Rosenberg Bros. & Co. v. Curtis Brown Co*., 260 U.S. 516, 518

(1923) (retailer in Oklahoma who purchased merchandise on a regular basis from wholesalers in New York were not subject to personal jurisdiction in New York); *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (ordinary use of the mails, telephone, and other communications in forum state do not establish personal jurisdiction).[2]

Mattel has failed to come forward with evidence sufficient to establish a prima facie case that MGAE de Mexico has engaged in continuous and systematic contacts with the State of California sufficient to approximate physical presence.

### B.   Mattel Has Not Made A *Prima Facie* Case Of Specific Jurisdiction.

#### 1.   Only The Contacts Giving Rise To The Alleged Misappropriation Are Relevant To The Jurisdictional Analysis.

Mattel's Opposition devotes ████████████████████████████████████ ████████████████████████████████████████████ Mattel relies only on a conclusory assertion that ██████████████████████ ████████████████████████████████████████████ ████████████████   Opp. at 11.  Mattel's failure to trace through the evidence any direct link between MGAE de Mexico's acts and Mattel's claims, however, is fatal. Only the contacts that give rise to Mattel's claims are relevant to the determination of "but for" causation.  *See Doe v. Unocal Corporation,* 248 F.3d 915, 924-925 (9th Cir. 2001) (finding that Plaintiff had provided no evidence to suggest that the

---

[2] Mattel also asserts that ████████████████████████████████████ ████████████████████████████████   Opp. at 7.  This logic is backwards.  At best, this suggests MGA was conducting business for MGAE de Mexico in Mexico, that MGAE de Mexico is conducting business in the United States.  Mattel also vastly overstates the evidence.  MGAE de Mexico's ████████████████████████████████████████████ ████████████████████████████   Kuemmerle Decl., ¶¶ 3-6.  Mattel's only basis for suggesting otherwise is the testimony of Charnayne Brooks, an MGA Accounts Payable Supervisor, who was designated as a 30(b)(6) witness during Phase 1 *on different topics* and who testified that she did not have any personal knowledge of where these functions for MGAE de Mexico were handled.  Dkt. # 373 (Declaration of Charnayne Brooks) ¶¶ 4-5.  After two years of discovery, Mattel could not produce any admissible evidence to support its claims and again relies solely on the inaccurate testimony of Ms. Brooks.

1    specific cause of action arose because of defendant's contact with the forum);

2    *Terracom v. Valley National Bank*, 49 F.3d 555, 560 (9th Cir. 1995).  As detailed in

3    Section B.2 below, Mattel has failed to evidence any contacts by MGAE de Mexico

4    in relation to the claims, let alone that MGAE de Mexico's purported contacts "give

5    rise" to its claims, and even much less that Mattel would have suffered harm "but

6    for" MGAE de Mexico's contacts.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284

7    F.3d 1007, 1021 (9th Cir. 2004); *Chandler v. Roy*, 985 F. Supp. 1205, 1212 (D. Az.

8    1997) ("The 'arising out of' requirement of the specific jurisdiction test is met if

9    'but for' the contacts between the defendant and the forum state, the cause of action

10   would not have arisen.").

11        **2.    There Was No Purposeful Availment Or Direction By**
           **MGAE De Mexico At All, Let Alone At California, In**
12         **Connection With The Alleged Misappropriation.**

13        Taking the burden of proof together with the but-for causation requirement, it

14   is apparent that in order to defeat the Motion to Dismiss, Mattel must have provided

15   evidence of a strong relationship between the claims, the relevant California

16   contacts—in particular, the alleged trade secret misappropriation—and the accused

17   party, MGAE de Mexico.  Mattel plainly has not done this.

18        Even assuming California law supplies the substantive standard for

19   evaluating the contacts relating to Mattel and Mattel Mexico's trade secret

20   misappropriation claim against MGAE de Mexico, it provides no comfort in the

21   attempt to establish jurisdiction.  The actions of Machado, Vargas and Trueba █

22   ████████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████    *Droegar*

24   *v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976) (employee

25   exposure to trade secret information is not imputed to employer).  *Gibson-Homans*

26   *Co. v. Wall-Tite, Inc.*, 1992 WL 512411 *4 (C.D. Cal. 1992).  ███████████

27   ████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████

- 8 -

1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ████████████   T.S. Comp. at 201-271 (Vols. 16-21).  Even if the subject

5 matter of two documents is broader than Mexico, ████████████████████

6 ██████████████████████████████████████████████████

7 ███████████████████████████████████████   And, Mattel de

8 Mexico has no evidence that MGAE de Mexico (as opposed to Vargas, Trueba or

9 Machado) used or disclosed any of the documents in California or in a way

10 otherwise directed to California.

11    Instead, as Mattel Mexico and Mattel concede (and Judge Larson previously

12 ruled), ██████████████████████████████████████████

13 ██████████████████████████████████████████████████

14 ████████████████████████████████████████

15 ██████████████████   Opp. at 9.  For this proposition, Mattel has wholly

16 failed to come forward with any admissible evidence—███████████████

17 ██████████████████████████████████████████████████

18 ████████████████████████████████

19 ████████████████████████████████████████

20 ██████████████████   *JustMed, Inc. v. Byce*, 600 F.3d 1118, 31-32 (9th Cir.

21 April 14, 2010) (mere possession of confidential information by employee, without

22 proof that new employer used or benefited from trade secret, is not enough to

23 support a claim); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464 (2002)

24 (court cannot infer misappropriation solely from access to trade secrets); *Cytodyn,*

25 *Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal. App. 4th 288, 296 (2008)

26 (employer must have importuned the theft of secrets to be liable).

27    In contrast, MGAE de Mexico's evidence convincingly demonstrates that ███

28 ████████████████████████████████████████



Numerous witnesses testified without contradiction that ███████████████

Machado and Trueba both testified that ████████  LKK Decl. Ex. 20 (Machado Depo.) at 2117:14 – 2119:15; Chaudoir Decl. Ex. 2 (Trueba Depo.) at 6-7, 15, 16-17.  The court in Mexico, in the action initiated by Mattel, found, in fact, that ████████

In the face of this uncontroverted evidence and judicial decree, Mattel relies upon sheer speculation that ████████████████████  This is pure speculation, and is plainly counter to the substantive principle that the actions of departing employees cannot be imputed to the new employer—the same speculation could be made in every situation.  And, other courts have decisively rejected such speculation in apposite jurisdictional situations.

For example, in *Spring Patents,* the court granted defendant's motion to dismiss for lack of jurisdiction, finding that the plaintiff had failed to produce sufficient evidence of the foreign defendant's purposeful direction at the forum state.  183 F. Supp. 2d at 1216-17.  Plaintiff argued, based on its pleading allegations, that the employee of the resident majority-owned subsidiary had

committed tortious acts against it at the behest of the foreign majority shareholder. But plaintiff failed to offer any *evidence* refuting the affidavit of the employee denying that the foreign majority shareholder had directed him to engage in the alleged tortious acts.  Instead, the plaintiff offered only the fact of some communications between the two, and speculation that the conduct was orchestrated by the foreign majority-owner as part of a scheme to ruin plaintiff's business to its benefit.  The court found that mere communications between the employee and the majority shareholder, coupled with plaintiff's argument that an inference of directed wrongdoing could be made thereon, did not satisfy plaintiff's prima facie burden to support a finding of personal jurisdiction.  The inference was speculation, and did not support jurisdiction.

*Spring Patents* is well reasoned and apposite.  It comports fully with the relevant Ninth Circuit precedent and the state of record evidence in this case.  This Court should reach the same result, finding that there has been no purposeful direction or availment by MGAE de Mexico of the California forum with respect to the actions of Machado, Vargas and Trueba. [3]

## C.  <u>Jurisdiction Of A Claim Against MGAE De Mexico Is Unreasonable.</u>

Courts consider seven factors in determining whether it would be unreasonable to exercise jurisdiction.  All seven factors weigh in MGAE de Mexico's favor, even though it is not necessary for MGAE de Mexico to prevail on each of the factors.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-1488 (9th Cir. 1993).

---

[3] Whether this court applies the purposeful direction analysis of the "effects test" under *Calder*, or the purposeful availment analysis of the more traditional three-part test (*see Schwarzenneger*), the result is the same.  The undisputed evidence is that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

First, as already noted MGAE de Mexico has not purposefully injected itself into the affairs of California.  Indeed, as relevant here, the acts giving rise to any claim against MGAE de Mexico occurred in Mexico, i.e., "the genesis of the dispute is that action" that MGAE de Mexico allegedly took in Mexico.  *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007).

Second, there is the burden on MGAE de Mexico of defending itself in this forum.  Given that MGAE de Mexico is a foreign company, there is a "unique burden[] placed upon one who must defend oneself in a foreign legal system . . . ." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987).  In addition, all of the acts occurred in Mexico.  The persons that allegedly took the trade secrets reside in and are citizens of Mexico.  And the relevant evidence is in Mexico.  Mattel's acknowledgment that ██████████████████████████ ████████████████████████████████████████████████ Opp. at 18.  To the extent admissible at all, that evidence is only admissible *against* MGAE de Mexico—MGAE de Mexico cannot offer it in its defense because it is all hearsay.  Leaving the case here is thus a one-way ratchet against MGAE de Mexico, where Mattel forces it to talk to people under the guise of Rule 30(b)(6) to obtain potential admissions against interest, but MGAE de Mexico has no way at all to offer admissible evidence of their favorable testimony.[4]  The exercise of jurisdiction under these circumstances is unreasonable.  *See Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981).

Third, there is a conflict with Mexico's sovereign interest.  "[W]hen the nonresident defendant is from a foreign nation, rather than from another state in our federal system, the sovereignty barrier is higher, undermining the reasonableness of

---

[4] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████

1   personal jurisdiction." *Pacific Atl. Trading Co. v. M/V Main Express*, 758 F.2d

2   1325, 1330 (9th Cir. 1985).  This is true even if that foreign nation has not

3   expressed an interest in the case, *id.*, which is not true here in any event because

4   Mexico has expressly shown an interest in the form of its criminal prosecution.

5       Fourth, while California might have some interest in litigating Mattel's

6   claims only because Mattel (and not Mattel de Mexico) has offices here, the

7   conduct at issue took place in Mexico, and California has "no reasonable interest

8   otherwise in regulating the conduct" of foreign companies whose acts took place in

9   a foreign jurisdiction.  *Rocke*, 660 F.2d at 399.  In contrast, Mexico has a strong

10  interest in regulating the conduct of the businesses that do business in Mexico,

11  particularly when the alleged improper conduct occurred in Mexico.  *Paccar Int'l,*

12  *Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1065 (9th Cir. 1985) ("By

13  asserting jurisdiction . . . the district court interfered with the sovereignty of Kuwait

14  and the right of Kuwaiti courts to resolve disputes involving Kuwaiti

15  corporations."); *see also U.S.O. Corp. v. Mizuho Holding Co.*, 2007 WL 2893628 *

16  8 (N.D. Ill. Sept. 27, 2007) (noting that Japan has interest in regulating the conduct

17  of its businesses and their employees); *Delta Brands, Inc. v. Danieli Corp.*, 2002

18  WL 31875560 * 9 (N.D. Tex. Dec. 20, 2002) (noting that the fact that plaintiff was

19  located in Texas was not dispositive since all the alleged wrongful acts occurred in

20  Italy).

21      Fifth, Mexico is the most efficient forum to resolve this dispute.  The

22  wrongful acts occurred there.  Witnesses are located there.  The law of Mexico will

23  govern this dispute.  *See, infra* Part II, B.  These factors weigh against any finding

24  of reasonableness.  *Rocke*, 660 F.2d at 399; *see also FDIC v. British Am. Ins. Co.*,

25  828 F.2d 1439, 1444 (9th Cir. 1987) (taking into account the fact that California

26  law did not apply to the dispute).

27      Sixth, as for the convenience to Mattel, "[n]either the Supreme Court nor [the

28  Ninth Circuit] has given much weight to inconvenience to the plaintiff."  *Core-Vent*

1    *Corp.*, 11 F.3d at 1490.  In any case, both Mattel and Mattel de Mexico operate

2    regular business in Mexico.  *See Paccar Int'l, Inc.*, 757 F.2d at 1066 (considering

3    fact that plaintiff "voluntarily elected to do business in Kuwait").  And, in fact, they

4    have already pursued legal action, causing a prosecution to be instituted there.

5    Under such circumstances, it cannot be said that California is the most convenient

6    and effective forum for Mattel's claims against MGAE de Mexico.  *See Pacific Atl.*

7    *Trading Co.*, 758 F.2d at 1331 (noting that plaintiff "regularly operates" in the

8    foreign jurisdiction and that litigating there "does not appear overly inconvenient").

9         Seventh, there exists an alternate forum for Mattel's claims.  *Paccar Int'l,*

10   *Inc.*, 757 F.2d at 1066; *see, infra*, Part II, C.

11        **D.     This Is Not An Improper Motion For Reconsideration.**

12        Finally, Mattel argues that ████████████████████████████████

13   ███████████████████████████████████████████████████████████████████

14   ███████████   Opp. at 7-8.  But Mattel amended its pleading—that was Mattel's

15   choice.  MGAE de Mexico is now entitled pursuant to Rule 12 to respond to the

16   FAAC in the manner authorized by the Federal Rules of Civil Procedure, and the

17   Court specifically noted in its order that such a challenge was necessary for the

18   purpose of preserving the issue under Rule 12(b)(2).  Moreover, the

19   "reconsideration" argument completely ignores the volumes of discovery taken in

20   the last three years, and the fact that there are new pleadings and even a new

21   claimant to the trade secret misappropriation claim (Mattel Mexico).  Judge

22   Larson's order denying dismissal in 2007 relied upon pleading allegations, which,

23   as detailed above, have been disproven.  That is no longer an appropriate ground for

24   decision in light of the discovery and evidence taken during the intervening period.

25   Indeed, if the Court does not dispose of the issue now by dismissing MGAE de

26   Mexico, then MGAE de Mexico is entitled to and will continue pressing the issue

27   all the way through trial, at which point Mattel will have the burden of proving

28

REPLY MPA ISO MTD PERSONAL JURISDICTION
AND FORUM NON CONVENIENS

1  personal jurisdiction by a preponderance of the evidence. *Data Disc*, *supra*, 557

2  F.2d at 1284-1285.

3  **II.    MATTEL'S CONCESSION THAT MEXICAN LAW PROVIDES NO CIVIL REMEDY FOR TRADE SECRET MISAPPROPRIATION**

4  **REQUIRES DISMISSAL OF THE MEXICAN CLAIMS EITHER UNDER *FORUM NON CONVENIENS* OR RULE 12(B)(6).**

5

6  **A.    Claims May Be Dismissed On *Forum Non Conveniens* Grounds.**

7  Mattel is wrong when it argues that ███████████████████████

8  ██████████████████████████████████████████████████████████

9  ████████████████████████████ Instead, courts have recognized that "a district

10  court may dismiss part of a lawsuit while deciding the merits of other issues."

11  *Scottish Air Int'l v. British Caledonian Group*, 81 F.3d 1224, 1234 (2d Cir. 1996).

12  Consistent with this approach, in remanding a case for consideration of a *forum non*

13  *conveniens* challenge, the Ninth Circuit stated that the district court had the

14  discretion to consider whether "Nevada is not a convenient forum in which to

15  litigate *part or all* of the possible actions against" the defendant. *Wells Fargo &*

16  *Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 (9th Cir. 1977) (emphasis

17  added); *see also Buffet Crampon S.A.S. v. Schreiber & Keilwerth Musikinstrumente*

18  *GMBH*, 2009 WL 3675807 * 13 (N.D. Ind. Nov. 2, 2009) (considering dismissal of

19  one claim of many based on forum non conveniens grounds).[5]

20  **B.    Mexican Law Governs These Trade Secret Claims And As Mattel Concedes, Provides No Civil Remedy Thus Requiring Dismissal**

21  **On The Merits.**

22  ██████████████████████████████████████████████████████████

23  ████████████████████████████ And that is correct.  California applies

24  ―――――――――――――――
[5] Mattel only cites *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147,

25  1169 (5th Cir. 1987), where one of the defendants was the United States, which had not consented to jurisdiction in the suggested foreign tribunal.  However, as at least

26  one commentator has noted, the United States cannot be haled into a foreign court to answer as a defendant.  R. SHARP, IN RE AIRCRASH DISASTER, NEW ORLEANS: A

27  NEW VIEW OF FORUM NON CONVENIENS, 25 TORT AND INS. L.J. 892, 893-94 & n. 7 (Summer 1990).  Therefore, having the United States as a defendant is conclusive

28  proof that not all defendants could be held to answer in the foreign tribunal.  No such considerations are at work here.

- 15 -

a governmental interest test.  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010).[6]  Under that test, when there is a conflict of law between California and the other forum, which there is here, the place where the conduct occurred has "the predominant interest."  *Id.* at 97-98.  This is true even if the plaintiff is a California resident and the ultimate injury is felt in California.  Thus, in *McCann*, the California Supreme Court determined that the plaintiff, a California resident, was not entitled to apply California law, although his ultimate injury—mesothelioma— was experienced in California.  This was so because the acts giving rise to that injury—his exposure to asbestos—occurred in Oklahoma.  According to the California Supreme Court, "California's choice-of-law cases . . . continue to recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders . . . ."  *Id.*  According to the *McCann* Court, that jurisdiction has an interest in assuring "individuals and commercial entities operating within its [jurisdiction] that applicable limitations on liability . . . will be available to those individuals and businesses . . . ."  *Id.* at 98.

Similarly, in *Abogados v. AT&T, Inc.*, applying California's governmental interest test to determine the choice of law, the court reiterated that "'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'" 223 F.3d 932, 935 (9th Cir. 2000) (citation omitted).  In so holding and in determining that Mexican law should apply, the Court noted and validated Mexico's interest in determining the "point at which it will attach tort liability to conduct occurring within its borders."  *Id.* at 935-36.

Within the context of trade secret claims, courts have refused to apply the law of the forum, despite the argument that the injury from lost sales was felt by plaintiff in that home forum.  (Of course, that could not even be said here with

---

[6] California's choice of law rules apply.  *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("In a federal question action that involves supplemental jurisdiction over state law claims, we apply the choice of law rules of the forum state . . . .")

respect to claimant Mattel Mexico.)  Recognizing that the type of injury flowing from an alleged misappropriation of trade secrets is often alleged, as it is here, to occur in more than one location, courts choose the situs of the tortious conduct as the applicable law.  Applying this reasoning, in *Bates v. Cook, Inc.*, 615 F. Supp. 662 (M.D. Fla. 1984), the court refused to apply the law of Florida, although the plaintiff was a resident of Florida and even though the court acknowledged that "the effect of the lost sales was felt most severely" in Florida.  *Id.* at 678; *see also Banyan Licensing, L.C. v. Orthosupport Int'l, Inc.*, 296 F. Supp. 2d 885 (N.D. Ohio 2003) (deciding to apply Canadian law and noting that where injury is felt in more than one state, the law of the forum where the wrongful act occurs is the appropriate law to apply); *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 743-44 (D.R.I. 1995) (refusing to apply law of forum where plaintiff headquartered despite acknowledging that the effect of loss by plaintiff or the unfair profit obtained by defendant "will certainly be felt at plaintiff's headquarters or principal place of business," because trade secret misappropriation took place in another forum).

As described above with respect to personal jurisdiction, there is no evidence that MGA, MGAE de Mexico or Larian engaged in any tortious conduct from California by directing the alleged misappropriation of trade secrets by Machado, Vargas and Trueba, and in fact all evidence is to the contrary.  Moreover, there are two plaintiffs who are between them claiming injury on a worldwide basis, including Mattel Mexico in Mexico—the situs of the conduct giving rise to the alleged misappropriation.  It is therefore apparent that the relevant conduct occurred in Mexico and must be measured with reference to Mexican law—as is presently occurring in the criminal proceedings initiated by Mattel in Mexico.

█████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████  Opp. at 15.  Under Rule 12(b)(6), then, the Court can and should

1   dismiss Mattel's trade secrets claim as failing completely under the applicable law.

2   *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986); *Sinclair v.*

3   *Servicemaster Co.*, 2007 WL 2254448 * 8 (E.D. Cal. 2007); *In re BP P.L.C.*

4   *Derivative Litig.*, 507 F. Supp. 2d 302, 310-11 (S.D.N.Y. 2007); *Cairns v. Franklin*

5   *Mint Co.*, 120 F. Supp. 2d 880, 881 (C.D. Cal. 2000).

6   ██████████████████████████████████████

7   ███████████████████████████████████████████

8   ███████████████████████████████████████████████

9   ███████████████████████████████████████████

10   As discussed in Part B, the doctrine of *forum non conveniens* requires a court first

11   to determine what law applies and then consider that as a factor, and a strong one,

12   in determining whether to dismiss or transfer the action.  This does not mean a

13   court can use the doctrine to apply a law that would not otherwise apply.  The very

14   cases cited by Mattel make this clear.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137,

15   1143 (9th Cir. 2001) ("a district court must make a choice of law determination in

16   considering whether to dismiss the action [for forum non conveniens]").  In *Lueck*,

17   the court found that because New Zealand law was likely to apply, "the choice of

18   law determination weighs in favor of dismissal."  *Id.* at 1148, fn. 6.

19        Thus, even if the Court does not dismiss for lack of personal jurisdiction and

20   on ground of *forum non conveniens*, then it should dismiss the Third Counterclaim

21   on the merits as to all defendants concerning the Mexican-based claims.

22       **C.**    **<u>An Adequate Alternative Forum Is Available.</u>**

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ███████████████████████████████████████████

26   ██████████████████████ Opp. at 15-17.  All of these arguments are

27   meritless.

28

The appropriate inquiry is *not* whether Mattel might have to present different claims or abide by a different procedural system in order to bring or pursue claims in Mexico.  The appropriate inquiry is whether a claim in Mexico presents the rare circumstance[] where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory, *that it is no remedy at all . . . .*"  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (emphasis added).  Mattel has not made this type of showing.  Indeed, Mattel does not even cite *Piper Aircraft* on this point at all, although it is *the* controlling case.

1.   **The Claimed Limitations On The Actions In Mexico Are Not Sufficient To Preclude Dismissal, Even Were They Accepted As True.**

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████  LKK Decl. Ex. 29 (Tiburcio Depo. Tr.) at 28-32, 132.  In connection with that action, Mattel has gathered the evidence.  It has presented witnesses in pursuit of this action.  *Id.* at 126, 247-51, 260-62, 265-68, 278-79.  It has filed motions, oppositions and appealed decisions made in the Mexico action.  *Id.* at 236-43.  ████████████████████████████████████████

███████████████████████████████████████████████

*Id.* at 296-306.[7]  In other words, Mattel is actively involved in that case in a manner no victim to a U.S. crime prosecuted in a U.S. court would be involved.  Moreover, Mattel stands to gain monetary damages in the form of indemnification and the payment of lost profits.  Rebuttal Huerta-Bleck Decl. ¶ 8.

Therefore, Mattel has a remedy in Mexico.  The claims, and means of obtaining relief, may be different than in the United States.  These differences do

---

[7] Mattel also had the ability to attempt to draw MGAE de Mexico and Larian into that action by claiming use of the trade secrets at MGA. ██████████████████

███████████████████████████████████████████████████

1   not render the alternative fora inadequate.  *See Lueck*, 236 F.3d 1137 (noting that

2   New Zealand's bar of civil claims for damages did not render it inadequate when

3   remedy could be obtained using an administrative system).  A limitation on the

4   claims that can be asserted, a limitation on where those claims can be asserted

5   and/or a restriction on the type of recovery afforded is not a sufficient basis to

6   refuse to dismiss.  As stated by the Supreme Court when it determined that

7   Scotland was an adequate forum, the inquiry is whether there "*is no remedy at all*."

8   *Piper Aircraft Co.*, 454 U.S. at 254 (emphasis added).  In other words, the

9   "'possibility of an unfavorable change in the law' is not to be given conclusive or

10   substantial weight in a forum non conveniens inquiry."  *Lockman Found. v.*

11   *Evangelical Alliance Mission*, 930 F.2d 764, 768-69 (9th Cir. 1991) (rejecting

12   argument that Japan was inadequate forum because plaintiff would be unable to

13   bring RICO or Lanham Act claims) (quoting *Piper Aircraft*, 454 U.S. at 249-51)

14   (collecting cases)*; see also, e.g., Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir.

15   2002) (holding that the fact that Mexico does not allow claim for strict liability and

16   capped an award for the loss of a child's life at $2,500 did not render forum

17   inadequate even if it creates a disincentive to file a lawsuit).[8]

18   ██████████████████████████████████████

19   ██████████████████████████████████████

20   "[A]lmost all non-U.S. forums would be inadequate under [plaintiffs'] argument

21   because few countries outside of the United States offer jury trials in civil cases."

22   *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 829 (6th Cir. 2009); *Lockman Found.*,

23   930 F.3d at 768 (noting that fact that there are no jury trial in Japan "does not

24   render Japanese courts an inadequate forum" and citing cases).  As for the

25   _____

26   [8] Given this, Mattel's reliance on *Jackson v. Grupo Indus. Hotelero, S.A.*, 2008 WL 4648999 (S.D. Fla. Oct. 20, 2008), is misplaced.  Mattel's expert does not claim

27   that there are no remedies available and makes no mention of the criminal action. Moreover, the *Jackson* case is inconsistent with *Piper* and is wrongly decided to the

28   extent it focuses on the fact that *certain* remedies, such as injunctive relief, might not be available.

1    suggestion that ███████████████████████████████████████████

2    ██████ "[t]he case law is clear that an alternative forum ordinarily is not

3    considered 'inadequate' merely because its courts afford different or less generous

4    discovery procedures than are available under American rules."  *Mercier v.*

5    *Sheraton Int'l, Inc.*, 981 F.2d 1345, 1352-53 (1st Cir. 1992) (collecting cases).  And

6    specifically relating to Mexico, courts have rejected the proposition that Mexico is

7    an inadequate forum because of claimed deficiencies in its discovery system.  *See,*

8    *e.g.*, *Snaza v. Howard Johnson Franchise Sys., Inc.*, 2008 WL 5383155 * 9 (N.D.

9    Tex. Dec. 24, 2008) (rejecting the lack of discovery argument and noting "the

10   Texas Supreme Court has rejected arguments that Mexico's lack of procedural

11   safeguards [and] inadequate discovery . . . render it inadequate").[9]

12   **D.    Allowing Mattel And Mattel Mexico To Pursue Their Mexican**
          **Claims Here Is Prejudicial To The Counter-Defendants And**
13        **Unreasonable.**

14        **1.    Private Factors Weigh In Favor Of Mexico.**

15        Mattel does not dispute that the acts giving rise to any claimed theft of trade

16   secrets in Mexico occurred in Mexico.  It does not dispute that MGA has no way of

17   procuring important witnesses to the United States. ████████████████████████

18   ███████████████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████

     _____

25   [9] For these reasons, *Sacks v. Four Season Hotel Ltd.*, 2006 WL 783441 (E.D. Tex.
     2006), on which Mattel relies is not good authority. Opp. at 16. ████████████████

26   ████████████████████████████████████████████████████████████████

27   And that the case is an outlier is further established by the fact that the *Sacks* court

28   concluded that Mexico's cap on damages rendered it an inadequate forum in direct
     conflict with the law of its own Circuit.  *Gonzalez v. Chrysler Corp.*, 301 F.3d 377.

1 ███████████████████████████████████████████

2 ████████████████████████████████████████████

3 ██████████████████████████████████████████

4 ███████████████████████████████████████████

5 ███████████████

6        Mattel does not dispute that plaintiff Mattel de Mexico, whose trade secrets

7 are claimed to have been stolen, and MGAE de Mexico, the alleged recipient of

8 those trade secrets are both located in Mexico.  Nor does Mattel dispute that these

9 witnesses cannot be haled into U.S. courts.  *See, supra*, Part I, C.  For forum non

10 conveniens purposes, the query is where the most important and material evidence

11 and witnesses are.  *Lueck*, 236 F.3d at 1146.  The further inquiry is not merely how

12 *Mattel* intends to present its case, but also how MGAE de Mexico will defend the

13 case.  *Lockman Found.*, 930 F.2d at 769-70.  The people who have the relevant and

14 critical information necessary to MGAE de Mexico's defense are located in Mexico

15 and cannot be compelled to appear in the United States.  *See Lueck*, 236 F.3d at

16 1146.

17        Finally, the purpose of a dismissal of the claims relating to the theft of

18 foreign trade secrets is so that they are *not* tried in the United States.  The

19 inefficiency we presently have is that *Mattel* is pursuing these claims in multiple

20 jurisdictions.  Granting this motion will simplify and increase the efficiencies.

21            **2.     The Public Interest Favors Granting The Motion.**

22        As noted, Mexico, not California has an interest in regulating the conduct by

23 a Mexican company that effects a Mexican company and that occurs in Mexico.

24 *See, supra*, Part I, C.  ████████████████████████████████

25 █████████████████████████████████████████

26 *Lueck*, *id*. at 1147 (taking into account, among other factors, when considering to

27 dismiss on the basis of forum non conveniens that New Zealand had instituted

28 criminal proceedings).  Moreover, Mattel has made the decision to conduct business

1   in Mexico.  This substantially eliminates any claim to this forum by dint of the fact

2   that Mattel has offices in California.  In such instances, "'the plaintiff's ability to

3   rely on citizenship as a talisman against *forum non conveniens* dismissal is

4   diminished.'"  *BFI Group Divino Corp. v. JSC Russian Alumninum*, 481 F. Supp.

5   2d 274, 280 (S.D.N.Y. 2007); *Online Payment Solutions, Inc. v. Svenska*

6   *Handelsbanken AB*, 638 F. Supp. 2d 375, 382 (S.D.N.Y. 2009) (same).

7          Finally, because Mexico law will apply to certain of the claims and U.S. law

8   to others, dismissal is appropriate.  As the Supreme Court stated in *Piper Aircraft*

9   *Co.*, in considering the district court's conclusion that dismissal was appropriate

10  because the case would have required it to apply U.S. laws to some claims and

11  Scottish law to others, "the need to apply foreign law point[s] towards dismissal."

12  454 U.S. at 260.

13         These facts place this case at odds with *Boston Telecommunications Group v.*

14  *Wood*, 588 F.3d 1201 (9th Cir. 2009), cited by Mattel.

15  **III.   THE CANADIAN CLAIM ALSO SHOULD BE DISMISSED UNDER**

16  ***FORUM NON CONVENIENS*.**

17         Mattel spends even less time attempting to justify that its Canadian based

18  claims, which are the subject of a duplicate pending action in Canada, should be

19  litigated here.  The fact remains that Canada remains the more appropriate forum.

20  Indeed, Mattel does not dispute that the Canadian claims concern actions that ***all***

21  purportedly took place in Canada.  Mattel makes no connection between its

22  allegations that Brisbois, a former Mattel ***Canada*** employee, purportedly retained

23  items from Mattel ***Canada*** that she had worked on and of which she was

24  particularly proud, and this forum. ███████████████████████

25  ████████████████████████████████████

26  ███████████████████████████████████

27  ████████████████████████████████

28  ████████   Indeed, Mattel has not proffered any evidence that any of its Mattel

1   Canada information was ever used in the United States, much less Canada. 

13       Still, to the extent that Mattel's argument can be read to mean that there

14 would be a delay were this case to be dismissed in favor of Canada, its argument

15 fails.  Courts that have considered the issue of undue delay ask whether there would

16 be "extreme amounts of . . . inefficiency," *Leon v. Million Air, Inc.*, 251 F.3d 1305,

17 1312 (11th Cir. 2001), and courts have found that extreme delays, e.g., of 25 years

18 or more, is unacceptable.  *See Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220,

19 1228 (3rd Cir. 1995).  At the same time, courts have also recognized that "delay is

20 an unfortunate but ubiquitous aspect of the legal system" to which both U.S. and

21 foreign courts are susceptible.  *Id.* at 1227.  And therefore, "[a] litigant asserting

22 inadequacy or delay must make a powerful showing." *Tuazon v. R.J. Reynolds*

23 *Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006).  The mere suggestion of a delay

24 is not enough.  *Id.*  Again, any delay in the Canada action is strictly a result of

25 Mattel's failure to prosecute the case.

26       As to Mattel's suggestion that MGA might offer a defense in Canada

27 relieving it of liability, no case found and none cited by Mattel holds that a

28 defendant urging dismissal on the basis of forum non conveniens is stripped of all

defenses in the foreign forum.  "Dismissal on grounds of forum non conveniens cannot be reversed solely because another forum's laws are more or less favorable to one or the other party."  *Stewart v. Dow Chemical Co.*, 865 F.2d 103, 107 (6th Cir. 1989).

Finally, while Mattel cites one case holding that Canada was not an adequate forum, *Life Alert Emerg. Response, Inc. v. Lifealert Sec., Inc.*, 2008 WL 5412431 (C.D. Cal. Dec. 29, 2008), that case involved a trademark dispute, which is not at issue here.  Moreover, the court determined that there had been no showing that there would be an adequate remedy under Canadian law for the claims raised.[10] Here, however, Mattel has filed suit in Canada.  It is pursuing that claim and nowhere does Mattel argue in its papers that that suit does not provide it a remedy for the alleged theft of trade secrets.  *See Kitaru Innovations, Inc. v. Chandaria*, 2010 WL 1050985 * 7 (S.D.N.Y. Mar. 23, 2010) ("The progress of the Canadian Action also plainly indicates that Canadian courts 'permit[] litigation on the subject matter of the dispute.'" (citation omitted)).[11]

## CONCLUSION

For the foregoing reasons, the Court should dismiss those aspects of the Third Counterclaim involving foreign conduct.

Dated:    May 24, 2010     ORRICK, HERRINGTON & SUTCLIFFE LLP

By:      /s/ Annette L. Hurst
ANNETTE L. HURST
Attorneys for MGA Parties

---

[10] In addition, *Life Alert* decision appears to conflict with Ninth Circuit law.  In *Lifealert*, the court suggested that Canadian law would not supply remedies available under California law and the Lanham Act.  2008 WL 5412431 at 7. However, as noted, supra, foreign law need not supply identical remedies.  It need provide a remedy.  Indeed, the fact that a plaintiff cannot recover under the Lanham Act has been expressly held not to justify the denial of a motion for dismissal based on forum non conveniens.  *See Lockman*, 930 F.2d at 768.
[11] Moreover, courts have found Canada to be an adequate forum.  *See, e.g.*, *EFCO Corp. v. Aluma Sys. USA, Inc.*, 268 F.3d 601 (8th Cir. 2001); *Stewart, supra*; *CAE Inc. v. Three Cities Research, Inc.*, 2009 WL 3839423 (D. Or. Nov. 16, 2009).