# EXHIBIT 1 Part 1

INT
PROP
50
L423
1984

LEGISLATIVE HISTORY OF
CALIFORNIA TRADE SECRETS
ACT:  CIVIL CODE 3426.7,

Copy  1

# CIVIL CODE

## SECTION 3426.7

### ENACTED BY THE CALIFORNIA UNIFORM TRADE SECRETS ACT
### CHAPTER 1724, STATUTES OF 1984

LIBRARY
ORRICK, HERRINGTON & SUTCLIFFE LLP
MENLO PARK, CALIFORNIA

JAN RAYMOND
LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
P.O. BOX 74005, DAVIS, CALIFORNIA 95617
PHONE (888) 676-1947 OR (530) 750-2187
FAX: (530) 750-0190

INT
PROP
50
L423
1984

Copy  1

Exhibit 1 - Page 3

# Using This Report

Legislative intent is a matter of law that is often resolved by a factual inquiry.   Because it is a factual inquiry many lawyers instinctively think in terms of admissibility of documents.   But as a matter of law decided by the court, rules of evidence developed to protect juries have no applicability. Factual inquiries into Legislative Intent need only address two issues, the authenticity of the information relied upon and the probative value of the information.

### *Probative Value Overview*

Legislative documents vary in their probative value.   Documents that are developed as a formal part of the legislative process are inherently reliable and therefore of high probative value due to the scrutiny imposed by the formal requirements of legislative procedures.  Documents developed as a formal part of the legislative process can therefore often be primary evidence of intent.   Other documents are of value as circumstantial evidence of intent.   For example, simple file documents are of lesser probative value due to the lack of scrutiny imposed on documents a legislator or legislative staff person may choose to file.   However, a simple file document may become a primary source of intent if supported by corroborative statements in other documents.

### *Procedure - If You Are In A California Court*

Evidence Code Sections 450 et seq. provide authority for a court to take judicial notice of documents relating to legislative history.   A leading case citing Evidence Code Section 452(c) as authority for a court to take judicial notice of legislative documents is <u>Post v. Prati</u>, 90 Cal.   App. 3d 626 (1979).   The court relied upon a variety of legislative documents, including correspondence to the Governor from state agencies and individual legislators.   Although a formal request for judicial notice is probably better practice, in <u>Lafayette Morehouse, Inc. v. Chronicle Publishing Co.</u> (1995) 39 Cal. App. 4th 1379, the court accepted and relied upon legislative documents simply appended to a brief, apparently with no formal request for judicial notice.   Legislative history documentation obtained from a commercial service can be claimed as costs under CCP 1033.5.   <u>Van DeKamp v. Gumbiner</u>, (1990) 221 Cal.   App. 3d, 1260.

### *Procedure - If You Are In Federal Court or Another State Court*

Procedures vary from jurisdiction to jurisdiction.   Generally a Federal Court exercising diversity jurisdiction and seeking to determine the intent of a State legislative enactment will look to the law of that State to determine how the State statute is to be interpreted.   (See 28 USC Section 1652).   State procedural rules will be followed as long as there is no direct conflict with the federal rules. (<u>Hanna v. Plummer</u>, 380 U.S. 460 (1965)).

### *Further Authorities*

For more in depth discussion visit LEGISLATIVE HISTORY CLEARINGHOUSE - www.lhclearinghouse.com.
In addition, a brief overview of frequently cited authorities and topical treatises regarding the use of legislative history documents can be found on the back cover of this report.

Exhibit 1 - Page 4

# Abstract

**_Terms of Research:_**

This research was conducted as a thorough substantive review of the history of Civil Code Section 3426.7, to be forwarded in bound format without authenticating declaration/document index.

**_Documents:_**

This report begins following the first blue divider with an excerpt from the Final History for 1984 regarding Assembly Bill 501, which enacted this Section. Documents regarding AB 501 follow in chronological order. Following the second blue divider we include documents concern AB 3738 of 1982, an unsuccessful predecessor to AB 501, and background materials on the Uniform Act.

**_Findings:_**

The Uniform Trade Secrets Act contained in Civil Code Sections 3426 et sequence, as well as the trade secret discovery provisions now found in present Code of Civil Procedure 2019(d) were enacted in 1984 by Assembly Bill 501 introduced by Assembly member Elihu Harris.

Although introduced in February of 1983, AB 501 took the full two year 1983-84 session to proceed through the legislature.  During that time the bill was only amended four times, twice in the Assembly and twice in the Senate.  The final version of the bill was a product of negotiations between a number of the parties opposing and supporting the bill.  AB 501 was following up on an unsuccessful 1982 bill, AB 3738.

The language of Civil Code Section 3426.7(a) first appeared in AB 3738 of 1982 when the bill was introduced.  The language conflicted in many respects with the language of the Uniform Act.  Subdivisions (b) was first added late in the consideration of AB 501, in August 15 amendments.  The language now in (c) was added as (b) in amendments on May 3, 1983 to AB 501.

---

Find Authorities on using legislative documents, definitions of legislative terms, a brief summary of the legislative process and other information pertinent to legislative history and legislative intent at
LEGISLATIVE HISTORY CLEARINGHOUSE
www.lhclearinghouse.com

Exhibit 1 - Page 5

Exhibit 1 - Page 6

**VOLUME 1**

## CALIFORNIA LEGISLATURE

### AT SACRAMENTO

1983–84 REGULAR SESSION
1983–84 FIRST EXTRAORDINARY SESSION
1983–84 SECOND EXTRAORDINARY SESSION

# ASSEMBLY FINAL HISTORY

SYNOPSIS OF

ASSEMBLY BILLS, CONSTITUTIONAL AMENDMENTS, CONCURRENT,

JOINT, AND HOUSE RESOLUTIONS

Assembly Convened December 6, 1982

| | |
|---|---|
| Recessed December 8, 1982 | Reconvened January 3, 1983 |
| Recessed March 24, 1983 | Reconvened April 4, 1983 |
| Recessed July 19, 1983 | Reconvened August 15, 1983 |
| Recessed September 19, 1983 | Reconvened January 3, 1984 |
| Recessed April 12, 1984 | Reconvened April 23, 1984 |
| Recessed July 6, 1984 | Reconvened August 6, 1984 |

Adjourned August 31, 1984

Adjourned Sine Die November 30, 1984

Legislative Days ................................................................ 262

HON. WILLIE L. BROWN JR.
*Speaker*

HON. FRANK VICENCIA
*Speaker pro Tempore*

HON. TOM BANE
*Assistant Speaker pro Tempore*

HON. MIKE ROOS
*Majority Floor Leader*

HON. ROBERT W. NAYLOR
*Minority Floor Leader*

Compiled Under the Direction of
JAMES D. DRISCOLL
*Chief Clerk*

GUNVOR ENGLE
*History Clerk*

Exhibit 1 - Page 7

## 1983-84 REGULAR SESSION 377

A.B. No. 501—Harris.

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

**1983**

Feb.    7—Read first time. To print.
Feb.    8—From printer. May be heard in committee March 10.
Feb.   15—Referred to Com. on JUD.
April   4—In committee: Set, first hearing. Hearing canceled at the request of author.
April  21—From committee chairman, with author's amendments: Amend, and re-refer to Com. on JUD. Read second time and amended.
April  25—Re-referred to Com. on JUD.
May     2—From committee: Amend, and do pass as amended. (Ayes 8. Noes 0.) (April 11).
May     3—Read second time and amended.   Ordered returned to second reading.
May     4—Read second time. To third reading.
May     5—Read third time, passed, and to Senate. (Ayes 76. Noes 0. Page 3439.)
May     5—In Senate. Read first time. To Com. on RLS. for assignment.
May    12—Referred to Com. on JUD.
June    7—In committee: Set, first hearing. Hearing canceled at the request of author.

**1984**

July    6—From committee chairman, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on JUD.
Aug.   14—From committee: Amend, and do pass as amended. (Ayes 6. Noes 0.).
Aug.   15—Read second time, amended, and to third reading.
Aug.   27—Read third time, passed, and to Assembly. (Ayes 40. Noes 0. Page 13913.)
Aug.   28—In Assembly. Concurrence in Senate amendments pending.
Aug.   29—Senate amendments concurred in. To enrollment. (Ayes 77. Noes 0. Page 20190.).
Sept.   6—Enrolled and to the Governor at 11 a.m.
Sept.  30—Approved by the Governor.
Sept.  30—Chaptered by Secretary of State - Chapter 1724, Statutes of 1984.

Exhibit 1 - Page 8

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

# ASSEMBLY BILL                                  No. 501

## Introduced by Assemblyman Harris

### February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as introduced, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1   SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:
3
4   TITLE 5.   UNIFORM TRADE SECRETS ACT
5
6   3426.   This title may be cited as the Uniform Trade
7  Secrets Act.
8   3426.1.   As used in this title, unless the context requires
9  otherwise:
10   (a) "Improper   means"   includes   theft,   bribery,

99   40

Exhibit 1 - Page 9

AB 501                              — 2 —

1   misrepresentation, breach or inducement of a breach of
2   a duty to maintain secrecy, or espionage through
3   electronic or other means.
4       (b) "Misappropriation" means:
5       (1) Acquisition of a trade secret of another by a person
6   who knows or has reason to know that the trade secret
7   was acquired by improper means; or
8       (2) Disclosure or use of a trade secret of another
9   without express or implied consent by a person who:
10      (A) Used improper means to acquire knowledge of
11  the trade secret; or
12      (B) At the time of disclosure or use, knew or had
13  reason to know that his or her knowledge of the trade
14  secret was:
15      (i) Derived from or through a person who had utilized
16  improper means to acquire it;
17      (ii) Acquired under circumstances giving rise to a
18  duty to maintain its secrecy or limit its use; or
19      (iii) Derived from or through a person who owed a
20  duty to the person seeking relief to maintain its secrecy
21  or limit its use; or
22      (C) Before a material change of his or her position,
23  knew or had reason to know that it was a trade secret and
24  that knowledge of it had been acquired by accident or
25  mistake.
26      (c) "Person" means a natural person, corporation,
27  business trust, estate, trust, partnership, association, joint
28  venture, government, governmental subdivision or
29  agency, or any other legal or commercial entity.
30      (d) "Trade secret" means information, including a
31  formula, pattern, compilation, program, device, method,
32  technique, or process, that:
33      (1) Derives independent economic value, actual or
34  potential, from not being generally known to, and not
35  being readily ascertainable by proper means by, other
36  persons who can obtain economic value from its
37  disclosure or use; and
38      (2) Is the subject of efforts that are reasonable under
39  the circumstances to maintain its secrecy.
40      3426.2.  (a) Actual or threatened misappropriation

99  70

Exhibit 1 - Page 10

1  may be enjoined. Upon application to the court, an
2  injunction shall be terminated when the trade secret has
3  ceased to exist, but the injunction may be continued for
4  an additional reasonable period of time in order to
5  eliminate commercial advantage that otherwise would
6  be derived from the misappropriation.
7     (b) If the court determines that it would be
8  unreasonable to prohibit future use, an injunction may
9  condition future use upon payment of a reasonable
10 royalty for no longer than the period of time the use could
11 have been prohibited.
12    (c) In appropriate circumstances, affirmative acts to
13 protect a trade secret may be compelled by court order.
14    3426.3.   (a) In addition to or in lieu of injunctive
15 relief, a complainant may recover damages for the actual
16 loss caused by misappropriation. A complainant also may
17 recover    for    the    unjust    enrichment    caused    by
18 misappropriation that is not taken into account in
19 computing damages for actual loss.
20    (b) If willful and malicious misappropriation exists,
21 the court may award exemplary damages in an amount
22 not exceeding twice any award made under subdivision
23 (a).
24    3426.4.   If a claim of misappropriation is made in bad
25 faith, a motion to terminate an injunction is made or
26 resisted   in   bad   faith,   or   willful   and   malicious
27 misappropriation exists, the court may award reasonable
28 attorney's fees to the prevailing party.
29    3426.5.   In an action under this title, a court shall
30 preserve the secrecy of an alleged trade secret by
31 reasonable    means,    which    may    include    granting
32 protective    orders    in    connection    with    discovery
33 proceedings, holding in-camera hearings, sealing the
34 records of the action, and ordering any person involved
35 in the litigation not to disclose an alleged trade secret
36 without prior court approval.
37    3426.6.   An action for misappropriation must be
38 brought within three years after the misappropriation is
39 discovered or by the exercise of reasonable diligence
40 should have been discovered. For the purposes of this

99   100

Exhibit 1 - Page 11

AB 501                      —4—

1   section, a continuing misappropriation constitutes a
2   single claim.
3       3426.7.   Except as otherwise expressly provided, this
4   title does not supersede any statute relating to
5   misappropriation of a trade secret, or any statute
6   otherwise regulating trade secrets.
7       3426.8.   This title shall be applied and construed to
8   effectuate its general purpose to make uniform the law
9   with respect to the subject of this title among states
10  enacting it.
11      3426.9.   If any provision of this title or its application
12  to any person or circumstances is held invalid, the
13  invalidity does not affect other provisions or applications
14  of the title which can be given effect without the invalid
15  provision or application, and to this end the provisions of
16  this title are severable.
17      3426.10.   This title does not apply to misappropriation
18  occurring prior to January 1, 1984.

O

99   110

Exhibit 1 - Page 12

# BILL ANALYSIS

| | | 480.1 |
|---|---|---|
| DEPARTMENT FOOD AND AGRICULTURE | AUTHOR Assemblyman Harris | BILL NUMBER AB 501 |
| SPONSORED BY National Conference of Commissioners on Uniform State Law | RELATED BILLS AB 3738 (1982) | DATE LAST AMENDED Original |

## BILL SUMMARY

MAJOR BILL ☐

This Act provides that actual or threatened misappropriation (as defined in the Uniform Trade Secrets Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

## A. Specific Findings:

The same bill, numbered AB 3738, was introduced on March 25, 1982, and an analysis was prepared at that time. It was subsequently modified on May 12, 1982, although the changes made in this latter version were not incorporated into AB 501 (Analyses attached).

The definition of "trade secret" incorporated into the Act would include health and safety data submitted to the Department in support of pesticide registration. The Department's refusal to release health and safety data pursuant to the Public Records Act (California Government Code § 6250 et. seq.) has been a continuing source of controversy. The effect of the Act, if passed, would be to keep secret all health and safety studies except those which have previously been released.

The penalties for release of trade secret data as imposed by this Bill are severe. The use of "unjust enrichment" as a measure of damages (proposed § 3426.3(a)) could easily result in substantial liability. For example, if trade secret data were released to a competitor who registered and marketed an identical product, all profits from the sales of the competitor's product would be considered "unjust enrichment."

## B. Fiscal Impact:

Assembly Bill 501 could expose the Department to liability for an error in judgment by staff who must process Public Records Act requests.

## C. Conclusion:

In the past, the Department has refused to release trade secret data as defined in California Government Code Section 6257.7(d). This is mostly health and safety data. Further, the Department is in possession of a great deal of highly valuable trade secret data as well as public records. It is difficult to determine if data is secret; the analysis must determine whether the data has been previously released, whether the data has proprietary value, and whether the data was received with an expectation of privacy. Frequent requests for pesticide data require a staff analysis to determine whether the requested data is trade secret.

*We are not opposed to a strong trade secret law, only object to the payment of damages by the state for inadvertent disclosure. Author is aware of our concerns and has promised to amend bill to remove our concern*

STATE-MANDATED LOCAL PROGRAM    Yes ☐    No ☒

OFFICIAL POSITION:         OPPOSE, *unless amended*

DEPARTMENT DIRECTOR
*Clare Berryhill*

DATE 3-7-82    RW 3-14

| Governor's office use |
|---|
| Position noted |
| Position approved ✓ |
| Position disapproved |

Exhibit 1 - Page 13

# ANALYSIS

480-1

| DEPARTMENT | AUTHOR | BILL NUMBER |
|---|---|---|
| FOOD AND AGRICULTURE | Assemblyman Harris | AB 3738 |
| SPONSORED BY | RELATED BILLS | DATE LAST AMENDED |
| Department of Food and Agriculture | | May 12, 1982 |

## BILL SUMMARY

MAJOR BILL

### SUMMARY

This Act provides that actual or threatened misappropriation (as defined in the Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

### Specific Findings:

In the Amendment, the author deleted his definition of "Trade Secret" and recognized the definition in Section 6254.7 of the Government Code. Other changes also recognize existing law.

### Fiscal Impact:

AB 3738, as amended and in its original form, could expose the Department to liability for an error of judgment by staff who must process Public Records Act requests.

### Conclusion:

These changes, in the May 12, 1982 version, do not affect the prior analysis of this Bill.

---

STATE-MANDATED LOCAL PROGRAM   Yes ▢   No ▢   $ _____

OFFICIAL POSITION:
OPPOSE

| | | | Governor's office use |
|---|---|---|---|
| | | | Position noted |
| | | | Position approved |
| DEPARTMENT DIRECTOR | | DATE | Position disapproved |
| | | | by: _____ date: _____ |

Exhibit 1 - Page 14

# GENERAL ⊛ ELECTRIC

NUCLEAR ENERGY BUSINESS OPERATIONS
GENERAL ELECTRIC COMPANY ● 175 CURTNER AVENUE ● SAN JOSE, CALIFORNIA 95125

March 29, 1983

IJJ-061-83

Assemblyman Elihu M. Harris
State Capitol
Sacramento, California 95814

Subject:  COMMENTS OF GENERAL ELECTRIC COMPANY RESPECTING THE
          PROPOSED CALIFORNIA UNIFORM TRADE SECRETS ACT
              -   Assembly Bill No. 501   -  Harris

Dear Assemblyman Harris:

We have carefully reviewed Assembly Bill No. 501 which you introduced
on February 7, 1983.  It appears very similar to Assembly Bill No. 3738
which you introduced last year.  We note that the text of Assembly Bill
No. 501 is patterned generally after the Uniform Trade Secrets Act
("Uniform Act") drafted by the National Conference of Commissioners on
Uniform State Laws in 1979 and adopted in several other States,
specifically Minnesota, Kansas, Idaho, Washington, Arkansas, Delaware,
Louisiana, and Indiana.

Especially considering the extent to which the so-called "high
technology" industry of the United States is centered within California
and the recent publicity alleging existence of predatory practices by
foreign organizations in illicit acquisition of others' high technology
trade secrets, we believe that establishment of a Uniform Trade Secrets
Act in California is advantageous.  General Electric Company therefore
supports this proposed legislation, subject to adoption of several changes
which we believe highly desirable.

The principal changes we propose are discussed below in some detail,
and are illustrated in annotations to the attached copy of Assembly Bill
No. 501.

## Section 3426.3(b) - Reasonable Royalties

We urge that a new Section 3426.3(b) be added to allow for an award
of reasonable royalties when damages and unjust enrichment are not provable.
A circumstance in which this remedy would be appropriate is one in which
misappropriated information concerns an unsuccessful line of experimenta-
tion, which information would save the misappropriator from spending R&D
funds needlessly, but would not necessarily result in provable damages or
unjust enrichment.  The proposed change reflects Resolution No. 206-4

Exhibit 1 - Page 15

# GENERAL ⊛ ELECTRIC

Assemblyman Elihu M. Harris
March 29, 1983
Page 2

adopted by the American Bar Association's Patent, Trademark, and Copyright Law Section, August, 1981 Meeting (copy attached).  Similar language was also used in Section 24-2-3-3(b) of the Indiana Code, copy attached.

Adoption of new Section 3426.3(b) as proposed above would require redesignation of Section 3426.3(b) in Assembly Bill No. 501 as 3426.3(c). Further, addition of a reference to redesignated Section 3426.3(b) at the end of redesignated Section 3426.3(c) would seem appropriate.  These editorial changes are also shown on the attached Assembly Bill No. 501 annotated.

## Section 3426.8 - Contractual Rights and Remedies

We urge that a new Section 3426.8 be added to clarify that contractual rights and remedies for trade secret misappropriation are not affected by Assembly Bill No. 501.  Judging from the Assembly's Judiciary Committee analysis of Assembly Bill No. 3738 last year, the proposed amendment reflects the intent of the authors of that Bill.  From our viewpoint, the amendment clarifies what could be an obstacle in future litigation.  This type of amendment is supported by Resolution No. 206-3 adopted by the ABA Patent, Trademark, and Copyright Section Meeting of August, 1981 referred to above, copy attached.  Although slightly differently worded, Section 24-2-3-1(c) of the Indiana Statute, copy attached, reflects this same intent.

Adoption of new Section 3426.8 as proposed above would require redesignation of Sections 3426.8, 3426.9, and 3426.10 as Sections 3426.9, 3426.10 and 3426.11, respectively.  These editorial changes are also shown on the attached Assembly Bill No. 501 annotated.

## Section 3426.12 - Continuing Misappropriation

We urge that new Section 3426.12 be added to supplement Section 3426.10 (redesignated Section 3426.11 in the attached Assembly Bill No. 501 annotated) to clarify the status of trade secret misappropriations continuing through the effective date of the Act.  This amendment would obviously be useful in cases of misappropriations beginning before and continuing through January 1, 1984, and would not appear to be controversial.  Indiana Code Section 24-2-3-8 is relevant, copy attached, and our proposed Section 3426.12 is patterned after that Indiana Code Section.

Exhibit 1 - Page 16

# GENERAL ⊛ ELECTRIC

Assemblyman Elihu M. Harris
March 29, 1983
Page 3


Conclusion

    We believe the changes proposed above will improve the proposed statute, and we ask favorable consideration of these proposals.

                         Yours very truly,

                         GENERAL ELECTRIC COMPANY

                    By_____
                         Ivor J. James, Jr.
                         Patent Counsel -
                         Nuclear Energy Business
                            Operations

IJJ/ci

attachments

Exhibit 1 - Page 17

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

# ASSEMBLY BILL     No. 501

### Introduced by Assemblyman Harris

RECEIVED
MAR 1 4 1983
IVOR J. JAMES, JR

February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as introduced, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:
3
4    TITLE 5.   UNIFORM TRADE SECRETS ACT
5
6    3426.   This title may be cited as the Uniform Trade
7  Secrets Act.
8    3426.1.   As used in this title, unless the context requires
9  otherwise:
10    (a) "Improper   means"   includes   theft,   bribery,

99  40

Exhibit 1 - Page 18

**AB 501**                    — 2 —

1 misrepresentation, breach or inducement of a breach of
2 a duty to maintain secrecy, or espionage through
3 electronic or other means.
4    (b) "Misappropriation" means:
5    (1) Acquisition of a trade secret of another by a person
6 who knows or has reason to know that the trade secret
7 was acquired by improper means; or
8    (2) Disclosure or use of a trade secret of another
9 without express or implied consent by a person who:
10    (A) Used improper means to acquire knowledge of
11 the trade secret; or
12    (B) At the time of disclosure or use, knew or had
13 reason to know that his or her knowledge of the trade
14 secret was:
15    (i) Derived from or through a person who had utilized
16 improper means to acquire it;
17    (ii) Acquired under circumstances giving rise to a
18 duty to maintain its secrecy or limit its use; or
19    (iii) Derived from or through a person who owed a
20 duty to the person seeking relief to maintain its secrecy
21 or limit its use; or
22    (C) Before a material change of his or her position,
23 knew or had reason to know that it was a trade secret and
24 that knowledge of it had been acquired by accident or
25 mistake.
26    (c) "Person" means a natural person, corporation,
27 business trust, estate, trust, partnership, association, joint
28 venture, government, governmental subdivision or
29 agency, or any other legal or commercial entity.
30    (d) "Trade secret" means information, including a
31 formula, pattern, compilation, program, device, method,
32 technique, or process, that:
33    (1) Derives independent economic value, actual or
34 potential, from not being generally known to, and not
35 being readily ascertainable by proper means by, other
36 persons who can obtain economic value from its
37 disclosure or use; and
38    (2) Is the subject of efforts that are reasonable under
39 the circumstances to maintain its secrecy.
40    3426.2.  (a) Actual or threatened misappropriation

99  70

Exhibit 1 - Page 19

— 3 —                                        AB 501

1 may be enjoined. Upon application to the court, an
2 injunction shall be terminated when the trade secret has
3 ceased to exist, but the injunction may be continued for
4 an additional reasonable period of time in order to
5 eliminate commercial advantage that otherwise would
6 be derived from the misappropriation.
7   (b) If the court determines that it would be
8 unreasonable to prohibit future use, an injunction may
9 condition future use upon payment of a reasonable
10 royalty for no longer than the period of time the use could
11 have been prohibited.
12   (c) In appropriate circumstances, affirmative acts to
13 protect a trade secret may be compelled by court order.
14   3426.3.  (a) In addition to or in lieu of injunctive
15 relief, a complainant may recover damages for the actual
16 loss caused by misappropriation. A complainant also may
17 recover for the unjust enrichment caused by
18 misappropriation that is not taken into account in
19 computing damages for actual loss.
20   (c)(b) If willful and malicious misappropriation exists,
21 the court may award exemplary damages in an amount
22 not exceeding twice any award made under subdivision
23 (a) or (b).
24   3426.4.  If a claim of misappropriation is made in bad
25 faith, a motion to terminate an injunction is made or
26 resisted in bad faith, or willful and malicious
27 misappropriation exists, the court may award reasonable
28 attorney's fees to the prevailing party.
29   3426.5.  In an action under this title, a court shall
30 preserve the secrecy of an alleged trade secret by
31 reasonable means, which may include granting
32 protective orders in connection with discovery
33 proceedings, holding in-camera hearings, sealing the
34 records of the action, and ordering any person involved
35 in the litigation not to disclose an alleged trade secret
36 without prior court approval.
37   3426.6.  An action for misappropriation must be
38 brought within three years after the misappropriation is
39 discovered or by the exercise of reasonable diligence
40 should have been discovered. For the purposes of this

*(b) When neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period during which the use could be enjoined.*

99  100

Exhibit 1 - Page 20

AB 501                              —4—

1  section, a continuing misappropriation constitutes a
2  single claim.
3    3426.7.   Except as otherwise expressly provided, this
4  title does not supersede any statute relating to
5  misappropriation of a trade secret, or any statute
6  otherwise regulating trade secrets.
7    3426.8.   This title shall be applied and construed to
8  effectuate its general purpose to make uniform the law
9  with respect to the subject of this title among states
10  enacting it.
11    3426.9.   If any provision of this title or its application
12  to any person or circumstances is held invalid, the
13  invalidity does not affect other provisions or applications
14  of the title which can be given effect without the invalid
15  provision or application, and to this end the provisions of
16  this title are severable.
17    3426.10.   This title does not apply to misappropriation
18  occurring prior to January 1, 1984.

*[Handwritten annotations in left margin:]*

3426.8  This title shall not affect any contractual rights or remedies.

3426.9

3426.10

3426.11

3426.12  If a continuing misappropriation otherwise covered by this title began before January 1, 1984, this title does not apply to the part of the misappropriation occurring before that date. It does apply to the part occurring after January 1, 1984, unless the appropriation was not a misappropriation under the law in effect before ~~that date~~ this title.

O

99  110

Exhibit 1 - Page 21

# Indiana Code

## TITLE 24

## TRADE REGULATIONS, CONSUMER SALES AND CREDIT

ARTICLE.
2. TRADEMARKS, ch. 3.
4.5. UNIFORM CONSUMER CREDIT CODE, chs. 1-3, 5.
5. CONSUMER SALES, ch. 0.5.

## ARTICLE 2

## TRADEMARKS

CHAPTER.
3. TRADE SECRETS, 24-2-3-1 — 24-2-3-8.

## CHAPTER 3

## TRADE SECRETS

SECTION.
24-2-3-1. Title and construction of chapter.
24-2-3-2. Definitions.
24-2-3-3. Misappropriation — Injunction — Payment of royalties.
24-2-3-4. Misappropriation — Damages.
24-2-3-5. Attorney's fees.

SECTION.
24-2-3-6. Preservation of trade secret — Court actions authorized.
24-2-3-7. Statute of limitations.
24-2-3-8. Application to misappropriations beginning before September 1, 1982.

**24-2-3-1. Title and construction of chapter.** — (a) This chapter may be cited as the Uniform Trade Secrets Act.

(b) This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject matter of this chapter among states enacting the provisions of this chapter.

(c) This chapter displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law. [IC 24-2-3-1, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-2. Definitions.** — As used in this chapter, unless the context requires otherwise:

"Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

"Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

1

(A) Used improper means to acquire knowledge of the trade secret;

(B) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. [IC 24-2-3-2, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-3.  Misappropriation — Injunction — Payment of royalties.** — (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) When neither damages nor unjust enrichment are provable, the court may order payment of a reasonable royalty for no longer than the period during which the use could have been prohibited.

(c) If the court determines in exceptional circumstances that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(d) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order. [IC 24-2-3-3, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-4.  Misappropriation — Damages.** — (a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

(b) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a). [IC 24-2-3-4, as added by Acts 1982, P.L. 148, § 1.]

Exhibit 1 - Page 23

**3**

**24-2-3-5.  Attorney's fees. — If:**
(1) A claim of misappropriation is made in bad faith;
(2) A motion to terminate an injunction is made or resisted in bad faith;
or
(3) Willful and malicious misappropriation exists;
the court may award reasonable attorney's fees to the prevailing party. [IC 24-2-3-5, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-6.  Preservation of trade secret — Court actions authorized.** — In an action under this chapter, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval. [IC 24-2-3-6, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-7.  Statute of limitations. — An action for misappropriation** must be brought within three [3] years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim. [IC 24-2-3-7, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-8.  Application to misappropriations beginning before September 1, 1982.** — If a continuing misappropriation otherwise covered by this chapter began before September 1, 1982, the chapter does not apply to the part of the misappropriation that occured before that date. It does apply to the part that occurs after August 31, 1982, unless the appropriation was not a misappropriation under the law displaced by this chapter. [IC 24-2-3-8, as added by Acts 1982, P.L. 148, § 1.]

## ARTICLE 4.5
### UNIFORM CONSUMER CREDIT CODE

CHAPTER.
1. GENERAL PROVISIONS AND DEFINITIONS, 24-4.5-1-202, 24-4.5-1-302.
2. CREDIT SALES, 24-4.5-2-207, 24-4.5-2-602, 24-4.5-2-604.
3. LOANS, 24-4.5-3-201, 24-4.5-3-501.

CHAPTER.
4. 24-4.5-3-506, 24-4.5-3-511, 24-4.5-3-602, 24-4.5-3-604.
5. REMEDIES AND PENALTIES, 24-4.5-5-105, 24-4.5-5-204.

## CHAPTER 1
### GENERAL PROVISIONS AND DEFINITIONS

SECTION.
PART 2. SCOPE AND JURISDICTION
24-4.5-1-202.  Exclusions.
PART 3. DEFINITIONS
24-4.5-1-302.  Federal Consumer Credit Protection Act.

Exhibit 1 - Page 24

7/20/82

ATTACHMENT

Resolutions adopted by the American Bar Association's
Patent, Trademark, and Copyright Law Section, August 1981:

## Resolution No. 206-3

RESOLVED, that the Section of Patent, Trademark and Copyright
Law favors in principle that the remedies for a breach of
contract shall not be displaced by trade secret law; and
specifically, the Section favors amendment of Section 7 of
the Uniform Trade Secrets Act ("Act:) which was approved by
the National Conference of Commissioners on Uniform State Laws
in August, 1979 to clarify that the Act does not effect such
displacement.

## Resolution No. 206-4

RESOLVED, that the Section of Patent, Trademark and Copyright
Law favors in principle the remedy of a reasonable royalty when
neither damages nor unjust enrichment are provable in trade
secret cases; and specifically, the Section favors amendment
of Section 3 of the Uniform Trade Secrets Act which was approved
by the National Conference of Commissioners on Uniform State
Laws in August, 1979 to so provide.

## Resolution No. 206-6

RESOLVED, that the Section of Patent, Trademark and Copyright
Law favors in principle the application of the Uniform Trade
Secrets Act ("Act") which was approved by the National Conference
of Commissioners on Uniform State Laws in August, 1979 only in
cases in which misappropriation begins after the effective
date of the Act; and specifically, the Section favors amendment
of Section 11 of the Act to clarify that the Act does not apply
to a continuing misappropriation which begins prior to the
effective date of the Act.

Exhibit 1 - Page 25



# THE STATE BAR OF CALIFORNIA

*Office of the Legislative Representative*

1210 K STREET                                      SACRAMENTO, CALIFORNIA 95814

TELEPHONE (916) 444-2762

April 5, 1983

The Honorable Elihu Harris
Assemblyman, 13th District
State Capitol, Room 6031
Sacramento, CA  95814

Dear Assemblyman *Elelose:*

RE:  Assembly Bill 501

The State Bar Patent, Trademark and Copyright Section has reviewed the above-referenced measure and its comments and position are enclosed herewith.

It is the policy of the State Bar to refer various measures which affect the practice of law to the State Bar Committees or Sections for review and comment.  The Patent, Trademark and Copyright Section, composed of legal experts and attorney practitioners in the area of patent, trademark and copyright law, has reviewed your measure and expressed the enclosed concerns.  The comments are intended to provide input to the legislative process from the expertise and legal resources of the constituency of the State Bar. It should be emphasized that its position and comments are those of the Patent, Trademark and Copyright Section and not the State Bar.

The Office of the Legislative Representative may be contacted for further information.

Sincerely

Peter Jensen
Legislative Representative

PJ:mr

enc.

cc:  Rubin Lopez, Consultant
     Assembly Judiciary Committee

Exhibit 1 - Page 26

March 28, 1983

<u>ASSEMBLY BILL 501</u>

<u>COMMENTS BY THE PATENT, TRADEMARK AND COPYRIGHT SECTION</u>

I.      Background

The subject bill would codify the trade secret law
in California.  The Supreme Court has recognized the propriety
of intellectual property rights (as trade secret rights)
enforceable by state laws (<u>Kewanee Oil Co. v. Bicron Corp.</u>
(S.Ct. 1974), 181 U.S.P.Q. 673.  Such rights have been held
enforceable for as long as the embodying product is sold
(<u>Aronson v. Quick Point Pencil Company</u> (S.Ct. 1979), 201
U.S.P.Q. 1).

In California the law of trade secrets is established
by case law, see <u>Monolith Portland Midwest Company v. Kaiser
Aluminum & Chemical Corporation et al</u>. (C.A. 9 1969), 160
U.S.P.Q. 577.  Generally, California recognizes the restatement
definition of a trade secret, i.e. information which gives a
party an opportunity to obtain an advantage over competitors
(<u>Restatement of Torts</u>, Paragraph 757; <u>Walker v. University
Books, Inc. et al.</u> (C.A. 9 1979), 202 U.S.P.Q. 793).  A
trade secret may constitute a customer list if the list is
truly secret (<u>Mayview Corporation et al. v. Rodstein et al.</u>
(C.A. 9 1973), 178 U.S.P.Q. 449).

A two-year statute of limitations is applicable
to the California law of trade secrets (California Code of
Civil Procedure, Section 339).

-1-

Exhibit 1 - Page 27

To support a cause of action for trade secret violation in California, a plaintiff must allege ultimate facts showing the existence of a specific trade secret. Under case law, general allegations of designs, processes, techniques, and know-how are inadequate (Diodes, Inc. v. Franzen et al., 260 C.A.2d 244, 252). Unfortunately, the authority is not always followed. Any trade secret legislation should afford protection against unsupported trade secret litigation.

II.   Summary of Proposed Legislation

AB 501 defines a trade secret in a rather limited context as a basis for injunctive relief. It provides for an injunction that shall be terminated when the trade secret has ceased to exist. The bill provides for permissive damages of the actual loss and exemplary damages if a misappropriation is "willful and malicious".

III.   Section Position

Oppose unless amended.

IV.   Reasons for Position

A.   The subject matter of trade secret litigation is almost invariably complex and difficult. The profits from pirating a trade secret can be considerable with

-2-

Exhibit 1 - Page 28

extreme losses to the owner of the trade secret.  Consequently,
trade secrets can be enticing to former employees.  From the
opposite point of view, the trade secret law poses a threat
for use by employers to restrain departed employees with
baseless trade secret claims.

Against such a background, it is submitted
that this legislation should be carefully analyzed and
thoroughly considered by persons having a broad base of
experience in the field.

B.  The following specific changes are now urged
in Assembly Bill 501:

1.  Page 2, lines 34-35, delete:  ", and not
being readily ascertainable by proper means by,".

COMMENT:

The clause is somewhat redundant.  Presumably,
it is intended to further limit the preceding clause.
However, if information "derives independent economic
value,...from not being generally known" (page 2, lines 33,
34), it likely is not "readily ascertainable".

More significantly, the objectionable
language could cast a cloud on most trade secrets by introducing
another test.  It would invite an argument in almost every
trade secret case that, "since the 'trade secret' could have
been reverse engineered, or could have been learned from a

-3-

Exhibit 1 - Page 29

literature search, or could have been compiled from other
knowledge, it was 'readily ascertainable'".

The objectionable language would complicate
the legal processes and impact negatively on trade secret
rights by imposing another criterion.

2.   Page 3, line 4, delete:  "reasonable".

COMMENT:

The word is redundant.  The bill specifies
that an injunction be for a "period of time in order to
eliminate commercial advantage" (page 3, line 5).  Adding
the word "reasonable" to the stated time criterion will only
promote confusion.

3.   Page 3, line 14, delete:  "or in lieu of".

COMMENT:

It is submitted to be inappropriate to
suggest the substitution of damages for injunctive relief.
Plaintiff should be made whole where possible and the
trade secrets should be preserved.

4.   Page 3, line 20, change "and" to --or--
(connecting "willful and malicious").

COMMENT:

It is difficult to prove that an activity
was "willful" or that it was "malicious".  Either occurrence

-4-

Exhibit 1 - Page 30

is submitted as sufficient to constitute a basis for exemplary damages.

5.  Page 4, line 19, add:

--3426.11  A person alleging trade secret misappropriation under this Title shall, before commencing discovery relating to the trade secret cause, and in no event later than thirty days after filing the action, identify the trade secrets in issue with particularity subject to such orders as may be appropriate under §3426.5.---

COMMENT:

The addition is intended to codify <u>Diodes, Inc.</u> and afford a measure of protection against the procedure of initiating an action to pursue extensive discovery without revelation of the trade secret or secrets.

These are the conclusions of several individual practitioners in the field.  It would be wise and helpful to allow thirty days to check the conclusions with a broader spectrum of practitioners.

-5-

Exhibit 1 - Page 31

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 1 - Page 32

AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983–84 REGULAR SESSION

# ASSEMBLY BILL                           No. 501

### Introduced by Assemblyman Harris

### February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, *to add Section 2036.2 to the Code of Civil Procedure, and to add Section 6266 to the Government Code,* relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.   Uniform Trade Secrets Act.
Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, *or other relief,* requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

98   60

Exhibit 1 - Page 33

AB 501                          — 2 —

# TITLE 5.   UNIFORM TRADE SECRETS ACT

3426.   This title may be cited as the Uniform Trade Secrets Act.

3426.1.   As used in this title, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or

98  70

Exhibit 1 - Page 34

1  potential, from not being generally known to, and not
2  being readily ascertainable by proper means by, other
3  persons who can obtain economic value from its
4  disclosure or use; and
5      (2) Is the subject of efforts that are reasonable under
6  the circumstances to maintain its secrecy.
7      3426.2.   (a)  Actual or threatened misappropriation
8  may be enjoined. Upon application to the court, an
9  injunction shall be terminated when the trade secret has
10  ceased to exist, but the injunction may be continued for
11  an additional ~~reasonable~~ period of time in order to
12  eliminate commercial advantage that otherwise would
13  be derived from the misappropriation.
14      (b) If the court determines that it would be
15  unreasonable to prohibit future use, an injunction may
16  condition future use upon payment of a reasonable
17  royalty for no longer than the period of time the use could
18  have been prohibited.
19      (c) In appropriate circumstances, affirmative acts to
20  protect a trade secret may be compelled by court order.
21      3426.3.   (a)  ~~In addition to or in lieu of injunctive~~
22  ~~relief, a~~ *A* complainant may recover damages for the
23  actual loss caused by misappropriation. A complainant
24  also may recover for the unjust enrichment caused by
25  misappropriation that is not taken into account in
26  computing damages for actual loss.
27      *(b)  If neither damages nor unjust enrichment caused*
28  *by misappropriation are provable, the court may order*
29  *payment of a reasonable royalty for no longer than the*
30  *period of time the use could have been prohibited.*
31      ~~(b)~~
32      *(c)*  If willful and malicious misappropriation exists,
33  the court may award exemplary damages in an amount
34  not exceeding twice any award made under subdivision
35  (a) *or (b).*
36      3426.4.   If a claim of misappropriation is made in bad
37  faith, a motion to terminate an injunction is made or
38  resisted in bad faith, or willful and malicious
39  misappropriation exists, the court may award reasonable
40  attorney's fees to the prevailing party.

Exhibit 1 - Page 35

AB 501                          — 4 —

1     3426.5.  In an action under this title, a court shall
2  preserve the secrecy of an alleged trade secret by
3  reasonable means, which may include granting
4  protective orders in connection with discovery
5  proceedings, holding in-camera hearings, sealing the
6  records of the action, and ordering any person involved
7  in the litigation not to disclose an alleged trade secret
8  without prior court approval.
9     3426.6.  An action for misappropriation must be
10  brought within three years after the misappropriation is
11  discovered or by the exercise of reasonable diligence
12  should have been discovered. For the purposes of this
13  section, a continuing misappropriation constitutes a
14  single claim.
15     3426.7.  Except as otherwise expressly provided, this
16  title does not supersede any statute relating to
17  misappropriation of a trade secret, or any statute
18  otherwise regulating trade secrets.
19     *3426.8.  This title does not affect any contractual rights*
20  *or remedies.*
21     ~~3426.8.~~
22     *3426.9.*  This title shall be applied and construed to
23  effectuate its general purpose to make uniform the law
24  with respect to the subject of this title among states
25  enacting it.
26     ~~3426.9.~~
27     *3426.10.*  If any provision of this title or its application
28  to any person or circumstances is held invalid, the
29  invalidity does not affect other provisions or applications
30  of the title which can be given effect without the invalid
31  provision or application, and to this end the provisions of
32  this title are severable.
33     ~~3426.10.~~
34     *3426.11.*  This title does not apply to misappropriation
35  occurring prior to January 1, 1984.  *If a continuing*
36  *misappropriation otherwise covered by this title began*
37  *before January 1, 1984, this title does not apply to the part*
38  *of the misappropriation occurring before that date. This*
39  *title does apply to the part of the misappropriation*
40  *occurring on or after that date unless the appropriation*

Exhibit 1 - Page 36

1   *was not a misappropriation under the law in effect before*
2   *the operative date of this title.*
3       *SEC. 2.   Section 2036.2 is added to the Code of Civil*
4   *Procdure, to read:*
5       *2036.2.   In any action alleging the misappropriation of*
6   *a trade secret under the Uniform Trade Secrets Act*
7   *(Title 5 (commencing with Section 3426) of Part 1 of*
8   *Division 4 of the Civil Code), before commencing*
9   *discovery relating to the trade secret under Chapter 2*
10  *(commencing   with   Section   1985)   or   Article   3*
11  *(commencing with Section 2016) of Chapter 3 of this*
12  *title, the party alleging the misappropriation shall*
13  *identify the trade secret with particularity subject to any*
14  *orders which may be appropriate under Section 3426.5 of*
15  *the Civil Code.*
16      *SEC. 3.   Section 6266 is added to the Government*
17  *Code, to read:*
18      *6266.   If the disclosure of a public record under this*
19  *chapter constitutes a misappropriation of a trade secret*
20  *under the Uniform Trade Secrets Act (Title 5*
21  *(commencing with Section 3426) of Part 1 of Division 4*
22  *of the Civil Code), damages may not be recovered*
23  *against the state or local agency or its employees unless*
24  *the disclosure was made in bad faith.*

O

98   160

Exhibit 1 - Page 37

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
## LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
## 1 (888) 676-1947

Exhibit 1 - Page 38

ASSEMBLY COMMITTEE ON JUDICIARY
ELIHU M. HARRIS, Chairman                          AB 501


AB 501 (Harris) As amended 04/21/83

SUBJECT

This bill is intended to enact the Uniform Trade Secrets Act.

DIGEST

This bill would establish a statutory scheme to protect trade
secrets, known as the Uniform Trade Secrets Act.  Among other
things, the bill would:

-   enact a series of definitions.  Trade secret is defined
    as information that (1) derives independent economic
    value from not being generally known to, and not being
    readily ascertainable by proper means by, other persons
    who can obtain economic value from its disclosure or
    use; and (2) is the subject of efforts that are
    reasonable under the circumstances to maintain its
    secrecy.

-   provide for the enjoining of actual or threatened
    misappropriation, as defined, of a trade secret.

-   permit a complainant to recover actual damages for the
    loss caused by the improper acquisition or disclosure of
    a trade secret.  Provision is also made for recovery for
    the unjust enrichment caused by misappropriation.  If
    neither damages nor unjust enrichment caused by
    misappropriation are provable, the court may order
    payment of a reasonable royalty for no longer than the
    period the use could have been prohibited.  Exemplary
    damages would be permitted for willful and malicious
    misappropriation.

-   authorize the award of reasonable attorneys' fees to the
    prevailing party where a claim of misappropriation is
    made in bad faith or a motion to terminate an injunction
    is made or resisted in bad faith, or where willful and
    malicious misappropriation is found.

-   authorize a court to use reasonable means, such as
    protective orders, sealing of records and in-camera
    hearings, to preserve the secrecy of a trade secret in
    an action under the Act.


                                        (CONTINUED)

Consultant R. LeBov                          AB 501
04/25/83                                     Page 1
                                        Exhibit 1 - Page 39

- provide that an action for misappropriation must be brought within 3 years after it was discovered or, through reasonable diligence, should have been discovered.

- provide that the Act does not affect any contractual rights or remedies and that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret or otherwise regulations trade secrets.

- provide that, in any action alleging misappropriation under the Act, before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with particularity, subject to any protective orders which may be appropriate.

- immunize state and local public agencies from damages for disclosure, under the Public Records Act, of a public record constituting a misappropriation of a trade secret unless the disclosure was made in bad faith.

The bill's provisions would not apply to misappropriation occurring prior to January 1, 1984.  The Act would apply to the part of a continuing misappropriation occurring on or after that date unless it was not a misappropriation under the law in effect before the bill's operative date.

STAFF COMMENTS

1.  This bill would enact the Uniform Trade Secrets Act in California.  That Act was drafted and recommended for enactment in all states by the National Conference of Commissioners on Uniform State Laws in 1979; and was approved by the American Bar Association in 1980.  It has been enacted in at least 8 other states (Minnesota, Kansas, Idaho, Washington, Arkansas, Delaware, Louisiana, and Indiana).

   In its prefatory note to the Act, the National Conference stated that "there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret."  The prefatory note further states that "like traditional trade secret law, the Uniform Act contains general concepts.  The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law.  The Uniform Act also codifies the

(CONTINUED)

results of the better reasoned cases concerning the remedies for trade secret misappropriation."

2.  Existing California statutory law contains a number of other provisions which define or otherwise affect trade secrets. For example, Penal Code Section 499c provides for criminal penalties for misappropriation of trade secrets.  This bill, which provides for civil remedies, is generally not intended to affect any of the existing provisions.  It states that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

3.  The Patent, Trademark and Copyright Section of the State Bar has expressed concern with this bill's definition of "trade secret."  Specifically, the Section feels that it "would invite an argument in almost every trade secret case that, since the trade secret could have been reverse engineered, or could have been learned from a literature search, or could have been compiled from other knowledge, it was 'readily ascertainable'".

    The Uniform Commissioners' comment on the definition of trade secret states that "one of the broadly stated policies behind trade secret law is the maintenance of standards of commercial ethics."  The commissioners point out that the Restatement of Torts notes that "proper means" includes, among other things, "discovery by 'reverse engineering,' that is, by starting with the known product and working backward to find the method by which it was developed.  The acquisition of the known product must, of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful."  Under the Restatement, "proper means" also includes discovery by independent invention, discovery under a license from the owner of the trade secret, observation of the item in public use or on public display, or obtaining the trade secret from published literature.

4.  California Rural Legal Assistance is concerned that this measure might be construed to limit public access to pesticide testing data under the Public Records Act.  That Act exempts, from required disclosure, records which may not be disclosed pursuant to provisions of state law. (Government Code Section 6254)

    According to CRLA, "there is a body of data submitted to the Department of Food and Agriculture relative to the health and environmental hazards and efficacy of pesticides that it licenses and regulates.  It is crucial that the public have access to the data so that the public can participate in the

(CONTINUED)

Consultant R. LeBov                                   AB 501
04/25/83                                              Page 3

Exhibit 1 - Page 41

Department's regulatory decisions."  Would this bill inappropriately restrict public access to health and safety testing data submitted to regulatory and licensing agencies?

SOURCE

National Conference of Commissioners on Uniform State Laws

SUPPORT

General Electric
Ford Motor Company

OPPOSITION

Unknown

Consultant R. LeBov
04/25/83

AB 501

Exhibit 1 - Page 43

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 1 - Page 44

# NO ANALYSIS REQ'D

| Department | Bill Number |
|---|---|
| FOOD AND AGRICULTURE | AB 501 |
| National Conference of Commissioners on Uniform State Law. | Date Last Printed 4/21/83 |

☐ — Analysis not required of this bill – not within scope of responsibility of this department.

☐ — Technical Bill – no program or fiscal changes to existing program.

☐ — Bill as amended no longer within scope of responsibility or program of the department and should be reviewed for reassignment to another department.

☐ — Technical Amendment – No change in previously submitted analysis required. Approved position of prior analysis is _____.

☐ — Minor Amendment – Previously submitted analysis still valid. Previously approved position is _____.

☐ — Minor Amendment – No change in approved position of _____. See comments below.

☑ — Other

Comments: The Department's previous position was to oppose the bill unless it was amended. This was because the Department was concerned that it might be liable for an inadvertant disclosure of trade secret data. The author has amended the bill so that State and local agencies and their employees are not liable for misappropriation of a trade secret unless the disclosure was made in bad faith. This amendment would exempt the Department from liability in case of an honest mistake. The recommended official position is neutral.

We can be neutral now, our concerns have been addressed

| Department | Date |
|---|---|
| | 5/12/83 |

Exhibit 1 - Page 45

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 1 - Page 46

AMENDED IN ASSEMBLY MAY 3, 1983

~~AMENDED IN ASSEMBLY APRIL 21, 1983~~

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

# ASSEMBLY BILL                                      No. 501

## Introduced by Assemblyman Harris

### February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code , *and* to add Section 2036.2 to the Code of Civil Procedure , ~~and to add Section 6266 to the Government Code~~, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

97   40

Exhibit 1 - Page 47

AB 501 — 2 —

1    TITLE 5.   UNIFORM TRADE SECRETS ACT
2
3    3426.   This title may be cited as the Uniform Trade
4  Secrets Act.
5    3426.1.   As used in this title, unless the context requires
6  otherwise:
7    (a) "Improper means" includes theft, bribery,
8  misrepresentation, breach or inducement of a breach of
9  a duty to maintain secrecy, or espionage through
10  electronic or other means.
11    (b) "Misappropriation" means:
12    (1) Acquisition of a trade secret of another by a person
13  who knows or has reason to know that the trade secret
14  was acquired by improper means; or
15    (2) Disclosure or use of a trade secret of another
16  without express or implied consent by a person who:
17    (A) Used improper means to acquire knowledge of
18  the trade secret; or
19    (B) At the time of disclosure or use, knew or had
20  reason to know that his or her knowledge of the trade
21  secret was:
22    (i) Derived from or through a person who had utilized
23  improper means to acquire it;
24    (ii) Acquired under circumstances giving rise to a
25  duty to maintain its secrecy or limit its use; or
26    (iii) Derived from or through a person who owed a
27  duty to the person seeking relief to maintain its secrecy
28  or limit its use; or
29    (C) Before a material change of his or her position,
30  knew or had reason to know that it was a trade secret and
31  that knowledge of it had been acquired by accident or
32  mistake.
33    (c) "Person" means a natural person, corporation,
34  business trust, estate, trust, partnership, association, joint
35  venture, government, governmental subdivision or
36  agency, or any other legal or commercial entity.
37    (d) "Trade secret" means information, including a
38  formula, pattern, compilation, program, device, method,
39  technique, or process, that:
40    (1) Derives independent economic value, actual or

97  50

Exhibit 1 - Page 48

1 potential, from not being generally known to, and not
2 being readily ascertainable by proper means by, other
3 persons who can obtain economic value from its
4 disclosure or use; and
5   (2) Is the subject of efforts that are reasonable under
6 the circumstances to maintain its secrecy.
7   3426.2.   (a)  Actual or threatened misappropriation
8 may be enjoined. Upon application to the court, an
9 injunction shall be terminated when the trade secret has
10 ceased to exist, but the injunction may be continued for
11 an additional period of time in order to eliminate
12 commercial advantage that otherwise would be derived
13 from the misappropriation.
14   (b) If the court determines that it would be
15 unreasonable to prohibit future use, an injunction may
16 condition future use upon payment of a reasonable
17 royalty for no longer than the period of time the use could
18 have been prohibited.
19   (c) In appropriate circumstances, affirmative acts to
20 protect a trade secret may be compelled by court order.
21   3426.3.   (a)  A complainant may recover damages for
22 the actual loss caused by misappropriation. A
23 complainant also may recover for the unjust enrichment
24 caused by misappropriation that is not taken into account
25 in computing damages for actual loss.
26   (b) If neither damages nor unjust enrichment caused
27 by misappropriation are provable, the court may order
28 payment of a reasonable royalty for no longer than the
29 period of time the use could have been prohibited.
30   (c) If willful and malicious misappropriation exists, the
31 court may award exemplary damages in an amount not
32 exceeding twice any award made under subdivision (a)
33 or (b).
34   3426.4.  If a claim of misappropriation is made in bad
35 faith, a motion to terminate an injunction is made or
36 resisted in bad faith, or willful and malicious
37 misappropriation exists, the court may award reasonable
38 attorney's fees to the prevailing party.
39   3426.5. In an action under this title, a court shall
40 preserve the secrecy of an alleged trade secret by

97  70

Exhibit 1 - Page 49

AB 501                           — 4 —

1 reasonable means, which may include granting
2 protective orders in connection with discovery
3 proceedings, holding in-camera hearings, sealing the
4 records of the action, and ordering any person involved
5 in the litigation not to disclose an alleged trade secret
6 without prior court approval.
7   3426.6.  An action for misappropriation must be
8 brought within three years after the misappropriation is
9 discovered or by the exercise of reasonable diligence
10 should have been discovered. For the purposes of this
11 section, a continuing misappropriation constitutes a
12 single claim.
13   3426.7.  *(a)*  Except as otherwise expressly provided,
14 this title does not supersede any statute relating to
15 misappropriation of a trade secret, or any statute
16 otherwise regulating trade secrets.
17   *(b) This title does not affect the disclosure of a public*
18 *record by a state or local agency under the California*
19 *Public Records Act (Chapter 3.5 (commencing with*
20 *Section 6250) of Division 7 of Title 1 of the Government*
21 *Code). Any determination as to whether the disclosure of*
22 *a public record constitutes a misappropriation of a trade*
23 *secret and the rights and remedies with respect thereto*
24 *shall be made pursuant to the law in effect before the*
25 *operative date of this title.*
26   3426.8.  This title does not affect any contractual rights
27 or remedies.
28   3426.9.  This title shall be applied and construed to
29 effectuate its general purpose to make uniform the law
30 with respect to the subject of this title among states
31 enacting it.
32   3426.10.  If any provision of this title or its application
33 to any person or circumstances is held invalid, the
34 invalidity does not affect other provisions or applications
35 of the title which can be given effect without the invalid
36 provision or application, and to this end the provisions of
37 this title are severable.
38   3426.11.  This title does not apply to misappropriation
39 occurring prior to January 1, 1984. If a continuing
40 misappropriation otherwise covered by this title began

97   100

Exhibit 1 - Page 50

1 before January 1, 1984, this title does not apply to the part
2 of the misappropriation occurring before that date. This
3 title does apply to the part of the misappropriation
4 occurring on or after that date unless the appropriation
5 was not a misappropriation under the law in effect before
6 the operative date of this title.
7    SEC. 2.   Section 2036.2 is added to the Code of Civil
8 Procdure, to read:
9    2036.2.   In any action alleging the misappropriation of
10 a trade secret under the Uniform Trade Secrets Act
11 (Title 5 (commencing with Section 3426) of Part 1 of
12 Division 4 of the Civil Code), before commencing
13 discovery relating to the trade secret under Chapter 2
14 (commencing with Section 1985) or Article 3
15 (commencing with Section 2016) of Chapter 3 of this
16 title, the party alleging the misappropriation shall
17 identify the trade secret with particularity subject to any
18 orders which may be appropriate under Section 3426.5 of
19 the Civil Code.
20 SEC. 3.   Section 6266 is added to the Government
21 Code, to read:
22    6266.   If the disclosure of a public record under this
23 chapter constitutes a misappropriation of a trade secret
24 under the Uniform Trade Secrets Act (Title 5
25 (commencing with Section 3426) of Part 1 of Division 4
26 of the Civil Code), damages may not be recovered
27 against the state or local agency or its employees unless
28 the disclosure was made in bad faith.

O

Exhibit 1 - Page 51

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 1 - Page 52

# BILL ANALYSIS

| DEPARTMENT | AUTHOR | BILL NUMBER |
|---|---|---|
| FOOD AND AGRICULTURE | Harris | AB 501 |
| SPONSORED BY | RELATED BILLS | DATE LAST AMEND |
| ASSEMBLY REPUBLICAN CAUCUS | | 5/3/83 |

## BILL SUMMARY

MAJOR BILL

This Act provides that actual or threatened misappropriation (as defined in the Uniform Trade Secrets Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

A. Specific Findings:

The Department had originally opposed this bill unless amended to provide that State agencies would not be liable for an inadvertent error. The April 21, 1983 version of the bill adequately addressed the Department's concerns by exempting state and local agencies from liability for disclosure of a trade secret unless the disclosure was made in bad faith; the Department changed its official position to neutral. The current amended version deleted the entire exemption section of the bill and added a subsection (Section 3426.7(b)) providing that "This title" (the Uniform Trade Secrets Act) "does not effect the disclosure of a public record by a state or local agency under the California Public Records Act... Any determination as to whether the disclosure of a public record constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title."

Subsection (b) (quoted above) is unclear as to both its meaning and its intent. It could be argued that Subsection (b) provides no exemption to the Uniform Trade Secrets Act for an inadvertent release of trade secret data by a state or local agency because it only relates to the release of public records; trade secrets are, by definition, not public records (Calif. Gov. Code Section 6254.7(d)). At best, the current version of the bill is vague as to the Department's liability for an inadvertent disclosure of a trade secret.

B. Fiscal Impact:

Assembly Bill 501 could expose the Department to liability for an error in judgment by staff who must process Public Records Act requests.

C. Conclusion:

Legal counsel recommends that the position of oppose unless amended be adopted.

| STATE MANDATED LOCAL PROGRAM | Yes ☑ | No ☑ | $ | |
|---|---|---|---|---|

| OFFICIAL POSITION: | Governor's office use |
|---|---|
| OPPOSE | Position noted |
| | Position approved |
| | Position disapproved |

| DEPARTMENT DIRECTOR | DATE |
|---|---|
| Clare Berryhill | 5/24/83 |

Exhibit 1 - Page 53

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 1 - Page 54

LAW OFFICES OF

### NILSSON, ROBBINS, DALGARN, BERLINER, CARSON & WURST

A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
707 WILSHIRE BOULEVARD
47TH FLOOR
LOS ANGELES, CALIFORNIA 90017
(213) 620-0600

CABLE ADDRESS: LAPAT
TELEX 194187 LAPATLSA

BILLY A. ROBBINS •
BYARD G. NILSSON •
LEWIS M. DALGARN •
ROBERT BERLINER •
JOHN CARSON •
HAROLD E. WURST •
MICHAEL S. ELKIND •
GREGORY B. WOOD •
LEONARD D. MESSINGER
ROBERT A. GREEN
H. ADAM COCHRAN

•DENOTES PROFESSIONAL CORPORATION

May 23, 1983

Assemblyman Elihu M. Harris
State Capitol Building
Sacramento, California   95814

Re:  AB 501 – Uniform Trade Secrets Act

Dear Assemblyman Harris:

On May 22, 1983, the <u>Los Angeles Times</u> published comments by Mr. Bernard E. Witkin, the dean of California legal scholars. Mr. Witkin's comments are enclosed.  They are so applicable to AB 501 as to prompt this letter.

Quoting from the <u>Los Angeles Times</u> referring to our system of laws, Mr. Witkin said:

> "The whole damn system is too complex," he said.  "But don't blame the lawyers.  Who makes the laws?  Legislatures.  Where do they get their information?  Do they consult skilled experts?  Once in a while." --- "But most of the legislation throughout the country--federal and state--comes from special-interest groups and the not-too-skillful people in the legislative process dealing with complex material."

AB 501 is urged by a special-interest group motivated by the sole objective of attaining a uniform law in all fifty states.  AB 501 strongly infringes upon the interests of advance-technology states and typifies the court-clogging legislation referred to by Mr. Witkin at another point in the article.

Very truly,

B. G. Nilsson

BGN/sbr

Exhibit 1 - Page 55

**By Kay Mills**

BERKELEY—Bernard E. Witkin has never really practiced law, yet he's the guru-emeritus of the California legal community.

Witkin's books on California law and procedure line library shelves. He is a leading thinker on judicial education, legal reform and the relationship of the media to the law. At 79 (today is his birthday), he's a strongly opinionated intellectual raconteur.

Ask him why his life took the turn it did and you get a typically Witkin answer, spoken in that tone your father used when you somehow failed to grasp something obvious: He felt he had no choice because of the nature of law-school education. Law-school professors are "sadistic," Witkin said; they insult those who do them the honor of trying to learn from them, and instead of developing strength of character and imaginativeness, they develop confusion. As a result, "I had neither the training, nor did any of the other graduates, to practice law as such, nor did I have any source of clients."

That being the case, Witkin sat down after graduation from the University of California's Boalt Hall law school in 1928 and organized his bar-review notes into a book. He had taken the bar-review course from "a lawyer who was no great shucks as a teacher, but for the first time in all those years I had contact with somebody who was trying to tell us what the law was, instead of concealing it from us," Witkin said during a recent conversation at his home in the Berkeley Hills.

He began to see the connections within the law, and his expanded notes became the first edition of the "Summary of California Law," published privately in 1928. Since then, he's worked for the California Supreme Court (from 1930 to 1949), taught dozens of bar-review courses himself and published books on the law totaling thousands of pages.

"When I started, over 50 years ago, was the last time a generalist could have made it. The field of law is too vast today," Witkin said.

So does all this complexity of the law work against the average law-abiding citizen?

"The whole damn system is too complex," he said. "But don't blame the lawyers. Who makes the laws? Legislatures. Where do they get their information? Do they consult skilled experts? Once in a while. We have an excellent law-revision commission, and when that organization puts together a revision of a topic of the law, it does an excellent job. But most of the legislation throughout the country—federal and state—comes from the special-interest groups and the not-too-skillful people in the legislative process dealing with complex material.

"The tendency is not toward organization and clarity but toward piling on more and more complexity. Whenever a group believes there is an evil that must be handled by legislation, a complicated and elaborate statute is devised. The motivation may be good and the declaration may be good, but it adds more complexity to the system."

One reason the system is overburdened, Witkin said, is that there is a widespread feeling in the United States that "the legal system exists in great measure for the protection of private rights—rights against the government, rights against other individuals and that anyone has access to the courts."

"We might as well admit that we are a tremendously litigious society and ask ourselves what we can do about it. Preliminarily, should we do something about it? Yes. The courts, federal and state, are clogged beyond endurance. It takes four years to get to trial of a personal-injury suit in a big industrial area. That's bad. The thought is that if you just make enough courts, you will have no problem. But there is a limit.

"There are two ways in which this litigiousness can be controlled. Neither has been adequately explored," said Witkin, who admits to giving little lectures when answering questions.

First of all, he explained, the public gets its knowledge of the law from the media, and the media stresses "human interest and sensational events instead of substance. A broad understanding of the law and its operation would enable people to realize that in a great many instances—perhaps the majority—the legal remedy is not very rewarding.

"The winner frequently doesn't get the fruits of his judgment, the loser is always a very unhappy and embittered person and there is a great feeling that they wasted precious time in a complicated forum that isn't really the place to handle normal kinds of disputes. More realistic reporting about the law and its actual operation and meaning might help intelligent people avoid rushing into litigation.

"There is another aspect that is being heavily espoused by some of our best reform agencies—it's got the beautiful title 'alternative dispute resolution,'" Witkin said, pronouncing the words with a mocking precision. "What that means is there are better ways and simpler and less expensive ways to handle a great bulk of the litigation that now clogs the courts. Those methods are arbitration, mediation and settlement conferences."

Most of the overload of the courts, Witkin said, "is the result of the constitutional direction giving an absolute right of appeal in all criminal cases at public expense with public representation of the highest caliber. And the obvious fact that well over 99% of the people convicted of major crimes are guilty means that the appeals deal with forms of procedure." To most people, he added, "the resolution of these technical legal principles in which guilt is irrelevant doesn't appeal as a very important public endeavor."

Witkin warns that the "reform racket is not for successful people. You're in reform because it's the thing to do, because the fire burns within you and you know there are evils that have to be corrected. But if you believe in undertaking reforms only because they have a chance of success, you



*The whole damn s[ystem]*
*blame the lawyers.*
*The tendency is no[t]*
*but toward piling o[n]*

don't belong in it." Never professes to be an optimis[t.] all, look at his own fam[ily]: parents, Russian Jews, "e[ach?] graded kind of life offere[d] have their children born i[n?] with all its advantages. [They?] sacrificed their education a[nd?] fication and lived from ha[nd?] various kinds of work so [they?] advantages."

Born in Holyoke, Mass., [went to?] San Francisco in 1909. At B[oalt he got] into law by chance. A b[est friend?] student working at freshm[an?] coldly asked him his majo[r. Witkin?] didn't know what a major [was and?] suggested he say law. And la[w it was.]

"I am re[ally a lot] [un]happier [now]

only begun on the
needed to provide th
federal agencies whe
begins Oct. 1.

*Richard E. Cohen is
spondent for the Nation*

# Los An

**Continued from First**

have hated it. There v
es. Council Finance
Braude wanted a gra
He felt that those w
must pay for them in
Councilman Zev Yaro
garbage fee, favoring
hit business harder t
Councilman Gilbert L
downtown Los Ange
crease in the hotel ro
who has posh hote
district, backed an inc
But, as City Counc
said, "what are you ga
go down the drain?"
Bernson's statement
San Fernando Valley
heart of Jarvis countr
starts, Bernson's co
among the leaders. I
their views, Bernson o
tax and the garbage fe
But he was unwillin
tax action that woul
deterioration of the p
nicipal vehicle fleet,
enforcement and fire a
The tone of the co
instructive to whose w
passion of the Proposi
anti-tax actions that
councils and in the Leg
The council memb
attuned to the desires
On the front line of go
voters every night at
ings, or even on the
members run district c
constituent phone calls
Yet, they are also
details of government.
city's garbage trucks an
equipment is becomin
aides receive calls con
maintained parks and li
ened hours and a poor
They know the quality
deteriorating.
The debate may sign
a new era in Califor
council's decision to con
more taxes and fees
Californians, having rea
ration in services, and h
it, have learned that you
get. The tax revolt, whi
forgotten, seems to be
government may be able
ing.



LARRY BESSEL / Los Angeles Times

*The whole damn system is too complex — but don't blame the lawyers. Who makes the laws? Legislatures The tendency is not toward organization and clarity, but toward piling on more and more complexity.*

don't belong in it." Nevertheless, Witkin professes to be an optimist. He can, after all, look at his own family history. His parents, Russian Jews, "escaped the de-graded kind of life offered in Russia to have their children born in a free country with all its advantages. In doing so, they sacrificed their education and other quali-fications and lived from hand-to-mouth in various kinds of work so we got all the advantages."

Born in Holyoke, Mass., Witkin came to San Francisco in 1909. At Berkeley he got into law by chance. A bored graduate student working at freshman registration coldly asked him his major, and Witkin didn't know what a major was. Someone suggested he say law. And law it still is.

"I am not going around thinking that the

solution to all the problems is just around the corner. But psychologically, I do not believe that we are headed for doom. Just look back a few decades: the improve-ment of the rights and opportunities of minorities . . . the maintenance despite fiscal problems of a free education system, the maintenance of an independent legal profession and an independent bench that cannot be dominated by any other force in the government.

"We've got plenty to do. I haven't given up hope for a better legal system, and I believe that the many movements under way cannot be stopped and that we will eventually achieve some of our objec-tives."

*Kau Mills is a Times editorial*

*Bill Boyarsky is chief of*

Exhibit 1 - Page 57

§ 499c.  [Trade secrets: Defined: Theft:
Fraudulent appropriation: Copies of secrets:
Bribery.] (a) As used in this section:


(3) "Trade secret" means the whole or
any portion or phase of any scientific or
technical information, design, process, proce-
dure, formula or improvement which is se-
cret and is not generally available to the
public, and which gives one who uses it an
advantage over competitors who do not
know of or use the trade secret; and a trade
secret shall be presumed to be secret when
the owner thereof takes measures to prevent
it from becoming available to persons other
than those selected by the owner to have
access thereto for limited puproses.

Exhibit 1 - Page 58

E.H.
BILL

STATE OF CALIFORNIA                                                  GEORGE DEUKMEJIAN, *Governor*

# DEPARTMENT OF FOOD AND AGRICULTURE



1220 N Street
Sacramento
95814


May 24, 1983


Honorable Elihu M. Harris
Assemblyman, Thirteenth District
State Capitol, Room 6031
Sacramento, California 95814

Dear Mr. Harris

We opposed your bill, AB 501, in its original form.  The potential liability to
the State from the inadvertent release of trade secret information concerns us
very much.  We feel it is inappropriate to enact a law providing damages be
paid for "misappropriation" of trade secret data if such law includes govern-
mental agencies.

We must respond to previously enacted laws relative to public records disclosure,
and with respect to pesticide health and safety data, there is enough confusion
and overlap between that data and trade secret data to really put us into a
"catch 22" situation.

Your April 21 amendment solved our problem, but your May 3 amendment brought it
forth again.  Accordingly, we are opposed to the bill pending resolution of the
above cited problem.

Perhaps a meeting in your office between us and the sponsors of your bill would
enable us to work out language solving the problem.

Sincerely

*Clare Berryhill*
Clare Berryhill
Director
(916) 445-7126


cc  Bion Gregory
    Lori Johnston
    George Soares

Exhibit 1 - Page 59



# THE STATE BAR OF CALIFORNIA

*Office of the Legislative Representative*

1210 K STREET

SACRAMENTO, CALIFORNIA 95814

TELEPHONE (916) 444-2762

*Roy—*
*Please advise!*

May 27, 1983

Elihu M. Harris
Assemblyman, 13th District
State Capitol, Room 6031
Sacramento, CA  95814

Dear Assemblyman Harris:

Enclosed for your consideration are two letters from our Patent, Trademark and Copyright Section of the State Bar.  I believe it would be helpful if we could set up a meeting with the appropriate parties to discuss this important issue before the bill is heard in the Senate Judiciary Committee.

I apologize if Mr. Nilsson begins his letter in a somewhat vitriolic tone.  Unfortunately, when the bill was heard in the Judiciary Committee, it was last on the file and his testimony was given sparse attention by the members.  In response, he apparently feels the legislature would be more attentive if he begins in a more aggressive style.

Sincerely,

Peter Jensen
Legislative Representative

PJ/kc

Enclosure

Exhibit 1 - Page 60

LAW OFFICES OF

NILSSON, ROBBINS, DALGARN,

BERLINER, CARSON & WURST

A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

707 WILSHIRE BOULEVARD

47TH FLOOR

LOS ANGELES, CALIFORNIA 90017

(213) 620-0600

CABLE ADDRESS: LAPAT

TELEX 194187 LAPATLSA

BILLY A. ROBBINS*
BYARD G. NILSSON*
LEWIS M. DALGARN*
ROBERT BERLINER*
JOHN CARSON*
HAROLD E. WURST*
MICHAEL S. ELKIND*
GREGORY B. WOOD*
LEONARD D. MESSINGER
ROBERT A. GREEN
H. ADAM COCHRAN

*DENOTES PROFESSIONAL CORPORATION

May 19, 1983

Assemblyman Elihu M. Harris
State Capitol Building
Sacramento, California    95814

Re:   AB 501 - Uniform Trade Secrets Act

Dear Assemblyman Harris:

The State Bar of California, PTC Section, is outraged by AB 501!

If passed, AB 501 will spawn years of interpretative litigation, contribute to court clogging, and move jobs out of California.

Obvious and legitimate interpretations of language in AB 501 will produce ludicrous results.  Under one interpretation of AB 501, the U. S. Government is a "person" and thus NO information could be trade-secret property since the United States Government could ascertain it by "proper means", e.g. by eminent domain.  Little information exists that cannot be ascertained by the United States Government using "proper means".  Consequently, very little information, if any, could qualify as "trade secret" under AB 501.

Other examples of similarly ridiculous but likely results are abundant.  If the Kentucky Colonel's chicken recipe had been well known in some home kitchens of Kentucky, under AB 501, the Colonel still could have a trade secret and have appropriated it as his own exclusive trade secret and presumably monopolized commercial production, since

Exhibit 1 - Page 61

Assemblyman Elihu M. Harris
May 19, 1983
Page 2

those to whom it was known are not competitors and thus could not obtain "economic value" from it.

Why should the legality of a trade secret depend on whether the person to whom a secret is readily ascertainable can obtain economic value from its disclosure or use?  It may be that the company or individual is not in the field of the secret's use and therefore cannot use it; it may not know to whom to disclose it for value.  However, if it is known and if it would be of economic value to someone, then why should the determination be other than a finding that there is not a trade secret?

By way of further example, assuming corporations are "persons", if there is a trade secret in the chemical field and an individual, such an independent consultant research chemist correctly states that he could learn the secret within a matter of months, while a person on the research staff of DuPont also correctly states that it would take DuPont at least a year of research to discover the secret, what is the result under the requirement of "readily ascertainable"?  It appears that the result is dependent upon who the various parties can find to <u>speculate</u> on how long it would take to discover a secret.

What is "readily ascertainable"?  Is it research by a single trained individual for six months, or is it research by a large corporation's research department for one week, or is it merely going to ready references to find the information?  Why have this definition at all?  Why not only require that the secret be "not generally known"?

I have been authorized to express the concern of the Section to you and to seek a practical solution in the best interests of the State of California and the administration of trade-secret law within our state.  The definition of a "trade secret" in the Act is particularly disturbing.  In that regard, a brief analysis of the bill as it relates to the definition of a "trade secret" is set out below.

<u>Subject Matter</u>

Trade secrets are the life blood of progressive industry of the innovative type prevalent in our state.  The

Exhibit 1 - Page 62

Assemblyman Elihu M. Harris
May 19, 1983
Page 3

business of a company (and its jobs) can be ripped off (as to another state) effectively by another company proselytizing disloyal employees to carry away trade secrets.  In the face of such piracy threats, employees nevertheless should be able to exercise their skills when and where they wish and for the highest rate of pay.  Consequently, "trade secrets" should be defined clearly and in a manner to equitably balance the rights involved.  Essentially, the "trade secret" definition in California should concisely resolve the question of what an employee lawfully can take from a company either for delivery to a competitor or for a "start up" venture.

### Background

     Under California law, a stable definition of "trade secrets" has been used for a number of years.  Under case law, trade secrets "may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it" (260 C.A.2d 251).  A compatible definition is provided in the California Penal Code at Section 499c (copy attached).  Essentially, the definition specifies information which is secret and affords a business advantage.

### AB 501 Definition

     The subject bill contains an ambiguous, restrictive and limited definition of a "trade secret".  The bill specifies "trade secret" information as that which is not "readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use".

### California Interests

     Trade secrets constitute property to be governed by the State in the best interests of the State and the equities of individual residents.  California law now defines "trade secrets" in a manner that has effectively served the interests of the State.  Adopting the limited, highly restrictive, and ambiguous definition of AB 501 will not only spawn litigation but will be adverse to the

Exhibit 1 - Page 63

Assemblyman Elihu M. Harris
May 19, 1983
Page 4

State, thus facilitating the removal of trade secrets from California (with attendant jobs) to other states.  The restrictive definition of the act would produce legal harangue and a field day for imaginative lawyers to clog the courts in resolving the meaning of the words: "readily ascertainable", "other persons", and "economic value".

Conclusion

        The restrictive definition of "trade secrets" contained in AB 501 will facilitate the removal of trade secrets from California industry to other states and will initiate years of legal uncertainty while the meanings of pregnant terms are litigated.  The uncertainty will be compounded in view of well established existing definitions under California law.

Suggestion

        It is the strong suggestion and urgent request of the State Bar of California, Patent, Trademark and Copyright Section, that AB 501 be amended to recite the definition of a trade secret as set forth in the California Penal Code Section 499c, or alternatively to a somewhat compatible form by changing the paragraph beginning on page 2, at line 33 to read as follows:

                (1)  Derives independent economic value, actual or potential, from not being generally known [to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use]; and... (bracketed material deleted).

        In addition to the problematic definition set forth in the bill, the following points remain of concern to the Section:

        1.  On page 3, at lines 20 and 26, there is a requirement for conduct which is "willful and malicious".  Respectfully, conduct which is either "willful" or "malicious" is deemed sufficiently culpable to justify exemplary damages or attorneys' fees.

Exhibit 1 - Page 64

Assemblyman Elihu M. Harris
May 19, 1983
Page 5

      If a departing employee spitefully publishes a full-page newspaper advertisement revealing his former employer's trade secrets, that's malicious.  If a departing employee goes to work for a new company at three times his usual salary in order to deliver trade secrets, that's willful.  To require both "willful and malicious" action is unreasonable and extreme.

      2.  The bill provides limitation of "twice any award" at page 3, line 22.  In view of the high cost and extensive discovery attendant trade-secret litigation, a limitation of treble any award made would be far more appropriate.

      3.  AB 501 provides for the payment of "a reasonable royalty for no longer than the period of time the use could have been prohibited".  The Section is at a loss to comprehend how a court could arrive at such a period of time.  Presumably, Coca Cola has manufactured under a formula that has been a trade secret for a good many years and appears quite durable for the future.  How can anyone speculate on how much longer the secret can be kept or how soon someone else will independently discover it?

      In view of the above comments, the Patent, Trademark and Copyright Section of the State Bar of California strongly opposes AB 501 as being contrary to the best interests of the State of California, many of its workers, and as providing a fertile source of complex litigation.

                Respectfully,

                B. G. Nilsson

BGN/sbr
Enclosure

Exhibit 1 - Page 65

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 1 - Page 66

AB 501

ASSEMBLY JUDICIARY COMMITTEE -- MINORITY

AB 501 (Harris) -- UNIFORM TRADE SECRETS   (Amended 4/25/83)

Description:  Would enact the Uniform Trade Secrets Act
which would provide that actual or threatened
misappropriation of a trade secret may be enjoined and that
actual misappropriation would give rise to damages,
including "unjust enrichment", and possible punitive
damages.  Fiscal effect:  None.

Supported by unknown.  Opposed by California Department of
Food and Agriculture (probably no longer in opposition).

Comments:  Similar to author's AB 3738 that failed in 1982.
The author amended AB 501 to immunize from liability any
state/local public agencies for disclosure under the Public
Records Act unless the disclosure was made in bad faith.
Vote:  Majority.

Recommendation:  None.

Assembly Republican Committee Vote
Judiciary --   4/25/83
(8-0)        Ayes:  Lancaster, Mojonnier,
               Stirling
             Noes:
             N.V.:
             Abs.:  Johnson
Lead Republican:  Johnson
Consultant:  Redmond

Exhibit 1 - Page 67

**BLANK PAGE**

Artifact of Photocopy Reproduction

**JAN RAYMOND
LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
1 (888) 676-1947**

Exhibit 1 - Page 68

MOSHER, POOLEY, SULLIVAN & HENDREN
ATTORNEYS
525 UNIVERSITY AVENUE
SUITE 1410
PALO ALTO, CALIFORNIA 94301
(415) 327-0500

June 1, 1983

The Honorable Elihu M. Harris
The State Assembly
State Capital, Room 5175
Sacramento, CA  95814

Re:  AB 501:  Uniform Trade Secrets Act

Dear Assemblyman Harris:

I wrote to you on July 22, 1982, in my own right, and on August 16, 1982, together with Alan Foster of the AEA, in connection with my then chairmanship of the AEA's lawyers' committee regarding the above legislation, in its form of last year's AB 3738. I am now writing to you in regard to AB 501, which I believe to be an extremely significant piece of litigation affecting the technology industries, and in particular the rights and abilities of individuals to leave their employment and compete fairly in the establishment of startup enterprises.

As I indicated to you last year, I believe that the Uniform Trade Secrets Act would be beneficial to California in large measure because it would provide a step in securing uniformity among the states where California companies do business, as regards this most important subject of the law.  I believe that the legislation is extremely well drafted, and resolves important questions in a very considered way.

I am writing to you, however, because of certain specific amendments that I understand are now pending.  The first is proposed section 3426.8, which provides that the statute "does not affect any contractual rights or remedies." I am concerned that such a broad statement might do severe damage to the rights of employees who wish to resign and compete with their former employers (a process that I am sure you will agree is very important to the continued prosperity of the state).  Many employers require employees to sign contracts which stipulate to the proprietary (and therefore exclusive) nature of a large amount of information, whether it can properly be qualified as a "trade secret" or not.  In addition, such contracts often will lay claim in the employer to information which should be properly characterized as general knowledge that the employee brought to the job.  It is perhaps arguable whether, in specified circumstances, information of the first type should be protectable by contract, but certainly information in the second category cannot be, without in effect abolishing the rights of employee mobility and the goal of individual entre-preneurship.  I believe that this section requires substantial clarification.

Exhibit 1 - Page 69

The Honorable Elihu M. Harris
June 1, 1983
Page 2

On the other hand, I believe that section 2036.2, requring a plaintiff to "particularize" the claimed trade secrets before any discovery begins, is progressive and salutary. In one recent case I handled on behalf of two scientists who were fired by a very large computer company (because it had been discovered that they planned to start a competitive business), we offered to settle with the plaintiff when the claim was first filed, and to stipulate not to use its trade secrets, so that the lawsuit could be avoided and the former employees could begin their businesses. However, in an obvious effort to "outspend" the individuals, the plaintiff refused to indicate what precise secrets it was talking about. Moreover, when we made application to the court for an order that the secrets specified before discovery began, that order was denied. As a result, my clients had to spend close to $50,000 over three weeks of time in intensive litigation, before the plaintiff (for other reasons) found a reason to settle, and produced its list of secrets in that context.

My practice is virtually limited to litigation of trade secret cases, and I have more often than not represented employees in the defense of such actions, employees who most frequently intend to begin a competing business and would like to do it fairly. I have become increasingly alarmed at what I believe to be the tendency of many large corporate plaintiffs to pursue trade secret litigation not merely for the protection of trade secrets, but in order to prevent new competition from forming. The harm that results not only extends to the individuals involved, but to society as a whole. I believe that this requirement of disclosure of specific trade secrets at the outset of litigation will do much to help control this tendency.

I appreciate very much the efforts that you obviously have expended in this important endeavor, and support very much the concepts involved in AB 501. If there is anything that I can do to assist in the drafting of clarifications, providing testimony in support of the bill, or in any other regard, I would be more than happy to cooperate. As I noted before, I am past chairman of the lawyer's committee of the American Electronics Association, and author of the book, Trade Secrets: How to Protect Your Ideas and Assets (Osborne/McGraw-Hill, 1982). I therefore feel qualified to assist your office on this legislation.

Very truly yours,

James H. Pooley

JHP:db

Exhibit 1 - Page 70

**American Electronics Association**                          **AEA**

2680 Hanover Street
Palo Alto, California 94304

(415) 857-9300


July 18, 1983


The Honorable Elihu Harris
Chairman, Assembly Judiciary Committee
State Capitol
Sacramento, CA  95814


Dear Assemblyman Harris:

I am writing to express a concern which the American Electronics Association
has regarding the May 3 amendments to AB 501, the proposed Uniform Trade
Secrets Act.  AEA presently supports the measure and feels a uniform act
will be beneficial.  However, language on page 4, lines 17 through 25
(section 3426.7b) gives the trade secret specialists on our National Lawyers
Committee cause for concern.  While I understand that the wording reflects
a compromise on a public disclosure issue, it seems to "freeze" the evolution
of trade secrets law.  We question whether this is desirable from either a
legal or technological standpoint.

Because technological innovation is the lifeblood of California's electronics
industries, we are very interested in speaking with you regarding our concerns
and, if possible, working to meet your needs and alleviating our problems
with the language.  I have called Bion Gregory on this matter and hope to
hear from him in the near future.

AEA and its member companies commend you for authoring AB 501.  We look
forward to working with you on this and other key issues.

Sincerely,

Alan T. Foster
Manager, State Government Affairs


ATF/tgp

cc:  Bion Gregory
     Legislative Counsel

     The Honorable Barry Keene
     Chairman, Senate Judiciary Committee

     Richard Thomson
     Chief Counsel
     Senate Judiciary Committee

     Grant Kenyon

Exhibit 1 - Page 71

# VINSON & ELKINS

## ATTORNEYS AT LAW

### FIRST CITY TOWER

## HOUSTON, TEXAS 77002

TELEPHONE 713 651-2222 TWX 9108816391 TELEX 762 146

---

| | | |
|---|---|---|
| 1101 CONNECTICUT AVE. N. W., SUITE 900 | 47 CHARLES ST., BERKELEY SQUARE | AUSTIN NATIONAL BANK TOWER |
| WASHINGTON, D. C. 20036 | LONDON WIX 7PB, ENGLAND | AUSTIN, TEXAS 78701 |
| TELEPHONE 202 862-6500 | TELEPHONE 44 01 491-7236 | TELEPHONE 512 478-2500 |
| CABLE VINELKINS·TELEX 89680 | CABLE VINELKINS LONDON W. I.·TELEX 24140 | |

September 19, 1983

Office of the Governor of
   the State of California
State Capitol
Sacramento, California 95814

        RE:  Uniform Trade Secrets Act

Dear Governor:

        It has recently come to my attention that the legislatures of a number of states are considering the adoption of the Uniform Trade Secrets Act, promulgated by the National Conference of Commissioners on Uniform State Laws in August 1979.  Some state legislatures are adopting the Uniform Trade Secrets Act because it appears to have the support of the organized bars.

        I would like to point out, in order that any consideration of the Uniform Trade Secrets Act be given thought and analysis, that the primary organized bars which first supported the adoption of the Uniform Trade Secrets Act by the states have withdrawn their support.  Although the American Bar Association, through its Patent, Trademark and Copyright Section, approved the Act in February, 1980, that approval was withdrawn and specific resolutions were passed a year later in August, 1981.  A copy of those resolutions are enclosed.

        Additionally, the American Patent Law Association's Unfair Competition and Trade Secrets Committee has passed similar resolutions in opposition to the Act.

        <u>Please refer this letter to the appropriate Congressmen or Congressional Committee(s) in your state in order that they might have the benefit of the information contained in this letter.</u>

Exhibit 1 - Page 72

Anyone wishing additional information regarding Uniform Trade Secrets Act is requested to contact the undersigned, the American Patent Law Association, or the American Bar Association's Patent, Trademark and Copyright Section.

Very truly yours,

William L. LaFuze

317:2130

Enclosures

Exhibit 1 - Page 73

**American Electro cs Association**        

2680 Hanover Street
Palo Alto, California 94304

(415) 857-9300

November 29, 1983

The Honorable Elihu Harris
Chairman, Assembly Judiciary Committee
State Capitol
Sacramento, CA  95814

Dear Assemblyman Harris:

I am writing to reiterate a serious concern which the American Electronics Association has regarding the May 3 amendments to AB 501.

AEA has supported AB 501 and feels that a Uniform Trade Secrets Act would be generally beneficial.  However, language on page 4, lines 17 through 25 (Section 3426.7b) is considered by trade secrets specialists serving electronics companies as causing a potential problem.  In essence, it appears to "freeze" the evolution of trade secrets law in California.  We question whether this is desirable from either a legal or technological standpoint.

I spoke with Bion Gregory in August regarding this and he said that private meetings with parties will be held before the bill is heard in Senate Judiciary.  I would like to meet with him and electronics trade secrets specialists during December and have called his office to see which dates would be convenient.

Effective statutory trade secrets provisions are essential to further technological innovation and growth within California.  We are very interested in discussing our concerns surrounding AB 501 and, if possible, working to meet your needs on the public disclosure issues.

AEA and its member companies commend you for your efforts.  We look forward to working with you on this and other issues impacting California's electronics industries.

Sincerely,

Alan T. Foster
Manager, State Government Affairs

ATF:pp

cc:  Bion Gregory                        Richard Thomson, Chief Counsel
     Legislative Counsel                 Senate Judiciary Committee

     The Honorable Barry Keene           Grant Kenyon
     Chairman, Senate Judiciary Committee   Legislative Advocate

Exhibit 1 - Page 74

Limbach, Limbach & Sutton

A Partnership Including
Professional Corporations
Patent, Trademark and Copyright
Lawyers

2001 Ferry Building
San Francisco
California 94111
415/433-4150

Peninsula Office
2600 El Camino Real
Palo Alto, California 94306
415/857-0450

Santa Rosa Office
3333 Mendocino Avenue
Suite 200
Santa Rosa, California 95402
707/526-1480

Cable Address LLS
Telex 278356

Karl A. Limbach*
George C. Limbach*
John P. Sutton*
John K. Uilkema*
J. William Wigert, Jr.*
Philip M. Shaw, Jr.*
Neil A. Smith*
Malcolm B. Wittenberg*
Carrie L. Walthour*
Veronica Colby Devitt
Ronald L. Yin
Gerald T. Sekimura
Michael A. Stallman
Christopher G. Hawkins
James C. Weseman
Maria S. Cefalu
Philip A. Girard

Frank E. Johnson
J. Thomas McCarthy
Of Counsel

*A Professional Corporation

December 27, 1983

Mr. Ray LeBov
California Legislature
Box 161387
Sacramento, CA 95816

Re:   <u>AB 501 -- California Uniform Trade Secrets Act</u>

Dear Mr. LeBov:

Our firm specializes in intellectual property law and
as such has been involved in a great deal of trade
secret litigation.  Many of our clients possess informa-
tion which they consider trade secret.

While we understand the desire of the legislature to
implement uniform state laws, we are presently opposed
to AB 501 in its present definition of a "trade secret."
We would ask that the bill be amended to encompass the
definition of a trade secret which has been proposed by
the State Bar of California, Patent, Trademark & Copy-
right Section.

Any questions which you may have in terms of amendments
should be directed to the representative of the PTC
Section, Byard G. Nilsson, at:

        Nilsson, Robbins, Dalgarn,
          Berliner, Carson & Wurst
        707 Wilshire Boulevard, 47th Floor
        Los Angeles, CA 90017
        (213) 620-0600

Thank you for your attention.

Sincerely,

LIMBACH, LIMBACH & SUTTON

Veronica Colby Devitt

VCD/pma
cc:  Byard G. Nilsson, Esq.

Exhibit 1 - Page 75

DONALD J. REISNER
ATTORNEY AT LAW
PARK EXECUTIVE BUILDING, SUITE 350
925 L STREET
SACRAMENTO, CALIFORNIA 95814
———————
(916) 444-8440

February 16, 1984

Assemblyman Elihu Harris
State Capitol
Sacramento, CA  95814

Re:  AB 501

Dear Assemblyman Harris:

The companies which we represent are
opposed to your bill AB 501 as it is presently
written.

While they support the adoption of a
Uniform Trade Secrets Act, they are opposed to
the current language in Section 3426.1(d)(1)
of your bill.  In particular, the terms "readily
ascertainable", "proper means" and "persons who
can obtain economic value" are undefined in
current law and will both promote litigation
and provide a means by which a misappropriator
may avoid liability.

We would urge you to consider amending
this section to substantially conform to the
definition contained in Section 499c of the
California Penal Code which we believe is more
protective of the interests of California business.

Thank you for your consideration.

Sincerely,

Donald J. Reisner

DJR:nr

Exhibit 1 - Page 76

Light Signatures, Incorporated
1901 Avenue of the Stars, 4th Floor
Los Angeles CA 90067
(213) 277-3004

RECEIVED

MAR 6 1984

CAPITOL OFFICE

March 1, 1984

The Honorable Elihu M. Harris
State Assemblyman
State Capitol Building
Sacramento, CA  95814

Dear Assemblyman Harris:

I am the President and Chief Executive Officer of a two-year old technology
company which has experienced first hand the stealing of trade secrets by
another firm.  We intend to pursue remedy through legal action if required.
In any event, this experience coupled with our diligent efforts to protect our
trade secrets, yet still endeavoring to market our technology cries for better
protection, rather than what we regard to be less as contained in Assembly
Bill 501.

We, therefore, urge you to amend this bill as proposed by the California State
Bar as well as the Los Angeles Bar Association.

Sincerely,

J. F. DeLuna
President

JFD:cm

Exhibit 1 - Page 77

# **G**ENEST
# **T**ECHNOLOGIES
# **I**NC. 1331 EAST EDINGER AVE., SANTA ANA, CA 92705, TEL. (714) 547-0880

March 9, 1984

RECEIVED

MAR 1 4 1984

CAPITOL OFFICE

Assemblyman Elihu M. Harris
State Capitol Building
Sacramento, California  95814

Re:  Assembly Bill 501
     Uniform Trade Secrets Act

Dear Assemblyman Harris:

The State of California is established as a leader in high technology industry.  Trade secrets constitute a basic ingredient to that industry.  Consequently, it is of considerable importance that the law of California effectively facilitates the administration of trade secret properly.  In addition to being clear and certain, the law should facilitate continued industrial expansion while protecting appropriate industrial property rights.

It recently came to our attention that the referenced bill, a variation of a Uniform Trade Secrets Act, is pending action by the State Senate. Although uniformity may be a worthwhile objective, uniformity should not be tolerated at the expense of enacting substantively flawed legislation.

In our opinion AB 501 is seriously defective in several aspects:

First, we consider the definition of a "Trade Secret" in AB 501 to be complex, uncertain and, in some instances, impossible of compliance.  Example will illustrate.

By one interpretation, AB 501 defines a "Trade Secret" as a "formula" ... not being readily ascertainable by proper means by "other persons." "Persons" includes any "government", or "governmental agency." This would include the United States Government.

As a practical matter, the United States Government may readily ascertain any existing formula by eminent domain which is certainly a "proper means." Consequently, no "formula" or other information could be a "Trade Secret" as defined by the bill.

Consider another interpretation under AB 501. A "Trade Secret" ... is a "program" ... "not being readily ascertainable by proper means by IBM."

Exhibit 1 - Page 78

Given the facility of IBM with respect to computer programs, would not any "program" be readily ascertainable to that company? Accordingly, can any "program" be a "Trade Secret" under the definition of AB 501?

Consider still another interpretation. A "Trade Secret" is a . . . "method" . . . "not being readily ascertainable by" . . . some organization . . . "who can obtain economic value from its disclosure or use."

It is difficult to conceive of an organization "who cannot obtain economic value from any method by its disclosure or use, providing the method has independent economic value" as stated in the definition. Accordingly, the definition is circuitous. And, even if there is such an organization or person who cannot obtain value, why should "obtaining economic value" make any difference. It certainly does not make any difference to the company whose trade secret is now public knowledge.

As a final example, under the proposed Act one might successfully argue that, while admitting theft of a trade secret, the defendant should nevertheless not be penalized since the defendant could have reverse-engineered the product, given enough time, thus satisfying the "readily ascertainable" test.

As can be seen, at the very least this definition will complicate the legal process by interjecting new and added criteria which must be argued and decided. This can only throw the current body of Trade Secret law, developed in California over a number of years, into chaos.

The risk of loss of jobs, loss of the State's technological leadership and serious injury to the economy of this State should certainly not be tolerated merely to achieve "uniformity."

A second area of concern is Section 3425.3(b), which requires an injured party to prove both willfulness (the mis-appropriator's intent is to benefit himself) and maliciousness (the misappropriator's intent is to harm the trade secret owner) to be entitled to exemplary damages. Proof of either willfulness or maliciousness, not both, should be sufficient to justify an award of exemplary damages. To require proof of both would place an unreasonable burden on the injured party.

A third area of concern is Section 3426.2(b). We can see no reason for depriving a court of the discretion to require continued payment of royalties once the trade secret is known. Indeed, a misappropriator, under no contractual obligation to maintain confidences, could simply publicize the trade secret and thereby relieve himself of the obligation to pay royalties.

Exhibit 1 - Page 79

For each of the above reasons, we urge you to amend the present legislation as proposed by the California State Bar and the Los Angeles County Bar Association in the attached paper.  To do so would, in our opinion, be to the ultimate benefit of employees, businesses and the economic welfare of the State of California.

Very Truly yours,

Leonard J. Genest
President

LJG/iw


cc: Bion Gregory
    Legislative Counsel
    State Capitol
    Sacramento, CA  95814

    Senator Barry Keene
    State Capitol Room 2032
    Sacramento, CA  95814

    Terrance W. Flanigan
    Legislative Representative
    State Bar of California
    1210 K Street
    Sacramento, CA  95814

Exhibit 1 - Page 80

ndments proposed by L. A. County Bar Association
ir Association of San ra isco
State Bar Patent, Trademark and Copyright Sectic
Sacramento County Bar

## PART 9

 *carried*

### UNIFORM TRADE SECRETS ACT

Section 7200.
As used in this Act, unless the context requires otherwise:
(1) "Improper means" includes theft, bribery, misrepresenta-
tion, breach or inducement of a breach of a duty to maintain
secrecy, or espionage through electronic or other means;
(2) "Misappropriation" means:
(i) acquisition of a trade secret of another by a
person who knows or has reason to know that the trade
secret was acquired by improper means; or
(ii) disclosure or use of a trade secret of
another without express or implied consent by a person
who
(A) used improper means to acquire knowledge of
the trade secret; or
(B) at the time of disclosure or use, knew or
had reason to know that his knowledge of the trade
secret was
(I) derived from or through a person who
had utilized improper means to acquire
it;
(II) acquired under circumstances giving
rise to a duty to maintain its secrecy or
limit its use; or
(III) derived from or through a person who
owed a duty to the person seeking relief to
maintain its secrecy or limit its use; or
(C) before a material change of his position,
knew or had reason to know that it was a trade
secret and that knowledge of it had been acquired by
accident or mistake.
(3) "Person" means a natural person, corporation,
business trust, estate, trust, partnership, association, joint
venture, government, governmental subdivision or agency, or
any other legal or commercial entity.
(4) "Trade secret" means information, including a
formula, pattern, compilation, program, device, method,
technique, or process, <u>which is not generally known</u>, that:
(i) derives independent economic value, actual or
potential, from not being generally known to, and not
being readily ascertainable by proper means by, other
persons who can obtain economic value from its disclosure
or use, and
(ii) is the subject of efforts that are reasonable
under the circumstances to maintain its secrecy.

8-8

**Section 7201.**
   (a) Actual or threatened misappropriation may be enjoined.
Upon application to the court, an injunction shall be terminated
when the trade secret has ceased to exist, but the injunction
may be continued for an additional ~~reasonable~~ period of time
in order to eliminate commercial advantage that otherwise
would be derived from the misappropriation.
   (b)  If the court determines that it would be unreasonable to
prohibit future use, an injunction may condition future use
upon payment of a reasonable royalty for no longer than the
period of time the use could have been prohibited.
   (c)  In appropriate circumstances, affirmative acts to
protect a trade secret may be compelled by court order.

**Section 7202.**
   (a)  In addition to ~~or in lieu of~~ injunctive relief, a
complainant may recover damages for the actual loss caused
by misappropriation.  A complainant also may recover for the
unjust enrichment caused by misappropriation that is not taken
into account in computing damages for actual loss.
   (b)  If neither damages nor unjust enrichment caused by
misappropriation are provable, the court may order payment of
a reasonable royalty for no longer than the period of time the
use could have been prohibited.
   (c) ~~(b)~~ If willful ~~and~~ or malicious misappropriation
exists, the court may award exemplary damages. ~~in an amount not
exceeding twice any award made under subsection (a)~~.

**Section 7203.**
   If (i) a claim of misappropriation is made in bad faith,
(ii) a motion to terminate an injunction is made or resisted
in bad faith, or (iii) willful ~~and~~ or malicious misappropriation
exists, the court may award reasonable attorney's fees to the
prevailing party.

**Section 7204.**
   In an action under this Act, a court shall preserve the
secrecy of an alleged trade secret by reasonable means, which
may include granting protective orders in connection with
discovery proceedings, holding in-camera hearings, sealing the
records of the action, and ordering any person involved in the
litigation not to disclose an alleged trade secret without
prior court approval.

**Section 7205.**
   An action for misappropriation must be brought within 3
years after the misappropriation is discovered or by the
exercise of reasonable diligence should have been discovered.
For the purposes of this section, a continuing misappropriation
constitutes a single claim.

Exhibit 1 - Page 82

8-8

Section 7206.
~~(a) This Act displaces conflicting tort, restitutionary, and other law of this State pertaining to civil liability for misappropriation of a trade secret.~~ <u>Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.</u>

Section 7207.
<u>This title does not affect any contractual rights or remedies.</u>

Section ~~7207~~ <u>7208</u>.
This Act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it.

Section ~~7208~~ <u>7209</u>.
This Act may be cited as the Uniform Trade Secrets Act.

Section ~~7209~~ <u>7210</u>.
If any provision of this Act or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

Section ~~7210~~ <u>7211</u>.
~~This Act takes effect on —————————————and does not apply to misappropriation occurring prior to the effective~~ date. <u>This title does not apply to misappropriation occurring prior to January 1, 1984. If a continuing misappropriation otherwise covered by this title began before January 1, 1984, this title does not apply to the part of the misappropriation occurring before that date. This title does not apply to the part of the misappropriation occurring on or after that date unless the appropriation was not a misappropriation under the law in effect before the operative date of this title.</u>

Section 7212.
<u>In any action alleging the misappropriation of a trade secret under this act, before commencing discovery relating to the trade secret the party alleging the misappropriation shall identify the trade secret subject to any protective orders which may be appropriate.</u>

8-8-d

Exhibit 1 - Page 83



**Paramount**
Fitness Equipment Corporation
6450 E. Bandini Blvd., Los Angeles,
CA 90040 Tel 213-721-3644

March 15, 1984

RECEIVED
MAR 20 1984
CAPITOL OFFICE

ASSEMBLYMAN ELIHU M. HARRIS
State Capitol Building
Sacramento, CA  95814

RE:   Assembly Bill 501
      Uniform Trade Secrets Act

Dear Assemblyman Harris:

The State of California is established as a leader in high technology industry.  Trade secrets constitute a basic ingredient to that industry. Consequently, it is of considerable importance that the law of California effectively facilitates the administration of trade secret property.  In addition to being clear and certain, the law should facilitate continued industrial expansion while protecting appropriate industrial property rights.

It recently came to our attention that the referenced bill, a variation of a Uniform Trade Secrets Act, is pending action by the State Senate. Although uniformity may be a worthwhile objective, uniformity should not be tolerated at the expense of enacting substantively flawed legislation.

In our opinion AB 501 is seriously defective in several respects:

First, we consider the definition of a "Trade Secret" in AB 501 to be complex, uncertain and, in some instances, impossible of compliance. Examples will illustrate.

By one interpretation, AB 501 defines a "Trade Secret" as a "formula" . . . not being readily ascertainable by proper means by "other persons." "Persons" includes any "government", or "governmental agency."  This would include the United States Government.

As a practical matter, the United States Government may readily ascertain any existing formula by eminent domain which is certainly a "proper means."  Consequently, no "formula" or other information could be a "Trade Secret" as defined by the bill.

Exhibit 1 - Page 84

Assemblyman Elihu M. Harris
Page 2
3/15/84

Consider another interpratation under AB 501.  A "Trade Secret"
. . . is a "program" . . . "not being readily ascertainable by proper
means by IBM."

Given the facility of IBM with respect to computer programs, would
not any "program" be readily ascertainable to that company?  Accordingly,
can any "program" be a "Trade Secret" under the definition of AB 501?

Consider still another interpretation.  A "Trade Secret" is a . . .
"method" . . . "not being readily ascertainable by" . . . some organization
. . . "who can obtain economic value from its disclosure or use."

It is difficult to conceive of an organization "who cannot obtain economic
value from any method by its disclosure or use, providing the method
"has independent economic value" as stated in the definition.  Accordingly,
the definition is circuitous.  And, even if there is such an organization
or person who cannot obtain value, why should "obtaining economic value"
make any difference.  It certainly does not make any difference to the
company whose trade secret is now public knowledge.

As a final example, under the proposed Act one might successfully
argue that, while admitting theft of a trade secret, the defendant should
nevertheless not be penalized since the defendant could have reverse-
engineered the product, give enough time, thus satisfying the "readily
ascertainable" test.

As can be seen, at the very least this definition will complicate
the legal process by interjecting new and added criteria which must be
argued and decided.  This can only throw the current body of Trade
Secret law, developed in California over a number of years, into chaos.

The risk of loss of jobs, loss of the State's technological leadership
and serious injury to the economy of this state should certainly not be
tolerated merely to achieve "uniformity."

A second area of concern is Section 3425.3(b), which requires
an injured party to prove both willfulness (the misappropriator's intent
is to benefit himself) and maliciousness (the misappropriator's intent is
to harm the trade secret owner) to be entitled to exemplary damages.
Proof of either willfulness or maliciousness, not both, should be sufficient
to justify an award of exemplary damages.  To require proof of both
would place an unreasonable burden on the injured party.

Exhibit 1 - Page 85

Assemblyman Elihu M. Harris
Page 3
3/15/84

A third area of concern is Section 2426.2(b). We can see no reason for depriving a court of the discretion to require continued payment of royalties once the trade secret is known. Indeed, a misappropriator, under no contractual obligation to maintain confidences, could simply publicize the trade secret and thereby relieve himself of the obligation to pay royalties.

For each of the above reasons, we urge you to amend the present legislation as proposed by the California State Bar and the Los Angeles County Bar Association in the attached paper. To do so would, in our opinion, be to the ultimate benefit of employees, businesses and the economic welfare of the State of California.

Very truly yours

Jim Trisler,
President

JT:mn

cc:  Bion Gregory
     Legislative Counsel
     State Capitol
     Sacramento, CA  94814

     Senator Barry Keene
     State Capitol Room 2032
     Sacramento, CA  95814

     Terrance W. Flanigan
     Legislative Representative
     State Bar of California
     1210 K Street
     Sacramento, CA  95814

Exhibit 1 - Page 86

**American Electronics Association**                    

2670 Hanover Street
P.O. Box 10045
Palo Alto, California 94303

(415) 857-9300

May 18, 1984

Robert H. Cornell, Esq.
Halley, Cornell & Lynch
25th Floor
50 California Street
San Francisco, CA  94111

Dear Bob:

I have reviewed the proposed amendments to AB 501 offered by the county bar groups and the State Bar's Patent, Trademark and Copyright Section.

We appreciate the opportunity to comment on the proposals.  AEA is a national trade association whose 2,500 member companies manufacture aerospace equipment and supplies; computers, their peripherals, and software; telecommunications equipment and systems; consumer products; industrial products; manufacturing equipment and systems; military equipment and defense systems; semiconductors and other components.

We also have as associated members more than 400 law firms, financial institutions, and venture capital groups which serve America's electronics industries.

Ideas are the lifeblood of the electronics industries, and are sometimes the major asset of small startup electronics firms.  Because over 70 percent of our member firms are small electronics firms, we are especially committed to promoting effective and equitable trade secret protection.

When AB 501 was first introduced, we supported it as a positive move in promoting trade secret protection in the various jurisdictions.  However, subsequent amendments caused us to re-evaluate that position and the current proposed amendments give us further cause for concern.  Before getting in a position of opposing AB 501, however, we would like to help solve mutual concerns through the following comments:

  - Proposed amendment to Section 7200 (4): definition of "trade secret": We feel this amendment is unnecessary and it would have a negative impact on AEA's member companies.  First, it alters a definition of "trade secret" which has been applied for years.  Second, it unnecessarily moves away from much-needed consistency on major items of trade secret law.  As a result, the change is likely to cause confusion regarding legislative intent and encourage litigation.

The amendment would delete from trade secret law a basic principle--that items whose nature can be ascertained by simple examination should not be afforded trade secret status.  For example, a valve which an be disassembled and analyzed in three minutes would not, under

Exhibit 1 - Page 87

long-standing trade secret law, be deemed a trade secret.  Under the
proposed amendment, it might.  This is inconsistent with current
practice.

- Proposed amendment to Section 7201 (a):  We feel that the deletion of
"reasonable" makes the statute unclear and will add to the ambiguity of
AB 501's legislative intent.  We feel the amendment should not be made.

- Proposed amendment to Section 7202 (a):  We understand that the intent
of the amendment is to enable the complainant to recover damages or
injunctive relief or both.  We support that intent, but feel that the
proposed amendment does not accomplish that goal.  The language seems to
remove the power of the court to award damages if injunctive relief is
not given.

The language of Section 7202 (a) in the Uniform Trade Secrets Act
achieves the proponents' desired goal.  Why enact an amendment which
goes against the goal and is likely to cause confusion regarding the
Legislature's intent?  We recommend Section 7202 (a) remain in current
form.

- Proposed amendment to Section 7202 (b):  We have no difficulty with this
proposal.

- Proposed amendment to Section 7202 (c):  We oppose the notion of
unlimited punitive damages because it encourages litigation and can be
used by large firms to create excessive leverage over smaller companies.
However, we would support a treble damages provision in (c).

However, we have concerns about the change from "and" to "or".  Willful
conduct can include simple negligence and we feel that the Uniform Act
("willful and malicious") should be retained in AB 501.  Ms. Harner's
(JBL) interpretation of "willful" as expressed in her March 7 letter
fails to fully consider the meaning of that term--the person need not
have intended to achieve the result.

- Proposed amendment to Section 7203 (iii):  The Uniform Act language
should be retained, for the reasons stated in response to the proposed
amendment to Section 7202 (c).

- Proposed amendment to Section 7206:  By deleting the Uniform Act
language, trade secret actions are likely to present a "Christmas tree"
of varying theories.  We feel the Uniform Act language provides more
coherence in addressing trade secret issues.

- Proposed amendment to Section 7207:   We feel this amendment is
unnecessary and adds ambiguity to AB 501's legislative intent by moving
away from the Uniform Act.

Nothing in the Uniform Act says that it does affect contractual
remedies.  Under recognized case law, recitations in a contract relating
to trade secrets can still be challenged if they differ from recognized
law or the facts surrounding the case.  The broad language of the

Exhibit 1 - Page 88

proposed amendment could enable an employer to unduly alter via contract
the delicate balance which undergirds trade secret law.

- Proposed amendment to Section 7211:  We have no difficulty with this
amendment.

- Proposed amendment to Section 7212:  We feel this is a good amendment.

Bob, we're pleased that the amendment to Section 3426.7 (b) will be changed.
As now worded, it would establish for the first time a "two-tiered" trade
secret law that would prove extremely awkward for courts and attorneys
alike.  We would like to participate in solving the serious problems
surrounding Section 3426.7 (b)'s current wording.

Thank you for soliciting our views on the proposed amendments to AB 501.

Sincerely,

Alan T. Foster
Manager, State
Government Affairs

cc:  Ray Le Bov
     Assembly Judiciary Committee

     Bion Gregory
     Legislative Counsel

     Grant Kenyon
     Legislative Representative

     James Pooley, Esq.

Exhibit 1 - Page 89