# EXHIBIT 1 Part 2

LAW OFFICES OF

**HALLEY, CORNELL & LYNCH**

A PROFESSIONAL CORPORATION

25TH FLOOR

50 CALIFORNIA STREET

SAN FRANCISCO, CALIFORNIA 94111

ROBERT H. CORNELL
J. KENNETH LYNCH
ANDREW G. LANGE
ROGER C. PETERS
FREDERICK A. PATTERSON

JAMES W. HALLEY
(1921-1976)

(415) 981-7700

22 May 1984

Judith A. Harper
The State Bar of California
1100 Eleventh Street, Suite 315
Sacramento, CA 95814

Gregory B. Wood
Nilsson, Robbins, Dalgarn,
  Berliner, Carson & Wurst
707 Wilshire Boulevard, 47th Floor
Los Angeles, CA 90017

David M. Simon
Spensley, Horn, Jubas & Lubitz
1880 Century Park East, Suite 500
Los Angeles, CA 90067

Neal S. Millard
Morrison & Foerster
333 South Grand Avenue
Los Angeles, CA 90071

Ray LeBov
Counsel to the Assembly Committee on Judiciary
State of California
State Capitol, Room 6031
Sacramento, CA 95814

Dear Judy, Neal, Greg, Dave and Ray:

Attached is a summary of what I believe was agreed upon at our meeting in Sacramento.

There has been a great deal of interest in the Act by the American Electronics Association. They are headquartered in Palo Alto and represent a substantial portion of the high-tech industry not only in California but in the United States. They have a very strong interest in the passage of the Uniform Act. Unfortunately, their director, Alan Foster, did not have an opportunity to respond to the Bars' amendments prior to our meeting. Enclosed is a written report of his position. His position reinforces my reluctance to change the definition of "trade secret" in the Act itself. I would appreciate your

Exhibit 1 - Page 90

22 May 1984
Page 2

thoughts on comment language that could be drafted to clear up
the perceived ambiguity of "and not being readily ascertainable
but proper means by."

    I enjoyed meeting each of you in Sacramento and really
appreciate the time and effort that you and your associates
have devoted to this Act.

                Very truly yours,

                Robert H. Cornell

RHC:jpl
encl.

cc:  Bion Gregory
     Alan T. Foster

Exhibit 1 - Page 91

Resolutions of the Patent,
Trademark & Copyright Section
American Bar Association
Regarding the Uniform Trade Secrets Act
Approved August 8, 1981

RESOLUTION 206-3

RESOLVED, that the Section of Patent, Trademark and Copy-
right Law favors in principle that the remedies for a breach
of contract shall not be displaced by trade secret law; and
specifically, the Section favors amendment of Section 7 of
the Uniform Trade Secrets Act ("Act") which was approved by
the National Conference of Commissioners on Uniform State
Laws in August, 1979 to clarify that the Act does not effect
such displacement.

RESOLUTION 206-4

RESOLVED, that the Section of Patent, Trademark and Copy-
right Law favors in principle the remedy of a reasonable
royalty when neither damages nor unjust enrichment are
provable in trade secret cases; and specifically, the
Section favors amendment of Section 3 of the Uniform Trade
Secrets Act ("Act") which was approved by the National
Conference of Commissioners on Uniform State Laws in August,
1979 to so provide.

RESOLUTION 206-5

RESOLVED, that the Section of Patent, Trademark and Copy-
right Law favors in principle that future use by a misappro-
priator of a trade secret upon payment of a reasonable
royalty be permitted only in exceptional circumstances; and
specifically, the Section favors amending Section 2(b) of
the Uniform Trade Secrets Act ("Act") which was approved by
the National Conference of Commissioners on Uniform State
Laws in August, 1979 to clarify that the Act so provides.

RESOLUTION 206-6

RESOLVED, that the Section of Patent, Trademark and Copy-
right Law favors in principle the application of the Uniform
Trade Secrets Act ("Act") which was approved by the National
Conference of Commissioners on Uniform State Laws in August,
1979 only in cases in which misappropriation begins after
the effective date of the Act; and specifically, the Section
favors amendment of Section 11 of the Act to clarify that
the Act does not apply to a continuing misappropriation
which begins prior to the effective date of the Act.

Exhibit 1 - Page 92

Resolutions Approved
December, 1981 by the
Unfair Competition Committee
American Patent Law Association

## Resolution No. 1

RESOLVED, that the American Patent Law Association favors in principle a uniform state law for the protection of trade secrets.

## Resolution No. 2

RESOLVED, that the American Patent Law Association opposes at this time the adoption by any state of the Uniform Trade Secrets Act which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979.

## Resolution No. 3

RESOLVED, that the American Patent Law Association favors in principle that the remedies for a breach of contract shall not be displaced by trade secret law; and specifically, the APLA favors amendment of Section 7 of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to clarify that the Act does not effect such displacement.

## Resolution No. 4

RESOLVED, that the American Patent Law Association favors in principle the remedy of a reasonable royalty when neither damages nor unjust enrichment are provable in trade secret cases; and specifically, the APLA favors amendment of Section 3 of the Uniform Trade Secrets Act which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to so provide.

## Resolution No. 5

RESOLVED, that the American Patent Law Association favors in principle that future use by a misappropriator of a trade secret upon payment of a reasonable royalty be permitted only in exceptional circumstances; and specifically, the APLA favors amending Section 2(b) of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to clarify that the Act so provides.

## Resolution No. 6

RESOLVED, that the American Patent Law Association favors in principle the application of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 only in cases in which misappropriation begins after the effective date of the Act; and specifically, the APLA favors amendment of Section 11 of the Act to clarify that the Act does not apply to a continuing misappropriation which begins prior to the effective date of the Act.

Exhibit 1 - Page 93

16 May 1984

Review of Matters Discussed with Neal Millard, Greg Wood, Dave Simon, Judy Harper, Ray LeBov and Bob Cornell on April 23, 1984 at Sacramento

The following changes with respect to AB 501 and the amendments proposed by the various Bar Associations were agreed upon as follows:

1. Section 3426.2(a) deletion of the word "reasonable". This has been done in the May 3 draft of AB 501.

2. Section 3426.3(a) delection of the words "in addition to or in lieu of injunctive relief". This change has been made in the May draft.

3. Section 3426.3 addition of a new subparagraph (b) to provide a reasonable royalty where neither damages nor unjust enrichment are provable. This has been added to the May draft.

4. Section 3426.3 change "willful and malicious" to "willful or malicious". This change has not yet been made.

5. Section 3426.3 change the amount of exemplary damages in an amount not exceeding "three times" rather than "twice" the award under subdivisions (a) or (b). This change has not yet been made and is a change from the Bar resolution which would have eliminated any limit on exemplary damages.

6. Section 3426.4 change "willful and malicious" to "willful or malicious". This change has not yet been made.

7. Section 3426.7(a) and Section 3426.8 is new language replacing Section 7 of the Uniform Act with respect to effect on other law. These changes were made in the April draft.

8. Section 3426.7(b) is an attempt to meet the objections to the Act based on its effect on disclosure of public records. Concern was expressed at the meeting that the effect of subdivision (b) would be to create two levels of trade secret law. The Legislative Counsel's office will be asked to prepare language to limit the effect of this provision, perhaps through the addition of Legislative intent.

Exhibit 1 - Page 94

May 16, 1984
Page 2

9.  Section 3426.11 incorporates new language recommended
    by the Bar with respect to continuing misappropriations
    and these changes have been incorporated in the May
    draft.   The date January 1, 1984 should be changed to
    whatever the effective date of the Act will be.

10. A new provision was recommended by the Bar as their
    Section 7212.  This has been incorporated in the
    Harris Bill as Section 2036.2 of the Code of Civil
    Procedure.   The Harris Bill added the words, after
    shall identify the trade secret, "with particularity".
    It was agreed that this should be changed to read
    "with reasonable particularity."

The only matter not generally resolved at the meeting was the
definition of trade secret.   I believe it was generally agreed
that, although the Uniform Act created a possible ambiguity, the
Bar proposal did not solve the problem and created some further
problems.   The objectionable language in the May draft of the
Harris Bill were the words contained on lines 1 and 2 of page 3
"and not being readily ascertainable by proper means by,".   The
objection to the quoted language is that any trade secret can be
ascertained by the proper means of purchase, eminent domain, or
independent discovery, thereby rendering the definition meaning-
less.   I had concerns with respect to changing the Uniform defi-
nition, which is the one section not objected to outside of
California.   Judy suggested that the ambiguity might be clarified
by adding additional language of Legislative intent.

The Committee wanted some time to see if they could come up
with a better solution to the problems raised.


                                  Robert H. Cornell


Exhibit 1 - Page 95

LAW OFFICES OF

# MORRISON & FOERSTER

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

333 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071

TELEPHONE (213) 626-3800

TELEX 18-1267

SAN FRANCISCO OFFICE

ONE MARKET PLAZA
SPEAR STREET TOWER
SAN FRANCISCO, CALIFORNIA 94105
TELEPHONE (415) 777-6000

DENVER OFFICE

3100 COLUMBIA PLAZA
1670 BROADWAY
DENVER, COLORADO 80202
TELEPHONE (303) 831-1100

NEAL S. MILLARD
LOS ANGELES
DIRECT DIAL (213) 621-9445

WASHINGTON, D.C. OFFICE

1920 N STREET, N.W.
WASHINGTON, D.C. 20036
TELEPHONE (202) 887-1500

LONDON OFFICE

12 GROSVENOR PLACE
LONDON SW1X 7HN
ENGLAND
TELEPHONE 235-0581

HONG KONG OFFICE

ALEXANDRA HOUSE
CHATER ROAD
HONG KONG
TELEPHONE 5-215557

May 31, 1984

Robert H. Cornell, Esq.
Halley, Cornell and Lynch
25th Floor
50 California Street
San Francisco, California   94111

Re:  AB 501

Dear Bob:

Thank you very much for your notes of May 16, 1984.  I have reviewed these notes along with the accompanying letter from Alan T. Foster of American Electronics Association.

For the most part, I do not believe that all of the comments made by Mr. Foster are appropriate. For example, in opposing our requested changes to 7202(c) (now 3426.3), he states that "[w]illful conduct can include simple negligence . . ."  That statement is not true.

Furthermore, his criticisms with respect to the definition of "trade secret" do not make any sense in light of all of the modifications we made concerning the definition.  More specifically, it is my understanding that language will be added to 3426.1(a) which will meet almost all of Mr. Foster's objections.

Mr. Foster's letter contained other comments which I felt were either slightly inaccurate or fully addressed by the modifications proposed and agreed upon at our meeting.  However, I have talked with Greg Wood and he indicated to me that he will be sending you a

Exhibit 1 - Page 96

**MORRISON & FOERSTER**
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Robert T. Cornell, Esq.
Halley, Cornell and Lynch
May 31, 1984
Page 2.

Re:  AB 501

letter discussing, point by point, the concerns set
forth in Mr. Foster's letter, so I see no need to duplicate
Greg's work here.  My main point is that, in my opinion,
the concerns of Mr. Foster have been met by the compromises
reached during our meeting and I would hope that AB
501 can be changed in accordance with those compromises
without further modification.

Again, we appreciate the time you have spent
in this matter and the time you have spent with us.

Very truly yours,

Neal S. Millard

NSM:ep

cc:  Gregory B. Wood, Esq.
Nilsson, Robbins, Dalgarn, Berliner, Carson & Vurst

Ray Lebov, Esq.
Counsel to the Assembly Committee on the
Judiciary, State of California

Margaret M. Morrow, Esq.
Kadison, Pfaelzer, Woodard, Quinn & Rossi

David Simon, Esq.
Spensley, Horn, Jubas & Lubitz

Judith A. Harper, Coordinator
Conference of Delegates

Exhibit 1 - Page 97

LAW OFFICES OF

# NILSSON, ROBBINS, DALGARN.
# BERLINER, CARSON & WURST

A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

707 WILSHIRE BOULEVARD

47TH FLOOR

LOS ANGELES, CALIFORNIA 90017

(213) 620-0600

CABLE ADDRESS: LAPAT

TELEX 194187 LAPATLSA

BILLY A. ROBBINS*
BYARD G. NILSSON*
LEWIS M. DALGARN*
ROBERT BERLINER*
JOHN CARSON*
HAROLD E. WURST*
MICHAEL S. ELKIND*
GREGORY B. WOOD*
LEONARD D. MESSINGER
ROBERT A. GREEN
ADAM COCHRAN
THOMAS H. MAJCHER

*DENOTES PROFESSIONAL CORPORATION

June 6, 1984

Robert Cornell, Esq.
Halley, Cornell & Lynch
50 California Street, 25th Floor
San Francisco, California 94111

          Re:   Trade Secrets Bill
                Docket Number 3012-116

Dear Bob:

          I received your letter of May 22, 1984 with the two
attachments.  Items 1 through 10 on your May 16, 1984 summary are
substantially in accord with my notes.  With respect to the trade
secret definition, I was under the impression that agreement, at
least in principle, had been reached to delete the words "and not
being readily ascertainable by proper means by" and leaving the
words "other persons who can obtain economic value from its
disclosure or use" intact.  It remains our view, however, that
leaving this last phrase unchanged adds nothing and, in fact,
muddles the definition.  My recollection is that the only matter
left unresolved was whether to include the public along with
"other persons who can obtain economic value from its disclosure
or use."  After some consideration we acceded to your position to
include reference to the public.  Additionally, we are agreeable
to amplifying the definition of "improper means" to specifically
exclude reverse engineering or independent derivation when exercised
alone.   I believe that these additions would take care of any per-
ceived ambiguities.

          As an aside, I would again refer you to the Indiana
Trade Secret case where a policy holder list was deemed, ab initio,
to not be a trade secret, since the Court, applying the uniform

Exhibit 1 - Page 98

Robert Cornell, Esq., June 6, 1984 - Page Two


act, found that there were no other persons who could obtain
economic value from the disclosure of that list.  In my view, this is
a bad   result and has the undesirable effect of limiting the
application of trade secret law.  This case is a very clear illus-
tration of why we have concern about leaving in the words "other
persons who can obtain economic value from its disclosure or use"
in the act.

Referring to the letter from Alan Foster, who apparently
represents an organization called the American Electronics Assoc-
iation, I have a number of comments.

Firstly, neither myself nor any of my partners, all of
whom have been extensively involved in the engineering field, have
ever heard of the American Electronics Association.  Consequently,
it would be helpful if you could provide us with some background
on this organization, its member companies, and whether the views
expressed in the letter were the views of Alan Foster or were
based upon an evaluation of the proposed legislation and consensus
by the members of that organization.

Secondly, Mr. Foster's comment that the proposal to amend
the definition of trade secret alters a definition of trade secret
which has been applied for years is simply incorrect.  In point of
fact, the definition which we propose is virtually identical to
the restatement definition.  It is the Uniform Act which changes
the trade secret definition from that which has been applied for
years.  If, in fact, the definition of trade secret by the Uniform
Act was simply the same as that applied by courts over the past
numerous years, then we would not oppose the definition.  As such,
Mr. Foster is incorrect when he states that the proposed amendment
moves away from consistency on major items of trade secret law.
Mr. Foster is equally incorrect in his statement that the amended
trade secret definition would cause confusion regarding legislative
intent and encourage litigation.  In point of fact, this is exactly
what would happen if the Uniform Act trade secret definition was
adopted, as is clearly demonstrated by the Indiana decision refer-
red to above.

Thirdly, the proposed amendment would indeed give trade
secret protection to the company who manufactured, for example, a
valve which could be dissambled and analyzed in three minutes.
However, under current law, and under the proposed amendment to
the trade secret, any trade secret would end as soon as the valve
had, in fact, been put on the market and made public.  However,

Exhibit 1 - Page 99

Robert Cornell, Esq., June 6, 1984 - Page Three

under the Uniform Act definition, since the valve could be readily
ascertainable by proper means, no trade secret could ever have
existed as to the part, even during the development period when
the valve had not been disclosed.  Consequently, a company who
spent time, money and effort to develop such a valve would have no
recourse against a disgruntled employee who left the company dur-
ing the development period and disclosed the valve to a competitor.
I seriously doubt that many companies would accept or support such
a result.

     Fourthly, with respect to Mr. Foster's comment on Section
7202(a), I see little possibility that a court would adopt an
interpretation which would prohibit damages unless an injunction
also issued.  On the other hand, leaving the language "or in lieu
of" clearly suggests that the court may either award damages or an
injunction, but not both.  The possibility that a court would in-
terpret these statutes in this way is, in my view, much greater
with much more serious consequences than in the unlikely event that
a court would require that an award of damages be contingent upon
the issuance of an injunction.

     Fifthly, Mr. Foster's comment that simple negligence
could be "willful" is simply not possible.  Specifically, the will-
fulness or maliciousness refers to "misappropriation".  Under the
definition of misappropriation in the Act, "knowledge" or the "use
of improper means" is required.  Improper means is then defined to
include "theft, bribery, misrepresentation, breach or inducement
of a breach of a duty to maintain secrecy, or espionage through
electronics or other means."  Consequently, it is simply not possi-
ble for someone to misappropriate "negligently" under the Act.
Each instance of misappropriation under the Act will therefore
necessarily be intentional.

     Sixthly, with respect to Mr. Foster's comment on Section
7206, there has been no analysis whatsoever as to the effect of the
enactment of the Uniform Act on other Code provisions which relate
to trade secrets.  While Mr. Foster may be correct as to certain
statutes, the language originally proposed in the Uniform Act
would "throw the baby out with the bathwater".  At the very least,
various Code sections relating to trade secrets should be con-
sidered, analyzed and repealed only upon a consideration of their
specific interaction with the Uniform Act.  This simply has not
been done.  Consequently, Section 7206 as amended (AB 501) Section
3426.7(a)) as set forth in the February 7, 1983 version, should
remain as is.

Exhibit 1 - Page 100

Robert Cornell, Esq., June 6, 1984 - Page Four

Seventhly, I cannot agree with Mr. Foster's comments regarding Section 7207. This Section would in no way alter or affect a "trade secret case" but simply states that if the parties agree, the Trade Secret Act will not affect contractual rights and obligations. Stated another way, in a contract action between two parties, the Trade Secret Act will not, and indeed should not, be applicable to alter the rights and duties of the parties created voluntarily by the contract.

In view of the above comments, I trust that we will proceed forthwith with the adoption or inclusion of items 1 through 10 in your memo of May 16, 1984, and that the amendment to the definition of trade secret which was set forth in the marked up copy of AB 501 which accompanied my letter to you of May 24, 1984 will likewise be incorporated.

I would appreciate it if you could keep me informed as to the status of this Act and its amendments.

Very truly yours,

Gregory B. Wood
For the Firm

GBW:LH
Enclosure
cc:  R. LeBov
     J.A. Harper
     N.S. Millard
     D. Simon
     M. Morrow
     D. Oloson

Exhibit 1 - Page 101

(Vol. 27)   643

3.75% rate against the applicable distant signal thereof and the aggregated gross receipts.

Second, in the case of a cable system located wholly or in part within a top 100 television market, if the 3.75% rate is not applicable to a given DSE or fraction thereof, the cable system should apply both the appropriate syndicated exclusivity surcharge and the current base rate to such DSE's or fraction thereof and against the aggregated gross receipts, as provided in 37 CFR 308.2(d)(1) and (2). The Office notes that if a cable system "straddles" more than one type of television market, the Tribunal's rules clearly require application of the surcharge attributable to the higher market.

Third, in the case of a cable system located wholly outside of a top 100 television market but within a smaller television market, if the 3.75% rate is not applicable to a given DSE or fraction thereof, the cable system should apply the current base rate (37 CFR 308.2(a)) to such DSE's or fraction thereof and against the aggregated gross receipts.

Finally, in the case of a cable system located wholly outside all television markets, the cable system should apply only the current base rate to the DSE's and the aggregated gross receipts. [End Text]

The Office has also confirmed that copyright royalty fees must be paid on the basis of carriage for the entire accounting period for any distant signal carried during any part of the 83-1 accounting period, unless proration of the DSE is allowed under the Copyright Act and 37 CFR 201.17(f)(3). The cable system, however, will apply different rate structures depending upon whether carriage took place before March 15, 1983, or after March 14, 1983.

On another issue, the Copyright Office confirmed its tentative opinion that if the FCC did not grant a waiver of rules request, the DSE resulting from carriage of that signal after accounting period 81-1 requires application of the 3.75% rate, unless the signal is properly substituted for an "old" signal previously carried.

The interim rules went into effect April 16th. Written comments (ten copies) should be forwarded, on or before May 16th, to Library of Congress, Department D.S., Washington, D.C. 20540.

For further information, contact Dorothy Schrader, General Counsel, Copyright Office, Library of Congress, Washington, D.C. 20559. Telephone: (202) 287-8380.

The new rules, as published in the April 16th issue of the Federal Register (49 Fed. Reg. 14944), appear in the text section.

# BRIEFS

**Trade Secrets, Injunctions:** The Court of Appeals of Indiana (Second District) decides that an insurance company's policyholders lists are not entitled to protection as trade secrets because they lack "independent economic value * * * from not being generally known." (Steenhoven v. College Life Insurance Co. of America, 3/8/84)

The trial court preliminarily enjoined Steenhoven from contacting past or present clients regarding replacing their College Life Insurance policies. Steenhoven was also ordered to return certain materials to College Life.

The Court of Appeals upheld that portion of the order requiring return of the materials, but reversed as to the prohibition against contacting the defendant's clients. College Life then petitioned for rehearing, arguing that policyholder lists constitute trade secrets because they are not readily ascertainable from the policyholders themselves.

In order to be considered a trade secret under the Uniform Trade Secrets Act, the court rules, "the information at issue must be imbued with a certain 'independent economic value * * * from not being generally known'." Such is not the case here, Judge Ratliff rules:

[Text] No such inherent independent value can be ascribed to this list of policyholders' names and addresses, even if such list is placed in the hands of a rival insurance organization. Alone it is effectively worthless. Lacking independent economic value in the hands of another, we cannot say that such a list would constitute a trade secret within the meaning of the Uniform Trade Secrets Act. [End Text]

(Ed. Note: In footnote 5, the court comments that its decision should not be interpreted to mean that every customer list is ineligible for trade secret protection. Where goods or services are sold to a small, fixed group of purchasers, Judge Ratliff says, a supplier's customer list could well constitute a trade secret.)

The petition for rehearing is denied.

**Legislation, Inventors Day:** On April 10th, President Reagan signed HJRes 271 (P.L. 98-251) designating February 11, 1984, as "National Inventors Day." The resolution passed the Senate on March 26th (see 27 PTCJ 528) and the House on February 8th (see 27 PTCJ 389).

**Copyright Royalty Tribunal, Personnel:** The Senate Judiciary Committee, on April 12th, approved the nomination of Mario F. Aguero to be a Commissioner of the Copyright Royalty Tribunal. Aguero was nominated to the post last month (see 27 PTCJ at 484) to complete the unexpired term of Commissioner Mary Lou Burg, who died last May.

Aguero, 60, is the founder and president of Artists Radio Television Espectaculos and a New York member of the First Hispanic Council.

One other vacancy on the Tribunal, resulting from the confirmation last September of Katherine Ortega as Treasurer of the United States, remains to be filled.

**Legislation, Joint Ventures:** On April 6th, the House Judiciary Committee issued its report on H.R. 5041, the "Joint Research and Development Act of 1984."

As reported out by the committee (see 27 PTCJ 477), the bill provides for the application of the "rule

BNA's Patent, Trademark & Copyright Journal
0148-7965/84/$0+.50

Exhibit 1 - Page 102

AMENDED IN SENATE JULY 6, 1984

AMENDED IN ASSEMBLY MAY 3, 1983

AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983–84 REGULAR SESSION

# ASSEMBLY BILL No. 501

Introduced by Assemblyman Harris

February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1 SECTION 1.   Title 5 (commencing with Section 3426)
2 is added to Part 1 of Division 4 of the Civil Code, to read:

96   40

Exhibit 1 - Page 103

AB 501                              — 2 —

1    TITLE 5.   UNIFORM TRADE SECRETS ACT
2
3       3426.   This title may be cited as the Uniform Trade
4    Secrets Act.
5       3426.1.   As used in this title, unless the context requires
6    otherwise:
7       (a) "Improper means" includes theft, bribery,
8    misrepresentation, breach or inducement of a breach of
9    a duty to maintain secrecy, or espionage through
10   electronic or other means.
11      (b) "Misappropriation" means:
12      (1) Acquisition of a trade secret of another by a person
13   who knows or has reason to know that the trade secret
14   was acquired by improper means; or
15      (2) Disclosure or use of a trade secret of another
16   without express or implied consent by a person who:
17      (A) Used improper means to acquire knowledge of
18   the trade secret; or
19      (B) At the time of disclosure or use, knew or had
20   reason to know that his or her knowledge of the trade
21   secret was:
22      (i) Derived from or through a person who had utilized
23   improper means to acquire it;
24      (ii) Acquired under circumstances giving rise to a
25   duty to maintain its secrecy or limit its use; or
26      (iii) Derived from or through a person who owed a
27   duty to the person seeking relief to maintain its secrecy
28   or limit its use; or
29      (C) Before a material change of his or her position,
30   knew or had reason to know that it was a trade secret and
31   that knowledge of it had been acquired by accident or
32   mistake.
33      (c) "Person" means a natural person, corporation,
34   business trust, estate, trust, partnership, association, joint
35   venture, government, governmental subdivision or
36   agency, or any other legal or commercial entity.
37      (d) "Trade secret" means information, including a
38   formula, pattern, compilation, program, device, method,
39   technique, or process, that:
40      (1) Derives independent economic value, actual or

96   50

Exhibit 1 – Page 104

— 3 —                    AB 501

1 potential, from not being generally known to, and not
2 being readily ascertainable by proper means by, other
3 persons who can obtain economic value from its
4 disclosure or use; and
5    (2) Is the subject of efforts that are reasonable under
6 the circumstances to maintain its secrecy.
7    3426.2.   (a) Actual or threatened misappropriation
8 may be enjoined. Upon application to the court, an
9 injunction shall be terminated when the trade secret has
10 ceased to exist, but the injunction may be continued for
11 an additional period of time in order to eliminate
12 commercial advantage that otherwise would be derived
13 from the misappropriation.
14    (b) If the court determines that it would be
15 unreasonable to prohibit future use, an injunction may
16 condition future use upon payment of a reasonable
17 royalty for no longer than the period of time the use could
18 have been prohibited.
19    (c) In appropriate circumstances, affirmative acts to
20 protect a trade secret may be compelled by court order.
21    3426.3.   (a) A complainant may recover damages for
22 the actual loss caused by misappropriation. A
23 complainant also may recover for the unjust enrichment
24 caused by misappropriation that is not taken into account
25 in computing damages for actual loss.
26    (b) If neither damages nor unjust enrichment caused
27 by misappropriation are provable, the court may order
28 payment of a reasonable royalty for no longer than the
29 period of time the use could have been prohibited.
30    (c) If willful ~~and~~ or malicious misappropriation exists,
31 the court may award exemplary damages in an amount
32 not exceeding ~~twice~~ *three times the amount of* any award
33 made under subdivision (a) or (b).
34    3426.4.   If a claim of misappropriation is made in bad
35 faith, a motion to terminate an injunction is made or
36 resisted in bad faith, or willful ~~and~~ *or* malicious
37 misappropriation exists, the court may award reasonable
38 attorney's fees to the prevailing party.
39    3426.5.   In an action under this title, a court shall
40 preserve the secrecy of an alleged trade secret by

96  70

Exhibit 1 - Page 105

AB 501                    — 4 —

1   reasonable   means,   which   may   include   granting
2   protective   orders   in   connection   with   discovery
3   proceedings, holding in-camera hearings, sealing the
4   records of the action, and ordering any person involved
5   in the litigation not to disclose an alleged trade secret
6   without prior court approval.
7       3426.6.   An action for misappropriation must be
8   brought within three years after the misappropriation is
9   discovered or by the exercise of reasonable diligence
10  should have been discovered. For the purposes of this
11  section, a continuing misappropriation constitutes a
12  single claim.
13      3426.7.   (a) Except as otherwise expressly provided,
14  this title does not supersede any statute relating to
15  misappropriation of a trade secret, or any statute
16  otherwise regulating trade secrets.
17      (b)  This title does not affect the disclosure of a public
18  record by a state or local agency under the California
19  Public Records Act (Chapter 3.5 (commencing with
20  Section 6250) of Division 7 of Title 1 of the Government
21  Code). Any determination as to whether the disclosure of
22  a public record constitutes a misappropriation of a trade
23  secret and the rights and remedies with respect thereto
24  shall be made pursuant to the law in effect before the
25  operative date of this title.
26      3426.8.   This title does not affect any contractual rights
27  or remedies.
28      3426.9.   This title shall be applied and construed to
29  effectuate its general purpose to make uniform the law
30  with respect to the subject of this title among states
31  enacting it.
32      3426.10.   If any provision of this title or its application
33  to any person or circumstances is held invalid, the
34  invalidity does not affect other provisions or applications
35  of the title which can be given effect without the invalid
36  provision or application, and to this end the provisions of
37  this title are severable.
38      3426.11.   This title does not apply to misappropriation
39  occurring prior to January 1, 1984 *January 1, 1985*. If a
40  continuing misappropriation otherwise covered by this

96  90

Exhibit 1 - Page 106

— 5 —                                                                 AB 501

1   title began before ~~January 1, 1984~~ *January 1, 1985*, this title
2   does not apply to the part of the misappropriation
3   occurring before that date. This title does apply to the
4   part of the misappropriation occurring on or after that
5   date unless the appropriation was not a misappropriation
6   under the law in effect before the operative date of this
7   title.
8       SEC. 2.   Section 2036.2 is added to the Code of Civil
9   Procdure, to read:
10      2036.2.   In any action alleging the misappropriation of
11  a trade secret under the Uniform Trade Secrets Act
12  (Title 5 (commencing with Section 3426) of Part 1 of
13  Division 4 of the Civil Code), before commencing
14  discovery relating to the trade secret under Chapter 2
15  (commencing with Section 1985) or Article 3
16  (commencing with Section 2016) of Chapter 3 of this
17  title, the party alleging the misappropriation shall
18  identify the trade secret with *reasonable* particularity
19  subject to any orders which may be appropriate under
20  Section 3426.5 of the Civil Code.

O

96   100

Exhibit 1 - Page 107

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 1 - Page 108

UNIFORM TRADE SECRETS ACT:
Erosion of the Right to Know

AB 501 would enact the Uniform Trade Secrets Act prepared by the Commissioners on Uniform State Laws.  The bill (including Assembly amendments) would significantly expand trade secret protection in California in the following ways:

1.   The Bill Would Expand the Definition of a Trade Secret Substantially.  Current law requires that the secret be a device that is continuously used in business. This bill would broaden the definition substantially.  One justification offered by the Commissioners for this expansion is the trade secret protection of all research.  The expanded definition would have a substantial impact on the right to obtain health and safety information, pollution data, and other information related to toxic substances and public health.

2.   The Bill Would Significantly Broaden the Protection of the Secret From Disclosure.  The holder of a trade secret only has protection against the wrongful disclosure of the secret.  This bill would substantially broaden that which is considered wrongful.  For example, disclosure of a secret that is acquired by mistake or accident could now be an actionable wrong.

3.   This Bill Would Impliedly Overrule Many California Laws and Regulations.  Presently, trade secrets are defined in various California codes.  For example, Government Code Section 6254.7 makes clear that pollution data are never trade secrets.  Trade secrets are already given ample protection in such provisions as Health and Safety Code Section 25173, Labor Code Sections 6322 and 6396, and various other provisions of law.  To the extent inconsistent with this bill, those sections would evidently be overruled.

4.   This Bill Requires Courts to Maintain Trade Secrets, Thus Eliminating the Traditional Judicial Power to Disclose Such Secrets in the Interests of Justice.  Evidence Code Section 1060 currently provides that a court may disclose a trade secret if its maintenance would work an injustice or fraud.  The Evidence Code section has been used to disclose trade secret information in the interests of public health and safety.  (Uribe v. Howie.)  This bill, however, would require a court to maintain all such information in secret. It is not clear that the Evidence Code authority would still remain.

Exhibit 1 - Page 109

5.   <u>This Bill Would Significantly Affect the Worker's and Public's Right to Know About Toxic Substances</u>. Many communities and all California workers have the right to know about toxic substances present on the job or in their communities.  This bill would substantially eliminate that right by broadening the amount of information that any employer or business can claim as a trade secret.  Even employee medical and exposure records, which are currently protected by regulation, might well be impacted by this bill, since many employers have claimed such records as trade secrets.  Under current regulation, these secrets are expressly required to be disclosed.

This bill was defeated in 1982 (AB 3738).  It should be defeated again.  However, the bill will soon become law if action is not taken immediately to lobby against it.

PHW1E-1                                   2

Exhibit 1 - Page 110



**THE STATE BAR
OF CALIFORNIA**

OFFICE OF LEGISLATIVE AFFAIRS

1100 ELEVENTH STREET, SUITE 315, SACRAMENTO, CALIFORNIA 95814      (916) 444-2762

July 25, 1984

The Honorable Elihu M. Harris
Assembly Member, 13th District
State Capitol, Room 6031
Sacramento, CA 95814

     RE: AB 501 (Harris) - Trade Secrets

Dear Assembly Member Harris:

     The Conference of Delegates of the State Bar of California,
joining with the Patent, Trademark and Copyright Section opposes
AB 501, your bill relating to trade secrets. We wholeheartedly
agree with the concept of a uniform law in this area, but have
found this specific proposal to be seriously lacking in its
definition of "trade secret". While the Commissioners on
Uniform Laws have acceded to other of our suggestions for changes
to the uniform law, they, in the name of uniformity, appear
immutable on the subject of changing the definition to reflect
the current state of trade secret law.

     The American Bar Association's Patent, Trademark and
Copyright Section, and the American Patent Law Association wrote
a letter to the California legislature making it clear that all
the organized bars throughout the nation which first supported
the uniform law, after reading it more closely, have withdrawn
their support. This is what we are seeing in California with AB
501. The attorneys who deal on a daily basis with trade secret
law are virtually unanimous in their opposition to the definition
of trade secret found in AB 501.

     There are two major problems with the definition of trade
secret found in AB 501. Currently California enjoys a uniformity
of definition between the Penal Code provisions (P.C. §499c) and
the body of civil law on trade secrets (our case law derives
ultimately from the Restatement). Under case law, trade secrets
"may consist of any formula, pattern, device or compilation of
information which is used in one's business and which gives him
an opportunity to obtain an advantage over competitors who do not
know or use it" (260 C.A.2d 251). The Penal Code provision
essentially specifies information which is secret and affords a
business advantage.

     These two definitions have proven quite workable over the
years. However, AB 501 proposes to introduce an inconsistent
definition, creating a double standard of justice in California.

Exhibit 1 - Page 111

The Honorable Elihu M. Harris
July 25, 1984
Page 2

The second problem deals with the definition itself.   The
definition proposed in the bill reads as follows:

> (d) "Trade secret" means information, . . .
> that:
> (1) Derives independent economic value,
> actual or potential, from not being generally
> known to, and not being readily ascertainable
> by proper means by, other persons who can
> obtain economic value from its disclosure or
> use; and
> (2) Is the subject of efforts that are
> reasonable under the circumstances to
> maintain its secrecy.

This definition is viewed as ambiguous, restrictive and
unduly limited by our trade secrets people.  We would propose to
make the following deletions:

> (d) "Trade secret" means information, . . .
> that:
> (1) Derives independent economic value,
> actual or potential, from not being generally
> known to, and not being readily ascertainable
> by proper means by, other persons who can
> obtain economic value form its disclosure or
> use; and . . . .

Why should the legality of a trade secret depend upon
whether the person to whom a secret is readily ascertainable can
obtain economic value from its disclosure or use?  It may be that
the company or individual is not in the field of the secret's use
and therefore cannot use it, or it may not know to whom to
disclose it for value.  The definitions of "readily ascertain-
able", "other persons" and "economic value" are so ambiguous that
there will be years of uncertainty while their meanings are
litigated.

The uncertainty will be compounded in view of well-
established existing definitions under California law, meaning
the body of case law in the eight states which have enacted the
Uniform Law is nascent.  But we are already seeing cases in which
litigation has arisen over the lack of clarity in the uniform
law.

Exhibit 1 - Page 112

The Honorable Elihu M. Harris
July 25, 1984
Page 3


Adopting the Uniform definition can only serve to spawn
litigation.  While that might promote full employment for trade
secret lawyers, we would prefer to see "trade secrets" defined
clearly and in a manner that will equitably balance the rights of
those involved.

Trade secrets are the lifeblood of progressive industry in
California.  Trade secrets are properly regulated by the state in
order to balance the equities of residents of the state.
California law now defines trade secrets in a manner that has
effectively served the state's interests.  Adopting the limited
and ambiguous definition of AB 501 would clearly be adverse to
the state, facilitating the removal of trade secrets from
California.  Jobs would be lost and many industries would
founder.

There is much more that could be said about this bill.  I
hope that you will agree to meet with us before the hearing so
that we can help to work out an equitable compromise to expedite
the already-long agenda. *See you August 3d.*

Sincerely,

*Judy*

Judith A. Harper
Legislative Representative


JAH:tlh

Exhibit 1 - Page 113

## NO ANALYSIS REQ'D

| Department | County or State of origin | Bill Number |
|---|---|---|
| FOOD AND AGRICULTURE | | AB 501 |
| | | Date Last Amended July 6, 1984 |

460.2

☐ — Analysis not required of this bill - Not within scope of responsibility of this department.

☐ — Technical Bill - No program or fiscal changes to existing program.

☐ — Bill as amended no longer within scope of responsibility or program of the department and should be reviewed for reassignment to another department.

☐ — Technical Amendment - No change in previously submitted analysis required. Approved position of prior analysis is _____

☐ — Minor Amendment - Previously submitted analysis still valid. Previously approved position is _____

☒ — Minor Amendment - No change in approved position of _OPPOSE_. See comments below.  (unless amended)

☐ — Other

Comments:  The amendments of July 6, 1984, change the bill in two minor respects.

1. Damages for willful or malicious appropriation of a trade secret increased from twice to three times the amount of any award for actual damages or reasonable royalty, and

2. effective date of the bill changed to January 1, 1985.

The department remains opposed to the bill because of the undue liability it would impose on governmental entities.

To remove the concerns addressed above and in previous analyses, Section 3426.7 (Pg. 4) line 13) should be amended to read: "(b) This title does not affect the disclosure of a public record by a state or local agency under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code). Any determination as to whether the disclosure of a public record under the California Public Records Act constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this bill."

NOTE: The author accepted our suggested amendment just prior to the 8/7 hearing in S. Judiciary & w/ this amendment our opposition is removed

| Department | | Date |
|---|---|---|
| | | |

Exhibit 1 - Page 114



SENATE COMMITTEE ON JUDICIARY
Barry Keene, Chairman
1983-84 Regular Session

AB 501 (Harris)
As amended July 6                                          A
Civil Code and Code of Civil Procedure                     B
BW
                                                           5
                                                           0
        UNIFORM TRADE SECRETS ACT                          1


                        HISTORY

Source:  National Conference of Commissioners on
         Uniform State Laws

Prior Legislation:  None

Support:  General Electric; Ford Motor Company

Opposition:  American Electronics Association;
             Patent, Trademark, and Copyright
             Section of the State Bar;
             Conference of Delegates of the
             State Bar; Genest Technologies;
             Paramount Fitness Equipment Corp.,
             Ltd; Terminal Data Corp; JBL, Inc.

Assembly Floor Vote:  Ayes 76 - Noes 0

                      KEY ISSUE

SHOULD MODEL LEGISLATION RECOMMENDED BY THE
NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM
STATE LAWS GOVERNING CIVIL REMEDIES FOR
MISAPPROPRIATION OF TRADE SECRETS BE ENACTED?


                                        (More)





Exhibit 1 - Page 115



AB 501 (Harris)
Page 2

## PURPOSE

Existing law contains a number of provisions concerning the dissemination of trade secrets.

This bill would establish a statutory scheme--the Uniform Trade Secrets Act--to protect confidential business information.  In particular, the bill would:

--provide for the enjoining of actual or threatened misappropriation of a trade secret;

--permit a complainant to recover actual damages or unjust enrichment for the loss caused by the improper acquisition or disclosure of a trade secret.  If neither damages nor unjust enrichment caused by misappropriation were provable, the court could order payment of a reasonable royalty for no longer that the period the use could have been prohibited.  Treble exemplary damages would be permitted for willful or malicious misappropriation;

--authorize the award of reasonable attorneys' fees to the prevailing party when a claim of misappropriation was made in bad faith, or a motion to terminate an injunction was made or resisted in bad faith, or where willful or malicious misappropriation was found.

The purpose of the bill is to codify further the laws governing misappropriation of trade secrets through the enactment of model legislation.

(More)



Exhibit 1 - Page 116



AB 501 (Harris)
Page 3

## COMMENT

1.  **Highlights of analysis**

    --The bill would create a new definition of
    the term "trade secret."  (See Comment 3).

    --The Patent, Trademark, and Copyright Section
    of the State Bar prefers that the present
    definition of "trade secret" remain in
    force.  (See Comment 4).

    --Despite the novel provisions of the Act,
    trade secret law currently in force would
    govern the issue of whether disclosure of a
    public record constituted an unauthorized
    misappropriation. (See Comment 5).

    --Non-controversial provisions of the bill are
    summarized in Comment 6.

2.  **Brainchild of the National Conference**

    In 1979, the Uniform Trade Secrets Act,
    written by the National Conference of
    Commissioners on Uniform State Laws
    (hereinafter "National Conference") was
    recommended for enactment in all states by
    that body, and was approved by the American
    Bar Association in 1980.  Eight other states
    (Minnesota, Kansas, Idaho, Washington,
    Arkansas, Delaware, Louisiana, and Indiana)
    have passed a version of this legislation.

    The National Conference drafted the Act
    because it thought that in general "there
    [was] undue uncertainty concerning the



                                      (More)

Exhibit 1 - Page 117



AB 501 (Harris)
Page 4

parameter of trade secret protection, and the appropriate remedies for misappropriation of a trade secret."  Although both the Act and traditional trade secret law contain general concepts, the main contribution of the Act, it is stated, is that it creates unitary definitions of the terms "trade secret" and "misappropriation," and prescribes a single statute of limitations for the various property, quasi-contractual, and breach of fiduciary relationship theories of noncontractual liability utilized under common law.  The sponsor believes that the Act codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

3.   The parameters of a trade secret

   (a)   Current definition of a trade secret

       Under existing case law trade secrets "may consist of any formula, pattern, device, or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Diodes, Inc. V. Franzen, 260 Cal. App. 2d 244 at 251 (1968).  Penal Code 499c, the criminal statute prohibiting misappropriation of confidential business information, sets forth a comparable definition.



(More)

Exhibit 1 - Page 118



AB 501 (Harris)
Page 5

(b) <u>New meaning under the Act</u>

The bill eschews the existing definition
of a trade secret in favor of a new one:
information that (1) derives independent
economic value from not being generally
known to, and not being readily
ascertainable by proper means by, other
persons who can obtain economic value from
its disclosure or use; and (2) is the
subject of efforts that are reasonable
under the circumstances to maintain its
secrecy.

4.  <u>State Bar objections to the new definition</u>

The Patent, Trademark, and Copyright Section
of the State Bar strongly opposes this change.

(a) <u>Difficulty in determining what is readily</u>
<u>ascertainable</u>

That group argues that inclusion of the
phrase "readily ascertainable" only
muddles the meaning of the term trade
secret.  If a scientist time could
discover within six months time a complex
formula through reverse engineering or a
literature search, the confidential
information could be considered readily
ascertainable.  The Bar questions whether
a firm would have an actionable claim if a
competitor misappropriated business
information which it soon would have
discovered through legitimate scientific
means.



(More)

Exhibit 1 - Page 119



AB 501 (Harris)
Page 6

This opponent believes that making the existence of a trade secret dependent upon the information not being "readily ascertainable" invites the various parties to speculate on the time needed to discover a secret.  See, e.g., <u>Steenhoven v. College Life Ins. Co. of America</u>, 458 N.E. 661 (1984) (Ind. App. Ct.). <u>on rehearing</u> 460 N.E. 973 (1984).  (This case concerned the issue of whether insurance company policyholder information was "readily" ascertainable").

(b)  <u>Different definition under the criminal statute</u>

Further, the State Bar Section notes, since the Penal Code Section 499c definition contains no such requirement, adoption of this formulate would divorce the civil law definition of a trade secret from the criminal law one, thereby generating unneeded confusion.

(c)  <u>Possible loss of jobs to other states</u>

Finally, this opponent fears that passage of the bill would endanger the confidentiality of the trade secrets of firms doing business in California.  If companies doing business in other jurisdiction obtained this information, commerce and jobs could conceivably flow out of state.



(More)

Exhibit 1 - Page 120



AB 501 (Harris)
Page 7

   (d)  <u>Amendments sought by the Bar Section</u>

The Bar wants the disputed language--i.e., ready ascertainability by other persons who can obtain economic value from disclosure or use--deleted from the definition of trade secret.  This change, the opponent states, would eliminate the perceived ambiguity and conform the definition under the Act with the meaning of trade secrets under the criminal statute.

5.  <u>Disclosure of trade secrets under the Public Records Act</u>

   (a)  <u>Relevant provisions of the bill</u>

The bill specifies that passage of the Act would not affect the disclosure of information by state or local agencies under the Public Records Act.  That statute exempts agencies from releasing records which may not be disclosed pursuant to other provisions of state law.

The determination of whether the disclosure of a public record constitutes a misappropriation of a trade secret would be made under the law in effect before the operative date of this bill.

   (b)  <u>Industry objections</u>

The American Electronics Association complains that the latter provision would freeze the evolution of trade secret law.



(More)

Exhibit 1 - Page 121



AB 501 (Harris)
Page 8

      While all cases of misappropriation not involving the disclosure of public records would be governed by the law contained in the Uniform Trade Secrets Act, in those instances involving the release of official records, the law superseded by the Act would apply.

      SHOULD NOT THE BILL SET FORTH A UNIFIED BODY OF TRADE SECRET LAW, INSTEAD OF ESTABLISHING SEPARATE RULES FOR THOSE CASES CONCERNING THE DISCLOSURE OF PUBLIC RECORDS?

6.   <u>Other provisions of AB 501</u>

  (a) <u>Litigation procedures in trade secret cases</u>

      The bill would provide that, in any action alleging misappropriation under the Act, before commencing discovery relating to the trade secret, the party alleging the misappropriation would have to identify the trade secret with reasonable particularity, subject to any protective orders which may be appropriate.  Further, a court could use reasonable means, such as protective orders, sealing of records, and in-camera hearings, to preserve the secrecy of a trade secret in an action under the Act.

  (b) <u>No effect on existing statutes or contracts</u>



                        (More)

Exhibit 1 - Page 122



AB 501 (Harris)
Page 9

AB 501 would provide that the Act would
not affect any contractual rights or
remedies and that, except as otherwise
expressly provided, it would not supersede
any statute relating to the
misappropriation of a trade secret.

(c)  Effective date of the Act

The bill's provisions would not apply to
misappropriations occurring prior to
January 1, 1985.  The Act would apply to
the part of a continuing misappropriation
occurring on or after that date, unless it
was not a misappropriation under the law
in effect before the bill's operative
date.

*****************



Exhibit 1 - Page 123

STATE OF CALIFORNIA                                          GEORGE DEUKMEJIAN, *Govern*

# DEPARTMENT OF FOOD AND AGRICULTURE



Proposed amendment to AB 501 as amended July 6, 1984:

at page 4 of the bill, line 13

3426.7

   (b) This title does not affect the disclosure of a ~~public~~ record
by a state or local agency under the California Public Records Act (Chapter
3.5 (commencing with Section 6250) of Division 7 of Title 1 of the
Government Code). Any determination as to whether the disclosure of a
~~public~~ record under the California Public Records Act constitutes a
misappropriation of a trade secret and the rights and remedies with respect
thereto shall be made pursuant to the law in effect before the operative
date of this title.

Exhibit 1 - Page 124

( ) (

# REPORT OF SENATE COMMITTEE ON JUDICIARY
## ON ASSEMBLY BILL 501

In order to indicate more fully its intent with respect to Assembly Bill 501, the Senate Committee on Judiciary makes the following report.

Assembly Bill 501 was introduced to effectuate the recommendation of the California Commission on Uniform State Laws that the Uniform Trade Secrets Act promulgated by the National Conference of Commissioners on Uniform State Laws be adopted in California. Except for the new comment set out below, the Comments of the National Conference with respect to the Act reflect the intent of the Senate Committee on Judiciary in approving Assembly Bill 501.

Section 3426.1 of the Code of Civil Procedure

Comment.  One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics." Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974).  The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1.   Discovery by independent invention;

2.   Discovery by "reverse engineering," that is, by starting with the known product and working backward to find the method by which it was developed.  The acquisition of the known product must of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful;

3.   Discovery under a license from the owner of the trade secret;

4.   Observation of the item in public use or on public display;

5.   Obtaining the trade secret from published literature.

Improper means could include otherwise lawful conduct which is improper under the circumstances; e.g., an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant.  E.I. du Pont de Nemours & Co., Inc. v. Christopher, 431 F.2d 1012 (CA 5, 1970), cert. den. 400 U.S. 1024 (1970).  Because the trade secret can be destroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

Exhibit 1 - Page 125

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will not work could be of great value to a competitor.

Cf. Telex Corp. v. IBM Corp., 510 F.2d 894 (CA 10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for developmental cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to the public or to other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

The phrase "and not being readily ascertainable by proper means by" was included in this section as originally proposed by the National Conference of Commissioners on Uniform State Laws. It was removed from the section in favor of the phrase "the public or to." This change was made because the original language was viewed as ambiguous in the definition of a trade secret. However, the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

Exhibit 1 - Page 126

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis," and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets against flagrant industrial espionage. See E.I. du Pont de Nemours & Co., Inc. v. Christopher, supra. It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

Exhibit 1 - Page 127

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 1 - Page 128

AMENDED IN SENATE AUGUST 15, 1984

AMENDED IN SENATE JULY 6, 1984

AMENDED IN ASSEMBLY MAY 3, 1983

AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983–84 REGULAR SESSION

# ASSEMBLY BILL                                No. 501

---

### Introduced by Assemblyman Harris

### February 7, 1983

---

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1  SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

95   40

Exhibit 1 – Page 129

AB 501        — 2 —

# TITLE 5.  UNIFORM TRADE SECRETS ACT

1
2
3     3426.  This title may be cited as the Uniform Trade
4 Secrets Act.
5     3426.1.  As used in this title, unless the context requires
6 otherwise:
7     (a) "Improper means" includes theft, bribery,
8 misrepresentation, breach or inducement of a breach of
9 a duty to maintain secrecy, or espionage through
10 electronic or other means.  *Reverse engineering or*
11 *independent derivation alone shall not be considered*
12 *improper means.*
13     (b) "Misappropriation" means:
14     (1) Acquisition of a trade secret of another by a person
15 who knows or has reason to know that the trade secret
16 was acquired by improper means; or
17     (2) Disclosure or use of a trade secret of another
18 without express or implied consent by a person who:
19     (A) Used improper means to acquire knowledge of
20 the trade secret; or
21     (B) At the time of disclosure or use, knew or had
22 reason to know that his or her knowledge of the trade
23 secret was:
24     (i) Derived from or through a person who had utilized
25 improper means to acquire it;
26     (ii) Acquired under circumstances giving rise to a
27 duty to maintain its secrecy or limit its use; or
28     (iii) Derived from or through a person who owed a
29 duty to the person seeking relief to maintain its secrecy
30 or limit its use; or
31     (C) Before a material change of his or her position,
32 knew or had reason to know that it was a trade secret and
33 that knowledge of it had been acquired by accident or
34 mistake.
35     (c) "Person" means a natural person, corporation,
36 business trust, estate, trust, partnership, association, joint
37 venture, government, governmental subdivision or
38 agency, or any other legal or commercial entity.
39     (d) "Trade secret" means information, including a
40 formula, pattern, compilation, program, device, method,

95   50

Exhibit 1 – Page 130

1  technique, or process, that:
2      (1). Derives independent economic value, actual or
3  potential, from not being generally known to ~~, and not~~
4  ~~being readily ascertainable by proper means by;~~ *the*
5  *public or to* other persons who can obtain economic value
6  from its disclosure or use; and
7      (2) Is the subject of efforts that are reasonable under
8  the circumstances to maintain its secrecy.
9      3426.2.   (a) Actual or threatened misappropriation
10  may be enjoined. Upon application to the court, an
11  injunction shall be terminated when the trade secret has
12  ceased to exist, but the injunction may be continued for
13  an additional period of time in order to eliminate
14  commercial advantage that otherwise would be derived
15  from the misappropriation.
16      (b) If the court determines that it would be
17  unreasonable to prohibit future use, an injunction may
18  condition future use upon payment of a reasonable
19  royalty for no longer than the period of time the use could
20  have been prohibited.
21      (c) In appropriate circumstances, affirmative acts to
22  protect a trade secret may be compelled by court order.
23      3426.3.   (a) A complainant may recover damages for
24  the actual loss caused by misappropriation. A
25  complainant also may recover for the unjust enrichment
26  caused by misappropriation that is not taken into account
27  in computing damages for actual loss.
28      (b) If neither damages nor unjust enrichment caused
29  by misappropriation are provable, the court may order
30  payment of a reasonable royalty for no longer than the
31  period of time the use could have been prohibited.
32      (c) If willful ~~or~~ *and* malicious misappropriation exists,
33  the court may award exemplary damages in an amount
34  not exceeding ~~three times the amount of~~ *twice* any award
35  made under subdivision (a) or (b).
36      3426.4.   If a claim of misappropriation is made in bad
37  faith, a motion to terminate an injunction is made or
38  resisted in bad faith, or willful ~~or~~ *and* malicious
39  misappropriation exists, the court may award reasonable
40  attorney's fees to the prevailing party.

95  70

Exhibit 1 - Page 131

AB 501 — 4 —

1   3426.5.   In an action under this title, a court shall
2   preserve the secrecy of an alleged trade secret by
3   reasonable means, which may include granting
4   protective orders in connection with discovery
5   proceedings, holding in-camera hearings, sealing the
6   records of the action, and ordering any person involved
7   in the litigation not to disclose an alleged trade secret
8   without prior court approval.
9   3426.6.   An action for misappropriation must be
10  brought within three years after the misappropriation is
11  discovered or by the exercise of reasonable diligence
12  should have been discovered. For the purposes of this
13  section, a continuing misappropriation constitutes a
14  single claim.
15  3426.7.   (a) Except as otherwise expressly provided,
16  this title does not supersede any statute relating to
17  misappropriation of a trade secret, or any statute
18  otherwise regulating trade secrets.
19    *(b) This title does not affect (1) contractual remedies,*
20  *whether or not based upon misappropriation of a trade*
21  *secret, (2) other civil remedies that are not based upon*
22  *misappropriation of a trade secret, or (3) criminal*
23  *remedies, whether or not based upon misappropriation*
24  *of a trade secret.*
25    (b)
26    *(c)*   This title does not affect the disclosure of a public
27  record by a state or local agency under the California
28  Public Records Act (Chapter 3.5 (commencing with
29  Section 6250) of Division 7 of Title 1 of the Government
30  Code). Any determination as to whether the disclosure of
31  a public record *under the California Public Records Act*
32  constitutes a misappropriation of a trade secret and the
33  rights and remedies with respect thereto shall be made
34  pursuant to the law in effect before the operative date of
35  this title.
36    3426.8.   This title does not affect any contractual rights
37  or remedies.
38    3426.9.
39    *3426.8.*   This title shall be applied and construed to
40  effectuate its general purpose to make uniform the law

95   110

Exhibit 1 – Page 132

—5—                                       AB 501

1  with respect to the subject of this title among states
2  enacting it.
3  ~~3426.10.~~
4  *3426.9.*  If any provision of this title or its application
5  to any person or circumstances is held invalid, the
6  invalidity does not affect other provisions or applications
7  of the title which can be given effect without the invalid
8  provision or application, and to this end the provisions of
9  this title are severable.
10  ~~3426.11.~~
11  *3426.10.*  This title does not apply to misappropriation
12  occurring prior to January 1, 1985. If a continuing
13  misappropriation otherwise covered by this title began
14  before January 1, 1985, this title does not apply to the part
15  of the misappropriation occurring before that date. This
16  title does apply to the part of the misappropriation
17  occurring on or after that date unless the appropriation
18  was not a misappropriation under the law in effect before
19  the operative date of this title.
20    SEC. 2.   Section 2036.2 is added to the Code of Civil
21  Procdure, to read:
22    2036.2.   In any action alleging the misappropration of
23  a trade secret under the Uniform Trade Secrets Act
24  (Title 5 (commencing with Section 3426) of Part 1 of
25  Division 4 of the Civil Code), before commencing
26  discovery relating to the trade secret under Chapter 2
27  (commencing with Section 1985) or Article 3
28  (commencing with Section 2016) of Chapter 3 of this
29  title, the party alleging the misappropriation shall
30  identify the trade secret with reasonable particularity
31  subject to any orders which may be appropriate under
32  Section 3426.5 of the Civil Code.

O

95   120

Exhibit 1 - Page 133

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 1 - Page 134

Volume 8

# Journal of the Senate

## Legislature of the State of California

1983–1984 Regular Session
1983–1984 First Extraordinary Session
1983–1984 Second Extraordinary Session



HON. LEO T. McCARTHY
President of the Senate

HON. DAVID ROBERTI
President pro Tempore

DARRYL R. WHITE
Secretary of the Senate

0   0 0 55

Exhibit 1 - Page 135

Aug. 27, 1984          SENATE JOURNAL          13883

**Motion to Amend**

The amendments to AB 2909, proposed by Senator Maddy, were read and adopted and the bill ordered printed and to third reading.

## MOTIONS TO TAKE BILLS FROM THE INACTIVE FILE

Senator Torres moved that **AB 3422** and **AB 3081** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Doolittle moved that **AB 1716** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Seymour moved that **AB 3873** be taken from the inactive file and placed on the third reading file.

Motion carried.

## MOTION TO PRINT IN JOURNAL

Senator Keene moved that the following report be printed in the Journal.

Motion carried.

### REPORT OF SENATE COMMITTEE ON JUDICIARY ON ASSEMBLY BILL 501

In order to indicate more fully its intent with respect to Assembly Bill 501, the Senate Committee on Judiciary makes the following report.

Assembly Bill 501 was introduced to effectuate the recommendation of the California Commission on Uniform State Laws that the Uniform Trade Secrets Act promulgated by the National Conference of Commissioners on Uniform State Laws be adopted in California. Except for the new comment set out below, the comments of the national conference with respect to the act reflect the intent of the Senate Committee on Judiciary in approving Assembly Bill 501.

*Section 3426.1 of the Code of Civil Procedure*

*Comment.* One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics." *Kewanee Oil Co.* v. *Bicron Corp.,* 416 U.S. 470 (1974). The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1. Discovery by independent invention;
2. Discovery by "reverse engineering," that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful;
3. Discovery under a license from the owner of the trade secret;
4. Observation of the item in public use or on public display;
5. Obtaining the trade secret from published literature.

4R4   827 R2 15

Exhibit 1 - Page 136

Improper means could include otherwise lawful conduct which is improper under the circumstances; *e.g.*, an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant. *E.I. du Pont de Nemours & Co., Inc.* v. *Christopher,* 431 F.2d 1012 (CA 5, 1970), cert. den. 400 U.S. 1024 (1970). Because the trade secret can be destroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will *not* work could be of great value to a competitor.

*Cf. Telex Corp.* v. *IBM Corp.,* 510 F.2d 894 (CA 10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for developmental cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to the public or to other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

The phrase "and not being readily ascertainable by proper means by" was included in this section as originally proposed by the National Conference of Commissioners on Uniform State Laws. It was removed from the section in favor of the phrase "the public or to." This change was made because the original language was viewed as ambiguous in the definition of a trade secret. However, the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

484   827 83 20

Exhibit 1 - Page 137

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis," and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets against flagrant industrial espionage. See *E.I. du Pont de Nemours & Co., Inc.* v. *Christopher, supra*. It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

### REQUEST FOR UNANIMOUS CONSENT (AB 4006)

Senator Keene asked for, and was granted, unanimous consent to rescind the action whereby AB 4006 was passed to the Assembly.

Bill ordered returned to third reading.

### CONSIDERATION OF DAILY FILE (RESUMED)
### MOTIONS TO TAKE BILLS FROM THE INACTIVE FILE

Senator Deddeh moved that **AB 3826** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Leroy Greene moved that **AB 2635** be taken from the inactive file and placed on the third reading file.

Motion carried.

### MESSAGES FROM THE ASSEMBLY

Sacramento, August 27, 1984

*Hon. Darryl White, Secretary of the Senate*

Dear Darryl: The Assembly on this day suspended Joint Rule 28.1 as it pertains to AB 2185 and respectfully requests the Senate to do the same.

Sincerely,

JAMES D. DRISCOLL, Chief Clerk

### MOTION TO SUSPEND JOINT RULE 28.1

Senator Nielsen moved to suspend Joint Rule 28.1 as it pertains to AB 2185.

#### Roll Call

The roll was called and the motion carried by the following vote:

AYES (40)—Senators Alquist, Ayala, Beverly, Boatwright, Campbell, Carpenter, Craven, Davis, Deddeh, Dills, Doolittle, Ellis, Foran, Garamendi, Bill Greene, Leroy Greene, Hart, Johnson, Keene, Lockyer, Maddy, Marks, McCorquodale, Mello, Montoya, Nielsen, Petris, Presley, Richardson, Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Speraw, Stiern, Torres, Vuich, and Watson.

NOES (0)—None.

484   827 83 30

Exhibit 1 - Page 138

# SENATE REPUBLICAN CAUCUS
## SENATOR JOHN SEYMOUR, Chairman

POSITIONS:

SOURCE: National Conference of Commissioners
on Uniform State Laws

SUPPORT: General Electric
Ford Motor Company

BILL NUMBER: AB 501

AUTHOR: Harris

AMENDED COPY: 8/15/84
MAJORITY VOTE

Committee Votes:

Senate Floor Vote:



| COMMITTEE: Judiciary BILL NO.: AB 501 DATE OF HEARING: 8-7-84 | | |
|---|---|---|
| SENATORS: | AYE | NO |
| Doolittle | | |
| Lockyer | ✓ | |
| Marks | ✓ | |
| Petris | | |
| Presley | ✓ | |
| Richardson | ✓ | |
| Roberti | | |
| Torres | | |
| Watson | | |
| Davis (V. Chair.) | ✓ | |
| Keene (Chairman) | | |
| TOTAL: | 6 | 0 |

Assembly Floor Vote:   76-0, Pg. 3439 (5/5/83)

DIGEST

1  This bill would establish the Uniform Trade Secrets Act to provide
2  civil remedies for misappropriation of trade secrets.
3
4  FISCAL EFFECT: Appropriation: No.  Fiscal Committee: No.  Local: No.
5
6  None.
7
8  COMMENTS:
9  Existing law provides criminal penalties for misappropriation of trade
10 secrets but does not provide civil remedies.
11
12 This bill provides civil remedies for misappropriation of trade
13 secrets by establishing the Uniform Trade Secrets Act.  Specifically,
14 the bill:
15
16 1)  Defines a "trade secret" as information which is a source of
17     economic benefit to its possessor because it is not generally
18     known and reasonable efforts are made to maintain its secrecy.
19
20 2)  Provides for the enjoining of actual or threatened
21     misappropriation, as defined, of a trade secret.
22
23 3)  Allows a complainant, who would be required to identify the
24     particular trade secret, to recover damages for losses or unjust
25     enrichment caused by the misappropriation.  If damages or unjust
26     enrichment could not be proved, the court could order payment of a
27     reasonable royalty for a limited time.  Exemplary damages would be
28     permitted for willful or malicious misappropriation.
29
30
31                                    NEXT PAGE
32

Exhibit 1 - Page 139

ANALYSIS CONTINUED:                    PAGE: 2        BILL NUMBER:  AB 501

4)   Authorizes an award of reasonable attorney's fees to the
     prevailing party if bad faith or willful and malicious
     misappropriation was found.

5)   Directs the courts to use reasonable means, such as in-camera
     hearings or sealing of court records, to protect the trade secrets
     from disclosure during court proceedings.

6)   Provides that this bill would not affect the disclosure of a
     public record by a state or public agency.  Any determination of
     whether the disclosure of a public record would constitute a
     misappropriate of a trade secret would be made pursuant to the law
     in effect before the operative date of this bill.

7)   Specifies a statute of limitations for acts occurring before
     January 1, 1985.

8/15/84/VW/nf

Exhibit 1 - Page 140

AB  501

CONCURRENCE IN SENATE AMENDMENTS

AB  501  (_____Harris_____)  As Amended:  August 15, 1984

ASSEMBLY VOTE  76-0   ( May 5, 1983  ) SENATE VOTE  40-0  (August 27, 1984)

Original Committee Reference:  JUD.

DIGEST

Existing law provides criminal penalties for misappropriation of trade secrets but does not provide civil remedies.

As passed by the Assembly, this bill provided civil remedies for misappropriation of trade secrets by establishing the Uniform Trade Secrets Act.

Specifically, the bill:

1) Defined a "trade secret" as information which is a source of economic benefit to its possessor because it is not generally known or readily ascertainable, and reasonable efforts are made to maintain its secrecy.

2) Provided for the enjoining of actual or threatened misappropriation, as defined, of a trade secret.

3) Allowed a complainant, who would be required to identify the particular trade secret, to recover damages for losses or unjust enrichment caused by the misappropriation.  If damages or unjust enrichment could not be proved, the court could order payment of a reasonable royalty for a limited time.  Exemplary damages would be permitted for willful or malicious misappropriation.

4) Authorized an award of reasonable attorney's fees to the prevailing party if bad faith or willful and malicious misappropriation was found.

5) Directed the courts to use reasonable means, such as in-camera hearings or sealing of court records, to protect the trade secrets from disclosure during court proceedings.

6) Provided that this bill would not affect the disclosure of a public record by a state or public agency.  Any determination of whether the disclosure of a public record would constitute a misappropriation of a trade secret would be made pursuant to the law in effect before the operative date of this bill.

7) Specified a statute of limitations for acts occurring before January 1, 1984.

-continued-

ASSEMBLY OFFICE OF RESEARCH                    AB  501

Exhibit 1 - Page 141

AB 501
Page 2

The Senate amendments:

1) Provide that reverse engineering or independent derivation alone will not be considered improper means of obtaining trade secrets.

2) Delete from the definition of "trade secret" information which is not readily available by proper means.

3) Provide that before commencing action under the bill, a complainant must identify the trade secret with reasonable particularity.

4) Authorize an award of reasonable attorney's fees to the prevailing party if willful or malicious misappropriation is found.

5) Provide that this title does not affect any of the following, whether or not they are based on misappropriation of a trade secret:

   a) Contractual remedies.

   b) Other civil remedies.

   c) Criminal remedies.

6) Extend the statute of limitations to acts occurring before January 1, 1985.

FISCAL EFFECT

None



DISTRICT OFFICE
1111 JACKSON STREET
SUITE 5027
OAKLAND, CALIFORNIA 94607
(415) 464-0339

SACRAMENTO ADDRESS
STATE CAPITOL
SACRAMENTO, CALIFORNIA 95814
(916) 445-7442

# Assembly
# California Legislature

COMMITTEES
CHAIRMAN
JUDICIARY
CRIMINAL LAW & PUBLIC SAFETY
FINANCE & INSURANCE
TRANSPORTATION

**ELIHU M. HARRIS**
ASSEMBLYMAN, THIRTEENTH DISTRICT

September 12, 1984

The Honorable George Deukmejian
Governor
State of California
State Capitol
Sacramento, California  95814

ATTN:  Bob Williams

Dear Governor Deukmejian:

Assembly Bill 501, which is before you, was introduced at the recommendation of the California Commission on Uniform State Laws for the purpose of enacting the Uniform Trade Secrets Act in California.

A valid patent provides a legal monopoly for seventeen years in exchange for public disclosure of an invention.  If, however, the courts ultimately decide that the Patent Office improperly issued a patent, an invention will have been disclosed to competitors with no corresponding benefit.  In view of the substantial number of patents that are invalidated by the courts, many businesses now elect to protect commercially valuable information through reliance upon the state law of trade secret protection. Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974), which establishes that neither the Patent Clause of the United States Constitution nor the federal patent laws pre-empt state trade secret protection for patentable or unpatentable information, may well have increased the extent of this reliance.

Notwithstanding the commercial importance of state trade secret law to interstate business, this law has not developed satisfactorily.  In the first place, its development is uneven. Although there typically are a substantial number of reported

Exhibit 1 - Page 143

-2-

The Honorable George Deukmejian
September 12, 1984
AB 501


decisions in states that are commercial centers, this is not the case in less populous and more agricultural jurisdictions. Secondly, even in states in which there has been significant litigation, there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret. Nonetheless, the most widely accepted rules of trade secret law, Section 757 of the Restatement of Torts, were among those omitted from the Restatement of Torts, 2d (1978).

The Uniform Act codifies the basic principles of common law trade secret protection, preserving its essential distinctions from patent law. Like traditional trade secret law, the Uniform Act contains general concepts. The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law. The Uniform Act also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

During the past two years the Commission has worked on the bill with the Patent, Trademark, and Copyright Section and representatives of the Conference of Delegates of the State Bar. Both of these groups support the bill in its current form.

Nine other states have currently enacted the Uniform Act. The enactment of the act in California will assist in bringing clarity and uniformity in this important area of law.

I respectfully request your signature of AB 501.

Sincerely,



ELIHU M. HARRIS

EMH:atd

Exhibit 1 - Page 144



# THE STATE BAR
# OF CALIFORNIA

OFFICE OF LEGISLATIVE AFFAIRS

1100 ELEVENTH STREET, SUITE 315, SACRAMENTO, CALIFORNIA 95814

(916) 444-2762

September 6, 1984

The Honorable George Deukmejian
Governor, State Capitol
Sacramento, CA  95814

     Re:  SUPPORT for AB 501 (Harris) - Trade Secrets

Dear Governor Deukmejian:

    The  Conference of Delegates of the State Bar of California,
joining with the Patent, Trademark and Copyright Section urges
your favorable consideration of Assembly Member Harris' AB 501, a
bill that would codify the Uniform Trade Secrets Act.

    We have worked closely with the National Conference of
Commissioners on Uniform State Laws to hone their proposal.  The
result of these efforts, AB 501, will put California at the fore-
front of those states which have adopted the Uniform Law.  The
new definition of trade secret, while somewhat different from the
original language proposed, is the product of intense negotiation
between the attorneys working in trade secrets law and the
Commissioners.

    As more and more states adopt the Uniform Trade Secrets Law,
changes are inevitable, as states tailor the uniform law to fit
their own unique histories or circumstances.  The final version
adopted by the California Legislature is more closely attuned to
California's existing civil case law as well and Penal Code
provisions relating to misappropriation of trade secrets, than
the original version.  The end result is a much better law for
all concerned.

    We sincerely hope that you will agree with us that this is a
much-needed revision of California law.  Thank you for your
consideration and attention.

Sincerely,

Judith A. Harper
Legislative Coordinator

JAH:tlh

cc:  Bion Gregory                        Lowell Anderson
     Assembly Member Elihu Harris✓         Neal S. Millard
     Gregory B. Wood                       David M. Simon
     John Carson                           Terrence P. Conner
     Byard G. Nilsson                      Thomas F. Smegal, Jr.
     Darrell Olson                         Robert H. Cornell

Exhibit 1 - Page 145

765.4

# ENROLLED BILL REPORT

| DEPARTMENT OF FOOD AND AGRICULTURE | AB | BILL NUMBER 501 |
|---|---|---|
| | | AUTHOR Harris |

### SUMMARY

This Act provides that actual or threatened misappropriation (as defined in the Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

As originally introduced, the Department had concerns that the bill would impose some penalties on governmental agencies for inadvertent release of trade secret information. Because the Department responds to a large number of requests for information pursuant to the Public Records Act (California Government Code Section 6250, et. seq.), the bill would have presented the possibility that damages would have to be paid for the inadvertent disclosure of trade secret data in our files.

The author accepted our suggested amendments to address these concerns and remove our opposition.

### Conclusion

We recommend the Governor sign AB 501.

*This is an industry supported bill intended to protect trade secret information -- something that is necessary to assure adequate research and development by the private sector.*

| Vote: | Ayes 77 | | Ayes 40 |
|---|---|---|---|
| Assembly | Noes 0 | Senate | Noes 0 |

RECOMMENDATION:

[X] SIGN    [ ] VETO    DEFER TO

DEPARTMENT DIRECTOR

DATE 9-7-84

Exhibit 1 - Page 146

Volume 3

# STATUTES OF CALIFORNIA

### AND DIGESTS OF MEASURES

## 1984

Constitution of 1879 as Amended

Measures Submitted to Vote of Electors,
Primary Election, June 5, 1984
and General Election, November 6, 1984

General Laws, Amendments to the Codes, Resolutions,
and Constitutional Amendments passed by the
California Legislature

## 1983–84 Regular Session
## 1983–84 Second Extraordinary Session



Compiled by
**BION M. GREGORY**
*Legislative Counsel*

Exhibit 1 - Page 147

written appeal. The fact that an appeal is permitted to both the planning commission and to the governing body does not extend the 60-day period. Notwithstanding a decision pursuant to subdivision (b) that the application and submitted materials are not complete, if the final written determination on the appeal is not made within that 60-day period, the application with the submitted materials shall be deemed complete for the purposes of this chapter.

(d) Nothing in this section precludes an applicant and a public agency from mutually agreeing to an extension of any time limit provided by this section.

(e) This section shall become operative on July 1, 1985, and shall remain in effect only until January 1, 1991, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1991, deletes or extends that date. If that date is not deleted or extended, then, on and after January 1, 1991, pursuant to Section 9611 of the Government Code, Section 65943 of the Government Code, as amended by Section 11 of Chapter 1207 of the Statutes of 1979, shall have the same force and effect as if this temporary provision had not been enacted.

SEC. 2.   Notwithstanding Section 6 of Article XIII B of the California Constitution and Section 2231 or 2234 of the Revenue and Taxation Code, no appropriation is made by this act for the purpose of making reimbursement pursuant to these sections. It is recognized, however, that a local agency or school district may pursue any remedies to obtain reimbursement available to it under Chapter 3 (commencing with Section 2201) of Part 4 of Division 1 of that code.

----

## CHAPTER 1724

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

[Approved by Governor September 30, 1984. Filed with Secretary of State September 30, 1984.]

*The people of the State of California do enact as follows:*

SECTION 1.   Title 5 (commencing with Section 3426) is added to Part 1 of Division 4 of the Civil Code, to read:

## TITLE 5.   UNIFORM TRADE SECRETS ACT

3426.   This title may be cited as the Uniform Trade Secrets Act.

3426.1.   As used in this title, unless the context requires otherwise:

(a)  "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or

10  05

Exhibit 1 - Page 148

espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

3426.2.   (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

3426.3.   (a) A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken

10  015

Exhibit 1 - Page 149

into account in computing damages for actual loss.

(b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).

3426.4.   If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

3426.5.   In an action under this title, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

3426.6.   An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

3426.7.   (a)  Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

(b)  This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

(c)  This title does not affect the disclosure of a record by a state or local agency under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code). Any determination as to whether the disclosure of a record under the California Public Records Act constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title.

3426.8.   This title shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this title among states enacting it.

3426.9.   If any provision of this title or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the title which can be given effect without the invalid provision or application, and to this end the provisions of this title are severable.

3426.10.   This title does not apply to misappropriation occurring prior to January 1, 1985. If a continuing misappropriation otherwise

10  025

Exhibit 1 - Page 150

covered by this title began before January 1, 1985, this title does not apply to the part of the misappropriation occurring before that date. This title does apply to the part of the misappropriation occurring on or after that date unless the appropriation was not a misappropriation under the law in effect before the operative date of this title.

SEC. 2.   Section 2036.2 is added to the Code of Civil Procedure, to read:

2036.2.   In any action alleging the misappropration of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret under Chapter 2 (commencing with Section 1985) or Article 3 (commencing with Section 2016) of Chapter 3 of this title, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders which may be appropriate under Section 3426.5 of the Civil Code.

---

## CHAPTER 1725

An act to amend Section 23161 of, to amend and repeal Sections 23171, 23176, and 23191 of, to add and repeal Sections 23166.1, 23186.1, and 23205.1 of, and to add and repeal Article 3 (commencing with Section 23230) to Chapter 12 of Division 11 of, the Vehicle Code, relating to driving offenses.

[Approved by Governor September 30, 1984. Filed with
Secretary of State September 30, 1984.]

*The people of the State of California do enact as follows:*

SECTION 1.   Section 23161 of the Vehicle Code is amended to read:

23161.   (a) Except as provided in subdivision (f), if the court grants probation to any person punished under Section 23160, in addition to the provisions of Section 23206 and any other terms and conditions imposed by the court, the court shall impose as a condition of probation that the person be subject to one of the following:

(1)  Be confined in the county jail for at least 48 hours but not more than six months and pay a fine of at least three hundred ninety dollars ($390) but not more than one thousand dollars ($1,000). The court may order the Department of Motor Vehicles to suspend the privilege to operate a motor vehicle pursuant to paragraph (1) of subdivision (a) of Section 13352 when this condition of probation is imposed.

(2)  Pay a fine of at least three hundred ninety dollars ($390) but not more than one thousand dollars ($1,000) and have the privilege to operate a motor vehicle restricted for 90 days to necessary travel

10  05

Exhibit 1 - Page 151

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 1 - Page 152

CALIFORNIA LEGISLATURE

**1983–84 REGULAR SESSION**
**1983–84 SECOND EXTRAORDINARY SESSION**

# SUMMARY DIGEST

*of*

Statutes Enacted and Resolutions (Including Proposed
Constitutional Amendments) Adopted in 1984

*and*

## 1979–1984 Statutory Record



**DARRYL R. WHITE**
*Secretary of the Senate*

**JAMES Đ. DRISCOLL**
*Chief Clerk of the Assembly*

Compiled by
**BION M. GREGORY**
*Legislative Counsel*

Exhibit 1 - Page 153

making reimbursement pursuant to the constitutional mandate or Section 2231 or 2234, but would recognize that local agencies and school districts may pursue their other available remedies to seek reimbursement for these costs.

(3) The bill, in compliance with Section 2231.5 of the Revenue and Taxation Code, would also repeal, as of January 1, 1991, the provisions contained in the bill for which state reimbursement is required.

Ch. 1724   (AB 501)   Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Ch. 1725   (SB 1915)   Presley.   Driving offenses:   punishment.

(1) Existing law prescribes a period of confinement in the county jail, as a sentence or as a condition of probation, for specified persons who are convicted of a violation of the prohibition against driving under the influence of an alcoholic beverage, a drug, or both, driving with an alcohol-blood concentration of 0.10% or more, or driving when addicted.

This bill would authorize the establishment of 3-year county pilot programs to determine the cost efficiency and therapeutic value of placing persons convicted of these offenses in specified alcohol rehabilitation facilities providing custodial treatment. Eligibility for participation in the pilot programs would be limited to a maximum of 4 counties, including initially the Counties of Los Angeles, Napa, and Riverside, if they apply for participation in the program, and one other county selected by the State Department of Alcohol and Drug Programs. In those counties electing to participate, a court, as conditions of probation, would order a person who has one or more prior offenses within 5 years to undergo a treatment program in a participating alcohol rehabilitation facility, as defined, for a designated period and to pay for the treatment program in that facility, as specified. In participating counties, courts would be required to order presentence screening and assessments, as specified.

The bill would require the county alcohol program administrator in a participating county to establish fees based on ability to pay and to determine each participant's ability to pay. The bill would limit the maximum per diem fee of an approved alcohol rehabilitation facility to the per diem cost of the jail in that county.

The bill would require the facility and its program to have been approved and certified by the department, as specified. The bill would require participating facilities to accept all referrals from the courts. A violation of the terms of the program would be a violation of probation under the bill.

(2) The bill would require the Legislative Analyst to make a specified study and report to the Legislature on the effects of the bill by April 1, 1988. The bill would also require the Legislative Analyst to report on the economic groups served by the pilot programs on or before June 30, 1986.

(3) The bill would incorporate changes in Section 23161 of the Vehicle Code proposed by AB 2491, AB 3872, SB 895, and SB 2232, to be operative only if those bills are enacted and amend Section 23161 of the Vehicle Code.

Ch. 1726   (AB 2840)   Felando.   Commission on Emergency Medical Services.

Under existing law, there are 14 members on the Commission on Emergency Medical Services who serve for terms of 3 years.

This bill would provide for staggering the terms of the commission members by providing for appointments of 1, 2, or 3 years for the first members appointed on or after January 1, 1985. The members would serve to the end of the calendar year in which they were appointed before the term would commence.

Ch. 1727   (SB 2151)   Watson.   Private postsecondary institutions:   authority to award degrees.

Exhibit 1 - Page 154

Exhibit 1 - Page 155

Exhibit 1 - Page 156

## VOLUME 2

CALIFORNIA LEGISLATURE

AT SACRAMENTO

1981–82 REGULAR SESSION
1981–82 FIRST EXTRAORDINARY SESSION

———

# ASSEMBLY FINAL HISTORY

SYNOPSIS OF

ASSEMBLY BILLS, CONSTITUTIONAL AMENDMENTS, CONCURRENT,

JOINT, AND HOUSE RESOLUTIONS

———

Assembly Convened December 1, 1980

| | |
|---|---|
| Recessed December 2, 1980 | Reconvened January 5, 1981 |
| Recessed April 9, 1981 | Reconvened April 20, 1981 |
| Recessed July 7, 1981 | Reconvened July 10, 1981 |
| Recessed July 10, 1981 | Reconvened August 10, 1981 |
| Recessed September 15, 1981 | Reconvened January 4, 1982 |
| Recessed April 1, 1982 | Reconvened April 12, 1982 |
| Recessed June 30, 1982 | Reconvened August 2, 1982 |

Adjourned September 1, 1982
Adjourned Sine Die November 30, 1982

Legislative Days..................................................................................... 248

———

HON. WILLIE L. BROWN, JR.
*Speaker*

HON. LEO T. McCARTHY                HON. TOM BANE
*Speaker pro Tempore*        *Assistant Speaker pro Tempore*

HON. MIKE ROOS                HON. ROBERT W. NAYLOR
*Majority Floor Leader*          *Minority Floor Leader*

*Compiled Under the Direction of*
JAMES D. DRISCOLL
*Chief Clerk*

GUNVOR ENGLE
*History Clerk*

Exhibit 1 - Page 157

1981–82 REGULAR SESSION                                    2273

**A.B. No. 3738—Harris.**

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

1982

Mar.   25—Read first time. To print.
Mar.   26—From printer. May be heard in committee April 25.
April   1—Referred to Com. on JUD.
May    11—From committee: Amend, and do pass as amended. (Ayes 10. Noes 0.) (May 5.)
May    12—Read second time and amended. Ordered returned to second reading.
May    13—Read second time. To third reading.
May    17—Read third time, passed, and to Senate. (Ayes 74. Noes 0. Page 13318.)
May    17—In Senate. Read first time. To Com. on RLS. for assignment.
May    20—Referred to Com. on JUD.
June   22—In committee: Set, first hearing. Hearing canceled at the request of author.
Aug.    3—In committee: Set, second hearing. Hearing canceled at the request of author.
Nov.   30—From Senate committee without further action.

**A.B. No. 3739—Robinson.**

An act to amend Section 6140 of the Business and Professions Code, relating to the State Bar of California.

1982

Mar.   25—Read first time. To print.
Mar.   26—From printer. May be heard in committee April 25.
April   1—Referred to Com. on JUD.
May     5—In committee: Set, first hearing. Hearing canceled at the request of author.
May    11—From committee: Amend, and do pass as amended. (Ayes 8. Noes 4.) (May 5.)
May    12—Read second time and amended. Ordered returned to second reading.
May    13—Read second time. To third reading.
June   17—Read third time and amended. Read third time, passed, and to Senate. (Ayes 51. Noes 24. Page 15351.)
June   17—In Senate. Read first time. To Com. on RLS. for assignment.
June   18—Referred to Com. on JUD.
Aug.    5—From committee: Amend, and do pass as amended. (Ayes 5. Noes 0.)
Aug.    9—Read second time, amended, and to third reading.
Aug.   16—Read third time, passed, and to Assembly. (Ayes 21. Noes 19. Page 13206.)
Aug.   17—In Assembly. Concurrence in Senate amendments pending.
Aug.   18—Assembly refused to concur in Senate amendments. To Conference Committee. (Ayes 3. Noes 69. Page 17224.) Messrs. Robinson, Harris, and Maxine Waters appointed to Conference Committee.
Aug.   25—Senators Petris, Rains, and Beverly appointed to Conference Committee.
Aug.   31—Assembly adopts Conference report. (Ayes 49. Noes 18. Page 18587.)
Aug.   31—Senate adopts Conference report. To enrollment. (Ayes 25. Noes 4. Page 14403.)
Sept.  10—Enrolled and to the Governor at 4 p.m.
Sept.  26—Approved by the Governor.
Sept.  27—Chaptered by Secretary of State—Chapter 1436, Statutes of 1982.

Exhibit 1 - Page 158

CALIFORNIA LEGISLATURE—1981–82 REGULAR SESSION

# ASSEMBLY BILL                           No. 3738

### Introduced by Assemblyman Harris

#### March 25, 1982

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 3738, as introduced, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Title 5 (commencing with Section 3426)
2 is added to Part 1 of Division 4 of the Civil Code, to read:
3
4    TITLE 5.   UNIFORM TRADE SECRETS ACT
5
6    3426.   This title may be cited as the Uniform Trade
7 Secrets Act.
8    3426.1.   As used in this title, unless the context requires
9 otherwise:

Exhibit 1 - Page 159

**AB 3738** —2—

1    (a) "Improper means" includes theft, bribery,
2  misrepresentation, breach or inducement of a breach of
3  a duty to maintain secrecy, or espionage through
4  electronic or other means.
5    (b) "Misappropriation" means:
6    (1) Acquisition of a trade secret of another by a person
7  who knows or has reason to know that the trade secret
8  was acquired by improper means; or
9    (2) Disclosure or use of a trade secret of another
10  without express or implied consent by a person who:
11    (A) Used improper means to acquire knowledge of
12  the trade secret; or
13    (B) At the time of disclosure or use, knew or had
14  reason to know that his or her knowledge of the trade
15  secret was:
16    (i) Derived from or through a person who had utilized
17  improper means to acquire it;
18    (ii) Acquired under circumstances giving rise to a
19  duty to maintain its secrecy or limit its use; or
20    (iii) Derived from or through a person who owed a
21  duty to the person seeking relief to maintain its secrecy
22  or limit its use; or
23    (C) Before a material change of his position, knew or
24  had reason to know that it was a trade secret and that
25  knowledge of it had been acquired by accident or
26  mistake.
27    (c) "Person" means a natural person, corporation,
28  business trust, estate, trust, partnership, association, joint
29  venture, government, governmental subdivision or
30  agency, or any other legal or commercial entity.
31    (d) "Trade secret" means information, including a
32  formula, pattern, compilation, program, device, method,
33  technique, or process, that:
34    (1) Derives independent economic value, actual or
35  potential, from not being generally known to, and not
36  being readily ascertainable by proper means by, other
37  persons who can obtain economic value from its
38  disclosure or use, and
39    (2) Is the subject of efforts that are reasonable under
40  the circumstances to maintain its secrecy.

99

Exhibit 1 - Page 160

— 3 —                                        AB 3738

1    3426.2.   (a) Actual or threatened misappropriation
2  may be enjoined. Upon application to the court, an
3  injunction shall be terminated when the trade secret has
4  ceased to exist, but the injunction may be continued for
5  an additional reasonable period of time in order to
6  eliminate commercial advantage that otherwise would
7  be derived from the misappropriation.
8    (b) If the court determines that it would be
9  unreasonable to prohibit future use, an injunction may
10 condition future use upon payment of a reasonable
11 royalty for no longer than the period of time the use could
12 have been prohibited.
13   (c) In appropriate circumstances, affirmative acts to
14 protect a trade secret may be compelled by court order.
15   3426.3.   (a) In addition to or in lieu of injunctive
16 relief, a complainant may recover damages for the actual
17 loss caused by misappropriation. A complainant also may
18 recover for the unjust enrichment caused by
19 misappropriation that is not taken into account in
20 computing damages for actual loss.
21   (b) If willful and malicious misappropriation exists,
22 the court may award exemplary damages in an amount
23 not exceeding twice any award made under subdivision
24 (a).
25   3426.4.   If a claim of misappropriation is made in bad
26 faith, a motion to terminate an injunction is made or
27 resisted in bad faith, or willful and malicious
28 misappropriation exists, the court may award reasonable
29 attorney's fees to the prevailing party.
30   3426.5.   In an action under this title, a court shall
31 preserve the secrecy of an alleged trade secret by
32 reasonable means, which may include granting
33 protective orders in connection with discovery
34 proceedings, holding in-camera hearings, sealing the
35 records of the action, and ordering any person involved
36 in the litigation not to disclose an alleged trade secret
37 without prior court approval.
38   3426.6.   An action for misappropriation must be
39 brought within three years after the misappropriation is
40 discovered or by the exercise of reasonable diligence

99   100

Exhibit 1 - Page 161

AB 3738                    — 4 —

1 should have been discovered. For the purposes of this
2 section, a continuing misappropriation constitutes a
3 single claim.
4    3426.7.   (a) Except as otherwise expressly provided,
5 this title does not supersede any statute relating to
6 misappropriation of a trade secret, or any statute
7 otherwise regulating trade secrets.
8    3426.8.   This title shall be applied and construed to
9 effectuate its general purpose to make uniform the law
10 with respect to the subject of this title among states
11 enacting it.
12   3426.9.   If any provision of this title or its application
13 to any person or circumstances is held invalid, the
14 invalidity does not affect other provisions or applications
15 of the title which can be given effect without the invalid
16 provision or application, and to this end the provisions of
17 this title are severable.
18   3426.10.   This title does not apply to misappropriation
19 occurring prior to January 1, 1983.

Exhibit 1 - Page 162

PLEASE RETURN IMMEDIATELY TO

ASSEMBLY COMMITTEE ON JUDICIARY


6031 State Capitol


Work Sheet

RE:   Bill No.   *aB 3738 - Harris*

Please complete this form and return it to the Assembly Committee
on Judiciary as soon as possible.

1.   Origin of the bill:

    (a)   What is the source of the bill?   (What person, organizatio
        or governmental entity, if any, requested introduction?)
        Commission on Uniform State Laws
        Robert Cornell, Chairman
        Contact:  Jack Knox  415-434-4896
    (b)   Has a similar bill been before either this or a previous
        session of the Legislature?  If so, please identify the
        Session, bill number and disposition of the bill.

        No

    (c)   Has there been an interim committee report on the bill?
        If so, please identify the report.

        No, but same as the Uniform Trade Secrets Act drafted
        for and approved by the ABA. Retains any pertinent CA statu

2.   Problem or deficiency in the present law which the bill seeks
    to remedy:
        Codification of common law to provide uniformity.
        Trademarks were omitted from Re-Statement of Law
        when it was assumed Fed. Patent Law would pre-empt State.
        Bill clarifies that trademark injunctions should not be
        permanent only for as long as necessary.

3.   Please attach copies of any background material in explanation
    of the bill, or state where such material is available for
    reference by the committee staff and letters of support or
    opposition.


4   Hearing:

    (a)   Approximate amount of time necessary for hearing.
        10 min.
    (b)   Preference for date of hearing.
        Set for May 5.
    (c)   Names of witnesses to testify at the hearing.
        Jack Knox

Exhibit 1 - Page 163

<u>Verrry superficial analysis of AB 3738</u>

1.   The Act needs to specify that independent discovery of a trade
secret through reverse engineering, chemical analysis, and other
common industrial methods is <u>not</u> wrongful, and that these
enumerated methods are merely exemplary.

2.  The Act should not redefine trade secrets apart from 18 USC Sec.1s
The current provision does so in vague terms which would take
years to litigate.

  a.   The State definition is found in Gov. Code sec. 6254.7.  Despite
.the disclaimer in Sec. 3426.7 of the bill, this bill would
completely overrule that definition.

3.   The bill <u>must</u> incorporate the provisions of Evidence Code
sections 1060 and 1040 to the effect that trade secrets may
be disclosed in thex interests of justice.  This provision was
crucial in <u>Uribe v Howie</u>, 19 Cal.App.3d ___ (1970 or so), where
pesticide spray control reports were released in part for this
reason.

4.   Govt. Code sec. 6254.7 makes clear that all pollution data is
not a trade secret.  The bill should so state.

5.   Both the Federal Insecticide, Fungicide and Rodenticide Act,
at 7 U.S.C. sec. 136h, and the Toxic Substances Control Act,
at 1*5 U.S.C. sec. 2613, make clear that all health and safety
data begarding chemicals is not a trade secret.  We cannot
give up this information vital to public health.

Exhibit 1 - Page 164