MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826 Investments
LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br><u>Hon. David O. Carter</u><br><br>**REDACTED VERSION OF REPLY IN SUPPORT OF MGA PARTIES AND IGWT 826 MOTION TO DISMISS RICO AND CREDITOR-FRAUD CLAIMS**<br><br>**Date:    May 28, 2010**<br>**Time:   8:00 a.m.**<br>**Dep't:  9D** |

# TABLE OF CONTENTS

**Page**

I.   MATTEL'S RICO COUNTERCLAIMS SHOULD BE DISMISSED ....................................................................................2

    A.   Mattel Does Not Plead A Valid RICO Enterprise .......................2

    B.   Mattel Does Not Plead A Valid RICO Conspiracy ......................4

    C.   Mattel Does Not Plead With Particularity A Mail Or Wire Fraud .......5

        1.   Honest Services Fraud Is Not A RICO Predicate Act ...............5

        2.   Trade Secret Misappropriation Is Not A Predicate Act.............7

        3.   Obstruction Of Justice Is Not Mail/Wire Fraud .......................8

        4.   Concealment Of Assets Is Not Mail/Wire Fraud.......................9

        5.   In Any Event, Mattel Fails To Plead A Scheme To Defraud ......9

    D.   Mattel Does Not Plead A Travel Act Violation..................................12

    E.   Mattel Does Not Plead Proximate Cause Or RICO Injury ................14

        1.   Mattel Cannot Recover For Mail or Wire Fraud ....................15

        2.   Mattel Cannot Recover For Obstruction Or Tampering..........15

        3.   Mattel Cannot Recover For Travel Act Violations .................16

        4.   Mattel Cannot Recover Here For Copyright Infringement ......17

II.  THE THIRTEENTH THROUGH FIFTEENTH COUNTERCLAIMS SHOULD BE DISMISSED ..........................................18

    A.   Mattel's Opposition Admits That The Claims As To Numerous Transactions Are Barred By The Statutes Of Limitations.................18

    B.   The Court Should Not Exercise Supplemental Jurisdiction ...............20

    C.   The Thirteenth Counterclaim Must Be Dismissed Under Rule 9(b) ......20

    D.   The Fifteenth Counterclaim Is Legally Defective .............................23

III. THE SIXTEENTH COUNTERCLAIM FAILS TO STATE A CLAIM ......................................................................................24

## TABLE OF AUTHORITIES

### FEDERAL

*Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.*,
   1992 WL 97826 (E.D. Pa. Apr. 30, 1992)..........................................8

*Am. Dental Assoc. v. Cigna Corp.*,
   ___ F.3d ___, 2010 WL 1930128, * 6 (11th Cir. May 14, 2010) .................10

*Anza v. Ideal Supply Corp.*,
   373 F.3d 251 (2d Cir. 2004) ..............................................15

*Anza v. Ideal Steel Supply Co.*,
   547 U.S. 451 (2006) ..............................................14, 15, 18

*Asbeka Indus. v. Travelers Indem. Co.*,
   831 F. Supp. 74 (E.D.N.Y. 1993) ..............................................10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ..............................................13, 15

*Atkinson v. Anadarko Bank & Trust Co.*,
   808 F.2d 438 (5th Cir. 1987) ..............................................2, 3

*Barr v. Clinton*,
   370 F.3d 1196 (D.C. Cir. 2004) ..............................................19

*Bassiri v. Xerox Corp.*,
   463 F.3d 927 (9th Cir. 2006) ..............................................5

*Beck v. Prupis*,
   529 U.S. 494 (2000) ..............................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................4, 13

*Blyden v. Mancusi*,
   186 F.3d 252 (2d Cir. 1999) ..............................................17

*Boyle v. U.S.*,
   129 U.S. 2237 (2009) ..............................................2

*Bridge v. Phoenix Bond & Indem. Co.*,
   128 S. Ct. 2131 (2008) ..............................................16

*Bryant v. Mattel*,
   573 F. Supp. 2d 1254 (C.D. Cal 2007)..............................................3, 7, 9, 15

*Cal. Pharm. Mgt., LLC v. Redwood Fire & Cas. Ins. Co.*,
   SACV 09-141 DOC(ANx) (Slip. Op.) (C.D. Cal. Jul. 29, 2009) .................18

*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ..............................................14

*Carpenter v. U.S.*,
   484 U.S. 19 (1987) ..............................................7, 8

*Castner v. First Nat'l. Bank of Anchorage,*
  278 F.2d 376 (9th Cir. 1960) ................................................................. 7

*Cedric Kushner Promotions v. King,*
  533 U.S. 158 (2001) ................................................................. 2, 3

*DeMauro v. Demauro,*
  115 F.3d 94 (1st Cir. 1997) ................................................................. 16

*Doe v. Roe,*
  756 F. Supp. 353 (N.D. Ill. 1991) ................................................................. 5

*Doe v. Roe,*
  958 F.2d 763 (7th Cir. 1992) ................................................................. 5

*EEOC v. Reichhold Chemicals, Inc.,*
  988 F.2d 1564 (11th Cir. 1993) ................................................................. 23

*Florida Evergreen Foliage v. E.I. DuPont DeNemours and Co.,*
  135 F. Supp. 2d 1271 (S.D. Fla. 2001) ................................................................. 9

*Formax, Inc. v. Hostert,*
  841 F.2d 388 (Fed. Cir. 1988) ................................................................. 7, 8

*Gasoline Prods. Co. v. Champlin Refining Co.,*
  283 U.S. 494 (1931) ................................................................. 17

*Grewal v. Choudhury,*
  2007 WL 3146537 *2 (N.D. Cal. Oct. 25, 2007) ................................................................. 21

*Hemi Group, LLC v. City of New York,*
  130 S. Ct. 983 (2010) ................................................................. 6, 14

*Holmes v. Secs. Investor Prot. Corp.,*
  503 U.S. 258 (1992) ................................................................. 16

*Hopkins v. Dow Corning Corp.,*
  33 F.3d 1116 (9th Cir. 1994) ................................................................. 19

*Ideal Steel Supply Corp. v. Anza,*
  373 F.3d 251 (2d Cir. 2004) ................................................................. 15

*Ideal Steel Supply Corp. v. Anza,*
  2009 WL 1883272 *1-2 (S.D.N.Y. June 30, 2009) ................................................................. 15

*In re Country-wide Fin. Corp. Mortgage Mktg. and Sales Practices Litig.,*
  601 F. Supp. 2d 1201 (S.D. Cal. 2009) ................................................................. 11

*In re Ponce Nicasio Broadcasting, L.P.,*
  2008 WL 361081 (Bankr. E.D. Cal. Feb. 7, 2008) ................................................................. 22

*In re Short,*
  818 F.2d 693 (9th Cir. 1987) ................................................................. 25

REPLY ISO MOT. TO DISMISS RICO AND
CREDITOR FRAUD CLAIMS
CV 04-9049-DOC

*In re SDR Capital Mgmt., Inc.*,
        2007 Bankr. LEXIS 3007 (N.D. Cal. Aug. 31, 2007)...................19

*In re Tognetti*,
        2007 WL 1080147 (S.D.N.Y. Bankr. Apr. 9, 2007) ......................25

*Izenberg v. ETS Servs., LLC*,
        589 F. Supp. 2d 1193 (C.D. Cal. 2008)...........................................3

*Jablon v. Dean Witter & Co.*,
        614 F.2d 677 (9th Cir. 1980) .......................................................19

*Johnson Elec. N. Am. Inc., v. Mabuchi Motor Am. Corp.*,
        98 F. Supp. 2d 480 (S.D.N.Y. 2000) ..........................................7, 8

*Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*,
        162 F.3d 1290 (11th Cir. 1998) .....................................................6

*Lancaster Comm. Hosp. v Antelope Valley Hosp. Dist.*,
        940 F.2d 397 (9th Cir. 1991) .......................................................18

*Lincoln House, Inc. v. Dupre*,
        903 F.2d 845 (1st Cir. 1990) .......................................................16

*Medoza v. Zirkle Fruit Co.*,
        301 F.3d 1163 (9th Cir. 2002) .....................................................14

*Natomas Gardens Inv. Group LLC v. Sinadinos*,
        2009 WL 1363382 *13 (E.D. Cal. May 12, 2009).......................14

*Odom v. Microsoft Corp.*,
        486 F.3d 541 (9th Cir. 2007) .........................................................3

*Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*,
        2008 WL 4616796 (S.D. Cal. Aug. 1, 2008).................................20

*Parker v. Learn the Skills Corp.*,
        530 F. Supp. 2d 661 (D. Del. 2008) .............................................18

*In re PillowTex Corp.*,
        2010 WL 1506922, at *8 (Bankr. D. Del. Apr. 14, 2010) ...........22

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*,
        30 F.3d 339 (2d Cir. 1994).............................................................2

*Rochester Radiology Assocs.,P.C. v. Aetna Life Ins. Co.*,
        616 F. Supp. 985 (W.D.N.Y. 1985) ..............................................25

*Rose v. Bartle*,
        871 F.2d 331 (3rd Cir. 1989)..........................................................4

*Salinas v. U.S.*,
        522 U.S. 52 (1997) .........................................................................4

REPLY ISO MOT. TO DISMISS RICO AND
CREDITOR FRAUD CLAIMS
CV 04-9049-DOC

*SEC v. Clark,*
915 F.2d 439 (9th Cir. 1990) ................................................................ 7

*Sequa Corp. v. Gelmin,*
1996 WL 745448 (S.D.N.Y. 1996) ........................................................ 6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
130 S. Ct. 1431 (2010), ..................................................................... 23

*Snead v. Metropolitan Prop. & Cas. Ins. Co.,*
237 F.3d 1080 (9th Cir. 2001) .......................................................... 25

*Steele v. Hosp. Corp. of Amer.,*
36 F.3d 69 (9th Cir. 1994) ................................................................ 14

*Steinberg v. Alpha Fifth Group,*
2010 WL 1332840 (S.D. Fla. March 30, 2010) .................................. 22

*Stochastic Decisions, Inc. v. James Didomenico,*
995 F.2d 1158 (2d Cir. 1993) ...................................................... 15, 16

*Strates Shows, Inc. v. Amusements of America, Inc.,*
379 F. Supp. 2d 817 (E.D.N.C. 2005) ............................................... 16

*Sunnyside Devel. Co. v. Cambridge Display Tech. Ltd.,*
2008 WL 4450328 at 514 (N.D. Cal. Sept. 29, 2008).......................... 21

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) ........................................................... 10

*Sybersound Records v. UAV Corp.,*
517 F.3d 1137 (9th Cir. 2008)........................................................... 14

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Main., Inc.,*
333 F.3d 923 (9th Cir. 2003) ............................................................ 20

*U.S. v. Bohonus,*
628 F.2d 1167 (9th Cir. 1980) ....................................................... 6, 7

*U.S. v. Louderman,*
576 F.2d 1383 (9th Cir. 1978) ........................................................... 7

*U.S. v. Williams,*
441 F.3d 716 (2006) ........................................................................... 6

*U.S. v. Pegg,*
782 F.2d 1498 (9th Cir. 1986).......................................................... 25

*U.S. v. Turkette,*
452 U.S. 576, (1981) ....................................................................... 21

*Vess v. Ciba-Geigy Corp., USA,*
317 F.3d 1097 (9th Cir. 2003) ............................................................ 4

*Watts v. Allstate Indem. Co.,*
  2009 WL 1905047 *1 (E.D. Cal. Jul. 1, 2009) ...................................3

*Webster v. Fall,*
  266 U.S. 507, 45 S. Ct. 148, 69 L. Ed. 411 (1925) .........................5

*World Wrestling Entm't Inc. v. Jakks Pac., Inc.,*
  530 F. Supp. 2d 486 (S.D.N.Y. 2007) ...........................................5

## STATE

*Elliot v. Elliot,*
  231 Cal. App. 2d 205 (1964) ......................................................25

*Fithian v. Fithian,*
  74 Cal. App. 3d 397 (1977) ........................................................25

*Kinder v. Macy,*
  7 Cal. 206 (1857) ......................................................................21

*Macedo v. Bosio,*
  86 Cal. App. 4th 1044, 1046 (2001) ...........................................21

*Tebin v. Moldock,*
  19 A.D.2d 277 (N.Y. Sup. Ct. 1963) .........................................27

## STATUTES

Cal. Civ. Code §3439.09(a) ...........................................................19

Cal. Civ. Code §3439.09(b) ...........................................................19

Fed. R. Civ. P.
  Rule 8 ..............................................................................11, 20, 21
  Rule 9(b) ..........................................................................13, 21, 23
  Rule 12(b)(6)..............................................................................19
  Rule 23.1 ...............................................................................23, 24

18 U.S.C.
  §1341 ...........................................................................................7
  §1343 ...........................................................................................7
  §1346 ........................................................................................5, 6
  §1961(1) ......................................................................................8
  §1961(4) ......................................................................................2
  §1962 ...........................................................................................2
  §1964(c) .....................................................................................14

## MISCELLANEOUS

REST. RESTITUTION § 160 comment a (1937)...............................25

REPLY ISO MOT. TO DISMISS RICO AND
CREDITOR FRAUD CLAIMS
CV 04-9049-DOC

**INTRODUCTION**

Mattel's Opposition to the Motion of the MGA Parties and IGWT to dismiss the RICO claims in the FAAC represents the end of the line for Mattel. Despite years to analyze RICO, a mountain of discovery to sift for supporting facts of "fraud" and other forms of racketeering, four prior efforts to cobble together a coherent theory, and the introduction of a new 'honest services fraud' theory, Mattel still cannot simply set out the elements of a RICO claim and link them to well-pleaded facts in the FAAC. Instead, Mattel resorts to misdirection. It conflates criminal and civil RICO concepts, ignores the differences between frauds and other crimes, materially misstates the MGA Parties' arguments, RICO law and even its own FAAC, and consistently dodges the arguments actually made in the Motion. Mattel tries to justify this avoidance of the merits by citing rulings that Judge Larson made – at a much earlier time, about a much different pleading, in response to much different arguments.

Mattel's RICO claims have had a long run, but they can no longer hide from scrutiny. As shown in the following sections, both the section 1962(c) claim (conducting the affairs of a RICO enterprise) and the 1962(d) claim (conspiring to do so) are fundamentally defective. Mattel cannot plead a RICO enterprise or a RICO conspiracy; nor can it plead a mail or wire fraud, Travel Act violation based on bribery, or an actual injury to its business or property that was proximately caused by racketeering activity. Mattel's RICO claims should be dismissed with prejudice as to all of the MGA Parties and new counter-defendant IGWT 826.

Similarly, the creditor fraud claims are defective on numerous grounds. Mattel fails to respond at all to most of the arguments, and where it does the Opposition's clarification of the pleading provides new grounds for dismissal—an obvious time bar under the relevant statutes of limitations. These claims also should be dismissed with prejudice.

1

**ARGUMENT**

2  **I.    MATTEL'S RICO COUNTERCLAIMS SHOULD BE DISMISSED.**

3      **A.    <u>Mattel Does Not Plead A Valid RICO Enterprise.</u>**

4        A RICO enterprise includes partnerships, corporations, associations, or other

5  legal entities, and "any group of individuals associated in fact although not a legal

6  entity." 18 U.S.C. §1961(4); *see also U.S. v. Turkette*, 452 U.S. 576, 582-83,

7  (1981) (enterprise is an "ongoing organization" whose various associates "function

8  as a continuing unit"); *Boyle v. U.S.*, 129 U.S. 2237, 2243 (2009) (a group of

9  persons who robbed banks were a RICO association-in-fact, because they were

10  "'associated together for a common purpose of engaging in a course of conduct'")

11  (quoting *Turkette*).

12        Section 1962(c) concerns the liability of "any person employed by or

13  associated with any enterprise . . .," who conducts the affairs of that enterprise

14  through a pattern of racketeering. As explained in the Motion (15:1-4): "A

15  plaintiff 'must allege . . . the existence of two *distinct* entities: (1) a "person"; and

16  (2) an "enterprise" that is not simply the same "person" referred to by a different

17  name.' *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)

18  (emphasis added). Mattel's RICO enterprise fails because it is *not* distinct from the

19  named "persons" (*i.e.* counter-defendants). The enterprise consists of subsidiaries

20  and employees of MGA, each of which is also a counter-defendant. In essence,

21  MGA is both the enterprise and "person" being sued. Mattel cannot circumvent the

22  distinctness requirement in such an artificial way. *See* Mot. at 15 (showing that no

23  proper RICO enterprise is alleged when all of the constituents of an association-in-

24  fact are a corporation's subsidiaries and/or employees *or* when all of those

25  constituents are also defendants in the RICO claim; citing *Riverwoods Chappaqua*

26  *Corp. v. Marine Midland Bank*, 30 F. 3d 339, 344 (2d Cir. 1994) and *Atkinson v.*

27

28

- 2 -

1    *Anadarko Bank & Trust Co.*, 808 F. 2d 438 (5th Cir. 1987)).[1]

2       Mattel argues that corporations and their subsidiaries and/or employees can

3    constitute an association-in-fact enterprise, and that Judge Larson already found

4    that Mattel pleaded a proper enterprise. Opp. at 3:1-6 (citing *King*). But Judge

5    Larson was never presented with (and thus did not rule on) this argument.[2]

6    Moreover, the *first* Amended Answer and Counterclaims in 2007 also failed to

7    plead an enterprise that was distinct from the "persons" sued.[3] Indeed, Mattel

8    artificially divided MGA into even *more* of its constituent parts.

9       Mattel's few authorities are inapposite. *King* did not even involve an

10    association-in-fact; there, the Court found that sole-shareholder Don King was

11    separate from his corporation, which was the enterprise. Moreover, only *Mr. King*

12    was named as a defendant. Mattel also cites *Odom v. Microsoft Corp.*, 486 F. 3d

13    541, 547 (9th Cir. 2007), but there the association-in-fact consisted of Microsoft

14    and Best Buy, neither a subsidiary of the other.[4]

15

---

16    [1] Mattel tries to avoid the disqualifying identity between "person" and "enterprise"

17    by claiming Bryant and Machado were "employed by *Mattel* when they joined the enterprise." Opp. at 3:8-9. But the cited portions of the FAAC do not even

18    mention a RICO enterprise or those men's relationship to one. This is more *ad hoc* pleading by Mattel. The FAAC insists MGA was bent on hiring away Mattel

19    employees and inducing them to steal trade secrets as they left. It makes no sense to now claim those individuals were both targets of that conduct *and* members of

20    the enterprise that targeted them – *i.e.* they targeted themselves. Moreover, making that circular claim erases the required distinction between the enterprise and the

21    pattern of racketeering. "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it

22    engages." *Izenberg v. ETS Svcs., LLC*, 589 F. Supp. 2d 1193, 1202 (C.D. Cal. 2008) (quotation and citation omitted). Thus, the allegedly unlawful inducement of Bryant and Machado to join MGA does not render them enterprise members.

23    [2] The issue was whether Mattel adequately alleged enterprise *continuity*. *Bryant v.*

24    *Mattel*, 573 F. Supp. 2d 1254, 1263-64 (C.D. Cal 2007).

   [3] The First Amended Answer and Counterclaims alleged as members of the RICO

25    enterprise: MGA, MGA HK, MGA de Mexico, Isaac Larian, Ron Brawer, Carter Bryant, Gustavo Machado, Mariana Trueba, Pablo Vargas, Janine Brisbois, and

26    certain Doe counter-defendants. ¶89. The counter-defendants, however, were only the MGA entities, Mr. Larian, Bryant, and Machado. ¶¶9-14.

27    [4] Mattel's reliance on *Watts v. Allstate Indem. Co.*, 2009 WL 1905047 *1 (E.D. Cal.

28    Jul. 1, 2009) is similarly misplaced. That case involved three Allstate corporations, but only one (Allstate Indemnity) was named as the person/defendant. Another

REPLY ISO MOT. TO DISMISS RICO AND
CREDITOR FRAUD CLAIMS
CV 04-9049-DOC

**B.**  **Mattel Does Not Plead A Valid RICO Conspiracy.**

In response to the point that Mattel alleged a deficient RICO conspiracy—specifically the failure to allege who agreed with whom to conduct the affairs of a RICO enterprise through the commission of which predicate acts—Mattel does not dispute that its pleading omits these allegations.  Instead, Mattel insists that each conspirator need not agree to *personally* commit one or more predicate acts, and that it need only plead that "the purpose of the agreement is to facilitate commission of a crime, . . . ."  Opp. at 5:1-11.  Perhaps, but beside the point.

To plead a proper RICO conspiracy, Mattel must allege what each conspirator *agreed* to, including the commission of what predicate acts.  *See Salinas v. U.S.*, 522 U.S. 52, 63 (1997) (conspirators must "have agreed to the same criminal objective, . . . "); *Beck v. Prupis*, 529 U.S. 494, 505-07, 511 (2000) (RICO conspiracy must cause harm resulting from predicate act or violation of RICO's substantive provisions); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[T]erms like 'conspiracy,' or even 'agreement,' are border-line: . . .  a court is not required to accept such terms as a sufficient basis for a complaint" [citations, internal quotation, omitted].  Mattel fails to plead these minimum facts and therefore fails to state a claim.

This pleading defect is all the more unjustified because the alleged conspiracy is one to *defraud* Mattel.  Conspiracies to defraud are subject to Rule 9(b).[5]  *See* Mot. at 17:1-6; *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (a fraudulent conspiracy claim must "provide the particulars of when, where, or how the alleged conspiracy occurred.").

---

(Allstate Insurance) was named as the enterprise, but not as a defendant; the third (Allstate Property & Casualty) was not categorized at all by the plaintiff.  The court did *not* state that all three corporations could be lumped together as an association-in-fact *and* each named as a RICO defendant.

[5] Mattel denies the requirement, relying on *Rose v. Bartle*, 871 F.2d 331, 366 (3rd Cir. 1989).  But *Rose* is not a fraud case—and it predates *Twombly* as well as *Salinas* and *Beck*, and is not binding here anyway.

1    Finally, Mattel all but concedes it cannot plead a conspiracy involving new

2    counter-defendant IGWT.  Opp. at 5 n.6.  In the face of the Motion's citations to

3    *Twombly, Salinas* and *Vess*, Mattel meekly points to its allegation that "IGWT 'did

4    conspire, combine, confederate and agree' to further the Criminal Enterprise"—

5    precisely the sort of fact-free conclusory pleading that case law prohibits.

6    ### C.  Mattel Does Not Plead With Particularity A Mail Or Wire Fraud.

7    ### 1.  Honest Services Fraud Is Not A RICO Predicate Act.

8    Mattel's response to the argument that a §1346 violation cannot serve as a

9    predicate act, Mot. at 19:6-7, is to assert that section 1346 was expressly created to

10   expand the reach of mail and wire fraud.  Opp. at 10:17-19.  Mattel asserts that

11   "[c]ourts have repeatedly held that §1346 can support predicate acts of mail or wire

12   fraud in the civil RICO context."  Opp. at 10:22-11:12.  But just one of those cases

13   is from this circuit, and all of them demonstrate the futility of Mattel's theory.

14   *World Wrestling Entm't Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 502

15   (S.D.N.Y. 2007), did not discuss—let alone hold—that section 1346 could be a

16   proper predicate act in a civil RICO case.[6]  Moreover, that case *dismissed* the RICO

17   claim on the basis that plaintiff had not demonstrated it suffered a cognizable RICO

18   injury.  *Id.* at 524.  *Doe v. Roe*, 756 F. Supp. 353, 360 n.12 (N.D. Ill. 1991) and *Doe

19   v. Roe,* 958 F.2d 763, 769 n.5 (7th Cir. 1992), both acknowledge that an honest

20   services violation does not satisfy the injury requirement of civil RICO.  And to the

21   extent they suggest that an honest services fraud may still serve as a predicate act

22   despite this, that statement without any analysis is squarely at odds with the rule

23   that a plaintiff only has standing to sue for a civil RICO violation "if [the] injury

24   _____

25   [6] Cases do not stand for propositions they fail to address.  *See, e.g., Webster v. Fall*,

26   266 U.S. 507, 511, 45 S. Ct. 148, 149, 69 L. Ed. 411 (1925) ("Questions which *merely lurk in the record*, neither brought to the attention of the court nor ruled

27   upon, are not to be considered as having been so decided as to constitute precedents."); *Bassiri v. Xerox Corp.*, 463 F.3d 927, 933 (9th Cir. 2006) (prior case

28   was not binding because parties did not raise arguments, nor did court indicate it had considered the issue at hand.)

- 5 -

1   flowed directly from the commission of the predicate acts . . . ." *Johnson Enter. of*

2   *Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1318 (11th Cir. 1998); *see*

3   *also Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (indirect

4   injury insufficient).  As for Mattel's claim that *U.S. v. Bohonus*, 628 F.2d 1167,

5   1172 (9th Cir. 1980), allowed an honest services fraud in a civil RICO case,

6   *Bohonus* was neither a RICO case nor a civil action.[7]  It offers no support.[8]  The

7   point is that §1346 protects an "intangible" interest, which in civil RICO claims is

8   not compensable.  Mot. at 19-20.  Mattel never responds to this point.

9          Finally, Mattel does not contest that all of the cases in this circuit have

10   applied section 1346 solely to fiduciaries of the supposed victim.  Mot. at 19:16-22.

11   Instead, Mattel claims that *Williams* did not decide if the statute reaches non-

12   fiduciaries (precisely the Motion's point), but did apply the statute "'in the

13   employee/employer context.'"  Opp. at 11 n.38.  But the defendant in *Williams* was

14   not an employee; he was a self-employed commissioned financial and estate

15   planner who had a fiduciary relationship with the victim (*and* a power-of-attorney).

16   *U.S. v. Williams*, 441 F.3d 716, 719, 723-24 (2006).[9]

---

[7] The Motion cited *Bohonus* in establishing that even if Mattel's three moonlighting sample and pattern makers (FAAC, ¶¶86-90) breached some duty owed to Mattel, they (let alone the MGA Parties) did not commit an honest services fraud.  Mot. 20, n.11.  As *Bohonus* explained (Mot. 19:19-22), Neither breach of a fiduciary duty, nor the receipt of secret profits, then, would suffice, standing alone, to show a §1341 violation; there must be a recognizable scheme formed with intent to defraud."  *Bohonus*, 628 F.2d at 1172.  Mattel ignores the argument and fails to show it pleaded a scheme to defraud.

[8] Mattel's final honest services case, *Sequa Corp. v. Gelmin*, 1996 WL 745448 (S.D.N.Y. 1996), stands alone.  The case has never been cited in any subsequent RICO case for any proposition.  There, in a 96-page Findings of Fact and Conclusions of Law, the court concluded—without any analysis or indication that it was contested—that deprivation of honest services can form the basis of a RICO predicate act of wire fraud.  But the court rejected  all of the plaintiffs' RICO claims on numerous grounds – including failure to establish a scheme to defraud.  (*Id.* at *92).  *Sequa* sheds no light here.

[9] Mattel's footnote ends with a claim that Bryant, "an enterprise member, owed Mattel a fiduciary duty," and that MGA aided and abetted his breach of that duty.  Opp. 11, n.38.  But a civil RICO claim under section 1962(c) cannot be based on aiding and abetting (Mot. 16:1-8), and in any event a breach of fiduciary duty is not

## 2.   Trade Secret Misappropriation Is Not A Predicate Act.

As the Motion established, civil RICO should not be extended to trade secret misappropriation.  Contrary to Mattel, Judge Larson did not rule that the wire and mail fraud statutes can be premised on trade secret misappropriation.  *See Bryant v. Mattel*, 573 F. Supp. 2d at 1264-65.  Opp. at 11.[10]  Mattel does not cite a RICO case from any circuit since the passage of section 1832, in which a plaintiff was permitted to dress a trade secret misappropriation claim as a mail or wire fraud.  Mattel relies principally on two cases, *Carpenter v. U.S.*, 484 U.S. 19 (1987) and *Formax, Inc. v. Hostert*, 841 F.2d 388 (Fed. Cir. 1988).  Neither compels the conclusion that trade secret misappropriation is a proper RICO predicate act in contravention of Congress's failure to include it as such.

*Carpenter* was a criminal wire and securities fraud case; it was not a RICO case.[11]  *Carpenter* was decided in 1987, well prior to the passage of section 1832 in 1996 and the omission by Congress of trade secret misappropriation from the scope of civil RICO.  In *Carpenter*, the Court held that confidential information could be a type of "property" supporting a criminal conviction under the mail and wire fraud statutes.  The case involved a highly unusual set of facts.  The defendant, a *Wall Street Journal* reporter, had conspired with several others to trade on information about to be published in his column—the publication of which was expected to

a violation of section 1346.  *Bohonus, supra*, n.7.

[10] Even if Judge Larson had reached the issue, this Court is not bound by prior rulings on a much earlier (and materially different) version of Mattel's RICO claims.  *See, e.g., Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 380 (9th Cir. 1960) ("The second judge [assigned in the same case] must conscientiously carry out his judicial function in a case over which he is presiding.  He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case.  He can settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial.")

[11] *U.S. v. Louderman*, 576 F.2d 1383 (9th Cir. 1978) and *SEC v. Clark*, 915 F.2d 439 (9th Cir. 1990), are not civil RICO cases.  *Clark* involved insider trading that breached a fiduciary duty and was carried out via false identities – *i.e.*, the sort of overtly deceptive conduct that is absent from Mattel's allegations against the MGA Parties.  Moreover, although Mattel quotes *Clark* as referring to RICO, in fact, it was talking only about sections 1341 and 1343.

1    have an effect on the prices of the stocks discussed. The reporter engaged in

2    overtly deceptive conduct towards the WSJ and others in furtherance of the scheme:

3    while continuing as an employee, he "pretended to perform his duty of safeguarding

4    [confidential information]" by telling his editors about other leaks; he lied about his

5    involvement in the scheme during an investigation. *Carpenter*, 484 U.S. at 23, 28.

6         *Formax*, like *Carpenter*, was also decided prior to the passage of section

7    1832, and was a RICO claim against the employee alleged to have stolen the

8    confidential drawings at issue. 841 F.2d at 389. As two courts have subsequently

9    observed, both *Carpenter* and *Formax* involved breaches of confidential

10   relationships, and therefore have no application to the attempt to sustain RICO

11   predicates against direct competitors. *Johnson Elec. N. Am. Inc., v. Mabuchi Motor*

12   *Am. Corp.*, 98 F. Supp. 2d 480, 491 (S.D.N.Y. 2000); *Advanced Power Systems,*

13   *Inc. v. Hi-Tech Systems, Inc.*, 1992 WL 97826, *6 (E.D. Pa. Apr. 30, 1992).

14        The reach of civil RICO based on legitimate mail or wire fraud theories is

15   broad enough. When it has considered the issue, the Ninth Circuit has consistently

16   rejected attempts to apply mail and wire fraud theories to other existing wrongs that

17   Congress did not include in section 1961(1). *See* Mot. at 20-21. There is no good

18   reason to allow Mattel to shoehorn trade secret misappropriation into a mail or wire

19   fraud—particularly when, as shown in Part 5, *infra* (and unlike in *Carpenter*), it is

20   plainly unable to identify any actual scheme to defraud.

21              **3.    Obstruction Of Justice Is Not Mail/Wire Fraud.**

22        Mattel's response to the argument that the predicate act of obstruction fails,

23   Mot. at 21, is to assert that MGA's actions were aimed at defrauding Mattel of its

24   rights to receive honest services and to maintain the secrecy of its trade secret

25   information. Opp. at 12:18-21. In other words, Mattel piles conclusion upon

26   conclusion in its circular efforts to plead the kitchen sink. The defects in the honest

27   services and trade theft aspects of Mattel's fraud theory were exposed above. And,

28   those actions have nothing to do with the alleged obstruction and Mattel offers no

1   explanation other than "[t]hese allegations must be accepted as true." Also left

2   unexplained is how these alleged obstructions obtained Mattel's money or property,

3   particularly in light of Mattel's waiver of fees as damages. *See* Part F, *infra*.[12]

4   ### 4.  <u>Concealment Of Assets Is Not Mail/Wire Fraud.</u>

5       Rather than respond to the arguments (1) that UFTA is not a predicate act,

6   and (2) that the transfer or concealment of MGA assets does not involve a scheme

7   to obtain *Mattel's* assets or to harm its "business or property," Mot. at 22, Mattel

8   claims it is a creditor and cites several cases suggesting that MGA's alleged scheme

9   to transfer assets is actionable under RICO. Opp. at 13:16 – 14:7. But all of

10  Mattel's cases involve *existing* entered judgments and a subsequent RICO action.

11  Transferring or hiding of certain assets might be packaged as a fraud when it

12  deprives an actual judgment creditor of assets to which it is entitled. Here, Mattel's

13  claims have not been reduced to judgment. They are speculative, contingent and

14  unmatured. There is no *actual* injury.

15  ### 5.  <u>In Any Event, Mattel Fails To Plead A Scheme To *Defraud*.</u>

16      Mattel does not dispute that it must plead its scheme with particularity. It

17  just says that it has. Mattel also claims that Judge Larson "ruled that attaching mail

18  and wire fraud acts to Mattel's pleading satisfies Rule 9(b)." Opp. at 5:23-24 &

19  n.7. Not so. There was no such ruling by Judge Larson, particularly not on the

20  complaint now before this Court. *See Mattel*, 573 F. Supp. 2d at 1264. Moreover,

21  while Mattel claims that it can get away with just appending documents to its

22  complaint because "innocuous and routine" documents can support a claim for wire

23  and mail fraud, "[t]he cases are legion that a RICO complaint cannot be predicated

24  on innocuous business communications, absent some factual basis for inferring the

25  ─────────────

26  [12] Mattel's alleged quotation of *Florida Evergreen Foliage v. E.I. DuPont*

27  *DeNemours and Co.*, 135 F. Supp. 2d 1271, 1275-78 (S.D. Fla. 2001) is another case of argument by editing. Opp. at 13:6-9. Mattel has misleadingly grafted two separate quotes together and rearranged their sequence. The last clause of Mattel's

28  "quote" ("may form the basis for predicate racketeering acts") appears on page 1285, while the remaining portions of Mattel's "quote" appears on page 1286.

REPLY ISO MOT. TO DISMISS RICO AND
CREDITOR FRAUD CLAIMS
CV 04-9049-DOC

1   sender's intent to defraud the recipient via a scheme to defraud. *Asbeka Indus. v.*
2   *Travelers Indem. Co.*, 831 F. Supp. 74, 89 (E.D.N.Y. 1993) (collecting cases); *see*
3   *also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("'allegations of
4   fraud must be specific enough to give defendants notice of the particular
5   misconduct which is alleged to constitute the fraud charged so that they can defend
6   against the charge'" [citation omitted].)
7       Mattel disputes the Motion's claim that "Mattel does not cite any of those
8   documents" in its FAAC. Opp. at 6:4-5. But it disputes the wrong thing. What
9   Mattel must do is not merely cite a document, it must identify specifically the
10  alleged fraud contained in those documents. *See, e.g., Am. Dental Assoc. v. Cigna*
11  *Corp.*, ___ F.3d ___, 2010 WL 1930128, * 6 (11th Cir. May 14, 2010) (dentists fail
12  to plead RICO mail or wire fraud against insurers for underpayment scheme
13  because "Plaintiffs' complaint provides a list of mailings and wires, without ever
14  identifying any actual fraud").
15      Mattel next disputes the Motion's claim that "Mattel fails to identify any
16  contact between the MGA Parties and defecting Mattel employees." Opp. 7:10-11.
17  But—again—Mattel misses the point. As stated in the Motion, "Mattel fails to
18  identify any contact between the MGA Parties and defecting Mattel employees *in*
19  *which a fraudulent intent or inducement by any of the MGA parties was revealed.*"
20  Mot. at 23. ████████████████████████████████████████████
21  ██████████████████████████████████████████████████████████
22  ██████████████████████████████████████████████████████████
23      Indeed, when Mattel specifically turns to showing where its FAAC
24  (supposedly) alleges the MGA Parties did induce Carter Bryant to steal its property,
25  *i.e.*, Bratz, it quotes the allegation that the MGA Parties knew Bryant was employed
26  by Mattel, encouraged his development of Bratz, and knew such work by Bryant
27  would breach "'his contractual, statutory and common law duties to Mattel.'"
28  Opp. 8:10-16. But Mattel does not plead that the MGA Parties knew Bratz was

- 10 -

1  *Mattel's* property and employed false statements or other deceptive conduct to

2  acquire it. [13]  Far from flatly pleading such a fraudulent scheme by the MGA Parties

3  to steal Bratz or anything else, Mattel falls back on a loss of the intangible right to

4  honest services.  The futility of that theory was established above. [14]

5

6

7

8

9

10

11                                                                    Quitting a job—whether singly or as a group—

12  is not a fraud.  Relishing the pain and inconvenience one's departure for greener

13  pastures will cause the ex-employer (a not uncommon emotion in such situations) is

14  no crime either, even if one uses the wires to express that emotion.  As with the

15  Bryant part of the alleged scheme, Mattel is long on use of the mails and wires, but

16  short on any fraudulent scheme which was furthered by such use. [15]

17  _____

18

19

20

21  [14] Mattel cites matters beyond its pleading—the Phase 1 jury's supposed finding

22  that MGA fraudulently concealed "the theft of Bratz."  Opp. at 8:16-17 & n.23.  No
    matter, because a mail or wire fraud based on concealment requires a duty to

23  disclose.  *See, e.g., In re Country-wide Fin. Corp. Mortgage Mktg. and Sales
    Practices Litig.,* 601 F. Supp. 2d 1201, 1218 (S.D. Cal. 2009).  Mattel's inability to

24  plead a duty to disclose is no surprise:  MGA was a competitor, not a fiduciary, of
    Mattel.  Concealment for purposes of determining whether a statute of limitations

25  has run, and concealment for purposes of an alleged RICO scheme to defraud, are
    very different animals.

26

27

28



Indeed, this plainly represents an attempt by Mattel to extend the mail and wire fraud statutes not just to an unlawful acquisition of trade secrets, but also to *use* of trade secrets.[16]

### D.   Mattel Does Not Plead A Travel Act Violation.

Mattel insists it has pleaded actual incidents of commercial bribery, but it

- 12 -

1   offers nothing but a variation on the defective honest services fraud theory disposed

2   of above. Mattel first claims the FAAC alleges that the MGA Parties "'paid Bryant

3   while he was still employed by Mattel' in order to steal Mattel's property." Opp. at

4   14:23-24 & n.45, citing FAAC ¶28. Once again, Mattel has indulged in some

5   belated editing. The phrase "to steal Mattel's property" is nowhere to be found in

6   paragraph 28. That paragraph lists three actions Bryant took while at Mattel (which

7   boil down to using Mattel resources and employees to develop Bratz)—but does *not*

8   plead that the MGA Parties corruptly induced him to do so. Mattel also alleges that

9   MGA paid Bryant while he was still a Mattel employee (FAAC ¶28), but that does

10   not supply the missing element of corrupt inducement.

11         Mattel next reports that it has alleged that the MGA Parties induced the three

12   defecting Mexican employees to steal Mattel business planning materials. Opp. at

13   14:24 – 15:1 (citing FAAC ¶¶36-43). But the Motion already examined that

14   conclusion and proved it wanting (the allegations are both conclusory and

15   improperly rely on information and belief). Mot. at 24:1-6. The same resort to

16   conclusions and 'information and belief' mars Mattel's claim as to Jorge Castilla.

17   Mot. at 24:11-17 (*see* FAAC ¶77). Mattel does not address those parts of the

18   Motion and does not try to justify pleading on information and belief at this late

19   date. It merely stands on its conclusion (despite Rule 9(b), *Ashcroft* v. *Iqbal*, 129 S.

20   Ct. 1937, 1950 (2009), and *Twombly,* 550 U.S. at 555, 557, as well as a great deal

21   of discovery). Mattel also ignores the Motion and simply stands on its conclusion

22   about the three pattern and sample makers who moonlighted for MGA.[17]

23   _____

24   [17]  Mattel likewise flatly ignores the attack on its bribery claims as to Ron Brawer
      and Dan Cooney. Mot. 24:13-18. It does address a claim as to Nick Contreras
25   (*id.*), noting that after joining MGA he offered an Mattel employee a job and asked
      her to copy some Mattel files. Opp. 15:1-2. But it is obvious the employee
26   rebuffed the alleged request, because Mattel's account of the episode never
      culminates in a claim of lost information or other actual harm. *See* FAAC ¶81.
27   Mattel offers no authority for the notion that RICO's concrete injury requirement
      can be met by *attempted* bribery. This is of a piece with Mattel's noting that "the
28   Travel Act only requires *intent* to commit the underlying state offense." Opp. at

- 13 -

1    Mattel's bribery theory fails for the same reason its honest services fraud

2  fails: its defecting employees may have breached certain duties before they joined

3  MGA, but Mattel does not (and in truth cannot) allege facts showing that the MGA

4  Parties fraudulently or corruptly induced such conduct.

5    **E.    Mattel Does Not Plead Proximate Cause Or RICO Injury.**

6    Mattel claims proximate cause issues are ill suited for motions to dismiss,

7  and that it "need only provide 'general factual allegations of injury resulting from

8  defendant's conduct.'" Opp. at 17:7-13.  But numerous controlling cases have

9  dismissed RICO claims under Rule 12(b)(6) precisely for failure to specifically

10  plead proximate cause and/or injury to business or property.  *See, e.g., Hemi Group,*

11  130 S. Ct. at 989; *Anza v. Ideal Supply Corp.,* 547 U.S. 451, 459 (2006); *see also*

12  *Canyon County v. Syngenta Seeds, Inc.,* 519 F.3d 969, 982 & n.12 (9th Cir. 2008)

13  ("courts need not allow RICO plaintiffs leeway to continue on with their case in an

14  attempt to prove an entirely remote causal link"); *Sybersound Records v. UAV*

15  *Corp.,* 517 F.3d 1137, 1149 (9th Cir. 2008) (affirming district court's dismissal for

16  failure to plead "the proximate causation hurdle to assert a RICO violation")).

17  Indeed, courts are required to "scrutinize the causal link between the RICO

18  violation and the injury, identifying with precision both the nature of the violation

19  and the cause of the injury to the plaintiff." *Canyon County,* 519 F.3d at 981; *see*

20  *also Steele v. Hosp. Corp. of Amer.,* 36 F.3d 69, 70 (9th Cir. 1994) (RICO standing

21  requirement has "restrictive significance").[18]

22

23  14:18-19.  That is true – in a criminal prosecution, where actual injury is not an
   element.  In a civil RICO case such as this, however, mere intent to do harm is

24  never enough to state a claim.  18 U.S.C. §1964(c).

25  [18] Mattel relies on *Medoza v. Zirkle Fruit Co.,* 301 F.3d 1163 (9th Cir. 2002) (Opp.
   at 17:7-11), but it was decided years before *Hemi, Anza, Canyon Country* and

26  *Sybersound Records, supra.*  Mattel also cites *Natomas Gardens Inv. Group LLC v.*
   *Sinadinos,* 2009 WL 1363382 *13 (E.D. Cal. May 12, 2009) (Opp. at 17:11-13) for

27  the proposition that "proximate cause problems are not well-suited for dismissal on
   the pleadings."  But that district court  inexplicably relied on a Sixth Circuit

28  decision, rather than the Supreme Court or Ninth Circuit authorities discussed
   above.

REPLY ISO MOT. TO DISMISS RICO AND
CREDITOR FRAUD CLAIMS
CV 04-9049-DOC

Mattel also complains that causation and injury were not issues raised in the Motion.  Opp. at 16:8-18.  In fact, the RICO harm requirement was mentioned in several places in Part I of the Motion (Mot. at 13, 18, 19, 21-22), and Mattel does not claim a lack of proper notice, or an inability to respond, nor could it.  The MGA Parties fully briefed the law regarding proximate cause and injury

### 1.   Mattel Cannot Recover For Mail or Wire Fraud.

Mattel claims Judge Larson already ruled that "RICO injuries 'easily flow from theft of trade secrets and confidential information committed by a direct competitor.'"  *Mattel*, 573 F. Supp. 2d at 1269.[19]  But as established above, Judge Larson was not presented with the arguments made here, and, in any event, the Court is not precluded from departing from prior rulings in the case, particularly where, as here, the MGA Parties have provided ample reason to do so.

### 2.   Mattel Cannot Recover For Obstruction Or Tampering.

Recognizing that Mattel, through the stipulation of Mr. Quinn, has waived any claim for recovery of attorneys' fees as damages, the only money it seeks to recover from the alleged predicate act of obstruction of justice is the $2,000,000 spent on Forensic Auditor Ronald Durkin.  Opp. at 18.  In support, Mattel cites *Stochastic Decisions, Inc. v. James Didomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993), which stands for the proposition that a judgment creditor's fees spent on collection work can be recovered under RICO.  Opp. at 18 n.58.

This claim of RICO injury is truly remarkable.  The Court's Order appointing a forensic auditor, which was procured at the behest of Mattel, discloses no grounds for its decision.  Dkt. #4657.  Mattel's application for that remedy was based in material part on a transaction *which Mattel no longer even challenges as a fraud—*

---

[19] To support this proposition (Opp. at 17:25-26), Mattel inexplicably cites *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251 (2d Cir. 2004), overruled in *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451 (2006).  The Supreme Court in *Anza* discussed proximate cause and injury – as did the district court on remand.  *Ideal Steel Supply Corp. v. Anza*, 2009 WL 1883272 *1-2 (S.D.N.Y. June 30, 2009).

1   the purchase of MGA's obsolete inventory by IGWT Group. Dkt. #4540 at 2, 7;

2   *compare* TAAC ¶¶219-222 *with* FAAC ¶¶207-208, 216-218. Mattel must plead

3   and prove "some direct relation between the injury asserted and the injurious

4   conduct alleged." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

5   The "direct-relation" requirement "avoids the difficulties associated with

6   attempting 'to ascertain the amount of a plaintiff's damages attributable to the

7   violation, as distinct from other, independent, factors.'" *Bridge v. Phoenix Bond &*

8   *Indem. Co.*, 128 S. Ct. 2131, 2142 (2008) (quotation omitted). Apart from the fact

9   that Mattel has not pled how any auditor fees flow directly from an obstruction of

10  justice, this theory is plainly too speculative to satisfy these requirements—both

11  Mattel's spurious claim that it has now withdrawn, and the Court itself, are

12  intervening causal factors that prevent ascertainment of any "direct" amount of

13  harm in this regard. *See Strates Shows, Inc. v. Amusements of America, Inc.*, 379

14  F. Supp. 2d 817, 832 (E.D.N.C. 2005) (no RICO recovery for litigation expenses

15  plaintiff chose to incur to mitigate effect of defendant's conduct).

16      Moreover, *Stochastic* is of no help to Mattel, because Mattel does not *have* a

17  judgment. Indeed, *Stochastic* specifically advised that: "a RICO claim does not

18  accrue until it is established that collection of the claim or judgment has been

19  successfully frustrated. In other words, to the extent of a successful collection, the

20  RICO claim is abated *pro tanto*, prior to any application of trebling." *Stochastic*,

21  995 F.2d at 1166. For the same reason, Mattel's spurious claim of harm from the

22  Omni transaction (which Mattel now apparently concedes did not confer any

23  security interest in the Bratz IP) is too contingent, speculative and remote to satisfy

24  RICO injury requirements. *See also, e.g., DeMauro v. Demauro*, 115 F.3d 94, 95-

25  97 (1st Cir. 1997); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990).

26  ### 3.   <u>Mattel Cannot Recover For Travel Act Violations.</u>

27      Mattel has not pled facts showing any direct harm to it from moonlighting. It

28  does not really contend otherwise. Whatever harm supposedly resulted from alleged

- 16 -

1   Travel Act violations is not compensable under RICO.

2   ### 4.      **Mattel Cannot Recover Here For Copyright Infringement.**

3   Mattel's last claim of injury is based on criminal copyright infringement – a
4   theory rejected by the jury in Phase 1. █████████████████████████████
5   ████████████████████████████████████████████████████████████████
6   ████████████████████████████████████████████████████████████████
7   ████████████████████████████████████████████████████████████████
8   ██████████████████████████████ Speculation about what might have
9   influenced the jury (and how much) cannot satisfy RICO's stringent proximate
10  causation and concrete injury standards—especially (though not exclusively) where
11  the claim for fees as damages has been expressly waived.[20]

12  Mattel also argues that "issues of *post-verdict* infringement of Bratz
13  copyrights have yet to be tried." Opp. at 18:12. That theory is not pleaded either,
14  and in all events it would destroy Mattel's RICO claims on the grounds that they
15  lack the elements of continuity and pattern. Mattel's narrative throughout this case
16  has been that MGA stole Bratz in 2000, then stole Mattel's trade secrets in order to
17  create the "intellectual infrastructure" it needed to support the exploitation of Bratz
18  throughout the period. If the exploitation of Bratz throughout the period is out, the
19  narrative falls apart: Two more reasons to dismiss these claims.

20  Mattel's other tack to avoid the jury's verdict is to argue that its theory is not
21  limited to Bratz, but also includes "the copying of knowingly stolen trade secret and
22  confidential documents," citing FAAC ¶124(f). This is, frankly, ridiculous. Mattel
23  does not plead ownership and registration of copyright in any of its "Trade Secret

24  _____

25  20 ██████████████████████████████████████████████████████████████
26  The Seventh Amendment requires it. *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d
    Cir. 1999) (noting in context of a bifurcated case that the Seventh Amendment
27  provides that "a given issue may not be tried by different, successive juries").
    Mattel cannot pick and choose amongst the various parts of the verdict; it is an all
28  or nothing proposition. *See Gasoline Prods. Co. v. Champlin Refining Co.*, 283
    U.S. 494, 500 (1931) (requiring complete retrial on remand).

1  Materials," or even the touchstone of infringement: *copying* by any of the MGA

2  Parties or IGWT of such documents.  The Opposition does not identify (let alone

3  discuss) any specific document that was purportedly infringed.

4       In all events, none of the infringements alleged here—*even if willful*—can

5  have inflicted the required concrete injury to Mattel's business or property.  Mattel

6  did not allege that MGA counterfeited Mattel's pre-existing products, that MGA

7  copied and distributed Carter Bryant's drawings, or that MGA caused customers to

8  cancel existing orders.  Mattel's theory rests on MGA making something *new* out of

9  Carter Bryant's drawings, and then marketing it in a fashion which *may* have

10  deprived Mattel of some unspecified number of then-future sales.  Such a theory is

11  much too attenuated for RICO.  *See, e.g., Cal. Pharm. Mgt., LLC v. Redwood Fire*

12  *& Cas. Ins. Co.*, SACV 09-141 DOC (ANx), slip op. at 13 (C.D. Cal. Jul. 29, 2009)

13  (damages that are possible or likely to occur are insufficient under RICO; plaintiff

14  must actually suffer "monetary injury as a result of Defendants' conduct"); *Parker*

15  *v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 678 (D. Del. 2008) (plaintiff must

16  allege and prove "actual monetary loss, *i.e.*, out-of-pocket loss"; plaintiff did not

17  allege that "orders for goods or services plaintiff provided were actually cancelled

18  as a result of alleged RICO conduct"); *see also Anza*, 547 U.S. at 459; *Lancaster*

19  *Comm. Hosp. v Antelope Valley Hosp. Dist.*, 940 F.2d 397, 406 (9th Cir. 1991).

20  ## II.  THE THIRTEENTH THROUGH FIFTEENTH COUNTERCLAIMS SHOULD BE DISMISSED.

21

22       In the Motion, MGA, Larian and IGWT 826 demonstrated that the creditor

23  claims are inadequately pled and do not belong in this case.  Mattel's Opposition

24  also now demonstrates that the claims are barred under the statutes of limitations.

25  ### A.  Mattel's Opposition Admits That The Claims As To Numerous Transactions Are Barred By The Statutes Of Limitations.

26

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mattel

supplements its pleading by stating clearly for the first time in its opposition that it has been a creditor since "MGA first stole Bratz from Mattel." Opp. at 23:1-3 (citing FAAC ¶¶23-25). Mattel thus admits it was a creditor at least since October 4, 2000, when MGA entered into a contract with Carter Bryant for the transfer of Bratz. Mattel also alleges that at all times throughout there was "the significant likelihood that Mattel's claims would result in judgment in Mattel's favor." Opp. at 20:12-13 (quoting FAAC ¶¶107, 207-208). Yet Mattel did not bring any claim challenging the shareholder distributions until April 12, 2010—between two and six years after the challenged shareholder distribution transactions occurred.[21]

The relevant statute of limitations is four years from the time of the distributions for Mattel's Thirteenth and Fourteenth Counterclaims (Cal. Civ. Code §§3439.09(a), 3439.09(b)) and three years from the time of the distributions for Mattel's Fifteenth Counterclaim. *In re SDR Capital Mgmt., Inc.*, 2007 Bankr. LEXIS 3007, at *1-2 (N.D. Cal. Aug. 31, 2007). For the Fifteenth Counterclaim, distributions made before April 13, 2007 are barred. For the Thirteenth and Fourteenth Counterclaims, distributions made before April 13, 2006 are time barred. Dismissal of the claims based on those transactions is therefore appropriate. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (affirming 12(b)(6) dismissal on statute of limitations grounds); *see also Barr v. Clinton*, 370 F.3d 1196, 1201-1202 (D.C. Cir. 2004) (same).[22]

---

[21] Indeed, when Mattel filed its Third Amended Answer and Counterclaims in May 2009, its sole fraudulent transfer claim was based on the IGWT Group purchase of obsolete inventory, *a claim that Mattel has now dropped entirely. Compare* TAAC ¶¶219-222 *with* FAAC ¶¶207-208, 216-218.

[22] Section 3439.09(a) allows a one-year extension from discovery of the transaction, but Mattel cannot use it. Mattel has known about all of the 2004, 2005, 2006 and 2007 shareholder distributions listed on Exhibit X at least since the deposition of MGA's VP of Taxation and 30b6 witness, Lisa Tonnu, on September 24, 2007. *See Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994) (to invoke California's discovery rule, plaintiff must plead facts to the show time and manner of discovery and the inability to have made earlier discovery despite reasonable diligence.)

**B.**   **The Court Should Not Exercise Supplemental Jurisdiction.**

Mattel's arguments for supplemental jurisdiction rest on a series of quotes from cases for generally uncontroversial propositions of law that have little to do with the facts here. Indeed, in one of the cases cited by Mattel the parties *agreed* that the Court should retain supplemental jurisdiction over the pendent state law claims. *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 4616796 (S.D. Cal. Aug. 1, 2008). In another, the dismissal seven days before trial on claims that had been fully litigated was found to be an abuse of discretion. *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Main., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). Neither of those circumstances pertains here, where Mattel has pled brand new claims and is trying to engage in enforcement litigation under state law before it even has a judgment.

A substantial portion of these creditor-fraud claims—the challenge to every shareholder distribution—is *entirely new*. No prior state law claim recited that it challenged shareholder distributions (and since disgorgement is not a remedy under RICO, the RICO claim really cannot be interpreted as having challenged them either). There is no overlap between the challenges to the shareholder distributions and any other claim, except for Mattel's improper attempt to turn UFTA into a RICO predicate act. None of the issues surrounding these claims has yet been litigated. A snapshot of the company's finances on each date of distribution has not been developed. The propriety of the Larian family estate planning trusts, and community property issues have not even been touched upon. These claims do not belong in this case—especially when it is considered that Mattel may never have a judgment against MGA, let alone one that it cannot satisfy.

**C.**   **The Thirteenth Counterclaim Must Be Dismissed Under Rule 9(b).**

Mattel argues that Rule 9(b) does not apply, and that even if it does Mattel has alleged fraud adequately because (1) the transfers were made to insiders, (2) claims were pending, (3) there was a significant likelihood Mattel would win, and

1   (4) the size of the transfers in relation to MGA's assets at the time.  Opp. at 20.

2          As to the first point, the Thirteenth Counterclaim is an actual fraud claim, and

3   therefore reads squarely on Rule 9(b).  *Sunnyside Devel. Co. v. Cambridge Display*

4   *Tech. Ltd.*, 2008 WL 4450328, at *11 (N.D. Cal. Sept. 29, 2008); *Grewal v.*

5   *Choudhury*, 2007 WL 3146537 *2 (N.D. Cal. Oct. 25, 2007) (dismissing CUFTA

6   actual fraudulent transfer claim on grounds that "under Rule 9(b), an averment of

7   fraud should state with particularity the circumstances constituting the fraud.").

8   The cases cited by Mattel are inapposite, in that they concern either *constructive*

9   fraud claims, which MGA did not challenge under Rule 9(b), or non-California

10  claims.  California courts have long-recognized that fraudulent conveyance claims

11  trigger heightened fraud pleading requirements.  *Kinder v. Macy*, 7 Cal. 206, 207

12  (1857) (pleading of specific facts and circumstances required for equitable claim of

13  fraudulent conveyance); *Macedo v. Bosio*, 86 Cal. App. 4th 1044, 1046 (2001)

14  (noting fraudulent conveyance cause of action must be pled with particularity).

15

16

17                                                                                    In fact, when viewed

18  with respect to the other allegations of the FAAC—namely, that MGA would never

19  file bankruptcy (FAAC ¶118) and that it has introduced new products since the

20  Court entered an injunction against Bratz (FAAC ¶¶6, 92-93)—the absurdity of

21  Mattel's allegation that Larian sought to leave MGA a worthless shell are apparent.

22  MGA is a family-held close corporation.  Of course its shareholder distributions are

23  made to insiders.  So what.  MGA has remained a going concern throughout the

24  litigation (no thanks to Mattel), introducing new product lines and continuing to

25  exploit Bratz to the extent permitted by stays of the Court and business conditions.

26  Indeed, Mattel's assertion that MGA introduced Moxie is directly inconsistent with

27  the notion that Larian has been sucking the life out of MGA to leave it a worthless

28  shell in the face of Mattel's vainglorious litigation.

Moreover, Mattel pleads no facts at all justifying the conclusion that MGA committed fraud because it understood there was a significant likelihood Mattel would win *throughout the litigation*. In fact, it is not even clear yet that Mattel has won anything. That Mattel obtained a verdict in July 2008, or a (now-stayed) injunction in December 2008, does not demonstrate that it was objectively apparent throughout that Mattel would win the case. Mattel alleges no facts at all to establish why it was apparent that it would win the case against MGA in 2004 (when Mattel had *not* sued MGA in its initial filing against Carter Bryant), in 2005 (when again, Mattel had *not* filed claims against MGA), in 2006 (throughout most of which Mattel had *not* filed claims against MGA), in 2007, or in the first half of 2008 before the jury's verdict (not that MGA concedes it ever became apparent).

Nor does Mattel plead facts to establish in any way, shape or form that MGA had financial difficulties in 2004, 2005 or 2006—covering the largest sum by far. Its only specific allegation of financial difficulty concerns 2007 and 2008. FAAC ¶208(d). And, Mattel claimed $2B based on *MGA's profits* in Phase 1, in substantial part attributable to that very same 2004-2006 period in which it now alleges in purely conclusory fashion that the distributions were outsized compared to the company's assets. Mattel is once again talking out of both sides of its mouth.

Finally, with respect to what Mattel calls the "IP Transfer," Mattel now concedes that the transfer *didn't happen in the Side Letter*, stating that MGA has "missed the point" with this argument. Opp. at 21:2. Hardly. The point is that the claim should be dismissed when the purportedly unlawful transaction upon which it is based *never happened.* Apparently Mattel wants to keep on suing MGA for some unspecified *other* "purported or attempted grant to Omni of a security interest in Bratz intellectual property rights." Opp. at 21:3-4. An UFTA claim requires an actual transaction before there can be a fraudulent one. *In re Ponce Nicasio Broadcasting, L.P.*, 2008 WL 361081, *6 (Bankr. E.D. Cal. Feb. 7, 2008) ("An essential element of any cause of action brought under the California UFTA that

- 22 -

1    seeks the avoidance of or other remedies related to an allegedly fraudulent transfer

2    is the existence of an actual transfer made by the debtor to a third party.")

3    (emphasis original).  Mattel has identified no such transfer of Bratz IP.

### D.     The Fifteenth Counterclaim Is Legally Defective.

5           Mattel first argues that Rule 23.1 permits a creditor-derivative claim because

6    it does not expressly prohibit it, and because such a result would improperly

7    deprive Mattel of a substantive right.  Opp. at 21-22.  Neither argument is correct.

8    None of the cases cited by Mattel (*see id.*) considers the issue whether Rule 23.1

9    imposes a limitation on the type of derivative claims that may be brought in the

10   United States District Courts.  And, those cases primarily deal with the standing of

11   court-appointed trustees in bankruptcy proceedings—thus lending no support

12   whatever to the proposition that a creditor-derivative claim can proceed in federal

13   court.  Moreover, all of those cases were decided before the Supreme Court's

14   decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct.

15   1431, 1434-35 (2010), which Mattel completely ignores.  Under *Shady Grove*, the

16   requirements of the rule apply irrespective of an express inconsistency.

17          The question in dispute is whether Mattel's creditor-derivative claim may

18   proceed as a derivative action in federal court.  Mattel argues that Rule 23.1 does

19   not prohibit creditor claims, so no problem.  But Rule 23.1(a) states that "the

20   derivative action may not be maintained if it appears that the plaintiff does not

21   fairly and adequately represent the interests of *shareholders or members* who are

22   similarly situated in enforcing the right of the corporation or association."  Mattel is

23   not a shareholder, and is not suing in a shareholder capacity.  It defies credulity that

24   Mattel would escape all of the special requirements of derivative litigation because

25   Rule 23.1 does not expressly forbid creditor derivative actions.  This is precisely

26   the kind of hair-splitting that the Supreme Court rejected in *Shady Grove* when

27   interpreting the requirements of Rule 23.  *See Shady Grove*, 130 S. Ct. at 1438

28   ("There is no reason, in any event, to read Rule 23 as addressing only whether

1    claims made eligible for class treatment by some *other* law should be certified as

2    class actions.") (emphasis original).[23]

3           Mattel next argues that it is a proper representative of MGA and MGA's

4    creditors.  Opp. at 22.  But Mattel's assertion that "MGA has not identified any

5    conflict that would prohibit Mattel from adequately representing the interests of

6    MGA's creditors" does not pass the red-face test.  As identified in the Motion,

7    Mattel is a *competitor* of MGA and does business with the same customers as well

8    as many of the same vendors and licensees—a position in which it is *adverse* to all

9    of these other potential creditors of MGA.  Moreover, as also noted in the Motion,

10   Mattel has a direct conflict of interest because it is chasing MGA's money in both

11   direct and derivative capacities—in one capacity it would get the money for itself,

12   and in another capacity it would have to hold the money in trust for other creditors

13   including Omni.  On the face of the FAAC there is disclosed a set of allegations

14   proving that Mattel does not intend to honor the claims of Omni as a creditor.

15   These are ample reasons to exercise the discretion (assuming this claim can even be

16   brought in federal court) to refuse Mattel representative status.

17          As to MGA's third point, that Mattel failed to allege facts sufficient to show

18   it was a creditor at the time of the distributions, Mattel has supplemented its

19   allegations and made the assertion that it has been a creditor since "MGA stole

20   Bratz" in 2000.  For the reasons set out in Part A above, this admission

21   independently requires dismissal of the claim under the statute of limitations.

22   **III.    THE SIXTEENTH COUNTERCLAIM FAILS TO STATE A CLAIM.**

23          Mattel has pled a tort for breach of constructive trust, seeking exemplary

24   damages.  FAAC ¶¶231-37.  To support these allegations, Mattel argues that the

25   constructive trust remedy, by itself, imposes what in essence amounts to a fiduciary

26

27   [23] Similarly, Mattel's argument that Rule 23.1 would violate the Rules Enabling Act
     if so interpreted is unavailing.  Rule 23.1 does not purport to alter the rules of
28   decision for the underlying substantive claim.  And there is nothing prohibiting
     Mattel from bringing its claim in a state court.

1  duty running from MGA to Mattel, even where such a duty did not previously exist

2  under any theory.  But a constructive trust does not create a fiduciary relationship.

3  REST. RESTITUTION §160 comment a (1937); *Rochester Radiology Assocs., P.C. v.*

4  *Aetna Life Ins. Co.*, 616 F. Supp. 985, 988 (W.D.N.Y. 1985); *Tebin v. Moldock*, 19

5  A.D.2d 275, 286 (N.Y. Sup. Ct. 1963); *see also In re Tognetti*, 2007 WL 1080147,

6  * 22 (S.D.N.Y Bankr. Apr. 9, 2007) (constructive trust does not create a fiduciary

7  relationship."); *In re Short*, 818 F.2d 693, 695 (9th Cir. 1987) (same).

8          In support of the remarkable proposition that a litigation remedy can turn a

9  competitor into a fiduciary, Mattel cites cases that do not actually decide whether a

10 theory of breach of constructive trust exists—they simply assume it.  As such, those

11 cases cannot be considered authority for the point.  *See, e.g., Snead v. Metropolitan*

12 *Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1092-93 (9th Cir. 2001) (issues decided sub

13 silentio are not binding authority).  Mattel's cases also concern situations in which

14 the property held in constructive trust was either removed entirely or rendered

15 valueless—not some vague theory of "diminution in value" of business goodwill.

16 *See Fithian v. Fithian*, 74 Cal. App. 3d 397 (1977) (refusal to turn over property);

17 *Elliot v. Elliot*, 231 Cal. App. 2d 205 (1964) (promissory note rendered valueless);

18 *U.S. v. Pegg*, 782 F.2d 1498 (9th Cir. 1986) (property sold).

19         There are no allegations here coming even close to these types of fact pattern.

20 MGA has not violated any order to turn over the items held in constructive trust;

21 rather, its obligation to do so has been stayed over and again.  Mattel has not

22 alleged that MGA sold the trademarks or copyrights held in constructive trust, thus

23 removing them entirely from the Court's control.  The constructive trust order

24 provides no other basis for notice to MGA as to its obligations, particularly where

25 the proffered theory would turn competitor into fiduciary.

26                              **CONCLUSION**

27         For all of the foregoing reasons, the First, Second, and Thirteenth through

28 Sixteenth Counterclaims should be dismissed with prejudice.

1

2     Dated:    May 24, 2010                    Respectfully submitted,

3                                               ANNETTE L. HURST
                                                Orrick, Herrington & Sutcliffe LLP
4

5                                               By: /s/ Annette L. Hurst

6                                                      ANNETTE L. HURST

7                                               Attorneys for MGA Parties and IGWT
                                                826 Investments LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOT. TO DISMISS RICO AND
CREDITOR FRAUD CLAIMS
CV 04-9049-DOC