1  Bingham McCutchen LLP
   TODD E. GORDINIER (SBN 82200)
2  todd.gordinier@bingham.com
   PETER N. VILLAR (SBN 204038)
3  peter.villar@bingham.com
   CRAIG A. TAGGART (SBN 239168)
4  craig.taggart@bingham.com
   600 Anton Boulevard, 18th Floor
5  Costa Mesa, CA  92626-1924
   Telephone:  714.830.0600
6  Facsimile:  714.830.0700

7
   Attorneys for Counter-defendant
8  OMNI 808 INVESTORS, LLC

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                  SOUTHERN DIVISION

12

| 13 MATTEL, INC., a Delaware corporation, | Case No. CV 04-09049 DOC (RNBx) c/w Case Nos. CV 04-09059 & CV 05-2727 |
|---|---|
| 14 | |
| 15 Plaintiff, | Hon. David O. Carter |
| 16 v. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OMNI 808 INVESTORS, LLC'S MOTION TO DISMISS MATTEL, INC.'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS** |
| 17 MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| 18 Defendants. | |
| 19 | |
| 20 | Date:   June 7, 2010 Time:   8:30 a.m. Place:   Courtroom 9D |
| 21 | |
| 22 AND CONSOLIDATED ACTIONS. | **Phase 2:** Discovery Cut-off:          TBD Pre-trial Conference:     TBD Trial Date:                   TBD |
| 23 | |
| 24 | |

25

26

27

28

A/73380684.9/3009108-0000337036

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................. 1

II.     MATTEL FAILS TO PLEAD A RICO CONSPIRACY CLAIM
        AGAINST OMNI ................................................................................. 5

        A.   Mattel Concedes That It Failed To Plead Its RICO Conspiracy
             Claim With Particularity Under Rule 9(b) .................................. 5

        B.   Mattel Fails To Allege That Omni Was Aware Of And Agreed
             To Participate In The RICO Criminal Enterprise ...................... 6

             1.   Mattel Fails To Allege That Omni Had Knowledge Of
                  The Criminal Enterprise ..................................................... 7

             2.   Mattel Fails To Allege That Omni Agreed To Participate
                  In The Alleged RICO Scheme ............................................ 9

        C.   Mattel Concedes That The Omni Related Conduct Is Not
             Related To The Rest Of The Purported RICO Scheme .......... 10

        D.   Mattel Has Not Suffered Any Injury-In-Fact Nor Has It
             Sustained  Any Injury That Omni Proximately Caused ................... 11

III.    MATTEL FAILS TO PLEAD A FRAUDULENT TRANSFER
        CLAIM AGAINST OMNI .................................................................. 14

        A.   Mattel Concedes That MGA Did Not Transfer Property To
             Omni That Would Support A Claim For Actual Or Constructive
             Fraudulent Transfer .................................................................... 15

             1.   Mattel Concedes That The "Dividend Trnasfers" Do Not
                  Apply to Omni ................................................................... 15

             2.   Mattel Concedes That No Transfer Was Made To Omni
                  Pursuant To The Side Letter Agreement ......................... 16

        B.   Mattel Admits It Cannot Allege Injury From The Purported
             "Transfers" To Omni, Thus Requiring Dismissal Of Both Its
             Fraudulent Transfer Claims ....................................................... 19

        C.   Mattel's Constructive Fraudulent Transfer Claim Also Must Be
             Dismissed For Independent Reasons .......................................... 20

             1.   Mattel Cannot Allege That MGA Did Not Receive
                  Reasonably Equivalent Value In Exchange For The
                  Purported "Transfers" To Omni ....................................... 21

             2.   Mattel's Constructive Fraudulent Transfer Claim Also
                  Fails Because Mattel Has Not Alleged MGA's
                  Insolvency ......................................................................... 22

1

TABLE OF CONTENTS
(continued)

2                                                                                    <u>Page</u>

3   IV.   MATTEL FAILS TO STATE A CLAIM FOR DECLARATORY
          RELIEF AGAINST OMNI ........................................................................23
4
    V.    MATTEL CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE
5         TO AMEND ...........................................................................................24

6   VI.   CONCLUSION ......................................................................................25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **FEDERAL CASES**

4

*Apparel Art Int'l, Inc. v. Jacobson,*
5    967 F.2d 720 (1st Cir. 1992) ......................................................... 11

6

*Ashcroft v. Iqbal,*
7    129 S. Ct. 1937 (2009)............................................................ 6, 15

8

*Baumer v. Pachl,*
9    8 F.3d 1341 (9th Cir. 1993) ............................................................ 7

10

*Benjamin v. Diamond (In re Mobile Steel Co.),*
11    563 F.2d 692 (5th Cir. 1977) ....................................................... 24

12

*Craft v. U.S.,*
    65 F. Supp. 2d 651 (W.D. Mich. 1999) ....................................... 16
13

14

*Desoto v. Condon,*
    No. 08-56832, 2010 WL 1141521 (9th Cir. Mar. 24, 2010) ........... 12
15

16

*Gutierrez v. Givens,*
    1 F. Supp. 2d 1077 (S.D. Cal. 1998) ........................................... 13

17

*Hamid v. Price Waterhouse,*
18    51 F.3d 1411 (9th Cir. 1995) ....................................................... 12

19

*Hamilton v. Willms,*
20    No. CV F 02 ................................................................................ 7, 8

21

*Harrell v. U.S.,*
22    13 F.3d 232 (7th Cir. 1993) ......................................................... 18

23

*Hecht v. Summerlin Life & Health Ins. Co.,*
    536 F. Supp. 2d 1236 (D. Nev. 2008) ......................................... 13
24

25

*Holmes v. Sec. Investor Prot. Corp.,*
    503 U.S. 258 (1992) .................................................................... 12

26

27

*Howard v. Am. Online Inc.,*
    208 F.3d 741 (9th Cir. 2000)........................................................ 11

28

1

**TABLE OF AUTHORITIES**
(continued)

2

3                                                                                    **Page(s)**

*In re Ponce Nicasio Broad., L.P,*
    Bankruptcy No. 04-26256-B-7, 2008 WL 361081 (Bkrtcy. E.D. Cal. Feb.
    7, 2008) ................................................................................................................ 15

*In re Unified Commercial Capital,*
    No. 01-MBK-6004L, No. 01-MBK-6004L, 2002 WL 32500567 (W.D.
    N.Y. June 21, 2002) ............................................................................................ 16

*Intri-Plex Techs., Inc. v. Crest Group, Inc.,*
    499 F.3d 1048 (9th Cir. 2007) ............................................................................ 18

*Jeffreys v. Exten,*
    784 F. Supp. 146 (D. Del. 1992) ........................................................................ 13

*Kaplan v. Reed,*
    28 F. Supp. 2d 1191 (D. Colo. 1998) ................................................................. 13

*Laguna Publ'g. Co. v. Employers Reinsurance Corp.,*
    617 F. Supp. 271 (C.D. Cal. 1985) ..................................................................... 23

*Lauter v. Anoufrieva,*
    642 F. Supp. 2d 1060 (C.D. Cal. 2009) ............................................................... 6

*Lincoln House, Inc. v. Dupre,*
    903 F.2d 845 (1st Cir. 1990) .............................................................................. 12

*Lui Ciro, Inc. v. Ciro, Inc.,*
    895 F. Supp. 1365 (D. Haw. July 26, 1995) ......................................................... 5

*Mangindin v. Wash. Mut. Bank,*
    637 F. Supp. 2d 700 (N.D. Cal. 2009) ................................................................ 23

*Martinelli v. Petland, Inc.,*
    No. CV-09-529-PHX-DGCI, 2010 WL 376921 (D. Ariz. Jan. 26, 2010) ............ 9

*McQuillion v. Schwarzenegger,*
    369 F.3d 1091 (9th Cir. 2004) ............................................................................ 24

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Natomas Gardens Investment Group LLC v. Sinadinos,*
  No. CIV. S-08-2308 FCD/KJM, 2009 WL 1363382 (E.D. Cal. May 12, 2009) ...................................................................................................... 6

*Quantum Technology Partners II, L.P. v. Altman Browning and Co.,*
  No. 08-CV-376-BR, 2008 WL 4525769 (D. Or. Oct. 2, 2008) ...................... 12

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,*
  119 F.3d 935 (11th Cir. 1997) ........................................................................... 8

*Rose v. Bartle,*
  871 F.2d 331 (3d Cir. 1989) .............................................................................. 6

*Rothberg v. Chloe Foods Corp.,*
  No. CV-06-5712 (CPS), 2007 WL 2128376 (E.D.N.Y. July 25, 2007) ........... 13

*Soloman v. Blue Cross & Blue Shield Ass'n,*
  574 F. Supp. 2d 1288 (S.D. Fla. 2008) .............................................................. 9

*Twombly. Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................... 6, 15

*U.S. v. Zichettello,*
  208 F.3d 72 (2d Cir. 2000) ................................................................................ 8

*United Centrifugal Pumps v. Schotz,*
  No. C-89-2291, 1991 WL 274232 (N.D. Cal. June 12, 1991) ........................... 5

**STATE CASES**

*Chichester v. Mason,*
  43 Cal. App. 2d 577 (1941) .............................................................................. 16

*In re Holly Hill Med. Ctr., Inc.,*
  44 B.R. 253 (Bkrtcy. Fla. 1984) ...................................................................... 16

*Silberg v. Anderson,*
  50 Cal. 3d 205 (1990) ...................................................................................... 23

**STATE STATUTES**

Cal. Civ. Code § 3439.04(a)(2) .......................................................................21, 22

§ 9-203(b)(2) of the Uniform Commercial Code .................................................17

**RULES**

Federal Rule of Civil Procedure 14(a).................................................................13

Rule 8 ....................................................................................................................6

Rule 9(b) ........................................................................................................passim

Rule 12(b)(6).........................................................................................................18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III...........................................................................................24

# I.    INTRODUCTION

Mattel has been permitted to take unfettered one-sided discovery for nearly 18 months based on its false assertions that Omni's acquisition of the Wachovia credit facility was somehow illegal or fraudulent.  Despite that extensive discovery, which the Court observed has been "staggering in scope," Mattel does not and cannot state legally cognizable claims against Omni arising out of the Omni-Wachovia transaction.  Indeed, Mattel's Opposition demonstrates the following:

- The Omni transaction has no relation to the purported RICO Criminal Enterprise;
- Mattel has not pled its RICO conspiracy claim with particularity as mandated by Rule 9(b);
- There are no allegations regarding Omni's alleged "knowledge" or "agreement" relating to the purported "wide-ranging" RICO enterprise;
- There is no allegation of any actual fraudulent transfer from MGA to Omni since Omni did not participate at all in the alleged "Dividend Transfers" and has not received any "IP Transfer" under the alleged Side Letter Agreement, as falsely asserted in the FAAC; and
- Mattel has suffered no injury as a result of any Omni-related conduct.

The Omni-Wachovia transaction was not part of any RICO enterprise and nothing Mattel has alleged, or could allege, can change that reality.  It resulted from a series of business decisions by Wachovia (on behalf of a consortium of banks) to grant a loan to MGA, declare a default and begin to foreclose on that loan, and then, faced with its own severe financial issues (that led to it being acquired by Wells Fargo less than a month later), to sell its interest at a discount to substitute the certainty of immediate cash for the vagaries of the foreclosure process it had embarked on.  Mattel has no facts and certainly has alleged none to suggest that Omni knew of, let alone agreed to participate in, its so-called RICO

1   Criminal Enterprise that is, in any event, entirely separate from and unrelated to the

2   Omni-Wachovia transaction.

3          Mattel's Opposition is rife with contradictions and misstatements of the

4   factual and legal issues surrounding its claims and ignores the previous guidance

5   and Order of this Court.  This Court just held, in ruling on Mattel's motion for

6   leave to file the FAAC, that Mattel "<u>need[s] to comply with the heightened</u>

7   <u>pleading standards of Rule 9(b), as most of Mattel's claims related to the</u>

8   <u>Wachovia-Omni transactions allege fraud</u>."  (April 10, 2010 Order at 7) (Dkt. No.

9   7712) (emphasis added).[1]  Having spent more than a year accusing Omni and its

10  members of all manner of fraudulent behavior, nothing speaks more profoundly

11  about the insufficiency of Mattel's "claims" than its disingenuous argument now

12  that its RICO conspiracy claim does not "sound in fraud" and that it does not have

13  to satisfy Rule 9(b)'s particularity standard.

14         To support its RICO conspiracy claim against Omni, Mattel must allege

15  facts with particularity to demonstrate that Omni was aware of, and agreed to

16  participate in, the purported RICO Criminal Enterprise.  It has not done so.

17  Despite the extensive discovery it has obtained, Mattel does not and cannot plead

18  any such facts and does not even come close to meeting the particularity standard

19  of Rule 9(b), which explains why Mattel desperately seeks to avoid compliance

20  with Rule 9(b) or this Court's prior Order.  The reality is that, entirely apart from

21  its legal infirmities, Mattel's conspiracy theory against Omni and its members is

22  not only implausible, but requires the suspension of disbelief (not to mention

---

[1] Indeed, the FAAC makes liberal use of conclusory fraud labels to describe the Omni transaction: "Omni made those *false representations*" (*Id.* at ¶ 104); "*conceal* the true source of the funds" (*Id.* at ¶ 105); "*disguise and continue to disguise* the level of Larian's funding" (*Id.* at ¶ 108); "entered into *fraudulent transactions* to *hide* their assets and hinder Mattel's rights" (*Id.* at ¶ 112); "have continued to engage in *fraudulent conduct* to create the appearance of an arm's length transaction." (*Id.* at ¶ 114.)

1  common sense).  The actual explanation (and the truth) for all of the actions taken

2  by Omni is that Omni and its members purchased the distressed MGA debt from

3  Wachovia to earn a profit -- not to participate in a criminal RICO enterprise that

4  they had no knowledge of and certainly did not agree to participate in.

5  　　　Moreover, Mattel has all but abandoned its fraudulent transfer claims.  It

6  now concedes that Omni had no participation in the so-called "Dividend

7  Transfers," that there is no allegation (or evidence) of any "IP Transfer," and that

8  Mattel's only "complaint" is the factually absurd and legally infirm claim that

9  Omni should not be entitled to receive interest payments on its loan to MGA.

10  Mattel alleges in the FAAC that Omni entered into a Side Letter Agreement to

11  transfer the Bratz intellectual property rights to Omni to frustrate Mattel's ability to

12  acquire those rights through a potential future court judgment.  It does no such

13  thing and this Court need not wonder why Mattel (despite having the document)

14  failed to include it with the many other exhibits attached to the FAAC.

15  　　　Faced with the actual words of the Side Letter Agreement in Omni's moving

16  papers, which makes clear that no transfer at all was made in the Side Letter

17  Agreement, Mattel states in its Opposition papers that "Mattel does not claim

18  injury based on the Side Letter Agreement, itself, but based on MGA's transfer of

19  a security interest in its purported Bratz-related intellectual property rights,

20  whether made pursuant to the Side Letter or otherwise." (Opp. at 16.)  Even more

21  revealing, Mattel then concedes: "<u>Should it turn out</u>, contrary to the testimony of

22  certain Omni members, <u>that no such transfer was made</u>, <u>Mattel</u> obviously <u>would</u>

23  <u>have no claim to avoid that transfer</u>." (*Id.*) (emphasis added).

24  　　　Having long argued that the Omni-Wachovia transaction wrongfully

25  transferred Bratz IP when it knew that it did no such thing, Mattel has moved from

26  alleging, falsely, in the FAAC that the Bratz IP was transferred to Omni through

27  the Side Letter Agreement, to now arguing in its Opposition brief that it is unaware

28

1   whether there was any transfer at all, either through the Side Letter Agreement or

2   otherwise.

3          Of course most fundamental is the undisputable fact that Mattel has no

4   judgment against MGA at all, which means, as a matter of fact and law, that Mattel

5   has suffered no damage as a result of Omni's acquisition of the Wachovia loan or

6   other alleged conduct.  There is no question that Mattel's "dispute" with Omni is

7   no more than hypothetical at this point and not an actual justiciable controversy.

8          Recognizing that the FAAC has not stated a RICO conspiracy or fraudulent

9   transfer claim, Mattel's Opposition largely focuses on Omni's purported

10  "concealment" of the Omni-Wachovia transaction from Mattel.  Unfortunately for

11  Mattel, this last minute effort to create a legal wrong out of Omni's purported

12  failure to satisfy Mattel's morbid curiosity about the transaction fails because

13  Omni plainly did not and does not have any such duty to Mattel.  Mattel's true

14  motivation from the outset was improper and is now conceded.  Mattel is

15  impermissibly seeking to use this judicial proceeding to prematurely jump ahead of

16  the senior secured rights of MGA's lender should Mattel ever be able to obtain a

17  judgment against MGA; for now such a judgment is nothing more than a

18  hypothetical future possibility.

19         Mattel's claims are now being exposed for what they are -- inflammatory

20  labels and conclusions (with no real supporting facts) disguised as a "RICO

21  conspiracy" in a futile effort to seek priority over the security interests of MGA's

22  senior secured lender.  Courts have long cautioned against the potential abuse by

23  civil litigants of RICO, which was enacted to combat the infiltration of organized

24  crime into legitimate businesses.  Mattel's use of the RICO statutes as a tool for

25  this improper purpose is a stark example of the abuse of RICO by civil litigants

26  and should not be condoned by this Court.

27

28

## II.   MATTEL FAILS TO PLEAD A RICO CONSPIRACY CLAIM AGAINST OMNI

### A.   Mattel Concedes That It Failed To Plead Its RICO Conspiracy Claim With Particularity Under Rule 9(b)

This Court previously held, in ruling on Mattel's motion for leave to file the FAAC, that Mattel "need[s] to comply with the heightened pleading standards of Rule 9(b), as most of Mattel's claims related to the Wachovia-Omni transactions allege fraud." (April 10, 2010 Order at 7) (Dkt. No. 7712) (emphasis added). Ignoring this Court's statement and the prevailing Ninth Circuit authority on the issue, Mattel argues that its RICO conspiracy claim does not "sound in fraud" and that it should not be required to satisfy Federal Rule of Civil Procedure 9(b)'s particularity standard.  This argument not only ignores this Court's prior Order and Mattel's many false assertions over the past 18 months, but contradicts the numerous fraud labels and accusations used by Mattel in the FAAC itself to describe Omni's acquisition of the Wachovia debt.  (*See* footnote 1, page 2.)[2]

"Where an alleged RICO violation sounds primarily in fraud, as this one does, the conspiracy to commit the fraud must be pleaded in a way that satisfies Rule 9(b), just like the underlying fraud." *United Centrifugal Pumps v. Schotz*, No. C-89-2291, 1991 WL 274232, at *3 (N.D. Cal. June 12, 1991) (dismissing RICO claims for failing to plead with particularity under Rule 9(b)); *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1383-84 (D. Haw. July 26, 1995) ("To state a claim for RICO conspiracy where the predicate acts sound in fraud, the Luis must plead the conspiracy with the particularity required by Rule 9(b)."); *Natomas*

---

[2] In fact, Mattel's Opposition also uses fraud labels and accusations including, for example, its assertion that "Omni knowingly agreed to join the RICO conspiracy that Mattel described, and intentionally participated in a scheme to ***defraud*** Mattel." (Mattel Opp., p. 2, emphasis added.).

A/73380684.9/3009108-0000337036                          5

1    *Gardens Investment Group LLC v. Sinadinos*, No. CIV. S-08-2308 FCD/KJM,

2    2009 WL 1363382, at *24 (E.D. Cal. May 12, 2009) (holding that RICO

3    conspiracy claims that are "grounded in fraud" must be pled with particularity

4    under Rule 9(b)).

5       Notably, Mattel <u>cannot</u> and does not <u>cite</u> <u>a</u> <u>single</u> <u>Ninth</u> <u>Circuit</u> <u>case</u> for its

6    assertion that it need only satisfy the standard set forth in Rule 8(a).  Indeed, faced

7    with overwhelming Ninth Circuit authority, Mattel vainly seeks support in *Rose v.*

8    *Bartle*, 871 F.2d 331, 366 (3d Cir. 1989), a twenty-one year old case that no Ninth

9    Circuit court has followed.[3]  The only other case Mattel cites, *Lauter v. Anoufrieva*,

10    642 F. Supp. 2d 1060, 1080-81 (C.D. Cal. 2009), actually refutes Mattel's position

11    because it specifically states that "[c]ases in which RICO claims are predicated

12    upon fraud, must conform to the particularized pleading requirements of Fed. R.

13    Civ. P. 9(b) . . . ."  Because Mattel does not even attempt to argue that it has

14    complied with the particularity requirements of Rule 9(b), its RICO conspiracy

15    claim must be dismissed.[4]

16      **B.**    <u>**Mattel Fails To Allege That Omni Was Aware Of And**</u>

17          <u>**Agreed To Participate In The RICO Criminal Enterprise**</u>

18          1.    <u>Mattel Fails To Allege That Omni Had Knowledge Of The</u>

19              <u>Criminal Enterprise</u>

20       Mattel does not and cannot allege that Omni had knowledge of the Criminal

21

22    ———————————

   [3] That provides no support here in any event as the *Rose* court emphasized that the

23    RICO allegations were not based in fraud.  *Id.* at 356 n.33 & 362 n.53 (noting that "plaintiffs allege no mail, wire or other fraud by the defendants" and that

24    "plaintiffs allege no fraud").

25    [4] Even if the Court were to hold that Rule 8 applies, Mattel's conspiracy claim

   should be dismissed as Mattel does not satisfy either Rule 8's pleading standard or

26    the plausibility requirements set forth in *Iqbal* and *Twombly*.  *Bell Atl. Corp. v.*

   *Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950

27    (2009).

28

1    Enterprise. "[C]onspiracy to violate RICO requires a showing that defendant 'was
2    *aware of the essential nature and scope of the enterprise* and intended to
3    participate in it.'" *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (citation
4    omitted) (emphasis added).

5           Mattel argues throughout its Opposition papers that the RICO Criminal
6    Enterprise at issue was much wider in scope than Omni's acquisition of the
7    Wachovia debt. That is Omni's point. There are no allegations that Omni was
8    aware of the essential nature or scope of this purported RICO Criminal Enterprise.
9    Nor is the failure to include any such allegations surprising: the Omni-Wachovia
10   transaction is unrelated to any of those RICO allegations. For example, Mattel
11   does not and cannot allege that Omni had any knowledge whatsoever of (1)
12   MGA's alleged theft of Bratz, (2) MGA's alleged theft of trade secrets in Mexico,
13   (3) MGA's alleged theft of trade secrets in Canada, (4) MGA allegedly hiring
14   Mattel employees to steal confidential information and work on Bratz, (5) MGA's
15   theft of Moxie, (6) Larian's and MGA's alleged destruction of evidence and
16   commission of perjury, and (7) Larian's alleged scheme to divert money outside of
17   MGA ("Dividend Transfers"). Nor does Mattel allege that Omni played any role
18   in the Dividend Transfers or assert a claim against Omni relating to the Dividend
19   Transfers. In fact, in its Opposition, Mattel states that it does not intend to state a
20   claim against Omni based on such Dividend Transfers. (Opp. at 15.)

21          Unable to allege Omni's knowledge of the essential nature, scope and
22   purpose of the alleged far reaching RICO enterprise, Mattel instead argues that
23   "[t]he knowledge requirement may even be satisfied by evidence that the defendant
24   knew what other conspirators 'were up to' or knew or suspected that she was part
25   of a larger enterprise." (Opp. at 9 [citing *Hamilton v. Willms*, No. CV F 02 6583
26   AWI SMS, 2005 WL 3797562, at *10 (E.D. Cal. Oct. 28, 2005)].) The *Hamilton*
27   court, however, also noted that a conspirator must be aware of the enterprise's
28   "general nature" and "knew that it extended beyond her. Mattel does not even

1   meet its own watered-down standard.  Mattel nowhere alleges that Omni knew

2   what the alleged "other conspirators 'were up to'" and certainly never alleges facts

3   showing that Omni "suspected that [it] was part of a larger enterprise."

4        Indeed, Mattel merely argues that Omni had knowledge of *its own* alleged

5   conduct (i.e., the Wachovia transaction), *not that it had knowledge of an overall*

6   *scheme or any other aspect of the alleged scheme.*  This tautological argument,

7   while inventive, is of no help to resuscitate Mattel's doomed RICO conspiracy

8   claim.  The upshot is a legally untenable argument.  Mattel seeks to hold Omni

9   liable for a RICO scheme for which it did not and is not alleged to have had any

10   knowledge of whatsoever.  *U.S. v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000)

11   (holding that the district court correctly concluded that to be part of the RICO

12   conspiracy the jury must find that "each defendant 'was aware of the general

13   nature of the conspiracy and that the conspiracy extended beyond the defendant's

14   individual role.'") (emphasis added).

15        Mattel does not dispute that the MGA debt was legitimate while in the hands

16   of Wachovia or that the purchase and sale of distressed debt is a common business

17   practice.  Indeed, Mattel acknowledges in the FAAC that there would be nothing

18   wrong with Mr. Larian or MGA itself purchasing the debt from Wachovia.  (FAAC

19   ¶ 99 ["*MGA itself did not attempt to buy the debt from Wachovia, even though*

20   *doing so would have been in its and its creditors' best interest.*"].)  Mattel does not

21   and of course cannot allege that Omni, merely by engaging in a business

22   transaction to purchase a debt from Wachovia, had knowledge of the purported

23   Bratz RICO scheme.  *See Republic of Panama v. BCCI Holdings (Luxembourg)*

24   *S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) (affirming dismissal of RICO claims

25   observing that "the fourth amended complaint does not allege that the First

26   American *defendants knew that the money transferred to BCCI's First American*

27   *account in Washington, D.C. was unlawfully diverted from the Panamanian*

28   *government or otherwise derived from criminal activity*.") (emphasis added).

1  Because Mattel cannot plead that Omni had knowledge of the essential nature and

2  scope of the enterprise, its RICO conspiracy claim against Omni must be

3  dismissed.

4          2.      Mattel Fails To Allege That Omni Agreed To Participate In The

5                  Alleged RICO Scheme

6          In its Opposition, Mattel baselessly asserts, without citing a single paragraph

7  or quoting a single allegation from the FAAC, that its allegations "are more than

8  sufficient to create a plausible inference that Omni agreed to participate in the

9  Criminal Enterprise." (Opp. at 10-11.)  Mattel's "agreement" allegations suffer

10 from the same fatal defects that plague its inadequate "knowledge" allegations.

11         "An agreement to violate RICO is the essential element of a RICO

12 conspiracy claim." *Martinelli v. Petland, Inc.*, No. CV-09-529-PHX-DGCI, 2010

13 WL 376921, at *7 (D. Ariz. Jan. 26, 2010) (citation omitted); *Soloman v. Blue*

14 *Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1292 (S.D. Fla. 2008) ("The

15 essence of a RICO conspiracy claim is that each defendant has *agreed* to

16 participate in the conduct of an enterprise's illegal activities.") (emphasis in

17 original).  "To satisfy [the] pleading requirements for a conspiracy claim, the

18 complaint must include allegations 'plausibly suggesting (not merely consistent

19 with) agreement.'"  *Martinelli*, 2010 WL 376921, at *8 (citation omitted).

20         As established in Omni's Motion to Dismiss, Mattel's FAAC is utterly

21 devoid of any factual allegations -- let alone particular facts to satisfy Rule 9(b) --

22 that Omni agreed to participate in the purported RICO Criminal Enterprise.  Like

23 its "knowledge" allegations, the FAAC only contains conclusory allegations that

24 Omni "agreed to assist" the alleged RICO enterprise, which is insufficient to

25 satisfy Mattel's pleading burden.  (*See* FAAC ¶¶ 129-30.)  The FAAC does not

26 begin to comply with its burden.  That can be seen most clearly by pointing out

27 that Mattel in its Opposition does not even identify any allegations in the FAAC

28 that purportedly provide the factual basis that Omni agreed to participate in the

A/73380684.9/3009108-0000337036                    9

1    alleged scheme.

2       It cannot be inferred that Omni agreed to participate in the RICO scheme

3 considering, among other things, that Omni is not even alleged to have had

4 knowledge of the scheme. Unable to point to any factual allegations suggesting an

5 agreement, Mattel's only argument in response to Omni's Motion is that "there is

6 no other plausible explanation for why Omni and its members would have agreed

7 to invest in Omni on behalf of Larian and then conceal their side deals with

8 Larian." (Opp. at 10.) Even assuming the truth of these allegations (which are

9 demonstrably false), it cannot possibly be "inferred" that such unspecified

10 agreements constitute an agreement to take part in the entirely unrelated RICO

11 Criminal Enterprise, especially where there is not a single allegation that the Omni

12 members had knowledge of the alleged enterprise.

13       Mattel also argues that there is no explanation "why the Omni members

14 themselves, who presumably do not share Larian's concerns about MGA's

15 competitors, would engage in lies and deceit." (Opp. at 11.) <u>Precisely</u>. Mattel's

16 far-fetched theory is simply not plausible based on the facts alleged. The far more

17 plausible explanation for Omni's acquisition of the Wachovia debt is what in fact

18 occurred -- Omni and its members invested their funds to acquire a distressed loan

19 at a steep discount for the purpose and goal of earning a profit on the loan by

20 collecting as much of the principal as possible. This is a common business practice

21 and there is nothing wrongful about it.

22       **C.**    <u>**Mattel Concedes That The Omni Related Conduct Is Not Related**</u>

23           <u>**To The Rest Of The Purported RICO Scheme**</u>

24       In Omni's Motion to Dismiss, it demonstrated that the Omni-related

25 allegations that are alleged in the FAAC are "too *un* related - *too* separate, *too*

26 distinct, *too* obviously related to a simple effort to avoid a later court judgment" to

27 be considered part of the Bratz RICO scheme. *Apparel Art Int'l, Inc. v. Jacobson*,

28 967 F.2d 720, 724 (1st Cir. 1992). Mattel concedes this point by never addressing

1   this argument in its Opposition.  Since they cannot be considered part of the

2   scheme, Omni, who is not alleged to have taken part in any other aspect of the

3   scheme, cannot be held liable as a conspirator.  *Howard v. Am. Online Inc.*, 208

4   F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate

5   RICO existed if they do not adequately plead a substantive violation of RICO.").

6   **D.   Mattel Has Not Suffered Any Injury-In-Fact Nor Has It Sustained**

7   **Any Injury That Omni Proximately Caused**

8        Mattel does not dispute that it has not obtained a judgment of any kind

9   against MGA to this point and that any potential injury that it may suffer is

10  contingent on a series of future events that may or may not occur.  Nor does it

11  dispute that any potential injury it may suffer in the future as a potential judgment

12  creditor is only indirect under longstanding Ninth Circuit authority.  Faced with

13  this insurmountable legal hurdle, Mattel attempts to argue around this defect in the

14  Omni-related allegations by asserting that it does not need to allege that it suffered

15  any harm as a result of any conduct by Omni.  Instead, it seeks to hold Omni liable

16  for injury it may suffer in the future caused by "at least one conspirator" (i.e.,

17  Larian or MGA).  The fact that Mattel does not have facts sufficient to allege a

18  RICO claim against Omni and, instead, seeks to hold Omni liable as a RICO co-

19  conspirator for harm that Omni did not cause to Mattel, speaks volumes about the

20  utter lack of substance behind Mattel's allegations against Omni.[5]

21       Nor does Mattel have any response to Omni's argument that its alleged

22  injury (even if it had an enforceable judgment), would be indirect and not

23

24  _____

25  [5] In any event, as demonstrated above, Mattel's attempt to transfer the alleged harm and liability caused by others to Omni fails because Mattel has not pled and cannot prove that Omni had both ***knowledge*** of the RICO enterprise and that it entered into an ***agreement*** to participate in it.  Without such knowledge and an agreement, Mattel cannot hold Omni liable for the conduct of the other co-conspirators.

26

27

28

1   proximately caused by the Omni-related conduct. "'A plaintiff may not sue

2   directly if his injury is derived wholly from an injury to a third party.'" *Quantum*

3   *Technology Partners II, L.P. v. Altman Browning and Co.*, No. 08-CV-376-BR,

4   2008 WL 4525769, *14 (D. Or. Oct. 2, 2008) (citation omitted). In such

5   circumstances, the plaintiff's injury is "generally said to stand at too remote a

6   distance to recover." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69

7   (1992). Mattel has not alleged any direct harm relating to the Omni-related

8   conduct, but only claims that the Omni-Wachovia transaction may affect its ability

9   as a (hypothetical) creditor to collect on a later judgment. This purported

10  hypothetical injury, even if it were concrete, is indirect under well established

11  Ninth Circuit precedent and cannot form the basis of Mattel's purported RICO

12  injury since the harm is the diversion of assets from MGA, which would only be an

13  indirect injury to Mattel. *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1420 (9th Cir.

14  1995) (affirming dismissal of shareholder/creditor claims for lack of standing);

15  *Desoto v. Condon*, No. 08-56832, 2010 WL 1141521, at *1 (9th Cir. Mar. 24,

16  2010) (same).

17        Mattel devotes most of its focus to arguing "ripeness" by asserting that it

18  "has adequately alleged injury-in-fact" against Omni "as a creditor of MGA."

19  (Opp. at 12 [citing FAAC ¶¶ 97-116, 206-223].) *Mattel, however, is not a*

20  *creditor*. It has not obtained a judgment against MGA, and it has not shown that it

21  is unable to collect on any potential, hypothetical judgment it may get. Thus,

22  Mattel's purported injury is speculative, hypothetical and contingent. *Lincoln*

23  *House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) ("the most important

24  consideration in determining whether a claim is ripe for adjudication is the extent

25  to which 'the claim involves uncertain and contingent events that may not occur as

26

27

28

1    anticipated, or indeed may not occur at all'").[6]  All of the cases that Mattel cites are

2    entirely inapposite as the plaintiffs all had concrete judgments against the

3    defendants.  *Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1085 (S.D. Cal. 1998)

4    ("Plaintiffs allege injury because they have been unable to collect the $14.1 million

5    judgment against Givens."); *Rothberg v. Chloe Foods Corp.*, No. CV-06-5712

6    (CPS), 2007 WL 2128376, at *1 (E.D.N.Y. July 25, 2007) (stating that plaintiff

7    had judgment against debtor); *Jeffreys v. Exten*, 784 F. Supp. 146, 149 (D. Del.

8    1992) (stating that plaintiff had concrete debt and default judgment against

9    company).

10          Mattel also unpersuasively attempts to distinguish the cases cited in Omni's

11   Motion to Dismiss on the grounds that "the only RICO injury the plaintiff alleged

12   was harm to its rights to recover a potential judgment in a separate lawsuit against

13   the defendant."  (Opp. at 13 n. 7.)  This argument is meritless.  Neither of the two

14   cases that Mattel cites are RICO cases, which has a more difficult standing

15   requirement to satisfy.[7]  The hypothetical injury that Mattel may suffer on a

16   potential judgment that Mattel may one day obtain as part of an entirely different

17   phase of this case, is contingent on rulings before another court, and is based on

18   numerous events besides simply obtaining a judgment that may never come to

19

20   [6] *Kaplan v. Reed*, 28 F. Supp. 2d 1191, 1205 (D. Colo. 1998) ("[A] defendant's
21   alleged actions in fraudulently transferring and concealing his assets does not result
     in an injury to a plaintiff's property until such time as the plaintiff has an actual
22   judgment in hand.").

23   [7] The *Hecht* court relies on Federal Rule of Civil Procedure 14(a) because the third
     party complaint in that case was for indemnification and contribution.  *Hecht v.*
24   *Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1240-42 (D. Nev. 2008).
     Omni was not being added as a indemnifier or contributor to ripe claims, but as a
25   defendant to an entirely unripe claim.  Furthermore, *Goltz* involved state law
     claims that the court found to be "part and parcel" with the other claims, and the
26   court determined, unlike here, that the case would cause the third party defendant
     "little burden."  *Nat'l Capital Orthopedic Assocs., P.C.*, No. CIV. A. AW 96-2429,
27   1997 WL 625117, at *3 (D. Md. Sept. 29, 1997).

28

1  fruition. It is entirely improper to litigate this issue and have the Court render an

2  advisory opinion on something that may never come to fruition, and, of course,

3  would also be a waste of judicial resources and an infliction of a substantial,

4  unnecessary burden on Omni.

5      As a final effort to avoid dismissal, Mattel attempts to piece together an

6  injury argument by asserting that "[i]t is settled that a RICO plaintiff may seek to

7  recover attorneys' fees and costs expended to recover on a judgment due to the

8  defendant's attempts to transfer or conceal assets." (Opp. at 13.) This argument is

9  meritless. First, Mattel has no judgment and, therefore, cannot possibly claim that

10 it is spending money to recover on a judgment. Second, Mattel cannot possibly

11 hold Omni liable for costs and attorneys' fees unless it shows that Omni has been

12 part of a scheme and that it is has suffered as part of the scheme. Third, it is quite

13 incredible that Mattel argues that it can base its purported RICO "injury," not on

14 actual damages it suffered as a result of the Omni-Wachovia transaction, but on the

15 costs for the Court's appointment of the forensic auditor that **Mattel asked the**

16 **Court to appoint**.[8]

17 **III.   MATTEL FAILS TO PLEAD A FRAUDULENT TRANSFER CLAIM**

18 **        AGAINST OMNI**

19     Mattel's Opposition regarding its two fraudulent transfer claims ignores the

20 fundamental deficiency in the FAAC: Mattel alleges no transfer of property from

21 MGA to Omni, nor does Mattel allege any resulting harm. Mattel cannot maintain

22 a fraudulent transfer claim absent a transfer or resulting harm.[9]

---

[8] Contrary to Mattel's misleading arguments, the forensic auditor did not "uncover MGA's and Omni's wrongful conduct . . . ." Moreover, Mattel's false and misleading reference to the forensic auditor is a violation of Judge Larson's Order that the parties could not rely on his reports at all for any reason.

[9] Mattel does not refute that its fraudulent transfer claims sound in fraud and thus must meet the pleading standard of Rule 9(b). Mattel has failed to plead how the transfers as attributed to Omni were fraudulent.

**A.    Mattel Concedes That MGA Did Not Transfer Property To Omni That Would Support A Claim For Actual Or Constructive Fraudulent Transfer**

In its moving papers, Omni established that Mattel's fraudulent transfer claims as to Omni could only be actionable if property from MGA were transferred to Omni. (Memo. at 19-20 [citing *In re Ponce Nicasio Broad., L.P*, Bankruptcy No. 04-26256-B-7, 2008 WL 361081, at *7 (Bkrtcy. E.D. Cal. Feb. 7, 2008)].) Mattel does not dispute this. Mattel rests both of its fraudulent transfer claims completely on the so-called "Dividend Transfers" and "IP Transfer". (FAAC ¶ 207 (a) and (b).)  Neither one can be attributed to Omni.

**1.    Mattel Concedes That The "Dividend Transfers" Do Not Apply To Omni**

In its Opposition, Mattel concedes that the "Dividend Transfers" do not apply to Omni. (*See* Opp. at 15 ["Mattel does not intend to state a fraudulent transfer claim against Omni based on such Dividend Transfers."].)  Admitting it is unable to hold Omni liable for the alleged Dividend Transfers, Mattel instead tries to argue that MGA's interest payments on loans that Omni made to MGA are the purported transfer.  This is an untenable premise that cannot meet the plausibility standard. *Twombly*, 550 U.S. at 570.  To accept Mattel's argument would require one to believe (while suspending their disbelief) that Omni transferred $6 million **into** MGA for the "sinister" purpose of receiving some small fraction of those funds back in the form of interest payments.  Here, the conduct alleged is "compatible with . . . [and] more likely explained by, lawful . . . behavior." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (citing *Twombly*, 550 U.S. at 567). Namely, as the successor lender which acquired distressed debt, Omni recognized that its debtor needed additional capital to fund its operations and loaned $6 million more to its debtor.

1    Even under Mattel's implausible premise, as a matter of law, interest

2    payments cannot form the basis of a fraudulent transfer claim.  As Omni stated in

3    its moving papers, the purpose of the UFTA is "to prevent debtors from placing

4    property which legitimately should be available for the satisfaction of demands of

5    creditors beyond their reach . . . .," which mirrors Section 548 of the Bankrupcty

6    Code.  *Chichester v. Mason*, 43 Cal. App. 2d 577, 584 (1941).  However,

7    "payment of interest, taxes and insurance premiums ***did not constitute fraudulent***

8    ***conveyances*** under the Uniform Act."  *Craft v. U.S.*, 65 F. Supp. 2d 651, 661

9    (W.D. Mich. 1999) (emphasis added), *rev'd. on other grounds by U.S. v. Craft*,

10   535 U.S. 274 (2002); *see also In re Holly Hill Med. Ctr., Inc.*, 44 B.R. 253, 255

11   (Bkrtcy. Fla. 1984) (holding that interest payments made by debtor to third party's

12   creditor were not fraudulent transfers where credit had been extended for benefit of

13   debtor and thus, debtor had received reasonably equivalent value for interest

14   payments); *In re Unified Commercial Capital*, No. 01-MBK-6004L, No. 01-MBK-

15   6004L, 2002 WL 32500567, at *9 (W.D. N.Y. June 21, 2002) (same).

16   Tellingly, Mattel cites no contrary case law and does not attempt to

17   distinguish the authorities cited by Omni other than to say the cases do not state

18   "such a categorical rule" or "concern the present situation." (*See* Opp. at 17-19 n

19   11.)

20          2.    Mattel Concedes That No Transfer Was Made To Omni

21                Pursuant To The Side Letter Agreement

22   Having conceded that the Dividend Transfers do not apply to Omni, and that

23   interest payments cannot serve as a fraudulent transfer as a matter of law, Mattel is

24   left solely with the purported "IP Transfer."  In its FAAC, Mattel alleged that

25   "MGA purported to transfer a security interest in its Bratz-related intellectual

26   property to Omni 808 **pursuant to the Side Letter Agreement**." (FAAC ¶

27   207(b)) (emphasis added).  However, faced with the actual language of the Side

28   Letter Agreement, Mattel now acknowledges in its Opposition papers that it cannot

1  allege a transfer of IP property from MGA to Omni pursuant to the Side Letter

2  Agreement, that it is not sure any other transfer did occur and even concedes that a

3  transfer of Bratz-related property could not have occurred. Mattel admits in its

4  Opposition that it "does not claim injury based on the Side Letter Agreement," the

5  basis of Mattel's alleged "IP Transfers." (*See* Opp. at 16.) As discussed in Omni's

6  moving papers, resulting harm must come from a transfer. It necessarily follows

7  that the Side Letter Agreement cannot constitute an actionable transfer.

8      Recognizing it must abandon the Side Letter Agreement, Mattel instead

9  argues that its claim is "based on MGA's transfer of a security interest in its

10  purported Bratz-related intellectual property rights, **whether made pursuant to**

11  **the Side Letter Agreement or otherwise. Should it turn out . . . that no such**

12  **transfer was made, Mattel obviously would have no claim.**" *Id.* (emphasis

13  added). Mattel knows that its improper attempt to plead new allegations in its

14  Opposition papers by insinuating that the "IP Transfer" (although it was explicitly

15  defined in the FAAC) could exist apart from the Side Letter Agreement is doomed

16  to failure so it was forced to admit **Mattel does not know if a transfer occurred**

17  **and that if it did not occur, Mattel admits it has no claim against Omni.** This

18  comes despite the fact that Mattel had the unique benefit of 18 months of one-sided

19  discovery regarding Omni and underscores the fact that Mattel cannot plead a

20  claim for fraudulent transfer against Omni.

21      However, Mattel even goes a step further and agrees with Omni that it is not

22  possible for MGA to transfer rights in Bratz-related intellectual property that the

23  Court determines it does not have. (*See* Opp. at 17 fn 10 ["Mattel does not dispute

24  that.") As Section 9-203(b)(2) of the Uniform Commercial Code makes clear, this

25  would apply "Side Letter Agreement or otherwise."].)

26

27

28

1    To rescue its claims, Mattel tries to point to matters that it claims Omni did

2    not deny in its moving papers[10] and deposition testimony that is not alleged in the

3    FAAC, as well as an email attached to the FAAC. (*See* Opp. at 16.) But Mattel is

4    not permitted to amend its FAAC in its Opposition papers.  On a motion to dismiss

5    under Rule 12(b)(6), a court must consider the allegations in the complaint, not the

6    opposition; arguments in Mattel's Opposition cannot cure deficiencies in the

7    FAAC. *See, e.g., Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052

8    (9th Cir. 2007) ("Generally, a court may not consider material beyond the

9    complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion."); *Harrell v. U.S.,* 13

10   F.3d 232, 236 (7th Cir. 1993) ("[A] plaintiff cannot amend his complaint by a brief

11   that he files in the district court or the court of appeals.").

12   Mattel's arguments are also misleading.  Faced with the fact that the Side

13   Letter Agreement does not purport to transfer anything to Omni, Mattel improperly

14   cites to (but does not attach) the purported deposition testimony of Neil Kadisha

15   that he *believed* Omni did have a security interest in Bratz intellectual property

16   rights. (Opp. at 16.)  Mattel's citation to deposition testimony is misleading to the

17   Court.  In fact, Mr. Kadisha made that statement based on his own interpretation of

18   the "broad language" of the Omni-Wachovia agreement (not based on the Side

19   Letter Agreement).  Mattel's counsel then asked Mr. Kadisha to confirm that his

20   understanding of the Omni-Wachovia agreement was "that Omni 808 has a secured

21   interest in Bratz intellectual property as a secured creditor <u>only to the extent that</u>

22   <u>Wachovia did</u>?"  Mr. Kadisha responded:  "I believe so."  (Kadisha Dep. pp. 213-

23   214.)  It is undisputed that Omni simply stepped into the shoes of Wachovia and

24

25   _____

26   [10] Omni is not required to admit or deny the allegations of the FAAC in its motion
     to dismiss, and it is improper for Mattel to ask the Court to assume any facts from
27   Omni's failure to do so.

28

1   that Wachovia did not have a security interest in Bratz-related intellectual property

2   as Mattel admits in paragraph 97 of its FAAC.

3        Mattel also cites to an email regarding the Side Letter Agreement in which

4   Mr. Larian says "IP will be assigned to Omni 808." (Opp. at 16; FAAC Ex. S-62.)

5   However, this statement is entirely consistent with Omni's position that in

6   exchange for the consideration referenced in the Side Letter Agreement, the parties

7   contemplated the future transfer of additional collateral including intellectual

8   property. This has not happened and, as the parties agree, could not include any

9   Bratz-related intellectual property that the Court determines belongs to Mattel.[11]

10        Because failure to allege a transfer is dispositive of its claims, Mattel's

11  Thirteenth and Fourteenth Claims for actual and constructive fraudulent transfers

12  must be dismissed.

13  **B.    Mattel Admits It Cannot Allege Injury From The Purported**

14  **"Transfers" To Omni, Thus Requiring Dismissal Of Both Its**

15  **Fraudulent Transfer Claims**

16        Mattel's claims for actual and constructive fraudulent transfer must be

17  dismissed for the separate reason that Mattel has failed to allege it suffered a

18  

19  [11] In a feeble effort to persuade this Court to provide it with another chance to

20  plead its claims, Mattel makes the demonstrably false assertion that in the past two weeks it has received documents confirming that former Omni member Arsalan

21  Gozini "did in fact assign his interest in Omni to Larian's IGWT 826 entity." (Opp. at 20.) In support of this false representation, Mattel improperly cites to (but

22  does not attach) a document produced by Mr. Gozini at to his deposition. (Opp. at fn 16.) Mattel's citation to extrinsic evidence is improper because it is outside the

23  scope of the FAAC, and it is also extremely misleading to the Court. In fact, while Mattel claims that the exhibit "appears" to permit Gozini to satisfy his payment

24  obligations to IGWT by assigning his interest in Omni to IGWT, Mattel completely ignores Mr. Gozini's extensive deposition testimony regarding the

25  transfer of his interest to Mr. Kadisha -- not Mr. Larian. Indeed, Mr. Gozini explained that Mr. Larian expressed an interest in purchasing his interest in Omni

26  but that Omni rejected any such transfer to Larian and that Mr. Gozini sold his interest to Mr. Kadisha. (Gozini Dep. pp. 77-89.) It remains undisputed that Mr.

27  Larian does not have, and never had, any equity interest in Omni.

28

1    resulting harm from the transfers.  As Omni's moving papers stress, harm resulting

2    from the purported transfer is an essential element of both actual and constructive

3    fraudulent transfer.  *See* CACI 4200 and 4202.  Mattel does not dispute this fact.

4         Mattel admits that it "does not claim injury based on the Side Letter

5    Agreement," that is the basis of Mattel's alleged "IP Transfers."  (*See* Opp. at 16.)

6    Instead it argues that its injury is "based on MGA's transfer of a security interest in

7    its purported Bratz-related intellectual property rights, whether made pursuant to

8    the Side Letter Agreement or otherwise.  Should it turn out...that no such transfer

9    was made, Mattel obviously would have no claim."  *Id.*  Not only does this fall

10   outside the allegations of the FAAC, it is an argument for a hypothetical injury

11   from an admittedly hypothetical transfer.  Mattel concedes that it does not know if

12   a transfer occurred -- or even could have occurred since Mattel agrees in its

13   opposition that MGA cannot transfer rights in Bratz-related intellectual property

14   that the Court determines it does not have.  (*See* Opp. at 17 n 10.)  Thus, any

15   resulting injury to Mattel is either hypothetical, impossible or both.  Mattel has

16   made clear that it is unable to allege any harm based on any possible version, no

17   matter how contorted, of the "IP Transfer."

18        Having already conceded that the "Dividend Transfers" do not apply to

19   Omni, Mattel offers no response to the fact that it failed to allege harm resulting

20   from the purported interest payments from MGA to Omni.  Mattel has abandoned

21   its claim.  Mattel instead spends pages constructing a straw man argument that it

22   has standing to bring its claims because it is a "creditor" (as defined in the UFTA),

23   essentially conflating the concept of standing with Mattel's requirement to plead an

24   actual injury.  Mattel's failure to allege an injury disposes of its Thirteenth and

25   Fourteenth Claims for actual and constructive fraudulent transfers.

26

27

28

C.   **Mattel's Constructive Fraudulent Transfer Claim Also Must Be Dismissed For Independent Reasons**

Because Mattel's constructive fraudulent transfer claim is based solely on the purported "Dividend Transfers" and "IP Transfer" (FAAC ¶ 216), it fails because Mattel has failed to plead any transfer to Omni or any actual harm to Mattel.  In addition, Mattel failed to plead two elements required for a claim for constructive fraudulent transfer.  Mattel failed to plead that 1) MGA did not receive reasonably equivalent value in exchange for its purported transfers to Omni, and 2) that MGA was either insolvent or about to become insolvent as a result of the Dividend or IP Transfers.  This requires dismissal of Mattel's claim for constructive fraudulent transfer against Omni.

1.   Mattel Cannot Allege That MGA Did Not Receive Reasonably Equivalent Value In Exchange For The Purported "Transfers" To Omni

Mattel is required to plead that MGA did not receive reasonably equivalent value in exchange for its purported transfers to Omni.  *See* Cal. Civ. Code §3439.04(a)(2); 3439.05; CACI 4202.  However, beyond mere boilerplate allegations, Mattel fails to plead any facts that could establish this element.

Mattel alleges that Omni made a $6 million loan to MGA and that MGA made "purported interest payments" for the loan.  (FAAC ¶ 113).  In Omni's moving papers, Omni demonstrated that there is no allegation that these interest payments were "unreasonable" for the amount of the loan.  Mattel fails to address this argument.  Instead, conceding its allegations are deficient, Mattel argues that "[i]n any event, what constitutes "reasonably equivalent value" is a question of fact which cannot be properly resolved on a motion to dismiss."  (Opp. at 18 n 13.)  What Mattel ignores is that it is still required to *allege* that MGA did not receive reasonably equivalent value.  There is no such allegation in the FAAC.

1    Regarding the "IP Transfer," while Mattel alleges that "any funds made
2    available to MGA in exchange for the IP Transfer constituted less than reasonably
3    equivalent value," (FAAC ¶ 218), as explained above, there was no transfer of any
4    Bratz-related intellectual property.  By Mattel's own allegations, Omni assumed a
5    credit facility that was alleged to be declared in default.  (FAAC ¶ 98 (alleging
6    "Wachovia's declaration of events of default under the Credit Facility...")).  It is
7    not alleged that Omni immediately sought to collect on the credit facility.  Instead
8    Mattel alleges that Omni entered into a Side Letter Agreement (which Mattel
9    references but fails to attach as one of the many exhibits to its FAAC).  As the Side
10   Letter Agreement makes clear, Omni sought to waive the existing defaults and
11   restructure the facility.  *See* RJN, Ex. C at ¶ 7 (stating that the parties were to
12   "negotiate and enter into such amendments to, and such amendments and
13   restatements of, the existing Loan Documents ... as will be mutually agreeable in
14   order to restructure the existing credit facilities" including, without limitation, a
15   new maturity date, a waiver of existing defaults, and, an expanded collateral
16   package).  This forbearance by Omni shows the "additional consideration" Mattel
17   claims did not exist.  Thus, even if the "IP Transfer" occurred, Mattel has not pled
18   that MGA did not receive reasonably equivalent value.  For this independent
19   reason, Mattel's constructive fraudulent transfer claim (Fourteenth Counterclaim)
20   must be dismissed.

21                   2.    Mattel's Constructive Fraudulent Transfer Claim Also Fails
22                         Because Mattel Has Not Alleged MGA's Insolvency

23        As Omni established in its moving papers, Mattel's conclusory allegations
24   do not give rise to any reasonable inference that MGA was either insolvent or
25   about to become insolvent as a result of the Dividend or IP Transfers.  *See* Section
26
27
28

A/73380684.9/3009108-0000337036                    22

1   3439.[12]  Mattel's conclusory allegation that "MGA was insolvent or rendered

2   insolvent by the Fraudulent Transfers" (FAAC ¶ 217) is not factually supported by

3   any allegations in the FAAC, namely (as Mattel relies on in the Opposition) that

4   Wachovia had declared events of default under the Credit Facility and prior to May

5   2008, MGA was in "financial distress." (FAAC ¶ 98.)[13]  Financial distress is far

6   from insolvency.  Mattel's allegations are wholly insufficient to show MGA as

7   insolvent or about to become insolvent as a result of the Dividend or IP Transfers.

8   For this independent reason, Mattel's constructive fraudulent transfer claim

9   (Fourteenth Counterclaim) must be dismissed.

10  **IV.     MATTEL FAILS TO STATE A CLAIM FOR DECLARATORY**

11  **         RELIEF AGAINST OMNI**

12          As set forth in Omni's motion to dismiss, and as discussed further above,

13  Mattel's declaratory relief claim fails because Mattel failed to establish the

14  existence of an actual controversy as to Omni.  *See Laguna Publ'g. Co. v.*

15  *Employers Reinsurance Corp.*, 617 F. Supp. 271, 273 (C.D. Cal. 1985) (dismissing

16  declaratory relief claim that was "not yet ripe for adjudication").  Mattel's

17  declaratory relief claim also fails because it is "entirely commensurate with the

18  relief sought through … other causes of action," rendering it "duplicative and

19  unnecessary."  *See Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707-08

20

21  [12] Similarly, Section 3439.04(a)(2) requires Mattel to allege that MGA was
    engaged or was about to become engaged in a transaction for which MGA's
22  remaining assets were unreasonably small in relation to the transaction or MGA
    intended to incur or should have realized it would incur debts beyond its ability to
23  pay.  Mattel does not allege any facts to support this requirement as well.

24  [13] On page 19 of its Opposition, Mattel tries to rely on assertions made to the Ninth
    Circuit by MGA and assertions made in Omni's moving papers in an effort to
25  rehabilitate the FAAC.  MGA's assertion to the Ninth Circuit during litigation is
    improperly alleged in the FAAC as it is a statement protected by the litigation
26  privilege.  *See Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990).  Regarding Omni's
    statements in its moving papers, as discussed above, Mattel is bound by its own
27  allegations in the FAAC and cannot amend it here.

28

1   (N.D. Cal. 2009).  Thus, because Mattel cannot establish an "actual controversy"

2   between it and Omni, and because its declaratory relief claim seeks relief

3   duplicative of its other claims (which also fail) its claim for declaratory relief is

4   nothing more than an impermissible request for an advisory opinion to define its

5   priority as a *potential* MGA creditor.  *See* U.S. Const. art. III (prohibiting federal

6   courts from issuing advisory opinions); *McQuillion v. Schwarzenegger*, 369 F.3d

7   1091, 1095 (9th Cir. 2004) (citations omitted) (same).  Mattel's declaratory relief

8   claim should, therefore, be dismissed.[14]

9   ## V.   MATTEL CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE

10  ## TO AMEND

11       Recognizing that its claims are flawed, Mattel, ignoring this Court's

12  emphatic statements, requests that the Court grant it leave to amend its FAAC.

13  This request must be denied.  The Court's Orders have been clear that "**[t]his will**

14  **be Mattel's final pleading . . . .**"  (4/10/2010 Order at 6) (emphasis added).

15  Indeed, the Court "ordered that Mattel refrain from filing an amended complaint

16  until after Phase 2 discovery was complete in light of the fact that the parties

17  understood the general basis of Mattel's claims, and on the grounds that Mattel

18

19  [14] Buried in a footnote in its Opposition, Mattel argues for the first time that the
20  Court should apply principles of bankruptcy law in this non-bankruptcy context to
    elevate Mattel's hypothetical claim as a creditor above Omni's senior secured
    position.  (Opp. at 19 n. 15.)  This argument is improper and should be rejected.
21  First, Mattel is not an MGA "creditor."  Second, Mattel's new equitable
    subordination claim is beyond the scope of its FAAC and Omni's motion to
22  dismiss, as even Mattel admits, "Omni does not make that argument" in its motion
    to dismiss. (Opp. at 19.)  Third, Mattel fails to cite a single Ninth Circuit case
23  permitting courts to apply equitable subordination in non-bankruptcy settings.
    Fourth, Mattel's FAAC fails to plead facts sufficient to permit the Court to
24  equitably subordinate Omni's claims to Mattel's hypothetical one. *See Benjamin v.*
    *Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977) (equitable
25  subordination requires proof that (1) the claimant has engaged in inequitable
    conduct; (2) the conduct caused injury to other creditors or conferred an unfair
26  advantage on the claimant; and (3) equitable subordination of the claim is not
    inconsistent with the provisions of the Bankruptcy Code.)  Accordingly, Mattel's
27  surreptitious new claim fails.

28

1  would not require further discovery (and <u>thus could not seek further amendment</u>)

2  after discovery had completed." (*Id.*) (emphasis added).

3      In addition, Mattel has been allowed to conduct one-sided discovery against

4  Omni before having to plead its claims against Omni.  To be sure, Omni and its

5  attorneys produced approximately 30,000 pages of documents, IGWT has

6  produced about 100,000 pages of documents, MGA has produced over one

7  millions pages of documents (just in Phase 2) and Mattel has conducted at least

8  seven depositions relating to the Omni-Wachovia transaction (including every

9  single Omni member).  Notwithstanding this discovery and the Court's emphatic

10  warnings that this would be its last pleading, Mattel could not compile facts

11  together to state a viable claim against Omni.  Mattel should not be given any more

12  chances to plead its meritless claims against Omni.

13      Accordingly, Omni respectfully requests that the Court deny Mattel's

14  request that it be provided leave to amend its FAAC.

15  **VI.   CONCLUSION**

16      For each of the foregoing reasons, Omni respectfully requests that the Court

17  dismiss each of Mattel's counterclaims against Omni including Mattel's Second

18  Counterclaim; Thirteenth Counterclaim; Fourteenth Counterclaim; and

19  Seventeenth Counterclaim.

20  DATED: May 24, 2010       Bingham McCutchen LLP

By:  /s/  Todd E. Gordinier
     Todd E. Gordinier
     Attorneys for Counter-defendant
     Omni 808 Investors, LLC