UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                        Date: May 25, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                               Date:_____ Deputy Clerk: _____

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Stephanie Mikhail                                              Not Present
    Courtroom Clerk                                             Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                         NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER OVERRULING IN PART AND SUSTAINING IN PART OBJECTIONS TO DISCOVERY MATTER ORDER NOS. 89/91

       Before the Court is Mattel, Inc. ("Mattel")'s Objections to Discovery Matter Order Nos. 89/91 (the "Motion"). After considering the moving, opposing, replying, and supplementary papers, and for the reasons stated below, the Court OVERRULES IN PART AND SUSTAINS IN PART the Objections.

    **I.**    **Background**

       On January 13, 2010, the Discovery Master filed Discovery Matter Order No. 89, which granted in part and denied in part MGA Entertainment, Inc. and Isaac Larian (collectively "MGA") motion to compel further responses and production of documents requested in 891 of 918 Requests for Production propounded on Mattel by the MGA Parties. On February 2, 2010, the Discovery Master filed Discovery Matter Order No. 91, which addressed the 27 Requests for Production omitted from Order No. 89's consideration. Considered together, Discovery Matter Order Nos. 89 and 91 compelled Mattel to produce documents in response to 915 of the MGA Parties' requests for production using the

following search methodology: "Mattel shall search its servers located in the United States, Mexico and Canada, the computers and files for those individuals listed in the parties' initial disclosures, and the computers and files for those individuals identified by Mattel in responses to interrogatories or at depositions as having knowledge of Phase 2 issues." *See* Order No. 89 at 28.

The Requests for Production at issue were first propounded during Phase 1 and the MGA Parties contend that they remain relevant to Phase 2 issues. MGA argued that Mattel had failed to search the servers of several Mattel employees identified by Mattel's responses to interrogatories and otherwise referenced by Mattel at deposition. According to the MGA Parties, the hard drives of these employees contain relevant information not yet reviewed by Mattel and produced to the MGA Parties.

The Court granted Mattel a brief extension within which to file its appeal to Discovery Matter Order Nos. 89/91 and, on February 18, 2010, Mattel filed the instant Motion. The Motion contains three requests: (1) that the Court overrule the scope of the electronic search obligations imposed in Order No. 89 and order the parties to submit the issues of appropriate reciprocal search obligations to the Electronic Discovery Special Master; (2) that the Court overrule the Discovery Master's order compelling the production of certain categories of documents; and (3) that the Court make the production obligations under Order Nos. 89/91 reciprocal with respect to the MGA Parties. On April 4, 2010, Mattel submitted a supplemental declaration arguing that the MGA Parties' recent withdrawal of certain Phase 2 claims related to product packaging, "Acceleracers" trade dress, "Little Mommy" products, and "Bratz" trade dress, rendered moot and/or overbroad dozens of the Requests for Production. The MGA Parties respond that the Requests for Production continue to seek relevant information notwithstanding the withdrawal of some of the MGA Parties' claims– the expansive scope of Mattel's existing claims render the Requests for Production relevant to the MGA Parties' defenses.

## II.     Legal Standard

Fed. R. Civ. P. 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

## III.    Discussion

Mattel's Motion objects to the scope of the search obligations imposed by the Discovery Master, who required that Mattel search "every server" in North America, as well as the hard drives of hundreds of Mattel employees. This type of search was rejected by the Phase 1 Discovery Master, Judge Infante, as unduly costly and burdensome and unlikely to lead to the discovery of admissible evidence. While Discovery Master O'Brien considered these concerns, he concluded that the issues in Phase 2 are distinct from the issued litigated during Phase 1 and that Mattel should therefore be compelled to re-visit its servers with a new set of search parameters. In addition, Mattel argues that

many of the requests for production seek the discovery of information irrelevant to Phase 2 issues.

The MGA Parties respond that the Requests for Production at issue were served more than three years ago and that Mattel has engaged in undue delay in producing responsive documents. The MGA Parties further defend the scope of the Discovery Master's Orders, noting that the expansive scope of Mattel's search obligations justly coincides with the expansive scope of Mattel's claims. Finally, the MGA Parties argue that the Discovery Master accommodated Mattel's objections by limiting the scope of the Requests for Production and Mattel's search obligations, and separately argue that Mattel's demand for reciprocity is a red herring, since the MGA Parties (not Mattel) bring a claim for unfair competition.

As an initial matter, the Court agrees that idle demands for reciprocity are neither a proper basis for objecting to Discovery Master Orders nor the standard by which the Court must evaluate discovery requests. Rule 26 does not require absolute parity in the number or type of documents produced, but is instead concerned with the relevance of the discovery sought. At the same time, the MGA Parties' briefing miss the point: Mattel does not only argue that the MGA Parties should be required to produce the same types of documents (an unavailing request) but, in addition, argues that the MGA Parties should be subjected to the same expansive protocol when searching for relevant information. Nevertheless, the Court declines to grant an informal motion to compel for such a sweeping and unspecific demand for reciprocity.

Mattel's argument that Rule 26(b)(2) bars the burdensome electronic discovery ordered by the Discovery Master is unavailing.

First, Mattel's request that the Court overrule the Discovery Master's search method and allow the Electronic Discovery Special Master to decide the scope of Mattel's search obligations, results in piece-meal and inefficient decision-making: there is no reason why the Discovery Master is not equipped to set the scope of his own Orders.

Second, the Discovery Master's failure to expressly and formally cite Rule 26 is not clear legal error, nor is it evidence that the Discovery Master failed to consider the burdens of production to Mattel. Indeed, the Discovery Master's Orders are infused with his concern that the electronic search obligations upon Mattel be reasonably limited. *See* DM Order No. 89 at 19 (discussing potential undue burden to Mattel of having to search certain servers).

Third, even if the Discovery Master failed to consider Rule 26(b)(2), the error was harmless. Both Mattel and MGA assert broad claims in this litigation, which encompass the activity and records of thousands of employees at both companies. Rule 26(b)(2)(B) permits the limitation of discovery into electronically stored information "from sources that the party identifies as not reasonably accessible because of undue burden or cost." *See* Fed. R. Civ. P. 26(b)(2)(B). However, the court may order such discovery, notwithstanding any burden or cost to the producing party, in circumstances

where "good cause" exists for such discovery.  *Id.*  The rule leaves it in the Court's discretion to set the "conditions for the discovery.  *Id.*  A parallel provision – found in Fed. R. Civ. P. 26(b)(2)(C) – provides that the Court shall limit the frequency or extent of discovery, including requests for production under Rule 36, where: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C).

Neither party appears to be at a loss for resources, especially in connection with this litigation, which has spanned the better part of six years.  Nor does the burden of the proposed discovery outweigh the financial stakes of this case; quite the contrary, the potential exposure for either party is in the hundreds of millions, and as evidenced by the Phase 1 trial, even single communications may go a long way to establishing the elements of one or more of the parties' causes of action.

That does not mean that the scope of the discovery obligation imposed by DM Orders 89/91 is reasonably tailored to the needs of this lawsuit.  Pursuant to an order issued by the prior Discovery Master (Judge Infante), Mattel searched the following sources for responsive documents: (1) the hard drives at Mattel's El Segundo headquarters and Mattel's Design Center; (2) the hard drives and mailboxes of certain former and current employees who might be connected with the issues raised in the pleadings; and (3) e-mails (apparently from all employees at those two sites) that involved certain keywords relating to Bratz, MGA, and related issues.  *See* DM Order 89 at 17.

After concluding that the Phase 2 issues are significantly broader than the issues implicated in Phase 1, the Discovery Master required Mattel to search its North American servers, as well as "the computers and files for those individuals listed in the parties' initial disclosures, and the computers and files for those individuals identified by Mattel in responses to interrogatories or at deposition as having knowledge of Phase 2 issues."  *Id.* at 19.  The Discovery Master stated that it was impracticable to narrow each of the 287 Requests for Production at issue.  *See id.*

The second half of the Discovery Master's protocol is appropriate, but should be reasonably narrowed by the parties.  Mattel should not have to search every relevant individual's computers and files for the information sought by every request for production.  Not every individual at issue can reasonably be expected to possess electronic data responsive to every one of the Requests for Production.

The parties should therefore narrow the requests for production on an individual-by-individual basis.  Given the parties' failure to reach any agreement as to these issues, as well as the breadth of the Discovery Master's order, the Court considers it prudent to offer the parties one final

opportunity to narrow the requests for production on an individual-by-individual basis on or before June 7, 2010. MGA shall submit its revised list for the Court's review along with a list of the requests for production and a list of the individuals at issue. Mattel shall submit an opposition, if any, within seven days of the filing of MGA's narrowed list. If the Court finds MGA's list reasonable, then Mattel shall be ordered to produce all responsive documents within fourteen days of MGA's submission. If the Court finds the list unreasonable and overbroad, then the Court shall narrow the list at its own pace and no production obligations shall be imposed upon Mattel until the Court properly narrows the list. The Court is not unaware of the tremendous burden that results from having to review every one of Mattel's discovery responses and ferret out the individuals with knowledge of Phase 2 issues – a point made by Mattel in its briefing. Accordingly, the parties are ORDERED to meet and confer on or before May 31, 2010 and narrow the search protocol as to the search of individual computers and files. This is not a dispute that requires meaningful intervention by the Court; all the parties have to do is share readily available information about (1) the individuals with knowledge of the issues in this lawsuit; and (2) the types of information sought by MGA's requests for production. Failure to cooperate in good faith will only result in needless cost and burden to ***both*** parties.

The first half of the Discovery Master's protocol does not appear to be narrowly tailored to the discovery of relevant information. It is unclear why all of Mattel's North American servers should be searched for relevant information – either the searches will not yield responsive information or they will yield duplicative information already obtained by searching the files and computers of individuals with knowledge of the Phase 2 issues. Accordingly, Mattel's objections to the Discovery Master's search protocol are SUSTAINED as to the following portion of that protocol: "its servers located in the United States, Mexico and Canada." *See* DM Order 89 at 28.

Next, Mattel argues that the Discovery Master erred in requiring Mattel to respond to a sub-set of the Requests for Production: Case 9049 RFP Nos. 3, 45, 98, 168, 423, 452, 462, 463, 466, 512, 513, 514, 515, 545, 558, 559, 583, 598, 599, 606, 608, 610, 611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 622, 623, 624, 625, 627, 628, 629, 630, 631, 632, 633, 634, 635, 637, 638, 639, 640, 641, 648, 656, 677, 678, 694, 708, 725, 776, and 787; and Case 9059 RFP Nos. 5, 7, 9, 11, 13, 15, 18, 189, 212, and 218.

Mattel has since amended its list and now requests that the Discovery Master's order be reversed as to several more discovery requests, which Mattel argues are now irrelevant in light of MGA's voluntary withdrawal of certain affirmative claims. Mattel argues that the following Requests for Production are mooted by MGA's abandonment of its Bratz trade dress claims: Case 9049 RFP Nos. 1-4, 7-9, 12, 14-16, 22, 25-27, 29, 68, 76-77, 79, 82-84, 92-93, 168, 420, 440-444, 471, 540, 597, 695, 734, and 748-756, and Case 9059 RFP Nos. 69-70, 114, 120, 122-123, 125-126, 128-131, 136-138, 140-141, 144, and 146-148.

Mattel additionally claims that Case 9049 RFP Nos. 384-400 and 652-653 are mooted by MGA's abandonment of its Acceleracers/Alien Racers trade dress claims.

Mattel additionally claims that Case 9049 RFP Nos. 401-409 and 654 are mooted by MGA's abandonment of its "Little Mommy" claims.

Mattel additionally claims that Case 9049 RFP Nos. 5, 6, 10-11, 13, 18, 20-21, 23-24, 28, 70, 78, 80-81, 85, 94, 106-112, 114-115, 171, 421-423, 431-432, 452, 454-455, 525, 550, 556-557, 581-583, 674, 676-678, and 785; and Case 9059 RFP Nos. 113, 119, 157, and 162-164 are mooted by MGA's withdrawal of certain products and claims.

Mattel further claims that Case 9049 RFP Nos. 445-446, 472-473, 598-599, 693, 776-784, 792, and 793, as well as Case 9059 RFP Nos. 17-19, 26-28, 112, and 121 were modified by the Discovery Master and thereafter mooted in their modified form by MGA's abandonment of its Bratz trade dress claims.

Mattel finally claims that Case 9049 RFP Nos. 424, 434, 549, 551-552, 555, 566-567, 595-596, 775, and 786-788, as well as Case 9059 RFP Nos. 71, 170, 171, and 175 are mooted in their presently modified form by MGA's withdrawal of certain products and claims.

MGA argues that the Requests for Production are broadly reasonable and, in addition, that the withdrawal and/or abandonment of certain products and claims does not render the RFPs any less solicitous of relevant information, since Mattel's damages (including lost opportunity damages) cover virtually every product in both Mattel's and MGA's catalogue.  The Court generally agrees.

**First**, many of Mattel's arguments concern Polly Pocket, a miniature doll marketed and sold by Mattel.  Early in this lawsuit, MGA alleged that one of Mattel's commercials for Polly Pocket used a shopping mall, as well as an escalator, as its backdrop.  The use of a mall and escalator purportedly copied from a similar Bratz commercial filmed by MGA.  On the basis of that limited allegation, the prior Discovery Master restricted MGA's discovery into the Polly Pocket doll.  However, Discovery Master O'Brien noted that MGA's allegations have evolved and broadened since Phase 1 and that MGA's Polly Pocket claims now encompass the claim that "Mattel copied and used MGA's products, packaging, themes, and advertising, including for Mattel's 'Polly Pocket.'" *See* DM Order 89 at 27.  Mattel responds that the text of the pleadings has not changed and that MGA has not formally pled such an expansive Polly Pocket claim.  *See* Mot. at 15 ("But in substance, MGA's pleadings are not different than they were at the time of the prior Discovery Master's ruling.").  Mattel's wording is erroneous – *i.e.*, the text of the pleadings may not have changed but the substance surely has – and its argument flawed.  The Discovery Master did not rely only upon the fact that the Phase 2 allegations have broadened, but that those allegations have ***broadened to include claims that Polly Pocket infringed on MGA's packaging and themes***.  It may be the case that the only concrete example that MGA can offer is the advertisement at issue.  But Mattel is no stranger to using the discovery process to identify and/or illuminate instances in which MGA's products infringed on Mattel's products and packaging.  Nor is Mattel unfamiliar with the practice of using broad pleading language to encompass dozens of implicit and product specific claims.  *See, e.g.*, Mattel's Motion to

Confirm (arguing that Mattel long assumed, as did the Court and the parties, that broad trade secret allegations encompassed Bratz trade secrets).  The Court finds no error in the Discovery Master's analysis as to the Polly Pocket issue.  Accordingly, Mattel's objections are OVERRULED as to the 34 RFPs that concern Polly Pocket.

**Second**, Mattel objects to three Requests for Production that concern certain disclosures of information made by Mattel employees.  MGA essentially seeks discovery into whether Mattel's employees and contractors disclosed to Mattel any pre-employment inventions that could pose a conflict of interest; whether any departing Mattel employees and contractors disclosed to Mattel proprietary subject matter developed *during* employment, and whether Mattel's employees informed their employer of inventions and other ideas conceived *during* their term of employment.  MGA argues that such information is temporally limited from January 1, 1995 to the present and that the information is nevertheless relevant to MGA's unclear hands and unfair competition claims.  MGA believes that Mattel has engaged in the same practices alleged against MGA – namely, encouraging new employees to disclose confidential information learned during a prior employment, and impermissibly forcing employees to surrender almost any intellectual property to Mattel.  The Court finds MGA's arguments convincing but considers greater temporal restriction necessary.  Furthermore, the search for such documents does not need to be this burdensome: these documents should be limited by type – *e.g.*, all exit interview disclosures or all conflict of interest questionnaires – instead of the present form, which extends to "all documents relating to . . ."  Accordingly, the parties are ordered to meet and confer to attempt to tighten the language in the discovery requests at issue on or before May 31, 2010.

**Third**, Mattel objects to certain RFPs that concern other lawsuits by Mattel and against Mattel.  MGA argues that Mattel's communications about its products in the context of other lawsuits is relevant to Mattel's valuation of those products and is therefore relevant to the damages, if any, suffered by Mattel.  The Request is facially overbroad and the language should be modified both temporally – if anything, the fact that Mattel values the same products differently in parallel lawsuits undercuts the relevance of such valuations – and in terms of scope – the language of the RFPs has nothing to do with product valuations but with the lawsuits generally.  Accordingly, the parties are ordered to meet and confer and attempt to narrow the RFPs at issue on or before May 31, 2010.

**Fourth**, Mattel objects to dozens of requests for production as overbroad.  The Discovery Master considered Mattel's arguments and rejected Mattel's arguments.  As to RFPs 3, 45, 98, 168, 423, 452, 462, 463, 466, 512, 513, 514, 515, 545, 558, 559, 583, Mattel had either previously agreed to comply and/or the requests plainly seek relevant information; Mattel's objections to these requests are OVERRULED.  Mattel's Objections to 9049 RFP 606, 608, and 610 are SUSTAINED as Bratz claims are no longer at issue in Phase 2.  RFP 648 seeks documents that reference a product called Holly Hobby *in addition to* Bratz; MGA claims that such documents are relevant to its unfair competition claims.  The language in this request is overbroad and the parties shall meet and confer in an attempt to either narrow the language or discard of the RFP entirely on or before May 31, 2010.  RFPs 678 and 694 shall be narrowed by striking the words "including but not" from both RFPs.  RFPs 708 and 725

seek documents related to any credits or customer rebates offered by Mattel to its customers for MyScene products and dolls; MGA claims that such documents are necessary to perform a damages calculation. The Court agrees with MGA but the requests should be temporally limited or one or both of the parties should stipulate to not contest certain factual issues at trial. Accordingly, the parties are ordered to meet and confer on or before May 31, 2010 and narrow these requests. RFP 776 seeks documents related to the acquisition of Bratz dolls by Mattel. This RFP seeks information relevant to Mattel's efforts at infringing Bratz but should be temporally limited. Accordingly, the parties are ordered to meet and confer on or before May 31, 2010 in an attempt to appropriately narrow this request. RFP 787 shall be narrowed by striking the words "including but not." Case 9059 RFP 5, 7, 9, 11, 13, 15, and 18 were properly narrowed by the Discovery Master and Mattel's objections are therefore OVERRULED as to these requests. Case 9059 RFP 189 seeks documents with respect to any prior contemplation or attempt by Mattel to acquire MGA; the Discovery Master noted that Mattel had previously agreed to produce such documents and the admissibility of the documents is irrelevant for discovery purposes. *See* Fed. R. Civ. P. 26(b)(1).

**Fifth**, the Court declines to adjudicate Mattel's amended objections to a number of MGA's RFPs on the grounds that MGA has abandoned and/or withdrawn certain claims related to certain products, including the "Little Mommy" line of products generally, and Bratz and Acceleracers claims specifically. As an initial matter, it is unclear that Mattel's objections are procedurally proper, as they were issued well after the deadline for appealing the Discovery Master's order. Moreover, allowing Mattel to continually adjust its discovery obligations on the basis of reversible representations by MGA's counsel is problematic. At the same time, MGA should not be allowed to continually present a moving target – a strategy Mattel has likewise employed – and waste the Discovery Master's resources in the process. Both the Discovery Master and the Court, on review, evaluated the RFPs as drafted against the claims as identified by the parties' pleadings and narrowed in subsequent statements by the parties. It is plainly evident that some but not all of these requests are either mooted by MGA's withdrawal and/or abandonment of certain claims. Those claims that remain relevant need to be reworded. Accordingly, the parties are ordered to meet and confer on or before May 31, 2010 and narrow the requests put at issue by Mattel.

### IV. Disposition

For the foregoing reasons, the Court OVERRULES IN PART AND SUSTAINS IN PART Mattel's Objections and further ORDERS that:

1. The parties shall meet and confer with regard to the search protocol issues and submit a timely report with this Court concerning the outcome of the meet and confer;

2. The parties shall meet and confer as required by the remainder of this Order and shall file a report with the Court concerning the outcome of the meet and confer on

    or before two days after the date of each meet and confer;

3.     In light of Mattel's prior obligation to continue searching its servers for responsive information while its objections were pending, Mattel shall produce to MGA all documents that have been already reviewed and marked as responsive subject to the limitations in this Order on or before May 31, 2010.

    The Clerk shall serve this minute order on all parties to the action.