# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                           Date: May 25, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

DOCKET ENTRY
      [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                        Date:_____  Deputy Clerk: _____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

  Stephanie Mikhail                                             Not Present
Courtroom Clerk                                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                    NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS TO DISCOVERY MATTER ORDER NO. 94

       Before the Court are Mattel, Inc. ("Mattel")'s objections to Discovery Matter Order No. 94 (the "Objections"). After considering the moving and opposing papers, including the submissions made to the Discovery Master, as well as performing an *in camera* review of the documents at issue, the Court SUSTAINS IN PART AND OVERRULES IN PART the Objections.

       Between approximately January 11, 2010 and April 20, 2010, the Discovery Master reviewed hundreds of documents identified and withheld as privileged by Mattel. On April 21, 2010, the Discovery Master ordered that a sub-set of those documents be produced either in redacted form or in their entirety. Mattel appeals the Discovery Master's ruling as to 33 documents. Of the 33 documents that are the subject of Mattel's appeal, 9 were ordered to be produced in redacted form and 24 were ordered to be produced in their entirety.

       The Discovery Master identified a number of broad legal principles which guided his *in camera* review of the documents identified and withheld as privileged as Mattel.

First, the Discovery Master properly stated that the attorney-client privilege applies when "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *See* Order No. 94 (citing *Baxter Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL 5214330, at *2 (N.D. Cal. 2008)). The Discovery Master also referenced the Supreme Court's holding in *Upjohn v. United States*, 449 U.S. 383 (1981) that the privilege may extend to a corporation's employees' communications with corporate counsel. *See* Order No. 94 at 3. The Discovery Master noted that in certain circumstances the privilege may attach to communications between a corporation's non-attorney employees when those communications discuss legal advice. *Id.*

Second, the Discovery Master also recognized that the privilege may attach to communications between Mattel, its counsel, and certain entities retained by its counsel in furtherance of litigation. *See id.* at 5 (stating that the public relations firm and advertising firm retained by Mattel's outside counsel engaged in privileged communications with Mattel and its counsel).

Third, the Discovery Master identified certain circumstances in which the privilege may attach to a forwarded e-mail chain in which a non-privileged e-mail is forwarded to other individuals with an attached request or discussion of legal advice. The Discovery Master cited the principle that "even though one email is not privileged, a subsequent and privileged email which forwards that prior non-privileged email, will allow the privilege to attach to the entire email chain, including the non-privileged email message." *Id.* at 7 (citing *Rhoads Indus., Inc. v. Building Materials Corp. of America*, 254 F.R.D. 238, 240 (E.D. Pa. 2008)). The Discovery Master specifically addressed whether the privilege attaches to an e-mail chain in which an attorney forwards to the client an e-mail from a third party, and concluded that it depended on the nature of the third-party – "communications from competitors, adversaries and so forth cannot be cloaked in privilege merely by counsel's decision to forward them to the client." *Id.* at 8.

Fourth, the Discovery Master concluded as a matter of law that e-mails from counsel to the client that attach a document or file (like a newspaper article) may implicate the privilege and/or the attorney work product doctrine in a manner not implicated by e-mail chains. The Discovery Master stated that "[a]lthough the substance of the attachment . . . is not privileged, the selection of that particular information and transmittal of the same by the attorney to the client (or vice versa) necessarily implies an intention to obtain or provide advice regarding legal issues facing the client." *Id.* at 9. As to the work product doctrine, the Discovery Master concluded that "when the attorney sends an article to the client relating to a legal issue currently facing the client, since the substance of the attachment tends to reveal the attorneys' [sic] thought processes," the work product doctrine may be

implicated. *See id.*

Fifth the Discovery Master held that the work product doctrine "provides limited protection from disclosure of materials prepared by a party or its representative in anticipation of litigation." *Id.* at 9-10 (citing Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947)).

Due to the Discovery Master's prudence in not disclosing the contents of the documents referenced by Order No. 94, it is difficult for the Court to discern the manner in which the Discovery Master applied the aforementioned legal standards. The Court therefore declines to review whether the broader standards articulated by the Discovery Master represented accurate statements of law. Nor does the Court simply adopt the Discovery Master's legal standards as its own. To provide some clarity to the parties and further clarify the issues for appeal, while nonetheless preserving the confidentiality of documents properly deemed privileged by Mattel, the Court will proceed on a document-by-document basis and identify the legal standard that guides the determination of whether the document at issue is privileged.

1. Document 27: This document is a press release that contains interlineations made by a paralegal acting at the direction of counsel. The specific red-line changes made by counsel are privileged, *see McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 255 (N.D. Ill. 2000), but the final draft of the press release is not. Accordingly, Mattel's objections are SUSTAINED as to Document Number 27, but Mattel shall produce a final version of the press release reflected in Document 27 to MGA on or before May 31, 2010.

2. Document 257: This document consists of a fax transmittal letter and an attached resume. The communication was sent by a Mattel employee to a member of Mattel's in-house counsel's office. Mattel's outside counsel, Michael Zeller, declares that the document "was sent by an employee at Mattel to Michele McShane, who was Assistant General Counsel at Mattel at the time, as part of a request for legal advice in connection with potential litigation matters unrelated to this litigation." *See* Zeller Decl. ¶ 2. Vague and conclusory statements are insufficient to support Mattel's assertion of the privilege. *See Weil v. Investment/Indicators, Rsrch. and Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (holding that privilege is to be strictly construed). Even if Mr. Zeller's declaration were specific, it does not support the claim that the initial communication from Joe Franke to Michele McShane was made for the purpose of legal advice. The only basis for Zeller's claim is that he eventually received the document from Mattel's in-house counsel. Mattel's objections are OVERRULED with regard to this document.

3. Documents 390, 407, and 634: All three of these documents consist of various

iterations of an e-mail thread.  The three documents are duplicative because they contain many of the same e-mails.  The Discovery Master ordered that redacted versions of each of these documents be produced, such that certain privileged e-mails contained within each document would be protected from disclosure.  However, the Discovery Master did not consistently exclude the same e-mail across documents.  For example, while an e-mail between X and Y on a particular date was deemed privileged in the context of document 390, that *very same email* was not deemed privileged in the context of document number 634.  Mattel specifically objects to the disclosure of one e-mail that the Discovery Master ordered Mattel to produce in the context of document 634 and permitted Mattel to withhold in the context of documents 390 and 407.  Mattel also objects to the disclosure of a single e-mail that the Discovery Master ordered Mattel to produce in the context of all three documents – 390, 407, and 634.  Mattel's objections are OVERRULED.  The Discovery Master's ruling as to document number 634 was proper – the declaration of Michael Moore is wholly insufficient to support the assertion of the privilege.  Moore does not state that Guzman acted at the direction of an attorney when asking Patiwael to gather the information.  Nor does Moore declare that Patiwael intended the information she gathered to be used by an attorney.  The mere fact that the e-mail was later forwarded to Moore is an incorrect basis on which to ground the privilege.  In an interest of ensuring uniformity across the documents, Mattel is further ORDERED to produce to MGA the Patiwael March 4, 2004 8:55 a.m. e-mail contained within documents 390 and 407 on or before May 31, 2010.

4. <u>Documents 411 and 412</u>: These documents reflect an e-mail thread between Mattel employees that was eventually forwarded to counsel.  The e-mail thread begins with a report about a Mattel product.  Then, one Mattel employee forwards the thread to another Mattel employee and inquires as to a "legal perspective" on the document.  The recipient of the e-mail then forwards the e-mail to a member of Mattel's law department, who delivers a prompt response.  Mattel seeks to redact the e-mail between two Mattel employees in which one employee asks the other one for a "legal perspective" on the underlying issue.  The Moore declaration bases the assertion of the privilege as to this e-mail on the grounds that the email "contains a confidential request for legal advice" and is therefore privileged.  Moore Decl. ¶ 3.  First, the Court declines to credit Moore's statement that the e-mail contains a "confidential" request – there are literally *four* other recipients on the e-mail thread, none of whom appear to be attorneys.  Second, it is worth noting that the e-mail requesting a "legal perspective" was forwarded to Mattel's in-house counsel *six days* after it was first sent and it appears that there had been an intervening conversation during which Mattel's counsel was first informed of the content of the e-mail.  In other words, there is no evidence that the sender of the e-

mail even contemplated that the e-mail would be forwarded to Mattel's in-house counsel, nor is there any evidence that any of the communications were directed by in-house counsel. *See In re New York Renu with Moistureloc Product Liab. Litig.*, No. 2:06MN77777, 2008 WL 2338552, at *2 (D.S.C. May 6, 2008) ("communications among non-lawyer corporate personnel are protected if the dominant intent is to prepare the information in order to get legal advice from the lawyer"). Mattel's objections are therefore OVERRULED as to these two documents.

5. Document 540: This document contains an e-mail thread that commences with an e-mail from an MGA employee to an unspecified recipient list. One of the recipients then forwards the e-mail to a member of Mattel's Human Resources department. Michael Moore declares that the Human Resources employee only gathered such information because she "had been directed to gather and forward certain kinds of information to the Law Department that was necessary for me and other attorneys in the law department to formulate legal advice on behalf of the company." Moore Decl. ¶ 4. That is an insufficient basis for the privilege – there is no evidence that *this particular communication* was made in connection with that information gathering. *See In re New York*, *supra*. If Mattel is allowed to vaguely define the scope of information gathering performed by non-legal employees, then virtually any e-mail received by Raime Quick (the Human Resources employee) would be protected by the privilege. Indeed, there is nothing in the e-mail from Kari Weaver to Quick that suggests any knowledge or intent by Weaver that her e-mail was connected to the provision of legal advice. The only language is "[p]er our conversation on Wednesday." Mattel's objection is therefore OVERRULED as to this document.

6. Document 543: This document consists of an e-mail communication between counsel for one of Mattel's subsidiaries and Mattel's in-house counsel, who then forwarded the e-mail to Mattel's outside counsel, including Michael Zeller. The initial communication from Mattel's subsidiary attaches (and seeks guidance as to) a settlement agreement entered into between Mattel's subsidiary and MGA. The Discovery Master erred in concluding that the e-mail from Mattel's subsidiary's counsel to Mattel's in-house counsel was not protected by the privilege. *See Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1493 (9th Cir. 1989) (holding that privilege extends to communications between subsidiary's counsel and parent's in-house counsel in certain circumstances). Accordingly, Mattel's objections as to this document are SUSTAINED.

7. Document 569: This document reflects an e-mail correspondence regarding the same settlement agreement discussed in the context of Document 543. Mattel's

objections relate to an e-mail sent by the subsidiary's outside counsel to the subsidiary's in-house counsel, and a second e-mail from the subsidiary's in-house counsel to Mattel's in-house counsel. Mattel's objections are SUSTAINED.

8. Document 570: This document reflects an e-mail correspondence regarding the same settlement agreement discussed in the context of Document 543. In two e-mails subsidiary's counsel informs Mattel's in-house counsel of a proposed settlement agreement. Mattel's objections are SUSTAINED as to this document.

9. Document 571: This document is largely duplicative of Document 543. Mattel's objections are SUSTAINED as to this document.

10. Document 573: This document is largely duplicative of Document 543 but, in addition, includes an e-mail from Mattel's in-house counsel to Mattel's outside counsel. Mattel's objections as to this document are SUSTAINED.

11. Document 574: This document is largely duplicative of Document 543 but, in addition, includes an e-mail from Mattel's in-house counsel to another members of Mattel's in-house counsel team. Mattel's objections as to this document are SUSTAINED.

12. Document 584: This document consists of an e-mail chain between Mattel employees (and eventually counsel) concerning an MGA product. In one of the e-mails, one Mattel employee remarks to another Mattel employee about certain legal concern related to MGA's product. The author of the e-mail then suggests that "we" seek what presumably is legal advice from an individual in Mattel's in-house counsel's office, who is identified by name. *See* Moore Decl. ¶ 6. The mere fact that the sender ruminates about seeking legal advice does not render the e-mail privileged. *See In re New York*, *supra* (holding that dominant intent must be the gathering of information to secure legal advice). Mattel's objection as to this document is OVERRULED.

13. Document 589: This document consists of an e-mail thread concerning new lines of products marketed and sold by MGA. One of the e-mails, from a Mattel attorney named Brian O'Connor to another Mattel attorney, forwards the entire e-mail thread with the letters "fyi." Michael Moore declares that the e-mail "conveyed information necessary for us to provide legal advice on behalf of the company." Moore Decl. ¶ 7. That is not supported by the declaration; nor is it supported by the text of the e-mail or the context of the larger e-mail thread. Mattel's objection as to this document is OVERRULED.

14. <u>Document 614</u>: This document consists of an e-mail thread concerning the settlement discussions reflected in Document 543. It includes communications from subsidiary's counsel to Mattel's in-house counsel for the purpose of providing Mattel with information necessary to represent Mattel. Mattel's objection as to this document is therefore SUSTAINED.

15. <u>Document 616</u>: This document consists of an e-mail thread concerning the settlement discussions reflected in Document 543. It includes communications from subsidiary's counsel to Mattel's in-house counsel for the purpose of providing Mattel with information necessary to represent Mattel. Mattel's objection as to this document is therefore SUSTAINED.

16. <u>Document 617</u>: This document consists of an e-mail thread concerning the settlement discussions reflected in Document 543. It includes communications from subsidiary's counsel to Mattel's in-house counsel for the purpose of providing Mattel with information necessary to represent Mattel. Mattel's objection as to this document is therefore SUSTAINED.

17. <u>Document 627</u>: This document consists of an e-mail thread in which individuals who appear to be Mattel's outside counsel search for and obtain the docket sheet for a pending case involving MGA. The e-mail thread is then forwarded to Mattel's in-house counsel. Mattel's objection as to this document is SUSTAINED.

18. <u>Document 803</u>: This document consists of a report prepared by a Mattel paralegal at the direction of one of Mattel's in-house counsel. The report attaches dozens of documents that were summarized by the report. This document is reminiscent of the documents at issue in Mattel's Motion to compel production of trade secret investigations. With regard to that motion, the Court ordered that the reports prepared by or at the direction of counsel were properly marked as work product but that any underlying documents discovered in the process of formulating the reports or investigating the underlying issues were not protected and therefore should be produced. The same approach is warranted by the instant facts. Mattel's objections are therefore SUSTAINED only as to the first three pages of Document 803 and OVERRULED as to the remaining pages.

Accordingly, the Court SUSTAINS IN PART AND OVERRULES IN PART Mattel's Objections. Mattel shall comply with the terms of DM Order No. 94, as modified by this Order, on or before May 31, 2010.

The Clerk shall serve this minute order on all parties to the action.