QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                 Plaintiff,<br><br>        vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>                 Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**OPPOSITION TO MGA'S CROSS-MOTION TO COMPEL TESTIMONY OF MATTEL 30(b)(6) AND REPLY IN SUPPORT OF MATTEL'S MOTION FOR PROTECTIVE ORDER FROM THE MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC. (THIRD PHASE 2 NOTICE)**<br><br>Date:  TBD<br>Time:  TBD<br>Courtroom:  9D<br><br>**Phase 2**<br>Discovery Cut-off:  TBD<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.   GOOD CAUSE EXISTS TO GRANT A PROTECTIVE ORDER AND
     TO DENY MGA'S CROSS-MOTION TO COMPEL ........................................ 2

    A.   Topic No. 1: Carter Bryant's Contracts.............................................. 2

    B.   Topic No. 2: Employee Contracts Since 1975..................................... 3

    C.   Topic No. 3: Mattel's Confidentiality Policies................................... 4

    D.   Topic Nos. 4 and 5: Wee 3 Friends...................................................... 6

    E.   Topic Nos. 6 and 7: Barbie Fashion Fever ......................................... 6

    F.   Topic No. 8: Receipt of Non-Public Information ................................ 7

    G.   Topic No. 9: Communications With Licensees .................................... 9

    H.   Topic No. 10: Bratz Shelf Space......................................................... 10

    I.   Topic No. 11: Acquisition of MGA Information................................. 11

    J.   Topic Nos. 12-15, 23 and 27: Mattel Reports.................................... 12

    K.   Topic No. 16: Fashion Doll Concepts................................................. 13

    L.   Topic No. 17: Marketing of Bratz...................................................... 14

    M.   Topic No. 18: Consumer Research ..................................................... 14

    N.   Topic Nos. 19 and 20: Harm to Mattel .............................................. 15

    O.   Topic No. 21: Forensic Analyses........................................................ 16

    P.   Topic No. 22: Bratz Copyright Registrations .................................... 17

    Q.   Topic No. 24: Trapezoidal Packaging ............................................... 18

    R.   Topic No. 25: Financial Documents ................................................... 18

    S.   Topic No. 26: Acquisition of Bratz Registrations in Brazil ................ 18

II.  TOPIC NOS. 8, 10 AND 23 SEEK TESTIMONY NOT
     REASONABLY AVAILABLE TO MATTEL ............................................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3

<u>Cases</u>

4

5
3M Co. v. Kanbar,
  2007 WL 1794936 (N.D. Cal. June 19, 2007) ............................................... 3, 18

6
Blankenship v. Hearst Corp.,
7
  519 F.2d 418 (9th Cir. 1975) ..................................................................... 2

8
Dollar Systems, Inv. V. Avcar Leasing Systems, Inc.,
  890 F.2d 165 (9th Cir. 1989) .................................................................... 7, 12

9
In re Indep. Serv. Orgs. Antitrust Litig.,
10
  168 F.R.D. 651 (D. Kan. 1996) ............................................................... 14, 16

11
In re Intel Corp. Microprocessor Antitrust Litigation,
  2009 WL 2921313 (D. Del. Sept. 8, 2009) ........................................... 15

12
Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
13
  304 F.3d 829 (9th Cir. 2002) .................................................................. 9

14
Magnesystems, Inc. v. Nikken, Inc.,
  933 F. Supp. 944 (C.D. Cal. 1996) ........................................................ 7, 12

15
Mattel, Inc. v. Ronald Brawer,
16
  Cal. Sup Court Case No. BC323381 ...................................................... 17

17
McCormick-Morgan, Inc. v. Teledyne Indus.
18
  134 F.R.D. 275 (N.D. Cal. 1991) ........................................................... 3

19
New Haven Temple SDA Church v. Consolidated Edison Corp.,
  1995 WL 358788 (S.D.N.Y. June 13, 1995) ........................................ 15

20
Reed v. Bennett,
21
  193 F.R.D. 689 (D. Kan. 2000) .............................................................. 8, 18

22
Republic Molding Corp. v. B.W. Photo Utils.,
  319 F.2d 347 (9th Cir. 1963) .................................................................. 9

23
Ruckelshaus v. Monsanto Co.,
24
  467 U.S. 986 (1984) ................................................................................ 8

25
San Jose Const., Inc. v. S.B.C.C., Inc.,
  155 Cal. App. 4th 1528 (2007) .............................................................. 7, 8, 12

26
SmithKline Beecham Corp. v. Aporex Corp.,
27
  2000 WL 116082 (N.D. Ill. Jan. 24, 2000) ........................................... 14

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sony Corp. of America v. Universal City Studios, Inc.,
   464 U.S. 417 (1984) .................................................................................. 17

Static Control Components, Inc. v. Lexmark Intern., Inc.,
   2006 WL 3256767 (E.D. Ky. Nov. 9, 2006) ......................................... 5

Vacco Indus., Inc. v. Van Den Berg,
   5 Cal. App. 4th 34 (1992) ...................................................................... 8

### Statutes

Cal. Civ. Code § 3426.1 ............................................................................ 8

Cal. Civ. Code § 3426(d) ................................................................ 7, 8, 12

Fed. R. Civ. P. 26(a)(2) .......................................................................... 15

Fed. R. Civ. P. 26(c)(1) ............................................................................ 2

Fed. R. Civ. P. 30(b)(6) ................................................................... passim

## **Preliminary Statement**

MGA's Notice bears little resemblance to MGA's Opposition and Cross-Motion.   In the latter, MGA claims that its Third Phase 2 Notice "primarily concerns a number of specific, key documents – most of which were produced in the last few months."   Opp. at 1:4-6.   The Third Phase 2 Notice stretches far beyond a few "specific, key documents."   Its Topics seek, among other things, a Mattel designee to testify regarding:

- All Mattel employment agreements back to 1975 (Topic No. 2)

- All Mattel policies, practices, procedures and agreements regarding Mattel confidential information and ownership of inventions back to 1985 (Topic No. 3)

- All communications anyone at Mattel has ever had with its thousand-plus licensees regarding MGA (Topic No. 9)

- All fashion doll concepts or products that Mattel considered for the 12 years between 1990 and 2002 (Topic No. 16)

- All market research MGA has ever conducted "concerning or including" any MGA product or its attributes  (Topic No. 18)

- All financial documents Mattel has produced (Topic No. 25)

Even as to the "specific" documents on which MGA seeks a topic, Mattel produced over 27 of the 48 Exhibits attached to the Third Notice in 2008 or earlier.

MGA's claimed "remarkable disparity" in terms of the Rule 30(b)(6) testimony provided by the parties is misleading.   As shown in Appendix A, Mattel has provided 151 hours of such testimony, 73 hours of which was in Phase 2. MGA has provided 149 hours,[1] including less than 43 hours of testimony in Phase 2.   Good cause exists to protect Mattel from having to prepare a designee on the

---

[1]   MGA Mexico's tally should not be counted given MGA Mexico's serial failure to properly prepare a Rule 30(b)(6) designee, including on the appearance of Mattel trade secret documents in MGA Mexico's offices for which the Court compelled further testimony.  See Dkt. Nos. 7337, 7575, 7682, and 7762; see also Hearing Tr., dated Dec. 17, 2009, at 10:13-12:14.

overbroad Topics in the Notice, and MGA's Cross-Motion to compel should be denied.

<u>**Argument**</u>

**I.**   <u>**GOOD CAUSE EXISTS TO GRANT A PROTECTIVE ORDER AND TO DENY MGA'S CROSS-MOTION TO COMPEL**</u>

A court may issue a protective order "for good cause."   <u>Fed. R. Civ. P.</u> 26(c)(1).   MGA overstates this burden: not one case it cites involves a <u>Rule</u> 30(b)(6) witness; the only case cited from this Circuit involved the deposition of a key witness, George Hearst, in his individual capacity.   <u>See</u> <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418 (9th Cir. 1975) (remanding and requiring a "better showing" where party opposing the deposition of a <u>percipient</u> witness argued <u>only</u> that the knowledge of the percipient witness regarding a letter at issue was repetitious of other sources).   Here, good cause has been shown.

**A.**   <u>**Topic No. 1: Carter Bryant's Contracts**</u>

**Topic No. 1 Is Unreasonably Duplicative.**   MGA conflates Topic Nos. 1 and 2 because Topic No. 1, which seeks the meaning of the terms of Carter Bryant's contracts with Mattel, is completely duplicative of a Topic on which Mattel <u>Rule</u> 30(b)(6) designee Lissa Freed has already provided testimony.[2] MGA's argument that amendments to Mattel's pleadings warrant a second deposition ignores the fact that the cited changes – Mattel's counterclaims now "implicate Castilla, Cooney, Contreras and Brawer by name" and identify "Moxie" as a misappropriated trade secret  (Opp. at 6:21-26) – have nothing to do with the substance of Ms. Freed's prior testimony or the terms of the Bryant agreements MGA examined her about.[3]   Mattel and MGA previously agreed that the parties

---

[2]   <u>See</u> Deposition Trancript of Lissa Freed, Vol. 1, dated May 3, 2007.
[3]   Nor does the fact that Mattel is asserting criminal copyright infringement as a RICO predicate act.  Opp. at 6:26-7:2.

1 could designate prior deposition testimony in response to a Rule 30(b)(6) notice,[4]

2 making duplicative testimony unnecessary and improper.

3    MGA's effort to avoid this obvious duplication problem by arguing that

4 "[n]one of the topics on which Ms. Freed was designated go to the 'meaning of

5 terms,'" (Opp. at 7:5-6) calls for improper legal conclusions through <u>Rule</u> 30(b)(6)

6 testimony.  The prior Discovery Master granted a protective order to MGA from a

7 30(b)(6) Topic because it was "evident that Mattel is seeking MGA's legal theories

8 and conclusions from a lay witness, which, in general, are more appropriately and

9 efficiently sought through contention interrogatories." <u>See</u> Dkt. No. 3564 at 9-10.

10 The same rule should apply here. <u>See</u>  <u>3M Co. v. Kanbar</u>, 2007 WL 1794936, at

11 *2 (N.D. Cal. June 19, 2007) (granting motion for protective order because notices

12 that "in effect, seek [] legal conclusions . . . should not form the basis for 30(b)(6)

13 deposition topics."); <u>McCormick-Morgan, Inc. v. Teledyne Indus.</u>, 134 F.R.D. 275,

14 287 (granting protective order from 30(b)(6) topics that sought legal theories in

15 complex intellectual property case).

16    **B.    <u>Topic No. 2: Employee Contracts Since 1975</u>**

17    **Topic No. 2 Is Temporally Overbroad.**  This Topic seeks testimony going

18 back to 1975.  MGA has not justified its request for testimony even more dated

19 than what it sought in Phase 1 when these Topics were more directly at issue, and

20 Mattel did provide testimony dating back to 1995.[5]  MGA does not and cannot

21 make any showing of the relevance of Mattel's agreements with employees from

22 35 years ago.

23    **Topic No. 2 Is Unreasonably Duplicative.**  MGA acknowledges that

24 Mattel's previously deposed <u>Rule</u> 30(b)(6) witness, Ms. Freed,  testified about three

25 agreements covering the ownership of inventions and the protection of the

26 confidential information: the "Employee Confidential Information and Inventions

27  _____

28  [4]  <u>See</u> letter from M. Zeller to D. Torres, dated Mar. 26, 2007, at 2.
   [5]  <u>See</u>, <u>e.g.</u>, Lissa Freed Tr., dated May 3, 2007, at 18:5-19:6, 25:7-26:4.

Agreement," "Conflict of Interest Agreement," and "Proprietary Information Checkout."  Opp. at 7:10-11.  Indeed, Mattel's designee testified about every version of those agreements spanning a more than 10-year period dating back to 1995.[6]  At a minimum, therefore, the Court should grant the protective order at least with respect to these types of agreements for which MGA has already received 30(b)(6) testimony from Mattel.

**Topic No. 2 Imposes an Undue Burden.**  Mattel has had over 5000 employees in its El Segundo headquarters since 1997 alone.[7]  As part of Mattel's standard practice, each of these employees would have been requested to sign a version of both the "Employee Confidential Information and Inventions Agreement" and "Conflict of Interest Questionnaire."[8]  Preparing a witness to testify on 35 years of employment agreements would impose an enormous burden on Mattel which cannot be justified on relevance grounds.  MGA has not asserted any Phase 2 defenses based upon the enforceability of Mattel's employment agreements, let alone the substance of those agreements thirty-five years ago.

## C.   Topic No. 3: Mattel's Confidentiality Policies

**Topic No. 3 Is Temporally Overbroad.**  MGA seeks to have Mattel identify and prepare a witness to testify regarding agreements, policies, practices, and procedures regarding its confidential information covering a 25-year period without making any attempt to show how information dating back to 1985 is relevant to any claim or defense.  The prior Discovery Master denied Mattel's motion to compel a Rule 30(b)(6) Topic seeking information about MGA's policies extending back to 1995, finding it to be "overbroad in terms of the specified time

---

[6]  See Lissa Freed Tr., dated May 3, 2007, at 18:5-83:15.

[7]  See Declaration of Lisa Freed, dated September 26, 2007, Dkt. No. 1017 ¶ 20.

[8]  Id. at ¶ 8.

frame because Bryant did not begin working at MGA until the year 2000."  See Dkt. No. 1013 at 10.

**Topic No. 3 Is Unreasonably Duplicative.**  Topic No. 3 is also unreasonably duplicative of the testimony provided by Mattel's Rule 30(b)(6) witness, Keith Storie, in response to Topic Nos. 5, 10 and 11 of MGA's Second Phase 2 Notice.[9]  This included testimony on "Mattel's policies, procedures, and practices for stamping or otherwise designating materials as confidential, proprietary or trade secret" (Topic No. 10)[10] and "Mattel's policies, procedures and practices for educating, notifying or otherwise informing its employees as to what information Mattel considers to be its trade secrets, or its confidential or proprietary information" (Topic No. 11).[11]  This information is also set forth in response to an interrogatory that asked for the same information and which Mr. Storie identified at his deposition.  Notwithstanding its claim that the earlier topic pertained "only to Mattel Trade Secrets identified in Mattel's [TAAC]" (Opp. at 8:13-14), Mr. Storie's testimony was not limited to steps taken to protect those specific trade secrets.  Similarly, to the extent Topic No. 3 seeks testimony on agreements related to the ownership of inventions, Mattel has also already

---

[9]  Static Control Components, Inc. v. Lexmark Intern., Inc., 2006 WL 3256767, at *5 (E.D. Ky. Nov. 9, 2006) (denying defendant's motion to compel, because topics were duplicative of another defendant's previous Rule 30(b)(6) depositions, and because moving defendant was present at those depositions and had an opportunity to ask questions).  See Notice of Deposition of Mattel, Inc. (Second Phase 2 Notice), dated Sept. 28, 2009, at 2.

[10]  See, e.g., Deposition Transcript of Keith Storie, dated Dec. 16, 2009, at 60:19-65:23; Deposition Transcript of Keith Storie, dated Dec. 17, 2009, at 262:23-265:25; Deposition Transcript of Keith Storie, dated Feb. 23, 2010, at 898:2-899:2.

[11]  See, e.g., Deposition Transcript of Keith Storie, dated Dec. 16, 2009, at 68:11-87:19; Deposition Transcript of Keith Storie, dated Dec. 17, 2009, at 242:9-262:21.

provided a designee.[12]   Moreover, Mattel and MGA previously agreed that the parties could designate prior deposition testimony in response to a Rule 30(b)(6) notice.[13]   That agreement confirms that parties' understanding that duplicative testimony is improper.

### D.   Topic Nos. 4 and 5: Wee 3 Friends

**Topic Nos. 4 and 5 Are Unduly Burdensome.**  Topic Nos. 4-5 are unduly burdensome.[14]  The text of the topics belies MGA's claim that "the requests only seek the very type of information that is tends [sic] to support or undermine MGA's trade dress claim."  Opp 12:17-18.  To name just two examples, sub-topics include "[a]ll communications with vendors, retailers or other industry third parties regarding the marketing, advertising, shelf space or pricing for the Wee 3 Friends product line" (5(b)) and "[a]ll distribution and shipping costs, including all transportation costs, associated with every unit of Wee 3 Friends sold by Mattel" (5(f)(iv)).   The Topics call for communications between hundreds of Mattel employees worldwide with a myriad of third parties around the world, and would require hundreds of hours of preparation, if it could be done at all.[15]

### E.   Topic Nos. 6 and 7: Barbie Fashion Fever

**Topic Nos. 6 and 7 Are Irrelevant.**  These topics, which seek testimony regarding the creation, design, development and first commercial use and sale of Mattel's Barbie Fashion Fever, are nothing more than an improper attempt to obtain discovery on MGA's withdrawn Bratz-related trade dress claims.  MGA suggests that these topics are relevant because "Mattel claims injury with respect to its entire line of Barbie products from 2001 to the present, which would include Fashion Fever."  Opp at 10:19-21.  But Mattel has not claimed that the Fashion

---

[12]   Deposition Trancript of Lissa Freed, Vol. 1, dated May 3, 2007.
[13]   <u>See</u> letter from M. Zeller to D. Torres, dated Mar. 26, 2007, at 2.
[14]   <u>See</u> concurrently filed Declaration of Sarah Buzby.
[15]   <u>See</u> Buzby Declaration at ¶¶ 8-9.

1  Fever theme was a trade secret stolen by MGA which might make its creation and

2  sales dates relevant.   Moreover, Mattel has already provided <u>Rule</u> 30(b)(6)

3  testimony on the topic of the sales and profits of the Mattel products harmed by

4  Bratz.[16]   MGA argues that information showing that Mattel based Fashion Fever

5  on unreleased MGA product themes is relevant to a determination of whether *other*

6  Mattel unreleased product themes constitute trade secrets.  Opp. at 10:25-11:11:1.

7  Whether Mattel's unreleased product themes constitute trade secrets turns on

8  Mattel's efforts to protect its confidential information, not the efforts of MGA or

9  any other toy company to protect their purported confidential information.  <u>See</u>

10 <u>Cal. Civ. Code</u> § 3426(d); <u>see also</u> <u>San Jose Const., Inc. v. S.B.C.C., Inc.</u>, 155 Cal.

11 App. 4th 1528, 1537 (2007).   MGA's contention that the Topics relate to its

12 Unclean Hands defense also fails, because Fashion Fever is not related to any of

13 Mattel's trade secret misappropriation claims.  "It is fundamental to the operation

14 of the doctrine that the alleged misconduct by the plaintiff related directly to the

15 transactions concerning which the complaint is made."  <u>Dollar Systems, Inv. V.</u>

16 <u>Avcar Leasing Systems, Inc.</u>, 890 F.2d 165, 173 (9th Cir. 1989); <u>see also</u>

17 <u>Magnesystems, Inc. v. Nikken, Inc.</u>, 933 F. Supp. 944, 953 (C.D. Cal. 1996)

18 (rejecting unclean hand defense based on plaintiff's alleged patent infringement in

19 a patent infringement case against defendants, finding that "[p]laintiff's alleged

20 misconduct [h]ad no direct relationship to the [patent-in-suit] or [p]laintiff's

21 conduct in obtaining the patent-in-suit.").

22           **F.    <u>Topic No. 8: Receipt of Non-Public Information</u>**

23        **Topic No. 8 Is Overbroad and Unduly Burdensome.**  Topic No. 8 is

24 unlimited in scope.  It is not limited by time; Mattel has been in business for

25 decades.  It is not limited by competitor; it includes any company that has ever

26 competed in the toy business no matter how big or small.  Nor is it limited to the

27

28       [16]   <u>See</u> Deposition Transcript Douglas Kerner, Vol. 1, dated June 6, 2009.

products at issue in this case.  Instead, it seeks a witness from Mattel to testify regarding "the receipt by Mattel of any non-public and/or confidential information" relating to unspecified Mattel competitors, including their "pricing, product development, advertising plans, marketing plans or research, actual or estimated product costs or sales" – regardless of whether any of this information has any bearing on this action.  This topic would require Mattel to educate a witness to testify about every piece of non-public information obtained in connection with potential or actual licensing deals, joint ventures or acquisitions involving another toy company, all of which is perfectly legitimate and none of which has anything to do with the issues in this lawsuit.  See Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) ("Where, as here, the defendant cannot identify the outer limits of the area of inquiry noticed, compliant designation is not feasible.").

While MGA claims that "[t]he necessity of this information to MGA's ability to present its claims and defenses outweigh any possible burden on Mattel,"  (Opp. at 13:25-14:2), MGA has failed to make any such showing.  MGA argues that the information sought by this Topic has "clear relevance" to the issue of whether the Mattel trade secrets at issue here are, in fact, trade secrets.  Opp. at 13:14-24.  A "trade secret" is information that derives independent economic value from not being known to the public and is the subject of efforts "to maintain secrecy."  Cal. Civ. Code § 3426(d); see also San Jose Const., Inc. v. S.B.C.C., Inc., 155 Cal. App. 4th 1528, 1537 (2007).[17]  Indeed, "the extent of the property right [in a claimed trade secret] is defined by the extent to which the owner of the secret protects his interest from disclosure to others." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984).  The non-Mattel information sought by Topic No. 8 is irrelevant to

---

[17]   Since California's adoption of the Uniform Trade Secrets Act, "trade secret" has been defined by statute in California.  See, e.g., Vacco Indus., Inc. v. Van Den Berg, 5 Cal. App. 4th 34, 49-50 (1992) (citing Cal. Civ. Code § 3426.1) (chronicling California's transition from trade secret common law to the UTSA).

the determination of Mattel's own efforts to protect its trade secrets from disclosure to others.

MGA contends that for the purpose of its unclean hands defense, it is entitled to testimony from Mattel on the subject of whether Mattel had access to competitors' information, including from third parties.  Opp. at 13-14.  Again, "unclean hands does not constitute 'misconduct in the abstract, unrelated to the claim to which it is asserted as a defense.'" Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 841 (9th Cir. 2002) (quoting Republic Molding Corp. v. B.W. Photo Utils., 319 F.2d 347, 349 (9th Cir. 1963)).  "[M]isconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands. The concept invoking the denial of relief is not intended to serve as punishment for extraneous transgressions." Republic Molding Corp., 319 F.2d at 349.

### G.   Topic No. 9: Communications With Licensees

**Topic No. 9 Is Overbroad and Unduly Burdensome.**  MGA asserts that this topic is "directly relevant to MGA's claim that Mattel has warned companies not to license MGA products, or to risk retribution."  Opp. at 14:8-9.  But that is not what this Topic seeks.  Instead, it would require Mattel to educate a witness about each and every communication (written or oral) between "Mattel" and any actual or potential licensee regarding any actual or potential MGA license at any time without any other limitation as to subject matter.  Mattel has over 1000 licensees and licensors in the United States alone, hundreds more worldwide,[18] and countless other potential licensees.  MGA defines "Mattel" to include "all of [Mattel's] directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, subsidiaries, or affiliates, past or present."  MGA

---

[18]   See Dkt. No. 537 at 3.

1  has failed to make any showing that would justify the breadth or burden of this
2  Topic.

3            **H.**     **Topic No. 10: Bratz Shelf Space**

4        **Topic No. 10 Is Overbroad and Unduly Burdensome.**  MGA argues that
5  Topic 10 is relevant to alleged "bad acts" by Mattel with respect to shelf and
6  display space for Bratz.  But Topic No. 10 is not limited to "bad acts" and, indeed,
7  is not even limited to Mattel.  It seeks testimony regarding "any and all efforts,
8  attempts, or other actions" – without regard to who was responsible for them – to
9  reduce shelf space and display space for Bratz, to specify the location of Bratz
10 products in retail planograms or to alter the placement of Bratz products on store
11 shelves.  Among other things, this would include unilateral decisions by retailers to
12 reduce shelf space or even decisions regarding the placement of Bratz products
13 made at MGA's urging.

14       Even if this Topic were limited to Mattel, not all efforts to reduce the shelf
15 space or influence the placement of a competitor's products constitute "bad acts."
16 Indeed, there are any number of legitimate ways that companies routinely seek to
17 increase shelf space or obtain more favorable placement of their products, which
18 may come at the expense of the competition, including through product offerings
19 and advertising, promotional and retail support.  MGA makes no attempt in Topic
20 No. 10 to distinguish such legitimate, and irrelevant, activities from the alleged
21 "bad acts" that it points to in justification of this request.   MGA argues that Erica
22 Ashbrook identified a person that heads up Mattel's retail services organization
23 who should be in a position to know about "the practices of Mattel employees who
24 stock merchandise on retail shelves."  Opp. at 24-27.  But Topic No. 10 is not
25 limited to any so-called "practices."  Moreover,  Ms. Ashbrook was asked about a
26 particular retailer and particular allegations about Mattel representatives and Bratz

27
28

products.[19]   The Topic on which MGA seeks to examine a Mattel designee is nowhere near so limited and particular.

## I.      Topic No. 11: Acquisition of MGA Information

**Topic No. 11 Is Overbroad and Unduly Burdensome.**  MGA claims that it is entitled to "a complete explanation of the precise circumstances" in which Mattel acquired every piece of information concerning MGA or its products found in 250 pages of exhibits because it believes Mattel improperly obtained information about unreleased MGA products.  Once again, however, MGA's purported justification does not match the scope of the request.  For example, Exhibit No. 5, a presentation that is over 200 pages long, includes numerous references to MGA based on publicly available NPD data and/or products that were or already had been on the market.[20]  MGA seeks testimony about the "precise circumstances" under which Mattel acquired not only this information but, as with the other 25 exhibits at issue, "any additional communications regarding the subject matter therein."  This would require Mattel to identify and educate a witness to testify about all communications regarding such publicly available information.  Similarly, Topics 10(g) and (h) seek all communications regarding MGA's Spring 2004 products and 2004 Bratz product lines, respectively, no matter when such communications took place.  All of this belies MGA's claims regarding the purported ease of preparing a witness because some of the exhibits are e-mails with a "specific sender and recipient(s)."

MGA's relevance claim also fails.  MGA asserts that the circumstances surrounding Mattel's acquisition of information about MGA is "directly relevant to Mattel's claim that similar categories of information are a trade secret."  Opp. at 17-19.  Not so.  As discussed above, the protectability of Mattel's trade secrets

---

[19]   Deposition Transcript of Erika Ashbrook, dated February 3, 2010, at 302:13-313:25.

[20]   <u>See</u>, <u>e.g.</u>, Exhibit 5 at M 0297413, M 0297423, M 0297437.

1  depends on the efforts Mattel takes to protect its confidential information, not the

2  efforts, if any, MGA takes to protect its purported confidential information.

3  Similarly, "unclean hands" cannot justify this request since none of the information

4  in these Exhibits is related, directly or otherwise, to the transactions at issue in

5  Mattel's Counterclaims. Dollar Systems, Inv. V. Avcar Leasing Systems, Inc., 890

6  F.2d 165, 173 (9th Cir. 1989); see also Magnesystems, Inc. v. Nikken, Inc., 933 F.

7  Supp. 944, 953 (C.D. Cal. 1996).

8  **J.      Topic Nos. 12-15, 23 and 27: Mattel Reports**

9       **Topic Nos. 12-15, 23 and 27 Are Overbroad, Unduly Burdensome and**

10 **Irrelevant.**   Topic Nos. 12-15, 23 and 27 relate to over 200 pages of reports

11 reflecting detailed competitive analysis.  For each of these, MGA wants a witness

12 to testify regarding every aspect of the documents, including everyone who was

13 "involved in any way in the creation" of the document, "all purposes for which it

14 was used," "the source of every piece of information contained therein" and all

15 versions and revisions, whether that information has any bearing on any claim or

16 defense in this action or not.  MGA argues that because the documents at issue in

17 these Topics contain information about MGA's products, they are therefore

18 "directly relevant to Mattel's claim of trade secret misappropriation by MGA."

19 Opp. at 19-20.  But as explained above,  MGA's public disclosure of information

20 does not define whether Mattel's confidential information qualifies as a trade

21 secret,   Cal. Civ. Code § 3426(d); San Jose Const., Inc. v. S.B.C.C., Inc., 155 Cal.

22 App. 4th 1528, 1537 (2007), nor does its unclean hands defense give it carte

23 blanche to take discovery on everything Mattel has done vis-a-vis MGA or its

24 products.  MGA has not even attempted to defend the relevance of certain sub-

25 topics of Topic 23 – such as Mattel's retention or confidentiality agreements with

26 Bain.  Finally, MGA claims that these presentations are relevant to lost profits and

27 lost market share, suggesting that the documents show "that the Barbie brand

28 experienced problems well before Bratz entered the market."  Opp. at 16:26-27.

1  But the Topic seeks, for example, "the source of every piece of information
2  contained" in these reports regardless of whether it has any relevance to this or any
3  other issue in the case.

4          **K.**      **Topic No. 16: Fashion Doll Concepts**

5        **Topic No. 16 Is Overbroad.**  MGA defends this Topic by arguing its
6  relevance to Mattel's claimed lost opportunity related to Bratz: "Having
7  successfully opposed one motion by MGA to seek discovery into Mattel's claimed
8  lost opportunity, Mattel cannot reasonably oppose MGA's use of an alternate
9  vehicle suggested by the Court."  Opp. at 18:21-24.  However, in denying MGA
10  discovery into Bratz 2010 and Monster High, the Court did not "suggest" even
11  broader, more burdensome discovery such as this <u>Rule</u> 30(b)(6) Topic regarding
12  "[a]ll fashion doll concepts (including ideas, drawings, prototypes and the like and
13  independent of the precise stage of creation) considered by Mattel for potential
14  marketing between 1990 and 2002[.]"  Rather, the Court advised that MGA "may
15  avail itself of **narrower** and **more effective** vehicles for the discovery of
16  information into whether Mattel incurred lost opportunity costs and, if so, the
17  extent of such costs."  Dkt. No. 7708 at 3 (emphasis added).  This Topic is neither.
18  Asking about all of Mattel's fashion doll concepts, whether marketed or not, is
19  hardly "narrower."  Quite the contrary, this attempt to dig into Mattel's trove of
20  development ideas is exactly the sort of information a competitor should not have.

21        **Topic No. 16 Is Unduly Burdensome.**  Seeking testimony on all "fashion
22  doll concepts" that Mattel considered over 12 years is unduly burdensome.  Mattel
23  sells more than 5,000 different types of dolls and toys each year.  In the Barbie line
24  alone, Mattel typically introduces more than 550 new products per year and more
25  than 40,000 licensed Barbie products.[21]  The number of fashion doll "concepts"

26

27

---

28     [21]  <u>See</u> Declaration of Lori Pantel, Dkt. No. 6225 at ¶¶ 6-10.

1  that Mattel may have "considered" each year would certainly exceed even that

2  number.

3       **L.    Topic No. 17: Marketing of Bratz**

4       **Topic No. 17 Is Irrelevant and Unduly Burdensome.**   This Topic is

5  irrelevant.  First, it is premature until the Ninth Circuit rules on the Phase 1 appeal,

6  under the Court's prior orders denying Mattel Bratz-related discovery.  See, e.g.,

7  Dkt. No. 7635 at 2; Dkt. No. 7506 at 11-12.  Second, as the Court specifically held,

8  Mattel does not need to prove whether it would have marketed Bratz.  See Dkt. No.

9  3917; Trial Tr. 5162:4-6.[22]

10      **M.    Topic No. 18: Consumer Research**

11      **Topic No. 18 Is Overly Broad and Unduly Burdensome.**  MGA attempts

12 to defend the Topic while going to great pains to avoid quoting any of its actual

13 text.  Seeking testimony on all consumer research "concerning or including any

14 MGA product, any attributes of any MGA product, or any MGA product

15 packaging, including the manner and methodology of such research, the results of

16 such research, any reports concerning such research, and the distribution within

17 Mattel of any reports concerning such research" is indefensibly overbroad and

18 burdensome.[23]  It is not limited by time, by products at issue, or in any other way

19 tied to the claims or defenses at issue.  It is not feasible for Mattel to prepare a

20

21

22    [22]    MGA itself has argued that Rule 30(b)(6) topic seeking "all facts" are

23 improper.  See Dkt. No. 1557 at 16-18.  See In re Indep. Serv. Orgs. Antitrust

   Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective order from

24 30(b)(6) deposition and noting that a party "is not required to have counsel marshal

   all of its factual proof and prepare a witness to be able to testify on a given defense

25 or counterclaim") (internal quotation marks omitted); see also SmithKline

26 Beecham Corp. v. Aporex Corp., 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000).

   Therefore at a minimum the Topic should be modified to simply require that

27 Mattel provide the factual bases.

28    [23]    See id.

1  designee on this Topic, and MGA's contention that it is "entitled to a witness on
2  such consumer research" (Opp. at 13:5-6) should be rejected.[24]

3                    **N.      Topic Nos. 19 and 20: Harm to Mattel**

4              **Topic Nos. 19 and 20 Are Premature and Call for Expert Testimony.**
5  Rule 30(b)(6) allows for the discovery of facts, not a preview of expert opinion
6  testimony that may be offered.  Fed. R. Civ. P. 26(a)(2); see In re Intel Corp.
7  Microprocessor Antitrust Litigation, 2009 WL 2921313, at *2 (D. Del. Sept. 8,
8  2009)  (holding that topics in a Rule 30(b)(6) deposition notice seeking
9  information regarding pricing of microprocessors during a specific time period and
10  the relationship between prices paid for microprocessors by different classes were
11  "impermissible in the context of a Fed.R.Civ.P. 30(b)(6) deposition because they
12  seek information concerning AMD's damages allegations, which implicate expert
13  testimony"); see also New Haven Temple SDA Church v. Consolidated Edison
14  Corp., 1995 WL 358788, at *5 (S.D.N.Y. June 13, 1995) (sustaining objections to
15  interrogatory because "[t]o the extent that the theories of damages applicable to
16  these claims may be related to the damages sought by plaintiff's fourth claim, the
17  interrogatory is premature").

18          Yet, such opinions are exactly what these topics seek, including
19  quantification and analysis of alleged lost profits, lost sales, price erosion, lost
20  sales opportunities or diversion of sales by period, region, product, date and brand
21  (19(a)-(c)); increased expenses caused by MGA's misconduct (19(d)); all
22  forecasts, projections, market share analysis and retail space analysis regarding
23  each product harmed by MGA (19(e)-(f)); the value of the trade secrets and other
24  property that Mattel alleges that MGA stole (20(c)); and the quantification of
25  alleged losses caused by MGA's theft of trade secrets, including cause and dates of

26

27

28          [24]  See Declaration of Lori Pantel at ¶¶ 6-8 (Dkt. No. 6225).

1   loss (20(d)).  Such topics are the exclusive province of expert opinion testimony,

2   not of lay fact witnesses.

3       **Topic Nos. 19 and 20 Are Unduly Burdensome.**  Topic 19 seeks to

4   examine a designee, on a product-by-product basis for hundreds of products, on

5   market share analysis, shelf space analysis, retail space analysis, and sales or

6   financial forecasts.  It also seeks testimony on "quantification and analysis of lost

7   profits, lost sales, price erosion, lost sales opportunities or diversion of sales" by

8   the following groupings: "by period, region, product and brand."  Preparation of a

9   corporate witness on all of this information is impossible.  Topic 20 is equally

10  burdensome.  According to MGA, it requires virtually unlimited testimony on

11  Mattel's alleged harm related to – in addition to trade secret misappropriation – its

12  RICO, fraudulent transfer, constructive trust, and prohibited distribution

13  counterclaims.  A corporate witness is not a computer.  To date, Mattel has

14  produced more than 300,000 pages of financial documents.  The burden and

15  expense to Mattel of preparing a witness or witnesses to testify on this Topic far

16  outweighs the marginal benefit MGA would obtain from the testimony.  See In re

17  Indep. Serv. Orgs. Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (noting

18  that a party "is not required to have counsel marshal all of its factual proof and

19  prepare a witness to be able to testify on a given defense or counterclaim")

20  (internal quotation marks omitted).

21      **O.    Topic No. 21: Forensic Analyses**

22      **Topic No. 21 is Premature.**  On its face, Topic No. 21 seeks expert

23  testimony.  For example, for forensic analysis that Mattel will rely upon at trial,

24  MGA seeks a witness to testify about the "methodologies employed in each

25  analysis."  That is not information that a lay designee can competently or

26  accurately provide.  Rule 30(b)(6) does not require Mattel to produce consultants

27  to testify about their analysis before expert discovery commences.

28

**Topic No. 21 Is Unreasonably Duplicative**.  Mr. Elias,  Mattel's Rule 30(b)(6) designee on the trade secret theft investigations, already provided non-expert testimony responsive to this Topic.  The only omission that MGA identifies from Mr. Elias' testimony was analysis of Ron Brawer's hard drive.  But the only reported analysis of Mr. Brawer's hard drive is an incomplete, draft report created by another law firm in connection with a declaratory relief case against Brawer, (see Mattel, Inc. v. Ronald Brawer, Cal. Sup Court Case No. BC323381), which Quinn Emanuel was not aware of at the time Mr. Elias testified and which Mattel will not rely upon at trial.  The Court is presently reviewing this report *in camera*.

**Topic No. 21 Is Unduly Burdensome.**  This Topic is unduly burdensome. The prior Discovery Master has denied Mattel discovery on Rule 30(b)(6) Topics relating to MGA employees' hard-drives on the grounds that such subject matter "is burdensome and expensive to prepare a witness to testify about" and therefore "the likely benefit of undergoing such a burden and expense are doubtful."  See Dkt. No. 1013 at 8.  This Topic should not be compelled for the same reason.

## P.    Topic No. 22: Bratz Copyright Registrations

**Topic No. 22 Is Irrelevant.**  Topic No. 22 seeks information regarding the Bratz drawing copyright registrations that Mattel submitted.  MGA argues that this Topic is relevant to Mattel's criminal copyright infringement predicate act.  Opp. at 11:13-15.  First, the Phase 1 jury verdict found that MGA had infringed these copyrights.  Second, MGA does not explain how Mattel's copyright applications are relevant to MGA's acts of criminal copyright infringement.  No registrations are required for criminal copyright infringement.  See Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 493 n.44 (1984) (under 17 U.S.C.A. § 506(a), "liability for criminal copyright infringement [is] not conditioned on prior registration.").  Third, MGA has already examined Mattel in-house lawyer Michael Moore for several hours on this topic.  Finally, in seeking to examine a corporate designee on the contents of Mattel's copyright applications, this Topic improperly

seeks legal conclusions.  <u>See</u> Dkt. No. 3564 at 9-10; <u>see also</u> <u>3M Co. v. Kanbar</u>, 2007 WL 1794936, at *2 (N.D. Cal. June 19, 2007) (granting motion for protective order because notices that "in effect, seek [] legal conclusions . . . should not form the basis for 30(b)(6) deposition topics.").

### Q.    Topic No. 24: Trapezoidal Packaging

**Topic No. 24 Is Overly Broad.**  This Topic is overbroad because it is unlimited as to time.

### R.    Topic No. 25: Financial Documents

**Topic No. 25 Is Not Stated With Reasonable Particularity and is Unduly Burdensome.**  A <u>Rule</u> 30(b)(6) deposition notice "must describe with reasonable particularity the matters for examination."  MGA makes no attempt to show how a topic that encompasses "[a]ll Mattel financial documents that have been produced in the course of this litigation" comes close to satisfying this requirement.  <u>See</u> <u>Reed v. Bennett</u>, 193 F.R.D. 689, 692 (D. Kan. 2000) ("Where, as here, the defendant cannot identify the outer limits of the area of inquiry noticed, compliant designation is not feasible.").  Mattel has produced well over 300,000 pages (over 70 boxes) of financial documents.  MGA's conclusory assertion that Mattel's burden "is only a reflection of Mattel's own wide-ranging damages claim" is a non sequitur.  The Topic is not even limited to damages-related financial documents; it seeks undisclosed categories of testimony about every "financial" document Mattel has produced, whether or not such documents have anything to do with Mattel's claim for damages.  The Topic is patently overbroad and seeks to impose undue burdens on Mattel.

### S.    Topic No. 26: Acquisition of Bratz Registrations in Brazil

**Topic No. 26 Is Irrelevant.**  MGA seeks a witness to provide a "complete explanation of the precise circumstances in which Mattel acquired" copyright registrations of certain Bratz characters in Brazil.  Mattel does not dispute that the

1  foreign registrations are relevant.  Opp. at 12:4-10.  The Topic, however, is not the

2  registrations, but the particulars of how Mattel got them.  That is irrelevant.

3  **II.     TOPIC NOS. 8, 10 AND 23 SEEK TESTIMONY NOT REASONABLY**

4  **AVAILABLE TO MATTEL**

5      MGA does not dispute that Topic Nos. 8 and 23 seek testimony not

6  reasonably available to Mattel.  Mattel should therefore be granted a protective

7  order as to both to the extent the testimony sought is not reasonably available to it.

8  As for Topic No. 10, related to attempts by anyone to alter or reduce Bratz shelf

9  space, MGA offers examples of information that may be in Mattel's possession or

10 reasonably available to it, but the existence of some such information does not

11 obligate Mattel to testify on any matters not reasonably available to it.  The Court

12 should grant Mattel a protective order that limits the testimony Mattel must

13 provide on any of the Topics to knowledge reasonably available to it.

14                                    **Conclusion**

15      For the foregoing reasons, Mattel respectfully requests that the Court grant

16 its Motion and deny MGA's Cross-Motion.

17

18 DATED:  June 1, 2010            QUINN EMANUEL URQUHART &
                                   SULLIVAN. LLP
19

20                                 By  /s/ Jon D. Corey
                                       Jon D. Corey
21                                     Attorneys for Mattel. Inc.

22

23

24

25

26

27

28

**Appendix A**

| Name of Deponent / Proceeding | Vol. | Date | Testimony Time |
|---|---|---|---|
| **Mattel Phase 1** | | | |
| Mattel 30(b)(6) - Artavia, Arnoldo | 1 | 9/21/2006 | 3:13:00 |
| Mattel 30(b)(6) - Freed, Lissa | 1 | 5/3/2007 | 2:30:00 |
| Mattel 30(b)(6) - Hudnut, Robert | 1 | 7/13/2007 | 4:25:00 |
| Mattel 30(b)(6) - Hudnut, Robert | 2 | 8/20/2007 | 0:28:00 |
| Mattel 30(b)(6) - Jensen, Julia | 1 | 6/8/2007 | 3:31:00 |
| Mattel 30(b)(6) - Kawashima, Fred | 1 | 1/17/2007 | 5:23:00 |
| Mattel 30(b)(6) - Kawashima, Fred | 2 | 6/19/2007 | 4:55:00 |
| Mattel 30(b)(6) - Kawashima, Fred | 3 | 9/13/2007 | 3:21:00 |
| Mattel 30(b)(6) - Kerner, Douglas | 1 | 6/6/2008 | 6:02:00 |
| Mattel 30(b)(6) - Marine, Julia | 1 | 9/21/2006 | 1:20:00 |
| Mattel 30(b)(6) - Marine, Julia | 2 | 11/8/2006 | 1:33:00 |
| Mattel 30(b)(6) - Marine, Julia | 3 | 6/26/2007 | 1:44:00 |
| Mattel 30(b)(6) - Martinez, Liliana* | 1 | 5/20/2005 | 3:41:00 |
| Mattel 30(b)(6) - Nordquist, Jill | 1 | 7/31/2007 | 6:55:00 |
| Mattel 30(b)(6) - Ongchango, Kislap | 1 | 4/24/2007 | 5:08:00 |
| Mattel 30(b)(6) - Palmer, Rodney | 1 | 6/26/2007 | 2:42:00 |
| Mattel 30(b)(6) - Pasko, Rene | 1 | 6/13/2007 | 6:16:00 |
| Mattel 30(b)(6) - Pratte, Joni | 1 | 6/1/2007 | 4:38:00 |
| Mattel 30(b)(6) - Simpson-Taylor, Kathleen | 1 | 2/23/2008 | 6:43:00 |
| Mattel 30(b)(6) - Yonemoto, Sandy | 1 | 5/30/2007 | 4:04:00 |
| **Total Mattel Phase 1** | | | **78:32:00** |
| **Mattel Phase 2** | | | |
| Mattel 30(b)(6) Phase 2 - Elias, Jaime | 1 | 11/16/2009 | 5:45:00 |
| Mattel 30(b)(6) Phase 2 - Elias, Jaime | 2 | 11/17/2009 | 6:46:00 |
| Mattel 30(b)(6) Phase 2 - Elias, Jaime | 3 | 11/18/2009 | 6:42:00 |
| Mattel 30(b)(6) Phase 2 - Elias, Jaime | 4 | 11/19/2009 | 3:16:00 |
| Mattel 30(b)(6) Phase 2 - Owens, Laura | 1 | 12/14/2009 | 7:40:00 |
| Mattel 30(b)(6) Phase 2 - Owens, Laura | 2 | 12/15/2009 | 7:27:00 |
| Mattel 30(b)(6) Phase 2 - Owens, Laura | 3 | 12/16/2009 | 0:36:00 |
| Mattel 30(b)(6) Phase 2 - Storie, Keith | 1 | 12/16/2009 | 5:01:00 |

OPPOSITION TO MOTION TO COMPEL 30(b)(6) DEPOSITION AND REPLY ISO PROTECTIVE ORDER

| Name of Deponent / Proceeding | Vol. | Date | Testimony Time |
|---|---|---|---|
| Mattel 30(b)(6) Phase 2 - Storie, Keith | 2 | 12/17/2009 | 5:17:00 |
| Mattel 30(b)(6) Phase 2 - Storie, Keith | 3 | 2/22/2010 | 5:54:00 |
| Mattel 30(b)(6) Phase 2 - Storie, Keith | 4 | 2/23/2010 | 6:25:00 |
| Mattel 30(b)(6) Phase 2 - Storie, Keith | 5 | 4/29/2010 | 6:37:00 |
| Mattel 30(b)(6) Phase 2 - Storie, Keith | 6 | 4/30/2010 | 5:37:00 |
| **Total Mattel Phase 2** | | | **73:03:00** |
| **TOTAL MATTEL** | | | **151:35:00** |
| | | | |
| **MGA Phase 1** | | | |
| MGA 30(b)(6) - Armstrong, Bryan | 1 | 7/18/2007 | 6:28:00 |
| MGA 30(b)(6) - Armstrong, Bryan | 2 | 8/1/2007 | 4:39:00 |
| MGA 30(b)(6) - Brode, Kerri | 1 | 1/19/2007 | 1:05:00 |
| MGA 30(b)(6) - Brooks, Charnayne | 1 | 3/2/2007 | 4:59:00 |
| MGA 30(b)(6) - Garcia, Paula* | 1 | 5/24/2007 | 3:30:00 |
| MGA 30(b)(6) - Garcia, Paula* | 2 | 5/25/2007 | 3:46:30 |
| MGA 30(b)(6) - Garcia, Paula* | 3 | 10/9/2007 | 3:29:30 |
| MGA 30(b)(6) - Harris, Rebecca | 1 | 7/20/2007 | 7:12:00 |
| MGA 30(b)(6) - Harris, Rebecca | 2 | 1/22/2008 | 4:14:00 |
| MGA 30(b)(6) - Khare, Samir | 1 | 8/20/2007 | 8:30:00 |
| MGA 30(b)(6) - Khare, Samir | 2 | 1/23/2008 | 6:12:00 |
| MGA 30(b)(6) - Khare, Samir | 3 | 1/25/2008 | 6:30:00 |
| MGA 30(b)(6) - Khare, Samir | 4 | 5/14/2008 | 3:16:00 |
| MGA 30(b)(6) - Lockhart, Kenneth | 1 | 6/14/2007 | 6:03:00 |
| MGA 30(b)(6) - Lockhart, Kenneth | 2 | 6/15/2007 | 1:58:00 |
| MGA 30(b)(6) - Tonnu, Lisa | 1 | 7/19/2007 | 6:02:00 |
| MGA 30(b)(6) - Tonnu, Lisa | 2 | 9/24/2007 | 5:24:00 |
| MGA 30(b)(6) - Tonnu, Lisa | 3 | 9/25/2007 | 4:17:00 |
| MGA 30(b)(6) - Tonnu, Lisa | 4 | 1/17/2008 | 5:38:00 |
| MGA 30(b)(6) - Tonnu, Lisa | 5 | 1/24/2008 | 7:45:00 |
| MGA 30(b)(6) - Woodman, Spencer | 1 | 10/9/2007 | 5:34:00 |
| **Total MGA Phase 1** | | | **106:32:00** |
| **MGA Phase 2** | | | |
| MGA 30(b)(6) Phase 2 - Brawer, Ron | 1 | 3/24/2010 | 7:54:00 |

OPPOSITION TO MOTION TO COMPEL 30(b)(6) DEPOSITION AND REPLY ISO PROTECTIVE ORDER

00505.07975/3521395.2

| Name of Deponent / Proceeding | Vol. | Date | Testimony Time |
|---|---|---|---|
| MGA 30(b)(6) Phase 2 - Khare, Samir | 2 | 3/25/2010 | 6:07:00 |
| MGA 30(b)(6) Phase 2 - Schultz, Stephen | 4 | 3/26/2010 | 5:47:00 |
| MGA 30(b)(6) Phase 2 - Woolard, John | 3 | 3/26/2010 | 3:54:00 |
| MGA Canada 30b6 - Goveia-Gordon, Diane | 1 | 2/3/2010 | 7:25:00 |
| MGA Canada 30b6 - Goveia-Gordon, Diane | 2 | 2/4/2010 | 7:49:00 |
| MGA Canada 30b6 - Goveia-Gordon, Diane | 3 | 2/5/2010 | 3:38:00 |
| **Total MGA Phase 2** | | | **42:34:00** |
| **TOTAL MGA** | | | **149:06:00** |
| | | | |
| **MGA Mexico Phase 1** | | | |
| None | | | |
| **Total MGA Mexico Phase 1** | | | **0** |
| **MGA Mexico Phase 2** | | | |
| MGA de Mexico 30(b)(6) - Kuemmerle, Susan | 1 | 12/7/2009 | 6:14:00 |
| MGA de Mexico 30(b)(6) - Kuemmerle, Susan | 2 | 12/8/2009 | 3:39:00 |
| MGA de Mexico 30(b)(6) - Kuemmerle, Susan | 3 | 12/9/2009 | 9:31:00 |
| MGA de Mexico 30(b)(6) - Small, Lewis | 4 | 12/12/2009 | 4:33:00 |
| MGA de Mexico 30(b)(6) - Small, Lewis | 5 | 1/15/2010 | 7:22:00 |
| MGA de Mexico 30(b)(6) - Small, Lewis | 6 | 3/17/2010 | 1:02:00 |
| **Total MGA Mexico Phase 2** | | | **32:21:00** |
| **TOTAL MGE DE MEXICO** | | | **32:21:00** |
| | | | |
| **MGA HK Phase 1** | | | |
| MGA HK 30(b)(6) - Lee, Edmond | 1 | 10/4/2007 | 7:00:00 |
| MGA HK 30(b)(6) - Lee, Edmond | 2 | 10/5/2007 | 6:22:00 |
| MGA HK 30(b)(6) - Lee, Edmond | 3 | 5/9/2008 | 6:59:00 |
| **Total MGA HK Phase 1** | | | **20:21:00** |
| **MGA Mexico Phase 2** | | | |
| None | | | |
| **Total MGA HK Phase 2** | | | **0** |
| **TOTAL MGA HK** | | | **20:21:00** |

*Deponent testified in both 30(b)(6) and individual capacity.  Accordingly, testimony time as indicated was apportioned equally.