QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **DECLARATION OF SARAH BUZBY IN OPPOSITION TO MGA'S CROSS-MOTION TO COMPEL TESTIMONY OF MATTEL 30(b)(6) AND IN SUPPORT OF MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER FROM THE MGA PARTIES' NOTICE OF DEPOSITION OF MATTEL, INC. (THIRD PHASE 2 NOTICE)** |
| Defendant. | |
| AND CONSOLIDATED CASES | |
| | Date:        TBD<br>Time:       TBD<br>Courtroom: 9D |
| | **Phase 2** |
| | Discovery Cutoff:        TBD<br>Pre-trial Conference:   TBD<br>Trial:                         TBD |

00505.07975/3518635.1

## DECLARATION OF SARAH BUZBY

I, Sarah Buzby, declare as follows:

1. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. I have been a Mattel employee since November 1999. I am currently Director of Marketing for Barbie Consumer Products. I previously served as the Director of Marketing for Barbie and as a Senior Brand Manager for Barbie.

3. The design for the Wee 3 product line began in 2003 and sold for approximately two years between 2004 and 2006. During this time, I was a brand manager and my involvement in the Wee 3 line included several aspects, such as marketing, design and development, engineering, packaging, and costing.

4. I am informed that MGA seeks a Mattel witness to testify regarding the creation, design, development, product configuration, packaging, marketing, manufacturing, logistics, first commercial use or sale, sales, profitability, and several additional aspects of Mattel's Wee 3 Friends products.

5. I am informed that Topic Nos. 4 and 5 in MGA Entertainment, Inc.'s Third Notice of Deposition of Mattel, Inc. are as follows:

TOPIC 4:

The creation, design, development, product configuration and packaging of Mattel's Wee 3 Friends products, including during the period of time when the Wee 3 Friends project was designated by code names such as Project Double Trouble, Project X and Wee 3 prior to adoption of the final name of Wee 3 Friends, including without limitation:

a. Evaluation of other competitive product lines during development, including MGA's 4-Ever Best Friends line of dolls;

b. Evaluation of product name and branding including any logos or slogans considered, and any trademark, copyright or other clearance

searches conducted in connection with any name, brand, trademark, service mark, logo, slogan, tagline, packaging, product configuration or design considered in connection with the Wee 3 Friends product line.

TOPIC 5:

The marketing, first commercial use or sale, sales, and profitability of the Wee 3 Friends product line including, but not limited to:

a. Advertising, marketing, and commercials in print, television, Internet, and other media;

b. All communications with vendors, retailers or other industry third parties regarding marketing, advertising, shelf space or pricing for the Wee 3 Friends product line;

c. Any market research or analysis regarding the Wee 3 Friends product line including consumer research, potential consumer base, target market and market share including any documents or presentations regarding such information and how such information was compiled;

d. Any instances of consumer or retailer confusion between any Wee 3 Friends products and any 4-Ever Best Friends products;

e. Unit sales, pricing, discounts, gross and net revenues associated with the sales of Wee 3 Friends products on a per-sku and monthly basis for the period that Mattel sold the Wee 3 Friends products,

f. All costs, both variable and fixed, associated with the development, manufacturing, marketing, sale and delivery to customers of the Wee 3 Friends product line, including without limitation the following:

    i. All variable costs for manufacturing the product on a per-sku basis, including the raw materials, packaging supplies and

direct variable labor, as identified and defined by Thomas Debrowski at page 122:21-25 of his deposition;

ii. The Bill of Materials ("BOM") for each product in the line, including the cost of manufacturing the dolls, accessories and package for each sku offered by Mattel in the Wee 3 Friends product line, as well as all manufacturing cost variances from such BOMs;

iii. Any other element of manufacturing cost for each sku offered by Mattel in the Wee 3 Friends product line not already identified in response to topic (f)(i), including without limitation the costs of any tooling;

iv. All distribution and shipping costs, including all transportation costs, associated with every unit of Wee 3 Friends sold by Mattel;

v. All development and design costs for Wee 3 Friends, whether variable or allocated;

vi. All marketing and sales costs including all forms of media and non-media advertising expenditures, research, trade advertising allowances, television production costs, advertising time purchase expenses, and all other costs associated with the marketing and sale of the Wee 3 Friends product;

vii. Mattel's allocation of any share of fixed costs and/or overhead to the Wee 3 Friends product line, including fixed costs associated with development, manufacturing, marketing, sales and all other activities, as well as its methodology of allocation of such costs;

viii. Any other cost of Mattel in any way associated with the Wee 3 Friends product line.

6.   Because of the wide range of areas that these Topics cover, it would be difficult for a witness or even a group of witnesses to prepare to provide complete and responsive testimony on each of these eighteen topics and subtopics. Information called for in these Topics would be located in, at least, the following areas: sales, marketing, product design, planning, production, accounting, finance, law, sales finance, consumer relations, market research, manufacturing, logistics, operations, vendors, packaging, and retail services, among others.

7.   I understand the topics seek a witness to testify regarding every single effort taken to market, advertise and promote the Wee 3 product in any manner for the approximately two years that it was sold. During those years, Mattel promoted Wee 3 products by television, print, online, and in other advertising such as retailers' circulars, and engaged in other promotional activities.

8.   I understand that the topics seek a witness to testify regarding every single communication that any Mattel employee had with any person outside of Mattel regarding the Wee 3 friends products over the approximately two years that it was sold. This will necessarily include communications between virtually every person in the sales department worldwide—who communicated with every one of Mattel's customers (from the senior corporate toy buyer to toy department assistant managers at individual retail stores), distributors, manufacturers, and a myriad of other various vendors worldwide for those years that Mattel developed and sold Wee 3 products. During those years, I estimate that hundreds, if not thousands, of Mattel employees globally (including temporary employees) working in or on behalf of Mattel's sales, marketing, and operations departments could have had communications regarding Wee 3 products with countless third parties around the world. I estimate that it would take a single person hundreds of hours just to try to identify which, of Mattel's thousands of employees, could have had such communications. It would take hundreds of additional hours for a single person to then attempt to collect and digest the collective memories of such conversations.

9. Just going through the information sought by the Topics would seemingly require months of work for a witness or witnesses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 28, 2010, at El Segundo, California.

_____
Sarah Buzby