1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
5   Facsimile: (213) 443-3100

6   Attorneys for Mattel, Inc.

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                  SOUTHERN DIVISION

10  MATTEL, INC., a Delaware            CASE NO. CV 04-9049 DOC (RNBx)
    corporation,                        Consolidated with
11                                      Case No. CV 04-09059
                   Plaintiff,           Case No. CV 05-02727
12
13         vs.                          Hon. David O. Carter

14  MGA ENTERTAINMENT, INC., a          **MATTEL, INC.'S COMBINED**
    California corporation, et al.,
15                                      **(1) REPLY IN SUPPORT OF CROSS-
                   Defendant.           MOTION TO COMPEL MGA PARTIES
16                                      TO EXECUTE A RELEASE TO
    AND CONSOLIDATED ACTIONS            PERMIT THE INTERNAL REVENUE
17                                      SERVICE TO DISCLOSE THE
                                        SUBPOENAED DOCUMENTS; AND**
18
    **PUBLIC REDACTED VERSION**         **(2) MATTEL, INC.'S OPPOSITION TO
19                                      MGA PARTIES' CROSS-MOTION FOR
                                        PROTECTIVE ORDER**
20
21                                      Date:   TBD
                                        Time:   TBD
22                                      Place:  Courtroom 9D

23                                      **Phase 2**
                                        Discovery Cut-off:  TBD
24                                      Pre-trial Conference:  TBD
                                        Trial Date:  TBD
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT .............................................................................................. 2

I. THE SUBPOENAED DOCUMENTS ARE NOT PROTECTED BY A QUALIFIED PRIVILEGE ................................................................. 2

    A. No Privilege Applies To The Documents ................................... 2

    B. Even If A Qualified Privilege Applies To The Documents, Mattel's Compelling Need Overcomes It .................................... 4

    C. The Blanket Motion to Quash/Protective Order That MGA Seeks Should Be Rejected In Any Event ............................................. 7

II. THE COURT SHOULD REJECT MGA'S PRIVACY OBJECTION ............. 8

III. MATTEL'S FOUR REQUESTS ARE NOT OVERBROAD ......................... 8

IV. THE COURT SHOULD ORDER MGA TO EXECUTE A RELEASE ........ 10

CONCLUSION ................................................................................................ 10

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>Cases</u>

4

<u>A. Farber & Partners, Inc. v. Garber,</u>

5    234 F.R.D. 186 (C.D. Cal. 2006)...............................................................4, 6, 7, 9

6

<u>Advante Int'l Corp. v. Mintel Learning Tech.,</u>

7    2006 WL 3511956 (N.D. Cal. Dec. 6, 2006) ........................................................ 6

8

<u>Aliotti v. The Vessel SENORA,</u>

9    217 F.R.D. 496 (N.D. Cal. 2003) ......................................................................... 3

10   <u>Asset Funding Group, LLC v. Adams & Reese, LLP,</u>

11   2008 WL 4186884 (E.D. La. Sept. 9, 2008) ........................................................ 3

12   <u>Chen v. Republic Restaurant Group,</u>

     2008 WL 2477523 (S.D.N.Y. June 19, 2008).....................................................3

13

<u>Contratto v. Ethicon, Inc.,</u>

14   227 F.R.D. 304 (N.D. Cal. 2005) ......................................................................... 2

15

<u>E. Auto Distributors, Inc. v. Peugeot Motors of Am., Inc.,</u>

16   96 F.R.D. 147 (E.D. Va. 1982).............................................................................. 3

17

<u>Flores v. Albertsons, Inc.,</u>

18   2002 WL 1163623 (C.D. Cal. April 9, 2002).......................................................3

19   <u>Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.,</u>

20   2006 WL 2255538 (E.D. Cal. Aug. 7, 2006) ....................................................... 2

21   <u>Hilt v. SFC Inc.,</u>

22   170 F.R.D. 182 (D. Kan. 1997) ............................................................................ 3

23   <u>In re Horn,</u>

     976 F.2d 1314 (9th Cir. 1992)..............................................................................7

24

25   <u>Johnson v. Kraft Foods N. Am., Inc.,</u>

     236 F.R.D. 535 (D. Kan. 2007) ............................................................................9

26

<u>Johnson v. Runnels,</u>

27   2009 WL 900755 (E.D. Cal. March 31, 2009)......................................................7

28

Karnazes v. County of San Mateo,
    2010 WL 1910522 (N.D. Cal. May 11, 2010) ......................................... 6

Moon v. SCP Pool Corp.,
    232 F.R.D. 633 (C.D. Cal. 2005)............................................................. 8

Premium Serv. Corp. v. Sperry & Hutchinson Co.,
    511 F.2d 225 (9th Cir. 1975) ................................................................. 2

Ronald C. Fish, a Law Corp. v. Watkins,
    2006 WL 411302 (D. Ariz. Feb. 17. 2006) ............................................ 6

United States v. Boyce,
    148 F. Supp. 2d 1069 (S.D. Cal. 2001) .................................................. 2

Upjohn Co. v. U.S.,
    449 U.S. 383 (1980) ............................................................................... 3

Valadez v. Aguallo,
    2009 WL 1464141 (N.D. Cal. May 26, 2009) ........................................ 3

WSC-Lakeside Investors, LLC v. Pulte Homes Corp.,
    2009 WL 3206538 (M.D. Fl. Oct. 5, 2009)............................................. 3

Young v. U.S.,
    149 F.R.D. 199 (S.D. Cal. 1993) ........................................................... 6

**Rules**

Fed. R. Civ. P. 45(c)(2)(B) ............................................................................ 8

MATTEL'S REPLY ISO CROSS-MOTION TO COMPEL MGA PARTIES TO EXECUTE A RELEASE

## Preliminary Statement

MGA proclaims that it "has produced to Mattel every single indemnity agreement between Carter Bryant and MGA that was submitted to the Internal Revenue Service."[1] Yet, the declaration MGA now offers *recants* the prior sworn testimony that MGA proffered just a week ago concerning what exactly MGA provided to the IRS.[2] It also flatly conflicts with the documentary evidence of what was provided to the IRS, as well as the sworn testimony of MGA's former CFO. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████[3]  MGA's former CFO testified, based on personal knowledge, that MGA dug up and relied on a confidential indemnification agreement to support that argument.[4]  No agreement requiring MGA to indemnify Bryant has been produced in this case.  MGA says no such agreement exists, but Mattel should not be required to take MGA's word at face value, particularly in the face of the substantial evidence to the contrary.

Indeed, the very purpose of discovery is to test the truth of MGA's assertions. The only way to find out, at present, if the indemnification agreement referenced in MGA's documents exists is to examine what MGA sent the IRS. That examination should be allowed to proceed.  Nor should MGA's belated and blanket privilege assertions permit it to thwart discovery.  This Court has already ruled repeatedly that indemnification and fee agreements are simply not privileged.  And, in any event, any conceivable privilege concerns can be obviated by a protocol that enables MGA to conduct a privilege review if appropriate.  MGA will not be prejudiced by an Order

---

[1]  Docket No. 8031 at 1.

[2]  <u>Compare</u> Lisa Tonnu Decl. at ¶ 9 (Littler and Keker retention letters were not provided to the IRS) (Docket No. 8033), <u>with</u> Mark Wine Decl. at ¶¶ 4-6 (Littler and Keker retention letters were provided to the IRS) (Docket No. 7857).

[3]  ████████████████████████████████████████████

████████████████████████████████████

compelling MGA to execute a release because if what MGA says is true, the documents sought by Mattel do not exist or have already been produced; and if MGA's statements about what was sent to the IRS are not accurate, Mattel is entitled to know that.

**Argument**

**I.   THE SUBPOENAED DOCUMENTS ARE NOT PROTECTED BY A QUALIFIED PRIVILEGE**

The Court has already ordered the production of all indemnity agreements.[5] MGA makes no argument that the information Mattel seeks is irrelevant. MGA also does attempt to support the § 6103 objection it raised in its motion to quash in its latest submission. Instead, MGA now argues, for the first time in its reply, that the information sought by Mattel's subpoena is protected by a qualified privilege. MGA waived that objection by failing to timely assert it,[6] and it has no merit in any event.

**A.   No Privilege Applies To The Documents**

There is a qualified privilege for federal tax returns, but Mattel is not seeking federal tax returns. The documents Mattel does seek are not privileged at all.

The Ninth Circuit has held that a qualified privilege applies to tax returns. See *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) ("*Tax returns* do not enjoy an absolute privilege from discovery. Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate *returns*.") (emphasis supplied) (internal citations omitted). However, Mattel is aware of no authority finding a qualified privilege for *pre-existing* documents submitted to the IRS.

---

[5]   Docket No. 7946 at 2.

[6]   See *United States v. Boyce*, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001) ("argument [] not presented in their moving papers . . . should not be considered now, as it is improper for a party to raise a new argument in a reply brief."); see also *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 309 n.5 (N.D. Cal. 2005) (striking new evidence submitted with reply papers and characterizing "the Defendants' attempt to introduce new evidence in connection with their reply papers [as] improper").

Just as a client cannot claim attorney-client privilege as to preexisting documents forwarded to an attorney,[7] a taxpayer cannot claim qualified privilege as to pre-existing documents forwarded to the IRS.

Indeed, Mattel is aware of no authority, and MGA has cited none, applying the qualified privilege to any documents submitted to the IRS other than Government-approved forms, schedules, and worksheets provided to facilitate the payment of taxes. See, e.g., Hilt v. SFC Inc., 170 F.R.D. 182, 189 (D. Kan. 1997) (applying qualified privilege test to Forms 1040, 1099-G, and W-2). Each of MGA's authorities applies the privilege only in that limited context.[8]

Thus, the privilege is simply inapplicable here. ████████████████
████████████████████████████████████████████████████████
██████████████████████████████████   The submissions of those

---

[7]   See Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist., 2006 WL 2255538, at *1 (E.D. Cal. Aug. 7, 2006) ("forwarding an e-mail . . . to an attorney does not transform it into the attorney's work product" and "forwarding an e-mail several times until it reaches an attorney does not amount to 'attorney client communication'"); see also Upjohn Co. v. U.S., 449 U.S. 383, 395 (1980) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

[8]   See E. Auto Distributors, Inc. v. Peugeot Motors of Am., Inc., 96 F.R.D. 147, 148 (E.D. Va. 1982) (denying "motion to compel the production of the defendant's tax returns"); Aliotti v. The Vessel SENORA, 217 F.R.D. 496, 497 (N.D. Cal. 2003) ("at issue is Defendant's entitlement to Plaintiff's tax returns"); Valadez v. Aguallo, 2009 WL 1464141, at *2 (N.D. Cal. May 26, 2009) ("this court is unpersuaded that defendants must be compelled to produce their tax records at this time"); Chen v. Republic Restaurant Group, 2008 WL 2477523, at *1 (S.D.N.Y. June 19, 2008) ("the Court finds that their request for Plaintiffs' tax returns is not reasonably calculated to lead to the discovery of admissible evidence"); WSC-Lakeside Investors, LLC v. Pulte Homes Corp., 2009 WL 3206538, at *1 (M.D. Fl. Oct. 5, 2009) ("tax return information"); Asset Funding Group, LLC v. Adams & Reese, LLP, 2008 WL 4186884, at *6 (E.D. La. Sept. 9, 2008) ("Any discussion of relevancy of the tax returns is pretermitted as Adams & Reese has not shown a compelling need."); Flores v. Albertsons, Inc., 2002 WL 1163623, at *3 (C.D. Cal. April 9, 2002) (compelling production of "all W-2 and 1099 Forms").

documents were not privileged.  Likewise, if MGA corresponded with the IRS regarding its indemnification obligations to Bryant, that correspondence would not be privileged either.  In fact, MGA has recognized as much—as demonstrated by its production of the IRS presentation that revealed MGA's indemnification obligations to Bryant, which has been used at deposition and has been put at issue in this motion, and which MGA has never claimed is privileged.  It is MGA's burden to show that its claimed privileges apply.  U.S. v. Blackman, 72 F.3d 1418, 1423 (9th Cir. 1995).  It has not met that burden as to the documents at issue here.

**B.** **Even If A Qualified Privilege Applies To The Documents, Mattel's Compelling Need Overcomes It**

Even assuming (contrary to fact and law) a qualified privilege applies to the documents at issue here, the documents properly may be produced.  A qualified privilege is overcome where (1) the documents are relevant, and (2) there is a compelling need for them because the information contained in the requested documents is not otherwise readily obtainable.  A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 190-91 (C.D. Cal. 2006).  If Mattel carries its burden of proving relevance, the burden shifts to MGA to "show that other sources exist from which the information is readily obtainable."[9]  Id.

Relevance is clear here.  Indeed, it is virtually undisputed: MGA concedes that the "documents relevant to this litigation are the indemnity agreements between MGA and Carter Bryant."[10]  MGA argues that there is no compelling need to obtain the

---

[9]  Although MGA did not raise the qualified privilege issue in its original motion to quash, Mattel raised this issue in its opposition and specifically cited Garber in an abundance of caution.  Docket No. 7946 at 8 n.21.  Garber applied the qualified privilege test to "tax returns and related documents," where the "related documents" were limited to "documents related to paying taxes and tax liens."  234 F.R.D. at 191 n.3.

[10]  Docket No. 8031 at 8.  The Court has already determined that any indemnification agreement with Carter Bryant would be "relevant to the issues of bias and control."  Order Regarding Discovery Matters dated January 26, 2010, at 3

-4-

1  documents from the IRS because "they are available from MGA and have already been

2  produced,"[11] but, as discussed, that is at best the subject of conflicting evidence. ▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮  It is beyond dispute that the agreement – which Mr. Wing obtained after the

9  Phase 1 trial – could not be the September 2000 Bratz agreement between MGA and

10 Bryant since, among other things, that agreement had already been publicly disclosed at

11 Phase 1 trial.

12  MGA now asserts that "Wing lacks personal knowledge of the presentation or

13 documents submitted to the IRS."[14] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MGA also

15 offers a declaration from Ms. Tonnu that only two documents—the September 2000

16 MGA/Bryant contract and a May 2004 modification—were submitted to the IRS

17 regarding the indemnity issue.[16] But that very assertion contradicts MGA's prior sworn

18 claims, in particular MGA's counsel's recent declaration that the Littler and Keker

19 retention letters "were provided to the IRS in connection with an issue over the

20

21  (Docket No. 7434). Moreover, proof of MGA's indemnification obligations to
   Bryant would directly conflict with MGA's Phase 1 testimony, showing obstruction
22  of justice and other RICO predicate acts that are the subject of Mattel's Phase 2
23  claims.

24  [11] Docket No. 8031 at 8.

25  [12] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  [13]

    [14] Docket No. 8031 at 4.

    [15] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  [16] Lisa Tonnu Decl. at ¶¶ 6-7.

1  deductibility of attorney's fees" and "no other agreement between MGA and Carter

2  Bryant related to indemnification of Carter Bryant by MGA was identified."[17]

3        There clearly is a compelling need to see just what MGA sent to, and said to, the

4  IRS about its obligations to pay Bryant's legal fees.  MGA would have the Court

5  believe that it told the IRS that MGA had an obligation to indemnify Bryant (rendering

6  its deduction of such expenses proper), but then, when pressed to support its

7  deductions, *only* provided documents to the IRS that, according to MGA, show the

8  *exact opposite*—that Bryant had an obligation to indemnify MGA, and not vice versa.[18]

9  There is a compelling need to obtain the information directly from the IRS to resolve

10  these inconsistencies, and in particular to resolve the conflicting testimony of Wing and

11  Tonnu.  Garber, 234 F.R.D. 186 at 191.[19]  Indeed, the very purpose of discovery is to

12

---

13   [17]   Mark Wine Decl. at ¶¶ 4-5 (Docket No. 7857).

14   [18]   Lisa Tonnu Decl. at ¶ 7 ("Other than these two documents [the September
15  2000 contract and the May 2004 modification] I produced no documents to the IRS
   related to any agreements of any kind between MGA and Carter Bryant.");
16
17
18
19   [19]   Other district courts within this circuit routinely grant motions to compel the
   production of tax returns or related documents.  See, e.g., Karnazes v. County of San
20  Mateo, 2010 WL 1910522, at *6 (N.D. Cal. May 11, 2010) ("Thus, the Court finds
   that Defendants are entitled to Plaintiff's business and personal tax returns for years
21  2007- 2008, and bank statements for all accounts controlled by Plaintiff for August
22  2007-August 2008."); Advante Int'l Corp. v. Mintel Learning Tech., 2006 WL
   3511956, at *1 (N.D. Cal. Dec. 6, 2006) ("Advante has adequately shown that both
23  that complete financial information is relevant to defending against Mintel's
24  damages claims and that deficiencies in Mintel's other financial records create a
   compelling need for disclosure of the tax returns."); Ronald C. Fish, a Law Corp. v.
25  Watkins, 2006 WL 411302, at *2 (D. Ariz. Feb. 17. 2006) ("Thus, the Court finds
26  the tax returns are relevant and that a 'compelling need' for them exists, and will
   accordingly grant Defendants' Motion to Compel."); Young v. U.S., 149 F.R.D. 199,
27  205 (S.D. Cal. 1993) ("The court holds that the plaintiff's tax returns from the time
28  of the accident to the present are not privileged and are discoverable.").

allow Mattel to test MGA's assertions – a purpose scarcely advanced by merely accepting one side of MGA's conflicting claims.

### C.   The Blanket Motion to Quash/Protective Order That MGA Seeks Should Be Rejected In Any Event

There is no basis for the blanket protective order that MGA demands.  Such a blanket order quashing the subpoena would be both unnecessary and improper.  In re Horn, 976 F.2d 1314, 1318 (9th Cir. 1992) (noting that "blanket assertions" of privilege in a motion to quash "are highly disfavored" and that the "proper procedure" is to assert the privilege "as to particular documents"); Johnson v. Runnels, 2009 WL 900755, at *3, *6 (E.D. Cal. March 31, 2009) (noting that "blanket assertions of a privilege are extremely disfavored" and "refusal to produce discovery based on a blanket assertion of privilege and without a proper privilege log is clearly not an appropriate response to the discovery request").  This Court, too, previously has rejected MGA's blanket assertions of privilege as a basis for thwarting discovery.[20]

In any event, to the extent that Mattel's subpoena would require the production of any privileged documents, MGA's privilege concerns can easily be satisfied through a protocol for privilege review.  Such protocols have been agreed to throughout this case.  For example, when Mattel subpoenaed documents from Mr. Wing, it agreed that MGA could conduct a review of the documents for privilege before they were turned over to Mattel.[21]  Although MGA then abused that protocol by withholding clearly non-privileged documents from Mattel,[22] Mattel has no objection to MGA conducting a privilege review of the documents at issue here once they are produced by the IRS.

---

[20]   Docket No. 608 at 5.
[21]   See Mattel, Inc.'s Opposition to the MGA Parties' Motion To Overrule Certain Discovery Master Rulings at the Deposition of Brian Wing, dated March 1, 2010, at 4-5.
[22]   Id. at 5.

## II.   THE COURT SHOULD REJECT MGA'S PRIVACY OBJECTION

In addition to asserting a qualified privilege, MGA refers (again improperly for the first time on reply) to "a constitutionally-based right of privacy that can be raised in response to discovery requests."[23]  Aside from having waived this issue by failing to timely assert it, the Protective Order adequately addresses MGA's concerns, as the Court has held repeatedly in this case.[24]  Garber, 234 F.R.D. at 191 ("Here, plaintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order.").[25]

## III.   MATTEL'S FOUR REQUESTS ARE NOT OVERBROAD

Although it does not contest the relevance of the information Mattel seeks, MGA argues that the requests are overbroad.  They are not.

Request 1 seeks the documents provided by MGA to the IRS referring or relating to any agreement between MGA and Bryant—clearly, a legitimate inquiry.  MGA claims this request is overbroad because the documents could discuss "MGA's tax treatment of any payment by MGA to Bryant, including royalties or wages."[26]  MGA makes the same objection to Request 2, which seeks communications between the IRS and MGA referring or relating to Bryant and/or legal fees paid on his behalf.  The

---

[23]   Docket No. 8031 at 3.

[24]   See July 2, 2007 Order, at 3 (Docket No. 608) (noting the "strict protective order" and affirming the Discovery Master's order compelling the production of trade secret documents).  Phase 2 Discovery Matter Order No. 6, dated March 13, 2009, at 7 (Docket No. 5018) (stating that the existence of the Protective Order is "crucial to analyzing the privacy concerns raised by MGA Entertainment").

[25]   MGA supports its belated privacy objection by citing its Objections to Notice of Subpoena Issued By Mattel to the Internal Revenue Service, dated May 20, 2010.  Docket No. 8031 at 4 & n.1.  However, those objections were ineffective.  "A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash."  Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005); see Fed. R. Civ. P. 45(c)(2)(B).

[26]   Docket No. 8031 at 5.

argument does not withstand scrutiny. As Mattel stated in its opposition, and as MGA has not disputed, the issue between MGA and the IRS was the deductibility of MGA's payments for Bryant's *legal fees*.[27] The IRS presentation does not identify the tax treatment of payments for Bryant's royalties and wages as disputed. Thus, the mere theoretical possibility that a document relating to payments for Bryant's royalties, rather than his legal fees, could be uncovered hardly is a basis to complain about overbreadth. And, in any case, documents relating to royalty and wage payments to Bryant—like indemnification payments on Bryant's behalf—are relevant to bias and control and, indeed, such documents have been compelled previously.[28] They too are properly discoverable.

Request 3 seeks all communications between January 1 and May 1, 2009 referring or relating to MGA's tax treatment of legal expenses incurred in connection with this litigation. According to MGA, this request is overbroad because it includes legal expenses other than Bryant's, but no other legal expenses appear to have even been disputed, and MGA provides no evidence showing that its hypothetical overbreadth complaint has any basis in fact.

Request 4 seeks all presentations, submissions and materials submitted by MGA to the IRS between January 1 and May 1, 2009. Although it is not limited by subject matter, this request is temporally limited to the four-month period immediately before and after the IRS presentation was submitted to the IRS. It is not overbroad because the remaining three substantive issues addressed in the IRS presentation are relevant to Mattel's RICO, fraudulent transfer, and other state law claims. Issue 1 of the IRS presentation relates to the licensing of Bratz intellectual property between MGA-controlled subsidiaries, Issues 2 and 4 relate to payments between those subsidiaries,

---

[27] Docket No. 7946 at 5.
[28] See Discovery Master Order dated May 16, 2007, at 10 (compelling production of Request 45: "All of YOUR royalty statements to or for BRYANT").

1    and Issue 3 relates to the tax treatment of Bryant's legal fees.[29]  These topics are

2    reasonably calculated to lead to the discovery of admissible evidence.  Moreover, it is

3    appropriate to evaluate all the documents submitted by MGA to the IRS during this

4    narrow window of time to ensure that, when conducting a review for responsiveness,

5    the IRS does not overlook documents responsive to Requests 1 through 3.  The Court

6    should reject MGA's argument that the production be limited in the narrowest, artificial

7    sense to indemnity agreements between MGA and Bryant, and should uphold the

8    subpoena as drafted.

9    **IV.     THE COURT SHOULD ORDER MGA TO EXECUTE A RELEASE**

10           The IRS has asserted a § 6103 objection to Mattel's subpoena, making a MGA

11   release necessary.[30]  MGA does not contest that the Court has authority to compel

12   MGA to execute a release that complies with 26 C.F.R. § 301.6103(c)-1.  Since the IRS

13   has asserted a § 6103 objection, Mattel has exhausted its remedies against the IRS, and

14   the Court should entertain Mattel's motion to compel.[31]  Johnson v. Kraft Foods N.

15   Am., Inc., 236 F.R.D. 535, 540 (D. Kan. 2007); Garber, 234 F.R.D. at 190.[32]

16                                        Conclusion

17           Mattel respectfully requests that the Court deny MGA's motion to quash and

18   cross-motion for a protective order, and grant Mattel's cross-motion to compel MGA to

19   execute IRS Form 8821 and authorize the release of all documents responsive to

20   Mattel's subpoena to the IRS.  Because the IRS provided a specific form of release with

21      [29]   Id. at MGA2 0540851, 855, 858, 859, 861, 862, 864.

22      [30]   On June 1, 2010, Mattel received a letter from the IRS, dated May 13, 2010,

23   which cited § 6103, objected to production of the subpoenaed documents, and
     attached a form of release.  See Appendix A.

24      [31]   Docket No. 7946 at 9.

25      [32]   In Garber, the Court stated that "[i]f the supplemental responses to plaintiff
     do not include documents from nonparties . . . Internal Revenue Service and the

26   California Franchise Tax Board, defendant Garber shall sign releases to those

27   businesses or governmental entities so plaintiff can obtain defendant Garber's
     documents, no later than thirty (30) days from the date of this Order."  234 F.R.D. at

28   195.

1    its recent correspondence, Mattel requests that MGA be ordered to execute that form,

2    which is submitted herewith, rather than the one originally submitted by Mattel. Mattel

3    does not object to a protocol whereby the documents will be sent by the IRS directly to

4    MGA, so long as MGA is then bound to produce all non-privileged documents to

5    Mattel and log any documents it is withholding on privilege grounds.

6

7    DATED:  June 2, 2010            QUINN EMANUEL URQUHART & SULLIVAN. LLP

8

9

10                                By _/s/ Dylan Proctor_
                                  B. Dylan Proctor
                                  Attorneys for Mattel. Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX A

00505.07975/3523964.1

-12-



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

May 13, 2010

B. Dylan Proctor
Quinn Emanuel Urquhart & Sullivan, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017

Dear B. Dylan Proctor:

I am responding to the subpoena issued in the case titled Mattel, Inc., vs MGA
Entertainment, Inc., received in our office on May 5, 2010.  The subpoena requires the
production of Internal Revenue Service (IRS) records pertaining to MGA Entertainment,
Inc. in a civil action court proceeding on May 30, 2010.

Tax records are confidential and may not be disclosed unless specifically authorized by
Internal Revenue Code section 6103.  The IRS is not relieved from complying with the
provisions of 6103 merely because a subpoena has been served.  Since the information
you are seeking pertains to taxpayers other than yourself, and you have not provided
proper authorization from those taxpayers, we are unable to release any information to
you and will consider this subpoena withdrawn.

Before we can consider releasing the requested information to you, we must receive
[taxpayer name]'s written consent.  The consent must be a separate written document
pertaining solely to the authorized disclosure.  It must include the following:

- Name, address, and social security number of the taxpayer

- Type of return or return information to be disclosed

- Taxable period or year covered

- Identity of the person to whom the disclosure is to be made

- Signature of the taxpayer and date signed

For your convenience, I have enclosed Form 8821, Tax Information Authorization.
When properly completed, this form satisfies all requirements for a valid consent.  The
IRS must receive the consent within 120 days of the signature date.

2

As an alternative, you may be able to receive tax information through routine agency procedures, using the enclosed Form 4506, Request for Copy of Tax Return. Instructions and mailing information are on the back of the form.

The $15.00 payment submitted with your request is also enclosed.

If you have any questions please call me at 801-620-7638 or write to: Internal Revenue Service, Disclosure Scanning Operation, 2385 Chamblee Tucker Road, Stop 93A, Chamblee, GA 30341.  Please refer to case number S10131-0001.

Sincerely,

Denise Higley

Denise Higley, ID #0142331
Disclosure Specialist
Disclosure Office 12

Enclosure

Form **8821**

(Rev. August 2008)
Department of the Treasury
Internal Revenue Service

# Tax Information Authorization

▶ Do not sign this form unless all applicable lines have been completed.

▶ Do not use this form to request a copy or transcript of your tax return.
Instead, use Form 4506 or Form 4506-T.

OMB No. 1545-1165

**For IRS Use Only**

Received by:

Name

Telephone (       )

Function

Date       /       /

---

**1   Taxpayer information.** Taxpayer(s) must sign and date this form on line 7.

| Taxpayer name(s) and address (type or print) | Social security number(s) | Employer identification number |
|---|---|---|
| | Daytime telephone number (       ) | Plan number (if applicable) |

---

**2   Appointee.** If you wish to name more than one appointee, attach a list to this form.

| Name and address | CAF No. .............................................. |
|---|---|
| | Telephone No. ....................................... |
| | Fax No. ................................................ |
| | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

---

**3   Tax matters.** The appointee is authorized to inspect and/or receive confidential tax information in any office of the IRS for the tax matters listed on this line. Do not use Form 8821 to request copies of tax returns.

| (a) Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty | (b) Tax Form Number (1040, 941, 720, etc.) | (c) Year(s) or Period(s) (see the instructions for line 3) | (d) Specific Tax Matters (see Instr.) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions on page 4. If you check this box, skip lines 5 and 6 ▶ ☐

**5   Disclosure of tax information** (you must check a box on line 5a or 5b unless the box on line 4 is checked):

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**b** If you do not want any copies of notices or communications sent to your appointee, check this box . . . . . ▶ ☐

**6   Retention/revocation of tax information authorizations.** This tax information authorization automatically revokes all prior authorizations for the same tax matters you listed on line 3 above unless you checked the box on line 4. If you do not want to revoke a prior tax information authorization, you must attach a copy of any authorizations you want to remain in effect and check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

To revoke this tax information authorization, see the instructions on page 4.

**7   Signature of taxpayer(s).** If a tax matter applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters/periods on line 3 above.

▶ IF NOT SIGNED AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.

▶ DO NOT SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.

| Signature | Date | Signature | Date |
|---|---|---|---|
| Print Name | Title (if applicable) | Print Name | Title (if applicable) |
| ☐ ☐ ☐ ☐ ☐ PIN number for electronic signature | | ☐ ☐ ☐ ☐ ☐ PIN number for electronic signature | |

---

For Privacy Act and Paperwork Reduction Act Notice, see page 4.          Cat. No. 11596P          Form **8821** (Rev. 8-2008)

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

Form 8821 authorizes any individual, corporation, firm, organization, or partnership you designate to inspect and/or receive your confidential information in any office of the IRS for the type of tax and the years or periods you list on Form 8821. You may file your own tax information authorization without using Form 8821, but it must include all the information that is requested on Form 8821.

Form 8821 does not authorize your appointee to advocate your position with respect to the federal tax laws; to execute waivers, consents, or closing agreements; or to otherwise represent you before the IRS. If you want to authorize an individual to represent you, use Form 2848, Power of Attorney and Declaration of Representative.

Use Form 4506, Request for Copy of Tax Return, to get a copy of your tax return.

Use Form 4506-T, Request for Transcript of Tax Return, to order: (a) transcript of tax account information and (b) Form W-2 and Form 1099 series information.

Use Form 56, Notice Concerning Fiduciary Relationship, to notify the IRS of the existence of a fiduciary relationship. A fiduciary (trustee, executor, administrator, receiver, or guardian) stands in the position of a taxpayer and acts as the taxpayer. Therefore, a fiduciary does not act as an appointee and should not file Form 8821. If a fiduciary wishes to authorize an appointee to inspect and/or receive confidential tax information on behalf of the fiduciary, Form 8821 must be filed and signed by the fiduciary acting in the position of the taxpayer.

### When To File

Form 8821 must be received by the IRS within 60 days of the date it was signed and dated by the taxpayer.

### Where To File Chart

| IF you live in . . . | THEN use this address . . . | Fax Number* |
|---|---|---|
| Alabama, Arkansas, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, or West Virginia | Internal Revenue Service Memphis Accounts Management Center PO Box 268, Stop 8423 Memphis, TN 38101-0268 | 901-546-4115 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wisconsin, or Wyoming | Internal Revenue Service 1973 N. Rulon White Blvd. MS 6737 Ogden, UT 84404 | 801-620-4249 |
| All APO and FPO addresses, American Samoa, nonpermanent residents of Guam or the Virgin Islands**, Puerto Rico (or if excluding income under section 933), a foreign country, U.S. citizens and those filing Form 2555, 2555-EZ, or 4563. | Internal Revenue Service International CAF DP: SW-311 11601 Roosevelt Blvd. Philadelphia, PA 19255 | 215-516-1017 |

*These numbers may change without notice.

**Permanent residents of Guam should use Department of Taxation, Government of Guam, P.O. Box 23607, GMF, GU 96921; permanent residents of the Virgin Islands should use: V.I. Bureau of Internal Revenue, 9601 Estate Thomas Charlotte Amalie, St. Thomas, V.I. 00802.

## Where To File

Generally, mail or fax Form 8821 directly to the IRS. See the *Where To File Chart* on page 2. Exceptions are listed below.

If Form 8821 is for a specific tax matter, mail or fax it to the office handling that matter. For more information, see the instructions for line 4.

Your representative may be able to file Form 8821 electronically with the IRS from the IRS website. For more information, go to *www.irs.gov*. Under the *Tax Professionals* tab, click on *e-services–Online Tools for Tax Professionals*. If you complete Form 8821 for electronic signature authorization, do not file a Form 8821 with the IRS. Instead, give it to your appointee, who will retain the document.

## Revocation of an Existing Tax Information Authorization

If you want to revoke an existing tax information authorization and do not want to name a new appointee, send a copy of the previously executed tax information authorization to the IRS, using the *Where To File Chart* on page 2. The copy of the tax information authorization must have a current signature and date of the taxpayer under the original signature on line 7. Write "REVOKE" across the top of Form 8821. If you do not have a copy of the tax information authorization you want to revoke, send a statement to the IRS. The statement of revocation or withdrawal must indicate that the authority of the appointee is revoked, list the tax matters and periods, and must be signed and dated by the taxpayer or representative. If the taxpayer is revoking, list the name and address of each recognized appointee whose authority is revoked. When the taxpayer is completely revoking authority, the form should state "remove all years/periods" instead of listing the specific tax matters, years, or periods. If the appointee is withdrawing, list the name, TIN, and address (if known) of the taxpayer.

To revoke a specific use tax information authorization, send the tax information authorization or statement of revocation to the IRS office handling your case, using the above instructions.

## Taxpayer Identification Numbers (TINs)

TINs are used to identify taxpayer information with corresponding tax returns. It is important that you furnish correct names, social security numbers (SSNs), individual taxpayer identification numbers (ITINs), or employer identification numbers (EINs) so that the IRS can respond to your request.

## Partnership Items

Sections 6221-6234 authorize a Tax Matters Partner to perform certain acts on behalf of an affected partnership. Rules governing the use of Form 8821 do not replace any provisions of these sections.

## Representative Address Change

If the representative's address has changed, a new Form 8821 is not required. The representative can send a written notification that includes the new information and their signature to the location where the Form 8821 was filed.

## Specific Instructions

### Line 1. Taxpayer Information

*Individuals.* Enter your name, TIN, and your street address in the space provided. Do not enter your appointee's address or post office box. If a joint return is used, also enter your spouse's name and TIN. Also enter your EIN if applicable.

*Corporations, partnerships, or associations.* Enter the name, EIN, and business address.

*Employee plan or exempt organization.* Enter the name, address, and EIN of the plan sponsor or exempt organization, and the plan name and three-digit plan number.

*Trust.* Enter the name, title, and address of the trustee, and the name and EIN of the trust.

*Estate.* Enter the name, title, and address of the decedent's executor/personal representative, and the name and identification number of the estate. The identification number for an estate includes both the EIN, if the estate has one, and the decedent's TIN.

### Line 2. Appointee

Enter your appointee's full name. Use the identical full name on all submissions and correspondence. Enter the nine-digit CAF number for each appointee. If an appointee has a CAF number for any previously filed Form 8821 or power of attorney (Form 2848), use that number. If a CAF number has not been assigned, enter "NONE," and the IRS will issue one directly to your appointee. The IRS does not assign CAF numbers to requests for employee plans and exempt organizations.

If you want to name more than one appointee, indicate so on this line and attach a list of appointees to Form 8821.

Check the appropriate box to indicate if either the address, telephone number, or fax number is new since a CAF number was assigned.

### Line 3. Tax Matters

Enter the type of tax, the tax form number, the years or periods, and the specific tax matter. Enter "Not applicable," in any of the columns that do not apply.

For example, you may list "Income, 1040" for calendar year "2005" and "Excise, 720" for "2006" (this covers all quarters in 2006). For multiple years or a series of inclusive periods, including quarterly periods, you may list 2004 through (thru or a hyphen) 2006. For example, "2004 thru 2006" or "2nd 2005–3rd 2006." For fiscal years, enter the ending year and month, using the YYYYMM format. Do not use a general reference such as "All years," "All periods," or "All taxes." Any tax information authorization with a general reference will be returned.

You may list the current year or period and any tax years or periods that have already ended as of the date you sign the tax information authorization. However, you may include on a tax information authorization only future tax periods that end no later than 3 years after the date the tax information authorization is received by the IRS. The 3 future periods are determined starting after December 31 of the year the tax information authorization is received by the IRS. You must enter the type of tax, the tax form number, and the future year(s) or period(s). If the matter relates to estate tax, enter the date of the decedent's death instead of the year or period.

In column (d), enter any specific information you want the IRS to provide. Examples of column (d) information are: lien information, a balance due amount, a specific tax schedule, or a tax liability.

For requests regarding Form 8802, Application for United States Residency Certification, enter "Form 8802" in column (d) and check the specific use box on line 4. Also, enter the appointee's information as instructed on Form 8802.

**Note.** If the taxpayer is subject to penalties related to an individual retirement account (IRA) account (for example, a penalty for excess contributions) enter, "IRA civil penalty" on line 3, column a.

## Line 4. Specific Use Not Recorded on CAF

Generally, the IRS records all tax information authorizations on the CAF system. However, authorizations relating to a specific issue are not recorded.

Check the box on line 4 if Form 8821 is filed for any of the following reasons: (a) requests to disclose information to loan companies or educational institutions, (b) requests to disclose information to federal or state agency investigators for background checks, (c) application for EIN, or (d) claims filed on Form 843, Claim for Refund and Request for Abatement. If you check the box on line 4, your appointee should mail or fax Form 8821 to the IRS office handling the matter. Otherwise, your appointee should bring a copy of Form 8821 to each appointment to inspect or receive information. A specific-use tax information authorization will not revoke any prior tax information authorizations.

## Line 6. Retention/Revocation of Tax Information Authorizations

Check the box on this line and attach a copy of the tax information authorization you do not want to revoke. The filing of Form 8821 will not revoke any Form 2848 that is in effect.

## Line 7. Signature of Taxpayer(s)

*Individuals.* You must sign and date the authorization. Either husband or wife must sign if Form 8821 applies to a joint return.

*Corporations.* Generally, Form 8821 can be signed by: (a) an officer having legal authority to bind the corporation, (b) any person designated by the board of directors or other governing body, (c) any officer or employee on written request by any principal officer and attested to by the secretary or other officer, and (d) any other person authorized to access information under section 6103(e).

*Partnerships.* Generally, Form 8821 can be signed by any person who was a member of the partnership during any part of the tax period covered by Form 8821. See *Partnership Items* on page 3.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

## Privacy Act and Paperwork Reduction Act Notice

We ask for the information on this form to carry out the Internal Revenue laws of the United States. Form 8821 is provided by the IRS for your convenience and its use is voluntary. If you designate an appointee to inspect and/or receive confidential tax information, you are required by section 6103(c) to provide the information requested on Form 8821. Under section 6109, you must disclose your social security number (SSN), employer identification number (EIN), or individual taxpayer identification number (ITIN). If you do not provide all the information requested on this form, we may not be able to honor the authorization.

The IRS may provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. possessions to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is: **Recordkeeping**, 6 min.; **Learning about the law or the form,** 12 min.; **Preparing the form,** 24 min.; **Copying and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 8821 simpler, we would be happy to hear from you. You can write to Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. **Do not send** Form 8821 to this address. Instead, see the *Where To File Chart* on page 2.

Form **4506**

(Rev. January 2010)

Department of the Treasury
Internal Revenue Service

### Request for Copy of Tax Return

▶ Request may be rejected if the form is incomplete or illegible.

OMB No. 1545-0429

**Tip.** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a Tax Return Transcript for many returns free of charge. The transcript provides most of the line entries from the original tax return and usually contains the information that a third party (such as a mortgage company) requires. See Form 4506-T, Request for Transcript of Tax Return, or you can call 1-800-829-1040 to order a transcript.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code

**4** Previous address shown on the last return filed if different from line 3

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax return.

*Caution. If the tax return is being mailed to a third party, ensure that you have filled in line 6 and line 7 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy.*

**6** Tax return requested. Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶

Note. *If the copies must be certified for court or administrative proceedings, check here* . . . . . . . . . . . ☐

**7** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than eight years or periods, you must attach another Form 4506.

**8** Fee. There is a $57 fee for each return requested. Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN or EIN and "Form 4506 request" on your check or money order.

| | | |
|---|---|---|
| **a** Cost for each return . . . . . . . . . . . . . . | $ | 57.00 |
| **b** Number of returns requested on line 7 . . . . . . . . | | |
| **c** Total cost. Multiply line 8a by line 8b . . . . . . . . . | $ | |

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . . ☐

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. Note. *For tax returns being sent to a third party, this form must be received within 120 days of signature date.*

Telephone number of taxpayer on line 1a or 2a

**Sign Here**

▶ Signature (see instructions)                                    Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                                              Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 41721E          Form **4506** (Rev. 1-2010)