1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      John B. Quinn (Bar No. 090378)
2       (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3       (michaelzeller@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
5   Facsimile:   (213) 443-3100

6   Attorneys for Mattel, Inc.

7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      SOUTHERN DIVISION

11  MATTEL, INC., a Delaware            CASE NO. CV 04-9049 DOC (RNBx)
    corporation, et al.,
12                                      Consolidated with
              Plaintiffs,               Case No. CV 04-09059
13                                      Case No. CV 05-02727
         vs.
14                                      **Hon. David O. Carter**
    MGA ENTERTAINMENT, INC., a
15  California corporation, et al.,     MATTEL, INC.'S OPPOSITION TO
                                        MGA'S *EX PARTE* APPLICATION
16            Defendants.               TO COMPEL DOCUMENTS FROM
                                        MATTEL CUSTODIAN SUJATA
17  _____ LUTHER PRIOR TO HER JUNE 17
                                        DEPOSITION; AND
18  AND CONSOLIDATED ACTIONS
                                        DECLARATION OF MARSHALL M.
19                                      SEARCY
    **PUBLIC REDACTED VERSION**
20                                      **Phase 2**
21                                      Discovery Cut–off:   TBD
                                        Pre–trial Conference:   TBD
22                                      Trial Date:   TBD

23

24

25

26

27

28

00505.07975/3525363.1

MATTEL. INC.'S OPPOSITION TO MGA'S EX PARTE APPLICATION

**Preliminary Statement**

MGA's *ex parte* application is misleading and should be denied.  MGA suggests that Mattel has produced only a handful of documents relating to Sujata Luther, claiming it is "simply not possible that Ms. Luther . . . received only one email" while at Mattel.  App. at 2.  But as MGA knows and fails to disclose to the Court, Mattel has produced more than *1,600* documents that include Ms. Luther's name, including over *870* email chains that include Ms. Luther as author or recipient.

MGA's actual purported complaint seems to be that, despite this large production of documents directly related to Ms. Luther, Mattel has produced only a limited number of documents for which Ms. Luther has been identified by name as the "custodian."  This is a red herring.  Ms. Luther left Mattel in February 2006, after having re-joined Mattel in 2003.  Mattel has reviewed Ms. Luther's hard copy files, the hard drive from her computer and other reasonably accessible electronic sources in an effort to find responsive documents.  Mattel has produced the responsive, non-privileged documents it located after that search.  It is hardly surprising that an ex-employee who left Mattel four years ago was not listed as the formal custodian of documents that Mattel collected and produced after her departure since she was not the custodian at the time.  What matters here is not who is listed as a custodian of documents Mattel has produced, but rather that Mattel has searched the appropriate sources and produced many hundreds of documents and emails relating to Ms. Luther.  Mattel has done so.  MGA does not dispute those facts; it simply ignores them.  Its application should be denied.

## **Factual Background**

Sujata Luther's Employment at Mattel.   In its application, MGA asserts that Ms. Luther spent "nearly 17 years at Mattel."  App. at 3.  In fact, the 17-year period that MGA mentions took place between 1984 and 2000.[1]  During that time, Ms. Luther worked as a Marketing Research Analyst, and by 2000, when she left Mattel, Ms. Luther had become Senior Vice President of International Marketing.  Ms. Luther returned to Mattel from 2003-2006, taking the position of Senior Vice President of Business and Consumer Strategy.[2]  In that role, she oversaw the Mattel consumer research department, which was responsible for consumer research for Mattel brands.[3]

Years Into This Litigation, MGA Seeks Ms. Luther's Deposition.  During this litigation, Mattel has produced at least 1,625 documents containing Ms. Luther's name as an author, recipient or subject, including at least 870 email chains to or from Ms. Luther.[4]  On April 6, 2010, some six years into this litigation, MGA for the first time requested Ms. Luther's deposition.[5]  The parties agreed that the deposition would begin on May 27.[6]  Although Mattel had already produced the hundreds of documents described above, Mattel informed MGA that it intended to produce any additional "responsive, non-privileged documents relating to Luther that we have located to date."[7]  On May 14, 2010, after completing further review of the hard drive Ms. Luther used from 2003-2006, her hard-copy files and emails stored in electronic files, Mattel produced the few additional non-privileged documents that it located which were responsive to MGA's requests.[8]

---

[1]   See M 1504717.
[2]   See M 1504773-782; M 1504835.
[3]   Id.
[4]   Declaration of Marshall M. Searcy, filed concurrently, ("Searcy Decl."), ¶ 4.
[5]   Email from D. Fishman to S. Watson, dated April 6, 2010.
[6]   Email from S. Watson to D. Fishman, dated April 30, 2010.
[7]   Email from M. Searcy to D. Mingrone, dated May 12, 2010.
[8]   Searcy Decl., ¶¶ 2-4; see also M 1503261-4435, M 1504680-852.

1     <u>The Meet and Confer.</u>  The parties met and conferred on May 20, 2010.

2 During this conference, MGA identified two types of documents, allegedly created

3 by Ms. Luther, which MGA believed had not been produced: ████████████

4 ████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████ but agreed to search

9 further if MGA was willing to provide additional information about these purported

10 documents.[11]  MGA has never provided any such information.

11     Further, as a compromise, Mattel offered during the parties' conferences on

12 May 20 and 24 that, if MGA would provide requested search terms, Mattel would

13 run those terms on Ms. Luther's hard drive, provided that MGA were willing to

14 agree to the same search terms arrangement for MGA's witnesses.[12]  MGA

15 expressly refused, stating that it was not willing to agree to any such reciprocity.[13]

16 As the Court has noted previously, MGA's continuing, one-sided refusals to permit

17 transparency into its own document collection and production is improper.[14]

18

19

20

21

22

23   [9] Searcy Decl., ¶ 5.
  [10] Id., ¶ 6.

24   [11] In its application, MGA refers to "consumer market studies," rather than "consumer reports." However, Mattel has not located any such documents in Ms. Luther's files.

25   [12] Searcy Decl., ¶ 7.

26   [13] Email from D. Mingrone to M. Searcy, dated May 26, 2010 ("[W]e will accept your offer to provide search terms provided it is not conditioned on reciprocity.").

27   [14] Hearing Tr., dated March 11, 2010, at 27:16-28:22 (The Court: "[The]

28 position has been consistent from Mattel, you know, transparency, transparency, transparency.").

1

<u>**Argument**</u>

2   **I.     <u>MATTEL HAS CONDUCTED A REASONABLE, DILIGENT SEARCH</u>**

3   **<u>AND PRODUCED RESPONSIVE, NON-PRIVILEGED DOCUMENTS</u>**

4   **A.     <u>MGA's Application Is Factually Meritless And Contrary To Prior</u>**

5   **<u>Rulings</u>**

6          As required by <u>Fed. R. Civ. P.</u> 26 and 34, Mattel has performed a reasonable,

7   good faith search for documents related to Ms. Luther.   Mattel preserved and

8   collected Ms. Luther's hard drive from her 2003-2006 stint at Mattel, as well as hard

9   copy documents, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[15]   Mattel

10  reviewed those documents and produced those that were responsive and non-

11  privileged. Mattel has satisfied its obligations under <u>Rules</u> 26 and 34.

12         Mattel's searches of the reasonably accessible sources likely to have Ms.

13  Luther's documents and information, along with the other document collection

14  efforts Mattel has undertaken in this case, resulted in the production of over a

15  thousand responsive documents relating to Ms. Luther.  Yet MGA fails to disclose

16  these Luther documents anywhere in its application.  Instead, it argues that Mattel

17  must conduct a search of "*all* Mattel servers, hard drives and any other locations that

18  potentially house Ms. Luther's documents . . . ." App. at 7.  Such an unbounded and

19  undefined search, however, goes far beyond anything contemplated by <u>Rules</u> 26 and

20  34.   This Court recently ruled that searching "all of Mattel's North American

21  servers" was not an appropriate scope for electronic discovery in this case.[16]

22  Likewise, the Discovery Master also long ago ruled that Mattel is not obligated to

23  search all of its email back-up tapes,[17] a ruling MGA ignores here in seeking to

24

25      [15]  Searcy Decl., ¶ 3.
        [16]  <u>See</u> Order Overruling in Part and Sustaining in Part Objections to Discovery

26  Matter Order Nos. 89/91 at 5 [Dkt. No. 7961].
            [17]  <u>See</u> Order Denying MGA's Motion to Compel Mattel to Produce E-mail and

27  Other Electronic Documents, dated April 24, 2008, at 6-7.  Courts have repeatedly
    found that back-up tapes such as Mattel's email server back-up tapes are "not

28  reasonably accessible" under <u>Rule</u> 26(b)(2)(B). <u>See, e.g.</u>, <u>Zubulake v. UBS</u>
            (footnote continued)

1   overrule it, *sub silentio*, and on an *ex parte* basis no less. As these rulings reflect,
2   MGA's assertion that Mattel must search "all" of its servers and other computers
3   throughout the entire company based on the speculative possibility that it may
4   contain a document that might relate to Ms. Luther is baseless. Petcou v. C.H.
5   Robinson Worldwide, Inc., 2008 U.S. Dist. LEXIS 13723 (N.D. Ga. Feb. 25, 2008)
6   (finding that cost of searching for emails among defendants' 5,300 employees made
7   the data "not reasonably accessible because of undue burden and cost."); Best Buy
8   Stores, L.P. v. Developers Diversified Realty Corp., 247 F.R.D. 567 (D. Minn.
9   2007) (holding that information "no longer in a searchable format" and with a high
10  cost to restore is not reasonably accessible).

11          **B.    MGA's Argument About Custodial Data Is A Red Herring**

12          MGA complains that Mattel has produced only a small number of documents
13  that have Ms. Luther identified as custodian and that Mattel supposedly "refused to
14  produce Sujata Luther responsive documents until facing a pending *ex parte*
15  application." App. at 8. Ms. Luther surely "receive[d] hundreds if not thousands of
16  emails" that Mattel must produce, MGA asserts. App. at 2. But this argument is
17  misleading.[18]   As stated above, Mattel had already produced 1,625 documents
18  relating to Ms. Luther, including over 870 emails she sent or received.[19]   And
19
20
_____

21  Warburg LLC, 217 F.R.D. 309, 320 (S.D.N.Y. 2003) ("E-mails stored on backup
    tapes . . . are not currently accessible."); OpenTV v. Liberate Tech., 219 F.R.D. 474,
22  477 (N.D. Cal. 2003) ("Back up tapes are considered inaccessible, because they are
    not organized for retrieval of individuals documents or files.").
       [18]   This is not the first time MGA has distorted custodial data to manufacture a
23  discovery dispute where none exists. See, e.g., Mattel's Submission Regarding Mr.
    Bousquette's March 11-12, 2010 Deposition, dated March 9, 2010 [Dkt. No. 7624]
24  (explaining that MGA's complaints that Mattel had only produced a few documents
    listing Mr. Bousquette as "custodian" were misleading because Mattel had produced
25  many hundreds of documents bearing his name); Mattel's Opposition to MGA's
    Brief Regarding Mattel's Electronic Search Methods and Privilege Log, dated
26  December 11, 2009, at 12-16 (same as to additional Mattel employees).
       [19]   MGA claims it had no idea what role Ms. Luther played until it received a
27  single email produced from Matt Bousquette's custody (App. at 1), but that is false.
    MGA has long possessed the many hundreds of documents discussed above, which
28  make Ms. Luther's role at Mattel abundantly clear.

1  indeed, contrary to MGA's misrepresentation, almost all of these documents were
2  produced before MGA threatened its improper *ex parte* here.

3  Nor is it surprising—or even material—that Ms. Luther is listed as the formal
4  custodian of only a subset of those documents.  Ms. Luther left Mattel almost four
5  years ago and is no longer affiliated with Mattel.  She is not, in any meaningful
6  sense, keeping or maintaining documents or anything else on Mattel's behalf.
7  Emails, for example—including the hundreds of emails to or from Ms. Luther that
8  Mattel has produced—are retained on Mattel's email servers, not by Ms. Luther.
9  While it would make no sense to list her as "custodian" of such emails, what matters
10 is that the emails and other documents have been searched for and produced.

11      **C.    MGA's Speculation That There Should Be More Documents Is**
12             **Unfounded**

13     MGA speculates that there must be more Luther documents that have been
14 lost, transferred or overlooked because she "spent nearly 17 years at Mattel, Inc."
15 App. at 1-2.  Again, MGA's argument is misleading at best.  Some 16 of Ms.
16 Luther's years at Mattel occurred between 1984 and 2000—before Bratz entered the
17 market, years before this lawsuit was filed and years before any litigation hold was
18 in effect (or was required to be put into effect by Mattel, as the Court previously
19 ruled).[20]  Indeed, given both that the vast bulk of that time period is not even
20 arguably relevant and that MGA articulates no basis for believing that Ms. Sujata's
21 role at Mattel during those years has any relevance to this litigation, MGA
22 contention is misguided and baseless.

23     MGA identifies certain documents it believes should have been produced
24 from Ms. Luther's files.  App. at 7.  ████████████████████

25

26
27 [20]  See Order Denying Motion for Terminating Sanctions, dated August 27,
       2007, at 3 [Dkt. No. 895] (holding that Mattel's preservation efforts were
28     reasonable, and that its obligation to preserve as related to MGA arose no earlier
       than April 2005).



5        —MGA

6 offers no reason to believe that such reports exist, much less why they would have

7 relevant information. App. at 7.[22] In any case, Mattel has diligently searched Ms.

8 Luther's hard drive, hard-copy files and emails for such documents and not found

9 any that match MGA's description. Mattel also asked for further information about

10 these claimed documents, but MGA failed to provide it. Mattel has satisfied its

11 obligations under the Rules.

## II. MATTEL OFFERED A SOLUTION TO MGA'S CONCERNS, BUT MGA REFUSED

14      Even though Mattel had already complied with the Rules, it offered to run

15 additional searches for keywords selected by MGA if MGA itself were willing to

16 allow reciprocal keyword searches for its own witnesses. After all, it would make

17 no sense for Mattel to enter an agreement whereby it takes on additional, unilateral

18 discovery obligations. As the Court is aware, Mattel has long sought transparency

19 as to search terms and reciprocal inspections of hard drives, but MGA refuses.[23]

20 Having so refused, MGA cannot reasonably ask for more from Mattel than it is

---

[21] Searcy Decl., ¶ 6.
[22] MGA intimates that Mattel somehow wrongfully withheld an email from Ms. Luther to Mr. Bousquette previously (App. at 1-2), but that is false and irrelevant. The email resided on Mr. Bousquette's hard drive, which Mattel searched in compliance with Order No. 89, and produced it as soon as it was recovered. Moreover, the email is duplicative of many other previously produced documents. See, e.g., M 0079850, M 0079846, M 0341455–M 0341456.
[23] See Hearing Tr., dated March 11, 2010, at 27:16-28:22 (The Court: "[The] position has been consistent from Mattel, you know, transparency, transparency, transparency.").

-7-

1   willing to provide itself.  In any event, there is nothing more to compel, and MGA's

2   application should be denied.

### Conclusion

4         Mattel has conducted a diligent search and reasonable inquiry for the

5   documents now at issue, and produced the responsive, non-privileged documents

6   that it located to MGA, including at least 870 emails Ms. Luther sent or received.

7   MGA's *Ex Parte* Application should be denied.

9   DATED: June 4, 2010              QUINN EMANUEL URQUHART &
                                     SULLIVAN. LLP

11                                   By _____
12                                      Michael T. Zeller
                                        Attorneys for Mattel. Inc.