QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE DEPOSITION OF WILLIAM FAN AND/OR RAY BLACK**<br><br>[Notice of Lodging Submitted Concurrently]<br><br>Hearing Date:  TBD<br>Time:  TBD<br>Place:  TBD<br><br>**Phase 2**<br><br>Discovery Cutoff:  TBD<br>Pre-trial Conference:  TBD<br>Trial:  TBD |

**PUBLIC REDACTED VERSION**

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that, on a date and at a time to be determined, before the Honorable David O. Carter, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court, pursuant to Federal Rules of Civil Procedure 26 and 30 to compel the MGA Parties to produce Mr. William Fan and/or Mr. Ray Black for deposition.

This motion is made on the grounds that the testimony from the appropriate attorney is relevant to Mattel's RICO claims and that any privilege has been waived by virtue of the crime-fraud exception, MGA and Larian putting the advice at issue, and MGA producing the Larian-O'Connor email. MGA may not refuse to produce the witness due to any purported privilege but must produce and make any privilege objections at the deposition.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the records and files of this Court, and all other matters of which the Court may take judicial notice.

### Rule 37-1 Certification

Mattel attempted to resolve the matters herein regarding the deposition of Mr. Fan or Mr. Black on several occasions beginning on April 13, 2010 and dates thereafter, but no agreement was reached.

DATED: June 4, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  *MT Zeller /amc*
    Michael T. Zeller
    Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 2

ARGUMENT .............................................................................................................. 5

I.   THE TESTIMONY IS RELEVANT ................................................................ 5

II.  NO PRIVILEGE PREVENTS MATTEL FROM DEPOSING THOSE LAWYERS ....................................................................................................... 6

    A.   The Crime-Fraud Exception Applies to The Putative Advice ................ 6

    B.   MGA and Larian Waived the Privilege As to Fan and/or Black's Advice By Putting It At Issue ................................................................. 8

    C.   MGA Waived the Privilege as to the Advice By Producing the Larian-O'Connor Email ........................................................................ 11

CONCLUSION ......................................................................................................... 13

1

## **TABLE OF AUTHORITIES**

2                                                                                                                                     **Page**

3                                                          **Cases**

4  *In re Broadcom Corp. Sec. Litig.*,
      2005 WL 1403516 (C.D. Cal. 2005) .................................................................. 10

5  *Cox v. Administrator U.S. Steel & Carnegie*
6     17 F.3d 1386 (11th Cir. 1994) ............................................................................. 10

7  *In re Grand Jury Proceedings*,
      87 F.3d 377 (9th Cir. 1996) ................................................................................... 8

8  *In re Grand Jury Subpoena*,
9     31 F.3d 826 (9th Cir. 1994) ................................................................................... 8

10 *Mohawk Indus., Inc. v. Interface, Inc.*,
      2008 WL 5210386 (N.D. Ga. 2008) ..................................................................... 9

11 *In re Napster, Inc. Copyright Lit.*,
12    479 F.3d 1078 (9th Cir. 2007) .............................................................................. 7

13 *Pereira v. United Jersey Bank*,
      1997 WL 773716 (S.D.N.Y. 1997) .................................................................... 10

14 *United States v. Bernard*,
15    877 F.2d 1463 (10th Cir. 1989) .......................................................................... 12

16 *United States v. Bilzerian*,
      926 F.2d 1285 (2d Cir. 1991) ............................................................................... 9

17 *United States v. Mubayyid*,
18    2007 WL 2475872 (D. Mass. 2007) ................................................................... 10

19 *United States v. Plache*,
      913 F.2d 1375 (9th Cir. 1990) ............................................................................ 12

20 *United States v. Zolin*,
21    491 U.S. 554 (1989) .......................................................................................... 6,7

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA withheld for years, and until after the Phase 1 trial, the highly material Larian-O'Connor email, in which Larian agrees with advice to lie about when Bryant created Bratz. At his most recent deposition session, Larian testified for the first time that the email in fact *does* reflect legal advice that MGA received concerning "█████████████." Larian claimed he received the advice reflected in the email from one of two foreign lawyers representing MGA -- William Fan in Hong Kong or Ray Black in London. After Larian's deposition, Mattel repeatedly asked MGA to identify which of those attorneys actually provided the advice at issue and produce that attorney for deposition. MGA ignored those requests. Indeed, it has ignored Mattel's requests to identify which of these two lawyers supposedly gave the advice that Larian claimed. The Court should order MGA to produce the appropriate witness.

Through his testimony, Larian has now put the advice of Mr. Fan and/or Mr. Black at issue. MGA's theme is clear: MGA, acting through Skadden, properly withheld the Larian-O'Connor email in Phase 1 because they believed that it reflected privileged legal advice. Mattel has alleged that, contrary to MGA's assertions, the withholding of this email was obstruction of justice. To evaluate whether the email's holding was, as Mattel has pleaded, obstruction, Mattel is entitled to inquire into whether the legal advice purportedly reflected in the email was actually provided or not and what it was. The only way to do that is to go to the source of the putative advice -- Mr. Fan and/or Mr. Black. By asserting that the email reflects the advice of those attorneys, MGA has put that advice at issue and waived the privilege as to it. Moreover, by voluntarily producing the email, MGA independently waived the privilege as to any legal advice supposedly reflected in it. And in any case, Larian's testimony confirms that Larian and MGA used their lawyers to perpetrate fraud on both Mattel and this Court, entitling Mattel to inquire

into the legal advice MGA and Larian obtained in an effort to hide the true origin of Bratz under the crime-fraud doctrine.

The attorneys who gave the advice reflected in the Larian-O'Connor email should be deposed. Mattel respectfully requests that the Court order MGA to produce Mr. Fan and/or Mr. Black for deposition.

### Background

<u>MGA's New Claims in the Changing Story Regarding the Creation Date of Bratz.</u> The creation date of Bratz was and is one of the core issues in this case. At the Phase 1 trial, Larian repeatedly touted to the jury Bryant's alleged representations to MGA that he created Bratz in 1998,[1] and Larian denied knowledge that Bryant worked on Bratz for MGA while employed by Mattel.[2] During Phase 2 discovery, MGA then claimed that while Bryant created the Bratz drawings in 1998, he also did additional work on them during his employment at Mattel in 2000 and that Larian always knew this.[3] That is inconsistent not only with Larian's testimony at the Phase 1 trial, but also with his subsequent deposition

---

[1] See Mattel's Motion to Compel Communications Made in Furtherance of Crimes and Frauds and for which MGA Waived the Attorney-Client Privilege, dated December 4, 2009 (Dkt. No. 7334); see also Mattel's Reply In Support Of Mattel's Motion to Compel Communications Made in Furtherance of Crimes and Frauds and for which MGA Waived the Attorney-Client Privilege, dated December 8, 2009 (Dkt. No. 7342).

[2] Aug 15, 2008 Trial Tr., at 7612:24-7613:5; 7619:10-16; 7619:17-7622:21 (quoting Larian Depo., Mar. 26, 2008, at 445:25-446:9).

[3] See MGA's Opposition to Mattel's Motion to Compel Communications Made in Furtherance of Crimes and Frauds and for which MGA Waived the Attorney-Client Privilege, dated December 7, 2009, at 3, 6 (Dkt. No. 7346); see also Mattel's Reply In Support Of Mattel's Motion to Compel Communications Made in Furtherance of Crimes and Frauds and for which MGA Waived the Attorney-Client Privilege, dated December 8, 2009, at 1-3 (Dkt. No. 7342).

testimony in Phase 2.[4] At deposition in Phase 2, Larian reverted to his Phase 1 testimony and confirmed, once again, that he did not know that Bryant worked on Bratz with MGA while he was employed by Mattel.[5]

In August 2009, a year after Phase 1 trial, MGA voluntarily produced the Larian-O'Connor email in full form to stave off *in camera* review.[6] This email shows that Larian and MGA knew Bryant created Bratz while employed by Mattel and knew that this fact needed to be concealed in order to further their theft of Bratz from Mattel. The improper withholding of the email is directly relevant to, among other things, Mattel's RICO claims as as evidence of MGA's and Larian's obstruction of justice and spoliation.[7]

On September 11, 2009, Mattel propounded requests for admission to MGA and Larian regarding the withholding of this email.[8] They refused to answer, claiming the requests improperly invaded the privilege. The Court overruled many of MGA's and Larian's objections but remained concerned about the privilege with respect to some of the requests.[9] As a result, the Court ordered, among other things,

---

[4] Larian Depo., Dec. 11, 2009, 900:11-21; Larian Depo., Apr. 12, 2010, 2367:13-2368:22.

[5] Id.

[6] Letter from C. Lock to B. Proctor dated Aug. 21, 2009 and accompanying "production of documents not submitted for *in camera* review."

[7] FAAC ¶¶ 95, 124, 129.

[8] See Requests for Admission to MGA Related to MGA's Assertion of Privilege to Withhold Non-Privileged Larian Email Communications That Are the Subject of the Court's Order to Show Cause dated August 31, 2009, dated September 11, 2009; Requests for Admission to Isaac Larian Related to MGA's Assertion of Privilege to Withhold Non-Privileged Larian Email Communications That Are the Subject of the Court's Order to Show Cause dated August 31, 2009, dated September 11, 2009.

[9] Court's Order Sustaining In Part and Overruling In Part Objections To Discovery Matter Order No. 90, dated February 24, 2010, at 2 (Dkt. No. 7562).

Larian to "re-appear for a deposition" where he "shall provide responsive answers to Mattel's questions concerning the O'Connor-Larian emails."[10]

Larian's Testimony Regarding The Improperly Withheld Larian-O'Connor Email. At his April 12 deposition, Larian asserted, for the first time, that MGA received legal advice that was purportedly reflected in the Larian-O'Connor email and, specifically, received legal advice regarding the creation date of Bratz from either Ray Black or William Fan – outside counsel for MGA in the United Kingdom and Hong Kong, respectively.[11] Larian also claimed that he has no knowledge of the withholding of the Larian-O'Connor email[12] and that he "never told anybody to withhold this email."[13] Instead, Larian testified, the lawyers at Skadden made the decision to withhold the email,[14] a decision Larian denies even knowing about until sometime in 2009.[15] While Mattel was prevented from fully exploring this issue, Larian's testimony suggests that he had a meeting with Skadden attorneys in which he informed them that the Larian-O'Connor email reflected legal advice received from Fan and/or Black concerning "███████████████," in the context of discussions regarding the creation date of Bratz.[16] Mattel was prevented from further exploring the role of Fan and/or Black at Larian's deposition by MGA's privilege assertions.[17]

---

[10] Id.
[11] Larian Depo. Tr. at 2376:12-2377:6.
[12] Id. at 2369:12-13 ("███████████████.").
[13] Id. at 2387:9-10.
[14] Id. at 2385:8-22.
[15] Id. at 2384:15-2385:6.
[16] Id. at 2372:12-2373:14; see also id. at 2375:2-8.
[17] MGA's counsel instructed on privilege grounds as to the following questions about the advice allegedly received from the two attorneys: ███████████████

(footnote continued)

<u>MGA Refuses to Identify the Appropriate Lawyer for Deposition.</u> Following Larian's deposition, Mattel requested that MGA identify the attorney who provided the advice to Larian that Larian testified about. Counsel for Mattel sent an email the day after the deposition requesting this information, and, after receiving no response, sent a follow-up request.[18] Subsequently, counsel for Mattel requested dates for the deposition of Mr. Fan and/or Mr. Black on at least two calls discussing deposition scheduling. In the last of these, counsel for Mattel told counsel for MGA that Mattel intended to bring a motion to compel if MGA would not provide deposition dates. Nevertheless, MGA has failed to identify which attorney gave the purported advice and failed to produce either attorney for deposition.

**Argument**

### I. **THE TESTIMONY IS RELEVANT**

The testimony of the attorney who gave Larian the claimed advice is relevant to Mattel's RICO claims.[19] Larian testified in a Phase 2 deposition that statements in the Larian-O'Connor email were based on legal advice MGA received concerning "when Carter Bryant started working for MGA" and specifically "the dates, October and September."[20] Larian claimed MGA received this advice from one of two

---

[18] Email from S. Watson to T. McConville on April 13, 2010 and May 3, 2010.

[19] FAAC ¶¶ 95, 124, 129 ("Larian and MGA have abused the attorney-client privilege, knowingly misrepresenting as privileged documents that MGA itself later conceded were not actually privileged, including a critical e-mail between Larian and Victoria O'Connor regarding the creation date of Bratz, all in order to avoid the production of these documents in this litigation.")

[20] Larian Depo. Tr. at 2372:22-2373:16.

outside MGA attorneys: William Fan or Ray Black.[21] Whichever attorney gave the alleged advice, Mattel is entitled to at least confirm the accuracy of Larian's testimony as well as discover any factual matters related to the advice.

## II. NO PRIVILEGE PREVENTS MATTEL FROM DEPOSING THOSE LAWYERS

### A. The Crime-Fraud Exception Applies to The Putative Advice

The Court has already ruled that there is a "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review [of documents and testimony] may reveal evidence to establish [Mattel's] claims that the crime-fraud exception applies." Hearing Tr., dated March 13, 2010, at 51:1-13 (ruling that Zolin "Step One has been met"); see United States v. Zolin, 491 U.S. 554, 572 (1989)). Larian's new testimony about the Larian-O'Connor email and the legal advice it supposedly reflects further confirms that the crime-fraud exception applies to communications related to MGA's decision to lie about the creation date of Bratz and withhold evidence in that regard.[22] This evidence directly implicates Fan and/or Black because Larian is now directly relying on their purported advice to support the withholding of the Larian-O'Connor email, which is a core part of the obstruction.

---

[21] Id. at 2375:10-2377:11. Larian testified that Mr. Black is a lawyer for MGA in the United Kingdom, and Mr. Fan is a lawyer for MGA in Hong Kong. Id. Indeed, Mr. Fan is listed as counsel of record for MGA in numerous suits filed by MGA in Hong Kong. E.g., M0012593-607; MGA 3886514-20. Likewise, Mr. Black has appeared as counsel for MGA in litigation that it brought in the United Kingdom. MGA 0885171 (email from Larian to Ray Black, copied to William Fan, stating "█████████████████████████.").

[22] Mattel's Motion for an Order Compelling Production of Communications Made in Furtherance of Crimes and Frauds And as to Which MGA Has Waived Privileged, dated December 4, 2009 (Dkt. No. 7334) (hereinafter, "Crime-Fraud Brief"), discusses these issues in more detail, and Mattel incorporates that briefing by reference herein.

Although Larian had previously submitted a declaration swearing he had "███████████████" of the non-production of the email and continues to claim he never discussed "█████████" the email with anyone,[23] Larian testified for the first time in his April 12, 2010 deposition that he attended an in-person meeting prior to the Phase 1 trial with three or four Skadden lawyers, during which the complete (i.e., the wrongfully withheld) version of the Larian-O'Connor email was discussed.[24] Larian testified that Ms. O'Connor's statement in the email that Larian should falsely claim Bratz was born "████████████████████████████████████████" was based on legal advice MGA had received concerning "████████████████████████████████████" and specifically "█████████████████████████."[25] Larian claimed MGA received this advice concerning the importance of saying "█████" rather than "█████" from either William Fan or Ray Black.[26] Larian's testimony confirms that the legal advice Larian discussed during his meeting with Skadden – including the advice from Fan and/or Black – directly furthered the illegal scheme alleged in Mattel's FAAC. Knowing that Bryant had created Bratz prior to October 2000 while still employed by Mattel, Larian used his lawyers' advice to frame an effort to conceal that fact from Mattel and to obstruct the judicial process.

Because Larian and MGA used their lawyers' advice to further illegal or fraudulent conduct, their communications in furtherance of the crime or fraud are not protected. Zolin, 491 U.S. at 563; see In re Napster, Inc. Copyright Lit., 479 F.3d 1078, 1090 (9th Cir. 2007). The crime-fraud exception applies when a client consults an attorney "in an *effort* to complete" a crime, whether completed or not (In

---

[23] Larian Depo. Tr. at 2387:6-14; 2379:14-21.
[24] Id. at 2387:15-2388:10.
[25] Id. at 2372:22-2373:16.
[26] Id. at 2375:10-2377:11.

re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996) (emphasis in original)), and during "a continuing cover-up" of a crime. In re Grand Jury Subpoena, 31 F.3d 826, 831 (9th Cir. 1994). Clearly, if Larian in fact received advice that he used to lie about the date of Bryant's creation of Bratz, as his testimony suggests, that advice is not privileged. To the contrary, and as explained at length previously, the purported advice to lie and conceal furthered multiple crimes and frauds, including obstruction of justice and perjury, larceny and fraudulent concealment, fraud on the Copyright Office and the Court, and criminal copyright infringement.[27]

Fan and/or Black gave advice that furthered MGA's and Larian's numerous crimes and frauds. If they did not, there are no privilege concerns at all; if they did, their advice is not protected. Mattel is entitled to depose them.

### B. MGA and Larian Waived the Privilege As to Fan and/or Black's Advice By Putting It At Issue

Independently, no privilege can apply to the advice of Fan and/or Black because Larian put that advice directly at issue through his testimony.

Mattel alleges that MGA wrongfully withheld the Larian-O'Connor email, constituting obstruction of justice. In an effort to absolve himself of responsibility, Larian asserted that he had nothing to do with the withholding of the Larian-O'Connor email and that the decision not to produce it was made solely by his attorneys. According to Larian, he had "n███████████████████ ███████;"[28] his only "███████████████████" as to who made the decision to produce or withhold the email is "███████████;"[29] "████████████████

---

[27] See Mattel's Motion to Compel Communications Made in Furtherance of Crimes and Frauds and for which MGA Waived the Attorney-Client Privilege, dated December 4, 2009 (Dkt. No. 7334), at 11-14.

[28] Id. at 2369:9-23; see also id. at 2370:13-21.

[29] Id. at 2380:2-7.

1  ██████████████████████████████████████;"[30] and Larian "███████
2  ████████████████████,"[31] Larian even claimed that he relied solely on
3  his lawyers' statements when he swore in a November 16, 2009 declaration that no
4  one at MGA, including himself, has "████████████████████████████
5  ████████████████████████████████████████████████████."[32]
6  Thus, Larian is clearly pointing a finger at Skadden as a defense to Mattel's
7  obstruction of justice claim.

8        But he is not simply laying the blame at Skadden's doorsteps. To the
9  contrary, Larian has also attempted to justify the withholding of the email – a
10 withholding that he ostensibly did not even know about – by volunteering that the
11 email does in fact reflect legal advice that MGA received from Fan and/or Black.
12 MGA's evident claim is thus that *no one* acted with bad intent because Larian
13 merely passed on the Fan and/or Black legal advice and Skadden believed, based on
14 that prior advice, that the document was privileged.

15       Mattel is entitled to rebut those claims by inquiring into not only why
16 Skadden withheld the email, but also whether Fan and/or Black did indeed provide
17 the legal advice Larian claims was the alleged basis for the withholding. The only
18 way to assess the legitimacy of the claim of good faith is to test whether the
19 proffered legal advice actually was given, and to see what else was said in that
20 regard. Having placed Fan's and Black's legal advice about the timing of the
21 creation of Bratz at issue, MGA has waived the privilege as to it. See, e.g., U.S. v.
22 Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) ("the privilege may implicitly be
23 waived when defendant asserts a claim that in fairness requires examination of
24 protected communications.") (cited with approval by Chevron Corp. v. Pennzoil

---

[30] Id. at 2385:8-22.
[31] Id. at 2387:9-10.
[32] Id. at 2288:9-16; Id. at 2297:1-2; see also id. at 2291:3-2292:20.

Co., 974 F.2d 1156, 1162 (9th Cir. 1992)); Pereira v. United Jersey Bank, 1997 WL 773716, *6 (S.D.N.Y. 1997) ("UJB cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny the Trustee access to the advice given by counsel where that advice, based upon this deposition testimony, played a substantial and significant role in formulating the actions taken by UJB.") (citing Bilzerian).[33]

MGA has sought to avoid an outright statement that it will rely on advice of counsel at trial. That is of no moment. One can waive by putting matters at issue through deposition testimony.[34] Moreover, a party need not make a "direct statement that counsel was relied upon." In re Broadcom Corp. Sec. Litig., 2005 WL 1403516, *1 (C.D. Cal. 2005). Instead, a waiver "may also arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the party's own benefit." Id.; see also Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1418-19 (11th Cir. 1994) (defendant waived even though it denied intent to assert advice of counsel defense; "it would be inequitable to allow USX to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law"); United States v. Mubayyid, 2007 WL 2475872, *5 (D. Mass. 2007) ("Regardless of the precise label one puts on

---

[33] See also Mohawk Indus., Inc. v. Interface, Inc., 2008 WL 5210386, *13 (N.D. Ga. 2008) ("It is not necessary that Defendant raise an affirmative defense in order to be found to have injected an issue into the case that requires disclosure of privileged materials. Instead, Defendant can waive the privilege by injecting factual issues into the case that, in fairness, require disclosure of the communications to the opposing party.").

[34] See, e.g., Mohawk Indus., 2008 WL 5210386 at *12 (finding at-issue waiver based on deposition testimony); Pereira, 1997 WL 773716 at *6 (finding waiver based on deposition testimony).

the statements, it is clear [defendant] was affirmatively relying on the actions and advice of his counsel").

Throughout Phase 1, MGA denied that it was asserting an advice of counsel defense to stave off discovery. At trial, Larian then took the stand and did just that – relied on the advice of counsel.[35] In MGA's recent opposition to Mattel's motion to compel further testimony from Larian, MGA suggested it may choose to raise an advice of counsel defense – only later.[36] MGA should not be permitted to sandbag Mattel yet again. Larian's deposition testimony alone constituted a waiver, rendering Fan's and Black's advice about the timing of the creation of Bratz unprotected.

### C. MGA Waived the Privilege as to the Advice By Producing the Larian-O'Connor Email

MGA's voluntary production of the Larian-O'Connor email in August 2009 constitutes a further, independent basis for finding waiver as to the subject matter of that email, including the newly alleged advice of counsel contained within. Larian testified unequivocally that the email reflects legal advice:

---

[35] Motion *In Limine* No. 7 Of Mattel, Inc., to Prelude the MGA Defendants from Asserting or Relying on an Advice of Counsel Defense, Apr. 14, 2008 at 4-5; MGA Parties' Opposition To Mattel, Inc.'s Motion *In Limine* No. 7 To Prevent MGA From Asserting or Relying on an Advice of Counsel Defense, Apr. 28, 2008 at 3.

[36] MGA Parties' Opposition to Mattel's Motion to Compel Further Deposition of Isaac Larian, Dkt. No. 7781 at 2, 11, 14, and 15 ("■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (emphasis added).



[REDACTED]<sup>37</sup>

Voluntary disclosure of a privileged communication waives the privilege. See, e.g., United States v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990); United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir. 1989) ("Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."). Here, Larian testified, explicitly, that the Larian-O'Connor email is based on and reflects legal advice received from Fan and/or Black. MGA's voluntary production of the email waived the privilege as to any advice reflected in it, which includes, at a minimum, the advice purportedly received from Fan and/or Black. Privilege thus cannot constitute any basis for MGA's refusal to produce the relevant attorney for deposition for this further reason.[38]

---

[37] Larian Depo. Tr. at 2385:23-2386:3; 2375:7-8.

[38] Nor, in any event, can MGA refuse on a blanket basis to produce for deposition the appropriate attorney, either Fan, Black, or both, on the basis of any purported privilege. As this court has previously ruled, if MGA decides to assert any claim of privilege or work product, MGA must produce the appropriate witness and make any objection on a question-by-question basis. See July 2, 2007 Order at 5 ("To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blank objection and justify its refusal to produce a [witness] on this topic based on that blanket objection."); January 8, 2008 Order at 17, 22 ("MGA cannot rely on blanket claims of privilege to preclude testimony on [a topic]"... As for MGA's claims of work product protection, Judge Larson has already indicated that questions of privilege

(footnote continued)

## Conclusion

For the foregoing reasons, Mattel respectfully requests that its motion be granted.

DATED: June 4, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
Michael T. Zeller

---

regarding the testing of the Bratz documents must be handled on a question-by-question basis."); May 1, 2008 Order at 7.