MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**MGA PARTIES' REPLY IN SUPPORT OF MGA'S CROSS-MOTION TO COMPEL TESTIMONY OF MATTEL 30(b)(6)** |
| AND CONSOLIDATED ACTIONS | **Phase 2 - Hon. David O. Carter**<br><br>Discovery Cut-off: TBD<br>Pretrial Conference: TBD<br>Trial Date: TBD |

**INTRODUCTION**

Failing to provide a comprehensive production, Mattel continues to dribble out documents from repeat custodians, with no reason for its years of delay. To give a few examples, Mattel has produced from Russell Arons' custody 27 times, Robert Eckert's custody 11 times, Timothy Kilpin's custody 28 times, and Mary Alice McMorrow's custody 44 times.  Through this tactic, Mattel has managed to avoid production of a witness on many of its documents.  Now, only in connection with the Court's order on Mattel's objections to Order Nos. 89/91, the culmination of briefing that started more than eight months ago, Mattel has identified 211 individuals that it contends it has or will search.  These documents are only now forthcoming, long after depositions of the very people MGA would ask about the documents are concluded.  Absent reopening past depositions, MGA is left with little choice but to seek a 30(b)(6) witness on topics vital to the claims and defenses in this case.

Mattel's objections to these topics, raised in its Motion for a Protective Order and now in its Opposition to MGA's Cross-Motion and Reply do not justify Mattel's withholding of essential discovery.  As if acknowledging the futility of the arguments that it presented in its Motion, Mattel now tries new objections to MGA's 30(b)(6) deposition topics.  For example, in connection with at least six topics, Mattel raised only one objection in its Motion, but now it seeks to toss in a kitchen sink of objections.  (*See* Topics 2, 3, 17, 19, 20 and 21).

Mattel's "withhold and delay" tactics, coupled with the fact that it is a mega corporation with much turnover in personnel and likely hundreds if not thousands of documents yet to produce, require that MGA utilize the 30(b)(6) vehicle to obtain vital discovery.  Mattel cannot be permitted to avoid its discovery obligations by raising irrelevant and untimely objections.  MGA requests that the Court order Mattel to produce a 30(b)(6) witness to provide the information denied to MGA time and time again through other discovery methods.

# ARGUMENT

## I. MATTEL'S ARGUMENT REGARDING DEPOSITION TIME AND DUPLICATIVE TOPICS MISSES THE MARK.

### A. Mattel's Calculation of Deposition Time Is Misleading

Mattel's calculations regarding the number of hours of 30(b)(6) deposition testimony are erroneous and misleading for multiple reasons. First, Mattel states in a footnote that MGA Mexico's time should not be counted because of alleged "failure to properly prepare a Rule 30(b)(6) designee" (Opp. and Reply at fn. 1) yet Mattel includes all depositions time of its designees, despite lack of preparation and MGA's need to compel additional testimony. For example, Keith Storie was so unprepared that MGA moved on the record for further testimony, which was granted by the Discovery Master and Mattel did not appeal. Rutowski Decl. Ex. 1. Excluding so-called "unprepared" time from the tally of MGA's witnesses and not from Mattel's fails to paint an accurate picture.

Second, Mattel seeks to write off Phase 1 testimony and to limit consideration to Phase 2 testimony (Opp. and Reply at 1), while at the same time trying to rely on Phase 1 testimony to oppose MGA's Cross-Motion. Mattel cannot have it both ways. Even by Mattel's calculation, when adding the two Phases together, MGA deposed Mattel's witnesses for only 151 hours while Mattel has deposed MGA Parties' witnesses for over 200. Opp. and Reply at 20-22.

Third, Mattel includes in its calculation the 30(b)(6) deposition time taken by Carter Bryant's counsel, not MGA's. Yet Mattel's FAAC includes many allegations against MGA Parties that would not have been important to Carter Bryant's counsel years ago when deposing witnesses in Phase 1. For example, Lissa Freed was deposed for only 53 minutes by counsel for MGA and 1 hour and 38 minutes by counsel for Carter Bryant. In total, Carter Bryant's counsel utilized more than 13 hours of deposition time that Mattel seeks to attribute to MGA.

1    Moreover, Mattel misses the point that its accusation of new people,

2  with different employment terms, and new products means that different terms and

3  time periods may now be relevant.  As to Topic 1, Mattel's only objection is that it

4  is duplicative with the testimony provided by Ms. Freed.  But the mere potential

5  overlap with 53 minutes of testimony given two years ago in 2008, before Mattel

6  filed the FAAC and before Mattel served substantive interrogatory responses

7  regarding its alleged harm and damages, is not a valid objection.

8         **B.    <u>Topics Relating to Carter Bryant and Other Mattel Agreements
         And Confidentiality Policies Do Not Duplicate Prior Testimony</u>**

9

10    With respect to Topic 2, Mattel initially objected only that it seeks

11  duplicative testimony (Motion at 4), but now seeks to raise additional objections.

12  Despite Mattel's argument that this topic seeks testimony on every "version" of

13  Agreement, in fact testimony is sought only on every "form" of Agreement.  MGA

14  is entitled to testimony on the changes to Mattel's policies as these affect if and

15  how Mattel protected trade secret and other confidential info, as well as the

16  treatment Mattel afforded inventions by its employees.

17    Nevertheless, MGA is willing to narrow Topics 2 and 3 dealing with

18  employee contracts and Mattel's confidentiality policies temporally from 1995 to

19  the present.  Carter Bryant began working at Mattel for the first time in 1995, so

20  contracts and policies after that date are highly relevant.  MGA trusts that this

21  limitation resolves Mattel's objection as to temporal over breadth.

22    Topic 22 also relates to Carter Bryant's employment relationship with

23  Mattel.  MGA previously sought to depose Mattel witness Michael Moore about the

24  copyright applications identified in Topic 22.  Mr. Moore was not able to answer

25  the questions of MGA's counsel, such as whether there is a tick mark in the "no"

26  box in answer to whether or not the drawings were a work made for hire.  Whether

27  or not Mattel considered Carter Bryant's drawings a "work made for hire" is plainly

28

1  relevant to how Mattel characterized its relationship with Bryant, and Mattel's

2  relevancy objection cannot justify its failure to produce a witness on this topic.

3  **II.    MGA IS ENTITLED TO TESTIMONY ON PRODUCTS AT ISSUE IN ITS AFFIRMATIVE CLAIMS**

4

5  **A.    Trapezoidal Packaging**

6          Mattel's only objection to Topic 24 is that it is unlimited as to time.

7  To the extent that Mattel intends to rely on any products sold in trapezoidal

8  packaging prior to MGA's Bratz, MGA is entitled to discovery on those products

9  and cannot temporally limit the request.  However, if Mattel will stipulate that it

10  will not rely on any Mattel trapezoidal packaging prior to a particular date, MGA

11  will limit this topic to products marketed or sold after 2001 or that particular date,

12  whichever is earlier.

13  **B.    Wee 3 Friends**

14          Topics 4 and 5 seek testimony about Mattel's Wee 3 Friends, a short-

15  lived product launched by Mattel in 2004 in response to MGA's 4-Ever Best

16  Friends product.  This was a limited product line, marketed and sold only a couple

17  years in an effort to drive MGA's 4-Ever Best Friends off the shelves, and the

18  topics are so limited by the product's very short lifespan.  Dkt. # 8040 at ¶ 3

19  (Declaration of Sarah Buzby).  Mattel's failure to produce timely documents on

20  Wee 3 Friends is apparent from a search for "Wee 3 Friends" in Mattel's

21  production, which yields more than 1,000 documents that have been produced

22  within the last three months despite the fact that MGA's Complaint has been

23  pending since 2005 and Wee 3 Friends sales ended in 2006.  Rutowski Decl. ¶ 3.

24  MGA has not had a meaningful opportunity to depose Mattel witnesses on this

25  product line.

26          Further, MGA has not only asserted a trade dress infringement claim

27  against Wee 3 Friends, but MGA has also informed Mattel that it is investigating

28  below cost pricing as an element of its unfair competition claim.  In light of the

short-lived nature of the product line and the scope of MGA's claims, Mattel has failed to show undue burden justifying its withholding of a witness with respect to these topics.

### C.   Barbie Fashion Fever

Mattel again seeks to evade the point with respect to Topic Nos. 6 and 7. The fact that Mattel does not claim Fashion Fever was a trade secret does not prohibit MGA from a witness on this topic because Mattel is seeking damages for this product as part of its Barbie line in connection with its RICO and other claims. If Mattel intends to withdraw this product from its claims, it can so inform the Court and MGA. Otherwise, the creation, design, first use and other information covered by these topics relate to any alleged impact MGA activities had on this product line. Moreover, exhibits attached to the 30(b)(6) notice (such as Exhibit 6 in connection with Topic 11) suggest that Mattel raced to launch Barbie Fashion Fever in an effort to compete based on information obtained about the Bratz Tokyo-A-Go-Go product line. Discovery into Barbie Fashion Fever relates not only to Mattel's damages claim, but also to MGA's unfair competition claim.

### III.   MATTEL STONEWALLS MGA'S ABILITY TO SEEK DISCOVERY ON MATTEL'S ALLEGED HARM AND DAMAGES

Topics 16, 17, 19, 20, 21 and 25 are all tailored to Mattel's claimed RICO harm and damages. Mattel's claim of damages and RICO injury are so overreaching, Mattel seeks to avoid discovery into issues such as the specific nature of its alleged harm and causation at every turn. With respect to Topics 19, 20, and 21, Mattel argues that the discovery sought is premature and calls for expert testimony—while an expert may provide details, Mattel cannot avoid the fact that MGA is entitled to a corporate representative's factual assessment of any harm Mattel claims to have suffered.

Topic 17 goes to the heart of Mattel's RICO claim as it is tailored to facts Mattel intends to introduce at trial to show it would have marketed Bratz if

1  Carter Bryant had disclosed his Bratz drawings to Mattel.  Likewise, Topic 16,

2  relating to fashion doll concepts considered by Mattel, is also tailored to Mattel's

3  alleged lost opportunity to exploit Bratz as it may shed light on the types of fashion

4  doll projects Mattel would or would not have chosen to pursue.  So long as Mattel

5  is relying on its claim that it would have marketed Bratz if Carter Bryant had

6  disclosed his drawings, MGA is entitled to explore these topics with a corporate

7  designee.

8            Topic 25 seeks a witness to testify about Mattel's financial documents.

9  MGA is entitled to a witness on both the financial information on which Mattel

10  intends to rely as well as financial information that may tend to refute Mattel's

11  damages claim.  If Mattel's damages claims were not so all-inclusive, the scope of

12  discovery would not be so broad.  Mattel has brought any lack of "particularity"

13  and "burden" upon itself.  By refusing to provide a witness, Mattel is just

14  embarking on another attempt to avoid producing discovery on its ill-conceived

15  damages claims.

16  **IV.   MGA SEEKS TESTIMONY CONCERNING MATTEL'S RECEIPT**
17  **OF CONFIDENTIAL, NON-PUBLIC INFORMATION**

18            MGA seeks testimony regarding Mattel's acquisition of MGA's

19  confidential and proprietary information through two different types of requests,

20  general and specific, yet Mattel seeks to avoid both.  First, MGA has served general

21  Topic 8 seeking testimony about Mattel's receipt of non-public information.

22  Mattel's only objection to this topic is that it is overbroad and unduly burdensome,

23  insofar as it is not limited by time or competitor.  MGA is willing to resolve these

24  objections by limiting to Mattel's receipt of non-public information from MGA and

25  to the time period of 2001 to the present.  Likewise, Topic 18 seeks testimony about

26  consumer research concerning MGA.  MGA is willing to limit this temporally as

27  well from 2001 to the present.

28

1       The second means through which MGA has sought to obtain this

2   testimony is through topics attaching *specific Mattel documents*, namely Topics 11-

3   15, 23, 26 and 27.  These documents refer or relate to the very actions by Mattel

4   that are described more generally in topics 8 and 18.  MGA could not spell out the

5   topics any more clearly than by attaching the very documents it has located in

6   Mattel's production reflecting Mattel's efforts to acquire MGA information.  As

7   stated in MGA's Opposition and Cross-Motion, this information is relevant to

8   Mattel's own claims of trade secrets, Mattel's claims of injury and harm, and

9   MGA's unclean hands defense insofar as Mattel has engaged in the very practices

10  that form the basis of its claims against MGA.

11      Mattel's repeated attempt to duck behind the number of pages is belied

12  by its acknowledgement that one of the documents in Topic 11 is over 200 pages—

13  the rest are no more than 1-3 page email strings.  These are Mattel-generated or

14  Mattel-commissioned documents produced by Mattel as relevant and discoverable

15  in this litigation, and MGA is entitled to ask Mattel about the practices reflected

16  therein.

17  **V.    INTERFERENCE WITH MGA'S LICENSEES OR POTENTIAL LICENSEES IS HIGHLY RELEVANT**

18

19      Mattel's only objection to Topic No. 9 is that it is overbroad and

20  unduly burdensome.  First, Mattel obscures the fact that this request is limited

21  insofar as it only seeks communications *regarding any actual or potential MGA*

22  *license*.  Thus, the request is narrow as to the subject matter of the communications,

23  relating specifically to communications regarding MGA.  Mattel's objection that

24  the topic is overbroad and unduly burdensome is not well founded.  Nevertheless,

25  MGA is willing to further resolve Mattel's concern by agreeing to a temporal

26  limitation on communications from 2001 to the present.

27

28

## VI.  **THE TESTIMONY SOUGHT IS BOUNDED BY THE FEDERAL RULES OF CIVIL PROCEDURE**

Mattel argues that Topics 8, 10 and 23 seek information not reasonably available to it, but this objection simply does not make sense in the context of the Federal Rules of Civil Procedure.  The Rules require only that a party produce that which is within its possession, custody or control.  The fact that there may exist some responsive information outside of Mattel's possession, custody or control is not a valid objection to providing MGA with testimony regarding information that *is within* Mattel's possession, custody or control.  Moreover, Mattel has provided no declarative or factual support for its conclusory assertions about where the information resides.  Mattel cannot shield legitimate discovery from MGA on this basis.

## CONCLUSION

For the foregoing reasons, those presented in MGA Parties' Opposition and Cross-Motion and supporting documents, and any additional argument presented at a hearing on this matter, MGA respectfully requests that the Court grant MGA's Cross-Motion to compel and order Mattel to begin to produce witnesses on the topics set forth in MGA's 30(b)(6) notice within ten (10) days of the order.

Dated:  June 7, 2010                 Respectfully submitted,

                                     ORRICK, HERRINGTON & SUTCLIFFE LLP


                                     By:  _____ */s/ Diana M. Rutowski*_____
                                               Diana M. Rutowski
                                     Attorneys for MGA ENTERTAINMENT, INC.,
                                     MGA ENTERTAINMENT HK, LTD., MGA de
                                     MEXICO, S.R.L. de C.V., and ISAAC LARIAN

OHS West:260929503.1