**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                                                      Date: June 7, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                          Date:_____ Deputy Clerk: _____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

    Stephanie Mikhail                                          Not Present
    Courtroom Clerk                                           Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:  ATTORNEYS PRESENT FOR DEFENDANTS:

            NONE PRESENT                                    NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER RE PENDING DISCOVERY DISPUTES

        Before the Court are a number of discovery motions filed by Mattel, Inc. ("Mattel") and by MGA Entertainment, Inc. and Isaac Larian (collectively "MGA"). The Court finds the matters appropriate for decision without oral argument. Fed R. Civ. P. 78; Local R. 7-15.

**I.    Mattel's Motion to Enforce the Court's January 26th Order re Communications with Law Enforcement Regarding Alleged Theft of Trade Secrets**

        On January 26, 2010, the Court ordered MGA to produce "all communications by or on behalf of any of the MGA Parties with law enforcement in Mexico, Canada, and/or the United States that refer or relate to" Mattel's allegations, including Mattel's allegations regarding the theft of trade secrets. See Docket 7434 at 5. Mattel argues that of the thirteen documents MGA produced in response to the Court's January 26 Order, only one – an email from Isaac Larian to an Assistant United States Attorney – was a communication between MGA and law enforcement. MGA responds that the Motion is duplicative of another Motion filed by Mattel. MGA also represents that it has produced all documents responsive to Mattel's request. Mattel refers to MGA's representation as "implausible" and

requests that MGA substantiate its assertion by identifying the search procedures it undertook to locate documents responsive to the Court's January 26 Order.

Mattel's Motion is STRICKEN as MOOT.  The Court has already ordered MGA to produce communications with law enforcement.  The mere fact that Mattel doubts the comprehensiveness of MGA's subsequent production does not mean that Mattel seeks any unique relief.  Unlike a prior motion filed by MGA, which was also styled a motion to enforce the January 26 Order, the instant Motion does not ask the Court to construe (and thereby "enforce") the January 26 Order to cover a category of documents which MGA believes to be outside the scope of the January 26 Order.  MGA agrees that it must produce all communications with law enforcement.  And it claims that it has.  Such representation by MGA's counsel, if later proven to be false, may give rise to sanctions.

## II.  Mattel's Motion to Compel Production of Documents in Response to Mattel's Requests for Documents Concerning Trade Secret Use

Mattel argues that MGA has improperly failed to respond and/or objected to a number of Mattel's pending requests for production.  The requests for production address categories of documents addressed by the Court's January 26 Order.  Mattel summarizes the requests for production at issue as encompassing the following types of documents: (1) MGA's use of stolen Mattel confidential information concerning forecasting, sales, planning, inventory management and data warehouse processes; (2) MGA's use of stolen Mattel confidential information concerning pricing strategy, including promotions, rebates, discounts, and allowances; (3) MGA's use of additional stolen Mattel confidential information; and (4) Criminal investigations or prosecution of MGA or its current or former employees for theft of Mattel's confidential information or trade secrets.  However, a review of the actual text of the requests for production suggests that Mattel's "summary" does not fairly represent the requests' scope.  For example, some requests for production fall entirely outside Mattel's summary sub-categories.  See, e.g., Request for Production No. 79 (concerning "the original of any media or device on which any Mattel document was delivered to you.").  Other requests for production may encompass all the summary sub-categories and are not specifically addressed by the Motion.  See, e.g., Request for Production Nos. 81-86 (concerning or relating to documents MGA intends to use at trial in defending against Mattel's trade secret claims).  Still other requests for production appear to presume that a request not facially concerned with trade secret misappropriation issues will yield documents concerning trade secret misappropriation.  See, e.g., Request for Production Nos. 21-23 (communications from Ron Brawer concerning identified MGA product lines); Request for Production Nos. 33-34, 43-44 (concerning communications with Toys 'R Us); Request for Production No. 41-42 (concerning communications with Wal Mart).  And other requests for production concern "meta" issues about the availability of responsive documents in the first place.  See, e.g., Request for Production No. 78 (concerning document preservation efforts).

Finally, a number of the requests for production – and almost every request in the "Third Set" – seek documents that fall outside the limits imposed by the Court's January 26, 2010 Order.  In

that Order, the Court considered whether, and to what extent, Mattel was entitled to discover information about MGA's internal systems, including proprietary inventory and pricing systems. Mattel argued that such discovery was necessary in order to substantiate its allegation that MGA altered its internal processes on the basis of stolen Mattel trade secrets and confidential information. The Court agreed, but restricted such discovery to six months before and after the alleged theft of trade secrets. More expansive discovery, the Court noted, had the potential to provide Mattel undue insight into MGA's internal workings without shedding much light of the trade secret misappropriation claims.

Now, Mattel argues that the January 26 Order is not dispositive of all discovery disputes and that the "January 26 Order did not purport to address these Requests, nor did it conclude that nothing beyond a one-year period [six months before and six months after] could ever be relevant to Mattel's claims regarding forecasting and inventory." Though Mattel is correct that the January 26 Order did not resolve every possible discovery dispute, it indisputably resolved some disputes. And seeking broader discovery on the very topics that were already addressed and limited by the Court renders the January 26 Order – and the lengthy negotiations that preceded it – meaningless. That said, good cause may support the expansion of the six month before and after limitation. Mattel suggests that certain MGA forecasting systems were developed more than six months after MGA allegedly obtained (and misused) Mattel's confidential and trade secret information. But Mattel does not specifically link this argument to one or more of the requests for production. The generality with which Mattel submits argument as to hundreds of requests for production does not lend itself to precise decision-making by the Court. Nor will such generality facilitate a focused oral argument, at which lead counsel for Mattel will be asked to explain the basis upon which Mattel seeks to compel discovery as to each request for production. Were the Court to issue a sweeping ruling on every request for production, without receiving focused argument as to each one, then MGA would rightfully argue that some (or all) of the Court's reasoning was inapplicable to one (or more) of the requests for production. And, of course, such a ruling would set a confusing record for appeal.

The Motion is therefore DENIED WITHOUT PREJUDICE. All four lead counsel for Mattel and MGA are ORDERED to meet and confer as to the requests for production on or before June 14, 2010 and the parties shall submit a joint report that details the result of that meet and confer on or before June 15, 2010. Mattel is hereby granted leave to file a Motion in excess of the ordinary page limits that addresses each request for production on or before June 21, 2010 and all lead counsel shall appear for a hearing on any such motion on June 23, 2010 at 5:00 p.m.

### III. Mattel's Motion to Compel Productions of Documents Regarding Former Mattel Employees

Mattel seeks to compel the production of responsive documents to Requests for Production Nos. 73 and 74 of Mattel's Fourth Set of Requests for Documents and Things and Requests for Production Nos. 11, 12, 13, 14, 25, 26, 27, 28, 39, 40, 41, and 42 of Mattel's Sixth Set of Requests for Documents and Things. The Requests for Production broadly concern former Mattel employees

retained by MGA. MGA has objected to each of the Requests for Production on different grounds and Mattel requests that the Court overrule MGA's Objections in their entirety.

A party may move to compel discovery under Federal Rule of Civil Procedure 37. Rule 26(b) generally defines the scope of discoverable information to include "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A request for production of documents, electronically stored information, and tangible things propounded under Rule 34 must "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1).

### A. Requests for Production Nos. 73 and 74

By Request for Production No. 73, Mattel seeks the production of: "All Documents Referring or Relating to any Increase in Salary, Pay or Benefits Received by any of the Former Mattel Employees while Employed by You, including without limitation all Documents Referring or Relating to the Reasons therefor." *See* Appendix A to Mot. Mattel argues that the "provision of substantial financial rewards" to former Mattel employees by MGA is relevant to Mattel's claims for trade secret misappropriation, intentional interference with contract, and aiding and abetting breaches of fiduciary duty and duty of loyalty.

By Request for Production No. 74, Mattel seeks the production of "all documents referring or relating to any bonuses, monetary incentives or payments other than as part of the base salary received by any of the former Mattel employees while employed by [MGA], including without limitation all documents referring or relating to the reasons therefor."

MGA responds that it has produced thousands of documents concerning compensation of former Mattel employees, including an excel spreadsheet "containing detailed information about each former Mattel employee's bonuses and compensation." *See* Opp. at 2 (citing MGA2 0539679 – MGA2 0539719). This spreadsheet "includes an alphabetical list of MGA employees that were former Mattel employees by name, identifies their titles at MGA, the date that they interviewed for a position with MGA, their bonus pay amounts and dates of bonus payments and other compensation information along with a description of that compensation."

Mattel notes that a number of its former employees received unusually generous bonuses and salary increases after starting work for MGA. *See* Mot. at 5 n. 11-13. But, as MGA argues, this proves that Mattel has already obtained discovery about the subject matter encompassed by Requests for Production Nos. 73 and 74 – Mattel has deposed witnesses, received documents, and even obtained information about the percentage salary increases received by former Mattel employees. Now, Mattel seeks "[d]ocuments showing that MGA intentionally solicited, induced and encouraged these Mattel employees to breach both their contracts and fiduciary duties." Mot. at 5. Such a document would surely be relevant to Mattel's claims – indeed, it would likely be *dispositive* of entire portions of

Mattel's trade secret allegations. But just because Mattel is convinced of the existence of such "smoking gun" evidence, does not mean that the evidence exists.

Nevertheless, documents showing that MGA encouraged former Mattel employees to steal trade secrets, breach fiduciary duties, and/or breach contracts, whether or not in exchange for salary benefits, are certainly relevant. Accordingly, Mattel's Motion is GRANTED. To the extent that MGA possesses documents responsive to Requests for Production Nos. 73 and 74, MGA should produce these documents to Mattel on or before June 14, 2010 and submit a statement of compliance to the Court on that date. The statement of compliance shall identify and attach all documents produced to Mattel in compliance with the instant Order.

### B. Requests for Production 11, 12, 13, 14, 25, 26, 27, 28, 39, 40, 41, and 42

These Requests for Production[1] broadly encompass three categories of documents: (1) all

---

[1] By Request for Production No. 11, Mattel seeks "all documents referring or relating to Mattel, or that were prepared, authored or created by Mattel or any officer, director, employee or representative of Mattel, that Contreras has ever provided to, shown, described to, communicated to or disclosed in any manner to MGA." Request for Production No. 12 seeks "all documents created or accessed by Contreras referring or relating to any Mattel product, plan or business information." Request for Production No. 13 seeks "all documents created or accessed by Contreras referring or relating to any Mattel line list or other document prepared by Mattel." Request for Production No. 14 seeks "all documents, including but not limited to communications, relating to [MGA's] receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any documents, data and/or information, including but not limited to any compilation of information, that were prepared, made, created, generated, assembled or compiled by or for Mattel and that [MGA] received, directly or indirectly, from Contreras." Request for Production No. 25 seeks "all documents referring or relating to Mattel, or that were prepared, authored or created by Mattel or any officer, director, employee or representative of Mattel, that Cooney has ever provided to, shown, described to, communicated to or disclosed in any manner to MGA." Request for Production No. 26 seeks "all documents created or accessed by Cooney referring or relating to any Mattel product, plan or business information." Request for Production No. 27 seeks "all documents created or accessed by Cooney referring or relating any Mattel line list or other document prepared by Mattel." Request for Production No. 28 seeks "all documents, including but not limited to communications, relating to your receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any documents, data and/or information, including but not limited to any compilation of information that were prepared, made, created, generated, assembled or compiled by or for Mattel and that [MGA] received, directly or indirectly, from Cooney."

Mattel confidential trade secret documents that MGA received from Mattel's former employees; (2) all *communications* by MGA about the receipt of Mattel trade secret documents; and (3) all documents created by former Mattel employees upon commencing employment with MGA.

MGA touts compliance, but argues that the requests are either duplicative or overbroad. The first objection is mistaken, but the second may be meritorious and requires further briefing to resolve. First, MGA claims it did not receive Mattel trade secret documents from Castilla and Contreras. That may be so. But the Requests for Production require MGA to produce communications about the receipt – ***even the unrealized receipt*** – of Mattel documents. For example, MGA's employees may have expressed anticipation for the receipt of Mattel documents from Contreras and/or Castilla. Such documents would be discoverable.

Separately, certain Mattel requests seek documents created by former Mattel employees after their hire by MGA. Mattel has narrowed the requests to seek only those documents that refer to Mattel products, plans, or information. In other words, if Contreras and Castilla drafted a product plan for MGA that referred to Mattel products, such document would be responsive to Mattel's request. Notwithstanding MGA's failure to engage Mattel's Motion on this category of requests, the Court is unclear on how and whether the requests are either overbroad or underbroad. Mattel invokes *Sargeant Fletcher, Inc. v. Able Corp.*, 3 Cal. App. 4th 1658 (2003), but that case did not discuss the relevance of an employee's post-employment work product to a claim that the employee (or his subsequent employer) misappropriated trade secrets. *See id.* at 1665 (outlining elements of a claim for trade secret misappropriation claim under the California Uniform Trade Secrets Act). On the one hand, the requests for production include documents "accessed" by Contreras and Castilla that refer or relate to Mattel products, plans, or business information. The plain language of the requests therefore extends to MGA documents, whether electronic or otherwise, that originated even before Contreras and Castilla joined MGA. The mere fact that either individual viewed the documents appears extremely attenuated to any claim for misappropriation – perhaps Mattel contemplates that such evidence will prove that the

---

Request for Production No. 39 seeks "all documents referring or relating to Mattel, or that were prepared, authored or created by Mattel or any officer, director, employee or representative of Mattel, that Castilla has ever provided to, shown, described to, communicated to or disclosed in any manner to MGA." Request for Production No. 40 seeks "all documents created or accessed by Castilla referring or relating to any Mattel product, plan or business information." Request for Production No. 41 seeks "all documents created or accessed by Castilla referring or relating any Mattel line list or other document prepared by Mattel." Request for Production No. 42 seeks "all documents, including but not limited to communications, relating to your receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any documents, data and/or information, including but not limited to any compilation of information, that were prepared, made, created, generated, assembled or compiled by or for Mattel and that [MGA] received, directly or indirectly, from Castilla."

individuals accessed such documents with the intent to supplement the information contained therein, but in that case, Mattel's requests should use the word "modified" instead of "accessed." On the other hand, if evidence relevant to a claim for misappropriation is covered by such a broad net, then it is unclear why Mattel has not simply sought every non-privileged document ever viewed, created, accessed, and/or modified by Contreras and Castilla, without regard to whether the document referred or related to Mattel. The Court is unclear on how the "referring or relating to" restriction can be reasonably observed by MGA, since Mattel will surely argue – as it has already – that in particular circumstances MGA unwittingly benefitted from Mattel's confidential business and product plans – *i.e.*, MGA provided Castilla and Contreras with a general instruction to infuse Mattel's ideas into everything the two of them touched at MGA. Compounding the issue is the fact that "MGA competes" directly "with Mattel in the toy industry" and the vast majority (if not all) documents created and/or accessed by Contreras and Castilla probably refer or relate to Mattel.

By raising these issues, the Court is not suggesting that the parties must limit the requests; that is their prerogative. However, it cannot be disputed that the requests – in the context of this case's peculiar facts – essentially seek every document created and/or accessed by Contreras and Castilla while at MGA. The parties' are therefore ORDERED to submit supplemental briefing as to the relevance of all documents created and/or accessed by Contreras and Castilla while at MGA. MGA's present argument – "[t]here is no reason why MGA should be forced to also produce every document that these gentlemtn worked on at MGA" – is by itself unavailing

For the foregoing reasons, the Motion is GRANTED as to Request for Production Nos. 73 and 74 in Mattel's Fourth Set of Requests for Documents and Things, as well as Request for Production Nos. 11, 14, 25, 28, 39, and 42 of Mattel's Sixth Set of Requests for Documents and Things. MGA is ORDERED to produce to Mattel all non-privileged documents that are responsive to these requests, as well as a privilege log that lists any documents withheld on privilege grounds, on or before June 21, 2010. The parties are ORDERED to submit supplemental briefing concerning Request for Production Nos. 12, 13, 26, 27, 40, and 41 of Mattel's Sixth Set of Requests for Production that responds to the issues raised by the instant Order on or before June 14, 2010.

    IV.    **Mattel's Motion for Protective Order from the MGA Parties' Notice of Deposition of Mattel (Third Phase 2 Notice) and MGA's Cross-Motion to Compel Testimony of Mattel 30(b)(6)**

On April 27, 2010, MGA served Mattel with a Notice of Deposition that identified 27 topics, as well as sub-topics for each of the 27 topics. This was MGA's third Notice of Deposition to Mattel in Phase 2 of this lawsuit. Mattel objects to the topics as overbroad, duplicative, and unduly

burdensome.  On this basis, Mattel seeks a protective order as to the topics identified in MGA's Notice of Deposition.

Federal Rule of Civil Procedure 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The moving party bears the burden of showing that "good cause" supports the issuance of a protective order.  *See Rivera v. NIBCO, Inc.*, 364 F.3 1057, 1063 (9th Cir. 2004).  While Rule 26(c) reflects a Congressional desire to hedge against abuse of the Federal Rules' generally permissive discovery rights, *see United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982), it should not interfere with the obvious interest in transparency as to relevant issues.  *See Wood v. McEwan*, 644 F.2d 797, 801 (9th Cir. 1981).

The first topic in MGA's Notice of Deposition concerns Mattel's understanding of all agreements entered into between Carter Bryant and Mattel.  Mattel responds that it has already produced a 30(b)(6) witness to testify about the content of the agreements and that any testimony about "Mattel's understanding" of the agreement improperly solicits legal conclusions from a 30(b)(6) designee.  However, Mattel's authorities – *3M Co. v. Kanbar*, 2007 WL 1794936, at *2 (N.D. Cal. June 19, 2007) and *McCormick-Morgan, Inc. v. Teledyne Indus.*, 134 F.R.D. 275 (N.D. Cal. Feb. 11, 1991) – are inapposite.  In those cases, the Notices of Deposition improperly sought the "bases of an opponent's contentions."  *See id.* at 278; *see also* 2007 WL 1794936, at *2 (citing *Teledyne* and finding that deposition topics improperly solicited "legal conclusions").  But Mattel's understanding of the terms of a contract that it entered into with a party to this lawsuit is distinguishable – the parties' understanding of contract terms may be relevant in certain circumstances to the Court's interpretation of the contract.  *See Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 343 (2004).  Accordingly, Mattel's Motion is DENIED as to the first topic.

The second topic in MGA's Notice of Deposition concerns the employment agreements entered into between Mattel and its employees after 1975, including Mattel's understanding of those agreements, the consideration exchanged for those agreements, the number and type of employees who entered into those agreements, the individuals who drafted those agreements, the manner in which those agreements coincided with Mattel's ordinary policies for the disclosure of creative works.  Mattel's Fourth Amended Answer and Counterclaims alleges, *inter alia*, that former Mattel employees Machado, Trueba, Vargas, Bryant, and Brisbois, among others, breached their employment agreements by making away with Mattel's confidential information and Mattel's trade secrets.  Thus, the deposition topic appears on its face to be relevant to the issues in Phase 2 of this lawsuit.  Nevertheless, Mattel argues that it has already produced a witness as to its employment agreements.  Mattel also argues that the topic is overbroad because it encompasses Mattel employment agreements dating back to 1975, a time frame that the Discovery Master previously and in different circumstances considered overbroad.  Mattel's Motion is DENIED.  The evolution of Mattel's employment agreements, as well as the manner of their execution, may lead to the discovery of admissible evidence on the issue of whether any misappropriation of trade secrets or confidential information occurred with Mattel's express or implied

consent. And Mattel itself admits that due to the limitations imposed by the Discovery Master, it has not previously produced a witness as to the scope of these topics.

The third topic in MGA's Notice of Deposition concerns the procedures Mattel imposed in order to ensure that its confidential information and trade secrets were not misappropriated, including documents circulated to employees, employee training, Mattel's exit interview process, and the conflicts check performed by Mattel. Mattel argues that the topic is duplicative of prior 30(b)(6) testimony. But Mattel's prior 30(b)(6) designees did not testify as to the range of sub-topics identified by topic 3 and Mattel's Motion is therefore DENIED as to the third topic.

The fourth and fifth topics in MGA's Notice of Deposition concern a Mattel product named "Wee 3 Friends." MGA seeks testimony relevant to the conception of the product, the development of the product, the marketing of the product, the sales of the product, and the performance of the product. MGA argues that Mattel's "Wee 3 Friends" line infringed MGA's "4-Ever Best Friends" product. To state a claim for trade dress infringement, the plaintiff must allege (1) that its trade dress is inherently distinctive or has achieved secondary meaning; (2) that its trade dress is nonfunctional; and (3) that defendant's product creates a likelihood of consumer confusion. *Clicks Billiards v. Sixshooters Inc.*, 251 F.3d 1252, 1257-58 (9th Cir. 2001). To prove "secondary meaning," a plaintiff may rely upon "direct consumer testimony; survey evidence; exclusivity, manner and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and ***proof of intentional copying by the defendant***." *Art Attacks Ink v. MGA Entertainment Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (emphasis added). The noticed topics and sub-topics encompass the last factor – Mattel's market research, advertising, and development of the Wee 3 Friends product is reasonably calculated to lead to the discovery of admissible evidence. However, it is unclear what relevance the cost of the Wee 3 Friends' development, manufacturing, and shipping has to MGA's trade dress claims. The Motion is therefore GRANTED only as to topics 5(c), 5(e) and 5(f) and DENIED as to topic 4 and topic 5(a), 5(b), and 5(d).

The sixth and seventh topics in MGA's Notice of Deposition concern the packaging of Mattel's "Fashion Fever" product line(s). MGA argues that such discovery is relevant to MGA's affirmative claims, as well as MGA's defenses – namely, its unclean hands defense and its defense that unreleased product lines are not "trade secrets." Mattel responds that MGA's efforts to maintain the secrecy of its unreleased products has nothing to do with whether Mattel's unreleased products are "trade secrets." The California Uniform Trade Secret Act defines "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). It is unclear under this test how MGA's efforts to maintain the secrecy of its unreleased products bears on whether information concerning Mattel's unreleased products constitute trade secrets. While MGA may be able to prove that "it was routine in the industry for competitors to spy on one

another's products," MGA cites no authority for the proposition that such evidence is probative of whether information as to Mattel's unreleased products constitute "trade secrets" – the Court is aware of no case that holds that the economic value of information kept confidential is somehow diluted when other information of its type is freely exchanged. Accordingly, the Motion is GRANTED WITHOUT PREJUDICE as to the sixth and seventh topics. MGA is granted leave to submit supplemental briefing that cites authority in support of the relevance of testimony concerning the "Fashion Fever" product line(s).

The eighth topic in MGA's Notice of Deposition concern Mattel's receipt of non-public and/or confidential information about competitors products, as well as information concerning Mattel's efforts to spy on competitors' showrooms at the Hong Kong or New York Toy Fair(s). Mattel objections that it cannot produce a witness as to the topic because "[w]hat information *competitors* consider non-public and/or confidential is not generally within Mattel's knowledge nor readily available to it." *See* Mot. at 13. First, Mattel's requests for production of documents concerning MGA employee trade secret use (discussed *supra*) impose the exact burdens upon MGA that Mattel complains of here. Just as it is difficult for Mattel to determine which documents in its possession were considered "confidential" by MGA, so too is it difficult for MGA to determine which documents created by Castilla and/or Contreras "refer or relate to" Mattel confidential and/or trade secret information. Second, the key word in Mattel's sentence is "***generally***": Mattel may not know whether each and every document constitutes a competitor's confidential information, but it surely knows whether some documents are confidential and/or trade secret. That said, Mattel's arguments in its reply are convincing because the manner in which competitors protected their information does not appear relevant to whether Mattel's proprietary information is entitled to "trade secret" protection. Nor has MGA substantiated the relevance of such information to an unclean hands defense. And finally, the request is not limited in time. That said, Mattel's conduct in spying on competitors' showrooms may be admissible under FRE 404(b) and relevant to whether MGA knowingly spied on MGA's showroom. MGA has simply failed to provide adequate briefing as to this topic and is ORDERED to submit supplemental briefing on or before June 14, 2010 that addresses the relevance of this topic to the claims in this lawsuit. The Motion is GRANTED WITHOUT PREJUDICE as to this topic pending the consideration of MGA's supplemental briefing.

The ninth topic in MGA's Notice of Deposition seeks communications between Mattel and its licensees regarding potential or actual licenses with MGA. Mattel claims that the topic is overbroad and unduly burdensome, as it would require Mattel to educate a witness about every communication between Mattel's directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, subsidiaries, or affiliates, past or present, that concern MGA licenses. However, the mere fact that Mattel engaged in mass communication about a competitor's licenses does not render the topic overbroad. It simply means that Mattel has routinely engaged its own licensees about their relationship with MGA. Moreover, MGA cites a communication between Mattel Chief Executive Officer Bob Eckert and Mattel President Neil Friedman in which Eckert asked Friedman whether Eckert should "kill" MGA's license with one of Mattel's licensees. Thus, the topic

indisputably seeks relevant information, but is potentially overbroad, especially in its definition of "communications" – which would appear to include innocuous spreadsheets that merely detail MGA's licenses. Accordingly, the Court ORDERS that Mattel either designate a 30(b)(6) witness to testify as to the topic or produce Bob Eckert and/or Neil Friedman to testify as to Mattel's practice – if any – of communicating with its licensees about actual or potential MGA licenses.

The tenth topic in MGA's Notice of Deposition seeks information concerning efforts to reduce shelf space for Bratz dolls or reposition Bratz dolls on retailers' shelves. The request is not limited to efforts by Mattel, as the term "Mattel" is defined by the Notice of Deposition. Mattel's remaining argument is unconvincing: Mattel argues that "there are any number of legitimate ways that companies routinely seek to increase shelf space or obtain more favorable placement of their products," but Rule 26 does not provide for the discovery of only probative evidence; it covers all *relevant* evidence. If Mattel sought to reposition Bratz dolls on retailers' shelves, it is for the jury – not Mattel – to decide whether such an effort was "legitimate" or not. Accordingly, the request is modified to include only efforts by Mattel (as the term "Mattel" is defined in the Notice of Deposition) and the Motion is DENIED as to the remainder of the tenth topic.

The eleventh topic in MGA's Notice of Deposition seeks information about how Mattel obtained a number of documents that concern MGA and MGA products. As before, the Court is aware of no authority that supports MGA's claim that "[t]he circumstances whereby Mattel acquired this information are directly relevant to Mattel's claim that its similar categories of information are a trade secret." *See* Opp. at 15. At the same time, Mattel does not substantiate its claim that "none of the information in these Exhibits is related, directly or otherwise, to the transactions at issue in Mattel's Counterclaims." Reply at 12. Accordingly, the Motion is GRANTED WITHOUT PREJUDICE as to request eleven and the Court directs both parties to file supplemental briefs that address the Court's stated concerns on or before June 14, 2010.

Topics twelve, thirteen, fourteen, fifteen, twenty seven in MGA's Notice of Deposition seek information about the origin, use, and revisions to a selection of documents that Mattel has produced during discovery. The documents are "Mattel-generated presentations or Mattel-commissioned reports [that] engage[] in a comparison of MGA's products to Mattel's products, and [] reveal detailed research and analysis regarding [] proprietary MGA information." First, for reasons outlined above, MGA has not submitted any authority to support the relevance of the documents to trade secret misappropriation claims and/or an unclean hands defense. Second, Mga's argument that the documents are relevant to Mattel's lost profit claims is more convincing – *i.e.*, the documents reflect Mattel's marketplace challenges prior to the arrival of the Bratz line of dolls. Accordingly, the Motion is DENIED as to topics twelve, thirteen, fourteen, fifteen, and twenty seven of MGA's Notice of Deposition.

Topics sixteen and seventeen of MGA's Notice of Deposition concerns all fashion doll concepts considered by Mattel between 1990 and 2002, as well as the reason for any acceptance or

rejection of certain doll concepts, and any market research concerning such doll concepts. MGA has long requested discovery into the issue of whether Mattel would have developed a Bratz line of dolls if presented with the opportunity. Both parties acknowledge than on April 9, 2010, the Court restricted MGA's discovery into *future* Mattel product lines. Now, Mattel argues that discovery into *prior* Mattel product lines should be likewise disallowed. But – as the Court noted in the April 9, 2010 Order – MGA may investigate the circumstances in which Mattel accepted or rejected certain doll lines throughout the 1990s because it may shed light on whether Mattel maintained interest in a Bratz line of dolls. Mattel's concern that MGA should not be allowed to "dig into Mattel's trove of development ideas" is unavailing. These ideas were either made public or were inchoate. And Mattel has long sought such information from MGA, including extensive testimony about MGA's product development procedures and business plans. Nevertheless, it is unclear how the issues raised in the topics are relevant to Phase 2, in light of the Court's Order denying Mattel leave to assert Bratz-related trade secret claims. Accordingly, the Motion is GRANTED WITHOUT PREJUDICE as to topics sixteen and seventeen and both parties are directed to file supplemental briefing on or before June 14, 2010 regarding the relevance of Bratz-related discovery in Phase 2.

Topic eighteen of MGA's Notice of Deposition concerns Mattel internal research about MGA products. Again, it is unclear how this topic is relevant to Phase 2 issues. Accordingly, the Motion is GRANTED WITHOUT PREJUDICE as to topic eighteen and both parties are directed to file supplemental briefing regarding the relevance of this topic to Phase 2 issues on or before June 14, 2010.

Topic nineteen of MGA's Notice of Deposition seeks to quantify Mattel's claim that certain Mattel product lines were harmed by MGA's conduct. While Mattel argues that the topic impermissibly seeks expert opinion, that concern can be resolved by limiting sub-topic 19(c) and granting a protective order as to sub-topics 19(d) and (e). Mattel's remaining claims as to undue burden are unavailing: if Mattel argues that thousands of its products were harmed by MGA's conduct, then it should be capable of specifically substantiating harm. Accordingly, the Motion is GRANTED as to sub-topics 19(d) and 19(e) and the portion of sub-topic 19(c) that reads "including quantification and analysis of lost profits, lost sales, price erosion, lost opportunities or diversion of sales by period, region, product and brand." The Motion is DENIED as to the remaining portions of topic 19.

Topic twenty of MGA's Notice of Deposition seeks information about how Mattel has generally treated its former employees who engage in the purported misappropriation of trade secrets. The topic also requests that Mattel substantiate losses it allegedly suffered as a result of MGA's conduct. Finally, the topic seeks information as to the basis upon which Mattel contends that MGA's "Moxie" line of dolls constitutes confidential and trade secret information. The "all aspects" language of topic 20(e) improperly solicits legal conclusions from a 30(b)(6) witness. *See Lenz v. Universal Music Corp.*, 2010 WL 1610074, at *3 (N.D. Cal. April 20, 2010). Accordingly, the Motion is GRANTED WITHOUT PREJUDICE as to sub-topics 20(c), 20(d), and 20(e) and DENIED as to sub-topics 20(a) and 20(b). MGA is advised to narrow sub-topics 20(c)-(e) in the event that MGA issues a subsequent notice of deposition as to such topics.

Topic twenty-one of MGA's Notice of Deposition concerns any and all forensic analysis that Mattel intends to rely upon at trial. Mattel argues that the methodology of its forensic analysis is the province of expert testimony and the Court agrees. The Motion is GRANTED as to topic twenty-one.

Topic twenty-two of MGA's Notice of Deposition concerns the contents of a number of Mattel copyright applications for Bratz drawings. The Court ORDERS both parties to submit supplemental briefing as to the relevance of this claim to Phase 2 on or before June 14, 2010. While MGA notes that Mattel has alleged a RICO predicate act of criminal copyright infringement, it is unclear why such a claim is not duplicative of the issues raised in Phase 1 and why the doctrine of collateral estoppel does not bar Mattel's criminal copyright infringement predicate claims insofar as they relate to the alleged theft of "Bratz works," *see* FAAC ¶ 124(f). The Court GRANTS WITHOUT PREJUDICE the Motion pending the submission of supplemental briefing by the parties.

Topic twenty-three of MGA's Notice of Deposition concerns a document entitled "Project Doll" and requests information about Mattel's confidentiality agreement with Bain & Company, which presumably assisted Mattel's development of "Project Doll." Mattel summarily claims that it cannot be reasonably expected to produce a knowledgeable witness as to a document that Mattel created and about Mattel's own relationship with Bain & Company. Indeed, Mattel *produced* the document at issue – so it should know where the document came from and how the document got there. The Motion is DENIED as to topic twenty-three.

Topic twenty-four of MGA's Notice of Deposition concerns the use of trapezoidal packaging by Mattel for any of its products, as well as efforts to determine whether the use of such trapezoidal packaging infringed on any trademarks or copyrights. Mattel claims the topic is unlimited as to time. In light of the trade dress claims at issue, the Court agrees. The parties are ORDERED to meet and confer on or before June 14, 2010 and temporally limit the topic by stipulation. The Motion is DENIED as to the remainder of topic twenty-four.

Topic twenty-five of MGA's Notice of Deposition concerns "[a]ll Mattel financial documents that have been produced in the course of this litigation, including but not limited to all Mattel brand profit and loss statements." The topic is overbroad – given the volumes of discovery in this case, it is simply unreasonable (and likely unproductive) to have a witness testify as to every document. In addition, such a deposition would be unduly consumptive of time: in many cases, the documents speak for themselves. Accordingly, MGA is ORDERED to identify, on or before June 14, 2010, to Mattel with specificity those documents as to which it intends to seek deposition testimony for a time period not to exceed six (6) hours. Mattel shall produce a witness as to those documents.

Topic twenty-six of MGA's Notice of Deposition seeks testimony as to the circumstances in which Mattel obtained copyright registrations for certain Bratz characters in Brazil. The Court agrees with Mattel that the request does not seek relevant information. The Motion is GRANTED as to

topic twenty-six.

All supplemental briefing directed by the instant Order shall be filed by – and a courtesy copy shall be hand delivered to Chambers by – 12:00 p.m. PST on June 14, 2010. The Court shall issue a ruling on the remaining topics by that evening. Mattel shall produce its 30(b)(6) designee(s) in compliance with the instant Order as well as the Court's forthcoming June 14, 2010 Order, on or before June 16, 2010. The instant Order does not preclude the parties from resolving disagreements by meet and confer and thereby avoiding the need for supplemental briefing. However, the parties may not re-negotiate the June 16, 2010 deadline for Mattel to produce its 30(b)(6) designee. Finally, the Mattel designee(s) combined time in deposition shall not exceed 32 hours and depositions shall be completed on or before June 23, 2010.

### V. Mattel's Motion to Compel Documents from MGAE De Mexico, S.R.L. de C.V. and MGA Entertainment, Inc.

Mattel moves to compel MGA de Mexico, S.R.L. de C.V. ("MGA Mexico") and MGA Entertainment, Inc. ("MGA") to produce non-privileged documents responsive to certain requests for production. The requests address different issues.

Requests 19 and 20 of Mattel's First Set of Requests for Production to MGA Mexico seek documents that refer or relate to Machado's transfer to MGA's California offices, as well as documents concerning Machado, Vargas, and Trueba's travel to Los Angeles, California between January 1, 2004 and April 20, 2004. MGA Mexico claims it complied with the requests by producing 40 boxes of materials to Mattel on September 18, 2009, including the hard drives of the individuals in question. Mattel responds that MGA's/MGA Mexico's "meager" production is insufficient. But 40 boxes is not meager and it is unclear why MGA or MGA Mexico should or would possess more than a few documents about the travel plans of three individuals. Because the Court has no way of measuring the extent of MGA and MGA Mexico's responsiveness, the Court GRANTS the Motion as to all non-privileged documents responsive to the requests at issue. MGA Mexico is ORDERED to produce all remaining responsive documents on or before June 14, 2010 and submit a statement of compliance with the Court.

Requests 21 and 24 in Mattel's First Set of Requests for Production to MGA Mexico seek all post-March 1, 2007 business travel documents concerning Vargas and Trueba, and any travel by the individuals to the United States. Mattel argues that such documents are relevant to show that the alleged RICO enterprise engaged in interstate commerce. MGA responds that the requests are irrelevant and overbroad. The Court agrees with the latter objection. While a RICO plaintiff "must demonstrate that the enterprise . . . is one engaged in, or having an effect on, interstate commerce," *see Musick v. Burke*, 913 F.2d 1390, 1398 (9th Cir. 1990), and while Vargas and Trueba were employed by MGA Mexico – a member of the alleged enterprise – Mattel can obtain discovery about the individuals' travel through less burdensome contention interrogatories or requests for admission. If MGA responds

that the two individuals did not engage in interstate travel after March 2007, Mattel can re-submit its request as to these requests for production. Accordingly, the Motion is DENIED WITHOUT PREJUDICE as to Requests for Production 21 and 24.

Requests 22 and 23 in Mattel's Second Set of Requests for Production to MGA Mexico appear to overlap: the former seeks all documents concerning Machado, Vargas, or Trueba's travel to a country other than Mexico and the latter seeks all documents concerning any travel by the trio to the United States, including Los Angeles or Van Nuys. Mattel argues that the travel records of Machado, Vargas, and Trueba are relevant to establish personal jurisdiction over MGA Mexico. Again, this discovery can and should be obtained through less burdensome means, like interrogatories and requests for admission. It appears that Mattel has already deposed Trueba about the extent of her travel, and Rule 26(b)(2)(C)(I) provides that the Court must limit "unreasonably cumulative or duplicative" discovery *or* discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(I). Rule 26 likewise mandates that the Court limit discovery when "the party seeking discovery has had ample opportunity to obtain the information by discovery." Fed. R. Civ. P. 26(b)(2)(C)(ii). Here, the Court has ordered MGA Mexico to produce a 30(b)(6) designee on multiple occasions and has ordered both Machado and Trueba to appear for deposition in spite of their invocation of the privilege against self-incrimination. In addition, Mattel has engaged Vargas in unrestricted settlement discussions in Mexico. Mattel's implication that travel records are the "silver bullet" upon which the exercise of jurisdiction hinges does not square with the facts of the discovery process thus far. The Motion is DENIED as to requests 22 and 23.

Requests 1-32, 36, 38-44, and 48-55 in Mattel's Seventh Set of Requests for Production to MGA encompass a variety of topics.

Requests 1 through 4 relate to the search of MGA Mexico's offices by Mexican authorities on October 27, 2005. All non-privileged documents responsive to these requests must be produced. (Indeed, the parties do not specifically address the requests in their briefing.) Mattel alleges a close relationship between MGA and its Mexican subsidiary, such that the parent might possess documents relevant to show the origin of the documents discovered by Mexican authorities. The Motion is GRANTED as to requests 1 through 4.

Request 5 seeks "[a]ll communications sent or received from MGA Mexico on October 26, 27, or 28, 2005." Since the parties did not provide the Court with the definitions of the terms used in the request for production, the syntax of the sentence leaves unclear whether the request encompasses communications "sent to" MGA Mexico and/or communications "received by" MGA Mexico. Nor is the sentence clear on whether communications received "from" MGA Mexico that MGA did not itself receive are encompassed by the request. In any event, the request is overbroad. Mattel offers to narrow the request to "communications that refer or relate to the search by Mexican law enforcement or refer or relate to Mattel." But that too is vague and overbroad – the term "relate to" is ambiguous. The Motion is therefore GRANTED IN PART AND DENIED IN PART as to request 5,

such that MGA must only produce the identified communications "that refer or relate to the search by Mexican law enforcement or refer to Mattel."

Requests 6 and 7 seek all records of phone calls made to or from MGA Mexico and Susana Kuemmerle on October 27, 2005, the date of the raid by Mexican law enforcement. The requests are not burdensome and relevant to identify the individuals with knowledge of the raid and the origin of the documents seized during the raid. The Court therefore GRANTS the Motion as to requests 6 and 7. However, in order to protect the individuals who received or made calls to MGA Mexico and Kuemmerle from harassment, the Court ORDERS Mattel to seek leave from the Court before noticing any individuals identified on the basis of the phone records for deposition or before serving subpoenas upon such individuals.

Requests 8 through 16 seek documents concerning laptops and e-mail addresses issued by MGA to Machado, Vargas, and Trueba and all e-mail addresses used by Machado, Vargas, and Trueba. The parties do not discuss these requests in their papers. The request do not impose an undue burden and seek relevant information about the devices and online accounts potentially used to perpetuate the conduct alleged in the FAAC. Accordingly, the Motion is GRANTED as to Requests 8 through 16.

Requests 17 through 19 seek all e-mail communications sent to or received by Machado, Vargas, and Trueba between January 1, 2004 and December 31, 2004. Mattel argues that such documents are relevant to its trade secret misappropriation and RICO claims because "[t]his is a critical time period when Machado, Trueba, and Vargas left Mattel to join MGA Mexico and exploited Mattel's trade secrets in order to increase MGA Mexico's market share." *See* Mot. at 8-9. But "critical time period" is not a recognized grounds to seek overbroad discovery. For example, Mattel has alleged that MGA communicated with Bryant about the Bratz line of dolls during 2000. But, to the Court's knowledge, Mattel did not seek "all communications" to and from Bryant and MGA during this "critical time period." Mattel may complain that the gravamen of its Phase 2 claims is that MGA stole its employees and that every communication by Machado, Vargas, and Trueba is therefore relevant. But even under that theory, the requests are overbroad. The requests encompass e-mails from Machado, Vargas, and Trueba to their family members, their friends, their significant others, and their doctors. The potential for embarrassment is obvious. And the risk of burdensome and costly discovery can be avoided. Accordingly, the Court GRANTS IN PART AND DENIES IN PART the Motion as to requests 17 through 19 and ORDERS MGA to produce responsive documents to the requests subject to the limitation that the documents encompass "all communications sent to or received from Machado, Vargas, and Trueba, and each of them, *from MGA and MGA Mexico* [as those terms are defined in the requests for production], as well as all communications sent to or received from Machado, Vargas, and Trueba, and each of them, that refer to either: (1) MGA or MGA Mexico; or (2) MGA or MGA Mexico *and* Mattel and/or Mattel Mexico."

Requests 20 and 21 concern a compact disc produced by MGA at Bates Number MGA 3815506. MGA has not objected to these requests. The Motion is therefore GRANTED and MGA

shall produce responsive information on or before June 21, 2010.

Requests 22 through 26 seek documents concerning Machado, Vargas, and Trueba's travel to the United States and to any country other than Mexico. The requests also seek any passports issued to the three individuals by any country. The Court has already ruled that requests that concern all travel are overbroad and that discovery relevant to establish personal jurisdiction and the interstate activities of the purported RICO enterprise can be achieved through contention interrogatories and requests for admission. The requests concerning the individuals' passports is not burdensome and relevant to verify representations concerning their travel. The Motion is DENIED WITHOUT PREJUDICE as to requests 22 and 23 and GRANTED as to requests 24, 25, and 26.

Requests 27 through 29 seek all expense reports received by MGA for Machado, Vargas, and Trueba between January 1, 2004 and December 31, 2005. MGA has not objected to the requests. The Motion is therefore GRANTED as to requests 27, 28, and 29.

Request 30 seeks "[d]ocuments sufficient to identify all persons who entered or exited the offices of MGA Mexico on January 3, 2005." MGA has not objected to the request. The Motion is therefore GRANTED as to request 30.

Request 31 seeks "[a]ll résumés, curricula vitae, or other summaries of work history and experience presented by Machado, Trueba and/or Vargas to Isaac Larian, Susana Kuemmerle, and/or Thomas Park during the meeting held in Mexico City in March of 2004." MGA has not objected to the request. The Motion is therefore GRANTED as to request 31.

Request 32 seeks "[a]ll documents referring or relating to the meeting between Machado, Trueba, Vargas, Isaac Larian, Susana Kuemmerle, and/or Thomas Park held in Mexico City in March of 2004." Mattel represents that MGA has objected to the request, but MGA's opposition does not appear to address the request. And the request plainly seeks relevant information about any direction provided by and knowledge possessed by Isaac Larian as to the departing Mattel employees. The Motion is therefore GRANTED as to request 32.

Request 36 seeks "[a]ll security logs, check-in and/or check-out forms, or other documents listing individuals who have entered or exited MGA's offices in Van Nuys, CA, referring or relating to Machado, Vargas, or Trueba, between January 1, 2004 and December 31, 2005." The request is not addressed by MGA's Opposition and, in addition, it seeks relevant information about the scope of coordination, if any, between MGA, MGA Mexico, and the three departing Mattel employees. The Motion is therefore GRANTED as to request 36.

Request 38 seeks "[a]ll calendars used by Isaac Larian for the month of March 2004." The Motion is GRANTED IN PART AND DENIED IN PART. There is no need for Mattel and its attorneys to find out about Larian's various personal activities during the month of March 2004. The

Court therefore ORDERS that MGA shall have leave to redact the identified calendars to exclude personal information, but that MGA shall produce unredacted versions of the calendars to the Court *in camera* so as to ensure that MGA does not abuse its discretion in determining which information qualifies as "personal."

Request 39 seeks all communications between MGA and Mary Carmen Mendez dated January 1, 2004 and December 31, 2004. The request is not addressed by MGA's Opposition and appears unduly burdensome and relevant. The Motion is therefore GRANTED as to request 39.

Requests 40 through 42 seek all communications between MGA and Machado, Vargas, and Trueba between January 1, 2004 and December 31, 2004. Unlike requests 17 through 19, these requests are narrowly tailored to communications between MGA and the departing Mattel employees during the "critical" time period. The Motion is therefore GRANTED as to requests 40 through 42.

Requests 43 and 44, and 48 seek "[a]ll documents referring or relating to the first transmission of the MGA produced Mattel documents to counsel in the United States, including but not limited to documents showing the date thereof," and "[a]ll documents referring or relating to the first transmission to counsel in the United States of any copy of any documents collected by Mexican authorities during their search of the offices of MGA Mexico on October 27, 2005, including but not limited to the date thereof," and "[a]ll communications regarding the identity, location, transmission or receipt of the materials that Ms. Kuemmerle testified she sent counsel . . ." These requests facially seeks attorney-client communications. The remaining language – "referring or relating to" – would appear to be captured by an ordinary request seeking documents concerning the underlying "materials" and "documents" obtained by Mexican authorities. The Motion is therefore DENIED WITHOUT PREJUDICE as to requests 43 and 44. Mattel may file supplemental briefing that clears up the wording of the requests, the definitions to which were not provided to the Court by Mattel.

Requests 49 through 53 seek broad discovery into MGA Mexico's relationship with its retailers, including but not limited to: (1) terms of sale between MGA Mexico and its retailers; (2) trade terms between MGA Mexico and its retailers; (3) contracts or agreements between MGA Mexico and its retailers; (4) purchasing requests, orders, invoices between MGA Mexico and its retailers; (5) all other communications between MGA Mexico and its retailers. The date limitation for the requests is between January 1, 2004 and December 31, 2005. The requests depart from the Court's January 26, 2010 Order limiting such "before and after" discovery to six months before and six months after the former Mattel employees' employment by MGA Mexico. Moreover, requests 51 through 53 appear unduly burdensome and duplicative of the prior requests with respect to the facts of this case. The Court therefore GRANTS IN PART AND DENIES in part the Motion as to requests 49 through 53 as follows: (1) MGA shall produce to Mattel all documents responsive to requests 49 and 50 for the time period of February-March, 2004 and July-August, 2004; (2) the Motion is DENIED WITHOUT PREJUDICE as to requests 51 through 53. Mattel may move to compel responsive documents to the remaining requests solely on the basis of the documents obtained as a result of the instant Order.

Requests 54 and 55 seek all documents and communications "referring or relating to the termination of Machado, Vargas, or Trueba." MGA does not contest the relevance of the requests in its Opposition and the requests seek relevant information about the nature of the three individuals' employment with MGA Mexico and Mattel Mexico. The Motion is therefore GRANTED as to requests 54 and 55.

It is so ORDERED. All production obligations imposed by the instant Order shall be completed on or before June 21, 2010. All supplemental briefing directed by the instant Order shall be filed by – and a courtesy copy hand delivered to Chambers by – June 14, 2010.

The Clerk shall serve this minute order on all parties to the action.