# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                                Date: June 9, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

DOCKET ENTRY
[I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                     Date:_____ Deputy Clerk: _____

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Stephanie Mikhail | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                         NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER OVERRULING MATTEL'S OBJECTIONS TO DISCOVERY MATTER ORDER NO. 97

      Before the Court are Mattel, Inc. ("Mattel")'s Objections to Discovery Matter Order No. 97 (the "Objections"). The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, the Court OVERRULES the Objections and ORDERS Mattel to produce the documents corresponding to entry nos. 1, 2, and 3 of the December 21, 2009 Supplemental Privilege Log of Lambda Investigations, Inc., as well as the videos corresponding to entry nos. 11 and 12 of the December 21, 2009 Supplemental Privilege Log of Lambda Investigations, Inc. to MGA Entertainment, Inc. and Isaac Larian (collectively "MGA") on or before June 15, 2010.

      In Order No. 97, the Discovery Master ordered Mattel to produce certain documents that Mattel had designated attorney-client privileged and/or attorney work-product. Mattel challenges the Discovery Master's ruling as to a sub-set of the documents ordered to be produced. The documents at issue include surveillance logs created by investigators retained by Mattel's Global Security and Investigation division. The surveillance logs detail investigators' efforts to trail departing Mattel

employee Ron Brawer ("Brawer").  Also at issue are two surveillance videos of Mr. Brawer's activities.

Rule 26(b)(3) protects against the disclosure of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).  Videotapes, including surveillance videotapes, taken by an individual acting at the direction of counsel and in anticipation of litigation may constitute work product material.  *Fletcher v. Union Pacific R.R. Co.*, 194 F.R.D. 666, 670 (S.D. Cal. 2000).  The party invoking the protections of the work product doctrine bears the burden of showing that the documents and tangible things were prepared in anticipation of litigation.  *See A. Farber & Partners, Inc.*, 234 F.R.D. 186, 192 (C.D. Cal. 2006); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644 (C.D. Cal. 2005).  Work product documents and tangible things may nevertheless be discovered if the party seeking discovery shows "it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Kandel v. Brother Intern. Corp.*, 683 F. Supp. 2d 1076, 1084-85 (C.D. Cal. 2010) (determining whether "plaintiffs have met their burden" of showing a substantial need for the materials sought to be discovered).

Mattel has failed to satisfy its burden of showing that the investigation reports and videos were prepared in anticipation of litigation.  Of course, Mattel and its in-house counsel argue that the surveillance reports include the following language: "The following report was prepared in anticipation of litigation." But stock phrases do not overcome the Court's charge to examine the facts to determine whether the documents and tangible things were prepared in anticipation of litigation. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987).  The Ninth Circuit has held that "to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989).  In *In re Grand Jury Subpoena (Mark Torf/Torf Environ. Mgmt.)*, 357 F.3d 900, the Ninth Circuit adopted the "because of" standard that "does not consider whether litigation was a primary or secondary motive behind the creation of a document," but instead "considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of that litigation[.]'" *Id.* at 908 (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).

Mattel in-house counsel Jill Thomas declares that several lawyers in Mattel's Law Department commenced an investigation into the "possible theft of trade secrets" by departing employee Ron Brawer.  *See* Thomas Decl. ¶ 2.  Mattel's former Vice President of Global Security Richard DeAnda was asked to oversee the surveillance of Brawer.  *Id.* ¶ 2.  DeAnda worked with an outside investigation service named Lambda Investigations, Inc. ("Lambda") that was hired by Mattel to track Brawer's activities and whereabouts.  *Id.* ¶ 3.  The surveillance reports and videos were purportedly prepared "in anticipation of potential litigation against Mr. Brawer." *Id.* ¶ 4.

The fact that Mattel eventually filed a lawsuit against Brawer is not dispositive.  *See*

*Marceau v. IBEW Local 1269*, 246 F.R.D. 610, 614 (D. Ariz. 2007) (finding no work product protection over audit "conducted between April 28, 2004 and November 20, 2004," approximately eleven months before lawsuit commenced).

The letter from Lambda to DeAnda describes the assignment as follows: "You specifically requested that conduct a Sub-Rosa investigation of the Subject in order to determine the nature of his daily activities, including those related to possible employment and business contacts." The reports conclusion further alludes to its purpose: determining whether Brawer was working for a competitor while still employed by Mattel. By contrast, Ms. Thomas' own description of the legal department's investigation has nothing to do with Brawer's "employment and business contacts". Rather, the legal department was engaged in an investigation of "the possible theft of trade secrets" by Brawer. *See* Thomas Decl. ¶ 2. It is not dispositive to the Court's analysis that Ms. Thomas' description of the investigation departs from the language used by the investigation report itself. However, the discrepancy between Thomas' representation and the reports belies Mattel's claim that the reports were made in anticipation of a litigation concerning Brawer's misappropriation of trade secrets.

Certainly, the discovery of damaging facts or images – *e.g.*, Brawer turning over Mattel files to MGA executives or Brawer absconding with Mattel trade secret documents – would potentially give rise to litigation. But there is no evidence that litigation was anticipated at the time the actual investigation was conducted. Indeed, Thomas' declaration does not indicate that Mattel had any concrete evidence of wrongdoing by Brawer prior to the investigation, other than the claim that Brawer "appeared to be disputing that he owed certain obligations to Mattel." Thomas Decl. ¶ 2. It can hardly be concluded on the basis of Mattel's representations that it "anticipated" any type of litigation, whether potential or actual, at the time this investigation was conducted. The evidence appears to show that Mattel's investigation of Brawer was an attempt to uncover any potential wrongdoing. *See, e.g.*, Summary Section of entry 1. To treat these documents and videos are work product would extend work product protection to every exit interview conducted by an attorney, or every hard drive analysis performed upon a departing employee's computer. Such an outcome would not comport with the Ninth Circuit's requirement that the "document was created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d at 908.[1]

Perhaps Mattel believes that the fact that it conducted such an unusual investigation of Brawer – hiring a team of investigators to sit outside his home and follow him around – proves that this was no ordinary due diligence project. But even Jill Thomas concedes that Brawer was "a senior Mattel executive with access to highly sensitive Mattel trade secrets." Thomas Decl. ¶ 2. It may be the case

---

[1] Jill Thomas also declares that she will provide the Court with more documents and testimony *in camera* to support applicability of the work product doctrine. *See* Thomas Decl. at 4. The Court appreciates but declines Thomas' request. In this case, unlike many others, the documents and tangible things speak for themselves.

that Mattel tracks all such high level departing executives who leave for competitors in this manner. That does not mean that Mattel anticipates suing all of them.

   That leaves Mattel with the argument that any and all activities directed by its "Law Department" and made in anticipation of litigation.  Courts in this Circuit have rejected that very claim.  *See Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 2050999, at *3 (E.D. Cal. July 20, 2006) (collecting cases).  This lawsuit has revealed the close involvement of Mattel's Law Department in the day-to-day activities of the business structure, including (as here) efforts to make sure that former employees do not take actions adverse to Mattel.

   Finally, even if the investigation reports and videos were work product, MGA has a "substantial need" for such items.  Discovery in this case is approaching completion, substantive motion practice is underway and both parties have been instructed to prepare for trial within a matter of months.  Mattel still does not explain whether, and how, it intends to use the investigation reports and videotapes concerning Brawer, a factor relevant a court's analysis.  *See Hummer v. BNSF Ry. Co.*, 2006 WL 3523752, at *1 (C.D. Ill. Dec. 6, 2006); *Forbes v. Hawaiin Tug & Barge Corp.*, 125 F.R.D. 505, 507-08 (D. Hawaii 1989).  Moreover, the reports and videotapes reveal substantial information about Mattel's efforts to track Brawer's whereabouts and ensure that Brawer did not make off with Mattel trade secrets.  The videotapes and investigation reports also reveal, in great detail, Brawer's actual activities in the days prior to his departure from Mattel.  Such information is of obvious relevance to MGA's defense in this action.  And the information is not immediately known by MGA, absent Brawer's ability to recall his specific whereabouts of more than five years ago.  *C.f. Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 153 (S.D. Ind. 1993) (denying disclosure on the grounds that "Plaintiff has offered nothing to demonstrate that the evidence contained in the surveillance tapes is unique ***or of a higher quality than that which is available to him***.").  The circumstances of Brawer's departure from Mattel has become a source of some contention between the parties.  The relevant events took place more than five years ago.  Mattel is in possession of reports and videotapes directly relevant to those events.  There is no other conceivable source of information with such quality, detail, and conclusiveness.

   Mattel's Objections are therefore OVERRULED.  Mattel is ORDERED to produce the documents corresponding to entry nos. 1, 2, and 3 of the December 21, 2009 Supplemental Privilege Log of Lambda Investigations, Inc., as well as the videos corresponding to entry nos. 11 and 12 of the December 21, 2009 Supplemental Privilege Log of Lambda Investigations, Inc. to MGA Entertainment, Inc. and Isaac Larian (collectively "MGA") on or before June 15, 2010.

   The Clerk shall serve this minute order on all parties to the action.