1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     michaelzeller@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
5   Facsimile: (213) 443-3100

6   Attorneys for Mattel, Inc.

7               UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                     SOUTHERN DIVISION

10  MATTEL, INC., a Delaware          CASE NO. CV 04-9049 DOC (RNBx)
    corporation,                      Consolidated with
11                                    Case No. CV 04-09059
                Plaintiff,            Case No. CV 05-02727
12
          vs.
13                                    Hon. David O. Carter
    MGA ENTERTAINMENT, INC., a
14  California corporation, et al.,   **MATTEL, INC.'S SUPPLEMENTAL
                                      BRIEF PURSUANT TO ORDER OF
15              Defendant.            JUNE 7, 2010 RE MOTION FOR
                                      PROTECTIVE ORDER**
16
    AND CONSOLIDATED ACTIONS          Date:   TBD
17                                    Time:   TBD
                                      Place:  Courtroom 9D
18
                                      **Phase 2**
19     **PUBLIC REDACTED**            Discovery Cut-off:  TBD
                                      Pre-trial Conference:  TBD
20                                    Trial Date:  TBD

21

22

23

24

25

26

27

28

00505.07975/3537401.1

1

# **TABLE OF CONTENTS**

2
**Page**

3
I.     TOPIC NO. 11 ............................................................................... 1

4
II.    TOPIC NOS. 16 AND 17 .............................................................. 3

5
       A.    Several Phase 2 Claims and Defenses Concern Bratz-Related
6            Issues ................................................................................... 4

7      B.    Nothing in the Phasing Order Purported to Address or Dispose of
             All Such Bratz-Related Claims .......................................... 8
8
       C.    The Parties Have Litigated Bratz-Related Issues In Phase 2 ........... 11
9
       D.    Evidence of MGA's Theft of Bratz Will Be Prominent At Trial ......... 13
10
       E.    Nevertheless, Topic Nos. 16 and 17 Should Not Be Compelled .......... 14
11
III.   TOPIC NO. 18 ............................................................................. 14
12
IV.    TOPIC NO. 22 ............................................................................. 15
13
       A.    Mattel's Criminal Copyright Infringement Predicate Act Is Not
14           Duplicative of Phase 1 Issues ............................................... 15

15     B.    Mattel's Criminal Copyright Infringement Predicate Act
             Allegations Are Not Barred By Collateral Estoppel ............................ 16
16
       C.    Nevertheless, Topic No. 22 Should Not Be Compelled ..................... 19
17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4   American Computech, Inc. v. National Med. Care, Inc.,
      959 F.2d 239 (9th Cir. 1992) ....................................................... 9

5

6   Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n,
      620 F.2d 1360 (9th Cir. 1980) ............................................... 15, 16

7   Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,
      402 U.S. 313, 329 (1971) ...................................................... 10, 16

8

9   Danjaq, LLC v. Sony Corp.,
      263 F.3d 942 (9th Cir. 2001) .................................................. 9, 10

10  Dollar Systems, Inv. v. Avcar Leasing Systems, Inc.,
      890 F.2d 165 (9th Cir. 1989) ....................................................... 2

11

12  Haefner v. North Cornwall Township,
      40 Fed. Appx. 656 (3d Cir. 2002) ............................................... 17

13  Hardy v. Johns-Manville Sales Corp.,
      681 F.2d 334 (5th Cir. 1982) ....................................................... 9

14

15  Jack Faucett Assocs., Inc. v. American Tel. and Tel. Co.,
      744 F.2d 118 (D.C. Cir. 1984) (emphasis in original) ................ 17

16  King v. Galluzo Equipment & Excavating, Inc.,
      2001 WL 1402996 (E.D.N.Y, 2001) ........................................... 17

17

18  L-Tec Elecs.Corp. v. Lotus Onda Indus. Co.,
      198 F.3d 85 (2d Cir. 1999) ......................................................... 17

19  Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
      30 F.3d 339 (2d Cir. 1994) ......................................................... 13

20

21  Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,
      130 S. Ct. 1431 (2010) ................................................................ 9

22  Snider v. Consolidation Coal Co.,
      973 F.2d 555 (7th Cir. 1992), <u>cert.</u> denied, 113 S. Ct. 981 ............ 16

23

24  Sony Corp. of Am. v. Universal City Studios,
      464 U.S. 417 (1984) (citing 17 U.S.C. § 506(a)) ........................ 20

25

## <u>Statutes</u>

26

17 U.S.C. § 506(a) ........................................................................ 20

27

Cal. Civ. Code § 3426.1(d) ............................................................. 2

28

1 | Fed R. Civ. P. 9(b) .................................................................. 5

2 | Fed. R. Civ. P. 42(b) ................................................................ 9

3 | Fed. R. Civ. P. 54(b) ................................................................ 11

4 | Fed. R. Evid. 404(b) ................................................................ 13

5

6

## **Other Authorities**

18 MOORE'S FEDERAL PRACTICE § 132.04[1][a][iii]
    (Matthew Bender 3d ed.) ....................................................... 16

Restatement (Second) of Judgments § 28(3) comment j ........................................... 16

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's June 7, 2010 Order (the "Order"), Mattel hereby

2  submits supplemental briefing concerning MGA's 30(b)(6) Notice of Deposition

3  Topic Nos. 11, 16, 17, 18, and 22, as follows.

## I.    TOPIC NO. 11

5    MGA's Topic No. 11 seeks testimony concerning Mattel's purported

6  acquisition of information about MGA's products as referenced in certain documents,

7  attached as exhibits 1-25 (the "Exhibits") to MGA's Notice of Deposition.  In the

8  Order, the Court requested that Mattel substantiate its claim that "none of the

9  information in these Exhibits is related, directly or otherwise, to the transactions at

10  issue in Mattel's Counterclaims."  (Order at 11).

11    The Exhibits referenced in Topic 11 are emails concerning Mattel's receipt of

12  information regarding the 2004 Hong Kong Toy Fair and the Bratz 2004 line (Exhibits

13  1-4, 14-15); the 2003 New York Toy Fair and competitive toy catalogs (Exhibit 5);

14  the Bratz "Tokyo-A-Go-Go" and "Flashback Fever" dolls (Exhibits 6, 9, and 10);

15  MGA's "Best Friend Assortment" product line (Exhibits 7 and 8); the Bratz "Sun-

16  Kissed Summer" dolls (Exhibit 11); the Bratz Splash Dance Pool and Bratz Wild Life

17  Safari Cruiser accessories (Exhibit 12); the Bratz 2003 Spanish Fall line (Exhibit 13);

18  MGA's 4Ever Best Friend product line (Exhibits 16 and 21); Bratz movies and

19  television shows (Exhibits 17-20, 23-24); the Bratz 2005 product line (Exhibit 22);

20  and Toon Teens (Exhibit 25).

21    MGA contends that "this information may be relevant to MGA's unclean hands

22  defense, as these 25 exhibits demonstrate that Mattel has improperly gained

23  knowledge of MGA's trade secrets, non-public information, non-public activities,

24  unreleased products, and product development" (Opp. at 15) and "insofar as Mattel

25  has engaged in the very practices that form the basis of its claims against MGA."

26  (Reply at 7). Mattel's counterclaims concern acts of trade secret misappropriation by

27  Gustavo Machado, Mariana Trueba, Pablo Vargas, Jorge Castilla, Janine Brisbois,

28  Ron Brawer, Nick Contreras, Dan Cooney and others at the direction of MGA and

1  Isaac Larian. MGA has not alleged in any pleading or in its interrogatories that any of
2  the Exhibits reflects trade secret misconduct by Mattel or indeed even is part of its
3  unclean hands defense. Further, any alleged misconduct reflected by the Exhibits is
4  entirely separate from the thefts as alleged by Mattel. The thefts alleged by Mattel
5  were based on the direct taking of internal Mattel information – usually by way of
6  computer downloads – by then-Mattel employees who then went to work at MGA.
7  None of Mattel's allegations is based on the acquisition of information at widely
8  attended events such as Toy Fairs or from publicly available documents such as
9  catalogs. MGA does not even show that it treats information from Toy Fairs – which
10  are often the subject of press releases and other public disclosures by MGA – or its
11  product catalogs as trade secrets. "It is fundamental to the operation of the [unclean
12  hands] doctrine that the alleged misconduct by the plaintiff relate directly to the
13  transactions concerning which the complaint is made." Dollar Systems, Inv. v. Avcar
14  Leasing Systems, Inc., 890 F.2d 165, 173 (9th Cir. 1989).  "The transactions
15  concerning which [Mattel's] complaint is made" are entirely distinct here.[1]

16         Nor do the circumstances surrounding Mattel's acquisition of such information
17  bear on Mattel's claims that the internal Mattel information stolen by its former
18  employees constitutes trade secrets. As this Court recognized elsewhere in its Order,
19  the California Uniform Trade Secret Act defines "trade secret" as "information,
20  including a formula, pattern, compilation, program, device, method, technique, or
21  process that: (1) [d]erives independent economic value, actual or potential, from not
22  being generally known to the public or to other persons who can obtain economic
23  value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable
24  under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). (Order
25

26  [1]  MGA's argument is particularly far-afield as it relates to Exhibit 25. Exhibit
27  25 is an August 2001 email to a former Mattel employee (who is now allied with
    MGA) that states there are similarities between a 1999 Mattel project called "Toon
28  Teens" and *publicly released* Bratz dolls.

at 9). Contrary to MGA's argument, a showing that Mattel gained access to certain information relating to a competitor would have no bearing at all on whether the internal Mattel trade secrets stolen by MGA qualify as protectable trade secrets. Indeed, Topic No. 11, regarding the circumstances through which Mattel acquired information about MGA's products, has little to no bearing on what steps MGA itself took to protect information, let alone what steps Mattel took.

Because MGA's Topic No. 11 does not seek information relevant to any claim or defense at issue in Phase 2, and further because, as Mattel argued in its Motion, the Topic is unduly burdensome in light of its at best marginal value, the Court should uphold its decision to grant a protective order as to this Topic.

## II.   **TOPIC NOS. 16 AND 17**

Topic No. 16 seeks testimony concerning doll concepts Mattel "considered" between 1990 and 2002. Topic No. 17 seeks facts concerning whether Mattel would have developed Bratz if it had the opportunity to do so. Mattel maintains that Topic Nos. 16 is overbroad given the scope of Mattel's development efforts over the course of these twelve years – which would potentially involve literally thousands of different dolls – and that Topic 17 is irrelevant inasmuch as the Court has already held that Mattel need not demonstrate that it would have chosen to develop Bratz.[2] However, to the extent the Court based its decision to grant a protective order as to Topic Nos. 16 and 17 on a finding that "Bratz-related discovery" is not relevant *in any manner* to Phase 2, Mattel respectfully submits that such finding is not correct.

Even apart from the issue of whether the theft of Bratz constitutes misappropriation of a trade secret, a question that the Court has made clear may be further considered in light of the Ninth Circuit's decision on the injunction appeal,

---

[2]   See Dkt. No. 3917 at 15:23-25 (granting Mattel's motion *in limine* to exclude references to whether Mattel would have manufactured Bratz); Trial Tr. 5162:4-6 (Judge Larson stating: "We're not going to have reference to whether Mattel would have or whether they wouldn't have manufactured Bratz.").

1  Phase 2 has, from the outset, concerned Bratz. Most prominently, Mattel's RICO

2  claim has always encompassed MGA's Bratz-related misconduct. The fraudulent

3  scheme that is alleged in connection with the predicate acts of mail and wire fraud has

4  always included acts in furtherance of the theft of Bratz and its concealment. Nothing

5  in the bifurcation order, or in the jury's Phase 1 verdict, could or did resolve these

6  Bratz-related issues, as both parties have recognized throughout discovery. As for

7  MGA's claim that the Phase 1 jury's finding that its copyright infringement was not

8  willful precludes a Bratz-based claim of criminal copyright infringement, the short

9  answer is that the acts of obstruction alleged by Mattel in Phase 2 have already been

10  found to have wrongfully contributed to that verdict. Due process does not allow for

11  preclusion; Mattel addresses this further in connection with Topic 22, infra.

12  **A.   Several Phase 2 Claims and Defenses Concern Bratz-Related Issues**

13  Even apart from the theft of Bratz as a trade secret, the theft of Bratz is

14  squarely at issue in Phase 2 in connection with Mattel's RICO claims, and always has

15  been. Since it first raised its RICO claims in late 2006, Mattel has included the theft

16  of its Bratz-related property as part of the scheme supporting the predicate acts of mail

17  and wire fraud, as well as criminal copyright infringement.[3] Mattel alleged that the

18  "Bryant Group" comprised part of the "Criminal Enterprise," and it incorporated into

19  its RICO claims detailed allegations about MGA's and Bryant's theft of Bratz.[4]

20  The relevance of Bratz-related issues to Mattel's RICO claims was made

21  absolutely clear in determining the phasing of the case. In its May 2007 brief on

22  phasing, Mattel emphasized:

23  Mattel alleges that all counter-defendants, including Bryant, engaged in

24  and continue to engage in a pattern of predicate acts, including mail and

25  wire fraud, witness tampering, travel act violations and criminal copyright

26  infringement in violation of the RICO statute. Alleged misconduct

27  ———————————
   [3]  Counterclaims, ¶¶ 21-36, 91-93, 99-101.
28  [4]  Counterclaims, ¶¶ 88-89, 99-100.

1    includes fraudulent communications in furtherance of a scheme to defraud

2    Mattel of its rightful property that includes not only Bratz, but other

3    misappropriated trade secrets and proprietary information, of Bryant's

4    illegal acceptance of payments from MGA, a Mattel competitor while a

5    Mattel employee, and engaging in criminal copyright infringement of

6    Bratz and misappropriated trade secret and proprietary information.[5]

7    In its Second Amended Counterclaims filed in July 2007 (in response to

8    MGA's challenges pursuant to Rule 9(b)), Mattel defined a "Bratz Criminal

9    Enterprise" that the MGA Parties had been engaged in since 1999 and also attached

10   more than 150 predicate act communications that are communications *in furtherance*

11   *of the theft of Bratz.*[6]

12   Mattel later expanded its RICO claim during Phase 2 to include, among other

13   things, the MGA Parties' fraudulent acts related to the Omni transaction, but Mattel's

14   RICO claims continue to be based in large part on the MGA Parties' fraudulent

15   scheme to steal Bratz from Mattel, conceal that theft, and secret their ill-gotten gains.

16   Mattel alleges in the very first paragraph of its Fourth Amended Counterclaims that,

17   as part of MGA's "scheme of stealing and using Mattel property and trade secrets . . . ,

18   MGA first stole 'Bratz,' a fashion doll, from Mattel, and then continued stealing

19   Mattel's confidential and proprietary information to fuel the growth of Bratz."[7]

20   Indeed, MGA's fraudulent scheme related to Bratz contributes, at least in part, to all

21   Mattel's RICO predicate act allegations.  Mattel's mail and wire fraud predicate act

22   allegations consist of more than a dozen paragraphs of substantive allegations about

23

24

25

---

26   [5]  Mattel's Motion to Try Claims Related to Bratz Ownership in Phase One, May
27   8, 2007, Dkt. 462 at 19:1-9.
     [6]  See Second Amended Counterclaims, Ex. C, Dkt. 654, at ¶ 89.
28   [7]  FAAC ¶ 1.

Bratz.[8]  Mattel also attached to the Fourth Amended Counterclaims ("FAAC") more than 70 mail and wire fraud predicate act communications concerning Bratz.[9]  Mattel further alleged and attached specific acts of mail and wire fraud in furtherance of MGA's fraudulent concealment of the theft of Bratz.[10]  These include, among others,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████[13]

Bratz-related issues also are squarely at issue in Mattel's criminal copyright infringement predicate act allegations.  Mattel alleges specifically that the MGA Parties "willfully infringed and continue to willfully infringe Mattel's copyrights, including without limitation with respect to documents containing Mattel trade secret and confidential information and Bratz works created by Bryant while a Mattel employee, for purposes of commercial advantage and private financial gain."[14]

Similarly, Bratz-related issues contribute to Mattel's spoliation and concealment of evidence predicate act allegations, which include Mattel's allegation:

> Bryant, Larian and MGA, using interstate mail and wire communications, among other means, deliberately and intentionally concealed facts from Mattel so that it would not suspect or know that it was the true owner of

---

[8]   MGA's mail and wire fraud scheme, and its objects, are alleged with particularity in the paragraphs 24-121 of the FAAC.  The role of Bratz in the scheme is detailed in at least FAAC ¶¶ 28-29, 31-35, 86-93, 94-96, 107, and 117.
[9]   See FAAC Exs. O-Q, S-W.
[10]   See FAAC ¶ 124 (a), (b); see also id. at ¶¶ 24-35.
[11]   FAAC Ex. S-21.
[12]   FAAC Exs. S-22, S-59.
[13]   FAAC Ex. S-23.
[14]   FAAC ¶ 124(f).

1    Bratz. Their acts of concealment and misrepresentation include, but are
2    not limited to, (i) concealing the fact that Bryant conceived, created,
3    designed and developed Bratz while employed by Mattel, including by
4    tampering with, altering and defacing documents which showed that
5    Bryant was a Mattel employee while he was working for and with MGA;
6    (ii) concealing the fact that Bryant worked with and assisted MGA during
7    the time Bryant was employed by Mattel and was compensated for that
8    assistance; (iii) lying to supervisors and co-workers at Mattel about
9    Bryant's future plans; (iv) falsely claiming that Larian and others were the
10   creators of Bratz; and (v) filing fraudulent registrations and/or
11   amendments to registrations with the United States Copyright Office
12   claiming MGA as the author of Bratz as a work for hire and misdating or
13   altering relevant dates on such documents.[15]

14   In addition to Mattel's Phase 2 RICO claims, Mattel's Phase 2 claims of
15   intentional interference with contract,[16] aiding and abetting breach of fiduciary duty,[17]
16   and aiding and abetting breach of duty of loyalty,[18] relate to Bratz as well. For
17   example, MGA (through its vendor Veronica Marlow) secretly paid three Mattel
18   sample makers, Ana Isabel Cabrera, Beatriz Morales, and Maria Elena Salazar, to
19   work on Bratz products.[19] These employees owed duties to Mattel, their employer,
20   not to aid or work for Mattel's competitors. They violated these duties, and MGA and
21   Larian induced these breaches, by secretly working on dozens of Bratz products for
22   MGA over the course of a five-year period to the detriment of Mattel.

23   Further, many of the trade secrets that were misappropriated, such as those by
24   Jorge Castilla, were stolen and used to improve MGA's ability to forecast and

---

25   [15]   FAAC ¶ 29.
26   [16]   FAAC ¶¶ 160-62.
27   [17]   FAAC ¶¶ 174, 176.
     [18]   FAAC ¶¶ 187, 189.
28   [19]   FAAC ¶¶ 86-90.

1   profitably deliver to market more volume of Bratz dolls than MGA could ever have
2   achieved without such theft.  The Bratz dolls were the core reason why MGA needed
3   these trade secrets.  Absent Bratz, MGA had no need to employ forecasting and
4   production methods similar to Mattel's because MGA had no other product that
5   generated such market demand.

6       Mattel's actual and fraudulent transfer claims also relate to Bratz in that they
7   involve the purported transfer of Bratz-related intellectual property and MGA's efforts
8   to hide its ill-gotten gains from sales of Bratz and to render itself judgment proof.[20]
9   And Mattel's claim for breach of constructive trust alleges that MGA breached its
10  duty to preserve and protect the Bratz assets following the Phase 1 verdict.[21]

11      In addition to being relevant to Mattel's Phase 2 claims, MGA itself has
12  asserted claims and defenses in Phase 2 that turn, at least in part, on issues related to
13  Bratz.  Indeed, in arguing for the relevance of the Topics included in its Notice of
14  Deposition, MGA asserted that the "acts that give rise to" its purported unclean hands
15  affirmative defense include "Mattel's efforts to . . . 'kill' Bratz at any cost; Mattel's
16  efforts to fund or commission market research or studies that portray Bratz or MGA
17  products negatively; . . . and Mattel's falsely inflating its Barbie sales figures in an
18  effort to mislead the public and retailers."[22]   Although Mattel disputes those
19  accusations, the pendency of MGA's affirmative defense further renders Bratz-related
20  issues relevant to Phase 2.

21      **B.    Nothing in the Phasing Order Purported to Address or Dispose of All**
22          **Such Bratz-Related Claims**

23      The bifurcation order in this case was intended to first determine ownership of
24  Bratz in order to clarify the resolution of the Bratz-related issues in Phase 2 – not
25

---

26  [20]  FAAC ¶¶ 207, 216, 218.
27  [21]  FAAC ¶¶ 232-33.
    [22]  MGA's Opposition to Mattel's Motion for Protective Order, May 21, 2010,
28  Dkt. 7943, at 3.

because it would dispose of them. The existence of substantial overlap was recognized from the outset; indeed, Mattel argued that bifurcation was not efficient precisely because of this overlap, and no final judgment was sought or entered precisely for that reason. Nothing in the phasing of this case or the resolution of Bratz ownership was intended to – or could – resolve Phase 2.

Bifurcation under <u>Rule</u> 42(b) is a procedural tool intended to promote efficient and convenient judicial administration. <u>Fed R. Civ. P.</u> 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial."); see <u>American Computech, Inc. v. National Med. Care, Inc.</u>, 959 F.2d 239, 247 (9th Cir. 1992) (<u>Rule</u> 42(b) is a rule of procedure). Thus, "while the district court has broad authority to 'order a separate trial of any claim'" in accordance with <u>Rule</u> 42(b), "this discretion is limited by constitutional constraints. As the text of the rule itself notes, this discretion must be exercised so as to 'always preserv[e] inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.'" <u>Danjaq, LLC v. Sony Corp.</u>, 263 F.3d 942, 961-62 (9th Cir. 2001) (citing <u>Rule</u> 42(b)).[23]

Because of the procedural nature of <u>Rule</u> 42(b), it would be improper, and indeed unconstitutional, to rely on the bifurcation of the case to preclude Mattel from pursuing its Phase 2 claims to their full extent, including its RICO claims to the extent they turn on Bratz-related issues. See <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u>, 130 S.Ct. 1431, 1443 (2010) (federal rules are intended to alter only how claims are processed; they cannot change entitlements to relief nor abridge the substantive rights of parties). Such a deprivation of substantive rights would violate the core principles of due process (see <u>Hardy v. Johns-Manville Sales Corp.</u>, 681 F.2d

---

[23] The language of <u>Rule</u> 42(b) was changed in 2007 for stylistic purposes only. <u>See</u> 2007 Advisory Committee Notes.

334, 338 (5th Cir. 1982) ("The right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution.") (citing <u>Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 329 (1971)), and further would violate Mattel's 7th Amendment right to a trial by jury as to its Phase 2 claims to the extent they turn on issues related to Bratz. <u>See</u> <u>Danjaq</u>, 263 F.3d at 962. Accordingly, even if a consequence of the bifurcation of the case is that certain issues related to Bratz overlap between the two phases, that consequence cannot bar Mattel from pursuing Bratz-related issues in Phase 2 to the extent such issues relate to Mattel's Phase 2 claims.

Moreover, from the time when bifurcation was first proposed, Mattel consistently *opposed* bifurcation, including on the grounds that its RICO claims overlap with issues relating to Bratz ownership, such that bifurcation would be unduly complicated and inefficient, and potentially prejudicial to Mattel. Judge Larson bifurcated the case and assigned the RICO claims to Phase 2 knowing that those claims raised Bratz-related issues. As Mattel specifically pointed out at the hearing:

> since the original complaint was filed, we have found – and there have been a series of events that are set forth in the complaint – that the whole episode with respect to Mr. Bryant and the original creation of Bratz was just one of a series of events which have happened. The allegations relating to the events in Mexico, where there was a wholesale theft of virtually all of Mattel's intellectual property that was there, and the information comes back to the united states; the situation in Canada, where an employee left and took a thumb drive and had all of that information with her; the situation of Mr. [Brawer], who took with him all of – various trade secret information, certain contact – sensitive contact information relating to customers. *All of that, Your Honor, is a pattern of*

1    *racketeering activity. It's a RICO claim. And that has to be addressed in*
2    *one proceeding.*[24]

3    Later, in response to the Court's request for briefing concerning whether it should
4    enter judgment under <u>Rule</u> 54(b), Mattel argued that a partial judgment was not
5    appropriate "because of the substantial overlap between the issues and claims in Phase
6    1 and Phase 2."[25] Mattel further argued specifically that "[t]he overlap between Phase
7    1 and Phase 2 is particularly clear with respect to Mattel's RICO claims, as several of
8    the alleged predicate acts are based on the wrongdoing at issue in Phase 1."[26]
9    Likewise, in its brief MGA argued that judgment under <u>Rule</u> 54(b) was not
10   appropriate because "there are overlapping parties, issues, and claims between Phase 1
11   and Phase 2," including with respect to MGA's Phase 2 claims which, MGA argued,
12   are "clearly intertwined with the findings on ownership of Bratz in Phase 1."[27] The
13   Court did not enter judgment. Nothing in the Phase 1 bifurcation or in the resolution
14   of the issue of Bratz ownership could or did deprive Mattel of its right to pursue its
15   Bratz-related RICO and other claims in Phase 2.

16   **C.      The Parties Have Litigated Bratz-Related Issues In Phase 2**

17   MGA has, in its own discovery requests and motions, repeatedly recognized
18   that the parties' Phase 2 claims relate directly to Bratz. For example, it has argued in
19   a motion to compel that "documents such as market research reports showing the
20   relative success of 'My Scene' and 'Bratz' would clearly be relevant to MGA's claims
21   and defenses."[28] It further has demanded that Mattel produce, in Phase 2, (i) "studies,

---

[24] Jan. 8, 2007 Hearing Tr., at 8:19-9:8 (emphasis added).
[25] Memorandum of Mattel, Inc. Regarding Entry of Judgment Pursuant to Rule 54(B) and Phase 1, February 13, 2009, Dkt. 4835, at 1.
[26] <u>Id.</u> at 3.
[27] MGA Parties' Statement of Position on Entry of Final Judgment on Phase 1, February 13, 2009, Dkt. 4836, at 2.
[28] <u>See</u> MGA's Motion to Compel Further Responses to MGA's Requests for Production of Documents, September 23, 2009, Dkt. 6816 at 11; <u>see also id.</u> at 18 ("MGA's affirmative defenses also relate to 'Bratz'"); <u>id.</u> at 19 (arguing that

1   reports, analyses, focus groups, polling, or any other research generated from January

2   1, 2000 to the present concerning the sale and popularity of the Bratz line of dolls and

3   products";[29] (ii) "studies, reports, analyses, focus groups, polling, or any other

4   research concerning the sale of the Bratz line of dolls and products from January 1,

5   2001 to the present";[30] "studies, reports, analyses, focus groups, polling, or any other

6   research concerning future sales of the Bratz line of dolls and products"[31]; "any

7   presentations created by Mattel's Strategic Planning Group in relation to the valuation

8   of MGA, MGA's Bratz products"[32]; and documents "analyzing the impact of Bratz

9   . . . on Mattel's market share and sales revenue."[33]

10      MGA also has repeatedly examined numerous witnesses at deposition during

11   Phase 2 concerning Bratz-related issues, including to obtain discovery purportedly

12   relevant to Mattel's damages claims based on Bratz.[34]   And of course, the MGA

13   Parties have recently sought still more Mattel 30(b)(6) deposition testimony

14   concerning Bratz-related issues.   In its June 7, 2010 Order, the Court *approved* of

15   certain such requests, such as MGA's request for testimony concerning the

16

17   "documents relating to 'Bratz' . . . [are] essential to MGA's claim that Mattel copied an infringed upon MGA's products and intellectual property"); MGA's

18   Motion to Compel Further Responses to Phase 2 Interrogatories and RFPs, August

19   11, 2009 (seeking documents that purportedly would allow MGA to "compare the sale of the Mattel Harmed Products both before and after Bratz was introduced to

20   the market" to investigate whether "Mattel [suffered] any harm vis-à-vis Bratz");

21   MGA's Opposition to Mattel's Motion for Protective Order, May 21, 2010, Dkt. 7943, at 12 ("Mattel also alleges a lost opportunity to exploit Bratz.").

22   [29]   MGA's Phase 2 Request for Production ("RFP") No. 87.

23   [30]   MGA's Phase 2 RFP No. 92.
     [31]   MGA's Phase 2 RFP No. 95.

24   [32]   MGA's Phase 2 RFP No. 204.

25   [33]   MGA's Phase 2 RFP No. 206; see also MGA's Phase 2 RFP Nos. 207, 219, 221, 224, 235, 237, and 238.

26   [34]   See, e.g., Phase 2 Depositions of Kiplin (in excess of 100 questions

27   discussing Bratz), Cleary (100 questions), Wadleigh (15 questions), Arons (75 questions), Eckert (approximately 320 questions), Bousquette (approximately 50

28   questions), and Storie (approximately 50 questions).

1  interpretation of contracts between Bryant and Mattel (Topic No. 1) and testimony

2  concerning documents that the Court found to be "relevant to Mattel's lost profit

3  claims," and specifically to "Mattel's marketplace challenges prior to the arrival of the

4  Bratz line of dolls" (Topic Nos. 12, 13, 14, 15 and 27). (Order at 8, 11).[35]

5  In sum, while Mattel maintains that MGA's Topic Nos. 16 and 17 are

6  overbroad, it does not contend, and does not believe, that those Topics are improper

7  because *no* Bratz-related discovery is relevant to Phase 2. To the contrary, Bratz-

8  related issues permeate Mattel's Phase 2 claims, and especially Mattel's RICO claims.

9  **D.   Evidence of MGA's Theft of Bratz Will Be Prominent At Trial**

10  Given the direct relevance of Bratz to Mattel's Phase 2 claims, in particular to

11  its RICO claims, the theft of Bratz and related issues will be a critical part of the Phase

12  2 trial. But even if there were no Phase 2 claims as to which Bratz-related issues were

13  directly relevant, evidence of the MGA Parties' multiple acts of misconduct directed

14  specifically towards damaging Mattel, including their theft of Bratz, is relevant to

15  establishing the MGA Parties' state of mind to commit RICO violations and

16  misappropriate Mattel's trade secrets. See Fed. R. Evid. 404(b) ("Evidence of other

17  crimes, wrongs, or acts . . . may . . . be admissible [to establish] . . . proof of motive

18  [or] intent"); Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d

19  339, 345 (2d Cir. 1994) (evidence of prior similar bad acts admissible to show intent

20

21

22

23  [35]   Mattel too has taken discovery in Phase 2 on Bratz-related issues, including, most recently, through interrogatories seeking information about MGA's

24  investments in Bratz, its advertising for Bratz, and its Bratz offerings over the years.

25  See Mattel, Inc.'s Third Set of Interrogatories, April 8, 2010, at Nos. 3, 8, 11. Mattel also has continued to examine witnesses at deposition about Bratz and further

26  has sought MGA 30(b)(6) deposition testimony concerning Bratz-related issues.

27  See, e.g., Topic Nos. 12, 13, 16-18, 20, and 39-41 in Mattel's Notice of Deposition of MGA Entertainment, Inc., Jan. 26, 2010; Topic Nos. 2, 12, 16, 18, 20, and 22 in

28  Mattel's Notice of Deposition of MGA Entertainment Canada, Dec. 30, 2009.

1  to commit RICO predicate acts of mail and wire fraud).[36]  Bratz is relevant to Phase 2

2  for this reason as well.

3     **E.** **Nevertheless, Topic Nos. 16 and 17 Should Not Be Compelled**

4     Because of the relevance of Bratz to certain claims and issues in Phase 2, Mattel

5  would have no objection, and has had no objection, to appropriately-limited and

6  otherwise proper requests for discovery made by MGA regarding the Bratz-related

7  issues in Phase 2.  Topic Nos. 16 and 17 are not such requests.  Topic No. 16 is

8  hopelessly overbroad given the sheer number of products released by Mattel per year

9  (more than 2000), let alone the much greater number of "fashion doll concepts . . .

10  considered" by Mattel, and the time frame covered by the Topic (1990 to 2002).

11  (Motion at 10).  As a result of that overbreadth, it would be unduly burdensome, if not

12  impossible, for Mattel to adequately prepare a witnesses on all such information.

13  Topic No. 17, which seeks information regarding whether Mattel would have

14  manufactured Bratz given the chance, already was found by the Court to be

15  irrelevant.[37]  The protective orders tentatively granted as to those Topics should stand.

16  **III.** **TOPIC NO. 18**

17     Topic No. 18 concerns all Mattel consumer research about MGA products.  The

18  Court requested further briefing concerning the relevance of MGA's Topic No. 18 to

19  Phase 2 issues.  Because any information responsive to this Topic would be factually

20  distinct from Mattel's trade secret theft allegations, this Topic is not relevant to

21  MGA's "unclean hands" defense or to Mattel's trade secret claims, for the reasons set

---

[36]  MGA and Larian's intent to harm Mattel is well-documented.  See, e.g., MGA2 0001297-98 ("███████"); MGA 2118151-64 ("███████"); MGA 0183056 ("███████"); MGA 0042286-88 ("███████"); MGA 0040743 ("███████"); MGA 0205817-18 ("███████"); MGA 0147537-40 ("███████").

[37]  See note 1, supra.

forth in Section I, supra.  Nor is it relevant to whether Mattel would have marketed

Bratz because, as noted above, Mattel is not required to make that showing.[38]  To the

extent such research is relevant to Mattel's lost profits claims, the Court has already

ordered Mattel to produce a witness on multiple Topics related to this issue.  See

Order at 11 (Topic Nos. 12, 13, 14, 15, and 27).  Those Topics focus on particular

documents that reflect Mattel's internal research on MGA products – in contrast to the

vast overbreadth and undue burden imposed by Topic No. 18, which is not stated with

reasonable particularity or reasonably tailored to the allegations of this case.  The

tentative decision to grant a protective order as to Topic No. 18 should stand.

## IV.   TOPIC NO. 22

Topic No. 22 seeks testimony concerning Mattel's copyright registrations

related to Bratz.  Mattel argued that this Topic does not seek relevant information

because liability for criminal copyright infringement does not require a copyright

registration and that it improperly seeks legal conclusions from a Mattel corporate

designee.  (Mot. at 12 and n.18; Reply at 17-18).  The Court directed supplemental

briefing concerning why Mattel's RICO predicate act of criminal copyright

infringement "is not duplicative of the issues raised in Phase 1 and why the doctrine of

collateral estoppel does not bar Mattel's criminal copyright infringement predicate

claims insofar as they relate to the alleged theft of 'Bratz works.'"  (Order at 13).

### A.   Mattel's Criminal Copyright Infringement Predicate Act Is Not Duplicative of Phase 1 Issues

Mattel's criminal copyright infringement predicate act allegations are not

duplicative of issues tried in Phase 1.  Mattel's Phase 1 copyright infringement claim

was not even adjudicated as against MGA de Mexico or Gustavo Machado, who are

named enterprise members as to the predicate act of criminal copyright infringement

and whose willfullness may be imputed to the other defendants.  See Beltz Travel

---

[38]  Id.

1  Serv., Inc. v. Int'l Air Transport Ass'n, 620 F.2d 1360, 1367 (9th Cir. 1980) ("All

2  conspirators are jointly liable for the acts of their co-conspirators."). Nor did Phase 1

3  address Mattel's claims that Larian and MGA engaged in criminal infringement *post-

4  verdict,* when, despite the jury's findings and Court's rulings that Bryant created Bratz

5  at Mattel and that Mattel is its rightful owner, MGA continued to infringe Mattel's

6  designs.[39] These issues have yet to be tried and are not duplicative. In any event,

7  even if there is duplication of issues between Phase 1 and Phase 2, relying on such

8  duplication to preclude Mattel from pursuing its Phase 2 claims to their full extent

9  would deprive Mattel of rights and be inequitable, as discussed above in section II.B.

10  **B.      Mattel's Criminal Copyright Infringement Predicate Act Allegations**

11  **Are Not Barred By Collateral Estoppel**

12       "[C]ollateral estoppel cannot be applied unless the party against whom it is to

13  be applied had a 'full and fair opportunity' to litigate the issue in the prior proceeding.

14  A party has not had the requisite full and fair opportunity if he or she was unable to

15  present critical evidence in the initial proceeding." Snider v. Consolidation Coal Co.,

16  973 F.2d 555, 559 (7th Cir. 1992) (citations omitted), cert. denied, 113 S. Ct. 981; see

17  Blonder, 402 U.S. at 333-34 (collateral estoppel may be inappropriate where "without

18  fault of his own the [plaintiff] was deprived of crucial evidence or witnesses in the

19  first litigation.").[40] The standard for refusing to apply collateral estoppel is lower than

20

---

21  [39]   See May 21, 2009 Omnibus Order, Dkt. No. 5565, at 6 ("Although in most
22  respects the issue of copyright infringement was resolved in Phase 1, allegations
      regarding criminal copyright infringement, cast in the form of RICO predicate acts,
23  are relevant to Phase 2."); see also June 27, 2007 Order at 3 ("the criminal
      copyright claim is premised on the Bratz-related works, Bratz-derivative works,
24  and works contained within Mattel's allegedly purloined trade secrets and
25  confidential information").

      [40]   18 MOORE'S FEDERAL PRACTICE § 132.04[1][a][iii] (Matthew Bender 3d ed.)
26  (noting that issue preclusion may not apply where a "party concealed material
      information in the first case"); Restatement (Second) of Judgments § 28(3) comment
27  j (issue preclusion may be inappropriate where a party "conceal[ed] from the other
28  information that would materially affect the outcome of the case.").

1   that required to set aside the tainted verdict itself.  <u>Jack Faucett Assocs., Inc. v.</u>

2   <u>American Tel. and Tel. Co.</u>, 744 F.2d 118, 128-29 (D.C. Cir. 1984) ("[N]ewly

3   discovered evidence, *even if insufficient to justify setting aside a judgment*, may

4   warrant refusal to give the judgment preclusive effect in other actions.") (citation

5   omitted) (emphasis in original).[41]

6       Here, the Court has *already* found that MGA wrongfully withheld critical

7   evidence going directly to willfulness and that the jury may have been influenced

8   thereby – findings which preclude the application of collateral estoppel against Mattel

9   on willfulness.  As the Court is aware, in August and September 2009, MGA and

10   Larian produced to Mattel more than 100 documents which had been previously

11   withheld as privileged.  Included in that production was the October 2002 email chain

12   between Larian and Victoria O'Connor that bears directly on Larian's and MGA's

13   willful infringement and purposeful concealment.  An incomplete version of the

14   document was produced during Phase 1 discovery and, indeed, an incomplete version

15   that appeared to have been deliberately selected to avoid redacting the key portion of

16   it.[42] ████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████  As the

20   Court is aware, the complete version of this document shows that, ███████

21   ████████████████████████████████████████████

22

[41]   Indeed, even if the Phase 1 verdict had been reduced to final judgment (and it
was not), principles of res judicata still provide that "[c]laims based on newly
discovery evidence are not barred by res judicata when the newly discovered
evidence was fraudulently concealed."  <u>King v. Galluzo Equipment & Excavating,
Inc.</u> 2001 WL 1402996, at *10 -11 (E.D.N.Y, 2001) (citing <u>L-Tec Elecs.Corp. v.
Lotus Onda Indus. Co.</u>, 198 F.3d 85, 88 (2d Cir. 1999); <u>Haefner v. North Cornwall
Township</u>, 40 Fed. Appx. 656, 658 (3d Cir. 2002) (stating that claim preclusion will
not apply where evidence was "fraudulently concealed").

[42]   <u>See</u> March 13, 2010 Hearing Tr., 21:2-22:14.

1 ███████████████████████████████████

2 ███████████████████████████████████

3 ████████████████████████

4      Even though no lawyers were involved in the communication and MGA had

5 been compelled to produce the document well before the Phase 1 trial, this document

6 was withheld and concealed by MGA.  After learning that MGA withheld this email

7 from trial, Judge Larson stated:



14 [43]

15 Thus, the Larian-O'Connor email alone precludes collateral estoppel as to the Phase 1

16 willfulness verdict.  As the Court recognized, it was crucial evidence that bore directly

17 on the willfulness findings which was unavailable to Mattel during Phase 1.[44]

18      Further, as the Court is well-aware, a host of additional communications

19 potentially demonstrating MGA's knowledge of its infringement are the subject of

20 Mattel's pending "crime-fraud" privilege waiver motions to compel, and hundreds of

21 other documents as to which MGA has asserted a privilege claim are pending before

22 the Court for an *in camera* review.  Judge Larson, having reviewed some of these

[43]  September 22, 2009 In Chambers Hearing Tr. at 8:18-9:2; 10:11-16 (emphasis added).

[44]  This Court has made similar observations.  March 13, 2010 Hearing Tr. at 15:25-16:6 ("I will be asking later how a document of this import – at least whether it has import or not should have been made known to the party and to have been examined by a jury.  This could be an absolutely innocuous statement, *but the jury has the right in our system to determine what weight they give to this.*") (emphasis added).

documents, concluded that Mr. Larian "lied to the jury" in his testimony that he did not know that Carter Bryant created Bratz while employed by Mattel and that he relied on his lawyers as officers of the court who told him otherwise.[45]   The potential availability in Phase 2 of such evidence of MGA's wilfulness further renders the application of collateral estoppel improper.

Moreover, during the Phase 1 trial, in an effort to show that their misconduct was not willful, Larian testified, and MGA argued repeatedly, that before Carter Bryant came to MGA, he agreed to indemnify MGA from any claims relating to the ownership of Bratz.[46]   In November 2009, over a year after the Phase 1 verdict, MGA produced a document that stated the opposite and that it "paid Carter Bryant's legal expenses to fulfill *its obligation* under the indemnification agreement and to protect its profits and business."[47]   MGA's agreement to indemnify Carter Bryant, and its representations to the contrary during Phase 1, is further evidence supporting a finding of willful copyright infringement that was not available to Mattel during Phase 1.

In addition, as noted above, Mattel has had no opportunity whatsoever to litigate its claims for criminal infringement of Bratz works against parties such as MGA Mexico or Machado.  Mattel has also had no opportunity to litigate its claims for post-verdict criminal infringement of Bratz designs, and in particular its claim that, despite the jury's verdicts and the clear notice they provided of Mattel's rights, MGA continued copying and marketing Bratz even after the Phase 1 trial, and did so even before it ever sought a stay.

### C.   Nevertheless, Topic No. 22 Should Not Be Compelled

Even though Mattel's Phase 2 criminal copyright infringement claim is viable as it relates to Bratz, Topic No. 22 still is improper.  Mattel properly objected to Topic No. 22 and moved for a protective order, citing irrelevance, as previously found by

---

[45]  Trial Tr., August 15, 2008, at 7632:15-20.
[46]  Trial Tr., 256:20-257:16, 2138:6-25, 4957:6-22.
[47]  MGA2 0540862 (emphasis added).

1  this Court. (Motion at 12, n.18 (citing January 9, 2010 hearing transcript)). MGA, in

2  opposition, failed to identify any relevance to the topic and merely claimed that

3  Mattel's objection "misse[s] the mark."   (Opp. at 11).   MGA cannot articulate

4  relevance because pre-registration of copyrighted works is statutorily irrelevant to a

5  claim of criminal copyright infringement. See Sony Corp. of Am. v. Universal City

6  Studios, 464 U.S. 417, 492-93 n.44 (1984) (dissenting opinion) ("liability for criminal

7  copyright infringement; not conditioned on prior registration") (citing 17 U.S.C. §

8  506(a)).  Given MGA's failure to identify any relevance, Mattel's objection should be

9  sustained.

10

11  DATED:  June 14, 2010              QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
12

13

14                                     By  /s/ Michael T. Zeller
                                          Michael T. Zeller
15                                        Attorneys for Mattel, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28