MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   (213) 629-2020
Facsimile:   (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Telephone:   (949) 567-6700
Facsimile:   (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**Hon. David O. Carter**<br><br>**MGA PARTIES' SUPPLEMENTAL BRIEFING PURSUANT TO THE JUNE 7, 2010 ORDER REGARDING MATTEL'S MOTION FOR PROTECTIVE ORDER AND MGA'S CROSS-MOTION TO COMPEL TESTIMONY OF MATTEL 30(B)(6)** |

**CONFIDENTIAL—ATTORNEYS' EYES ONLY—FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.     TOPIC 5(C), (E) & (F) SEEK TESTIMONY RELEVANT TO MGA'S UNFAIR COMPETITION CLAIM AND MATTEL'S DAMAGES ......................................................................................................... 1

II.    TOPICS 6 AND 7 SEEK TESTIMONY RELEVANT TO DAMAGES, UNFAIR COMPETITION AND MATTEL'S TRADE SECRET CLAIM. ..................................................................................... 2

III.   TOPIC 8 SEEKS TESTIMONY RELEVANT TO MGA'S UNFAIR COMPETITION CLAIM AND MATTEL'S TRADE SECRET CLAIM ................................................................................................. 5

IV.    TOPIC 11 IS RELEVANT TO MATTEL'S TRADE SECRET CLAIM AND MGA'S UNFAIR COMPETITION CLAIM. .......................... 7

V.     TOPICS 16 & 17 SEEK TESTIMONY REGARDING MATTEL'S CLAIMED RICO INJURY. ........................................................... 9

       A.    Topic 16 Is Relevant To Whether Mattel Would Have Selected A Fashion Doll Concept Like Bratz. ......................................... 10

       B.    Topic 17 Is Tailored To Facts Mattel Intends To Introduce At Trial To Support Its Claimed Injury. ....................................... 10

VI.    TOPIC 18 IS RELEVANT TO MATTEL'S CLAIMED DAMAGES AND TRADE SECRETS AS WELL AS TO MGA'S AFFIRMATIVE CLAIMS ....................................................................................................... 10

VII.   TOPIC 21 SEEKS ONLY FACTUAL, NOT EXPERT, TESTIMONY ...... 15

VIII.  TOPIC 22 IS IRRELEVANT IF THE COURT DETERMINES MATTEL'S CRIMINAL COPYRIGHT INFRINGEMENT PREDICATE ACT IS BARRED. ........................................................ 15

       A.    The Phase 1 Jury Rejected Willful Infringement. ............................. 15

       B.    Mattel Is Barred From Re-Litigating Willfulness in Phase 2. ........... 16

       C.    Post-Verdict Infringement Is Not Pled And Cannot Be Willful. ......... 17

       D.    So Long As Bratz Copyrights Are Not In The Case, MGA Does Not Need Discovery On Topic 22 ................................................... 17

IX.    THE PARTIES ARE MEETING AND CONFERRING REGARDING TOPIC 24. ....................................................................................................... 18

X.     MATTEL HAS FAILED TO PRODUCE FINANCIALS THAT MGA INTENDS TO IDENTIFY PURSUANT TO TOPIC 25. ............................. 18

CONCLUSION ............................................................................................................... 19

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Anza* v. *Ideal Steel Supply Co.*,
  547 U.S. 451 (2006)...........................................................................11

4

*Blyden* v. *Mancusi*,
5   186 F.3d 252 (2d Cir. 1999) .............................................................16

6

*Bryant* v. *Mattel, Inc.*,
  573 F. Supp. 2d 1254 (C.D. Cal. 2007) ...........................................15

7

*Cheek* v. *U.S.*,
8   498 U.S. 192 (1991)...........................................................................16

9

*Gasoline Prods. Co.* v. *Champlin Refining Co.*,
  283 U.S. 494 (1931)...........................................................................16

10

*Group Health Plan, Inc.* v. *Philip Morris USA, Inc.*,
11   344 F.3d 735 (8th Cir. 2003)............................................................12

12

*Houseman* v. *U.S. Aviation Underwriters*,
  171 F.3d 1117 (7th Cir. 1999) ..........................................................16

13

*McDaniel* v. *Anheuser-Busch, Inc.*,
14   987 F.2d 298 (5th Cir. 1993) ............................................................16

15

*In re Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) ............................................................16

16

*Screws* v. *U.S.*,
17   325 U.S. 91 (1945).............................................................................16

18

*U.S.* v. *Goss*,
  803 F.2d 638 (11th Cir. 1986)) (emphasis added..............................15

19

*U.S.* v. *Heilman*,
20   614 F.2d 1133 (7th Cir. 1980) ..........................................................16

21

*U.S.* v. *Moran*,
  757 F. Supp. 1046 (D. Neb. 1991).....................................................16

22

*U.S.* v. *Murdock*,
23   290 U.S. 389 (1933)...........................................................................16

24

*U.S.* v. *Wise*,
  550 F.2d 1180 (9th Cir. 1977) ..........................................................16

25

*Zhang* v. *Am.n Gem Seafoods, Inc.*,
26   339 F.3d 1020 (9th Cir. 2003) ..........................................................16

27

28

1

## STATE CASES

2   *Pan Asia Venture Capital Corp.* v. *Hearst Corp.*,
      74 Cal. App. 4th 424 (Cal. App. 1st Dist. 1999) ......................................................2

3

4   *U.S.* v. *Acevedo-Cruz*,
      2006 WL. 448680 (D.P.R. Feb. 23, 2006) ........................................................16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Pursuant to the Court's June 7, 2010 Order, Dkt. # 8069 ("Order"), the MGA Parties ("MGA") hereby submit the following supplemental briefing on Topics 5(c), 5(e), 5(f), 6, 7, 8, 11, 16, 17, 18, 21, 22, 24 and 25 of MGA's Notice of Deposition of Mattel 30(b)(6) Witness.

**ARGUMENT**

**I.   TOPIC 5(C), (E) & (F) SEEK TESTIMONY RELEVANT TO MGA'S UNFAIR COMPETITION CLAIM AND MATTEL'S DAMAGES**

These topics concern Wee 3 Friends, upon which MGA has premised in part its unfair competition claims and which is identified as a product for which Mattel is seeking damages. Mattel did not seek a protective order as to Topic 5 based on relevancy but only based on alleged undue burden (Dkt. # 7858 at 9), so MGA did not initially address relevance. The Court found that "it is unclear what relevance the cost of the Wee 3 Friends' development, manufacturing, and shipping has to MGA's trade dress claim" and on that basis granted Mattel's motion as to Topic 5(c), (e) and (f). First, Topic 5(c) seeks "market research and analysis regarding the Wee 3 Friends product line." In the June 7, 2010 Order, the Court explicitly finds that "Mattel's market research, advertising, and development of the Wee 3 Friends product is reasonably calculated to lead to the discovery of admissible evidence." June 7 Order at 9. Thus, MGA respectfully submits that it is unclear why the Court granted the protective order as to Topic 5(c), which falls within the scope of information that the Court found to be discoverable.

Regarding 5(e) and (f), in addition to MGA's trade dress claim against Wee 3 Friends to which the profitability of the product is pertinent, MGA has also informed Mattel that it is investigating below cost pricing as an element of its unfair competition claim. *See* Rutowski Decl. Ex. 1 (████████████████). The proper measure of cost for purposes of California below-cost pricing allegations is average total cost—these topics seek information relevant to making that

1 | calculation. *Pan Asia Venture Capital Corp. v. Hearst Corp.*, 74 Cal. App. 4th 424,

2 | 432 (Cal. App. 1st Dist. 1999) (citation omitted). ████████████████████

3 | ████████████████████████████████████████████

4 | ████████████████████████████████████████████

5 | ████████████████████████████████ Wee 3 Friends was a

6 | limited product line, marketed and sold by Mattel for only a couple of years in an

7 | effort to prevent MGA's 4-Ever Best Friends from gaining a foothold and then to

8 | drive it from the shelves altogether, and the topics are thus by definition limited by

9 | the product's very short lifespan. Dkt. # 8040-1 at ¶ 3 (Declaration of Sarah

10 | Buzby).

11 |         Further, Mattel is seeking damages with respect to the Wee 3 Friends

12 | line of products, and if MGA can demonstrate the product was unprofitable using

13 | the information sought in these topics, then plainly it will be relevant for that reason

14 | as well. █████████████████████████████████████████

15 | ████████████████████████████████████████████

16 | ████████████████████████████████████████████

17 | ████████████████████████████████████████████

18 | ████████████████████████████████████████████

19 | ████████████████████████████████████████████

20 | ████████████████████████████ Topics 5(e) and 5(f) thus seek

21 | information relevant to MGA's unfair competition claim as well as Mattel's

22 | damages, as Mattel conceded when it failed to seek a protective order on these

23 | topics on grounds of relevance.  Rather, Mattel is using the excuse of burden in an

24 | effort to prevent an effective inquiry into its unlawful behavior.

25 | **II.   TOPICS 6 AND 7 SEEK TESTIMONY RELEVANT TO DAMAGES, UNFAIR COMPETITION AND MATTEL'S TRADE SECRET**

26 | **CLAIM.**

27 |         Topics 6 and 7 seek testimony regarding Mattel's Fashion Fever

28 | product line.  First, these topics are relevant to the expansive damages sought by

1   Mattel.  The damages sought by Mattel in connection with its trade secret and

2   RICO claims in Phase 2 explicitly include its Barbie Fashion Fever product line.

3

4

5

6

7

8

9                                                          Further, the extent to which Mattel

10  launched new products in order to compete with Bratz is directly relevant to

11  whether or not prior existing products (such as Barbie and My Scene) lost sales to

12  Bratz. If Mattel intends to withdraw this product from its claimed harm, it can so

13  inform the Court and MGA.  Otherwise, the creation, design, first use and other

14  information covered by these Topics relate to any alleged impact MGA activities

15  had on Mattel's Barbie Fashion Fever product line.

16            Second, these topics are relevant to MGA's unclean hands defense and

17  its affirmative claim of unfair competition.  MGA's affirmative claim of unfair

18  competition and its unclean hands defense, as articulated in its pleadings and

19  discovery responses, allege that Mattel has improperly obtained and used MGA

20  confidential information, for example by using false credentials to gain access to

21  MGA's showrooms at toy fairs.[1]  Documents produced by Mattel (and attached to

22

23

24

25

26

27

28

1    the 30(b)(6) notice) strongly suggest that Mattel improperly obtained competitive

2    confidential information regarding MGA's unreleased products namely, ████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████ Mattel's documents appear

8    to reflect its use of the confidential information regarding MGA's unreleased

9    products to develop its own competing line of fashions, and MGA is entitled to

10   investigate this conduct as part of its affirmative claims and defenses.

11           Indeed, in light of Mattel's allegations that MGA misappropriated

12   similar types of information, these topics are directly relevant to MGA's defense to

13   Mattel's trade secret claims to the extent that the testimony sought will show that

14   Mattel obtained and used MGA information of the same sort Mattel has claimed is

15   a trade secret.  As discussed above, Mattel acquired confidential information

16   relating to two of MGA's anticipated future products—███████████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████ This category of information—anticipated future products—is

20   precisely the type of information that Mattel has claimed is a trade secret.  *See* Dkt.

21   # 7733, ¶ 49 (identifying "anticipated future products" as a category of trade secret

22   information that Machado, Trueba, and Vargas allegedly stole from Mattel).

23   Therefore, testimony relating to Mattel's acquisition of information about MGA's

24   anticipated future products is directly relevant to Mattel's claims of trade secret

25   misappropriation—namely, under what conditions "anticipated future products" are

26   properly treated as a trade secret and under what conditions they may not be (since,

27   

28

1  presumably, Mattel is not going to concede that its own more egregious conduct

2  was trade secret misappropriation).  Efforts that Mattel made towards acquiring

3  information relating to MGA's anticipated future products undercut Mattel's claim

4  that such a category of information is a trade secret.

5          Accordingly, Topics 6 and 7 will produce testimony relevant to a

6  variety of claims and defenses currently at issue in Phase 2.

7  **III.   TOPIC 8 SEEKS TESTIMONY RELEVANT TO MGA'S UNFAIR COMPETITION CLAIM AND MATTEL'S TRADE SECRET CLAIM**

8          Topic 8 seeks information about Mattel's receipt of any non-public or

9  confidential information about competitors' products, including Mattel's practice of

10  visiting competitors' showrooms at Toy Fairs.

11          First, such practices comprise an element of MGA's affirmative claim

12  of unfair competition claim and unclean hands defense.[2]

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  [2] *See*, footnote 1, *supra*.

1
2
3 [redacted] Testimony regarding how Mattel came to

4 possess competitors' confidential information, including its practice of visiting

5 competitors' showrooms at toy fairs to obtain such information is directly relevant

6 to MGA's affirmative claim of unfair competition and unclean hands defense, as

7 alleged in its complaint and answer, other pleadings and discovery responses.

8          Additionally, similar to Topics 6 and 7, this Topic is relevant to show

9 that Mattel obtained and used the same type of proprietary information from MGA

10 that Mattel now claims is a trade secret. [redacted]

11

12

13

14

15

16

17

18

19 [redacted] These categories of information

20 that Mattel obtained about MGA—anticipated future products, retail pricing, and

21 marketing plans and strategies—are precisely the types of information that Mattel

22 has claimed are trade secrets. *See* Dkt. # 7733, ¶49 (identifying "anticipated future

23 products," "retail pricing," and "marketing plans and strategies" as categories of

24 trade secret information that Machado, Trueba, and Vargas allegedly stole from

25 Mattel).  Accordingly, testimony relating to Mattel's acquisition of these types of

26 information from MGA is directly relevant to whether Mattel considered its own

27
28

MGA PARTIES' SUPP. BRIEFING PURSUANT TO JUNE 7
ORDER RE MATTEL 30(B)(6)
CV-04-9049 SGL (RNBx)

1    information in these categories to be trade secrets.

2    **IV.    TOPIC 11 IS RELEVANT TO MATTEL'S TRADE SECRET CLAIM AND MGA'S UNFAIR COMPETITION CLAIM.**

3    Topic 11 seeks information about how Mattel obtained a number of

4    documents concerning MGA and MGA products.  Expanding on Topics 6, 7 and 8

5    above, Topic 11 actually attaches as exhibits to the 30(b)(6) notice a number of

6    documents from Mattel's production which evidence Mattel's acquisition of

7    MGA's confidential information.[4]

8
9
10
11
12
13
14                                                              In Mattel's Fourth Amended

15   Answer, Mattel alleged that Machado, Trueba and Vargas stole confidential trade

16

17   [4] Exhibit 25 to MGA's Notice of Deposition of Mattel 30(b)(6) Witness, dated
18   April 27, 2010, relates to MGA's statue of limitations defense to Bratz-related
     claims (including copyright infringement and trade secret misappropriation based
19   on the theft of Bratz).  As Mattel will not be proceeding with its trade sercret
     misappropriation claims based on the theft of Bratz, *see* Dkt. # 7853 (Order
20   Denying Mattel's Motion re Trade Secret Misappropriation re Bratz), MGA will
     defer pursuing discovery on Exhibit 25 at this time.

21
22
23
24
25
26
27
28
                                                   - 7 -

1    secret marketing and sales documents, such as: "anticipated future products;

2    production and shipping costs for Mattel products; ... media plans; consumer

3    comments regarding existing Mattel products; ... customer inventory level data; ...

4    marketing plans and strategies; merchandising plans; [and] retail pricing and

5    marketing strategies...."  Dkt. # 7733, ¶49.

6

7

8

9

10

11

12

13

14          Second, as discussed in Sections II and III, *supra*, testimony regarding

15   how Mattel came to possess confidential information about MGA is directly

16   relevant to MGA's affirmative claim of unfair competition and its unclean hands

17   defense. [6]

18

19

20

21

22

23

24

25

26

27          To date, every effort by MGA to seek testimony regarding the

28   ───────────────────
     [6] *See*, footnote 1, *supra*.

- 8 -

1   substance of these documents has been met with a complete lack of memory on the

2   part of Mattel's witnesses.  Using the 30(b)(6) mechanism to force the witnesses to

3   go and refresh their recollections to be able to answer the questions, especially with

4   an organization as large as Mattel, is entirely appropriate.  This topic concerns a

5   number of very specific documents that witnesses should be ordered to come forth

6   to explain.  For the foregoing reasons, testimony regarding the substance of the

7   documents attached as exhibits to Topic 11 and the circumstances surrounding the

8   acquisition by Mattel of MGA confidential information reflected therein should be

9   compelled.

10  **V.    TOPICS 16 & 17 SEEK TESTIMONY REGARDING MATTEL'S
        CLAIMED RICO INJURY.**

11

12          Mattel claims harm from the lost opportunity to exploit Bratz as part of

13  its RICO damages.  Of course, it is MGA's view that this theory is legally defective

14  given the stringent RICO injury requirements.  But unless and until the Court

15  determines such, MGA must be afforded adequate discovery regarding Mattel's

16  damages theories.  Thus, Topic 16 seeks information about all fashion doll concepts

17  considered by Mattel between 1990 and 2002, and Topic 17 seeks discovery on the

18  facts Mattel intends to introduce to show that it would have chosen to market Bratz.

19  Both of these topics are directly relevant to Mattel's damages claims and the lost

20  opportunity to exploit Bratz that it alleges as a RICO injury.

21

22

23

24

25

26          Mattel's RICO claims and alleged injury based on Bratz

27  remain pending in Phase 2.  Accordingly, MGA is entitled to discovery on the

28  claims that Mattel continues to assert.

**A.    Topic 16 Is Relevant To Whether Mattel Would Have Selected A Fashion Doll Concept Like Bratz.**

This Topic seeks to explore the fashion doll concepts that were accepted or rejected by Mattel in the 1990s in order to ascertain whether Mattel would have chosen to market Bratz if Bryant had disclosed the drawings between January 1, 1999 and October 19, 2000.  Whether Mattel would have selected features that are like Bratz or unlike Bratz is highly relevant to Mattel's claimed lost opportunity theory.

**B.    Topic 17 Is Tailored To Facts Mattel Intends To Introduce At Trial To Support Its Claimed Injury.**

As discussed above, in connection with its RICO claim Mattel asserts that if Carter Bryant had disclosed his Bratz drawings to Mattel, it would have chosen to market Bratz.  This Topic simply seeks testimony regarding all facts Mattel intends to introduce at trial to support this assertion.  If Mattel intends to introduce testimony regarding facts  to support its lost opportunity to exploit Bratz theory, MGA is entitled to testimony on those facts.

**VI.    TOPIC 18 IS RELEVANT TO MATTEL'S CLAIMED DAMAGES AND TRADE SECRETS AS WELL AS TO MGA'S AFFIRMATIVE CLAIMS**

This Topic seeks information about consumer research conducted by Mattel concerning MGA products.  Such information is directly relevant to Mattel's

MGA PARTIES' SUPP. BRIEFING PURSUANT TO JUNE 7 ORDER RE MATTEL 30(B)(6) CV-04-9049 SGL (RNBx)

1  claimed RICO injury based on its theory of lost sales and lost profits of Barbie and

2  other products. As discussed above, MGA contests that Mattel's theory of lost

3  Barbie profits is viable at all under *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451,

4  459-460 (2006). The following passage from *Anza* is directly pertinent to Mattel's

5  Barbie lost profits claim:

6      The attenuated connection between Ideal's injury and the
       Anzas' injurious conduct thus implicates fundamental
7      concerns expressed in *Holmes*. Notwithstanding the lack of
       any appreciable risk of duplicative recoveries, which is
8      another consideration relevant to the proximate-cause
       inquiry, these concerns  help to illustrate why Ideal's alleged
9      injury was not the direct result of a RICO violation. Further
       illustrating this point is the speculative nature of the
10     proceedings that would follow if Ideal were permitted to
       maintain its claim. A court considering the claim would need
11     to begin by calculating the portion of National's price drop
       attributable to the alleged pattern of racketeering activity. It
12     next would have to calculate the portion of Ideal's lost sales
       attributable to the relevant part of the price drop.  The
13     element of proximate causation recognized in *Holmes* is
       meant to prevent these types of intricate, uncertain inquiries
14     from overrunning RICO litigation.  It has particular
       resonance when applied to claims brought by economic
15     competitors, which, if left unchecked, could blur the line
       between RICO and the antitrust laws.
16

17  *Anza*, 547 U.S. at 459-460.

18          Topic 18 is directly pertinent to both prongs of this analysis:  whether

19  the harm is attributable to "the alleged pattern of racketeering activity," and if so, to

20  what degree other factors may have caused the resulting loss of sales.  In particular,

21  Mattel's research regarding MGA's products goes to the issue of what motivated

22  the sales of Bratz products.  Mattel must demonstrate that it lost Barbie market

23  share because of Bratz infringement (assuming that predicate act is even still in the

24  case).  This would mean that sales of Bratz must be due exclusively to the

25  infringing elements as opposed to other factors.  Mattel's consumer research

26  regarding Bratz products directly concerns this analysis under *Anza*—whether the

27  harm is attributable to the predicate act.  In particular, the limited amount of Bratz

28  research MGA has already obtained from Mattel shows that a variety of factors

MGA PARTIES' SUPP. BRIEFING PURSUANT TO JUNE 7
ORDER RE MATTEL 30(B)(6)
CV-04-9049 SGL (RNBx)

were important to the sales of Bratz other than the appearance of the doll, including accessories, packaging, and other noninfringing elements. This is precisely the type of evidence that is directly admissible under the above-quoted passage from *Anza*.

Moreover, to support its harm and damages theory of *Barbie* lost profits, Mattel will have to create a model of the market as it in fact was, then create a hypothetical but-for world, and explain the differences in seeking damages. In creating the first piece of this model, Mattel must seek to paint a particular picture of how the fashion doll market actually worked during the relevant period—in essence, Mattel must recreate the history of this marketplace and show a picture in which every sale of Bratz would otherwise have gone to a Mattel product. Because Mattel's own research will show that this theory is premised upon counterfactual assumptions, it will defeat the proximate cause level of certainty required under RICO, and moreover can defeat even the admissibility of such a model under Rule 702. *See, e.g., Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 735, 760-61 (8th Cir. 2003) (finding that the district court did not abuse its discretion by rejecting the counterfactual economic model and noting that, while "[a] certain amount of speculation is necessary, ... too much is fatal to admission")

MGA is therefore entitled to discovery from Mattel that may tend to contradict the market model upon which Mattel relies for its claimed injury. That is exactly what this Topic 18 seeks. Mattel documents show that factors other than the look of Bratz dolls influenced sales and success of the Bratz brand products. These factors other than the look are value added by MGA and include fashions,[8] accessories and the related factor of high piece count,[9] irreverent story lines and

---

[8]    Fashions. ███████████████████████████████████████

███████████████████████████████████████████████

    Accessories. █████████████████████████████████

███████████████████████████████████████████████

1  appealing themes,[10] appealing packaging,[11] and relatively higher profit margins

2  offered to retailers.[12]  Second, market analysis produced by Mattel also shows that

3  Bratz "renewed demand" in the older girls segment of fashion doll consumers, a

4  segment that Barbie had lost.[13]  The Bratz Brief and Eckert's "What Happened to

5  Barbie?" e-mail also demonstrate that Mattel's research and market analysis had

6  Barbie suffering long before Bratz ever entered the market.  Mattel introduced My

7  Scene after Bratz in order to follow MGA's success in renewing demand amongst

8  the older girls segment.[14]  All of this research and analysis directly undercuts the

9  market model upon which Mattel's claimed injury and harm is based.  MGA is

10  entitled to discovery on these topics.

11  High piece count.

12

13  Ex. 17 (Depo Ex. 8676) (Robert Eckert email re What Happened to Barbie).

14  [10] Irreverent story lines and themes.

15

16  [11] Innovative packaging.

17

18

19

20  [12] Retail margins.

21  Rutowski Decl. Ex. 17 (Depo Ex. 8676) (Robert Eckert email re What Happened to Barbie).

22

23  [13] Bratz targeted older girls.

24

25  Ex. 17 (Depo Ex. 8676) (Robert Eckert email re What Happened to Barbie).

26

27  [14] My Scene launched to compete for older girl market.

28  Rutowki Decl. Ex. 17 (Depo Ex. 8676) (Robert Eckert email re What Happened to Barbie).

1    Second, consumer research reports, such as those produced by Mattel,

2  are replete with confidential information about MGA of the very same type that

3  Mattel has been claiming is a trade secret when the tables are turned.  Mattel's █████

4  document, just as an example, demonstrates information regarding: retail pricing,

5  marketing plans and strategies, merchandizing plans, budgets for advertising and

6  promotional expenses, and media plans, just to name a few. ████████████████

7  ████████████████████████████████████████████████████████

8  ████████  As described in connection with Topic 11, *supra*, these categories of

9  information are precisely what Mattel claims is a trade secret.  Mattel's pursuit of

10  similar confidential information from MGA is relevant to discredit Mattel's claim

11  that it truly protected such categories of information as trade secrets.

12    Third, these topics are relevant to MGA's affirmative claims and

13  defenses against Mattel.  Mattel's possession of MGA confidential information is

14  directly relevant to MGA's claim of unfair competition and unclean hands

15  defense.[15]  As discussed in the preceding sections, numerous Mattel documents

16  show that Mattel improperly obtained confidential competitive information about

17  MGA products, including forward looking information about MGA's unreleased

18  products by accessing MGA showrooms at toy fairs and from third parties.  *See* §§

19  II & III, *supra*.  It is MGA's contention that these documents reflect wider practices

20  at Mattel of using false credentials to gain access to MGA's showrooms at toy fairs

21  to learn MGA confidential information and inducing third parties to breach their

22  confidentiality agreements with MGA to disclose MGA confidential information.

23  Testimony regarding Mattel's consumer research into MGA products, including

24  how it came to possess confidential competitive information about MGA products,

25  is directly relevant to MGA's claims.

26    Finally, these topics are relevant to MGA's trade dress claims

27  regarding 4 Ever Best Friends and trapezoidal packaging.  To the extent that Mattel

---

[15] *See*, footnote 1, *supra*.

MGA PARTIES' SUPP. BRIEFING PURSUANT TO JUNE 7
ORDER RE MATTEL 30(B)(6)
CV-04-9049 SGL (RNBx)

1  conducted consumer research into MGA's 4 Ever Best Friends product and Bratz

2  packaging, such research would be highly relevant to issues such as secondary

3  meaning, non-functionality, copying, etc.

## VII.   TOPIC 21 SEEKS ONLY FACTUAL, NOT EXPERT, TESTIMONY

5  MGA offers just one point of clarification on this topic: this Topic

6  seeks factual testimony regarding forensic analyses performed by Mattel at the time

7  of, or shortly following, the alleged trade secret misappropriation, prior to bringing

8  its claim.  Through this Topic, MGA seeks facts only about what Mattel did in

9  terms of analyses upon suspecting a trade secret theft, not the opinion of any

10  experts Mattel may be retaining for trial, which MGA will seek, as appropriate,

11  through expert discovery.

## VIII.   TOPIC 22 IS IRRELEVANT IF THE COURT DETERMINES MATTEL'S CRIMINAL COPYRIGHT INFRINGEMENT PREDICATE ACT IS BARRED.

14  As the Court notes, this Topic seeks information about the contents of

15  a number of Mattel copyright applications for Bratz drawings.  MGA agrees that

16  Mattel's alleged criminal copyright infringement predicate act  is barred, and on

17  that basis MGA does not dispute the Court's GRANT of Mattel's Protective Order

18  without prejudice to MGA's ability to re-raise the issue as applicable if and when

19  the Ninth Circuit rules on Phase 1.  Indeed, the Court should make clear that this

20  predicate act is not part of the case.

### A.    The Phase 1 Jury Rejected Willful Infringement.

22  Mattel's claim of injury based on criminal copyright infringement

23  (FAAC ¶124(f)) was rejected by the jury in Phase 1.  To establish a criminal

24  copyright predicate act, Mattel must prove "'three elements: (1) infringement of a

25  copyright (2) done willfully (3) for purposes of commercial advantage or private

26  financial gain.'"  *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1268 (C.D. Cal.

27  2007) (quoting *U.S. v. Goss*, 803 F.2d 638, 642 (11th Cir. 1986)) (emphasis added).

28  Courts have adopted the degree of willfulness articulated by the Supreme Court in

1   the context of criminal tax evasion and other criminal statutes. *U.S. v. Wise*, 550

2   F.2d 1180, 1186 (9th Cir. 1977) (defining willfulness by reference to *Screws v.*

3   *U.S.*, 325 U.S. 91 (1945)); *U.S. v. Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980)

4   (defining willfulness by reference to Screws and *U.S. v. Murdock*, 290 U.S. 389

5   (1933)); *U.S. v. Acevedo-Cruz*, 2006 WL 448680 *3 (D.P.R. Feb. 23, 2006)

6   (defining willfulness by reference to *Cheek v. U.S.*, 498 U.S. 192 (1991)); *U.S. v.*

7   *Moran*, 757 F. Supp. 1046, 1049 (D. Neb. 1991) (same). Willfulness thus requires a

8   showing of "[a]n evil motive to accomplish that which the statute condemns."

9   Screws, 325 U.S. at 101. Mattel must prove that the MGA Parties infringed on

10   Mattel's copyright with the "specific intent to deprive [Mattel] of a . . . right." *Id.*

11   at 103. Mattel cannot prove this because while the jury found MGA liable for

12   copyright infringement, it concluded that the infringement was not willful. Dkt.

13   # 4279 (Phase 1(b) Verdict Form).

14   **B.   Mattel Is Barred From Re-Litigating Willfulness in Phase 2.**

15   As a matter of constitutional law, estoppel principles, and law of the

16   case, the issue of willfulness cannot be presented to another jury. *In re Rhone-*

17   *Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (7th Amendment and

18   principles of estoppel bar presentation of same issue to a second jury); *see also*

19   *Blyden v. Mancusi*, 186 F.3d 252, 268-69 (2d Cir. 1999) (noting in context of a

20   bifurcated case that the Seventh Amendment provides that "a given issue may not

21   be tried by different, successive juries"); *McDaniel v. Anheuser-Busch, Inc.*, 987

22   F.2d 298, 305 (5th Cir. 1993) (same); *Zhang v. Am.n Gem Seafoods, Inc.*, 339 F.3d

23   1020, 1035 & n. 9 (9th Cir. 2003) (estoppel precludes an inconsistent finding in

24   second phase of a bifurcated case); *Houseman v. U.S. Aviation Underwriters*, 171

25   F.3d 1117, 1127 (7th Cir. 1999) (law of the case precludes second-guessing).

26   Where, as here, the issues are complex and intertwined, the jury's verdict is an all

27   or nothing proposition. *See Gasoline Prods. Co. v. Champlin Refining Co.*, 283

28   U.S. 494, 500 (1931) (requiring complete retrial on remand). Mattel cannot pick

- 16 -

1   and choose amongst the various parts of the verdict. The ownership and scope of

2   infringement issues both bear directly on willfulness, and there is no way a second

3   jury could possibly make an independent determination of willfulness without

4   guessing as to what the first jury meant. Indeed, given the subjective standard for

5   criminal willfulness, the second jury would have to re-hear all of the same evidence

6   as did the Phase 1 jury. Mattel therefore cannot continue with its copyright

7   infringement predicate act.

8   **C.   Post-Verdict Infringement Is Not Pled And Cannot Be Willful.**

9          To the extent that Mattel seeks to rely on post-verdict infringement,

10  that theory is not pled, and in all events it would destroy Mattel's RICO claims on

11  the grounds that they lack the elements of continuity and pattern. Mattel's narrative

12  throughout this case has been that MGA stole Bratz in 2000, then stole Mattel's

13  trade secrets in order to create the "intellectual infrastructure" it needed to support

14  the exploitation of Bratz throughout the period. If the exploitation of Bratz

15  throughout the period is not willful and not criminal, the narrative falls apart.

16         Further, MGA cannot be found to have the requisite specific intent

17  post-verdict. Mattel objected to a special verdict form in Phase 1(b) and prevailed

18  on its objection, so the jury did not specify which of hundreds of dolls infringed.

19  Moreover, before rendering the damages verdict, the jury asked whether it could

20  find that only the first generation dolls infringed. The verdict represented only a

21  tiny fraction of what Mattel requested, and more closely approximated MGA's

22  explanation of profits for first generation dolls only. As a result, MGA could not be

23  found to have specific intent post-verdict because nothing placed MGA on notice of

24  which dolls infringed, and all signs pointed to infringement by only first generation

25  dolls.

26  **D.   So Long As Bratz Copyrights Are Not In The Case, MGA Does Not Need Discovery On Topic 22.**

27         For the foregoing reasons, Mattel's criminal copyright infringement

28

predicate acts insofar as they relate to Bratz are barred, and on that basis MGA does not dispute the Court's GRANT of Mattel's Protective Order without prejudice to MGA's ability to re-raise the issue as applicable if and when the Ninth Circuit rules on Phase 1.

## IX.   THE PARTIES ARE MEETING AND CONFERRING REGARDING TOPIC 24.

In meet and confer, Mattel has said that it will produce a variety of trapezoidal packaging upon which it intends to rely, and that limiting Topic 24 by time frame does not make as much sense as limiting it to the particular packaging that will be produced. MGA agrees, and therefore has proposed that the Parties stipulate that the "Mattel Products" as referenced in Topic 24 of MGA's Notice of Deposition of Mattel, Inc. (Third Phase 2 Notice) be limited as follows:

(1)   any trapezoidal packaging upon which Mattel intends to rely for any purpose marketed or sold prior to 2001, and

(2)   all trapezoidal packaging marketed or sold by Mattel from 2001 to the present.

MGA has not yet received a response from counsel for Mattel as to this specific proposal.

## X.   MATTEL HAS FAILED TO PRODUCE FINANCIALS THAT MGA INTENDS TO IDENTIFY PURSUANT TO TOPIC 25.

The Court's June 7, 2010 order requires that MGA identify with specificity the financial documents about which it intends to depose Mattel in connection with Topic 25. MGA has requested that Mattel identify by Bates numbers the following categories of documents:

(1)   Quarterly Financials. Mattel has produced fourth quarter Actuals from 2001-2009 at M 0951765 - M 0958809, and MGA intends to examine about those documents. Mattel refused, however, to confirm whether it will produce its financials from the other quarters. Each set of quarterly financials explains the performance for that quarter on a product-line basis, and includes

MGA PARTIES' SUPP. BRIEFING PURSUANT TO JUNE 7 ORDER RE MATTEL 30(B)(6) CV-04-9049 SGL (RNBX)

1   documents that give the reasons for that performance (the "due to" analysis).  These

2   reasons are directly relevant to the lost sales/lost profits analysis for the products for

3   which Mattel claims harm.  But the quarterly explanations for the first through third

4   quarters are not found in Mattel's fourth quarter actuals, which are limited to

5   explanations for that quarter's performance.  MGA therefore respectfully requests

6   that the Q1-Q3 quarter actuals be ordered produced.

7            (2)    Annual Financial Plans and Forecasts.

8

9                                                         Mattel has agreed to produce

10  these documents, but they apparently have not yet been produced.  MGA asked that

11  Mattel identify them by Bates number when they have been produced so that the

12  list can be made part of this amended Topic.  Meanwhile, MGA identifies Mattel's

13  annual financial plans and update forecasts from 2001 to the present as documents

14  about which it intends to depose Mattel's witness.

15           (3)    P&Ls.  Brand P&Ls from 1998-2008 at M 0928188 –

16  M 0930241.

17           (4)    MGA has also requested, and Mattel has agreed to produce,

18  documents sufficient to show all Barbie revenues and profits at a brand level (per-

19  SKU so that MGA can identify how the sales are distributed between dolls,

20  accessories, licensing revenue, etc.) from 1990 through 2001, and includes those in

21  the documents that it identifies in connection with Topic 25.

22                              **CONCLUSION**

23           For the foregoing reasons, the MGA Parties hereby request that the

24  Court (1) DENY Mattel's motion for a protective order as to Topics 5(c), 5(e), 5(f),

25  6, 7, 8, 11, 16, 17, 18, and 21; (2) maintain its GRANT of a protective order

26  without prejudice as to Topic 22; (3) enter MGA's proposed stipulation as to Topic

27  24; and (4) order Mattel to produce the documents MGA has identified in

28

1    connection with Topic 25 of MGA's Notice of Deposition of Mattel 30(b)(6)

2    Witness.

3

4    Dated:  June 14, 2010           Respectfully submitted,

5                                   ORRICK, HERRINGTON & SUTCLIFFE LLP

6                                   By:  _____

7                                          Mark P. Wine

8                                 Attorneys for MGA ENTERTAINMENT, INC.,
MGA ENTERTAINMENT HK, LTD., MGA de
9                                 MEXICO, S.R.L. de C.V., and ISAAC LARIAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA PARTIES' SUPP. BRIEFING PURSUANT TO JUNE 7
ORDER RE MATTEL 30(B)(6)
CV-04-9049 SGL (RNBX)