# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                                        Date: June 18, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

DOCKET ENTRY
   [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                    Date:_____   Deputy Clerk: _____

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

  Stephanie Mikhail                                                Not Present
   Courtroom Clerk                                                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

   NONE PRESENT                                              NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER REGARDING SUPPLEMENTAL BRIEFING SUBMITTED IN RESPONSE TO COURT'S JUNE 7, 2010 AND JUNE 14, 2010 ORDERS AND OTHER PENDING DISCOVERY DISPUTES

      Before the Court is the parties' supplemental briefing submitted in response to the Court's June 7, 2010 and June 14, 2010 Orders regarding pending discovery disputes.  The Court finds the supplemental briefing sufficient to dispose of certain pending discovery disputes between the parties.

    **I.**    **Mattel's Motion to Compel Production of MGA 30(b)(6) Designee as to Category 11 of March 2, 2010 Letter**

      Mattel's seeks 30(b)(6) testimony concerning "MGA's fee, indemnity and joint defense/common interest agreements and payments (including dates and amounts) in connection with this action and related communications, including without limitation with respect to Vargas, Trueba and Machado or their counsel."  On June 14, 2010, the Court questioned whether testimony about the fee, indemnity and joint defense/common interest agreements and payments would be cumulative of the

agreements themselves.

   Mattel makes a number of arguments in support of the need for 30(b)(6) witness testimony as to MGA's fee and indemnification agreements.

   First, Mattel argues that it has not received full disclosure of MGA's fee and indemnification agreements. *See* Supplemental Brief at 1-5. Mattel cites the deposition transcripts of a number of witnesses who stated or implied that MGA was paying their legal fees. *See id.* All but two of these depositions are confirmed to have occurred before the transfer of this lawsuit to this Court's docket. *See, e.g.*, Deposition of Elise Cloonan, dated December 14, 2007; Deposition of Jeanne Galvano, dated December 18, 2007; Deposition of David Rosenbaum, dated January 25, 2008; Deposition of Lucy Arant, dated May 15, 2008; Deposition of Mitch Kamarck, dated January 28, 2008; Deposition of Jacqueline Price, dated December 21, 2004; Deposition of Kami Gillbour-Bryant, dated May 8, 2008; Deposition of Sarah Halpern, dated April 14, 2008; Deposition of Farhad Larian, dated February 4, 2008.[1]

   The dates of these depositions are relevant because the Court has repeatedly addressed the relevance of fee and indemnification agreements since this lawsuit's transfer. For example, on January 26, 2010, the Court issued an Order compelling MGA to produce all fee and indemnification agreements with Carter Bryant. On March 12, 2010, following a series of long hearings, the Court ordered MGA to produce unredacted copies of certain fee and indemnification agreements. *See* Docket 7643. Counsel for both parties were present when MGA produced the fee and indemnification agreements to Mattel. Mattel did not argue that MGA's eventual production in response to the March 12, 2010 Order was incomplete.

   There is no need for this dispute to drag out over months, resulting in undue waste of the Court's time and resources. The Court hereby ORDERS that MGA produce to Mattel all fee, indemnification, and joint defense/common interest agreements with any potential witness to this lawsuit on or before June 23, 2010.

   Second, Mattel argues that *even if* all fee and indemnification agreements have been produced, MGA should still provide 30(b)(6) testimony as to those agreements. It is axiomatic that requests for production do not constitute a form of discovery that is "equivalent" to 30(b)(6) testimony.

---

  [1] Mattel does not identify the full dates for the depositions of Dan Cooney and Richard Irman. *See* Supplemental Brief at n. 3-4. Even if both depositions occurred after the transfer of this lawsuit, the great majority of the depositions cited by Mattel still would have occurred prior to transfer.

*See U.S. ex rel Fago v. M & T Mort. Corp.*, 235 F.R.D. 11, 24 (D.D.C. 2006).[2] However, it is insufficient to rely upon out-of-context statements in factually inapposite cases. The key questions are: (1) what relevance do the fee and indemnification agreements have?; (2) how is MGA's testimony about the fee and indemnification agreements relevant?; and (3) would any and all testimony offered by MGA about the fee and indemnification agreements be duplicative of the indemnification agreements themselves? These are questions the Court is obliged to ask "on its own" pursuant to Rule 26(b)(2)(C), which limits discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Here, Mattel argues that the fee and indemnification agreements are relevant as to control and/or bias. The existence of the fee and indemnification agreements, coupled with the language in those agreements, provides needed context into a witness' testimony.

Perhaps it is MGA's position that the fee and indemnification agreements oblige Bryant (or some other witness) to provide favorable testimony. Not only does Mattel provide no argument as to the relevance of such a position, but the category does not seek testimony as to "MGA's understanding." It is simply directed at the fee agreements themselves.

Or perhaps MGA has not made timely and regular payments pursuant to the fee and indemnification agreements for certain witnesses, proving that those witnesses are less subject to MGA's control. Again, Mattel provides no argument as to this issue. Nor is the category limited to MGA's payments pursuant to the fee and indemnification agreements.

Finally, Mattel argues that it should be allowed to explore the scope of any "common interest" privilege between Omni 808 Investors, LLC and MGA. According to Mattel, the existence (or absence) of a joint defense agreement between Omni 808 and MGA goes to the existence of a common interest privilege between MGA and Omni. Again, the category is not tailored to this request – it expands far beyond that.

It is clear to the Court that the relevance of any testimony sought by category 11 is limited. Accordingly, Mattel's Motion to Compel is GRANTED as to category 11 but testimony shall

---

[2] Mattel argues that the Court has allowed MGA to obtain Mattel 30(b)(6) testimony into "agreements that Carter Bryant and other employees have had with Mattel." *See* Supplemental Brief at 5. That is correct. *See* June 7, 2010 Order at 8 (denying Mattel's motion for protective order from MGA's topic seeking deposition testimony as to Mattel's employment agreements). But it is also besides the point. *Id.* (holding that Mattel's understanding of such agreements may be relevant to their eventual interpretation). Mattel has submitted no arguments as to the relevance of MGA's understanding as to its fee and indemnification agreements with witnesses.

be limited to three hours on this topic.  Mattel is advised to provide MGA with a list of 25 entities or individuals with whom MGA may have fee, indemnification, and/or joint defense agreements.  Such list should be delivered to MGA prior to the deposition.  If Mattel fails to submit such list to MGA and elects to proceed with the category as presently worded, then the Court will entertain no requests to compel further deposition testimony.

> II.    **Mattel's Motion for Protective Order from the MGA Parties' Notice of Deposition of Mattel (Third Phase 2 Notice) and MGA's Cross-Motion to Compel Testimony of Mattel 30(b)(6)**

MGA served Mattel with a Notice of Deposition on April 27, 2010.  Mattel moved for a protective order as to every topic in the deposition.  On June 7, 2010, the Court granted in part and denied in part Mattel's Motion for a Protective Order.  The Court ordered supplementary briefing as to the below topics:

**Topic 5**.  The Court granted Mattel's motion for a protective order as to topics 5(c), 5(e), and 5(f), all of which concern a line of Mattel fashion dolls called "Wee 3 Friends."  The Court concluded that the cost to Mattel of developing, manufacturing and shipping the dolls was irrelevant.  MGA protests that Mattel never raised the issue of relevance in its Motion for Protective Order and that it was wrong for the Court to *sua sponte* consider the relevance of the discovery sought.  However, Rule 26 entrusts the Court with an independent obligation to regulate discovery.  *See, e.g.*, Rule 26(b)(2)(C)(iii) (providing that court must "on motion or *on its own*" limit the frequency of discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.").  The testimony sought by MGA was marginally relevant.  And the costs of such testimony substantial.  MGA's request for reconsideration of the Court's order is therefore DENIED.

**Topics 6 and 7**.  These two topics concern Mattel's "Fashion Fever" product line.  MGA suggests that Mattel hurriedly launched the "Fashion Fever" product line after wrongfully obtaining information about MGA's products.  MGA contends that Mattel's decision-making process leading up to the release of "Fashion Fever" demonstrates that Mattel engaged in the very practices alleged to have been committed by MGA – namely, the acquisition of a competitor's future product ideas.  Upon review of the supplementary briefing submitted by MGA, the Court VACATES its prior ruling as to these two topics and DENIES Mattel's Motion for Protective Order as to topics 6 and 7.

**Topic 8**.  This topic seeks information about Mattel's purported practice of obtaining non-public and confidential information about its competitors' products, as well as Mattel's practice of visiting its competitors' showrooms without authorization.  Upon consideration of the supplemental briefing submitted by MGA, the Court VACATES its prior ruling as to this topic and DENIES Mattel's Motion for Protective Order as to topic 8.

**Topic 11.**  This topic seeks testimony as to the circumstances and manner in which Mattel obtained certain MGA proprietary documents.  The topic attaches those documents as exhibits.  Upon consideration of the supplemental briefing submitted by the parties, the Court VACATES its prior ruling as to this topic and DENIES Mattel's Motion for Protective Order as to topic 11.

**Topics 16 and 17**.  Topic 16 seeks testimony concerning all product lines considered by Mattel between 1990 and 2002.  Topic 17 seeks testimony as to whether Mattel would have marketed developed if given the opportunity.

MGA argues that the topic seeks relevant and discoverable information that addresses whether the Bratz line of dolls was inconsistent with Mattel's historic product offering.  MGA further argues that the topic seeks relevant information about whether Mattel considered – and rejected – fashion doll lines like Bratz.  Mattel responds that the request is overbroad.

In its June 7, 2010 Order, the Court raised the issue of whether "Bratz-related" discovery was still relevant in Phase 2.  Upon consideration of the parties' briefing, the Court agrees that Bratz-related discovery is relevant to Phase 2 issues.

Mattel argues that the Court previously held that "Mattel need not demonstrate that it would have chosen to develop Bratz."  *See* Mattel's Supplemental Brief re Protective Order at 3 & n. 2.  But the Order relied upon by Mattel is Judge Larson's Phase 1 pre-trial conference order, which granted in part Mattel's motion *in limine* to "exclude evidence relating to whether Mattel would have marketed Bratz."  Significantly, the Order granted Mattel's motion *in limine* only as to Phase 1A, which concerned ownership of Bryant's Bratz sketches.  The Order "deferred" ruling on the motion *in limine* as to Phase 1B issues, which encompassed infringement.  Moreover, the very existence of such a motion *in limine* suggests that Judge Larson previously allowed MGA discovery into whether "Mattel would have marketed Bratz."

In any event, Phase 2 is not Phase 1 and Mattel's damages claims expressly relate to the lost opportunity to profit from Bratz.  Under Rule 26's permissive standards, the Court finds the discovery sought by MGA reasonably likely to lead to the discovery of admissible evidence.

Finally, the Court agrees that the scope of topic 16 is temporally overbroad in relation to the Phase 2 issues.  The Court therefore limits topic 16 to cover only fashion doll product lines considered by Mattel between 1996 and 2001.

For the foregoing reasons, Mattel's Motion is DENIED as to topic 17 and GRANTED IN PART AND DENIED IN PART as to topic 16, which shall be modified to encompass only the 1996 to 2001 time period.

**Topic 18.**  This topic concerns Mattel's internal research about MGA's products.  MGA

argues that Mattel's market research is relevant to determine whether (and to what extent) Bratz's sales resulted from allegedly infringing elements of the doll. MGA also argues that Mattel's internal research will demonstrate the speculative nature of Mattel's damages claims. Third, MGA argues that Mattel's internal research may contradict Mattel's own theories as to damages. Fourth, MGA claims that Mattel's market research reveals that Mattel wrongfully obtained MGA trade secrets. Fifth, MGA claims that Mattel's market research is relevant to MGA's affirmative claims and defenses. Sixth, MGA claims that Mattel's market research is relevant to MGA's trade dress claims.

MGA's claimed need for Mattel's internal market research is either pretextual or shocking. The Bratz line was, by any account, a successful line of dolls to which MGA dedicated significant corporate resources. The suggestion that MGA did not perform its own internal research into the reasons for Bratz sales, as well as the impact of those sales on competitors' products is inherently unbelievable. *Even if* MGA did not conduct such research, the notion that MGA has not or cannot now direct such market research strains logic.

Nor does the text of MGA's request support MGA's claimed need. For example, the request seeks testimony concerning "the distribution within Mattel of any reports concerning such research." The "distribution" of market research has nothing to do with Mattel's claimed injury, the source of any damage to Mattel's products, the "market model" that supports Mattel's damages theories, the content of the research documents, MGA's affirmative claims and defenses, or MGA's trade dress claims.

On its face, the topic is overbroad and MGA's briefing does not support the breadth of the request or the topic that Mattel would bear in preparing a witness on the topic. The Court finds ample grounds upon which to limit the topic pursuant to Rule 26(b)(2)(C). Mattel shall produce a witness as to "[a]ll qualitative and quantitative consumer research conducted by Mattel concerning any MGA product, any attributes of any MGA product, or any MGA product packaging, including the manner and methodology of such research and the results of such research."

**Topic 22**. This topic seeks testimony as to a number of Mattel copyright applications. Upon review of the supplemental briefing, Mattel's Motion is DENIED as to this topic.

**Topic 25.** This topic seeks testimony as to Mattel financial data. MGA seeks to compel the production of more financials from Mattel, but that request has nothing to do with the instant Motion and Mattel has therefore not been afforded an opportunity to file an opposition. The June 7, 2010 Order disposed of Mattel's Motion as to this topic. The Court declines to alter that ruling.

### III.   MGA's Objections to Portions of Discovery Matter Order No. 97

The Court has performed an *in camera* review of the documents at issue in MGA's Objections to Portions of Discovery Matter Order No. 97. On the basis of that review, as well as the

parties' briefing, the Court OVERRULES MGA's Objections.

### IV. Mattel's Motion to Compel Documents from MGAE De Mexico, S.R.L. de C.V. and MGA Entertainment, Inc.

Mattel's Motion is GRANTED IN PART AND DENIED IN PART as to Requests 43, 44, and 48, as Mattel modifies those requests in its Motion. MGA shall produce all non-privileged responsive documents to Mattel on or before July 7, 2010.

### V. Mattel's Motion to Compel Productions of Documents Regarding Former Mattel Employees

The Court directed the submission of supplemental briefing as to Request for Production Nos. 12, 13, 26, 27, 40, and 41 of Mattel's Sixth Set of Requests for Production. The requests encompass documents accessed, modified, or created by former Mattel that refer or relate to, *inter alia*, Mattel products. Mattel has argued that such documents may show: (1) that the former Mattel employees created new business plans for MGA's benefit by using information obtained while at Mattel; (2) that the former Mattel employees accessed Mattel trade secret documents to inspire their work for MGA; (3) that the former Mattel employees supplemented preexisting MGA documents with Mattel trade secret information.

Notwithstanding Mattel's strong briefing on this issue, the Court considers the topics overbroad in their present form. The most convincing argument made by Mattel is as follows: "Comparing [Castilla's] and the other former employees' work product at MGA with the documents and information they stole from Mattel is central to evaluating their use of Mattel information in their jobs at MGA." *See* Mattel's Supplemental Brief at 2. While MGA protests that no such information was used, that is for the jury to decide – not the Court.

However, the scope of the requests is considerably broader than documents that assist the "comparison" suggested by Mattel. In light of its obligations under Rule 26(b)(2)(C), the Court considers a graduated approach to these requests proper. On or before June 25, 2010, Mattel shall deliver to MGA two lists of 25 **narrow** search terms, each of which consist of at least five words within quotation marks and no terms of linkage (*e.g.*, "or" "w/") or modifiers. One list shall be designated for the Contreras hard drive and the other for the Castilla hard drive. The search terms shall be borrowed from the documents purportedly stolen by Castilla and Contreras. On or before July 6, 2010, MGA shall produce to Mattel all documents discovered as a result of the searches of the hard drives and shall produce for the Court's *in camera* review all documents withheld as privileged and/or work product. The remainder of Mattel's Motion is DENIED WITHOUT PREJUDICE as to Mattel moving to compel production of remaining documents on the basis of documents discovered as a result of the search

protocol described herein.[3]

The Clerk shall serve this minute order on all parties to the action.

---

[3] The Court recognizes that certain documents, like spreadsheets and financials that do not generally include strings of terms, may not be included by the instant request. Given the nature of the work performed by Castilla and Contreras, the Court does not consider a handicap.