QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br><u>Hon. David O. Carter</u><br><br>MATTEL, INC.'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S JUNE 14, 2010 ORDER RE CATEGORY 3 OF MATTEL'S MOTION TO COMPEL MGA ENTERTAINMENT, INC. TO PRODUCE 30(B)(6) WITNESSES<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

**Preliminary Statement**

Mattel submits this supplemental brief in response to the Court's Order regarding Category 3 of Mattel's Motion to Compel MGA to Produce 30(b)(6) Witnesses. Category 3 seeks testimony concerning "MGA's use of any design or other work prepared, in whole or in part, by any person while employed by Mattel, including Bryant, Salazar, Morales, and Cabrera, including the identity of each product such persons worked on and when."

As the Court noted, there is no dispute that this topic is relevant to Mattel's claims. Category 3 seeks testimony concerning MGA's use of work and intellectual property that, by definition, were produced by Mattel employees and belonged to Mattel. That is highly relevant to Mattel's claims and not duplicative of prior topics. Category 3 does not seek testimony concerning MGA's use of designs or other works prepared *at MGA* by former Mattel employees. It seeks testimony only as to designs or works prepared by then-*current* Mattel employees. Thus, the topic is tailored to obtaining testimony on MGA's actionable use of work product belonging to Mattel.

That Category 3 seeks testimony on MGA's "use" of Mattel-owned work product does not make it overbroad. MGA's "use" of Mattel's work product is actionable. For example, the word "use" appears in the California Uniform Trade Secrets Act as a prohibited action. MGA's unauthorized "use" of Mattel's copyrighted works also may constitute copyright infringement. Mattel's contracts with many of its employees expressly forbid unauthorized "use" of Mattel designs and work product, making "use" relevant to the contract claims, and MGA's use of Mattel work product from its then-current employees is directly relevant to Mattel's aiding and abetting claims as well. Courts also look to evidence of "use" in determining damages and disgorgement of profits. The topic, as drafted, seeks critical information.

The Court expressed concern that Category 3 was not significantly narrower than Topic 94 from Mattel's January 9, 2008 Notice of Deposition. But Category 3 concerns a smaller universe of material. Topic 94 sought testimony on every MGA product that was based on or derivative of a "BRATZ DESIGN." BRATZ DESIGN was defined to include, among other things, every project or product "known as, or sold or marketed under, the name or term 'Bratz.'" As the Court noted, this broad definition of "BRATZ DESIGN" was Judge Infante's primary concern with Topic 94. In contrast, Category 3 eliminates that issue, restricting the subject material to specific designs or other work product created while those who produced or worked on them were employed by Mattel. Further, elimination of the "based on" and "derivative of" formulation resolves the legal conclusion concerns expressed by Judge Infante. MGA's use of the more limited universe of specific, Mattel-owned material placed at issue by Category 3 goes to the heart of Mattel claims and should be compelled.

## Argument

### I. MGA'S "USE" OF MATTEL-OWNED WORK PRODUCT IS A CRITICAL ISSUE

The Court observed that Category 3 "encompasses all 'use' by MGA" of designs or other work product created by Mattel employees during their employment by Mattel. Order at 4 [Dkt. No. 8104]. Rightly so. "Use" of Mattel's designs and work product is exactly what Mattel's claims in this case involve, including "use" of Mattel's trade secret and copyrighted information. See Cal. Civ. Code § 3426.1(b) ("Misappropriation means . . . disclosure or *use* of a trade secret of another . . . .") (emphasis added); Restatement 3d of Unfair Competition § 40 ("[t]here are no technical limitations on the nature of the conduct that constitutes 'use' of a trade secret"); see also Cambridge Literary Props., Ltd. v. W. Goebel PorzellanFabrik G.m.h.H & Co., 510 F.3d 77, 98 (1st Cir. 2007) (noting that copyright infringement consists of "the unauthorized *use* and exploitation of

copyrighted materials by a person who neither owns the copyright nor has a valid license.") (emphasis added).  MGA's "use" of work product created by then-current Mattel employees is also relevant to damages.  For example, knowing how MGA used the wrongfully-acquired work product will assist in determining the profits MGA earned as a result of exploiting that work product.  See, e.g., B. Braun Med., Inc. v. Rogers, 163 Fed. Appx. 500, 506 (9th Cir. 2006) (profits recoverable "where a plaintiff has shown some causal nexus between such profits and the *use* of its trade secrets") (quoting Digital Envoy, Inc. v. Google, Inc., 2005 WL 2999364, at *16 (N.D. Cal. Nov. 8, 2005) (emphasis added)).  In addition, many of the Mattel employees at issue signed contracts with Mattel expressly forbidding unauthorized "use" of Mattel confidential information, making the term "use" as used in Category 3 directly relevant to Mattel's contract claims.[1]  And MGA's use of Mattel designs worked on or stolen by then-current Mattel employees goes directly to Mattel's aiding and abetting and conversion claims.  Notably, MGA recently argued that Mattel's "use" of certain trapezoidal packaging was relevant to MGA's own trade dress claims, and the Court agreed, compelling Mattel to produce 30(b)(6) testimony on "the use of trapezoidal packaging by Mattel for any of its products" within a particular time frame.  See Order on Pending Discovery Issues, dated June 7, 2010, at 13 [Dkt. No. 8079].

Nor does testimony concerning "use" call for legal conclusions.  "As it appears in the [California Uniform Trade Secrets Act], the noun 'use' is surely

---

[1] See, e.g., Employee Confidential Information and Inventions Agreement executed by Carter Bryant, dated January 4, 1999, M0001596 ("I will not disclose or use at any time either during or after my employment . . . any Proprietary information except for the exclusive benefit of the Company".); Code of Conduct executed by Janine Brisbois, M0098167 ("[Y]ou may only use or disclose such information . . . in accordance with Mattel policies."); Code of Conduct executed by Dan Cooney, M0098129 (same).

intended in the ordinary sense, i.e., '[t]he act of *employing* a thing for any (esp. a profitable) purpose; the fact, state, or condition of being so employed, *utilization* or employment for or with some aim or purposes, *application or conversion* to some (esp. good or useful) end.'" Silvaco Data Sys. v. Intel Corp., --- Cal.Rptr.3d ---, 2010 WL 1713241, at *6 (Cal.App., 6 Dist.) (quoting 19 Oxford English Dictionary 350 (2d ed. 1989)) (emphases in original). Mattel's request for testimony concerning MGA's "use" of Mattel-owned designs and work product is tied directly to the elements of its affirmative claims. And, in any event, MGA itself has successfully compelled 30(b)(6) testimony on topics that are far more explicitly framed as legal conclusions.[2] It must abide by those rulings.

## II. CATEGORY THREE IS SIGNIFICANTLY NARROWER THAN TOPIC 94

Category 3 is far more limited than Topic 94. The most significant limitation is the universe of material at issue. Topic 94 sought testimony concerning all products "based on" or "derivative of" all "BRATZ DESIGNS" or anything derivative of a "BRATZ DESIGN." BRATZ DESIGN, in turn, was defined to include anything that was ever called "Bratz". As the Court noted, this definition was Judge Infante's principal concern with Topic 94. Category 3, on the other hand, is limited to specific material that then-Mattel employees created or worked on while they were employed by Mattel. Thus, even if "use" is broadly interpreted, it is "use" of a far narrower universe of material—MGA's use of any work product a

---

[2] See, e.g., Order Re Pending Discovery Disputes, dated June 7, 2010, at 8 [Dkt. No. 8079] (compelling Mattel to provide testimony on "Mattel's understanding of the terms" of its employment agreements with Carter Bryant as well as all employment agreements dating back to 1975); Order Re Supplemental Briefing Submitted in Response to Court's June 7, 2010 Order, dated June 18, 2010, at 6 [Dkt. No. 8133] (compelling Mattel to provide testimony as to the content and meaning of "a number of Mattel copyright applications").

Mattel employee developed while the employee was employed by Mattel, instead of anything ever called "Bratz." Not only is this a narrower universe of material, it is tailored to the most relevant set of material in this case—work product created by Mattel employees while they were working for Mattel. Instead of seeking testimony on any product based on or derivative of the defined "BRATZ DESIGNS" put at issue in Topic 94, Category 3 thus seeks testimony limited to products that use designs and work product rightfully belonging to Mattel (by virtue of being created or made by Mattel employees during their Mattel employment).

### III. CATEGORY 3 IS NOT DUPLICATIVE OR BURDENSOME

The Court noted that MGA had not challenged Category 3 as either duplicative or burdensome. Order at 4. Nor could it. In fact, MGA has never provided testimony on most of what is covered by the Category. For example, MGA has never provided 30(b)(6) testimony on what the Mattel sample makers who MGA paid to work on Bratz while employed by Mattel actually brought to MGA, or how MGA used those materials. MGA has also never provided 30(b)(6) testimony on how it has used Mattel's Bratz works, created by Bryant, over the course of the past two and half years since the Phase 1 trial—uses that are highly relevant to Mattel's criminal copyright infringement claims, among others. Further, to the extent there is any duplication at all, it is justified by the importance of the issues. Notably, MGA has demanded, and been granted, wholly duplicative testimony on matters plainly within the scope of Phase 1, such as the meaning of Bryant's agreements with Mattel—a topic MGA has already spent 6 hours of deposition time on in the past few days, and for which it says it intends to spend still more. On the other hand, MGA's use of the works created by the sample makers, Bryant and other then-current Mattel employees is at least equally relevant and has been the subject of far less testimony.

As to burden, MGA's uses of Mattel-owned work product is actionable conduct; any burden is plainly justified. In any event, MGA's failure to substantiate

1 | any burden objection dooms such an argument to failure.  See Bible v. Rio
2 | Properties, Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (overruling unsubstantiated
3 | and cursory objections).

### Conclusion

For the foregoing reasons, Mattel respectfully requests the Court grant its Motion to Compel as to Category 3.

DATED: June 21, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Michael T. Zeller
 Michael T. Zeller
 Attorneys for Mattel, Inc.