REQUEST FOR PRODUCTION NO. 71:
All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS to, from or with Jorge Castilla REFERRING OR RELATING TO any modification, change, alteration, upgrade, revision or improvement to any INVENTORY SYSTEM used by YOU from January 1, 2001 to the present.

Request Nos. 69 and 71 seek documents referring or relating to communications to, from, or with Castilla referring or relating to the creation or modification of MGA's inventory systems since 2001. Much like Request Nos. 68 and 70, discussed above, these requests are relevant to show the scope and importance of Castilla's role at MGA and to show Castilla's and MGA's use of Mattel's trade secrets to improve their systems. They are also relevant to show evidence of non-written and other communications that would not be responsive to Request Nos. 68 or 70.

REQUEST FOR PRODUCTION NO. 72:
All COMMUNICATIONS to, from or with Jorge Castilla REFERRING OR RELATING the creation, design, development or implementation of any FORECASTING SYSTEM used by YOU from January 1, 2001 to the present.

REQUEST FOR PRODUCTION NO. 74:
All COMMUNICATIONS to, from or with Jorge Castilla REFERRING OR RELATING TO any modification, change, alteration, upgrade, revision or improvement to any FORECASTING SYSTEM used by YOU from January 1, 2001 to the present.

Request Nos. 72 and 74 seek communications to, from, or with Castilla referring or relating to the creation or modification of MGA's forecasting systems since 2001. This information is relevant to show Castilla's role at MGA, the scope of his responsibility, and the problems that he was hired to seek out and remedy. MGA continues to maintain that Castilla was not an integral part of the development of its forecasting system, but the limited number of documents produced on this topic indicate that Castilla played a pivotal role in refining and advancing MGA's systems and Mattel is entitled to full discovery on this issue. Moreover, these

1  communications will likely show use of Mattel trade secret information, as Mattel

2  can connect modifications suggested by Castilla to the information contained in the

3  trade secrets that he stole.

4  REQUEST FOR PRODUCTION NO. 73:
   All DOCUMENTS REFERRING OR

5  RELATING TO ANY COMMUNICATIONS to, from or
   with Jorge Castilla REFERRING OR RELATING TO the

6  creation, design, development or implementation of any
   FORECASTING SYSTEM used by YOU from January 1,

7  2001 to the present.

8  REQUEST FOR PRODUCTION NO. 75:
   All DOCUMENTS REFERRING OR

9  RELATING TO any COMMUNICATIONS to, from or
   with Jorge Castilla REFERRING OR RELATING TO any

10  modification, change, alteration, upgrade, revision or
    improvement to any FORECASTING SYSTEM used by

11  YOU from January 1, 2001 to the present.

12  Request Nos. 73 and 75 seek documents referring or relating to

13  communications to, from, or with Castilla referring or relating to the creation or

14  modification of MGA's forecasting systems since 2001.  Much like Request Nos. 72

15  and 74, discussed above, these requests are relevant to show the scope and

16  importance of Castilla's role at MGA and to show Castilla's and MGA's use of

17  Mattel's trade secrets to improve their systems.  Responsive documents could also

18  evidence non-written or other communications that would not be responsive to

19  Request Nos. 72 and 74.

20  **III.   MATTEL IS ENTITLED TO PRODUCTION OF PRICING**

21  **STRATEGY DOCUMENTS**

22  **A.   Documents Relating to Pricing Strategy Are Relevant**

23  Request Nos. 1-12 of Mattel's Second Set of Requests for Production seek

24  MGA documents with Mattel and/or MGA pricing information.  In early 2004,[57]

25  MGA started stealing Mattel pricing information: ███████████████

26

27  [57]  See Vargas Declaration [M1632025-2051] (detailing the thefts, including
    theft of pricing information).

28



1 ███████████████████████████████████

2 ██████████████████████████████████████

3 ██████████████████████████████████████

4 ██████████████████████████████████████

5 ████[59]   MGA does not deny this.

6     MGA used this Mattel pricing information to set its prices at or below

7 Mattel's prices and to offer terms better than Mattel to compete unfairly with Mattel

8 by offering prices and terms that it knew were better than Mattel's. ████████

9 ██████████████████████████████████████

10 ███████████████████████████████████

11 ███████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ██████████████.[61]   As in Mexico, the thefts centered on pricing information for

15 Mattel's (and MGA's) three largest customers: Walmart, Toys R Us, and Target.

16 MGA's use of the stolen information goes to the heart of Mattel's business.

17     Confidential pricing information, like Mattel's, is protectable as trade secret.

18 Mattel seeks discovery of MGA's use of this information.  See Sunbelt Rentals, Inc.

19 v. Head & Engquist Equip., L.L.C., 620 S.E.2d 222, 229 (N.C. Ct. App. 2005) (lack

20

21 [58]   See id.; see also Detailed Search Report by Prosecutor Arana, dated October 27, 2005 (detailing thefts in Mexico) [M0114058-79]; 2005 All Worlds Barbie Line

22 List [MGA 3815506.013308-3815506.013353].  Pricing documents were also stolen in Canada by Brisbois (Co-Op Planning [M0098972-9436]), and in the United

23 States by Brawer (Sales Ladder [M0631098-187]), Cooney (Mainline Pricing [M0889138-259]), and Contreras (Profit Margin Comparisons [M0896738-740]).

24

25 [59]   See, e.g., MGA 3815506.000001 - MGA 3815506.000022 (containing actual and projected pricing information on nearly a thousand Mattel products for 2003 and

26 2004).

27 [60]   Vargas Depo., Vol. 2 [ROUGH], dated Jun. 17, 2010, at 222:18-223:16.
   [61]   Id. at 225:2-21.

28

1 | of evidence that defendant had a "unified pricing structure" prior to the alleged

2 | thefts is circumstantial evidence of misappropriation of trade secrets).  The

3 | requested information is relevant, but to date MGA has only been ordered to

4 | produce "documents sufficient to show, by product, the gross and net price of the

5 | products sold by the MGA Parties during and for the sixth period before and the

6 | month time period after Vargas, Trueba and Machado left."[62]  The Court did not

7 | address Discovery regarding Brawer, Brisbois, Cooney and Contreras' thefts of

8 | Mattel pricing information.  Request Nos. 1-5 and Nos. 8-12 go beyond net and

9 | gross pricing information.  They seek documents showing the extent of Mattel

10 | pricing information in MGA's possession and how MGA has used that information.

11 | Gross and net prices do not show terms, how those prices were set, whether Mattel

12 | pricing, costs or margin information was used to set them, among other things.

13 | Those types of documents are relevant and discoverable.

14 | MGA tries to rely on the documents that it produced in response to the

15 | January 26 Order to argue that Mattel has no need of further discovery.[63]  That

16 | MGA has produced some pricing documents, however, does not mean that it has

17 | produced all responsive, requested documents showing possession of Mattel pricing

18 | information or use of that information.  Indeed, MGA has not stated in its briefing or

19 | in its responses that it has produced all documents responsive to the following

20 | Requests.[64]  So, Mattel seeks an order compelling full and complete production in

21 | response to these Requests.

22 | Mattel has requested pricing information for 2001 through the present.  For

23 | 2001 and 2002, the years that pre-date the thefts, Mattel needs MGA pricing

24 |

25 | [62]   January 26, 2010 Order (Dkt. No. 7434), at 6.

26 | [63]   MGA Opposition at 4, 6.

27 | [64]   <u>See</u> MGA's Response to Mattel's Second Set of Requests for Documents and Things (Phase 2), dated Oct. 5, 2010.

28 |

1   information to establish a baseline for showing changes in MGA's pricing strategy

2   based on stolen Mattel pricing information.  Two years of pricing information

3   should be sufficient to prepare statistically significant analysis showing use in 2003

4   and later years. With that information, Mattel can compare (a) MGA's information

5   about Mattel's pricing before and after the theft, and (b) MGA's pricing strategies

6   before and after the theft.  The baseline comparison will show that the receipt of

7   stolen Mattel pricing information was indeed out of the ordinary and rebut claims

8   that there is nothing unusual about MGA possessing Mattel price lists.[65]  MGA has

9   argued that when conclusions must be drawn from data of moving variables, several

10  years of data is important to "to establish[] a rational baseline from which future

11  losses or gains can be gauged."[66]  Having successfully urged the relevancy of

12  baseline information, MGA cannot dispute that now.

13   **B.**   **Each of These Requests are Relevant and Their Production Should**

14        **be Compelled**

15        **1.**   **Documents Relating to Mattel Pricing Information in MGA's**

16             **Possession (Request Nos. 1-5)**

17        These Requests seek all documents relating to *Mattel* information on:

18  planned/actual prices (Request No. 1), price discounts/allowances (Request No. 2),

19  pricing guidelines (Request No. 3), pricing strategies (Request No. 4) and pricing

20  decision-making process (Request No. 5) in MGA's possession.

21        REQUEST FOR PRODUCTION NO. 1:
          All DOCUMENTS RELATING TO the planned, proposed

22        or actual price or prices charged or to be charged by
          MATTEL for any products sold, offered for sale or to be

23

24   [65]   See, e.g., Machado Depo., dated Apr. 21, 2010, at 194:1-13 (█████████████

25   █████████████████████).

26   [66]   See Phase 2 Discovery Matter Order No. 56 at 45 (Dkt. No. 6591) (granting

27  MGA's discovery of detailed Mattel information on sales, revenue, cost, profits from January 1, 1998 to the present).

28

offered for sale by MATTEL from January 1, 2001 to the present.

Responsive documents will show MGA's possession and use of Mattel information on pricing, proposed or actual. Any references to confidential Mattel pricing information in the formulation of MGA's own pricing strategy would be direct evidence supporting Mattel's trade secret theft claim. The phrase "relating to" is necessary to capture documents which evidence MGA's knowledge of and reliance on Mattel information, even if the actual Mattel documents have been destroyed. The requested time period from 2001 forward will establish an effective baseline, as discussed above.

REQUEST FOR PRODUCTION NO. 2:
All DOCUMENTS RELATING TO any price discounts, rebates, allowances or reductions offered or given by MATTEL to any of its customers from January 1, 2001 to the present.

Price discounts, rebates, allowances and reductions are as important to an overall pricing strategy as the actual price, given that they determine retailer margin.

████████████████████████████████████████████

████████████████████████████████████████████

████████████.[67]   Documents responsive to this Request will show what Mattel information MGA acquired, when that information was acquired, and how it was used. Documents "relating to" price discounts and allowances at Mattel are important to capture MGA discussion of Mattel information, and would constitute evidence of incorporation or use of Mattel confidential information.

REQUEST FOR PRODUCTION NO. 3:
All DOCUMENTS RELATING TO any guidelines or requirements employed by MATTEL in determining the prices of any products sold, offered for sale or to be offered for sale by MATTEL from January 1, 2001 to the present.

---

[67]   See, e.g., TRU Promo Effectiveness – 2005 [M0889667-670].

1   ████████████████████████████████████████████████[68].

2   The techniques, systems, tools and methods to develop a pricing strategy have

3   tremendous value for a company trying to undercut the competition on price.

4   Responsive documents will show what MGA knew about Mattel's pricing strategies

5   and how MGA used that information.

6         REQUEST FOR PRODUCTION NO. 4:
      All DOCUMENTS RELATING TO any strategies

7         employed by MATTEL in determining the prices for any
      products sold, offered for sale or to be offered for sale by

8         MATTEL from January 1, 2001 to the present.

9   ████████████████████████████████████████████████

10  ████████████[69]   Knowledge of Mattel's pricing strategies would be of immense

11  value to MGA.  Responsive documents will show MGA's acquisition and use of

12  stolen Mattel trade secrets.

13        REQUEST FOR PRODUCTION NO. 5:
      All DOCUMENTS RELATING TO how MATTEL

14        determined or determines the prices for any products sold,
      offered for sale or to be offered for sale by MATTEL from

15        January 1, 2001 to the present, including but not limited to
      any analyses performed by MATTEL in determining such

16        prices.

17      Request No. 5 seeks any documents relating to how Mattel developed its

18  pricing strategy.   Responsive documents will show how MGA's approach to pricing

19  has been shaped by access to and use of Mattel trade secrets.

20          **2.**    **Documents Sufficient to Show Pricing of MGA Products**

21                 **(Request Nos. 6-7)**

22      Request Nos. 6 and 7 are narrowly tailored to seek "documents sufficient to

23  show" the net and gross price of MGA products, and dates and number of units of

24  each such product sold.

25        REQUEST FOR PRODUCTION NO. 6:

26  

27    [68]   See, e.g. Promotion Proposal Guidelines [M0099472-476].
  [69]   See, e.g. Wal-Mart Price Compression Analysis [M0099494-529].

28

1   DOCUMENTS sufficient to show, by customer and SKU,
2   the NET PRICE for each product sold by YOU from
    January 1, 2001 to the present, the dates on which each
3   such product was sold at such NET PRICE and the
    number of units of each such product sold at such NET
4   PRICE.

    REQUEST FOR PRODUCTION NO. 7:
5   DOCUMENTS sufficient to show, by customer and SKU, the GROSS
6   PRICE for each product sold by YOU from January 1, 2001 to the
    present, the dates on which each such product was sold at such GROSS
7   PRICE and the number of units of each such product sold at such
    GROSS PRICE.

8        These requests seek documents that are relevant to showing that MGA used

9   stolen Mattel pricing information.  The January 26, 2010 Order recognized the

10  relevance of such information when it ordered production of net and gross pricing

11  information.[70]  At issue there were only trade secrets stolen by Vargas, Trueba, and

12  Machado.  These requests seek documents relevant to the theft of pricing

13  information by the other former Mattel employees as well.  MGA's response to the

14  Court's Order does not constitute a full response to these Requests.  The pricing

15  information taken by Machado, Trueba, and Vargas pertained to 2003, 2004, 2005,

16  and 2006.  The historical pricing information taken by Brisbois also went back to

17  2003 and looked forward to 2006.[71]  Given the temporal span of the pricing

18  information stolen, the requests seek pricing information from 2001 to the present.

19  Additionally, as with the other requests, a time span of several years is necessary to

20  detect statistically meaningful changes in pricing patterns that would evidence MGA

21  use of Mattel pricing information.  Net and gross price information after 2007 is

22  relevant to showing that MGA has actively been destroying the Bratz brand.

23       The requests seek pricing information by customer and SKU because a

24  comprehensive pricing strategy is based on these variables.  Further, a breakdown

25  _____

26  [70]  See January 26, 2010 Order (Dkt. No. 7434) at 6.
27  [71]  See M0098884-8933 (containing 2003 pricing information); M0099449-461
    (containing 2006 pricing information).
28

00505.07975/3547509.2

-49-

1  by SKU and customer mirrors the information in the stolen documents. ████

2  ████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████

4  ████████████████.[72]  Any demonstrable changes in MGA's approaches to net

5  and gross pricing in response to an influx of extensive pricing information would be

6  relevant to showing use of that information.  The dates and number of units sold

7  would also show any increase in sales and are relevant to monetize the unjust

8  enrichment by MGA as a result of such pricing changes.

9       **3.    Documents Showing MGA Pricing Guidelines and Strategy**

10          **(Request Nos. 8-12)**

11       Request Nos. 8-12 seek documents showing that MGA changed prices and

12  pricing strategy to gain an unfair advantage by using the reams of Mattel pricing

13  documents that it stole.   Evidence that MGA relied on stolen Mattel trade secrets to

14  change its pricing practices is relevant and discoverable.  See Sunbelt Rentals, 620

15  S.E.2d at 227-229 (lack of evidence that defendant had a "unified pricing structure"

16  prior to the time of the alleged theft is circumstantial evidence of misappropriation

17  of trade secrets).

18       The Requests specifically seek documents relating to pricing guidelines

19  (Request No. 8), pricing strategy (Request No. 9), pricing decision-making process

20  (Request No. 10), documents discussed in setting prices (Request No. 11) and

21  changes in prices (Request No. 12) relied on by MGA.  As with Request Nos. 1-5, a

22  baseline of several years is necessary for a statistically reliable analysis showing that

23  MGA changed prices and pricing strategy using Mattel's trade secrets.

24          REQUEST FOR PRODUCTION NO. 8:
          All DOCUMENTS RELATING TO any guidelines or
25          requirements YOU have considered, implemented or used

26  _____

27  [72]   See Co-Op Planning [M0098972-9436].

28

in determining the prices of any products sold by YOU from January 1, 2001 to the present.

The "guidelines or requirements" sought will show that MGA's pricing guidelines changed after it had Mattel's pricing information. ██████████ ████████████████████████████████.[73]   Use of Mattel's trade secrets in the development of MGA's business processes is relevant and discoverable.

REQUEST FOR PRODUCTION NO. 9:
All DOCUMENTS RELATING TO any strategies YOU have implemented, considered or used in determining the prices for any products sold by YOU from January 1, 2001 to the present.

Request No. 9 seeks documents relating to MGA's pricing strategies. ████████████████████████████████████████████ ███.[74]   Evidence that MGA's strategies changed in response to access to Mattel pricing information will show MGA's use of Mattel trade secrets.

REQUEST FOR PRODUCTION NO. 10:
All DOCUMENTS RELATING TO YOUR decision-making process for determining the prices for any products sold by YOU from January 1, 2001 to the present, including but not limited to COMMUNICATIONS, memoranda or reports that discuss or describe how you arrived at the prices for any such products.

Request No. 10 was drafted as a catch-all request for Request Nos. 8-9. Mattel will limit this Request to "COMMUNICATIONS, memoranda or reports that discuss or describe" how prices for MGA products were set.  Post-theft changes in MGA's pricing processes may show that MGA used Mattel information.  When considering use, courts compare work product allegedly based on stolen information with the information that has been stolen.  See Verigy US, Inc. v. Mayder, 2008 WL 564634, at *7 (N.D. Cal. 2008) ("Under California law, minor variations in a

---

[73] See, e.g., Promotion Proposal Guidelines [M0099472-476].
[74] See, e.g., Wal-Mart Price Compression Analysis [M0099494-529].

1   product do not negate a claim for misappropriation of trade secrets."). As limited,

2   this Request should be compelled.

3   REQUEST FOR PRODUCTION NO. 11:
    All DOCUMENTS considered by YOU, or that discuss or
4   describe any DOCUMENTS or information considered by
    YOU, in determining the prices for any products sold by
5   YOU from January 1, 2001 to the present, including but
    not limited to any analyses performed or obtained by YOU
6   in determining such prices.

7   Request No. 11 seeks information that MGA considered when setting prices,

8   including pricing analyses. First, MGA could have used the stolen Mattel trade

9   secrets to develop its own pricing strategies.[75] Second, MGA could have used its

10  own, independent information and analysis. MGA denies using the stolen pricing

11  information. If so, then MGA should be compelled to produce the information that

12  it did rely upon to set prices, evidence that it may use to show independent pricing

13  decisions. Third, Request No. 11 seeks documents that may evidence any pricing

14  problems that MGA had before obtaining Mattel's documents. Evidence that MGA

15  was having problems with its pricing strategies would establish a motive for stealing

16  Mattel information. See Eldorado Stone, LLC v. Renaissance Stone, Inc., 2005 WL

17  5517732 at *4 (S.D. Cal. 2005) (evidence of access and motive relevant to trade

18  secret claim). In turn, evidence that any such problems were fixed after the

19  acquisition of Mattel pricing information would show that MGA used the

20  misappropriated trade secrets.

21  REQUEST FOR PRODUCTION NO. 12:
    All DOCUMENTS RELATING TO any change or
22  modification in the price for any product sold by YOU
    from January 1, 2001 to the present, including but not

23  

24  [75]   See, e.g., Detailed Search Report by Prosecutor Arana, dated October 27,
25  2005 (detailing thefts in Mexico) [M0114058-79]. Pricing documents were also
    stolen in Canada by Brisbois (Co-Op Planning [M0098972-9436]), and in the
26  United States by Brawer (Sales Ladder [M0631098-187]), Cooney (Mainline
    Pricing [M0889138-259]), and Contreras (Profit Margin Comparisons [M0896738-
27  740]).

28

limited to DOCUMENTS RELATING TO the reasons for any such change or modification.

Request No. 12 seeks the same information as Request No. 11, but for changes or modifications to existing prices rather than setting prices for new products. Request No. 12 should be granted for the same reason as Request No. 11.

## IV.   MATTEL IS ENTITLED TO DOCUMENTS RELATING TO MGA'S ACQUISITION AND USE OF MATTEL CONFIDENTIAL INFORMATION IN ADDITION TO FORECASTING AND PRICING INFORMATION

### A.   Documents Relating to MGA's Acquisition and Use of Mattel Confidential Information Other than Forecasting and Pricing Information Are Highly Relevant

MGA's scheme to misappropriate Mattel trade secrets spanned over more than a decade, involved multiple actors and thousands of stolen pages regarding all subject matters necessary to the successful functioning of a global toy company. Hundreds of documents are known to have been surreptitiously taken by Mattel employees leaving for MGA and numerous other documents evidence the fact that MGA has, over the course of years, considered and used Mattel as the ultimate source of information for solutions to all kinds of problems it encountered in the toy business.[76]

The following Requests focus on the activities of former Mattel employees who left Mattel for MGA, because MGA specifically sought out Mattel employees

---

[76]   See email from Paula Garcia to Elaine Yip, dated December 8, 2006 [MGA 4050634] ("… ████████████████████████████████████████ ██████████████████████████████████████████████ ); see also email from Larian to Nick Contreras (copied Ron Brawer), dated April 5, 2006 [MGA 0518308] (" ████████████████████████████████████████ ██████████████████████████████████████████ ).

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

1  for their knowledge of Mattel[77] and numerous former Mattel employees have been

2  shown to have misappropriated valuable Mattel confidential information for use at

3  MGA.  Thus, these Requests are reasonably calculated to lead to admissible

4  evidence of MGA's misappropriation of Mattel trade secrets.

5      In addition, these Requests are also relevant to Mattel's unclean hands

6  defense, as they would show instances where MGA engaged in the very practices it

7  alleged were committed by Mattel – namely, unfair competition, serial copying, and

8  unjust enrichment.[78]  Acts of other trade secret misappropriation are also relevant to

9  Mattel's RICO allegation of a decade-long scheme to defraud Mattel and compete

10  unlawfully with it.  These Requests are tailored to seek evidence of acts of copyright

11  infringement and spoliation of evidence, as well as acts of wire and mail fraud, all

12  relevant to Mattel's RICO allegations.

13      **B.**   **Mattel is Entitled to the Production in Response to Each of These**

14           **Requests**

15           **1.**   **Mattel Documents or Documents Relating to Mattel,**

16                **Obtained by MGA through former Mattel Employees**

17                **(Request Nos. 4-6, 8-9, 11-12, 14-16, 20-23, 25, 27, 29, 33-34,**

18                **41-44, 46-47, and 51)**

19      Garcia, Marlow and Hatch-Leahy.  Request Nos. 4-6 seek documents

20  authored for the benefit of Mattel or "relating to" Mattel or any Mattel product

21  customer, employee, or process that MGA received from Paula Garcia, Veronica

22  Marlow, or Margaret Hatch-Leahy.  All are former Mattel employees.

23      REQUEST FOR PRODUCTION NO. 4:

24

25  [77]  See email exchanges between Linda Whaley, Eric Villette and Larian with
    most recent from Larian to Villette dated July 4, 2006 [MGA 0194499-01] (█████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████████████).

    [78]  See MGA's Complaint, dated April 13, 2005.

28

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

All DOCUMENTS received by YOU, directly or indirectly, from Paula Garcia that were authored by or for the benefit of MATTEL, or RELATING TO MATTEL, or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales, advertising, marketing, analysis, tool or procedure.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS received by YOU, directly or indirectly, from Veronica Marlow that were authored by or for the benefit of MATTEL, or RELATING TO MATTEL, or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales, advertising, marketing, analysis, tool or procedure.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS received by YOU, directly or indirectly, from Margaret Hatch-Leahy that were authored by or for the benefit of MATTEL, or RELATING TO MATTEL, or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales, advertising, marketing, analysis, tool or procedure.

Mattel established in Phase 1 that Garcia, Marlow, and Hatch-Leahy helped Bryant and MGA in the Bratz theft.[79] These three former employees, having once

---

[79]    Paula Garcia a former Mattel employee and Bryant's first contact at MGA, knew, according to Victoria O'Connor, that Bryant was a Mattel employee when Bryant pitched Bratz to MGA. (Trial Tr. 1316:24-1317:18.)  Based on testimony and documentary evidence, Mattel also believes that Garcia was involved in the theft of the Scooter Shannon theme from Mattel for the MGA theme Scooter Samantha.  See Storie Depo., dated April 30, 2010, at: 1522:4-1523:18.  Veronica Marlow worked at Mattel until approximately March of 2000, at which point she began working with MGA. (Trial Tr. 3621:6-11.)  Beginning in 2000, Marlow used a team of three Mattel employees to secretly work on Bratz.  Through her, MGA paid these Mattel sample makers to work on eventually hundreds of Bratz products over a five-year period (TX 13223; Trial Tr. 3670:5-22) -- and did so using false names and false Social Security numbers to conceal the scheme. (Trial Tr. 3673:5-3674:1.) Margaret Leahy, a doll sculptor formerly employed by Mattel, was engaged by Carter Bryant to develop the Bratz sculpt for MGA.  See Trial Tr. 3027:11-19; 4128:14-4129:12; 4310:5-4311:1; TX 472-0014, 0015, 0016 at "1-626-791-2137"; Trial Tr. 3027:11-19; 4128:14-4129:12; 4310:5-4311:1.

engaged in unlawful acts against Mattel for the benefit of MGA, had the opportunity

and the means to steal other confidential information from Mattel.[80]  Mattel should

be entitled to discover any other trade secret misappropriation in which these former

employees may have been involved.

The scope of these Requests is appropriate.  This Court has already compelled

similar requests directed at other former Mattel employees who are alleged to be

involved in MGA's scheme to steal Mattel property.[81]

Documents responsive to these requests may establish MGA's liability.  They

seek documents regarding MGA acts that could be construed as directing or

authorizing the misappropriation.   See Hanger Prosthetics & Orthotics, Inc., 556 F.

Supp 2d at 1134 (CEO and corporate liability attaches for directing and authorizing

trade secret misappropriation).  They are also relevant to Mattel's RICO allegations,

as they seek documents evidencing the RICO predicate acts of criminal copyright

infringement.  See FAAC at ¶ 124.  In addition, they are relevant to Mattel's unclean

hands defense, as they would show instances where MGA engaged in unfair

competition, a practice it alleged was committed by Mattel.

REQUEST FOR PRODUCTION NO. 11:
All DOCUMENTS, including but not limited
to all COMMUNICATIONS with any PERSON,
RELATING TO YOUR receipt, reproduction, copying,
storage, transmission, transfer, retention, destruction,

---

[80]   Mattel is aware that this Court has denied Mattel's motion to confirm the
pendency of "Bratz" as a trade secret.  See May 13, 2010 Order Denying Mattel's
Motion to Confirm (Dkt. No. 7853).  However, the relevance of these requests is not
tied to Mattel's ability to claim Bratz as a stolen trade secret for Phase 2
proceedings.

[81]   See June 7, 2010 Order (Dkt. No. 8079) (compare text of Request No. 11,
Mattel's Sixth RFP Set, compelled by this Court: "All DOCUMENTS REFERRING
OR RELATING TO MATTEL, or that were prepared, authored or created by
MATTEL or any officer, director, employee or representative of MATTEL, that
CONTRERAS has ever provided to, shown, described to, communicated to or
disclosed in any manner to MGA.").

deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Paula Garcia.

REQUEST FOR PRODUCTION NO. 12:
All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Margaret Hatch-Leahy.

REQUEST FOR PRODUCTION NO. 14:
All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Veronica Marlow.

Request Nos. 11-12 and 14 seek documents related to "receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use" of information authored by or for the benefit of Mattel received by MGA from the former Mattel employees Garcia, Marlow or Hatch-Leahy.  This evidence is highly relevant to Mattel's trade secret misappropriation claim – for both wrongful acquisition and improper use/disclosure of such information.  This Request is narrowly tailored to information that was "prepared, made, created, generated, assembled or compiled by or for Mattel" and received from Garcia, Marlow or Hatch-Leahy.   Further, this Court has already compelled similar requests directed at

1  other former Mattel employees who were involved in MGA's scheme to steal Mattel

2  property.[82]

3       In addition, documents relating to MGA's "receipt[ and] reproduction" are

4  relevant to establish the RICO predicate acts of copyright infringement, and

5  "retention, destruction, [and] deletion " of Mattel information are relevant to

6  establish the predicate act of spoliation and obstruction of justice.  As discussed

7  above, this discovery is also relevant to establishing MGA liability and Mattel's

8  affirmative defense of unclean hands, as they seek evidence of unfair competition

9  and serial copying that MGA has alleged against Mattel.

10      Other Former Mattel Employees  Request Nos. 8-9 and 15-16 seek documents

11 – authored for the benefit of Mattel or "relating to Mattel" – that MGA received

12 from any former Mattel employees, and any documents relating to the copying,

13 transmission or deletion thereof.

14          REQUEST FOR PRODUCTION NO. 8:
                     To the extent not produced in response to any
15          other Request for Production, all DOCUMENTS received
            by YOU, directly or indirectly, at any time from any
16          PERSON identified in Exhibit 664 (bearing Bates numbers
            MGA 0868630-31) that was authored by or for the benefit
17          of MATTEL, or RELATING TO MATTEL, or any
            MATTEL product, plan, client, customer, current or
18          former MATTEL employee, sales, advertising, marketing,
            analysis, tool or procedure.
19
            REQUEST FOR PRODUCTION NO. 9:
20                   To the extent not produced in response to any
            other Request for Production, all DOCUMENTS received
21          by YOU, directly or indirectly, at any time after January 1,

22

23  [82]  See June 7, 2010 Order (Dkt. No. 8079) (compare text of Request No. 11,
    Mattel's Sixth RFP Set, compelled by this Court: "All DOCUMENTS, including but
24  not limited to COMMUNICATIONS, RELATING TO YOUR receipt, reproduction,
    copying, storage, transmission, transfer, retention, destruction, deletion or use of any
25  DOCUMENTS, data and/or information, including but not limited to any
    compilation of information, that were prepared, made, created, generated, assembled
26  or compiled by or for MATTEL and that YOU received, directly or indirectly, from
27  CONTRERAS.").

28

1998 from any current or former MATTEL employee or MATTEL contractor that was authored by or for the benefit of MATTEL, or RELATING TO MATTEL, or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales, advertising, marketing, analysis, tool or procedure.

Request Nos. 8 and 9 are similarly worded to Request Nos. 4-6, with the only difference that they seek to capture evidence of misappropriation by certain former Mattel employees employed subsequently by MGA[83] (Request No. 8) and any current or former Mattel employees (Request No. 9). MGA orchestrated a long-running campaign of Mattel trade secret misappropriation by using current and former Mattel employees as agents for the theft.[84] Mattel is surely entitled to seek limited discovery into MGA's perpetration of such theft through employees whose unlawful acts MGA has prevented Mattel from discovering to date, whether through acts of spoliation or through obstruction of the discovery process.

Request No. 9 is further limited to documents from the year 1998 to the present. This time period is appropriate because MGA's campaign of trade secret misappropriation has spanned more than a decade. See FAAC at ¶ 124. Discovery of further acts of misappropriation during this period are certainly relevant to Mattel's showing of an absence of mistake and presence of intent in MGA's pattern of unlawful competition against Mattel. In addition, Topic 2 of MGA's 30(b)(6) deposition notice to Mattel required testimony about Mattel inventions and employment agreements going back to the year 1975.[85] Since it contends Mattel's efforts to protect its property since 1975 is at issue, MGA cannot reasonably argue that MGA's trade secret thefts from Mattel from 1998 onward is inappropriate.

---

[83]   Exhibit 664 referenced in Request No. 8 is a MGA-created list of former Mattel employees who were subsequently employed by MGA.

[84]   See Mattel's Third Supplemental Objections and Responses to Interrogatory Nos. 20-23 and 28 in MGA's Second Set of Interrogatories.

[85]   See June 7, 2010 Order (Dkt. No. 8079) at 8.

1    Further, documents in response to both Request Nos. 8 and 9 may evidence

2    MGA's RICO predicate acts of copyright infringement and mail and wire fraud in

3    furtherance of the scheme to compete unlawfully with Mattel, as alleged in Mattel's

4    counterclaims.  As discussed above, this discovery is also relevant to establishing

5    MGA liability and Mattel's affirmative defense of unclean hands.

6    <u>REQUEST FOR PRODUCTION NO. 15:</u>
            To the extent not produced in response to any

7    other Request for Production, all DOCUMENTS, including but not limited to all COMMUNICATIONS

8    with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer,

9    retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not

10   limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled

11   by or for MATTEL and that YOU received, directly or indirectly, from any PERSON identified in Exhibit 664

12   (bearing Bates numbers MGA 0868630-31).

13   <u>REQUEST FOR PRODUCTION NO. 16:</u>
            To the extent not produced in response to any

14   other Request for Production, all DOCUMENTS, including but not limited to all COMMUNICATIONS

15   with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer,

16   retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not

17   limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled

18   by or for MATTEL and that YOU received, directly or indirectly, at any time after January 1, 1998 from any

19   current or former MATTEL employee or MATTEL contractor.

20   Request Nos. 15 and 16 are also similarly worded to Request Nos. 11, 12 and

21   14, with the only difference that they seek to capture evidence of misappropriation

22   by certain former Mattel employees employed subsequently by MGA[86] (Request

23   No. 15) and any current or former Mattel employees (Request No. 16).  Similarly to

24   Request Nos. 8 and 9, these Requests also seek limited discovery into MGA's

25

26   _____

27   [86]   Exhibit 664 referenced in Request No. 8 is a MGA-created list of former
     Mattel employees who were subsequently employed by MGA.

28

1  perpetration of such theft through employees whose unlawful acts MGA has

2  prevented Mattel from discovering to date, whether through acts of spoliation or

3  through obstruction of the discovery process.  Similarly to Request Nos. 11, 12 and

4  14, these Requests are relevant not only to Mattel's trade secret misappropriation

5  claim and establishing MGA liability for it, but also Mattel's RICO claims and

6  unclean hands affirmative defense.

7      <u>Ron Brawer.</u>  Request Nos. 20-23 seek documents prepared or sent by Ron

8  Brawer and are narrowly tailored to topics of Mattel trade secrets Mattel alleges

9  Brawer stole for use at MGA.  Brawer, a former Mattel Senior Vice President and

10  General Manager, was in contact with Larian and MGA for *months* before he left

11  Mattel for MGA.  During these months in which he was communicating

12  surreptitiously with MGA, Brawer was exposed to a variety of Mattel trade secret

13  information, including regarding sales, sales performance, product profitability, new

14  product designs and development, among others.  Brawer, at the direction of MGA

15  and Larian, misappropriated a number of these Mattel trade secrets for MGA's

16  benefit.

17      <u>REQUEST FOR PRODUCTION NO. 20:</u>

18      All DOCUMENTS, including but not limited to all COMMUNICATIONS, RELATING TO MGA's sales strategy, technique or plans prepared, created, sent or

19  transmitted, whether in whole or in part, by BRAWER at any time prior to December 31, 2005.

20

21      Request No. 20 seeks documents prepared or sent by Brawer any time prior to

22  December 31, 2005.  This Request is tailored to capture documents for a reasonably

23  limited period of time – fifteen months into Brawer's employment with MGA –

24  while Brawer was arguably most likely to use the misappropriated Mattel

25  information.  Further, this Request seeks only documents relating to "MGA's sales

26  strategy, technique or plans."  MGA has utilized Mattel confidential sales

27

28

1   information that were brought to MGA by Brawer.[87]  Request No. 20 simply seeks

2   to discover the full extent of MGA's use of other confidential Mattel information,

3   which is relevant to Mattel's trade secret misappropriation claim.  Courts, of course,

4   have upheld discovery requests seeking work product created after the theft because

5   "files which purport to be created after [the date of the theft] could nevertheless

6   incorporate information misappropriated before that date."  Upjohn Co. v. Hygieia

7   Biological Labs., 151 F.R.D. 355, 358-59 (E.D. Cal. 1993) (upholding requests for

8   "documents which refer or relate to" the subject matter of the allegedly stolen

9   documents).  Request No. 20, seeking evidence of the use of Mattel information

10  stolen by Brawer, is also relevant to quantifying Mattel's damages in the form of

11  MGA's unjust enrichment.

12          REQUEST FOR PRODUCTION NO. 21:
                    All DOCUMENTS, including but not limited
13      to all COMMUNICATIONS, RELATING TO Bratz Head
        Gamez prepared, created, sent or transmitted, whether in
14      whole or in part, by BRAWER.

15          REQUEST FOR PRODUCTION NO. 22:
                    All DOCUMENTS, including but not limited
16      to all COMMUNICATIONS, RELATING TO Bratz
        Secret Date prepared, created, sent or transmitted, whether
17      in whole or in part, by BRAWER.

18          REQUEST FOR PRODUCTION NO. 23:
                    All DOCUMENTS, including but not limited
19      to all COMMUNICATIONS, RELATING TO Bratz
        Hollywood Style prepared, created, sent or transmitted,
20      whether in whole or in part, by BRAWER.

21

22

23  ―――――――――――――

    [87]  See email from Summer Wells to Ninette Pembleton, dated October 5, 2004
24  [MGA 0320274] ("████████████████████████████████████

25      ██████████████████████████████
        "); see also email from Brawer to Eric Villette (copied Isaac Larian), dated
26  August 25, 2005 [MGA2 0551248] ████████████████████████

27  ██████████████████████████████████).

28

00505.07975/3547509.2

1     Request Nos. 21-23 seeks documents prepared or sent by Brawer relating to

2  three Bratz themes, "Head Gamez," "Secret Date," and "Hollywood."  These

3  documents are directly relevant to the Mattel confidential pre-release line

4  information that Brawer obtained while he was still employed at Mattel and brought

5  with him to MGA.  Evidence obtained thus far suggests that MGA used this

6  information to create directly competing products that it then rushed to market

7  before Mattel at a reduced price.

8     Thus, documents relating to Bratz themes "Head Gamez," "Secret Date," and

9  "Hollywood" prepared or sent by Brawer are unquestionably relevant.  See also

10 Hygieia Biological Labs., 151 F.R.D. at 358-59 (upholding requests for "documents

11 which refer or relate to" the subject matter of the allegedly stolen documents).  This

12 discovery is also relevant to Mattel's affirmative defense of unclean hands, as they

13 seek evidence of unfair competition that MGA has alleged against Mattel.

14     Daniel Cooney and Nick Contreras.  Request Nos. 33-34 and 51 are

15 temporally limited (a year into employment) and topically limited (documents

16 relating to the Mattel confidential information stolen by each of these former Mattel

17 employees prior to leaving for MGA).

18         REQUEST FOR PRODUCTION NO. 33:
              All COMMUNICATIONS between
19 COONEY and any Toys 'R Us employee, agent or
       representative prior to May 31, 2007.
20
         REQUEST FOR PRODUCTION NO. 34:
21            All DOCUMENTS RELATING TO Toys 'R
       Us prepared, created, sent or transmitted by COONEY
22 prior to May 31, 2007.

23     Request No. 33 seeks communications between Daniel Cooney and any Toys

24 'R Us employee prior to May 31, 2007, roughly one year after Cooney's start date of

25 employment with MGA on May 15, 2006, and Request No. 34 seeks documents

26 relating to Toys 'R Us prepared or sent by Cooney during the same period.  Prior to

27 leaving for MGA, Cooney acted as Mattel's Director of National Accounts for Toys

28 'R Us and had access to Mattel's confidential and proprietary information regarding

Mattel's future product lines, advertising and promotional campaigns, methods and techniques to improve sales and product placement with Toys 'R Us and product profitability.  In late 2004 and early 2005, Brawer and Cooney had three or four conversations about Cooney's options at MGAE.[88]  Cooney accepted MGA's higher salary, $25,000 signing bonus, and other increased benefits, and also asked MGA to provide him with "Indemnification from Legal action by Mattel."[89]

[88]   See Cooney Depo. dated January 28, 2008, at 153:7.

[89]   See email correspondence between Cooney and Schuyler Bacon [Exh. 2159 at MGA 1753324].

[90]   See Preliminary Review of Laptop Assigned to Daniel Cooney, dated June 7, 2006 [M 0925783-M 0925801 at M 0925785 and M 0925787].

[91]   See Preliminary Review of Laptop Assigned to Daniel Cooney, dated June 7, 2006 [M 0925783-M 0925801 at M 0925785 and M 0925787]; see also M 0896960, EX 2120, EX 2121, M 0896956 – M 0896959, EX 2118, EX 2117, M 0896956 – M 0896959, EX 2118.

[92]   See Preliminary Review of Laptop Assigned to Daniel Cooney, dated June 7, 2006 [M 0925783-M 0925801 at M 0925785].

[93]   See M 0879379 – M 0879380, Exh. 2143.

█████████████████████████████████████████

███

Given these facts, the requested documents are thus highly relevant to Mattel's trade secrets claims. See also Hygieia Biological Labs., 151 F.R.D. at 358-59 (upholding requests for "documents which refer or relate to" the subject matter of the allegedly stolen documents). Further, this discovery may evidence MGA's RICO predicate acts of mail and wire fraud in furtherance of the scheme to compete unlawfully with Mattel. Documents responsive to this set of Requests are also relevant to Mattel's affirmative defense of unclean hands, as they seek evidence of unfair competition that MGA has alleged against Mattel.

### REQUEST FOR PRODUCTION NO. 51:
All DOCUMENTS, including but not limited to all COMMUNICATIONS, RELATING TO MGA's sales strategy, technique or plans prepared, created, sent or transmitted, whether in whole or in part, by CONTRERAS prior to December 31, 2005.

Request No. 51 seeks documents relating to MGA's sales strategy, technique or plans prepared or sent by Nick Contreras prior to December 31, 2005, roughly one year after Contreras' start date of employment with MGA in mid-November 2004. Prior to leaving for MGA, Contreras was Mattel Senior Manager on Mattel's Target Customer Business Team and had access to Mattel's confidential and proprietary information regarding Mattel's future product lines, advertising and promotional campaigns, methods and techniques to improve sales and product placement with Target and product profitability. ██████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████

---

[94] See MGA0283107; MGA0274687; MGA0283577.
[95] See Contreras Depo., dated January 28, 2008, at 134:14-18.



As a result, Contreras' documents related to MGA's sales strategy, technique or plans, are relevant to Mattel's trade secret misappropriation claim. <u>See also</u> <u>Hygieia Biological Labs.</u>, 151 F.R.D. at 358-59 (upholding requests for "documents which refer or relate to" the subject matter of the allegedly stolen documents). Further, documents in response this Request may evidence MGA's RICO predicate acts of mail and wire fraud in furtherance of the scheme to compete unlawfully with Mattel, and is also relevant to Mattel's affirmative defense of unclean hands, as they seek evidence of unfair competition that MGA has alleged against Mattel.

<u>Gustavo Machado, Mariana Trueba, and Pablo Vargas.</u>

REQUEST FOR PRODUCTION NO. 25:
All DOCUMENTS, including but not limited to all COMMUNICATIONS, RELATING TO MGA's market planning and product development RELATING TO the toy market in Mexico prepared, created, sent or transmitted, whether in whole or in part, by MACHADO at any time prior to April 30, 2005.

REQUEST FOR PRODUCTION NO. 27:

---

[96] <u>See</u> Exhibits 1940-1946.
[97] <u>Id.</u>

1             All DOCUMENTS, including but not limited
to all COMMUNICATIONS, RELATING TO MGA's
2    market planning and product development RELATING
TO the toy market in Mexico prepared, created, sent or
3    transmitted, whether in whole or in part, by TRUEBA
between six months before she left to one year after she
4    left MATTEL.

5    REQUEST FOR PRODUCTION NO. 29:
            All DOCUMENTS, including but not limited
6    to all COMMUNICATIONS, RELATING TO MGA's
promotional spending and activities in Mexico prepared,
7    created, sent or transmitted, whether in whole or in part,
by VARGAS at any time prior to April 30, 2005.

8

9        Request Nos. 25, 27 and 29 seek documents related to certain subject matters

10 of interest, prepared or sent by Gustavo Machdo, Mariana Trueba and Pablo Vargas

11 during their first year of employment at MGA.  These three individuals perpetrated a

12 massive theft of Mattel confidential information prior to joining MGA and with the

13 purpose of benefiting MGA.  In fact, forensic evidence shows, and all three have

14 since admitted, that they stole and used a vast array of Mattel information, including

15 confidential information, regarding product development, pricing strategies, sales,

16 marketing (advertising and promotional), and strategic market research.  MGA

17 Mexico general manager Susana Kuemmerle was aware of theft and use.[98]  An

18 October 2005 search by the Mexican authorities revealed that MGA Mexico had

19 thousands of pages of Mattel confidential information in its working files.[99]  These

20 thousands of recovered pages of documents did not even tell the entire story:

21 Gustavo Machado recently revealed that only some of the documents taken from

22 Mattel in Mexico were recovered during the search by law enforcement

23

24 _____

25 [98]   See Vargas Depo., Vol. 1 [ROUGH] dated June 19, 2010, at 96:14-102:2

26 ( ████████████████████████████████████ ).

27 [99]   See Detailed Search Report by Prosecutor Arana, dated October 27, 2005, for theft in Mexico. [M0114058-79]

28

1   authorities.[100]  Thus, Mattel is not yet aware of the full extent of MGA's acquisition

2   and use of the stolen Mattel documents.  Mattel is entitled to this discovery.

3       Request No. 25 seeks documents related to MGA's market planning and

4   product development concerning the toy market in Mexico, prepared or sent by

5   Machado during his first year of employment at MGA.  Machado's duties at MGA

6   were similar to his duties at Mattel: market planning and product development.

7   Documents related to these subjects were included in the stolen Mattel documents

8   retrieved from the MGA offices by the Mexican authorities.

9       Request No. 27 seeks documents concerning MGA's market planning and

10  product development related to the toy market in Mexico, prepared or sent by

11  Mariana Trueba between six months before she left to one year after she left Mattel.

12  Trueba's duties at MGA were similar to her duties at Mattel:  market planning and

13  product development.  Documents related to these subjects were included in the

14  stolen Mattel documents retrieved from the MGA offices by the Mexican

15  authorities.

16      Request No. 29 seeks documents related to MGA's promotional spending and

17  activities in Mexico prepared or sent by Pablo Vargas prior to one year after his

18  MGA employment start date.  Vargas' duties at MGA were similar to his duties at

19  Mattel:  marketing and advertising.  Documents related to these subjects were

20  included in the stolen Mattel documents retrieved from the MGA offices by the

21  Mexican authorities.

22      Thus, Mattel discovery into MGA documents related to these specific topics,

23  prepared or sent by Machado, Trueba and Vargas respectively, is highly relevant as

24  these documents sought may show use or incorporation of this stolen Mattel

25  _____

26  [100]  See Machado Depo., dated April 21, 2010, at 234:6-14 (█████████

27  ████████████████████████████).

28

1   information.  See also Hygieia Biological Labs., 151 F.R.D. at 358-59 (upholding

2   requests for "documents which refer or relate to" the subject matter of the allegedly

3   stolen documents).  Further, documents in response these Requests may evidence

4   MGA's RICO predicate acts of mail and wire fraud in furtherance of the scheme to

5   compete unlawfully with Mattel, and is also relevant to Mattel's affirmative defense

6   of unclean hands, as they seek evidence of unfair competition that MGA has alleged

7   against Mattel.

8        Janine Brisbois.  Request Nos. 41-44 and 46-47 seek documents related to a

9   limited set of subject matters, prepared or sent by Janine Brisbois prior to one year

10  after her MGA employment start date.  At Mattel, Brisbois was Director of Sales for

11  Mattel's Girls Division in Canada and had access to Mattel's confidential and

12  proprietary information regarding Mattel future product lines, pricing, strategic sales

13  planning, marketing, advertising and promotional campaigns and product

14  profitability.[101]



15

16

17

18

19

20

21

22

23

_____

24  [101]  See Brisbois Depo., dated December 9, 2009 at 45:23-47:16; id. at 51:19-23;

25  id. at 55:20-57:1; id. at 58:24-60:5.

    [102]  Email chain showing that Brisbois was scheduled to speak with Isaac Larian

26  at 5:30 pst on September 22, 2005 [MGA 0877287]; Appointment calendar entry

27  ▮▮▮▮▮▮▮▮▮▮ [M 0926504]; Brisbois Depo., dated December 9, 2009 at 45:21-
    22 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").

28

1    ██████████████████████████████████████

2    ████████████████████ [104]

3      The documents that Brisbois has admitted to taking from Mattel address what

4 was identified by Diane Goveia-Gordon, Brisbois' supervisor at MGA Canada, as

5 the foremost challenges that MGA's operation in Canada was facing into 2005:

6 lack of professional business plans and deficiencies in MGA's forecasting system,

7 especially with respect to major customers.[105]   Mattel is entitled to discovery which

8 would show Brisbois used this stolen Mattel information to address specific

9 problems perceived in MGA's Canada operation.  Evidence of use is directly

10 relevant to Mattel's trade secret misappropriation claim.

11        REQUEST FOR PRODUCTION NO. 41:
           All COMMUNICATIONS between

12 BRISBOIS and any employee, agent or representative of
Wal-Mart, including but not limited to Wal-Mart Canada,

13 prior to September 30, 2006.

14        REQUEST FOR PRODUCTION NO. 42:
           All DOCUMENTS RELATING TO Wal-

15 Mart, including but not limited to Wal-Mart Canada,
prepared, created, sent or transmitted by BRISBOIS prior

16 to September 30, 2006.

17      Request Nos. 41-42 seek documents relating to Wal-Mart created or sent by

18 Brisbois and communications between Brisbois and Wal-Mart agents, prior to

19 September 30, 2006 – a year into her employment at MGA, arguably the time period

20 during which she was most likely to use the stolen Mattel information.  Wal-Mart

21 Canada is one of Mattel's most important retail customers.  The documents stolen by

22

23     [103]   See Brisbois Depo., dated December 9, 2009, at 211:9-212:11; id. at 226:2-

24 5; see also id. at 226:25-228:5.
    [104]   Id. at 211:16-17.

25     [105]   Goveia-Gordon Depo., dated February 3, 2010, at 146:21-147:13 (████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████

28                  ).

1   Brisbois included, *inter alia*, ███████████████████████████████

2   ██████████████████████████████████████████████████████████████

3   ██████████████ [106]  Mattel discovery of Brisbois' documents relating to and

4   communications with Wal-Mart is relevant to show Brisbois incorporated or relied

5   on Mattel information related to Wal-Mart while discharging her duties at MGA.

6   This is evidence of use of Mattel information, and obviously relevant to Mattel's

7   trade secret misappropriation claim.  See Hygieia Biological Labs., 151 F.R.D. at

8   358-59 (upholding requests for "documents which refer or relate to" the subject

9   matter of the allegedly stolen documents).  Further, documents in response this

10  Request may evidence MGA's RICO predicate acts of mail and wire fraud in

11  furtherance of the scheme to compete unlawfully with Mattel, and is also relevant to

12  Mattel's affirmative defense of unclean hands, as they seek evidence of unfair

13  competition that MGA has alleged against Mattel.

14          REQUEST FOR PRODUCTION NO. 43:
                All COMMUNICATIONS between
15      BRISBOIS and any employee, agent or representative of
        Toys 'R Us, including but not limited to Toys 'R Us
16      Canada, prior to September 30, 2006.

17          REQUEST FOR PRODUCTION NO. 44:
                All DOCUMENTS RELATING TO Toys 'R
18      Us, including but not limited to Toys 'R Us Canada,
        prepared, created, sent or transmitted by BRISBOIS prior
19      to September 30, 2006.

20          Request Nos. 43-44 seek only documents created or sent by Brisbois relating

21  to Toys 'R Us and communications between Brisbois and Toys 'R Us agents, prior to

22  September 30, 2006 – a year into her employment at MGA, arguably the time period

23  during which she was most likely to use the stolen Mattel information.  Toys 'R Us

24  is one of Mattel's most important retail customers.  The documents stolen by

25  _____

26  [106]  M 0098937 - M 0098971; see also Brisbois Depo., dated December 9, 2009,
27  at 268:2-271:15 ("This is a summary of Mattel's business with Walmart in various
    different countries in the period of...comparing the fiscal year 2003 and 2004.").

28



1  Brisbois included, *inter alia*, a ██████████████████████████
2  ████████████████████████████████████████████████████
3  ████████████████████████████████████████████████
4  ████████████████████████████████.[108]  Mattel discovery of Brisbois'
5  documents relating to and communications with Toys 'R Us – ████████████
6  ████████████████████████████[109] – is relevant to show
7  Brisbois incorporated or relied on Mattel information related to Toys 'R Us while
8  discharging her duties at MGA.  This is evidence of use of Mattel information, and
9  obviously relevant to Mattel's trade secret misappropriation claim.  See also Hygieia
10  Biological Labs., 151 F.R.D. at 358-59 (upholding requests for "documents which
11  refer or relate to" the subject matter of the allegedly stolen documents).  For reasons
12  similar to Request Nos. 43-44, this discovery is also relevant to Mattel's RICO
13  allegations and its affirmative defense of unclean hands.

14  REQUEST FOR PRODUCTION NO. 46:
     All DOCUMENTS RELATING TO MGA's
15   plans for product launches and promotions in or for 2005
     and Spring 2006 prepared, created, sent, transmitted or
16   received by BRISBOIS.

17  REQUEST FOR PRODUCTION NO. 47:
     All COMMUNICATIONS RELATING TO
18   MGA's plans for product launches and promotions in or
     for 2005 and Spring 2006 prepared, created, sent,
19   transmitted or received by BRISBOIS.

20  Request Nos. 46-47 seek documents and communications relating to MGA's
21  plans for product launches and promotions in or for 2005 and Spring 2006 prepared,
22  sent or received by Brisbois.  Indeed, the documents stolen by Brisbois included,
23  *inter alia*, a ████████████████████████████████████

24  ─────────────────

25  [107]  Exhibit 6919.
    [108]  See Brisbois Depo., dated December 9, 2009, at 280:19-21 (███████████
26  ████████████████).
    [109]  Goveia-Gordon Depo., dated February 3, 2010 at 99:6-100:14 (████████
27  ████████████████████████████).
28

1 ██████████████████████████████████████████

2 ████████████████████████████████████████████

3 ██████████████████████████████████████████████

4 ████████████████████ [111]   The Request is limited temporally to the two first

5 seasons after which Brisbois stole these highly pertinent documents, at the time

6 where she would have used knowledge of upcoming Mattel promotions to compete

7 directly with Mattel or to blunt the impact of Mattel promotions, and thus cause

8 harm to Mattel.[112]  This is evidence of use of Mattel information, and obviously

9 relevant to Mattel's trade secret misappropriation claim.  See also Hygieia

10 Biological Labs., 151 F.R.D. at 358-59 (upholding requests for "documents which

11 refer or relate to" the subject matter of the allegedly stolen documents).  For reasons

12 similar to Request Nos. 43-44, this discovery is also relevant to Mattel's RICO

13 allegations and its affirmative defense of unclean hands.

    **2.**    **Documents Relating to Evidence of Acquisition and Disposition of Mattel's Trade Secret Information (Request Nos. 78-80 and 90-96)**

17     Request Nos. 78-80 seek documents evidencing acquisition of Mattel

18 documents (Request Nos. 79-80) and any subsequent destruction or failure to

19 preserve (Request No. 78) of documents.  Request Nos. 90-96 seek documents

---

[110]   Exhibit 6919.

[111]   See Brisbois Depo., dated December 9, 2009, at 280:19-21 (Brisbois admits to accessing this document).

[112]   Indeed, MGA is known to have used such confidential Mattel information to undercut Mattel's actions.  See email from Garcia to Larian, Bryant and Bryant, dated March 18, 2005 [MGA 0226309-12] (" ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ [DE 7898; MGA 0206077].

1 evidencing the use or disclosure of Mattel documents by MGA. Documents

2 responsive to these Requests are obviously relevant as direct evidence of

3 misappropriation.

4 <u>REQUEST FOR PRODUCTION NO. 78</u>:

All DOCUMENTS that REFER OR

5 RELATE TO YOUR destruction, loss, failure to preserve, or otherwise render unavailable or inaccessible any

6 MATTEL DOCUMENTS.

7     Request No. 78 seeks information regarding the destruction or failure to

8 preserve any Mattel documents in MGA's possession. As is the case with any trade

9 secret misappropriation cases, the defendant is uniquely positioned to possess

10 information as to trade secret use. <u>See</u> <u>Vinyl Interactive, LLC v. Guarino</u>, 2009 U.S.

11 Dist. LEXIS 41498, *22 (N.D.Cal. May 1, 2009) (without discovery, defendants are

12 the only ones who possess information on their use of plaintiff's trade secrets). If

13 MGA is unable to produce documents evidencing its use and disclosure of Mattel

14 trade secrets because it has destroyed the trade secrets it improperly acquired in the

15 first place, then the evidence of destruction is necessarily relevant. Documents that

16 "refer or relate to" this destruction or failure to preserve are highly relevant as they

17 would show the reason, timing, and other attending circumstances of such

18 destruction.

19     In addition, documents responsive to Request No. 78 are also relevant to

20 RICO predicate act of spoliation.

21 <u>REQUEST FOR PRODUCTION NO. 79</u>:

The original of any media or device on which

22 any MATTEL DOCUMENT was delivered to YOU.

23     Request No. 79 seeks the original of any device used to transfer Mattel

24 documents to MGA. As an initial matter, Request No. 79 is well within the bounds

25 of <u>Rule</u> 26, which authorizes discovery into the "location of any documents."

26 Mattel is entitled to inspect the device on which the Mattel documents were housed

27 when delivered to MGA and determine whether they were accessed or modified

28 and, if so, when. Further, <u>Rule</u> 34 confers "a right to inspect the originals.

1  Possession of copies of documents does not prevent discovery of actual documents

2  so as to avoid possible challenges to the genuineness of copies at the trial." In re

3  Kolinsky, 140 B.R. 79, 87 (S.D.N.Y. 1992) (citing 4 Moore's Federal Practice, § 26-

4  184 (2d ed. 1991)); see also Gielow v. Warner Bros. Pictures, 26 F. Supp. 425

5  (S.D.N.Y. 1938) (holding originals were "evidence material to any matter involved"

6  within Rule 34 providing for discovery and granting motion to compel).  The

7  evidence of access and modification, which is likely to be discovered upon

8  inspection of originals, is relevant and raises inferences of misappropriation. See

9  Eldorado Stone, LLC v. Renaissance Stone, Inc., 2005 WL 5517732 at *4 (S.D. Cal.

10 2005) (evidence of access is relevant to trade secret claim).

11             REQUEST FOR PRODUCTION NO. 80:
                  The original of any MATTEL DOCUMENT
12       delivered to YOU.

13       Request No. 80 seeks the original of any Mattel document delivered to MGA.

14 Similarly to Request No. 79, this Request is well within the bounds of Rule 34,

15 which authorizes requests for production of originals.  If the originals are electronic

16 copies, Mattel is entitled to them in order to test forensically and determine whether

17 the files were accessed or modified and, if so, when.  If they are hard copies, Mattel

18 is entitled to them in order to inspect, among other things, for indicia of copying or

19 alteration.  Evidence of access, modification, copying and/or commentary is all

20 relevant to trade secret misappropriation. See Eldorado Stone, LLC, 2005 WL

21 5517732 at *4 (evidence of access is relevant to trade secret misappropriation

22 claim).

23             REQUEST FOR PRODUCTION NO. 90:
                  All DOCUMENTS that REFER OR
24       RELATE TO YOUR use or disclosure of any information
         in the MATTEL DOCUMENTS.
25
         Request No. 90 seeks documents referring or relating to the use or disclosure
26
    of Mattel documents by MGA.  These documents are relevant as direct evidence of
27
    MGA's trade secret misappropriation via use or disclosure, see Cal. Civ. Code
28

§3426.1.  In fact, in its Separate Statement of Facts, MGA concedes that its use or disclosure of Mattel information is relevant, and claims that Mattel has failed to show it.[113]  MGA should be compelled to produce documents which negate its defense.

REQUEST FOR PRODUCTION NO. 91:
All DOCUMENTS that REFER OR RELATE TO YOUR access to any information in the MATTEL DOCUMENTS.

Request No. 91 seeks documents referring or relating to MGA's access to the information in any Mattel documents.  Access raises the inference that MGA used Mattel's documents, and is relevant to Mattel's building of a misappropriation case.  Evidence of access and modification raises the inference that MGA used Mattel's documents, and is relevant to Mattel's building of a misappropriation case.  See Eldorado Stone, LLC, 2005 WL 5517732 at *4 (evidence of access is relevant to trade secret misappropriation claim).

REQUEST FOR PRODUCTION NO. 92:
All DOCUMENTS created, authored, modified or copied by YOU or for YOUR benefit that contain any portion of information contained in any MATTEL DOCUMENT.

Request No. 92 seeks documents created by MGA which employ information contained in Mattel documents, and thus, evidence "use" of information contained in Mattel documents.  See Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 223 (2010) (in the statute "the noun 'use' is surely intended in the ordinary sense, i.e., '[t]he act of employing a thing for any (esp. a profitable) purpose....' ").  As noted above, MGA concedes that its use of Mattel information is relevant, and claims that Mattel has failed to show it.[114]

REQUEST FOR PRODUCTION NO. 93:

---

[113]  See Separate Statement (Dkt. Nos. 7899, 7900).
[114]  See id.

1
2
3

DOCUMENTS sufficient to IDENTIFY the date of creation, modification, access or transmission of any DOCUMENT created, authored, modified or copied by YOU or for YOUR benefit that contains any portion of information contained in any MATTEL DOCUMENT.

4   Request No. 93 is similarly relevant to identify the circumstances of the

5   creation, handling and disposition of documents created from or with or using

6   Mattel trade secret materials.  Documents responsive to this request would help

7   Mattel ascertain what trade secret information MGA had access to, whether and how

8   it disclosed and used that information within MGA, and who at MGA had access to

9   these materials or knowledge of such access.

10
11
12
13

REQUEST FOR PRODUCTION NO. 94:
DOCUMENTS sufficient to IDENTIFY each PERSON who created, accessed, modified, used, copied or transmitted any DOCUMENT created, authored, modified or copied by YOU or for YOUR benefit that contains any portion of information contained in any MATTEL DOCUMENT.

14   Request No. 94 is similarly relevant to identify the persons involved in the

15   creation, modification or use of documents responsive to Request No. 92.  This

16   Request is also relevant because it allows Mattel to find other specific uses of Mattel

17   information at MGA and to learn about other individuals who were involved in

18   MGA's acts of misappropriation, which is also pertinent to Mattel's RICO claims.

19   Documents responsive to this request would help Mattel ascertain whether and how

20   additional acts of disclosure and use of Mattel's trade secret information took place

21   within MGA.

22
23
24
25

REQUEST FOR PRODUCTION NO. 95:
DOCUMENTS sufficient to IDENTIFY the date of creation, modification, access or transmission of any DOCUMENTS that REFER OR RELATE TO YOUR access to any information in the MATTEL DOCUMENTS.

25
26   Request No. 95 is relevant to identify the circumstances of the creation of

27   documents referring or relating to MGA's access to stolen Mattel documents and

28   information.  Such documents are relevant to MGA's knowledge about its

00505.07975/3547509.2

-77-

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

1    acquisition and possession of Mattel materials, as well as its and others' participation

2    in the scheme to misappropriate Mattel's trade secret documents.

3        REQUEST FOR PRODUCTION NO. 96:
             DOCUMENTS sufficient to IDENTIFY each
4        PERSON who created, accessed, modified, used, copied or
         transmitted any DOCUMENTS that REFER OR RELATE
5        TO YOUR access to any information in the MATTEL
         DOCUMENTS.
6
         Request No. 96 is relevant to identify persons inside and outside of MGA that
7
     are knowledgeable about MGA's access to, disclosure of, and use of, Mattel's trade
8
     secret information.  Documents responsive to this request are also relevant to
9
     Mattel's spoliation claims.
10
          3.    **Documents Relating to MGA's Defenses Against Mattel's**
11
                **Trade Secret Misappropriation Claim (Request Nos. 81-86**
12
                **and 97-98)**
13
         Request Nos. 81-86 and 97-98 are aimed at obtaining the evidence by which
14
     MGA intends to defend against Mattel's misappropriation claim.  In its motions for
15
     summary adjudication of the trade secret claims filed on May 10,[115] MGA put at
16
     issue each of the defenses addressed by these Requests.  MGA alleges that it did not
17
     wrongfully misappropriate Mattel documents (Request Nos. 81-83), that it did not
18
     cause harm or benefit from its use of Mattel information (Request Nos. 97-98) and
19
     that, in the alternative, documents stolen from Mattel were not trade secrets, because
20
     they supposedly lacked independent economic value (Request No. 84), contained
21
     publicly known information (Request No. 85) and/or were not subject to reasonable
22
     efforts to protect their confidentiality (Request No. 86).  Mattel is entitled to any
23
     information MGA intends to rely upon to establish these defenses to its claims.
24
         REQUEST FOR PRODUCTION NO. 81:
25

26   _____

27   [115]  See MGA Motions for Summary Adjudication on Trade Secret Claims (Dkt.
     Nos. 7897, 7898).
28

00505.07975/3547509.2

-78-

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

All DOCUMENTS that YOU contend prove or that YOU will rely on at trial to prove that YOU did not use or disclose any MATTEL DOCUMENT or any information contained in any MATTEL DOCUMENT.

REQUEST FOR PRODUCTION NO. 82:
All DOCUMENTS that YOU contend prove or that YOU will rely on at trial to prove that MATTEL agreed or consented to or acquiesced in YOUR taking, use or possession of any MATTEL DOCUMENT.

REQUEST FOR PRODUCTION NO. 83:
All DOCUMENTS that YOU contend prove or that YOU will rely on at trial to prove that YOU did not acquire any MATTEL DOCUMENT through improper means.

REQUEST FOR PRODUCTION NO. 84:
All DOCUMENTS that YOU contend prove or that YOU will rely on at trial to prove that the information in the MATTEL DOCUMENTS does not derive independent economic value from not being generally known to the public or other persons who can obtain economic value from its use.

REQUEST FOR PRODUCTION NO. 85:
DOCUMENTS sufficient to IDENTIFY any MATTEL DOCUMENT that contains information generally known to the public or to PERSONS who can obtain economic value from its disclosure and use.

REQUEST FOR PRODUCTION NO. 86:
All DOCUMENTS that YOU contend prove or that YOU will rely on at trial to prove that MATTEL did not take reasonable efforts under the circumstances to maintain the secrecy of the information in the MATTEL DOCUMENTS.

REQUEST FOR PRODUCTION NO. 97:
All DOCUMENTS that YOU contend prove or that YOU will rely on at trial to prove that MATTEL suffered no harm caused by YOUR use and/or disclosure of any information in the MATTEL DOCUMENTS.

REQUEST FOR PRODUCTION NO. 98:
All DOCUMENTS that YOU contend prove or that YOU will rely on at trial to prove that YOU obtained no benefit from YOUR use and/or disclosure of any information in the MATTEL DOCUMENTS.

MGA cannot legitimately refuse to produce *anything* in response to these requests which seek documents directly relevant to its defenses. See Fed. R. Civ. P. 26(a)(1)(A)(ii) (automatic duty to disclose documents party may use to support its

1  claims or defenses); Fed. R. Civ. P. 26(b) (duty to provide relevant documents in
2  response to proper discovery requests); Fed R. Civ. P. 26(e) (ongoing duty to
3  supplement Rule 26(a) disclosures).  This is an obstruction of the discovery process
4  for which MGA could face discovery sanctions, including dismissal of defenses.
5  Fed. R. Civ. P. 37(c).

### 4.   Documents Relating to MGA's Product Line from 2003 to 2008 (Request Nos. 100-105)

8  Request Nos. 100-105 seek relevant information evidencing use or
9  incorporation of Mattel product line information in creating MGA's own product
10  line.  Use of such product line information could be by developing new brand lines,
11  sub-brand lines, developing new similar products, new themes for existing products,
12  advancing release dates, scrapping ideas, developing  or changing prices or TV
13  support for specific products, electing not to compete in a particular area or
14  changing how advertising and promotions budgets are spent.   The requested time
15  period (from 2003 to 2008) is necessary to enable Mattel to compare MGA's product
16  line before and after the various thefts of information regarding Mattel's pre-release
17  product line offering or non-public details of Mattel's released product line during
18  the years 2004 to 2005.[116] ███████████████████

19  ████████████████████████████████████████

20  ██████████████████████████████████

21  ██████.[117]  In late 2004, Brawer stole additional confidential Mattel product

22

23

24

25  [116]  See, e.g., 2005 All Worlds Barbie Line List [MGA 3815506.013308-3815506.013353].
26  [117]  See Expert Report of IT Experts Miguel Angel Hernandez & Raymundo
27  Cisneros) [M0112450-605]; see also Olavarrieta Expert Report [M 0126025-187];
Report by EvidentData [M0126267-76].

28

1   information for the benefit of MGA.[118] ████████████████████

2   ████████████████████████████████████████[119]

3          Documents sought by these requests will show whether the stolen Mattel

4   information was used by MGA during the process of creating or altering its product

5   line offerings.

6          REQUEST FOR PRODUCTION NO. 100:
             All DOCUMENTS that REFER OR
7       RELATE TO YOUR product or product line offerings, or
        contemplated or proposed product or product line
8       offerings, for calendar year 2003, including without
        limitation YOUR product line lists for such time period
9       and all DOCUMENTS that REFER OR RELATE TO
        changes or amendments or contemplated or proposed
10      changes or amendments thereto.

11          Request No. 100 seeks documents referring to MGA's actual or proposed

12   product line and any changes thereto for the year 2003.  As discussed above,

13   documents from 2003 are relevant to establish a baseline for comparison of MGA's

14   product line before and after the theft of Mattel product line information.

15          REQUEST FOR PRODUCTION NO. 101:
             All DOCUMENTS that REFER OR
16      RELATE TO YOUR product or product line offerings, or
        contemplated or proposed product or product line
17      offerings, for calendar year 2004, including without
        limitation YOUR product line lists for such time period
18      and all DOCUMENTS that REFER OR RELATE TO
        changes or amendments or contemplated or proposed
19      changes or amendments thereto.

20          REQUEST FOR PRODUCTION NO. 102:
             All DOCUMENTS that REFER OR
21      RELATE TO YOUR product or product line offerings, or
        contemplated or proposed product or product line
22      offerings, for calendar year 2005, including without
        limitation YOUR product line lists for such time period
23      and all DOCUMENTS that REFER OR RELATE TO

24  

25   [118]   As noted above regarding Requests 20-23, evidence shows that MGA's
     released products copied at least three of Mattel's MY SCENE concepts of which
26   Brawer had knowledge.
27   [119]   See Anticipated Evidence of Mark Spencer, Northeast Region Director of
     EvidentData [M 0926415-32].

28

changes or amendments or contemplated or proposed changes or amendments thereto.

REQUEST FOR PRODUCTION NO. 103:
All DOCUMENTS that REFER OR RELATE TO YOUR product or product line offerings, or contemplated or proposed product or product line offerings, for calendar year 2006, including without limitation YOUR product line lists for such time period and all DOCUMENTS that REFER OR RELATE TO changes or amendments or contemplated or proposed changes or amendments thereto.

Request No. 101 -103 seeks documents referring to MGA's actual or proposed product line and any changes thereto for the years 2004 to 2006. Given the facts, discussed above, during the years 2004 and 2005, documents sought by these Requests would show whether this valuable information stolen from Mattel was considered or used by MGA during the process of creating or changing its product line offerings during this time period. This incorporation or consideration would constitute evidence of use of Mattel information, which is obviously relevant to Mattel's trade secret misappropriation claim. See Restat 3d of Unfair Competition, § 40 (any exploitation of the trade secret that is likely to result in enrichment to the defendant or injury to the trade secret owner is "use"); see also PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1383 (2000) (employing the confidential information of another in "research or development" constitutes use for trade secret misappropriation purposes).

REQUEST FOR PRODUCTION NO. 104:
All DOCUMENTS that REFER OR RELATE TO YOUR product or product line offerings, or contemplated or proposed product or product line offerings, for calendar year 2007, including without limitation YOUR product line lists for such time period and all DOCUMENTS that REFER OR RELATE TO changes or amendments or contemplated or proposed changes or amendments thereto.

REQUEST FOR PRODUCTION NO. 105:
All DOCUMENTS that REFER OR RELATE TO YOUR product or product line offerings, or contemplated or proposed product or product line offerings, for calendar year 2008, including without limitation YOUR product line lists for such time period

1    and all DOCUMENTS that REFER OR RELATE TO
2    changes or amendments or contemplated or proposed
     changes or amendments thereto.

3    Request Nos. 104 and 105 seek documents referring to MGA's actual or

4    proposed product line and any changes thereto for the years 2007 and 2008.  As

5    explained above, a variety of MGA agents stole Mattel product line information

6    through the years.  The high-level picture that this information imparted to MGA

7    was valuable, and MGA could have used this stolen data to inform its product line

8    mix in the years 2007 and 2008.

9    **V.     MATTEL IS ENTITLED TO A PRODUCTION OF DOCUMENTS**

10   **RELATING TO COMMUNICATIONS WITH LAW ENFORCEMENT**

11   **(THIRD RFP SET)**

12   Mattel's Request Nos. 77, 80, 82, 84, 86, and 92 of its Third Set relate to

13   communications between the MGA Parties and law enforcement.  The Court has

14   previously compelled MGA to produce "all communications by or on behalf of any

15   of the MGA Parties with law enforcement in Mexico, Canada, and/or the United

16   States that refer or relate to any alleged theft or taking of alleged Mattel

17   confidential or trade secret information by MGA or persons currently or formerly

18   employed by MGA or any other allegation contained in Mattel's claims in this

19   action."[120]  The Court recognized that these communications are relevant to, among

20   others, Mattel's RICO claims.[121]

21   Request Nos. 77, 80, 82, 84, 86, and 92 seek related but distinct categories of

22   documents.  Further, these documents are relevant to verify the completeness of

23   MGA's production pursuant to the Court's January 26th Order.  The Court struck as

24

25   [120]  See January 26, 2010 Order (Dkt. No. 7434), at 5.
26   [121]  Id. ("First, the Court notes that communications in the MGA Parties'
     possession that were made by former employees of the MGA Parties are
27   discoverable, as they fall within the time period contemplated by Mattel's RICO
     allegations").
28

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

1   moot Mattel's Motion to Enforce that order, noting that: "MGA agrees that it must

2   produce all communications with law enforcement. And it claims that it has.  Such

3   representation by MGA's counsel, if later proven to be false, may give rise to

4   sanctions."[122]  Mattel is entitled to additional discovery regarding MGA's

5   communications with law enforcement to test MGA's assertions that the entirety of

6   its communications with law enforcement are a single email.[123]

7       REQUEST FOR PRODUCTION NO. 77:
        All DOCUMENTS that REFER OR
8       RELATE TO COMMUNICATIONS between YOU
        (including YOUR agents and attorneys) and law
9       enforcement authorities in Mexico, Canada or the United
        States, including but not limited to the United States
10      Attorney's Office, the Department of Justice and any
        national, regional, state or local authorities, that REFER
11      OR RELATE to any of the allegations in MATTEL's
        COUNTERCLAIMS or any other alleged taking of
12      MATTEL confidential or trade secret information by
        MGA or persons currently or formerly employed by
13      MGA.

14      This Request, seeking documents that "refer or relate to" communications

15  with law enforcement, has not been previously compelled.  It is relevant for the

16  same reasons that the communications themselves are relevant.[124]  Moreover, this

17  discovery is necessary to uncover information about MGA's communications with

18  law enforcement.  The MGA Parties have produced a total of 13 documents

19  pursuant to the Court's January 26th Order, only one of which is an actual

20  communication with law enforcement.[125]  Yet MGA has clearly had far more than a

21  single contact with law enforcement – MGA and its current and former employees

22  have been investigated by law enforcement in the United States, Canada, and

23

24

25  [122]  See June 7, 2010 Order (Dkt. No. 8079), at 2.
26  [123]  See Motion to Enforce Court's January 26th Order (Dkt. No. 8014).
    [124]  See January 26, 2010 Order (Dkt. No. 7434), at 5.
27  [125]  See Motion to Enforce Court's January 26th Order (Dkt. No. 8014).

28

1  Mexico.[126]  Multiple MGA witnesses have testified to meetings with the FBI and

2  Department of Justice.[127]  Moreover, this is apparent from the single email

3  produced by MGA pursuant to the Court's Order, in which Isaac Larian begins an

4  email to an Assistant United States Attorney by writing, "███████████

5  ███"[128]  Documents responsive to this Request would reveal information about this

6  conversation, as well as the other telephone calls, meetings, and non-written

7  communications with law enforcement, as well as communications between

8  individuals at MGA about its communications with law enforcement[129] that were

9  not captured by the Court's January 26th Order but are necessary to fully effectuate

10  its intent.

11

12

_____

13  [126]  In Mexico alone, authorities seized documents from MGA Mexico's offices

14  and a criminal prosecution of three MGA Mexico employees has been ongoing for

15  years – with over 10 million pesos (approximately $700,000) in legal fees alone paid
by the MGA Parties that Mattel is aware of.  In the United States, Jorge Castilla has

16  been investigated by the Department of Justice and is currently charged with two
felonies in California Superior Court.  See The People of the State of California v.

17  Jorge Reynaldo Castilla, Felony Complaint and Arrest Warrant, Case No.

18  BA368861 (Count 1: Fraudulent Computer Access, in violation of Penal Code
Section 502(e) (1);Count 2: Theft of Trade Secrets, in violation of Penal Code

19  Section 499c (b)(1).

20  [127]  See, e.g., Coleman Depo., dated January 5, 2010, at 262:17-266:7 ("██████
████████"); Larian

21  Depo., dated December 10, 2009, at 713:4-717:12 (███████████████

22  ████████████████████████████████████████████████).

23  [128]  See email from Isaac Larian to Sally Meloch, dated May 28, 2009 [MGA2

24  0774521].

25  [129]  ████████████████████████████████████████████████

26  ████████████████████████.  See Coleman Depo, dated January 5, 2010, at

27  262:17-266:7.  Any reports or emails she wrote to her employer about that meeting
would be responsive to this Request.

28

1    Documents referring or relating to communications with law enforcement

2    could also demonstrate the existence of written communications with law

3    enforcement that were not produced by the MGA Parties as the result of spoliation.

4    Mattel's RICO claims are premised in part on allegations of spoliation of evidence,

5    in part, to facilitate the MGA Parties' theft of Mattel's trade secrets.  See Mattel,

6    Inc.'s Fourth Amended Answer and Counterclaims ("FAAC"), dated April 12,

7    2010, at ¶ 95.  Further, evidence of spoliation is generally relevant to any lawsuit.

8    See Transue v. Aesthetech Corp., 341 F.3d 911, 921  (9th Cir. 2003) ("A federal

9    trial court has the inherent discretionary power to make appropriate evidentiary

10   rulings in response to the destruction or spoliation of relevant evidence.") (quoting

11   Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993)).  In the alternative,

12   evidence of an incomplete production as a result of non-compliance with the

13   Court's Order, is similarly relevant.

14          REQUEST FOR PRODUCTION NO. 80:
              All DOCUMENTS that REFER OR
15        RELATE TO COMMUNICATIONS between YOU
          (including YOUR agents and attorneys) and law
16        enforcement authorities in Mexico, Canada or the United
          States, including but not limited to the United States
17        Attorney's Office, the Department of Justice and any
          national, regional, state or local authorities, that REFER
18        OR RELATE to Gustavo Machado.

19          This Request, seeking documents that refer or relate to communications with

20   law enforcement about Gustavo Machado, is necessary to uncover information

21   about MGA's communications with law enforcement about Machado.  The MGA

22   Parties have produced no communications with law enforcement in Mexico, or

23   anywhere else, that relate to Machado.[130]  Yet Machado has been the subject of a

24   multi-year criminal prosecution in Mexico, for which the MGA Parties have paid

25   over 3 million pesos (approximately $250,000) in legal fees on behalf of Machado

26

27     [130]  See Motion to Enforce Court's January 26th Order (Dkt. No. 8014).

28

00505.07975/3547509.2

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

1    that Mattel is aware of.[131]  Documents responsive to this Request would reveal

2    information about non-written communications, such as telephone calls and in-

3    person meetings, or internal discussions within MGA about such communications,

4    that were not captured by the Court's January 26th Order.  As with Request No. 77,

5    documents referring or relating to communications with law enforcement

6    concerning Machado are relevant as they could also show the existence of written

7    communications with law enforcement that were not produced by the MGA Parties,

8    either as the result of spoliation or non-compliance with the Court's Order.

9                         REQUEST FOR PRODUCTION NO. 82:
                           All DOCUMENTS that REFER OR
10   RELATE TO COMMUNICATIONS between YOU
     (including YOUR agents and attorneys) and law
11   enforcement authorities in Mexico, Canada or the United
     States, including but not limited to the United States
12   Attorney's Office, the Department of Justice and any
     national, regional, state or local authorities, that REFER
13   OR RELATE to Jorge Castilla.

14       Jorge Castilla was under investigation by the Department of Justice and has

15   been indicted and charged with two felonies in California Superior Court.[132]

16   Although Castilla has refused to answer any questions about his communications

17

18   _____

19   [131]   The amount may be higher and MGA's involvement may be even more

20   extensive than discovery has shown to date, given MGA's shifting claims about its

21   relationship to Machado and Mariana Trueba.  As the Court will recall, MGA
     repeatedly represented to the Court (including at least one instance where Isaac

22   Larian was sitting at counsel's table) that MGA was not paying and had not paid for

23   months of attorney's fees for either Machado or Trueba.  Subsequently compelled
     document discovery showed those representations to be false.  See retention

24   agreements [MGA2 1205771-75, MGA2 1205776-781, MGA2 1205782-85, MGA2

25   1205786-89, and MGA2 1205790-91].

     [132]   See The People of the State of California v. Jorge Reynaldo Castilla, Felony
26   Complaint and Arrest Warrant, Case No. BA368861 (Count 1: Fraudulent Computer

27   Access, in violation of Penal Code Section 502(e) (1);Count 2: Theft of Trade
     Secrets, in violation of Penal Code Section 499c (b)(1).

28

1  with law enforcement on Fifth Amendment grounds,[133] other witnesses have

2  testified that he has had multiple interviews with law enforcement.[134]  In addition,

3  Nicole Coleman has ███████████████████████████████████████████

4  ████████████████████████████████[135]  ████████████████████████████

5  ███████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████

7  ████████████████████[136]  Documents responsive to this Request would reveal

8  information about these non-written communications, which are clearly relevant to

9  Mattel's RICO claims.[137]

10      As with Request No. 77, documents referring or relating to communications

11  with law enforcement concerning Castilla are relevant as they could also

12  demonstrate the existence of written communications with law enforcement that

13  were not produced by the MGA Parties, either as the result of spoliation or non-

14  compliance with the Court's Order.

15          REQUEST FOR PRODUCTION NO. 84:
              All DOCUMENTS that REFER OR
16      RELATE TO COMMUNICATIONS between YOU
          (including YOUR agents and attorneys) and law
17      enforcement authorities in Mexico, Canada or the United
          States, including but not limited to the United States
18      Attorney's Office, the Department of Justice and any
          national, regional, state or local authorities, that REFER
19      OR RELATE to Janine Brisbois.

20      _____

21  [133]  In his deposition Castilla invoked the Fifth Amendment nearly 500 times.
22  See Castilla Depo., dated October 22, 2009.
      [134]  See Coleman Depo., dated January 5, 2010, at 252:2-257:25; Coleman
23  Depo., dated January 8, 2010, at 435:14-437:15; Brawer Depo. (MGA 30(b)(6)),
24  dated March 5, 2010, at 1212:22-1214:8.  See also s████████████████████████
25  ████[MGA2 1426463-64].
26  [135]  See Coleman Depo., dated January 5, 2010, at 262:17-266:7.
      [136]  See Larian Depo., dated December 10, 2009, at 713:4-717:12.
27  [137]  See January 26, 2010 Order (Dkt. No. 7434), at 5.

28

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

1       This discovery is necessary to uncover information about MGA's

2  communications with law enforcement about Brisbois.  The MGA Parties have

3  produced no communications with law enforcement that relate to Brisbois.[138]  Yet

4  Brisbois has been the subject of investigation by Canadian law enforcement,

5  including telephone calls, interviews, and confiscation of USB device containing

6  Mattel trade secrets.[139]  Request No. 84 could reveal documents in which such

7  communications were discussed internally within MGA.  Also, as with Request No.

8  77, these documents could establish the existence of written communications with

9  law enforcement that were not produced by the MGA Parties.

10     REQUEST FOR PRODUCTION NO. 86:

             All DOCUMENTS that REFER OR

11     RELATE TO COMMUNICATIONS between YOU
      (including YOUR agents and attorneys) and law

12     enforcement authorities in Mexico, Canada or the United
      States, including but not limited to the United States

13     Attorney's Office, the Department of Justice and any
      national, regional, state or local authorities, that REFER

14     OR RELATE to Ron Brawer.

15       Before leaving Mattel to work for MGA, Ron Brawer misappropriated Mattel

16  trade secrets, including information about impending product themes that MGA

17  used to create similar themes.  He also left with a terrific amount of high-level,

18  highly confidential information from Mattel about pricing and sales strategies,

19  some of which MGA documents indicate he taught to MGA, and was instrumental

20  in personally selecting and recruiting a number of key employees from Mattel to

21  MGA.[140]  Brawer's central role in MGA's trade secret thefts make it likely that

22  communications about him took place between him or others at MGA and law

23  enforcement authorities.

24

25

26  [138]  See Motion to Enforce Court's January 26th Order (Dkt. No. 8014).

27  [139]  See Brisbois Depo., dated December 10, 2009, at 409:11-423:16.

     [140]  See FAAC, ¶¶ 64-67.

28

The MGA Parties have produced no communications with law enforcement that relate to Brawer.[141] This Request, seeking documents that "refer or relate to" such communications, has not previously been compelled. As with Request No. 77, such documents will shed light on non-written communications with law enforcement, as well as possibly show the existence of written communications improperly withheld by MGA.

REQUEST FOR PRODUCTION NO. 92:

All DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, that REFER OR RELATE to Isaac Larian from January 1, 2001 to the present.

Mattel has alleged that Isaac Larian has engaged in extensive criminal misconduct, including violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1503 (influencing or injuring officer or juror generally), 18 U.S.C. § 1512 (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).[142] Mattel's Counterclaims also allege that Larian directed the misappropriation of Mattel's trade secrets that has resulted in criminal investigations in the United States, Mexico, and Canada, as well as criminal prosecutions in the United States and Mexico.[143]

MGA has produced an e-mail from Larian and an Assistant United States Attorney that references a conversation Larian had with the Assistant United States

---

[141] See Motion to Enforce Court's January 26th Order (Dkt. No. 8014).
[142] See FAAC, ¶¶ 122-124.
[143] Id. at ¶ 134.

1   Attorney.[144]  Further, Larian has testified that he has had at least two conversations

2   with the Department of Justice and FBI.[145]  Mattel is entitled to discovery into these

3   communications, which it has not been able to obtain through alternative discovery

4   avenues.[146]  As with Request No. 77, documents referring or relating to any

5   additional communications concerning Larian would also be relevant to Mattel's

6   RICO claims as well as possible spoliation and non-compliance with Court orders.

7            The time period of this Request, 2001 to the present, is the relevant time

8   period for the claims and defenses in Phase 2.[147]  Responsive documents in this

9   time period are likely to lead to the discovery of admissible evidence.

10  **VI.    MGA FAILS TO ADDRESS ITS STEADFAST REFUSAL TO**

11          **COLLECT AND SEARCH FOR RESPONSIVE DOCUMENTS**

12           The evidence confirms what MGA's written discovery responses show – that

13  MGA is refusing to produce the documents sought here.  For example, it is clear that

14  MGA, standing on its refusals, has not searched for much of the information sought

15  by Mattel, despite evidence and testimony from MGA current and former employees

16  that documents relating to MGA's use of stolen Mattel trade secrets exist.[148]  ███

17  ────────────────

18  [144]   See email from Isaac Larian to Sally Meloch, dated May 28, 2009 [MGA2

19  0774521] ("█████████████████.").

      [145]   See Larian Depo., dated December 10, 2009, at 713:4-717:12.

20  [146]   For example, at his deposition Larian ███████████████

21  ██████████████████████████████████████." Larian

      Depo., dated December 10, 2009, at 717:5-12.

22  [147]   The other requests do not have an express time limit but are at least as

23  narrowly drawn temporally as MGA's association with the other thieves began much

      later than its association with Larian.

24  [148]   E.g., Mexican authorities seized a CD from MGA Mexico's offices that

25  contained tens of thousands of pages of confidential Mattel documents, yet MGA

      has never provided any information about whether and how Mattel's confidential

26  information contained on that CD was used.  Also, at his recent deposition,

27  Machado ████████████████████████████████████

      ███████████████████.  See Machado Depo., dated April 21, 2010, at 234:6-14.

28

MOTION TO COMPEL RE: USE OF MATTEL TRADE SECRETS

1  ████████████████████████████████████████

2  ████████████████████████████████████████

3  ██████████████████[149]██████████████████

4  ████████████████████████████████████████

5  ████████████████████████████████████████

6  ████████████████████, even though she was the primary contact between

7  MGA's counsel and MGA de Mexico.[150]  The results of whatever searches MGA

8  may claim to have conducted to date are necessarily unsatisfactory given that it has

9  yet to search its Archive One repository of emails older than 90 days.  Thus, even

10  with any potential productions, MGA is still withholding from Mattel the "greater

11  portion of potentially relevant information."[151]

12       MGA is uniquely positioned to possess information as to trade secret use.

13  See Vinyl Interactive, 2009 U.S. Dist. LEXIS 41498, *22 (without discovery,

14  defendants are the only ones who possess information on their use of plaintiff's trade

15  secrets).  MGA has been improperly withholding information salient to Mattel's

16  trade secret claims.

## VII.  MGA'S OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED

19       MGA has asserted a litany of generic, boilerplate objections in response to

20  each of Mattel's Requests.  Boilerplate objections such as these are improper.  See

21  A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006)

---

[149]  See Cooney Depo., dated January 28, 2008, at 74:22-79:24; 82:15-83:4.

[150]  See Kuemmerle Depo., dated January 28, 2008, at 226:2-227:2.

[151]  Report and Recommendation of Special Master (E-Discovery), dated January 21, 2010 (Special Master Smith noted that "it is logical to assume the greater portion of potentially relevant information would be contained in the e-mail that was more than 90 days old, the full text of which can only be found in the ArchiveOne database.").

1  ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are

2  improper—especially when a party fails to submit any evidentiary declarations

3  supporting such objections."); <u>Walker v. Lakewood Condominium Owners Ass'n</u>,

4  186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are

5  inadequate and tantamount to not making any objection at all.").  These objections

6  should all be overruled.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Conclusion

The Requests in Mattel's Fourth RFP Set (Phase 2), Second RFP Set and Third RFP Set addressed above seek documents directly relevant to Mattel's trade secret misappropriation claims.  Even though MGA is uniquely situation to have that information, it refuses to produce it, hiding behind meritless, boilerplate objections.  MGA should be ordered to produce all responsive documents immediately.

DATED: June 21, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _____
    Michael T. Zeller
    Attorneys for Mattel, Inc.