1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3     michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
5  Facsimile:    (213) 443-3100

6  Attorneys for Mattel, Inc.

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                   SOUTHERN DIVISION

10

11

12  MATTEL, INC., a Delaware        CASE NO. CV 04-9049 DOC (RNBx)
   corporation,                     Consolidated with
                                    Case No. CV 04-09059
13                                  Case No. CV 05-02727
              Plaintiff,
14                                  **DISCOVERY MATTER**
       vs.
15                                  Hon. David O. Carter
   MGA ENTERTAINMENT, INC., a
   California corporation, et al.,  **MATTEL, INC.'S OBJECTIONS TO**
16                                  **THE DISCOVERY MASTER'S RULING**
              Defendant.            **ON DEPOSITION QUESTIONS**
17                                  **REGARDING PRODUCT PACKAGING**

18  AND CONSOLIDATED ACTIONS        Date:    TBD
                                    Time:    TBD
19                                  Place:   Courtroom 9D

20
                                    **Phase 2**
21                                  Discovery Cut-off:  TBD
                                    Pre-trial Conference:   TBD
22                                  Trial Date:  TBD

23

24

25

26

27

28

00505.07975/3545462.4

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on a date to be determined, in the Courtroom of

3   the Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana,

4   California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the

5   Court to overrule the Discovery Master's Order requiring Mattel 30(b)(6) witness

6   Timothy Kilpin to respond to questions concerning "Toy Story 3" products during his

7   June 18, 2010 deposition.  This Motion is made on the grounds that MGA seeks to

8   interject into this litigation, without the Court's leave or approval, purported claims

9   based on a Mattel product line that MGA never identified in any pleading or any

10  interrogatory response at any time prior to the Kilpin deposition.

11        This Motion is based on this Notice of Motion and Motion, the accompanying

12  Memorandum of Points and Authorities, any matters of which the Court may take

13  judicial notice, and such further evidence and argument as may be presented at or

14  before the hearing on this matter.

15                          **Statement of Compliance**

16        Lead counsel for Mattel met and conferred on the underlying motion before

17  the Discovery Master on June 18, 2010.

18

19  DATED:  June 22, 2010              QUINN EMANUEL URQUHART  &
20                                     SULLIVAN, LLP
21

22                                  By /s/ Michael T. Zeller
                                       Michael T. Zeller
23                                     Attorneys for Mattel, Inc.

24

25

26

27

28

00505.07975/3545462.4

-ii-

MATTEL'S OBJECTIONS TO DISCOVERY MASTER RULING REGARDING PRODUCT PACKAGING
DEPOSITION QUESTIONS

## **Preliminary Statement**

At no time before this past Friday did MGA assert in its pleadings or interrogatory responses that any of its claims were based on Mattel's "Toy Story 3" product packaging.  Nevertheless, MGA insisted on Friday that Mattel's 30(b)(6) designee, Timothy Kilpin, should answer questions concerning "Toy Story 3" products at his deposition.  Mattel objected, including on the grounds that those products are not at issue in the case, such that Mr. Kilpin was not required to be prepared to testify as to them.  Even though MGA itself has successfully refused to provide discovery, and has instructed its witnesses not to respond to deposition questions, on the grounds that matters not specifically referenced in Mattel's pleadings purportedly were not at issue in the case, the Discovery Master required Mattel's witness to respond.  In light of MGA's own prior positions, that ruling should be reversed.

Furthermore, MGA should not be permitted to unilaterally interject an entire, previously unidentified product line into this case at this stage without having to obtain this Court's leave to amend its pleadings.  While MGA now argues that it need not amend its pleading to raise claims as to "Toy Story 3" products, it previously argued just the opposite, and did so successfully, including as to Mattel's Bratz-related trade secret claim.  MGA cannot have it both ways.  Its trade dress claim does not include allegations concerning "Toy Story 3" products, nor had MGA's discovery responses even referenced those products at the time of the deposition.  In fact, conceding this, MGA served purported "supplemental" interrogatory responses on Friday, after the deposition, stating for the first time that "Toy Story 3" is allegedly at issue.

Given the state of MGA's pleadings and discovery responses, any questions concerning "Toy Story 3" products are irrelevant and improper, especially when asked to a witness testifying on behalf of Mattel.  The Discovery Master's Order requiring Mr. Kilpin to respond to questions concerning "Toy Story 3" products on the grounds that such questions might become relevant later in this case is erroneous and should be overruled.

1

**Relevant Factual Background**

2   **MGA's Trade Dress Infringement Claim Does Not Include "Toy Story 3"**

3   **Product Packaging**.  MGA filed its Complaint against Mattel on April 13, 2005.  In it,

4   MGA asserts claims for false designation of origin/trade dress infringement, unfair

5   competition, dilution and unjust enrichment.  MGA's Complaint is principally devoted

6   to the alleged similarity in appearance of Bratz and My Scene dolls, focusing on the

7   eyes, hair, lips, feet, make-up and fashion of the dolls.[1]  As the Court is aware, MGA

8   has abandoned the bulk of these claims.  While MGA's Complaint sporadically

9   mentions the "style" of the doll packaging, it does not describe the shape of such

10  packaging.[2]  MGA also references packaging in its unfair competition claim, but

11  mentions only "Bratz" packaging.[3]  MGA specifically alleges in its Complaint that

12  Mattel's ostensible wrongdoing is based on three product lines and three product lines

13  alone – none of which are "Toy Story 3" products.[4]

14  MGA recently produced a 30(b)(6) witness on the topic of MGA's trade dress

15  claims, Sam Khare, including on the identification of any and all products MGA was

16  accusing of infringing its claimed trapezoidal packaging trade dress.  Mr. Khare

17  disclosed and identified the packaging for only three Mattel products – a BARBIE 50th

18  Anniversary doll pack, the MY SCENE "Sound Lounge," and the "Stacie and Kelly"

19

20

21  _____

[1]   MGA Complaint ¶¶ 24-28, 34-40, 47-52, 55-62, 64-67, 69-72.

22  [2]   MGA Complaint ¶ 102.  Undoubtedly this omission was deliberate, because

23  packaging shape is generally not protectable and, in the case of MGA's packaging
    specifically, is utilitarian.  See Wiley v.American Greetings Corp., 762 F.2d 139,

24  142 (1st Cir. 1985) (heart shape on left side of stuffed animal bear was protectable
    only if secondary meaning proved); Blau Plumbing Inc. v. S.O.S. Fix-It, Inc., 781

25  F.2d 604, 610 (7th Cir. 1986) (same as to rectangle); Starter Corp. v. Eurostar, Inc.,

26  1993 WL 557887, *3 (C.D. Cal. June 25, 1993) (same as to five pointed star

27  symbol).
    [3]   MGA Complaint ¶ 112.

28  [4]   MGA Complaint ¶ 104.

1  two-doll combination – as infringing on MGA's supposed packaging trade dress.[5]

2          Likewise, at no time before last Friday did MGA mention "Toy Story 3"

3  packaging at all in its interrogatory responses.  Indeed, it was not until the evening of

4  June 18, 2010, following Mr. Kilpin's deposition, that MGA – conceding that "Toy

5  Story 3" has never been properly at issue in this case – served supplemental

6  interrogatory responses in which it identified for the first time "Toy Story 3" products

7  in response to questions concerning MGA's trade dress claims.[6]  Even though these

8  products have been publicly available since at least April 2010, MGA has provided no

9  explanation as to why it did not disclose its supposed claims as to the "Toy Story 3"

10  products for months or why it has not sought the Court's leave to amend its pleadings

11  to add a previously unidentified product line into this litigation.

12          **MGA Asks Questions At Deposition Concerning "Toy Story 3" Products**.  At

13  Mr. Kilpin's deposition, MGA commenced a line of questions concerning "Toy Story

14  3" products.[7]  MGA went so far as to put in front of Mr. Kilpin "Toy Story 3" products

15  that MGA had not produced or otherwise disclosed or identified to Mattel, despite prior

16  Court Orders requiring MGA to produce any products that it is basing its claims on.[8]

17  Mattel objected that such questions were improper because "Toy Story 3" products

18  were not at issue in the case,[9] and instructed Mr. Kilpin not to respond to them, noting

19  that MGA had previously done the same on the same grounds.[10]

20

21

---

22  [5]   Khare Dep., Vol. 2, March 25, 2010, at 575:22-576:1, 634:14-635:4, 636:20-
23  638:15, 640:13-641:4.
       [6]   See Supplemental Response of MGA Entertainment, Inc. to Mattel's
24  Interrogatories, June 18, 2010.
       [7]   See Timothy Kilpin Rough Copy Deposition Transcript ("Kilpin Rough Tr."), at
25  86:2.
26  [8]   See Order Re Mattel's Motion to Compel Production of Documents by MGA,
       Aug. 13, 2007, at 7-8.
27  [9]   Kilpin Rough Tr., at 86:21-87:2.
28  [10]   Id. at 88:6-11, 89:7-24.

-3-

1    The parties argued the issue before the Discovery Master.[11]  While MGA did not

2  dispute that it never identified "Toy Story 3" product packaging in its pleading or

3  discovery responses, MGA argued that discovery concerning those products was

4  appropriate nevertheless because the pleadings in the case are still "open," and because

5  it intended to "seasonably" supplement its interrogatory responses at some later point to

6  make reference to "Toy Story 3" products.[12]  The Discovery Master ruled that Mr.

7  Kilpin should respond to questions concerning these products, primarily on the grounds

8  that even if "Toy Story 3" products were not specifically disclosed in MGA's pleading

9  or discovery responses, "trapezoidal  packaging is at issue."[13]  The Discovery Master

10  also noted that if it was only a matter of time until MGA formally added allegations

11  concerning "Toy Story 3" products to its complaint, then, "from a practical standpoint

12  and efficiency," it made sense to have Mr. Kilpin testify to such matters if he was

13  prepared to do so.[14]

14                          **Argument**

15    MGA has never identified "Toy Story 3" products as being a part of its trade

16  dress claim.  MGA also has refused to provide discovery concerning products and

17  claims that are not, according to it, squarely at issue in Mattel's operative pleading –

18  even if that is because events or circumstances arose only after Mattel filed its operative

19  pleading.  Given MGA's prior positions, MGA should not be heard now to argue that

20  claims as to "Toy Story 3" products are properly at issue in the case and subject to

21  discovery even though MGA has neither identified such claims in its pleadings or

22

23

_____

24  [11]   The full text of the parties' argument before the Discovery Master is contained
on pages 95-107 of the Rough Copy Transcript of the Deposition of Timothy Kilpin.

25  Pursuant to the Court's prior instructions, Mattel will submit the transcript or other

26  evidence to the Court upon the Court's direction.

27  [12]   <u>Id.</u> at 103:20-104:16.

[13]   <u>Id.</u> at 105:10-14.

28  [14]   <u>Id.</u> at 100:15-23.

00505.07975/3545462.4

-4-

MATTEL'S OBJECTIONS TO DISCOVERY MASTER RULING REGARDING PRODUCT PACKAGING
DEPOSITION QUESTIONS

1  discovery responses nor obtained, or even sought, leave of Court to add such claims to

2  its complaint.

3  **A.    MGA Has Refused Discovery On Issues That "Aren't In The Case"**

4  MGA's argument now that it is entitled to discovery concerning matters that

5  factually post-date its pleading and discovery responses, and therefore are not reflected

6  in them, directly contradicts successful positions it has previously taken to prevent

7  Mattel from obtaining discovery. For example, during the March 8, 2010 deposition of

8  MGA witness Didier Pietri, Mattel asked questions concerning MGA's development of

9  the Moxie brand of dolls. MGA objected to the questions and instructed the witness

10 not to answer:

11 Okay. I'm going to stop the witness there. Moxie is not part of this

12 lawsuit, and I'm not going to permit questioning about Moxie. *There's*

13 *not an allegation in the existing pleadings that concerns Moxie in any*

14 *way.* Mattel has elected to defer filing of its new pleadings. Those have

15 not passed legal scrutiny. Under Iqbal & Twombly, *you're not allowed to*

16 *take discovery on matters that aren't in the case*. So as far as we're

17 concerned, there's nothing that's relevant to Moxie that's part of this

18 case.[15]

19 The MGA and Omni Parties took a similar position earlier in Phase 2. In January

20 2009 – shortly after Mattel learned of the Omni transaction, but before it amended its

21 counterclaims to include allegations explicitly based on that transaction – Mattel served

22 document subpoenas and requests for production on MGA, Larian, Omni and IGWT

23

24

25 ───────────────────

[15]   Pietri Dep., Vol. 1, March 8, 2010, at 149:20-150:3 (emphasis added); see also

26 id. at 150:17-155:10 (MGA's counsel instructing witness not to respond to several

27 questions concerning Moxie, and arguing that "[a]s far as I'm concerned, Moxie is

    irrelevant to this litigation. Questions about Moxie have nothing to do with this

28 case.").

826 seeking documents concerning Omni's acquisition of MGA's debt to Wachovia.[16] MGA and Larian refused to agree to produce any documents responsive to Mattel's requests, including on the grounds that the requests "call[ed] for the production of documents that are not limited to the subject matter of this action and *not relevant to any claim or defense in the pending litigation* or reasonably calculated to lead to the discovery of admissible evidence."[17]   MGA also moved to quash the subpoenas even though the subpoenas were not directed to it.[18]   In its motion, MGA argued that the discovery sought did not related to "any claims or damages theory pled by Mattel."[19]

The MGA and Omni Parties were successful in resisting discovery into the Omni transaction on the grounds that such issues were not included in Mattel's then-operative pleading.  On March 10, 2009, the Discovery Master largely denied Mattel's motion to compel on the subpoenas.[20]   The Discovery Master's denials were based on Mattel's stated failure to "sufficiently articulate the necessary connection between most of the [so called] Financing Discovery and any Phase 2 issue."[21]   The Discovery Master further concluded that "Mattel has not alleged [in its counterclaims] any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions with third parties."[22]   Of course, that "financial scheme" post-dated the filing of Mattel's then-operative pleading, which Mattel had yet to amend given that Phase 2 discovery had just commenced (Mattel amended shortly thereafter).

---

[16]   See Mattel's First Set of Requests for Documents and Things to Isaac Larian (Phase 2), dated January 8, 2009, Request Nos. 22-49; Mattel's First Set of Requests for Documents and Things to MGA Entertainment, Inc. (Phase 2), dated January 8, 2009, Request Nos. 22-49.

[17]   See, e.g., MGA response to request no. 24 from Mattel's First Requests for Documents and Things (Phase 2) (emphasis added).

[18]   See MGA Parties' Motion to Quash Receiver Subpoenas Issued By Mattel, Dkt. 4760.

[19]   Id. at 5.

[20]   See Discovery Master Order No. 3, Dkt. 4992, dated March 10, 2009, at 28-30.

[21]   Id. at 25.

[22]   Id. at 18, n.16.

00505.07975/3545462.4

1

2

### B.   MGA Has Argued That Products Not Specifically Referenced In Mattel's Counterclaims Are Not At Issue In the Case

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

        MGA also has taken the position that Mattel must seek leave to amend its pleading to add allegations concerning products that are not specifically identified in its operative pleading.  In its opposition to Mattel's Motion for Leave to File Fourth Amended Answer and Counterclaims, MGA argued that Mattel could not pursue its trade secret misappropriation claim as to Bratz, Jade or Moxie because Mattel, MGA argued, did not identify those products in its earlier pleadings or discovery responses, and therefore was required to obtain leave to amend its pleading before it could pursue claims as to those products.[23]  MGA further argued that because Mattel allegedly learned of MGA's intent to place a "Moxie" doll on the market by no later than May 2009, Mattel was required to raise allegations as to Moxie in its Third Amended Counterclaims, which Mattel filed on May 22, 2009, and that Mattel's failure to do so was "undue delay" that precluded Mattel from including Moxie in the Fourth Amended Counterclaims.[24]  In support of that argument, MGA argued that "Moxie was not identified as a trade secret in any pleading or discovery response served since October 2007, and indeed even as recently as December 2009, Mattel's 30(b)(6) witness on trade secrets uttered not a word about Moxie when describing all of the trade secrets Mattel claims were taken."[25]

20

21

22

        Ultimately, the Court granted Mattel leave to amend its pleading to add claims as to Moxie, but not as to Bratz or Jade, even though Mattel had *expressly* placed MGA on notice of its misappropriation claim as to Bratz-related trade secrets years earlier and

23

24

25

26

27

28

---

[23]  See MGA Parties' Opposition to Mattel's Motion for Leave to File Fourth Amended Answer and Counterclaims, April 5, 2010, Dkt. 7690 at 3-4, 9-10, 16-17.
[24]  Id. at 9 (noting that Mattel's counsel "inspected the Moxie dolls in May 2009 before they hit the market and before the filing of Mattel's TAAC").
[25]  Id. at 4.

00505.07975/3545462.4

-7-

MATTEL'S OBJECTIONS TO DISCOVERY MASTER RULING REGARDING PRODUCT PACKAGING DEPOSITION QUESTIONS

1   MGA had specifically agreed in 2008 that such claims were part of Phase 2, and Mattel

2   had long before served interrogatory responses placing those trade secrets at issue.[26]

3       **C.    Given MGA's Prior Arguments, MGA Should Not Be Permitted to**

4           **Take Discovery on "Toy Story 3" Products**

5       Before Mr. Kilpin's deposition, MGA argued that discovery into matters not

6   adequately expressed in Mattel's pleading was improper.  MGA went so far as to

7   instruct its witnesses not to respond to questions concerning such matters, which it

8   contended "aren't in the case."  MGA also argued before that Mattel must seek and

9   obtain leave to amend its pleading before it may properly put at issue specific trade

10  secrets in furtherance of its trade secret misappropriation claim, and further that Mattel

11  unduly delayed in seeking leave – such that leave should not be granted – by not

12  seeking leave immediately upon learning of Moxie.

13      At Mr. Kilpin's deposition, however, MGA argued that it is entitled to take

14  discovery concerning "Toy Story 3" products even though they were referenced

15  nowhere in its pleading, interrogatory responses or 30(b)(6) witness deposition

16  testimony; even though those products have been on the market for months; and even

17  though MGA has not sought this Court's leave to amend its pleading to make reference

18  to "Toy Story 3" products.  MGA argued further that it need not amend its pleading to

19  add claims as to "Toy Story 3" products, provided that it "seasonably" supplemented its

20  discovery responses to make reference to such products.[27]  Those arguments are the

21  opposite of what MGA argued before in refusing to provide discovery to Mattel and in

22  opposing Mattel's motion for leave to amend its Third Amended Counterclaims.

23      Given MGA's prior contrary positions, it would be inequitable to permit MGA to

24  take discovery concerning "Toy Story 3" products.  This is particularly so with respect

25  to 30(b)(6) deposition questioning, where Mattel's witnesses are required to prepare

26  _____

27  [26]  See Order Re Motion for Leave to File Fourth Amended Answer and
    Counterclaims, April 10, 2010, Dkt. No. 7712 at 9-10.

28  [27]  Kilpin Rough Tr., at 103:20-104:5.

00505.07975/3545462.4                              -8-

1  themselves to testify adequately concerning specified topics about which MGA has
2  provided advance notice.  Further, even if MGA had referenced "Toy Story 3" products
3  in its deposition notice, which it did not, MGA's trade dress infringement claim does
4  not include any allegations concerning those products.  Mattel should not have been
5  required to provide 30(b)(6) testimony concerning "Toy Story 3" products, and the
6  Discovery Master's ruling to the contrary should be overruled.

**Conclusion**

8       For the foregoing reasons, Mattel respectfully requests that the Court overrule the
9  Discovery Master's instructions that Mattel's 30(b)(6) witness Timothy Kilpin respond
10 to questions concerning "Toy Story 3" products.

12 DATED:  June 22, 2010          QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


15                                 By  /s/ Michael T. Zeller
16                                     Michael T. Zeller
                                       Attorneys for Mattel, Inc.