MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:  415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br><br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**MGA OPPOSITION TO MATTEL MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO MATTEL'S REQUESTS FOR PRODUCTION CONCERNING USE OF TRADE SECRETS** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................... 1

BACKGROUND ...................................................................................... 3

ARGUMENT ........................................................................................... 4

I.    MATTEL IS NOT ENTITLED TO EVERY DOCUMENT AT MGA RELATED TO FORECASTING ......................................................... 4

    A.    Mattel's Claims Concerning Castilla .................................... 4

    B.    What Is A Forecasting System? ........................................... 5

    C.    The Facts Concerning Castilla ............................................ 6

    D.    Mattel's Requests Are Vastly Overbroad And Burdensome ............... 7

II.    MATTEL IS NOT ENTITLED TO NINE YEARS WORTH OF PRICING INFORMATION ................................................................. 9

III.    MGA HAS ALREADY PRODUCED ALL MATTEL DOCUMENTS IN ITS POSSESSION, CUSTODY OR CONTROL .................................... 11

    A.    Mattel Is Not Entitled To Further Fishing Expeditions Relating to Former Mattel Employees ........................................... 11

        1.    Ron Brawer .................................................................. 12

        2.    Daniel Cooney and Nick Contreras ............................ 13

        3.    Gustavo Machado, Mariana Trueba, Pablo Vargas ............ 15

        4.    Janine Brisbois ........................................................... 16

        5.    Garcia, Marlow, and Hatch-Leahy ............................ 17

        6.    Mattel's Over Broad Request for Documents Concerning "Other Former Mattel Employees" Should Be Denied ............ 18

    B.    Mattel Has Already Received Documents Relating MGA's Alleged Acquisition and Disposition of Its Trade Secret Materials ......................................................................... 19

    C.    MGA Will Produce Documents Relating To Its Affirmative Defenses, In Accord With Its Obligations Under The Federal Rules ................................................................................ 20

IV.    MATTEL IS NOT ENTITLED TO MGA'S ENTIRE PRODUCT LINE ............................................................................................ 20

V.    MGA HAS ALREADY PRODUCED COMMUNICATIONS WITH LAW ENFORCEMENT ................................................................ 21

VI.    CONCLUSION .................................................................... 23

## INTRODUCTION

Mattel has sought and obtained extensive discovery concerning the alleged theft of trade secrets by Ron Brawer, Jorge Castilla, Nick Contreras and Dan Cooney.  To wit, Mattel has:

- Deposed all four individuals, their bosses at MGA and various co-workers;
- Received multiple days of 30(b)(6) witness testimony on specific topics related to the alleged theft by these individuals;
- Received extensive documentation from the files, computers and hard drives of these individuals responsive to prior Mattel requests, including any and every document located that was brought by any of these individuals from Mattel;
- Received detailed documents on MGA's forecasting and inventory systems six months before Castilla came to MGA and six months after he arrived;
- Received extensive additional documents on updates and changes to MGA's forecasting system outside of the six month windows ordered by the Court;
- Received every communication with law enforcement involving these individuals;
- Received detailed pricing data from MGA and MGA Mexico.

The documents produced from the files of these individuals number in the thousands of pages.  Mattel has been provided with more intricate data on MGA's forecasting system than most MGA employees who use that system likely have.

Despite this extensive discovery, Mattel has yet to produce a shred of evidence to suggest any of these individuals brought any Mattel confidential information to MGA.  In fact, Mattel still cannot dispute the following core facts:

MGA Opposition To Mattel Motion To Compel

1.      That all Mattel information taken by Castilla was surrendered by him to the FBI before he started at MGA *and that he had no Mattel documents in his possession when he began working for MGA*.

2.      That the best Mattel can offer on Contreras is that he allegedly tried, *but failed to* obtain Mattel documents after he left Mattel.

3.      That there is no evidence that Brawer took any Mattel documents from Mattel, let alone that he brought any Mattel documents or information with him to MGA.

4.      That the only documents taken by Cooney from Mattel were blank templates of forms created for use by Toys R Us.

Indeed, in the section of Mattel's Motion timidly titled "Mattel Has Some Evidence MGA Used Mattel's Trade Secrets," Mattel offers only the assertion that Castilla must have used his knowledge of Mattel's forecasting systems because MGA's forecasting system improved after he arrived.  Motion at 9-11.  Mattel does not offer a single piece of evidence to suggest that any of the improvements were based on the acquisition, use or disclosure of any confidential Mattel information. Although Mattel was given detailed documentation concerning the operation of MGA's forecasting system before and after Castilla arrived at MGA, it cannot cite to a single feature, attribute, change or improvement to MGA's system that was taken from Mattel, or that is even similar to the Mattel system.

Mattel's response to its failure to unearth any evidence of misappropriation is to ask for ever-more extensive and burdensome discovery from MGA in search of that illusive proof of any misappropriation.  In the current requests, Mattel seeks:

- Every document that REFERENCES OR RELATES to the creation, design, development or implementation of any inventory or forecasting system used by MGA from 2001 to the present.

- Documents showing every individual at MGA to have ever worked on its forecasting systems or inventory systems.

MGA Opposition To Mattel Motion To Compel

- All documents REFERRING OR RELATING to any forecasting system MGA even considered using at any time from 2001 to the present.

- All documents REFERRING OR RELATING to the cost spent on improving the forecasting systems form 2001 to the present.

And the list goes on and on.

Mattel has refused to limit, alter or compromise on a single request.  In fact, MGA, in an effort to stave off further costly motion practice, offered to produce every email sent or received by any of the eight individuals accused of taking Mattel trade secrets for a six month period after their arrival at MGA.  Mattel refused and offered no compromise of its own.  It is time to put an end to Mattel's fishing expedition for evidence of misappropriation by these individuals.

## BACKGROUND

In its June 7 Order, the Court noted that it had "considered whether, and to what extent, Mattel was entitled to discover information about MGA's internal systems, including proprietary inventory and pricing systems." June 7, 2010 Order (Dkt. No. 8079) at 3.  The Court ordered MGA to produce documents sufficient to show MGA's forecasting and inventory systems six months before and six months after Castilla's arrival at MGA – – since it is Castilla that is accused by Mattel of misappropriating information on these systems, MGA has done so.  The Court also ordered MGA to produce pricing data six months before and after Machado, Trueba and Vargas' arrival at MGA – – since it is these three individuals accused of taking such data from Mattel, MGA has done so.

The Court allowed Mattel to file a supplemental motion, after meeting with MGA in an effort to reach agreement on those requests.  MGA and Mattel met on June 17, 2010.  At that meeting, MGA offered, as a compromise to produce ***all*** emails to or from Castilla, Contreras, Cooney, Brawer, and Brisbois for the six

/ / /

/ / /

1    months after their arrival at MGA. [1] Mattel refused and insisted on production of all

2    documents responsive to each of these requests.  A hearing was ordered on this

3    Motion for June 23, 2010, but that hearing was taken off calendar.  MGA offers this

4    Opposition in the event the Court wishes to decide this issue without further

5    hearing.

6                                        **ARGUMENT**

7    **I.      MATTEL IS NOT ENTITLED TO EVERY DOCUMENT AT MGA
              RELATED TO FORECASTING**

8

9          **A.      Mattel's Claims Concerning Castilla**

10          The sum and substance of Mattel's allegations concerning Castilla are that

11   (1) he took various documents from Mattel that Mattel concedes were turned over

12   to the FBI *before he started at MGA*; and (2) that he was "privy" to other Mattel

13   information by virtue of his having worked there for seven years.  Mattel concedes

14   that it has no evidence to suggest that Castilla brought a single Mattel document to

15   MGA.  Storie Depo. at 45:16-46:1, 210:10-211:2, 208:1-209:25; Owens Depo. at

16   304:17-305:12.  Mattel also does not dispute the fact that MGA neither asked him

17   to bring anything from Mattel or knew he had done so.  MGA 1753315 – MGA

18   1753316; Castilla Depo. at 168:22-169:19.  In fact, MGA required Castilla to

19   certify in writing that he had not done so.  MGA 1753317 – MGA 1753318.

20   Mattel's claims involving Castilla boil down to whether he may have used some

21   knowledge in his head while at MGA.  But Mattel has failed to provide evidence of

22   that vague assertion.

23          And while Mattel claims that the information Castilla took (but did not bring

24   to MGA) were Mattel's crown jewels of forecasting, the truth of the matter is that

25   they were anything but.  The documents taken by Castilla represented primarily his

26   own work at Mattel as a junior member of Mattel's forecasting team.  The

27

28   _____
     [1] MGA has already produced all emails to and from Machado, Trueba and Vargas
     from April 2004 to December 2004.

1   documents included his job performance evaluations, status reports for projects he

2   had worked on years prior and timelines of events that had long since passed.

3   Most, if not all, of these documents had little remaining use at Mattel at the time he

4   left, let alone use at a smaller company with a different set of products, different

5   software systems, and different priorities and preferences related to sales

6   forecasting.  Indeed, while Mattel now claims that every document Castilla took

7   was an important Mattel trade secret, in a report by Castilla's boss at Mattel a few

8   days after his departure, she identifies several of the documents as relating to his

9   personal work and performance at Mattel and concludes that "an employee's

10  possession of information concerning his/her own employment is acceptable."

11  Owen, Ex. 7166.

12          **B.      What Is A Forecasting System?**

13          Although Mattel's lawyers portray forecasting and inventory systems as the

14  end-all-be-all of a successful company, in the toy industry, forecasting and

15  inventory systems are little more than excel-based systems that provide a format for

16  inputting the educated guesses of the individuals doing the forecasting.  Some

17  industries are able to use "smart" systems that contain algorhythms and formulas

18  for projecting with accuracy the expected sales of a product.  The toy industry is not

19  one of those industries.

20          Mattel concedes that such "smart" systems do not work in the toy industry.

21  This is because for most toys, there is insufficient prior data to project future sales

22  with any level of accuracy.  Owens Depo. at 73:25-83:22, 206:19-207:23, 261:4-10,

23  324:5-325:10.  As a result, the key to forecasting in the toy industry is not the

24  system used, but the ability of individuals to estimate the number of products that

25  might sell, given their experience with similar toys, the advertising that will be

26  used, surveys done on the product and other factors.  As one forecasting treatise has

27  stated:  "Its time for another forecasting principle:  there is far more to be gained by

28  people collaborating and communicating well than by all of the advanced formulas

1    and algorhythms yet developed."  Wallace, Thomas F. "Sales Forecasting: A New

2    Approach." Robert Stahl, 2002 at p. 112.

3          At a nascent company like MGA, which puts out new doll lines each year,

4    the ability to accurately estimate future sales is even more subjective and human

5    based.  The forecasting systems are merely a place to input the employees'

6    estimates, which necessarily change as sales efforts are begun.  At the time Castilla

7    came to MGA, both Mattel and MGA used off-the-shelf software for their

8    forecasting systems that were then customized to reflect the particular needs,

9    preferences and size of the business.  Forecasting software can be purchased from a

10   variety of third party vendors, who have expert consultants available to assist in

11   implementation of the software to fit a company's particular needs.  Owen Depo. at

12   67:11-68:21, 70:15-71:8.  Since each system is different, MGA's knowledge of

13   Mattel's forecasting system would be no more helpful to MGA than knowing how

14   Mattel customized its Microsoft Outlook if MGA were using an Apple-based

15   system.

16         **C.    The Facts Concerning Castilla**

17         After volumes of depositions, gigabytes of produced documents and an

18   internal investigation at Mattel that makes the Watergate investigation appear small,

19   the only "evidence" Mattel can offer as to any use of Mattel trade secrets by

20   Castilla is that MGA's forecasting improved during the time Castilla was at MGA.

21   Motion, p. 9-11.  Not a shred of evidence suggests that this improvement in

22   forecasting was due to any use of Mattel information – – as opposed to better

23   communication between employees, more historical data for Bratz sales, or

24   increased staffing.  Indeed, the testimony Mattel cites does not even demonstrate an

25   improvement in the forecasting *system*, but an improvement in *forecasts*, which is

26   not the same thing.  Improved forecasts could be the result of a better process, but it

27   could also be simply because the people doing the forecasting got better at doing it.

28

1  It could also mean more and better historical data for Bratz sales upon which to
2  forecast future sales.

3      Indeed, Mattel cites to the deposition of Nicole Coleman, Castilla's boss at
4  MGA, for the proposition that forecasting improved at MGA, but Mattel
5  conveniently omits her testimony attributing those improvements to changes she
6  instituted to the forecasting process upon her coming to MGA from MGM Studios,
7  where she created the MGM forecasting system from the ground up.  *This took*
8  *place before Castilla ever got to MGA*.  Coleman Depo. at 15:18-17:21, 167:2-
9  169:24, 338:8-343:3, 345:1-10.  Moreover, while Ms. Coleman testified that
10 MGA's forecasting improved over time, Ms. Coleman made clear that it improved
11 both before Castilla came to MGA and after.  In other words, it was a constantly
12 improving process as people got better at predicting future sales.  *Id*. at 354:25-
13 363:10, 372:17-376:10.  It is also true that MGA continued to encounter problems
14 in forecasting after Castilla joined MGA, just as it had before.  Indeed, Ron Brawer
15 was recently deposed (for the sixth day) and he explained how MGA's forecasts
16 actually got worse after Castilla joined MGA – – not because of Castilla, but
17 because of declining sales that led to greater uncertainty in future sales.  Mattel's
18 depiction of a dramatically improved forecasting system at the moment of Castilla's
19 arrival simply does not fit the facts.  Indeed, Mattel concedes in its Motion that the
20 decision to scrap the John Galt software system at MGA was made two years after
21 Castilla joined MGA!  Motion, p. 10 (in "2008 MGA discarded [the Galt system]
22 entirely for a system designed from scratch.")  Mattel offers no explanation for why
23 MGA would scrap its forecasting system two years after Castilla's arrival if his
24 arrival was the cure to MGA's alleged forecasting woes.

25      **D.    Mattel's Requests Are Vastly Overbroad And Burdensome**
26      Mattel seeks a broad range of documents that ask, in essence, for every
27 document related in any way to MGA's forecasting and inventory systems for a
28 nine-year period of time.  Mattel has already been provided with detailed

MGA Opposition To Mattel Motion To Compel

1    documents describing the operation, functioning and implementation of the

2    forecasting systems at MGA both before and after Castilla came to MGA.  While

3    the Court's January 26 order required only that MGA provide documents sufficient

4    to show the functions of the system six months before and after Castilla arrived,

5    MGA also produced a detailed user manual for the forecast portal implemented two

6    years after Castilla's arrival, as well as the operations manual for the inventory

7    system used years after Castilla joined MGA.

8          As those documents reflect, the forecast system developed by MGA prior to

9    Castilla's arrival remained in place until it was decommissioned in June 2008 – –

10   more than two years after Castilla's arrival.  The user manual produced by MGA

11   for the 2008 system shows how the system operates – – containing screen shots of

12   each aspect of the forecast portal – – and has a section dedicated to explaining the

13   difference in the June 2008 system with the system being used previously.

14         If Mattel were to have demonstrated that portions of one of these systems

15   were modeled after Mattel's system, then Mattel may have at least some argument

16   (albeit a thin one) for seeking greater detail as to how and when those specific

17   portions were developed at MGA or whether Castilla was somehow involved in

18   those changes.  But having found no similarity between the two systems, Mattel is

19   not entitled to delve ever deeper in hopes of finding something, anything that would

20   support a claim of misappropriation.  The case cited by Mattel, *Sargent Fletcher*,

21   holds only that a plaintiff can point to similarities in products as one factor in trying

22   to prove misappropriation.  It does not hold that a plaintiff is given unfettered

23   discovery to try to find a similarity when the plaintiff cannot point to any

24   similarities to begin with.

25         For the foregoing reasons, the Court should deny Mattel's Motion to Compel

26   Request Nos. 1-3, 6-31, 34-65, 68-75 of Mattel's Third Set of Requests For

27   Production (dated September 16, 2009).  Each of these requests is overbroad,

28   unduly burdensome and intrusive into MGA's own internal processes.  Mattel has

1   had every opportunity to view MGA's forecasting systems before and after Castilla

2   joined.  No further discovery is justified.  The Court's January 26 Order provides a

3   reasonable and rational framework for discovery on this issue and Mattel has failed

4   to meet its burden of needing the additional discovery sought by these requests.

5   **II.**   **MATTEL IS NOT ENTITLED TO NINE YEARS WORTH OF**
6          **PRICING INFORMATION**

7          In its January 26 Order, the Court ordered MGA to produce: "documents

8   sufficient to show, by product, the gross and net price of products sold by the MGA

9   Parties during and for the six month time period before and the six month time

10  period after Vargas, Trueba and Machado left Mattel."[2]  January 26, 2010 Order

11  (Dkt. No. 7434) at 6.  This order was based on argument presented at two separate

12  hearings, as well as briefing submitted for the Court's review.  In that argument,

13  Mattel presented the exact same evidence as it does now.  Namely, Mattel claimed

14  that a document containing Mattel pricing information was found within the offices

15  of MGA de Mexico in Mexico City, Mexico.  Based on this evidence, the Court

16  granted the discovery set forth above.

17         Having been given an inch, Mattel now wants to take a mile.  Specifically,

18  Mattel wants MGA to produce documents that far exceed the temporal, geographic,

19  and substantive scope of the Court's January 26 Order—beyond anything rationally

20  related to the facts of this case.  Mattel provides no new evidence or justification for

21  its new document demands, and there is no basis for the Court to compel such

22  overbroad requests.

23         In terms of temporal scope, Mattel wants MGA to produce pricing

24  information for a nine year period of time, from January 2001 all the way to the

25  present.  *See* Request Nos. 1-12 of Mattel's Second Set of Requests for Production

26  (dated September 4, 2009).  Mattel provides no justification for expanding the

27  ―――――――――――――
    [2] Machado, Trueba and Vargas left Mattel in April of 2004.  Consequently, the
28  Court's order includes MGA pricing information from October 2003 (six months
    before the departure) to October 2004 (six months after the departure).

1   Court's order from twelve months to just over nine years.  Mattel argues that it

2   needs more documents to compute a "baseline" for changes in MGA pricing, but

3   this argument fails because the Court already gave Mattel six months worth of

4   pricing information to compute a baseline (i.e. the six months prior to the arrival of

5   Machado, Trueba and Vargas).  Mattel makes no effort to explain how this data set

6   is somehow insufficient to compute a baseline, and there is no explanation why six

7   years worth of pricing data after these individuals left Mattel (i.e. from October

8   2004 to the present) is relevant to computing a baseline analysis.

9        Regarding geographic scope, Mattel argues that the Court's January 26 Order

10  was limited to "trade secrets [allegedly] stolen by Vargas, Trueba, and Machado" in

11  Mexico.  Motion at 49.  In contrast, Mattel claims that its renewed requests seek

12  documents "relevant to the theft of pricing information by other former Mattel

13  employees as well."  *Id*.  This is a distinction without a difference for two reasons.

14  First, the Court's original order was not limited to or based upon information

15  allegedly taken Machado, Trueba or Vargas.  The Court used their departure date as

16  a reference point for the temporal scope of its Order, but the pricing information

17  that was the subject of the Order was not tied to any particular employee or

18  geography.

19       Second, the reason that the Court referenced that particular departure date

20  was because the only evidence that Mattel could proffer as to why MGA pricing

21  information was somehow relevant was the fact that Mattel pricing information had

22  been found within the offices of MGA de Mexico in Mexico City, Mexico.[3]  Mattel

23  has no evidence (and MGA is not aware of any) that Mattel pricing information was

24  ever taken by any other Mattel employees (including Brawer, Brisbois, Castilla,

25  Contreras, or Cooney). Despite Mattel's exhaustive discovery efforts in this case,

26  there is nothing to suggest that these individuals or any other former Mattel

27

28  [3] Mattel reiterates this fact when it cites the recent deposition testimony of Pablo Vargas from June 2010.

- 10 -                          MGA Opposition To Mattel Motion To Compel

1    employee ever used or disclosed confidential Mattel pricing information to anyone

2    at MGA.  Without such evidence, there is no basis for the Court to revisit its

3    January 26 Order or reconsider Mattel's renewed requests for pricing information.

4         Finally, regarding substantive scope of Mattel's requests, the pricing

5    information that Mattel now seeks is not limited to gross and net price of MGA

6    products sold.  Rather, the scope goes much further to include price discounts, price

7    rebates, price allowances, price reductions, sale dates, and number of units sold (by

8    SKU and by customer), as well as MGA pricing guidelines, strategies, and decision

9    making process (including communications relating thereto).  *See* Request Nos. 1-

10   12 of Mattel's Second Set of Requests for Production.  Mattel sought these same

11   types of documents back in January and the Court for good reason limited its order.

12   There is no reason for the Court to reconsider its position on MGA pricing

13   information.

14   **III.   MGA HAS ALREADY PRODUCED ALL MATTEL DOCUMENTS IN ITS POSSESSION, CUSTODY OR CONTROL**

15

16        **A.   Mattel Is Not Entitled To Further Fishing Expeditions Relating to Former Mattel Employees**

17        Mattel's continued motion to compel does nothing more than repeat the same

18   baseless and tired arguments it has made in a series of prior motions to compel

19   seeking the exact same documents.  The documents have either already been

20   produced or do not exist.  Still, Mattel insists that MGA should do more.  Mattel

21   ignores the fact that MGA has completed exhaustive searches of its systems and

22   physical plant to determine what, if any, Mattel documents were in its possession,

23   custody and control.  That investigation included a review of MGA employees

24   MGA laptops, desktops, loose hard drives, exchange server data, network data, any

25   CD/DVDs discovered by MGA and a physical review of employee workspaces.

26   Moreover, Mattel has deposed every former employee that it claims took Mattel

27   information, as well as their supervisors and colleagues at MGA.  Still, Mattel

28

1    asserts that MGA's efforts are not sufficiently exhaustive.  There are simply no

2    remaining Mattel documents to produce.

3             **1.    Ron Brawer**

4             Mattel's requests pertaining to Ron Brawer are also duplicative, over broad

5    and burdensome (Requests Nos. 20-23).  MGA has already provided Mattel with

6    responsive documents.  Mr. Brawer's laptop computers while he was employed at

7    MGA were imaged and reviewed, information on the exchange server was

8    reviewed and hard copy documents were collected and reviewed.  Moreover,

9    Mr. Brawer has been deposed for six days concerning every aspect of his

10   employment at MGA and Mattel.  MGA has further explained that it has no

11   evidence of Brawer having taken any confidential information from Mattel and

12   using it at MGA.  Indeed, Mattel's claims related to Brawer are now limited to:  a

13   blank job description questionnaire form, a "sales ladder" document, and

14   information in his head regarding product themes.  UF # 124 and 126-129.[4]

15            Brawer admittedly used a form of Mattel job position questionnaire as a

16   template to explain to MGA the position he saw for himself.  App. Ex. 7295.[5]

17   There was no Mattel information in the form that Brawer presented to MGA, nor

18   was the document labeled as having come from Mattel.  Mattel acknowledges as

19   such, but contends the blank form itself is confidential and proprietary to Mattel.

20   App. Ex. 8558 at 2147-2148.  Mattel's 30(b)(6) witness, however, was not even

21   able to testify that anyone at Mattel had in fact created the form.  LKK Decl. Ex. 28

22   (Storie Depo.) at 2775:24-2778:22.[6]

23

24   [4] Citations to "UF # __" refer to the Separate Statement of Undisputed Facts And
     Conclusions Of Law In Support The MGA Parties and IGWT's Motions For
25   Summary Adjudication Of the First, Second And Third Claims For Relief Of the
     FAAC (filed May 11, 2010) (Dkt. No. 7899).
26   [5] Citations to "App. Ex. __" refer to the Appendix of Previously Marked Exhibits In
     Support Of the MGA Parties and IGWT 826's Motions To Dismiss And For
     Summary Judgment (filed May 11, 2010) (Dkt. No. 7935).
27   [6] Citations to "LKK Decl. Ex. __" refer to the Declaration of L. Kieran Kieckhefer
     In Support Of the MGA Parties' And IGWT 826's Motions To Dismiss And For
28   Summary Adjudication (filed May 11, 2010) (Dkt. No. 7923).

1       The sales ladder document is a summary of year-to-date sales data for Mattel

2   at Toys-R-Us; the data is provided by and owned by the retailer.  TS Comp. Ex. 1[7];

3   LKK Decl. Ex. 3 (Bousquette Depo.) at 128:7-12; Ex. 28 (Storie Depo.) at 2782:3-

4   22, 2784:10-19, 2786:6-13.  Mattel claims that Brawer likely took it because he

5   asked his assistant to print it around the time he last left Mattel's premises before he

6   resigned.  LKK Decl. Ex. 28 (Storie Depo.) at 3477.9:2-3477.10:2.  But an email

7   sent to Mr. Brawer by one of his co-workers the day the plan was printed expressly

8   asked Mr. Brawer to bring the copy of the ladder document to a meeting.  App.

9   Ex. 8988.  There is no evidence Brawer took the document to MGA, which he

10  denies.  LKK Decl. Ex. 4 (Brawer Depo.) at 168:11-13.

11      Mattel's last item of claimed misappropriation by Brawer is product themes

12  allegedly taken in his head—a claim that was only recently concocted in this

13  litigation years after Brawer left MGA.  UF # 126-128.  There is no evidence that

14  Brawer took any document concerning Mattel's unreleased products, that he

15  specifically memorized anything related to them, or that he had any involvement in

16  the development of what Mattel now claims were similar themes released by MGA.

17  For example, MGA issued press releases announcing once such line four months

18  prior to Brawer leaving Mattel.  M 0074114-15, M 0001511-1546.  Consequently,

19  there is no substance to Mattel's allegations on this issue, let alone its request for

20  documents.

21          **2.**    **Daniel Cooney and Nick Contreras**

22      Mattel's requests related to Daniel Cooney and Nick Contreras (Requests

23  Nos. 33-34 and 51) fail for the same reasons.  Nick Contreras' MGA desktop was

24  collected and reviewed, the exchange server was reviewed and any hard copy

25  documents were collected.  Mattel also deposed Contreras for one day.  Despite

26  this, nothing more has been uncovered.  Indeed, Mattel's claim is still limited to a

27  ─────────────────
[7] Citations to "TS Comp. Ex. _" refer to the Compendium Of Alleged Trade Secret
28  Documents In Support Of MGA Parties And IGWT 826's Motions To Dismiss And
For Summary Adjudication (filed May 11, 2010) (Dkt. No. 7901).

baseless claim that he *attempted* to procure confidential information.  There is no evidence that MGA or Larian had anything to do with this.  Supposedly Contreras had lunch with a former co-worker and asked for copies of certain documents (he denies it), but even she agrees *that she never gave him the documents*.  LKK Decl. Ex. 93 (Kim Depo) at 5714:13-16; Ex. 7 (Contreras Depo.) at 768.3-5.  Mattel has no evidence that MGA ever used or disclosed any Mattel trade secret purportedly provided by Contreras.  *Id*. Ex. 28 (Storie Depo.) at 266-2667.  Mattel also asserts that he copied various documents during the week he left, but Mattel concedes it has no evidence that he took these documents, no evidence he brought them to MGA, and no evidence that MGA used any of these documents.  *Id*.

With Cooney, MGA has similarly reviewed his MGA laptop, the MGA exchange server and looked for any hard copy documents responsive to Mattel's request.  Cooney has also been deposed for one day on his actions following his departure from Mattel and employment at MGA.  The sum total has verified the same story.

During his last week of employment, Cooney copied a handful of documents to a folder called "Dan's Files" on his Mattel laptop computer.  These documents included Cooney's resume, pictures of his family, his contact list and three templates related to Toys-R-Us that he had stripped of Mattel data before copying.  LKK Decl. Ex. 8 at 808-809, 823-824.  Mattel has no evidence that MGA or Larian had anything to do with this copying.  After copying these documents to his "Dan's Files" folder, Cooney then copied the contents of that folder to a disc that he retained when he left Mattel.  Id. at 833-835.  Mattel claims that the three blank templates are its trade secrets (it admitted days before the filing of this Motion that it could not maintain a claim on the contact list).  App. Ex. 8588 at 1935-1949.

Mattel has also identified seventeen documents that Cooney "accessed" the week before and a couple days after he resigned from Mattel.  Id.  Cooney's supervisor repeatedly testified that there was "nothing unusual" about Cooney

1   accessing any of these documents and he would be expected to do so to update his

2   work and to ensure a smooth transition for his successor after he left Mattel.  LKK

3   Decl. 22 (Murtha Depo.) at 2431-2432, 2426-2427.  There is no evidence that any

4   of these documents were ever copied by Cooney or taken with him when he left

5   Mattel.

6          Cooney did take four documents with him when he left Mattel, three

7   spreadsheet templates related to Toys-R-Us and his contacts list.  App. Ex. 8588 at

8   1935-1949.  Mattel has now conceded on the contact list that it does not contain

9   trade secrets.  LKK Decl. Ex. 76.  As to the three spreadsheet templates, there is no

10  evidence that MGA or Larian had anything to do with the removal of those

11  documents.  Cooney stripped the templates of all Mattel information prior to

12  copying them.  UF # 275g, 276g, 277g, 278g.  Mattel knew within days of

13  Cooney's departure that Cooney had transferred these templates to his personal

14  folder, but Mattel took no steps to confront him with that knowledge or to tell him

15  not to use these forms.  Neither did Mattel ever seek to have his use of these forms

16  enjoined.  *Compuware Corp. v. Health Care Service Corp.*, 203 F. Supp. 2d 952,

17  957-58 (N.D. Ill. 2002) (delay in filing suit and failure to seek preliminary

18  injunction resulted in dismissal for lack of reasonable efforts).  Given the missing

19  elements with respect to each one of these claims as against each counter-

20  defendant, it is apparent that Mattel cannot prove trade secret misappropriation by

21  MGA or Larian.

22         Again, discovery on this topic has been exhaustive.  There is simply nothing

23  left to discover.

24         **3.    Gustavo Machado, Mariana Trueba, Pablo Vargas**

25         Mattel's requests related to Machado, Trueba and Vargas are duplicative,

26  over broad and burdensome (Requests Nos. 25, 27, 29).  MGA has collected and

27  reviewed laptop computers, desktop computers, any loose hard drives, information

28  on the exchange server and any hard copy documents for each of these employees.

1   MGA has produced every email to or from these individuals for the entirety of the

2   year they arrived at MGA.  These individuals have also been extensively deposed.

3   Machado was deposed for six days, Trueba for four days and Vargas for four days.

4   Again the comprehensive discovery completed to date has verified each of the

5   relevant facts for each of these employees.  Unbeknownst to MGA or MGA

6   Mexico, these employees did take documents with them upon their final days of

7   employment with Mattel Servicios, S.A. de C.V.  There is no evidence, however,

8   that any confidential or trade secret information was used at or disclosed to anyone

9   at MGA Mexico and MGA Mexico has not located any such evidence.  Indeed,

10  Machado and Trueba both testified at length that neither of them ever disclosed any

11  of the information taken to anyone at MGA Mexico.  Moreover, although Vargas

12  has now recanted his prior testimony that he never used or disclosed Mattel

13  information to anyone (he now claims he was lying to the Court in Mexico when he

14  submitted a lengthy declaration denying Mattel's claims), such testimony was fully

15  anticipated given that Mattel has exchanged a full pardon for his now favorable

16  testimony.

17         **4.      Janine Brisbois**

18         As with the Mattel's other requests, the documents sought related to Brisbois

19  are likewise over broad, burdensome and duplicative (Requests Nos. 41-44 and 46-

20  47).  The discovery collected by MGA related to Mattel's allegations against

21  Brisbois has similarly been comprehensive. All hard copy documents that Brisbois

22  had in her possession were produced.  MGA has reviewed Brisbois' MGA laptop

23  computer and the MGA exchange server.  Brisbois has also been deposed for two

24  days concerning the circumstances of her departure from Mattel and her

25  employment by MGA.  The document and testimony is entirely consistent.

26  Brisbois has testified that she only accessed 3 or 4 documents from a thumb drive

27  she retained following her employment at Mattel.  She accessed the documents,

28  stripped them of all Mattel information and used the documents as templates.  The

thumb drive on which these documents were stored was collected by the Canadian regional police and is currently in the possession of forensic computer experts. There is simply nothing left to produce and again all the discovery confirms what is already known.  Brisbois did not use or disclose Mattel confidential information while employed at MGA.  To the contrary, she was very careful not to disclose any such information.

### 5.   Garcia, Marlow, and Hatch-Leahy

Apparently determined to get blood from a stone, Mattel also seeks discovery regarding individuals that are not part of its trade secret claims.  Mattel demands that the Court compel MGA to produce all documents that MGA received from Paula Garcia, Veronica Marlow, and Margaret Hatch-Leahy "RELATING TO MATTEL or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales advertising, marketing, analysis, tool, or procedure." Requests No. 4, 5, 6, and all MGA documents that "relate to" MGA's receipt of such documents, Requests No. 11, 12, 14.  These requests are not relevant and are overbroad an unduly burdensome.

First, Mattel argues that it is entitled to this discover because these individuals were involved in the development of Bratz at MGA.  Making an unsupported leap, Mattel then asserts that "they had the opportunity and the means to steal other confidential information from Mattel."  Motion at 56.  Mattel is attempting to put the cart before the horse.  In order to obtain discovery, Mattel must first make allegations that make the discovery relevant.  Here, Mattel has specifically identified eight former Mattel employees that it believes took Mattel trade secret information.  This list does not include Garcia, Marlow or Hatch-Leahy.  Instead, the Mattel is now asking the Court to compel production merely because these three individuals previously worked at Mattel.  Under black letter California law, mere prior employment is insufficient to justify such requests.  Cal. Bus. & Prof. Code § 16600.  These requests are merely further evidence of Mattel's

continuing fishing expedition.  Mattel has not found a reasonable basis on which it can make affirmative claims relating to Garcia, Marlow or Hatch-Leahy after more than five years of boundless discovery and it is not entitled to further burden MGA with these irrelevant document demands.

Moreover, the document requests are overbroad and unduly burdensome. Mattel is demanding every document MGA received from these three individuals relating to Mattel in any way shape or form.  Documents responsive to these requests would include any public Mattel document, such as an advertisement, that these individuals acquired, even as an MGA employee!  Documents responsive to these requests would also include any document created by these three individuals as part of their job at MGA that discusses a Mattel produce currently in the marketplace.  Additionally, the requests demand all documents that "relate to" "former Mattel employees".  Arguably, the requests would include all correspondence between the three individuals and any former Mattel employee employed by MGA.  Not only does this go well beyond the bounds of relevance in this case, this could encompass hundreds of thousands of documents.  This unreasonable burden is only further compounded by the fact that Mattel also seeks, with Requests No. 11, 12, and 14, all documents that "relate to" this undefined set of documents.  All told, the requests seek a boundless set of documents that are wholly untethered to the claims in this case.

### 6.    Mattel's Over Broad Request for Documents Concerning "Other Former Mattel Employees" Should Be Denied

Mattel's requests concerning "other former Mattel Employees" (Requests Nos. 8-9 and 15-16) are an even more egregious use of discovery to burden MGA with over broad requests without justification.  While Mattel has made broad allegations that mysterious "other employees" have engaged in trade secret misappropriation, Mattel has yet to produce a single piece of evidence suggesting that this is true.  To the contrary, Mattel has deposed multiple MGA employees

1   each of whom have testified that they did not steal trade secrets.  Mattel has also

2   deposed various 30(b)(6) witnesses for days on topics concerning the same issues

3   raised by these requests, only to be told repeatedly that no such theft occurred.

4   Consequently, there are no responsive Mattel documents to produce.  Nevertheless,

5   Mattel demand that MGA conduct a reasonable search for any document "relating

6   to Mattel" that it received from nearly 120 former Mattel employees is

7   unreasonable.  This could include any number of documents created by these

8   employees as part of their job at MGA that discusses public Mattel information.

9   Mattel has not satisfied its burden in demonstrating the relevance of these requests

10  or in satisfying the burden that they seek to impose on MGA with these catch-all

11  demands.

12          **B.      Mattel Has Already Received Documents Relating MGA's Alleged**
            **Acquisition and Disposition of Its Trade Secret Materials**
13

14          Mattel's catch-all requests continue in Requests No. 78-80 and 90-96.  As

15  explained in Sections I, III.A.1-4, MGA has produced documents responsive to

16  Mattel's actual trade secret allegations.  However, Mattel is demanding the

17  production of a much broader set of documents, which are not relevant to this

18  dispute.  Mattel's demand relates to "MATTEL DOCUMENTS" which refers to a

19  full two-and-a-half pages of bates ranges.  To the extent these documents coincide

20  with Mattel's current alleged trade secrets, they have been covered by separate

21  requests directed at each of the specific individuals.  To the extent the list is broader

22  than that, there is no basis for the requests.  Further, the bounds of these requests

23  could be limitless.  Mattel demands the production of documents that contain "any

24  portion of information contained within the "MATTEL DOCUMENTS" and

25  documents which identify all persons who "created accessed, modified, used,

26  copied, or transmitted" any such document.  Request No. 93, 94.  Read literally,

27  any MGA document that contains the word Barbie or Mattel or My Scene (which

28  are sure to be terms within the "MATTEL DOCUMENTS") would be responsive.

1   Mattel cannot justify the relevance of such requests, nor can it justify the burden.

2   Given Mattel's specific discovery into its actual trade secret allegations, there is no

3   basis on which to compel MGA to produce documents in response to such

4   overbroad and facially irrelevant requests.

5   **C.     MGA Will Produce Documents Relating To Its Affirmative
        Defenses, In Accord With Its Obligations Under The Federal
6       Rules**

7       MGA is aware of its obligations under the Federal Rules and is complaint

8   with those obligations.  Mattel's characterization of Requests No. 81-86 and 97-98

9   as merely duplicative of such obligations is misleading.  As this Court is well

10  aware, the objective of Mattel in obtaining orders relating to its discovery requests

11  before this Court is not to obtain discovery.  Rather, Mattel seeks an order which it

12  can then bring before this Court to compel production, based upon allegations that

13  it suspects further documents exist and believes that MGA has not yet provided

14  Mattel with every document in its possession that refers to such alleged documents

15  or relates to such alleged documents.  Accordingly, if the Court is to compel

16  MGA's compliance with its existing discovery obligations relating to its affirmative

17  defenses, as Mattel demands with respect to Requests No. 81-86 and 97-98, it is

18  merely inviting Mattel to file further motions before this Court demanding the

19  production of additional documents that do not exist and all documents that refer or

20  relate to such non-existent documents.  Rather than further encouraging such

21  useless discovery battles, MGA should be entrusted to comply with its obligations

22  for production relating to its affirmative defenses, being fully aware of the

23  consequences for a failure to comply.  Mattel has provided no evidence – – only its

24  suspicion – – that there may be more documents.

25  **IV.    MATTEL IS NOT ENTITLED TO MGA'S ENTIRE PRODUCT LINE**

26      Tacked on, rather haphazardly, to Mattel's "trade secret" discovery are its

27  demands that MGA produce "all documents that "refer or relate to [MGA's]

28  product or product line offerings, or contemplated or proposed product line

1    offerings" for six years.  As explained to Mattel in meet and confer discussions,

2    these requests are boundless, seek information unrelated to the claims in this action,

3    and are unduly burdensome.

4           As with Mattel's other catch-all requests that are untethered to its pled

5    claims, these requests are boundless.  All documents created as part of the product

6    development phase, from brainstorming, to sketching, to packaging, to

7    presentations to retailers, to customer orders, to shipping logistics, to sales figures

8    either "refer or relate to" MGA's product line offerings."  In fact, one would be

9    hard pressed to identify a single document created by MGA's design department,

10   sales department, marketing department, etc. that does not "refer or relate to"

11   MGA's product line offerings.

12          Moreover, what Mattel purports to be seeking, evidence of use of its trade

13   secrets, would have been produced in response to any number of its requests

14   actually targeted at its trade secret allegations.  In fact, MGA has produced

15   hundreds of documents which demonstrate that the product lines it specifically

16   alleges MGA developed using Mattel's trade secret information were in fact

17   independently developed at MGA.  Given that even Mattel's own trade secret

18   allegations carry no water with respect to MGA's product development, there is no

19   justification for Mattel demand that MGA's entire corporate files relating to its

20   product lines be produced for a six year period.

21   **V.     MGA HAS ALREADY PRODUCED COMMUNICATIONS WITH**
22   **        LAW ENFORCEMENT**

23          This Court has repeatedly made clear that motions for reconsideration should

24   not be used as a matter of course to challenge discovery rulings.  Mattel apparently

25   is not listening.

26          MGA has already been ordered to produce "all communications by or on

27   behalf of any of the MGA Parties with law enforcement in Mexico, Canada, and/or

28   the United States that refer or relate to any alleged theft or taking of alleged Mattel

1   confidential or trade secret information by MGA or persons currently or formerly

2   employed by MGA or any other allegation contained in Mattel's claims in this

3   action." *See* January 26, 2010 Order (Dkt. No. 7434), at 5.  Indeed, only a few

4   weeks ago, the Court struck as moot a motion by Mattel to compel compliance with

5   this order, because MGA has already produced all such communications. *See* June

6   7, 2010 Order (Dkt. No. 8079)

7           Now Mattel wants the Court to revisit this issue yet again—this time by

8   ordering the production of documents that "refer or relate" to law enforcement

9   communications. *See* Request Nos. 77, 80, 82, 24, 86 and 92 of Mattel's Third Set

10  of Requests For Production (dated September 16, 2009).  Mattel claims that its

11  latest requests are somehow different or distinct from what the Court has already

12  ordered MGA to produce.  But this is not true and there is simply no reason for the

13  Court to have to re-examine this topic a third time.

14          Pursuant to the Court's January 26 Order, the MGA Parties have already

15  produced all communications with law enforcement that relate to Mattel's

16  allegations in this case.  Neither in this motion, nor in any of its previous motions,

17  has Mattel presented a shred of evidence to the contrary.  That Mattel remains

18  incredulous that more communications were not produced is irrelevant.  As the

19  Court has already noted, "the mere fact that Mattel doubts the comprehensiveness

20  of MGA's subsequent production does not mean that Mattel seeks any unique

21  relief."  June 7, 2010 Order (Dkt. No. 8079) at 2.  Indeed, as a matter of law, Mattel

22  unsupported speculation is not sufficient to warrant reconsideration of the Court's

23  previous discovery orders.  No amount of speculation will change the fact that all

24  communications with law enforcement have been produced.  Consequently, there is

25  no point to an order compelling the production of documents that "refer or relate"

26  to communications that simply do not exist.

27          Mattel requests are also hopelessly vague and ambiguous in that they seek

28  documents that "refer or relate" to law enforcement communications.  Mattel does

1   not provide a single explanation as to what such documents might be, how they are

2   relevant to this case, or why they are not already encompassed by the Court's

3   previous discovery orders.  It appears that Mattel is simply asking the Court to

4   revisit an issue that has already been decided.  If Mattel has some evidence that

5   documents that "refer or relate" to law enforcement communications have been

6   improperly withheld, it can present such evidence.  Until then, there is no reason to

7   revisit discovery topics that were dealt with months ago.

8   **VI.    <u>CONCLUSION</u>**

9          For the foregoing reasons, Mattel's renewed Motion To Compel Production

10  Of Documents Concerning Use of Trade Secrets should be denied.

11

12  Dated:  July 2, 2010                    Respectfully submitted,

13                                          ORRICK, HERRINGTON & SUTCLIFFE LLP

14

15                                          By:  _____/s/ William A. Molinski_____
                                                 William A. Molinski
16                                          Attorneys for MGA ENTERTAINMENT, INC.,
                                            MGA ENTERTAINMENT HK, LTD., MGA de
17                                          MEXICO, S.R.L. de C.V., and ISAAC LARIAN

18

19

20

21

22

23

24

25

26

27

28