QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>Hon. David O. Carter<br><br>[PUBLIC REDACTED] MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO MATTEL'S REQUESTS FOR PRODUCTION CONCERNING USE OF TRADE SECRETS<br><br>Date: TBD<br>Time: TBD<br><br>**Phase 2**<br>Discovery: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..................................................................................................................2

I. MATTEL'S ALLEGATIONS, NOT MGA'S SPIN, DETERMINE THE APPROPRIATE SCOPE OF DISCOVERY ..................................................2

    A. The Details of MGA's Forecasting System Are Highly Relevant ..........4

    B. All Thefts By Former Mattel Employees For MGA Are Relevant .........7

    C. All The Requested Pricing Information Is Relevant to Access To And Use Of Mattel's Stolen Pricing Information ..................................8

    D. MGA's Remaining Arguments Fail ..........................................................9

II. MGA MADE NO REASONABLE ATTEMPT TO MEET AND CONFER ..........................................................................................................10

CONCLUSION ............................................................................................................10

**Preliminary Statement**

MGA's procedurally improper opposition,[1] consisting primarily of lawyer-created arguments purporting to show that the evidence amassed thus far does not prove Mattel's allegations, only serves to establish the need for the requested discovery. MGA repeats here its performance of its rejected motion for summary judgment, but its denial of Mattel's allegations is not a reason to deny discovery; it is precisely why discovery should be granted, so that the facts surrounding both Mattel's allegations and MGA's theories may be discovered. It is not MGA's prerogative to foreclose discovery with protests of innocence.

MGA's opposition is also replete with false and misleading assertions designed to avoid this discovery. For example, in May, MGA told the Court it had produced all law enforcement communications. Not only was that false – MGA produced additional communications on June 21,[2] a fact that the Court had recognized in itself would be a basis for imposing sanctions on MGA – but MGA's latest opposition to Mattel's requests seeking documents *referring or relating to* such communications pretends that the June 21 production did not happen, and misleadingly argues that Mattel has merely engaged in "unsupported speculation" in suggesting that these requests might lead to additional unproduced communications.

Similarly, in opposing many requests seeking more than just Mattel documents, MGA contends it has produced "all Mattel documents in its possession, custody, or

---

[1] Although the Court permitted Mattel to file an additional over-length brief on the topics at issue, following the briefing by all parties in early June, it did not give MGA leave to file an opposition, much less two weeks later and nine days after the scheduled hearing on the motion. Thus, the Court properly may, and should, disregard MGA's overlength Supplemental Opposition. Mattel submits this reply in the event the Court elects to consider it. Further, MGA's decision to file a surprise brief, without leave and without seeking agreement on any briefing schedule, just hours before the start of a holiday weekend, permits a fair inference that MGA hoped Mattel would be unable to meaningfully respond.

[2] See Supplemental Declaration Of Michael T. Zeller In Support Of Mattel, Inc.'s Motion To Compel Production Of Documents In Response To Mattel's Requests For Documents Concerning Use Of Trade Secrets Pursuant To The Court's June 7, 2010 Order, Dated June 25, 2010 (Dkt. No. 8181) at para. 4-8. In this opposition, MGA (footnote continued)

control." Opp. at 11. That is also false, or at least ill-informed – MGA has yet to search its email archive, has yet to produce any documents from Larian's hard drives,[3] and its recent 30(b)(6) witness on its search efforts ███████████████████ ███████████████████████████████████████████████.[4] In light of this pattern, MGA's assurances simply cannot be accepted. As the Court noted recently, "MGA's representations about the [status of discovery] . . . are insufficient."[5] The requested discovery should be ordered in its entirety.

## Argument

### I. MATTEL'S ALLEGATIONS, NOT MGA'S SPIN, DETERMINE THE APPROPRIATE SCOPE OF DISCOVERY

MGA's opposition in large part simply attacks the proof Mattel has obtained thus far in discovery, arguing that without "evidence" of use, Mattel cannot obtain discovery into use. That is not the law. See Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"). The question is not whether MGA can craft innocent explanations in response to Mattel's allegations; the question is whether the requests at issue seek information relevant to Mattel's allegations. Mattel's motion demonstrated that they do, and MGA does not seriously challenge that dispositive issue.

---

extends the lie, refusing to even acknowledge its belated production of documents it previously told the Court it had produced.

[3] Though the Court-ordered deadline for those searches was May 31 (see Amended Order Granting Mattel's Proposed Search Terms for Larian Hard Drive, dated May 13, 2010 [Dkt. No. 7860]), Despite Mattel's repeated follow-ups and meet and confers, MGA still has not produced a ***single document from Larian's hard drives***.

[4] Deposition of Lisa Tonnu, dated June 25, 2010, at 2184:8-17 (███████ ████████████████████████████████████████████████████████████████ ████████████).

[5] Order Directing Electronic Production of Documents by MGA Parties, dated June 18, 2010 [Dkt. No. 8135].

For example, citing no authority, MGA argues that *before* Mattel can obtain further discovery into MGA's forecasting system, Mattel must be able to prove "similarity between the two systems." Opp. at 8. That is not the standard; nor would it make any sense. The purpose of discovery is to allow Mattel to investigate the similarities between the systems to prove its claims. MGA ignores the cases Mattel cited recognizing the web of circumstantial evidence typically required to prove use in a trade secret misappropriation case.[6] That proof cannot be attained before appropriate, detailed discovery into the relevant systems has been granted.

And discovery into MGA's use of Mattel's trade secrets has been arduous to acquire. For example, Castilla has refused to testify on the subject, invoking the Fifth Amendment hundreds of times during his deposition (including ███████████ ███████████).[7] Indeed, the Court rejected the summary judgment arguments MGA re-purposes here because they were "premature" in light of ongoing discovery.[8] The discovery Mattel seeks here is precisely the type of misappropriation and use evidence needed *before* the merits are considered.

Further, MGA spins broad representations about the extensiveness of its document productions to date, to portray Mattel's reasonable requests on these basic issues concerning trade secret use as somehow abusive. For example, MGA claims it has "completed exhaustive searches of its systems and physical plant" and "produced all Mattel documents in its possession, custody or control" and "still, Mattel insists that MGA should do more." Opp. at 11. Yet, it notably has no response at all with respect to the many specific relevant documents that have been identified as missing from its production. And its representations cannot be true, as many of its most basic sources

---

[6] Motion, at 2-3.
[7] Deposition of Jorge Castilla, dated October 22, 2008, at 25:18-23.
[8] See Order Striking as Premature and Denying Without Prejudice MGA Parties' Motions for Summary Adjudication, dated May 13, 2010 [Dkt. No. 7854].

of documents have never been searched.[9] If the choice is between accepting unsupported assurances from MGA, and compelling the requests, the requests must be compelled.[10]

### A. The Details of MGA's Forecasting System Are Highly Relevant

MGA accuses "Mattel's lawyers" of overstating the importance of Mattel's forecasting system and the documents Castilla took related to it (Opp. at 5), but Mattel provided a detailed declaration setting forth the basis and reasons for the importance of the forecasting system. See Declaration of Laura Owens [Dkt. No. 8179]. It is *MGA's* lawyers who offer unsupported claims, such as the contention that "forecasting and inventory systems are little more than excel-based systems that provide a format for inputting the educated guesses" of MGA's employees.[11] Opp. at 5. If MGA claims

---

[9] As Mattel has shown in a Motion to Compel pending before Judge Smith, it is clear that MGA has not adequately searched for compelled documents, let alone ones that have not been ordered. MGA's attempts to frustrate even Court-ordered searches continue apace. In addition to its ongoing refusal to produce responsive documents from the Larian hard drives, Mattel recently learned that MGA has been attempting to derail the Court-ordered search of ArchiveOne. Judge Smith recently informed Mattel that MGA has demanded that ILS relinquish custody of the ArchiveOne search results, contrary to the Court's order that ILS conduct an "independent" review. See Email from Judge Smith to the parties, dated July 2, 2010 ("MGA has set aside the results of the searches ILS is conducting in ArchiveOne, and will not permit ILS to remove those results from MGA's site"); see also January 21, 2010 Report and Recommendation, at 4-5 (ordering that an "independent search of ArchiveOne should be conducted by ILS"). Moreover, as noted above, MGA has yet to produce to Mattel a single document from Larian's hard drives, despite the Court's orders and Mattel's repeated follow up efforts.

[10] Although the Court accepted MGA's representations (later proven false) that it had produced all law enforcement communications, that was in the context of a motion to enforce. Here, by contrast, the issue is whether MGA should be compelled in the first place. The Court has ruled that the "precedent" in this case – precedent set by an MGA motion -- is to compel discovery even when a party represents it has complied. See Hearing Tr., dated March 11, 2010 (Vol. 1), at 21:1-15 (THE COURT: "So there's absolutely no reason for me, then, not to grant MGA's motion, so I set the precedent and I set the standard. I'm going to deem, based on Mr. Zeller's representation that this has been completed; therefore, MGA's motion is granted"); Hearing Tr., dated March 11, 2010 (Vol. 3), at 5:12-22 (THE COURT: "Mattel represented that it has already produced all documents encompassed by the MGA Parties' request. With an abundance of caution, and to create a standing precedent that all later-discovered documents be produced by Mattel, the Court grants the request"). Thus, the Court should grant Mattel's motion in accordance with the standing precedent in this case.

[11] The many arguments about forecasting presented as unsupported fact in MGA's brief should be accorded no weight. For example, MGA directly attempts to mislead the Court in implying that Mr. Castilla's performance evaluation documents were among the stolen trade secrets asserted by Mattel (Opp. at 5); they were not. Another example is Mattel's supposed concession that any forecasting system using algorithms or (footnote continued)

that its forecasting system is "merely a place to input the employees' estimates," (Opp. at 6), then Mattel is entitled to seek discovery of MGA's systems to substantiate that claim. Assuming MGA's claims are true, there will be no burden in providing more detailed information about a simple excel-based system for inputting educated guesses. But true or not, Mattel should not be required to rely on MGA's unsubstantiated and unsupported statements made in discovery opposition briefs. Indeed, contrary to its rhetoric here, even the limited evidence MGA has produced shows that the forecast portal and the other changes made to MGA's forecasting and inventory management capabilities by Castilla in the year right after his undisputed theft of Mattel's trade secret information included ███████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████[12]

MGA claims that "Mattel has already been provided with detailed documents describing the operation, functioning and implementation of the forecasting systems at MGA both before and after Castilla came to MGA" (Opp. at 7-8), but offers no support for that statement or citations to the supposedly sufficient documents it has produced. Neither does MGA now dispute that there are numerous relevant documents that it did *not* produce in response to the Court's January 26 Order. In its underlying opposition, MGA claimed it had produced almost 39,000 pages of responsive documents.[13] Mattel pointed out in reply that the claimed production never occurred, and that just 32 responsive documents amounting to 2,000 pages in fact had been produced.[14] Yet, in its opposition here, MGA simply ignores the issue, apparently unable or unwilling to explain the inconsistency.

---

formulas "do not work in the toy industry." (Opp. at 5). This is just lawyer argument, not fact.
[12] See Mot. at 10:9-11:10 (quoting Nicole Coleman's Performance Assessment of Jorge Castilla for the Year 2007 [MGA2 0048983]).
[13] See MGA's Opposition to Mattel's Motion to Compel re Trade Secret Use, at 2-3 [Dkt. No. 7887].
[14] Reply at 2-4 [Dkt. No. 8015].

Further, MGA does not dispute what Mattel has repeatedly pointed out – that it has failed to produce dozens of highly relevant reports and other documents that are responsive to the requests at issue here concerning the operation and technical underpinnings of this new system, which Castilla developed and wrote the manual for,[15] as well as of its new inventory management and data warehouse systems and other related "█████████" Castilla was working on after his arrival at MGA. MGA's selection of the forecast portal user manual as a produced document sufficient to show non-use of Mattel's stolen trade secrets (Opp. at 8) is a telling choice ████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[16] It discusses only the most basic features that were included and does not convey information about what was incorporated later, or about what other design choices were made by virtue of having Mattel's trade secret information. Nor does it even address any matters that could show use of the stolen trade secrets related to Mattel's inventory management system and data warehouse. MGA's choice to trot *this* document out as an example of its purportedly comprehensive production shows that its production is actually anything but comprehensive.[17]

Finally, MGA itself established that discovery showing detailed changes, and contemplated changes, over time is relevant and not unduly burdensome. For example, with respect to its unpled allegations that Mattel had copied aspects of its products in

---

[15] See Reply in Support of Mattel's Motion to Compel Production of Documents in Response to Mattel's Requests for Documents Concerning Use of Trade Secrets, at 4 [Dkt. No. 8015] (noting that MGA has failed to produce dozens of relevant reports and other documents related to MGA's forecasting, inventory, and demand planning systems including, among others, "the business/technical requirements" document authored by Castilla, and the "official project plan" or "timeline" for MGA's new forecasting system).

[16] Forecast Portal User Manual, [MGA2 0543092-107].

[17] Certainly, MGA's argument that other factors may have played a role in improvements to MGA's forecasts (Opp. at 6-7) is all the more reason Mattel is entitled to this discovery. If MGA is contending that improvements to its forecasts were due to other factors, Mattel is entitled to seek discovery to test that argument.

Polly Pocket, it sought and obtained exhaustive discovery from Mattel about changes and considered changes to the entire product line over a 15-year period.[18] The discovery sought by Mattel here is much narrower.

### B. All Thefts By Former Mattel Employees For MGA Are Relevant

As to each of the other former employees – Brawer, Cooney, Contreras, Machado, Vargas, Trueba and Brisbois – MGA baldly asserts that the requests are "over broad, burdensome and duplicative" and then proceeds to argue MGA's spin story attempting to explain away all the evidence that these employees took documents and used them at MGA. See Opp. at 16-20. MGA argues that its witnesses have denied stealing Mattel documents, so there must be no documents to compel. Opp. at 12-18. But the testimony of MGA's witnesses is not the test for the relevance of discovery—the test is whether the requests are relevant to *Mattel's allegations*. It is not MGA's prerogative to refuse to look for documents it contends do not exist based on self-serving denials of theft; the solution to the parties' disagreement on the merits is to compel MGA to search. If the documents do not exist, then MGA can so state after conducting a reasonable search for them. And MGA's willingness to represent that there are no such documents, when it clearly has not even searched for them, is revealing.

MGA has argued, and will argue at trial, that there is no evidence that MGA or Larian "asked, directed or requested" that the former employees take Mattel trade secret information[19] or "of use or disclosure by MGA or Larian of any Mattel trade

---

[18] See Dkt. No. 7961 at 6-7 (Requests 613 and 614) (compelling requests seeking "[a]ll DOCUMENTS and COMMUNICATIONS REFERRING TO OR RELATING TO consideration being given to changing the appearance of POLLY POCKET, including but not limited to DOCUMENTS REFERRING TO OR RELATING TO sculpts, face paint and eye design" and "[p]hotographs or pictures sufficient to illustrate every variation or version of POLLY POCKET ever released as a commercial product, including without limitation, any variation in face paint, face paint plans or designs, eye designs, drafts, ideas or concepts").

[19] Motions of MGA Entertainment, Inc. and Isaac Larian to Dismiss and/or For Summary Adjudication Regarding U.S.-Based Trade Secret and Employee-Based State Law Tort Claims, dated May 10, 2010, at 14 [Dkt. No. 7897]

secrets."[20] But the jury need not take these statements at face value. Mattel is entitled to the requested information about all thefts perpetrated against it by its employees leaving for MGA, so that it can demonstrate that the activities were in fact coordinated and orchestrated by MGA and Larian. MGA's arguments to the contrary merely concede the relevance and necessity of this discovery to find the truth.

Similarly, MGA claims, without support or citation to produced material, that as to Mattel's requests related to all other former employees, "[t]he documents have either already been produced or do not exist." Opp. at 11. But again, that simply is inaccurate. First, as discussed, MGA has failed to even search many of the most basic sources for these documents and thus can hardly say whether or not they exist. Moreover, MGA at the same time objects to the requests and claims they are overbroad and should not be compelled. MGA cannot have it both ways; it has either complied with the requests or it has not. It clearly has not.

### C. All The Requested Pricing Information Is Relevant to Access To And Use Of Mattel's Stolen Pricing Information

MGA ignores Mattel's allegations about the widespread thefts of pricing information by Brawer, Brisbois, Contreras and Cooney at MGA's behest,[21] and argues there is no evidence that these former Mattel employees "used or disclosed confidential Mattel pricing information to anyone at MGA." Opp. at 10-11. Again, the evidence Mattel has been able adduce without the benefit of the discovery at issue is not the standard. Mattel has properly alleged that these employees took pricing information covering a time period that greatly exceeds the six months before and after the departure of Machado, Vargas and Trueba.[22] MGA does not seriously dispute that the requested information concerning the gross and net prices charged by MGA (Request Nos. 6-7) is relevant to show MGA's use of the pricing information stolen by these

---

[20] Id. at 15.
[21] Mot. at 44 n. 58 [Dkt. No. 8180].
[22] See FAAC at ¶¶ 49-50.

individuals.[23]  And MGA does not even address the requests that seek documents relating to Mattel prices and pricing strategies and guidelines (Request Nos. 1-5) which would show MGA's possession of the stolen trade secrets or – apart from acknowledging that they are not already covered by the Court's January 26 Order –the requests that seek documents relating MGA's pricing strategies and pricing decisions (Request Nos. 8-12) which would show use of the stolen information.

MGA also claims the Court's prior Order was "not limited to or based upon information allegedly taken by Machado, Trueba, or Vargas." Opp. at 10. But the time period makes clear that it was. Mattel's other allegations concern theft of pricing information in 2005 and 2006, long after Machado, Trueba, and Vargas joined MGA. Mattel is entitled to discovery into these later allegations.

### D. MGA's Remaining Arguments Fail

MGA's argument about several requests tailored to MGA's specific acquisition and disposition of Mattel's trade secret materials (Opp. at 19, Request Nos. 78-80, 90-96) distorts the scope of these highly relevant requests. As MGA recognizes, the term "MATTEL DOCUMENTS" has been defined; and at MGA's insistence, the known trade secrets have been exhaustively identified, both by Bates number and in hundreds of pages of interrogatory responses explaining the trade secrets reflected in those documents. The requests are clear and fair, and, as MGA has insisted Mattel do for far less relevant discovery than that requested here, MGA must conduct a diligent and reasonable search for documents responsive to them.

MGA's argument that it need not be compelled to produce information relating to its affirmative defenses because it is fully aware of the consequences of a failure to comply (Opp. at 20) should not be countenanced. Mattel needs this information now to appropriately develop and prepare its case, including to identify potential experts; a

---

[23] MGA's assertion that Mattel offers no explanation for why information from 2001 and 2002 is necessary to calculate an appropriate baseline is incorrect. See Mattel's Motion at 45-46 [Dkt. No. 8180].

subsequent or additional remedy such as sanctions is not a replacement for this discovery. MGA cannot dispute that this information is relevant, and it should be ordered now.

Finally, MGA does not address, much less refute, Mattel's detailed arguments as to why individual requests are relevant and should be compelled. See Mot. at 16-80. This, of course, was the reason the Court permitted Mattel leave to submit over-length briefing. That MGA submitted only a broad-brush, rhetorical and factually unsupported response almost two weeks later demonstrates that it has no meaningful defense on the individual requests.

## II. MGA MADE NO REASONABLE ATTEMPT TO MEET AND CONFER

As to every request at issue, MGA made a single proposal in meet and confer: six months of email for eight individuals, and all documents that *MGA* would rely on at trial. The condition – that Mattel withdraw *all* of the other requests for production at issue that relate to many other, key issues in this case – was wholly unreasonable. MGA's proposal ignored the requests dealing with pricing information, forecasting system information, other former employees, and the use of stolen Mattel product lines, among other things. Mattel offered a reasoned counterproposal, which MGA rejected out of hand. Accordingly, the requests should be compelled, and production ordered by a date certain.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that its motion be granted.

DATED: July 6, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By : /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.