1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building, 405 Howard Street
5   San Francisco, CA 94105
    Tel. (415) 773-5700/ Fax: (415) 773-5759
6
    WILLIAM A. MOLINSKI (State Bar No. 145186)
7   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
8   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
9   Tel. (213) 629-2020/Fax: (213) 612-2499
10  THOMAS S. McCONVILLE (State Bar No. 155905)
    tmcconville@orrick.com
11  ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza, Suite 1600
12  Irvine, CA 92614-2258
    Tel: (949) 567-6700/Fax: (949) 567-6710
13  Attorneys for MGA Parties

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                   SOUTHERN DIVISION

17  CARTER BRYANT, an individual,        Case No.  CV 04-9049-DOC (RNBx)

18          Plaintiff,                   Consolidated with:
                                         Case No. CV 04-9059
19      v.                               Case No. CV 05-2727

20  MATTEL, INC., a Delaware             Hon. David O. Carter
    corporation,
21                                       **MGA PARTIES' OPPOSITION TO
          Defendant.                     MATTEL, INC.'S BRIEF
22                                       REGARDING IN CAMERA REVIEW
                                         PURSUANT TO JUNE 18, 2010
23  AND CONSOLIDATED ACTIONS             ORDER DIRECTING ELECTRONIC
                                         PRODUCTION OF DOCUMENTS BY
24                                       MGA PARTIES**

25                                       **Phase 2**
                                         Discovery Cut-off:  TBD
26                                       Pre-trial Conference:  TBD
                                         Trial Date: TBD
27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................2

     A.    The Lists Mattel Seeks Identifies Active Files Without Regard
           To Relevance.........................................................................................2

     B.    Mattel's Request And Its Lists Are Yet Another Attempt To
           Obtain Complete Access To Mr. Larian's Hard Drives ......................3

ARGUMENT ..........................................................................................................7

I.     MATTEL HAS NO LEGITIMATE NEED FOR THE CONTENTS
      OF FILES THAT WERE NOT DELETED OR THAT ARE NOT
      RELEVANT TO THIS CASE ........................................................................7

II.    MATTEL HAS NO LEGITIMATE NEED FOR THE NAMES OF
      FILES THAT WERE NOT DELETED OR THAT ARE NOT
      RELEVANT TO THIS CASE ........................................................................9

III.   MGA'S IN CAMERA SUBMISSIONS WERE MADE IN
      RESPONSE TO COURT ORDERS AND SHOULD NOT BE
      PRODUCED ...............................................................................................10

CONCLUSION....................................................................................................10

**INTRODUCTION**

1    On five prior occasions, Mattel has sought access to the active user file

2  information contained on Mr. Larian's hard drives.  This Court and the Discovery

3  Master have rejected Mattel's attempts.  And still Mattel persists.  This motion is

4  the latest effort.

5    Under the guise of seeking evidence of spoliation, Mattel asks this Court to

6  provide it with the file names and related documents that Mattel's experts claim

7  were deleted.  However, the lists Mattel's experts have prepare are not lists of

8  information or relevant documents that were allegedly deleted.  Instead, Mattel has

9  taken the opportunity to review Mr. Larian's hard drives in order to prepare a list of

10  documents that appear on the hard drives without regard to whether those

11  documents were deleted and without regard to their relevance to this case.  Mattel's

12  experts have prepared lists that include files and documents that reference Mr.

13  Larian's personal and family matters.  They have prepared lists that include files

14  and documents that reference MGA's other business matters.  They have prepared

15  lists that include privileged information in this case.  In other words, no attempt was

16  made to cull the information for anything close to relevant materials, although

17  Mattel repeatedly agreed to a protocol that required this.

18    In fact, two of the three spreadsheets prepared by Mattel's experts are what

19  the experts admit they located on Mr. Larian's hard drives.  The third list prepared

20  purports to reflect items deleted by Mr. Larian.  However, that is far from true.

21    Thus, when Mattel now asks for these lists prepared by its experts, or

22  documents that relate to the lists they prepared, what Mattel is seeking is the catalog

23  of file names (and related documents) found on Mr. Larian's hard drives, without

24  regard to whether these file names reflect relevant or even deleted documents.  To

25  place a finer point on it, Mattel is simply—again—asking this Court to allow it

26  access to Mr. Larian's hard drives.  Such a request has already been denied Mattel.

27  This renewed request should likewise be denied.

MGA'S OPPOSITION TO MATTEL'S BRIEF RE IN CAMERA
REVIEW PURSUANT TO JUNE 18, 2010 ORDER
CV 04-09049 DOC (RNBx)

1

2

3

Finally, this Court ordered MGA to file materials *in camera*.  MGA did so

with the understanding that the materials would remain *in camera*.  Mattel should

not be allowed access to those materials.

4

5

6

7

8

9

10

11

12

In the end, Mattel first obtained an order allowing it to review Mr. Larian's

hard drives by claiming that it did not seek access to the contents of Isaac Larian's

hard drives, which it affirmed, time and again.  But once it obtained access, Mattel

has at every opportunity demanded unfettered access to Mr. Larian's files or, short

of that, information from the hard drives in the form of file names that reveal what

is on Mr. Larian's hard drives.  Mattel asks for the inch, then demands the mile–

time and again.  This shameless conduct, not "MGA's obstructionism" has delayed

the resolution of this matter by spawning endless, repetitive rounds of motion

practice.  This motion is the latest attempt.  It should be denied.

13

### STATEMENT OF FACTS

14

15

**A.**   **The Lists Mattel Seeks Identifies Active Files Without Regard To
Relevance.**

16

17

18

19

20

21

22

23

Claiming to be looking for evidence of spoliation, Mattel's experts have

reviewed the hard drives of Mr. Larian and created three excel spreadsheets.  These

spreadsheets identify the file names of documents.  Declaration of Samuel S. Rubin

¶ 3.  They are not limited to file names that might have some relevance to this case.

Instead, the files listed include personal information of Mr. Larian, including files

that reference his family's affairs.  The file names include references to other

business matters of MGA having nothing to do with this case.  The file names

include privileged information.

24

25

26

To top it off, the Excel spreadsheets list files that are active on Mr. Larian's

computer.  Indeed, two of the three spreadsheets prepared by Mattel's experts, 42

LLC, explicitly so state.  Rubin Decl. ¶ 4.

27

28

One spreadsheet is entitled "Deleted artifacts not found on parent

filesystem.xlsx."  This list identifies active files.  It identifies items that, according

- 2 -

1    to Mattel's experts, 42 LLC, were deleted from one of Mr. Larian hard drives, but

2    were found on another.  Rubin Decl. ¶ 3.

3           The second spreadsheet also identifies active files.  It is entitled "deleted

4    artifacts not found on parent in email.xlsx."  According to 42 LLC, this list

5    identifies emails that were found to be deleted in one email storage file on Mr.

6    Larian's hard drives, but were found active in another email storage file.  Rubin

7    Decl. ¶ 3.

8           The last of the lists that 42 LLC prepared contains a list of files that 42 LLC

9    identifies as deleted.  This list does not acknowledge that the files identified were

10   found elsewhere or could be found elsewhere on Mr. Larian's hard drives.

11   Moreover, the fact is that Mattel's experts did not actually limit the list to files that

12   could have been deleted by Mr. Larian.  The list instead includes, for example,

13   temporary files, i.e., files created by a computer during its normal operations.

14   Rubin Decl. ¶ 6.

15          Of the 5,587 files that 42 LLC claimed were deleted, 3,563 were files found

16   in active file format using the file names of the documents only.  Of the remaining

17   files, there are only 217 that could be considered documents bearing on the issue of

18   spoliation.  Of these, with the exception of 19 documents, the documents (198)

19   were located elsewhere in active file format.  Rubin Decl. ¶ 5.

20          Finally, as to the 19 documents that were not located in active file format,

21   these documents bear no relevance to this case.

22          **B.     Mattel's Request And Its Lists Are Yet Another Attempt To
                     Obtain Complete Access To Mr. Larian's Hard Drives.**

23
            That Mattel would have its experts prepare lists that contain active files
24
     without regard to any relevance to this case is explained by the fact that this is what
25
     Mattel has been seeking all along, complete access to Mr. Larian's hard drives.  It is
26
     also a request that has been denied Mattel at every stage of this process.[1]
27

28   [1] The full history of Mattel's attempts to gain full access and the denial of that
     access is set forth in Dkt. No. 7467 (MGA's Obj. to Rec. 5 of the Electronic

MGA'S OPPOSITION TO MATTEL'S BRIEF RE IN CAMERA
REVIEW PURSUANT TO JUNE 18, 2010 ORDER
CV 04-09049 DOC (RNBx)

1     ***Mattel Seeks Access In 2008 And Then Agrees It Does Not Want Full***

2     ***Access.***  Mattel first sought access to Mr. Larian's hard drives during Phase 1,

3     claiming that the hard drives were responsive to its First Set of Requests for

4     Documents and Things on Isaac Larian.  The Discovery Master denied the request

5     as a "fishing expedition."  Dkt. No. 1439 at 16-17 (Dec. 31, 2007 Discovery Master

6     Order).  Mattel appealed to the District Court, recasting its demand for the hard

7     drives as an attempt to uncover evidence of spoliation.  Dkt. No. 2186 (Mattel's

8     Reply Br.) at 27.  At the February 25, 2008 hearing on Mattel's motion, Mattel

9     claimed for the first—and not the last—time that its demand was narrowly tailored

10    to "prove the predicate act of deletion of information from the hard drives" and

11    assured the Court that it was not seeking the actual content of documents

12    themselves.  Dkt. No. 6074 (7/27/09 Hurst Decl.) Ex. B (2/25/08 Tr. 264).  On

13    February 27, 2008, the District Court issued an order allowing Mattel's experts to

14    take a forensic image of Mr. Larian's hard drives for the limited purpose of

15    determining "whether, when, and by whom any information was deleted, written

16    over, lost, exported, moved, spoliated or otherwise rendered inaccessible or

17    unreadable," whether any such attempts were made, and whether any such

18    information could be recovered.  Dkt. No. 2362 at 3 (February 27, 2008 Order).

19    In May 2008 Mattel drafted, and MGA agreed to, a stipulated protocol in

20    accord with the Court's order that allowed Mattel's consultant to inspect forensic

21    images of the Larian hard drives, including metadata associated with the files

22    written therein.  Dkt. No. 6452 (8/27/09 Hurst Decl.) Ex. G.  The protocol expressly

23    did *not* allow Mattel's expert to access the user-generated content of active files that

24    existed on the hard drives.  Moreover, the protocol required Mattel to run key word

25    searches before conducting any analysis. Dkt. No. 6452 (8/27/09 Hurst Decl.) Ex.

26    G ¶ 5(a)(ii). Mr. Larian thereafter turned over seven hard drives for inspection.[2]

27    Discovery Master's Report and Recommendation of January 21, 2010).

28    [2] As previously briefed before this Court, Mattel's experts then issued a report, not
      used at the Phase 1 trial given that the claimed files deleted were found in active

MGA'S OPPOSITION TO MATTEL'S BRIEF RE IN CAMERA
REVIEW PURSUANT TO JUNE 18, 2010 ORDER
CV 04-09049 DOC (RNBx)

1    ***In March 2009, Mattel Again Wants Full Access And Then Again Agrees***

2    ***That It Will Not Have Complete Access.***  In March 2009, Mattel resurrected its

3    demand for access to the entire contents of Mr. Larian's hard drives under the guise

4    of a "supplemental production."  Dkt. No. 5510 (Discovery Master Order No. 34) at

5    4.  The Discovery Master ordered a production but for a second time flatly denied

6    Mattel's demand for access to the active user files on Mr. Larian's drive.  *Id.* at 9-

7    11.

8         After Mattel appealed the Discovery Master's order, on August 24, 2009,

9    Mattel again agreed to follow a protocol that did not allow direct access to Mr.

10   Larian's active files.  Mattel's expert, Christopher Pavan, signed an agreement

11   expressly stating that 42 LLC would abide by the May 2008 protocol and agree to

12   be bound by Discovery Master Order No. 34.  Dkt. No. 6452 (8/27/09 Hurst Decl.)

13   Ex. H.  And again, the protocol required the running of key word searches.  Dkt.

14   No. 6452 (8/27/09 Hurst Decl.) Ex. G ¶ 5(a)(ii).

15        At the hearing on Mattel's appeal, MGA proposed a compromise allowing

16   Mattel access to active user files only in the instance that MGA's expert required

17   access to the content of an active user file in order to rebut an allegation that the file

18   was deleted.  2/2/10 MGA Not. of Lodging (12/11/09 Parker Decl. Ex. A (8/31/09

19   Tr. 7-8)).  Mattel agreed, stating that MGA's proposal was "substantially along the

20   lines of what we have been proposing" and claiming—again—that "[w]e've never

21   said that we want to see every single active files on those drivers [sic]; that has

22   never been our position."  *Id.* at 9.  The Court approved the protocol, noting "[w]hat

23   I like about this proposal is that it doesn't go down that road of getting into all of

24   the active files and all of the potential privilege and the quagmire that I can see

25   erupting if that was all turned over."  *Id.*

26        ***Despite The Agreement, Mattel's Experts List Active Files.***  On August 31,

27   2009, 42 LLC began a review of Mr. Larian's hard drives—and promptly began

28   form.  *See* Dkt. No. 7467 at 4-6.

1   deviating from the stipulated protocol.  Contrary to the protocol, Mattel's expert did

2   not run a word search to narrow the scope of its review.  Dkt. No. 6452 Ex. G  ¶

3   5(a)(ii); 2/2/10 MGA Not. of Lodging (12/11/09 Rubin Decl. ¶ 10(b)).  Rather,

4   Mattel's expert was inspecting every file, including user-generated active files.

5   Worse, Mattel's expert collected information that could be used to garner non-

6   public information, information unrelated to this case, private information, and

7   privileged information.  Mattel's expert intended to provide such information to

8   Mattel, including user generated metadata, Mr. Larian's internet activity, a list of

9   active file names, and logs of events, such as when the system was turned on or off

10  and who logged into the system.  2/2/10 MGA Not. of Lodging (12/11/09 Rubin

11  Decl. ¶ 10).  MGA objected.

12  ***Mattel Again Agrees It Will Not Obtain Information Concerning Active***

13  ***User Files.***  On November 10, 2009, counsel for MGA and Mattel met and

14  conferred to resolve the dispute and agreed to a protocol in line with the stipulation

15  reached by the parties at the hearing before Judge Larson.  2/2/10 Not. of Lodging

16  (12/11/09 Hurst Decl.).  Mattel agreed again to a protocol that did not contemplate

17  that MGA would turn over the contents of active files to Mattel or its experts.  *Id.*

18  ***One Week Later, Mattel Renews Its Request For Active User Information***

19  ***Before The Electronic Discovery Master.***  Only one week after agreeing to the

20  protocol, on November 18, Mattel reneged on its agreement and demanded again

21  that it be given unrestricted access to the Larian hard drives.  *See* 2/2/10 Not. of

22  Lodging (Mattel's Mot. To Compel Re Electronic Discovery Issues).  Mattel's brief

23  made no attempt to explain how this request was different from any of its previous

24  attempts to gain unfettered access to the Larian media, made no mention of the

25  Court's previous order denying such requests, made no mention of the Discovery

26  Master's denial of such a request, made no mention of Mattel's May 18, 2008

27  protocol prohibiting such access, and made no mention of the November 10

28  protocol it had agreed to—on the record—eight days earlier.  *See id.*

MGA'S OPPOSITION TO MATTEL'S BRIEF RE IN CAMERA
REVIEW PURSUANT TO JUNE 18, 2010 ORDER
CV 04-09049 DOC (RNBx)

1      ***Mattel Makes The Same Request Before This Court, Which This Court***

2      ***Denies.***  Mattel's fifth bite at the apple launched yet another round of motion

3      practice that did not conclude until May 13, 2010 when this Court issued an order

4      affirming the November 10, 2009 protocol, which expressly does not allow Mattel

5      access to the files on the Larian media.  Dkt. No. 7709; Dkt. No. 7860 (May 13,

6      2010 Order); *see* Dkt. No. 7652 (Mattel's Submission in Response to Feb. 27, 2010

7      Order).

8            Thus, after more than two years of repeated attempts to gain unfettered

9      access to the Larian hard drives, after multiple denials of these efforts, after

10     entering into multiple stipulations agreeing to abide by reasonable limitations on

11     access to the contents of the files on the Larian hard drives, Mattel again wants

12     active file information.

13                                **ARGUMENT**

14     **I.     MATTEL HAS NO LEGITIMATE NEED FOR THE CONTENTS OF**
       **FILES THAT WERE NOT DELETED OR THAT ARE NOT**
15     **RELEVANT TO THIS CASE.**

16           Mattel's latest demands are nothing more than the sixth voyage of the fishing

17     expedition it has been on since 2007.  42 LLC's "analysis" is geared specifically to

18     obtain for Mattel that which Mattel has been denied at every stage.  It is geared to

19     gather as much information concerning the active files on Mr. Larian's hard drives

20     as possible.  This is demonstrated by the fact that two of the three spreadsheets

21     prepared by 42 LLC, which Mattel seeks, explicitly admit that the files identified

22     have been located.  And as to the third spreadsheet, as demonstrated, the vast

23     majority of those files were located as well.  Those not located bear no relevance to

24     this case.

25           Thus, Mattel's claim that the analysis of its experts is justification for

26     compelling either the disclosure of file names or the production of thousands of

27     documents from Mr. Larian's hard drive without regard to relevance or privacy

28     should be rejected.  Mot. at 2.  This Court and the Discovery Master have denied

MGA'S OPPOSITION TO MATTEL'S BRIEF RE IN CAMERA
REVIEW PURSUANT TO JUNE 18, 2010 ORDER
CV 04-09049 DOC (RNBx)

1    Mattel access to active file information and active files and there exists no good, or

2    even new, reason to accede to Mattel's demand.  The purpose of the spoliation

3    analysis conducted by the parties has never been the wholesale production of the

4    contents of Mr. Larian's hard drives or wholesale production of information

5    concerning those files.  The purpose of the analysis is, and always has been, limited

6    to determining whether relevant information has been deleted.

7         Production of the contents of Mr. Larian's active files or the file names does

8    nothing to advance this purpose—by definition these files have not been deleted

9    and are not evidence of spoliation.  MGA's experts did not require access to the

10   content of files found in the active space of Mr. Larian's hard drive to show that

11   they were not deleted.

12        Similarly, Mattel claims that it is entitled to all documents relied on by

13   MGA's experts to rebut the claim of deletion.  However, with regard to all but 217

14   documents, MGA's expert did not rely on the content of the files.  It identified the

15   documents by file name.  Rubin Decl. ¶ 5.

16        And as for the remaining 217 documents, there is no reason to provide those

17   to Mattel.  First, Mattel, at most, is only to be provided documents that are relevant

18   to this case.  Mattel says otherwise arguing that MGA "did not argue that Mattel's

19   inspection should be limited based on 'relevance' until nearly a year after the [May

20   18, 2009] Order issued and months after Mattel began its inspection."  Mot. at 5.

21   However, that this is flatly not true is established by the protocol that Mattel

22   affirmed and re-affirmed in May 2008 and at every point until November 2009,

23   which expressly required the use of key words so that irrelevant information would

24   not be captured.

25        Second, this Court now has all of the documents, including the 217

26   documents at issue.  Given that the MGA Parties have already provided the Court

27   with electronic copies of the allegedly deleted content of Mr. Larian's hard drives,

28   there is absolutely no reason why any production to Mattel could be necessary.

- 8 -

1   Mattel's protestation that it is only trying to ease the burden on the Court by

2   agreeing to accept production of documents is as risible as it is shameless. *See*

3   Mot. at 4-5.  Mattel has asserted time and again that it was not seeking production

4   of documents when it served its purpose to do so, only to turn around and demand

5   such production as soon as any opportunity presented itself.  Mattel's offer to "take

6   on the burden of reviewing the files," Mot. at 4, is merely the latest, baldest attempt

7   to access as much of Mr. Larian's hard drive as it can lay hands on.

8   **II.    MATTEL HAS NO LEGITIMATE NEED FOR THE NAMES OF
        FILES THAT WERE NOT DELETED OR THAT ARE NOT**

9   **RELEVANT TO THIS CASE.**

10          Mattel's fallback position is that it wants "only" the extensive catalog of file

11   names compiled by its experts.  Mattel does not need the names of these files for

12   any legitimate purpose, nor is it any more entitled to them than it is to the contents

13   of the files.  Mattel's experts prepared three spreadsheets.  Only one of the three

14   spreadsheets identifies documents that were allegedly deleted and therefore could

15   be relevant at all to any spoliation analysis.  The other two spreadsheets on their

16   face concede that they describe files that were not in fact deleted.  Taken together,

17   however, the three spreadsheets appear to be an effort by Mattel's experts to catalog

18   the entire contents of the Larian Media for purposes other than a spoliation analysis.

19          Each of the three spreadsheets identifies documents in such a way that both

20   private and privileged content of many files is referenced.  There are, for example,

21   references to Mr. Larian's children and disclosures of privileged communications

22   from MGA's outside attorneys, including many e-mails sent in connection with this

23   litigation.  Both because two of the spreadsheets are irrelevant to any spoliation

24   analysis and because all three of the spreadsheets disclose private and privileged

25   information, MGA declined to disclose them to Mattel in the form prepared by 42

26   LLC.  Even excepting the file names of privileged communications and the private

27   and personal documents of Mr. Larian, many of the remaining file names disclose

28   information that has no relevance to this case and reference MGA's and Mr.

MGA'S OPPOSITION TO MATTEL'S BRIEF RE IN CAMERA
REVIEW PURSUANT TO JUNE 18, 2010 ORDER
CV 04-09049 DOC (RNBx)

1    Larian's other business matters.  There is no reason that Mattel requires access to

2    this information.

3    **III.    MGA'S *IN CAMERA* SUBMISSIONS WERE MADE IN RESPONSE
          TO COURT ORDERS AND SHOULD NOT BE PRODUCED.**

4

5         Finally, Mattel's argument that MGA's June 9 and June 28 *in camera*

6    submissions constitute improper *ex parte* submissions lacks merit.  Both

7    submissions were made in response to Court orders.  The documents submitted to

8    the Court were provided to explain the content and form of the submissions MGA

9    was compelled to produce, without which the Court would have had to review

10   documents and spreadsheets absent any context in which to place the information.

11   Disclosure of these materials, which themselves reveal the types of privileged and

12   private information identified above that Mattel does not need and should not be

13   provided subverts the purpose of providing such materials *in camera* in the first

14   instance and should not be compelled.

15                              **CONCLUSION**

16        For the foregoing reasons, Mattel's demands that it be given access to the

17   contents of the files on Isaac Larian's hard drives, that it be given access to the

18   names of the files on Isaac Larian's hard drives, and that the content of MGA's *in*

19   *camera* submission to the Court should be denied.

20   Dated: July 7, 2010            ORRICK, HERRINGTON & SUTCLIFFE LLP

21

22                                 By:    /s/ *Warrington S. Parker III*
                                         WARRINGTON S. PARKER III
23                                       Attorneys for MGA Parties

24

25

26

27

28

MGA'S OPPOSITION TO MATTEL'S BRIEF RE IN CAMERA
REVIEW PURSUANT TO JUNE 18, 2010 ORDER
CV 04-09049 DOC (RNBx)