MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:  415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br><br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br><u>Hon. David O. Carter</u><br><br>**MGA OPPOSITION TO MATTEL MOTION TO COMPEL ATTORNEY-CLIENT PRIVILEGED DOCUMENTS** |

# INTRODUCTION

Mattel's motion to compel MGA's attorney-client privileged information makes impossible factual leaps to argue that Ms. Goveia-Gordon somehow waived MGA's privilege protections. Even a cursory review of Goveia-Gordon's actual testimony, however, reveals that no such waiver occurred. Goveia-Gordon did not identify a single specific document that she used to refresh her recollection for purposes of the deposition, much less an attorney-client privileged document. Moreover, Mattel made no effort to query Goveia-Gordon on what specific attorney-client privileged document, if any, she used to refresh her recollection of substantive events for purposes of the deposition. To the contrary, Goveia-Gordon testified only that she reviewed "some" documents and that they were reviewed for the purposes of familiarizing herself with timing of events. As such, the attorney-client privilege was not waived and Mattel's motion must be denied.

# ARGUMENT

## I. MATTEL IS NOT ENTITLED TO ATTORNEY-CLIENT COMMUNICATIONS

The very testimony on which Mattel relies in claiming a waiver of the attorney-client privilege belies Mattel's argument. The Goveia-Gordon deposition testimony cited by Mattel in its motion does not reference a single specific document, attorney-client privileged or otherwise, that Goveia-Gordon reviewed to refresh her recollection. Rather, Mattel elicited only vague and ambiguous testimony concerning general references to documents that Goveia-Gordon thought she might have reviewed.[1] This is not sufficient to establish a waiver of the privilege.

---

[1] MGA's counsel objected to this specific line of questions on the ground that the questions were vague. Mattel, however, chose to omit the objections from the quoted portions of the transcript at issue. A copy of the complete transcript will be provided upon the Court's request.

MGA Opposition To Mattel Motion To Compel Attorney-
Client Privileged Documents
Case No. CV 04-9049 DOC (RNBx)

1    As detailed in Mattel's motion, the only questions concerning what, if
2    anything, Goveia-Gordon reviewed in preparation for her deposition were vague
3    and general.  *See* Motion to Compel, 3:3-4.  In response to the general question,
4    Goveia-Gordon testified equally vaguely that: (i) it could have been Brisbois'
5    personnel file, to familiarize herself with timing; (ii) it could have been copies of
6    some of the documents that had been supplied to counsel; or (iii) it could have been
7    a copy of something she was pointing to at the deposition.  *Id*. at 4-7.  Rather than
8    delve further into the specific documents that Goveia-Gordon was referring to in
9    her response, Mattel instead asked another broad and unintelligible question.
10   Mattel asked if Goveia-Gordon kept a separate file on the "matter" in her office.  *Id*.
11   at 7.  Goveia-Gordon again provided an equally vague response that she did keep a
12   separate copy of the documents that were in Brisbois' personnel file and that she
13   had already supplied that information to counsel.  *Id*. at 8-10.  Yet again, Mattel
14   failed to inquire as to the specific contents of that file.  Mattel did not ask if the file
15   was prepared at the request of counsel and did not ask if it was prepared to respond
16   to written discovery.  Nor did Mattel ask questions to determine whether Goveia-
17   Gordon reviewed every document in that file, whether she had reviewed attorney-
18   client communications for the purposes of the deposition or even whether that file
19   contained any attorney-client privileged communications.  Rather the subsequent
20   question only asked if "those" documents were reviewed in connection with the
21   preparation of her deposition.  *Id*. 13-15.  The question did not establish whether
22   "those" documents referred to the personnel file from the original question, the
23   documents provided to counsel or to the copy of documents Goveia-Gordon
24   maintained in her separate file.  The questioning did not even clarify if "those"
25   documents referred specifically to attorney-client communications.
26       Finally, after an exchange between counsel, Mattel asked if there were any
27   documents in Goveia-Gordon's office that she reviewed that may have been
28   generated by legal counsel and Goveia-Gordon responded that there may have been

1  emails. *Id.* at 2-4. However, Mattel did not follow up to establish whether Goveia-
2  Gordon reviewed any attorney-client emails for purposes of preparing for the
3  deposition. As to the more general question concerning any of "those" documents,
4  Goveia-Gordon testified only that they may have refreshed her recollection about
5  the timing. *Id.* at. 5-6. In sum, none of the testimony suggests that Goveia-Gordon
6  reviewed any specific attorney-client information in preparation for her deposition
7  and Mattel did not set a proper foundation for arguing that Goveia-Gordon did.
8  Absent this key testimony, the privilege cannot be deemed waived. *See Nutramax*
9  *Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 475 (D. Md. 1998) (rejecting
10 disclosure where there was no evidence of review of work-product documents for
11 deposition preparation).

12         Neither is Mattel assisted in its waiver argument by the authorities on which
13 it relies. To the contrary, Mattel's own cited case law notes that Federal Rule of
14 Evidence 612 itself has been narrowly applied in the context of a waiver of the
15 privilege. *See U.S. v. 22.80 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985).
16 (noting that "any privilege or work product protection against disclosure is deemed
17 waived ***as to those portions so reviewed***."). In *22.80 Acres of Land*, the court
18 specifically found that deposition testimony had "clearly" demonstrated that
19 specific work product documents were used to refresh the deponents recollection.
20 *Id.* at 25-26. As a result, the court found a waiver of the privilege an ordered their
21 production. The same result occurred in *Pittsburgh Steel Corp. v. Underwriters*
22 *Labs., Inc.*, 81 F.R.D. 8, 10 (N.D. Ill. 1978), where the court held that specific
23 attorney-client communications were reviewed to prepare for a deposition.
24 Specifically, the court noted that the deponent, with the permission of one of the
25 plaintiff's employees, borrowed three company files, one of which was entitled
26 "Communications with Counsel." *Id.* at 9. The court also noted that the specific
27 file was returned to plaintiff's counsel the day before the deposition and concluded
28

1  that the file must therefore have been used to refresh the deponent's recollection for
2  the deposition. *Id*. at 10. No such specific finding can be made in this instance.

3        Here, Goveia-Gordon's testimony is that she retained copies of documents
4  that she had been asked to collect and supply to counsel. *See* Motion 3:8-10. There
5  is no indication that Goveia-Gordon maintained the files for the purpose of
6  refreshing her recollection prior to her deposition and there is no indication that she
7  reviewed attorney-client privileged information.[2] Moreover, even if her testimony
8  concerning her memory being refreshed as to certain dates was in reference to
9  privileged materials, under the authorities cited this would mean, at best, only that
10 the date portion of those documents would need to be produced.

11       Finally, MGA's right to protect its attorney-client privileged communications
12 clearly outweighs any purported need to cross-examine Goveia-Gordon. While
13 Mattel asserts that Goveia-Gordon testified as to seven things on which it is seeking
14 cross-examination material, none of those seven things relate to the items Goveia-
15 Gordon reviewed or Goveia-Gordon's reasons for reviewing them. As she testified,
16 she reviewed "some" documents for the purpose of refreshing her recollection as to
17 timing of events. Mattel's seven topics, however, concern the substance of MGA's
18 actions following it learning that Brisbois had maintained personal copies of her
19 Mattel work product after she left Mattel. Testimony regarding the substance of
20 these events came from Goveia-Gordon's independent knowledge or from talking
21 to third parties, including Brisbois. To the extent that Mattel wishes to cross-

---

[2] *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458 (D. Md. 1998), concerned the waiver of attorney work product privilege, where an attorney collected a sub-set of documents produced to the opposing side in written discovery, disclosed them to the deponent, but then refused to produce the sub-set based on the work product privilege. After reviewing the documents *in camera*, and noting that they did not contain "pure" opinion attorney work product, such as discussion of case strategy, litigation theories or mental impressions, the court ordered their production. The circumstances in the instant case are entirely distinct. Nonetheless, it is noteworthy that the *Nutramax* court refused to compel production of documents used to prepare other witnesses, where there was no proof that they were used to refresh the witnesses' memory for purposes of testifying. *Id*. at 474-475.

examine her on those sources of information, they are free to do so and could have at her deposition.  There is no need to destroy the privilege to allow for that examination.

## II. CONCLUSION

For the foregoing reasons, Mattel's Motion to compel attorney-client privileged information should be denied.

Dated:  July 8, 2010              Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   /s/ William A. Molinski
William A. Molinski
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN