**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)             Date: July 8, 2010
Title: CARTER BRYANT v. MATTEL, INC., AND CONSOLIDATED ACTIONS

DOCKET ENTRY
[I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                       Date:_____ Deputy Clerk: _____

PRESENT:

                  THE HONORABLE DAVID O. CARTER, JUDGE

   Kathy Peterson                                     Not Present
Courtroom Clerk                                 Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

   NONE PRESENT                              NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING MOTION TO QUASH SUBPOENA, STRIKING MOTION TO COMPEL, AND GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER

        Before the Court is MGA Entertainment, Inc.'s ("MGA") Motion to Quash Mattel, Inc.'s ("Mattel") Subpoena to the Internal Revenue Service ("IRS"); Mattel's Cross-Motion to Compel MGA to Execute a Release to Permit the IRS to Disclose the Subpoenaed Documents; and MGA's Motion for Protective Order. Upon consideration of the moving, opposing and replying papers, this Court (1) GRANTS MGA's Motion to Quash, (2) STRIKES Mattel's Cross-Motion to Compel, and (3) GRANTS IN PART AND DENIES IN PART MGA's Motion for Protective Order.

   **I.**    **Background**

        The three motions involve Mattel's subpoena to the IRS to produce documents regarding a purported MGA agreement to indemnify Carter Bryant ("Bryant") for his legal expenses. Mattel first requested MGA to produce such an agreement in March 2005. Docket No. 7984, at 1-2. MGA asserted that no indemnity agreement for Bryant's legal expenses existed. *Id.* at 2.

The Court then appointed a Forensic Auditor to review MGA's finances and provide a report to the Court for its determination of whether or not to appoint a receiver. Docket No. 4657. The Forensic Auditor came across a March 2009 document during his review that was theretofore not produced to Mattel entitled, "Presentation to the Internal Revenue Service Appeals Division." Docket No. 7984, at 3. The presentation stated, "MGA paid Carter Bryant's legal expense to fulfill its obligation under the indemnification agreement and to protect its profits and business." *Id*. MGA subsequently produced this document in November 2009. *Id.*

Mattel thereafter deposed the former Senior Vice President of Finance for MGA, Brian Wing, in February 2010. Mr. Wing confirmed the existence of an agreement for MGA to indemnify Bryant, and stated that it was sent to the IRS. *Id.* at 3-4. Mattel requested MGA to produce this document in response. Docket No. 7857, at 1.

MGA argues it produced all of the agreements it entered into with Bryant, as well as all related documentation. Docket No. 7856, at 1. MGA produced two retainer letters between MGA and law firms representing Bryant (Docket No. 7856, at 2); two letter agreements between MGA and Bryant from 2000 and 2004 (Docket No. 8031, at 4); and an indemnity demand letter from MGA to Bryant (Docket No. 7984, at 4). MGA insists however that no agreement exists for MGA to indemnify Bryant. Docket No. 7857, at 1.

Mattel subpoenaed the IRS on May 5, 2010 seeking documents related to the purported indemnity agreement between Bryant and MGA. Docket No. 7946-1, at 15. The IRS refused Mattel's request on grounds that the information sought is confidential and does not pertain to Mattel. Docket No. 8048, at 17. The IRS went on to say however that it would disclose the requested information if MGA signed a written consent form authorizing the IRS to disclose its tax records to Mattel. *Id.* MGA thereafter moved this Court to quash Mattel's subpoena on privacy and relevance grounds. Docket No. 7856. Mattel responded that MGA lacks standing to bring a motion to quash this subpoena, and that the subpoena is nonetheless proper. Docket No. 7984.

II.     Discussion

A party may serve a subpoena pursuant to Rule 45 in order to obtain designated documents or other information. Fed. R. Civ. P. 45(a). The party subject to a subpoena's request may move to quash or modify a subpoena in order to prevent the disclosure of the requested information. Fed. R. Civ. P. 45(c)(2)(B).

   A.     Standing

A party has standing to quash or modify a subpoena pursuant to Fed. R. Civ. P. 45 when

(1) it is the party subjected to the subpoena and/or (2) the information sought by the subpoena is the moving party's privileged or protected material. *See* Fed. R. Civ. P. 45(c)(2)(B) and 45(c)(3)(A)(iii); *Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1068 (9th Cir. 1983) (citing *Donaldson v. United States*, 400 U.S. 517, 523 (1971)), *rev'd on other grounds*, 467 U.S. 735 (1984); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 695 (D. Nev. 1994).

MGA is not the recipient of Mattel's subpoena. Nor can MGA claim its tax return information is privileged because tax returns do not enjoy an "absolute privilege." *Premium Serv. Corp.*, 511 F.2d 225, 229 (9th Cir. 1975) (citing *St. Regis Paper Co. v. United States*, 368 U.S. 208, 219 (1961)).

However, courts have long recognized a party's standing to move to quash or modify a subpoena seeking its tax return and financial information from third parties on the grounds that the party has a privacy interest in such information. *See Abu v. Piramco Sea-Tac Inc.*, No. C08-1167RSL, 2009 U.S. Dist. LEXIS 12626, at *3 (W.D. Wash. Feb. 5, 2009) ("a plaintiff has standing to seek to quash a subpoena issued to a third party where the plaintiff asserts a legitimate privacy interest in the material sought."); *Ellis v. City of New York*, 23 F.R.D. 109 (S.D.N.Y. 2007) (granting plaintiff's motion to quash defendant's subpoena of the IRS because information was irrelevant to the action and no compelling need)*; Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 U.S. Dist. LEXIS 81317, at *12-13 (D.N.J. Oct. 14, 2008) (recognizing defendants' standing to quash subpoena directed at third party financial institutions seeking defendants' personal bank account information); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003) (recognizing defendant's standing to quash or modify plaintiff's subpoena to defendant's bank because defendant had a "personal right" to his bank account records).

This Court agrees with these decisions. A party not subject to a subpoena has standing to move to quash or modify a subpoena served on a third party to protect the confidentiality of its tax records because the serving party could circumvent any Rule 45(c)(2)(B) limitations by serving a subpoena on a third party that lacks a confidentiality interest in the subpoenaed information. Moreover, courts recognize that this privacy interest in tax return information *sought from the IRS* is comparable to protected material. *See Church of Scientology of California v. IRS*, 484 U.S. 9, 15, 18 (1987) (referring to tax returns and return information under 26 U.S.C. § 6103 as "protected")*; Premium Serv. Corp.*, 511 F.2d at 229; *Stokwitz v. United States*, 831 F.2d 893, 894 (9th Cir. 1987) (stating § 6103 was "clearly designed to protect the information flow between taxpayers and the IRS by controlling the disclosure by the IRS of information received from taxpayers."); *Ellis*, 243 F.R.D. at 111 (holding "[t]ax returns qualify as protected matter. . . ."). MGA thus has standing to seek a motion to quash Mattel's subpoena of the IRS.

      B.    **Motion to Quash**

Courts must quash or modify a subpoena that, *inter alia*, "requires disclosure of

privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).Tax returns are not privileged material. *Premium Serv. Corp.*, 511 F.2d at 229 (citing *St. Regis Paper Co.*, 368 U.S. at 219). Courts however recognize tax returns and tax return information sought from the IRS as protected matter pursuant to 26 U.S.C. § 6103. *See Church of Scientology of California*, 484 U.S. at 18; *Stokwitz*, 831 F.2d at 894; *Laxalt v. C.K. McClatchy*, No. 86-0051, 1987 WL 1361998, at *2 (D.D.C. March 12, 1987); *Beller & Keller v. Kindor*, No. 94 CIV 7682(RPP), 2003 WL 21693869, at *2 (S.D.N.Y. June 4, 2003).

26 U.S.C. § 6103 defines what information is protected matter. Section 6103(a) states that "[r]eturns and return information shall be confidential. . . " and no IRS employee "shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." Returns are "any tax or information return, declaration of estimated tax, or claim for refund required by . . . the Secretary." 26 U.S.C. § 6103(b)(1). Return information is, *inter alia*,

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments . . . or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

26 U.S.C. § 6103(b)(2)(a).

Mattel requests the IRS to produce all documents and communications relating to any agreement between MGA and Bryant. Docket No. 7946, at 6. Mattel also seeks all communications and submissions between MGA and the IRS between January and May of 2009. *Id.* There is little doubt that the information sought by Mattel encompasses material "furnished to" the IRS to determine "the existence, or possible existence" of "any tax, penalty, interest, fine, forfeiture, or other imposition, or offense. . . ." § 6103(b)(2)(a).

Mattel responds that section 6103's protections extend to tax returns, not unprivileged pre-existing documents submitted to the IRS. Docket No. 8048, at 2-3. However, "tax returns" and "tax return information" are defined terms and those terms encompass the materials sought by Mattel.[1]

---

[1] Mattel likens MGA's delivery of the hypothetical Bryant indemnification agreement to the IRS to a client's ill-fated attempt to shield discoverable materials by turning the materials over to his attorney and thereafter disingenuously invoking the attorney-client privilege. The argument is unavailing. Section 6103 confers protected status on materials

For the foregoing reasons, the Motion to Quash is GRANTED pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii). The material sought by the subpoena requests to the IRS is protected by 26 U.S.C. § 6103.

### C. Motion to Compel

Mattel moves the Court to compel MGA to execute a release permitting the IRS to disclose MGA's tax return information. Mattel's Motion presents the Court with an inartful procedure for compelling the production of relevant information in MGA's custody. The Court finds it more prudent to simply order MGA to produce certified copies of the tax return information submitted to the IRS to the extent such information includes the Bryant-MGA indemnification agreement that is the subject of the instant Motions.

Though Mattel's subpoena to the IRS must be quashed because it impermissibly seeks the production of protected material, *see Church of Scientology of California*, 484 U.S. at 18; *Stokwitz*, 831 F.2d at 894; *Laxalt*, 1987 WL 1361998, at *2; *Beller & Keller*, 2003 WL 21693869, at *2, that very material is still discoverable when sought from MGA, *see St. Regis Paper Co. v. United* States, 368 U.S. 208, 218-19 (1961) ("although tax returns . . . are made confidential within the government bureau, Internal Revenue Code of 1954, §§ 6103, 7213(a), copies in the hands of the taxpayer are held subject to discovery"); *Heathman v. United States District Court for the Central District of California*, 503 F.2d 1032, 1035 (denying defendant's writ of mandamus and prohibition directing district court to vacate its order requiring defendant's accountants to deliver defendant's trust's tax returns, and holding § 6103 "only restricts the dissemination of tax returns by the government and that this section does not otherwise make copies of tax returns privileged"); *Stokwitz*, 831 F.2d at 896 (holding § 6103 is the only means for obtaining tax information *from the IRS*, and not the only means for the government to obtain a person's tax return information); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191-92 (C.D. Cal. 2006) (granting plaintiff's motion to compel defendant to produce tax return information in its custody)*; Advanced Microtherm, Inc. v. Norman Wright Mech. Equip.*, No. C 04-2266 JW (PVT), 2009 WL 3320421, at *1-2 (N.D. Cal. Oct. 9, 2009) (granting plaintiffs' motion to compel defendant to produce tax returns not held by the IRS).

Courts have applied a two part test to determine whether to order a party to produce its tax returns: (1) the information sought must be relevant and (2) there must be a compelling need because the information cannot be readily obtainable elsewhere. *See Premium Serv. Corp.*, 511 F.2d at 229; *Aliotti v. The Vessel Senora*, 217 F.R.D. 496, 497-98 (N.D. Cal. 2003); *A. Farber & Partners, Inc.*, 234 F.R.D. at 191; *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997); *Ellis*, 23 F.R.D. at 111-12 . Courts must find the discovery's request satisfies this test before ordering the disclosure of tax return information.

---

*in the possession of the IRS*. Section 6103 does not protect those same materials, whether originals or duplicates, to the extent they are in the possession of a non-IRS entity or person.

The tax return information sought by Mattel is relevant and there is a compelling need for the information. The Court has previously recognized the relevance of any indemnification agreement between MGA and Bryant. *See* Docket No. 7434, at 3; Docket No. 8031, at 8. The mere fact that the indemnification agreement was included in a tax return does not diminish its relevance. *See, e.g.*, *A. Farber & Partners, Inc.*, 234 F.R.D. at 191 (finding defendant's tax information relevant to plaintiff's RICO claims). Moreover, there is a substantial need for such materials in light of the considerable disagreement between the parties regarding the scope of MGA's production obligations and MGA's subsequent compliance with those production obligations, *see Garber*, 234 F.R.D. at 190 (implying that substantial need exists where there is a legitimate dispute about party's production of underlying relevant materials). Indeed, Mattel identifies two pieces of evidence that call MGA's prior production into doubt: (1) the March 2009 "Presentation to the Internal Revenue Service Appeals Division" which states that "MGA paid Bryant's legal expense to fulfill its obligation under the indemnification agreement and to protect its profits and business," Docket No. 7984, at 3; and (2) Brian Wing's February 2010 testimony, referring to MGA's disclosure to the IRS of its contractual obligation to indemnify Bryant, Docket No. 7984, at 3-4.

The Court has consistently ordered the production of indemnification agreements. The agreements are relevant to the bias and control of critical witnesses in this lawsuit. While MGA argues it has satisfied the Court's production obligations, Mattel has presented substantial evidence to the contrary. Moreover, Mattel has convincingly argued that MGA's tax return information contains evidence relevant to (1) whether MGA has misrepresented the extent of its production; and (2) whether MGA was contractually obliged to pay Carter Bryant's legal fees. MGA has identified no other repository for such information, *see Young*, 149 F.R.D. at 204-05 (finding tax return information necessary to verify or contradict plaintiff's claim of lost wages), and Mattel therefore cannot determine if MGA has an indemnity agreement with Bryant unless it obtains the information sent to the IRS.

Finally, any of MGA's privacy concerns regarding its tax information do not overcome Mattel's need for these documents because the Court can protect such information by issuing a protective order. *See Premium Serv. Corp.*, 511 F.2d at 229; *A. Farber & Partners, Inc.*, 234 F.R.D. at 191.

The Court ORDERS MGA to produce the material encompassed by Mattel's subpoena subject to the modifications below. The Motion to Compel MGA to sign a waiver ordering the release of such material by the IRS is STRICKEN AS MOOT.

### D. Motion for Protective Order

MGA moves the Court for a protective order "against Mattel's discovery into MGA's tax submissions." *See* Docket 8031 at 9.

Rule 26(b)(1) states that "any nonprivilegd matter that is relevant to any party's claim or

defense" is discoverable material. However, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of the request, including subpoenas. Fed. R. Civ. P. 26(c)(1); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

For "good cause" to exist, the moving party must first state with specificity that the information sought will cause harm or prejudice if the protective order is not granted. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1210-11 (9th Cir. 2002); *see Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *San Jose Mercury News, Inc. v. United States District Court – Northern District (San Jose)*, 187 F.3d 1096, 1102 (the party seeking a protective order must make a "particularized showing of good cause with respect to any individual document"). Second, if the moving party satisfies its burden the court will balance the need for confidentiality and the need for discovery to decide whether "good cause" exists to grant a protective order. *Phillips ex rel. Estates of Byrd,* 307 F.3d at 1211. Importantly, the district court is given "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

MGA's request for a protective order is vague.  It is apparent that Mattel's subpoena to the IRS seeks discovery of "MGA's tax submissions."  *See* Docket 8031 at 9.  However, MGA does not clarify whether Mattel has sought *other* discovery into "MGA's tax submissions."  *See id.*  The Court has already held, in the context of Mattel's Motion to Compel addressed herein, that tax submissions in MGA's custody are broadly relevant and therefore MGA is not entitled to a blanket protective order against disclosure of tax submissions.

The critical issue is the extent to which MGA's production obligations must be curtailed in light of Rule 26(c).  Even though Mattel's subpoena requests to the IRS are quashed in their entirety, the Court finds it prudent to discuss how these subpoena requests would be analyzed under a Rule 26(c) standard, and thereby set boundaries for MGA's production obligations pursuant to the order on Mattel's Motion to Compel.  In short, the Court ia analyzing whether a protective order should be granted over the ***content*** sought by the subpoena requests.  The Court is not analyzing whether a protective order should be granted over the subpoena requests themselves.

Mattel's first request seeks "[a]ll documents provided to [the IRS] by MGA referring or relating to any agreement between MGA and Bryant."  MGA argues that some of the content sought by the subpoena request is irrelevant to any Bryant-MGA indemnification agreement, as the request arguably encompasses royalties and wages paid to Bryant.  However, the Court has already ordered the production of MGA's royalty information.  MGA therefore fails to identify any particularized harm that would result from the production of such wage and royalty information.  MGA is ORDERED to produce all information encompassed by Mattel's first subpoena request to the IRS.

Mattel's second request to the IRS seeks "[a]ll communications between [the IRS] and MGA referring or relating to Bryant and/or any legal fees paid for the benefit of or on behalf of Bryant." The request is overbroad to the extent it uses the term "and/or." The production of communications unrelated to legal fees would impose particularized harm upon MGA because it could encompass proprietary information about legal fee agreements in other lawsuits. The paticularized harm of having to produce all communications referring or relating to Bryant is not outweighed by any public or private interests in disclosure of such information. Indeed, the production of communications concerning legal fees concerning Bryant overlaps entirely with communications referring or relating to Bryant. The particularized harm does not exist, however, when the request is limited to the production of communications concerning the payment of Bryant's legal fees through the elimination of the term "and/or". MGA is therefore ORDERED to produce "all communications between the IRS and MGA referring or relating to Bryant and any legal fees paid for the benefit of or on behalf of Bryant."

Mattel's third seeks "[a]ll communications between [the IRS] and MGA, from January 1, 2009 to May 1, 2009 referring or relating to legal expenses incurred by MGA in connection with *Mattel v. MGA*, Case Nos. CV 04-9049, 04-9059, and 05-02727 (C.D. Cal.), and/or the appropriate tax treatment of such expenses." The request would result in particularized harm to MGA by forcing MGA to produce legal fee information as to private counsel. Such particularized harm is not outweighed by any public or private interest in disclosure. The production obligations imposed by the order on the Motion to Compel do not extend to information sought by this request.

Mattel's fourth request seeks "[a]ny presentation or submission made by MGA to [the IRS], and any materials provided by MGA to [the IRS], between January 1, 2009 and May 1, 2009." The request would result in particularized harm to MGA by requiring MGA to produce sensitive tax information delivered to the IRS. And the particularized harm is not outweighed by any public or private interest in disclosure, as the request is duplicative of the first and second requests to the extent it seeks discovery of the Bryant-MGA indemnification agreement. The production obligations imposed by the order on the Motion to Compel do not extend to information sought by this request.

### III. Disposition

For the foregoing reasons, the Court hereby ORDERS as follows:

1. MGA's Motion to Quash is GRANTED;

2. MGA is ORDERED to produce to Mattel, within fourteen (14) days of the filing of this Order all information encompassed by Mattel's first subpoena request to the IRS as well as "all communications between the IRS and MGA referring or relating to Bryant and any legal fees paid for the benefit of or on behalf of Bryant."

    3.    Mattel's Motion to Compel is STRICKEN AS MOOT.

    4.    MGA's Motion for Protective Order over Mattel's discovery into MGA's tax submissions is GRANTED IN PART AND DENIED IN PART in the manner identified herein.

The Clerk shall serve this minute order on all parties to the action.