QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
|---|---|
| Plaintiff, | Hon. David O. Carter |
| vs. | **MATTEL, INC.'S OPPOSITION TO MGA PARTIES' EX PARTE APPLICATION (1) TO COMPEL MATTEL LOGBOOKS AND CONSUMER RESEARCH IN ADVANCE OF RESUMED DEPOSITION OF SUJATA LUTHER ON JULY 26, 2010; (2) FOR PERMISSION TO SUBMIT ENTIRETY OF LUTHER TRANSCRIPT IN EXCESS OF 50 PAGES OF EXHIBITS IN SUPPORT OF APPLICATION; AND (3) FOR SANCTIONS** |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| **PUBLIC REDACTED VERSION** | |

Hearing Date: TBD
Time: TBD
Place: Ctrm. 9D

00505.07975/3577307.1

MATTEL'S OPPOSITION TO MGA'S *EX PARTE* APPLICATION TO COMPEL MATTEL'S LOGBOOKS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ........................................................................................1

ARGUMENT .............................................................................................................5

I.    MGA'S IMPULSIVE *EX PARTE* IS MOOT BECAUSE MATTEL PRODUCED ITS CONSUMER RESEARCH LOG BOOKS *PRIOR* TO MGA'S MOTION..........................................................................................5

II.   MGA'S ARGUMENT THAT THE LOGBOOKS WERE RESPONSIVE TO PRIOR REQUESTS IGNORES THE RULINGS OF THE DISCOVERY MASTER AND THE COURT. ...................................6

III.  MGA'S SUGGESTION THAT MATTEL WAS IMPROPERLY WITHHOLDING A 2002 STUDY IS NONSENSICAL AND CONTRARY TO THE EVIDENCE. ...............................................................8

    A.    The Cannibalization Study Is Not Relevant to MGA's Dismissed Statute of Limitations Defense. ..........................................8

    B.    MGA Knew of the Study for Years, But Never Requested It. ................9

    C.    Mattel Has Located And Will Produce The Binder Associated With The 2002 Study. .........................................................................11

    D.    MGA Has Twice Failed To Take Market Research Depositions After Moving to Compel Such Depositions..........................................11

IV.  MGA'S UNSUPPORTED COMPLAINTS ABOUT MATTEL'S DISCOVERY CONDUCT ARE MERELY A PRETENSE TO COVER ITS OWN EGREGIOUS MISCONDUCT, AND IT SHOULD BE SANCTIONED FOR ITS REFUSAL TO PARTICIPATE IN A MEANINGFUL MEET AND CONFER BEFORE FILING ITS MOTION. .............................................................................................................12

CONCLUSION........................................................................................................16

# TABLE OF AUTHORITIES

**Page**

### Cases

Roadway Express, Inc. v. Piper,
    447 U.S. 752 (1980)...................................................................................15

In re Scientex Corp.,
    46B.R. 41 (Bankr. C.D. Cal. 1984) ...........................................................15

Mission Power Eng'g. Co. v. Continental Cas. Co.,
    883 F.Supp. 488 (C.D. Cal. 1995)..............................................................15

**Preliminary Statement**

MGA brings a wasteful *ex parte* application, strenuously working to manufacture a dispute that did not exist for documents that it has known about for years (the "Bratz Cannibalization Study") or were never requested in the first place (Mattel's research logbooks). MGA, however, now has the documents it purports to seek. In fact, it had them even before filing its application. Accordingly, MGA's *ex parte* should be denied as moot and MGA should be sanctioned for its abuse of the *ex parte* process.

MGA disingenuously suggests that Mattel refused to produce certain marketing logbooks in the face of prior requests and motions to compel. Regardless of MGA's pretextual arguments, its discovery requests as properly limited by both the Court and the Discovery Master do not encompass the Mattel logbooks. These logbooks are merely indices to the entirety of Mattel's market research – a huge number of documents – not actual research or reports on Bratz. Regardless, Mattel produced the logbooks in question two business days following MGA's first request.

MGA further alleges that Mattel has refused to produce a study from 2002 – the "Bratz Cannibalization Study." Despite the many pages of its *ex parte* application – a process meant for urgent issues – MGA has known of the study since at least May 2007 and even questioned witnesses about similar studies in Phase 1. Mattel has produced two documents referencing this study no less than five times – three times in 2007, once in 2008, and once in June 2010 – before MGA filed its *ex parte*.

MGA spends many pages of an *ex parte* application complaining of supposed discovery abuses by Mattel. While these assertions have nothing to do with the merits of MGA's application, they do reveal MGA's strategy—to distract from MGA's own egregious discovery misconduct. Seeking to score strategic points is hardly an appropriate use of the *ex parte* procedure.

**Statement of Facts**

<u>The Discovery Master Limited Discovery Regarding Mattel's Market Research.</u>
Early in 2010, the Discovery Master considered several of MGA's discovery requests

relating to market research for "Bratz" and "My Scene" products.[1] Specifically, MGA 9049 Requests 434 and 567 are related to market research and competitive studies involving Bratz and the fashion doll market. The Discovery Master limited these requests "to documents related to the seven specific issues listed [below] as they relate to the claims and defenses at issue in Phase 2."[2] Those "specific issues" generally include conception and design changes, Mattel's knowledge of "Bratz," and the following documents as they relate to "Bratz" and "My Scene": advertising and marketing, similarities or confusion, predecessor products, and competitive analyses.[3] MGA's 9059 Request 175 seeks "[a]ll documents constituting, discussing, mentioning, relating or referring to market research relating to 'Bratz.'" The Discovery Master ordered this request be limited just as 9049 Requests 434 and 567 described above, as well as 9049 Requests 555 and 787.[4]

MGA's 9059 Request 97 seeks "All documents, including market research, referring or relating to, or influencing Mattel's decision to create, design, develop or abandon 'Toon Teens', including, without limitation, the reasons for and factors influencing its decision." Mattel represented that it had fully complied with Request 97 in January 2010.[5]

Mattel Searched For Responsive Documents. In February, 2010, Mattel had knowledgeable personnel from Mattel's market research department conduct searches of its Marketing Research Library.[6] Mattel searched for and reviewed documents from

---

[1] Discovery Master Order No. 89 at 9-10, Jan. 13, 2010, Dkt. No. 7396 ("Order No. 89").
[2] Id.
[3] Id.
[4] Id.
[5] Mattel Inc.'s Opposition To MGA's Motion For Limited Reconsideration Of Order No. 89 As Provided In Footnote 7, at 10-11, Dkt. No. 7433.
[6] Declaration of Curran Walker at ¶¶ 1-2 ("Walker Declaration").

2000 to the present analyzing the impact of MGA or its products on Mattel.[7] As part of this review alone, Mattel reviewed over 16,000 pages.[8] To date, Mattel has produced over 27,000 pages of documents relating to market research.

<u>The Court Limited The Scope Of Marketing Discovery</u>. Last month, the Court further limited the scope of allowable discovery into Mattel's market research concerning MGA. MGA served a 30(b)(6) notice of deposition of Mattel, Inc. that included Topic 18: "All qualitative and quantitative consumer research conducted by Mattel concerning or including any MGA product, any attributes of any MGA product, or any MGA product packaging, including the manner and methodology of such research, the results of such research, any reports concerning such research, and the distribution within Mattel of any reports concerning such research."[9] Mattel moved for a protective order because Topic 18 sought irrelevant discovery, was overbroad, and imposed an undue burden on Mattel.[10] The Court tentatively agreed with Mattel but ordered supplemental briefing on Topic 18.[11] Based on the supplemental briefing, the Court agreed that MGA's request was overbroad.[12] The Court reasoned that:

> On its face, the topic is overbroad and MGA's briefing does not support the breadth of the request or the topic that Mattel would bear in preparing a witness on the topic. The Court finds ample grounds upon which to limit the topic pursuant to Rule 26(b)(2)(C). Mattel shall produce a witness as to "[a]ll qualitative and quantitative consumer research conducted by Mattel concerning any MGA product, any

---

[7] Id. at ¶¶ 3-4.
[8] Id. at ¶ 5.
[9] Notice of Deposition of Mattel, Inc. (Third Phase 2 Notice), April 27, 2010.
[10] Mattel, Inc.'s Supplemental Brief Pursuant to Order of June 7, 2010 Re Motion for Protective Order at 14-15, Dkt. No. 8092.
[11] Order Re Pending Discovery Disputes, June 7, 2010 at 12, Dkt. No. 8079.
[12] Order Regarding Supplemental Briefing Submitted In Response To Court's June 7, 2010 And June 14, 2010 Orders And Other Pending Discovery Disputes, June 18, 2010 (footnote continued)

attributes of any MGA product, or any MGA product packaging, including the manner and methodology of such research and the results of such research."

Although MGA obtained an order compelling a deposition regarding Topic 18, and Mattel offered multiple dates for such a deposition, MGA never took the deposition. Similarly, MGA sought and obtained an order during Phase 1 to take a deposition on a topic regarding the Bratz Brief.[13] MGA never took that deposition either. Further, when Mattel's planned witness for Topic 18 reviewed the Mattel logbook, there was no name of an MGA product in the logbook description for the "Bratz Cannibalization Study" discussed in MGA's *ex parte*. The actual title of the document is "███████████████████." Because Topic 18 is tied to MGA products, the ███████████████████ did not stand out as responsive from its logbook entry title.

<u>Mattel Produced A Former Senior Vice President For Deposition</u>. On July 8, 2010, Mattel arranged for the deposition of Ms. Luther, a former Senior Vice President Of International Marketing And Consumer Research for Mattel. Ms. Luther had been involved in consumer research and testified that Mattel maintained log books regarding consumer research projects.[14] These log books were used to track project reports by year and by brand.[15] However, the logbooks themselves do not contain any research project or report.

---

at 5-6, Dkt No. 8133.
[13] Order Granting In Part And Denying In Part MGA's Motion To Compel Mattel To Produce Witnesses Pursuant To Notice Of Deposition Under Rule 30(b)(6); Denying Requests For Sanctions, at 4, April 11, 2008 (ordering deposition on Topic 32). MGA's Topic 32 included "the origin, source, meaning, and authenticity of the 'Bratz Brief' produced in this action at M 0079765-71." See MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6) at A-19-20, September 5, 2007.
[14] Deposition of Sujata Luther, July 8, 2010 at 46:18-47:2. ("Luther Dep.").
[15] <u>Id.</u>

<u>Mattel Sought To Meet And Confer To Ensure MGA's Discovery Requests Were Proper</u>. Following Ms. Luther's deposition, MGA requested additional broad discovery from Mattel based on Ms. Luther's testimony.[16] Mattel responded immediately, correcting MGA's misstatements of the discovery issues, and sought to confirm that MGA would keep its requests within proper discovery bounds.[17] MGA responded with a threat to file the present *ex parte* motion without even addressing Mattel's points.[18] Although the parties exchanged several further emails, MGA continued to include allegations unrelated to Ms. Luther or her testimony and refused to engage in a discussion on the logbooks themselves.[19] On the very same day of the lengthy email exchange, and two business days following the Luther deposition, Mattel produced the logbooks in question. Nonetheless, MGA filed its *ex parte* application the following morning. Moreover, despite having received the logbooks, MGA requested the Court order Mattel to file the present opposition within 24 hours of MGA's service of its application. Later that day, after having nearly a full day to review the logs, and after business hours, MGA sent an email claiming that more logs should be produced. Finally, after significant effort, Mattel located the binder requested by MGA and produced that about 24 hours following the production of the logbooks.

## Argument

### I. MGA'S IMPULSIVE *EX PARTE* IS MOOT BECAUSE MATTEL PRODUCED ITS CONSUMER RESEARCH LOG BOOKS *PRIOR* TO MGA'S MOTION.

MGA's application is an empty gesture, aimed at diverting the Court from MGA's own continued discovery misconduct (discussed in Section IV below). In fact, MGA knew when it filed its application that it was moot. On July 12, the day before

---

[16] <u>See</u> July 12, 2010 email exchange between A. Hurst and M. Zeller.
[17] <u>Id.</u>
[18] <u>Id.</u>
[19] <u>Id.</u>

MGA filed its application, Mattel produced logbooks for its consumer research for the years 1995 to 2009. Thus, MGA already has the logbooks that it purports to seek from Mattel. Moreover, MGA now has ample opportunity to review these logbooks by July 15, as also sought by its application. To the extent that MGA wishes to make reasonable requests for documents listed on the logbooks—to the extent such documents have not already been produced—Mattel will provide such documents.[20]

## II. MGA'S ARGUMENT THAT THE LOGBOOKS WERE RESPONSIVE TO PRIOR REQUESTS IGNORES THE RULINGS OF THE DISCOVERY MASTER AND THE COURT.

Moreover, even putting aside MGA's theatrics, MGA's *ex parte* application is fundamentally based on the flawed notion that Mattel should have previously produced its logbooks. MGA's document requests, as modified by the Court and the Discovery Master, do not encompass logbooks pertaining to the entirety of Mattel's research from the last fifteen years. Indeed, regarding all of MGA's demands in its *ex parte*, the Court's opinion of MGA's Topic 18 is especially relevant:

> MGA's claimed need for Mattel's internal market research is either pretextual or shocking. The Bratz line was, by any account, a successful line of dolls to which MGA dedicated significant corporate resources. The suggestion that MGA did not perform its own internal research into the reasons for Bratz sales, as well as the impact of those sales on competitors' products is inherently unbelievable. Even if MGA did not conduct such research, the notion that MGA has not or cannot now direct such market research strains logic.[21]

---

[20] MGA made an after-hours complaint regarding Mattel's logbook production, further evidencing that MGA has Mattel's logbooks and its *ex parte* is moot.

[21] Order Regarding Supplemental Briefing Submitted In Response To Court's June 7, 2010 And June 14, 2010 Orders And Other Pending Discovery Disputes, June 18, 2010 at 6, Dkt No. 8133.

MGA's present allegations similarly strain logic. Each properly limited request fails to cover Mattel's logbooks. MGA's 9059 Request 97 seeks "All documents, including market research, referring or relating to, or influencing Mattel's decision to create, design, develop or abandon 'Toon Teens', including, without limitation, the reasons for and factors influencing its decision." Mattel's logbooks that merely index research projects, but do not include the projects or reports indexed, are simply not covered by this request. Mattel represented that it had fully complied with Request 97 in January 2010 and stands by that statement now.[22] The Court's order limiting MGA deposition topic 18 and Discovery Master Orders 89 and 91 adds to Mattel's showing that Mattel has met its discovery obligations for this request.

MGA's 9059 Request 175 – which it relies upon – seeks "All documents constituting, discussing, mentioning, relating or referring to market research relating to 'Bratz.'" The Discovery Master agreed that this request must be limited to specific categories.[23] Those categories generally include conception and design changes, Mattel's knowledge of "Bratz," and the following documents as they relate to "Bratz" and "My Scene": advertising and marketing, similarities or confusion, predecessor products, and competitive analyses.[24] As so limited, Mattel's log books that provide an index of all Mattel research projects from the last fifteen years fall outside of the request.

Finally, MGA's 9049 Requests 434, 555, 567, and 787 are all limited just as 9059 Request 175 described above.[25] Mattel's logbooks cover a wide variety of research projects and thus fall well outside the scope of these requests as well.

---

[22] Mattel Inc.'s Opposition To MGA's Motion For Limited Reconsideration Of Order No. 89 As Provided In Footnote 7, at 10-11, Dkt. No. 7433.
[23] Order No. 89 at 9-10.
[24] Id.
[25] Id.

MATTEL'S OPPOSITION TO MGA'S *EX PARTE* APPLICATION TO COMPEL MATTEL'S LOGBOOKS

III. **MGA'S SUGGESTION THAT MATTEL WAS IMPROPERLY WITHHOLDING A 2002 STUDY IS NONSENSICAL AND CONTRARY TO THE EVIDENCE.**

A. **The Cannibalization Study Is Not Relevant to MGA's Dismissed Statute of Limitations Defense.**

In its brief, MGA chides Mattel for not having previously produced a 2002 "Bratz Cannibalization" study (the "2002 study"). MGA claims that because it shows that Mattel knew of the existence of Bratz in 2002, it is relevant to MGA's already-rejected statute of limitations defense. (App. at 11). This argument is nonsensical. That Mattel knew about Bratz in 2002—or even before its release as MGA claims (App. at 11)—has nothing to do with whether Mattel knew that Carter Bryant had created Bratz while employed as a Mattel doll designer and then delivered that property to MGA. In fact, MGA argued vigorously in Phase 1 that Mattel's knowledge of Bratz at the Hong Kong Toy Fair in January 2001 somehow barred its claims.[26] The Court rejected that illogical theory.[27]

Similarly nonsensical is the notion that, because the 2002 study describes "Bratz" as a "▇▇▇" departure and the "▇▇▇▇▇▇," it somehow would have convinced the jury in Phase 1 that Carter Bryant's work did not emanate from any work being done at Mattel. (App. at 11). Mattel's claim to ownership of Bratz was not based on its similarities to BARBIE; it was based on the fact, proven by overwhelming evidence (including forensic evidence), that Bryant created Bratz while employed by Mattel. That Bratz is different from BARBIE, or even "▇▇▇▇" different, is wholly immaterial to this issue. In fact, the Phase 1 jury reached its verdicts even though

---

[26] MGA Parties' Notice of Motion for Partial Summary Judgment, Motion and Memorandum of Points and Authorities in Support Thereof, March 7, 2008, at 15-35.
[27] Order re Statute of Limitations Defense, May 27, 2008 (Dkt. No. 3826); Further and Final Order re Statute of Limitations Defense (In Chambers), June 2, 2008 (Dkt. No. 3902).

1 numerous documents and witnesses produced during Phase 1 discovery referred to
2 Bratz as "anti-Barbie." For example, during the deposition of Jeanne Galvano in 2008,
3 she testified that when she first heard about what Carter Bryant was working on, she
4 described it to her husband as "anti-Barbie." (Galvano Vol. 1 at 116:4-118:13.) An
5 Asian Wall Street Journal Article from December 2002, used at the deposition of
6 Adrian Fontanella in 2008, describes Bratz as "Anti-Barbie." (Depo. Ex. 1274).
7 Another Mattel document describes Bratz as "███████████████" Barbie, (Depo.
8 Ex. 1287, produced May 30, 2007), and another says the "█████████████████
9 ███████████████." M 0082121-37 at M 0082125 (also produced May 30, 2007).

### B. MGA Knew of the Study for Years, But Never Requested It.

11 Even more speciously, MGA suggests in its brief that Mattel was somehow
12 concealing the existence of the 2002 document. (App. at 12). To the contrary, the
13 Bratz Cannibalization Study was expressly referenced in another document, the
14 September 9, 2002 study, that was included *no less than four time s* in Mattel
15 productions: M 0082147-53 M 0082148 (produced May 30, 2007 and marked as
16 deposition exhibit 1277); M 0086677-83 and M 0088797-803 (also produced May 30,
17 2007); and M 1637035-41 (produced June 8, 2010).[28] The Bratz Cannibalization Study
18 was also referenced at least a fifth time in the "█████████" which was produced on
19 January 14, 2008 and used as Deposition Exhibit 1805.[29] Mattel's market studies were
20 also litigated by MGA in front of Judge Larson.[30] Further, Mattel's cannibalization
21 studies were raised by MGA in at least three depositions in both phases of the case:
22 Adrienne Fontanella, January 16, 2008 (Phase 1) (including the above-referenced
23 exhibit 1277); Timothy Kilpin, January 25, 2008 (Phase 1); and Timothy Kilpin, April

---

[28] The Bratz Cannibalization Study is referenced by its report number "MRD# SD-24-01-03" on the second page of each of these productions.
[29] The Bratz Cannibalization Study is generally referred to on page 5, Section III of this document.
[30] April 22, 2007 Hearing Transcript at 154:1-20; February 25, 2008 Hearing (footnote continued)

1 | 9, 2010 (Phase 2). MGA had but to ask for the document itself. It didn't.

2 | It is hardly surprising that MGA would not have asked for the study during Phase 1, as Barbie's loss of market share was not at issue during the trial for Phase 1. Rather, Phase 1A concerned the timing of when certain Bratz works and concepts were conceived and reduced to practice by Carter Bryant. Phase 1B concerned whether MGA's Bratz dolls infringed the Bratz works owned by Mattel as a result of Phase 1A and to what sums Mattel was entitled based on a disgorgement theory. Neither MGA nor Mattel put on evidence of Mattel's loss of market share or injuries to BARBIE, though notably, MGA itself argued to the jury that just such loss of market share had happened. (See, e.g., MGA's Closing Argument, Trial Tr. at 4902:6-8 ("Mattel and MGA compete in the marketplace. And you now know that for 40 years, Barbie was the only doll in town, and Bratz came in and knocked her off her pedestal.")).[31]

Further, the 2002 study – which actually hurts MGA's damages case by finding "cannibalization" of Barbie by Bratz (especially with respect to older girls' purchase of Barbie) – is cumulative of numerous other market studies produced by Mattel in Phase 1 discovery. See, e.g., M 0082147-53, at M 0082148 ("███████████████ ███████████████"); M 0079765-71 ("███████████████ ███████████████ ███████████████"); M 0082121-37, at M 0082121 ("███████████████

---

Transcript at 25:23-26:8.
[31] Mattel's Motion in Limine No. 9 sought to exclude argument, evidence or expert testimony regarding Barbie and other Mattel dolls on the grounds that such evidence and argument was irrelevant and that any probative value was outweighed by its undue prejudice and risk of confusion to the jury. (Motion In Limine No. 9, at Notice) In response, the Court ordered that a Daubert hearing be held one day prior to testimony regarding Barbie and other Mattel dolls. (Final Pre-Trial Conference Order at 15:26-28) MGA never sought to put on any of its experts regarding Barbie, and no such Daubert (footnote continued)

1 ███████████████████████████████████████████████████████████████████ ");
2 M 0041531-95, at M 0041536 (identifying Bratz as an "████████████████" to
3 Barbie, "██████████████████████████" and recognizing that some Barbie
4 products "████████████████"); M 0066897-911, at M 0066805 (showing competition
5 between Barbie and Bratz among older girls).

### C. Mattel Has Located And Will Produce The Binder Associated With The 2002 Study.

In its application, MGA seeks "entire contents of the research binder concerning" the 2002 study. (App. at 15). MGA first requested that Mattel look for such a binder on the afternoon of July 12. Mattel, through significant search efforts, located the binder that included the 2002 study and expects to produce the binder today. Notably, this is a mere four business days after the binder was first requested.

### D. MGA Has Twice Failed To Take Market Research Depositions After Moving to Compel Such Depositions.

MGA has shown with its actions just how unimportant Mattel's marketing research is to its case. During Phase 1, MGA moved to compel a Mattel 30(b)(6) designee to testify regarding "the origin, source, meaning, and authenticity of the 'Bratz Brief.'"[32] Despite obtaining an order compelling this topic, MGA never took the deposition. Again, during Phase 2, MGA moved to compel a Mattel witness to testify regarding "[a]ll qualitative and quantitative consumer research conducted by Mattel concerning or including any MGA product, any attributes of any MGA product, or any

---

hearings were held.
[32] Order Granting In Part And Denying In Part MGA's Motion To Compel Mattel To Produce Witnesses Pursuant To Notice Of Deposition Under Rule 30(b)(6); Denying Requests For Sanctions, at 4, April 11, 2008 (ordering deposition on Topic 32). MGA's Topic 32 included "the origin, source, meaning, and authenticity of the 'Bratz Brief' produced in this action at M 0079765-71." See MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6) at A-19-20, September 5, 2007.

MGA product packaging, including the manner and methodology of such research, the results of such research, any reports concerning such research, and the distribution within Mattel of any reports concerning such research."[33] Again, despite Mattel's offer of a witness and proposed dates, MGA never took the deposition, and the Court-ordered deadline has passed. Moreover, MGA did not even seek a stipulation to extend the date for Topic 18, as MGA had with other compelled deposition topics. MGA cannot even be bothered to take such depositions after putting the Court and Mattel through motion practice, and its disingenuous position is well characterized in the Court's June 18 order as "pretextual."

### IV. MGA'S UNSUPPORTED COMPLAINTS ABOUT MATTEL'S DISCOVERY CONDUCT ARE MERELY A PRETENSE TO COVER ITS OWN EGREGIOUS MISCONDUCT, AND IT SHOULD BE SANCTIONED FOR ITS REFUSAL TO PARTICIPATE IN A MEANINGFUL MEET AND CONFER BEFORE FILING ITS MOTION.

Throughout its brief, MGA makes vague and unsupported assertions about Mattel, at one point accusing Mattel's CEO of being dishonest about remembering a document drafted by someone else years earlier, at another complaining about Mattel "███████████████" prior to depositions. (App. at 5,9). These assertions have nothing to do with the merits of MGA's application, but they do reveal the strategy underlying it—to distract from MGA's own egregious discovery misconduct.

MGA has habitually served relevant documents immediately before or even during the depositions of their witnesses:

- MGA produced relevant documents the night before and on the second day of MGA Canada's 30(b)(6) deposition. See Deposition of Diane Goveia-Gordon, dated February 2-4, 2010.

- MGA produced documents relevant to Isaac Larian's deposition during

---

[33] Notice of Deposition of Mattel, Inc. (Third Phase 2 Notice), April 27, 2010.

the deposition.

- MGA produced documents relevant to Susana Kuemmerle during her deposition.
- MGA seized documents that Brian Wing attempted to produce at his deposition, and withheld them until the Court ordered them produced and chastised MGA for withholding them. See Hearing Tr., dated March 9, 2010 at 28:7-33:24; Amended Order Compelling Production of Documents Delivered and/or Returned to the MGA Parties by Former Employee Brian Wing, dated March 12, 2010, at 2-4 (Dkt. No. 7630).
- MGA produced relevant documents late in the evening prior to the deposition of Tina Varu (Patel). See Deposition of Tina Varu, dated March 19, 2010.
- MGA produced relevant documents relevant to the 30(b)(6) depositions of John Woolard and Steve Schultz late in the evening the day before their depositions. See Deposition of Stephen Schultz, dated March 26, 2010; Deposition of John Woolard, dated March 26, 2010.
- MGA produced relevant documents during Lisa Tonnu's 30(b)(6) deposition. See Deposition of Lisa Tonnu, dated June 25, 2010.

MGA's other failures and delays in producing admittedly relevant documents are too numerous to catalog here. As discussed in Mattel's pending Motion to Compel MGA Parties to Perform Searches Consistent with the Requirements of Fed. R. Civ. P. 34, MGA has failed to produce more than 150 relevant, responsive documents and emails that Brian Wing produced; MGA failed to produce more than 1000 relevant, responsive emails that Veronica Marlow produced; MGA failed to produce over 30 Omni-related documents that Omni 808 has produced; MGA failed to produce a critical Omni-related email showing Larian's interest in Omni 808 until the day after Arsalan Gozini produced it, despite the fact that MGA had been compelled months earlier to produce it; MGA failed to produce invoices showing its secret payments for Bratz-

related projects as early as June 2000, only to produce them years later after third-party Anna Rhee produced them. See Motion to Compel MGA Parties to Perform Searches Consistent with the Requirements of Fed. R. Civ. P. 34, dated May 25, 2010, at 13-17. Indeed, although the Court compelled MGA to produce all documents related to its transaction with Omni 808 no later than February 2, 2010 (see January 26, 2010 Order Regarding Discovery Matters, at 4-5), MGA admits that it still has not produced all such documents. See MGA Parties' Response to the Supplemental Declaration of Dylan Proctor.

Moreover, as recently as last week, the E-Discovery Special Master found that Mattel's concerns about MGA's "skirting of [discovery] issue[s]" were "justified."[34] The Special Master found that despite numerous discovery requests propounded by Mattel, MGA continued to evade making "an unqualified assertion by MGA that a thorough search has been conducted in an effort to locate and produce the requested data."[35] MGA has thus far avoided producing a single document to date from the Larian hard drives despite being ordered to do so two months ago.[36]

Even more egregious is MGA's assertion that Mattel should have offered to produce all of Mattel's logbooks from 1995 to 2009—which includes a listing of Mattel's market research for the last 15 years—and by such production allow MGA to identify which additional research documents it sought. (App. at 12-13). MGA argues this was the appropriate way for Mattel to limit discovery into research relating to the issues in this case. Instead, Mattel did precisely what it was supposed to do – it discussed with MGA production of research documents that are directly pertinent to the issues here, not production of all research for the last fifteen years. Notably, MGA did not suggest, and indeed never has suggested, that it produce any logs of its own market

---

[34] July 5, 2010, Report and Recommendation of E-Discovery Special Master at 4:13-21.
[35] Id.
[36] Amended Order Granting Mattel's Proposed Search Terms For Larian Hard Drive; Staying Larian Hard Drive Obligations, May 13, 2010 (Dkt. No. 7860).

1  research (although of course, MGA claims, illogically, that it has none).

2  MGA also urges that Mattel did not properly meet and confer during the
3  abbreviated e-mail exchange that preceded MGA's application. MGA claims that
4  Mattel refused to agree to MGA's self-dubbed "extremely reasonable" proposal or
5  otherwise propose a resolution to the logbook issue.[37] To the contrary, immediately
6  after the Luther deposition, MGA demanded production of all reports concerning
7  research on girls products from 1995 to the present. Mattel told MGA that it was
8  amenable to producing logs of its market research to resolve the issue—and then did so.
9  Rather than seek an actual compromise, however, MGA simply filed its pretextual and
10 strategically-driven application. MGA went further with its ex parte abuse by
11 demanding that Mattel be required to file any opposition to the ex parte within 24 hours
12 of service, despite <u>already having</u> the logbooks purportedly sought in the first place.
13 MGA improperly pleaded with Ms. Mikhail based on the "urgency" of the situation yet
14 never informed the Court that Mattel had already produced the logbooks.

15 Quite simply, it is MGA, not Mattel, that should be sanctioned for wasting the
16 time of Mattel and the Court on a discovery issue that could have been resolved by the
17 parties or even dealt with by the Discovery Master (who was present at the deposition).
18 MGA's abuse of the *ex parte* process is grounds for sanctions. Roadway Express, Inc.
19 v. Piper, 447 U.S. 752, 765-66 (1980) (courts have authority to impose sanctions for
20 bad faith litigation tactics); In re Scientex Corp., 46 B.R. 41, 43 (Bankr. C.D. Cal. 1984)
21 (imposing sanctions for abuse of the *ex parte* process). *Ex parte* motions are reserved
22 for legitimately urgent issues. Mission Power Eng'g. Co. v. Continental Cas. Co., 883
23 F.Supp. 488, 492 (C.D. Cal. 1995) ("filing an ex parte motion … is the forensic
24 equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a
25 fire."). Such sanctions should issue here, particularly in light of MGA's decision to
26 pursue this issue as an urgent *ex parte* and its demand that Mattel (and the Court)

---

[37] App. at 14-15.

1 | respond and take action at MGA's whim, when clearly there is no "fire" here.

## Conclusion

For the reasons above, MGA's *ex parte* application should be denied and MGA should be sanctioned for its abuse of the *ex parte* process.

DATED: July 14, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ **Michael T. Zeller**
    Michael T. Zeller
    Attorneys for Mattel, Inc.