QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MGA ENTERTAINMENT, INC., a California corporation, et al, | Hon. David O. Carter |
| Defendant. | MATTEL, INC.'S RESPONSE TO THE MGA PARTIES' OPPOSITION TO MATTEL, INC.'S BRIEF REGARDING IN CAMERA REVIEW PURSUANT TO JUNE 18, 2010 ORDER DIRECTING ELECTRONIC PRODUCTION OF DOCUMENTS BY MGA PARTIES |
| AND CONSOLIDATED ACTIONS | |

Hearing Date: TBD
Time:         TBD
Place:        Courtroom 9D

**Phase 2**
Discovery Cut-off:      TBD
Pre-trial Conference:   TBD
Trial Date:             TBD

**Preliminary Statement**

MGA long fought to prevent Mattel from examining the contents of active files on the Larian hard drives. However, after conceding that its own experts had relied on such files in examining the Larian drives, MGA proposed a three-step protocol for the inspection of the drives in which Mattel would first identify all files it contends were deleted from the drives (Step 1), MGA would then attempt to locate potential active versions of these files and create a rebuttal list (Step 2), and then Mattel would be given access to the files on the rebuttal list to test MGA's contention that they rebut Mattel's claim of deletion (Step 3).[1] The Court adopted MGA's proposal and ordered the parties to proceed with the inspection under this three-step protocol.[2]

Step 1 was completed late last year, and MGA has admitted that Step 2 is complete[3] – indeed, even touting in its brief the existence of active files that it claims rebut evidence of deletion. But MGA refuses to allow Mattel any meaningful participation or transparency, withholding the results of Step 1 and the results of Step 2 from Mattel and unilaterally claiming that there is no evidence of anything and the analysis is over.[4] Up until this point, MGA tried to excuse its ongoing failure to allow

---

[1] MGA Supplemental Briefing Pursuant to 2/27/2010 Order Re: Objections to Electronic Discovery Special Master Report and Recommendation No. 5, dated March 15, 2010, Dkt. No. 7651 at 8:27 – 9:12.

[2] Order Sustaining MGA Parties' Objections to Recommendation No. 5 of January 5, 2010 Electronic Special Master R&R, dated April 7, 2010, Dkt. No. 7709 at 3.

[3] In fact, MGA claims to have completed Step 2 on two separate occasions, apparently determining that a "re-do" was necessary after the first one. In January 2010, MGA claimed to have completed its analysis and further stated that it was prepared to submit its analysis to the E-discovery Special Master. See Mattel, Inc.'s Status Report Regarding the Larian Hard Drive Inspection, dated April 21, 2010, Dkt. No. 7754 at n.3, 4 and Exhibits A and B thereto. However, four months later in a report filed with the Court, MGA failed to acknowledge this first analysis, claiming it was still "in the process" of conducting it and that it would complete it by April 23, 2010. See MGA Entertainment, Inc.'s Report Regarding Status of Larian Hard Drive Inspection, dated April 21, 2010, Dkt. No. 7753 at ¶ 3.

[4] Simultaneously, MGA has failed to produce documents from the Larian drives even though it was ordered to do so over two months ago. See Amended Order Granting Mattel's Proposed Search Terms for Larian Hard Drive, dated May 13, 2010, Dkt. No. 7860 at 2.

Mattel access to Step 1 and Step 2 on a vague assertion of privilege as to certain files and filenames that could quickly be resolved by the Court. But in its opposition brief,[5] it now goes much further, seeking to block Mattel's access to all the materials over which it does not claim privilege − and in the process, flagrantly violating the Court's orders requiring that Mattel be given access to the hard drives for conducting the protocol and that the protocol be completed.[6] It is clear that, consistent with its literally years of stonewalling on Larian's drives, MGA has no intent of allowing Mattel access and will never allow the inspection unless forced to comply.

To justify this violation of the Court's numerous orders compelling inspection of the Larian drives, MGA presents a hodge-podge of new arguments which are variously self-contradictory, misleading and irrelevant. Here are just a few examples:

- MGA argues that one of Mattel's lists of deleted files should not be produced because it does not list active files too, while arguing that the other two lists should not be produced because they *did* list active files.

- MGA claims that none of the spreadsheets should be produced because Mattel accessed what it calls "active file information," which it contends was a violation of the protocol. In fact, Mattel has collected only metadata. Under the Orders compelling inspection of the Larian drives, Mattel may examine "any and all" information on the drives, including information relating to active files, save for the *contents* of active files. And, in any event, MGA's remedy is scarcely the suppression of evidence from discovery.

---

[5] MGA filed its so-called "Opposition" without leave after MGA improperly submitted ex parte argument regarding the Court's in camera review and the Court then granted Mattel "leave to submit briefing as to the manner in which the Court should perform its in camera review of MGA's submission." June 18 Order, Dkt. No. 8136 at 2. Notably, the "Opposition" has nothing to do with how the Court should approach its in camera review and, if anything, is an improper motion for reconsideration of the Court's orders granting Mattel access to conduct the protocol.

[6] Order Granting Mattel, Inc.'s Motion Objecting to Portions of Discovery Master's December 31, 2007 Order Regarding Hard Drives, dated February 27, 2007, Dkt. No. 2362; Phase 2 Discovery Matter Order No. 34 ("Order No. 34"), dated May 18, 2009, Dkt. No. 5510; Report and Recommendation of Electronic Discovery Special Master, dated January 21, 2010, Not Docketed; Order Sustaining MGA Parties' Objections to Recommendation No. 5 of January 5, 2010 Electronic Special Master R&R, dated April 7, 2010, Dkt. No. 7709.

- MGA argues that Mattel gathered *no* information that related to deleted files, while simultaneously arguing that Mattel wrongfully listed purportedly irrelevant deleted files.

These arguments are fueled in significant part by MGA's wrongful withholding of all information related to the inspection protocol. MGA's unilateral access to all the information about Step 1 and 2 allows it to make all kinds of representations about the supposed facts – including arguments MGA improperly transmitted to the Court in secret declarations from its consultant − while Mattel is forced to rely only on its expert's memory of data that was collected over eight months ago. As the Court previously recognized after Mattel brought MGA's abuses with respect to the inspection of other Larian hard drives in Phase 1 to the Court's attention, "a problem results when both sides' experts don't have access to the same information…[t]here's got to be a level playing field here."[7]

MGA never explains why it waited eight months to share these supposed concerns about the inspection results. The reason it did, of course, is because real progress finally is being made with respect to the inspection. Step 1 and Step 2 are complete, and the Court is on the threshold of resolving any supposed privilege issues. MGA's continuing efforts to subvert the Larian hard drive inspection should not be tolerated, and MGA should be ordered to produce all non-privileged information relating to the inspection that has been gathered in Steps 1 and 2 of the three-step protocol ordered by the Court without further delay.

---

[7] August 31, 2009 Hearing Tr. at 5:25-6:2.

# I. MATTEL IS ENTITLED TO THE INFORMATION GATHERED IN THE FIRST TWO STEPS OF THE COURT-ORDERED PROTOCOL FOR THE LARIAN HARD DRIVE INSPECTION

## A. All of the Files on Mattel's Spreadsheets Are Relevant to Deletion of Files from the Larian Drives

Between September and December of 2009, pursuant to Step 1 of the protocol, Mattel's expert conducted a preliminary analysis of the Larian drives by gathering metadata associated with deleted files on the drives, which Mattel's expert then organized in three spreadsheets.[8] MGA argues that none of these spreadsheets should be produced because the listed files are unrelated to deletion of files on the Larian drives. Not so. *Every* file listed on each of the three spreadsheets relates directly to deleted files on the Larian drives.

The first of the spreadsheets lists deleted files for which 42 LLC was unable locate potential active versions on other Larian drives.[9] MGA argues that this list should not be disclosed because MGA claims to have located undisclosed active versions of the files on the list on other hard drives: "[t]his list does not acknowledge that the files identified were found elsewhere or could be found elsewhere on Mr. Larian's drives."[10] In sum, based on its completely unsupported claim that copies of the deleted files may exist elsewhere, MGA argues that the evidence of deleted files should be ignored. But MGA does not get to make that call. Spreadsheet 1 is evidence of deletion, is relevant, and should be produced.[11] And if MGA actually has located potential active versions of the deleted files, these are only *potential* active versions, and determining whether they actually are copies of the deleted files is the purpose of

---

[8] Declaration of Christopher Pavan ("Pavan Dec."), dated July 15, 2010, at ¶ 3.
[9] Pavan Dec. ¶ 4.
[10] Opposition at 3.
[11] Subject to legitimate privilege concerns; although it remains unclear how a filename or other metadata could contain privileged information anyway.

Step 3, which expressly permits Mattel access to them in order to verify MGA's analysis.

Moreover, even the existence of *true* active versions of the deleted files elsewhere at MGA does not refute the fact of deletion.[12] If three people have a copy of the same file on their computers and two of these people delete the file from their computer, the continued existence of the file on the third computer does not mean that *no* files have been deleted. It means that two of the files have been deleted.

MGA further claims that Mattel's first spreadsheet is not limited to evidence of "files that could have been deleted by Mr. Larian" because it includes "temporary files."[13] Contrary to MGA's claim otherwise, temporary files can provide evidence of deletion, though they themselves are unlikely to have been deleted by a user. This is because temporary files are created only when a user opens or edits an active file such that every temporary file corresponds to a specific active file.[14] Thus, the presence of a temporary file with no active counterpart strongly suggests deletion of the missing active file.[15] This is why those files are on the spreadsheet and why it must be produced to Mattel.

The remaining two spreadsheets list deleted files for which 42 LLC was able to locate potential active versions on other Larian hard drives.[16] The spreadsheets are organized in this manner in response to MGA's previous criticism, which MGA oddly renews here with respect to only the first spreadsheet: that Mattel purportedly failed to account for the existence of active versions of deleted files.[17] Mischaracterizing these

---

[12] Pavan Dec. ¶ 5.
[13] Opposition at 3.
[14] Pavan Dec. ¶ 6.
[15] Pavan Dec. ¶ 6.
[16] Pavan Dec. ¶ 5.
[17] The criticism is especially odd since the protocol only requires Mattel to identify deleted files, and requires MGA to identify potentially corresponding active files. If MGA had any intent to follow the protocol, it would regard Mattel's identification of potentially active files as a helpful head start in preparing its rebuttal list.

two spreadsheets as relating *only* to active files, MGA argues that they are not relevant to deletion: "by definition these files have not been deleted and are not evidence of spoliation."[18] In fact, as MGA's own expert admitted,[19] every entry on these two spreadsheets corresponds to a deleted file. And as explained above, the fact of deletion of one file is not refuted by the presence of a potential active copy of the deleted file in another location.[20] In any event, Mattel is certainly entitled to these spreadsheets, and MGA's rebuttal list, so that it can conduct Step 3 of the protocol.

### B. Mattel Has Not Accessed the Contents of Any Active Files

In an apparent effort to explain why Mattel would have diligently compiled three spreadsheets that have absolutely nothing to do with deleted files on the Larian drives, MGA argues that Mattel's expert accessed "active file information" on the Larian drives as part of an effort to catalog the entire contents of the drives. Thus, says MGA, "when Mattel now asks for these lists prepared by its experts, or documents that relate to the lists they prepared, what Mattel is seeking is the catalog of file names (and related documents) found on Mr. Larian's hard drives, without regard to whether these files names reflect relevant or even deleted documents."[21]

First, *all* of the files on Mattel's three spreadsheets correspond to deleted files and, as the Court has already determined, *all* deleted files are relevant. MGA has been compelled to provide the Larian drives for an inspection to determine if "*any* information" on the drives has been deleted or destroyed.[22] In addition, Mattel's claims

---

[18] Opposition at 8 ("by definition these files have not been deleted and are not evidence of spoliation").
[19] C.f., Declaration of Samuel Rubin at ¶ 3 ("[t]he second spreadsheet…lists files that, according to 42 LLC, were deleted from one of the Larian Media drives" and "[t]he third spreadsheet…lists emails that were found deleted in one email storage file on the Larian Media"). This is the only declaration from Mr. Rubin that MGA has served on Mattel with respect to these issues. The Rubin Declarations submitted to the Court on June 9, 2010 and June 29, 2010 have never been served on Mattel.
[20] Pavan Dec. ¶ 5.
[21] Opposition at 1.
[22] Order No. 34 at 12.

in this case are based on, among other things, MGA's destruction of evidence and Mattel is entitled to explore the information pertinent to these claims.[23] MGA's 30(b)(6) witness on document preservation testified that any deletions from the Larian drives would be a violation of MGA's policy and thus improper,[24] creating a third basis for the relevance of all deletions.

Second, Mattel's experts have not accessed the contents of any active files. Though MGA attempts to confuse the issue in its Opposition by referring repeatedly to "active file information," Mattel is only restricted from inspecting "user generated content of any active file...."[25] To comply with this restriction, Mattel's expert collected only metadata and went to great lengths to avoid accessing the contents of active files. For example, 42 LLC used automated scripts to gather the metadata and accounted for any exceptions not handled by the scripts by examining metadata only.[26] Additionally, as an added precaution, 42 LLC "locked" the view in the EnCase software it used so as to avoid even accidentally viewing of the contents of files in the display pane of the application.[27]

Nor did 42 LLC inspect any information beyond that permitted under the three-step protocol ordered by the Court on April 7. MGA's argument that Mattel is attempting to gain greater access than it has been granted is baseless. All of the entries on Mattel's spreadsheets correspond to a deleted file pursuant to Step 1, and Mattel is seeking nothing more than that information and the results of Step 2, so that it may conduct the third and final step of the protocol, verification of MGA's analysis.

---

[23] Mattel, Inc's Fourth Amended Answer and Counterclaims, dated April 12, 2010, Dkt. No. 7733 at ¶¶ 95-96.
[24] MGA 30(b)(6) Deposition Tr., Lisa Tonnu, dated June 25, 2010, at 1998:12-17.
[25] Order No. 34 at 12.
[26] Pavan Dec. ¶ 3.
[27] Pavan Dec. ¶ 3.

### C. MGA's Claim That Mattel Should Have Filtered Deleted Files for Relevance Is a Red Herring

Even as it argues that Mattel listed *no* information related to deleted files, MGA simultaneously criticizes Mattel for wrongfully listing deleted files that MGA claims are irrelevant to this action. But this is just the first of many reasons why MGA's relevance argument is nonsensical.

Another reason is that Mattel was entitled to list *all* files it contends were deleted from the Larian drives. Order No. 34 permits Mattel to determine if "*any* information" on the drives has been deleted or destroyed, not some subset of information MGA unilaterally deems relevant.[28] MGA knows this, describing that step as follows: "Mattel's experts would first do their analysis and create an initial list of User-created Files they contended had been deleted—call it the Deleted List."[29] And as set forth above, all deleted files are relevant anyway.

Third, Mattel was not permitted access to the content of active files in Step 1, and accordingly took precautions to avoid accessing such information as required by Order No. 34. Obviously, without such access, Mattel has no ability to screen files for relevance. And since MGA has withheld even Mattel's own list of deleted filenames, Mattel could not even screen files for relevance based on file name.

Fourth, MGA cannot choose to withhold active files on the basis that their purported lack of relevance rebuts a claim of spoliation. If MGA wishes to rely on an active file to rebut Mattel's showing – however it is relying on it – it must be produced for verification by Mattel for the reasons previously identified by the Court: "a problem results when both sides' experts don't have access to the same information."[30] Mattel should not have to take MGA's word that it is relevant; if that were the case,

---

[28] Order No. 34 at 12.
[29] MGA Supplemental Briefing Pursuant to 2/27/2010 Order Re: Objections to Electronic Discovery Special Master Report and Recommendation No. 5, dated March 15, 2010, Dkt. No. 7651 at 8:27 – 9:1.
[30] August 31, 2009 Hearing Tr. at 5:25-6:2.

00505.07975/3573134.8
-8-
RESPONSE TO MGA'S OPP TO BRIEF RE IN CAMERA REVIEW PURSUANT TO JUNE 18 ORDER

1  MGA could sabotage the entire inspection by saying every file on Mattel's deleted file
2  list had an "irrelevant" active file counterpart.
3        Accordingly, Mattel requests that the Court review the files and file names on
4  Mattel's spreadsheets for privilege only and order the remaining files and file names to
5  be produced forthwith to Mattel.

## II. MGA'S REPEATED REFUSALS TO DISCLOSE INFORMATION ON WHICH IT RELIES OR ARGUMENTS IT MAKES TO THIS COURT ARE IMPROPER

9        MGA's latest brief on the issue illustrates why disclosure of the information
10  Mattel seeks is necessary. MGA's now-established pattern with respect to the Larian
11  drives is to withhold all of the information and then argue, without disclosing it, that the
12  withheld information supports MGA's position. For example, MGA previously argued
13  that there was no evidence of spoliation on the Larian drives because active files – the
14  very same active files MGA refused to disclose to Mattel – so demonstrated. This led
15  to the current three-step protocol, which expressly provides that MGA will provide
16  Mattel with copies of any active files MGA's experts rely on. Now MGA is at it again,
17  refusing not only to disclose the active files its experts have relied on, but also refusing
18  to disclose even metadata related to deleted files because unidentified evidence
19  supposedly disposes of Mattel's deletion findings. This is improper, and MGA's
20  unilateral pronouncements regarding deletion on the Larian drives need to be tested by
21  the adversarial process.
22        Similarly, the Rubin Declarations were submitted *in camera* not because they
23  were necessary and constituted privileged information that deserved protection.[31]
24  MGA chose to submit them even though the Court's order did not give MGA leave to

---

[31] Indeed, MGA submitted the second Rubin Declaration *after* the Court disclosed parts of the first Rubin Declaration, knowing its disclosure might be compelled. It accepted that chance and submitted it, rather than seeking leave to submit it, actions arguably inconsistent with maintenance of any purported privilege with respect to the Declaration.

do so because they presented an opportunity to argue to the Court and cut Mattel out of the process again. Mattel has only a glimpse into the content of the first Rubin Declaration but it is illuminating. In its June 18 order, the Court disclosed that MGA had refused to comply with the Court's May 13, 2010 Order on purported burden grounds, claiming that "[t]he entire universe of documents related to the files listed on 42 LLC's deleted files spreadsheet would fill approximately 40 boxes of documents."[32] Yet when the Court forced MGA to comply, MGA easily submitted "[t]he entire universe of documents related to the files on 42 LLC's deleted files spreadsheet" on a single thumb drive.[33] Although the Court's order exposed the truth about this one argument, the example illustrates the abuses that can result when a party is frozen out of the adversarial process. There may be other arguments or facts about the inspection in MGA's secret submissions that are exaggerated or false and which Mattel deserves the opportunity to challenge. Both of the Rubin declarations should be produced in their entirety.

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court (1) review the file names on Mattel's deleted files list that MGA identifies as privileged and order all other file names produced, (2) review the files on Mattel's deleted files list that MGA identifies as privileged and order all other files on the list produced, and (3) order MGA to produce all non-privileged portions of the June 9 and June 29 Declarations of Samuel Rubin.

---

[32] June 18 Order at 2.
[33] Notice of Lodging in Response to Order Directing Electronic Production of Documents by MGA Parties, dated June 29, 2010, Dkt. No. 8198.

| | | |
|---|---|---|
| 1 | DATED: July 15, 2010 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | |
| 4 | | By /s/ Michael T. Zeller |
| 5 | | Michael T. Zeller |
| 6 | | Attorneys for Mattel, Inc. |

00505.07975/3573134.8

-11-
RESPONSE TO MGA'S OPP TO BRIEF RE IN CAMERA REVIEW PURSUANT TO JUNE 18 ORDER