QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>DECLARATION OF CHRISTOPHER PAVAN IN SUPPORT OF MATTEL, INC.'S RESPONSE TO THE MGA PARTIES' OPPOSITION TO MATTEL, INC.'S BRIEF REGARDING IN CAMERA REVIEW PURSUANT TO JUNE 18, 2010 ORDER DIRECTING ELECTRONIC PRODUCTION OF DOCUMENTS BY MGA PARTIES<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: TBD |

00505.07975/3572306.2

PAVAN DECLARATION

## DECLARATION OF CHRISTOPHER PAVAN

I, Christopher Pavan, declare as follows:

1. I am an EnCase Certified Examiner working for 42 LLC, a digital forensic solutions company based in San Marino, California. I have been performing computer forensic examinations and data recovery operations for over five years. Prior to becoming a computer forensic examiner, I honorably served for four years in the United States Army as an Electronic Warfare technician and worked for the Department of Defense as a contractor providing computer and electronics systems support for another four years. As a contractor I was responsible for setting up and securing U.S. Classified networks in support of Military and State Department operations around the globe. I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. I have performed numerous computer forensic examinations, preservations, and recoveries for government, corporations, and law enforcement. Additionally, I volunteer my time assisting different law enforcement agencies in the southern California region as a subject matter expert.

3. Between the dates of September 2009 and December 2009, 42 LLC collected metadata from certain hard drives used by Isaac Larian as part of a preliminary analysis of spoliation activity on the drives. The metadata we gathered was used to create three spreadsheets listing files deleted from the Larian hard drives. In gathering this data, we understood that we were not permitted to access the content of active files on the drives, and we thus implemented technical precautions to avoid viewing the content of files. For example, we used automated scripts to collect the metadata and to compare deleted artifacts to active file names. We accounted for any exceptions not handled by the automated processes by examining metadata only. Additionally, as an extra precaution, we "locked" the

view in EnCase so we would not see the contents of files in the display pane of the application.

4. Based on the metadata 42 LLC gathered from the Larian drives, we created three spreadsheets listing files deleted from the drives. The first of these spreadsheets lists deleted files for which we were unable to locate potential active versions on the other Larian drives. I understand that MGA claims to have identified active versions of many of these deleted files by "searching by file name only." This alone, however, is not sufficient to conclude that the files are identical. The contents of two files may be very different even though they have the same file name.

5. I understand that MGA claims the other two of the three spreadsheets 42 LLC created from the metadata on the Larian drives are unrelated to deletion activity. This is incorrect. Both of these spreadsheets list deleted files, but, unlike the first spreadsheet, they list deleted files for which a potential active version was located on a different hard drive. But every entry in these two spreadsheets still corresponds to a deleted file – even though a potential active version of a deleted file may exist on a different drive, the fact of deletion on the first drive remains.

6. Some of the files on 42 LLC's list of deleted files are temporary files. I understand that MGA contends these files are not evidence of deletion because they are not user-created and because they may be periodically deleted by the operating system. While temporary files are not user-generated and may be periodically deleted by the operating system, it is incorrect that they are not evidence of deletion. Temporary files are created only when a user opens or edits an active file, so each temporary file corresponds to a specific active file. The presence of a temporary file on a hard drive thus necessarily indicates that the corresponding active file existed on the drive at one point. Accordingly, the presence on a drive of temporary files that have no corresponding active file strongly suggests that the active file has been deleted.

7. 42 LLC conducted its preliminary analysis of the Larian hard drives at the offices of Stroz Friedberg. We were not permitted to remove any data from Stroz's offices and have not received copies of any of the spreadsheets or other work product we created relating to 42 LLC's inspection of the Larian drives.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 15, 2010, at Los Angeles, California.

_____
Christopher Pavan