MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:  415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with: Nos. CV 04-9059 and CV 05-2727<br><br>**[PUBLIC VERSION] REPLY ISO MGA PARTIES' EX PARTE APPLICATION (1) TO COMPEL MATTEL LOGBOOKS AND CONSUMER RESEARCH IN ADVANCE OF RESUMED DEPOSITION OF SUJATA LUTHER ON JULY 26, 2010; (2) FOR PERMISSION TO SUBMIT ENTIRETY OF LUTHER TRANSCRIPT IN EXCESS OF 50 PAGES OF EXHIBITS IN SUPPORT OF APPLICATION; AND (3) FOR SANCTIONS** |

# ARGUMENT

## I. THE REQUESTED DOCUMENTS ARE RESPONSIVE AND HIGHLY RELEVANT AND SHOULD BE ORDERED PRODUCED ON THE SCHEDULE PROPOSED BY MGA SO THAT THEY ARE AVAILABLE PRIOR TO THE RESUMPTION OF THE LUTHER DEPOSITION; ADDITIONALLY, MGA'S ATTORNEYS SHOULD BE ENTITLED TO INSPECT MATTEL'S RESEARCH LIBRARY.

### A. Mattel's Argument That The Logbooks Are Not Responsive Is Spurious.

Request No. 175 (propounded on January 31, 2005 in MGA's First Set RFPs) requested "All DOCUMENTS consisting, discussing, mentioning, relating or referring to MARKET RESEARCH relating to "BRATZ." *See* Kieckhefer Decl. Ex. 1 at 5. The logbooks are documents referring to, relating to and actually mentioning ███████████████████████ Even from the limited production made by Mattel at nearly midnight the night before MGA filed its Application, it is apparent that the logbooks themselves ███████████████████████ ███ Supp. Kieckhefer Decl. Exs. E-H. Despite arguing that it had produced the documents and that they were not responsive, Mattel did not bother to supply these pages to the Court. The reason is obvious: they completely put the lie to any credible argument that the logbooks are not responsive to MGA's document requests.

### B. Mattel's Argument ███████████████████████ Is Irrelevant Is Ridiculous.

Mattel's argument that ███████████████████████ is irrelevant (Opp. at 8-9) is ridiculous. Although Mattel tries to put a good spin on it by arguing that the document actually supports Mattel's case (*id.* at 10), whether supportive or not, the document is obviously relevant. As far as we know, ███████████████████████

-1-

MGA'S EX PARTE APPLICATION TO COMPEL MATTEL LOGBOOKS
CV-04-9049 DOC (RNBX)

5  But more fundamentally, Mattel's argument that the document is irrelevant
6  because it was cumulative completely misses the point on the statute of
7  limitations—especially as to the state law claims. Judge Larson issued multiple
8  orders on the statute of limitations issues. It was without any doubt a very closely
9  contested issue on the facts and the law. One concern repeatedly expressed by the
10 Court during that time frame was that it did not have sufficient evidence as to when
11 Mattel actually first learned of Bratz, and whether Mattel "had knowledge of any
12 one of the three generic elements of wrongdoing, causation, or damages, coupled
13 with suspicion of the remaining generic elements." Dkt. 3826 (Order re Statute of
14 Limitations Defense) at 7.

17 Moreover, when coupled with the ▓▓▓▓ also just produced
18 this week and ▓▓▓▓

25 It
26 would have been much harder for the jury to swallow the notion that Mattel had
27 somehow been a victim of concealment when it was spending so much time and
28 effort ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Finally, for purposes of a laches defense, Mattel now admits that the ▓▓▓▓▓▓▓▓▓▓ report shows that by that date Mattel was fully aware of causation of harm by Bratz, even though it did not seek injunctive relief until nearly *seven years later* in November 2008. Surely from the perspective of a laches defense, or the Court's consideration of the *eBay* factors, these documents and the facts they establish were highly relevant to the consideration of equitable remedies.

At this point in time, the only remedies that MGA seeks from Mattel in connection with this obvious discovery default is the compelled production of documents, compelled inspection of the research library, and monetary sanctions for being forced to bring this Application. MGA is evaluating whether other remedies may also be appropriate in light of this belated production of documents highly relevant to a closely contested Phase 1 defense, and MGA may be back to the Court with further motions once we finally do get all of the documents. There can be no valid argument of any kind, however, that this document was irrelevant, especially to the statute of limitations defense. In fact, if Mattel's attorneys are willing to argue with a straight face that a document like this is irrelevant, then it is obvious that they cannot be trusted at all with the review of documents.

C. **Mattel's Argument That MGA Should Have Figured Out Sooner That Mattel Was Withholding Relevant Documents Is Absurd.**

Mattel's argument that MGA should have figured out sooner that Mattel was withholding highly relevant evidence is patently absurd in light of Mattel's own arguments in the Opposition. Mattel claims that it made a mistake in not producing the document because it looked only at the title of the study in making a judgment whether to produce it; Mattel indisputably had the document and the people who created it at its disposal at all times. Mattel had far more access to the relevant study materials, personnel involved in creating them, and the substance of them than MGA ever did, and still Mattel claims that it could not figure out that it needed

to produce the document. Despite the fact that Mattel made this purported mistake *with full access*, nonetheless Mattel argues that MGA's attorneys were negligent in failing to figure this out. This is exactly the type of argument that has been soundly rejected by courts. Indeed, as the court noted in *Simon Property Group, L.P v. mySimon, Inc.*, 2003 U.S. Dist. Lexis 5438, *8-*9 (S.D. Ind. Mar. 26, 2003), Mattel's argument "amounts to a transparent effort to blame the victim of deceptive discovery practices."

### D. MGA Has Not Failed To Take The Market Research Deposition It Noticed During Phase 2.

Mattel's assertion that its market research is somehow irrelevant or insignificant because MGA twice failed to take a deposition is just flat wrong. The Court did not grant MGA a deposition on the narrowed market research topic 18 in Phase 2 until its June 18 order. The Court set no deadline in that order for completion of the topics addressed therein. Mattel first offered the Topic 18 witness three days later at noon on June 21, proposing that the deposition commence *the following day* in downtown Los Angeles—less than 24 hours later and in a location far from where we had already been ordered to attend a lengthy meet and confer session with Judge Smith. Mattel also knew that Ms. Hurst's vacation was scheduled to commence the day after on June 23.

MGA declined the originally proffered date for obvious reasons; it most certainly did *not* decline to take the deposition. In fact, Mattel has not since offered any dates for a witness on Topic 18, and frankly had MGA proceeded with the deposition in the meantime in the absence of all of the relevant documents, it is apparent that would have been a complete waste of time. Far from showing a lack of interest in market research, MGA has propounded a number of document requests, moved to compel on those requests, took the deposition of Sujata Luther and adjourned it mid-way precise so it could get a complete picture of market research, and sought a 30b6 deposition on the topic which it fully intends to take

*once the documents ordered by the Court and which Mattel has agreed to produce have actually been produced.*

### E. The Application Is Far From Moot; Rather, The Opposition Makes Clear That The Requested Relief Is More Necessary Than Ever.

Contrary to its assertions, Mattel has not produced the entirety of its relevant logbooks. The pages that Mattel produced it did not supply until after 10:00 p.m. of the day MGA had already informed Mattel it would file the Application. Mattel's production cover letter sent at 10:07 p.m. on Monday night made no mention of the contents of the production, and the production was made *only after Mr. Zeller refused to agree.* Supp. Kieckhefer Decl. Exs. B & C  We can hardly read minds. We learned of the contents of the documents Tuesday morning (through no help of Mattel), immediately reviewed and noted the deficits in the production, and sent a lengthy meet and confer e-mail later Tuesday. Supp. Kieckhefer Decl. Ex. D. Apart from the fact that Mattel still has not produced all of the pertinent logs, Mattel also still has not agreed to produce the ▉▉▉▉▉▉▉▉▉▉ MGA is in the process of reviewing the logbooks that have been produced to figure out as best it can what research should be produced, and will notify Mattel by tomorrow night (the originally proposed deadline) of the complete list that it can discern at this time should be produced by early next week in advance of the resumed Luther deposition.

The other reason that the Application is not moot is that Mattel's response obviously points to very serious flaws in Mattel's document review procedures. Mattel was ordered to produce, and even agreed to produce, ▉▉▉▉▉▉▉ ▉▉▉▉▉ Mattel takes the view that the logbooks are not responsive, which is patently incorrect. Mattel takes the view that ▉▉▉▉▉▉▉▉▉▉ ▉▉ is irrelevant, and hasn't produced it. Mattel's pathetic excuse for having failed to produce this document is hard to accept. But the excuse that Mattel relied exclusively on the logbook must mean that Mattel's attorneys never actually looked

at the document. *If accepted as true, this explanation means that in six years of litigation, Mattel's attorneys have not set foot in Mattel's research library to review the contents for responsive and relevant documents.* MGA does not have sufficient time to review the contents of the full library before the resumption of the Luther deposition, and must rely upon designating materials from the logbooks. The Court should order now, however, that MGA's attorneys are entitled to conduct a supervised inspection of Mattel's research library.

## II. MGA SHOULD BE PERMITTED TO PROVIDE THE ENTIRE LUTHER TRANSCRIPT IN SUPPORT OF THE APPLICATION.

Mattel does not appear to contest this point.

## III. MATTEL SHOULD BE SANCTIONED.

Mattel's argument that MGA failed to conduct good faith meet and confer is laughable. MGA participated in an all hands lead counsel session on the evening of Thursday, July 8 immediately upon the conclusion of the first day of the Luther deposition. MGA came armed with a specific proposal for the nature and timing of the production. Mattel was negative on the proposal, but promised to respond the following day. Mattel did not respond on Friday, July 9, or at any time over the weekend. Finally, with time running out to get the matter resolved by the Court in time to resume the Luther deposition, MGA initiated e-mail correspondence on Monday, July 11. It immediately became apparent that Mattel rejected MGA's proposal, and Mr. Zeller made the spurious argument that this was all MGA's fault. Mattel made no other proposal, and it was obvious that Mattel had no desire to resolve the situation. MGA did all that it was required to do. That e-mail exchange is supplied to the Court with this Reply as attached to the Supplemental Kieckhefer Declaration, Exhibit A.

The fact that Mattel has now produced, albeit only in part, the logbooks is an obvious concession that it should have been done. The only reason Mattel produced anything at nearly midnight on Monday night was so that it could point to

that production in a desperate effort to avoid sanctions. That delayed, undisclosed eleventh hour (literally) production does not excuse Mattel's conduct.

Finally, Mattel has a litany of things it says MGA has done wrong in its Opposition. MGA's list is much, much longer. MGA will bring that list to the Court's attention at the appropriate time and in the appropriate procedural fashion. For now, it suffices to say that nothing Mattel has accused MGA of doing prevents the Court from doing right by MGA in this instance.

## CONCLUSION

The Court should grant this Ex Parte Application and order the following: (1) immediate production of the entire contents of the research binder concerning the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (2) production by July 14, 2010 of all Mattel research logbooks from 1996 to the present that include any research regarding girls products; (3) that MGA shall designate by midnight on July 15, 2010 which research from the logbooks shall be produced; (4) that the entirety of all research binders concerning each such logbook entry shall be produced by July 22, 2010; (5) that MGA shall be awarded sanctions in the amount of reasonable attorneys fees expended to prepare its application, subject to proof; and (6) that MGA's attorneys shall be entitled to conduct a supervised inspection of Mattel's research library during days and times to which the parties' and the Discovery Master agree (Mr. Hansen was present at the Luther deposition and is most familiar with these issues, but of course MGA is happy to accept the supervision of whichever of the Court's masters the Court deems appropriate).

Dated: July 14, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
Annette L. Hurst
Attorneys for MGA Parties and IGWT 826