**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                                                  Date: July 14, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                                           Date:_____ Deputy Clerk: _____

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Kathy Peterson                                              Not Present
Courtroom Clerk                                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                  NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER DENYING MOTION TO COMPEL DEPOSITION OF WILLIAM FAN AND RAY BLACK

      Before the Court is Mattel, Inc. ("Mattel")'s Motion to Compel the Deposition of William Fan and/or Ray Black (the "Motion"). After considering the moving, opposing, and replying papers, the Court DENIES the Motion.

      Mattel has alleged that Isaac Larian and MGA Entertainment, Inc. ("MGA") obstructed justice by designating as privileged during Phase 1 an e-mail exchange between Isaac Larian and former MGA executive Victoria O'Connor. In that e-mail exchange, Larian sought O'Connor's advice about MGA's media relations strategy with respect to the Bratz line of dolls. O'Connor suggested against making a media representation that the Bratz line was born in September 2000 (when Carter Bryant was still employed by Mattel). Larian expressed his appreciation for O'Connor's advice.

      MGA withheld the e-mail exchange on privilege grounds. The basis for the claimed privilege was that O'Connor's suggestion to Larian reflected legal advice rendered by MGA's outside counsel. O'Connor is not herself an attorney. The Phase 1 jury never got to see the e-mail exchange.

   MGA's new counsel retracted the privilege designation after the Phase 1 trial and produced the document to Mattel.  Since then, Mattel has sought extensive discovery into the withholding of the document.  The Court has already adjudicated and held in abeyance a discovery dispute concerning Mattel's requests for admission, that seek discovery into, *inter alia*, whether MGA believed the e-mail exchange to reflect legal advice at the time it was withheld as privileged.  The Court tentatively concluded that the requests for admission sought privileged information, but held a hearing to determine whether any communications concerning the withholding of the document were made in furtherance of a crime or a fraud.  After finding that Mattel had demonstrated a *prima facie* basis for concluding that the communications were made in furtherance of a crime or a fraud, the Court continued the hearing until after MGA filed a responsive pleading, if any, to Mattel's Fourth Amended Answer and Counterclaims.  MGA's Motions to Dismiss are pending.

   The Court further ordered Larian to re-appear for deposition and, with certain limitations, explain why the e-mail exchange was withheld on privilege grounds.  At his resumed deposition, Larian testified that O'Connor's suggestion reflected legal advice rendered by MGA's outside counsel at the time of the e-mail.  The names of MGA's outside counsel – as identified by Larian – are William Fan and Ray Black, two attorneys based in London, U.K.  Mattel seeks to depose one or both individuals in order to test the validity of Larian's claim that the O'Connor e-mail exchange reflected legal advice delivered by outside counsel.

   Mattel argues that Fan and/or Black should be compelled to testify about the content of their attorney-client communications with MGA because: (1) those communications were made in furtherance of a crime or fraud; and/or (2) Larian put those communications at issue and thereby waived any privilege over the communications.  Neither argument is convincing and the parties mix in several other irrelevant issues for good measure.

   The crime-fraud exception does not apply.  Mattel argues that the O'Connor's "advice to cover up the creation date of Bratz and MGA's tortious conduct in stealing Bratz" was made in furtherance of a crime or fraud.  However, the object of the "cover up" was a member of the media, not the Court or any party with reason to rely in good faith on the veracity of any statement made by Larian about the birth of the Bratz line of dolls.  In any event, Mattel has not satisfied its burden of showing a "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime fraud exception applies." *United States v. Zolin*, 491 U.S. 554 (1989).  That one of MGA's lawyers rendered legal advice about the importance, if any, of Bryant's dates of employment is unremarkable. While Mattel claims that the lawyers' purported advice furthered "obstruction of justice and perjury, larceny and fraudulent concealment, fraud on the Copyright Office and the Court, and criminal copyright infringement," it is disputed whether these underlying acts even occurred, let alone whether MGA solicited Fan and/or Black's advice in order to further such acts.

   Nor did Larian waive the privilege.  "[A]n implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as the result of some affirmative act, such as filing suit; (2) through the affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would

deny the opposing party access to information vital to its defense." *Home Indemnity Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). Whether or not the first two prongs have been met, the third has not. The circumstances of the withholding of the O'Connor-Larian e-mail remain unexplored. MGA may claim that counsel made the decision to withhold the e-mail, in which case, MGA's former counsel (Mr. Nolan) may be required to submit to deposition as to the withholding of the e-mail. In the alternative, the Court may conduct an *in camera* hearing at which Mr. Nolan (and others) may be required to render sworn testimony about the withholding of the e-mail. Only after such testimony is received can the Court determine whether Fan and/or Black's legal advice to Larian is relevant to the withholding of the e-mail.

Finally, Mattel argues that MGA also put Fan and/or Black's advice at issue by producing the O'Connor e-mail exchange, which according to Larian reflects the two attorneys' legal advice. However, Mattel's claim that the e-mail's production extends to all communications between Larian and Fan/Black is contrary to extant precedent, under which a court must balance the following factors in determining the scope of a waiver: "[1] the circumstances of the disclosure; [2] the nature of the legal advice sought; [3] and the prejudice to the parties of permitting or prohibiting further disclosures." *Stanford v. Roche*, 237 F.R.D. 618, 625 (N.D. Cal. 2006). MGA did not produce the O'Connor-Larian e-mail in an attempt to "selectively disclos[e] privileged communications to an adversary [and reveal] those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996). If anything, MGA produced a harmful e-mail exchange as to which it could not sustain an attorney-client privilege claim. Mattel's argument – that MGA should now be forced to submit to a full disclosure of all communications with Fan and/or Black on the subject of Bratz's birth – creates a perverse incentive to withhold disclosure of marginally privileged e-mails. Furthermore, Mattel suffers no prejudice at this time from lacking discovery into the legal advice MGA received from its outside counsel about the legal relevance of the date on which Bratz was conceived. Counsel's advice is not at issue in Phase 2 with respect to the criminal copyright infringement and/or trade secret misappropriation claims.

In sum, Mattel's motion is premature. These issues can and should be resolved if and when MGA submits a responsive pleading. The Motion is therefore DENIED.

The Clerk shall serve this minute order on all parties to the action.