1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017–2543
   Telephone:  (213) 443–3000
6  Facsimile:  (213) 443–3100

7  Attorneys for Mattel, Inc.

8

9                 UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                     SOUTHERN DIVISION

12 | MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04–9049 DOC (RNBx) |
|---|---|
13 | | Consolidated with Case Nos. CV 04–09059 and CV 05–02727 |
|   Plaintiff, | |
14 | | Hon. David O. Carter |
15 | vs. | |
16 | MGA ENTERTAINMENT, INC., a California corporation, et al., | MATTEL, INC.'S OPPOSITION TO MGA PARTIES' OBJECTION TO ITEM 3 OF THE ELECTRONIC |
17 | Defendant. | DISCOVERY SPECIAL MASTER'S REPORT AND RECOMMENDATION DATED JULY 5, 2010; AND |
18 | AND CONSOLIDATED ACTIONS | |
19 | | APPENDIX OF COMPELLED DOCUMENT REQUESTS |
20 | | |
21 | | Date:    TBD |
22 | | Time:    TBD<br>Place:   Courtroom 9D |
23 | | **Phase 2** |
24 | | Discovery: TBD<br>Pre–trial Conference: TBD<br>Trial Date: TBD |
25 | | |

26

27

28

00505.07975/3576689.5

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT.......................................................................................................3

I. THE REPORT AND ORDER CORRECTLY RULED THAT THE REQUESTED DISCOVERY IS RELEVANT AND SHOULD BE COMPELLED ...............................................................................................3

    A. The Compelled Documents Are Relevant .............................................4

    B. MGA's Contention That No Underlying Requests For Production Exist Is Wrong And Irrelevant ............................................6

II. THE REPORT AND ORDER CORRECTLY REQUIRE SEARCHES OF AVAILABLE MEDIA THAT MGA HAS REFUSED TO SEARCH .....................................................................................................8

    A. MGA's Search Efforts For The Documents At Issue Clearly Have Not Been Adequate....................................................................8

    B. The Special Master Was Well Aware of MGA's History Of Inadequate Searches For Compelled Documents When He Issued The July 5 Report............................................................................10

    C. The July 5 Report Addressed And Uncovered Additional Spoliation By MGA ........................................................................15

III. MGA'S COMPLAINT THAT A "THIRD PARTY" HAS BEEN GIVEN ACCESS TO ITS SYSTEMS IS A RED HERRING ........................17

CONCLUSION ................................................................................................19

# TABLE OF AUTHORITIES

**Page**

## Cases

Cupit v. Whitley,
  28 F.3d 532 (5th Cir. 1994).................................................................................5

Greenhow v. Secretary of HHS,
  863 F.2d 633 (9th Cir. 1988)..............................................................................4

Jackson v. Montgomery Ward & Co.,
  173 F.R.D. 524 ..................................................................................................17

Marshall v. Chater,
  75 F.3d 1421 (10th Cir. 1996).............................................................................4

Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.,
  840 F.2d 985 (1st Cir. 1988) ...............................................................................5

United States v. Hardesty,
  977 F.2d 1347 (9th Cir. 1992).............................................................................4

## Statutes

Fed. R. Civ. P. 34............................................................................................13, 14

Fed. R. Civ. Proc. 26(b)(1)....................................................................................8

## Miscellaneous

Local Rule 7-19 .....................................................................................................4

-ii-
MATTEL'S OPPOSITION TO MGA'S OBJECTIONS TO JULY 5 REPORT AND RECOMMENDATION

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

3        MGA's Objections to the Special Master's July 5 Report and
4 Recommendation [Dkt. No. 8239-1] ignore that the Court has already entered an
5 Order approving the Report and Recommendation in its entirety. MGA provides no
6 grounds for reconsideration of that Order and its objections wholly lack merit.

7        While MGA once again seeks to avoid its discovery obligations through this
8 appeal, nowhere does it argue that the ordered discovery is not relevant. Nor does
9 MGA even claim, let alone show, that it has adequately searched for or produced all
10 the documents at issue. These facts were not lost on the Special Master, who ruled
11 that the documents at issue "clearly ha[ve] discovery relevancy" to Mattel's
12 allegations that MGA "engaged in a course of conduct whereby they contacted then-
13 current employees of Mattel and solicited them to leave Mattel and accept
14 employment with MGA, and bring with them data held by Mattel," and that "at no
15 time has MGA clearly and unequivocally stated that it has search[ed] all sources
16 where the data may be located and produced all that was discovered." Dkt. No.
17 8239-1, at 4.

18        The context of the July 5 Report is critical to understanding its necessity. In
19 recent months, the Special Master found that MGA failed to search Isaac Larian's
20 hard drives (and MGA *still* has not produced any documents from his drives, despite
21 the Court's Orders); failed to search its ArchiveOne email system (and MGA *still*
22 refuses to permit those searches to go forward, despite the Court's Orders); and
23 failed to search other critical sources of information and documents, such as
24 Gustavo Machado's hard drives. These are not minor or incidental oversights; they
25 are abuses of obvious discovery obligations. And they are not accidental; to the
26 contrary, this is MGA's strategy.  Other portions of the very Report and
27 Recommendation at issue demonstrate this. The Special Master ordered Machado's
28 hard drives inspected in the July 5 Report. MGA had resisted Mattel's motion to

1   compel inspection of the drives, claiming that evidence of spoliation uncovered by
2   Mattel was nothing more than "wild allegations . . . concocted to merely disparage
3   MGA."[1]    Contrary to MGA's claim, the Court-appointed experts have now
4   concluded that at least *three* of the Machado hard drives in MGA's possession were
5   wiped with a program called "BeClean" *after* this lawsuit was filed, including on the
6   morning of the drive's imaging in connection with this case.

7       Mattel also identified for the Special Master hundreds upon hundreds of
8   relevant documents that MGA should have produced, but did not and has not—
9   MGA documents that Mattel knows of only because third parties have produced
10  them.    In response, MGA made no showing at all that its searches have been
11  adequate, and makes no such showing in its opposition here.    In fact, MGA's
12  30(b)(6) witness on its document searches could not identify *anything* that MGA
13  had actually searched for compelled documents, other than (supposedly) Larian's
14  hard drives pursuant to this Court's Orders.  In light of this disturbing pattern and
15  the clear relevance of the discovery at issue, the Special Master properly required a
16  broad, bright-line search of "the active file spaces of all available media" for the
17  ordered documents.    The Order is necessary to ensure that Mattel receives
18  documents to which it is entitled without further obstruction by MGA.

19      MGA does not identify any burden associated with the required searches, nor
20  could it—the compelled communications are targeted, relating to 17 specific
21  individuals for a defined time period, and the ordered search is limited to "available"
22  media.  Indeed, MGA conceded the relevance (and lack of burden) of the ordered
23  discovery when it recently offered to produce all email communications for eight of
24  the employees at issue here for a time period of six months after they joined MGA.
25  MGA cannot object that the Special Master—in light of MGA's established pattern

26
27  [1]   MGA's Opposition to Mattel's Motion to Compel Production of Defendant
    Gustavo Machado's Hard Drives, dated March 16, 2010, at 5.
28

-2-

1 of obstructing discovery, refusing to search relevant sources, withholding relevant
2 documents, and spoliating evidence—ordered an additional six months of email for
3 an additional few employees beyond what MGA was already willing to provide.

4 　　　MGA's claim that there are no discovery requests corresponding to the
5 ordered discovery is both incorrect and irrelevant.  Mattel has served numerous
6 requests seeking MGA's communications with and about current and former Mattel
7 employees, encompassing the vast bulk, if not all, of what MGA has been ordered to
8 produce here.  MGA mentions Peter Marlow as its prime example of someone
9 allegedly not the subject of a relevant document request, but there are multiple
10 compelled document requests calling for communications with Veronica Marlow's
11 "*FAMILY MEMBERS*," a defined term that includes her husband, Peter Marlow.
12 Moreover, the Court has repeatedly ordered production of discovery relevant to the
13 parties' allegations, even if not technically called for by a pending discovery
14 request, and indeed has done so at MGA's own insistence.

15 　　　Lastly, MGA objects that the Order contemplates a search by a "third
16 party"—the Court-appointed experts. But MGA ignores that the Order gives MGA
17 alternative options:  it can either certify that it has complied with the Order, *or*
18 submit the media for inspection by the Court-appointed experts. If MGA refuses to
19 certify that it has conducted the ordered searches itself, inspection by the Court-
20 appointed experts is clearly an appropriate remedy.  If anything, in light of MGA's
21 ongoing discovery abuses, the Court should order that the Court-appointed experts
22 carry out the search in the first instance.

23 **Argument**

24 **I.** **THE REPORT AND ORDER CORRECTLY RULED THAT THE**
25 **REQUESTED DISCOVERY IS RELEVANT AND SHOULD BE**
26 **COMPELLED**

27 　　　MGA's objection ignores the Court's July 9, 2010 Order adopting in full the
28 Special Master's July 5, 2010 Report and Recommendation.  See Dkt. No. 8239-1.

1  For that reason alone, MGA's objections should be denied.  MGA has not even
2  attempted to meet its burden to show that reconsideration is appropriate.  See Local
3  Rule 7-19.

### A.  The Compelled Documents Are Relevant

5      MGA has never disputed—either here or before Judge Smith—the relevance
6  of the discovery at issue.  As the Report and Order hold, the discovery is relevant to
7  Mattel's allegations that "the Bratz doll was developed by Carter Bryant while he
8  worked for Mattel" and to MGA's "course of conduct whereby they contacted then-
9  current employees of Mattel and solicited them to leave Mattel and accept
10 employment with MGA, and bring with them data held by Mattel." Dkt. No. 8239-
11 1, at 4.  Indeed, as the Special Master found, "the information requested *clearly* has
12 discovery relevance" to those allegations. Id. (emphasis added).

13     MGA does not dispute that the communications sought are relevant.  In fact,
14 MGA cited the Special Master to a number of responsive communications it has
15 selectively produced, effectively conceding that they are proper subjects of
16 discovery.[2]  And MGA does the same thing in its Objections, submitting a new
17 declaration from its counsel touting certain documents it has produced.[3]  While this

---

19  [2]  See MGA Parties' Opposition to Mattel's Motion to Compel Communications
20  With or Relating to Former Mattel Employees and Relating to the Origins of Bratz, dated March 16, 2010, at 4-10.

21  [3]  See Declaration of Warrington S. Parker in Support of MGA Parties' Objection
22  to Item 3 of Report and Recommendation Dated July 5, 2010, dated July 13, 2010
23  [Dkt No. 8256].  In addition to being insufficient, this declaration, submitted for the
    first time in MGA's objections, is an improper attempt to assert new facts not
24  presented to the Special Master, and must therefore be disregarded. See Greenhow
    v. Secretary of HHS, 863 F.2d 633, 638-39 (9th Cir. 1988), overruled on other
25  grounds, United States v. Hardesty, 977 F.2d 1347 (9th Cir. 1992) (affirming district
    court's refusal to consider an argument party failed to present to the magistrate in
26  the first instance and holding parties do not get "an opportunity to run one version of
    their case past the magistrate, then another past the district court"); see also Marshall
27  v. Chater, 75 F.3d 1421, 1427 (10th Cir. 1996) ("Issues raised for the first time in
28  (footnote continued)

-4-

1  certainly does not satisfy MGA's obligations, it does show that the ordered
2  discovery is relevant and proper.

3       The portions of the July 5 Report at issue here compel two categories of
4  communications: 1) emails to and from certain personal email addresses belonging
5  to former Mattel employees who communicated with MGA prior to their departure
6  from Mattel, and 2) emails referring or relating to certain former Mattel employees
7  for specified time periods (namely, until one year after they joined MGA).[4]  These
8  communications are critically relevant to Mattel's trade secret claims.  The specified
9  individuals are former Mattel employees (or their relevant family members) who
10  communicated with MGA while employed by Mattel, and the time periods sought
11  will capture communications leading up to those employees' departure from Mattel,
12  as well as their use of Mattel trade secrets after they joined MGA.  Notably, MGA
13  never disputes that the bulk of these communications will be relevant, even citing to
14  communications it engaged in with the personal email accounts of Ron Brawer,
15  Gustavo Machado, Mariana Trueba, Pablo Vargas, Jorge Castilla, Nick Contreras,
16  Daniel Cooney, and Janine Brisbois while *each* was still employed by Mattel.[5]  A
17  search for communications related to each of the individuals and the email addresses
18  in the Order is essential to assuring the full production to which Mattel is entitled
19  and has thus far been denied.

20

21

22  objections to the magistrate judge's recommendation are deemed waived."); Cupit v.
23  Whitley, 28 F.3d 532, 535 (5th Cir. 1994) (party waived its objections "[b]y waiting
    until after the magistrate court had issued its findings and recommendations" to raise
24  its argument not presented to the magistrate in the first instance); Paterson-Leitch
25  Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).
    [4]  Order on July 5 Report and Recommendation, at 5-6.
26  [5]  See MGA Parties' Opposition to Mattel's Motion to Compel Communications
27  With or Relating to Former Mattel Employees and Relating to the Origins of Bratz,
    dated March 16, 2010, at 4-10.
28

1       As to the documents and communications related to the origins of Bratz,

2  MGA concedes that all such documents are relevant and responsive to document

3  requests compelled over three years ago.  Mot. at 2 (noting that "documents that

4  refer or relate to Bratz prior to 2001" are responsive to "a document request served

5  in 2005 and an order of 2007").[6]

6       **B.**    **MGA's Contention That No Underlying Requests For Production**

7             **Exist Is Wrong And Irrelevant**

8       The July 5 Report and Order correctly state that "the ESI requested has been

9  the subject of several prior discovery requests."  Order at 4.  MGA concedes that it

10  was compelled nearly three years ago to produce "all ESI in the MGA Parties'

11  possession, custody or control that refer or relate to Bratz prior to January 1, 2001"

12  (see July 5 Report at 6; Mot. at 2-3), but claims there are no document requests that

13  encompass the remaining ordered communications.[7]  This is not correct.  In addition

14  to the requests Mattel has already identified, dozens of *compelled* requests for

15  production, as shown in Appendix A hereto, call for communications (including

16  documents or communications related to such communications) between MGA and

17  the specific individuals at issue here, as well as more generally any current or

18  former Mattel employee.

19       As it did before the Special Master, MGA argues that because Mattel has not

20  propounded requests that list, by name, every single individual and email address

21  specifically named in its motion, the requests do not support the discovery.  See

22  Mot. at 2, 6-9.  This ignores the compelled requests set forth in Appendix A.  As its

23  prime example of an individual not captured by a request, MGA points to Peter

24  Marlow, the husband of MGA vendor and former Mattel employee Veronica

25  Marlow who frequently communicated with MGA on Ms. Marlow's behalf.  Mot. at

26

27    [6]  See also Appendix A at 1 (Request Nos. 32, 33, 34).
      [7]  Objection, at 2, 6, 9.

28

1   2, 8.  Although (as Mattel acknowledged) Mr. Marlow is not himself a former
2   Mattel employee, MGA's communications with him are nonetheless within the
3   scope of several *compelled* document requests, which call for communications with
4   Veronica Marlow's "FAMILY MEMBERS."[8]  MGA's argument that it is under no
5   obligation to produce the Peter Marlow emails and documents in its possession,
6   despite being compelled to do so in the these requests, is troubling, to say the least.
7   Indeed, in light of the numerous relevant, compelled requests calling for the vast
8   bulk of what has been compelled in the July 5 Report and Order, MGA's argument
9   that "*virtually all of what has been ordered is new*" (Opp. at 11) is stunning.

10   Even assuming (contrary to fact) that the discovery sought here exceeds the
11   technical scope of prior requests, the Court has repeatedly ordered both parties to
12   produce documents that have not been the subject of previously propounded
13   document requests.[9]  Many of these were at MGA's insistence.  For example, MGA
14   moved for and was granted ESI relating to Richard De Anda emails, despite citing
15   no document request asking for that.[10]  MGA also propounded discovery requests
16   for Mattel CEO Bob Eckert's documents and, even before any response from Mattel
17   was due, successfully compelled their production.[11]  And MGA sought documents
18   sufficient to describe a "security device" Mattel's 30(b)(6) witness testified about as
19   well as all documents regarding Mattel's alleged "false reports" to retailers, both of
20   which the Court ordered Mattel to produce and neither of which have been the
21   subject of previously propounded document requests.[12]  The discovery Mattel seeks
22   here is proper; MGA does not dispute that.  The presence (or absence) of underlying

23

---

24   [8]   Appendix A, at 1, 7, 8 (Request Nos. 9, 64, 84, 85, and 100).
25   [9]   See, e.g., Court's January 26, 2010 Order [Dkt. No. 6434].
     [10]   See MGA's Motion to Compel ESI for De Anda Emails, dated January 20.
26   2010 (submitted to Special Master Smith).
     [11]   See Court's January 26, 2010 Order, at 9 [Dkt. No. 6434].
27   [12]   January 26, 2010 Order, at 8 [Dkt. No. 6434].
28

1   document requests is ultimately immaterial and certainly does not serve as a proper
2   basis for objections to the Special Master's Report and Order.  See Fed. R. Civ.
3   Proc. 26(b)(1) ("the scope of discovery is . . . any nonprivileged matter that is
4   relevant to a party's claim or defense").

5   **II.    THE REPORT AND ORDER CORRECTLY REQUIRE SEARCHES**
6          **OF AVAILABLE MEDIA THAT MGA HAS REFUSED TO SEARCH**

7          **A.    MGA's Search Efforts For The Documents At Issue Clearly Have**
8                **Not Been Adequate**

9          MGA's opposition to Mattel's underlying motion to the Special Master, as
10  well as the balance of the record before the Court and the Special Master,
11  unequivocally demonstrates that MGA has not complied with its discovery
12  obligations.   MGA has repeatedly denied having any obligation to produce
13  documents that were compelled long ago.  For example, when faced with proof of
14  MGA's non-compliance in the form of the Marlows' production of **850 MGA** emails
15  with mgae.com addresses that MGA never produced, MGA's only response has
16  been that the documents were not ordered, which they clearly were.[13]  Similarly,
17  when Mattel demonstrated that Brian Wing had produced over 150 relevant MGA
18  documents and emails that MGA had failed to produce, MGA claimed that it need
19  not even *search* for relevant Wing documents itself because Wing's third-party
20  production supposedly discharged *MGA's* discovery obligations.[14]   In light of
21

22  _____
    [13]    See MGA Parties' Response to the Supplemental Declaration of Dylan
23  Proctor in Support of Mattel, Inc.'s Motion to Compel MGA Parties to Perform
    Searches for Documents Consistent with the Requirements of Fed. R. Civ. Proc. 34,
24  dated July 12, 2010, at 15; see also Mattel, Inc.'s Motion to Enforce and Compel the
    MGA Parties to Produce Documents Related to the Marlows, dated July 14, 2010
25  [Dkt. No. 8311].
26  [14]    MGA Parties' Response to the Supplemental Declaration of Dylan Proctor in
    Support of Mattel, Inc.'s Motion to Compel MGA Parties to Perform Searches for
27  Documents Consistent with the Requirements of Fed. R. Civ. Proc. 34, dated July
28        (footnote continued)

1   MGA's flouting of its obligations, the July 5 Report and Order recognizes the need
2   for a simple, bright-line search and production requirement, and appropriately
3   ordered one.

4        As shown, MGA also equivocated in its representations to the Special Master
5   about its searches, claiming only that *some* responsive documents have been
6   produced, but nothing more.[15]  The Report and Order notes and rejects MGA's
7   vague claims that it has produced *some* documents "within the scope of the
8   request[s]":

9              [N]o MGA response to [Mattel's] requests or brief filed in
10             regard to this motion has contained an unqualified
11             assertion by MGA that a thorough search has been
12             conducted in an effort to locate and produce the requested
13             data.  On each occasion when this subject has been
14             addressed the contention of MGA has been that they have
15             produced ESI that falls within the scope of the request
16             propounded by Mattel, but at no time has MGA clearly
17             and unequivocally stated that it has search[ed] all sources
18             where the data may be located and produced all that was
19             discovered.  This skirting of the issue is a source of great
20             consternation on the part of Mattel, and it appears its
21             concern is justified.

22   _____

23   12, 2010, at 14 (arguing that MGA need not search for or produce the MGA
     documents that Wing produced because they supposedly would "be identical" to
24   those that Wing produced.).
     [15]   See MGA Parties' Opposition to Mattel, Inc.'s Motion to Compel Electronic
25   Communications With or Relating to Former Mattel Employees and Relating to the
26   Origins of Bratz, dated March 16, 2010, at 1 ("[T]he MGA Parties have produced
     documents . . . with regard to the individuals identified in Mattel's motion."); see
27   also id. at 4 ("Responsive documents … have been produced."); id. at 5-9 (same).
28

1 Dkt. No. 8239-1 at 4. The testimony of MGA's 30(b)(6) witness on its search
2 efforts was to the same effect; she could not provide *any* information about what
3 sources of information MGA had searched, or how any searches were conducted or
4 what search terms were used.[16] And even now, not once does MGA maintain that it
5 has conducted a full, good faith search for these discoverable communications;
6 instead, its new declaration simply states again that *some* documents have been
7 produced.[17] The Report and Order's requirement that MGA search "the active file
8 spaces of all available media" in MGA's possession, custody, or control for the
9 compelled documents properly addresses and resolves MGA's equivocations about
10 its search efforts and search obligations. Id. at 4-6.

11 **B.    The Special Master Was Well Aware Of MGA's History Of**
12 **Inadequate Searches For Compelled Documents When He Issued**
13 **The July 5 Report**

14        The July 5 Report and Order is just one in a series of motions, Reports, and
15 Orders establishing (and attempting to remedy) numerous deficiencies in MGA's
16 electronic search and production efforts. MGA has repeatedly failed to search even
17 the most obvious sources for electronic documents, and continues to this day in its
18 refusals to comply promptly with Orders requiring those sources be searched. The
19 July 5 Report and Order, while certainly not a complete remedy, was an appropriate
20 step in ensuring that MGA's refusals to conduct adequate searches do not prevent
21 Mattel from receiving discovery to which it is entitled.

22

23

_____

24 [16]    See Supplemental Declaration of B. Dylan Proctor in Support of Mattel's
25 Motion to Compel MGA Parties to Perform Searches for Documents Consistent
with the Requirements of Fed. R. Civ. Proc. 34, at 4.
26 [17]    Declaration of Warrington S. Parker in Support of MGA Parties' Objection to
27 Item 3 of the Report and Recommendation Dated July 5, 2010, dated July 14, 2010
[Dkt. No. 8256].
28

1    MGA's failure to search its email archive system, ArchiveOne, highlights its
2  dereliction of its search obligations.[18]  Although this system holds *all* MGA emails
3  older than 90 days and allows MGA employees to access them at the click of a
4  button, incredibly, MGA never searched it for anything.  In a January 21, 2010
5  Report, the Special Master agreed with Mattel and ordered that ArchiveOne be
6  searched by the Court-appointed experts.[19]  The Court entered an Order on this
7  Report on March 11, 2010.[20]  Less than two weeks after the Court entered this
8  Order, MGA attempted to back-track, arguing to the Special Master that "there
9  should be no order requiring a search of ArchiveOne."[21]  The Special Master
10  rejected MGA's improper attempt to end-run the Court's Order, and issued another
11  Report and Recommendation on May 8, 2010, ruling *again* that ArchiveOne should
12  be searched by the Court-appointed experts.[22]  Despite three clear rulings that
13  ArchiveOne is to be searched, MGA continues to this day in its attempts to prevent
14  that search.  In fact, as reported by the Special Master, in recent days MGA
15  unilaterally seized "the results of the searches ILS is conducting in ArchiveOne, and
16  will not permit ILS to remove those results from MGA's site,"[23] in violation of the
17  Court's and the Special Master's Orders.  And now, in further violation of those
18  Orders, MGA continues to re-assert its rejected objections to the Court-ordered
19

20    [18]  See Order on January 21, 2010 Report and Recommendation, dated March 11,
21  2010 [Dkt. No. 7654], at 3-5.
      [19]  Id.
22    [20]  See Order on January 21, 2010 Report and Recommendation, dated March 11,
23  2010 [Dkt. No. 7636].
      [21]  See The MGA Parties' Objections to Proposed ArchiveOne Search Term,
24  dated March 23, 2010, at 1-2.
      [22]  See May 8, 2010 Report and Recommendation, at 2-3.  Notably, unlike the
25  January 21, 2010 Report, the May 8 Report was a self-executing order, stating that
26  "[t]he decision of the Special Master in this regard shall be final and Court approval
27  will not be required." Id. at 4.
      [23]  Email from the Special Master to Mattel and MGA, dated July 2, 2010.
28

1 search of ArchiveOne. For example, on July 14, 2010, MGA argued to the Special
2 Master that ArchiveOne should not be searched because there purportedly has been
3 "no showing or finding that the benefits of searching ArchiveOne outweigh the cost
4 and burden of conducting a search of ArchiveOne."[24]  But of course, the Special
5 Master and the Court long-ago concluded—and ordered—that the search be carried
6 out, overruling those very objections by MGA.  MGA simply refuses to comply
7 based on its rehashing of rejected excuses.  Mattel has yet to obtain any documents
8 from ArchiveOne.

9     Similarly, Mattel learned in late 2009 that MGA had never searched Larian's
10 hard drives for responsive documents and moved to compel.[25]  MGA opposed, but
11 again the Special Master agreed with Mattel and ruled that Larian's hard drives
12 should be searched.[26]  MGA appealed that ruling, arguing that the active files on
13 Larian's hard drives should not be searched for evidence of spoliation *or* for
14 relevant, responsive documents.[27]  On April 7, 2010, the Court rejected most of
15 MGA's arguments, ordering that MGA submit the hard drives to the Court-
16 appointed experts for forensic examination and ordering each party to submit a
17 proposed list of search terms to be used to search the drives for relevance
18 evidence.[28]  The Court noted that "the MGA Parties' failure to even provide the
19 Court with a conclusion as to whether the active files have been reviewed, and

20

21 [24]  See Letter from MGA to the Special Master, dated July 14, 2010 (arguing
that there has been "no showing or finding that the benefits of searching
22 ArchiveOne outweight the cost and burden of conducting a search of
23 ArchiveOne.").
   [25]  See Mattel's Motion to Compel Regarding Electronic Discovery, dated
24 December 7, 2009.
   [26]  January 21, 2010 Report and Recommendation.
25 [27]  See MGA's Objections to Recommendation No. 5 of the Special Master's
26 January 21, 2010 Report and Recommendation, dated February 2, 2010 [Dkt. No.
   7467].
27 [28]  April 7, 2010 Order [Dkt. No. 7709].

28

1  relevant documents thereafter produced, is corrosive to the transparency of the
2  discovery process."[29]   MGA responded by submitting a total of *ten* proposed search
3  terms.[30]   The Court rejected MGA's overly-narrow and grossly inadequate search
4  terms and ordered that MGA complete a search of all Larian's hard drives using
5  Mattel's search terms no later than May 31, 2010.[31]   Despite these clear Orders,
6  MGA still has not produced a *single document* from the Larian hard drives to
7  Mattel, and thus stands in flagrant violation of the Court's Order.[32]

8      Mattel has also identified many hundreds of specific documents that are in
9  MGA's possession and should have been produced, but have not. Mattel learned of
10  these hidden documents existed—many of them emails bearing <mgae.com> email
11  addresses—only because third parties produced them.  For instance, Mattel has
12  identified more than *850* unique, relevant emails, each of which bears an
13  <mgae.com> email address, that third-party Veronica Marlow produced, but MGA
14  failed and refused to produce or even search for.[33]  Similarly, Mattel has identified
15  over 150 relevant documents and emails (including 75 emails bearing <mgae.com>
16  email addresses) produced by Brian Wing that MGA had failed to produce,[34] over
17  30 documents produced by Omni 808 that MGA should have produced, but had
18

19  [29]  Id. at 2.
20  [30]  See MGA Entertainment, Inc.'s Response to Court Order Dated April 7, 2010
21  Re Isaac Larian's Hard Drives, dated April 15, 2010 [Dkt. No. 7723].
    [31]  Amended Order Granting Mattel's Proposed Search Terms for Larian Hard
22  Drive [Dkt. No. 7860].
    [32]  MGA has represented that it will "begin" producing documents by July 26,
23  2010, but refuses thus far to give any time period for completing the already-
24  overdue production.
    [33]  See Mattel's Motion to Enforce and Compel the MGA Parties to Produce
25  Documents Related to the Marlows, dated July 14, 2010.
26  [34]  See Mattel's Motion to Compel MGA Parties to Perform Searches for
    Documents Consistent with the Requirements of Fed. R. Civ. P. 34, dated May 25,
27  2010, at 13-14.
28

1  not,[35] and a critical email produced by Nick Contreras that MGA failed to produce.[36]
2  Mattel also identified instances of MGA withholding relevant documents until they
3  were produced by a third party, then suddenly "finding" them and producing them
4  shortly thereafter.[37] MGA has no defense to any of this, and it shows that MGA has
5  violated even its elementary search obligations.

6      In fact, MGA's response to these showings further establishes this. As to the
7  Contreras email, MGA represented to the Special Master that it had "done a search"
8  for that email but was unable to find it,[38] but in the same brief, MGA conceded it
9  had not searched the hard drive of the email's author (Schuyler Bacon)[39] and had not
10  searched its email archive system, ArchiveOne,[40] where the email is most likely
11  located. As to the Brian Wing production, MGA not only claimed it need not search
12  for the MGA documents he produced that MGA itself had failed to produce despite
13  prior, long-standing orders compelling it to do so,[41] but MGA also claimed that it
14  deserved credit for "producing" the documents that *Wing* produced, since MGA
15  technically transmitted them following its privilege review, omitting that MGA in
16  fact improperly withheld most of the documents until the Court ordered them

17

18

19

20      [35]  Id. at 14.
21      [36]  Id. at 16.
        [37]  Id. at 15 (discussing MGA's recent production of a critical email the day after
22  third party Steve Gozini produced it, despite the fact that MGA had been compelled
23  to produce it months earlier); id. at 16-17 (same as to documents produced by third
        party Anna Rhee during Phase 1).
24      [38]  MGA Parties' Opposition to Mattel's Motion to Compel MGA Parties to
25  Perform Searches for Documents Consistent with the Requirements of Fed. R. Civ.
        Proc. 34, dated June 7, 2010, at 8.
26      [39]  Id. at 6 n.3.
        [40]  Id. at 8-9.
27      [41]  See supra, at 8.
28

1  produced.[42]  And as to the missing Omni documents, MGA's only excuse was that
2  its Omni 808 review is still "ongoing," and thus "there is no reason to suspect that
3  [the missing documents] will not be produced by MGA by the conclusion of the
4  Omni review."[43]  But the documents were ordered produced by February 2, 2010,[44]
5  and in any case, MGA has elsewhere tried to retract its claim that its Omni review is
6  ongoing, claiming its brief to Judge Smith was a "mistake."

7      That MGA has not abided by its search obligations is clear.  The Special
8  Master properly imposed a bright-line search scope to minimize the risk of further
9  delays and supposed misunderstandings by MGA.

10     **C.    The July 5 Report Addressed And Uncovered Additional**
11          **Spoliation By MGA**

12     The July 5 Report and Order have themselves already led to additional
13  relevant evidence.  In the July 5 Report, the Special Master ruled that Gustavo
14  Machado's hard drives be submitted to the Court-appointed experts in light of
15  "substantial evidence indicating Machado engaged in continuing efforts to delete or
16  'wipe' relevant data from the Machado Hard Drives" and also MGA's failure to say
17  "what, if any, efforts have been made to search the Machado Hard Drives and
18  produce ESI contained thereon having discovery relevance."[45]  Furthermore, based

19

20     [42]  See MGA Parties' Response to Supplemental Declaration of Dylan Proctor in
21  Support of Mattel's Motion to Compel MGA Parties to Perform Searches for
   Documents Consistent with the Requirements of Fed. R. Civ. P. 34, at 14.
22     [43]  Id. at 14-15.
       [44]  See Order Regarding Discovery Matters, dated January 26, 2010, at 4-5 [Dkt
23  No. 7434] (compelling MGA to produce "all non-privileged documents relating to
24  any actual, promised, proposed or prospective transfer of money or any other item
   of value to, from, or involving Omni 808 Investors, LLC, any of its current or
25  former members and/or anyone with an interest in those current or former
26  members").
       [45]  Order on July 5 Report and Recommendation, dated July 12, 2010, at 2 [Dkt
27  No. 8239-1].
28

1  on evidence that "*spoliation activities may have been engaged in by MGA*," the
2  Special Master also ordered MGA to turn over Brian Wing's hard drives for
3  inspection by the Court-appointed experts.[46]

4       While Mattel is not yet aware of the results of the Wing analysis, on July 16,
5  2010, the Court-appointed experts delivered their analysis of Machado's MGA hard
6  drives pursuant to the July 5 Report. On *three* of the four hard drives analyzed, the
7  Court-appointed experts found evidence that a wiping software program called
8  "BeClean" was run on the drives.[47] The dates the wiping software was run (August
9  28, 2006, April 11, 2007, and August 27, 2007) are all *after* Machado and MGA
10 were on notice of potential litigation related to Machado's theft of trade secrets by
11 Mattel, and two of the three dates are after Mattel filed its complaint against
12 Machado and MGA specifically related to those allegations. Moreover, at least one
13 hard drive was wiped on four separate occasions, and another was wiped "*the
14 morning of the date when the image was collected – 04/11/07.*" Id. at 2.

15      MGA had sought to conceal these facts from coming to light by urging the
16 Special Master that there was no evidence of spoliation on Machado's hard drives,
17 claiming Mattel's evidence that wiping had in fact occurred consisted of "wild
18 allegations . . . concocted to merely disparage MGA."[48] MGA also falsely
19 represented to the Special Master it had done an "exhaustive search" for any
20 relevant evidence on Machado's hard drive (though conspicuously failing to identify

21

22

---

23  [46]  Id. at 3.
    [47]  See Report of Technical Advisor International Litigation Services, Inc.,
24  submitted to the Special Master for eDiscovery James Smith, dated July 12, 2010.
25  As to the fourth hard drive, MGA apparently submitted a "ghost copy" that did not
    contain any slack space or deleted files, so the Court-appointed experts were unable
26  to determine whether wiping software had ever been present on the drive. Id. at 2.
    [48]  MGA's Opposition to Mattel's Motion to Compel Production of Defendant
27  Gustavo Machado's Hard Drives, dated March 16, 2010, at 5.

28

1 | the hard drive it had supposedly searched).[49]  The Special Master properly rejected
2 | those assertions, just as he properly rejected the assertions that MGA once again
3 | urges on appeal here.

4 | In light of the record, the Special Master's requirement that MGA conduct
5 | broad, bright-line searches for key documents, such as early Bratz documents, is
6 | more than justified.   In fact, this is exactly what is needed to reduce the risk that
7 | MGA, as it has in the past, will withhold, destroy or otherwise prevent Mattel from
8 | receiving the documents to which it is entitled.  Although it complains that the
9 | ordered searches are too broad, nowhere does MGA argue, or show, that the
10 | discovery sought is unduly burdensome and, as such, has not met its burden.[50]
11 | Indeed, MGA cannot do so given the scope of search obligations that it has
12 | successfully sought to impose on Mattel.[51]

## III.   MGA'S COMPLAINT THAT A "THIRD PARTY" HAS BEEN GIVEN
## ACCESS TO ITS SYSTEMS IS A RED HERRING

15 | MGA lastly objects to "allow[ing] a third party access" to its computer
16 | systems. Mot. at 11.  This reference to the Court-appointed experts is perplexing,

---

[49]   Id. at 1.

[50]   A party cannot succeed in showing undue burden without providing "any
supporting declaration or specific evidence to support their assertion of burden."
Discovery Master Order No. 11 [Dkt. No. 5088], at 18; see also Jackson v.
Montgomery Ward & Co., 173 F.R.D. 524, 528-29 (D. Nev. 1997 (party claiming a
discovery request "is unduly burdensome must allege specific facts which indicate
the nature and extent of the burden, usually be affidavit or other reliable evidence.").

[51]   Faced with far less evidence of any failure to adequately search for responsive
documents, the Court recently compelled Mattel to undertake broad search
obligations comparable to those ordered here. See Order Granting MGA's Ex Parte
Application to Compel Documents from Mattel Custodian Sujata Luther Prior to
Her June 17 Deposition, dated June 14, 2010 [Dkt No. 8106] (based on assertions
"suggest[ing]" that Mattel has not produced all responsive documents created by Ms.
Luther," ordering Mattel to "search its North American servers and email back-up
tapes" under the Special Master's supervision).

1   both because ILS obviously is not some random "third party" as MGA implies and
2   because MGA simply misreads the July 5 Report and Order in this regard.

3       The Order states that MGA shall:

4           a) provide a certification that it has searched the active file
5           spaces of all available media for the ESI requested as
6           identified in the Report of the Special Master contained
7           herein and has produced or identified in a privilege log all
8           such documents that have been discovered; *or,*
9           b) submit the media for inspection by the Court-appointed
10          e-discovery consultant, ILS, with instructions that a search
11          for the documents requested utilizing the criteria identified
12          in the Report of the Special Master contained herein. [sic]

13  Dkt. No. 8239-1 at 7-8. Thus, the Order *presents MGA with an alternative*—certify
14  that the ordered searches have been completed or submit the relevant media to ILS.
15  Indeed, the Special Master presented MGA with this alternative *despite* his finding
16  that in light of MGA's prior abuses and delays, "*the search of the media containing*
17  *responsive documents would best be conducted by ILS.*"[52]   Mattel submits that, if
18  anything, considering MGA's ongoing efforts to frustrate electronic discovery, this
19  Court should require that the search by conducted by ILS in the first instance.
20  Indeed, despite MGA's protests to the contrary, it was only when the Court-
21  appointed experts were given access that the truth about Gustavo Machado's MGA
22  hard drives was revealed—they had been repeatedly wiped after this lawsuit was
23  filed, including on the morning the drives were collected for discovery in this
24  matter.  Clearly, inspection by the Court-appointed experts is warranted.

25
26
27  ───────────
    [52]   Dkt. No. 8239-1 at 5.
28

1

## Conclusion

2      Mattel was already been deprived of key evidence during Phase 1 of this

3  litigation.  MGA is continuing to deprive Mattel of key evidence by obstructing

4  Court-ordered electronic searches and, in fact, has now been exposed as making

5  false representations in an effort to stop the truth about spoliation from coming to

6  light.  Given this record and MGA's misconduct, the Special Master correctly

7  ordered a comprehensive search for relevant documents to ensure that Mattel is not

8  again prejudiced in Phase 2.  MGA's Objections should be rejected.

9

10  DATED:  July 19, 2010       QUINN EMANUEL URQUHART &
SULLIVAN, LLP

11

12

13               By /s/ Michael T. Zeller

14                  Michael T. Zeller
Attorneys for Mattel, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX A**

**RFPS PROPOUNDED TO MGA PARTIES WHICH HAVE BEEN COMPELLED**

**RELATED TO FORMER MATTEL EMPLOYEES AND THE ORIGINS OF BRATZ**

1.   **5/15/07 Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA (Request Nos. 1, 2, 6-13, 26, 27, 32-41, 43, 45, 46, 49-51, 53, 55, 57, 59, 61, 63, 64, 66, 67, 69, 70, 88, 90-92, 96-100 of Mattel's First Request for Production to MGA, dated 3/14/05)**

| RFP No. | Mattel's Request |
|---|---|
| 1 | All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and BRYANT, including without limitation all drafts thereof and all actual or proposed amendments, modifications and revisions thereto. |
| 2 | All DOCUMENTS that REFER OR RELATE TO the performance of any agreement or contract between YOU and BRYANT. |
| 6 | All DOCUMENTS prepared, created, received or transmitted (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO BRYANT. |
| 7 | All DOCUMENTS that REFER OR RELATE TO any work, activities or services, including without limitation any freelance work or consulting services, that BRYANT performed for or with YOU or on YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was prepared, created, received or transmitted, whether in whole or in part). |
| 9 | All DOCUMENTS that REFER OR RELATE TO any work, activities or services, including without limitation any freelance work or consulting services, that Veronica Marlow performed for or with YOU or on YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was prepared, created, received or transmitted, whether in whole or in part). |
| 12 | All DOCUMENTS that REFER OR RELATE TO any work, activities or services, including without limitation any freelance work or consulting services, that Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) performed for or with YOU or on YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was prepared, created, received or transmitted, whether in whole or in part). |
| 26 | All DOCUMENTS that REFER OR RELATE TO DESIGNS that BRYANT produced, prepared, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to January 1, 2001. |
| 27 | All DOCUMENTS that REFER OR RELATE TO DESIGNS produced, prepared, created, authored, conceived of or reduced to practice prior to January 1, 2001 by BRYANT, whether alone or jointly with others, in which YOU have purported at any time to purchase, acquire or own any right, title or interest (whether in whole or in part). |
| 32 | All DOCUMENTS prepared, written, transmitted or received (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO BRATZ. |
| 33 | All DOCUMENTS that REFER OR RELATE TO BRATZ that REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when such document was prepared, written, transmitted or received, whether in whole or in part). |
| 34 | All DOCUMENTS prepared, written, transmitted or received (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO ANGEL. |
| 35 | All DOCUMENTS that REFER OR RELATE TO ANGEL that REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when such document |

| RFP No. | Mattel's Request |
|---|---|
| | was prepared, written, transmitted or received, whether in whole or in part). |
| 36 | All DOCUMENTS that REFER OR RELATE TO the origin(s), conception or creation of BRATZ, including without limitation all DOCUMENTS that REFER OR RELATE TO the timing of, and the method and manner in which, BRATZ first came to YOUR attention. |
| 37 | All declarations, affidavits and other sworn written statements of any other type or form by YOU that REFER OR RELATE TO BRATZ (other than those previously filed and served in this action). |
| 38 | All transcripts and video and/or audio recordings of statements made by YOU under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, that REFER OR RELATE TO BRATZ (other than those taken in this action when Mattel, Inc.'s counsel was in attendance). |
| 39 | All declarations, affidavits and other sworn written statements of any other type or form by any PERSON that REFER OR RELATE TO ANGEL (other than those previously filed and served in this action). |
| 40 | All transcripts and video and/or audio recordings of statements made by any PERSON under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, that REFER OR RELATE TO ANGEL (other than those taken in this action when Mattel, Inc.'s counsel was in attendance). |
| 41 | All DOCUMENTS that REFER OR RELATE TO BRATZ and/or ANGEL filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad Larian against Isaac Larian, including without limitation all declarations, affidavits and sworn testimony given by any PERSON in such suit or arbitration proceedings. |
| 43 | All DOCUMENTS that REFER OR RELATE TO any payment made to or on behalf of BRYANT for DESIGNS that BRYANT assigned or transferred to YOU prior to October 21, 2000, regardless of when such payment was actually made. |
| 45 | All of YOUR royalty statements to or for BRYANT. |
| 46 | All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of BRATZ. |
| 51 | All DOCUMENTS that REFER OR RELATE TO each and every sculpt of BRATZ (including without limitation any model, prototype or sample thereof) prior to June 1, 2001. |
| 53 | All DOCUMENTS that REFER OR RELATE TO the procurement, fabrication, preparation and production of each and every mold for BRATZ (including without limitation for any model, prototype or sample thereof) prior June 1, 2001, including without limitation all orders, purchase orders and invoices relating thereto. |
| 55 | All DOCUMENTS that REFER OR RELATE TO the exhibition, or proposed, offered or requested exhibition, of BRATZ (including without limitation any model, prototype or sample thereof) to any third party prior to June 1, 2001. |
| 57 | DOCUMENTS sufficient to show when and where BRATZ (including without limitation any model, prototype or sample thereof) was first marketed to any wholesaler, distributor and/or retailer. |
| 59 | DOCUMENTS sufficient to show when and where BRATZ (including without limitation any model, prototype or sample thereof) was first offered for sale to any wholesaler, distributor and/or retailer. |
| 61 | DOCUMENTS sufficient to show when and where BRATZ was first shipped, distributed and sold. |
| 63 | All DOCUMENTS that REFER OR RELATE TO the licensing, including without limitation the proposed or requested licensing, of BRATZ prior to December 31, 2001. |
| 64 | All COMMUNICATIONS between YOU and any manufacturer, or any |

| RFP No. | Mattel's Request |
|---|---|
| | contemplated, proposed or potential manufacturer, that REFER OR RELATE TO BRATZ prior to June 1, 2001. |
| 66 | All COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO the distribution or potential distribution of BRATZ prior to June 1, 2001. |
| 69 | All COMMUNICATIONS between YOU and BRYANT prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS. |
| 96 | All doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ. |
| 97 | All doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO ANGEL. |
| 98 | All doll heads, sculpts, prototypes, models, samples and tangible items that Anna Rhee painted, whether in whole or in part, for or with YOU or on YOUR behalf or for or on behalf of BRYANT prior to January 1, 2001. |
| 99 | All doll heads, sculpts, prototypes, models, samples and tangible items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that BRYANT produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to January 1, 2001. |
| 100 | All doll heads, sculpts, prototypes, models, samples and tangible items that support, refute or otherwise REFER OR RELATE TO any facts underlying YOUR Affirmative Defenses in this action. |

2. **8/13/07 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by MGA (Request Nos. 1, 3-10, 12, 13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-119, 137-140, 157-161, 164 and 166 of Mattel's First Set of Requests for Documents and Things Re Unfair Competition Claims, dated 12/18/06)**

| RFP No. | Mattel's Request |
|---|---|
| 68 | All DOCUMENTS RELATING TO the email account <plot04@aol.com>, including but not limited to all emails and attachments sent from, sent to, received by, transmitted by way of or through and/or stored in such account in any manner. |
| 69 | All DOCUMENTS RELATING TO when the email account <plot04@aol.com> was first registered, set up or established. |
| 70 | All DOCUMENTS identifying each PERSON who registered, set up, established or used the email account <plot04@aol.com>. |
| 71 | All COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004. |
| 72 | All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Machado prior to April 20, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS. |
| 73 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Machado prior to April 20, 2004. |
| 74 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation from Mattel. |
| 75 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Machado, whether directly or indirectly, by YOU. |

| RFP No. | Mattel's Request |
|---|---|
| 76 | All DOCUMENTS received by YOU, directly or indirectly, from Machado RELATING TO any MATTEL product or plan. |
| 77 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Machado. |
| 78 | A copy of each personnel file maintained or created by YOU RELATING TO Machado. |
| 79 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Machado RELATING TO any of the CONTESTED MGA PRODUCTS. |
| 80 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Machado RELATING TO any of the CONTESTED MATTEL PRODUCTS. |
| 81 | All COMMUNICATIONS between YOU and Mariana Trueba Almada ("Trueba") prior to April 20, 2004. |
| 82 | All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Trueba prior to April 20, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS. |
| 83 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Trueba prior to April 20, 2004. |
| 84 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation from Mattel. |
| 85 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Trueba, whether directly or indirectly, by YOU. |
| 86 | All DOCUMENTS received by YOU, directly or indirectly, from Trueba RELATING TO any MATTEL product or plan. |
| 87 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Trueba. |
| 88 | A copy of each personnel file maintained or created by YOU RELATING TO Trueba. |
| 89 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MGA PRODUCTS. |
| 90 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MATTEL PRODUCTS. |
| 91 | All COMMUNICATIONS between YOU and Pablo Vargas San Jose ("Vargas") prior to April 20, 2004. |
| 92 | All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Vargas prior to April 20, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS. |
| 93 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas prior to April 20, 2004. |
| 94 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any |

| RFP No. | Mattel's Request |
|---------|------------------|
| | PERSON, RELATING TO Vargas' resignation from Mattel. |
| 95 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU. |
| 96 | All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan. |
| 97 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas. |
| 98 | A copy of each personnel file maintained or created by YOU RELATING TO Vargas. |
| 99 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MGA PRODUCTS. |
| 100 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MATTEL PRODUCTS. |
| 101 | All COMMUNICATIONS between YOU and Janine Brisbois ("Brisbois") prior to September 27, 2005. |
| 102 | All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brisbois prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS. |
| 103 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois prior to September 27, 2005. |
| 104 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel. |
| 105 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by YOU. |
| 106 | All DOCUMENTS received by YOU, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan. |
| 107 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brisbois. |
| 108 | A copy of each personnel file maintained or created by YOU RELATING TO Brisbois. |
| 109 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Brisbois RELATING TO any of the CONTESTED MGA PRODUCTS. |
| 110 | All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Brisbois RELATING TO any of the CONTESTED MATTEL PRODUCTS. |
| 111 | All COMMUNICATIONS between YOU and Ron Brawer ("Brawer") prior to October 2, 2004. |
| 112 | All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brawer prior to October 2, 2004, including but not limited to all calendar entries, |

| RFP No. | Mattel's Request |
|---|---|
| | phone logs, phone records and notes reflecting such COMMUNICATIONS. |
| 113 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brawer prior to October 2, 2004. |
| 114 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation from Mattel. |
| 115 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brawer, whether directly or indirectly, by YOU. |
| 116 | All DOCUMENTS received by YOU, directly or indirectly, from Brawer RELATING TO any MATTEL product or plan. |
| 117 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brawer. |
| 119 | All DOCUMENTS RELATING TO the facts that YOU contend support the claims for relief in YOUR COMPLAINT. |
| 137 | All DOCUMENTS RELATING TO the allegations in Paragraph 75 of YOUR COMPLAINT regarding MATTEL's dealings and COMMUNICATIONS with former employees, including but not limited to all COMMUNICATIONS between YOU and any present or former employees or contractors of MATTEL. |
| 138 | All COMMUNICATIONS between YOU and any PERSON RELATING TO the departure from MATTEL of any current or former MATTEL employee or contractor. |
| 139 | All COMMUNICATIONS between YOU and any PERSON RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current or former MATTEL employee or contractor. |
| 140 | All COMMUNICATIONS between YOU and any current or former MATTEL employee or contractor RELATING TO the ownership of any idea, concept, design, or product. |
| 160 | All DOCUMENTS received from MATTEL (whether directly or indirectly) by YOU at any time since January 1, 1999. |
| 161 | All DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL, other than MATTEL products that YOU purchased at retail. |

3. **12/31/07 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions (Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 79, 82-101, 139-146, 180, 198 (as limited), 207, 208, 213, 221, 223 and 269 of Mattel's First Set of Requests for Production of Documents and Things to Larian, dated 6/13/07; Request Nos. 80, 81, 113-115, 123-125, 179, 181 and 209 in accordance with Larian's supplemental responses; documents responsive to Request Nos. 179-181 may be redacted as provided.)**

| RFP No. | Mattel's Request |
|---|---|
| 1 | All DOCUMENTS prepared, drafted, written, transmitted or received (whether in whole or in part) prior to December 31, 2001 RELATING TO BRATZ. |
| 2 | All DOCUMENTS RELATING TO BRATZ and RELATING TO any time prior to December 31, 2001 (regardless of when such DOCUMENT was prepared, written, transmitted or received, whether in whole or in part). |
| 13 | All COMMUNICATIONS RELATING TO BRATZ between YOU or MGA and |

| RFP No. | Mattel's Request |
|---|---|
| | any PERSON prior to December 31, 2001. |
| 15 | All COMMUNICATIONS RELATING TO BRATZ between YOU or MGA and BRYANT. |
| 32 | All COMMUNICATIONS between YOU or MGA and any wholesaler, distributor, and/or retailer RELATING TO BRATZ prior to December 31, 2001. |
| 33 | All COMMUNICATIONS between YOU or MGA and any wholesaler, distributor, and/or retailer RELATING TO ANGEL. |
| 35 | All DOCUMENTS RELATING TO when and where ANGEL (including without limitation any model, prototype or sample thereof) was first marketed to any wholesaler, distributor and/or retailer. |
| 41 | All COMMUNICATIONS between YOU or MGA and any PERSON that REFER OR RELATE TO the distribution or proposed or potential distribution of BRATZ prior to December 31, 2001. |
| 61 | All DOCUMENTS, including without limitation COMMUNICATIONS, prepared, drafted, created, received or transmitted (whether in whole or in part) prior to December 31, 2001 RELATING TO BRYANT. |
| 62 | All DOCUMENTS RELATING TO any actual, potential, proposed, considered or contemplated work, activities or services, including without limitation any freelance work or consulting services, by BRYANT for, with or on behalf of YOU or MGA prior to December 31, 2001 (regardless of when any such DOCUMENT was prepared, created, received or transmitted, whether in whole or in part). |
| 64 | All DOCUMENTS RELATING TO any actual, potential, proposed, considered or contemplated work, activities or services, including without limitation any freelance work or consulting services, by Veronica Marlow for, with or on behalf of YOU or MGA prior to December 31, 2001 (regardless of when any such DOCUMENT was prepared, created, received or transmitted, whether in whole or in part). |
| 67 | All DOCUMENTS RELATING TO any actual, potential, proposed, considered or contemplated work, activities or services, including without limitation any freelance work or consulting services, by Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) for, with or on behalf of YOU or MGA prior to December 31, 2001 (regardless of when any such DOCUMENT was prepared, created, received or transmitted, whether in whole or in part). |
| 84 | All DOCUMENTS RELATING TO any actual, potential, proposed, considered or contemplated agreement or contract between YOU or MGA and Veronica Marlow or her FAMILY MEMBERS, including without limitation all drafts thereof and amendments, modifications and revisions thereto, and all COMMUNICATIONS relating thereto. |
| 85 | All DOCUMENTS RELATING TO any payments of money or the transfer of anything of value to Veronica Marlow or her FAMILY MEMBERS. |
| 86 | All DOCUMENTS RELATING TO any actual, potential, proposed, considered or contemplated agreement or contract between YOU or MGA and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) or her FAMILY MEMBERS, including without limitation all drafts thereof and amendments, modifications and revisions thereto, and all COMMUNICATIONS relating thereto. |
| 87 | All DOCUMENTS RELATING TO any payments of money or the transfer of anything of value to Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) or her FAMILY MEMBERS. |
| 98 | All DOCUMENTS RELATING TO DESIGNS produced, prepared, created, authored, conceived of or reduced to practice prior to December 31, 2001 by Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), whether alone or jointly with others, in which YOU or MGA have purported at any time to purchase, acquire or own any right, title or interest (whether in whole or in |

| RFP No. | Mattel's Request |
|---|---|
| | part). |
| 100 | All DOCUMENTS RELATING TO DESIGNS produced, prepared, created, authored, conceived of or reduced to practice prior to January 1, 2001 by Veronica Marlow, whether alone or jointly with others, in which YOU or MGA have purported at any time to purchase, acquire or own any right, title or interest (whether in whole or in part). |
| 140 | All DOCUMENTS RELATING TO any and all payments or transfers of anything of value that YOU or MGA have made, have offered or proposed to make or have promised or agreed to make, to or for the benefit of Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) or her FAMILY MEMBERS. |
| 198 | All COMMUNICATIONS between YOU and any individual while the individual was employed by MATTEL. |

**4.** **4/14/08 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents and Things by MGA Entertainment, Inc.; Denying Request For Sanctions (Request Nos. 31, 40-42 and 78-86 (as limited) of Mattel's Third Set of Requests for Documents and Things to MGA, dated 10/24/07)[1]**

| RFP No. | Mattel's Request |
|---|---|
| 42 | All COMMUNICATIONS between Isaac Larian and Paula Garcia, including without limitation all such COMMUNICATIONS that REFER OR RELATE TO MATTEL, any MATTEL doll or product, BRYANT or BRATZ. |

**5.** **4/14/08 Order Granting in Part Mattel's Motion to Compel MGA to Produce Communications Regarding This Action (Request No. 48 of Mattel's First Set of Requests for Production of Documents and Things to MGA Entertainment Inc., dated 3/14/05)**

| RFP No. | Mattel's Request |
|---|---|
| 48 | All non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action. |

**6.** **4/28/09 Phase 2 Discovery Matter Order No. 22 Regarding Mattel's Motion for Reconsideration of Portions of Discovery Master's 12/31/07 Order (Request No. 198 of Mattel's First Set of Requests for Production of Documents and Things to Isaac Larian, dated 6/13/07)**

| RFP No. | Mattel's Request |
|---|---|
| 198 | All COMMUNICATIONS between YOU and any individual while the individual was employed by MATTEL. |

**7.** **8/26/09 Phase 2 Discovery Matter Order No. 52, Regarding: (1) Motion to Compel MGA Mexico to Produce Documents Responsive to First, Second and Third Sets of Phase 1 Requests for Production; and (2) Motion to Compel MGA Mexico to Produce**

---

[1]   Mattel withdrew its motion with respect to Request Nos. 34, 35, 37 and 39, but MGA was ordered to serve supplemental responses to these Requests "to reflect what documents MGA has produced."

**Documents Responsive to First Set of Phase 2 Requests for Production (Request Nos. 1-8, 13-22, 25-35, 42-45, 54-58, 61, 71-85, 89-96, 101-104, 106, 117-147, 151-167, 174, 175, 177-179, 181-192, 194-199, 201-219, 221, 222, 227-248, 253-268, 277-299, 302-316, 329-342, 345-385, 387-397, 400-410, and 412-417 of Mattel's Second Set of Requests for Documents and Things to MGA Mexico, dated 12/12/07; and Request Nos. 27, 28, 38, 51-54, 58, 60, 62, 64, 66-68, 70-76, and 79-83 of Mattel's First Set of Requests for Documents and Things to MGA Mexico (Phase 2), dated 4/16/09)**

| RFP No. | Mattel's Request |
|---------|------------------|
|  | **Second Set of RFPs to MGA Mexico (Phase 1)** |
| 363 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING to YOUR actions in response to, or efforts to stop, thwart, prevent, counter or mitigate, MATTEL from allegedly "coercing its employees to accept restrictive covenants . . . and non-compete clauses and other efforts to prevent prospective MGA employees from accepting offers of employment." |
| 364 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING to any loss, harm, injury, increased expense, lost revenue or profits, or any other damage caused to YOU by MATTEL allegedly "coercing its employees to accept restrictive covenants . . . and non-compete clauses and other efforts to prevent prospective MGA employees from accepting offers of employment." |
| 369 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE TO YOUR allegation that MATTEL "falsely inflat[ed] its Barbie sales figures in an effort to mislead the public and retailers." |
| 370 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that YOU contend prove or that YOU will rely on at trial to prove that MATTEL "falsely inflat[ed] its Barbie sales figures in an effort to mislead the public and retailers." |
| 378 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that YOU contend prove or tend to prove that MATTEL issued "falsely inflat[ed . . .] Barbie sales figures." |
| 409 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE TO YOUR knowledge or belief that any PERSON employed by YOU was performing work or intended to perform work for any competitor of YOURS. |
| 410 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE TO any statements, threats or warnings by YOU to any PERSON RELATING to such PERSON'S performing work or intending to perform work for any competitor of YOURS, including without limitation, such COMMUNICATIONS RELATING to such PERSON'S contractual or legal obligations to YOU. |
|  | **First Set of Phase 2 RFPs to MGA Mexico[2]** |
| 27 | All COMMUNICATIONS between Isaac Larian and VARGAS, on or after March |

---

[2]   For Request Nos. 27, 28, 38, 51-54, 58, 60, 62, 64, 66-68, 70-76, and 79-83 of Mattel's First Set of Phase 2 RFPs to MGA Mexico, MGA Mexico was ordered to produce "only" those documents it "offered to produce" but was also compelled to serve verified supplemental responses that "(1) explain in detail how it has defined the scope of 'relevant' documents being produced in response to the particular Request; (2) cite any facts or allegations of the parties supporting its' definition of 'relevance,' (3) describe, in general terms, the types of documents being produced pursuant to its definition of 'relevance;' and(4) describe the types of documents excluded from production pursuant to its definition of 'relevance.'"

| RFP No. | Mattel's Request |
|---|---|
| | 1, 2007, REFERRING OR RELATING TO MATTEL. |
| 28 | All COMMUNICATIONS between Isaac Larian and TRUEBA, on or after March 1, 2007, REFERRING OR RELATING TO MATTEL. |
| 38 | All DOCUMENTS REFERRING OR RELATING TO the job duties or employment functions of VARGAS or TRUEBA, on or after March 1, 2007. |
| 51 | All COMMUNICATIONS with any law enforcement official, prosecutor or government agency REFERRING OR RELATING TO VARGAS or TRUEBA. |
| 52 | All DOCUMENTS REFERRING OR RELATING TO the receipt, possession, custody or use of any MATTEL document, property or information by YOU, VARGAS or TRUEBA. |
| 53 | All COMMUNICATIONS by, to or from VARGAS or TRUEBA REFERRING OR RELATING TO their or YOUR receipt, transfer, transmission, downloading, uploading, reproduction, possession, custody, use or theft of any MATTEL DOCUMENT, property or information. |
| 54 | All COMMUNICATIONS REFERRING OR RELATING TO the authority or authorization, or lack of authority or authorization, of VARGAS or TRUEBA in connection with YOUR receipt, possession, custody or use of any MATTEL document, property or information. |
| 58 | All DOCUMENTS REFERRING OR RELATING TO VARGAS' and TRUEBA's responsibilities for MGA MEXICO, on or after March 1, 2007. |
| 60 | All DOCUMENTS REFERRING OR RELATING TO VARGAS' and TRUEBA's duties, obligations or responsibilities not to use the trade secrets and confidential information of any other PERSON, including but not limited to MATTEL, on or after March 1, 2007. |
| 73 | All DOCUMENTS REFERRING OR RELATING TO YOUR preservation or destruction of DOCUMENTS REFERRING OR RELATING TO THIS ACTION. |
| 75 | All DOCUMENTS REFERRING OR RELATING TO the preservation or destruction of DOCUMENTS by VARGAS or TRUEBA REFERRING OR RELATING TO THIS ACTION. |
| 76 | All DOCUMENTS REFERRING OR RELATING TO the preservation or destruction of DOCUMENTS by VARGAS or TRUEBA REFERRING OR RELATING TO any criminal investigation or prosecution or potential criminal investigation or prosecution concerning the receipt, transfer, transmission, downloading, uploading, reproduction, possession, custody, use or theft of any MATTEL DOCUMENT, property or information. |

**8.   9/9/09 Phase 2 Discovery Matter Order No. 60, Regarding: Motion of Mattel to Enforce Prior Orders Relating to Supplemental Interrogatory Nos. 68 and 69 and Document Request Nos. 75, 85, 95, 105 and 115 (Request Nos. 75, 85, 95, 105 and 115 of Mattel's First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA, dated 12/18/06)**

| RFP No. | Mattel's Request |
|---|---|
| 75 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Machado, whether directly or indirectly, by YOU. |
| 85 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Trueba, whether directly or indirectly, by YOU. |
| 95 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to |

| RFP No. | Mattel's Request |
|---|---|
| | Vargas, whether directly or indirectly, by YOU. |
| 105 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by YOU. |
| 115 | All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brawer, whether directly or indirectly, by YOU. |