MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

Case No. CV 04-9049 DOC (RNBx)
Consolidated with: Nos. CV 04-9059 and CV 05-2727

**MGA PARTIES' REPLY IN SUPPORT OF THEIR OBJECTION TO ITEM 3 OF THE REPORT AND RECOMMENDATION DATED JULY 5, 2010**

# TABLE OF CONTENTS


Page

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. MGA'S OBJECTION TO THE JULY 5 REPORT IS NOT A MOTION FOR RECONSIDERATION .......... 2

II. MATTEL CANNOT DISPUTE THAT IT DID NOT REQUEST THE DOCUMENTS AT ISSUE .......... 3

A. Mattel's Document Requests Do Not Cover The Documents Ordered .......... 3

B. The Absence Of Any Underlying Document Requests Is Relevant Because The Report Does More Than Merely Order The Production Of Discoverable Documents .......... 5

III. THE RECOMMENDATIONS OF ITEM 3 OF THE REPORT WILL INAPPROPRIATELY PRODUCE IRRELEVANT AND PERSONAL DOCUMENTS .......... 6

IV. THE RECOMMENDATIONS OF ITEM 3 OF THE REPORT ARE FATALLY OVERBROAD .......... 7

A. The Scope Of The Search Commanded By The Report Is Overreaching .......... 8

B. ILS Should Not Conduct Any Search The Court May Order .......... 9

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Diepenhorst* v. *City of Battle Creek*, 2006 WL. 1851243 (W.D. Mich 2006) .......... 10

*In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003) .......... 9

*School Dist. No. 1J, Multnomah County* v. *ACandS, Inc.*, 5 F.3d 1255 (9th Cir. 1993) .......... 2

*Scotts Co. LLC* v. *Liberty Mut. Ins. Co.*, 2007 WL. 1723509 (S.D. Ohio June 12, 2007) .......... 10

*Williams* v. *Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144 (D. Mass 2005) .......... 10

*Winkles* v. *United States*, 2008 WL. 755933 (C.D. Cal Mar. 18, 2008) .......... 2

### FEDERAL STATUTES

Fed. R. Civ. P. 26(b) .......... 7

Fed. R. Civ. P. 34(a) .......... 10

# INTRODUCTION

Item 3 of the July 5, 2010 Report and Recommendation of the Electronic Discovery Master ("Report") commands an overbroad search for and production of documents that Mattel never requested. Despite the fact that MGA was never asked to produce these documents and thus could hardly have failed to produce them, it further recommends that MGA be subject to a vaguely-defined, intrusive search of all of its electronic media by a third party. It explicitly recommends that, following the search, communications "referring or relating to" eighteen individuals and fourteen personal email accounts should be produced without heed to whether they are relevant to any issue before the Court. In short, the recommendations of Item 3 of the Report are needlessly intrusive, overbroad, and should be overruled.

The Report's appalling recommendations are based on the mistaken premise that Mattel requested and is entitled to this information. The recommendations, however, range far beyond anything that Mattel actually asked for. Mattel attempts to defend this windfall with a list of discovery requests it *actually* propounded, but does not—and cannot—explain how these requests encompass the much broader discovery recommended by the report. Mattel instead asserts that whether or not it requested the documents is irrelevant, because the documents in question are discoverable and MGA has failed to produce them. However, the production recommended by the Report is facially and obviously overbroad and is designed to include wholly irrelevant documents. This is inappropriate, as the Court recognized when presented with similar, less expansive requests. Worse, the Report does not merely recommend that the search and production be ordered, it recommends that it should be conducted by a third party.

MGA should not have to surrender its privacy to a third party absent a strong showing that it has failed to meet its obligations. Mattel makes no such showing. First, MGA was under no obligation to produce documents not requested by Mattel. Second, with regard to ESI regarding Bratz prior to 2001, Mattel references a

request served in 2005 and a 2007 order. There, Mattel sought—and failed to receive—an order directing the Electronic Discovery Master to review all of MGA's media. Mattel has yet to make a showing that pre-2001 Bratz ESI should be searched by a third party. Mattel makes no such showing in its Opposition. Instead, Mattel repeats allegations that have separately been briefed and that have nothing whatsoever to do with the search and production recommended by the Report.

There is no justification for imposing this search and this production, particularly given its manifest overbreadth. There is even less reason for requiring that it be conducted by a third party. Item 3 of the Report must be overruled.

## ARGUMENT

### I. MGA'S OBJECTION TO THE JULY 5 REPORT IS NOT A MOTION FOR RECONSIDERATION.

MGA's Objection to Item 3 of the July 5 Report and Recommendation of the Electronic Discovery Master is not a motion for reconsideration. *See* Opp. at 3-4. Although dated July 5, 2010, the MGA Parties did not receive the Report until July 8. Under this Court's rules, the MGA Parties are accorded 72 hours, not including weekends, in which to object. MGA timely filed this objection on July 13, 2010. With respect, the MGA Parties should not be penalized by this Court's signing of the Report and Recommendation prior to the due date of the objection.

Moreover, even if MGA's motion were styled a motion for reconsideration, it should still be considered by the Court. Reconsideration is appropriate when there is "clear error or the initial decision was manifestly unjust." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Winkles v. United States*, 2008 WL 755933 *1 & n. 2 (C.D. Cal Mar. 18, 2008) (quoting *School Dist. No. 1J* and finding that the standard for a motion for reconsideration pursuant to Local Rule 7-18 "is neither materially nor substantively different").

As explained below, the Report and Recommendation is based upon the

mistaken premise that "the ESI requested has been the subject of several prior discovery requests propounded by Mattel." Dkt. No. 8239-1 at 4. That is not the case. It also orders discovery that this Court has specifically found to be overbroad. *See* Dkt. No. 8079 (June 7, 2010 Order) at 16; Dkt. No. 8133 (June 18, 2010 Order) at 7.

Finally, due to the misconception that the documents ordered produced were the result of pending requests, MGA now finds itself in the position of having to certify that it conducted searches and productions that were never requested or else open, companywide, all locations where data is stored electronically for search by a third party.

For these reasons, reconsideration is appropriate, even if that were the procedural posture of the Report and Recommendation.

## II. MATTEL CANNOT DISPUTE THAT IT DID NOT REQUEST THE DOCUMENTS AT ISSUE

### A. Mattel's Document Requests Do Not Cover The Documents Ordered.

Mattel lists for this Court a variety of document requests that it says bear on the documents ordered. *See* Appendix A to Mattel's Opposition. Yet, at the same time, Mattel claims that the absence of a document request does not matter. Opp. at 6. Mattel makes this latter argument because, in fact, the documents ordered produced were not requested.

Item 3 of the July 5 Report and Recommendation is premised on the flawed assumption that MGA has failed in some material way to produce communications relating to sundry personal email addresses and individuals, and has failed to produce pre-2001 ESI related to Bratz. Dkt. No. 8239-1 at 4-6. MGA has not failed. The communications the report recommends be produced were never requested, let alone ordered. Mattel can point to no Request for Production—or to any combination of Requests for Production—that compels discovery nearly so broad. Nor can Mattel point to any deficiency in MGA's production of ESI related

to Bratz prior to 2001.

Mattel attempts to defend its windfall by inviting the Court to peruse a laundry list of more than a hundred requests it claims approximate the scope of the recommendations. *See* Opp. at 6. They do not. Mattel does not even attempt to explain how they could.

Indeed, instead of proving Mattel's point, Mattel's list amply illustrates just how overreaching the Report and Recommendation is. For example, with regard to thirteen of the fourteen personal email addresses the recommendation lists (Dkt. No. 8239-1, at 5), Mattel at no point requested all email to and from these addresses for a period extending a year after their owners began working at MGA. And not one of the requests Mattel identifies seeks these documents. The sole exception is Mattel's request for all communications to and from Susana Kuemmerle's personal email account, argentrade@aol.com, which actually proves the point. It shows that Mattel knew how to articulate the types of requests that are the subject of the Report and Recommendation. It also shows that Mattel's attempt to lick and spit together a series of requests to morph them into something covered by the Report and Recommendation fall flat.

Furthermore, these requests bear no relation to the claims before this Court. The rationale behind Item 3 of the Report is that "electronically stored information (ESI) relating or referring to the Bratz doll" and ESI relating to Mattel's contention that MGA "engaged in a course of conduct whereby they contacted current employees of Mattel and solicited them to leave Mattel … and bring with them [Mattel's trade secrets]" are "clearly" discoverable. Dkt. No. 8239-1 at 4. MGA does not disagree. But, the recommendations that follow are not designed to accomplish the production of documents relevant to these claims. If followed, the recommendations would require MGA to submit to a vaguely-defined search by a third party for the purpose of producing not only every communication to, from, or copying the individuals identified, but also any communications merely "referring

or relating to" the identified individuals, *regardless of topic or relevance*.

**B. The Absence Of Any Underlying Document Requests Is Relevant Because The Report Does More Than Merely Order The Production Of Discoverable Documents.**

Moreover, it is not the case that the absence of any underlying Request for Production is "irrelevant," as Mattel claims. Opp. at 6. Here, MGA is not merely being compelled to produce relevant documents. The recommendations stray well beyond the bounds of relevancy. But, MGA is not even being ordered simply to produce irrelevant documents as well. Rather, MGA is being forced to grant a third party universal access to its systems so *it* can conduct an overly broad and unauthorized search.

Mattel argues that MGA can simply certify that it has performed the searches the Report recommends. But this is no "alternative." Because Mattel never requested all email "referring or relating to" each the eighteen individuals and fourteen personal email accounts the Report identifies for the time periods indicated, MGA cannot possibly certify that it made such searches or productions. MGA is thus presented with the "choice" of certifying that it has conducted nearly impossibly broad searches that it was never asked to conduct, or else throw open its systems for an untethered search by a third party.

Mattel complains that the order compelling searches related to Sujata Luther was comparable to those recommended by the Report. Opp. at 17, n. 51. But, Mattel has never been subject to compelled discovery so broad. The order regarding Ms. Luther differed from the recommendation in two important respects. First, the order compelled Mattel to search for documents *relevant to the litigation* that it demonstrably had failed to produce. It did not require the wholesale production of all documents regardless of topic. Second, despite the manifest deficiency in Mattel's production of Ms. Luther's documents, Mattel was allowed to conduct the search itself. *See* Dkt. No. 8106. Even if this Court were to order the wholesale production of documents regardless of relevance, MGA should be

accorded the same opportunity to perform the search and production itself.

## III. THE RECOMMENDATIONS OF ITEM 3 OF THE REPORT WILL INAPPROPRIATELY PRODUCE IRRELEVANT AND PERSONAL DOCUMENTS.

Mattel argues that the astounding scope of the production contemplated by the July 5 Report merely provides a "broad, bright-line search of 'the active file spaces of all available media.'" Opp. at 2. But, production of every electronic communication to or from the personal email addresses listed or referring or relating to the eighteen individuals from "all available media" is neither a "bright-line" nor appropriate.

The recommendation that MGA submit to search by a third party in order to produce "all electronic communications referring or relating to" the eighteen listed persons is inappropriate because it requires MGA to locate and produce documents that bear no relevance to any issue before the Court, including documents relating to MGA business activities unrelated to this litigation and including strictly personal communications. As written, this would require that MGA produce every email that any of hundreds of MGA employees sent to or received from any of these eighteen persons. It would require that MGA attempt the production of all emails that any of these eighteen persons merely was copied on. It would require MGA to produce all emails sent to company-wide mailing lists whether the subject of the email was MGA's policy that new employees not retain information from past employers or the subject of the email was changes to MGA's medical benefits plan. It would require the production of emails to family members and friends.

This is clearly inappropriate, as this Court has recognized. This Court rejected a similar request to compel the production of all e-mail communications sent to or received by Machado, Trueba, and Vargas during the calendar year 2004, which Mattel argued was "a critical period in time when [they] left Mattel to join MGA Mexico and exploited Mattel's trade secrets in order to increase MGA Mexico's market share." Dkt. No. 8079 at 16. The Court allowed that "Mattel may

complain … that every communication by Machado, Trueba and Vargas is relevant [to Mattel's trade secret claims]," but nevertheless denied the request: "[t]he requests encompass e-mails from Machado, Trueba, and Vargas to their family members, their friends, their significant others, and their doctors. The potential for embarrassment is obvious." *Id.*

Here, the Report recommends the production of all of Machado's, Trueba's, and Vargas' email not only for all of 2004, but through April 2005. Dkt. No. 8239-1 at 6. It doesn't stop there. It then explicitly orders similar productions for fifteen additional people.

## IV. THE RECOMMENDATIONS OF ITEM 3 OF THE REPORT ARE FATALLY OVERBROAD.

In its Objection, MGA noted that the proposed search and production, if this Court were to affirm the Report's recommendations, would be overbroad for two reasons. First, Rule 26 does not require that MGA search systems and media where responsive documents are not likely to be found. *See* Obj. at 11. For that matter, Rule 26 does not contemplate that irrelevant documents are subject to discovery. Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense") (emphasis added). Second, allowing a third party to collect documents under these circumstances would be unwarranted.

As to the first argument, Mattel argues that "all available media" sets an appropriate "broad, bright-line." Opp. at 2. As to the second argument, Mattel argues that "considering MGA's ongoing efforts to frustrate electronic discovery, this Court should require that the search be conducted by ILS in the first instance" and that "ILS obviously is not some random 'third party….'" Opp. at 18. Neither argument flies. The Report entirely fails to set an appropriate boundary—indeed, any boundary at all—on the subject of documents to be produced. It fares no better setting a "bright-line" for the scope of the search MGA would have to conduct.

Finally, the Report imposes a third-party search on MGA for documents that was not requested and MGA consequently cannot failed to have produced.

### A. The Scope Of The Search Commanded By The Report Is Overreaching.

As written, the recommendations go well beyond requiring that MGA search for all emails sent to and from eighteen identified persons. Dkt. No. 8239-1 at 5-6. The Report recommends that MGA produce not only all communications to, from, or copying these eighteen individuals, regardless of subject, but also all emails "referring or relating to" these individuals. This would require MGA to submit to a companywide third-party search of "all available media" for any email that even mentions any of the eighteen, whether directly or obliquely. It is unclear how this could even be accomplished. This would, at a minimum, require keyword searching of every email at MGA for reference to "Ron," "Janine," and so on. And it would require the production of wholly irrelevant emails from an untold number of custodians who may have merely referred to any of these individuals in the course of conversations that did not directly involve any of the eighteen or that are not relevant to this case.

While all documents "referring to" these individuals will be difficult if not impossible to locate, at least they present a cognizable target. The meaning of "relating to" is elastic and wholly ambiguous. Any number of documents may "relate to" these individuals even though they are not mentioned by name.

It is even less clear what a search of "all available media" commands. As written, the order not only appears to require MGA to provide a third party with access to every hard drive from every employee who was employed by MGA at least from 2000 until March 2007, but also would also throw open every server and every network location, regardless whether it is likely to contain, or does contain, communications relevant to this order. At a minimum, the Report requires searches of locations that certainly will not contain responsive documents.

Worse, the report marries these broad, vague recommendations to a compelled search by a third party. It is not the case that the Report provides a clear target for ILS. A search for "all electronic communications referring or relating to" eighteen individuals from "all available media" provides no concrete direction to ILS and instead invites a third party to intrude at will across the entirety of the company, searching for data that—in its opinion—"relates to" any of the eighteen persons or fourteen email addresses.

**B. <u>ILS Should Not Conduct Any Search The Court May Order.</u>**

Mattel argues that ILS should conduct the search "in the first instance" because MGA's discovery has been deficient and because ILS is not a "random third party." Opp. at 18. However, even if the Court agreed that all communications to, from, copying, including, referring, or relating to any of these fourteen personal email addresses or eighteen persons were, regardless of topic, relevant to this litigation, MGA should have the chance to produce documents before the hard drives of its employees and its network servers are thrown open to a third party. Rule 34 expressly protects a party's electronic systems from intrusion by third parties absent a showing of noncompliance. *In re Ford Motor Co.*, 345 F. 3d 1315, 1317 (11th Cir. 2003).

This is especially so because Mattel has made no showing whatsoever that MGA has failed to comply with any discovery obligation at all relevant with the search and production contemplated by the July 5 Report. Mattel's Opposition concedes as much. Mattel does not complain that it requested but has not received all email to or from the fourteen personal email addresses or referring or relating to the eighteen individuals for the time specified. Instead, Mattel cutely tiptoes around admitting that the Report seeks to compel an overbroad, unrequested production (see Opp. at 7) and asserts that whether it actually made such requests is "irrelevant." *Id.* at 6. Mattel then provides a laundry list of more than a hundred discovery requests it actually made, but never alleges that MGA has failed to

comply with any requests bearing on the production recommended by the Report.[1] Nor does Mattel complain that the production of ESI that refer or relates to Bratz prior to January 1, 2001 is deficient.

Rather, Mattel trots out a tired parade of grievances that has nothing to do with any of the Report's recommendations. All of these have been briefed separately and have been addressed by MGA in separate oppositions. None relate to the Report's recommendations regarding the personal email accounts and individuals—nor could they, given that these exceed anything Mattel requested. And, none relate to the production of ESI related to Bratz prior to 2001.

Furthermore, whether ILS is or is not a "random third party" is irrelevant. Rule 34(a) "is not meant to create a routine right of direct access to a party's electronic information system … Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." *See* Notes of Advisory Committee on 2006 amendments to Fed. R. Civ. P. 34(a). It is immaterial whether the intruding third party is Mattel or ILS. *See Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass 2005) (denying motion to appoint neutral computer forensic expert to access computers); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 1723509 *2 (S.D. Ohio June 12, 2007) (denying request to allow a forensic expert access to computers). "The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data. In the absence of a *strong showing* that the responding party has somehow defaulted on this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance." *Diepenhorst v. City of Battle*

[1] Mattel uses the example of Peter Marlow. In its Objection, MGA noted that there has been no request for "all communications referring or relating to Peter Marlow prior to January 1, 2001." Obj. at 8. There has not. Mattel points only to two requests that call for specific categories of documents relating to Peter Marlow. Opp. at 7 and n. 8. Additionally, Mattel identifies several document requests directed at Veronica Marlow, none of which call for documents for any period later than December 31, 2001. *Id.* The Report, however, recommends compelling *all* communications through December 2005. Dkt. No. 8239-1 at 6.

*Creek*, 2006 WL 1851243 *3 (W.D. Mich 2006) (emphasis added). Mattel has made no showing, strong or otherwise, and MGA consequently should be accorded the opportunity to make any search the Court orders.

**CONCLUSION**

For these reasons, MGA asks that Item 3 of the July 5, 2010 Report and Recommendation be overruled.

Dated: July 22, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *____/s/ Warrington S. Parker________*
Warrington S. Parker III
Attorneys for MGA Parties and IGWT 826