QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>                Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION FOR PROTECTIVE ORDER PROHIBITING DISSEMINATION OF INFORMATION OBTAINED IN THIS LAWSUIT; AND**<br><br>**CROSS-MOTION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 AND ISSUANCE OF APOSTILLES;**<br><br>**DECLARATION OF JOSEPH C. SARLES; AND**<br><br>**[PROPOSED] ORDER**<br><br>Date:   TBD<br>Time:   TBD<br>Place:   Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:   TBD<br>Pre-trial Conference:   TBD<br>Trial Date:   TBD |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT ........................................................................................................... 7

I.  THE COURT SHOULD DENY MGA'S MOTION FOR PROTECTIVE ORDER ........................................................................... 7

    A.  Disclosure of the CD and Transcripts to Judges and Prosecutors In Mexico Will Not Result in Disclosure of Confidential Information That Will Harm MGA ............................................... 7

        1.  The Court Should Deny the Motion for Protective Order Because the CD and Transcripts Do Not Contain Confidential MGA Information ............................................ 8

        2.  The Mexican Proceedings Are Subject to Strict, Criminal Statutes Requiring Confidentiality ................................. 9

    B.  The Protective Order Permits The Disclosures At Issue ..................... 10

    C.  Mattel Has Not Violated The Protective Order ................................... 11

II.  THE COURT SHOULD GRANT MATTEL'S CROSS-MOTION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 AND ISSUANCE OF APOSTILLES ........................................................................... 12

    A.  Provision of These Documents to the Requesting Authorities in Mexico Is Proper Under 28 U.S.C. § 1782 ........................................ 12

III.  THE COURT SHOULD ISSUE AN APOSTILLE CERTIFYING THE CD AND TRANSCRIPTS ........................................................................... 15

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

In re Application of Iwasaki Elec. Co.,
  2005 WL 1251787 (S.D.N.Y. May 26, 2005) .................................................. 12, 13

Corovic v. Mukasey,
  519 F.3d 90 (2d Cir. 2008) ...................................................................... 14, 15

Degan v. United States,
  517 U.S. 820 (1996) ...................................................................................... 13

Dove v. Atlantic Capital Corp.,
  963 F.2d 15 (2d Cir. 1992) ............................................................................. 14

Folz v. State Farm Mut. Auto Ins. Co.,
  331 F.3d 1122 (9th Cir. 2003) .......................................................................... 7

Humphreys v. Regents of the Univ. of Cal.,
  2006 WL 2319593 (N.D. Cal. August 10, 2006) .................................................. 7

Intel Corp. v. Advanced Micro Devices, Inc.,
  542 U.S. 241 (2004) ....................................................................... 11, 12, 13

Jennings v. Peters,
  162 F.R.D. 120 (N.D. Ill. 1995) ....................................................................... 13

Norris v. Arizona,
  2008 WL 752614 (D. Ariz., March 18, 2008) ...................................................... 15

Seattle Times Co. v. Rhinehart,
  467 U.S. 20 (1984) ........................................................................................ 13

## Statutes

28 U.S.C. § 1782 ..................................................................... 1, 2, 3, 11, 12, 13, 14

Rule 30(b)(6) ...................................................................................................... 1

Federal Rule of Civil Procedure 44 ........................................................................ 14

## Miscellaneous

6 Moore's Federal Practice § 26.101(1)[b] ............................................................. 14

Smit, International Litigation under the United States Code,
  65 Colum. L. Rev. 1015, 1026-27 .................................................................... 12

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that, on a date and at a time to be determined by the

3  Court, before the Honorable David O. Carter, plaintiff Mattel, Inc. ("Mattel") will, and

4  hereby does, move the Court for an order permitting Mattel to (1) respond to the

5  request of the Mexico Prosecuting Authority for the CD containing Mattel trade secrets

6  that MGA produced to Mattel (MGA 3815506), and (2) to disclose to the Prosecuting

7  Authority and the Criminal Court in Mexico the transcripts of the following

8  depositions:  Deposition of Pablo Vargas (Vols. 1-4); Deposition of Gustavo Machado

9  (Vols. 1, 3-6); Deposition of Mariana Trueba (Vols. 1-4); Deposition of Susana

10  Kuemmerle (Vol. 1) and Deposition of MGA Mexico designee Susana Kuemmerle

11  (Vols. 1-3, 7).  Mattel further moves for an order directing the Clerk of the Court to

12  issue an apostille for the CD and for the identified transcripts.

13      Mattel makes this motion pursuant to Federal Rule of Civil Procedure 44 and the

14  Hague Convention Abolishing the Requirement for Legalisation of Foreign Public

15  Documents (adopted at 527 U.N.T.S. 189; TIAS 10072), 28 U.S.C. § 1782, and on the

16  grounds that the Protective Order permits disclosure to foreign tribunals and law

17  enforcement authorities of the subject material, in which MGA has no legitimate

18  confidentiality interest.

19      This Motion is based on this Notice of Motion, the accompanying Memorandum

20  of Points and Authorities, the Declaration of Joseph C. Sarles, the records and files of

21  this Court, and all other matters of which the Court may take judicial notice.

22

23  DATED:  July 23, 2010          QUINN EMANUEL URQUHART &
                                   SULLIVAN. LLP
24

25                                 By /s/ Jon D. Corey
26                                   Jon D. Corey
                                     Attorneys for Mattel, Inc. and
27                                   Mattel de Mexico. S.A. de C.V.

28

-1-

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA asks the Court to enter a blanket order prohibiting Mattel from invoking its right under 28 U.S.C. § 1782 to discovery for use in a foreign proceeding, including foreign criminal proceedings.  Section 1782 allows the court to "'order' a person 'resid[ing]' or 'found' in the district to give testimony or produce documents 'for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person.'"  MGA's generalized hand-wringing about potential disclosure of unidentified "confidential" information does not justify such a blanket order.  The only "disclosure" would be to courts in Mexico as well as to prosecutors who would face years in prison if they improperly disclose whatever information concerns MGA.

MGA's motion for an order preventing disclosure of its purportedly "confidential" information fails because MGA has not identified any MGA information that Mattel seeks to disclose, much less proven that it is confidential and protectable as to MGA.  The CD requested by the Mexico Attorney General's Office contains *Mattel* confidential information.  MGA used this fact as a basis to refuse to disclose the information on the CD to its own <u>Rule</u> 30(b)(6) witness because it was Mattel trade secret information.  The deposition transcripts at issue—Machado, Trueba, and Vargas—all concern the facts of their departure from Mattel and their theft of Mattel trade secrets in the process.  The deposition transcripts of Susana Kuemmerle, the senior officer at MGA Mexico during the relevant time, dealt with the same events as the Machado, Trueba, and Vargas depositions.  The Discovery Master de-designated one of the transcripts (save for MGA financial testimony) for the express purpose of its use in the Mexican proceedings.[1]  No identified MGA confidential information is at issue.

---

[1]  <u>See</u> Discovery Master Order No. 79, dated November 14, 2009, at 4-9.

Even if MGA had some protectable confidentiality interest, the Court should deny MGA's motion for the independent reason that disclosure would not harm MGA. Disclosure to the Mexican Attorney General and the court in Mexico is neither "disclosure" nor the type of potential harm that justifies entry of a protective order. Moreover, Machado, Trueba, and Vargas are all aware of the CD and were questioned about its contents in their depositions, at which both their Mexican lawyers and MGA's lawyers were present.    Further, criminal laws in Mexico prohibit disclosure of any portion of a criminal investigation or criminal court file.  Such disclosure is a crime punishable by four to ten years in prison.[2]  Those protections are more than adequate to ensure that no information in that proceeding will be improperly disclosed.

The Mexican Attorney General has requested a copy of the compact disc with the Mattel information that MGA has had in its possession for years before it was produced.  To the extent any confidential MGA information is at issue, the protections of Mexican law vitiate that concern, and Mattel's motion for discovery pursuant to 28 U.S.C. § 1782 should be granted and an apostille issued by this Court to certify the authenticity of the CD and the deposition transcripts of Gustavo Machado, Mariana Trueba, and Pablo Vargas.  MGA's motion should be denied and Mattel's cross-motion granted.

### Factual Background

Mexican Authorities Seize a CD Containing Mattel Trade Secrets from MGA Mexico.  Shortly after they resigned, Mattel learned that Machado, Trueba, and Vargas stole confidential information and joined MGA.  As required by Mexico criminal law, Mattel notified Mexican authorities of the theft by filing a criminal complaint.  Mexican law enforcement authorities then started an investigation.[3]  On October 27, 2005, Mexican law enforcement executed a search warrant at MGA's Mexico City office. During the search of the offices of Machado, Vargas, and Trueba, the officials found

---

[2]  See Declaration of Francisco Tiburcio, dated July 1, 2009 [Dkt. No. 5864-3].
[3]  M 0111019 (Mexican Criminal Complaint).

electronic and paper documents containing Mattel trade secrets.[4]  They found a CD in Mr. Machado's office that contained over 600 MB—more than 15,000 pages—of Mattel trade secrets.[5]  During the raid, the executing officers made a copy of the CD and the documents and left them with MGA.

MGA Obstructs the Proceedings in Mexico.  Rather than cooperating with police to learn the extent of the wrongdoing by these individuals, MGA Mexico has attempted to obstruct any investigation by the Mexican law enforcement authorities.  During the search, Carlos Aguirre, an officer of MGA Mexico, accompanied the law enforcement officials from office to office.[6]  He reviewed and initialed each page of the documents they collected, many of which contained the Mattel logo.[7]  Before the authorities left, and again later, Mr. Aguirre falsely claimed that all of the information that they collected belonged to MGA, not Mattel.[8]  On that basis, Mr. Aguirre asked them to put the information that they collected in sealed envelopes, and stated the envelopes should not be opened or given to Mattel's lawyers.  The officials did not open the envelopes until Mattel's counsel was able to see pictures taken by Mexican police during the search, which showed Mattel logos and screenshots demonstrating Mattel authorship.  On that basis, the envelopes were opened.  A short time later, arrest warrants were issued for Machado, Vargas, and Trueba and the prosecution commenced.  MGA helped Machado, Vargas and Trueba avoid arrest.  Susana Kuemmerle ordered that the District Attorney was not to be admitted to MGA Mexico's offices, and that Machado,

---

[4]   Exhibit 7777 (Detailed Search Report by Prosecutor Arana, dated October 27, 2005).

[5]   Id.

[6]   Vargas Depo. Tr., dated June 17, 2010, at 224:22-228:22; 236:9-237:20; 296:13-24.

[7]   Kuemmerle 30(b)(6) Depo. Tr., dated December 7, 2009, at 255:23-256:12.

[8]   Exhibit 7777 at 109.

1  Vargas, and Trueba should avoid the reception area to ensure they cannot be found by

2  the authorities.[9]

3      <u>MGA Pays the Legal Fees for Machado, Vargas, and Trueba in the United States</u>

4  <u>and Mexico.</u>   Even after the Mexican authorities found Mattel documents in the

5  possession of these three employees, MGA did not punish Machado, Trueba, or Vargas.

6  Far from it.  Machado was promoted.[10]  MGA paid their legal fees even after Machado,

7  Vargas, and Trueba were no longer employed at MGA and, contrary to its

8  representations to this Court that it had stopped paying their fees, continues to do so for

9  Machado and Trueba.[11]   Indeed, MGA has claimed a joint defense agreement with

10  Machado, Vargas, and Trueba and has withheld discovery from Mattel on that basis.

11  According to MGA's counsel, "[i]n the Mexican proceedings, Mr. Machado, who is

12  being represented by Mr. Franco, and our lawyers representing MGA down there, the

13  Ortega Padilla firm, were working closely together.  We were paying the legal fees for

14  both firms and we were coordinating those efforts as part of a joint defense."[12]

15      <u>MGA Produces a Copy of a CD Containing Mattel Trade Secrets.</u>

16  Ms. Kuemmerle, the general manager of MGA's interests in Mexico, testified that she

17  kept the copy of the CD and documents located during the search in her office, and at

18  times on her desk.[13]  In response to requests for production of documents propounded

19  by Mattel in this case, MGA has produced some of the documents stolen by Machado,

20  Vargas, and Trueba.  On September 25, 2007, MGA's 30(b)(6) witness testified that a

21  CD had been made of some of Mattel's trade secrets, and that this CD was produced to

22

---

23     [9]   Deposition Exhibit 6828; <u>see</u> Machado Depo. Tr., dated April 24, 2010, at

24  1052:24-1053:19 (confirming that Ms. Kuemmerle helped him avoid arrest).

25     [10]  MGA2 0258839.
   [11]  Kuemmerle 30(b)(6) Depo. Tr., dated December 9, 2009, at 646:11-16.

26     [12]  Kuemmerle 30(b)(6) Depo. Tr., dated December 9, 2009, at 958-960 (instructing

27  witness not to answer based on "joint defense privilege")

   [13]  Kuemmerle Depo. Tr., dated January 28, 2008, at 129:22-132:3; Kuemmerle

28  30(b)(6) Depo. Tr., dated December 7, 2009, at 274:17-275:1.

1   Mattel.[14]  Mattel had not received a copy of this CD at that time.  On January 24, 2008,

2   MGA produced what it represented to be a "forensically sound" copy of the CD seized

3   by the Mexican authorities from its offices in Mexico.[15]

4        Vargas, Trueba, and Machado Testify About Their Thefts of Mattel Information.

5   Mattel has since learned that Machado, Vargas, and Trueba stole the electronic

6   documents from Mattel by copying them to one or more USB or thumb drives.[16]  In the

7   first months that MGA Mexico existed, Machado, Vargas, and Trueba used the stolen

8   Mattel information on the thumb drives to start MGA Mexico, regularly passing the

9   thumb drive or drives around to access the Mattel information that they needed to

10  further their respective sales, financial, forecasting, or marketing goals for MGA

11  Mexico.[17]  At some point Machado downloaded the stolen Mattel information onto his

12  personal computer.[18]  On January 3, 2005 at 8:06 – 8:15 p.m., Machado copied some of

13  the stolen Mattel information from his personal computer to a CD.[19]  He did this so that

14  he could take the CD to MGA's offices.  Recently, based on "substantial evidence

15  indicating Machado engaged in continuing efforts to delete or 'wipe' relevant data from

16  the Machado Hard Drives," the Special Master ordered a forensic examination of

17  Machado's MGA hard drives.[20]   On July 16, 2010, the Court-appointed experts

18  concluded that a wiping software program called "BeClean" was run on three of

19  Machado's drives.[21]  At least one hard drive was wiped on four separate occasions, and

20

21      [14]  See Tonnu Depo. Tr., dated September 25, 2007, at 664:2-665:1.

22      [15]  MGA 3815506.

23      [16]  Vargas Depo. Tr., dated June 16, 2010, at 48:9-21;
        [17]  Id. at 48:9-21; 102:23-103:1; 155:19-156:2; Vargas Depo. Tr., dated June 17,

24  2010, at 377:24-378:13.

25      [18]  Machado Depo. Tr., dated April 21, 2010, at 202:10-204:8
        [19]  Machado Depo. Tr., dated April 24, 2010, at 991:22-992:4.

26      [20]  See July 5, 2010 Report and Recommendation.

27      [21]  See Report of Technical Advisor International Litigation Services, Inc.,
    submitted to the Special Master for eDiscovery James Smith, dated July 12, 2010.  As

28  to the fourth hard drive, MGA apparently submitted a "ghost copy" that did not contain

1  another was wiped "***the morning of the date when the image was collected – 04/11/07***." Id. at 2.

2

3       Machado, Vargas, and Trueba Have Not Exercised Their Right Against Self Incrimination In Mexico.  In the Mexico proceeding, Machado, Vargas, and Trueba have not invoked their right against self-incrimination and remained silent.  Rather, they have made voluminous personal and factual submissions to the court in Mexico in support of their defense.  In these submissions, each represented that that they never stole any trade secrets or caused the loss of any Mattel information, among other things.[22]  The submissions containing these false statements were prepared with the assistance of counsel that MGA is paying in Mexico.[23]

11      After years of avoiding giving testimony in the United States, Vargas, Trueba, and Machado each recently testified that they *did* steal information from Mattel.[24] During the depositions of Machado, Vargas, and Trueba (all conducted in Spanish), Cesar Prieto, who assisted in preparing the false submissions to the Mexico court, sat

---

any slack space or deleted files, so the Court-appointed experts were unable to determine whether wiping software had ever been present on the drive. Id. at 2.

[22]  Deposition Exhibit 8877 at 151 (M0922668) (Machado) ("I firmly deny that I have appropriated any secret belonging to Mattel, Inc., Mattel de Mexico, S.A. de C.V., Mattel Servicios, S.A. de C.V. or to any other individual or company."); id. at 163 (M0922680) (Machado) ("I firmly deny that I caused any loss of information belonging to Mattel, Inc., Mattel de Mexico, S.A. de C.V., Mattel Servicios, S.A. de C.V. or to any other individual or company."); Machado Depo. Tr., dated April 24, 2010, at 1129:14-18 (identifying Deposition Exhibit 8877 as his preliminary statement presented to the judge in the criminal proceeding in Mexico); id. at 1130:17-1131:8 (testifying that he reviewed his preliminary statement "to make sure that it was accurate and truthful").

[23]  Vargas Depo. Tr., dated June 18, 2010, at 636:22-639:5.

[24]  Machado Tr. at 200:22-204:8 (testifying that he copied from his computer at Mattel to a USB device spreadsheets, point of sale reports, forecasts, presentations and other documents that he thought could be useful in his new job at MGA, and that Vargas and Trueba did the same thing)

by and listened to their contradictory testimony.[25]   Mr. Prieto was free to object or intervene if any aspect of the testimony caused concern under Mexican law.  He never did.

Authorities in Mexico Request a Copy of the CD Produced by MGA in This Action.  On March 18, 2010, the Attorney General for the Republic of Mexico asked Mattel to provide a copy of the CD that MGA produced in this litigation to determine whether and to what extent the information on that CD is "similar" to the information on the CD the Mexican authorities seized from MGA Mexico's office in October 2005.[26]   Although MGA has claimed in this litigation that the two CDs are identical, MGA's lawyer in Mexico has claimed that the CD in Mattel's possession "has been manipulated" and is therefore not the same as the CD MGA turned over to authorities in Mexico.  In June 2010, the Attorney General reiterated the request for the CD.[27] Mattel seeks to comply with the Attorney General's request.

## **Argument**

### I.  **THE COURT SHOULD DENY MGA'S PROTECTIVE ORDER MOTION**

#### A. **Disclosure of the CD and Transcripts to Judges and Prosecutors In Mexico Will Not Result in Disclosure of Confidential Information That Will Harm MGA**

MGA has not and cannot show that it has any protected interest in the information in the CD or transcripts.   The confidential information that they contain belongs to Mattel, not MGA.  Nor can MGA show that disclosure of the CD or the transcripts to a judge or prosecutor in Mexico would harm MGA.  Yet, it must prove both to prevail.  See Folz v. State Farm Mut. Auto Ins. Co., 331 F.3d 1122, 1130-31

---

[25]   See Machado Depo. Tr., Vols. 3-5 (indicating presence of Mr. Prieto); Vargas Depo. Tr., Vols. 1-3 (same); Trueba Depo. Tr., Vols. 2-4 (same).  This same Cesar Prieto submitted a declaration in support of MGA's motion.

[26]   See Molinski Declaration, Ex. A.

[27]   See Declaration of Joseph C. Sarles, filed concurrently ("Sarles Decl."), at Ex. A.

(9th Cir. 2003); <u>Humphreys v. Regents of the Univ. of Cal.</u>, 2006 WL 2319593, at *1 (N.D. Cal. August 10, 2006).

1. **<u>The Court Should Deny the Motion for Protective Order Because the CD and Transcripts Do Not Contain Confidential MGA Information</u>**

MGA has moved for a protective order without identifying, much less proving, that a single file, document or line of testimony is protectable MGA confidential information.  MGA produced the CD, but it actually consists of stolen *Mattel* documents and information.  Indeed, counsel for MGA asserted this as the justification not to use the CD to educate an MGA Mexico <u>Rule</u> 30(b)(6) witness.[28]  Similarly, the deposition testimony of Vargas, Trueba, and Machado in their individual capacities concerns the facts surrounding their theft of *Mattel* information.  The bulk of their depositions concerned the same facts and issues discussed in the deposition of Susana Kuemmerle, whose deposition was largely de-designated, over MGA's objection, by Discovery Master Order No. 79.[29]  MGA has not identified any testimony that contains confidential MGA information, and certainly none that could not be disclosed in the context of criminal proceedings involving the same parties and subject to independent confidentiality requirements, discussed <u>infra</u>.  To the contrary, MGA recently represented to the Court that *all* of this information should be de-designated and released to the public record.  <u>See</u> MGA Parties' Response to This Court's Order to Show Cause Regarding the Protective Order, dated April 5, 2010 [Dkt. No. 7687], at 2 (arguing that all material in the case should be released into the public record except, 1)

---

[28]    Email from J. Corey to W. Molinski, dated December 10, 2009 ("notwithstanding that MGA's counsel designated such documents as 'Attorneys Eyes Only,' it did so for the benefit of Mattel and such documents, you represented, have not been disclosed by MGA's outside counsel to employees or agents"); Email from W. Molinski to J. Corey, dated December 10, 2009 (confirming that as to "the information printed out from the CD and the hard copy documents seized in the raid" MGA "designated those documents as AEO for Mattel's benefit").

[29]    <u>See</u> Discovery Master Order No. 79, dated November 14, 2009.

1   "Documents reflecting the personal finances of Mr. Larian and his family," and 2)
2   "Documents reflecting MGA's finances").   Having failed to identify any protectable
3   confidential MGA information that could be disclosed, MGA's motion must be denied.
4           Even if, contrary to MGA's own arguments to the Court, some MGA
5   confidential information existed on the CD or in the deposition transcripts, MGA
6   admits that the relevant parties already have it.  The authorities in Mexico have a copy
7   of a CD seized during the search.  MGA claims "it is not entirely clear why Mexican
8   authorities would request access to a 'copy' *of a disc it already has access to.*"  Mot. at
9   5-6.  In fact, the reason is perfectly clear.  The Attorney General would like a copy of
10  the CD that MGA had in its possession *after* the search and that it produced to Mattel in
11  this case, particularly given the representation of the MGA-paid Mexico counsel (who
12  has a copy of the CD)[30] that the CD in Mattel's possession is not identical to the one
13  seized in the search in Mexico.  If MGA's claims made here are true (contrary to the
14  claims it made in Mexico that the CDs are ***not*** the same), production of a copy of the
15  CD will not result in any new disclosure at all.    Moreover, the defendants in the
16  Mexican proceedings—Machado, Vargas,  and Trueba—and Ms. Kuemmerle have
17  been shown information from the CD and discussed its existence in their depositions.[31]

18          **2.      The Mexican Proceedings Are Subject To Strict, Criminal**
19                  **Statutes Requiring Confidentiality**

20          Even if (contrary to fact) MGA could show it has some protectable interest in the
21  confidentiality of information at issue, disclosure of information (confidential or not) to
22  a prosecutor or a judge under the circumstances here is not disclosure that could harm
23  MGA, much less the type of disclosure that justifies a protective order.  The Court and
24  prosecutors in Mexico may not disclose confidential information received in connection
25  with a criminal proceeding.   Criminal statutes require them to preserve its

---

26
27  [30]   Vargas Depo. Tr., dated , at 243:24-244:9.
28  [31]   See, e.g., Machado Depo. Tr., dated April 23, 2010, at 670-680; Trueba Depo.
    Tr., dated May 21, 2010, at 632-634.

00505.07975/3589321.5

MATTEL'S OPPOSITION TO MGA'S MOTION FOR PROTECTIVE ORDER AND CROSS MOTION FOR ISSUANCE OF APOSTILLES

confidentiality.   In Mexico, like the United States, criminal statutes protect   the confidentiality of criminal proceedings and prohibit access or disclosure of information in those proceedings with punishments of four to six years in prison for violations.  <u>See</u> Declaration of Francisco Tiburcio, dated July 1, 2009 [Dkt. No. 5864-3] ("The file in a criminal proceeding in Mexico is not accessible by the general public or by the press. Only the defendant and victim [Mattel] (or their legal representatives) may access a file in a criminal proceeding.  The laws of Mexico prohibit government employees from disclosing any portion of a criminal investigation or criminal court file to an unauthorized person.  It is a crime in Mexico if they do so, punishable by four to ten years in prison.").  That should assuage any concern that MGA has about potential disclosure of its as-yet-unidentified confidential information.[32]

### B.     The Protective Order Permits The Disclosures At Issue

MGA's Motion omits the portion of the Protective Order that permits Mattel to use material subject to the Protective Order in any judicial proceeding.  Paragraph 4 reads:

> Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information *for purposes of litigation* and not for any other purpose, including without limitation for any business or trade purpose. *As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion trial,*

---

[32]   MGA has argued that it has no role in the criminal proceedings in Mexico, but this is simply false.  In addition to the admitted joint defense agreement and close cooperation with counsel that they are paying in Mexico, MGA has collected and produced documents from the criminal court file in Mexico, and in fact cited some in its Motion.   <u>See, e.g.,</u>  MGA876928-43,  MGA876960-61,  MGA876962-7038, MGA0877109-129,  MGA0877146-55,  MGA0877166-175,  MGA0877183-199, MGA112149-82, MGA20697080-144.

*appeal, hearing, review or other judicial proceeding . . . that this or any*

*other court may order or that the Parties may agree to.*

Dkt. No. 54, at ¶ 4.[33]   Here, the criminal proceeding in Mexico is a "judicial proceeding" that "any other court" has "order[ed]."  The Protective Order, which MGA has signed and relied upon, contemplates the exact use that Mattel intends.

### C.   Mattel Has Not Violated The Protective Order

Contrary to MGA's claims, Mattel has ***not*** disclosed non-public information obtained from MGA in discovery to the Mexican authorities.  MGA's argument that Mattel's disclosure of the "*the very existence of the disc and deposition testimony*" (Opp. at 6) somehow violated the Protective Order is frivolous.  MGA filed its Motion—referencing the existence of and the relevant facts surrounding both the CD and the deposition testimony—*in the public record*.  Indeed, the existence and particulars of the CD and the subject of testimony by these employees has repeatedly been referenced in public MGA filings and Court orders, including the de-designated Kuemmerle testimony.[34]   The reason is obvious:  those facts are not even arguably confidential.

---

[33]   Indeed, when Mattel and MGA negotiated the Protective Order, the parties were fully aware that other proceedings had been filed and that more were likely.  Not only would it have been inefficient for the Protective Order to bar the use of discovery in other proceedings, but it would have improperly served to thwart the truth, since it is obviously not the purpose of a Protective Order to conceal factual information from other courts but only to ensure its confidentiality.

[34]   Kuemmerle Depo. Tr., dated January 28, 2008, at 119-132.

II.   **THE COURT SHOULD GRANT MATTEL'S CROSS-MOTION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 AND ISSUANCE OF APOSTILLES**

   A.   **Provision of These Documents To The Requesting Authorities In Mexico Is Proper Under 28 U.S.C. § 1782**

"Section 1782(a) provides that a federal district court 'may order' a person 'resid[ing]' or 'found' in the district to give testimony or produce documents 'for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person.'" Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). Under § 1782, production of the documents is appropriate here.

MGA resides in and is found in this district.  Mattel is an interested party requesting that MGA be ordered to consent to the production of documents for use in a foreign proceeding.  MGA itself has repeatedly conceded that Mattel is an "interested party" to the proceedings in Mexico.  "Although lacking formal 'party' or 'litigant' status in the [Mexico] proceedings, [Mattel] has significant procedural rights" there, making it an interested party.  542 U.S. at 255.  Mattel 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term."  Id. at 256 (brackets in original).

The Mexican criminal court is clearly a proper "tribunal" for this request.  In Intel, the Supreme Court specifically noted that criminal courts were proper tribunals for a request under § 1782.  542 U.S. at 258 ("[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, *criminal*, and administrative courts") (brackets and ellipses in original) (emphasis added) (quoting Smit, *International Litigation under the United States Code*, 65 COLUM. L. REV. 1015, 1026-27 and nn.71, 73 (1965)).  Indeed, the Supreme Court has stressed the importance of considering "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  Intel, 542 U.S. at 264.  Here, of course, we have

-12-

1   a request of the foreign government, thus weighing heavily in favor of granting the

2   discovery and issuance of apostilles.[35]

3       In re Iwasaki Elec. Co., 2005 WL 1251787 (S.D.N.Y. May 26, 2005), further

4   supports Mattel.  There, the court considered a request by a party to use in a foreign

5   proceeding deposition transcripts and documents from domestic litigation that had been

6   designated "CONFIDENTIAL ATTORNEYS' EYES ONLY" under a protective order.

7   The Iwasaki court, over objections like those made by MGA, ordered production of the

8   materials in the possession of the responding party—consisting of deposition testimony

9   of witnesses who themselves resided in other districts and documents produced by the

10  responding party's foreign subsidiary.  Id. at *2-3.  Like the governing Protective Order

11  here, the protective order in Iwasaki did not forbid use of discovery materials in related

12  litigation and in fact expressly contemplated it.[36]

13      Degan v. United States, 517 U.S. 820 (1996), is clearly inapposite.  In that case

14  Degan, a criminal defendant residing in Switzerland, refused to return to the United

15  States to face drug distribution and money laundering charges.  But, he attempted to

16  contest the parallel civil forfeiture proceeding.  The District Court entered summary

17  judgment against Degan because "he remained outside the country, unamenable to

18  criminal prosecution."  Id. at 822.  After the Ninth Circuit affirmed, the Supreme Court

19  reversed, holding that that a district court cannot take such punitive measures because

20  _____

21  [35]  Based on the Declaration of Cesar Pietro, MGA argues that permitting discovery
    would "sidestep the Mexican justice system's limitations." Mot. at 6. But Intel wholly

22  rejected any requirement that the materials be discoverable in the requesting forum.
    Intel, 542 U.S. at 260-63 (holding that a foreign discoverability requirement "would be

23  senseless" because it would "serve only to thwart § 1782(a)'s objective to assist foreign

24  tribunals in obtaining relevant information that the tribunals may find useful but, for
    reasons having no bearing on international comity, they cannot obtain under their own

25  laws").

26  [36]  Compare Protective Order at ¶ 4 (stating that materials may be used in

27  "preparation for, participation in and prosecution and defense of any suit, motion trial,
    appeal, hearing, review or other judicial proceeding . . . that this or any other court may

28  order or that the Parties may agree to.") [Dkt. No. 54] with Iwasaki at *2.

the claimant failed to appear in a parallel criminal prosecution. Id. at 821. The case has no bearing here whatsoever.[37]

MGA claims that Degan stands for the proposition that the protective order should prevent discovery here from being used in a civil discovery case (Opp. at 6). Not so. In *dicta*, the Court discussed other measures the District Court could take to remedy Degan's obvious abuse in that particular circumstance, see id. at 826-27, but the Court did not discuss or consider either the circumstances in which this case arises or the rights under 28 U.S.C. § 1782. MGA also cites Moore's Federal Practice for the notion that use of discovery in a similar lawsuit is purportedly an improper "unrelated" purpose (Mot. at 5), but the very next sentence in the Moore's treatise states that if discovery is relevant, "*a protective order is not mandated merely because it may also be used in other litigation*." 6 Moore's Federal Practice § 26.101(1)[b]; see also Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) ("[W]here the discovery sought is relevant . . . in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order.").

The reason MGA opposes this disclosure is the same reason it opposed the de-designation of the Kuemmerle deposition transcript—it does "not want Mexican authorities to be able to use the testimony." Discovery Master Order No. 79, at 4. That is not a valid reason to oppose a proper request for discovery pursuant to 28 U.S.C. § 1782. Mattel's request should be granted.

---

[37]   MGA cites dicta from Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984), an inapposite case holding that a state court protective order was not an improper prior restraint under the First Amendment. Id. at 37. The case long pre-dates Intel, and its observation that discovery is used to assist in "litigated disputes" (Mot. at 5), has no bearing on whether discovery here is proper under § 1782. Jennings v. Peters, 162 F.R.D. 120, 122 (N.D. Ill. 1995), also did not involve discovery under § 1782 or disclosure of documents in a related proceeding, but rather the Court was concerned with intended disclosure that might interfere with an election campaign. Id. at 122-23.

## III.   THE COURT SHOULD ISSUE AN APOSTILLE CERTIFYING THE CD AND TRANSCRIPTS

Pursuant to <u>Federal Rule of Civil Procedure</u> 44 and the Hague Convention Abolishing the Requirement for Legalisation of Foreign Public Documents (adopted at 527 U.N.T.S. 189; TIAS 10072), Mattel respectfully requests this Court to certify by apostille a true forensic copy of the MGA-produced CD that is currently in the possession of ILS, the court appointed forensic expert, and the identified deposition transcripts of Gustavo Machado, Mariana Trueba, Pablo Vargas, and Susana Kuemmerle (both individually and as a designee of MGA Mexico).  Mattel makes this request because the CD has been requested by the prosecuting authority in Mexico handling the criminal proceedings regarding Mariana Trueba, Pablo Vargas and Carlos Gustavo Machado Gomez.

The Hague Convention Abolishing the Requirement for Legalisation of Foreign Public Documents (the "Convention") is appended to <u>Rule</u> 44 and authorizes courts and other competent authorities to authenticate documents for use in foreign proceedings by affixing an "apostille."  "An 'apostille' is an international method for verification of foreign documents similar to notarization."  <u>Corovic v. Mukasey</u>, 519 F.3d 90, 93 (2d Cir. 2008).  Because "[t]he Convention requires parties to the Convention to legalize documents *exclusively* by apostille,"[38] an apostille is the only way the CD may be authenticated for use in proceedings before the Mexican government.

An apostille for the CD is necessary because a copy has been requested in the Mexican proceedings.[39]  In those proceedings, MGA's lawyers have claimed that the copy of the CD that Mattel possesses is not a true copy of the CD found in MGA Mexico's offices.

---

[38]   <u>Corovic</u>, 519 F.3d at 93 (emphasis added); <u>see also</u> <u>Norris v. Arizona</u>, 2008 WL 752614, at *2 (D. Ariz., March 18, 2008).

[39]   <u>See</u> Molinski Declaration, Exhibit A.

As with its opposition to the de-designation of the Kuemmerle transcript, MGA does not want the proceedings before the Mexican government to have the benefit of evidence of the trade secret thefts.  Such objections are meritless.  No party disputes authenticity of the CD.  Thus, both are appropriate for issuance of an apostille.  The Convention states that a "certificate *shall be issued* at the request of the person who has signed the document *or of any bearer*."  *See* Convention, Article 5.  As explained by United States District Court Form AO 393, "Apostilles certify only the authenticity of the signature of the official who signed the document" and an apostille "does not imply that the contents of the document are correct, nor that they have the approval of the United States Courts."  The Central District of California routinely executes such apostilles, and has done so in this case.  See May 11, 2009 Apostilles, attached hereto as Exhibit B to the Sarles Declaration.

As discussed above, the disclosure of MGA's confidential information is moot— MGA has no confidentiality interest in this information, and in any event the information has already been disclosed.  The only issue is whether the copy Mattel has provided in the Mexican proceedings is in fact a true and correct copy of the CD found in MGA's possession.  The ILS report and accompanying CD are necessary to resolve that issue.

### Conclusion

For the foregoing reasons, Mattel requests that the Court order an apostille be issued by the clerk authenticating the March 17, 2010 report prepared by the Court-appointed experts, International Litigation Services, as well as authenticating a true forensic copy of the trade secret CD on which the report was based, and authenticating the deposition transcripts of Gustavo Machado, Mariana Trueba, and Pablo Vargas.  Mattel will submit full certified copies of these documents to the clerk for

1 | authentication upon the granting of this motion.  Mattel respectfully requests that its

2 | motion be granted in full.

3

4 | DATED:  July 23, 2010            QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP

5

6                                    By  /s/ Jon D. Corey
                                     _____
7                                    Jon D. Corey
                                     Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28