# EXHIBIT A



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC
ZURICH

## CERTIFICATE OF ACCURACY

I, Sung Lee, of TransPerfect, Inc. do hereby declare that the following are to the best of my knowledge and belief, a true and accurate translation, within the given parameters, of the document **UEIDDAPI "A"/1278/2010** translated from Spanish into English.

A copy of the final translation is attached.

I so declare under penalty of perjury under the laws of the United States on this 22nd day of July, 2010.

Sung Lee
TransPerfect Translations, Inc.

Sworn before me this
22nd of July 2010

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2011

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016  T 212.689.5555  F 212.689.1059  WWW.TRANSPERFECT.COM

[stamp:]

**GENERAL OFFICE OF THE FEDERAL ATTORNEY GENERAL**

"2010, Year of the Homeland. Bicentennial of the Beginning of the Independence and Centennial of Beginning of the Revolution"

**OFFICE OF THE FEDERAL ATTORNEY GENERAL DEPUTY FEDERAL ATTORNEY GENERAL OF FEDERAL CRIMES SPECIAL INVESTIGATION UNIT OF CRIMES AGAINST COPYRIGHTS AND INDUSTRIAL PROPERTY DEPARTMENT "A" CRIMES AGAINST INDUSTRIAL PROPERTY**

| | |
|---|---|
| **ADMISSIBILITY: PRETRIAL INVESTIGATION:** | **DIVISION VI-DPI "A" 285/UEIDDAPI/2008** |
| **RE:** | **SUBPOENA** |

**OFFICIAL DOCUMENT: UEIDDAPI "A"/1278/2010.**

**MEXICO CITY, JUNE 21, 2010**

**ATTORNEY JUAN CARLOS MANRIQUE MOYA LEGAL REPRESENTATIVE OF MATTEL, INC. MATTEL DE MÉXICO, S.A. DE C.V. AND MATTEL SERVICIOS**
Paseo de los Tamarindos 400-A Piso 9º
Colonia Bosques de la Lomas, Delegación Cuajimalpa
C.P. 05120
Mexico City, Mexico

This is in compliance with the agreement for the investigation being performed, which is grounded on the following laws: Article 21 and 102 "A" of the Political Constitution of Mexico; Article 2 paragraph II of the Federal Code of Criminal Procedures; Article 4 paragraph I, subparagraph A, Section k) of current Organic Law for the Office of the Federal Attorney General. This relates to the following statement made on March 18, 2010, to this Federal Social Representation: "...indicating that, the nine page documentary evidence shows that MGA Entertainment Inc. has provided the attorney for Mattel Inc., in the United States, with a secured copy of the compact disk. This relates to a matter which is being heard in the United States by Federal Judge David O. Carter. I wish to specify that the information contained in that compact disk must be similar to content of the secured compact disk for the search made on October 26, 2005. These are the same folders and files relating to the pretrial investigation. Thus, I reiterate that this copy of the compact disk can be shown to this Federal Social Representation if my clients are required to do so..." If it is necessary to exhibit this compact disk, which the Complainant was going to exhibit and has not yet presented, we require that it be presented before the Prosecuting Attorney on **the 24th of this month and year, at 10:00 a.m.**, so that he may present any declaration or statement that legally supports this case. [stamp:] [illegible]

SINCERELY,

**EFFECTIVE SUFFRAGE, NO REELECTION THE FEDERAL DEPUTY PROSECUTING ATTORNEY OF THE DIVISION VI-DPI "A"**

[signature]
**ATTORNEY ROSA MARIA MENA GALICIA**

# EXHIBIT B

AO 390

# APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country: United States of America
   This public document

2. has been
   signed by    John Lopez

3. acting in
   the capacity of    Deputy Clerk

4. bears the seal/stamp    U. S. District Court  -  Central District of California

## CERTIFIED

5. at    Los Angeles, California        6.    the    U. S. District Court - CDC

7. by    Eduardo Ramirez

8. No.    DC051109-03

9. Seal/Stamp

1203

AO-390 (05/81)

Apostilles certify only the authenticity of the signature of the official who signed the
document, the capacity in which that official acted, and where appropriate, the identity of the
seal or stamp which the document bears. An apostille does not imply that the contents of the
document are correct, nor that they have the approval of the United States Courts.

CLERK, U.S. DISTRICT COURT

AO-393 (05/81)

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10                            EASTERN DIVISION

O

| | |
|---|---|
| 11   CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 12         Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| 13       vs. | |
| 14   MATTEL, INC., a Delaware<br>    corporation, | ORDER GRANTING DECLARATORY<br>JUDGMENT |
| 15         Defendant. | |
| 16 | |
| 17   AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER

1

## ORDER

2

3    1.    The Court hereby DECLARES that Mattel owns all right, title and

4  interest, including any and all copyright rights, in and to the Bratz-related works,

5  ideas, and concepts that Carter Bryant conceived or created while employed by

6  Mattel, as found by the jury in this case, including the idea for the name "Bratz" and

7  the idea for the "Bratz" characters, which are protectible property interests as a

8  matter of California state law, and the following works (identified by Trial Exhibit

9  (TX) numbers):

10

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

28

[PROPOSED] ORDER

| |
|---|
| TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| TX 5-63, 758, 759, 760 |
| TX 5-64, 62-6, 795, 1152-14, 1750 |
| TX 5-65, 1152-7, 1152-8, 11789 |
| TX 5-66, 794, 1152-13 |
| TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| TX 5-73, 741, 742 |
| TX 5-76, 706 |
| TX 5-77, 707 |
| TX 5-78, 10539, 18501 |
| TX 5-136, 711 |
| TX 10579, 18281 |
| TX 15172 |
| TX 3-1, 779, 780, 1-1, 2-1, 778 |
| TX 3-2, 726, 727, 728, 1-4, 2-5 |
| TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| TX 3-5, 791, 1-8, 2-2 |
| TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| TX 3-10, 735, 736 |
| TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| TX 3-13, 793, 1-5, 2-3, 10-3 |
| TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| TX 1-2 |
| TX 3-11, |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-

[PROPOSED] ORDER

| | |
|---|---|
| 1 | TX 5-26, 712 |
| 2 | TX 5-27, 713 |
| 3 | TX 5-81, 720 |
| 4 | TX 5-82, 715 |
| 5 | TX 5-83, 723 |
| 6 | TX 3-4, 5-84, 716, 717 |
| 7 | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| 8 | TX 5-80, 721, 722, 5-86 |
| 9 | TX 5-87, 5-108, 724, 725 |
| 10 | TX 5-34 |
| 11 | TX 5-89, 35-2, 323-32, 323-33 |
| 12 | TX 1107, 10638 |
| 13 | TX 1108, 10639 |
| 14 | TX 1109, 771 |
| 15 | TX 1110, 773 |
| 16 | TX 5-14, 10515 |
| 17 | TX 5-18, 10518 |
| 18 | TX 5-19, 10519 |
| 19 | TX 5-28, 10526 |
| 20 | TX 5-30 |
| 21 | TX 5-95 |
| 22 | TX 5-96 |
| 23 | TX 5-99 |
| 24 | TX 323-18 |
| 25 | TX 323-19 |
| 26 | TX 323-26 |
| 27 | TX 1136 |
| 28 | The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

-4-

1     2.     The Court further hereby DECLARES that MGA Entertainment Inc.
2  ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do
3  not have any right, title or interest in or to the works, ideas and/or concepts listed
4  above. Any purported assignment from Carter Bryant to MGA of the rights to the
5  works, ideas or concepts listed above, including any purported assignment of such
6  rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,
7  2000, was invalid, ineffectual and void ab initio.

8     3.     In addition, the Court hereby ORDERS that all copyright registrations
9  MGA has obtained in and for the Bratz works listed above, including Registration
10  Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-
11  218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491
12  (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have
13  been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such
14  registrations.

15     4.     The Court further hereby ORDERS that all Bratz-related works listed
16  in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that
17  Defendants shall deliver the originals of such works to Mattel forthwith.

18            IT IS SO ORDERED.

19

20

21  DATED:  December 3, 2008

22                                        Hon. Stephen G. Larson
                                          United States District Judge
23

24

25

26

27

28

[PROPOSED] ORDER



I hereby attest and certify on __5|11|09__
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.
    CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

          DEPUTY CLERK

1208

AO 390

# APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country: United States of America
   This public document

2. has been
   signed by    John Lopez

3. acting in
   the capacity of    Deputy Clerk

4. bears the seal/stamp    U. S. District Court - Central District of California

## CERTIFIED

5. at    Los Angeles, California        6.    the    U. S. District Court - CDC

7. by    Eduardo Ramirez

8. No.    DC051109-02

9. Seal/Stamp

1203

AO-390 (05/81)

Apostilles certify only the authenticity of the signature of the official who signed the document, the capacity in which that official acted, and where appropriate, the identity of the seal or stamp which the document bears. An apostille does not imply that the contents of the document are correct, nor that they have the approval of the United States Courts.

CLERK, U.S. DISTRICT COURT

AO-393 (05/81)

O

1

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF CODE § 17200** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

07209/2649025.3

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

1          **ORDER**

2          Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive

3 Trust and for a Finding of Liability and Injunctive Relief Pursuant to <u>California</u>

4 <u>Business & Professional Code</u> § 17200, and all other papers and arguments

5 submitted in connection therewith, as well as the evidence admitted at trial and the

6 jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against

7 MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong

8 Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

9          1.      A constructive trust in favor of Mattel on all rights to trademarks,

10 service marks and domain names held by MGA or Larian, or any person or entity

11 acting on their behalf or for their benefit, anywhere in the world that include the

12 terms "Bratz" or "Jade," including all such trademark registrations and trademark

13 applications (including, without limitation, United States Trademark Registrations

14 identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465,

15 3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614,

16 2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942,

17 2789216 and 2836780 and United States Trademark Applications identified by

18 Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100,

19 78490324, 77443372 and 77575881), and the good will inhering therein, as well as

20 all such domain name registrations, is HEREBY ORDERED and all rights therein

21 are ORDERED transferred to Mattel.

22          2.      MGA and Larian are HEREBY ORDERED to (a) identify all

23 trademark registrations and applications held by them, or any person or entity acting

24 on their behalf or for their benefit, anywhere in the world that include the terms

25 "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in

26 which they, or any person or entity acting on their behalf or for their benefit, claim

27 to own trademark rights, whether or not such marks are subject to existing

28 trademark registrations or pending trademark applications, (c) identify all domain

1  names and domain name registrations held by them, or any person or entity acting
2  on their behalf or for their benefit, anywhere in the world that include the terms
3  "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the
4  transfer and/or assignment of such marks and domain names and associated
5  applications and registrations to Mattel.  MGA shall fully comply with (a), (b) and
6  (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7          3.      The Court HEREBY FINDS that the MGA Defendants violated
8  California Business and Professions Code § 17200 and are liable to Mattel on its
9  twelfth claim for relief for unfair competition.

10         4.      The MGA Defendants, along with their respective officers,
11 directors, principals, agents, representatives, servants, employees, affiliates,
12 successors or assigns, and any person or entity acting on their behalf or in concert or
13 participation with them, are HEREBY PERMANENTLY ENJOINED from (a)
14 using the terms "Bratz" or "Jade," either alone or in combination and whether as a
15 trademark, domain name or otherwise, in connection with the manufacture,
16 promotion, advertising, distribution, offering for sale or sale of any goods or
17 services anywhere in the world and (b) taking any action to preclude Mattel from
18 using the terms "Bratz" or "Jade" in any such manner, including without limitation
19 as a mark in connection with goods and services.

20         **IT IS SO ORDERED.**

21

22 DATED:  December 3, 2008

23                                              Hon. Stephen G. Larson
                                                United States District Judge
24

25

26

27

28

07209/2649025.3

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

I hereby attest and certify on 5|11|09
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK



1208

AO 390

# APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country: United States of America
   This public document

2. has been
   signed by     John Lopez

3. acting in
   the capacity of     Deputy Clerk

4. bears the seal/stamp   U. S. District Court - Central District of California

CERTIFIED

5. at     Los Angeles, California          6.    the   U. S. District Court - CDC

7. by     Eduardo Ramirez

8. No.   DC051109-01

9. Seal/Stamp          10.    Signature

1203

---

AO-390 (05/81)

Apostilles certify only the authenticity of the signature of the official who signed the document, the capacity in which that official acted, and where appropriate, the identity of the seal or stamp which the document bears.  An apostille does not imply that the contents of the document are correct, nor that they have the approval of the United States Courts.

                              CLERK, U.S. DISTRICT COURT
AO-393 (05/81)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                              Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
====================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        James Holmes                          None Present
        Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING
DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE
RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties.
After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C
of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed
Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and
Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and
exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire
record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its
previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian
("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and
equitable arguments, authorities, and evidence concerning the motions identified above. In its
final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that
Carter Bryant ("Bryant") created and developed the name, the concept, and, together with
Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                              2

dolls while working as an employee of Mattel and while bound by the terms of an Inventions
Agreement, which provided that all rights to such property, and the property itself, belong to Mattel.
Moreover, the Court further finds, as did the jury, that the preponderance of the evidence
establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations
with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted
Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel.
Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the
MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion
dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA
parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel,
and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as
to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1)
lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v.
Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither
element.

Because the Court has already found that all the claims asserted against the MGA parties
were filed within the applicable limitations periods, the Court starts with the presumption that
laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir.
2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has
already found, based on the undisputed evidence, that Mattel had no reason to know of its claims
against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA
and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE
intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004.
See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a
significantly protectable interest relating to the subject matter of the action, . . . and that MGA's
interest is not adequately represented by the existing parties."). Thereafter, the parties briefed
Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a
stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]  By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase
1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses
that they have not already expressly waived.

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                              3

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL — GEN                                    4

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2] The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

#### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

6                           Initials of Deputy Clerk: jh

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a
complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another
party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990
(1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment,
enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering &
Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz"
along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the
one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to
wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties
enhanced the value of the names by acquiring trademark rights to them.  California law requires, in
this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of
the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties'
argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it.
Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it
has not used the relevant marks in commerce, and one must do so to acquire trademark rights.
Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing
Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir.
1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks
that were created by Bryant, with rights thereto acquired by the MGA parties through registration
and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's
second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking
"imposition of a constructive trust over Bratz, including without limitations registrations and
applications for registrations relating thereto made or filed by [the MGA parties] and third parties,
and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties']
exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all
timeliness challenges to Mattel's claims.

## B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to
assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by
MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the
Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a
number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]   Bryant's other characters were re-named before they were marketed:  Zoe became the
now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may
> be enjoined in any court of competent jurisdiction. The court may make
> such orders or judgments, . . . as may be necessary to prevent the use
> or employment by any person of any practice which [either] constitutes
> unfair competition, . . . or as may be necessary to restore to any person
> in interest any money or property, real or personal, which may have
> been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

## IV.  Motion for Permanent Injunction (docket #4306)

### A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                    8

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

9                            Initials of Deputy Clerk: jh

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5] Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101. Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money. You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products. And the jury has put that cap for us.

Id. Although colorful, counsel's metaphor is not helpful. Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences — both of which would lead the Court to the same conclusion — were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it. But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well. See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low." Opp. at 21 n.30. This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90                                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                                      11

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

    MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right." In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

    At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

MINUTES FORM 90                                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                                   12

> plaintiff meets the burden of proving irreparable harm by making this
> two-part showing. And finally, the two-part test does not represent a
> rule [prohibited by eBay] that an injunction automatically follows a
> determination that a copyright has been infringed. . . . In exercising
> their equitable discretion, courts would still have the freedom to deny
> injunctive relief when the public interest or the balance of hardships
> weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright.*" 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand — most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little — if any — weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

MINUTES FORM 90                                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                                          13

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern. However, there is also a strong public interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law. Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement. The injunction issued by the Court does no more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in the parties' papers warrant the brief discussion that follows.

#### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them. Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act. See 17 U.S.C. § 503(a). The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little. In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

#### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers. See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]    No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                        14

### 3. Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4. Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the
Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the
methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

## VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This
declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the
proposal that a royalty be imposed.

## VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's
consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further
Order of this Court.

## IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's
September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may
be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A
hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One
of the above-referenced Court.

## X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of
potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of
the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery
Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master.
In addition, as noted above, the Court also intends to appoint a Special Master to oversee
implementation of the permanent injunction. The Court provides for counsels' consideration the
following individuals who meet the Court's requirements, and have indicated to the Court a
willingness and an ability to serve in one or both of these roles. Counsel are directed to file any
objections to any or all of the proposed Masters on or before December 22, 2008. Any such
objections are to be submitted *in camera* and under seal with the Court. After considering any
objections, as well as any preferences expressed by the parties, the Court will make an
appointment at the appropriate time.

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

17





I hereby attest and certify on 5|11|09
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1208