MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**MGA'S MOTION TO COMPEL INSPECTION OF ORIGINALS OF CARTER BRYANT'S EMPLOYMENT AGREEMENT WITH MATTEL AND MATTEL'S COPYRIGHT APPLICATIONS FOR ANY BRATZ-RELATED WORK AND FOR SANCTIONS** |
| **CONFIDENTIAL—ATTORNEYS' EYES ONLY—FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | **Phase 2 - Hon. David O. Carter**<br>Date:       TBD<br>Time:       TBD<br>Courtroom: 9D |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD;

PLEASE TAKE NOTICE THAT, at a date and time to be set by the Special Master, MGA Entertainment, Inc. ("MGA") will and hereby does move for an order compelling inspection of:

(1)   the original Employee Confidential Information and Inventions Agreement ("Agreement") Carter Bryant signed in 1999;

(2)   the original, or, if no original exists, the best copy in Mattel's files of the copyright applications filed by Mattel regarding Bratz drawings, including: VAu 715-273, VAu 715-270, VAu 715-271, VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660.

MGA further moves for sanctions amounting to MGA's reasonable costs for preparing and bringing this motion.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Diana M. Rutowski, all other pleadings and papers on file in this matter, and such further evidence and argument as may be presented at the hearing on this motion.

### Statement of Compliance

Lead counsel met and conferred regarding the copyright applications on February 17, 2010 and multiple times thereafter. Lead counsel and conferred regarding both issues in the instant motion on July 19, 2010 and several times thereafter.

## INTRODUCTION

In December 2009, Ninth Circuit Judge Trott acknowledged that the Employee Confidential Information and Inventions Agreement signed by Carter Bryant in 1999 is the most important document in the entire case and yet it cannot be read without a magnifying glass. This was hardly the first time the issue was raised: Mr. Bryant's counsel first requested a clearer copy as long ago as 2004. Nor is this the only instance of Mattel failing to produce a critical document in legible format. In February 2010, Mattel's in-house counsel testified that he could not tell whether the "No" box was ticked on Mattel's copyright applications for Bratz in response to the question "Was this contribution to the work a 'work made for hire'?", the filing of which he supervised himself.

The copies of these documents produced by Mattel have been found to be illegible by the Ninth Circuit and by Mattel's own witnesses. Yet, for months, if not years, and despite numerous requests, Mattel has failed to make the originals or best copies of these documents available for inspection, leaving MGA with no choice but to bring this motion to inspect critical documents.

The fact that Mattel has forced MGA and the Court to expend unnecessary time and resources on moving to compel inspection of these documents, given their importance to the case, warrants sanctions in the amount of MGA's reasonable costs for preparing and bringing this motion. Mattel's withholding of such crucial evidence until such a late stage in this litigation is reprehensible, and even if Mattel now agrees to produce for inspection, it should not be able to avoid sanctions for its delay tactics and conduct necessitating this motion.

## ARGUMENT

**I. MATTEL MUST ALLOW INSPECTION OF THE ORIGINAL MATTEL INVENTIONS AGREEMENT SIGNED BY BRYANT.**

The Employee Confidential Information and Inventions Agreement ("Agreement") Carter Bryant signed in 1999 is the single most critical document in

the case, but the copy Mattel has produced is nearly illegible. *See* Rutowski Decl. Ex. 1 (Employee Confidential Information and Inventions Agreement). The miniscule font and poor quality of the produced copy was noted by Ninth Circuit Judge Trott during oral arguments:

> JUDGE TROTT: Are you talking about the inventions agreement?
> MR. ROSENKRANZ: Yes, Your Honor, this two page—
> JUDGE TROTT: The most important document in the entire case?
> MR. ROSENKRANZ: Yes.
> JUDGE TROTT: And you can't read it without a magnifying glass.
> MR. ROSENKRANZ: Your Honor, neither can I. This is the best copy in the record.

*See* Rutowski Decl. Ex. 2 (Transcript of Dec. 9, 2009 Oral Arguments before the Ninth Circuit at 2:4-13). The poor quality of Mattel's copy was similarly confounding to the 30(b)(6) witness Mattel proffered on the meaning of the contract, who could not clearly read the critical portions of the agreement. *See* Rutowski Decl. Ex. 3 (Deposition Transcript of Alan Kaye, dated June 19, 2010 at 151:14-153:24). In fact, the poor quality of the copy of the Agreement Mattel produced has been evident since at least November 8, 2004, when it was introduced as an exhibit at the deposition of Carter Bryant, prompting Mr. Bryant's counsel to complain about the blurring, ask for reading glasses, and ask for a more legible copy of the agreement—which was not, and has not been, provided. Rutowski Decl., Ex. 4 (Deposition Tr. of Carter Bryant, dated November 8, 2004 at 608:16-610:3). During meet and confers, Mattel now claims that the original Carter Bryant Agreement *no longer exists*, yet Mattel steadfastly fails to produce for inspection any file copies or best copies in its possession.

The MGA Parties require a clear understanding of the appearance and condition of the original contract for two reasons. First, the Agreement used specifically defined particular terms, which it identified throughout the Agreement by capitalizing initial letters of words or phrases, for instance "Proprietary Information." The poor quality of the copy of the Agreement produced by Mattel

renders impossible the certain identification of all such terms, leaving the meaning of the contract ambiguous. Second, the Employee Confidential Information and Inventions Agreement was a contract of adhesion, and as such its legibility is directly relevant to the question whether the Agreement is enforceable.

### A. An Inspection Of The Original Agreement Is Necessary To Ensure The Parties Understand Its Intent And Meaning.

The Agreement Carter Bryant signed with Mattel in 1999 includes a number of defined terms identified by capitalization, including "Proprietary Information." As defined by the Agreement, Proprietary Information could include "any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known...." Rutowski Decl. Ex. 1. The meaning of this term is central to numerous claims before the Court, including Mattel's trade secret claims and the ownership of Bratz.

Mattel's 30(b)(6) witness testified ███████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████ See Rutowski Decl. Ex. 3 (Deposition Transcript of Alan Kaye, dated June 19, 2010 at 151:20-152:8). But, the copy of the Agreement Mattel has produced is so poor that Mattel's own witness was unable to identify where or where not the contract intended to use such capitalization. See id., Ex. 3 (Deposition Transcript of Alan Kaye, dated June 19, 2010 at 151:14-153:24).

The meaning and interpretation of this Agreement is a pillar of each party's case. And clearly, determining the unambiguous meaning of this critical document is impossible if the quality of the copy of the Agreement Mattel has produced is so miserable that Mattel's own witnesses cannot read it.

- 3 -

MTC INSPECTION OF ORIGINALS OF BRYANT'S EMPLOYMENT AGT WITH MATTEL AND MATTEL'S COPYRIGHT APPL FOR ANY BRATZ-RELATED WORK CV-04-9049 DOC (RNBX)

### B. Whether The Agreement Carter Bryant Signed Was Legible Is Relevant To Its Enforceability.

Mattel's Employee Confidential Information and Inventions Agreement is a contract of adhesion. Under California law, a contract of adhesion is any "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Stirlen v. Supercuts*, 51 Cal. App. 4th 1519, 1533 (1997). Agreements signed pursuant to an offer of employment may be contracts of adhesion. This is true whether the prospective employee was "a successful and sophisticated corporate executive … sought out and "hired away" from a highly paid position with a major corporation" or, like Carter Bryant, an unemployed applicant for a non-management position. *Id.*

Whether a party signing contract of adhesion can read and understand its terms is directly relevant to its enforceability. *See e.g., id.* at 1532 (extent to which the supposedly agreed-upon terms are hidden in a printed form is relevant to enforceability); *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 490 (1982); (same); *cf. Conservatorship of Link*, 158 Cal. App. 3d. 138, 141 (1984) ("Numerous provisions of the Civil Code regulate the typeface size of required contract provisions, generally requiring eight- to ten-point type"). As it was produced, not even Mattel's 30(b)(6) witness on the meaning of the contract could read it clearly. Whether Carter Bryant suffered similar difficulty, or could read what he was signing at all, is certainly relevant to this case. MGA should have the opportunity to inspect the original contract to determine if it is any less—or more— readable than the copy Mattel has produced.

Finally, as Judge Trott noted, the Mattel Employee Confidential Information and Inventions Agreement may be the "most important document in the entire case" but "you can't read it without a magnifying glass." Rutowski Decl. Ex. 2. The outcome of the case and potentially tens of millions of dollars depend in no small

part on an accurate understanding of the meaning of the Agreement. Given its importance, given the manifestly poor quality of the copy of the Agreement Mattel has produced, and given that there can be no burden on Mattel for simply letting MGA to inspect a document, there is no reason Mattel should not be compelled to allow MGA to inspect the original, or, if the original cannot be found, the document from which Mattel made the copy it produced.

## II. MATTEL MUST PERMIT MGA TO INSPECT ORIGINAL COPYRIGHT APPLICATIONS FOR BRATZ-RELATED WORK.

The produced versions of Mattel's copyright applications for Carter Bryant's Bratz drawings are equally unclear according to the testimony of Mattel's in-house counsel, who supervised the preparation and filing of the applications. Specifically, Mattel's in-house counsel Michael Moore testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See, e.g.*, Rutowski Decl, Ex. 5 (Deposition Tr. of Michael Moore, dated February 17, 2010 at 169:12-22; 169:24-170:4; 172:16-173:15; 179:8-180:6). Upon this testimony, counsel for MGA immediately requested inspection of the originals, or if not originals, the best copies maintained by Mattel in its files. *Id.*; Rutowski Decl. Ex. 6 (Deposition Tr. of Michael Moore, dated February 18, 2010 at 504:23-505:13). This request, reiterated time and time again by counsel for MGA, has remained pending now for more than five months.

Whether or not Mattel claims ownership of the copyrights in Bratz through the "work made for hire" doctrine is relevant to whether Mattel considered Carter Bryant's work on Bratz to be within the scope of his employment at Mattel. *See, e.g., Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (determination of whether work was made during course of employments is not only the initial ownership of the copyright, but also various subsidiary rights). If

- 5 -

MTC INSPECTION OF ORIGINALS OF BRYANT'S EMPLOYMENT
AGT WITH MATTEL AND MATTEL'S COPYRIGHT APPL FOR
ANY BRATZ-RELATED WORK CV-04-9049 DOC (RNBX)

Mattel checked "No", that is an admission that Bratz-related works were not within the scope of Carter Bryant's employment, or at a minimum, a highly material fact.

Thus, whether or not Mattel checked the "No" box in connection with "work made for hire" on its copyright applications is highly relevant to the scope of its rights. This fact was not lost on the Ninth Circuit. *Mattel v. MGA Entertainment, Inc.*, --- F.3d --- at 10538 (9th Cir. July 22, 2010) (holding that the question whether Bryant created Bratz during the course of his employment should have been submitted to the jury). Topic 22 of MGA Parties' Notice of Deposition of Mattel (Third Phase 2 Notice) seeks testimony on these Mattel copyright applications for Bratz-Related work. On June 18, 2010, this court denied Mattel's motion for a protective order on Topic 22. Mattel has failed to provide a designee on this topic despite MGA's repeated requests, which may lead to further motion practice. However, in order to proceed meaningfully with this court-ordered deposition, MGA must first be permitted to inspect the originals or, if no originals exist, the best copies from Mattel's files.

### III. MATTEL'S WITHHOLDING OF INSPECTION WARRANTS SANCTIONS.

Mattel's conduct, withholding critical documents from inspection, is sanctionable. Sanctions are mandatory under Rule 37(a)(5)(A) when a motion to compel is granted, the moving party filed the motion after a good faith attempt to obtain the discovery, the opposition to the party seeking discovery was substantially unjustified, and the award would not otherwise be unjust. *JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 WL 1957465 *1 (N.D. Cal. May 14, 2010).

MGA has repeatedly engaged in good faith attempts to procure Mattel's cooperation. MGA has been requesting inspection of Carter Bryant's Employee Confidential Information and Inventions Agreement during numerous recent meet and confers of lead counsel. MGA likewise has requested inspection of the

copyright applications numerous times since Mr. Moore's deposition five months ago in February 2010.

Moreover, Mattel can offer no justification for its repeated refusal to produce legible copies or allow an inspection of the originals. A party meets the "substantially justified" standard for refusing a request when there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the motion. *Id.* at *2. That is hardly the case here. Regarding the Bryant Agreement, Mattel has known for nearly six years that its production of the document at the heart of this case was nearly illegible. Regarding the copyright applications, Mattel's own in-house counsel and supervisor of the preparation and filing, testified that he could not decipher their contents. Mattel admits that the documents are relevant and cannot deny their importance. Yet, Mattel intentionally produced copies of each so poor that critical details cannot be made out and thereafter willfully failed to correct the error despite repeated invitations to do so. There is no excuse for this behavior. Reproducing documents already located and identified requires minimal effort. Allowing the other party simply to inspect documents that have already been located requires virtually *none*.

Under these circumstances, MGA is entitled to sanctions amounting to MGA's reasonable costs for preparing and bringing this motion. *Id.* at *1; *Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.*, 177 F.R.D. 633, 636 (N.D. Ill. 1998). Moreover, Mattel may not avoid sanctions merely by producing the documents after this motion has been filed. Fed. R. Civ. P. 37(a)(5)(A); *Second Chance Body Armor, Inc.* 177 F.R.D. 633 at 636.

## CONCLUSION

For the foregoing reasons, MGA respectfully requests that its motion be granted and that Mattel be compelled to produce originals for inspection within two days of the order.

- 7 -

MTC INSPECTION OF ORIGINALS OF BRYANT'S EMPLOYMENT AGT WITH MATTEL AND MATTEL'S COPYRIGHT APPL FOR ANY BRATZ-RELATED WORK CV-04-9049 DOC (RNBX)

1
2
3   Dated: July 26, 2010                    Respectfully submitted,
4                                            ORRICK, HERRINGTON & SUTCLIFFE LLP
5
                                             By: _____
6                                                 Diana M. Rutowski
                                             Attorneys for MGA ENTERTAINMENT, INC.,
7                                            MGA ENTERTAINMENT HK, LTD., MGA de
                                             MEXICO, S.R.L. de C.V., and ISAAC LARIAN
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28