MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS<br>**CONFIDENTIAL – ATTORNEYS' EYES ONLY – FILED UNDER SEAL** | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with: Case No. CV 04-9059<br>Case No. CV 05-2727<br>**DECLARATION OF DIANA M. RUTOWSKI IN SUPPORT OF MGA'S MOTION TO COMPEL INSPECTION OF ORIGINALS OF CARTER BRYANT'S EMPLOYMENT AGREEMENT WITH MATTEL AND MATTEL'S COPYRIGHT APPLICATIONS FOR ANY BRATZ-RELATED WORK AND FOR SANCTIONS**<br><br>**Phase 2 - Hon. David O. Carter**<br>Discovery Cut-off: TBD<br>Pretrial Conference: TBD<br>Trial Date: TBD |

1    I, Diana M. Rutowski, declare as follows:

2    1.    I am a member of the Bar of the State of California and admitted to
3    practice before this Court, and an attorney with the law firm of Orrick, Herrington
4    & Sutcliffe LLP, counsel for Phase 2 to MGA Entertainment, Inc. ("MGAE"),
5    MGA Entertainment HK, Ltd. ("MGA HK"), MGAE De Mexico, S.R.L. De C.V.
6    ("MGAE Mexico"), and Isaac Larian (collectively, the "MGA Parties"). I make
7    this declaration in support of MGA Parties' Motion to Compel Inspection of
8    Originals Carter Bryant's Agreements With Mattel and for Sanctions. I have
9    personal knowledge of the facts set forth in this declaration. If called as a witness, I
10   could and would testify competently to such facts under oath.

11   2.    Attached hereto as **Exhibit 1** is a true and correct copy of the Mattel
12   Employee Confidential Information and Inventions Agreement produced by Mattel
13   bearing Bates No. M 0001596.

14   3.    Attached hereto as **Exhibit 2** is a true and correct copy of relevant
15   portions of the transcript of the December 9, 2009 argument before the Ninth
16   Circuit.

17   4.    Attached hereto as **Exhibit 3** is a true and correct copy of relevant
18   portions of the deposition transcript of Alan Kaye, dated June 19, 2010.

19   5.    Attached hereto as **Exhibit 4** is a true and correct copy of relevant
20   portions of the deposition transcript of Carter Bryant, dated November 8, 2004.

21   6.    Attached hereto as **Exhibit 5** is a true and correct copy of relevant
22   portions of the deposition transcript of Michael Moore, dated February 17, 2010.

23   //
24   //
25   //
26   //
27   //
28   //

7. Attached hereto as **Exhibit 6** is a true and correct copy of relevant portions of the deposition transcript of Michael Moore, dated February 18, 2010.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was hereby executed on July 26, 2010, at Menlo Park, California.

_____
Diana M. Rutowski

# EXHIBIT 1

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

### 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

### 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

### 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

_Carter J. Bryant_
Employee Signature

CARTER M. BRYANT
Employee Name (print)

01/04/99
Date

MATTEL, INC.
By _Teresa Newcomb_
Signature

TERESA NEWCOMB
Name of Witness (print)

M 0001596

DEPOSITION EXHIBIT
35
11.8.04  SH

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

### 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

### 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

### 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors' and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

# EXHIBIT 2

```
 1                UNITED STATES COURT OF APPEALS
 2                     FOR THE NINTH CIRCUIT
 3   - - - - - - - - - - - - - - - - -X
 4   MATTEL, INC.,                    :
 5       v.                           :    Nos.  09-55673
 6   MGA ENTERTAINMENT, INC., et al.  :          09-55812
 7                                    :
 8   - - - - - - - - - - - - - - - - -X
 9
10                              Wednesday, December 9, 2009
11
12          MR. ROSENKRANZ:  May it please the Court, Joshua
13   Rosenkranz on behalf of MGA.
14          Your Honors, the District Court in this case imposed
15   a draconian remedy that threatens the imminent demise of a
16   highly successful worldwide enterprise.
17          JUDGE TROTT:  Too big to fail.
18          MR. ROSENKRANZ:  Well, Your Honor, it's on the brink
19   of failure and all because of a series of draconian orders
20   that the District Court imposed:  a worldwide copyright
21   injunction, a worldwide and unprecedented constructive trust
22   that it was infected with multiple legal errors.  This case
23   presents errors that go to the heart of copyright law and tort
24   law and the scope, the permissible scope of equitable remedies.
25   But the appeal logically begins with an ambiguous, barely
```

```
 1  legible contract preprinted as an employment agreement that
 2  has been aggressively interpreted against the employee in this
 3  case in a manner that threatens basic economic freedoms.
 4          JUDGE TROTT:  Are you talking about the inventions
 5  Agreement?
 6          MR. ROSENKRANZ:  Yes, Your Honor, this two page—
 7          JUDGE TROTT:  The most important document in the
 8  entire case?
 9          MR. ROSENKRANZ:  Yes.
10          JUDGE TROTT:  And you can't read it without a
11  magnifying glass.
12          MR. ROSENKRANZ:  Your Honor, neither can I.  This is
13  the best copy in the record.
14          JUDGE WARDLAW:  But we know it doesn't have the word
15  "ideas" in it.
16          MR. ROSENKRANZ:  We know it does not have the word
17  "ideas" in it and this single piece of paper became the engine
18  of economic ruin for MGA.  So, let's talk, Your Honors, about
19  the two ambiguities, one of which goes to the idea for the
20  name Bratz—the "ideas" piece—the other of which goes to all of
21  the economic, excuse me, all of the equitable relief that was
22  granted.
23          Now, to Judge Wardlaw's point, the very notion of an
24  employer laying claim to an employee's ideas is very scary.
25  It means that any time someone succeeds in a business, his
```

# Exhibit 3

## Confidential – Attorneys' Eyes Only
## FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) | |
| v. | |
| DEFENDANT(S). | NOTICE OF MANUAL FILING |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

**Document Description:**

☐ Administrative Record

☐ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☐ Other

**Reason:**

☐ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☐ Per Court order dated _____

☐ Manual Filing required (*reason*):

Date _____ Attorney Name _____

Party Represented _____

Note: File one Notice in each case, each time you manually file document(s).

G-92 (03/09)            **NOTICE OF MANUAL FILING**

# EXHIBIT 4
# CONFIDENTIAL-
# FILED UNDER SEAL PURSUANT TO
# PROTECTIVE ORDER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) v. DEFENDANT(S). | NOTICE OF MANUAL FILING |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

**Document Description:**

☐ Administrative Record
☐ Exhibits
☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]
☐ Other

**Reason:**

☐ Under Seal
☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)
☐ Electronic versions are not available to filer
☐ Per Court order dated _____
☐ Manual Filing required (*reason*):

_____       _____
Date                           Attorney Name

                               _____
                               Party Represented

Note: File one Notice in each case, each time you manually file document(s).

G-92 (03/09)                   **NOTICE OF MANUAL FILING**

# Exhibit 5

**Confidential – Attorneys' Eyes Only**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) | |
| v. | |
| DEFENDANT(S). | NOTICE OF MANUAL FILING |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

**Document Description:**

☐ Administrative Record

☐ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☐ Other

**Reason:**

☐ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☐ Per Court order dated _____

☐ Manual Filing required (*reason*):

_____        _____
Date                                              Attorney Name

                                                  _____
                                                  Party Represented

Note: File one Notice in each case, each time you manually file document(s).

G-92 (03/09)                    **NOTICE OF MANUAL FILING**

# Exhibit 6

**Confidential – Attorneys' Eyes Only**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) | |
| v. | |
| DEFENDANT(S). | NOTICE OF MANUAL FILING |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

**Document Description:**

☐ Administrative Record

☐ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☐ Other

**Reason:**

☐ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☐ Per Court order dated _____

☐ Manual Filing required (*reason*):

_____          _____
Date                                              Attorney Name

                                                    _____
                                                    Party Represented

Note:  File one Notice in each case, each time you manually file document(s).

G-92 (03/09)            **NOTICE OF MANUAL FILING**