MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | Case No.  CV 04-9049-DOC (RNBx)<br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OBJECTION TO REPORT AND RECOMMENDATION DATED JULY 19, 2010** |
| AND CONSOLIDATED ACTIONS | Date:          TBD<br>Time:          TBD<br>**Phase 2**<br>Discovery:          None Set<br>Pretrial Conference: None Set<br>Trial Date:          None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on a date to be determined by the Court in the Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Room 1053, Santa Ana, California 92701, MGA Entertainment Inc., MGA HK Limited, MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, the "MGA Parties" or "MGA") will, and hereby do, move the Court to overrule Electronic Discovery Special Master Report and Recommendation dated July 19, 2010.

This Objection is made on the following grounds.  First, the Report and Recommendation requires a continued search for data contained on a MGA database denoted ArchiveOne despite the fact that under Federal Rule of Civil Procedure 26(b)(2)(B) that database is not reasonably accessible and therefore should not be the subject of discovery.  The Special Master's conclusion that ArchiveOne is reasonably accessible is based on an error of law.

Second, Mattel has not met its burden, and the Special Master has made no finding, that there is good cause to require a search of ArchiveOne, a precondition for ordering it searched.

Finally, even were the Report and Recommendation adopted, it should have shifted the cost of any searching and production of ArchiveOne to Mattel.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Notice of Lodging and exhibits attached thereto, the Declarations of Warrington S. Parker III and Samuel Valentine, all matters cited to herein, this Court's files and all other matters of which the Court may take judicial notice.

1

## Statement Of Compliance

2          The parties conferred regarding the issues raised in this Objection on various

3  occasions.

4          Respectfully submitted,

5  Dated: July 29, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP

6

7                                          By:    /s/ Warrington S. Parker III

8                                                 Warrington S. Parker III
                                                  Attorneys for MGA Parties

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 3

    A.    ArchiveOne Is Installed To Reduce The Volume Of E-Mail Data On MGA's Servers ................................................................................ 3

    B.    MGA Establishes That ArchiveOne Data Is Not Readily Accessible And The Special Master Finds That ArchiveOne Is Not Easily Searched ................................................................................ 3

    C.    Because Not All E-Mails Are Archived, MGA Established That Mattel Has Full E-Mails And Has The Means Of Requesting Retrieval Of Specific E-Mails From ArchiveOne ................................ 4

    D.    The Electronic Discovery Special Master Does Not Make Any Findings Regarding The Accessibility Of ArchiveOne, But Orders Searches To Be Conducted ...................................................... 6

    E.    The Electronic Discovery Special Master Finds That ArchiveOne Is Accessible And Orders That Information Be Restored And Then Searched ............................................................... 7

SUMMARY OF ARGUMENT ............................................................................ 8

ARGUMENT ........................................................................................................ 9

I.    THE SPECIAL MASTER ERRED WHEN HE FOUND ARCHIVEONE WAS REASONABLY ACCESSIBLE ............................... 9

    A.    The Special Master Erred As A Matter Of Law When He Concluded That The Presence Of "Active" Files Renders ArchiveOne Reasonably Accessible ...................................................... 9

    B.    ArchiveOne Is The Functional Equivalent Of A Backup Tape And Is Inaccessible Due To Undue Burden And Cost ...................... 12

II.    THERE IS NO GOOD CAUSE TO ALLOW A SEARCH OF ARCHIVEONE ............................................................................................ 14

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

III.   IF SEARCHING OF ARCHIVEONE IS ALLOWED TO
        CONTINUE, COST-SHIFTING IS APPROPRIATE ................................. 18

IV.   IF THIS COURT REQUIRES ADDITIONAL PROOF, IT SHOULD
        ORDER A RULE 706 REPORT ................................................................. 19

CONCLUSION ....................................................................................................... 20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Cognex Corp. v. Electro Scientific Indus., Inc.*,
2002 WL 32309413 (D. Mass July 2, 2002) ..................................................... 18

*Helmert v. Butterball, LLC*,
2010 WL 2179180 (E.D. Ark. May 27, 2010) ........................................... 13, 16

*Laethem Equip. Co. v. Deere & Co.*,
261 F.R.D. 127 (E.D. Mich. 2009) ................................................................... 19

*Major Tours, Inc. v. Colorel*,
2009 WL 3446761 (D.N.J. Oct. 20, 2009) ..................................... 11, 13, 14, 16

*Major Tours, Inc. v. Colorel*,
2010 WL 2557250 (D.N.J. June 22, 2010) ....................................................... 18

*OpenTV v. Liberate Technologies*,
219 F.R.D. 474 (N.D. Cal. 2003) ......................................................... 11, 13, 19

*Regan-Touhy v. Walgreen Co.*,
526 F.3d 641 (10th Cir. 2008) ......................................................................... 17

*W.E. Aubuchon Co., Inc. v. BeneFirst, LLC*,
245 F.R.D. 38 (D. Mass. 2007) ............................................................... 11, 16

*Wiley v. Paulson*,
2007 WL 7059722 (E.D.N.Y. Sept. 26, 2007) ................................................ 19

*Zubulake v. UBS Warburg LLC*,
216 F.R.D. 280 (S.D.N.Y. 2003) ..................................................................... 19

*Zubulake v. UBS Warburg, LLC*,
217 F.R.D. 309 (S.D.N.Y. 2003) ........................................................ 10, 11, 18

## FEDERAL STATUTES

Fed. R. Civ. P. 26.............................................................................................passim

2006 Advisory Committee Notes re Fed. R. Civ. P. 26 ................................... 10, 14

## MISC.

Theodore Hirt, 13 RICHMOND J.L. & TECH. 12 (Spring 2007)................................ 10

THE SECOND CONFERENCE COMMENTARY ON: PRESERVATION, MANAGEMENT AND
IDENTIFICATION OF SOURCES OF INFORMATION THAT ARE NOT REASONABLY
ACCESSIBLE (July 2008)……………………………………………………… 11-12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES
### (continued)

Page

19 No. 2 Intell. Prop. & Tech. L.J. 13, 14 (Feb. 2007)…………………………13

MASTER CAPTION
CV 04-9049 SGL (RNBx)

**OBJECTION TO ELECTRONIC DISCOVERY SPECIAL MASTER REPORT AND RECOMMENDATION (JULY 19, 2010)**

The MGA Parties hereby object to the July 19, 2010, Electronic Discovery Special Master  Report and Recommendation to the extent, and because, it requires a search of ArchiveOne.

## **INTRODUCTION**

ArchiveOne is a e-mail archiving system that MGA installed in 2006, prior to being sued by Mattel, in order to manage the volume of e-mail data on its servers. As found by the Special Master, the publishers of ArchiveOne "represented [it] to be fully searchable."  Dkt. No. 7636 at 4.

However, in practice, ArchiveOne has been anything but fully searchable. The Special Master has now confirmed, that ArchiveOne "presents substantial obstacles to mass recovery of large amounts of data."  July 19 R&R at 4:8.  This conclusion is amply supported by MGA's showing as well as the Special Master's own experience.  It has taken the Special Master over six weeks just to run 7.9 percent of the 679 search terms that Mattel has asked the Special Master to run at a cost of more than $40,000.  Based on this, the Special Master should have found, pursuant to Fed. R. Civ. P. 26(b)(2)(B), that ArchiveOne was not a reasonably accessible source.

However, the Special Master did not reach this conclusion based on a error of law.  The Special Master found that ArchiveOne was, despite the factual evidence, reasonably accessible because it contained "active files."  However, Rule 26 does not distinguish between data sources that contain active files and those that do not. Rather, the inquiry is whether the source can be searched without undue burden and cost.  The facts establish that ArchiveOne has proven that it cannot be searched without undue burden and cost.

1    Moreover, the Special Master has now proposed that all data for specific

2    custodians, to be identified by Mattel, be pulled from ArchiveOne and then

3    removed to another location so that the resulting e-mails can be searched.  This is

4    little different than what is necessary to obtain information from backup tapes,

5    which have been universally found to be inaccessible under the terms of Rule

6    26(b)(2)(B).

7    Nor has Mattel shown any good cause, as it must, to require a search of

8    ArchiveOne.  MGA has amply demonstrated that not all users at MGA are

9    connected to ArchiveOne.  Therefore, even if one e-mail from a user has been sent

10   to ArchiveOne, MGA has demonstrated that the exact duplicate of the e-mail

11   obtained from another custodian has in fact been produced.  Moreover, MGA has

12   demonstrated that e-mails sent to ArchiveOne are not removed from a user's e-mail.

13   Instead, a shortened form of the e-mail remains such that Mattel can request the

14   specific e-mail if it determines it of relevance to this case.  MGA has offered to

15   provide a fuller e-mail upon request by Mattel.  Therefore, there is no good cause to

16   require a search of ArchiveOne.  And the Special Master has made no such finding.

17   Finally, if this Court affirms the Report and Recommendation, cost-shifting

18   is appropriate.  Mattel—not MGA—should bear the cost of any search of

19   ArchiveOne.

20   For these reasons, the July 19 Report and Recommendation should be

21   overturned.  And if not overturned based on the record developed to date, MGA has

22   and does request a formal report of the Rule 706 expert ILS regarding the nature

23   and results of their efforts to search ArchiveOne to date, including their

24   investigation of the capabilities of the ArchiveOne system both directly at MGA

25   and with the vendor of the software, and whether the performance of the software is

26   consistent with the vendor's representations made in the software manuals.  At the

27   time such report is submitted, MGA will then seek to cross-examine ILS, if

28   necessary.

# STATEMENT OF FACTS

## A.   ArchiveOne Is Installed To Reduce The Volume Of E-Mail Data On MGA's Servers.

ArchiveOne is an e-mail archiving system that MGA implemented to manage the volume of e-mail data on MGA's Exchange server.  MGA acquired ArchiveOne in April 2006 and installed it shortly thereafter.  Notice of Lodging, Exhibit D (2d Supp'l Rubin Decl.) ¶¶ 3-4.   As reflected in the Report and Recommendation of January 21, 2010, adopted by this Court, Dkt. No. 7636, the publishers of ArchiveOne "represented [it] to be fully searchable."  *Id.* at 4.

ArchiveOne is not a general document storage system.  Instead, after 90 days, an e-mail and any attachment are transferred to one of ArchiveOne's database repositories. It only stores e-mails and any attachments to them.  It currently contains 716 gigabytes of information—almost three-quarters of a terabyte of data. Notice of Lodging Exhibit D (2d Supp'l Rubin Decl.) ¶ 5.

When an e-mail is transferred to an ArchiveOne database repository, the e-mail is not completely eliminated or removed from a users Outlook e-mail mailbox. Instead, when a document is sent to ArchiveOne's database repositories, the first 1,000 words of an e-mail remain and the e-mail bears a notation htps/mgavs.mgae.com/AOneSearch?Id.   Notice of Lodging Exhibit D (2d Supp'l Rubin Decl.) ¶ 6.  Generally, the remaining portion is sufficient to get an indication of the subject matter of the e-mail and to identify the senders, recipients and time frame of the e-mail.

## B.   MGA Establishes That ArchiveOne Data Is Not Readily Accessible And The Special Master Finds That ArchiveOne Is Not Easily Searched.

Despite the representations of the publishers of ArchiveOne, in practice, and as established by MGA and found by the Special Master, ArchiveOne is not readily searchable. As found by the Special Master, "because of the internal limitation of

1  the ArchiveOne database," retrieving e-mails requires substantial time and requires

2  significant expense."  July 19 R&R 2:2-5.

3       This comports with the facts that MGA established.  *See* Notice of Lodging

4  Exhibit C (MGA's Response to 12/24/09 Report and Recommendation) at 4-5;

5  Exhibit B (12/11/09 Rubin Decl.) ¶¶ 16-17.  Searching for e-mails in ArchiveOne is

6  an enormously time consuming, expensive and burdensome process.  While it is

7  possible to obtain documents from ArchiveOne, only one user can make a query.

8  Its search interface is antiquated and limits the nature and scope of the searches that

9  can be performed.  In response to searches, it creates non-unicode Outlook PST

10  files, which become corrupted when they surpass two gigabytes in size.  Notice of

11  Lodging Exhibit B (12/11/09 Rubin Decl.) ¶¶ 16-17.

12  **C.**    **Because Not All E-Mails Are Archived, MGA Established That Mattel Has Full E-Mails And Has The Means Of Requesting Retrieval Of**

13  **Specific E-Mails From ArchiveOne.**

14       Not all users at MGA have their e-mails archived on ArchiveOne.  Notice of

15  Lodging Exhibit B (12/11/09 Rubin Decl.) ¶ 16.  Moreover, as noted, even when e-

16  mails are sent to ArchiveOne, the e-mail that remains in the users Outlook e-mail

17  box is truncated, i.e., shortened, but not eliminated.

18       As a result, and as established by MGA, Mattel, in fact, has e-mails that were

19  sent to ArchiveOne in full form because not every user is connected to ArchiveOne.

20  Notice of Lodging Exhibit A (12/11/09 MGA Opp. to Mattel's MTC E-Discovery

21  Issues) at 11-12.

22       As noted in its briefing in December 2009, which focused on MGA Mexico,

23  by December 2009, MGA Mexico produced almost 200,000 documents.  Dkt No.

24  7242 (11/16/09 Molinski Decl.) ¶ 5.  Mattel claimed that 10,828 of the 188,316

25  pages of documents MGA Mexico produced "are only partial e-mail strings," with

26  the remaining portions cut off and replaced by a notice that they have been archived

27  to MGA's U.S. based archive service.  Dkt. No. 7181, 7267 (Mot. to Enforce

28  Compliance with Order No. 52) at 2.  Mattel then attached to its motion six e-mails

1    that it stated were examples of such "partial e-mail strings." Dkt. No. 7182, 7269
2    (Ex. 2 11/09/09 Searcy Decl. at 40-45).

3        In response, MGA searched the database of previously produced documents
4    for those six emails, and found that four of the six had been previously produced *by*
5    *MGA with complete email strings attached*. Dkt. No. 7242 ¶ 8 Exhibits E-H. The
6    remaining two emails were, on their face, irrelevant to the claims asserted. One
7    email addressed the need to obtain translations for mock ups of packages and the
8    other is simply a transmittal of an invoice for an event held at Madison Square
9    Garden. Dkt No. 7182, 7269 Exhibit 2 at 43, 45.

10       In addition, in briefing called for in January 2010, MGA further established
11   that its production to Mattel contains complete e-mails for many duplicates that
12   were truncated when archived. For example, Exhibit 3 to the January 2010
13   Declaration of Warrington S. Parker is an e-mail bearing the notation that it appears
14   in Archive One. Notice of Lodging Exhibit E (12/11/09 Parker Decl) Exhibit 3.
15   Exhibit 4, produced in June 2007 as Bates MGA 0071423, is the *same* e-mail in full
16   form. Exhibit 5 contains both the e-mail sent to Archive One's database repository
17   and Exhibit 6 is its duplicate. *Id.*; *see also id.* Exhibits 7-8 (same). All of these are
18   documents that Mattel possesses because all of these are documents were produced
19   in full by MGA.

20       Finally, as reflected by the e-mails bearing the ArchiveOne notation, Mattel
21   has a means of determining whether an e-mail is of such import that it should be
22   retrieved in full. And MGA offered to retrieve from ArchiveOne any specific
23   documents identified by Mattel. Notice of Lodging Exhibit C (MGA's Response to
24   12/24/09 Report and Recommendation) at 5, 7-8; Exhibit A (12/11/09 MGA Opp.
25   to Mattel's MTC E-Discovery Issues) at 18.

26

27

28

**D.** **The Electronic Discovery Special Master Does Not Make Any Findings Regarding The Accessibility Of ArchiveOne, But Orders Searches To Be Conducted.**

In January 2010, the Special Master issued a Report and Recommendation requesting ILS, the forensic group with which the Special Master is working, to "address the issue of whether archived e-mails that have discovery relevance can be retrieved." Dkt. No. 7636 at 4. In so ordering, the Special Master explicitly stated that he "has not conducted a fact finding hearing in regard [to the accessibility of ArchiveOne] . . . ." *Id.*

Subsequent to that Report and Recommendation, and until the July 19, 2010 Report and Recommendation, the Special Master did not issue any Reports or findings concerning the accessibility of ArchiveOne.

Rather, in hearings that resulted in a May 8, 2010 Report and Recommendation, the Electronic Discovery Special Master ordered the parties to arrive at search terms. What resulted was a list from Mattel of 679 search terms. Notice of Lodging Exhibit F (5/8/10 Report and Recommendation) Exhibits A and B.[1] In the May 8 Report and Recommendation, the Electronic Discovery Special Master then ordered that the search terms proposed by Mattel be run. Notice of Lodging Exhibit F.

Beginning on June 1, 2010, ILS began running search terms. Between then and July 26, 2010, ILS has run 7.9 percent (54) of the 679 search terms.[2] As found by the Special Master, due to the operation of ArchiveOne, and consistent with MGA's representations concerning ArchiveOne, the ability to search ArchiveOne was frustrated by ArchiveOne's slow retrieval, errors in retrieval and its inability to retrieve. In the words of the Special Master, "because of the internal limitation of

---

[1] The search terms are identified by Mattel in two categories: disputed and undisputed terms. MGA has not agreed to the search terms and this is Mattel's characterization. Notice of Lodging Exhibit G (MGA's Objs. To Proposed ArchiveOne Search Terms).

[2] This information is referenced in the Declaration of Samuel Valentine. The Special Master has given express permission to the parties to observe the running of search terms by ILS.

1  the ArchiveOne database," retrieving e-mails requires substantial time and requires

2  significant expense."  July 19 R&R 2:2-5.

3  **E.**     **The Electronic Discovery Special Master Finds That ArchiveOne Is**
       **Accessible And Orders That Information Be Restored And Then**

4       **Searched.**

5         In light of the difficulties in searching ArchiveOne, the Special Master has

6  recommended that ILS abandon running search terms across all of ArchiveOne.

7  Instead, in his Report and Recommendation of July 19, the Special Master has

8  directed Mattel to identify specific custodians.  ILS will then pull the entirety of the

9  identified custodians from ArchiveOne without regard to search terms, place that

10  the information on another search platform, and then run Mattel's search terms

11  across ArchiveOne.  In other words, the Special Master recommends that data on

12  ArchiveOne be restored, removed from ArchiveOne and then be searched.

13         MGA objected to this proposal.  MGA noted that ArchiveOne cannot be

14  considered reasonably accessible, as confirmed by the work of ILS.  Indeed, MGA

15  noted that the Special Master's proposed alternative approached confirmed that

16  ArchiveOne was the equivalent of a backup tape, which is not considered to be

17  reasonably accessible.  Finally, as relevant here, MGA noted that there had been no

18  finding that the benefits of searching ArchiveOne outweighed the cost and burden

19  of conducting a search of ArchiveOne.  Parker Decl. Exhibit A.

20         In his July 19 Report and Recommendation, the Special Master agreed that

21  ArchiveOne "presents substantial obstacles to mass recovery of large amounts of

22  data."  July 19 R&R at 4:8.  Nonetheless, the Special Master found that the data on

23  ArchiveOne was "reasonably accessible" because it contained active files.

24  According to the Special Master, this distinguished ArchiveOne from backup tapes

25  because backup tapes "do not contain active files" and accessing data on stored on

26  back up tapes involves "a multistage process involving the complete restoration of

27  the server that was backed up, thereby creating active files that can be searched

28  for."  R&R 3:16-21.

1    Based on this analysis, and without any mention or consideration whether the

2    benefits outweighed the costs of any search, the Special Master adopted his

3    alternative proposal regarding the search of ArchiveOne.  Specifically, the Special

4    Master recommended that Mattel identify 15 custodians, that the data associated

5    with those custodians would be recovered fully from ArchiveOne, that the data

6    would be removed to another platform and that the Mattel search terms be run

7    across that data. July 19 R&R 4-5.

8                              **SUMMARY OF ARGUMENT**

9    Pursuant to the terms of Rule 26(b)(2)(B), a party need not produce data from

10   "sources" that are not "reasonably accessible" unless the party seeking that

11   discovery shows good cause for requiring production from that source.   The

12   Special Master wrongly concluded that ArchiveOne is a reasonably accessible

13   source.  The facts do not support such a conclusion.  Moreover, the Special

14   Master's conclusion that ArchiveOne is a reasonably accessible source is based on

15   an error of law, specifically, the misapprehension that Rule 26 provides that a

16   source containing "active files" is reasonably accessible.  *See* Part I.

17   Additionally, Mattel has not shown, and there has been no finding that there

18   is good cause to require a search of ArchiveOne.  As MGA has established, Mattel

19   either has documents in full form or has the means of requesting specific documents

20   if they are relevant to this case.  *See* Part II.

21   If a search is ordered, the costs of conducting any search should be shifted to

22   Mattel.  *See* Part III.

23   Finally, if there is any lingering questions concerning this, the MGA Parties

24   have and do request a formal report of the Rule 706 expert ILS regarding the nature

25   and results of their efforts to search ArchiveOne to date, including their

26   investigation of the capabilities of the ArchiveOne system both directly at MGA

27   and with the vendor of the software, and whether the performance of the software is

28   consistent with the vendor's representations made in the software manuals.  At the

MGA'S OBJ. TO R& R OF JULY 19, 2010
CV 04-09049 DOC (RNBx)

1   time such report is submitted, MGA will consider whether cross-examination also

2   is necessary.  *See* Part IV.

3                              **ARGUMENT**

4   **I.      THE SPECIAL MASTER ERRED WHEN HE FOUND ARCHIVEONE**
        **WAS REASONABLY ACCESSIBLE.**
5
    **A.     The Special Master Erred As A Matter Of Law When He Concluded**
6           **That The Presence Of "Active" Files Renders ArchiveOne Reasonably**
            **Accessible.**
7
            The Special Master has recognized that ArchiveOne "presents substantial
8
    obstacles to mass recovery of large amounts of data."  July 19 R&R at 4:8.  This
9
    finding is consistent with the evidence that MGA presented to the Special Master.
10
    *See* Notice of Lodging Exhibits A, B, D.  In any case, such a finding was compelled
11
    by ILS' experience with ArchiveOne, which has been searched for over a month
12
    and a half with varying errors in retrieval and which has resulted in the running of
13
    less than 8% of Mattel's total search terms.  As a factual matter, and as is reinforced
14
    by the Special Master's attempt to restore data so that it can be searched,
15
    ArchiveOne is the functional equivalent of a backup tape that must be considered
16
    inaccessible.  *See* Part II, *infra*.
17
            That the Special Master would not consider these facts as compelling a
18
    finding that ArchiveOne is not reasonably accessible is based on a legal error.
19
    Specifically, the legal error is the Special Master's conclusion that ArchiveOne was
20
    reasonable accessible because it contained active files in contrast to a backup tape.
21
    Rule 26, the same rule on which the Special Master relies, does not draw a
22
    distinction between active files and back up tapes.
23
            Rule 26(b)(2)(B) provides that "[a] party need not provide discovery of
24
    electronically stored information from sources that the party identifies as not
25
    reasonably accessible because of undue burden or cost."  In so providing, Rule 26
26
    makes no distinction, as did the Special Master, between "active files" and backup
27
    tapes.  Rather, it provides an exception for electronically stored information "*from*
28

1   *sources*" without regard to a distinction between what may be considered active

2   files or backup tapes.

3        That Rule 26 does not distinguish between electronically stored information

4   that may be considered "active" is further established by the Advisory Committee

5   Notes that accompanied the enactment of Rule 26(b)(2)(B).  The Advisory

6   Committee made plain that the Rule did not attempt to distinguish between the type

7   of "source."  By defining accessibility in terms of reasonableness and "undue

8   burden or cost" rather than specific technologies (*e.g.*, backup tapes), the Advisory

9   Committee avoided "defin[ing] in a rule the different types of technological

10  features that may affect the burdens and costs of accessing [ESI]."  2006 Advisory

11  Committee Notes to Fed. R. Civ. P. 26(b)(2).  Instead, recognizing that information

12  systems "may retain information on sources that are only accessible by incurring

13  substantial burdens and costs[,]" Rule 26(b)(2)(B) was "added to regulate the

14  discovery from such sources" and without regard to the source.  2006 Advisory

15  Committee Notes to Fed. R. Civ. P. 26(b)(2); *see also* Theodore Hirt, 13 RICHMOND

16  J.L. & TECH. 12 * 4 (Spring 2007) ("The Rule does not purport to define or describe

17  what sources of information are reasonably accessible, and which are not.").

18       In making the distinction that the Special Master did, it appears that the

19  Special Master's decision was influenced by *Zubulake v. UBS Warburg, LLC*, 217

20  F.R.D. 309 (S.D.N.Y. 2003).  Although not cited by the Special Master, *Zubulake* is

21  considered a seminal case with regard to electronic discovery and in considering

22  what electronic media is reasonably accessible.  The *Zubulake* Court made a

23  distinction between electronic media that contains active files and those that do not.

24  Although drawing no bright line rule, the *Zubulake* Court generally considered

25  media containing active files as accessible.  *Id.* at 318-20.

26       However, there are at least two points of distinction that renders the *Zubulake*

27  Court's generalized view of what can be considered accessible inapplicable to this

28  case.  First, the *Zubulake* Court's view was based on a functional analysis of the

media, as opposed to a bright line rule specific to the media.  Stated otherwise, the *Zubulake* Court based its analysis on the assumption that media containing active files were accessible because such files are "stored in a readily usable format."  *Id.* at 320.  What distinguished such data from data on a backup tape, according to the *Zubulake* Court was that the data "does not need to be restored or *otherwise manipulated to be usable*."  *Id.* (emphasis added).

Here, and as established by the Report and Recommendation, what has been found is that the data on ArchiveOne cannot be searched in any reasonable fashion *unless* the data is restored or otherwise manipulated to be useable.  As reflected in the Report and Recommendation, in order to accomplish the task of searching data on ArchiveOne, ILS must pull from ArchiveOne all data relating to a custodian, place that data on another platform and only then can searches be run.  In other words, in order to conduct the search, the data on ArchiveOne must be manipulated.

Second, *Zubulake* was decided *prior* to the 2006 enactment of Rule 26(b)(2)(B).  As noted, the subsequently adopted Rule 26(b)(2)(B) draws no distinction of the type drawn by either the Special Master or *Zubulake*.  Rather, Rule 26(b)(2)(B) speaks solely in terms of "sources" without regard to whether those "sources" contain active files or some other type of file information.  Therefore, the heuristic provided by *Zubulake* between active and non-active data, apparently relied on by the Special Master sub silentio, cannot be considered dispositive.  *See also Major Tours, Inc. v. Colorel*, 2009 WL 3446761 (D.N.J. Oct. 20, 2009) (finding that data on back up tapes and archived e-mails were inaccessible); *W.E. Aubuchon Co., Inc. v. BeneFirst, LLC*, 245 F.R.D. 38, 42-43 (D. Mass. 2007) (finding data contained on a server to be inaccessible); *OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 477 (N.D. Cal. 2003) (considering the time and effort necessary to extract data while noting that the data was not "backed up" "in the manner of the e-mails at issue in the *Zubulake* cases . . . ."); THE SECOND CONFERENCE COMMENTARY ON: PRESERVATION, MANAGEMENT AND

IDENTIFICATION OF SOURCES OF INFORMATION THAT ARE NOT REASONABLY ACCESSIBLE at 11 (July 2008) (noting that consideration must be given to the "unique complexities of retrieval and review of data from any given source" even if the source contains active files).  To conclude otherwise was error.

**B.      ArchiveOne Is The Functional Equivalent Of A Backup Tape And Is Inaccessible Due To Undue Burden And Cost.**

Whether a source is considered inaccessible turns on whether there is undue burden or cost.  The Special Master has not, to date, made any finding regarding undue burden or cost.  And if there is any lingering questions concerning this, the MGA Parties have and do request a formal report of the Rule 706 expert ILS regarding the nature and results of their efforts to search ArchiveOne to date, including their investigation of the capabilities of the ArchiveOne system both directly at MGA and with the vendor of the software, and whether the performance of the software is consistent with the vendor's representations made in the software manuals.  At the time such report is submitted, MGA will consider whether cross-examination also is necessary.  Parker Decl. Exhibit A.

However, the facts also amply demonstrate the undue burden and cost.  Already, and just to run less than 8 percent of the total search terms that Mattel has asked to be run across ArchiveOne, ILS has charged in excess of $40,000.  Parker Decl. Exhibit B (7/12/10 Report and Recommendation), Exhibit A.  The searches are not completed.  And the charge does not include the time it will take attorneys to review and produce the information on ArchiveOne.  For ILS to complete the task of running search terms across ArchiveOne at that rate will cost over $500,000.[3]

Recognizing both the cost and futility of searching in this manner, the Special Master has now proposed a procedure that promises to continue to be costly

_____
[3] ILS charged a little over $40,000 to run 54 search terms.  Taking $40,000 and multiplying it by 12.5 (which is the product of 679 divided by 54) equals $502,962.96.

*and* that courts have recognized are the marks of data that is unavailable.  In terms of cost, although the Special Master has not placed a price tag on the cost of lifting custodial data wholesale and then transferring it to another location so that Mattel's 700 plus searches can be run, MGA offered evidence of the cost of such a procedure.  MGA attempted to extract from ArchiveOne the data for one custodian. That custodian has associated with him 2 gigabytes of information which is only .2% of the total information contained on Archive One's database repositories. 12/11/09 Rubin Decl. ¶¶ 16-17.  After approximately 10 hours of effort to extract the 2 gigabytes of information the process failed.  *Id.*  This means countless hours of extraction without taking into account the time necessary for transporting the data to another platform for review and then the running of Mattel's more than 650 search terms.

Moreover, the process envisioned by the Special Master is just the type of process that courts rely on when concluding that information is inaccessible.  Back up tapes are considered inaccessible precisely because the data must be recovered "to the point of being able to search them."  And court have relied on that fact plus the fact that the data must be moved to a different platform in order to then be searched in making the determination that back up tapes are inaccessible.  *See, e.g.*, *Helmert v. Butterball, LLC*, 2010 WL 2179180 * 8 (E.D. Ark. May 27, 2010).  All of these facts compel a finding of inaccessibility.  *Id*; *Major Tours, Inc.*, 2009 WL 3556761; *Zubulake*, 217 F.R.D. at 319 (noting that data on a backup tape must be restored prior to search); *OpenTV*, 219 F.R.D. at 477 (requiring an extraction process from databases that taken 125-150 hours to complete renders data inaccessible);  *see also W.E. Aubuchon Co.*, 245 F.R.D. at 42-43 (finding that the lack of adequate means of searching database rendered inaccessible); 19 No. 2 INTELL. PROP. & TECH. L.J. 13, 14 (Feb. 2007) ("Whether ESI is reasonably accessible will depend on the cost and burden of producing the information, which typically will be driven by the extent to which such data must be restored,

converted, or otherwise manipulated electronically before it can be reviewed or analyzed.").

## II.   THERE IS NO GOOD CAUSE TO ALLOW A SEARCH OF ARCHIVEONE.

Finally, there has been no finding, and Mattel has not met its burden of showing, that good cause exists to require a search of ArchiveOne.  In considering whether good cause exists, a court must consider whether the party, in this case Mattel, requesting the discovery can establish: 1) the specificity of the discovery requests, 2) the quantity of information available from other and more easily accessed sources, 3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources, 4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources, 5) predictions as to the importance and usefulness of the further information; 6) the importance of the issues at stake in the litigation, and 7) the parties' resources.  Fed. R. Civ. P. 26(b)(2)(C); Advisory Committee Notes that accompanied the enactment of Rule 26(b)(2)(B); *Major Tours, Inc.*, 2009 WL 3446761 * 2-3.

Here, Mattel made no showing of good cause—indeed, Mattel has made no attempt at such a showing.  And, the Special Master made no such finding.  Nor would such a finding be warranted.

First, in terms of specificity, the search terms provided by Mattel that the Special Master has run cannot be considered specific.  For example, Mattel has requested—and the Special Master has agreed—to run search terms like "Brawer and before 10/31/2005," "Cooney and before 5/31/2007," and "Machado and before 4/30/2005."  Notice of Lodging Exhibit F (5/8/10 Report and Recommendation) Exhibit A at 20-21, 23.  These search terms will pull every single e-mail that Ron Brawer, Dan Cooney and Gustavo Machado received or sent up to one year after they began their employment at MGA.  Without regard to topic, without regard to

subject matter, if their name appears on an e-mail, the search terms will pull up e-mails.  As already briefed before this Court, these types of searches are overbroad, and this Court has rejected such broad discovery, including and specifically a similar request regarding Gustavo Machado.  *See* Dkt. No. 8358 at 6 (Reply ISO Obj. to Item No. 3 of July 5, 2010 Report and Recommendation); Dkt. No. 8079 (June 7, 2010 Order) at 16; Dkt. No. 8133 (June 18, 2010 Order) at 7.

To provide other examples, Mattel's search terms are assured (and were drafted to assure) that privilege communications will be gathered.  Mattel has requested, and the Special Master approved search terms such as "Larian and (enjoin* or injunct* or verdict)," "Bratz and Mattel," and "Receiver."  Notice of Lodging Exhibit F (5/8/10 Report and Recommendation) Exhibit B at 42-43. Because this case involved an injunction and verdict and because Mr. Larian is a central figure at MGA, a search term like "Larian and (enjoin* or injunct* or verdict)" is bound to pick up e-mails that Mr. Larian wrote to his lawyers.  After all, all that is required is that Mr. Larian pen an e-mail and state in it that he needed advice about the verdict.  The same holds true of a search term like "Bratz and Mattel" or "Receiver," all of which are terms one would expect to see in e-mails because this case involved Bratz and Mattel and there was a Receiver appointed.

Second, in terms of all the factors except for the last one, MGA has established, and neither Mattel nor the Special Master have contested the fact, that Mattel has the documents and has the ability to obtain specific documents on ArchiveOne should there be a need.  In this regard, MGA has affirmatively shown that merely because one e-mail has been sent to ArchiveOne does not mean that all of the same e-mail have been sent to ArchiveOne.  Indeed, MGA has affirmatively established that when Mattel first raised the issue, it attached six emails to its motion to compel that it referenced as samples of incomplete email strings.  Dkt. No. 7182, 7269 (11/09/09 Searcy Decl.).  MGA searched the database of previously produced documents for those six emails, and found that four of the six had been

previously produced by MGA with complete email strings attached.  Dkt No. 7242 ¶ 8 Exs. E-H.  Mattel has yet to dispute this fact.

Similarly, MGA further established that its production to Mattel contains complete e-mails for many duplicates that were truncated when archived.  *See* Notice of Lodging Exhibit E (1/11/10 Parker Decl.) ¶¶ 5-7, Exhibits 3-8.

Thus, MGA has affirmatively shown that there are full documents produced to Mattel even if they also reside in ArchiveOne's databases.  Moreover, to the extent there are some documents that have been produced that are partially archived, there is a means of knowing—from the document produced—the merit and importance of a document.  And MGA has agreed upon request for relevant documents to locate those specific documents if warranted.

Nor, in fact, has Mattel made any showing of what it hopes to find that it does not already have.  In fact, it has said nothing about this at all.  It has instead simply requested, and the Special Master has acceded, that ArchiveOne be searched.

Mattel's request that ArchiveOne be searched, in light of the above, does not do it.  It is not enough.  *See, e.g.*, *Helmert*, 2010 WL 2179180 * 8 (refusing to find good cause when documents have been produced, there was no showing that additional relevant information will be obtained, and even though requested information might also contain e-mails of former employees); *Major Tours, Inc.*, 2009 WL 3446761 * 3 (refusing to order search of backup tapes although there was "of course, a possibility that some of the requested e-mail contain 'smoking gun' information.  However, that is pure conjecture.").

As to the seventh factor, there is the parties' resources.[4]  This Court has already knows that Mattel's motive is to litigate MGA to death.  It already knows that Mattel has far more resources than MGA to continue this battle.  And this is

---

[4] As to the sixth issue, the importance of the issues, courts consider whether the issues raise "global concerns" and are not "real and substantial vis a vis the parties." *W.E. Auchon Co., Inc.*, 245 F.R.D. at 44.

1   just one more instance of that fact.   This has now become a situation warned

2   against by *Regan-Touhy v. Walgreen Co.* 526 F.3d 641, 649 (10th Cir. 2008),

3   where "collateral discovery disputes . . . displace trial on the merits as the primary

4   focus of the parties' attention."

5          Finally, MGA fully expects that Mattel will respond to this Objection by

6   claiming that MGA must be held at fault for e-mails being sent to ArchiveOne and

7   that that is good cause enough to require MGA to search ArchiveOne.   However,

8   ArchiveOne was implemented for the purpose of reducing the volume of e-mail

9   data on MGA's Exchange server.   Notice of Lodging Exhibit D (2d Supp'l Rubin

10  Decl.) ¶ 3.   And, as reflected in the Report and Recommendation of January 21,

11  2010, adopted by this Court, Dkt. No. 7636, the publishers of ArchiveOne

12  "represented [it] to be fully searchable and not subject to the limitations identified

13  by MGA." *Id.* at 4.

14         Moreover, as reflected in the Special Master's Report and Recommendation

15  of July 19, 2010, this representation does not hold in practice.   Just as MGA

16  established, "because of the internal limitation of the ArchiveOne database,"

17  retrieving e-mails requires substantial time and requires significant expense."   July

18  19 R&R 2:2-5.

19         Under such circumstances, a finding of good cause is not warranted.   There

20  has been no finding—and one would not be warranted—that MGA has

21  purposefully removed data in order to render it inaccessible.   Indeed, the undisputed

22  evidence is that MGA did not and there is no contrary finding.   And courts faced

23  with similar circumstances have not concluded that a finding of good cause is

24  thereby warranted.   Instead, the rules continue to require that a court consider all

25  the factors set forth above because the rules do not impose "a bright line

26  requirement of production, no matter how burdensome, how likely to succeed, or

27  how necessary to the litigation, if a party fails to adequately preserve every byte of

28

previously accessible data." *Major Tours, Inc. v. Colorel*, 2010 WL 2557250 (D.N.J. June 22, 2010).[5]

## III.   IF SEARCHING OF ARCHIVEONE IS ALLOWED TO CONTINUE, COST-SHIFTING IS APPROPRIATE.

If this Court affirms the decision of the Special Master, cost-shifting is appropriate.[6] *Zubulake* provides seven factors that must be considered.  The first two factors require the Court to consider: "(1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources." *Zubulake*, 217 F.R.D. at 323.  Factors three to six address cost considerations: "How expensive will this production be?" and, "Who can handle that expense?" (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so." *Id.*  The sixth factor, the impact of the litigation has the potential to predominate, but will rarely arise: "(6) the importance of the issues at stake in the litigation[.]"  *Id.*  And the seventh factor asks the Court to consider who will benefit from the production.  *Id.*

The first two factors are the most important, because the more likely that ESI contains information relevant to a claim or defense, the fairer it is for the responding party to search at its own expense.  *Id.*  Lastly, the seventh factor, the relative benefits to the parties, is the least important because it is safe to assume that a request for discovery will benefit the requesting party.  *Id.*

Based on these factors, shifting the cost to Mattel of any search of ArchiveOne is appropriate.  As already established—and as relates to the two most

---

[5] *Major Tours, Inc*. uses the term "spoliation."  There has been no finding here, however, that MGA has spoliated evidence.
[6] Although MGA addresses the issue of cost-shifting, and even if Mattel is willing to foot the bill, if this Court concludes that there is no good cause, it need not reach this issue. *See Cognex Corp. v. Electro Scientific Indus., Inc.*, 2002 WL 32309413 * 3-4 (D. Mass July 2, 2002) (although requesting party offered to pay for review of backup tapes, court rejected demand that backup tapes be searched).

important factors—the search terms are not narrowly tailored and Mattel has the information available to it from other sources.  Moreover, in terms of cost, Mattel is the far larger party to this action, and it would have an incentive to control costs, an incentive it presently has not at all.  In fact, and as reflected in prior filings, Mattel's incentive—and its strategy—is not to control costs; its incentive and strategy is to ensure that costs run as high as possible.  Under such circumstances, cost-shifting is appropriate.  Here, the factors are not weighed evenly and are in MGA's favor. Cost-shifting is appropriate.  *See also Laethem Equip. Co. v. Deere & Co.*, 261 F.R.F. 127, 146 (E.D. Mich. 2009) (shifting costs based on extensive discovery already provided and conclusion that the parties "broadened their demands for ESI to include not only information that they believe is valuable" but information "whose primary utility would be found in the burden and cost of production to the other side"); *Wiley v. Paulson*, 2007 WL 7059722 * 2-3 (E.D.N.Y. Sept. 26, 2007) (shifting costs); *OpenTV*, 219 F.R.D. at 479 (noting that cost-shifting standards are not to be woodenly applied and ordering splitting of costs when factors weighed evenly); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 289 (S.D.N.Y. 2003) (shifting costs in part although "some of the factors cut against cost-shifting").

## IV.   IF THIS COURT REQUIRES ADDITIONAL PROOF, IT SHOULD ORDER A RULE 706 REPORT.

Finally, although the evidence of ArchiveOne's inaccessibility is ample, should this Court continue to have concerns, it should order a Rule 706 report concerning ArchiveOne regarding the nature and results of their efforts to search ArchiveOne to date, including the investigation of the capabilities of the ArchiveOne system both directly at MGA and with the vendor of the software, and whether the performance of the software is consistent with the vendor's representations made in the software manuals.  At the time such report is submitted, MGA will then seek to cross-examine ILS, if necessary.

1

## <u>CONCLUSION</u>

For the foregoing reasons, MGA asks that this Court overrule the Report and Recommendation of July 19, 2010.  If this Court does not overrule the Report and Recommendation, cost-shifting should be ordered.

Respectfully submitted,

Dated:    July 29, 2010            ORRICK, HERRINGTON & SUTCLIFFE LLP


                                   By:   _/s/ Warrington S. Parker III_____
                                         Warrington S. Parker III
                                         Attorneys for MGA Parties