1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2  John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11               SOUTHERN DIVISION

| | |
|---|---|
| 12  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-02727 |
| 14                Plaintiff, | Hon. David O. Carter |
| 15        vs. | **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES TO MATTEL'S THIRD SET OF INTERROGATORIES TO THE MGA PARTIES (PHASE 2)** |
| 17  MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| 19                Defendant. | |
| 20  AND CONSOLIDATED ACTIONS | Hearing Date:      TBD Time:               TBD Place:              TBD |
| 22 | **Phase 2** |
| 23 | Discovery Cutoff:        TBD Pre-trial Conference:  TBD Trial:                     TBD |
| 25 | |
| 26 | **PUBLIC REDACTED VERSION** |

27

28

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that, on a date and at a time to be determined by

3    the Court, before the Honorable David O. Carter, plaintiff Mattel, Inc. ("Mattel")

4    will, and hereby does, move the Court, pursuant to <u>Federal Rules of Civil Procedure</u>

5    26, 33, 34 and 37 to compel the MGA Parties to answer fully and completely

6    Interrogatory Nos. 1-7 and 10-18 of Mattel's Third Set of Interrogatories to the

7    MGA Parties (Phase 2), dated April 8, 2010.

8        This Motion is made on the grounds that the interrogatories seek relevant,

9    discoverable information, which MGA has no proper basis to withhold.

10       This Motion is based on this Notice of Motion, the accompanying

11   Memorandum of Points and Authorities, the records and files of this Court, any

12   matters of which the Court may take judicial notice, and such further evidence and

13   argument as may be presented at or before the hearing on this matter.

14   **<u>Certification Pursuant to Rule 37-1 and the Court's Order (Dkt. No. 8085)</u>**

15       On July 8, 2010 and July 27, 2010, lead counsel for Mattel and MGA met

16   and conferred regarding the interrogatories addressed herein, but were unable to

17   resolve the matter.  These meet and confer conferences were in further to Mattel's

18   prior attempts to meet and confer on May 13, 2010, and other times.

19

20   DATED: July 29, 2010         QUINN EMANUEL URQUHART &
                                   SULLIVAN. LLP
21

22                               By /s/ Michael T. Zeller
23                                  Michael T. Zeller
                                    Attorneys for Mattel. Inc.
24

25

26

27

28

1

# **TABLE OF CONTENTS**

2                                                                                      **Page**

3

4   PRELIMINARY STATEMENT...............................................................................1

5   BACKGROUND......................................................................................................2

6   ARGUMENT ...........................................................................................................7

7   I.    MATTEL'S THIRD SET OF INTERROGATORIES ARE
      RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES AND
8     TO THE PARTIES' DAMAGES ....................................................................7

9         A.    Interrogatories Seeking Product Line and Financial Information
            Are Relevant........................................................................................7
10
          B.    Interrogatories Related to Net Worth are Relevant................................9
11
          C.    Interrogatories Related to MGA's Smuggling Are Relevant.............. 11
12
    II.   MGA WAIVED ANY OBJECTIONS TO THE THIRD SET OF
13      INTERROGATORIES ................................................................................. 13

14  III.  EVEN IF NOT WAIVED, THE COURT SHOULD OVERRULE
      MGA'S BOILERPLATE OBJECTIONS ...................................................... 17
15
    CONCLUSION ...................................................................................................... 18
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

### Cases

A.C. Aukerman Co. v. R.L. Chaides Const. Co.,
  1993 WL 379548 (N.D. Cal. Sept. 13, 1993) .......................................................13

In re Aetna Inc. Sec. Litig.,
  1999 WL 354527 (E.D. Pa. May 26, 1999) .........................................................12

Davis v. Fendler,
  650 F.2d 1154 (9th Cir. 1981) .............................................................................13

Deghand v. Wal-Mart Stores, Inc.,
  904 F. Supp. 1218 (D. Kan. 1995) .......................................................................17

Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.,
  2006 WL 3257482 (E.D. Cal. Nov. 9, 2006) .......................................................14

Kaur v. Alameida,
  2007 WL 1449723 (E.D. Cal. May 15, 2007) ......................................................14

In re Kirkland,
  86 F.3d 172 (10th Cir. 1996) ........................................................................15, 16

Liew v. Breen,
  640 F.2d 1046 (9th Cir. 1981) .............................................................................12

McGeorge v. Van Benschoten,
  1988 WL 163063 (D. Ariz. Dec. 8, 1988) ...........................................................13

Mfr.'s Fin. Co. v. McKey,
  294 U.S. 442 (1935) .............................................................................................13

Miller v. Ventro Corp.,
  2004 WL 868202 (N.D. Cal. Apr. 21, 2004) .......................................................12

Mission Capital Works, Inc. v. SC Rests., Inc.,
  2009 WL 4895315 (S.D. Cal. Dec. 10, 2009) ...............................................13, 14

Ramirez v. County of L.A.,
  231 F.R.D. 407 (C.D. Cal. 2005) .........................................................................14

Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,
  2008 WL 6873811 (C.D. Cal. Jan. 3, 2008) ........................................................13

Richmark Corp. v. Timber Falling Consultants,
  959 F.2d 1468 (9th Cir. 1992) .......................................................................13, 14

Safeco Ins. Co. of Am. v. Rawstrom,
    183 F.R.D. 668 (C.D. Cal. 1998)..................................................................14

Starlight Int'l v. Herlihy,
    181 F.R.D. 494 (D. Kan. 1998).............................................................15, 17

In re Theragenics Corp. Sec. Litig.,
    205 F.R.D. 631 ..........................................................................................12

United States ex rel. Excelsior Elevator, Inc. v. Constr. Concepts, Inc.,
    2006 WL 2468742 (E.D. Cal. Aug. 23, 2006).........................................14

## Statutes

Cal. Bus. Code § 17200.....................................................................................12

Cal. Civ. Code § 3294 .........................................................................................9

Fed. R. Civ. P. 33(b)(2).......................................................................................2

Fed R. Civ. P. 33(b)(4)................................................................................14, 15

Fed. R. Civ. P. 37(d)(2)......................................................................................14

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

3      Despite waiving all objections under plain Ninth Circuit law by its failure to
4 timely respond to Mattel's Third Set of Interrogatories (Phase 2), MGA continues to
5 refuse to provide *any* substantive answers to all but two of the interrogatories. Mattel
6 has given MGA every opportunity to provide substantive responses in order to avoid
7 unnecessary motion practice, but MGA continues to stand on its improper boilerplate
8 objections.

9      The requested information is indisputably relevant. The interrogatories seek
10 financial information and product offerings related to Bratz, Moxie, and MGA's
11 other fashion dolls—all information plainly put at issue by Mattel's claims as well as
12 MGA's own unfair competition claims and unclean hands defense. The
13 interrogatories are also directly pertinent to both parties' damages calculations. For
14 example, Interrogatory No. 11, which MGA refuses to substantively answer, asks
15 MGA to identify its Bratz product line offerings since 2004. Interrogatory No. 3 asks
16 for MGA's total investments (a specifically defined term to avoid any ambiguity) in
17 Bratz, on a yearly basis since 2001. MGA's refusal to provide such obviously
18 relevant information is frivolous. Indeed, MGA has insisted upon and received
19 detailed research and financial information on literally every Mattel girls' product
20 line and to this day seeks even more information about Mattel products that are not
21 even the subject of actual claims or defenses. Nevertheless, MGA flatly refuses to
22 provide even basic information about products that are explicitly the subject of the
23 parties' claims, including MGA's own.

24      The other topics covered in these interrogatories are also relevant: net worth
25 and MGA's smuggling of products into Mexico. The Court has previously ruled net
26 worth is relevant, and MGA provides no legitimate basis for refusing to state its net
27 worth as requested. Request Nos. 16-18 deal with ████████████████

28 ████████████████████████████████████████



MGA waived any objections to these interrogatories, but continues to shirk its discovery obligations under the <u>Federal Rules of Civil Procedure</u>. MGA should be compelled to respond without objection to Request Nos. 1-7 and 10-18 of Mattel's Third Set of Interrogatories by a date certain.

**Background**

<u>Mattel's Third Set of Interrogatories to the MGA Parties (Phase 2)</u>. Mattel served its Third Set of Interrogatories to the MGA Parties (Phase 2) on April 8, 2010.[1]   For the Court's convenience, the full text of the interrogatories from the Third Set at issue on this motion are reproduced herein.

MGA's 30-day deadline under <u>Rule</u> 33(b)(2) to respond to these interrogatories expired on May 10, 2010.[2]   After MGA missed the deadline to respond, Mattel sent MGA an email on May 13, 2010, notifying MGA of its failure to respond by the deadline.[3]   Knowing it had already missed the deadline, MGA provided a response consisting solely of boilerplate objections later on May 13, 2010.[4]   Mattel followed up with a letter on May 18, 2010, requesting to meet and

---

[1]   Mattel, Inc.'s Third Set of Interrogatories to the MGA Parties (Phase 2), dated Apr. 8, 2010.
[2]   <u>Fed. R. Civ. P.</u> 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories.").
[3]   <u>See</u> Email from S. Watson to A. Hurst, et al., dated May 13, 2010.
[4]   Response of MGA Parties to Mattel, Inc.'s Third Set of Interrogatories (Phase 2), dated May 13, 2010.

1  confer concerning MGA's failure to provide any substantive responses,[5] but MGA
2  never responded to that request.  Mattel sent an additional meet and confer letter on
3  June 4, 2010, but MGA never responded to that letter either.[6]  After further Mattel
4  follow-up and pursuant to the Court's Order, lead counsel for Mattel and MGA met
5  and conferred on MGA's deficient responses on July 27, 2010, but were unable to
6  reach a resolution.    Although MGA agreed to supplement its responses to
7  Interrogatory Nos. 8 and 9,[7] MGA stood by its wholesale refusal to provide any
8  substantive response to the other sixteen interrogatories.

9       The Interrogatories Seek Information Relevant to the Parties' Claims and
10 Defenses.  The Third Set consists of eighteen interrogatories relating to, *inter alia*,
11 Mattel's RICO claims, and its claims for unfair competition and trade secret theft, as
12 well as to MGA's unfair competition claims and Mattel's defenses thereto, and the
13 parties' claims for damages.  The bulk of the interrogatories in the Third Set seek
14 straight forward numerical information relevant to the parties' claims and potential
15 damages. Specifically:

16     INTERROGATORY NO. 1:

17     IDENTIFY any claimed or actual security interests in or relating to BRATZ
18     intellectual property.[8]

19     INTERROGATORY NO. 2:

20     IDENTIFY, for each month from January 1, 2001 to the present, the dollar
21     amount of YOUR INVESTMENTS in BRATZ.[9]

22

23    [5] See Letter from S. Watson to W. Parker, dated May 18, 2010.
24    [6] See Letter from D. Proctor to W. Parker, dated June 4, 2010.
   [7] Mattel has not received these supplemental responses, and reserves its right to
25 move to compel as to those requests should MGA's responses remain deficient.
   [8] Mattel, Inc.'s Third Set of Interrogatories to the MGA Parties (Phase 2), dated
26 Apr. 8, 2010, at 8.
   [9] Id.  The Set defines "INVESTMENTS" as "any and all expenditures made by
27 YOU or on YOUR behalf to develop, produce, ADVERTISE or promote a product,
28    (footnote continued)

00505.07975/3607899.1

1    INTERROGATORY NO. 3:

2    IDENTIFY, for each year since 2001, the dollar amount of YOUR

3    INVESTMENTS in BRATZ.[10]

4    INTERROGATORY NO. 4:

5    IDENTIFY, for each month from January 1, 2008 to the present, the dollar

6    amount of YOUR INVESTMENTS in MOXIE GIRLZ.[11]

7    INTERROGATORY NO. 5:

8    IDENTIFY, for each year since 2008, the dollar amount of YOUR

9    INVESTMENTS in MOXIE GIRLZ.[12]

10    INTERROGATORY NO. 6:

11    IDENTIFY, for each month from January 1, 2001 to the present, the dollar

12    amounts of YOUR INVESTMENTS in OTHER FASHION DOLLS.[13]

13    INTERROGATORY NO. 7:

14    IDENTIFY, for each year since 2001, the dollar amounts of YOUR

15    INVESTMENTS in OTHER FASHION DOLLS.[14]

16    INTERROGATORY NO. 12:

17    State, on a yearly basis, the total number of YOUR employees who performed

18    any work RELATED TO BRATZ in 2004 and each year since then.[15]

19

20    line, or brand, including but not limited to expenditures for ADVERTISING; retail

21    promotional incentives or in store promotional incentives; white space support;

22    other promotional incentives; consumer research and/or focus groups; product

23    design; testing and pilot runs; and any other costs associated with or incurred in

     connection with the development, production or promotion of a particular product,

24    line or brand. For purposes of these Interrogatories, INVESTMENTS do not

     include costs of goods sold." Id. at 4.

25    [10]   Id. at 9.

     [11]   Id.

26    [12]   Id.

     [13]   Id.

27    [14]   Id.

28

1    INTERROGATORY NO. 13:

2    State, on a yearly basis, the total number of YOUR employees who performed

3    any work RELATED TO MOXIE GIRLZ in 2007 and each year since then.[16]

4    Other interrogatories in the Third Set seek even more basic information

5    seeking to identify the scope of the product lines at issue in this case.  Thus:

6    INTERROGATORY NO. 10:

7    List and describe, on a yearly basis, YOUR MOXIE GIRLZ product or

8    product line offerings for 2009 and each year since then (or, as to not yet

9    released seasons, YOUR contemplated or proposed product or product line

10    offerings).[17]

11    INTERROGATORY NO. 11:

12    List and describe, on a yearly basis, YOUR BRATZ product or product line

13    offerings for 2004 and each year since then (or, as to not yet released

14    seasons, YOUR contemplated or proposed product or product line

15    offerings).[18]

16    MGA has propounded and compelled far broader discovery requests related

17    to Mattel's product lines (and the product lines of its licensees), including requests

18    calling for all revenues, costs and investments in those product lines.[19]

19

20

---

[15]  Id. at 10.
[16]  Id.
[17]  Id.
[18]  Id.
[19]  See Discovery Master Order No. 56, at 43-44 [Dkt. No. 6591] (compelling "for each year from January 1, 1998 to the present," documents sufficient to show "the number of units . . . revenue received . . . all costs . . . and gross and net profits" for every Mattel product at issue in this case); Order Overruling in Part and Sustaining in Part Objections to Discovery Matter Order Nos. 89/91, dated May 25, 2010 [Dkt. No. 7961] (compelling Mattel to respond to Request No. 728, seeking documents sufficient to show "by product number or SKU, YOUR cost of goods sold, unit cost, and other costs for each MY SCENE PRODUCT sold by YOUR or YOUR licensees"); id. (compelling Request No. 727, seeking "the revenue received (footnote continued)

1    Two Mattel interrogatories seek information regarding MGA's net worth:

2    INTERROGATORY NO. 14:

3    State YOUR net worth as of June 30 and December 31 in 2007, and for each

4    year since then.[20]

5    INTERROGATORY NO. 15:

6    State YOUR net worth as of the present.[21]

7    The Court previously compelled MGA and Larian to produce "all non-

8    privileged documents referring or relating to their net worth,"[22] yet MGA refuses to

9    state its beliefs as to its own net worth as of the present time, or even specifically

10   identify the documents it has produced that it believes answer that question.

11   Finally, three interrogatories seek information related to ████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████

15   INTERROGATORY NO. 16:

16   IDENTIFY the "Laredo guy" referred to by Isaac Larian in the document

17   Bates-numbered MGA2 0327614-0327615.[24]

18   INTERROGATORY NO. 17:

19   IDENTIFY and describe in detail all YOUR COMMUNICATIONS with the

20   "Laredo guy" identified in response to Interrogatory No. 12.[25]

21   _____

22   by YOUR from the sale of each MY SCENE PRODUCT sold by YOUR or YOUR
     licensees").
23   [20] Mattel, Inc.'s Third Set of Interrogatories to the MGA Parties (Phase 2), dated
     Apr. 8, 2010, at 10.
24   [21] Id.
25   [22] Order Regarding Discovery Matters, dated January 26, 2010, at 3-4 [Dkt. No.
     7434].
26   [23] See MGA2 0327614-15.
27   [24] Mattel, Inc.'s Third Set of Interrogatories to the MGA Parties (Phase 2), dated
     Apr. 8, 2010, at 11.
28

1  INTERROGATORY NO. 18:

2  IDENTIFY and describe in detail all shipments from YOU to the "Laredo

3  guy" identified in response to Interrogatory No. 12, including but not limited

4  to the dates of such shipments, prices, and description of items shipped.[26]

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████████

9  **Argument**

10  I.   **MATTEL'S THIRD SET OF INTERROGATORIES ARE RELEVANT**

11  **TO THE PARTIES' CLAIMS AND DEFENSES AND TO THE**

12  **PARTIES' DAMAGES**

13  A.   **Interrogatories Seeking Product Line and Financial Information**

14  **Are Relevant**

15  Interrogatory Nos. 1-13 seek information about MGA's investments in the

16  Bratz product line, the Moxie product line, and MGA's other fashion doll lines.[28]

17  Such information is at the core of this litigation.   It is relevant to Mattel's

18  affirmative claims of ownership as to both the Bratz and Moxie lines, relevant to

19  both parties' damages calculations, and to Mattel's RICO allegations, including that

20

21  [25]  Id.

22  [26]  Id.

23  [27]  See Hearing Tr., dated Nov. 16, 2009, at 4:10-7:23 (compelling Mattel to identify all individuals it had paid in Mexico, among other information, in response to MGA's false allegations that Mattel had engaged in bribery in Mexico); see also

24  Hearing Tr., dated Sept. 22, 2009, at 64:8-70:11 (cross-examination of Mattel investigator concerning MGA's false allegations of bribery in Canada).

25  [28]  For example, Request No. 1 seeks "Documents sufficient to identify the total expenditures by [MGA] on advertising for Bratz for each year (or partial year) from

26  2003 to the present."  Request Nos. 4 and 7 seek identical information as to Little Tykes and Moxie Girlz, respectively.  Other requests seek documents showing

27  similar expenditures on market research, production costs, and documents related to the allocation of resources among those product lines.

28

1 | MGA, Larian, and certain others intentionally harmed and devalued the Bratz brand
2 | in violation of Mattel's rights and for the purpose of obstructing these proceedings.[29]
3 | Many of the interrogatories merely seek straightforward identification of the
4 | products in each product line, and numerical responses from MGA for such things
5 | as "dollar amounts" expended on Bratz, Moxie, and other relevant fashion doll
6 | products;[30] the "number of [MGA] employees" performing work on those brands;[31]
7 | and its net worth.[32]

8 | MGA itself has compelled far broader discovery from Mattel related to a vast
9 | array of Mattel products, far beyond the scope of anything MGA itself has
10 | produced. For example, Mattel has been compelled to provide information showing
11 | the number of units sold, the revenue received, the costs incurred, and the gross and
12 | net profits for every Mattel product at issue,[33] including documents and testimony

---

[29] See FAAC at 92-93 (Dkt. No. 7733).
[30] See, e.g., Interrogatory Nos. 3 ("IDENTIFY, for each year since 2001, the dollar amount YOUR INVESTMENTS in BRATZ."), 5 ("IDENTIFY, for each year since 2008, the dollar amount YOUR INVESTMENTS in MOXIE GIRLZ."), 7 ("IDENTIFY, for each year since 2001, the dollar amount YOUR INVESTMENTS in OTHER FASHION DOLLS.").
[31] See Interrogatory Nos. 12 ("State, on a yearly basis, the total number of YOUR employees who performed any work RELATED TO BRATZ in 2004 and each year since then."), 13 ("State, on a yearly basis, the total number of YOUR employees who performed any work RELATED TO MOXIE GIRLZ in 2007 and each year since then.").
[32] See Interrogatory Nos. 14 ("State YOUR net worth as of June 30 and December 31 in 2007, and for each year since then."), 15 ("State YOUR net worth as of the present.").
[33] See Discovery Matter Order No. 56, at 43-44 [Dkt. No. 6591] (██████████████████████████████████ ██████████████████████████████████); Order Overruling in Part and Sustaining in Part Objections to Discovery Matter Order Nos. 89/91, dated May 25, 2010 [Dkt. No. 7961] (compelling Mattel to respond to Request No. 728, seeking documents sufficient to show "by product number or SKU, YOUR cost of goods sold, unit cost, and other costs for each MY SCENE PRODUCT sold by YOUR or YOUR licensees"); id. (compelling Request No. 727, seeking "the revenue received by YOUR from the sale of each MY SCENE PRODUCT sold by YOUR or YOUR licensees").

1  on recently-released products as well.[34]   Here, of course, Mattel is only seeking
2  information regarding a narrow set of the most relevant products in the case: Bratz,
3  Moxie, and MGA fashion dolls.  There can be no dispute that discovery into those
4  product lines is relevant.

5      Nor do any documents produced thus far substitute for this information.
6  Unlike document requests, these interrogatories draw an important distinction by
7  seeking a binding response from MGA itself regarding the identity of the product
8  lines and the amounts MGA purports to have expended on the relevant brands over
9  the defined time period.  Mattel is entitled to binding responses from MGA on these
10  issues.

11      **B.    Interrogatories Related to Net Worth are Relevant**

12      The Court has already ordered the MGA Parties to "produce to Mattel all non-
13  privileged documents referring or relating to their net worth, including the net worth
14  of Isaac Larian, for any time period on or after January 1, 2007."[35]   These
15  interrogatories, which likewise seek information related to the MGA Parties' net
16  worth, are no less relevant.   As the Discovery Master has previously held,
17  information regarding net worth "relates to Phase 2 damages issues, including,
18  among other things, damages sought against Larian in connection with Mattel's
19  unfair competition cause of action as well as the calculation of Larian's net worth for
20  purposes of litigating the propriety of any 'exemplary damages under Cal. Civ. Code
21  § 3294.' It is therefore discoverable."[36]   The Discovery Master likewise found that
22  requests for documents related to MGA's net worth were relevant, holding that a
23  request for documents sufficient to calculate MGA's net worth were "reasonably

24

25  [34]  See Order Granting in Part and Denying in Part Mattel's Motion for
   Protective Order, dated July 19, 2010 [Dkt. No. 8318] (compelling Mattel to
26  produce research reports on its "Monster High" product line).
       [35]  Order Regarding Discovery Matters, dated January 26, 2010, at 3-4 [Dkt. No.
27  7434].
       [36]  Amended Order No. 11, at 7.
28

1 calculated to lead to discovery of admissible evidence" and bore "on Mattel's Phase
2 2 damages claims, including Mattel's claim for punitive damages."[37]    Indeed,
3 including the Court's January 26 Order, MGA and Larian have been compelled on at
4 least five occasions to comply with discovery related to net worth.[38]   Despite this,
5 MGA refuses to respond, or even point to documents it has purportedly produced
6 that would answer the questions posed.

7 　　　　Obtaining an answer from MGA concerning net worth is particularly
8 important in light of the games MGA played at the Phase 1 trial.   There, MGA
9 successfully delayed in providing net worth information until mid-trial, then claimed
10 that, as a result of the trial, Larian and MGA's net worth was *impossible* to
11 determine,[39] thus preventing the jury from hearing evidence pertinent to the punitive
12 damages questions before them.   And, unknown to Mattel and the Court at the time,
13 MGA had actually suppressed directly relevant net worth documents that
14 contradicted its mid-trial contentions, in defiance of the Court's Order to produce
15 precisely such documents.[40]    Binding interrogatory responses will prevent MGA
16
17

---

18 [37] Id. at 8.
   [38] Id. at 38 (compelling a net worth document request propounded on Larian
19 and a net worth document request propounded on MGA); See Order Regarding
   Discovery Matters, dated January 26, 2010, at 3-4 (Dkt. No. 7434); Order Granting
20 Mattel, Inc.'s Motion to Compel Production of Documents by MGA Entertainment,
   Inc., dated Dec. 28, 2007, at 1 (compelling as to MGA); Order Granting In Part and
21 Denying In Part Mattel's Motion to Compel Production of Documents by Isaac
   Larian, dated Dec. 31, 2007, at 15-16 (compelling as to Larian and finding net worth
22 "relevant to damages").
   [39] See Trial Tr., dated Aug. 15, 2008, at 7781:6-7783:19.
23 [40] For example, former Senior Vice President of Finance Brian Wing produced
   a report earlier this year that was prepared by Moss Adams entitled "The Valuation
24 of MGA Entertainment as of June 30, 2008," which MGA had never produced. See
25 WING0014800-906. Mr. Wing testified ███████████████████████████

26 See Deposition of Brian Wing Tr., dated Feb. 19, 2010, at 809:3-14.  Similarly, John
27 Woolard, MGA's former head of accounting and interim CFO, testified ████████████,

28 　　(footnote continued)

1  from again distorting the facts at trial concerning its net worth.  And in any event,
2  the discovery is indisputably relevant at this stage; there is no excuse for MGA's
3  refusal to respond.

4      **C.    Interrogatories Related to MGA's Smuggling Are Relevant**

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████  and Interrogatory Nos. 16-18 seeks

12 that   additional   information, ████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████   These interrogatories are relevant to, among other things, Mattel's

15 unfair competition claim,[43] Mattel's unclean hands affirmative defense,[44] and MGA's

16 unclean hands affirmative defense.[45] ████████████████████████

17 ████████████████████████████  is also relevant to MGA and Larian's

18 spoliation and concealment of evidence, including in particular that such actions by

19 Larian were no accident, but deliberately intended to suppress facts.  Indeed, given

20 ────────────────────

21 neither of which was produced to Mattel.  See Deposition of John Woolard Tr.,
22 dated Jan. 8, 2010, at 494:4-503:22.

   [41]  See MGA2 0327614-15.
   [42]  When questioned about the email instructions at his deposition, Larian
23 responded, "████████████████████████████████████████████

24 ████" Deposition Tr. of Isaac Larian, dated Dec. 10, 2009, at 653:25-654:3.
   [43]  See FAAC, at 86 (Dkt. No. 7733).
25 [44]  See id. at 24.
26 [45]  See MGA's Supplemental Response to Mattel, Inc.'s Second Amended
   Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated
27 Nov. 30, 2009, at 7-34; MGA Parties' Answer and Affirmative Defenses to Mattel,
   Inc.'s Third Amended Answer and Counterclaims, dated June 29, 2009, at 21-23.
28

1  that MGA intends to argue centrally in this case that the absence of direct
2  documentary proof of MGA's thefts and other wrongdoing means that it did not
3  happen, MGA's practice and efforts to avoid documenting activities it knows were
4  illegal is highly relevant to rebutting MGA's own arguments in this litigation.
5  Furthermore, it is well settled that discovery seeking the identity of potential
6  witnesses (here, Larian's "Loredo guy") is proper. See Liew v. Breen, 640 F.2d
7  1046, 1048-49 (9th Cir. 1981) (affirming trial court's ruling that the identities of an
8  attorney's clients were relevant and discoverable because, *inter alia*, they were
9  potential witnesses at trial); Miller v. Ventro Corp., 2004 WL 868202, at *1-2 (N.D.
10 Cal. Apr. 21, 2004) (compelling interrogatory seeking the identification of
11 confidential witnesses); In re Aetna Inc. Sec. Litig., 1999 WL 354527, at *1-2 (E.D.
12 Pa. May 26, 1999) (compelling interrogatories seeking identification of witnesses);
13 In re Theragenics Corp. Sec. Litig., 205 F.R.D. 631. 635 (N.D. Ga. 2002)
14 (compelling interrogatory seeking "the identity of 'occurrence witnesses' which are
15 discoverable at any time").

16     MGA's smuggling is also substantively relevant.   Section 17200 of the
17 California Business and Professions Code prohibits unfair competition, including
18 "any unlawful, unfair or fraudulent business act or practice. . . ."[46]  Smuggling goods
19 into a foreign market in lieu of obtaining the proper licenses and paying the
20 appropriate duty on the goods is an "unlawful, unfair [and] fraudulent business act
21 or practice" that allows MGA to unfairly compete in the Mexican market.
22 Therefore, this information is relevant to Mattel's unfair competition claims.[47]  In
23 addition, this practice, as evidenced by the underlying email, is an example of the
24 type of claim-barring conduct MGA has engaged in that supports Mattel's unclean

25
26
————————————————————
27   [46] Cal. Bus. Code § 17200.
28   [47] See FAAC, at 86 (Dkt. No. 7733).

Case 2:04-cv-09049-DOC-RNB   Document 8408   Filed 07/29/10   Page 18 of 23   Page ID #:268197

hands affirmative defense against MGA's own claims.[48]  These interrogatories are also relevant to showing MGA itself engaged in conduct more egregious than alleged in MGA's unclean hands affirmative defense, which includes "other acts of unfair competition"[49] and "tortious, illegal and unethical behavior. . . ." that can defeat MGA's defense.[50]

## II.   MGA WAIVED ANY OBJECTIONS TO THE THIRD SET OF INTERROGATORIES

MGA is barred from asserting any objections to the interrogatories.  "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."   Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) (finding waiver where the party "did not object within the time required by the Federal Rules"); Mission Capital Works, Inc. v. SC Rests., Inc., 2009 WL 4895315, at *3 (S.D. Cal. Dec. 10, 2009) (same) (quoting id.); see also Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) (affirming district court's waiver finding and confirming that "in the absence of an extension of time or good cause, the failure to object to interrogatories within the time fixed by Rule 33, FRCivP, constitutes a waiver of any objection").

---

[48]  See id. at 24.
[49]  MGA Parties' Answer and Affirmative Defenses to Mattel, Inc.'s Third Amended Answer and Counterclaims, dated June 29, 2009, at 21.
[50]  MGA's Complaint, dated Apr. 13, 2005, at 30-31 (allegations incorporated by reference in MGA's "Unclean Hands" affirmative defense).  "Moreover, '[one] who seeks equity must do equity.'" Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 2008 WL 6873811, at *9 (C.D. Cal. Jan. 3, 2008) (quoting Mfr.'s Fin. Co. v. McKey, 294 U.S. 442, 449 (1935)) (finding defendant did not establish its equitable affirmative defense because it sought equity with unclean hands); A.C. Aukerman Co. v. R.L. Chaides Const. Co., 1993 WL 379548, at *5-6 (N.D. Cal. Sept. 13, 1993) (precluding three affirmative defenses based on the defendant's unclean hands and holding that "[a]n age old maxim of equity applies here: 'He who seeks equity must do equity'"); McGeorge v. Van Benschoten, 1988 WL 163063, at *6-7, *10 n.10 (D. Ariz. Dec. 8, 1988) ("[E]quitable defenses would be subject to the 'unclean hands' doctrine; 'he who wants equity, must do equity.' . . . So, even if the elements of these affirmative defenses happened to be satisfied, they still should not bar Mrs. McGeorge's suit.").

00505.07975/3607899.1

-13-

MATTEL. INC.'S MOTION TO COMPEL INTERROGATORY RESPONSES

1    This waiver principle specifically applies to interrogatories. <u>See</u> <u>id.</u>; <u>see also</u>
2 <u>Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.</u>, 2006 WL 3257482, at *1-2
3 (E.D. Cal. Nov. 9, 2006) ("Untimely responses waive objections to interrogatories. .
4 . . Either objections are timely and made in the proper format, or they are not.");
5 <u>Kaur v. Alameida</u>, 2007 WL 1449723, at *2 (E.D. Cal. May 15, 2007). In fact, <u>Rule</u>
6 33 recites this very principle: "Any ground not stated in a timely objection is waived
7 unless the court, for good cause, excuses the failure." <u>Fed R. Civ. P.</u> 33(b)(4).

8    Further, waiver applies equally whether the party eventually raises objections
9 in an untimely response or if the party fails to respond to the interrogatories at all.
10 <u>Safeco Ins. Co. of Am. v. Rawstrom</u>, 183 F.R.D. 668, 671-72 (C.D. Cal. 1998)
11 (finding waiver and holding that "the better rule is that interrogatory objections not
12 included in a timely response are waived even if the objections are contained in a
13 later untimely response"); <u>Ramirez v. County of L.A.</u>, 231 F.R.D. 407, 409-10 (C.D.
14 Cal. 2005) (failure to "file *timely* objections to [discovery] requests . . . constitutes a
15 waiver of any objections which a party might have to the requests.  Therefore, the
16 court will not consider any objections that were not asserted in the responding
17 party's original discovery requests.") (emphasis and modification in original)
18 (citations and quotation omitted).

19    MGA's failure to serve timely objections resulted in a waiver of objections.
20 <u>See</u>, <u>e.g.</u>, <u>Richmark</u>, 959 F.2d at 1473; <u>Fed R. Civ. P.</u> 33(b)(4). Accordingly, Mattel
21 "is entitled to complete, straight-forward answers without objections, to the
22 interrogatories." <u>United States ex rel. Excelsior Elevator, Inc. v. Constr. Concepts,</u>
23 <u>Inc.</u>, 2006 WL 2468742, at *2 (E.D. Cal. Aug. 23, 2006). The Court should compel
24 MGA to provide "responsive and complete" responses to Mattel's Third Set of
25 Interrogatories "without objection." <u>Safeco</u>, 183 F.R.D. at 672; <u>Mission Capital</u>
26 <u>Works, Inc.</u>, 2009 WL 4895315, at *4. Indeed, even if objections are meritorious,
27 failure to state the objections within the time required under the <u>Rules</u> waives the
28 objections.  <u>See</u> <u>Safeco</u>, 183 F.R.D. at 669; <u>Fed. R. Civ. P.</u> 37(d)(2) (failing to

1  respond to interrogatories within the time prescribed under Rule 33 "is not excused
2  on the ground that the discovery sought was objectionable, unless the party failing to
3  act has a pending motion for a protective order under Rule 26(c)").[51]

4       MGA has not asserted *any* cause, much less the required good cause, for its
5  delinquency. Fed R. Civ. P. 33(b)(4); see also Starlight Int'l, 181 F.R.D. at 497 ("In
6  the absence of good cause to excuse failure to timely object, all objections not
7  timely asserted are waived.").[52]  MGA did not even serve its objections until Mattel
8  inquired into the missing response three days *after* the due date.[53]  It also did not
9  respond further to Mattel's email other than to belatedly serve the objections, which
10  was not accompanied by any explanation for the delay.  Several days prior to filing
11  this motion, Mattel advised MGA that its negligent tardiness constituted waiver of
12  all objections and requested substantive responses,[54] but MGA still did not respond
13  with any assertion of cause, and still refuses to provide responses.

14  _____

15       [51]  That MGA missed the Rule 33-imposed deadline by "only a few days," is not
16  an excuse and still effectuates waiver of the untimely objections. See Fru-Con
    Constr. Corp., 2006 WL 3257482, at *2 (finding waiver where objections were
17  served *four days late* and stating that "[t]he court is unwilling to engage in an excuse
    analysis every time formal objections in discovery are belatedly stated."); Starlight
18  Int'l v. Herlihy, 181 F.R.D. 494, 496-98 (D. Kan. 1998) (*two-day delay* in serving
19  objections purportedly because of a calendaring error was held inexcusable and
    resulted in waiver as "[t]he tardiness [was] attributable solely to the inadvertence or
20  mistake of counsel").
21       [52]  "Good cause" "require[s] *at least* as much as would be required to show
    excusable neglect, as to which simple inadvertence or mistake of counsel or
22  ignorance of the rules usually does not suffice, and some showing of good faith on
    the part of the party seeking an enlargement and some reasonable basis for
23  noncompliance within the time specified is normally required." Therefore, "'good
    cause' requires a greater showing than 'excusable neglect.' . . . Unexplained
24  assertions of miscalculation do not constitute 'good cause.'" In re Kirkland, 86 F.3d
    172, 175 (10th Cir. 1996) (emphasis in original) (quoting Winters v. Teledyne
25  Movible Offshore, Inc., 776 F.2d 1304, 1306 (5th Cir. 1985)); Starlight Int'l, 181
    F.R.D. at 496-98 (applying In re Kirkland to Rule 33's "good cause" requirement).
26       [53]  See email from S. Watson to A. Hurst, et al., dated May 13, 2010; Response
    of MGA Parties to Mattel, Inc.'s Third Set of Interrogatories (Phase 2), dated May
27  13, 2010.
         [54]  See Letter from S. Watson to W. Parker, dated May 18, 2010.
28

1  Notably, whatever "good cause" MGA may argue it had for failing to serve its
2  objections within the 30-day period established under the <u>Rules</u> did not prevent the
3  MGA Parties from filing nearly 100 documents during that time, including motions
4  to dismiss and voluminous, premature,[55] motions for summary judgment with
5  several thousand pages of supporting materials.[56]  The latter should particularly call
6  into question any purported "good cause" that MGA may argue since the Court even
7  admonished MGA two weeks prior to its filing that under the <u>Rules</u> it would have
8  until 30 days after the close of discovery to file such a motion for summary
9  adjudication.[57]   The Court should thus closely scrutinize any cause MGA may
10  purport to allege prohibited it from filing a timely response to the interrogatories.[58]

11  _____

12  [55]   <u>See</u> Order Striking as Premature and Denying Without Prejudice MGA
   Parties' Motions For Summary Adjudication, dated May 13, 2010 (Dkt. No. 7854).
13      [56]   <u>See</u> Motions of MGA Entertainment, Inc. and Isaac Larian to Dismiss and/or
   for Summary Adjudication Regarding U.S.-Based Trade Secret and Employee-
14  Based State Law Tort Claims Brought By Mattel Inc., dated May 10, 2010 (Dkt. No.
   7897); Motions of Counter-Defendants MGA Parties and IGWT 826 to Dismiss
15  RICO and Creditor Claims and for Summary Adjudication of RICO Claims, dated
   May 10, 2010 (Dkt. No. 7896); Motions By MGAE De Mexico to Dismiss for Lack
16  of Personal Jurisdiction and on Ground of <i>Foreign Non Conveniens</i>, Motion by
   MGA and Isaac Larian for Summary Adjudication of Foreign Trade Secret Claims,
17  dated May 10, 2010 (Dkt. No. 7898); Separate Statement of Uncontroverted Facts
   and Conclusions of Law in Support of the MGA Parties and IGWT's Motions for
18  Summary Adjudication of the First, Second and Third Claims for Relief of the
   FAAC, dated May 10, 2010 (Dkt. Nos. 7899-7900); Declaration of L. Kieran
19  Kieckhefer In Support of the MGA Parties' and IGWT 826's Motions to Dismiss and
   for Summary Adjudication, dated May 10, 2010 (Dkt. Nos. 7923-7932);
20  Compendium of Alleged Trade Secret Documents in Support of Motions to Dismiss
   and For Summary Adjudication (Dkt. Nos. 7901-7921); Appendix of Previously
21  Marked Exhibits in Support of Motions to Dismiss and For Summary Adjudication
   (Dkt. Nos. 7933-7939).
22      [57]   <u>See</u> Order Setting Deadlines to Respond to Mattel's Fourth Amended Answer
   and Counterclaims, dated Apr. 28, 2010, at 2 (Dkt. No. 7783).
23      [58]   Whether MGA's inexcusable delay prejudiced Mattel is not dispositive of the
   requisite "good cause" standard under the <u>Rules</u>. <u>See</u> <u>In re Kirkland</u>, 86 F.3d at 175
24  ("Although a small delay in achieving service may not prejudice the defendant,
   absence of prejudice alone does not constitute good cause."); <u>Starlight Int'l</u>, 181
25  F.R.D. at 496-98 (applying to <u>Rule</u> 33's "good cause" requirement and holding
   "[t]he lack of prejudice to the nonmovant does not show 'good cause.'") (quoting
26  <u>Deghand v. Wal-Mart Stores, Inc.</u>, 904 F.Supp. 1218, 1221 (D. Kan. 1995)); <u>see</u>
   <u>also</u> <u>United States ex rel. Excelsior Elevator, Inc.</u>, 2006 WL 2468742, at *1-2
27  (quoting <u>Rule</u> 37(d)(2) and holding that propounding party was "entitled to
   complete, straight-forward answers, without objections, to the interrogatories" after
28  (footnote continued)

-16-

## III.  EVEN IF NOT WAIVED, THE COURT SHOULD OVERRULE MGA'S BOILERPLATE OBJECTIONS

MGA's objections are not only waived, but groundless.  MGA variously objects based on undue burden, relevance, privilege, and confidentiality, among others.[59]  MGA also serially objects to many of Mattel's defined terms.  MGA cannot unilaterally limit its discovery obligations by redefining Mattel's terms; its definitional objections should be overruled.

As the Court and the Discovery Master have repeatedly ruled, MGA's boilerplate objections on the grounds that Mattel's discovery "seeks the disclosure of confidential, proprietary, or trade-secret information"[60] are mooted by the Protective Order.[61]  The parties have produced large numbers of "confidential, proprietary, or trade-secret" documents in this action under the designation "Attorneys' Eyes Only" as provided in the Protective Order.  MGA's wholesale withholding of documents cannot be justified by purported concerns about privacy or confidentiality.

The requests are relevant, and MGA's other unsubstantiated boilerplate objections are improper and should be overruled.

---

finding failure to serve objections within the time prescribed under the Rules resulted in waiver of any objections).

[59]  See generally Response of MGA Parties to Mattel, Inc.'s Third Set of Interrogatories (Phase 2), dated May 13, 2010, at 2-59.

[60]  See, e.g., Response of MGA Parties to Mattel, Inc.'s Third Set of Interrogatories (Phase 2), dated May 13, 2010, at 2, 7 (general objection "to the extent they seek private, confidential, proprietary, or otherwise sensitive information" and specific objection to Interrogatory No. 1 "insofar as it seeks confidential information, trade secrets or other proprietary information").

[61]  See, e.g., May 15, 2007 Order, at 11 (Docket No. 484); July 2, 2007 Order, at 3 (Docket No. 608); Phase 2 Discovery Matter Order No. 6, dated March 13, 2009, at 7 (Docket No. 5018).

1

## Conclusion

2    For the foregoing reasons, Mattel respectfully requests that the Court compel

3 the MGA Parties to answer fully, without objection, Mattel's Third Set of

4 Interrogatories to the MGA Parties (Phase 2), Interrogatory Nos. 1-7 and 10-18.

5 DATED:  July 29, 2010              QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
6

7

8                                     By /s/ Michael T. Zeller
                                        Michael T. Zeller
9                                       Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28