QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES TO THE MGA PARTIES (PHASE 2)** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date: TBD<br>Time: TBD<br>Place: TBD |
| | Discovery Cutoff: TBD<br>Pre-trial Conference: TBD<br>Trial: TBD |

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that, on a date and at a time to be determined by
3  the Court, before the Honorable David O. Carter, plaintiff Mattel, Inc. ("Mattel")
4  will, and hereby does, move the Court, pursuant to <u>Federal Rules of Civil</u>
5  <u>Procedure</u> 26, 33 and 37 to compel the MGA Parties to answer fully and
6  completely Interrogatory Nos. 1-3, 5 and 9 of Mattel's First Set of Interrogatories
7  to the MGA Parties (Phase 2), dated September 11, 2009.

8  This Motion is made on the grounds that the interrogatories identified above
9  seek relevant, discoverable information, which MGA has no proper basis to refuse
10 to provide.

11 This Motion is based on this Notice of Motion, the accompanying
12 Memorandum of Points and Authorities, the records and files of this Court, any
13 matters of which the Court may take judicial notice, and such further evidence and
14 argument as may be presented at or before the hearing on this matter.

### Certification of Compliance

16 On July 27, 2010, lead counsel for the parties met and conferred on the
17 issues raised in this motion, but were unable to reach an agreement. That meet and
18 confer conference was in further to Mattel's prior attempts to meet and confer on
19 November 18, 2009 and otherwise.

21 DATED: July 30, 2010   QUINN EMANUEL URQUHART &
                          SULLIVAN, LLP

23                        By /s/ Michael T. Zeller
24                           MIchael T. Zeller
                             Attorneys for Mattel, Inc.

00505.07975/3594641.3

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel's First Set of Phase 2 Interrogatories ("First Interrogatories") seek discovery directly relevant to Mattel's RICO and fraudulent transfer claims based on MGA's distributions and payments to MGA insiders and purported creditors. These interrogatories also seek information about MGA's spoliation of evidence, an issue which is particularly relevant in light of recent evidence of spoliation by the MGA Parties uncovered by the Court-appointed forensic experts. Mattel is entitled to the information requested in these interrogatories. Despite the clear relevance and narrow scope of the First Interrogatories, the MGA Parties have either unilaterally, and improperly, limited their answers or simply provided pages of boilerplate and meritless objections without giving any substantive responses. Having repeatedly sought the MGA Parties' compliance, Mattel now moves the Court for an order compelling MGA to provide complete answers to its First Interrogatories.

### Background

Mattel served its First Interrogatories on September 11, 2009.[1] Interrogatories Nos. 1-3 seek information regarding payments by the MGA Parties since January 1, 2004 to various individuals and entities, including to shareholders (Interrogatory No. 1), creditors or lenders (Interrogatory No. 2), and family members or affiliates of Isaac Larian (Interrogatory No. 3). The full text of those interrogatories is as follows:

---

[1] See Mattel, Inc.'s First Set of Interrogatories to the MGA Parties (Phase 2), dated September 11, 2009.

<u>INTERROGATORY NO. 1</u>: IDENTIFY all PAYMENTS YOU have made, directly or indirectly, to SHAREHOLDERS since January 1, 2004.[2]

<u>INTERROGATORY NO. 2</u>: IDENTIFY all PAYMENTS YOU have made, directly or indirectly, to CREDITORS or LENDERS, including but not limited to Omni 808 Investors, LLC, since January 1, 2004.[3]

<u>INTERROGATORY NO. 3</u>: IDENTIFY all PAYMENTS YOU have made, directly or indirectly, to any LARIAN FAMILY MEMBER OR AFFILIATE since January 1, 2004.[4]

Interrogatory No. 5 seeks information regarding payments made by the MGA Parties of more than $50,000 since January 1, 2006. That interrogatory reads:

<u>INTERROGATORY NO. 5</u>: To the extent not identified in response to Interrogatory Nos. 1 through 4, IDENTIFY all PAYMENTS YOU have

---

[2] Mattel defined "SHAREHOLDER" as "any current or former owner or holder, or purported owner or holder, of shares or other form of equity or ownership interest, whether voting or non-voting, in MGA or any MGA entity."

[3] Mattel defined "CREDITOR or LENDER" as "any current or former holder or holders or purported holder or holders of certificates, notes, or any other financial or debt instrument issued by MGA, or any current or former lenders, creditors or participants in any syndicated loans or financing to MGA, or any MGA entity."

[4] Mattel defined "LARIAN FAMILY MEMBER OR AFFILIATE" as including "(a) Isaac Larian, (b) any family member of Isaac Larian, including but not limited to Angela Larian, Jahangir Eli Makabi, Shirin Larian Makabi, Jasmine Larian, Jason Larian, Farhad Larian, Aghdas Larian, Metatia Larian, Elias Larian, Shoreh Larian, Leon Neman, Yeoel Neman, and John Neman, (c) any AFFILIATE of any of them, including but not limited to IGWT Group, LLC and IGWT 826 Investments, LLC, and (d) any trust or foundation in which any of them is the grantor, beneficiary or trustee, including but not limited to The Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified Annuity Trust, and the Isaac and Angela Larian Foundation."

made of more than $50,000.00, directly or indirectly, to anyone since January 1, 2006.

Interrogatory No. 9 seeks information regarding the MGA Parties' destruction of documents relevant to this action. It states in full:

> INTERROGATORY NO. 9: Describe, with specificity, each and every DOCUMENT or other item or matter that was or could have been relevant to this action, or had or could have had any connection with this action, that was destroyed, lost, altered, modified, tampered with, redacted, deleted or otherwise spoliated by or on YOUR behalf (excepting DOCUMENTS which have been redacted for production to MATTEL in this action and clearly marked as such), and IDENTIFY all PERSONS who have or may have knowledge of the foregoing and all DOCUMENTS that REFER OR RELATE to the foregoing.

The MGA Parties – MGA, MGA Hong Kong, MGA de Mexico and Isaac Larian – each served responses and objections to the First Interrogatories on October 26, 2009. In addition to raising several pages worth of boilerplate objections, MGA and MGA HK responded to Interrogatory Nos. 1-3, but, without any explanation, they limited their responses to payments made since August 26, 2008 (the date of the Phase 1(b) verdict).[5] MGA and MGA HK did not respond at all to Interrogatory

---

[5] See Response of MGA to Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated October 27, 2009, at 9-10, 14-15, 19-20; Response of MGA HK to Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated October 27, 2009, at 9, 13 and 18. MGA HK responded simply by stating that it was aware of no payments responsive to Mattel's Interrogatories since August 26, 2008.

Nos. 5 or 9. Larian and MGA Mexico did not respond to any of Mattel's First Interrogatories but instead stated only objections.[6]

On November 18, 2009, Mattel sent a meet and confer letter to counsel for the MGA Parties which detailed the deficiencies in the MGA Parties' responses and the reasons why further responses were required.[7] Mattel did not receive any response. On July 20, 2010, Mattel sent an e-mail to counsel for MGA in which Mattel reiterated its request that the MGA Parties promptly supplement their responses to the First Interrogatories.[8] Mattel attached its November 18, 2009 letter to that e-mail. On July 26, 2010, after not receiving any response to its e-mail, Mattel raised the issue again in a meet and confer letter.[9] Lead counsel for the parties then discussed Mattel's First Interrogatories during a meet and confer conference on July 27, 2010. The MGA Parties refused to agree to supplement their responses to Interrogatory Nos. 1-3, 5 and 9.[10]

## Argument

### I. THE COURT SHOULD COMPEL THE MGA PARTIES TO PROVIDE FULL RESPONSES TO MATTEL'S INTERROGATORIES CONCERNING PAYMENTS TO INSIDERS AND CREDITORS

Interrogatory Nos. 1-3 and 5 seek information about payments the MGA Parties have made to their shareholders, creditors, and family members or affiliates

---

[6] See Response of Isaac Larian to Mattel, Inc.'s First Set of Interrogatories, dated October 27, 2009, at 9-49; Response of MGA de Mexico to Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated October 27, 2009, at 9-50.
[7] See Letter from D. Proctor to W. Molinski, November 18, 2009.
[8] See E-mail from D. Posner to A. Hurst, dated July 20, 2010.
[9] See Letter from M. Zeller to A. Hurst, dated July 26, 2010.
[10] The MGA Parties did agree to supplement their responses to Interrogatory Nos. 4, 7 and 8, and further agreed to confer internally on whether they will supplement their responses to Interrogatory No. 6. Mattel reserves its right to move to compel as to those responses should the MGA Parties refuse to supplement as agreed.

of Isaac Larian since January 1, 2004, or payments made to any recipient in excess of $50,000 since January 1, 2006. Payments made by the MGA Parties to insiders and purported creditors, such as Omni 808 and IGWT 826, or any other significant distributions or payments made by the MGA Parties with the intent to defraud Mattel as a creditor are relevant to Mattel's claims for fraudulent conveyances and RICO violations.

Specifically, Mattel alleges in its thirteenth and fourteenth counterclaims for actual and constructive fraudulent conveyances under Cal. Civ. Code §§ 3439.04, et seq., and fifteenth counterclaim for prohibited distributions under Cal. Corp. Code §§ 501 and 506, that MGA fraudulently distributed hundreds of millions of dollars to insiders of MGA, and made additional fraudulent distributions in the form of "interest payments" to purported creditors of MGA.[11] Mattel further alleges that MGA made such payments and distributions either with the specific intent of defrauding Mattel's rights as a creditor of MGA or at times when MGA was insolvent and without receiving reasonably equivalent (or indeed any) value in return.[12] MGA's fraudulent distributions also are relevant to Mattel's RICO predicate act allegations of mail and wire fraud, and further to Mattel's RICO conspiracy allegations that the MGA Parties and Omni 808 conspired to create a financing front to prevent Mattel from recovering the fruits of this lawsuit.[13]

Interrogatory Nos. 1-3 and 5 are directly relevant to those claims. They seek the identity of distributions and other payments made by the MGA Parties that discovery may reveal are fraudulent. Recognizing the propriety of this discovery, MGA and MGA HK provided partial responses; but MGA has no basis to refuse to identify its payments and distributions at times before August 26, 2008. While that

---

[11] See Fourth Amended Answer and Counterclaims ("FAAC"), ¶¶ 205-230.
[12] Id.
[13] FAAC, ¶¶ 97-116, 130.

is the date of the Phase 1(b) trial verdict, that date is not the starting point of Mattel's Phase 2 creditor claims and RICO claims. MGA's refusal to provide responsive information from dates before August 26, 2008 has no support in law or fact. The MGA Parties' objections based on relevance and over-breadth are without merit.

None of the MGA Parties' other objections to Interrogatory Nos. 1-3 or 5 has any merit. As an initial matter, their boilerplate objections to all the interrogatories are improper and should be overruled. See, e.g., Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."). Each objection is also substantively groundless. The interrogatories are not unduly burdensome. MGA had no problem providing a list of responsive distributions for the limited time period that it chose to consider in its responses. The MGA Parties have articulated no basis – let alone provided "specific and compelling proof" – to conclude that requiring them to respond to the interrogatories as to the requested time period would result in a burden that would outweigh Mattel's need for the requested information. See, e.g., JZ Buckingham Invs., LLC v. United States, 78 Fed. Cl. 15, 25 (Fed. Cl. Ct. 2007) (overruling objections and denying motion to quash subpoena where third party did not provide "specific and compelling proof" that the discovery was unduly burdensome).[14] To the contrary, the MGA Parties

---

[14] The requirement that the parties support their objections based on purported burden is well-recognized in this case. See Discovery Matter Amended Order No. 11, dated Mar. 31, 2009, at 18-19 (Dkt. No. 5093) (MGA Parties did not meet "their burden of demonstrating that answering the requested interrogatories is overly burdensome" because they did "not provide any supporting declaration or specific evidence to support their assertion of burden"); Order Granting In Part and Denying In Part Mattel's Motion to Compel Production of Documents by MGA [and] Denying Request for Monetary Sanctions, dated Aug. 13, 2007, at 14 (Dkt. No. 804) ("MGA has not carried its burden of establishing that it would be unduly
     (footnote continued)

should have information about their payments and distributions readily available to them, and it should be no burden for them to state such information in interrogatory responses, or to confirm that they have no responsive transactions to identify, as the case may be.

The MGA Parties' objection that the interrogatories call for confidential, proprietary or otherwise sensitive information likewise fails to provide any basis for refusing to respond, as the protective order in this case adequately addresses any such concern.[15]  Further, their objections to Mattel's defined terms, including "identify" and "payment," on the grounds that they are vague, ambiguous and overbroad are also without merit.  Each of these terms is clearly defined and is tailored to seek information that is relevant to the claims and allegations discussed above.  MGA cannot unilaterally limit its discovery obligations by redefining Mattel's terms.  These objections should be overruled.

The MGA Parties also object to each of the interrogatories on the grounds that they purportedly call for a legal conclusion and information that will be the subject of expert testimony, yet they fail to explain how that is the case.  These objections too should be overruled, as interrogatories seeking the identification of transactions do not call for either legal conclusions or expert analysis.

---

burdensome to comply with these requests."); Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 12-14 (Dkt. No. 487) (overruling MGA's objections where it "failed to substantiate any of its objections with supporting declarations or legal authorities").

[15] See, e.g., May 15, 2007 Order, at 11 (Docket No. 484); July 2, 2007 Order, at 3 (Docket No. 608); Phase 2 Discovery Matter Order No. 6, dated March 13, 2009, at 7 (Docket No. 5018); see also Nakagawa v. Regents of Univ. of Cal., 2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of personnel files and stating "[a]ny other privacy concerns defendant may have should be addressed by a protective order").

Finally, the MGA Parties' reliance on Rule 33(d) is misplaced because they have failed to comply with that rule. Rule 33(d) requires a responding party to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d). The MGA Parties have not identified any documents from which responsive information can be obtained, and their objections based on Rule 33(d) therefore fail.

Accordingly, Mattel respectfully requests that the Court order the MGA Parties to provide full responses to Interrogatory Nos. 1-3 and 5.

## II. THE COURT SHOULD COMPEL THE MGA PARTIES TO ANSWER MATTEL'S INTERROGATORY CONCERNING SPOLIATION

Interrogatory No. 9 seeks information regarding the MGA Parties' destruction of documents relevant to this action. The information sought relates directly to Mattel's allegation that "Larian and MGA have themselves, and through their agents and co-conspirators, destroyed, deleted, withheld, altered, fabricated and back-dated documents and engaged in other acts of spoliation and concealment, with the intent and purpose of concealing the origin of Bratz, hiding their wrongdoings, and obstructing these proceedings,"[16] as well as to Mattel's RICO predicate act of obstruction of justice.[17] MGA propounded similar interrogatories to Mattel regarding spoliation, and Mattel was ordered to respond.[18] The MGA Parties must likewise answer, particularly given that Mattel, unlike the MGA Parties, has made substantive allegations of spoliation as part of its claims.

---

[16] FAAC, ¶ 95.
[17] See FAAC, ¶ 123.
[18] See Phase 2 Discovery Matter Order No. 56, dated September 3, 2009 (Docket No. 6591).

Mattel's need for evidence of spoliation by the MGA Parties is heightened by additional evidence of spoliation recently uncovered. On July 5, 2010, the Special Master issued a Report and Recommendation requiring that Gustavo Machado's hard drives be submitted to International Litigation Services, Inc. ("ILS"), the Court-appointed e-discovery consultant, in light of "substantial evidence indicating Machado engaged in continuing efforts to delete or 'wipe' relevant data from the Machado Hard Drives."[19] On July 16, 2010, ILS delivered its analysis of the Machado hard drives pursuant to the July 5 Report.[20] ILS found evidence that a wiping software program called "BeClean" was repeatedly run on three of the four hard drives which were analyzed.[21] At least three of the occasions on which the wiping software was run – on August 28, 2006, April 11, 2007, and August 27, 2007 – were <u>after</u> MGA Mexico was on notice of potential litigation related to Machado's theft of trade secrets by Mattel, and two of the three dates are <u>after</u> Mattel filed its complaint against MGA Mexico specifically relating to those allegations. One drive was wiped at least four separate times, and another was wiped "on the morning of the date when the image was collected – 04/11/07."[22] Because of the clear relevance of evidence of spoliation, MGA has no legitimate basis for refusing to respond to this interrogatory.

---

[19] <u>See</u> Order on July 5 Report and Recommendation, dated July 12, 2010, at 2 (Docket No. 8239-1).

[20] <u>See</u> Report of Technical Advisor International Litigation Services, Inc., submitted to the Special Master for eDiscovery James Smith, dated July 12, 2010 ("July 12, 2010 Smith Report").

[21] The fourth drive could not be analyzed because MGA submitted a "ghost" drive that did not contain all relevant data on the drive.

[22] <u>See</u> July 12, 2010 Smith Report, at 2.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court compel the MGA Parties to answer fully Interrogatories Nos. 1-3, 5 and 9 of Mattel's First Set of Interrogatories to the MGA Parties (Phase 2).

DATED: July 30, 2010         QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.