MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700 / Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020 / Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700 / Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826 Investments LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br>Consolidated with No. CV 04-9059 and No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PROHIBITING DISSEMINATION OF INFORMATION OBTAINED IN THIS LAWSUIT**<br><br>Date: TBD<br>Time: TBD<br>Dept: Courtroom 9D |

## INTRODUCTION

Mattel's Opposition argues for the unfettered disclosure of discovery obtained from MGA in *this case* for use in proceedings in Mexico in which MGA is not a party, something this Court has said Mattel should not do. Repeatedly, Mattel has made representations to this Court that discovery obtained in this case was not being sought merely to funnel information to advance Mattel's prosecution in Mexico—now, it is no secret that this is exactly what Mattel is doing with discovery in this case. It is unquestionable that Mattel has and remains in constant collaboration with the Mexican authorities, even so far as having Mattel lawyers *themselves* solicit the Mexican authorities to issue a "request" for information in order to give it some semblance of an "official" nature. Clearly, Mattel's partnership and collaboration with the "requesting authorities" cannot trump this Court's previous warnings that discovery in this case "should *not* be used as an evidence-gathering mechanism for the criminal prosecution . . . in Mexico." January 19, 2010 Hearing (Vol. II) at 7:6-8. Neither does the discretionary mechanism provided by 28 U.S.C. § 1782 allow for the outright injustice that Mattel would have this Court sanction. With Mattel's true colors and intentions now made obvious, it is even more imperative that the Court enter the protective order sought by the MGA Parties that would prohibit the dissemination and sharing of discovery obtained in this case to advance Mattel's aggressive, yet faltering, criminal prosecution in Mexico. In short, Mattel's obvious attempt to abuse civil discovery must be stopped.

To support the specific request to allow Mattel to hand over the CD to the Mexican authorities, Mattel completely misstates the record. *First*, contrary to Mattel's representation, the CD does, in fact, contain large amounts of confidential MGA information. There are a total of 110 files on the CD. Mattel claims trade secret rights to just about half of these files. Also, on the CD are MGA employment contracts and a confidential MGA price list, among various other

confidential MGA documents. Machado testified, in fact, that he created the CD more than six months *after* joining MGA. The CD, as a result, was a combination of both Mattel *and* MGA information. The more recent, and, thus, more confidential information on the CD was the MGA information, not the outdated Mattel information. Indeed, one of the most recent documents on the CD is a confidential *MGA* price list. *Second*, what Mattel continues to ignore is that the copy of the CD MGA has was a copy made *by the Mexican authorities*! Before leaving MGA's office on the day of the raid, the Mexican authorities made a copy for MGA of what they were seizing. Mattel never answers in its brief why the Mexican authorities would want a copy of the copy of the CD that they themselves made for MGA. Neither is it clear why the authorities would seek to go through Mattel to obtain a copy of what they gave to MGA. None of this makes any sense. For whatever reason the authorities may want a copy of a CD, it is not a proper use of discovery in *this action* for Mattel to provide the authorities with confidential information obtained from MGA.

## ARGUMENT

### I. MATTEL FAILS TO REBUT EXISTING GOOD CAUSE FOR ISSUANCE OF A PROTECTIVE ORDER PREVENTING DISSEMINATION OF DISCOVERY MATERIALS

Mattel fails to meet its burden to adequately rebut existing good cause in support of issuance of a Protective Order. First, in response to the MGA Parties' Motion for Protective Order, Mattel disingenuously characterizes the production copy of the CD[1] as containing "over 600 MB . . . of Mattel trade secrets" and further claims that MGA has no protectable interest in its contents. Nothing could be further from the truth. Contrary to Mattel's assertions, the MGA Parties indeed have both confidential and privacy interests that would be negatively impacted by the uninhibited collaboration and sharing of information between Mattel and the Mexican authorities. Granted, as Mattel contends, the compact disc at issue indeed

---

[1] MGA 3815506.

- 2 -   REPLY ISO MGA'S MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049-DOC (RNBX)

contains files that bear "Mattel logos" (purportedly evidencing Mattel ownership on that basis alone), but the CD also notably contains MGA confidential information, including, for example: (1) MGA Human Resources information, e.g., offer letters, résumés, employment contracts, etc.; (2) various internal MGA documents that bear "MGA Entertainment" logos, including a Spring 2004 MGA price list complete with MGA's terms and conditions; and (3) MGA meeting agendas, schedules, itineraries and other strategic planning documents. Indeed, the more recent information on the CD is information created by Machado after joining MGA that contain no Mattel information. Therefore, Mattel's contention that MGA has no legitimate concerns over the disc's contents is simply not true. In fact, not only is Mattel's characterization of the disc's contents highly exaggerated, but also, of the 110 individual files contained within the disc, Mattel is now only pursuing its trade secrets claims on roughly half of those files.[2] And, in fact, the overwhelming bulk of the information on the CD that Mattel claims contain its trade secrets is not even Mattel information. It is historic sales data provided to Mattel by retailers, such as WalMart Mexico. This information does not belong to Mattel, but to Mattel's customers, who collect the data at their stores and permit Mattel to access the data on the retailers' computers.

Second, Mattel next argues that even if the MGA Parties have a protectable interest in the discovery produced in this case—which they do—the disclosure of such information would somehow not harm MGA. The reality, however, is that Mattel wishes to provide the Mexican Attorney General's Office with sufficient evidence to justify issuing arrest warrants against officers and/or employees of MGAE de Mexico—a palpable and intentional harm *directly aimed* at MGA. If an individual's *liberty* is not a harm, then what is? Mattel's use of discovery in this

---

[2] *See* Mattel, Inc.'s Third Supplemental Objections and Responses to Interrogatory Nos. 20-23 and 28 in MGA Entertainment, Inc.'s Second Set of Interrogatories, served January 11, 2010 (identifying sixty-two files from the disc as purportedly comprising Mattel trade secrets).

action to pursue criminal claims in Mexico is an immediate harm and the very reason why parties negotiate protective orders limiting use of discovery to the action in which the discovery is provided.

Further, the supposed fact that "criminal laws in Mexico prohibit disclosure of any portion of a criminal investigation or criminal court file" is irrelevant and misses the point entirely. MGA's concerns do not simply evaporate because of the supposed harsh penalties one faces for disclosing material from a Mexican criminal file. Moreover, MGA is not a party to those proceedings so cannot monitor what information is or is not disclosed in those proceedings. Moreover, Mattel's Mexican lawyer only suggests that the authorities could not disclose this information. Opp. at 10. Mattel cites to no Mexican codes or laws establishing the limits on disclosure, and the Mexican authorities have certainly not agreed to the protective order in this case. It is also apparent that the authorities are openly sharing the information obtained during their investigation with Mattel. Mattel could thus claim that it received information from the authorities and was free to share that information. Indeed, Mattel has publicized its claims against Machado *et al.* in the Mexican press and there is no assurance Mattel will not seek some back door way of continuing to do so by using the authorities as cover.

As this Court is aware, Mattel is attempting to advance several theories of criminal culpability in Mexico, including, misappropriation, use, and disclosure of industrial secrets. Undoubtedly, in an effort to circumvent a Mexican appellate court's decision that found *no evidence* of use or disclosure by MGAE de Mexico or its officers, Mattel's Mexican counsel—Mr. Juan Carlos Manrique Moya—advised the Mexican Attorney General's Office that MGA had produced a *copy* of the CD seized during the search warrant on MGA Mexico's offices.[3] Mr.

---

[3] *See* Molinski Decl. Ex. A at 4 (citing a writ submitted by Mr. Manrique to the Mexican authorities, dated March 10, 2010, "With regard to [Mr. Manrique's] writ on the tenth of March and your appearance on the eighteenth of the present month and year in which you make reference . . . .").

Manrique's written submission of March 10, 2010—which has not been produced in this case—and subsequent appearance on March 18, 2010, *then* prompted the "request" for the CD by Mexican authorities.

Now, in connection with its Opposition, Mattel submits a supposed *new* "request," dated June 21, 2010, that was issued in "compliance with the *agreement for the investigation* being performed."[4] Importantly, Mattel not only inexplicably omits the Spanish-language original of the June 21 document—forcing the MGA Parties to rely on a potentially self-serving translation—but also omits the referenced "agreement for the investigation." Surely such an agreement with Mexican authorities would be highly suspect given that Mattel continues to vehemently deny that it is the prosecutor-in-fact in Mexico.

Moreover, and contrary to Mattel's characterization, the June 21 document is neither a request nor a subpoena. The very terms of the document (as translated) make that abundantly clear. Mattel's Mexican counsel made various representations to the Attorney General's Office about the existence of this CD and stated, in part, that:

> "MGA Entertainment, Inc. has provided the attorney for Mattel Inc., in the United States, with a secured copy of the compact disk. I wish to specify that the information contained in that compact disk must be similar to [*sic*] content of the secured compact disk for the search made on October 26, 2005. . . . Thus, I reiterate that this copy of the compact disk *can be shown* to this [authority] if my clients are required to do so." Sarles Decl. Ex. A (emphasis added).

Even in light of the foregoing solicitation for a "request," the Mexican authorities refused to *require* Mattel to produce anything at all. Rather, the Mexican prosecuting attorney stated only that *"[i]f it is necessary* to exhibit the compact disk," Mattel was to present it on June 24, 2010. *Id.* This is hardly the affirmative and unequivocal language that one associates with an official request for information—likely because the June 21 document does not compel Mattel to

---

[4] Declaration of Joseph C. Sarles, Ex. A (emphasis added).

produce anything; rather, it offers Mattel the mere option to present the evidence it has available.

Mattel also never explains why the Mexican authorities would want a copy of the CD or why they are seeking it from Mattel and not directly from MGA. The copy of the CD MGA has is a copy that those same authorities made for MGA to provide MGA with a copy of what was seized. That they would want a copy of that copy, when they have access to the original, makes no sense. One would speculate that they failed to properly record the chain of custody so want a copy to demonstrate that the CD was found during the search at MGA.

But a more likely explanation is that Mattel seeks to somehow distort the evidentiary record in Mexico—as it has here—to somehow suggest to the authorities that MGAE de Mexico was using or accessing Mattel information *after* the raid. Mattel might argue that MGAE de Mexico's mere possession of the CD suggests use. Or Mattel might argue "use" because a copy of the CD was "accessed" by MGAE de Mexico, even though the CD was only accessed by lawyers and a representative for MGAE De Mexico seeking to determine what may have been seized.[5] In any event, if the Mexican authorities, in fact, require a copy of the CD, they can request it directly from MGA, with an explanation of why it is needed, rather than using Mattel to do its bidding.

It should come as no surprise that Mattel's posturing for the uninhibited sharing of discovery information with Mexican authorities has always been its primary objective—feigning legitimacy of the discovery sought in the United States proceeding under the guise of the Federal Rules. For example, at a hearing conducted on January 19, 2010, where the parties addressed whether Mr. Gustavo Machado could properly avail himself of the protections provided for under the Fifth Amendment, the Court specifically "warn[ed] the parties that [discovery in

---

[5] Susana Kuemmerle, the manager of MGA Mexico, testified that she opened the CD to see what had been seized and then sent the CD to MGA's counsel in the United States, O'Melveny & Myers.

this case] should *not* be used as an evidence-gathering mechanism for the criminal prosecution . . . in Mexico." January 19, 2010 Hearing Tr. (Vol. II) at 7:6-8. The Court continued by analyzing the holding in *Balsys*, finding it inapplicable under the facts as they then existed, and noted that "the Supreme Court [in *Balsys*] was concerned with the mere *funneling of information* obtained in a case in a United States court for the benefit of a foreign prosecution." *Id.* at 7: 19-21; *United States v. Balsys*, 524 U.S. 666 (1998). As foretold by the Court, this is exactly what Mattel is now attempting to accomplish—funnel information obtained under the auspices of civil discovery for the benefit of its Mexican prosecution.

Mattel latches onto 28 U.S.C. § 1782 for the proposition that not only is its conduct allowable but that this Court should also endorse these activities. Notably, although Section 1782 vests authority in the U.S. District Courts to order discovery for use in foreign proceedings, the statute itself does not *require* them to do so. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) ("[W]e leave it to the courts below to assure an airing adequate to determine what, *if any*, assistance is appropriate."). Courts instead are to consider the overall policy of the statute before authorizing discovery, including whether the request for discovery meets the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Malev v. Hungarian Airlines v. United Tech. Int'l Inc.*, 964 F.2d 97, 100 (2d Cir. 1992). *See also Intel Corp.*, 542 U.S. at 252. Most notably, however, *Intel* expressly accounted for the fact that a party may move for a protective order to trump a movant's request pursuant to Section 1782. *Id.* ("Nor has it been shown that § 1782(a)'s preservation of legally applicable privileges and *the controls on discovery available to the District Court, see, e.g., Fed. Rule Civ. Proc. 26(b)(2) and (c)*, would be ineffective to prevent discovery . . . .").

- 7 -

REPLY ISO MGA'S MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049-DOC (RNBx)

1  Third, Mattel's argument that the Protective Order actually permits the
2  disclosures at issue is equally unavailing. The scope of litigation as it existed at the
3  time the parties executed the Stipulated Protective Order (Dkt. #54) was vastly
4  different from what it has become. Indeed, in January 2005 there were no
5  associated foreign proceedings to speak of. Clearly, having executed the Stipulated
6  Protective Order more than ten months *prior to* having any notice or knowledge of
7  the potential for foreign litigation, the MGA Parties could not have contemplated
8  nor assented to having its confidential information disseminated to foreign tribunals
9  or authorities.[6]

## CONCLUSION

For all of the foregoing reasons, and good cause existing, the Court should grant the MGA Parties' Motion for Protective Order forbidding the dissemination of discovery materials obtained in this case to further foreign prosecution activities in Mexico.

Dated: August 3, 2010

WILLIAM A. MOLINSKI
Orrick, Herrington & Sutcliffe LLP

By: /s/ *William A. Molinski*
WILLIAM A. MOLINSKI
Attorneys for MGA Parties

OHS West:260959521.3

---

[6] Mattel's request for an Apostille is addressed in the papers presented by Gustavo Machado. The MGA Parties join in those papers.