## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                                    Date: August 3, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

|     Kathy Peterson     |     Not Present     |
| :---: | :---: |
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

|     NONE PRESENT     |     NONE PRESENT     |
| :---: | :---: |

PROCEEDING (IN CHAMBERS): ORDER ON PENDING DISCOVERY MOTIONS

      Before the Court are a number of unresolved discovery disputes between the parties. This Order resolves some of those disputes.

### I.    MGA's Motion to Enforce January 26, 2010 Order

      MGA's request that Mattel prepare and produce a privilege log of all post-filing NHB documents is DENIED. The Court is satisfied that it has been the long-standing practice between the parties that post-filing documents need not be marked as privileged. Indeed, the Court has granted MGA considerable flexibility in the manner of its production of the Larian Hard Drives, in light of the burden MGA would have undergone in having to prepare a privilege log for the active files on Larian's Hard Drive.

### II.    Mattel's Objections to Discovery Matter Order No. 89/91

      Pursuant to the Court's May 25, 2010 Order, MGA submitted a list of revised requests for production, narrowed by custodian. Mattel submitted an opposition to MGA's revised list, citing reciprocity concerns as well as the irrelevance of several of MGA's requests for production to the claims in this litigation. Upon review of the revised list proposed by MGA, the Court ORDERS Mattel to subject its search to the individuals numbers 1 through 173 in Appendix A to MGA's submission. The parties have already agreed to search the files of these individuals.

MGA's request that Mattel search the files of an addition thirty five individuals is DENIED:  the Court is familiar with the discovery in this case, having reviewed thousands of relevant documents, and recognizes not one of the names on MGA's proposed list.

The scope of Mattel's search shall include the requests for production identified in Appendices B and C to MGA's submission.  Mattel's objection to the requests for production listed by Appendix B is moot in light of the Court's ruling on the list of custodians.  Mattel's objections – if any – to the requests for production listed in Appendix C are ill-founded, especially in light of the Ninth Circuit's ruling, as the requests for production concern the Inventions Agreement entered into between Bryant and Mattel.

Appendix D to MGA's submission lists two requests for production that are irrelevant to this action.  First, 9059 RFP 218 seeks communications between Mattel and other entities or individuals that are embroiled in litigation with MGA.  Rule 26 does not countenance using discovery as a rachet to find out who one's enemies are.  While MGA claims that the request is relevant to its defense that Mattel is trying to "litigate MGA to death," allowing unfettered discovery into the defense (which isn't really a defense) would allow for endless discovery into every Mattel communication that concerns MGA.  Second, 9059 RFP 212 is even broader: it concerns any communication relating to any other MGA lawsuit.  That request is irrelevant for the same reasons that 9059 RFP 218 is irrelevant.  Mattel's Objections are SUSTAINED as to these two requests.  The remaining requests seek relevant information as to MGA's trade dress infringement allegations against Mattel and Mattel is ORDERED to search for responsive documents as to 9049 RFP 599 and 9049 RFP 598.

Appendix E lists a number of requests for production already ruled upon by the Court.  A number of the requests have since been narrowed by MGA and the Court has reviewed MGA's proposed amendment to the requests for production.  MGA's narrowed construction is GRANTED as to 9049 RFP 648, 9049 RFP 708, and 9049 RFP 725.

Appendix F lists a number of requests for production that have not been revised by MGA.  Mattel is ORDERED to produce responsive documents to the following "9049 RFPs": 1, 2, 4, 5, 6, 7, 8, 9, 13, 14, 15, 16, 22, 70, 79, 92, 94 (modified by substituting the word "and" for "or"), 106, 107, 422, 431, 432, 471, 540, 677, 693, 734, 748, 749, 752 (modified by substituting "in connection with" for "during"), 753, 754, 755, 70, 157, 164, 170, and 171.

Finally, Appendix F lists a number of requests for production to which Mattel has supposedly agreed to produce responsive documents.  To the extent Appendix F inaccurately represents Mattel's consent, Mattel shall file a supplemental brief within two days of the filing of this Order so informing the Court.  Mattel shall nevertheless be prepared to produce responsive documents to the requests for production within one day of any subsequent ruling on those requests for production that Mattel contests.

Mattel's production in response to the instant Order shall be completed on or before August 14, 2010.

### III.    Mattel's Motion to Compel MGA Entertainment, Inc. To Produce 30(b)(6) Witnesses

The Court's prior order on Mattel's Motion to Compel directed the submission of supplemental briefing on just one of the topics on which Mattel sought an MGA 30(b)(6) witness.  That topic (#3) concerns "MGA's use of any design or other work prepared, in whole or in part, by any person while employed by Mattel, including Bryant, Salazar, Morales, and Cabrera, including the identity of each product such persons worked on and when."  The Court expressed concern that the breadth of the term "use" would impose an undue burden on MGA.

Having reviewed the supplementary briefing, the Court is satisfied that the topic has been narrowed tremendously since it was originally drafted.  MGA objects that "use" could encompass innocuous acts – *i.e.* product analysis or marketing strategy – but that construction is obviously unreasonable, especially given the stark examples presented by MGA's briefing.  What Mattel seeks is testimony about whether former Mattel employees introduced trade secrets to MGA, that were thereafter used.

Accordingly, the topic is further narrowed as follows: "MGA's use of any design or other work prepared, in whole or in part, by any person while employed by Mattel, including Bryant, Salazar, Morales, and Cabrera, including the identity of each product such persons worked on and when.  The topic shall be limited to "design or other work" that MGA obtained directly from (1) former Mattel employees who thereafter worked from MGA; or (2) Mattel employees who communicated the "design or work product" to former Mattel employees who thereafter worked for MGA."

The deposition shall commence on or before August 9, 2010 and shall be limited to five hours.  This date will not be continued.  The Discovery Master is ORDERED to be present.

### IV.    Mattel's Objections to Discovery Matter Order No. 94

Mattel has provided a supplementary declaration concerning nine documents not addressed by the Court's May 25, 2010 Order.  The documents appeared on Mattel's privilege log and were ordered to be produced by Discovery Matter Order No. 94.  Having reviewed the supplementary declaration of Jill Thomas, the Court ORDERS as follows:

Entries 70 through 74, and 107 consist of e-mail communications between Richard De Anda and (1) Mary H. Domazet, an employee in Mattel's IT Department, Thomas ¶ 8, and (2) Mark Kimble, a Mattel HR employee, *id.* ¶ 9.  The e-mails solicit information about departing Mattel employee Ron Brawer, who defected to MGA.  Though Thomas declares that DeAnda sent the e-mails

in an effort to gather information for eventual use in connection with litigation, there is little evidence of that fact from the e-mails themselves. *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989) ("[T]o qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'"). Mattel's Objections as to entries 70 through 74 are therefore OVERRULED.

Entry 75 consists of an investigation report prepared by Lambda Investigations, an outside contractor retained by Mattel Vice President of Global Security and Investigation, to track the whereabouts of departing Mattel employee Ron Brawer. The Court already held that reports prepared by Lambda Investigations were not prepared in anticipation of litigation. *See* Order Overruling Mattel's Objections to Discovery Matter Order No. 97. The reasoning in that Order applies here as well: there is no indication or basis upon which to conclude that the report was prepared in anticipation of litigation. Mattel's Objection as to entry 75 is therefore OVERRULED.

Entries 105 and 106 consist of e-mail communications between Richard De Anda and Jeff LeTourneau, who worked for Lambda Investigations. In the e-mails, De Anda calls LeTourneau's attention to the fact that Brawer has "taken a position with the competition," and directs LeTourneau to investigate Brawer. It is clear that the e-mails were sent soon after Brawer's departure for MGA was discovered within Mattel. That Mattel was contemplating litigation against one of its employees almost immediately after his departure seems implausible and, in any event, there is no indication that the e-mails were sent in anticipation of any litigation. Mattel's Objections as to entries 105 and 106 are therefore OVERRULED.

Entries 156, 157, and 159 consist of attorney-client communications. Mattel's Objections are SUSTAINED as to the two documents.

All production shall be completed on or before August 6, 2010.

## V.      Motion to Compel Production of Documents in Response to Mattel's Requests for Documents Concerning Trade Secret Use

Pursuant to Court Order, Mattel submitted an oversized brief that addresses hundreds of requests for production served on MGA and MGA Mexico. The MGA Parties submitted an opposition, to which Mattel submitted a reply. The requests for production seek discovery into MGA's alleged use of Mattel trade secret information, including Mattel's forecasting systems and processes, Mattel's inventory and data warehouse systems. Though the Court had previously narrowed discovery into this topic area to 6 months before and 6 months after a former Mattel employee started work at MGA, Mattel now seeks more expansive discovery, including discovery into MGA's forecasting and inventory system from 2001 to the present. Mattel argues that such discovery may show that departing Mattel employees used Mattel trade secrets to turn MGA from a failing company into a successful

international conglomerate.

Mattel argues the previous restrictions imposed by the Court are overly constraining, because "complex, integrated systems such as these often require the collection of data over time to support additional functionalities, so the development process can take years." But lead counsel never made this argument when they stipulated to a 6 month window; an agreement memorialized by the January 26, 2010 Order.

Moreover, Mattel's requests imposed undue qualitative and quantitative burdens upon MGA. Seeking information about MGA's proprietary processes over a 10 year period (including up to the present) is likely to tell Mattel more about the impact of this litigation on MGA than the effect, if any, that departing Mattel employees had on MGA. Mattel concedes that the information sought is highly sensitive and critical to a company's profitability – full disclosure could result in a competitive disadvantage, even assuming the restrictions imposed by the Stipulated Protective Order. Moreover, the requests seek volumes of irrelevant documents and impose an undue cost upon MGA.

There are less burdensome avenues for discovery into MGA's alleged use of Mattel's trade secrets. First, Mattel has *already* obtained information about MGA's forecasting systems 6 months prior to and 6 months after key Mattel employees defected to MGA. MGA should produce all such information as it relates to Castilla. Second, Mattel can still seek discovery into Castilla's actions after joining MGA, including the files he created and his responsibilities. The Court has long prioritized depositions over written discovery for the very reason that testimonial evidence about MGA's use of Mattel trade secrets is less costly and burdensome and, in addition, narrowly tailored to the subject matter. Third, the Court has ordered MGA to search its files using search terms drafted by Mattel, with the restriction that the search terms be of sufficient length and use entire phrases found in Mattel's trade secret documents. The purpose of such a search is to determine whether MGA used language or protocols found in Mattel's trade secret documents immediately after hiring former Mattel employees.

Some of those procedures should apply here. Having reviewed Mattel's requests for production, the Court ORDERS that MGA produce responsive documents subject to the following limitations:

1. <u>Requests Limited to Twelve Month Period Before and After Castilla's Departure from Mattel</u>: 1-3, 6-14, 15-23, 28, 34-51, 56, 24-27, 29-31, 52-55, 57-59, and 60-65, 69, 71, 73, 75,

2. <u>Requests as to Which the Six Month Before and After Limitation Applies</u>: 1-12 of Mattel's Second Set of Requests for Production.

3. <u>Requests as to Which No Temporal Limitation Shall Apply</u>: 68, 70, 72, 74, as well

MINUTES FORM 11 DOC                                        Initials of Deputy Clerk kp
CIVIL - GEN                                                Page 5 of 11

as 4-6, 11, 12, 14, 8, 9, 15, 16, 20, 25, 27, 29, 41, 42, 43, 44, 47, 78-80, 90, 91, 92, 93, 94, 81-86, 97, 98, 77, 80, 82, 84, 86, and 92 of Second Set of Requests for Production.

4. <u>Requests Limited to Six Month Period Before and After Brawer's Departure from Mattel</u>: 21-23 of Mattel's Second Set of Requests for Production.

5. <u>Requests Limited to Six Month Period Before and After Cooney's Departure from Mattel</u>: 33, 34 of Mattel's Second Set of Requests for Production.

6. <u>Request Limited to Six Month Period Before and After Contreras' Departure from Mattel</u>: 51 of Mattel's Second Set of Requests for Production.

Mattel's Motion is otherwise DENIED.  MGA shall produce responsive documents on or before August 14, 2010.  This date will not be continued.

## VI.   Motion to Compel MGA to Produce Documents used to Refresh Gordon's Recollection

MGA Canada 30(b)(6) designee Diane Goveia-Gordon was deposed by Mattel and questioned about former Mattel Canada employee Janine Brisbois' alleged misappropriation of Mattel trade secrets.  During the deposition, Goveia-Gordon testified that she reviewed attorney-client communications to refresh her recollection.  However, Goveia-Gordon was unable to specify *which* attorney-client communications she reviewed in preparation for her deposition.  Mattel requests that the Court order MGA to produce all attorney-client privileged communications that Goveia-Gordon used to refresh her recollection.  MGA responds that Goveia-Gordon did not actually review any attorney-client communications to refresh her recollection – *i.e.* Goveia-Gordon misspoke at her deposition.

Both parties agree that Federal Rule of Evidence 612 renders discoverable "written materials reviewed prior to a deposition . . . to permit discovery of writings [] that a witness reviewed before a deposition for the purpose of refreshing his or her recollection."  *United States v. 220 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985).  "[A]ny privilege or work product protection against disclosure is deemed waived as to those portions so reviewed."  *Id.*

Though MGA suggests that Goveia-Gordon did not review attorney-client communications to refresh her recollection, it does not attach a declaration by Goveia-Gordon that so states.  There is an easy solution to this dispute and it was an approach suggested by Mattel to MGA during the meet and confer process: "MGA [should] simply ask [Goveia-Gordon] which documents she reviewed to prepare for the deposition and produce them."  Motion at 5.  Goveia-Gordon shall submit a sworn declaration filed concurrent to MGA's production of such documents, in which she states that she reviewed no other documents to refresh her recollection in preparation for her deposition.

Accordingly, MGA is ORDERED to produce to Mattel on or before August 6, 2010 all documents and/or portions of documents reviewed by Goveia-Gordon to refresh her recollection prior to her deposition. MGA shall concurrently file a sworn declaration by Goveia-Gordon representing that she reviewed no other documents to refresh her recollection in anticipation of her deposition.

VII. **Motion to Compel Machado's Rule 26 Disclosures, Interrogatory Responses, and Production of Documents; Motion for Protective Order Prohibiting Dissemination of Information Obtained in this Lawsuit; Cross-Motion for Discovery Pursuant to 17 U.S.C. § 1783 and Issuance of Apostilles**

Machado has long argued that he is entitled to invoke the Fifth Amendment privilege against self-incrimination in response to Mattel's discovery requests. Citing the Supreme Court case *United States v. Balsys*, the Court previously compelled Machado to appear for deposition and provide responsive testimony; in effect, overruling Machado's invocation of the Fifth Amendment. However, the Court admonished Mattel to refrain from using this case as a subterfuge for the enhancement of the criminal prosecution, in which Mattel is the complaining (and cooperating) witness. Specifically, this Court made reference to *Balsys*' thoughtful analysis of three English cases that informed the development of that country's jurisprudence on the right against self-incrimination. *Balsys* compared *King of the Two Sicilies v. Willcox*, 1 Sim. (N.S.) 301, 331, 61 Eng. Rep. 116, 128 (Ch. 1851), which denied the sanctuary of the privilege against self-incrimination to a defendant who feared foreign prosecution, to *United States of America v. McRae*, 3 L.R. Ch. 79 (1867), in which the English court held the opposite.

While recognizing that English jurisprudence on the right against self-incrimination does not definitively resolve, or necessarily inform, disputes about the scope of the Fifth Amendment, the Supreme Court nevertheless distinguished the two English cases on their facts. The Court noted that the defendant in *Willcox* was able to present no compelling reason why his testimony would be used against him in a foreign prosecution. In *McRae*, by contrast, the civil plaintiff also happened to be a sovereign entity capable of filing criminal charges against McRae in its own jurisdiction. *See Balsys*, 524 U.S. 666, 686-87, 118 S.Ct. 2218 (1998) (noting that *McRae* does not countenance a general application of the privilege against self-incrimination in cases involving foreign prosecutions but instead applies to circumstances in which "the party seeking to compel the testimony . . . was also the party that would prosecute any crime under its laws that might thereby be revealed").

*Balsys*, of course, held that the Fifth Amendment privilege against self-incrimination was unavailable to the defendant despite his "real and substantial" fear of foreign prosecution. *Id.* at 700. However, harkening to the *McRae* decision, the Supreme Court suggested a potential exception, whose validity and applicability is a source of great dispute between Mattel and Machado:

This is not to say that cooperative conduct between the United States and foreign nations could not develop to a point at which a claim could be made

MINUTES FORM 11 DOC                                          Initials of Deputy Clerk kp
CIVIL - GEN                                                  Page 7 of 11

for recognizing fear of foreign prosecution under the Self-Incrimination Clause as traditionally understood. If it could be said that the United States and its allies had enacted substantially similar criminal codes aimed at prosecuting offenses of international character, and if it could be shown that the United States was granting immunity from domestic prosecution for the purpose of obtaining evidence to be delivered to other nations as prosecutors of a crime common to both countries, then an argument could be made that the Fifth Amendment should apply based on fear of foreign prosecution simply because that prosecution was not fairly characterized as distinctly "foreign." The point would be that the prosecution was as much on behalf of the United States as of the prosecuting nation, so that the division of labor between evidence gatherer and prosecutor made one nation the agent of the other, rendering fear of foreign prosecution tantamount to fear of a criminal case brought by the Government itself.

*Balsys*, 524 U.S. at 698-99.

Mattel argues that the quoted language is *dicta*. But Machado doesn't argue that *Balsys* manufactured a rule of law that this Court must follow; rather, Machado's argument is that *Balsys* – the *only* Supreme Court case invoked by Mattel – is *by its own terms* factually inapposite to this case. In other words, while *Balsys* may have held that the Fifth Amendment doesn't categorically protect a defendant fearful of foreign prosecution, the scope of its holding didn't include prosecutions in which the United States played such an active role that the prosecution could not be "fairly characterized as distinctly 'foreign.'" *Id.* This type of prosecution would exceed mere evidence sharing agreements between the United States and a foreign government. *Id.* at 700 ("[T]he mere support of one nation for the prosecutorial efforts of another does not transform the prosecution of the one into the prosecution of the other.").

It is difficult to see how Mattel's cooperation – even active cooperation – in the Mexican prosecution of Machado is the type contemplated by the Supreme Court in *Balsys*. While Mattel and its attorneys may undermine the sovereign authority and independence of the Mexican government and its prosecutors by "preparing the criminal complaint[,] fil[ing] prosecution motions, oppos[ing] motions by the criminal defendants and prosecuting appeals in support of the Mexican prosecution," Opp. at 3 n. 1, Mattel doesn't purport to undertake this conduct on behalf of the United States Attorney's Office. Thus, this case is more akin to *McRae*, in which a foreign government pursued an extra-territorial civil action against the defendant, than it is to the exception carved out by *Balsys*. And *Balsys* expressly declined to adopt wholesale the English court's contribution to self-incrimination jurisprudence in *McRae*. Thus, *Balsys* requires this Court to overrule Machado's invocation of the Fifth Amendment and compel Machado to respond to Mattel's outstanding discovery requests forthwith. Mattel's Motion to Compel is GRANTED only insofar as Mattel requests that the Court OVERRULE Machado's invocation of the Fifth Amendment privilege against self-incrimination. The Court HOLDS IN ABEYANCE Mattel's request that Machado's remaining objections be overruled and ORDERS

counsel for Machado and Mattel to meet and confer telephonically in an attempt to resolve those objections.

Mattel also requests that the Court order Machado and MGA Mexico to provide testimony for use in the Mexican criminal prosecution. 28 U.S.C. § 1782 provides that a district court may order a person within its jurisdiction to provide testimony or evidence for use in a foreign or international tribunal. The statute codifies a basic principle of comity between courts in different countries, which makes Mattel's request all the more disingenuous. Though Mattel claims that the Mexican government has requested that this Court assist its fact-finding into the circumstances surrounding Machado's alleged misappropriation of trade secrets from Mattel de Mexico's offices, the functional overlap between the Mexican prosecutor's office and Mattel's outside attorneys is difficult to discern for reasons identified above. In other words, this case does not present a scenario in which a "foreign government or [foreign] court or agency" is receptive to assistance from the United States, since it is unclear whether the government's request(s) for assistance are being made on behalf of Mattel. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). Furthermore, Machado and MGA Mexico are both citizens of Mexico and they can be compelled to submit to examination and other forms of discovery by Mexican courts. While rules of foreign discovery do not necessarily bind the resolution of a request for assistance under § 1782, they nevertheless may be considered if it appears that the "§ 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions." *Id.* Mattel's request is DENIED.

Finally, Mattel requests that the Court certify by apostille (1) the deposition transcripts of Gustavo Machado, Mariana Trueba, Pablo Vargas, and Susana Kuemmerle (in both her individual and representative capacities); and (2) the compact disc (CD) that purportedly contains the Mattel trade secrets stolen by Machado, Trueba, and Vargas that is now in the possession of the Special Master for Electronic Discovery. Apparently, the Mexican prosecuting authority has requested the CD containing Mattel trade secrets in connection with the prosecution of Machado, Trueba, and Vargas.

"An 'apostille' is an international method for the verification of foreign documents similar to notarization." *Corovic v. Mukasey*, 519 F.3d 90, 93 n. 2 (2d Cir. 2008). The exclusive authority to certify a domestic record by apostille arises under Fed. R. Civ. P. 44(a), which incorporates the Convention Abolishing the Requirement of Legalization for Foreign Public Documents (the "Hague Convention"). Rule 44(a) provides that an official record is evidenced by an under seal certification made by a judge sitting in the district in which the record is kept. Fed. R. Civ. P. 44(a)(1)(A). The apostille "certif[ies] the authenticity of the signature" on any certificate placed on "public documents." *See* Hague Convention, Article 5.

Mattel's motion is hopelessly vague. The "examples" of the apostilles issued by the Clerk of the Court pursuant to Judge Larson's prior Orders, *see* Ex. B of Sarles Decl., are court orders that no doubt constitute "public documents" under the Hague Convention. *See* Hague Convention, Article 1(a) (defining "public document" to include "[d]ocuments emanating from an authority or an

official connected with the courts or tribunals of the State"). The deposition transcripts and CD containing trade secrets do not appear to fall under any of the four definitions of "public documents" and Mattel offers no argument why they should. Finally, the Hague Convention provides that an apostille shall be issued "at the request of the person who has signed the document or of any bearer." Hague Convention, Article 5. Mattel does not demonstrate that it has signed any certificate affixed to the CD (or the transcripts) and does not demonstrate that it is the "bearer" of either the CD or the transcripts. Mattel's request is DENIED.

Along these lines, the MGA Parties request that the Court issue a protective order precluding Mattel from "using, disclosing, disseminating, or publishing information obtained in this lawsuit for any purpose other than as is necessary for the preparation of *this lawsuit* for trial – *not* to further its prosecutorial conduct in foreign jurisdictions." Docket 8288 at 3 (emphasis in original). This request presents two questions: (1) does the existing Stipulated Protective Order already bar Mattel from using materials designated as "Confidential" or "Attorneys' Eyes Only" in the Mexican criminal prosecution; and, if not, (2) should a separate protective order be issued in order to preclude Mattel from using materials obtained during discovery in the Mexican criminal prosecution?

The Stipulated Protective Order does not bar Mattel from disclosing confidential and attorneys' eyes only materials in connection with an ongoing Mexican prosecution. The Stipulated Protective Order expressly provides that designated materials may be used for the purposes of "litigation," which means *inter alia* "participation in . . . *any* suit, motion, trial, appeal, hearing, review or other judicial proceeding." CV 04-9059 Docket 54 ¶ 4. Since the Mexican criminal prosecution – assuming it is ongoing – constitutes a "judicial proceeding," Mattel may use the discovery it has obtained in this lawsuit for the purposes of its participation in that prosecution.

Nor would a Protective Order be proper. Rule 26 provides that the court may, for good cause and to protect a disclosing party from annoyance, embarrassment, oppression, or undue burden, or expense, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Setting aside Mattel's mistaken conflation of the information contained in the CD with the CD *itself*, the MGA Parties have not shown that the disclosure of the CD and deposition transcripts to Mexican prosecuting authorities would result in annoyance, embarrassment, oppression, undue burden, or expense to the MGA Parties.

It is undoubtedly true that a court may issue a protective order against civil discovery sought for the purpose of circumventing restrictions on discovery in criminal cases. *See Degen v. United States*, 517 U.S. 820, 826 (1996). For example, courts routinely grant protective orders for the benefit of individuals subject to civil actions by the Securities and Exchange Commission, when those individuals are also being prosecuted or investigated by the Department of Justice. *See, e.g.*, *SEC v. Schroeder*, 2008 WL 152227, at *2 (N.D. Cal. Jan. 15, 2008). However, the protective orders issued in such cases precludes disclosure in a *domestic* criminal prosecution, not a foreign criminal prosecution

(as here).  The rules of discovery in domestic criminal prosecutions may be dissimilar from (unknown) rules of discovery in the Mexican criminal proceeding.  The MGA Parties commit the error of assuming that "restrictions on discovery" encompasses challenges in obtaining otherwise discoverable information – *i.e.*, the Mexican prosecuting authority's struggles to obtain a true copy of the CD that supposedly contains Mattel trade secrets.  But "restrictions" refers to *legal* restrictions, not factual restrictions such as a lack of resources.  *See Capital Engineering & Mfg. Co., Inc. v. Weinberger*, 695 F. Supp. 36, 41-42 (D.C. Cir. 1988) (discussing "restrictive guidelines" concerning criminal discovery) (cited with approval in *Degen*, 517 U.S. at 826).  And the MGA Parties have not shown that the Mexican prosecuting authority has requested the CD or the deposition transcripts (and that Mattel seeks to disclose that information) in an attempt to circumvent Mexico's criminal discovery rules.

The MGA Parties' Motion is DENIED.

Notwithstanding any of the above, Mattel and its attorneys have a choice to make.  If they seek to continue to use the discovery obtained in this lawsuit to fuel the criminal prosecution in Mexico, that is their prerogative under the Stipulated Protective Order.  But the Court will consider allowing Machado and the MGA Parties to depose Mattel's counsel to determine whether Mattel is complying with the terms of that Order, including: (1) using materials for the purpose of the litigation; and (2) not otherwise using designated materials in an improper attempt to encourage the issuance of arrest warrants in Mexico.  Finally, the Court reminds Mattel and its attorneys – yet again – to ensure that the criminal prosecution in Mexico does not interfere with the proper and efficient administration of this lawsuit, which it has already done by way of Mattel's distracting and ill-conceived request for the issuance of an apostille.  It is long past time for Mattel and its lawyers to focus on *this* case.

The Clerk shall serve this minute order on all parties to the action.