ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with: Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>**MGA PARTIES' REPLY IN SUPPORT OF MOTION TO COMPEL INSPECTION OF ORIGINALS OF CARTER BRYANT'S EMPLOYMENT AGREEMENT WITH MATTEL AND MATTEL'S COPYRIGHT APPLICATIONS FOR ANY BRATZ-RELATED WORK AND FOR SANCTIONS**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br>Trial Date: January 11, 2011 |

## INTRODUCTION

Mattel claims that Carter Bryant's original contract is missing. Mattel's document responses make no explanation. Mattel's 30b6 witness on the subject of Carter Bryant's agreements could offer no explanation. In response to this Motion, Mattel has offered no evidence explaining what happened to it, why or when it happened. Mattel's email offering inspection of a purported copy of the contract does not resolve this motion; if anything, it makes a court order to produce the document or certify the circumstances of its disappearance all the more important.

Bryant's Employee Confidential Information and Inventions Agreement is likely the single most important document in this case. The copies of this contract of adhesion that have been produced by Mattel to date are barely legible (as noted by Judge Trott at the Ninth Circuit hearing and as confirmed by Mattel's 30b6 witness). Mattel argued at the Ninth Circuit that the font size had been reduced as a result of the litigation process, but the document produced also appears to have been scanned or otherwise diminished in clarity for unexplained reasons. We cannot ascertain whether the copy produced in litigation is in fact a qualifying duplicate under Fed. R. Evid. 1001(4).

It is beyond peradventure that the content of the writing is in issue, thus triggering application of the Best Evidence Rule. What's more, the appearance of the content in that original document is directly relevant to the adhesion and unconscionability issues. What did Carter Bryant see before he signed? A mere facsimile signature cannot answer this question. Mattel seeks improperly to minimize the import of this issue. Under the Best Evidence Rule, Mattel may only rely on copies if they are actual duplicates, if it would not be unfair to do so, and if the originals were not destroyed in bad faith. Fed. R. Evid. 1001-1004. Mattel has not provided adequate document responses or other evidence explaining any of the facts pertinent to these issues.

1   The motion to compel inspection of the *original* agreement should be
granted; if Mattel cannot comply with this Order, then it should be required to file
sworn certifications explaining why not.

With respect to the copyright applications, to the extent that the originals
reside with the Copyright Office, Mattel must make its best copies available for
inspection. As documents are scanned and reproduced for production, they often
lose the sharpness and clarity of the documents prior to that reproduction. MGA is
entitled to see Mattel's best copies.

Finally, Mattel's attempt to cast aspersions on MGA fails. As usual, Mattel
adopts the reciprocity approach that has already been rejected innumerable times by
this Court. There is no parallel between MGA's conduct and that of Mattel. Mattel
should be sanctioned for failing to produce its duplicates sooner, and for failing to
provide any kind of explanation as to the absence of the original of the single most
important document in this case.

**ARGUMENT**

**I.   IF MATTEL CANNOT PRODUCE ORIGINALS OF BRYANT'S AGREEMENTS, IT MUST CERTIFY WHAT HAPPENED TO THEM.**

Mattel makes the remarkable and wholly unsubstantiated statement in its
Opposition that "Mattel does not have the original of the [Employee Confidential
Information and Inventions] Agreement" but that it "made its best copy of the
Agreement available for inspection during Phase 1 discovery." Mattel Inc.'s
Opposition to MGA's Motion to Compel Inspection of Originals of Carter Bryant's
Employment Agreement With Mattel and Mattel's Copyright Applications For Any
Bratz-Related Work and For Sanctions ("Opp.") at 1. How absurd. Mattel cites no
evidence for the occurrence of this inspection, nor does it produce any evidence at
all about what happened to the original document. Mattel's unsupported assertions
are no substitute for present production of the original for inspection, or, at the very
least, a sworn certification attesting to what happened to it.

1   Whether Carter Bryant surrendered not merely his freedom of employment, but also every idea he imagined during his own time on the basis of this contract of adhesion, drafted in such fine print that Mattel's own witness professed to be unable to read it clearly, is relevant.  It is certainly relevant to whether Bryant did—or could—understand the extraordinary scope of the rights he was purportedly signing away.  If the original Agreement were in fact no more legible than the purported duplicate Mattel has provided, the jury should be aware of that.   Mattel cannot sweep the matter under the rug by stating "Mattel does not have the original," while at the same time seeking extraordinarily high damages and ruinous equitable relief based on its interpretation of this Agreement.

**A.    Mattel Cannot Rely On A Duplicate If The Original Was Destroyed In Bad Faith.**

The Best Evidence Rule provides that "to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, by other rules prescribed by the Supreme Court, or by statute."  Fed. R. Evid. 1002.  Rule 1004 sets forth an exception if the originals have been lost or destroyed, *unless they were lost or destroyed in bad faith*.  Fed. R. Evid. 1004; *see also U.S. v. McGaughey*, 977 F.2d 1067, 1071 (7th Cir. 1992) ("before secondary evidence may be used, it must be demonstrated that the original was actually destroyed.").  The burden of proving the loss or destruction of the original Agreement falls on Mattel.  *Seiler v. Lucasfilm, Ltd.*, 613 F. Supp 1253, 1260 (N.D. Cal. 1984), *aff'd* 808 F.2d 1316 (9th Cir. 1986).  Moreover, Mattel should be required to demonstrate that the loss or destruction of the Agreement was not an intentional tactic to hide a barely-legible original.  Mattel must explain what happened to the original it claims it cannot locate and why it should be allowed to rely on the copy it has produced.

### B. Mattel Should Be Ordered To Provide A Sworn Or Certified Explanation For The Missing Original Of The Bryant Agreement.

MGA has long been seeking the Agreement from Mattel, and Mattel is obliged to explain what happened to it. For example, MGA long ago won a motion to compel Mattel to produce "all DOCUMENTS mentioning, referring or relating to BRYANT including, but not limited to, BRYANT's personnel file" and "all DOCUMENTS relating to Bryant's employment" which would include the subject agreement, back in 2007. *See* Dkt. No. 6818-42 at 56, 72 (Request No. 180, 258); Dkt. No. 6988-13 at 33-34 (Order Granting in Part and Denying in Part MGA's Motion to Compel Mattel to Supplement Responses and Produce Documents Responsive to First Set of Requests for Production of Documents and Things, dated September 12, 2007). The instructions accompanying the request define "DOCUMENTS" to include originals (Dkt. No. 6818-42 at 9) and require that if a DOCUMENT was, but no longer is, in Mattel's possession, custody or control, Mattel provide the following information:

> (a) The reason the DOCUMENT is no longer in YOUR possession, custody or control;
>
> (b) The person or entity, if any, who has possession, custody or control or, if unknown, so state;
>
> (c) If the DOCUMENT was destroyed or otherwise disposed of, state (i) the manner of disposal (*i.e.* destruction, loss, discarding or other means of disposal); (ii the date of disposal); (iii) the reason for disposal; (iv) the person authorizing disposal; (v) the person disposing of the DOCUMENT; and (vi) the name and address of the most recent custodian of the DOCUMENT.

Dkt. No. 6818-42 at 4. Mattel's third supplemental responses represent that "Mattel has produced those responsive, non-privileged documents that it was able to locate after a reasonable, good-faith search for and review of the files…" Dkt. No. 6818-47 at 10, 31-32. Mattel's response fails to account for any responsive originals that were, but no longer are, in Mattel's possession, custody or control, as required in the instructions accompanying the requests. Dkt. No. 6818-47 at 10.

Moreover, even in response to this Motion, Mattel has offered no sworn explanation of what happened to the original document.

Mattel should be ordered to provide for inspection of the original Bryant Agreement. If Mattel cannot fulfill this order, then it should be required to supplement its document responses and provide a sworn certification to the Court explaining in detail why not. Mattel should be ordered to provide evidence that what it has produced is a true duplicate, and to provide the circumstances of the disappearance of this critical document. The meaning of the contents of the document are incontrovertibly the central issue of this case, and the appearance of the contents of the document is also directly relevant to the construction and enforceability of those contents in light of the adhesion and unconscionability issues.

The Court should not countenance Mattel's attempt to make light of this singularly important document and its destruction.

## II. MATTEL'S ATTEMPTED TIT-FOR-TAT ARGUMENTS TO AVOID SANCTIONS ARE MERITLESS.

In its typical fashion, Mattel opposes MGA's motion and tries to avoid sanctions by attempting to throw mud at MGA. As Mattel even acknowledges, however, in every instance Mattel complains about it was accorded the opportunity to inspect the original documents or items that requested—unlike here.

First, Mattel misrepresents the facts regarding its inspection of materials that support MGA's packaging claim. Attorneys for Mattel first inspected these materials on June 24, 2010 for three hours, not on July 27, 2010 as Mattel contends.[1] Counsel again inspected the materials over the period of July 27 through July 30 and again on August 4. These dates were agreed upon by the parties based on the availability of a summary document that was not finalized until July 26,

---

[1] 6/24/2010 emails from T. Buchakjian to D. Rutowski.

1  2010, and the timing of Ninette Pembleton's deposition, which occurred on July 29,
2  2010.[2]

3  Next, Mattel's complaints regarding the dolls marked as exhibits during the
4  Eckert deposition are equally inapposite. Mattel was able to view and inspect the
5  dolls on the day of Eckert's deposition. The delay in providing some of the dolls a
6  second time was due to a series of unfortunate mishaps, about which MGA
7  repeatedly informed Mattel and the Court, which related to transportation to and
8  from Los Angeles, where counsel for Quinn asked to hold the inspection, and the
9  apparent theft of one doll.[3] The dolls in question were ultimately provided for
10 inspection and currently reside in the parties' joint custody. And, in any event, they
11 are merely common products available in the marketplace and identified on both
12 the video and paper record of Mr. Eckert's deposition. They are not analogous to
13 the original Agreement that lies at the heart of this case and which only Mattel has
14 ever had in its possession, custody, or control.

15 Finally, Mattel blatantly misrepresents MGA's offer to inspect Mr. Larian's
16 original calendars. At approximately 2:50 p.m. on Friday, July 16, 2010, counsel
17 for MGA wrote to counsel for Mattel stating the originals were available for
18 inspection.[4] Mattel misleadingly casts this offer as MGA making the calendars
19 available during the week of the following Friday, July 23, 2010. Opp. at 4. In
20 fact, MGA's offer came one week prior to the date cited by Mattel. Nevertheless,
21 Mattel has not yet arranged with MGA to inspect the originals, despite MGA's
22 offer three weeks ago. Mattel's attempt to cast aspersions at MGA is not only a red
23 herring but misrepresents the facts and fails entirely.

## CONCLUSION

25 For the foregoing reasons, MGA's motion should be granted and the
26 originals of the documents at issue should be produced for inspection by Mattel.

---

[2] 7/22/2010 email from D. Mingrone to M. Zeller and T. Buchakjian.
[3] 3/10/2010 Hearing Transcript at 27-28.
[4] 7/16/2010 Email from M. Molinski to M. Zeller.

To the extent that Mattel is unable to provide an original, Mattel should be compelled to explain the circumstances to MGA and to update its discovery responses accordingly.

Dated: August 6, 2010          Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____*/s/ Diana M. Rutowski*_____
　　　　　Diana M. Rutowski
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN