QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de
Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>          Defendants.<br><br>AND CONSOLIDATED ACTIONS<br><br>**[PUBLIC VERSION]** | CASE CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case CV 04-09059<br>Case CV 05-02727<br><br><u>Hon. David O. Carter</u><br><br>**MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR A PROTECTIVE ORDER FROM MATTEL, INC.'S NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) (SECOND PHASE 2 NOTICE)**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 9D<br><br>**Phase 2**<br>Discovery Cut-off: TBD<br>Pre-trial Conference: TBD<br>Trial Date: January 11, 2011 |

00505.07975/3620685.1

MATTEL'S OPP TO MGA'S MOTION FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...................................................................................1

FACTUAL BACKGROUND ......................................................................................1

ARGUMENT ...............................................................................................................1

I.  NO GOOD CAUSE EXISTS TO GRANT A PROTECTIVE ORDER............1

    A.  Topic 1 Seeks Relevant and Non-Duplicative Testimony On Illegal Downloading or Copying.......................................................2

    B.  Topics 2, 3 and 7 Seek Relevant and Non-Duplicative Testimony on MGA's Involvement in Mexico...........................................................4

    C.  Topic 6 Seeks Proper and Non-Duplicative Testimony On MGA's Unclean Hands Affirmative Defense.........................................7

    D.  Topic 8 Seeks Relevant and Non-Duplicative Testimony on the Process by Which the Name "Moxie" Was Selected...............................9

    E.  Topics 9-14 Seek Relevant and Non-Duplicative Testimony on Certain of MGA's Financial Transactions.............................................11

    F.  Topic 15 Seeks Relevant Testimony Concerning MGA's Efforts to Preserve Bratz-Related Assets ........................................................17

    G.  Topic 16 Seeks Relevant Testimony on Employment Agreements and is Not Unduly Burdensome ........................................18

CONCLUSION ........................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

Appleton Papers Inc. v. George A. Whiting Paper Co.,
  2009 WL 2870622 (E. D. Wis., 2009)......................................................3, 5, 14

Cippolene v. Liggett Group,
  785 F.2d 1108 (3d Cir. 1986)....................................................................18

DVD Copy Control Ass'n Inc. v. Bunner,
  116 Cal. App. 4th 241 (2004) ....................................................................17

Gossar v. Soo Line Railroad Company,
  2009 WL 3570335 (S. D. Ind., 2009) ..........................................................5

LaCount v. Hensel Phelps Construction Co.,
  145 Cal. Rptr. 244 (Cal. Ct. App. 1978) ....................................................23

Jones v. Childers,
  18 F.3d 899 (11th Cir., 1994) ....................................................................4

Mattel v. MGA Entertainment,
  --- F.3d -- 2010 WL 2853761 (9th Cir., 2010) ..........................................16

Motsinger v. Flynt,
  119 F.R.D. 373 (M. D. N. C. 1988).............................................................1

Religious Technology Center, v. Netcom On-line Communication Services, Inc.,
  923 F. Supp. 1231 (N.D. Cal. 1995)..........................................................18

Sabre v. First Dominion Capital, LLC,
  2001 WL 1590544 (S. D. N. Y., 2001)...............................................3, 5, 14

Surgidev Corp. v. Eye Technology, Inc.,
  648 F. Supp. 661 (D. Minn., 1986)............................................................18

Taylor v. Shaw,
  2007 WL 710186, *2 (D. Nev., 2007) .......................................................18

Turner Broadcasting System, Inc. v. Tracinda Corp.,
  175 F.R.D. 554 (D. Nev., 1997)................................................................18

UniramTech., Inc. v. Monolithic Sys. Tech., Inc.,
  No. 04-1268, 2007 WL 915225 (N. D. Cal., 2007)....................................6, 8

## Statutes

Cal. Civ. Code §3426(a)............................................................................6

Cal. Civ. Code §3426(d)(2).......................................................................17

Rule 26(c)(1) ............................................................................................................1

## Other Authorities

Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial, § 11:1071 (Rutter's Group 2008) ........................................................................2

### Preliminary Statement

Yet again, MGA refuses to provide <u>Rule</u> 30(b)(6) witnesses, instead seeking a protective order on Topics 1-3 and 6-16 in Mattel's Second Notice <u>Rule</u> 30(b)(6) Deposition Notice (Phase 2) (hereafter "Second Phase 2 Notice").  MGA makes the sweeping claim that <u>all</u> these topics are duplicative of prior topics.  It disregards the plain text of the prior topics, unprepared witnesses providing incomplete testimony, and law holding that testimony in an individual capacity may not substitute for a corporation's binding <u>Rule</u> 30(b)(6) testimony.  Further, MGA's arguments of irrelevance are cursory and unsupportable.  The topics that Mattel has propounded are highly relevant to the claims at issue.  MGA has failed to meet its burden of demonstrating good cause for the granting of a protective order.  Topics 1-3 and 6-16 concern relevant issues and are not duplicative of any prior testimony given by MGA corporate designees. MGA's motion for a protective order should be denied.

### Factual Background

Mattel served its Second Phase 2 Notice on July 9, 2010.  It contains 17 topics.  Mattel agreed to amend the Notice so as to give MGA more time to respond, and served an amended Notice on July 23, 2010, noticing the deposition date for July 30, 2010.  MGA agreed to provide a witness on Topics 4, 5 and 17 and on July 30 moved for a protective order on Topics 1-3 and 6-16.

### Argument

**I.      NO GOOD CAUSE EXISTS TO GRANT A PROTECTIVE ORDER**

Pursuant to <u>Rule</u> 26(c)(1), MGA bears the heavy burden of demonstrating that good cause exists for the protective order.  <u>See</u> <u>Motsinger v. Flynt</u>, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition. Even when a party merely seeks a protective order staying a deposition, he still has a heavy burden of demonstrating good cause.")  MGA "must make a clear showing of a <u>particular and specific need</u> for the order." Schwarzer, Tashima & Wagstaffe, <u>Fed.</u>

1  Prac. Guide: Civ. Proc. Before Trial, § 11:1071 (Rutter's Group 2008) (emphasis in
2  original).  However, MGA's arguments of cumulativeness and irrelevance fail to
3  make that showing.

### A. Topic 1 Seeks Relevant and Non-Duplicative Testimony On Illegal Downloading or Copying

6  Topic 1 seeks testimony on:

> Any and all unauthorized or illegal downloading or copying of INTELLECTUAL PROPERTY, including Mattel's INTELLECTUAL PROPERTY, to CDs or other STORAGE DEVICES by [MGA].

9  MGA cursorily argues that this topic is "so … ill-defined" that MGA would
10 have to guess at its meaning, but MGA fails to point out purported ambiguities or
11 ill-defined terms in this clearly worded topic.  Mattel unambiguously seeks
12 testimony on illegal downloading or copying of intellectual property, including
13 Mattel's, in light of testimony of former MGA employees that MGA's IT department
14 committed widespread and systematic criminal copyright infringement for the
15 benefit of Isaac Larian by illegally downloading and copying software and movies.[1]
16 The topic seeks testimony on illegal downloading of both Mattel and non-
17 Mattel information.  Unable to contest the relevance of testimony on illegal
18 downloading of Mattel information, MGA asserts that such testimony would be
19 duplicative of Ken Lockhart's Rule 30(b)(6) testimony and of testimony by the five
20 individuals who are alleged to have actually done the illegal downloading.  This is
21 wrong.  First, a review of the topics as to which Mr. Lockhart testified clearly shows
22 that there is no duplication.  He testified on policies, practices and procedures

---

[1]   See Brian Wing Dep. Tr., at 881:6–18, 883:11–19 ( █████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████ ).

2

concerning digital information backup and use of transportable media.[2]  This has nothing to do with willful, unauthorized downloading of intellectual property of another.  Second, it is well-settled that individual testimony cannot be duplicative of corporate testimony.  The Court has recognized that "[t]he purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."  Dkt. 608 (citation omitted).  Corporate testimony "is substantially different from a witness's deposition as an individual.  A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity."  Sabre v. First Dominion Capital, LLC, 2001 WL 1590544, at *1 (S. D. N. Y., 2001); see also Appleton Papers Inc. v. George A. Whiting Paper Co., 2009 WL 2870622, at *2 (E. D. Wis., 2009) ("Corporate designees are commonly produced, and no doubt some of their testimony may be a re–hash of what's been covered elsewhere, but their testimony is the testimony of the corporation itself, and for that reason alone it may not be duplicative.").

Further, misreading an Order by the Court, MGA wrongly asserts that testimony regarding downloading or copying of non-Mattel intellectual property is irrelevant to claims or defenses in this action.  In the context of a dispute regarding Joe Tiongco's refusal to answer certain questions on self-incrimination grounds, the Court *declined* to address prematurely the merits of whether illegal downloading of non-Mattel copyrighted material may be admissible as relevant to establishing

---

[2]   Topic 42, Second (Phase 1) Rule 30(b)(6) Notice ("Second Phase 1 Notice") seeks: "Your digital information data backup policies, practices, and procedures, from January 1st, 1999 to the present, including without limitation the location and specifications of any media used to preserve your digital information, and the software, if any, used to preserve your digital information." Topic 46, Second Phase 1 Notice seeks: "Your policies, practices, and procedures regarding the use of transportable media that contains or are capable of containing digital information, including but not limited to floppy disks, compact disks, DVD's, USB drives, portable hard drives, digital cameras, and personal digital assistance."

MGA's and Mr. Larian's intent. Dkt. 7947 at 8.  The issue here is one of relevance – and not self-incrimination.  The fact that MGA's Vice President for IT was involved in a corporately-sanctioned scheme to commit wholesale criminal copyright infringement is directly relevant.  If, as it appears, MGA had a pattern and practice of disregarding the intellectual property rights of others, that is relevant to Mattel's RICO and trade secret claims and to establishing MGA's and Mr. Larian's intent. See F.R.E. 404(b) ("[e]vidence of other crimes, wrongs, or acts" may be admissible for purposes such as "proof of" "intent, preparation, plan, knowledge, identity, or absence of mistake or accident"); see also Jones v. Childers, 18 F.3d 899, 913 (11th Cir. 1994) (previous bad acts which were "not directly related to the case at hand" were nevertheless "properly offered … as relevant to establishing the continuity prong of the alleged RICO violation" and admissible pursuant to F.R.E. 401, 402, as well as 404(b) "because it demonstrates motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident").

## B.   Topics 2, 3 and 7 Seek Relevant and Non-Duplicative Testimony on MGA's Involvement in Mexico

Topic 2 seeks:

> The nature and extent of [MGA's] involvement in the MEXICAN PROCEEDINGS, including without limitation the IDENTITY and role of PERSONS involved on [MGA's] behalf.

MGA claims that this topic is duplicative of a previously-compelled topic on "MGA's communications with law enforcement" and "[t]he search and seizure of documents by Mexican authorities from MGA's Mexico City offices and related communications."  Motion at 9.  But while the "nature and extent" of MGA's involvement in the proceedings may include communications with law enforcement, they are likely not so limited.  Further, any testimony on the "search and seizure of the document" on October 27, 2005 is *not* the same as seeking testimony on the years of MGA's involvement in the Mexican proceedings, prior to and after the day

1  of the search. Thus, the previously-compelled topics are only a narrow subset of

2  Topic 2, at best.

3      Further, as set forth above, MGA's argument that non-Rule 30(b)(6)

4  depositions can be duplicative of corporate testimony is wrong on the law. See First

5  Dominion Capital, LLC, 2001 WL 1590544, at *1; see also Appleton Papers Inc.,

6  2009 WL 2870622, at *2. For its argument that individual testimony may substitute

7  for the company's Rule 30(b)(6) testimony, MGA relies on Gossar v. Soo Line

8  Railroad Company, 2009 WL 3570335 (S. D. Ind., 2009). In Gossar, the Magistrate

9  Judge granted a motion for protective order because for the topic propounded Rule

10 30(b)(6) testimony was neither proper nor efficient. Id. at *6 (the topic sought

11 "reported observations of the incident from your employees and/or crew members").

12 The deposition topic at issue here does not seek observations reported by

13 employees, as in Gossar, but binding testimony on the nature and extent of MGA's

14 *own* involvement in the proceedings against Gustavo Machado, Pablo Vargas, and

15 Mariana Trueba in Mexico. There is nothing improper or inefficient about this Rule

16 30(b)(6) topic, and it is within Mattel's right to seek corporate testimony on this

17 issue. See Dkt. 608 ("The purpose behind Rule 30(b)(6) is to create testimony that

18 will bind the corporation.") (citation omitted).

19     Topics 3 and 7 seek:

20         3. The nature and extent of MGA MEXICO's commercial, financial or
   other obligations that [MGA] satisfied or helped satisfy from 2004 and the
21 present.

22         7. The source and amount of funding [MGA] used for the creation,
   operations and payments of expenses and other obligations of MGA
23 MEXICO before March 31, 2005, including but not limited to (1) any
   transfers of value from [MGA] or any of [MGA's] affiliates to MGA
24 MEXICO, including the amount, date, source company, source account
   holder and source account number; (2) the identification of the bank or banks
25 and any account or accounts (by number) used by [MGA] to hold and/or
   disperse funds for any purpose; and (3) any transfers of value from [MGA] or
26 any of [MGA's] affiliates on MGA MEXICO's behalf to any creditor of MGA
   MEXICO, including the amount, date, source company, source account
27 holder, and source account number of any such transfer and the identity of
   any such creditor.

28

MGA misapprehends these topics.  They seek evidence related to Mattel's damages claims and personal jurisdiction.  First, testimony regarding the source, amount and continuity of capital and funding that MGA Mexico received from MGA in United States will show yet another connection between MGA Mexico and the United States.  This proof is relevant to the disputed personal jurisdiction defense.  See Court's Order on the Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 8423 at 26-30.  Second, establishing a foreign subsidiary is expensive.  It may be that MGA saved significant funds by hiring persons who stole and used Mattel trade secrets to start up MGA Mexico.  If use of those trade secrets saved money for MGA, i.e., unjustly enriching it, then those are damages that Mattel may seek to recover.  See Cal. Civ. Code §3426(a).

These topics are not duplicative of Category 8, since they have nothing to do with "MGA's payments to or through vendors, attorneys and others in Mexico relating to any actual or potential investigation or prosecution of MGA or its employees," compelled by the Court in its June 14 Order.  Cf. Motion at 10.  Unlike these topics, Category 8 focuses exclusively on payments relating to actual or potential investigations or prosecutions.  Further, MGA's counsel certainly acted as if Category 8 was far narrower when preparing Mr. Joliceour to testify on that category.[3]  Mr. Joliceour's preparation omitted any payments initially made by MGA for which MGA Mexico subsequently reimbursed its parent.[4]  These payments would obviously fall under Topic 3 and 7.  MGA fails to show that Topics 3 and 7 are *unreasonably duplicative* of Category 8.  See UniramTech., Inc. v. Monolithic Sys. Tech., Inc., No. 04-1268, 2007 WL 915225, at *2 (N. D. Cal.,

---

[3]  Moreover, Mr. Jolicoeur was unprepared. ███████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████

[4]  Jolicoeur Dep. Tr. at 2365:23-2367:5.

1  2007) (proper inquiry is not whether the noticed topic is duplicative, but whether it

2  is *unreasonably duplicative*") (emphasis in original).

3         MGA also claims that these topics are duplicative of Topics 2 and 5

4  propounded on MGA Mexico – topics on which MGA Mexico refuses to produce a

5  witness.[5]  MGA's argument ignores that the Court has previously held that testimony

6  from MGA Mexico designees does *not* substitute for MGA's corporate testimony.[6]

7  Arguing that topics propounded on MGA Mexico are duplicative because "at its

8  core, these topics seek testimony regarding intercompany financial transactions

9  between MGA and MGA Mexico," Motion at 10, misconstrues the purpose of a

10  Rule 30(b)(6) deposition, which is "to create testimony that will bind the

11  corporation." See Dkt. 608 (citation omitted).  Topics 3 and 7 seek testimony on

12  MGA Entertainment's corporate knowledge, not MGA Mexico's, and are *a priori*

13  not duplicative of any testimony MGA Mexico may give about the transactions.

14  MGA and MGA Mexico are separate corporate entities and defendants in this

15  action.  Unless MGA concedes that MGA, MGA Mexico and MGA Canada are not

16  distinct entities for purposes of proof, Mattel is entitled to *MGA*'s corporate

17  testimony on this topic.

**C.   Topic 6 Seeks Proper and Non-Duplicative Testimony On
MGA's Unclean Hands Affirmative Defense**

20  Topic 6 seeks:

21         6. The facts known by each witnesses who [MGA] ha[s] identified as
having knowledge of facts concerning, or on which [MGA] intend[s] to rely

22  to support, [its] unclean hands affirmative defense.

---

[5]  See MGA Mexico's Motion for Protective Order from Mattel's Second Phase 2 Rule 30(b)(6) Deposition Notice, dated August 5, 2010, Dkt. 8466.

[6]  See Dkt. 8104 at 5 (finding that there was "no evidence that MGA Mexico's 30(b)(6) designees interviewed any individuals other than former and present MGA Mexico employees," the Court compelled testimony by an MGA Rule 30(b)(6) designee).

1   MGA admits that the testimony sought is "highly relevant,"[7] yet argues that it has
2   already provided Mr. Stephen Schultz as a Rule 30(b)(6) designee to testify on "the
3   factual basis for MGA's affirmative defenses." Motion at 11. However, Mr. Schultz's
4   preparation on this topic was deplorable.[8] The deposition transcript, littered with
5   admissions of ignorance as to the factual basis for MGA's affirmative defenses,
6   illustrates the woeful deficiency of Mr. Schultz's testimony.[9] Testimony responsive to
7   Topic 6 would certainly not be *unreasonably duplicative*. See UniramTech., Inc., No.
8   04-1268, 2007 WL 915225, at *2 (N.D. Cal., 2007) (proper inquiry is not whether the
9   noticed topic is duplicative, but whether it is *unreasonably duplicative*") (emphasis in
10  original).

11      Moreover, the topic now at issue is far more particularized than that prior one
12  cited by MGA. Mattel is entitled to proper Rule 30(b)(6) testimony concerning the
13  facts on which MGA intends to rely to support its unclean hands affirmative defense.
14  MGA has listed hundreds of witnesses as knowledgeable on its unclean hands
15
16  _____

17  [7] See Motion at 11-12, FN 23. MGA argues that it would be inequitable to
    compel MGA to testify when Mattel has purportedly provided an unprepared
18  30(b)(6) witness on Topic 11. However, as Mattel explained in its opposition to
    MGA's motion to compel further testimony on Topic 11, Mattel's witness was
19  meticulously prepared and testified to all facts reasonably available to Mattel sought
20  by Topic 11. Further, MGA's *quid pro quo* argument is misguided. MGA's
    obligations under federal discovery rules are separate from Mattel's and each
21  discovery issue will be addressed by the Court on its own merits.

22  [8] Mr. Schultz only reviewed  the third and fourth amended answer and
    counterclaims, as well as some interrogatories. Schultz Dep. Tr. at 1377:10-
23  1381:16. MGA's attorneys did not give him any factual information. Schultz Dep.
24  Tr. at 1383:12-1384:1.

25  [9] For example, Mr. Schultz was unable to identify any steps MGA took to keep
    information confidential that MGA alleges, as part of its unclean hands affirmative
26  defense, Mattel obtained. Schultz Dep. Tr. at 1447:14-1460:8. When asked what
    steps he took to determine what MGA did to keep its information confidential, he
27  answered "None." Schultz Dep. Tr. at 1460:16-20. See also Schultz Dep. Tr. at
28  1384-1462 (Mr. Schultz's testimony on the unclean hands affirmative defense)

8

1  affirmative defense,[10] and it has consistently relied on that defense to obtain discovery

2  from Mattel.[11]  Mattel is entitled to know why MGA is listing the hundreds of witnesses

3  it has listed, including what knowledge these alleged witnesses purportedly have

4  relating to this case.  MGA has never explained this, and instead has sought to bury the

5  witnesses it actually intends to rely on a list that includes a morass of others.  This is

6  about MGA's affirmative defense and MGA's witnesses; Mattel is entitled to know

7  what MGA thinks these witnesses have seen.

8          MGA also claims that Topic 6 is premature because it is stipulated that Mr.

9  Larian will provide <u>Rule</u> 30(b)(6) testimony on "the factual bases supporting or

10  contradicting MGA's claims or allegations."  Motion at 11.  However, Mr. Larian's

11  testimony concerns MGA's claims, not its affirmative defenses, and thus will not

12  substitute for the testimony sought by Topic 6.

### D.   **Topic 8 Seeks Relevant and Non-Duplicative Testimony on the Process by Which the Name "Moxie" Was Selected**

15  <u>Topic 8</u> seeks testimony on:

> [MGA's] selection of the name 'Moxie' for a line of fashion dolls, including without limitation the solicitation or submission of such name by third parties and any other process by which [MGA] received and/or selected such name.

---

[10]   <u>See</u> MGA's Response to Mattel's Amended Supp. Interrogatory Regarding Affirmative Defenses, dated August 31, 2009.

[11]   <u>See, e.g.,</u> MGA's briefing prior to the Discovery Master's Order 89.  During Mr. Schultz's deposition, Schultz Dep. Tr. at 1397:17-1399:3, and in Mark Wine's July 21, 2010 letter, counsel for MGA also claimed that deposition testimony on Topic 6 is premature as MGA's Motions to Dismiss are pending and MGA has not yet responded to Mattel's FAAC.  This argument is clearly erroneous.  MGA did not make the argument in its moving papers that preceded the court's June 14, 2010 order.  At that time, MGA agreed to provide a witness "on the related issues of the factual bases for MGA's affirmative defenses," even thought it filed its motion to dismiss papers the next day.  Dkt. No. 7803.  MGA has been consistently relying on its unclean hands affirmative defense to obtain discovery from Mattel.  MGA cannot have it both ways.

1      MGA argues that this topic is cumulative of certain testimony provided by

2  Schuyler Bacon on June 21, 2010.  This is wrong.  The topics on which Ms. Bacon

3  testified on June 21, 2010 did *not* seek testimony on the process by which the name

4  'Moxie' was received or selected, but were geared toward eliciting information on

5  theft of trade secrets by, among others, Carter Bryant.[12]  Mattel alleges that Mr.

6  Bryant stole the name "Moxie" from Mattel and unlawfully shared it with MGA.

7  FAAC at ¶¶ 92-93, 134.  Testifying on topics regarding theft of trade secrets by Mr.

8  Bryant, Ms. Bacon testified that the source of the name was not Mr. Bryant, but Mr.

9  Larian.[13]  She testified that a company called "Open Pitch" submitted names for

10  consideration, but she was unable to answer questions about the process by which

11  the selection was whittled down to the name Moxie.[14]  Not surprisingly: Ms.

12  Bacon's preparation simply did not encompass what will be required to testify as to

13  Topic 8.  She spoke to Paula Garcia, Isaac Larian and Amy Blaire for "just a minute

14  or so,"[15] at no time inquiring into the process by which the name Moxie was

15

---

16    [12]  As limited by the Court, Ms. Bacon was designated to testify on "the theft of

17  trade secrets by Machado, Trueba, Vargas, Brisbois, Bryant, Salazar, Cabrera, and
Morales." Dkt. 8104 at 9.

18    [13]  <u>See</u> Bacon Dep. Tr. dated 06/21/2010 at 1512:9-11 (A  ...."I asked [Isaac

19  Larian] on the same day in regards to Moxie and who came up with the name, and
he said he was the one that came up with the name for Moxie.")

20    [14]  <u>See</u> Bacon Dep. Tr. dated 06/21/2010 at 1616:25-1617:12 (Q  Okay.  So

21  once these submissions were received by Open Pitch, do you know what the process
was that whittled the selection down to the name Moxie?  MR. MOLINSKI:

22  Objection.  Vague.  THE WITNESS:  No.  I'm not sure how it whittled down to the

23  name Moxie.  I know that there are e-mail exchanges with Isaac and with -- with
Amy, and there were -- again, they were my top three names are this.  You know,

24  Isaac had his -- what his thoughts would be for the name.  Ultimately, Moxie was a

25  decision -- the name was, actually, ultimately decided by Isaac, you know, as the
final say so on this is what the name is going to be.")

26    [15]  <u>See</u> Bacon Dep. Tr. dated 06/21/2010 at 1511:3-6 ("Q  Do you recall how

27  long your conversation with Paula Garcia was in preparation for your deposition
today?  A  Brief, just a minute or so."); <u>see also</u> <u>id.</u> at 1511:20-22 ("Q  Okay.  How

28  long did you speak to Mr. Larian in preparation for your deposition today?  A  Just a

MATTEL'S OPP TO MGA'S MOTION FOR PROTECTIVE ORDER

1  chosen.[16]  Thus, neither did the prior topics envision testimony on the process by

2  which Moxie was selected, nor was Ms. Bacon able to testify as to this process

3  when asked during her deposition.  Topic 8 is not duplicative and MGA must

4  produce a corporate witness to testify.

5         **E.     Topics 9-14 Seek Relevant and Non-Duplicative Testimony on**

6                **Certain of MGA's Financial Transactions**

7         MGA's claim that Topics 9-14 are cumulative of prior deposition notices is

8  also baseless.

9         Topic 9 seeks testimony on:

10        All distributions of money or property made by [MGA] to [MGA's]
    shareholders, family members of [MGA's] shareholders, or entities owned or
11   controlled by [MGA's] shareholders from January 2004 to the present.
    Without limitation, this Topic includes the distributions reflected on Exhibit
12   X to MATTEL's Fourth Amended Answer and Counterclaims, including the
    purpose of the distributions, the source(s) of the funds used for the
13   distributions, the process for authorizing the distributions and the
    DOCUMENTS that reflect the distributions.

14

15        MGA argues that this topic is cumulative of Topic 11 in Third Notice of Rule

16  30(b)(6) Deposition of MGA in Phase 1, which sought:

17        Payments of money or any other item of value that [MGA] have made
    to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac
18   Larian since January 1, 1999, including without limitation (a) the amounts of
    such payment and the equivalent dollar value of each item of value, (b) the
19   IDENTITY of each bank or financial institution account to which such
    payment was made and (e) the reasons for each such payment.

20        These topics concern separate issues.  Topic 9 seeks testimony on the

21  distributions of money made to MGA's "shareholders, family members of [MGA's]

22  shareholders, or entities owned or controlled by [MGA's] shareholders from January

23  _____
    minute or so."); id. at 1513:3-4 ("Q   And how long did you speak to Mr. Blaire?  A
24   Very brief, minute – less than a minute.")

25   [16]   Ms. Bacon asked Ms. Garcia only whether she had heard the name "Moxie"
    prior to late 2008, to which the answer was "no." See Bacon Dep. Tr. dated
26   06/21/2010 at 1619:23-1620:14.  Ms. Bacon asked Mr. Larian whether he was the
    decision-maker on the name Moxie, to which the answer was "yes." See id. at
27   1622:2-13).  Ms. Bacon also asked Ms. Blaire whether she came up with the name
    "Moxie," to which the answer was "no."  See id. at 1623:1-7.

28

11

2004 to the present." Topic 11 in the Third Notice, on the other hand, is not concerned with distributions to shareholders but rather sought testimony on payments MGA had made for or on behalf of "Isaac Larian of any family member" since January 1, 1999. More importantly, testimony on Topic 11 in the Third Notice was given more than three years ago, on June 5, 2007 – *before* MGA's financial misconduct came to light, *before* Mattel's RICO claims against MGA and the other members of the enterprise included fraudulent transfers and *before* MGA had produced Exhibit X, which is referenced in Topic 9.[17] Indeed, as recently as April 2010, the Court noted that there still "many questions remain unanswered" with respect to Mr. Larian's participation in the Wachovia-Omni transaction.[18] This was certainly the case in June 2007, and any testimony given then cannot be duplicative of what is sought by Topic 9.

MGA also argues that Topic 9 of the present Notice is duplicative of Topic 10 of Mattel's First Notice of Rule 30(b)(6) Deposition of MGA, Phase 2 ("First Phase 2 Notice"). Topic 10 seeks testimony on:

> PAYMENTS [MGA] ha[s] made in excess of $100,000 since January 1, 2004 to any PERSON, including without limitation the recipients thereof and reasons therefor.

Topic 9 of the current notice seeks *all* payments, not only payments in excess of $100,000, and seeks testimony not covered by Topic 10 of the First Phase 2 Notice. This difference is significant. For example, certain distributions in Exhibit X to the FAAC are smaller than $100,000, and would thus not be properly within Topic 10. In any case, Stephen Schultz, MGA's designee on Topic 10, was

---

[17]   Exhibit X was produced on November 30, 2009.
[18]   Dkt. 7712 at 7 (granting leave to amend the TAAC, noting that "not only was the extent of Larian's participation in the purported Wachovia-Omni transaction not disclosed to Mattel prior to the filing of the TAAC, but [recent depositions] should that many questions remain unanswered and several answers were only first provided during depositions.").

1  unprepared.[19]  He did not speak with any of the relevant persons, including Larian,

2  or any of Larian's family members or any of the trust administrators.[20]  Even though

3  Mattel has alleged indirect payments to former Mattel employees and Larian and his

4  family, Mr. Schultz testified that none of his preparation included educating himself

5  as to any such payments.[21]  Topic 9 is plainly not duplicative of Topic 10 in the First

6  Phase 2 Notice.

7           Topics 10-13 seek testimony on the following:

8           10. All actual or contemplated exchanges of money, property or
           property interests, including security interests in property and payments of
9           interest or principal, between MGA, on the one hand, and OMNI 808 or any
           of OMNI 808's past or present members, on the other hand, since January
10          2008.

11          11. Actual and contemplated agreements, contracts and transactions
           between MGA and OMNI 808, including without limitation the reasons
12          therefor and the negotiation thereof.

13          12. The uses of funds drawn down from any credit facility, or other
           similar agreement, between [MGA] and Wachovia, whether before or after
14          the assignment of Wachovia's interests to OMNI 808, including but not
           limited to the IDENTITY of any PERSON, other than [MGA], who received
15          any such funds, directly or indirectly.

16          13. Any consideration by [MGA] to purchase or otherwise acquire any
           or all of the Wachovia credit facility, or other similar agreement, from
17          Wachovia, and any efforts undertaken in connection therewith.

18          These topics are clearly relevant, since the legitimacy of the MGA's alleged

19  debt to Omni is directly pertinent to damages, including punitive damages and

20  because it significantly bears on MGA's net worth.  MGA, instead, argues that this

21  is duplicative of John Woolard's Rule 30(b)(6) testimony on March 26, 2010.  That

22  is incorrect.  Mr. Woolard testified only as to "MGA's knowledge regarding the

23  Omni/IGWT transactions and regarding any non-privileged information concerning

24

25    [19]  Topic 10 was rolled into Category 19 in Michael T. Zeller's March 2, 2010
26  letter.  MGA designated Stephen Schultz to testify on behalf of MGA.
     [20]  Stephen Schultz Dep. Tr. at 1074:23–1075:6.
27    [21]  Id. at 1012:14–17, 1054:14–22, 1057:17–21, 1059:12–20, 1061:12–1062:2,
28  1067:9–1068:16, 1075:7–10, 1076:10–15, 1101:17–25.

MATTEL'S OPP TO MGA'S MOTION FOR PROTECTIVE ORDER

1   consideration of bankruptcy."[22]  He was not prepared to testify about any

2   contemplated exchanges of money, property or security interests between MGA and

3   Omni 808 (Topic 10), about any actual or contemplated agreements or transactions

4   between MGA and Omni 808 (Topic 11), any uses of funds drawn down from any

5   credit facility, or other similar agreement, between MGA and Wachovia (Topic 12),

6   or any consideration by MGA to purchase or acquire the Wachovia credit facility

7   (Topic 13). ████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████  As became clear during the

10  deposition, the preparation was at best suspect: ████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████████

17       MGA again argues – unavailingly – that depositions of individuals with

18  personal knowledge as to "MGA's transactions involving the Wachovia credit

19  facility and Omni 808's acquisition thereof, including Isaac Larian, Neil Kadisha,

20  ──────────────────────

21  [22]  Woolard Dep. Tr., 03/26/2010 at 786:1-13.

    [23]  Woolard Dep. Tr., 03/26/2010 at 789-807.

22  [24]  Woolard Dep. Tr., 03/26/2010 at 791:21-797:16.

    [25]  Woolard Dep. Tr., 03/26/2010 at 834:11-835:1 ("

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████)

MATTEL'S OPP TO MGA'S MOTION FOR PROTECTIVE ORDER

Sheon Karol, Joseph Moininan, and Arsalan Gozini" and Mr. Woolard substitute for MGA Rule 30(b)(6) testimony on Topics 10-13. Motion at 15. The law is clear: it does not. See First Dominion Capital, 2001 WL 1590544, at *1; Appleton Papers Inc., 2009 WL 2870622, at *2. Furthermore, the Court has confirmed that issues regarding the Omni transaction are highly relevant to Mattel's RICO claims. The Court upheld Mattel's alleged scheme "to obstruct the judicial process and thwart the verdicts of the jury and Orders of the Court, including by failing to preserve Mattel's property,"[26] and the scheme "to nefariously conceal assets . . . through false or fraudulent pretenses."[27]  Even if unconsummated, the contemplated agreements are relevant to MGA's scheme to conceal assets via the Omni transaction because "mere 'intent to deprive the victim of money or property' . . . can give rise to a claim under the mail fraud and/or wire fraud statutes."[28]

Topic 14 seeks testimony on:

> [MGA's] ability between January 2004 and the present to satisfy YOUR debts as they came due, including but not limited to COMMUNICATIONS among and between some or all of LARIAN, PERSONS in [MGA's] finance, accounting and tax departments, [MGA's] auditors, and [MGA's] creditors regarding this topic.

MGA claims that Topic 14 is cumulative of Category 23,[29] previously propounded by Mattel, which the Court compelled as to "MGA's solvency or lack

---

[26] Order on Motions to Dismiss, Dkt. 8423 at 10.
[27] Id. at 11.
[28] Id.
[29] Category 23 sought testimony on:
  MGA's financial condition, including its solvency or insolvency, as set forth in Topic Nos. 34 of the First Phase 2 Notice, including any consideration given to any bankruptcy filing since January 1, 2007, as set forth in Topic No. 9 of the First Phase 2 Notice, and MGA's financial reports, as set forth in Topic No. 78 of the Fourth Notice."
  Topic 34 of the First Phase 2 Notice read:
  [MGA's]  financial condition, including without limitation revenues, profits, losses, assets, liabilities, balance sheets, profit and loss statements, financial statements, asset book value, and liquidity.
  Topic 9 of the First Phase 2 Notice read:
  Any plans [MGA] ha[s] made or consideration [MGA] ha[s] given to filing for bankruptcy since January 1, 2007, including without limitation

1    thereof" at or around the time of Omni 808 Investors, LLC's purported purchase of the

2    Wachovia debt.  Dkt. 8104 at 10.  However, Topic 14 is not cumulative because it

3    seeks also "communications" among Mr. Larian, MGA's finance, accounting and tax

4    departments, its auditors, and creditors regarding MGA's ability to satisfy its debts as

5    they come due.  Moreover, the Court's limitation of Category 23 was due to concern

6    that "discussions about MGA's solvency involved MGA's outside bankruptcy counsel

7    and [were] therefore protected by the attorney-client privilege." Dkt. 8104 at 10.  For

8    that reason, Topic 14 of the Second Phase 2 Notice only seeks communications with

9    internal non-legal departments, auditors and creditors, which are unlikely to involve

10   privileged communications.

11        To the extent that Topic 14 overlaps with Category 23, MGA's corporate witness

12   on Category 23, Stephen Schulz, was not only unprepared[30] ███████████████████

13   ████████████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████[31]  MGA must produce a

15   witness on Topic 14.  This topic is clearly relevant both to the scheme to defraud Mattel

16   through concealment of assets, as well as to obstruction of justice.  Mattel specifically

17   alleges that MGA made false statements to the Court regarding its financial condition

18   (FAAC ¶¶ 118-121) and this Court held that allegations "that MGA sought to deprive

19

20   _____

      [MGA's] consultations with financial advisors in that regard and [MGA's]
21    attempts to move, transfer or withdraw assets from MGA prior to any such
      filing.
22        Topic 78 of the Fourth Phase 1 Notice read:
      [MGA's]  monthly, quarterly and annual financial reports, including
23    financial statements (both audited and unaudited) for the years 1998 through
      the present, inclusive.
24   [30] ████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████

28   [31]  Schultz Dep. Tr. at 1331:6-1333:10, 1363:5-1364:9

1  Mattel of business or property through false or fraudulent litigation conduct . . . may be

2  cognizable under the mail fraud and wire fraud statutes."[32]

### F.   Topic 15 Seeks Relevant Testimony Concerning MGA's Efforts to Preserve Bratz-Related Assets

Topic 15 seeks testimony on:

> [MGA's] activities and efforts to preserve or enhance BRATZ-related assets, or the value of BRATZ-related assets, from January 2004 to the present.

MGA states that Topic 15 "is no doubt related to the constructive trust imposed in Phase 1." Motion at 16.  MGA ignores that the topic is highly relevant to Mattel's RICO claims against MGA, the issue of damages, and the affirmative defense of unclean hands.  Mattel alleges that MGA and the other members of the enterprise have "engaged in a scheme to unlawfully compete with Mattel … by obstructing efforts by Mattel and the Court to address and remedy this wrongdoing." FAAC at ¶ 123.  MGA's actions are relevant to the predicate RICO act of obstruction of justice.  See also Dkt. 8423 at 10 ("The alleged scheme also aimed 'to obstruct the judicial process and thwart the verdicts of the jury and Orders of the Court, including by failing to preserve Mattel's property.' ")  In addition, any losses to the Bratz brand that were *not* ordinary losses in the marketplace, but rather caused by conscious efforts to devalue Bratz to prevent Mattel from benefiting from it, should not be considered when assessing MGA's benefits from Bratz, as relevant to damages.  MGA's actions aimed at diminishing the value of the Bratz brand are also relevant to Mattel's unclean hands affirmative defense.

Next, MGA argues that Mattel is not entitled to Rule 30(b)(6) testimony on Topic 15 because Isaac Larian, Didier Pietri, and Paula Garcia have testified to

---

[32] Order on Motions to Dismiss, Dkt. 8423 at 10 ("The false or fraudulent statements, if any, were made to the Court in order to prevail in the litigation . . . . In other words, Mattel alleges that MGA sought to deprive Mattel of business or property through false or fraudulent litigation conduct.  This sort of scheme may be cognizable under the mail fraud and wire fraud statutes.").

1   some extent on this topic.  Motion at 16.  Again, individual witnesses cannot replace

2   a corporate designee.  What is more, Mr. Pietri and Ms. Garcia, were unprepared to

3   testify on the topic and could offer little testimony, whereas Mr. Larian simply did

4   not testify on the topic.[33]

5       MGA also argues that a protective order is warranted because the Court

6   previously held in abeyance Category 22, which sought testimony concerning:

7         MGA's support for and investment in Bratz, including as compared to
    before and after the acquisition of Little Tikes, Zapf, and Smoby and before

8     and after the development of Moxie and BFC, and any cannibalization of
    actual or planned Bratz designs, shelf space, licenses or other resources for

9     Moxie.

10   Topic 15, seeking testimony only on efforts to preserve Bratz-related assets from

11   January 2004 to the present, is obviously narrower than Category 22.  There is no

12   reason not to go forward with this narrowly-tailored and relevant topic now.

13       **G.**    **Topic 16 Seeks Relevant Testimony on Employment**

14           **Agreements and is Not Unduly Burdensome**

15     Topic 16 seeks testimony on agreements in use by MGA from 1975 to the

16   present between MGA and its employees or independent contractors governing

17        (a) the ownership or assignment of any original works of authorship or
    inventions of its employees or independent contractors, and/or (b) the use,

18     disclosure or protection of information that MGA considers to be confidential
    to which its employees or independent contractors were privy[.]

19

20

21   ————————————
  [33]  See Didier Pietri Dep. Tr. at 140:12-144:13

22

23   See Paula Garcia Dep. Tr. at 1431:9-1433:19

24

25

26   . Regarding Larian, MGA points to his January 20, 2010 testimony,

27   where there is no testimony even vaguely related to MGA's "activities and efforts to
  preserve or enhance BRATZ-related assets, or the value of BRATZ-related assets,

28   from January 2004 to the present. "

1    MGA claims that this topic is irrelevant.  However, MGA's understanding of its

2    agreements, which have similar wording to Mattel's agreements – and the agreement

3    signed between Mattel and Carter Bryant – are highly relevant to the claims at

4    issue.[34]  Industry practice with respect to the understanding of these employment

5    agreements will inform the interpretation of the inventions agreement between

6    Mattel and Carter Bryant.  See LaCount v. Hensel Phelps Construction Co., 145 Cal.

7    Rptr. 244, 253 (Cal. Ct. App. 1978) (noting that "[c]ustom and usage of words in a

8    certain trade are admissible to explain the meaning of the terms used in a contract.").

9          Further, this topic is also relevant to Mattel's trade secret misappropriation

10   claim.  MGA sought and obtained testimony regarding Mattel's employment

11   agreements starting in 1975.  See Dkt. 8079 at 8.  This topic is the mirror image of

12   that discovery.  The Court found that these employment agreements were relevant to

13   Mattel's trade secret misappropriation claim, and that the evolution of the

14   employment agreements may lead to the discovery of admissible evidence.  Id.

15   Topic 16 is similarly relevant.  One element of trade secret theft is that the

16   information was "the subject of efforts that are reasonable under the circumstances

17   to maintain its secrecy."  See Cal. Civ. Code §3426(d)(2).  MGA's efforts with

18   respect to its own confidential information are relevant to demonstrating that

19   Mattel's trade secret protection efforts were "reasonable under the circumstances."

20   The reasonableness of Mattel's efforts is not a stand-alone inquiry.  "The secrecy

21   requirement is generally treated as a relative concept...."  DVD Copy Control Ass'n

22   Inc. v. Bunner, 116 Cal. App. 4th 241, 251 (2004).  The steps taken by others to

23   protect their confidential information is relevant to assessing the reasonableness of a

---

[34]   E.g., compare Mattel Agreement 2(a)(M 0001596) "I agree to communicate
to the company as promptly and fully as practicable all inventions conceived or
reduced to practice by me (alone or jointly by others) at any time during my
employment by the company;" to MGA Agreement – ███████████████████
███████████████████████████████████████████████ (MGA2 0049553)

1   party's efforts to protect its own information.  See Religious Technology Center, v.
2   Netcom On-line Communication Services, Inc., 923 F. Supp. 1231, 1254 (N.D. Cal.
3   1995) (determining that plaintiffs' security efforts were reasonable under the
4   circumstances based upon review of security precautions taken by other, similar
5   entities); Surgidev Corp. v. Eye Technology, Inc., 648 F. Supp. 661, 693 (D. Minn.
6   1986) (applying California law, the court considered security efforts of others "in
7   the industry" to determine that plaintiffs safeguarded the secrecy of information ).
8   MGA's efforts to protect its confidential information through employment
9   agreements are thus relevant to establishing the reasonableness of Mattel's efforts,
10  and to countering MGA's attacks on Mattel's practices.  This topic is also relevant to
11  MGA's unclean hands defense, as it shows what information MGA considers
12  confidential and whether the information that MGA claims was taken by Mattel was
13  indeed protected as confidential by MGA.

14          In addition, MGA's claim that Topic 16 is unduly burdensome is
15  unsubstantiated by specific examples or articulated reasoning.  This does not satisfy
16  the Rule 26 test for a protective order.  See Cippolene v. Liggett Group, 785 F.2d
17  1108 (3d Cir. 1986).  Indeed, the Court has held that it has "long prioritized
18  depositions" for the very reason that it is less costly and burdensome.  Dkt. 8459 at
19  5.  A showing that discovery may involve "inconvenience and expense" does not
20  suffice to establish good cause for issuance of a protective order.  Turner
21  Broadcasting System, Inc. v. Tracinda Corp., 175 F.R.D. 554, 556 (D. Nev., 1997).
22  MGA certainly has not shown undue burden in light of what is at issue in this case.

### Conclusion

24          For the foregoing reasons, Mattel respectfully requests that the Court deny
25  MGA's Motion.

26
27
28

MATTEL'S OPP TO MGA'S MOTION FOR PROTECTIVE ORDER

1

2  DATED:  August 6, 2010          QUINN EMANUEL URQUHART &
                                   SULLIVAN. LLP

3

4                                  By
                                     Michael T. Zeller
5                                    Attorneys for Mattel, Inc. and Mattel de
                                     Mexico. S.A. de C.V.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21