ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone:   213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with: Nos. CV 04-9059 and CV 05-2727<br><br>**MGA PARTIES' REPLY IN SUPPORT OF THEIR OBJECTION TO REPORT AND RECOMMENDATION DATED JULY 19, 2010**<br><br>**Date: TBD**<br>**Time: TBD**<br>**Place: Courtroom 9D**<br><br>**Trial Date: January 11, 2011** |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................ 2

I.   MGA'S OBJECTION TO THE JULY 19 REPORT AND
     RECOMMENDATION IS TIMELY ................................................ 2

II.  THE PROPOSED SEARCH OF ARCHIVEONE IS UNDULY
     BURDENSOM AND COSTLY ...................................................... 3

     A.   The Special Master Erred By Finding ArchiveOne Reasonably
          Accessible ...................................................................... 3

          1.   The Sedona Conference cautioned that not all active
               media is accessible................................................... 4

          2.   The Sedona conference urged that courts consider factors
               beyond those presented by Zubulake ........................... 6

     B.   Mattel's Search Terms Are So Overbroad That They Negate The
          Advantage Of Keyword Searches........................................... 7

III. IF THE COURT FINDS GOOD CAUSE AND AFFIRMS THE JULY
     19 REPORT, MATTEL'S SEARCH TERMS SHOULD BE LIMITED
     AND COSTS SHOULD BE SHIFTED AND REMAINING
     OUTSTANDING ISSUE SHOULD BE ADDRESSED ............................... 9

     A.   Mattel's Searches Are Overbroad And Should Be Limited ................. 9

     B.   MGA Should Be Allowed To Conduct A Review Of Any
          Documents Retrieved By Mattel's Searches And Eliminate
          Duplicates........................................................................ 10

     C.   In Light Of The Special Master's July 19 Findings, The Costs
          Of Any Further ILS Searches Should Be Shifted To Mattel.............. 11

IV.  MATTEL HAS MADE NO SHOWING THAT MGA SHOULD BE
     COMPELLED TO UNDERTAKE AN UNDULY BURDENSOME
     AND COSTLY SEARCH OF ARCHIVEONE........................................... 12

V.   SANCTIONS ARE NOT APPROPRIATE ...................................... 14

CONCLUSION .................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Zubulake v. UBS Warburg, LLC*,
   217 F.R.D. 309 (S.D.N.Y. 2003)................................................................. 4, 6, 13

*Major Tours, Inc. v. Colorel*,
   2009 WL 2557250 (D.N.J. Oct. 20, 2009) ........................................ 12

## FEDERAL STATUTES

Fed. R. Civ. P. 26(b)(2) .............................................................................. 3, 4, 12

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................... 12, 13

## MISCELLANEOUS

*Electronic Discovery in Federal Civil Litigation:  Is Rule 34 Up to the
   Task?*, 41 B.C. L. Rev. 327, 337 (2000) .............................................. 6

## **PRELIMINARY STATEMENT**

The July 19, 2010 Report and Recommendation is the first time that the Special Master has issued a finding of fact regarding the accessibility of ArchiveOne. That finding is predicated on an error of law, namely the misapprehension that because the ESI resident in ArchiveOne consists of active data it must necessarily be characterized as readily accessible. The Special Master's reasoning is unsupported by case law, expressly cautioned against by the Sedona conference, and, most importantly, is contradicted by the Special Master's own finding that "the ArchiveOne database software ... presents substantial obstacles to mass recovery of large amounts of data."[1] Mattel, for its part, offers no facts in rebuttal save to repeat the now thoroughly discredited assertion that ArchiveOne must be fully searchable because its publisher represents that it is.

Nor has Mattel shown good cause that ArchiveOne should be searched despite its inaccessibility. Mattel's allegation that the Special Master has so found finds no support independent of the same reasoning that led the Special Master to error. If the Special Master found good cause, it was not the result of consideration of the appropriate factors, but flowed from the same misapprehension that led the Special Master to find ArchiveOne accessible in the first instance.

Nevertheless, if the Court affirms the July 19 Report and Recommendation, the Court should limit the number of searches MGA is required to run. As the recent results of running Mattel's approximately *seven hundred* searches across the Larian hard drives has demonstrated, Mattel's searches are anything but narrowly tailored. These searches retrieved more than two-thirds of the email and associated documents from the Larian drives, including irrelevant, privileged, and personal communications. There is no reason to expect that the results will be any different when applied to fifteen other custodians. Given the manifest overbreadth of

---

[1] Report and Recommendation of Electronic Discovery Master, dated July 19, 2010.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

Mattel's searches and the amount of data they are likely to retrieve when applied to fifteen custodians, the Court should limit searches to a reasonable number, as it has in the past.

## ARGUMENT

**I.    MGA'S OBJECTION TO THE JULY 19 REPORT AND RECOMMENDATION IS TIMELY.**

Mattel's allegation that MGA's failed to object to a finding of fact by the Special Master and thereby waived its right to object finds no support in the record.[2]   The July 19, 2010 Report and Recommendation is the first time that the Special Master issued a finding of fact regarding the Rule 26 accessibility of ArchiveOne.[3]   That finding is predicated on an error of law, namely the misapprehension that because "the ESI resident in ArchiveOne clearly consists of Active files" it must necessarily be characterized as "readily accessible" despite "substantial obstacles to mass recovery of large amounts of data" from ArchiveOne.[4]  The Special Master's reasoning is unsupported by case law, expressly disapproved by the Sedona conference, and is contradicted by clear evidence.  As MGA has long maintained, as the court-appointed experts at ILS have come to find, and as the Special Master reports, ArchiveOne is inaccessible under Rule 26.

Moreover, MGA never stipulated to running the approximately 700 separate searches Mattel proposes across ArchiveOne.[5]  Mattel claims that on March 17, 2010 the parties jointly informed the Court that MGA was "'agreeing to certain

---

[2] Dkt. No. 8467, Mattel's Opposition to the MGA Parties Objection to the July 19, 2010 Report and recommendation, ("Opp.") at 12.
[3] The January 21, 2010 Report and Recommendation, which Mattel claims was a finding of fact, Opp. at 11, expressly was not.  Rather, the January 21 hearing specifically notes that "[t]he Special Master has not conducted a fact finding hearing in [regard to the accessibility of ArchiveOne], and no finding has been made that would support or refute MGA's contentions."  Report and Recommendation of the Electronic Discovery Master, dated January 21, 2010 at 4.
[4] January 21, 2010 Report and Recommendation at 4.
[5] Opp. at 13.

terms' to be run on ArchiveOne." The March 17 joint brief says no such thing.[6]

Mattel further claims that six days later, on March 23, it submitted an "agreed-upon search term list," all of which MGA endorsed.[7] Not so. MGA could not have more plainly stated its objections to the staggering list of searches Mattel styles the "agreed upon ArchiveOne search terms."[8]

Consequently, MGA's objection is timely brought and, for the reasons set forth both in its Objection and below, should be granted.

## II. THE PROPOSED SEARCH OF ARCHIVEONE IS UNDULY BURDENSOM AND COSTLY.

### A. The Special Master Erred By Finding ArchiveOne Reasonably Accessible.

Mattel, like the electronic discovery Special Master, is captive to the false dichotomy that "active" files are always reasonably accessible under Rule 26 and "inactive" files are not. But, Rule 26 says nothing of the sort. Rather, the Advisory Committee specifically avoided classifying ESI as reasonably accessible or not based on the type of "source" or any particular technology, instead defining accessibility in terms of burden and cost.[9] Accordingly, the Special Master should have based his finding regarding the accessibility of ArchiveOne not merely on the type of source data, but also upon his explicit finding that searching ArchiveOne and retrieving emails "would require substantial time and incur significant expense

---

[6] *See* Opp. at 8. Nowhere does the March 17 Joint Brief of Mattel and the MGA Parties state that MGA "acknowledged that it was "agreeing to certain terms."

[7] Opp. at 8. Mattel furthermore miscasts MGA's objections to these terms as being limited to certain terms, "none of which appear on Mattel's agreed-upon search term list." Opp. at 9. This is untrue. MGA not only objected to the searches globally, but also specifically to numerous terms present on the "Mattel's agreed-upon search term list," including indefinite searches for documents mentioning employee names. *See* MGA Parties Objections to Proposed ArchiveOne Search Terms, dated March 23, 2010, at 6.

[8] MGA Parties Objections to Proposed ArchiveOne Search Terms, dated March 23, 2010.

[9] 2006 Advisory Committee Notes to Fed. R. Civ. P. 26(b)(2). *See also,* July 2008 Sedona Conference Commentary on Preservation, Management and Identification of Sources of Information that are Not Reasonably Accessible ("Sedona Conference Commentary") at 10.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

because of the internal limitations of the ArchiveOne database."[10]

The only authority Mattel cites for the proposition that ArchiveOne is accessible under the meaning of Rule 26 is *Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003). But, *Zubulake*, did not state an absolute rule that "active" media is always accessible. Just as *Zubulake* cautioned that it "makes no sense" to "automatically assume[] that an undue burden or expense may arise simply because electronic evidence is involved," *Id.* at 318, it makes no sense to automatically assume the opposite. Moreover, the *Zubulake* court was dealing with the ESI in front of it, not with ArchiveOne, and to the extent that the court addressed ESI more broadly, it spoke in generalities, not absolutes.[11] Nor was *Zubulake* the last word on e-discovery.

Five years after the *Zubulake* opinion, the Sedona Conference published its commentary on "Preservation, Management and Identification of Sources of Information that are Not Reasonably Accessible."[12] The Sedona Conference Commentary acknowledged the general framework established by *Zublake*, but cautioned that rote application of the categories of data sources *Zubulake* identified is insufficient: "consideration must be given to the unique complexities of retrieval and review of data from any given source, depending on the nature of the burdens involved."[13] Data, although "active," may nonetheless be inaccessible under Rule 26(b)(2) for at least two reasons relevant here.

### 1.    The Sedona Conference cautioned that not all active media is accessible.

First, the Sedona Committee noted that when Rule 26 was amended in 2006, three years after *Zubulake*, the  consensus in case law was that certain types of data

---

[10] July 19 Report and Recommendation at 4.
[11] The *Zubulake* court did not hold that active files are always accessible under Ruloe 26(b)(2) or that ESI was always easier to produce. *See, e.g., Zubulake*, 217 F.R.D. at 318 ("Electronic evidence is *frequently* cheaper and easier to produce") (emphasis added).
[12] Dated July 2008 ("Sedona Conference Commentary").
[13] Sedona Conference Commentary at 11.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

are not "accessible," including "information on databases whose retrieval cannot be quickly accomplished because the database software is not capable of extracting the information sought without substantial additional programming."[14] This is precisely the problem ArchiveOne presents. While ArchiveOne may be adequate for day-to-day use by individual users retrieving individual emails from links in their inbox, it is not reasonably capable of performing large searches or recovering large amounts of data, as the Special Master expressly found.[15]

The Special Master and ILS have only lately come to recognize ArchiveOne's limitations. In January, based on ILS's advice that "ArchiveOne is represented by its publishers to be fully searchable and not subject to the limitations identified by MGA," the Special Master requested that ILS conduct an independent search of ArchiveOne to address whether archived emails can be retrieved.[16] ILS has since learned the same lesson as MGA: ArchiveOne's publishers substantially oversold their software's capabilities.

After approximately six weeks of attempting to run Mattel's search terms across ArchiveOne, ILS abandoned the effort.[17] It is not the case, as Mattel claims, that the protocol proposed by the July 19 Report and Recommendation is intended merely to "expedite" the search of ArchiveOne.[18] The July 19 Report is an admission in all but name that ArchiveOne is, for all practical purposes, unsearchable. At the pace ILS was proceeding, Mattel's search terms would not have completed running until approximately December of next year, and at a cost

---

[14] *Id.* at 10.

[15] *See* Report and Recommendation of Electronic Discovery Special Master, dated July 19, 2010 ("Simply stated, the ArchiveOne database software, while allowing individual users (Custodians) to recover archived e-mail in the course or ordinary business without significant delay or difficulty, presents substantial obstacles to mass recovery of large amounts of data.").

[16] Report and Recommendation of Electronic Discovery Special Master, dated Jan 11, 2010 at 4.

[17] July 19 Report and Recommendation at 2 ("ILS commenced the process of searching ArchiveOne and soon discovered that retrieving the e-mail from ArchiveOne would require substantial time and incur significant expense because of the internal limitations of the ArchiveOne database.").

[18] Opp. at 10.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

1   of more than half a million dollars.[19]

2       The revised protocol the Special Master proposes will fare little better.  As

3   MGA noted in its objection, harvesting the complete contents of the mailbox of

4   even a single custodian is costly, time-consuming, and prone to error.[20]  Mattel fails

5   to offer a single fact disputing this, and instead repeats the now conclusively

6   disproved argument that ArchiveOne's "instruction manuals" claim that the

7   software is adequate to the task at hand.  In any event, even if the harvesting of the

8   complete contents of the mailboxes of fifteen custodians could reasonably be

9   accomplished, which MGA disputes, production of the contents of those mailboxes

10   would still be unduly costly and burdensome under the present circumstances

11   because of the second relevant factor urged by the Sedona Conference.

12           **2.   The Sedona conference urged that courts consider factors beyond those presented by _Zubulake_.**

13

14       The Sedona Conference recommended that courts consider six additional

15   factors besides those mentioned by _Zubulake_.  One of these, "search complexity,"

16   cautions that data, although stored in an active, on-line server, might nevertheless

17   be inaccessible under Rule 26 when searching, reviewing and producing it would

18   require expensive manual review.[21]  "Search complexity" is high when the

19   particular circumstances of the review and production of documents negate the

20   advantages inherent to active media.

21       The advantage of active media, as _Zubulake_ noted, is that generally it is

22   searchable so that responsive documents can be located quickly by the use of

23   appropriate keywords.[22]  Thus, if hundreds of thousands of documents can quickly

24

25

26

27

28

---

[19] After approximately 6 weeks effort at cost of approximately 40,000 dollars, ILS had run 7.9 percent of Mattel's search terms.  Dividing 6 weeks by .079 yields 75.95 weeks, or about a year and a half to complete the search.
[20] Dkt. No. 8407, MGA Parties' Objection to Report and Recommendation Dated July 19, 2010 ("Obj.") at 13.
[21] Sedona Conference Commentary at 11-12.
[22] _See, e.g.,_ 217 F.R.D. at 318, n. 50 ("By comparison [to the time it would take to search through 100,000 pages of paper], the average office computer could search all of the documents for specific words or combination[s] of words in minute,

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

1  be searched to select the only those relevant to discovery, searching electronic

2  documents can in theory be much easier and less expensive than searching a like

3  number of paper documents.

4      But, the advantage of active media disappears absent a meaningful way to

5  select relevant, responsive documents from a large and otherwise unwieldy dataset.

6  In such cases, "because the Search Complexity ... is high and manual review is

7  expensive, a more nuanced and complete view is that the source of [the data] is

8  relatively inaccessible for purposes of [Rule 26] analysis."[23]  This can occur when

9  the data, although active, is unsearchable.[24]  But, the advantage of active media is

10 no more evident when the data is searchable but the terms used to search it return so

11 many documents—and so many irrelevant, privileged, and personal documents—

12 that the end result is that the producing party has to manually review nearly the

13 entire contents of the database.  Put another way, the advantages of searchable data

14 decline in direct proportion to the breadth of the searches applied to it.  When the

15 searches are overbroad and do not meaningfully limit the documents that require

16 review, the advantages of active media disappear altogether.  Such is the case here.

17  **B.    Mattel's Search Terms Are So Overbroad That They Negate The Advantage Of Keyword Searches.**

18

19     MGA objected to Mattel's seven hundred so-called "agreed upon" searches

20 in their entirety because they were designed to uncover communications with

21 attorneys, were designed to obtain plainly irrelevant information, and even when

22 addressed to nonprivileged, relevant topics, were manifestly overbroad.[25]  For

23 example, Mattel proposes searching for all email mentioning "Brawer" from the

24 dawn of time to a period extending one year past the start of his employment at

25

26 perhaps less."), citing Shira A. Scheindlin & Jeffrey Rabkin, *Electronic Discovery in Federal Civil Litigation: Is Rule 34 Up to the Task?*, 41 B.C. L.Rev. 327, 337 (2000); *see also* Sedona Conference Commentary at 11.

27 [23] Sedona Conference Commentary at 11.
   [24] *Id.*

28 [25] MGA Parties Objections to Proposed ArchiveOne Search Terms, dated March 23, 2010 at 3-6.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

MGA.[26] This search, like similar searches addressed to more than *fifty* other individuals, is designed to sweep in *all* documents that so much as mention "Brawer", regardless of topic or relevance. This is facially overbroad. Moreover, the temporal scope of the request is plainly uncalled for, as this Court has repeatedly recognized.[27]

Running these terms is, in the context of a search of documents from Mattel's choice of fifteen custodians from ArchiveOne, unreasonably burdensome and costly. As Mattel admits, the "agreed upon" searches that Mattel proposed be run across ArchiveOne are "virtually identical to those for the Larian hard drives."[28] While these search terms may have been appropriate in the relatively limited universe of Larian's hard drives, they are unworkable in the larger context presented by a search of ArchiveOne.

MGA has already run Mattel's search terms across Isaac Larian's hard drives. The result of this search demonstrates that the terms are narrow only in theory. Mattel's search terms hit on more than 375,000 unique documents in the email resident on these hard drives, representing nearly seventy percent of the total number of email documents present.[29] *See* Rubin Decl., ¶ 5. These include not only irrelevant and privileged documents, but also personal emails that expose intimate details not only of Mr. Larian's life, but the lives of his friends, relations, wife, and children.

Because these documents were identified by approximately *seven hundred*

---

[26] Ron Brawer started at MGA in October 2004.  Mattel proposed the search "Brawer and before 10/31/2005."  *See* Report and Recommendation of Special Master, dated May 8, 2010, Appendix A.
[27] *See, e.g.*, Dkt. No. 7434 at 6 (order dated January 26, 2010 limiting production of price sheets related to Mattel's trade secrets claims against Machado, Trueba, and Vargas to "the six month time period before and the six month time period after" they left Mattel); Dkt. No. 8459 at 4-5 (order dated August 3, 2010 limiting RFP's directed to Brawer, Cooney and Contreras to the six months before and after each left Mattel).
[28] Opp. at 3.
[29] Email belonging to other custodians was also resident on the "Larian" hard drives.

1   individual searches, many of which are intricately parsed paragraphs, it is not a

2   simple matter to identify which searches are predominantly responsible for

3   identifying irrelevant,[30] privileged, and personal documents and to thereby narrow

4   the focus of the manual review.[31]  As a result, MGA cannot produce documents

5   identified by Mattel's search terms without a laborious page-by-page review of

6   every document the searches retrieved.

7        There is no reason to expect that the results will be any different when these

8   searches are applied to the contents of ArchiveOne.  Rather, it is manifest that even

9   if the entire mailboxes of fifteen custodians can be recovered from ArchiveOne, the

10  results of the subsequent search will produce nearly the entire contents of each,

11  necessitating the same manual review an additional fifteen times.

12       Here, MGA is faced with the worst of two worlds.  Not only is the retrieval

13  of data from ArchiveOne hampered by incapable software that makes it difficult

14  and expensive to access in the first instance, but even if the data could reasonably

15  be recovered and subject to search, the search terms that Mattel proposed are so

16  overbroad that they eliminate the advantages of keyword searching and impose a

17  costly, time-consuming second level of manual review.

18  **III.  IF THE COURT FINDS GOOD CAUSE AND AFFIRMS THE JULY 19
19       REPORT, MATTEL'S SEARCH TERMS SHOULD BE LIMITED
         AND COSTS SHOULD BE SHIFTED AND REMAINING
20       OUTSTANDING ISSUE SHOULD BE ADDRESSED.**

21       **A.    Mattel's Searches Are Overbroad And Should Be Limited.**

         If the Court affirms the decision of the Special Master, it should limit the
22
     search terms that MGA is required to run across ArchiveOne custodians, assuming
23

24   _____
     [30] With limited exceptions: MGA notes that many of the search terms, for example
25   those addressed to Alien Racers or Polly Pocket, are designed to retrieve documents
     regarding products that are no longer at issue in this litigation.
26   [31] MGA notes that some of these searches are so prolix and needlessly complicated
     that while they purport to be narrow, they are in fact anything but.  For example,
27   complex search no. 5 appears to be directed towards uncovering evidence of trade
     secret theft, but contains more than 70 search terms, the net effect of which hits on
28   **every** document containing the key word "Mattel."  Not only is this search
     overbroad, it renders redundant dozens of other searches that purportedly limit hits
     on "Mattel" to documents containing additional keywords.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

1   ILS successfully retrieves complete mailboxes.  As demonstrated by the result of

2   running these search terms across the email located on the Larian hard drives,

3   Mattel's searches are not narrowly-tailored.  Owing to the shotgun approach of

4   these searches, the documents they retrieve cannot be produced without an

5   expensive, time-consuming review of individual documents.  Although Isaac Larian

6   is admittedly a special case, there is every reason to believe that these searches, run

7   across fifteen individuals, some of whom will undoubtedly include custodians who

8   were at MGA for relevant periods as long or nearly as long as Isaac Larian, will

9   easily retrieve more than a million documents.

10         This Court has in the past limited the parties' submissions of proposed

11   searches to a more reasonable number.[32]  If the Court affirms the search of

12   ArchiveOne, a limitation on the untoward number of searches is appropriate here

13   given the number of custodians to be searched, the number of documents that are

14   likely to be retrieved from each, and the manifest overbreadth of many of Mattel's

15   searches.

16   **B.   MGA Should Be Allowed To Conduct A Review Of Any**
         **Documents Retrieved By Mattel's Searches And Eliminate**
17       **Duplicates.**

18         Moreover, the Court should address the two questions left open by the

19   Special Master's July 19 Report: whether MGA should be allowed to review the

20   documents for anything beyond privilege and whether retrieved documents should

21   be "de-duplicated."  Regarding the former, MGA cannot in good conscience

22   produce documents from fifteen MGA employees without reviewing them at least

23   to remove purely personal emails.  Additionally, given the fact that Mattel's search

24   terms have retrieved numerous documents that have nothing whatsoever to do with

25   any issue or product involved in this litigation, MGA should be allowed the

26   ─────────────────────
27   [32] *See, e.g.*, Dkt. No. 8133 at 7 ("Mattel shall deliver to MGA two lists of 25 *narrow* search terms, each of which consist of at least five words within quotation marks and no terms of linkage (e.g., "or" "w/") or modifiers.  One list shall be

28   designated for the Contreras hard drive and the other for the Castilla hard dirve.") (emphasis in original).

                                    -10-

1 opportunity to review documents for relevance as well.  Regarding the latter, a

2 search for the entire contents of the mailboxes of fifteen ArchiveOne custodians

3 will doubtless turn up the exact same emails multiple times.  MGA should be

4 allowed to deduplicate these documents based on their MD5 hash values.  This

5 would ensure that Mattel receives a copy of every relevant document or email, but

6 would spare MGA the burden of needlessly reviewing exact copies of the same

7 email once, twice, or a dozen times.

8       **C.    In Light Of The Special Master's July 19 Findings, The Costs Of Any Further ILS Searches Should Be Shifted To Mattel.**

9

10      The cost of any further ILS search of ArchiveOne should be shifted to

11 Mattel.  On January 21, 2010, the Special Master ordered that "an independent

12 search of ArchiveOne should be conducted by ILS to address the issue of whether

13 archived emails that have discovery relevance can be retrieved" and held that "[t]he

14 costs associated with the forensic review by ILS should be subject to reallocation

15 based on the results of the examination."[33]  Mattel complains that any determination

16 of costs should be put off.[34]  This is unnecessary.  The results of ILS's independent

17 search of ArchiveOne are evident in the July 19 Report.

18      The Special Master did not find that ArchiveOne was accessible because it

19 would not be unduly difficult or costly to search the server.  The facts show exactly

20 the opposite.  Six weeks' work by ILS at a cost of more than forty thousand dollars

21 resulted in the running of fewer than 8 percent of Mattel's searches and the outright

22 abandonment of the attempt to search ArchiveOne.  On the basis of ILS's report,

23 the Special Master expressly found that that "retrieving email from ArchiveOne

24 would require substantial time and incur significant expense," found that this was

25 due to "the limitations are placed on the recovery process by the search interface

26 built into the ArchiveOne software," and concluded that "the ArchiveOne database

27

28 _____
[33] January 21, 2010 Report and Recommendation at 4-5.
[34] Opp. at 18-19.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

1  software, while allowing individual users (Custodians) to recover archived e-mail in

2  the ordinary course of business without significant delay or difficulty, presents

3  substantial obstacles to mass recovery of large amounts of data."[35]

4       Mattel has no rebuttal except to continue to claim that according to the

5  ArchiveOne "instruction manuals, demos, and online support" that ILS received

6  (and billed MGA for), none of these difficulties are real and that the system

7  works—at least, in theory.[36]  It is time for Mattel to abandon theory and face facts.

8  The fact is that the July 19 Report's recommendation that ArchiveOne data is

9  accessible was the result of the Special Master hewing to the misapprehension that

10  because the data on ArchiveOne is active it must necessarily be accessible and not

11  an objective analysis of the difficulty or cost of retrieving the data.  In the real

12  world, ArchiveOne does not live up to its own hype.

13       Finally, it bears noting that the apparent inconsistency between the Special

14  Master's ruling and the facts regarding ArchiveOne presented by the July 19 Report

15  underscores the need for a Rule 706 Report concerning the nature and results of

16  ILS's efforts to search ArchiveOne.

17  **IV.   MATTEL HAS MADE NO SHOWING THAT MGA SHOULD BE COMPELLED TO UNDERTAKE AN UNDULY BURDENSOME AND**

18  **COSTLY SEARCH OF ARCHIVEONE.**

19       Mattel's allegation that the July 19 report correctly found that good cause

20  exists is unavailing.  A finding of good cause that discovery, although unduly

21  burdensome, should be compelled requires that Mattel establish that a consideration

22  of seven factors weighs in Mattel's favor.[37]  No such consideration is evident in the

23  July 19 Report, nor does Mattel point to any.  Rather, Mattel alleges that the finding

24  was based on the Special Master's opinion that "[t]o classify ESI maintained and

25  accessed in the ordinary course of business for all purposes as being 'not reasonably

---

[35] July 19 Report and Recommendation at 2, 4.
[36] Opp. at 14.
[37] Fed. R. Civ. P. 26(b)(2)(C); Advisory Committee Notes that accompanied the 2006 enactment of Rule 26(b)(2)(B); *Major Tours, Inc. v. Colorel*, 2009 WL 2557250 (D.N.J. Oct. 20, 2009).

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

1   accessible' for purposes of discovery appears to be contrary to the intent of FRCP

2   Rule 26, or, in the alternative, such circumstances would trigger the 'good cause'

3   exception set forth in the rule."[38]  Finding good cause on this basis is error.

4        First, whether MGA maintains emails on ArchiveOne for business purposes

5   does not answer the question of accessibility. *See Zubulake*, 217 F.R.D. at 321-22

6   ("Although a business purpose will often coincide with accessibility—data that is

7   inaccessible is unlikely to be used or needed in the ordinary course of business—the

8   concepts are not coterminous.").  Second, the relevant question is not whether it is

9   unduly burdensome to access individual emails in the day-to-day course of

10  business, but "whether *production* of documents is unduly burdensome." *Id.* at 318

11  (emphasis added).  MGA does not dispute that an individual user would have little

12  difficulty clicking on a link in her mailbox and retrieving a document stored in

13  ArchiveOne.  But that is hardly relevant to the issue of production.  ArchiveOne

14  would not reasonably enable the same user to search for all emails on a particular

15  topic saved to the server, as the Special Master expressly found: "[s]imply stated,

16  the ArchiveOne database software, while allowing individual users (Custodians) to

17  recover archived email in the ordinary course of business without significant delay

18  or difficulty, presents substantial obstacles to mass recovery of large amounts of

19  data."[39]  Nor would ArchiveOne reasonably allow that user to retrieve the entire

20  collection of her emails saved to ArchiveOne.[40]  Simply put, when it comes to

21  performing these large-scale tasks, ArchiveOne is little better than backup tapes, as

22  the facts presented by the July 19 Report and Recommendation make clear.

23       As to Mattel's contention that the Special Master impliedly found the factors

24  to weigh in its favor, Mattel is simply wrong.  The first Rule 26(b)(2)(C) factor

25  weighs in MGA's favor precisely because Mattel's search terms, as demonstrated

---

[38] July 19 Report and Recommendaiton at 4; Opp. at 16-17.
[39] July 19 Report and Recommendation at 4.
[40] *See* Notice of Lodging of Documents Filed Before Judge Smith in Connection with the MGA Parties' Objections to Report and Recommendation of Electronic Discovery Master (July 19, 2010), dated July 29, 2010, Ex. B at ¶¶ 16-19.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)

1    by the search MGA performed on the Larian hard drive, do little to eliminate

2    irrelevant, privileged, or personal emails.  As to the remaining factors, Mattel relies

3    solely on comments the Special Master made in January in the absence of any

4    finding of fact regarding ArchiveOne.  Furthermore, these comments were not in

5    any way addressed to a good cause analysis, but were made in the limited context

6    of authorizing a search "to address the issue of whether archived emails that have

7    discovery relevance can be retrieved."[41]

8  **V.    SANCTIONS ARE NOT APPROPRIATE.**

9       Mattel's request for sanctions should be denied.  MGA has not failed to

10  comply with any court order regarding ArchiveOne.  Nor has MGA in any way

11  interfered with the ability of ILS to conduct its search of ArchiveOne, nor has ILS

12  so alleged.  ILS has conducted searches of ArchiveOne, and continues to enjoy

13  access to the system.  If Mattel is not in possession of documents from ArchiveOne,

14  it is not because of any failure of MGA to permit ILS access to the system.  Rather,

15  it is because, as MGA has consistently stated and ILS has lately found first-hand,

16  ArchiveOne is extremely difficult, time-consuming, and costly to search.

17                         **CONCLUSION**

18       For these reasons, the MGA Parties request that the July 19 Recommendation

19  and Report be overruled.

20

21  Dated:  August 9, 2010        Respectfully submitted,

22                       ORRICK, HERRINGTON & SUTCLIFFE LLP

23

24                   By: _____

25                           Bryce W. Baker

                    Attorneys for MGA Parties and IGWT 826

26

27

28

---

[41] January 21 Report and Recommendation at 4.

REPLY ISO MGA'S OBJECTION TO JULY 19 REPORT
AND RECOMMENDATION
CV-04-9049 DOC (RNBX)