ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and ISAAC LARIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with: Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**MGA'S RESPONSE TO MATTEL'S MOTION OBJECTING TO THE DISCOVERY MASTER'S JULY 28, 2010 REPORT AND RECOMMENDATION RE *IN CAMERA* REVIEW**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 9D<br><br>Trial Date: January 11, 2011 |

**INTRODUCTION**

The current dispute with regard to the Discovery Master's denial of Mattel's request to submit an unsolicited and unauthorized set of 3,230 newly identified Challenged Documents is a transparent and disingenuous attempt for Mattel to somehow appear as the wronged party. The Discovery Master has treated both parties equally on the identical issue of whether email "chains" withheld by a party as privileged should be reviewed *in camera*: the Discovery Master gave each party the exact same opportunity to dispute any entry on the respective party's logs that it regarded insufficient. In fact, Mattel could have highlighted and requested *in camera* review of the exact 3,230 Challenged Documents on January 12, 2010, the negotiated deadline by which the parties must submit highlighted lists of disputed entries. Mattel, instead, chose over 3,000 *different* entries to submit on January 12, 2010. Mattel did not choose to submit the *other* 3,230 entries that it now moves on until January 19, 2010. Mattel thereby made the tactical and strategic decision not to raise this issue because Mattel, knowing full well that the parties were supposed to separately log email chains (and even insisting that MGA separately log email chains), failed to do so in its own revised privilege log.

Mattel itself provides no reason why it did not highlight entries on the basis of improperly logged email chains and submit them at the proper time: on January 12, 2010. Mattel certainly could have. There was no limit to the amount of entries that either party could dispute, nor was there any limitation with respect to highlighting entries for *in camera* review on the basis that an email chain was not properly logged (as evidenced by MGA's selection of Mattel entries on this basis).

Instead, Mattel simply cries foul play, and attempts to claim unfair treatment and prejudice. The treatment, however, is and has always been equal and fair: both parties had the same opportunity to highlight entries on each other's privilege logs, the same deadline by which to do so, and the same understanding with regard to the fact that email chains were supposed to be separately logged. The time has now

1  passed and, not only will MGA suffer great prejudice and expense if it is now

2  required to go back, collect, and submit an additional three thousand documents,

3  such a practice would ultimately result in great unfairness to MGA, who has not

4  been afforded the same opportunity to submit a second, unsolicited, unauthorized,

5  and supplemental list to the Discovery Master.  The privilege log war is over.

6  Mattel's objections to the Discovery Master's July 28, 2010 Report &

7  Recommendation regarding *in camera* review should be overruled in their entirety,

8  as the Discovery Master has already proposed.

9                          **BACKGROUND**

10 The Privilege Log War

11             As this Court is well aware, since the inception of this case Mattel and

12 MGA have been in an almost constant battle with regard to whether each party's

13 privilege logs are sufficient.  In fact, the time and expense required to litigate issues

14 relating to the privilege logs alone has been commented upon by almost every party

15 in this case at some point.  Accordingly, Discovery Master O'Brien sought to end

16 the disputes regarding each party's privilege log when he issued the October 30,

17 2009 Discovery Master Order No. 73, finding that each party "must comply with

18 the Federal Rule of Civil Procedure 26(b)5(A)(ii), and the December 3, 2009

19 Discovery Master Order No. 86, affording each party a unique and final opportunity

20 to dispute any remaining entry on the respective party's privilege logs.  Dkt. 7375

21 at 2, Dkt. 7381 at 2.  The Discovery Master reiterated this in his July 28, 2010

22 Report and Recommendation Re *In Camera* Review, noting that the "purpose and

23 intent" of Order No. 86 was to "finally and comprehensively resolve all challenges

24 based on privilege sufficiently in advance of trial to permit the parties to complete

25 discovery and prepare for trial in an orderly and efficient manner."  Dkt. 8401 at 3.

26             In Order 73, the Discovery Master ordered that each party review all of

27 its privilege logs one final time and "cure any deficiencies in such logs by

28 providing supplemental privilege logs to the opposing party within forty-five (45)

1   days from the date of this Order." Dkt. 7375 at 3. Further, in Order No. 86, the

2   Discovery Master created a strict schedule with specific tasks, requiring each party

3   to 1) "exchange all privilege logs mandated by Order No. 73 on or before

4   December 21, 2009," 2) to "meet and confer regarding any disputed issues

5   concerning the revised privilege logs on or before January 7, 2010," 3) to "provide

6   the Discovery Master with a highlighted spreadsheet that identifies the entries it

7   wishes to have reviewed by 5 p.m. on January 10, 2010," 4) to attend a hearing

8   "regarding any disputed issues that concern the privilege logs" on January 11, 2010,

9   and 5) to make available "each privileged document that is disputed" such that it

10  could be produced to the Discovery Master at the conclusion of the privilege log

11  hearing on January 11, 2010. While the ultimate dates of the schedule proposed by

12  Order No. 86 were modified slightly, the principle of finally resolving all

13  outstanding privilege log issues remained.

14  <u>The Parties Agreed that E-Mail Chains Were To Be Separately Logged</u>

15          Ironically, it was Mattel who first demanded that email chains were to

16  be separately logged.[1] *See* Declaration of L. Kieran Kieckhefer ("Kieckhefer

17  Decl.") Ex. 2. In fact, even the Discovery Master remembered Mattel's request that

18  email chains be separately logged, as he noted in the hearing on January 14, 2010 in

19  response to Mattel's surprising argument that Mattel should not be required to

20  separately log email chains, that "I do distinctly recall that Mattel took exactly the

21  opposite position around this table…. And so I understand that you're now taking a

22  different position than you took vis-à-vis MGA. But I'm telling you, you took

23  exactly -- your client took exactly the opposite position." January 14, 2010 Hearing

24  Tr. at 19:12-21:2.

25          MGA had previously agreed to separately log email chains in the

26  December Log (*see* Kieckhefer Decl. Ex. 2 at 1), it tasked a group of attorneys to

27  _____

28  [1] Notably, Mattel has never disputed the fact that it demanded that MGA separately log email chains.

do so, and it subsequently submitted a December Log, replete with easily

identifiable, separately logged email chains.  MGA also made Mattel aware, orally

and in writing, well before Mattel's final privilege log was to be submitted, that

MGA demanded Mattel separately log its email chains as it had forced MGA to do.

*See* Kieckhefer Decl. Exs. 1 & 2.  This demand was reiterated during the January 7,

2010 meet and confer, the first call wherein *both* of Mattel's privilege teams

(offensive and defensive) attended. *See* Kieckhefer Decl. Ex. 2.  To MGA's

astonishment on that call, Ms. Hutnyan refused to separately log email chains,

despite the fact that Mattel had previously demanded that MGA do so.  *Id*.  It was

apparent to MGA that Mattel's two privilege log teams only then realized the

complete inconsistencies of their positions on that January 7 meet and confer call.

Mattel Did Not Identify Entries In MGA's Privilege Logs On The Basis Of A
Failure To Separately Log Email Chains

As of January 7, 2010, Mattel was fully on notice of two key facts: 1)

that MGA would highlight Mattel privilege log entries on various grounds,

including Mattel's failure to log email chains; and 2) that MGA had only revised a

subset of its privilege logs.  This was 5 days prior to Mattel's January 12, 2010

submission of highlighted entries.  Thus, there is no dispute that Mattel knew that it

could have submitted these 3,230 new entries on January 12, 2010, when it was

due.  Accordingly, MGA can only conclude that Mattel made the tactical decision

not to select entries on MGA's privilege log on the basis of its own alleged failure

to separately log email chains.

At The January 14 Hearing, The Discovery Master Agreed With MGA: Both
Parties Were To Separately Log Email Chains

At the January 14, 2010 hearing regarding the parties' disputed

privilege logs, Discovery Master O'Brien made three key findings.  First, the

Discovery Master recognized that MGA's practice of selecting and revising the

deficient privilege log entries, as opposed to re-reviewing the entirety of all

1   privilege logs ever submitted, was a reasonable interpretation of his order. *See*

2   January 14, 2010 Hearing Tr. at 24:10-25:23 ("When I looked at my order, though,

3   it ordered a supplemental privilege log. So my order did not require one new, big

4   log and, therefore, I'm not going to hold [MGA] to it. It's a supplemental log.")

5        Second, as established above, the Discovery Master confirmed that

6   both parties were to separately log email chains. *See* January 14, 2010 Hearing Tr.

7   at 19:16-21:21. Finally, the Discovery Master then ordered that the entries MGA

8   had highlighted on the basis of a failure to separately log email chains should be

9   submitted for *in camera* review. *Id.* ("As far as the *in camera* review, however, I'm

10  going to review the [email chain] documents *in camera*.").

11  <u>Upon Losing The Dispute Re Email Chains, Mattel Then Seized An Opportunity</u>

12  <u>To Submit an Unsolicited New Submission Identifying Email Chains</u>

13       At the January 14 hearing, the Discovery Master also ordered Mattel to

14  clarify its January 12 submission by "indicating which highlighted entries involved

15  insufficient descriptions (as opposed to entries that Mattel believed were not

16  privileged on their face)." Dkt. 8401 at 2; *see also* January 14, 2010 Hearing Tr.

17  10:9-12:11. Rather than simply characterize its prior submission into the buckets as

18  ordered, Mattel also served an entirely new submission. *See* Kieckhefer Decl. Ex. 3

19  at 1. As noted by the Discovery Master himself in his July 28, 2010 Report and

20  Recommendation, "Mattel had not previously requested or obtained leave to

21  designate Challenged Documents after the parties' initial mutual exchange pursuant

22  to Order No. 86." Dkt. 8401 at 1. Further, nothing about the Discovery Master's

23  January 14 order requiring Mattel to clarify its prior submission could possibly be

24  interpreted as an authorization to serve, after the deadline, an entirely new

25  submission requesting an *in camera* review of thousands of additional entries. The

26  Discovery Master noted this in his July 28, 2010 Report and Recommendation:

27  "[i]n so doing, I indicated my conclusion (without explicitly so stating) that the

28  documents had not been timely designated and included in the parties' concurrent

- 5 -

exchange of logs designating Challenged Documents." Dkt. 8401 at 2-3.

The Discovery Master properly ignored Mattel's new request and excluded the additional documents identified by Mattel from his *in camera* review and the findings set forth in Order No. 98. Mattel then followed up on its request in late July, 2010, almost six months following the conclusion of the January 14, 2010 privilege log hearing.

## ARGUMENT

## I.    THE DISCOVERY MASTER CORRECTLY REJECTED MATTEL'S IMPROPERLY LATE JANUARY 19 SUBMISSION.

### A.    The Discovery Master Treated Both Parties Precisely The Same With Regard To The Email Chain Issue.

Mattel's claim that the Discovery Master has "treat[ed] the parties differently on the identical issue of email "chains" is patently false, as established by the facts above. Had Mattel identified these 3,230 entries on MGA's log *at the time Mattel's highlighted submission was due*, the Discovery Master would have reviewed those entries *in camera*. In fact, the Discovery Master reviewed *in camera everything* entry selected for review by *either* party. Accordingly, Mattel has provided no basis to conclude that there has been some uneven application of the law.

### B.    Mattel's Procedurally and Substantively Incorrect Submission Constitutes a Waiver.

Putting aside Mattel's claims that there was any uneven application of the law in this case, Mattel's January 19 submission was procedurally and substantively incorrect in its own right.   In the same two-page letter that was requested by the Discovery Master to clarify Mattel's prior submission, Mattel cleverly snuck in its request to challenge approximately 3,230 additional e-mail chains. Mattel's January 19 letter submission is deficient on its face.

To begin, *in camera* review is disfavored. *Newport Pacific Inc. v. County of San Diego*, 200 F.R.D. 628, 633 (S.D. Cal. 2001). The Ninth Circuit requires that a

party contesting assertions of privilege satisfy the two-step test under *United States v. Zolin*, 491 U.S. 554 (1989), before an *in camera* review can be ordered. The standard in *Zolin* applies for consideration of *in camera* review requested for any reason. As the court held in *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992), "we find that the standard established in *Zolin* for crime-fraud in camera review applies equally well when a party seeks *in camera* review to contest assertions of the privilege."

The *Zolin* two-part test involves both legal and discretionary factors. Under the first prong, the party opposing the privilege must first show a factual basis sufficient to support a reasonable, good faith belief that non-privileged documents are being withheld. *Zolin*, 491 U.S. 554 at 572; *In re Grand Jury Investigation*, 974 F.2d at 1074. As the Ninth Circuit further explained in *United States v. Jara,* 973 F.2d 746 (9th Cir. 1992), this threshold requirement is designed to make sure that the important policy goal of "protecting open and legitimate disclosure between attorneys and clients" is not compromised by readily allowing *in camera* review of privileged materials. *Jara,* 973 F.2d at 749.

Once the *Zolin* first-step legal threshold of a good faith basis to believe there are problems has been met, there are several additional discretionary factors that must be considered before a court decides to conduct an *in camera* review. In particular, a court is required to consider at least the three factors enumerated by the Supreme Court in *Zolin*, including: (1) the volume of materials the court has been asked to review, (2) the relative importance to the case of the alleged privileged information, and (3) the likelihood that the evidence produced through *in camera* review will establish that information is not privileged. *Zolin*, 491 U.S. at 572.

Mattel has met neither the legal nor discretionary requirements of *Zolin* for *in camera* review of these new documents. Mattel has provided absolutely no basis to justify why *in camera* review of these 3,230 documents would yield any evidence that establishes why *in camera* review is necessary. In

1   fact, Mattel states—in one sentence—the only possible explanation for why *in*
2   *camera* review is warranted: the fact that "MGA has not broken out and logged on
3   an e-mail-by-e-mail basis as the Discovery Master has determined is required."
4   Kieckhefer Decl. Ex. 1 at 1. Mattel has provided no indication, nor does it have
5   one, that such entries are not privileged. Mattel only disputes a technicality, and
6   such technicality could have and would have been resolved if Mattel had raised
7   these issues in the prior meet and confers. Mattel's one-sentence request is a
8   patently insufficient basis upon which, unsolicited and unauthorized, Mattel may
9   request the *in camera* review of approximately 3,230 privilege log entries.

10   **C.   MGA Will Suffer Great Prejudice If Mattel Is Afforded A**
11   **Supplemental Submission.**

12   Further, Mattel's failure to timely request such *in camera* review is
13   important because of the prejudice MGA will face if Mattel's January 19 request is
14   granted. MGA's own request for *in camera* review of documents improperly
15   logged as email chains arose following months of meet and confer communications
16   regarding such privilege log issues, not to mention the fact that MGA's request was
17   solicited and authorized by the Discovery Master, whereas Mattel's was not.
18   Accordingly, MGA put Mattel on notice well in advance of the January 12
19   highlighted submission—*see, e.g.* Kieckhefer Decl. Exs. 1 & 2—that MGA
20   intended to dispute improperly logged email chains. Mattel was afforded the
21   opportunity to review its logs and potentially cure any deficiencies before being
22   forced to submit such documents for *in camera* review.

23   In contrast, MGA was completely blind-sided by Mattel's
24   supplemental request as Mattel did not mentioned these 3,230 documents in any
25   meet and confer,[2] nor did it mention these documents at the January 14 hearing with
26   the Discovery Master. Had Mattel identified these entries at any time during the
27   meet and confer process, MGA at least could have determined whether they should

28   ---
[2] The point of the January 7 meet and confer was to afford the parties an
opportunity to discuss and hopefully resolve any remaining privilege log disputes.

MGA'S RESPONSE TO MATTEL'S OBJECTIONS TO DM
7.28/2010 R&R RE IN CAMERA REVIEW
CV-04-9049 DOC (RNBx)

be re-logged at the same time as the other documents. Further, even if Mattel had identified these new entries by the original deadline of January 12, MGA would have been able to determine as part of a holistic review for *in camera* submission whether the new set of Challenged Documents were entire or partial duplicates of other entries, as they may well likely be. But the sheer act of submitting this new, unauthorized and unsolicited list of entries that nearly <u>doubles</u> the January 12 submission, and then waiting six months while the Discovery Master reviewed everything else, provides MGA with no recourse other than involving the Court to resolve a dispute that MGA is only now aware existed.

Mattel's initial request for an *in camera* review of thousands of new log entries on January 19 was untimely and procedurally improper in that it put no one on notice of legal grounds for relief. Even if granted at the time, it would have resulted in undue burden and expense to MGA. But allowing the issue to lapse and then raising it more than six months *after* the original deadline, after the entire *in camera* review is completed, only multiplies the impropriety, unfairness, and burden on and directed towards MGA.

Further, Mattel's complete failure to adhere to well-established procedure, especially when given a full and fair opportunity to object to any one of MGA's many privilege log entries by January 12, should not be rewarded; instead, it should be properly dismissed as Mattel having waived its rights to challenge any additional entries on MGA's logs once both the agreed-upon January 12 deadline for challenges and the January 14 hearing date had passed.

## CONCLUSION

For the foregoing reasons, MGA respectfully requests that the Court overrule Mattel's objections to the Discovery Master's July 28, 2010 Report & Recommendation regarding In Camera Review.

Dated:  August 11, 2010                    Respectfully submitted,

                                                        ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                        By:  L. K. Kieckhefer / mcp
                                                        L. Kieran Kieckhefer
                                                        Attorneys for MGA ENTERTAINMENT, INC.,
                                                        MGA ENTERTAINMENT HK, LTD., MGA de
                                                        MEXICO, S.R.L. de C.V., and ISAAC LARIAN