QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case Nos. CV 04-09059 &<br>CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES TO THE MGA PARTIES (PHASE 2)**<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br><br>Discovery Cutoff: October 4, 2010<br>Pre-trial Conference: January 4, 2011<br>Trial: January 11, 2011 |

**PUBLIC REDACTED VERSION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA's argument that it should not be required to respond to Interrogatories 1-3 and 5 misconstrues the August 2, 2010 Order. While the Court dismissed the Thirteenth through Fifteenth Counterclaims as independently actionable claims, the Court repeatedly pointed to Mattel's allegations regarding the MGA Parties' concealment of assets as cognizable elements of its RICO claims. Mattel's allegations directed towards MGA's scheme to "transfer the ill-gotten gains from such thefts and wrongs, secret MGA assets and purportedly obtain priority over Mattel" are thus still highly relevant to Mattel's RICO claims – claims that clearly remain in this suit. Therefore, full responses to these interrogatories should be compelled.

MGA's argument that it should not be compelled to respond to Interrogatory 9 regarding spoliation is without merit. Because in MGA's view, Mattel already has more than enough evidence of spoliation, and further because MGA inconsistently believes Mattel's concerns about this substantial evidence of spoliation are "much ado about nothing," MGA need not provide any formal discovery response on its knowledge of spoliation at all. MGA has it backward. The fact that MGA seeks to dispute and minimize its spoliation makes full and complete discovery all the more imperative so that the jury may know the truth and so that Mattel is not sandbagged at trial. And the evidence Mattel has already obtained about MGA's spoliation— which, as recently-obtained evidence demonstrates, appears to be ongoing—only highlights the extent to which MGA should be required to formally explain the full scope of the spoliation.

# Argument

## I. THE COURT SHOULD COMPEL FULL ANSWERS TO INTERROGATORY NOS. 1-3 AND 5, WHICH SEEK RELEVANT INFORMATION

MGA ignores the Court's August 2, 2010 Order's holdings that Mattel's allegations of fraudulent transfers and concealment of assets are sufficient to support *prima facie* claims for RICO violations. While the Court dismissed the Thirteenth through Fifteenth Counterclaims (raised under California's UFTA and the California Corporations Code), the Court also explained that Mattel's allegations regarding the MGA Parties' concealment of assets are relevant to the MGA Parties' RICO liability.

Specifically, in finding that Mattel had sufficiently pled a substantive RICO claim under 18 U.S.C. § 1964(c) based on violations of § 1962(c),[1] the Court identified Mattel's RICO allegations directed towards the MGA Parties' scheme to "transfer the ill-gotten gains from such thefts and wrongs, secret MGA assets and purportedly obtain priority over Mattel."[2] The Court further noted that "a scheme to nefariously conceal assets can be a scheme to deprive another of business or property through false or fraudulent pretenses" and that "*mere 'intent to deprive the victim of money or property,' can give rise to a claim under the mail fraud and/or wire fraud statutes.*"[3] Accordingly, the Court held that Mattel's allegation that "the concealment of assets furthered a scheme to defraud Mattel of its property" forms a

---

[1] Section 1962 provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

[2] August 2, 2010 Order at 11 (Dkt No. 8423).

[3] Id. (emphasis added) (citing United States v. Ciccone, 219 F.3d 1078, 1082 (9th Cir. 2000)).

proper basis for establishing RICO liability.[4] Indeed, the Court repeatedly confirmed that Mattel's allegations regarding the MGA Parties' scheme to conceal MGA's assets were proper bases for Mattel's RICO allegations.[5]

Indeed, it is well-established that acts of fraudulent concealment of assets may violate RICO. RICO liability may attach where the RICO enterprise is neither criminal nor the cause of the injury alleged by the plaintiff. See Young v. Wells Fargo & Co., 671 F.Supp.2d 1006, 1028 (S.D. Iowa 2009) ("the [RICO] enterprise need only have a common or shared purpose, which may be legal or otherwise, and may be related to the predicate acts or not . . . .") (citations omitted)). Courts have declined to draw a distinction between acts of proximate causation that precede an injury and acts of concealment that follow it for purposes of establishing RICO liability. See, e.g., Levine v. Torino Jewelers, Ltd., 2006 WL 709098, *4 (S.D.N.Y. 2006) (holding that acts of concealment of injurious fraud can confer RICO liability on a defendant); American Arbitration Ass'n, Inc. v. DeFonseca, 1996 WL 363128 at *6 (S.D.N.Y. June 28, 1996) (holding that both embezzlement and money laundering were "integral to [the] success" of defendants' scheme, and that involvement in either one could form the basis of RICO liability). Further, "the RICO statute provides that its terms are to be 'liberally construed to effectuate its remedial purposes.'" Boyle v. United States, --- U.S. ----, 129 S.Ct. 2237, 2242 (2009) (quoting Pub. L. No. 91-452, § 904(a), 84 Stat. 947 (1970)). The facts

---

[4] Id. at 11.

[5] See id. at 20 ("The members argue that Mattel fails to set forth sufficient facts that show the existence of any unlawful agreement to violate RICO. This argument ignores literally dozens of paragraphs that allege inter alia . . . Omni, MGA, Larian, and IGWT combining to conceal MGA's assets . . ." (emphasis added)); id. at 20-21 (noting that Mattel's allegation that "Larian . . . solicited funds for Omni, and funded IGWT with his family members" properly supported Mattel's claims that the co-conspirators "constituted an associated-in-fact enterprise engaged in serial acts of racketeering.").

towards which Interrogatories 1-3 and 5 are directed are, as the Court found, integral to showing liability for Mattel's RICO claims.[6]

As such, the MGA Parties' acts of fraudulent transfers and concealment of assets, including their fraudulent distributions of hundreds of millions of dollars in the form of purported "dividends" to Mr. Larian and his family members and their scheme to create the bogus Omni financing front, remain highly relevant to Mattel's RICO claims. The Court's ruling on the motions to dismiss did not hold otherwise. Because Interrogatory Nos. 1-3 and 5 seek information related directly to those acts, they are relevant. The Court should therefore compel the MGA Parties to provide full and complete responses to those interrogatories.

Finally, MGA makes no effort to defend *any* of the multitude of meritless objections raised in response to the interrogatories, in essence conceding that the objections have no merit. It does not dispute that the excessive boilerplate objections to all the interrogatories are improper,[7] that the protective order in this case adequately addresses any confidentiality concerns,[8] and that the terms of the interrogatories are clearly and properly defined.[9] Those objections should be overruled, and MGA should be compelled to fully answer Interrogatory Nos. 1-3 and 5.

---

[6] The Court found that while the activities to which Interrogatories 1-3 and 5 are directed may not have (yet) caused "direct financial injuries" to Mattel, and thus may be insufficient to independently establish *standing* to allow Mattel to assert a RICO claim, those activities may still properly contribute to a finding of RICO *liability*, provided that standing is otherwise demonstrated, which it has been here. See August 2, 2010 Order, Dkt. No. 8423 at 11 (quoting United States v. Ciccone, 219 F.3d 1078, 1082 (9th Cir. 2000)) ("mere 'intent to deprive the victim of money or property' . . . can give rise to a claim under the mail fraud and/or wire fraud statutes").

[7] See Mattel's Motion to Compel at 5.
[8] Id. at 6.
[9] Id.

## II. THE COURT SHOULD COMPEL THE MGA PARTIES TO ANSWER MATTEL'S INTERROGATORY CONCERNING SPOLIATION

### A. The Substantial Evidence of Spoliation Highlights the Need for MGA to Respond to this Interrogatory

MGA argues that because Mattel has already uncovered substantial evidence of spoliation by the MGA Parties, they need not respond to an interrogatory seeking an explanation of the full extent of the spoliation. While MGA tries to dismiss the substantial spoliation that Mattel has uncovered as "much ado about nothing,"[10] Mattel has alleged otherwise, and the Court has held that MGA's spoliation is directly relevant to Mattel's claims.[11]

Far from justifying its discovery stonewalling, MGA's argument that Mattel's concerns about spoliation are "much ado about nothing" only serves to show why full and complete discovery on this key issue is particularly necessary. Mattel requires a response to Interrogatory 9 precisely to ferret out *the full breadth* of the MGA Parties' spoliation. In fact, the evidence shows that the spoliation by the MGA Parties has been so widespread and gone on for so long that the only reasonable way of learning the full extent of it is to require the MGA Parties to disclose everything they know about it. The following list is merely representative of just some of the spoliation Mattel is currently aware of:[12]

- In 2001, Larian instructed an MGA executive, Victoria O'Connor, to "white out" a fax header on Bryant's Bratz contract with MGA to

---

[10] Id. at 7.
[11] See February 27, 2008 Order at 1 (Dkt. No. 2362) ("Destruction of electronic evidence on hard drives is relevant to Mattel's claims, including specific predicate acts alleged in Mattel's RICO counterclaims.").
[12] See, e.g., Mattel's Motion for Review of Brian Wing's MGA Hard Drives and MGA's Email Systems for Evidence of Spoliation, dated March 9, 2010, at 4-10 (detailing evidence of MGA's spoliation of evidence).

1  conceal that Bryant had faxed the contract to MGA from Mattel's
2  Design Center.[13]

3  • Larian instructed O'Connor to ████████████████
4  ████████████████████████████████████████[14]

5  • MGA and Bryant removed Bratz drawings from a Mattel design
6  notebook in Bryant's possession, physically tearing the pages out of
7  their bindings, to conceal their creation at Mattel (which was proven by
8  the drawings' location in the notebook and determined by forensic
9  analysis).[15]

10 • While working with MGA, Bryant ran a program called "Evidence
11 Eliminator" to permanently delete electronic information on his drives
12 on several occasions, including just two days before inspections of his
13 hard drives were to take place in 2004 pursuant to Court Order in this
14 litigation.[16]

15 • The day of his resignation from Mattel to join MGA, Gustavo Machado
16 ran a program called "System & Internet Washer Pro" on a personal
17 computer, attempting to erase both information and communications
18 relevant to this case.[17]

---

[13] See Phase 1 Trial Tr. at 1325-1333.
[14] See MGA2 0070551-553.
[15] Trial Tr. at 3296-3298; 3304-3306; 3327-3328 (testimony of forensic document examiner that drawings had been removed from the notebook).
[16] Trial Tr. at 2682:17-25; 2691:19-2692:12.
[17] See M 0126025-187 (Expert Report of Andrés Velazquez Olavarrieta, Information Security Consultant and Digital Forensic Examiner, dated March 30, 2005) at M 0126069.

- On July 5, 2010, the Special Master found "substantial evidence indicating Machado engaged in continuing efforts to delete or 'wipe' relevant data from the Machado Hard Drives."[18]
- On July 12, 2010, in response to the Special Master's findings, International Litigation Services, Inc., the Court-appointed e-discovery consultant, uncovered evidence that a wiping software program called "BeClean" was repeatedly run on three of the four hard drives which were analyzed.[19]

As this shows, the evidence of spoliation has continued to mount. Much of this evidence was obtained only after repeated motions to compel by Mattel.[20] And MGA continues with its efforts to dispute, minimize and otherwise distance itself from this wrongdoing. Rather than obviating the need for further discovery on spoliation as MGA suggests, MGA's arguments and the evidence uncovered to date instead demonstrate that a full response to Interrogatory 9 is *the only way* for Mattel to understand the full scope of the spoliation that has marred this case from its inception, rather than through the teeth-pulling, piecemeal process which the MGA Parties' conduct has necessitated. As such, the MGA Parties' overbreadth objections are inapposite.[21] Given the breadth of the spoliation, the breadth of the request is entirely appropriate.[22]

---

[18] See Order on July 5 Report and Recommendation, dated July 12, 2010, at 2 (Dkt. No. No. 8239-1).

[19] See Report of Technical Advisor International Litigation Services, Inc., submitted to the Special Master for eDiscovery James Smith, dated July 12, 2010.

[20] See, e.g., fn. 18, supra; Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007 (Dkt No. 175) (compelling production of Bryant hard drives that led to discovery of "Evidence Eliminator" ).

[21] In the event the Court has any concerns regarding the scope of Interrogatory 9, Mattel is amenable to modifying the language of the Interrogatory consistent with the Court's June 14, 2010 Order limiting Mattel's deposition category regarding

(footnote continued)

**B.  MGA's Inadequate 30(b)(6) Testimony on Spoliation Necessitates a Substantive Response to Interrogatory 9**

Denis Jolicoeur's 30(b)(6) deposition testimony on spoliation was inadequate and forms no basis to deny Mattel's request for information regarding this topic. Tellingly, MGA does not quote so much as a single line of Mr. Jolicoeur's testimony as evidence that a response to Interrogatory 9 would in any way be duplicative of Mr. Jolicoeur's testimony. This is not surprising, as Mr. Jolicoeur was not adequately prepared to testify on this topic.

Mr. Jolicoeur was designated to testify as to "the willful destruction of documents, as they relate to the Mattel case."[23] Yet, Mr. Jolicoeur ███████████████████████████████████████████ He thus testified that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

spoliation to acts of destruction or spoliation done "*in order to* impair the object's integrity or availability for use in this proceeding." Docket No. 8104 at 3.
[22] The MGA Parties' throw-away "work product" objection (Opp'n at 7) can be dismissed out of hand, as under the MGA Parties' rationale, *any* discovery response would reveal "work product" since it would necessarily disclose information that counsel deems "relevant" to the action.
[23] Deposition of Denis Jolicoeur, Vol. 8, dated June 24, 2010, at 1777:16-23.
[24] Id. at 1778:13-19; 1793:17-23; 1794:11-17.
[25] Id. at 1779:12-24.

1 ████████████████████████████████████████████████
2 ████████████████████████████████████████████████
3 ████████████████████████████████████████████████
4 ████████████████████████████████████████████████
5 ████████████████████████████████████████████████
6 ██████████████████████████████

The law is clear that written interrogatories are not duplicative of deposition testimony. See Drouin v. Symetra Life Ins. Co., 242 F.R.D. 167, 170 (D. Mass. 2007) (holding that fact that information sought was given at deposition was not legitimate ground for refusing to provide answers to interrogatories on same questions); Starlight Intern. Inc. v. Herlihy, 186 F.R.D. 626, 641 (D.Kan. 1999) (holding that "[t]he mere fact of a deposition [on a similar topic] does not justify an objection that the interrogatories are duplicative"). That is particularly true where, as is clearly the case here, deposition testimony on a particular topic is inadequate. See Alexander v. F.B.I., 186 F.R.D. 137, 142-143 (D.D.C. 1998) (permitting party to "submit any questions for which they did not receive answers [during deposition] . . . in the form of interrogatories and requests for production); see also United States v. Mass. Indus. Fin. Agency, 162 F.R.D. 410, 412 (D. Mass. 1995) (requiring witness who did not "fully testify on all the topics set forth in the notice" to respond to written interrogatories and produce documents responsive to the topics).

Mr. Jolicoeur's ill-prepared testimony thus only confirms the need to compel the MGA Parties' response to Interrogatory 9. But even if MGA were correct in its argument (and it is not), this still would counsel in favor of granting Mattel's

---

[26] Id. at 1785:9-24.
[27] Id. at 1850:21-1851:1.
[28] Id. at 1815:4-6.
[29] Id. at 1816:23-1818:8.

motion. If MGA has *always* saved everything and destroyed nothing, then responding to this interrogatory should be effortless. They need respond only that "we back up everything and we don't destroy anything."

In short, requiring an answer to this interrogatory is necessary to ensure that MGA does not sandbag Mattel at trial and to ensure a fair process whereby the truth is ultimately found. If MGA truly claims to have done nothing wrong, it should be required to unequivocally say so under oath.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court compel the MGA Parties to answer fully Interrogatories Nos. 1-3, 5 and 9 of Mattel's First Set of Interrogatories to the MGA Parties (Phase 2).

DATED: August 17, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.