QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 and CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S REPLY IN SUPPORT OF OBJECTIONS TO THE DISCOVERY MASTER'S JULY 28, 2010 REPORT AND RECOMMENDATION RE *IN CAMERA* REVIEW**<br><br>Hearing Date:  TBD<br>Time:          TBD<br>Place:         TBD<br><br>Discovery Cutoff:      October 4, 2010<br>Pre-trial Conference:  January 4, 2011<br>Trial:                 January 11, 2011 |

00505.07975/3631627.10

REPLY ISO OBJECTIONS TO JULY 29, 2010 REPORT AND RECOMMENDATION

**Preliminary Statement**

MGA's response to Mattel's objections is disingenuous. In fact, the number of misstatements MGA makes to support its untenable "waiver" position is striking. Most critical is MGA's assertion, repeatedly made but never supported, that it was *Mattel* that first demanded separate logging of email chains.[1] Mattel waived, the argument goes, because it took the position that this logging was required and then tactically waited and delayed bringing its current challenges. In reality, Mattel did not demand that email chains be separately logged—not until MGA's contrary position was adopted by the Discovery Master. As the record shows, when MGA made this demand Mattel argued that there was ***no*** requirement that email chains be separately logged.[2] And as for MGA's statement that "Mattel has never disputed" MGA's claim that Mattel first demanded this relief, Mattel has disputed that same false MGA assertion so many times they can hardly be counted, including in the briefing of this

---

[1] See Opp. at 3 ("Ironically, it was Mattel who first demanded that email chains were to be separately logged"); Id. at n.1 ("Notably, Mattel has never disputed the fact that it demanded that MGA separately log email chains.").

[2] Compare Sept. 3, 2009 Letter from D. Rutowski to M. Zeller at 2 ("Please separately identify on the log each email in the 'email string' for which privilege is claimed and produce all emails in the string that are not part of the privilege communication.") with Sept. 14. 2009 Letter from D. Hutnyan to A. Hurst at 2 ("Your [September 3] letter does not include, and I am not aware of, any authority that requires Mattel to separately log each email in the string. If you have such authority, we would appreciate your identifying it."); see also Jan. 12, 2010 Email from Z. Krug to R. O'Brien et al. ("Jan 12 Krug Email") ("MGA's complaint regarding email chains is both unsupported and irrelevant. MGA's logs have many inadequacies and Mattel has challenged them on a variety of grounds, but Mattel made no attack, huge or otherwise, regarding this issue. Nor did the Discovery Master's orders direct the parties to log [their] email threads separately."); Jan. 14, 2010 Hearing Tr. at 19:16-20:7 ("[W]hen Ms. Hurst suggested that e-mail strings needed to be independently logged, I've looked for any order by you that was actually required for her or for anybody, and I didn't find it. And what's more, the authority that Ms. Hurst has been pointing to since September, the Chevron-Texaco case, is one that actually supports not separately logging e-mail strings. . . .").

issue that occurred before the Discovery Master and in its objections to the Court.[3] The representation that Mattel never disputed this critical misstatement that MGA insists on repeating is untenable and repeatedly refuted by the record.

Once MGA's false premise is rejected, there can be no doubt that the Discovery Master's Recommendation is erroneous. MGA all but concedes the merits of Mattel's objections. Thus, MGA concedes that "the Discovery Master confirmed that both parties were to separately log email chains" at the hearing and held that a failure to comply justifies *in camera* review. (Opp. at 5.) MGA nowhere disputes, and thus concedes, that it has not complied with this requirement as to the entries at issue and instead chose to only partially comply even as it was seeking to fully impose it on Mattel. And MGA concedes that, in light of these first two points, "[h]ad Mattel identified these 3,230[4] entries on MGA's log at the time Mattel's highlighted submission was due, the Discovery Master would have reviewed those entries in camera." (Opp. at 6.)

All that MGA has to hang its hat on, then, is a waiver claim where the argument is that Mattel waived by making an argument nine months before the discovery cutoff and a mere *five days* after the operative rule of law—which had been disputed and litigated—was established for the first time by the Discovery Master. Unsurprisingly, MGA has never cited any authority remotely supporting that draconian sanction and does not do so in its response. The idea that making a claim that expeditiously could

---

[3] See July 22, 2010 Letter from B. Proctor to R. O'Brien ("July 22 Proctor Letter") at 2 (prior to the January 14 hearing "[Mattel] never argued that each email in a chain had to be separately logged"); see also Obj. at 4 ("Mattel had not challenged MGA's entries as being improperly logged email chains prior to the January 14 hearing.").

[4] Only MGA knows the exact scope of its improperly logged chains, but Mattel believes the number of unlogged chains from its logs that were not subject to *in camera* review is approximately 2200-2300 entries.

1  somehow be a "lapse" or waiver of rights is unsupported and indeed inconsistent with
2  elementary waiver law.
3        The parties should be treated equally, and the law of the case should be applied
4  with an even hand.  MGA seeks just the opposite, and the Discovery Master's
5  Recommendation erroneously orders just the opposite.  Mattel's objections should be
6  sustained.

### Argument

## I. THE PARTIES' PRIVILEGE WITHHOLDINGS SHOULD BE SUBJECTED TO THE SAME STANDARDS FOR *IN CAMERA* REVIEW

10        The merits of this issue are so plain they can hardly be disputed, and they hardly
11  are.  A substantial portion of Mattel's withheld privilege log entries were reviewed *in
12  camera*, at MGA's insistence, *solely* on the grounds that the email chains were not
13  separately logged; yet MGA's log contains thousands of not-separately-logged email
14  chains that, despite being challenged by Mattel on that very same basis, have not been
15  reviewed.  That disparity results in an unequal treatment of the parties' privilege
16  assertions and is wrong.  See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529,
17  537 (1991) (recognizing "the principle that litigants in similar situations should be
18  treated the same" as "a fundamental component of . . . the rule of law generally").
19        MGA does not dispute that the parties' privilege withholdings have been subject
20  to different standards.  Instead, it boasts that this disparity is justified because Mattel
21  waived:  according to MGA, Mattel could have challenged MGA's unlogged email
22  chains earlier than it did, but chose not to.  The flaw in this argument is that the
23  Discovery Master articulated the operative rule—with which Mattel disagreed—for the
24  very first time at the January 14 hearing.  Clearly, given that the law is supposed to be
25  applied evenhandedly, no one could reasonably fault Mattel for asking, five days later,
26  to have the very rule demanded by MGA applied to MGA once that rule was adopted.
27  Even if January 12 could be deemed a hard and fast cutoff for all privilege log
28  challenges—and it most certainly wasn't and indeed MGA itself has made repeated

challenges to a variety of Mattel privilege claims since then—the Discovery Master's articulation of a new rule on January 14 warranted additional challenges based on that law.

MGA argues that Mattel waived its right to challenge email chains by not doing so in the January 12 submission. But "[w]aiver is an 'intentional relinquishment or abandonment of a known right.'" Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Because Mattel disputed that the parties were required to separately log email chains up until the Discovery Master adopted MGA's contrary position, Mattel could not have intentionally relinquished a known right. See Caffey v. Swenson, 298 F. Supp. 994, 998 (D.C. Mo. 1969) ("any failure to assert rights not known to exist could hardly be deemed a waiver."). If anything, it is MGA whose argument should be precluded under the doctrine of judicial estoppel based on its inconsistency with its prior position. MGA successfully advocated one position to obtain *in camera* review of Mattel's email chains, yet if MGA's current position is accepted it will result in fundamentally inconsistent rulings by the Court regarding the parties' claims of privilege. Arriaga v. Cross Country Bank, 163 F. Supp. 2d 1189, 1202 (S.D. Cal. 2001) (citing Morris v. California, 966 F.2d 448, 452-53 (9th Cir. 1991)), overruled on unrelated grounds, Ting v. AT&T, 319 F.3d 1126 (9th Cir. 2003) ("The primary concern of the judicial estoppel doctrine is avoiding the situation in which the courts have actually issued two contradictory decisions on a matter . . .").

MGA's response to all this is that Mattel purportedly was lying in wait and delayed bringing these challenges for some (what exactly, we do not know) tactical purpose. That must be the case, MGA says, because Mattel itself had previously urged the very rule now at issue. Mattel has challenged MGA to support that false claim repeatedly.[5] MGA has never done so, except by citing its own lawyer's factually false email assertions in January about what Mattel had previously argued. Mattel rejected

---

[5] See, e.g., July 22 Proctor Letter at 2.

1 those assertions at the time: "MGA's complaint regarding email chains is both
2 unsupported and irrelevant. MGA's logs have many inadequacies and Mattel has
3 challenged them on a variety of grounds, but Mattel made no attack, huge or otherwise,
4 regarding this issue. Nor did the Discovery Master's orders direct the parties to log
5 [their] email threads separately."[6] And Mattel has rejected those assertions ever since;
6 it is meritless to say that "Mattel has never disputed the fact that it demanded that
7 MGA separately log email chains."[7] Mattel did not lie in wait. It opposed a motion
8 that MGA made which sought to impose a rule for the first time in this case, lost, and
9 then justifiably sought five days later to have the exact same principles successfully
10 advocated by MGA applied to MGA. That is hardly the basis for a finding of waiver.

11 MGA's waiver argument also ignores that it was, without a doubt, **MGA** that
12 caused any delays in the adjudication of this issue. On January 12, Mattel raised—as
13 its leading issue—MGA's failure to revise thousands of entries on its logs, including
14 the unlogged email chains at issue here, and specifically reserved its rights to challenge
15 these entries further in light of MGA's revelation, made just days before, that it had
16 simply ignored these thousands of privilege log entries. (Obj. at 7.) Two days later, at
17 the January 14 hearing, Mattel again raised this issue and reiterated that these
18 withholdings "have to be part of the *in camera* review," to which both MGA and the
19 Discovery Master agreed. (Obj. at 7-8.) Mattel's January 19 submission was not

---

[6] Jan. 12 Krug Email.
[7] See July 22 Letter at 2 (prior to the January 14 hearing "[Mattel] never argued that each email in a chain had to be separately logged"); Obj. at 4 (same). In believing that Mattel made such demands at a December meet and confer (Opp. at 3), the Discovery Master appears to have confused Mattel's longtime demand that the parties separately log withheld *attachments* and the emails to which they are attached with the different issue of separately logging individual emails in a chain. The record makes clear that, at the December hearing cited by MGA, see Opp. Ex. 2, Mattel discussed *attachments*, not email *chains*: "[W]e have the attachment problem where, you know, the attachments have to be properly logged and separately included." Dec. 3 Hearing Tr. at 18:8-10.

"unsolicited and unauthorized" (Opp. at 1) but was expressly requested by the Discovery Master (who asked Mattel to send a letter listing the entries it was challenging as procedurally flawed) and properly reflected rulings made by the Discovery Master days earlier. (Obj. at 3.) And—critically, and as is undisputed—***MGA was ordered to brief any objections it had to Mattel's submission, but it never did***. (Obj. at 5.) That MGA can ignore this demonstrable waiver on ***its*** part while still urging waiver against Mattel is bold, to say the least.

Next, calling this issue a "technicality," MGA urges there is no need for *in camera* review under Zolin. But MGA certainly did not call it a "technicality" when it sought, and obtained, *in camera* review of Mattel's documents on the same grounds now at issue. To the contrary, it urged that Mattel's failure to separately log email chains was "sanctionable conduct" that should result in waiver.[8] Nor is it correct that this is simply some technical issue. It is undisputed that MGA failed to review or revise thousands of privilege log entries as contemplated by an Order entered a year ago now. It is undisputed that MGA's counsel stated that they could not, consistent with Rule 11, attest to the accuracy of those withholdings. And there has been no shortage of demonstrable errors, if not worse, in MGA's privilege log withholdings to date. Especially in light of the rule of law at issue and MGA's own arguments about it, *in camera* review is more than justified. There is ample support for a good-faith belief that *in camera* review may reveal non-privileged information; every privilege review conducted of MGA's documents to date has revealed precisely that, as to hundreds of different documents. The Discovery Master himself already determined that this "relatively minimal" showing, In re Grand Jury Investigation, 974 F.2d 1068, 1072

---

[8] See Jan. 12, 2010 Email from A. Hurst to R. O'Brien; see also Jan. 14 Hearing Tr. at 21:8-13 (rejecting MGA's position that Mattel's failure to separately log email chains should result in waiver, but holding they should be reviewed *in camera*).

(9th Cir. 1992), is satisfied by a parties' failure to fully log its email chains. (See Obj. at 4 & n.12.) There is no cause to revisit that now.[9]

Both parties were "afforded the opportunity to review [their] logs and potentially cure any deficiencies" prior to the *in camera* review. (Opp. at 8.) MGA itself took the position that all email chains had to be separately logged, but failed to practice its preaching. MGA's failure to submit objections when ordered then led to the delayed adjudication of this issue. And yet now, after all this, MGA complains about the "great prejudice" *in camera* review will cause it, claiming this is "a dispute that MGA is only now aware existed." (Opp. at 8-9.) Such claims are not even minimally credible. There is no prejudice in producing non-privileged material. "The fallacy in [MGA's] argument is that any additional burden was created by their failure to do the job properly in the first place," Debt Exch. Inc. v. Blount, 2008 WL 2278500, at *1 (W.D. Okla. May 30, 2008), and any burdens are no more than what MGA imposed on Mattel on the very same basis. Having asserted privilege claims to more than 10,000 logged entries (many of them already demonstrated to be improper) and then choosing not to revise the bulk of its privilege assertions when directed to do so, MGA cannot now complain about the burden of defending its claims.

---

[9] MGA forgets that it is "the party asserting the privilege who bears the burden of establishing its applicability," rather than "their opponent['s]" burden to "undermine their unsupported claims of privilege." See Smithkline v. Apotex, 193 F.R.D. 530, 534 (N.D. Ill. 2000). Moreover, these documents—all of which have been logged as responsive to Mattel's document requests—are unquestionably relevant. Although MGA suggests that something more than relevance is required, that they must be "important," it is clear that under Zolin withheld documents "could be important" if "there is at least a chance" that the documents "would be relevant." Genentech, Inc. v. Insmed Inc., 234 F.R.D. 667, 673 (N.D. Cal. 2006). Finally, MGA's suggestion that the number of documents (which MGA overstates by nearly a third) counsels against review here is disingenuous given its acknowledgement that there was "no limit to the amount of entries" the parties could select for *in camera* review. (Obj. at 1.).

## Conclusion

For the foregoing reasons, Mattel respectfully requests that its Objections be granted in their entirety.

DATED: August 19, 2010     QUINN EMANUEL URQUHART & SULLIVAN, LLP


By: /s/ Michael T. Zeller
    Michael T. Zeller
    Attorneys for Mattel, Inc.