1  ANNETTE L. HURST (Bar No. 148738)
   ahurst@orrick.com
2  WARRINGTON S. PARKER III (Bar No. 148003)
   wparker@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA 94105
5  Telephone:  +1-415-773-5700
   Facsimile:   +1-415-773-5759
6
7  WILLIAM A. MOLINSKI (Bar No. 145186)
   wmolinski@orrick.com
8  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street, Suite 3200
9  Los Angeles, CA  90017
   Telephone:  +1-213-629-2020
10 Facsimile:   +1-213-612-2499

11 THOMAS S. MCCONVILLE (State Bar No. 155905)
   tmcconville@orrick.com
12 ORRICK, HERRINGTON & SUTCLIFFE LLP
   4 Park Plaza, Suite 1600
13 Irvine, CA 92614-2258
   Tel: (949) 567-6700/Fax: (949) 567-6710

14 Attorneys for the MGA Parties and IGWT 826

15            UNITED STATES DISTRICT COURT

16           CENTRAL DISTRICT OF CALIFORNIA

17                 SOUTHERN DIVISION

18 | CARTER BRYANT, an individual | CASE NO.  CV 04-9049 DOC (RNBx) |
19 |              Plaintiff, | Consolidated with Case No.  CV 04-09059 and Case No.  CV 05-02727 |
20 |        v. | |
21 | | Honorable David O. Carter |
22 | MATTEL, INC., a Delaware corporation, | **MGA PARTIES' RESPONSE TO ORDER DATED AUGUST 6, 2010 RE EFFECT OF NINTH CIRCUIT OPINION (DKT. NO. 8470); DECLARATION OF ANNETTE L. HURST IN SUPPORT** |
23 |              Defendant. | |
24 | AND CONSOLIDATED CASES | |
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

RELEVANT PROCEDURAL AND TRIAL HISTORY ................................. 4

    A.    The District Court Improperly Construes The Employment
           Agreement Between Mattel and Bryant, Which Affects All State
           Law Claims Tried In Phase 1 ....................................................... 4

    B.    Mattel Exploits The Erroneous Contract Ruling ......................... 6

    C.    The Copyright Verdict Depends On The Same Errors And More ....... 8

ARGUMENT ................................................................................................. 10

I.     LAW OF THE CASE REQUIRES THAT THE ENTIRETY OF THE
       PHASE 1 VERDICTS BE VACATED ................................................ 10

    A.    The Instructional Error On The Contract Claim Infected The
           Entire Case .................................................................................. 10

    B.    The Copyright Infringement Instructional Errors Independently
           Require That The Phase 1(B) Verdict Be Vacated ........................ 13

II.    IN ALL EVENTS, THE COURT SHOULD VACATE THE PHASE 1
       VERDICTS IN THEIR ENTIRETY PURSUANT TO RULE 59(D) .......... 14

III.   IF THE COURT DEEMS IT PROCEDURALLY NECESSARY,
       MGA WILL BRING A MOTION FOR NEW TRIAL ......................... 17

CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Caballero v. City of Concord,*
    956 F.2d 204 (9th Cir. 1992) .................................................. 11

*City Solutions, Inc. v. Clear Channel Commc'ns,*
    201 F. Supp. 1048 (N.D. Cal. 2002) ...................................... 15

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,*
    403 F. Supp. 2d 968 (N.D. Cal. 2005) .................................... 14

*Far Out Prods., Inc. v. Oskar,*
    247 F.3d 986 (9th Cir. 2001) .................................................. 18

*Galdamez v. Potter,*
    415 F.3d 1015 (9th Cir. 2005) ................................................ 11

*Goodworth Holdings Inc. v. Suh,*
    239 F. Supp. 2d 947 (N.D. Cal. 2002) .................................... 15

*Harper House, Inc. v. Thomas Nelson, Inc.,*
    889 F.2d 197 (9th Cir. 1989) .................................................. 13

*Heller v. EBB Auto Co.,*
    8 F.3d 1433 (9th Cir. 1993) .................................................... 11

*Jeffries v. Wood,*
    114 F.3d 1484 (9th Cir. 1997) ................................................ 16

*Mattel v. MGA Entertainment, Inc.,*
    --F.3d -- (9th Cir. July 22, 2010) .................................... *passim*

*Medtronic, Inc. v. White,*
    526 F.3d 487 (9th Cir. 2008) .................................................. 13

*Murphy v. City of Long Beach,*
    914 F.2d 183 (9th Cir. 1990) .................................................. 14

*Portney v. CIBA Vision Corp.,*
    No. 07-0854, 2008 U.S. Dist. LEXIS 106677 (C.D. Cal. July 17, 2008) .......... 15

*Roy v. Volkswagenwerk Aktiengesellschaft,*
    781 F.2d 670 (9th Cir. 1985) .................................................. 14

## STATE CASES

*Bancroft-Whitney Co. v. Glen,*
    411 P.2d 921 (Cal. 1966) ........................................................ 16

*Calvao v. Superior Court,*
    201 Cal. App. 3d 921 (1988) .................................................. 14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,*
    83 Cal. App. 4th 409 (2000)..................................................................14

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,*
    181 P.3d 142 (Cal. 2008)......................................................................15

*Mamou v. Trendwest Resorts, Inc.,*
    81 Cal. Rptr. 3d 406 (Cal. App. 2008) ...............................................16

*Odorizzi v. Bloomfield School Dist.,*
    246 Cal. App. 2d 123 (1966)...............................................................14

*Rickel v. Schwinn Bicycle Co.,*
    192 Cal. Rptr. 732 (Cal. App. 1983) ..................................................15

*Rita Medical Sys., Inc. v. Resect Medical, Inc.,*
    2007 WL 161049 (N.D. Cal. Jan. 17, 2007) ......................................15

*Waverly Prods, Inc. v. RKO Gen., Inc.,*
    32 Cal. Rptr. 73 (Cal. App. 1963) ......................................................15

*Worldvision Enterprises, Inc. v. American Broadcasting Cos.,*
    191 Cal. Rptr. 148 (Cal. App. 1983) ..................................................15

**STATUTES**

Cal. Bus. & Prof. Code § 16600.................................................................16

Cal. Lab. Code § 2854.................................................................................14

Federal Rule of Civil Procedure
    59(a)......................................................................................................18
    59(d)......................................................................................................14

**OTHER AUTHORITIES**

19 WILLISTON ON CONTRACTS § 54.27 (4th ed. 2008) ...............................16

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

MGA Entertainment, Inc., MGA HK Limited, and Isaac Larian (collectively
"MGA") provide the following response to this Court's Order of August 6, 2010
(Dkt. No. 8470) directing the filing of briefs "as to the action(s) that should be
taken by the Court" in response to the Ninth Circuit's July 22, 2010 Slip Opinion
(09-55673 Dkt. No. 145-1).

**INTRODUCTION**

Who owned Bratz—the idea for the product name and the copyrights in
Carter Bryant's drawings—and whether MGA's Bratz dolls infringed on Mattel's
copyright, were the two issues that dominated the Phase 1 trial.  As Mattel stated
within the first few moments of its opening statement to the jury in Phase 1(A)—
the liability phase on Mattel's state law claims—"[t]he question for you is going to
be, who owns certain drawings to a doll?"  5/27/08 Trial Tr. at 61.  Having
convinced the Court on summary judgment that Mattel's Inventions Agreement
gave Mattel rights to "ideas," and to anything else, including ideas, conceived,
created, or reduced to practice by Bryant at any time around the clock during the
period of his employment by Mattel, Mattel obtained jury instructions that only
required it to establish, and the jury only to find, that the disputed ideas and
drawings were created at any moment in time between January 4, 1999 and October
19, 2000.

Based on the Ninth Circuit's opinion, it is now apparent that it was error to
"hold[] that the agreement . . . clearly covered ideas." *Mattel, Inc. v. MGA
Entertainment, Inc.*, -- F.3d -- , Slip Op. at 10534 (9th Cir. July 22, 2010).  It was
error to "hold[] that the agreement clearly assigned works made outside the scope
of Bryant's employment." *Id.* 10539.  And, there were two significant errors in the
instructions for assessing infringement of copyright. *Id.* at 10548.  As set out
herein, these errors infected the whole trial, and the entirety of the Phase 1 verdicts
therefore must be vacated.

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

1    In particular, based upon the instructional errors and Mattel's exploitation

2    thereof to infect every claim in Phase 1 with the ownership issue, MGA is entitled

3    to have the verdicts vacated in their entirety under the doctrine of law of the case.

4    The instructions on all of the claims were directly affected by the errors regarding

5    the ownership issue.  And, Mattel exploited the ownership errors throughout its

6    liability and damages cases on all state law claims to ensure that they reached

7    maximum effect.  The infringement instructions also were infected by the two

8    additional errors identified by the Ninth Circuit.  Law of the case thus requires

9    reversal of the entirety of the verdicts.  Part I, *infra*.

10    Additionally, the Court can and should sua sponte vacate the verdicts in their

11    entirety pursuant to Rule 59(d), particularly given the likely overlap with issues in

12    the Phase 2 proceedings.  In addition to the errors addressed by the Ninth Circuit,

13    there were a number of other critical instructional errors—particularly regarding the

14    scope of duty owed by low-ranking employees.  The very same arguments will be

15    made and considered in connection with the Phase 2 claims.  The consistent and fair

16    administration of justice thus requires a complete new trial.  Part II, *infra*.

17    Finally, although it is clearly unnecessary, if for some reason the Court

18    prefers to hear the matter upon a contested new trial motion, then MGA respectfully

19    requests the opportunity to present all of its current grounds for new trial at the

20    same time as the Court hears the motions for summary judgment.  Such grounds

21    would include the instructional error and mistrial issues not addressed by the Ninth

22    Circuit, as well as the ground of newly discovered evidence that was outlined in

23    part in MGA's Counterclaims-in-Reply filed on August 16, 2010.  *See* Dkt. No.

24    8583.  Part III, *infra*.

25    Mattel cannot maintain any objection to MGA's suggestion that all verdicts

26    be vacated.  Within days after the Ninth Circuit issued its opinion on July 22,

27    Mattel and its trial counsel announced their agreement that a new trial on all claims

28    should be had.  In the words of Mattel's counsel, "'Everything is on the table' and

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

1   the case has 'only gotten stronger.'" Hurst Decl. Ex. 1 at 3 (*American Lawyer* July

2   29, 2010).  Indeed, Mattel's trial counsel strongly professed Mattel's desire to retry

3   the entire case:

4       "Mattel trial counsel John Quinn of Quinn Emanuel told
        us he can't wait to tell a jury the whole story of MGA's
5       alleged scheme to undermine Mattel, from its
        infringement of Mattel's intellectual property rights for
6       the Bratz name and designs to the theft of trade secrets in
        Mexico. '*Everything is being retried in one trial. This is*
7       *what we wanted all along,*' he said.  '*We want the jury to*
        *hear about all of their thefts.  Our case gets stronger the*
8       *more the jury hears.*'"

9   Hurst Decl. Ex. 2 at 2 (*American Lawyer* Aug. 3, 2010) (emphasis added), *id.* Ex. 3

10  at 2 (*American Lawyer* Aug. 5, 2010).  Even Mattel's own public statement

11  regarding the Ninth Circuit Opinion confirmed that this was its view:

12      "In a statement, Mattel said: 'We look forward to a full
        trial on all of Mattel's claims against MGA.  We believe
13      that such a trial will present a comprehensive and even
        more compelling case than was possible with a divided
14      trial.'"

15  Hurst Decl. Ex. 4 at 2 (*Daily Journal* Jul. 23, 2010).  This is also what Mattel had

16  informed the Court during its earliest inquiries into the Phase 2 case after the

17  transfer from Judge Larson last fall, when Mr. Zeller explained Mattel's position by

18  saying that Mattel had never wanted bifurcation in the first place. *See also* Hurst

19  Decl. Ex. 5 at 2 (*Law360* July 22, 2010) ("Quinn added that Mattel had always

20  wanted a consolidated trial, as opposed to two separate stages" and "Mattel said in a

21  statement that it was looking forward to a 'full trial'"). [1]

22      The Court should now give Mattel exactly what it said it wanted, and what is

23  legally required as demonstrated herein—a clean slate.

24

25  [1] Despite these public pronouncements, all efforts by MGA to get Mattel to meet
    and confer on any stipulations that might be reached regarding this issue were
26  rebuffed.  Despite numerous telephone calls and e-mails, Mattel simply refused to
    discuss the issue.  Nor would Mattel put in writing any position as to whether it
27  would stipulate to vacate any portion of the verdicts. Hurst Decl. ¶_7_.
    Accordingly, though MGA certainly tried to follow the Court's instruction to see
28  whether any stipulations could be reached, its efforts were futile.

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

# RELEVANT PROCEDURAL AND TRIAL HISTORY

**A.   The District Court Improperly Construes The Employment Agreement Between Mattel and Bryant, Which Affects All State Law Claims Tried In Phase 1.**

MGA's liability on Mattel's state law claims—intentional interference with contract, aiding and abetting breach of fiduciary duty, aiding and abetting duty of loyalty, and conversion—were tried in Phase 1(A) of this case.  Mattel's copyright infringement claim and its damages on all claims were tried in Phase 1(B).

All of the state law claims tried in Phase 1 were infected by the two contract interpretation errors identified by the Ninth Circuit.  The first error was the conclusion that the term "inventions" in Mattel's Inventions Agreement, as a matter of law, covered and assigned to Mattel Bryant's ideas for the name "Bratz" and "Jade."  *Id.* at 10534.  The second error was the conclusion that Mattel's agreement, as a matter of law, could be construed to grant to Mattel ownership of any of Bryant's Bratz works merely because Bryant happened to be employed by Mattel at the time of creation, and without regard to the fact that he was a fashion designer not a doll designer and was acting outside the scope of his employment (even assuming he was employed by Mattel during the period he created Bratz).  *See id.* at 10539.  These two erroneous conclusions were reached by the district court in granting Mattel's motion for summary judgment.  *See* Dkt. No. 3285 (4/25/08 Order) at 5 (concluding that the employment agreement covered "inventions," which included ideas, "during the period of [Bryant's] employment with Mattel").  And as to both rulings, the Ninth Circuit concluded that the district court "erred in holding that the agreement, by its terms, clearly covered ideas," and "erred by granting summary judgment to Mattel" concerning the scope of the Inventions Agreement.  Slip Op. at 10534, 10539.

The erroneous constructions of contract were repeated throughout the instructions.  With regard to the intentional interference with contract, the jury was instructed as a matter of law that a "any particular Bratz-related *idea*, concept,

drawing design or work . . . 'conceived or reduced to practice', that is, created, by Mr. Bryant . . . *while employed by Mattel*" was owned by Mattel. Dkt. No. 4115 (7/10/08 Final Jury Instructions) at 23 (emphasis added); 7/10/08 Trial Tr. at 4805 (emphasis added). This is exactly what the Ninth Circuit found wrong.

Next, with regard to the fiduciary duty, the elements of breach of duty and causation of harm were bound up in the ownership issue. The jury was instructed that Bryant, a rank and file design employee, had a fiduciary duty because Bryant had an "obligation to keep Proprietary Information confidential,"  , which as the jury was instructed was information "possess[ed]" or "acquir[ed]" by Mattel and which "depends on [the Proprietary Information] remaining confidential." Dkt. No. 4115 at 31; 7/10/08 Trial Tr. at 4808-09. This instruction incorporates the same two flaws pointed out by the Ninth Circuit. First, it allowed the jury to equate Bratz with Proprietary Information if the jury found that the ideas and sketches were owned by Mattel under the erroneous construction of the assignment provision. Second, and relatedly, it permitted the jury to premise its liability decision in Phase 1(A) and its damages award in Phase 1(B) on the claims of aiding and abetting breach of fiduciary duty *and* duty of loyalty on the claimed disclosure of Bratz-related ideas and works, because Bryant failed in his "obligation to keep [Mattel's] Proprietary Information confidential." And, as noted below, this is precisely what Mattel argued. *See* Part B, *infra*.

The instructions on the duty of loyalty claim were also infected. Although erroneously premised at least in part on the fact that Bryant breached his duty of loyalty merely by entering into a contract with MGA (*see* Argument, Part II, *infra*), critical to the duty of loyalty claim was also the instruction that Bryant entered into a contract "to produce *a line of fashion dolls* . . . ." Dkt. No. 4115 at 32; 7/10/08 Trial Tr. at 4809 (emphasis added). In other words, the duty of loyalty instruction was premised on the fact that Bryant agreed to provide Bratz to MGA and that was somehow wrongful.

Finally, the conversion claim was also directly premised upon the ownership issue by instruction. The instruction provided that any "tangible property" "'conceived or reduced to practice'" *during the time period [Bryant] was employed by Mattel*" is thereby owned by Mattel. Dkt. No. 4115 at 33; 7/10/08 Trial Tr. at 4810.

## B.   Mattel Exploits The Erroneous Contract Ruling.

As reflected in Mattel's opening statements and arguments to the jury, Mattel capitalized upon the erroneous contractual interpretation in three distinct ways.

First, the central tenet of Mattel's case was that it owned Bratz, the ideas, the drawings, and that a verdict on all of its claims could be premised on that fact. As Mattel stated in the first few lines of its opening statement to the jury "[t]he question for you is going to be, who owns certain drawings to a doll?" 5/27/08 Trial Tr. at 61. In the same vein, Mattel made clear that this case was about the fact that MGA knew that they were talking to a Mattel designer and hid that fact because MGA "knew that if Mattel ever learned . . . that [MGA] had taken this [Bratz] from a Mattel fashion doll designer while he was working for Mattel, that Mattel would own the rights to those drawings." 5/27/08 Trial Tr. at 63.

Mattel's arguments in closing reiterated this central point: that MGA knew, through its own employees, that "it would be a *breach of Mattel employee contracts* for Carter Bryant to assist MGA or share design ideas with MGA." 7/10/08 Trial Tr. at 4828. Indeed, so that no distinction was drawn between Mattel's claims of ownership and the various state law claims, even as to breach of fiduciary duty, Mattel claimed that Bryant breached his fiduciary duty—which, as noted depended on the fact that Bryant possessed confidential information belonging to Mattel—by "deliver[ing] to Isaac Larian and to MGA Mattel's confidential proprietary information: The idea for a unique, ground-breaking line of dolls, the fundamental design for those dolls [which] MGA used . . . to create the Bratz line . . . ." 8/20/08 Trial Tr. at 8119.

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

1    Or, as Mattel summarized its case for the jury, "MGA recognized what it was

2    doing and inducing a Mattel employee who created Mattel designes [sic] to bring

3    his designs to MGA." 7/10/08 Trial Tr. at 5001-02.  This was so, according to

4    Mattel, because "[i]t's unfair if a company competes with you by stealing from you.

5    It's unfair if a company competes with you by taking one of your best designers,

6    while he still works for you, and gives you ideas, effort, and helps you get into the

7    market to compete." 7/10/08 Trial Tr. at 5002.

8    Next, Mattel used the issue of ownership, and the interpretation of Bryant's

9    employment agreement, to blunt any argument that Mattel was not harmed by

10   Bryant's claimed breach of fiduciary duty and duty of loyalty.  In other words,

11   Mattel rejoined any assertion that it lacked the legally required element of harm on

12   the fiduciary duty and duty of loyalty claims by pointing to the issue of Bratz

13   ownership.[2]  Mattel called this MGA's "fall-back position." 7/10/08 Trial Tr. at

14   4847.

15   As Mattel articulated MGA's theory, "none of this really matters, because if

16   Carter Bryant was assisting MGA while he was a Mattel employee, the designs he

17   created were created during this gap in his employment . . . during a short time

18   frame in 1998 when he wasn't working for Mattel." 7/10/08 Trial Tr. at 4847.

19   Mattel's response: "But the evidence, folks, contradicts this theory as well."

20   7/10/08 Trial Tr. at 4847.  Using this as the launching pad, Mattel then went

21   through the evidence it claimed established its ownership in Bratz based on the date

22   of creation, whether or not the ideas and designs were conceived or created during

23   Bryant's employment at Mattel.  7/10/08 Trial Tr. at 4848-87.  Mattel thus

24

25   _____

     [2] Although these arguments were presented in the Phase 1(A) liability phase of the
26   trial on Mattel's state law claims, Mattel made them because the jury instructions
     required that Mattel prove it suffered harm as a result of Bryant's breach of
27   fiduciary duty and duty of loyalty and therefore the aiding and abetting claims on
     which MGA and Mr. Larian were sued. Dkt. No. 4115 at 28-30. 7/10/08 Trial Tr.
28   at 4807-08.

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

1    expressly linked the ownership question to the liability question on all of its Phase

2    1(A) state law claims.

3          Finally, Mattel expressly premised its damages theory on the state law claims

4    in Phase 1(B), including damages on its claims for aiding and abetting breach of

5    fiduciary duty and duty of loyalty, on the issue of ownership. Mattel argued that

6    damages were warranted based on the fact that Bryant disclosed *Mattel's*

7    confidential information, i.e., information owned by Mattel, which information it

8    identified as Bratz. Mattel asked for all of MGA's and Larian's "ill-gotten gains"

9    based on the aiding and abetting breach of fiduciary duty and duty of loyalty

10   instructions because "it would be wrong for [MGA and Mr. Larian] to profit even a

11   penny based on *using Mattel's proprietary confidential information*." 8/20/08 Trial

12   Tr. at 8120 (emphasis added).

13         To make it plain for the jury, Mattel argued "They cannot keep any profits

14   that were earned as a result of the theft of Mattel's proprietary information."

15   8/20/08 Trial Tr. at 8126; *see also* 8/20/08 Trial Tr. at 8124 (identifying the

16   wrongdoing for which MGA should pay damages as the exploitation of Mattel's

17   confidential information); 8/20/08 Trial Tr. at 8248-50 (basing damages for breach

18   of fiduciary duty and breach of loyalty and breach of converted property on

19   Bryant's disclosure and MGA's use of Mattel's confidential information).

20         **C.      The Copyright Verdict Depends On The Same Errors And More.**

21         As part of Phase 1(B), the parties tried copyright infringement and damages.

22   The infringement claim depended on the jury's finding in Phase 1(A) that Bryant

23   conceived or created Bratz during his employment at Mattel. As the district court

24   instructed the jury, ownership of Bratz was an element of the copyright claim but,

25   "[a]s a matter of law, Mattel is the owner, by assignment, of the Bratz-related items

26   that you found were created by Carter Bryant . . . while employed by Mattel." Dkt.

27   No. 4267 at 21; 8/20/08 Trial Tr. at 8092; *see also* Dkt. No. 4267 at 24; 8/20/08

28   Trial Tr. at 8093 (instructing jury that ownership element established as matter of

                                            - 8 -

1    law).  The Ninth Circuit recognized that the errors in the district court's

2    interpretation of Bryant's Inventions Agreement alone justified vacating the

3    copyright injunction.  Slip Op. at 10539.

4          Independent of this error, there are two additional errors specific to the

5    district court's infringement instruction to the jury—both identified by the Ninth

6    Circuit—namely, the Court's articulation of the extrinsic test and the intrinsic test.

7    First, the district court improperly instructed the jury on the extrinsic test, which

8    seeks to isolate the elements of a work protectable under Copyright law and those

9    elements that were not.  Although the Ninth Circuit discusses the district court's

10   application of this inquiry to its own determination of what dolls were infringing,

11   the district court instructed the jury to apply the same exact erroneous analysis.

12   *Compare* Slip Op. at 10541 (identifying the district court's analysis of the protected

13   and non-protected elements) *with* Dkt. No. 4267 at 28 (the jury instruction on the

14   protected and non-protected elements); 8/20/08 Trial Tr. at 8095-97 (same).  The

15   Ninth Circuit concluded that "[t]his error was significant" because it allowed the

16   district court—and therefore the jury as well—to rely on "similarities in ideas"

17   which are not protected by Copyright law.  Slip Op. at 10546-47.

18         Second, the Ninth Circuit noted that the district court applied a substantial

19   similarity standard in connection with the intrinsic test, which is also the standard

20   the district court had instructed the jury to apply.  *See id.* at 10541; Dkt. No. 4267 at

21   28-30, 31; 8/20/08 Trial Tr. at 8097-98.  As the Ninth Circuit noted, however, such

22   a test would not apply to the sculpts or to the sketches depicting physical doll

23   proportions.  Rather, the virtual identity test applies to these works, which are

24   comprised exclusively of unprotected ideas in a particular combination.  Slip Op. at

25   10544.

26

27

28

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

**ARGUMENT**

## I.    LAW OF THE CASE REQUIRES THAT THE ENTIRETY OF THE PHASE 1 VERDICTS BE VACATED.

Under the doctrine of law of the case, legal issues decided explicitly or by necessary implication are binding upon this Court. *See Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997) (en banc).  In vacating the equitable relief, the Ninth Circuit ordered that "any further proceedings must be consistent with our decision."  Slip Op. at 10549.  Because of the instructional interdependencies and the fashion in which Mattel linked all of the claims in its opening statements and arguments, allowing any aspect of the Phase 1 verdicts to stand would not be consistent with the decision.

In three separate places in the opinion, the Ninth Circuit expressly discussed the necessity of a retrial on remand, culminating in its pronouncement that "the entire case will probably need to be retried." *Id.* at 10548; *see id.* at 10539-40 ("On remand, Mattel might well convince a properly instructed jury . . . ."), 10548 ("On remand, Mattel will have to convince a jury. . . .").  Indeed, the Ninth Circuit found the appeal with respect to the motion for mistrial, and the cross-appeal regarding attorney-client privilege to be "likely moot." *Id.* at 10548 n.12.  Since the motion for mistrial concerned jury misconduct related to all of the Phase 1(A) verdicts, which were in turn the foundation for the Phase 1(B) verdicts, the motion for mistrial could only be moot if a new trial ensues on *all issues*.  And that is exactly what should occur.

### A.    The Instructional Error On The Contract Claim Infected The Entire Case.

The improper contract instructions to the Phase 1 jury removed entirely from the jury's consideration the true meaning of Mattel's Inventions Agreement.  Following the Court's instructions formulated after its grant of summary judgment, the jury could only consider the dates of Bryant's employment and the testimony

1   about the timing of conception of the Bratz ideas and sketches, and nothing else.

2   The Ninth Circuit Opinion expressly held that this was instructional error.

3   Prejudice is presumed, and the verdicts cannot stand. *See, e.g., Galdamez v. Potter*,

4   415 F.3d 1015, 1025 (9th Cir. 2005) (reversing verdict based on instructions that

5   improperly cabined the jury's considerations).

6          Indeed, it is apparent from the face of the verdict forms that the jury *did*

7   decide this case on a misapprehension of the law. *See Heller v. EBB Auto Co.*, 8

8   F.3d 1433, 1441 (9th Cir. 1993) (reversing verdict when instructions allowed jury

9   to decide case on misapprehension of law).  The language of the questions on the

10  verdict forms was framed with reference to the Court's instruction as to the

11  meaning of Mattel's Inventions Agreement.  The instructions as to how to fill out

12  those forms told the jury that it had to find that Mattel owned ideas and Bratz-

13  related works solely on the basis that they were created, conceived or reduced to

14  practice at any time around the clock during the period of time while Bryant was

15  employed at Mattel.  In other words, "nothing about [these] verdict[s] indicates that

16  the result would have been the same without the error." *Caballero v. City of*

17  *Concord*, 956 F.2d 204, 207 (9th Cir. 1992).[3]

18         Not only is prejudice presumed, but that prejudice is evident from the trial.

19  The question whether or not Mattel's Inventions Agreement granted an ownership

20  interest in Bratz was *a priori*.  This was the first question that the jury had to

21  answer before it considered anything else, and the approach to this issue colored

22  everything that came after.  Rather than permitting the jury to evaluate the case

23  under a rubric whereby this issue was legitimately contested by MGA, the jury was

24  instructed entirely in Mattel's favor and the jury was basically left to evaluate

25

---

26  [3] Although Mattel may attempt to argue that the facts support the jury's verdict, that is not the inquiry. "[T]he prevailing party is not entitled to have disputed factual

27  questions resolved in his favor because the jury's verdict may have resulted from a misapprehension of law rather than from factual determinations in favor of the

28  prevailing party."

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

1   nothing more than the question whether or not Carter Bryant was a liar and MGA

2   knew it.  MGA started deep in the hole, because the instructions required the jury,

3   as a matter of law, to interpret the Inventions Agreement against Bryant, and

4   therefore against MGA.  This situation was grossly exacerbated by Mattel's

5   eleventh hour then-secret settlement with Bryant, which forced MGA at the last

6   minute to put on the evidence of the timing of Bryant's work, thus linking MGA

7   even more tightly to Bryant in the eyes of the jury.  Indeed, the Ninth Circuit's

8   Opinion expressly recognizes the logically *a priori* nature of the relationship

9   between the ownership issue and all of the state law tort claims.  Slip Op. at 10548

10   n. 12 ("We've found that the district court didn't properly analyze whether Mattel

11   owns Bryant's ideas under his contract, so it's premature to try to determine

12   whether MGA's acquisition of them was wrongful").

13       Mattel's intentional interference claim, its conversion claim and its copyright

14   infringement claim all had express legal elements requiring Mattel to win on the

15   issue of ownership in order to succeed.  The instructions on the other tort claims

16   also explicitly or implicitly referenced the ownership issue.  And, the way Mattel

17   tried the case, all state law claims were premised upon MGA's purported theft of

18   Bratz.  Mattel claimed that it was harmed by Bryant's breach of fiduciary duty and

19   duty of loyalty because Bryant took to MGA that which Mattel owned.  Mattel

20   claimed damages on all of its claims because Bryant took to MGA that which

21   belonged to Mattel.

22       Thus, on all the tort claims, Mattel consistently argued that Bryant took what

23   belonged to Mattel.  Mattel exploited the instructional error regarding the *a priori*

24   issue of the meaning of the Inventions Agreement throughout all claims, thus

25   ensuring that the jury's verdicts on all of the claims would be premised on these

26   instructional errors.  The closing arguments, which as noted above expressly

27   exploited the instructional errors, alone justify vacating the verdicts.  *See*

28

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

1    *Medtronic, Inc. v. White*, 526 F.3d 487, 497 (9th Cir. 2008) (reversing judgment as

2    a result of instructional error based on closing argument of counsel).

3    **B.    The Copyright Infringement Instructional Errors Independently**
         **Require That The Phase 1(B) Verdict Be Vacated.**

4

5        The Ninth Circuit also held that the copyright infringement instructions were

6    infected with error in two respects, again requiring that the verdict be vacated.  In

7    the words of the Ninth Circuit, the failure to instruct the jury properly on which

8    elements it could legitimately consider as part of the substantial similarity

9    comparison "was significant."  Slip Op. at 10546.  This error left the jury without

10   meaningful guidance as to what parts were ideas (and thus unprotected) and what

11   parts were expression (and thus protected).  The jury could not make a legitimate

12   comparison under those circumstances.

13       Additionally, the instructions required the jury to apply the substantial

14   similarity test, rather than the virtual identity test, to the doll sculpts and to the

15   Bryant sketches of doll proportions.  The Ninth Circuit Opinion requires that a

16   doll's physical proportions as expressed in the sculpt and Bryant sketches be treated

17   as a "thin" copyright that can be infringed only upon a showing that the accused

18   work is "virtually identical."  Yet the Phase 1 instruction specifically referenced

19   proportions as a protected element of expression subject to a high degree of

20   protection under the substantial similarity analysis.  Dkt. No. 4267 (8/20/2008)

21   Phase B Jury Instructions) at 28-29.  Because such expression was highly

22   constrained, this was error.  *Id.* at 10543-44, n.8.

23       With these errors, the infringement instruction left the jury the option to

24   extend liability to dolls beyond the first generation, which, as the Ninth Circuit

25   noted, "are nothing like anything Bryant drew . . . ."  *Id.*. at 10547.  These errors

26   plainly require vacating the entirety of the copyright infringement verdict.  *See*

27   *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 207-08 (9th Cir. 1989).

28

## II.   IN ALL EVENTS, THE COURT SHOULD VACATE THE PHASE 1 VERDICTS IN THEIR ENTIRETY PURSUANT TO RULE 59(D).

Apart from the doctrine of law of the case, this Court is also empowered to, and should, vacate the verdicts pursuant to Federal Rule of Civil Procedure 59(d).[4] Such an order is not appealable. *See, e.g., Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670, 671 (9th Cir. 1985). Just based on the Ninth Circuit Opinion, as noted, an order vacating the verdicts is appropriate. The error in the jury instructions, such as we have here, justifies a new trial. *See, e.g., Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990). Indeed, the Ninth Circuit repeatedly expressed the view that it fully expected that the verdicts would be vacated.

Independently of the errors identified by the Ninth Circuit, however, there were other instructional errors that infected the case and justify vacating the verdicts. For example, the instructions provided that Bryant was a fiduciary as a matter of law, apparently based upon the language of the Mattel Inventions Agreement. But, under California law, an employee is only a fiduciary as a matter of law if the employee is an officer who participates in the company's management. *See Calvao v. Superior Court*, 201 Cal. App. 3d 921, 923 (1988); *Odorizzi v. Bloomfield School Dist.*, 246 Cal. App. 2d 123, 129 (1966); *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005); *see* Cal. Lab. Code § 2854. Courts have carefully protected this distinction, insisting that "a corporation cannot make a mail clerk its fiduciary by simply bestowing upon the clerk the title of officer." *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 420 (2000). Given this default rule, a low-level employee would not expect to be a fiduciary with his primary goal to advance

---

[4] Rule 59(d) allows a sua sponte new trial order up to 28 days after entry of judgment. Since judgment was never entered, *see* Dkt. Nos. 4835, 4836, a new trial order under Rule 59 is timely.

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

Mattel's interests even above his own.  *Worldvision Enterprises, Inc. v. American Broadcasting Cos.*, 191 Cal. Rptr. 148, 151 (Cal. App. 1983) (explaining that since employer-employee is not a presumed fiduciary relationship, "additional ties must be brought out in order to create the presumption of a confidential relationship between the two.").  An employee would not expect that to change merely by signing an agreement that references the "trust" that the employer is placing in the employee.  To allow Mattel to circumvent the default rule and impose fiduciary duties (and tort liability) on low-level employees based upon a confidentiality agreement that uses the phrase "trust" means that all of Mattel's employees, even its mail clerks, are now its fiduciaries.

Nor do confidentiality agreements, especially illegible boilerplate ones such as Mattel's Inventions Agreement imposed upon Bryant, transform an employee into a fiduciary.  *See Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142 (Cal. 2008) (holding that routine confidentiality obligations do not create fiduciary relationships); *Rickel v. Schwinn Bicycle Co.*, 192 Cal. Rptr. 732, 735-36 (Cal. App. 1983); *Waverly Prods, Inc. v. RKO Gen., Inc.* 32 Cal. Rptr. 73, 78-80 (Cal. App. 1963); *Portney v. CIBA Vision Corp.*, No. 07-0854, 2008 U.S. Dist. LEXIS 106677 at *7-12 (C.D. Cal. July 17, 2008) ("In a world where the exchange of information and technology is indispensable to national and international commerce, such an exchange will rarely suffice to create a fiduciary [duty]."); *Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 960 (N.D. Cal. 2002) (explaining that "A fiduciary relationship . . . does not arise simply because parties repose trust and confidence is reposed in each other.") (citations omitted); *City Solutions, Inc. v. Clear Channel Commc'ns*, 201 F. Supp. 1035, 1050 (N.D. Cal. 2002) (same).  Specifically, in employer-employee relationships, an express obligation of an employee to keep company trade secrets confidential is insufficient to establish a fiduciary relationship.  *Rita Medical Sys., Inc. v. Resect Medical, Inc.*, 2007 WL 161049, *6 (N.D. Cal. Jan. 17, 2007) (finding no fiduciary duty even where "[t]he [employee's]

1  contract did require him to keep [employer's] trade secrets confidential, to assign

2  patents, and not to compete with [employer]."). At a bare minimum, this issue

3  never should have been decided as a matter of law in Mattel's favor prior to trial.

4      Additionally, the instructions essentially directed the jury to find that Bryant

5  breached his duty of loyalty as a matter of law because he signed an agreement with

6  MGA. Dkt. No. 4115 at 31-32. This was also erroneous. For example, contrary to

7  the Phase 1 instructions, the signing of a contract to work with a competitor, by

8  itself, is not a breach of the duty of loyalty. California law allows just what Bryant

9  did. It authorizes discussions and full-scale planning of one's next job. *See, e.g.,*

10  *Mamou v. Trendwest Resorts, Inc.*, 81 Cal. Rptr. 3d 406, 433-34 (Cal. App. 2008)

11  (formation of competing company does not breach duty of loyalty); 19 WILLISTON

12  ON CONTRACTS § 54.27 at 467 (4th ed. 2008) (at-will employees may plan and

13  prepare to create a competitive enterprise). There is no precedent requiring an

14  employee to quit and clear out his desk *before* accepting a new job, or holding the

15  employee liable for giving two weeks notice after accepting a job, rather than

16  leaving the employer in the lurch. Indeed, to prohibit this activity would run afoul

17  of California's strong policy favoring employee mobility. *See* Cal. Bus. & Prof.

18  Code § 16600. And even were it possible that Bryant's conduct could be

19  considered a violation of his duty of loyalty, which it was not and certainly not as a

20  matter of law, whether an employee has breached his duty of loyalty is a question

21  for the trier of fact, *see Bancroft-Whitney Co. v. Glen*, 411 P.2d 921, 935 (Cal.

22  1966), and the Phase 1 instructions improperly took the issue from the jury.

23      On these duty issues, there is a high likelihood of the potential for

24  inconsistency between the past and current proceedings. The fiduciary duty claim

25  was parceled out between Phases 1 and 2. Mattel is claiming that the employees at

26  issue in the Phase 2 claims had duties like Bryant because of the same or similar

27  language in various agreements that they signed. MGA will be moving for

28  summary judgment on the lack of fiduciary duty. Assuming the Court adopts the

1   proper legal standard, as it should, then the summary judgment of duty in Phase 1

2   on the fiduciary duty claim will be revealed as erroneous.  Even if the claim can

3   survive summary judgment of no such duty in Phase 2, then the Court will be asked

4   to give an instruction on whether the contracts, in and of themselves, created a

5   fiduciary duty.  The Court should not be hamstrung in the retrial by the erroneous

6   Phase 1 instructions on a breach of fiduciary duty claim.  A new instruction will

7   have to be given, and again, there will be inconsistency with Phase 1.

8        Additionally, the retrial will be a complete mess if the Court tries to keep any

9   of the verdicts intact and to instruct a second jury as to their meaning.  The potential

10   for improper duplicative recovery of damages is extremely high.  Given the high

11   degree of overlap of legal and factual issues, a second jury may feel inappropriately

12   hamstrung by a prior result in its own supposedly independent consideration.

13   Especially if the trial is a long one, a carryover verdict could well provide an

14   improper shortcut for a second jury during deliberations.  Alternatively, a second

15   jury may feel the first verdict was wrong, or unjust.  The second jury may seek to

16   undo any holdover verdict *sub silentio*.  The potential for mischief and error is

17   endless.

18        Ultimately, the point is this:  The Ninth Circuit's opinion alone is a sufficient

19   basis and authority for vacating the verdicts under the law of the case.  To the

20   extent there is any disagreement on this point at all, Rule 59(d) grants this Court the

21   absolute power, not subject to review, to vacate the verdicts on its own authority in

22   light of the discussion herein or any other reason it may choose.  The Court should

23   do so to promote the orderly, consistent and efficient administration of justice.

24   **III.**   **IF THE COURT DEEMS IT PROCEDURALLY NECESSARY, MGA
WILL BRING A MOTION FOR NEW TRIAL.**

25

26        Finally, if the Court does not conclude that the law of the case doctrine or

27   Rule 59(d) are sufficient bases at this time for vacating the verdicts in their entirety,

28   then the MGA Parties respectfully request an opportunity to be permitted to make a

1   new motion for new trial under Rule 59(a).  That motion will be brought not only

2   on the basis of the Ninth Circuit opinion as described herein, but also will be

3   brought on the grounds of the original new trial motions (including the motion for

4   mistrial), and on the grounds of newly discovered evidence as described in part in

5   MGA's recently filed Counterclaims-in-Reply (Dkt. No. 8583).  *See, e.g., Far Out*

6   *Prods., Inc. v. Oskar*, 247 F.3d 986, 997-98 (9th Cir. 2001).

7           As set out above, the Court can and should vacate all of the verdicts now so

8   that the parties know exactly how to proceed through the remainder of discovery,

9   summary judgment briefing, expert preparation and pretrial—with the assumption

10  of a clean slate.  But, if for whatever reason the Court wishes to proceed by way of

11  a contested new trial motion pursuant to Rule 59(a), rather than as outlined above,

12  then MGA respectfully requests that the new trial motion be heard at the same time

13  as the summary judgment motions and briefed on the same schedule as those

14  motions.

15                            **CONCLUSION**

16          For the foregoing reasons, the Phase 1 verdicts should be vacated in their

17  entirety.

18
    Dated:  August 20, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP
19

20

21                                   */s/ Annette L. Hurst*
                                     Annette L. Hurst
22                                   Attorneys for the MGA Parties and IGWT 826

23

24

25

26

27

28

                                     MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
                                     CV 04-09049 DOC (RNBx)

# DECLARATION OF ANNETTE L. HURST

I, Annette L. Hurst, declare as follows:

1.     I am a partner with the law firm of Orrick Herrington & Sutcliffe, counsel to the MGA Parties and IGWT 826.  Everything stated herein is true and correct of my own personal knowledge, except as indicated as to information and belief.  If called upon to testify I would and could testify competently hereto.

2.     Attached hereto as Exhibit 1 is a copy of a July 29, 2010 article printed from the American Lawyer website, entitled *Huge Win For Orrick, MGA As Ninth Circuit Tosses Bratz Injunction, Says New Trial Likely*.

3.     Attached hereto as Exhibit 2 is a copy of an August 3, 2010 article printed from the American Lawyer website, entitled *Bring It On! Judge Sets Trial Date for New Barbie v. Bratz Showdown, Denies MGA Motion to Dismiss RICO and Trade Secret Claims*.

4.     Attached hereto as Exhibit 3 is a copy of an August 5, 2010 article printed from the American Lawyer website, entitled *Judge Sets Trial Date for New Barbie v. Bratz Showdown*.

5.     Attached hereto as Exhibit 4 is a copy of a July 23, 2010 article printed from the Daily Journal website, entitled *9th Circuit Rebukes Judge In Bratz Doll Litigation*.

6.     Attached hereto as Exhibit 5 is a copy of a July 22, 2010 article printed from the Law360 website, entitled *9th Circ. Strikes Down Mattel Win In Bratz Battle*.

7.     After the Court issued its Order on August 6, 2010 (Dkt. No. 8470) requesting this briefing, I made numerous efforts to discuss with Mattel's lead trial counsel whether the parties could reach any stipulation regarding the verdicts.  I made such requests both orally and in writing.  During one of our lead counsel conferences, I raised the issue and attempted to discuss it, but Mattel's

MGA'S BRIEF REGARDING EFFECT OF 9TH CIR. OPINION
CV 04-09049 DOC (RNBx)

1  counsel demurred at that time any substantive discussion, asserting a lack of

2  preparedness to discuss the topic.  After that, I again requested in writing that we

3  discuss any potential stipulations and got no response.

4          I declare under penalty of perjury that the foregoing is true and correct and

5  that this declaration was hereby executed in San Francisco, California on August

6  20, 2010.

7

8                                        _____*/s/ Annette L. Hurst*_____
                                         Annette L. Hurst

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

# AMERICAN LAWYER.COM

Select '**Print**' in your browser menu to print this document.

Copyright 2010. ALM Media Properties, LLC. All rights reserved. The American Lawyer
Page printed from: http://www.americanlawyer.com

Back to Article

## Huge Win For Orrick, MGA As Ninth Circuit Tosses Bratz Injunction, Says New Trial Likely

Alison Frankel
The American Lawyer
07-29-2010

Mattel's annihilation of the line of big-headed, slightly slutty Bratz dolls, which had replaced Barbie in the hearts of America's pre-tweens, was one of the biggest IP stories of 2008. Mattel's trial lawyers at Quinn Emanuel Urquhart & Sullivan beat MGA Entertainment's team from Skadden, Arps, Slate, Meagher & Flom, successfully arguing that the designer who conceived of the Bratz line did so while he was on Mattel's payroll. Quinn won a jury verdict of $100 million for MGA's infringement, and, even more significantly, a post-trial injunction ruling by Riverside, Calif., federal district court judge Stephen Larson that essentially delivered the entire billion-dollar Bratz franchise to Mattel, banning MGA from even using the Bratz name.

Never mind.

In a stunning 24-page ruling Thursday, a three-judge panel of the U.S. Court of Appeals for the Ninth Circuit tossed the whole thing. Writing for the panel, Chief Judge Alex Kozinski found that Judge Larson committed all kinds of errors and abuses of discretion, beginning with his summary judgment interpretation of the Bratz designer's employment contract with Mattel. Judge Larson had ruled that all of the designer's creations during his employment with Mattel--even those he conceived outside of work hours--belonged to Mattel; the Ninth Circuit panel ruled the contract terms were at best ambiguous and should been decided by the jury.

And even if Mattel did own rights to the designer's initial ideas and drawings for the Bratz line, the appellate judges found, MGA was responsible for the subsequent Bratz takeover of toyland. Judge Larson, they concluded, erred in imposing the injunction and constructive trust that turned the franchise over to Mattel. "It is not equitable to transfer this billion dollar brand--the value of which is overwhelmingly the result of MGA's legitimate efforts--because it may have started with two misappropriated names," Judge Kozinski wrote. "The district court's imposition of a constructive trust forcing MGA to hand over its sweat equity was an abuse of discretion and must be vacated."

The panel, which also included Ninth Circuit judges Stephen Trott and Kim Wardlaw, vacated the injunction and constructive trust and remanded the case to the district court to figure out how to

address the numerous errors committed below. (Judge Larson resigned from the bench not long after the Bratz trial; the case is now before Santa Ana federal district court judge David Carter.) Because the appeal was only of Judge Larson's award of equitable relief, the Ninth Circuit could not technically vacate the jury award, but the panel made its view of the verdict very plain. "Because several of the errors we have identified appeared in the jury instructions, it's likely that a significant portion--if not all--of the jury verdict and damage award should be vacated, and the entire case will probably need to be retried," Judge Kozinski wrote.

Both sides brought in new lawyers to argue the appeal at the Ninth Circuit. Daniel Collins of Munger, Tolles & Olson argued for Mattel; he didn't return our call for comment. E. Joshua Rosenkranz of Orrick, Herrington & Sutcliffe made the winning appellate argument for MGA.

We talked Thursday afternoon with Rosenkranz and his Orrick partner Annette Hurst, who is representing MGA in a second Mattel case involving racketeering and trade secrets claims that were severed from the infringement trial. "We felt pretty confident after oral arguments," Rosenkranz said, noting that at the end of the argument he pleaded with the appellate judges to stay the injunction and keep MGA in business if they thought there was any chance his client would win on appeal. Four hours later, he said--and despite a previous refusal to stay the injunction--the Ninth Circuit granted the stay.

The Orrick lawyers said they were able to view the issues with fresh eyes because they came in at the appellate stage. "This was one of the most heavily litigated cases in history. Everything was preserved in the record," Rosenkranz said. "The art of appellate advocacy is all about narrowing....We shed a lot of sub-arguments and focused on what we thought would grab the judges' attention."

In particular, Rosenkranz said, he emphasized the dire consequences of Judge Larson's reading of the Mattel employment contract. "What was so scary about this case was the idea that a company with a multibillion dollar business can see that business shut down because a court finds that an employer owns every idea in an employee's head on the basis of a [flimsy] contract," he said.

Thomas Nolan of Skadden, MGA's lead trial lawyer, told us he could hardly stop smiling about the Ninth Circuit ruling.

"We feel completely vindicated," said Nolan, who's on MGA's appellate briefs with Orrick and said he continues to be involved in MGA's defense. "The court accepted almost every argument we made at the district court level and to the jury. They inherently found the employment contract was ambiguous. That's going to be a critical ruling going forward--there's a serious issue as to whether an ambiguous contract is enforceable."

Indeed, Orrick partner Hurst said that the Ninth Circuit opinion leaves open the option of an MGA summary judgment motion for a finding of non-infringement based on the contract's ambiguity. "The case for summary judgment is very strong," she said. "In effect, the case is over." Hurst said that the appellate ruling should also serve to narrow Mattel's RICO and trade secrets case. "In our view," she said, "this opinion will gut what's left to be tried." (In the meantime, Hurst told us, MGA is planning a grand relaunch of the Bratz line in September. She's said she's seen the new generation of dolls, and they're fabulous.)

Mattel's lead trial lawyer, John Quinn of Quinn Emanuel, told us, however, that Mattel's case against MGA has "only gotten stronger." With the appellate court essentially ordering a new infringement trial, Quinn said, it's likely that Judge Carter will try everything at once. "Everything is on the table," Quinn said. "We're looking forward to retrying the case."

Mattel e-mailed us a statement. "The Ninth Circuit Court of Appeals has decided that some aspects of the first phase of Mattel's case against MGA will need to be the subject of further proceedings in the trial court, including a retrial on certain issues previously resolved in Mattel's favor," it says. "We look forward to a full trial on all of Mattel's claims against MGA.  We believe that such a trial will present a comprehensive and even more compelling case for Mattel than was possible with a divided trial. We have great confidence in the judicial system and the ability of a jury to right the wrongs that Mattel has suffered."

This story originally appeared in The Am Law Litigation Daily, a Corporate Counsel sibling publication.

# Exhibit 2

# AMERICAN LAWYER.COM

Select '**Print**' in your browser menu to print this document.

**Copyright 2010. ALM Media Properties, LLC. All rights reserved. The American Lawyer**
Page printed from: http://www.americanlawyer.com

Back to Article

## Bring It On! Judge Sets Trial Date for New Barbie v. Bratz Showdown, Denies MGA Motion to Dismiss Mattel RICO and Trade Secret Claims

Alison Frankel
08-03-2010

Yes, folks, we're now only five months and eight days from the biggest rematch in toy litigation history. On Monday Santa Ana, Calif., federal district court judge David Carter issued an order setting a trial date of Jan. 11 for Mattel's broad array of claims against the upstart doll maker MGA Entertainment. Quinn Emanuel Urquhart Oliver & Hedges will once again represent Mattel in this second trial against MGA; MGA will have lead counsel from Orrick, Herrington & Sutcliffe this time around.

In a separate order Monday, Judge Carter denied MGA's motion to dismiss Mattel's RICO claims, finding that Barbie's parent company adequately pled predicate acts of mail fraud, wire fraud, and obstruction of justice (among other things) against MGA. He also refused to dismiss Mattel's theft of trade secret claims against its bitter rival.

Those allegations weren't heard by the jury in the 2008 trial of Mattel's copyright and trademark infringement case against MGA, which Mattel accused of hijacking designs for the Bratz dolls that dethroned Barbie as the queen of Toyland. The judge who previously oversaw the litigation between Mattel and MGA, now-retired Riverside, Calif., federal district court judge Stephen Larson, bifurcated the case to separate the Bratz issues from Mattel's other claims. And just in case you need reminding, the 2008 trial was a slam dunk for Mattel, which won a $100 million damages verdict for MGA's infringement and an injunction that handed the entire billion-dollar Bratz franchise over to Mattel.

But in a blockbuster ruling last month, the U.S. Court of Appeals for the Ninth Circuit wiped out the results of the first trial. It dissolved the injunction and concluded that Judge Larson erred in his summary judgment interpretation of the employment contract that was the basis of the jury's damages verdict. The appeals court didn't vacate the verdict because, technically, MGA had only appealed the injunction. But the appellate judges signaled their belief that Mattel's entire copyright and trademark infringement case against MGA would have to be retried.

The Ninth Circuit sent the case back to Judge Carter with this closing line: "America thrives on competition; Barbie, the all-American girl, will too."

Judge Carter responded in the first line of his ruling on Mattel's RICO and trade secrets claims: "Barbie may thrive on competition, but did the Bratz thrive on racketeering?"

Judicial phrase-making aside, Judge Carter still has to decide the scope of the retrial of the

Bring It On! Judge Sets Trial Date for New Barbie v. Bratz Showdown, Denies MGA Motion to ...   Page 2 of 2

infringement case. His order setting a Jan. 11 trial date calls on the parties to agree to a hurry-up schedule for summary judgment motions. MGA's lead trial lawyer, Annette Hurst of Orrick, previously told us that MGA will likely file such a motion on Mattel's copyright claims, given the Ninth Circuit's conclusion that the employment contract on which they're based is ambiguous, at best. Hurst didn't return our call and e-mail for comment on Judge Carter's ruling permitting the RICO and trade secrets claims against MGA to proceed.

Mattel trial counsel John Quinn of Quinn Emanuel told us he can't wait to tell a jury the whole story of MGA's alleged scheme to undermine Mattel, from its infringement of Mattel's intellectual property rights for the Bratz name and designs to the theft of trade secrets in Mexico. "Everything is being retried in one trial. This is what we wanted all along," he said. "We want the jury to hear about all of their thefts. Our case gets stronger the more the jury hears."

The first Bratz trial lasted for more than eight weeks. Quinn told us Judge Carter hasn't set a schedule for the second trial, but it's likely to take at least as long, given that this jury will have to decide RICO and trade secrets allegations as well.

"We'll try to keep it interesting," Quinn said.

# Exhibit 3

# AMERICAN LAWYER.COM

Select **'Print'** in your browser menu to print this document.

**Copyright 2010. ALM Media Properties, LLC. All rights reserved. The American Lawyer**
Page printed from: http://www.americanlawyer.com

<u>Back to Article</u>

## Judge Sets Trial Date for New Barbie v. Bratz Showdown

Alison Frankel
The American Lawyer
08-05-2010
Yes, folks, we're now only five months and eight days from the biggest rematch in toy litigation history. On Monday Santa Ana, Calif., federal district court judge David Carter issued <u>an order setting a trial date of Jan. 11</u> for Mattel's broad array of claims against the upstart doll maker MGA Entertainment. Quinn Emanuel Urquhart Oliver & Hedges will once again represent Mattel in this second trial against MGA; MGA will have lead counsel from Orrick, Herrington & Sutcliffe this time around.

In a separate order Monday, Judge Carter <u>denied MGA's motion to dismiss Mattel's RICO claims</u>, finding that Barbie's parent company adequately pled predicate acts of mail fraud, wire fraud, and obstruction of justice (among other things) against MGA. He also refused to dismiss Mattel's theft of trade secret claims against its bitter rival.

Those allegations weren't heard by the jury in the 2008 trial of Mattel's copyright and trademark infringement case against MGA, which Mattel accused of hijacking designs for the Bratz dolls that dethroned Barbie as the queen of Toyland. The judge who previously oversaw the litigation between Mattel and MGA, now-retired Riverside, Calif., federal district court judge Stephen Larson, bifurcated the case to separate the Bratz issues from Mattel's other claims. And just in case you need reminding, the 2008 trial was a slam dunk for Mattel, which won <u>a $100 million damages verdict</u> for MGA's infringement and <u>an injunction that handed the entire billion-dollar Bratz franchise over to Mattel</u>.

But in <u>a blockbuster ruling last month</u>, the U.S. Court of Appeals for the Ninth Circuit wiped out the results of the first trial. It dissolved the injunction and concluded that Judge Larson erred in his summary judgment interpretation of the employment contract that was the basis of the jury's damages verdict. The appeals court didn't vacate the verdict because, technically, MGA had only appealed the injunction. But the appellate judges signaled their belief that Mattel's entire copyright and trademark infringement case against MGA would have to be retried.

The Ninth Circuit sent the case back to Judge Carter with this closing line: "America thrives on competition; Barbie, the all-American girl, will too."

Judge Carter responded in the first line of his ruling on Mattel's RICO and trade secrets claims: "Barbie

Exhibit 3 - Page 8

may thrive on competition, but did the Bratz thrive on racketeering?"

Judicial phrase-making aside, Judge Carter still has to decide the scope of the retrial of the infringement case. His order setting a Jan. 11 trial date calls on the parties to agree to a hurry-up schedule for summary judgment motions. MGA's lead trial lawyer, Annette Hurst of Orrick, previously told us that MGA will likely file such a motion on Mattel's copyright claims, given the Ninth Circuit's conclusion that the employment contract on which they're based is ambiguous, at best. Hurst didn't return our call and e-mail for comment on Judge Carter's ruling permitting the RICO and trade secrets claims against MGA to proceed.

Mattel trial counsel John Quinn of Quinn Emanuel told us he can't wait to tell a jury the whole story of MGA's alleged scheme to undermine Mattel, from its infringement of Mattel's intellectual property rights for the Bratz name and designs to the theft of trade secrets in Mexico. "Everything is being retried in one trial. This is what we wanted all along," he said. "We want the jury to hear about all of their thefts. Our case gets stronger the more the jury hears."

The first Bratz trial lasted for more than eight weeks. Quinn told us Judge Carter hasn't set a schedule for the second trial, but it's likely to take at least as long, given that this jury will have to decide RICO and trade secrets allegations as well.

"We'll try to keep it interesting," Quinn said.

This story originally appeared in The Am Law Litigation Daily, a Corporate Counsel sibling publication.

# Exhibit 4

Daily Journal Newswire Articles
www.dailyjournal.com
© 2010 The Daily Journal Corporation. All rights reserved.

• select Print from the File menu above

• Jul. 23, 2010
## 9th Circuit Rebukes Judge In Bratz Doll Litigation

By Jason W. Armstrong

Daily Journal Staff Writer

The 9th U.S. Circuit Court of Appeals put the Bratz doll line back into the hands of MGA Entertainment Thursday, overturning several key trial court rulings giving Mattel legal rights to the popular brand and raising the potential for a new trial in the brawl over Barbie's main challenger.

The panel ruled that the federal judge who oversaw the case - Stephen G. Larson - committed several errors in the long-festering intellectual property battle, including granting Mattel the Bratz trademark through a constructive trust and issuing a copyright injunction barring MGA from further marketing the dolls. The judges ruled Larson erroneously interpreted a Mattel employment agreement to mean it covered works created outside the scope of employees' jobs.

The agreement was a pivotal part of the case because Larson - who stepped down from the bench last fall to enter private practice - found Mattel owned Bratz based on a jury's finding that former Mattel designer Carter Bryant came up with the wide-eyed, pouty-lipped dolls while working for the company. MGA had argued that Bryant envisioned Bratz on his own time.

"Even if Bryant did assign his ideas, the district court abused its discretion in transferring the entire Bratz trademark portfolio to Mattel," Chief Judge Alex Kozinski wrote for the unanimous panel. Kozinski was joined by Judge Stephen S. Trott and Judge Kim McLane Wardlaw.

"Even assuming that MGA took some ideas wrongfully, it added tremendous value by turning the ideas into products, and eventually, a popular and highly profitable brand," Kozinski wrote. "The value added by MGA's hard work and creativity dwarfs the value of the original ideas Bryant brought with him."

"America thrives on competition," Kozinski added. "Barbie, the all-American girl, will too."

Larson, who is now a partner with Girardi & Keese in Los Angeles, declined to comment on the decision.

"I have too much respect for the process," he said.

The decision comes two years after a Riverside jury awarded Mattel $100 million in damages in its 2004 lawsuit against MGA, including for copyright infringement violations, after finding Bryant came up with original Bratz sketches and prototypes while on Mattel's clock.

Kozinski said in Thursday's ruling that a "significant portion - if not all - of the jury verdict and damage award should be vacated." The entire case "will probably need to be retried," he wrote. *Mattel Inc. v. MGA Entertainment, Inc.*, 09-55673.

The judges remanded the case back to the trial level for further proceedings "consistent" with their decision. Those issues will be heard by U.S. District Judge David O. Carter, who inherited the litigation after Larson stepped down.

Carter is presiding over a pending second phase of the trial in which the parties are pelting one another with additional intellectual property allegations.

E. Joshua Rosenkranz, a partner with Orrick, Herrington & Sutcliffe in New York who argued the appeal for MGA, could not be reached for comment.

Thomas Nolan, a Los Angeles-based partner with Skadden, Arps, Slate, Meagher & Flom who represented MGA in the first phase of the trial, called the 9th Circuit's decision "breathtaking."

"On a scale of one to 10, it's a 15," he said Thursday. "We believe that, had the appropriate legal standards been applied, MGA and [Chief Executive] Isaac Larian would have prevailed."

Larian, in a statement, called the ruling a "sweeping victory."

Annette Hurst, a partner at Orrick in San Francisco who is representing MGA in the second phase of the case, said she expects the 9th Circuit's ruling to "gut" Mattel's allegations that have been scheduled for trial in the second phase, including assertions MGA stole its trade secrets.

Daniel P. Collins, a partner with Munger, Tolles & Olson in Los Angeles who argued the appellate issues on behalf of Mattel, could not be reached for comment Thursday.

Mattel's lead attorney in the trial, John Quinn, also could not be reached. Quinn is name partner with Los Angeles-based Quinn Emanuel Urquhart & Sullivan.

In a statement, Mattel said: "We look forward to a full trial on all of Mattel's claims against MGA. We believe that such a trial will present a comprehensive and even more compelling case for Mattel than was possible with a divided trial. We have great confidence in the judicial system and the ability of a jury to right the wrongs that Mattel has suffered."

Kozinski, Wardlaw and Trott appeared skeptical of some of Larson's decisions in the case during oral argument on MGA's appeal in December. At one point during those proceedings, Kozinski asked, "Why isn't it an abuse of discretion for a judge to say [Mattel] gets all of it," referring to Larson's decision to assign the Bratz line to Mattel. Jedediah Wakefield, a partner with Fenwick & West in San Francisco who handles intellectual property cases and has closely followed the Bratz brouhaha, called the decision significant and said it would likely be cited "in a wide variety of contexts" in the "scope of equitable relief."

Those issues, he said, will probably include "the kinds of injunctions courts grant after intellectual property cases are tried, in addition to how courts interpret employment agreements."

The 9th Circuit's decision also is expected to impact pending litigation in which several Bratz licensees sued MGA, contending they shouldn't be on the hook for the company's fees because Larson ruled Mattel owned rights to Bratz.

"It could be a huge setback for vendors trying to escape whatever obligations they have to MGA," Wakefield said.

jason_armstrong@dailyjournal.com



**********
© 2010 Daily Journal Corporation. All rights reserved.

# Exhibit 5



**Portfolio Media. Inc.** | 860 Broadway, 6th Floor | New York, NY 10003 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@portfoliomedia.com

## 9th Circ. Strikes Down Mattel Win In Bratz Battle

By Ben James

Law360, New York (July 22, 2010) -- A federal appeals court handed down an opinion Thursday in the long-running battle between Mattel Inc. and MGA Entertainment Inc. over Bratz dolls that called a $100 million jury award in Mattel's favor into question and vacated a constructive trust that transferred MGA's Bratz-related intellectual property to Mattel.

A three-judge panel of the U.S. Court of Appeals for the Ninth Circuit issued the 24-page opinion that said the district court's decision to impose a constructive trust making MGA hand over its "sweat equity" was an abuse of discretion.

"It is not equitable to transfer this billion-dollar brand — the value of which is overwhelmingly the result of MGA's legitimate efforts — because it may have started with two misappropriated names," the Ninth Circuit held.

After years of litigation, Mattel won a $100 million jury verdict against MGA in the U.S. District Court for the Central District of California in August 2008.

The jury ruled that the upstart toy company effectively stole the idea for Bratz when it hired Carter Bryant, a fashion designer once employed by Mattel who came up with the dolls, then took a job at MGA.

Thursday's opinion said that because the appeals court had found errors in the jury instructions, a substantial portion, if not all, of the damage award ought to be vacated, and "the entire case will probably need to be retried."

The proceedings at the district court were bifurcated into two phases, the first of which dealt with claims relating to the ownership of Bratz, and the second of which is supposed to deal with the remaining claims, which include trade secrets and Racketeer Influenced and Corrupt Organizations Act allegations.

The second phase has yet to occur. The appeal was an interlocutory challenge to the "equitable orders" issued at the end of the first phase.

The likely result of the Ninth Circuit's ruling is a consolidated trial that brings together all the issues in the case, attorneys for both sides told Law360 on Thursday.

Annette Hurst, an attorney representing MGA in this matter, said that she was thrilled with the decision, and that the momentum in the case had shifted to MGA's side.

"The court has given MGA Bratz back. It is a sweeping victory for MGA," Hurst said. "We were certainly optimistic, but this opinion exceeds our wildest dreams of success."

According to John Quinn, an attorney on Mattel's side, the opinion brings the case back to square one. Quinn added that Mattel had always wanted a consolidated trial, as opposed to two separate stages.

"MGA won the appeal, so we have a do-over. We're back, to a large degree, to where we started, but we'll try it and we'll win it again," Quinn said.

Mattel said in a statement that it was looking forward to a "full trial."

"We have great confidence in the judicial system and the ability of a jury to right the wrongs that Mattel has suffered," the company said in a statement.

Circuit Judges Stephen S. Scott and Kim McLane Wardlaw and Chief Judge Alex Kozinski decided the appeal.

Mattel is represented before the appeals court by Munger Tolles & Olson LLP and Quinn Emanuel Urquhart & Sullivan LLP.

MGA is represented by Orrick Herrington & Sutcliffe LLP and Skadden Arps Slate Meagher & Flom LLP.

The case is MGA Entertainment Inc. et al. v. Mattel Inc. et al., case number 09-55673, in the U.S. Court of Appeals for the Ninth Circuit.

--Additional reporting by Richard Vanderford

All Content © 2003-2010, Portfolio Media, Inc.

7/23/2010

Exhibit 5 - Page 13