1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
   John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
4 | Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
5 | Facsimile:  (213) 443-3100
6 |
7 | Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

8 |                   UNITED STATES DISTRICT COURT

9 |                  CENTRAL DISTRICT OF CALIFORNIA

10 |                        SOUTHERN DIVISION

11 |

| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | MATTEL, INC.'S RESPONSE PURSUANT TO AUGUST 6, 2010 ORDER REGARDING THE NINTH CIRCUIT OPINION AND TRIAL STRUCTURE |
| Defendant. | Hearing Date:     TBD<br>Time:                TBD<br>Place:               TBD |
| AND CONSOLIDATED ACTIONS | Discovery Cut-off:    October 4, 2010<br>Pre-trial Conf:          January 4, 2011<br>Trial Date:               January 11, 2011 |

1

# <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3
PRELIMINARY STATEMENT ............................................................................1

4
BACKGROUND ...............................................................................................2

5
ARGUMENT ...................................................................................................5

6
7
I.    LIABILITY AND DAMAGES FOR COPYRIGHT INFRINGEMENT AND CONVERSION MUST BE RETRIED ...........................6

8
9
II.   THE JURY'S SPECIAL FACT FINDINGS CANNOT BE REEXAMINED CONSISTENT WITH THE SEVENTH AMENDMENT ...........................................................................7

10
III.  THE JURY'S FRAUDULENT CONCEALMENT FINDING CANNOT BE REEXAMINED ........................................................9

11
12
13
IV.   THE JURY'S VERDICTS ON AIDING AND ABETTING BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY AND ON TORTIOUS INTERFERENCE WITH CONTRACT CANNOT BE REEXAMINED ................................................................10

14
      A.    Aiding and Abetting Breach of Duty of Loyalty .................10

15
      B.    Aiding and Abetting Breach of Fiduciary Duty...................13

16
      C.    Intentional Interference With Contractual Relations ...........14

17
      D.    Ample Evidence Supports the Jury's Verdicts ....................16

18
V.    SUMMARY JUDGMENT RULINGS THE NINTH CIRCUIT DID NOT ADDRESS SHOULD NOT BE REEXAMINED................................18

19
CONCLUSION ...............................................................................21

20

21

22

23

24

25

26

27

28

00505.07975/3639641.4

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,
369 U.S. 355 (1962) ............................................................................5, 6

Bains LLC v. Arco Prods. Co.,
405 F.3d 764 (9th Cir. 2005) ..........................................................6, 18

Daniel Orifice Fitting Co. v. Whalen,
198 Cal. App. 2d 791 (1962) ...............................................................17

Duk v. MGM Grand Hotel, Inc.,
320 F.3d 1052 (9th Cir. 2003) ...............................................................8

Eximco, Inc. v. Trane Co.,
737 F.2d 505 (5th Cir. 1984)......................................................5, 10, 18

Floyd v. Laws,
929 F.2d 1390 (9th Cir. 1991) ...............................................................8

Galdamez v. Potter,
415 F.3d 1015 (9th Cir. 2005) ...............................................................5

Gasoline Prods. Co. v. Champlin Refining Co.,
283 U.S. 494 (1931).................................................................................5

Green v. Am. Tobacco Co.,
325 F.2d 673 (5th Cir. 1963)...................................................................8

Hasbrouck v. Texaco, Inc.,
663 F.2d 930 (9th Cir. 1981) ................................................................10

Iconix, Inc. v. Tokuda,
457 F. Supp. 2d 969 (N.D. Cal. 2006)..................................................17

Julien J. Studley, Inc. v. Gulf Oil Corp.,
407 F.2d 521 (2d Cir. 1969)....................................................................6

Larez v. Holcomb,
16 F.3d 1513 (9th Cir. 1994) ................................................................10

Lies v. Farrell Lines, Inc.,
641 F.2d 765 (9th Cir. 1981) ..............................................................5, 6

Los Angeles Memorial Coliseum Com'n v. Nat'l Football League,
1356, 1365 (9th Cir. 1986)....................................................................18

Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.,
275 F.3d 762 (9th Cir. 2001)................................................................18

00505.07975/3639641.4

Moore v. Regents of Univ. of Cal.,
  51 Cal. 3d 120 (1990) .............................................................................7

Pritchard v. Liggett & Myers Tobacco Co.,
  370 F.2d 95 (3d Cir. 1966)......................................................................8

Rebel Oil Co., Inc. v. Atlantic Richfield Co.,
  146 F.3d 1088 (9th Cir. 1998)................................................................18

Schutzky Dist., Inc. v. Kelly,
  643 F. Supp. 57 (N.D. Cal. 1986)........................................................5, 6

Spurlin v. Gen. Motors Corp.,
  528 F.2d 612 (5th Cir. 1976)...................................................................5

U.S. ex rel. Greenhalgh v. F.D. Rich Co.,
  520 F.2d 886 (9th Cir. 1975)...................................................................5

## **Statutes**

Cal. Labor Code § 2863 ...............................................................................10

Fed. R. Civ. P. 59(a) ......................................................................................6

U.S. Const. amend. VII ..................................................................................8

## **Preliminary Statement**

The Ninth Circuit's opinion requires a retrial of some claims tried in Phase 1. But it does not impact, and leaves intact, other claims, defenses, and issues. There is no cause to reexamine the jury's prior findings where they have not been disturbed by the Ninth Circuit's holdings and indeed the Seventh Amendment prohibits any such reexamination. Likewise, there is no cause to reassess summary judgment rulings that were made in Phase 1 where they have not been overturned, and the law of the case doctrine precludes any such reassessment.

Mattel agrees that its copyright and conversion claims must be retried. The jury's findings of liability on these claims were based on the conclusion that Mattel owned Bratz, an issue the Ninth Circuit held must be revisited. But the same cannot be said of other claims and issues decided in Phase 1.

First, the Seventh Amendment precludes allowing a second jury to reexamine the first jury's factual findings made in the form of answers to written questions. The jury made more than 75 specific factual findings concerning the fact and timing of Carter Bryant's creation of tangible items, including the Bratz sculpt and drawings, and the fact and timing of Bryant's conception of the Bratz characters and the name "Bratz" itself. These are pure findings of fact that are not implicated by any ruling or jury instructions held erroneous (or even addressed) by the Ninth Circuit. As prototypical findings of fact, they cannot be reexamined consistent with the Seventh Amendment's requirement that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

In addition, the jury reached verdicts on fraudulent concealment, aiding and abetting breach of duty of loyalty, aiding and abetting breach of fiduciary duty, and tortious interference with contract that are not affected by any jury instructions or rulings rejected by the Ninth Circuit. Accordingly, there is no reason for the Court to hold a second trial on any aspect of these claims or issues, and the Reexamination Clause bars allowing a second jury to reexamine the first jury's findings.

1   Finally, the Court should not revisit summary judgment rulings the Ninth Circuit

2   did not expressly address.  Several summary judgment rulings in this case, following

3   months of briefing and days of oral argument, have not been called into question in any

4   way by the Ninth Circuit's decision.  They are the law of the case and remain binding.

## Background

**Summary Judgment.**  The Ninth Circuit did not address most of the Court's prior

summary judgment rulings.  On April 25, 2008, the Court issued an Order on the parties'

motions for partial summary judgment.[1]  The Court's ruling regarding the interpretation

of the Inventions Agreement, which was addressed by the Ninth Circuit, is set forth in

that Order.[2]  But a number of other rulings in that Order are unaffected by the Ninth

Circuit opinion, including the rulings that (1) the Inventions Agreement is valid and

enforceable (Order at 4-5); (2) Carter Bryant owed both a duty of loyalty and fiduciary

duty to Mattel (Order at 5);[3] and (3) Bryant breached his duty of loyalty to Mattel (Order

at 5).  The Court subsequently issued other summary judgment rulings on May 21,

2008,[4] May 27, 2008[5] and June 2, 2008.[6]  These Orders rejected MGA's and Larian's

statute of limitations defenses, among other things.[7]  None of these rulings has been

affected by the Ninth Circuit opinion.

**The Jury's Findings.**  The trial was divided into phases.  Phase 1A addressed the

timing of Bryant's creation of Bratz.  Phase 1A also tried Mattel's intentional tort claims,

including intentional interference with contractual relations, aiding and abetting breach

---

[1]   Dkt. No. 3286.

[2]   Id. at 4-5.

[3]   The Court initially found that Bryant had breached his fiduciary duty as a matter of law.  Apr. 25, 2008 Order at 6 (Dkt. No. 3286).  The Court subsequently reconsidered and vacated that ruling, concluding the issue of the scope of Bryant's fiduciary duty and breach thereof would be decided at trial. See May 21, 2008 Order at 3-4 (Dkt. No. 3758).

[4]   Dkt. No. 3758.

[5]   Dkt. No. 3826.

[6]   Dkt. No. 3902.

[7]   May 27, 2008 Order re Statute of Limitations Defense (Dkt. No. 3826), June 2, 2008 Further and Final Order Re Statute of Limitations Defense (Dkt. No. 3902).

of fiduciary duty, aiding and abetting breach of the duty of loyalty, and conversion. Phase 1B addressed liability for Mattel's claim for copyright infringement, damages for all claims, and fraudulent concealment.

Phase 1A.  At the end of Phase 1A, the Court submitted to the jury a verdict form that included general verdicts and written questions on issues of fact.[8]  In response to the written questions, the jury found, one by one, that more than 75 Bratz design drawings and sculpts, the name "Bratz," and the Bratz characters had been "'conceived or reduced to practice'—that is, created—by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)."[9] These were pure findings of fact.  The jury also found MGA and Larian liable for intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting breach of the duty of loyalty, and found MGA, Larian, and MGA Entertainment (HK) Limited ("MGA Hong Kong") liable for conversion.[10]

Phase 1B.  Prior to Phase 1B, the Court issued an Order clarifying the remaining matters to be tried to the jury.[11]  At the end of Phase 1B, the Court submitted a second verdict form to the jury.[12]  The jury found MGA, Larian, and MGA Hong Kong liable for copyright infringement and awarded Mattel a total of $10 million in damages on that claim.[13]  The jury found that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against MGA until at least April 27, 2002, and fraudulently concealed the bases for Mattel's claim of conversion against MGA until at least April 27, 2001.[14]  The jury awarded damages to Mattel for intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and

---

[8]  Dkt. No. 4125.
[9]  Id. at 1-5.
[10]  Id. at 6-7.
[11]  Dkt. No. 4154.
[12]  Dkt. No. 4279.
[13]  Id. 4-5.
[14]  Id. at 8.

abetting breach of duty of loyalty in the amount of $20 million for each claim as to MGA, and $10 million for each claim as to Larian.[15]   The Court later ruled that these awards properly should be added together, and were not duplicative of one another or of the copyright damages.[16]   The jury awarded damages to Mattel for conversion as well.[17]

**The Court's Further Rulings.**   There was also a third phase, called Phase 1C, in which the Court addressed equitable claims and defenses.   The Court rejected MGA's laches, estoppel and waiver defenses.[18]   The Court also entered orders for equitable relief in Mattel's favor.[19]   This included the Court's grant of a declaratory judgment in Mattel's favor that, based on the jury's findings and under the Court's construction of the Inventions Agreement, the Bratz works addressed by the jury belonged to Mattel.[20] In addition, the Court   issued rulings on MGA's and Mattel's post-trial motions, rejecting MGA's arguments that copyright law and the California Uniform Trade Secrets Act preempted Mattel's state law claims; that Mattel failed to prove damages as to its state law claims; and that Mattel failed to prove MGA's knowledge of Bryant's breach of fiduciary duty.[21]   The Court rejected MGA's other challenges to the jury's findings as well,[22] and rejected MGA's argument that the statute of limitations barred Mattel's claim for intentional interference with contractual relations.[23]

**The Ninth Circuit Opinion.**   MGA appealed the Court's equitable orders.   On July 22, 2010, the Ninth Circuit issued its opinion, holding among other things that the District Judge had erred in concluding as a matter of law that the terms of the Inventions

---

[15] Id. at 2.
[16] Dkt. No. 5273 at 7-9.
[17] Id. at 3.
[18] Dkt. No. 4439 at 3-5.
[19] Dkt. No. 4441; Dkt. No. 4443.
[20] Dkt. No. 5273 at 5; Dkt. No. 3286 at 4-5.
[21] Dkt. No. 5273 at 3-5.
[22] Id. at 3-6.
[23] Id. at 9-11.

1   Agreement unambiguously assigned ownership of Bryant's Bratz works to Mattel.[24] The

2   panel vacated the equitable relief ordered by the Court.[25]

3                                         **<u>Argument</u>**

4          "The law is settled that an error at trial relating to one issue that does not affect the

5   determination of other issues does not justify granting a new trial on any issues except

6   the tainted one."  <u>Eximco, Inc. v. Trane Co.</u>, 737 F.2d 505, 513 (5th Cir. 1984).  This

7   rule is consistent with the Seventh Amendment's Reexamination Clause: "[W]here the

8   requirement of a jury trial has been satisfied by a verdict according to law upon one issue

9   of fact, that requirement does not compel a new trial of that issue even though another

10  and separable issue must be tried again." <u>Gasoline Prods. Co. v. Champlin Refining Co.</u>,

11  283 U.S. 494, 499 (1931).  "Having been finally adjudicated," an issue not affected or

12  undermined by a decision on appeal "may not be retried on remand."  <u>U.S. ex rel.</u>

13  <u>Greenhalgh v. F.D. Rich Co.</u>, 520 F.2d 886, 889-90 (9th Cir. 1975); <u>see also</u> <u>Galdamez</u>

14  <u>v. Potter,</u> 415 F.3d 1015, 1025 n.8 (9th Cir. 2005) (ordering that new trial be partial and

15  limited to specific issues); <u>Lies v. Farrell Lines, Inc.</u>, 641 F.2d 765, 774 -775 (9th Cir.

16  1981) (finding district court erroneously granted summary judgment on one theory of

17  liability, but declining to order retrial as to other theory of liability and other issues).

18         Due deference to the jury's findings requires no less.  The Reexamination Clause

19  "expresses in clear terms the principle that facts once found by a jury in the context of a

20  civil trial are not to be reweighed and a new trial granted lightly."  <u>Spurlin v. Gen.</u>

21  <u>Motors Corp.</u>, 528 F.2d 612, 620 (5th Cir. 1976); <u>see</u> <u>Atl. & Gulf Stevedores, Inc. v.</u>

22  <u>Ellerman Lines, Ltd.</u>, 369 U.S. 355, 359 (1962) ("neither [the Supreme Court] nor the

23  Court of Appeals can redetermine facts found by the jury any more than the District

24  Court can predetermine them.").  "Once judges are given the discretion to disregard jury

25  verdicts as they see fit, the viability of the jury as an institution capable of rendering

26

27  [24]  July 22, 2010 Opinion, C.A. Nos. 09-55673, 09-55812 (Dkt. No. 145).
    [25]  <u>Id.</u> at 10534, 10539.

28

1  truly binding decisions is seriously imperiled." <u>Schutzky Dist., Inc. v. Kelly</u>, 643 F.

2  Supp. 57, 59-60 (N.D. Cal. 1986). Even where there is some question as to whether

3  erroneous instructions may have affected a claim, the Court ***must*** uphold a finding unless

4  there is no possible basis for doing so. <u>See, e.g.</u>, <u>Julien J. Studley, Inc. v. Gulf Oil Corp.</u>,

5  407 F.2d 521, 527 (2d Cir. 1969) ("unless, in other words, there is no 'possible view of

6  the case' on which valid findings support the general verdict- we must uphold the jury's

7  final decision to avoid a potential 'collision with the Seventh Amendment.'"); <u>see also</u>

8  <u>Atl. & Gulf Stevedores</u>, 369 U.S. at 364 ("For a search for one possible view of the case

9  which will make the jury's finding inconsistent results in a collision with the Seventh

10 Amendment."); <u>Bains LLC v. Arco Prods. Co.</u>, 405 F.3d 764, 771 (9th Cir. 2005) (court

11 is "obligated to ask 'not whether the verdict necessarily makes sense under any reading,

12 but whether it can be read in light of the evidence to make sense.").[26]

13 **I.    LIABILITY AND DAMAGES FOR COPYRIGHT INFRINGEMENT**

14 **AND CONVERSION MUST BE RETRIED**

15      Mattel agrees that the Ninth Circuit's ruling requires a retrial as to both liability

16 and damages for copyright infringement and conversion. In Phase 1B, the jury returned

17 a verdict of liability and awarded damages against MGA, Larian, and MGA Hong Kong

18 for copyright infringement.[27] However, the jury was instructed, in reaching these

19 verdicts, that Mattel owned the works at issue as a matter of law.[28] Accordingly, this

---

20  [26] Although these cases deal with new trial orders under <u>Rule</u> 59, the Ninth Circuit

21 has made clear that the principles of <u>Rule</u> 59 new trial analysis apply in the context of a retrial after remand from an appellate court. <u>See Lies v. Farrell Lines, Inc.</u>, 641 F.2d

22 765, 774 (9th Cir. 1981) ("Although <u>Rule</u> 59(a) is expressly applicable only to new trials granted by district courts . . . its principle has been applied to orders of remand

23 from appellate courts.").

    [27] Dkt. No. 4279 at 5.

24  [28] <u>See</u> Dkt. No. 4267 at 21 (Phase 2 Jury Instruction No. 20) ("As a matter of law,

25 Mattel is the owner, by assignment, of the Bratz-related items that you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel, which

26 items have been registered by Mattel at the U.S. Copyright Office. . . ."); <u>id.</u> at 24 (Phase 2 Jury Instruction No. 22) ("As a matter of law, the first element is satisfied

27 because Mattel is the owner of each of the items you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel and which Mattel has

28 registered with the U.S. Copyright Office. . . .").

---

claim must be retried as to both liability (including willfulness) and damages.  Similarly, in Phase 1A, the jury returned a verdict that all three defendants, MGA, Larian, and MGA Hong Kong, were liable to Mattel for conversion and awarded damages in Phase 1B.[29]  An element of Mattel's conversion claim is ownership of what was converted, including the Bratz works at issue.[30]  Accordingly, this claim likewise must be retried.

## II.   THE JURY'S SPECIAL FACT FINDINGS CANNOT BE REEXAMINED CONSISTENT WITH THE SEVENTH AMENDMENT

Separate and apart from its verdicts on liability and damages, the Phase 1 jury made specific findings concerning the fact and timing of Bryant's creation of more than 75 specific Bratz drawings and sculpts, as well as the fact and timing of Bryant's conception of the Bratz characters and the "Bratz" name.  Much of the Phase 1A trial focused on this issue; the jury heard extensive evidence concerning whether Bryant had created the dozens of works listed on the verdict form in 1998, as MGA claimed, or during Bryant's employment with Mattel in 1999 and 2000, as Mattel claimed.[31]  The jury found as to all but four of the items as to which no unanimous verdict could be reached that "Mattel prove[d] by a preponderance of the evidence that the item was 'conceived or reduced to practice'—that is, created—by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)."[32]  The jury also found that Mattel proved by a preponderance of the evidence that Carter Bryant conceived the "Bratz" characters and the name "Bratz" during this same period of time.[33]

---

[29]   Dkt. No. 4279 at 3.
[30]   See Moore v. Regents of Univ. of Cal., 51 Cal.3d 120, 136 (1990) ("To establish a conversion, plaintiff must establish an actual interference with his *ownership* or *right of possession*") (emphasis in original).
[31]   Dkt. No. 4125 at 1-5.
[32]   Id. at 1 (the jury declined to mark the verdict form at all for TX5-39, TX 5-40, TX 751-2, and TX 5-42).
[33]   Dkt. No. 4125 at 5.

1    These temporal findings are critical.  Whether they alone yield ownership or not,

2    and whether or not additional findings will need to be made for Mattel to prove

3    ownership, these findings reflect the jury's rejection of the 1998 creation story, which

4    was MGA's primary Phase 1 defense proffered through sworn testimony of its key

5    witnesses.  ***Nothing*** in the Ninth Circuit opinion remotely affects the legitimacy of these

6    factual findings as to the timing of creation.  Bryant conceived and created these works

7    when the jury found he did.  Indeed, the jury's temporal findings ***could not possibly*** have

8    been affected by any erroneous jury instructions because the findings did not apply ***any***

9    law to the facts; the jury simply found facts.[34]

10   Because their legitimacy clearly has not been undermined, the Seventh

11   Amendment precludes reexamining these factual findings.  The terms of the Amendment

12   itself makes this clear:  "no fact tried by a jury, shall be otherwise re-examined in any

13   Court of the United States, than according to the rules of the common law."  U.S. Const.

14   amend. VII.  And it is settled by binding precedent that a jury's answers to written

15   questions of fact deserve the most deference under the Seventh Amendment.  See <u>Floyd</u>

16   <u>v. Laws</u>, 929 F.2d 1390, 1397 (9th Cir. 1991) ("The special verdict reflects the jury's

17   findings of fact, and it would be a violation of the Seventh Amendment right to jury trial

18   for the court to disregard a jury's finding of fact."); <u>Green v. Am. Tobacco Co.</u>, 325 F.2d

19   673, 678 (5th Cir. 1963) ("While the general verdicts for the defendant are vacated, the

20   parties are nonetheless bound by the jury's answers to written interrogatories."); <u>see also</u>

21   <u>Duk v. MGM Grand Hotel, Inc.</u>, 320 F.3d 1052, 1058-59 (9th Cir. 2003) ("A trial court

22   is rarely entitled to disregard jury verdicts that are supported by substantial evidence.");

23   <u>Pritchard v. Liggett & Myers Tobacco Co.</u>, 370 F.2d 95, 95-96 (3d Cir. 1966) ("Since

24

25

---

26   [34]   Although the jury was given an instruction that summarized the parties'
     contentions and quoted the Inventions Agreement to provide context, <u>see</u> Phase 1 Jury
27   Instruction No. 21, that does not alter in any way that pure findings of fact, not verdicts
     applying the law to facts, were what the jury issued here.  Dkt. No. 4115 at 22-23.
28

1  the issue of causation was decided by the jury in the earlier trial, the plaintiff may not be

2  required to relitigate the same issue when the action is retried.").

3        Even if a second jury must make ***additional*** findings to decide ownership – such

4  as the meaning of the Inventions Agreement or whether the Bratz-related items were

5  created or conceived during Mattel working hours – these questions are entirely separate

6  from the first jury's distinct, specific findings of fact that the 75-plus listed items were in

7  fact created or conceived by Bryant between January 4, 1999 and October 19, 2000.  The

8  Constitution requires that these findings be respected, and the next jury can simply be

9  instructed that these facts have already been determined as appropriate.

10  **III.**    **THE JURY'S FRAUDULENT CONCEALMENT FINDING CANNOT BE**

11        **REEXAMINED**

12        The jury's verdict of fraudulent concealment against MGA also cannot be

13  disturbed.  The jury found that Mattel proved by a preponderance of the evidence that

14  MGA fraudulently concealed the bases for Mattel's claim of intentional interference

15  with contract against it until at least April 27, 2002, and fraudulently concealed the bases

16  for Mattel's claim of conversion against it until at least April 27, 2001.[35]  The relevant

17  instruction makes clear that these verdicts are unaffected by the Ninth Circuit's ruling:

18      **Jury Instruction No. 35**

19      Mattel claims that defendants fraudulently concealed the facts underlying
    Mattel's claims of intentional interference with contract and conversion.

20      Defendants deny these allegations.

21      To prove fraudulent concealment, Mattel must show the following by a
    preponderance of the evidence

22      (1) the defendants took affirmative steps to conceal the facts that could

23      have led Mattel to discover that Carter Bryant created Bratz-related works
    while employed by Mattel or that Carter Bryant entered into a contract

24      with and worked with MGA while he was still employed by Mattel; and

25      (2) Mattel was not aware of such facts that either did or would have, with
    diligence, led Mattel to discover that Carter Bryant created Bratz works

26

27      [35]  Dkt. No. 4279 at 8.  Although the jury did not find fraudulent concealment as against Larian, the Court ruled that moot because Mattel's claim for tortuous interference with contract "was timely asserted" against him.  Dkt. No. 5273 at 11.

28

-9-

while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel. . . . . [Dkt. No. 4267 (Court's Phase B Jury Instructions as Given) at 39.]

As this shows, the jury's verdict on this issue is unconnected to the issues in the appellate ruling and has not been undermined.  The Seventh Amendment precludes re-examination of it.  Eximco, 737 F.2d at 513 ("The law is settled that an error at trial relating to one issue that does not affect the determination of other issues does not justify granting a new trial on any issues except the tainted one."); Hasbrouck v. Texaco, Inc., 663 F.2d 930, 933 (9th Cir. 1981) ("We find that two of the issues decided below are sufficiently 'distinct and separable' from the [remanded] question that, in the interest of judicial economy, they may be presently disposed of without affecting the fairness of the contemplated new trial.").

## IV.   THE JURY'S VERDICTS ON AIDING AND ABETTING BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY AND ON TORTIOUS INTERFERENCE WITH CONTRACT CANNOT BE REEXAMINED

The jury's verdicts as to intentional interference with contract and aiding and abetting breach of fiduciary duty and duty of loyalty likewise did not necessarily depend on ownership of Bratz or the scope of copyright infringement, and thus were not impacted by the Ninth Circuit's ruling.  Accordingly, they may not be reexamined.  See Larez v. Holcomb, 16 F.3d 1513, 1520 (9th Cir. 1994); Eximco, 737 F.2d at 513.

### A.   Aiding and Abetting Breach of Duty of Loyalty

At summary judgment, the Court held that "Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there.  See Cal. Labor Code § 2863.  The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."[36] Accordingly, the Court granted Mattel's motion for summary judgment on the issues of

the existence and Bryant's breach of the duty of loyalty – *before* and independent of any findings were made about who owned Bratz.[37]   The jury found MGA and Larian liable for aiding and abetting Bryant's breach of duty of loyalty and awarded damages.[38]

None of this was addressed by the Ninth Circuit.[39]   The jury instructions make clear that liability on this claim did not depend on any issue addressed by the Ninth Circuit, but rather turned on MGA's and Larian's knowledge and encouragement of Bryant's breach of his duty of loyalty to Mattel:

**Jury Instruction No. 25**

In its third and fourth claims, Mattel contends that MGA and Isaac Larian aided and abetted Carter Bryant's breaches of (1) his fiduciary duty to Mattel and (2) his duty of loyalty to Mattel.  To establish that MGA and/or Mr. Larian are liable for aiding and abetting breaches of fiduciary duty or breach of duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

1.  Mr. Bryant's conduct constituted a breach of such duty or duties;

2.  MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.  MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.  [Dkt No. 4115 (Final Jury Instructions as Given) at 28.]

**Jury Instruction No. 27**

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.  That Mr. Bryant was Mattel's employee;

2.  That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.  That Mattel did not give informed consent to Mr. Bryant's conduct;

4.  That Mattel was harmed in some way; and

5.  That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

---

[36]   Dkt. No. 3286 (Apr. 25, 2008) Order at 6.
[37]   Id.
[38]   Dkt. No. 4279 at 2.
[39]   Opin. at 10548, n.12 ("We also decline to address MGA's appeal of the district court's decisions concerning the three alleged state-law violations . . . .").

An employee owes his or her employer a duty of loyalty. The scope of the employee's duty varies with the nature of the employee's relationship with his employer. [Dkt. No. 4115 (Final Jury Instructions as Given) at 30.]

**Jury Instruction No. 28**

As a matter of law, Carter Bryant owed both a fiduciary duty and a duty of loyalty to Mattel.

. . . .

As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when he entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

At the same time, merely seeking employment from a competitor, and a failure to notify an employer of a decision to seek new employment until a decision is final, does not constitute a breach of duty of loyalty. [Dkt. No. 4115 (Final Jury Instructions as Given) at 31-32.]

As these instructions show, Mattel's claim for aiding and abetting breach of duty of loyalty was adjudicated without any reference to or reliance upon the ownership of Bratz or any issues addressed in the Ninth Circuit's opinion. Indeed, there can be no question that the jury's verdicts on this claim are separate and distinct from questions related to ownership of Bratz. The Court concluded—*before* there were any findings about who owned Bratz—that Bryant had breached his duty of loyalty to Mattel as a matter of law "when he entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."[40] This finding was not in any way dependent on Mattel's ownership of Bratz. Mattel's aiding and abetting breach of duty of loyalty claim merely required additional proof of MGA's and Larian's knowledge and encouragement of Bryant's violations, which likewise is wholly separate and distinct from the issues addressed on appeal.

---

[40]   Dkt. No. 3286 (Apr. 25, 2008) Order at 2.

### B.      Aiding and Abetting Breach of Fiduciary Duty

At summary judgment, the Court also held that Bryant owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement.[41]  The jury found that Bryant breached his fiduciary duty, found MGA and Larian liable for aiding and abetting that breach and awarded damages.[42]  As the jury instructions make clear, these verdicts also are not implicated by the appellate decision.

**Jury Instruction No. 26**

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.  That Mr. Bryant owed a fiduciary duty to Mattel;

2.  That Mr. Bryant breached his fiduciary duty to Mattel;

3.  That Mattel did not give informed consent to Mr. Bryant's conduct;

4.  That Mattel was harmed in some way; and

5.  That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interests.  [Dkt. No. 4115 (Final Jury Instructions as Given) at 29.]

**Jury Instruction No. 28**

As a matter of law, Carter Bryant owed both a fiduciary duty and a duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary information

---

[41]  Dkt. No. 3286 (Apr. 25, 2008) Order at 2.  The Court initially found that Bryant had breached his fiduciary duty as a matter of law as well (id.), but later vacated that ruling, and the issue of Bryant's breach of fiduciary duty was submitted to the Phase 1A jury.  See Dkt. No. 3758 at 4.

[42]  Dkt. No. 4279 at 2.

depends on it remaining confidential.  The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines "Proprietary Information" as follows:

"'Proprietary Information' means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors, and other persons and entities with whom the Company does business." . . . . [Dkt. No. 4115 (Final Jury Instructions as Given) at 31-32.]

Again, as these instructions demonstrate, Mattel's claim for aiding and abetting breach of duty of loyalty was adjudicated without any reference to or reliance upon the ownership of Bratz or any issues addressed in the Ninth Circuit's opinion.

## C.   Intentional Interference With Contractual Relations

The jury found MGA and Larian liable for intentional interference with contractual relations and awarded damages as to both.[43]  In denying MGA's motion for summary judgment as to this claim, the Court expressly held it was ***not,*** and could not be, premised upon interference with any copyrights that Mattel may own, such as in Bratz works.  Dkt. No. 3286 (Apr. 25, 2008 Order) at 2.  Instead, the Court ruled that "to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted.  That claim is qualitatively different from Mattel's copyright claim."  Id.

The jury instructions on this claim reflect that it is "qualitatively different" from the copyright claim, having no connection with either copyright or Bratz ownership issues.  The jury received the following instructions as to this claim:

### Jury Instruction No. 22

In its second claim, Mattel contends that that [sic] MGA and Isaac Larian intentionally interfered with the Inventions Agreement between Mattel and Carter Bryant.  To establish this claim, Mattel must prove by a preponderance of the evidence:

---

[43]   Dkt. No. 4279 at 2.

00505.07975/3639641.4

1. That there was a valid contract or contracts between Mattel and Carter Bryant;

2. That MGA and/or Mr. Larian knew of the contract;

3. That MGA and/or Mr. Larian intended to disrupt the performance of the contract;

4. That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5. That Mattel was harmed in some way; and

6. That the conduct of MGA and/or Mr. Larian was a substantial factor in causing Mattel's harm.

**Jury Instruction No. 23**

As a matter of law, there was a valid contract between Mattel and Mr. Bryant, namely the Inventions Agreement.

As a matter of law, Mr. Bryant directly competed with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a competing product while he was still employed by Mattel. Whether the remaining requirements of Mattel's claim for intentional interference with contractual relations have been satisfied or not is for you to decide.

It is also a matter of law that MGA and/or Issac Larian's mere offering of employment to Carter Bryant would not be sufficient, by itself, to establish an intentional interference with the contract between Mattel and Mr. Bryant.

**Jury Instruction No. 24**

In deciding whether MGA or Isaac Larian acted intentionally, you may consider whether they knew that a disruption in the performance of a contract or contracts was substantially certain to result from their conduct. [Dkt No. 4115 (Final Jury Instructions as Given) at 24-27.]

As these instructions make clear, the claim for intentional interference with contract was tried and adjudicated without any reference to or reliance upon the issues of whether and to what extent Mattel owned Bratz or whether any Mattel copyrights were infringed. Rather, the claim simply answered the questions of whether a valid contract existed between Bryant and Mattel, whether Larian and MGA knew about, intended to, and in fact did, disrupt the performance of that contract, causing harm to Mattel. The Inventions Agreement contains provisions litigated in Phase 1 that have not been impacted by the Ninth Circuit's ruling, including the provisions of Paragraph 3 regarding

MATTEL'S RESPONSE PURSUANT TO AUGUST 6, 2010 ORDER

1   the avoidance of conflicts of interest, which Bryant violated when he "directly competed

2   with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a

3   competing product while he was still employed by Mattel," as the jury was instructed.[44]

4       **D.   Ample Evidence Supports the Jury's Verdicts**

5       The time for MGA to challenge to sufficiency of the evidence supporting these

6   verdicts is long past since any new trial motions on insufficiency grounds were due in

7   2008,[45] but any such challenge would fail in any case.  Mattel presented substantial

8   evidence at trial *unrelated* to ownership of Bryant's Bratz works showing that Bryant

9   breached his statutory and contractual duties to Mattel and that MGA and Larian aided

10  and abetted those breaches and interfered with Bryant's obligations.  This evidence

11  included – among much, much else – that MGA and Larian knew full well of Bryant's

12  duties to Mattel and contracts with Mattel,[46] that MGA paid Bryant while he was still

13  employed by Mattel,[47] that Bryant used Mattel resources to develop the competing Bratz

14  line,[48] that Bryant corresponded with vendors on behalf of MGA while still employed by

15  Mattel,[49] that MGA knew that Bryant worked for MGA extensively while employed full

16

17

18

---

19      [44]   Trial Ex. 25 (Inventions Agreement).
        [45]   Order, dated Sept. 8, 2008 [Dkt. No. 4293], at 2.

20      [46]   Trial Tr. at 296:25-298-25; 541:2-544:13 (it was toy industry practice for
        employees to sign inventions and confidentiality agreements); Trial Tr. at 545:9-546:4;

21      1024:11-1026:2; 1624:15-1626:14 (MGA's own employment contracts contained such
        provisions); Trial Tr. at 541:2-544:13; TX 1116 (MGA executive Paula Garcia, who

22      was present at Carter Bryant's pitch of Bratz to MGA, had signed an Inventions
        Agreement herself when she worked at MGA and knew that Mattel employees were

23      required to sign such agreements); TX 2201 (Bryant sent a fax to MGA's attorney
        informing MGA that he had an Inventions Agreement with Mattel).

24      [47]   Trial Ex. 15 (contract between MGA and Bryant dated September 18, 2000
        calling for payments from MGA to Bryant of $5,500 per month).

25      [48]   Trial Tr. at 2496:1-7 (Bryant used Mattel co-workers to help him build a Bratz
        prototype).

26      [49]   See Trial Ex. 30 (September 18, 2000 letter from Carter Bryant to a vendor
        stating that Bryant is working with MGA); Trial Tr. at 1130:8-1157:25 (testimony of

27      third party Steve Linker regarding meetings and work with Carter Bryant and various
        MGA employees on Bratz during the time Bryant was still employed by Mattel).

28

1    time by Mattel,[50] and so on.  The evidence of misconduct supporting the jury's tort

2    findings that is *not* predicated on who owns Bratz is overwhelming.[51]

3         Likewise, there is no shortage of evidence fully supporting the jury's damages

4    verdicts on these claims, putting aside Mattel's claims for ownership of Bratz; indeed,

5    MGA never would have obtained or exploited Bratz, or received its ill-gotten gains from

6    Bratz, had Bryant complied with his duties to Mattel.  Bryant could not have pitched his

7    designs to Mattel's competitor whether or not he had assigned them to Mattel; his duties

8    and obligations to Mattel, as an employee and a fiduciary, prohibited exactly that type of

9    competitive behavior and that type of conflict of interest.  <u>See, e.g.</u>, <u>Iconix, Inc. v.

10   Tokuda</u>, 457 F. Supp. 2d 969, 982-987 (N.D. Cal. 2006) (employee breached fiduciary

11   duty to employer by violating the corporate opportunity doctrine where employee

12   developed and exploited for his own benefit an idea "reasonably incident to the

13   corporation's present or prospective business" and concerning a business endeavor in

14   which the employer "had the capacity to engage"); <u>Daniel Orifice Fitting Co. v. Whalen</u>,

15   198 Cal. App. 2d 791, 796-799 (1962) (fiduciary of company who was "employed to

16   design improvements to the product of his employer . . . may not use the results of [his]

17   work for his own use and benefit, and particularly not to the detriment of his employer").

18   Whether or not Mattel owns Bratz, MGA was unjustly enriched by its wrongdoing.  The

19   jury's verdicts to that effect are fully supported.

20        Indeed, the Court has previously rejected MGA's arguments that the jury's

21   damages awards on these claims "duplicated" damages awarded under a theory turning

22   on Bratz ownership.  After trial, MGA moved for a remittitur of the damages verdicts,

---

[50]  Trial Ex. 305 (email in which MGA executive Paula Treantafelles (Garcia) states "I would say Carter has worked an average of about four hours a day, and we began working on this line the first part of September").

[51]  Space constraints here preclude Mattel from identifying all of the evidence establishing the sufficiency of the evidence on this and other matters. Mattel proffers to provide the Court with a fuller explication with citations to the record in the event that the Court considers the question of the sufficiency of the evidence underlying the verdicts that was separate and apart from issues that were the subject of the Ninth Circuit's decision.

1   urging that they duplicated copyright damages and one another.[52]   Mattel explained the

2   lack of duplication and the different theories on which it proceeded at trial.[53]   Applying

3   <u>Rule</u> 59 standards, the Court rejected MGA's assertions, and held that the jury's

4   damages awards on the tort claims were independent and non-duplicative of copyright

5   damages and one another.[54]   The Court explained that it may "undertake only limited

6   review of jury damages awards, in order to avoid encroaching upon the jury's proper

7   function under the Constitution."[55]   It is a "'rare case in which it is sufficiently certain

8   that the jury award was not based on proper consideration of the evidence' but was

9   instead 'based on improperly considered evidence, directly traceable to an error that was

10  cured too little, too late.'"[56]   These principles control.   "[A]n error at trial relating to one

11  issue that does not affect the determination of other issues does not justify granting a

12  new trial on any issue except the tainted one." <u>Eximco</u>, 737 F.2d at 513; <u>see</u> <u>Bains</u>, 405

13  F.3d at 771 (court is "obligated to ask 'not whether the verdict necessarily makes sense

14  under any reading, but whether it can be read in light of the evidence to make sense.").

15  **V.   <u>SUMMARY JUDGMENT RULINGS THE NINTH CIRCUIT DID NOT</u>**

16      **<u>ADDRESS SHOULD NOT BE REEXAMINED</u>**

17      The Court held several summary judgment hearings in this case.   As a result of

18  those hearings, the Court has decided important issues as a matter of law.   The Ninth

19  Circuit opinion addresses rulings on the construction of the Inventions Agreement and

20  the scope of copyright protection.   Because the Ninth Circuit's decision does not reach

21  other summary judgment rulings, they remain the law of the case and should not be

22  reexamined.   <u>See</u> <u>Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.</u>, 275 F.3d 762,

23  766 (9th Cir. 2001) ("Under the law-of-the-case doctrine, a court will not reexamine an

24

25  [52]   MGA's Notice of Motion and Motion for Remittitur, Dkt. No. 4523.
     [53]   Mattel's Opposition to MGA's Motion for Remittitur, Dkt. No. 4684.
26  [54]   Dkt. 5273 at 7-9.
     [55]   <u>Id.</u> (quoting <u>Los Angeles Memorial Coliseum Com'n v. Nat'l Football League</u>,
27  791 F.2d 1356, 1365 (9th Cir. 1986)).
     [56]   <u>Id.</u> (quoting <u>In re First Alliance Mortg. Co.</u>, 471 F.3d 977, 1001 (9th Cir. 2006).

28

1   issue previously decided by the same or higher court in the same case.") (citing <u>Rebel</u>

2   <u>Oil Co., Inc. v. Atlantic Richfield Co.</u>, 146 F.3d 1088, 1093 (9th Cir. 1998)).

3   As discussed above, the jury's verdicts on Mattel's state law claims were not

4   affected by the Ninth Circuit ruling and therefore cannot be re-examined.  However,

5   even if those findings were to be revisited, the Court's summary judgment rulings

6   regarding Bryant's duty of loyalty and fiduciary duty remain the law of the case.  At

7   summary judgment in Phase 1, the Court determined that Bryant owed a duty of loyalty

8   to Mattel as a matter of law.[57]  The Court also determined that Bryant owed a fiduciary

9   duty to Mattel as a matter of law.[58]  These rulings remain in effect.

10   The same is true for the Court's rulings on the statute of limitations and MGA's

11   other defenses.  The Court entered no less than four orders on statute of limitations

12   issues, rejecting the defense.[59]   These rulings established, among other things, that

13   "Mattel's copyright claim did not accrue prior to November 23, 2003.  Therefore, when

14   first asserted on November 20, 2006, Mattel's copyright claim was timely in its own

15   right."[60]  They established that Mattel's claims against Isaac Larian "arose no earlier

16   than November 4, 2004."[61]  They established "why the discovery rule delayed the

17   accrual of Mattel's claims in this case," which "applies with equal force to the

18   intentional interference with contractual relations claims, which was timely asserted

19   against Mr. Larian."[62]  They also held that the doctrine of relation-back further applied to

20   defeat the statute of limitations defense.[63]  None of this was affected by the proceedings

21   on appeal.

---

[57]   Dkt. No. 3286 (Apr. 25, 2008 Order) at 5-6.
[58]   <u>Id.</u>
[59]   Dkt. No. 3826.  <u>See also</u> Dkt. No. 3902; Dkt. No. 4439, at 3-4; Dkt. No. 5273, at 9-11.
[60]   Dkt. No. 3902, at 4.
[61]   Dkt. No. 3826, at 9.
[62]   Dkt. No. 5273, at 11.
[63]   Dkt. No. 3826, at 8-9.

1   After trial, the Court rejected MGA's laches and estoppel defenses, reiterating that

2   MGA did not establish a single element of either defense.[64]   The Court rejected MGA's

3   affirmative defense of waiver.[65]   The Court ruled that MGA had waived all other Phase 1

4   affirmative defenses.[66]   All of this continues to apply and is law of the case.

5   Rulings rendered in this case that remain the law of the case include, among

6   others, (1) The Inventions Agreement is valid and enforceable; (2) Carter Bryant owed

7   both a duty of loyalty and fiduciary duty to Mattel;[67] (3) Bryant breached his duty of

8   loyalty to Mattel;[68] (4) the first, third, and fifth elements of Mattel's intentional

9   interference with contractual relations claim are met as a matter of law;[69] (5) the term

10  "inventions" as used in the Inventions Agreement includes all Bratz-related designs and

11  sculpts;[70] (6) MGA's statute of limitations defense to Mattel's Phase 1 claims fails;[71] (7)

12  Mattel's state law claims are not preempted by copyright or CUTSA;[72] (8) the evidence

13  at trial supported the jury's findings of damages as to Mattel's state law claims;[73] (9) the

14  evidence at trial supported the jury's findings that the MGA parties had actual

15  knowledge of Bryant's breach of fiduciary duty;[74] (10) the evidence at trial supported the

16  jury's finding that Bryant was the author of the Bratz sculpt.[75]

---

[64]  Dkt. No. 4439, at 3-4.

[65]  See Dkt. No. 4439 at 5.

[66]  Dkt. No. 4439, at 3 n.1.

[67]  Dkt. No. 3286 (Apr. 25, 2008) Order at 5-6.  See Dkt. No. 3758 at 4.

[68]  Dkt. No. 3286, at 5-6.

[69]  Dkt. No. 3286, at 6.

[70]  Id. at 4.  The Ninth Circuit expressly endorsed this ruling as well.  Opinion at 10536 ("The drawings and sculpt clearly were 'inventions' as that term is defined in Bryant's employment agreement with Mattel.").

[71]  See supra.

[72]  Dkt. No. 3286, at 2-4; Dkt. No. 5273, at 4.

[73]  Dkt. No. 5273, at 4.

[74]  Id. at 4.

[75]  Id. at 6.

00505.07975/3639641.4

1

## <u>Conclusion</u>

2          Mattel respectfully requests that the Court order that the retrial of Phase 1 issues

3    be limited to Mattel's claims for copyright infringement and conversion.

4    DATED:  August 20, 2010          QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
5

6                                    By /s/ Michael T. Zeller
7                                       Michael T. Zeller
                                        Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28