ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR ORDER CONFIRMING PENDENCY OF TRADE SECRET MISAPPROPRIATION CLAIM BASED ON THEFT OF BRATZ**<br><br>Hrg Date: TBD<br>Time: TBD<br>Courtroom: 9D<br><br>Discovery Cut-off: October 4, 2010<br>Pre-Trial Conference: January 4, 2011<br>Trial Date: January 11, 2011 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

STATEMENT OF FACTS ................................................................................... 4

    A.    The Proposed Amendment ...................................................................... 4

    B.    None of Mattel's Prior Pleadings Identify "Bratz" or "Jade" as a Trade Secret ........................................................................................... 4

    C.    Mattel Has Repeatedly Disavowed Bratz as a Trade Secret ................. 6

    D.    MGA Has Not Conducted The Discovery Required To Defend Against Mattel's New Claim ................................................................. 7

ARGUMENT ......................................................................................................... 7

I.    GRANTING MATTEL LEAVE TO AMEND MOTION WOULD SIGNIFICANTLY AND UNDULY PREJUDICE MGA ............................ 7

    A.    Mattel's Proposed Amended Pleading Fails to Identify Mattel's Theory and is Too Vague for MGA to Defend Against, Especially With Discovery Closing ...................................................... 8

    B.    The Theory that Someone Other Than Bryant Created Bratz and Jade Would Require Expansive New Fact Discovery and a Dramatic Shift in Litigation Strategy Months Before Trial ................. 9

    C.    Under Either Theory, Mattel's Unreasonable Delay Has Severely Prejudiced MGA By Precluding the Court from Finding Preemption During Phase 1 .................................................. 10

II.    MATTEL'S MOTION SHOULD BE DENIED BECAUSE MATTEL HAS UNDULY DELAYED IN SEEKING TO ADD BRATZ AND JADE ............................................................................................................ 14

# TABLE OF AUTHORITIES

**FEDERAL CASES**        **Page**

*Acri* v. *International Ass'n of Machinists & Aerospace Workers*,
  781 F.2d 1393 (9th Cir. 1986) ................................................................. 13, 14

*Amerisource Bergen Corp.* v. *Dialysis W., Inc.*,
  465 F.3d 946 (9th Cir. 2006) .................................................................. 10, 14

*Axis Imex Inc.* v. *Sunset Bay Rattan, Inc.*,
  2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ...................................................... 11

*Beverly Hills Bancorp* v. *Hine*,
  752 F.2d 1334 (9th Cir. 1984) ........................................................................ 13

*Braun Medical Inc.* v. *Rogers*,
  163 Fed. Appx. 500, 2006 WL 92879 (9th Cir. 2006) ................................ 1, 12

*Chodos* v. *West Publishing Co., Inc.*,
  292 F.3d 992 (9th Cir. 2002) ...................................................................... 13, 15

*Digital Envoy, Inc.* v. *Google, Inc.*,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ........................................................... 11

*Gabriel Technologies Corp.* v. *Qualcomm Inc.*,
  2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) ................................................... 11

*Idema* v. *Dreamworks, Inc.*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ............................................................. 8

*IXYS Corp.* v. *Advanced Power Tech., Inc.*,
  2004 WL 135861 (N.D. Cal. Jan. 22, 2004) .................................................... 10

*Jackson* v. *Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990) ..................................................................... 7, 10

*Kaplan* v. *Rose*,
  49 F.3d 1363 (9th Cir. 1995) ...................................................................... 10, 15

*Kodadek* v. *MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) ........................................................................... 8

*Mattel, Inc.* v. *MGA Entertainment, Inc.*,
  2010 WL 2853761 (July 22, 2010 9th Cir.) .................................................... 12

*Morongo Band of Mission Indians* v. *Rose*,
  893 F.2d 1074 (9th Cir. 1990) ......................................................................... 10

*Royal Ins. Co. of Am.* v. *Southwest Marine*,
  194 F.3d 1009 (9th Cir. 1999) ................................................................... 13, 15

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATE CASES

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (Cal. App. 6 Dist. 2009).................................................. 11

*Silvaco Data Sys.* v. *Intel Corp.*,
   184 Cal. App. 4th 210 (Cal. App. 6 Dist. 2010).......................................... 10, 11

### STATE STATUTES

Cal. Civ. Code §3642.................................................................................................. 1, 12

Cal. Civ. Code Sec. 3642.2............................................................................................ 12

# INTRODUCTION AND SUMMARY OF ARGUMENT

Mattel first sued Carter Bryant in April of 2004, alleging various causes of action related to Bratz. None of these causes of action claimed Bratz was a trade secret—neither the idea for Bratz or Jade as product names, nor the drawings. In fact, Mattel did not assert a claim for trade secret misappropriation against Bryant at all, ever, despite having sufficient allegations to do so at all times under the relevant substantive law. At least one reason is that a constructive trust is not an available remedy under the UTSA. *See* Cal. Civ. Code §3642; *Braun Medical Inc. v. Rogers*, 163 Fed. Appx. 500, 508-509, 2006 WL 92879, **6-7 (9th Cir. 2006) (unpublished) (District court erred by ordering patent reassignment and constructive trust as remedy for trade secret misappropriation under CUTSA, as neither are available remedies under plain language of §3642). Now that the Ninth Circuit has ruled out a constructive trust anyway, Mattel wants to change its theory of the case. This is absurd.

In November of 2006, Mattel brought its first set of counterclaims against MGA, including a claim for misappropriation of trade secrets. Yet Mattel still did not include a trade secret misappropriation claim. Mattel amended its counterclaims in July 2007, and again in May 2009, and *still* did not bring a trade secret misappropriation claim for Bratz or Jade. In fact, *none* of Mattel's *three* prior amended pleadings in this case so much as hinted that Bratz and Jade were included among the trade secrets Mattel alleged to have been misappropriated. As the Court has previously held, we know that those pleadings were not intended to state a trade secret misappropriation claim related to Bratz because Carter Bryant was never listed as one of the defendants Mattel accused of misappropriating its purported trade secrets. And, when asked to comply with California procedural rules by identifying its trade secrets, Mattel did not include Bratz or Jade. It was not until 2009 that Mattel's interrogatory responses identified Bratz as a purported trade secret.

1    Mattel's failure to identify Bratz and Jade as trade secrets was no oversight. Mattel and its lawyers (the same lawyers from April 2004 who have been investigating Mattel's claims since at least 2002) knew that identifying Bratz and Jade as trade secrets would have preempted and eviscerated Mattel's state law claims, along with the potentially limitless exemplary damages available under state law. Thus, Mattel made the tactical decision not to claim Bratz and Jade as trade secrets, and was richly rewarded for it; Mattel prevailed on its state law claims and obtained crushing injunctive relief that caused tremendous damage to its primary competitor, MGA, before the Ninth Circuit reversed that decision.

    The reason for Mattel's present change in tactic is obvious. The Ninth Circuit opinion eliminates the possibility of such a sweeping injunction, and it calls into serious doubt the viability of Mattel's theory that Bratz and Jade belong to Mattel under the Inventions Agreement. Faced with the significant risk of losing under this theory on summary judgment or at trial, Mattel now seeks to add a claim for misappropriation of Bratz trade secrets. Worse, the claim Mattel now seeks to add is so vague that one cannot even tell whether it is the same basic theory of the case—that Carter Bryant created Bratz on Mattel's time and therefore Mattel owns it under the same provision already construed by the Ninth Circuit—or a completely new theory of the case. Mattel's incredibly vague new allegations permit the possibility that it is going to try to claim now for the first time after six years of litigation that Bryant stole Bratz from someone else at Mattel and then brought it to MGA. Indeed, the theory that Carter Bryant took Bratz from someone else at Mattel is a theory upon which MGA has not even taken discovery. The Court should not permit this gamesmanship for at least three reasons.

    *First,* MGA would be significantly prejudiced by Mattel's undue delay in asserting brand new claims based on this alternative theory. If Mattel is allowed to pursue a claim that it owns Bratz and Jade through a means other than the Inventions Agreement, MGA would need significant additional discovery into

Mattel's creation and ownership of the alleged trade secrets, the sources thereof, whether secrecy was maintained, and how Bryant supposedly got access to them. MGA would be prejudiced by the fact that the time for conducting any enforceable discovery has passed given the Court's deadline of September 13, 2010 to file an omnibus discovery motion.  It is also likely that most of the evidence related to such a claim has been destroyed by Mattel, since Mattel admits that it didn't stop recycling its backup tapes until 2005 and therefore asserts it has nothing older than 2003.  It would therefore be impossible to reach back in time to the 1998-2000 time period now in order to get a fair picture of the evidence related to such a brand new claim.  Had Mattel issued a preservation notice and stopped recycling its backup tapes in January 2001 when it first new for certain that MGA was using Bratz, in March 2002 when it admits it first investigated, in July 2003 when it saw the Wall Street Journal article, or even in April 2004 when it filed suit against Carter Bryant, the evidence would be different.

Furthermore, even if Mattel is only trying to pursue an alternative legal theory based upon the same factual theory that it has already tried (that Carter Bryant created Bratz on Mattel's time and it was a trade secret as well as an Invention), MGA has already been harmed by Mattel's strategic delay.  Had Mattel asserted Bratz and Jade as a trade secret in its Amended Answer and Counterclaim filed in January 2007, most, if not all, of Mattel's state law tort claims would have been preempted by the California Uniform Trade Secrets Act.  This would have drastically limited the remedies available to Mattel in Phase 1, including the constructive trust vacated by the Ninth Circuit and a tort damages verdict that Mattel is presently trying to keep intact.  MGA suffered tremendous harm from those orders, paid for a successful appeal, meanwhile bore the costs of preparing for the recall and the lost sales resulting from the uncertainty the impeding order created in the market place, and now Mattel wants to completely change its theory

of the case. Mattel was the beneficiary of MGA's hardships. It should not be doubly rewarded for its tactical decision.

*Second*, Mattel's delay in adding Bratz and Jade to its trade secrets claim cannot be excused. Mattel had knowledge sufficient to bring these claims long prior to its complaint against Carter Bryant in 2004, and certainly prior to its amended pleadings thereafter. There is no justification for Mattel's delay that could warrant permitting this amendment. Mattel made a tactical decision not to bring these claims earlier, and it has benefited from that decision tremendously. Mattel's proposed amendment is nothing more than an unabashed attempt to make an end-run around the Ninth Circuit's ruling. The Ninth Circuit has held that permitting exactly this type of conduct on remand is grounds for reversal. For this reason too, Mattel's motion must be denied.

## STATEMENT OF FACTS

### A. The Proposed Amendment.

Mattel seeks to amend its third counterclaim for misappropriation of trade secrets to add a handful of words to paragraph 134. First, Mattel seeks to add Carter Bryant to the list of individuals who are alleged to have misappropriated Mattel's trade secrets. Dkt. 8577-1, Ex. A, ¶ 134. Second, Mattel proposes to add to the list of trade secrets allegedly misappropriated "the Bratz designs," "Bratz," and "Jade." *Id.* The remaining paragraphs in the third counterclaim remain unchanged.

### B. None of Mattel's Prior Pleadings Identify "Bratz" or "Jade" as a Trade Secret

Mattel does not dispute that it has never identified "Bratz" or "Jade" as a trade secret in any of its prior pleadings. This is for good reason: those pleadings reveal that Mattel has not. *See*, January 12, 2007 Amended Answer and Counterclaims ("AAC"), Dkt. # 143; July 12, 2007 Second Amended Answer and Counterclaims, *i.e.*, the pleading on which Mattel proceeded to trial in Phase 1,

("SAAC"), Dkt. Nos. 635, 636, and unnumbered entry after Dkt. # 640; May 22, 2009 Third Amended Answer and Counterclaims ("TAAC"), Dkt. # 5607.[1]

Amended Answer and Counterclaims: The AAC was the first pleading in which Mattel asserted a claim for misappropriation of trade secrets. In that pleading, Mattel asserted its claim for trade secrets misappropriation against MGA, MGA de Mexico, Larian, and Machado. Dkt. # 143, ¶¶ 106-115. Notably absent from this list of defendants is Bryant, even though the AAC purported to set forth those acts Mattel believed gave rise to its claims against MGA and Bryant for the taking and use of Bratz. *See, e.g., id.* ¶¶ 1, 20, 26. Mattel's trade secret claims were wholly and distinct from its claims relating to Bratz and Bryant. *See, e.g., id.* at ¶ 20 ("MGA intentionally stole not just specific Mattel property, such as Bratz designs, prototypes, and related materials, *but also* a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure.") (emphasis added).

The AAC identified the alleged trade secrets as "Mattel's proprietary business methods, practices and information" that underpin its "infrastructure," specifically the "plans, strategy, and business information" misappropriated from Mattel Mexico, the "contact file" Ron Brawer retained, and the "trade secrets regarding Mattel's customers, sales projects, advertising and strategy" allegedly misappropriated from Canada. *Id.* at ¶¶ 20, 41, 68, 70. Mattel also identified the specific individuals it alleged misappropriated trade secrets as Machado, Trueba, Vargas, Brawer and Brisbois. *Id.* at ¶¶ 41, 68, 74. Never once did Mattel mention Bryant, Bratz or Jade in relation to Mattel's allegations regarding misappropriation of trade secrets. *Id.* at ¶¶ 37-77.[2] Instead, Mattel's theory regarding Bratz was that

---

[1] Mattel also did not assert a trade secrets misappropriation claim in its April 27, 2004 Complaint against Carter Bryant, even though Mattel had sufficient facts to do so. Case No. 2:04-cv-09059 Dkt. # 1.
[2] The AAC cannot reasonably be interpreted to include Bryant in the vague reference to "Other Former Employees" as having misappropriate trade secrets. *Id.* ¶ 107. Mattel specifically refers to Bryant by name throughout the AAC and

Case 2:04-cv-09049-DOC-RNB   Document 8634   Filed 08/23/10   Page 10 of 20   Page ID
 #:270768

Bryant conceived of and created Bratz while at Mattel and then breached his contract with Mattel by selling Bratz to MGA. *Id.* at ¶ 2.

Second Amended Answer and Counterclaims: Mattel's SAAC followed precisely the same pattern as the AAC. *See, e.g.*, Dkt. # 635 ¶¶ 20, 41, 68, 70. Again, neither Carter Bryant, nor Bratz or Jade, were anywhere to be found in the misappropriation of trade secrets sections. *Id.* ¶¶ 37-77, 107.

Third Amended Answer and Counterclaims: Mattel's TAAC also did not mention Carter Bryant, Bratz or Jade in its trade secret misappropriation claims. The TAAC added Jorge Castilla and the accusation that he misappropriated "documents related to inventory management and forecasting" and "future international business strategies and marketing priorities," Dkt. # 5607 ¶ 84; *see also id.* ¶¶ 44-94, 157, but was otherwise unchanged.

### C.    **Mattel Has Repeatedly Disavowed Bratz as a Trade Secret**

Time and again Mattel has denied that it seeks to claim Bratz as a trade secret. In its March 2007 identification of trade secrets, for example, Mattel identified the documents it alleged to contain misappropriated trade secrets. None identify Bratz or Jade. Dkt. # 7691 (Parker Decl.) ¶ 2, Ex. 1.

Shortly thereafter, at a hearing before the Discovery Master on March 19, 2007, Mattel claimed that "the trade secrets that we claim to have misappropriated has [sic] occurred in 2005, 2004, and 2006." *Id.*, Ex. 2 at 12. Any misappropriation of Bratz had to have occurred prior to 2001. FAAC ¶ 93; Dkt. No. 7676 ¶¶ 31-32 (noting that MGA has distributed Bratz since 2001); Trial Tr. at 68:25-69:4 (Mattel's opening statement, noting same).

Mattel continued its disavowal at the Phase I Pre-Trial Conference when it stated: "[W]e have not said that the name Bratz is, quote, *proprietary*, end quote, to Mattel. That is not the basis of our theory." Dkt. # 7850-1 (Parker Decl.) at 79:20-

identifies the specific conduct attributable to him.

OHS West:260973741.2                                    - 6 -                          MGA Parties' Opp to Motion Confirming Pendency
                                                                                                   of Trade Secret Misapp Claim re Bratz
                                                                                                               CV-04-9049 DOC (RNBx)

22.  After the Phase 1 trial, Mattel again expressly disavowed Bratz as a trade secret.  At one point, the MGA Parties called out Mattel as having effectively identified Bratz as a trade secret by defining it as "proprietary information."  Dkt. # 4496 (MGA's Mot. for Partial JMOL) at 7-8.  Mattel responded by flatly denying MGA's assertion, telling the Court that the Trade Secret Act "does not preempt claims that are not based on trade secrets; and none of the claims at issue here depended on proof that the Bratz inventions are trade secrets."  Dkt. # 4683 (Mattel's Opp. to MGA's Renewed Mtn. for Partial JMOL) at 9.

### D. MGA Has Not Conducted The Discovery Required To Defend Against Mattel's New Claim.

Based on Mattel's failure to assert Bratz or Jade as a trade secret in its AAC, SAAC and TAAC, as well as its repeated denials that it was asserting Bratz or Jade as a trade secret, discovery in Phase 1 and Phase 2 has not focused on these allegations.  If the Court allows Mattel to add Bratz and Jade as trade secrets, new discovery will need to be taken before the discovery deadline of October 4, 2010.  Realistically, the time for conducting any enforceable discovery has passed in light of the Court's September 13, 2010 deadline to bring any motion to compel.

## ARGUMENT

### I. GRANTING MATTEL LEAVE TO AMEND MOTION WOULD SIGNIFICANTLY AND UNDULY PREJUDICE MGA

The most important factor in deciding a motion to amend is prejudice to the opposing party.  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).  Permitting Mattel to amend its counterclaims yet again will prejudice MGA by 1) requiring MGA to engage in costly additional discovery at an unrealistic breakneck speed; 2) forcing MGA to reshape its trial strategy at the eleventh hour, and; 3) unfairly requiring MGA to litigate a claim that would have preempted much of Mattel's Phase 1 state law claims and avoided the equitable relief had Mattel brought it prior to the first Phase 1 trial.  As set forth below, any of these is

sufficient ground to deny Mattel's motion.  Taken together, there is little question that Mattel's motion should be denied.

### A. Mattel's Proposed Amended Pleading Fails to Identify Mattel's Theory and is Too Vague for MGA to Defend Against, Especially With Discovery Closing.

As a threshold matter, Mattel's proposed amendment does nothing to clarify the theory behind Mattel's Bratz and Jade trade secret claims.  All the proposed pleading does is add a few words to the existing trade secret claim.  One of those words is "designs."  But any claim of trade secret misappropriation based on use of Carter Bryant's *designs* would be preempted by the Copyright Act.  *See*, *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (state unfair competition claim related to drawings preempted by the Copyright Act); *see also*, *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1194-95 (C.D. Cal. 2001) (to the extent the "so-called trade secrets" are "merely those same ideas and expressions. . .within the 'subject matter' of copyright, [the trade secrets] claim is merely a 'misappropriation' claim which is preempted by the Copyright Act.").

Even limiting the claim to the addition of ideas for product names, it is still hopelessly vague.  Mattel could be claiming either that: a) someone at Mattel other than Bryant conceived of Bratz and Jade and Bryant misappropriated these trade secrets when he left Mattel, or; b) Bryant conceived of and created Bratz and Jade during the period of his employment with Mattel and then wrongfully took them to MGA when he left.  To be sure, the former theory is inconsistent with latter theory, which has long been the basis for Mattel's claim of ownership as to Bratz. However, this latter theory is in jeopardy given the Ninth Circuit's ruling that threatens Mattel's claim to ownership of Bratz through Bryant's contract.  Thus, MGA suspects that Mattel's vague allegations are a deliberate attempt to leave both theories open to Mattel.  Either theory poses its own reasons why Mattel's request for leave to amend should be denied.  The vagueness of the new allegations are just

another aspect of Mattel's impermissible strategy to keep MGA trying to aim at a forever moving target.

### B. The Theory that Someone Other Than Bryant Created Bratz and Jade Would Require Expansive New Fact Discovery and a Dramatic Shift in Litigation Strategy Months Before Trial

If Mattel's theory is that someone at Mattel other than Bryant conceived of Bratz and Jade and Bryant stole the trade secrets when he left Mattel, then all new fact discovery is required for MGA to prepare a defense, as no discovery has been taken on this theory. Given the looming discovery deadline, allowing Mattel to advance this new theory would prejudice MGA by preventing it from adequately exploring Mattel's factual basis. Indeed, anyone who had any involvement in Mattel's supposed consideration of Bratz and Jade names, such as Mattel's consideration and rejection of "Brats" in connection with its 2000 Diva Starz project, would need to be deposed or re-deposed. Among those people are:

- All Mattel employees that worked in the Mattel Design Center in the 1998-2000 time frame who had anything to do with the potential consideration of the names Bratz or Jade, and;
- Everyone on the Mattel marketing staff involved in what one Mattel witness termed a deliberate decision not to use the name because of its negative connotations (Dkt. # 7923 (Kieckhefer Decl., Ex. 10) at 1257:2-12).

Other evidence needed is a complete record of the source of any information for these purported trade secrets, a record of any efforts taken to maintain secrecy, a complete record of all disclosures of them, and exploration of any facts Mattel alleges shows that Carter Bryant had access to these purported trade secrets.

Given the passage of time and Mattel's consistent destruction of evidence in the meantime, MGA faces the real possibility that it will not be able to obtain the discovery necessary to launch a fulsome defense, even if additional time is granted. The time period in question dates back ten years. Requiring MGA to rely on ten

OHS West:260973741.2    - 9 -    MGA PARTIES' OPP TO MOTION CONFIRMING PENDENCY OF TRADE SECRET MISAPP CLAIM RE BRATZ CV-04-9049 DOC (RNBx)

1  year old memories and attempt to hunt down former Mattel employees would be
2  highly prejudicial, especially when discovery on these claims could have been
3  taken *years ago* if not for Mattel's strategic delay.  This alone is grounds for
4  denying Mattel's motion.  *See Amerisource Bergen Corp. v. Dialysis W., Inc.*, 465
5  F.3d 946, 953 (9th Cir. 2006) (noting that although the discovery cut-off was eight
6  months away, the parties should not be required to pursue discovery on issues that
7  could have been raised in the prior complaint); *see also Kaplan v. Rose*, 49 F.3d
8  1363, 1370 (9th Cir. 1995) ("[e]xpense, delay, and wear and tear on individuals and
9  companies count toward prejudice").

10  This entirely new factual theory would also require MGA to drastically alter
11  its litigation strategy a mere five months before trial.  This is precisely the type of
12  prejudice sufficient to defeat a motion to amend.  *Jackson*, 902 F.2d at 1387
13  (prejudice found where the "additional claims advance different legal theories and
14  require proof of different facts"); *Morongo Band of Mission Indians v. Rose*, 893
15  F.2d 1074, 1079 (9th Cir. 1990) (motion denied where the amended claims "would
16  have greatly altered the nature of the litigation and would have required defendants
17  to have undertaken, at a late hour, an entirely new course of defense."); *IXYS Corp.*
18  *v. Advanced Power Tech., Inc.*, 2004 WL 135861, *3 (N.D. Cal. Jan. 22, 2004)
19  ("[T]he need for a party to conduct supplemental discovery or to consider a new
20  line of legal argument are classic sources of prejudice that have regularly proven
21  sufficient to defeat a motion for leave to amend.").  Mattel has already gone to trial
22  on, and is trying to preserve verdicts of, a completely different theory.  It would be
23  highly prejudicial to MGA if Mattel is permitted to litigate a new theory only after
24  losing on appeal.

25      **C.**    **Under Either Theory, Mattel's Unreasonable Delay Has Severely Prejudiced MGA By Precluding the Court from Finding Preemption During Phase 1.**
26

27  The California Uniform Trade Secrets Act was intended to "occupy the field
28  of trade secret liability to the exclusion of other civil remedies."  *Silvaco Data Sys.*

1   *v. Intel Corp.*, 184 Cal. App. 4th 210, 234 (Cal. App. 6 Dist. 2010), *review denied*
2   May 27, 2010.  The Act preempts "common law claims that are 'based on the same
3   nucleus of facts as the misappropriation of trade secrets claim for relief.'"  *K.C.*
4   *Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939,
5   958 (Cal. App. 6 Dist. 2009).

6       This preemption extends to all tort claims, including claims for intentional
7   and negligent misrepresentation concerning the use of those trade secrets.  *Silvaco*
8   *Data Sys.*, 184 Cal. App. 4th at 235-36.  And it certainly encompasses those claims
9   tried in Phase 1—interference with contract, aiding and abetting a breach of a
10  position of confidence, and the unfair competition claims on which the Court based
11  the injunction and constructive trust vacated by the Ninth Circuit.  *K.C. Multimedia,*
12  *Inc.*, 171 Cal. App. 4th at 958-62; *see also Gabriel Tech. Corp. v. Qualcomm Inc.*,
13  2009 WL 3326631, *11-13 (S.D. Cal. Sept. 3, 2009) (finding plaintiff's claims for
14  conversion, unfair competition, fraud, tortious interference, and unjust enrichment
15  preempted because "[i]f the 'trade secret facts' are removed from [the] claim[] . . .,
16  the claims fail to retain sufficient independent facts."); *Axis Imex Inc. v. Sunset Bay*
17  *Rattan, Inc.*, 2009 WL 55178, *5 (N.D. Cal. Jan. 7, 2009) (finding preemption
18  because if the "'trade secret' facts [were] removed from [the unfair competition and
19  intentional interference] claims . . ., neither [claim] retains sufficient independent
20  facts to survive."); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025 (N.D.
21  Cal. 2005) (cited favorably by *K.C. Multimedia, Inc.*).

22      MGA could have avoided substantial expense and harm had Mattel pleaded
23  Bratz and Jade as a trade secret prior to the first Phase 1 trial.  Mattel did not do so
24  because it knew this theory would have eviscerated its state law claims by allowing
25  MGA to properly assert that those claims were preempted.  The remedies under the
26  UTSA are substantially more limited than those sought by Mattel under its state law
27  tort claims.  For example, trade secret damages for willful misappropriation would
28  have been limited by statute, unlike common law exemplary damages.  *See* Cal.

1  Civ. Code Sec. 3642.2 (setting forth exclusive remedies for misappropriation of
2  trade secrets). More significantly, Section 3642 does not provide for a constructive
3  trust as a remedy. *See Braun Medical Inc.*, 2006 WL 92879, \*\*6-7 (unpublished)
4  (District court erred by ordering patent reassignment and constructive trust as
5  remedy for trade secret misappropriation under CUTSA, as neither are available
6  remedies under plain language of §3642).

7  Mattel was able to obtain draconian injunctive relief that was devastating to
8  MGA's business, and that never would have been possible had Mattel's claims
9  been preempted. Having benefited enormously from the temporary elimination of
10 Bratz and the near ruin it brought to MGA, Mattel now seeks to have its cake and
11 eat it too by asserting these trade secret claims for the first time, *after* the Ninth
12 Circuit has taken the threat of such injunctive relief off the table and cast serious
13 doubt on the viability of Mattel's original underlying legal theories. The Ninth
14 Circuit has specifically held that this kind of game-playing is not permitted.

15 On July 22, 2010, the Ninth Circuit issued its opinion vindicating MGA's
16 position that the equitable relief granted in Phase 1 was improper. *Mattel, Inc. v.*
17 *MGA Entertainment, Inc.*, 2010 WL 2853761 (July 22, 2010 9th Cir.). In vacating
18 the equitable relief, the Ninth Circuit addressed the constructive trust imposed by
19 the district court over all Bratz-related trademarks. As the Ninth Circuit explained,
20 "It is not equitable to transfer this billion dollar brand – the value of which is
21 overwhelmingly the result of MGA's legitimate efforts – because it may have
22 started with two misappropriated names." *Id.* at \*7. The Court also held that "[t]he
23 district court [] erred in holding that the agreement, by its terms, clearly covered
24 ideas," concluding that the scope of the agreement was a question for the jury to
25 decide. *Id.* at \*3. Thus, the Ninth Circuit's opinion calls Mattel's theory that the
26 Inventions Agreement included the Bratz and Jade names into serious question, and
27 it takes the draconian injunctive relief Mattel obtained in the first Phase 1 trial off
28 the table entirely.

                                                         OF TRADE SECRET MISAPP CLAIM RE BRATZ
                                                         CV-04-9049 DOC (RNBX)

With the possibility of devastating injunctive relief eliminated, and Mattel's dubious theory that Bratz and Jade are covered by the Inventions Agreement now destined to be determined by a jury that will likely reject it, Mattel seeks to shift gears at the eleventh hour and abandon the theory MGA has spent enormous time and expense exploring during years of discovery. But the prospect of loss is not a sufficient basis to grant a motion to amend. Indeed, courts routinely reject attempts by parties to amend their pleadings to avoid an adverse decision. *See, e.g.*, *Chodos v. West Publishing Co., Inc.*, 292 F.3d 992, 1003 (9th Cir. 2002) (motion to amend filed while summary judgment pending properly denied); *Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1017 (9th Cir. 1999) (no abuse of discretion in denying motion to amend complaint after claims dismissed on summary judgment); *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (district court did not abuse discretion in denying motion to amend where motion was "brought to avoid the possibility of an adverse summary judgment ruling.").

In fact, the Ninth Circuit has *reversed* based upon the decision to permit amendment to change a legal theory after a loss on appeal. *Beverly Hills Bancorp v. Hine*, 752 F.2d 1334 (9th Cir. 1984). In that case, the movant was aware of all of the facts on which he based his proposed amendment two weeks before the filing of the initial pleading. Then, the movant pursued a theory based on an interpretation of an agreement that the Ninth Circuit eventually rejected. On remand, the district court allowed the movant to amend his pleading to assert an alternative theory on which he ultimately prevailed. The Ninth Circuit reversed on the grounds that the district court erred by permitting the amendment, concluding that, "[a] clearer example of an attempt to bring seriatim claims over the same issue cannot be found. Allowing the [Movant] to do so would allow him to obtain a tactical advantage to which he is not entitled." *Id.* at 1338.

In this case, Mattel is clearly attempting to reset its hand in light of the Ninth

Circuit's opinion. Mattel long ago made the tactical choice not to pursue Bratz and Jade as part of its trade secrets claim, despite having all of the facts needed to do so. Mattel is bound by that tactical choice, and its attempt to abandon it as the result of an adverse ruling by the Ninth Circuit not only does not justify amendment, but would be a ground for later reversal should Mattel succeed on this theory.

## II. MATTEL'S MOTION SHOULD BE DENIED BECAUSE MATTEL HAS UNDULY DELAYED IN SEEKING TO ADD BRATZ AND JADE.

In determining whether a party has unduly delayed in moving to amend, the "relevant inquiry is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Amerisource Bergen Corp.*, 465 F.3d at 954. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri*, 781 F.2d at 1398.

There is no question that Mattel has for years had sufficient knowledge of the factual predicate for asserting Bratz and Jade as trade secrets. According to Mattel's own pleadings, it has known of Bryant's involvement in Bratz and Jade since at least 2003.[3] Dkt. # 2504-4, 2767-10, 3730-2 (Declarations of Michael Moore in connection with Phase 1 Summary Judgment Motions regarding Mattel's receipt of Bryant's Bratz drawings and Bryant's contract with MGA from Cityworld).

The Court has already recognized that Mattel had sufficient information to assert Bratz and Jade as a trade secret. Dkt. # 7853. In its May 13, 2010 Order Denying Mattel's first Motion to Confirm Pendency of Trade Secret Misappropriation Claim Based on theft of Bratz, the Court wrote:

---

[3] MGA believes that the evidence shows that Mattel knew about Bratz and Jade well before 2003. Regardless, whether Mattel waited seven years or longer, the delay is unreasonable and inexcusable.

> Mattel cannot seriously argue that it lacked the discovery necessary to allege that Bratz was a trade secret prior to the filing of the FAAC. . . Every Bratz related allegation in the FAAC could have been pled with equal specificity well before the TAAC (and likely before the SAAC).

*Id. at* 2.

Mattel's strategic decision not to clarify the basis for its trade secrets claim should not be rewarded, particularly since it repeatedly amended its pleadings and did not add Bratz or Jade to its trade secrets misappropriation claim in any iteration. The court has broad discretion to deny a motion to amend where a party has had prior opportunities to amend. *Chodos*, 292 F.3d at 1003 (motion to amend properly denied where complaint had been amended once before); *Royal Ins. Co. of Am.*, 194 F.3d at 1017 (district court did not abuse its discretion in denying motion to amend complaint for third time after claims dismissed on summary judgment); *Kaplan*, 49 F.3d at 1370 (no abuse of discretion in denying motion to amend third amended complaint).

The only explanation Mattel provides for its delay in adding Bratz and Jade to its counterclaims is that it believed they were already encompassed in the case. As explained above, this claim is nonsense. But even if Mattel had believed that these claims were already encompassed, Mattel's subjective belief matters not. What matters is that it is in no way apparent from the AAC, SAAC or TAAC that Bratz or Jade is part of Mattel's misappropriation of trade secret claims. In fact, the allegations point to the contrary conclusion: In all three amended complaints, the trade secrets counterclaim specifically refers to individuals – not including Carter Bryant – who are alleged to have misappropriated Mattel's supposed trade secrets. *E.g.*, Dkt. # 143 (AAC) ¶¶ 41, 68, 74 (identifying Machado, Trueba, Vargas, Brawer and Brisbois); Dkt. # 635 (SAAC) ¶¶ 41, 68, 74 (same); Dkt. # 5607 (TAAC) at ¶ 84; *see also id.* ¶¶ 44-94, 157 (adding Jorge Castilla to list of individuals).

1 | There is simply no justification for Mattel's failure to amend its
2 | counterclaims before now.  Mattel's motion should be denied.[4]

## CONCLUSION

For the foregoing reasons, Mattel's motion should be denied.

Dated: August 23, 2010        ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/    Annette L. Hurst*
ANNETTE L. HURST
Attorneys for MGA Parties

---

[4] The MGA Parties believe this claim is also barred by the statute of limitations and would be futile, but will defer and address that issue at the time of summary judgment only if the Court permits the amendment.