1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
5  Telephone:   (213) 443-3000
   Facsimile:   (213) 443-3100
6
7  Attorneys for Mattel, Inc. and Mattel de
   Mexico, S.A. de C.V.

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10               SOUTHERN DIVISION

11 | MATTEL, INC., a Delaware | CASE NO. CV 04-9049 DOC (RNBx)
12 | corporation, et al., |
   | | Consolidated with
13 | Plaintiff, | Case No. CV 04-09059
   | | Case No. CV 05-02727
14 | vs. |
   | | Hon. David O. Carter
15 | |
16 | MGA ENTERTAINMENT, INC., a | MATTEL, INC.'S *EX PARTE*
   | California corporation, et al., | APPLICATION FOR ORDER
17 | | GRANTING EXPEDITED
   | | DISCOVERY ON MGA'S
18 | Defendant. | PURPORTED "COMPULSORY
   | | COUNTERCLAIMS-IN-REPLY";
   | | AND
19 | |
   | | MEMORANDUM OF POINTS AND
20 | | AUTHORITIES
   | AND CONSOLIDATED ACTIONS |
21 | | [[Proposed] Order Submitted Herewith]
22 | | Hearing Date:  TBD
   | | Time:           TBD
23 | | Place:          TBD
24 | | Discovery Cut-off:    October 4, 2010
   | | Pre-trial Conf:        January 4, 2011
25 | | Trial Date:            January 11, 2011
26
27
28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel") respectfully apply *ex parte*, pursuant to Local Rule 7-19, for an Order requiring MGA Entertainment, Inc. ("MGA") to produce full and complete responses to the discovery, without objection other than privilege and within five days of the date of such Order, sought by the Requests for Production of Documents, Interrogatories and Requests for Admissions attached hereto as Exhibits A, B, and C, respectively, concerning MGA's newly-pleaded purported "Compulsory Counterclaims-In-Reply," including by producing all responsive documents and fully answering the Interrogatories, and further to produce one or more knowledgeable witnesses for deposition concerning the topics identified in the Notice of Deposition attached hereto as Exhibit D on or before September 7, 2010.

Good cause exists to grant this application. Expedited discovery on MGA's newly-pleaded counterclaims is justified. On August 9, 2010, MGA urged the Court to order a nearly immediate discovery cutoff. On August 10, 2010, the Court set the discovery cutoff on October 4, 2010. Only six days later, without having advised either the Court or Mattel that it intended to do so, MGA filed a 53-page Reply containing new purportedly compulsory counterclaims and apparently seeking more than $1 billion in damages on those claims. Should these claims be permitted to remain in this case – and as Mattel will show when it responds to MGA's pleading, they should not – Mattel is entitled to discovery to defend itself. Accordingly, given the discovery cutoff that has been set, and given MGA's delay in raising these claims, an order for the expedited discovery sought herein is critical. Indeed, absent relief Mattel will effectively be precluded from taking discovery on these counterclaims given the default discovery response deadlines set forth in the Federal Rules of Civil Procedure and the discovery deadline set out in the Court's August 10, 2010 Order.

1    This Application is based on this Notice of Application and Application, the

2  accompanying Memorandum of Points and Authorities, the records and files of this

3  Court, and all other matters of which the Court may take judicial notice.

4                          **Notice And Meet and Confer**

5    Pursuant to <u>Local Rule</u> 7-19, on August 23, 2010, Mattel's counsel gave notice

6  of the instant *ex parte* to counsel for the MGA Parties, Annette Hurst and Thomas

7  McConville, Orrick, Herrington & Sutcliffe, LLP; 405 Howard Street, San Francisco,

8  CA, telephone: (415) 773-4585, and e-mail: tmcconville@orrick.com,

9  ahurst@orrick.com.  Also, on August 23, 2010, lead counsel for the parties met and

10 conferred in advance of the filing of this *ex parte*.  No resolution was reached as a result

11 thereof.

12 DATED:  August 24, 2010                    QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
13

14                                           By /s/ Michael T. Zeller
                                                Michael T. Zeller
15                                              Attorneys for Mattel, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

On the last day when MGA's reply to Mattel's Fourth Amended Answer and Counterclaims was due, MGA filed not just a reply but new purported "Counterclaims-in-Reply". The so-called "Counterclaims-in-Reply" are substantively and procedurally defective for a number of reasons that Mattel will explain when it responds to MGA's pleading, including because they were filed without the Court's leave as required. Nevertheless, in light of the rapidly approaching discovery cutoff and dispositive motion deadlines, and MGA's transparent attempt to sandbag Mattel by bringing claims after the time when written discovery can effectively be propounded, the Court should in the meantime order MGA to produce full and immediate discovery without objection on its newly asserted claims.[1]

MGA not only engaged in tactical delay to impede discovery into its new discovery but was disingenuous with the Court when it set its deadlines. On August 9, 2010, MGA urged the Court to immediately halt further interrogatories and requests for admissions and to require that all requests for production be served by August 16. That date was no coincidence. MGA had insisted on the August 16 date during the parties' meet and confer on the trial schedule. When Mattel asked why it was advocating that deadline, MGA's lead counsel's refused to say and claimed that her reasons were "privileged." What MGA did not disclose, to Mattel or to the Court, is that it was planning to assert new, supposedly billion-dollar claims just before midnight on August 16 and was surreptitiously maneuvering to foreclose Mattel's ability to take discovery into these claims. On August 10, the Court, unaware of MGA's plan, set a deadline for a final, "omnibus" motion to compel of September 13, 2010. In the ordinary course,

---

[1] Mattel is including as Exhibits A –D with this *ex parte* application only the portions with operative requests for discovery, so as to stay within the Court's page limits. Mattel will promptly submit the full discovery served on MGA at the Court's direction. Mattel has served the full Requests for Production of Documents, Interrogatories, Requests for Admissions, and Notice of Deposition on MGA.

1  written discovery subject to 30-day response deadlines would have to be served by

2  August 11, 2010, to receive responses before the motion deadline.  Accordingly, the

3  effective deadline to serve written discovery passed before MGA even filed its

4  pleading.  MGA should not be permitted to benefit from its unfair, tactical delay and

5  concealment.  Mattel is entitled to discovery to clear its name and demonstrate the

6  baseless nature of MGA's claims.

7       Mattel thus seeks an Order requiring MGA to respond to interrogatories, requests

8  for admissions and document requests and to produce documents on an expedited basis.

9  Mattel also seeks an immediate Rule 30(b)(6) witness.  While this relief will not

10 prevent prejudice to Mattel from being required to investigate and respond to MGA's

11 eleventh-hour claims – which are based on purported facts and other information

12 known to MGA for years and indeed are based on events that MGA executives were

13 personally involved in and knew about years ago – it is necessary to ensure that Mattel

14 has at least a minimal opportunity to obtain discovery on MGA's counterclaims should

15 those claims be allowed to proceed.

16                              **Background**

17       On August 2, 2010, following the Court's resolution of the MGA Parties'

18 motions to dismiss Mattel's Fourth Amended Answer and Counterclaims ("FAAC"),

19 the Court ordered the parties to meet and confer in an attempt to reach a stipulation as

20 to all pre-trial dates and briefing schedules in advance of the January 11, 2011 trial

21 date.[2]  MGA declined to discuss the issues until 6 p.m. on August 9, 2010, the deadline

22 for the parties' responsive submission.  After meeting and conferring at that time, the

23 parties stipulated as to certain deadlines, but did not agree to discovery deadlines.[3]

24 Instead, MGA announced for the first time that it intended to advocate an immediate

25 end to most discovery.  The parties submitted their respective positions concerning

26

27       [2]  Dkt. No. 8434.
         [3]  Dkt. No. 8495.

28

1   discovery deadlines in attachments to the stipulation.  MGA argued in its statement that

2   "discovery must close now," and it proposed that the Court permit no additional

3   interrogatories or requests for admissions and set an "end date" of August 16, 2010 for

4   requests for production.[4]  Not once during the meet and confer discussions or in its

5   submission to the Court did MGA disclose its plan to raise new claims when it

6   answered the FAAC.  Instead, MGA's lead counsel scolded Mattel for even asking why

7   MGA's August 16 date proposal was carved in stone (as MGA said it was) and

8   proclaimed that MGA's reasons for insisting on that date were "privileged."

9       On August 10, the Court set October 4, 2010 as the deadline for "[a]ll fact

10  discovery, including written discovery and depositions," to be completed.[5]  The Court

11  further limited each party to a single "omnibus" motion to compel, due by no later than

12  September 13, 2010.[6]  The practical effect of those deadlines was to require the parties

13  to personally serve any written discovery requests by no later than August 11, 2010, so

14  that responses would be due at least one business day before the final motions to

15  compel.

16      On August 16, 2010 – once MGA was assured that its lack of candor with the

17  Court and Mattel had effectively resulted in barring Mattel from pursuing any newly-

18  served discovery through motion practice – MGA filed purported "Counterclaims-In-

19  Reply" to the FAAC.  MGA did not seek leave from the Court to raise its

20  counterclaims, nor did it meet and confer with Mattel.  The counterclaims contain

21  dozens of paragraphs of hyperbolic and inflammatory accusations of alleged trade

22  secret misappropriation and fraudulent acts committed by Mattel, Quinn Emanuel and

23  others – which MGA also touted to the media so that they could be publicly

24  disseminated without any forewarning.  MGA alleges that it "just discovered" these

25  allegations and claims "after the deposition testimony of Sal Villasenor on July 12,

26  _____

27  [4]  Id. at Attachment A, pp. 4-5.
    [5]  Dkt. No. 8514 at 2.

28  [6]  Id.

2010."[7]  As Mattel will demonstrate in its forthcoming Rule 12 and related motions, that could not be further from the truth.  MGA executive Ron Brawer testified that he *personally* worked with and had knowledge of Villasenor and his alleged activities *prior to October 2004* – which includes the entire time period that Brawer has been an MGA executive.[8]   And, in 2006, Brawer and another MGA executive, Gustavo Machado, interviewed Villasenor for a potential job with MGA and spoke about his work at Mattel with admiration.[9]  Isaac Larian testified that another MGA executive, Paula Garcia, has told him that she saw Villasenor at an MGA toy fair show room *years ago* – but MGA did nothing about it[10] and at no time disclosed this supposed episode in discovery, despite prior Orders requiring that such information be disclosed.  MGA has sat on its purported rights for years, undoubtedly to sandbag Mattel by raising new claims after discovery has effectively closed and on the eve of the dispositive motion deadline.

## **Argument**

### **THE COURT SHOULD ORDER EXPEDITED DISCOVERY ON MGA'S PURPORTED "COUNTERCLAIMS-IN-REPLY"**

MGA's attempts to assert claims for relief, based on purported facts and issues of which MGA has long been aware, after the date for the service of discovery in time for the motion to compel cut-off date and on the eve of the dispositive motion deadline is highly prejudicial to Mattel.  Mattel will be making appropriate motions against MGA's pleadings in due course.  However, given the shortness of time and even though it will not serve to remotely cure all the prejudice that MGA's tactics will continue to cause, expedited discovery from MGA is warranted in the meantime.

---

[7]  Counterclaims at 5.
[8]  Brawer Dep. Tr., January 26, 2010, at 643:8-647:4.
[9]  See MGA2 0146309; MGA2 0150736.
[10]  Larian Dep. Tr., August 12, 2010, at 4020:21-4024:2.

Federal Rule of Civil Procedure 34(b)(2) expressly provides that discovery may be expedited as the Court may direct. William Hablinski Architecture v. Amir Const. Inc., 2004 WL 4909900, *2 (C.D. Cal. 2004). Expedited discovery is justified upon a showing of "good cause." Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) (considering request to expedite discovery prior to Rule 26(f) conference). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id. Expedited discovery should also be granted where, as here, circumstances exist "that would be likely to prejudice the party if he were compelled to wait the required time." See Gibson v. Bagas Restaurants, Inc., 87 F.R.D. 60, 61 (W.D. Mo. 1980) (quoting 8 Wright & Miller, Federal Practice and Procedure § 2104, at 384 (1970)).

Without expedited discovery on MGA's counterclaims, Mattel would be unable to serve any written discovery that could be included in its final omnibus motion to compel (due by September 13, 2010); it will be precluded from serving any follow-up discovery requests to which responses could be due before the October 4, 2010 discovery cut-off; it will be unable to make any meaningful use at deposition of any documents responsive to Mattel's document requests on MGA's new claims, including at the deposition of Isaac Larian scheduled for September 1, 2010; it will be unable to identify the witnesses with knowledge of MGA's claims, much less locate them and subpoena them or notice their depositions consistent with Rule 30 and Rule 45 timing requirements; and it will be unable to make meaningful use of any discovery regarding MGA's counterclaims in time to prepare for summary judgment motions, which will be due only weeks from now.[11]

---

[11] For its part, MGA obtained discovery on shortened time from Mattel on a far less compelling showing than is present here. As the Court will recall, MGA demanded, and obtained, production of voluminous Mattel financial documents in response to documents requests well before the 30-day time to respond had run. See Order Re Discovery Matters, dated January 26, 2010, Dkt. No. 7434 at 9-10.

Expedited discovery is further justified in light of the scope of the purported facts and issues included in the Counterclaims, which may call for successive rounds of discovery.  MGA identifies in its Counterclaims, among other things:

- Dozens of toy company events as to which Mattel purportedly gained access under false pretenses and toy companies whom Mattel allegedly "systematically defrauded";[12]

- Dozens of purported MGA products, including unidentified "unreleased" products, as to which Mattel purportedly "defrauded" MGA of product information;[13]

- Numerous alleged (yet unspecified) acts of purported fraudulent conduct by Mattel and its agents, including Quinn Emanuel and Bain & Company;[14]

- Multiple purported "benefits" that Mattel enjoyed as the result of its alleged conduct;[15]

- Numerous categories of alleged, but unidentified, MGA trade secrets that Mattel allegedly "stole";[16]

- Purported "efforts" that MGA undertook to protect the confidentiality of its alleged trade secrets;[17]

- Mattel's alleged "use and disclosure" of MGA's purported trade secrets;[18]

---

[12] Counterclaims ¶¶ 2, 11-16.
[13] Id. ¶¶ 3, 21-22.
[14] Id. ¶¶ 4, 23-56.
[15] Id. ¶¶57-60.
[16] Id. ¶ 305.
[17] Id. ¶ 306.
[18] Id. ¶ 309.

1        •   The formation and operation of an "association-in-fact" racketeering

2            enterprise and its commission of multiple alleged "predicate acts";[19]

3            and

4        •   A list of purported damages and other harms that MGA allegedly

5            suffered as a result of Mattel's alleged conduct.[20]

6        MGA's new counterclaims assert trade secret theft and RICO claims.  As the

7 Court is aware, MGA has been afforded the opportunity of years of discovery into

8 Mattel's trade secret and RICO claims.  Even an order requiring MGA to respond on

9 an expedited basis to the attached discovery requests, which include basic "contention"

10 requests intended to flesh out the purported facts that support MGA's claims, will not

11 come close to alleviating the prejudice that Mattel would suffer by having to defend

12 against these eleventh-hour claims on their merits with only limited and incomplete

13 discovery.  Without knowing, for example, what specific trade secrets MGA contends

14 were misappropriated – information MGA did not include in its counterclaims and that

15 Mattel can now obtain only through an initial round of discovery – Mattel cannot even

16 begin to prepare tailored defensive discovery requests.  See Advanced Modular

17 Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 834-835 (2005) ("Where, as

18 here, [the] cause of action is factually dependent on the misappropriation allegation,

19 discovery can commence only after the allegedly misappropriated trade secrets have

20 been identified with reasonable particularity, as required by [Cal. Code Civ. Proc.]

21 section 2019.210."); Computer Economics, Inc. v. Gartner Group, Inc., 50 F.Supp.2d

22 980, 986 (S.D. Cal. 1999) (section 2019.210 "enables defendants to form complete and

23 well-reasoned defenses, ensuring that they need not wait until the eve of trial to

24 effectively defend against charges of trade secret misappropriation").

---

[19] Id. ¶¶ 314-316.
[20] Id. at pp. 51-52.

On the other hand, MGA will suffer no appreciable prejudice from being required to respond to discovery on an expedited basis, as it presumably has already gathered purported factual and documentary support for its wide-ranging claims of misappropriation and fraud.  In such circumstances, an order requiring expedited discovery is more than justified.  See Gibson, 87 F.R.D. at 61.[21]

Accordingly, the Court should order MGA to respond to the attached requests for production of documents, requests for admissions and interrogatories, completely and substantively and without objection, including by producing all responsive documents and fully answering the interrogatories, within five days, and further should compel MGA to produce for deposition, on a date on or before September 7, 2010, one or more witnesses with knowledge of the issues set forth in the topics included in the attached notice of deposition.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its ex parte application.

DATED:   August 25, 2010          QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP


                                  By /s/ Michael T. Zeller
                                     Michael T. Zeller
                                     Attorneys for Mattel, Inc., and Mattel de
                                     Mexico, S.A. de C.V.

---

[21]    Should MGA endeavor to use its new claims to justify a request for expedited discovery from Mattel, that request should be rejected.  After having vigorously and disingenuously advocated for an end to discovery and delayed bringing its claims, MGA certainly should not be permitted to use its claims to justify expedited discovery from Mattel.  Furthermore, MGA has long known about the purported facts that underlie its claims – and indeed has known them going back at least as far back as 2004.  Finally, as shown above, under California Code of Civil Procedure section 2019, MGA is barred from such discovery from Mattel until, at a bare minimum, it identifies with particularity each of the trade secrets that it claims were misappropriated.  MGA has not complied with that requirement.

# EXHIBIT A

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | **MATTEL, INC.'S SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA ENTERTAINMENT, INC. REGARDING REPLY TO THE FOURTH AMENDED ANSWER** |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | |

PROPOUNDING PARTY:        MATTEL, INC.

RESPONDING PARTY:        MGA ENTERTAINMENT, INC.

SET NO.:                1

## I.     REQUESTS FOR DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS, including any photographs, videos, or tangible items, that contain, reflect or depict the ALLEGED TRADE SECRET MATERIALS or UNRELEASED PRODUCT INFORMATION.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that REFER OR RELATE TO any and all obligations, duties, understandings or agreements that each PERSON who, at any time, viewed or possessed the ALLEGED TRADE SECRET MATERIALS, not to use or disclose that information, and/or to keep each trade secret confidential.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS that YOU may use at trial to prove YOUR allegations that MATTEL knowingly engaged in "numerous criminal acts," and in so doing, injured MGA in its business or property.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS that YOU may use at trial to prove YOUR allegations that MATTEL devised a scheme or artifice to defraud MGA (and others) of their trade secrets and other confidential information in order to acquire and maintain an unlawful competitive advantage.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS that YOU may use at trial to prove YOUR allegations that MATTEL corruptly altered, destroyed and/or concealed many documents, and

attempted to do so with respect to many more, with the intent to impair their availability for use in an official proceeding.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that YOU may use at trial to prove YOUR allegations that MATTEL corruptly impeded, obstructed or influenced the due administration of justice, including by lying under oath and by corruptly inducing the Court to enter a wrongful injunction.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS that YOU may use at trial to prove YOUR allegations that MATTEL willfully infringed the copyrights of MGA or third persons through knowing violations of the Copyright Act in the deliberately unauthorized reproduction, distribution and public display of photographs and other depictions of its competitors' products for purposes of commercial advantage and private financial gain.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that YOU may use at trial to prove YOUR counterclaims in YOUR REPLY TO THE FOURTH AMENDED ANSWER.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that REFER OR RELATE TO when YOU first learned of any facts forming the basis of each of the allegations in YOUR counterclaims in YOUR REPLY TO THE FOURTH AMENDED ANSWER.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that REFER OR RELATE TO YOUR knowledge of persons at MATTEL or on behalf of MATTEL allegedly obtaining access to YOUR showrooms or displays at any toy fair under false pretenses, including but not limited to DOCUMENTS showing when YOU first learned such facts.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS that REFER OR RELATE TO YOUR investigation of YOUR counterclaims in YOUR REPLY TO THE FOURTH AMENDED ANSWER, including but not limited to notes, memoranda, tape recordings, video recordings, witness statements, declarations, affidavits, document collections, witness identifications, witness statement summaries, files or other records that REFER OR RELATE thereto.

**REQUEST FOR PRODUCTION NO. 12:**

DOCUMENTS sufficient to IDENTIFY each toy fair at which YOU had a display or showroom any time from 1992 to the present.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS identifying the PERSONS who entered or viewed YOUR showroom or display at any toy fair occurring between 1992 and the present, including but not limited to all business cards, sign-in sheets, forms, records or information received or collected at any such toy fair.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS that REFER OR RELATE TO YOUR efforts to limit or restrict the access or entry of any PERSON or PERSONS to YOUR display or showroom at any toy fairs any time from 1992 to the present.

**REQUEST FOR PRODUCTION NO. 15:**

All agreements, including but not limited to non-disclosure agreements or confidentiality agreements, that require any PERSON who entered or viewed all or any portion of YOUR showroom or display at any toy fair between 1992 and the present not to disclose or use information viewed, photographed, recorded in video, received or heard.

**REQUEST FOR PRODUCTION NO. 16:**

All visual records of all of any portion of YOUR display and/or showroom at any toy fair occurring between 1992 and the present, including but not limited to photographs, drawings, renderings, and videos.

**REQUEST FOR PRODUCTION NO. 17:**

All non-disclosure or confidentiality agreements between YOU and YOUR customers or potential customers.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS offered to or given to or available to any PERSON who entered YOUR showroom or viewed YOUR display at any toy fair between 1992 and the present, including but not limited to catalogs, price lists, photos, drawings, PRODUCTS, samples, press kits, CDs, DVDs, term sheets, shipping information, and advertising, marketing or promotional information.

**REQUEST FOR PRODUCTION NO. 19:**

For each product identified in Paragraph 3 of YOUR REPLY TO THE FOURTH AMENDED ANSWER that YOU did not release to market, all DOCUMENTS that REFER OR RELATE TO why YOU did not release each such product to market.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS that REFER AND RELATE TO the manner and method by which YOUR catalogs, price lists and new product information were distributed to any PERSON at any time between 1992 and the present, including the timing of such distribution.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS THAT REFER OR RELATE TO COMMUNICATIONS between YOU, or anyone acting in YOUR behalf, and Pablo Vargas San Jose, or anyone acting on his behalf, between June 1, 2009 and the present.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS that REFER AND RELATE TO YOUR allegation that Mattel gained access using false pretenses to the private showrooms of toy companies other than MGA.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS REFERRING OR RELATING TO the origins and sources of inspiration of the UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS REFERRING OR RELATING TO the conception, creation, reduction to practice, design and development of the UNRELEASED PRODUCTS, including but not limited to design drawings, sculpts, internal memos, MARKET RESEARCH, and approval memos.

1  **REQUEST FOR PRODUCTION NO. 25:**

2       All DOCUMENTS REFERRING OR RELATING TO any MARKET

3  RESEARCH, projections or plans pertaining to the release of the UNRELEASED

4  PRODUCTS to the market.

5

6  **REQUEST FOR PRODUCTION NO. 26:**

7       All DOCUMENTS REFERRING OR RELATING TO the design,

8  development, themes, conception or creation of the packaging or artwork of the

9  UNRELEASED PRODUCTS, including without limitation, the motivation,

10  purpose, or inspiration for the packaging or artwork.

11

12  **REQUEST FOR PRODUCTION NO. 27:**

13       All DOCUMENTS REFERRING OR RELATING TO the development of

14  any claimed product design trade dress or packaging trade dress of the

15  UNRELEASED PRODUCTS, including but not limited to the total image, design

16  and appearance of the UNRELEASED PRODUCTS, as well as features of the

17  UNRELEASED PRODUCTS such as size, shape, color, color combinations, texture

18  or graphics, or anything else MGA claims to be its proprietary trade dress of the

19  UNRELEASED PRODUCTS, and any changes thereto.

20

21  **REQUEST FOR PRODUCTION NO. 28:**

22       DOCUMENTS sufficient to show any position MGA has taken with respect

23  to its claimed trade dress in connection with any of the UNRELEASED

24  PRODUCTS, including but not limited to internal COMMUNICATIONS,

25  COMMUNICATIONS with third parties, trademark applications and related

26  DOCUMENTS, filings in judicial proceedings or regulatory filings.

27

28

1  **REQUEST FOR PRODUCTION NO. 29:**

2       All DOCUMENTS REFERRING OR RELATING TO the origin, conception,

3  creation or development of the themes of any UNRELEASED PRODUCTS that

4  YOU contend were misappropriated, copied or otherwise used by MATTEL,

5  including but not limited to DOCUMENTS showing when and how they were first

6  conceived and any awareness by MGA of similar or proposed MATTEL themes.

7

8  **REQUEST FOR PRODUCTION NO. 30:**

9       All DOCUMENTS REFERRING OR RELATING TO any PUBLIC

10  DISCLOSURE of the UNRELEASED PRODUCTS before the product was first

11  offered for sale by a retailer, including but not limited to any DOCUMENTS

12  REFERRING OR RELATING TO when each such disclosure was made, to whom

13  each such disclosure was made, and which product was disclosed.

14

15  **REQUEST FOR PRODUCTION NO. 31:**

16       All DOCUMENTS REFERRING OR RELATING TO all PUBLIC

17  DISCLOSURES of any description or depiction of the UNRELEASED

18  PRODUCTS or of any other UNRELEASED PRODUCT INFORMATION before

19  the product was first offered for sale by a retailer, including but not limited to any

20  DOCUMENTS REFERRING OR RELATING TO when each such disclosure was

21  made, to whom each such disclosure was made, and the information that was

22  disclosed.

23

24  **REQUEST FOR PRODUCTION NO. 32:**

25       All DOCUMENTS identifying the date each UNRELEASED PRODUCT

26  was first offered for sale by a retailer.

27

28

00505.07975/3649510.1

-8-

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS REFERRING OR RELATING TO the theme, appearance, operation, intended play pattern or packaging of any UNRELEASED PRODUCTS that YOU contend were misappropriated, copied or otherwise used by MATTEL, before that theme, appearance, operation, intended play pattern or packaging was PUBLICLY DISCLOSED.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS REFERRING OR RELATING TO any similarity or dissimilarity between any MATTEL product packaging and any UNRELEASED PRODUCT packaging.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS REFERRING OR RELATING TO any similarity or dissimilarity between any MATTEL product and any UNRELEASED PRODUCT, including without limitation, themes, accessories, features, operations, and play patterns.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS REFERRING OR RELATING TO whether the appearance of any MATTEL product or packaging copies, replicates, or in any way imitates the appearance of any UNRELEASED PRODUCT or packaging.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS REFERRING OR RELATING TO actual or potential consumer confusion between any MATTEL product or packaging and any UNRELEASED PRODUCT or packaging.

**REQUEST FOR PRODUCTION NO. 38:**

All UNRELEASED PRODUCT INFORMATION, including but not limited to any product catalogs, sell sheets or product information sheets that REFER OR RELATE TO the UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 39:**

All studies, analyses, presentations or investigations, including internal studies, analyses, presentations or investigations, REFERRING OR RELATING TO actual or potential market competition between any MATTEL product and any UNRELEASED PRODUCT.

**REQUEST FOR PRODUCTION NO. 40:**

DOCUMENTS sufficient to determine total sales, revenue, royalties, costs of goods sold and any other costs incurred in arriving at net profits for the UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS tending to support or refute MGA's claims, if any, that any MATTEL product or packaging copies, replicates, or in any way imitates the appearance of any UNRELEASED PRODUCT or packaging.

**REQUEST FOR PRODUCTION NO. 42:**

All COMMUNICATIONS between YOU and any third party, including but not limited to a customer, supplier, retailer, distributor, or member of the press, REFERRING OR RELATING TO any MATTEL product or packaging that copies, replicates, or in any way imitates the appearance of any UNRELEASED PRODUCT or packaging.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS that tend to support or refute YOUR assertions, including but not limited to those in paragraphs 14, 15, and 20, in YOUR REPLY TO THE FOURTH AMENDED ANSWER, regarding the MATTEL personnel that were aware of the alleged misappropriation of ALLEGED TRADE SECRET MATERIALS or UNRELEASED PRODUCT INFORMATION.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS REFERRING OR RELATING TO YOUR allegations that MATTEL concealed the misappropriation of ALLEGED TRADE SECRET MATERIALS or UNRELEASED PRODUCT INFORMATION.

**REQUEST FOR PRODUCTION NO. 45:**

DOCUMENTS sufficient to IDENTIFY all PERSONS who had knowledge or any awareness of any of the facts alleged in YOUR REPLY TO THE FOURTH AMENDED ANSWER, including DOCUMENTS sufficient to IDENTIFY of what the knowledge consisted and when it was acquired.

**REQUEST FOR PRODUCTION NO. 46:**

DOCUMENTS sufficient to IDENTIFY all PERSONS who were employed by MGA or worked for MGA at any time, who had knowledge or any awareness of any of the facts alleged in YOUR REPLY TO THE FOURTH AMENDED ANSWER, including DOCUMENTS sufficient to IDENTIFY of what the knowledge consisted and when it was acquired.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS REFERRING OR RELATING TO how access to UNRELEASED PRODUCT INFORMATION at Toy Fairs is restricted, limited or

controlled, including but not limited to DOCUMENTS CONTAINING MGA's policy with respect to confidential information, sign-in and sign-out sheets for access to confidential information, logs of PERSONS who access confidential information, and procedures for accessing confidential information.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS REFERRING OR RELATING TO the steps and procedures that MGA takes to keep MGA'S CONFIDENTIAL INFORMATION confidential.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS REFERRING OR RELATING TO any investigation, surveillance, inspection, inquiry, survey or analysis into the activities, including but not limited to electronic and computer related activities, alleged in YOUR counterclaims in YOUR REPLY TO THE FOURTH AMENDED ANSWER.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS RELATING TO YOUR efforts, or knowledge of any efforts by any PERSONS, worldwide to monitor, "spy on" or gain knowledge of MATTEL's trade secrets, non-public information, non-public activities, unreleased products, and product development, at toy fairs, including, but not limited to:

a.      DOCUMENTS REFERRING OR RELATING TO YOUR COMMUNICATIONS or contacts with MATTEL's current or former employees, contractors, or customers about MATTEL or its business, including, but not limited to, any tape recordings of such COMMUNICATIONS;

b.      DOCUMENTS REFERRING OR RELATING TO YOUR knowledge of any MATTEL product before its release to the public or of any other non-public information about MATTEL, its business or its products;

c.      DOCUMENTS REFERRING OR RELATING TO YOUR access, or attempts to gain access, to MATTEL showrooms, Plan-o-Grams, merchandising displays, or other Toy Fair displays on false pretenses (including, but not limited to, by using fake business cards);

d.      DOCUMENTS REFERRING OR RELATING TO YOUR access to MATTEL's products or showroom at any Toy Fair (including Hong Kong Toy Fair, New York Toy Fair, Dallas Toy Fair, or Nuremberg Toy Fair) since 1992 inclusive;

e.      YOUR access to MATTEL's confidential product and pricing information through retailers; and

f.      YOUR access to MATTEL's confidential product and pricing information from any other non-public sources and/or through non-public means.

**REQUEST FOR PRODUCTION NO. 51:**

DOCUMENTS sufficient to IDENTIFY all retailer or distributor personnel that YOU met at or in, or picked up at, the Doubletree Hotel next to MATTEL's El Segundo headquarters at any time since 1992.

**REQUEST FOR PRODUCTION NO. 52:**

ALL DOCUMENTS REFERRING TO OR RELATING TO YOUR contacts with THE MARKET INTELLIGENCE GROUP at any time when they were not employed by YOU, including but not limited to any efforts by YOU to hire them or use their services.

**REQUEST FOR PRODUCTION NO. 53:**

ALL DOCUMENTS REFERRING TO OR RELATING TO BRAWER's knowledge of MATTEL's alleged misappropriation of MGA'S UNRELEASED PRODUCT INFORMATION or the ALLEGED TRADE SECRET MATERIALS.

**REQUEST FOR PRODUCTION NO. 54:**

All DOCUMENTS REFERRING OR RELATING TO COMMUNICATIONS between BRAWER and MGA regarding any aspect of MATTEL's alleged misappropriation of MGA'S UNRELEASED PRODUCT INFORMATION or the ALLEGED TRADE SECRET MATERIALS, as alleged in the REPLY TO THE FOURTH AMENDED ANSWER.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS REFERRING OR RELATING TO COMMUNICATIONS between YOU and BRAWER regarding the MARKET INTELLIGENCE GROUP.

**REQUEST FOR PRODUCTION NO. 56:**

DOCUMENTS, including but not limited to organizational charts, sufficient to IDENTIFY (by name and job function) all current and former MGA personnel and/or freelancers comprising the primary team that worked on the creation, design and development of the UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 57:**

All business plans, forecasts, budgets and projections prepared by YOU in connection with each of YOUR UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS and COMMUNICATIONS REFERRING OR RELATING TO the marketing or promotion of any UNRELEASED PRODUCT.

**REQUEST FOR PRODUCTION NO. 59:**

ALL DOCUMENTS and COMMUNICATIONS REFERRING OR RELATING TO any demand, claim or lawsuit by MGA (other than this ACTION) alleging infringement of MGA's intellectual property rights in any UNRELEASED PRODUCT.

**REQUEST FOR PRODUCTION NO. 60:**

ALL DOCUMENTS and COMMUNICATIONS REFERRING OR RELATING TO any demand, claim or lawsuit against MGA (other than this ACTION) alleging that any UNRELEASED PRODUCT infringes the intellectual property rights of another PERSON.

**REQUEST FOR PRODUCTION NO. 61:**

All tangible objects, including sculpts, prototypes, models and samples, REFERRING OR RELATING TO each UNRELEASED PRODUCT.

**REQUEST FOR PRODUCTION NO. 62:**

All testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO any UNRELEASED PRODUCT, other than those previously filed and served in this ACTION or in which MATTEL's counsel in this ACTION was in attendance.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS REFERRING OR RELATING TO any survey, focus group, consumer research or other MARKET RESEARCH (whether conducted by MGA or any third party) concerning any UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS that contain, reflect or depict MGA's CONFIDENTIAL INFORMATION.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS REFERRING OR RELATING TO the steps and procedures that MGA takes to keep the ALLEGED TRADE SECRET MATERIALS confidential.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS REFERRING OR RELATING TO any PUBLIC DISCLOSURE of the CONFIDENTIAL INFORMATION you allege MATTEL misappropriated, including but not limited to any DOCUMENTS REFERRING OR RELATING TO the timing or plans for such a disclosure, the individual or group to whom the disclosure was made, and the item that was disclosed.

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS REFERRING OR RELATING TO YOUR allegations that MATTEL misappropriated any CONFIDENTIAL INFORMATION.

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS REFERRING OR RELATING TO YOUR allegations that MATTEL concealed the alleged theft of the CONFIDENTIAL INFORMATION.

**REQUEST FOR PRODUCTION NO. 69**:

All DOCUMENTS REFERRING OR RELATING TO any involvement of THE MARKET INTELLIGENCE GROUP in the alleged theft of any CONFIDENTIAL INFORMATION.

**REQUEST FOR PRODUCTION NO. 70**:

DOCUMENTS sufficient to show the revenue and profits derived by YOU from the CONFIDENTIAL INFORMATION.

**REQUEST FOR PRODUCTION NO. 71**:

All DOCUMENTS REFERRING OR RELATING TO damages suffered by MGA due to MATTEL's alleged theft of MGA'S CONFIDENTIAL INFORMATION, including but not limited to MARKET RESEARCH, INVESTIGATIVE REPORTS, and memoranda concerning actual damages.

**REQUEST FOR PRODUCTION NO. 72**:

ALL DOCUMENTS REFERRING TO OR RELATING TO BRAWER's knowledge of MATTEL's alleged misappropriation of MGA'S CONFIDENTIAL INFORMATION.

**REQUEST FOR PRODUCTION NO. 73**:

All DOCUMENTS REFERRING OR RELATING TO copyrights registered to MGA REFERRING OR RELATING TO the UNRELEASED PRODUCTS, including but not limited to DOCUMENTS made in preparation of the registrations and COMMUNICATIONS with the United States Copyright Office concerning the registrations.

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS that tend to support or refute YOUR claim to copyrights registered to MGA REFERRING OR RELATING TO the UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS REFERRING OR RELATING TO attempts by MGA to copyright any aspect of the UNRELEASED PRODUCTS, including but not limited to DOCUMENTS made in preparation of the registrations and COMMUNICATIONS with the United States Copyright Office concerning the registrations.

**REQUEST FOR PRODUCTION NO. 76:**

All COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR REPLY TO THE FOURTH AMENDED ANSWER or any other alleged taking of confidential MGA information by MATTEL or persons currently or formerly employed by MATTEL.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, that REFER OR RELATE TO any of the allegations in YOUR REPLY TO THE FOURTH AMENDED ANSWER or any

1  other alleged taking of confidential MGA information by MATTEL or persons

2  currently or formerly employed by MATTEL.

3

4  **REQUEST FOR PRODUCTION NO. 78:**

5      DOCUMENTS sufficient to identify by product name, product number and

6  SKU each UNRELEASED PRODUCT sold by YOU or YOUR licensees.

7

8  **REQUEST FOR PRODUCTION NO. 79:**

9      DOCUMENTS sufficient to show, by product number or SKU, the number of

10  units of each UNRELEASED PRODUCT sold by YOU or YOUR licensees.

11

12  **REQUEST FOR PRODUCTION NO. 80:**

13      DOCUMENTS sufficient to show, by product number or SKU, the gross and

14  net revenue received by YOU from the sale of each UNRELEASED PRODUCT

15  sold by YOU or YOUR licensees.

16

17  **REQUEST FOR PRODUCTION NO. 81:**

18      DOCUMENTS sufficient to show, by product number or SKU, YOUR cost of

19  goods sold, unit cost and other costs for each UNRELEASED PRODUCT sold by

20  YOU or YOUR licensees.

21

22  **REQUEST FOR PRODUCTION NO. 82:**

23      DOCUMENTS sufficient to show, by product number or SKU, YOUR gross

24  and net profits from the sale of each UNRELEASED PRODUCT sold by YOU or

25  YOUR licensees.

26

27

28

**REQUEST FOR PRODUCTION NO. 83**:

All of YOUR monthly, quarterly and yearly financial statements, whether audited or unaudited, from 1992 to 2000.

**REQUEST FOR PRODUCTION NO. 84**:

DOCUMENTS sufficient to show the market share of any UNRELEASED PRODUCT sold by YOU or YOUR licensees from 1992 to the present.

**REQUEST FOR PRODUCTION NO. 85**:

All DOCUMENTS that analyze, discuss or refer to any change in market share of any UNRELEASED PRODUCT sold by YOU or YOUR licensees from 1992 to the present including, without limitation, the reasons for any such change in market share.

**REQUEST FOR PRODUCTION NO. 86**:

DOCUMENTS sufficient to show the target audience or age group for each of the UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 87**:

All MARKET RESEARCH that REFERS OR RELATES TO any MATTEL products YOU contend compete with any UNRELEASED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 88**:

All DOCUMENTS REFERRING OR RELATING TO the commercial success or recognition of the UNRELEASED PRODUCTS, including, without limitation, MARKET RESEARCH.

00505.07975/3649510.1

1  **REQUEST FOR PRODUCTION NO. 89**:

2      All DOCUMENTS REFERRING OR RELATING TO harm to MGA caused

3  by MATTEL's alleged misappropriation of ALLEGED TRADE SECRET

4  MATERIALS.

5

6  **REQUEST FOR PRODUCTION NO. 90**:

7      All DOCUMENTS REFERRING OR RELATING TO harm to MGA caused

8  by MATTEL's alleged misappropriation of MGA'S UNRELEASED PRODUCT

9  INFORMATION.

10

11  **REQUEST FOR PRODUCTION NO. 91**:

12      All DOCUMENTS REFERRING OR RELATING TO damages suffered by

13  MGA due to MATTEL's alleged infringement of MGA's copyrights.

14

15  **REQUEST FOR PRODUCTION NO. 92**:

16      All DOCUMENTS that YOU may use at trial to establish damages for YOUR

17  counterclaims in YOUR REPLY TO THE FOURTH AMENDED ANSWER.

18  DATED:  August 25, 2010          QUINN EMANUEL URQUHART &
19                                   SULLIVAN, LLP

20

21                          By   /s/ Diane C. Hutnyan
22                               Diane C. Hutnyan
                                 Attorneys for Mattel, Inc. and Mattel
23                               de Mexico, S.A. de C.V.

24

25

26

27

28

00505.07975/3649510.1

-21-

# EXHIBIT B

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and Mattel
de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>            Defendants.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**MATTEL, INC.'S FIRST SET OF INTERROGATORIES  TO MGA ENTERTAINMENT, INC. (MGA REPLY COUNTERCLAIMS)** |

PROPOUNDING PARTY:        MATTEL, INC.

RESPONDING PARTY:        MGA ENTERTAINMENT, INC.

SET NO.:                          1

1
## Interrogatories
2

3
**INTERROGATORY NO. 1:**

4
     Identify, with particularity, each of the UNRELEASED PRODUCTS, each of

5
the ALLEGED TRADE SECRET MATERIALS, and all CONFIDENTIAL

6
INFORMATION that YOU contend that MATTEL misappropriated from YOU.

7

8
**INTERROGATORY NO. 2:**

9
     IDENTIFY all DOCUMENTS that contain trade secrets that YOU contend

10
that MATTEL misappropriated from YOU, and IDENTIFY with particularity,

11
including on a document-by-document basis where possible, the information

12
contained within each such DOCUMENT that YOU claim constitutes the trade

13
secrets that YOU contend that MATTEL misappropriated from YOU.

14

15
**INTERROGATORY NO. 3:**

16
     For each trade secrets that YOU contend that MATTEL misappropriated from

17
YOU, state the complete factual basis for YOUR contention that MATTEL

18
misappropriated each such trade secret, and IDENTIFY all PERSONS with

19
knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such

20
facts.

21

22
**INTERROGATORY NO. 4:**

23
     For each trade secrets that YOU contend that MATTEL misappropriated from

24
YOU, state all facts supporting YOUR contention that each such trade secret has

25
independent value from not being generally known to the public or to other

26
PERSONS who can obtain economic benefit from their disclosure.

27

28

**INTERROGATORY NO. 5:**

For each trade secrets that YOU contend that MATTEL misappropriated from YOU, IDENTIFY all PERSONS outside of MGA, including but not limited to members of the press, trade associations, contractors, retailers, distributors, agents, agencies, public relations firms, advertisers, producers, production companies, media buyers, and the general public, to whom it was disclosed by YOU or who otherwise obtained access to it, and when that disclosure or initial access occurred.

**INTERROGATORY NO. 6:**

For each trade secrets that YOU contend that MATTEL misappropriated from YOU, state all facts supporting YOUR contention that each such trade secret was not known or readily ascertainable by others in the toy industry, including retailers or members of  the press.

**INTERROGATORY NO. 7:**

Describe with particularity all steps, efforts, policies, procedures, means, measures, agreements and practices undertaken or employed by YOU at any time between 1992 and the present to preserve as confidential or otherwise maintain the secrecy of the trade secrets that YOU contend MATTEL misappropriated from YOU, including but not limited to when each was implemented, modified or ceased, why it was implemented, modified or ceased, and by whom it was implemented, modified or ceased, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 8:**

For each trade secrets that YOU contend that MATTEL misappropriated from YOU, state, with particularity, any and all costs incurred by YOU to create each trade secret.

**INTERROGATORY NO. 9:**

For each trade secrets that YOU contend that MATTEL misappropriated from YOU, state, with particularity, all harm suffered by MGA from such alleged misappropriation.

**INTERROGATORY NO. 10:**

For each trade secrets that YOU contend that MATTEL misappropriated from YOU, state, with particularity, all benefits derived or gained by MATTEL from such alleged misappropriation.

**INTERROGATORY NO. 11:**

For each company identified in paragraph 16 of YOUR REPLY COUNTER-CLAIMS other than MGA, state with particularity all facts supporting YOUR contention that MATTEL took information from that company at any toy fair, including the New York Toy Fair.

**INTERROGATORY NO. 12:**

Identify with specificity all means, methods, practices, policies, agreements and procedures used by YOU at any time to limit access to any showroom or display of YOURS at any toy fair between 1992 and the present, including but not limited to when each such means, method, practice, policies, agreements and procedures were implemented, were modified, were ceased, were disallowed, or were not enforced, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 13:**

State all facts supporting YOUR contention that "Mattel's Mexican attorney, with the full knowledge of Mattel's in-house counsel and Quinn Emanuel partner,

took Vargas's lawyer out to the woodshed and made it clear that MATTEL was not
happy with Vargas's testimony, effectively threatening Vargas's pardon," including
but not limited to the alleged source of such information, and IDENTIFY all
PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
RELATE TO such facts.

**INTERROGATORY NO. 14:**

    For each predicate act identified in YOUR REPLY TO THE FOURTH
AMENDED ANSWER, state the complete factual basis supporting YOUR
contention that MATTEL or its alleged agents, including but not limited to Quinn
Emanuel, Basham Ringe Y Correa, Bain & Company, and Sharon Rahimi,
committed each such predicate act, and IDENTIFY all PERSONS with knowledge
of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 15:**

    State all facts supporting YOUR contention that YOU were harmed or injured
by reason of any conduct by MATTEL at issue in YOUR REPLY TO THE
FOURTH AMENDED ANSWER, including but not limited to how each alleged act
by MATTEL caused specific harm to YOU; and the amount of harm that YOU
contend to have been caused by each such act, including but not limited to any lost
profits YOU claim to have suffered, and the timing and payee of any out-of-pocket
loss YOU incurred, and IDENTIFY all PERSONS with knowledge of such facts and
all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 16:**

    State all facts supporting YOUR contention that any PERSON "criminally
infringe[d] copyrights in the distribution of that stolen information on a worldwide
basis throughout MATTEL and its foreign subsidiaries," including but not limited to

the identification of the copyrighted work, the PERSON who misappropriated the copyrighted work, the PERSONS to whom the copyrighted work was allegedly distributed, any copying of any alleged copyrighted work by any PERSON, and any use of that copyrighted work, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 17:**

State all facts supporting the contention in paragraph 4 of YOUR REPLY TO THE FOURTH AMENDED ANSWER that any PERSON acted to "conceal, suppress and destroy evidence of that theft in this litigation through alteration and concealment of documents, tampering and obstruction of justice (including witnesses lying under oath)," and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 18:**

For each PERSON who allegedly lied under oath, as referenced in paragraph 4 of YOUR REPLY TO THE FOURTH AMENDED ANSWER, state all facts supporting that contention, including but not limited to the identification of the PERSON, the alleged perjurious testimony, the factual basis for that testimony being perjurious, when YOU discovered that the testimony was perjurious, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 19:**

State all facts which support YOUR contention, if YOU so contend, that YOU have suffered harm, damage or injury as a result of any act or omission of MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 20:**

As to each occasion on which MGA contends a RICO predicate was committed as alleged in the Second Counterclaims of YOUR REPLY TO THE FOURTH AMENDED ANSWER:  (a) IDENTIFY the RICO predicate act (by statute) and state all facts regarding the acts and omissions establishing that RICO predicate act. (If you contend the same acts and omissions established the commission of more than one RICO predicate act, IDENTIFY all of those RICO predicate acts.); (b) IDENTIFY which PERSONS employed by or associated with which RICO enterprise(s) committed that RICO predicate act; (c) state all facts which you contend demonstrate that Mattel knew of, participated in, or directed the commission of that RICO predicate act; (d) state all facts which you contend demonstrate that Quinn Emanuel knew of, participated in, or directed the commission of that RICO predicate act; (e) state all facts regarding how that RICO predicate act proximately caused injury(s) to MGA's business or property; (f) state all facts regarding how MGA has calculated or estimated the monetary damages for each type of injury to its business or property proximately caused by that RICO predicate act (and if it has not, why not); and (g) IDENTIFY all PERSONS MGA believes have knowledge of the information requested in this Interrogatory.

DATED:  August 25, 2010          QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP


                                 By  /s/ Diane C. Hutnyan
                                     Diane C. Hutnyan
                                     Attorneys for Mattel, Inc. and Mattel
                                     de Mexico, S.A. de C.V.

# EXHIBIT C

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and Mattel
de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-09049 DOC (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| vs. | MATTEL, INC.'S REQUESTS FOR ADMISSION TO MGA ENTERTAINMENT, INC. RELATED TO MGA'S REPLY COUNTERCLAIMS |
| MGA ENTERTAINMENT, INC., a California corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

PROPOUNDING PARTY:      Mattel, Inc.

RESPONDING PARTY:        MGA Entertainment, Inc.

1

2 **<u>Requests for Admission</u>**

3

4 <u>REQUEST FOR ADMISSION NO. 1</u>:

5 Admit that the INJUNCTION was stayed by Judge Larson until April 27,

6 2009.

7

8 <u>REQUEST FOR ADMISSION NO. 2</u>:

9 Admit that the INJUNCTION was stayed by the Ninth Circuit on

10 December 9, 2009.

11

12 <u>REQUEST FOR ADMISSION NO. 3</u>:

13 Admit that the sale of BRATZ products was never prohibited by the

14 INJUNCTION.

15

16 <u>REQUEST FOR ADMISSION NO. 4</u>:

17 Admit that the manufacture of BRATZ products was never prohibited by

18 the INJUNCTION.

19

20 <u>REQUEST FOR ADMISSION NO. 5</u>:

21 Admit that by court order the duties of the Temporary Receiver included

22 preserving the BRATZ brand and assets to the best of his abilities and maximizing the

23 profits derived therefrom.

24

25 <u>REQUEST FOR ADMISSION NO. 6</u>:

26 Admit that BRATZ inventory and molds used to make BRATZ dolls were

27 never impounded as a result of the INJUNCTION.

28

00505.07975/3649513.1

-2-

1    REQUEST FOR ADMISSION NO. 7:

2            Admit that BRATZ products were never recalled from retailers as a result

3    of the INJUNCTION.

4

5    REQUEST FOR ADMISSION NO. 8:

6            Admit that MGA was permitted to sell and retailers and distributors were

7    permitted to purchase Spring 2009 line BRATZ products.

8

9    REQUEST FOR ADMISSION NO. 9:

10           Admit that MGA was permitted to sell and retailers and distributors were

11   permitted to purchase Fall 2009 line BRATZ products.

12

13   REQUEST FOR ADMISSION NO. 10:

14           Admit that MGA was permitted to sell and retailers and distributors were

15   permitted to purchase Spring 2010 line BRATZ products.

16

17   REQUEST FOR ADMISSION NO. 11:

18           Admit that MGA was permitted to sell and retailers and distributors were

19   permitted to purchase Fall 2010 line BRATZ products.

20

21   REQUEST FOR ADMISSION NO. 12:

22           Admit that MGA sold some BRATZ products for the Spring 2009 season.

23

24   REQUEST FOR ADMISSION NO. 13:

25           Admit that MGA sold some BRATZ products for the Fall 2009 season.

26

27   REQUEST FOR ADMISSION NO. 14:

28           Admit that MGA sold some BRATZ products for the Spring 2010 season.

1

2   REQUEST FOR ADMISSION NO. 15:

3          Admit that MGA sold some BRATZ products for the Fall 2010 season.

4

5   REQUEST FOR ADMISSION NO. 16:

6          Admit that prior to October 5, 2004, Sal Villasenor told Ronald Brawer

7   that Mr. Villasenor used false identification at toy fairs.

8

9   REQUEST FOR ADMISSION NO. 17:

10          Admit that prior to October 5, 2004, Sal Villasenor told Ronald Brawer

11   that Mr. Villasenor used false identification at toy fairs to obtain information about

12   competitors.

13

14   REQUEST FOR ADMISSION NO. 18:

15          Admit that prior to October 5, 2004, Sal Villasenor showed Ronald

16   Brawer catalogs obtained from other companies' toy fair showrooms.

17

18   REQUEST FOR ADMISSION NO. 19:

19          Admit that while a MATTEL executive, Ronald Brawer had access to

20   information obtained using false identification at toy fairs.

21

22   REQUEST FOR ADMISSION NO. 20:

23          Admit that prior to October 5, 2004, Ronald Brawer knew that Sal

24   Villasenor had used false identification to collect competitors' information at toy fairs.

25

26   REQUEST FOR ADMISSION NO. 21:

27          Admit that prior to October 5, 2004, Ronald Brawer believed that Sal

28   Villasenor had used false identification to collect competitors' information at toy fairs.

1   REQUEST FOR ADMISSION NO. 22:

2          Admit that prior to October 5, 2004, Ronald Brawer suspected that Sal

3   Villasenor had used false identification to collect competitors' information at toy fairs.

4

5   REQUEST FOR ADMISSION NO. 23:

6          Admit that prior to October 5, 2004, Ronald Brawer was on notice that Sal

7   Villasenor claimed to have used false identification to collect competitors' information

8   at toy fairs.

9

10  REQUEST FOR ADMISSION NO. 24:

11         Admit that by August 3, 2007, YOU believed that MATTEL had either

12  gained access or had attempted to gain access to MGA showrooms, Plan-o-Grams,

13  merchandising displays, and/or Toy Fair displays on false pretenses.

14

15  REQUEST FOR ADMISSION NO. 25:

16         Admit that by August 3, 2007, YOU suspected that MATTEL had

17  either gained access or had attempted to gain access to MGA showrooms, Plan-o-

18  Grams, merchandising displays, and/or Toy Fair displays on false pretenses.

19

20  REQUEST FOR ADMISSION NO. 26:

21         Admit that by August 3, 2007, Ron Brawer informed YOU that

22  MATTEL had either gained access or had attempted to gain access to MGA

23  showrooms, Plan-o-Grams, merchandising displays, and/or Toy Fair displays on

24  false pretenses.

25

26

27

28

1

2

3    DATED:  August 25, 2010            QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
4

5                                        By /s/ Diane C. Hutnyan
                                         Diane C. Hutnyan
6                                        Attorneys for Mattel, Inc. and Mattel
                                         de Mexico, S.A. de C.V.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc. and Mattel Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| Plaintiff, | |
| vs. | NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)  (Third Phase 2 Notice) |
| MGA ENTERTAINMENT, INC., a Delaware corporation, | |
| Defendant. | Date:    September 7, 2010 Time:    8:00 a.m. Place:   600 West Santa Ana Blvd., Suite 910         Santa Ana, CA 92701 |
| AND CONSOLIDATED ACTIONS | |

1

2

3

### **Topics of Examination**

4       1.      Identification of each trade secret that YOU contend that Mattel

5 misappropriated from YOU.

6       2.      The factual basis for YOUR claim that MATTEL misappropriated

7 trade secrets from YOU, including but not limited to when and how YOU first learned

8 about each alleged act of misappropriation, the IDENTITY of each and every PERSON

9 who YOU believe misappropriated each trade secret, when such trade secret was

10 misappropriated, where the trade secret was located when it was misappropriated, how

11 it was misappropriated, and whether the misappropriation was wrongful.

12       3.      All facts, if any, showing that each allegedly misappropriated trade

13 secret has or had independent value from not being generally known to the public and

14 the value of each such trade secret.

15       4.      How YOU developed each trade secret that YOU contend

16 MATTEL misappropriated from YOU, including but not limited to YOUR ownership

17 of each such trade secret, the identity of each PERSON who developed each such trade

18 secret, and the costs incurred by YOU in creating each trade secret.

19       5.      How YOU used each such trade secret in the normal course of

20 YOUR business, including but not limited to the IDENTITY of each PERSON who

21 knew of or had access to each such trade secret, and how YOU obtained value or

22 increased revenue or profitability from the use of each such trade secret.

23       6.      Whether and when each trade secret that YOU contend that

24 MATTEL misappropriated from YOU was disclosed to any PERSON outside of MGA,

25 including but not limited to (a) to whom it was disclosed, (b) when it was disclosed for

26 the first time, and (c) the IDENTITY of any and all written agreements that obliged the

27 PERSON to whom it was disclosed to keep it confidential.

28

1       7.    For each trade secret that YOU contend that MATTEL

2  misappropriated from YOU, all facts that YOU believe show that MATTEL used or

3  disclosed or acquired such trade secret.

4       8.    All steps, efforts, policies, procedures, means, measures,

5  agreements, obligations, understandings and practices undertaken by YOU at any time

6  between 1992 and the present to preserve as confidential or maintain the secrecy of

7  each of the trade secrets that YOU contend MATTEL misappropriated from YOU.

8       9.    All facts supporting your allegation that MATTEL stole

9  information from Bandai, B-Bel, Inc., Binney & Smith, Blue Box, Cadaco, Ceaco,

10  Chicco, Crayola, Creativity for Kids, Decipher, DSI, Empire, Endless Games, Equity

11  Marketing, Famosa, Get Real Girl, Giochi Preziosi, Gund, Hamilton Toys, Hasbro,

12  Irwin Toys, Jada Toys, Jakks Pacific, Justoys, Kessel, K'NEX, Leapfrog, Lego, Madam

13  Alexander, Maisto, McFarlane, Mealgy, Megablocks, Miss Party Surprise, Nikko,

14  NKOK, NSI, NZ Toys, Ohio Art, Playhut, Playmates, Pressman, Radica, Razor, Robert

15  Anner, Schure, Simba, Spin Master, Sindy, Tacmay, Tecnitoys, Juguetes, Thinkway,

16  Tiger Electronics, Today's Kids, Tomy, Toy Biz, Toy Max, Trendmaster, Uncle Milton,

17  V Tech, Wham-O, Wild Planet, Wizards of the Coast, Wow Wee Toys, X Concepts and

18  Zapf Creation, including but not limited to (a) the identification of the information

19  stolen, (b) the date that it was stolen, (c) the location from which it was stolen, (d)

20  whether the location was secure, had limited access, or was generally open to the public

21  or PERSONS working in the Toy Industry, (e) the PERSON or PERSONS who stole

22  the information, (f) whether the stolen information was confidential or generally

23  available to the public or within the industry, (g) the method by which the information

24  was stolen, (h) whether MATTEL used or disclosed the information, (g) whether

25  MATTEL obtained any benefit from the information, (h) any harm suffered by MGA

26  due to the alleged theft, and (i) any harm suffered by any of the identified companies

27  due to the alleged theft.

28

1    10. Any and all means, methods, practices, policies and procedures

2 used by YOU at any time to limit access to any showroom or display of YOURS at any

3 toy fair between 1992 and the present, including but not limited to when each such

4 means, method, practice, policies and procedure were implemented, were modified,

5 were ceased, or were disallowed.

6    11. The IDENTITY of each UNRELEASED PRODUCT that YOU did

7 not bring to market, including but not limited to the reasons why each such product was

8 not brought to market and when MGA made the decision not to bring that product to

9 market.

10    12. The factual basis for your statement that "MATTEL's Mexican

11 attorney, with the full knowledge of MATTEL's in-house counsel and Quinn Emanuel

12 partner, took Vargas's lawyer out to the woodshed and made it clear that MATTEL was

13 not happy with Vargas's testimony, effectively threatening Vargas's pardon," including

14 but not limited to the alleged source of such information.

15    13. For each predicate act identified in YOUR REPLY TO THE

16 FOURTH AMENDED ANSWER, the facts that YOU believe show such predicate acts

17 were committed by or were attempted by:  MATTEL, Quinn Emanuel, Basham Ringe

18 y Correa, Bain & Company, Sharon Rahimi or any other PERSON, including but not

19 limited to (a) when each predicate act was committed, (b) by whom each was

20 committed, and (c) the effect of such act on YOU.

21    14. The factual basis for YOUR allegation that MATTEL "criminally

22 infringe[d] copyrights in the distribution of that stolen information on a worldwide

23 basis throughout MATTEL and its foreign subsidiaries," including but not limited to

24 (a) the identification of the copyrighted work, (b) the PERSON who misappropriated

25 the copyrighted work, (c) the PERSONS to whom the copyrighted work was allegedly

26 distributed, (d) any copying of any alleged copyrighted work by any PERSON, and (e)

27 any use of that copyrighted work.

28

15.     The factual basis for YOUR allegation that any PERSON acted to "conceal, suppress and destroy evidence of that theft in this litigation through alteration and concealment of documents, tampering and obstruction of justice (including witnesses lying under oath)."

16.     All facts supporting YOUR claim that any PERSON lied under oath,  including but not limited to (a) the identification of the PERSON, (b) the alleged perjurious testimony, (c) the factual basis for YOUR allegation that the testimony was perjurious, and (d) when YOU discovered that the testimony was perjurious.

17.     YOUR knowledge of MATTEL's Market Intelligence Department and Sal Villasenor, including but not limited to when YOU first learned of the Market Intelligence Department and the conduct that you allege the personnel of that department engaged in, witnesses interviewed, documents identified and reviewed, witnesses that you attempted to contact or contacted, records of any such investigation, notes of any interviews conducted during such investigation, recordings (audio or visual) of any such interviewed, and memoranda that refer or relate to any such investigation.

18.     The factual basis for the allegation YOUR Answer and Affirmative Defenses to Mattel, Inc.'s Second Amended Answer and Counterclaims that MATTEL was engaged in "monitoring, 'spying on' or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development, gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses," including but not limited to (a) the identity of the PERSON or PERSONS who provided YOU with the factual information supporting that allegation, (b) any and all aspects of the investigation conducted by YOU or on YOUR behalf, including but not limited to (i) witnesses interviewed, (ii) documents identified and reviewed, (iii) witnesses that you attempted to contact or contacted, (iv) records of any such investigation, (v) notes of any interviews conducted during such investigation, (vi) recordings or records (audio

1   or visual or manual) of any such interview, and (vii) memoranda that refer or relate to

2   any such investigation.

3          19.    The facts supporting YOUR contention that YOU have been

4   harmed or injured by reason of any conduct by MATTEL at issue in YOUR REPLY

5   TO THE FOURTH AMENDED ANSWER, including but not limited to (a) how each

6   alleged act by MATTEL caused specific harm to YOU, and (b) the amount of harm that

7   YOU contend to have been caused by each such act, including but not limited to the

8   amount, timing and payee of any out of pocket loss that YOU claim to have suffered.

9          20.    The facts that support YOUR belief that MATTEL has been

10  unjustly enriched as a result of any act or omission of MATTEL at issue in YOUR

11  REPLY TO THE FOURTH AMENDED ANSWER, including but not limited to how

12  MATTEL benefitted from each trade secret that YOU claim was misappropriated.

13         20.    How the following DOCUMENTS came to be in YOUR possession

14  and YOUR use, possession, storage, preservation, transmittal, copying, and

15  dissemination of each of them:

16              MGA2 1811215 - MGA2 1811297

17              MGA2 1811298 - MGA2 1811374

18              MGA2 1811375 - MGA2 1811457

19              MGA2 1811458 - MGA2 1811511

20         21.    All COMMUNICATIONS between YOU (including YOUR agents

21  and attorneys) and law enforcement authorities in Mexico, Canada or the United States,

22  including but not limited to the United States Attorney's Office, the Department of

23  Justice and any national, regional, state or local authorities, concerning any of the

24  allegations in YOUR REPLY TO THE FOURTH AMENDED ANSWER or any other

25  alleged taking of confidential information by MATTEL or PERSONS currently or

26  formerly employed by MATTEL.

27

28