1   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
2   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    405 Howard Street
4   San Francisco, CA 94105-2669
    Tel: (415) 773-5700/Fax: (415) 773-5759
5
    WILLIAM A. MOLINSKI (State Bar No. 145186)
6   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
7   777 South Figueroa Street, Suite 3200
    Los Angeles, CA 90017
8   Tel. (213) 629-2020/Fax: (213) 612-2499

9   THOMAS S. MCCONVILLE (State Bar No. 155905)
    tmcconville@orrick.com
10  ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza, Suite 1600
11  Irvine, CA 92614-2258
    Tel: (949) 567-6700/Fax: (949) 567-6710

12  Attorneys for MGA Parties

13

14                    UNITED STATES DISTRICT COURT

15                   CENTRAL DISTRICT OF CALIFORNIA

16                        SOUTHERN DIVISION

17   MATTEL, INC., a Delaware          Case No.  CV 04-09049 DOC (RNBx)
     corporation,                      Consolidated with:
18                                     Case Nos. CV 04-09059 & CV 05-02727
19              Plaintiff,             **MGA PARTIES' OPPOSITION TO EX
                                       PARTE APPLICATION FOR ORDER
20        v.                           GRANTING EXPEDITED
                                       DISCOVERY ON MGA'S
21   MGA ENTERTAINMENT, INC., a        COMPULSORY COUNTERCLAIMS-
     California corporation, et al.,   IN-REPLY
22
                Defendant.             **Date:   TBD
23                                     Time:  TBD
     ──────────────────────────       Dept:  TBD
24   AND CONSOLIDATED ACTIONS          Hon. David O. Carter
                                       Trial Date:  January 11, 2010
25
26   **PUBLIC REDACTED VERSION**
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1
FACTUAL BACKGROUND ............................................................................ 2
ARGUMENT..................................................................................................... 9
CONCLUSION ............................................................................................... 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Simon Property Group, L.P. v. mySimon, Inc.,*
    2003 U.S. Dist. LEXIS 5438 (S.D. Ind. Mar. 26, 2003).....................................10

## FEDERAL STATUTES

F.R.C.P. 56(c)(1) ...........................................................................................2, 7, 9

**INTRODUCTION**

Mattel and Quinn Emanuel have done a masterful job of concealing key evidence concerning Mattel's theft of MGA trade secrets, only producing such information in July and August 2010.  At that time, MGA learned that multiple Mattel employees and agents had for many years been using false business cards and names to gain access to competitors' private showrooms to steal information about unreleased products.  Mattel and Quinn Emanuel were able to conceal evidence of this practice even though there were requests for this information dating back to 2006 and even though Mattel and Quinn Emanuel lawyers knew about this conduct no later than 2006.  In fact, one of the participants in this practice, Sal Villasenor, wrote an email to Mattel's General Counsel and VP of Human Resources admitting that he was concerned that he was engaging in criminal conduct that would be discovered in this litigation.  In that email, Villasenor named Quinn Emanuel partner Jon Corey and in-house counsel Michael Moore as having been directly involved in debriefing the witness.  Yet the evidence was never produced in his case.

That is because Mattel and Quinn Emanuel concealed the evidence for years, until Villasenor testified.  Even then, Mattel and Quinn Emanuel continued to conceal critical evidence in the hopes that MGA's attorneys would not ask the right questions.  But at least some of the key facts came out in the end—Quinn Emanuel had been directly involved with this witness years ago.  And *after* the deposition, Mattel for the first time produced a series of correspondences between Villasenor's lawyer and Quinn Emanuel partner Jon Corey exchanged in 2006 where Villasenor affirmatively asserted that his knowledge and conduct were relevant to the pending litigation.  Quinn Emanuel cannot claim that it did not know he was a witness, and had relevant documents.  Yet these documents were suppressed throughout this litigation until Villasenor was slated to testify and the jig was up.

After doggedly extracting the information, MGA asserted its new claims.

The new claims entirely concern Mattel's conduct, and the information about Mattel's conduct lies entirely in its own hands. Mattel has the gall to cry foul because it now has little time to conduct discovery on claims regarding its own conduct. This is a classic example of an effort to blame the victim.

MGA does not object to reasonable discovery on its counterclaims-in-reply timed to coincide with the existing case deadlines. Even though the fault lies with Mattel that these claims could not be brought earlier, MGA intends to produce documents and a 30b6 witness on these claims. MGA has already begun gathering documents concerning its trade secrets with respect to the 54 MGA products about which MGA just learned Mattel had stolen information.

But to reward Mattel with extensive and burdensome discovery on these claims now, when Mattel created this situation and is itself in exclusive possession of the information regarding its own conduct, would be unfair. This is particularly true since Mattel continues to refuse to produce documents concerning its theft of MGA trade secrets. MGA expects that a full production from Mattel will reveal more trade secrets stolen by Mattel spies.

**FACTUAL BACKGROUND**

On July 12, 2010, MGA deposed Sal Villasenor, a former member of Mattel's "Market Intelligence" group. Villasenor admitted to a wide-ranging practice at Mattel since 1992 of Mattel employees and contractors using false names and business cards that they printed at Kinko's to sneak into competitors' private showrooms to steal confidential catalogs, price lists and other information. On the eve of the deposition, and even after the deposition, Mattel produced for the first time volumes of documents showing that Villasenor was not lying about this practice. The majority of these documents were not produced until after Villasenor's deposition when MGA demanded production of documents specifically identified by Villasenor. The documents just now produced include:

- Copies of business cards used by Villasenor and a Mattel contractor

with fake retailer names that they used to gain entry to private showrooms;

- Expense reports for Villasenor reflecting reimbursement requests for "Kinko's for Trade Show business cards," and for mini videocassette recorders and cameras bought just prior to trade shows;

- Performances reviews for Villasenor and others in his group describing their "major accomplishment" as being the ability to obtain "competitive catalogues and price lists" from toy fairs;

- Copies of confidential MGA price lists that Villasenor had said he obtained by misrepresenting who he was;

- Multiple toy fair reports that openly identified their source as being "from competitive catalogs and price lists acquired at the New York Toy Fair," which contain dozens of pages of pictures and descriptions of unreleased MGA products that MGA had shown privately to retailers (and, apparently, to Mattel spies) at the annual toy fairs.

- A copy of a video presentation of competitive information obtained by Villasenor and others from toy fair private showrooms, which Villasenor testified was presented to *hundreds* of executives and employees at Mattel.

There can be no doubt from these documents that Mattel employees were, in fact, doing what Villasenor had said – – stealing competitors' information under false pretenses and broadcasting it to wide audiences at Mattel.

Villasenor's testimony and documents also revealed that Mattel lawyers, including in-house counsel responsible for this case, the Mattel General Counsel and Quinn Emanuel partner Jon Corey, knew all about Villasenor and his group's conduct at least by late 2005. On December 22, 2005, Villasenor wrote to Robert Normile, Mattel's General Counsel, with a copy to Michael Moore, the in-house counsel responsible for document collection in this case:

Exhibit A to Denise M. Mingrone Declaration (Mingrone Decl.): December 22, 2005 Villasenor Email to Normile.  As noted, Corey is a partner at Quinn Emanuel involved in this case and Moore was the in-house counsel responsible for document collection.  Thus, Mattel's inside and outside counsel had approached Villasenor before the end of 2005.  Mattel's remarkable redactions have concealed the subject of those conversations, but it is apparent from other evidence that the subject was this litigation.

Indeed, former Mattel executive Sujata Luther was asked about Villasenor's "gathering" of competitive MGA information and testified:





1

2

3

4

Exhibit B to Mingrone Decl: Sujata Luther Deposition, July 8, 2010 at 164:16-
169:1.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

*Id.* at 167:21-169:1.  Recognizing the explosive impact of Villasenor's conduct on
MGA's claims, Mattel lawyers sought to distance themselves from Villasenor's
conduct, writing to Villasenor's lawyer.

26

27

28

█████████████████████████████████████

Exhibit C to Mingrone Decl: January 10, 2006 Corey Letter to Barrera. Villasenor's lawyer *disagreed* with this effort to artificially separate the two so that Mattel and Quinn Emanuel could try to hide the evidence, writing back that Villasenor's issues *were* related to this litigation.  Exhibit D to Mingrone Decl: January 11, 2006 Barrera Letter to Wagner.

Soon after Quinn Emanuel lawyers met with Villasenor, in fact, MGA had propounded document requests on Mattel that sought documents which would have revealed the very type of conduct in which Villasenor and his group were engaged. Specifically, MGA propounded beginning in late 2006 no less than eight separate requests for documents reflecting Mattel knowledge of information concerning MGA's unreleased products before that information was made public.  This included Request 31, served on November 22, 2006 that sought:

> ALL DOCUMENTS REFERRING OR RELATING TO whether MATTEL had access to any exhibits, displays or show rooms containing any of MGA's "BRATZ" lines prior to its release to the public.

And also included Request 476, served on August 3, 2007 that sought:

> ALL DOCUMENTS RELATING TO YOUR efforts, or knowledge of any efforts by any PERSONS, worldwide to monitor, "spy on" or gain knowledge of MGA'S trade secrets, non-public information, non-public activities, unreleased products, and product development . . .

Despite Mattel and its lawyers' knowledge of Villasenor and his group's conduct and the relevance of that conduct to MGA's claims and defenses, Mattel did not produce any documents from Villasenor's emails or files until a few days before his deposition.  After the deposition of Villasenor, MGA demanded additional Villasenor documents and only then did Mattel produce the records described above demonstrating Mattel's misconduct.  But Mattel still has not

1   produced it all.

2         Armed with this information, MGA filed its Counterclaims-in-Reply on

3   August 16, 2010, the date they were due.

4                              **ARGUMENT**

5         Mattel seeks to portray the timing of MGA's RICO and trade secret claims as

6   a tactically based effort to deprive Mattel of discovery.  It was not.  That Mattel

7   could even make that claim with a straight face is laughable when it sat for four

8   years on the information upon which MGA's claims are based.  If anyone sought to

9   gain a tactical advantage based upon the impending discovery cut-off, it was

10  Mattel, who concealed the evidence for years.  MGA brought its claims almost

11  immediately after Mattel produced these damning documents and after Villasenor

12  admitted to this conduct.

13        Mattel's contention that MGA intentionally sought to induce a discovery cut-

14  off before filing its Counterclaims-in-Reply is ridiculous.  The Court will recall that

15  MGA has been asking the Court to set a discovery cutoff since November of 2009.

16  Moreover, as of August 9, 2010, when the parties met to discuss scheduling, MGA

17  had not made a final decision as to the nature of its claims.  Unlike Mattel, MGA

18  takes very seriously making claims involving opposing counsel and a great deal of

19  thought and discussion went into that decision.  Indeed, pivotal documents – – the

20  redacted copy of Villasenor's email to Normile dated December 22, 2005 and the

21  2006 correspondence between Corey and Barrera– – had been produced by Mattel

22  on August 7, 2010 – – only days prior to MGA's pleading deadline.  These

23  documents were produced weeks ***after*** Villasenor's July deposition and just days

24  before MGA's deadline to file its pleading.

25        Mattel also argues that MGA should have figured out sooner about Mattel's

26  rampant practice of corporate espionage and all the documents Mattel was

27  withholding because a few MGA employees purportedly testified to having heard

28  or seen some evidence of this.  But suspecting Mattel capable of engaging in this

1   type of illicit conduct and having evidence of it occurring are two different things.

2   Again, unlike Mattel, MGA takes seriously its pleading obligations and was not

3   going to assert the very-serious RICO claims that it has alleged without an adequate

4   factual basis for those claims.  To blame MGA for not uncovering sooner Mattel'

5   suppression of key evidence is an argument that courts have soundly rejected.

6   *Simon Property Group, L.P. v. mySimon, Inc.*, 2003 U.S. Dist. Lexis 5438, *8-*9

7   (S.D. Ind. Mar. 26, 2003).  As in that case, Mattel's argument "amounts to a

8   transparent effort to blame the victim of deceptive discovery practices."

9        MGA does not oppose reasonable discovery *for both sides* on MGA's

10   recently-filed claims timed to coincide with the existing cutoffs.  Indeed, MGA

11   anticipated that it would need to produce additional documentation on the 54

12   products identified in its Reply and began collecting that information upon learning

13   that Mattel had stolen its confidential information related thereto.

14        As usual, however, Mattel seeks to use MGA's filing as an excuse to

15   bludgeon MGA with overbroad and burdensome discovery requests that it hopes

16   will prevent MGA from pursing its remaining discovery in the time remaining.  The

17   truth of the matter is that most of what Mattel might need to defend these claims

18   has either been the subject of previous discovery or is solely in Mattel's hands.

19        Mattel has taken extensive discovery on MGA's affirmative claims in written

20   discovery, (*see, e.g.*, Requests For Production No. 201-223, 225, 227-248 (Mattel

21   6th Set of RFPs to MGA, dated 12/12/07); Interrogatories No. 1-3 (Mattel's 4th

22   Phase 2 Interrogatories to MGA); Mattel's Second Amended Supplemental

23   Interrogatory re Defendants' Affirmative Defenses); 30(b)(6) depositions ("The

24   factual basis for MGA's affirmative defenses" (Category 28, 3/2 Letter from M.

25   Zeller to A. Hurst); "The basis for MGA's remaining claims and allegations . . . and

26   other alleged unfair or anticompetitive conduct" (Category 26q, 3/2 Letter from M.

27   Zeller to A. Hurst); MGA 30b6 Depo. [I. Larian], Vol. 15, *passim*) and in

28   individual depositions (*see, e.g.*, C. Bryant Depo., Vol. 5, at 1067-69; R. Brawer

Depo., Vol. 2, at 640-53; I. Larian Depo., Vol. 4, at 990-94; I. Larian Depo., Vol. 7, at 1792-93; G. Machado Depo., Vol. 3, at 335-36).

The only additional discovery that is required is based on the revelations from Villasenor and the documents produced only recently by Mattel. Had Mattel timely produced these documents in 2007 – when they were so obligated – the parties could have completed discovery on all of this by now. Mattel's concealment and suppression of evidence in violation of numerous court orders is the sole cause of this problem. MGA therefore proposes that it will produce the following by September 17, 2010:

- All documents regarding MGA trade secret materials reflected in the 54 unreleased MGA products referenced in the Reply and Counterclaims filed on August 16, 2010;

- All documents reflecting MGA's maintenance of confidentiality regarding the 54 unreleased MGA products referenced in the Reply and Counterclaims filed on August 16, 2010;

- All documents reflecting MGA's imposition of confidentiality within its privately-hosted showrooms at toy fairs between 2000 to 2010;

- All documents reflecting MGA's maintenance of confidentiality within its privately-hosted showrooms at toy fairs between 2000 to 2010.

Prior to MGA's production, however, Mattel should be required to produce all documents related to the conduct of Villasenor and the Market Intelligence group. The requested information is the subject of motions to compel filed by MGA on August 10, 2010.

Additionally, Mattel should be ordered to prepare and produce a complete privilege log detailing all of its privileged communications, including those without outside litigation counsel, regarding the activities of the market intelligence group. Many documents are obviously being withheld as privileged regarding what Mattel knew about this, when it knew it, and Quinn Emanuel's involvement in the

1  suppression and concealment of this evidence.

2  **CONCLUSION**

3      MGA requests that the Court deny Mattel's *ex parte* application and order

4  Mattel to produce to MGA all documents related to the conduct of Villasenor and

5  the Market Intelligence group. Following this production, MGA will produce the

6  documents noted above.

7

8  Dated:    August 26, 2010      ORRICK, HERRINGTON & SUTCLIFFE LLP

9

10                  By:                                    

                                Thomas S. McConville

11                                  Attorneys for MGA Parties

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28