# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | CV 04-9049 DOC (RNBx) | Date   August 25, 2010 |
| Title | CARTER BRYANT -V- MATTEL INC. | |

| Present: The Honorable | David O. Carter, U.S. District Judge | | |
|---|---|---|---|
| Kathy Peterson / Julie Barrera | Maria Dellaneve | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| John Quinn<br>Michael Zeller<br>Dylan Proctor | | Annette Hurst<br>Thomas McConville<br>William Molinski | |

Proceedings:   EVIDENTIARY HEARING ON MATTEL'S MOTION TO COMPEL PRODUCTION OF ATTORNEY-CLIENT COMMUNICATIONS, MGA'S OBJECTIONS TO DISCOVERY MATTER ORDER NO. 90

  Tentative ruling is given to the parties; a copy is attached hereto. The matter is called. Counsel state their appearances. Court and counsel confer.

  In camera evidentiary hearing begins re: attorney-client communications. Further evidentiary hearing re: attorney-client communications is continued to August 26, 2010 at 3:00 p.m.

  In open court with all parties present, the Court and counsel confer. The Court instructs parties to submit a list of pending discovery disputes by Friday, August 27, 2010. The Court continues the matters to August 26, 2010, at 3:00 p.m.

|  |  |  |
|---|---|---|
|  | 2 | : 01 |
| Initials of Preparer | jcb | |

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., ) | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff(s), ) | |
| v. ) | **[TENTATIVE] O R D E R** <br> **GRANTING MOTION TO COMPEL** |
| MGA ENTERTAINMENT, INC., ) | |
| Defendant(s). ) | |

Before the Court is Mattel, Inc. ("Mattel")'s Motion for Order Compelling Production of Communications Made in Furtherance of Crimes and Frauds and as to Which MGA has Waived Attorney-Client Privilege (the "Motion"). After considering the moving, opposing, replying, and supplementary papers, [as well as the parties' oral argument], the Court [GRANTS IN PART AND DENIES IN PART] the Motion.

**I.    Background**

Between 2000 and 2001, Defendant Isaac Larian ("Larian") communicated by e-mail with MGA Entertainment, Inc. ("MGA")'s attorneys about the origins of Bratz. At some time in

1  2000, MGA hired a former Mattel, Inc. ("Mattel") designer named Carter Bryant ("Bryant").
2  MGA's engagement with Bryant would eventually lead to the marketing and production of the
3  massively successful Bratz line of dolls, which Bryant conceived at some time prior to being
4  hired by MGA.  Larian's (and MGA's) knowledge about the time at which Bryant conceived
5  Bratz and reduced Bratz to practice are directly relevant to Mattel's copyright infringement
6  claim, its racketeering claims, and its state law claims against MGA and Larian.  As such, Mattel
7  seeks to discover the communications between Larian and his attorneys about the date of Bratz's
8  conception and reduction to practice.

9  These e-mails are protected by the attorney-client privilege; a point Mattel doesn't
10 dispute.  Instead, Mattel argues that Larian's communications with his attorneys were made in
11 furtherance of a crime or fraud and, in addition, that Larian waived the privilege as to the
12 communications with his attorneys.

13 As to waiver, Mattel argues that Larian and MGA have relied on advice of counsel
14 throughout this litigation with respect to the timing of Bratz's conception.  First, there is the
15 issue of Larian's testimony at the phase 1 trial.  When asked about when the initial Bratz
16 sketches were created, Larian testified "[Bryant] told me he did them in 1998, when was in
17 Missouri, on nights and weekends."  Dkt. 5021, 5037 (3/13/09 Olivar Decl.) Ex. 38 (6/6/08 Tr.
18 1675).  During phase 1(b), which in relevant part addressed whether subsequent lines of Bratz
19 dolls infringed Bryant's initial sketches, Larian testified it was his understanding that Bryant
20 conceived Bratz in 1998 and "later on [did] work[] on the weekends and in the evenings [to
21 enhance] what he was doing."  *Id.* Ex. 2 (8/15/08 Tr. 7618-19).

22 Larian also testified about whether he "knowingly cause[d] [Bryant] to share Mattel's
23 confidential information with MGA."  August 15, 2008 Trial Tr., at 7613:4-6.  Larian testified
24 that "when [Bryant] came to show us those drawings, we did not know that he had done those at
25 Mattel, and we went further to verify, through his lawyer and our lawyers, that he had not done
26 that."  *Id.* at 7613:2-5.  To bolster his belief in Bryant's claim that Bratz was conceived in 1998
27 and only later "enhanced" on evenings and weekends, Larian referenced representations made
28 by Bryant's attorneys, which "[MGA and Larian] believed."  *Id.* at 7619:4-6.

2

Larian also testified to independent investigations taken by MGA and MGA's attorneys to test the veracity of Bryant's representations about the date of Bratz's conception. Larian testified that though he "took [Bryant's] word," he also "directed [MGA's] head of licensing to check with [MGA's] attorney and [Bryant's] attorney to make sure that what [Bryant] was telling [Larian] was true. And they did." July 9, 2008 Trial Tr., at 1690:1-5. When pressed by Mattel's attorney about whether Larian simply accepted Bryant and Bryant's attorney's representations at face value, Larian responded that he did more:

> I directed [fellow MGA executive] Victoria O'Connor to make sure, to find out, that if [Bryant] said he had done this in 1998 in Missouri, that he had.
>
> She went to our attorney, David Rosenbaum, who went to Carter Bryant's attorney and asked this. Carter Bryant's attorney came back later on – and I have seen an e-mail to that effect – and said she had investigated and that his story was true, and that he had done this in 1998 when he was in Missouri.

*Id.* at 1692:9-14.

Larian was pressed further on whether MGA's attorney (David Rosenbaum) did nothing more than receive an assurance from Bryant's attorney. In response, Larian testified "[i]f my attorney and his attorney, as officers of the court, came back in writing and said that they had investigated – his attorney has investigated and his story is true, I believe that." *Id.* at 1696:18-21. Indeed, Larian was unable to testify as to the type of investigation undertaken by O'Connor and Rosenbaum, suggesting that Mattel "get her on the stand and ask her." *Id.* at 1697:7-8. However, Larian did claim that "I think we did go beyond" merely accepting Bryant's story about the conception of Bratz. *Id.* at 1699:7-11; *see also id.* at 1703:14-15 ("Yes, we did want to investigate [Bryant's claim]. And we did that.").

Mattel has repeatedly moved to compel the production of Larian's communications with MGA's attorneys about the date of Bratz's conception. Indeed, Larian's e-mails with MGA's attorneys were the subject of Mattel's cross-appeal before the Ninth Circuit and on July 22,

3

2010, the Ninth Circuit declined to rule on the cross-appeal, citing its probable lack of jurisdiction over the issue. The motion that is the subject of the instant order was filed on December 7, 2009 and held in abeyance on December 14, 2009. Following the Ninth Circuit's July 22, 2010 decision, the Court ordered the parties to submit supplemental briefing and appear for a hearing on August 25, 2010.

## II.   Legal Standard

The parties do not contest that Larian (and other MGA executives') communications with counsel are protected by the attorney-client privilege, which is applied according to an eight-part test. The Ninth Circuit holds that (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) unless the protection be waived. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir. 1992)). "A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (citation omitted).

The privilege is not limitless. It does not operate to protect from disclosure communications made in furtherance of a crime or a fraud. *In re Grand Jury Investigation*, 974 F.2d at 1071. This so-called "crime fraud" exception "prevent[s] abuse" of the attorney-client privilege and to make information available to a prosecutor investigating the crimes or frauds potentially perpetuated as a result of the legal advice. *See United States v. Alexander*, 287 F.3d 811, 817 (9th Cir. 2002).

Moreover, as is obvious from the eighth factor, the privilege does not continue to protect communications as to which any privilege has been waived. Waiver may occur in two relevant ways. First, "a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of the litigation." *Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003). "[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.*

4

1        A party may also waive the privilege by performing an express waiver, which occurs
2   "when a party discloses privileged information to a third party who is not bound by the privilege,
3   or otherwise shows disregard for the privilege by making the information public." *Id.* (citing
4   Mueller & Kirkpatrick § 5.28, at 530-33). In cases involving the express disclosure of privileged
5   information, even "inadvertent" disclosures waive the privilege. *Id.* at 720 n. 4 (citing *Weil v.*
6   *Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24-25 & n. 1 (9th Cir. 1981).

**III.     Discussion**

        The Court need not reach the issue of whether Larian's (and O'Connor's) communications with MGA's attorneys were made in furtherance of a crime or a fraud. This is because Larian waived any privilege through the testimony he delivered in phases 1(a) and 1(b). When queried about his efforts to confirm Bryant's representations about the conception of Bratz, Larian testified that he indirectly – through Victoria O'Connor – directed MGA's attorneys to investigate Bryant's claims. And Larian testified that the response he received from MGA's attorney, again by way of Victoria O'Connor, assured him that the drawings were sketched "in 1998 when [Bryant] said" they were sketched. July 9, 2007 Trial Tr., at 1705:9-13.

        Larian's knowledge about the date on which Bryant conceived Bratz is relevant to Mattel's allegation that MGA's infringement of Mattel's copyrights, its theft of Mattel's trade secrets, and its interference with Mattel's contractual relations, were knowing, willful, and malicious. In disclaiming any knowledge, willfulness, and/or maliciousness, Larian put his attorneys' advice at issue. Indeed, Larian conceded during phase 1(a) that Bryant's assurances were themselves insufficient to convince Larian that Bratz was not conceived and reduced to practice during Bryant's employment with Mattel. *Id.* at 1703:14-16 ("First of all, it wasn't an assumption. [Bryant] did say that he did them in 1998 when he was in Missouri. And, yes, we ***did want to investigate that. And we did that***.") (emphasis added). Larian's testimony allows MGA to argue that MGA's lawyers reassured Larian about the integrity of Bryant's representations without revealing to Mattel the content of the lawyers' communications with Larian. Larian's testimony therefore represents an impermissible use of the attorney client privilege "both as a sword and a shield." *Bittaker*, 331 F.3d at 719 (quoting *Chevron Corp. v.*

5

1 *Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)).

2      MGA offers little response. Sifting through MGA's brief, the Court can discern three arguments for the proposition that Larian *did not* waive the attorney-client privilege through his testimony about MGA's attorney's communications. First, MGA argues that "Mattel has long agreed – since Mr. Larian's first deposition – that disclosure of information given by Mr. Bryant's attorney to Mr. Rosenbaum would not be a basis for waiver of privilege." Dkt. 7346 at 25:4-6. But MGA's only supporting evidence is a claim by Mattel's attorney during Larian's deposition that "I won't regard it as a waiver, if that's the issue. You can tell me about this. If there's something that you are concerned about there, he can tell me about [it]. I agree it's not a waiver." *See id.* A single statement (or even two) by counsel does not constitute a "long agree[ment]" that selective disclosures of attorney-client communications do not waive the privilege as to those communications. Moreover, even if Mattel's counsel agreed that deposition testimony did not constitute a waiver, there's no evidence that counsel intended for this agreement to encompass trial testimony as well.

      Second, MGA suggests that Larian's testimony did not reveal privileged information, since the testimony "concerned the same information disclosed in the e-mails – the information supplied by Mr. Bryant's attorney to MGA's attorney regarding the conception date." *Id.* at 18:21-23. However, Mattel's waiver argument is not premised on Larian's disclosure of the content of Bryant's communications with MGA's attorney(s). Rather, Mattel correctly argues that Larian waived the privilege when he testified as to the content of ***MGA's*** attorney's communications with MGA's executives. *C.f. Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S.Ct. 677 (1981) ("[T]he protection of the privilege extends only to *communications* and not to facts."). Viewed another way, if Larian's knowledge was at issue, and Larian claimed his knowledge was informed by communications with MGA's attorney, then Larian by any reasonable measure put those communications "at issue." Denying Mattel the content of those communications deprives Mattel of "a fair opportunity" to rebut Larian's claimed knowledge about when Bratz was conceived and reduced to practice. *See Bittaker*, 331 F.3d at 719.

      Third, MGA argues that "most of" Larian's testimony that put attorney-client

6

1  communications at issue "was in response to cross-examination aimed at trying to prove that Mr.
2  Larian had *not* sought to verify Mr. Bryant's representations." Opp. at 18:27-28 (emphasis in
3  original). But the questions directed at Larian did not induce him to put MGA's attorney's
4  advice at issue; Larian voluntarily relied on counsel's advice when asked about the basis for his
5  belief that Bryant conceived Bratz outside Mattel. *See Glenmede Trust Co. v. Thompson*, 56
6  F.3d 476, 486-87 (3d Cir. 1995) (finding waiver where there were "acts evincing a clear intent to
7  waive the attorney-client privilege by placing at issue reliance on the advice of counsel"). In any
8  event, even if Larian did not intend to waive the privilege as to MGA's communications with
9  Rosenbaum, intent is irrelevant when advice of counsel is placed at issue. *See Bittaker*, 331 F.3d
10 at 719 ("[Implied] waivers . . . differ materially from the more traditional express waivers [that]
11 occur[] when a party discloses privileged information to a third party . . . or otherwise shows
12 disregard for the privilege by making the information public.").
13    In sum, Larian's knowledge about the date of Bratz's conception is highly relevant to
14 almost every claim in Mattel's operative pleading. Larian claims his knowledge at or around the
15 time of Bryant's hiring was informed by an investigation performed by MGA's attorney – and
16 communications sharing the results of that investigation. Larian's testimony placed counsel's
17 advice at issue.
18    Larian's waiver was "no broader than needed to ensure the fairness of the proceedings."
19 *Bittaker*, 331 F.3d at 720. It must be "closely tailored . . . to the needs of the opposing party in
20 litigating the claim in question." *Id.* (citing *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 405, 96 S.Ct.
21 2119 (1976)). In this case, Larian's reliance on Rosenbaum's attorney's advice not only
22 compels disclosure of all advice delivered by Rosenbaum, but also compels the disclosure of
23 advice delivered by other attorneys as well. The legal advice is relevant to Larian's knowledge,
24 which may have been informed by more than one source.
25    **IV.   Disposition**
26    MGA is entitled to a ruling that sets clear "contours of the waiver" imposed by this Court.
27 Accordingly, the Court [ORDERS] that Larian's waiver shall extend to **all privileged**
28 **communications that inform or reflect Larian's knowledge, prior to Bryant's employment**

**by MGA, about the timing of Bratz's conception and reduction to practice.** This waiver extends to the following entries on MGA's privilege logs, as to which Mattel's Motion is [GRANTED]: 661 Rev. Aug. 2007 Log; 662 Rev. Aug. 2007 Log; 90 Larian Jan. 15, 2008 Log; 238 MGA Nov. 16, 2007 Log; 657 MGA Aug. 14, 2007 Rev. Log; 55 MGA Jan. 23, 2008 Log; 55 MGA Jan. 23, 2008 Rev. Log; 374 MGA Jan. 23, 2008 Log; 548 MGA Jan. 23, 2008 Log; 89 Larian Jan. 15, 2008 Log; 2337 MGA Nov. 16, 2007 Log; 656 MGA Aug. 14, 2007 Log; 660 MGA Aug. 14, 2007 Rev. Log; 656 MGA Aug. 14, 2007 Supp. Log; 54 MGA Jan. 23, 2008 Log; 54 MGA Jan. 23, 2008 Rev. Log; 374 MGA Jan. 23, 2008 Rev. Log; 375 MGA Jan. 23, 2008 Rev. Log; 549 MGA Jan. 23, 2008 Rev. Log; 548 MGA Jan. 23, 2008 Log; 660 MGA Aug. 14, 2007 Supp. Log; 375 MGA Jan. 23, 2008 Log; 549 MGA Jan. 23, 2008 Log; 1325 MGA Jan. 23, 2008 Log; 69 Larian Jan. 15, 2008 Log; 63 Larian Jan. 15, 2008 Log; 655 MGA Aug. 14, 2007 Rev. Log; 734 MGA Aug. 14, 2007 Rev. Log; 655 MGA Aug. 14, 2007 Supp. Log; 734 MGA Aug. 14, 2007 Supp. Log; 637 MGA Jan. 23, 2008 Log; 550 MGA Jan. 23, 2008 Rev. Log; 639 MGA Jan. 23, 2008 Rev. Log; 1327 MGA Jan. 23, 2008 Rev. Log; 1325 MGA Jan. 23, 2008 Log; 637 MGA Jan. 23, 2008 Log.

The Motion is [DENIED] as to the remaining documents sought by the Motion.

IT IS SO ORDERED.

DATED: August 25, 2010

_____
DAVID O. CARTER
United States District Judge