1 QUINN EMANUEL URQUHART & SULLIVAN, LLP
2   John B. Quinn (Bar No. 090378)
    (johnquinn@quinnemanuel.com)
3   Michael T. Zeller (Bar No. 196417)
    (michaelzeller@quinnemanuel.com)
4 865 South Figueroa Street, 10th Floor
  Los Angeles, California 90017-2543
5 Telephone: (213) 443-3000
  Facsimile: (213) 443-3100
6

7 Attorneys for Mattel, Inc., and Mattel de
  Mexico, S.A. de C.V.

8                  UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                     SOUTHERN DIVISION

11

| | |
|---|---|
| 12 MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| 13 | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 14 Plaintiff, | |
| 15 vs. | Hon. David O. Carter |
| 16 MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION FOR NEW TRIAL** |
| 17 | |
| 18 Defendant. | Hearing Date: September 3, 2010 Time: 1:30 p.m. Place: Courtroom 9D |
| 19 | |
| 20 | Discovery Cut-off: October 4, 2010 Pre-trial Conf: January 4, 2011 Trial Date: January 11, 2011 |
| 21 AND CONSOLIDATED ACTIONS | |

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ...................................................................................................2

I.     THE JURY'S SPECIAL FINDINGS OF FACT MUST BE
       RESPECTED ...........................................................................................5

       A.     The Special Findings Are Entitled to Deference Under the
              Seventh Amendment .............................................................6

       B.     The Factual Dispute Resolved by the Special Findings Remains
              Highly Relevant to Phase 2 ...................................................8

II.    THE VERDICTS ON AIDING AND ABETTING BREACH OF
       DUTY OF LOYALTY, AIDING AND ABETTING BREACH OF
       FIDUCIARY DUTY AND TORTIOUS INTERFERENCE SHOULD
       BE PRESERVED ....................................................................................10

       A.     Aiding and Abetting Breach of Duty of Loyalty .................10

       B.     Aiding and Abetting Breach of Fiduciary Duty. .................12

       C.     Intentional Interference with Contract ................................13

       D.     Ample Evidence Unrelated to Ownership Supports the Verdicts .........14

III.   MGA WAIVED ANY ARGUMENT REGARDING THE FOUR
       EXHIBITS ON WHICH THE JURY REACHED NO VERDICT ...............19

IV.    THIS COURT REPEATEDLY REJECTED MGA'S JUROR BIAS
       ARGUMENTS AND REQUEST FOR JUROR TRANSCRIPTS ................22

V.     MGA'S "NEW" EVIDENCE IS OLD AND IRRELEVANT .......................24

       A.     The "Bratz Brief" Is Not New, Nor Material to Phase 1 ......24

       B.     MGA's Statute of Limitations Arguments Should Be Rejected ..........27

CONCLUSION ..............................................................................................31

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page**

3

<u>**Cases**</u>

4

<u>Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.</u>,
   369 U.S. 355 (1962).................................................................................................3

5

<u>Bains LLC v. Arco Prods. Co.</u>,
   405 F.3d 764 (9th Cir. 2005)...............................................................................19

6

<u>Caballero v. City of Concord</u>,
   956 F.2d 204 (9th Cir. 1992).................................................................................3

7

8

<u>California v. Altus Fin. S.A.</u>,
   540 F.3d 992 (9th Cir. 2008)..........................................................................21, 22

9

<u>Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.</u>,
   508 U.S. 602 (1993)..............................................................................................11

10

11

<u>Daniel Orifice Fitting Co. v. Whalen</u>,
   198 Cal. App. 2d 791 (1962)................................................................................17

12

13

<u>Eigeman v. City of Great Falls</u>,
   723 F. Supp. 522 (D. Mont. 1989).......................................................................29

14

<u>Elliot & Co. v. Ferdinand Toeppner</u>,
   187 U.S. 327 (1902)................................................................................................7

15

16

<u>Eximco, Inc. v. Trane Co.</u>,
   737 F.2d 505 (5th Cir. 1984).............................................................................3, 19

17

<u>Far Out Prods., Inc. v. Oskar</u>,
   247 F.3d 986 (9th Cir. 2001)................................................................................24

18

19

<u>Fibermark, Inc. v. Brownville Specialty Paper Products, Inc.</u>,
   419 F. Supp. 2d 225 (N.D.N.Y. 2005)...........................................................4, 5, 7

20

<u>Floyd v. Laws</u>,
   929 F.2d 1390 (9th Cir. 1991)................................................................................6

21

22

<u>Galdamez v. Potter</u>,
   415 F.3d 1015 (9th Cir. 2005)............................................................................2, 3

23

<u>Gasoline Products Co. v. Champlin Refining Co.</u>,
   283 U.S. 494 (1931)............................................................................................5, 7

24

25

<u>Green v. Am. Tobacco Co.</u>,
   325 F.2d 673 (5th Cir. 1963), cert. denied, 377 U.S. 943 (1964)..........4, 6, 7, 8, 9

26

<u>Hasbrouck v. Texaco, Inc.</u>,
   663 F.2d 930 (9th Cir. 1981)..................................................................................5

27

28

Heller v. EBB Auto Co.,
    8 F.3d 1433 (9th Cir. 1993).........................................................................3

Huong Que, Inc. v. Luu,
    150 Cal. App. 4th 400 (2007)...................................................................10

Iconix, Inc. v. Tokuda,
    457 F. Supp. 2d 969 (N.D. Cal. 2006)......................................................17

Indu Craft,
    47 F.3d at 497............................................................................................19

Leslie Salt Co. v. United States,
    55 F.3d 1388 (9th Cir. 1995).....................................................................24

Lieberman v. Dudley,
    1998 WL 740827 (D. Conn. 1998)............................................................18

Lies v. Farrell Lines, Inc.,
    641 F.2d 765 (9th Cir. 1981).......................................................................2

Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.,
    275 F.3d 762 (9th Cir. 2001).....................................................................11

Mattel Inc. v. MGA Entertainment Inc. et al.,
    No. 09-55673, 2010 WL 2853761 (9th Cir. July 22, 2010) ......................23

Minidoka Irrigation Dist.,
    406 F.3d at 572
    (quoting SEC v. Rubera, 350 F.3d 1084, 1093-94 (9th Cir. 2003)) ...................11

Moore v. Jas. H. Matthews & Co.,
    682 F.2d 830 (9th Cir. 1982).....................................................................24

Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.,
    532 F.3d 1063 (10th Cir. 2008).................................................................18

Murphy v. City of Long Beach,
    914 F.2d 183 (9th Cir. 1990)...................................................................2, 3

Neilson v. Union Bank of Calif.,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003).....................................................18

Passantino v. Johnson & Johnson Consumer Prods., Inc.,
    212 F.3d 493 (9th Cir. 2000).....................................................................18

Phoenix Eng'g and Supply Inc. v. Universal Elec. Co.,
    104 F.3d 1137 (9th Cir. 1997).....................................................................4

Pritchard v. Liggett & Myers Tobacco Co.,
    370 F.2d 95 (3rd Cir. 1966) .....................................................................4, 7

Pryer v. C.O. 3 Slavic,
    251 F.3d 448 (3d Cir. 2001).........................................................................3

1

<u>Pumphrey v. K.W. Thompson Tool Co.</u>,
   62 F.3d 1128 (9th Cir. 1995)............................................................................3

2

3

<u>Schutzky Dist., Inc. v. Kelly</u>,
   643 F. Supp. 57 (N.D. Cal. 1986)....................................................................4

4

<u>Sequa Corp. v. Gbj Corp.</u>,
   156 F.3d 136 (2d Cir. 1998)...........................................................................31

5

6

<u>Spurlin v. Gen. Motors Corp.</u>,
   528 F.2d 612 (5th Cir. 1976)............................................................................3

7

<u>Tennant v. Peoria & Pekin Union Ry. Co.</u>,
   321 U.S. 29 (1944)...........................................................................................6

8

9

<u>Union Pac. R.R. Co. v. Bridal Veil Lumber Co.</u>,
   219 F.2d 825 (9th Cir. 1955)..........................................................................21

10

<u>United States v. Shryock</u>,
   342 F.3d 948 (9th Cir. 2003)..........................................................................23

11

12

<u>United States v. Wintermute</u>,
   443 F.3d 993 (8th Cir. 2006)..........................................................................23

13

<u>United States v. Wright</u>,
   506 F.3d 1293 (10th Cir. 2007).......................................................................23

14

15

<u>Zhang v. American Gem Seafoods, Inc.</u>,
   339 F.3d 1020 (9th Cir. 2003)........................................................................19

16

**<u>Statutes</u>**

17

Fed. R. Civ. P. 48.................................................................................................19

18

19

20

21

22

23

24

25

26

27

28

-iv-

### Preliminary Statement

The central premise of MGA's new trial motion—that "creeping" errors related to contract interpretation somehow "infected" all Phase 1 proceedings—ignores the standards set forth in <u>Rule</u> 59, the actual jury instructions, and the extensive trial record. Some Phase 1 verdicts must be undone because they were based on what the Ninth Circuit has ruled were erroneous jury instructions, but findings and verdicts *not* based on any such erroneous instructions should not be reexamined. Quite the contrary, the Seventh Amendment prohibits reexamination of valid and untainted jury findings simply because other claims must be retried.

First, and critically, the jury's special findings of fact—that Carter Bryant created more than 75 specific Bratz items not in 1998, as MGA had urged, but during his tenure at Mattel between January 4, 1999 and October 19, 2000—resolved the central factual dispute in Phase 1. Although the ultimate legal implications of those fact findings may now be uncertain, the findings remain both valid and highly material to the determination of who owns Bratz. And they are highly relevant to Mattel's claims that MGA and Larian committed perjury and engaged in other acts of obstruction of justice. The Phase 1 jury rejected and foreclosed MGA and Larian's false 1998 creation story. There is no reason or authority, and MGA offers none, for concluding that the jury's rejection of that false testimony should now be thrown out  for purposes of the Phase 2 trial. If that is done, MGA will surely once again argue that the drawings were created in 1998. The findings rejecting that false claim are pure fact findings protected by the Seventh Amendment and should be respected.

MGA continues to conspicuously avoid the actual jury instructions for Mattel's state law claims for aiding and abetting breach of duty of loyalty, breach of fiduciary duty and tortious interference with contract, and for good reason: the instructions make clear that liability on these claims did not depend on Mattel's ownership of Bratz. Indeed, there is an enormous amount of evidence unrelated to the ownership issues that establishes MGA and Larian's liability as to those claims, and fully supports the jury's

1   verdicts.  Because the instructions and evidence supporting liability are untethered to

2   any issue in the Ninth Circuit opinion, the verdicts as to those claims should be upheld.

3        MGA's improper attempts at reconsideration—re-raising rejected juror bias

4   arguments, rejected legal arguments as to the state law claims, and a rejected request to

5   view the Court's juror interview transcripts—should be dismissed out-of-hand.  MGA

6   offers no new facts or law in support of these largely cut-and-pasted arguments from

7   years-old briefing.  And MGA's arguments as to the four drawings on which the jury

8   reached no verdict were long ago waived—MGA expressly told the Court it agreed the

9   result would *not* be a hung jury.  In any event, the lack of a verdict as to four drawings

10  has no impact on the remainder of the verdict.

11       Finally, pointing to documents produced as long ago as 2007, and other

12  documents that are wholly irrelevant to Phase 1, MGA claims there is "new" evidence

13  justifying a re-trial.  Not so.  The "Bratz Brief" MGA points to was actually produced

14  in May 2007.  Judge Larson ruled that such documents were likely not relevant to

15  Phase 1, and indeed MGA never even attempted to introduce them.  Related emails

16  since produced are equally irrelevant.  Nor are MGA's purported statute of limitations

17  documents any reason for a re-trial; they are duplicative of other evidence probative

18  only of the irrelevant fact that Mattel knew Bratz existed in 2001.

19       Except as to copyright and conversion, MGA's motion should be denied.

## **Argument**

21       MGA's motion fundamentally misunderstands the standards that must be

22  applied.  It is well-settled in this Circuit that instructional error on one claim does not

23  require a retrial on all claims.  See Galdamez v. Potter, 415 F.3d 1015, 1025 n.8 (9th

24  Cir. 2005) (limiting new trial to a single issue subject to instructional error and

25  preserving verdict on other issues); Lies v. Farrell Lines, Inc., 641 F.2d 765, 774-75

26  (9th Cir. 1981) (finding district court erroneously granted summary judgment on one

27  theory of liability, but declining to order retrial as to other theory of liability and other

28  issues); Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir. 1990) (affirming

1   order for new trial on wrongful death and emotional distress claims based on erroneous

2   instructions, but ordering no retrial on § 1983 claim based on same operative facts and

3   decided by the same jury following lengthy trial); see also Eximco, Inc. v. Trane Co.,

4   737 F.2d 505, 513 (5th Cir. 1984) ("The law is settled that an error at trial relating to

5   one issue that does not affect the determination of other issues does not justify granting

6   a new trial on any issues except the tainted one."). MGA fails to cite a single case in

7   which instructional error as to one claim led the court to order a new trial on other

8   claims not directly subject to the error; indeed, the cases MGA cites involve only a

9   single claim, or expressly involve preservation of claims not subject to retrial.[1]

10       Moreover, in assessing whether an error led to an erroneous verdict, deference to

11   the jury's verdict is required. The Reexamination Clause "expresses in clear terms the

12   principle that facts once found by a jury in the context of a civil trial are not to be

13   reweighed and a new trial granted lightly." Spurlin v. Gen. Motors Corp., 528 F.2d

14   612, 620 (5th Cir. 1976); see Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369

15   U.S. 355, 358-59 (1962) ("neither [the Supreme Court] nor the Court of Appeals can

---

17   [1]  In Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992), the Ninth Circuit
18   held a jury instruction was erroneous and reversed and remanded for a new trial on
     plaintiff's false arrest claim—the only claim at issue. In Galdamez v. Potter, 415 F.3d
19   1015 (9th Cir. 2005), the Ninth Circuit ordered a new trial on a single claim due to
     instructional error and expressly did not "suggest that a new trial be held on all issues
20   raised in the previous trial." Id. at 1025 n. 8. In Heller v. EBB Auto Co., 8 F.3d 1433
     (9th Cir. 1993), the Ninth Circuit reversed as clearly erroneous judgment for defendant
21   on Title VII and corresponding state law claims, but separately ordered a new trial on
     plaintiff's wrongful termination claim due to instructional error. Murphy v. City of
22   Long Beach, 914 F.2d 183 (9th Cir. 1990), supports Mattel—there, the Ninth Circuit
     affirmed the district court's order for a new trial on plaintiffs' wrongful death and
23   emotional distress claims, but preserved plaintiffs' § 1983 claim, decided by the same
24   jury and based on the same operative facts. Pumphrey v. K.W. Thompson Tool Co., 62
     F.3d 1128, 1133 (9th Cir. 1995) involved a single claim for wrongful death, and the
25   Ninth Circuit ordered a new trial on both damages and liability in light of fraud on the
     court. Finally, Pryer v. C.O. 3 Slavic, 251 F.3d 448 (3d Cir. 2001), concerned whether
26   a new trial on damages only was appropriate, and the Third Circuit ruled it was not,
27   because liability for the single claim under § 1983 was closely intertwined with
     damages and apportionment. Id. at 454-55.

28

redetermine facts found by the jury any more than the District Court can predetermine them."). "Once judges are given the discretion to disregard jury verdicts as they see fit, the viability of the jury as an institution capable of rendering truly binding decisions is seriously imperiled." <u>Schutzky Dist., Inc. v. Kelly</u>, 643 F. Supp. 57, 59 (N.D. Cal. 1986). MGA bears the burden of showing that a ruling or verdict should be overturned. <u>Phoenix Eng'g and Supply Inc. v. Universal Elec. Co.</u>, 104 F.3d 1137, 1142(9th Cir. 1997) ("The burden of showing that prejudice has resulted [from the error] is on the party claiming injury from the erroneous rulings.") (internal quotation omitted).

Even where the Court ultimately decides that a claim must be retried, special factual findings must still be upheld. <u>Green v. Am. Tobacco Co.</u>, 325 F.2d 673, 678 (5th Cir. 1963), cert. denied, 377 U.S. 943 (1964) ("Further, while the general verdicts for the defendant are vacated, the parties are nonetheless bound by the jury's answers to the written interrogatories."). Indeed, those factual findings should be upheld even if their only materiality to a second trial would be to foreclose an argument or defense. <u>Id.</u> ("While the answer to interrogatory (4) no longer has any relevance to the question of defendant's liability, it does, in our opinion, effectively foreclose another issue which the defendant now urges . . . ."); <u>see also</u> <u>Fibermark, Inc. v. Brownville Specialty Paper Products, Inc.</u>, 419 F. Supp. 2d 225, 234 (N.D.N.Y. 2005) ("Whether and to what extent issues should be separated out should be considered in light of the legal principles that, even when general verdicts are vacated, the parties are still bound by the jury's answers to the written interrogatories and the Court may not enter a judgement [sic] that disregards any material jury finding.") (internal citation omitted); <u>Pritchard v. Liggett & Myers Tobacco Co.</u>, 370 F.2d 95, 95-96 (3rd Cir. 1966) ("Since the issue of causation was decided by the jury [by special interrogatory] in the earlier trial, the plaintiff may not be required to relitigate the same issue when the action is retried.").

MGA cites <u>Gasoline Products</u> for the proposition that an issue must be "distinct and separable" to grant a partial retrial (Mot. at 21), but that does not require the issues be *wholly* unrelated. <u>See</u> <u>Hasbrouck v. Texaco, Inc.</u>, 663 F.2d 930, 933 (9th Cir. 1981)

1   ("We find that two of the issues decided below are sufficiently 'distinct and separable'

2   from the [remanded] question that, in the interest of judicial economy, they may be

3   presently disposed of without affecting the fairness of the contemplated new trial.").

4   Indeed, even where similar evidence and factual issues are involved, retrial should not

5   be granted as to distinct and separable "legal concepts." Fibermark, 419 F. Supp. 2d at

6   235 ("Although the evidence in support of each of these issues may be similar, they

7   remain distinct legal issues. . . .  Because these are distinct issues on which the jury

8   returned separate findings, the secondary meaning issue is separable from the likelihood

9   of confusion issue for purposes of a retrial.").  In such a situation, a new trial is

10  inappropriate "because it would result in disregarding a material jury finding." Id.

11  **I.      THE JURY'S SPECIAL FINDINGS OF FACT MUST BE RESPECTED**

12          A central issue in Phase 1A was the timing of Carter Bryant's creation of Bratz.

13  After nearly six weeks of trial, the Phase 1A jury found that Bryant created 76 tangible

14  Bratz-related items between January 4, 1999 and October 19, 2000,  squarely rejecting

15  MGA's claim that this work was done in 1998.  The jury resolved that issue entirely

16  apart from any liability findings or indeed any legal issue.  The question was not

17  whether the Inventions Agreement applied, but  simply whether Carter Bryant created

18  each exhibit during the specified period of time.  This was a pure fact finding, wholly

19  unaffected by the Ninth Circuit's ruling or any other legal ruling.

20          The Court has questioned the ongoing materiality of these findings.  The short

21  answer is they are not only material but critical, both to Bratz ownership issues and to

22  Mattel's Phase 2 claims for obstruction and perjury related to MGA and Larian's false

23  claim during the Phase 1 trial that the drawings were created in 1998.  The jury's

24  temporal and authorship determinations should not be tossed aside simply because

25  *additional* questions, such as when and where during that time period he did the work,

26  and whether it was  "within the scope" of his Mattel employment, may also need to be

27  answered to resolve the ultimate ownership issue.  And significantly, no additional

28

1   findings are necessary to support the factual predicate for Mattel's claim that Isaac

2   Larian lied and obstructed justice by testifying to a false 1998 creation story.

3       **A.**    **The Special Findings Are Entitled to Deference Under the Seventh**

4       **Amendment**

5       The jury's special findings of fact are entitled to deference under the Seventh

6   Amendment.  "Courts are not free to reweigh the evidence and set aside the jury verdict

7   merely because the jury could have drawn different inferences or conclusions or

8   because judges feel that other results are more reasonable." <u>Tennant v. Peoria & Pekin</u>

9   <u>Union Ry. Co.</u>, 321 U.S. 29, 35 (1944).  "The special verdict reflects the jury's findings

10  of fact, and it would be a violation of the Seventh Amendment right to jury trial for the

11  court to disregard a jury's finding of fact." <u>Floyd v. Laws</u>, 929 F.2d 1390, 1397 (9th

12  Cir. 1991).  MGA does not allege, nor could it, that these special findings of fact are

13  inconsistent with the jury's verdicts on liability and damages; or are inconsistent with

14  the new legal principles announced by the Ninth Circuit; or are tainted by any other

15  errors the Court may have made.

16      <u>Green v. Am. Tobacco Co.</u>, 325 F.2d 673 (5th Cir. 1963) addresses precisely the

17  situation here, and makes the exact ruling Mattel suggests is appropriate.  In <u>Green</u>, the

18  jury made a general finding of liability on a claim for implied warranty, and also

19  answered four written interrogatories.  <u>Id.</u> at 675.  Because a jury instruction was

20  erroneous, the judgments on the implied warranty claim was reversed.  <u>Id.</u> at 677.

21  However, the court ruled that "***while the general verdicts for the defendant are***

22  ***vacated, the parties are nonetheless bound by the jury's answers to the written***

23  ***interrogatories.***" <u>Id.</u> at 678.  Indeed, the court held that even though "the answer to

24  interrogatory (4) no longer has any relevance to the question of defendant's liability," it

25  nonetheless ***should*** be upheld because it "effectively foreclose[d] another issue which

26  the defendant now urges." <u>Id.</u>; see also <u>Fibermark</u>, 419 F. Supp. 2d at 234 ("[E]ven

27  when general verdicts are vacated, the parties are still bound by the jury's answers to

28  the written interrogatories and the Court may not enter a judgement [sic] that disregards

1   any material jury finding.") (internal citation omitted); <u>Pritchard</u>, 370 F.2d at 95-96

2   ("Since the issue of causation was decided by the jury [by special interrogatory] in the

3   earlier trial, the plaintiff may not be required to relitigate the same issue when the

4   action is retried.").

5       The Supreme Court decisions the Court referenced at the August 26, 2010

6   hearing do not suggest a contrary conclusion.  In <u>Elliot & Co. v. Ferdinand Toeppner</u>,

7   187 U.S. 327 (1902), the Court concluded that it did *not* have authority to re-examine

8   the jury trial proceedings under the relevant bankruptcy statutes, and thus avoided "a

9   discussion of the controlling force of the 7th Amendment."  <u>Id.</u> at 333-34.  In making

10  this ruling, the Court noted that review under the bankruptcy statute "is confined to

11  questions of law, and does not contemplate a review of the facts."  <u>Id.</u> at 334.  If

12  anything, this case supports the notion that under the Seventh Amendment, a jury's

13  pure findings of fact should not be reexamined.  Similarly, <u>Gasoline Products Co. v.</u>

14  <u>Champlin Refining Co.</u>, 283 U.S. 494, 499-500 (1931), did not involve special findings

15  of fact, but expressly held that "where the requirement of a jury trial has been satisfied

16  by a verdict according to law upon one issue of fact, that requirement does *not* compel a

17  new trial of that issue even though another and separable issue must be tried again."  <u>Id.</u>

18  at 499 (emphasis added).  The <u>Gasoline Products</u> reasoning thus supports Mattel's

19  argument that the jury's special findings in this case need not be reexamined by the

20  next jury; the next jury can simply be instructed that certain factual disputes have

21  already been resolved.  That is the only way to prevent the unfair reexamination of pure

22  fact findings made by the first jury.

23      MGA scarcely addresses the special findings at all, claiming only that they were

24  "premised" upon erroneous legal instructions.  Mot. at 28.  That is incorrect.  The

25  special findings had no instructions other than the interrogatories themselves, which

26  simply posed the factual question for the jury to answer.  Although Mattel cited many

27

28

1   of the above cases holding that special findings are entitled to special deference in its

2   initial briefing on the new trial issue,[2] MGA notably fails to cite or respond to any of

3   them here.   As in <u>Green</u>, the jury's factual findings in response to the special

4   interrogatories are entitled to deference and should be upheld even if the liability

5   verdicts are vacated, and indeed, even if their relevance has been diminished, because

6   they foreclose an issue MGA even now continues to urge:  that the critical Bratz works

7   were created in 1998.

8        **B.**   **<u>The Factual Dispute Resolved by the Special Findings Remains</u>**

9             **<u>Highly Relevant to Phase 2</u>**

10       Throughout the Phase 1A trial, MGA emphatically denied the facts ultimately

11   found by the jury.  In opening statement, MGA's counsel stated, "***I will deny right now***

12   ***that Carter Bryant did the Bratz drawings while at Mattel***" (5/27/08 Trial Tr. 215:10-

13   12), and claimed Bratz was "born in August of 1998, while Carter Bryant was not an

14   employee of Mattel" (5/27/08 Trial Tr. 219:21-23).  MGA's counsel continued:

> "This case is not about anyone walking away from Carter Bryant's
> employment agreement and confidentiality agreement at Mattel.  That's
> not the issue.  The issue is whether or not Carter Bryant's idea and
> concept for the Bratz for multi-ethnic, hip-hop, urban, fashion-focused
> young characters was conceived in August or September and October of
> 1998 before he returns to Mattel."  (5/27/08 Trial Tr. 219:23-220:4.)

> "The evidence in this case and all fact witnesses that will come in here
> will testify that Carter Bryant did his drawings in 1998, while not
> employed by Mattel."  (5/27/08 Trial Tr. 221:19-21.)

> "The real issue in this case, ladies and gentlemen, these are the drawings
> that Carter did in 1998 while not employed by Mattel" (5/27/08 Trial Tr.
> 240:14-16.)

       Yet after hearing testimony from numerous witnesses over the course of many

weeks, including Mattel's handwriting expert and Carter Bryant himself, and after

examining dozens of tangible items, including the Bratz drawings and sculpt, the jury

---

[2]   <u>See</u> Dkt. No. 8628 at 5-6, 8.

1  found that for all but four items "Mattel prove[d] by a preponderance of the evidence
2  that the item was 'conceived or reduced to practice'—that is, created—by Carter
3  Bryant, alone or jointly with others, during the period in which he was employed by
4  Mattel (January 4, 1999, to October 19, 2000)."[3]   The jury also found that Mattel
5  proved by a preponderance of the evidence that Carter Bryant conceived the "Bratz"
6  characters and the name "Bratz" during this period of time.

7        The Phase 1 jury's specific findings concerning the fact and timing of Bryant's
8  creation of more than 75 specific Bratz drawing and sculpts, as well as the fact and
9  timing of Bryant's conception of the Bratz characters and the "Bratz" name, remain
10 material to this litigation and should not be reexamined.  These findings demonstrate
11 that the jury rejected MGA's false story that Bryant conceived of or reduced to practice
12 the Bratz-related items and ideas during 1998 while living in Missouri with his parents,
13 and not while employed by Mattel.

14       Even if the Phase 2 jury is asked to determine the additional question of whether
15 Bryant created these works "within the scope" of his Mattel employment, the earlier
16 findings are still relevant because, as stated in <u>Green v. Am Tobacco</u>, the findings
17 foreclose an argument MGA seeks to make – that the key Bratz drawings were done in
18 1998.  Moreover, the findings are highly relevant to Mattel's obstruction claims,
19 because the verdict establishes the falsity of MGA's 1998 trial story and rejects
20 Larian's perjurious testimony to the contrary.   And the findings will alone be
21 dispositive if the Inventions Agreement's "at any time during my employment" clause
22 is interpreted in the manner Mattel believes is correct.

23
24
25
26
27
28

---

[3]   Dkt. No. 4125 at 1-5.

## II.   THE VERDICTS ON AIDING AND ABETTING BREACH OF DUTY OF LOYALTY, AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND TORTIOUS INTERFERENCE SHOULD BE PRESERVED

### A.   Aiding and Abetting Breach of Duty of Loyalty

MGA claims that questions as to the scope of Bryant's duties to Mattel require vacating the jury's finding on this claim, but the instructions clearly set forth the duty that Bryant breached, and it had nothing to do with ownership of Bratz:

**Instruction No. 28**

As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when he entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Thus, whether Mattel owned Bratz was wholly irrelevant to the duty Bryant breached.  He entered into a contract to compete with Mattel while still working for Mattel—that finding stands unaffected by the Ninth Circuit's ruling.[4]

Recognizing this, MGA re-asserts arguments the Court rejected at summary judgment.  MGA claims that "discussions and full-scale planning of one's next job" is not a breach of the duty of loyalty (Mot. at 24), but that is precisely what Bryant and MGA argued at summary judgment.[5]  The Court rejected that argument.  See Dkt. No. 3286 (citing Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.")).  Indeed, the Court granted Mattel's motion for summary judgment on

---

[4]   Bryant's contract with MGA required Bryant to "provide his services on a 'top priority' basis as his services pertain to other clients of Bryant."  See TX 15 at 1.
[5]   See Bryant's Opposition to Mattel's Motion for Partial Summary Judgment, dated March 24, 2008, at 24-27; MGA's Opposition to Mattel's Motion for Partial Summary Judgment, dated March 24, 2008, at 15-16 ("By meeting, negotiating, and signing a contract, Bryant and the MGA Parties did not violate any duty to mattel as a matter of law.").

1  breach of the duty of loyalty *before* any findings were made about who owned Bratz.

2  None of this was addressed by the Ninth Circuit, and the jury instructions make clear

3  that the verdicts turn on MGA's and Larian's knowledge and encouragement of

4  Bryant's breach of his duty of loyalty to Mattel.  See Jury Instruction Nos. 25, 27, 28.

5        When MGA previously sought reconsideration of the Court's summary judgment

6  Order it was reprimanded for "mounting an overly broad -- and baseless -- attack on the

7  integrity of the Court's deliberative process on a grand scale" among other errors.[6]  The

8  Court's prior rulings are the law of the case and remain binding.  See Lucas Auto.

9  Eng'g, Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001) ("Under

10  the law-of-the-case doctrine, a court will not reexamine an issue previously decided by

11  the same or higher court in the same case.") (citing Rebel Oil Co., Inc. v. Atlantic

12  Richfield Co., 146 F.3d 1088, 1093 (9th Cir. 1998)).[7]

13

14        [6]  Order re Motion for Reconsideration; Order re the Parties' Motions for Partial
    Summary Judgment, May 21, 2008 (Dkt. No. 3758), at 6.  See also MGA Parties'
15  Reply Mem. of Law In Further Support of Carter Bryant's Motion for Reconsideration,
    May 16, 2008 (Dkt. No. 3687), at 1 ("The MGA Parties also join and incorporate herein
16  by reference all the other grounds set forth in Bryant's submissions on the Motion and
    requiring reconsideration and amendment of the Court's April 25, 2008 Order.").

17        [7]  The law of the case doctrine is subject to three exceptions, but none apply here.
    First, MGA cannot demonstrate the summary judgment rulings are "clearly erroneous
18  and [their] enforcement would work a manifest injustice."  Id.  Review under the
    clearly erroneous standard is "significantly deferential, requiring a definite and firm
19  conviction that a mistake has been committed."  Concrete Pipe & Prods. of Cal., Inc. v.
    Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 623 (1993).  "So long as the
20  district court's view of the evidence is plausible in light of the record viewed in its
    entirety, it cannot be clearly erroneous, even if the reviewing court would have weighed
21  the evidence differently had it sat as the trier of fact."  Minidoka Irrigation Dist., 406
    F.3d at 572 (quoting SEC v. Rubera, 350 F.3d 1084, 1093-94 (9th Cir. 2003)).  The
22  Ninth Circuit holds that if "there are two permissible views of the evidence, the [district
    court's] choice between them cannot be clearly erroneous.  Id.  MGA has failed to meet
23  its burden, as it did when it previously sought reconsideration of the April 25, 2008
    Order.  Second, there is no "intervening controlling authority" that would make
24  reconsideration appropriate.  Id. at 573.  The Ninth Circuit opinion addresses the
    summary judgment ruling regarding the Inventions Agreement, and not the rulings
25  regarding Bryant's fiduciary duty and duty of loyalty.  Finally, there is no "substantially
    different evidence adduced at a subsequent trial" that would allow the Court to depart
26  from the binding summary judgment rulings already issued in this case.  Id.  Because
    MGA cannot prove any of the exceptions to the law of the case doctrine apply, the
27  Court should affirm the prior summary judgment rulings on Bryant's fiduciary duty and
    duty of loyalty to Mattel.

28

00505.07975/3660432.1

MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR NEW TRIAL

1   MGA can point to no error in the actual instructions given to the jury, and

2   reconsideration of the prior rulings—based on no new facts or new law—is improper.

3   **B.   Aiding and Abetting Breach of Fiduciary Duty.**

4   MGA contends Mattel's aiding and abetting breach of fiduciary duty claim

5   "incorporates by reference" the ownership issue.   Mot. at 24.   That is false.

6   Significantly,  MGA does not quote the actual instruction on breach of fiduciary duty,

7   which makes no reference to ownership.  See Jury Instruction No. 26.  In fact, Jury

8   Instruction No. 26 expressly defines the fiduciary duties without regard to ownership:

9   > Once a party assumes a fiduciary duty to another, that party is obligated to
10  > act on behalf of the other party, to hold the interest of the other paramount
    > over his own interests, and to take no action that would further his
    > interests over the other person's interest.

11  It was on just that basis that the jury was instructed to, and did, find breach—

12  Bryant put his own interests and MGA's interests ahead of Mattel's, and took actions to

13  further those interests to the detriment of Mattel. Ownership of any specific property is

14  simply immaterial; there is no "ownership" requirement in the jury instructions.

15  Indeed, as discussed below, ample evidence wholly unrelated to ownership of Bratz

16  supported Mattel's claim for breach of fiduciary duty.

17  Again recognizing that the text of the instructions supports the verdict, MGA

18  attempts to re-litigate the Court's summary judgment ruling that Bryant owed a

19  fiduciary duty to Mattel.  Mot. at 25.  Although its motion does not expressly seek to

20  overrule that finding (nor could it consistent with the rules for reconsideration and law

21  of the case), MGA trots out the very same cases it did in 2008, claiming that "any

22  employee is only a fiduciary as a matter of law if the employee is an officer who

23  participates in the company's management." Id.[8] As with the duty of loyalty, the time

24

25

26  _____
    [8]  See Bryant's Opposition to Mattel's Motion for Partial Summary Judgment, dated
27  March 24, 2008, at 18-19 ("the employee must be an officer of the company, must
    participate in the management of the company, and must have discretionary authority in
28  his managerial capacity").

for MGA to seek reconsideration long ago lapsed, and MGA fails to set forth any grounds on which the Court could grant such a motion in any event.

### C.     Intentional Interference with Contract

MGA does not point to a single error in the relevant jury instructions for Mattel's intentional interference with contract claim—Jury Instruction Nos. 22, 23, and 24. See Mot. at 23 (noting that Nos. 22, 23, and 24 are the relevant instructions for this claim and assigning no error to these instructions).   Instead, MGA claims that these instructions "incorporate by reference" the erroneous Instruction No. 21. Id. But that is simply wrong.  These instructions say nothing about Instruction No. 21.

To the contrary, the instructions provide bases for liability on the intentional interference claim that are entirely separate from ownership of Bratz.  As set forth in Jury Instruction No. 22, the jury was instructed that Mattel was required to prove:  (1) the existence of a contract between Mattel and Bryant, (2) that MGA and/or Larian knew of the contract, (3) that MGA and/or Larian intended to disrupt the performance of the contract, (4) that the conduct of MGA and/or Larian prevented performance or made performance more difficult, and (5) that Mattel was harmed in some way.[9]  Jury Instruction No. 23 provides:  "***As a matter of law, Mr. Bryant directly competed with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a competing product while he was still employed by Mattel.***  Whether the remaining requirements of Mattel's claim for intentional interference with contractual relations have been satisfied or not is for you to decide." Jury Instruction No. 23 at 26.[10]

The evidence showed that MGA and Larian intended to disrupt Bryant's performance of the Inventions Agreement, including the requirement that he not assist competitors while employed by Mattel, and their conduct prevented performance or made performance more difficult, setting aside the issue of ownership.  After the initial

---

[9]  Final Jury Instructions as Given, July 10, 2008 (Dkt. No. 4115), at 30.
[10]  Dkt. No. 4115.

1  Bratz pitch, MGA paid Bryant for his Bratz expenses and related charges while he was

2  still a Mattel employee.[11]  MGA also paid Bryant to work on an ostensibly separate

3  project known as "Prayer Angels."[12]  Well before Bryant left Mattel, MGA and Larian

4  encouraged Bryant to use Mattel's resources to develop Bratz.  And MGA entered into

5  a contract with Bryant the required him to perform work for MGA on a "top priority"

6  basis while still employed by Mattel, and assigned to MGA ownership rights in pre-

7  existing inventions without any disclosure to Mattel.[13]  There is no reason to retry these

8  claims because both the jury instructions and the facts demonstrate the verdicts

9  rendered neither depended upon nor are tainted by the Court's conclusion that the

10  Inventions Agreement conferred ownership of Bratz to Mattel if the work was done

11  during the period of his employment.  His entering into the contract with a competitor

12  – not theft of Bratz – is the unchallenged legal predicate for the jury verdict, and under

13  the Seventh Amendment, that verdict should not be reexamined by a second jury.

14  **D.  <u>Ample Evidence Unrelated to Ownership Supports the Verdicts</u>**

15  The jury's verdicts on these state law claims are supported by ample evidence

16  independent of any issue of ownership of Bratz, and therefore should not be invalidated.

17  Mattel's evidence included proof that Bryant undertook a fiduciary duty in the

18  Inventions Agreement;[14] breached his duties to Mattel when he entered into an

19  agreement assigning his loyalty to MGA[15] and used Mattel employees and resources for

20  MGA's advantage.[16]  Mattel proved that MGA knew of the duties through many sources,

21  including, (1) it was industry practice for employees to sign inventions and

22  confidentiality agreements;[17] (2) MGA's own employment contracts contained such

23

24  [11]  TX 15.
   [12]  Trial Tr. at 786:20-788:11.

25  [13]  TX 15
   [14]  <u>See</u> TX 25.

26  [15]  TX 15.
   [16]  Trial Tr. 2495:16-24; Trial Tr. at 2496:19-2497:5; Trial Tr. at 2502:9-14.

27  [17]  See, e.g., Trial Tr. at 296:25-298:25; Trial Tr. at 541:2-544:13.

28

provisions;[18] (3) MGA executive Paula Garcia herself had previously signed an Inventions Agreement with Mattel and knew that all Mattel employees were required to sign such agreements;[19] (4) Bryant sent a fax to MGA's attorney informing MGA that he had an "agreement of confidentiality" with Mattel;[20] and (5) Bryant sent his Mattel offer letter, which explicitly stated that the Mattel job was contingent upon his signing a Confidential Information and Inventions Agreement, to MGA's attorney.[21]   In the month of September 2000 alone, Bryant had more than a dozen phone calls to MGA from his Mattel extension.[22]   Mattel also showed that MGA substantially assisted Bryant's breaches, including through its extensive efforts to keep secret Bryant's dual employment;[23] by paying him for his disloyal activities while still employed by Mattel;[24] and that MGA benefitted from this wrongdoing in part by turning Bratz into a marketable product more speedily than it otherwise would have.[25]

Indeed, the evidence at trial established that Bryant was working for MGA for *months* while still employed by Mattel—assisting a competitor and thus breaching his duties regardless of who owned Bratz.  For example, Anna Rhee testified that she painted Bratz heads under the name "Angel" in June 2000.[26]  Nana Ashong, another former MGA employee, confirmed that "Angel" was indeed a name used for Bratz at MGA in 2000.[27]  Another former MGA employee, Jennifer Maurus, testified that she participated in a Bratz pitch at MGA in June or July 2000 with Paula Garcia and Carter

---

[18]   See Trial Tr. at 545:9-546:4; Trial Tr. at 1024:11-1026:2; Trial Tr. at 1624:15-1626:14; see also TX 1117; TX 13532; TX 13620.
[19]   See Trial Tr. at 541:2-544:13; see also TX 1116.
[20]   See TX 2201
[21]   Id.
[22]   See TX 472.
[23]   See, e.g.,  Trial Tr. at 541:2-544:13, Trial Tr. at 545:9-546:4; Trial Tr. at 1024:11-1026:2; Trial Tr. at 1624:15-1626:14; see also TX 1117; TX 13532; TX 13620; TX 1116.
[24]   See, e.g., TX 593.
[25]   See Trial Tr. 2769:10-24, 3048:10-22, 2501:13-2504:8.
[26]   Trial Tr. at 1188:21-1194:1
[27]   Trial Tr. at 1088:1-10.

1  Bryant, at which point Paula Garcia, MGA's project manager for Bratz, had already

2  met with Bryant previously.[28]  Ms. Maurus also testified that as of that meeting in June

3  or July 2000, Isaac Larian had already seen and approved of Mr. Bryant's drawings.[29]

4        Moreover, Bryant's breaches are not limited to assigning rights to MGA that

5  Mattel owns under the Inventions Agreement.  Bryant breached his contractual duties

6  by not disclosing, and failing to obtain written consent to, "engage in any employment

7  or business other than for the Company, or invest or assist (in any manner) any business

8  competitive with the business or future plans of the Company."[30]  Bryant also violated

9  the Conflict of Interest Questionnaire by failing to disclose to Mattel that he was

10  working for, and was accepting money from, a Mattel competitor.[31]  Indeed, MGA

11  asked Bryant to work *16 hours a day* on Bratz while he was still with Mattel.[32]  He used

12  Mattel's resources, his Mattel contacts, and Mattel's vendors to design and develop

13  Bratz; he used his training, experience and salary at Mattel to develop Bratz; and he

14  used Mattel's equipment to communicate with MGA, and to negotiate the terms of his

15  contract with MGA.  Rather than devote his time and talents to his employer, Bryant

16  plotted against Mattel, exploited the resources available to him, accepted secret

17  payments, pitched creations to MGA, secretly paid Mattel employees to work on Bratz,

18  entered into a secret contract to work for MGA, and then took affirmative steps to

19  conceal it.  This conduct is a classic breach of fiduciary duty and duty of loyalty.

20        The same is true of evidence presented to the jury supporting its damages awards

21  for these claims, independent of the issue of ownership of Bratz.  These damages do not

22  depend on Mattel's ownership of Bratz:  It is undisputed that MGA never would have

23  obtained or exploited Bratz, or received its ill-gotten gains from Bratz, had Bryant

---

[28]   Trial Tr. at 1026:19-1030:23.
[29]   Id. at 1030:18-23.
[30]   TX 25 (Inventions Agreement).
[31]   TX 26 (Conflict of Interest Questionnaire).
[32]   TX 16789 (October 5, 200 email from I. Larian to P. Garcia and V. O'Connor, stating Bryant should put "16 hours a day starting now on this and nothing else").

MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR NEW TRIAL

1  complied with his duties to Mattel.  Bryant could not have pitched his designs to

2  Mattel's competitor whether or not he had assigned them to Mattel; his duties and

3  obligations to Mattel, as an employee and a fiduciary, prohibited exactly that type of

4  competitive behavior and that type of conflict of interest.  See, e.g., Iconix, Inc. v.

5  Tokuda, 457 F. Supp. 2d 969, 982-987 (N.D. Cal. 2006) (employee breached fiduciary

6  duty to employer by violating the corporate opportunity doctrine where employee

7  developed and exploited for his own benefit an idea "reasonably incident to the

8  corporation's present or prospective business" and concerning a business endeavor in

9  which the employer "had the capacity to engage"); Daniel Orifice Fitting Co. v. Whalen,

10  198 Cal. App. 2d 791, 796-799 (1962) (fiduciary of company who was "employed to

11  design improvements to the product of his employer . . . may not use the results of [his]

12  work for his own use and benefit, and particularly not to the detriment of his employer").

13  MGA paid Bryant for his Bratz expenses and related items, had Bryant sign an

14  agreement in conflict with the Inventions Agreement and Conflict of Interest Policies

15  with Mattel,[33] and aided efforts to cover up Bryant's involvement with Bratz during his

16  tenure at Mattel.[34]  A defendant who reaps the benefit of participating in a breach of

17  fiduciary duty cannot disclaim the burden of liability.  See Neilson v. Union Bank of

18  Calif., 290 F. Supp. 2d 1101, 1127-28 (C.D. Cal. 2003).  MGA was unjustly enriched by

19

20  [33]  TX 15 (Bryant's agreement with MGA).
   [34]  For example, Larian instructed Victoria O'Connor to redact the Mattel fax
21  header and date sent from Bryant's MGA contract before forwarding it to MGA's
   attorney.  See Trial Tr. 1326:13-1330:12; TX 13383.  Paula Garcia told MGA
22  employee achel Harris in October 2000 that they were to conceal Bryant's attendance at
   a  Bryant/MGA meeting because he was still employed by Mattel.  See Trial Tr.
23  2375:22-25, 2377:7-24.  Larian told MGA employees not to mention Bryant's
   involvement "outside of MGA" (Trial Tr. 2382:13-2383:9), and that, if asked, he
24  planned to falsely say either that he came up with Bratz or that the inspiration came
   from his daughter.  See Trial Tr. 2388:15-2389:6.  Larian also instructed MGA
25  employees in an email that "[t]here must be no mention" of Bryant outside MGA (TX
   4507-0001), and MGA employee Dee Dee Valencia wrote to Larian, without
26  contradiction by him, that "I know we want to keep Carter under wraps." TX 4942-
   0001.  An internal list of MGA personnel who came from Mattel listed Bryant's dates
27  at MGA as "????-PRESENT" and his Mattel dates as "DON'T ASK." TX 1932, at
   MGA 1134726-20.

28

1   its wrongdoing independent of whether Mattel owns Bratz or not.  The jury's verdicts to

2   that effect are fully supported.

3         The Court previously rejected MGA's arguments that the jury's damages awards

4   on these claims "duplicated" damages awarded under a theory turning on Bratz

5   ownership.  After trial, MGA moved for a remittitur of the damages verdicts, urging that

6   they duplicated copyright damages and one another.[35]  Mattel explained the lack of

7   duplication and the different theories on which it proceeded at trial.[36]  Applying <u>Rule</u> 59

8   standards, the Court rejected MGA's assertions, and held the jury's damages awards on

9   the tort claims were independent and non-duplicative of copyright damages and one

10  another.[37]  The Court explained it may "undertake only limited review of jury damages

11  awards, in order to avoid encroaching upon the jury's proper function under the

12  Constitution."[38]  It is a "'rare case in which it is sufficiently certain that the jury award

13  was not based on proper consideration of the evidence' but was instead 'based on

14  improperly considered evidence, directly traceable to an error that was cured too little,

15  too late.'"[39]  These principles control.  "Ninth Circuit law provides for 'substantial

16  deference' to a jury's findings as to the appropriate amount of damages.  A jury's award

17  of damages should not be disturbed unless it is clearly unsupported by the evidence."

18  <u>Passantino v. Johnson & Johnson Consumer Prods., Inc.</u>, 212 F.3d 493, 511 n.16 (9th

19  Cir. 2000) (internal citations omitted).[40]  Moreover, "an error at trial relating to one issue

---

[35]   MGA's Notice of Motion and Motion for Remittitur, Dkt. No. 4523.
[36]   Mattel's Opposition to MGA's Motion for Remittitur, Dkt. No. 4684.
[37]   Dkt. 5273 at 7-9.
[38]   <u>Id.</u> (quoting <u>Los Angeles Memorial Coliseum Com'n v. Nat'l Football League</u>, 791 F.2d 1356, 1365 (9th Cir. 1986)).
[39]   <u>Id.</u> (quoting <u>In re First Alliance Mortg. Co.</u>, 471 F.3d 977, 1001 (9th Cir. 2006)).
[40]   <u>See also</u> Lieberman v. Dudley, 1998 WL 740827, at *3 (D. Conn. 1998) (court may overturn the verdicts only if it would have been "impossible for the jury to have awarded separate and distinct damages," and should not do so where it is "not impossible" that the jury found unduplicated damages) (emphasis added); see Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1079 (10th Cir. 2008) ("[E]ven where the chance is slight that the jury arrived at the award without erroneously duplicating, if the verdict is 'within range of the evidence,' it will be upheld.") (citing United Phosphorus Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, (footnote continued)

1   that does not affect the determination of other issues does not justify granting a new trial

2   on any issue except the tainted one." <u>Eximco, Inc. v. Trane Co.</u>, 737 F.2d 505, 513 (5th

3   Cir. 1984); <u>see</u> <u>Bains LLC v. Arco Prods. Co.</u>, 405 F.3d 764, 771 (9th Cir. 2005) (court

4   is "obligated to ask 'not whether the verdict necessarily makes sense under any reading,

5   but whether it can be read in light of the evidence to make sense.'").

6   **III.**   **MGA WAIVED ANY ARGUMENT REGARDING THE FOUR**

7   **EXHIBITS ON WHICH THE JURY REACHED NO VERDICT**

8   MGA asserts the absence of a unanimous verdict on four items—black and white

9   drawings on lined notebook paper that do not include the word "Bratz" or the

10   characters' names[41]—provides independent grounds for a new trial.  Mot. at 29-30.

11   MGA has never previously raised such an objection and has long since waived it.  <u>See</u>

12   Fed. R. Civ. P. 48 (allowing parties to stipulate verdict need not be unanimous); <u>Zhang</u>

13   <u>v. American Gem Seafoods, Inc.</u>, 339 F.3d 1020, 1028-29 (9th Cir. 2003) (failure to

14   raise issue "prior to the return of the verdict results in a complete waiver, precluding [ ]

15   consideration of the merits").  This was not a passive waiver:  MGA took precisely the

16   opposite position at trial than what it is asserting here, specifically telling the Court that

17   an absence of agreement as to those four items would not constitute a hung jury:

18   THE COURT:  Good morning, Counsel.  The Court has received the
     following note:  "Just for clarification, if we agreed on all sections of the
19   jury verdict except for four drawings, does that constitute a hung jury?" . .
     . That is the question.

20   MR. NOLAN:  **On behalf of MGA, we would say no**.

21   ***

22   THE COURT:  So you're asking the Court, then, to ask the jury to return
23   that verdict?

24   MR. NOLAN:  **Yes, your Honor**.[42]

25   _____

26   1228 (10th Cir. 2000)); Indu Craft, 47 F.3d at 497 (addressing duplicative damages
     claim:  "A court's role is to reconcile and preserve whenever possible a seemingly
     inconsistent jury verdict.").
27   [41]   TX5-39, TX 5-40, TX 751-2, and TX 5-42.
     [42]   7/17/08 Trial Tr. 5064:13-25.
28

Following a recess, the Court received another note from the jury that clarified the drawings at issue were among those listed in Section No. 1 of the verdict form. MGA again affirmed that a non-response for the four drawings would not constitute a hung jury:

> THE COURT:  We're back on the record.  The Court has received another note.  We're outside the presence of the jury.  The note reads as follows:  "The jury has reached a unanimous verdict on items 2 through 15.  Under item No. 1, we agree unanimously on all but four of the items listed.  I believe this will not change.  How should we proceed?"
>
> THE COURT:  It's signed by the foreperson of the jury.
>
> MR. NOLAN:  *Your Honor, it doesn't change MGA's position, your Honor.*
>
> THE COURT:  So you believe that I should take the verdict?
>
> MR. NOLAN:  *Yes.*[43]

Contrary to MGA's claim that the Court "failed to grapple" with this issue (Mot. at 29), the Court determined the significance of the issue and set forth in detail the potential consequences of accepting the verdict without answers as to the four drawings.  MGA again affirmed that a non-response for the four drawings would not constitute a hung jury:

> MR. NOLAN:  Well, your Honor, I think my reaction to that would be --
>
> THE COURT:  I understand your position, that there may not be.  We don't know what the jury verdict is, and I'm not suggesting that to the contrary, but I guess – my concern is this:  *I don't want there to be a complication once we see this verdict, and we're not going to be able to undo anything and say oh, my gosh, those four, well, now we've got a problem with the copyright claim.  And that's my concern.*  I really haven't given enough thought to this to know how who this helps or doesn't help.  But once we see this, we can't unsee it.  We can't undo it.  And that's my concern.  And I'm just trying to think is there some way that I can impress upon them that, you know, we may really regret not having a decision.  This jury may regret not having a decision on these four issues going forward.  Because once we've resolved this, they can't go back, then, and decide these four issues.
>
> MR. NOLAN:  Correct.

---

[43]  <u>Id.</u> at 5066:23-5067:10.  Indeed it was counsel for Mattel and not MGA who suggested the Court provide a supplemental instruction to the jury to encourage them to attempt to reach a unanimous verdict.  <u>Id.</u> at 5067:11-5068:8.

1    THE COURT:  These four items.

2    MR. NOLAN:  Your Honor, I suppose, then, Mr. Price's suggestion about
     coming back with a note asking them to decide whether or not they could

3    come to a unanimous decision.  ***It doesn't change the answer with respect
     to a hung jury***, but I'm concerned about suggesting to the jury one way or

4    the other about a second phase.

5    THE COURT:  All right.  Fair enough.[44]

6    The parties and the Court then crafted a mutually agreeable supplemental jury

7    instruction that was provided to the jury.[45]  The Court received two more notes from the

8    jury in response, determined the deadlock was due to a single juror and that no

9    agreement would be reached, and thus proceeded to call for the verdict as "both sides

10   have previously requested."[46]   The Court again solicited and received MGA's

11   unequivocal consent.[47]  After the verdict was read, MGA declined the Court's offer to

12   poll the jury.[48]  In light of this record, MGA's claim that it only "tentatively agreed that

13   the jury had not been hung" (Mot. at 30) is demonstrably false.

14   Having accepted a non-unanimous jury verdict as to the four drawings, MGA's

15   years-belated "hung jury" claim and attempt to blame the Court for MGA's strategic

16   and binding decisions should be rejected.[49]  Any such argument has been waived.  Nor

17   does MGA demonstrate the absence of a unanimous response for the four special

18   findings of fact was material or that the Court abused its discretion.  See California v.

19   Altus Finance S.A., 540 F.3d 992, 1005 (9th Cir. 2008) ("[F]ailure to agree on the

20   unanswered interrogatory did not vitiate the otherwise unanimous verdict effectively

21   _____

22   [44]   Id. at 5068:13-5069:15.
     [45]   Id. at 5069:21-5072:25; Dkt. No. 4124.

23   [46]   Trial Tr. at 5074:23-5076:18.
     [47]   Id. at 5076:8-18.

24   [48]   Id. at 5087:15-17.
     [49]   MGA's reliance on California v. Altus Fin. S.A., 540 F.3d 992 (9th Cir. 2008)

25   and Union Pac. R.R. Co. v. Bridal Veil Lumber Co., 219 F.2d 825 (9th Cir. 1955) is
     misplaced. In Altus, the Court attempted to unilaterally reconcile jury verdicts whereas

26   here the parties expressly requested the Court accept the verdict even though the jury
     could not reach agreement on a small number of items.   540 F.3d at 1004-08.

27   Similarly, unlike Union Pac. R.R. Co., there was no contested gap in the verdict form
     and the Court "tr[ied] to get the jurors to agree on an answer." 219 F.2d at 831.

28

disposing of the issues submitted.") (citation omitted).  The Court had broad discretion to "enter judgment consistent with the answered verdict forms, to resubmit an unanswered verdict form to the same jury or to order a new trial with respect to the unresolved issues." Id.  Here, the remaining answered verdict forms "dispose[d] of all the issues submitted to the jury", setting aside MGA's unequivocal agreement. Id.  The obvious conclusion to be drawn from the jury's silence is that these four early drawings were not Bratz.  In any event, whatever the jury believed about those four drawings has nothing to do with the jury's remaining special findings of fact as to the other 76 items.

## IV.   THIS COURT REPEATEDLY REJECTED MGA'S JUROR BIAS ARGUMENTS AND REQUEST FOR JUROR TRANSCRIPTS

For the *fifth* time in this case, MGA demands a new trial based on statements made by Juror No. 8 during Phase 1A.  Repeated rulings by this Court—which are law of the case and for which MGA provides no basis for reconsideration—have firmly established that Juror No. 8's bias does not warrant a new trial.

MGA moved for a mistrial on this exact issue in August 2008.  Prior to reaching a decision on the mistrial, Judge Larson engaged in a lengthy process of interviewing jurors – a process which cannot now be replicated, and which gives the Court's findings great weight.  After these interviews, the Court found that "the jury foreperson and other jurors immediately admonished Juror No. 8 that there was no room in the deliberation process for such remarks; that the remarks were made toward the end of the deliberation process while the jury was attempting to reach a unanimous verdict on four specific drawings that were the subject of dispute among the jurors; that the remarks did not influence the jury's verdict in Phase 1(a); that some jurors believed that Juror No. 8 should be removed from the jury; and that all jurors indicated that the remarks would have no effect on any deliberations or decision to be made in Phase

1  1(b)."[50]  "After a careful and deliberate consideration of the circumstances present, the

2  Court [found] that a mistrial [was] not required."[51]

3          MGA offers no new evidence to support reexamination of those findings, and its

4  repeated requests to unseal the juror transcripts – which it agreed to seal in the first

5  instance – have been repeatedly rejected and should be again.[52]  The Court found

6  MGA's motion to unseal the transcripts untimely over a year ago; it is hardly timely

7  now.  MGA again makes no attempt to meet the standards for reconsideration of this

8  prior ruling, and its "renewed" motion to unseal the transcripts should be denied.

9          Although the Ninth Circuit ultimately did not reach the bias and transcript

10  sealing issues in MGA's substantive appeal, this Court has repeatedly issued rulings

11  rejecting MGA's arguments.  Under the doctrine of the law of the case, neither issue

---

[50]  See August 8, 2008 Order denying motion for mistrial (Dkt. No. 4238).

[51]  Dkt. No. 4238 at 3.  MGA petitioned for writ of mandamus from the Ninth Circuit seeking to overturn the Court's ruling, and was denied.  See August 12, 2008 Order denying emergency motion to suspend trial (Docket No. 4247).  In December 2008, MGA moved for a stay of the injunction, again raising the juror bias issue, and it was denied by the Court.  See December 30, 2008 Order denying ex parte application and motion for stay pending appeal at 3 (Dkt. No. 4567).  Unimpeded by these multiple rulings, MGA moved once again for a stay in May 2009 based in part on the juror bias issue, and both this Court and the Ninth Circuit rejected MGA's argument.  See June 10, 2009 Order denying motion for stay pending appeal (Docket No. 4247).  MGA then raised the juror bias issue in its substantive appeal, and the Ninth Circuit declined to reach the issue.  See Mattel Inc. v. MGA Entertainment Inc. et al., No. 09-55673, 2010 WL 2853761, *11 (9th Cir. July 22, 2010).

[52]  See July 9, 2009 Order (Docket No. 5934) at 3 (declining to grant MGA access to the transcripts because the request was untimely given that ten months had passed between the date of the Order Denying Motion for Mistrial and the MGA parties' first request for access to the transcripts).  Even if MGA had timely challenged the decision to seal the transcripts and sought their release, the Court was justified in keeping them sealed.  "The district court has broad discretion in managing juror misconduct allegations."  United States v. Wintermute, 443 F.3d 993, 1002 (8th Cir. 2006); see also United States v. Wright, 506 F.3d 1293, 1303 (10th Cir. 2007) (no abuse of discretion where judge denied defendant's request to interview juror, conducted own in camera interview, and found no misconduct).  The Court's decision to retain materials under seal and in camera is made it its sound discretion.  See United States v. Shryock, 342 F. 3d 948, 983 (9th Cir. 2003).  The Court's decision to keep the jury interviews confidential and outside the presence of counsel so that the jurors could "bare it all out" was a discretionary one.  See July 25, 2008 Phase I Trial Tr. at 13:20-21.  The Court and the parties knew the jurors understood their interviews with the Court would be confidential, and this confidentiality allowed them to openly air their concerns.  Indeed, having expressly agreed to that approach at the time (see id., 13:9-19), MGA should not be permitted to attempt to unseal the transcripts now.

1    should be revisited. "The 'law of the case' rule ordinarily precludes a court from re-

2    examining an issue previously decided by the same court, or a higher appellate court, in

3    the same case." <u>Moore v. Jas. H. Matthews & Co.</u>, 682 F.2d 830, 833-34 (9th Cir.

4    1982). Once decided, a ruling on a factual or legal issue must be followed in

5    subsequent proceedings in the same action unless (1) the evidence is substantially

6    different, (2) there has been an intervening change in controlling authority, or (3) the

7    decision was clearly erroneous *and* would work a manifest injustice. <u>Leslie Salt Co. v.</u>

8    <u>United States</u>, 55 F.3d 1388, 1393 (9th Cir. 1995). MGA does not even attempt to

9    argue that any of these three conditions have been met. Instead, it simply cut-and-

10   pasted its repeatedly rejected arguments, which should be rejected now for the same

11   reasons they were rejected before.[53]

12   **V.    MGA'S "NEW" EVIDENCE IS OLD AND IRRELEVANT**

13       A party seeking a new trial based on a claim of newly discovered evidence must

14   demonstrate "(1) the evidence was discovered after trial, (2) the exercise of due

15   diligence would not have resulted in the evidence being discovered at an earlier stage

16   and (3) the newly discovered evidence is of such magnitude that production of it earlier

17   would likely have changed the outcome of the case." <u>Far Out Prods., Inc. v. Oskar</u> 247

18   F.3d 986, 992-93 (9th Cir. 2001) (citation omitted). MGA's argument that the

19   purported "new" evidence here meets those standards is flatly inconsistent with the

20   Phase 1 record.

21       **A.    The "Bratz Brief" Is Not New, Nor Material to Phase 1**

22       Inexplicably, MGA begins its discussion on "newly discovered evidence" by

23   declaring: "***On January 14, 2008***, Mattel produced" the so-called Bratz Brief. Mot. at

24   _____

25   [53]    In addition to this Court's orders, Mattel's prior briefing set forth the many reasons a mistrial was properly denied. <u>See</u> Mattel's Opposition to Defendants' Motion for Mistrial, dated July 31, 2008 (Dkt. No. 4176); Mattel's Opposition to Appellants'

26   Emergency Motion for Stay Pending Appeal, filed December 26, 2008 at 49-55 (9th Cir. Case No. 08-57015, Dkt No. 15); Mattel's Combined Answering Brief on Appeal

27   and Opening Brief on Cross-Appeal, filed August 10, 2009 at 65-73 (9th Cir. Case No. 08-55673, Dkt No. 93).

28

16.  Obviously, this evidence cannot meet the standard for a retrial based on "new" evidence, because it is not new evidence at all; it was produced months before the Phase 1 trial began.

Equally important, as a substantive matter, these documents were simply not relevant to the core issue Phase 1—who owned Bratz.  Thus, there is nothing that "necessitates" a new trial.  Mot. at 33.  According to MGA, the Bratz Brief and two documents produced in Phase 2 discovery were "key pieces" of Phase 1 evidence because they "demonstrate the failure of Mattel's Barbie brand products[.]" Mot. at 33.  But that topic was expressly excluded from Phase 1—and, indeed, when MGA tried to admit evidence regarding Barbie's "failure" or Mattel's "motive" in bringing suit, Judge Larson reiterated that such information was not relevant:  "I don't think -- and I've said this numerous times.  ***I don't believe Barbie is relevant to this [Phase] at all. . . . You have the Court's initial ruling about motive and the Court's initial ruling about Barbie being irrelevant***."[54]  In light of the actual trial record and the Court's rulings, MGA's argument that these "newly discovered" documents were so critical to Phase 1 that they mandate new trial is ridiculous.

Likewise, MGA's claims of discovery misconduct are meritless.  First, to suggest that the "Bratz Brief" is newly discovered evidence is absurd.  MGA falsely suggests that the brief was produced "on January 14, 2008" just weeks before the Phase 1 discovery cut-off, whereupon MGA "spent the rest of Phase 1 discovery" desperately

---

[54]  Trial Tr. at 350:22-351:5 (May 28, 2008); see generally July 2, 2007 Minute Order (Dkt. No. 608) at 2 (ordering bifurcated trial structure).  Under the Court's phasing order, Phase 1a concerned only the timing of when certain Bratz works and concepts were created by Bryant, while Phase 1b concerned whether MGA's Bratz dolls infringed the Bratz works owned by Mattel as a result of Phase 1a and to what damages Mattel was entitled based on a disgorgement theory.  For this reason, Mattel brought a motions *in limine* to exclude evidence related to Mattel's finances or Barbie's success, as well as other Phase 2 evidence.  See Mattel's Motion *in Limine* No. 9 to Exclude Argument, Evidence or Expert Testimony Regarding Barbie and Other Mattel Dolls, dated April 14, 2008 (Dkt. No. 3083).  The Court ordered that such evidence would only be admitted after a daubert-hearing.  See Final Pre-Trial Conference Order for Phase 1 Trial, dated June 7, 2008 (Dkt. No. 3950) at 15.  In response, MGA never proffered such evidence.

1  "trying to ascertain" more information about the document.  Mot. at 16-17.  What MGA

2  fails to apprise the Court, however, is that the "Bratz Brief" was produced ***nearly a year***

3  ***earlier on May 30, 2007***.[55]  MGA was not denied an opportunity to inquire into or rely

4  on this document—indeed, it affirmatively did so on numerous occasions without any

5  complaint.  For example, MGA's brand expert, Dr. Erich Joachimsthaler, expressly

6  quoted from and cited to the contents of the "Bratz Brief" no less than 15 times in his

7  expert report.[56]  Subsequently, just prior to the Phase 1 trial Mattel sought to exclude

8  this document and others purportedly related to Mattel's "motive" in bring its claims—

9  which was plainly not relevant to the creation and ownership of Bratz—by *motion in*

10  *limine*.[57]  Judge Larson denied, in part, Mattel's motion on a categorical basis and held

11  in abeyance any decision on the admissibility of any particular document, including the

12  Bratz Brief,[58] yet even if the document were relevant (and it is not), *MGA never even*

13  *sought to admit it at the Phase 1 trial*.

14      MGA's claims about the "What Happened to Barbie" email and a Board

15  memorandum[59] are likewise misplaced.  As already explained many months ago in

16  detail to Judge Smith, the email was produced promptly after it was located, reviewed

---

[55]  <u>See</u> May 30, 2007 Letter from T. Alger to D. Torres et al. (transmittal letter for documents bates-stamped M 007495-0098686).

[56]  <u>See</u> MGA Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008, at 36 n. 101, 45 n. 143, 50 n .172 & 173, 51 n. 178, 66 n. 216, 68 n. 220, 70 n. 229, 71 n. 231, 72 n. 238, 74 n. 244, 75 n. 246, 78 n. 268, 80 n. 276 & 277.

[57]  <u>See</u> Mattel's Motion *in Limine* No. 2 to Exclude Evidence, Argument or Reference to Mattel's Alleged Motive in Filing Suit, or Re Consequences Thereof, dated April 14, 2008. (Dkt No. 3082) at 3 (seeking exclusion of "Document No. M 79765").

[58]  Trial Tr. at 13:24-15:4 (May 22, 2008) ("I guess what I'm inclined to do on this is deny the motion as its written, categorically, saying 'all motive evidence is out,' but providing leave to Mattel to raise objections to particular motive evidence in the course of trial itself, whether or not foundation has been raised, whether or not it is itself relevant in the context of a particular examination. . . . This isn't about explaining to the jury what's going on in this overall case.  It's about Phase 1-a, addressing the particular issues of ownership of Bratz; and Phase 1-B will be damages."); <u>see also</u> Final Pre-Trial Conference Order for Phase 1 Trial, at 14.

[59]  MGA fails to identify the bates-number of the newly discovered email.  Based on MGA's description, Mattel believes it refers to M 1220346, which was produced on March 19, 2010.

00505.07975/3660432.1

1   and determined to be responsive to MGA's Phase 2 related requests.[60]   MGA's

2   intimation that Mr. Eckert's routine practice of cleaning his inbox amounts to spoliation

3   remains a groundless distortion.[61]   Similarly, Mattel explained to MGA months ago that

4   it had produced redacted board materials consistent with Judge Infante's Phase 1

5   Order,[62] and that, to avoid unnecessary motion practice, it would supplement those

6   materials further in Phase 2.[63]   It did so by producing the document in question on

7   March 19, 2010.   MGA's newly minted argument (which it never really explains) that

8   these "newly discovered" documents require a new trial cannot be credited.

9         **B.       MGA's Statute of Limitations Arguments Should Be Rejected**

10        MGA seeks to dismiss the prior rulings as to the statute of limitations by

11  claiming that the jury's finding of fraudulent concealment was tainted by the questions

12  raised by the Ninth Circuit as to the scope of Bryant's Inventions Agreement.   But

13  examination of the actual instruction given to the jury wholly undermines that

14  argument.   The instructions required that the jury find that MGA concealed "the facts

15  that could have led Mattel to discover that Carter Bryant created Bratz-related works

16  while employed by Mattel or that Carter Bryant entered into a contract with and worked

17  with MGA while he was still employed by Mattel."[64]   Whether those facts are,

18  ultimately, sufficient to confer ownership on Mattel in no way taints the conclusion of

19

20  [60]   See Mattel's Opposition to MGA's Motion for Review of Robert Eckert's Mattel Hard Drives and Mattel's Email Systems for Evidence of Spoliation, dated March 29,
21  2010, at 6-7.
    [61]   See id. at 6.   Putting aside the absurdity of MGA's argument for spoliation based
22  on the alleged destruction of a document that has been produced, MGA purposefully ignores the relevant history of this case to argue that because the email was written
23  "after this lawsuit was filed" (Mot. at 18) that Mattel somehow violated its discovery obligations.   In fact, the mid-2004 email was written *before* MGA filed its
24  counterclaims in April 2005, which the Court ruled was the trigger for Mattel's broader preservation obligations.   See Phase 1 Order Denying Motion for Terminating
25  Sanctions, dated August 27, 2007 (Dkt. No. 895), at 3.   Finally, MGA's suggestion that the document somehow "concedes that Mattel does now own Bratz" (Mot. at 18) is
26  absurd—the document does nothing of the sort.
    [62]   See Phase 1 Order re MGA's Motion to Compel Documents Responsive to First
27  Set of Production, dated September 12, 2007, at 6:2-7:10.
    [63]   See March 3, 2010 Email from B. Hauler to A. Hurst.
28

the jury that MGA concealed them, and thus, that Mattel's claims were not time-barred. Whether Bryant created Bratz at his desk at Mattel or in his garage at home, the jury found those facts were concealed from Mattel. For purposes of the statute of limitations argument, that is all that is required.

MGA also seeks to reopen the statute of limitations issue by arguing that three "new" documents are relevant to its defense and rebut Mattel's fraudulent concealment allegations: (1) a February 16, 2001 New York Toy Fair Report ("NYTF Report"); (2) a February 16, 2001 summary of the NYTF Report ("NYTF Summary"); and (3) a January 14, 2002 New Brand Cannibalization Study ("Cannibalization Study").[65] According to MGA, the NYTF Report and Summary demonstrate Mattel's "knowledge of Bratz before it ever entered the market,"[66] and the Cannibalization Study establishes Mattel's "knowledge of harm to its business attributable to MGA."[67] But none of these three documents suggest that Mattel knew that Carter Bryant worked on Bratz or entered a contract with MGA while he worked for Mattel.

The fraudulent concealment issue tried in Phase 1, as the instructions above make clear, turned not on Mattel's knowledge of the Bratz brand, but on its knowledge (and MGA's concealment) of Bryant's Mattel-era work in creating it.[68] The "ultimate facts" relevant to fraudulent concealment are "whether and for what time period the MGA

---

[64]   Phase 2 Jury Instruction No. 35 (Dkt. No. 6267).

[65]   MGA Parties' Motion for New Trial; Renewed Motion to Unseal Juror Interview Transcripts, dated August 30, 2010, at 19-20, 33.

[66]   Id. at 33.

[67]   Id. at 20.

[68]   The Court initially determined that fraudulent concealment must be addressed by the jury because the discovery rule does not apply to these two claims, but it later vacated that ruling as to the intentional interference claim and held that it was timely as a matter of law. Order re Fraudulent Concealment Jury Issue, dated July 24, 2008, at 9 (Docket No. 4154); Order Granting in Part and Denying in Part MGA's Motion for Remittitur, dated April 27, 2009, at 10-11 (Docket No. 5273). Thus, the jury's fraudulent concealment finding is only necessary to support its verdict against MGA for conversion. Phase B Verdict Form as Given, dated August 26, 2008, at 3, 8-9 (Docket No. 4279). After trial, the Court remitted the $31,500 awarded by the jury against MGA for conversion because the Court had ordered the Bratz drawings that form the (footnote continued)

00505.07975/3660432.1

1   defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on

2   the Bratz drawings during his period of employment with Mattel."[69]  Even assuming

3   that Mattel was aware of the existence of Bratz since February 16, 2001, or that Bratz

4   was harming Mattel starting on January 14, 2002, that does not cast any doubt on the

5   jury's findings that MGA and Larian concealed their intentional interference with

6   Bryant's Mattel agreement until at least April 27, 2002, and concealed Mattel's claim to

7   ownership of Bratz until at least April 27, 2001.  Thus, MGA's newly discovered

8   evidence would not have made any difference at all.

9         Indeed, far from being new,  MGA's motion relies on the same kind of evidence

10   and rehashes precisely the  same arguments that the Court previously rejected in its

11   May 27, 2008 Order granting summary judgment in favor of Mattel.  See Eigeman v.

12   City of Great Falls, 723 F. Supp. 522, 524 (D. Mont. 1989) ("[N]ew trial will ordinarily

13   not be granted on the basis of 'newly discovered' evidence where the evidence is not

14   material but is merely corroborative, cumulative or impeaching of the evidence

15   presented at the former trial.").  The Court has issued five different Orders addressing

16   statute of limitations issues.[70]  MGA's argument that the NYTF Report and Summary

17   describe Bratz as "Diva Starz with a smarty attitude" and demonstrate that Mattel was

18   aware of Bratz since at least February 2001 is entirely cumulative of MGA's prior

19   submission to the Court in 2008 that "***the display of Bratz dolls at the New York Toy***

20   ***Fair***" in "***February, 2001***"[71] and the "***the sudden appearance of the Bratz dolls at a***

21

22   _____

23   basis of the conversion claim to be kept in the Court's custody and returned to Mattel
       after the Phase 2 trial.  Docket No. 5273 at 11.

24   [69]  Order re Fraudulent Concealment Jury Issue, dated July 24, 2008, at 9 (Docket
       No. 4154).

25   [70]  Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007
   (Docket No. 142); Order re Statute of Limitations Defense, dated May 27, 2008

26   (Docket No. 3826); Further and Final Order re Statute of Limitations Defense, dated
   June 2, 2008 (Docket No. 3902); Order re Fraudulent Concealment Jury Issue, dated

27   July 24, 2008 (Docket No. 4154); Order Granting in Part and Denying in Part MGA's
   Motion for Remittitur, dated April 27, 2009, (Docket No. 5273).

   [71]  Docket No. 3826 at 5.

28

1   *toy fair in Tokyo in January, 2001*" should have caused "suspicion" at Mattel and

2   triggered the limitations period.[72]

3          The Court rejected MGA's argument because Mattel's *unasserted* claims based

4   on Bryant's "alleged copying or 'borrowing' of Mattel's undisputed rights in Toon

5   Teens and/or Diva Starz to create Bratz" is based on a "qualitatively different type of

6   'wrongdoing'" than Mattel's *asserted* claims based on its "(disputed) ownership rights

7   to the Bratz drawings pursuant Bryant's employment agreement with Mattel and in

8   light of the (disputed) fact that Carter Bryant created these works during the period of

9   his employment with Mattel."[73]  The "fundamental difference" is that "the former

10  situation involves the alleged taking of rights known to Mattel while the latter involves

11  the alleged concealment of certain creations that belong to Mattel in the first instance in

12  order to facilitate the taking of rights unknown to Mattel."[74]

13         Over the course of its many orders on statute of limitations issues—and often

14  repeating the same findings in multiple orders—the Court held that all Mattel's claims

15  were timely.[75]  MGA's "newly discovered evidence" does not affect any of the relevant

16  _____

17  [72]  Id. at 2.
    [73]  Id. at 7.

18  [74]  Id.

19  [75]  The Court also held that the discovery rule applies to all disputed claims except
    conversion.  See Dkt. No. 3826 at 8-9; Dkt. No. 5273 at 11; Dkt. No. 3902 at 3.  All
20  disputed claims in Mattel's November 20, 2006 First Amended Complaint ("FAC")
    except the copyright claim relate back to Mattel's April 27, 2004 Complaint.  See Dkt.
    No. 3826 at 8-9; Dkt. No. 3902 at 3-4.  Mattel's state law claims against Bryant for
21  breach of contract, breach of fiduciary duty, and breach of the duty of loyalty in
    Mattel's April 27, 2004 Complaint accrued at the earliest on July 18, 2003 with the
22  publication of the WSJ article.  See Dkt. No. 3826 at 8.  The state law claims against
    MGA in Mattel's November 20, 2006 FAC for trade secret theft, intentional
23  interference with a contract, aiding and abetting breach of fiduciary duty, and aiding
    and abetting breach of the duty of loyalty also accrued on July 18, 2003 and are timely
24  because they relate back to Mattel's April 27, 2004 Complaint.  See Dkt. No. 3826 at 2-
    3; Dkt. No. 5273 at 11.  Mattel's state law claims against Larian for trade secret theft,
25  intentional interference with a contract, aiding and abetting breach of fiduciary duty,
    and aiding and abetting breach of the duty of loyalty accrued at the earliest on
26  November 4, 2004, when Bryant was first deposed and implicated Larian.  See Dkt. No.
    3826 at 9; Dkt. No. 5273 at 11.  These claims against Larian in Mattel's November 20,
27  2006 FAC are either timely in their own right or relate back to Mattel's April 27, 2004
    Complaint.  Id.  The copyright infringement claims against Bryant, Larian, MGA, and
28  (footnote continued)

1   accrual dates because the dispositive issue is when Mattel had reason to know of

2   Bryant's disloyal work on Bratz for MGA, not when Mattel's had reason to know of the

3   *existence* of Bratz.  The Court should reject MGA's attempt to take a second (or fifth)

4   bite at the apple by seeking reconsideration of the Court's summary judgment rulings

5   without any new evidence.  <u>Sequa Corp. v. Gbj Corp.</u>, 156 F.3d 136, 144 (2d Cir. 1998)

6   ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the

7   case under new theories, securing a rehearing on the merits, or otherwise taking a

8   'second bite at the apple'").

9                                          <u>**Conclusion**</u>

10       Mattel respectfully requests that the Court deny MGA's motion for a new trial as

11   to all claims except Mattel's claims of copyright infringement and conversion.

12   DATED:  September 1, 2010          QUINN EMANUEL URQUHART &
                                         SULLIVAN. LLP

13

14                                    By /s/ Michael T. Zeller
                                         Michael T. Zeller
15                                       Attorneys for Mattel, Inc.

16

17

18

19

20

21

22

23

24

25

26   MGA Hong Kong accrued at the earliest on November 23, 2003, when Mattel first
     obtained Bryant's sketches in connection with the CityWorld litigation, so those claims
27   were timely asserted when first alleged in Mattel's November 20, 2006 FAC without
     regard to relation back principles.  Dkt. No. 3902 at 3-4.

28