**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                                              Date: September 2, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

|  Kathy Peterson  | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                              NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PROTECTIVE ORDER

   Before the Court is MGA Entertainment, Inc. ("MGA")'s Motion for Protective Order (the "Motion"). The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, the Court GRANTS IN PART AND DENIES IN PART the Motion.

   Topic 1 seeks testimony as to "any and all" instances in which MGA downloaded or copied intellectual property, including Mattel's intellectual property, to CDs or storage devices. Mattel concedes that the request lacks direct relevance to any of the claims in its operative pleading. Rather, Mattel proceeds on the theory that evidence of other attempts by Larian to download trade secrets may be admissible under Fed. R. Evid. 404(b), under which evidence of other acts may be admissible to prove "intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, the Court need not evaluate the merits of Mattel's evidentiary argument at this time, because the topic, whether relevant or not, is unduly burdensome. *See* Fed. R. Civ. P. 26(c)(1). The time and cost involved in having a witness testify about company wide practices related to the downloading of information outweighs the marginal relevance of the evidence. Mattel already has first-hand testimony about these practices from prior witnesses like Brian Wing and Isaac Larian. Though 30(b)(6) testimony isn't duplicative of other witness testimony on the same subject, the discovery sought bears little relation to MGA's business and doesn't fall within MGA's knowledge. The Motion is GRANTED as to topic 1.

   Topic 2 seeks testimony as to "[t]he nature and extent of [MGA's] involvement in the Mexican proceedings, including without limitation the identity and role of persons involved on [MGA's] behalf." As MGA argues and Mattel concedes, the Court previously compelled MGA to produce a knowledgeable witness as to "MGA's communications with law enforcement" and "[t]he search and seizure of documents by Mexican authorities from MGA's Mexico City offices and related communications." MGA produced a witness on these topics on June 23, 2010 and July 7, 2010. Mattel responds that the instant topic is broader than the previously compelled topics, though it encompasses those topics. Mattel's argument begs the question of why it initially noticed a narrow version of a topic that it later broadened. The Federal Rules do not countenance such redundant discovery tactics. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii). Even if Mattel's request were timely, the relevance of the non-duplicative testimony sought by the request is greatly outweighed by the burden of preparing for and undergoing deposition. MGA has already been ordered to produce – and has produced – its indemnification agreements with Machado, Trueba, Vargas. No claim in operative pleadings arises out of MGA's participation in the Mexican litigation. The Motion is GRANTED as to topic 2.

   Topic 3 seeks testimony as to "[t]he nature and extent of MGA Mexico's commercial, financial or other obligations that [MGA] satisfied or helped satisfy from 2004 [to] the present." Mattel defends the relevance of this topic on two grounds: (1) personal jurisdiction; and (2) damages flowing from MGA Mexico's alleged theft of Mattel's trade secrets. Neither argument is particularly convincing. First, 30(b)(6) testimony is hardly the appropriate vehicle for the discovery of MGA Mexico's financial involvement with MGA. Mattel already possesses MGA's financials, and further discovery "is unreasonably cumulatively or duplicative [and] can be obtained from some other source that is more convenient, less burdensome or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). MGA's financial engagement with its Mexican subsidiary has also been a topic of deposition testimony in the context of investigations in Mexico, which may be narrower than the instant topic, but not materially so. Second, while MGA satisfies its burden of demonstrating the lack of relevance of the discovery sought by Mattel, Mattel fails to meaningfully explain either of its two arguments. Payments to a subsidiary – in general – do not simply trigger personal jurisdiction over the subsidiary. And Mattel's arguments about damages flowing from the theft of trade secrets is difficult to decipher and attenuated. The Motion is GRANTED as to topic 3.

   Topic 7 seeks testimony as to the origin of any funds used by MGA for the benefit of MGA Mexico prior to March 31, 2005. MGA's arguments as to lack of relevance apply to this topic as well. The Motion is GRANTED as to topic 7.

   Topic 6 seeks testimony as to "[t]he facts known by each witness who [MGA] ha[s] identified as having knowledge of facts concerning, or which [MGA] intend[s] to rely to support, [its] unclean hands affirmative defense." MGA argues that the topic seeks testimony that has already been provided by a prior 30(b)(6) witness. However, the Court is satisfied that the prior witness was not adequately prepared, at least as far as MGA's unclean hands defense is concerned. MGA's other claim regarding the provision of responsive testimony by Larian confuses its affirmative defenses for its

affirmative claims.  The Motion is DENIED as to Topic 6.

Topic 8 seeks testimony as to "[MGA's] selection of the name 'Moxie' for a line of fashion dolls, including without limitation the solicitation or submission of such name by third parties and any other process by which [MGA] received and/or selected such name."  MGA argues it has submitted testimony about how it learned of the name "Moxie."  Mattel responds that learning about the name "Moxie" is distinct from choosing the name "Moxie" for the line of dolls.  However, in the context of this case, Mattel's argument raises a distinction without a difference.  None of the claims in this litigation hinge upon the "process" by which the Moxie name was selected, but not the manner in which the "Moxie" name was revealed to MGA (and MGA's subjective knowledge about the source and ownership of the "Moxie" name).  In any event, Ms. Bacon testified that "emails" memorialize the process whereby "Moxie" was chosen, and production of those emails offers a more convenient, less burdensome and less expensive source of the discovery sought by Mattel.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  The Motion is GRANTED as to topic 8.

Topic 9 seeks testimony as to distributions by MGA to its shareholders, family members of shareholders, and entities owned and controlled by shareholders from January 2004 to the present.  MGA argues the topic solicits testimony that has already been provided in response to inquiry into "payments [MGA] ha[s] made in excess of $100,000 since January 1, 2004 to any person."  Mattel's attempt to distinguish the prior topic on the grounds that it only sought testimony as to distributions in excess of $100,000 is spurious, because it seeks to penalize MGA for Mattel's drafting of the earlier topic.  Nevertheless, Mattel convincingly argues that the witness on the prior topic was inadequately prepared, having failed to discuss the topic with Larian.  And MGA's argument that the topic is redundant of a separate prior topic is unconvincing, since that topic doesn't concern dividend distributions and, in addition, preceded the addition of the new RICO allegations.  The Motion is DENIED as to topic 9.

Topics 10 through 13 seek testimony as to all or contemplated exchanges of money, property or interests between MGA and Omni 808 Investors, LLC ("Omni"), actual and contemplated agreements between MGA and Omni, the uses of credit facility funds drawn down from Wachovia by MGA, and any consideration by MGA to purchase Wachovia's credit facility.  MGA fails to carry its burden on these topics.  Though MGA argues that prior witness testimony was rendered on these issues, it concedes that the previous witness testified only as to MGA's knowledge about the Omni transaction.  In any event, the instant topics are not merely related to Omni, but more broadly, the credit facility.  The Motion is DENIED as to topics 10 through 13.

Topic 14 seeks testimony as to "[MGA's] ability between January 2004 and the present to satisfy [its] debts as they came due, including but not limited to communications among and between some or all of Larian Persons in [MGA's] finance, accounting and tax departments, [MGA's] auditors, and [MGA's] creditors regarding this topic."  MGA argues the testimony sought is duplicative of testimony already compelled in response to a topic concerning "MGA's solvency or lack thereof."

Mattel responds that the topic also seeks testimony as to internal MGA "communications" about its solvency. However, the topic does not seek such "communications" separately; rather, they are "includ[ed]" in the broader topic. This is significant because nothing in the prior topic 23 *excluded* communications and, indeed, it appears that MGA's prior designee did prepare with "document[s] that concluded solvency or insolvency with regard to MGA" without reservation as to whether those documents included internal MGA communications. Mattel's concerns about the lack of preparation are unconvincing; indeed, the very testimony cited by Mattel convinces the Court that the designee was adequately prepared. The Motion is GRANTED as to topic 14.

Topic 15 seeks testimony as to "[MGA's] activities and efforts to preserve or enhance Bratz-related assets, or the value of Bratz-related assets, from January 2004 to the present." MGA argues that the Court's dismissal of Mattel's counterclaim for breach of constructive trust renders the topic irrelevant. However, as Mattel points out, its RICO predicate acts of obstruction of justice still encompass claims that MGA attempted to thwart the first phase jury's verdicts. The Motion is DENIED as to topic 15.

Topic 16 seeks testimony as to MGA's agreements with its employees that concern ownership of intellectual property from 1975 to the present. MGA challenges the relevance of this topic, in light of the fact that Mattel has not raised "an issue of any former MGA employee absconding with MGA's trade secret and/or proprietary information." Mattel responds that (1) MGA's employment agreements speak to custom within the industry and therefore inform the interpretation of Mattel's employment agreement with Bryant; (2) the employment agreements demonstrate MGA's efforts to maintain the secrecy of its trade secrets, which is relevant to demonstrating the reasonableness of Mattel's own efforts; and (3) the employment agreements are relevant to MGA's unclean hands defense. None of these arguments is convincing. First, as Mattel alleges, MGA wasn't a market participant in the toy industry until 2000 (absent a failed attempt at a doll). Mattel could have, but did not, restrict its topic to employment agreements with individuals at MGA involved in the manufacture of toys. Second, even if MGA's efforts to maintain the secrecy of its proprietary information is relevant to the reasonableness of Mattel's efforts, the agreements speak for themselves. Third, even if the employment agreements are relevant to MGA's unclean hands defense, the agreements speak for themselves and topic 6 captures all relevant testimony as to unclean hands anyway. The Motion is GRANTED as to topic 16.

The Clerk shall serve this minute order on all parties to the action.