ANNETTE L. HURST (Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   +1-415-773-5700
Facsimile:    +1-415-773-5759

WILLIAM A. MOLINSKI (Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   +1-213-629-2020
Facsimile:    +1-213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for the MGA Parties and IGWT 826

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO.  CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No.  CV 04-09059 and Case No.  CV 05-02727<br><br>Honorable David O. Carter<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL; RENEWED MOTION TO UNSEAL JUROR INTERVIEW TRANSCRIPTS**<br><br>Hearing Date: September 3, 2010<br>Time: 1:30 p.m.<br>Courtroom: Coutroom 9D<br>Trial Date: January 11, 2011 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

All of Mattel's state law claims depended on Mattel's claim that Bryant provided to MGA and Isaac Larian designs that belonged to Mattel. Mattel's argument that the jury *could have* decided the issues divorced of the issue of ownership simply cannot carry the day because that is not the case that Mattel tried and nothing about the jury instructions cabined the jury to consider the issue of ownership separately and distinct from all other claims. Indeed, the instructions and Mattel invited the jury to consider Mattel's ownership at every step.

As for the jury's findings, they too must be vacated. They too depend on the erroneous interpretation of the contract at issue.

Given this, a partial new trial cannot be granted. The issues cannot be considered "*so* distinct and separable" that there will not be an injustice if only portions of this case are retried. *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

As for the other errors noted, the law of the case doctrine does not prevent this Court from reaching the issues. Particularly, when there is clear error, a district court is not required to simply adopt all prior rulings and let them be. That risks the perversion that we will be trying a case in which error is clear only to have to do it all again. The law does not accept such a result.

Finally, as to the newly discovered evidence, let's just say this: the jury was entitled to hear the evidence. It was entitled to hear that Mattel did not believe it owned Bratz, even after the filing of this lawsuit. It was entitled to see the volumes of information that Mattel possessed concerning Bratz. After all, the jury was not asked only whether MGA concealed information. It was also asked whether Mattel could have obtained information. The fact that Mattel had information in its possession showing the scope of what it knew was clearly relevant. The jury did not have that information and it should have.

For these reasons, a new trial is appropriate.

## ARGUMENT

### I. A PARTIAL NEW TRIAL CANNOT BE ORDERED.

Mattel starts its argument claiming that instructional error on one claim does not require a retrial on all claims. Opp. at 2. That may be true when the error is limited to a specific claim and there is *no doubt* that the error was so limited.

However, if there is *any doubt*, a partial new trial is not appropriate. This is reflected in the standard articulated decades ago by the U.S. Supreme Court, which directed that a partial new trial is appropriate only when the issue to be retried is "*so distinct and separable* from the others that a trial of it alone may be had *without injustice*." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931) (emphasis). In *Galamez v. Potter*, 415 F.3d 1015, 1025 n. 8 (9th Cir. 2005), relied on by Mattel, the Ninth Circuit makes this very point again. The Ninth Circuit made the express finding that the one claim at issue for which there was an instruction error was "distinct and separable" such that a new trial on one claim could be ordered.

Indeed, even if "technically" the issues were somehow distinct and separate—which is not the case here—a new trial is appropriate. A court must assess "the totality of the circumstances in determining realistically whether all issues need to be retried." *Davidson Oil Country Supply Co. v. Klockner*, 917 F.2d 185, 187 (5th Cir. 1990). And, "[w]ithout regard to whether technically the issues somehow resolved by the jury's answers . . . were separate and distinct, *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931) counsels against restrictive remand where there is doubt whether there might be confusion or injustice from a restrictive new trial." *Id.*

Finally, Mattel claims that MGA has the burden and that MGA has cited no case in which a new trial was ordered as to all claims. Opp. at 3. First, prejudice is presumed in these instances. *See, e.g., Galdamez v. Potter*, 415 F.3d 1015, 1025

1  (9th Cir. 2005). And where the instructions allow the jury to decide liability based
2  on erroneous factors, that is prejudice. *See Heller v. EBB Auto Co.*, 8 F.3d 1433,
3  1441 (9th Cir. 1993); *Caballero v. City of Concord*, 956 F.2d 204, 207 (9th Cir.
4  1992). Second, while Mattel claims that no case has granted a new trial as to all
5  issues in a case, it cannot be disputed that the Ninth Circuit has overturned all
6  claims infected by the erroneous instructions at issue. *See, e.g.*, *Murphy v. City of
7  Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (two claims). Here, all claims were
8  infected. A new trial as to all claims is therefore appropriate.

## II. THE JURY'S FINDINGS CANNOT BE MAINTAINED.

There is no dispute here that the jury did not answer all questions on the verdict form. The jury hung. In such circumstances, a court is not given the right to maintain those questions answered. As noted in *Union Pac. R. Co. v. Bridal Veil Lumber Co.*, 219 F.2d 825, 831-33 (9th Cir. 1955), the proper recourse is a new trial in its entirety. As for waiver, Opp. at 19-22, it was the Court's responsibility to act in light of the hung jury. *See id.* at 831 (finding no waiver of a right when counsel did not insist that the jury continue deliberations).

Mattel's reliance on *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028-29 (9th Cir. 2003), is also misplaced. Opp. at 19. At issue in *Zhang* was a completed verdict form that the parties challenged as against the weight of the evidence. Here, and as in *Bridal Veil Lumber Co.*, the issue is one of an incomplete verdict form.[1]

Moreover, while Mattel claims that the special verdict findings must be preserved, that is not true when those findings are infected by the same error that justifies the new trial. *Lattimore v. Polarorid Corp.*, 99 F.3d 456, 468 (1st Cir. 1996). MGA demonstrated how the special verdict was infected by the errors that

---

[1] Mattel also cites Fed. R. Civ. P. 48, which allows parties to stipulate to a less than unanimous jury. Here, there was no such stipulation. The findings went unanswered as opposed to being answered on the verdict form by less than all the jurors.

1 informed the Phase 1 trial. Mot. at 28. As to these arguments, Mattel says nothing
2 except to note that the findings are "highly relevant" to Phase 2. Opp. at 8-9. Of
3 course, that is not the query. Indeed, the fact that Mattel wishes to use the findings
4 affirmatively without disputing that the errors at issue also appear in the special
5 verdict only goes to establish the injustice of maintaining the special verdict and
6 further insures that the errors noted by the Ninth Circuit will continue to infect the
7 trial.

**III. THE STATE LAW CLAIMS CANNOT BE MAINTAINED BECAUSE THEY DEPENDED ON THE ERRORS NOTED IN MGA'S MOTION FOR NEW TRIAL, REGARDLESS OF THE WEIGHT OF THE EVIDENCE.**

11 Walking through each of the state law claims, Mattel claims that none had
12 anything "to do with the ownership of Bratz." Opp. at 10. Moreover, Mattel
13 maintains that the weight of the evidence supports the verdicts unrelated to the issue
14 of ownership. Opp. at 14-19.

15 First, as noted below, Mattel did not cabin its claims so that they had nothing
16 "to do with the ownership of Bratz." Opp. at 10. Second, Mattel is not entitled to
17 have the evidence weighed in its favor. In the face of erroneous instructions, "[t]he
18 prevailing party is not entitled to have disputed factual questions resolved in his
19 favor because the jury's verdict may have resulted from a misapprehension of law
20 rather than from factual determinations in favor of the prevailing party." *Caballero
21 v. City of Concord*, 956 F.2d 204, 207 (9th Cir. 1992).

22 ***Aiding and Abetting Breach of Duty of Loyalty.*** Mattel points to the aiding
23 and abetting breach of duty of loyalty instruction, Instruction No. 28, and claims
24 that that breach depended on whether Bryant "entered into a contract to compete
25 with Mattel while still working for Mattel . . . ." Opp. at 10.

26 Not so. Instruction 28 did not limit itself to the fact that Bryant "entered into
27 a contract to compete with Mattel while still working for Mattel . . . ." Opp. at 10.
28 Instruction No. 28 expressly stated that liability could be imposed because Bryant

entered into a contract "*to produce a line of fashion dolls*." Mot. at 5; Opp. at 10. The premise of the instruction was not merely work performed. It was premised expressly on Bratz, over which Mattel was claiming ownership.

Moreover, as noted in MGA's motion, Mattel did not cabin its claim solely on the fact that Bryant "entered into a contract to compete with Mattel while still working for Mattel . . . ." Opp. at 10. Mattel made clear that liability should be imposed on this claim because Bryant took Bratz, which Mattel owned, from Mattel and gave it to MGA. *See* Mot. at 5-7, 23-24.

***Aiding and Abetting Breach of Fiduciary Duty.*** Mattel claims that this too had nothing to do with ownership. "Ownership of any specific property is simply immaterial," according to Mattel. Opp. at 12.

Whether true or not generally, that is neither how the Court instructed the jury nor how Mattel argued the case. Mattel's argument focuses solely on Instruction No. 26. Opp. at 12. But missing from Mattel's consideration is Instruction No. 28, referenced in MGA's Motion for New Trial. Mot. at 4. Instruction No. 28 instructed the jury that Bryant's fiduciary duty depended on the fact that he had to keep "Proprietary Information" confidential. It instructed the jury that the information that was "propriety" belonged to Mattel. Mot. at 4; Dkt No. 4115 at 31.

This allowed the jury to equate Bratz with Proprietary Information. It allowed the jury to premise its liability decision in Phase 1(A) and (B) on the disclosure of Bratz-related ideas and works because Bryant did not keep the information confidential. And, as noted in MGA's motion, this is precisely what Mattel argued. Mot. at 5-7.

***Intentional Inteference With Contract.*** Mattel claims that its intentional interference claim essentially tracks its breach of duty of loyalty claim. It states the only issue was whether Bryant entered into a contract with MGA "to produce a competing product while he was still employed by Mattel." Opp. at 13.

- 5 -

CV 04-09049 DOC (RNBx)

1 That is not so. The instructions pointed to by Mattel did *not* limit MGA's liability on intentional interference solely to the fact that Bryant signed an agreement with MGA. And Mattel exploited this lack of limitation over and again. Mattel claimed that liability could be imposed for intentional interference because MGA was inducing a Mattel employee "*to bring his designs to MGA*." 7/10/08 Trial Tr. at 5001-02 (emphasis added). It argued that it was "a breach of Mattel employee contracts for Carter Bryant to assist MGA *or share design ideas with MGA*." 7/10/08 Trial Tr. at 4828 (emphasis added). *See also* Mot. at 5-6.

In other words, Mattel's intentional interference claim was not limited to the mere signing of a contract with MGA. It is enough that the jury's verdict "may have resulted from a misapprehension of law rather than from factual determinations in favor of the prevailing party." *Caballero*, 956 F.2d at 207.

For these reasons the motion for new trial should be granted.

**IV.   LAW OF THE CASE DOES NOT PRECLUDE THE RELIEF GRANTED.**

Mattel claims that law of the case precludes this Court's ability to grant the relief sought. Opp. at 11. However, this Court is bound to act in light of the Ninth Circuit's decision. Whatever Judge Larson decided in summary judgment that is inconsistent with the Ninth Circuit's ruling simply cannot stand. *See* Mot. at 20 n. 5.

Second, Mattel is wrong when it states that law of the case binds this Court. It simply does not, particularly when it has been shown, as here, that the prior rulings are clearly erroneous. The two cases cited by Mattel concern prior decisions by a Court of Appeals—where one panel is asked to consider a case on a second appeal. Opp. at 11. In addition, when a case is reassigned, prior orders "remain[] subject to reconsideration and revision either by the same judge, a successor judge or a different judge to whom the case might be assigned." *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970). Or, as stated

by the Ninth Circuit just recently "a court may revisit prior decisions in a case and correct errors while the case is still pending." *Lahiri v. Universal Music and Video Distrib. Co.*, 606 F.3d 1216, 1222 (9th Cir. 2010).

## V. JUROR MISCONDUCT JUSTIFIES THE GRANT OF A NEW TRIAL.

MGA has explained chapter and verse why Judge Larson's decision was erroneous. MGA has explained why it is justified in obtaining access to the transcripts of the juror's interviews. Mattel's response is to rely on the prior decisions. But they were erroneous. The law of the case doctrine does not preclude this Court's consideration of the matter. *See* Section IV, *supra.*

## VI. NEWLY DISCOVERED EVIDENCE REQUIRES THE GRANT OF A NEW TRIAL.

### A. The Bratz Brief And What Happened To Barbie Documents Are Relevant And Material.

Mattel's version of the facts regarding both The Bratz Brief and the What Happened to Barbie email is misleading, at best. *One* version (and one copy) of The Bratz Brief was produced prior to the Phase 1 trial. As explained in the opening papers, Mattel provided no other context for the genesis of The Bratz Brief, such as emails, notes, meeting requests, drafts or versions, why it was created, or how it was used. MGA spent the remainder of Phase 1 discovery trying to ascertain any modicum of information or detail about The Bratz Brief—questioning Matt Bousquette, Tim Kilpin, Milt Zablow, Ivy Ross, and Adrienne Fontanella, to name a few—and came up with nothing. Mattel proceeded to dispute the authenticity of The Bratz Brief and, based on MGA's inability—despite repeated attempts—to acquire any information about its creation, it was *not admitted* during Phase 1.

MGA tries again in Phase 2. Suddenly, Mattel produces another copy of The Bratz Brief on February 24, 2010 (Kilpin as custodian, M 0940928-34) and a *revised* version of The Bratz Brief on March 26, 2010 (Arons as custodian, M 1241738-44). MGA asks multiple witnesses—such as, CEO Eckert, Matt Bousquette, Tim Kilpin, and Russell Arons—and still comes up empty-handed.

*Only* when MGA obtains an order on June 7, 2010 (Dkt. 8079) that they may take a 30(b)6 witness on The Bratz Brief on June 30, 2010 does MGA learn that Sujata Luther was the drafter of The Bratz Brief, and that it was commissioned by CEO Eckert.  MGA then acquires the deposition of Ms. Sujata Luther on July 8, 2010.  Ms. Luther testifies with surprising detail that some of Mattel's key players—CEO Eckert, Matt Bousquette, and senior vice-presidents of strategic planning, Jerome Bossick and Sujata Luther—were involved in the commission, drafting, and use of The Bratz Brief.  This evidence and testimony is clearly relevant and responsive to Phase 1, and was only procured after monumental efforts and supreme tenacity on behalf of MGA against Mattel's repeated resistance.

Further, despite Mattel's claims to the contrary, The Bratz Brief is not merely about Barbie.  It ascribes Bratz's success to MGA's work and creativity, a factor that goes directly to the issue of damages, if nothing else.  *See* Mot. at 16-17; *see* Dkt. No. 4267 at 46-47 (apportionment of damages instruction).  The analysis of The Bratz Brief was then summarized in the "What Happened To Barbie" email, a document that Mattel does not dispute questions whether Mattel owns Bratz, a core issue of Phase 1.  This email, as explained in the Opening Brief at 18, was only produced after the Court granted a motion to compel a search through Bousquette's documents.

There simply can be no dispute that these documents and the corresponding testimony is relevant and responsive to core issues of Phase 1.

### B. Statute of Limitations Documents Were Relevant.

Whatever else Mattel may say, the jury was entitled to hear the evidence concerning Mattel's knowledge.  It was entitled to hear that Mattel kept close watch on Bratz.  It was entitled to hear that Mattel was aware of the facts giving rise to its claims.

1  Mattel's argument that the "fraudulent concealment issue . . . turned not on
2  Mattel's knowledge . . . but on its knowledge . . . of Bryant's Mattel-era work in
3  creating it," is false. Opp. at 28. Mattel carefully elides from its argument the fact
4  that the jury *also* had to consider whether Mattel was unaware of the facts or could
5  not have obtained them with diligence. Dkt. No. 4267 at 39 (Instruction No. 35,
6  element 2).

7  The fact that Mattel had so much information, obtained illicitly to boot, is a
8  fact that the jury should have had.

## CONCLUSION

10  For the foregoing reasons, the Phase 1 verdicts should be vacated in their
11  entirety.

13  Dated: September 2, 2010     ORRICK, HERRINGTON & SUTCLIFFE LLP

                                 */s/ Warrington S. Parker III*
                                 Warrington S. Parker III
                                 Attorneys for the MGA Parties and IGWT 826