ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

Case No. CV 04-9049-DOC (RNBx)
Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727

Hon. David O. Carter

**MGA PARTIES' RESPONSE TO MATTEL'S OBJECTIONS TO PORTIONS OF DISCOVERY MASTER ORDER NO. 99**

Date: TBD
Time: TBD
Place: TBD

Discovery Cut-Off: October 4, 2010
Pre-trial Conference: January 4, 2011
Trial Date: January 11, 2011

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

A. Mattel Seeks Additional Phase 2 Depositions And Takes More Than MGA. ........ 3

B. The Discovery Master Equalizes Deposition Time In Discovery Matter Order No. 99. ........ 3

C. The Court Grants 29 Depositions for Both Sides. ........ 4

ARGUMENT ........ 4

I. THE COURT HAS FOUND 29 DEPOSITIONS FOR EACH SIDE IS APPROPRIATE ........ 4

A. The Witnesses Are Crucial To MGA's Claims And Defenses. ........ 5

B. MGA Should Not be Penalized for Mattel's Deliberate Withholding of Highly Relevant Evidence. ........ 7

II. THE DISCOVERY MASTER DID NOT LIMIT MATTEL'S OPPORTUNITY TO SEEK RELIEF ON THE CABRERA AND MORALES DEPOSITIONS ........ 8

III. THE DISCOVERY MASTER DID NOT ERR IN REQUIRING MATTEL TO PRODUCE MR. ECKERT ........ 9

IV. THE DISCOVERY MASTER DID NOT ERR IN GRANTING ADDITIONAL TIME WITH VILLASENOR AS MATTEL HAS PRODUCED KEY DOCUMENTS AFTER HIS DEPOSITION ........ 10

V. THE DISCOVERY MASTER DID NOT ERR IN GRANTING THREE DAYS OF 30(b)(6) TESTIMONY TO BOTH PARTIES ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

Page

## FEDERAL STATUTES

28 U.S.C. § 636(b)(1)(A) .......... 5, 11

Fed. R. Civ. P. 72(a) .......... 5, 11

## INTRODUCTION

Mattel's Objections to Discovery Master Order No. 99 (hereinafter the "Motion") are consistent with its belief that it should control the rules of discovery. Under its rubric, Mattel gets what it wants (regardless of relevance or expense) including additional depositions, and MGA is not allowed any discovery that is potentially harmful to Mattel. It is Mattel, not MGA, that has consistently sought to increase the number of depositions in Phase 2 and taken the position that three depositions it took before the 25 deposition limit should not count toward that number—allotting Mattel 28 depositions. The Discovery Master equitably ordered both parties 29 depositions and set forth a schedule that ensures they will be complete before the close of discovery. On September 1, 2010, this Court agreed with the Discovery Master's recommendation, and has allowed 29 depositions.

MGA needs these additional depositions, which will take place before the close of discovery, in order to uncover evidence which Mattel has concealed for years in this litigation. For years, Mattel withheld and concealed key evidence that is harmful to it despite Court Orders requiring production and repeated representations of compliance. For example, Mattel concealed key evidence concerning the origins and authorship of the "The Bratz Brief" -- an important document that attributes Barbie's failure to factors other than Bratz and Bratz's success to attributes other than Carter Bryant. Mattel succeeded in excluding this document from evidence in Phase 1 based on lack of authentication. Now, after several motions to compel in Phase 2, MGA has learned that this was a study commissioned by Mattel's CEO Bob Eckert, despite his deposition testimony to the contrary. MGA has also learned that The Bratz Brief was co-authored by Jerome Bossick and Sujata Luther. Mr. Eckert testified that he has no memory of its author and Ms. Luther was involved only in later drafts. Yet, predictably,

Mattel is trying to keep MGA from deposing Mr. Bossick, the one man who was at the centre of The Bratz Brief and likely to possess first-hand knowledge about it, whose deposition has been scheduled pursuant to Order No. 99.

Similarly, for years Mattel deliberately withheld and concealed evidence concerning its theft of competitors' trade secrets, including MGA's. Mattel's 30(b)(6) witness denied any knowledge of such theft. It was only after Sal Villasenor's shocking testimony on July 12, 2010, admitting that Mattel employees had engaged in a wide-ranging practice of using false names and business cards to sneak into competitors' private showrooms to steal competitors' confidential information did Mattel realize the jig was up and reluctantly produced a trickle of relevant documents. More documents have been produced *after* the Villasenor deposition. Mattel continued to withhold these relevant (and harmful) documents despite Court Orders requiring their production and assurances to the Court that it was producing them. Mr. Villasenor's testimony and recently produced documents have implicated several Mattel employees in Mattel's theft of competitors' confidential information. Discovery Master Order No. 99 permits MGA to depose some of the key individuals involved in this theft, namely, Kelly Osier, Sharon Rahimi, and Matt Turetzky. Mattel's Objections to Order No. 99 is another attempt to prevent highly relevant and damaging information from coming to light.

MGA has already been substantially prejudiced by Mattel's deliberate withholding of relevant evidence. Mattel produced key documents (though clearly not all documents) just days before MGA's deadline of August 16, 2010 to file its Answer and Counterclaims-in-Reply to Mattel's Fourth Amended Answer and Counterclaims. Mattel must not be permitted to stonewall discovery into relevant but harmful evidence and Mattel's Objections to Discovery Master Order No. 99 must be overruled.

## FACTUAL BACKGROUND

### A. Mattel Seeks Additional Phase 2 Depositions And Takes More Than MGA.

Following Phase 1 trial, the Court held that discovery would begin anew in Phase 2. Mattel immediately took three Phase 2 depositions. 10/15/2009 Discover Matter Order No. 69 ("Order No. 69") at 13. Mattel then moved for leave to take forty-one (41) depositions – thirty-one (31) individuals and ten entities – in Phase 2 in addition to the 70 depositions it had taken in Phase 1. *Id.* at 3. The Discovery Master granted each side thirty (30) Phase 2 depositions, inclusive of percipient witnesses and corporate representatives. *Id.* at 17. Subsequently, this Court reduced that number to twenty-five (25) depositions per side. December 17, 2007 Hearing Tr. at 25. The three depositions that Mattel had already taken were not counted towards Mattel's deposition limit. Earlier this year, MGA requested that it be granted three depositions to make its count equitable with Mattel's, and the Court granted MGA's request, essentially granting each side twenty-eight (28) depositions total. To date, MGA has taken twenty-four (24) depositions and Mattel has taken twenty-six (26) depositions in Phase 2. Dkt. # 8642 at 1.

### B. The Discovery Master Equalizes Deposition Time In Discovery Matter Order No. 99.

Nearing the end of discovery, the Discovery Master held an informal session with the parties on August 23 in an effort to finalize the deposition schedule in the case. Both parties requested additional deposition time at the hearing. After considering both parties' positions and arguments, the Discovery Master issued Order No. 99 (Dkt. # 8642), establishing a deposition schedule and protocol going forward. The Discovery Master found that Mattel had already taken twenty-six (26) Phase 2 depositions and was requesting more. Ultimately, the Discovery Master granted each party twenty-nine (29) depositions, finding it equitable that

MGA be permitted to take the same number of depositions as Mattel in Phase 2. Further, the Discovery Master granted each party an additional three days of 30(b)(6) testimony, and permitted the continuation of certain other depositions.

The Discovery Master also set forth deposition dates for pending depositions, including MGA's depositions of the following witnesses: Jerome Bossick, Matt Turetzky, Sharon Rahimi, and Kelly Osier. The Discovery Master made clear: if a party objects to a deposition as set by the Discovery Master, it was incumbent on that party to move for and receive a protective order in advance of the objectionable deposition. This procedure, along with the fact that twenty-nine (29) depositions is just one more than the twenty-five (25) plus three (prior to the limit) that Mattel intended to take, is designed to ensure that both parties are able to take an equitable number of depositions before the close of the discovery period.

### C. <u>The Court Grants 29 Depositions for Both Sides.</u>

On September 1, 2010, after Mattel raised the issue of Order 99's establishment of 29 depositions, the Court found that the Discovery Master's decision was fair, and agreed that 29 depositions could be conducted by each side, provided they occur prior to the October 4, 2010 close of discovery.

## ARGUMENT

## I. THE COURT HAS FOUND 29 DEPOSITIONS FOR EACH SIDE IS APPROPRIATE.

In his Order of August 25, the Discovery Master recommended that each side be permitted to take a total twenty-nine (29) depositions for Phase 2. Contrary to Mattel's suggestion (Motion at 1), the Discovery Master's Order simply leveled the playing field as it relates to Phase 2 depositions, as Mattel has already exceeded 25 Phase 2 depositions, and was requesting additional depositions at the meeting with the Discovery Master. The Discovery Master made his ruling based on both parties' positions and arguments at the informal meet and confer. Dkt. # 8642 at 1. Thus, Mattel did not and cannot show that the

Discovery Master's ruling was erroneous, let alone clearly erroneous. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)(a district court will reverse a magistrate judge's order on a nondispositive discovery matter only if it is "clearly erroneous or contrary to law"). In any event, good cause exists for the depositions granted by Order No. 99 as MGA has made a particularized showing of need for each of the witnesses.

On September 1, 2010, after hearing argument from Mattel concerning Order 99, this Court agreed that 29 depositions could be conducted by each side, provided that they are conclude prior to the close of discovery.[1]

**A. <u>The Witnesses Are Crucial To MGA's Claims And Defenses.</u>**

Although the Court stated that it would not rule on the propriety of particular witnesses until after Mattel files its response to MGA's Counterclaims in Reply, below is a brief description of the significance of each witness.

**Jerome Bossick.**[2] Mr. Bossick is the author of the original draft of the Bratz Brief and the only person with first-hand knowledge about its commission, creation and circumstances surrounding The Bratz Brief, a critically important document. 7/8/2010 Luther Depo. Tr. 129:4-131:7. He possesses critical information that cannot be obtained from any other witness. He has not been deposed before. Even Mattel's 30(b)(6) witness on The Bratz Brief, Keith Storie, did not speak with Mr. Bossick. 6/30/2010 Storie Depo Tr. at 1783:6-1784:16. Thus, the discovery sought is not duplicative or cumulative.

**Kelly Osier.** According to Mr. Villasenor, Ms. Osier used false identifications to enter competitors' showrooms and steal confidential competitive information. 7/21/2010 Villasenor Depo. Tr. at 70:10-19. She was also the author of numerous Toy Fair Reports and Toy Fair Competitive Updates (for

[1] If the Court requires additional briefing on whether 29 depositions are indeed appropriate, MGA can submit supplemental briefing.

[2] Mattel also argues that Mr. Bossick has health problems that preclude him from being deposed. As set forth in Order 99, Mattel must bring a motion for protective order to prevent Mr. Bossick's deposition from going forward.

example, M 1680714-811, M1680048-093), including the 2001 Toy Fair Report that is replete with information about Bratz including pictures, pricing and advertising plans. Ms. Osier possesses unique knowledge relevant to Mattel's practice of stealing competitors' confidential information.

**Sharon Rahimi.** According to Mr. Villasenor, Ms. Rahimi was hired specifically by Mattel to enter competitors' showrooms using false identification to steal confidential competitive information. 7/21/2010 Villasenor Depo. Tr. at 70:10-80:6. And, she succeeded in it. *Id.* at 83:16-84:19. Indeed, documents produced just two days ago confirm that she entered MGA's showroom at the New York Toy Fair (M 1748721, 1748722). She also later phoned MGA and managed to obtain a picture of an unreleased MGA product. Documents also show that she obtained pictures of MGA's Bratz Stylin' Collection which was forwarded to high level executives at Mattel including Matthew Bousquette.[3] Ms. Rahimi possesses unique knowledge relevant to Mattel's practice of stealing competitors' confidential information.

**Matt Turetzky.** According to Mr. Villasenor, and recently produced documents, Mr. Turetzky oversaw Mattel's Market Intelligence Group and Sal Villasenor reported to him. 7/21/2010 Villasenor Depo. Tr. at 30:25-31:3. He is a high ranking Mattel official who not only knew and encouraged the activities of the Market Intelligence Group but also hired Ms. Rahimi specifically for the purpose of illegally entering showrooms that Mr. Villasenor might not have been able to because he would be recognized. *Id.* at 66:25-68:16; 226:3-15; 79:13-80:6. Thus, Mr. Turetzky possesses critical and unique knowledge related to the practices and role of Mattel's Market Intelligence Group in its spying and stealing activities.

3 This email just produced from Mr. Bousquette's custody was not produced in response to the Court's Order requiring Mattel to produce all relevant Bousquette documents on the eve of his deposition. Yet, this email was withheld until now.

**B. MGA Should Not be Penalized for Mattel's Deliberate Withholding of Highly Relevant Evidence.**

The witnesses identified above only recently came to light. Their significance to MGA's case—both its defenses and affirmative claims—cannot be disputed, as detailed above. MGA will be prejudiced if Mattel is permitted, yet again, to conceal evidence that these witnesses have. Nevertheless, MGA briefly addresses the arguments raised by Mattel in its Opposition to Order 99.

Mattel erroneously argues that MGA has known of its trade secret claims since 2004 (Motion at 4). Not so. Indeed, Mattel did such a fine job of withholding all relevant evidence that MGA was unable to confirm its suspicion that Mattel was engaged in this type of illicit conduct until Mr. Villasenor's recent testimony and subsequent document production.

Mattel's claim that MGA deliberately chose to not take their depositions and expended its depositions on other topics to sand bag Mattel with its last-minute claims is ridiculous. Motion at 4. That Mattel could even make such a claim with a straight face is remarkable when it sat for at least four years on the information upon which MGA's claims are based. It is MGA that was sand bagged by Mattel's deliberate withholding of highly relevant documents. New evidence has come to light only recently necessitating these depositions.

Mattel's argument that MGA should not be allowed discovery on its claims until the Court has ruled on Mattel's responsive pleadings or its dispositive motions is equally unavailing. Motion at 5. Mattel cites no authority for this novel proposition. Instead, Mattel argues that because it was not allowed to take discovery on Moxie which had not been pled in the case, MGA should not be allowed discovery on its claims. Unlike Moxie which Mattel had not identified in its pleadings, MGA has alleged claims of trade secret misappropriation and RICO in its Counterclaims-in-Reply filed on August 16, 2010 based on newly uncovered evidence.

MGA has already been substantially prejudiced by Mattel's deliberate concealment of documents. The proposed witnesses refuse to discuss their employment at Mattel for fear of violating their confidentiality agreements. Civil discovery requires just that—discovery. With the imminent close of discovery, MGA has to complete discovery on this newly uncovered evidence in a short period of time. MGA should not be further penalized for what is clearly the result of Mattel's abuse of discovery and deliberate withholding of relevant documents.

## II. THE DISCOVERY MASTER DID NOT LIMIT MATTEL'S OPPORTUNITY TO SEEK RELIEF ON THE CABRERA AND MORALES DEPOSITIONS.

Mattel incorrectly contends that Order No. 99 denies it an opportunity to seek relief from the Court on the Fifth Amendment issues related to Ms. Cabrera and Ms. Morales depositions in Phase 1. Motion at 7. The Discovery Master made no finding related to their refusal to answer questions on Fifth Amendment grounds. The Discovery Master did not "prejudge" this issue as suggested by Mattel because he did not address this issue at all.

The Discovery Master merely found that Mattel was not entitled to another deposition of Ms. Morales and Ms. Cabrera because it was not a continuation of their Phase 1 deposition. Rather, taking these two depositions at this time would count as 2 additional depositions toward the Mattel Phase 2 limit, putting Mattel beyond the permissible number.

Ms. Morales and Ms. Cabrera provided substantive testimony during Phase 1 depositions (apart from their limited invocation of the 5th Amendment); trying to take their depositions in Phase 2 are 2 additional depositions. Under Mattel's analysis of this point, the deponents who MGA took in Phase 1 (such as Messrs. Bousquette; Eckert; Mattel 30(b)(6)) and then also took in Phase 2 would not be counted toward MGA's deposition limit. This point was made to the Discovery Master, and he agreed that any deposition of Ms. Morales and/or Ms. Cabrera would count toward Mattel's Phase 2 limits.

To be clear, though, the Discovery Master made no finding as to whether Ms. Morales and Ms. Cabrera should be compelled to answer specific questions from their Phase 1 depositions to which they had refused on grounds of Fifth Amendment. That, as Mattel correctly points out, is an issue that Mattel can move, and apparently plans to move as part of its omnibus motion to be filed on September 13, 2010. Motion at 7. The Discovery Master's ruling does not affect Mattel's ability to do so.

## III. THE DISCOVERY MASTER DID NOT ERR IN REQUIRING MATTEL TO PRODUCE MR. ECKERT.

At the proceeding before the Discovery Master, MGA requested additional time with Bob Eckert.[4] Mattel objected to the Discovery Master about producing Mr. Eckert. The Discovery Master reminded Mattel of this Court's consistent ruling: Mr. Eckert will be required to sit for deposition for the same duration that Mr. Larian is required to sit. Mattel's objections to Order No. 99 omit this discussion. To comply with this Court's order, the Discovery Master required Mr. Eckert to return for an equal amount of time that Mr. Larian has testified.

But MGA seeks Mr. Eckert's testimony not just to make the time equal, but because of Mr. Eckert's critical importance to the case. In light of the highly relevant documents, such as The Bratz Brief and the "What Happened to Barbie" email that have been authored by Mr. Eckert, and Mr. Eckert's testimony that he double-deletes emails, MGA has sought, and Special Master Smith has ordered without objection, a forensic review of Mr. Eckert's hard drives, email servers, and restoration of backup tapes containing content from Mr. Eckert. *See* August 19, 2010 Report and Recommendation. Mr. Eckert was heavily involved in driving Mattel's strategy in response to Bratz, and his testimony could not be more relevant.

---

4 During the session with the Discovery Master, Mattel also requested that Isaac Larian be ordered to return in his capacity as a 30(b)(6) witness.

This is not to say that the Discovery Master foreclosed Mattel from seeking a protective order. Indeed, the text of Order No. 99 says that "it is incumbent upon the party contesting the deposition to obtain a ruling on a motion for protective order prior to the deposition occurring; otherwise, the deposition shall go forward." *Id.* at 3. Consistent with this procedure, the Discovery Master requested that the Court rule upon any pending motions for protective order and/or motions to compel as soon as practicable and in advance of the deposition occurring. *Mattel does not object to this part of the order.*

Nevertheless, under the Mattel rules of discovery, the Discovery Master's considered plan should not apply. Why? In part because when MGA moved on July 26, 2010 (Docket No. 8377) to compel the testimony of Mr. Eckert, Mattel did not cross move for a protective order.[5] The procedure set forth by the Discovery Master stands, and it is incumbent upon Mattel to obtain a protective order it if seeks to avoid Mr. Eckert's deposition. Having failed to do so, Mattel must produce Mr. Eckert.

## IV. THE DISCOVERY MASTER DID NOT ERR IN GRANTING ADDITIONAL TIME WITH VILLASENOR AS MATTEL HAS PRODUCED KEY DOCUMENTS AFTER HIS DEPOSITION.

Mattel did not produce highly relevant pivotal documents until after Mr. Villasenor's deposition. For years, Mattel has succeeded in hiding from MGA and the world the truth about its spying activities and theft of competitors' confidential information including MGA's. Once it became clear that Mattel could no longer avoid Mr. Villasenor's testimony, Mattel produced a trickle of documents on the eve of his deposition.[6] It was only *after* MGA uncovered the tip of the iceberg and demanded production of documents identified by Mr. Villasenor that Mattel produce highly relevant documents such as copies of fake business cards used by

[5] MGA's Motion to compel Mr. Eckert is fully briefed.

[6] The Court will recall that a similar issue arose prior to the deposition of Matthew Bousquette, whose hard drive was only searched after the Court ordered Mattel to do so literally on the eve of his deposition. Since that deposition, Mattel has continued to produce documents from Mr. Bousquette.

Mattel employees to sneak into competitors' showrooms, expense reports reflecting Mattel's reimbursement of Mr. Villasenor's expenses related to the theft, copies of confidential MGA price lists, Toy Fair Reports spanning several years replete with pictures and pages of unreleased MGA products, and a copy of a video presentation of competitive information obtained from private showrooms – all produced on August 7, 2010, weeks after Mr. Villasenor's first day of testimony. Dkt. # 8660 at 2-3. And now Mattel seeks to avoid the continuation of his deposition.

MGA has already been substantially prejudiced by Mattel's deliberate withholding of documents and abuse of discovery. Mattel's contention that MGA has had the opportunity to examine Villasenor fully (Motion at 10) is simply belied by Mattel's production of highly relevant documents that MGA did not have at the time of the prior deposition. Given the importance and volume of documents related to Villasenor that Mattel has produced since his prior deposition, there can be no question that MGA is entitled to additional time. Thus, Mattel did not and cannot show that the Discovery Master's ruling was erroneous, let alone clearly erroneous. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)(a district court will reverse a magistrate judge's order on a nondispositive discovery matter only if it is "clearly erroneous or contrary to law"). In any event, Mattel can always move for a protective order, as contemplated by the Discovery Master in Order No. 99.

## V. THE DISCOVERY MASTER DID NOT ERR IN GRANTING THREE DAYS OF 30(B)(6) TESTIMONY TO BOTH PARTIES.

Recently produced testimony and documents show that Mattel's executives and attorneys were complicit in Mattel's wide ranging scheme to steal competitors' confidential information. *See* Dkt. # 8660 at 3. Nevertheless, Mattel's 30(b)(6) designee Keith Storie denied any knowledge or existence of such a practice. Dkt. # 8583 at ¶ 54. In light of the new information that has been

produced only recently, MGA is entitled to a knowledgeable Mattel 30(b)(6) witness on this newly discovered evidence in addition to other pending topics.

For example, Topic 8 of MGA's third notice of deposition seeks testimony on "the receipt by Mattel of any non-public and/or any confidential information about competitors' products or pricing, product development, advertising plans, ... including any practice of anyone at Mattel of visiting showrooms of competitors during any Hong Kong or New York Toy Fair(s), including but not limited to how Mattel gained admittance to competitors' showrooms" – a topic that is directly affected by the new evidence recently uncovered by MGA.

The Discovery Master did not err when he granted MGA three days of 30(b)(6) testimony on its third and fourth notices of deposition. Further, the Discovery Master equitably granted both sides the same number of days, three additional days of 30(b)(6) testimony. Thus, Mattel did not and cannot show that the Discovery Master's ruling was erroneous, let alone clearly erroneous.

## CONCLUSION

For the foregoing reasons, MGA respectfully requests that the Court overrule Mattel's Objections to Discovery Master Order No. 99.

Dated: September 2, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Sugithra Somasekar*
Sugithra Somasekar
Attorneys for MGA Parties