1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    michaelzeller@quinnemanuel.com
     865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
5  Facsimile:   (213) 443-3100

6  Attorneys for Mattel, Inc.

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                   SOUTHERN DIVISION

10 MATTEL, INC., a Delaware            CASE NO. CV 04-9049 DOC (RNBx)
   corporation,                       Consolidated with
11                                     Case No. CV 04-09059
                 Plaintiff,            Case No. CV 05-02727
12
        vs.
13                                     Hon. David O. Carter
   MGA ENTERTAINMENT, INC., a
14 California corporation, et al.,     [PUBLIC REDACTED] MATTEL,
                                       INC.'S OPPOSITION TO THE MGA
15               Defendant.            PARTIES' MOTION TO COMPEL
                                       DOCUMENTS FROM MATTEL INC.
16 ─────────────────────────          CONCERNING MATTEL'S THEFT OF
                                       COMPETITORS' CONFIDENTIAL
   AND CONSOLIDATED ACTIONS            INFORMATION
17
18                                     Date:   TBD
                                       Time:   TBD
19                                     Place:  Courtroom 9D

20                                     **Phase 2**
                                       Fact Discovery Cut-off:  October 4, 2010
21                                     Pre-trial Conference:  January 4, 2011
                                       Trial Date:  January 11, 2011
22
23
24
25
26
27
28

00505.07975/3665700.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................1

I.   MGA HAS NO BASIS TO SEEK DOCUMENTS RELATING TO
     OTHER COMPETITORS ...........................................................................12

     A.   MGA And Other Toy Companies Do Not Treat Toy Fair
          Showrooms As Trade Secrets...........................................................12

     B.   Information From Other Competitors Is Irrelevant to MGA's
          Unclean Hands Defense ...................................................................14

II.  BECAUSE MATTEL HAS PRODUCED MGA INFORMATION,
     MGA'S DEMAND TO INSPECT MATTEL'S NINTH FLOOR
     "LIBRARY" SHOULD BE DENIED...........................................................16

III. MATTEL HAS PRODUCED THE APPROPRIATE DOCUMENTS
     FOR THE SPECIFIC PHASE 1 AND PHASE 2 DOCUMENT
     REQUESTS THAT MGA RELIES ON IN ITS MOTION ..........................17

     A.   Four of the Requests at Issue Concern Only MGA's Confidential
          Information ........................................................................................18

     B.   Two of the Requests at Issue Concern Mattel's Answer and
          Affirmative Defenses,  Not MGA's ...................................................19

     C.   Mattel Has Already Produced Voluminous Records Relating to
          Competitive Analyses of the Doll Industry.......................................19

     D.   Mattel Has Produced the Appropriate Documents for MGA's
          Phase 2 Requests ..............................................................................19

# TABLE OF AUTHORITIES

**Page**

## Cases

Alcatel USA, Inc. v. DGI Tech., Inc.,
  166 F.3d 772 (5th Cir. 1999) ....................................................................15

Cohn v. Papke,
  655 F.2d 191 (9th Cir. 1981) ...................................................................13

Friend v. Time Mfg. Co.,
  2006 WL 2135807 (D. Ariz. July 28, 2006).............................................14

Gaston v. Pleasant Valley State Prison,
  250 Fed. Appx. 783 (9th Cir. 2007)..........................................................13

Hashim v. First Nat. Bank of Chicago,
  1987 WL 6562 (N.D. Ill., Feb. 12, 1987) .................................................16

J.W. v. City of Oxnard,
  2008 WL 4810298 (C.D. Cal. Oct. 27, 2008)...........................................14

Newman v. Checkrite California, Inc.,
  912 F. Supp. 1354 (E.D. Cal. 1995)..........................................................15

O'Connor v. Boeing N. Am., Inc.,
  2005 WL 6035256 (C.D. Cal. Aug. 9, 2005).............................................14

Perfect 10, Inc. v. Cybernet Ventures, Inc.,
  213 F. Supp. 2d 1146 (C.D. Cal. 2002) .....................................................15

Ricciardi v. Bentley,
  44 Fed. Appx. 236 (9th Cir. 2002).............................................................13

Starsight Telecast v. Gemstar Dev. Corp.,
  1995 U.S. Dist. LEXIS 22006 (N.D. Cal. Aug. 11, 1995) ........................15

United States v. Alfonso,
  759 F.2d 728 (9th Cir. 1985) ....................................................................13

United States v. Arambula-Ruiz,
  987 F.2d 599 (9th Cir. 1993) ....................................................................13

## Statutes

Fed. R. Evid. 404...........................................................................................13

1

Fed. R. Evid. 406..................................................................................13, 14

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00505.07975/3665700.1

MATTEL. INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS

## Preliminary Statement

Nothing in MGA's newest discovery dispute has anything to do with MGA, much less with this case.  Relying on the statements of a disgruntled former Mattel employee, Sal Villasenor,  MGA accuses Mattel of "stealing" information (that is, seeing products on display) from toy fairs for "years."  Yet, MGA has admitted repeatedly that its own information at toy fairs is not confidential.  Moreover, Mr. Villasenor testified that he never went into an MGA showroom or obtained confidential MGA information.

In its motion, MGA urges that it needs access to every piece of information that Mattel has ever collected from any of its competitors.  This demand is dramatically overbroad.  As MGA acknowledges, it has no idea what type of information its competitors actually treat as confidential.  In its original answer and counterclaims, MGA did not accuse Mattel of ever stealing any confidential information from it, making this fishing expedition not only overbroad but also irrelevant.  To the extent MGA intends to rely on its newly filed claims to justify its request, that reliance is premature at best, since the Court has yet to decide whether those claims were properly filed.  Moreover, even if they were, MGA's request is still overbroad and unjustified: while MGA alleges that Mattel stole "trade secrets," ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████  And, as MGA itself has argued, an unclean hands defense is limited to activities between the litigants, not just general allegations of misconduct.

With regard to the rest of its motion, MGA is simply trying to concoct a discovery dispute.  MGA asserts that Mattel should have to produce all documents identified by Mr. Villasenor by "a date certain."  But MGA does not identify anything

1   from Mr. Villasenor that it has not received.  To the contrary, MGA's own motion

2   makes clear that Mattel has produced extensive documentation relating to Mr.

3   Villasenor.  This motion should be denied in full.

### Statement of Facts

5   <u>Sal Villasenor Collects Information On Competitors.</u>   Mattel's Market

6   Intelligence Department collects information regarding what competitors are doing,

7   what the industry is doing, and consumer trends.  Sources of information include

8   magazines, internet, trade publications, NPD Funworld (which tracks sales by

9   competitors) and competitive products purchased at retail. Sal Villasenor worked in

10  the Market Intelligence Department (and its predecessor, the Marketing and Business

11  Analysis Department) from 1999 to 2005, where his primary role was preparing

12  reports from these publicly available sources.



26  [1]  <u>See</u> Villasenor Depo., at 177:18-178:4, 179:5-6, 179:25-180:5.

27  [2]  <u>See</u> Villasenor Depo., at 111:5-10 (

MATTEL. INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS



| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |

[3]  Id. at 58:13-15.
[4]  Id. at 27:16-28:2; 57:18-59:7.

[5]  See M 1679755.
[6]  Id.
[7]  See M 1663320.

<u>MGA Enters Mattel Showrooms at Toy Fairs and Considers Hiring Villasenor.</u>

MGA proclaims that it is "shock[ed]" to learn about Mr. Villasenor "[a]fter four long years of discovery." (Mot. at 1). However, MGA has known of Mr. Villasenor and his activities since at least *2004*. Former Mattel employee Gustavo Machado left Mattel and was hired by MGA on April 19, 2004. When he joined MGA, Machado had knowledge of Villasenor's activities. Indeed, MGA's August 16, 2010 pleading *affirmatively alleges* that Machado *received the reports* prepared by Villasenor that contain MGA's purported trade secrets obtained from toy fair show rooms.[8]

Former MGA senior executive Ron Brawer testified that before he joined MGA in October 2004, he had heard *from Sal Villasenor himself* that:



_____

[8]   See Docket No. 8583 at ¶ 14 ("Mattel thieves then assembled presentations of hundreds of pages to be copied and distributed on a worldwide basis. These massive presentation documents included page after page of unauthorized reproductions of photos and catalog pages depicting the competitor products . . . . Ironically, at least one of the recipients of such presentations was Counter-Defendant Gustavo Machado, to whom one or more presentations were sent in Mexico while he was still employed by Mattel Servicios.").

[9]   See Deposition Transcript of Ron Brawer, Vol. 2 ("Brawer Depo., Vol. 2"), at 640:25-641:6; 645:14-18. See also <u>id.</u> at 643:9-14 (Q███████████████████████████████████████████████████). Moreover, Brawer obviously informed MGA's lawyers — they questioned Mattel's witnesses about these exact allegations over two years ago. See Adrienne Fontanella Depo., dated January 16, 2008, at 203:12-16 ("Do you know an individual by the name of Sal Villasenor, V-i-l-l-a-s-e-n-o-r?"); Matt Bousquette Depo., dated May 17, 2008, at 287:24-288:6 ("███████████████████████████████████████"). MGA also raised these

1       Far from being outraged, once Brawer learned that Mr. Villasenor was no

2   longer working at Mattel, he proposed hiring him at MGA.  Brawer forwarded Mr.

3   Villasenor's contact information to Gustavo Machado and suggested him as a

4   ███████████████████████████."[10]

5       In fact, to the extent Mattel was "stealing" competitive information, as MGA

6   insists on describing it, from trade shows, MGA was doing the same thing. One MGA

7   employee, Sean Brower, told Isaac Larian that at the Target Expo, which he attended

8   with two other MGA employees, he "██████████████████████████████

9   ████████████████████████████████."[11] He

10  also told Larian ████████████████████████████████

11  ████████████[12]  Larian's response: "███████████"[13]

12      In light of these activities, it should come as no surprise that Isaac Larian, as

13  MGA's corporate designee, testified ████████████████████████

14  █████████████████████████████████.[14]  He

15  also testified ████████████████████████████████

16  ████████████████████████████████████

17

18

_____

19  allegations in its unclean hands defense over three years ago.  See Docket No. 807 at 20.

20  [10]  See MGA2 0146309.

21  [11]  See MGA2 1763053-54.
    [12]  Id.

22  [13]  Id.
    [14]  Deposition Transcript of Isaac Larian [30(b)(6)], Vol. 15, at 3867:5-9

23  ("████████████████████████████████████

24  ████████████████████████████████

25  █████████); See also Deposition Transcript of Isaac Larian
    [30(b)(6)], Vol. 11, at 2816:13-23 ("█████████████████████

26  █████████████████████████████████████

27  ███████████████████████. He further
    testified that █████████████████████. Deposition Transcript of

28  Isaac Larian [30(b)(6), Vol. 16 (ROUGH), at 182:17-25.

-5-

MATTEL. INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS

1   ███████████████████████.[15] Further confirming that it treated the information in its

2   showrooms as non-confidential, MGA invited the press and trade publications into its

3   showrooms – people whose sole purpose is to disseminate the information and

4   products that are displayed and marketed in the showrooms.   Larian even ██████

5   ████████████████████████████████████████████████████████

6   ████████████████████████[16]

7   _Mr. Villasenor Never Obtained Any Information from an MGA Showroom._   In

8   contrast to MGA's employees, Mr. Villasenor testified: ████████████████

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  █████████████:

13  ██████████████████████

14  ██████████

15  ███

16  █████████████████████████████████████████████

17  █████████████████████████████████████████

18  █████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████

21  ████████████████

22  This _**includes**_ Sharon Rahimi, whom MGA falsely claims was hired "expressly

23  to help steal MGA information" (Mot. at 6:11-12):

24

25  ───────────────────────
    [15]  Id. at 302:19-303:17.
26  [16]  See Machado Depo, Vol. 3, at 248:14-22.
    [17]  Villasenor Depo., at 74:20-21.
27  [18]  Id. at 76:21-77:5.  Like MGA, Mattel has omitted objections and other lawyer
28  colloquy.

1   ████████████████████████████████████

2   ████████████████████████

3   Mr. Villasenor explained ███████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████████████

5   ████████████████████████████████   This testimony is also supported by

6   MGA's Ron Brawer, who testified that ████████████████████████████████████

7   ████████████████████████████████████████████████████.[21]

8       In fact, ██████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  █████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ██████████████████████████████.[25]

21

22  ────────────────────
    [19]  Id. at 84:21-23.

23  [20]  Villasenor Dep. at 78: 3-25.
    [21]  See Brawer Depo., Vol. 2, at 641:22-24 ("██████████████████████████

24  █████████████████████████████████████████████████████████████████████

25  ██████). [22] ████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████████

27  [23]  Id. at 74:9-13.

28  [24]  Id. at 325:23-326:1.

MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS

1   Moreover, Mr. Villasenor testified that ██████████████████████

2   ████████████████████████████████████

3   ████████████████████████████████████████

4   ████████████████████████████

5   ████████████████████████████████████████████

6   ████████████

7   ██████████ 26

8   Further, during Mr. Villasenor's deposition, he was shown numerous

9   documents and testified that ████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████:

12  •   **Ex. 9291** [the "DEFCON" report]:

13  ████████████████████████████████████

14  ████████████████████████████████████

15  ████████████████████████

16  ████████████████████████████████████

17  ████████████████

18  ████████████████████████████████████████

19  ████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████

22  ████████

23  •   **Ex. 9268**:

24

---

25   25 <u>Id.</u> at 168:14-23. ██████████████████████████

26   ██████████████. <u>Id.</u> at 327:19-12.

     26 <u>Id.</u> at 326:13-22.

27   27 <u>Id.</u> at 236:6-11.

28   28 <u>Id.</u> at 236:16-237:15.



1

2

3

[redacted]

4

5

6 [30]

7

8 • **Ex. 9274:**

9

10

11

12

13

14 [31]

15

16 • **Ex. 9275:**

17

18 [32]

19

20 • **Ex. 9276:**

21 [33]

22

23 • **Ex. 9277:**

24

25

26 [29] Id. at 111:5-10.

27 [30] Id. at 119:3-6.

[31] Id. at 140:18-141:1.

[32] Id. at 165:3-6.

28 [33] Id. at 173:24-174:2.

1

2

3

4

5

6

7

- **Ex. 9278**:

8

9

10

- **Exs. 9279 and 9280**:

11

12

13

14

15

16

- **Ex. 9281**:

17

18

19

- **Ex. 9282**:

20

21

22

- **Ex. 9283**:

23

24

25

26

27

28

---

[34] <u>Id.</u> at 183:12-19.
[35] <u>Id.</u> at 185:21-186:4.
[36] <u>Id.</u> at 187:14-19.
[37] <u>Id.</u> at 191:20-22.
[38] <u>Id.</u> at 194:5-6.

1  ███████

2  ████████████████████████

3  ██████████████████

4  •  **Ex. 9284**:

5  ████████████████████████

6  ██████████████████████████████

7  ██████████████████████████

8  ████████████████████████████

9  ████████████████████

10  ██████████████████████████████

11  ██████████████████████████

12  •  **Ex. 9287**:

13  ████████████████████████████

14  ████████

15  •  **Ex. 9289**:

16  ██████████████████████████████

17  ██████████████████████████

18  ████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████

24  ████████████████████████████████████

25

26

27

28

---

[39]  Id. at 195:17-23.
[40]  Id. at 197:19-23.
[41]  Id. at 198:4-11.
[42]  Id. at 215:2-5.
[43]  Id. at 229:7-12.

MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS

1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ████████████████████████████████[45]

4                            **Argument**

5 I.    **MGA HAS NO BASIS TO SEEK DOCUMENTS RELATING TO**

6       **OTHER COMPETITORS**

7            A.    **MGA And Other Toy Companies Do Not Treat Toy Fair**

8                  **Showrooms As Trade Secrets**

9            MGA urges the Court to compel Mattel to produce documents evidencing "its

10 theft of confidential information improperly obtained at toy fairs from other

11 competitors." (Mot. at 21).  According to MGA, Mattel should have to produce any

12 material it ever obtained from competitor showrooms—such as price lists or catalogs--

13 because such information is relevant to its allegations that Mattel misappropriated

14 trade secrets from MGA.

15            But this discovery request is hopelessly overbroad.  First, the only allegations as

16 to which this information is even potentially relevant are those in its newest

17 counterclaim.  This Court has yet to decide whether those claims were properly filed,

18 or whether they should simply be dismissed.  To insist on a massive search at this

19 point, on that basis alone, is premature.

20            Moreover, even as to those claims, this request is overbroad and, ultimately,

21 irrelevant.   MGA's own corporate designee admitted that ████████████████

22 ████████████████████████████████████████████████████

23 ████████[46]  Indeed, other toy companies make their toy fair showrooms open to the

24 general public.  Any catalogs, price lists, or other marketing materials collected from

25

26 [44] Id. at 139:4-8.

27 [45] Id. at 135:9-10.
   [46] See, e.g., Deposition Transcript of Isaac Larian [30(b)(6)], Vol. 16

28 (ROUGH), at 125:23-126:2.

1 | competitors' showrooms are not "confidential" or "trade secret" information. That

2 | Mattel has collected, or possesses, such documents from competitors proves

3 | absolutely nothing about whether it has stolen "trade secrets" from MGA. Moreover,

4 | not only did Mr. Villasenor testify that ███████████████████████████████ but

5 | MGA itself repeatedly admitted that it ████████████████████████████████

6 | ██████████████████████████████████████████████████████████████, [47]

7 | undercutting even further not only its own claims on the merits but the relevance of

8 | what it is seeking as to other competitors.

9 |       MGA's argument that such documents might be relevant to showing a "pattern

10 | and practice" of improperly obtaining confidential information from competitors fails

11 | on the same grounds. Rule 404 of the Federal Rules of Evidence specifically prohibits

12 | the admission of character evidence "for the purpose of proving that the individual

13 | acted in conformity with that character on a particular occasion" or "to show a

14 | propensity or proclivity to commit bad acts." Ricciardi v. Bentley, 44 Fed. Appx. 236,

15 | 237 (9th Cir. 2002) (citing Cohn v. Papke, 655 F.2d 191, 193-94 (9th Cir. 1981);

16 | United States v. Arambula-Ruiz, 987 F.2d 599, 605 (9th Cir. 1993)) (reversing based

17 | on improper admission of habit evidence and noting argument that evidence

18 | constituted habit "confirms that it was offered as propensity evidence"); United States

19 | v. Alfonso, 759 F.2d 728, 739 (9th Cir. 1985) (reversing conviction and holding

20 | "[e]vidence of specific wrongful conduct is not admissible to prove the character of a

21 | person or to show that he acted in conformity with such alleged character"). The act

22 | of obtaining information, or even evidence of the alleged use of false identification to

23 | enter competitors' showrooms, is not the type of "reflexive or semi-automatic

24 | behavior" admissible under Rule 406 to establish any habit or routine practice relevant

25 | to the trade secret allegations MGA claims to be investigating. See Gaston v. Pleasant

26 | Valley State Prison, 250 Fed. Appx. 783, 784 (9th Cir. 2007) (affirming exclusion of

27 | ───────────────────────────────────────────
[47] See Deposition Transcript of Isaac Larian [30(b)(6), Vol. 16 (ROUGH), at

28 | 180:7-11, 182:17-25, and 189:13-16.

"evidence of habit that did not involve reflexive or semi-automatic behavior"); <u>J.W. v. City of Oxnard</u>, 2008 WL 4810298, at *8-9 (C.D. Cal. Oct. 27, 2008) (ruling inadmissible habit evidence of prior wrong that did not "go toward proving his 'regular response to a specific situation,' as it fails to provide any evidence of behavior that was 'reflexive' or that occurred with 'regularity'").[48]   <u>O'Connor v. Boeing N. Am., Inc.</u>, 2005 WL 6035256, at *31 (C.D. Cal. Aug. 9, 2005) (evidence offered to show that a company repeatedly engaged in improper conduct did not satisfy the habit exception to the rule that character evidence is inadmissible because the company's "actions were not reflexive and do not have the required specificity to be considered a habit").   Moreover, the "habit" here is all but irrelevant to the newly-asserted claims of trade secret theft, since there is no proof that the competitors' information was confidential or that the documents in Mattel's files which would be produced were "stolen," much less that MGA considered its own showroom information to be confidential or that Mr. Villasenor ever entered those showrooms in any event.   Requiring Mattel to sort through all of the information it possesses about its competitors does not advance MGA's trade secret claims, and cannot be justified by them.

**B.    <u>Information From Other Competitors Is Irrelevant to MGA's Unclean Hands Defense</u>**

---

[48]   <u>See also</u> <u>Friend v. Time Mfg. Co.</u>, 2006 WL 2135807, at *10 (D. Ariz. July 28, 2006) (excluding evidence of habit that was not "frequent enough to qualify as habit" and did not "show that Friend's actions were 'semi-automatic,' such as 'the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving'"); <u>Fed. R. Evid.</u> 406, Advisory Committee Notes ("A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.") (citation omitted).

1    MGA also urges that documents with information obtained from other

2  competitors are relevant to its "unclean hands" defense. (Mot. at 22-23) But the law

3  is clear that the only conduct relevant to unclean hands is misconduct *between the*

4  *parties*. See Alcatel USA, Inc. v. DGI Tech., Inc., 166 F.3d 772, 796-97 (5th Cir.

5  1999) ("To invoke the doctrine [of unclean hands] a defendant must show that he was

6  injured by the plaintiff's wrongful acts."); Perfect 10, Inc. v. Cybernet Ventures, Inc.,

7  213 F. Supp. 2d 1146, 1189 (C.D. Cal. 2002) ("The unclean hands doctrine may apply

8  when the alleged misconduct occurs in a transaction directly related to the matter

9  before the court and the conduct affects the equitable relationship between the

10  litigants."); Newman v. Checkrite California, Inc., 912 F. Supp. 1354, 1376 (E.D.

11  Cal. 1995) ("with regard to the equitable defense of unclean hands, that an equitable

12  bar to relief applies 'only if the inequitable conduct occurred in a transaction directly

13  related to the matter before the court and affects the equitable relationship between the

14  litigants.' . . . . Accordingly, these defendants may not rely upon alleged inequitable

15  conduct directed to the [nonparties]") (citation omitted).

16    Indeed, on August 9, 2010, ***one day before filing this motion***, MGA argued to

17  the Court that actions taken by a party against a non-party to the lawsuit are irrelevant

18  to any alleged defense of unclean hands. Specifically, on page 8 of MGA's Oppn. to

19  Mattel's Mot to Comp. Prod. of Documents re:  Unclean Hands Defense, the MGA

20  represented to the Court that:

21        The elements of an unclean hands defense are: '1) a party seeking

22        affirmative relief 2) is guilty of conduct involving fraud, deceit,

23        unconscionability, or bad faith 3) directly related to the matter in issue

24        4) that injures the other party 5) and affects the balance of equities

25        between the litigants.'"

26  Dkt # 8488 at 8:9-14 (citing Starsight Telecast v. Gemstar Dev. Corp., 1995 U.S.

27  Dist. LEXIS 22006, *11 (N.D. Cal. Aug. 11, 1995)) (emphasis added by MGA).

28

1    Thus, even if Mr. Villasenor did somehow obtain the trade secret information of

2    other competitors, which he did not, that conduct would not be relevant to the MGA

3    Parties' unclean hands affirmative defense because the conduct was not directed to

4    MGA.  As a result, MGA's requests for documents Mattel obtained about other

5    competitors are not the proper subject of discovery in this litigation, and MGA's

6    Motion to Compel additional documents should be denied.  See Hashim v. First Nat.

7    Bank of Chicago, 1987 WL 6562 (N.D. Ill., Feb. 12, 1987) (denying motion to compel

8    documents supposedly relevant to an unclean hands defense because "[f]or the

9    'unclean hands' doctrine to be applicable here, the alleged misconduct must be in

10   connection with the very transaction at issue and must be directed towards First

11   Chicago" and "[t]he allegation that Hashim used money stolen from third parties to

12   purchase Corporate Atrium I is not misconduct connected with that transaction or

13   misconduct directed towards First Chicago … The 'bottom line' is that as long as

14   Hashim's dealings with First Chicago were on 'the up and up', irrespective of how he

15   dealt with others, First Chicago was dutibound to properly manage his property.").

16   **II.    BECAUSE MATTEL HAS PRODUCED MGA INFORMATION,**

17   **MGA'S DEMAND TO INSPECT MATTEL'S NINTH FLOOR**

18   **"LIBRARY" SHOULD BE DENIED**

19   In its efforts to manufacture a discovery dispute, MGA also requests that it be

20   allowed to inspect Mattel's "9th floor library." (Mot. at 24).  But MGA drastically

21   mischaracterizes Mr. Villasenor's statements to make this request.  Mr. Villasenor

22   testified that the Market Intelligence Department shared a library on the Ninth Floor

23   with many other departments.[49]  Contrary to MGA's assertions, there was no "section

24   of the library dedicated to stolen MGA materials" (Mot. at 12:25-26) – Mr. Villasenor

25   said █████████████████████████████████████

26

27

28   _____

     [49]    Villasenor Depo., at 146:19-20.



1

2

3

4

5

6

7    Nor did Mr. Villasenor state

8

9

10    [53]

11    As such, because Mattel has produced the MGA materials from the 9th floor,

12    and because other competitor's materials are irrelevant, MGA's request for this

13    inspection should be denied.

**III.    MATTEL HAS PRODUCED THE APPROPRIATE DOCUMENTS FOR THE SPECIFIC PHASE 1 AND PHASE 2 DOCUMENT REQUESTS THAT MGA RELIES ON IN ITS MOTION**

17    Besides its far-reaching requests for documents that have nothing to do with this

18    case, MGA also asks the Court to "set a date certain" for production of documents

---

[50]   Villasenor Depo., at 49:15-19.  Moreover, Mr. Villasenor stated that

See Deposition Transcript of Isaac Larian [30(b)(6)], Vol. 15, at 3867:5-9.

[51]   Contrary to MGA's assertions, Mattel has also produced personnel files for Carey Plunkett, Sharon Rahimi, Jeff Lange, and Kelly Osier even though MGA did not request such documents until July 19, 2010, in MGA's Ninth Set of Document Requests.

[52]   Villasenor Depo., at 50:9-10.

[53]   Id. at 150:22-24.

00505.07975/3665700.1

MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS

1  identified by Villasenor that Mattel is supposedly refusing to produce. (Mot. at 15).

2  There are no such documents, and thus no need for any "date certain." Mattel has

3  already provided MGA with comprehensive discovery.

4  **A.**  **Four of the Requests at Issue Concern Only MGA's Confidential**

5  **Information**

6  MGA insists that Mattel should be compelled to provide documents in response

7  to Request Nos. 16, 17, and 31 of its First Set of Requests, and Request No. 476 from

8  its Fifth Set of Requests, which concern documents relating to MGA's allegedly

9  confidential information. But, as discussed above, Mattel has produced such

10 information, including marketing materials and price lists. Production of these

11 materials, however, does not mean that they were actually "confidential" to MGA,

12 much less that they came from MGA showrooms. As Mr. Villasenor never entered

13 any of MGA's private showrooms to obtain MGA's allegedly confidential

14 information, these requests do not relate to Mr. Villasenor.[54] Mr. Villasenor also

15 testified that ███████████████████████████████████████████

16 ████████████████████████.[55]

17      Furthermore, documents related to Mr. Villasenor are not responsive to Request

18 No. 476 because the Discovery Master limited that request—at MGA's urging—to

19 documents related to MGA's "laches and statute of limitations" defense to Mattel's

20 Phase 2 claims.[56] Perhaps MGA intended to limit production to documents related to

21 its unclean hands affirmative defense, but MGA cannot overrule the Discovery

22 Master's limitation or blame Mattel for its own mistake.

23

24 [54]  Villasenor Depo. at 74:15-76:17; 78:3-25. Mr. Villasenor testified ████████

25 ████████████████████████████████████████. Villasenor Depo. at 76:1-6.

26 [55]  Villasenor Depo. at 76:21-77:5

27 [56]  Order No. 89, Regarding: Motion Of MGA Entertainment, Inc. To Compel
   Responses to 918 Document Requests, dated January 13, 2010, at 13 (Docket No.
28 7396).

**B.**   **Two of the Requests at Issue Concern Mattel's Answer and**

**Affirmative Defenses, Not MGA's**

MGA also moves for a date certain on Request Nos. 114 and 115 of MGA's First Set of Requests, asserting that they call for documents concerning Mr. Villasenor's activities. (Mot. at 16-17). However, both of those requests concern *Mattel's* Answer and *Mattel's* affirmative defenses to MGA's 2005 Complaint, *not MGA's* affirmative defense of unclean hands to Mattel's claims or any additional allegations asserted in MGA's recently filed "Counterclaims-in-Reply." None of Mattel's allegations in its Answer or affirmative defenses to the 2005 Complaint implicate Mr. Villasenor's alleged activities. Thus, these requests do not call for further documents about Mr. Villasenor's activities either.

**C.**   **Mattel Has Already Produced Voluminous Records Relating to**

**Competitive Analyses of the Doll Industry**

MGA's also moves to compel documents related to market research, competitive studies and analyses concerning the fashion doll market. But MGA knows full well that Mattel has already produced over a thousand pages of such reports, including comparative studies and analyses of Bratz and Mattel's products. Reports responsive to this Request were prepared using consumer research and NPD data. Mattel is required to produce nothing further.

**D.**   **Mattel Has Produced the Appropriate Documents for MGA's**

**Phase 2 Requests**

In the end, MGA is only moving on a single request that specifically calls for documents concerning Mr. Villasenor's activities: Request 323, which was not served until ***June 18, 2010.***[57] That request seeks documents relating to the practice of *anyone* at Mattel visiting the showrooms of competitors during the New York or Hong

---

[57]   MGA's Motion states these were served on June 8, 2010, but paragraph 2(v) of the Declaration of William Molinski and the signature page on Exhibit 5, page 39 confirm that the RFPs were dated June 18, 2010.

MATTEL. INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS

1    Kong Toy Fairs – and was not limited on its face to information Mattel had obtained

2    about MGA.  Under the <u>Federal Rules of Civil Procedure</u>, the earliest date MGA had

3    the right to demand production of responsive documents was 30 days after the RFP

4    was served, July 19, 2010 – one week ***after*** MGA had scheduled Mr. Villasenor's

5    deposition.

6       Despite the overbreadth of this request, Mattel produced responsive documents

7    – which are cited at length in MGA's Motion – including several that were produced

8    well ahead of Mattel's obligations under the <u>Federal Rules</u>, specifically so that MGA

9    could use them at the Villasenor deposition.  These documents were properly limited

10    to those pertaining to MGA – that is, those relevant to this litigation.

11       MGA speculates there might be photographs from MGA showrooms at the Toy

12    Fairs because " ██████████████████████████████████████

13    ██████████████████████████████████████████████

14    ██████████████████████████████████████████████

15    ██████████████████████████████████████████████

16    ██████████████████████████████████████████████

17    ████████████████████████ Villasenor Depo, at 50:14-19.

18    Accordingly, MGA has the materials that are appropriately responsive to Request 323.

19                   **<u>Conclusion</u>**

20       For the foregoing reasons, MGA's motion should be denied in all respects.

21

22    DATED:  September 3, 2010      QUINN EMANUEL URQUHART & SULLIVAN. LLP

23

24                     By_/s/ Michael T. Zeller_____

25                      Michael T. Zeller
                        Attorneys for Mattel. Inc.

26

27

28

MATTEL. INC.'S OPPOSITION TO MGA PARTIES' MOTION TO COMPEL RE: COMPETITORS