QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al.,<br><br>             Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS<br><br>**PUBLIC REDACTED VERSION** | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br><u>Hon. David O. Carter</u><br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE AND/OR DISMISS MGA ENTERTAINMENT, INC.'S PURPORTED "COMPULSORY COUNTERCLAIMS IN REPLY"; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Hearing Date: TBD<br>Time:     TBD<br>Place:    TBD<br><br>Discovery Cut-off:  October 4, 2010<br>Pre-trial Conf:    January 4, 2011<br>Trial Date:      January 11, 2011 |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on such date and time as the Court may order,

3  before the Honorable David O. Carter, United States District Judge, located at 411 West

4  Fourth Street, Santa Ana, California 92701, Mattel, Inc. ("Mattel") will and hereby does

5  move this Court pursuant to <u>Federal Rules of Civil Procedure</u> 7(a), 12(b)(6), 12(f), 13(a),

6  15(a), and <u>California Code of Civil Procedure</u> § 425.16, for an order dismissing all

7  affirmative claims alleged against Mattel in MGA Entertainment, Inc.'s Reply to Fourth

8  Amended Answer and Counterclaims, including the purported Compulsory

9  Counterclaims-in-Reply for (1) Trade Secret Misappropriation, (2) Violation of the

10 Racketeering Influenced and Corrupt Organizations Act, and (3) Wrongful Injunction

11 (hereinafter "MGA's Reply"), and awarding Mattel its attorney's fees incurred in

12 bringing this motion.

13     This motion to strike and/or dismiss is made on the grounds that MGA's Reply

14 was filed without leave of Court, fails to state any claims upon which relief can be

15 granted, states a claim for which MGA lacks standing, violates the litigation privilege,

16 and violates California's Anti-SLAPP statute.

17     This motion is based on this Notice of Motion, the Memorandum of Points and

18 Authorities, the supporting declarations and exhibits, the records and files of this Court,

19 and all other matters of which the Court may take judicial notice.

20                          **<u>Certificate of Compliance</u>**

21     This motion is made following the conference of lead counsel on August 23, 2010.

22

23 DATED: September 7, 2010          QUINN EMANUEL URQUHART &
                                     SULLIVAN. LLP
24

25                                   By /s/ Michael T. Zeller
26                                      Michael T. Zeller
                                        Attorneys for Mattel. Inc.
27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ....................................................................................................... 1

ARGUMENT ............................................................................................................ 9

I.   MGA'S COUNTERCLAIMS IN REPLY SHOULD BE STRICKEN ............ 9

   A.   Counterclaims In Reply Filed Without Leave Are Permitted, If At All, Only When They Are Compulsory .......................................... 9

   B.   MGA's Counterclaims In Reply Are Not Compulsory ...................... 10

   C.   Leave To Amend Should Be Denied ................................................. 11

      1.   MGA's Delay Is Inexcusable ................................................ 12

      2.   Allowing The New Claims At This Stage In The Litigation Would Be Highly Prejudicial To Mattel ................................. 13

      3.   The Counterclaims In Reply Were Brought In Bad Faith ........ 17

      4.   Amendment Would Be Futile ................................................ 18

   D.   The Court Should Strike MGA's Wrongful Injunction Claim ........... 19

II.  MGA'S WRONGFUL INJUNCTION CLAIM SHOULD BE DISMISSED BECAUSE MGA LACKS STANDING ................................. 20

III. MGA'S WRONGFUL INJUNCTION CLAIM SHOULD BE DISMISSED OR STRICKEN UNDER CALIFORNIA'S ANTI-SLAPP STATUTE ................................................................................... 22

   A.   MGA Has Not Alleged An Action On A Bond Because A Bond Was Neither Required Nor Posted ................................................. 22

   B.   MGA Has Not Alleged An Unjust Enrichment Claim Because It Seeks Damages Rather Than Restitution ....................................... 23

   C.   MGA Has Not Alleged A Malicious Prosecution Claim and Cannot do So ............................................................................... 24

   D.   MGA's Wrongful Injunction Claim Should Be Stricken Under California's Anti-SLAPP Statute And Mattel Should Be Awarded Its Attorneys Fees ............................................................ 25

IV.  MGA'S TRADE SECRET CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ........................................................................... 26

A.   The Claim Is Barred By The Three-Year Statute Of Limitations ........ 26

B.   The Claim Does Not Relate Back To MGA's 2005 Complaint ........... 28

C.   The Claim Does Not Relate Back To MGA's August 13, 2007 Answer .................................................................................................... 29

D.   MGA's Fraudulent Concealment Allegations Are Irrelevant Because MGA Was On Notice Of The Potential Claim ...................... 30

V.   MGA'S RICO CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ........................................................................................... 31

VI.  PARAGRAPHS 41, 46, AND 47 SHOULD BE STRICKEN BECAUSE MATTEL'S MOTIVATIONS IN FILING SUIT ARE IRRELEVANT UNDER THE LITIGATION PRIVILEGE ........................ 32

CONCLUSION ................................................................................................. 34

00505.07975/3669269.1

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

Aerotech Res., Inc. v. Dodson Aviation, Inc.,
   2001 WL 474302 (D. Kan. April 23, 2001)...........................................................11

5

Amaral v. Cintas Corp. No. 2,
   163 Cal. App. 4th 1157 (2008) ...........................................................30

6

7

American Nat'l Red Cross v. United Way Cal. Capital Region,
   2008 WL 2302188 (E.D. Cal. May 30, 2008) ...........................................................35

8

AmerisourceBergen Corp. v. Dialysist West, Inc.,
9
   465 F.3d 946 (9th Cir. 2006) ...........................................................12, 13

10

AntiCancer, Inc. v. Fujifilm Medical Sys. U.S.A.,
   2010 WL 318406 (S.D. Cal. Jan. 19, 2010)...........................................................9

11

12

Ascon Props., Inc. v. Mobil Oil Co.,
   866 F.2d 1149 (9th Cir. 1989) ...........................................................14

13

Asdar Group v. Pillsbury, Madison and Sutro,
14
   99 F.3d 289 (9th Cal. 1996)...........................................................20

15

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) ...........................................................23

16

Barrington v. A. H. Robins Co.,
17
   39 Cal. 3d 146 (1985) ...........................................................31

18

Bayer CropScience, LP v. Booth,
   2005 WL 2095765 (M.D. Ga. Aug. 29, 2005)...........................................................11

19

20

Benz v. Compania Naviera Hidalgo, S.A.,
   205 F.2d 944 (9th Cir. 1953) ...........................................................23

21

Bernson v. Browning-Ferris Indus. of Cal., Inc.,
22
   7 Cal. 4th 926 (Cal. 1994)...........................................................31

23

Broadcom Corp. v. Qualcomm Inc.,
   585 F. Supp. 2d 1187 (C.D. Cal. 2008) ...........................................................20

24

Brumley v. FDCC Cal., Inc.,
25
   156 Cal. App. 4th 312 (2007) ...........................................................31

26

Buddy Sys. Inc. v. Exer-Genie, Inc,
   545 F.2d 1164 (9th Cir. 1976) ...........................................................19, 22, 23

27

28

*Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.,*
   448 F. Supp. 2d 1172 (C.D. Cal. 2006) ................................................25

*Cadence Design Sys., Inc., v. AvantA Corp.,*
   29 Cal. 4th 215 (2002) ................................................27

*Callan v. Amdahl Corp.,*
   1995 WL 261420 (N.D. Cal. April 24, 1995)................................14

*Cargill Inc. v. Progressive Dairy Solutions, Inc.,*
   2008 WL 2235354 (E.D. Cal. May 29, 2008) ................................34

*Columbia Pictures Corp. v. DeToth,*
   87 Cal. App. 2d 620 (1948) ................................28

*Conceptus, Inc. v. Hologic, Inc.,*
   2010 WL 1460162 (N.D. Cal. April 12, 2010)................................9, 10, 11

*Coronet Mfg. Co. v. Superior Court,*
   90 Cal. App. 3d 342 (1979) ................................30

*Cypress Semiconductor Corp. v. Superior Court,*
   163 Cal. App. 4th 575 (2008) ................................29

*Daso v. Grafton School, Inc.,*
   181 F. Supp. 2d 485 (D. Md. 2002)................................13

*Davis & Cox v. Summa Corp.,*
   751 F.2d 1507 (9th Cir. 1985) ................................ 9, 10, 11, 19

*Davis v. Foster Farms Dairy,*
   2007 WL 114003 (E.D. Cal. Jan. 10, 2007) ................................9

*E. & J. Gallo Winery v. Andina Licores S.A.,*
   2006 WL 1817097 (E.D. Cal. June 30, 2006) ................................34

*Equilon Enters, v. Consumer Cause, Inc.,*
   29 Cal. 4th 53 (2002) ................................25

*Erickson v. Haring,*
   2000 WL 35500986 (D. Minn. Oct. 23, 2000) ................................9, 10

*Fort Howard Paper Co. v. Standard Havens, Inc.,*
   901 F.2d 1373 (7th Cir. 1990) ................................18

*Fox v. Ethicon Endo-Surgery, Inc.,*
   35 Cal. 4th 797 (2005) ................................29

*Friedman v. 24 Hour Fitness USA, Inc.,*
   580 F. Supp. 2d 985 (C.D. Cal. 2008) ................................32

00505.07975/3669269.1

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY
COUNTERCLAIMS-IN-REPLY"

Fujitsu Ltd. v. Nanya Tech. Corp.,
 2007 WL 1660694 (N.D. Cal. June 6, 2007)..........................................11

Gengler v. U.S. ex rel. Dept. of Defense and Navy,
 463 F. Supp. 2d 1085 (E.D. Cal. 2006) ...................................................9

Glaxo Group Ltd. v. Leavitt,
 481 F. Supp. 2d 434 (D. Md. 2007).......................................................22

Golden Gate Hotel Ass'n v. City and Country of San Francisco,
 836 F. Supp. 707 (N.D. Cal. 1993), vacated on other grounds by
 18 F.3d 1482 (9th Cir. 1994) .................................................................24

Greenwood County v. Duke Power Co.,
 107 F.2d 484 (4th Cir. 1939) .................................................................24

Grimmett v. Brown,
 75 F.3d 506 (9th Cir. 1996) ...................................................................32

Guillory v. WFS Fin., Inc.,
 2007 WL 879017 (N.D. Cal. March 21, 2007)......................................34

Hilton v. Hallmark Cards,
 599 F.3d 894 (9th Cir. 2010) .................................................................25

IXYS Corp. v. Advanced Power Tech., Inc.,
 2004 WL 135861 (N.D. Cal. Jan. 22, 2004) ..........................................12

Jackson v. Bank of Hawaii,
 902 F.2d 1385 (9th Cir. 1990) ..........................................................14, 17

Jarrow Formulas, Inc. v. LaMarche,
 31 Cal. 4th 728 (2003) ...........................................................................25

Kaplan v. Rose,
 49 F.3d 1363 (9th Cir. 1994) .................................................................17

Kim v. Regents of the University of Cal.,
 80 Cal. App. 4th 160 (2000) ..................................................................30

In re Lazar,
 237 F.3d 967 (9th Cir. 2001) .................................................................10

Lever Bros. Co. v. Int'l Chemical Workers Union, Local 217,
 554 F.2d 115 (4th Cir. 1976) .................................................................22

Lewis v. Berry,
 109 F.R.D. 42 (W.D. Wash. 1985) ........................................................16

Lewis v. Hermann,
 775 F. Supp. 1137 (N.D. Ill. 1991)........................................................14

Linney v. Cellular Alaska P'ship,
   151 F.3d 1234 (9th Cir. 1998) .................................................................33

Macquarie Group Ltd. v. Pacific Corporate Group, LLC,
   2009 WL 539928 (S.D. Cal. March 2, 2009) .......................................35

In re Marshall,
   600 F.3d 1037 (9th Cir. 2010) ..............................................................10

Mattel, Inc. v. MGA Entertainment, Inc.,
   --- F.3d ----, 2010 WL 2853761 (9th Cir. July 22, 2010) ...................26

In re Milk Prods. Antitrust Litig.,
   195 F.3d 430 (8th Cir. 1999) ................................................................16

Miller v. Rykoff-Sexton, Inc.,
   845 F.2d 209 (9th Cir. 1988) ................................................................19

Monolith Portland Midwest Co. v. RFC,
   128 F. Supp. 824 (S.D. Cal. 1955).......................................19, 22, 24, 25

Morongo Band of Mission Indians v. Rose,
   893 F.2d 1074 (9th Cir. 1990) ..............................................................14

Newland v. Dalton,
   81 F.3d 904 (9th Cir. 1995) ..................................................................18

Nintendo of Am., Inc. v. Galoob Toys, Inc.,
   16 F.3d 1032 (9th Cir. 1994) ....................................................19, 23, 24

Nordstrom, Inc. v. Chubb & Son, Inc.,
   54 F.3d 1424 (9th Cir. 1995) ................................................................32

Norgart v. Upjohn Co.,
   21 Cal. 4th 383 (1999) ..........................................................................29

In re Pegasus Gold Corp.,
   394 F.3d 1189 (9th Cir. 2005) ..............................................................10

People v. Forest E. Olson, Inc.,
   137 Cal. App. 3d 137 (1982) ................................................................28

Perfect 10, Inc. v. Google, Inc.,
   2008 WL 4217837 (C.D. Cal. July 16, 2008)......................................18

Pincay v. Andrews,
   238 F.3d 1106 (9th Cir. 2001) .......................................................32, 33

Pochiro v. Prudential Ins. Co. of Am.,
   827 F.2d 1246 (9th Cir. 1987) ..............................................................10

00505.07975/3669269.1

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

Quiroz v. Seventh Ave. Center,
  140 Cal. App. 4th 1256 (2006) ..................................................30

Ribas v. Clark,
  38 Cal. 3d 355 (1985) ...............................................................34

Roberts v. Sentry Life Ins.,
  76 Cal. App. 4th 375 (1999) ......................................................26

San Diego Hospice v. County of San Diego,
  31 Cal. App. 4th 1048 (1995) ....................................................28

Scognamillo v. Credit Suisse First Boston, LLC,
  587 F. Supp. 2d 1149 (N.D. Cal. 2008) ...............................14, 15

Silberg v. Anderson,
  50 Cal. 3d 205 (1990) ...............................................................34

Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson,
  96 Cal. App. 4th 884 (2002) ......................................................31

Solomon v. N. Am. Life & Cas. Ins. Co.,
  151 F.3d 1132 (9th Cir. 1998) ...................................................16

Swanson v. U.S. Forest Serv.,
  87 F.3d 339 (9th Cir. 1996) .......................................................11

Tabra, Inc. v. Treasures de Paradise Designs, Inc.,
  1992 WL 73463 (N.D. Cal. April 4, 1992)................................20

Tanaka v. First Hawaiian Bank,
  104 F. Supp. 2d 1243 (D. Haw. 2000) .......................................32

Texaco, Inc. v. Ponsoldt,
  939 F.2d 794 (9th Cir. 1991) .....................................................12

UNR Indus., Inc. v. Continental Ins. Co.,
  623 F. Supp. 1319 (N.D. Ill. 1985) ............................................14

U.S. ex rel. Jajdelski v. Kaplan, Inc.,
  2010 WL 2326069 (D. Nev. June 7, 2010)................................17

United Motors Service v. Tropic-Aire,
  57 F.2d 479 (8th Cir. 1932) .......................................................24

Villa v. Cole,
  4 Cal. App. 4th 1327 (1992) ......................................................26

W.R. Grace & Co., Inc. v. Western U.S. Industries, Inc.,
  608 F.2d 1214 (9th Cir. 1979) ...................................................32

00505.07975/3669269.1

<u>Wade v. Knoxville Utils. Bd.</u>,
    259 F.3d 452 (6th Cir. 2001) ....................................................17

<u>Warth v. Seidlin</u>,
    422 U.S. 490 (1975) ............................................................21

<u>White v. Lee</u>,
    227 F.3d 1214 (9th Cir. 2000) ................................................35

<u>Williams v. Boeing Co.</u>,
    517 F.3d 1120 (9th Cir. 2008) ................................................32

<u>Wise v. Thrifty Payless, Inc.</u>,
    83 Cal. App. 4th 1296 (2000) ................................................34

<u>Wyle v. R.J. Reynolds Indus., Inc.</u>,
    709 F.2d 585 (9th Cir. 1983) ..................................................32

<u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>,
    401 U.S. 321 (1971)............................................................14

## **Statutes**

<u>Cal. Bus. & Prof. Code</u> § 17200 ....................................................20

<u>Cal. Civ. Code</u> § 3426.6 ...........................................................27

<u>Cal. Code Civ. Proc.</u> § 425.16 .............................................1, 25, 26

<u>Fed. R. Civ. P.</u> 13(a) ..........................................................10, 19

<u>Fed. R. Civ. P.</u> 30(b)(6) .............................................................6

## **Miscellaneous**

Dobbs, <u>Law of Remedies</u> § 4.1(1) ..................................................24

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

On August 16, 2010, less than two months before the October 14 discovery cut-off, less than five months before the scheduled trial date, and after the effective deadline to serve written discovery, MGA sought to radically expand this case by asserting three purported "compulsory counterclaims-in-reply" in its answer to Mattel's Fourth Amended Answer and Counterclaims ("FAAC"). These claims should be stricken under Rule 12(f) because MGA did not obtain leave to amend its complaint under Rule 15(a). There is nothing "compulsory" about these counterclaims such that they even arguably could be brought in this fashion, and if they were compulsory they were equally compulsory more than three years ago when Mattel first filed *its* counterclaims and MGA first answered them *without* asserting counterclaims in reply. MGA deliberately delayed bringing these claims; it has known about them since at least 2004. It should not be permitted to sandbag Mattel by bringing them now. And in any case, even if not stricken, the claims should be dismissed under Rule 12(b)(1), Rule 12(b)(6), and California's anti-SLAPP statute. The claims facially lack merit.

### Background

**MGA's Tardy Claims.** On August 9, 2010, MGA insisted to the Court "that discovery must close now" and demanded an "immediate" discovery cut-off.[1] In doing so, MGA never even suggested that it intended to radically broaden the scope of the litigation just as discovery was ending. Yet that is precisely what it has purported to do through its Reply.[2] MGA did not seek leave to add its new counterclaims; did not attempt to justify bringing them just months before trial in a six-and-a-half year old case;

---

[1] Stipulation of the Parties Regarding Pre-Trial Dates and Briefing Schedules, dated August 9, 2010, at Ex. A (Docket No. 8495).
[2] MGA Entertainment, Inc.'s Reply to Fourth Amended Answer and Counterclaims, Including Affirmative Defenses and Compulsory Counterclaims-In-Reply For (1) Trade Secret Misappropriation, (2) Violation Of The Racketeering Influenced and Corrupt Organizations Act, and (3) Wrongful Injunction, dated August 16, 2010 at ¶¶ 304-321 (Docket No. 8583).

1   and did not explain why it waited years to file these supposed "compulsory"
2   counterclaims when it knew the underlying facts at least as of 2004.

3        MGA's new claims are for trade secret misappropriation, wrongful issuance of an
4   injunction, and RICO violations.  MGA alleges, as the critical underpinning of its trade
5   secret and RICO claims, that it "*just discovered* after the deposition testimony of Sal
6   Villasenor on July 12, 2010 [that] . . . for at least fifteen years from 1992 through 2006, a
7   series of Mattel employees in its 'market intelligence' department, with the knowledge,
8   approval, and financial support of their bosses and the executives of the company,
9   willfully and deliberately misrepresented themselves to gain entry into the private
10  showrooms of Mattel's competitors at trade shows, armed with cameras and video
11  recorders."[3]  In fact, MGA has known these alleged facts for years.

12      **MGA Hires Executives With Knowledge Of Its Claims Years Ago.**  MGA's
13  own pleading shows that MGA knew of these "facts" since at least April 19, 2004, when
14  former Mattel employee Gustavo Machado was hired as an MGA executive.[4]  MGA's
15  Reply *affirmatively alleges* that Machado received the reports prepared by Mr.
16  Villasenor that contain MGA's purported trade secrets obtained from toy fair show
17  rooms: "Mattel thieves then assembled presentations of hundreds of pages to be copied
18  and distributed on a worldwide basis. . . . Ironically, at least one of the recipients of such
19  presentations was Counter-Defendant Gustavo Machado, to whom one or more
20  presentations were sent in Mexico while he was still employed by Mattel Servicios."[5]

21      Similarly, MGA's Reply acknowledges that Ron Brawer, another former Mattel
22  employee who left for MGA in 2004,  knew of Villasenor's activities when he was at
23  Mattel: "*Other former senior executives who have been willing to admit that they were*
24  *aware of the practices are Sujata Luther and Ron Brawer.*"[6]  Brawer testified at

25

---

26  [3] Docket No. 8583 at ¶ 6 (emphasis added).
    [4] █████████████████████████████████████████████
27  ██████████████████████████
    [5] Docket No. 8583 at ¶ 14.
28  [6] Id. at ¶ 20 (italics added).

00505.07975/3669269.1

1  deposition more than seven months ago about the very conduct that MGA claims it only

2  "just discovered":

3  ███████████████████████████████████████████
4  ███████████████████████████████████████████
5  ███████████████████████████████████████████
6  ███████████████████████████████████████████
7  ███████████████████████████████████████████

8  Brawer testified that ██████████████████████████████████████████
9  ██████████████████████████████████████████████████████████████
10 ██████████████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████████████
13 ████████████████████  And Brawer brought this knowledge to MGA,

14 where he reported directly to Isaac Larian, nearly six years ago, in October 2004.[10]

15     MGA then hired Janet Han (later Hsu) on March 9, 2005, who also knew of the

16 alleged facts supporting MGA's new claims.  According to Larian, ███████████

17

18 [7] ████████████████████████████████████████████

19 ██████████████████████

20 [10] Docket No. 8583 at ¶ 126; see also ████████████████████████
21 ██████████████████████████████████████████████████████████████
22 ██████████████████████████████████████████████████████████████
23 ██████████████████████████████████████████████████████████████
24 ██████████████████████████████████████████████████████████████
25 ██████████████████████████████████████████████████████████████
26 ██████████████████████████████████████████████████████████████
27 ██████████████████████████████████████████████████████████████
28 ██████████████████████████████████████████████████████████████

1

2

3

4

5                 In short, MGA has known these "facts" for years.

6     **MGA's First Set of Affirmative Defenses Include Allegations Relating to**

7 **Mattel's Alleged Thefts of Information.** MGA filed its complaint against Mattel on

8 April 13, 2005, raising trade dress and unfair competition claims.[13]   Despite its

9 knowledge of the facts underlying its current claims at that time, MGA did not include

10 its new claims, or any allegations about them, in that pleading.

11       MGA did include allegations relating to Mattel's alleged thefts and bad acts when

12 it answered Mattel's Second Amended Answer and Counterclaims ("SAAC") on August

13 13, 2007—but it did so to support its claimed *defenses*, not any claims.  In its unclean

14 hands defense, MGA identified—in 2007—"Mattel's efforts to undermine MGA's

15 business" by "monitoring, 'spying on' or gaining knowledge of MGA's trade secrets,

16 non-public information, non-public activities, unreleased products, and product

17 development; [and] gaining access, or attempts to gain access, to MGA showrooms,

18 Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses."[15]  MGA

19 included no claims based on such allegations at that time.  Although Mattel's SAAC

20

21

22   [11]

23   [13] Complaint in Case No. CV 05-2727 (April 13, 2005).

24   [14]

  [15] Answer and Affirmative Defenses of MGA Entertainment, Inc., MGA Entertainment
25 (HK) Limited, and MGA De Mexico S.R.L. De C.V. to Mattel's Second Amended
Answer and Counterclaims, dated August 13, 2007, at 20-21 (Docket No. 807).  MGA
26 then provided a Court-ordered supplemental interrogatory response on January 7, 2008
elaborating on its alleged *defense* that Mattel obtained MGA's trade secrets by "gaining
27 access" to MGA showrooms on "false pretenses."  MGA's Response to Mattel, Inc.'s
Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses,
28 dated January 7, 2008, at 20.

00505.07975/3669269.1



filed in 2007 included claims for trade secret misappropriation and RICO violations,[16] MGA did not plead any purported counterclaims in reply when it answered.  Nor did MGA include its allegedly compulsory counterclaims when Mattel filed its Third Amended Answer and Counterclaims ("TAAC") on May 22, 2009,[17] which again asserted trade secret and RICO claims.  Instead, MGA pursued its allegations of spying, thefts and so on solely as an affirmative defense until it answered Mattel's FAAC on August 16, 2010.

**MGA Seeks Discovery Into Its Allegations Years Ago.**  MGA evidenced its knowledge in its discovery requests, beginning well before it even answered Mattel's claims.   On November 22, 2006, MGA demanded that Mattel produce "[a]ll DOCUMENTS REFERRING OR RELATING TO whether MATTEL had access to any exhibits, displays or show rooms containing any of MGA's 'BRATZ' lines prior to its release to the public."[18]  MGA then followed up on August 3, 2007 with a more specific request for:

> All DOCUMENTS RELATING TO YOUR efforts, or knowledge of any efforts by any PERSONS, worldwide to monitor, "spy on" or gain knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development, including, but not limited to: . . . .
>
>  b. DOCUMENTS REFERRING OR RELATING TO YOUR use or attempts to use confidential informants, spies, or moles within MGA, including, but not limited to, any tape recordings of MGA employees or contractors;
>
> c. DOCUMENTS REFERRING OR RELATING TO YOUR knowledge of any MGA product before its release to the public or of any other non-public information about MGA, its business or its products;
>
> d. DOCUMENTS REFERRING OR RELATING TO YOUR access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses (including, but not limited to, by using fake business cards) . . . .

---

[16] Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims (July 12, 2007) (Docket Nos. 635-636).
[17] Mattel, Inc's Third Amended Answer in Case No. 05-2727 and Counterclaims (May 22, 2009) (Docket No. 5607).
[18] Request No. 31 of MGA's First Set of Requests for Documents and Things to Mattel, Inc., dated November 22, 2006.

f. DOCUMENTS REFERRING OR RELATING TO YOUR access to MGA's products or showroom at any Toy Fair (including Hong Kong Toy Fair, New York Toy Fair, Dallas Toy Fair, or Nuremberg Toy Fair . . . .

h. YOUR access to MGA's confidential product and pricing information through "competitive management agreements" or "category management agreements" with retailers; and

i. YOUR access to MGA's confidential product and pricing information from non-public sources and/or through non-public means.[19]

Mattel objected to these requests in 2007,[20] but MGA did not move to compel as to them until September 2009, when it included them in a grab-bag motion that addressed more than 900 other requests as well.[21]  And when it did move, MGA itself proposed to limit Request No. 476 to documents related to MGA's "laches and statute of limitations" affirmative defense rather than its "unclean hands" defense.[22]

MGA served a <u>Rule</u> 30(b)(6) deposition notice on Mattel on September 5, 2007, shortly after it filed its answer containing its unclean hands defense allegations.[23]  Topic 56 sought testimony concerning "instances of obtaining access to MGA showrooms, including obtaining access on false pretenses," "access to MGA's products or showroom at any Toy Fair," and "access to retailer's Plan-o-Grams or merchandising display plans or display areas."[24]  Mattel objected to this topic.[25]  Although MGA moved to compel on December 21, 2007,[26] it intentionally omitted Topic 56 from that motion because it did

---

[19]  Request No. 476 of MGA's Fifth Set of Requests for the Production of Documents and Things, dated August 3, 2007.
[20]  Mattel, Inc.'s Objections and Responses to MGA Entertainment,, Inc.'s First Set of Requests for Production of Documents, dated January 15, 2007, at 35; Mattel's Responses to MGA's Fifth Set of Requests for the Production of Documents and Things, dated September 4, 2007, at 9-10.
[21]  MGA Entertainment, Inc.'s Motion to Compel Further Responses to MGA's Requests for Production of Documents, dated September 23, 2009, at 1 (Docket No. 6816).
[22]  Order No. 89, Regarding: Motion of MGA Entertainment, Inc. to Compel Responses to 918 Document Requests, dated January 13, 2010, at 13 (Docket No. 7396).
[23]  MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007.
[24]  Id. at A-26.
[25]  Mattel, Inc.'s Objections to MGA Entertainment , Inc.'s Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 19, 2007, at 46.
[26]  MGA's Notice of Motion and Motion to Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition under <u>Rule</u> 30(b)(6), or, in the Alternative, For Leave To Serve Such Notice, dated December 21, 2007 (Docket No. 1314).

1  not relate to "Phase 1 issues."[27]  And indeed, although MGA has insisted that the "new"

2  facts it has alleged should have been before the Phase 1 jury,[28] MGA represented that it

3  would not pursue its unclean hands defense in the Phase 1 trial at all to avoid a Mattel

4  motion seeking a deposition of MGA and other witnesses about its unclean hands

5  defense.[29]  At about the same time, MGA also urged the Court, successfully, to enter a

6  stay on Phase 2 discovery to foreclose Mattel discovery into Phase 2 issues.[30]  That stay

7  was not lifted until January 6, 2009.[31]

8          Both before, during, and after the period of the stay, MGA asked witnesses about

9  Mr. Villasenor's alleged wrongdoing. ████████████████████████████████████

10 ██████████████████████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████████████████████████

17

[27] Declaration of Marcus R. Mumford in Support of MGA's Motion to Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition under Rule 30(b)(6), or, in the Alternative, for Leave to Serve such Notice, dated December 21, 2007, at Ex. 12, Pg. 356 n.1 (Docket No. 1314).
[28] Docket No. 8583 at ¶ 57.
[29] Notice of Motion and Motion of Mattel, Inc. for Leave to Take Additional Discovery on the MGA Defendants' Unclean Hands Affirmative Defense, dated January 28, 2008, at 1; Order Denying as Moot Mattel's Motion for Leave to Take Additional Discovery Re MGA's Unclean Hands Defense, dated February 28, 2008 (Docket No. 2365); Order Denying as Moot Mattel's Motion for Leave to Take Additional Discovery re MGA's Unclean Hands Defense, dated February 28, 2008, at 1 (Docket No. 2365) ("As set forth on the record, and in light of the representations by counsel for MGA and Carter Bryant that they will not assert MGA's unclean hands defense in Phase 1 of the trial, Mattel's motion is DENIED AS MOOT.").
[30] Order re Ex Parte Applications, dated February 5, 2008 (Docket No. 1931); February 25, 2008 Hearing Tr. at 9:19-25 ("[F]rom the time that new counsel [for MGA] has entered the case, they have asked for a stay of Phase 2 discovery").
[31] Order Appointing Discovery Master, dated January 6, 2009 (Docket No. 4640).
[32] ███████████████  see also Docket No. 8583 at ¶ 14; Notice by MGA Entertainment, Inc. of Trade Secret Designation Pursuant to Cal. Code Civ. Proc. § 2019.210 (Aug. 24, 2010).
[33] ████████████████████████████████████████████████

00505.07975/3669269.1

-7-
MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



and despite having repeatedly questioned witnesses about him, MGA chose not to notice Mr. Villasenor's deposition until July 7, 2010.[43]  MGA also chose not to propound any requests for production referring to Villasenor until his deposition was completed.[44]  Despite all this, MGA describes its stale allegations of trade secret theft as "stunning, recently discovered evidence" in its August 16, 2010 pleading.[45]

---



[43]  Notice of Deposition of Salvador Villasenor, dated July 7, 2010.
[44]  Request Nos. 370, 371, 373, 375-378, 380-382 of MGA Entertainment, Inc.'s Amended Ninth Set Of Phase 2 Requests For Production Of Documents And Things To Mattel, Inc., dated July 22, 2010.
[45]  Docket No. 8583 at ¶ 57.

-8-

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

## Argument

### I.    MGA'S COUNTERCLAIMS IN REPLY SHOULD BE STRICKEN

#### A.    Counterclaims In Reply Filed Without Leave Are Permitted, If At All, Only When They Are Compulsory

MGA purports to bring its new claims through the obscure and strongly disfavored procedural mechanism of "counterclaims-in-reply." Because MGA did not obtain leave to amend under Rule 15(a), as required, these claims are legally inoperative and should be stricken.[46]

"Counterclaims in reply" are not expressly authorized by the Federal Rules. Conceptus, Inc. v. Hologic, Inc., 2010 WL 1460162, at *1 (N.D. Cal. April 12, 2010). While they have been permitted on occasion, counterclaims in reply to an opposing party's counterclaims are not permitted unless they are compulsory. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1525 (9th Cir. 1985) (superseded in part by statute); see also Wright & Miller, Federal Practice & Procedure: Civil 3d § 1188 (courts should not allow permissive counterclaims in reply; parties should seek leave to amend to add permissive counterclaims). Moreover, "[e]ven where a counterclaim in reply is permissible, courts have observed that it is preferable to treat such a pleading as an amendment to the complaint." Erickson v. Haring, 2000 WL 35500986, at * 11 (D. Minn. Oct. 23, 2000) (construing counterclaims in reply as motion to amend). Courts strongly disfavor counterclaims in reply because they detract from the order and regularity that scheduling orders are meant to provide, and give rise to the specter of an endless cycle of counterclaims-in-reply. See id. at *10 ("[T]he Court need not sit idly by while the parties render its scheduling order meaningless.").

---

[46] Gengler v. U.S. ex rel. Dept. of Defense and Navy, 463 F. Supp. 2d 1085, 1093 (E.D. Cal. 2006) ("Where an amended pleading cannot be made as of right and is filed without leave of court or consent of the opposing party, it is without legal effect. The second and third amended petitions are unauthorized and are stricken.") (citing U.S. ex rel. Mathews v. Healthsouth Corp., 332 F.3d 293, 295 (5th Cir. 2003)); Davis v. Foster Farms Dairy, 2007 WL 114003, at *7 (E.D. Cal. Jan. 10, 2007) ("Striking the TAC as inoperative and of no legal effect [under Rule 12(f)] is necessary to compel Plaintiff's compliance with [Rule 15(a) of] the Federal Rules of Civil Procedure and the Local Rules of Practice."); (footnote continued)

**B.    MGA's Counterclaims In Reply Are Not Compulsory**

Whether a counterclaim in reply is compulsory or permissive depends upon whether it "arise[s] from the same transaction or occurrence as the [defendant's] counterclaim." <u>Davis & Cox</u>, 751 F.2d at 1525; <u>Fed. R. Civ. P.</u> 13(a). In applying this test, courts ask whether "***the essential facts*** of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." <u>Pochiro v. Prudential Ins. Co. of Am.</u>, 827 F.2d 1246, 1249 (9th Cir. 1987) (emphasis added); <u>see also</u> <u>In re Marshall</u>, 600 F.3d 1037, 1057-58 (9th Cir. 2010) (citing <u>Pochiro</u> with approval). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." <u>In re Lazar</u>, 237 F.3d 967, 979 (9th Cir. 2001).

It is not enough that a plaintiff alleges "bad conduct" that is purportedly similar in nature—but not factually related to—the conduct described in a defendant's counterclaims. As one court has recently explained:

> Here, both sides essentially accuse the other of misrepresenting clinical data about each other's products. Though these are both claims of misrepresentation of clinical data, they do not arise from the same transaction or occurrence. For example, Conceptus's counterclaims in reply arose from representations made by Hologic or its representatives, while Hologic's counterclaims arose from representations made by Conceptus or its representatives on separate occasions. In other words, while each wants to accuse the other of very similar bad marketing acts, each relied on different transactions. As such, Conceptus's counterclaims in reply are not compulsory counterclaims and were improperly pled.

<u>Conceptus</u>, 2010 WL 1460162, at *1.

This applies here as well. The facts alleged in the respective claims are different transactions which do not share "the same aggregate set of operative facts." <u>In re Pegasus Gold Corp.</u>, 394 F.3d 1189, 1197 (9th Cir. 2005). A "thematic" relationship,

<u>AntiCancer, Inc. v. Fujifilm Medical Sys. U.S.A.</u>, 2010 WL 318406, at *2 (S.D. Cal. Jan. 19, 2010) (same).

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

00505.07975/3669269.1

1  which is the most MGA can assert, is not a substitute for an aggregate set of operative

2  facts, which is plainly lacking.

3       Indeed, MGA's own conduct confirms that its counterclaims are not compulsory.

4  Mattel has been alleging RICO and trade secret theft claims since November 2006. If

5  MGA's reply counterclaims were compulsory now, they would have been compulsory in

6  2007 when MGA answered the SAAC (and in 2009 when MGA answered the TAAC) as

7  well, and should have been brought then. See Bayer CropScience, LP v. Booth, 2005

8  WL 2095765, at *1 (M.D. Ga. Aug. 29, 2005) ("Rule 13(a) requires defendants to plead

9  compulsory counterclaims in their first responsive pleading"). MGA did not bring the

10  counterclaims when it answered in 2007 (or 2009) not because it did not know about

11  them—plainly, it did—but because *they are not compulsory*.

12       Because the counterclaims are not compulsory, they are improper and should be

13  stricken. Davis & Cox, 751 F.2d at 1525; Conceptus, 2010 WL 1460162, at *2 (party

14  objecting to counterclaims in reply as improperly pled should move to strike).

15      **C.**    **Leave To Amend Should Be Denied**

16       Even compulsory counterclaims in reply (let alone permissive ones like MGA's)

17  properly "are treated as an amendment to the complaint," and granting or denying leave

18  to amend rests in the sound discretion of the trial court. Fujitsu Ltd. v. Nanya Tech.

19  Corp., 2007 WL 1660694, at *2 (N.D. Cal. June 6, 2007); see Aerotech Res., Inc. v.

20  Dodson Aviation, Inc., 2001 WL 474302, *5 (D. Kan. April 23, 2001) (compulsory

21  nature of defendants' counterclaims did not outweigh undue delay and undue prejudice

22  presented by amendment at advanced stage of the litigation); see also Swanson v. U.S.

23  Forest Serv., 87 F.3d 339, 343 (9th Cir. 1996). MGA's counterclaims were brought now,

24  and not earlier, for the transparent purpose of prejudicing Mattel. While Rule 15(a)(2)

25  provides that leave to amend a complaint should be given freely in the interests of

26  justice, "a district court need not grant leave to amend where the amendment: (1)

27  prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in

28  litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d

946, 951 (9th Cir. 2006).  All of those factors are present here.

### 1.   MGA's Delay Is Inexcusable

"Undue delay has occurred when a party has filed a motion for leave to amend long after it should have become aware of the information that underlies that motion." IXYS Corp. v. Advanced Power Tech., Inc., 2004 WL 135861, at *4 (N.D. Cal. Jan. 22, 2004).  While MGA alleges that it "just discovered" the facts underlying its new claims "after the deposition testimony of Sal Villasenor on July 12, 2010,"[47] this is simply untrue, as shown above.  In fact, MGA has known of the allegedly "new" evidence it is relying on for years:

- Numerous MGA executives plainly had knowledge of MGA's claims years ago; in fact, MGA concedes as much as to Brawer and Machado, and ███████████ ███████████████████████████████████████████

- MGA's 2007 Answer to Mattel's SAAC demonstrates its prior knowledge by specifically calling out "Mattel's efforts to undermine MGA's business" by "monitoring, 'spying on' . . . [and] gaining access, or attempts to gain access, to MGA showrooms" and Mattel's alleged thefts of "trade secrets," but MGA still chose *not* to bring any claims based on those allegations;[49]

- MGA served discovery in 2007 and even in 2006 directly seeking information concerning allegations it is now making;[50]

- ███MGA repeatedly questioned Mattel employees about Villasenor specifically throughout 2008 and 2009, ████████████████████████████████████

The Ninth Circuit has found undue delay where fifteen months passed between the time the plaintiff discovered new facts and asserted a new theory based on those facts in a motion for leave to amend.  AmerisourceBergen Corp., 465 F.3d at 953.  Even "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable," where, as here, strategic delay is involved.  Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir. 1991).  MGA has been aware of its claims at least since 2004.  There is simply no excuse for its delay in bringing them.

---

[47] Docket No. 8583 at ¶ 6
[48] ████████████████████████████████████████████████████████████

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

1   MGA alleges that it just uncovered more evidence in July 2010, at the Villasenor

2   deposition.   But MGA offers no explanation for why it failed to seek Villasenor's

3   deposition until six years after the start of this litigation,[52] despite its knowledge of his

4   alleged activities all along.   Even if MGA had actually "just discovered" the allegedly

5   new facts at Mr. Villasenor's deposition in July 2010—which it did not—this late

6   "discovery" is due entirely to MGA's lack of diligence.   Thus, MGA's late-stage

7   deposition of Mr. Villasenor provides no excuse for MGA's delay in bringing these

8   claims.   See Daso v. Grafton School, Inc., 181 F. Supp. 2d 485, 490 (D. Md. 2002)

9   ("where Plaintiff's delay was of his own making, the court will deny Plaintiff's motion . .

10   . for leave to amend the complaint").

11   Finally, the delay is especially inexcusable given that new claims involve serious,

12   highly inflammatory RICO allegations, any harm from which MGA should have been

13   aware of years ago:

14   UNR's request is inexcusably late since it had enough facts to bring this
       RICO count when it filed its first amended complaint. UNR's delay is
15   particularly inexcusable in the RICO context. Racketeering is a very
       serious charge which poses the threat of treble damages, and conversely
16   must be based on a serious kind of injury. *A person who suffers a RICO
       injury should "know it when [he feels] it."* To delay as long as UNR did
17   to assert a Rico injury suggests that either UNR did not suffer that kind
       of serious injury or that the charge is made because of the *in terrorem*
18   effect of any treble damage or racketeering claim.

19   UNR Indus., Inc. v. Continental Ins. Co., 623 F. Supp. 1319, 1331 (N.D. Ill. 1985),

20   superseded by statute on other grounds as stated in Lewis v. Hermann, 775 F. Supp.

21   1137 (N.D. Ill. 1991) (emphasis added) (internal citations omitted).

22   **2.      Allowing The New Claims At This Stage In The Litigation
               Would Be Highly Prejudicial To Mattel**

23   Prejudice to the opposing party is the most important factor affecting whether the

24   Court should grant leave to amend. Zenith Radio Corp. v. Hazeltine Research, Inc., 401

25   U.S. 321, 330-31 (1971) (trial court "required" to take potential prejudice into account in

26   deciding Rule 15(a) motion).   Prejudice is heightened when a plaintiff seeks to amend a

27   
28   [52]  Notice of Deposition of Salvador Villasenor, dated July 7, 2010.

-13-

complaint late in litigation or to add claims requiring proof of different facts. See Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) (late in litigation); Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387-88 (9th Cir. 1990) ("Putting the defendants 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.'"); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th cir. 1990) ("The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense"); Callan v. Amdahl Corp., 1995 WL 261420, at *5 (N.D. Cal. April 24, 1995) (denying leave to amend shortly before discovery cut-off).

In very similar circumstances, the court in Scognamillo v. Credit Suisse First Boston, LLC, 587 F. Supp. 2d 1149 (N.D. Cal. 2008), found that "Defendants will suffer severe prejudice if Plaintiffs are allowed to shift the focus of the case five years after the suit was first filed and three months before the current discovery cutoff." Id. at 1156. The similarities between Scognamillo and the instant case are striking:

> Plaintiffs sought leave to amend late in litigation, approximately twelve weeks before the current December 19, 2008 discovery cutoff. The new theories that Plaintiffs propound in their proposed Sixth Amended Complaint are a radical departure from those asserted in the Fifth Amended Complaint. Granting leave to amend at this point would require extensive additional discovery on entirely new topics and the redeposition of witnesses, on top of the significant discovery that has occurred to date, which includes over 300,000 pages of documents and twenty-four third-party subpoenas and depositions, including those of four named parties. Specifically, in order to defend on the new theory of the case that Plaintiffs now proffer, Defendants would have to explore the [Plaintiffs'] fundamentally new contention . . . .

Id. at 1155.

Because of the strategic timing of the counterclaims, Mattel is now unable to serve any written discovery that could be included in its final omnibus motion to compel (due by September 13, 2010); it is precluded from serving any follow-up discovery requests to which responses could be due before the October 4, 2010 discovery cut-off; it is unable

to identify the witnesses with knowledge of MGA's claims and purported injury, much less locate them and subpoena them or notice their depositions consistent with Rule 30 and Rule 45 timing requirements; and it is unable to make meaningful use of any discovery regarding MGA's counterclaims in time to prepare for summary judgment motions, which will be due only weeks from now.

MGA cannot deny the discovery burden inherent in its new claims: its recent flurry of no less than *forty-four* third-party subpoenas related to the new claims is simply a preview of the discovery leave to amend would engender.[53]   And indeed, MGA identifies in its counterclaims, among other things, dozens of toy company events as to which Mattel purportedly gained access under false pretenses and toy companies whom Mattel allegedly "systematically defrauded";[54] dozens of purported MGA products, including unidentified "unreleased" products, as to which Mattel purportedly "defrauded" MGA of product information;[55] numerous alleged (yet unspecified) acts of purported fraudulent conduct by Mattel and its agents, including Quinn Emanuel and Bain & Company;[56] multiple purported "benefits" that Mattel enjoyed as the result of its alleged conduct;[57] numerous categories of alleged, but unidentified, MGA trade secrets that Mattel allegedly "stole";[58] purported "efforts" that MGA undertook to protect the

---

[53]   Notices of Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action Issued to Hasbro, Inc., Alpha International, Inc.—Empire Toys, Emak Worldwide, Inc.—Equity Marketing, Bandai America Incorporated, Ceaco, Inc., Decipher, Inc., Madam Alexander Doll Club, NSI International, Inc., Spin Master Ltd., Tiger Electronics, Inc., Tomy Corporation, Uncle Milton Industries, Inc., Wham-O, Inc., Wild Planet Toys, Wizards of the Coast LLC, Mega Brands America, Inc., Nkok, Inc., Playhut, Inc., Playmates Toys, Inc., Razor USA LLC, X Concepts, LLC, Giochi Preziosi USA, Hamilton Toys, LLC, Jada Toys, Inc., Jakks Pacific, Inc., Leapfrog Enterprises, Inc., Lego Systems, Inc., Maisto International, Inc., Nikko America, Inc., Ohio Art Company, Pressman Toy Corporation, Faber-Castell USA, Inc., Cadaco, Inc., Chicco USA, Inc., DSI Toys, Inc., Endless Games, K'nex Brands, L.P., Marvel Entertainment, Inc., Todd McFarlane Productions, Inc., Shure Products, Inc., Simba Toys Usa, Inc., Thinkway Toys, Inc., Vtech Electronics North America, LLC, Wowwee USA, Inc. (August 23, 2010).
[54]   Docket No. 8583 at ¶¶ 2, 11-16.
[55]   Id. ¶¶ 3, 21-22.
[56]   Id. ¶¶ 4, 23-56.
[57]   Id. ¶¶ 57-60.
[58]   Id. ¶ 305.

confidentiality of its alleged trade secrets;[59] Mattel's alleged "use and disclosure" of MGA's purported trade secrets;[60] the formation and operation of an "association-in-fact" racketeering enterprise and its commission of multiple alleged "predicate acts";[61] and a list of purported damages and other harms that MGA allegedly suffered as a result of Mattel's alleged conduct.[62]  In contrast to its unclean hands defense, MGA's trade secret and RICO claims put at issue the supposed confidentiality and theft of confidential information from forty-four toy industry competitors at toy fairs over a fifteen-year period, and raise significant new issues as to injury, standing, damages, predicate acts, the definition of the enterprise, the statute of limitations, laches, and so on.  There is simply no equating the discovery necessary to address an affirmative defense with that necessary to address a new claim, particularly a RICO claim.  Lewis v. Berry,  109 F.R.D. 42, 42 -43 (W.D. Wash. 1985) (denying leave to add RICO claims because such claims "will necessitate new discovery, additional motions and a postponement of trial.").

An amendment filed "on the eve of the discovery deadline" is a prime example of an amendment creating prejudice sufficient to deny leave.  Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming denial of leave "on the eve of the discovery deadline"); In re Milk Prods. Antitrust Litig., 195 F.3d 430, 438 (8th Cir. 1999) (need to reopen discovery is "precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a)").  Even an order requiring MGA to respond on an expedited basis to the discovery requests attached to Mattel's *ex parte* application will not come close to alleviating the prejudice that Mattel would suffer by having to defend against eleventh-hour RICO and trade secret claims on their merits with only limited and likely incomplete discovery.  Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (affirming denial of leave to amend where the parties had already "engaged in

---

[59] Id. ¶ 306.
[60] Id. ¶ 309.
[61] Id. ¶¶ 314-316.

voluminous and protracted discovery, [t]rial was only two months away, and discovery was completed," and observing that "[e]xpense, delay, and wear and tear on individuals and companies count toward prejudice") (internal citations omitted); <u>Wade v. Knoxville Utils. Bd.</u>, 259 F.3d 452, 458-59 (6th Cir. 2001) (finding prejudice when amendment would have added new theories of liability requiring retaking of depositions and new, additional discovery). Here, for example, Mattel will at a minimum need to take the further depositions of Brawer, Paula Garcia, Machado, Larian, Janet Han, attendees at each of MGA's toy fairs over a *fifteen-year period*, the representatives of the other toy companies MGA has subpoenaed and the MGA witnesses who support MGA's claims. And these are just the deponents Mattel knows of currently.

"Prejudice to the opposing party is the most important factor" in considering leave to amend. <u>Jackson</u>, 902 F.2d at 1387. The weight of this factor alone is sufficient to deny leave to amend. The Court should do so here.

### 3. The Counterclaims In Reply Were Brought In Bad Faith

The timing of the filing alone is sufficient to raise an inference of bad faith. <u>See U.S. ex rel. Jajdelski v. Kaplan, Inc.</u>, 2010 WL 2326069, *3 (D. Nev. June 7, 2010) (denying leave to amend where "timing of this Motion for Leave to Amend raises significant questions about Plaintiff's motives"). Not only did MGA time the filing of its new claims to deny Mattel a fair opportunity to take discovery, but it was far from candid with the Court or Mattel. On August 9, 2010, MGA urged the Court to immediately halt further interrogatories and requests for admissions and to require that all requests for production be served by August 16.[63] When Mattel asked why it was advocating that deadline, MGA's lead counsel's refused to say and claimed that her reasons were "privileged."[64] In fact, MGA planned to assert the new claims just before midnight on

---

[62] <u>Id.</u> at pg. 51-52.
[63] Stipulation of the Parties Regarding Pre-Trial Dates and Briefing Schedules, dated August 9, 2010, at Ex. A (Docket No. 8495).
[64] Mattel, Inc.'s *Ex Parte* Application for Expedited Discovery on MGA's Purported "Compulsory Counterclaims-in-Reply," dated August 25, 2010, at 4 (Docket No. 8640).

-17-

August 16 and was maneuvering to foreclose Mattel's ability to take *any* discovery into these claims. MGA's attempt to sandbag Mattel with what is in essence an entirely new lawsuit on the eve of the discovery deadline is the essence of the "sporting theory of justice" that <u>Rule</u> 15(a) was designed to avoid. *See* Wright & Miller, <u>Federal Practice & Procedure: Civil 3d</u> § 1488 ("By failing to introduce the matter contained in the proposed amendment at as early a stage in the litigation as possible, the pleader has demonstrated bad faith in not apprising the opponent of its true position in the action."); <u>Perfect 10, Inc. v. Google, Inc.</u>, 2008 WL 4217837, at *6 (C.D. Cal. July 16, 2008) (bad faith exemplified where litigant waited "until the close of discovery, just prior to summary judgment, to decide whether to assert an entirely new theory").

Moreover, the nature of the claims—directed in large part at opposing counsel—further supports denial of leave.   The counterclaims contain dozens of paragraphs of hyperbolic and inflammatory accusations of alleged trade secret misappropriation and fraudulent acts committed by Mattel, Quinn Emanuel and others—which MGA also touted to the media. This is gamesmanship at its most overt and should not be rewarded. <u>See</u> <u>Fort Howard Paper Co. v. Standard Havens, Inc.</u>, 901 F.2d 1373, 1379 (7th Cir. 1990) (<u>Rule</u> 15(a)'s liberal policy allowing amendment "is not a license for carelessness or gamesmanship").

### 4.   Amendment Would Be Futile

As shown below, allowing MGA to add these claims would be futile since they should be dismissed under <u>Rule</u> 12(b)(6). <u>See</u> <u>Newland v. Dalton</u>, 81 F.3d 904, 907 (9th Cir. 1995) ("While Fed. R. Civ. P. 15(a) encourages leave to amend, district courts need not accommodate futile amendments."). MGA's RICO and trade secret claims are time barred as a matter of law, and its "wrongful injunction" claim is baseless. To determine whether an amendment is futile, the Court uses the same standard as it would when considering a 12(b)(6) motion. <u>Miller v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988).   Leave to amend should be denied for this independent reason as well.

### D.    The Court Should Strike MGA's Wrongful Injunction Claim

While the wrongful injunction claim is situated somewhat differently from MGA's other new claims, it too is improper and should be stricken. MGA claims that it is entitled to damages flowing from the injunctions entered in the wake of the first trial. This is unrelated to Mattel's counterclaims: Mattel has made no counterclaim putting at issue whether the injunctions were rightly or wrongfully entered; MGA's claim does not "arise from the same transaction or occurrence as [Mattel's] counterclaim" and should be stricken. Davis & Cox, 751 F.2d at 1525; Fed. R. Civ. P. 13(a).

Nor is there cause to grant leave to amend to add this claim now. In addition to being futile, as discussed below, a claim for wrongful injunction properly should be brought as an independent action, not as a "counterclaim-in-reply." See Buddy Sys. Inc. v. Exer-Genie, Inc, 545 F.2d 1164, 1168 (9th Cir. 1976) (separate action to recover damages for wrongful issuance of a preliminary injunction which defendant obtained in a prior action); Monolith Portland Midwest Co. v. RFC, 128 F. Supp. 824, 879 (S.D. Cal. 1955) (separate action to recover damages for an overturned injunction). While some courts have considered wrongful enjoinment issues via motion on a bond, see Nintendo of Am., Inc. v. Galoob Toys, Inc., 16 F.3d 1032 (9th Cir. 1994) (motion for execution of bond posted under Rule 65(c) as security for preliminary injunction); Broadcom Corp. v. Qualcomm Inc., 585 F. Supp. 2d 1187, 1197(C.D. Cal. 2008) (motion for restitution of royalties paid during overturned injunction); Tabra, Inc. v. Treasures de Paradise Designs, Inc., 1992 WL 73463 (N.D. Cal. April 4, 1992) (motion to recover damages under bond), Mattel has discovered none that permitted the insertion of an independent claim for wrongful injunction in the action in which the injunction at issue was entered. Indeed, this claim is really a veiled malicious prosecution claim, which can only be brought in a separate action. If MGA wants to pursue this claim it should file a separate action; it should not be permitted to prejudice Mattel by adding it now, when adequate new discovery is no longer available.

-19-

## II. MGA'S WRONGFUL INJUNCTION CLAIM SHOULD BE DISMISSED BECAUSE MGA LACKS STANDING

On December 3, 2008, Judge Larson entered three equitable orders that never took effect. The first was a permanent injunction prohibiting the manufacture, distribution and sale of infringing Bratz products (hereafter "Permanent Injunction").[65] The other two were orders placing Bratz intellectual properties in constructive trust for Mattel's benefit (hereafter, "Constructive Trust").[66] On the day they were issued, both the Permanent Injunction and the Constructive Trust were stayed until further Court order.[67] As MGA has recognized,[68] the Permanent Injunction was stayed in its entirety only until April 27, 2009,[69] but MGA nevertheless was allowed to keep selling its 2009 Bratz lines through January 2010.[70] On December 9, 2009, the Ninth Circuit stayed all equitable relief, and then vacated it on July 22, 2010. Thus, sales of Bratz products were never enjoined. In addition, the Constructive Trust was never executed in favor of Mattel. Pursuant to the Court's Order, MGA put its profits from sales of Bratz in 2009—sales which obviously were permitted—into escrow.[71] Mattel never had access to this escrow account. On August 31, 2010, the Court granted MGA's motion to release funds held by the Court-appointment monitor.[72]

For purposes of standing, MGA must allege facts from which it reasonably can be

[65] Docket No. 4443. The Permanent Injunction also contemplated a few other measures which were never implemented: impounding existing inventory and molds used to make the Bratz dolls (never implemented); recalling of Bratz products from retailers (never implemented); and appointment of a Special Master to implement the injunction (never appointed).
[66] Specifically, the Court granted a constructive trust over MGA trademarks including the terms "Bratz" or "Jade" and granted injunctive relief pursuant to Cal. Bus. & Prof. Code § 17200 on the same (Docket No. 4441), and granted a declaratory judgment and constructive trust on the rights, including copyrights, the name "Bratz" and Bratz characters (Docket No. 4442).
[67] Docket No. 4439 at 16.
[68] See May 18, 2009 Hearing Tr. at 29:1-3.
[69] Docket No. 5273 at 11.
[70] See id. at 11 (allowing the sale of Bratz products up to and including December 31, 2009). On May 21, 2009, Judge Larson extended the time through which Bratz products may be sold to January 21, 2010 (Docket No. 5565 at 7).
[71] Id. at 23-24; see also MGA Parties' Motion To Release MGA Funds Held by Court Appointed Monitor, dated August 12, 2010 (Docket No. 8517)
[72] Order Granting MGA Parties' Motion to Release MGA Funds Held By Court-Appointed Monitor, dated August 31, 2010, at 1 (Docket No. 8670).

-20-

1   inferred that it would not have incurred its claimed damages—assuming *arguendo* they

2   are available at all, which they are not as discussed below—but for the allegedly

3   wrongful injunctive relief that was issued. See Warth v. Seidlin, 422 US 490, 504 (1975)

4   (affirming dismissal of complaint for lack of standing based on lack of causation).   But

5   MGA was never prohibited from manufacturing or selling Bratz.  The constructive trusts

6   in favor of Mattel over MGA's trademarks, copyright and other rights in "Bratz" were

7   never in effect.  MGA does not and cannot allege how relief which never went into effect

8   directly caused injury.  Furthermore, MGA's theory of causation depends on the actions

9   of an independent actor—the Court—and a factually groundless and unverifiable

10  assertion that the basis for the injunctive relief was the Court's perception that MGA was

11  "bad" and Mattel was "good."[73]

12      As a matter of law, recoverable damages under an injunction are only those

13  "actually sustained by reason of the injunction, that is, such damages as are the actual,

14  necessary, and proximate result of the injunction during the time it was operative."

15  Monolith, 128 F. Supp. at 879; see also Glaxo Group Ltd. v. Leavitt, 481 F. Supp. 2d

16  434 (D. Md. 2007) (under Rule 65(c), damages must result "naturally and proximately"

17  from the injunction and must be proven with reasonable certainty); Lever Bros. Co. v.

18  Int'l Chemical Workers Union, Local 217, 554 F.2d 115, 120 (4th Cir. 1976) ("it is

19  settled that the recoverable damages under such a bond are those that arise *from the*

20  *operation of the injunction itself* and not from damages occasioned by the suit

21  independently of the injunction.") (emphasis in original).   In light of the fact that

22  equitable relief never ***enjoined*** MGA, allegations that the Orders entered on December 3,

23  2008 "had the effect of destroying all or a substantial part of MGA's value in the

24  BRATZ brand" are conclusory and fail.[74]  MGA suffered no injury directly caused by

25

---

26  [73]  Docket No. 8583 at ¶ 57 ("Mattel's own extensive fraudulent and criminal bad acts
    enabled them to seize for Mattel the 'white hat' in this litigation, convincing Judge
27  Larson to enter a permanent injunction whereby Mattel effectively stole Bratz from
    MGA—an injunction now demonstrated to be wrongful . . . .").
28  [74]  Docket No. 8583 at ¶ 319.

00505.07975/3669269.1

1  injunctive relief that never took effect, and thus lacks standing and cannot prove

2  damages.

3  **III. MGA'S WRONGFUL INJUNCTION CLAIM SHOULD BE DISMISSED OR STRICKEN UNDER CALIFORNIA'S ANTI-SLAPP STATUTE**

4

5  Absent a bond given as security for a *preliminary* injunction under Rule 65(c), it is

6  well-settled in the Ninth Circuit that a party may not recover for wrongful injunction

7  "unless the defendant sues for malicious prosecution or on a theory of unjust

8  enrichment." Buddy Sys., 545 F.2d at 1167-1168 (internal citations omitted). MGA

9  does not allege the existence of a bond, so its only potential theories are malicious

10  prosecution or unjust enrichment. It does not allege those either, however, and could not

11  do so successfully. The Court should dismiss MGA's claim, or strike it under

12  California's anti-SLAPP statute and award Mattel its attorney's fees incurred in bringing

13  this motion.

14  **A. MGA Has Not Alleged An Action On A Bond Because A Bond Was Neither Required Nor Posted**

15  MGA fails to state a plausible claim for "wrongful injunction" under the only case

16  cited in its pleading—Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032

17  (9th Cir. 1994)—which involved an action *on a bond* for a wrongfully issued

18  *preliminary* injunction. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The Ninth

19  Circuit limits damages for wrongful injunctions to the amount of the bond posted;

20  recovery absent a bond is not permitted. No bond was posted here, so no recovery is

21  permitted.

22  In Buddy Systems, the district court awarded damages in the amount of $35,000 in

23  a wrongful enjoinment action, although the posted bond for the overturned preliminary

24  injunction had been previously exonerated. The Ninth Circuit reversed. Since the bond

25  was released, "there was nothing left upon which [defendant] could bring this action" for

26  damages, and the court had no subject matter jurisdiction under 28 U.S.C. § 1352, which

27  grants jurisdiction over actions on a federal bond. 545 F.2d at 1168. The Ninth Circuit

28  explained that "no underlying duty to recompense the victim of wrongful provisional

relief independent of the security instrument may be implied. ***It is a well-settled rule that there can be no recovery for damages sustained by a wrongful issuance of a preliminary injunction in the absence of a bond . . . .***" Id. at 1167-1168 (emphasis added, internal citations omitted). See also Benz v. Compania Naviera Hidalgo, S.A., 205 F.2d 944, 948 (9th Cir. 1953) ("And since whether rightly or wrongly no bond or security was furnished, we must apply the rule which prevails in the federal courts. That rule is that ***in the absence of such a bond, there may be no recovery of damages for the issuance of a temporary injunction even although it may have been granted without just cause.***") (citations omitted, emphasis added); see also Galoob Toys, 16 F.3d at 1036-37 (9th Cir. 1994) (allowing for recovery of provable damages *up to* the amount of the bond).[75]

### B.   MGA Has Not Alleged An Unjust Enrichment Claim Because It Seeks Damages Rather Than Restitution

MGA fails to state a plausible claim for unjust enrichment that would entitle it to restitution, which is "a return or restoration of what [a party] gained in a transaction." Dobbs, Law of Remedies § 4.1(1). In cases of injunctions, "the principle of restitution applies only where a party received under the decree what he is asked to restore to the adverse party, upon its reversal." Monolith, 128 F. Supp. at 878; see also United Motors Serv. v. Tropic-Aire, 57 F.2d 479, 484 (8th Cir. 1932) (there is no "authority for the proposition that damages in the guise of 'restitution' may be assessed in excess of the injunction bond . . . . Nothing was taken from [defendant] by the injunction and given to plaintiff. We see no room for the application of the doctrine of restitution here."); Greenwood County v. Duke Power Co. 107 F.2d 484, 487-88 (4th Cir. 1939) (restitutionary relief "cannot be awarded here because the county has lost nothing which

---

[75] The rule that there are no damages in the absence of a bond should apply with even more force to permanent injunctions. Permanent injunctions issue only after a valid and full adjudication on the merits of a case. See Golden Gate Hotel Ass'n v. City and Country of San Francisco, 836 F. Supp. 707, 709 (N.D. Cal. 1993), vacated on other grounds by 18 F.3d 1482 (9th Cir. 1994) ("permanent injunction cannot issue unless based upon a valid, appendable judgment").

the power company has received as a result of the injunction orders of the court. . . . It received nothing from the county and nothing to which the country would have been entitled, or which it would have received, had the injunctive orders not been entered"). MGA does not allege that it paid funds to Mattel, or that Mattel underpaid by reason of the December 3, 2008 equitable relief.  In fact, MGA's claim is for its own losses—the "destr[uction of] all or a substantial part of MGA's value in the BRATZ brand"—and not for any unjust enrichment of Mattel.  Thus, "[t]here is no basis for the application of the equitable cause of action of money had and received."  Monolith, 128 F. Supp. at 878.

## C.   MGA Has Not Alleged A Malicious Prosecution Claim and Cannot do So

To the extent MGA seeks to pursue a malicious prosecution claim, MGA must show three elements: (1) favorable legal termination; (2) brought by Mattel without probable cause; and (3) initiated with malice.  See Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992).  MGA fails to satisfy the third element because it pleads that it is entitled to damages for a wrongful injunction "[w]ithout regard to Mattel's intent, wrongful acts, or otherwise," thus expressly omitting from its allegation a necessary element of malicious prosecution.[76]  However, even assuming MGA could amend its pleading to correct this deficiency, such an amendment would be futile because MGA's failure to satisfy the first two elements cannot be corrected by amendment.

The Ninth Circuit vacated the prior relief.  It did not, however, terminate the proceedings in favor of MGA.  The Ninth Circuit also stated that "[n]othing we say here precludes the entry of equitable relief based on appropriate findings."  Mattel, Inc. v. MGA Entertainment, Inc., --- F.3d ----, 2010 WL 2853761, at *11 (9th Cir. July 22, 2010).  "Because one of the elements of malicious prosecution is a favorable termination of the underlying proceeding, a malicious prosecution action is premature if it is instituted as a *counterclaim*, cross claim, or the like, in a pending civil proceeding."  52 Am. Jur. 2d Malicious Prosecution § 127 (emphasis added).  Nor has MGA alleged (and

1 | it could not allege) that Mattel's claims lacked probable cause or were initiated with
2 | malice; indeed, that a jury and judge found them meritorious itself conclusively
3 | forecloses any such allegation. See Roberts v. Sentry Life Ins., 76 Cal. App. 4th 375,
4 | 383 (1999) (holding that victory at summary judgment or trial, even if later reversed on
5 | appeal, conclusively establishes probable cause).

**D.   MGA's Wrongful Injunction Claim Should Be Stricken Under California's Anti-SLAPP Statute And Mattel Should Be Awarded Its Attorneys Fees**

8 | The claim also should be dismissed or stricken under the anti-SLAPP statute,
9 | California's special motion to strike causes of action against a person "arising from any
10 | act of that person in furtherance of the person's right of petition or free speech." Cal.
11 | Code Civ. Proc. § 425.16.  California's anti-SLAPP motion to strike is available in
12 | federal court for state claims.  Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir.
13 | 2010).  This motion may be premised on legal deficiencies inherent in the plaintiff's
14 | claim.  See Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc., 448 F. Supp.
15 | 2d 1172, 1180 (C.D. Cal. 2006) ("If an anti-SLAPP motion is based on legal deficiencies
16 | in the complaint, a federal court "must determine the motion in a manner that complies
17 | with the standards set by Federal Rules 8 and 12.").

18 | Anti-SLAPP motions entail a two step inquiry.  First, the defendant must
19 | demonstrate that the challenged cause of action is one arising from protected activity.
20 | Cal. Code Civ. Proc. § 425.16(e).  That showing is satisfied here: malicious prosecution
21 | is a priori subject to an anti-SLAPP motion, as it affects the "right of petition," Jarrow
22 | Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 741 (2003), and MGA's wrongful
23 | injunction claim clearly seeks to challenge Mattel's right of petition.  Because the first
24 | step is successfully established, MGA bears the burden of demonstrating that the cause
25 | of action has at least minimal merit.  Cal. Code Civ. Proc. § 425.16 (b)(1); see also
26 | Jarrow Formulas; Equilon Enters., v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).

---

[76] Docket No. 8583 at ¶ 320.

As shown above, it does not.

Accordingly, the wrongful injunction claim should be stricken under California's anti-SLAPP statute. In addition, Mattel is entitled to recover its attorney's fees and costs from MGA, and requests leave to submit a motion in support of that award if the Court grants Mattel's motion to strike. Cal. Code Civ. Proc. § 425.16(c).

## IV. MGA'S TRADE SECRET CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

### A. The Claim Is Barred By The Three-Year Statute Of Limitations

MGA's claim for trade secret misappropriation should be dismissed because it is barred by the three-year statute of limitations. Cal. Civ. Code § 3426.6 (claim "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered"). It is well settled that "a plaintiff's claim for misappropriation of a trade secret against a defendant arises only once, when the trade secret is initially misappropriated, and each subsequent use or disclosure of the secret augments the initial claim rather than arises as a separate claim." Cadence Design Sys., Inc., v. AvantA Corp., 29 Cal. 4th 215, 226 (2002).

MGA fails to state a claim for trade secret theft because its claim accrued long before August 16, 2007—three years before the filing of its August 16, 2010 pleading. Indeed, the facts alleged in MGA's pleading demonstrate that the alleged misappropriation occurred before August 16, 2007. MGA affirmatively alleges in its Complaint that the theft of its trade secrets by Mattel occurred between 1992 and 2006.[77] MGA did not plead that any thefts occurred after 2006 because it knew the facts did not support that allegation; ███████████████████████████████

---

[77] Docket No. 8583 at ¶ 1 ("Beginning in at least 1992 and continuing through at least 2006, a series of Mattel employees in its "market intelligence" department, with the knowledge, approval, and financial support of their bosses and the executives of the company, willfully and deliberately misrepresented themselves to gain entry into the private showrooms of Mattel's competitors (including MGA) at numerous industry trade shows."); id. at ¶ 6 ("As MGA has just discovered after the deposition testimony of Sal Villasenor on July 12, 2010 and documents produced thereafter that should have been produced many years before, for at least fifteen years from 1992 through 2006 . . . ."); id. (footnote continued)

███████ The ten purported trade secrets identified in MGA's <u>Cal. Code Civ. Proc.</u> § 2019.210 Notice were allegedly stolen by Mattel employees at toy fairs between 2000 and 2004.[79] The alleged thefts are time barred.

MGA's pleading also alleges that MGA knew or had reason to know of its claim as to these thefts long before August 16, 2007. MGA *affirmatively alleges* that Machado—who joined MGA on April 19, 2004—was "one of the recipients" of presentations "assembled" by "Mattel thieves," "include[ing] page after page of unauthorized reproductions of photos and catalog pages depicting the competitor products."[80] Similarly, MGA alleges that Brawer—who joined MGA on October 5, 2004—was "aware of the practices" of *Villasenor himself*.[81] Further, MGA admits that Brawer "came to work for MGA" and occupied the executive position of "Executive Vice President of Sales and Marketing" and was "responsible for sales worldwide."[82]

After Machado and Brawer joined MGA in 2004 with actual knowledge of the wrongdoing, MGA itself had such knowledge. <u>San Diego Hospice v. County of San Diego</u>, 31 Cal. App. 4th 1048, 1056 (1995) (California courts "impute[] knowledge to the defendant based on information *actually* known to existing agents or employees") (emphasis in original); <u>People v. Forest E. Olson, Inc.</u>, 137 Cal. App. 3d 137, 140 (1982) (recognizing "well-established rule imputing knowledge of corporate officials to the corporation itself"). Since knowledge is imputed by law, whether Machado or Brawer communicated their knowledge to others at MGA is irrelevant. <u>Forest E. Olson, Inc.</u>, 137 Cal. App. 3d at 140; <u>Columbia Pictures Corp. v. DeToth</u>, 87 Cal. App. 2d 620, 630 (1948). MGA's claim for trade secret misappropriation accrued, at the latest, with the arrival of Machado and Brawer in 2004.

at ¶ 11 ("Villasenor entered showrooms for multiple toy companies, including MGA, Hasbro, Lego, Bandai and others from at least 1999 to 2006 . . . .").

[79] Notice by MGA Entertainment, Inc. of Trade Secret Designation Pursuant to Cal. Code Civ. Proc. § 2019.210, dated August 24, 2010.
[80] Docket No. 8583 at ¶ 14.
[81] <u>Id.</u> at ¶ 20.
[82] <u>Id.</u> at ¶¶ 124, 126.

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

1         "Courts have rejected the notion that the 'statute of limitations only begins running

2 when a plaintiff can unassailably establish a legal claim for trade secret

3 misappropriation, [as that] would effectively eviscerate the statute of limitations in all

4 cases in which the plaintiff never discovers 'smoking gun' evidence of

5 misappropriation.'" Cypress Semiconductor Corp. v. Superior Court, 163 Cal. App. 4th

6 575, 586 (2008). MGA's trade secret claim accrued when MGA had knowledge of at

7 least one of three generic elements and suspicion of the others: wrongdoing, causation,

8 and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005). Here, by the

9 time Machado and Brawer joined MGA, it had actual knowledge, not just suspicion, of

10 all three of these elements—it knew of the alleged wrongdoing, knew of its claimed

11 injuries (whatever they supposedly are), and knew that the wrongdoing allegedly was the

12 cause of its injuries. Its claim is time barred.

13      **B.**     **The Claim Does Not Relate Back To MGA's 2005 Complaint**

14         MGA may argue that the claim relates back to its April 13, 2005 Complaint. The

15 relation-back doctrine requires that the amended complaint must (1) rest on the same

16 general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality,

17 as the original one. Norgart v. Upjohn Co., 21 Cal. 4th 383, 408 -409 (1999).

18         MGA's April 13, 2005 Complaint for unfair competition does not rest on the same

19 general set of facts that form the basis of MGA's trade secret claim. Facts related to

20 Mattel's alleged theft of competitor's confidential information from trade shows did not

21 appear until MGA made those allegations in connection with its "unclean hands"

22 affirmative defense in its August 13, 2007 answer to Mattel's counterclaims. Unlike

23 MGA's interrogatory response for unclean hands, which specifically alleges that Mattel

24 obtained MGA's *trade secrets* by gaining access to MGA showrooms on false

25 pretenses,[83] MGA's interrogatory response for unfair competition makes no similar

26

27   [83]  MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at 20 (identifying "Mattel's

28 monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public (footnote continued)

allegations.[84] Indeed, MGA's own counsel stated on the record during Larian's deposition that the facts supporting MGA's new trade secret claim only related previously to its defense of unclean hands, not its claim of unfair competition:



MGA's claim does not relate back to the unfair competition complaint.[86]

## C. The Claim Does Not Relate Back To MGA's August 13, 2007 Answer

MGA may also argue that its trade secret claim relates back to its August 13, 2007 Answer to Mattel's counterclaims. Mattel has found no authority for the proposition that a claim can relate back to an earlier alleged affirmative defense, and basic principles of relation back show that this cannot be so: "The relation-back doctrine deems a later-filed pleading to have been filed at the time of an *earlier complaint* . . . ." Quiroz v. Seventh Ave. Center, 140 Cal. App. 4th 1256, 1278 (2006) (emphasis added); Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157, 1199 (2008) ("The prevailing rule with respect to actions involving parties designated by their true names in the original complaint is that,

---

information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses").
[84] MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of Interrogatories regarding Claims of Unfair Competition, dated January 19, 2007; MGA Entertainment, Inc.'s Supplemental Responses to Mattel, Inc.'s First Set of Interrogatories regarding Claims of Unfair Competition, dated March 2, 2007; MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s First Set of Interrogatories regarding Claims of Unfair Competition, dated March 5, 2007.
[85] ████████
[86] See, e.g., Kim v. Regents of the University of California, 80 Cal. App. 4th 160, 168-169 (2000) (claim for age discrimination under FEHA did not relate back to facts in original complaint supporting claims of breach of contract and Labor Code violations); Coronet Mfg. Co. v. Superior Court, 90 Cal. App. 3d 342, 347 (1979) (amended complaint alleging the decedent was electrocuted by a lamp socket and switch manufactured by one entity did not relate back to an original complaint alleging the electrocution was caused by a defective hair dryer with a different manufacturer because, (footnote continued)

1  if an amendment is sought after the statute of limitations has run, the amended complaint

2  will be deemed filed as of the date of the original complaint *provided recovery is sought*

3  *in both pleadings on the same general set of facts.*") (emphasis added).[87]  Although it

4  contained an "unclean hands" defense, MGA's August 2007 answer was not an "earlier

5  complaint" containing "earlier pleaded claims" where "recovery [was] sought" based on

6  the same set of facts.  Relation back does not apply.

7      The Court need not address this issue, in any case, because MGA's trade secret

8  claim is time barred even if it relates back to its August 13, 2007 Answer.  Since the

9  claim accrued when Machado joined MGA on April 19, 2004, the claim is time barred

10  because MGA's Answer was filed more than three years later.

### D.  MGA's Fraudulent Concealment Allegations Are Irrelevant Because MGA Was On Notice Of The Potential Claim

11

12  MGA alleges that Mattel and Quinn Emanuel fraudulently concealed evidence

13  supporting its new claims.[88]  "It has long been established that the defendant's fraud in

14  concealing a cause of action against him tolls the applicable statute of limitations, but

15  only for that period during which the claim is undiscovered by plaintiff or until such time

16  as plaintiff, by the exercise of reasonable diligence, should have discovered it." Bernson

17  v. Browning-Ferris Indus. of Cal., Inc., 7 Cal. 4th 926, 931 (1994).  The doctrine of

18  fraudulent concealment  "does not come into play, whatever the lengths to which a

19  defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim."

20  Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App.

21  4th 884, 890-891 (2002).  A plaintiff is under a duty to reasonably investigate, and a

22  suspicion of wrongdoing, coupled with a knowledge of the harm and its cause,

23

24

25  although the pleadings related to a single death at a single location, they alleged different accidents and instrumentalities).

26  [87]  See also Brumley v. FDCC Cal., Inc., 156 Cal. App. 4th 312, 323 (2007) ("A new *cause of action* in an amended complaint is held to relate back to the *earlier pleaded claims* . . . .") (emphasis added); Barrington v. A. H. Robins Co., 39 Cal. 3d 146, 150

27  (1985) ("if a *cause of action* in an amended complaint does not relate back to the original complaint *as to this cause of action* . . . .") (emphasis added).

28  [88]  Docket No. 8583 at ¶¶ 39, 47, 48, 52, 53, 57, and 59.

00505.07975/3669269.1

commences the limitations period. Id. at 891.  Even assuming MGA's allegations of fraudulent concealment by Mattel are true, which they are not, it "does not come into play" because MGA admittedly knew of a potential claim for trade secret misappropriation based on the knowledge of Machado and Brawer.

## V.   MGA'S RICO CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

Likewise, MGA's RICO claim is barred by the four-year statute of limitations because the claim accrued prior to August 16, 2006.  Pincay v. Andrews, 238 F.3d 1106, 1108-09 (9th Cir. 2001).  In the Ninth Circuit, the statute of limitations for a RICO claim accrues when the plaintiff knew or should have known of the *injury* that formed the basis for the cause of action, not from the date of the last alleged predicate act.  Grimmett v. Brown, 75 F.3d 506, 512 (9th Cir. 1996).  "Even if a plaintiff did not know the injury was caused by a pattern of RICO activity, a claim would still accrue and the statute of limitations would still run."  Tanaka v. First Hawaiian Bank, 104 F. Supp. 2d 1243, 1246 (D. Haw. 2000).  MGA is "deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud."  Pincay, 238 F.3d at 1110.

The RICO claim is time barred because MGA affirmatively alleges that Machado and Brawer joined MGA with knowledge of the injury that forms the factual basis for MGA's RICO claim.[89]  MGA also appears to allege that the thefts that are the bases of its trade secret claim were frauds supporting its RICO claim.[90]  As shown, MGA had knowledge of those claimed thefts more than four years before it filed.  Furthermore, this claim does not relate back to MGA's April 13, 2005 Complaint under Rule 15(c) because

---

[89]  Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 590 & n. 3 (9th Cir. 1983) (the knowledge of senior officers that statements are false is imputable to the corporation); W.R. Grace & Co., Inc. v. Western U.S. Industries, Inc., 608 F.2d 1214, 1218 (9th Cir. 1979) ("It is a well settled principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself") (citation omitted); Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424, 1435 (9th Cir. 1995) (the "cumulative knowledge" of officers and directors "will be imputed to the corporation").

the trade dress and unfair competition claims are not based on a "common core of operative fact" with MGA's RICO claim. <u>Friedman v. 24 Hour Fitness USA, Inc.</u>, 580 F. Supp. 2d 985, 997 (C.D. Cal. 2008); <u>see also</u> <u>Williams v. Boeing Co.</u>, 517 F.3d 1120, 1133 (9th Cir. 2008) ("The compensation discrimination claim is a new legal theory depending on different facts, not a new legal theory depending on the same facts. It does not relate back under Rule 15(c)."). And MGA's fraudulent concealment allegation does not toll the limitations period because its own pleading shows that it had both actual and constructive knowledge of the facts underlying the claim.[91]

## VI.  PARAGRAPHS 41, 46, AND 47 SHOULD BE STRICKEN BECAUSE MATTEL'S MOTIVATIONS IN FILING SUIT ARE IRRELEVANT UNDER THE LITIGATION PRIVILEGE

A running theme throughout MGA's counterclaims in reply is that Mattel brought the RICO and trade secret counterclaims against MGA in order to divert attention from its own alleged misdeeds. According to MGA, "the counterclaims were motivated by the deterioration of the Villasenor situation":[92]

> It was a concededly brilliant strategy. Mattel and its lawyers figured out exactly what Mattel could be accused of based on Mattel's own criminal conduct, then turned those claims on MGA, while at the same time concealing all evidence of Mattel's wrongdoing ... Mattel successfully concealed the evidence of its own criminal conduct for years, all the while claiming that MGA was evil incarnate.[93]

MGA also contends that Mattel's litigation strategy was motivated by its desire to "distract and tie-up the much smaller MGA in litigation for years."[94]

---

[90]  Docket No. at ¶ 313-318 (RICO claim incorporates by reference allegations concerning Mattel's alleged theft of MGA's trade secrets at toy fairs).

[91]  <u>Pincay</u>, 238 F.3d at 1110 ("[T]here is a long line of our cases holding that, in order to prevail on such a claim, plaintiffs 'must demonstrate that they had neither actual nor constructive notice of the facts constituting their claims for relief.'"); <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998) ("The fraudulent concealment doctrine would not have tolled the statute of limitations if the partners actually knew of the alleged wrongs, or if the partners were not reasonably diligent in informing themselves of the alleged wrongs.") (internal citation and parenthetical omitted).

[92]  Docket No. 8583 at ¶ 46; <u>see also</u> <u>id.</u> at ¶ 41 ("Instead, Mattel and its attorneys embarked on a brilliant strategy to ensure that its long term scheme to defraud either would never see the light of day, or when it did, the impact would be severely diminished. The cornerstone of that strategy was the filing of Mattel's counterclaims in this action.").

[93]  <u>Id.</u> at ¶ 47.

[94]  <u>Id.</u>

---

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

00505.07975/3669269.1

1        Mattel's motivations for filing suit are irrelevant under California's litigation

2   privilege, and paragraphs 41, 46, and 47 should be stricken. The privilege protects "any

3   communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or

4   other participants authorized by law; (3) to achieve the objects of the litigation; and (4)

5   that have some connection or logical relation to the action." Silberg v. Anderson, 50 Cal.

6   3d 205, 212 (1990). The purpose of the litigation privilege is "to afford litigants and

7   witnesses the utmost freedom of access to the courts without fear of being harassed

8   subsequently by derivative tort actions." Id. at 213. In particular, a party's motivations

9   for filing suit are immaterial under the privilege: "[t]he litigation privilege is absolute,

10   which means it applies regardless of the existence of malice or intent to harm." Wise v.

11   Thrifty Payless, Inc., 83 Cal. App. 4th 1296, 1302 (2000); Ribas v. Clark, 38 Cal. 3d

12   355, 364 (1985) (tortious nature and purpose of defendant's actions does not negate

13   privilege); Cargill Inc. v. Progressive Dairy Solutions, Inc., 2008 WL 2235354, at *6

14   (E.D. Cal. May 29, 2008) (plaintiff's "motivation for filing the complaint is inapposite . .

15   . the litigation privilege is absolute, regardless of malice").

16        Paragraphs 41, 46, and 47 serve no purpose other than to put Mattel's motivations

17   for filing its counterclaims at issue—conduct which falls squarely within the ambit of the

18   litigation privilege. Guillory v. WFS Fin., Inc., 2007 WL 879017, *5 (N.D. Cal. March

19   21, 2007) ("filing a complaint is subject to the litigation privilege"); E. & J. Gallo

20   Winery v. Andina Licores S.A., 2006 WL 1817097, at *5 (E.D. Cal. June 30, 2006)

21   ("Thus the 'acts' that are the subject of Gallo's action are the acts of filing a complaint

22   and of making a false representation to the court in connection with the action; both

23   actions that have clearly and consistently been held communicative in nature and within

24   the scope of the litigation privilege."). Accordingly, they should be stricken. See

25   American Nat'l Red Cross v. United Way Cal. Capital Region, 2008 WL 2302188, at *7

26   (E.D. Cal. May 30, 2008) (striking counterclaims based on statements protected by

27

28

1  litigation privilege).[95]

2                          **Conclusion**

3        For the foregoing reasons, Mattel respectfully requests that the Court grant its

4  motion to strike and dismiss.

5

6  DATED:   September 7, 2010        QUINN EMANUEL URQUHART &
                                     SULLIVAN. LLP
7

8                                    By /s/ Michael T. Zeller
                                        Michael T. Zeller
9                                       Attorneys for Mattel, Inc., and Mattel de
                                        Mexico. S.A. de C.V.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25  [95]   The Noerr-Pennington doctrine provides independent grounds for striking the
    allegations related to Mattel's motives. The doctrine "ensures that those who petition the
    government for redress of grievances remain immune from liability for statutory
26  violations." White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000). The purpose of the
    doctrine is to protect the right to petition the government. Id. "Both the litigation
27  privilege and the Noerr-Pennington doctrine seek to prohibit suits aimed to punish
    parties for seeking access to the courts." Macquarie Group Ltd. v. Pacific Corporate
28  Group, LLC 2009 WL 539928, *13 (S.D. Cal. March 2, 2009).

MATTEL'S MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY
COUNTERCLAIMS-IN-REPLY"