UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC.,<br><br>    Plaintiff(s),<br><br>v.<br><br>MGA ENTERTAINMENT, INC.,<br><br>    Defendant(s).<br>_____<br><br>AND CONSOLIDATED ACTIONS<br>_____ | CASE NO. CV 04-9049 DOC (RNBx)<br><br>**O R D E R** GRANTING MOTION TO CONFIRM |

    Before the Court is Mattel, Inc. ("Mattel")'s Motion to Confirm Pendency of Trade Secret Misappropriation Claim Based on Theft of Bratz (the "Motion"). After considering the moving, opposing, and replying papers, the Court GRANTS IN PART AND DENIES IN PART the Motion.

    In its motion for leave to file a Fourth Amended Answer and Counterclaims, Mattel requested leave to file trade secret misappropriation claims arising out of the theft of the Bratz and Jade product lines. The Court denied that request. Mattel then moved for a motion to confirm the pendency of the Bratz trade secret misappropriation claims, which did not move for

1  reconsideration of the Court's partial denial of leave to amend, but instead requested that the
2  Court rule that the Bratz trade secret misappropriation claims were implied in Mattel's pleading.
3  The Court rejected that motion as well, but suggested that Mattel could renew its request
4  following the Ninth Circuit's ruling.

5  Following the Ninth Circuit's July 22, 2010 Order vacating the phase 1 equitable relief,
6  Mattel renewed its previously denied motion to confirm.  MGA argues now, as it did then, that
7  "MGA would be significantly prejudiced by Mattel's undue delay in asserting brand new claims
8  on" a trade secret misappropriation theory.

9  MGA argues that Mattel improperly seeks to "change its legal theory" in response to the
10 unfavorable Ninth Circuit ruling.  This argument is belied by the fact that Mattel first filed its
11 motion well before the Ninth Circuit's ruling.  Even MGA's authorities recognize that the mere
12 fact that an amendment results in a change in legal theory isn't dispositive.  Rather, the proper
13 inquiry is whether the amendment results in prejudice.  *See Amerisource Bergen Corp. v.*
14 *Dialysis W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).

15 Granting the Motion will not cause MGA prejudice.

16 Perhaps the strongest argument against any finding of prejudice is the fact that MGA has
17 encouraged the circumstances that give rise to its claims of prejudice.  First, MGA opposed
18 Mattel's previous attempt to expressly allege its Bratz and Jade trade secret claims, when any
19 prejudice would have been minimized.  At that time, MGA's opposition depended upon the
20 pendency of the appeal from phase 1 post-trial relief, which MGA hoped would be vacated by
21 the Ninth Circuit.  Second, MGA recently requested – as it always has – an accelerated
22 discovery deadline in order to minimize the costs of litigating this case and ensure a speedy
23 resolution to this six year long litigation.  As MGA is well aware from Mattel's recent filing of
24 its California Uniform Fraudulent Transfer Act claims in state court, Mattel likely wouldn't
25 abandon its trade secret claims even if this Court were to deny the Motion.  MGA's costs and
26 burden, which it has long complained of to the Court, are likely to be *decreased* if the Motion is
27 granted.
28 Moreover, MGA's argument that the Bratz and Jade trade secret claims somehow require

*new* discovery rings shallow. The phase 1 record evidences an understanding between counsel that Mattel was asserting that Bratz and Jade were trade secrets. For example, Mattel argues that the parties exchanged drafts of a Joint Pre-Trial Phase 1 Conference Order, in which Mattel proposed to pursue a claim for "misappropriation (against Bryant, Larian, MGA, and MGA HK)" that claimed Bratz as a trade secret. *See* Ex. 1 to Dkt. 7801 at 5. Similarly, Mattel's proposed jury instructions requested that the Court instruct the jury on a claim for "misappropriation of trade secrets" that also claimed Bratz as a trade secret. *See id.*, Ex 2 at 9-15. In opposing that jury instruction, MGA claimed that the Bratz trade secret misappropriation claim was a "Phase Two" claim and that "[t]he MGA Parties and Bryant did not complete their discovery or move for summary judgment on this claim in reliance on the Court's Phasing Order *reserving this claim for Phase Two*." *Id.* Ex. 3. MGA objected to a number of other proposed jury instructions on these very grounds. *See id.* MGA's objections to Mattel's proposed jury instructions mirrored its statements in the pre-trial conference order that it objected to "any attempt by Mattel to assert any claim for misappropriation of trade secrets in Phase 1 of this case" on the grounds that "Mattel's misappropriation of trade secrets claim is *to be tried in Phase 2*." *Id.*, Ex. 4 (emphasis added).

Mattel has identified as a trade secret "[a]ll information relating to any ideas, designs, conceptions, or names for Bratz, including but not limited to such ideas, designs, conceptions, or names contained in the following documents." In an interrogatory response, Mattel has identified dozens of documents with specificity. *See id.*, Ex. 5. That interrogatory response was signed July 31, 2009, well before the transfer of this lawsuit to this Court's docket and well after the substitution of MGA's phase 2 counsel. In any event, and as discussed earlier, the evidence is perfectly clear that MGA's counsel was aware of (and sought discovery into) Bratz trade secret claims, in light of her statement during Robert Eckert's deposition:

> Well, let me say this. It's part of Phase 2. They have made a trade secret misappropriation claim based on Bratz. Let me say that again. There is a trade secret misappropriation claim in Phase 2 with an allegation of willful misappropriation of trade secrets against MGA

3

1  Entertainment and Mr. Larian based on Bratz.
2  *Id.*, Ex. 6.
3  The evidence only reinforces the Court's earlier conclusion that "both parties have
4  conducted considerable discovery into potential Bratz-related trade secret claims during both
5  phases of this lawsuit." Dkt. 7853.
6  MGA's general objections to the manner in which Mattel has pursued its trade secret
7  misappropriation claim are also unconvincing.
8  First, MGA argues that Mattel has left its pleadings intentionally vague in order to profit
9  from multiple legal theories. However, it's just as reasonable to conclude that the parties have
10 long engaged in the practice of pleading claims broadly, only to later clarify the products
11 encompasses by those claims. For example, MGA only clarified its trade dress claims – which
12 have been pending for half a decade – at the September 1, 2010 discovery hearing. Moreover, as
13 the phase 1 pre-trial conference order and the briefing on the phase 1 motions in limine suggests,
14 Mattel may have vaguely *alleged* its Bratz trade secret claims, but it didn't pursue those claims
15 in a vague manner – in fact, Mattel was quite clear that it intended to identify Bratz as a trade
16 secret throughout this litigation.
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

4

//

Second, MGA argues that Mattel didn't pursue its Bratz trade secret claims in Phase 1 in order to avoid the preclusive effect of the California Uniform Trade Secrets Act. However, as exhibited by MGA's briefing in support of its motions to dismiss the FAAC, CUTSA preemption does not require that the trade secret claim be *pled* in order for preemption to exist. Further, MGA's argument about preemption was raised in Phase 1; and the judge presiding over that phase did not reject that argument as a result of Mattel's failure to plead a CUTSA claim arising out of Bratz. Finally, granting the motion to confirm doesn't deprive MGA of the right to raise the CUTSA preemption argument at summary judgment.

The Motion is GRANTED.

IT IS SO ORDERED.

DATED: September 4, 2010

_____
DAVID O. CARTER
United States District Judge