ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>Hon. David O. Carter<br><br>**REPLY IN SUPPORT OF MGA MOTION TO COMPEL PRODUCTION OF DOCUMENTS RE MATTEL MEXICO'S POSSESSION OF COMPETITORS' CONFIDENTIAL INFORMATION**<br><br>Date:   September 14, 2010<br>Time:   8:30 a.m.<br>Place:  Courtroom 9D<br><br>Trial Date:  January 11, 2011 |

## I.     PRELIMINARY STATEMENT

Contrary to Mattel's statement, MGA does not seek every document Mattel Mexico has regarding MGA and other toy companies. It requests every document Mattel Mexico stole from MGA and other toy companies. To the extent Mattel Mexico has publicly available reports on MGA and others, such as those from NPD Research and Nielsen, Mattel Mexico need not produce that information. But to the extent Mattel Mexico obtained MGA or other toy companies' price lists, catalogs, unreleased product information or other confidential information, Mattel Mexico should produce that information.

This information is clearly relevant on multiple levels. It is relevant to MGA's unclean hands defense since it shows Mattel doing exactly what it accuses MGA of doing. It is relevant to Mattel's trade secrets claim since it shows that, despite Mattel's claims in this case, it never treated unreleased product information and price lists as confidential after that information was disclosed to retailers. Indeed, the Mattel employees who took competitors' information out of showrooms have now attempted to justify this action by claiming that any information provided to retailers cannot be a trade secret. If that is true, then Mattel's own trade secret claim will be dramatically limited. And this information is certainly relevant to MGA's counterclaims in reply.

The Requests are not overbroad. Mattel's theft of information from other toy companies, as well as MGA, demonstrates a "routine practice of an organization" that under Fed. R. Ev. 406 is admissible to disprove Mattel's claim that it did not sneak into MGA showrooms. Indeed, Mattel's own witnesses have described the practice of using fake names to get competitive information as a "routine" at Mattel – – the very standard for admissibility under Rule 406. Further, even if, arguendo, information ultimately proves not to be admissible, it is certainly discoverable so that MGA may seek to meet that standard for admissibility. Moreover, a limitation of only documents referencing MGA – – as proposed by

- 1 -

REPLY ISO MGA MTC RFPS RE MATTEL MEXICO
POSSESSION OF COMPETITOR'S CONFIDENTIAL INFO
CASE NO. CV 04-9049-DOC (RNBx)

Mattel – – would fail to catch a wealth of documents showing the general practice of stealing catalogs, even if not in reference to a particular competitor. Such documents would certainly be relevant and admissible to proving Mattel's conduct toward MGA.

Mattel Mexico should be compelled to produce documents responsive to the Requests to Mattel Mexico.

## II. THE COURT SHOULD COMPEL MATTEL MEXICO TO PRODUCE DOCUMENTS RESPONSIVE TO ITS PRACTICE OF SPYING ON COMPETITOR SHOWROOMS USING FALSE PRETENSES

### A. The Requests Seek Highly Relevant Information.

Requests Nos. 1, 2, 3, 4, 9, 29, 30, 33 and 50 seek documents related to Mattel Mexico's possession and knowledge of confidential information concerning MGA and other toy companies' products, plans and pricing. We now know from Villasenor and others that Mattel engaged in pattern and practice of sneaking into competitors' showrooms to steal price lists and catalogs for the coming season's new toys. Villasenor used fake cards with the name "The Toy Shop." Another Mattel employee, Kelly Osier used "The Toy Harbor." A third employee, Carey Plunkett, who is still at Mattel, used "The Toy Tree" on her phony business cards. Villasenor and Plunkett's boss testified that he knew all about this practice, was somewhat troubled by it, but didn't object because he saw it as a Mattel "routine." This was simply the way business was done at Mattel.

Mattel Mexico learned how to do business from its parent. Emails show Mattel Mexico employees also obtaining confidential information about MGA's unreleased products and acting on that knowledge. Molinski Dec., Ex. 18. Mattel Mexico employees testified to obtaining confidential MGA and Hasbro price lists from retailers. Machado Dep. 1108:25-1169:22. This was how business was done at Mattel Mexico. Employees of Mattel Mexico have testified to obtaining MGA catalogs and price lists in Mexico. Machado Dep. 1168:25-1169:22.

MGA Mexico, like MGA, has asserted an unclean hands defense. Docket No. 5798 (MGA Parties Second Affirmative Defense). This defense is expressly predicated on:

> Mattel's monitoring, "spying on," or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plano-Grams, merchandising displays, or Toy Fair displays or false pretenses . . . . Mattel's inducing non-party customs to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products . . . .

Docket No. 5798 (MGA Parties Second Affirmative Defense at 21:28-22:7).

The documents requested by Requests 1[1], 2, 3, 4, 9, 29, 30, 33 and 50 seek documents that are directly related to this defense. Each of these Requests seeks information related to Mattel Mexico's knowledge, possession and use of MGA and other competitors' price list, product information, and marketing plans.

This set of requests is the first and only requests MGA will serve on Mattel Mexico, who just entered this case in May 2010 over MGA's objections. No declaration is provided by Mattel Mexico suggesting any undue burden to the Requests. Unless Mattel Mexico has stolen far more than MGA expects from competitors, the Requests should not be difficult to comply with.

**B.     The Requests Are Not Overbroad Or Irrelevant.**

Mattel Mexico asserts that Requests 1, 2, 3, 9, 29, 30 and 33 are overbroad because they are not limited to Mattel Mexico's theft from MGA, but extend to its theft from other toy companies. This argument is misplaced. As described further on MGA's Motion and Reply to Compel Documents from Mattel Inc. Concerning Mattel's Theft of Competitors' Confidential Information ("Motion re Theft"), this practice at Mattel was widespread and routine. A Mattel executive deposed last week even used the word "routine" to describe how commonplace it was to use

---

[1] MGA is willing to limit Request 1 to include only that information obtained from non-public sources, so long as it is understood that non-public sources includes information obtained from showrooms, or from retailers or others who are provided the information in confidence.

fake business cards to obtain competitive information. Villasenor testified that this was a proud tradition handed down to him and that it was Mattel's practice for at least 15 years. Under Fed. R. Ev. 406, evidence of Mattel's theft from toy companies is relevant and admissible to prove that Mattel stole MGA information. Rule 406 ("evidence of information practice of an organization . . . is relevant to prove that the conduct of the organization on a particular occasion was in conformity with the habit, or routine") MGA has already uncovered substantial evidence of Mattel's conduct of spying on competitors bring a routine practice of the organization – – certainly it was a routine practice of the Mattel Intelligence Group. MGA has also uncovered evidence of this routine being practiced in Mexico. MGA is entitled to further discovery on this practice.

Further, as described in MGA's Motion re Theft, evidence of Mattel's culture of disrespect for any confidentiality in other toy companies' catalogs and price lists is also directly relevant to whether Mattel can reasonably assert that *its* catalogs and price lists are trade secrets. Mattel's apparent position is that the information it shows to retailers in *its* showrooms is confidential – – and Mattel employees should all know that – – but that Mattel's competitors' information shown at their showrooms is free for the taking. A fact-finder can and should find that what is good for the goose is good for the gander. If Mattel employees are told that they can use fake business cards to get into competitors' showrooms and take competitive information, then Mattel cannot reasonably expect its employees to consider the same information at Mattel as confidential.

Finally, the scope of the Requests is necessary because of Mattel's overly restrictive reading of the Requests and its efforts to avoid producing responsive documents. In December 2005, Villasenor wrote to Mattel's General Counsel to tell him that Villasenor was no longer willing to steal from Mattel's competitors because he saw that practice as unlawful and potentially criminal. Molinski Dec., Ex. 34 [Dkt. 8567]. Mattel's counsel immediately sent Villasenor's lawyer a letter

1  that sought to create an artificial separation between Villasenor's admissions and
2  the MGA lawsuit.  *See* Declaration of Denise Mingrone filed in support of MGA's
3  Opposition to *Ex Parte* re Expedited Discovery at Ex. C [DKT # 8661].  Although
4  Villasenor's lawyer rejected this effort to separate Villaensor's actions from the
5  lawsuit (*id.*, Ex. D), Mattel has apparently relied on this claimed separation to
6  withhold all documents concerning the practice of the Mattel Market Intelligence
7  Group.  Only after Villasenor was deposed and the relevance of his conduct to the
8  action became too obvious to ignore, did Mattel produce any documents related to
9  that Group's activities.  But for four years Mattel failed to produce any of
10 Villasenor's documents, any of Kelly Osier's documents, any of Matt Turetzky's
11 documents.  Yet all three of these Mattel employees readily conceded to have stolen
12 or approved the stealing of competitors' catalogs and price lists.  Mattel did not
13 even produce those documents from Villasenor's files that already refer to his
14 possession of confidential MGA price lists and catalogues, such as the January 15,
15 2003 email, described in the Motion re theft.

16    Any limitation, to the Requests to Mattel Mexico will provide Mattel Mexico
17 with a similar excuse to withhold relevant information.  If the Requests are limited
18 to only documents evidencing the theft of MGA information, Mattel Mexico will
19 narrowly define that to exclude anything except the clearest indication of theft of
20 MGA confidential information.  Mattel would exclude documents that refer to
21 Mattel Mexico's possession of "competitors' price lists", even if the context makes
22 clear that it involves MGA prices lists.  This, unfortunately is how Mattel thinks.
23 Without an order compelling production of all responsive documents, Mattel will
24 seek to evade production.

25 Dated:    September 8, 2010         ORRICK, HERRINGTON & SUTCLIFFE LLP

                                      By: _____
                                            William A. Molinski
                                          Attorneys for MGA Parties