ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>**REPLY IN SUPPORT OF MGA PARTIES' MOTION TO COMPEL DOCUMENTS FROM MATTEL INC. CONCERNING MATTEL'S THEFT OF COMPETITORS' CONFIDENTIAL INFORMATION**<br><br>Date:   September 14, 2010<br>Time:   8:30 a.m.<br>Place:   Courtroom 9D<br><br>Trial Date:   January 11, 2011 |

**Public Redacted Version**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

    A.    Villasenor Unequivocally Admitted to Having Obtained Competitive Information Through Improper And Illegal Means ......... 2

    B.    Witnesses Have Confirmed Villasenor's Admissions ........................ 3

    C.    Villasenor Was No Rogue Employee ................................................... 4

    D.    Mattel Stole Catalogs, Price Lists and Other Information From MGA Showrooms ................................................................................... 5

    E.    Had MGA Not Deposed Villasenor, It Would Have Never Obtained The Documents Showing Mattel's Theft ............................. 6

ARGUMENT ............................................................................................................... 7

I.    THE REQUESTED INFORMATION IS RELEVANT TO THE CLAIMS AND DEFENSES ........................................................................ 7

    A.    Mattel's Efforts To Justify Its Corporate Spying Are Irrelevant To Whether The Information Should Be Produced ............................ 7

    B.    Mattel's Practice Of Spying On MGA Is Relevant To MGA's Unclean Hands Defense ...................................................................... 8

    C.    Mattel's Practice Of Spying On Other Competitors Is Relevant To Both Unclean Hands And Mattel's Trade Secret Claim ............... 10

II.    MATTEL SHOULD BE COMPELLED TO PRODUCE ALL RESPONSIVE DOCUMENTS .................................................................... 12

    A.    Mattel's Assertion That It Has Produced "Appropriate" Documents Should Be Rejected ........................................................ 12

    B.    Mattel Has Not Produced All Responsive Documents, Even Those Concerning MGA .................................................................... 13

    C.    Request 476 Should Not Be Limited ................................................. 14

III.    MGA SHOULD BE PERMITTED TO INSPECT MATTEL'S LIBRARY ..................................................................................................... 15

- i -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

**PRELIMINARY STATEMENT**

Mattel does not deny that for four years it withheld all evidence of the practices of its Market Intelligence Group to steal confidential information about competitors' unreleased products by sneaking into showrooms using false names and business cards.  After Villasenor was deposed, two more witnesses have now admitted at deposition to having been engaged in this fraudulent practice, including Villasenor's boss, Matt Turetzky and a fellow Manager, Kelly Osier.  Villasenor's boss testified that ███████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████

The significance of this testimony cannot be understated.  Mattel has now reversed course on its own trade secrets claim because of these new revelations.  Where Mattel had for three long years claimed that unreleased product information and price lists were confidential and trade secret, every Mattel witness deposed *since* Villasenor has now claimed that this information is not a trade secret, and was fair game for its corporate spies.  Under Mattel's new standard for trade secrets – – only that information not disclosed to anyone outside Mattel, including retailers – – the vast majority of Mattel's trade secret claim would go away.  Mattel now faces a serious dilemma:  to formally disclaim much of what it had claimed to be its trade secrets – – and face charges of bad faith claims of misappropriation – – or risk exposure to substantial damages claims for having stolen the very same information it claimed to be valuable trade secrets in the toy industry.

The documents requested in Requests 323, 16, 17, 31, 476 and 737 are clearly relevant to multiple issues.  First and foremost, evidence of Mattel's theft of trade secrets goes directly to MGA's unclean hands defense.  MGA's unclean hands defense, filed in 2007, referenced this very conduct by Mattel as a basis for its defense, and Mattel does not dispute the relevance of this information to that defense.  But this information also goes more fundamentally to the elements of

- 1 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1  Mattel's trade secret claim. As noted, Mattel is already backing off its trade secrets
2  claim – – and what it could reasonably expect to be kept confidential – – because of
3  Villasenor's revelations.
4      Since Villasenor's deposition, Mattel has begun to produce some of the
5  documents requested years ago. Each document produced – – ███████████
6  ████████████████████████████████████████
7  ████████████████████ – – further bolsters MGA's unclean hands
8  defense and directly contradicts Mattel's trade secrets claims. Mattel argues that
9  the Court need not order it to produce responsive documents because it has already
10 started to do so. Mattel's position is akin to a child who "fesses up" after being
11 caught. After four years of concealing this evidence, Mattel cannot be trusted to
12 produce "appropriate documents" as it suggests. An order compelling production is
13 needed. The Requests are narrowly tailored to obtain information about Mattel's
14 theft of competitive information. The Court should compel responses to Requests
15 323, 16, 17, 31, 476 and 737.

## STATEMENT OF FACTS

### A. Villasenor Unequivocally Admitted to Having Obtained Competitive Information Through Improper And Illegal Means

In its Opposition, Mattel seeks to dilute the impact of Villasenor's admitted theft of competitive information by citing testimony where he also claims to have received information through legitimate sources. That Mr. Villasenor also read magazines while at Mattel, of course, does not negate his use of false names and pretenses to sneak into competitors' showrooms. Villasenor has unequivocally testified to his use of false names, fake business cards and other methods of deception to gain competitive information. Motion, p. 2-6. Documents produced after Villasenor testified, moreover, including the fake business card he used to get into showrooms, confirms his testimony. Indeed, after Villasenor was deposed, Mattel produced, for the first time, an email he wrote describing his conduct as

1  unlawful and potentially criminal.  Molinski Dec. [Dkt. No. 8567], Ex. 34.

2  Villasenor, however, was not alone in this practice.

3  **B.      <u>Witnesses Have Confirmed Villasenor's Admissions</u>**

4  On September 2, 2010, MGA deposed one of Mr. Villasenor's bosses at

5  Mattel, Matt Turetzky.  Mr. Turetzky confirmed all the bad things admitted to by

6  Villasenor.  Specifically, Mr. Turetzky admitted that ███████████████

7  ████████████████████████████████████████

8  ████████████████████████████████████████

9  ████████████████████████████████████████

10 ██████████████████████████████  Supp. Molinski Decl., Ex. A

11 (Turetzky Depo.) at 151:3-152:22.  Mr. Turetzky also admitted that when

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████  *Id.* at 154:13-155:1.

15 When asked about his knowledge of Mattel employees using false or

16 misleading information to get competitive information, Mr. Turetzky testified that

17 ████████████████████████████████████████

18 ██████████████████████████  *Id.* at 152:3-22.

19 Mr. Turetzky testified that ██████████████████████

20 ████████████████████████████████████████

21 ███  *Id.* at 274:21-275:8.

22 Mr. Turetzky confirmed that it ████████████████████

23 ████████████████████████████  *Id.* at 155:2-10.

24 He confirmed that ████████████████████████████

25 ██████████████████████████  *Id.* at 147:17-148:18.  He confirmed that

26 the ████████████████████████████████████

27 *Id.* at 302:7-20.  Finally, he confirmed that the ██████████████

28

- 3 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1  ████████████████████████████████████████████████

2  ██████████████████ *Id.* at 147:17-148:18, 150:8-151:1.

3  On September 7, 2010, Kelly Osier Dermody, another former Mattel

4  employee was deposed.  Ms. Osier admitted that she too had gone to Kinkos to

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  *Id.* at Ex. B. (Osier Depo.) at 33:14-34:8.  ████████████████████████

8  ████████████████████████████████████████  *Id.* at

9  75:14-76:13; 73:24-74:23.  She testified that ████████████████████

10 ████████████████████████████████████████████████

11 ████████████ *Id.* at 38:5-39:9.  ████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████ *Id.* at 88:1-89:21. ████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████

18 **C.   <u>Villasenor Was No Rogue Employee</u>**

19 Turetzky also confirmed Villasenor's testimony that this practice was

20 widespread at Mattel -- ████████████████████████████████ Supp. Molinski

21 Dec., Ex. A (Turetzky Depo.) at 155:2-10.  Even before Turetzky supervised

22 Villasenor, he admitted that ████████████████████████████████

23 ████████████████████████████████ *Id.* at 270:8-13.

24 ████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████████████

27 *Id.* at 266:9-16.  Even more alarming, Turetzky admitted that ████████

28 ████████████████████████████████████████████████

- 4 -

1  *Id.* at 267:10-268:5. ████████████████████████████████████
2  ████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████
4  ████████████████████████████ *Id*. at 268:6-22.

### D. <u>Mattel Stole Catalogs, Price Lists and Other Information From MGA Showrooms</u>

Mattel would like the Court to believe that although Mattel stole catalogs and other information from every other competitors' showrooms, they did not do so from MGA. This from a company that routinely held meetings themed ███ ███ that wrote memoranda with titles such as █████████" and █████ █████ to describe the unprecedented threat from MGA Bratz, and that adopted a strategy of ████████████████ Mattel immediately investigated any employee who left for MGA and it hired investigators to follow MGA executives and their families. Mattel commissioned ███ to find out everything it could on MGA's finances, strategy, products and management. But Mattel would never try to sneak into MGA's showrooms. Right.

The Court need not, however, rely on the absurdity of Mattel's position. Ample evidence shows that Mattel spies had targeted MGA and its showrooms. The primary evidence of that ████████████████████████████████ ████████████████████████████████████████ These are images that were not available in press releases, magazines or on the internet. Mattel has also produced ████████████████████████████████████████ ████████████████████████████████████████████████████████████ Villasenor also admitted to ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

- 5 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1   Moreover, on September 3, 2010 – the very day Mattel filed its Opposition,
2   in which Mattel asserts that there is no proof of Villasenor obtaining MGA
3   catalogs, Mattel produced, for the first time, an email from Villasenor that ███
4   ████████████████████████████ The email read:
5   
6   
7   
8   Supp. Molinski Dec., Ex. C. ███████████████████████████
9   
10  ████████████████████████████████ Bousquette
11  Depo. at 645:18-646:12.

### E. Had MGA Not Deposed Villasenor, It Would Have Never Obtained The Documents Showing Mattel's Theft

Since Villasenor's deposition, Mattel produced numerous documents evidencing Mattel's theft of MGA trade secrets. These include:

- ███████████████████████████████████████
  ███████████████████████████████████████
  ████

- ███████████████████████████████████████
  ████████████████

- ███████████████████████████████████████
  ███████████████████████████████████████
  ████████████████;

- ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████

- ███████████████████████████████████████
  ████

- 6 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1  None of this information was produced until August, 2010.

2  And as noted, on September 3, 2010 – after MGA filed this Motion – Mattel

3  produced an email from Villasenor ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

4  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  Supp. Molinski Dec., Ex. C.

## ARGUMENT

### I. THE REQUESTED INFORMATION IS RELEVANT TO THE CLAIMS AND DEFENSES

#### A. Mattel's Efforts To Justify Its Corporate Spying Are Irrelevant To Whether The Information Should Be Produced

Mattel first argues that its practice of spying on competitors is not relevant because MGA and other toy companies do not treat their toy fairs as confidential. Putting aside, for the moment, the factual inaccuracy in this claim, it simply fails to provide any reason for denying discovery as to Mattel's conduct. Mattel is welcome to argue at trial that the information it stole was not confidential. Good luck with that when Mattel needed to use fake business cards to get that information. But this does not mean that this information is not relevant. Indeed, MGA has requested the documents to refute Mattel's self-serving claims of the information not being confidential.

Mattel's claim that MGA and others do not consider the information in its showrooms confidential is also just flat wrong. MGA's 30(B)(6) deponent testified that information shown to retailers in private showrooms at toy fairs was highly confidential. MGA 30(b)(6) Depo. (I. Larian) at 4347:15-4348:1. MGA posted security at entrances to showrooms and limited admissions. *Id*. at 4305:7-4306:3. Signs were posted informing the invited guests not to take pictures. *Id.* at 4309:5-15. Only those with appointments were permitted into the showroom and the press were only permitted in meeting rooms outside of where the unreleased products were shown. *Id.* at 4309:5-15, 4388:17-4389:20. Price lists were stamped confidential and only given to retailers. *See, e.g.*, Molinski Dec. [Dkt. No. 8567], Ex. 36.

- 7 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1   Mattel witnesses have confirmed all of this.  Ms. Osier testified that ▮

2   ▮

3   ▮ Supp. Molinski Dec., Ex. B (Osier Depo.) at

4   31:14-32:20.  Villasenor testified that ▮

5   ▮

6   ▮ Villasenor Depo. at 94:3-19.  And both Villasenor and Osier testified

7   that ▮

8   ▮ Supp. Molinski Dec., Ex. B (Osier Depo.) at 35:9-20; Villasenor

9   Depo. at 46:24-47:3.  ▮

10  ▮

11  ▮

### B. Mattel's Practice Of Spying On MGA Is Relevant To MGA's Unclean Hands Defense

For three years Mattel has claimed that its information about *its* unreleased products, including its price lists, catalogs and other information about unreleased products are its trade secrets.  In describing its trade secrets in one document in January 2010, Mattel wrote:



Mattel Supp. Resp. to MGA Mexico Interrogatories No. 1-11 at 223-224.  In describing why a pre-release price list shown by Mattel to retailers at toy fairs was a Mattel trade secret, Mattel wrote:

- 8 -

1
2
3
4
5
6
7
8

9   *Id.* at 174.  Mattel witnesses, including 30(b)(6) witnesses, have described at length

10 h███████████████████████████████████████████████████████████

11 ████████████████████████████████████[1] Mattel 30(b)(6) Depo. (K. Storie) at

12 892:10-893:10; Arons Depo. at 74:5-2, 308:4-21; Debrowski Depo. at 86:7-19,

13 87:4-7; Eckert Depo. at 297:8-298:8, 453:3-16; Friedman Depo. at 116:6-12;

14 Wadleigh Depo. at 97:19-98:6.

15       The fact that Mattel was routinely stealing the very same information from

16 MGA – – unreleased product information and price lists – – is unquestionably

17 relevant to MGA's unclean hands defense.  Indeed, a jury can and should find

18 Mattel to be the ultimate hypocrite by claiming that MGA erred in hiring eight

19 employees who Mattel claims took trade secret information from Mattel when they

20 left – – even though told by MGA not to do so – – *when Mattel had been operating*

21 *an entire department tasked with stealing MGA's trade secrets*!

22       Mattel does not even attempt to argue that the requested information about

23 Mattel's theft of MGA information is not relevant to unclean hands.  As a result,

24 each of the requests seeking information about Mattel's spying on MGA should be

25 compelled.  (Requests 16, 17, 31, 476 and 737).

---

[1] Interestingly, since Villasenor's deposition, Mattel witnesses have run from that earlier testimony and are now claiming ███████████████████████████████████ Supp. Molinski Dec., Ex. B (Osier Depo.) at 25:22-25; 26:25-27:12; *id.* at Ex. A (Turetzky Depo.) at 316:24-317:14.

C. **Mattel's Practice Of Spying On Other Competitors Is Relevant To Both Unclean Hands And Mattel's Trade Secret Claim**

Mattel does not claim that it would be unduly burdensome to produce documents related to its theft of information from showrooms of other competitors. Indeed, MGA was hoping that Mattel would argue that it has stolen so much information from other companies that it could not possibly be expected to produce all of it. Instead, Mattel's only objection is based on relevance.

But to support its relevance objection, Mattel cites to cases suggesting that evidence of its pattern and routine of spying may not be admissible. Opp. at 13-14. Whether the information is *admissible*, of course, is a different inquiry from whether it is *discoverable*. Mattel's argument on admissibility, in fact, only proves why discovery is needed.

Mattel asserts that MGA has not made the requisite showing under Fed. R. Ev. 406 because MGA hasn't shown that the conduct "occurred with regularity" or was "reflexive." Opp. at 13-14. MGA disagrees on whether it can make that showing, even with what it has discovered so far. Villasenor testified that ███ ███████████████████████████████████████████████████████████████ ████████████████████████ Villasenor Depo. at 44:4-45:24. He testified that ██ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████ *Id.* at 153:19-155:17. Turetzky testified that ████████████████████████████████████████████████████████████████ ████████████████████████████ Supp. Molinski Dec., Ex. A (Turetzky Depo.) at 157:2-10 ████████████████████████████████████████████████████████████████ █████████████████████████ And putting aside testimony, document after document shows ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Motion at 14-15. Certainly, MGA has made a sufficient showing of this practice being routine as to justify further discovery to support that fact.

- 10 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

But whether this information is ultimately admissible does not mean it is not discoverable. Indeed, MGA requires further discovery to determine just how widespread, routine and reflexive this practice was at Mattel. Absent any burden to Mattel, there is no reason why MGA should not be permitted access to this information to further support its Rule 406 showing. Moreover, Mattel's first argument – – that competitors did not consider their catalogs and price lists confidential – – only serves to refute Mattel's second argument – – that MGA is not entitled to documents concerning other competitors. MGA expects that the catalogs of other competitors – – like MGA's price lists stolen by Mattel – – are marked on their face as confidential and will negate the claim that others do not consider this information confidential.

Mattel's practice of stealing competitors' unreleased product information is also relevant to – – and will negate – – Mattel's own trade secret claim. Mattel claims that its unreleased product information constitute its trade secrets. To prove that information constitutes a legally protectable trade secret, one thing Mattel must show is that it takes steps to maintain the secrecy of that information. Mattel claims that one way it protects its trade secrets is by informing its employees, through employment agreements and handbooks, to keep information confidential. But Mattel concedes that its agreements and handbooks do not inform employees of what information is considered confidential. Instead, it entrusts employees with using their best judgment as to what information should be treated as confidential.

The fact that Mattel itself does not treat its competitors' unreleased product information as confidential is directly relevant to whether Mattel's same information is being treated as such. Mattel cannot reasonably expect its employees to consider its unreleased product information as highly confidential when it treated that information of its competitors as fair game. If Mattel promotes an open culture of disrespect for the very same information of its competitors that Mattel claims to be its trade secrets, █████████████████████████████████

- 11 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1  ▮, a fact finder can reasonably find that Mattel has not taken reasonable
2  measures to educate its own witnesses on what is confidential.  If that is the view
3  that Mattel fosters, then it cannot hypocritically claim that its employee should
4  know, however, that Mattel's price lists and catalogs are to be considered
5  sacrosanct.  One necessarily leads one's employees by example – do unto others, as
6  the saying goes.

## II. MATTEL SHOULD BE COMPELLED TO PRODUCE ALL RESPONSIVE DOCUMENTS

### A. Mattel's Assertion That It Has Produced "Appropriate" Documents Should Be Rejected

10  Mattel asserts that it has produced "the appropriate documents" responsive to
11  the subject requests.  While it is unclear what Mattel considers "the appropriate
12  documents" – – a term found nowhere in the discovery statutes – – it is clear it does
13  not mean all responsive documents.  What MGA suspects Mattel has done is to rely
14  on Villasenor's claim that he never snuck into an MGA showroom to exclude from
15  production a whole host of documents concerning his acts of corporate espionage
16  on the grounds that it does not relate directly to MGA.

17  It is important that Mattel be ordered to produce all responsive documents,
18  including those not specifically identifying MGA catalogs or other confidential
19  information, to ensure that all relevant information be produced.  This is because
20  MGA expects that Mattel has carefully sifted through the communications and
21  documents of Villasenor, Turetzky and other members of the Market Intelligence
22  Group and produced only those documents specifically referencing MGA.  As a
23  result, documents that refer generally to the practice of using false representations
24  to gather competitive information will not be produced.  For example, an email
25  referring to using fake business cards to gather "competitive catalogs," would be
26  withheld simply because it did not specifically identify MGA.

27  Each of the Requests seeks information directly relevant to MGA's claims
28  and defenses, as well as to Mattel's own prima facie case.  The Court should order

- 12 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1  Mattel to produce all documents responsive to Requests 323, 16, 17, 31 and 476,
2  not just the documents Mattel deems "appropriate."

3  **B.   Mattel Has Not Produced All Responsive Documents, Even Those Concerning MGA**
4  
5       It is apparent that Mattel has not produced all relevant documents, and
6  certainly that it has not produced all responsive documents. A review of Mattel's
7  recent productions reveals:

(1) 

(2)

(3)

(4)

- 13 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1  (5)   █████████████████████████████████████

2      ███████████████████████████████████

3      █████████████████████████████████████

4      █████████████████████████████████████

5      ██████████████████████████████████████

6      ████████████████████████████████████

7      ██████████████████████████████████████

8      ███████████████████████████████████

9      █████████████████████████████████████

10 (6) ██████████████████████████████████████

11     █████████████████████████████████████

12     █████████████████████████████████████

13     █████████████████████████████████████

14     ████████████████████████████████████

15     ██████████████████████████████████████

16 (7) ██████████████████████████████████████

17 (8) ██████████████████████████████████████

18     ████████████████████████████████████

19     ██████████████████████████████████████

20     ██████████████████████████

**C.   Request 476 Should Not Be Limited**

Request 476 – served in 2007 – was narrowly tailored to get the very information only recently produced by Mattel. This Request specifically addresses Mattel's spying on MGA, and specifically identifies Mattel's practice of using false information to gain access to MGA showrooms. It requests all documents related to that practice, which would necessarily require production of documents related generally to that practice, even if not identifying MGA by name.

- 14 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)

1 | To the extent there was any limiting of this request prior to the Villasenor deposition, such limitation should not be continued. Mattel should not be permitted to benefit by its withholding of key information until the eve of the discovery cut-off.

### III. MGA SHOULD BE PERMITTED TO INSPECT MATTEL'S LIBRARY

Mattel asserts that because it has produced some responsive documents — — albeit years after required to do so — — there is no basis to inspect its library. Not true. Mattel's withholding of key documents until the eve of the discovery cut-off provides all the justification needed to allow an inspection of that library.

MGA suspects that Mattel may be resisting this inspection because that library may have been dismantled after Villasenor's raised concerns over the relevance of his conduct to MGA's unfair competition claim. If the library does exist, there is no burden to Mattel to allow an inspection.

Dated:   September 8, 2010            ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
WILLIAM A. MOLINSKI
Attorneys for MGA Parties

- 15 -

Reply ISO MGA Parties' Motion to Compel Docs Concerning
Mattel's Theft Of Competitors' Confidential Information
CV 04-9049 DOC (RNBx)