QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>      vs.<br><br>MGA ENTERTAINMENT, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br>(First Phase 2 Notice) |

31. The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of DOCUMENTS or information.

## Topics of Examination

1. Any and all opportunities that YOU claim that YOU lost or that became less valuable as a result of any and all conduct by MATTEL alleged or asserted by YOU in this ACTION. In connection with this topic, MGA shall, without limitation, identify the alleged lost opportunity, the PERSON with whom MGA believed it had an opportunity, the alleged value of the opportunity, all bases underlying the claimed value of the opportunity, DOCUMENTS and COMMUNICATIONS RELATING TO such opportunity, and any and all reasons that the opportunity was not pursued by YOU to conclusion or obtained.

2. The benefits, profits or gains, if any, that YOU claim MATTEL has received as a result of any and all wrongful acts by MATTEL alleged or asserted by YOU in this ACTION, including but not limited to any and all calculations, analyses, quantifications, reviews or summaries that supports or RELATES TO the type or amount of any such harm or benefit.

3. Any other injury or damages that YOU claim MATTEL caused YOU to incur or suffer, including but not limited to YOUR calculations and analyses RELATING TO such alleged damages or injury.

4. The factual basis for the claims YOU are alleging or asserting in this ACTION against MATTEL.

5.  The formation, operations, activities and management of IGWT, LEXINGTON, VISION CAPITAL, LLC, and OMNI 808 INVESTORS, LLC, including but not limited to the IDENTITY of their current and former officers, directors, owners, members, and managing members, the amount and source of any capital contributions, money borrowed or other cash or assets acquired, the IDENTITY of any bank or investment account with any financial institution for them, PAYMENTS and transfers made to and from such accounts, and the IDENTITY of any PERSON who has transferred or drawn funds from, or is authorized to transfer or draw funds from, any such bank or investment account.

6.  Actual and/or contemplated transactions involving IGWT, OMNI 808 INVESTORS, LLC, LEXINGTON, VISION CAPITAL, LLC, and/or THE ALLEGED INVESTORS (including but not limited to transactions RELATING TO the purchase of a portion of YOUR debt from Wachovia), and the terms and conditions of such transactions, including but not limited to YOUR transfer of any funds to or from them; the purported sale or transfer of YOUR PRODUCTS to or from them; YOUR COMMUNICATIONS with them; any information, including without limitation YOUR financial information, transmitted to or from or discussed with them; and all direct and indirect sources of funds used in any such transactions.

7.  YOUR relationship with OMNI 808 INVESTORS, LLC and THE ALLEGED INVESTORS.

8.  PAYMENTS of any ITEM OF VALUE between YOU or LARIAN and OMNI 808 INVESTORS, LLC or THE ALLEGED INVESTORS, including without limitation any assets belonging to YOU or LARIAN which have been pledged or proposed or requested to be pledged as security in favor of OMNI 808 INVESTORS, LLC and/or THE ALLEGED INVESTORS.

9.  Any plans YOU have made or consideration YOU have given to filing for bankruptcy since January 1, 2007, including without limitation YOUR

consultations with financial advisors in that regard and YOUR attempts to move, transfer or withdraw assets from MGA prior to any such filing.

10. YOUR distributions and any other PAYMENTS to LARIAN, including without limitation members of his family and any trusts associated with LARIAN, from January 1, 2004 to the present, and any PAYMENTS by LARIAN to YOU in that time period, including without limitation the amounts thereof and reasons therefor.

11. PAYMENTS YOU have made in excess of $100,000 since January 1, 2004 to any PERSON, including without limitation the recipients thereof and reasons therefor.

12. Transactions between YOU and LARIAN, or any PERSON affiliated with LARIAN, between 2004 and the present, including without limitation transactions involving the sale of BRATZ PRODUCTS.

13. The quantity of each BRATZ PRODUCT sold by YOU or YOUR licensees for each year from 2001 to the present to each purchaser, and YOUR profits from such sales, including without limitation: revenues; gross, net and incremental profits; cost of goods sold, unit cost and other costs; customer returns, rebates or credits; marketing and advertising costs, budgets, expenditures and investments (including media and nonmedia advertising, promotions, photography, online advertising, and merchandising).

14. YOUR creation and development of MOXIE GIRLZ and BFC, INK., including without limitation the amounts and sources of funds used in connection therewith, the timing thereof, YOUR financial condition before and after such creation and development and YOUR investments therein and promotions thereof.

15. YOUR acquisition of all or any portion of LITTLE TIKES, ZAPF, and SMOBY, including without limitation the amounts and sources of funds used in connection therewith, the timing thereof, YOUR financial condition before and after such acquisition and YOUR investments therein.

16. YOUR investments in BRATZ, MOXIE GIRLZ, LITTLE TIKES, BFC, INK., SMOBY, and ZAPF, and the PRODUCTS associated therewith, from 2001 to the present (or for each year for which the PRODUCT was designed, manufactured, distributed or sold by YOU or on YOUR behalf), including but not limited to YOUR advertising, market research, product development, product design, promotional expenditures, website development, and any other costs associated with or incurred in connection with their development, production or promotion.

17. Market research or analysis RELATING TO BRATZ and any of YOUR other PRODUCTS.

18. Market research or analysis RELATING TO BRATZ and MY SCENE.

19. YOUR COMMUNICATIONS with retail buyers and distributors regarding anticipated and actual volume of sales and shelf space for YOUR PRODUCTS and MATTEL's PRODUCTS.

20. YOUR BRATZ inventory levels and production capacity, including factory capacity, manufacturing orders, and production processes.

21. Any and all measures YOU have taken to protect YOUR trade secrets or other confidential information, and the timing of YOUR implementation of such measures.

22. Any and all steps or measures YOU have taken to enforce YOUR claimed intellectual property rights, including without limitation lawsuits YOU have filed, threatened to file (whether by letter or otherwise) or contemplated filing based on any perceived misappropriation of YOUR trade secrets or confidential information.

23. YOUR supply chain processes for each year from 2001 to the present, including YOUR use of the terms "sales forecasting," "sales forecasts," "sales planning," and "demand planning."

24. YOUR Forecast Portal (as the term is used in the DOCUMENT Bates numbered MGA2 0048977-83), its origins and objectives, its functions, its usage, and its results to date.

25. YOUR demand planning processes for each year from 2001 to the present, including the reasons for YOUR implementation of demand planning, its objectives, any changes in demand planning, and how YOU have assessed or measured its results to date.

26. YOUR scheduling, planning, inventory, shipping, distribution or forecasting software from January 1, 2001 to the present, including without limitation YOUR use of the John Galt, Atlas Planning System, Axapta, Velocity, Great Plains, Targit, WMS ("Warehouse Management System"), WMOS ("Warehouse Management Open Systems"), and including without limitation their purposes and functions, any modifications over time, YOUR concerns about their weaknesses, including any critical analysis RELATED thereto, what PRODUCTS and functions YOU kept on such systems, and any and all changes, improvements, acquisitions, and upgrades to such systems.

27. YOUR processes for sales planning, sales forecasting, and inventory forecasting, planning and replenishment for each year from 2001 to the present, including but not limited to YOUR use of any software systems, databases, algorithms, reports, meetings, the participants and their roles, as well as any significant changes in those processes and participants and the reasons therefor.

28. YOUR product development processes for each year from 2001 to the present, including but not limited to product research, line planning, marketing planning, focus groups, testing, viability studies, design freezes for product and packaging, tool start, final engineer pilot runs, and pre-production samples.

29. Any analyses of YOUR performance in sales planning, sales forecasting, demand planning, and inventory forecasting, planning and replenishment from 2001 to the present, including but not limited to measures the company has used,

1 reports, memos, computer records and consultant studies about such performance and
2 the performance reviews of participants in that process, as well as any changes in those
3 measures, processes and procedures and the reasons therefor.

4       30. Analyses, commentary, awards, complaints or
5 COMMUNICATIONS from retailers or distributors RELATING TO YOUR in-stock
6 performance, as well as clearance of and markdown on YOUR PRODUCTS, from
7 2001 to the present.

8       31. YOUR investigations RELATING TO any issue or allegation in this
9 ACTION, including without limitation the IDENTITY of any PERSON who conducted
10 any such investigation and any reports, notes, transcripts, recordings, or other
11 DOCUMENTS prepared in connection therewith.

12       32. YOUR policies, procedures and practices regarding use of
13 COMMUNICATIONS by MAIL or WIRE, including but not limited to (a) the
14 identification of YOUR methods of conveyance of COMMUNICATIONS (blackberry
15 service, etc.), (b) the identification of the conveyors (phone company, express mail
16 service, etc.), and (c) YOUR records and recordkeeping RELATING TO such
17 conveyors of COMMUNICATIONS, and the means by which and locations through
18 which the COMMUNICATIONS YOU have produced in this ACTION were
19 transmitted.

20       33. YOUR policies, procedures, and practices RELATING TO YOUR
21 use of WIRELESS DEVICES to send or receive e-mail messages to or from MGA's e-
22 mail system from January 1, 2000 to the present.

23       34. YOUR financial condition, including without limitation revenues,
24 profits, losses, assets, liabilities, balance sheets, profit and loss statements, financial
25 statements, asset book value, and liquidity.

26       35. All actual, planned, proposed, offered or requested PAYMENTS by
27 or on behalf of YOU to any government official, government entity, or law
28 enforcement authority, including without limitation in Brazil.

36. All COMMUNICATIONS with law enforcement in Mexico, Canada and the United States by or on behalf of YOU or any of YOUR current or former employees RELATING TO any alleged theft or taking of alleged MATTEL confidential or trade secret information by YOU or PERSONS currently or formerly employed by YOU or RELATING TO any other allegation contained in MATTEL's claims in this ACTION.

37. All PAYMENTS made directly or indirectly to any vendors or any other PERSON in Mexico, including without limitation attorneys, law firms and consultants, RELATING TO any actual or potential investigation or prosecution of any PERSON or entity for any alleged theft or other taking of alleged MATTEL confidential or trade secret information since 2001, including without limitation the IDENTITY of all recipients of such PAYMENTS, the amounts of each such PAYMENT, the reasons for each such PAYMENT and the use of each such PAYMENT by the recipient.

38. Any and all smuggling in which YOU have participated or engaged in and all efforts YOU have made to smuggle PRODUCTS or goods across international borders, including without limitation into or out of the United States.

39. The value of BRATZ from 2004 to the present.

40. Any efforts YOU have made or contemplated making since January 1, 2008, to encumber, assign, sell or transfer BRATZ intellectual property or any BRATZ rights YOU claim to hold (not including license agreements entered into in the ordinary course of YOUR business).

41. YOUR 2009 and 2010 BRATZ lines, including without limitation YOUR investments therein, the DESIGN elements incorporated therein and YOUR actual and projected profits therefrom.

42. Any and all joint defense and/or common interest agreements YOU have entered into in connection with this ACTION, and COMMUNICATIONS in connection therewith, including but not limited to the inception and termination dates of

each agreement, if any, and the IDENTITY of each PERSON who is a party to each such agreement.

   43. Any and all agreements RELATING TO the requested, actual, promised or contemplated PAYMENT of attorney's fees by YOU for the benefit of or on behalf of any PERSON not then-employed by YOU in connection with any actual, potential or prospective dispute or litigation with MATTEL, including without limitation DOCUMENTS RELATING thereto, the terms and conditions thereof and COMMUNICATIONS RELATING thereto.

   44. The IDENTITY of every PERSON whose attorney's fees YOU have paid in connection with this ACTION or in connection with any actual, potential or prospective dispute or litigation with MATTEL, and the amount of such fees.

   45. YOUR COMMUNICATIONS with MATTEL employees while they are employed by MATTEL, and YOUR policies and practices RELATING TO such communications.

   46. YOUR spoliation and/or concealment of DOCUMENTS or other evidence in connection with this ACTION.

   47. YOUR preservation of, searches for, collections of and productions of DOCUMENTS in connection with this ACTION, including without limitation which sources of information and STORAGE DEVICES YOU have searched for responsive DOCUMENTS in connection with this ACTION (and which YOU have not) and YOUR search methods in connection with those searches.

   48. Any and all efforts by YOU or by any PERSON acting on YOUR behalf to search for, identify, locate, preserve, remove or delete any DOCUMENT, physical or electronic, that contains or contained any portion of any DOCUMENT originating from or authored by MATTEL, including without limitation any DOCUMENT containing internal MATTEL information, and the results of such efforts, including the identification of DOCUMENTS located and the location,

1  including custodian, file name, or STORAGE DEVICE (including path and file name),
2  where any such DOCUMENT was discovered.