```
 1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
 2    (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
 3    (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
 4    (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
 5  Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
 6  Facsimile: (213) 443-3100

 7  Attorneys for Mattel, Inc.
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE</u> 30(B)(6)** |
| AND CONSOLIDATED ACTIONS | |

Exhibit no. 1705  (30 pgs)
Date: 1/24/08
Tonnu   P. Pyburn

Exhibit D, Page 35      1705.1

character, or any portion thereof; (ii) any playset and accessory that MATTEL distributes under the name "AcceleRacers" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "AcceleRacers" or any derivative thereof.

31. "FORMER MATTEL EMPLOYEES" means any former Mattel employee who left MATTEL to join YOU, including but not limited to Janine Brisbois, Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado, Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

32. "COMPLAINT" means the Complaint for False Designation of Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair Competition (15 U.S.C. § 1125(a)); <u>Cal. Bus. & Prof. Code</u> § 17200 et seq. and California Common Law); Dilution (15 U.S.C. § 1125(c), <u>Cal Bus. & Prof. Code</u> § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or about April 13, 2005.

33. The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1. The invention, creation, origin, conception, authorship, design and development of the CONTESTED MGA PRODUCTS, including without limitation the

circumstances under which and the date(s) on which each occurred and the IDENTITY and role(s) of each PERSON involved.

    2. Any revisions, modifications or changes made to any of the CONTESTED MGA PRODUCTS, including without limitation any proposed alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications or changes were made or proposed and the reasons for their implementation or non-implementation.

    3. The development of YOUR 2005 product line, including the IDENTITY of each PERSON who participated in the decision making leading up to YOUR 2005 product line and any changes or modifications thereto, and the invention, creation, origin, conception, authorship, design, development, manufacture, distribution and sale of products therein.

    4. The development of YOUR 2006 product line, including the IDENTITY of each PERSON who participated in the decision making leading up to YOUR 2005 product line and any changes or modifications thereto, and the invention, creation, origin, conception, authorship, design, development, manufacture, distribution and sale of products therein.

    5. The content, meaning, authenticity and source of COMMUNICATIONS, advertisements, and/or promotional statements that provide a basis for any claim by YOU against MATTEL.

    6. COMMUNICATIONS between YOU and any PERSON, including without limitation any retailer or distributor, that REFER OR RELATE TO the CONTESTED MATTEL PRODUCTS.

    7. The first date of manufacture, shipment and availability for distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

8. The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein.

9. The sculptures, including all preliminary sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

10. The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

11. The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including the identity of the channels in which such have been or are disseminated or distributed.

12. The ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

13. Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

14. The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred.

15. YOUR expenditures in advertising or promoting the CONTESTED MGA PRODUCTS, including by year and by medium.

16. Any contracts or licenses entered into, negotiated, proposed, or requested RELATING TO any of the CONTESTED MGA PRODUCTS.

17. The target market or potential target market, and the demographics of any actual, potential or prospective consumers, customers, purchasers or licensees of the CONTESTED MGA PRODUCTS.

18. The number of units of the CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in inventory, imported, exported, shipped, sold, or offered for sale by any PERSON, including but not limited to YOU.

19. YOUR revenues, costs and profits for each of the CONTESTED MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross, incremental and net profits for each of the CONTESTED MGA PRODUCTS.

20. Any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to the returns of, or the number of or rate of defects for, such products.

21. Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

22. Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

23. Any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS, included but not limited to YOUR knowledge of the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS or any of the CONTESTED MATTEL PRODUCTS.

24. Marketing studies, marketing plans, sales plans, sales forecasts, strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL PRODUCTS.

25. MATTEL's alleged copying, infringement or dilution of the CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

26. To the extent not disclosed in response to any other Topic, all other facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

27. COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

28. Any damage, loss, injury or unjust enrichment that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue, price erosion, or consequential or incidental damage, including but not limited to the causation for any such alleged unjust enrichment, damage, loss, or injury and the amounts of all such damage, loss, injury or unjust enrichment.

29. When, and under what circumstances, YOU became aware that Mattel had created, designed, developed, sold, offered for sale or licensed the CONTESTED MATTEL PRODUCTS.

30. The copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

31. Any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

32. The hiring, engagement, or retention by YOU of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to the terms of all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product.

33. YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of YOUR receipt of such DOCUMENT, data and/or information.

34. YOUR knowledge of any MATTEL product prior to the time that such product had been announced or disclosed by MATTEL to retailers or the public, including but not limited to the CONTESTED MATTEL PRODUCTS.

35. YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

36. The search and seizure of DOCUMENTS by Mexican authorities from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that REFER OR RELATE thereto.

37. All payments of money or any item of value made by YOU, directly or indirectly, or offered, proposed, promised, requested or solicited by or from YOU, directly or indirectly, in connection criminal proceedings or potential or prospective criminal proceedings against YOU or any of YOUR employees, including without limitation Gustavo Machado, and including without limitation YOUR payment or reimbursement of legal fees for or on behalf of any PERSON.

1     38.   COMMUNICATIONS between YOU and any PERSON RELATING TO the resignation or departure of any FORMER MATTEL EMPLOYEES from Mattel.

    39.   The compensation, money or any other item of value paid to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

    40.   The identity of DOCUMENTS RELATING TO any MATTEL product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or shared with YOU, directly or indirectly.

    41.   COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

    42.   The content, authenticity, accuracy and meaning of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

    43.   COMMUNICATIONS between YOU and Pablo Vargas San Jose prior to April 20, 2004.

    44.   COMMUNICATIONS between YOU and Janine Brisbois prior to September 27, 2005.

    45.   COMMUNICATIONS between YOU and Ron Brawer prior to October 2, 2004.

    46.   COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004.

    47.   COMMUNICATIONS between YOU and Mariana Trueba Almada ("Trueba") prior to April 20, 2004.

48. The existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

49. The factual basis for YOUR claim that any of the CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

50. The factual basis for YOUR claim that any of MATTEL's actions have caused actual dilution.

51. Mattel's alleged intimidation, coercion or threats to retailers, licensees, suppliers and others in the industry."

52. The factual basis for YOUR claim that Mattel "serially imitated and copy-catted [sic] the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging."

53. The basis for YOUR claim that the Bratz dolls launched in 2001 were "unique and distinctive."

54. The identification of YOUR alleged trade dress in connection with the CONTESTED MGA PRODUCTS, including without limitation with respect to "themes," and the factual bases for YOUR claim that YOU have any legally protected interest in such trade dress.

55. The factual basis for YOUR allegation that advertising executives have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they expressed and the IDENTITY of each such executive.

56. The factual basis for YOUR allegation that the press confused YOUR products with MATTEL products and "has taken notice" of alleged confusion between "Bratz" and "My Scene."

57. All COMMUNICATIONS relating to customers who have allegedly contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED MATTEL PRODUCTS.

58. The factual basis for YOUR claim that MATTEL has infringed, diluted or otherwise violated any trade dress that YOU contend YOU own in the CONTESTED MGA PRODUCTS.

59. The factual basis for YOUR claim that MATTEL has engaged in "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

60. COMMUNICATIONS between YOU and any PERSON RELATING TO the departure from MATTEL of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

61. COMMUNICATIONS between YOU and any PERSON RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

62. COMMUNICATIONS between YOU and any current or FORMER MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of any idea, concept, design, or product.

63. COMMUNICATIONS between YOU and any PERSON RELATING TO the retention, destruction, transfer, or use of any information or DOCUMENTS known to or possessed by any current or former MATTEL employee or contractor.

64. Mattel's alleged "warnings," "threats" or "intimidation" that are the subject of YOUR claims, including but not limited to all COMMUNICATIONS with any present or former licensees of MATTEL and any present or former distributors and retailers of MGA and MATTEL products.

65. MATTEL's alleged responsibility for "shortage of doll hair in October 2002."

66. MATTEL's alleged "manipulation of the retail market," including by its alleged tampering with MGA's retail displays.

67. MATTEL's alleged false statements about YOU or YOUR business practices.

68. MATTEL's alleged violation of any rules or restrictions relating to data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

69. COMMUNICATIONS between YOU and NPD, other than periodic reports transmitted by NPD or information made available to YOU by NPD, between January 1, 2000 and the present.

70. YOUR contracts and agreements with NPD since January 1, 1999, including without limitation any allegation by NPD that YOU were or have been in breach or violation thereof.

71. The status of YOUR NPD subscription between January 1, 1999 and the present.

72. MATTEL's alleged inducement of CARU to place onerous restrictions on MGA advertisements, and require MGA to amend aspects of commercials that have gone unchallenged in other parties' commercials.

73. COMMUNICATIONS between YOU and CARU between January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or matter that YOU are relying upon in this ACTION.

74. MATTEL's allegedly improper influence with or within TIA, including but not limited to the procedures for and manner in which the Toy of the Year was selected for 2003.

75. YOUR COMMUNICATIONS with TIA RELATING TO Toy of the Year since January 1, 2000 or any other subject or matter on which YOU base any claim.

76. MATTEL's purported power, influence and intimidation to threaten retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to limit or prevent MGA from doing business.

77. MATTEL's alleged intimidation of or threats against MGA's current and potential employees.

78. YOUR monthly, quarterly and annual financial reports, including financial statements (both audited and unaudited) for the years 1998 through the present, inclusive.

79. The identity of DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL (excluding MATTEL products that YOU purchased at retail) at any time since January 1, 1998.

80. The destruction of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

81. COMMUNICATIONS with, or inquiry or investigation by, any government entity, industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

82. YOUR understanding or belief of whether the BRYANT/MGA AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and COMMUNICATIONS related thereto.

83. The public perception of the CONTESTED MGA PRODUCTS, including without limitation with respect to the appropriateness or suitability of Bratz for children.

84. The factual basis for YOUR alleged belief that YOU had the right to market products developed as a result of the BRYANT/MGA AGREEMENT and to the lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

85. The factual basis for YOUR contention that YOU believed at the time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU entered into the BRYANT/MGA AGREEMENT.

86. YOUR belief or non-belief that BRYANT created or improved any of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon.

87. Any investigation or inquiry YOU conducted to confirm the timing of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

88. The factual bases for YOUR affirmative defenses.

89. The IDENTITY of all DOCUMENTS that were in the possession of Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP at any time prior to January 1, 2007.

90. The factual bases for YOUR allegations in the GLASER LETTER, including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly privileged and confidential.

91. Any services Farhad Larian has provided to YOU since January 1, 2005, including any litigation consulting services.

92. The IDENTITY of DOCUMENTS that Farhad Larian was provided with or had access to, including YOUR allegedly privileged and confidential DOCUMENTS, since January 1, 2001.

93. The terms of any contracts or agreements, including any confidentiality agreements, between YOU and Farhad Larian.

94. The identity of each doll, accessory, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative of any BRATZ DESIGN.

95. Except for deposition testimony provided in this ACTION, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

96. The authenticity, content, timing, meaning, and truth and accuracy of YOUR COMMUNICATIONS with any PERSON, including without limitation any retailer and the media, that REFER OR RELATE TO the National Labor Committee dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz" or the Hau Tai K4 factory.

97. The identity of each doll, product, packaging or other matter that YOU have accused of infringing, diluting or otherwise violating YOUR purported rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each manufacturer of each doll, product, packaging or other matter and the specific aspects of each such doll, product, packaging or other matter that YOU have claimed was confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

98. The identity, and outcome and resolution, of each lawsuit that YOU have brought or cease and desist letter YOU have sent each doll, product, packaging or other matter that YOU have accused of infringing, diluting or otherwise violating YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

99. The job responsibilities of each FORMER MATTEL EMPLOYEE in the first six months after each joined MGA.

100. YOUR scheduling, planning, inventory, shipping, distribution or forecasting software since January 1, 2005, including but not limited to any and all changes, improvements, acquisitions, upgrades and purchases.

101. DOCUMENTS created by each of the FORMER MATTEL EMPLOYEES in the first six months after each joined MGA

102. The make-up, source, calculation and purpose of the amounts presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and MGA 08185789 (Exhibit 662).