QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO MGA'S CORRECTED OBJECTIONS TO SEPTEMBER 1, 2010 ORDER OF DISCOVERY MASTER HANSEN RE CONTINUED DEPOSITION OF ISAAC LARIAN**<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br><br>**Phase 2**<br><br>Discovery Cutoff: October 4, 2010<br>Pre-trial Conference: January 4, 2010<br>Trial: January 11, 2011 |

# TABLE OF CONTENTS
Page
MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ..................................................................................................... 1

ARGUMENT ........................................................................................................... 6

I.  MGA CANNOT SHOW THAT THE DISCOVERY MASTER'S RULING REQUIRING MGA'S DESIGNEE TO APPEAR FOR AT LEAST ANOTHER THREE HOURS OF DEPOSITION ON TOPIC NOS. 5, 10, 15 AND 26 WAS CLEARLY ERRONEOUS ............................. 6

    A.    The Deposition Concluded Early Because of a Court Hearing .............. 6

    B.    That Mr. Larian Has Been Deposed in his Individual Capacity Is Irrelevant .................................................................................................. 7

    C.    MGA's Claim That Mattel Did Not Ask Questions on the Topics On Which Larian Was Designated is False .............................................. 7

CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

Casey v. U.S. Bank Nat'l Ass'n,
 127 Cal. App. 4th 1138 (Cal. Ct. App. 2005) ....................................................... 7

Ermolieff v. R.K.O. Radio Pictures,
 19 Cal. 2d 543 (Cal. 1942) ................................................................................... 8

Guidiville Band of Pomo Indians v. NGV Gaming Ltd.,
 531 F.3d 767 (9th Cir. 2008) ................................................................................ 7

Southern Pac. Trans. Co. v. Santa Fe Pac. Pipelines, Inc.,
 74 Cal. App. 4th 1232 (Cal. Ct. App. 1999) ......................................................... 8

**Statute**

California Civil Code § 1644 .................................................................................... 8

California Civil Code § 1645 .................................................................................... 8

Federal Rules of Civil Procedure 30(b)(6) ...................................................... 1, 2, 4, 8

-ii-

MATTEL OPPOSITION TO MGA'S OBJECTIONS TO SEPTEMBER 1, 2010 ORDER RE LARIAN DEPOSITION

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

This Court compelled, and MGA has conceded that it is required to, produce a 30(b)(6) designee on Category Nos. 5, 10, 15 and 26, which includes topics relating to MGA's own claims. The deposition of MGA's chosen designee on these subjects, Isaac Larian, ended early because of the Court hearing starting at 5 p.m. on September 1, 2010. Accordingly, Discovery Master Drew Hansen properly ordered MGA's designee to appear for at least three more hours of deposition that were also already compelled by Discovery Matter Order No. 99 and had been scheduled. MGA's argument that Mattel should not be permitted even the time that it was ordered and scheduled, due to the fortuity of a conflicting hearing time, is baseless. Indeed, it is another instance of MGA obstructing basic discovery into its own amorphous, moving target claims. MGA's excuses for refusing to produce its designee as ordered are not only irrelevant, as the Discovery Master also held, but baseless. MGA's own examples show Mattel sought testimony that was directly within the scope of Larian's designation. The Discovery Master's ruling was not clearly erroneous, and MGA cannot show otherwise. It should be upheld.

## Background

<u>The Court Compelled MGA's Deposition On Category Nos. 5, 10, 15 and 26.</u> On June 14, 2010, the Court granted in part Mattel's Motion to Compel MGA to Produce 30(b)(6) Witnesses as to Category Nos. 5, 10 and 15 in Mattel's March 2, 2010 letter.[1] The Court held in abeyance Mattel's motion to compel with regard to Category 26 because MGA promised it would provide a knowledgeable

---

[1] <u>See</u> Order Granting In Part and Denying in Part Mattel's Motion to Compel MGA Entertainment, Inc. to Produce 30(b)(6) Witnesses, dated June 14, 2010 (Docket No. 8104) at 4-7; <u>see also</u> March 2, 2010 letter from M. Zeller to A. Hurst and T. McConville. Mattel's March 2, 2010 letter distilled topics from the two pending 30(b)(6) notices into 28 categories on which it sought an MGA 30(b)(6) witness.

30(b)(6) witness and ordered supplemental briefing regarding the status of the deposition on or before June 26, 2010. Shortly before this deadline, the parties filed a stipulation that MGA "will produce witnesses on Category 26 on June 29 (Isaac Larian) and July 21 (Ninette Pembleton) and the parties will submit the supplemental briefing required by the June 14, 2010 Order on July 26, 2010."

<u>MGA Designates Larian on Category Nos. 5, 10, 15 and 26.</u> MGA designated Isaac Larian to testify on Category Nos. 5, 10, 15 and 26 (in particular "the non-trade dress aspects of unfair competition").[2] The deposition of MGA on Category Nos. 5, 10, 15 and 26 commenced on July 7, 2010. It became apparent at the deposition that MGA had designated Larian on these topics not because he is the most knowledgeable about them, but for the purpose of showing him Confidential and Attorney's-Eyes-Only designated documents in order to circumvent prior Court orders barring them from otherwise doing so.[3]

<u>Larian Threatens Mattel's Counsel.</u> At the end of the day, MGA agreed to an additional day of deposition of Larian (with Mattel reserving its position on how much additional time would be necessary, particularly in light of Larian's conduct at the deposition and lack of preparation) and produced him on August 12, 2010. At that resumed deposition, a week after the Ninth Circuit ruling, Larian wasted inordinate amounts of time – including by reading lengthy documents into

---

[2] See June 21, 2010 email from A. Hurst to M. Zeller; <u>see also</u> June 18 email from A. Hurst to M. Zeller; June 25, 2010 letter from M. Zeller to A. Hurst; Stipulation Regarding Supplemental Briefing Regarding Category 26 Of Mattel Inc.'s Notice of Rule 30(b)(6) Deposition of MGA Entertainment, Inc., dated June 26, 2010. (Docket No. 8185).

[3] Deposition Transcript of MGA 30(b)(6), dated July 7, 2010 ("7/7/10 Larian Tr."), at 2639:21-2641:6 ("THE WITNESS: I love to come back, because I love this -- this portion of the deposition."); <u>see, e.g.</u>, Order Granting in Part and Denying in Part Motion to Modify Stipulated Protective Order, dated June 17, 2010 (Docket No. 254 in Case No. 9059). Upon the Court's direction, Mattel will lodge the Larian transcripts with the Court.

the record,[4] by providing deliberately nonresponsive answers,[5] and by indulging in overwrought personal attacks on Mattel's counsel.[6] Larian's misconduct was especially pronounced in the hour and a half before the Discovery Master arrived at the deposition.[7] For example, Mr. Larian started the deposition by deliberately misaddressing Mattel's attorney, Mike Zeller, as "Mr. Villasenor."[8] Larian proceeded to call Mattel's counsel "henchmen," "thieves" and "hoodlums"[9] and threatened that "I will have you disbarred and behind jail. You . . . and Jon Corey. You will see that."[10] And, eliminating any doubt that Larian's inappropriate behavior was a tactic effort to intimidate, he emphasized: "Fear, I love it."[11] Larian personally harassed Mattel's counsel telling him things such as: "I am not going to answer you anymore. You better go smoke your -- your cigarette and take your drugs."[12] The Discovery Master noted the lack of decorum that prevented Mattel from conducting a fair deposition in his absence.[13]

Even after the Discovery Master arrived, Larian and his counsel wasted huge amounts of time by arguing over countless questions and making outbursts, each of which interrupted questioning and required time for the Discovery Master to address.[14] For example, apparently hoping to deflect attention from Larian's overt

---

[4] See, e.g., Deposition Transcript of MGA 30(b)(6), dated August 12, 2010 ("8/12/10 Larian Tr."), at 3759:1-3761:12, 3853:14-3856:12, 3931:1-3937:17, 3989:13-4008:20.
[5] See, e.g., 8/12/10 Larian Tr. at 3928:10-3938:6, 3985:10-4008:20.
[6] See, e.g., 8/12/10 Larian Tr. at 3757:8-3758:8, 3763:3-3766:22, 3755:23-3756:7, 3756:16-23, 3762:19-21, and 3778:11-3779:6 ("[Larian] You look embarrassed. You look nervous. And you should be. And Jon Corey should be. I'm not.")
[7] 8/12/10 Larian Tr. at 3753:3-3828:3. The deposition started at 8:14 a.m. The Discovery Master arrived at 9:44 a.m. Id.
[8] 8/12/10 Larian Tr. at 3753:4-5.
[9] 8/12/10 Larian Tr. at 3756:16-23, 3778:11-3779:6, 3763:3-3766:22.
[10] 8/12/10 Larian Tr. at 3763:18-22.
[11] 8/12/10 Larian Tr. at 3768:18.
[12] 8/12/10 Larian Tr. at 3762:19-21.
[13] 8/12/10 Larian Tr. at 3954:11-3955:23.
[14] See, e.g., 8/12/10 Larian Tr. at 3873:13-3877:10, 3886:22-3888:11, 3920:9-3922:17, 3977:23-3979:23, 4028:23-4030:9, 4056:14-4058:9, 4066:13-4069:15.

threats, MGA's counsel falsely complained that Mattel was trying to intimidate the witness, leading the Discovery Master to conclude, "I don't think that Mr. Larian is going to be intimidated. There may be a lot of things going on in the deposition, but I don't think Mr. Larian is going to get intimidated."[15] Mr. Larian affirmed, "Definitely not by Mike Zeller."[16]

<u>Discovery Matter Order No. 99 Required Larian to Sit for an Additional Day of Deposition on September 1, 2010.</u> As a result of the enormous amounts of time wasted at the second day of the deposition, the Discovery Master ordered Larian to sit for an additional day of deposition on Category Nos. 5, 10, 15 and 26, with Mattel again reserving its position as to whether additional time would be necessary after that day. Order No. 99 at 2. The Discovery Master set the time for the deposition as starting at 9 a.m. and ending at 7 p.m.[17] MGA did not object to the Discovery Master's ruling.

<u>The September 1, 2010 Deposition Was Ended Earlier Than Scheduled Because of the Court Hearing.</u> On August 27, 2010 – after the Discovery Master had already ordered Larian's continued deposition and after MGA had agreed to produce him on that day – the Court ordered Mr. Larian to appear at a hearing at 5 p.m. on September 1, 2010 to continue examination regarding Mattel's pending waiver and crime-fraud motion.[18] As a result, Larian's deposition on September 1, 2010 ended at 3:49 p.m., more than three hours earlier than provided by Discovery Matter Order No. 99, so that the parties could attend the Court hearing at 5 p.m.[19] At the deposition, counsel for MGA reiterated that the deposition would end earlier

---

[15] 8/12/10 Larian Tr. at 3893:17-3894:11.
[16] Id.
[17] Deposition Transcript of MGA 30(b)(6), dated September 1, 2010 ("9/1/10 Larian Tr."), at 4429:11-13 ("[Discovery Master] In terms of what Order 99 made clear, I believe is that the 30(b)(6) would be here for today from nine to seven.")
[18] Phase 2 Discovery Matter Order No. 99, dated August 25, 2010 ("Order No. 99") at 2 (Docket No. 8642); August 27, 2010 Hearing Transcript at 1:205-213.
[19] 9/1/10 Larian Tr. at 4434:17-20. Larian also arrived after the required 9 a.m. start time and therefore delayed the start of the deposition as well.

than scheduled because of the Court hearing.[20]  Because the deposition ended earlier than scheduled, Discovery Master Hansen ordered Larian to appear for at least three more hours to complete the deposition on the basis that Discovery Matter Order No. 99 required it.[21]  He stated: "[b]ased on the evidence that I have before me . . . I think that, you know, in the abstract, it just seems fair to me that Mattel would at least get, you know, the time frame that it cut short. . . . Even if [Mattel's counsel] has spent all of his time on subjects that are outside the scope, which I'm not conceding is the case, I'm just saying, even assuming that argument's true, the fact of the matter is, it's not seven o'clock.  And per Order No. 99, . . . we're short of that time frame."[22]

      At the September 1, 2010 Deposition, Larian and His Counsel Once Again Evaded Questioning and Wasted Time.  In addition to the early stop time, Mattel was also denied an opportunity to complete the deposition by Larian's and his counsel's delay tactics and successful efforts to waste time.  Besides refusing to provide meaningful testimony, Larian took inordinate amounts of time consulting documents he brought with him to the deposition, made off-topic comments into the record, and took frequent breaks throughout the day.[23]  Larian also professed not to understand basic terms such as "trade secrets," "doing business" and "distributors" that any properly prepared 30(b)(6) witness (or indeed any business person who was attempting in good faith to cooperate in the deposition process) would have no

---

[20] 9/1/10 Larian Tr. at 4424:18-4426:5.
[21] 9/1/10 Larian Tr. at 4429:19-23 ("[DISCOVERY MASTER:] [I]t's my finding that we said the deposition was going to go nine to seven.  We're ending early, so at a minimum Mattel's entitled to, you know, at least another three hours.  That would be my ruling."); Order No. 99 at 2, n.1.
[22] 9/1/10 Larian Tr. at 4430:2-9, 4431:9-15.
[23] See, e.g., 9/1/10 Larian Tr. at 4415:17-4420:25 (consulting documents), 4202:6-19, 4378:11-19, 4412:8-24 (breaks), 4233:24-4234:19, 4242:6-20, 4243:19-4244:9 (off-topic remarks).  Larian also disrupted the deposition and wasted time by stating his own objections to questions.  9/1/10 Larian Tr. 4259:20-4261:2.

difficulty with.[24]  Moreover, counsel for MGA engaged in extensive colloquy and also repeatedly interrupted the questioning -- at times mid-question -- demanding explanations for the relevance of certain areas of inquiry.[25]  Although the deposition started at 9:10 a.m. and concluded at 3:49 p.m., the parties were on the record for only 4 hours and 41 minutes – at least 40 minutes of which were wasted with argument and colloquy alone.  All of these tactics obstructed the deposition, tactically broke up the flow of the questioning, required repetition of questioning, wasted time and caused delay.

## Argument

### I. MGA CANNOT SHOW THAT THE DISCOVERY MASTER'S RULING REQUIRING MGA'S DESIGNEE TO APPEAR FOR AT LEAST ANOTHER THREE HOURS OF DEPOSITION ON TOPIC NOS. 5, 10, 15 AND 26 WAS CLEARLY ERRONEOUS

#### A. The Deposition Concluded Early Because of a Court Hearing

The Discovery Master ruled in Order No. 99 that this deposition, as with others, should run from 9 a.m. to 7 p.m.  After the deposition was scheduled, the Court ordered Mr. Larian to appear at a hearing at 5 p.m. on that day to continue examination regarding Mattel's waiver and crime-fraud motion.  As a result, Larian's deposition on September 1, 2010 ended at 3:49 p.m., more than three hours earlier than provided by Order No. 99.[26]  Because the deposition ended earlier than provided by Order No. 99,[27] Discovery Master Hansen properly ordered Larian to appear for at least another three hours to complete the deposition.[28]  MGA cannot show that the ruling was clearly erroneous.

---

[24] 9/1/10 Larian Tr. at 4184:11-18, 4371:6-4374:18, and 4335:19-4336:6.
[25] See, e.g., 9/1/10 Larian Tr. 4173:19-4174:22, 4206:13-4209:9, 4219:2-4222:8 (extensive colloquy), 4159:8-4160:2, 4245:22-4246:2 (interrupting questioning).
[26] 9/1/10 Larian Tr. at 4434:17-20.
[27] Order No. 99, at 2, n.1.
[28] 9/1/10 Larian Tr. at 4429:19-23.

### B. That Mr. Larian Has Been Deposed in his Individual Capacity Is Irrelevant

MGA makes much of the fact that Larian has been previously deposed and examined at trial in this case.[29] Its claim that Larian is burdened with extensive examinations is a red-herring. To state the obvious, MGA has different obligations with respect to a corporate designee than it does with individual witnesses – including the duty to properly educate its 30(b)(6) designees. Unless and until MGA stipulates that all of Larian's individual testimony is binding on the corporation as a whole – including answers stating that he lacked knowledge or information – MGA's argument misses the point. Nor is Larian entitled to sympathy. MGA affirmatively chose to designate Larian on these topics. MGA had the option to designate someone else to testify regarding these topics, but apparently selected Larian so that it could show Larian AEO information that prior Orders barred Larian from seeing (and that Larian indeed threaten on the record to disseminate and then did disseminate in violation of the Protective Order). MGA's complaints on this score are frivolous.

### C. MGA's Claim That Mattel Did Not Ask Questions on the Topics On Which Larian Was Designated is False

MGA alleges that Mattel has asked "*very few* questions on the topics on which [Larian] was designated." (Motion at 5) (emphasis added). As noted by the

---

[29] Mr. Eckert has been deposed the same number of days in Phase 2 and in fact for a longer period of time than Larian. Mr. Eckert has testified for a total of 44 hours and 37 minutes in Phase 2. In contrast, Mr. Larian has testified for 41 hours and 40 minutes – which doesn't even account for the huge amounts of time wasted by Mr. Larian and his counsel. Under the tit for tat standard, which MGA has vigorously advocated, Mattel should get additional deposition time for this additional reason. Furthermore, when Mattel informed the Court that at least another full day was necessary for this deposition, the Court appeared inclined to require it. As the Court is aware, MGA's claims and defenses are not only a hodge-podge of sprawling, disparate gripes about everything from shelf space to packaging, but they have repeatedly changed, The time that Mattel has had to explore these matters simply has not been sufficient, particularly given the misconduct of MGA's designees such as Larian at the deposition sessions.

Discovery Master and as demonstrated by the examples cited by MGA itself, that is simply false. Mattel has sought testimony directly within the scope of Category Nos. 5, 10, 15 and 26. That Mattel has had to ask follow up questions and conduct necessary cross-examination based on Larian's non-responsive answers does not make Mattel's inquiry outside the scope of the compelled topics. Nor does the fact that Mattel has been forced to re-ask questions (within the scope of the topics) that Larian purposefully refused to answer or that Larian or MGA's counsel interrupted mid-question make Mattel's examination inefficient in any way.[30]

MGA's argument that Mattel improperly asked "legal questions" about the meaning of Mattel's contracts is baseless. MGA's understanding of Mattel's contracts is directly relevant[31] and at issue in Category No. 5.[32] As the Court held,

---

[30] Moreover, if MGA believes a topic is out of scope, its remedy is to make that objection in a succinct and non-argumentative way. Instead of doing that, counsel for MGA obstructed the deposition and wasted time by demanding a showing of how a line of question was within the scope of certain topics, and through lengthy colloquy and coaching. See, e.g., 4157:22-4158:9, 4173:16-4174:5, 4178:20-4179:19, 4206:11-22, 4212:1-4214:8, 4219:2-15, 4220:14-4221:8.

[31] MGA's knowledge of Mattel's contracts with its employees, and what they mean, is directly relevant to Mattel's claims. For example, "[t]he elements of a cause of action for intentional interference with contract are: (1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Guidiville Band of Pomo Indians v. NGV Gaming Ltd., 531 F.3d 767, 774 (9th Cir. 2008) (citations omitted). MGA's knowledge of Mattel's contracts also goes to other claims. For example, MGA's knowledge of Mattel's contracts with its employees is relevant to Mattel's claim for aiding and abetting breach of fiduciary duty. Liability for aiding and abetting breach of fiduciary duty attaches where a person "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act…." Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (Cal. Ct. App. 2005) (quotations omitted). Therefore, MGA's knowledge and interpretation of any terms in Mattel's contracts that may give rise to a fiduciary duty – as the Court has already found as to Mattel's agreement with Bryant – is relevant to Mattel's claim for aiding and abetting breach of fiduciary duty. And similarly, MGA's knowledge and interpretation of the trade secret and confidentiality provisions of Mattel's agreements are directly relevant to Mattel's claims for misappropriation of trade secrets, among others.

[32] Category No. 5 seeks testimony regarding "MGA's knowledge of and communications relating to the obligations of Mattel employees to Mattel, including
     (footnote continued)

the "testimony sought [by Category No. 5] is plainly relevant to Mattel's claims that MGA acted with knowledge and willfulness when recruiting Mattel employees."[33] Moreover, MGA's current understanding of the terms of Mattel's contracts with its employees is also discoverable as potentially relevant to the interpretation of those contracts. "Contract terms must be interpreted according to any special meaning given to them by usage, and technical terms are interpreted as generally understood in the industry." Southern Pac. Trans. Co. v. Santa Fe Pac. Pipelines, Inc., 74 Cal. App. 4th 1232, 1244 (Cal. Ct. App. 1999) ("[t]here was no good reason to refuse to consider the more extensive, credible extrinsic evidence [relating to usage in the industry] that Southern Pacific proffered on the matter.") (citing Cal. Civ. Code §§ 1644, 1645).  In addition, "[p]arol evidence is admissible to establish the trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous, inasmuch as by reason of the usage the words are used by the parties in a different sense." Ermolieff v. R.K.O. Radio Pictures, 19 Cal. 2d 543, 550 (Cal. 1942) (citations omitted).  As an industry participant, MGA's current (as well as its past) understanding of the contracts is therefore discoverable as to the issues of the interpretation of the contracts.  Mattel's questions were properly within the scope of Category No. 5.  In fact, MGA has now deposed dozens of Mattel witnesses, including 30(b)(6) witnesses, on the meaning and interpretation of these same contracts, so its argument that such questioning is improper is inconsistent with its own positions in this case.

MGA's claim that Larian was not designated on any topic concerning "MGA's possession of Mattel information" or "MGA's alleged theft of trade secrets" is also incorrect.  (Motion at 4).  Category No. 15 expressly seeks testimony on

---

without limitation with respect to confidentiality and ownership of inventions."  See March 2, 2010 Letter from M. Zeller to A. Hurst and T. McConville, at 2.
[33] Order Granting In Part and Denying in Part Mattel's Motion to Compel MGA Entertainment, Inc. to Produce 30(b)(6) Witnesses, dated June 14, 2010 (Docket No. 8104) at 4-5.

"MGA's copying or use of Mattel products, packaging or designs and MGA's knowledge of any Mattel product prior to its disclosure to the public or retailers."[34] This encompasses MGA's possession of any internal or confidential Mattel information or trade secrets related to products, packaging or designs. Category 10 – "the search and seizure of documents by Mexican authorities from MGA's Mexico City offices and related communications"[35] – also directly seeks testimony on stolen trade secrets by MGA.

MGA's claim that it was improper for Mattel to ask any questions about Cabrera, Morales and Salazar is equally baseless.[36] As the Discovery Master recognized, the questioning regarding Cabrera, Morales and Salazar was proper cross-examination and in direct response to Larian's claims that a Target buyer told him that Mattel had allegedly obtained MGA confidential information which is why it was not a coincidence that they were bringing similar themes to market.[37] Cabrera, Morales, and Salazar were Mattel employees who secretly worked on Bratz for *years,* and were paid for their work, while employed by Mattel.[38] It was proper to examine Larian as to whether the similarities in themes as he alleged were a result of MGA's bribery and secret use of Mattel employees. Moreover, the questioning regarding Cabrera, Morales and Salazar is encompassed in Category Nos. 15 (MGA' copying or use of Mattel products, packaging or designs).

Additionally, there was nothing off-topic about questions regarding MGA's possession of Mattel Toy Fair documents. That MGA has engaged in the same conduct that it accuses Mattel of is at issue and proper cross examination of

---

[34] See March 2, 2010 Letter from M. Zeller to A. Hurst and T. McConville, at 4.
[35] See March 2, 2010 Letter from M. Zeller to A. Hurst and T. McConville, at 3.
[36] That MGA had designated another witness on Topic 2 (regarding payments by MGA or its vendors to or for any former Mattel employees) doesn't mean that Mattel cannot cross examine MGA on a related subject at this deposition.
[37] 8/12/10 Larian Tr. at 3896:11-3900:8 ("THE DISCOVERY MASTER: It relates to the earlier question regarding Target.").
[38] Deposition Transcript of Veronica Marlow, dated December 28, 2007 ("Marlow Tr.") at 306:14-308:1, 363:15-365:17.

MGA's own claims, encompassed by Category No. 26.[39]  Moreover, as the Discovery Master properly ruled at the deposition and MGA's counsel all but conceded, these questions "that overlapped with MGA's affirmative defenses in terms of unclean hands" were proper and within the scope of Larian's designation.[40]

MGA cites no evidence for the proposition that "Mattel spent less than two hours on topics for which Mr. Larian had been designated." (Motion at 4).  Nor does MGA cite to anything to support its allegation that Mattel repeated questions or asked questions outside the scope.  (Motion at 5).  It is Larian and his counsel, through their obstructionist tactics, who derailed the examination.  In any event, as the Discovery Master held, MGA's complaints here are wholly irrelevant:  even if Mattel "spent all of [its] time on subjects that are outside the scope, " which it did not, Mattel would still be entitled to "at least another three hours" under the prior Discovery Matter Order No. 99 that MGA did not appeal.[41]

### **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's motion and compel the completion of the deposition of MGA's 30(b)(6) designee on Category Nos. 5, 10, 15 and 26 as ordered by the Discovery Master.

DATED: September 12, 2010     QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[39] Contrary to MGA's assertions, the Discovery Master did not limit the continued Larian deposition to Category No. 26.  Nor did Mattel suggest that it would limit its questioning to that topic alone.
[40] 9/1/10 Larian Tr. at 4208:10-4209:22, 4296:23-4304:14.
[41] 9/1/10 Larian Tr. at 4431:9-15, 4429:19-23.