1   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
2   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
4   405 Howard Street
    San Francisco, CA 94105
5   Telephone:   415-773-5700
    Facsimile:   415-773-5759
6
    WILLIAM A. MOLINSKI (State Bar No. 145186)
7   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
8   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
9   Telephone:  213-629-2020
    Facsimile:   213-612-2499
10
    THOMAS S. MCCONVILLE (State Bar No. 155905)
11  tmcconville@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
12  4 Park Plaza, Suite 1600
    Irvine, CA 92614-2258
13  Tel: (949) 567-6700/Fax: (949) 567-6710

14  Attorneys for MGA Parties

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                  SOUTHERN DIVISION

18  CARTER BRYANT, an individual          | Case No. CV 04-9049 DOC (RNBx)
                                          | Consolidated with Case No. CV 04-9059
19              Plaintiff,                | and Case No. CV 05-2727
20       v.                               | **MGA PARTIES' NOTICE OF
                                          | MOTION AND OMNIBUS MOTION
21  MATTEL, INC., a Delaware              | TO COMPEL, AND MEMORANDUM
    corporation,                          | OF POINTS AND AUTHORITIES**
22
                Defendant.                |
23                                        | **Judge:  Hon. David O. Carter**
                                          | Date:  September 27, 2010
24  ─────────────────────────────        | Time:  5:00 p.m.
    AND CONSOLIDATED ACTIONS              | Place:  Courtroom 9D
25
    **PUBLIC REDACTED VERSION**           |
26                                        | Discovery Cut-off: October 4, 2010
27                                        | Pretrial Conference: January 4, 2011
28                                        | Trial Date: January 11, 2011

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

INTRODUCTION ...............................................................................................1

ARGUMENT......................................................................................................1

I.  MATTEL WITHHOLDS DISCOVERY INTO ITS THEFT OF TRADE SECRETS AND TAMPERING WITH EVIDENCE......................1

   A.  MGA Seeks Documents From Critical Witnesses..............................2

      1.  Production In Response To Third-Party Subpoenas Regarding Villasenor's Activities ........................................2

      2.  Production From Mattel's Market Intelligence Group..............3

      3.  Production From The Author of The Bratz Brief, Jerome Bossick..........................................................................7

      4.  Production From Madana Sadigh, Who Was In Charge of Developing Mattel's Corporate Strategy.................................8

      5.  Production In Response To Searches For "Villasenor," "Rahimi," "B Box" Across Mattel's Collection Database .........9

      6.  Production In Response To A Search For 25 Terms Across The Mailboxes For Mattel's Email Security System.................................................................................9

   B.  MGA Seeks Production In Response To Requests Seeking Information Pertaining To Villasenor's Activities. ..........................10

   C.  MGA Seeks A Prepared Deponent on Mattel's Receipt of Confidential Information And Another Day With Michael Moore ................................................................................................13

   D.  MGA Seeks A Privilege Log Of Documents Relating To Mattel's Acquisition of MGA Information That Post-Date April 27, 2004............................................................................................14

   E.  MGA Seeks Documents Reflecting Mattel's Efforts To Settle With Pablo Vargas, Thereby Silencing His Harmful Testimony ......15

II.  MATTEL FAILS TO PRODUCE DOCUMENTS IN NATIVE FORMAT, DESPITE REPEATED REQUESTS ...............................15

III.  MATTEL WITHHOLDS KEY EVIDENCE RELATING TO BRATZ AND CARTER BRYANT ..............................................................16

   A.  MGA Seeks Supplementation Of Mattel's Interrogatory Response Regarding Substantial Similarity...............................16

   B.  MGA Seeks Forensic Images Of Any Hard Drive Mattel Believes May Have Been Used By Carter Bryant.............................17

   C.  MGA Seeks A Prepared Witness Regarding How Mattel Obtained 2002 Bryant Copyright Registrations in Brazil..................17

IV.  MATTEL WITHHOLDS DOCUMENTS RELEVANT TO MGA'S TRAPEZOIDAL PACKAGING CLAIM......................................17

# TABLE OF CONTENTS
## (continued)

Page

A.     MGA Seeks Documents Relating To Mattel's Decision To Use And Use Of Trapezoidal Packaging ..................................................... 17

B.     MGA Seeks Copies Of Photographs Mattel Has Taken During Inspection Of Trapezoidal Packaging Materials................................. 18

V.     MATTEL WITHHOLDS DOCUMENTS RELATING TO LICENSING ............................................................................................... 18

VI.     MATTEL HAS FAILED TO COMPLY WITH PRIOR COURT ORDERS ...................................................................................................... 18

A.     MGA Seeks Compliance With Order Regarding Fee Agreements ................................................................................ 18

B.     MGA Seeks Compliance With Order Regarding Research................ 19

VII.     MATTEL FAILS TO RESPOND TO REQUESTS FOR ADMISSION ..... 19

CONCLUSION............................................................................................... 20

# TABLE OF AUTHORITIES

**STATUTES**                                                      **Page(s)**

Fed. R. Civ. P. 36(a)(3)..............................................................................................20

Fed. R. Civ. P. 36(a)(6)..............................................................................................19

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD;

PLEASE TAKE NOTICE THAT, at a date and time to be set by the Court, MGA Entertainment, Inc. ("MGA") will and hereby does move for an order compelling:

(1)    Confirmation that the August 3 Order (Dkt. No. 8459) requires Mattel to search and produce from 38 people that Mattel previously agreed to search (Dkt. No. 8057-1 at 4, 8057-7 at 5).

(2)    Production by Mattel and/or pursuant to subpoena from the following individuals:

a.    Sal Villasenor and his attorney, Patricio Barrera, in response to MGA's subpoenas.  MGA seeks a privilege log of any withheld documents.

b.    Sauer & Wagner LLP, in response to MGA's subpoena.

c.    Matthew Bousquette, in response to MGA's subpoena.

d.    Matt Turetzky, from Mattel and in response to MGA's subpoena.

e.    Sharon Rahimi, from Mattel and in response to MGA's subpoena.

f.    Carey Plunkett, from Mattel.

g.    Michael Shore, from Mattel.

h.    Kelly Osier (Dermody), from Mattel and in response to MGA's subpoena.

i.    Drew Vollero, from Mattel.

j.    Jeff Lange, from Mattel.

k.    Candace Chang, from Mattel.

l.    Tyler Snyder, from Mattel.

m.    Jerome Bossick, from Mattel and in response to MGA's

subpoena.

n.     Mandana Sadigh, from Mattel.

(3)    Production in response to a search for the terms "Villasenor," "Rahimi," and "B Box" (and derivatives thereof, including "BBox" and "B'Box") across Mattel's collection database, and a privilege log of any withheld documents.

(4)    Production in response to a search for 25 terms specified by MGA in Exhibit 1 to the Declaration of Diana Rutowski ("Rutowski Decl.") across the mailboxes for Mattel's email security system, and a privilege log of any withheld documents.

(5)    Production in response to MGA's Amended Ninth Set of Phase 2 Requests for Production and MGA's Eleventh Set of Phase 2 Requests for production.

(6)    A prepared 30(b)(6) witness on Mattel's efforts to acquire confidential information regarding competitors.

(7)    A further day of deposition with Michael Moore regarding documents and testimony recently produced by Mattel.

(8)    A privilege log for all communications regarding the actions of Villasenor, Turetzky, Rahimi, Osier, Plunkett, Snyder, Chang, Lange and anyone else at Mattel involved in obtaining competitive information from toy fairs or through improper means, both prior to and post-dating April 27, 2004.

(9)    Production of documents reflecting Mattel's efforts to settle with Pablo Vargas.

(10)    Production of the documents identified in Exhibit 2 to the Rutowski Decl. in native format.

(11)    Supplementation of Mattel's response to Interrogatory No. 31 regarding substantial similarity.

(12)   Forensic images of any hard drives that may have been used by Carter Bryant, and identification by Bates number and date of production of any previously produced hard drive and/or image thereof.

(13)   A prepared deponent on Topic 26 of MGA's Notice of Deposition of Mattel, Inc. (Third Phase 2 Notice) regarding Bratz copyright registrations in Brazil.

(14)   Production in response to requests regarding MGA's trapezoidal packaging claim, identified in Exhibit 3 to the Rutowski Decl.

(15)   Copies of photographs taken by Mattel during inspection of documents and things made available by MGA.

(16)   Production of documents relating to Mattel's Barbie licenses, as sought in MGA's Motion to compel at Dkt. No. 8388 at 6.

(17)   Compliance with the Court's order requiring production of fee agreements (3/11/10 Hearing Tr. at 6:7-8:11).

(18)   Compliance with the order requiring production of research reports (Dkt. No. 8318).

(19)   An admission or denial in response to MGA's Amended Third Set of Requests for Admission and confirmation that MGA's Fourth Set of Requests for Admission are deemed admitted.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Diana M. Rutowski, all other pleadings and papers on file in this matter, and such further evidence and argument as may be presented at the hearing on this motion.

## CERTIFICATE OF COMPLIANCE

Counsel for MGA sought repeatedly to resolve the issues in this Motion by sending numerous meet and confer letters, many of which are cited herein, and engaging in meet and confer discussions with counsel for Mattel.  Further, lengthy

MGA PARTIES' OMNIBUS MOTION TO COMPEL
CV-04-9049 DOC (RNBX)

1   lists of discovery grievances were exchanged by the parties on August 31, 2010,

2   and the Discovery Master determined that it was not feasible to conduct a further

3   meet and confer before the filing of the omnibus motions.

4

5   Dated: September 16, 2010         Respectfully submitted,
                                      ORRICK, HERRINGTON & SUTCLIFFE LLP
6
                                      By:  _____/s/ Diana M. Rutowski_____
7                                          Diana M. Rutowski
                                           Attorneys for MGA PARTIES
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA PARTIES' OMNIBUS MOTION TO COMPEL
CV-04-9049 DOC (RNBX)

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3  Sal Villasenor testified that he ███████████████████████████

4  ██████████████████████████████████████████████Matthew Bousquette

5  testified that he has no idea who Villasenor is and no knowledge of Villasenor's

6  role at Mattel; and Mattel's attorney Michael Zeller represented to the Court that

7  documents from Villasenor had not been produced because they have nothing to do

8  with MGA.  Then, on September 9, 2010, Mattel produced an email that proves all

9  of these statements to be false. ████████████████████████████████████

10 ███████████████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████M 1759141-42.  Mattel's

13 discovery abuses must come to an end.

14  Pursuant to the Court's Order of August 10, 2010, MGA hereby submits its

15 omnibus motion to compel, identifying and explaining the essential evidence

16 responsive to MGA's outstanding discovery requests that Mattel continues to

17 withhold.  The long overdue discovery relates to Mattel's theft of MGA's trade

18 secrets, Mattel's tampering with evidence, its willful infringement and dilution of

19 MGA's distinctive trapezoidal packaging, Mattel's copyright counterclaims and

20 Carter Bryant, and both parties' damages claims.

21

## ARGUMENT

22
23

**I.    MATTEL WITHHOLDS DISCOVERY INTO ITS THEFT OF TRADE SECRETS AND TAMPERING WITH EVIDENCE.**

24  It was at the Villasenor deposition in July 2010 that long concealed evidence

25 of Mattel's theft of MGA's trade secrets and Mattel's deliberate suppression of

26 evidence first came to light.  Depositions thereafter, including those of Matthew

27 Turetzky and Kelly Osier have shed further light on these practices.  While it is

28 clear why Mattel would fight tooth and nail not to produce such harmful documents

1    reflecting its illegal conduct, discovery is closing and its time is up.

2         A.    **MGA Seeks Documents From Critical Witnesses.**

3         Mattel's production of documents is long overdue and in flagrant violation of

4    court orders and the representations of Mattel's counsel.[1]   On September 12, 2007

5    the Discovery Master ordered production of documents concerning similarities

6    between Bratz and Mattel products, relating to Mattel's damages claim, and

7    relevant to MGA's statute of limitations defense.  Dkt. No. 989.   On January 13,

8    2010, the Discovery Master ordered production in response to requests seeking

9    documents relating to any exhibition of Bratz prior to its public release, relating to

10   whether Mattel had access to exhibits or showroom containing Bratz, and relating

11   to efforts to monitor or spy on MGA's trade secrets and non-public information.[2]

12   Dkt. No. 7396 (Order No. 89).   Mattel represented to the Court multiple times

13   months ago that it had complied with Order 89 and produced responsive

14   documents.  *See* Dkt. No. 7523 at 1; 3/9/10 Hearing Tr. at 7 (assuring the Court that

15   Mattel was producing documents responsive to requests not appealed).  More than

16   six months later, Mattel still withholds documents ordered produced.

17        1.    **Production In Response To Third-Party Subpoenas**
                **Regarding Villasenor's Activities.**
18

19        Sal Villasenor and His Attorney: ███████████████████████████

20   ████████████████████████████████████████████████████ (7/12/10

21   Villasenor Depo at 49:15-19, 73:25-74:19) was proven false by an email produced

22   by Mattel last week, which states ████████████████████████████████

23   ───────────────────
     [1] The August 3 Order (Dkt. No. 8459) does not make a ruling as to 38 people that
24   Mattel agreed to search conditioned upon MGA's agreement that Mattel's list was
     otherwise sufficient (Dkt. No. 8057-1 at 4, 8057-7 at 5).  Mattel's agreement to
25   search concedes the relevance of these individuals, and MGA requests confirmation
     that Mattel must search and produce from their custody.  Mattel's custodial records
26   demonstrate that it is *not* producing from these custodians.
     [2] 9049 RFP Nos. 30 and 31, served November 22, 2006, and No. 476, served
27   August 3, 2007.  *See* Rutowski Decl. ¶14 for full text.  MGA summarizes and
     provides the text of the requests and responses as necessary to present its argument
28   herein.  Should the Court like to review the full text of the requests and responses,
     or any other document cited herein, MGA will lodge them upon request.



1

2 (M 1759141-42).  Villasenor used

3 the fake names ██████████████ on the fake credentials used

4 to obtain this information.  7/12/10 Villasenor Depo at 90:5-7, 91:1-6.  After being

5 directed

6 for years, Villasenor wrote to Mattel's counsel, J

7

8 M 1679755.

9

10

11 M 1679753-54.

12       MGA issued subpoenas to Villasenor and Barrera, and seeks an order

13 compelling compliance.  Rutowski Decl. ¶¶ 6-7.  To the extent that Villasenor

14 and/or his attorney are withholding any documents on the basis of privilege, they

15 must reflect those documents on a privilege log with sufficient description under

16 Rule 26 to allow MGA to assess the claim of privilege.

17       <u>Sauer & Wagner</u>:  Mattel retained Sauer & Wagner LLP to investigate

18 Villasenor's complaint regarding illegal activities pursuant to Mattel's instruction

19 and direction.  M 1679753.  MGA subpoenaed Sauer & Wagner for relevant

20 documents and seeks an order compelling compliance.  Rutowski Decl. ¶ 8.

21       <u>Matthew Bousquette</u>:  Like Villasenor, Bousquette's testimony that he has no

22 idea who Villasenor is and no knowledge of Villasenor's role at Mattel (3/12/10

23 Bousquette Depo at 640:20-641:2, 645:18-25) is belied by the recently produced

24 email (M 1759141-42).  Bousquette's false testimony seriously calls into question

25 his lack of production in response to MGA's subpoena.  Rutowski Decl. ¶ 9.

26       **2.    <u>Production From Mattel's Market Intelligence Group.</u>**

27       <u>Matt Turetzky</u>:  Though Mattel produced some documents from Turetzky,

28 the production is incomplete.  For example, Mattel has not produced an email



1   drafted by Turetzky ████████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████  9/2/10 Turetzky Depo at 97:22-102:1.  MGA requested production during

5   the deposition, and now seeks an order compelling Mattel to produce.[3]

6   Moreover, Turetzky oversaw Mattel's Market Intelligence Group and

7   Villasenor.  7/12/10 Villasenor Depo at 30:25-31:3.  He encouraged the spying and

8   stealing practices, and he ████████████████████████████████████

9   ████████████████████████████████ *Id*. at 66:25-68:16; 226:3-15; 79:13-

10  80:6.  Yet, ██████████████████████████████████████████████

11  ████████████  9/2/10 Turetzky Depo at 166:14-167:5.  MGA seeks a full

12  production from Mattel and in response to its subpoena.  Rutowski Decl. ¶ 10.

13  Sharon Rahimi:  As discussed above, Ms. Rahimi was hired by Mattel to ███

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████  7/12/10

16  Villasenor Depo at 70:10-80:6; 9/13/10 Villasenor Depo (Rough) at 14:14-15:18;

17  30:19-31:11.  On August 31, Mattel produced an email (M 1748722) ██████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████

25  ████████████  (M 1748721).  Moreover, while Mattel claims Rahimi was a "vendor,"

26  _____

27  [3] Turetzky authored other documents, including some that were distributed to Mattel's Board. ███████████████████████████████████████████

28  4/9/10 Kilpin Depo at 886:6-887:9; Depo Ex. 5924; Depo Ex. 1279.

██████████████████████████████████████████████████████████

Yet, Mattel has not produced any documents from Rahimi's custody.  MGA seeks production from Mattel and in response to its subpoena.  Rutowski Decl. ¶ 11.

Carey Plunkett & Michael Shore:  While a few documents have been produced from the custody of Ms. Plunkett and Mr. Shore, they are not the crucial documents about which MGA has just recently learned.  Mr. Shore and Plunkett reported to Turetzky, and they were the first to inform him that ██████████ ██████████████████████████████████████████ 9/2/10 Turetzky Depo at 156:10-161:1; 273:6-275:10.  ████████████████████ ██████████████████████████████████████ *Id*.  Mr. Turetzky further testified that Plunkett used █████████████████████████████████ ████████ *Id.*.  None of which have been produced.

Furthermore, Mr. Shore has been the lead researcher in Mattel's consumer research group for years, holding the position of Vice President of Worldwide Consumer Insights (12/18/2009 Eckert Depo at 799:12-16).   Production from other individuals shows that Shore sent and received documents regarding Mattel flanker doll focus groups and authored consumer research studies, ██████████████ ███████████████████████████ *See* Depo Ex. 1147; 12/14/2007 Cloonan Depo at 195:9-25.  Mr. Shore is clearly the custodian of information regarding Mattel's consumer research relating to why Mattel did not pursue Toon Teens, Mattel's initial reaction to Bratz, Mattel's recognition of Bratz's success, as well as the improper means Mattel has used to obtain competitive information.

Kelly Osier (Dermody):  Kelly Osier, a Mattel employee, in her recent deposition, admitted to using a fake business card identifying her as owner of the ████████████████████████████████████████████████ 9/7/10 Osier (Dermody) (Rough) Depo at 32:24-33:25.  Along with Villasenor, Osier was the co-author of numerous toy fair reports containing competitive information

1   compiled after their visits to toy fairs.  These documents are just being produced

2   from the custody of individuals other than Osier.  7/12/10 Villasenor Depo 70:10-

3   19; 142:3-143:9; Dkt. No. 8503 (MGA's Motion to Compel Documents Concerning

4   Mattel's Theft of Competitors' Confidential Information).  For example, Ms. Osier,

5   along with Villasenor, was the author of a 100 page February 16, 2001 Toy Fair

6   Report (M 1680714-811) replete with information about ███████████████████

7   ████████████████████ that was first produced on August 7, 2010.   And this

8   was not for lack of knowledge of this document.  In fact, Mattel previously

9   produced the cover memo without the report in May 2005 and later produced a

10  summary report (████████████████) on July 7, 2010.[4]  Thirty three pages

11  have been produced from Osier in response to MGA's subpoena.  Rutowski Decl. ¶

12  12.  No documents have been produced by Mattel from her custody.

13       Drew Vollero:  Mr. Vollero is Senior VP of Finance and oversees Mattel's

14  Market Intelligence Department, the group that uses fake IDs to gain access to

15  competitors' private showrooms.  7/12/10 Villasenor Depo at 30:7-31:25.

16  Mr. Vollero received numerous strategy reports authored by Mattel employees in

17  his department using such ill-gotten information.  Such documents include the ████

18  ███████████████████████████████████████████ authored

19  by Villasenor using competitors' confidential information obtained at NYTF in

20  2003.  Depo Ex. 9267; Depo Ex. 9275.[5]  Mr. Vollero is further the sender and

21  recipient of numerous emails regarding efforts to obtain MGA confidential

22  information.[6]  Yet, Mattel has produced no document from Vollero's custody.

23

24  ─────────────────
    [4] Osier authored the Toy Fair 2000 Competitive Update summarizing competitive
    products (M 1680048-093), produced on August 7, 2010.  She, along with

25  Villasenor and Plunkett, authored a Competitive Review regarding the 2003 NYTF
    (M 0297415), with pictures of Bratz dolls and announcing dolls not yet available.
    [5] See Depo Ex. 9286 (

26  ███████████████████████████████████████████ ██Depo Ex.

27  9273(███████████████████████████████
    [6] See M 0951598-7 ██████████████████████████████████████ ██M

28  0940969 (███████████████████████████████████████████████████).

1    <u>Jeff Lange, Candace Chang, & Tyler Snyder</u>:  Jeff Lange was Villasenor's

2    first boss at Mattel and had responsibility for obtaining catalogues from Mattel

3    competitors' showrooms by ████████████████████████████████████████

4    ████████████████████████   7/12/10 Villasenor Depo at 43:5-15, 44:4-7, 45:18-

5    24.  The fake credentials were printed at the local Kinko's.  *Id*. at 87:11-14.  It was

6    from Lange that Villasenor and others learned how to engage in these practices.

7    Candace Chang (who may also be known by other names) came to Mattel

8    after Lange left, and adopted Lange's practice of ██████████████████████████

9    ████████████████████████████   7/12/10 Villasenor Depo at 89:15-23.

10   Tyler Snyder was in charge of the girls' side of the toy fair visits.  7/12/10

11   Villasenor Depo at 102:5-13.  Indeed, Villasenor testified that ████████████████

12   ████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████   9/13/10 Villasenor

14   Depo (Rough) at 226:1-14, 178:8-179:11.

15   Yet, Mattel has produced nothing from these three individuals.

### 3.    <u>Production From The Author of The Bratz Brief, Jerome Bossick.</u>

18   MGA has tried to track down the authorship of The Bratz Brief for years.  In

19   fact, Mattel succeeded in excluding it from evidence in Phase 1 for lack of

20   authenticity.  MGA recently learned that Mattel CEO Robert Eckert commissioned

21   Jerome Bossick, senior vice-president of Strategic Planning, to author The Bratz

22   Brief.  7/8/10 Luther Depo at 129:4-131:7.  This 2003 document confirms that the

23   failures of Barbie had nothing to do with Bratz and attributes the success of Bratz to

24   factors that had nothing to do with Carter Bryant and his concept drawings—clearly

25   relevant to Phase 1.  Mr. Eckert not only edited The Bratz Brief, but used and relied

26   on its analysis and conclusions repeatedly through 2004-2005, including in his

27   presentations to the Board when Mattel was struggling with the strategic question

28   of how to invigorate Barbie.  *See* Dkt. 8673 at 17-18.  On June 21, 2004, Eckert

1  sent Bossick an email titled "What Happened to Barbie," which echoes The Bratz

2  Brief and was produced only this year after the Court granted a motion to compel

3  Bousquette's documents.  Depo Ex. 8687.  It is no surprise that this critical email

4  was not produced from Eckert, since Eckert testified that he has routinely destroyed

5  emails throughout this litigation.[7]  4/27/10 Eckert Depo at 1203:4-24.  Sujata

6  Luther testified that she was not involved in the original study or in the original

7  drafting.  7/8/10 Luther Depo at 129:19-25.  Mr. Bossick is the only person left who

8  may have documents regarding the commission and creation of The Bratz Brief.[8]

9        While Mattel agreed to search for documents in Bossick's custody, the fact

10  that only fifteen documents have been produced belies Mattel's efforts.  MGA also

11  seeks compliance with its subpoena to Bossick.  Rutowski Decl. ¶ 13.

### 4.  Production From Madana Sadigh, Who Was In Charge of Developing Mattel's Corporate Strategy.

14        Mandana Sadigh is the Senior Vice President of Brand Finance and Strategy

15  at Mattel, formerly Senior Vice President of Corporate Planning.  She routinely

16  authored and presented documents to Mattel's Board of Directors discussing Mattel

17  brands, growth strategies, market share, sales growth/decline, licensing, and

18  competitive information including that of Bratz, and Eckert testified that if he

19  wanted such information, he would ask Ms. Sadigh.  12/16/2009 Eckert Depo at

20  398:22-413:2.  For example, she was the author of "2004 Corporate Strategic Plan"

21  which was sent to all Mattel Board members.  *See* Depo Ex. 8677.  Mattel has also

---

[7] More surprisingly, however, is the fact that Eckert disclaimed any memory of the document and testified that he had no memory of who may have authored The Bratz Brief or of its purpose.

[8] To take another example of documents in Bossick's custody, on September 1, 2010, Mattel produced M 1747492-806 from the custody of Jerome Bossick ████████████████████████████████████████████████ at M1747494).

Yet, Mattel's claim of injury and harm is premised on its products, such as Barbie, My Scene and Flavas, losing market share due to Bratz.  If My Scene and Flavas were new products specifically launched as a response to Bratz because Barbie could not compete, how could they have lost market share to Bratz?

1   produced an email showing that Sadigh informed t█████████████████████

2   ██████████████████████████████████████████████████████████████

3   ████████ (M 1233886).  Yet, Mattel has not produced from Sadigh's custody.

### 5.   Production In Response To Searches For "Villasenor," "Rahimi," "B Box" Across Mattel's Collection Database.

MGA has repeatedly raised serious concerns with Mattel's preservation and collection efforts, for example, in light of Eckert's double-deletion of emails and the large numbers of relevant custodians from whom Mattel has failed to collect and produce throughout this litigation.  As a result MGA only recently began to learn the scope of the illegal activities engaged in by Mattel and its employees, which are likely reflected in even more damaging documents that Mattel is loath to produce.  MGA seeks specific steps to ensure that Mattel's production of documents responsive to MGA's outstanding discovery (including requests cited herein) is complete—specifically, an order whereby ILS will run the search terms "Villasenor," "Rahimi" and "B Box" (and derivations thereof such as "BBox" and "B'Box")[9] across Mattel's collection database, and the resultant documents will be produced along with a privilege log of any materials withheld on that basis.

### 6.   Production In Response To A Search For 25 Terms Across The Mailboxes For Mattel's Email Security System.

Since fall of 2003, when Mattel became aware of the contract between MGA and Bryant, Mattel has used various tools to satisfy its preservation obligation with respect to emails relevant to the litigation.  In fall 2003, ████████████████

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████ *See* Dkt.

25   No. 793 ("Moore Decl.") ¶ 10; 9/13/2007 Kawashima Depo at 624:5-625:17.

---

[9] Rahimi conducted her spying activities under the name "B'Box," and Mattel produced at least two reports of spying from that entity.  In 2005, when Mattel's legal department finally sought to shut down Villasenor's spying, Villasenor wrote a memo to "continue to utilize B Box as a key source of competitive information." M 1742819-20.

1 ████████████████████████████████████████████████████████████

2 9/13/2007 Kawashima Depo at 642:17-644:1.  ████████████████████

3 ████████████████████████████████████████████████████████████████

4 ██████████████████████████████████ Moore Decl. at ¶ 11.  ████████████████

5 ████████████████████████████████████████████████████████ Moore

6 Decl. at ¶11; 9/13/2007 Kawashima Depo at 561:13-24, 543:3-544:12, 560:7-14.

7 The mailboxes where these emails reside are critical sources of relevant

8 information.  MGA identifies twenty-five search terms in Exhibit 1 to Rutowski

9 Decl. that relate to outstanding discovery (including requests cited herein) and asks

10 that Mattel be compelled to search the mailboxes associated with its email security

11 system, produce all non-privileged documents in response, and provide a privilege

12 log for any documents withheld.

### B.   MGA Seeks Production In Response To Requests Seeking Information Pertaining To Villasenor's Activities.

15       MGA has served two sets of request for production specifically tailored to

16 the activities and persons in Mattel's Market Intelligence Group.[10]  In Court on

17 Thursday September 9, 2010, MGA agreed to limit its broader requests regarding

18 Mattel's efforts to obtain confidential information about MGA to documents

19 responsive to these requests.  Accordingly, MGA seeks an order compelling

20 complete production from Mattel and confirmation that Mattel is not withholding

21 based on its boilerplate objections.  Herein, MGA discusses only those requests in

22 response to which Mattel has refused to produce responsive information.

23       First, MGA seeks documents regarding presentations, specifically defined to

24 mean "the annual presentations regarding information on MATTEL competitors, as

25 discussed by VILLASENOR in his July 12, 2010 deposition."[11]  Villasenor testified

26 and documents reflect that the Market Intelligence Group's toy fair presentations

---

27 [10] MGA's Amended Ninth Set of Phase 2 Requests for Production and MGA's Eleventh Set of Phase 2 Requests for Production

28 [11] See Rutowski Decl. ¶ 15 for the text of the relevant requests, RFP Nos. 365, 366.

were videotaped. Mattel improperly limits its response to presentations "that discuss MGA," thereby excluding relevant presentations that discuss Bratz or Mattel's practices and procedures in general. While Mattel has produced videotapes of presentations, its production omits critical years.

Similarly, Mattel limits its response to requests seeking any communications regarding acquisition of competitive information to communications "relating to MGA."[12]   As discussed above, this is improper because communications regarding Mattel's practices and procedures generally are also highly relevant.

Second, MGA seeks personnel files for Villasenor, Lange, Plunkett, Osier, Rahimi, Chang, and Snyder.[13] Mattel represents that it has produced these documents, but this is simply not the case. It has produced no documents regarding Chang or Snyder, and the scattered reviews that it has produced from the other individuals do not constitute entire personnel files. Ms. Osier testified that she submitted expense reports in 2000 for phony business cards, yet no such expense reports were produced. Likewise, Mattel represents that it has produced all documents related to Villasenor's departure from Mattel and expense reports for Villasenor's printing of business cards, but again Mattel's production is incomplete. For example, MGA has found only a handful of potentially responsive expense reports, but nothing prior to 2003.[14] If Mattel has produced it must be compelled to identify the Bates numbers and certify that its production is complete.

Third, MGA requests "all documents related to the reasons for rehiring Sharon Rahimi at Mattel," and Mattel limits its response to just "Ms. Rahimi's vendor file."[15] ███████████████████████████████████
████████████████████████████████████ Mattel's response is incomplete.

Fourth, Mattel refuses to produce in response to a request seeking

---

[12] *See* Rutowski Decl. ¶ 16 for the text of the relevant requests, RFP Nos. 410, 413.
[13] RFP Nos. 376, 379, 384, 385, 386, 387 and 388, respectively.
[14] *See* Rutowski Decl. ¶ 17 for the text of the relevant requests, RFP Nos. 375, 380.
[15] RFP No. 412.

"documents regarding any MGA products used, referenced or relied upon to create the annual Toy Fair Competitive Services or reports" and it improperly narrows another request to exclude production of materials used in creating reports entitled "Property News" prepared by Villasenor.[16]  Materials used in creating these reports would be the very materials at the heart of MGA's counterclaims-in-reply against Mattel—ill-gotten information about MGA and its products.

Fifth, Mattel limits its production in response to a request seeking "proof of payment of costs for printing business cards" to expense reports.[17]  This limitation is improper, as it excludes invoices or other documents reflecting such payment.

Sixth, Mattel represents that it has produced non-privileged documents in response to a request seeking documents relating to "The Toy Shop," but it does not represent that it has produced "all" such documents.[18]  In contrast, Mattel has made such a representation regarding "all" documents with respect to other requests.  MGA seeks an order that all responsive documents be produced.  Moreover, no documents were produced for "The Toy Tree" or "The Toy Harbor," the other fake retailer names used by other Mattel spies.

Seventh, Mattel does not agree to produce in response to requests seeking documents "constituting, referring or relating to any negative advertising or public relations efforts about Bratz, Little Tikes or MGA or any of its products"; "constituting, referring or relating to [Mattel's] conception, development and design of Scooter Shannon."[19]  These requests are tailored to Mattel's efforts to interfere with MGA's product sales and Mattel should be compelled to produce.

Finally, Mattel refuses to produce in response RFP No. 389, which seeks:

> For each document identified in Mattel Inc.'s Third Supplemental Objections and Responses To Interrogatory No. 20 from MGA Entertainment Inc.'s Second Set of Phase 1 Interrogatories, all DOCUMENTS and COMMUNICATIONS that evidence or

---

[16] RFP Nos. 418 and 370, respectively.
[17] *See* Rutowski Decl. ¶ 18 for the text of the relevant request, RFP No. 408.
[18] *See* Rutowski Decl. ¶ 19 for the text of the relevant request, RFP No. 414.
[19] RFP Nos. 415 and 417 respectively.

memorialize the disclosure each alleged trade secret document to any retailer in the toy industry.

If Mattel alleges that MGA disclosed trade secrets to a retailer in the toy industry, MGA is entitled to documents that Mattel contends evidence such disclosure.

### C.   MGA Seeks A Prepared Deponent on Mattel's Receipt of Confidential Information And Another Day With Michael Moore.

MGA seeks a prepared witness regarding the efforts of Mattel's Market Intelligence Group to acquire information regarding the products, packaging, pricing, advertising and marketing of competitors.  On June 18, the Court denied Mattel's motion for a protective order as to Topic 8 of MGA's deposition notice:

> The receipt by Mattel of any non-public and/or confidential information about competitors' products or pricing, product development, advertising plans, marketing plans or research, actual or estimated product costs or sales, including any practice of anyone at Mattel of visiting the showrooms of competitors during any Hong Kong or New York Toy Fair(s), including but not limited to how Mattel gained admittance to any competitors' showrooms as well as how Mattel controls access to its own showrooms.

Dkt. No. 8133 at 4.  Mattel's designated witness, Mr. Ward, was entirely unprepared, responding "I don't know" or "I'm not familiar" to numerous basic questions related to Mattel's access to competitors' information.  ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  *See* Rutowski Decl. ¶ 20.  A properly prepared witness must be compelled.

MGA also seeks continuation of Michael Moore's deposition, who MGA just learned was involved in discussions with ████████████████████ ████████████████  M 1679753-55; 9/2/10 Turetzky Depo at 166:14-167:5.  Mattel produced this evidence long after MGA deposed Moore.

**D.**   **MGA Seeks A Privilege Log Of Documents Relating To Mattel's Acquisition of MGA Information That Post-Date April 27, 2004.**

MGA seeks a privilege log of all documents withheld, including any communications after the commencement of this litigation and any communications with or involving trial counsel, regarding Mattel's efforts to obtain confidential information from its competitors.  Mattel's theft of MGA trade secrets and its efforts to conceal and suppress evidence of that theft continued after it filed suit against Bryant on April 27, 2004.  In fact, as discussed above, on ██████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████████ Such communications involving Mattel's in-house and outside counsel surrounding the theft of competitive information is directly relevant both to demonstrate the activities themselves *and* to MGA's claim that Mattel and its counsel engaged in conscious suppression of relevant information.  Mattel should not be permitted to avoid logging critical documents relating to MGA's counterclaims-in-reply because it filed an unrelated lawsuit against Carter Bryant for breach of contract in 2004.

MGA requests that Mattel be ordered to produce a privilege log for all communications regarding the actions of Villasenor, Turetzky, Rahimi, Osier, Plunkett, Snyder, Chang, Lange and anyone else at Mattel involved in obtaining competitive information from toy fairs or through improper means, both prior to and post-dating April 27, 2004.[20]

Additionally, MGA seeks an order compelling a privilege log from Mattel regarding two other issues.  First, The Bratz Brief and follow up documents and communications, including Eckert's "What Happened to Barbie" email dated June

---

[20] Letter from B. Molinski to J. Corey dated August 31, 2010, detailing what MGA requests that Mattel include, as reflected in the proposed order submitted herewith.

1   21, 2004 (Depo Ex. 8687) and Eckert's "What Happened to Barbie" memo to the

2   Board of Directors dated September 1, 2005 (M 1220346-350).  As discussed above

3   in connection with Bossick, communications surrounding these documents may

4   critically undermine Mattel's claimed harm.  Second, Bain & Company's "Project

5   Doll," commissioned in June 2004, which resulted in the September 7, 2004 final

6   handover materials.  Depo Ex. 8810.  Bain obtained and reported on highly

7   sensitive MGA information in the course of this project—information relevant to

8   both MGA's claim that Mattel improperly obtained trade secret information from

9   MGA, as well as MGA's defenses to Mattel's trade secret and RICO counterclaims.

10  Good cause exists to extend Mattel's logging of privilege documents beyond April

11  27, 2004 relating to these two issues.

12          **E.      MGA Seeks Documents Reflecting Mattel's Efforts To Settle With**

13          **Pablo Vargas, Thereby Silencing His Harmful Testimony.**

14          Mattel plotted to tamper with a witness in this case, Pablo Vargas, who was

15  the subject of allegations of trade secret misappropriation by Mattel.  MGA's

16  Counterclaims-in-Reply at ¶¶ 55-56.  MGA seeks statements, agreements,

17  declarations or drafts thereof shared between Vargas or his attorney, Mr. Valencia,

18  and Mattel in connection with Vargas' efforts to settle with Mattel.  Such

19  documents would include, but not be limited to, ██████████████████████

20  ███████████████████████████████████  *See* 6/18/10 Vargas Depo at

21  531-532; 6/19/10 Valencia Depo at 12-13.[21]  These documents were ordered by the

22  Court to be produced back in February.  Dkt. No. 7434 at 9 (ordering Mattel to

23  produce "any confidentiality, cooperation, fee and/or indemnification agreement(s)

24  with Pablo Vargas" on or before February 2, 2010).  Mattel has not complied.

25  **II.     MATTEL FAILS TO PRODUCE DOCUMENTS IN NATIVE**

26          **FORMAT, DESPITE REPEATED REQUESTS.**

27          The Bratz Brief was commissioned by Eckert, yet due to Eckert's double

28  ─────────────────────
[21] *See* Letter from B. Molinski to J. Corey dated June 29, 2010.

MGA PARTIES' OMNIBUS MOTION TO COMPEL
CV-04-9049 DOC (RNBX)

1  deletion of emails, no copies were produced from his custody.  Likewise, MGA

2  expects that native format of key documents reflecting Mattel's wrongful acts will

3  trace the documents to the executive level and reflect widespread distribution.

4  MGA seeks production of the documents identified in Exhibit 2 to the Rutowski

5  Decl. in native format with all ESI and metadata, sufficient to show when they were

6  created, by whom, and to whom they were distributed.

7      Further, Mattel has produced financial documents as virtually unusable

8  printouts of lengthy spreadsheets.  Accordingly, MGA requests that the documents

9  identified in Exhibit 2 to the Rutowski Decl. be produced in native format.

10 **III.   MATTEL WITHHOLDS KEY EVIDENCE RELATING TO BRATZ
           AND CARTER BRYANT.**

11

12    **A.    MGA Seeks Supplementation Of Mattel's Interrogatory Response
               Regarding Substantial Similarity.**

13      Interrogatory No. 31 requests: "STATE THE COMPLETE FACTUAL

14 BASIS FOR YOUR CONTENTION that any BRATZ doll is substantially similar

15 to, a copy or a derivative of BRATZ DESIGNS created by Carter Bryant on or

16 before October 19, 2000."  In response, Mattel identifies no more than the most

17 general of similarities, many of which have been explicitly rejected by the Ninth

18 Circuit.[22]  Mattel fails to identify which Bratz dolls it contends infringe; the Bratz

19 designs that it contends are infringed; nor any specific factual similarities, let alone

20 similarities sufficient to meet the standard of substantially similar or virtual

21 identity.  MGA first raised this issue within days of the Ninth Circuit's opinion, and

22 Mattel initially agreed that supplementation is required, but Mattel has not provided

23 a supplemental response.[23]

24      With summary judgment motions due October 12, MGA requests that Mattel

25 be compelled to supplement its response by October 1, 2010, and be precluded from

26 relying on anything more than what is contained therein.

27 _____
[22] *Compare* Mattel's Supp. Obj. and Resp. to MGA Entertainment, Inc.'s Second
28 Set of Interrogatories, dated March 5, 2008 *with* Slip Op. at 10541-10547.
[23] *See* Email from A. Hurst to M. Zeller dated August 7, 2010.

B.   **MGA Seeks Forensic Images Of Any Hard Drive Mattel Believes May Have Been Used By Carter Bryant.**

Mattel has indicated that it is in possession of a hard drive that may have been used by Bryant.  MGA requests forensic images of any such hard drive, and identification by Bates number and date of production of any previously produced hard drive and/or image thereof.[24]

C.   **MGA Seeks A Prepared Witness Regarding How Mattel Obtained 2002 Bryant Copyright Registrations in Brazil.**

On June 7, 2010, before the Ninth Circuit opinion opened the door to retrial of Phase 1 issues, the Court agreed with Mattel that Topic 26 of MGA's Notice of Deposition, seeking testimony as to the circumstances in which Mattel obtained copyright registrations for Bratz characters in Brazil, did not seek relevant information.  Dkt. No. 8079 at 13-14.  The copyright registrations produced by Mattel issued in September 2002 and named Carter Bryant as the author.  They are highly relevant to MGA's statute of limitations defenses to Mattel's copyright counterclaims, as well as Mattel's trade secret counterclaim with respect to Bratz and Jade, which the Court has confirmed.   Given the changed circumstances, MGA renews its motion to compel a prepared witness on the circumstances under which Mattel obtained the registrations.  Dkt. Nos. 7974, 7984.

IV.   **MATTEL WITHHOLDS DOCUMENTS RELEVANT TO MGA'S TRAPEZOIDAL PACKAGING CLAIM.**

A.   **MGA Seeks Documents Relating To Mattel's Decision To Use And Use Of Trapezoidal Packaging.**

MGA filed a complaint against Mattel in 2005, bringing a claim of false designation of origin with respect to MGA's packaging trade dress and alleging that Mattel came out with a product in "packaging that imitated MGA's trapezoidal box."  MGA's Complaint at ¶ 53.  Since that time, Mattel has released at least two new products, Barbie Happy Birthday and the Toy Story 3 line of products, in

---

[24] *See* Letter from A. Hurst to counsel for Mattel dated August 20, 2010.

1  trapezoidal packaging—a deliberate and willful violation of MGA's rights in

2  trapezoidal packaging.  Accordingly, MGA has served a number of requests for

3  documents concerning Mattel's selection, adoption, clearance and use of

4  trapezoidal packaging, including but not limited to its communications and

5  agreements with Disney regarding such packaging.  Mattel steadfastly refuses to

6  produce any responsive documents whatsoever to requests regarding trapezoidal

7  packaging.[25]  This is in blatant disregard of this Court's order that trapezoidal

8  packaging has always been at issue, and discovery into MGA's infringement claim

9  as it pertains to Mattel products, including Toy Story 3 products, is appropriate.

10  Dkt. No. 8321 (overruling Mattel's objections to the ruling allowing deposition

11  questions on trapezoidal packaging and Toy Story 3).  Mattel must be compelled.

12
**B.      MGA Seeks Copies Of Photographs Mattel Has Taken During Inspection Of Trapezoidal Packaging Materials.**
13

14       Mattel's attorneys and photographers spent seven days (7/27-7/30, 8/4-8/6) at

15  the Orrick offices photographing tangible packaging materials and products that

16  MGA made available for inspection.  Mattel must produce copies of the

17  photographs and images it took during its inspection, as required by Discovery

18  Matter Order No. 89.[26]  Dkt. No. 7396.[27]  Mattel has not produced.

19  **V.    MATTEL WITHHOLDS DOCUMENTS RELATING TO LICENSING.**

20       MGA has a pending motion to compel that seeks production of documents

21  relating to licensing of Barbie from 2001 to the present.  Dkt. No. 8388 at 6.  MGA

22  requests that the Court grant its motion to compel such documents.

23  **VI.   MATTEL HAS FAILED TO COMPLY WITH PRIOR COURT ORDERS.**
24

25  **A.      MGA Seeks Compliance With Order Regarding Fee Agreements.**

26       In March the court ordered that all fee agreements for all witnesses being

27  ─────────────────
[25] *See* Exhibit 3 to Rutowski Decl., listing the pertinent requests for production.
28 [26] Granting MGA's motion as to 9049 RFP No. 475.  Rutowski Decl. ¶ 21.
[27] *See* Email from D. Rutowski to counsel for Mattel dated September 8, 2010.

1   paid directly or indirectly by either party or its counsel must be produced, with

2   sanctions for failing to comply.  3/11/10 Hearing Tr. at 6:7-8:11.  Mattel has not

3   complied.  For example, despite the Court's Order in March, Mattel did not produce

4   its fee agreement with Villasenor until July 2010 and produced it only on the eve of

5   Villasenor's deposition.  M 1663320-28.  MGA seeks an order compelling Mattel

6   to produce all its fee agreements as previously ordered by the Court.

7          **B.     MGA Seeks Compliance With Order Regarding Research.**

8          Mattel was ordered to produce Worldwide Consumer Research reports

9   selected by MGA from a review of Mattel research logbooks by July 20, 2010.

10  Dkt. No. 8318.  While Mattel produced a number of reports on that date, many

11  reports remain outstanding.  124 reports still have not been produced, identified in

12  the list attached hereto as Exhibit 4 to the Rutowski Decl.   MGA requests

13  production prior to Sujata Luther's upcoming deposition on September 24, 2010.

14  **VII.   MATTEL FAILS TO RESPOND TO REQUESTS FOR ADMISSION.**

15         MGA's Amended Third Set of Requests for Admission:  This set seeks an

16  admission or denial in response to each undisputed fact set forth in MGA's

17  Separate Statement.[28]  It further seeks an admission of the authenticity of each

18  document identified as supporting evidence for each fact in its Separate Statement,

19  and that each document was created and kept in the course of a regularly conducted

20  business activity.   Mattel lists a litany of objections and ***fails to admit or deny any***

21  ***undisputed fact***.  Rutowski Decl. ¶ 22.  Mattel's objections are meritless, as the

22  relevance and import of each fact is clearly articulated in the Separate Statement

23  and the motions it supports.  Rule 36 provides: "unless the court finds an objection

24  justified, it must order that an answer be served," and "on finding that an answer

25  does not comply with this rule, the court may order either that the matter is

26  admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  MGA

27  ─────────────
    [28] Separate Statement of Uncontroverted Facts and Conclusions of Law in Support

28  of the MGA Parties Motions for Summary Adjudication of the First, Second and
    Third Claims for Relief of the FAAC, served on Mattel on May 10, 2010.

1   requests that an appropriate order be entered.

2      <u>MGA's Fourth Set of Requests for Admission:</u>  Mattel's responses to these

3   requests were due September 13, 2010, but Mattel has not served a response.[29]

4   Under Rule 36, these requests are deemed admitted.  Fed. R. Civ. P. 36(a)(3).

5      These requests follow two patterns.  The first seeks admissions or denials

6   with respect to Mattel's Bratz copyright registrations—specifically asking Mattel to

7   admit that the work is not a work made for hire, that Mattel did not claim

8   authorship by employment, that the work is not a derivative work, and that Mattel

9   did not claim that the work is a derivative work.  Rutowski Decl. ¶ 23.   Mattel's in-

10   house counsel testified that █████████████████████████████

11   ████████████████████████████████████████████

12   ██████████████████████████████████ 2/17/10

13   Moore Depo at 169:12-22; 169:24-170:4; 172:16-173:15; 179:8-180:6.  ██████

14   █████████ that is an admission that Bratz-related works were not within the

15   scope of Carter Bryant's employment, at a minimum, a highly material fact.

16      The second pattern of requests asks Mattel to admit that it had knowledge of

17   MGA's trademark registrations for trapezoidal packaging before it released the Toy

18   Story 3 products in trapezoidal packaging.  Rutowski Decl. ¶ 24.  These are highly

19   relevant to MGA's claim that Mattel willfully infringed and diluted its rights in

20   trapezoidal packaging.  These requests must be deemed admitted.

21                         **CONCLUSION**

22      For the foregoing reasons, MGA respectfully requests that its Omnibus

23   Motion to Compel be granted.

24   Dated: September 16, 2010      Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

25

26                 By:       */s/ Diana M. Rutowski*
                      Diana M. Rutowski

27                Attorneys for MGA PARTIES

28   [29] *See* Email from D. Rutowski to counsel for Mattel, dated September 15, 2010.