1   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
2   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building, 405 Howard Street
4   San Francisco, CA 94105
    Tel. (415) 773-5700/ Fax: (415) 773-5759
5
    WILLIAM A. MOLINSKI (State Bar No. 145186)
6   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
7   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
8   Tel. (213) 629-2020/Fax: (213) 612-2499

9   THOMAS S. MCCONVILLE (State Bar No. 155905)
    tmcconville@orrick.com
10  ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza, Suite 1600
11  Irvine, CA 92614-2258
    Tel: (949) 567-6700/Fax: (949) 567-6710
12
    Attorneys for MGA Parties
13
                    UNITED STATES DISTRICT COURT
14                 CENTRAL DISTRICT OF CALIFORNIA
15                      SOUTHERN DIVISION

16  | CARTER BRYANT, an individual | Case No. CV 04-9049 DOC (RNBx) |
17  |          Plaintiff, | Consolidated with: CV 04-9059, CV 05-2727 |
18  | v. | |
19  | MATTEL, INC., a Delaware Corporation | **MGA'S OPPOSITION TO MATTEL INC.'S MOTION TO STRIKE AND/OR DISMISS; ALTERNATIVE CROSS-MOTION FOR LEAVE TO AMEND COMPLAINT** |
20  |          Defendant. | |
21  | | Date:         September 27, 2010 |
22  | AND CONSOLIDATED ACTIONS | Time:         5:00 p.m. |
23  | | Courtroom:  Hon. David O. Carter |
24  | | **Trial Date: January 11, 2010** |

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF ALTERNATIVE CROSS-MOTION AND ALTERNATIVE
    CROSS-MOTION ........................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF:
    (1) OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE,
    AND (2) ALTERNATIVE CROSS-MOTION FOR LEAVE TO
    AMEND ......................................................................................................... 1

INTRODUCTION ................................................................................................ 1

PLEADING ALLEGATIONS ............................................................................. 3

    A.    Mattel Directs Its Employees To Steal Competitive Information ....... 3

    B.    This Theft Is Known By The Highest Executives At Mattel .............. 4

    C.    Mattel Hides This Scheme From MGA ............................................... 4

    D.    Mattel's Concealment, With The Aid Of Its Counsel, Extends
        To Other Aspects Of This Case ........................................................... 6

    E.    The Result Is A Sweeping Injunction, Now Reversed, And
        Enormous Harm To MGA .................................................................... 7

    F.    MGA Diligently Sought Information Supporting Its Claims .............. 8

ARGUMENT ....................................................................................................... 8

I.    THE COUNTERCLAIMS-IN-REPLY MUST BE ALLOWED ................. 8

    A.    The Federal Rules Authorize The Filing Of A Counterclaim-in-
        Reply Without Prior Leave Of Court ................................................... 8

    B.    The Counterclaims-in-Reply Are Compulsory .................................. 11

    C.    If The Court Determines That Leave To Amend Is Required,
        Then MGA Hereby Requests It And It Must Be Granted ................. 14

        1.    There Is No Undue Delay ........................................................ 15

        2.    There Is No Prejudice ............................................................. 16

        3.    There Is No Bad Faith ............................................................. 17

        4.    Amendment Is Not Futile ........................................................ 19

II.    THE MOTION TO DISMISS THE WRONGFUL INJUNCTION
    CLAIM MUST BE DENIED ...................................................................... 19

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

    A.    A Bond Is Not A Prerequisite For A Claim Of Wrongful

4

          Permanent Injunction ...................................................................20

5

    B.    The Wrongful Injunction Claim Is Not Premature ...........................22

    C.    MGA Is Entitled To Recover On All Applicable Theories ................23

6

III.    THE MOTION TO DISMISS THE OTHER TWO

7

        COUNTERCLAIMS-IN-REPLY ON STATUTE OF LIMITATIONS

8

        GROUNDS IS MERITLESS ..........................................................25

9

    A.    MGA's Trade Secret Misappropriation Claim Is Not Barred ...........25

10

    B.    The RICO Claim Is Not Barred .........................................................28

IV.    THE MOTION TO STRIKE IS MERITLESS ............................................30

11

    A.    California's Litigation Privilege Does Not Apply To Federal

12

          Claims Brought In Federal Court .......................................................30

13

    B.    California's Anti-Slapp Statute Similarly Does Not Apply To

14

          The Federal Common Law Wrongful Injunction Claim ...................30

15

CONCLUSION ...................................................................................................31

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Aerotech Res., Inc. v. Dodson Aviation, Inc.,*
    2001 WL 474302 (D. Kan. Apr. 23, 2001) ................................................. 10

5

*Agostini v. Felton,*
    521 U.S. 203 (1997) ..................................................................................... 22

6

*Aldrich v. McCulloch Properties, Inc.,*
    627 F.2d 1036 (10th Cir. 1980) ............................................................... 29, 30

7

8

*AmerisourceBergen Corp. v. Dialysist West, Inc.,*
    465 F.3d 946 (9th Cir. 2006) ....................................................................... 15

9

*AntiCancer, Inc. v. Fujifilm Med. Sys. U.S.A.,*
    2010 WL 318406 (S.D. Cal. Jan. 19, 2010) ................................................ 10

10

11

*Arkadelphia Co. v. St. Louis S.W. Ry. Co.,*
    249 U.S. 134 (1919) ..................................................................... 20, 21, 22, 31

12

*Arpin v. Santa Clara Valley Transp. Agency,*
    261 F.3d 912 (9th Cir. 2001) ....................................................................... 26

13

14

*Atlanta Journal and Constitution v. City of Atlanta Dep't of Aviation,*
    322 F.3d 1298 (11th Cir. 2003) (en banc) ............................................... 22, 23

15

*Atlanta Journal and Constitution v. City of Atlanta Dep't of Aviation,*
    442 F.3d 1283 (11th Cir. 2006) ................................................................... 21

16

17

*Bankers Trust v. Rhoades,*
    859 F.2d 1096 (2d Cir. 1988) ................................................................. 29, 31

18

*Benz v. Campania Naviera Hidalgo, S.A.,*
    205 F.2d 944 (9th Cir. 1953) ....................................................................... 20

19

20

*Beverly Hills Bancorp v. R.W. Hine,*
    752 F.2d 1334 (9th Cir. 1984) ..................................................................... 18

21

*Buddy Sys., Inc. v. Exer-Genie, Inc.,*
    545 F.2d 1164 (9th Cir. 1976) ................................................................. 20, 23

22

23

*Burlington Indus., Inc. v. Milliken & Co.,*
    690 F.2d 380 (4th Cir. 1982) ....................................................................... 27

24

*Conceptus, Inc. v. Hologic, Inc.,*
    2010 WL 1460162 (N.D. Cal. Apr. 12, 2010) ............................................ 14

25

26

*Davis & Cox v. Summa Corp.,*
    751 F.2d 1507 (9th Cir. 1985) ....................................................................... 9

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Davis v. Foster Farms Dairy*,
   2007 WL 114003 (E.D. Cal. Jan. 10, 2007)...................................................10

4

*DCD Programs Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987).............................................................14, 15, 16

5

6

*Dornan v. Sheet Metal Works' Int'l*,
   810 F. Supp. 856 (E.D. Mich. 1992)............................................20, 21, 22, 23

7

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003).......................................................................16

8

9

*Erickson v. Horing*,
   2000 WL 35500986 (D. Minn. Oct. 23, 2000)...........................................9, 10

10

*Foman v. Davis*,
   371 U.S. 178 (1962) .......................................................................................16

11

12

*Fort Howard Paper Co. v. Standard Havens, Inc.*,
   901 F.2d 1373 (7th Cir. 1990).......................................................................18

13

*Frank Briscoe Co. v. Clark County*,
   857 F.2d 606 (9th Cir. 1988)...........................................................................9

14

15

*Fujitsu Ltd. v. Nanya Technology Corp.*,
   2007 WL 1660694 (N.D. Cal. June 6, 2007) .................................................10

16

*Gengler v. U.S. ex rel. Dept. of Defense and Navy*,
   463 F. Supp. 2d 1085 (E.D. Cal. 2006).....................................................10, 11

17

18

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996)......................................................................28, 29

19

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1990).......................................................................27

20

21

*Hartford v. Gibbons & Reed Co.*,
   617 F.2d 567 (10th Cir. 1980).......................................................................27

22

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010).........................................................................30

23

24

*Howey v. United States*,
   481 F.2d 1187 (9th Cir. 1973).......................................................................15

25

*Huynh v. Chase Manhattan Bank*,
   465 F.3d 992 (9th Cir. 2006).........................................................................25

26

27

*In re Lazar*,
   237 F.3d 967 (9th Cir. 2001)....................................................................11, 14

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Pegasus Gold Corp.,*
    394 F.3d 1189 (9th Cir. 2005)..................................................................... 14

*In re Price,*
    42 F.3d 1068 (7th Cir. 1994)........................................................................ 11

*IXYS Corp. v. Advanced Power Tech., Inc.,*
    2004 WL 135861 (N.D. Cal. Jan. 22, 2004) ............................................... 15

*J & M Turner, Inc v. Applied Bolting Technology Products, Inc.,*
    1997 WL 83766 (E.D.Pa. 1997).................................................................. 31

*Jablon v. Dean Witter & Co.,*
    614 F.2d 677 (9th Cir. 1980)....................................................................... 26

*Kearney v. Foley & Lardner, LLP,*
    590 F.3d 638 (9th Cir. 2009)....................................................................... 31

*Kimes v. Stone,*
    84 F.3d 1121 (9th Cir. 1996)....................................................................... 30

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997) ..................................................................................... 29

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001)....................................................................... 27

*Malley-Duff v. Crown Life Ins. Co.,*
    792 F.2d 341 (3d Cir. 1986)................................................................... 29, 31

*Maryland Dept. of Human Resources v. U.S. Dep't of Agriculture,*
    976 F.2d 1462 (4th Cir. 1992)................................................................. 21, 23

*Middlewest Motor Freight Bureau v. United States,*
    433 F.2d 212 (8th Cir. 1970)....................................................................... 22

*Miller v. Rykoff-Sexton, Inc.,*
    845 F.2d 209 (9th Cir. 1988)....................................................................... 19

*Minnesota Power & Light Co. v. Hockett,*
    105 F. Supp. 2d 939 (S.D. Ind. 1999) ........................................................ 30

*Mission Appliance Corp. v. Ajax Thermostatic Controls Co.,*
    8 F.R.D. 588 (N.D. Ohio 1948)..................................................................... 9

*Mitchell v. Riegal Textile,*
    259 F.2d 954 (D.C. Cir. 1954) .................................................................... 23

*Monolith Portland Midwest Co. v. RFC,*
    128 F. Supp. 824 (S.D. Cal. 1955).............................................................. 23

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Moore v. New York Cotton Exch.*,
    270 U.S. 593 (1926) ...............................................................................11

4

*Natomas Gardens Inv. Group v. Sinadinos*,
    2010 WL 1558961 (E.D. Cal. Apr. 19, 2010)................................10

5

6

*Nintendo of Am. Inc. v. Lewis Galoob Toys, Inc.*,
    16 F.3d 1032 (9th Cir. 1994).........................................................*passim*

7

*North County Commc'ns Corp. v. Verizon Global Networks, Inc.*,
    685 F. Supp. 2d 1112 (S.D. Cal. 2010).....................................27, 28

8

9

*Pardi v. Kaiser Found. Hospitals*,
    389 F.3d 840 (9th Cir. 2004)........................................................30

10

*Pochiro v. Prudential Ins. Co. of Am.*,
    827 F.2d 1246 (9th Cir. 1987)...........................................11, 13, 14

11

12

*Pogue v. Allied Prods. Corp.*,
    1989 WL 111854 (N.D. Ill. Sept. 20, 1989) ..............................9

13

*Power Tools & Supply, Inc. v. Cooper Power Tolls, Inc.*,
    2007 WL 1218701 (E.D. Mich. 2007) ......................................9

14

15

*Probert v. The Clorox Co.*,
    258 F.R.D. 491 (D. Utah 2009).................................................16

16

*Public Serv. Comm'n of Missouri v. Brashear Freight Lines, Inc.*,
    312 U.S. 621 (1941) ...................................................................21

17

18

*RA Med. Sys., Inc. v. Photomedex, Inc.*,
    373 F. App'x 784 (9th Cir. 2010)...............................................26

19

*Raytheon Co. v. Indigo Sys. Corp.*,
    2008 WL 3852715 (E.D. Tex. Aug. 14, 2008) ..........................17

20

21

*Rotella v. Wood*,
    528 U.S. 549 (2000) ...................................................................29

22

*Russell v. Farley*,
    105 U.S. 433 (1881) ...................................................................30

23

24

*Sanders v. Magill*,
    70 P.2d 159 (Cal. 1937) .............................................................27

25

*Sidney v. Superior Court*,
    198 Cal. App. 3d 710 (1988).....................................................28

26

27

*Sierra Club v. Union Oil Co. of Cal.*,
    813 F.2d 1480 (9th Cir. 1987),..............................................16, 17

28

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

*Simon Property Group, L.P v. mySimon, Inc.*,
    2003 U.S. Dist. Lexis 5438 (S.D. Ind. Mar. 26, 2003) .............................16, 17

4

*Supermail Cargo, Inc. v. United States*,
    68 F.3d 1204 (9th Cir. 1995)........................................................................25

5

6

*Swanson v. U.S. Forest Service*,
    87 F.3d 339 (9th Cir. 1996)........................................................................10

7

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991)......................................................................15

8

9

*United States ex rel. Jajdelski v. Kaplan, Inc.*,
    2010 WL 2326069 (D. Nev. June 7, 2010) ................................................17

10

*UNR Indus., Inc. v. Continental Ins. Co.*,
    623 F. Supp. 1319 (N.D. Ill. 1985) ...........................................................15

11

12

*W.R. Grace & Co. v. Local 759*,
    461 U.S. 757 (1983) ...................................................................................21

13

*W.R. Grace & Co. v. Western U.S. Indus., Inc.*,
    608 F.2d 1214 (9th Cir. 1979).....................................................................27

14

15

*Weatherly v. Universal Music Publ'g Group*,
    125 Cal. App. 4th 913 (2004).....................................................................27

16

17

**STATUTE**

17 U.S.C. § 504...................................................................................................25

18

19

**RULES**

Fed. R. Civ. P. 7(a)(3).........................................................................................8

20

Fed. R. Civ. P. 12(b)(6).....................................................................................24

21

Fed. R. Civ. P. 13(a) ......................................................................................8, 11

22

Fed. R. Civ. P. 13(b) ...........................................................................................8

23

Fed. R. Civ. P. 15(a) ..........................................................................................16

24

Fed. R. Civ. P. 65(c) ..........................................................................................20

25

26

**OTHER AUTHORITY**

5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1188 (3d ed. 2004)....9

27

28

## NOTICE OF ALTERNATIVE CROSS-MOTION AND ALTERNATIVE CROSS-MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 27, 2010, in the Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701, MGA Entertainment, Inc. ("MGA") will, and hereby conditionally does, cross-move the Court in the alternative, pursuant to Federal Rule of Civil Procedure 15(a), for an order granting MGA Entertainment, Inc. leave to amend its original Complaint in this action to include the matters alleged in its Counterclaims-in-Reply.  This is a Cross-Motion to Mattel's Motion to Dismiss the Counterclaims-in-Reply.

MGA's position, as expressed in the Opposition Memorandum below, is that Mattel's Motion to Dismiss the Counterclaims-in-Reply on the ground that they were filed without prior leave of Court is ill-taken.  MGA had a right to file the Counterclaims-in-Reply under Federal Rules of Civil Procedure 7 and 13 without prior leave of Court.  This Cross-Motion to Amend is made only in the alternative if the Court nonetheless determines in connection with Mattel's Motion to Dismiss that the Counterclaims-in-Reply may not be interposed without prior leave of Court.  Mattel has failed to demonstrate undue delay and resulting prejudice, bad faith, or that the Counterclaims-in-Reply are futile.  Accordingly, if necessary, leave to amend the original Complaint must be granted.

This Alternative Cross-Motion for Leave to Amend is based on this Notice of Cross-Motion and Cross-Motion, MGA's Complaint in Case No. 05-CV-2727, MGA's Counterclaims-in-Reply, the memorandum of points and authorities that follows, the accompanying proposed order, all matters cited to herein, all other matters of which the Court may take judicial notice, and all matters which may be brought to the Court's attention concerning these Motions prior to or at the hearing thereof.

1

2          Respectfully submitted,

3    Dated: September 16, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP

4

5

6                                      By:   /s/ Annette L. Hurst
                                             Annette L. Hurst
7                                            Attorneys for MGA Parties

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Opp. to Mot. to Dismiss and cross-motion for
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF: (1) OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE, AND (2) ALTERNATIVE CROSS-MOTION FOR LEAVE TO AMEND**

## INTRODUCTION

For over a decade, at least, Mattel systematically stole and used the trade secrets of its competitors, including MGA.  Then, when it filed suit against MGA it turned around and claimed that MGA had stolen the very same types of information and claimed they were trade secrets.  When MGA sought discovery about this to defend itself, Mattel hid and concealed any information that would reveal the truth. Mattel went so far as to alter documents, pay hush money to witnesses and sanction misleading and false testimony.  Mattel did not stop there.  In its crusade to drive MGA out of business, Mattel decided to hide and conceal other evidence, specifically evidence relating to Bratz, so that it could pursue its claims against MGA without risk that a judge or jury would have complete evidence to consider whether Mattel's claims were barred by the statute of limitations and laches, whether Mattel's fraudulent concealment rebuttal to those defenses was specious in light of its spying on MGA, whether Mattel's own claims for damages were meritorious, and whether Mattel even considered itself the owner of Bratz after it filed its lawsuit against Carter Bryant.

This information and Mattel's remarkable efforts to conceal it has now come to light, and MGA has properly alleged these facts and its resulting legal claims in its Counterclaims-in-Reply.  As soon as these facts came out, Mattel began running away from prior positions taken in this case relevant to its trade secret misappropriation counterclaims, its state law tort counterclaims, and its RICO counterclaims.  In order to blunt the effect of its own misconduct, Mattel has suddenly started to claim that what used to be the supposed crown jewels of confidential business information are in fact not confidential at all and probably valueless.  Mattel has suddenly started to claim that litigation conduct shouldn't

1   really be the subject of this lawsuit after all, even though attacking MGA for

2   purported litigation misconduct in the form of RICO predicate acts has been its

3   mantra since 2007 when its Counterclaims were first filed.  Mattel's sudden about-

4   faces since MGA's filing alone demonstrates the important relationship between

5   MGA's Counterclaims-in-Reply and Mattel's Counterclaims.

6          As even Mattel admits, Counterclaims-in-Reply are permitted.  In fact, they

7   must be allowed where, as here, the Counterclaims-in-Reply are compulsory.

8   Therefore, they may be filed even absent leave to amend.  *See* Part I(A).

9          That they are compulsory is revealed by Mattel's conduct since they were

10  filed.  Mattel has already begun changing numerous previously held positions on its

11  Counterclaims as a result of these facts, defenses and claims now interposed by

12  MGA.  Indeed, Mattel has been forced to do so because each of the Counterclaims-

13  in-Reply depend on the same transactions and occurrences alleged in Mattel's

14  Counterclaims.  Mattel alleges that MGA stole trade secrets that Mattel, in turn,

15  stole.  Mattel's culture of treating the trade secrets of others with impunity

16  establishes that its own employees would not be able to discern that which is a

17  Mattel trade secret and that which is not.  Moreover, Mattel's concealment of

18  evidence has occurred in this litigation and therefore cannot be divorced from it.

19  *See* Part I(B).

20         Even were MGA required to seek leave to amend, which it is not, Mattel has

21  not demonstrated for an instant that leave to amend could properly be denied.

22  MGA has not delayed in bringing these claims – MGA brought them as soon as it

23  had the factual basis to do so.  Nor is Mattel prejudiced.  Mattel has always

24  possessed the evidence of its actions, and the only reason MGA did not is due to

25  Mattel's concealment of that evidence.  *See* Part I(C).

26         As for the claims brought, they are legally proper and cannot be dismissed or

27  stricken on the grounds interposed by Mattel.  Almost 100 years ago, the Supreme

28  Court sanctioned a claim for wrongful injunction.  Courts since then have

MGA OPP. TO MOT. TO DISMISS AND CROSS-MOTION FOR
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

1    repeatedly done so as well, and such claims are routinely brought in the same action

2    in which the injury arose.  *See* Part II.

3        Nor is the wrongful injunction claim the proper subject of an anti-SLAPP

4    motion.  It is a federal common law claim.  California's anti-SLAPP statute has no

5    application.  The same holds true of the RICO allegations Mattel seeks to strike,

6    which cannot be stricken under California's litigation privilege.  California's

7    litigation privilege does not apply to federal claims.  *See* Part III.

8        Finally, MGA's claims are not barred by the statute of limitations.  For the

9    trade secret claims, MGA has alleged fraudulent concealment.  While the facts will

10   establish fraudulent concealment, the test to be applied at this stage—on a motion

11   to dismiss—is only whether the facts alleged establish that MGA *cannot* make any

12   such showing.  The facts alleged here reflect no such thing.  *See* Part IV(A).

13       As for the RICO claims, MGA has alleged injury within the statute of

14   limitations and that ends the matter.  Of course, MGA has also alleged fraudulent

15   concealment which too precludes any finding on a motion to dismiss that the statute

16   of limitation bars MGA's claims.  *See* Part IV(B).

17       For these reasons and those set forth below, Mattel's motion should be

18   denied.

19                              **PLEADING ALLEGATIONS**

20   **A.    Mattel Directs Its Employees To Steal Competitive Information.**

21       Beginning at least in 1992, and continuing through at least 2006, Mattel

22   employees working in Mattel's market intelligence department snuck into the

23   private showrooms of MGA and other competitors.  Dkt. No. 8583 (Counterclaim

24   in Reply) ¶¶ 1, 11.  They did this like real-life spies (or thieves).  They used false

25   identifications.  They pretended to work for made-up companies.  They took with

26   them cameras and video recorders.  *Id.*  They did this to steal trade secret and

27   confidential information from MGA and others.  *Id.*  They did this to gain an

28   unlawful competitive advantage.  *Id.* ¶¶ 1, 10.

- 3 -

1    The scheme was international in scope.  From at least 2001 to 2006, Mattel

2    sent its employees, armed with lies and false identification, to Toy Fairs around the

3    world where its competitors, including MGA, showed information to actual

4    retailers about upcoming launches and product lines.  *Id.* ¶¶ 11-12.  Over the years,

5    and as a result of this scheme, Mattel gained access to dozens of competitors' trade

6    secrets and confidential information.  *Id.* ¶ 16.  And for MGA alone, Mattel gained

7    access to trade secrets and confidential information relating to more than 50

8    products.  *Id.* ¶¶ 2-3, 22.

9    Having obtained the information, Mattel then compiled the information,

10   which it distributed throughout Mattel.  *Id.* ¶ 14.  The information obtained was not

11   merely circulated in written form.  To ensure the widest distribution, Mattel would

12   make live presentations to lay out the information that Mattel stole from others.

13   *Id.* ¶¶ 14-15.

14   Then, to make the stolen information readily available for future consultation

15   and use, Mattel maintained (and maintains) the information in a library housed on

16   the Ninth Floor at Mattel.  Access was controlled, but even Mattel's legal

17   department used the information that Mattel stole.  *Id.* ¶ 17.

18   **B.      This Theft Is Known By The Highest Executives At Mattel.**

19   This scheme was not the result of some rogue employee on an illegal frolic.

20   This scheme was hatched and carried out with the approval and financial support of

21   the highest of Mattel executives.  *Id.* ¶¶ 1, 19.  Mattel executives, including

22   Mattel's CEO Bob Eckert, received copies of the reports and/or attended reviews of

23   the stolen information.  *Id.* ¶¶ 15, 20.  Top executives at Mattel supervised the

24   group, approved its expenses and affirmatively approved of the activities of the

25   group, as reflected in performance reviews.  *Id.* ¶ 20.

26   **C.      Mattel Hides This Scheme From MGA.**

27   Of course for a scheme like this to work, Mattel had to take steps to keep

28   MGA from discovering that its employees were sneaking into showrooms and

- 4 -

1   stealing information.  One simple way to do this was to hire outside contractors

2   who it believed could successfully spy on MGA without tipping MGA off.

3   Therefore, Mattel hired Sharon Rahimi, who entered into MGA showrooms on at

4   least two occasions under false pretenses to steal confidential information.  *Id.* ¶ 24.

5   Another way was to commission Bain & Company to obtain the confidential

6   information from MGA's business partners, who disclosed it not knowing that the

7   research was being done for and at the behest of Mattel.  *Id.* ¶ 25.

8          But this was not Mattel's only method for concealing the scheme and

9   keeping it under wraps.  When MGA sought the information in this lawsuit, Mattel

10  "sanitized" the documents or simply did not produce the information.  For example,

11  the report done by Bain & Company was not produced by Mattel until March 26,

12  2010, although it had been the subject of prior document requests and court orders.

13  *Id.* ¶ 27.  Even then, what MGA received was not the complete report.  Instead,

14  Bain & Company, acting at the request of Mattel's in-house lawyers, edited out

15  portions of the report that Mattel deemed to be harmful.  The lawyers then

16  instructed Mattel employees who had received copies of the unedited version to

17  destroy them.  *Id.* ¶¶ 26-27.

18         In other instances, Mattel simply refused to provide information that would

19  have revealed this scheme despite numerous document requests and court orders.

20  *Id.* ¶ 40.  When not altering reports so that they could be produced without

21  revealing the information, *id.* ¶ 48, Mattel simply did not produce the information at

22  all.   For example, Mattel did not produce documents that revealed the activities of

23  its market intelligence department until July 7, 2010, despite previous requests and

24  court orders.  *Id.* ¶¶ 51-52.  Mattel only did so when the jig was up and MGA had

25  finally gotten to the right witnesses that Mattel believed would disclose the

26  information in deposition.  *Id.* ¶ 52.  Still, Mattel continued (and continues) to

27  withhold evidence.  *Id.*

28         The efforts of Mattel and its counsel were not limited to withholding and

MGA OPP. TO MOT. TO DISMISS AND CROSS-MOTION FOR
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

1    altering documents.  It extended to tampering with witnesses.  When Sal Villesenor,

2    one of the main actors in Mattel's market intelligence department, began to

3    complain about his improper activities and lies, Mattel's counsel bought his silence.

4    Mattel paid him hush money and then hid his documents from sight.  *Id.* ¶¶ 37-39.

5        When MGA sought to depose Mattel witnesses, they provided false or

6    misleading testimony regarding the tactics of the market intelligence department.

7    This included the denial by Mattel's person most knowledgeable on the topic of

8    Mattel's theft of MGA confidential information, who denied that any Mattel

9    employee had ever snuck into showrooms.  *Id.* ¶¶ 53-54.

10       **D.    Mattel's Concealment, With The Aid Of Its Counsel, Extends To
             Other Aspects Of This Case.**

11

12       Mattel and its counsel were not just satisfied with hiding, withholding and

13   destroying evidence that would reveal the true activities of its market intelligence

14   department.  It extended as well to ensuring that its claims in this case could not be

15   properly or adequately defended.

16       For example, two of the key issues in Phase 1 of the trial related to when

17   Mattel was on notice of its claims and the amount of damages that Mattel was

18   entitled to as a result of those claims.  *Id.* ¶¶ 32, 57.  Yet, Mattel either suppressed

19   or destroyed evidence critical to that issue.  It altered and suppressed a 2001 Toy

20   Fair report that provided evidence that Mattel and its counsel knew about Bratz

21   before it came on the market.  *Id.* ¶¶ 48, 57.  Mattel suppressed and destroyed

22   documents relating to a study commissioned by Mattel's CEO, Bob Eckert, called

23   the "Bratz Brief."  This document was prepared to explain the history of Barbie's

24   economic importance and why it failed, and it attributed MGA's success to factors

25   other than Carter Bryant and his drawings.  *Id.* ¶¶ 32-33.  And, despite his key role

26   in this case, despite this litigation, despite urging the filing of this litigation,

27   Mattel's CEO continued to destroy documents.  *Id.* ¶ 33.

28       Even when documents have been produced relating to Bratz, key documents

1   were withheld until after the Phase 1 trial.  "What Happened to Barbie" is a memo

2   that expresses doubt that Mattel owned Bratz.  Yet it was not produced until

3   March 8, 2010.  Even then it was not found where it should have been, with Eckert.

4   It appears to have been recovered somewhere else, because Eckert deleted this

5   document despite knowing that this litigation was pending.  *Id.* ¶¶ 34-35.

6          As with the information relating to Mattel's market intelligence department,

7   Mattel did not stop at hiding, destroying and altering documents.  Its efforts

8   extended to intimidating former employees that were potential witnesses as well.

9   For example, after Mattel employees left Mattel to work for MGA, Mattel sent

10  them threatening letters warning them not to disclose even publicly available

11  information about Mattel.  *See* Case No. 05-CV-2727 (MGA Complaint) ¶ 75.

12         With Pablo Vargas, a former employee of Mattel Servicios, Mattel went one

13  step further.  Pablo Vargas is alleged to have stolen Mattel trade secrets as alleged

14  in Mattel's counterclaims.  Mattel was also pursing a criminal claim against him in

15  Mexico.  *Id.* ¶ 55.  In order to turn Vargas, Mattel offered to settle the Mexican

16  criminal action in exchange for his testimony.  *Id.* ¶ 56.  However, it was clear that

17  Mattel did not want just any testimony from him;  Mattel wanted testimony that

18  supported Mattel.  This was revealed when Vargas appeared for deposition.  On day

19  one, he testified in a manner that was not largely helpful to Mattel; it was for MGA.

20  On day two, after a threat to the pardon, Vargas changed his tune.  He changed

21  answers and his testimony became more favorable to Mattel.  *Id.* ¶ 56.

22         **E.     The Result Is A Sweeping Injunction, Now Reversed, And**
            **Enormous Harm To MGA.**
23

24         The result of all of this hiding, destroying and altering of information can be

25  found in the Court's injunctions, now reversed.  Neither the judge nor the jury

26  could properly assess the statute of limitations or laches defenses.  Nor did the

27  Court have the opportunity to consider an unclean hands defense.  Instead, the

28  Court—believing that Mattel was the offended party—issued sweeping injunctions,

1   despite the jury's clear indication that such relief was not appropriate.  The

2   injunctive relief nearly destroyed MGA and did destroy the brand equity in Bratz.

3   *Id.* ¶¶ 57-60.  Of course, this says nothing of the untold thousands upon thousands

4   of dollars expended by MGA just to uncover the evidence that Mattel and its

5   counsel were under an obligation to maintain and then disclose.

6         **F.**     **<u>MGA Diligently Sought Information Supporting Its Claims.</u>**

7        If not clear from what is set forth above, MGA diligently pursued the facts

8   that give rise to its Counterclaims-in-Reply.  MGA sought documents that would

9   reveal Mattel's theft of trade secrets, but Mattel concealed them. *Id.* ¶¶ 25-27, 40,

10  48-52.  Mattel did all that it could to make sure that witnesses would not reveal the

11  information, including buying their silence.  *Id.* ¶ 55.  MGA questioned Mattel

12  witnesses about the thefts alleged in the Counterclaims-in-Reply.  Mattel's

13  witnesses gave misleading and untruthful information.  Indeed, one went so far as to

14  deny that it ever happened at all.  *Id.* ¶¶ 53-54.  And when a witness tried to testify

15  in a manner favorable to MGA, Mattel threatened the witness and coerced him into

16  changing his testimony.  *Id.* ¶¶ 56.

17       As for Bratz, MGA sought information relating to Bratz.  Mattel concealed

18  that information as well.  *Id.* ¶¶ 33-35.  Indeed, more than that, Mattel destroyed

19  relevant information knowing that the information was relevant to this lawsuit.  *Id.*

20                   **ARGUMENT**

21  **I.**     **THE COUNTERCLAIMS-IN-REPLY MUST BE ALLOWED.**

22       **A.**     **<u>The Federal Rules Authorize The Filing Of A Counterclaim-in-
    Reply Without Prior Leave Of Court.</u>**

23

24       Rule 7(a)(3) defines as a pleading an "answer to a counterclaim designated as

25  a counterclaim"; Rule 13(a) requires, and Rule 13(b) permits, compulsory or

26  permissive counterclaims in any pleading.  Neither Rule requires prior permission

27  of the Court.  The plain language of these rules therefore authorized the filing of

28  MGA's Counterclaims-in-Reply as part of MGA's answer to Mattel's FAAC.  *See*

1   *Power Tools & Supply, Inc. v. Cooper Power Tolls, Inc.*, 2007 WL 1218701, at *2

2   (E.D. Mich. 2007) ("'aside from a rogue decision or two, courts have long agreed

3   that the federal rules provide for a counterclaim in reply'") (quoting *Pogue v. Allied*

4   *Prods. Corp.,* 1989 WL 111854, at *4 (N.D. Ill. Sept. 20, 1989)); *see Mission*

5   *Appliance Corp. v. Ajax Thermostatic Controls Co.*, 8 F.R.D. 588 (N.D. Ohio

6   1948).

7        Without *textual* explanation, the Ninth Circuit has limited such filings to

8   compulsory counterclaims-in-reply (apparently creating a circuit split).  *Davis &*

9   *Cox v. Summa Corp.*, 751 F.2d 1507, 1525 (9th Cir. 1985); *Power Tools & Supply,*

10  *Inc.*, 2007 WL 1218701, at *2 (noting split).  But, as even Mattel concedes (Mot. at

11  9), there is no doubt that the Ninth Circuit permits that compulsory counterclaims-

12  in-reply be filed without any prior leave of court.  *Id.* at 1525 ("the weight of

13  authority allows [a party] to file such pleadings if the counterclaims-in-reply are

14  compulsory . . . ."); *see also Frank Briscoe Co. v. Clark County*, 857 F.2d 606, 610

15  (9th Cir. 1988) (agreeing that compulsory counterclaims-in-reply are permitted).

16  Such claims are allowed because otherwise a party risks losing the right to bring the

17  claims entirely.  Indeed, this is the point made by the same treatise in the same

18  section that Mattel cites in support of its argument that leave to amend is required

19  for *permissive* claims.  A *compulsory* counterclaim in reply must be allowed

20  because were it otherwise the party asserting it "risk[s] being barred from bringing

21  a later action on it."  5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE §

22  1188 (3d ed. 2004).  And, for the reasons discussed in Part B, *infra*, there is no

23  doubt that these counterclaims-in-reply are compulsory.

24        Mattel seeks to argue that a counterclaim in reply should be treated as an

25  amendment to a complaint—the implication being that leave of court is required—

26  but the cases cited by Mattel do not support that conclusion.  *Erickson v. Horing*,

27  2000 WL 35500986 (D. Minn. Oct. 23, 2000), cited by Mattel, Mot. 9, concerned

28  whether the plaintiff should be allowed to file an *amended* counterclaim in reply.

1   Plaintiffs argued that an *amended* counterclaim in reply should be allowed because

2   defendant had not yet responded to their original counterclaim in reply.  *Id.* at * 9.

3   Based on this fact, the court noted that it would not permit the plaintiffs "to amend

4   their counterclaim as of right" and that leave of court was required.  *Id.* at *10.

5       *Fujitsu Ltd. v. Nanya Technology Corp.*, 2007 WL 1660694 (N.D. Cal. June

6   6, 2007), which Mattel claims establishes that compulsory counterclaims-in-reply

7   should be treated as an amendment to the complaint, says no such thing.  Mot. at

8   11.  In response to a counterclaim by Nanya, Fujitsu alleged a counterclaim in

9   reply, which the court found was compulsory.  Nanya argued that the counterclaim

10   in reply should be stricken because Fujitsu "could have brought, in its original

11   complaint, the claims it now seeks to bring, but chose not to do so."  *Id.* at * 2.  The

12   court rejected this argument because "This . . . does not provide cause to strike

13   Fujitsu's counterclaims-in-reply."  *Id.*  Moving beyond that, the court did direct

14   Fujitsui to amend its complaint to add its counterclaims-in-reply, but it do so "[t]o

15   simplify the pleadings."  *Id.*  The *only* fault the court found was that Fujitsu's

16   pleading violated the Northern District of California's *local patent rules*, which not

17   even Mattel claims apply here.  And even then, the court excused that oversight.  *Id.*

18       In other words, Mattel's cases say nothing about what we have here:

19   compulsory counterclaims-in-reply.  They are not amendments to complaints.  *See*

20   *Natomas Gardens Inv. Group v. Sinadinos*, 2010 WL 1558961, at *3 (E.D. Cal.

21   Apr. 19, 2010) ("it is appropriate to treat [it] as a counterclaim in reply rather than

22   an amendment to the complaint.").  And research has uncovered no cases stating

23   that leave to amend must be granted under these circumstances.[1]

24

---

25  [1] Mattel cites five additional cases that it claims supports its argument that leave to amend must be sought before filing an amended pleading.  *Swanson v. U.S. Forest*

26  *Serv.*, 87 F.3d 339 (9th Cir. 1996); *Gengler v. U.S. ex rel. Dep't of Defense and Navy*, 463 F. Supp. 2d 1085 (E.D. Cal. 2006); *Davis v. Foster Farms Dairy*, 2007

27  WL 114003 (E.D. Cal. Jan. 10, 2007); *AntiCancer, Inc. v. Fujifilm Med. Sys. U.S.A.*, 2010 WL 318406 (S.D. Cal. Jan. 19, 2010); *Aerotech Res., Inc. v. Dodson*

28  *Aviation, Inc.*, 2001 WL 474302 (D. Kan. Apr. 23, 2001).  None support Mattel's claims.  Each involve amending a preexisting pleading.  For example, *Swanson*, *Davis*, and *AntiCancer, Inc.* concern an amendment to a complaint.  *Gengler*

MGA OPP. TO MOT. TO DISMISS AND CROSS-MOTION FOR
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

## B.   The Counterclaims-in-Reply Are Compulsory.

As Mattel correctly notes, whether a claim is compulsory turns on whether the claims "'arise out of the transaction or occurrence that is the subject matter of the opposing party's claim.'"  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting Fed. R. Civ. P. 13(a)); *see also* Mot. at 10.  Where the parties part company is how this test is actually applied.

Whether a claim arises out of the same transaction or occurrence is not some wooden test to be applied blindly.  *See In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (noting same and cited with approval in *In re Lazar*, 237 F.3d 967, 980 (9th Cir. 2001)).  Rather, the test is to be flexibly applied with a liberal construction. *Pochiro*, 827 F.2d at 1249;  *see also id.* at 1252-53 ("[W]e believe that the liberal reading of the 'transaction or occurrence' standing is more in keeping with the pronouncements of the Supreme Court . . . .").  Or, as stated in *In re Lazar*, cited by Mattel, Mot. at 10, "'Transaction' is a word of flexible meaning.  It may comprehend a series of many occurrences depending not so much upon the immediateness of their connection as upon their logical relationship.'"  237 F.3d at 979 (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)). Therefore, the question to be answered is whether the claims are "so logically connected that considerations of judicial economy and fairness dictate that all of the issues be resolved in one lawsuit."  *Pochiro*, 827 F.2d at 1249.  They are.

***Claim 1--Trade Secret Misappropriation***.  Mattel has alleged in the Counterclaims that MGA systematically stole its trade secrets from Mexico, Canada and the United States by hiring various Mattel employees.  *See*  Dkt. No. 7714, 7733, 7766 (FAAC) ¶¶ 37-85.  MGA's Counterclaims-in-Reply arise from the same transactions and occurrences for at least three reasons.  First, Mattel is in some instances alleging as trade secrets against MGA the very same things it stole from MGA and others.  Second, the very nature of what constitutes a trade secret in the

involves an amendment to a petition for writ of habeas corpus.

toy industry must be tried in this case because of Mattel's counterclaims, and MGA's Counterclaims-in-Reply bear directly on MGA's defense of that issue in Mattel's case.

Third, Mattel has alleged that MGA induced Mattel's departing employees to steal trade secrets.  Mattel has repeatedly argued that there is no good explanation for why the employees took what they supposedly took other than that MGA bribed them with above-market salaries and told them to bring it.  The Counterclaims-in-Reply offer obvious alternative explanations:  Mattel's own culture and conduct either left employees completely mystified by what could possibly constitute a trade secret, or affirmatively taught them it was okay to take whatever they needed to perform their jobs anyway.  MGA thus will of necessity be presenting this very same evidence to negate elements of Mattel's claims and in support of affirmative defenses.  By definition, for at least these three reasons, the Counterclaims-in-Reply arise out of the same transactions and occurrences, and the trade secret misappropriation Counterclaim-in-Reply is compulsory to the trade secret counterclaim under even the narrowest interpretation (which, as noted above, is not proper in this context anyway).

*Claim 2--RICO*.  The RICO claim likewise arises out of the same transaction and occurrence in at least two respects.  Mattel's counterclaims present a story of MGA supposedly stealing Mattel's intellectual property in the form of Bratz, then stealing a bunch of other trade secrets to support the business deriving from the first theft, and then trying to cover it all up in litigation and transactions designed to evade the purported results of litigation.  MGA's RICO Counterclaim-in-Reply presents its story as the second side of the same coin:  in reality, Mattel knew it didn't own Bratz and that Barbie had failed on its own, but still suppressed that evidence; Mattel—not MGA—was the real thief and is directly responsible for how its employees behaved when they left Mattel; Mattel lied and covered up its own thievery both in order to further it and to keep it out of this litigation so that it could

1    deceive the jury and the Court; the Court entered wrongful permanent injunctions

2    as a result; and Mattel now refuses to pay for the damage it caused through its own

3    misconduct.  These two stories relate directly to the same set of transactions and

4    occurrences, and it would make absolutely no sense at all for two separate juries to

5    hear them at two separate times—in fact, it would directly and inappropriately

6    prejudice MGA not to be able to present its version of these events to the jury.  And

7    indeed, MGA will be entitled to present its defenses along these lines to place its

8    conduct in relation to that of Mattel.  Under these circumstances,  depriving MGA

9    of its affirmative claim makes no sense.

10        ***Claim 3--Wrongful Injunction.***  MGA's claim for a wrongful injunction is

11   also compulsory.  Mattel's RICO Counterclaims assert that MGA engaged in

12   wrongful conduct related to this litigation, including the Omni 808 transaction and

13   other transactions designed to evade the Court's orders, and including the very

14   injunctive orders that are the subject of the Wrongful Injunction Counterclaim-in-

15   Reply.  Not to mention that the Wrongful Injunction Counterclaim-in-Reply arises

16   directly from Mattel's other state law tort and copyright infringement

17   Counterclaims as they were tried in Phase 1.  This is plainly the same set of

18   transactions and occurrences.  *Cf. Pochiro*, 827 F.2d at 1252 (abuse of process is

19   compulsory counterclaim).

20        By any definition, the facts underlying MGA's Counterclaims-in-Reply

21   "arise out of the transaction or occurrence that is the subject matter of the opposing

22   party's claim."  The parties are fighting over the same thing: are Mattel's claims

23   justified, did Mattel bring those claims improperly, and did Mattel seek to prevent a

24   defense of those claims through its own wrongdoing.  To try Mattel's claims, this

25   Court is necessarily trying the same facts that give rise to MGA's Counterclaims-

26   in-Reply.  They are therefore compulsory.  *See Pochiro*, 827 F.2d at 1250

27   (defamation claim compulsory because facts necessary to prove it substantially

28   overlap with allegations of complaint); *id.* at 1252 (abuse of process claim

MGA OPP. TO MOT. TO DISMISS AND CROSS-MOTION FOR
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

1    compulsory because "the Pochiros [the party asserting the claim] would have to

2    demonstrate that Prudential had a wrongful purpose in pursuing its action."); *In re*

3    *Lazar*, 237 F.3d at 980 (claims for payment of fees from a fund and reimbursement

4    from the fund both "arise out of activities associated with the same bankruptcy

5    case" and therefore the claims are compulsory).[2]

6         The allegations in reply are not, therefore, as Mattel would have it, like those

7    made in *Conceptus, Inc. v. Hologic, Inc.*, 2010 WL 1460162 (N.D. Cal. Apr. 12,

8    2010).  The court there found that the allegations of misrepresenting clinical data

9    were similar and had a "thematic relationship," but were not the same transactions.

10   Here, the allegations are two sides of the same coin—two different ways of

11   presenting the same story.  And, if this case is like *Conceptus*, then the Court

12   should either reject the narrow view of the transaction and occurrence test espoused

13   in that case or should, as did the court in that case, simply grant leave to amend the

14   original complaint.

15        Because the Counterclaims-in-Reply are compulsory, no leave to amend was

16   required even under the Ninth Circuit's interpretation of Rules 7 and 13, let alone

17   the interpretation of the other circuits with which it has split on this issue.

18   **C.    If The Court Determines That Leave To Amend Is Required, Then**
19   **MGA Hereby Requests It And It Must Be Granted.**

20        Leave to amend MGA's original Complaint is not required for the reasons set

21   forth above.  But if the Court determines otherwise, then MGA hereby moves for

22   such leave, and for the reasons set forth herein is entitled to it.  As Mattel has

23   recited for this Court over and again, leave to amend "shall be freely given when

24   justice so requires" and the "policy of favoring amendment to pleadings should be

25   applied with extreme liberality."  *DCD Programs Ltd. v. Leighton*, 833 F.2d 183,

26   _____
     [2] These facts distinguish this case from *In re Pegasus Gold Corp.*, 394 F.3d 1189
27   (9th Cir. 2005).  There, the court found that the State's claim that the bankruptcy
     debtor failed to post a sufficient reclamation bond was not related to the debtor's
28   claim that arose later that there was a breach of an agreement to allow further
     reclamation efforts.  *Id.* at 1192, 1196.

185-86 (9th Cir. 1987); *see also* Dkt. No. 7675 (Mattel's Motion for Leave to Amend) at 6.  Nor is there undue delay, prejudice or bad faith.

### 1.    There Is No Undue Delay.

Starting with first principles, mere delay alone is not a sufficient basis for denying leave to amend.  Indeed, it is an abuse of discretion to deny leave to amend based on delay alone.  *See, e.g.*, *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973); *DCD Programs Ltd.*, 833 F.2d at 186.

In any case, there was no undue delay.  As the case Mattel cites acknowledges, undue delay occurs when a party seeks leave to amend "long after" it possesses or should have possessed the information on which the amendment is based.  *See IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 135861, at *4 (N.D. Cal. Jan. 22, 2004) (cited at Mot. at 12).  Indeed, each of the undue delay cases cited by Mattel note the length of time between the discovery of the information and the requested amendment.  Mot. at 12.  For example, in *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006), and *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991), the Court found undue delay due to lapses of 15 months and eight months, respectively, between the discovery of the evidence and leave to amend.   In *UNR Indus., Inc. v. Continental Ins. Co.*, 623 F. Supp. 1319, 1326-27 (N.D. Ill. 1985), plaintiff knew of its claims at the time it filed a previous amended complaint.

Here, there was no such delay and the facts simply do not support any claim that MGA knew of its claims at the time of any prior amendment.  As demonstrated in the Statement of Facts, MGA diligently sought the information that forms the basis of the Counterclaims-in-Reply.  Mattel, in response, assiduously hid those facts.  It failed to respond to discovery.  It entered into agreements with witnesses so that the information would not be disclosed.  And, indeed, this Court has seen the lengths to which Mattel has gone, even to the point of falsely stating to the Court that Villasenor did not obtain information from MGA, which is demonstrably

MGA OPP. TO MOT. TO DISMISS AND CROSS-MOTION FOR
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

1    false.  There is no basis for finding undue delay.  *DCD Programs Ltd.*, 833 F.2d at

2    187 (waiting to seek leave until one has sufficient evidence of the conduct giving

3    rise to the claim is not undue delay); *Probert v. The Clorox Co.*, 258 F.R.D. 491,

4    494 (D. Utah 2009) (delay does not justify denying leave to amend "while

5    Defendant . . . had suspicions about inequitable conduct upon receipt of Plaintiffs'

6    document production, it appropriately waited until after taking Plaintiffs'

7    deposition").  And once it had the information, MGA filed its Counterclaims-in-

8    Reply.  This is not undue delay.  *See id.*

9        Additionally, and here the law and common sense agree, a party cannot hide

10   evidence and then claim delay as a result, even if it means that the amendment is

11   not brought until the far stages of a case.  *See Sierra Club v. Union Oil Co. of Cal.*,

12   813 F.2d 1480, 1485-86, 1493 (9th Cir. 1987), *vacated on other grounds*, 485 U.S.

13   931 (1988) .

14                  **2.    There Is No Prejudice.**

15       The absence of unfair prejudice is a strong factor supporting amendment, and

16   the party opposing the amendment bears the burden of showing prejudice.  *Foman

17   v. Davis*, 371 U.S. 178, 187 (1962); *see also Eminence Capital, LLC v. Aspeon,

18   Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (absent prejudice or strong showing of

19   other factors "there exists a presumption under Rule 15(a) in favor of granting leave

20   to amend").  Mattel has known that MGA wished to discover the facts underlying

21   the allegations set forth in the Counterclaims-in-Reply.  In fact, this is the entire

22   point of Mattel's motion—that MGA was asking for discovery from Mattel and

23   from witnesses about the facts underlying the Counterclaims-in-Reply.  The only

24   reason that MGA did not obtain this information is due to Mattel's misconduct.  A

25   prejudice argument in these circumstances is without merit.  *See Simon Property

26   Group, L.P v. mySimon, Inc.*, 2003 U.S. Dist. Lexis 5438, *29-30 (S.D. Ind. Mar.

27   26, 2003) (rejecting argument that party seeking a new trial failed to exercise due

28   diligence where opposing party had belatedly produced key documents as "a

1    transparent effort to blame the victim of deceptive discovery practices.")

2           Mattel has been on notice that MGA would assert these claims provided there

3    was evidence to support them.  And the fact that Mattel was on notice is sufficient.

4    As Mattel itself argued when it sought leave to amend, Dkt. No. 7675 at 7 n. 26,

5    when a party has concealed evidence and has been put on notice even if only by

6    "[their] own records" of the events in question, a prejudice argument is not one that

7    a Court may defer to.  *Sierra Club*, 813 F.2d 1480, 1485-86, 1493; *Raytheon Co. v.*

8    *Indigo Sys. Corp.*, 2008 WL 3852715 (E.D. Tex. Aug. 14, 2008) * 2-3 (finding no

9    prejudice because "[h]ad the documents at issue been timely disclosed, the

10   complaint could have been amended to assert fraudulent concealment without leave

11   of the court").

12          Indeed, the fact that Mattel has concealed evidence distinguishes this case

13   entirely from those cases Mattel cites in support of its argument that the delay here

14   prejudiced Mattel.  Mot. at 14-17.  In none of those cases were there facts to show

15   the concealment of evidence.  This stands in contrast to *Sierra Club*, where a

16   motion for leave to amend was made on August 27, 1985—two months prior to the

17   October 29, 1985 trial date, and 13 days prior to the original trial date of

18   September 9, 1985.  The Ninth Circuit overruled the denial of the motion for leave

19   to amend as to the concealed claims.  "[W]here all of the amendments were based

20   on facts contained in [defendant's] own records, [defendant] had notice of the facts.

21   Thus, there is no prejudice . . . ."  813 F.2d at 1493.  So here.

22              **3.      There Is No Bad Faith.**

23          There is no bad faith here.  There is no tactical advantage gained by waiting.

24   This is not an instance where, for example, as in *United States ex rel. Jajdelski v.*

25   *Kaplan, Inc.*, 2010 WL 2326069, at * 3 (D. Nev. June 7, 2010), Mot. at 17, a

26   finding of bad faith is appropriate because MGA is "attempting to improperly

27   influence jurisdiction" and delay resolution of this case in order to "influence"

28   another matter.  It is not a case where MGA has sought leave to amend after trial.

1    *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379 (7th

2    Cir. 1990) (cited at Mot. at 18).  Nor is it even a case like that presented by Mattel

3    in seeking to amend its counterclaims now to completely change its theory of Bratz

4    ownership after losing its original theory on appeal, a change which is both

5    inconsistent with the Ninth Circuit's opinion (and will violate the mandate once it

6    issues) and is complete gamesmanship warranting reversal were the Court to permit

7    this type of amendment (that motion for leave to amend is still pending).  *See*

8    *Beverly Hills Bancorp v. R.W. Hine*, 752 F.2d 1334, 1338 (9th Cir. 1984).

9          Rather, this is a circumstance where MGA filed its Counterclaims-in-Reply

10   *immediately after* obtaining the evidence that supports them.  Mattel locked up all

11   of its employees with confidentiality agreements, sued or threatened to sue them,

12   and they wouldn't talk.  Anything they knew once they got to MGA was

13   information acquired in the course and scope of their employment for Mattel—not

14   for MGA.  Once MGA got the evidence, it brought the claims.

15         Indeed, not even Mattel can articulate the tactical advantage gained.  Mattel

16   claims that MGA was attempting to "sandbag" it and that MGA has engaged in

17   "gamesmanship."  Mot. at 18.  But how this was an effort at sandbagging is never

18   explained.  Nor could it be.  As Mattel's motion amply demonstrates, MGA was

19   seeking the evidence supporting its Counterclaims-in-Reply for several years and

20   Mattel was withholding it—apparently on the specious theory that it wasn't really

21   relevant to MGA.  In fact, right up until last week Mattel was still arguing that this

22   evidence was irrelevant to MGA, and that Mattel was perfectly justified in

23   withholding it, because Sal Villasenor didn't have the goods on MGA.  Of course,

24   not twenty minutes after that argument Mattel produced for the first time an email

25   that demonstrated on its face that Villasenor did in fact have the goods on MGA

26   along with everyone else[3]—putting the lie to Mattel's argument and amply

27   ─────────────
     [3] *See* Dkt. No. 8726 (Supplemental Declaration of Annette L. Hurst Re: MGA's
28   Motion to Compel Documents Regarding Mattel's Theft of Confidential
     Competitor Information, filed on September 10, 2010).

1    demonstrating exactly why MGA was justified in waiting until it had evidence of

2    what it suspected was true before bringing a claim.  There is no way that Judge

3    Larson would have permitted such allegations without the type of evidence MGA

4    has now discovered.  It is no tactical advantage *for MGA* to be faced with finding

5    this evidence when discovery is already closing, having already used up its

6    depositions, having limited ability to move to compel, and with no privilege logs at

7    all from Mattel ever having been served concerning this issue.

8           This late discovery of evidence hampers MGA far more than Mattel.  At least

9    Mattel knows – and has always known – exactly what it has done.  MGA must

10   scramble to support its claim.  Of course, MGA would wish it otherwise.  There is

11   no advantage gained to it by waiting.  MGA would have loved to have brought

12   these claims long before this.  In fact, the very notion that MGA would have

13   deliberately sat on these claims through the pounding it took in Phase 1 is so

14   convoluted and stupid that it is obviously wrong.  Occam's Razor:  Mattel hid the

15   evidence, ergo MGA did not make its bombshell claims based on evidence it

16   suspected might exist but did not have.  Not:  MGA knew about the evidence and

17   sat on it, taking a massive pounding that nearly put it out of business as a

18   consequence, and then at the very last minute decided to bring it in as an

19   afterthought.

20                      **4.     Amendment Is Not Futile.**

21          The futility standard is the same standard as used when considering a motion

22   to dismiss.  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see*

23   *also* Mot. at 18.  For the reasons set forth below, the Counterclaims-in-Reply are far

24   from futile.

25   **II.    THE MOTION TO DISMISS THE WRONGFUL INJUNCTION**
         **CLAIM MUST BE DENIED.**
26

27          Mattel makes three arguments in support of its motion to dismiss the

28   wrongful injunction claim.  First, it argues that a wrongful injunction claim can

1    only be brought as an independent action.  According to Mattel, it "has discovered

2    [no case] that permitted the insertion of an independent claim for wrongful

3    injunction in the action in which the injunction at issue was entered."  Mot. at 19.

4    Apparently it has not been reading very many cases, let alone Federal Rule of Civil

5    Procedure 65.1.  Second, Mattel claims that there is no cause of action for wrongful

6    injunction absent a bond.  Mot. at 22-23.  Again, Mattel has missed the venerable

7    and controlling Supreme Court precedent.  Third, Mattel claims that MGA has not

8    alleged unjust enrichment and that a claim for restitution is not a valid claim.  Mot.

9    20, 23.  Again, Mattel is wrong.

10       **A.    A Bond Is Not A Prerequisite For A Claim Of Wrongful**
11            **Permanent Injunction.**

12        There is a viable claim for a wrongful permanent injunction even absent a

13   bond.  Rule 65(c) provides that a bond is required for *preliminary* injunctions, and

14   the Ninth Circuit has held that such bonds are the exclusive remedy for a damages

15   claim based upon such a preliminary injunction.  *Buddy Sys., Inc. v. Exer-Genie,*

16   *Inc.*, 545 F.2d 1164, 1167 (9th Cir. 1976).  The cases cited by Mattel all involved

17   the issuance of a *preliminary* injunction.  *See* Mot. at 22-23.  *Nintendo of Am. Inc.*

18   *v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 n. 3 (9th Cir. 1994) (preliminary

19   injunction); *Buddy Sys., Inc.*, 545 F.2d at 1167 (preliminary injunction); *Benz v.*

20   *Campania Naviera Hidalgo, S.A.*, 205 F.2d 944, 948 (9th Cir. 1953) (temporary

21   injunction).

22        But, as discussed at great length in a very scholarly opinion in *Dornan v.*

23   *Sheet Metal Works' Int'l*, 810 F. Supp. 856 (E.D. Mich. 1992), there is a long

24   tradition in common law for wrongful permanent injunction claims which do not

25   depend on the existence of a bond.  The Supreme Court long ago found that such an

26   action was viable.  *See Arkadelphia Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134,

27   145 (1919).  Indeed, the *Dornan* opinion explains at length the history of such

28   actions, and in so doing, reconciles what one party argued appeared to be a conflict

- 20 -

1    in Supreme Court precedent.

2         In *Arkadelphia Co.*, 249 U.S. at 145, the Supreme Court found that a party

3    was entitled to receive damages as a result of a wrongfully issued injunction even in

4    the absence of a bond.  In the words of the Supreme Court,

5              a party against whom an erroneous judgment or decree
             has been carried into effect is entitled, in the event of
6              reversal to be restored by his adversary to that which he
             has lost thereby.  This right, so well founded in equity,
7              has been recognized in the practice of the courts of
             common law from an early period.
8

9    The Court reiterated this view in *Public Serv. Comm'n of Missouri v. Brashear*

10   *Freight Lines, Inc.*, 312 U.S. 621, 629 (1941), when it found that it has long been

11   settled that "damages sustained by parties injured because of an injunctive restraint

12   ultimately determined to have been improperly granted" may be awarded.  *See also*

13   *Mitchell v. Riegal Textile,* 259 F.2d 954, 955 n. 3 (D.C. Cir. 1954) (noting that on

14   remand the district court in *Brashear Freight Lines, Inc.* 41 F. Supp. 952 (D. Mo.

15   1941), assessed damages in excess of the bond); *Atlanta Journal and Constitution*

16   *v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287-89 (11th Cir. 2006)

17   (affirming order of restitution for harm caused by injunction); *Maryland Dep't of*

18   *Human Resources v. U.S. Dep't of Agriculture*, 976 F.2d 1462, 1482-83 (4th Cir.

19   1992) (reversing injunction and directing court to allow consideration of damages

20   incurred as a result of injunction although no bond was granted).

21        No Supreme Court precedent has overruled *Arkadelphia* and *Brashear*.

22   *Dornan* distinguished, and rightly so, *W.R. Grace & Co. v. Local 759*, 461 U.S. 757

23   (1983).  First, the *Dornan* court noted that the party claiming damages had actually

24   sought the injunction in *Grace*, which is of course not the case here.  Second, the

25   company there had expressly agreed to accept the losses from the injunction—also

26   certainly not the case here.  810 F. Supp. at 858.  In all events, nothing in *Grace*

27   purported to overrule *Arkadelphia* and *Brashear* and they control.  *See Agostini v.*

28   *Felton*, 521 U.S. 203, 237 (1997) ("[i]f a precedent of this Court has direct

1   application in a case, yet appears to rest on reasons rejected in some other line of

2   decisions, the Court of Appeals should follow the case which directly controls,

3   leaving to this Court the prerogative of overruling its own decisions." (citation and

4   internal quotes omitted)).

5        The claim for wrongful injunction here is based upon the reversal of a

6   *permanent* injunction.  The Court issued permanent injunctions after a trial on the

7   merits.  It called them that and it said that.  *See* Dkt. No. 4441(Order Granting

8   Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive

9   Relief) at 3 ("The MGA Defendants . . . are HEREBY PERMANENTLY

10  ENJOINED . . . ."); Dkt. No. 4443 (Order Granting Mattel, Inc.'s Motion for

11  Permanent Injunction).  Under *Arkadelphia* and *Brashear*, MGA is entitled to make

12  a claim for wrongful injunction.  And, under *Nintendo*, it is clear that the only

13  criteria for demonstrating the wrongfulness of an injunction is that it was

14  reversed—no bad faith need be proven.  All that MGA need prove to establish its

15  claim is that it was enjoined when it had the right all along to do what it was

16  enjoined from doing.  *Nintendo of Am., Inc.*, 16 F.3d at 1036 (a party is wrongfully

17  enjoined "when it turns out the party enjoined had the right all along to do what it

18  was enjoined from doing").  Accordingly, the federal common law claim for

19  wrongful injunction is well and properly pled.

20        **B.    <u>The Wrongful Injunction Claim Is Not Premature.</u>**

21        A wrongful injunction claim is properly considered in the same action in

22  which the injunction arose.  *Dornan*, 810 F. Supp. 856; *Middlewest Motor Freight*

23  *Bureau v. United States*, 433 F.2d 212, 215-18 (8th Cir. 1970) (shippers intervened

24  in action in which carriers obtained temporary injunction that resulted in increased

25  freight rates seeking restitution for excessive rates while temporary injunction was

26  in place); *see also Atlanta Journal and Constitution v. City of Atlanta Dep't of*

27  *Aviation*, 322 F.3d 1298, 1312 (11th Cir. 2003) (en banc) (directing district court to

28  consider claim for lost revenues as a result of overturned injunction without

- 22 -

1   requiring the filing of a separate lawsuit); *Maryland Dep't of Human Resources*,

2   976 F.2d at 1485 (directing court to consider damages claims arising from reversed

3   injunction); *Mitchell v. Riegel Textile, Inc.*, 259 F.2d 954, 955 (D.C. Cir. 1958)

4   (allowing recovery for wrongful injunction in same action injunction was obtained);

5   Rule 65.1 (enforcement of an injunction bond may be made "on motion without an

6   independent action"); *Nintendo*, 16 F.3d 1032 (wrongful injunction claim heard and

7   damages awarded in same proceeding in which injunction was issued).[4]

8       In fact, here, as expressly approved in *Dornan*, MGA has pled wrongful

9   injunction as part of its legal defense of setoff.  As noted above, the jury is therefore

10  going to have to hear this claim as part of MGA's defenses.  To deprive MGA of

11  the right to an affirmative recovery on the very same evidence the jury already will

12  have to consider makes absolutely no sense whatsoever.

13      Nor do the cases Mattel cites suggest otherwise.  First, and consistent with

14  the above, as Mattel acknowledges, courts have considered damages arising from

15  an injunction in the same action.  *See* Mot. at 19 (citing cases).  Second, *Monolith*

16  *Portland Midwest Co. v. RFC*, 128 F. Supp. 824 (S.D. Cal. 1955), *see* Mot. at 19,

17  did not hold that a separate action had to be filed.  Indeed, the party seeking

18  damages based on the issuance of the injunction brought the claims as a

19  counterclaim.  *Id.* at 875-77.  As for *Buddy Sys, Inc.,* 545 F.2d 1164, it is, as noted,

20  a preliminary injunction case.

21      **C.    MGA Is Entitled To Recover On All Applicable Theories.**

22      Mattel claims that there were no damages arising from the injunctions

23  because the injunction was stayed, "sales of Bratz products were never enjoined,"

24  and the constructive trust "was never executed in favor of Mattel."  Mot. at 20.

25  Moreover, Mattel argues that MGA fails to state a claim that would entitle it to

26  restitution which, according to Mattel, is " 'a return or restoration of what [a party]

---

27  [4] Based on the foregoing sections, Mattel's claim that MGA is somehow limited to
28  a malicious prosecution claim, which can be brought at some other time, Mot. at
    24-25, is without merit.

1    gained in a transaction.'"  Mot. at 23.  In other words, Mattel argues that MGA was

2    not harmed and Mattel did not gain, and therefore MGA is not entitled to recover.

3    This is a ridiculous argument even for summary judgment or trial given the facts in

4    this case, let alone for a 12(b)(6) motion.  Causation of harm raises an inherently

5    factual dispute and does not even pass the red-face test for a 12b(6) argument here.

6    Moreover, this argument is plainly based on incorrect premises.

7         The injunctions remained substantially in effect.  The recall provisions were

8    not stayed at all until the Ninth Circuit stayed them on December 9, which meant

9    that everyone in the industry knew for all of 2009 that they would have to give back

10   any product right after the holidays in 2009—a situation that by Mattel's and the

11   Court's design would disincentivize sales.  Additionally, the Court's April 27, 2009

12   Stay Order (Dkt. 5273) provided a stay only in order to sell the previously designed

13   2009 lines of product until the recall took effect.  The stay permitted no new lines

14   of product to be manufactured and sold prior to the recall.  This inability to update

15   the product was devastating to the brand of a toy company, which depends upon

16   constantly refreshing its lines in order to maintain currency with an inherently

17   fickle and rapidly changing population.

18        To say that the injunctions never went into effect is simply false.  Mattel

19   knows this because Mattel resisted at every stage any attempt to lift the injunctions.

20   *See* Dkt. No. 4513 (Mattel Opp. to Mot. for Stay Pending Appeal); Dkt. No. 5495

21   (Mattel Opp. to Mot. for Stay Pending Appeal); Dkt. No. 7071, 7079 (Mattel Opp.

22   to Mot. to Vacate).  Indeed, even when the Ninth Circuit granted the stay, Mattel

23   came back with a motion to reconsider the stay.  Ninth Circuit Dkt. No. 97 (Mattel

24   Motion for Reconsideration of Stay Order).  And MGA incurred damages as a

25   result.  Dkt. No. 8583 ¶¶ 4, 59-60, 320.

26        Second, as for damages, MGA is entitled to the amounts that it lost as a result

27   of the injunction and whatever Mattel received, to the extent not duplicative.  It is

28   simply not the case that the only remedy is the amount of money that fell into

MGA OPP. TO MOT. TO DISMISS AND CROSS-MOTION FOR
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)

1   Mattel's hands.  The court in *Nintendo*, 16 F.3d at 1038-39, awarded damages for
2   lost profits based on lost sales that would have otherwise been made by the
3   enjoined party.  That case involved no claim of unjust enrichment at all.  Moreover,
4   Mattel has been unjustly enriched.  It forced MGA out of the market, something
5   that it brought this litigation to do.  What was taken from MGA: its ability to sell
6   Bratz.  What was given to Mattel: a marketplace that it could exploit without Bratz.
7   Dkt. No. 8583 ¶¶ 4, 57, 59-60, 320.  MGA is entitled to recover its damages and the
8   benefits received by Mattel, limited only by the principle that the recovery may not
9   be duplicative.  That was what Mattel was entitled to recover when it won its
10  copyright claim (17 U.S.C. § 504), and MGA should be entitled to no less now that
11  Mattel's injunction based on that claim has been reversed.

12  **III.   THE MOTION TO DISMISS THE OTHER TWO**
13  **COUNTERCLAIMS-IN-REPLY ON STATUTE OF LIMITATIONS**
    **GROUNDS IS MERITLESS.**

14

15      A complaint may not be dismissed on the basis of statute of limitations
16  unless from the face of the complaint it is apparent that the statute of limitations has
17  run.  *See, e.g.*, *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).
18  To state it another way, "a complaint cannot be dismissed unless it appears *beyond*
19  *doubt* that the plaintiff can prove no set of facts that would establish the timeliness
20  of the claim."  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir.
21  1995) (emphasis added).  Based on the allegations of the complaint, Mattel is not
22  entitled to a dismissal on the basis of statute of limitations.

23      **A.   <u>MGA's Trade Secret Misappropriation Claim Is Not Barred.</u>**
24      MGA has alleged fraudulent concealment at every turn.  Mattel worked to
25  ensure that MGA would not discover that its employees were spying on MGA by
26  directing them and approving of their use of false identifications.  Dkt. No. 8583
27  ¶ 11.  It hired employees specifically because they would be able to sneak in and
28  steal MGA's information without notice.  *Id.* ¶ 24.  It suppressed evidence

- 25 -

1   establishing that it actually possessed MGA's confidential information, including

2   destroying and altering documents that would. *Id.* ¶ 25-27.  It paid hush money to

3   the employees that did steal information. *Id.* ¶¶ 38-39.  It failed to produce

4   documents when requested or even when ordered by the Court. *Id.* ¶¶ 40, 48-52.

5   Witnesses were prepared to conceal information and provide misleading testimony.

6   *Id.* ¶¶ 53-54, 57.

7        Moreover, MGA was diligent in its pursuit of this information.  MGA sought

8   documents that would reveal Mattel's theft of trade secrets, but Mattel concealed it.

9   Counterclaim in Reply ¶¶ 25-27, 40, 48-52.  MGA sought information relating to

10  Bratz.  Mattel concealed that as well. *Id.* ¶¶ 33-35.  MGA questioned Mattel

11  witnesses about the thefts alleged in the Counterclaim in Reply.  Mattel's witnesses

12  gave misleading and untruthful information. *Id.* ¶¶ 53-54.  Mattel did all that it

13  could to make sure that witnesses would not reveal the information. *Id.* ¶ 55.  And

14  when a witness tried to testify in a manner favorable to MGA, Mattel threatened the

15  witness and coerced him into changing his testimony. *Id.* ¶¶ 56.

16       These facts amply support a claim of fraudulent concealment sufficient to

17  reject any argument that MGA's claims should be dismissed based on statute of

18  limitations.  It certainly is enough to satisfy the standard that applies.  That standard

19  requires this Court to consider whether, taking all facts as true and drawing all

20  reasonable inferences in favor of MGA, *Arpin v. Santa Clara Valley Transp.*

21  *Agency*, 261 F.3d 912, 923 (9th Cir. 2001), "the assertions of the complaint, read

22  with the required liberality, would *not* permit the plaintiff to prove that the statute

23  of limitations was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th

24  Cir. 1980) (emphasis added); *see also RA Med. Sys., Inc. v. Photomedex, Inc.*, 373

25  F. App'x 784, 787 (9th Cir. 2010).  Certainly, it cannot be said that there are no

26  facts alleged that would not permit proof of fraudulent concealment.

27       Moreover, while Mattel claims that the statute of limitations begin to run

28  before "smoking gun" evidence, Mot. at 28, the law also provides that "a defendant

cannot hinder the plaintiff's discovery through misrepresentations and then fault the plaintiff for failing to investigate," which is what we have here. *Weatherly v. Universal Music Publ'g Group*, 125 Cal. App. 4th 913, 919 (2004).

Nor is it the case that the knowledge of Machado and Brawer can be imputed to MGA.  First, Mattel took steps to ensure that its former employees would not reveal information, even public information about Mattel to MGA.  *See* Case No. 05-CV-2727 (MGA Complaint) ¶ 75.  Second, as the case law on which Mattel relies makes clear, *see* Mot. at 27, 31, the knowledge of an employee may be imputed to a corporation only when that knowledge is "obtained while acting in the course of their employment and within the scope of their authority . . . ." *W.R. Grace & Co. v. Western U.S. Indus., Inc.*, 608 F.2d 1214, 1218 (9th Cir. 1979); *see also Sanders v. Magill*, 70 P.2d 159, 163 (Cal. 1937) ("Knowledge of an officer of a corporation within the scope of his duties is imputable to the corporation."). There is no plausible argument that the work of Brawer or Machado at MGA concerned the activities of Mattel and its counsel alleged in the complaint.  It was not encompassed in the course of their work or in the scope of their authority.[5]

Finally, as noted, *see* Part I, *supra*, MGA's Counterclaims-in-Reply are compulsory.  They therefore relate back to the filing of Mattel's complaint giving rise to these claims, which is January 2007 and which is within the three year statute of limitations.  *Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1980); *North County Commcn's Corp. v. Verizon Global Networks, Inc.*, 685 F.

---

[5] Mattel's Motion to Dismiss also cites misleading snippets of testimony to suggest that MGA's employees knew much more about Mattel's misconduct than the evidence actually suggests.  MGA need not address this testimony in detail here, as it is well settled that a court may not consider matters outside of the pleadings on a motion to dismiss, with the exception of documents attached to the compliant, documents referenced in the complaint about which there is no dispute, or items that may be judicially noticed. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  Mattel's Motion violates these rules, and the facts it asserts must be disregarded.

1    Supp. 2d 1112, 1118-19 (S.D. Cal. 2010); *Sidney v. Superior Court*, 198

2    Cal. App. 3d 710, 714 (Cal. App. 1988) ("'The statute [of limitations] is a bar to the

3    defendant's affirmative claim only if the period has already run when *the complaint*

4    *is filed*. The filing of the complaint suspends the statute during the pendency of the

5    action, and the defendant may set up his cross claim by appropriate pleading at any

6    time.'").

7          **B.      The RICO Claim Is Not Barred.**

8          Mattel argues that the RICO statute of limitations has run because MGA

9    knew or should have known of the injury that forms the basis for its RICO claims

10   prior to August 16, 2006. Mot. at 31. In making this argument, Mattel focuses

11   solely on MGA's claim of trade secret misappropriation, stating that MGA knew of

12   those claimed thefts "more than four years before it filed." *Id.* at 31.

13         Even with that as a focus, and assuming MGA did in fact know of the thefts

14   more than four years before it filed its affirmative claims, the statute of limitations

15   for RICO runs from the point of each new and independent injury. *Grimmett v.*

16   *Brown*, 75 F.3d 506, 510 (9th Cir. 1996). There is no basis for finding from the

17   face of the complaint that the injuries from Mattel's theft of trade secrets, some of

18   which occurred as late as 2006 (at least the theft of which we are aware), were

19   limited solely to the period of time prior to the running of the statute of limitations.

20         Moreover, Mattel's sole focus on the trade secret misappropriation claim is

21   telling. Assuming just for now that MGA knew or should have known of its injury

22   from Mattel's theft of trade secrets, Mattel misses that MGA's RICO claim is not

23   premised solely on Mattel's theft of trade secrets. In addition to the scheme to steal

24   trade secrets, Counterclaim in Reply ¶¶ 6-22, MGA alleges new and independent

25   injuries that, on the face of the complaint, clearly are within the four year statute of

26   limitations. MGA alleges that Mattel engaged in a cover-up of facts in connection

27   with this case up to and including July 2010. Counterclaim in Reply ¶¶ 48-57.

28   Mattel also misled the Court in order to obtain the injunctions that were the result

- 28 -

1  of the Phase 1 trial.  *Id.* ¶¶ 58-60.

2          The injuries incurred are independent from the act of trade secret

3  misappropriation.  And they inflicted new and different injuries.  The hiding of

4  evidence and the tampering with witnesses, at the least, drove up the cost of this

5  litigation for MGA.  *See Malley-Duff v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir.

6  1986).  The wrongfully obtained injunction and relief granted by the Court injured

7  MGA by depriving it of sales, interfering with relationships with retailers and

8  licensees, and destroying an estimated billion dollars in brand equity.  Counterclaim

9  in Reply ¶ 317.  Neither a cover-up nor lies to a Court are "are injuries that

10  naturally flow from" a theft of trade secrets.  *See Grimmett*, 75 F.3d at 513; *Bankers*

11  *Trust Co. v. Rhoades*, 859 F.2d 1096, 1102-05 (2d Cir. 1988) (wrongfully

12  concealing assets is a an injury independent of the conducting of harassing lawsuits

13  and fraudulent conveyance of property).

14          In addition, even were it the case that MGA knew of its injury as a result of

15  Mattel's theft of trade secrets, the statute of limitations is tolled until such time as a

16  party who knows of their injury can investigate the facts that support the RICO

17  claim.  *Rotella v. Wood*, 528 U.S. 549, 560-61 (2000) ("where a pattern remains

18  obscure in the face of a plaintiff's diligence in seeking to identify it" equitable

19  tolling applies); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) (affirming that

20  fraudulent concealment will toll the statute of limitations for RICO); *Grimmett*, 75

21  F.3d at 512 (court may toll statute of limitation until pattern can be found by RICO

22  claimant).

23          As already noted, *see* Part III-A, *supra*, MGA diligently pursued discovery of

24  the facts that now give rise to its RICO claim.  At every stage in this process,

25  Mattel thwarted that effort.  Mattel altered and hid documents.  Mattel coerced

26  witnesses and bought the silence of others.  And even when Mattel offered

27  witnesses, they were not truthful.  During this entire time period, the statute of

28  limitations was tolled.  *See Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036,

1042 (10th Cir. 1980) (reversing granting of motion to dismiss because complaint alleged concealment).

## IV.   THE MOTION TO STRIKE IS MERITLESS.

### A.   <u>California's Litigation Privilege Does Not Apply To Federal Claims Brought In Federal Court.</u>

California's litigation privilege does not allow Mattel to strike allegations made in support of federal claims.  Paragraphs 41, 46, and 47, the subject of the motion to strike, are alleged in support of MGA's RICO claims.  As such, an attorney cannot claim the protections of California's litigation privilege.  *Pardi v. Kaiser Found. Hospitals*, 389 F.3d 840, 851 (9th Cir. 2004).  "A construction of [a] federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996).

### B.   <u>California's Anti-Slapp Statute Similarly Does Not Apply To The Federal Common Law Wrongful Injunction Claim.</u>

California' anti-SLAPP statute does not apply to federal claims.  It applies only to state law claims, as Mattel acknowledges.  Mot. at 25; *Hilton v. Hallmark Cards*, 599 F.3d 894, 900-01 (9th Cir. 2010).  A wrongful injunction claim based on a federal court's issuance of an injunction is a federal common law claim.  The right to recover for a wrongfully issued injunction issued by a federal court is governed by federal law.  *Russell v. Farley*, 105 U.S. 433, 437 (1881); *Minnesota Power & Light Co. v. Hockett*, 105 F. Supp. 2d 939, 941 (S.D. Ind. 1999).  California's anti-SLAPP statute simply does not apply.

MGA's wrongful injunction claim also does not challenge Mattel's right to petition, as Mattel claims.  Mot. at 25.  A wrongful injunction claim is instead premised on the notion that a party wrongfully enjoined should be allowed recovery.  No court has ever held that providing a remedy of this type impinges the

1    right to petition.  Instead, as the Supreme Court noted in *Arkadelphia Co.*, 249 U.S.

2    at 145, "a party against whom an erroneous judgment or decree has been carried

3    into effect is entitled, in the event of reversal to be restored by his adversary to that

4    which he has lost thereby."  *See also Nintendo*, 16 F.3d at 1036 (no element of bad

5    faith required for wrongful injunction recovery).

6        Even were it proper to view a wrongful injunction claim as somehow

7    implicating the right to petition, Mattel's argument would still have no merit.  The

8    wrongful injunction claim is also premised on Mattel's improper acts over the course

9    of this litigation.  Federal causes of action are properly based on claims that a party

10   and their attorneys have engaged in a cover-up of facts to obtain results in federal

11   court.  That conduct is not protected by any "right to petition."  Rather, it is

12   governed by the laws prohibiting such acts.  *Kearney v. Foley & Lardner, LLP*, 590

13   F.3d 638, 646-47 (9th Cir. 2009) (RICO claim based on suppression of expert report

14   properly brought); *Malley-Duff*, 792 F.2d 341 (RICO claim based on improper

15   discovery conduct, among other things, properly brought); *Bankers Trust v. Rhoades*,

16   859 F.2d 1096 (RICO claim based on misrepresentations to court and filing of

17   lawsuits properly brought); *J & M Turner, Inc v. Applied Bolting Tech. Prods., Inc.*,

18   1997 WL 83766 (E.D. Pa. 1997).[6]

19       Finally, Mattel claims that MGA bears the burden of establishing that its

20   wrongful injunction claim has "at least minimal merit."  Mot. at 25.  It does.  All

21   that MGA need prove to establish its claim is that it was enjoined when it had the

22   right all along to do what it was enjoined from doing.  *Nintendo of Am., Inc.*, 16

23   F.3d at 1036.  The Ninth Circuit's opinion establishes the "minimal merit" of this

24   claim.

25                              **CONCLUSION**

26       For all of the foregoing reasons, Mattel's Motion to Dismiss and/or Strike

27

28   _____

[6] For these same reasons, the Noerr-Pennington doctrine does not apply. Mot. at 34
n. 95.  *See Kearney*, 590 F.3d at 646-47.

1    should be denied.  Alternatively, if the Court finds that the Counterclaims-in-Reply

2    are not compulsory and required leave to amend, then the cross-motion for leave to

3    amend the original Complaint should be granted.

4

5    Dated:     September 16, 2010               Respectfully submitted,

6                                                ORRICK, HERRINGTON & SUTCLIFFE
                                                 LLP
7

8                                                By: */s/ Annette L. Hurst*
                                                 _____
9                                                     Annette L. Hurst
                                                 Attorneys for MGA Parties
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Opp. to Mot. to Dismiss and cross-motion for
LEAVE TO AMEND
CV-04-9049 DOC (RNBx)