**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                                                        Date: September 17, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                             NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER ON AUGUST 10, 2010 DISCOVERY MOTIONS AND RELATED MATTERS

        Before the Court are MGA Entertainment, Inc. ("MGA")'s August 10, 2010 Motions discovery motions (the "Motions"). After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court rules as follows

    **I.**    **Docket 8503**

        MGA moves for an order compelling Mattel to produce documents responsive to eight Requests for Production (RFPs) propounded by MGA. The requests for production seek discovery into MGA's recent claim that Mattel "us[ed] false identification to sneak into competitors' show rooms and steal[] confidential information." Dkt. 8568 at 2. MGA claims to have recently discovered information that Mattel maintained a "competitive intelligence" department that dispatched employees to visit showrooms maintained by Mattel competitors at toy fairs. MGA is particularly outraged at Mattel's document production to date, arguing in ALL CAPS that "NOT A SINGLE PAGE WAS PRODUCED [by Mattel] FOR FOUR YEARS UNTIL JULY 2010." *See* Dkt. 8568 at 4 (emphasis in original). The instant requests for production seek to remedy Mattel's supposed failure to timely respond to MGA's discovery requests. Though Mattel responds that (1) its employees didn't enter MGA's showrooms; and (2) the information in those showrooms was not confidential anyway, MGA ridicules Mattel's argument as inconsistent with Mattel's prior positions as well as the facts as to the activities of Mattel's Competitive Intelligence Department. *See* Reply at 7 ("Good luck with that . . .").

Since the parties' arguments devolved into the facts concerning MGA's underlying allegations, the Court received very little argument about the merits of the *discovery* motion. As a result, the Court has attempted to distill the key disputes between the parties concerning each of the requests for production at issue.

RFP 323 of MGA's Seventh Set of Requests for Production (Phase 1) seeks "[a]ll documents referring or relating to any practice of anyone at Mattel of visiting the showrooms of competitors during any Hong Kong or New York Toy Fair(s), including but not limited to how Mattel gained admittance to any competitors' showrooms as well as how Mattel controls access to its own showrooms." Mattel objects to the request as over broad, since it encompasses showrooms of *all* Mattel competitors, and not just MGA. First, MGA responds that Mattel's activities with regard to other competitors is not just discoverable, but also admissible under Fed. R. Evid. 406, because Mattel engaged in a habit or reflex of stealing competitors' proprietary information. However, the Court is aware of no authority (nor does MGA cite any authority) that stands for the proposition that "widespread" practices are admissible under Rule 406. Second, MGA responds that the documents obtained from competitors' showrooms will be marked on their face and show that "others [] consider this information confidential." But the request for production extends well beyond the documents obtained by Mattel; it refers to the "practice of . . . visiting the showrooms of competitors." Moreover, it's unclear how the "marking" of documents as confidential is sufficient to establish their confidentiality. And, of course, MGA cites no authority for the proposition that the documents that Mattel allegedly stole from MGA should be considered confidential merely because other competitors considered that type of document confidential. Third, MGA argues that "the fact that Mattel itself does not treat its competitors' unreleased product information as confidential is directly relevant to whether Mattel's same information is being treated as such." Once again, MGA cites no authority (nor is the Court aware of any) for the proposition that one market participant's failure to adequately guard certain types of information precludes another market participant from claiming that the information was confidential.

Indeed, MGA has consistently resisted Mattel's expansive discovery requests on the grounds that the discovery in this case should be narrowly construed to encompass only the relationship between the two parties. The Court has never ordered discovery into, for example: (1) whether MGA recruited individuals employed by other competitors; and (2) whether MGA bribed employees at other companies to work for MGA's benefit.

The Motion is GRANTED IN PART AND DENIED IN PART as to RFP 323, and RFP 323 is limited to "[a]ll documents referring or relating to any practice of anyone at Mattel of visiting the showrooms of MGA during any Hong Kong or New York Toy Fair(s), including but not limited to how Mattel gained admittance to any MGA showrooms as well as how Mattel controls access to its own showrooms."

RFP 16 of MGA's First Set of Requests for Production seeks "[a]ll documents referring

or relating to the 'Bratz' themes . . . before they were advertised or otherwise made publicly available." Mattel claims to have already "produced such information, including marketing materials and price lists." However, RFP 16 does not encompass mere "marketing materials." It extends to all documents referring or relating to the MGA themed products prior to their release. The Motion is GRANTED as to RFP 16.

RFP 17 of MGA's First Set of Requests for Production seeks "[a]ll documents referring or relating to 'Bratz' . . . showing any awareness by Mattel of 'Bratz,' prior to the January 2001 Hong Kong toy fair." Mattel's objections to this RFP are no different from its objections as to RFP 16. Those arguments are unconvincing, since this RFP also extends beyond marketing materials and price lists. The Motion is GRANTED as to RFP 17.

RFP 31 of MGA's First Set of Requests for Production seeks "[a]ll documents referring or relating to whether Mattel had access to any exhibits, displays or show rooms containing any of MGA's 'Bratz' lines prior to its release to the public." Mattel responds that "Mr. Villasenor never entered any of MGA's private showrooms." However, the RFP seeks documents concerning whether Mattel had access to MGA's showrooms *by any source*, not just Mr. Villasenor. The Motion is GRANTED as to RFP 31.

RFP 114 of MGA's First Set of Requests for Production seeks "[a]ll documents tending to support or refute any of the denials, allegations or statement in your answer, not produced in response to another Request." MGA offers no targeted argument in support of this request, which was served during Phase 1 and has nothing to do with Villasenor's activities. As Mattel argues, this request "concern[s] Mattel's Answer and Mattel's affirmative defenses to MGA's 2005 Complaint, not MGA's affirmative defense of unclean hands to Mattel's claims or any other MGA allegations." The Motion is DENIED as to RFP 114.

RFP 115 of MGA's seeks "[a]ll documents tending to support or refute your affirmative defenses to the Complaint, not produced in response to another Request." Much like RFP 114, this request is supported by no targeted argument in MGA's Motion. On its face, the request does not encompass Villasenor's activities. The Motion is DENIED as to RFP 115.

RFP 476 of MGA's Fifth Set of Requests for Production seeks documents concerning Mattel's efforts to obtain competitive intelligence about MGA including (1) Mattel's communications with MGA's employees; (2) Mattel's use of confidential informants within MGA; (3) Mattel's knowledge about MGA's products prior to their release; (4) Mattel's access to MGA's information at showrooms and toy fairs; (5) Mattel's access to MGA's products at showrooms and toy fairs; (6) Mattel's access to confidential information about MGA through MGA's retailers; and (7) other vehicles through which Mattel obtained information about MGA's confidential information. For the reasons discussed in the context of RFP 323, the Motion is GRANTED as to RFP 476.

RFP 737 of MGA's seventh set of requests for production seeks "[a]ll documents referring or relating to market research and competitive studies and analyses prepared or conducted by you with respect to the fashion doll market." Mattel claims to have "already produced over a thousand pages of such reports." However, the request also seeks documents "referring or relating to" such reports, which, in the context of MGA's recent counterclaims-in-reply, encompasses documents that served as the foundation for the eventual reports prepared by Mattel. That is, MGA minimally seeks discovery into the manner in which Mattel obtained the information about MGA that was later analyzed in the competitive market research reports already produced by Mattel. The Motion is GRANTED as to RFP 737, which is modified to encompass only documents concerning MGA and MGA's products.

## II.    Docket 8566

MGA moves to compel responses to four requests for production concerning Janine Brisbois ("Brisbois"). Brisbois is a former Mattel Canada employee who defected to MGA. Mattel alleges that, prior to leaving Mattel Canada, Brisbois downloaded Mattel and Mattel Canada trade secret information to a thumb drive that she later delivered to MGA.

In its "Certification of Compliance," MGA claims that "[c]ounsel for MGA sent a meet and confer letter to counsel for Mattel on July 30, 2010, to which Mattel responded on August 6, 2010. The parties were unable to reach a resolution." However, Mattel argues that MGA did not "me[e]t and confer[] with Mattel before filing this motion." *See* Opp. at 1 n. 1.[1] Whether or not MGA satisfactorily met and conferred with Mattel prior to the filing of this Motion, its "Certificate of Compliance" is plainly inadequate. On June 7, 2010, this Court ordered the parties to certify that lead counsel met and conferred prior to the filing of any written motion or *ex parte* application. The mere fact that MGA "sent a meet and confer letter" does not satisfy this requirement, since (1) the letter (if any) must have been sent from at least one lead counsel of MGA to at least one lead counsel of Mattel; and (2) the submission of a letter does not qualify, under any reasonable definition, as either a meeting or a conference. Accordingly, MGA is ORDERED TO SHOW CAUSE in writing on or before 10:00 a.m. PST on September 21, 2010 as to why it should not be sanctioned for its failure to comply with the Court's June 7, 2010 Order. MGA is further ordered to lodge with the Court the supposed "meet and confer letter" it sent to Mattel as well as Mattel's supposed response.

MGA previously asked Mattel to identify with specificity the trade secrets Brisbois allegedly stole from Mattel and Mattel Canada. In response, Mattel identified four categories of

---

[1] MGA characterizes Mattel's opposition as "gras[ing] at procedure." MGA also argues that the motion should not be denied on "procedural grounds" alone. Contrary to MGA, procedure doesn't exist for the parties' benefit. In the discovery context, procedural rules ensure that parties do not waste the Court's resources and attention with needless disputes. MGA's disdain for the procedural safeguards that ensure the faithful management of the judicial process is baffling.

documents allegedly stolen by Brisbois: (1) documents concerning Mattel's participation in the Children's Miracle Network; (2) documents concerning a Mattel promotional event on Green Friday, the day after Thanksgiving in Canada; (3) documents concerning Mattel's Business 2 Business website; and (4) information about Mattel Canada's Sales Organizational Structure.  MGA seeks more information from Mattel about these alleged trade secrets.

RFP 309 seeks "[d]ocuments and communications that refer or relate to Mattel Canada's participation in the Children's Miracle Network from 2004 to 2006."  Mattel argues the request is overbroad because it the vast majority of responsive documents are irrelevant to Brisbois' conduct.  MGA responds that Mattel's "documents and communications" about the Children's Miracle Network promotion may reveal that the promotion was widely promoted by Mattel and, therefore, not a trade secret.  However, the request extends far farther than the promotion or disclosure of the Children's Miracle Network concept – it also includes Mattel Canada's internal communications about the program's operation, its funding, and its performance.  The request should be modified to include only documents that refer, relate to, or evidence, knowledge outside Mattel and Mattel Canada of Mattel Canada's participation in the Children's Miracle Network program.  The Motion is GRANTED as to RFP 309, as modified by the penultimate sentence of this paragraph.

RFP 311 seeks "[d]ocuments sufficient to show Mattel Canada's organizational structure from 2004 to 2006."  MGA claims it needs information about the internal workings of Mattel Canada in order to challenge Mattel's allegation that "Brisbois . . . provided MGA with descriptions and documentation of Mattel's organizational structure for its sales team."  Although Mattel challenges the breadth of MGA's request, the request is no more expansive than the category of information alleged to have been stolen by Brisbois.  Indeed, Mattel not only claims that Brisbois provided MGA with "documentation" about Mattel Canada, but that she provided MGA with "descriptions" of Mattel Canada's organizational structure as well.  Mattel is free to narrow its allegation to encompass only "documents" allegedly stolen by Brisbois, in which case the Court can narrow MGA's request.  But, as the allegations presently stand, the request is reasonable.  The Motion is GRANTED as to RFP 311.

RFP 312 seeks "[d]ocuments sufficient to show Mattel's development and use of its B2B site for Mattel Canada in 2004 and 2005."  This request relates to Mattel's allegation that "Brisbois gave MGA information regarding Mattel's B2B site . . ."  Like RFP 309, this request unreasonably extends to Mattel's internal communications about the development and use of the B2B website, none of which relate to whether the site qualifies as a trade secret.  Accordingly, RFP 312 is modified to include only documents that refer, relate to, or evidence, knowledge outside Mattel and Mattel Canada of the B2B site.  The Motion is GRANTED as to RFP 312 as modified.

RFP 313 seeks "[d]ocuments and communications that refer or relate to Mattel Canada's 'Green Friday' promotion with Toys R Us in November 2005."  Like RFP 309 and 311, this request unreasonably extends to Mattel's internal communications about the development of the Green Friday promotion.  The request should be modified to extend to only documents that refer, relate to, or

evidence, knowledge outside Mattel and Mattel Canada of the "Green Friday" promotion. The Motion is GRANTED as to RFP 313 as modified.

Mattel shall produce all responsive documents within five days of the filing of this Order. The documents shall be designated Attorneys' Eyes Only in order to assuage Mattel's concerns about preserving the confidentiality of its proprietary information.

### III.   Docket 8563

MGA moves to compel the production of documents to MGA's first set of document requests to Mattel Mexico concerning Mattel Mexico's alleged possession of competitors' confidential information. Whereas the first Motion discussed by this Order concerned Mattel's alleged practice of stealing trade secrets from competitors' showrooms, this Motion concerns Mattel's Mexican subsidiary's commission of the same practice. Specifically, MGA alleges that "Mattel Mexico was engaged in this same illegal conduct in Mexico."

RFP 1 seeks "[a]ll documents and communications in [Mattel Mexico's] possession, custody, or control that refer or relate to any [MGA] or [MGA Mexico] product, plan, or business information from 2002 to 2006." This request represents little more than a fishing expedition by MGA to determine the extent of Mattel Mexico's knowledge about MGA and MGA Mexico. The Court has restricted similar discovery requests propounded by Mattel. Since MGA opted to engage in a sweeping (and irrelevant) factual discussion at the expense of any targeted argument in support of this request, it's difficult to determine the basis for the discovery sought by MGA. Nevertheless, MGA appears to argue that the request is relevant to four claims or defenses in this action: (1) MGA's unfair competition claim; (2) MGA's counterclaims-in-reply; (3) MGA's defense to Mattel's trade secret claims; and (4) MGA's unclean hands defense. However, Mattel Mexico's internal discussion about a competitor has nothing to do with any of these claims or defenses.[2] RFP 1 should be restricted to include only documents and communications that refer or relate to any MGA or MGA Mexico product, plan, or business information from 2002 to 2006 **not publicly available during the relevant time frame, including but not limited to products, plans, or business information obtained from Mattel's Competitive Intelligence Department**. The Motion is GRANTED as to RFP 1 as modified.

RFP 2 seeks "[a]ll competitor price lists in your possession from 2002 to the present, including but not limited to competitor price lists from Hasbro and MGAE de Mexico." Like RFP 1, this request is overbroad. MGA would have certainly objected if Mattel sought, for example, "all Mattel price lists in MGA's possession." MGA's request erroneously focuses on the nature of the information in Mattel's possession when it should focus on the manner in which Mattel obtained

---

[2] MGA argues, in an unsigned reply brief, that Mattel Mexico will exploit any narrowing of the discovery requests because that is "how Mattel thinks." This argument is an improper basis on which to support an overbroad request for production.

information about MGAE de Mexico.  Furthermore, the request is overbroad to the extent it seeks non-MGA Mexico price lists.  The request should therefore be modified to extend only to "all MGAE de Mexico price lists in your possession from 2002 to the present **not publicly available during the relevant time frame, including but not limited to price lists obtained from Mattel's Competitive Intelligence Department**."  The Motion is GRANTED as to RFP 2 as modified.

RFP 3 seeks "[a]ll documents and communications that refer or relate to any of your competitor's [sic] price lists from 2002 to the present."  This request, like RFP 2, is overbroad.  It should be narrowed to include only "all documents and communications that refer or relate to any of MGAE de Mexico's price lists from 2002 to the present **that were not not publicly available during the relevant time frame, including but not limited to price lists obtained from Mattel's Competitive Intelligence Department.**"  The Motion is GRANTED as to RFP 3 as modified.

RFP 4 seeks "[a]ll documents and communications that refer or relate to the Hasbro price list . . . in your possession in early 2004 as identified at the deposition of Gustavo Machado in this action."  Mattel Mexico's alleged possession of a Hasbro price list has nothing to do with the claims or defenses in this lawsuit, which is probably why MGA offers no targeted argument in support of this request.  The Motion is DENIED as to RFP 4.

RFP 9 seeks "[a]ll communications between and among Gustavo Machado, Ricardo Ibarra, and/or Gabriel Zalzman referring to or discussing a competitor's retail or wholesale pricing of products from January 1, 2003 to April 19, 2004."  The Court has also rejected MGA's claim that Mattel's conduct vis-a-vis competitors other than MGA Mexico is irrelevant to the claims and defenses in this action.  The request should be narrowed to encompass only communications between Machado, Ibarra, and/or Zalzman referring to or discussing MGA and/or MGA Mexico's retail or wholesale pricing of products from January 1, 2003 to April 19, 2004.  The Motion is GRANTED as to RFP 9 as modified.

RFP 29 seeks "[a]ll competitor product line lists or product line offerings in [Mattel Mexico's] possession, custody, or control from 2002 to the present."  The request is overbroad because it extends to non-MGA product line lists or product line offerings.  It should be narrowed to include only MGA and/or MGA Mexico product line lists or product line offerings in Mattel Mexico's possession, custody, or control from 2002 to the present.  The Motion is GRANTED as to RFP 29 as modified.

RFP 30 seeks "[a]ll documents and communications referring or relating to expected, anticipated, or not-yet-announced product offerings by [Mattel Mexico's] competitors in Mexico from 2002 to the present."  This request, like those discussed above, should be narrowed to MGA and/or MGA Mexico's product offerings.  The Motion is GRANTED as to RFP 30 as modified.

RFP 33 seeks "[a]ll documents and communications that refer or relate to [Mattel

Mexico's] receipt, production, copying, storage, transmission, retention, destruction, deletion or use of any document prepared by a competitor that identifies the competitor's products in the planning, design or development stage." This request, like those discussed above, should be narrowed to MGA and/or MGA Mexico's product offerings. The Motion is GRANTED as to RFP 33 as modified.

RFP 50 seeks "[a]ll documents and communications that refer or relate to [Mattel Mexico's] knowledge of MGA's low-priced fashion dolls for fall of 2005 prior to the fall of 2005 . . . including all documents or communications provided to Matte Wicklin by her 'contact in the Mattel Mexico office.'" The request refers to specific MGA documents possessed by Mattel Mexico. In other words, MGA seeks information about the manner in which Mattel Mexico obtained MGA's proprietary information. Unlike MGA's other requests, this request is narrowly drafted to seek the discovery of relevant information. Though Mattel argues that the information possessed by Mattel Mexico was not confidential, that is an issue that runs to the merits of MGA's claims and defenses, and has nothing to do with the discoverability of the information. The Motion is GRANTED as to RFP 50.

## IV. Docket 8564

MGA moves to compel Mattel Mexico to respond to MGA's requests for production. The requests for production concern Mattel Mexico's counterclaim for trade secret misappropriation. Mattel Mexico's counterclaim was first asserted in the operative Fourth Amended Answer and Counterclaims. Indeed, Mattel Mexico was not a party to this litigation until this year, when Mattel successfully sought to add it as a counter-defendant. Mattel preliminarily argues that MGA failed to comply with the Court's June 7, 2010 order requiring lead counsel to meet and confer prior to the filing of any motions to compel. Indeed, it appears that MGA's associate counsel managed the drafting and filing of this Motion, including meet and confer efforts prior to the filing of the Motion. Accordingly, MGA is ORDERED TO SHOW CAUSE in writing on or before 10:00 a.m. PST on September 21, 2010 as to why it should not be sanctioned for its failure to comply with the Court's June 7, 2010 Order.

RFP 8 seeks "[a]ll communications between and among Mariana Trueba, Gustavo Machado, and/or Pablo Vargas between November 15, 2003 and April 19, 2004." MGA argues that documents responsive to the request may prove that the three departing Mattel Mexico employees did not discuss the theft of trade secrets prior to leaving for MGA Mexico. Mattel Mexico responds that it is undisputed, from Trueba and Machado's testimony, that the three exchanged emails containing Mattel Mexico and Mattel trade secrets prior to their resignation. However, the Court is aware of no authority for the proposition that discovery should be restricted into "undisputed" factual matter. To the contrary, MGA is entitled to disprove Machado and Trueba's recollection, which may have been affected by the specter of Mattel's criminal prosecution in Mexico. Finally, Mattel Mexico argues that *all* communications between the employees are irrelevant to the claims in this lawsuit, but the request doesn't seek all communications – it seeks communications within a narrow date range prior to the employees' departure. Those communications may evidence the employees' state of mind, their

communications with MGA and Larian, and their purpose (if any) to steal trade secret information.  The Motion is GRANTED as to RFP 8.

RFP 10 seeks "[a]ll documents and communications that refer or relate to the resignation or departure of Gustavo Machado, Mariana Trueba, and Pablo Vargas from [Mattel Mexico's] employment."  MGA argues that the "relevance of this Request is obvious," but the Court has a difficult time understanding why internal Mattel Mexico communications about the employees' departure is even marginally relevant.  Motions, including motions to compel, are not ordinarily granted because the moving party considers it "obvious" that they should be granted.  In this case, the Court has unsuccessfully searched MGA's moving and replying papers for even a semblance of argument in support of RFP 10.  The Motion is DENIED as to RFP 10.

RFP 11 seeks "[a]ll documents extracted by [Mattel Mexico] or anyone working for [Mattel Mexico] after the resignation of [Machado, Trueba and Vargas] from the computers of [Machado, Trueba and Vargas], including all screen shots, all lists of websites visited, and all documents transferred or accessed by [Machado, Vargas and Trueba] in the 60 days before resigning from Mattel."  MGA argues that documents responsive to the request may show that Machado, Vargas and Trueba "had access to even more valuable information that they did not take" prior to their departure from Mattel Mexico.  MGA's claimed need doesn't comport with the request, which does not seek discovery into (1) what information the three individuals had access to prior to their departure or (2) what information the individuals accessed prior to their departure.  Instead, the request concerns "documents extracted" by Mattel Mexico's employees.  Moreover, Mattel Mexico represents that it has produced a "799-page investigation report" that includes "screen shots, lists of websites visited, and documents accessed by Machado, Trueba and Vargas during their final days at Mattel Mexico."  MGA is free to seek more targeted discovery into the type of information accessible to the three individuals throughout their tenure at Mattel Mexico, but its defense of the instant request is insufficient.  The Motion is DENIED as to RFP 11.

RFP 16 seeks "[a]ll documents and communications that refer or relate to [Mattel Mexico's] investigation into the theft of trade secrets from [Mattel Mexico's] offices by [Machado, Trueba and Vargas]."  The dispute between the parties concerns the extent of Mattel Mexico's production of non-privileged documents responsive to the request.  To the extent Mattel Mexico has not already produced all such documents, it should do so now.  The Motion is GRANTED as to RFP 16.

RFP 47 seeks "[a]ll documents and communications that refer or relate to final payments due or claimed to be due to [Machado, Trueba and Vargas] from their employment with [Mattel Mexico], including but not limited to documents relating to the processing of final payments, requests for final pay checks, conditions to be placed in final payments and discussions as to whether to issue final pay checks."  Again, the parties' dispute concerns the extent to which Mattel Mexico has produced non-privileged responsive documents.  To the extent Mattel Mexico has not completed this production, it should do so now.  The Motion is GRANTED as to RFP 47.

RFP 48 seeks "[a]ll documents and communications concerning the meetings held on April 23, 2004 between [Mattel Mexico] and [Machado, Trueba and Vargas]." The parties' argument with respect to this request mirrors their argument with respect to RFP 47. The Motion is GRANTED as to RFP 48.

RFP 19 seeks "[a]ll documents and communications that refer or relate to any failures to comply with [Mattel Mexico's] policies or procedures to maintain the secrecy of [Mattel Mexico's] trade secrets." Mattel Mexico responds that it has produced all relevant information, *except* information about whether other Mattel Mexico employees ever misappropriated trade secrets. MGA argues that even this information is relevant because it will prove that Mattel Mexico (and Mattel) failed to prosecute other instances of misappropriation and have, instead, picked on Machado, Vargas and Trueba in order to "litigate MGA to death." However, "litigat[ing] MGA to death" isn't a legal claim or defense to this case. Nor is Mattel's intent in bringing its counterclaims particularly relevant, especially since MGA filed the first Complaint between the two parties. The Motion is DENIED as to RFP 19.

RFP 20 seeks "[a]ll documents sufficient to identify any person who failed to comply with [Mattel Mexico's] policies or procedures to maintain the secrecy of [Mattel Mexico's] trade secrets." MGA offers no independent argument in support of this request, which is overbroad for the same reasons that RFP 19 is overbroad. The Motion is DENIED as to RFP 20.

RFP 21 seeks "[a]ll documents and communications that refer or relate to any warning, admonition, discipline, or any other adverse employment action that [Mattel Mexico has] taken toward any of [its] current or former employees for using or accessing a competitor's confidential or proprietary information, trade secrets, or intellectual property." MGA offers no independent argument in support of this request, which is overbroad for the same reasons that RFP 19 is overbroad. The Motion is DENIED as to RFP 21.

RFP 49 seeks "[a]ll documents and communications that refer or relate to any requirement, policy or need to stamp documents as confidential or otherwise designate documents as confidential." The dispute between the parties again concerns the extent to which Mattel Mexico has produced responsive non-privileged documents. The Motion is GRANTED as to RFP 49.

RFP 36, 39, 40, 41, and 42 concern the relationship between Mattel Mexico and a separate entity named Mattel Servicios, that may own the trade secrets at issue. Mattel Mexico represents that it has produced all non-privileged documents responsive to the requests. There doesn't appear to be any dispute between the parties that the requests seek relevant information. The Motion is therefore GRANTED as to RFPs 36, 39, 40, 41, and 42.

RFP 46 seeks "[a]ll communications between [Mattel Mexico] and [its] customers, distributors, advertisers, advertising agencies, marketing consultants, or public relations firms that refer

or relate to [MGA] or [MGA Mexico]."  MGA claims that this request relates to its unfair competition claim and unclean hands affirmative defense, since it seeks documents that show Mattel's attempts to "threaten[] retailers, advertisers and others to not do business with MGA."  Mattel Mexico objects to the RFP as overbroad, but Mattel Mexico's concern can be remedied by removing the term "relate to" from the request.

Mattel Mexico also argues that the request is similar to an earlier MGA request for production that Judge Larson rejected as overbroad. However, unlike RFP 46, that request sought documents "relating to business dealings," which presumably included internal Mattel communications about its relationships with licensees, suppliers, manufacturers, retailers, distributors, or merchandisers and MGA.  By contrast, RFP 46 seeks only the production of the communications between Mattel Mexico and its outside vendors that (as modified) refer to MGA.

Finally, Mattel Mexico argues that RFP 46 impermissibly "is designed to obtain every single communication from Mattel Mexico to every single customer, railer, and advertising agency ever made."  However, as discussed earlier, the request is restricted (as modified) to communications that refer to MGA.

The Motion is GRANTED as to RFP 46, which is modified to include only "communications between [Mattel Mexico] and [its] customers, distributors, advertisers, advertising agencies, marketing consultants, or public relations firms that refer to [MGA] or [MGA Mexico]."

V.  **Docket 8640**

Mattel applies *ex parte* for expedited discovery on MGA's counterclaims in reply.  The Court initially held Mattel's *ex parte* in abeyance pending a resolution on the pendency on the counterclaims in reply.  It has since become clear that MGA's allegations concerning conduct by Mattel's Competitive Intelligence Department may also be incorporated by the unfair competition claim in MGA's original Complaint, as well as MGA's unclean hands affirmative defense to Mattel's counterclaims.

Mattel's application attaches four exhibits that include the document requests, interrogatories, requests for admission, and 30(b)(6) deposition notice to which Mattel seeks to compel responses from MGA.  Mattel fails to submit targeted argument in support of each discovery request.  MGA's response offers eight pages of irrelevant and inflammatory factual background and a paltry three pages of argument.  Neither submission provides the Court with proper argument concerning (1) MGA's willingness to comply with any or all of the discovery requests and (2) whether the Court should compel MGA to respond to any or all of the discovery requests.  Though the *ex parte* Application claims that "lead counsel for the parties met and conferred in advance of the filing of [the] *ex parte*," it's clear that lead counsel did not discuss each and every discovery request.

Accordingly, the parties are ORDERED to meet and confer on or before September 22, 2010 and discuss each of the discovery requests identified in Exhibits A through D to Mattel's application. Mattel may re-submit its application, in the form of a Motion, as to any discovery requests upon which lead counsel could not reach agreement. Any such Motion shall be filed on or before September 23, 2010 and shall include argument on a request by request basis. MGA shall file its opposition to Mattel's Motion by September 25, 2010. All production obligations thereafter imposed by the Court shall be completed by September 30, 2010.

The Clerk shall serve this minute order on all parties to the action.