**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)              Date: September 17, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                  NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER REGARDING PENDING DISCOVERY MOTIONS

       Before the Court are a number of pending discovery disputes identified in the Stipulation filed by Mattel, the MGA Parties, and IGWT 826. In a series of hearings conducted over two weeks, the Court received argument as to all of the pending discovery disputes. A number of those disputes were eventually resolved by the parties, and those resolutions have been memorialized by the parties' Joint Stipulation. The Court orally ruled on a number of the discovery disputes at the hearings on these matters. Other disputes were not ruled on by the Court. In order to clarify the record, the instant Order memorializes the Court's oral rulings and, in addition, disposes of the vast majority of the remaining discovery disputes.

    **I.**    **Mattel's Objections to Discovery Matter Order No. 87 [Docket 7360]**

    Mattel's Objections to Discovery Matter Order No. 87 are OVERRULED.

    **II.**    **Mattel's Motion to Compel Documents Withheld by MGA Parties on Grounds of Common Interest Privilege with Omni 808 Investors, LLC [Docket 8272]**

       At the hearing on this motion, counsel for the MGA Parties represented that the MGA Parties have produced all communications between principals of Omni 808 Investors, LLC and the MGA Parties. The Court finds that any remaining communications being withheld are either properly withheld as privileged or otherwise irrelevant to the lawsuit. The Motion is therefore STRICKEN AS

MOOT in light of counsel's representation.

### III. Mattel's Objections to Discovery Matter Order No. 98 [Docket 8277]

Mattel requests that the Court review those documents withheld by MGA on grounds of attorney-client privilege or the work product doctrine as to which the Discovery Master upheld MGA's invocation of the privilege. Mattel's bases its objections on what it argues were errors in legal standard applied by the Discovery Master. None of Mattel's arguments are convincing.

First, Mattel argues that the Discovery Master erred in concluding that e-mails communicated to an attorney that have a "legal aspect" are privileged. But that wasn't the standard applied by the Discovery Master. Mattel objects to a footnote in which the Discovery Master acknowledged that a communication was not merely privileged because it was delivered to an attorney, but that "the substance of the communication," including "its content and the testimony of the participants" was critical to determining whether the privilege applied. *See* Discovery Master Order No. 98 at 13 n. 3. This standard is not inconsistent with the rule that a communication is only privileged if it was made "primarily for the purpose of securing legal advice." *Diagnostic Sys. Corp. v. Symantec Corp.*, CV 06-1211, dated Aug. 12, 2008, at 12-13 (Carter, J.). Indeed, the Discovery Master recognized that communications that have a "legal aspect" were privileged "particularly given Larian's testimony that his intention in copying the attorneys was to 'let them know I wanted their input on a matter'." Discovery Matter Order No. 98 at 13 n. 3. The Discovery Master's adherence to a fact-specific analysis of whether the privilege applied was both appropriate and legally sound.

Nor is Mattel's challenge to the Discovery Master's reliance on Larian's declaration convincing. Mattel argues that Larian's declaration is inconsistent with the "overwhelming evidence that Mr. Larian copies lawyers on business communications when he wants to shield them from protection." *See* Reply at 3. Maybe so, but the Discovery Master had ample opportunity to consider and (potentially) reject this argument in the context of one or more documents as to which the privilege designation was upheld. *See* Discovery Matter Order No. 98 at 11. And though the Court must conduct a *de novo* review of the legal standard applied by the Discovery Master, it need not re-weigh all of the relevant facts that informed his analysis.

Mattel's next argument is that the Discovery Master erroneously held that a "non-privileged email 'may become privileged' if it is forwarded to a lawyer, whether or not the non-privileged communication has been separately produced." Dkt. 8277 at 17. That is an incorrect recitation of the standard employed by the Discovery Master. Specifically, the Discovery Master observed that "even though one email is not privileged, a subsequent and privileged email which forwards that prior non-privileged email, will allow the privilege to attach to the entire email chain, including the non-privileged email message." Discovery Matter Order No. 98 at 11 (quoting *Rhoads Indus., Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238, 240 (E.D. Pa. 2008)). The Discovery Master notably *did not* discuss, one way or another, any duty to redact the privileged portions of an

email chain and produce the remainder of the chain.

Next, Mattel challenges the Discovery Master's apparent "presumption" that attachments to an attorney's email are privileged. Again, Mattel misstates the standard employed by the Discovery Master, who did not deem such attachments undiscoverable, but merely held that the selection of that information in the client's email to the attorney (or vice versa) is privileged. MGA is still under an obligation to produce non privileged attachments to emails, since those attachments are available *in native form* on the hard drive of the emails' senders.

Finally, Mattel argues that the Discovery Master erroneously upheld MGA's invocation of the privilege with respect to documents created by MGA paralegals. Mattel argues that the Discovery Master erroneously held that communications from MGA's paralegal were privileged because, as the Discovery Master stated, "she was working in some way" with MGA's outside attorneys. According to Mattel, the Discovery Master's "in some way" language constituted legal error. It should be noted (as Mattel concedes) that "the Discovery Master correctly recognized [that] paralegals cannot independently dispense legal advice." There is no basis to conclude that the Discovery Master strayed from this standard when reviewing the emails at issue.

Mattel's general challenges to the sufficiency of MGA's declarations are also unconvincing, since the declarations weren't the only mechanism for MGA to support its assertion of the privilege, and the information contained in the declarations may attain greater meaning in the context of the actual document being reviewed *in camera*. Mattel's concerns about the standard applied by the Discovery Master with respect to communications with third parties are likewise unavailing, since Mattel misconstrues the legal standard applied by the Discovery Master.

The Objections are OVERRULED.

**IV.   Mattel's Motion to Compel Documents Regarding the Marlows [Docket 8276]**

In their Opposition to the Motion, the MGA Parties represented they had produced all documents responsive to the requests for production encompassed by the instant Motion. At the hearing on this matter, counsel for the MGA Parties stated that she lacked knowledge as to why the production of documents had not been completed earlier, but suggested that prior counsel for the MGA Parties might possess more information about that subject. The Court finds that no further inquiry necessary in light of the MGA Parties' representation that they have produced responsive documents. The Motion is therefore GRANTED, since it seeks relevant documents, but compliance with the Order does not require additional document production, unless additional responsive documents exist.

**V.   Mattel's Renewed Motion to Compel MGA to Produce a 30(b)(6) Witness Concerning its Trade Dress Claims [Docket 8382]**

The adequacy of MGA's 30(b)(6) designees on trade dress claims has long been a point of contention between the parties. Though MGA's Complaint broadly alleges trade dress infringement by Mattel, MGA has considerably narrowed the scope of its trade dress claims in subsequent discovery responses as well as informal communication between counsel. At the hearing on this Motion, the Court instructed MGA to either formally narrow its trade dress claims or produce a 30(b)(6) witness as to all claims encompassed by the Complaint and subsequent discovery responses. MGA's counsel represented that it would formally amend its trade dress claims by September 10, 2010 to include only claims related to Wee 3 Friends and Trapezoidal Packaging. MGA has produced extensive testimony on those two claims, even though Mattel argues otherwise. Accordingly, the Motion is DENIED WITHOUT PREJUDICE to Mattel seeking additional discovery in its omnibus motion to compel upon showing that MGA did not timely narrow its trade dress claims.

### VI.   Mattel's Motion to Compel Responses to Third Phase II Interrogatories [Docket 8419]

At the hearing on this Motion, the Court heard counsel's argument on an interrogatory-by-interrogatory basis. By stipulation, counsel resolved Interrogatory Nos. 10 and 11. Interrogatory No. 1 requires MGA to "identify any claimed or actual security interests in or relating to Bratz intellectual property" and Mattel's counsel agreed with the Court's suggestion that the interrogatory be bounded in time to security interests that post-date the phase 1 trial. The Motion is accordingly GRANTED IN PART AND DENIED IN PART as to interrogatory number 1, such that MGA is only ordered to respond to the interrogatory by identifying any claimed or actual security interests in or relating to Bratz intellectual property that post-date the phase 1 trial.

Interrogatory Nos. 2 through 7 ask MGA to calculate its yearly and monthly investments in Bratz, Moxie, and "Other Fashion Doll[]" lines. Upon representation by MGA's counsel that MGA does not maintain such calculations in the ordinary course of business, Mattel's counsel appeared to agree that the interrogatories should be held in abeyance pending the expert discovery cut off. However, at the continued hearing on this Motion, counsel for Mattel alerted the Court to testimony rendered on September 2, 2010 by MGA's 30(b)(6) designee, Mr. Jolicoeur. The 30(b)(6) designee testified that "it would be a difficult operation to – and may be an impossible operation to track all of the money that was spent on a particular brand. But you would be able to track certainly part of the expenditures spent on a particular brand." Ex. A to Mattel's Submission of Excerpts of Evidence at 13. The witness testified that he "tried to track [MGA's] expenditures on a by-brand basis" during his tenure as Chief Financial Officer for MGA. *Id.* at 15. Though he succeeded (to some extent) in tracking direct expenditures on a by brand basis – *e.g.*, television ads for a particular product – he was less successful when attempting to allocate indirect expenditures – *e.g.*, company-wide insurance – on a by brand basis. Mattel alerts the Court to testimony in which the witness stated that he performed a rough brand by brand analysis in which he calculated direct expenses, allocated "somewhat allocable" expenses and finally, failed to allocate company wide expenses like insurance. Mattel's counsel asked for a more definite listing of the categories of expenses that the witness allocated on a brand by brand

basis. *Id.* at 22-24 (extensive colloquy about whether witness' answer was sufficiently responsive).

The witness testified that he prepared such a report for the "first six months of the year," which he published to MGA's internal management team. *Id.* at 24. Mattel requested that the report was relevant to its claim that MGA violated the invalid constructive trust imposed by Judge Larson, because the report evidenced MGA's "activities and efforts to preserve Bratz." *Id.* at 25. When asked to testify about the contents of the study – which, notably, covered only a sliver of the time period at issue in these interrogatories – the witness declined to provide Mattel with MGA's sensitive information about its product margins. *Id.* at 27-28.

The witness was then asked whether MGA could determine the amount it spent on advertising (a direct expense) the Bratz brand in 2004. *Id.* at 29. He admitted that such a calculation would be "not [] impossible." *Id.* Mattel has not lodged the complete transcript of the witness' testimony with regard to whether "MGA . . . track[s] advertising on Bratz in the ordinary course of its business." *See id.* Finally, counsel for Mattel and the witness examined the six month study performed by the witness and discussed why expenses for Bratz were not included in that study, which Mattel later submitted to the Court.

The deposition transcript and study are interesting reads, but it's difficult to see how they support Mattel's Motion as to interrogatory requests 2 through 7. Perhaps Mattel considers the testimony sufficient to disprove the claim by MGA's counsel that the dollar amount of investments in Bratz, Moxie, and other fashion dolls cannot be calculated. In fact, the witness acknowledged his inability to allocate company wide or "indirect" expenses, like insurance or product research. The witness further cautioned Mattel's counsel that his study was imprecise, because it required arbitrary determinations about how certain types of indirect expenses – *e.g.*, product development – were distributed on a brand by brand basis. Even though the witness *was* able to calculate direct expenses on a brand by brand basis, Mattel's interrogatories are not limited to such expenditures. And while the witness' study may be useful for MGA's internal analysis, his imprecise conclusions do not satisfy the rigorous requirements of an interrogatory response, which may be admitted at trial.

The Motion is HELD IN ABEYANCE as to interrogatory responses 2 through 7.

Interrogatory Nos. 12 and 13 request that MGA identify the total number of employees "who performed any work related to" Bratz since 2004 and Moxie since 2007. The Motion is GRANTED as to these two interrogatories, with the limitation that MGA need not identify the number of employees who have performed work on the two lines of dolls after the Ninth Circuit's July 22, 2010 Order.

Interrogatory No. 14 requests that MGA state its "net worth as of June 30 and December 31 in 2007, and for each year since then." Like interrogatory nos. 2-7, this interrogatory can be best responded to at the close of expert discovery. The Motion is therefore HELD IN ABEYANCE as to

Interrogatory No. 14.

Interrogatory Nos. 16, 17, and 18 request that MGA identify the "Laredo guy," "identify and describe in detail" all of MGA's communications with the "Laredo guy," and identify MGA's shipments to the "Laredo guy." After hearing the parties' argument as to these interrogatories, the Court took them under submission. MGA's most convincing objection to the interrogatories is that they seek irrelevant information, since MGA's alleged smuggling activities are not encompassed by the claims in this lawsuit. However, discovery into MGA's shipments into Mexico may obtain evidence relevant to Mattel's unfair competition claim, which depends in part upon MGA's efforts to compete with Mattel's Mexican subsidiary. Notwithstanding the limited relevance of such discovery, the details of MGA's shipments into Mexico, as well as "all" MGA communications with the Laredo guy, are unduly burdensome and therefore must be restricted. The Motion is GRANTED only as to Interrogatory No. 16 and otherwise DENIED.

### VII. Mattel's Motion to Compel Responses to Second Phase 1 Interrogatories [Docket 8417]

The Court encouraged Mattel to narrow these interrogatories, which concern payments to shareholders, creditor and lender interests, payments to Larian family members or affiliates, and payments in excess of $500,000. MGA's counsel represented that it has fully complied with the first interrogatory, which requests that MGA "identify all payments [it] made . . . to Shareholders since January 1, 2004." On the basis of this representation, and in light of the fact that the Court considers discovery into this subject unduly burdensome especially in light of the fact that Mattel's creditor related claims have been dismissed, the Motion is DENIED as to Interrogatory No. 1. Mattel proposed to limit the second interrogatory – concerning MGA's payments to creditors or lenders since January 1, 2004 – to amounts in excess of $50,000. Mattel's proposed limitation does not sufficiently narrow this overbroad and largely irrelevant and duplicative interrogatory. The Motion is DENIED as to Interrogatory No. 2. Interrogatory No. 3 requests that MGA "identify all payments [it] made . . . to any Larian family member or affiliate since January 1, 2004." Mattel proposed to limit this interrogatory to payments in excess of $100,000 since January 1, 2009 – *i.e.*, after the phase 1 trial. Since distributions to Larian's family members and affiliates are relevant to Mattel's damages claims, the Motion is GRANTED as to Interrogatory No. 3 as narrowed by Mattel. Interrogatory No. 6 requests that MGA "identify all payments [it] made of more than $500,000.00 . . . to anyone since January 1, 2006." The Interrogatory is overbroad, since there is no reason why payments to "anyone" are relevant to Mattel's claims. The Motion is therefore DENIED as to Interrogatory No. 5.

Finally, Interrogatory No. 9 requests that MGA provide information about its alleged spoliation of relevant evidence. The Court instructed Mattel to narrow the interrogatory, which required MGA to prove a negative. Specifically, the Court twice directed Mattel to set forth a procedure that MGA could follow in contacting individuals within its corporate hierarchy in order to generate information about potential spoliation of evidence. Instead, Mattel proposed the following

revised interrogatory:

> Describe, with specificity, each and every document or other item or matter relating to Bratz or Mattel that was intentionally destroyed, lost, altered, modified, tampered with, redacted, deleted or otherwise spoliated by or on your behalf (except documents which have been redacted for production to Mattel in this action and clearly marked as such) since April 27, 2004, and identify all persons who have or may have knowledge of the foregoing and all documents that refer or relate to the foregoing.

Mattel does not identify the manner in which MGA can obtain information sufficient to prove a negative. Thus, the Court orders that MGA distribute Mattel's interrogatory to its present employees and instruct those employees to contact MGA's outside counsel with any information they possess in response to the interrogatory. Within three days of the filing of this Order, MGA shall file with the Court a statement of compliance, which shall be deemed to satisfy MGA's obligations with respect to this interrogatory. The Motion is GRANTED as to Interrogatory No. 9 as modified herein.

### VIII. Mattel's Objections to the Discovery Master's July 28, 2010 Report and Recommendation Regarding In Camera Review [Docket 8438]

Mattel's Objections are OVERRULED. Even assuming the Discovery Master's Order was inequitable, Mattel was not prejudiced in its ability to challenge MGA's privilege claim as to the emails at issue.

### IX. Mattel's Motion to Compel Documents re Former Mattel Employees [Docket 7825]

The Court previously resolved the vast majority of this discovery dispute in a written order. *See* Dkt. 8133. All that remained after the Court's prior order was Mattel's challenge to MGA's privilege designation as to one of the documents responsive to the requests for production at issue. Having reviewed that document *in camera*, the Court finds that the document was properly withheld as privileged. The Motion is DENIED as to the document that was withheld as privileged by MGA.

### X. Mattel's Motion to Compel MGA to Produce a 30(b)(6) Designee [Docket 7786]

The Court previously resolved the vast majority of this discovery dispute in a written order. *See* Dkt. 8104. All that remained after the Court's prior order were three topics, two of which were held in abeyance and one of which was not ruled on. The Motion is GRANTED as to topic 6 in light of the Ninth Circuit's July 22, 2010 Order. The Motion is DENIED as to topic 22 in light of the Court's Order on the Motions to Dismiss. The Motion is GRANTED as to topic 25, which concerns the "Laredo guy," but Mattel's questioning on this topic shall be limited to one hour in light of the topic's marginal relevance.

### XI. Mattel's Motion to Compel Full Rule 26 Disclosures, Interrogatory Responses, and Document Production from Defendant Machado [Docket 8249]

In a prior written order, the Court overruled Machado's invocation of the Fifth Amendment privilege against self-incrimination, but held in abeyance Mattel's Motion to overrule Machado's other objections to Mattel's discovery requests, which included objections concerning the overbreadth of the requests, as well as the burden imposed by the requests. At the hearing on this matter, Machado's counsel represented that Machado has produced all documents in his possession that are responsive to Mattel's discovery requests. The Court GRANTS Mattel's Motion but, on the basis of Machado's representation, deems Machado's discovery obligations to have been satisfied.

### XII. July 9, 2010 Report and Recommendation from the Special Master for Electronic Discovery [Docket 8239-1]

The Special Master for Electronic Discovery's July 9, 2010 Report & Recommendation identified two topics which required future direction from the Court. First, the Special Master's Order noted that ILS would "retain custody of the Machado Hard Drive Images pending further instruction from the Court or Special Master." In light of the potential for future discovery disputes, ILS shall retain possession of the Machado Hard Drive Images pending the resolution of this lawsuit. Second, the Special Master's Order noted that ILS would "retain custody of the Wing Hard Drive Images pending further instruction from the Court or Special Master." In light of the potential for future discovery disputes, ILS shall retain possession of the Wing Hard Drive Images pending the resolution of this lawsuit. Third, the Special Master's Order noted that MGA would certify that it searched active files for communications with former Mattel employees relating to the origins of Bratz. MGA is ORDERED to file that certification with the Court within five days of the filing of this Order. To the extent that any other issues remain unresolved with respect to the Special Master's July 9, 2010 Order, the parties (or any party) shall so inform the Court within five days of the filing of this Order.

### XIII. MGA's Objections to Item 5 of the Special Master for Electronic Discovery's January 21, 2010 Report & Recommendation

Item 5 of the Special Master's R&R ordered MGA to produce for ILS' review the images of the Larian hard drives, so that the active files on those hard drives could be reviewed for responsive documents. The Court stayed the Special Master's order and instead directed ILS to review Larian's hard drives for evidence of spoliation. The Court further ordered MGA to produce for the Court's *in camera* review only those active files that, according to MGA, contained documents that Mattel believed were improperly deleted from the Larian hard drives. MGA initially resisted production of the documents on the grounds that they were too voluminous – *i.e.* dozens of boxes – to submit to the Court. The Court responded to MGA's concern by ordering MGA to produce the documents in electronic form, which MGA did in the form of a thumb drive.

The Court has reviewed the more than four thousand files in MGA's production. The Court concludes that MGA should produce to Mattel a redacted spreadsheet that identifies all non-privileged files that Mattel's electronic consultant concluded were deleted, but which MGA's electronic consultant was able to locate elsewhere on the Larian hard drives, including in the active files on the Larian hard drives. Accordingly, the Court ORDERS MGA to produce to Mattel the redacted spreadsheet located on the thumb drive at issue within three (3) days of the filing of this Order.

### XIV. MGA's Objections to Discovery Matter Order No. 46 [Docket 6476]

Upon representation by MGA's counsel that MGA would identify, by Bates Number, documents responsive to the interrogatory requests at issue, the Court SUSTAINS MGA's Objections without prejudice to Mattel's ability to move to compel responses to the interrogatories in the event that MGA failed to timely identify the Bates Numbers of responsive documents. Counsel represents that this process has been completed.

### XV. MGA's Objections to Discovery Matter Order No. 98 [Docket 8246]

MGA objects to the Discovery Matter's Order only as to one document. At the hearing on this Motion, MGA's counsel represented that MGA may withdraw its objection. In all events, the Objections are OVERRULED as the Discovery Master did not err in his application of the law to the particular email.

MGA objects to the Discovery Master's order to the extent it requires that MGA produce Entry No. 708 on MGA's January 23, 2008 privilege log. That document is a hearing transcript in this case marked with Isaac Larian's hand written comments. It was initially withheld on attorney-client privilege grounds but MGA later amended its privilege log to assert only that the document was protected by the work product doctrine. The Discovery Master overruled MGA's attempt to invoke the work product doctrine and ordered MGA to produce the document. MGA objects.

MGA's objections rely upon an argument not raised with the Discovery Master: that the document at Entry No. 708 is protected by the attorney-client privilege. The basis for MGA's newfound invocation of the attorney-client privilege is a *separate* e-mail, to which the document at Entry No. 708 was attached in electronic form. The e-mail was supposedly addressed to an attorney, which MGA relies upon as evidence that Larian's comments on the hearing transcript were made for the purpose of obtaining legal advice. This argument is both procedurally and substantively flawed.

First, as Mattel notes, MGA's failure to either (1) raise the attorney-client privilege argument with the Discovery Master or (2) produce the e-mail at issue to the Discovery Master, renders moot its objection to Order No. 98. In short, the Discovery Master did not err by failing to *sua sponte* consider all legal grounds and all hypothetical evidence that could have supported the invocation of the attorney-client privilege as to the document at Entry No. 708. *See Marshall v. Chater*, 75 F.3d 1421,

1427 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.") (citing *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)).

Second, even if MGA had properly invoked the attorney-client privilege as to the document contained at Entry No. 708, it would have failed to substantiate the application of the attorney-client privilege, as is its burden. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) ("A party asserting the attorney-client privilege has the burden of establishing the existence of the attorney-client relationship *and* the privileged nature of the communication.") (emphasis in original) (internal editing marks omitted) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)). MGA concedes that it failed to provide the Discovery Master with the only document – *i.e.*, the e-mail that attached the hearing transcript with Larian's handwritten notes – that supports the assertion of the attorney-client privilege. Moreover, MGA fails to even quote the content of the e-mail in support of the claim that the attachment to the e-mail was also protected by the attorney-client privilege. The mere fact that Larian sent a document to an attorney does not mean that the document was created for the purpose of obtaining legal advice.

For the foregoing reasons, the MGA Parties' Objections are OVERRULED.

### XVI. MGA's Objections to Item 3 of the Special Master for Electronic Discovery's July 5, 2010 Report & Recommendation [Docket 8255]

Item 3 of the Special Master for Electronic Discovery's July 5, 2010 Report & Recommendation ordered MGA to certify that it had searched the "active file spaces" of a designated list of former Mattel employees. It appears that Item 3 is limited to communications concerning the origins of "Bratz." To the extent it is not so constrained, the Objections are SUSTAINED since the discovery sought is duplicative and requires MGA to perform an unduly burdensome search of all media – the exact type of discovery from which the Court protected Mattel in the context of Discovery Matter Orders No. 89/91. The Objections are otherwise OVERRULED.

### XVII. MGA's Motion to Compel Mattel to Produce Fully Prepared 30(b)(6) Witness Concerning Topic 11 of MGA's April 27, 2010 Notice of Deposition [Docket 8386]

MGA requests that the Court order Mattel to produce a 30(b)(6) witness prepared to provide "[a] complete explanation of the precise circumstances in which Mattel acquired all of the information concerning MGA and/or MGA's products found" in a list of documents attached by MGA. Though Mattel designated a 30(b)(6) witness on the topic, MGA contends that the witness was unprepared, since he did not review the relevant documents and did not speak to individuals reasonably likely to possess knowledge about those documents. Of course, since MGA filed the instant Motion, it has filed counterclaims in reply alleging that Mattel's agents snuck into competitors' showrooms and absconded with proprietary information. The Court is satisfied that Mattel's 30(b)(6) witness was

inadequately prepared.  The Motion is GRANTED and the deposition shall take no longer than one hour.

### XVIII. MGA's Motion to Compel Mattel to Produce Robert A. Eckert on Topic 9 of MGA's Notice of Deposition and Produce Documents Related to Mattel Licensees [Docket 8377]

The Court concludes that Mr. Eckert was insufficiently prepared on Mattel's practice (if any) of shunning MGA licensees.  By failing to discuss the circumstances of the email chain at issue with either Mandana Singh or Neil Friedman, Eckert deprived MGA of relevant discovery into at least one incident potentially involving Mattel's practice of avoiding MGA's licensees.  MGA's examination of Eckert shall be limited to four (4) hours.  The Motion is DENIED as to the requests for production at issue, which are overbroad and unduly burdensome.

### XIX. MGA's Motion to Compel Inspection of Bryant's Employment Agreement [Docket 8391]

As the Court stated at the hearing on this matter, the Motion seeks discovery into perhaps the most important document in this case, and is therefore GRANTED.

### XX. IGWT 826's Motion for Protective Order [Docket 8447]

As discussed at the hearing on this Motion, the Court concludes that topics 1, 2, 3, 4, 5, 6, 7, 13, 14, 15, 16, and 17 are either irrelevant in light of the Order on the Motions to Dismiss or duplicative and unduly burdensome.  Topic 8, however, seeks relevant testimony.  The Motion is therefore DENIED as to topic 8 and otherwise GRANTED.

### XXI. MGA's Cross-Motion for Protective Order as to Mattel's Third Phase II Interrogatories [Docket 8560]

The Cross-Motion is STRICKEN AS MOOT in light of the Court's ruling on Mattel's underlying Motion.

The Clerk shall serve this minute order on all parties to the action.