QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>                    Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE AND/OR DISMISS MGA ENTERTAINMENT, INC.'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"<br><br>Hearing Date: September 27, 2010<br>Time:          5:00 pm<br>Place:         Courtroom 9D<br><br>Discovery Cut-off:    October 4, 2010<br>Pre-trial Conf:       January 4, 2011<br>Trial Date:           January 11, 2011 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT .................................................................................................... 2

I.   MGA'S COUNTERCLAIMS-IN-REPLY ARE PERMISSIVE AND REQUIRE LEAVE OF COURT, WHICH SHOULD BE DENIED ............... 2

    A.   "Thematic" Similarity Fails To Satisfy The "Same Transaction Or Occurrence" Test For Compulsory Counterclaims. ........................ 2

    B.   Even If The Counterclaims Are Compulsory, MGA Should Have Brought Them Years Ago And May Not Add Them As Of Right ........ 5

    C.   MGA Should Be Denied Leave To Amend. ........................................ 6

        1.   MGA Fails To Explain Its Six-Year Delay. ................................ 7

        2.   MGA Fails To Address The Unfair Prejudice Mattel Will Suffer Or The Compelling Evidence Of Its Bad Faith. ............... 8

II.   PARAGRAPHS 41, 46 AND 47 SHOULD BE STRICKEN ....................... 10

III.   MGA FAILS TO STATE A CLAIM FOR WRONGFUL INJUNCTION .................................................................................. 10

    A.   There Is No Affirmative Claim For Damages Based On A Wrongful Permanent Injunction. ................................................. 10

    B.   MGA Fails To Allege That Mattel Has MGA's Money Or Property. ........................................................................... 12

    C.   MGA Cannot Recover Damages In The Guise Of Restitution............ 13

    D.   Restitution Is Discretionary Relief Granted By The Court, Not A Legal Claim Submitted To The Jury...................................... 14

    E.   MGA Has Not Suffered Any Injury From The Operation Of The Injunction ................................................................... 15

IV.   MGA'S TRADE SECRET CLAIM IS TIME BARRED ............................. 17

    A.   Machado's And Brawer's Actual Knowledge Is MGA's Knowledge. ....................................................................... 17

    B.   MGA's Fraudulent Concealment Allegation Is Irrelevant Because MGA Had Actual Knowledge Of Its Trade Secret Claim In 2004. ........................................................................... 18

C.   MGA's Permissive Trade Secret Claim Does Not Relate Back
To Mattel's January 12, 2007 Amended Answer And
Counterclaims. .................................................................... 19

D.   MGA's Permissive Trade Secret Claim Does Not Relate Back
To Its April 13, 2005 Complaint Or Its August 13, 2007 Answer. ...... 19

V.   MGA'S RICO CLAIM IS BARRED BY THE STATUTE OF
LIMITATIONS ................................................................................ 21

CONCLUSION .................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

<u>All Steel Engines v. Taylor Engines,</u>
   88 F. Supp. 745 (N.D. Cal. 1950)...........................................................................17

<u>Arkadelphia Co. v. St. Louis S.W. Ry. Co.,</u>
   249 U.S. at 145 .......................................................................................................12

<u>Atlanta Journal Constitution v. City of Atlanta Dep't of Aviation,</u>
   442 F.3d 1283 (11th Cir. 2006)......................................................................12, 14

<u>Bayer CropScience, LP v. Booth,</u>
   2005 WL 2095765 (M.D. Ga. Aug. 29, 2005) .........................................................5

<u>Buddy Systems, Inc. v. Exer-Genie, Inc.,</u>
   545 F.2d 1164 (9th Cir. 1976) ...............................................................................12

<u>Cadence Design Sys., Inc., v. AvantA Corp.,</u>
   29 Cal. 4th 215 (2002)............................................................................................17

<u>Cappaert Enters. v. Citizens & Southern Int'l Bank of New Orleans,</u>
   564 F. Supp. 214 (E.D. La. 1983) ..........................................................................15

<u>Classicberry Ltd. v. Musicmaker.Com, Inc.,</u>
   2001 WL 1658241 (S.D.N.Y. Dec. 26, 2001)..........................................................8

<u>Collezione Europa U.S.A., Inc. v. Amini Innovation Corp.,</u>
   2009 WL 2634648 (D. N.J. Aug. 26, 2009).........................................................3, 5

<u>Conceptus, Inc. v. Hologic, Inc.,</u>
   2010 WL 1460162 (N.D. Cal. April 12, 2010) .................................................5, 15

<u>Davaloo v. State Farm Ins. Co.,</u>
   135 Cal. App. 4th 409 (2005)..................................................................................20

<u>Davis & Cox v. Summa Corp.,</u>
   751 F.2d 1507 (9th Cir. 1985) .............................................................................2, 6

<u>Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,</u>
   890 F.2d 165 (9th Cir. 1989) ...................................................................................4

Dornan v. Sheet Metal Workers' Int'l Ass'n,
   810 F. Supp. 856 (E.D. Mich. 1992) ........................................................ 11, 12, 14

Edgar v. MITE Corp.,
   457 U.S. 624 (1982) ........................................................................................ 13, 15

Empress LLC v. City & County of S.F.,
   419 F.3d 1052 (9th Cir. 2005) ............................................................................. 10

Erickson v. Horing,
   2000 WL 35500986 (D. Minn. Oct. 23, 2000) ...................................................... 6

Fox v. Ethicon Endo-Surgery, Inc.,
   35 Cal. 4th 797 (2005) ......................................................................................... 18

Frank Briscoe Co., Inc. v. Clark County,
   857 F.2d 606 (9th Cir. 1988) ................................................................................. 6

Fujitsu Ltd. v. Nanya Technology Corp.,
   2007 WL 1660694 (N.D. Cal. June 6, 2007) ......................................................... 6

Fulfillment Servs., Inc. v. United Parcel Serv., Inc.,
   528 F.3d 614 (9th Cir. 2008) ............................................................................... 13

Funk v. Tifft,
   515 F.2d 23 (9th Cir. 1975) ................................................................................. 17

Greenwood County v. Duke Power Co.,
   107 F.2d 484 (4th Cir. 1939) ............................................................................... 13

Grimmett v. Brown,
   75 F.3d 506 (9th Cir. 1996) ................................................................................. 20

Hickman v. Taylor,
   329 U.S. 495 (1947) ............................................................................................... 9

Holdridge v. Heyer-Schulte Corp. of Santa Barbara,
   440 F. Supp. 1088 (N.D.N.Y. 1977) .................................................................... 20

Jaynes v. U.S.,
   69 Fed. Cl. 450 (Fed. Cl. 2006) ......................................................................... 3, 5

Jennings v. Family Mgmt.,
   201 F.R.D. 272 (D. D.C. 2001) ............................................................................. 9

-iv-

_Kar Prods., Inc. v. Avnet, Inc.,_
 78 F.R.D. 204 (N.D. Ga. 1978) ................................................................. 3

_Katherine G. ex rel. Cynthia G. v. Kentfield Sch. Dist.,_
 261 F. Supp. 2d 1159 (N.D. Cal. 2003) ................................................... 21

_Kendall-Jackson Winery, Ltd. v. Superior Court,_
 76 Cal. App. 4th 970 (1999) ................................................................ 4, 8

_In re Lazar,_
 237 F.3d 967 (9th Cir. 2001) ............................................................... 2, 5

_Lever Bros. Co. v. Int'l Chemical Workers Union, Local 217,_
 554 F.2d 115 (4th Cir. 1976) ................................................................ 16

_Madrid v. Perot Sys. Corp.,_
 130 Cal. App. 4th 440 (2005) ................................................................. 9

_Maryland Dep't of Human Resources v. U.S. Dep't of Agriculture,_
 976 F.2d 1462 (4th Cir. 1992) ......................................................... 12, 14

_In re First Alliance Mortg. Co.,_
 471 F.3d 977 (9th Cir. 2006) ................................................................ 13

_In re Merrill Lynch Ltd. P'ships Litig.,_
 154 F.3d 56 (2d Cir. 1998) ................................................................... 21

_In re Milk Prods. Antitrust Litig.,_
 195 F.3d 430 (8th Cir. 1999) .................................................................. 9

_Middlewest Motor Freight Bureau v. U.S.,_
 433 F.2d 212 (8th Cir. 1970) ................................................................ 12

_Mitchell v. Riegal Textile,_
 259 F.2d 954 (D.C. Cir. 1954) ............................................................... 12

_Monolith Portland Midwest Co. v. R.F.C.,_
 128 F. Supp. 824 (S.D. Cal. 1955) .................................................... 13, 15

_Newland v. Dalton,_
 81 F.3d 904 (9th Cir. 1995) .................................................................... 9

_Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.,_
 16 F.3d 1032 (9th Cir. 1994) .......................................................... 12, 13

O'Riordan v. Federal Kemper Life Assurance,
    36 Cal. 4th 281 (2005) ................................................................. 17

Pardi v. Kaiser Foundation Hospitals,
    389 F.3d 840 (9th Cir. 2004) ........................................................ 10

Pincay v. Andrews,
    238 F.3d 1106 (9th Cir. 2001) ...................................................... 21

Plymouth Yongle Tape (Shanghai) Co., Ltd. v. Plymouth Rubber Co., LLC,
    683 F. Supp. 2d 102 (D. Mass. 2009) ............................................. 3

Probert v. The Clorox Co.,
    258 F.R.D. 491 (D. Utah 2009) ....................................................... 7

Public Serv. Comm'n of Missouri v. Brashear Freight Lines, Inc.,
    312 U.S. 621 (1941) ................................................................ 12, 14

Russell v. Farley,
    105 U.S. 433 (1882)] ...................................................................... 11

San Diego Hospice v. County of San Diego,
    31 Cal. App. 4th 1048 (1995) ....................................................... 17

Sidney v. Superior Court,
    198 Cal. App. 3d 710 (1988) ......................................................... 19

Siegel v. Warner Bros. Entm't Inc.,
    581 F. Supp. 2d 1067 (C.D. Cal. 2008) ......................................... 13

Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson,
    96 Cal. App. 4th 884 (2002) ......................................................... 18

Solomon v. N. Am. Life & Cas. Ins. Co.,
    151 F.3d 1132 (9th Cir. 1998) ......................................................... 9

Stone v. Holzberger,
    807 F. Supp. 1325 (S.D. Ohio 1992) ............................................... 3

Tenth Ward Road Dist. No 11 of Avoyelles Parish v. Texas & P. Ry. Co.,
    121 F.2d 245 (4th Cir. 1926) ......................................................... 13

U.S. v. Sequel Contractors, Inc.,
    402 F. Supp. 2d 1142 (C.D. Cal. 2005) ......................................... 13

MATTEL'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY
COUNTERCLAIMS-IN-REPLY"

United Motors Service v. Tropic-Aire,
    57 F.2d 479 (8th Cir. 1932) ....................................................................... 13, 14

Veliz v. Cintas Corp.,
    2009 WL 1110414 (N.D. Cal. April 23, 2009) ........................................... 7

Virginia Plastics Co. v. Biostim Inc.,
    820 F.2d 76 (3d Cir. 1987) ......................................................................... 16

W.R. Grace and Co. v. Local Union 759,
    461 U.S. 757 (1983) .................................................................................... 11

Weatherly v. Universal Music Pub. Group,
    125 Cal. App. 4th 913 (2004) ..................................................................... 18

Zamani v. Carnes,
    491 F.3d 990 (9th Cir. 2007) ...................................................................... 19

## **Statutes**

Rule 13(a) .......................................................................................................... 5, 21

Rule 15 ............................................................................................................... 5, 6, 9

Rule 65(c) ........................................................................................................... 13

Cal. Civ. Code § 3426.6 ..................................................................................... 17

## **Miscellaneous**

Wright & Miller, Federal Practice & Procedure § 1430 (2010) ....................... 5

MATTEL'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

**Preliminary Statement**

MGA misstates the law, distorts the facts and simply ignores the points that it cannot answer in an effort to avoid dismissal of its eleventh-hour, purported "compulsory counterclaims-in-reply."

First, in response to Mattel's showing that these claims are not compulsory, and that leave to amend should be denied because of MGA's undue delay and the resulting unfair prejudice to Mattel, MGA asserts that its trade secret claims do arise from the same "transaction or occurrence" as Mattel's because Mattel stole from MGA what Mattel now claims are its trade secrets. (Opp. at 2:14-15.) But MGA cites no evidence to support this and MGA has not even pleaded it. In fact, what MGA really is asserting is that the same "types" of information—not the same information—are involved. That is "thematic" overlap, not transactional overlap, and courts uniformly reject thematic overlap as a proper basis to find a counterclaim is compulsory. Eventually owning up to that, MGA is reduced to asking the Court to make new law in order to salvage its claims and reward its tactical delay. (Opp. at 14:11-14.) In arguing for its alternative (and untimely) motion for leave to amend, MGA ignores that its own allegations establish undue delay of *six years* and fails to address the unfair prejudice its minute-before-midnight amendments would cause if permitted to proceed.

Second, MGA fails to state a wrongful injunction claim. Under well-established law in the Ninth Circuit and elsewhere, such legal claims are limited to recovery of damages against a bond and, here, there was no bond. MGA asserts that the uniform case law on this score relates only to situations when a preliminary injunction is dissolved, not, as here, a permanent injunction. That distinction is not recognized by the case law and is nonsensical. While MGA could move the Court for restitution, that does not give rise to a legal claim for damages—and the motion would have to be denied in any event as there is nothing to "restore." MGA's wrongful injunction claim also would be futile because the injunction was never operative. MGA denies its earlier judicial admissions recognizing just that, and strains to claim that even if the operation of the

-1-

1   injunction did not cause harm (since it never went into effect), the possibility that the

2   injunction might become effective "disincentivize[d] sales." (Opp. at 24:11.) But that,

3   by definition, is not harm from an "operative" injunction.

4        Third, MGA's trade secret and RICO claims are barred by the relevant three-year

5   and four-year statutes of limitations, triggered in 2004 when former Mattel employees

6   joined MGA as senior executives with (as MGA itself pleads) *actual knowledge* of

7   MGA's current claims.  MGA responds by misstating the law, arguing that MGA only

8   has knowledge of information its executives learned while employed *at MGA*.  (Opp. at

9   27:4-16.)  The law is to the contrary.  A corporation is charged with the knowledge of its

10   executives, irrespective of where and when they acquired that knowledge.   MGA

11   incessantly argues that "fraudulent concealment" tolls the limitations period, but that

12   doctrine is irrelevant here under black letter law because of MGA's *actual* knowledge.

13        The Court should grant Mattel's motion to dismiss and to strike.

## Argument

### I.   MGA'S COUNTERCLAIMS-IN-REPLY ARE PERMISSIVE AND REQUIRE LEAVE OF COURT, WHICH SHOULD BE DENIED

#### A.   "Thematic" Similarity Fails To Satisfy The "Same Transaction Or Occurrence" Test For Compulsory Counterclaims.

18        A counterclaim-in-reply is compulsory *only* where it "arise[s] from the same

19   transaction or occurrence as the [defendant's] counterclaim." Davis & Cox v. Summa

20   Corp., 751 F.2d 1507, 1525 (9th Cir. 1985).  This requires that "the counterclaim arises

21   from the same aggregate set of operative facts as the initial claim."  In re Lazar, 237

22   F.3d 967, 979 (9th Cir. 2001).  None of MGA's arguments that its claims are based on

23   the same transaction or occurrence as Mattel's withstand scrutiny.

24        MGA contends that "Mattel is in some instances alleging as trade secrets against

25   MGA the very same things it stole from MGA and others." (Opp. at 11:25-27.)  MGA

26   misstates the evidence and pleadings—there is no allegation or evidence that Mattel's

27   and MGA's claimed trade secrets are the same.   Rather, this is simply MGA's

28   misleading way of asserting that Mattel is alleging "the very same [*type of*] things" are

1   at issue.  (Opp. at 1:6-8.)  ("very same types of information").  Simply alleging the same

2   *type* of bad acts in counterclaims is insufficient.  <u>See</u> <u>Kar Prods., Inc. v. Avnet, Inc.</u>, 78

3   F.R.D. 204, 206 (N.D. Ga. 1978) (where plaintiff's claim for alleged malicious

4   interference with plaintiff's business by defendant arose out of activities by defendant

5   that were separate and distinct from those that gave rise to defendant's counterclaim for

6   alleged malicious interference with defendant's business, defendant's counterclaim was

7   not compulsory); <u>Jaynes v. U.S.</u>,  69 Fed. Cl. 450, 459 (Fed. Cl. 2006) (same

8   transaction or occurrence test "is not satisfied where plaintiffs' claims arise out of

9   merely 'similar,' rather than 'same'" transaction or occurrence); <u>Collezione Europa</u>

10  <u>U.S.A., Inc. v. Amini Innovation Corp.</u>, 2009 WL 2634648, at *5 (D. N.J. Aug. 26,

11  2009) (new copyright infringement claims concerning different copyright could not

12  relate back to the plaintiff's earlier copyright claims under same transaction or

13  occurrence test because "the proposed amendments assert entirely new claims of

14  infringement").

15       MGA further suggests that "what constitutes a trade secret in the toy industry"

16  satisfies the "transaction or occurrence" test.  (Opp. at 11:24-27.)  No case so holds;

17  such a subject matter test would allow *any* counterclaim so long as it could be pled to

18  mirror a claim, even if it arose (as here) from entirely *independent* transactions.

19       MGA argues that evidence related to its new claims will negate elements of

20  Mattel's claims and support MGA's unclean hands affirmative defense.  (Opp. at 12:8-

21  11.)  The question is not what evidence MGA may offer in this action, but rather what

22  affirmative claims it may pursue.  That some evidence might relate to both its defenses

23  and its affirmative claims is not enough to meet the requirement that both Mattel and

24  MGA's claims arise from the same transactions or occurrences.  The fact that evidence

25  might be relevant as to industry custom and practice (for instance, as to confidentiality)

26

27

28

1  hardly makes any claim arising out of that custom or practice—even if, as here, based

2  on entirely different facts, transactions, and occurrences—a compulsory counterclaim.[1]

3       MGA's trade secret allegations are not even relevant to unclean hands because

4  the facts supporting that defense must "relate directly to *the transaction* concerning

5  which *the complaint* is made." <u>Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.</u>, 890 F.2d

6  165, 173 (9th Cir. 1989) (emphasis added) (quoting <u>Arthur v. Davis</u>, 126 Cal. App. 3d

7  684, 693-94 (1981)); <u>see also Kendall-Jackson Winery, Ltd. v. Superior Court</u>, 76 Cal.

8  App. 4th 970, 978 (1999).  Mattel's alleged theft of MGA's trade secrets by sneaking

9  into MGA toy fair showrooms does not arise from the *same transaction* as MGA's theft

10  of Mattel's trade secrets by bribing Mattel employees and their taking of Mattel secrets

11  just prior to their departure from their Mattel employment.  These alleged thefts

12  occurred at different times, in different places, by different actors, through different

13  means, and targeted different trade secrets.  Nor has the Court ever endorsed MGA's

14  practice of using its unclean hands defense as a grab bag of every supposed bad act that

15  MGA could conjure; indeed, MGA abandoned the defense in Phase 1 before the Court

16  could rule on this issue.[2]  MGA's attempt to bootstrap its trade secret allegations into its

17  unclean hands defense fails for the same reason its compulsory counterclaim argument

18  fails: similar themes are no substitute for identical transactions.

19       MGA's theory that the transactions are the same because Mattel somehow

20  brainwashed its employees to "take whatever they needed" only serves to highlight the

21  fanciful lengths that MGA will go to contrive a transactional nexus where none exists.

22  (Opp. at 12:8-11.)  MGA does not bother to explain how this theory about apparently

---

[1] <u>Plymouth Yongle Tape (Shanghai) Co., Ltd. v. Plymouth Rubber Co., LLC</u>, 683 F. Supp. 2d 102, 110 (D. Mass. 2009) ("The mere fact that [plaintiffs'] counterclaims all arose out of a business relationship between the same parties is insufficient to make the counterclaims compulsory even if there is 'some factual overlap' between them."); <u>Stone v. Holzberger</u>, 807 F. Supp. 1325, 1348 (S.D. Ohio 1992) (counterclaim not compulsory where there was "some factual overlap between the claims, [but] the counterclaim present[ed] several additional legal, factual and evidentiary questions irrelevant to" original claims).
[2] Order Denying As Moot Mattel's Motion For Leave To Take Additional Discovery Re MGA's Unclean Hands Defense, dated February 28. 2008, at 1(Dkt. No. 2365).

00505.07975/3685726.8

1   similar mental states will "negate" any element of Mattel's claims, and it provides no

2   support for the proposition that a company's "corporate culture" of alleged wrongdoing

3   has any bearing on whether the elements of a trade secret misappropriation claim are

4   met.  This argument boils down to an allegation that Mattel is guilty of the same type of

5   bad conduct as MGA without any relation to the specific "aggregate core of facts upon

6   which" Mattel's claims are based as the law requires for MGA's counterclaims to be

7   considered compulsory.  In re Lazar,  237 F.3d at 979.

8       Finally, MGA urges that its RICO counterclaim "presents its story as the second

9   side of the same coin," i.e., that Mattel "is the real thief" and committed the same *types*

10  of bad acts it accuses MGA.  (Opp. at 12:23-27.)  This misguided argument again

11  merely confirms that MGA is asserting the type of "thematic" similarity which courts

12  have found insufficient.  See, e.g., Kar Prods., 78 F.R.D. at 206; Jaynes, 69 Fed. Cl. at

13  459; Collezione Europa, 2009 WL 2634648.

14      Unable to distinguish Conceptus, Inc. v. Hologic, Inc., 2010 WL 1460162 (N.D.

15  Cal. April 12, 2010), MGA asks the Court to find that Conceptus was wrongly decided

16  without offering any explanation for why.  (Opp. at 14:6-14.)  Conceptus is directly on

17  point.  There, as here, "each wants to accuse the other of very similar bad marketing

18  acts [but] each relied on different transactions. As such, Conceptus's counterclaims in

19  reply are not compulsory counterclaims and were improperly pled."  Id. at *1.  The

20  same result should hold here.

**B.   Even If The Counterclaims Are Compulsory, MGA Should Have Brought Them Years Ago And May Not Add Them As Of Right.**

21

22      MGA's position is that a party is entitled to add claims *years* after it has known

23  about them (as MGA's own pleading establishes) without leave to amend as long as the

24  counterclaims are compulsory.  If accepted, this would empower litigants to unilaterally

25  assert dilatory claims in derogation of the Court's authority to manage its civil cases.  It

26  also is not the law.  See Bayer CropScience, LP v. Booth, 2005 WL 2095765, at *1

27  (M.D. Ga. Aug. 29, 2005) ("Rule 13(a) requires defendants to plead compulsory

28

1  counterclaims in their first responsive pleading"); Wright & Miller, <u>Federal Practice &</u>

2  <u>Procedure</u> § 1430, at 252 (2010) ("the decision whether to allow an amendment to add an

3  omitted counterclaim is governed exclusively by <u>Rule</u> 15").   Thus, even if the

4  counterclaims-in-reply are compulsory, MGA forfeited its ability to bring them as of

5  right by failing to do so in a timely manner.

6  　　　MGA fails to distinguish the case law holding that the right to file even

7  compulsory counterclaims-in-reply is not unfettered.  According to MGA: "<u>Fujitsu Ltd.</u>

8  <u>v. Nanya Technology Corp.</u>, 2007 WL 1660694 (N.D. Cal. June 6, 2007), which Mattel

9  claims establishes that compulsory counterclaims-in-reply should be treated as an

10 amendment to the complaint, says no such thing." (Opp. at 10:5-7.)  That is exactly what

11 the case says, however.  While declining to strike plaintiff's compulsory counterclaims

12 in reply, it stated "[n]onetheless, counterclaims in reply are treated 'as an amendment to

13 the complaint.'"  <u>Fujitsu Ltd.</u>, 2007 WL 1660694, at *2.  MGA also mischaracterizes

14 <u>Erickson v. Horing</u>, 2000 WL 35500986, *10 (D. Minn. Oct. 23, 2000).  While the

15 plaintiff in <u>Erickson</u> tried to amend previously filed counterclaims-in-reply, the court

16 explicitly stated that plaintiff should have sought leave to amend in order to bring the

17 counterclaims-in-reply in the first instance.  "It appears to the Court that defendants'

18 counterclaims in this case were compulsory rather than permissive . . .[t]hat being so,

19 plaintiffs ought to have obtained permission to amend their complaint." <u>Id</u>. at *10

20 (emphasis added).  Nor does any of the other authority cited by MGA in any way suggest

21 that the court has no discretion to bar untimely compulsory counterclaims-in-reply.  <u>See</u>

22 <u>Davis & Cox v. Summa Corp.</u>, 751 F.2d 1507, 1525 (9th Cir. 1985) (holding only that a

23 court may allow a compulsory, as opposed to permissive, counterclaims-in-reply); <u>Frank</u>

24 <u>Briscoe Co., Inc. v. Clark County</u>, 857 F.2d 606, 610 (9th Cir. 1988) (same).

25 　　　**C.**　　**<u>MGA Should Be Denied Leave To Amend.</u>**

26 　　　MGA's "motion" for leave to amend, aside from being untimely and improperly

27 noticed, should be denied because MGA has failed to refute or even to address Mattel's

28 arguments for why leave should be denied under <u>Rule</u> 15.

### 1.   <u>MGA Fails To Explain Its Six-Year Delay.</u>

MGA fails to address the irrefutable evidence that it has known of Mr. Villasenor's alleged activities since at least as early as 2004.  As detailed in Mattel's Motion (at 1:17-8:21), MGA's assertion that it "just discovered" the facts underlying its new claims at Villasenor's deposition on July 12, 2010 is false.[3]

MGA asserts—without citation to evidence—that it was "diligent" in seeking to depose Mr. Villasenor.  (Opp. at 8:7-8.)  Yet, MGA offers *no* explanation for why it failed to seek Mr. Villasenor's deposition until *over three years after* it pled its unclean hands affirmative defenses referring to his activities and despite specifically having knowledge of Mr. Villasenor as the Mattel employee with the "fake business cards,"[4] nor does it respond to Mattel's evidence that MGA was on notice of these claims as early as 2004 when Brawer and Machado, who had knowledge of Mr. Villasenor's alleged activities, joined MGA.  These omissions are in fact concessions that MGA has no plausible explanation for its delay.

MGA's excuse that it waited for six years until it deemed it had "sufficient" evidence (Opp. at 16:1-8) is not supported by the evidence or the case law either.  The question is when did MGA have "knowledge of the factual predicate" behind its new theories.  See <u>Veliz v. Cintas Corp.</u>, 2009 WL 1110414, at *3 (N.D. Cal. April 23, 2009) (denying motion to amend where, while the plaintiff may have lacked some information, it had "knowledge of the factual predicates for its expanded claims" but waited ten months, until the "day before the dispositive motion deadline," to file its motion to amend).  As demonstrated by MGA's own description of its affirmative defenses, it had the requisite evidence to plead these facts years ago—it simply chose not use them as bases for counterclaims.[5]  Moreover, any delay in "discovering" these facts at Mr.

---

[3] Dkt. No. 8583 at ¶ 6.
[4] <u>See</u> Mot. at 8:14-16.
[5] MGA cites <u>Probert v. The Clorox Co.</u>, 258 F.R.D. 491, 494 (D. Utah 2009), for the proposition that delay does not justify denying leave where a party "had suspicions about inequitable conduct" but waited until after taking the plaintiff's deposition to assert its new claims.  (Opp. at 16:3-7.)  It is not a question here of "suspicions" but of MGA's (footnote continued)

1   Villasenor's deposition is attributable to MGA's own failures to even ask for that

2   deposition along with its insistence on repeated stays of Phase 2 discovery[6] and its

3   withdrawal of the unclean hands defense as it pertained to Phase 1.[7]

4        Where, as here, a party fails to "furnish satisfactory explanations for delay," leave

5   to amend should be denied.  E.g., Classicberry Ltd. v. Musicmaker.Com, Inc., 2001 WL

6   1658241, at *5 (S.D.N.Y. Dec. 26, 2001).

7        ## 2.   MGA Fails To Address The Unfair Prejudice Mattel Will Suffer Or The Compelling Evidence Of Its Bad Faith.

8        MGA fails to address Mattel's showing that allowing new claims at this stage

9   would be unfairly prejudicial.  Its last-minute claims will engender significant new areas

10  of discovery and other litigation.  MGA cannot deny this point; indeed, half of its

11  omnibus motion to compel, filed the same day as its opposition to Mattel's motion to

12  dismiss, is directed to its new claims[8] and MGA has now noticed the deposition of

13  Mattel's outside litigation counsel in this action, Jon Corey.[9]

14       MGA recently argued that its trade secret allegations are already part of its unfair

15  competition claim and unclean hands defense,[10] but that is simply not so.  In order to

16  avoid a finding by the Discovery Master that MGA had failed to comply with Court

17  Orders requiring 30(b)(6) testimony on its claims, MGA specifically represented that the

18  claims were not encompassed by its earlier unfair competition claim.[11]  And its unclean

---

*actual* knowledge.  As MGA itself has vociferously argued, delay in the face of such knowledge is unacceptable.  See MGA's Opposition to Mattel Motion for Leave to Amend FAAC, dated April 5, 2010, at 12-16 (Dkt. No. 7690) (collecting cases holding that delay in bringing claims where party was in possession of underyling facts is unacceptable).

[6] Order re Ex Parte Applications, dated February 5, 2008 (Docket No. 1931); February 25, 2008 Hearing Tr. at 9:19-25 ("[F]rom the time that new counsel [for MGA] has entered the case, they have asked for a stay of Phase 2 discovery").

[7] Order Denying as Moot Mattel's Motion for Leave to Take Additional Discovery re MGA's Unclean Hands Defense, dated February 28, 2008, at 1 (Docket No. 2365) ("As set forth on the record, and in light of the representations by counsel for MGA and Carter Bryant that they will not assert MGA's unclean hands defense in Phase 1 of the trial, Mattel's motion is DENIED AS MOOT.").

[8] See MGA Parties' Omnibus Motion to Compel, dated Sept. 16, 2010.

[9] See Notice of Subpoena issued to Jon Corey, dated September 17, 2010.

[10] Hearing Tr. at 8:8-16 (September 9, 2010).

[11] MGA 30(b)(6) (Isaac Larian) Dep. Tr. at 4205:1-16 (September 1, 2010).

1  hands defense under no circumstances would allow examination of the confidentiality

2  and alleged theft from forty-four toy industry competitors at dozens of toy fairs around

3  the world over a fifteen-year period.  Kendall-Jackson, 76 Cal. App. 4th at 978.  The

4  discovery necessary to defend against an unfair competition claim, or an unclean hands

5  defense, is also qualitatively different than that necessary to defend against a trade secret

6  or RICO claim.  The myriad discovery issues raised for the first time in this litigation by

7  MGA's RICO claim—predicate acts, enterprise, damages, and so on that MGA alleges—

8  reinforce the conclusion that not only are the claims involved distinct, but Mattel's

9  ability to prepare a defense has been seriously prejudiced by their addition at the very

10  last minute.

11      MGA fails to address the case law holding that bringing new counterclaims

12  requiring new discovery on the eve of the discovery deadline compels denial of leave to

13  amend.[12]  Especially given that MGA is now attempting to engage in the disfavored

14  practice of deposing opposing litigation counsel,[13] there is no question that these new

15  claims seek to impose significant, tactically calculated prejudice on Mattel.

16      MGA also ignores Mattel's demonstration of its bad faith—including that MGA

17  attempted to orchestrate the close of written discovery on the same day it was already

18  planning to bring its new claims.  (Mot. at 17:15-24.)  MGA offers no explanation for

19  this "caught red-handed" fact.  No good explanation exists.

20      Finally, as an independent basis for refusing leave to amend and as shown on

21  Mattel's Motion and below, allowing MGA to add these claims would be futile since

22  they should be dismissed under Rule 12(b)(6).  See Newland v. Dalton, 81 F.3d 904, 907

23  (9th Cir. 1995) ("district courts need not accommodate futile amendments.")

24

---

25  [12]  See Mot. at 16:15-20 (citing, e.g., Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d

26  1132, 1139 (9th Cir. 1998) (affirming denial of leave "on the eve of the discovery deadline"); In re Milk Prods. Antitrust Litig., 195 F.3d 430, 438 (8th Cir. 1999) (need to

27  reopen discovery is "precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a)").
[13]  See Hickman v. Taylor, 329 U.S. 495 (1947); Jennings v. Family Mgmt., 201 F.R.D.

28  272, 276-77 (D. D.C. 2001).

1   Accordingly, leave should be denied.

2   **II.      PARAGRAPHS 41, 46 AND 47 SHOULD BE STRICKEN**

3   Mattel moved to strike the allegations in paragraphs 41, 46 and 47 of MGA's

4   counterclaims on the grounds that such allegations, which concern Mattel's purported

5   "motivations" and "strategy" for raising its counterclaims, are improper under both

6   California's litigation privilege and the federal Noerr-Pennington doctrine. (Mot. at

7   32:11-33:26.) MGA argues that "California's litigation privilege does not allow Mattel

8   to strike allegations made in support of federal claims." (Opp. at 3:6-7.) MGA

9   overstates its authority. At most, MGA's cases hold that the Supremacy Clause prohibits

10  the application of state litigation privileges to bar *entirely* claims seeking to vindicate

11  federal constitutional rights. Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850-

12  851 (9th Cir. 2004). Here, MGA's RICO claim does not seek to vindicate federal

13  constitutional rights and eliminating the three paragraphs Mattel challenges as violative

14  of Mattel's rights would not in itself prevent MGA from pursuing its RICO claim.

15  In any event, and dispositive here, MGA does not respond to Mattel's

16  demonstration that Noerr-Pennington provides independent grounds for striking MGA's

17  allegations concerning Mattel's litigation strategy. (Mot. at 34 n. 95). "Under the Noerr-

18  Pennington doctrine, those who petition all departments of the government for redress

19  are generally immune from liability." Empress LLC v. City & County of S.F., 419 F.3d

20  1052, 1056 (9th Cir. 2005). That doctrine applies squarely to MGA's allegations

21  concerning Mattel's motivations for filing its counterclaims, and MGA does not argue

22  otherwise. Accordingly, whether under the Noerr-Pennington doctrine, California's

23  litigation privilege, or both, the Court should strike paragraphs 41, 46 and 47.

24  **III.     MGA FAILS TO STATE A CLAIM FOR WRONGFUL INJUNCTION**

25      **A.      There Is No Affirmative Claim For Damages Based On A Wrongful
             Permanent Injunction.**

26

27  While MGA asserts that it has a "federal common law claim for wrongful

28  injunction" (Opp. at 22:18-19), there is no such claim in the absence of a bond. Further,

although the Court has discretion to award restitution, restitution is not a legal claim and is not a basis for recovering damages in "the amounts that [MGA] lost as a result of the injunction." (Opp. at 24:26-27.)  Restitution is limited to disgorgement of money that Mattel ostensibly gained pursuant to the vacated and never-effective injunction.  Since there is no legal claim for restitution and MGA does not allege that Mattel is in possession of MGA's money or property,[14] MGA fails to state a claim.

In the face of the controlling authority that limits claims of wrongful injunction to instances where the plaintiff posted a bond, MGA argues that those cases relate only to reversals of *preliminary* as opposed to *permanent* injunctions. (Opp. at 22:5-19.)  The Supreme Court has spoken directly to this issue without making a distinction between the two:  "A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."  W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 770 n.14 (1983).  MGA asserts that Dornan v. Sheet Metal Workers' Int'l Ass'n, 810 F. Supp. 856 (E.D. Mich. 1992), "discusse[s] . . . a long tradition in common law for wrongful permanent injunction claims which do not depend on the existence of a bond." (Opp. at 20:22-25.)  In fact, Dornan expressly *rejects* such a claim:

> In Arkadelphia Co. v. St. Louis S.W. Ry. Co., the Supreme Court upheld the right of shippers to obtain *restitution* from railway companies who had obtained an injunction barring the enforcement of an Arkansas regulatory statute . . . . [A]n examination of [W.R. Grace] shows that the [Supreme] Court probably did not intend to foreclose *equitable remedies* to compensate for reversed injunctions as a matter of law . . . . [Russell v. Farley, 105 U.S. 433, 437 (1882)] does not stand for the proposition that *a court* cannot grant *restitution* for an erroneous injunction . . . . [It] *only forecloses the possibility of damages* . . . .

Id. at 859 (emphasis added).  MGA's precedent thus forecloses its argument that it is "entitled to no less" than what "Mattel was entitled to recover when it won its copyright

---

[14]  Nor could MGA attempt to argue that it could obtain restitution based on the Court-appointed Monitor's escrowing of Bratz profits.  Not only is the Monitor's activities cloaked in judicial immunity pursuant to express Court Order (Docket No. 5565 at 12), but the Court granted MGA's motion for release of Bratz profits held in escrow.  Order Granting MGA Parties' Motion To Release MGA Funds Held By Court-Appointed Monitor,  Aug. 31, 2010, at 1 (Docket No. 8670).

MATTEL'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

1  claim". (Opp. at 25:7-11.) MGA fails to state a claim because it seeks damages, not
2  restitution.

3      **B.**     <u>**MGA Fails To Allege That Mattel Has MGA's Money Or Property.**</u>

4      MGA argues that it "is entitled to the amounts that it lost as a result of the
5  injunction"(Opp. at 24:26-27), but the law is clear that recovery is limited to restitution
6  in the absence of a bond. <u>Dornan</u>, 810 F. Supp. at 859. *Every case* cited by MGA that
7  does not involve a bond is a disgorgement case, *not* a damages case. See <u>id</u>.; <u>see</u> <u>also</u>
8  <u>Arkadelphia</u>, 249 U.S. at 145; <u>Public Serv. Comm'n of Missouri v. Brashear Freight</u>
9  <u>Lines, Inc.</u>, 312 U.S. 621, 629 (1941); <u>Mitchell v. Riegal Textile</u>, 259 F.2d 954, 955
10  (D.C. Cir. 1954); <u>Middlewest Motor Freight Bureau v. U.S.</u>, 433 F.2d 212, 215-18 (8th
11  Cir. 1970); <u>Maryland Dep't of Human Resources v. U.S. Dep't of Agriculture</u>, 976 F.2d
12  1462, 1482-83 (4th Cir. 1992); <u>Atlanta Journal Constitution v. City of Atlanta Dep't of</u>
13  <u>Aviation</u>, 442 F.3d 1283, 1287-89 (11th Cir. 2006).

14      MGA's pleading does not allege that Mattel gained MGA's money or property as
15  a result of the vacated injunction. Instead, the operative pleading seeks "the benefits it
16  lost as a result of these wrongful equitable orders,"[15] which MGA identifies as lost
17  profits based on lost sales of Bratz it would have otherwise made. (Opp. at 25:1-7.)
18  MGA's own cases show that this relief is not available as a matter of law.

19      In implicit recognition of the true state of the law, MGA relies on a bond case in
20  support of its argument that it is entitled to damages. MGA initially concedes (Opp. at
21  20:12-21) that <u>Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.</u>, 16 F.3d 1032 (9th
22  Cir. 1994), awarded damages on a bond, but it later argues that "the amount of money
23  that fell into Mattel's hands" is not the "only remedy" available because <u>Nintendo</u>
24  "awarded damages for lost profits based on lost sales" even though there was "no claim
25  of unjust enrichment". (Opp. at 25:1-3.) That is irrelevant. Mattel does not dispute that
26  damages can be awarded on a bond. <u>Buddy Systems, Inc. v. Exer-Genie</u>, Inc., 545 F.2d

27  _____
28  [15]  Dkt. No. 8583 at ¶ 321.

MATTEL'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

1   1164, 1167 (9th Cir. 1976).  But where, as here, there is no bond, the enjoined party is

2   limited to restitution.  Dornan, 810 F. Supp. at 859.  Nintendo simply applied the Ninth

3   Circuit's "rebuttable presumption that a wrongfully enjoined party is entitled to have the

4   *bond* executed and recover *provable damages up to the amount of the bond*."  16 F.3d at

5   1036 (emphases added).

6          MGA's distinction—that damages are available absent a bond in cases of reversal

7   of a permanent injunction, but not in cases of reversal of preliminary injunction—is not

8   only wholly unsupported but makes no sense.  It amounts to arguing that a plaintiff

9   awarded a permanent injunction after a trial on the merits should have greater exposure

10  to damages than a plaintiff who has simply made a preliminary showing of likelihood of

11  success later.   Cf. Edgar v. MITE Corp., 457 U.S. 624, 649 (1982) (Stevens, J.,

12  concurring) ("Since a preliminary injunction may be granted on a mere probability of

13  success on the merits, generally the moving party must demonstrate confidence in his

14  legal position by posting bond in an amount sufficient to protect his adversary from loss

15  in the event that future proceedings prove that the injunction issued wrongfully");

16  Nintendo, 16 F.3d at 1036 (Rule 65(c) requires a bond to discourage "seeking of

17  preliminary injunctions on flimsy (though not necessarily frivolous) grounds").  Absent a

18  bond, damages are not recoverable in *all* injunction cases, whether preliminary or

19  permanent.

20          **C.      MGA Cannot Recover Damages In The Guise Of Restitution.**

21          In addition to seeking alleged damages, MGA seeks "to have disgorged from

22  Mattel the benefits it received,"[16] but MGA defines as "benefits" what Mattel "gained" in

23  a "marketplace that it could exploit without Bratz" (Opp. at 25:5-7.)  This plainly seeks

24  lost profits from foregone sales in the marketplace (damages), not disgorgement

25  (restitution of money or property that Mattel wrongfully obtained directly from MGA).

26  Damages for lost profits, diminished value of the brand and attorney's fees are not

27  _____

28  [16]  Dkt. No. 8583 at ¶ 321.

1   restitution either under case law involving wrongful injunctions specifically[17] or under

2   the more general and well-established distinction between damages and disgorgement.[18]

3   MGA is simply recasting its (non-existent) claim for damages as a badly disguised claim

4   for disgorgement.  Because Mattel did not gain money or property *from MGA* (as

5   opposed to gaining sales from customers in the  marketplace) there is nothing for Mattel

6   to restore and "no room for the application of restitution here." United Motors Service v.

7   Tropic-Aire, 57 F.2d 479, 484 (8th Cir. 1932).

8   ### D.   Restitution Is Discretionary Relief Granted By The Court, Not A Legal Claim Submitted To The Jury.

9   MGA argues that the "jury is therefore going to have to hear this [wrongful

10  injunction] claim as part of [MGA's] legal defense of setoff." (Opp. at 23:8-12.)  This

11  too is wrong.  MGA's own cases recognize that restitution is a discretionary remedy

12  decided on motion by the judge after weighing of equitable factors, not a legal claim

13  submitted to the jury.  Dornan, 810 F. Supp. at 857 (granting motion for restitution but

14  limiting setoff based on the court's finding of laches); Atlanta Journal, 442 F.3d at 1287

15  ("Restitution is an equitable remedy"); Maryland Dep't of Human Resources, 976 F.2d

16  at 1482 ("The equitable nature of restitution ordinarily permits a court to award

17

18  _____

19  [17] See, e.g., Tenth Ward Road Dist. No 11 of Avoyelles Parish v. Texas & P. Ry. Co.
    121 F.2d 245, 247-48 (4th Cir. 1926); United Motors Service v. Tropic-Aire, 57 F.2d
20  479, 484 (8th Cir. 1932); Greenwood County v. Duke Power Co., 107 F.2d 484, 487 (4th
    Cir. 1939); see also Monolith, 128 F. Supp. at 878 (attorney fees and legal expense "are
    not items for which recovery is permitted").
21  [18] See, e.g., Fulfillment Servs., Inc. v. United Parcel Serv., Inc., 528 F.3d 614, 621 (9th
    Cir. 2008) ("although [the plaintiff] uses the term 'damages,' in effect [it]seeks
22  disgorgement of UPS's 'unlawful' tariff or a penalty similar to what the Interstate
    Commerce Commission could have imposed. Because Fulfillment alleges only
23  restitution and penalties, it has alleged no damages, and therefore failed to state a
    claim"); In re First Alliance Mortg. Co., 471 F.3d 977, 997 (9th Cir. 2006) ("restitution
24  means the return of money to those persons from whom it was taken or who had an
    ownership interest in it"); U.S. v. Sequel Contractors, Inc., 402 F. Supp. 2d 1142, 1156
    (C.D. Cal. 2005) ("JHTM fails to state a claim for restitution because JHTM does not
25  allege any facts that support a finding that JHTM has an ownership interest in property or
    funds in the County's possession. Instead, JHTM alleges that the County caused JHTM
26  to incur payroll expenses and suffer a decline in the value of its business . . . . JHTM is
    seeking damages, not restitution."); Siegel v. Warner Bros. Entm't Inc., 581 F. Supp. 2d
27  1067, 1072 (C.D. Cal. 2008) ("restitution in equity" is "where money or property
    identified as belonging in good conscience to the plaintiff could be traced to particular
28  funds or property in the defendant's possession").

'restitution upon the reversal of a judgment' to the extent of one party's unjust enrichment"); Brashear, 312 U.S. at 622, 629 ("courts of chancery have discretionary power" to consider a "motion for assessment of damages and costs" based on a wrongful injunction).  Although MGA may bring a motion for restitution in this action (which would be futile in all events because the damages MGA seeks are unavailable as a matter of law), that cannot save its defective wrongful injunction claim here.

### E.   MGA Has Not Suffered Any Injury From The Operation Of The Injunction

Even assuming (contrary to law) it was entitled to damages, MGA has failed to state a claim because the injunction was never in effect.  To recover damages on an injunction bond, the plaintiff's injury must be "actually sustained by reason of the injunction. . . *during the time it was operative*."  Monolith Portland Midwest Co. v. R.F.C., 128 F. Supp. 824, 879 (S.D. Cal. 1955) (emphasis added); see also Cappaert Enters. v. Citizens & Southern Int'l Bank of New Orleans, 564 F. Supp. 214, 223 (E.D. La. 1983) (bond was "broad enough to cover both the damages" sustained "while the injunction pending appeal was in effect, as well as the damages . . . sustained while the temporary restraining order and the preliminary injunction were in effect"); Edgar v. MITE Corp. , 457 U.S. 624, 652 n.4 (1982) (Stevens, J., concurring) ("posting of an indemnity bond . . . creates a right of action—that may or may not otherwise exist—for damages caused during the period that a wrongfully issued injunction was in effect"). MGA fails to state a claim for wrongful injunction because the Ninth Circuit vacated a *stayed* injunction; it was *never* legally operative.

MGA contends that "[t]he recall provisions were not stayed at all until the Ninth Circuit stayed them on December 9[, 2009]." (Opp. at 24:7-8.)  That is wrong.  As MGA itself stated in its motion to vacate:  "Originally, the injunction required an immediate recall, but, in orders dated January 7, April 27, and May 21, 2009, *the Court postponed*

1  *the recall to take effect until January 21, 2010.*"[19]  The Ninth Circuit then further stayed

2  all equitable relief on December 9, 2009 and ultimately vacated it on July 22, 2010, so

3  the recall provisions of the injunction were *never* operative.[20]

4      It is therefore not surprising that MGA does *not* seek damages during the time the

5  injunction was operative (it never was).  Rather, it seeks damages because the specter of

6  the injunction "disincentivize[d] sales"  (Opp. at 24:7-11.)  This is precisely the type of

7  injury that is *not* cognizable in a claim for wrongful injunction, and MGA has again pled

8  itself out of court on this claim for this reason alone.  See Virginia Plastics Co. v.

9  Biostim Inc., 820 F.2d 76, 80 (3d Cir. 1987) ("only damages for which Fidelity may be

10  held liable as surety are those which arose solely from the operation of the injunction");

11  Lever Bros. Co. v. Int'l Chemical Workers Union, Local 217, 554 F.2d 115, 120 (4th

12  Cir. 1976) ("recoverable damages under such a bond are those that arise from the

13  operation of the injunction itself and not from damages occasioned by the suit

14  independently of the injunction").

15      MGA's argument that "[t]he stay permitted no new lines of product to be

16  manufactured and sold prior to the recall" (Opp. at 24:12-14) is false for the further

17  reason that the Court's Orders did not limit the "Spring and Fall 2009 lines" to any

18  specific dolls or forbid new dolls from being added to those lines.[21]  The Court's May 21,

19  2009 Order expressly provided that "the MGA Parties and others in the distribution chain

20  may sell all 2009 Bratz products up through and including January 21, 2010" and "the

21  older inventory of Bratz products may likewise be sold."[22]   The parties' earlier

22

23

---

24  [19]  Motion To Vacate Recall Provisions, Oct. 19, 2009, at 1 (emphasis added).
     [20]  Order Staying Equitable Relief Pending Appeal,  Dec. 9, 2009, at 1 (Dkt. No. 136)
25  (9th Cir.); Mattel, Inc. v. MGA Entertainment, Inc., --- F.3d ----, 2010 WL 2853761, at
     *11 (9th Cir. July 22, 2010).
26  [21]  Order Modifying Stay Of Permanent Injunction, dated January 7, 2009, at 1-2 (Dkt.
     No. 4657); Order Lifting Stay On Permanent Injunction, dated April 27, 2009, at 11
27  (Dkt. No. 5273).
     [22]  Order Denying Ex Parte Application For Stay Pending Appeal, dated May 21, 2009,
28  at 7 (Dkt. No. 5565).

00505.07975/3685726.8

1  stipulation did not limit the 2009 Bratz lines to any particular products[23]—nor could it

2  because MGA refused to identify them[24]—so MGA's suggestion that the 2009 Bratz

3  lines were strictly limited to some Bratz products but not others is also wrong.  MGA

4  was free to sell any Bratz product it wanted before January 21, 2010.  MGA suffered no

5  injury *directly caused* by injunctive relief that never took effect, so it fails to state a

6  claim.

7  **IV.    MGA'S TRADE SECRET CLAIM IS TIME BARRED**

8       **A.    Machado's And Brawer's Actual Knowledge Is MGA's Knowledge.**

9       MGA's own allegations that its senior officers, Ron Brawer and Gustavo

10  Machado, had actual knowledge of the events about which MGA now complains when

11  they joined MGA in 2004[25] establish an absolute bar under the statute of limitations.  See

12  Cal. Civ. Code § 3426.6 (three year limitation); Cadence Design Sys., Inc., v. AvantA

13  Corp., 29 Cal. 4th 215, 226 (2002).  MGA argues that the Court cannot impute

14  Machado's and Brawer's knowledge to MGA because these executives did not obtain the

15  knowledge while acting within the scope of their authority *at MGA.*  (Opp. at 27:4-16.)

16  That argument is contrary to common sense and is not the law.  See Funk v. Tifft, 515

17  F.2d 23, 26 n.4 (9th Cir. 1975) ("as President of Pendor-Idaho and one of its three

18  stockholders at the time at which the corporation acquired the land, Tifft was an agent of

19  the corporation and the knowledge of an agent is attributable to the principal *regardless*

20  *of when it is acquired*") (emphasis added);  see also All Steel Engines v. Taylor Engines,

21  88 F. Supp. 745, 748 (N.D. Cal. 1950) (imputing knowledge to corporation "even though

22  such knowledge may have been acquired before the agency was created"); O'Riordan v.

23  Federal Kemper Life Assurance, 36 Cal. 4th 281, 288 (2005) ("The principal is charged

24  with knowledge which his agent acquires before the commencement of the relationship

25

26  [23]  Stipulation Regarding 2009 Bratz Products, dated January 7, 2009, at 1 (Dkt. No. 4655).

27  [24]  See id. ("WHEREAS, MGA has not provided or shown its Spring or Fall 2009 Bratz dolls or products to Mattel's counsel and therefore Mattel is relying entirely on MGA's representations as to the stipulation herein.").

28  [25]  Dkt. No. 8583 at ¶¶ 14, 20, 126.

1  when that knowledge can reasonably be said to be present in the mind of the agent while

2  acting for the principal").

3       Where, as here, executives like Machado and Brawer had actual knowledge of the

4  purported thefts when they joined MGA, the fact that they learned this information while

5  working at Mattel is irrelevant.  See Funk, 515 F.2d at 26 n.4; see also San Diego

6  Hospice v. County of San Diego, 31 Cal. App. 4th 1048, 1056 (1995) (California courts

7  "impute[] knowledge to the defendant based on information *actually* known to existing

8  agents or employees") (emphasis in original).

9       MGA specifically alleges that Machado—who joined MGA on April 19, 2004—

10  was "one of the recipients" of presentations "assembled" by "Mattel thieves."[26]

11  Similarly, MGA alleges that Brawer—who joined MGA on October 5, 2004—was

12  "aware of the practices" of Villasenor himself.[27]  MGA admits that Brawer "came to

13  work for MGA" and occupied the officer position of "Executive Vice President of Sales

14  and Marketing" and was "responsible for sales worldwide."[28]  Because MGA has

15  pleaded that Machado and Brawer, while senior executives at MGA, had actual

16  knowledge in 2004 of all three elements constituting the trade secret claim—

17  wrongdoing, causation, and harm—MGA has pled itself out of court.  Fox v. Ethicon

18  Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005).

19      **B.**   **MGA's Fraudulent Concealment Allegation Is Irrelevant Because
MGA Had Actual Knowledge Of Its Trade Secret Claim In 2004.**

20

21       MGA spends much of its Opposition on hyperbolic, fanciful descriptions of

22  Mattel's ostensible fraudulent concealment of its alleged misdeeds.  But wrongful

23  concealment "does not come into play, whatever the lengths to which a defendant has

24  gone to conceal the wrongs, if a plaintiff is on notice of a potential claim."  Snapp &

25  Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884,

26  890-891 (2002).  MGA alleges that its executives Machado and Brawer had actual

27  [26] Docket No. 8583 at ¶ 14.

28  [27] Id. at ¶ 20.

-18-

knowledge of the trade secret claim in 2004,[29] which makes MGA's fraudulent concealment allegations irrelevant.  MGA attempts to characterize Mattel's position as faulting MGA "for failing to investigate" (Opp. at 27:1-3), but Mattel is not contending that MGA *should* have discovered the claim in 2004.  The evidence shows that MGA did not need to investigate because it *actually* knew about the claim based on its knowledge through Machado and Brawer.  See Weatherly v. Universal Music Pub. Group, 125 Cal. App. 4th 913, 919 (2004) ( "[t]he discovery rule protects those who are *ignorant* of their cause of action") (emphasis added).

### C.     MGA's Permissive Trade Secret Claim Does Not Relate Back To Mattel's January 12, 2007 Amended Answer And Counterclaims.

MGA argues that its trade secret claim relates back to *Mattel's* January 12, 2007 Amended Answer and Counterclaims. (Opp. at 27:17-28:6.)  Mattel has explained, however, why MGA's trade secret claim does not "aris[e] out of the same transaction" as Mattel's counterclaims.  Since MGA's trade secret claim is permissive, it is subject to its own limitations period and is time barred.  Sidney v. Superior Court, 198 Cal. App. 3d 710, 714 (1988).

### D.     MGA's Permissive Trade Secret Claim Does Not Relate Back To Its April 13, 2005 Complaint Or Its August 13, 2007 Answer.

As Mattel showed on its motion, MGA's permissive trade secret claim does not relate back to its April 13, 2005 Complaint or August 13, 2007 Answer. (Mot. at 28:14-30:10.)  MGA forfeited this argument by not raising it in its Opposition.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).  Mattel disagrees that MGA's trade secret allegations "may also be incorporated"[30] into its unfair competition claim and unclean hands defense, but even assuming they are, MGA's new claims do not relate back because those *facts* were not alleged in MGA's April 13, 2005 Complaint.  This is

---

[28] Id. at ¶¶ 124, 126.
[29] Dkt. No. 8583 at ¶¶ 14, 20, 126.
[30] Order On August 10, 2010 Discovery Motions And Related Matters, dated September 20, 2010, at 11 (Dkt. No. 8751).

1   evident from the face of MGA's own Complaint.[31]   MGA also unequivocally represented

2   during Larian's deposition on September 1, 2010 that its trade secret allegations were not

3   part of its unfair competition claim in an effort to avoid a finding by the Discovery

4   Master that it was in violation of Court Orders requiring it to produce 30(b)(6) testimony

5   on its claims.[32]   Even if MGA were permitted to contradict that position, however, it

6   would not save MGA's trade secret claim from the statute of limitations bar because

7   relation back is determined strictly based on the factual allegations contained in MGA's

8   April 13, 2005 Complaint, not subsequent interrogatory responses or briefing served

9   years later.[33]   Since the underlying facts are not alleged in the Complaint, MGA's trade

10   secret claim cannot relate back to it.  Nor can the claim relate back to MGA's August 13,

11   2007 Answer because a claim cannot relate back to an earlier alleged affirmative

12   defense.[34]   (See Mot. at 29:11-30:10.)

---

[31]   MGA does not allege theft of trade secrets in its Complaint, so it might rely on recent interrogatory responses or briefing to argue that these new facts are incorporated into its unfair competition claim.  Not only are interrogatory responses or briefing insufficient to obtain relation-back where the facts were not alleged in the complaint as shown below, but that argument would be flatly inconsistent with MGA's earlier argument that Mattel's unfair competition claim is completely preempted by CUTSA.  Order On Motions To Dismiss, dated August 2, 2010, at 31-35.

[32]   MGA 30(b)(6) (Isaac Larian) Dep. Tr. at 52:15-25 (September 1, 2010) (Rough) (Mr. Molinski).

[33]   See Holdridge v. Heyer-Schulte Corp. of Santa Barbara, 440 F. Supp. 1088, 1093-94 (N.D.N.Y. 1977) ("The major consideration in deciding whether an amendment relates back is whether adequate notice is given to the opposing party by the general fact situation alleged in the original pleading . . . .  The Court notes that the defendant did receive notice of the additional allegations which the plaintiffs are now relying upon, from the plaintiffs' answers to interrogatories and from the plaintiffs' memorandum of law in opposition to the motion for summary judgment, but the Court believes that, in applying the relation back doctrine, it must look to determine if adequate notice was supplied by the original complaint, rather than by papers which were subsequently filed in the action."); Davaloo v. State Farm Ins. Co., 135 Cal. App. 4th 409, 415 (2005) ("The requirement that the complaint allege ultimate facts forming the basis for the plaintiff's cause of action is central to the relation-back doctrine and the determination whether an amended complaint should be deemed filed as of the date of the original pleading . . . .  The relation-back doctrine, therefore, requires courts to compare the factual allegations in the original and amended complaints.") (emphasis added).

[34]   Although MGA's August 12, 2007 Answer attempts to incorporate its trade secret allegations into its unclean hands affirmative defense, this is improper because MGA's theft of trade secrets through Mattel's former employees is not transactionally related to Mattel's alleged theft of MGA's trade secrets at toy fairs.  Mattel's Motion To Strike MGA's Affirmative Defenses, dated October 9, 2007, at 6.  The Court never ruled on the scope of MGA's unclean hands affirmative defense because MGA withdrew it before the Phase 1 trial to avoid discovery.  MGA's Notice Of Withdrawal Of Unclean Hands Affirmative Defense As It Relates To Phase 1, dated Feb. 15, 2008, at 1; Order Denying (footnote continued)

MATTEL'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"

## V. MGA'S RICO CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

MGA argues that its RICO claim is "not premised solely on Mattel's theft of trade secrets" because its pleading alleges "new and independent injuries" stemming from Mattel's "cover-up," "lies to a Court," and pursuit of an injunction.  (Opp. at 28:8-29:13.)  First, this argument fails to apprehend that under the Ninth Circuit's "separate accrual rule," "damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period."  Grimmett v. Brown, 75 F.3d 506, 512 (9th Cir. 1996).  Thus, MGA's untimely trade secret claims are not properly considered as part of its RICO claim.  Second, Mattel's alleged concealment of evidence of trade secret theft is derivative of the initial injury and is not a new and independent injury.  In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 59-60 (2d Cir. 1998) ("Thus, we find that their later communications which put a gloss on the losing investments were continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries.").  Third, MGA's fraudulent concealment allegation fails because MGA had actual knowledge of the RICO injury in 2004 through Machado and Brawer.  Pincay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001) ("[T]here is a long line of our cases holding that, in order to prevail on such a claim, plaintiffs 'must demonstrate that they had neither actual nor constructive notice of the facts constituting their claims for relief.'").  Fourth, MGA's RICO claim does not relate back to its April 13, 2005 Complaint because the trade dress and unfair competition claims are not based on a "common core of operative fact" with MGA's RICO claim.[35]  (Mot. at 31:21-32:8.).  The claim is time barred because MGA had actual knowledge of the RICO injury prior to

As Moot Mattel's Motion For Leave To Take Additional Discovery Re MGA's Unclean Hands Defense, dated February 28. 2008, at 1(Dkt. No. 2365).
[35]  MGA argues that its RICO claim relates back to Mattel's January 2007 Amended Answer and Counterclaims (Opp. at 27:17-28:6).  This argument fails because (1) the claim is not compulsory under Rule 13(a) and (2) the Ninth Circuit has never adopted this relation back rule.  See Katherine G. ex rel. Cynthia G. v. Kentfield Sch. Dist., 261 F. Supp. 2d 1159, 1185 (N.D. Cal. 2003) (declining to apply this relation back rule in the absence of Ninth Circuit authority).

August 16, 2006.  Id. at 1108-09.

## **Conclusion**

Mattel respectfully requests that the Court grant its motion to strike and dismiss.

DATED:    September 21, 2010          QUINN EMANUEL URQUHART & SULLIVAN. LLP


By /s/ Michael T. Zeller
    Michael T. Zeller
    Attorneys for Mattel, Inc., and Mattel de
    Mexico. S.A. de C.V.

MATTEL'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN-REPLY"