SACV 04–9049–DOC – 09/08/2010 – Vol. I

1

1                  **UNITED STATES DISTRICT COURT**

2                 **CENTRAL DISTRICT OF CALIFORNIA**

3            **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                         - - - - - - -

5

6     CARTER BRYANT,                       )
                                           )
7              Plaintiff,                  )
                                           )
8         vs.                              ) No. SACV 04–9049–DOC
                                           )      Volume I
9     MATTEL, INC.,                        )
                                           )
10             Defendant.                  )
      _____)

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                 Hearing/Status Conference

16                  Santa Ana, California

17             Wednesday, September 8, 2010

18

19

20

21
      Jane C.S. Rule, CSR 9316
22    Federal Official Court Reporter
      United States District Court
23    411 West 4th Street, Room 1-053
      Santa Ana, California 92701
24    (714) 558-7755

25    10-09-08 MattelV1

SACV 04-9049-DOC - 09/08/2010 - Vol. I

2

**APPEARANCES OF COUNSEL:**

FOR INTERVENOR DEFENDANT MGA ENTERTAINMENT, INC.:

      ORRICK, HERRINGTON & SUTCLIFFE, LLP
      BY:  THOMAS S. MC CONVILLE
         Attorney at Law
      4 Park Plaza
      Suite 1600
      Irvine, California 92614
      (949) 567-6700

      - AND -

      ORRICK, HERRINGTON & SUTCLIFFE, LLP
      BY:  ANNETTE L. HURST
         Attorney at Law
      405 Howard Street
      San Francisco, California 94105
      (415) 773-5700


FOR DEFENDANT MATTEL, INC.:

      QUINN, EMANUEL, URQUHART, OLIVER & HEDGES
      By:  JOHN B. QUINN
         MICHAEL T. ZELLER
         Attorneys at Law
      865 South Figueroa Street
      10th Floor
      Los Angeles, California 90017-2543
      (213) 443-3000


FOR COUNTER-DEFENDANT GUSTAVO MACHADO:

      SCHEPER, KIM & OVERLAND, LLP
      BY:  ALEXANDER H. COTE
         Attorney at Law
      601 West Fifth Street
      12th Floor
      Los Angeles, California 90071
      (213) 613-4660


ALSO PRESENT:

      HON. JAMES L. SMITH
      DIANE BERRY, ILS

Case 2:04-cv-09049-DOC-RNB  Document 8766  Filed 09/22/10  Page 3 of 19  Page ID
#:272480
SACV 04-9049-DOC - 09/08/2010 - Vol. I

3

1                              **I N D E X**

2

3

4              MGA'S MOTION FOR NEW TRIAL

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:04-cv-09049-DOC-RNB  Document 8766  Filed 09/22/10  Page 4 of 19  Page ID
#:272481
SACV 04-9049-DOC - 09/08/2010 - Vol. I

4

```
 1            SANTA ANA, CALIFORNIA, WEDNESDAY, SEPTEMBER 8, 2010

 2                               VOLUME I

 3                             (5:53 p.m.)

 4            THE COURT:  All right.  We are on the record.

 5   Counsel is present on behalf of MGA and Mattel, and when I

 6   say "counsel," that always means lead counsel in every

 7   discussion we have.

 8            So Ms. Hurst is here, Mr. McConnell -- McConville,

 9   I'm sorry; Mr. Quinn, Mr. Zeller, and -- I apologize.

10            MR. COTE:  Mr. Cote.

11            THE COURT:  Mr. Cote.

12            And we've had a conversation in chambers about

13   Archive One, and why don't we start with our discussion

14   about -- about Bratz.

15            MS. BERRY:  Well, we ran the first one through

16   with term "Bratz" with a capital B, B-r-a-t-z, and with the

17   time constraint that was given in the stipulation, which was

18   some date in October of 2000, looking for Bratz prior --

19            THE COURT:  And would you tell the parties who you

20   are so my record is clear?

21            MS. BERRY:  My name is Diane Berry.  I work for

22   ILS, which is the technical advisor to the special master

23   for discovery.

24            THE COURT:  And we just got off the phone with

25   Gene --
```

1          MS. BERRY:  Gene Cioni (phonetic), who is our

2    senior data investigator.

3          THE COURT:  And Jim Smith is here.

4          So please continue on what you found on Bratz.

5          MS. BERRY:  So we ran the term "Bratz" with a

6    capital B prior to October 2000, and it has returned no

7    hits.  I spoke to Gene Cioni because we were looking at that

8    result, and he says that it's case sensitive.  So I've asked

9    him to run the following search:  "Bratz" with a capital B,

10   B-r-a-t-z, or "Bratz" with a small B, b-r-a-t-z, or "Bratz"

11   with a capital B and a wild card at the end of it, or

12   "Bratz" with a small B and a wild card at the end of it, so

13   we sort of cover all basis for all possibilities with the

14   term.

15         JUDGE SMITH:  May I interrupt, by the way?

16         The Court ordered that they were relying upon

17   identifying the search term as being capital B-r-a-t-z, and

18   that was it.  That was the only term.  And perhaps that was

19   a shortfall on my part in not having identify the need to

20   expand the search to get any variations on that particular

21   word.  But in any event, that's where we are right now.

22         THE COURT:  That will be the last run?

23         MS. BERRY:  We are of the opinion that the stem

24   "Bratz," B-r-a-t-z, is unique enough that anything that

25   comes after it is likely to be in the realm of relevance.

```
 1              THE COURT:  That will conclude the run.  That's an

 2     order of the Court, that's the last run for Bratz that we

 3     are going to make.

 4              Now, will you inform counsel, because I know that

 5     they've been reading Judge Smith's report, about Larion.

 6     We've retrieved --

 7              MS. BERRY:  We have retrieved the -- within the

 8     date limits that were set, the e-mail boxes for Ron Brawer

 9     and for Isaac Larion.  We are beginning the process of

10     pulling Mr. Wing's e-mail box this evening.

11              THE COURT:  Describe the problems we've had with

12     Mr. Wing.

13              MS. BERRY:  One of the problems in working with

14     Archive One is that any search that returns a very large

15     result crashes the system when it tries to export that large

16     amount out.  Therefore, we are breaking the time frame given

17     for Mr. Wing's e-mail box into smaller time frames, and we

18     are going to run it again.

19              Archive One is also divided up into 16

20     sub-databases.  If we need to, we can divide it into running

21     it one database at a time, so we are going to break it up in

22     smaller pieces and see how granular we need to get in order

23     to be able to export the results reliability, and that

24     process is starting this evening.

25              THE COURT:  And we believe we will conclude with
```

Case 2:04-cv-09049-DOC-RNB Document 8766 Filed 09/22/10 Page 7 of 19 Page ID
#:272484
SACV 04-9049-DOC - 09/08/2010 - Vol. I

7

```
 1  Mr. Wing approximately --

 2          MS. BERRY:  It depends on how many pieces.  I

 3  would be able to answer that better tomorrow morning.  It

 4  depends on how many pieces Mr. Cioni needs to break the

 5  e-mail box into in order to reliably export it.

 6          THE COURT:  Will you be present tomorrow night?

 7          MS. BERRY:  Yes, sir, I can.

 8          THE COURT:  Thank you.  I'll request that you be

 9  here, along with Judge Smith.

10          Will you give counsel your input about

11  approximately how long it takes Gene to run, you know, the

12  five remaining names.

13          MS. BERRY:  I asked him how long it had taken him

14  to run the original search with a capital B "Bratz," he said

15  it takes 40 minutes to run it.  That's running it across all

16  16 of the databases and -- with just the time limiter, he

17  said it took 40 minutes.

18          JUDGE SMITH:  I think the Court is referring to

19  the custodians, and there is only four left, actually.

20          MS. BERRY:  The custodians were usually able to

21  complete somewhere between one and a half and two in a day.

22          THE COURT:  And so Brawer has been completed?

23          MS. BERRY:  Brawer is completed and Larion is

24  completed.

25          THE COURT:  Do you know approximately how long it
```

Case 2:04-cv-09049-DOC-RNB   Document 8766   Filed 09/22/10   Page 8 of 19   Page ID
#:272485
SACV 04-9049-DOC - 09/08/2010 - Vol. I

8

1    took for Brawer?

2              MS. BERRY:  Brawer was the original test one that

3    I had him run in order for us to test moving to a different

4    motive searching Archive One.  Mr. Larion's box ran for

5    almost a full day.  He started it and then read it

6    overnight.  Mr. Brawer's box took about half a day.

7              THE COURT:  Can we conclude by midnight on

8    Saturday?

9              MS. BERRY:  (No audible response.)

10             THE COURT:  Good.  Excellent.  Thank you.

11             MS. BERRY:  Maybe.

12             THE COURT:  Okay.  I heard that MGA has

13   volunteered to keep their offices open to accommodate Gene

14   whatever hours are needed.

15             JUDGE SMITH:  Mr. Parker was the discovery

16   consultant from ILS.  Berry and myself, we visited the MGA

17   facility today, and Mr. Parker was made --

18             (Interruption in the proceedings.)

19             THE COURT:  That's why I want you up here.

20             JUDGE SMITH:  Jim Smith, the discovery referee.

21             Ms. Berry and myself visited in MGA facility in

22   Panorama City today, and Mr. Parker was nice enough to host

23   that.  He showed us the server.  He showed us the location.

24   He showed us the plant layout, showed us the area where the

25   searches were being conducted.  And during my presence,

```
 1    Mr. Parker gave instructions to MGA personnel that -- I just

 2    have to say that the impression that I gained from that is

 3    that the personnel had been advised to do anything that was

 4    requested of them in order to facilitate the search.

 5              THE COURT:  Okay.  Now, we've been discussing

 6    narrowing the terms or possibly prioritizing the terms.  So

 7    why don't you, as special master, Judge Smith, just relate

 8    the conversation that we've undertaken in chambers in any

 9    order that you care to so that counsel is aware as to what's

10    being said.

11              JUDGE SMITH:  I'll refer to Ms. Berry.  She's the

12    brains of the operation.

13              (Laughter.)

14              JUDGE SMITH:  Besides, it's always better to edit

15    than it is to originate.

16              THE COURT:  You are driving my court reporter

17    nuts.  Come here.

18              MS. BERRY:  Once the e-mail boxes have been

19    exported from Archive One, we are going to be putting them

20    into a better search tool and running the search terms.  At

21    the moment, there are 700-some-odd search terms or phrases

22    in the list that had been submitted by the parties.  What we

23    are going to ask is that, at the very least, the parties

24    prioritize.

25              MS. HURST:  Those are not, just to be clear,
```

```
 1   submitted by MGA.  That's Mattel's list.

 2             THE COURT:  We know that, okay?  Thank you.

 3             MS. BERRY:  I do understand that they were.  So

 4   whoever it is who needs to be the -- on your team who needs

 5   to have a look at them, we would appreciate it if you could

 6   prioritize the terms, and we would be running the searches

 7   in that order.  We are also --

 8             THE COURT:  Now, that's taken quite a while

 9   before.

10             JUDGE SMITH:  The search or the prioritization?

11             THE COURT:  Well, the debate over what should the

12   term be.

13             So what time is it now?  6:00?

14             Mr. Zeller, what time should I come back and meet

15   with you tonight?

16             MR. ZELLER:  I'm sorry?

17             THE COURT:  Tonight.

18             JUDGE SMITH:  With regard to prioritization.

19             MR. ZELLER:  Yeah, I understand.

20             If I could ask one question, please.

21             Is it possible once -- if I understood things

22   correctly, once the data is exported, you can still run

23   whatever the search terms are as one string, or do you have

24   to run them separately?

25             MS. BERRY:  I don't know how long a search string,
```

1    but certainly it's going -- I'll be able to put more into

2    each individual search, and the searches will be much

3    faster.  And once we've identified which items are hits,

4    it's going to be much faster to export them or to indicate

5    to MGA which items need to go into their review process.  So

6    that portion of it will be much faster.

7              JUDGE SMITH:  The major component of that whole

8    thing is to --

9              THE COURT:  Jim?  Jim?  No.  Stop.  Stop.

10             JUDGE SMITH:  I'm sorry.  The major component in

11   this thing is the environment in which the search is being

12   conducted, not the length of the search or the complexity of

13   the search.  I mean, those are important, don't get me

14   wrong, but it's the environment that's going to have the

15   major impact on our ability to complete this -- this

16   process.

17             THE COURT:  Now, if you can prioritize reasonably,

18   fine.  If not, then I will do it for you.  As the special

19   master, I will cut it way down.

20             MR. ZELLER:  We can prioritize.  That's not the

21   issue.  I just want to make sure that we understood --

22             THE COURT:  No.  I just want to make sure you

23   understand, okay?

24             MR. ZELLER:  Absolutely.

25             THE COURT:  You have the first opportunity.  If

```
 1    it's not reasonable, then --

 2              What time would you like to meet?

 3              MR. ZELLER:  Well, I think it really just depends

 4    on when we adjourn tonight.

 5              THE COURT:  We are not adjourning.

 6              MR. ZELLER:  No, I understand.  But I'm saying

 7    when we're done with this conversation, if we go off and do

 8    the prioritization right now, I mean, I assume that we can

 9    do it in approximately -- probably about an hour, hour and a

10    half.

11              THE COURT:  Tell me the time you need, and I'll

12    recess right now, and we'll meet at the time you tell me.

13              MS. BERRY:  7:30?

14              MR. ZELLER:  7:30, I think, makes sense.

15              MS. BERRY:  Your Honor, it's about 6:00.  He said

16    he needs an hour and a half, so that would make it 7:30.

17              THE COURT:  Don't ever take -- no.  I'm just

18    kidding you.  Timing means nothing here.

19              (Laughter.)

20              THE COURT:  They will just have to tell me when to

21    come back.

22              MS. HURST:  Your Honor, may I -- Ms. Berry, may I

23    make --

24              THE COURT:  No, you may not.  Just a moment.

25              MR. ZELLER:  Your Honor, I think 7:30 is
```

Case 2:04-cv-09049-DOC-RNB   Document 8766   Filed 09/22/10   Page 13 of 19   Page ID
#:272490
SACV 04-9049-DOC - 09/08/2010 - Vol. I

13

```
 1   reasonable.

 2           THE COURT:  All right.

 3           Now, Ms. Hurst.

 4           MS. HURST:  I just want to understand if

 5   "prioritization" means "elimination."

 6           THE COURT:  Yes, exactly.

 7           MS. HURST:  Okay.

 8           THE COURT:  It means dwindling down.

 9           MS. HURST:  Yeah, all right.  No problem, then,

10   because we need to get all the data at once, that's all.

11           THE COURT:  Now, you wanted all the data at one

12   time because you believe that your privilege review will be

13   much more economical; is that correct?

14           MS. HURST:  That's correct.

15           THE COURT:  So what are my time frames?  Just

16   because we have the information now from Archive One --

17           MS. HURST:  Until I know what the volume of data

18   is, I can't answer that question.

19           THE COURT:  And that was my question also.  That's

20   why -- in some ways I'm pleased with Bratz's run.  Larion

21   seems reasonable.  Wing seems totally out of control right

22   now, and that needs to be narrowed dramatically.  The other,

23   Brawer, I don't know yet.  I haven't asked in chambers.

24           MS. BERRY:  There's also two sets of data that can

25   be reduced from here.  The first is within the different
```

```
 1    custodians, there is going to be a certain amount of

 2    duplication where the same e-mail is sent to more than one

 3    custodian.  So there is going to be that simply within the

 4    data set without even looking at anything else.  That will

 5    be duplicated a certain amount.

 6              I also understand that one of the reasons that MGA

 7    wishes to receive the data in its raw state is because they

 8    believe they can hash it and match some of those e-mails and

 9    some of these items against items they've already reviewed,

10    which means those items won't have to be rereviewed.

11              MS. HURST:  That's correct.

12              MS. BERRY:  So they have at least -- if they get

13    it in bulk, they should be able to pair it down by somewhere

14    between at least a third and a half when they receive it.

15              MS. HURST:  From your lips to God's ears.

16              (Laughter.)

17              JUDGE SMITH:  Hashing, by the way, is a process by

18    which you can identify identical documents, and so that

19    wasn't clear.

20              And the other thing I think we need to add here is

21    that the Wing -- the difficulties with the Wing custodian

22    inbox -- or mailbox is solely related to the fact that it's

23    resident in the Archive One system.  Once that mailbox is

24    retrieved from the Archive One system through the process

25    that Ms. Berry has described with breaking it down into
```

Case 2:04-cv-09049-DOC-RNB Document 8766 Filed 09/22/10 Page 15 of 19 Page ID
#:272492
SACV 04-9049-DOC - 09/08/2010 - Vol. I

15

 1    smaller bites so that it facilitates the retrieval, once

 2    that data is retrieved, then it's not going to be any more

 3    difficult to process the Wing hard drive data than it would

 4    be Coleman or anybody else.  It's -- they are all the same.

 5    Maybe slightly longer because of the volume, but

 6    essentially, the process will go very quickly.

 7              THE COURT:  Finally, what's going to be done with

 8    the approximately 200 gigabytes of what appear to be

 9    incomplete information that's already been gathered?  In

10    other words, I'm not inclined to continue with that run.

11    I'm inclined to discontinue it.  I think it's almost

12    meaningless in terms of the discovery cutoff and deadlines,

13    and I think that, quite frankly, upon review, that we

14    shouldn't have started down that road at the beginning.  So

15    I'd rather just rectify what I think is a mistake now, but I

16    want to hear from Mattel.

17              MR. ZELLER:  Well, I mean, we're obviously dealing

18    with something in a vacuum, here, in terms of what this data

19    is, since obviously there hasn't been our participation in

20    it.  I do think that, at some level, MGA should be required

21    to look at this data and produce response of information.

22    The fact is is that this is a system, these are e-mails that

23    MGA has had for years.  They've been under obligation for

24    years to produce responsive, relevant documents.  We have in

25    our possession, your Honor, I mean, literally thousands of

 1    truncated e-mails that clearly are relevant to this case,

 2    including, for example, MGA's attempts to hire Salvias

 3    Senior (phonetic).  We do not have those complete e-mails.

 4            THE COURT:  Well, look at the benefits you have.

 5    If they are relevant, and you are able to produce partial

 6    e-mails that may be damning for MGA, it puts the burden on

 7    MGA to find those e-mails or to be accused by you in front

 8    of the jury of hiding.

 9            MR. ZELLER:  Yeah.

10            THE COURT:  So once again, I hear the complaint

11    and it only seems to be a benefit.

12            MS. HURST:  May I respond, your Honor?

13            THE COURT:  No, you may not.

14            You are to cease the run on the database -- this

15    archive to general database and archive --

16            MS. BERRY:  The term searches?

17            THE COURT:  -- and we'll simply hold the 200

18    gigabytes in abeyance.  That's a final ruling without

19    further argument by counsel.

20            How long will it take you to get me the docket

21    numbers on the issues that we've either resolved -- I mean,

22    just give me a time frame this evening or tomorrow night.

23            MR. MC CONVILLE:  We have it resolved, your Honor.

24    We've -- as I understand the Court's request, you wanted us

25    to go through those docket issues which has been resolved

1   without the Court's direct involvement.  We have those

2   docket numbers now.  We just don't know what form you'd like

3   them in.

4               THE COURT:  I want it written and signed by the

5   parties.

6               MR. MC CONVILLE:  Okay.  We can get that done.

7               THE COURT:  Just like you did the other night.

8               MR. MC CONVILLE:  Yes.

9               THE COURT:  And you can process -- most can be

10  processed in a similar period of time.

11              The letter is not consequential.  I'll get that

12  out to you in a moment.  It will take a five-minute

13  discussion.  There is no reason to hold you for that.  We've

14  got plenty of time, so that's the last thing we'll do

15  tonight, or whenever.

16              What about the motion to confer?  Have you reached

17  a stipulation in written form on that?  Have you started to

18  discuss --

19              MR. ZELLER:  We have.

20              THE COURT:  Have you submitted a stipulation to

21  the other side?

22              MR. ZELLER:  We have.

23              THE COURT:  Have you responded to that

24  stipulation?

25              MS. HURST:  We have.

SACV 04-9049-DOC - 09/08/2010 - Vol. I

18

```
1              THE COURT:  And there is no disagreement.

2              MS. HURST:  There is disagreement.

3              THE COURT:  There is disagreement?

4              MS. HURST:  I am not sure that we can reach a

5   stipulation on this, your Honor.  I -- you know --

6              THE COURT:  That's fine.

7              Well, listen, why don't I come back at 8:00?

8              MR. ZELLER:  Yes, your Honor.

9              THE COURT:  8:00?  Can you stay late?

10             MS. BERRY:  Yes.

11             THE COURT:  Jim?

12             JUDGE SMITH:  Yes.

13             THE COURT:  Excellent.  Thank you.  Okay, 8:00.

14             MS. HURST:  Thank you, your Honor.

15             (Recess.)

16             (Volume II is reported by Deborah Parker.)

17                           -oOo-
```

SACV 04-9049-DOC - 09/08/2010 - Vol. I

19

```
 1                           -oOo-

 2                        CERTIFICATE

 3

 4          I hereby certify that pursuant to Section 753,

 5   Title 28, United States Code, the foregoing is a true and

 6   correct transcript of the stenographically reported

 7   proceedings held in the above-entitled matter and that the

 8   transcript page format is in conformance with the

 9   regulations of the Judicial Conference of the United States.

10

11   Date:  September 15, 2010

12

13

14                         _____
                           JANE C.S. RULE, U.S. COURT REPORTER
15                         CSR NO. 9316

16

17

18

19

20

21

22

23

24

25
```