1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
5  Telephone:  (213) 443-3000
   Facsimile:   (213) 443-3100
6
7  Attorneys for Mattel, Inc., and Mattel de
   Mexico, S.A. de C.V.
8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10
                          SOUTHERN DIVISION
11

| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR PROTECTIVE ORDER RE DEPOSITION OF RON BRAWER** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 9D<br>Discovery Cut-off:  October 4, 2010<br>Pre-trial Conf:  January 4, 2011<br>Trial Date:  January 11, 2011 |

**Preliminary Statement**

Confirming that MGA brought its last-minute counterclaims-in-reply in bad faith and for the purpose of denying Mattel proper discovery into their lack of merit, MGA is flouting Order No. 99 by having refused to produce Ron Brawer, a long-time MGA executive at the center of those allegations. Thus, some three weeks after the Discovery Master issued Order No. 99 requiring Brawer to sit for deposition on September 23, 2010 and only days before his deposition, MGA brought a belated motion for protective order on the grounds that any further testimony would be cumulative because Mr. Brawer has already been deposed for multiple hours. MGA does not attempt to meet, and indeed does not even cite, the "good cause" standard for issuance of a protective order. Instead, it relies only on the number of hours of Brawer's prior testimony and a series of conclusory assertions, such as that Mattel has had "ample opportunity to question" Mr. Brawer and has "asked Mr. Brawer every conceivable question about the facts of this case…." MGA ignores, however, that it has produced more than 40,000 documents relating to Brawer since his last deposition that Mattel has never had an opportunity to question him on. And MGA fails to inform the Court that its purported "Counterclaims-In-Reply" make new and explicit allegations about Brawer himself that Mattel neither did nor had reason to question him on. MGA's procedurally and substantively frivolous motion should be denied.

**Statement of Facts**

<u>Without Leave Of Court, MGA Attempts To Spring New, Last-Minute Claims on Mattel.</u> On April 16, 2010, just after seeking an immediate end to discovery, MGA filed purported "Counterclaims-In-Reply" to Mattel's Fourth Amended Answer and Counterclaims. MGA's counterclaims contain dozens of paragraphs of hyperbolic and inflammatory allegations and raise a host of new factual issues that were not previously relevant to any claim or defense in this case. MGA alleges – quiet falsely – that it had "just discovered" its newly-filed claims "after the deposition testimony of Sal Villasenor on July 12, 2010." But this allegation is contradicted by its own allegations

elsewhere that Ron Brawer, MGA's former Executive Vice President of Sales and Marketing and later President of Europe, had knowledge of Villasenor and his alleged activities at least as early as 2004 while Brawer still worked for Mattel.[1]

<u>The Discovery Master Sets Brawer's Deposition for September 23, 2010.</u>  Six days after MGA filed its counterclaims, on August 23, 2010, the Discovery Master met with the parties concerning depositions that remained to be taken.[2]  In this conference, MGA sought and obtained permission to take numerous depositions relating to MGA's newly-filed counterclaims, including depositions of Matt Turetsky, Kelly Osier, Sharon Rahimi and Sal Villasenor.[3]  Mattel similarly sought certain depositions, including the deposition of Ron Brawer.  On August 25, the Discovery Master issued Phase 2 Discovery Matter Order No. 99, which scheduled Brawer's deposition for September 23, 2010.[4]  The Discovery Master also cautioned the parties in Order No. 99 that "it is incumbent upon the party contesting the deposition to obtain a ruling on a motion for a protective order prior to the deposition occurring; otherwise, the deposition shall go forward."[5]

<u>MGA Waits Over Three Weeks, then Objects to Order No. 99.</u>   For weeks following the issuance of Order No. 99, MGA did nothing.  It did not object to the Order within the 72-hour deadline for objecting to Discovery Master Orders, nor did it file a motion for a protective order regarding Mr. Brawer.  And, at the conclusion of the September 9, 2010 hearing, the Court asked counsel if there were additional discovery issues that necessitated the Court's attention, and each of MGA's lead counsel affirmed there were not.  Then, three and a half weeks after the Order issued and less than a

---

[1] MGA Entertainment, Inc.'s Reply to Fourth Amended Answer and Counterclaims, Including Affirmative Defenses and Compulsory Counterclaims-In-Reply for (1) Trade Secret Misappropriation, (2) Violation of the Racketeering Influenced and Corrupt Organizations Act, and (3) Wrongful Injunction, dated August 16, 2010, Dkt. No. 8583 at ¶ 20.
[2] Order No. 99 at 1.
[3] Order No. 99 at 3-4.
[4] Order No. 99 at 5.

week before the Brawer deposition was scheduled to go forward, MGA filed a belated motion for a protective order, and it did so without even attempting to meet and confer with Mattel. MGA did not attempt to explain its delay, nor did it argue that the grounds for the motion were previously unknown to it. Rather, the only ground MGA cited in its four-page motion was known to MGA even before Order No. 99 issued – the number of days and hours for which Brawer was previously deposed.[6] Moreover, in an apparent last-minute attempt to buy additional time and to improve the chances the Court would rule on its belated motion, MGA unilaterally announced only two days before Mr. Brawer's deposition was required to occur under Order No. 99 that he would be unable to attend.[7] MGA further tried to suggest that he would not be available until September 28 or 29, after the hearing currently scheduled for September 27 where MGA's improper counterclaim-in-reply will be at issue.[8] At a session with the parties on September 22, however, the Discovery Master re-set the deposition for September 26 after it was brought to his attention that MGA was disregarding the schedule set forth in Order No. 99.

## Argument

### I. MGA VIOLATED THE 72-HOUR RULE BY WAITING THREE WEEKS TO BRING ITS MOTION

Under the long-standing rule in this case, the parties are "afforded seventy two (72) hours within which to file objections to a Discovery Master order."[9] The Court has

---

[5] Order No. 99 at 2.
[6] Motion at 1.
[7] Email from Michael Zeller to Discovery Masters O'Brien and Hansen, dated September 21, 2010.
[8] Id.
[9] Order Regarding Request for Extension of Time as to Discovery Matter Order Nos. 89/91, dated February 10, 2010, Dkt. No. 7482 at 2. See also Order Granting in Part and Denying in Part Ex Parte Application to Clarify or Suspend 72 Hour Deadline to Appeal Special Discovery Master Privilege Rulings in Deposition of Bring Wing, dated February 20, 2010, Dkt. No. 7540; Order Granting in Part and Denying in Part Motion to Overrule Certain Discovery Master Rulings at the Deposition of Brian Wing, dated March 5, 2010, Dkt. No. 7616.

observed that any objections filed outside this window will be stricken as untimely.[10] Disregarding this rule and the Discovery Master's express admonishment in Order No. 99 that "it is incumbent upon the party contesting the deposition to obtain a ruling on a motion for a protective order,"[11] MGA waited over three weeks to file its conclusory four-page motion. MGA has not even attempted to offer an excuse for its delay – nor could it since it was aware of all the facts it now asserts in its motion even before Order No. 99 issued – and its motion should be denied as untimely.

## II. MGA FAILS TO ESTABLISHED GOOD CAUSE FOR A PROTECTIVE ORDER, AND THERE IS NONE

On a motion for a protective order, the party seeking to limit discovery is "required to carry a heavy burden" of establishing the grounds for the order. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975). Specifically, the Federal Rules require that the moving party establish "good cause" for the issuance of the order. Fed. R. Civ. P. 26(c)(1). "Good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." Traynor v. Liu, 495 F.Supp.2d 444, 452 (D. Del. 2007) (citing Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)) (internal citations omitted). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." Foltz v. State Farm Mut. Aut. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003).

Far from establishing good cause, MGA's motion offers only one reason why Mr. Brawer, a central witness in this case with wide-ranging knowledge of the facts, should be excused from further deposition. Based solely on the number of hours of Mr. Brawer's previous testimony – including testimony when he was designated by MGA

---

[10] Order to Show Cause Re Objections to Discovery Master's Privilege Rulings During Deposition of Michael Moore, dated February 23, 2010, Dkt. No. 7551 at 1.
[11] Order No. 99 at 2.

as a 30(b)(6) witness[12] – MGA argues that Mattel has had "ample opportunity to question" Mr. Brawer and has "asked Mr. Brawer every conceivable question about the facts of this case…." Therefore, MGA argues, any further testimony by Mr. Brawer would inherently be cumulative.

Not once, however, does MGA cite Mr. Brawer's deposition transcript. Not once does it address the allegations by either party that relate to Mr. Brawer, including in MGA's newly minted but long-concealed counterclaims-in-reply. Nowhere does MGA provide any specific factual support for its remarkable claim that Mattel has already asked Mr. Brawer "every conceivable question" about his role in the facts of this case. Instead, MGA argues simply, and erroneously, that the number of hours of Mr. Brawer's prior testimony establishes that further testimony would be cumulative and that a protective order is necessary. Hours of prior testimony alone, however, does not establish good cause. Peacock v. Merrill, 2007 WL 1521642, *2 (S.D. Ala. 2007) (good cause for protective order not established even where plaintiff sought potentially 42 hours of additional testimony).

In fact, MGA has produced over 40,000 documents referencing Brawer since he was last deposed, including, among other important documents, an email Larian forwarded to Brawer referring to MGA's "spies" at Mattel's headquarters[13] and an email between Brawer and Cooney discussing internal Mattel information shortly after Cooney joined MGA.[14] Additionally, MGA promised to produce even more documents about Brawer in response to requests specifically targeting information regarding

---

[12] Putting aside that MGA itself designated Brawer to testify as a 30(b)(6) witness, 30(b)(6) testimony is not considered cumulative of individual testimony. See Mitchell Eng'g v. City and County of San Francisco, 2010 WL 455290, *1 (N.D. Cal. 2010) (granting motion to compel 30(b)(6) testimony in spite of potential overlap with individual witness depositions); Sabre v. First Dominion Capital, LLC, 2001 WL 1590544, *1 (S.D.N.Y. 2001) ("A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual").
[13] MGA2 1776280-81.
[14] MGA2 1927994-95.

Brawer[15] and nearly 500 documents from Brawer's own hard drive were produced a month after Brawer was last deposed.[16] Mattel has had no opportunity to ask questions of Mr. Brawer about these documents or about the results of the forensic analysis of his hard drive that has now occurred.

Nor has Mattel had an opportunity to question Mr. Brawer about MGA's purported new "Counterclaims-In-Reply," which MGA filed after Mr. Brawer was last deposed and which place at issue a host of facts that were not previously relevant to any claims or defenses in this case. For instance, though MGA previously alleged in its unclean hands defense that Mattel "gain[ed] access, or attempt[ed] to gain access, to MGA showrooms [and] Toy Fair displays on false pretenses,"[17] it was not until after Brawer's last deposition that MGA sought to bring a claim based on this allegation for trade secret misappropriation.[18] Unlike the unclean hands defense, MGA's purported new trade secret claim requires MGA to show, among other things, that its alleged trade secrets were "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy." Cal. Civ. Code § 3426.1(d)(2). Thus, MGA now squarely places at issue the steps it took to secure its showrooms and whether those steps were reasonable, a topic about which Brawer has extensive knowledge as MGA's former Executive Vice President of Sales and Marketing[19] and as a frequent attendee of MGA's Toy Fair showrooms.[20]

---

[15] MGA Entertainment, Inc.'s Response to Mattel, Inc.'s Requests for Production Re Ron Brawer, dated August 25, 2010.

[16] Email from Diane Barry to Joseph Sarles and Warrington Parker, dated July 29, 2010.

[17] Amended Answer and Affirmative Defenses of MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE De Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, dated September 19, 2007, Dkt. No. 1005 at 20.

[18] Counterclaims-In-Reply at ¶¶ 304-312.

[19] Brawer Dep. Tr. at 9:13-18.

[20] See, e.g., Brawer Dep. Tr. at 315:20-25, 630:11-13, 1016:12-13, 1554:1-1555:4, 1625:20-1626:3.

MGA's counterclaims also allege for the first time that MGA is entitled to damages for Mattel's purported misappropriation of trade secrets.[21] The only affirmative claim MGA previously pled based on Mattel's purported access to MGA showrooms is its unfair competition claim, and MGA may not recover damages under this claim. U.S. v. Sequel Contractors, Inc., 402 F.Supp.2d 1142, 1156 (C.D. Cal. 2005) (remedies available under Cal. Bus. and Prof. Code § 17200 "are limited to injunctive relief and restitution"); Hodge v. Superior Court, 145 Cal.App. 4th, 278, 284 (2006) (under section 17200 "[p]revailing plaintiffs are generally limited to injunctive relief and restitution. Damages are not available.") (internal quotes and citations omitted); see also People ex rel City of Santa Monica v. Gabriel, 112 Cal.Rptr.3d 574, 579 (2010) (citing Hodge). As former EVP of Sales and Marketing for MGA, Brawer also possesses knowledge about the performance over time of MGA's products and can thus speak to MGA's purported damages.

Finally, after alleging in signed pleadings since 2007 that Mattel "gain[ed] access, or attempt[ed] to gain access, to MGA showrooms [and] Toy Fair displays on false pretenses,"[22] MGA's counterclaims-in-reply now allege that MGA "just discovered [this conduct] after the deposition testimony of Sal Villasenor on July 12, 2010...."[23] Elsewhere, however, MGA concedes that Brawer was aware of Villasenor's alleged practice of visiting Toy Fair showrooms at least as early as 2004 from his work at Mattel.[24] Additionally, documents recently produced by MGA show that, after Brawer began working for MGA, Brawer and others at MGA pursued hiring Villasenor and interviewed him.[25] Other documents show that Larian was interested in

---

[21] Counterclaims-In-Reply at 51.
[22] Amended Answer and Affirmative Defenses of MGA Parties, dated September 19, 2007, Dkt. No. 1005 at 20.
[23] Counterclaims-In-Reply at ¶ 6.
[24] Id. at ¶ 20.
[25] MGA2 3297371; MGA2 3297372-3; MGA2 3297374-5; MGA2 3297376; MGA2 3297377; MGA2 3297378; MGA2 3297379; MGA2 3297380; MGA2 3297382.

talking to Villasenor.[26] Based on this evidence, Brawer undoubtedly has knowledge regarding when MGA learned of Villasenor's alleged activities. Unlike when the issue was presented as an unclean hands defense, these facts about what Brawer and therefore MGA knew and when he knew it are highly relevant to the statute of limitations and laches bar to MGA's counterclaims-in-reply. Having itself put these new allegations at issue after Brawer's last deposition, MGA's pronouncement that there are "other, more pressing endeavors in this case" rings hollow. (Mot. at 4). Mattel is entitled to explore the basis for MGA's claims. See Collins v. Int'l Dairy Queen, 189 F.R.D. 496, 498 (M.D. Ga. 1999) (re-examination of two witnesses likely to provide information not obtainable at prior deposition due to the addition of new claims).

MGA's motion should be denied.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that MGA's Motion be denied.

DATED: September 23, 2010  QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[26] MGA2 3297381.