1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
5  Telephone:  (213) 443-3000
   Facsimile:  (213) 443-3100
6
7  Attorneys for Mattel, Inc., and Mattel de
   Mexico, S.A. de C.V.

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     SOUTHERN DIVISION

11

| | |
|---|---|
| 12  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| 13 | Consolidated with |
| | Case No. CV 04-09059 |
| 14            Plaintiff, | Case No. CV 05-02727 |
| 15      vs. | Hon. David O. Carter |
| 16  MGA ENTERTAINMENT, INC., a California corporation, et al., | **[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL** |
| 17 | |
| 18            Defendant. | |
| 19 | Hearing Date:   September 27, 2010 |
| 20 | Time:            5:00 p.m. |
|     AND CONSOLIDATED ACTIONS | Place:           Courtroom 9D |
| 21 | Discovery Cut-off:   October 4, 2010 |
| 22 | Pre-trial Conf:      January 4, 2011 |
| | Trial Date:          January 11, 2011 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      MATTEL HAS NOT WITHHELD ANY RELEVANT DISCOVERY ...........1

    A.      Production of Custodial Documents........................................................1

    B.      Mattel Has Produced Responsive Documents Related to the Market Intelligence Groups........................................................................2

    C.      Searches For "Villasenor," "Rahimi," and "B Box" Across Mattel's Collection Database Is Vastly Overbroad................................4

    D.      Requests Seeking Information Pertaining to Villasenor's Activities....................................................................................................4

II.     MGA'S SUBPOENAS TO THIRD PARTIES ...........................................6

III.    MATTEL HAS ALREADY SEARCHED ITS EMAIL SECURITY SYSTEM, AND THE COURT AND SPECIAL MASTER HAVE REPEATEDLY REJECTED THE OVERBROAD SEARCH TERMS MGA SEEKS TO APPLY HERE ......................................................................8

IV.     ADDITIONAL DEPOSITIONS SHOULD BE REJECTED...........................9

V.      MGA'S DEMAND FOR A PRIVILEGE LOG OF POST-FILING COMMUNICATIONS SHOULD BE DENIED ........................................... 10

VI.     DRAFTS OF MATTEL'S SETTLEMENT NEGOTIATIONS WITH VARGAS ARE NOT DISCOVERABLE ....................................................... 12

VII.    MATTEL WILL CONTINUE TO PRODUCE NATIVE FORMAT DOCUMENTS UPON REQUEST PROVIDED MGA DOES AS WELL ....................................................................................................... 13

VIII.   BRATZ/BRYANT DOCUMENTS.............................................................. 14

    A.      MGA's Request for a Supplemental Interrogatory Response on Copyright Issues is Premature and Unnecessary.................................. 14

    B.      Mattel Does Not Possess Any Mattel Hard Drive Issued to Bryant ................................................................................................... 15

    C.      The Court Has Already Rejected Topic 26 ......................................... 15

IX.     MATTEL HAS NOT WITHHELD TRAPEZOIDAL PACKAGING DOCUMENTS........................................................................................... 16

X.      THE COURT HAS ALREADY DENIED MGA'S MOTION TO COMPEL RELATING TO LICENSING....................................................... 17

XI.     MATTEL HAS COMPLIED WITH COURT ORDERS............................... 17

1       A.    Mattel Has Produced Its Fee Agreements ............................................ 17

2       B.    Mattel Has Produced The Market Research Reports MGA Requests Here to the Extent They Could Be Located ......................... 17

XII.   MGA'S REQUESTS FOR ADMISSION ARE IMPROPER ...................... 18

       A.    MGA's Amended Third Set Are Not Proper RFAs ............................. 18

       B.    Mattel Objected to MGA's Fourth Set RFAs...................................... 20

# I.   **MATTEL HAS NOT WITHHELD ANY RELEVANT DISCOVERY**

MGA misstates the facts regarding its newly-minted "Counterclaims-in-Reply" and the completeness of Mattel's production. In fact, Mattel has conducted reasonable searches for responsive documents and has complied with its discovery obligations.

## A.   **Production of Custodial Documents**

MGA accuses Mattel of non-compliance with Discovery Matter Order No. 89 by failing to produce documents from certain custodians. But Mattel is in compliance with Order No. 89.[1] The background is as follows: On August 3, 2010, the Court ruled on the scope of Mattel's production obligations pursuant to Discovery Master Order Nos. 89/91 and expressly rejected MGA's request that Mattel search the files of 35 additional individuals.[2] Those individuals included Ms. Osier (Dermody), Ms. Sadigh, Mr. Shore, Mr. Turetzky, and Mr. Vollero, whom MGA now claims Mattel has improperly failed to search.[3] There is nothing improper about the fact that Mattel has not produced custodial documents for these individuals – the Court ruled that they need not be searched.[4]

Three other individuals that MGA lambasts Mattel for having "produced nothing from" (Motion at 7:15) – Jeff Lange, Candace Chang, and Tyler Snyder – were also not included in the custodian list compelled by the Court, not surprisingly since MGA did not even *request* that these individuals be searched. Pursuant to the Court's May 25, 2010 Order, MGA submitted a list of 246 custodians it wished Mattel to search[5] – and these three individuals were not on it.[6] Nor is MGA's omission of them surprising,

---

[1]   The Court's September 17, 2010 Order compelled Requests that expanded the scope of Mattel's production obligations. Responsive documents from additional custodians are currently being collected and will be produced pursuant to that Order.
[2]   See Dkt. No. 8459 at 2.
[3]   See Dkt. No. 8075-1 at 8.
[4]   And, in fact, Mattel has produced custodial documents for Michael Shore, as MGA itself concedes. Motion at 5:4-5.
[5]   See Dkt. No. 7961 at 4-5.
[6]   See Dkt. No. 8075-1, Appendix A.

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1   considering that they left Mattel in July 1996 (Mr. Lange), August 1997 (Ms. Cheng),
2   and March 2002 (Mr. Snyder).[7]  Sharon Rahimi was also not included in the Court's
3   August 3 Order or in MGA's requested list of custodians.[8]  She has not been a Mattel
4   employee since 2003, and as an outside consultant does not have an office at Mattel.[9]

5       As for Carey Plunkett, Mattel has not been compelled to produce documents
6   from her custody.[10]  Nevertheless, as MGA concedes, Mattel **has** produced custodial
7   documents for Ms. Plunkett.  Motion at 5:4-6.  MGA also admits that Mattel has
8   produced custodial documents from Jerome Bossick.  MGA does not, and indeed
9   cannot, point to any deficiency in that production.

10      **B.    Mattel Has Produced Responsive Documents Related to the**
11             **Market Intelligence Groups**

12      Despite MGA's meritless accusations, the Court has confirmed that Mattel is not
13  improperly "withholding" documents by refusing to produce Market Intelligence Group
14  documents and communications relating to toy companies other than MGA.  See Dkt.
15  No. 8751 at 2.  The Court considered all of MGA's arguments and rejected each in turn,
16  holding that such matters are irrelevant and that "discovery in this case should be
17  narrowly construed to encompass only the relationship between the two parties."  Id.
18  MGA already has relevant documents – i.e., those related to MGA – as is clear from the

19

20

---

21  [7]  See M 1679499-9500, M 1681216, and M 1679708, respectively.
    [8]  See Dkt. No. 8459 and 8075-1, Appendix A.
22  [9]  See Rahimi Depo. at 12:11-20.
    [10] The Court's August 3 Order does not compel Mattel to search the custodial
23  records of the 38 individuals on Dkt. No. 8075-1 at 8 – MGA admits as much – and
    Mattel has never agreed to search them.  Mattel conditioned its agreement to search
24  those custodians on MGA's agreement to withdraw its request for Mattel to search the
    35 "Additional Individuals" listed at Dkt. No. 8075-1 at 8.  MGA did not withdraw
25  those "Additional Individuals," so Mattel did not agree to the 38.  That the Court
    rejected the 35 is not grounds for MGA to seek the benefit of the bargain it did not
26  make. Nor did Mattel "concede[] the relevance" of those individuals. Considering that
    Mattel has already been ordered to search 173 custodians, which is far more than MGA
27  has ever searched, it would be inequitable to burden Mattel with an additional 38 whose
    relevance has not been shown, or even argued.
28

1  voluminous documents and testimony cited in its Motion.  MGA does not identify any

2  documents related to MGA that are missing from Mattel's production.

3        Instead, MGA fills its Motion with false and misleading statements.  For

4  example, MGA claims that Mr. Villasenor sent his resignation email "to Mattel's

5  counsel, John [sic] Corey, Mark Kimball, copying Michael Moore."  Motion at 3:4-8.

6  Not so.  The email was not sent to Jon Corey, nor was Mr. Corey copied on it.[11]

7        The email MGA cites as "prov[ing] false" Mr. Villasenor's testimony about his

8  acquisition of MGA-related information from Toy Fairs (Motion at 2:19-3:2) does no

9  such thing.  First, MGA misstates his testimony, claiming he testified that he had

10  "███████████████████████" (Motion at 2:19-20).  In fact, Mr. Villasenor

11  testified that he "████████████████████████████."[12]  Second,

12  nothing in the email cited by MGA contradicts this testimony, or Mr. Villasenor's

13  testimony that ███████████████████.  In the email, Mr. Villasenor

14  wrote that he "████████████████████████" and had been "████████

15  ████████████████████████████████████████████,"[13]

16  The email then ████████████████████████████,"[14]

17  There is no indication from the email that Mr. Villasenor obtained any MGA-related

18  materials from a private MGA showroom or gallery.  Nor is it even clear what

19  materials, if any, Mr. Villasenor obtained related to MGA.  Assuming Mr. Villasenor

20  obtained anything relating to MGA from that Toy Fair at all, it could have been from

21  any number of other sources – public tables, retailers or members of the media, or

22

23

24     [11]  See M 1679755.

25     [12]  Villasenor Depo., Vol. 1, at 74:7-8 (emphasis of portion omitted by MGA added).  Moreover, MGA itself has cited testimony from Mr. Villasenor's deposition in

26  which he ███████████████████████  See Dkt. No. 8652 at 7:13-14.

27     [13]  See M 1759141-42.

28     [14]  Id.

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1  promotional materials distributed to all attendees.[15]  MGA was able to question Mr.

2  Villasenor about these matters over two days, the latter session ending at 1:47 in the

3  morning, and he consistently testified that he did not acquire any information from

4  MGA showrooms.

5        **C.**    **Searches For "Villasenor," "Rahimi," and "B Box" Across Mattel's**

6                **Collection Database Is Vastly Overbroad**

7        The Court has ruled that Market Intelligence Group activities not related to MGA

8  are not relevant to this litigation.[16]  MGA's request that ILS run these three search

9  terms across Mattel's collection database and that all non-privileged documents be

10  produced regardless of relevance is nothing more than an end-run around the Court's

11  express ruling.   There is no precedent for MGA's request that all documents

12  mentioning the names of particular Mattel employees or a particular company be

13  produced.[17]

14        **D.**    **Requests Seeking Information Pertaining to Villasenor's Activities**

15        <u>Non-MGA Presentations and Communications.</u>  The Court has already held these

16  documents and videos are irrelevant, and that Mattel need not produce them.[18]

17        <u>Personnel Files.</u>  Mattel has already produced personnel files for Mr. Villasenor,

18  Mr. Lange, Ms. Plunkett, Ms. Osier, Ms. Chang, and Mr. Snyder.  MGA's suggestion

19  that these personnel files are incomplete because they do not contain every expense

20

---

21      [15]  <u>See</u>, <u>e.g.</u>, Villasenor Depo., at 111:5-10 ("There was a daily magazine that was given out at the Toy Fair every day for the – I guess, for six or seven days straight,

22  whatever it was.  And we would learn a lot from that.").  MGA also claims that Mr. Villasenor testified that he used the "fake name[] Anthony Villa" on the "fake

23  credentials used to obtain this information" in 2004.  Motion at 3:2-4.  But Mr. Villasenor's actual testimony was that he used his real name at Toy Fairs at all times

24  after the year 2000.  <u>See</u> Villasenor Depo., Vol. 1, at 91:1-6.

25      [16]  <u>See</u> Dkt. No. 8751.
    [17]  Further, contrary to MGA's insinuations, ILS has determined that there is no spoliation or deletion patterns on Mr. Eckert's hard drives.  <u>See</u> September 17, 2010

26  Status Report No. 5.  It is MGA's hard drives, including Gustavo Machado's and Brian Wing's, on which ILS determined spoliation has occurred.  <u>See</u> Report of Technical

27  Advisor International Litigation Services, Inc., dated July 12, 2010; Report of Technical Advisor's International Litigation Services, Inc., dated September 20, 2010.

28

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1  report ever submitted by the personnel (Motion at 11:13-20) is wholly unsupported –

2  personnel files do not contain expense reports.  Nor is MGA correct that Mattel has

3  produced "no documents regarding Chang or Snyder" – in fact, their personnel files

4  were produced at M1681215-168252 and M 1679650-1679718, respectively.

5      Ms. Rahimi's Vendor File.  MGA seeks documents relating to Mattel's decision

6  to hire Ms. Rahimi, an independent contractor.   MGA speculates that Mattel's

7  production of Ms. Rahimi's vendor file is inadequate because she has access to a

8  "mattel.com" email address and therefore "is more than a 'vendor.'"  Motion at 11:22-

9  24.   MGA has made no showing that Mattel's production of the vendor file is

10  incomplete or inadequate, nor offered any evidence contradicting Ms. Rahimi's

11  testimony that she was an independent contractor.[19]

12      Documents Regarding Products Used or Referenced in Toy Fair Reports.  This

13  category of documents sought by MGA is vastly overbroad, as MGA products

14  purchased at retail (for example) and used in reports are not "ill-gotten" (Motion at

15  12:4-6) and therefore not relevant to MGA's "Counterclaims-in-Reply."

16      Expense Reports.  MGA's request for "proof of payment of costs for printing

17  business cards" is fatally vague.  Mattel agreed to produce expense reports.  A search

18  for "proof of payment of costs" would be impracticable and unduly burdensome.

19      Documents Relating to "The Toy Shop".   Mattel has produced relevant

20  documents relating to "The Toy Shop," "The Toy Tree" and "The Toy Harbor," and

21  continues to search for and produce relevant documents.  MGA's request for all

22  documents relating to "The Toy Shop," regardless of relevance to MGA,  is overbroad.

23      Negative Advertising and Scooter Shannon Requests.   These requests are

24  overbroad, and MGA does not show how they are relevant as phrased.  All documents

25  "constituting, referring or relating to [Mattel's] conception, development and design of

26

27  [18]  See Dkt. No. 8751.
   [19]  Rahimi Depo. Rough Tr., dated September 16, 2010, at 12:11-18.
28

00505.07975/3692918.1

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1    Scooter Shannon" encompass broad categories of documents not relevant to any issue
2    in this case – nor does MGA provide any basis for why it is "narrowly tailored" to
3    MGA's interference claims. Similarly, MGA's requests "referring or relating to any
4    negative advertising or public relations efforts about Bratz, Little Tikes or MGA or any
5    of its products" is overbroad in that is not limited to Mattel's alleged activities, but
6    seeks documents that refer to any negative advertising or public relations, regardless of
7    source or cause.

8        Request No. 389. Mattel agrees that documents and communications that
9    evidence or memorialize MGA's disclosure of Mattel's trade secrets to retailers are
10   relevant, and has produced such documents. To the extent this Request is broader than
11   that category of documents, MGA has made no showing of relevance, nor could it.

12   **II.    MGA'S SUBPOENAS TO THIRD PARTIES**

13       MGA complains about the lack of production from its third party subpoenas, but
14   does not point to any supposed deficiencies in the responses to them. Further, MGA
15   makes no argument why its overbroad subpoenas are relevant and does not address the
16   third parties' and Mattel's objections to them. Many of the requests in MGA's
17   subpoenas are facially overbroad, asking, for example, for all documents referring or
18   relating to MGA. Moreover, these third parties are represented by separate counsel, but
19   MGA has apparently not served them with this Motion or asked them to respond.

20       Subpoena to Mr. Villasenor and His Attorney. Mr. Villasenor and Mr. Barrera
21   had not produced documents as of the filing of MGA's Omnibus Motion because their
22   responses were not yet due. MGA waited over a month after Mr. Villasenor's
23   deposition to serve him and his attorney with document subpoenas. See Rutowski
24   Declaration at ¶¶ 6-7.

25       Subpoena to Sauer & Wagner LLC. MGA's requested relief is moot. Sauer &
26   Wagner responded to MGA's subpoena and produced responsive documents on
27   September 17, 2010. MGA has not identified any deficiencies with this production.

28

1        <u>Subpoena to Matthew Bousquette.</u>  Mr. Bousquette has also already responded to

2    his subpoena.  MGA cannot identify any deficiencies with his production, beyond his

3    supposedly "false" testimony concerning Mr. Villasenor.  But there is nothing

4    surprising or implausible about the fact that Mr. Bousquette did not remember Mr.

5    Villasenor.  Mr. Bousquette was President of Mattel Brands.  He sent and received

6    hundreds of emails a day on dozens of subjects.  Mr. Villasenor was many levels of

7    management removed from Mr. Bousquette, reporting to someone who reported to

8    someone who reported to Mr. Bousquette.[20]  Moreover, Mr. Bousquette has not worked

9    at Mattel for almost five years, and is currently running his own company.  The fact that

10   Mr. Bousquette received an email from Mr. Villasenor in 2003 does not "belie"

11   (Motion at 3:23) Mr. Bousquette's testimony that he did not remember one employee

12   out of literally hundreds who sent him emails seven years ago.  Nor does this email

13   provide any reason to conclude that Mr. Bousquette would still have emails from Mr.

14   Villasenor that he had failed to produce in response to MGA's subpoena.

15       <u>Subpoena to Matt Turetzky.</u>  MGA demands a "full production" from Mr.

16   Turetzky in response to its subpoena, but fails to identify any documents that are

17   missing from the production he has made or any allegedly erroneous objections.

18       <u>Subpoenas to Sharon Rahimi.</u>  MGA seeks "production [] in response to its

19   subpoena" to Ms. Rahimi.  But Ms. Rahimi has already made this production.  Indeed,

20   at her deposition MGA examined her on numerous documents from her production, and

21   she confirmed that she had searched her files for all relevant records.[21]

22       <u>Subpoena to Kelly Osier Dermody.</u>  MGA admits that Ms. Dermody has already

23   produced documents in response to the subpoena.  Motion at 6:10-12.  Because Ms.

24   Dermody has not been a Mattel employee since 2004, there is no basis to challenge the

25   adequacy of her production simply because it is not hundreds of pages.

26

27   [20]  <u>See</u> M 0254411, M 0254407, and M 0254365.

28   [21]  <u>See</u> Rahimi Depo., at 168:23-169:10; Deposition Exhibit Nos. 9587 and 9592.

1   <u>Subpoena to Jerry Bossick.</u>  Despite claiming that it has "tried to track down the

2   authorship of The Bratz Brief for years," MGA did not serve its subpoena on Mr.

3   Bossick until August 25, 2010.  <u>See</u> Rutowski Declaration, ¶ 13.  Mattel provided

4   30(b)(6) testimony identifying Mr. Bossick as a co-author of the Bratz Brief on June

5   30, 2010.[22]  MGA does not point to any inadequacy in Mr. Bossick's production in

6   response to the subpoena.  Moreover, Mattel has produced documents in Mr. Bossick's

7   custody from Mattel's files and systems,[23] and is complying with the Court's

8   September 17, 2010 Order regarding documents related to Mr. Bossick and the "Bratz

9   Brief."[24]

10  **III.  <u>MATTEL HAS ALREADY SEARCHED ITS EMAIL SECURITY SYSTEM, AND THE COURT AND SPECIAL MASTER HAVE REPEATEDLY REJECTED THE OVERBROAD SEARCH TERMS MGA SEEKS TO APPLY HERE</u>**

11

12  MGA's motion deceptively suggests that Mattel's email security tool has not

13  been searched, but that is false.  As MGA knows full well, in the resolution of Mattel's

14  Objections to Order Nos. 89/91, Mattel agreed to search the electronic files of some 173

15  custodians identified by MGA, and for each of those 173 individuals, Mattel

16  specifically searched its email security tool for relevant information.[25]  Each of these

17  individuals' files, including their emails captured by the security tool, were searched for

18  information responsive to hundreds of MGA requests for production.  <u>See</u> Dkt. No.

19  8459, at 2 (compelling searches as to requests listed in Appendices B, C, and portions

20  of D, E, and F).  The Court rejected MGA's request for searches as to an additional 35

21  individuals.  <u>Id.</u>  In accordance with the Court's Order, Mattel and its attorneys spent

---

22  <u>See</u> Storie Depo., Vol. 7, [30(b)(6)], at 1779:9-25.
23  <u>See, e.g.,</u> M 1692861-2923; M 1743090-3146; M 1747492-7806; M 1765688 - 5985; M 1768899-770313; M 1771909-72086; M 1773455-76870; M 1778393- 8446.
24  <u>See</u> Dkt. No. 8756 at 2.
25  <u>See</u> Order on Pending Discovery Motions [Dkt. No. 8459], at 1 (ordering search of 173 individuals identified by MGA); MGA's Submission Pursuant to May 25, 2010 Order [Dkt. No. 8075], at 1 and Appendix A (listing the 173 individuals and acknowledging that, among other electronic sources, Mattel will search for each individual "emails captured by Mattel's email security system").

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1    thousands of hours searching, reviewing, and producing the responsive documents for

2    these 173 individuals, including from the email security tool.   MGA makes no

3    argument that Mattel is out of compliance.

4        Instead, MGA ignores the Court's prior Order and seeks another bite at the apple,

5    attempting to compel a search of the entire security tool with 25 overbroad search

6    terms, despite the fact that the emails of 173 individuals have already been searched for

7    all documents responsive to MGA's document requests.   Even if MGA's attempt to

8    seek reconsideration and expansion of the Court's prior order were entertained, its

9    request is improper for several reasons.   First, MGA's request would involve enormous

10   amounts of duplication, as the vast majority, if not all, of the responsive information

11   was captured in the prior searches of 173 individuals in response to hundreds of

12   document requests.   Second, the terms MGA proposes are grossly overbroad; indeed,

13   many are the same terms this Court and the Special Master have rejected as overbroad

14   even for much more limited electronic searches.[26]

15   **IV.   ADDITIONAL DEPOSITIONS SHOULD BE REJECTED**

16       MGA seeks additional 30(b)(6) testimony on "Mattel's access to competitors'

17   information," a topic that is overbroad and irrelevant.[27]   In any event, the only questions

18   to which MGA points as supposed evidence of unpreparedness all sought information

19   plainly outside the scope of the topic.   Although the topic seeks information concerning

20   Mattel's "receipt" of certain information, MGA's questions sought information

21   concerning whether that information would "help" Mattel, "why" Mattel would seek

22   such information, whether Mattel provides nonpublic information to retailers, and

23

24   _____

25   [26]    See, e.g., September 20, 2010 Order Re Eckert Hard Drive Search Terms
     (rejecting terms to be used in searching the media of Robert Eckert such as "board",
26   "directors" and others that MGA seeks to use here across MGA's company-wide email
     security tool).

27   [27]    See Order on August 10, 2010 Discovery Motions and Related Matters, dated
     September 17, 2010 [Dkt. No. 8751], at 1-4 (ruling that discovery as to competitors
28   other than MGA is irrelevant).

1  whether Mattel employees ever used fake IDs to gain access to showrooms.[28]  None of

2  these questions concerned the noticed topic; if MGA desired information on whether

3  and why competitive information might help Mattel and whether Mattel provides

4  nonpublic information to retailers, MGA could have noticed that topic, but it did not.

5  The witness was prepared on the noticed topic.

6      MGA also seeks to depose Mattel's in-house counsel concerning his "discussions

7  with Villasenor and Turetzky regarding the ethics and legality of their practices." Mot.

8  at 13. On its face, MGA's request seeks privileged attorney-client communications and

9  attorney work-product, including counsel's legal conclusions about the "ethics and

10  legality of their practices." Mr. Moore has been deposed at length in this action

11  already. MGA's motion to resume his deposition so that it can delve into privileged

12  communications and work product should be rejected.

13  **V.   MGA'S DEMAND FOR A PRIVILEGE LOG OF POST-FILING COMMUNICATIONS SHOULD BE DENIED**

14

15      MGA seeks to selectively ignore the parties' long-standing agreement that

16  privileged communications dated after the commencement of the lawsuit are not to be

17  logged. Indeed, the April 27, 2004, logging cut-off date has been endorsed by the

18  Court, the prior Magistrate Judge, the former Discovery Master, and the current

19  Discovery Master.[29] MGA has consistently argued that the date of filing of this lawsuit,

20

21

22  [28]  Rutowski Decl., ¶ 20.

23  [29]  See Order Denying Mattel's Motion for Protective Order Limiting the Temporal
     Scope of Its Privilege Log, dated May 6, 2008, Dkt. No. 3498, at 5:3-5 (setting April
     27, 2004, as the cutoff for logging); Order Regarding Various Discovery Motions,

24  Applications and Other Matters Upon Which the Court Ruled on May 21-23, 2008,
     dated May 27, 2008, Dkt. No. 3887, at 2:10-14 (upholding the March 10, 2008

25  Discovery Master Order setting April 27, 2004, as the cutoff date for logging); Phase 2
     Discovery Matter Order No. 58, dated Sept. 8, 2009, Dkt. No. 6611, at 9-10

26  ("consistent with the parties' prior agreements and practice in this litigation, Mattel
     need not log privileged documents that were created after April 27, 2004"); Meet and

27  Confer Tr., dated June 20, 2006, at 39:21-40:1 (presided over by Magistrate Judge
     Block).

28

00505.07975/3692918.1

-10-

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1    April 27, 2004, should be used as the cut-off date for logging withheld privileged

2    documents.[30]  MGA's present counsel has expressly adopted this position, stating:

> I think there are a number of orders and agreements between the parties on what does or does not have to be logged as privileged, and I believe there's a cutoff date on that that would be applicable here. ***We are certainly willing to adhere to any prior orders or agreements on that in terms of logging any privileged material.***[31]

6    Indeed, when Mattel questioned MGA's withholding of allegedly privileged

7    communications with Omni 808, lead counsel for MGA argued that they need not be

8    logged because ***"any such documents would clearly be dated after the initiation of***

9    ***this action."***[32]  MGA's lead counsel continued:  "Is Mattel now repudiating the

10    agreement that documents dated after the action need not be placed on a privilege

11    log?"[33]

12       Having adopted the cut-off for six years of litigation and resisted logging any

13    post-filing communications, MGA now attempts to "repudiat[e] the agreement"[34] at the

14    eleventh-hour to gain an upper hand in discovery.  MGA's request for logging is vastly

15    overbroad and unduly burdensome, seeking information this Court has already ruled

16    irrelevant.   MGA initially states it seeks logging of communications "regarding

17    Mattel's efforts to obtain confidential information from its competitors," and later states

18    it seeks logging of communications regarding anyone "at Mattel involved in obtaining

19    competitive information from toy fairs or through improper means."   Mot. at 14.

20    Whichever formulation MGA intended, the Court recently ruled such information is not

---

[30]   See, e.g., Letter from Marc Feinstein of O'Melveny & Myers to John Quinn et al., dated August 14, 2007, at 2 ("This would be subject to our existing agreement that, in general, documents that postdate the filing of this lawsuit, on April 27, 2004, do not have to be included on a privilege log."); Letter from Jose Allen to Harry Olivar, dated March 20, 2008, at 1 ("Per the agreement between the parties, the revised logs only include documents generated on or prior to April 27, 2004.").

[31]   Meet and Confer Tr., dated Nov. 10, 2009, at 32:22-33:3. See, e.g., Hearing Tr., dated Jan. 14, 2010, at 35:3 (MGA's counsel answers "yes" when asked if MGA's position is that neither party has to log post-lawsuit redactions).

[32]   See Email from Annette Hurst, dated March 24, 2010.

[33]   Id.

[34]   See Email from Annette Hurst, dated March 24, 2010.

00505.07975/3692918.1

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

even relevant unless it relates to MGA.[35]  Moreover, MGA would require logging all communications "involving trial counsel"—thus including all communications with Quinn Emanuel and all of Quinn Emanuel's internal communications, an astronomical amount of material the logging of which will accomplish nothing other than burdening Mattel, Mattel's outside counsel and, after MGA inevitably requests *in camera* review, the Court.  Even if MGA had not long ago waived any right to this information by stipulating to and enforcing the post-filing cut-off for logging, MGA's request is grossly overbroad, seeks the logging of irrelevant documents, and should be rejected.

Finally, if post-filing privileged documents are to be logged, Mattel requests that the MGA parties be required to all documents and communications, at any time, including with and among MGA's trial counsel, 1) concerning the document Bates-numbered MGA2 0070266-0070270 (the "Larian-O'Connor email"), 2) concerning MGA's and Larian's knowledge about the timing or location of the creation, conception or reduction to practice of Bratz works created by Carter Bryant; and 3) concerning MGA's actual or potential concealment, spoliation, or non-production of any documents or evidence of potential relevance to this case.

## VI.   DRAFTS OF MATTEL'S SETTLEMENT NEGOTIATIONS WITH VARGAS ARE NOT DISCOVERABLE

At the urging and insistence of his MGA-paid lawyers (with whom MGA has a joint defense agreement), Mr. Vargas lied to courts in Mexico and to Mattel by denying his theft and use of Mattel trade secrets with Machado and Trueba.  His regret about those lies led him to fire his MGA-paid lawyers and get new counsel.  Vargas Depo. at 674:6-14.  Mattel fully complied with the Court's January 26, 2010 Order compelling production of "any confidentiality, cooperation, fee and/or indemnification agreement(s) with Pablo Vargas."  Dkt. 7434 at 9.  At that time, Mattel had entered into a confidentiality agreement with Mr. Vargas, which was produced at Mr. Tiburcio's

---

[35]   See Order [Dkt. No. 8751], at 1-4 (limiting MGA's requested discovery to "documents concerning MGA and MGA's products").

1    January 13, 2010 deposition and marked as Exhibit 7674.  Mattel entered into a

2    settlement agreement with Mr. Vargas on May 28, 2010.  Counsel for Mattel received

3    the executed settlement agreement from the Mexican Notary on Friday, June 4, 2010.

4    Mattel produced it on June 8, 2010 (M 1632006- M 1632024), along with Mr. Vargas'

5    declaration.[36]  They were marked at Mr. Vargas' deposition and were the subject of

6    extensive questioning by MGA's and Machado's counsel.[37]

7          The only issue is whether Mattel must produce drafts of agreements.  First, MGA

8    demands that Mattel produce drafts to bring itself into compliance with the January 26

9    Order.  That Order neither considered nor compelled the production of drafts.  Second,

10   MGA makes no argument or suggestion why unsigned, and even unconsidered, draft

11   agreements are relevant.  The Court ordered the production of the agreements because

12   they were relevant to bias, and Mattel has produced them.   Dkt. 7434 at 9:10.

13   Unsigned, unenforceable and unconsidered drafts that neither impose obligations or

14   require performance are irrelevant to bias, particularly when the agreements have been

15   produced.

16   **VII.   <u>MATTEL WILL CONTINUE TO PRODUCE NATIVE FORMAT</u>**
     **<u>DOCUMENTS UPON REQUEST PROVIDED MGA DOES AS WELL</u>**

17
          As MGA knows, the parties have long agreed to mutually provide native format

18   documents.  Mattel will produce all of the documents listed in Exhibit Two to the

19   Rutowski Declaration in native format with all metadata intact, save those that are

20   protected by the work product doctrine or attorney-client privilege—those documents

21   require redactions, which cannot be made in native files.  Per the parties' agreement,

22   Mattel requests that MGA re-produce all of the native documents that it previously

23   produced without metadata with the metadata associated with those native files, and

24   that MGA also produce native files, with metadata intact, for the documents produced

25

26   _____

27   [36]  Mattel has also produced declarations of Mr. Vargas and Ms. Trueba delivered to
     Jesus Zamora Pierce, counsel in Mexico. <u>See</u> M 1676147-152 and M 1676153-156.

28   [37]  Vargas Depo. at 564:18-569:1, 622:13-623:24, 660:23-666:14, 670:19-671:8.

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1   at Bates numbers MGA 1165376-82 (Depo. Ex. 4238); MGA 0887291-92 (Depo. Ex.

2   8616); MGA 0887290 (Depo. Ex. 8617); MGA 0861322-25 (Depo. Ex. 8620).

3   **VIII.  BRATZ/BRYANT DOCUMENTS**

4          **A.    MGA's Request for a Supplemental Interrogatory Response on**

5                 **Copyright Issues is Premature and Unnecessary**

6          Mattel filed a petition for rehearing with the Ninth Circuit relating to the exact

7   issue addressed in Interrogatory No. 31 – the scope of copyright protection for Bryant's

8   Bratz designs.[38]  The Ninth Circuit ordered MGA to file a response to Mattel's petition,

9   and it remains pending.[39]  Mattel submits that any supplementation of this interrogatory

10  response should be deferred until the Ninth Circuit's ruling.

11         Putting aside the open question of a changed copyright standard, Mattel's

12  response to Interrogatory No. 31 is sufficient; it is a highly detailed description of the

13  similarities between Bryant's works and MGA's Bratz dolls.   Indeed, Mattel's

14  operative response is two and a half years old, and this is the first time MGA has

15  contended that it is insufficient.  In doing so, MGA completely ignores the expert report

16  of Lee Loetz, which is incorporated by reference into Mattel's interrogatory response[40]

17  and discusses in even greater detail numerous similarities between Bryant's Bratz

18  drawings the Bratz dolls.[41]   The interrogatory response also incorporates Mattel's

19  responses to MGA's first set of interrogatories, which contain numerous additional

20  facts and documents supporting Mattel's claims.   MGA complains that Mattel's

21  response does not "identify which Bratz dolls it contends infringe," but that is not

22  within the scope of the interrogatory, and in any case has long been known to MGA.

23

24

25   [38]   See Mattel's Petition for Rehearing and Rehearing En Banc, dated August 12,
     2010 (Case No. 09-55673, Dkt. No. 152-1).

26   [39]   See Order, dated August 18, 2010 (Case No. 09-55673, Dkt. No. 153).
     [40]   See Mattel's Supplemental Objections and Responses to MGA's Second Set of

27   Interrogatories, dated March 5, 2008.
     [41]   Expert Report of Lee Loetz, dated March 10, 2008.

28

1

**B.**   **Mattel Does Not Possess Any Mattel Hard Drive Issued to Bryant**

As MGA is aware, there is no Mattel-issued Carter Bryant hard drive.  Bryant had no Mattel-issued computer and did not regularly use one, but rather merely entered time on a shared workstation,[42] the records of which were produced to MGA years ago.  The only Bryant hard drives in Mattel's possession are the hard drives used by Mr. Bryant while he worked with MGA that he produced to Mattel in this case.  Images of those drives were long ago provided to MGA.  There is nothing to compel.

**C.**   **The Court Has Already Rejected Topic 26**

This is an improper motion for reconsideration.  MGA concedes that the Court has previously denied this very Topic, which seeks testimony on Brazilian copyright registrations for Bratz.[43]  Neither the Ninth Circuit opinion nor the confirmation of Mattel's Bratz and Jade trade secret claims are "new material facts" justifying reconsideration of the Court's proper granting of a Protective Order.  See L.R. 7-18(b).

While these registrations themselves are relevant, this Topic – a "complete explanation of the precise circumstances in which Mattel acquired the registrations" is not.  MGA argues that this Topic relates to its statute of limitations defenses to Mattel's copyright claims and trade secret misappropriation claims.  Mot. at 17:15-17.  But these are the same nonsensical arguments that the Court previously rejected.[44]  Not only are MGA's arguments equally meritless this time around, they are in violation of Local Rule 7-18, which provides that "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."

---

[42]   Bryant Depo. Tr., dated November 4, 2004, at 237:17-239:16.
[43]   See Dkt. No. 8079 at 13-14 ("The Court agrees with Mattel that the request does not seek relevant information.").
[44]   See Dkt. No. 7493 at 12:7-9 ("Mattel alleges Criminal Copyright Infringement with respect to Bratz as a RICO predicate act, [therefore] Mattel's statement that a topic regarding these registrations has 'no possible relevance' is clearly incorrect."); Dkt. No. 8072 at 7:7-8 ("this information is relevant to Mattel's own claims of trade secrets").

## IX.   MATTEL HAS NOT WITHHELD TRAPEZOIDAL PACKAGING DOCUMENTS

MGA claims that "Mattel steadfastly refuses to produce any responsive documents whatsoever to requests regarding trapezoidal packaging." Mot. at 18. MGA's contention is false and unsupported by any evidence. The only thing MGA includes to support its contention is a list of overbroad discovery requests seeking every scrap of paper relating to unspecified Mattel products going back 60 years. Below are some examples. Mattel has objected to MGA's requests but produced hundreds of documents responsive to MGA requests relating to trapezoidal packaging, includingprofit and loss statements relating to trapezoidal packaging.[45] In addition, Mattel has produced over 100 pages of documents relating to trapezoidal packaging used in Mattel's Toy Story 3 products.[46] Mattel's production is sufficient.

Although Order No. 89 grants MGA's RFP No. 475, which requests the production of photographs Mattel has taken of MGA products, the Order did not compel production of work product materials. MGA possesses all the products at issue; it refused to provide them to Mattel, so Mattel's attorney's were forced to photograph MGA's products. Mattel's attorney's selected which products and packaging, and portions thereof, to photograph. Production of them would reveal the analysis and mental impressions, pure work product, of the attorneys who took them.[47] MGA's request should be denied.

---

[45]   See M 1653806-M 1653959; M 1653960-M 1654127; M 1653786-1653793; M 1653794-1653805.
[46]   See M 1783562-3669.
[47]   Calderon v. Reederei Claus-Peter Offen GmbH & Co., 2009 WL 3242008, at *3 (S.D.Fla. Oct. 5, 2009) ("photographs taken by Plaintiff's attorneys are protected by the attorney work product doctrine").

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

## X.   THE COURT HAS ALREADY DENIED MGA'S MOTION TO COMPEL RELATING TO LICENSING

MGA mentions a "pending motion to compel that seeks production of documents relating to licensing," but on September 20, 2010, the Court denied it.[48]  MGA's motion is therefore moot.

## XI.   MATTEL HAS COMPLIED WITH COURT ORDERS

### A.   Mattel Has Produced Its Fee Agreements

MGA asks that Mattel be ordered to "produce all its fee agreements" (Mot. at 19), but that is far more than the Court ordered either party to produce.  Mattel long ago fully complied with the Court's order requiring production of fee agreements with potential witnesses in this case.[49]  MGA points to the Sal Villasenor fee agreement, which it admits Mattel has already produced, and claims that Mattel's July 2010 production of that agreement somehow indicates non-compliance as to other, unnamed individuals.  Mattel produced all fee agreements with potential witnesses in March 2010, as required, and has continued to produce fee agreements for additional witnesses that have more recently been put at issue, such as Mr. Villasenor.  The very transcript MGA cites only compels fee agreements for deposed witnesses.[50]  Mr. Villasenor's agreement was produced prior to his first deposition in this case.  MGA has failed to identify a single potential witness for whom Mattel has not produced a fee agreement.

### B.   Mattel Has Produced The Market Research Reports MGA Requests Here to the Extent They Could Be Located

As MGA is fully aware, Mattel painstakingly reviewed its research files for the market research reports MGA requested (and for all reports responsive to the Court's

---

[48] . See Order Re Pending Discovery Motions [Dkt. No. 8752], at 11 ("The Motion is DENIED as to the requests for production at issue, which are overbroad and unduly burdensome.").

[49] See Order Compelling Production of Fee Agreements and Joint Representation Agreement, dated March 12, 2010 [Dkt. No. 7643].

[50] March 11, 2010 Hearing Tr. at 6:7-8:11 (THE COURT: "So all of the witnesses who have minimally been deposed, those are the people I know already who have some relation to this case on both sides.  Those are ordered immediately.")

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

1  Orders on this issue).  Of the approximately 1,200 research reports MGA requested,

2  Mattel located and produced over 900 of them.  Ignoring that fact, MGA seeks 123

3  research reports that it either already possesses, or already knows Mattel was unable to

4  locate after thorough attempts to do so.  In fact, 18 of the 123 reports MGA requests

5  here have already been produced to MGA.[51]  Nine others on MGA's list indicate on

6  their face that no report ever actually issued.[52]  Among the remaining reports on

7  MGA's list are reports dated from as early as 1996, on such irrelevant topics as "State

8  of Girls in Turkey," and "On-Line Electronic Learning Toys Focus Groups."  MGA

9  already possesses many of the reports it seeks; others are plainly irrelevant or do not

10  exist; and as to all of them, Mattel has already pored through its hard copy and

11  electronic files and produced all requested reports that it located.

12  **XII.  MGA'S REQUESTS FOR ADMISSION ARE IMPROPER**

13      **A.  MGA's Amended Third Set Are Not Proper RFAs**

14      MGA's Third Set of Requests for Admission are grossly compound and

15  burdensome.  MGA does not provide the actual text of these Requests anywhere in its

16  moving papers, for good reason.  On their face, these 509 requests are improper.

17      The first 507 of MGA's Requests read as follows:

18      REQUESTS FOR ADMISSIONS NO. 139 THROUGH 646:

---

[51]  See M 1679002 (corresponding to BA-02-01-03); M 1667909 and M 1672048 (corresponding to BA-06-99-01); M 1673476 (corresponding to BA-115-02-01); M 1677214 (corresponding to BA-14-03-01); M 0043528 (corresponding to BA-19-01-03); M 1672191, M 1668263, and M 0452148 (corresponding to BA-47-99-01); M 1678936 (corresponding to BA-68-96-03); M 1669255 (corresponding to BA-75-98-03); M 1671989 and M 1668609 (corresponding to BA 79-99-03); M 1686010 (corresponding to G-05-08-03); M 1675079 (corresponding to G-06-06-02); M 1720547 (corresponding to IO-05-96-09); M 1673407 and M 1679022 (corresponding to PL-04-03-01); M 1673407 and M 1679022 (corresponding to PL-06-02-01); M 1678898 (corresponding to SD-12-03-01); M 1678888 (SD-14-03-03); M 1675493 (corresponding to SD-21-03-01); M 0066897 and M 066897B (corresponding to YOG-32-04-03).

[52]  See BA-105-02-03; BA-110-02-01; BA-15-04-01; BA-29-98-01; BA-57-03-01; BA 58-03-03; BA-58-04-01; BA-78-06-03; BA-79-03-03; G-20-05-08; IBA-03-04-03; IBA-03-04-03; IBA-04-05-07; IBA-05-04-03; IBA-05-06-01; IYOG-10-04-01. Moreover, as MGA should also be aware, two of the entries it seeks to compel here are privileged.  See BA-99-03-04 and BA-99-03-04.

1  
2  
3  
4  

> For each of the 507 undisputed facts set forth in the SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF THE MGA PARTIES AND IGWT'S MOTIONS FOR SUMMARY ADJUDICATION OF THE FIRST, SECOND AND THIRD CLAIMS FOR RELIEF OF THE FAAC served on you on May 10, 2010, you are hereby requested to separately ADMIT or DENY whether such fact is true.

5  
6  
7  
8  

MGA's 1009-page Separate Statement of Uncontroverted Facts and Conclusions of Law was struck by the Court. See Dkt. No. 7854. It contains literally hundreds of "facts" that are compound and cannot be admitted or denied as a proper Request for Admission. For example, "Uncontroverted Fact" No. 124 states:

9  
10  

> Mattel has identified the Ladder Sales Document as containing one or more purported trade secrets allegedly misappropriated by MGA based on the actions of Ron Brawer.

11  
12  

> a. Mattel cannot prove that it owns the purported trade secret(s) in the Ladder Sales Document.

13  
14  

> b. Mattel cannot prove that purported trade secret(s) in the Ladder Sales Document was not known within the toy industry. [sub-parts (c) through (k) omitted]

15  

> l. Mattel cannot prove by clear and convincing evidence that MGA willfully and maliciously misappropriated the Ladder Sales Document.[53]

16  
17  
18  
19  

Hundreds of the "Uncontroverted Facts" contain these sub-parts that often add ten or more additional "facts" that are supposed to be "admitted" or "denied" in a single RFA. These purported "Requests for Admission" are improper and Mattel should not be forced to respond to them; nor is it even clear how Mattel would go about doing so.[54]

20  
21  

The two remaining Requests in MGA's Amended Third Set are even more unwieldy and improper. Request for Admission No. 647 seeks:

22  
23  
24  

> For each document identified as supporting evidence in the SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF THE MGA PARTIES AND IGWT'S MOTIONS FOR SUMMARY ADJUDICATION OF THE FIRST, SECOND AND THIRD CLAIMS FOR RELIEF OF THE FAAC

25  
26  
27  
28  

---

[53]   Dkt. No. 7899 and 7900 at 74-75.
[54]   If MGA were actually interested in narrowing issues for trial, rather than burdening Mattel with oppressive and pointless discovery requests, it should have prepared proper Requests for Admission that "separately stated" each matter to be admitted. See Fed. R. Civ. P. 36(a)(2).

00505.07975/3692918.1

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

served on you on May 10, 2010, you are hereby requested to separately ADMIT or DENY the genuineness of that document.

As MGA does not specify which documents are "identified as supporting evidence" in its 1009-page Separate Statement, this is an indeterminate number of RFAs compressed into a single amorphous "Request." Request No. 648, which asks Mattel to admit that each unspecified document was "created or kept in the course of a regularly conducted business activity" is equally deficient, and Mattel objected accordingly.

**B.   Mattel Objected to MGA's Fourth Set RFAs**

MGA claims that its Fourth Set should be deemed admitted because Mattel did not serve a response. That is incorrect. Mattel responded to these Requests, objecting to all of them as improper.[55]   In any case, in the interest of narrowing disputes before the Court, Mattel has served a supplemental response.[56]   With respect to the first "pattern" of Requests, Mattel's responses provide unqualified denials of certain Requests. The third request in this "pattern" is ambiguous, and therefore Mattel provides a qualified admission clarifying that the work is not derivative "of any non-Bratz work." The fourth Request in the "pattern" is also ambiguous and therefore Mattel provides a qualified admission clarifying that Mattel did not claim that the work was a derivative work "at the time Mattel filed the registration."   The second Request in the "pattern" is incomprehensibly vague: "Admit that MATTEL did not claim authorship by employment of the work in [the copyright registration]." Mattel cannot answer such a poorly worded Request.   As for the second "pattern" of Requests, related to Toy Story 3 packaging, the phrasing and definitions of the Requests are fatally vague and ambiguous, particularly when coupled with MGA"s overbroad definition of "TOY STORY 3

---

[55]   See Mattel, Inc.'s Response to MGA Entertainment, Inc.'s Fourth Set of Phase 2 Requests for Admission to Mattel, Inc.  Nor should Mattel's two-day delay in objecting to the Requests be deemed a waiver or an admission of any request, as the Court has previously rejected such waiver arguments. See Dkt. No. 8572 at 4-6 (addressing the merits of MGA's untimely objections and responses to Mattel's Third Phase 2 Interrogatories); see also Dkt. No. 8419.

[56]   See Mattel, Inc.'s Supplemental Response to MGA Entertainment, Inc.'s Fourth Set of Phase 2 Requests for Admission to Mattel, Inc.

MATTEL'S OPPOSITION TO MGA PARTIES' OMNIBUS MOTION TO COMPEL

00505.07975/3692918.1

1    PRODUCT" which is not limited to products in trapezoidal packaging or even to

2    products manufactured or packaged by Mattel.

3

4    DATED:  September 22, 2010          QUINN EMANUEL URQUHART &
                                         SULLIVAN. LLP
5

6                                        By /s/ Michael T. Zeller
7                                           Michael T. Zeller
                                            Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28