1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6  Attorneys for Mattel, Inc.

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     SOUTHERN DIVISION

11

12 | MATTEL, INC., a Delaware          | CASE NO. CV 04-9049 DOC (RNBx)
   | corporation,
13 |                                   | Consolidated with
   |            Plaintiff,
14 |                                   | Case No. CV 04-09059
   |        vs.                        | Case No. CV 05-02727
15 |
   | MGA ENTERTAINMENT, INC., a        | Hon. David O. Carter
16 | California corporation,
   |                                   | **MATTEL, INC.'S NOTICE OF
17 |            Defendants.            | MOTION AND MOTION TO
   |                                   | COMPEL DISCOVERY IN
18 |_____        | RESPONSE TO MATTEL'S
   |                                   | REQUESTS FOR DISCOVERY
19 | AND CONSOLIDATED ACTIONS          | CONCERNING MGA'S REPLY
   |                                   | COUNTERCLAIMS; AND**
20 |
   |                                   | **MEMORANDUM OF POINTS
21 |                                   | AND AUTHORITIES**

22                                      Date:   TBD
                                        Time:   TBD
23                                      Place:  Courtroom 9D

24                                      **Phase 1**
                                        Discovery Cut-off: October 4, 2010
25                                      Pre-trial Conference: January 4, 2011
                                        Trial Date: January 11, 2011

26

27

28

00505.07975/3689700.4

                              MOTION TO COMPEL RE: MGA'S REPLY COUNTERCLAIMS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a date and time to be set by the Court, in the courtroom of The Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California, 92701, Mattel, Inc. ("Mattel") will, and hereby does, move for an order compelling MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian (collectively, "MGA") to produce on an expedited basis discovery responsive to certain of Mattel's Discovery Requests Concerning MGA's Reply Counterclaims.  Specifically, Mattel moves for an order compelling the discovery requested in:

(1)    Mattel, Inc.'s Set of Requests for Documents and Things to MGA Entertainment, Inc. Regarding Reply to the Fourth Amended Answer;

(2)    Mattel, Inc.'s Requests for Admission to MGA Entertainment, Inc. Related to MGA's Reply Counterclaims;

(3)    Mattel, Inc.'s First Set of Interrogatories to MGA Entertainment, Inc. (MGA Reply Counterclaims); and

(4)    Notice of Deposition of MGA Entertainment, Inc. Pursuant to <u>Federal Rule of Civil Procedure</u> 30(b)(6) (Third Phase 2 Notice).

This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 34 and the Court's inherent powers.  The requests seek discoverable evidence under <u>Rule</u> 26.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all other pleadings and papers on file in this action, any matters subject to judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

## **Certification of Compliance**

Lead counsel for Mattel and for the MGA parties met and conferred on September 22, 2010 regarding the discovery sought on this motion but were unable to reach a resolution.

1  DATED:  September 23, 2010          QUINN EMANUEL URQUHART &
2                                       SULLIVAN, LLP

3

4                                       By /s/ Michael T. Zeller
                                            Michael T. Zeller
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2
**Page**

3

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

4
5

I.    MATTEL IS ENTITLED TO DISCOVERY REGARDING MGA'S
NEWLY PLED TRADE SECRET CLAIMS .......................................2

6

A.    Mattel's Discovery Seeks Basic Information .........................2

7
8

1.    Discovery Requests Identifying Trade
Secrets/Confidential Information (RFPs 1, 64,
Interrogatories 1, 2 and 4, Deposition Topics 1, and 3-5)...........3

9
10

2.    Discovery Requests Concerning the Secrecy of MGA's
Alleged Trade Secret Information (RFPs 2, 17, 20, 30-32,
48, 65-66, Interrogatories 5-7, 12, Deposition Topics 6, 8)........4

11
12
13

3.    Discovery Requests Regarding Evidence of Mattel's
Alleged Thefts and MGA's Knowledge Thereof (RFPs 4,
43, 44, 53, 54, 67, 68, 69, 72, 76, 77; Interrogatories 3, 16;
Deposition Topics 2, 7, 9, 17, 18, 21) .....................................7

14

4.    Discovery Regarding Damages from Alleged Theft of
Trade Secrets (RFPs 70, 71, 89, Interrogatories 8-10)..............10

15
16

B.    Mattel is Entitled to Discovery Regarding Mga's Contentions
that Mattel "Defrauded" Mga of "Unreleased" Products....................10

17

1.    Basic Information Regarding Unreleased Products (RFPs
1, 33, 38, 61, 62) ...........................................................11

18
19

2.    Evidence Regarding the Release of MGA's Products or
Product Information (RFPs 19, 30-33, Deposition Topic
No. 11) ....................................................................11

20
21

3.    Evidence Regarding the Creation/Design of Unreleased
Products (RFPs 23, 24, 29, 56)...........................................12

22

4.    Evidence of Similarity Between Unreleased MGA
Products and Mattel's Products  (RFPs 34-37, 41, 42)..............13

23

5.    Evidence Regarding Unreleased Products (RFPs 26-28)...........13

24
25

6.    Evidence Regarding Intellectual Property Rights Asserted
for Unreleased Products (RFPs 7, 59, 60, 73-75,
Interrogatory No. 16, Deposition Topic No. 14).....................14

26
27

7.    Evidence Regarding Market for Unreleased Products
(RFPs 25, 39, 57, 58, 63, 84-87).........................................15

28

8.      Evidence Regarding Damages Caused by Mattel's Alleged Misappropriation of Unreleased Products (RFPs 40, 78-82, 88, 90, 91) ...................................................................................16

II.   MATTEL IS ENTITLED TO DISCOVERY REGARDING MGA'S CLAIM THAT MATTEL GAINED ACCESS TO TOY FAIRS UNDER FALSE PRETENSES ...........................................................17

A.   Discovery Regarding Which Toy Fairs Are at Issue and Who Was Present at the Corresponding Showrooms (RFPs 12, 13, 16) ......17

B.   Evidence That Mattel Employees Used False Pretenses to Access Showrooms (RFPs 10, 22 Interrogatory 11, Deposition Topic 18)......17

C.   Evidence Concerning Whether MGA Treated Information at Toy Fairs as Confidential (RFPs 14, 15, 18, 47, Interrogatory 12, Deposition Topic 10) ...................................................................18

D.   Evidence Regarding When MGA Learned of Mattel's "Market Intelligence Group" (RFPs 52, 55, Deposition Topics 17, RFAs 16-26) ...........................................................................................20

III.   MATTEL IS ENTITLED TO DISCOVERY ON UNSPECIFIED ACTS OF FRAUDULENT CONDUCT/POTENTIAL PREDICATE ACTS BY MATTEL AND ITS AGENTS ............................................20

A.   Evidence Regarding MGA's Allegations that Mattel Took Vargas's Lawyer to the Woodshed (RFP 21, Interrogatory 13, Deposition Topic 12) ...................................................................20

B.   Evidence Regarding Spoliation or Other Interference with Justice (RFP 5, 6, Interrogatories Nos. 17, 18, Deposition Topics Nos. 15, 16) ...............................................................................................21

IV.   MATTEL IS ENTITLED TO DISCOVERY ON MGA'S RICO ALLEGATIONS ...........................................................................22

A.   Evidence Regarding MGA's RICO Allegations (Interrogatory No. 20)...............................................................................................22

B.   Evidence Regarding Predicate Acts (Interrogatory No. 14, Deposition Topic No. 13)...................................................................22

V.   MATTEL IS ENTITLED TO DISCOVERY REGARDING MGA'S NEW DAMAGE CLAIMS  (RFP 83, 92, INTERROGATORY NOS. 15, 19, DEPOSITION TOPICS NOS. 19, 20.1, REQUESTS FOR ADMISSION NO. 1-15) ...................................................................23

VI.   MATTEL IS ENTITLED TO DISCOVERY REGARDING THE COUNTERCLAIMS AND POTENTIAL AFFIRMATIVE DEFENSES ...........................................................................................24

A.   Discovery Requests Directly Related to Counterclaims (RFPs 3, 8, 9, 11, 45, 46, 49) ...................................................................24

B.    Discovery Requests Related to Potential Affirmative Defenses (RFP 50, 51, Deposition Topic 20.2)....................................................25

00505.07975/3694376.2

MOTION TO COMPEL RE: MGA'S REPLY COUNTERCLAIMS

1

# **TABLE OF AUTHORITIES**

2
<u>**Page**</u>

3
## **Statutes**

4
Cal. Civ. Code § 3426.1(d)(1) ........................................................................ 3

5
Cal. Civ. Code § 3426.1(d)(2) ........................................................................ 4

6
Federal Rules of Civil Procedure 30(b)(6) ...................................... 1, 3, 16, 17, 18, 21

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **Preliminary Statement**

After sandbagging Mattel and asserting at the eleventh hour "new" counterclaims-in-reply MGA has known about for years, MGA refuses to provide Mattel with even basic discovery into claims that MGA trumpets to be worth more than a billion dollars.  Indeed, in contrast to the overwhelming discovery that MGA has obtained on Mattel's claims over six years of litigation, MGA is unwilling to provide – and Mattel has yet to receive -- even the type of initial disclosure discovery that the <u>Federal Rules</u> mandate.  At the most recent meet and confer, MGA made the same the paltry and equivocal offer of written discovery it made in response to Mattel's ex parte.  While MGA did now belatedly offer to produce a 30(b)(6) witness, it identified its witness as Mr. Larian, whose record of obstructionist deposition tactics will ensure Mattel will obtain little actual information (and who MGA only told the Court days ago should not be bothered to complete even his yet-to-be completed 30(b)(6) testimony).  And the proffered deposition date was October 4, 2010 – after the September 30 date that the Court indicated would be the deadline for MGA's discovery and, in any event, a date that would leave Mattel without recourse should Mr. Larian give a repeat performance of his improper deposition conduct.

All of this only serves to confirm that MGA brought its unauthorized counterclaims-in-reply in bad faith and for the purpose of avoiding fair discovery into them.  It also confirms that there is simply no way to avoid irreparable prejudice to Mattel other than to strike the counterclaims under <u>Rule</u> 12 as Mattel has requested.  Not only has MGA done little or nothing to provide meaningful discovery into those claims since the time it filed them, but even granting the full extent of discovery sought by Mattel at this date would not and could not provide Mattel with the depositions and follow-up discovery it is entitled to.

At a minimum, and even though it will not serve to cure the unfair prejudice that MGA's tactics have and will continue to cause, MGA must be compelled to provide full and complete discovery immediately. The discovery that Mattel seeks here, as explained herein, is tailored to the critical elements of MGA's new claims—such as the identity of what MGA asserts was stolen, the facts relating to the confidentiality and non-confidentiality of such information and the supposed bases for MGA's RICO claim and its nine-figure damage amount.[1]   There is nothing overbroad or unduly burdensome about this discovery. MGA has had it for weeks and has had ample time to prepare responses and collect documents. If MGA's claims are to go forward, Mattel is entitled to it in an expedited fashion.

## **Argument**

## I.   **MATTEL IS ENTITLED TO DISCOVERY REGARDING MGA'S NEWLY PLED TRADE SECRET CLAIMS**

MGA's allegations of the theft of trade secrets and confidential information are wholly absent from its 2005 complaint, and thus Mattel has only obtained incidental discovery on these topics so far. On the other hand, MGA has had years of discovery on Mattel's trade secret and RICO claims. As set forth below, Mattel's contention discovery requests should be compelled.

### A.   **Mattel's Discovery Seeks Basic Information**

The discovery Mattel seeks is narrowly-tailored to obtain information concerning the alleged factual bases of MGA's claims that Mattel stole trade secrets and confidential information, violating both CUTSA and the wire fraud provisions of RICO. Mattel's requests address four basic categories of such information: (1) the identity of MGA's trade secrets and confidential information;

---

[1]   For the Court's reference, Mattel is including as an Appendix to this Motion the operative discovery requests, in the same order as they are discussed in this Motion.

2

(2) the secrecy of the information and when it became public; (3) Mattel's alleged theft and MGA's knowledge of that theft; and (4) damages.

1.   **Discovery Requests Identifying Trade Secrets/Confidential Information (RFPs 1, 64, Interrogatories 1, 2 and 4, Deposition Topics 1, and 3-5)**

MGA has not identified its trade secrets or confidential information with sufficient specificity, disclosed how such information was developed, or shown that it has value. Each of Mattel's requests for such information is relevant.

RFP 1 seeks the disclosure of the alleged trade secrets. MGA agreed to partially produce documents in response to this request, but has limited its agreement to the "54 unreleased MGA products referenced in the Reply and Counterclaims." Dkt. No. 8660 at 11. No such limitation is justified because the Counterclaims themselves are not limited to those products, and because all of MGA's practices for keeping trade secret information secret are relevant. RFP 64 seeks documents concerning MGA's confidential, non-trade-secret information. This request is relevant because MGA identifies "other confidential information" in ¶315(a) of the Counterclaims in connection with MGA's wire fraud allegations. MGA's refusal to agree to produce this information is improper.

Interrogatory No. 1 asks MGA to identify all trade secrets, unreleased products, and confidential information that MGA alleges Mattel stole. MGA refuses to provide this information which is necessary to determine the scope of MGA's claims. Interrogatory No. 2 asks MGA to specify what part of a given document is a trade secret. Mattel needs that information to know what MGA is claiming is protected in the first place since MGA to date has offered only meaningless generalities such as the "play pattern" of a toy as being its trade secret or only pointed to the entirety of a lengthy document or video without specifying what, if anything, within it is trade secret. Interrogatory No. 4 pertains to the value of the alleged stolen trade secrets, which is relevant to the requirement that trade

secrets must be of value.  <u>See</u> Cal. Civ. Code § 3426.1(d)(1).  MGA obtained an order compelling responses to interrogatories seeking information similar to what Mattel seeks in Interrogatories 2 and 4.  <u>See</u> DM Order 84, at 8-9, 16 (discussing MGA Mexico Interrogatories 1 and 5).  It therefore cannot now complain when it is compelled to provide comparable information.

Deposition Topic No. 1 seeks identification of the trade secrets.  Topic No. 3 pertains to whether the alleged trade secrets have value due to their secrecy.  Topic No. 4 pertains to the development of the trade secrets, which goes to both their value and Mattel's independent development of the matters purportedly derived from the alleged trade secrets.  Topic No. 5 addresses the value of the trade secrets and their use within MGA.  Each of these Topics seek critically relevant discovery.

While MGA has stated that it will produce Mr. Larian as a 30(b)(6) witness on October 4, 2010, the last day of discovery, on certain of the topics included in Mattel's Notice, that is scarcely adequate.  Not only is this the last day of discovery – and indeed by definition would restrict Mattel to one day of deposition testimony on what MGA asserts is a billion dollar claim – but MGA would not even commit to identifying which Topics it will provide a witness on.  Furthermore, in light of the centrality of these Topics, and Mr. Larian's prior lack of preparation and obstructionist conduct during deposition, simply knowing that Mr. Larian will be produced as to some topics on the last day of discovery is not enough.  MGA should be compelled to produce a prepared witness on these topics, and the others discussed below, starting no later than September 30 and continuing until completed.

> ## 2. <u>Discovery Requests Concerning the Secrecy of MGA's Alleged Trade Secret Information (RFPs 2, 17, 20, 30-32, 48, 65-66, Interrogatories 5-7, 12, Deposition Topics 6, 8)</u>

MGA has not produced any evidence regarding what steps it supposedly took to maintain the secrecy of its alleged trade secrets or when they became

public.  Reasonable efforts to maintain secrecy is an element of a CUTSA claim. Cal. Civ. Code. §3426.1(d)(2).  MGA cannot maintain such a claim on information that has already become public.  In its opposition to Mattel's *ex parte* application for expedited discovery, MGA agreed only to produce information regarding the confidentiality of the 54 trade secrets identified in its Counterclaims.  See Dkt. No. 8660 at 11.  This is inadequate – and apparently nothing more than an offer by MGA to produce cherry-picked discovery supporting its claims and not the evidence that contradicts them -- and Mattel's requests discussed below should be compelled.

RFP 2 pertains to persons who viewed trade secret information, and what was communicated to them regarding secrecy.  This goes to the heart of whether MGA kept its trade secrets confidential.

RFP 17 seeks production of non-disclosure agreements between MGA and its customers or potential customers.  This information is centrally relevant to the steps MGA took to protect its allegedly confidential information both at toy fairs and in contexts before toy fairs.  These documents also are relevant to determine whether information MGA disseminated to third parties maintained whatever confidential status it may have previously had after being disseminated.  MGA has not clearly agreed to produce documents regarding implementation and maintenance of confidentiality, and this request should be compelled.

RFP 20 asks for documents concerning MGA's dissemination of catalogs, price lists, and new product information from 1992 to the present, which is also relevant to whether the materials were confidential.  Likewise, RFP 30 seeks documents pertaining to when products were made public.  RFP 31 concerns when these unreleased products were depicted or described and when information regarding them was released to the public.  This information is relevant to show that Mattel had only publicly available information about MGA products – information that therefore could not be trade secret.  RFP 32 pertains to when the

1   unreleased products were first sold, which too is relevant to trade secret protection

2   because, by that date at the latest, the product could not be considered a trade

3   secret.  MGA refuses to produce documents responsive to any of these Requests.

4        RFP 66 seeks documents relating to any planned or actual public disclosure

5   of confidential information.   This too concerns whether and for how long the

6   information was confidential.  RFP 48 seeks documents reflecting the steps MGA

7   has taken, if any, to maintain the confidentiality of its allegedly confidential

8   information, which is relevant to MGA's wire fraud allegations, as the information

9   cannot be "stolen" if it is public knowledge.  RFP 65 is parallel, with reference to

10  the confidentiality of trade secret information.  MGA has agreed only to partially

11  respond to RFP 65 by producing:  "All documents reflecting MGA's maintenance

12  of confidentiality regarding the 54 unreleased MGA products referenced in the

13  Reply and Counterclaims filed on August 16, 2010."  Dkt. No. 8660 at 11.  Such a

14  partial response would be inadequate because it apparently excludes discovery

15  showing that MGA did not maintain confidentiality, because the complaint is not

16  limited to those 54 products, and because MGA's general policies regarding

17  confidentiality are relevant to Mattel's defense.

18       Interrogatory No. 5 asks MGA to list all persons that obtained access to

19  MGA trade secrets, and when they did, which is also relevant to whether MGA

20  maintained confidentiality.  For example, if disclosed by MGA to persons who

21  were not bound by confidentiality obligations, then the information could not be

22  trade secret.  Interrogatory No. 6 is relevant because it seeks whatever evidence

23  MGA has that the claimed trade secrets are secrets.  MGA previously compelled an

24  almost identical interrogatory.  See DM Order 84, at 8-9, 16 (regarding MGA

25  Mexico Interrogatory 6).  Interrogatory No. 7, which seeks information dating back

26  to the same 1992 period alleged by MGA in its counterclaims, is relevant to show

27  what, if any, security measures MGA implemented to protect its alleged trade

28  secrets, when those measures were in place, and why the measures changed over

1   time.  Such information would show whether MGA attempted to maintain secrecy

2   and whether its success or failure to do so led to policy changes.  This request is

3   similar to an even broader interrogatory propounded by MGA Mexico that it

4   successfully compelled.  See DM Order 84, at 8-9, 16 (regarding MGA Mexico

5   Interrogatory No. 7).   MGA should now likewise be compelled to provide that

6   discovery.

7          Deposition Topic No. 6 pertains to whether and when MGA's alleged trade

8   secrets were publicly disclosed, which is relevant to show when these alleged

9   secrets ceased to be protectable.  Deposition Topic No. 8 focuses on what MGA

10  did to keep its confidential information confidential.  MGA has made no specific

11  commitment to produce a witness on this Topic, which is relevant to whether

12  MGA has any claim at all under either CUTSA or the wire fraud statute.

13          **3.      <u>Discovery Requests Regarding Evidence of Mattel's Alleged</u>**

14                  **<u>Thefts and MGA's Knowledge Thereof (RFPs 4, 43, 44, 53,</u>**

15                  **<u>54, 67, 68, 69, 72, 76, 77; Interrogatories 3, 16; Deposition</u>**

16                  **<u>Topics 2, 7, 9, 17, 18, 21)</u>**

17          Mattel is entitled to test MGA's evidence pertaining to Mattel's alleged theft

18  of trade secrets and also to pursue a defense that MGA's claim is barred by the

19  statute of limitations and laches.  MGA makes accusations of trade secret theft;

20  these discovery requests are aimed at answering them.

21          MGA argues that Mattel deliberately formed a plan to steal trade secrets and

22  confidential information and criminally infringe copyrights, and that Mattel

23  employees were aware of this plan.   RFP 4 is relevant and narrowly tailored

24  because it requests the documents MGA is relying upon to show that Mattel

25  devised a scheme or artifice to defraud others to obtain a competitive advantage.

26  RFP 43 is focused on documents supporting specific allegations in the

27  Counterclaims that Mattel employees stole trade secrets, which goes to the heart of

28  these claims.  RFP 69 asks for documents concerning MGA's knowledge of any

7

involvement of the so-called Market Intelligence Group in the theft of confidential information, which is central to MGA's allegations that Mattel was focused on trade secret theft and further to Mattel's defense that MGA's claims are untimely.

Interrogatory No. 3 asks MGA to explain the basis for its knowledge that Mattel stole alleged trade secrets.  This Interrogatory is similar to MGA Mexico's Interrogatory No. 2, which it compelled Mattel to answer.  See DM Order 84, at 8-9, at 16.  Interrogatory No. 16 seeks information or documents concerning Mattel's alleged criminal copyright infringement and thus is directly relevant to MGA's allegations that Mattel engaged in such conduct.

Deposition Topic No. 2 seeks information concerning what MGA learned, and when, about Mattel's misappropriation of trade secrets, and why it believed the acquisition of trade secrets was wrongful.  Mattel needs this information to show that it did not, in fact, wrongly acquire the alleged trade secrets, either because they were no longer trade secrets and/or were not acquired improperly.  Deposition Topic No. 7 is focused on the evidence MGA has regarding the use, acquisition, or dissemination of MGA trade secrets by Mattel, which are elements of the claim. Deposition Topic No. 9 addresses MGA's allegations that Mattel stole trade secrets from other toy sellers.  Mattel needs this information to defend itself against MGA's accusations of wrongdoing.  Deposition Topic No. 18 addresses any investigation that MGA performed regarding the myriad allegations of theft it levies on Mattel.  These investigations are relevant to show what MGA knew and when, and they may show that MGA's claims are time-barred.

Mattel also seeks evidence that MGA was actually aware that Mattel was accessing its showrooms or otherwise obtaining its alleged trade secrets, and when it became aware, including its communications with law enforcement.  See RFPs 53-54, 67, 72, 76-77; Deposition Topic Nos. 17, 21.  RFPs 53 and 72 pertain to Ron Brawer's knowledge of Mattel's alleged misappropriation, which is relevant to show that MGA had knowledge thereof.  RFP 54 is similar except it is limited to

1  communications between Brawer and MGA and documents referring or relating to

2  those communications.   Such documents would show not only that MGA had

3  Brawer's knowledge, but also that he communicated that actual knowledge to

4  others acting on MGA's behalf.

5       RFP 67 is limited to MGA's allegations that Mattel misappropriated

6  information, which goes to the heart of MGA's CUTSA claim.  RFP 76 is focused

7  on MGA's reporting of this alleged trade secret theft to law enforcement.  RFP 77

8  seeks documents discussing MGA's communications with law enforcement in

9  connection with Mattel's alleged theft of trade secret information.  These requests

10  are relevant because, among other reasons MGA itself has successfully argued in

11  compelling Mattel to produce such documents, they may contain prior inconsistent

12  statements and admissions about key elements of the trade secret claims.

13  Deposition Topic No. 21 is also focused on MGA's communications with law

14  enforcement, which are relevant for the same reason.

15       Deposition Topic No. 17 addresses when and how MGA learned of Mr.

16  Villasenor and the Mattel Marketing Intelligence Group, and what if any actions it

17  took to investigate that group.  This is relevant to MGA's explicit – and wholly

18  false – allegation in its counterclaims that it only learned of these activities during

19  Mr. Villasenor's recent deposition.

20       Finally, Mattel seeks discovery regarding Mattel's supposed concealment of

21  its alleged thefts.  RFP 44 is tailored to address documents referring or relating to

22  concealment of trade secret thefts – facts that are critical to any of MGA's tolling

23  or wrongful concealment arguments.  RFP 68 is similar with respect to confidential

24  information, and it is equally relevant because MGA's wire fraud allegations

25  implicate confidential information.

26

27

28

### 4. Discovery Regarding Damages from Alleged Theft of Trade Secrets (RFPs 70, 71, 89, Interrogatories 8-10)

Mattel is entitled to discovery regarding MGA's alleged damages resulting from Mattel's alleged thefts of confidential or trade secret information. MGA has not agreed to produce any such information. RFP 70 seeks documents showing revenue and profits attributed to confidential information. RFP 71 asks for documents referring or relating to damages due to the alleged theft of confidential information. RFP 89 addresses any other sort of harm that Mattel caused MGA. Interrogatory No. 8 addresses the cost of creating each trade secret, Interrogatory No. 9 focuses on harm that MGA alleges it has suffered, and Interrogatory No. 10 focuses on any benefit MGA believes Mattel has obtained. All three are damages measures that Mattel is entitled to discovery on.

### B. Mattel is Entitled to Discovery Regarding MGA's Contentions that Mattel "Defrauded" MGA of "Unreleased" Products

MGA also contends that Mattel defrauded it of product information for dozens of unreleased products, but MGA fails provide any specific information—other than a list of fifty-plus product names or in some cases entire product lines that Mattel allegedly defrauded. Counterclaims ¶¶ 3, 21. MGA has further alleged that Mattel has criminally infringed copyrights by distributing that stolen information on a worldwide basis throughout Mattel.

As pled, MGA's contentions are meaningless. MGA has not alleged how Mattel defrauded MGA of each product or entire product line. MGA has not alleged what was misappropriated with respect to any of the products or product lines. MGA claims that some of its products or product lines were not released because of Mattel's conduct, but does not allege which these were or why.

Mattel has propounded discovery requests aimed at uncovering basic information. The requests address eight categories: (1) the identity of and other core details related to these products; (2) the release/public disclosure of these

purportedly "secret" products; (3) the creation/design of these products; (4) any similarity (or dissimilarity) between these products and Mattel's; (5) the products' trade dress; (6) the intellectual property rights associated with these products; (7) the estimated or actual market for these products; and (8) damages.

### 1.   Basic Information Regarding Unreleased Products (RFPs 1, 33, 38, 61, 62)

MGA has listed fifty-plus unreleased products as to which Mattel purportedly defrauded confidential unreleased product information from MGA, but MGA provides no further detail.  Counterclaims ¶3.  So that it may defend itself from these allegations, Mattel seeks discovery of documents that MGA has in its possession regarding these unreleased products (RFP 1), the theme, appearances, play patterns or packaging of those products (RFP 33), product information related to those products (RFP 38), the tangible objects, such as sculpts or prototypes of those objects (RFP 61), and sworn written statements related to those products (RFP 62).  These requests are necessary for Mattel to identify what products are at issue—which MGA has not done—and to obtain the basic product information that MGA alleges Mattel stole as well as any prior inconsistent statements that MGA has made about them under oath.

### 2.   Evidence Regarding the Release of MGA's Products or Product Information (RFPs 19, 30-33, Deposition Topic No. 11)

Whether, when and why MGA's products or product information was released is highly relevant to MGA's new allegations.  At the heart of MGA's allegations is that the product information at the time Mattel purportedly misappropriated it was confidential.  To that end, Mattel seeks information as to when these products were publicly disclosed, such as documents relating to the products' public disclosure before it was offered for sale (RFP 30) and documents relating to any public disclosure of the products descriptions (RFP 31).

1    Additionally, MGA alleges that many of the products at issue were not
2  released as a direct result of Mattel's alleged conduct and that had Mattel not stolen
3  the information from MGA, Mattel would never have had the opportunity to view
4  them.  Counterclaims ¶22.  Mattel is entitled to explore which products MGA is
5  claiming not to have released (Deposition Topic No. 11), the reasons for not
6  releasing those products (Deposition Topic No. 11, RFP 19) and when (if at all)
7  MGA ultimately did release those products (RFP 32).

8         **3.     <u>Evidence Regarding the Creation/Design of Unreleased</u>**
9              **<u>Products (RFPs 23, 24, 29, 56)</u>**

10    Mattel is also entitled to information regarding the creation, design and
11  development of the products MGA has put at issue.  MGA has asserted that Mattel
12  misappropriated and/or infringed information related to these products at varying
13  stages of their development, whether price lists, product information or the products
14  themselves.   To that end, RFP 23 seeks documents that relate to the origins of the
15  products, RFP 24 seeks documents regarding their creation or design, and RFP 29
16  asks for documents regarding the creation of the products' theme and further
17  regarding whether MGA was aware of similarities between its products and Mattel's
18  products at the time—which is particularly relevant given MGA's new copyright
19  infringement claims.  RFP 56 is aimed at identifying who from MGA worked on the
20  creation, design and development of the products.  These requests seek relevant
21  information because the timing of these events is critical in ascertaining whether and
22  when these products were in fact confidential.  For example, if persons not bound by
23  any obligation of confidentiality worked on or had access to the products during
24  design or development, then they likely could not be protected as trade secrets.
25  These requests are also directly relevant to establishing whether MGA even has
26  rights in the products in the first instance.  If, for example, discovery shows that
27  MGA misappropriated those products from Mattel or some other source, MGA
28

1 could scarcely claim ownership of them.  And in any event such evidence would be
2 relevant to an unclean defense.

### 4. Evidence of Similarity Between Unreleased MGA Products and Mattel's Products  (RFPs 34-37, 41, 42)

MGA contends that Mattel "willfully infringed the copyrights of MGA (and numerous others) through knowing violations of the Copyright Act in the deliberately unauthorized reproduction, distribution and public display of photographs and other depictions of its competitors' products."  Counterclaims ¶315. To flesh out MGA's barebones contention, Mattel seeks discovery regarding what, if any, Mattel products MGA alleges infringe on the unreleased products.

Mattel's requests on this point are basic.  For example, Mattel asks for documents in MGA's possession that relate to any similarity (or dissimilarity) between any Mattel product and the unreleased products (RFP 35), as well as between Mattel's product packaging and MGA's unreleased product packaging (RFP 34).  Mattel also seek documents related to whether Mattel's products/packages copy the appearances of MGA's unreleased products/packages (RFP 36), documents supporting (or refuting) MGA's claim that they do (RFP 41), and communications between MGA and third parties, such as retailers or customers, to that end (RFP 42). RFP 37 asks for documents evidencing actual or potential customer confusion between Mattel products/packaging and any unreleased products.

Each of these requests targets information that is highly relevant to MGA's claim that Mattel's products/packages infringe—and are similar to—the unreleased products that Mattel allegedly misappropriated.

### 5. Evidence Regarding Unreleased Products (RFPs 26-28)

Mattel is entitled to obtain evidence regarding MGA's unreleased products, given that MGA claims Mattel stole MGA's intellectual property.   RFP 26 is targeted towards the packaging and artwork of unreleased products that Mattel is alleged to have infringed.  RFP 27 seeks information relating to the development by

MGA of any image, design, appearance or other feature that MGA contends was stolen by Mattel with respect to its unreleased products.  RFP 28 focuses on any claims MGA has made with regard to any positions it has taken pertaining to the identity of the claimed trade dress.

These requests seek relevant information because the design and development, including in particular their timing, are critical in ascertaining whether and when these products were in fact confidential.  For example, if persons not bound by any obligation of confidentiality worked on or had access to the products during design or development, then they likely could not be protected as trade secrets.  These requests are also directly relevant to establishing whether MGA even has rights in the products in the first instance.  If, for example, discovery shows that MGA misappropriated the claimed intellectual property from Mattel or some other source, MGA could scarcely claim ownership of them.  And certainly such evidence would be relevant to an unclean defense.

### 6.   Evidence Regarding Intellectual Property Rights Asserted for Unreleased Products (RFPs 7, 59, 60, 73-75, Interrogatory No. 16, Deposition Topic No. 14)

Mattel is entitled to discovery concerning the intellectual property rights asserted by or against MGA regarding products at issue, given that MGA claims Mattel infringed MGA's intellectual property.  For example, RFP 7 asks for documents concerning Mattel's supposed infringement of copyrights belonging to MGA or third parties, and Mattel is entitled to the evidence that MGA may use at trial.  RFP 59, with regard to lawsuits MGA has filed, is relevant because it shows whether MGA has taken adequate steps to protect its intellectual property and may reveal prior inconsistent statements MGA has made.  RFP 60 focuses on whether MGA's products are themselves infringing—because if they are, MGA has no right to contend that they are being infringed.  RFP 73 pertains to any preparations MGA has made to obtain copyright registrations for relevant products, which is relevant

for a host of reasons, including because they may contain statements concerning the creation date, authorship and other basic information about the asserted copyrights. RFP 75 pertains to attempts MGA has made to register the copyrights in its intellectual property, which is relevant for the same reasons.  RFP 74 seeks evidence either supporting or refuting the validity of MGA's claimed copyrights, which is relevant because if the material is not subject to copyright protection, Mattel could not have infringed.  Interrogatory No. 16 and Deposition Topic No. 14 seek information about MGA's knowledge of the criminal copyright infringement it alleges, which is relevant to statute of limitations and laches, among other issues.

### 7.   Evidence Regarding Market for Unreleased Products (RFPs 25, 39, 57, 58, 63, 84-87)

Evidence related to the market for MGA's unreleased products, and MGA's understanding of that market, is relevant to MGA's new allegations for several reasons.  For example, the size of the market, whether estimated or actual, bears directly on the harm MGA alleges it incurred.  Market information, likewise, informs whether the products MGA alleges were stolen did or could have caused MGA damage or the introduction of Mattel products caused MGA lost sales, since the extent of competition between the parties' products is directly relevant to these issues.  Further, as discussed earlier, MGA makes issue of the fact that it did not bring some of the products to the market.  Counterclaims ¶22.  Why MGA chose not to bring products to the market—whether it is because of Mattel's alleged conduct or because of external market factors—is informed by MGA's understanding of the relevant market.

Accordingly, Mattel propounded discovery requests related to the market and market research regarding these unreleased products.  RFP 25 seeks market research limited to the products MGA put at issue so that Mattel will be able to evaluate MGA's damage claims and its purported rationale for not bringing products to market.  RFP 39 seeks documents evidencing competition between Mattel's products

and MGA's unreleased products—which bears directly on alleged damages and lost sales.  Similarly, RFP 87 asks for market research related to Mattel's products that MGA contends competes with its unreleased products.  RFP 86 seeks documents sufficient to identify the target audience for the unreleased products.  RFP 63 asks for surveys and consumer research limited to the unreleased products.  All these requests go to whether and to what extent MGA's products competed with Mattel's products, as MGA alleges, as well as whether there is any similarity between MGA's and Mattel's products, which MGA also alleges.

RFP 57 asks for business plans, budgets and other documents related to the unreleased products that Mattel needs to determine the extent MGA was injured, if at all, by Mattel's purported conduct.  RFPs 84 and 85 relate to MGA's market share and the change in MGA market share, respectively, of unreleased products that it ended up selling—which is directly relevant to MGA's damages.

## 8. Evidence Regarding Damages Caused by Mattel's Alleged Misappropriation of Unreleased Products (RFPs 40, 78-82, 88, 90, 91)

MGA asserts a litany of harms suffered as a result of Mattel's alleged conduct, including Mattel's alleged conduct with respect to the unreleased products at issue.  Counterclaims, pp. 51-52.  Mattel seeks discovery to determine whether MGA was in fact harmed.

Mattel's requests are straight-forward.  RFP 40 seeks documents sufficient to determine total sales, revenue, royalties, costs of goods sold and other costs incurred in arriving at net profits.  RFPs 78-82 seek information related to what products were in fact sold, the number of units that were sold, the revenue that each product generated, the cost of goods sold for each unit sold, and the profits from the sale of each.  The remaining three requests focus on other measures of purported damages.  RFP 88 pertains to estimations made with regard to the anticipated commercial success of unreleased products.  RFP 90 calls for evidence of harm caused by

Mattel's alleged misappropriation.  Finally, RFP 91 pertains to MGA's alleged copyright damages, which is information MGA itself must produce in order to put on a damages case.

## II.   MATTEL IS ENTITLED TO DISCOVERY REGARDING MGA'S CLAIM THAT MATTEL GAINED ACCESS TO TOY FAIRS UNDER FALSE PRETENSES

MGA asserts—in both its Counterclaims and to the media—that Mattel employees have repeatedly sought access to competitor showrooms, including MGA's, under false pretenses.  Those contentions are central to MGA's claims, including that Mattel "systematically defrauded nearly every toy manufacturer in the business of their confidential information."  The Court should compel MGA to respond to Mattel's discovery requests seeking information about those allegations.

### A.   Discovery Regarding Which Toy Fairs Are at Issue and Who Was Present at the Corresponding Showrooms (RFPs 12, 13, 16)

MGA alleges that Mattel's employees, including Jeff Lange, Sal Villasenor, Carey Plunkett, Kelly Osier, Candace Change and Tyler Snyder, were present at toy fairs under pseudonyms and by using false identification.  Counterclaims ¶ 11. MGA has therefore put its showrooms, and the individuals who were present in those showrooms, at issue.

RFP 12 seeks information regarding which toy fairs are at issue in MGA's allegations.  RFPs 13 and 16 relate to who was present at each.  That information is critical to ascertaining whether the products and other matters that MGA presented at the toy fairs was even trade secret or confidential.  For example, there is ample reason to believe that MGA invited members of the press, competitors and other third parties who were under no obligation of confidentiality into its toy fair showrooms.  That alone would be fatal to MGA's trade secret claims.

### B.   Evidence That Mattel Employees Used False Pretenses to Access Showrooms (RFPs 10, 22 Interrogatory 11, Deposition Topic 18)

MGA has made sweeping allegations regarding Mattel's purported worldwide scheme to defraud nearly every toy manufacturer in the business -- nearly 75 companies are named in MGA's counterclaim -- of their confidential information, but MGA has provided virtually no specific information to support these allegations. Counterclaims ¶ 11.  RFPs 10 and 22, Interrogatory No. 11 and Deposition Topic No. 18 seek discovery relating directly to these allegations.

## C.   Evidence Concerning Whether MGA Treated Information at Toy Fairs as Confidential (RFPs 14, 15, 18, 47, Interrogatory 12, Deposition Topic 10)

MGA alleges that the toy information in its "private" showrooms was confidential.  Mattel should not be forced to take MGA's word for that, particularly given that MGA's own witnesses have admitted that all manner of third parties are invited into MGA's showrooms and that MGA has no evidence other toy manufacturers treat catalogs or other information in their showrooms as trade secrets.[2]   Still, MGA asserts that it treated the information in its "private" showrooms as confidential, including by limiting access to these showrooms. Mattel seeks documents regarding MGA's efforts to limit access to its showrooms (RFP 14), any agreements that MGA required entrants to sign in order to gain access to the showrooms (RFP 15), and the type of material that MGA made available in these showrooms (RFP 18).  RFP 47 asks for the documentation surrounding toy fair secrecy, including MGA's policy, sign-out and sign-in sheets for access to the confidential information, and logs showing who had access.  That information is relevant to whether MGA's information was publicly disclosed at toy fairs.  Mattel also asks that MGA identify the procedures MGA used to limit access to its

---

[2]   See, e.g., Deposition Transcript of Isaac Larian [30(b)(6)], Vol. 16, at 4276:8-12.

18

1    showrooms (Interrogatory No. 12) and to provide a knowledgeable 30(b)(6) witness

2    to testify on the same (Deposition Topic No. 10).

3           RFPs 14, 15, and 47, Interrogatory No. 12 and Deposition Topic No. 10

4    directly bear on what steps MGA took to limit access to its showrooms, which is

5    highly relevant to Mattel's defense of these allegations.  For example, if MGA did

6    not restrict access to its showrooms in any meaningful way, then the products and

7    information presented there could not be trade secret.  While MGA has vaguely

8    agreed to produce documents pertaining to its implementation and maintenance of

9    confidentiality at toy fairs, it has neither agreed explicitly to produce documents

10   showing a lack of confidentiality nor agreed to provide any information prior to

11   2000.   Dkt. No. 8660 at 11.   This limitation is inadequate given that MGA

12   expressly accuses Mattel of trade secret theft dating back to 1992.  Counterclaims

13   ¶¶6, 11.  Thus, Mattel is entitled to evidence regarding confidentiality and secrecy

14   and the lack thereof dating back to 1992, as called for in these discovery requests.

15          RFP 15 seeks any confidentiality agreements that MGA required entrants to

16   sign—which is especially relevant given that MGA contends that many

17   manufacturers required the use of NDAs and that Mattel employees in fact signed

18   one or more confidentiality statements in order to gain entry to competitor

19   showrooms without any intention to comply with the NDA.   Counterclaims ¶¶ 8,

20   11.   The evidence adduced to date demonstrates that MGA made no effort to

21   maintain the confidentiality of its toy fair showrooms.   Mattel is entitled to

22   discovery into what steps, if any, MGA took.

23          Also, the steps MGA took to limit access to its showrooms informs whether

24   MGA considered the material in the showrooms confidential.  RFP 18—asking for

25   documents that were present in MGA's showrooms—is relevant for the same

26   reason.  If the information in the showroom was not considered confidential by

27   MGA, then Mattel employees, no matter how they obtained access, could not have

28   stolen confidential information.

D.   **Evidence Regarding When MGA Learned of Mattel's "Market Intelligence Group" (RFPs 52, 55, Deposition Topics 17, RFAs 16-26)**

MGA claims to have brought its eleventh-hour counterclaims because it only recently discovered the existence of Mattel's "Market Intelligence Group" when it deposed Sal Villasenor on July 12, 2010.  Counterclaims ¶ 6.  The evidence shows otherwise.  Mattel seeks discovery aimed at determining what MGA knew and when it knew it (RFPs No. 52, 55, Deposition Topic No. 17, and Requests for Admission 16-26).

RFPs 52 and 55 seeks documents, such as emails between Mr. Villasenor and Mr. Brawer, that would potentially show that MGA was aware of the Market Intelligence Group long before MGA claims to have had such knowledge.  Deposition Topic No. 17 seeks for MGA to provide a knowledge 30(b)(6) witness on the issues and Mattel's Requests for Admissions Nos. 16-26—which focus on to what Mr. Villasenor told Mr. Brawer and when—similarly are aimed at creating an accurate timeline.  Such discovery is relevant both to MGA's express allegations but also to Mattel's statute of limitations and laches defenses.

III.   **MATTEL IS ENTITLED TO DISCOVERY ON UNSPECIFIED ACTS OF FRAUDULENT CONDUCT/POTENTIAL PREDICATE ACTS BY MATTEL AND ITS AGENTS**

MGA alleges that Mattel and its agents, including Quinn Emanuel and Bain & Company, committed numerous (yet unspecified) acts of purported fraud, which may or may not pertain to MGA's RICO claim.  Counterclaims ¶¶ 4, 23-56.  Mattel is entitled to basic discovery so that it can understand what MGA alleges.

A.   **Evidence Regarding MGA's Allegations that Mattel Took Vargas's Lawyer to the Woodshed (RFP 21, Interrogatory 13, Deposition Topic 12)**

One of MGA's most persistent allegations is that Mattel is wrongfully influencing witnesses, and in particular, that Mattel took Pablo Vargas's lawyer "to the woodshed" regarding Mr. Vargas's testimony.  These discovery requests seek information related to that allegation.  RFP 21 focuses on communications that MGA had with Mr. Vargas, as they are likely to show that it was MGA, not Mattel, that sought to wrongly influence Mr. Vargas.  Interrogatory No. 13 seeks the factual basis for MGAs contention that Mattel sought to influence Mr. Vargas through his attorney.  Finally, Deposition Topic No. 12 seeks to examine a witness on MGA's allegations regarding influencing Mr. Vargas, a topic on which MGA has refused to produce a witness.

**B.    Evidence Regarding Spoliation or Other Interference with Justice (RFP 5, 6, Interrogatories Nos. 17, 18, Deposition Topics Nos. 15, 16)**

MGA also asserts that Mattel and its agents have lied under oath, and altered or destroyed documents, and generally interfered with the administration of justice. RFP 5 seeks documents that MGA purports to rely on to show that Mattel allegedly destroyed, altered, and/or concealed documents, and narrows the request such to situations where there was an intent to impair the use of the documents in a proceeding.  RFP 6 asks for documents relating to the allegations that Mattel obstructed justice by lying under oath and obtaining a wrongful injunction, both of which are central accusations with regard to MGA's obstruction of justice allegations.  Interrogatory No. 17 also seeks information related to the alleged destruction, concealment and alteration of documents, which are relevant to MGA's obstruction claim.  RFP 6 seeks documents relating to the allegations that Mattel obstructed justice by lying under oath and obtaining a wrongful injunction, both of which are central accusations with regard to MGA's obstruction of justice allegations. Interrogatory No. 18 seeks a full accounting of MGA's allegations with regard to lying under oath, including what the false testimony is and when it was

discovered.  Deposition Topic No. 16 calls for a full accounting of when and why MGA believes witnesses lied under oath, and the basis for its allegation that the testimony was false.  Finally, Deposition Topic No. 15 seeks information about the factual basis for MGA's allegations of destruction of evidence.  These requests are tailored to allegations MGA raises and are limited to the information necessary for Mattel to defend against MGA's accusations.

## IV.   MATTEL IS ENTITLED TO DISCOVERY ON MGA'S RICO ALLEGATIONS

MGA alleges that Mattel and others including Quinn Emanuel both formed and operated an "association-in-fact" racketeering enterprise and committed multiple alleged "predicate acts."  Counterclaims ¶¶ 314-316.  Mattel's discovery seeks information directly related to those allegations.

### A.   Evidence Regarding MGA's RICO allegations (Interrogatory No. 20)

Interrogatory No. 20 seeks information regarding MGA's RICO allegations.  Furthermore, this interrogatory is almost word-for-word identical to Interrogatory No. 1, propounded by MGA Hong Kong, and compelled as written in DM Order 84.  Id. at 9, 16.

### B.   Evidence Regarding Predicate Acts (Interrogatory No. 14, Deposition Topic No. 13)

Mattel is entitled to evidence regarding the alleged predicate acts that MGA has alleged.  With regard to Interrogatory No. 14, this is a narrower interrogatory than MGA Mexico's own Interrogatory 8, compelled as written in DM Order 84, which pertained to the entire pattern of racketeering activity, whereas here, the interrogatory focuses only on the predicate acts.  In much the same manner, Deposition Topic No. 13 focuses on predicate acts committed by specific named RICO persons, and the factual basis for claims regarding these predicate acts made in MGA's own claims.

## V.   MATTEL IS ENTITLED TO DISCOVERY REGARDING MGA'S NEW DAMAGE CLAIMS  (RFP 83, 92, INTERROGATORY NOS. 15, 19, DEPOSITION TOPICS NOS. 19, 20.1[3], REQUESTS FOR ADMISSION NO. 1-15)

Mattel is also entitled to discovery regarding MGA's newly alleged harm.  As shown above, Mattel is entitled to discovery regarding these allegations that are based on Mattel's purported trade secret misappropriation.  (See Sections I.A.4 and I.B.8.)  MGA also claims it is entitled to substantial damages arising out of its RICO claim and its wrongful injunction claim.  Counterclaims ¶¶ 318, 321.  Mattel thus properly seeks discovery of these MGA damage claims.

RFP 92 seeks documents that MGA plans to use at trial to establish damages from its Counterclaims—which Mattel is clearly entitled to—and RFP 83 seeks certain MGA financial statements so that Mattel may prepare a response adequately.  Interrogatory Nos. 15 and 19 require that MGA provide Mattel with facts supporting its contentions that it was injured by Mattel, as set forth in the Counterclaims, and to identify persons with knowledge of those facts.  Similarly, Deposition Topic No. 19 seeks a knowledgeable 30(b)(6) witness who can testify to the damages as set forth in the Counterclaims.  Deposition Topic No. 20.1 seeks testimony as to how Mattel was unjustly enriched—as MGA alleges.  This information is necessary if Mattel is to conduct its own investigation into MGA's claims, which it must do in order to prepare for trial.

In response to MGA's wrongful injunction claim, Mattel also propounds a series of Requests for Admissions that deal with the timing of the injunction itself (RFAs 1, 2), the effect of the injunction (RFAs Nos. 3-7), and what product lines

---

[3]   There are two Deposition Topics No. 20.  In order to distinguish the two topics, Mattel has designated the first one Deposition Topic No. 20.1 and the second one Deposition Topic No. 20.2.

MGA was in fact entitled to sell (RFAs Nos. 8-15). This information—such as the dates of the injunction and what happened to the BRATZ brand during the period of the injunction—is critical to, among other things, any mitigation defense that Mattel might put forward. As such, MGA should be required to respond to these Requests for Admissions in a timely fashion.

## VI. MATTEL IS ENTITLED TO DISCOVERY REGARDING THE COUNTERCLAIMS AND POTENTIAL AFFIRMATIVE DEFENSES

Mattel's discovery requests also seek information that directly bears on the counterclaims as MGA has alleged them or that are relevant to potential affirmative defenses that Mattel may use at trial.

### A. Discovery Requests Directly Related to Counterclaims (RFPs 3, 8, 9, 11, 45, 46, 49)

Mattel seeks information that forms the basis for each of the counterclaims. For example, RFP 3 seeks documents relating to MGA's allegation in its RICO claim that Mattel engaged in "numerous criminal acts." Counterclaims ¶314. RFP 8 is limited to documents that MGA may use to prove the Counterclaims. RFP 9 seeks documents relating to when MGA first learned the facts forming the basis allegations, which, among other things, pertains directly to Mattel's statute of limitations and laches defenses. In RFP 11, Mattel seeks non-privileged documents relating to MGA's investigation of its claims, which may reveal prior inconsistent statements by MGA and additionally can go to any number of affirmative defenses. In fact, MGA has argued that Mattel's *failure* to investigate various allegations constitutes waiver of certain rights; Mattel is entitled to explore the same argument with respect to MGA. RFP 45 requires MGA to provide documents sufficient to identify people with knowledge of the facts as alleged, which is crucial to Mattel's ability to investigate MGA's allegations for itself and to identify potential witnesses in its defense. Similarly, RFP 46 is focused on past and present MGA employees with knowledge of the facts. RFP 49 seeks documents relating to any technological

surveillance MGA engaged in when investigating Mattel's alleged misconduct.  This too is relevant to identifying potential witnesses and uncovering evidence supporting or refuting MGA's claims.  The request is also relevant to establishing the timing of MGA's knowledge of its claims, which is directly relevant to statute of limitations and laches, and to whether MGA engaged in improper acts itself, which may be relevant to unclean hands.

### B.    Discovery Requests Related to Potential Affirmative Defenses (RFP 50, 51, Deposition Topic 20.2)

RFP 50 seeks documents relating to MGA's efforts to "spy on" Mattel, while RFP 51 seeks documents related to specific surveillance tactics that MGA has engaged.  Such information is highly relevant to Mattel's own potential unclean hands defense as well as to statute of limitations and laches since they may reveal the timing of MGA's knowledge of the actions it has belatedly sued upon.  Similarly, with Deposition Topic 20.2, Mattel seeks discovery as to how MGA came into possession of certain confidential Mattel documents.  This information is relevant to showing that MGA engaged in surveillance and theft of trade secret information, which goes to show that the supposed trade secrets were not owned by MGA at all but instead were stolen.  MGA's possession of this information is further relevant to show its unclean hands.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its motion.

DATED: September 23, 2010          QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   /s/ Michael T. Zeller
        Michael T. Zeller
        Attorneys for Mattel, Inc.