FILED SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP 17 2010

CENTRAL DISTRICT OF CALIFORNIA
BY LAW          DEPUTY

1   ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
2   WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
4   405 Howard Street
San Francisco, CA 94105
5   Telephone:  415-773-5700
Facsimile:  415-773-5759
6
7   WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
8   ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
9   Los Angeles, CA  90017
Telephone:  213-629-2020
10  Facsimile:  213-612-2499

11  THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
12  ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
13  Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

14  Attorneys for MGA Parties

15              UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
16                 SOUTHERN DIVISION

17

| | |
|---|---|
| 18  CARTER BRYANT, an individual | Case No. CV 04-9049 DOC (RNBx) |
| 19              Plaintiff, | Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727 |
| 20        v. | **Hon. David. O. Carter** |
| 21  MATTEL, INC., a Delaware corporation, | **DECLARATION OF MARK P. WINE IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER FROM MATTEL, INC.'S NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) (THIRD PHASE 2 NOTICE)** |
| 22              Defendant. | |
| 23  AND CONSOLIDATED ACTIONS | |
| 24 | Date:  TBD |
| 25 | Time:  TBD |
| 26 | Place: Courtroom 9D |
| 27 | |

28

I, Mark P. Wine, declare as follows:

1.     I am a member of the Bar of the State of California and admitted to practice before this Court, and an attorney with the law firm of Orrick, Herrington & Sutcliffe LLP, counsel for Phase 2 to MGA Entertainment, Inc. ("MGAE"), MGA Entertainment HK, Ltd. ("MGA HK"), MGAE De Mexico, S.R.L. De C.V. ("MGAE Mexico"), and Isaac Larian (collectively, the "MGA Parties"). I make this declaration in support of Notice of Motion and Motion for Protective Order From Mattel, Inc.'s Notice of Deposition of MGA Entertainment, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6) (Third Phase 2 Notice).

2.     Attached hereto as **Exhibit A** is a true and correct copy of pages 1 and 9-23 of Mattel's Notice of Deposition of MGA Entertainment Inc. Pursuant To Federal Rule of Civil Procedure 30(b)(6)(Phase 2 Notice) dated August 11, 2010.

3.     Attached hereto as **Exhibit B** is a true and correct copy of a letter from Michael T. Zeller, counsel of Mattel to Annette Hurst and Thomas McConville, counsel for MGA dated March 2, 2010 (**Filed under Seal**).

4.     Attached hereto as **Exhibit C** is a true and correct copy of pages 1, 9-17 of Mattel's Notice of Deposition of MGA Entertainment Inc. Pursuant To Federal Rule of Civil Procedure 30(b)(6)(First Phase 2 Notice) served on January 26, 2010.

5.     Attached hereto as **Exhibit D** is a true and correct copy of pages 1, 13-25 of Mattel's Fourth Notice of Deposition of MGA Entertainment Inc. Pursuant To Federal Rule of Civil Procedure 30(b)(6) served on January 9, 2008.

6.     Attached hereto as **Exhibit E** is a true and correct copy of an email produced by MGA bearing Bates Numbers MGA2 1756419-20 (**Filed under Seal**).

I declare under penalty of perjury that the foregoing is true and correct. this

Executed on September 10, 2010 in Irvine, California.

Mark P. Wine

WINE DECL. ISO MGA'S MOT. FOR PO FROM MATTEL
NOTICE OF DEPOSITION OF MGA
CV-04-9049 DOC (RNBx)

# Exhibit A

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>MGA ENTERTAINMENT, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br><br>(Third Phase 2 Notice) |

00505.07975/3586515.4

1 number(s) for or otherwise associated with such account and the name of each holder,

2 including without limitation, each beneficial holder, of each such account.

3    Y. "Any" as used in these Topics includes the word "all," and the word

4 "all" as used in these Topics includes the word "any."

5    Z. The singular form of a noun or pronoun includes within its meaning

6 the plural form of the noun or pronoun so used, and vice versa; the use of the masculine

7 form of a pronoun also includes within its meaning the feminine form of the pronoun so

8 used, and vice versa; the use of any tense of any verb includes also within its meaning

9 all other tenses of the verb so used, whenever such construction results in a broader

10 request for information; and "and" includes "or" and vice versa, whenever such

11 construction results in a broader disclosure of documents or information.

12      **<u>Topics of Examination</u>**

13    1. Any and all qualitative and quantitative MARKET RESEARCH

14 conducted by or on behalf of MGA RELATING TO or including any MATTEL

15 product, and/or any attributes of any MATTEL product, including but not limited to the

16 manner, methodology and results of such research. This includes but is not limited to

17 such research RELATING TO the following products, as used in MGA's Complaint,

18 dated April 13, 2005:

19    (a) BRATZ;

20    (b) My Scene;

21    (c) Flavas;

22    (d) Diva Starz;

23    (e) BRATZ Petz;

24    (f) My Scene Pets;

25    (g) 4-Ever Best Friends;

26    (h) Wee 3 Friends;

27    (i) Mommy's Little Patient;

28    (j) Little Mommy Potty Training Baby Doll;

(k)     Alien Racers; and

(l)     AcceleRacerS

2.     All facts of which YOU are aware indicating that any MGA product took market share or sales from any MATTEL product.

3.     All facts of which YOU are aware indicating that any MATTEL product took market share or sales from any MGA product.

4.     The purposes, functions, and operation of YOUR ArchiveOne database, including, but not limited to, the reasons YOU adopted or implemented the ArchiveOne database, its search capabilities, all custodians contained in the ArchiveOne database, the identity of all MGA employees who have been excluded from the database and the reasons for their exclusion, and the destruction or deletion of any data from the ArchiveOne database at any time.

5.     YOUR indemnification agreement with BRYANT, including without limitation:

(a)     All written and oral COMMUNICATIONS with the Internal Revenue Service referring or relating to YOUR agreement to pay the legal fees of BRYANT, including those found at MGA2 1739846-1740228.

(b)     All DOCUMENTS that YOU provided the Internal Revenue Service in response to its request for "all legal agreements with Mr. Carter Bryant, which describe the royalty arrangement in effect with Mr. Bryant and terms of employment," referenced in MGA2 1739846-1739863, at MGA2 1739846.

(c)     The "indemnification agreement with Bryant whereby [MGA] agreed to indemnify Bryant for up to 90% of legal expenses incurred by Bryant as a result of the agreement he entered into with MGA," referenced in MGA2 1740036-1740055, at MGA2 1740043.

(d)     The preparation of "Issue 3," relating to YOUR agreement to pay the legal fees of BRYANT, in YOUR Presentation to the Internal Revenue Service

1 | Appeals Division, dated March 5-6, 2009, found at MGA2 1740099-1740152, at
2 | MGA2 1470143-1470144.

3 |       (e)    The factual basis supporting YOUR statement that the Internal
4 | Revenue Service was "incorrect" in its position that "MGA incurred legal expenses to
5 | defend Bryant when it had no legal obligation to do so," referenced in MGA2 1740036-
6 | 1740055, at MGA2 1740045.

7 |       (f)    The factual basis supporting YOUR statement that "MGA was liable
8 | for 90% of the legal expenses incurred by Bryant stemming from agreements Bryant
9 | entered into with MGA," referenced in MGA2 1740036-1740055, at MGA2 1740052.

10 |       (g)    The factual basis supporting YOUR statement that "MGAE agreed
11 | to pay for certain of Carter Bryant's legal fees and expenses in connection with the
12 | litigation, but did not agree to indemnify Bryant as to the outcome of the litigation,"
13 | referenced in MGA2 1740227-1740228, at MGA2 1740227.

14 |       6.    The creation, design and development of BRATZ HEAD GAMEZ.

15 |       7.    The creation, design and development of BRATZ HOLLYWOOD.

16 |       8.    The creation, design and development of BRATZ SECRET DATE.

17 |       9.    YOUR knowledge of MATTEL's My Scene Swappin' Styles theme
18 | prior to January 19, 2005.

19 |       10.    YOUR knowledge of MATTEL's My Scene Hollywood theme prior
20 | to January 19, 2005.

21 |       11.    YOUR knowledge of MATTEL's My Scene Mystery Date concept.

22 |       12.    All MGA practices and policies RELATING to the consideration,
23 | recruitment, potential hiring and hiring of potential MGA employees, including without
24 | limitation any written materials that must be signed, forms that must be filled out, or
25 | information MGA requires before it will discuss employment with potential employees.

26 |       13.    YOUR consideration, recruitment, potential hiring or hiring of the
27 | following:  Omar Busailah, Ricardo Abundis, Janine Brisbois, Jorge Castilla, Dan

28 |

-11-

1  Cooney, Nick Contreras, Alice Kao, Ken Kauffman, Jill Hatch, Ron Rae, Jim Huntley,

2  Patrick Potgiesser or Thomas Pfau.

3      14.     BRAWER'S involvement in YOUR consideration, recruitment,

4  potential hiring or hiring of any MATTEL PERSONNEL, including without limitation

5  all individuals identified in Deposition Exhibit 664.

6      15.     Ricardo Abundis' duties and responsibilities at MGA, and all work

7  performed and services provided to MGA at any time.

8      16.     OUT LICENSE AGREEMENTS for BRATZ that have generated

9  the 10 highest total royalty or other payments to MGA from the licensee from 2001 to

10 the present, including but not limited to the property or rights covered by each such

11 agreement, MGA's understanding of each and every term (including the royalty rates

12 and other payment terms) of each such agreement and MGA's methodologies, practices

13 and procedures regarding the determination of the royalty rates and other payment

14 terms used in each such agreement.

15     17.     OUT LICENSE AGREEMENTS for OTHER DOLL PRODUCTS

16 that have generated the 10 highest total royalty or other payments to MGA from the

17 licensee from 2001 to the present, including but not limited to the property or rights

18 covered by each such agreement, MGA's understanding of each and every term

19 (including the royalty rates and other payment terms) of each such agreement and

20 MGA's methodologies, practices and procedures regarding the determination of the

21 royalty rates and other payment terms used in each such agreement.

22     18.     OUT LICENSE AGREEMENTS for OTHER CHARACTERS that

23 have generated the 10 highest total royalty or other payments to MGA from the licensee

24 from 2001 to the present, including but not limited to the property or rights covered by

25 each such agreement, MGA's understanding of each and every term (including the

26 royalty rates and other payment terms) of each such agreement and MGA's

27 methodologies, practices and procedures regarding the determination of the royalty

28 rates and other payment terms used in each such agreement.

NOTICE OF DEPOSITION
Exhibit A, Page 6

19.    IN LICENSE AGREEMENTS for OTHER DOLL PRODUCTS that have generated the 10 highest total royalty or other payments from MGA to the licensor from 2001 to the present, including but not limited to the property or rights covered by each such agreement, MGA's understanding of each and every term (including the royalty rates and other payment terms) of each such agreement and MGA's methodologies, practices and procedures regarding the determination of the royalty rates and other payment terms used in each such agreement.

20.    IN LICENSE AGREEMENTS for OTHER CHARACTERS that have generated the 10 highest total royalty or other payments from MGA to the licensor from 2001 to the present, including but not limited to the property or rights covered by each such agreement, MGA's understanding of each and every term (including the royalty rates and other payment terms) of each such agreement and MGA's methodologies, practices and procedures regarding the determination of the royalty rates and other payment terms used in each such agreement.

21.    All YOUR COMMUNICATIONS with SALEMNIA prior to and including February 17, 2003.

22.    SALEMNIA'S position and job responsibilities while employed by YOU, including but not limited to the specific nature, type, extent, quality and timing of work and services that SALEMNIA provided to, performed, or were requested, solicited or proposed by YOU, the work product that she generated , reviewed, revised and/or contributed to, the persons to whom she reported, both directly and indirectly, and the persons who reported to her, both directly and indirectly, at any time from June 1, 2000 through the present.

23.    Payments of money or any other item of value, including but not limited to salary, wages, bonuses, perks, and gifts, that YOU, including but not limited to MGA's executives, employees, licensees, agents, contacts, and acquaintances, have made to, for or on behalf of SALEMNIA since June 1, 2000, including, without limitation, (a) the amounts of each such payment and the equivalent dollar value of

1   each item of value, (b) the timing of each such payment, (c) the IDENTITY of each

2   payor and payee of each such payment, (d) the IDENTITY of each bank or financial

3   institution account to which such payment was made, and (e) the reasons for each such

4   payment.

5        24.    SALEMNIA's performance as an employee of MGA, including but

6   not limited to evaluations or other measures of her performance, comparisons of her

7   performance with respect to expectations or goals for her position, and reviews of her

8   work.

9        25.    The circumstances and events surrounding the resignation,

10   termination and departure of SALEMNIA from MGA, including but not limited to the

11   timing and reason(s) for her resignation, termination and departure; the purpose,

12   preparation and execution of MGA2 0047760; each of the "documents" referred to in

13   MGA2 0047760 and any copies that were made by SALEMNIA or anyone else at

14   MGA of those documents at any time; all discussions that YOU had with SALEMNIA

15   between May 5, 2008 and May 23, 2008; the selection, hiring, and training of a

16   replacement to handle SALEMNIA'S position or job duties, or any portion thereof,

17   after her resignation or departure; and any COMMUNICATIONS between YOU and

18   ANY PERSON RELATING TO the resignation, termination or departure of

19   SALEMNIA.

20        26.    YOUR knowledge of any planned or actual MATTEL product,

21   process, plan, practice, policy, or any other aspect of SALEMNIA'S employment or

22   potential employment at MATTEL, that SALEMNIA described or shared with YOU.

23        27.    The content, meaning, and authenticity of SALEMNIA's personnel

24   file maintained or created by YOU.

25        28.    Any investigation REFERRING OR RELATING TO SALEMNIA,

26   including the IDENTITY of any PERSON who conducted any such investigation, the

27   witnesses interviewed, and any work product, reports, notes, transcripts, recordings, or

28

-14-

1   other DOCUMENTS prepared by or for the benefit of any PERSON who conducted

2   such an investigation.

3         29.   YOUR policies, procedures, practices, techniques and processes

4   regarding MARKET RESEARCH for each year from 2000 to the present.

5         30.   COMMUNICATIONS that REFER OR RELATE TO MATTEL or

6   TO any MATTEL product between YOU and third parties, including but not limited to:

7   1) manufacturers, distributors, wholesalers, retailers, licensees, 2) any contemplated,

8   proposed or potential manufacturers, distributors, wholesalers, retailers, or licensee, and

9   3) YOUR employees, agents, licensees, manufacturers, distributors, and designers in

10  Hong Kong.

11        31.   YOUR recruiting, hiring, engagement, employment, or retention of

12  MATTEL PERSONNEL, including but not limited to:

13        (a)   COMMUNICATIONS including, but not limited to, those between

14  YOU and any hiring or recruiting agency, REFERRING OR RELATING TO YOUR

15  desire, intent, or need to locate, recruit, contact, or hire any MATTEL PERSONNEL;

16        (b)   COMMUNICATIONS   between   YOU   and   any   MATTEL

17  PERSONNEL at a time when that individual was not employed by MGA, pertaining to

18  that PERSON's potential or actual recruitment, hiring, engagement, or employment; to

19  MGA's deficiencies, goals, objectives, needs or desires; or to any planned or actual

20  MATTEL product, process, plan, practice or policy.

21        32.   YOUR practices and activities at toy industry fairs and trade shows,

22  including, but not limited to, access to the booths of other toy manufacturers and how

23  such access was obtained, the use of fake drivers' licenses or other identification by

24  YOUR employees, and YOUR security policies for YOUR booth.

25        33.   Information regarding YOUR possession or knowledge of the

26  information described or identified in the Supplemental Response to Interrogatory No.

27  20 of Mattel, Inc.'s Third Supplemental Objections and Responses to Interrogatory Nos.

28

NOTICE OF DEPOSITION
Exhibit A, Page 9

20-23 and 28 in MGA Entertainment, Inc.'s Second Set of Interrogatories, served January 11, 2010 and erroneously dated January 11, 2009, including but not limited to:

(a)    the identification and authentication of any related DOCUMENTS in YOUR possession, custody, or control, physical or electronic, and how you came to possess such DOCUMENTS;

(b)    any related processes, procedures, or designs that have been implemented or used in YOUR business operations;

(c)    the IDENTITY of any MGA employee who had access to related DOCUMENTS during their employment at MGA and any use thereof;

(d)    the retention, transfer, copying and use of MATTEL DOCUMENTS, files or information by any MATTEL PERSONNEL before, during or after their employment at MGA; and

(e)    COMMUNICATIONS between YOU and any MATTEL PERSONNEL RELATING TO MATTEL or to any planned or actual MATTEL product, business plan, line list, DOCUMENT or pricing.

34.    All versions of YOUR EMPLOYEE AGREEMENTS, including without limitation YOUR understanding of the purpose, meaning, interpretation or significance of YOUR EMPLOYEE AGREEMENTS and any terms contained therein.

35.    The purpose, meaning, interpretation or significance of any clause in any version of YOUR EMPLOYEE AGREEMENTS by which YOUR employees assign to YOU any ownership of inventions, ideas, creations, works, confidential information, trade secrets, or proprietary intellectual property created, prepared or developed by YOUR employees.

36.    All changes made to YOUR EMPLOYEE AGREEMENTS over time, including without limitation YOUR reasons for these changes.

37.    Any enforcement of YOUR EMPLOYEE AGREEMENTS by YOU, including any actions, lawsuits, demands, or claims that were threatened or

filed by YOU against any of YOUR employees or former employees relating to or concerning violations of YOUR EMPLOYEE AGREEMENTS.

38. Any training, instruction, or explanation provided by YOU regarding the purpose, meaning, interpretation or significance of YOUR EMPLOYEE AGREEMENTS and any terms contained therein.

39. Any rules, guidelines, policies, practices or procedures relating to or concerning YOUR ownership of inventions, ideas, creations, works, confidential information, trade secrets, or intellectual property created, prepared or developed by YOUR employees.

40. Any requirement or practice by YOU, at any time since January 1, 1995, that YOUR employees sign or execute EMPLOYEE AGREEMENTS.

41. All forecasts and projections of BRATZ revenues, profits and growth rates, including but not limited to the assumptions underlying all such forecasts and projections, prepared by YOU or on YOUR behalf anytime from 2008 to the present.

42. YOUR use or knowledge of the use of any WIPING PRODUCT on any media assigned to, used by, possessed by or operated by any MGA current or former employee identified by any party as having knowledge of the underlying facts of this action, including but not limited to the installation, use, operation, removal, deletion or concealment of the installation of any WIPING PRODUCT on any such media.

43. Any and all efforts taken by YOU to collect information regarding YOUR use or knowledge of the use of any WIPING PRODUCT on any media assigned to, used by, possessed by or operated by any MGA current or former employee identified by any party as having knowledge of the underlying facts of this action, including but not limited to the installation, use, operation, removal, deletion or concealment of the installation of any WIPING PRODUCT on any such

1  media, including the date on which YOU learned of the use of or knowledge of any

2  WIPING PRODUCT and from whom YOU learned such information.

3       44.    The media on which any WIPING PRODUCT was installed,

4  used, operated, removed, deleted or concealed, including but not limited to the

5  IDENTIFICATION of such media (including the PERSON or PERSONS who used

6  such media), the date or dates on which any WIPING PRODUCT was installed,

7  used, operated, removed, deleted or concealed, IDENTIFICATION of the PERSON

8  or PERSONS who installed, used, operated, removed, deleted or concealed such

9  software.

10       45.    IDENTIFICATION, if possible, for each piece of media on

11  which any WIPING PRODUCT was installed, used, operated, removed, deleted or

12  concealed, of the information on that media that was cleaned, altered, revised,

13  deleted, wiped, destroyed or concealed, including but not limited to any and all

14  efforts undertaken by YOU to identify such information.

15       46.    Any and all policies, procedures or practices, whether formal or

16  informal, regarding the installation, use, operation, deletion, removal or concealment

17  of any WIPING PRODUCT on any computer or any media that YOU own or

18  owned, lease or leased, possess or possessed or is or was in any way under your

19  possession, custody or control.

20       47.    The WIPING PRODUCT or WIPING PRODUCTS that YOU

21  use or used to remove information from hard drives or other media in any computer

22  in your possession, custody or control before such computers were redeployed or

23  disposed of, including but not limited to the name, publisher, vendor, servicer of the

24  WIPING PRODUCT or WIPING PRODUCTS, the PERSON or PERSONS who

25  used the WIPING PRODUCT or WIPING PRODUCTS, and the dates that each

26  WIPING PRODUCT was used.

27       48.    IDENTITY of the person or persons who caused the BeClean

28  software to be installed on, operated or removed from the hard drives identified in

1  the July 12, 2010 Report and Recommendation of the Special Master (Exhibit 1

2  attached hereto).

3       49.    IDENTITY of all PERSONS who, between 12:01 a.m. and 11:59

4  p.m. on April 11, 2007, had physical access to the hard drive or the computer

5  containing hard drive associated with image OAD33AC1 identified in the July 12,

6  2010 Report and Recommendation of the Special Master (Exhibit 1 attached hereto),

7  including but not limited to the time(s) and duration(s) that each PERSON had such

8  access.

9       50.    IDENTITY of all PERSONS who, between 12:01 a.m. and 11:59

10  p.m. on April 11, 2007, electronically or remotely accessed the hard drive or the

11  computer containing hard drive associated with image OAD33AC1 identified in the

12  July 12, 2010 Report and Recommendation of the Special Master (Exhibit 1

13  attached hereto), including but not limited to the time(s) and duration(s) that each

14  PERSON had such access.

15       51.    The physical location of the hard drive or the computer

16  containing hard drive associated with image OAD33AC1 identified in the July 12,

17  2010 Report and Recommendation of the Special Master (Exhibit 1 attached hereto),

18  between 12:01 a.m. and 11:59 p.m. on April 11, 2007.

19       52.    All YOUR COMMUNICATIONS with TUMALIUAN prior to June

20  10, 2002.

21       53.    All    YOUR    COMMUNICATIONS    with    TUMALIUAN

22  REFERRING OR RELATING TO any planned or actual MATTEL product, design,

23  process, plan, practice, policy, or any aspect of TUMALIUAN'S employment or

24  potential employment or internship at or for MATTEL.

25       54.    TUMALIUAN'S position and job responsibilities while employed

26  by YOU, including but not limited to the circumstances of his hiring, the specific

27  nature, type, extent, quality and timing of work and services that TUMALIUAN

28  provided to, performed, or were requested, solicited or proposed by YOU, and the

1  projects and/or products that TUMALIUAN worked on, was contemplated to work on,
2  or was involved with.

3      55.    Payments of money or any other item of value, including but not
4  limited to salary, wages, bonuses, perks, and gifts, that YOU, including but not limited
5  to MGA's executives, employees, licensees, agents, contacts, and acquaintances, have
6  made to, for or on behalf of TUMALIUAN including, without limitation, (a) the
7  amounts of each such payment and the equivalent dollar value of each item of value, (b)
8  the timing of each such payment, (c) the IDENTITY of each payor and payee of each
9  such payment, (d) the IDENTITY of each bank or financial institution account to which
10  such payment was made, and (e) the reasons for each such payment.

11      56.    TUMALIUAN's performance as an employee of MGA, including
12  but not limited to evaluations or other measures of his performance, comparisons of his
13  performance with respect to expectations or goals for his position, and reviews of his
14  work.

15      57.    The circumstances and events surrounding the resignation,
16  termination and departure of TUMALIUAN from MGA, including but not limited to
17  the timing and reason(s) for his resignation, termination and departure; the selection,
18  hiring, and training of a replacement to handle TUMALIUAN'S position or job duties,
19  or any portion thereof, after his resignation or departure; and any
20  COMMUNICATIONS between YOU and ANY PERSON RELATING TO the
21  resignation, termination or departure of TUMALIUAN.

22      58.    The circumstances and events surrounding the resignation,
23  termination and departure of TUMALIUAN from MATTEL, including but not limited
24  to the timing and reason(s) for his resignation, termination and departure and any
25  COMMUNICATIONS between YOU and ANY PERSON RELATING TO the
26  resignation, termination or departure of TUMALIUAN from MATTEL.

27      59.    The content, meaning, and authenticity of TUMALIUAN's
28  personnel file maintained or created by YOU.

-20-

60. Any investigation REFERRING OR RELATING TO TUMALIUAN, including the IDENTITY of any PERSON who conducted any such investigation, the witnesses interviewed, and any work product, reports, notes, transcripts, recordings, or other DOCUMENTS prepared by or for the benefit of any PERSON who conducted such an investigation.

61. YOUR knowledge of TUMALIUAN's contemplated, planned or actual simultaneous employment at MGA and Mattel, including his role as MGA's "double agent," as referenced in MGA2 1756419.

62. MGA's work after April 3, 2006, on projects identified as performed, completed, advanced, contributed to, participated in, led, organized, or managed, in whole or in part, by CASTILLA, as referred to in Deposition Exhibit 7555, including:

(a) MGA's work on the design and development of the forecast portal, including but not limited to the creation, design, and development of the business and technical requirements, official project plan, and timeline for the forecast portal.

(b) MGA's work on its demand planning process.

(c) The effects that MGA's lack of MIS and/or IT resources and MGA's hiring freeze had on its work.

(d) MGA's work on its inventory management systems and processes

(e) MGA's work on its forecast changes reporting.

(f) MGA's work on its product allocation process.

(g) MGA's work on its DATA WAREHOUSE.

(h) MGA's work on the Forecast Reporting System 1 (FRS1).

(i) MGA's work on the Forecast Reporting System 2 (FRS2).

(j) MGA's work on the Axapta Item Master and Axapta Customer Master.

(k) MGA's work on the automation of manual Excel reports using Access.

1         (l)    MGA's work on integrating Little Tikes and Zapf into MGA's

2  processes and reporting, including but not limited to the problems or road blocks

3  encountered during that process.

4         (m)   MGA's work on its new "open-to-buy" process.

5         (n)    MGA's work on its Access database.

6         (o)    MGA's work on the design, development, and anticipated benefits of

7  any processes, systems, and reports RELATING OR REFERRING TO the items in the

8  bulleted list at the top of MGA2 0048983.

9        63.    MGA's average weekly fill rates at Toys R' Us from 2001 until the

10  present.

11        64.    MGA's average weekly fill rates at Walmart from 2001 until the

12  present.

13        65.    MGA's average weekly fill rates at Target from 2001 until the

14  present.

15        66.    MGA's average weekly fill rates at Kmart from 2001 until the

16  present.

17        67.    MGA's average weekly instock percentages at Toys R' Us from

18  2001 until the present.

19        68.    MGA's average weekly instock percentages at Walmart from 2001

20  until the present.

21        69.    MGA's average weekly instock percentages at Target from 2001

22  until the present.

23        70.    MGA's average weekly instock percentages at Kmart from 2001

24  until the present.

25        71.    MGA's average weekly "weeks of supply" at Toys R' Us from 2001

26  until the present.

27        72.    MGA's average weekly "weeks of supply" at Walmart from 2001

28  until the present.

1          73.     MGA's average weekly "weeks of supply" at Target from 2001 until

2    the present.

3          74.     MGA's average weekly "weeks of supply" at Kmart from 2001 until

4    the present.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION
Exhibit A, Page 17

# Exhibit B

Name & Address:
Mark P. Wine (State Bar No. 189897)
Orrick, Herrington & Sutcliffe LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614
Telephone: (949) 567-6700
Facsimile: (949) 567-6710

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT | CASE NUMBER: |
| | CV 04-9049-DOC (RNBx) |
| PLAINTIFF(S) | |
| v. | |
| MATTEL, INC., a Delaware Corporation | **NOTICE OF MANUAL FILING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:** NTC OF MOTION AND MOTION FOR PO FROM MATTEL, INC.'S NTC OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) (THIRD PHASE 2 NTC); EXHS B AND E TO DECL OF MARK WINE; [PROPOSED] ORDER GRANTING NTC OF MOTION AND MOTION FOR PO FROM MATTEL, INC.'S NTC OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) (THIRD PHASE 2 NOTICE) AND EXHS B AND E TO DECL OF MARK WINE; APPLICATION TO FILE UNDER SEAL; [PROPOSED] ORDER GRANTING APPLICATION TO FILE UNDER SEAL

**Document Description:**

☐ Administrative Record

☐ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☒ Other See list of documents described above.

**Reason:**

☒ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☒ Per Court order dated January 4, 2005

☐ Manual Filing required (reason):

| September 10, 2010 | /s/ Mark P. Wine |
| Date | Attorney Name |
| | MGA Parties |
| | Party Represented |

American LegalNet, Inc.
www.FormsWorkflow.com

# Exhibit C

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a Delaware corporation,<br><br>Defendant.<br><hr>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br>(First Phase 2 Notice) |

31.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of DOCUMENTS or information.

## Topics of Examination

1.   Any and all opportunities that YOU claim that YOU lost or that became less valuable as a result of any and all conduct by MATTEL alleged or asserted by YOU in this ACTION.   In connection with this topic, MGA shall, without limitation, identify the alleged lost opportunity, the PERSON with whom MGA believed it had an opportunity, the alleged value of the opportunity, all bases underlying the claimed value of the opportunity, DOCUMENTS and COMMUNICATIONS RELATING TO such opportunity, and any and all reasons that the opportunity was not pursued by YOU to conclusion or obtained.

2.   The benefits, profits or gains, if any, that YOU claim MATTEL has received as a result of any and all wrongful acts by MATTEL alleged or asserted by YOU in this ACTION, including but not limited to any and all calculations, analyses, quantifications, reviews or summaries that supports or RELATES TO the type or amount of any such harm or benefit.

3.   Any other injury or damages that YOU claim MATTEL caused YOU to incur or suffer, including but not limited to YOUR calculations and analyses RELATING TO such alleged damages or injury.

4.   The factual basis for the claims YOU are alleging or asserting in this ACTION against MATTEL.

5.     The formation, operations, activities and management of IGWT, LEXINGTON, VISION CAPITAL, LLC, and OMNI 808 INVESTORS, LLC, including but not limited to the IDENTITY of their current and former officers, directors, owners, members, and managing members, the amount and source of any capital contributions, money borrowed or other cash or assets acquired, the IDENTITY of any bank or investment account with any financial institution for them, PAYMENTS and transfers made to and from such accounts, and the IDENTITY of any PERSON who has transferred or drawn funds from, or is authorized to transfer or draw funds from, any such bank or investment account.

6.     Actual and/or contemplated transactions involving IGWT, OMNI 808 INVESTORS, LLC, LEXINGTON, VISION CAPITAL, LLC, and/or THE ALLEGED INVESTORS (including but not limited to transactions RELATING TO the purchase of a portion of YOUR debt from Wachovia), and the terms and conditions of such transactions, including but not limited to YOUR transfer of any funds to or from them; the purported sale or transfer of YOUR PRODUCTS to or from them; YOUR COMMUNICATIONS with them; any information, including without limitation YOUR financial information, transmitted to or from or discussed with them; and all direct and indirect sources of funds used in any such transactions.

7.     YOUR relationship with OMNI 808 INVESTORS, LLC and THE ALLEGED INVESTORS.

8.     PAYMENTS of any ITEM OF VALUE between YOU or LARIAN and OMNI 808 INVESTORS, LLC or THE ALLEGED INVESTORS, including without limitation any assets belonging to YOU or LARIAN which have been pledged or proposed or requested to be pledged as security in favor of OMNI 808 INVESTORS, LLC and/or THE ALLEGED INVESTORS.

9.     Any plans YOU have made or consideration YOU have given to filing for bankruptcy since January 1, 2007, including without limitation YOUR

1   consultations with financial advisors in that regard and YOUR attempts to move,
2   transfer or withdraw assets from MGA prior to any such filing.

3           10.   YOUR distributions and any other PAYMENTS to LARIAN,
4   including without limitation members of his family and any trusts associated with
5   LARIAN, from January 1, 2004 to the present, and any PAYMENTS by LARIAN to
6   YOU in that time period, including without limitation the amounts thereof and reasons
7   therefor.

8           11.   PAYMENTS YOU have made in excess of $100,000 since January
9   1, 2004 to any PERSON, including without limitation the recipients thereof and reasons
10  therefor.

11          12.   Transactions between YOU and LARIAN, or any PERSON
12  affiliated with LARIAN, between 2004 and the present, including without limitation
13  transactions involving the sale of BRATZ PRODUCTS.

14          13.   The quantity of each BRATZ PRODUCT sold by YOU or YOUR
15  licensees for each year from 2001 to the present to each purchaser, and YOUR profits
16  from such sales, including without limitation: revenues; gross, net and incremental
17  profits; cost of goods sold, unit cost and other costs; customer returns, rebates or
18  credits; marketing and advertising costs, budgets, expenditures and investments
19  (including media and nonmedia advertising, promotions, photography, online
20  advertising, and merchandising).

21          14.   YOUR creation and development of MOXIE GIRLZ and BFC,
22  INK., including without limitation the amounts and sources of funds used in connection
23  therewith, the timing thereof, YOUR financial condition before and after such creation
24  and development and YOUR investments therein and promotions thereof.

25          15.   YOUR acquisition of all or any portion of LITTLE TIKES, ZAPF,
26  and SMOBY, including without limitation the amounts and sources of funds used in
27  connection therewith, the timing thereof, YOUR financial condition before and after
28  such acquisition and YOUR investments therein.

Exhibit C, Page 28
NOTICE OF DEPOSITION

16. YOUR investments in BRATZ, MOXIE GIRLZ, LITTLE TIKES, BFC, INK., SMOBY, and ZAPF, and the PRODUCTS associated therewith, from 2001 to the present (or for each year for which the PRODUCT was designed, manufactured, distributed or sold by YOU or on YOUR behalf), including but not limited to YOUR advertising, market research, product development, product design, promotional expenditures, website development, and any other costs associated with or incurred in connection with their development, production or promotion.

17. Market research or analysis RELATING TO BRATZ and any of YOUR other PRODUCTS.

18. Market research or analysis RELATING TO BRATZ and MY SCENE.

19. YOUR COMMUNICATIONS with retail buyers and distributors regarding anticipated and actual volume of sales and shelf space for YOUR PRODUCTS and MATTEL's PRODUCTS.

20. YOUR BRATZ inventory levels and production capacity, including factory capacity, manufacturing orders, and production processes.

21. Any and all measures YOU have taken to protect YOUR trade secrets or other confidential information, and the timing of YOUR implementation of such measures.

22. Any and all steps or measures YOU have taken to enforce YOUR claimed intellectual property rights, including without limitation lawsuits YOU have filed, threatened to file (whether by letter or otherwise) or contemplated filing based on any perceived misappropriation of YOUR trade secrets or confidential information.

23. YOUR supply chain processes for each year from 2001 to the present, including YOUR use of the terms "sales forecasting," "sales forecasts," "sales planning," and "demand planning."

24.   YOUR Forecast Portal (as the term is used in the DOCUMENT Bates numbered MGA2 0048977-83), its origins and objectives, its functions, its usage, and its results to date.

25.   YOUR demand planning processes for each year from 2001 to the present, including the reasons for YOUR implementation of demand planning, its objectives, any changes in demand planning, and how YOU have assessed or measured its results to date.

26.   YOUR scheduling, planning, inventory, shipping, distribution or forecasting software from January 1, 2001 to the present, including without limitation YOUR use of the John Galt, Atlas Planning System, Axapta, Velocity, Great Plains, Targit, WMS ("Warehouse Management System"), WMOS ("Warehouse Management Open Systems"), and including without limitation their purposes and functions, any modifications over time, YOUR concerns about their weaknesses, including any critical analysis RELATED thereto, what PRODUCTS and functions YOU kept on such systems, and any and all changes, improvements, acquisitions, and upgrades to such systems.

27.   YOUR processes for sales planning, sales forecasting, and inventory forecasting, planning and replenishment for each year from 2001 to the present, including but not limited to YOUR use of any software systems, databases, algorithms, reports, meetings, the participants and their roles, as well as any significant changes in those processes and participants and the reasons therefor.

28.   YOUR product development processes for each year from 2001 to the present, including but not limited to product research, line planning, marketing planning, focus groups, testing, viability studies, design freezes for product and packaging, tool start, final engineer pilot runs, and pre-production samples.

29.   Any  analyses of YOUR performance in sales planning, sales forecasting, demand planning, and inventory forecasting, planning and replenishment from 2001 to the present, including but not limited to measures the company has used,

Exhibit C, Page 30
NOTICE OF DEPOSITION

1  reports, memos, computer records and consultant studies about such performance and
2  the performance reviews of participants in that process, as well as any changes in those
3  measures, processes and procedures and the reasons therefor.

4       30.   Analyses, commentary, awards, complaints or
5  COMMUNICATIONS from retailers or distributors RELATING TO YOUR in-stock
6  performance, as well as clearance of and markdown on YOUR PRODUCTS, from
7  2001 to the present.

8       31.   YOUR investigations RELATING TO any issue or allegation in this
9  ACTION, including without limitation the IDENTITY of any PERSON who conducted
10  any such investigation and any reports, notes, transcripts, recordings, or other
11  DOCUMENTS prepared in connection therewith.

12       32.   YOUR policies, procedures and practices regarding use of
13  COMMUNICATIONS by MAIL or WIRE, including but not limited to (a) the
14  identification of YOUR methods of conveyance of COMMUNICATIONS (blackberry
15  service, etc.), (b) the identification of the conveyors (phone company, express mail
16  service, etc.), and (c) YOUR records and recordkeeping RELATING TO such
17  conveyors of COMMUNICATIONS, and the means by which and locations through
18  which the COMMUNICATIONS YOU have produced in this ACTION were
19  transmitted.

20       33.   YOUR policies, procedures, and practices RELATING TO YOUR
21  use of WIRELESS DEVICES to send or receive e-mail messages to or from MGA's e-
22  mail system from January 1, 2000 to the present.

23       34.   YOUR financial condition, including without limitation revenues,
24  profits, losses, assets, liabilities, balance sheets, profit and loss statements, financial
25  statements, asset book value, and liquidity.

26       35.   All actual, planned, proposed, offered or requested PAYMENTS by
27  or on behalf of YOU to any government official, government entity, or law
28  enforcement authority, including without limitation in Brazil.

36.     All COMMUNICATIONS with law enforcement in Mexico, Canada and the United States by or on behalf of YOU or any of YOUR current or former employees RELATING TO any alleged theft or taking of alleged MATTEL confidential or trade secret information by YOU or PERSONS currently or formerly employed by YOU or RELATING TO any other allegation contained in MATTEL's claims in this ACTION.

37.     All PAYMENTS made directly or indirectly to any vendors or any other PERSON in Mexico, including without limitation attorneys, law firms and consultants, RELATING TO any actual or potential investigation or prosecution of any PERSON or entity for any alleged theft or other taking of alleged MATTEL confidential or trade secret information since 2001, including without limitation the IDENTITY of all recipients of such PAYMENTS, the amounts of each such PAYMENT, the reasons for each such PAYMENT and the use of each such PAYMENT by the recipient.

38.     Any and all smuggling in which YOU have participated or engaged in and all efforts YOU have made to smuggle PRODUCTS or goods across international borders, including without limitation into or out of the United States.

39.     The value of BRATZ from 2004 to the present.

40.     Any efforts YOU have made or contemplated making since January 1, 2008, to encumber, assign, sell or transfer BRATZ intellectual property or any BRATZ rights YOU claim to hold (not including license agreements entered into in the ordinary course of YOUR business).

41.     YOUR 2009 and 2010 BRATZ lines, including without limitation YOUR investments therein, the DESIGN elements incorporated therein and YOUR actual and projected profits therefrom.

42.     Any and all joint defense and/or common interest agreements YOU have entered into in connection with this ACTION, and COMMUNICATIONS in connection therewith, including but not limited to the inception and termination dates of

Exhibit C, Page 32
NOTICE OF DEPOSITION

1 | each agreement, if any, and the IDENTITY of each PERSON who is a party to each
2 | such agreement.

3 |    43. Any and all agreements RELATING TO the requested, actual,
4 | promised or contemplated PAYMENT of attorney's fees by YOU for the benefit of or
5 | on behalf of any PERSON not then-employed by YOU in connection with any actual,
6 | potential or prospective dispute or litigation with MATTEL, including without
7 | limitation DOCUMENTS RELATING thereto, the terms and conditions thereof and
8 | COMMUNICATIONS RELATING thereto.

9 |    44. The IDENTITY of every PERSON whose attorney's fees YOU
10 | have paid in connection with this ACTION or in connection with any actual, potential
11 | or prospective dispute or litigation with MATTEL, and the amount of such fees.

12 |    45. YOUR COMMUNICATIONS with MATTEL employees while
13 | they are employed by MATTEL, and YOUR policies and practices RELATING TO
14 | such communications.

15 |    46. YOUR spoliation and/or concealment of DOCUMENTS or other
16 | evidence in connection with this ACTION.

17 |    47. YOUR preservation of, searches for, collections of and productions
18 | of DOCUMENTS in connection with this ACTION, including without limitation which
19 | sources of information and STORAGE DEVICES YOU have searched for responsive
20 | DOCUMENTS in connection with this ACTION (and which YOU have not) and
21 | YOUR search methods in connection with those searches.

22 |    48. Any and all efforts by YOU or by any PERSON acting on YOUR
23 | behalf to search for, identify, locate, preserve, remove or delete any DOCUMENT,
24 | physical or electronic, that contains or contained any portion of any DOCUMENT
25 | originating from or authored by MATTEL, including without limitation any
26 | DOCUMENT containing internal MATTEL information, and the results of such
27 | efforts, including the identification of DOCUMENTS located and the location,
28 |

Exhibit C, Page 33
NOTICE OF DEPOSITION

1   including custodian, file name, or STORAGE DEVICE (including path and file name),

2   where any such DOCUMENT was discovered.

**Exhibit D**

exh. 1705

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

12              Plaintiff,             Consolidated with
                                       Case No. CV 04-09059
13                                     Case No. CV 05-02727

14         vs.
                                       FOURTH NOTICE OF DEPOSITION
15  MATTEL, INC., a Delaware corporation,   OF MGA ENTERTAINMENT, INC.
                                       PURSUANT TO FEDERAL RULE OF
16              Defendant.             CIVIL PROCEDURE 30(B)(6)

17

18  AND CONSOLIDATED ACTIONS

19

20

21

22

23

24

25

26

27

28

J7209/2254636.1

(30 pgs)
Exhibit no. 1705
Date: 1/24/08
T. Onau · P. Pyburn

Exhibit D, Page 35          1705.1

1  character, or any portion thereof; (ii) any playset and accessory that MATTEL
2  distributes under the name "AcceleRacers" or any derivative thereof ; and/or (iii) any
3  and all other goods, product packaging, advertisements, promotional materials or other
4  thing or item or material manufactured, produced, printed, ordered, marketed,
5  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,
6  offered for license, sold or offered for sale by MATTEL under the name
7  "AcceleRacers" or any derivative thereof.

8          31.   "FORMER MATTEL EMPLOYEES" means any former Mattel
9  employee who left MATTEL to join YOU, including but not limited to Janine Brisbois,
10  Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado,
11  Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

12          32.   "COMPLAINT" means the Complaint for False Designation of
13  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair
14  Competition (15 U.S.C. § 1125(a)); <u>Cal. Bus. & Prof. Code</u> § 17200 et seq. and
15  California Common Law); Dilution (15 U.S.C. § 1125(c), <u>Cal Bus. & Prof. Code</u>
16  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or
17  about April 13, 2005.

18          33.   The singular form of a noun or pronoun includes within its meaning
19  the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine
20  form of a pronoun also includes within its meaning the feminine form of the pronoun so
21  used, and *vice versa*; the use of any tense of any verb includes also within its meaning
22  all other tenses of the verb so used, whenever such construction results in a broader
23  request for information; and "and" includes "or" and *vice versa*, whenever such
24  construction results in a broader disclosure of documents or information.

25

26          **Topics of Examination**

27        1.   The invention, creation, origin, conception, authorship, design and
28  development of the CONTESTED MGA PRODUCTS, including without limitation the

1  circumstances under which and the date(s) on which each occurred and the IDENTITY

2  and role(s) of each PERSON involved.

3        2.    Any revisions, modifications or changes made to any of the

4  CONTESTED MGA PRODUCTS, including without limitation any proposed

5  alternatives, modifications or changes (whether or not implemented) to such

6  CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications

7  or changes were made or proposed and the reasons for their implementation or non-

8  implementation.

9        3.    The development of YOUR 2005 product line, including the

10  IDENTITY of each PERSON who participated in the decision making leading up to

11  YOUR 2005 product line and any changes or modifications thereto, and the invention,

12  creation, origin, conception, authorship, design, development, manufacture, distribution

13  and sale of products therein.

14        4.    The development of YOUR 2006 product line, including the

15  IDENTITY of each PERSON who participated in the decision making leading up to

16  YOUR 2005 product line and any changes or modifications thereto, and the invention,

17  creation, origin, conception, authorship, design, development, manufacture, distribution

18  and sale of products therein.

19        5.    The content, meaning, authenticity and source of

20  COMMUNICATIONS, advertisements, and/or promotional statements that provide a

21  basis for any claim by YOU against MATTEL.

22        6.    COMMUNICATIONS between YOU and any PERSON, including

23  without limitation any retailer or distributor, that REFER OR RELATE TO the

24  CONTESTED MATTEL PRODUCTS.

25        7.    The first date of manufacture, shipment and availability for

26  distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

27

28

-14-

Exhibit D, Page 37

*1705.15*

8.    The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein.

9.    The sculptures, including all preliminary sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

10.    The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

11.    The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including the identity of the channels in which such have been or are disseminated or distributed.

12.    The ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

13.    Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

14.    The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred.

Exhibit D, Page 38    1785.16

FOURTH NOTICE OF DEPOSITION OF MGA

15. YOUR expenditures in advertising or promoting the CONTESTED MGA PRODUCTS, including by year and by medium.

16. Any contracts or licenses entered into, negotiated, proposed, or requested RELATING TO any of the CONTESTED MGA PRODUCTS.

17. The target market or potential target market, and the demographics of any actual, potential or prospective consumers, customers, purchasers or licensees of the CONTESTED MGA PRODUCTS.

18. The number of units of the CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in inventory, imported, exported, shipped, sold, or offered for sale by any PERSON, including but not limited to YOU.

19. YOUR revenues, costs and profits for each of the CONTESTED MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross, incremental and net profits for each of the CONTESTED MGA PRODUCTS.

20. Any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to the returns of, or the number of or rate of defects for, such products.

21. Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

22. Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

23.    Any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS, included but not limited to YOUR knowledge of the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS or any of the CONTESTED MATTEL PRODUCTS.

24.    Marketing studies, marketing plans, sales plans, sales forecasts, strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL PRODUCTS.

25.    MATTEL's alleged copying, infringement or dilution of the CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

26.    To the extent not disclosed in response to any other Topic, all other facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

27.    COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

28.    Any damage, loss, injury or unjust enrichment that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue, price erosion, or consequential or incidental damage, including but not limited to the causation for any such alleged unjust enrichment, damage, loss, or injury and the amounts of all such damage, loss, injury or unjust enrichment.

29.    When, and under what circumstances, YOU became aware that Mattel had created, designed, developed, sold, offered for sale or licensed the CONTESTED MATTEL PRODUCTS.

30.    The copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

31.   Any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

32.   The hiring, engagement, or retention by YOU of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to the terms of all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product.

33.   YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of YOUR receipt of such DOCUMENT, data and/or information.

34.   YOUR knowledge of any MATTEL product prior to the time that such product had been announced or disclosed by MATTEL to retailers or the public, including but not limited to the CONTESTED MATTEL PRODUCTS.

35.   YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

36.   The search and seizure of DOCUMENTS by Mexican authorities from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that REFER OR RELATE thereto.

37.   All payments of money or any item of value made by YOU, directly or indirectly, or offered, proposed, promised, requested or solicited by or from YOU, directly or indirectly, in connection criminal proceedings or potential or prospective criminal proceedings against YOU or any of YOUR employees, including without limitation Gustavo Machado, and including without limitation YOUR payment or reimbursement of legal fees for or on behalf of any PERSON.

38. COMMUNICATIONS between YOU and any PERSON RELATING TO the resignation or departure of any FORMER MATTEL EMPLOYEES from Mattel.

39. The compensation, money or any other item of value paid to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

40. The identity of DOCUMENTS RELATING TO any MATTEL product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or shared with YOU, directly or indirectly.

41. COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

42. The content, authenticity, accuracy and meaning of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

43. COMMUNICATIONS between YOU and Pablo Vargas San Jose prior to April 20, 2004.

44. COMMUNICATIONS between YOU and Janine Brisbois prior to September 27, 2005.

45. COMMUNICATIONS between YOU and Ron Brawer prior to October 2, 2004.

46. COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004.

47. COMMUNICATIONS between YOU and Mariana Trueba Almada ("Trueba") prior to April 20, 2004.

48.     The existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

49.     The factual basis for YOUR claim that any of the CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

50.     The factual basis for YOUR claim that any of MATTEL's actions have caused actual dilution.

51.     Mattel's alleged intimidation, coercion or threats to retailers, licensees, suppliers and others in the industry."

52.     The factual basis for YOUR claim that Mattel "serially imitated and copy-catted [*sic*] the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging."

53.     The basis for YOUR claim that the Bratz dolls launched in 2001 were "unique and distinctive."

54.     The identification of YOUR alleged trade dress in connection with the CONTESTED MGA PRODUCTS, including without limitation with respect to "themes," and the factual bases for YOUR claim that YOU have any legally protected interest in such trade dress.

55.     The factual basis for YOUR allegation that advertising executives have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they expressed and the IDENTITY of each such executive.

56.     The factual basis for YOUR allegation that the press confused YOUR products with MATTEL products and "has taken notice" of alleged confusion between "Bratz" and "My Scene."

57.     All COMMUNICATIONS relating to customers who have allegedly contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED MATTEL PRODUCTS.

1    58.    The factual basis for YOUR claim that MATTEL has infringed,

2   diluted or otherwise violated any trade dress that YOU contend YOU own in the

3   CONTESTED MGA PRODUCTS.

4    59.    The factual basis for YOUR claim that MATTEL has engaged in

5   "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

6    60.    COMMUNICATIONS between YOU and any PERSON

7   RELATING TO the departure from MATTEL of any current or FORMER MATTEL

8   EMPLOYEE or MATTEL contractor.

9    61.    COMMUNICATIONS between YOU and any PERSON

10   RELATING TO the obligations to MATTEL, including the duty of confidentiality, of

11   any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

12    62.    COMMUNICATIONS between YOU and any current or FORMER

13   MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of

14   any idea, concept, design, or product.

15    63.    COMMUNICATIONS between YOU and any PERSON

16   RELATING TO the retention, destruction, transfer, or use of any information or

17   DOCUMENTS known to or possessed by any current or former MATTEL employee or

18   contractor.

19    64.    Mattel's alleged "warnings," "threats" or "intimidation" that are the

20   subject of YOUR claims, including but not limited to all COMMUNICATIONS with

21   any present or former licensees of MATTEL and any present or former distributors and

22   retailers of MGA and MATTEL products.

23    65.    MATTEL's alleged responsibility for "shortage of doll hair in

24   October 2002."

25    66.    MATTEL's alleged "manipulation of the retail market," including by

26   its alleged tampering with MGA's retail displays.

27    67.    MATTEL's alleged false statements about YOU or YOUR business

28   practices.

07209/2254636.1

-21-

1        68.    MATTEL's alleged violation of any rules or restrictions relating to

2    data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

3        69.    COMMUNICATIONS between YOU and NPD, other than periodic

4    reports transmitted by NPD or information made available to YOU by NPD, between

5    January 1, 2000 and the present.

6        70.    YOUR contracts and agreements with NPD since January 1, 1999,

7    including without limitation any allegation by NPD that YOU were or have been in

8    breach or violation thereof.

9        71.    The status of YOUR NPD subscription between January 1, 1999 and

10   the present.

11       72.    MATTEL's alleged inducement of CARU to place onerous

12   restrictions on MGA advertisements, and require MGA to amend aspects of

13   commercials that have gone unchallenged in other parties' commercials.

14       73.    COMMUNICATIONS between YOU and CARU between

15   January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA

16   PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or

17   matter that YOU are relying upon in this ACTION.

18       74.    MATTEL's allegedly improper influence with or within TIA,

19   including but not limited to the procedures for and manner in which the Toy of the Year

20   was selected for 2003.

21       75.    YOUR COMMUNICATIONS with TIA RELATING TO Toy of the

22   Year since January 1, 2000 or any other subject or matter on which YOU base any

23   claim.

24       76.    MATTEL's purported power, influence and intimidation to threaten

25   retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to

26   limit or prevent MGA from doing business.

27       77.    MATTEL's alleged intimidation of or threats against MGA's current

28   and potential employees.

78.     YOUR monthly, quarterly and annual financial reports, including financial statements (both audited and unaudited) for the years 1998 through the present, inclusive.

79.     The identity of DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL (excluding MATTEL products that YOU purchased at retail) at any time since January 1, 1998.

80.     The destruction of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

81.     COMMUNICATIONS with, or inquiry or investigation by, any government entity, industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

82.     YOUR understanding or belief of whether the BRYANT/MGA AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and COMMUNICATIONS related thereto.

83.     The public perception of the CONTESTED MGA PRODUCTS, including without limitation with respect to the appropriateness or suitability of Bratz for children.

84.     The factual basis for YOUR alleged belief that YOU had the right to market products developed as a result of the BRYANT/MGA AGREEMENT and to the lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

85.     The factual basis for YOUR contention that YOU believed at the time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU entered into the BRYANT/MGA AGREEMENT.

Exhibit D, Page 46

FOURTH NOTICE OF DEPOSITION OF MGA

86.     YOUR belief or non-belief that BRYANT created or improved any of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon.

87.     Any investigation or inquiry YOU conducted to confirm the timing of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

88.     The factual bases for YOUR affirmative defenses.

89.     The IDENTITY of all DOCUMENTS that were in the possession of Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP at any time prior to January 1, 2007.

90.     The factual bases for YOUR allegations in the GLASER LETTER, including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly privileged and confidential.

91.     Any services Farhad Larian has provided to YOU since January 1, 2005, including any litigation consulting services.

92.     The IDENTITY of DOCUMENTS that Farhad Larian was provided with or had access to, including YOUR allegedly privileged and confidential DOCUMENTS, since January 1, 2001.

93.     The terms of any contracts or agreements, including any confidentiality agreements, between YOU and Farhad Larian.

94.     The identity of each doll, accessory, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative of any BRATZ DESIGN.

95.     Except for deposition testimony provided in this ACTION, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

1  BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001
2  (regardless of when such testimony or sworn statement was taken, given, signed, made
3  or filed).

4          96.    The authenticity, content, timing, meaning, and truth and accuracy
5  of YOUR COMMUNICATIONS with any PERSON, including without limitation any
6  retailer and the media, that REFER OR RELATE TO the National Labor Committee
7  dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"
8  or the Hau Tai K4 factory.

9          97.    The identity of each doll, product, packaging or other matter that
10 YOU have accused of infringing, diluting or otherwise violating YOUR purported
11 rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each
12 manufacturer of each doll, product, packaging or other matter and the specific aspects
13 of each such doll, product, packaging or other matter that YOU have claimed was
14 confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15         98.    The identity, and outcome and resolution, of each lawsuit that YOU
16 have brought or cease and desist letter YOU have sent each doll, product, packaging or
17 other matter that YOU have accused of infringing, diluting or otherwise violating
18 YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19         99.    The job responsibilities of each FORMER MATTEL EMPLOYEE
20 in the first six months after each joined MGA.

21         100.   YOUR scheduling, planning, inventory, shipping, distribution or
22 forecasting software since January 1, 2005, including but not limited to any and all
23 changes, improvements, acquisitions, upgrades and purchases.

24         101.   DOCUMENTS created by each of the FORMER MATTEL
25 EMPLOYEES in the first six months after each joined MGA

26         102.   The make-up, source, calculation and purpose of the amounts
27 presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and
28 MGA 08185789 (Exhibit 662).

# Exhibit E

Name & Address:
Mark P. Wine (State Bar No. 189897)
Orrick, Herrington & Sutcliffe LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614
Telephone: (949) 567-6700
Facsimile: (949) 567-6710

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT | CASE NUMBER:<br>CV 04-9049-DOC (RNBx) |
| PLAINTIFF(S) | |
| v. | |
| MATTEL, INC., a Delaware Corporation | **NOTICE OF MANUAL FILING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance

with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually

filed. **List Documents:** NTC OF MOTION AND MOTION FOR PO FROM MATTEL, INC.'S NTC OF
DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6)
(THIRD PHASE 2 NTC); EXHS B AND E TO DECL OF MARK WINE; [PROPOSED] ORDER GRANTING NTC OF
MOTION AND MOTION FOR PO FROM MATTEL, INC.'S NTC OF DEPOSITION OF MGA ENTERTAINMENT, INC.
PURSUANT TO FED. R. CIV. P. 30(B)(6) (THIRD PHASE 2 NOTICE) AND EXHS B AND E TO DECL OF MARK
WINE; APPLICATION TO FILE UNDER SEAL; [PROPOSED] ORDER GRANTING APPLICATION TO FILE UNDER
SEAL

**Document Description:**

☐ Administrative Record

☐ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the
Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☒ Other See list of documents described above.

**Reason:**

☒ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☒ Per Court order dated <u>January 4, 2005</u>

☐ Manual Filing required (*reason*):

<u>September 10, 2010</u>
Date

<u>/s/ Mark P. Wine</u>
Attorney Name
MGA Parties
Party Represented

G-92 (03/09)          **NOTICE OF MANUAL FILING**       American LegalNet, Inc.<br>www.FormsWorkflow.com