QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION TO QUASH SUBPOENA TO O'MELVENY & MYERS LLP, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**<br><br>Date: October 4, 2010<br>Time: 5:00 p.m.<br>Place: Courtroom 9D<br><br>Discovery Cut-off: October 4, 2010<br>Pre-trial Conf: January 4, 2011<br>Trial Date: January 11, 2011 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .................................................................................................. 2

ARGUMENT ........................................................................................................ 4

I.  MATTEL'S SUBPOENA SEEKS DOCUMENTS THAT ARE UNQUESTIONABLY RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES ................................................................................... 4

II. NO PRIVILEGE OR OTHER BASIS FOR PROTECTION ATTACHES TO THE DOCUMENTS SOUGHT BY MATTEL'S SUBPOENA ................................................................................................ 6

    A.  The Privilege Waiver Should Apply to The OMM Subpoena. ............. 6

    B.  The Subpoena Calls For Nonprivileged Documents That Must Be Produced. ........................................................................................ 8

    C.  The Documents Are Relevant to Crime-Fraud Issues In Connection With MGA's Improper Withholding of Discovery. ............ 8

III. MATTEL IS ENTITLED TO SEEK RELEVANT DISCOVERY FROM NON-PARTIES, INCLUDING OMM .................................................. 9

IV. MGA'S CLAIMS OF UNDUE BURDEN ARE IRRELEVANT AND WITHOUT MERIT ........................................................................... 11

CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

## Cases

American Optical Co.,
  39 F.R.D. 580 (N.D. Cal. 1966) .................................................................................. 12

In re Bergeson,
  112 F.R.D. 692 (D. Mont. 1986) ................................................................................ 10

Bittaker v. Woodford,
  331 F.3d 715 (9th Cir. 2003) ........................................................................................ 6

In re Broadcom Corp. Sec. Litig.,
  2005 WL 1403516 (C.D. Cal. Feb. 10, 2005) .............................................................. 6

Covey Oil Co. v. Continental Oil Co.,
  340 F.2d 993 (10th Cir. 1965) .................................................................................... 10

Goodman v. U.S.,
  369 F.2d 166 (9th Cir. 1966) ................................................................................ 11, 12

Green v. Baca,
  226 F.R.D. 624 (C.D. Cal. 2005) ............................................................................. 4, 8

Heat and Control, Inc. v. Hester Indus., Inc.,
  785 F.2d 1017 (Fed. Cir. 1986) .................................................................................... 4

JZ Buckingham Invs., LLC v. United States,
  78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) ........................................................................ 10, 11

Newman v. Checkrite Calif., Inc.,
  912 F. Supp. 1354 (E.D. Cal. 1995) ............................................................................. 9

Northrop Corp. v. McDonnell Douglas Corp.,
  751 F.2d 395 (D.C. Cir. 1984) .................................................................................... 11

State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.,
  2007 WL 2993840 (E.D.N.Y. 2007) .......................................................................... 10

Upjohn Co. v. United States,
  449 U.S. 383 (1981) ..................................................................................................... 8

Weil v. Inv./Indicators, Research & Mgmt., Inc.,
   647 F.2d 18 (9th Cir. 1981) ................................................................................... 6

**Statutes**

Rule 26 ............................................................................................................................ 9

Rule 26(B)(2)(c)(i) ........................................................................................................... 9

## Preliminary Statement

On September 8, 2010, Mattel served a third-party subpoena for documents on O'Melveny & Meyers, LLP ("OMM"), MGA's counsel in this case until October 2007. The subpoena requests documents relating to Isaac Larian's "knowledge about the timing or location of the conception or reduction to practice of Bratz prior to October 4, 2010." The subpoena also seeks materials related to the withholding of such documents and the withholding of the "Larian-O'Connor" email. These requests are critical to Mattel's claims for obstruction of justice that are explicitly alleged in Mattel's claims, among numerous other issues in this suit.

The "Larian-O'Connor" email, attached as Exhibit A to the subpoena, bears the name of OMM paralegal Diane Anderson in the upper left corner, indicating OMM was in possession of the "Larian-O'Connor" email, but failed to produce it or include it on a privilege log. Even if the Larian O'Connor email was actually withheld by MGA's subsequent counsel, as MGA contends, there is reason to believe OMM is in possession of evidence relating to the improper withholding of this document. Mattel has previously advised the Court of this issue, including at the hearing on March 13, 2010 and in connection with Mattel's Response Regarding the Court's August 31, 2009 Order to Show Cause (Dkt. No. 6743). Contrary to MGA's assertions, Mattel is entitled to full discovery of Larian's knowledge of the "birth" of Bratz and the facts and circumstances surrounding the withholding of the Larian-O'Connor email from Mattel.

In an attempt to stave off any further discovery into these matters, MGA seeks an order quashing the subpoena, or, in the alternative, a blanket protective order, but in doing so it fails to offer any compelling reason to block or limit the discovery Mattel seeks. The requests are tailored to documents Mattel believes are not protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other claim of privilege or protection. MGA's claims of burden are speculative at best, and MGA lacks standing to assert a claim of burden on OMM's behalf. MGA's motion to quash and request for a protective order should be denied.

**Background**

OMM has a direct connection to the Larian-O'Connor email. The version MGA produced in 2009 after years of delay appears to have been printed from the email account of OMM paralegal Diane Anderson.[1] OMM was counsel to MGA until October 2007 and apparently provided the Larian-O'Connor email to MGA's subsequent counsel. MGA has since produced two additional documents previously withheld as privileged that appear to have been printed from the email account of the same OMM paralegal.[2]

On August 25, 2010, the Court issued its tentative order granting Mattel's Motion to Compel Production of Communications Made In Furtherance of Crimes and Frauds and as to Which MGA has Waived Attorney-Client Privilege.[3]

On September 8, 2010, Mattel served the subpoena on OMM. The subpoena consists of three requests for the production of documents:

- All DOCUMENTS that REFER OR RELATE TO the withholding of relevant, nonprivileged DOCUMENTS from MATTEL in THIS ACTION, including but not limited to, the withholding of any version or iteration of the document attached hereto as Exhibit A [i.e., the Larian-O'Connor email].

- All DOCUMENTS that REFER OR RELATE TO LARIAN's knowledge about the timing or location of the conception or reduction to practice of Bratz prior to October 4, 2000.

- All DOCUMENTS that REFER OR RELATE to the withholding from MATTEL in THIS ACTION of DOCUMENTS that REFER OR RELATE TO LARIAN's knowledge about the timing or location of the conception or reduction to practice of Bratz prior to October 4, 2000.

The requests are directed to Larian's knowledge of the timing of Bratz's conception and reduction to practice, which the Court indicated would be the scope of the privilege

---

[1] See Declaration of Warrington S. Parker at Ex. 1 (Dkt. No. 8754).
[2] See MGA2 3302634 and MGA2 3302635, produced on September 27, 2010 pursuant to the Order Granting in Part and Denying in Part Motion to Compel, dated Sept. 22, 2010. (Dkt. No. 8767.)
[3] Dkt. No. 8652.

waiver effected by Larian's Phase 1 trial and deposition testimony. The requests also concern OMM's withholding of such documents and the withholding of the critical Larian-O'Connor email.

On September 20, 2010, MGA filed its motion to quash, or in the alternative, for a protective order.[4] OMM served objections to the subpoena on the same day, but did not join MGA's motion to quash or file a separate motion.[5]

On September 22, 2010, the Court issued its final order granting in part Mattel's motion to compel.[6] Among other rulings, the Court determined that "Larian's testimony during the phase 1 trial also constituted a waiver of the attorney-client privilege."[7] The Court observed that "[t]he examples of Larian putting counsel's advice at issue are legion" and concluded that, by relying upon MGA's counsel's representations while refusing to disclose the contents of those communications, MGA impermissibly used the privilege "both as a sword and a shield."[8] In addition to invoking counsel's advice with respect to his knowledge about Bratz's conception, the Court concluded that Larian repeatedly referenced counsel's correspondence as proof that MGA diligently investigated Bryant's representations.[9]

The Court held Mattel is entitled to determine "the full scope of Larian's knowledge, as well as the reasonableness of his claimed reliance on Rosenbaum's due diligence, by examining *all* communications, including privileged communications, that

---

[4] MGA Parties' Motion to Quash Mattel's Subpoena to O'Melveny & Myers LLP or, in the Alternative, Motion for Protective Order. (Dkt. No. 8754.)
[5] Non-Party O'Melveny & Myers LLP's Responses and Objections to Subpoena.
[6] Order Granting in Part and Denying in Part Motion to Compel, dated Sept. 22, 2010. (Dkt. No. 8767.)
[7] Id. at 8.
[8] Id. at 8-9.
[9] Id. at 9.

MGA received prior to Bryant's employment with MGA."[10]  The Court further concluded "[t]he scope of the wavier should also extend to later communications that refer to the earlier privileged communications concerning the birth of Bratz, since they (1) reflect the underlying privileged communications that Larian put at issue and (2) reflect Larian's interpretation of the underlying privileged communications that Larian put at issue."[11]  The September 22 Order makes clear that "the waiver extends to pre-2000 communications that concern the birth of Bratz, as well as subsequent regurgitations of those communications."[12]

## Argument

### I. MATTEL'S SUBPOENA SEEKS DOCUMENTS THAT ARE UNQUESTIONABLY RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES

As the party moving to quash, MGA bears the initial burden of persuasion to demonstrate that Mattel's document requests are improper.  See Green v. Baca, 226 F.R.D. 624, 653 (C.D. Cal. 2005).  The burden on the party moving to quash a subpoena is a "heavy one."  Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) (noting "the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").  MGA has failed to meet its burden.

---

[10] Id. at 11 (emphasis in original).  This is subject to the limitations set forth by the Court in the September 22 Order, including Mattel's need to request leave of Court before conducting further discovery.

[11] Id.

[12] Id. at 14.  The September 22 Order states that Mattel must obtain leave of Court before conducting further discovery into the subject matter of the Order.  Id. at 15.  Mattel served the subpoena on September 8, 2010, before the September 22 Order issued.  Accordingly, the subsequent September 22 Order cannot be fairly construed as barring Mattel's subpoena.  Furthermore, to the extent necessary, Mattel hereby seeks leave to take the requested discovery and will promptly submit any additional briefing the Court may request.

This Court and the Discovery Master have found that documents related to the "birth" of Bratz are relevant to the claims and defenses in this action. Indeed, in the September 20 Order, the Court confirmed the Discovery Master did not err in concluding that Mattel's Requests for Admission to MGA sought discovery relevant to Mattel's claims and defenses.[13] The September 20 Order makes clear that discovery into the withholding of the Larian-O'Conner email is relevant:

> "The RFAs seek discovery into (1) MGA's belief that the withheld communications between O'Connor and Larian were privileged; and (2) MGA's belief about the meritoriousness of withholding the subject communications between O'Connor and Larian. Both issues are relevant to Mattel's RICO counterclaim, which alleges that MGA conducted the affairs of an associated-in-fact enterprise through a pattern of racketeering activity that, *inter alia* included acts of obstruction of justice, which requires scienter."[14]

Moreover, the Court recently held that MGA and Larian waived the attorney-client privilege as to matters relating to the "birth" of Bratz, and has ordered MGA to produce numerous documents that were previously withheld on privilege grounds. Mattel's subpoena to OMM is consistent with these rulings. The subpoena calls for the production of documents relevant to Larian's knowledge of the timing of Bratz, which is central to this litigation, and OMM's withholding of such documents and the critical Larian-O'Connor email. The Larian-O'Connor email itself, bearing the name of an OMM paralegal, demonstrates OMM was in possession of the Larian-O'Connor email and likely has other relevant documents.

The documents sought are highly and unquestionably relevant.

---

[13] See Order Sustaining Objections to Discovery Matter Order No. 90, dated Sept. 20, 2010, at 7. (Dkt. No. 8753.)

[14] Id.

Case 2:04-cv-09049-DOC-RNB   Document 8832   Filed 09/28/10   Page 10 of 17   Page ID
#:273187

## II. NO PRIVILEGE OR OTHER BASIS FOR PROTECTION ATTACHES TO THE DOCUMENTS SOUGHT BY MATTEL'S SUBPOENA

MGA asserts that Request Nos. 1 and 3 seek information protected by the attorney-client privilege and attorney work product doctrine. (Mot. at 5.) MGA further contends that Request No. 2 "must be seeking" privileged information, even though the request itself express states that this is not the case. (Mot. at 11.) This Court's recent order on MGA and Larian's privilege waiver also supports allowing the discovery Mattel seeks. The discovery sought is either subject to the privilege waiver, not privileged in any event, or relevant to the Court's further consideration of crime-fraud issues as they relate to OMM specifically. MGA's motion should be denied.

### A. The Privilege Waiver Should Apply to The OMM Subpoena.

"[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981). In addition, "a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." Bittaker v. Woodford, 331 F.3d 715, 718 (9th Cir. 2003). "The privilege is waived when a litigant puts protected information in issue through some affirmative act for its own benefit." In re Broadcom Corp. Sec. Litig., 2005 WL 1403516, at *1 (C.D. Cal. Feb. 10, 2005).

These principles underlie the Court's September 22 Order regarding MGA and Larian's waiver of the attorney-client privilege, and compel a finding that each of the requests to OMM are within the scope of the waiver. Larian repeatedly invoked counsel's advice with respect to his knowledge about Bratz's conception, and repeatedly referenced counsel's correspondence as proof that MGA diligently investigated Bryant's representations.[15] Moreover, Larian has continued to invoke the

---

[15] See Order Granting in Part and Denying in Part Motion to Compel, dated Sept. 22, 2010, at 8-9. (Dkt. No. 8767.)

00505.07975/3694093.3
-6-
MATTEL'S OPPOSITION TO MGA'S MOTION TO QUASH O'MELVENY & MYERS, LLP SUBPOENA

advice of counsel when testifying as a 30(b)(6) witness on behalf of MGA.[16]  As this Court recognized, the September 28, 2000 Rosenbaum email and the communications Larian has disclosed for his own benefit implicate a variety of subject matters, including the date of Bratz's creation, and the advice received by Larian and MGA prior to October 4, 2000 about the date of Bratz's creation.[17]  These matters are "highly probative to Larian's knowledge (and state of mind) at or before the time Bryant was hired by MGA."[18]  As this Court has concluded, "[i]t's only fair that Mattel determine the full scope of Larian's knowledge, as well as the reasonableness of his claim reliance on Rosenbaum's due diligence, by examining *all* communications, including privileged communications, that MGA received prior to Bryant's employment with MGA."[19]

Consistent with the Court's waiver rulings, Mattel now seeks discovery from OMM that is probative of Larian's knowledge and state of mind at or before MGA hired Bryant.  In particular, Mattel seeks documents regarding Larian's knowledge about the timing or location of the conception or reduction to practice of Bratz prior to October 4, 2000 (see Request No. 2); OMM's withholding from Mattel of documents regarding the same (see Request No. 3); and documents regarding the withholding of relevant nonprivileged documents from Mattel in this action, including the O'Connor email (see Request No. 1).

The Court should deny MGA's motion to quash for the same reasons it found that MGA and Larian waived privilege.  MGA has voluntarily disclosed communications regarding the "birth" of Bratz, including the Larian O'Connor email, and put at issue the advice of counsel for its own benefit.  Not only has any applicable privilege been waived, MGA fails to meet its burden to the extent it invokes the attorney work product doctrine.  "A 'blanket claim' as to the applicability of the . . .

---

[16]  Ex. D to Mattel's August 31, 2010 Submission, at 2621-22.  (Dkt. No. 8674.)
[17]  See Order Granting in Part and Denying in Part Motion to Compel, dated Sept. 22, 2010, at 10.  (Dkt. No. 8767.)
[18]  Id. at 11 (emphasis in original).
[19]  Id.

work product doctrine does not satisfy the burden of proof." Green, 226 F.R.D. at 653 (citation omitted).

### B. The Subpoena Calls For Nonprivileged Documents That Must Be Produced.

The attorney-client privilege only protects the disclosure of communications; it does not protect the disclosure of underlying facts by those who communicate with any attorney. See Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). The court should deny MGA's blanket assertion of privilege as to all documents responsive to the subpoena. Regardless of the scope of MGA's waiver, OMM may be in possession of responsive documents that were never privileged in the first place. For example, OMM may have received pre-existing non-privileged documents from MGA or Larian that are not subject to any claim of privilege. OMM may also have responsive documents disclosed to third parties and to which no claim privilege may attach. MGA concedes as much when it refers to the "meta-privilege" review of OMM documents before production to Mattel. (Mot. at 9.) To the extent OMM has in its possession responsive, non-privileged documents, those documents must be produced.

### C. The Documents Are Relevant to Crime-Fraud Issues In Connection With MGA's Improper Withholding of Discovery.

While this Court has previously conducted an *in camera* review concerning the potential crime-fraud of improperly withholding relevant documents, including the Larian-O'Connor email, it has yet to either review or make any determination as to OMM's role.[20] As this Court recognized, during prior *in camera* review, Judge Larson did not absolve either MGA or Larian of any wrongdoing and did not purport to resolve the factual issue of whether MGA committed obstruction of justice by withholding the Larian-O'Connor email.[21] This is an issue to be resolved at summary judgment on the

---

[20] See Reporter's Transcript of Sealed Proceedings, dated Sept. 22, 2009.
[21] Order Sustaining Objections to Discovery Matter Order No. 90, dated Sept. 20, 2010, at 7. (Dkt. No. 8753.)

basis of undisputed facts or at trial by a jury. Moreover, even if a determination is ultimately made that counsel was solely responsible for withholding the email, MGA can still be liable for actions taken by counsel on its behalf. See Newman v. Checkrite Calif., Inc., 912 F. Supp. 1354 (E.D. Cal. 1995).

Even if documents sought in the three requests include documents that are allegedly privileged, at a bare minimum the Court should direct OMM to produce its responsive documents for *in camera* review to determine whether they were privileged in the first place, whether they come within the scope of the waiver found by the Court and/or there was any crime-fraud in the failure to produce these documents during Phase 1 discovery. The version of the Larian-O'Connor email produced by MGA in 2009, after years of delay, appears to have been printed from the e-mail account of OMM paralegal Diane Anderson,[22] and Mattel specifically addressed OMM's role in its Response Regarding the Court's August 31, 2009 Order to Show Cause.[23] MGA's claim that OMM had nothing to do with the withholding the Larian-O'Connor is directly contradicted by these facts and should be rejected.

### III. MATTEL IS ENTITLED TO SEEK RELEVANT DISCOVERY FROM NON-PARTIES, INCLUDING OMM

MGA contends Mattel has failed to demonstrate the discovery sought is unavailable from MGA. (Mot. at 11.) This is too little too late. MGA cannot refuse to produce for months and then object when Mattel seeks documents from others. Moreover, the purported availability of some of the documents from another source does not justify quashing the subpoena because Mattel is entitled to seek discovery from parties and non-parties. Rule 26 limits only *unreasonably* duplicative discovery. Fed. R. Civ. P. 26(B)(2)(c)(i). That there may be some overlap in the documents requested does not render the subpoenas invalid or unenforceable. Because documents

---

[22] See Declaration of Warrington S. Parker at Ex. 1 (Dkt. No. 8754); see also Reporter's Transcript of Proceedings, dated Mar. 13, 2010, at 22:16-23:24.

[23] Dkt. No. 6743.

may be available from other sources is not grounds to refuse production. "[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another."  Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other grounds); State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007) (same); In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that documents sought are available from others more economically able "does not constitute a showing of unreasonableness or oppressiveness."). As held by the State Farm court, "nothing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas." State Farm, 2007 WL 2993840, at *1.

Indeed, in this case, Mattel has obtained some of the most critical documents and other information only by pursuing third party sources, including for documents that MGA had in its possession and was even compelled to produce but had withheld from Mattel. These include, for example:

- The Marlow Production. MGA improperly hired several Mattel employees other than Bryant to work on Bratz while they were still employed by Mattel, using MGA agents Veronica and Peter Marlow as intermediaries. In response to Mattel's subpoenas, the Marlows produced *over 400* relevant emails, *each* of which includes an individual with an MGA email address, and *none* of which MGA had previously produced, and which MGA did not produce until years later. These include emails to and from Isaac Larian, Victoria O'Connor, and Paula Garcia (then "Treantafelles") concerning these contractors' work on Bratz projects, many with "Bratz" in the subject line.

- The Anna Rhee Production. Anna Rhee was the face painter for the first Bratz dolls and an MGA vendor. She testified at deposition and trial in Phase 1 that Carter Bryant asked her to work on a "secret project" and to

use the "code name" "Angel" for this project, when in reality it was Bratz.[24] The reason for the code name is clear: Rhee started painting Bratz doll faces by June 2000, months before MGA claimed it even heard of Carter Bryant or Bratz.[25] Although there is ample documentary evidence of this work on Bratz in June 2000, including invoices that Rhee submitted to MGA for payment.[26] However, it was not MGA that produced these invoices; it was Rhee, a third-party, pursuant to Mattel's subpoena.[27] Only *after* Rhee produced them did MGA "find" them and produce them.[28]

And, MGA itself has repeatedly sought -- and obtained -- documents from a host of third parties by way of subpoena without any showing that they were unavailable from Mattel. The Court should rejected MGA's hollow claims that it should be permitted to thwart Mattel's efforts to obtain full and complete discovery.

## IV. MGA'S CLAIMS OF UNDUE BURDEN ARE IRRELEVANT AND WITHOUT MERIT

A party claiming that production of requested documents is unduly burdensome bears the burden of proving up its objection. Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's decision quashing subpoena). Conclusory assertions will not suffice. Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (reversing the quashing of a subpoena because of lack of specific evidence of burden). "The party must provide specific and compelling proof that the burden is undue." JZ Buckingham Invs., LLC v. United States, 78 Fed. Cl. 15, 25 (Fed.

---

[24] Deposition of Anna Rhee, dated Feb. 3, 2005, at 107:16-108:12.
[25] Id. at 145:11.
[26] AR 0001, AR 0024.
[27] Subpoena of Anna Rhee, dated Feb. 28, 2005.
[28] See, e.g., MGA 000706.

1  Cl. Ct. 2007) (denying motion to quash). This has been the rule applied in this
2  litigation time and time again.[29]

3  At the outset, and wholly fatal to MGA's motion, MGA lacks standing to assert a
4  burden objection on behalf of OMM. "The burden of showing that a subpoena is
5  unreasonable and oppressive *is upon the party to whom it is directed*." Goodman v.
6  U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added). Even assuming MGA has
7  standing, it offers nothing more than speculation as to what OMM's alleged burden
8  might entail. A claim that compliance with Mattel's requests "would necessitate the
9  examination of large quantities of documents, requiring a great deal of time and
10 expense . . . is not alone a sufficient reason for refusing discovery which is otherwise
11 appropriate." American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966)
12 (denying motion to quash where documents sought covered a twelve year period).

13 Nor does MGA meet its burden of proof. Instead of offering evidence, MGA
14 mischaracterizes the scope of Mattel's Request Nos. 1 and 3 in a failed attempt to create
15 an undue burden where there is none. (Mot. at 1, 7-9.) Contrary to MGA's assertions,
16 OMM will not be required to make a relevance determination based upon current
17 pleadings and discovery requests. Request Nos. 1 and 3 plainly seek documents
18 referring or relating to the withholding of documents OMM deemed relevant and, for
19 Request No. 1, nonprivileged, at the time OMM represented MGA. Similarly flawed is
20 MGA's unsupported speculation about what OMM withheld, whether those documents
21 were responsive to the operative discovery requests at that time, and whether MGA's

---

[29] See, e.g., DM Order No. 17, dated Apr. 14, 2009, at 14 (Dkt. No. 5190) (denying request for protective order because MGA's vague arguments that discovery would "be extremely difficult, time-consuming and costly" did not demonstrate that MGA "will suffer undue burden"); DM Order No. 56, dated Sept. 3, 2009, at 24 (Dkt. No. 6591) (denying request because MGA's "unspecified concerns about the burden" were "vague and difficult to quantify in any meaningful way"); DM Order No. 46, dated Aug. 14, 2009, at 24 (Dkt. No. 6407) (denying request that lacked "any factual showing of undue burden").

1  subsequent counsel produced the documents.  (Mot. at 8.)  Until OMM produces the
2  requested discovery, the full extent of any wrongdoing by OMM remains unknown.
3        Because MGA lacks standing and has failed to provide specific evidence of
4  undue burden, the Court should reject MGA's argument that the document requests set
5  forth in the subpoena are unduly burdensome.

## Conclusion

7        For the reasons set forth above, Mattel respectfully requests that MGA's Motion
8  to Quash or, in the alternative, for a Protective Order, be denied in its entirety.

10  DATED: September 28, 2010    QUINN EMANUEL URQUHART &
    SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.