UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No.   CV 04-9049 DOC (RNBx)                                         Date   September 1, 2010

Title   CARTER BRYANT -V- MATTEL INC.

Present: The Honorable   David O. Carter, U.S. District Judge

| Kathy Peterson<br>Julie Barrera | Maria Dellaneve<br>Jane Sutton-Rule | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| John Quinn<br>Michael Zeller | Annette Hurst<br>Thomas McConville<br>William Molinski |

Proceedings:   FURTHER EVIDENTIARY HEARING RE: MATTEL'S MOTION TO COMPEL PRODUCTION OF ATTORNEY-CLIENT COMMUNICATIONS; FURTHER HEARING RE: MGA'S OBJECTIONS TO DISCOVERY MATTER ORDER NO. 90, IGWT 826 INVESTMENTS MOTION FOR JUDGMENT ON THE PLEADINGS [8581], MATTEL'S EX PARTE APPLICATION TO STRIKE MGA'S AUGUST 10, 2010 MOTIONS TO COMPEL [8515], MATTEL'S EX PARTE APPLICATION FOR EXPEDITED DISCOVERY ON MGA'S PURPORTED "COMPULSORY COUNTERCLAIMS-IN REPLY" [8640], MGA PARTIES' EX PARTE APPLICATION TO STRIKE DOCKET NO 8486 [8522]

Cause called and parties state their appearances. Court and counsel confer.  Tentative Orders are given to the parties of which a copy is attached.

Judge Smith appears telephonically and confers with Court and counsel.  The Court signs Orders re Report and Recommendation of Electronic Discovery Special Master Re Compensation for court-Appointed E-Discovery Consultant (August 15, 2010) and Report and Recommendation of Electronic Discovery Special Master (08/19/10) and copies given to counsel.

The Court continues the matters to September 2, 2010 at 3:00 p.m.  Judge Smith will be present on September 2, 2010.

                                                                                                    4   :   05

                                                                              Initials of Preparer   jcb

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> MGA ENTERTAINMENT, INC., <br><br> Defendant(s). | CASE NO. CV 04-9049 DOC (RNBx) <br><br> [TENTATIVE] O R D E R GRANTING IGWT 826'S MOTION FOR JUDGMENT ON THE PLEADINGS |

Before the Court is Counter-Defendant IGWT 826 ("IGWT")'s Motion for Judgment on the Pleadings (the "Motion"). The Court finds the matter appropriate for decision without oral argument. After considering the moving, opposing, and replying papers, [as well as the parties' oral argument,] the Court [GRANTS] the Motion.

**I.     Background**

The Court's Order on the Motions to Dismiss the Fourth Amended Answer and Counterclaims granted then counter-defendant Omni 808 Investors, LLC ("Omni")'s Motion to Dismiss Mattel, Inc. ("Mattel")'s second counter-claim for conspiracy to commit a violation of

18 U.S.C. § 1962(c) in contravention of the Racketeering Influenced and Corrupt Organizations Act (RICO). Mattel's pleading alleged that Omni, which was formed on August 12, 2008, conspired with other counter-defendants to conduct the affairs of an enterprise through a pattern of racketeering activity. Relying upon this theory, Mattel suggested that Omni should be held liable for *all* acts committed in furtherance of that conspiracy, including acts committed before Omni joined the conspiracy on the date of its formation.

Mattel's theory was rejected by the Court's Order for reasons discussed in greater depth below. On the basis of the Court's ruling, IGWT now argues that it too should be dismissed from this lawsuit since, like Omni, IGWT was formed in August 2008 and is only charged with conspiracy to violate RICO. IGWT additionally argues that it should be dismissed from Mattel's seventeenth counter-claim for declaratory relief.

## II. Legal Standard

Rule 12(c) provides that "[a]fter pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings and motion to dismiss are evaluated under similar standards. "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleading as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999).

## III. Discussion

As discussed extensively in the Court's prior order on the motions to dismiss, Mattel's latest pleading alleges that IGWT conspired with counter-defendants Isaac Larian ("Larian"), MGA Entertainment, Inc. ("MGA"), MGA Hong Kong ("MGA HK"), MGAE de Mexico ("MGA Mexico"), Carter Bryant ("Bryant"), and Gustavo Machado ("Machado") to violate 18 U.S.C. § 1962(c), which proscribes conducting an enterprise througha pattern of racketeering activity. That conspiracy is rendered independently wrongful under 18 U.S.C. § 1962(d), which provides that "[i]t shall be independently unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." And that violation can give rise to a civil claim for damages under 18 U.S.C. § 1964(c), which permits "[a]ny person injured in his

business or property by reason of a violation of section 1962" to "sue . . . and recover threefold the damages he sustains and the cost of the suit."

In opposing Omni's motion to dismiss, Mattel argued that Omni could be held liable for the injuries to Mattel's business or property caused by *all* of its co-conspirator's acts in furtherance of the conspiracy, including those acts which predated Omni's agreement to join the conspiracy. This Court rejected that theory. Instead, the Court held that prior acts committed by Omni's co-conspirator's could be considered for the purpose of establishing *conspiratorial* liability, but that Omni could not be held vicariously liable for acts committed prior to its entry into the conspiracy. *See* Order at 22 (citing *United States v. O'Campo*, 973 F.2d 1015, 1024 (1st Cir. 1992)). Omni could only be held vicariously liable for co-conspirator acts in furtherance of the conspiracy to the extent those acts were committed *after* Omni entered into the conspiracy. *Id.* Since (1) Omni joined the conspiracy on August 12, 2008 and (2) Mattel was not injured in its business or property by any of the post-August 12, 2008 acts in furtherance of the conspiracy, (3) Mattel lacked standing to bring a RICO conspiracy claim against Omni.

IGWT was formed on August 27, 2008, *see* FAAC ¶¶ 18; 105, and logically could not have joined the conspiracy before that date. Thus, like Omni, IGWT argues that Mattel lacks standing to bring a RICO conspiracy claim against it, since none of the post August 27, 2008 acts in furtherance of the conspiracy caused injury to Mattel's business or property.

Mattel challenges IGWT's argument on two grounds: (1) that IGWT *can* be held liable for injuries caused to Mattel's business or property by acts of the conspiracy committed prior to Omni's entry into the conspiracy; and (2) that IGWT's factual circumstances are distinguishable from Omni's.

### A. Liability for Acts Committed Prior to Entry into Conspiracy

Mattel has not moved for reconsideration of Omni's dismissal. Yet, its Opposition to IGWT's Motion wages a collateral attack on the Court's reasoning.

As explained with color in *United States v. Baines*, 812 F.2d 41 (1st Cir. 1987): "a conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight-or conduct-regardless of whether he

is aware of just what it is composed." *Id.* at 42. For nearly nine years prior to the existence of Omni and IGWT, MGA and its employees and subsidiaries allegedly ran a racketeering train. Each of them – and sometimes more – allegedly looted, bribed, and perjured. Individually, they each committed a pattern of racketeering activity during this time period.

The crew members on MGA's train also allegedly conspired to commit a pattern of racketeering activity. This was wrongful because 18 U.S.C. § 1962(d) proscribes entering into an agreement to commit a substantive violation of RICO, "even if [one] does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63, 118 S.Ct. 469 (1997). As long as the conspirators "agree to pursue the same criminal objective[,] each is responsible for the acts of each other." *Id.* at 64 (citing *Pinkerton v. United States*, 328 U.S. 640, 646, 66 S.Ct. 1180 (1946)). In other words, simply because MGA HK was in the dining car for all but one of the acts of racketeering doesn't mean it didn't conspire to commit a pattern of such acts.

Omni and IGWT joined the conspiracy in August 2008 (the month they were formed). Hoping to make a good first impression, the two co-conspirators allegedly contributed early and often to the common "criminal objective" of committing a pattern of racketeering. Since Omni and IGWT "intend[ed] to further" the on-going pattern of racketeering, they are deemed conspirators by law. *Id.* at 65. Though the two entities may have believed that they didn't conspire to commit the substantive offenses conducted prior to their arrival, their entry into the unlawful agreement renders them liable for conspiring to commit those acts as well. And that agreement was "a distinct evil, dangerous to the public, and so punishable *in itself.*" *Id.* (citing *Callahan v. United States*, 364 U.S. 587, 594, 81 S.Ct. 325 (1961)).

Omni's and IGWT's alleged actions – if true – may have given rise to criminal, but not civil, liability under RICO. The mere agreement to commit a pattern of racketeering, though "evil," doesn't "give[] rise to civil liability under § 1964(c)." *Prupis*, 529 U.S. at 508 n. 1 (Stevens, J., dissenting). The conspiracy only causes recoverable injury to business or property to the extent it is furthered by the commission of an overt act of racketeering that is **substantively** wrongful under RICO. *Beck v. Prupis*, 529 U.S. 494, 500, 120 S.Ct. 1608 (2000).

1  If such act(s) are committed by only one conspirator, the remaining co-conspirators may still be
2  vicariously liable for the offense, since "[t]he unlawful agreement contemplated precisely what
3  was done [and] was formed for that purpose." *Pinkerton*, 328 U.S. at 647. Thus, in civil
4  litigation, a claim for conspiracy to violate RICO is nothing more than a "mechanism to subject
5  co-conspirators to liability when one of their member committed a tortious act." *Prupis*, 529
6  U.S. at 503. "Since liability for civil conspiracy depends on performance of some underlying
7  tortious act, the conspiracy is not independently wrongful; rather it is a means for establishing
8  vicarious liability for the underlying tort." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir.
9  1983).

10  But one logically cannot contemplate acts committed in furtherance of a conspiracy into
11  which he has not yet entered. As Mattel's authority recognizes, vicarious liability doesn't extend
12  to unforeseeable acts committed by a co-conspirator. *See United States v. Edwards*, 945 F.2d
13  1387, 1392 (7th Cir. 1991). "[S]uch an argument means that 'the concept of foreseeability (a
14  forward looking concept) must be turned around 180 degrees [to] be applied to the conduct of
15  co-conspirators occurring before the entry of a particular defendant into the conspiracy.'"
16  *United States v. O'Campo*, 973 F.2d 1015, 1024 (1st Cir. 1992).[1]

17  Omni and IGWT may still be liable for overt acts of racketeering in furtherance of the
18  conspiracy, to the extent those acts were committed after Omni and IGWT joined the conspiracy.
19  *See Sec. Investor Prot. Corp. v. Vigman*, 908 F.2d 1461, 1468 (9th Cir. 1990); *Beltz Travel Serv.,
20  Inc. v. Int'l Air Transport Assoc.*, 620 F.2d 1360, 1367 (9th Cir. 1980); *United States v. Castillo*,
21  814 F.2d 351, 355 (7th Cir. 1987) (holding that conspirator could be held liable for mail fraud
22  committed by co-conspirator). However, the overt acts committed after their entry into the
23  unlawful agreement did not result in injury to Mattel's business or property, a point Mattel

---

[1] *O'Campo* discussed co-conspirators' vicarious liability for substantive acts in the context of sentencing. *United States v. Ellerman*, 411 F.3d 941, 948 (8th Cir. 2005) doesn't necessarily hold otherwise, since it noted that the defendant "participated in" his co-conspirator's substantive offense, but to the extent *Ellerman* did hold otherwise, this Court rejects its approach for *O'Campo*'s, which is consistent with well established law.

doesn't contest in its Opposition.

With the exception of five cases, Mattel's relevant authorities support the conclusion that it cannot recover from Omni and IGWT injuries caused by co-conspirators prior to Omni and IGWT's entry into the unlawful agreement. Those cases are either inapposite or erroneous. The first four cases are non-binding district court opinions. *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 710 F. Supp. 152 (E.D. Pa. 1989) erred in concluding that the Third Circuit had adopted the late joinder rule and failed to distinguish conspiratorial liability from vicarious liability for substantive offenses. *Id.* at 153. *Cadle Co. v. Schultz*, 779 F. Supp. 392 (N.D. Tex. 1991) preceded *Prupis* and erroneously relied upon (1) *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir. 1985), which discussed joint liability under the mail fraud statute and nevertheless relied upon "foresee[ability]" as the reason to hold participants to a mail fraud scheme liable for each other's acts, *id.* at 1354; (2) *United States v. Westbo*, 746 F.2d 1022 (5th Cir. 1984), which similarly discussed the scope of liability for aiding and abetting a fraudulent scheme, *id.* at 1025-26; and (3) *United States v. Toney*, 598 F.2d 1349 (5th Cir. 1979), which also discussed liability for another's acts under the mail fraud statute, *id.* at 1355. Despite its superficial support of Mattel's position, *National Organization for Women, Inc. v. Scheidler*, No. 86 C 7888, 1997 WL 610782 (N.D. Ill. Sept. 23, 1997) mistakenly relied upon *United States v. Lynch*, 699 F.2d 839 (7th Cir. 1983), which considered prior acts for the purpose of determining the conspirator's "knowledge and participation in the conspiracy." *Id.* at 842 n. 2. *Scholes v. Moore*, 150 F.R.D. 133 (N.D. Ill. 1993) discussed class certification requirements and summarily relied upon *In re Lower Lake. See id.* at 136.

That leaves *Industrial Bldg., Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336 (9th Cir. 1970), which involved a Clayton Act claim arising out of a economically powerful sealing manufacturer's decision to suddenly cease dealing with its distributor and sell directly to the distributor's consumers. Industrial alleged that defendant's successive parent corporations conspired "with each other, with [plaintiff's] consumers, and with [plaintiff's salesman] to drive [plaintiff] out of [business]." 437 F.2d at 1341. The Ninth Circuit reversed the district court's entry of summary judgment against plaintiff on a number of grounds. In relevant part, the court

6

| | |
|---|---|
| 1 | rejected the *second* parent's claim that "there should be a clear delineation between the actions |
| 2 | taken by [the subsidiary] before the time it was owned by [the first parent] and those actions |
| 3 | taken after [the second parent] acquired the company." *Id.* at 1343. Mattel relies upon the final |
| 4 | language in the court's discussion of whether the second parent's challenge to the conspiracy |
| 5 | was sound: "If [an unlawful agreement] were proved, then [plaintiff] would be entitled to |
| 6 | whatever damages flowed from that agreement." *Id.* |

      The discussion in *Industrial* provides no support for Mattel's position. First, *Industrial* did not address plaintiff's standing to bring its claim under the Clayton Act. Rather, the relevant portions of the opinion addressed whether the district court erred in granting summary judgment as to the existence of a conspiracy. To the extent *Industrial* purported to discuss the scope of civil liability, the quoted language is *dicta*. Second, *Industrial* did not hold that the second parent could be liable for injuries caused by overt acts committed prior to its entry into the conspiracy. Rather, it held that plaintiff would be "entitled to . . . damages [that] flowed from" an "agreement on the part of [the second parent] with officers of [the subsidiary], [the salesman], or with customers *after the time of the acquisition*." *Id.* at 1343 (emphasis added). In the RICO context, civil recovery is only available for injuries caused by substantively wrongful acts, not the agreement itself. And though *Industrial* held that a co-conspirator may be "charged with preceding acts in furtherance of the conspiracy," it is unclear (from *Industrial*'s language and the cases it relied upon) whether the language applies to vicarious liability or simply conspiratorial liability. Given the issue presented in *Industrial*, as well as the indirectness of the quoted language to the facts of this case, the Court sees no need to deviate from the Ninth Circuit's more recent instruction in *United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992): "[A] defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from the conspiracy." *Id.* at 1262 (citing *Levine v. United States*, 383 U.S. 265, 266, 86 S.Ct. 925 (1966)).

      Overt acts of racketeering give rise to those injuries and a co-conspirator is only liable for the overt acts committed after he joined the unlawful agreement. Since none of the acts committed after IGWT's joinder resulted in harm to Mattel's business or property, the RICO

counterclaim against IGWT must be dismissed.

### B. Reasonable Foreseeability

Mattel argues that even if the Court declines to reconsider the logic that compelled Omni's dismissal, IGWT is different from Omni. According to Mattel, IGWT could "reasonably foresee" its co-conspirators' prior acts because "IGWT is Larian's alter ego [and] the prior acts were actually known by IGWT." Opp. at 7:14. However, one can't reasonably foresee acts committed prior to its entry into the conspiracy as a *matter of law* for two reasons. First, an entity – whether an alter ego or not – can't look backwards in time, an argument made clear in *O'Campo*. Second, reasonable foreseeability is a doctrine of causation: the issue is whether the commission of the overt act was a foreseeable result of the conspirator's entry into the unlawful agreement. Prior acts occurred absent the conspirator's involvement in the conspiracy; they weren't a result (whether foreseeable or not) of the unlawful agreement.

### C. Declaratory Relief

Finally, Mattel argues that its declaratory relief counterclaim against IGWT should survive, notwithstanding the dismissal of its other counterclaims. Mattel's counterclaim seeks a declaration that "any and all encumbrances, security interests or rights of priority that [IGWT] purports to hold senior or preferred to Mattel's rights as a creditor of MGA are invalid and/or are equitably subordinated to Mattel's rights as a creditor of MGA." FAAC ¶ 242.

28 U.S.C. § 2201 provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Declaratory relief should be denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

Mattel relies upon California's Uniform Fraudulent Transfers Act (CUFTA), which provides a cause of action to a "creditor," a term which includes a person who "has a claim," which is a "right to payment, whether or not the right is reduced to judgment." Cal. Civ. Code

§ 3439.01. In essence, Mattel contends that anybody who dreams up a legal claim can sue his contemplated adversary's creditors seeking a judicial declaration about just who has priority over the potential adversary's assets.

Such a claim would betray the Supreme Court's instruction that a claim for declaratory relief concern a dispute that is:

> [D]efinite and concrete, touching the legal relations having adverse interests and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*MedImmune, Inc. v. Genetech, Inc.*, 127 S.Ct. 764, 774 n. 11 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

Now more than ever before, Mattel's declaratory relief claim against IGWT seeks a judicial opinion about Mattel's rights in the hypothetical event that Mattel ever obtains a judgment against MGA. Any dispute between Mattel and IGWT about their entitlement to MGA's assets isn't definite, concrete, real, substantial, or immediate. IGWT's Motion is [GRANTED] as to the seventeenth counterclaim.

### IV. Disposition

The Motion is [GRANTED].

IT IS SO ORDERED.

DATED: September 1, 2010

DAVID O. CARTER
United States District Judge