Hon. James L. Smith (Ret.)
JAMS
500 N. State College Blvd.
Suite 600
Orange, CA 92868
Telephone: (714) 939-1300
Fax: (714) 939-8710

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
SEP -1 2010
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC. A Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., A California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV04-9049 DOC (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>REPORT AND RECOMMENDATION<br><br>OF ELECTRONIC DISCOVERY<br><br>SPECIAL MASTER<br><br>(08/19/10) |

The undersigned having been appointed Special Master for Electronic Discovery conducted a hearing (Hearing) regarding pending e-discovery disputes on August 16, 2010. Appearing on behalf of MGA Entertainment, Inc. (MGA) were Annette Hurst and Diana Rutowski of Orrick, Herrington & Sutcliffe LLP. Appearing on behalf of Mattel, Inc. (Mattel)

---

1

August 19, 2010, REPORT AND RECOMMENDATION
OF E-DISCOVERY SPECIAL MASTER

were Marshall Searcy and Dylan Proctor of Quinn Emanuel Urquhart Oliver & Hedges, LLP. The following e-discovery issues were addressed:

1. MGA Motion to Compel Forensic Examination of Robert Eckert Computer Media;
2. Mattel Motion to Compel Inspection of Carter Bryant's Electronic Mailbox for Evidence of Spoliation;
3. Mattel Motion to Compel Inspection of MGA Hard Drives; and,
4. Mattel Motion to Compel MGA Compliance with Rule 34 Production.[1]

## REPORT

The motions addressed herein concern issues that are not all new to the Court, some of them having been considered in one form or another in prior reports and recommendations. In structuring the recommendations contained herein the Special Master has considered the limited time available for the completion of discovery in light of the recent CourtOrder scheduling the trial of this action in January, 2011. Clearly there is insufficient time to complete all of the e-discovery requestedby the parties in the pending motions and other motions anticipated in the near future. Some form of triage must be implemented.

<u>1. MGA Motion to Compel Forensic Examination of Robert Eckert Computer Media</u>

MGA seeks an order directing the Court-appointed E-Discovery Consultant, International Litigation Services (ILS) conduct a forensic examination of media identified by Mattel as containing back-up copies of the e-mail correspondence of Robert Eckert (Eckert) the CEO of Mattel during the period addressed in this action. A prior Court order required that Mattel identify all media maintained by Mattel on which back-up copies of e-mail received or sent by Eckert had been stored. In response to this order Mattel identified five hard drives, two e-mail servers, and over 9,600 back-up tapes that contain such data. While the hard drives and e-mail servers identified by Mattel would be relatively easy to access for purposes of retrieving the Eckert e-mail, a similar effort directed toward the back-up tapes (Tapes) would require each

---

[1] This Rule 34 Motion was argued at an earlier hearing and submitted for consideration by the Special Master.

of the Tapes be restored to create a new database containing active files that could then be searched in order to recover the documents being sought. This process would take months and could only be accomplished at great expense to whichever party was burdened with the cost. MGA contends that the generally prevailing rule that back-up tapes are not accessed in discovery is predicated on the assumption that the parties have complied with their preservation obligations, and that when a party intentionally relies on it back-up tapes to meet its obligation to preserve data then discovery access to those tapes should be allowed. This contention is correct.

It is clear that Eckert, after the duty to preserve records was triggered, followed a practice whereby he deleted his e-mails from his computer once he had read them, and then periodically would also delete the contents of the folder that contained these deleted files. This process was referred to as "double deleting." Eckert testified that notwithstanding his practice of double deleting e-mail files it was his impression these files were retained by Mattel as part of its back-up and/or archiving procedures. It appears this reference is to the Tapes, the hard drives, and the e-mail servers identified by Mattel in response to the earlier Court order. In the absence of the time constraints imposed by the existing trial date MGA's argument would indicate an exception to the general rule should be made and the all or some of the Tapes should be restored to facilitate the recovery of the Eckert e-mail documents.

In light of the existing time constraints restoration and search of all of the back-up tapes is not a practical option. However, sampling procedures that will require restoration of some small number of the Tapes can be accomplished within the existing time constraints. An examination of the five hard drives and two e-mail servers identified by Mattel can also be accomplished expeditiously.

Having considered the above circumstances, including the limited timeline available to complete discovery, the Special Master will recommend the five hard drivesand two e-mail servers identified by Mattel be examined to determine if there is evidence of the use of spoliation software and/or unusual deletion patterns contained therein. In addition the Special Master will recommend counsel for the parties be required to meet and confer forthwith to

3

August 19, 2010, REPORT AND RECOMMENDATION
OF E-DISCOVERY SPECIAL MASTER

determine the methodology used in creating the Tapes, and more specifically to determine the following: a) Are the Tapes labeled for purposes of identifying the date of creation and/or the media being backed up; b) Do the tapes contain a catalog indicating their content; and, c) Without restoration of the Tapes can an index be created identifying the date of creation and the media being backed up. If the Tapes can be identified and/or indexed then the Special Master will recommend MGA be directed to designate two timeframes of 15 calendar days each and that ILS be directed to restore the tapes created during those timeframes and recover therefrom any Eckert e-mail contained therein.

2. Mattel Motion to Compel Inspection of Carter Bryant's Electronic Mailbox for Evidence of Spoliation

Carter Bryant (Bryant), as the Court is aware, is a central focus of the disputes between the parties to this action, having initially worked for Mattel, and then leaving Mattel and going to work for MGA. On or about May 11, 2006, MGA created an e-mail mailbox (Mailbox) in its e-mail server (MGA Server) for Bryant's use. The Mailbox was deactivated on or about August 1, 2008. During the period the Mailbox was active all e-mail directed to Bryant at his MGA e-mail address was received and all outgoing e-mail was mailed utilizing the Mailbox. When the Mailbox was deactivated in August, 2008, all of the files it contained at that time were converted to another file format and archived on the MGA Server. Mattel requests the MGA Server be inspected by the Court-appointed E-Discovery Consultant, ILS, to determine if there is data contained therein indicating the use of spoliation software and/or unusual deletion activities that would be in violation of MGA's duty to preserve which was triggered not later than April, 2005, when MGA filed its action against Mattel.

First, it should be noted that MGA, prior to the Hearing, with the exception of 6 documents identified as privileged, produced the entire contents of the Mailbox as archived on the MGA Server. For this reason, barring disputes over the privileged nature of the documents withheld, there is no issue regarding document production. The sole remaining issue regarding

4

the Mailbox is whether it should be examined for evidence of spoliation and/or unusual deletion activities.[2] The Referee will recommend this examination be conducted by ILS.

### 3. Mattel Motion to Compel Inspection of MGA Hard Drives

Mattel requests an inspection of all MGA media, including hard drives and e-mail servers, associated with three MGA employees: Joe Tioncgo (Tioncgo); Didi Brown (Brown); and, Nancy Koppang (Koppang). Tioncgo, employed in MGA's Information Technology department during the period addressed in this action, was involved in the deletion of e-mail associated with Brian Wing, another MGA employee, at the direction of Isaac Larian (Larian). These events were the subject of an earlier Report and Recommendation to the Court. Brown and Koppang were administrative assistants to Larian.

MGA contends there is no evidence indicating any of these individuals engaged in any type of spoliation activities and therefore there is no justification for granting Mattel's motion. MGA asserts the focus should be on the conduct of each individual custodian in determining whether there is evidence of spoliation activities that would provide justification for conducting a forensic investigation of the ESI associated with that custodian. This position is not supported by case law. Although individual agents and/or employees are normally the mechanism by which spoliation efforts are implemented, the parties are charged with responsibility for these activities, and if a party, through its officers and employees, has engaged in suspicious discovery activity then responsibility for discovery of ESI in the possession of that party may be assigned to an independent consultant or, under some circumstances, to the adverse party. This is so notwithstanding the fact that the officer or employee of the party with whom the ESI is associated has not been shown to have engaged in any wrongful conduct. Such a result is clearly supported in regard to ESI maintained by MGA in light of the many examples of conduct by MGA officers and employees that violated MGA's obligation to preserve

---

[2] If Bryant had utilized the same "double deleting" procedure as described in regard to the Eckert e-mail then it is unlikely any of Bryant's e-mail would have been discovered on the MGA Server. However, if Bryant simply deleted his e-mail, without subsequently deleting the contents of the file containing his deleted e-mail, then those files were most likely archived on the MGA Server when the Bryant Mailbox was deactivated and may be recoverable.

evidencethat were summarized in Mattel's moving papers. More specifically, Tioncgo was personally involved in the deletion of the Brian Wing e-mail which was the subject of an earlier Report and Recommendation to the Court. Brown and Koppang, as administrative assistants to Larian, were in such close proximity as to Larian in the MGA raise a strong inference that their hard drives will contain discovery relevant documents based solely on their proximity to Larian and the function as his administrative assistants. The Special Master will recommend the hard drive(s) of Tioncgo, Brown and Koppang be examined by ILS to determine whether the hard drives contain evidence of the use of spoliation software or unusual deletion activity.

4. Mattel Motion to Compel MGA Compliance with Rule 34 Production

Mattel contends discovery in this action leads to at least two unavoidable conclusions:

1. MGA, during the period focused on by this action, had in place a de facto policy whereby MGA officers and executive personnel stored their ESI (e-mail and other electronic documents) on their local desktop and/or laptop computers (Local Hard Drives) and did not store such data on any of the numerous MGA servers that were available for such storage; and,

2. MGA's discovery responses have been generally lacking in any indication that these Local Hard Drives were routinely searched in providing responses to e-discovery.

Generally these conclusions seem supported by the evidence and discovery history of the case, an extensive summary of which is contained in Mattel's moving papers. In its opposition to this motion MGA places great emphasis on the impressive numbers of documents it has produced in discovery, including almost 23,000 documents referring to Paula Garcia, over 37,000 referring to Gustavo Machado, and over 80,000 referring to either "Isaac" or "Larian." Impressive though these numbers may be, that do not focus on the issue presented in this motion which is the documents that have not been produced.

MGA explains the production by third parties of documents that reasonably should have been produced by MGA as being a product of the requests propounded to the third parties being broader in scope than the requests propounded to MGA. While facially reasonable, on further

6

analysis this argument appears generally unsupported by the facts. Illustrative is the document referred to in Mattel's motion as the "Valuation Analysis," a document that purports to place a specific value on Isaac Larian's interest in MGA, which was not produced in discovery by MGA. Clearly documents such as this would be responsive to multiple discovery requests propounded by Mattel, and the only explanation for MGA having failed to produce them is either the search terms utilized were unsuccessful in identifying these documents or the media containing these documents were not searched. In light of this record Mattel requests MGA be ordered to comply with the obligations imposed by FRCP 34 and RFCP 37.

MGA's opposition stresses the volume of documents that have been produced by MGA and the impact of MGA having changed counsel on multiple occasions has had on its ability to determine precisely what media have been examined and what search terms have been used by MGA in responding to discovery. While the problems encountered are no doubt real, they are not an excuse for the shortfalls that have been experienced in MGA's discovery production. For this reason the Special Master will recommend a two-step approach that will initially require MGA to identify, with specificity, each hard drive, hard drive image, archived "My Documents" folder, and any other ESI repository it has searched for documents responsive to discovery requests propounded by Mattel, and the search terms utilized in implementing that each of those searches. It is only after this information has been provided that the Court, with the assistance of the Special Master, can determine if MGA's failure to produce was a result of the documents not being in MGA's possession or the result of an inadequate search protocol. Once the information regarding media searched and search terms utilized is provided the Special Master will consider and report to the court regarding other issues that may be raised.

It is anticipated there will be objections raised to this recommendation including, but not limited to, the contention that such disclosure will violate the attorney work product doctrine and/or attorney-client privilege. As to the former, the attorney work product doctrine is not truly a privilege, or at best can be characterized as a conditional privilege that will not protect work product from disclosure where the information sought is relevant to the issues in the case and cannot be practically obtained through any other source. As to the attorney-client privilege,

7

August 19, 2010, REPORT AND RECOMMENDATION
OF E-DISCOVERY SPECIAL MASTER

disclosure of the search terms utilized does not necessary invade the sanctity of any communication between MGA and its counsel any more than a request for identification of a file drawer or folder that was searched would invade the privilege if we were dealing with paper discovery.

## RECOMMENDATION

The Report of the Special Master for E-Discovery contained herein is accepted and approved. The parties, in complying with the Court's order shall consider the Special Master's Report.

1. As to MGA's Motion to Compel Forensic Examination of Robert Eckert Computer Media:

Motion granted.

The five hard and two e-mail servers identified by Mattel as containing e-mail files of Robert Eckert shall be examined by the Court-appointed E-Discovery Consultant, International Litigation Services (ILS) to determine if there is evidence of the use of spoliation software and/or unusual deletion patterns contained therein. The images of the hard drives and the servers shall be delivered to ILS forthwith.

In addition, counsel for the parties, within 3 business days following the issuance of the Court's Order herein, shall meet and confer to engage in good faith efforts to determine the methodology used in creating the back-up tapes identified by Mattel as containing e-mail files of Robert Eckert, and more specifically shall determine the following:

a) Are the back-up tapes labeled for purposes of identifying the date of creation and/or the media being backed up;

b) Do the tapes contain a catalog indicating their content; and,

c) Without restoration of the Tapes can an index be created identifying the date of creation and the media being backed up.

Counsel for the parties shall report to the Special Master for E-Discovery within 5 business days following the issuance of the Court's Order herein regarding the status of their

8

August 19, 2010, REPORT AND RECOMMENDATION
OF E-DISCOVERY SPECIAL MASTER

1  meet and confer efforts. The Special Master is authorized to make such further orders as he
2  deems reasonably necessary to facilitate the cataloging and/or indexing of the back-up tapes.
3      Once the back-up tapes have been cataloged and/or indexed, MGA may designate two
4  timeframes of 30 calendar days each. All back-up tapes created during those timeframes shall
5  be delivered to ILS for restoration and recovery therefrom of e-mail files associated with Robert
6  Eckert. These files shall be produced to MGA, withholding only those files as to which a
7  privilege is being asserted. All withheld files shall be listed on a privilege log indicating the
8  date of the e-mail, who created it, and the distribution and subject matter of the e-mail.

10  2. As to Mattel's Motion to Compel Inspection of Carter Bryant's Electronic Mailbox for
11  Evidence of Spoliation:
12      Motion granted in part.
13      An image of MGA's e-mail server shall be delivered to ILS. ILS shall conduct and
14  examination of the server to determine if it contains evidence of the use of spoliation software
15  and or unusual deletion patterns. ILS shall report its findings to the Special Master for E-
16  Discovery.

18  3. As to Mattel's Motion to Compel Inspection of MGA Hard Drives:
19      Motion granted.
20      MGA shall deliver forthwith to ILS images of the hard drives used by MGA employees
21  Joe Tioncgo, Didi Brown and Nancy Koppang. ILS shall examine the drives to determine
22  whether they contain evidence of the use of spoliation software or unusual deletion activity.

24  4. As to Mattel's Motion to Compel MGA Compliance with Rule 34 Production:
25      Motion granted in part.
26      MGA shall, within 10 business days following the issuance of the Court order herein,
27  provide to Mattel a list of all ESI sources, including but not necessarily limited to all hard
28  drives, hard drive images, servers, archived "My Document" folders of current and former

9

August 19, 2010, REPORT AND RECOMMENDATION
OF E-DISCOVERY SPECIAL MASTER

1  MGA employees, and other ESI repositories it has searched, and the search terms utilized in
2  implementing its search of each source, in responding to discovery propounded upon MGA by
3  Mattel.
4       Counsel for the parties shall meet and confer and schedule such hearings as may be
5  required before the Special Master to resolve any logistical disputes regarding production of this
6  information.

Date: August 19, 2010

_____
James L. Smith
Special Master

IT IS SO ORDERED.
Date: ~~August~~ September 1, 2010

_____
Hon. David O. Carter
Federal District Court Judge