QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>      vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>             Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br><br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY IN RESPONSE TO MATTEL'S REQUESTS FOR DISCOVERY CONCERNING MGA'S REPLY COUNTERCLAIMS;**<br><br>Date:   October 1, 2010<br>Time:  11:00 a.m.<br>Place:  Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:  October 4, 2010<br>Pre-trial Conference:  January 4, 2011<br>Trial Date:  January 11, 2011 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 1

I. MGA'S RESPONSE TO MATTEL'S DEPOSITION NOTICE REMAINS INADEQUATE ................................................................................. 1

II. MGA'S RESPONSES TO REQUESTS FOR PRODUCTION ........................ 4

    A. Mattel Still Lacks Critical Documents on MGA's Claims ...................... 4

        1. MGA Has Failed To Produce Basic Toy Fair Information .......... 4

        2. MGA Has Failed To Produce Documents Showing Its Taking Of Information From Mattel Showrooms And Its Attempts To Hire Sal Villasenor. ................................................. 7

    B. MGA's Objections Should Be Overruled ............................................... 8

III. MGA'S RESPONSES TO MATTEL'S RFAS ARE DEFICIENT ................. 10

IV. MGA'S INTERROGATORY RESPONSES ARE DEFICIENT ................... 12

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

## Cases

All Steel Engines v. Taylor Engines,
    88 F. Supp. 745 (N.D. Cal. 1950)..........................................................................11

Asea, Inc. v. Southern Pac. Transp. Co.,
    669 F.2d 1242 (9th Cir. 1981)................................................................................11

Funk v. Tifft,
    515 F.2d 23 (9th Cir. 1975)...................................................................................11

O'Riordan v. Federal Kemper Life Assurance,
    36 Cal. 4th 281 (2005)...........................................................................................11

San Diego Hospice v. County of San Diego,
    31 Cal. App. 4th 1048 (1995).................................................................................11

## Statutes

Cal. Civ. Code §3426.1(d)(2) ........................................................................................13

**Preliminary Statement**

MGA's inadequate production to date, its objections and responses to Mattel's discovery requests, and the difference between those responses and the positions it took during the meet and confer all only serve to confirm that MGA is stonewalling full and fair discovery into its last-minute "counterclaims-in-reply." Indeed, in straining to blame Mattel for prematurely filing its motion to compel, MGA unintentionally highlights MGA's gamesmanship that preceded the filing of its counterclaims-in-reply – which included urging this Court to set discovery cut-off dates that prevented discovery into MGA's claims without any disclosure to Mattel or the Court that it was imminently planning to bring those claims. And MGA wholly ignores the fact that, far from being premature, Mattel's motion deadline was set by Court Order.

MGA's opposition fails on the substance as well. It deigns to discuss only a handful of Mattel's requests and fails to address the arguments that Mattel made in its motion with regard to those. MGA's objections are meritless, and MGA should be compelled to provide full answers to all discovery, particularly the interrogatories and RFAs, for which its responses are inadequate. More importantly, despite having no basis for refusing the basic discovery that Mattel has sought, MGA has not in fact produced it although the Court previously indicated that all production responsive to Mattel's motion to compel expedited discovery was to be made by September 30.

Mattel's motion should be granted in its entirety.

**Argument**

**I.   MGA'S RESPONSE TO MATTEL'S DEPOSITION NOTICE REMAINS INADEQUATE**

Despite now having had weeks to do so, MGA has not produced a single designee on a single 30(b)(6) topic pertaining to its new counterclaims. Nor has it served objections to Mattel's deposition topics or moved for a protective order.

Instead, MGA claims in opposition that Mattel has agreed that Isaac Larian will be the designee on all topics on October 4. As set forth in Mattel's motion, Mattel agreed to no such thing. Dkt. No. 8775 at 4. Far from it. MGA's last-minute trade secret counterclaims *alone* put at issue 114 entire product lines or individual products that were sold over the course of two decades and were shown at multiple toy fairs around the world.[1] MGA's offer of Larian[2] as its 30(b)(6) witness on the last day of discovery for a single session – which undoubtedly will not even be a full day since Larian typically refuses to sit for more than a few hours – is not remotely sufficient to cover even these issues, let alone the entirety of MGA's new claims. In contrast to the single (incomplete) day of testimony MGA has offered but not even provided on its trade secret and other new claims, MGA has taken more than 17 days of Mattel 30(b)(6) testimony totaling more than 94 hours on Mattel's trade secret claims alone.

The gross inadequacy of MGA's offer is all the more obvious given Larian's track record of deposition antics. During his most recent 30(b)(6) sessions, Larian obstructed and wasted substantial amounts of time by such tactics as (just to name a few): reading into the record lengthy documents, even though they were not responsive to the question posed;[3] claiming that he doesn't understand questions using words such as "doing business with" or "trade secrets," even though he was a

---

[1] MGA's Corrected Responses to Mattel's First Set of Interrogatories (MGA Reply Counterclaims) Interrogatory 1.

[2] Further, MGA offering Larian is odd in light of their frequent (and incorrect) complaint that Mr. Larian has sat for sixteen days of deposition testimony. This is incorrect. Mr. Larian has only been deposed eight times in his personal capacity, sometimes for only a few hours at a time, which is the same number of days as Mr. Eckert.

[3] See, e.g., Deposition Transcript of MGA 30(b)(6), dated August 12, 2010 ("8/12/10 Larian Tr."), at 3759:1-3761:12, 3853:14-3856:12, 3931:1-3937:17, 3989:13-4008:20.

designee on "trade secrets" and even though he has used "trade secrets" in his business correspondence;[4] and, when all else failed, engaging in evasion either by refusing outright to answer questions[5] or by threatening and personally attacking counsel.[6]

Mattel is entitled to a properly prepared witness immediately and to one who will endeavor to answer the questions posed. Mattel is also entitled to sufficient time to fairly and fully examine MGA on the topics. MGA's offer accounts for none

---

[4] See, e.g., Deposition Transcript of MGA 30(b)(6), dated September 1, 2010 ("9/1/10 Larian Tr."), at 4371:6-4375:1 [redacted], 4182:21-4188:16 [redacted], MGA 2 2987571 [redacted].

[5] 8/12/10 Larian Tr. at 3762:19-21 [redacted].

[6] 8/12/10 Larian Tr. at 3756:16-23, 3778:11-3779:6, 3763:3-3766:22 [redacted].

of this. MGA should be compelled to produce witnesses to testify from day to day until complete testimony on all topics has been provided.

## II.   MGA'S RESPONSES TO REQUESTS FOR PRODUCTION

MGA has agreed to complete production (aside from its boilerplate objections to Mattel's definitions, which should be overruled) on all of the RFPs at issue except for 17, 20, 27-28, 38, 61, and 83. In its opposition, MGA fails to mention its unilateral limits on RFPs 27-28, and glosses over its refusal to provide any response to RFPs 61 and 83. MGA's unsubstantiated objections as to these requests should thus be overruled. Furthermore, even though it has now had weeks to come clean with relevant documents and even though discovery cut-off is less than four days away, MGA continues to withhold even obvious categories of documents.

### A.   Mattel Still Lacks Critical Documents on MGA's Claims

#### 1.   MGA Has Failed To Produce Basic Toy Fair Information

Notwithstanding MGA's assertions that it will produce documents responsive to most of the RFPs, Mattel is without basic and critical documents. These include documents showing that the product information which MGA claims were trade secrets stolen from toy fairs was, in fact, not confidential.

During the relevant years, industry toy fairs included the Hong Kong Toy Fair, the Tokyo Toy Fair, the Nuremberg Toy Fair and the New York Toy Fair. These shows typically have run in that order chronologically during January and February each year. Most of what MGA claims were stolen trade secrets were products displayed at New York Toy Fair. But MGA's high-pitched rhetoric about its supposed New York Toy Fair trade secrets has conveniently omitted that much of the information at New York Toy Fair is widely available *before* then, including as a result of the prior shows such as the Nuremberg Toy Fair. Ron Brawer, an MGA executive in charge of global sales, marketing and strategic sales planning during

relevant times, testified that MGA and other toy companies publicize their upcoming Fall product lines at these toy fairs.[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MGA was present at these Nuremberg shows and publicized its fall products in this way.[12] As for New York Toy Fair, Brawer acknowledged that MGA would also make public statements and release information about its upcoming Fall line to the press.[13] MGA even gave the press access to its showrooms at toy fairs, where they took pictures and recorded video of MGA's upcoming product lines.[14]

As even this background summary makes clear, information about MGA's toy fairs, trade shows and conventions is critical. Yet, MGA has not produced key documents on these subjects that Brawer and other witnesses testified exist. Such documents that MGA has not produced include:

---

[7] Brawer Deposition Transcript, dated September 26, 2010 ("Brawer Tr.") at 1806:15-1815:10.
[8] Brawer Tr. 1987:22.
[9] Brawer Tr. at 1807:25-1808:3.
[10] Id.
[11] Id. at 1815:14-1815:8, 1807:22-25.
[12] Id. at 1813:1-8.
[13] Id. at 1903:7-18.
[14] Id. at 1849:17-1853:14. Garcia Deposition Transcript, dated September 16, 2010 ("Garcia Tr."), 1965:7-1968:7.

- The videos and photographs that MGA routinely took of its showrooms and that therefore depict the supposedly stolen product information at issue or the log books that show with whom the videos and photographs were shared.[15]

- Documents showing what products MGA displayed and touted to members of the media in its press rooms at toy fairs.[16]

- The catalogs, sell sheets and other materials that MGA distributed at the toy fairs that contained the information MGA claims was taken.

- MGA's toy fair press kits, including materials given to the press regarding MGA products prior to them hitting the shelves or other documents that MGA's PR department distributed about the products at issue.

- Agreements that ostensibly required toy fair attendees and recipients of the toy fair videos to keep information secret, as well as any such agreements that required each person who had access to the supposed trade secrets prior to the toy fairs to keep them secret.

- The invitations, attendee lists, log books, sign-in sheets, calendars, schedules and appointment records that show the identities of those who had access to MGA's showrooms and that MGA witnesses admitted existed.[17]  Such information is critical to demonstrating that MGA regularly invited into its showrooms all manner of competitors, the press and others for whom MGA had no signed agreement of confidentiality.

- Documents showing MGA's lapses in security at its toy fairs or indeed showing that MGA took any steps to maintain security. MGA produced one such email from 2007, which reflected that hundreds of people went through its

---

[15] Brawer Tr. at 1840:22-1846:23
[16] Brawer Tr. at 1808:4-1809:15.
[17] Brawer Tr. 1777:4-1778:18, 1768:19-25.

New York Toy Fair showroom without any meaningful restriction on access or confidentiality.[18] Yet, MGA has not produced such documents for other years.

In short, MGA has in its possession basic toy fair documents showing that, contrary to MGA's claims, the trade secrets MGA alleges were stolen was in fact widely available, or even shared with the press for the purpose of promoting MGA's products, and not subject to any meaningful measures to maintain its confidentiality. Even though there is no colorable argument that Mattel is not entitled to these documents, MGA has not produced them. It should be compelled to do so.

### 2. MGA Has Failed To Produce Documents Showing Its Taking Of Information From Mattel Showrooms And Its Attempts To Hire Sal Villasenor.

Brawer admitted that he knew that retailers discussed with competitors the products they saw at MGA's and other toy companies' showrooms at the toy fairs.[19] While an MGA executive, Brawer himself received such information about Mattel products being shown in Mattel showrooms.[20] Indeed, he and Larian obtained information that was expressly described as being about "top secret" Mattel products in a closed showroom at a toy fair[21] as well as catalogs and other information taken from Mattel showrooms.[22] Documents on these subjects are relevant both to MGA's lack of expectation of confidentiality of information that MGA shared with retailers as well as Mattel's unclean hands defense.

MGA did not itself merely obtain the same product information that MGA tries to allege was trade secret from Mattel toy fairs. For good measure, Larian, Brawer and Gustavo Machado also tried to hire the former Mattel employee who

---

[18] MGA 2 3072504-3072506.
[19] Id. at 1789:15-1791:4.
[20] Id. at 1789:15-1791:4, 1796:9-20.
[21] MGA 2 3089028.
[22] MGA 0151823-0151828, MGA 2 1763053-1763054.

1  MGA claims stole information from MGA, Sal Villasenor, to work at MGA. This
2  was despite their admitted knowledge going back for years that Villasenor used false
3  credentials to get it.[23]  Documents on MGA's attempt to hire Villasenor are relevant
4  to a host of issues, including statute of limitations, laches and unclean hands.

### B. MGA's Objections Should Be Overruled

MGA argues that it should only be required to produce "exemplar" NDAs for Request 17, which calls for "[a]ll non-disclosure or confidentiality agreements between YOU and YOUR customers or potential customers." Of course, MGA has yet to produce even exemplars. In any event, exemplars are inadequate. As Mattel explained in its motion (Dkt. No. 8775 at 12), these documents show whether or not MGA even maintained confidentiality of the trade secrets it is suing on. Mattel is entitled to know whether MGA maintained that confidentiality in actual practice, and whether all of its customers or potential customers were required to maintain confidentiality. The question is not whether MGA has a stock NDA it can produce, the question is whether it consistently maintained confidentiality over the span of all the years on which it bases its new claims. Exemplars will obviously exclude untold numbers of critical documents, and only a full production will reveal the extent to which MGA has *not* required NDAs by comparing all of the actually signed NDAs with the toy fair logs and other discovery showing who had access to what MGA claims are its trade secrets. A full production must be ordered.

MGA alleges Request No. 20 is overbroad because it covers eighteen years, but MGA's new claims allege that Mattel has stolen the information sought by Request 20 over those 18 years. MGA cannot complain about a request that precisely mirrors the scope of its own claims. Its objection should be overruled.

---

[23] MGA 2 0156471, MGA 4010001-4010004.

MGA does not even attempt to justify its refusal to respond to RFPs 61 and 83. As Mattel showed in its motion (Dkt. No. 8775 at 11), Request No. 61 seeks the very alleged trade secrets MGA is suing on—sculpts and other tangible objects relating to unreleased products that MGA alleges Mattel misappropriated. MGA cannot refuse to produce the very materials on which its claims are based. Request No. 83, which calls for MGA's financial statements from 1992 to 2000, is necessary for damages as Mattel has previously argued (Dkt. No. 8775 at 23). Indeed, MGA itself has moved to compel this very type of information from Mattel based on its arguments that such financial information is necessary to ascertaining damages and damages causation.[24] MGA's boilerplate objections (that the requested information is privileged, not relevant to claim or defense, overbroad, vague and/or ambiguous, already produced, etc.) are meritless. MGA put this information at issue by alleging that Mattel has stolen trade secrets since 1992.

MGA also does not attempt to justify its objections Request Nos. 27-28. Both pertain to the development of allegedly stolen products (Request 27) and prior positions MGA has taken with regard to their ownership (Request 28). As Mattel explained (Dkt. No. 8775 at 13-14), this information is crucial to establishing that the materials were never protectable to begin with. Nevertheless, MGA limits its production to documents "*to the extent that they relate to trade dress that MGA is asserting in this action*." (MGA's Objs. at 29-31, emphasis added). MGA has not yet made it clear what it is asserting in this action, initially claiming 54 products and now listing 114 in its first interrogatory response. To the extent this places some sort of limitation on Mattel's discovery, it should be overruled. Mattel is entitled to information on MGA's entire security. If MGA failed to maintain security for its products during the development process or at any time prior to the toy fairs – and

---

[24] Dkt. No. 7755.

thus were not trade secrets even *before* toy fair – MGA cannot avoid production by simply excluding those parts of the process from its claims. (See Dkt. No. 8775 at 13-14). They are still directly relevant to the lack of trade secret protection available as of the time they were supposedly taken. And security measures after toy fair are relevant as well because they are pertinent to damages. If MGA failed to maintain security for its products after the toy fairs, then the time period for which Mattel could have obtained any advantage from the supposed theft would be limited.

MGA apparently places a similar improper limitation on Request No. 38: "All UNRELEASED PRODUCT INFORMATION, including but not limited to any product catalogs, sell sheets or product information sheets that REFER OR RELATE TO the UNRELEASED PRODUCTS." MGA's response states that it will "produce responsive, non-privileged unreleased product information." (MGA's objections at 39-40, emphasis added). Mattel understood this as an agreement to produce, but MGA's opposition indicates (but does not explain) otherwise. (Dkt. No. 8794 at 3). Mattel is entitled to this information to show that these claimed products were not trade secrets. (See Dkt. 8775 at 11).

Lastly, the definitional games that MGA is playing with regard to RFPs 27-28 and 38 underscore the need for a full production, without objections—if MGA is improperly limiting its responses based on unexplained and unilateral definitional objections, neither Mattel nor the Court have any idea of what MGA has actually committed to produce.

### III. MGA'S RESPONSES TO MATTEL'S RFAS ARE DEFICIENT

In its opposition, MGA argues that it has made substantive responses to all of Mattel's RFAs. Not so. MGA again has objected to the definitions and unilaterally limited them in unexplained ways, making it impossible to determine what MGA has admitted or denied. For example, MGA objects to the definition of "INJUNCTION" and/or other definitions well, before denying RFAs 3, 4, 6 and 7, which pertain to the sale (RFA 3), manufacture (RFA 4), impounding of molds and

inventory (RFA 6), sale of the Bratz Spring 2009 line (RFA 7), and sale of the Bratz Spring 2010 line (RFA 10).  If this denial is made pursuant to a definition other than the one Mattel provided, Mattel cannot say what the response means.

MGA denies RFAs 16-26 on the grounds that its employees only knew of the conduct mentioned in those RFAs outside the scope of their employment.  (See Objections to RFAs 16-23: Mr. Brawer's knowledge of these facts is "outside the scope of [his] responsibilities at MGA;" RFAs 24-26: MGA employees' knowledge of these facts was acquired either during their employment with Mattel or in the course of their prior employment.).  This is nonsensical and should be overruled.  A party may not deny a request "if the information relevant to the request is reasonably available to him."  Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981).  This includes whatever information is "readily obtainable" by the party.  Id. at 1246.  Furthermore, the knowledge of MGA executives – which MGA itself specifically relies on in its counterclaims-in-reply – is not merely "readily obtainable;" it *is* the knowledge of MGA.[25]  And, even if the Court chose to accept MGA's bizarre argument regarding the scope of employment, this knowledge was

---

[25]  See Funk v. Tifft, 515 F.2d 23, 26 n.4 (9th Cir. 1975) ("as President of Pendor-Idaho and one of its three stockholders at the time at which the corporation acquired the land, Tifft was an agent of the corporation and the knowledge of an agent is attributable to the principal regardless of when it is acquired"); see also All Steel Engines v. Taylor Engines, 88 F. Supp. 745, 748 (N.D. Cal. 1950) (imputing knowledge to corporation "even though such knowledge may have been acquired before the agency was created"); O'Riordan v. Federal Kemper Life Assurance, 36 Cal. 4th 281, 288 (2005) ("The principal is charged with knowledge which his agent acquires before the commencement of the relationship when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal"); San Diego Hospice v. County of San Diego, 31 Cal. App. 4th 1048, 1056 (1995) (courts "impute[] knowledge to the defendant based on information actually known to existing agents or employees").

within the scope of Brawer and Machado's MGA employment, since they both attempted to use it to hire Villasenor to work for MGA.

## IV. MGA'S INTERROGATORY RESPONSES ARE DEFICIENT

MGA's responses to Mattel's interrogatories are insufficient on their face. They lack even the most basic information necessary to understand MGA's counterclaims and are replete with cross-references to unrelated interrogatories. For example, MGA's response to Interrogatory 1 simply claims that Mattel has stolen "[t]he appearance, operation, intended play pattern and plans to advertise on television for the following unreleased MGA products" and then merely lists 114 products. MGA does not explain what alleged trade secrets relating to these products Mattel is supposed to have stolen and indeed in some instances simply references entire product lines without even identifying particular products.[26]

In its opposition, MGA only addresses Interrogatory Nos. 5 and 8. MGA complains that Interrogatory No. 5 is burdensome because "[t]he Interrogatory would require MGA to determine every person or entity to whom it disclosed images or samples of its unreleased product since 1999." Dkt. No. 8794 at 4. But all that Mattel is requesting is the identity of persons who had access to the trade secrets MGA has put at issue: "For each trade secret that YOU contend that MATTEL misappropriated from YOU, IDENTIFY all PERSONS outside of MGA,

---

[26] An example of MGA's cross-referencing is found in its response to Interrogatory 4, which seeks facts supporting the element that the trade secret has independent value. Instead of doing so, MGA simply states that it is continuing its investigation and refers back to Interrogatories 1-3, which pertain to the identity of the supposed trade secrets that Mattel allegedly stole (Rog 1), the documents containing trade secrets that Mattel allegedly stole—which incidentally is a list of *Mattel* documents (Rog 2), and the alleged misconduct that Mattel engaged in with regard to these supposed trade secrets (Rog 3). None of these interrogatories or their responses provides any detail regarding the value of the alleged trade secrets, which is the information that Interrogatory 4 seeks. These are just two examples of the errors that infect virtually every Interrogatory response.

1  including but not limited to members of the press, trade associations, contractors,
2  retailers, distributors, agents, agencies, public relations firms, advertisers, producers,
3  production companies, media buyers, and the general public, to whom it was
4  disclosed by YOU or who otherwise obtained access to it, and when the disclosure
5  or initial access occurred."  MGA argues that this information is not relevant
6  because it "does not justify Mattel's use of deception to gain entry to their (sic)
7  showrooms" (Dkt. No. 8794 at 4), but that is not the point.  This information is
8  critically relevant to show that the allegedly stolen information was not a trade
9  secret at all because MGA showed it to all and sundry and failed to take reasonable
10 efforts to keep the material confidential as required by California Trade Secret law.
11 Cal. Civ. Code §3426.1(d)(2); Dkt. No. 8775 at 5.  MGA's objections should be
12 rejected.
13     MGA also claims that it is not required to give the cost of development of
14 these trade secret materials (Interrogatory 8, Dkt. No. 8794 at 5), because it does not
15 keep such records.  MGA cannot rely on later expert testimony alone—it must be
16 based on facts provided by MGA about its development process and costs.  Even if
17 MGA does not have readily available precise numbers, Mattel is entitled to
18 whatever data MGA's experts intend to rely on.

### Conclusion

Mattel respectfully requests that the Court grant its motion.

DATED: October 1, 2010          QUINN EMANUEL URQUHART &
                                SULLIVAN, LLP


                                By  /s/ Michael T. Zeller
                                    Michael T. Zeller
                                    Attorneys for Mattel, Inc. and
                                    Mattel de Mexico, S.A. de C.V.