1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar 090378)
     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar 196417)
3    michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100

6  Attorneys for Mattel, Inc. and Mattel de
   Mexico, S.A. de C.V.

7
                    UNITED STATES DISTRICT COURT
8
                  CENTRAL DISTRICT OF CALIFORNIA
9
                         SOUTHERN DIVISION
10

11 | MATTEL, INC., a Delaware corporation, | CASE CV 04-9049 DOC (RNBx)
   Consolidated with
   Case CV 04-09059
12 | Plaintiff, | Case CV 05-02727

13 | vs. | Hon. David O. Carter

14 | MGA ENTERTAINMENT, INC., a California corporation, et al., | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER FROM THE MGA PARTIES' AMENDED NOTICE OF DEPOSITION OF MATTEL, INC.  (FIFTH PHASE 2 NOTICE)
15 | Defendants.
16 |

17 | AND CONSOLIDATED ACTIONS |

18 | | Date:  TBD
   Time:  TBD
19 | | Courtroom:  9D

20 | | **Phase 2**
   Discovery Cut-off:       October 4, 2010
21 | | Pre-trial Conf:          January 4, 2011
   Trial Date:              January 11. 2011
22
23
24
25
26
27
28

00505.07975/3709019.1

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT...........................................................................................1

FACTUAL BACKGROUND ..............................................................................................1

ARGUMENT ......................................................................................................................3

I.   TOPIC NOS. 1-14, 16-18, 20-24 AND 26 SEEK IRRELEVANT
     TESTIMONY AND ARE UNDULY BURDENSOME ...................................3

     A.   Non-MGA Competitive Information..........................................................3

     B.   The Topics Are Otherwise Overbroad .....................................................6

II.  ADDITIONAL 30(b)(6) TESTIMONY ON MATTEL'S MARKET
     INTELLIGENCE GROUP IS UNDULY DUPLICATIVE .............................7

III. THE TOPICS INVADE THE ATTORNEY-CLIENT PRIVILEGE
     AND WORK PRODUCT DOCTRINE.................................................................8

     A.   Communications with Outside Counsel ...................................................8

     B.   Attorneys' Search and Collection for Specific Requests......................10

IV.  THE NOTICE IS DEFECTIVE ON ITS FACE, AND ANY TIME ON
     THE NOTICE SHOULD BE LIMITED ........................................................12

CONCLUSION ........................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR PROTECTIVE ORDER FROM MGA'S FOURTH 30(b)(6) DEPOSITION NOTICE

# TABLE OF AUTHORITIES

Page

## Cases

Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,
  881 F.2d 1486 (9th Cir. 1989) ................................................................................8

Hickman v. Taylor,
  329 U.S. 495 (1947)...............................................................................................9

Long v. Anderson Univ.,
  204 F.R.D. 129 (S.D. Ind. 2001)............................................................................9

In re Stratosphere Corp. Securities Litigation,
  183 F.R.D. 684 (D. Nev. 1999)............................................................................10

In re Sulfuric Acid Antitrust Litigation,
  231 F.R.D. 320 (N.D. Ill. 2005)...........................................................................10

Upjohn Co. v. U.S.,
  449 U.S. 383 (1981)...........................................................................................8, 9

## Statutes

Fed.R.Civ.P. 30(b)(1)..............................................................................................10

Rule 30(b)(6)  .......................................................................... 1, 3, 7, 8, 12

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on a date and at a time to be determined, in the

3    Courtroom of The Honorable David O. Carter, located at 411 West Fourth Street,

4    Santa Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does,

5    move the Court pursuant to Federal Rule of Civil Procedure 26(c)(1)(A) for a

6    protective order on Topics 1-26 of the Amended Notice of Deposition of Mattel,

7    Inc. (Fifth Phase 2 Notice, hereafter "Fifth Notice"), served by MGA Entertainment,

8    Inc. ("MGA") on September 28, 2010, as set forth herein.

9         This Motion is made on the grounds that Topics 1-26 in the Fifth Notice are

10   defective and warrant issuance of a protective order because, among other grounds,

11   they seek information that is not properly the subject of a Rule 30(b)(6) deposition;

12   they are vague and ambiguous, overbroad, unduly burdensome, oppressive,

13   duplicative and/or cumulative of Rule 30(b)(6) topics already propounded by MGA;

14   and they seek discovery that is neither relevant to the claims and defenses in this

15   action nor reasonably calculated to lead to the discovery of admissible evidence.

16        This Motion is based upon this Notice of Motion and accompanying

17   Memorandum of Points and Authorities, the attached Appendix containing the Fifth

18   Notice's Topics, and all other matters of which the Court may take judicial notice.

19                    **Conference of Counsel Certification**

20        Lead counsel met and conferred regarding MGA's Fifth Notice on September

21   30, 2010, but were unable to reach a resolution as to Mattel's objections.

22

23   DATED:  October 1, 2010          QUINN EMANUEL URQUHART &
                                      SULLIVAN. LLP
24

25
                                      By  /s/ Michael T. Zeller
26                                        Michael T. Zeller
                                          Attorneys for Mattel, Inc. and Mattel de
27                                        Mexico. S.A. de C.V.

28

## Preliminary Statement

In its Fifth 30(b)(6) Notice, MGA continues to flout the Court's rulings on the scope of discovery in this case.  Despite the Court's express ruling that "discovery in this case should be narrowly construed to encompass only the relationship between the two parties," virtually all of the 26 Topics explicitly seek testimony on Mattel's conduct regarding toy companies other than MGA.  So, for example, MGA's Topics repeatedly ask about Mattel's acquisition of information on "competitors' products," "MATTEL's competitors," "competitive information from any source" and "competitors' showrooms." These Topics are facially overbroad, unduly burdensome and improper under the Court's prior rulings.  Other Topics are improper by expressly inquiring into the substance of attorney-client privileged conversations – including attorney-client communications that are not even related to this suit.  And to the extent the Topics seek discoverable information, they are duplicative of topics on which Mattel is already providing testimony.

Moreover, the timing of the Fifth Notice is calculated gamesmanship.  Although it had weeks and months to seek this discovery, MGA served the Topics on September 28 and noticed them for October 2 – a mere four days later.  It is clear that MGA has no interest in these Topics as a source of discovery – if it did, MGA would have served them earlier than the eve of discovery cut-off.  Rather, it views them as a means of sandbagging Mattel with burdensome and overbroad 30(b)(6) preparation in an impossible timeframe.

Mattel should be granted a Protective Order on MGA's overbroad and improper Fifth Notice.

## Factual Background

<u>MGA Serves Discovery At the 11th Hour.</u>  Despite prejudicing Mattel by waiting years to plead its "Counterclaims-in-Reply," MGA was in no rush to propound its Fifth 30(b)(6) Notice for Phase 2.  Mattel provided <u>Rule</u> 30(b)(6) testimony on Mr. Villasenor's activities at Toy Fairs, including his use of false business cards to enter

1

toy fair showrooms, on June 23, 2010.  MGA deposed Mr. Villasenor on July 12, 2010.  Yet, MGA did not propound its Fifth Notice, containing 26 sweeping Topics related to Mr. Villasenor's testimony, until September 1, 2010.[1]  When it did, the Notice was facially improper because the noticed deposition date was for September 2, 2010 – the very next day.[2]  When Mattel pointed out this obvious deficiency to MGA, it withdrew the Notice.[3]

    MGA Sits On Its Fifth Notice For An Additional Month.  On August 10, the Court ordered that "[a]ll fact discovery, including all written discovery and depositions, shall be completed by October 4, 2010." Dkt. No. 8514. To facilitate the orderly wind-down of fact discovery, the Court directed that any subsequent disputes to compel discovery be consolidated in a single omnibus motion.  Id.  The parties also engaged in an informal meet and confer session with the Discovery Master regarding "the depositions that remain to be taken or which one of the parties contends still needs to be taken or resumed in this case."[4]  This session led to Discovery Matter Order No. 99, in which the Discovery Master helped narrow the depositions at issue in the parties' omnibus motions by issuing a "Report and Recommendation Regarding Remaining Depositions."[5]  MGA did not raise its intention to serve a Fifth Rule 30(b)(6) Notice in the meet and confer, and it was not addressed in Order No. 99.[6] Still, the Discovery Master specifically recognized that

> there may be additional depositions scheduled related to MGA's most recent counterclaims. Both sides intend to propound additional 30(b)(6) notices related to the counterclaims in the near future.  A telephonic hearing regarding this issue will take place next week at which time I will

---

[1] See MGA's Notice of Deposition of Mattel, Inc. (Fifth Phase 2 Notice), dated September 1, 2010.

[2] Id.

[3] See email from William Molinski to Scott Watson, dated September 1, 2010.

[4] See Phase 2 Discovery Matter Order No. 99, Dkt. No. 8642, at 1.

[5] Id.

[6] Id.

2

1    prepare a recommended schedule for those sessions after having consulted
     with the parties.[7]
2
     Despite this opportunity, MGA never raised its Fifth Notice with the Discovery
3
     Master.  Nor did MGA include its Fifth Notice in the Court-ordered omnibus motion
4
     to compel[8] or raise these Topics at any of the numerous hearings before the Court
5
     between September 1 and September 27.
6
     MGA Serves Its Amended Fifth Notice Six Days Before Discovery Cut-Off.
7
     After sitting idle on this purportedly urgent discovery throughout this period, MGA
8
     served its Amended Fifth Notice on September 28, the eve of the Court-ordered
9
     discovery cut-off.[9]  The deposition on all 26 Topics was noticed for October 2 – less
10
     than four calendar days later.  During efforts to resolve this matter, MGA refused to
11
     narrow any of the overbroad and improper Topics.
12
                                  **Argument**
13
**I.    TOPIC NOS. 1-14, 16-18, 20-24 AND 26 SEEK IRRELEVANT**
14
       **TESTIMONY AND ARE UNDULY BURDENSOME**
15
           **A.    Non-MGA Competitive Information**
16
     The Court has ruled that the activities of Mattel's Market Intelligence Group in
17
     acquiring competitive information about toy manufacturers other than MGA are
18
     irrelevant to any claim or defense in this case.  See Dkt. No. 8751 at 2 (denying in part
19
     MGA's Motion to Compel and holding that "discovery in this case should be narrowly
20
     construed to encompass only the relationship between the two parties." ).  Despite the
21
     Court's clear ruling, MGA's Topics seek testimony regarding Mattel's conduct
22
     towards ***all*** of its competitors.  For example:
23
     TOPIC NO. 1:
24
           The conduct and activities of MATTEL's MARKET INTELLIGENCE
25           GROUP as it relates to MATTEL's acquisition of information
_____
26   [7]  Id. at 6.
     [8]  See Dkt. No. 8745.  MGA did move to compel other depositions, however.
27   See id. at 13.
28   [9]  See Amended Notice of Deposition of Mattel, Inc. (Fifth Phase 2 Notice).

                                     3

concerning competitors' products, packaging, advertising and marketing before that information is made known to the public.

TOPIC NO. 5:

MATTEL's acquisition of competitive information from any source using false pretenses, false names, false credentials or false business cards.[10]

Every Topic that uses the terms "ANNUAL TOY FAIR REVIEW" or "ANNUAL TOY FAIR PRESENTATION" suffers from the same defect of fatal overbreadth. These terms are defined to include "information obtained at the New York Toy Fair, concerning the products and plans of MATTEL's competitors" and "information obtained at the New York Toy Fair, Hong Kong Toy Fair and other toy fairs," respectively – without any limitation to information related to MGA. These include:

TOPIC NO. 7:

All facts and circumstances relating to the preparation, dissemination and use of ANNUAL TOY FAIR REVIEW from 1998 to the present produced by VILLASENOR or others in the MARKET INTELLIGENCE GROUP, or any other reports or reviews prepared by MATTEL describing information obtained from toy fairs concerning MATTEL's competitors.

TOPIC NO. 18:

The maintenance, storage and preservation of all DOCUMENTS relating or referring to the ANNUAL TOY FAIR REVIEW, including (1) the reports themselves, (2) all pictures, DOCUMENTS or materials used in creating the reports; (3) all videotapes of presentations of reports; (4) all drafts of such reports or presentations of reports; and (5) all DOCUMENTS evidencing distribution of all such reports or presentations.[11]

Mattel has produced the relevant Toy Fair reviews and documents. It has produced videotapes of the presentations that reference MGA products. MGA has questioned witnesses for days now about whether they or other relevant individuals attended the presentations. The Court has denied MGA's request that Mattel be ordered to produce all discovery regarding any MGA products used, referenced or

---

[10]   This also applies to Topic Nos. 2-4, 11, 16, 20, and 26.
[11]   This also applies to Topic Nos. 8-10, 12, and 17.

relied upon in the annual market intelligence group presentation. <u>See</u> Order re Omnibus Discovery Motions at 4. The Topics at issue here are even broader, as they are not even limited to documents regarding MGA products. Whether, for example, specific individuals that are unrelated to the litigation attended these presentations, or how reports or presentations that do not reference MGA were prepared, is irrelevant. The burden of preparing a witness on such Topics would vastly outweigh any non-existent to marginal benefit to MGA.

Similarly overbroad are Topics related to the Ninth Floor "library." As MGA is aware because of the testimony in this case, ████████████████████████ ██████████████████████████.[12]  Yet not only do MGA's Topics demand information about documents in the "liberary" about competitors other than MGA, but they demand information about the departments that have nothing to do with the Market Intelligence Group. Thus, for example, MGA demands discovery into:

<u>TOPIC NO. 6</u>:

> The existence, maintenance, access to and contents of MATTEL's Ninth Floor library or any other storage of competitive catalogs and price lists, as described by VILLASENOR at his July 12, 2010 deposition.[13]

<u>TOPIC NO. 14</u>:

> Any removal, destruction, alteration, deletion, purging, relocation or concealment of the contents of the Ninth Floor library, or any similar collection of competitive information, as described by VILLASENOR.

Materials in the "library" not related to MGA and not related to the Market Intelligence Group have no relevance to this litigation, and indeed the Court has previously rejected MGA's request to inspect the Ninth Floor "library." <u>See</u> Dkt. No. 8562 at 24; Dkt. No. 8751 at 1-4. Therefore, a Topic that purports to seek discovery on every instance in which a binder used by another department is taken in or out of

---

[12]  <u>See, e.g.</u>, Villasenor (Vol. I) Tr. at 149:7-8 ███████████████████ ███████████████); <u>id.</u> at 146:19-20.

[13]  <u>See also</u> Topic Nos. 10, 13 and 14.

the same room just because it happens to have Market Intelligence Group information somewhere else in the room is impermissibly overbroad and indeed nonsensical.

Topic No. 13 likewise seeks testimony on:

TOPIC NO. 13:

> The identities (by name and position) of all MATTEL employees who accessed the Ninth Floor library described by VILLASENOR from 1998 to the present.

As to Mattel employees entering the "library" for reasons unrelated to MGA, this "access" has no possible relevance to any claim or defense in this case. These Topics are overbroad and should, if not rejected in their entirety, be narrowed to exclude information not relating to MGA or its products at issue.[14]

## B.   The Topics Are Otherwise Overbroad

Other Topics are also impermissibly overbroad and seek irrelevant information.

Topic No. 11 requests:

> MATTEL's attendance at the New York Toy Fair, Hong Kong Toy Fair, Tokyo Toy Fair and Nuremberg Toy Fair from 1998 to the present, including who from MATTEL would attend these toy fairs, the circumstances surrounding MATTEL's operation and admission into MATTEL showrooms at these toy fairs, exhibition of products at those toy fairs, security measures employed by MATTEL with respect to admission into its showrooms at those toy fairs and MATTEL's knowledge of the operation, admission and circumstances surrounding competitors' showrooms at those toy fairs.

MGA has not and cannot explain the relevance of the identities of all Mattel past and present Mattel employees, contractors, and agents that have operated or attended Mattel's showrooms or the identity of all products exhibited at these showrooms. That is because there is none. On the other hand, the burden of collecting and regurgitating this information is obviously massive. Many hundreds of Mattel employees have attended and staffed showrooms and booths at dozens of Toy Fairs around the world in the past thirteen years.

Topic Nos. 21-24 relate to Sal Villasenor's departure from Mattel:

---

[14]   See also Topic No. 11.

MOTION FOR PROTECTIVE ORDER FROM MGA'S FOURTH 30(b)(6) DEPOSITION NOTICE

1  TOPIC NO. 21:

2      The facts and circumstances involving the resignation and/or departure
       from MATTEL of VILLASENOR.

3

4  TOPIC NO. 22:

5      All COMMUNICATIONS concerning the resignation and/or departure
       from MATTEL of VILLASENOR.

6  TOPIC NO. 23:

7      Any investigation conducted by or at the request of MATTEL into the
       allegations made by, VILLASENOR in his email to Robert Normile
8      dated December 22, 2005.

9  TOPIC NO. 24:

10     All COMMUNICATIONS between MATTEL and VILLASENOR and
       his agents concerning his resignation and/or departure from MATTEL
11     and his severance agreement with MATTEL.

12     These Topics seek testimony on matters – such as Mr. Villasenor's medical

13  issues and employment law – with no bearing to the claims between Mattel and MGA.

14  Furthermore, MGA has already obtained days of testimony from Mr. Villasenor and

15  other witnesses about his departure from Mattel.

16     As for the Topics relating to Mattel's internal investigations, these are not only

17  overbroad and seek irrelevant information, but also invade the attorney-client

18  privilege and attorney work product doctrine.  The Court has previously denied

19  Mattel's motion to compel a Rule 30(b)(6) Topic related to MGA's internal

20  investigation of its trade secret thefts, noting that such discovery "was not itself

21  relevant, and likely breached the attorney-client privilege."  See Dkt. No. 8104 at 7.

22  MGA's Topics on Mattel's internal investigations related to Mr. Villasenor's

23  allegations should be rejected for these same reasons.

24  **II.   ADDITIONAL 30(b)(6) TESTIMONY ON MATTEL'S MARKET**

25  **INTELLIGENCE GROUP IS UNDULY DUPLICATIVE**

26     To the extent MGA's Topics are not overbroad, Mattel is already providing

27  30(b)(6) testimony.  Many of the Topics in MGA's Fifth Notice relate to the activities

28

of Mattel's Market Intelligence Group.[15] These Topics are duplicative of Topic No. 8 from MGA's Third Notice:

> The receipt by Mattel of any non-public and/or confidential information about competitors' products or pricing, product development, advertising plans, marketing plans or research, actual or estimated product costs or sales, including any practice of anyone at Mattel of visiting the showrooms of competitors during any Hong Kong or New York Toy Fair(s), including but not limited to how Mattel gained admittance to any competitors' showrooms as well as how Mattel controls access to its showrooms.[16]

In addition to the designee Mattel has already provided on this Topic,[17] Mattel is providing an additional four hours of testimony. See Order Re Omnibus Discovery Motions at 5.  MGA does not need, and is not entitled to, more testimony on the same subject matter.  A Protective Order on these duplicative Topics is warranted.

## III.   THE TOPICS INVADE THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

### A.   Communications with Outside Counsel

Topic No. 15 of the Fifth Notice seeks:

TOPIC NO. 15:

> All facts conveyed by VILLASENOR to Jon Corey or any other Quinn Emanuel lawyer.

MGA has also improperly subpoenaed Mr. Corey, a partner at Quinn Emanuel and a senior member of Mattel's outside litigation counsel.  See Dkt. No. 8831.

At the outset, the Topic is not even limited to MGA or its products – and indeed not even limited to communications concerning matters at issue in this case.  It instead demands information without limitation as to subject matter and therefore is facially, and fatally, overbroad.  The Topic should be rejected for this reason alone.

---

[15]   See Topic Nos. 1-5, 7, 10, 11, 17, and 20.
[16]   See MGA's Notice of Deposition of Mattel, Inc. (Third Phase 2 Notice), Topic No. 8.
[17]   See Ward Tr. [30(b)(6)], dated June 16, 2010.

Furthermore, the facts conveyed by Mr. Villasenor to Mr. Corey, or any other Quinn Emanuel lawyer, were done so in the context of an attorney-client privileged communication. "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. U.S., 449 U.S. 383, 390 (1981) (reversing Court of Appeals and holding that communications between in-house counsel and lower-level employees for the purpose of obtaining legal advice are privileged) (emphasis added); see Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1492 (9th Cir. 1989) ("[T]he [attorney-client] privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation."). As this Court has held, that rationale extends to communications with both current and former employees. See Dkt. No. 7616 at 6 ("The Upjohn rationale extends to communications with former employees.").

Mr. Corey met with Mr. Villasenor for the specific purpose of providing legal advice to Mattel, at the request of Mattel. The substance of the meeting is privileged, as the Discovery Master properly ruled at the deposition of Mr. Villasenor.[18] Mattel also asserted privilege as to the specific communications between Mr. Corey and Mr. Villasenor throughout the Villasenor deposition.[19] MGA has never appealed the Discovery Master's rulings or challenged those assertions.[20] Nor could it. See

---

[18] See Villasenor (Vol. II) Tr. at 72:9-13 (" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ).

[19] See id. at 70:19-73:5; 75:24-81:17; 327:24-344:17.

[20] See Villasenor (Vol. II) Tr. at 72:9-13.

MOTION FOR PROTECTIVE ORDER FROM MGA'S FOURTH 30(b)(6) DEPOSITION NOTICE

1 | <u>Upjohn Co. v. U.S.</u>, 449 U.S. 383, 390.  MGA is now bound by those determinations

2 | and cannot use a belated 30(b)(6) notice to circumvent that fact.[21]

3 | The Court should grant a protective order on this Topic.

4 | **B.    Attorneys' Search and Collection for Specific Requests**

5 | Topic No. 19 seeks testimony on attorney-client privileged communications and

6 | the work product of Mattel's attorneys in searching for documents relating to specific

7 | Requests for Production:

8 | TOPIC NO. 19:

9 | MATTEL's search of DOCUMENTS responsive to the following
requests:

10 |

11 | (1)    Request No. 323 from MGA's Seventh Set of Phase 2 Requests
for Production to Mattel, dated June 18, 2010;

12 | (2)    Request Nos. 16, 17, 31, 114 and 115 from MGA's First Set of
Phase 1 Requests for Production to Mattel, dated November 22, 2006;

13 |

14 | (3)    Request No. 476 from MGA's Fifth Set of Phase 1 Requests for
Production to Mattel, dated August 3, 2007; and

15 | (4)    Request No. 737 from MGA's Seventh Set of Phase 1 Requests
for Production to Mattel, dated November 29, 2007.

16 |

17 | For reasons set forth in detail in Mattel's Opposition to MGA's Motion to

18 | Compel re: Competitors' Confidential Information, Dkt. No. 8724, Mattel's production

19 | of documents responsive to these Requests has been timely and proper.  Indeed, it was

20 | MGA that repeatedly sought and obtained lengthy stays of Phase 2 discovery prior to

21 | the transfer of this case to this Court.  While Mattel has no objection to providing

22 | testimony on its collection and search efforts generally, testimony regarding specific

---

23 | [21]    MGA may attempt to argue, as it has unsuccessfully attempted to argue in the

24 | past, that privilege does not extend to facts and therefore may be inquired into.  As

25 | the Court has ruled and under the law, however, seeking the substance of attorney-
client communications invades the privilege, even if done in the guise of asking for

26 | what facts were conveyed during the attorney-client communication.  <u>See</u>, <u>e.g.</u>, Dkt.
No. 577 at 34-35; <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 90 (1981) (The

27 | attorney-client privilege protects a client's communication of information to the

28 | attorney "to enable him to give sound and informed advice.").

searches on specific Requests for Production or categories of documents, all of which were conducted at the direction of counsel, invades the attorney-client privilege and work product. See Hickman v. Taylor, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."); Long v. Anderson Univ., 204 F.R.D. 129, 134-35 (S.D. Ind. 2001) (denying discovery of letter from attorney concerning discovery requests). In fact, MGA has claimed privilege on this exact category of information, repeatedly, to shut down all of Mattel's inquiries into MGA's searches for specific categories of documents, like early Bratz documents[22] as well as investigations conducted by its counsel.[23] Mattel should be protected from preparing a designee on the Topic.



[22] See, e.g., Tonnu (Vol. 1) Tr. at 224:22-225:5

): 225:20-24 ("

): 226:1-4 ("

226:23-227:3

); and 228:5-229:6; Tonnu (Vol. 10) Tr. at 1957:2-1958:3 ("

): 1958:12-20 ("

. 1964:8-15

).

[23] See Dkt. No. 7803 at 11.

11

## IV.   THE NOTICE IS DEFECTIVE ON ITS FACE, AND ANY TIME ON THE NOTICE SHOULD BE LIMITED

Fed.R.Civ.P. 30(b)(1) requires a party to provide "reasonable written notice" of a deposition. After waiting weeks to propound the Fifth Notice, MGA noticed the deposition for October 2, 2010, four days after serving the Notice on Mattel. Four days is not anywhere near enough time to adequately prepare a designee or designees on these 26 Topics. See In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. 320, 327 (N.D. Ill. 2005) (ten business days inadequate notice "especially because the conditions giving rise to [plaintiff's] predicament are attributable to having waited to the last minute to notice the depositions."); In re Stratosphere Corp. Securities Litigation, 183 F.R.D. 684, 687 (D. Nev. 1999) (finding five days notice of deposition "unreasonably short"). This alone justifies a protective order.

Mattel also has already provided an extraordinary amount of 30(b)(6) testimony in this case – well over 150 hours to date, and far more than MGA. Therefore if any Topics from MGA's Fifth Notice are ordered in whole or in part, the Court should impose limits on the testimony MGA is permitted to take, including time limits. MGA should not be permitted to use its belated "Counterclaims-in-Reply" in order to exacerbate the already considerable asymmetry in volume and preparedness of 30(b)(6) testimony.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its Motion.


DATED:  Ocober 2, 2010          QUINN EMANUEL URQUHART & SULLIVAN. LLP


                                By  /s/ Michael T. Zeller
                                   Michael T. Zeller
                                   Attorneys for Mattel, Inc. and Mattel de
                                   Mexico. S.A. de C.V.

# **Appendix A**

**TOPIC NO. 1:**

The conduct and activities of MATTEL's MARKET INTELLIGENCE GROUP as it relates to MATTEL's acquisition of information concerning competitors' products, packaging, advertising and marketing before that information is made known to the public.

**TOPIC NO. 2:**

The conduct and activities of MATTEL's MARKET INTELLIGENCE GROUP as it relates to the acquisition of competitive information from the New York Toy Fair, Hong Kong Toy Fair, Tokyo Toy Fair and Nuremberg Toy Fair.

**TOPIC NO. 3:**

The conduct and activities of MATTEL's MARKET INTELLIGENCE GROUP as it relates to the acquisition of any non-public information concerning MATTEL's competitors from toy fairs, trade shows or conventions.

**TOPIC NO. 4:**

MATTEL's acquisition at toy fairs, trade shows or conventions of competitors' information concerning competitors' products, packaging, advertising and marketing before that information is made known to the public from 1998 to the present.

**TOPIC NO. 5:**

MATTEL's acquisition of competitive information from any source using false pretenses, false names, false credentials or false business cards.

13

**TOPIC NO. 6:**

The existence, maintenance, access to and contents of MATTEL's Ninth Floor library or any other storage of competitive catalogs and price lists, as described by VILLASENOR at his July 12, 2010 deposition.

**TOPIC NO. 7:**

All facts and circumstances relating to the preparation, dissemination and use of ANNUAL TOY FAIR REVIEW from 1998 to the present produced by VILLASENOR or others in the MARKET INTELLIGENCE GROUP, or any other reports or reviews prepared by MATTEL describing information obtained from toy fairs concerning MATTEL's competitors.

**TOPIC NO. 8:**

To the extent not covered by Topic 7, the source of the information about competitors' products and plans contained within the ANNUAL TOY FAIR REVIEWS from 1998 to the present.

**TOPIC NO. 9:**

All facts and circumstances relating to the ANNUAL TOY FAIR PRESENTATION, including the contents of those presentations, the attendees and the existence of all DOCUMENTS relating to the presentations.

**TOPIC NO. 10:**

MATTEL's use of information obtained at toy fairs concerning MATTEL's competitors, including MATTEL's use of (1) information contained within competitors' catalogs, price sheets, pictures or product description obtained by the MARKET INTELLIGENCE GROUP; (2) information presented at MATTEL in the

ANNUAL TOY FAIR PRESENTATION; and (3) information maintained in the Ninth Floor library of competitive information.

**TOPIC NO. 11:**

MATTEL's attendance at the New York Toy Fair, Hong Kong Toy Fair, Tokyo Toy Fair and Nuremberg Toy Fair from 1998 to the present, including who from MATTEL would attend these toy fairs, the circumstances surrounding MATTEL's operation and admission into MATTEL showrooms at these toy fairs, exhibition of products at those toy fairs, security measures employed by MATTEL with respect to admission into its showrooms at those toy fairs and MATTEL's knowledge of the operation, admission and circumstances surrounding competitors' showrooms at those toy fairs.

**TOPIC NO. 12:**

The identities (by name and position) of anyone at MATTEL who attended the ANNUAL TOY FAIR PRESENTATION.

**TOPIC NO. 13:**

The identities (by name and position) of all MATTEL employees who accessed the Ninth Floor library described by VILLASENOR from 1998 to the present.

**TOPIC NO. 14:**

Any removal, destruction, alteration, deletion, purging, relocation or concealment of the contents of the Ninth Floor library, or any similar collection of competitive information, as described by VILLASENOR.

**TOPIC NO. 15:**

1    All facts conveyed by VILLASENOR to Jon Corey or any other Quinn

2  Emanuel lawyer.

3

4  **TOPIC NO. 16:**

5    MATTEL'S knowledge of the practice of VILLASENOR and others at

6  MATTEL of using false identification, false business cards or false names or

7  employers to obtain competitors' information from toy fairs, including the

8  knowledge of Robert Eckert, Matt Bousquette, Neil Freidman, Drew Vallero, Tim

9  Kilpin, John Louie, the MATTEL Board of Directors, and any other senior

10  management.

11

12  **TOPIC NO. 17:**

13    The distribution and/or dissemination at MATTEL of information obtained

14  from MATTEL's competitors' showrooms at toy fairs by VILLASENOR,

15  PLUNKETT, OSIER, RAHIMI or anyone else at MATTEL, including the

16  distribution and dissemination of the ANNUAL TOY FAIR REVIEW and any

17  catalogs, price lists, or product information or pictures of MATTEL competitors'

18  products.

19

20  **TOPIC NO. 18:**

21    The maintenance, storage and preservation of all DOCUMENTS relating or

22  referring to the ANNUAL TOY FAIR REVIEW, including (1) the reports

23  themselves, (2) all pictures, DOCUMENTS or materials used in creating the reports;

24  (3) all videotapes of presentations of reports; (4) all drafts of such reports or

25  presentations of reports; and (5) all DOCUMENTS evidencing distribution of all

26  such reports or presentations.

27

28  **TOPIC NO. 19:**

16

1       MATTEL's search of DOCUMENTS responsive to the following requests:

2       (1)   Request No. 323 from MGA's Seventh Set of Phase 2 Requests for

3   Production to Mattel, dated June 18, 2010;

4       (2)   Request Nos. 16, 17, 31, 114 and 115 from MGA's First Set of Phase 1

5   Requests for Production to Mattel, dated November 22, 2006;

6       (3)   Request No. 476 from MGA's Fifth Set of Phase 1 Requests for

7   Production to Mattel, dated August 3, 2007; and

8       (4)   Request No. 737 from MGA's Seventh Set of Phase 1 Requests for

9   Production to Mattel, dated November 29, 2007.

10

11  **TOPIC NO. 20:**

12      All COMMUNICATIONS concerning MATTEL's acquisition of competitive

13  information through improper means, including the use of misrepresentations, false

14  identifications, false names or false credentials.

15

16  **TOPIC NO. 21:**

17      The facts and circumstances involving the resignation and/or departure from

18  MATTEL of VILLASENOR.

19

20  **TOPIC NO. 22:**

21      All COMMUNICATIONS concerning the resignation and/or departure from

22  MATTEL of VILLASENOR.

23

24  **TOPIC NO. 23:**

25      Any investigation conducted by or at the request of MATTEL into the

26  allegations made by. VILLASENOR in his email to Robert Normile dated

27  December 22, 2005.

28

**TOPIC NO. 24:**

All COMMUNICATIONS between MATTEL and VILLASENOR and his agents concerning his resignation and/or departure from MATTEL and his severance agreement with MATTEL.

**TOPIC NO. 25:**

MATTEL's hiring of Sharon Rahimi as an independent contractor to MATTEL.

**TOPIC NO. 26:**

Any complaints or concerns raised by any MATTEL employee as to the propriety or legality of the methods of collecting competitive information, including any such complaints or concerns raised by members of the MARKET INTELLIGENCE GROUP.

18