ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700/Fax:(415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

MATTEL, INC., a Delaware corporation,

Plaintiff,

v.

MGA ENTERTAINMENT, INC., a California corporation, et al.,

Defendant.

AND CONSOLIDATED ACTIONS

Case No. CV 04-09049 DOC (RNBx)
Consolidated with:
Case Nos. CV 04-09059 & CV 05-02727

**Hon. David O. Carter**

**[PUBLIC REDACTED VERSION]**

**MGA'S OPPOSITION TO MATTEL, INC.'S MOTION FOR A PROTECTIVE ORDER FROM THE MGA PARTIES' AMENDED NOTICE OF DEPOSITION OF MATTEL, INC.**

Date: TBD
Time: TBD
Dept: Courtroom 9D

**Discovery Cut-off: October 4, 2010**
**Pre-trial Conference: January 4, 2011**
**Trial Date: January 11, 2011**

## I. INTRODUCTION

MGA seeks 30(b)(6) testimony on 26 topics. In general, these topics cover the Mattel's Market Intelligence Group's collection and dissemination of information (Topics 1-10, 12-14, 16-18, 20); Mattel's response, if any, to Mr. Villasenor's admission to management in 2005 that he was engaging in criminal acts while a Mattel employee to give Mattel a superior competitive advantage (Topics 15, 21-24, 26); Mattel's efforts to collect documents to produce in this litigation in light of Mr. Villasenor's statements in 2005 to Mattel's management and its lawyers (Topic 19); Mattel's practices at its own toy fair showrooms (Topic 11); and the circumstances surrounding Mattel's hiring of Sharon Rahimi to do work for the Market Intelligence Group (Topic 25). Mattel objects to each topic, except for Topic 25. As each topic seeks testimony into matters within the pleadings, Mattel's motion for a protective order must be denied.

## II. FACTUAL BACKGROUND

### A. MGA Served These Topics Initially On September 1, 2010.

Although Mattel spends several pages in its motion discussing its perception of the timing of this notice, it acknowledges that it first received this notice over a month ago—on September 1, 2010. Mot. at 2. After repeated attempts to secure a date for this deposition, counsel for Mattel ultimately stated on September 28, 2010 that Mattel would not produce a witness because the notice was not properly served. On that day, September 28, 2010, MGA served an amended notice with a new date for the deposition—but with the same topics first listed on September 1, 2010.

### B. Document Produced By Sal Villasenor Does Not Reference MGA But Is A "How To" Manual For Sneaking Into Show Rooms.

To put some of the noticed topics into context, it is important to explain that Mattel's limitation on production of Market Intelligence documents—namely, its decision to produce only documents which reference MGA or Bratz, excludes from

production documents which are relevant, such as a document recently produced by Mr. Villasenor that does not reference MGA or Bratz anywhere. However, it is a document that would be relevant to MGA, as it describes general practices on how it is Mattel plans to sneak into showrooms to take confidential information.

Mr. Villasenor produced documents to MGA in this case. Included in that production, and attached as Exhibit A, is a brochure that describes the various toy fairs. In particular, at VILS2010 076, it describes what is needed to gain access to the New York Toy Fair, including [REDACTED] Later, at VILS2010 078, it describes the information needed to put on the Kinko's business cards: [REDACTED]

After this document was produced by Mr. Villasenor, Mattel finally produced it on October 1, 2010. Of note, nowhere in the brochure does it mention "MGA" or "Bratz." See Exhibit A. Similarly, [REDACTED] though they are tools that would be used to gain access to the MGA showrooms.

## III. ARGUMENT

### A. Topics 1-10, 12-14, 16-18, and 20 Seek Relevant Information Concerning Mattel's Spying.

Topics 1-10, 12-14, 16-18 and 20 seek information concerning how the Market Intelligence Group, and others at Mattel, gained access to competitors' showrooms (Topic 5, 20); how it acquired non-public information (Topics 1-4); what Mattel did with the information once it received it, including the

dissemination of the non-public information within Mattel (Topics 6-10, 12-14, 17-18); and who at Mattel was aware of the practices of the Market Intelligence Group, including senior management (Topic 16).

Each of these topics seeks discovery into a specific claim or defense in this case. Evidence of Mattel's tactics of stealing information from competitors, including MGA, will go to, at a minimum, the following: Mattel cannot establish that its claimed trade secrets belong to Mattel, as the information was not Mattel's in the first instance (First Affirmative Defense—Failure to State a Claim); Mattel had unclean hands in the market place because it engaged in theft of confidential information (Second Affirmative Defense—Unclean Hands); the existence of Mattel's knowing participation in a scheme or plan to defraud based on false or fraudulent pretenses (MGA's Second Counterclaim-in-Reply: Civil RICO); and MGA's affirmative claim concerning Mattel's pattern of engaging in unfair competition.

The need to examine a Mattel designee on these topics further amplified by Exhibit A. That document, a "how to" manual on sneaking into toy fair showrooms, was not produced by Mattel until after Mr. Villasenor produced it. According to Mattel, it has limited its production of documents concerning the efforts of Market Intelligence to solely those documents which mention MGA. However, Exhibit A does not reference MGA or Bratz. Nevertheless, it is relevant to MGA's claims and defenses (as enumerated above), and clearly relates to MGA. Thus, Mattel's withholding of this document, until after MGA knew of its existence from another source, demonstrates that Mattel's interpretation of its discovery obligations is inadequate. MGA needs to know about practices that relate to MGA—not just those that simply include MGA. An adequately prepared witness on these topics will hopefully assist MGA in getting the discovery it needs.

### 1. Topics 6, 12-14, 16-18 Are Not Directed At Mattel's Spying On Competitors, Other Than MGA.

To the extent the Court is inclined to grant the protective order as it relates to Mattel's spying activities beyond its efforts directed at MGA, then the following topics would not fall within that category: Topics 6, 13-14 (content of, access to, and destruction of the Ninth Floor Library at Mattel that houses the stolen information); Topic 12, 17-18 (information concerning annual reports made by the Market Intelligence Group at Mattel); and Topic 16 (management's knowledge of the Market Intelligence Group's practices).

### B. Topics 15, 21-24, 26 Seek Mattel's Response Once Its General Counsel Was Advised that Its Employee Engaged in Criminal Conduct to Give Mattel a Superior Competitive Advantage.

Separate and apart from the general activities of the Market Intelligence Group's collective efforts, MGA now knows that Mr. Villasenor, in 2005, advised Mattel's senior management, including its General Counsel, that he [redacted] And, documents produced subsequent to Mr. Villasenor's deposition confirm that Mr. Villasenor obtained information while at Mattel from MGA. Thus, Topics 15, 21-24 and 26 relate directly to MGA, and to the claims and defenses described above.

These topics generally fall into: the knowledge Mattel learned directly from Mr. Villasenor (Topic 15); the negotiated settlement between Mattel and Mr. Villasenor which ultimately resulted in [redacted] (Topics 21-22, 24); the investigation, if any, Mattel undertook as a result of Mr. Villasenor's email in 2005 to Mattel's general counsel (Topic 23); and any similar complaints ever raised by a Mattel employee concerning the sneaking into showrooms. (Topic 26).

Mattel only raises specific arguments concerning certain of these topics, namely 15, 21-24. It claims that these topics would sweep in issues of, for example, [REDACTED] As to the claim that any investigation conducted by Mattel would be privileged—that is not true. The Court has made several rulings that investigations undertaken by Mattel employee, Richard Deanda, were not in fact privileged—though Mattel originally withheld documents claiming privilege on that basis. Thus, these issues and topics would need to be dealt with on an issue by issue basis. Plus, facts are neither privileged nor work product.

**C. Topics 11 Concerning Mattel's Operation of Its Own Toy Fair Showrooms Is not Overbroad.**

Topic 11 seeks information concerning Mattel's attendance and operation of its own toy fair showrooms. Such information is relevant to the claims and defenses described above. For example, if Mattel does not properly secure its showrooms, then MGA can use that evidence to defeat an element of Mattel's claim concerning what constitutes a trade secret.

**D. Topic 19 Does Not Seek Privileged Information.**

Topic 19 seeks information concerning how it is Mattel searched for responsive documents in this case, and in particular, the documents concerning the Market Intelligence Group. Mattel does not object to providing a witness on its collection and search efforts generally. Mot. at 10. MGA seeks more specific information to support its RICO counterclaim, and the underlying predicate acts of obstruction of justice and scheme to defraud. The testimony sought goes directly to the efforts used to gather, or to purposefully avoid gathering, documents which reflect efforts Mattel has undertaken for over 15 years of spying on competitors. MGA's unclean hands defense to Mattel's claims was filed in 2007. The

outstanding document requests which are the source of this topic were propounded as early as 2006.

Yet documents concerning the Market Intelligence Group were not produced until the summer of 2010. And only at the point when Mattel knew Sal Villasenor would be testifying. MGA's topic seeks non-privileged information relevant to its claims.

Dated: October 7, 2010

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: ______________________
Thomas Sean McConville
Attorneys for MGA Parties