QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017–2543
Telephone:  (213) 443–3000
Facsimile:   (213) 443–3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04–9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04–09059<br>Case No. CV 05–02727<br><br><u>Hon. David O. Carter</u><br><br>**MATTEL, INC.'S [CORRECTED] REPLY AND ANSWER TO DEFENDANT MGA ENTERTAINMENT, INC.'S COUNTERCLAIMS-IN-REPLY**<br><br>Discovery Cut–off: October 4, 2010<br>Pre–trial Conf.:   January 4, 2011<br>Trial Date:         January 11, 2011 |

## Introduction

1.     MGA's counterclaims-in-reply are a meritless, last-minute effort to deflect attention from MGA's years of well-documented wrongdoing as trial approaches. This wrongdoing started with the theft of Bratz and was fueled by theft of masses of additional proprietary Mattel information. It also was hidden by a campaign of perjury, document destruction and other illegal conduct, as MGA and Isaac Larian's own documents show. To cite only a few examples:

(a)     In an email, Larian instructed that an MGA executive, Paula Garcia, should lie under oath about MGA's secret use of Mattel employees to work on Bratz for years. This work itself had previously been concealed by the use of false names and false social security numbers and by false answers by MGA in discovery in this action.

(b)     Larian instructed another MGA executive to "Destroy EVERY copy" of a document because it would be used in litigation. (Emphasis in original).

(c)     Larian instructed MGA executives to delete emails concerning Mattel from MGA's computer systems to conceal them from Mattel in this litigation.

(d)     Just as Carter Bryant used the "Evidence Eliminator" software program to destroy evidence on his computer hard drives while he was working for MGA, MGA repeatedly installed and ran forensic wiping software on a number of critical hard drives, including just before the drives were to be imaged and examined for documents for this case.

(e)     Larian, conspiring with others, attempted to personally profit by trading in Mattel securities based upon non-public and other information that he obtained from this litigation and used in violation of Court Orders and other laws.

(f)     MGA and Larian have engaged in and continue to engage in tax and other financial fraud, including by funneling personal Larian expenses through MGA.

(g) MGA's IT department downloaded and illegally copied music, software, DVDs and other copyrighted works on a massive scale. When questioned about these unlawful activities at his deposition, the then-head of MGA's IT department refused to answer on Fifth Amendment grounds.

(h) MGA has illegally smuggled goods into Mexico at Larian's specific direction and bribed government officials. In one instance, Larian instructed other MGA employees involved in smuggling to cease further email communications on the subject in order to conceal the unlawful behavior.

2. Faced with this (and more) damning evidence well beyond that which led the first jury to find MGA and Larian liable for a host of offenses, and having been forced to abandon almost all MGA's prior claims as unfounded, MGA and its new lawyers have concocted another baseless tale of wrongdoing by Mattel. In fact, after having hidden them for years, MGA recently produced documents showing that MGA employees repeatedly gained access to Mattel toy fair showrooms and reported on Mattel's unreleased products—the very activities for which MGA now purports to sue Mattel. In fact, MGA routinely obtained information about upcoming but unreleased Mattel products over the course of at least several years. For example:

(a) As reflected in emails, MGA and Larian conspired with Zapf Creation AG to gain access to Mattel's showroom at Nuremberg Toy Fair in 2008. MGA and Zapf employees then circulated to Larian and others at both MGA and Zapf a report that detailed the upcoming product offerings of Mattel.

(b) Larian praised, in writing, an MGA employee who informed Larian that he had stolen Mattel price lists and marketing information from a Mattel showroom in the U.S. in 2004.

(c) In early 2005, Larian and MGA received a detailed write up of Mattel's products for the upcoming Fall 2005 season based on information that had been obtained from a Mattel toy fair.

(d) In yet another instance, in February 2007 an MGA employee obtained and provided to MGA executive Paula Garcia information about an unreleased Mattel product for the upcoming Fall 2007 season. The MGA employee instructed Ms. Garcia to "delete this email once you talk" to Larian and MGA executive Ron Brawer.

(e) An MGA executive reported to Larian non-public information that he had obtained by spying on a Mattel employee while on an airplane.

3. MGA and its attorneys also have falsely sworn under oath that information supposedly taken by Mattel from MGA showrooms was "trade secret" and "confidential." Documents uncovered by Mattel – but never produced by MGA despite its obligations to do so – have revealed that MGA had publicly released to the toy industry press months earlier the very information that MGA and its counsel swore were "trade secret" and "confidential." As MGA's Chief Financial Officer was forced to admit, information and products disclosed by MGA at its toy fairs are for all practical purposes "public." MGA witnesses and documents have confirmed that MGA frequently invited members of the media, competitors and others to visit its toy fair showrooms.

4. MGA's remaining counterclaims-in-reply are without basis in law or fact and indeed nothing more than a futile attempt to falsely portray the victimizers, MGA and Larian, as the victims. The foregoing misconduct on MGA's part also constitutes, among other things, unclean hands by MGA that precludes any relief on the counterclaims-in-reply.

**Responses**

5. Answering paragraph 1, Mattel denies the truth of the allegations set forth therein.

6. Answering paragraph 2, Mattel denies the truth of the allegations set forth therein.

7.  Answering paragraph 3, Mattel states it is without knowledge or information sufficient to form a belief as to the truth of the allegation that "[s]ome of these products were never released to the market by MGA[,]" and denies the truth of the remaining allegations set forth therein.

8.  Answering paragraph 4, Mattel denies the truth of the allegations set forth therein.

9.  Answering paragraph 5, Mattel denies that MGA is entitled to any relief on its Complaint or the counterclaims-in-reply.

10. Answering paragraph 6, Mattel denies the truth of the allegations set forth therein.

11. Answering paragraph 7, Mattel states it is without knowledge or information sufficient to form a belief as to the truth of the allegation that the Toy Industry Association ("TIA") was formed in or about 1916 and the allegation that there has been a yearly toy fair in New York hosted by TIA where all of the major toy manufacturers come together on a worldwide basis to meet with retailers in order to demonstrate their wares for decades since the formation of TIA. Mattel admits that New York Toy Fair ("NYTF") has been customarily held in or about February of each year.

12. Answering paragraph 8, Mattel states it is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, including about the practices of other manufacturers and MGA. Mattel admits that other toy manufacturers have showrooms at NYTF.

13. Answering paragraph 9, Mattel states it is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what or to whom toy manufacturers "typically present" at toy fair showrooms and whether that information is confidential information of the presenter. Mattel admits that in some circumstances advance knowledge of a competitor's products prior

their release can provide a competitive advantage; and denies the truth of the remaining allegations set forth therein.

14. Answering paragraph 10, Mattel admits that under certain circumstances, acquisitions of information identified in the paragraph would be a competitive advantage; and denies the truth of the remaining allegations set forth therein.

15. Answering paragraph 11, Mattel denies the truth of the allegations set forth therein.

16. Answering paragraph 12, Mattel denies the truth of the allegations set forth therein.

17. Answering paragraph 13, Mattel denies the truth of the allegations set forth therein.

18. Answering paragraph 14, Mattel denies the truth of the allegations set forth therein.

19. Answering paragraph 15, Mattel denies the truth of the allegations set forth therein.

20. Answering paragraph 16, Mattel denies the truth of the allegations set forth therein.

21. Answering paragraph 17, Mattel denies the truth of the allegations set forth therein.

22. Answering paragraph 18, Mattel denies the truth of the allegations set forth therein.

23. Answering paragraph 19, Mattel denies the truth of the allegations set forth therein.

24. Answering paragraph 20, Mattel denies the truth of the allegations set forth therein.

25. Answering paragraph 21, Mattel denies the truth of the allegations set forth therein.

26. Answering paragraph 22, Mattel denies the truth of the allegations set forth therein.

27. Answering paragraph 23, Mattel denies the truth of the allegations set forth therein.

28. Answering paragraph 24, Mattel denies the truth of the allegations set forth therein.

29. Answering paragraph 25, Mattel denies the truth of the allegations set forth therein.

30. Answering paragraph 26, Mattel denies the truth of the allegations set forth therein.

31. Answering paragraph 27, Mattel denies the truth of the allegations set forth therein.

32. Answering paragraph 28, Mattel denies the truth of the allegations set forth therein.

33. Answering paragraph 29, Mattel denies the truth of the allegations set forth therein.

34. Answering paragraph 30, Mattel denies the truth of the allegations set forth therein.

35. Answering paragraph 31, Mattel denies the truth of the allegations set forth therein.

36. Answering paragraph 32, Mattel denies the truth of the allegations set forth therein.

37. Answering paragraph 33, Mattel denies the truth of the allegations set forth therein.

38. Answering paragraph 34, Mattel denies the truth of the allegations set forth therein.

39. Answering paragraph 35, Mattel denies the truth of the allegations set forth therein.

40. Answering paragraph 36, Mattel denies the truth of the allegations set forth therein.

41. Answering paragraph 37, Mattel admits that MGA filed its Complaint in this litigation in 2005, and denies the truth of the remaining allegations set forth therein.

42. Answering paragraph 38, Mattel denies the truth of the allegations set forth therein.

43. Answering paragraph 39, Mattel denies the truth of the allegations set forth therein.

44. Answering paragraph 40, Mattel denies the truth of the allegations set forth therein.

45. The Court struck paragraph 41 in its entirety on the grounds that was "irrelevant" and contained "rhetoric" that "runs afoul of Rule 8(a)"; therefore, Mattel does not need to respond to this paragraph.

46. Answering paragraph 42, Mattel admits that Machado, Vargas and Trueba, working in concert with and at the direction of MGA, stole Mattel information; and denies the truth of the remaining allegations set forth therein.

47. Answering paragraph 43, Mattel admits that Contreras stole Mattel information working in concert and at the direction of MGA and solicited another Mattel employee to assist him in his theft; and denies the truth of the remaining allegations set forth therein.

48. Answering paragraph 44, Mattel admits that Brisbois stole Mattel information working in concert and at the direction of MGA and that Mattel's May 2005 Answer to MGA's 2005 Complaint did not plead a claim for trade secret misappropriation; and denies the truth of the remaining allegations set forth therein.

49. Answering paragraph 45, Mattel admits that Castilla, working in concert with and at the direction of MGA, stole Mattel information; and denies the truth of the remaining allegations set forth therein.

50.   The Court struck paragraph 46 in its entirety on the grounds that it was "irrelevant" and contained "rhetoric" that "runs afoul of Rule 8(a)"; therefore, Mattel does not need to respond to this paragraph.

51.   The Court struck paragraph 47 in its entirety on the grounds that it was "irrelevant" and contained "rhetoric" that "runs afoul of Rule 8(a)"; therefore, Mattel does not need to respond to this paragraph.

52.   Answering paragraph 48, Mattel denies the truth of the allegations set forth therein.

53.   Answering paragraph 49, Mattel denies the truth of the allegations set forth therein.

54.   Answering paragraph 50, Mattel denies the truth of the allegations set forth therein.

55.   Answering paragraph 51, Mattel denies the truth of the allegations set forth therein.

56.   Answering paragraph 52, Mattel denies the truth of the allegations set forth therein.

57.   Answering paragraph 53, Mattel denies the truth of the allegations set forth therein.

58.   Answering paragraph 54, Mattel denies the truth of the allegations set forth therein.

59.   Answering paragraph 55, Mattel admits that Pablo Vargas was a subject of Mattel's trade secret misappropriation claim, and denies the truth of the remaining allegations set forth therein.

60.   Answering paragraph 56, Mattel denies the truth of the allegations set forth therein.

61.   Answering paragraph 57, Mattel denies the truth of the allegations set forth therein.

62. Answering paragraph 58, Mattel denies the truth of the allegations set forth therein.

63. Answering paragraph 59, Mattel denies the truth of the allegations set forth therein.

64. Answering paragraph 60, Mattel denies the truth of the allegations set forth therein.

65. Answering paragraph 304, Mattel denies the truth of the allegations set forth therein.

66. Answering paragraph 305, Mattel denies the truth of the allegations set forth therein.

67. Answering paragraph 306, Mattel denies the truth of the allegations set forth therein.

68. Answering paragraph 307, Mattel denies the truth of the allegations set forth therein.

69. Answering paragraph 308, Mattel denies the truth of the allegations set forth therein.

70. Answering paragraph 309, Mattel denies the truth of the allegations set forth therein.

71. Answering paragraph 310, Mattel denies the truth of the allegations set forth therein.

72. Answering paragraph 311, Mattel denies the truth of the allegations set forth therein.

73. Answering paragraph 312, Mattel denies the truth of the allegations set forth therein.

74. Answering paragraph 313, Mattel denies the truth of the allegations set forth therein.

75. Answering paragraph 314, Mattel denies the truth of the allegations set forth therein.

76. Answering paragraph 315, Mattel denies the truth of the allegations set forth therein.

77. Answering paragraph 316, Mattel denies the truth of the allegations set forth therein.

78. Answering paragraph 317, Mattel denies the truth of the allegations set forth therein.

79. Answering paragraph 318, Mattel denies the truth of the allegations set forth therein.

80. The Court granted Mattel's motion to dismiss defendant's third counterclaim-in-reply with prejudice; therefore, Mattel does not address paragraphs 319-321.

## General Denial

Unless specifically admitted herein, Mattel denies the truth of each and every allegation set for in defendant's Counterclaims in Reply and specifically denies that defendant is entitled to any relief against Mattel.

## Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

## First Affirmative Defense

Defendant's claims are barred in whole or in part by Defendant's unclean hands. This affirmative defense is based in part on, but not limited to, defendant's following conduct:

(a) Larian instructed that MGA executive Paula Garcia should lie under oath about MGA's secret use of Mattel employees to work on Bratz for years,

work which had been concealed by the use of false names and false social security numbers and by false answers by MGA in discovery in this litigation;

(b) Larian instructed another MGA executive to "Destroy EVERY copy" of certain evidence because she was "GETTING [MGA] INTO LAWSUITS" (emphasis in original);

(c) Larian instructed MGA executives to delete emails concerning Mattel from MGA's computer systems to conceal them from Mattel in this litigation;

(d) MGA installed and ran forensic wiping software on a number of critical hard drives, including just before the drives were to be imaged and examined for documents in this case;

(e) Larian, conspiring with others, attempted to personally profit by trading in Mattel securities based upon non-public and other information that he obtained from this litigation and used in violation of Court Orders and other laws;

(f) MGA and Larian have engaged in and continue to engage in tax and other financial fraud, including by funneling personal Larian expenses through MGA;

(g) MGA's IT department downloaded and illegally copied music, software, DVDs and other copyright protected works on a massive scale, and when the then-head of MGA's IT department was questioned about these activities in his deposition in this litigation, he refused to answer on Fifth Amendment grounds;

(h) MGA has illegally smuggled goods into Mexico and bribed foreign government officials;

(i) MGA and Larian obtained and attempted to obtain information about unreleased Mattel products, including without limitation from Mattel's toy fair showrooms and by acts of spying, and including without limitation by conspiring with Zapf Creation AG and others to do so;

(j) MGA and its counsel further concealed and attempted to conceal evidence of MGA's and Larian's taking and use of information about unreleased Mattel products, including without limitation by concealing documents reflecting such actions by MGA and Larian, and concealed and attempted to conceal evidence that MGA and Larian had publicly released information that they have falsely claimed, including under oath, was "trade secret" and "confidential" MGA information;

(k) MGA and Larian engaged in a scheme to hide their ill-gotten gains obtained by their unlawful conduct, including transferring nearly $500 million dollars out of the company via distributions to Isaac Larian and his family;

(l) MGA and Larian engaged in a scheme to encumber MGA's money and property and conceal their funds to ensure there were never any assets available to Mattel, including by creating shell entities with investments from a company incorporated in Nevis and providing false sworn testimony about the terms of these transactions;

(m) MGA and Larian repeatedly stated that they sought to "kill" BARBIE, Mattel and individual Mattel executives; and

(n) Larian threatened and attempted to intimidate witnesses in this action and Mattel's counsel.

## Second Affirmative Defense

Defendant fails to state a claim upon which relief can be granted.

## Third Affirmative Defense

Defendant's claims are barred in whole or in part by its lack of standing.

### Fourth Affirmative Defense

Defendant's claims are barred in whole or in part by the doctrines of waiver, estoppel and acquiescence.

### Fifth Affirmative Defense

Defendant's claims are barred in whole or in part by the applicable statute of limitation and the doctrine of laches.

### Sixth Affirmative Defense

Defendant's claims are barred in whole or in part by Mattel's constitutional rights of free speech, petitioning and association, including without limitation by the litigation privilege as protected by and/or codified in *inter alia* Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the common interest privilege and by other privileges.

### Seventh Affirmative Defense

Defendant's claims are barred in whole or in part by Mattel's federal and state constitutional rights of free speech, including without limitation under the First Amendment of the United States Constitution.

### Eighth Affirmative Defense

Defendant's claims are barred in whole or in part by the competitor privilege.

### Ninth Affirmative Defense

Defendant's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

### Tenth Affirmative Defense

Defendant's requested relief, including defendant's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

### Eleventh Affirmative Defense

Defendant has failed to mitigate its damages, if any.

### Twelfth Affirmative Defense

Defendant's damages, if any, are barred or must be reduced as a result of their comparative fault.

### Thirteenth Affirmative Defense

Defendant's claims are barred in whole or in part by defendant's obstruction of justice.

### Fourteenth Affirmative Defense

Defendant's claims are barred in whole or in part because Mattel cannot be liable for misappropriation of information that was public and/or otherwise fails to meet the requirements for trade secret protection.

### Fifteenth Affirmative Defense

Defendant's claims are barred in whole or in part because they were brought and have been maintained in bad faith.

### Sixteenth Affirmative Defense

Defendant's claims are barred in whole or in part by defendant's own fraudulent and/or illegal conduct.

### Seventeenth Affirmative Defense

Defendant's claims are barred in whole or in part on the grounds that to the extent any person committed an unlawful or tortious act, the person lacked authority to commit such an act on behalf of Mattel.

### Eighteenth Affirmative Defense

Defendant's claims are preempted in whole or in part by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq*.

### Nineteenth Affirmative Defense

Defendant's claims based upon alleged extra-territorial acts are barred in whole or in part by lack of subject matter jurisdiction.

### Twentieth Affirmative Defense

Defendant's claims are barred by virtue of its assertion of the Fifth Amendment to hinder Mattel's ability to take and obtain discovery relating to its counterclaims-in-reply.

//
//
//
//
//
//
//
//
//
//
//

## Additional Defenses

Mattel has insufficient knowledge or information at this time upon which to form a belief as to whether additional defenses are available. Mattel reserves the right to amend this Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Counterclaims in Reply, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

DATED: October 12, 2010

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

00505.07975/3716573.6

-16-
MATTEL'S [CORRECTED] REPLY AND ANSWER TO MGA'S COUNTERCLAIMS-IN-REPLY