IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
JOSEPH A. LANE, CLERK

DIVISION 8



Los Angeles County Superior Court
111 North Hill Street
Los Angeles, CA 90012

    Mattel, Inc:
    v.
    Ronald Brawer
    B183132
    Los Angeles County No. BC323381

## \*\*\* REMITTITUR \*\*\*

    I, Joseph A. Lane, Clerk of the Court of Appeal of the State of California, for the Second Appellate District, do hereby certify that the attached is a true and correct copy of the original order, opinion or decision entered in the above-entitled cause on May 24, 2006 and that this order, opinion or decision has now become final.

    The parties are directed to bear their own costs of appeal.



        Witness my hand and the seal of the Court
        affixed at my office this

                       **JUL 2 6 2006**

                       Joseph A. Lane, Clerk

                       by: E. Amos,
                       Deputy Clerk

cc:  All Counsel (w/out attachment)
     File

Exhibit 4 - Page 30

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MATTEL, INC., | B183132 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC 323381) |
| v. | COURT OF APPEAL - SECOND DIST. |
| RONALD BRAWER, | **FILED** |
| Defendant and Respondent. | MAY 2 4 2006 |
| | JOSEPH A. LANE            Clerk |
| | Deputy Clerk |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joseph R Kalin. (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed and remanded with directions.

Munger, Tolles & Olson, Lawrence C. Barth; Paul, Hastings, Janofsky & Walker and Glenn D. Dassoff for Plaintiff and Appellant.

Littler Mendelson, Douglas A. Wickham and Sabrina A. Beldner for Defendant and Respondent.

Exhibit 4 - Page 31

## SUMMARY

A trial court did not err in sustaining an executive's demurrer to his former employer's initial complaint for declaratory relief, where the complaint failed to allege an actual or present controversy. However, it erred in denying the employer an opportunity to amend its complaint to attempt to cure certain defects and state a previously unasserted claim for declaratory relief.

## FACTUAL AND PROCEDURAL BACKGROUND

On this appeal taken from sustaining a demurrer, we recite the facts alleged in the complaint. (*BKHN, Inc. v. Department of Health Services* (1992) 3 Cal.App.4th 301, 305.) Respondent Ronald Brawer became an employee of appellant Mattel, Inc., a Delaware Corporation (Mattel), in 1997 when his former employer, Tyco Toys, Inc. (Tyco), merged with Mattel. Brawer's employment with Tyco was governed by a written "Employee Invention & Trade Secret Agreement" that he signed when he was hired by Tyco (Tyco Confidentiality Agreement). At Mattel, Brawer received a series of promotions and, by the time he resigned in October 2004, had risen to the rank of senior vice-president in the company's marketing division. As a senior vice-president, Brawer was privy to information related to the development, manufacture, marketing, pricing and performance of Mattel's then-current and anticipated future product lines, and to details of the company's business relationships with significant retail customers. Mattel alleges this data is "proprietary information."

In 2003, Mattel circulated a Code of Conduct to all employees. The Code of Conduct advised them of: (a) the categories of information Mattel views as proprietary information, and (b) their continuing "obligation to preserve confidential information," even after ceasing their employment status with Mattel.

In early March 2004, Mattel distributed a memorandum to top executives, including Brawer. The executives were asked to sign and return the following documents: (1) a survey confirming their compliance with the Code of Conduct; and (2) an updated Employee Confidentiality and Inventions Agreement ("confidentiality

2

Exhibit 4 - Page 32

agreement").[1]  In response, Brawer notified Mattel's president that he "applaud[ed] the company's vigorous protection of it's [*sic*] intellectual property," but intended to have "one section" of the confidentiality agreement reviewed before signing it.  Brawer anticipated returning a signed confidentiality agreement to Mattel by March 24, 2004. Thereafter, Brawer and Mattel entered into negotiations regarding the language of the section of the confidentiality agreement defining Mattel's "proprietary information." Brawer assured Mattel he would provide a proposed revision to that section of the confidentiality agreement.  However, the matter was not resolved before Brawer's October 2004 resignation, and Brawer never signed the confidentiality agreement or other documents he received in early March.

In spring 2004, Brawer assumed a new executive position at Mattel as a senior vice president/general manager ("GM").  A GM heads a cross-functional business team and bears responsibility for all aspects of Mattel's strategic partnership with a key retailer.  Brawer began performing his GM duties in late May.  Based on his representations, Mattel believed Brawer was "firmly on board" with his new position at Mattel, even though he had not signed the confidentiality agreement and he had not yet finalized an employment agreement for the GM position.

From June through early September 2004, Brawer participated in a variety of sensitive meetings during which information Mattel considers proprietary was discussed. The information includes Mattel's initial internal presentation of its spring 2005 products, company strategy and negotiations related to its relationship with the large toy retailer for which Brawer was responsible as GM, and Mattel's developing product lines, promotional plans, market strategies and licensing opportunities.  After Brawer resigned, a review of his telephone records revealed that, on several occasions, he called his subsequent employer, MGA Entertainment (MGA), within hours of meetings at which he was exposed to information Mattel considers sensitive, confidential and/or proprietary. From August through early September 2004, Brawer participated in numerous meetings

---

[1]     We do not know the specific terms of the Code of Conduct or confidentiality agreement; neither is part of the appellate record.

3

Exhibit 4 - Page 33

during which he learned detailed information related to Mattel's entire product line, licensing, advertising and media campaigns. During this period, Brawer also received regular sales and consumption reports, financial analyses, test market reports and a myriad of other sensitive data related to Mattel's long-range business plans for 2005-2008.

On September 15, 2004, Brawer left work at noon for a two-day religious holiday. He left carrying a box containing binders and other materials. A few hours later, Brawer instructed his assistant to print out for him Mattel's 2004 internal sales plan for one of its largest toy retailers, claiming he needed the document for a meeting. On September 17, 2004, Brawer informed Mattel he intended to resign, effective October 1, 2004, and to work for MGA. MGA is engaged in the design, manufacture and marketing of toys and other goods which directly compete with Mattel's products. Before he announced his resignation, Brawer never told Mattel he was contemplating working for MGA.[2] At MGA, Brawer would be executive vice-president of sales & marketing.

During an exit interview conducted on September 29, 2004, Mattel presented Brawer with a document for his signature. The document confirmed: (1) the proprietary information Brawer had received; (2) he had returned to the company all of Mattel's proprietary information in his possession; (3) he had not copied or disclosed any of the company's proprietary information; and (4) he understood his ongoing obligation to maintain the confidentiality of Mattel's proprietary information. Brawer declined to complete or sign this document. Mattel reminded Brawer of his ongoing duty of confidentiality to the company, and gave him a copy of the Tyco Confidentiality Agreement and a copy of the Code of Conduct. Brawer stated he had never signed the Code of Conduct. Mattel also presented to Brawer a revised version of the confidentiality agreement, which included revisions Mattel had offered Brawer.

---

[2]      In fall 2003, Mattel believed MGA was contacting its employees. Brawer was asked if he had been contacted, and was advised that, given his position with the company and his access to its proprietary information, any contact with MGA would pose a conflict. Brawer agreed not to talk to MGA.

4

Exhibit 4 - Page 34

He refused to sign the revised confidentiality agreement, disclosing for the first time that (1) his objections to the confidentiality agreement were not limited to section (3)(b); (2) "he disagreed with everything in the 2004 Confidentiality Agreement"; and (3) "he never intended to sign it." On October 1, 2004, his last day of employment, Mattel gave Brawer a letter. The letter again identified the nature of Mattel's proprietary information, reminded Brawer of his ongoing duty of confidentiality to the company, and requested he acknowledge and agree to maintain the confidentiality of Mattel's proprietary information identified in the letter by signing and returning a copy to Mattel.[3]

This action was filed on October 21, 2004. Mattel's complaint asserted a single cause of action for declaratory relief, and alleged the existence of two "actual and present controversy." The first "controversy [is] between Mattel and Brawer regarding the confidential nature of Mattel's Proprietary Information . . . ."[4] The second "actual and present controversy . . . exists regarding the extent to which Mattel is entitled to protection of its Proprietary Information on the one hand, and Brawer's ability, on the other hand, to undertake the responsibilities inherent in his new position with MGA without disclosing or using the confidential Proprietary Information that Brawer learned while employed by Mattel."

---

[3]     Brawer did not respond to this letter before this action was filed on October 21, 2004. However, the following day, Brawer's attorney sent a letter acknowledging Mattel's October 1, 2004, letter and informing the company "Mr. Brawer intend[ed] to comply with all of his obligations to Mattel under applicable law."

[4]     Mattel's proprietary information allegedly includes, but is not limited to, its "Global Line Review; Spring 2005 line review; Fall 2005 line review; line reviews for specific Mattel brands; 2005 Fall Global Action Plan (including detailed product cost, manufacturing, shipping and delivery plans for 2005); strategy and negotiations related to Mattel's relationship with the Large Toy Retailer; developing product lines; promotional plans; market strategy; licensing strategy, relationships, and opportunities; confidential personnel information related to Mattel employees; advertising and media plans; product testing reports; sales information of Mattel products; shipping capabilities and reports; and the Long Range Plan 2005-2008."

5

Exhibit 4 - Page 35

Brawer demurred to the complaint arguing Mattel had failed to state a viable claim. The demurrer was sustained. Mattel was granted leave to amend to assert a claim other than for declaratory relief, which was found nonjusticiable. As to the declaratory relief cause of action, the demurrer was sustained without leave to amend. No amended pleading was filed. As a result, the action was dismissed. This appeal followed.

## DISCUSSION

Mattel maintains the trial court erred in sustaining Brawer's demurrer. Mattel asserts this error was compounded when the court refused to allow it to amend to cure any substantive defect in its declaratory relief cause of action. We agree with Mattel's last contention.

1.      **The trial court did not err in concluding Mattel failed to allege the existence of an actual controversy.**

In California law, the grounds for obtaining declaratory relief are provided by Code of Civil Procedure section 1060 (section 1060) which provides:

> "Any person interested under a . . . contract . . . who desires a declaration of his or her rights or duties with respect to another, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties . . . including a determination of any question of construction or validity arising under the . . . contract."

Section 1060 is broadly construed, and a complaint is legally sufficient under the statute if it (1) alleges the existence of an actual controversy related to the parties' legal rights and duties under a contract or statute, and (2) requests the adjudication of the rights and duties by the court. (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728; *AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 590.) Under the section, an "actual controversy" is one "ripe" for adjudication. Such a controversy is "one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts." (*Selby Realty Co. v. City of San Buenaventura* (1973)

6

Exhibit 4 - Page 36

10 Cal.3d 110, 117; see also *Newland v. Kizer* (1989) 209 Cal.App.3d 647, 657 [A party seeking declaratory relief must plead specific facts showing "an actual controversy, not simply an abstract or academic dispute"].) " 'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170-171.) If an actual controversy has not been pled and the action is one "where its declaration or determination is not necessary or proper at the time under all the circumstances," the trial court may refuse to entertain an action for declaratory relief. (Code Civ. Proc., § 1061.)[5]

The trial court sustained without leave to amend Brawer's demurrer to Mattel's declaratory relief claim after it concluded Mattel had failed to, and could not, amend the complaint to allege a concrete controversy capable of definitive relief between itself and Brawer. It concluded Mattel was essentially asking the court to (1) examine Brawer's mind to identify the highly sensitive information he had obtained or gleaned in the course of his employment with Mattel; (2) determine the data that was proprietary information; and (3) order Brawer not to use and/or disclose the data in his new position with MGA, notwithstanding Mattel's failure to allege, and failure to claim it could allege, Brawer had used, was using, or was threatening to use, misuse or disclose any of that information, and despite the fact Brawer had not actually disputed Mattel's claim that the information was proprietary. We concur.

A claim premised on " ' "contingent future events that may not occur as anticipated, or indeed may not occur at all," ' " is not ripe for adjudication. (*Texas v. United States* (1998) 523 U.S. 296, 300.) A primary purpose of the public judiciary is to provide a forum to resolve live disputes between litigating parties. "We do not resolve abstract legal issues, even when requested to do so. We resolve real disputes between

---

[5] The parties dispute the appropriate standard of review. We need not resolve this controversy. Although our discussion is couched largely in terms of the trial court's exercise of discretion, we would reach the same result under the de novo standard. (See *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 58-59.)

Exhibit 4 - Page 37

real people." (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 282; see also *Selby Realty Co. v. City of San Buenaventura, supra,* 10 Cal.3d at p. 117 ["ripeness" doctrine prevents courts from issuing advisory opinions based on hypothetical facts].) A mere " ' "difference of opinion does not give rise to a justiciable case until an actual concrete controversy arises." ' " (*BKHN, Inc. v. Department of Health Services, supra,* 3 Cal.App.4th at p. 308.) The abstract controversy alleged by Mattel is not ripe for adjudication.

Mattel asserts its complaint adequately alleges, or can be amended to allege, the existence of a live controversy between it and Brawer "regarding the confidential nature of Mattel's Proprietary Information." However, Mattel fails to allege facts showing that Brawer disputes Mattel's claim regarding the proprietary nature of the information. Moreover, even if Mattel had alleged, or could allege, such facts, those allegations standing alone would not satisfy the pleading requirements. At most, the allegations would evidence only the existence of a "difference of opinion" between the parties, not a justiciable controversy. (See *BKHN, Inc. v. Department of Health Services, supra,* 3 Cal.App.4th at p. 308.) Without allegations of an actual dispute over the nature of Mattel's proprietary information, or Brawer's disclosure or threatened disclosure of the proprietary information, no live controversy ripe for adjudication exists.

The other alleged basis for Mattel's assertion that an actual case or controversy exists is its claim that, at some point, Brawer's work at MGA may require his use or disclosure of Mattel's proprietary information. Specifically, Mattel alleges that "[s]uch conflict *may* occur in situations . . . in which Brawer *may* be asked to evaluate competitive marketing, product, or pricing plans, or situations where Brawer *may* be asked to propose or consider changes in MGA's media, advertising, or shipping plans." (Italics added.) This allegation represents a thinly veiled attempt to obtain an advisory opinion based on conjecture and a speculative conflict which may never arise. However, claims based on " ' "contingent future events that may not occur as anticipated, or indeed may not occur at all," ' " are not ripe for adjudication. (*Texas v. United States, supra,* 523 U.S. at p. 300; see also *Burke v. City etc. of San Francisco* (1968) 258 Cal.App.2d

8

Exhibit 4 - Page 38

32, 34 [declaratory relief is an inappropriate remedy when only conjecture or supposition suggests a controversy may arise at some future point].)

Mattel asserts it alleged an actual controversy sufficient to support a declaratory relief action under *Rubin v. Toberman* (1964) 226 Cal.App.2d 319 (*Rubin*). In *Rubin*, plaintiffs agreed to buy a vacant lot from defendant sellers after receiving written assurance the defendants would reimburse plaintiffs for costs incurred in excess of $1,000, as required by building authorities, to construct a foundation on the lot to support a house. (*Id.* at p. 322.) After it became clear several months later that expenses associated with the foundation would greatly exceed $1,000, plaintiffs apprised defendants of that fact. In response, defendants disputed the necessity of, or a relationship to, the original agreement of certain costs and items plaintiffs identified. Plaintiffs brought a declaratory relief action to adjudicate the parties' rights, duties and obligations under the written contract. Defendants argued the action was premature and sought only an advisory opinion, because the plaintiffs had not yet incurred any costs and might never do so. (*Id.* at p. 325.) The court found otherwise. Although the total amount of debt was unknown, that point was irrelevant because the controversies involved the parties' obligations vis-à-vis one another. The action was ripe to determine the parties' legal relationship under their contract, and the parties' eventual responsibility for specific liabilities. Without such a determination, plaintiffs were financially unable to proceed with their building plans. (*Id.* at pp. 326-328.) Mattel's claim that, at some point, Brawer may disclose highly sensitive information is unlike the factual circumstances in *Rubin*. No signed agreement exists between Mattel and Brawer and, more importantly, no extant conflict creates a present need to declare the parties' rights or duties vis-à-vis one another without which Mattel cannot proceed.

Mattel contends the trial court imposed improper requirements on its declaratory relief claim by mandating it to allege Brawer's actual misappropriation or disclosure of Mattel's trade secrets and present damage to the company. Mattel misconstrues the court's discussion. During oral argument, the court used Mattel's failure to allege any damage or threatened damage to illustrate that the company had no actual, concrete

9

Exhibit 4 - Page 39

controversy with its former executive. As the court pointed out at the demurrer hearing, in declaratory relief, as in other actions, "the courts don't solve the problems of the world unless there is . . . something that has to be corrected. You have nothing here to be corrected." At the hearing, after a lengthy colloquy regarding the merits of the demurrer, Mattel's counsel conceded it lacked evidence Brawer was disclosing or had any intention to disclose proprietary information to MGA, a concession Mattel reiterates on appeal.[6] Stated differently, Mattel admits it seeks a declaration as to whether "[Brawer] agrees with [its] definition" of "what is covered as proprietary from Mattel, and that Brawer is required to take reasonable steps to protect that information. That's it." A fair reading of the record reveals the court fully understood the nature of Mattel's request and did not impose an additional burden requiring Mattel to sustain actual damages before asserting a declaratory relief claim. Such a requirement would be improper, and did not occur here. (*Pacific Legal Foundation v. California Coastal Com., supra,* 33 Cal.3d at pp. 170-172; *Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1426.) Rather, the court found this action which alleged only an abstract, academic and potentially nonexistent controversy between Mattel and Brawer, and which the court opined was filed in order to obtain discovery, was not one in which declaratory relief was "necessary or proper." The court accordingly properly exercised its discretion not to entertain the litigation. (Code Civ. Proc., § 1061.)[7]

---

[6]    As the court noted, no one disputes Brawer obtained proprietary information and/or trade secrets during the course of his employment at Mattel.

[7]    As in his demurrer, Brawer insists on appeal that Mattel's declaratory relief claim is partially premised on the "inevitable disclosure" doctrine. This theory holds that, based on the responsibilities inherent in his position at MGA, Brawer will inevitably be required to use and/or disclose Mattel's proprietary information. Mattel denies its complaint is premised on this doctrine. Our conclusion makes it unnecessary to address the arguments on this point. Nevertheless, if the litigation were premised on this doctrine, it would not provide a proper basis for declaratory relief. The doctrine of inevitable disclosure is inconsistent with California's fundamental public policy of promoting free mobility of individual employees to pursue their occupations unfettered by unlawful covenants not to compete. (*Continental Car-Na-Var Corp. v. Moseley*

Exhibit 4 - Page 40

2.     **Mattel is entitled to an opportunity to amend its complaint to state a cause of action for declaratory relief.**

Fundamental principles of civil procedure instruct that, if any reasonable possibility exists that a party can state a viable claim, it is error to deny leave to amend. (*Okun v. Superior Court* (1981) 29 Cal.3d 442, 460.)  Appellate courts do not hesitate to find an abuse of judicial discretion in the sustaining of a demurrer without leave to amend where a party did not have prior opportunity to amend and the pleading does not show on its face it cannot be amended.  (See *Von Batsch v. American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1119; *California Federal Bank v. Matreyek* (1992) 8 Cal.App.4th 125, 130-131 [Finding trial court abused its discretion in sustaining demurrer to the original complaint without leave to amend where the pleading did not "show on its face that it [was] incapable of amendment"].)

For the first time, Mattel asserts on appeal the existence of a third "actual controversy" between it and Brawer.  Mattel argues its "Code of Conduct was, is and remains legally binding up on Brawer, whether or not he signed it."  Brawer, on the other hand, "during his exit interview, refused to acknowledge any ongoing obligations of confidentiality and, when confronted with the Code of Conduct, noted that he 'had not signed it.' "  Mattel maintains "one fair inference" to be drawn from these allegations is that Brawer denies he is bound by what Mattel insists are "legally binding obligation[s]" contained in its Code of Conduct.  This, Mattel asserts, is precisely the "kind of 'actual controversy' deemed sufficient in *Rubin* . . . ."

Having failed to raise its "third controversy" below, Mattel, Brawer asserts, is precluded from raising it now.  Mattel's failure to seek leave to amend specifically to allege this controversy does not trouble us.  If Mattel had, it is unlikely the trial court would have permitted it to do so.  The company was denied the opportunity to amend and allege any claim for declaratory relief.  In any event, Mattel did request leave to amend

---

(1944) 24 Cal.2d 104, 111; *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1458.)

Exhibit 4 - Page 41

its declaratory relief claim, albeit on a different alleged controversy. "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." (Code Civ. Proc., § 472c, subd. (a); *Governing Board v. Haar* (1994) 28 Cal.App.4th 369, 375.)

On appeal from an order sustaining a demurrer, the facts alleged must be viewed as true and the complaint must be reviewed to determine if it could state a cause of action under any legal theory. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Viewed through this lens of review, the allegations raised on appeal are sufficient to permit Mattel an opportunity to amend its complaint to attempt to state a declaratory relief claim. Brawer's refusal to acknowledge an ongoing duty of confidentiality to Mattel and his statement he had not signed the Code of Conduct give rise to a reasonable inference that Brawer has disavowed specific contractual obligations to which Mattel claims he is bound. Such an inference more closely aligns this action with the actual controversy found in *Rubin*, in which defendants specifically repudiated obligations under an existing agreement.

Broadly stated, insofar as is currently before this court, the disputed issues are whether Brawer is bound by the terms of Mattel's confidentiality agreement and Code of Conduct and, if so, to what extent. That dispute may not be abstract. Because Mattel asserts that valuable trade secrets and proprietary information are at risk of disclosure depending on which party's contractual interpretation prevails, Mattel may be entitled to declaratory relief. "Declaratory relief exists to enable a party to a contract to determine his rights . . . before he has . . . subjected himself to risks, which, if his view of those rights . . . is in error, he would not have . . . subjected himself [to]." (*Rubin, supra,* 226 Cal.App.2d at p. 326.) Mattel is entitled to an opportunity to clarify its allegations to state a viable claim. Properly pleaded, these allegations may satisfy the test for declaratory relief. To be cognizable, "[the controversy] must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character . . . ." (*Pacific Legal Foundation v. California Coastal Com., supra,* 33 Cal.3d at p. 171,

12

Exhibit 4 - Page 42

quotations omitted.)  If Mattel can amend to allege such a controversy, declaratory relief is an appropriate vehicle to resolve issues regarding the formation and existence of a contract, and the parties' rights and duties under the contract.  (*Columbia Pictures Corp. v. DeToth* (1945) 26 Cal.2d 753, 760; *Fowler v. Ross* (1983) 142 Cal.App.3d 472, 478.)  With respect only to the "new" allegations addressed for the first time on appeal, we conclude the trial court abused its discretion in sustaining without leave to amend Brawer's demurrer to the complaint.  Mattel is entitled to an opportunity to amend its complaint to state a cause of action for declaratory relief based on those allegations.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court with directions to vacate the order sustaining the demurrer without leave to amend and to grant Mattel leave to amend to state a cause of action for declaratory relief premised on its contention that (1) Brawer is bound by Mattel's Code of Conduct regardless of his failure to sign that document, and (2) Brawer's implicit disavowal of ongoing obligations under Mattel's Code of Conduct, based on his refusal to explicitly acknowledge such obligations in his exit interview, and his statement that he had not signed the document.  The parties are directed to bear their own costs of appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BOLAND, J.

We concur:

RUBIN, J., Acting P. J.

FLIER, J.

13

Exhibit 4 - Page 43