INT
PROP
50
L423
1984

LEGISLATIVE HISTORY OF
CALIFORNIA TRADE SECRETS
ACT: CIVIL CODE 3426.7,

Copy 1



# CIVIL CODE

## SECTION 3426.7
ENACTED BY THE CALIFORNIA UNIFORM TRADE
SECRETS ACT
CHAPTER 1724, STATUTES OF 1984

LIBRARY
ORRICK, HERRINGTON & SUTCLIFFE LLP
MENLO PARK, CALIFORNIA

JAN RAYMOND
LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
P.O. BOX 74005, DAVIS, CALIFORNIA 95617
PHONE (888) 676-1947 OR (530) 750-2187
FAX: (530) 750-0190

INT
PROP
50
L423
1984

Copy 1

Exhibit 7 - Page 59

AB 501          — 4 —

1  section, a continuing misappropriation constitutes a
2  single claim.
3     3426.7.  Except as otherwise expressly provided, this
4  title does not supersede any statute relating to
5  misappropriation of a trade secret, or any statute
6  otherwise regulating trade secrets.
7     3426.8.  This title shall be applied and construed to
8  effectuate its general purpose to make uniform the law
9  with respect to the subject of this title among states
10  enacting it.
11     3426.9.  If any provision of this title or its application
12  to any person or circumstances is held invalid, the
13  invalidity does not affect other provisions or applications
14  of the title which can be given effect without the invalid
15  provision or application, and to this end the provisions of
16  this title are severable.
17     3426.10.  This title does not apply to misappropriation
18  occurring prior to January 1, 1984.

O

99  110

Exhibit 7 - Page 60

Robert Cornell, Esq., June 6, 1984 - Page Four


        Seventhly, I cannot agree with Mr. Foster's comments
regarding Section 7207.  This Section would in no way alter or
affect a "trade secret case" but simply states that if the
parties agree, the Trade Secret Act will not affect contractual
rights and obligations.  Stated another way, in a contract action
between two parties, the Trade Secret Act will not, and indeed
should not, be applicable to alter the rights and duties of the
parties created voluntarily by the contract.

        In view of the above comments, I trust that we will
proceed forthwith with the adoption or inclusion of items 1
through 10 in your memo of May 16, 1984, and that the amendment
to the definition of trade secret which was set forth in the
marked up copy of AB 501 which accompanied my letter to you of
May 24, 1984 will likewise be incorporated.

        I would appreciate it if you could keep me informed as
to the status of this Act and its amendments.

                      Very truly yours,


                      Gregory B. Wood
                      For the Firm


GBW:LH
Enclosure
cc:  R. LeBov
     J.A. Harper
     N.S. Millard
     D. Simon
     M. Morrow
     D. Oloson

Exhibit 7 - Page 61

3.75% rate against the applicable distant signal thereof and the aggregated gross receipts.

Second, in the case of a cable system located wholly or in part within a top 100 television market, if the 3.75% rate is not applicable to a given DSE or fraction thereof, the cable system should apply both the appropriate syndicated exclusivity surcharge and the current base rate to such DSE's or fraction thereof and against the aggregated gross receipts, as provided in 37 CFR 308.2(d)(1) and (2). The Office notes that if a cable system "straddles" more than one type of television market, the Tribunal's rules clearly require application of the surcharge attributable to the higher market.

Third, in the case of a cable system located wholly outside of a top 100 television market but within a smaller television market, if the 3.75% rate is not applicable to a given DSE or fraction thereof, the cable system should apply the current base rate (37 CFR 308.2(a)) to such DSE's or fraction thereof and against the aggregated gross receipts.

Finally, in the case of a cable system located wholly outside all television markets, the cable system should apply only the current base rate to the DSE's and the aggregated gross receipts. [End Text]

The Office has also confirmed that copyright royalty fees must be paid on the basis of carriage for the entire accounting period for any distant signal carried during any part of the 83-1 accounting period, unless proration of the DSE is allowed under the Copyright Act and 37 CFR 201.17(f)(3). The cable system, however, will apply different rate structures depending upon whether carriage took place before March 15, 1983, or after March 14, 1983.

On another issue, the Copyright Office confirmed its tentative opinion that if the FCC did not grant a waiver of rules request, the DSE resulting from carriage of that signal after accounting period 81-1 requires application of the 3.75% rate, unless the signal is properly substituted for an "old" signal previously carried.

The interim rules went into effect April 16th. Written comments (ten copies) should be forwarded, on or before May 16th, to Library of Congress, Department D.S., Washington, D.C. 20540.

For further information, contact Dorothy Schrader, General Counsel, Copyright Office, Library of Congress, Washington, D.C. 20559. Telephone: (202) 287-8380.

The new rules, as published in the April 16th issue of the Federal Register (49 Fed. Reg. 14944), appear in the text section.

## BRIEFS

**Trade Secrets, Injunctions:** The Court of Appeals of Indiana (Second District) decides that an insurance company's policyholders lists are not entitled to protection as trade secrets because they lack "independent economic value * * * from not being generally known." (Steenhoven v. College Life Insurance Co. of America, 3/8/84)

The trial court preliminarily enjoined Steenhoven from contacting past or present clients regarding replacing their College Life Insurance policies. Steenhoven was also ordered to return certain materials to College Life.

The Court of Appeals upheld that portion of the order requiring return of the materials, but reversed as to the prohibition against contacting the defendant's clients. College Life then petitioned for rehearing, arguing that policyholder lists constitute trade secrets because they are not readily ascertainable from the policyholders themselves.

In order to be considered a trade secret under the Uniform Trade Secrets Act, the court rules, "the information at issue must be imbued with a certain 'independent economic value * * * from not being generally known'." Such is not the case here, Judge Ratliff rules:

[Text] No such inherent independent value can be ascribed to this list of policyholders' names and addresses, even if such list is placed in the hands of a rival insurance organization. Alone it is effectively worthless. Lacking independent economic value in the hands of another, we cannot say that such a list would constitute a trade secret within the meaning of the Uniform Trade Secrets Act. [End Text]

(Ed. Note: In footnote 5, the court comments that its decision should not be interpreted to mean that every customer list is ineligible for trade secret protection. Where goods or services are sold to a small, fixed group of purchasers, Judge Ratliff says, a supplier's customer list could well constitute a trade secret.)

The petition for rehearing is denied.

**Legislation, Inventors Day:** On April 10th, President Reagan signed HJRes 271 (P.L. 98-251) designating February 11, 1984, as "National Inventors Day." The resolution passed the Senate on March 26th (see 27 PTCJ 528) and the House on February 8th (see 27 PTCJ 389).

**Copyright Royalty Tribunal, Personnel:** The Senate Judiciary Committee, on April 12th, approved the nomination of Mario F. Aguero to be a Commissioner of the Copyright Royalty Tribunal. Aguero was nominated to the post last month (see 27 PTCJ at 484) to complete the unexpired term of Commissioner Mary Lou Burg, who died last May.

Aguero, 60, is the founder and president of Artists Radio Television Espectaculos and a New York member of the First Hispanic Council.

One other vacancy on the Tribunal, resulting from the confirmation last September of Katherine Ortega as Treasurer of the United States, remains to be filled.

**Legislation, Joint Ventures:** On April 6th, the House Judiciary Committee issued its report on H.R. 5041, the "Joint Research and Development Act of 1984."

As reported out by the committee (see 27 PTCJ 477), the bill provides for the application of the "rule

Exhibit 7 - Page 62

AMENDED IN SENATE JULY 6, 1984

AMENDED IN ASSEMBLY MAY 3, 1983

AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983–84 REGULAR SESSION

# ASSEMBLY BILL No. 501

---

## Introduced by Assemblyman Harris

## February 7, 1983

---

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris. Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1. Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

96  40

Exhibit 7 - Page 63

AB 501 — 2 —

# TITLE 5.   UNIFORM TRADE SECRETS ACT

3426.   This title may be cited as the Uniform Trade Secrets Act.

3426.1.   As used in this title, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or

96   50

Exhibit 7 - Page 64

— 3 —                AB 501

1  potential, from not being generally known to, and not
2  being readily ascertainable by proper means by, other
3  persons who can obtain economic value from its
4  disclosure or use; and
5     (2) Is the subject of efforts that are reasonable under
6  the circumstances to maintain its secrecy.
7     3426.2.   (a) Actual or threatened misappropriation
8  may be enjoined. Upon application to the court, an
9  injunction shall be terminated when the trade secret has
10  ceased to exist, but the injunction may be continued for
11  an additional period of time in order to eliminate
12  commercial advantage that otherwise would be derived
13  from the misappropriation.
14     (b) If the court determines that it would be
15  unreasonable to prohibit future use, an injunction may
16  condition future use upon payment of a reasonable
17  royalty for no longer than the period of time the use could
18  have been prohibited.
19     (c) In appropriate circumstances, affirmative acts to
20  protect a trade secret may be compelled by court order.
21     3426.3.   (a) A complainant may recover damages for
22  the actual loss caused by misappropriation. A
23  complainant also may recover for the unjust enrichment
24  caused by misappropriation that is not taken into account
25  in computing damages for actual loss.
26     (b) If neither damages nor unjust enrichment caused
27  by misappropriation are provable, the court may order
28  payment of a reasonable royalty for no longer than the
29  period of time the use could have been prohibited.
30     (c) If willful ~~and~~ *or* malicious misappropriation exists,
31  the court may award exemplary damages in an amount
32  not exceeding ~~twice~~ *three times the amount of* any award
33  made under subdivision (a) or (b).
34     3426.4.   If a claim of misappropriation is made in bad
35  faith, a motion to terminate an injunction is made or
36  resisted in bad faith, or willful ~~and~~ *or* malicious
37  misappropriation exists, the court may award reasonable
38  attorney's fees to the prevailing party.
39     3426.5.   In an action under this title, a court shall
40  preserve the secrecy of an alleged trade secret by

96   70

Exhibit 7 - Page 65

AB 501                     — 4 —

1   reasonable   means,   which   may   include   granting
2   protective   orders   in   connection   with   discovery
3   proceedings,   holding   in-camera   hearings,   sealing   the
4   records of the action, and ordering any person involved
5   in the litigation not to disclose an alleged trade secret
6   without prior court approval.
7       3426.6.   An action for misappropriation must be
8   brought within three years after the misappropriation is
9   discovered or by the exercise of reasonable diligence
10  should have been discovered. For the purposes of this
11  section, a continuing misappropriation constitutes a
12  single claim.
13      3426.7.   (a) Except as otherwise expressly provided,
14  this title does not supersede any statute relating to
15  misappropriation of a trade secret, or any statute
16  otherwise regulating trade secrets.
17      (b)  This title does not affect the disclosure of a public
18  record by a state or local agency under the California
19  Public Records Act (Chapter 3.5 (commencing with
20  Section 6250) of Division 7 of Title 1 of the Government
21  Code). Any determination as to whether the disclosure of
22  a public record constitutes a misappropriation of a trade
23  secret and the rights and remedies with respect thereto
24  shall be made pursuant to the law in effect before the
25  operative date of this title.
26      3426.8.   This title does not affect any contractual rights
27  or remedies.
28      3426.9.   This title shall be applied and construed to
29  effectuate its general purpose to make uniform the law
30  with respect to the subject of this title among states
31  enacting it.
32      3426.10.   If any provision of this title or its application
33  to any person or circumstances is held invalid, the
34  invalidity does not affect other provisions or applications
35  of the title which can be given effect without the invalid
36  provision or application, and to this end the provisions of
37  this title are severable.
38      3426.11.   This title does not apply to misappropriation
39  occurring prior to ~~January 1, 1984~~ *January 1, 1985*. If a
40  continuing misappropriation otherwise covered by this

96   90

Exhibit 7 - Page 66

— 5 —                                        AB 501

1   title began before ~~January 1, 1984~~ *January 1, 1985,* this title
2   does not apply to the part of the misappropriation
3   occurring before that date. This title does apply to the
4   part of the misappropriation occurring on or after that
5   date unless the appropriation was not a misappropriation
6   under the law in effect before the operative date of this
7   title.
8       SEC. 2.   Section 2036.2 is added to the Code of Civil
9   Procdure, to read:
10      2036.2.   In any action alleging the misappropriation of
11  a trade secret under the Uniform Trade Secrets Act
12  (Title 5 (commencing with Section 3426) of Part 1 of
13  Division 4 of the Civil Code), before commencing
14  discovery relating to the trade secret under Chapter 2
15  (commencing   with   Section   1985)   or   Article   3
16  (commencing with Section 2016) of Chapter 3 of this
17  title, the party alleging the misappropriation shall
18  identify the trade secret with *reasonable* particularity
19  subject to any orders which may be appropriate under
20  Section 3426.5 of the Civil Code.

O

96   100

Exhibit 7 - Page 67

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 7 - Page 68

UNIFORM TRADE SECRETS ACT:
Erosion of the Right to Know

AB 501 would enact the Uniform Trade Secrets Act prepared by the Commissioners on Uniform State Laws. The bill (including Assembly amendments) would significantly expand trade secret protection in California in the following ways:

1.   The Bill Would Expand the Definition of a Trade Secret Substantially. Current law requires that the secret be a device that is continuously used in business. This bill would broaden the definition substantially. One justification offered by the Commissioners for this expansion is the trade secret protection of all research. The expanded definition would have a substantial impact on the right to obtain health and safety information, pollution data, and other information related to toxic substances and public health.

2.   The Bill Would Significantly Broaden the Protection of the Secret From Disclosure. The holder of a trade secret only has protection against the wrongful disclosure of the secret. This bill would substantially broaden that which is considered wrongful. For example, disclosure of a secret that is acquired by mistake or accident could now be an actionable wrong.

3.   This Bill Would Impliedly Overrule Many California Laws and Regulations. Presently, trade secrets are defined in various California codes. For example, Government Code Section 6254.7 makes clear that pollution data are never trade secrets. Trade secrets are already given ample protection in such provisions as Health and Safety Code Section 25173, Labor Code Sections 6322 and 6396, and various other provisions of law. To the extent inconsistent with this bill, those sections would evidently be overruled.

4.   This Bill Requires Courts to Maintain Trade Secrets, Thus Eliminating the Traditional Judicial Power to Disclose Such Secrets in the Interests of Justice. Evidence Code Section 1060 currently provides that a court may disclose a trade secret if its maintenance would work an injustice or fraud. The Evidence Code section has been used to disclose trade secret information in the interests of public health and safety. (Uribe v. Howie.) This bill, however, would require a court to maintain all such information in secret. It is not clear that the Evidence Code authority would still remain.

PHW1E-1                          1

Exhibit 7 - Page 69

5.   <u>This Bill Would Significantly Affect the
Worker's and Public's Right to Know About Toxic Substances</u>.
Many communities and all California workers have the right
to know about toxic substances present on the job or in their
communities.   This bill would substantially eliminate that
right by broadening the amount of information that any
employer or business can claim as a trade secret.   Even
employee medical and exposure records, which are currently
protected by regulation, might well be impacted by this bill,
since many employers have claimed such records as trade
secrets.   Under current regulation, these secrets are
expressly required to be disclosed.

This bill was defeated in 1982 (AB 3738).   It
should be defeated again.   However, the bill will soon become
law if action is not taken immediately to lobby against it.

PHW1E-1                           2

Exhibit 7 - Page 70

# BILL ANALYSIS

| DEPARTMENT | AUTHOR | BILL NUMBER |
|---|---|---|
| FOOD AND AGRICULTURE | Assemblyman Harris | AB 501 |
| SPONSORED BY: National Conference of Commissioners on Uniform State Law | RELATED BILLS AB 3738 (1982) | DATE LAST AMENDED Original |

## BILL SUMMARY

MAJOR BILL

This Act provides that actual or threatened misappropriation (as defined in the Uniform Trade Secrets Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

### A. Specific Findings:

The same bill, numbered AB 3738, was introduced on March 25, 1982, and an analysis was prepared at that time. It was subsequently modified on May 12, 1982, although the changes made in this latter version were not incorporated into AB 501. (Analyses attached).

The definition of "trade secret" incorporated into the Act would include health and safety data submitted to the Department in support of pesticide registration. The Department's refusal to release health and safety data pursuant to the Public Records Act (California Government Code § 6250 et. seq.) has been a continuing source of controversy. The effect of the Act, if passed, would be to keep secret all health and safety studies except those which have previously been released.

The penalties for release of trade secret data as imposed by this Bill are severe. The use of "unjust enrichment" as a measure of damages (proposed § 3426.3(a)) could result in substantial liability. For example, if trade secret data were released to a competitor who registered and marketed an identical product, all profits from the sales of the competitor's product would be considered "unjust enrichment."

### B. Fiscal Impact:

Assembly Bill 501 could expose the Department to liability for an error in judgment by staff who must process Public Records Act requests.

### C. Conclusion:

In the past, the Department has refused to release trade secret data as defined in California Government Code Section 6257.7(d). This is mostly health and safety data. Further, the Department is in possession of a great deal of highly valuable trade secret data as well as public records. It is difficult to determine if data is secret; the analysis must determine whether the data has been previously released, whether the data has proprietary value, and whether the data was received with an expectation of privacy. Frequent requests for pesticide data require a staff analysis to determine whether the requested data is trade secret.

*We are not opposed to a strong trade secret law, only object to the payment of damages by the state for inadvertent disclosure. Author is aware of our concerns*

STATE-MANDATED LOCAL PROGRAM    Yes ☐    No ☒  *and has promised to amend bill to remove our concern*

OFFICIAL POSITION:          OPPOSE, *unless amended*

| Governor's office use |  |
|---|---|
| Position noted |  |
| Position approved | ✓ |
| Position disapproved |  |

DEPARTMENT DIRECTOR  *Clare Berryhill*          DATE  3-7-82          RW 3-14

Exhibit 7 - Page 71



**THE STATE BAR
OF CALIFORNIA**

OFFICE OF LEGISLATIVE AFFAIRS

1100 ELEVENTH STREET, SUITE 315, SACRAMENTO, CALIFORNIA 95814                    (916) 444-2762

July 25, 1984

The Honorable Elihu M. Harris
Assembly Member, 13th District
State Capitol, Room 6031
Sacramento, CA  95814

        RE:  AB 501 (Harris) – Trade Secrets

Dear Assembly Member Harris:

        The Conference of Delegates of the State Bar of California,
joining with the Patent, Trademark and Copyright Section opposes
AB 501, your bill relating to trade secrets.  We wholeheartedly
agree with the concept of a uniform law in this area, but have
found this specific proposal to be seriously lacking in its
definition of "trade secret".  While the Commissioners on
Uniform Laws have acceded to other of our suggestions for changes
to the uniform law, they, in the name of uniformity, appear
immutable on the subject of changing the definition to reflect
the current state of trade secret law.

        The American Bar Association's Patent, Trademark and
Copyright Section, and the American Patent Law Association wrote
a letter to the California legislature making it clear that all
the organized bars throughout the nation which first supported
the uniform law, after reading it more closely, have withdrawn
their support.  This is what we are seeing in California with AB
501.  The attorneys who deal on a daily basis with trade secret
law are virtually unanimous in their opposition to the definition
of trade secret found in AB 501.

        There are two major problems with the definition of trade
secret found in AB 501.  Currently California enjoys a uniformity
of definition between the Penal Code provisions (P.C. §499c) and
the body of civil law on trade secrets (our case law derives
ultimately from the Restatement).  Under case law, trade secrets
"may consist of any formula, pattern, device or compilation of
information which is used in one's business and which gives him
an opportunity to obtain an advantage over competitors who do not
know or use it" (260 C.A.2d 251).  The Penal Code provision
essentially specifies information which is secret and affords a
business advantage.

        These two definitions have proven quite workable over the
years.  However, AB 501 proposes to introduce an inconsistent
definition, creating a double standard of justice in California.

Exhibit 7 - Page 72

The Honorable Elihu M. Harris
July 25, 1984
Page 2


The second problem deals with the definition itself.  The
definition proposed in the bill reads as follows:

> (d) "Trade secret" means information, . . .
> that:
> (1) Derives independent economic value,
> actual or potential, from not being generally
> known to, and not being readily ascertainable
> by proper means by, other persons who can
> obtain economic value from its disclosure or
> use; and
> (2) Is the subject of efforts that are
> reasonable under the circumstances to
> maintain its secrecy.

This definition is viewed as ambiguous, restrictive and
unduly limited by our trade secrets people.  We would propose to
make the following deletions:

> (d) "Trade secret" means information, . . .
> that:
> (1) Derives independent economic value,
> actual or potential, from not being generally
> known to,~~and not being readily ascertainable
> by proper means by, other persons who can
> obtain economic value form its disclosure or
> use~~; and . . . .

Why should the legality of a trade secret depend upon
whether the person to whom a secret is readily ascertainable can
obtain economic value from its disclosure or use?  It may be that
the company or individual is not in the field of the secret's use
and therefore cannot use it, or it may not know to whom to
disclose it for value.  The definitions of "readily ascertain-
able", "other persons" and "economic value" are so ambiguous that
there will be years of uncertainty while their meanings are
litigated.

The uncertainty will be compounded in view of well-
established existing definitions under California law, meaning
the body of case law in the eight states which have enacted the
Uniform Law is nascent.  But we are already seeing cases in which
litigation has arisen over the lack of clarity in the uniform
law.

Exhibit 7 - Page 73

The Honorable Elihu M. Harris
July 25, 1984
Page 3

Adopting the Uniform definition can only serve to spawn litigation. While that might promote full employment for trade secret lawyers, we would prefer to see "trade secrets" defined clearly and in a manner that will equitably balance the rights of those involved.

Trade secrets are the lifeblood of progressive industry in California. Trade secrets are properly regulated by the state in order to balance the equities of residents of the state. California law now defines trade secrets in a manner that has effectively served the state's interests. Adopting the limited and ambiguous definition of AB 501 would clearly be adverse to the state, facilitating the removal of trade secrets from California. Jobs would be lost and many industries would founder.

There is much more that could be said about this bill. I hope that you will agree to meet with us before the hearing so that we can help to work out an equitable compromise to expedite the already-long agenda. *See you August 3d.*

Sincerely,

Judith A. Harper
Legislative Representative

JAH:tlh

Exhibit 7 - Page 74

# NO ANALYSIS REQ'D

460.2

| Department | | Bill Number |
|---|---|---|
| FOOD AND AGRICULTURE | ASSEMBLY REPUBLICAN CAUCUS | AB 501 |
| | | Date Last Amended July 6, 1984 |

☐ — Analysis not required of this bill — Not within scope of responsibility of this department.

☐ — Technical Bill — No program or fiscal changes to existing program.

☐ — Bill as amended no longer within scope of responsibility or program of the department and should be reviewed for reassignment to another department.

☐ — Technical Amendment   No change in previously submitted analysis required. Approved position of prior analysis is _____.

☐ — Minor Amendment — Previously submitted analysis still valid.  Previously approved position is _____

☒ — Minor Amendment — No change in approved position of  OPPOSE    See comments below.       unless amended

☐ — Other

Comments:   The amendments of July 6, 1984, change the bill in two minor respects.

1.  Damages for willful or malicious appropriation of a trade secret increased from twice to three times the amount of any award for actual damages or reasonable royalty, and

2.  effective date of the bill changed to January 1, 1985.

The department remains opposed to the bill because of the undue liability it would impose on governmental entities.

To remove the concerns addressed above and in previous analyses, Section 3426.7 (pg. 4, line 13) should be amended to read: "(b) This title does not affect the disclosure of a public record by a state or local agency under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).  Any determination as to whether the disclosure of a public record under the California Public Records Act constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this bill."

NOTE:  The author accepted our suggested amendment just prior to the 8/7 hearing in S. Judiciary & all. With this amendment, our opposition is removed

| Department | | Date |
|---|---|---|
| [signature] | | 8-8 |

Exhibit 7 - Page 75



SENATE COMMITTEE ON JUDICIARY
Barry Keene, Chairman
1983-84 Regular Session

AB 501 (Harris)                                          A
As amended July 6                                        B
Civil Code and Code of Civil Procedure
BW                                                       5
                                                         0
                                                         1

UNIFORM TRADE SECRETS ACT


HISTORY


Source:   National Conference of Commissioners on
          Uniform State Laws

Prior Legislation:  None

Support:  General Electric; Ford Motor Company

Opposition:  American Electronics Association;
             Patent, Trademark, and Copyright
             Section of the State Bar;
             Conference of Delegates of the
             State Bar; Genest Technologies;
             Paramount Fitness Equipment Corp.,
             Ltd; Terminal Data Corp; JBL, Inc.

Assembly Floor Vote:  Ayes 76 - Noes 0

KEY ISSUE

SHOULD MODEL LEGISLATION RECOMMENDED BY THE
NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM
STATE LAWS GOVERNING CIVIL REMEDIES FOR
MISAPPROPRIATION OF TRADE SECRETS BE ENACTED?


(More)





Exhibit 7 - Page 76



AB 501 (Harris)
Page 2

## PURPOSE

Existing law contains a number of provisions concerning the dissemination of trade secrets.

This bill would establish a statutory scheme--the Uniform Trade Secrets Act--to protect confidential business information.  In particular, the bill would:

- --provide for the enjoining of actual or threatened misappropriation of a trade secret;

- --permit a complainant to recover actual damages or unjust enrichment for the loss caused by the improper acquisition or disclosure of a trade secret.  If neither damages nor unjust enrichment caused by misappropriation were provable, the court could order payment of a reasonable royalty for no longer that the period the use could have been prohibited.  Treble exemplary damages would be permitted for willful or malicious misappropriation;

- --authorize the award of reasonable attorneys' fees to the prevailing party when a claim of misappropriation was made in bad faith, or a motion to terminate an injunction was made or resisted in bad faith, or where willful or malicious misappropriation was found.

The purpose of the bill is to codify further the laws governing misappropriation of trade secrets through the enactment of model legislation.



(More)

Exhibit 7 - Page 77



AB 501 (Harris)
Page 3

## COMMENT

1.  <u>Highlights of analysis</u>

    --The bill would create a new definition of
      the term "trade secret."  (See Comment 3).

    --The Patent, Trademark, and Copyright Section
      of the State Bar prefers that the present
      definition of "trade secret" remain in
      force.  (See Comment 4).

    --Despite the novel provisions of the Act,
      trade secret law currently in force would
      govern the issue of whether disclosure of a
      public record constituted an unauthorized
      misappropriation. (See Comment 5).

    --Non-controversial provisions of the bill are
      summarized in Comment 6.

2.  <u>Brainchild of the National Conference</u>

    In 1979, the Uniform Trade Secrets Act,
    written by the National Conference of
    Commissioners on Uniform State Laws
    (hereinafter "National Conference") was
    recommended for enactment in all states by
    that body, and was approved by the American
    Bar Association in 1980.  Eight other states
    (Minnesota, Kansas, Idaho, Washington,
    Arkansas, Delaware, Louisiana, and Indiana)
    have passed a version of this legislation.

    The National Conference drafted the Act
    because it thought that in general "there
    [was] undue uncertainty concerning the



                                        (More)

Exhibit 7 - Page 78



.AB 501 (Harris)
Page 4

parameter of trade secret protection, and the appropriate remedies for misappropriation of a trade secret."  Although both the Act and traditional trade secret law contain general concepts, the main contribution of the Act, it is stated, is that it creates unitary definitions of the terms "trade secret" and "misappropriation," and prescribes a single statute of limitations for the various property, quasi-contractual, and breach of fiduciary relationship theories of noncontractual liability utilized under common law.  The sponsor believes that the Act codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

3.   The parameters of a trade secret

(a)  Current definition of a trade secret

Under existing case law trade secrets "may consist of any formula, pattern, device, or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  Diodes, Inc. V. Franzen, 260 Cal. App. 2d 244 at 251 (1968).  Penal Code 499c, the criminal statute prohibiting misappropriation of confidential business information, sets forth a comparable definition.



(More)

Exhibit 7 - Page 79



AB 501 (Harris)
Page 5

    (b) <u>New meaning under the Act</u>

The bill eschews the existing definition of a trade secret in favor of a new one: information that (1) derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

4.   <u>State Bar objections to the new definition</u>

The Patent, Trademark, and Copyright Section of the State Bar strongly opposes this change.

    (a) <u>Difficulty in determining what is readily ascertainable</u>

That group argues that inclusion of the phrase "readily ascertainable" only muddles the meaning of the term trade secret.  If a scientist time could discover within six months time a complex formula through reverse engineering or a literature search, the confidential information could be considered readily ascertainable.  The Bar questions whether a firm would have an actionable claim if a competitor misappropriated business information which it soon would have discovered through legitimate scientific means.

(More)



Exhibit 7 - Page 80



AB 501 (Harris)
Page 6

> This opponent believes that making the existence of a trade secret dependent upon the information not being "readily ascertainable" invites the various parties to speculate on the time needed to discover a secret. See, e.g., <u>Steenhoven v. College Life Ins. Co. of America</u>, 458 N.E. 661 (1984) (Ind. App. Ct.). <u>on rehearing</u> 460 N.E. 973 (1984). (This case concerned the issue of whether insurance company policyholder information was "readily" ascertainable).

(b) <u>Different definition under the criminal statute</u>

> Further, the State Bar Section notes, since the Penal Code Section 499c definition contains no such requirement, adoption of this formulate would divorce the civil law definition of a trade secret from the criminal law one, thereby generating unneeded confusion.

(c) <u>Possible loss of jobs to other states</u>

> Finally, this opponent fears that passage of the bill would endanger the confidentiality of the trade secrets of firms doing business in California. If companies doing business in other jurisdiction obtained this information, commerce and jobs could conceivably flow out of state.



(More)

Exhibit 7 - Page 81

# ANALYSIS

480.1

| | AUTHOR | BILL NUMBER |
|---|---|---|
| **MENT** FOOD AND AGRICULTURE | Assemblyman Harris | AB 3738 |
| **SORED BY** Department of Food and Agriculture | RELATED BILLS | DATE LAST AMENDED May 12, 1982 |

**LL** SUMMARY

MAJOR BILL /___/

### SUMMARY

This Act provides that actual or threatened misappropriation (as defined in the Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

### Specific Findings:

In the Amendment, the author deleted his definition of "Trade Secret" and recognized the definition in Section 6254.7 of the Government Code. Other changes also recognize existing law.

### Fiscal Impact:

AB 3738, as amended and in its original form, could expose the Department to liability for an error of judgment by staff who must process Public Records Act requests.

### Conclusion:

These changes, in the May 12, 1982 version, do not affect the prior analysis of this Bill.

TATE-MANDATED LOCAL PROGRAM   Yes /___/   No /___/   $ _____

FICIAL POSITION:
OPPOSE

| | | | |
|---|---|---|---|
| PARTMENT DIRECTOR | | | DATE |

| Governor's office use |
|---|
| Position noted |
| Position approved |
| Position disapproved |
| by: _____ date: _____ |

Exhibit 7 - Page 82



AB 501 (Harris)
Page 7

(d)   <u>Amendments sought by the Bar Section</u>

The Bar wants the disputed language--i.e.,
ready ascertainability by other persons
who can obtain economic value from
disclosure or use--deleted from the
definition of trade secret.  This change,
the opponent states, would eliminate the
perceived ambiguity and conform the
definition under the Act with the meaning
of trade secrets under the criminal
statute.

5.   <u>Disclosure of trade secrets under the Public
Records Act</u>

(a)   <u>Relevant provisions of the bill</u>

The bill specifies that passage of the Act
would not affect the disclosure of
information by state or local agencies
under the Public Records Act.  That
statute exempts agencies from releasing
records which may not be disclosed
pursuant to other provisions of state law.

The determination of whether the
disclosure of a public record constitutes
a misappropriation of a trade secret would
be made under the law in effect before the
operative date of this bill.

(b)   <u>Industry objections</u>

The American Electronics Association
complains that the latter provision would
freeze the evolution of trade secret law.

(More)



Exhibit 7 - Page 83



AB 501 (Harris)
Page 8

> While all cases of misappropriation not
> involving the disclosure of public records
> would be governed by the law contained in
> the Uniform Trade Secrets Act, in those
> instances involving the release of
> official records, the law superseded by
> the Act would apply.

> SHOULD NOT THE BILL SET FORTH A UNIFIED
> BODY OF TRADE SECRET LAW, INSTEAD OF
> ESTABLISHING SEPARATE RULES FOR THOSE
> CASES CONCERNING THE DISCLOSURE OF PUBLIC
> RECORDS?

6. <u>Other provisions of AB 501</u>

   (a) <u>Litigation procedures in trade secret
      cases</u>

> The bill would provide that, in any action
> alleging misappropriation under the Act,
> before commencing discovery relating to
> the trade secret, the party alleging the
> misappropriation would have to identify
> the trade secret with reasonable
> particularity, subject to any protective
> orders which may be appropriate.  Further,
> a court could use reasonable means, such
> as protective orders, sealing of records,
> and in-camera hearings, to preserve the
> secrecy of a trade secret in an action
> under the Act.

   (b) <u>No effect on existing statutes or
      contracts</u>



(More)

Exhibit 7 - Page 84



AB 501 (Harris)
Page 9

AB 501 would provide that the Act would not affect any contractual rights or remedies and that, except as otherwise expressly provided, it would not supersede any statute relating to the misappropriation of a trade secret.

(c) Effective date of the Act

The bill's provisions would not apply to misappropriations occurring prior to January 1, 1985.  The Act would apply to the part of a continuing misappropriation occurring on or after that date, unless it was not a misappropriation under the law in effect before the bill's operative date.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



Exhibit 7 - Page 85

STATE OF CALIFORNIA

GEORGE DEUKMEJIAN, *Govern*

# DEPARTMENT OF FOOD AND AGRICULTURE



Proposed amendment to AB 501 as amended July 6, 1984:

*Amendment taken for Senate flor.*
*6/14/84*

at page 4 of the bill, line 13

3426.7

(b) This title does not affect the disclosure of a ~~public~~ record
by a state or local agency under the California Public Records Act (Chapter
3.5 (commencing with Section 6250) of Division 7 of Title 1 of the
Government Code). Any determination as to whether the disclosure of a
~~public~~ record <u>under the California Public Records Act</u> constitutes a
misappropriation of a trade secret and the rights and remedies with respect
thereto shall be made pursuant to the law in effect before the operative
date of this title.

Exhibit 7 - Page 86

## REPORT OF SENATE COMMITTEE ON JUDICIARY
### ON ASSEMBLY BILL 501

In order to indicate more fully its intent with respect to Assembly Bill 501, the Senate Committee on Judiciary makes the following report.

Assembly Bill 501 was introduced to effectuate the recommendation of the California Commission on Uniform State Laws that the Uniform Trade Secrets Act promulgated by the National Conference of Commissioners on Uniform State Laws be adopted in California. Except for the new comment set out below, the Comments of the National Conference with respect to the Act reflect the intent of the Senate Committee on Judiciary in approving Assembly Bill 501.

Section 3426.1 of the Code of Civil Procedure

Comment. One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics." Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974). The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1.  Discovery by independent invention;

2.  Discovery by "reverse engineering," that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful;

3.  Discovery under a license from the owner of the trade secret;

4.  Observation of the item in public use or on public display;

5.  Obtaining the trade secret from published literature.

Improper means could include otherwise lawful conduct which is improper under the circumstances; e.g., an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant. E.I. du Pont de Nemours & Co., Inc. v. Christopher, 431 F.2d 1012 (CA 5, 1970), cert. den. 400 U.S. 1924 (1970). Because the trade secret can be destroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

Exhibit 7 - Page 87

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will not work could be of great value to a competitor.

Cf. Telex Corp. v. IBM Corp., 510 F.2d 894 (CA 10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for developmental cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to the public or to other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

The phrase "and not being readily ascertainable by proper means by" was included in this section as originally proposed by the National Conference of Commissioners on Uniform State Laws. It was removed from the section in favor of the phrase "the public or to." This change was made because the original language was viewed as ambiguous in the definition of a trade secret. However, the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

Exhibit 7 - Page 88

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis," and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets against flagrant industrial espionage. See E.I. du Pont de Nemours & Co., Inc. v. Christopher, supra. It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

Exhibit 7 - Page 89

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 7 - Page 90

AMENDED IN SENATE AUGUST 15, 1984

AMENDED IN SENATE JULY 6, 1984

AMENDED IN ASSEMBLY MAY 3, 1983

AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983–84 REGULAR SESSION

# ASSEMBLY BILL                No. 501

## Introduced by Assemblyman Harris

### February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.    Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

95    40

Exhibit 7 - Page 91

AB 501                           — 2 —

# TITLE 5.   UNIFORM TRADE SECRETS ACT

1
2
3   3426.   This title may be cited as the Uniform Trade
4   Secrets Act.
5   3426.1.   As used in this title, unless the context requires
6   otherwise:
7   (a) "Improper means" includes theft, bribery,
8   misrepresentation, breach or inducement of a breach of
9   a duty to maintain secrecy, or espionage through
10   electronic or other means.   *Reverse engineering or*
11   *independent derivation alone shall not be considered*
12   *improper means.*
13   (b) "Misappropriation" means:
14   (1) Acquisition of a trade secret of another by a person
15   who knows or has reason to know that the trade secret
16   was acquired by improper means; or
17   (2) Disclosure or use of a trade secret of another
18   without express or implied consent by a person who:
19   (A) Used improper means to acquire knowledge of
20   the trade secret; or
21   (B) At the time of disclosure or use, knew or had
22   reason to know that his or her knowledge of the trade
23   secret was:
24   (i) Derived from or through a person who had utilized
25   improper means to acquire it;
26   (ii) Acquired under circumstances giving rise to a
27   duty to maintain its secrecy or limit its use; or
28   (iii) Derived from or through a person who owed a
29   duty to the person seeking relief to maintain its secrecy
30   or limit its use; or
31   (C) Before a material change of his or her position,
32   knew or had reason to know that it was a trade secret and
33   that knowledge of it had been acquired by accident or
34   mistake.
35   (c) "Person" means a natural person, corporation,
36   business trust, estate, trust, partnership, association, joint
37   venture, government, governmental subdivision or
38   agency, or any other legal or commercial entity.
39   (d) "Trade secret" means information, including a
40   formula, pattern, compilation, program, device, method,

95   50

Exhibit 7 - Page 92

# GENERAL ⊛ ELECTRIC

**NUCLEAR ENERGY BUSINESS OPERATIONS**
GENERAL ELECTRIC COMPANY ● 175 CURTNER AVENUE ● SAN JOSE, CALIFORNIA 95125

March 29, 1983

IJJ-061-83

Assemblyman Elihu M. Harris
State Capitol
Sacramento, California 95814

Subject:  COMMENTS OF GENERAL ELECTRIC COMPANY RESPECTING THE
          PROPOSED CALIFORNIA UNIFORM TRADE SECRETS ACT
             -   Assembly Bill No. 501   -  Harris

Dear Assemblyman Harris:

We have carefully reviewed Assembly Bill No. 501 which you introduced
on February 7, 1983.  It appears very similar to Assembly Bill No. 3738
which you introduced last year.  We note that the text of Assembly Bill
No. 501 is patterned generally after the Uniform Trade Secrets Act
("Uniform Act") drafted by the National Conference of Commissioners on
Uniform State Laws in 1979 and adopted in several other States,
specifically Minnesota, Kansas, Idaho, Washington, Arkansas, Delaware,
Louisiana, and Indiana.

Especially considering the extent to which the so-called "high
technology" industry of the United States is centered within California
and the recent publicity alleging existence of predatory practices by
foreign organizations in illicit acquisition of others' high technology
trade secrets, we believe that establishment of a Uniform Trade Secrets
Act in California is advantageous.  General Electric Company therefore
supports this proposed legislation, subject to adoption of several changes
which we believe highly desirable.

The principal changes we propose are discussed below in some detail,
and are illustrated in annotations to the attached copy of Assembly Bill
No. 501.

## Section 3426.3(b) - Reasonable Royalties

We urge that a new Section 3426.3(b) be added to allow for an award
of reasonable royalties when damages and unjust enrichment are not provable.
A circumstance in which this remedy would be appropriate is one in which
misappropriated information concerns an unsuccessful line of experimenta-
tion, which information would save the misappropriator from spending R&D
funds needlessly, but would not necessarily result in provable damages or
unjust enrichment.  The proposed change reflects Resolution No. 206-4

Exhibit 7 - Page 93

— 3 —                                                            AB 501

1  technique, or process, that:
2      (1). Derives independent economic value, actual or
3  potential, from not being generally known to ; and not
4  being readily ascertainable by proper means by, *the*
5  *public or to* other persons who can obtain economic value
6  from its disclosure or use; and
7      (2) Is the subject of efforts that are reasonable under
8  the circumstances to maintain its secrecy.
9      3426.2.   (a) Actual or threatened misappropriation
10  may be enjoined. Upon application to the court, an
11  injunction shall be terminated when the trade secret has
12  ceased to exist, but the injunction may be continued for
13  an additional period of time in order to eliminate
14  commercial advantage that otherwise would be derived
15  from the misappropriation.
16      (b) If the court determines that it would be
17  unreasonable to prohibit future use, an injunction may
18  condition future use upon payment of a reasonable
19  royalty for no longer than the period of time the use could
20  have been prohibited.
21      (c) In appropriate circumstances, affirmative acts to
22  protect a trade secret may be compelled by court order.
23      3426.3.   (a) A complainant may recover damages for
24  the actual loss caused by misappropriation. A
25  complainant also may recover for the unjust enrichment
26  caused by misappropriation that is not taken into account
27  in computing damages for actual loss.
28      (b) If neither damages nor unjust enrichment caused
29  by misappropriation are provable, the court may order
30  payment of a reasonable royalty for no longer than the
31  period of time the use could have been prohibited.
32      (c) If willful or *and* malicious misappropriation exists,
33  the court may award exemplary damages in an amount
34  not exceeding three times the amount of *twice* any award
35  made under subdivision (a) or (b).
36      3426.4.   If a claim of misappropriation is made in bad
37  faith, a motion to terminate an injunction is made or
38  resisted in bad faith, or willful or *and* malicious
39  misappropriation exists, the court may award reasonable
40  attorney's fees to the prevailing party.

95  70

Exhibit 7 - Page 94

AB 501 — 4 —

1   3426.5.   In an action under this title, a court shall
2   preserve the secrecy of an alleged trade secret by
3   reasonable means, which may include granting
4   protective orders in connection with discovery
5   proceedings, holding in-camera hearings, sealing the
6   records of the action, and ordering any person involved
7   in the litigation not to disclose an alleged trade secret
8   without prior court approval.

9   3426.6.   An action for misappropriation must be
10  brought within three years after the misappropriation is
11  discovered or by the exercise of reasonable diligence
12  should have been discovered. For the purposes of this
13  section, a continuing misappropriation constitutes a
14  single claim.

15  3426.7.   (a) Except as otherwise expressly provided,
16  this title does not supersede any statute relating to
17  misappropriation of a trade secret, or any statute
18  otherwise regulating trade secrets.

19  *(b) This title does not affect (1) contractual remedies,*
20  *whether or not based upon misappropriation of a trade*
21  *secret, (2) other civil remedies that are not based upon*
22  *misappropriation of a trade secret, or (3) criminal*
23  *remedies, whether or not based upon misappropriation*
24  *of a trade secret.*

25  ~~(b)~~
26  *(c)*   This title does not affect the disclosure of a ~~public~~
27  record by a state or local agency under the California
28  Public Records Act (Chapter 3.5 (commencing with
29  Section 6250) of Division 7 of Title 1 of the Government
30  Code). Any determination as to whether the disclosure of
31  a ~~public~~ record *under the California Public Records Act*
32  constitutes a misappropriation of a trade secret and the
33  rights and remedies with respect thereto shall be made
34  pursuant to the law in effect before the operative date of
35  this title.

36  ~~3426.8.   This title does not affect any contractual rights~~
37  ~~or remedies.~~

38  ~~3426.9.~~
39  *3426.8.*   This title shall be applied and construed to
40  effectuate its general purpose to make uniform the law

95   110

Exhibit 7 - Page 95

1  with respect to the subject of this title among states
2  enacting it.
3  ~~3426.10.~~
4  *3426.9.*   If any provision of this title or its application
5  to any person or circumstances is held invalid, the
6  invalidity does not affect other provisions or applications
7  of the title which can be given effect without the invalid
8  provision or application, and to this end the provisions of
9  this title are severable.
10  ~~3426.11.~~
11  *3426.10.*   This title does not apply to misappropriation
12  occurring prior to January 1, 1985. If a continuing
13  misappropriation otherwise covered by this title began
14  before January 1, 1985, this title does not apply to the part
15  of the misappropriation occurring before that date. This
16  title does apply to the part of the misappropriation
17  occurring on or after that date unless the appropriation
18  was not a misappropriation under the law in effect before
19  the operative date of this title.
20  SEC. 2.   Section 2036.2 is added to the Code of Civil
21  Procdure, to read:
22  2036.2.   In any action alleging the misappropration of
23  a trade secret under the Uniform Trade Secrets Act
24  (Title 5 (commencing with Section 3426) of Part 1 of
25  Division 4 of the Civil Code), before commencing
26  discovery relating to the trade secret under Chapter 2
27  (commencing with   Section   1985)   or   Article   3
28  (commencing with Section 2016) of Chapter 3 of this
29  title, the party alleging the misappropriation shall
30  identify the trade secret with reasonable particularity
31  subject to any orders which may be appropriate under
32  Section 3426.5 of the Civil Code.

O

95   120

Exhibit 7 - Page 96

## BLANK PAGE

Artifact of Photocopy Reproduction

### JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 7 - Page 97

Volume 8

# Journal of the Senate

## Legislature of the State of California

### 1983–1984 Regular Session
### 1983–1984 First Extraordinary Session
### 1983–1984 Second Extraordinary Session



HON. LEO T. McCARTHY
President of the Senate

HON. DAVID ROBERTI
President pro Tempore

DARRYL R. WHITE
Secretary of the Senate

0   0 0 55

Exhibit 7 - Page 98

**Motion to Amend**

The amendments to AB 2909, proposed by Senator Maddy, were read and adopted and the bill ordered printed and to third reading.

## MOTIONS TO TAKE BILLS FROM THE INACTIVE FILE

Senator Torres moved that **AB 3422** and **AB 3081** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Doolittle moved that **AB 1716** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Seymour moved that **AB 3873** be taken from the inactive file and placed on the third reading file.

Motion carried.

## MOTION TO PRINT IN JOURNAL

Senator Keene moved that the following report be printed in the Journal.

Motion carried.

### REPORT OF SENATE COMMITTEE ON JUDICIARY ON ASSEMBLY BILL 501

In order to indicate more fully its intent with respect to Assembly Bill 501, the Senate Committee on Judiciary makes the following report.

Assembly Bill 501 was introduced to effectuate the recommendation of the California Commission on Uniform State Laws that the Uniform Trade Secrets Act promulgated by the National Conference of Commissioners on Uniform State Laws be adopted in California. Except for the new comment set out below, the comments of the national conference with respect to the act reflect the intent of the Senate Committee on Judiciary in approving Assembly Bill 501.

*Section 3426.1 of the Code of Civil Procedure*

*Comment.*   One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics." *Kewanee Oil Co.* v. *Bicron Corp.,* 416 U.S. 470 (1974). The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1. Discovery by independent invention;

2. Discovery by "reverse engineering," that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful;

3. Discovery under a license from the owner of the trade secret;

4. Observation of the item in public use or on public display;

5. Obtaining the trade secret from published literature.

484   N27 R2 I3

Exhibit 7 - Page 99

Improper means could include otherwise lawful conduct which is improper under the circumstances; *e.g.*, an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant. *E.I. du Pont de Nemours & Co., Inc.* v. *Christopher,* 431 F.2d 1012 (CA 5, 1970), cert. den. 400 U.S. 1024 (1970). Because the trade secret can be destroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will *not* work could be of great value to a competitor.

*Cf. Telex Corp.* v. *IBM Corp.,* 510 F.2d 894 (CA 10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for developmental cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to the public or to other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

The phrase "and not being readily ascertainable by proper means by" was included in this section as originally proposed by the National Conference of Commissioners on Uniform State Laws. It was removed from the section in favor of the phrase "the public or to." This change was made because the original language was viewed as ambiguous in the definition of a trade secret. However, the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

Exhibit 7 - Page 100

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis," and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets against flagrant industrial espionage. See *E.I. du Pont de Nemours & Co., Inc.* v. *Christopher, supra.* It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

### REQUEST FOR UNANIMOUS CONSENT (AB 4006)

Senator Keene asked for, and was granted, unanimous consent to rescind the action whereby AB 4006 was passed to the Assembly.

Bill ordered returned to third reading.

### CONSIDERATION OF DAILY FILE (RESUMED)
### MOTIONS TO TAKE BILLS FROM THE INACTIVE FILE

Senator Deddeh moved that **AB 3826** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Leroy Greene moved that **AB 2635** be taken from the inactive file and placed on the third reading file.

Motion carried.

### MESSAGES FROM THE ASSEMBLY

Sacramento, August 27, 1984

*Hon. Darryl White, Secretary of the Senate*

Dear Darryl: The Assembly on this day suspended Joint Rule 28.1 as it pertains to AB 2185 and respectfully requests the Senate to do the same.

Sincerely,

JAMES D. DRISCOLL, Chief Clerk

### MOTION TO SUSPEND JOINT RULE 28.1

Senator Nielsen moved to suspend Joint Rule 28.1 as it pertains to AB 2185.

#### Roll Call

The roll was called and the motion carried by the following vote:

AYES (40)—Senators Alquist, Ayala, Beverly, Boatwright, Campbell, Carpenter, Craven, Davis, Deddeh, Dills, Doolittle, Ellis, Foran, Garamendi, Bill Greene, Leroy Greene, Hart, Johnson, Keene, Lockyer, Maddy, Marks, McCorquodale, Mello, Montoya, Nielsen, Petris, Presley, Richardson, Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Speraw, Stiern, Torres, Vuich, and Watson.

NOES (0)—None.

Exhibit 7 - Page 101

# SENATE REPUBLICAN CAUCUS
**SENATOR JOHN SEYMOUR, Chairman**

POSITIONS:
SOURCE: National Conference of Commissioners
         on Uniform State Laws

SUPPORT: General Electric
         Ford Motor Company

BILL NUMBER: AB 501

AUTHOR: Harris

AMENDED COPY: 8/15/84
    MAJORITY VOTE

Committee Votes:



Senate Floor Vote:

Assembly Floor Vote:  76-0, Pg. 3439 (5/5/83)

DIGEST

This bill would establish the Uniform Trade Secrets Act to provide civil remedies for misappropriation of trade secrets.

FISCAL EFFECT: Appropriation: No.   Fiscal Committee: No.   Local: No.

None.

COMMENTS:
Existing law provides criminal penalties for misappropriation of trade secrets but does not provide civil remedies.

This bill provides civil remedies for misappropriation of trade secrets by establishing the Uniform Trade Secrets Act.  Specifically, the bill:

1) Defines a "trade secret" as information which is a source of economic benefit to its possessor because it is not generally known and reasonable efforts are made to maintain its secrecy.

2) Provides for the enjoining of actual or threatened misappropriation, as defined, of a trade secret.

3) Allows a complainant, who would be required to identify the particular trade secret, to recover damages for losses or unjust enrichment caused by the misappropriation.  If damages or unjust enrichment could not be proved, the court could order payment of a reasonable royalty for a limited time.  Exemplary damages would be permitted for willful or malicious misappropriation.

NEXT PAGE

Exhibit 7 - Page 102

**ANALYSIS CONTINUED:**      **PAGE:** 2      **BILL NUMBER:** AB 501

4) Authorizes an award of reasonable attorney's fees to the prevailing party if bad faith or willful and malicious misappropriation was found.

5) Directs the courts to use reasonable means, such as in-camera hearings or sealing of court records, to protect the trade secrets from disclosure during court proceedings.

6) Provides that this bill would not affect the disclosure of a public record by a state or public agency. Any determination of whether the disclosure of a public record would constitute a misappropriate of a trade secret would be made pursuant to the law in effect before the operative date of this bill.

7) Specifies a statute of limitations for acts occurring before January 1, 1985.

8/15/84/VW/nf

Exhibit 7 - Page 103

**GENERAL ⊛ ELECTRIC**

Assemblyman Elihu M. Harris
March 29, 1983
Page 2

adopted by the American Bar Association's Patent, Trademark, and Copyright Law Section, August, 1981 Meeting (copy attached).  Similar language was also used in Section 24-2-3-3(b) of the Indiana Code, copy attached.

Adoption of new Section 3426.3(b) as proposed above would require redesignation of Section 3426.3(b) in Assembly Bill No. 501 as 3426.3(c). Further, addition of a reference to redesignated Section 3426.3(b) at the end of redesignated Section 3426.3(c) would seem appropriate.  These editorial changes are also shown on the attached Assembly Bill No. 501 annotated.

Section 3426.8 - Contractual Rights and Remedies

We urge that a new Section 3426.8 be added to clarify that contractual rights and remedies for trade secret misappropriation are not affected by Assembly Bill No. 501.  Judging from the Assembly's Judiciary Committee analysis of Assembly Bill No. 3738 last year, the proposed amendment reflects the intent of the authors of that Bill.  From our viewpoint, the amendment clarifies what could be an obstacle in future litigation.  This type of amendment is supported by Resolution No. 206-3 adopted by the ABA Patent, Trademark, and Copyright Section Meeting of August, 1981 referred to above, copy attached.  Although slightly differently worded, Section 24-2-3-1(c) of the Indiana Statute, copy attached, reflects this same intent.

Adoption of new Section 3426.8 as proposed above would require redesignation of Sections 3426.8, 3426.9, and 3426.10 as Sections 3426.9, 3426.10 and 3426.11, respectively.  These editorial changes are also shown on the attached Assembly Bill No. 501 annotated.

Section 3426.12 - Continuing Misappropriation

We urge that new Section 3426.12 be added to supplement Section 3426.10 (redesignated Section 3426.11 in the attached Assembly Bill No. 501 annotated) to clarify the status of trade secret misappropriations continuing through the effective date of the Act.  This amendment would obviously be useful in cases of misappropriations beginning before and continuing through January 1, 1984, and would not appear to be controversial.  Indiana Code Section 24-2-3-8 is relevant, copy attached, and our proposed Section 3426.12 is patterned after that Indiana Code Section.

Exhibit 7 - Page 104

AB   501

CONCURRENCE IN SENATE AMENDMENTS

AB   501   (_____Harris_____)  As Amended:  August 15, 1984

ASSEMBLY VOTE  76-0  (  May 5, 1983  ) SENATE VOTE  40-0  (August 27, 1984)

Original Committee Reference:  JUD.

DIGEST

Existing law provides criminal penalties for misappropriation of trade
secrets but does not provide civil remedies.

As passed by the Assembly, this bill provided civil remedies for misappropriation
of trade secrets by establishing the Uniform Trade Secrets Act.

Specifically, the bill:

1)  Defined a "trade secret" as information which is a source of economic
    benefit to its possessor because it is not generally known or readily
    ascertainable, and reasonable efforts are made to maintain its secrecy.

2)  Provided for the enjoining of actual or threatened misappropriation, as
    defined, of a trade secret.

3)  Allowed a complainant, who would be required to identify the particular
    trade secret, to recover damages for losses or unjust enrichment caused by
    the misappropriation.  If damages or unjust enrichment could not be
    proved, the court could order payment of a reasonable royalty for a
    limited time.  Exemplary damages would be permitted for willful or
    malicious misappropriation.

4)  Authorized an award of reasonable attorney's fees to the prevailing party
    if bad faith or willful and malicious misappropriation was found.

5)  Directed the courts to use reasonable means, such as in-camera hearings or
    sealing of court records, to protect the trade secrets from disclosure
    during court proceedings.

6)  Provided that this bill would not affect the disclosure of a public record
    by a state or public agency.  Any determination of whether the disclosure
    of a public record would constitute a misappropriation of a trade secret
    would be made pursuant to the law in effect before the operative date of
    this bill.

7)  Specified a statute of limitations for acts occurring before January 1,
    1984.

-continued-

ASSEMBLY OFFICE OF RESEARCH                    AB   501

Exhibit 7 - Page 105

AB 501
Page 2

The Senate amendments:

1) Provide that reverse engineering or independent derivation alone will not be considered improper means of obtaining trade secrets.

2) Delete from the definition of "trade secret" information which is not readily available by proper means.

3) Provide that before commencing action under the bill, a complainant must identify the trade secret with reasonable particularity.

4) Authorize an award of reasonable attorney's fees to the prevailing party if willful or malicious misappropriation is found.

5) Provide that this title does not affect any of the following, whether or not they are based on misappropriation of a trade secret:

   a) Contractual remedies.

   b) Other civil remedies.

   c) Criminal remedies.

6) Extend the statute of limitations to acts occurring before January 1, 1985.

FISCAL EFFECT

None

Exhibit 7 - Page 106



DISTRICT OFFICE
1111 JACKSON STREET
SUITE 5027
OAKLAND, CALIFORNIA 94607
(415) 464-0339

SACRAMENTO ADDRESS
STATE CAPITOL
SACRAMENTO, CALIFORNIA 95814
(916) 445-7442

# Assembly
# California Legislature

COMMITTEES
CHAIRMAN
JUDICIARY
CRIMINAL LAW & PUBLIC SAFETY
FINANCE & INSURANCE
TRANSPORTATION

ELIHU M. HARRIS
ASSEMBLYMAN, THIRTEENTH DISTRICT

September 12, 1984

The Honorable George Deukmejian
Governor
State of California
State Capitol
Sacramento, California  95814

ATTN:  Bob Williams

Dear Governor Deukmejian:

Assembly Bill 501, which is before you, was introduced at the recommendation of the California Commission on Uniform State Laws for the purpose of enacting the Uniform Trade Secrets Act in California.

A valid patent provides a legal monopoly for seventeen years in exchange for public disclosure of an invention.  If, however, the courts ultimately decide that the Patent Office improperly issued a patent, an invention will have been disclosed to competitors with no corresponding benefit.  In view of the substantial number of patents that are invalidated by the courts, many businesses now elect to protect commercially valuable information through reliance upon the state law of trade secret protection. Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974), which establishes that neither the Patent Clause of the United States Constitution nor the federal patent laws pre-empt state trade secret protection for patentable or unpatentable information, may well have increased the extent of this reliance.

Notwithstanding the commercial importance of state trade secret law to interstate business, this law has not developed satisfactorily.  In the first place, its development is uneven. Although there typically are a substantial number of reported

Exhibit 7 - Page 107

-2-

The Honorable George Deukmejian
September 12, 1984
AB 501


decisions in states that are commercial centers, this is not the case in less populous and more agricultural jurisdictions. Secondly, even in states in which there has been significant litigation, there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret. Nonetheless, the most widely accepted rules of trade secret law, Section 757 of the Restatement of Torts, were among those omitted from the Restatement of Torts, 2d (1978).

The Uniform Act codifies the basic principles of common law trade secret protection, preserving its essential distinctions from patent law.  Like traditional trade secret law, the Uniform Act contains general concepts.  The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law.  The Uniform Act also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

During the past two years the Commission has worked on the bill with the Patent, Trademark, and Copyright Section and representatives of the Conference of Delegates of the State Bar. Both of these groups support the bill in its current form.

Nine other states have currently enacted the Uniform Act.  The enactment of the act in California will assist in bringing clarity and uniformity in this important area of law.

I respectfully request your signature of AB 501.

Sincerely,



ELIHU M. HARRIS

EMH:atd

Exhibit 7 - Page 108



**THE STATE BAR**
**OF CALIFORNIA**

OFFICE OF LEGISLATIVE AFFAIRS

1100 ELEVENTH STREET, SUITE 315, SACRAMENTO, CALIFORNIA 95814          (916) 444-2762

September 6, 1984

The Honorable George Deukmejian
Governor, State Capitol
Sacramento, CA  95814

    Re:  SUPPORT for AB 501 (Harris) — Trade Secrets

Dear Governor Deukmejian:

    The  Conference of Delegates of the State Bar of California,
joining with the Patent, Trademark and Copyright Section urges
your favorable consideration of Assembly Member Harris' AB 501, a
bill that would codify the Uniform Trade Secrets Act.

    We have worked closely with the National Conference of
Commissioners on Uniform State Laws to hone their proposal.  The
result of these efforts, AB 501, will put California at the fore-
front of those states which have adopted the Uniform Law.  The
new definition of trade secret, while somewhat different from the
original language proposed, is the product of intense negotiation
between the attorneys working in trade secrets law and the
Commissioners.

    As more and more states adopt the Uniform Trade Secrets Law,
changes are inevitable, as states tailor the uniform law to fit
their own unique histories or circumstances.  The final version
adopted by the California Legislature is more closely attuned to
California's existing civil case law as well and Penal Code
provisions relating to misappropriation of trade secrets, than
the original version.  The end result is a much better law for
all concerned.

    We sincerely hope that you will agree with us that this is a
much-needed revision of California law.  Thank you for your
consideration and attention.

Sincerely,

Judith A. Harper
Legislative Coordinator

JAH:tlh

cc:  Bion Gregory                          Lowell Anderson
     Assembly Member Elihu Harris✓          Neal S. Millard
     Gregory B. Wood                        David M. Simon
     John Carson                            Terrence P. Conner
     Byard G. Nilsson                       Thomas F. Smegal, Jr.
     Darrell Olson                          Robert H. Cornell

Exhibit 7 - Page 109

765.4

# ENROLLED BILL REPORT

| DEPARTMENT OF FOOD AND AGRICULTURE | | BILL NUMBER |
|---|---|---|
| | AB | 501 |
| | | AUTHOR |
| | | Harris |

SUMMARY

This Act provides that actual or threatened misappropriation (as defined in the Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

As originally introduced, the Department had concerns that the bill would impose some penalties on governmental agencies for inadvertent release trade secret information. Because the Department responds to a large number of requests for information pursuant to the Public Records Act (California Government Code Section 6250, et. seq.), the bill would have presented the possibility that damages would have to be paid for the inadvertent disclosure of trade secret data in our files.

The author accepted our suggested amendments to address these concerns and remove our opposition.

Conclusion

We recommend the Governor sign AB 501.

*This is an industry supported bill intended to protect trade secret information -- something that is necessary to assure adequate research and development by the private sector.*

| Vote: Assembly | Ayes 77 | | Ayes 40 | |
|---|---|---|---|---|
| | Noes 0 | Senate | Noes 0 | |

RECOMMENDATION:

[X] SIGN      [ ] VETO      DEFER TO

| DEPARTMENT DIRECTOR | DATE |
|---|---|
| | 9-7-84 |

Exhibit 7 - Page 110

## Volume 3

# STATUTES OF CALIFORNIA

### AND DIGESTS OF MEASURES

## 1984

Constitution of 1879 as Amended

Measures Submitted to Vote of Electors,
Primary Election, June 5, 1984
and General Election, November 6, 1984

General Laws, Amendments to the Codes, Resolutions,
and Constitutional Amendments passed by the
California Legislature

### 1983–84 Regular Session
### 1983–84 Second Extraordinary Session



*Compiled by*
**BION M. GREGORY**
*Legislative Counsel*

Exhibit 7 - Page 111

Case 2:04-cv-09049-DOC-RNB   Document 8934-7   Filed 10/13/10   Page 54 of 55   Page ID #:273929

written appeal. The fact that an appeal is permitted to both the planning commission and to the governing body does not extend the 60-day period. Notwithstanding a decision pursuant to subdivision (b) that the application and submitted materials are not complete, if the final written determination on the appeal is not made within that 60-day period, the application with the submitted materials shall be deemed complete for the purposes of this chapter.

(d) Nothing in this section precludes an applicant and a public agency from mutually agreeing to an extension of any time limit provided by this section.

(e) This section shall become operative on July 1, 1985, and shall remain in effect only until January 1, 1991, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1991, deletes or extends that date. If that date is not deleted or extended, then, on and after January 1, 1991, pursuant to Section 9611 of the Government Code, Section 65943 of the Government Code, as amended by Section 11 of Chapter 1207 of the Statutes of 1979, shall have the same force and effect as if this temporary provision had not been enacted.

SEC. 2.   Notwithstanding Section 6 of Article XIII B of the California Constitution and Section 2231 or 2234 of the Revenue and Taxation Code, no appropriation is made by this act for the purpose of making reimbursement pursuant to these sections. It is recognized, however, that a local agency or school district may pursue any remedies to obtain reimbursement available to it under Chapter 3 (commencing with Section 2201) of Part 4 of Division 1 of that code.

———

## CHAPTER 1724

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

[Approved by Governor September 30, 1984. Filed with Secretary of State September 30, 1984.]

*The people of the State of California do enact as follows:*

SECTION 1.   Title 5 (commencing with Section 3426) is added to Part 1 of Division 4 of the Civil Code, to read:

### TITLE 5.   UNIFORM TRADE SECRETS ACT

3426.   This title may be cited as the Uniform Trade Secrets Act.

3426.1.   As used in this title, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or

10  05

Exhibit 7 - Page 112

espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means.

(b)  "Misappropriation" means:

(1)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2)  Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A)  Used improper means to acquire knowledge of the trade secret; or

(B)  At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i)  Derived from or through a person who had utilized improper means to acquire it;

(ii)  Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii)  Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C)  Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c)  "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d)  "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1)  Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2)  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

3426.2.  (a)  Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b)  If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c)  In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

3426.3.  (a)  A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken

10  015

Exhibit 7 - Page 113