6254                    STATUTES OF 1984              [ Ch. 1724

into account in computing damages for actual loss.

(b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).

3426.4. If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

3426.5. In an action under this title, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

3426.6. An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

3426.7. (a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

(b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

(c) This title does not affect the disclosure of a record by a state or local agency under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code). Any determination as to whether the disclosure of a record under the California Public Records Act constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title.

3426.8. This title shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this title among states enacting it.

3426.9. If any provision of this title or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the title which can be given effect without the invalid provision or application, and to this end the provisions of this title are severable.

3426.10. This title does not apply to misappropriation occurring prior to January 1, 1985. If a continuing misappropriation otherwise

10  025

Exhibit 7 - Page 114

## GENERAL ⊛ ELECTRIC

Assemblyman Elihu M. Harris
March 29, 1983
Page 3

Conclusion

    We believe the changes proposed above will improve the proposed statute, and we ask favorable consideration of these proposals.

                    Yours very truly,

                    GENERAL ELECTRIC COMPANY

By _____
                    Ivor J. James, Jr.
                    Patent Counsel -
                    Nuclear Energy Business
                      Operations

IJJ/ci

attachments

Exhibit 7 - Page 115

covered by this title began before January 1, 1985, this title does not apply to the part of the misappropriation occurring before that date. This title does apply to the part of the misappropriation occurring on or after that date unless the appropriation was not a misappropriation under the law in effect before the operative date of this title.

SEC. 2.   Section 2036.2 is added to the Code of Civil Procedure, to read:

2036.2.   In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret under Chapter 2 (commencing with Section 1985) or Article 3 (commencing with Section 2016) of Chapter 3 of this title, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders which may be appropriate under Section 3426.5 of the Civil Code.

---

## CHAPTER 1725

An act to amend Section 23161 of, to amend and repeal Sections 23171, 23176, and 23191 of, to add and repeal Sections 23166.1, 23186.1, and 23205.1 of, and to add and repeal Article 3 (commencing with Section 23230) to Chapter 12 of Division 11 of, the Vehicle Code, relating to driving offenses.

[Approved by Governor September 30, 1984. Filed with Secretary of State September 30, 1984.]

*The people of the State of California do enact as follows:*

SECTION 1.   Section 23161 of the Vehicle Code is amended to read:

23161.   (a) Except as provided in subdivision (f), if the court grants probation to any person punished under Section 23160, in addition to the provisions of Section 23206 and any other terms and conditions imposed by the court, the court shall impose as a condition of probation that the person be subject to one of the following:

(1) Be confined in the county jail for at least 48 hours but not more than six months and pay a fine of at least three hundred ninety dollars ($390) but not more than one thousand dollars ($1,000). The court may order the Department of Motor Vehicles to suspend the privilege to operate a motor vehicle pursuant to paragraph (1) of subdivision (a) of Section 13352 when this condition of probation is imposed.

(2) Pay a fine of at least three hundred ninety dollars ($390) but not more than one thousand dollars ($1,000) and have the privilege to operate a motor vehicle restricted for 90 days to necessary travel

10  05

Exhibit 7 - Page 116

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 117

CALIFORNIA LEGISLATURE

**1983–84 REGULAR SESSION**
**1983–84 SECOND EXTRAORDINARY SESSION**

# SUMMARY DIGEST

*of*

Statutes Enacted and Resolutions (Including Proposed
Constitutional Amendments) Adopted in 1984

*and*

## 1979–1984 Statutory Record



**DARRYL R. WHITE**
*Secretary of the Senate*

**JAMES D. DRISCOLL**
*Chief Clerk of the Assembly*

Compiled by
**BION M. GREGORY**
*Legislative Counsel*

Exhibit 7 - Page 118

making reimbursement pursuant to the constitutional mandate or Section 2231 or 2234, but would recognize that local agencies and school districts may pursue their other available remedies to seek reimbursement for these costs.

(3) The bill, in compliance with Section 2231.5 of the Revenue and Taxation Code, would also repeal, as of January 1, 1991, the provisions contained in the bill for which state reimbursement is required.

Ch. 1724   (AB 501)   Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Ch. 1725   (SB 1915)   Presley.   Driving offenses:   punishment.

(1) Existing law prescribes a period of confinement in the county jail, as a sentence or as a condition of probation, for specified persons who are convicted of a violation of the prohibition against driving under the influence of an alcoholic beverage, a drug, or both, driving with an alcohol-blood concentration of 0.10% or more, or driving when addicted.

This bill would authorize the establishment of 3-year county pilot programs to determine the cost efficiency and therapeutic value of placing persons convicted of these offenses in specified alcohol rehabilitation facilities providing custodial treatment. Eligibility for participation in the pilot programs would be limited to a maximum of 4 counties, including initially the Counties of Los Angeles, Napa, and Riverside, if they apply for participation in the program, and one other county selected by the State Department of Alcohol and Drug Programs. In those counties electing to participate, a court, as conditions of probation, would order a person who has one or more prior offenses within 5 years to undergo a treatment program in a participating alcohol rehabilitation facility, as defined, for a designated period and to pay for the treatment program in that facility, as specified. In participating counties, courts would be required to order presentence screening and assessments, as specified.

The bill would require the county alcohol program administrator in a participating county to establish fees based on ability to pay and to determine each participant's ability to pay. The bill would limit the maximum per diem fee of an approved alcohol rehabilitation facility to the per diem cost of the jail in that county.

The bill would require the facility and its program to have been approved and certified by the department, as specified. The bill would require participating facilities to accept all referrals from the courts. A violation of the terms of the program would be a violation of probation under the bill.

(2) The bill would require the Legislative Analyst to make a specified study and report to the Legislature on the effects of the bill by April 1, 1988. The bill would also require the Legislative Analyst to report on the economic groups served by the pilot programs on or before June 30, 1986.

(3) The bill would incorporate changes in Section 23161 of the Vehicle Code proposed by AB 2491, AB 3872, SB 895, and SB 2232, to be operative only if those bills are enacted and amend Section 23161 of the Vehicle Code.

Ch. 1726   (AB 2840)   Felando.   Commission on Emergency Medical Services.

Under existing law, there are 14 members on the Commission on Emergency Medical Services who serve for terms of 3 years.

This bill would provide for staggering the terms of the commission members by providing for appointments of 1, 2, or 3 years for the first members appointed on or after January 1, 1985. The members would serve to the end of the calendar year in which they were appointed before the term would commence.

Ch. 1727   (SB 2151)   Watson.   Private postsecondary institutions:   authority to award degrees.

Exhibit 7 - Page 119

Exhibit 7 - Page 120

Exhibit 7 - Page 121

**VOLUME 2**

CALIFORNIA LEGISLATURE

AT SACRAMENTO

1981–82 REGULAR SESSION
1981–82 FIRST EXTRAORDINARY SESSION

———

# ASSEMBLY  FINAL  HISTORY

SYNOPSIS OF

ASSEMBLY BILLS, CONSTITUTIONAL AMENDMENTS, CONCURRENT,

JOINT, AND HOUSE RESOLUTIONS

———

Assembly Convened December 1, 1980

| | |
|---|---|
| Recessed December 2, 1980 | Reconvened January 5, 1981 |
| Recessed April 9, 1981 | Reconvened April 20, 1981 |
| Recessed July 7, 1981 | Reconvened July 10, 1981 |
| Recessed July 10, 1981 | Reconvened August 10, 1981 |
| Recessed September 15, 1981 | Reconvened January 4, 1982 |
| Recessed April 1, 1982 | Reconvened April 12, 1982 |
| Recessed June 30, 1982 | Reconvened August 2, 1982 |

Adjourned September 1, 1982

Adjourned Sine Die November 30, 1982

Legislative Days.................................................................................. 248

———

HON. WILLIE L. BROWN, JR.
*Speaker*

HON. LEO T. McCARTHY                    HON. TOM BANE
*Speaker pro Tempore*          *Assistant Speaker pro Tempore*

HON. MIKE ROOS                    HON. ROBERT W. NAYLOR
*Majority Floor Leader*          *Minority Floor Leader*

*Compiled Under the Direction of*
JAMES D. DRISCOLL
*Chief Clerk*

GUNVOR ENGLE
*History Clerk*

Exhibit 7 - Page 122

1981–82 REGULAR SESSION                    2273

A.B. No. 3738—Harris.
    An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.
      1982
    Mar.   25—Read first time. To print.
    Mar.   26—From printer. May be heard in committee April 25.
    April   1—Referred to Com. on JUD.
    May   11—From committee: Amend, and do pass as amended. (Ayes 10. Noes 0.) (May 5.)
    May   12—Read second time and amended. Ordered returned to second reading.
    May   13—Read second time. To third reading.
    May   17—Read third time, passed, and to Senate. (Ayes 74. Noes 0. Page 13318.)
    May   17—In Senate. Read first time. To Com. on RLS. for assignment.
    May   20—Referred to Com. on JUD.
    June   22—In committee: Set, first hearing. Hearing canceled at the request of author.
    Aug.   3—In committee: Set, second hearing. Hearing canceled at the request of author.
    Nov.  30—From Senate committee without further action.

A.B. No. 3739—Robinson.
    An act to amend Section 6140 of the Business and Professions Code, relating to the State Bar of California.
      1982
    Mar.   25—Read first time. To print.
    Mar.   26—From printer. May be heard in committee April 25.
    April   1—Referred to Com. on JUD.
    May   5—In committee: Set, first hearing. Hearing canceled at the request of author.
    May   11—From committee: Amend, and do pass as amended. (Ayes 8. Noes 4.) (May 5.)
    May   12—Read second time and amended. Ordered returned to second reading.
    May   13—Read second time. To third reading.
    June   17—Read third time and amended. Read third time, passed, and to Senate. (Ayes 51. Noes 24. Page 15351.)
    June   17—In Senate. Read first time. To Com. on RLS. for assignment.
    June   18—Referred to Com. on JUD.
    Aug.   5—From committee: Amend, and do pass as amended. (Ayes 5. Noes 0.)
    Aug.   9—Read second time, amended, and to third reading.
    Aug.   16—Read third time, passed, and to Assembly. (Ayes 21. Noes 19. Page 13206.)
    Aug.   17—In Assembly. Concurrence in Senate amendments pending.
    Aug.   18—Assembly refused to concur in Senate amendments. To Conference Committee. (Ayes 3. Noes 69. Page 17224.) Messrs. Robinson, Harris, and Maxine Waters appointed to Conference Committee.
    Aug.   25—Senators Petris, Rains, and Beverly appointed to Conference Committee.
    Aug.   31—Assembly adopts Conference report. (Ayes 49. Noes 18. Page 18587.)
    Aug.   31—Senate adopts Conference report. To enrollment. (Ayes 25. Noes 4. Page 14403.)
    Sept.   10—Enrolled and to the Governor at 4 p.m.
    Sept.   26—Approved by the Governor.
    Sept.   27—Chaptered by Secretary of State—Chapter 1436, Statutes of 1982.

Exhibit 7 - Page 123

CALIFORNIA LEGISLATURE—1981-82 REGULAR SESSION

# ASSEMBLY BILL                                No. 3738

### Introduced by Assemblyman Harris

### March 25, 1982

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 3738, as introduced, Harris.  Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

```
1    SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:
3
4    TITLE 5.   UNIFORM TRADE SECRETS ACT
5
6    3426.   This title may be cited as the Uniform Trade
7  Secrets Act.
8    3426.1.   As used in this title, unless the context requires
9  otherwise:
```

Exhibit 7 - Page 124

**AB 3738** — 2 —

1   (a) "Improper means" includes theft, bribery,
2   misrepresentation, breach or inducement of a breach of
3   a duty to maintain secrecy, or espionage through
4   electronic or other means.
5   (b) "Misappropriation" means:
6   (1) Acquisition of a trade secret of another by a person
7   who knows or has reason to know that the trade secret
8   was acquired by improper means; or
9   (2) Disclosure or use of a trade secret of another
10   without express or implied consent by a person who:
11   (A) Used improper means to acquire knowledge of
12   the trade secret; or
13   (B) At the time of disclosure or use, knew or had
14   reason to know that his or her knowledge of the trade
15   secret was:
16   (i) Derived from or through a person who had utilized
17   improper means to acquire it;
18   (ii) Acquired under circumstances giving rise to a
19   duty to maintain its secrecy or limit its use; or
20   (iii) Derived from or through a person who owed a
21   duty to the person seeking relief to maintain its secrecy
22   or limit its use; or
23   (C) Before a material change of his position, knew or
24   had reason to know that it was a trade secret and that
25   knowledge of it had been acquired by accident or
26   mistake.
27   (c) "Person" means a natural person, corporation,
28   business trust, estate, trust, partnership, association, joint
29   venture, government, governmental subdivision or
30   agency, or any other legal or commercial entity.
31   (d) "Trade secret" means information, including a
32   formula, pattern, compilation, program, device, method,
33   technique, or process, that:
34   (1) Derives independent economic value, actual or
35   potential, from not being generally known to, and not
36   being readily ascertainable by proper means by, other
37   persons who can obtain economic value from its
38   disclosure or use, and
39   (2) Is the subject of efforts that are reasonable under
40   the circumstances to maintain its secrecy.

99

Exhibit 7 - Page 125

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

## ASSEMBLY BILL                                      No. 501

---

### Introduced by Assemblyman Harris

RECEIVED

MAR 1 4 1983

February 7, 1983

iVOR J. JAMES, JR

---

An act to add Title 5 (commencing with Section 3426) to
Part 1 of Division 4 of the Civil Code, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as introduced, Harris.   Uniform Trade Secrets Act.
Under existing law, no specific cause of action exists for
misappropriation of a trade secret.

This bill would establish that cause of action, through
enactment in California of the Uniform Trade Secrets Act,
which defines terms, provides for injunctive relief, damages,
requirements that a court take measures to preserve the
secrecy of an alleged trade secret by reasonable means, and
a statute of limitations applicable to the cause of action,
among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no.
State-mandated local program: no.

*The people of the State of California do enact as follows:*

1   SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:
3
4     TITLE 5.   UNIFORM TRADE SECRETS ACT
5
6   3426.   This title may be cited as the Uniform Trade
7  Secrets Act.
8   3426.1.   As used in this title, unless the context requires
9  otherwise:
10   (a) "Improper   means"   includes   theft,   bribery,

99  40

Exhibit 7 - Page 126

AB 3738

1   3426.2.  (a) Actual or threatened misappropriation
2   may be enjoined. Upon application to the court, an
3   injunction shall be terminated when the trade secret has
4   ceased to exist, but the injunction may be continued for
5   an additional reasonable period of time in order to
6   eliminate commercial advantage that otherwise would
7   be derived from the misappropriation.
8   (b) If the court determines that it would be
9   unreasonable to prohibit future use, an injunction may
10  condition future use upon payment of a reasonable
11  royalty for no longer than the period of time the use could
12  have been prohibited.
13  (c) In appropriate circumstances, affirmative acts to
14  protect a trade secret may be compelled by court order.
15  3426.3.  (a) In addition to or in lieu of injunctive
16  relief, a complainant may recover damages for the actual
17  loss caused by misappropriation. A complainant also may
18  recover for the unjust enrichment caused by
19  misappropriation that is not taken into account in
20  computing damages for actual loss.
21  (b) If willful and malicious misappropriation exists,
22  the court may award exemplary damages in an amount
23  not exceeding twice any award made under subdivision
24  (a).
25  3426.4.  If a claim of misappropriation is made in bad
26  faith, a motion to terminate an injunction is made or
27  resisted in bad faith, or willful and malicious
28  misappropriation exists, the court may award reasonable
29  attorney's fees to the prevailing party.
30  3426.5.  In an action under this title, a court shall
31  preserve the secrecy of an alleged trade secret by
32  reasonable means, which may include granting
33  protective orders in connection with discovery
34  proceedings, holding in-camera hearings, sealing the
35  records of the action, and ordering any person involved
36  in the litigation not to disclose an alleged trade secret
37  without prior court approval.
38  3426.6.  An action for misappropriation must be
39  brought within three years after the misappropriation is
40  discovered or by the exercise of reasonable diligence

99  100

Exhibit 7 - Page 127

AB 3738       — 4 —

1   should have been discovered. For the purposes of this
2   section, a continuing misappropriation constitutes a
3   single claim.
4     3426.7.  (a) Except as otherwise expressly provided,
5   this title does not supersede any statute relating to
6   misappropriation of a trade secret, or any statute
7   otherwise regulating trade secrets.
8     3426.8.  This title shall be applied and construed to
9   effectuate its general purpose to make uniform the law
10   with respect to the subject of this title among states
11   enacting it.
12     3426.9.  If any provision of this title or its application
13   to any person or circumstances is held invalid, the
14   invalidity does not affect other provisions or applications
15   of the title which can be given effect without the invalid
16   provision or application, and to this end the provisions of
17   this title are severable.
18     3426.10.  This title does not apply to misappropriation
19   occurring prior to January 1, 1983.

O

Exhibit 7 - Page 128

PLEASE RETURN IMMEDIATELY TO

ASSEMBLY COMMITTEE ON JUDICIARY

6031 State Capitol

Work Sheet

RE:  Bill No.  *AB 3738- Harris*

Please complete this form and return it to the Assembly Committee on Judiciary as soon as possible.

1.   Origin of the bill:

   (a)   What is the source of the bill?  (What person, organizatio or governmental entity, if any, requested introduction?)

         Commission on Uniform State Laws
         Robert Cornell, Chairman
         Contact:  Jack Knox  415-434-4896.

   (b)   Has a similar bill been before either this or a previous session of the Legislature?  If so, please identify the Session, bill number and disposition of the bill.

         No

   (c)   Has there been an interim committee report on the bill? If so, please identify the report.

         No, but same as the Uniform Trade Secrets Act drafted for and approved by the ABA. Retains any pertinent CA statu

2.   Problem or deficiency in the present law which the bill seeks to remedy:

         Codification of common law to provide uniformity.
         Trademarks were omitted from Re-Statement of Law
         when it was assumed Fed. Patent Law would pre-empt State.
         Bill clarifies that trademark injunctions should not be permanent only for as long as necessary

3.   Please attach copies of any background material in explanation of the bill, or state where such material is available for reference by the committee staff and letters of support or opposition.

4    Hearing:

   (a)   Approximate amount of time necessary for hearing.
         10 min.
   (b)   Preference for date of hearing.
         Set for May 5.
   (c)   Names of witnesses to testify at the hearing.
         Jack Knox

Exhibit 7 - Page 129

Verrry superficial analysis of AB 3738

1.   The Act needs to specify that independent discovery of a trade
     secret through reverse engineering, chemical analysis, and other
     common industrial methods is not wrongful, and that these
     enumerated methods are merely exemplary.

2.  The Act should not redefine trade secrets apart from 18 USC Sec.1≀
    The current provision does so in vague terms which would take
    years to litigate.

 a.   The State definition is found in Gov. Code sec. 6254.7.  Despite
      the disclaimer in Sec. 3426.7 of the bill, this bill would
      completely overrule that definition.

3.   The bill must incorporate the provisions of Evidence Code
     sections 1060 and 1040 to the effect that trade secrets may
     be disclosed in the interests of justice.  This provision was
     crucial in Uribe v Howie, 19 Cal.App.3d ____ (1970 or so), where
     pesticide spray control reports were released in part for this
     reason.

4.   Govt. Code sec. 6254.7 makes clear that all pollution data is
     not a trade secret.  The bill should so state.

5.   Both the Federal Insecticide, Fungicide and Rodenticide Act,
     at 7 U.S.C. sec. 136h, and the Toxic Substances Control Act,
     at 1ж5 U.S.C. sec. 2613, make clear that all health and safety
     data begarding chemicals is not a trade secret.  We cannot
     give up this information vital to public health.

Exhibit 7 - Page 130

# EXHIBIT 1 Part 3

Exhibit 7 - Page 131

VOLUME 93          MARCH 1980          NUMBER 5

# HARVARD LAW REVIEW

## THE TRADE SECRET STATUS OF HEALTH AND SAFETY TESTING INFORMATION: REFORMING AGENCY DISCLOSURE POLICIES

### Thomas O. McGarity* and Sidney A. Shapiro**

*Manufacturers of new drugs, pesticides, and other substances are often required by law to provide federal regulatory agencies with costly test results as a prerequisite to obtaining clearance to go to market. In this Article, Professors McGarity and Shapiro analyze the circumstances under which this information should be made available to the public. Balancing the interests for and against disclosure, they conclude that virtually all test results should be disclosed, although competitors should generally be forbidden for some period of time from making use of the disclosed information in their own test programs.*

RECOGNIZING that market mechanisms, even as enhanced by a tort compensation system, do not adequately protect man and the environment from the risks posed by new products, chemicals, and technologies, Congress has empowered several federal regulatory agencies to proscribe the sale of certain products which endanger the public. In making the risk-benefit assessment prerequisite to such a determination, an agency relies upon the results of experimental testing submitted by the proponents of the product. The controversial question whether, and to what extent, such data should be publicly disclosed has recently arisen in several contexts, including approval of new drugs, antibiotics, and food and color additives by the Food and Drug Administration (FDA); and approval of pesticides and chemicals by the Environmental Protection Agency (EPA).

In almost all of these instances, the private regulatees who submit the studies have successfully forestalled most efforts by

---

* Associate Professor of Law, University of Kansas. B.A., Rice University, 1971; J.D., University of Texas, 1974.

** Associate Professor of Law, University of Kansas. B.S., University of Pennsylvania, 1970; J.D., 1973.

The assistance of the University of Kansas Research Fund is gratefully acknowledged. The authors would like to express their appreciation to Malcolm Burns, Edward Gray, Thomas Krattenmaker, Jeffrey Miller, and Richard Pierce for their comments on earlier drafts of this Article. The authors would also like to acknowledge the assistance of Janice Jacobs, Class of 1981, University of Kansas Law School.

837

Exhibit 7 - Page 132

make it clear that health and safety data should receive absolute proprietary protection. The FIFRA experience, however, indicates that Congress is not likely to disregard the substantial policies favoring data release to secure the benefits of the possible innovation that may flow from further research. Second, Congress might do nothing and allow the public to suffer whatever deleterious effects might result from lost innovation. Congress, however, is not likely to adopt a posture of benign neglect in the face of drug industry protests that the "drug lag" is endangering the health of American patients, despite the present lack of substantial evidence that monopoly profits will reduce this lag.

The fairest and most practical option is the exclusive use period approach. Congress could ratify the FDA's redefinition of "proprietary data" or, if the FDA proves unwilling to take the initial step, redefine the term itself so as to exclude health and safety data as it has recently done in the chemical and pesticide areas. Then, after an appropriate body has made a thorough investigation of the facts and has made reasonable predictions about the efficacy of barriers to entry in stimulating drug research, Congress or the agency pursuant to congressional authority could provide for a generic period of exclusive use that represents a balance between the need for innovation and the policies of encouraging competitive pricing and discouraging duplicative testing. In addition, Congress should give the FDA the authority to ban duplicative tests that endanger their human participants.

Congress has in the past studiously avoided resolving this continuing paradox in the American free enterprise system. No free enterprise economy can function properly unless consumers are informed. Yet consumers cannot become informed if industry-generated data on important aspects of products they consume remain secret; nor can competition produce an efficient marketplace when secrecy erects barriers to entry. On the other hand, competition and consumer sovereignty do not breed innovation. An innovator must be secure in the knowledge that he will reap the benefits of his efforts. Congress has moved to resolve these inherent contradictions in the toxic substance and pesticide areas. Congress should take parallel action with respect to drug regulation. FDA pressure, in the form of changing its antiquated approach toward proprietary information, could prove to be the necessary catalyst.

Exhibit 7 - Page 133

# Stauffer Chemical Company

Westport, Connecticut 06881 / Tel. (203) 222-3000 / Cable "Staufchem"

RETURN RECEIPT REQUESTED          November 13, 1981

Lisa Brown
Division of Pest Management
California Department of
  Food and Agriculture
1220 N. Street
Sacramento, CA  95814

Re:  PR-81-44

Dear Ms. Brown:

   I am writing in response to your letters of October 20 and 27, 1981, which indicated that Ms. Ginger Rutland of Station KRON had requested from the California Department of Food and Agriculture (CDFA) a copy of "all data regarding the health effects of Captan."

   Stauffer maintains that some of the data which the company has submitted to CDFA to support our registration of the fungicide Captan are confidential and should not be released by CDFA.  All of the data which Stauffer considers to be confidential are listed in the attachment to this letter.

   Under the California Administrative Code §2360(g), Stauffer has fifteen days after receipt of your letter to provide justification why confidentiality should be maintained. In an October 30, 1981 telephone conversation with John Behan and a follow-up letter of November 5, 1981, you extended until November 16, 1981 for Stauffer to respond to your letters.

   Stauffer maintains that all of the data listed in the attachment to this letter fall under the California standard for "trade secrets", California Government Code §6254.7:

   1)   the data are a "compilation of information which is not patented,"

   2)   the data are "known only to certain individuals within a commercial concern" (Stauffer),

   3)   generation of the data is necessary in order to be able to "produce ... an article of trade" (Captan), and

Exhibit 7 - Page 134

November 13, 1981
Page 2

4)    having possession of the data gives Stauffer
      "an opportunity to obtain a business advantage
      over competitors" who are not able to register
      Captan without using the data or generating their
      own data.

For all of the following reasons, Stauffer requests
that California maintain the confidentiality of materials
listed in the attachment:

- The data clearly have commercial value; Stauffer has
spent a considerable amount of money to obtain the data.

- Submission of the data is necessary to obtain a
registration for Captan.  By developing and owning the data
Stauffer has obtained a competitive advantage over other
companies which must either pay Stauffer to use the data or
generate it themselves.

- Someone obtaining the data could use it to register
Captan outside of the United States and thereby place Stauffer
at a competitive disadvantage in foreign markets.

- The two confidential pages of Volume I of the RPAR
rebuttal document, pp. 94-5, contain marketing data, which
would be of value to another company planning to compete
with Stauffer; the remainder is health and safety data.

- The U.S. Congress recognizes the commercial value of
health and safety data by providing either exclusive use or
compensation protection for it.  See FIFRA §3(c)(1)(D),

- Stauffer restricts access to the data within the
company on a "need to know" basis.  The data marked "confidential"
have never been publically disclosed either by Stauffer or
by the U.S. EPA.

- Reference 54 of Volume 7 of the RPAR rebuttal document
contains information which could be used to identify the
medical histories of Stauffer employees and should remain
confidential in order to protect the privacy of these
employees.

If you need further clarification, please call me at
415-231-1177 before releasing any of the data.

Thank you for your attention to this matter.

Sincerely yours,

Ralph Riggs
Senior Administrator of
Regulatory Affairs
Pesticide Registrations

Exhibit 7 - Page 135

November 13, 1981

## ATTACHMENT

### CONFIDENTIAL MATERIALS SUBMITTED TO SUPPORT
### STAUFFER CHEMICAL'S CAPTAN REGISTRATION

### CAPTAN RPAR REBUTTAL DOCUMENT

| | | |
|---|---|---|
| Vol. 1 | pp. 94 – 95 | – Stauffer Captan Quantitative Usage 1978 |
| Vol. 2 | Reference 4 | – Protocol Lifetime Oncogenic Feeding Study in the Mouse and Transmittal Letter |
| | Reference 5 | – Statistical analysis system |
| | Reference 6 | – Evaluation of NCI Captan bioassay (mice) by Dr. Carlton |
| | Reference 7 | – Review of NCI Captan bioassay (rat) by Dr. Carlton |
| | Reference 8 | – Two-Year Oral Toxicity/Carcinogenicity Study of Captan in Rats |
| | Reference 9 | – IRDC letter to Dr. Saunders – November 17, 1981 |
| | Reference 10 | – Lifetime Oral Ongocenicity Study of Captan in Mice |
| Vol. 3 | Reference 21 | – Metabolism of $N$ (trichloromethylthio) – 1, 2 – dicarboximido – 14C-4-cyclohexene (Captan) in the Rat and Goat |
| | Reference 22 | – Pilot Study to Determine the Nature and Magnitude of the Residues from Ingestion of Captan in a Ruminating Animal |
| | Reference 28 | – Effect of Dietary Captan on Soluble Thiol Content of Liver and Duodenal Tissues |
| | Reference 29 | – Crossley, The Stability of Captan in Blood |
| Vol. 4 | NONE | |
| Vol. 5 | Reference 49 | – Results of Captan Market Basket Survey conducted in 1977 and 1978 |
| | Reference 50 | – Captan Residues Found in Market Basket Survey Conducted by Stauffer Chemical Company |
| Vol. 6 | Reference 51 | – Captan Residues Found in Market Basket Survey conducted by Chevron Chemical Company |
| | Reference 52 | – Statistical Analysis of Captan Market Basket Survey Data |
| Vol. 7 | Reference 53 | – Employee Exposures to Captan, Updated |
| | Reference 54 | – Palshaw, An Epidemiologic Study of Mortality Within a Cohort of Captan Workers |

Exhibit 7 - Page 136

**AB 501** —2—

1  misrepresentation, breach or inducement of a breach of
2  a duty to maintain secrecy, or espionage through
3  electronic or other means.
4     (b) "Misappropriation" means:
5     (1) Acquisition of a trade secret of another by a person
6  who knows or has reason to know that the trade secret
7  was acquired by improper means; or
8     (2) Disclosure or use of a trade secret of another
9  without express or implied consent by a person who:
10    (A) Used improper means to acquire knowledge of
11  the trade secret; or
12    (B) At the time of disclosure or use, knew or had
13  reason to know that his or her knowledge of the trade
14  secret was:
15    (i) Derived from or through a person who had utilized
16  improper means to acquire it;
17    (ii) Acquired under circumstances giving rise to a
18  duty to maintain its secrecy or limit its use; or
19    (iii) Derived from or through a person who owed a
20  duty to the person seeking relief to maintain its secrecy
21  or limit its use; or
22    (C) Before a material change of his or her position,
23  knew or had reason to know that it was a trade secret and
24  that knowledge of it had been acquired by accident or
25  mistake.
26    (c) "Person" means a natural person, corporation,
27  business trust, estate, trust, partnership, association, joint
28  venture, government, governmental subdivision or
29  agency, or any other legal or commercial entity.
30    (d) "Trade secret" means information, including a
31  formula, pattern, compilation, program, device, method,
32  technique, or process, that:
33    (1) Derives independent economic value, actual or
34  potential, from not being generally known to, and not
35  being readily ascertainable by proper means by, other
36  persons who can obtain economic value from its
37  disclosure or use; and
38    (2) Is the subject of efforts that are reasonable under
39  the circumstances to maintain its secrecy.
40    3426.2.  (a) Actual or threatened misappropriation

99  70

Exhibit 7 - Page 137

Ms. Lisa Brown
November 13, 1981

CAPTAN RPAR
Page 2

|  |  |  |
|---|---|---|
| | Reference 58 – | Debaun et al, The Fate of Captan (carbonyl – 14-C) on Field-Grown Apple Trees |
| | Reference 62 – | Stauffer Chemical Company Residue Report |
| | Reference 63 – | Stauffer Chemical Company Residue Report |
| | Reference 64 – | Northeast Pesticide Impact Assessment Project-proposal plus cover letter |
| | Reference 65 – | Captan Harvester Exposure Study Protocol |
| | Reference 66 – | Protocol - Captan 50 WP: A Percutaneous Absorption Study in Rats |
| | Reference 69 – | Captan Induced Duodenal Tumor Incidence - Chevron data (Adir Memos) |
| Vol. 8 | NONE | |
| Vol. 9 | Reference 99 – | Litton Bionetics, Mutagenic Evaluation of Captan in the Somatic Cell Mutation Assay - Final Report |
| | Reference 110 – | Captan Mutagenesis Review |
| | Reference 127 – | Binding of Radiolabeled Captan to DNA and Protamine of Mouse Germinal Cells and the Induction of Unscheduled DNA Synthesis in Germinal Cells Following Captan Administration |
| | Reference 128 – | Mutagenicity of Captan in Cultured Mammalian Cells |
| Vol. 10 | Reference 129 – | Captan - W. Scott Report |
| | Reference 131 – | IRDC Captan Pilot Teratology Study in Hamsters |
| | Reference 132 – | IRDC Captan Teratology Study in Hamsters |
| | Reference 133 – | Exhibit A - Three Generation Reproduction Study in Rats with Captan |
| | Reference 134 – | One Generation Reproduction Study in Rats with Captan |
| | Reference 135 – | Protocol for a Study of the Effect of Technical Captan on Pregnancy of the Rabbit |
| Vol. 11 | NONE | |
| Vol. 12 | Reference 139 – | Captan: Chemical and Physical Properties |
| | Reference 143 – | Pack, The Soil Metabolism of Carbonyl-14-C-Captan |
| Vol. 13 | NONE | |
| Vol. 14 | NONE | |

Exhibit 7 - Page 138

November 13, 1981

ADDITIONAL CONFIDENTIAL STUDIES

1.  Carlton, W. W.  National Cancer Institute Bioassay of
    Captan:  Evaluation of Selected Tissues for Neoplasms.
    May 29, 1981.

2.  Adir, J. S.  Captan 50-WP:  A Percutaneous Absorption
    Study in Rats.  Stauffer Toxicology Report T-10438.
    April 20, 1981.

3.  Selsky, C.A.  The Association of Captan with Mouse
    and Rat Deoxyribonucleic Acid.  Stauffer Toxicology
    Report T-10435.  April 28, 1981.

4.  The data book Captan Milk Residue Study in Lactating
    Dairy Cattle, dated February 2, 1977, including a
    summary of Captan residue data for whole milk.

5.  The data book Captan 50-WP/Benelate:  Application
    for a 24(a) Registration For Use on Fruit Disease
    Control.  No pages are marked confidential because
    the data book was submitted before March 1, 1980,
    but the following pages should be kept confidential:

    Appendix One:  Confidential except for eleven
    pages which have "Cooperative Extension, University
    of California" at the top

    Appendix Two:  Confidential

Exhibit 7 - Page 139

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 140

ASSEMBLY COMMITTEE ON JUDICIARY                                    AB 3738

ELIHU M. HARRIS, Chairman

AB 3738 (Harris)  As introduced 3/25/82

SUBJECT

This bill is intended to enact the Uniform Trade Secrets Act.

DIGEST

This bill would establish a statutory scheme to protect trade secrets, known as the Uniform Trade Secrets Act. Among other things, it would:

- enact a series of definitions

- provide for the enjoining of actual or threatened misappropriation of a trade secret

- permit a complainant to recover actual and exemplary damages for the loss caused by the improper acquisition or disclosure of a trade secret

- authorize a court to use reasonable means to preserve the secrecy of a trade secret

- establish a statute of limitations for actions for misappropriation of a trade secret

The bill's provisions would not apply to misappropriation occurring prior to January 1, 1983.

STAFF COMMENTS

1.  This bill would enact the Uniform Trade Secrets Act in California.  That Act was drafted and recommended for enactment in all states by the National Conference of Commissioners on Uniform State Laws in 1979, and was approved by the American Bar Association in 1980.

    In its prefatory note to the Act, the National Conference stated that "there is undue certainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret."  The prefatory note further states that "like traditional trade secret law, the Uniform Act contains general concepts.  The contribution of the Uniform Act is substitution of unitary definitions of trade secret

(CONTINUED)

Consultant R. LeBov                                        AB 3738
5/5/82

Exhibit 7 - Page 141

and trade secret misappropriation, and a single
statute of limitations for the various property,
quasi-contractual, and violation of fiduciary rela-
tionship theories of noncontractual liability utilized
at common law.  The Uniform Act also codifies the re-
sults of the better reasoned cases concerning the
remedies for trade secret misappropriation."

2.  Existing California statutory law contains a number
of scattered provisions affecting trade secrets.  For
example, Penal Code Section 499c provides for criminal
penalties for misappropriation of trade secrets. This
bill, which provides for civil remedies, is generally
not intended to affect any of the existing provisions.
It states that, except as otherwise expressly provided,
it does not supersede any statute relating to mis-
appropriation of a trade secret, or any statute other-
wise regulating trade secrets.

3.  California Rural Legal  Assistance opposes this measure
because of its concern that it might be construed to
limit public access to pesticide testing data under
the Public Records Act.  That Act exempts, from required
disclosure, records which may not be disclosed pursuant
to provisions of state law.  (Government Code Section
6254)

According to CRLA, "there is a body of data submitted
to the Department of Food and Agriculture relative
to the health and environmental hazards and efficacy of
pesticides that it licenses and regulates.  It is cru-
cial that the public have access to the data so that
the public can participate in the Department's regu-
latory decisions."  Would this bill inappropriately
restrict public access to health and safety testing
data submitted to regulatory and licensing agencies?

Exhibit 7 - Page 142

RL

AB 3738                                        HEARING DATE: 5/5/82

SOURCE

National Conference of Commissioners on Uniform State Laws

SUPPORT

Unknown

OPPOSITION

California Rural Legal Assistance

Exhibit 7 - Page 143

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 144

AMENDED IN ASSEMBLY MAY 12, 1982

CALIFORNIA LEGISLATURE—1981-82 REGULAR SESSION

## ASSEMBLY BILL                               No. 3738

Introduced by Assemblyman Harris

March 25, 1982

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 3738, as amended, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, *with certain changes or additions,* which *act* defines terms, provides for injunctive relief, damages, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no..

*The people of the State of California do enact as follows:*

1      SECTION 1.   Title 5 (commencing with Section 3426)
2   is added to Part 1 of Division 4 of the Civil Code, to read:
3
4      TITLE 5.   UNIFORM TRADE SECRETS ACT.
5
6   — 3426.  This title may be cited as the Uniform Trade
7   Secrets Act.
8      3426.1.   As used in this title, unless the context requires

98   40

Exhibit 7 - Page 145

AB 3738 — 2 —

1 otherwise:
2 (a) "Improper means" includes theft, bribery,
3 misrepresentation, breach or inducement of a breach of
4 a duty to maintain secrecy, or espionage through
5 electronic or other means.
6 (b) "Misappropriation" means:
7 (1) Acquisition of a trade secret of another by a person
8 who knows or has reason to know that the trade secret
9 was acquired by improper means; or
10 (2) Disclosure or use of a trade secret of another
11 without express or implied consent by a person who:
12 (A) Used improper means to acquire knowledge of
13 the trade secret; or
14 (B) At the time of disclosure or use, knew or had
15 reason to know that his or her knowledge of the trade
16 secret was:
17 (i) Derived from or through a person who had utilized
18 improper means to acquire it;
19 (ii) Acquired under circumstances giving rise to a
20 duty to maintain its secrecy or limit its use; or
21 (iii) Derived from or through a person who owed a
22 duty to the person seeking relief to maintain its secrecy
23 or limit its use; or
24 (C) Before a material change of his position, knew or
25 had reason to know that it was a trade secret and that
26 knowledge of it had been acquired by accident or
27 mistake.
28 (c) "Person" means a natural person, corporation,
29 business trust, estate, trust, partnership, association, joint
30 venture, government, governmental subdivision or
31 agency, or any other legal or commercial entity.
32 (d) "Trade secret" means information, including a
33 formula, pattern, compilation, program, device, method,
34 technique, or process, that:
35 (1) Derives independent economic value, actual or
36 potential, from not being generally known to, and not
37 being readily ascertainable by proper means by, other
38 persons who can obtain economic value from its
39 disclosure or use, and
40 (2) Is the subject of efforts that are reasonable under

98

Exhibit 7 - Page 146

— 3 —                              AB 3738

1  ~~the circumstances to maintain its secrecy.~~

2    3426.2.   (a) Actual or threatened misappropriation
3  may be enjoined. Upon application to the court, an
4  injunction shall be terminated when the trade secret has
5  ceased to exist, but the injunction may be continued for
6  an additional reasonable period of time in order to
7  eliminate commercial advantage that otherwise would
8  be derived from the misappropriation.

9    (b) If the court determines that it would be
10  unreasonable to prohibit future use, an injunction may
11  condition future use upon payment of a reasonable
12  royalty for no longer than the period of time the use could
13  have been prohibited.

14    (c) In appropriate circumstances, affirmative acts to
15  protect a trade secret may be compelled by court order.

16    3426.3.   (a) In addition to or in lieu of injunctive
17  relief, a complainant may recover damages for the actual
18  loss caused by misappropriation. A complainant also may
19  recover for the unjust enrichment caused by
20  misappropriation that is not taken into account in
21  computing damages for actual loss.

22    (b) If willful and malicious misappropriation exists,
23  the court may award exemplary damages in an amount
24  not exceeding twice any award made under subdivision
25  (a).

26    3426.4.  If a claim of misappropriation is made in bad
27  faith, a motion to terminate an injunction is made or
28  resisted in bad faith, or willful and malicious
29  misappropriation exists, the court may award reasonable
30  attorney's fees to the prevailing party.

31    3426.5.  In an action under this title, a court shall
32  preserve the secrecy of an alleged trade secret by
33  reasonable means, which may include granting
34  protective orders in connection with discovery
35  proceedings, holding in-camera hearings, sealing the
36  records of the action, and ordering any person involved
37  in the litigation not to disclose an alleged trade secret
38  without prior court approval.

39    3426.6.  An action for misappropriation must be
40  brought within three years after the misappropriation is

98  70

Exhibit 7 - Page 147

— 3 —                                    **AB 501**

1 may be enjoined. Upon application to the court, an
2 injunction shall be terminated when the trade secret has
3 ceased to exist, but the injunction may be continued for
4 an additional reasonable period of time in order to
5 eliminate commercial advantage that otherwise would
6 be derived from the misappropriation.
7     (b) If the court determines that it would be
8 unreasonable to prohibit future use, an injunction may
9 condition future use upon payment of a reasonable
10 royalty for no longer than the period of time the use could
11 have been prohibited.
12     (c) In appropriate circumstances, affirmative acts to
13 protect a trade secret may be compelled by court order.
14     3426.3.   (a) In addition to or in lieu of injunctive
15 relief, a complainant may recover damages for the actual
16 loss caused by misappropriation. A complainant may also
17 recover   for   the   unjust   enrichment   caused   by
18 misappropriation that is not taken into account in
19 computing damages for actual loss.
20     (c)(b) If willful and malicious misappropriation exists,
21 the court may award exemplary damages in an amount
22 not exceeding twice any award made under subdivision
23 (a) or (b).
24     3426.4.   If a claim of misappropriation is made in bad
25 faith, a motion to terminate an injunction is made or
26 resisted in bad faith, or willful and malicious
27 misappropriation exists, the court may award reasonable
28 attorney's fees to the prevailing party.
29     3426.5.   In an action under this title, a court shall
30 preserve the secrecy of an alleged trade secret by
31 reasonable   means,   which   may   include   granting
32 protective   orders   in   connection   with   discovery
33 proceedings, holding in-camera hearings, sealing the
34 records of the action, and ordering any person involved
35 in the litigation not to disclose an alleged trade secret
36 without prior court approval.
37     3426.6.   An action for misappropriation must be
38 brought within three years after the misappropriation is
39 discovered or by the exercise of reasonable diligence
40 should have been discovered. For the purposes of this

*(b) When neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period during which the use could be enjoined.*

99   100

Exhibit 7 - Page 148

AB 3735 — 4 —

1  discovered or by the exercise of reasonable diligence
2  should have been discovered. For the purposes of this
3  section, a continuing misappropriation constitutes a
4  single claim.

5  3426.7.  (a) Except as otherwise expressly provided,
6  this title does not supersede any statute relating to
7  misappropriation of a trade secret, or any statute
8  otherwise regulating trade secrets, or Section 6254.7 of
9  the Government Code.

10  (b) This title shall not affect the authority of a court to
11  refuse to allow the privilege provided for under Section
12  1060 of the Evidence Code to be claimed on the grounds
13  that the allowance of the privilege would tend to conceal
14  fraud or otherwise work injustice.

15  (c) This title shall not prohibit or restrict a state or
16  local agency from disclosing or using a public record or
17  other information under the California Public Records
18  Act or any other provision of law if the disclosure or use
19  is otherwise permissible under that act or those
20  provisions of law.

21  3426.8.  This title shall not affect any rights or
22  remedies otherwise available under Division 5
23  (commencing with Section 6300) of the Labor Code or
24  the National Labor Relations Act.

25  3426.8.

26  3426.9.  This title shall be applied and construed to
27  effectuate its general purpose to make uniform the law
28  with respect to the subject of this title among states
29  enacting it.

30  3426.9.

31  3426.10.  If any provision of this title or its application
32  to any person or circumstances is held invalid, the
33  invalidity does not affect other provisions or applications
34  of the title which can be given effect without the invalid
35  provision or application, and to this end the provisions of
36  this title are severable.

37  3426.10.

38  3426.11.  This title does not apply to misappropriation
39  occurring prior to January 1, 1983.

O

98  100

Exhibit 7 - Page 149

AB  3738

## ASSEMBLY THIRD READING

AB  3738  (_____Harris_____)  As Amended:  May 12, 1982

ASSEMBLY ACTIONS:

COMMITTEE_____JUD._____VOTE  10-0   COMMITTEE_____VOTE_____

Ayes:                                    Ayes:

Nays:                                    Nays:

DIGEST

This bill establishes the Uniform Trade Secrets Act, which:

1) Specifies definitions for the following terms used in the bill:  improper means, misappropriation, and person.

2) Authorizes enjoining of actual or threatened misappropriation of a trade secret.

3) Authorizes a complainant to recover actual damages caused by misappropriation.

4) Authorizes a complainant to also recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

5) Authorizes the court to award exemplary damages of up to twice any award made under provisions #3 and #4 above in cases of willful and malicious misappropriation.

6) Authorizes the court to award reasonable attorney's fees to the prevailing party if a claim is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriate exists.

7) Authorizes the court to use reasonable means to preserve the secrecy of a trade secret, including protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the case to refrain from disclosing an alleged trade secret without prior court approval.

8) Sets the statute of limitation on actions for misappropriation of trade secrets at three years after the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered.

- continued -

ASSEMBLY OFFICE OF RESEARCH                AB  3738

Exhibit 7 - Page 150

AB 3738
Page 2

9) Specifies that, except as otherwise expressly provided, the provisions of this bill do not supersede other specified statutes relating to regulation of trade secrets.

10) Provides that the bill does not affect the authority of the court to refuse to allow a trade secret privilege if the allowance would tend to conceal fraud or otherwise work injustice.

11) Provides that the bill does not prohibit the disclosure of an otherwise disclosable record under the California Public Records Act.

12) Provides that the bill does not affect any rights or remedies available under the Labor Code or the National Labor Relations Act.

13) Applies only to misappropriations of trade secrets occurring on and after January 1, 1983.

FISCAL EFFECT

None

Exhibit 7 - Page 151



California Chamber of Commerce ● 1027 10th St. ● P.O. Box 1736 ● Sacramento, CA 95808 ● (916) 444-6670

May 26, 1982

The Honorable Elihu Harris
California State Assembly
California State Capitol, Rm. 6031
Sacramento, California  95814

RE:  AB 3738 (Harris) Uniform
Trade Secrets Act

Dear Mr. Harris:

The California Chamber of Commerce will be opposing AB 3738 unless the bill is amended to include the language as originally introduced.

The Chamber supports legislation defining trade secret as information, including a formula, pattern, compilation, program, device, method, technique or process that 1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and 2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. We feel this language is stronger and more protective of trade secrets than current language.

I will be happy to discuss this matter with you at your convenience.

Sincerely,

James G. Van Maren, Group Manager
Agriculture & Consumer Affairs

JGVM/vn

cc  Robert Cornell
Halley, Cornell & Lynch
50 California Street
San Francisco, CA  94111

Exhibit 7 - Page 152



California Chamber of Commerce ● 1027 10th St. ● P.O. Box 1736 ● Sacramento, CA 95808 ● (916) 444-6670

June 17, 1982

Mr. Richard Thomson, Consultant
Senate Judiciary Committee
State Capitol, Rm. 2187
Sacramento, CA  95814

                         RE:  AB 3738 (Harris)
                              Uniform Trade Secrets Act
                              Set for hearing in Senate
                              Judiciary Committee on June 22

Dear Dick:

The California Chamber of Commerce opposes AB 3738, as amended
May 12, 1982, unless amended to include the definition for a trade
secret set forth in the original bill.

The following language is supported by the National Conference of
Commissioners on Uniform State Laws to codify the basic principles
of common law trade secret protection, preserving its essential
distinctions from patent law. A Uniform Trade Secrets Act has been
approved by the American Bar Association. The following definition
was removed from AB 3738 in its May 12 amendment. We urge that this
definition be reinstated.

        "A concept of information, including a formula, pattern,
        compilation, program, device, method, technique or process
        that 1) derives independent economic value, actual or
        potential, from not being generally known to, and not being
        readily ascertainable by proper means by, other persons who
        can obtain economic value from its disclosure or use, and
        2) is the subject of efforts that are reasonable under the
        circumstances to maintain its secrecy."

We strongly urge a "No" vote unless amended.

                         Sincerely,



                         James G. Van Maren, Manager
                         Agriculture & Consumer Affairs

JGVM/v

Exhibit 7 - Page 153

WALTERS, BUKEY AND SHELBURNE

ATTORNEYS AT LAW

ROBERT G. WALTERS
JOHN L. BUKEY
ROBERT S. SHELBURNE
MARGARET MARI MERCHAT
WILLIAM A. VAUGHN
DIANA D. HALPENNY

1010 ELEVENTH STREET, SUITE 200
SACRAMENTO, CALIFORNIA 95814

AREA CODE 916
TELEPHONE 441-3237

July 13, 1982

Honorable Elihu M. Harris
State Capitol, Room 6031
Sacramento, CA 95814

Re: AB 3738

Dear Assemblyman Harris:

This is to inform you that our client, Monsanto, can no longer support your AB 3738 because of the amendment which contains an unacceptable definition of trade secrets.

Although the intent of this legislation is to enact the Uniform Trade Secrets Act, the amendment deletes the definition of trade secrets. The enactment of an acceptable definition of trade secrets is one of the main purposes of the Uniform Trade Secrets Act. Without this provision, Monsanto feels there is little reason to support the measure.

Thank you for your consideration of our views.

Sincerely,

*Bob*

Robert G. Walters

RGW:sw

cc: Chairman, Senate Committee on Judiciary

Exhibit 7 - Page 154

TO:     ELIHU

FROM:   WILLIAM

DATE:   FRIDAY, JULY 16, 1982

SUBJECT: <u>INFORMATION REGARDING AB 3738 (UNIFORM TRADE SECRETS ACT)</u>

Ray Lebov informed me today that Bion Gregory left a message with John Dunlop of Senate Judiciary Committee that Bion was going to withdraw his sponsorship of AB 3738. Ray contacted Bion for clarification; however, he was not in and will return on Monday, July 19.

Ray feels that Bion may be withdrawing support and sponsorship of the bill because the amendments are no longer in accordance with the uniform act.

As you may know, this bill is being opposed by California Rural Legal Assistance and a spokesperson from the Governor's Office who is Toxic Substance expert.

Do you want to pursue this bill? Shall I call Bion Gregory and get his comments? Ray will contact him on Monday morning.

<u>RECAP OF THE AMENDMENTS</u>

1.  Definition of "trade secrets" was removed primiarily due to the opposition

Exhibit 7 - Page 155

Verry superficial analysis of AB 3738

1.  The Act needs to specify that independent discovery of a trade
    secret through reverse engineering, chemical analysis, and other
    common industrial methods is not wrongful, and that these
    enumerated methods are merely exemplary.

2.  The Act should not redefine trade secrets apart from 18 USC Sec.190
    The current provision does so in vague terms which would take
    years to litigate.

  a.  The State definition is found in Gov. Code sec. 6254.7.  Despite
      the disclaimer in Sec. 3426.7 of the bill, this bill would
      completely overrule that definition.

3.  The bill must incorporate the provisions of Evidence Code
    sections 1060 and 1040 to the effect that trade secrets may
    be disclosed in thex interests of justice.  This provision was
    Crucial in Uribe v Howie, 19 Cal.App.3d ___ (1970 or so), where
    pesticide spray control reports were released in part for this
    reason.

4.  Govt. Code sec. 6254.7 makes clear that all pollution data is
    not a trade secret.  The bill should so state.

5.  Both the Federal Insecticide, Fungicide and Rodenticide Act,
    at 7 U.S.C. sec. 136h, and the Toxic Substances Control Act,
    at 1&5 U.S.C. sec. 2613, make clear that all health and safety
    data begarding chemicals is not a trade secret.  We cannot
    give up this information vital to public health.

Exhibit 7 - Page 156

ıₗₗASE RETURN IMMEDIATELY TU

ASSEMBLY COMMITTEE ON JUDICIARY

6031 State Capitol

Work Sheet

RE:   Bill No.   *AB 3738 - Harris*

Please complete this form and return it to the Assembly Committee
on Judiciary as soon as possible.

1.   Origin of the bill:

   (a)   What is the source of the bill?   (What person, organizatio
         or governmental entity, if any, requested introduction?)

         Commission on Uniform State Laws
         Robert Cornell, Chairman
         Contact:  Jack Knox  415-434-4896
   (b)   Has a similar bill been before either this or a previous
         session of the Legislature?  If so, please identify the
         Session, bill number and disposition of the bill.

         No

   (c)   Has there been an interim committee report on the bill?
         If so, please identify the report.

         No, but same as the Uniform Trade Secrets Act drafted
         for and approved by the ABA. Retains any pertinent CA stat
2.   Problem or deficiency in the present law which the bill seeks
to remedy:
         Codification of common law to provide uniformity.
         Trademarks were omitted from Re-Statement of Law
         when it waa assumed Fed. Patent Law would pre-empt State.
         Bill clarifies that trademark injunctions should not be
3.   Please attach copies for any background material in explanation
of the bill, or state where such material is available for
reference by the committee staff and letters of support or
opposition.

4    Hearing:

   (a)   Approximate amount of time necessary for hearing.
         10 min.
   (b)   Preference for date of hearing.
         Set for May 5.
   (c)   Names of witnesses to testify at the hearing.
         Jack Knox

Exhibit 7 - Page 157

# UNIFORM TRADE SECRETS ACT

*Drafted by the*

## NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS

*and by it*

Approved and Recommended for Enactment
in All the States

*at its*

ANNUAL CONFERENCE
MEETING IN ITS EIGHTY-EIGHTH YEAR
IN SAN DIEGO, CALIFORNIA
AUGUST 3-10, 1979

With Prefatory Note and Comments

Approved by the American Bar Association at its meeting in
Chicago, Illinois February 4-5, 1980.

Exhibit 7 - Page 158

AB 501                    — 4 —

1 section, a continuing misappropriation constitutes a
2 single claim.
3    3426.7.   Except as otherwise expressly provided, this
4 title does not supersede any statute relating to
5 misappropriation of a trade secret, or any statute
6 otherwise regulating trade secrets.
7    3426.8.   This title shall be applied and construed to
8 effectuate its general purpose to make uniform the law
9 with respect to the subject of this title among states
10 enacting it.
11    3426.9.   If any provision of this title or its application
12 to any person or circumstances is held invalid, the
13 invalidity does not affect other provisions or applications
14 of the title which can be given effect without the invalid
15 provision or application, and to this end the provisions of
16 this title are severable.
17    3426.10.   This title does not apply to misappropriation
18 occurring prior to January 1, 1984.

*[Handwritten annotations in left margin:]*

3426.8 This title shall not affect any contractual rights or remedies.

3426.9 ―

3426.10

3426.11 ―

3426.12  If a continuing misappropriation otherwise covered by this title began before January 1, 1984, this title does not apply to the part of the misappropriation occurring before that date. It does apply to the part occurring after January 1, 1984, unless the appropriation was not a misappropriation under the law in effect before ~~that date~~ this title.

O

99   110

Exhibit 7 - Page 159

# UNIFORM TRADE SECRETS ACT

### Commissioner' Prefatory Note

A valid patent provides a legal monopoly for seventeen years in ex-
change for public disclosure of an invention. If, however, the courts
ultimately decide that the Patent Office improperly issued a patent,
an invention will have been disclosed to competitors with no correspond-
ing benefit. In view of the substantial number of patents that are
invalidated by the courts, many businesses now elect to protect com-
mercially valuable information through reliance upon the state law of
trade secret protection. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S.
470 (1974), which establishes that, neither the Patent Clause of the
United States Constitution nor the federal patent laws pre-empt state
trade secret protection for patentable or unpatentable information,
may well have increased the extent of this reliance.

The recent decision in *Aronson v. Quick Point Pencil Co.*, 99 S.Ct.
1096, 201 USPQ 1 (1979) reaffirmed *Kewanee* and held that federal
patent law is not a barrier to a contract in which someone agrees to
pay a continuing royalty in exchange for the disclosure of trade secrets
concerning a product.

Notwithstanding the commercial importance of state trade secret
law to interstate business, this law has not developed satisfactorily.
In the first place, its development is uneven. Although there typical-
ly are a substantial number of reported decisions in states that are
commercial centers, this is not the case in less populous and more agri-
cultural jurisdictions. Secondly, even in states in which there has been
significant litigation, there is undue uncertainty concerning the
parameters of trade secret protection, and the appropriate remedies
for misappropriation of a trade secret. One commentator observed:

> "Under technological and economic pressures, industry con-
> tinues to rely on trade secret protection despite the doubtful
> and confused status of both common law and statutory reme-
> dies. Clear, uniform trade secret protection is urgently need-
> ed. . . ."
> Comment, "Theft of Trade Secrets: The Need for a Statutory
> Solution", 120 U.Pa.L.Rev. 378, 380–81 (1971).

In spite of this need, the most widely accepted rules of trade secret
law, § 757 of the Restatement of Torts, were among the sections omit-
ted from the Restatement of Torts, 2d (1978).

The Uniform Act codifies the basic principles of common law trade
secret protection, preserving its essential distinctions from patent law.

1

Exhibit 7 - Page 160

## TRADE SECRETS ACT

Under both the Act and common law principles, for example, more than one person can be entitled to trade secret protection with respect to the same information, and analysis involving the "reverse engineering" of a lawfully obtained product in order to discover a trade secret is permissible. *Compare* Uniform Act, section 1(2) (misappropriation means acquisition of a trade secret by means that should be known to be improper and unauthorized disclosure or use of information that one should know is the trade secret of another) *with Miller v. Owens-Illinois, Inc.*, 187 USPQ 47, 48 (D.Md.1975) (alternative holding) (prior, independent discovery a complete defense to liability for misappropriation) *and Wesley-Jessen, Inc., v. Reynolds*, 182 USPQ 135, 144–45, (N.D.Ill.1974) (alternative holding) (unrestricted sale and lease of camera that could be reversed engineered in several days to reveal alleged trade secrets preclude relief for misappropriation).

For liability to exist under this Act, a section 1(4) trade secret must exist and either a person's acquisition of the trade secret, disclosure of the trade secret to others, or use of the trade secret must be improper under section 1(2). The mere copying of an unpatented item is not actionable.

Like traditional trade secret law, the Uniform Act contains general concepts. The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law. The Uniform Act also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

### *The History of the Special Committee on the Uniform Trade Secrets Act*

On February 17, 1968, the Conference's subcommittee on Scope and Program reported to the Conference's Executive Committee as follows:

"14. Uniform Trade Secrets Protection Act.

This matter came to the subcommittee from the Patent Law Section of the American Bar Association from President Pierce, Commissioner Joiner and Allison Dunham. It appears that in 1966 the Patent Section of the American Bar Association extensively discussed a resolution to the effect that 'the ABA favors the enactment of a uniform state law to protect against the wrongful disclosure or wrongful appropriation of trade secrets, know-how or other information maintained in confidence by another.' It was decided, however, not to put such a resolution to a vote at that time but that the appropriate Patent Section Committee would further consider the problem. In determining what would be appropriate for the

2

Exhibit 7 - Page 161

## TRADE SECRETS ACT

Conference to do at this juncture, the following points should be considered:

(1) At the present much is going on by way of statutory development, both federally and in the states.

(2) There is a fundamental policy conflict still unresolved in that the current state statutes that protect trade secrets tend to keep innovations secret, while our federal patent policy is generally designed to encourage public disclosure of innovations. It may be possible to devise a sensible compromise between these two basic policies that will work, but to do so demands coordination of the statutory reform efforts of both the federal government and the states.

(3) The Section on Patents, the ABA group that is closest to this problem, is not yet ready to take a definite position.

It is recommended that a special committee be appointed to investigate the question of the drafting of a uniform act relating to trade secret protection and to establish liaison with the Patent Law Section, the Corporation, Banking and Business Law Section, and the Antitrust Law Section of the American Bar Association."

The Executive Committee, at its Midyear Meeting held February 17 and 18, 1968, in Chicago, Illinois, "voted to authorize the appointment of a Special Committee on Uniform Trade Secrets Protection Act to investigate the question of drafting an act on the subject with instructions to establish liaison with the Patent Law Section, the Corporation, Banking and Business Law Section, and the Antitrust Law Section of the American Bar Association." Pursuant to that action, a Special Committee was appointed, which included Professor Richard Cosway of Seattle, Washington, who is the only original Committee member to serve to the present day. The following year saw substantial changes in the membership of the Committee. Professor Richard F. Dole, Jr., of Iowa City, Iowa, became a member then and has served as a member ever since.

The work of the Committee went before the Conference first on Thursday afternoon, August 10, 1972, when it was one of three Acts considered on first reading. Thereafter, for a variety of reasons, the Committee became inactive, and, regrettably, its original Chairman died on December 7, 1974. In 1976, the Committee became active again and presented a Fifth Tentative Draft of its proposed bill at the 1978 Annual Meeting of the National Conference of Commissioners on Uniform State Laws.

Despite the fact that there had previously been a first reading, the Committee was of the opinion that, because of the lapse of time, the 1978 presentation should also be considered a first reading. The Con-

3

Exhibit 7 - Page 162

## TRADE SECRETS ACT

ference concurred, and the bill was proposed for final reading and adoption at the 1979 Annual Meeting.

On August 9, 1979, the Act was approved and recommended for enactment in all the states.

## UNIFORM TRADE SECRETS ACT

Sec.
1. Definitions.
2. Injunctive Relief.
3. Damages.
4. Attorney's Fees.
5. Preservation of Secrecy.
6. Statute of Limitations.
7. Effect on Other Law.
8. Uniformity of Application and Construction.
9. Short Title.
10. Severability.
11. Time of Taking Effect.
12. Repeal.

*Be it enacted . . . . . . . .*

## § 1.   [Definitions]

As used in this Act, unless the context requires otherwise:

(1) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means;

(2) "Misappropriation" means:

   (i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

   (ii) disclosure or use of a trade secret of another without express or implied consent by a person who

      (A) used improper means to acquire knowledge of the trade secret; or

      (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

         (I) derived from or through a person who had utilized improper means to acquire it;

         (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

4

Exhibit 7 - Page 163

## TRADE SECRETS ACT

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(3) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

### Commissioners' Comment

One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974). The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1. Discovery by independent invention;

2. Discovery by "reverse engineering", that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful;

3. Discovery under a license from the owner of the trade secret;

4. Observation of the item in public use or on public display;

5. Obtaining the trade secret from published literature.

Improper means could include otherwise lawful conduct which is improper under the circumstances; *e. g.*, an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant. *E. I. du Pont de Nemours & Co., Inc. v. Christopher*, 431 F.2d 1012 (CA 5, 1970), cert. den. 400 U.S. 1024 (1970). Because the trade secret can be de-

5

Exhibit 7 - Page 164

## TRADE SECRETS ACT

stroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will *not* work could be of great value to a competitor.

*Cf. Telex Corp. v. IBM Corp.,* 510 F.2d 894 (CA 10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for developmental cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to and not being readily ascertainable by proper means by other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis", and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade

6

Exhibit 7 - Page 165

## TRADE SECRETS ACT

secrets against flagrant industrial espionage. See *E. I. du Pont de Nemours & Co., Inc. v. Christopher, supra.* It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

## § 2.   [Injunctive Relief]

(a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

### Commissioners' Comment

Injunctions restraining future use and disclosure of misappropriated trade secrets frequently are sought. Although punitive perpetual injunctions have been granted, *e. g., Elcor Chemical Corp. v. Agri-Sul, Inc.,* 494 S.W. 2d 204 (Tex.Civ.App.1973), Section 2(a) of this Act adopts the position of the trend of authority limiting the duration of injunctive relief to the extent of the temporal advantage over good faith competitors gained by a misappropriator. See, *e. g., K–2 Ski Co. v. Head Ski Co., Inc.,* 506 F. 2d 471 (CA9, 1974) (maximum appropriate duration of both temporary and permanent injunctive relief is period of time it would have taken defendant to discover trade secrets lawfully through either independent development or reverse engineering of plaintiff's products).

The general principle of section 2(a) and (b) is that an injunction should last for as long as is necessary, but no longer than is necessary, to eliminate the commercial advantage or "lead time" with respect to good faith competitors that a person has obtained through misappropriation. Subject to any additional period of restraint necessary to negate lead time, an injunction accordingly should terminate when a former trade secret becomes either generally known to good faith competitors or generally knowable

7

Exhibit 7 - Page 166

## TRADE SECRETS ACT

to them because of the lawful availability of products that can be reverse engineered to reveal a trade secret.

For example, assume that A has a valuable trade secret of which B and C, the other industry members, are originally unaware. If B subsequently misappropriates the trade secret and is enjoined from use, but C later lawfully reverse engineers the trade secret, the injunction restraining B is subject to termination as soon as B's lead time has been dissipated. All of the persons who could derive economic value from use of the information are now aware of it, and there is no longer a trade secret under section 1(4). It would be anti-competitive to continue to restrain B after any lead time that B had derived from misappropriation had been removed.

If a misappropriator either has not taken advantage of lead time or good faith competitors already have caught up with a misappropriator at the time that a case is decided, future disclosure and use of a former trade secret by a misappropriator will not damage a trade secret owner and no injunctive restraint of future disclosure and use is appropriate. See, e. g., *Northern Petrochemical Co. v. Tomlinson*, 484 F.2d 1057 (CA7, 1973) (affirming trial court's denial of preliminary injunction in part because an explosion at its plant prevented an alleged misappropriator from taking advantage of lead time); *Kubik, Inc. v. Hull*, 185 USPQ 391 (Mich.App.1974) (discoverability of trade secret by lawful

reverse engineering made by injunctive relief punitive rather than compensatory).

Section 2(b) deals with a distinguishable situation in which future use by a misappropriator will damage a trade secret owner but an injunction against future use nevertheless is unreasonable under the particular circumstances of a case. Situations in which this unreasonableness can exist include the existence of an overriding public interest which requires the denial of a prohibitory injunction against future damaging use and a person's reasonable reliance upon acquisition of a misappropriated trade secret in good faith and without reason to know of its prior misappropriation that would be prejudiced by a prohibitory injunction against future damaging use. *Republic Aviation Corp. v. Schenk*, 152 USPQ 830 (N.Y.Sup.Ct.1967) illustrates the public interest justification for withholding prohibitory injunctive relief. The court considered that enjoining a misappropriator from supplying the U.S. with an aircraft weapons control system would have endangered military personnel in Viet Nam. The prejudice to a good faith third party justification for withholding prohibitory injunctive relief can arise upon a trade secret owner's notification to a good faith third party that the third party has knowledge of a trade secret as a result of misappropriation by another. This notice suffices to make the third party a misappropriator thereafter under section 1(2)(ii)(B)(I). In weighing an aggrieved person's interests and the inter-

8

## TRADE SECRETS ACT

ests of a third party who has relied in good faith upon his or her ability to utilize information, a court may conclude that restraining future use of the information by the third party is unwarranted. With respect to innocent acquirers of misappropriated trade secrets, section 2(b) is consistent with the principle of 4 Restatement Torts (First) § 758(b) (1939), but rejects the Restatement's literal conferral of absolute immunity upon all third parties who have paid value in good faith for a trade secret misappropriated by another. The position taken by the Uniform Act is supported by *Forest Laboratories, Inc. v. Pillsbury Co.*, 452 F.2d 621 (CA7, 1971) in which a defendant's purchase of assets of a corporation to which a trade secret had been disclosed in confidence was not considered to confer immunity upon the defendant.

When section 2(b) applies, a court is given discretion to substitute an injunction conditioning future use upon payment of a reasonable royalty for an injunction prohibiting future use. Like all injunctive relief for misappropriation, a royalty order injunction is appropriate only if a misappropriator has obtained a competitive advantage through misappropriation and only for the duration of that competitive advantage. In some situations, typically those involving good faith acquirers of trade secrets misappropriated by others, a court may conclude that the same considerations that render a prohibitory injunction against future use inappropriate also render a royalty order injunction inappropriate. See, generally, *Prince Manufacturing, Inc. v. Automatic Partner, Inc.*, 198 USPQ 618 (N.J.Super. Ct.1976) (purchaser of misappropriator's assets from receiver after trade secret disclosed to public through sale of product not subject to liability for misappropriation).

Section 2(c) authorizes mandatory injunctions requiring that a misappropriator return the fruits of misappropriation to an aggrieved person, *e. g.*, the return of stolen blueprints or the surrender of surreptitious photographs or recordings.

Where more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy.

## § 3.   [Damages]

(a)  In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

9

Exhibit 7 - Page 168