## TRADE SECRETS ACT

(b) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a).

### Commissioners' Comment

Like injunctive relief, a monetary recovery for trade secret misappropriation is appropriate only for the period in which information is entitled to protection as a trade secret, plus the additional period, if any, in which a misappropriator retains an advantage over good faith competitors because of misappropriation. Actual damage to a complainant and unjust benefit to a misappropriator are caused by misappropriation during this time alone. See *Conmar Products Corp. v. Universal Slide Fastener Co.*, 172 F. 2d 150 (CA2, 1949) (no remedy for period subsequent to disclosure of trade secret by issued patent); *Carboline Co. v. Jarboe*, 454 S.W.2d 540 (Mo. 1970) (recoverable monetary relief limited to period that it would have taken misappropriator to discover trade secret without misappropriation). A claim for actual damages and net profits can be combined with a claim for injunctive relief, but, if both claims are granted, the injunctive relief ordinarily will preclude a monetary award for a period in which the injunction is effective.

As long as there is no double counting, Section 3(a) adopts the principle of the recent cases allowing recovery of both a complainant's actual losses and a misappropriator's unjust benefit that are caused by misappropriation. *E. g., Tri-Tron International v. Velto*, 525 F.2d 432 (CA9, 1975)

(complainant's loss and misappropriator's benefit can be combined). Because certain cases may have sanctioned double counting in a combined award of losses and unjust benefit, *e. g., Telex Corp. v. IBM Corp.*, 510 F.2d 894 (CA10, 1975) (*per curiam*), cert. dismissed, 423 U.S. 802 (1975) (IBM recovered rentals lost due to displacement by misappropriator's products without deduction for expenses saved by displacement; as a result of rough approximations adopted by the trial judge, IBM also may have recovered developmental costs saved by misappropriator through misappropriation with respect to the same customers), the Act adopts an express prohibition upon the counting of the same item as both a loss to a complainant and an unjust benefit to a misappropriator.

Monetary relief can be appropriate whether or not injunctive relief is granted under section 2. If a person charged with misappropriation has acquired knowledge of a trade secret in good faith without reason to know of its misappropriation by another, however, the same considerations that can justify denial of all injunctive relief also can justify denial of all monetary relief. See *Conmar Products Corp. v. Universal Slide Fastener Co.*, 172 F. 2d 1950 (CA2, 1949) (no relief against new employer of employee subject to contractual obligation not to disclose former employer's

10

Exhibit 7 - Page 169

# Using This Report

Legislative intent is a matter of law that is often resolved by a factual inquiry. Because it is a factual inquiry many lawyers instinctively think in terms of admissibility of documents. But as a matter of law decided by the court, rules of evidence developed to protect juries have no applicability. Factual inquiries into Legislative Intent need only address two issues, the authenticity of the information relied upon and the probative value of the information.

## *Probative Value Overview*

Legislative documents vary in their probative value. Documents that are developed as a formal part of the legislative process are inherently reliable and therefore of high probative value due to the scrutiny imposed by the formal requirements of legislative procedures. Documents developed as a formal part of the legislative process can therefore often be primary evidence of intent. Other documents are of value as circumstantial evidence of intent. For example, simple file documents are of lesser probative value due to the lack of scrutiny imposed on documents a legislator or legislative staff person may choose to file. However, a simple file document may become a primary source of intent if supported by corroborative statements in other documents.

## *Procedure - If You Are In A California Court*

Evidence Code Sections 450 et seq. provide authority for a court to take judicial notice of documents relating to legislative history. A leading case citing Evidence Code Section 452(c) as authority for a court to take judicial notice of legislative documents is Post v. Prati, 90 Cal. App. 3d 626 (1979). The court relied upon a variety of legislative documents, including correspondence to the Governor from state agencies and individual legislators. Although a formal request for judicial notice is probably better practice, in Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995) 39 Cal. App. 4th 1379, the court accepted and relied upon legislative documents simply appended to a brief, apparently with no formal request for judicial notice. Legislative history documentation obtained from a commercial service can be claimed as costs under CCP 1033.5. Van DeKamp v. Gumbiner, (1990) 221 Cal. App. 3d, 1260.

## *Procedure - If You Are In Federal Court or Another State Court*

Procedures vary from jurisdiction to jurisdiction. Generally a Federal Court exercising diversity jurisdiction and seeking to determine the intent of a State legislative enactment will look to the law of that State to determine how the State statute is to be interpreted. (See 28 USC Section 1652). State procedural rules will be followed as long as there is no direct conflict with the federal rules. (Hanna v. Plummer, 380 U.S. 460 (1965)).

## *Further Authorities*

For more in depth discussion visit LEGISLATIVE HISTORY CLEARINGHOUSE - www.lhclearinghouse.com. In addition, a brief overview of frequently cited authorities and topical treatises regarding the use of legislative history documents can be found on the back cover of this report.

Exhibit 7 - Page 170

# Indiana Code

## TITLE 24

## TRADE REGULATIONS, CONSUMER SALES AND CREDIT

ARTICLE.
2. TRADEMARKS, ch. 3.
4.5. UNIFORM CONSUMER CREDIT CODE, chs. 1-3, 5.
5. CONSUMER SALES, ch. 0.5.

## ARTICLE 2

## TRADEMARKS

CHAPTER.
3. TRADE SECRETS, 24-2-3-1 — 24-2-3-8.

## CHAPTER 3

### TRADE SECRETS

SECTION.
24-2-3-1.   Title and construction of chapter.
24-2-3-2.   Definitions.
24-2-3-3.   Misappropriation — Injunction — Payment of royalties.
24-2-3-4.   Misappropriation — Damages.
24-2-3-5.   Attorney's fees.

SECTION.
24-2-3-6.   Preservation of trade secret — Court actions authorized.
24-2-3-7.   Statute of limitations.
24-2-3-8.   Application to misappropriations beginning before September 1, 1982.

**24-2-3-1. Title and construction of chapter. —** (a) This chapter may be cited as the Uniform Trade Secrets Act.

(b) This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject matter of this chapter among states enacting the provisions of this chapter.

(c) The chapter displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law. [IC 24-2-3-1, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-2. Definitions. —** As used in this chapter, unless the context requires otherwise:

"Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

"Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

1

Exhibit 7 - Page 171

## TRADE SECRETS ACT

trade secrets where new employer innocently had committed $40,000 to develop the trade secrets prior to notice of misappropriation).

If willful and malicious misappropriation is found to exist, section 3(b) authorizes the court to award a complainant exemplary damages in addition to the actual recovery under section 3(a) an amount not exceeding twice that

recovery. This provision follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury, *compare* 35 U.S.C. § 284 (1976).

Whenever more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy.

## § 4.    [Attorney's Fees]

If (i) a claim of misappropriation is made in bad faith, (ii) a motion to terminate an injunction is made or resisted in bad faith, or (iii) willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

### Commissioners' Comment

Section 4 allows a court to award reasonable attorney fees to a prevailing party in specified circumstances as a deterrent to specious claims of misappropriation, to specious efforts by a misappropriator to terminate injunctive relief, and to willful and malicious misappropriation. In the latter situation, the court should take

into consideration the extent to which a complainant will recover exemplary damages in determining whether additional attorney's fees should be awarded. Again, patent law is followed in allowing the judge to determine whether attorney's fees should be awarded even if there is a jury, *compare* 35 U.S.C. Section 285 (1976).

## § 5.    [Preservation of Secrecy]

In an action under this Act, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of

11

Exhibit 7 - Page 172

## TRADE SECRETS ACT

the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

### Commissioners' Comment

If reasonable assurances of maintenance of secrecy could not be given, meritorious trade secret litigation would be chilled. In fashioning safeguards of confidentiality, a court must ensure that a respondent is provided sufficient information to present a defense and a trier of fact sufficient information to resolve the merits. In addition to the illustrative techniques specified in the statute, courts have protected secrecy in these cases by restricting disclosures to a party's counsel and his or her assistants and by appointing a disinterested expert as a special master to hear secret information and report conclusions to the court.

## § 6.   [Statute of Limitations]

An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

### Commissioners' Comment

There presently is a conflict of authority as to whether trade secret misappropriation is a continuing wrong. *Compare Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288 (CA9, 1969) (no continuing wrong under California law—limitation period upon all recovery begins upon initial misappropriation) with *Underwater Storage, Inc. v. U. S. Rubber Co.*, 371 F.2d 950 (CADC, 1966), cert. den., 386 U.S. 911 (1967) (continuing wrong under general principles—limitation period with respect to a specific act of misappropriation begins at the time that the act of misappropriation occurs).

This Act rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation. If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights.

12

Exhibit 7 - Page 173

TRADE SECRETS ACT

## § 7.   [Effect on Other Law]

(a) This Act displaces conflicting tort, restitutionary, and other law of this State pertaining to civil liability for misappropriation of a trade secret.

(b) This Act does not affect:

(1) contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; or

(2) criminal liability for misappropriation of a trade secret.

### Commissioners' Comment

This Act is not a comprehensive remedy. It applies to duties imposed by law in order to protect competitively significant secret information. It does not apply to duties voluntarily assumed through an express or an implied-in-fact contract. The enforceability of covenants not to disclose trade secrets and covenants not to compete that are intended to protect trade secrets, for example, are governed by other law. The Act also does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal.

## § 8.   [Uniformity of Application and Construction]

This Act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it.

## § 9.   [Short Title]

This Act may be cited as the Uniform Trade Secrets Act.

13

Exhibit 7 - Page 174

# TRADE SECRETS ACT

## § 10.    [Severability]

If any provision of this Act or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

## § 11.    [Time of Taking Effect]

This Act takes effect on _____, and does not apply to misappropriation occurring prior to the effective date.

## § 12.    [Repeal]

The following Acts and parts of Acts are repealed:

   (1)

   (2)

   (3)

14

Exhibit 7 - Page 175

## BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 176

KF165 A5

# UNIFORM LAWS
# ANNOTATED

# Volume 14

## Civil Procedural and Remedial Laws

With

Annotations From State and Federal Courts

ST. PAUL, MINN.

WEST PUBLISHING CO.



LAW LIBRARY

AUG 3 0 1990

UNIVERSITY OF CALIFORNIA
DAVIS

Exhibit 7 - Page 177

# UNIFORM TRADE SECRETS ACT
# WITH 1985 AMENDMENTS

(The 1985 Amendments
are indicated by Underscore and Strikeout)

**Section**

1.   Definitions.
2.   Injunctive Relief.
3.   Damages.
4.   Attorney's Fees.
5.   Preservation of Secrecy.
6.   Statute of Limitations.
7.   Effect on Other Law.
8.   Uniformity of Application and Construction.
9.   Short Title.
10.  Severability.
11.  Time of Taking Effect.
12.  Repeal.

---

### WESTLAW Computer Assisted Legal Research

WESTLAW supplements your legal research in many ways.  WESTLAW allows you to
- update your research with the most current information
- expand your library with additional resources
- retrieve direct history, precedential history and parallel citations with the Insta-Cite service

For more information on using WESTLAW to supplement your research, see the WESTLAW Electronic Research Guide, which follows the Explanation.

---

### Law Review Commentaries

Application of trade secret law to new technology—Unwinding the tangled web. Stephen J. Davidson & Robert L. DeMay.  12 Wm. Mitchell L.Rev. 579 (1986).

Balancing employers' trade secret interests in high-technology products against employees' rights and public interests in Minnesota. 69 Minn.Law Review 984 (1985).

Invention and ritual: Notes on the interrelation of magic and intellectual property in preliterate societies. Mark C. Suchman.  89 Columbia L.Rev. 1264 (1989).

Proprietary rights and the norms of science in biotechnology research. Rebecca S. Eisenberg.  97 Yale L.J. 177 (1987).

Uniform Trade Secrets Act.  Ramon A. Klitzke.  64 Marquette L.Rev. 277 (1980).

## § 1.  Definitions.

As used in this [Act], unless the context requires otherwise:

(1) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means;

437

Exhibit 7 - Page 178

§ 1                                                              TRADE SECRETS

(2) "Misappropriation" means:

(i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(ii) disclosure or use of a trade secret of another without express or implied consent by a person who

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

(I) derived from or through a person who had utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of his [or her] position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(3) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

### COMMENT

One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974). The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1. Discovery by independent invention;

2. Discovery by "reverse engineering", that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must, of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful;

3. Discovery under a license from the owner of the trade secret;

4. Observation of the item in public use or on public display;

5. Obtaining the trade secret from published literature.

438

Exhibit 7 - Page 179

**TRADE SECRETS**                                                    **§ 1**

Improper means could include otherwise lawful conduct which is improper under the circumstances; *e.g.*, an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant. *E.I. du Pont de Nemours & Co., Inc. v. Christopher*, 431 F.2d 1012 (CA5, 1970), cert. den. 400 U.S. 1024 (1970). Because the trade secret can be destroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will *not* work could be of great value to a competitor.

*Cf. Telex Corp. v. IBM Corp.*, 510 F.2d 894 (CA10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for developmental cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to and not being readily ascertainable by proper means by other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal ~~person~~ persons who can obtain economic benefit ~~from~~ information ~~is~~ are unaware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis", and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets against flagrant industrial espionage. See *E.I. du Pont de Nemours & Co., Inc. v. Christopher, supra.* It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

**Amendments**

1985 amendments to text and/or changes in comments shown by underlines [added material] and strikeouts [deleted material].

439

Exhibit 7 - Page 180

§ 1                                                    TRADE SECRETS

Action in Adopting Jurisdictions

**Variations from Official Text:**

Alaska. Omits par. (3).

In par. (4), introductory material, omits ", including a formula, pattern, compilation, program, device, method, technique, or process,".

California. In par. (4)(i), substitutes "the public or to" for ", and not being readily ascertainable by proper means by,".

Colorado. Par. (4) reads: "(4) 'Trade secret' means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a trade secret the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes."

Connecticut. Par. (2)(ii)(B)(II) reads: "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, including but not limited to disclosures made under section 1-19, sections 31-40j to 31-40p, inclusive, or subsection (b) of section 12-62; or".

In par. (4), introductory material reads as follows: "Notwithstanding the provisions of sections 1-19, 31-40j to 31-40p, inclusive, and subsection (b) of section 12-62, 'trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that:".

Delaware. Introductory material reads: "The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:".

In par. (2)(ii)(B), omits "secret" following "trade".

District of Columbia. Introductory material reads: "For the purposes of this chapter, the term:".

In par. (1), substitutes "means" for "includes".

In par. (2)(ii)(B), omits "his knowledge of".

In par. (3), omits "business trust,".

Par. (4)(ii) reads: "Is the subject of reasonable efforts to maintain its secrecy."

Idaho. Effective until July 1, 1993, the Idaho section (I.C. 48-801) reads as follows:

"As used in this chapter unless the context requires otherwise:

"(1) 'Improper means' include theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

"(2) 'Misappropriation' means:

"(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

"(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

"(A) Used improper means to acquire knowledge of the trade secret; or

"(B) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

"(i) Derived from or through a person who had utilized improper means to acquire it;

"(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

"(iii) Derived from or through a person who owned a duty to the person seeking relief to maintain its secrecy or limit its use; or

"(C) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"(3) 'Person' means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

"(4) 'Computer program' means information which is capable of causing a computer to perform logical operation(s) and:

"(a) Is contained on any media or in any format;

"(b) Is capable of being input, directly or indirectly, into a computer; and

"(c) Has prominently displayed a notice of copyright, or other proprietary or confidential marking, either within or on the media containing the information.

"(5) 'Trade secret' means information, including a formula, pattern, compilation, pro-

440

Exhibit 7 - Page 181

(A) Used improper means to acquire knowledge of the trade secret;

(B) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. [IC 24-2-3-2, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-3. Misappropriation — Injunction — Payment of royalties.**
— (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) When neither damages nor unjust enrichment are provable, the court may order payment of a reasonable royalty for no longer than the period during which the use could have been prohibited.

(c) If the court determines in exceptional circumstances that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(d) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order. [IC 24-2-3-3, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-4. Misappropriation — Damages.** — (a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

(b) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a). [IC 24-2-3-4, as added by Acts 1982, P.L. 148, § 1.]

Exhibit 7 - Page 182

**Encyclopedias**

Duty of agent after termination of agency not to use or disclose trade secrets of principal, see C.J.S. Agency § 287.

Duty of employee not to disclose trade secrets of employer, see C.J.S. Master and Servant § 72.

Improper use of trade secrets as unfair competition, see C.J.S. Trade–Marks, Trade–Names, and Unfair Competition §§ 121, 122.

Injunctions with respect to trade secrets, see C.J.S. Injunctions §§ 151 to 156.

Tort of misuse or interference with trade secrets, see C.J.S. Torts § 48.

### WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Explanation.

### Notes of Decisions

Generally  3
Burden of proof  22
Improper means  4
Jurisdiction  21
Law governing  2
Misappropriation  5
Purpose  1
Questions of fact  23
Trade secret
  Generally  6
  Common law  7
  Competitive advantage  8
  Customer lists and information  15
  Design modifications  16
  Economic value and competitive advantage  8
  Expense of development  11
  Formulas and instructions therefor  14
  Held not to be trade secret in particular cases  20
  Held to be trade secret in particular cases  19
  Hiring agreements and noncompetition covenants  13
  Information not generally known or readily ascertainable  9
  Maintaining secrecy  12
  Modification by competitor to meet customer specification  17
  Multiple owners of trade secret  18
  Noncompetition covenants  13
  Novelty  10

#### 1. Purpose

Uniform Trade Secrets Act was intended by legislature to serve public interest by giving protection to trade secrets, which are valuable assets to any business. Kozuch v. CRA–MAR Video Center, Inc., Ind.App. 3 Dist.1985, 478 N.E.2d 110.

Purpose of Trade Secrets Act is to prevent one person or business from profiting from a trade secret developed by another, because it would thus be acquiring free competitive advantage; Act was never intended to apply to discovery in civil actions.  Stork–Werkspoor Diesel V.V. v. Koek, La.App. 5 Cir.1988, 534 So.2d 983.

#### 2. Law governing

Uniform Trade Secrets Act controls in event of conflict between prior case law and UTSA as enacted by California legislature.  American Credit Indem. Co. v. Sacks, 1989, 262 Cal.Rptr. 92, 213 C.A.3d 622.

Not all state legal and equitable rights equivalent to copyright are preempted by federal law and federal copyright law does not preempt state trade secrets claims; copyright does not protect idea itself, only its particular expression while, by contrast, trade secrets law protect author's very ideas if they possess some novelty and are undisclosed or disclosed only on basis of confidentiality.  Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

#### 3. Generally

Minnesota Uniform Trade Secrets Act displaced only cause of action for misappropriation of trade secrets, and not causes of action which had "more" to their factual allegations than mere misuse or misappropriation of trade secrets, i.e. causes of action which existed in commercial area and which were not dependent on trade secrets.  Micro Display Systems, Inc. v. Axtel, Inc., D.Minn.1988, 699 F.Supp. 202.

Use of trade secrets after contract termination is tort.  Span-Deck, Inc. v. Fabcon, Inc., D.C.Minn.1983, 570 F.Supp. 81.

443

Exhibit 7 - Page 183

## § 1
Note 15

TRADE SECRETS

American Credit Indem. Co. v. Sacks, 1989, 262 Cal.Rptr. 92, 213 C.A.3d 622.

Credit insurance underwriter's customer list was information protected as trade secret under the California version of the Uniform Trade Secrets Act or under common law; the customer list had potential economic value because it would allow competitor to direct sales efforts to elite 5.5 percent of potential customers which had evinced predisposition to purchase credit insurance, and underwriter took reasonable steps to ensure secrecy of the information, even though particular former employee accused of misappropriation of trade secret claimed she never signed confidentiality agreement. American Credit Indemn. Co. v. Sacks, 1989, 262 Cal.Rptr. 92, 213 C.A.3d 622.

Professional employees of accounting firm did not engage in solicitation or unfair competition when they used company "rolodex" to obtain addresses of clients for whom they had provided professional services in order to mail those clients announcements of their formation of new accounting partnership. Moss, Adams & Co. v. Shilling, 1986, 224 Cal.Rptr. 456, 179 C.A.3d 124.

Customer lists can be properly classified as "trade secrets" under appropriate circumstances as defined under Uniform Trade Secrets Act. Michels v. Dyna–Kote Industries, Inc., Ind.App. 1 Dist.1986, 497 N.E.2d 586.

Video center's customer list, including only names of purchasers of video hardware and purchasers of memberships in video rental club, was a "trade secret" under Uniform Trade Secrets Act, where list could not have been created by any means other than through business operations, list derived its independent economic value from not being generally known or ascertainable by competitors, and video center took reasonable efforts to maintain secrecy of list through strict instructions to its computer programmers and operators and by locking up computer disks containing list. Kozuch v. CRA–MAR Video Center, Inc., Ind.App. 3 Dist.1985, 478 N.E.2d 110.

Customer lists and lists of persons who have made inquiries as a result of businesses' advertisements may be eligible for trade secret protection. Minuteman, Inc. v. Alexander, 1989, 434 N.W.2d 773, 147 Wis.2d 842.

Securities underwriter did not act with unclean hands in requesting assistance of police in investigating what was originally suspected to be leak of customer information from within company, for purposes of determining whether customer information obtained by purchaser of underwriter's scrap paper was protected as trade secret. B.C. Ziegler and Co.

v. Ehren, App. 1987, 414 N.W.2d 48, 141 Wis.2d 19.

Securities underwriter's customer information, obtained through batches of paper scrap containing customer names and account summaries, qualified for trade secret status; customer account information was stored in locked cabinets in locked room, accessible to one or two of employees, underwriter had policy of confidentiality in disposing of its business paper, and underwriter had made concerted effort to develop customer information over 75 years of doing business. B.C. Ziegler and Co. v. Ehren, App.1987, 414 N.W.2d 48, 141 Wis.2d 19.

Determination that employer's customer list was not trade secret was supported by evidence that employer did its marketing through independent representatives, that representatives had no confidentiality agreement with employer, and that independent representatives developed their own customer lists. Crown Holding Corp. v. Larson, Minn.App.1987, 410 N.W.2d 373.

### 16. —— Design modifications

Inventor's design modifications to rear wheel suspension for off-road motorcycle which would extend the rear wheel travel over earlier rising-rate designs and design of an alternate mount were trade secrets. Richardson v. Suzuki Motor Co., Ltd., Cal.1989, 868 F.2d 1226, certiorari denied 110 S.Ct. 154, 107 L.Ed.2d 112.

### 17. —— Modification by competitor to meet customer specification

If new customer devised an application for product claimed to be the result of trade secrets and if competitor manufacturer modified its own motor to meet those new specifications, manufacturer could not object Electro-Craft Corp. v. Controlled Motion, Inc., Minn. 1983, 332 N.W.2d 890.

### 18. —— Multiple owners of trade secret

Owner of trade secret need not be the only one in the market; several developers of the same information may have trade secret rights in that information; if an outsider would obtain a valuable share of the market by gaining certain information, the information may be a trade secret if not known or readily ascertainable. Electro-Craft Corp. v. Controlled Motion, Inc., Minn.1983, 332 N.W.2d 890.

### 19. —— Held to be trade secret in particular cases

Identity of consultants for former employer was not generally known or readily ascertainable, provided competitive advantage, was obtained at manufacturer's expense, was intend-

448

Exhibit 7 - Page 184

TRADE SECRETS                                                        § 2

ed to be confidential, and, therefore, was "trade secret" under Minnesota and California law. Surgidev Corp. v. Eye Technology, Inc., D.Minn.1986, 648 F.Supp. 661, affirmed 828 F.2d 452.

Computer software system specially designed to meet financial accounting and reporting requirements of public bodies such as school districts and county governments was a "trade secret," as it derived independent economic value from being generally unknown and available solely from its developer, and as developer took reasonable efforts to maintain its secrecy. Aries Information Systems, Inc. v. Pacific Management Systems Corp., Minn.App.1985, 366 N.W.2d 366.

Pipe coating process constituted trade secret where process was not known outside of manufacturer's company, only a few employees of manufacturer knew process, extensive measures were taken to guard secrecy of process, process allowed manufacturer to produce superior product which gave him competitive edge in pipe producing field, process was developed over a number of years and required extensive tests, and information on process of pipe could not be legitimately acquired or duplicated by others. Saunders v. Florence Enameling Co., Inc., Ala.1988, 540 So.2d 651.

**20. —— Held not to be trade secret in particular cases**

Under California law, generalized advice concerned consistency of competitor's pizza crust, which distributor passed on to pizza restaurant franchisor, was not trade secret, whose appropriation could give rise to claim of unfair competition. Tominaga v. Shepherd, C.D.Cal. 1988, 682 F.Supp. 1489.

**21. Jurisdiction**

It was fair and reasonable to require Japanese corporation to defend against misappropriation of trade secrets action in California; California had manifested strong interest in providing forum to its residents for causes of action arising from misappropriation of trade secrets by its enactment of Uniform Trade Secrets Act, California was more appropriate for purposes of availability of evidence, and Japan had relatively small interest in protecting California trade secrets or providing foreign plaintiffs forum to litigate against resident defendant. Magnecomp Corp. v. Athene Co., Ltd., 1989, 257 Cal.Rptr. 278, 209 C.A.3d 526.

**22. Burden of proof**

*See Notes of Decisions under note number 12 in section 2, infra.*

**23. Questions of fact**

Whether process constitutes trade secret is question of fact. Saunders v. Florence Enameling Co., Inc., Ala.1988, 540 So.2d 651.

## § 2. Injunctive Relief.

(a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) ~~If the court determines that it would be unreasonable to prohibit future use~~ In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time ~~the~~ for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation that renders a prohibitive injunction inequitable.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

### COMMENT

Injunctions restraining future use and disclosure of misappropriated trade secrets frequently are sought. Although punitive perpetual injunctions have been

449

Exhibit 7 - Page 185

**§ 2**                                                    **TRADE SECRETS**

granted, *e.g.*, *Elcor Chemical Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204 (Tex.Civ.App. 1973), Section 2(a) of this Act adopts the position of the trend of authority limiting the duration of injunctive relief to the extent of the temporal advantage over good faith competitors gained by a misappropriator. See, *e.g.*, *K–2 Ski Co. v. Head Ski Co., Inc.*, 506 F.2d 471 (CA9, 1974) (maximum appropriate duration of both temporary and permanent injunctive relief is period of time it would have taken defendant to discover trade secrets lawfully through either independent development or reverse engineering of plaintiff's products).

The general principle of Section 2(a) and (b) is that an injunction should last for as long as is necessary, but no longer than is necessary, to eliminate the commercial advantage or "lead time" with respect to good faith competitors that a person has obtained through misappropriation. Subject to any additional period of restraint necessary to negate lead time, an injunction accordingly should terminate when a former trade secret becomes either generally known to good faith competitors or generally knowable to them because of the lawful availability of products that can be reverse engineered to reveal a trade secret.

For example, assume that A has a valuable trade secret of which B and C, the other industry members, are originally unaware. If B subsequently misappropriates the trade secret and is enjoined from use, but C later lawfully reverse engineers the trade secret, the injunction restraining B is subject to termination as soon as B's lead time has been dissipated. All of the persons who could derive economic value from use of the information are now aware of it, and there is no longer a trade secret under Section 1(4). It would be anti-competitive to continue to restrain B after any lead time that B had derived from misappropriation had been removed.

If a misappropriator either has not taken advantage of lead time or good faith competitors already have caught up with a misappropriator at the time that a case is decided, future disclosure and use of a former trade secret by a misappropriator will not damage a trade secret owner and

no injunctive restraint of future disclosure and use is appropriate. See, *e.g.*, *Northern Petrochemical Co. v. Tomlinson*, 484 F.2d 1057 (CA7, 1973) (affirming trial court's denial of preliminary injunction in part because an explosion at its plant prevented an alleged misappropriator from taking advantage of lead time); *Kubik, Inc. v. Hull*, 185 USPQ 391 (Mich.App. 1974) (discoverability of trade secret by lawful reverse engineering made by injunctive relief punitive rather than compensatory).

Section 2(b) deals with a ~~distinguishable~~ the special situation in which future use by a misappropriator will damage a trade secret owner but an injunction against future use nevertheless is ~~unreasonable under the particular~~ inappropriate due to exceptional circumstances ~~of a case. Situations in which this unreasonableness can exist~~ Exceptional circumstances include the existence of an overriding public interest which requires the denial of a prohibitory injunction against future damaging use and a person's reasonable reliance upon acquisition of a misappropriated trade secret in good faith and without reason to know of its prior misappropriation that would be prejudiced by a prohibitory injunction against future damaging use. *Republic Aviation Corp. v. Schenk*, 152 USPQ 830 (N.Y.Sup.Ct.1967) illustrates the public interest justification for withholding prohibitory injunctive relief. The court considered that enjoining a misappropriator from supplying the U.S. with an aircraft weapons control system would have endangered military personnel in Viet Nam. The prejudice to a good faith third party justification for withholding prohibitory injunctive relief can arise upon a trade secret owner's notification to a good faith third party that the third party has knowledge of a trade secret as a result of misappropriation by another. This notice suffices to make the third party a misappropriator thereafter under Section 1(2)(ii)(B)(I). In weighing an aggrieved person's interests and the interests of a third party who has relied in good faith upon his or her ability to utilize information, a court may conclude that restraining future use of the information by the

450

**TRADE SECRETS** §2

third party is unwarranted. With respect to innocent acquirers of misappropriated trade secrets, Section 2(b) is consistent with the principle of 4 Restatement Torts (First) § 758(b) (1939), but rejects the Restatement's literal conferral of absolute immunity upon all third parties who have paid value in good faith for a trade secret misappropriated by another. The position taken by the Uniform Act is supported by *Forest Laboratories, Inc. v. Pillsbury Co.*, 452 F.2d 621 (CA7, 1971) in which a defendant's purchase of assets of a corporation to which a trade secret had been disclosed in confidence was not considered to confer immunity upon the defendant.

When Section 2(b) applies, a court ~~is given~~ has discretion to substitute an injunction conditioning future use upon payment of a reasonable royalty for an injunction prohibiting future use. Like all injunctive relief for misappropriation, a royalty order injunction is appropriate only if a misappropriator has obtained a competitive advantage through misappropriation and only for the duration of that competitive advantage. In some situations, typically those involving good faith acquirers of trade secrets misappropriat-

ed by others, a court may conclude that the same considerations that render a prohibitory injunction against future use inappropriate also render a royalty order injunction inappropriate. See, generally, *Prince Manufacturing, Inc. v. Automatic Partner, Inc.*, 198 USPQ 618 (N.J.Super.Ct. 1976) (purchaser of misappropriator's assets from receiver after trade secret disclosed to public through sale of product not subject to liability for misappropriation).

A royalty order injunction under Section 2(b) should be distinguished from a reasonable royalty alternative measure of damages under Section 3(a). See the Comment to Section 3 for discussion of the differences in the remedies.

Section 2(c) authorizes mandatory injunctions requiring that a misappropriator return the fruits of misappropriation to an aggrieved person, *e.g.*, the return of stolen blueprints or the surrender of surreptitious photographs or recordings.

Where more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy.

**Amendments**

1985 amendments to text and/or changes in comments shown by underlines [added material] and strikeouts [deleted material].

**Action in Adopting Jurisdictions**

**Variations from Official Text:**

**Alaska.** Subsec. (a) reads: "(a) A court may enjoin actual or threatened misappropriation of trade secrets. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation."

Subsec. (b) reads: "(b) If the court determines that it would be unreasonable to prohibit future use of a trade secret, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

**Arizona.** In subsec. (b), substitutes "before acquiring" for "prior to acquiring".

**California.** In subsec. (a), omits "reasonable" preceding "period".

Subsec. (b) reads: "If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

**Colorado.** Section reads: "Temporary and final injunctions including affirmative acts may be granted on such equitable terms as the court deems reasonable to prevent or restrain actual or threatened misappropriation of a trade secret."

**Connecticut.** Section reads:

"(a) Actual or threatened misappropriation may be enjoined upon application to any court of competent jurisdiction. An injunction shall

451

Exhibit 7 - Page 187

## § 2 {style=display:inline} TRADE SECRETS

be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

"(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

"(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."

**Delaware.** Subsec. (b) reads: "If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

**District of Columbia.** In subsec. (a), substitutes "a reasonable period" for "an additional reasonable period".

In subsec. (c), substitutes "an affirmative act" for "affirmative acts".

**Hawaii.** Subsec. (b) reads: "In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation that renders a prohibitive injunction inequitable. The alleged wrongful user shall bear the burden of proof of exceptional circumstances."

**Illinois.** In subsec. (a), remainder of text following "reasonable period of time" reads: "in appropriate circumstances for reasons including, but not limited to an elimination of the commercial advantage that otherwise would be derived from the misappropriation, or where the trade secret ceases to exist due to the fault of the enjoined party or others by improper means."

Subsec. (b) reads: "If the court determines that it would be unreasonable to prohibit future use due to an overriding public interest, an injunction may condition future use upon

payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

**Indiana.** Subsec. (b) reads: "If the court determines in exceptional circumstances that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

**Louisiana.** Subsec. (b) reads: "If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

**Maine.** In subsec. (a), inserts "restrained or" following "may be" in first sentence.

Adds a subsection which reads: "Application. This section applies to all forms of injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions."

**Montana.** In subsec. (a), substitutes "must be" for "shall be".

Subsec. (b) reads: "If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

**Nevada.** In subsec. (b), omits ", but are not limited to,".

**North Dakota.** In subsec. (b), omits ", but are not limited to,".

**Oregon.** In subsec. (a), inserts "temporarily, preliminarily, or permanently" following "may be", and substitutes "vacated" for "terminated".

In subsec. (b), omits "no longer than" preceding "the period of time".

Subsec. (c) reads: "In appropriate circumstances, the court may order affirmative acts to protect a trade secret."

**Washington.** Subsec. (b) reads: "If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."

### Law Review Commentaries

Trade secret misappropriation: What is the proper length of an injunction after public disclosure? Comment, 51 Albany L.Rev. 271 (1987).

452

Exhibit 7 - Page 188

**TRADE SECRETS**

§ 2
Note 6

### Library References

**American Digest System**

Injunctive relief, see Injunction ⊂⇒56.

**Encyclopedias**

Injunctive relief, see C.J.S. Injunctions §§ 151 to 156.

### WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Explanation.

### Notes of Decisions

Actual or threatened misappropriation  4
Adequacy of other remedies  3
Agreement, relationship or duty prohibiting use of trade secret  8
Burden of proof  12
Common law  2
Constitutionality  1
Customer lists  9
Definiteness of order  13
Duration of injunction  14
Injunction held inappropriate in particular cases  11
Irreparable harm  6
Present or compelling need  5
Proof required  10
Stay of injunction  15
Unfair competition  7

#### 1.  Constitutionality

Provision of preliminary injunction, enjoining competitor from mailing promotional postcards to persons whose names had been derived from video center's customer list, advertising free membership in competitor's movie club, or offering free movie rentals, did not unconstitutionally restrict competitor's advertising, since provision merely required competitor not to advertise free memberships in its movie club or offer free movie rental to those customers whose names were selected solely from video center's customer list allegedly misappropriated by competitor.  Kozuch v. CRA-MAR Video Center, Inc., Ind.App. 3 Dist.1985, 478 N.E.2d 110.

#### 2.  Common law

Uniform Trade Secrets Act requirement that trier of fact decide whether appropriate circumstances exist which would justify imposition of permanent injunction and to decide, if permanent injunction is not appropriate, length of time movant is entitled to injunctive relief, merely articulates common law as it would apply to permanent injunctions.  Wolfe

v. Tuthill Corp., Full–Rite Div., Ind.1988, 532 N.E.2d 1.

Determining what constitutes an unfair practice under Uniform Trade Secrets Act involves a balancing process between right of employee to individual freedom and right of employer to honest and fair competition and protection of business assets and property.  Engineered Mechanical Services, Inc. v. Langlois, La.App. 1 Cir.1984, 464 So.2d 329, writ denied 467 So.2d 531.

#### 3.  Adequacy of other remedies

Ship engine manufacturer had adequate remedy under Federal Rules of Civil Procedure to prevent cargo owners bringing federal products liability action against manufacturer from using any trade secrets disclosed in discovery process for unfair competitive purposes, and thus, preliminary injunctive relief under state law to prevent disclosure of such secrets was inappropriate.  Stork–Werkspoor Diesel V.V. v. Koek, La.App. 5 Cir.1983, 534 So.2d 983.

#### 4.  Actual or threatened misappropriations

Injunctions may be issued in trade secret cases, but only if misappropriations are actual or threatened.  Tubular Threading, Inc. v. Scandaliato, La.App. 5 Cir.1983, 443 So.2d 712.

#### 5.  Present or compelling need

An injunction against using, selling, distributing or otherwise disseminating any shop drawing or other document relating to trade secret in form of a pipe-handling system if designed and built for plaintiff should not have issued absent a showing of either a present or compelling need or an actual or threatened misappropriation.  Tubular Threading, Inc. v. Scandaliato, La.App. 5 Cir.1983, 443 So.2d 712.

#### 6.  Irreparable harm

Finding of irreparable harm to aircraft window designer was not necessary in order to

453

Exhibit 7 - Page 189

§ 2
Note 6

TRADE SECRETS

support injunction against aircraft window supplier from future use of designer's 7/7/7 cockpit window drawings and information derived from those drawings. Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

### 7. Unfair competition

Trade Secrets Act did not apply to cargo owners' consultation of ship engine manufacturer's former employee with regard to products liability suit by cargo owners against manufacturer based on allegation that ship engines were defectively designed and manufactured, and Act did not justify preliminary injunction enjoining employee from further assisting cargo owners in litigation; manufacturer did not allege that any information which had been or might be supplied by employee to cargo owners would be used by cargo owners to compete unfairly with manufacturer. Stork–Werkspoor Diesel V.V. v. Koek, La.App. 5 Cir.1988, 534 So.2d 983.

### 8. Agreement, relationship or duty prohibiting use of trade secret

Manufacturer of polyimide foam was entitled to preliminary injunction restraining its predecessor's employees and its competitor from licensing or disclosing manufacturer's trade secrets and to prevent competitor and employees from licensing patents allegedly equitably belonging to manufacturer; trade secrets had been developed by predecessor's employees, who had signed personal services agreement prohibiting disclosure of inventions made during employment, and competitor had threatened to disclose or license trade secrets obtained from the former employees. Imi-Tech Corp. v. Gagliani, S.D.Cal.1986, 691 F.Supp. 214.

Identity of ophthalmologists, who, as customers, purchased products from former employer and who were solicited or likely to be solicited by former employees, was customer information that former employer was entitled to protect as "trade secret" by permanent injunction under California law against former employees, where some ophthalmologists already were or were to become high volume implanters of former employer's lenses, where some ophthalmologists implanted investigational lenses, where identity of ophthalmologists was not readily accessible, and where ophthalmologists were in established business relationship with former employer and had brand loyalty to employer's product. Surgidev Corp. v. Eye Technology, Inc., D.Minn.1986, 648 F.Supp. 661, affirmed 828 F.2d 452.

Trial court did not abuse its discretion in enjoining independent insurance agent from

using, subsequent to termination of his relationship with life insurer, materials furnished him by insurer during contractual relationship where agent's contract with insurer provided for return of such materials, and finding that materials in agent's possession were property of life insurer was adequately supported by record. Steenhoven v. College Life Ins. Co. of America, Ind.App.2 Dist.1984, 458 N.E.2d 661, rehearing denied 460 N.E.2d 973.

It is not necessary that information be a trade secret to be protected; rather, a trial court may issue an injunction against a party who has, in violation of an explicit agreement or a common-law duty, wrongfully used confidential information or trade secrets obtained from his employer. Saliterman v. Finney, Minn.App.1985, 361 N.W.2d 175.

If information is found to be a protectable secret, it becomes necessary to determine whether an express or implied contractual or confidential relationship exists between parties which obligates them not to use or disclose the secret information. Engineered Mechanical Services, Inc. v. Langlois, La.App. 1 Cir.1984, 464 So.2d 329, writ denied 467 So.2d 531.

### 9. Customer lists

Louisiana courts decline to enjoin defendants from misappropriation of confidential customer information unless the former employee was not acting solely from memory and such information was not easily ascertainable and generally available to the public. NCH Corp. v. Broyles, D.C.La.1982, 551 F.Supp. 636.

Depending on nature of business, customer list may be "trade secret," and employee may be restrained from using list if he acquired it in confidence from employer, but there is no trade secret if customers' names can be readily ascertained through ordinary business channels or reference resources. Robert S. Weiss and Associates, Inc. v. Wiederlight, 1988, 546 A.2d 216, 208 Conn. 525.

In suit in which competitor was preliminarily enjoined from redeeming promotional postcards mailed to persons listed on video center's customer list, preliminary injunction, enjoining competitor from distributing video center's customer list to its outlying stores, was not erroneous, in that no evidence supported competitor's contention that dissemination of customer list to all outlying stores was only means of permitting those stores to determine whether customers attempting to redeem promotional postcards had been contacted through competitor's use of video center's customer list. Kozuch v. CRA–MAR Video Center, Inc., Ind. App. 3 Dist.1985, 478 N.E.2d 110.

454

Exhibit 7 - Page 190

**10.  Proof required**

In an action for misappropriation of trade secrets, there must be proof of the existence of a trade secret and proof of the wrongful appropriation of the trade secret; without a proven trade secret, there can be no action for misappropriation even if the defendants' actions were wrongful.  Electro-Craft Corp. v. Controlled Motion, Inc., Minn.1983, 332 N.W.2d 890.

In order to sustain an action for misappropriation, plaintiff must specifically identify its claimed trade secrets and must introduce evidence of the supposedly secret information. Electro-Craft Corp. v. Controlled Motion, Inc., Minn.1983, 332 N.W.2d 890.

**11.  Injunction held inappropriate in particular cases**

Finding that independent insurance agent improperly used life insurer's materials and information after termination of agent's contractual relationship with insurer in replacing clients' policies with policies from another company was insufficient basis upon which to predicate injunction against agent's contacting or inducing clients to terminate or replace such policies.  Steenhoven v. College Life Ins. Co. of America, Ind.App. 2 Dist.1984, 458 N.E.2d 661, rehearing denied 460 N.E.2d 973.

**12.  Burden of proof**

Plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist.  Acuson Corp. v. Aloka Co., Ltd., 1989, 257 Cal.Rptr. 368, 209 C.A.3d 425, 1098E.

Plaintiff seeking to establish trade secrets claim under Uniform Trade Secrets Act has burden of proving that legally protectable secrets exist.  Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

In trade secrets case, plaintiff has burden of establishing both existence of a legal protectable secret and legal basis upon which to predi-

cate relief; legal basis upon which relief and protection has been afforded consists of a conglomerate of property, agency, tort and contract law and on concept of equity.  Engineered Mechanical Services, Inc. v. Langlois, La.App. 1 Cir.1984, 464 So.2d 329, writ denied 467 So.2d 531.

**13.  Definiteness of order**

Prohibition against aircraft window supplier prohibiting use of information or materials derived from aircraft window designer's drawings, from tooling, and from aircraft window supplier's FAA authorized drawings, and employment of those who "reviewed or had knowledge" of designer's drawings, tooling, or derivative information, was sufficiently definite for compliance, notwithstanding argument that term "derived from" was too vague making compliance impossible.  Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

**14.  Duration of injunction**

Former employee of pump manufacturer, charged with misappropriating trade secrets, was properly enjoined from designing, manufacturing, or selling pumps which incorporated former employer's trade secrets; though trial court entered "permanent" injunction, court maintained jurisdiction to modify or revoke it as circumstances dictated.  Wolfe v. Tuthill Corp., Full-Rite Div., Ind.1988, 532 N.E.2d 1.

**15.  Stay of injunction**

Defendants were entitled to supersedeas or stay of injunction entered against them for violations of Uniform Trade Secrets Act [West's RCWA 19.108.010 et seq.] where defendants had made requisite showing that there were debatable issues on appeal and that stay was necessary to preserve fruits of successful appeal, and adverse effect of stay on plaintiff could be measured in terms of monetary amount.  Boeing Co. v. Sierracin Corp., 1986, 716 P.2d 956, 43 Wash.App. 288.

## § 3.  Damages.

(a) ~~In addition to or in lieu of injunctive relief~~ Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant ~~may~~ is entitled to recover damages for ~~the actual loss caused by~~ misappropriation.  ~~A complainant also may recover for~~ Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing ~~damages for~~ actual loss.  In lieu of damages measured by any

Exhibit 7 - Page 191

§ 3                                          TRADE SECRETS

other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

(b) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a).

## COMMENT

Like injunctive relief, a monetary recovery for trade secret misappropriation is appropriate only for the period in which information is entitled to protection as a trade secret, plus the additional period, if any, in which a misappropriator retains an advantage over good faith competitors because of misappropriation. Actual damage to a complainant and unjust benefit to a misappropriator are caused by misappropriation during this time alone. See *Conmar Products Corp. v. Universal Slide Fastener Co.*, 172 F.2d 150 (CA2, 1949) (no remedy for period subsequent to disclosure of trade secret by issued patent); *Carboline Co. v. Jarboe*, 454 S.W.2d 540 (Mo.1970) (recoverable monetary relief limited to period that it would have taken misappropriator to discover trade secret without misappropriation). A claim for actual damages and net profits can be combined with a claim for injunctive relief, but, if both claims are granted, the injunctive relief ordinarily will preclude a monetary award for a period in which the injunction is effective.

As long as there is no double counting, Section 3(a) adopts the principle of the recent cases allowing recovery of both a complainant's actual losses and a misappropriator's unjust benefit that are caused by misappropriation. *E.g., Tri-Tron International v. Velto*, 525 F.2d 432 (CA9, 1975) (complainant's loss and misappropriator's benefit can be combined). Because certain cases may have sanctioned double counting in a combined award of losses and unjust benefit, *e.g., Telex Corp. v. IBM Corp.*, 510 F.2d 894 (CA10, 1975) (per curiam), cert. dismissed, 423 U.S. 802 (1975) (IBM recovered rentals lost due to displacement by misappropriator's products without deduction for expenses saved by displacement; as a result of rough approximations adopted by the trial judge, IBM also may have recovered developmental costs saved by misappropriator through misappropriation with respect ·to the same customers), the Act adopts an express prohibition upon the counting of the same item as both a loss to a complainant and an unjust benefit to a misappropriator.

As an alternative to all other methods of measuring damages caused by a misappropriator's past conduct, a complainant can request that damages be based upon a demonstrably reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. In order to justify this alternative measure of damages, there must be competent evidence of the amount of a reasonable royalty.

The reasonable royalty alternative measure of damages for a misappropriator's past conduct under Section 3(a) is readily distinguishable from a Section 2(b) royalty order injunction, which conditions a misappropriator's future ability to use a trade secret upon payment of a reasonable royalty. A Section 2(b) royalty order injunction is appropriate only in exceptional circumstances; whereas a reasonable royalty measure of damages is a general option. Because Section 3(a) damages are awarded for a misappropriator's past conduct and a Section 2(b) royalty order injunction regulates a misappropriator's future conduct, both remedies cannot be awarded for the same conduct. If a royalty order injunction is appropriate because of a person's material and prejudicial change of position prior to having reason to know that a trade secret has been acquired from a misappropriator, damages, moreover, should not be awarded for past conduct that occurred prior to notice that a misappropriated trade secret has been acquired.

456

Exhibit 7 - Page 192

**24-2-3-5.  Attorney's fees. — If:**
(1) A claim of misappropriation is made in bad faith;
(2) A motion to terminate an injunction is made or resisted in bad faith; or
(3) Willful and malicious misappropriation exists;
the court may award reasonable attorney's fees to the prevailing party. [IC 24-2-3-5, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-6.  Preservation of trade secret — Court actions authorized.** — In an action under this chapter, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval. [IC 24-2-3-6, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-7.  Statute of limitations.** — An action for misappropriation must be brought within three [3] years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim. [IC 24-2-3-7, as added by Acts 1982, P.L. 148, § 1.]

**24-2-3-8.  Application to misappropriations beginning before September 1, 1982.** — If a continuing misappropriation otherwise covered by this chapter began before September 1, 1982, the chapter does not apply to the part of the misappropriation that occured before that date. It does apply to the part that occurs after August 31, 1982, unless the appropriation was not a misappropriation under the law displaced by this chapter. [IC 24-2-3-8, as added by Acts 1982, P.L. 148, § 1.]

## ARTICLE 4.5
### UNIFORM CONSUMER CREDIT CODE

CHAPTER.
1. GENERAL PROVISIONS AND DEFINITIONS, 24-4.5-1-202, 24-4.5-1-302.
2. CREDIT     SALES,     24-4.5-2-207, 24-4.5-2-602, 24-4.5-2-604.
3. LOANS,     24-4.5-3-201,     24-4.5-3-501,

CHAPTER.
24-4.5-3-508,   24-4.5-3-511,   24-4.5-3-602, 24-4.5-3-604.
5. REMEDIES AND PENALTIES, 24-4.5-5-105, 24-4.5-5-204.

### CHAPTER 1
#### GENERAL PROVISIONS AND DEFINITIONS

SECTION.
     PART 2. SCOPE AND JURISDICTION
24-4.5-1-202.  Exclusions.

     PART 3. DEFINITIONS
24-4.5-1-302.  Federal Consumer Credit Protection Act.

Exhibit 7 - Page 193

TRADE SECRETS                                                    § 3

Monetary relief can be appropriate whether or not injunctive relief is granted under Section 2. If a person charged with misappropriation has ~~acquired~~ mate-rially and prejudicially changed position in reliance upon knowledge of a trade secret acquired in good faith and without reason to know of its misappropriation by another, however, the same considera-tions that can justify denial of all injunc-tive relief also can justify denial of all monetary relief. See *Conmar Products Corp. v. Universal Slide Fastener Co.*, 172 F.2d 1950 (CA2, 1949) (no relief against new employer of employee subject to con-tractual obligation not to disclose former employer's trade secrets where new em-ployer innocently had committed $40,000

to develop the trade secrets prior to no-tice of misappropriation).

If willful and malicious misappropria-tion is found to exist, Section 3(b) autho-rizes the court to award a complainant exemplary damages in addition to the ac-tual recovery under Section 3(a) an amount not exceeding twice that recov-ery. This provision follows federal pat-ent law in leaving discretionary trebling to the judge even though there may be a jury, *compare* 35 U.S.C. Section 284 (1976).

Whenever more than one person is en-titled to trade secret protection with re-spect to the same information, only that one from whom misappropriation oc-curred is entitled to a remedy.

### Amendments

1985 amendments to text and/or changes in comments shown by underlines [added materi-al] and strike-outs [deleted material].

### Action in Adopting Jurisdictions

**Variations from Official Text:**

**Alaska.** Section reads:

"(a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

"(b) If wilful and malicious misappropria-tion exists, the court may award exemplary damages in an amount not exceeding twice the damages awarded under (a) of this section."

**Arizona.** In subsec. (a), substitutes "before acquiring" for "prior to acquiring", and substi-tutes "may include" for "can include".

**California.** Section reads:

"(a) A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

"(b) If neither damages nor unjust enrich-ment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

"(c) If willful and malicious misappropria-tion exists, the court may award exemplary

damages in an amount not exceeding twice any award made under subdivision (a) or (b)."

**Colorado.** Subsec. (b) [subsec. (2) of the Colorado section] reads: "If the misappropria-tion is attended by circumstances of fraud, malice, or a willful and wanton disregard of the injured party's right and feelings, the court or the jury may award exemplary damages in an amount not exceeding the award made un-der subsection (1) of this section [subsec. (a) of Uniform Act section]."

**Connecticut.** Section reads:

"(a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

"(b) In any action brought pursuant to sub-section (a) of this section, if the court finds wilful and malicious misappropriation, the court may award punitive damages in an amount not exceeding twice any award made under subsection (a) and may award reason-able attorney's fees to the prevailing party."

**Delaware.** Subsec. (a) reads: "In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant

457

Exhibit 7 - Page 194

## TRADE SECRETS                                                            § 4

unauthorized disclosure or use of a trade secret.

"B. If willful and malicious misappropriation exists, the court may award punitive damages in an amount not exceeding twice any award made under subsection A of this section, or $350,000 whichever amount is less."

**Washington.** Subsec. (a) reads: "In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss."

**West Virginia.** In subsec. (a), second sentence, omits "that is not taken into account in computing actual loss".

### Library References

**American Digest System**

Damages as relief in suit for injunction, see Injunction ⊕195 to 198.

Exemplary damages, see Damages ⊕87 to 94.

Measure and amount of damages in action for unfair competition, see Trade Regulation ⊕679 to 685.

Measure of damages for injuries to property, see Damages ⊕103 to 116.

Tort or misuse of interference with trade secrets, see Torts ⊕8(5).

**Encyclopedias**

Damages as relief in suit for injunction, see C.J.S. Injunctions § 238.

Damages for misappropriation of trade secrets, see C.J.S. Damages § 82.

Exemplary damages, see C.J.S. Damages §§ 117(1) to 127.

Measure and amount of damages in action for unfair competition, see C.J.S. Trade–Marks, Trade–Names, and Unfair Competition §§ 213 to 216.

Tort or misuse of interference with trade secrets, see C.J.S. Torts § 48.

### WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Explanation.

### Notes of Decisions

Punitive damages  1
Review  2

**1. Punitive damages**

That aircraft window supplier knew its actions to be of dubious legality, yet engaged in massive effort to disguise its copying of designer's drawings without entertaining any honest doubt as to legality of its conduct, but took calculated risk and lost, justified award of punitive damages for misappropriation of trade secrets.  Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

**2. Review**

Decision to award up to twice amount of actual damages as punitive damages for misappropriation of trade secrets is discretionary with trial court and amount of award will not be reversed unless clearly erroneous.  Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

## § 4.  Attorney's Fees.

If (i) a claim of misappropriation is made in bad faith, (ii) a motion to terminate an injunction is made or resisted in bad faith, or (iii) willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

459

Exhibit 7 - Page 195

Case 2:04-cv-09049-DOC-RNB   Document 8934-9   Filed 10/13/10   Page 28 of 55   Page ID
#:274013

## COMMENT

Section 4 allows a court to award reasonable attorney fees to a prevailing party in specified circumstances as a deterrent to specious claims of misappropriation, to specious efforts by a misappropriator to terminate injunctive relief, and to willful and malicious misappropriation. In the latter situation, the court should take into consideration the extent to which a complainant will recover exemplary damages in determining whether additional attorney's fees should be awarded. Again, patent law is followed in allowing the judge to determine whether attorney's fees should be awarded even if there is a jury, *compare* 35 U.S.C. Section 285 (1976).

### Action in Adopting Jurisdictions

**Variations from Official Text:**

**Alaska.** Omits this section.

**Connecticut.** Omits "or (iii) willful and malicious misappropriation exists,".

**Idaho.** Omits this section.

**Montana.** Inserts "and costs" following "attorney's fees".

**New Mexico.** Section reads:

"A. The court of proper jurisdiction may award reasonable attorneys' fees to the prevailing party if:

"(1) a claim of misappropriation is made in bad faith;

"(2) a motion to terminate an injunction is made or resisted in bad faith; or

"(3) willful and malicious misappropriation exists."

**Oregon.** Item (iii) reads: "wilful or malicious misappropriation is found by the court or jury".

**Virginia.** Section reads: "If the court determines that (i) a claim of misappropriation is made in bad faith, or (ii) willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party."

### Library References

**American Digest System**

Attorneys' fees as costs, see Costs ⇐171 to 173.

Attorneys' fees, costs and expenses of litigation as damages, see Damages ⇐70 to 73.

Costs in tort actions, see Torts ⇐30.

**Encyclopedias**

Attorneys' fees as costs, see C.J.S. Costs §§ 125 to 133.

Attorneys' fees, costs and expenses of litigation as damages, see C.J.S. Damages § 50.

Costs in tort actions, see C.J.S. Torts § 30.

### WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Explanation.

### Notes of Decisions

Comparative rates of attorneys  3
Novelty of issues  2
Wilful and malicious misappropriation  1

**1. Wilful and malicious misappropriation**

Aircraft window designer was entitled to its attorney fees, both at trial and on appeal, in its action against aircraft window supplier for misappropriation of trade secrets; trial court found that misappropriation of trade secrets was intentional, willful and malicious. Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

**2. Novelty of issues**

Trial court should not have reduced attorney fee award to aircraft window designer based only on ground that issues presented were nov-

460

Exhibit 7 - Page 196

TRADE SECRETS                                                        § 5

el.  Boeing Co. v. Sierracin Corp., 1987, 738    antitrust issue was raised both as affirmative
P.2d 665, 108 Wash.2d 38.                         defense and as counterclaim, was just and eq-
                                                  uitable; trial court correctly discounted hourly
**3.  Comparative rates of attorneys**           rate of aircraft window designer's attorneys,
                                                  who were charging higher rates than aircraft
  Final award of attorney fees in action for     window supplier's.  Boeing Co. v. Sierracin
misappropriation of trade secrets, in which      Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

## § 5.  Preservation of Secrecy.

  In an action under this [Act], a court shall preserve the secrecy of an alleged
trade secret by reasonable means, which may include granting protective
orders in connection with discovery proceedings, holding in-camera hearings,
sealing the records of the action, and ordering any person involved in the
litigation not to disclose an alleged trade secret without prior court approval.

### COMMENT

  If reasonable assurances of mainte-        merits.  In addition to the illustrative
nance of secrecy could not be given, meri-   techniques specified in the statute, courts
torious trade secret litigation would be     have protected secrecy in these cases by
chilled.  In fashioning safeguards of con-   restricting disclosures to a party's counsel
fidentiality, a court must ensure that a     and his or her assistants and by appoint-
respondent is provided sufficient infor-     ing a disinterested expert as a special
mation to present a defense and a trier of   master to hear secret information and
fact sufficient information to resolve the   report conclusions to the court.

#### Action in Adopting Jurisdictions

**Variations from Official Text:**              homa Statutes" following "discovery proceed-
  **Oklahoma.**  Inserts "pursuant to the provi-  ings".
sions of Section 3203 of Title 12 of the Okla-

#### Library References

**American Digest System**

  Access to court records, see Records ⟸32.

  Matters privileged from discovery, see Pretrial Procedure ⟸33, 183, 285, 286, 356.

  Objections and protective orders in general, see Pretrial Procedure ⟸41.

  Protective orders before taking discovery depositions, see Pretrial Procedure ⟸131.

  Protective orders with respect to production of documents and things, see Pretrial Procedure
      ⟸413 to 415.

  Publicity of proceedings, see Trial ⟸20.

**Encyclopedias**

  Access to court records, see C.J.S. Records § 36.

  Objections to examinations, see C.J.S. Discovery § 36.

  Publicity of proceedings, see C.J.S. Trial §§ 38, 39.

  Trade secrets as matter privileged from discovery, see C.J.S. Discovery §§ 5, 32, 51, 52, 79.

#### WESTLAW Electronic Research

  See WESTLAW Electronic Research Guide following the Explanation.

461

Exhibit 7 - Page 197

**§ 5**                                                                 **TRADE SECRETS**

### Notes of Decisions

**1. Sealing record**
Trial court was justified in sealing record as to action for misappropriation of trade secrets.

Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

## § 6.  Statute of Limitations.

An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.  For the purposes of this section, a continuing misappropriation constitutes a single claim.

### COMMENT

There presently is a conflict of authority as to whether trade secret misappropriation is a continuing wrong. *Compare Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.,* 407 F.2d 288 (CA9, 1969) (~~no~~ not a continuing wrong under California law—limitation period upon all recovery begins upon initial misappropriation) with *Underwater Storage, Inc. v. U.S. Rubber Co.,* 371 F.2d 950 (CADC, 1966), cert. den., 386 U.S. 911 (1967) (continuing wrong under general principles—limitation period with respect to a specific act of misappropriation begins at the time that the act of misappropriation occurs).

This Act rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation. If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights.

### Amendments

1985 amendments to text and/or changes in comments shown by underlines [added material] and strike-outs [deleted material].

### Action in Adopting Jurisdictions

**Variations from Official Text:**

**Connecticut.** First sentence reads: "No action for misappropriation shall be brought but within three years from the date the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."

**Illinois.** Substitutes "5 years" for "3 years", and substitutes "this Act" for "this section".

**Maine.** Substitutes "4 years" for "3 years".

**Utah.** Substitutes "shall be brought" for "must be brought".

### Library References

**American Digest System**

Limitation of actions for torts in general, see Limitation of Actions ⬤=30.

**Encyclopedias**

Limitation of actions for misappropriation of trade secrets, see C.J.S. Limitations of Actions § 70.

462

Exhibit 7 - Page 198

## § 7.  Effect on Other Law.

(a) ~~This~~ Except as provided in subsection (b), this [Act] displaces conflicting tort, restitutionary, and other law of this State ~~pertaining to~~ providing civil ~~liability~~ remedies for misappropriation of a trade secret.

(b) This [Act] does not affect:

(1) contractual ~~or other civil liability or relief that is~~ remedies, whether or not based upon misappropriation of a trade secret; ~~or~~

(2) ~~criminal liability for~~ other civil remedies that are not based upon misappropriation of a trade secret~~.~~ ; or

(3) criminal remedies, whether or not based upon misappropriation of a trade secret.

### COMMENT

This Act ~~is not a comprehensive remedy~~ does not deal with criminal remedies for trade secret misappropriation and is not a comprehensive statement of civil remedies. It applies to ~~duties imposed by law in order~~ a duty to protect competitively significant secret information that is imposed by law. It does not apply to ~~duties~~ a duty voluntarily assumed through an express or an implied-in-fact contract. The enforceability of covenants not to disclose trade secrets and covenants not to compete that are intended to protect trade secrets, for example, ~~are~~ is governed by other law. The Act also does not apply to ~~duties~~ a duty imposed by law that ~~are~~ is not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal.

### Amendments

1985 amendments to text and/or changes in comments shown by underlines [added material] and strike-outs [deleted material].

### Action in Adopting Jurisdictions

**Variations from Official Text:**

**Alaska.** Section reads:

"(a) AS 45.50.910–45.50.945 displace conflicting tort, restitutionary, and other state laws pertaining to civil liability for misappropriation of a trade secret.

"(b) AS 45.50.910–45.50.945 do not affect

"(1) contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; or

"(2) criminal liability for misappropriation of a trade secret.

"(c) AS 45.50.910–45.50.945 do not apply to investigations or actions by the attorney general under AS 45.50.471–45.50.561 (unfair trade practices and consumer protection) or under AS 45.50.562–45.50.596 (restraint of trade)."

**California.** Subsec. (a) reads: "Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets."

Adds a subsec. (c) which reads: "This title does not affect the disclosure of a record by a state or local agency under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code). Any determination as to whether the disclosure of a record under the California Public Records Act constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title."

**Connecticut.** Section reads:

"(a) Unless otherwise agreed by the parties, the provisions of this chapter supersede any conflicting tort, restitutionary, or other law of this state pertaining to civil liability for misappropriation of a trade secret.

Exhibit 7 - Page 199

In subsec. (b), adds a paragraph which reads: "Any defense, immunity or limitation of liability afforded public bodies, their officers, employes or agents under ORS 30.260 to 30.300."

Adds a subsection which reads: "Notwithstanding any other provision in this 1987 Act, public bodies and their officers, employes and agents are immune from any claim or action for misappropriation of a trade secret that is based on the disclosure or release of information in obedience to or in good faith reliance on any order of disclosure issued pursuant to ORS 192.410 to 192.490 or on the advice of an attorney authorized to advise the public body, its officers, employes or agents."

**Virginia.** In subsec. (a), substitutes "Commonwealth" for "State".

**Washington.** Section reads:

"(1) This chapter displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret.

"(2) This chapter does not affect:

"(a) Contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; or

"(b) Criminal liability for misappropriation of a trade secret."

**Library References**

**American Digest System**

Contracts precluding disclosure of trade secrets, see Contracts ⟐118.

Nature of property which may be subject to larceny, see Larceny ⟐5.

Tort or misuse or interference with trade secrets, see Torts ⟐8(5).

**Encyclopedias**

Contracts precluding disclosure of trade secrets, see C.J.S. Contracts §§ 252, 254.

Tort or misuse or interference with trade secrets, see C.J.S. Torts § 48.

Trade secrets as subject of larceny, see C.J.S. Larceny § 3(7).

**WESTLAW Electronic Research**

See WESTLAW Electronic Research Guide following the Explanation.

**Notes of Decisions**

Generally  1
Sufficiency of evidence  2

**1. Generally**

Uniform Trade Secrets Act merely displaces conflicting tort, restitutionary and other law regarding civil liability for misappropriation, and does not displace claims for breach of contractual and confidential relationship. Boeing Co. v. Sierracin Corp., 1987, 738 P.2d 665, 108 Wash.2d 38.

**2. Sufficiency of evidence**

Jury's verdict of breach of fiduciary duty was supported by evidence of employee's possible use of employer's confidential files, employee's retention of employer's documents over weekend, and employee's discussion with employer's customers before leaving job and inference that employee solicited employer's business. Bellboy Seafood Corp. v. Nathanson, Minn.App.1987, 410 N.W.2d 349.

## § 8. Uniformity of Application and Construction.

This [Act] shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this [Act] among states enacting it.

465

Exhibit 7 - Page 200

§ 8                                                      TRADE SECRETS

### Library References

**American Digest System**

Construction of statute with reference to other laws, see Statutes ⟿222.

Effect of partial invalidity of statute, see Statutes ⟿64(1).

**Encyclopedias**

Construction of statute with reference to other laws, see C.J.S. Statutes §§ 362, 363.

Declaration as to effect of partial invalidity of statute, see C.J.S. Statutes § 94.

## § 9.  Short Title.

This [Act] may be cited as the Uniform Trade Secrets Act.

## § 10.  Severability.

If any provision of this [Act] or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the [Act] which can be given effect without the invalid provision or application, and to this end the provisions of this [Act] are severable.

### Library References

**American Digest System**

Effect of partial invalidity of statute, see Statutes ⟿64(1).

**Encyclopedias**

Declaration as to effect of partial invalidity of statute, see C.J.S. Statutes § 94.

## § 11.  Time of Taking Effect.

This [Act] takes effect on _____, and does not apply to misappropriation occurring prior to the effective date. With respect to a continuing misappropriation that began prior to the effective date, the [Act] also does not apply to the continuing misappropriation that occurs after the effective date.

### COMMENT

The Act applies exclusively to misappropriation that begins after its effective date. Neither misappropriation that began and ended before the effective date nor misappropriation that began before the effective date and continued thereafter is subject to the Act.

### Amendments

1985 amendments to text and/or changes in comments shown by underlines [added material] and strike-outs [deleted material].

466

Exhibit 7 - Page 201

TRADE SECRETS                                                          § 12

### Action in Adopting Jurisdictions

**Variations from Official Text:**

**Arizona.** Substance of section is set forth in L.1990, c. 37, § 3, as follows:

**Effect of misappropriations before the effective date of act.**

This act does not apply to misappropriation occurring before the effective date of this act. With respect to a continuing misappropriation that began before the effective date of this act, this act also does not apply to the continuing misappropriation that occurs after the effective date of this act.

**California.** Section reads: "This title does not apply to misappropriation occurring prior to January 1, 1985. If a continuing misappropriation otherwise covered by this title began before January 1, 1985, this title does not apply to the part of the misappropriation occurring before that date. This title does apply to the part of the misappropriation occurring on or after that date unless the appropriation was not a misappropriation under the law in effect before the operative date of this title."

**Connecticut.** Omits this section.

**Delaware.** Omits this section.

**District of Columbia.** Section reads: "This chapter does not apply to misappropriation occurring prior to March 16, 1989. With respect to a continuing misappropriation that began prior to March 16, 1989, the chapter does not apply to the continuing misappropriation that occurs after March 16, 1989."

**Idaho.** Omits this section.

**Illinois.** Section reads: "This Act takes effect on January 1, 1988, and does not apply to misappropriation occurring prior to its effective date."

**Indiana.** Section reads: "If a continuing misappropriation otherwise covered by this chapter began before September 1, 1982, the chapter does not apply to the part of the misappropriation that [occurred] before that date. It does apply to the part that occurs after August

31, 1982, unless the appropriation was not a misappropriation under the law displaced by this chapter."

**Louisiana.** Omits this section.

**Maine.** Omits this section.

**Minnesota.** Omits this section.

**Montana.** Omits this section.

**New Hampshire.** Substance of section is set forth in a note preceding RSA 350–B:1, as follows: "**Application.** 1989, 220:3, eff. Jan. 1, 1990, provided that section 1 of the act, which added this chapter, shall apply to misappropriations of trade secrets occurring on or after Jan. 1, 1990 and shall not apply to misappropriations or continuing misappropriations of trade secrets occurring or beginning prior to Jan. 1, 1990."

**New Mexico.** Omits this section.

**North Dakota.** Omits this section.

**Oklahoma.** Section reads:

"The Uniform Trade Secrets Act shall not be construed to apply:

"1. to a misappropriation occurring prior to the effective date of this act; or

"2. with respect to a continuing misappropriation that began prior to the effective date of this act, to the continuing misappropriation that occurs after the effective date of this act."

**Rhode Island.** Designates the effective date as "July 1, 1986".

**Utah.** Designates the effective date as "May 1, 1989".

**Virginia.** Designates the effective date as "July 1, 1986", and substitutes "to misappropriation" for "to the continuing misappropriation".

**Washington.** Section reads: "This chapter takes effect on January 1, 1982, and does not apply to misappropriation occurring prior to the effective date."

## § 12.  Repeal.

The following Acts and parts of Acts are repealed:

(1)

(2)

(3)

*

467

Exhibit 7 - Page 202

# Policies and Additional Services

Judicial Notice – Our authenticated format is designed to be submited along with a Request for Judicial Notice in any judicial proceeding without further authentication. However, there is no federal, state or local rule squarely addressing the requirements for submission of compiled legislative history reports. Recognizing that particular courts, in particular situations may require additional authentication, we can provide custom declarations upon request. Please call with details of your needs.

Additional Copies - If your circumstances require additional copies of this report with original signed declarations, duplicate originals are available without additional research fee. In addition, an unbound copy may be ordered for your ease in making photocopies.

Questions? - Call and speak with an attorney with many years experience both in practicing law, and in legislative research. Jan Raymond can help you make decisions on whether you need additional research, and what would be most useful to research. He will give you a frank assessment of whether your problem is likely to be solved by further legislative history. He will tell you what kind of documents you can expect to find if you do authorize a search, and assess the likelihood the available documents will be useful.

Consulting - Jan Raymond is also available for more in depth consultations on how to use the materials in your practice. A retainer may be required in matters that will require significant increments of time.

MCLE - Learning More About Legislative Intent - The need to document legislative history and search out legislative intent arises infrequently in most legal practices, but can be of utmost importance when the need does arise. Many attorneys do not need legislative history research often enough to remain familiar with the legislative process, the significance of different legislative documents, and the options for effective use of the documents. Jan Raymond is available to meet with your group, at no cost to you, to provide an MCLE credit approved overview on legislative intent topics.

On Line Information Resources - In addition to our MCLE presentations, basic reference information can be found on line at LEGISLATIVE HISTORY CLEARINGHOUSE - www.lhclearinghouse.com. The information includes definitions of commonly used legislative terms, an overview of the legislative process, and other information regarding legislative history of interest to the legal community.

Exhibit 7 - Page 203

7/20/82

## ATTACHMENT

Resolutions adopted by the American Bar Association's
Patent, Trademark, and Copyright Law Section, August 1981:

### Resolution No. 206-3

RESOLVED, that the Section of Patent, Trademark and Copyright
Law favors in principle that the remedies for a breach of
contract shall not be displaced by trade secret law; and
specifically, the Section favors amendment of Section 7 of
the Uniform Trade Secrets Act ("Act:) which was approved by
the National Conference of Commissioners on Uniform State Laws
in August, 1979 to clarify that the Act does not effect such
displacement.

### Resolution No. 206-4

RESOLVED, that the Section of Patent, Trademark and Copyright
Law favors in principle the remedy of a reasonable royalty when
neither damages nor unjust enrichment are provable in trade
secret cases; and specifically, the Section favors amendment
of Section 3 of the Uniform Trade Secrets Act which was approved
by the National Conference of Commissioners on Uniform State
Laws in August, 1979 to so provide.

### Resolution No. 206-6

RESOLVED, that the Section of Patent, Trademark and Copyright
Law favors in principle the application of the Uniform Trade
Secrets Act ("Act") which was approved by the National Conference
of Commissioners on Uniform State Laws in August, 1979 only in
cases in which misappropriation begins after the effective
date of the Act; and specifically, the Section favors amendment
of Section 11 of the Act to clarify that the Act does not apply
to a continuing misappropriation which begins prior to the
effective date of the Act.

Exhibit 7 - Page 204

LIBRARY
ORRICK, HERRINGTON & SUTCLIFFE LLP
MENLO PARK, CALIFORNIA

# Authorities

## Using Legislative History Documents

### *In A California Court*

California Code of Civil Procedure 1859 (in pertinent part): "In the construction of a statute the intention of the legislature ... is to be pursued, if possible . . ."

Evidence Code Section 452: "Judicial Notice may be taken of the following matters... (c) Official acts of the legislative, executive or judicial departments of the United States and of any state of the United States."

Evidence Code Section 453: "The trial Court shall take judicial notice of any matter specified in Section 452 if a party requests it and: (a) Gives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and, (b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter."

Evidence Code Section 454: "(a) In determining the propriety of taking judicial notice of a matter, or the tenor thereof: (1) Any source of pertinent information, including the advice of persons learned in the subject matter, may be consulted or used... (b) Exclusionary rules of evidence do not apply except Section 352 and the rules of privilege."

Two prominent California Supreme Court cases addressing legislative intent are California Teachers Association v. San Diego Community College District, (1981) 28 Cal. 3d 692, and Commodore Home Systems, Inc. v. Superior Court (1982) 32 Cal. 3d 211. For a topical review of California authorities, see CAL JUR 3d, Volume 58, annotation regarding "Statutes" discussion regarding extrinsic aides commencing with Section 160.

### *General Discussion – All Jurisdictions*

General discussion of the importance and use of legislative intent in State and Federal Courts, see: 73 Am Jur 2d, Statutes, beginning at Section 145, Sutherland on Statutory Construction and 70 ALR 5.

### *Additional Resources*

There are hundreds of published decisions in which courts have relied upon and discussed particular legislative history documents. Please call Jan Raymond, (888) 676 1947, if you would like cases relying on specific types of documents, or to discuss ideas for approaching your particular situation. Or log on to http://www.lhclearinghouse.com/using.htm.

Exhibit 7 - Page 205



# THE STATE BAR OF CALIFORNIA

*Office of the Legislative Representative*

1210 K STREET                                    SACRAMENTO, CALIFORNIA 95814

TELEPHONE (916) 444-2762

April 5, 1983


The Honorable Elihu Harris
Assemblyman, 13th District
State Capitol, Room 6031
Sacramento, CA  95814

Dear Assemblyman *Harris*:

                    RE:   Assembly Bill 501

The State Bar Patent, Trademark and Copyright Section has reviewed
the above-referenced measure and its comments and position are
enclosed herewith.

It is the policy of the State Bar to refer various measures which
affect the practice of law to the State Bar Committees or Sections
for review and comment.  The Patent, Trademark and Copyright
Section, composed of legal experts and attorney practitioners in the
area of patent, trademark and copyright law, has reviewed your
measure and expressed the enclosed concerns.  The comments are
intended to provide input to the legislative process from the
expertise and legal resources of the constituency of the State Bar.
It should be emphasized that its position and comments are those of
the Patent, Trademark and Copyright Section and not the State Bar.

The Office of the Legislative Representative may be contacted for
further information.

Sincerely

Peter Jensen
Legislative Representative


PJ:mr


enc.


cc:  Rubin Lopez, Consultant
     Assembly Judiciary Committee

Exhibit 7 - Page 206

March 28, 1983

<u>ASSEMBLY BILL 501</u>

<u>COMMENTS BY THE PATENT, TRADEMARK AND COPYRIGHT SECTION</u>

I.      Background

The subject bill would codify the trade secret law in California.  The Supreme Court has recognized the propriety of intellectual property rights (as trade secret rights) enforceable by state laws (<u>Kewanee Oil Co. v. Bicron Corp.</u> (S.Ct. 1974), 181 U.S.P.Q. 673.  Such rights have been held enforceable for as long as the embodying product is sold (<u>Aronson v. Quick Point Pencil Company</u> (S.Ct. 1979), 201 U.S.P.Q. 1).

In California the law of trade secrets is established by case law, see <u>Monolith Portland Midwest Company v. Kaiser Aluminum & Chemical Corporation et al.</u> (C.A. 9 1969), 160 U.S.P.Q. 577.  Generally, California recognizes the restatement definition of a trade secret, i.e. information which gives a party an opportunity to obtain an advantage over competitors (<u>Restatement of Torts</u>, Paragraph 757; <u>Walker v. University Books, Inc. et al.</u> (C.A. 9 1979), 202 U.S.P.Q. 793).  A trade secret may constitute a customer list if the list is truly secret (<u>Mayview Corporation et al. v. Rodstein et al.</u> (C.A. 9 1973), 178 U.S.P.Q. 449).

A two-year statute of limitations is applicable to the California law of trade secrets (California Code of Civil Procedure, Section 339).

-1-

Exhibit 7 - Page 207

To support a cause of action for trade secret violation in California, a plaintiff must allege ultimate facts showing the existence of a specific trade secret. Under case law, general allegations of designs, processes, techniques, and know-how are inadequate (<u>Diodes, Inc. v. Franzen et al.</u>, 260 C.A.2d 244, 252). Unfortunately, the authority is not always followed. Any trade secret legislation should afford protection against unsupported trade secret litigation.

II.   Summary of Proposed Legislation

AB 501 defines a trade secret in a rather limited context as a basis for injunctive relief. It provides for an injunction that shall be terminated when the trade secret has ceased to exist. The bill provides for permissive damages of the actual loss and exemplary damages if a misappropriation is "willful <u>and</u> malicious".

III.   Section Position

Oppose unless amended.

IV.   Reasons for Position

A.   The subject matter of trade secret litigation is almost invariably complex and difficult. The profits from pirating a trade secret can be considerable with

-2-

Exhibit 7 - Page 208

extreme losses to the owner of the trade secret.  Consequently,
trade secrets can be enticing to former employees.  From the
opposite point of view, the trade secret law poses a threat
for use by employers to restrain departed employees with
baseless trade secret claims.

Against such a background, it is submitted
that this legislation should be carefully analyzed and
thoroughly considered by persons having a broad base of
experience in the field.

B.  The following specific changes are now urged
in Assembly Bill 501:

1.  Page 2, lines 34-35, delete:  ", and not
being readily ascertainable by proper means by,".

COMMENT:

The clause is somewhat redundant.  Presumably,
it is intended to further limit the preceding clause.
However, if information "derives independent economic
value,...from not being generally known" (page 2, lines 33,
34), it likely is not "readily ascertainable".

More significantly, the objectionable
language could cast a cloud on most trade secrets by introducing
another test.  It would invite an argument in almost every
trade secret case that, "since the 'trade secret' could have
been reverse engineered, or could have been learned from a

-3-

Exhibit 7 - Page 209

literature search, or could have been compiled from other
knowledge, it was 'readily ascertainable'".

The objectionable language would complicate
the legal processes and impact negatively on trade secret
rights by imposing another criterion.

2.   Page 3, line 4, delete:  "reasonable".

COMMENT:

The word is redundant.  The bill specifies
that an injunction be for a "period of time in order to
eliminate commercial advantage" (page 3, line 5).  Adding
the word "reasonable" to the stated time criterion will only
promote confusion.

3.   Page 3, line 14, delete:  "or in lieu of".

COMMENT:

It is submitted to be inappropriate to
suggest the substitution of damages for injunctive relief.
Plaintiff should be made whole where possible and the
trade secrets should be preserved.

4.   Page 3, line 20, change "and" to --or--
(connecting "willful and malicious").

COMMENT:

It is difficult to prove that an activity
was "willful" or that it was "malicious".  Either occurrence

-4-

Exhibit 7 - Page 210

is submitted as sufficient to constitute a basis for exemplary
damages.


        5.  Page 4, line 19, add:

        --3426.11  A person alleging trade secret
misappropriation under this Title shall, before commencing
discovery relating to the trade secret cause, and in no
event later than thirty days after filing the action,
identify the trade secrets in issue with particularity
subject to such orders as may be appropriate under §3426.5.---

        COMMENT:

        The addition is intended to codify Diodes,
Inc. and afford a measure of protection against the procedure
of initiating an action to pursue extensive discovery
without revelation of the trade secret or secrets.


        These are the conclusions of several individual
practitioners in the field.  It would be wise and helpful to
allow thirty days to check the conclusions with a broader
spectrum of practitioners.


-5-

Exhibit 7 - Page 211

# Abstract

### *Terms of Research:*

This research was conducted as a thorough substantive review of the history of Civil Code Section 3426.7, to be forwarded in bound format without authenticating declaration/document index.

### *Documents:*

This report begins following the first blue divider with an excerpt from the Final History for 1984 regarding Assembly Bill 501, which enacted this Section. Documents regarding AB 501 follow in chronological order. Following the second blue divider we include documents concern AB 3738 of 1982, an unsuccessful predecessor to AB 501, and background materials on the Uniform Act.

### *Findings:*

The Uniform Trade Secrets Act contained in Civil Code Sections 3426 et sequence, as well as the trade secret discovery provisions now found in present Code of Civil Procedure 2019(d) were enacted in 1984 by Assembly Bill 501 introduced by Assembly member Elihu Harris.

Although introduced in February of 1983, AB 501 took the full two year 1983-84 session to proceed through the legislature.  During that time the bill was only amended four times, twice in the Assembly and twice in the Senate.  The final version of the bill was a product of negotiations between a number of the parties opposing and supporting the bill.  AB 501 was following up on an unsuccessful 1982 bill, AB 3738.

The language of Civil Code Section 3426.7(a) first appeared in AB 3738 of 1982 when the bill was introduced.  The language conflicted in many respects with the language of the Uniform Act.  Subdivisions (b) was first added late in the consideration of AB 501, in August 15 amendments.  The language now in (c) was added as (b) in amendments on May 3, 1983 to AB 501.

---

Find Authorities on using legislative documents, definitions of legislative terms, a brief summary of the legislative process and other information pertinent to legislative history and legislative intent at **LEGISLATIVE HISTORY CLEARINGHOUSE** www.lhclearinghouse.com

Exhibit 7 - Page 212

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 7 - Page 213

AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

# ASSEMBLY BILL                    No. 501

## Introduced by Assemblyman Harris

### February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, *to add Section 2036.2 to the Code of Civil Procedure, and to add Section 6266 to the Government Code,* relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris. Uniform Trade Secrets Act. Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, *or other relief,* requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1  SECTION 1. Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

98   60

Exhibit 7 - Page 214

AB 501 — 2 —

# TITLE 5.  UNIFORM TRADE SECRETS ACT

3426.  This title may be cited as the Uniform Trade Secrets Act.

3426.1.  As used in this title, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or

98   70

Exhibit 7 - Page 215

— 3 —                                        AB 501

1  potential, from not being generally known to, and not
2  being readily ascertainable by proper means by, other
3  persons who can obtain economic value from its
4  disclosure or use; and
5      (2) Is the subject of efforts that are reasonable under
6  the circumstances to maintain its secrecy.
7      3426.2.   (a) Actual or threatened misappropriation
8  may be enjoined. Upon application to the court, an
9  injunction shall be terminated when the trade secret has
10 ceased to exist, but the injunction may be continued for
11 an additional ~~reasonable~~ period of time in order to
12 eliminate commercial advantage that otherwise would
13 be derived from the misappropriation.
14     (b) If the court determines that it would be
15 unreasonable to prohibit future use, an injunction may
16 condition future use upon payment of a reasonable
17 royalty for no longer than the period of time the use could
18 have been prohibited.
19     (c) In appropriate circumstances, affirmative acts to
20 protect a trade secret may be compelled by court order.
21     3426.3.   (a) ~~In addition to or in lieu of injunctive~~
22 ~~relief, a~~ A complainant may recover damages for the
23 actual loss caused by misappropriation. A complainant
24 also may recover for the unjust enrichment caused by
25 misappropriation that is not taken into account in
26 computing damages for actual loss.
27     *(b) If neither damages nor unjust enrichment caused*
28 *by misappropriation are provable, the court may order*
29 *payment of a reasonable royalty for no longer than the*
30 *period of time the use could have been prohibited.*
31     ~~(b)~~
32     *(c)* If willful and malicious misappropriation exists,
33 the court may award exemplary damages in an amount
34 not exceeding twice any award made under subdivision
35 (a) *or (b)*.
36     3426.4.   If a claim of misappropriation is made in bad
37 faith, a motion to terminate an injunction is made or
38 resisted in bad faith, or willful and malicious
39 misappropriation exists, the court may award reasonable
40 attorney's fees to the prevailing party.

98   110

Exhibit 7 - Page 216

**AB 501** — 4 —

1   3426.5.  In an action under this title, a court shall
2   preserve the secrecy of an alleged trade secret by
3   reasonable means, which may include granting
4   protective orders in connection with discovery
5   proceedings, holding in-camera hearings, sealing the
6   records of the action, and ordering any person involved
7   in the litigation not to disclose an alleged trade secret
8   without prior court approval.
9   3426.6.  An action for misappropriation must be
10  brought within three years after the misappropriation is
11  discovered or by the exercise of reasonable diligence
12  should have been discovered. For the purposes of this
13  section, a continuing misappropriation constitutes a
14  single claim.
15  3426.7.  Except as otherwise expressly provided, this
16  title does not supersede any statute relating to
17  misappropriation of a trade secret, or any statute
18  otherwise regulating trade secrets.
19  *3426.8.  This title does not affect any contractual rights*
20  *or remedies.*
21  3426.8.
22  *3426.9.*  This title shall be applied and construed to
23  effectuate its general purpose to make uniform the law
24  with respect to the subject of this title among states
25  enacting it.
26  3426.9.
27  *3426.10.*  If any provision of this title or its application
28  to any person or circumstances is held invalid, the
29  invalidity does not affect other provisions or applications
30  of the title which can be given effect without the invalid
31  provision or application, and to this end the provisions of
32  this title are severable.
33  3426.10.
34  *3426.11.*  This title does not apply to misappropriation
35  occurring prior to January 1, 1984.  *If a continuing*
36  *misappropriation otherwise covered by this title began*
37  *before January 1, 1984, this title does not apply to the part*
38  *of the misappropriation occurring before that date. This*
39  *title does apply to the part of the misappropriation*
40  *occurring on or after that date unless the appropriation*

98  150

Exhibit 7 - Page 217

1  *was not a misappropriation under the law in effect before*
2  *the operative date of this title.*
3      *SEC. 2.   Section 2036.2 is added to the Code of Civil*
4  *Procdure, to read:*
5      *2036.2.   In any action alleging the misappropriation of*
6  *a trade secret under the Uniform Trade Secrets Act*
7  *(Title 5 (commencing with Section 3426) of Part 1 of*
8  *Division 4 of the Civil Code), before commencing*
9  *discovery relating to the trade secret under Chapter 2*
10 *(commencing   with   Section   1985)   or   Article   3*
11 *(commencing with Section 2016) of Chapter 3 of this*
12 *title, the party alleging the misappropriation shall*
13 *identify the trade secret with particularity subject to any*
14 *orders which may be appropriate under Section 3426.5 of*
15 *the Civil Code.*
16     *SEC. 3.   Section 6266 is added to the Government*
17 *Code, to read:*
18     *6266.   If the disclosure of a public record under this*
19 *chapter constitutes a misappropriation of a trade secret*
20 *under   the   Uniform   Trade   Secrets   Act   (Title   5*
21 *(commencing with Section 3426) of Part 1 of Division 4*
22 *of the Civil Code), damages may not be recovered*
23 *against the state or local agency or its employees unless*
24 *the disclosure was made in bad faith.*

O

Exhibit 7 - Page 218

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 7 - Page 219

ASSEMBLY COMMITTEE ON JUDICIARY                        AB 501
ELIHU M. HARRIS, Chairman


AB 501 (Harris) As amended 04/21/83

SUBJECT

This bill is intended to enact the Uniform Trade Secrets Act.

DIGEST

This bill would establish a statutory scheme to protect trade
secrets, known as the Uniform Trade Secrets Act. Among other
things, the bill would:

-   enact a series of definitions. Trade secret is defined
    as information that (1) derives independent economic
    value from not being generally known to, and not being
    readily ascertainable by proper means by, other persons
    who can obtain economic value from its disclosure or
    use; and (2) is the subject of efforts that are
    reasonable under the circumstances to maintain its
    secrecy.

-   provide for the enjoining of actual or threatened
    misappropriation, as defined, of a trade secret.

-   permit a complainant to recover actual damages for the
    loss caused by the improper acquisition or disclosure of
    a trade secret. Provision is also made for recovery for
    the unjust enrichment caused by misappropriation. If
    neither damages nor unjust enrichment caused by
    misappropriation are provable, the court may order
    payment of a reasonable royalty for no longer than the
    period the use could have been prohibited. Exemplary
    damages would be permitted for willful and malicious
    misappropriation.

-   authorize the award of reasonable attorneys' fees to the
    prevailing party where a claim of misappropriation is
    made in bad faith or a motion to terminate an injunction
    is made or resisted in bad faith, or where willful and
    malicious misappropriation is found.

-   authorize a court to use reasonable means, such as
    protective orders, sealing of records and in-camera
    hearings, to preserve the secrecy of a trade secret in
    an action under the Act.


                                              (CONTINUED)

Consultant R. LeBov                           AB 501
04/25/83                                      Page 1

Exhibit 7 - Page 220

- provide that an action for misappropriation must be brought within 3 years after it was discovered or, through reasonable diligence, should have been discovered.

- provide that the Act does not affect any contractual rights or remedies and that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret or otherwise regulations trade secrets.

- provide that, in any action alleging misappropriation under the Act, before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with particularity, subject to any protective orders which may be appropriate.

- immunize state and local public agencies from damages for disclosure, under the Public Records Act, of a public record constituting a misappropriation of a trade secret unless the disclosure was made in bad faith.

The bill's provisions would not apply to misappropriation occurring prior to January 1, 1984. The Act would apply to the part of a continuing misappropriation occurring on or after that date unless it was not a misappropriation under the law in effect before the bill's operative date.

STAFF COMMENTS

1. This bill would enact the Uniform Trade Secrets Act in California. That Act was drafted and recommended for enactment in all states by the National Conference of Commissioners on Uniform State Laws in 1979; and was approved by the American Bar Association in 1980. It has been enacted in at least 8 other states (Minnesota, Kansas, Idaho, Washington, Arkansas, Delaware, Louisiana, and Indiana).

   In its prefatory note to the Act, the National Conference stated that "there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret." The prefatory note further states that "like traditional trade secret law, the Uniform Act contains general concepts. The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law. The Uniform Act also codifies the

(CONTINUED)

Consultant R. LeBov                                     AB 501
04/25/83                                               Page 2

Exhibit 7 - Page 221

results of the better reasoned cases concerning the remedies for trade secret misappropriation."

2.  Existing California statutory law contains a number of other provisions which define or otherwise affect trade secrets. For example, Penal Code Section 499c provides for criminal penalties for misappropriation of trade secrets. This bill, which provides for civil remedies, is generally not intended to affect any of the existing provisions. It states that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

3.  The Patent, Trademark and Copyright Section of the State Bar has expressed concern with this bill's definition of "trade secret." Specifically, the Section feels that it "would invite an argument in almost every trade secret case that, since the trade secret could have been reverse engineered, or could have been learned from a literature search, or could have been compiled from other knowledge, it was 'readily ascertainable'".

    The Uniform Commissioners' comment on the definition of trade secret states that "one of the broadly stated policies behind trade secret law is the maintenance of standards of commercial ethics." The commissioners point out that the Restatement of Torts notes that "proper means" includes, among other things, "discovery by 'reverse engineering,' that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must, of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful." Under the Restatement, "proper means" also includes discovery by independent invention, discovery under a license from the owner of the trade secret, observation of the item in public use or on public display, or obtaining the trade secret from published literature.

4.  California Rural Legal Assistance is concerned that this measure might be construed to limit public access to pesticide testing data under the Public Records Act. That Act exempts, from required disclosure, records which may not be disclosed pursuant to provisions of state law. (Government Code Section 6254)

    According to CRLA, "there is a body of data submitted to the Department of Food and Agriculture relative to the health and environmental hazards and efficacy of pesticides that it licenses and regulates. It is crucial that the public have access to the data so that the public can participate in the

(CONTINUED)

Consultant R. LeBov                                     AB 501
04/25/83                                                Page 3

Exhibit 7 - Page 222

Exhibit 7 - Page 223