Department's regulatory decisions."  Would this bill inappropriately restrict public access to health and safety testing data submitted to regulatory and licensing agencies?

Consultant R. LeBov
04/25/83

AB 501
Page 4

Exhibit 7 - Page 224

SOURCE

National Conference of Commissioners on Uniform State Laws

SUPPORT

General Electric
Ford Motor Company

OPPOSITION

Unknown

Consultant R. LeBov
04/25/83

AB 501

Exhibit 7 - Page 225

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 226

## NO ANALYSIS REQ'D

| Department | Bill Number |
|---|---|
| FOOD AND AGRICULTURE | AB 501 |
| National Conference of Commissioners on Uniform State Law | Date Last Amended 4/21/83 |

☐ — Analysis not required of this bill — Not within scope of responsibility of this department.

☐ — Technical Bill — No program or fiscal changes to existing program.

☐ — Bill as amended no longer within scope of responsibility or program of the department and should be reviewed for reassignment to another department.

☐ — Technical Amendment — No change in previously submitted analysis required. Approved position of prior analysis is _____

☐ — Minor Amendment — Previously submitted analysis still valid. Previously approved position is _____.

☐ — Minor Amendment — No change in approved position of _____. See comments below.

☑ — Other

Comments: The Department's previous position was to oppose the bill unless it was amended. This was because the Department was concerned that it might be liable for an inadvertent disclosure of trade secret data. The author has amended the bill so that State and local agencies and their employees are not liable for misappropriation of a trade secret unless the disclosure was made in bad faith. This amendment would exempt the Department from liability in case of an honest mistake. The recommended official position is neutral.

We can be neutral now our concern have been addressed

Department: _____     Date 5/12/83

Exhibit 7 - Page 227

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 7 - Page 228

AMENDED IN ASSEMBLY MAY 3, 1983

~~AMENDED IN ASSEMBLY APRIL 21, 1983~~

CALIFORNIA LEGISLATURE—1983–84 REGULAR SESSION

# ASSEMBLY BILL                                No. 501

## Introduced by Assemblyman Harris

### February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code~~;~~ *and* to add Section 2036.2 to the Code of Civil Procedure ~~; and to add Section 6266 to the Government Code~~, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

97  40

Exhibit 7 - Page 229

AB 501 — 2 —

# TITLE 5.   UNIFORM TRADE SECRETS ACT

1
2
3   3426.   This title may be cited as the Uniform Trade
4   Secrets Act.
5   3426.1.   As used in this title, unless the context requires
6   otherwise:
7   (a) "Improper means" includes theft, bribery,
8   misrepresentation, breach or inducement of a breach of
9   a duty to maintain secrecy, or espionage through
10   electronic or other means.
11   (b) "Misappropriation" means:
12   (1) Acquisition of a trade secret of another by a person
13   who knows or has reason to know that the trade secret
14   was acquired by improper means; or
15   (2) Disclosure or use of a trade secret of another
16   without express or implied consent by a person who:
17   (A) Used improper means to acquire knowledge of
18   the trade secret; or
19   (B) At the time of disclosure or use, knew or had
20   reason to know that his or her knowledge of the trade
21   secret was:
22   (i) Derived from or through a person who had utilized
23   improper means to acquire it;
24   (ii) Acquired under circumstances giving rise to a
25   duty to maintain its secrecy or limit its use; or
26   (iii) Derived from or through a person who owed a
27   duty to the person seeking relief to maintain its secrecy
28   or limit its use; or
29   (C) Before a material change of his or her position,
30   knew or had reason to know that it was a trade secret and
31   that knowledge of it had been acquired by accident or
32   mistake.
33   (c) "Person" means a natural person, corporation,
34   business trust, estate, trust, partnership, association, joint
35   venture, government, governmental subdivision or
36   agency, or any other legal or commercial entity.
37   (d) "Trade secret" means information, including a
38   formula, pattern, compilation, program, device, method,
39   technique, or process, that:
40   (1) Derives independent economic value, actual or

97   50

Exhibit 7 - Page 230

— 3 —                    AB 501

1  potential, from not being generally known to, and not
2  being readily ascertainable by proper means by, other
3  persons who can obtain economic value from its
4  disclosure or use; and
5    (2) Is the subject of efforts that are reasonable under
6  the circumstances to maintain its secrecy.
7    3426.2. (a) Actual or threatened misappropriation
8  may be enjoined. Upon application to the court, an
9  injunction shall be terminated when the trade secret has
10  ceased to exist, but the injunction may be continued for
11  an additional period of time in order to eliminate
12  commercial advantage that otherwise would be derived
13  from the misappropriation.
14    (b) If the court determines that it would be
15  unreasonable to prohibit future use, an injunction may
16  condition future use upon payment of a reasonable
17  royalty for no longer than the period of time the use could
18  have been prohibited.
19    (c) In appropriate circumstances, affirmative acts to
20  protect a trade secret may be compelled by court order.
21    3426.3. (a) A complainant may recover damages for
22  the actual loss caused by misappropriation. A
23  complainant also may recover for the unjust enrichment
24  caused by misappropriation that is not taken into account
25  in computing damages for actual loss.
26    (b) If neither damages nor unjust enrichment caused
27  by misappropriation are provable, the court may order
28  payment of a reasonable royalty for no longer than the
29  period of time the use could have been prohibited.
30    (c) If willful and malicious misappropriation exists, the
31  court may award exemplary damages in an amount not
32  exceeding twice any award made under subdivision (a)
33  or (b).
34    3426.4. If a claim of misappropriation is made in bad
35  faith, a motion to terminate an injunction is made or
36  resisted in bad faith, or willful and malicious
37  misappropriation exists, the court may award reasonable
38  attorney's fees to the prevailing party.
39    3426.5. In an action under this title, a court shall
40  preserve the secrecy of an alleged trade secret by

97   70

Exhibit 7 - Page 231

AB 501 — 4 —

1 reasonable means, which may include granting
2 protective orders in connection with discovery
3 proceedings, holding in-camera hearings, sealing the
4 records of the action, and ordering any person involved
5 in the litigation not to disclose an alleged trade secret
6 without prior court approval.

7 3426.6. An action for misappropriation must be
8 brought within three years after the misappropriation is
9 discovered or by the exercise of reasonable diligence
10 should have been discovered. For the purposes of this
11 section, a continuing misappropriation constitutes a
12 single claim.

13 3426.7. *(a)* Except as otherwise expressly provided,
14 this title does not supersede any statute relating to
15 misappropriation of a trade secret, or any statute
16 otherwise regulating trade secrets.

17 *(b) This title does not affect the disclosure of a public*
18 *record by a state or local agency under the California*
19 *Public Records Act (Chapter 3.5 (commencing with*
20 *Section 6250) of Division 7 of Title 1 of the Government*
21 *Code). Any determination as to whether the disclosure of*
22 *a public record constitutes a misappropriation of a trade*
23 *secret and the rights and remedies with respect thereto*
24 *shall be made pursuant to the law in effect before the*
25 *operative date of this title.*

26 3426.8. This title does not affect any contractual rights
27 or remedies.

28 3426.9. This title shall be applied and construed to
29 effectuate its general purpose to make uniform the law
30 with respect to the subject of this title among states
31 enacting it.

32 3426.10. If any provision of this title or its application
33 to any person or circumstances is held invalid, the
34 invalidity does not affect other provisions or applications
35 of the title which can be given effect without the invalid
36 provision or application, and to this end the provisions of
37 this title are severable.

38 3426.11. This title does not apply to misappropriation
39 occurring prior to January 1, 1984. If a continuing
40 misappropriation otherwise covered by this title began

97 100

Exhibit 7 - Page 232

— 5 —                         AB 501

1  before January 1, 1984, this title does not apply to the part
2  of the misappropriation occurring before that date. This
3  title does apply to the part of the misappropriation
4  occurring on or after that date unless the appropriation
5  was not a misappropriation under the law in effect before
6  the operative date of this title.
7      SEC. 2.   Section 2036.2 is added to the Code of Civil
8  Procedure, to read:
9      2036.2.   In any action alleging the misappropriation of
10  a trade secret under the Uniform Trade Secrets Act
11  (Title 5 (commencing with Section 3426) of Part 1 of
12  Division 4 of the Civil Code), before commencing
13  discovery relating to the trade secret under Chapter 2
14  (commencing with Section 1985) or Article 3
15  (commencing with Section 2016) of Chapter 3 of this
16  title, the party alleging the misappropriation shall
17  identify the trade secret with particularity subject to any
18  orders which may be appropriate under Section 3426.5 of
19  the Civil Code.
20  ~~SEC. 3.   Section 6266 is added to the Government~~
21  ~~Code, to read:~~
22  ~~6266.   If the disclosure of a public record under this~~
23  ~~chapter constitutes a misappropriation of a trade secret~~
24  ~~under the Uniform Trade Secrets Act (Title 5~~
25  ~~(commencing with Section 3426) of Part 1 of Division 4~~
26  ~~of the Civil Code), damages may not be recovered~~
27  ~~against the state or local agency or its employees unless~~
28  ~~the disclosure was made in bad faith.~~

O

97  110

Exhibit 7 - Page 233

# VOLUME 1

## CALIFORNIA LEGISLATURE

### AT SACRAMENTO

1983–84 REGULAR SESSION
1983–84 FIRST EXTRAORDINARY SESSION
1983–84 SECOND EXTRAORDINARY SESSION

# ASSEMBLY FINAL HISTORY

## SYNOPSIS OF

ASSEMBLY BILLS, CONSTITUTIONAL AMENDMENTS, CONCURRENT, JOINT, AND HOUSE RESOLUTIONS

| | |
|---|---|
| Assembly Convened December 6, 1982 | |
| Recessed December 8, 1982 | Reconvened January 3, 1983 |
| Recessed March 24, 1983 | Reconvened April 4, 1983 |
| Recessed July 19, 1983 | Reconvened August 15, 1983 |
| Recessed September 19, 1983 | Reconvened January 3, 1984 |
| Recessed April 12, 1984 | Reconvened April 23, 1984 |
| Recessed July 6, 1984 | Reconvened August 6, 1984 |
| Adjourned August 31, 1984 | |
| Adjourned Sine Die November 30, 1984 | |

Legislative Days.................................................................. 262

———

HON. WILLIE L. BROWN JR.
*Speaker*

HON. FRANK VICENCIA                   HON. TOM BANE
*Speaker pro Tempore*          *Assistant Speaker pro Tempore*

HON. MIKE ROOS                        HON. ROBERT W. NAYLOR
*Majority Floor Leader*            *Minority Floor Leader*

Compiled Under the Direction of
JAMES D. DRISCOLL
*Chief Clerk*

GUNVOR ENGLE
*History Clerk*

Exhibit 7 - Page 234

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 235

480.9

# BILL ANALYSIS

| DEPARTMENT | AUTHOR | BILL NUMBER |
|---|---|---|
| FOOD AND AGRICULTURE | Harris | AB 501 |
| SPONSORED BY | RELATED BILLS | DATE LAST AMEND |
| ASSEMBLY REPUBLICAN CAUCUS | | 5/3/83 |

## BILL SUMMARY

MAJOR BILL ▢

This Act provides that actual or threatened misappropriation (as defined in the Uniform Trade Secrets Act) of a Trade Secret may be enjoined and that actual misappropriation will give rise to actual damages, specifically including "unjust enrichment", and may include exemplary (punitive) damages.

A. Specific Findings:

The Department had originally opposed this bill unless amended to provide that State agencies would not be liable for an inadvertent error. The April 21, 1983 version of the bill adequately addressed the Department's concerns by exempting state and local agencies from liability for disclosure of a trade secret unless the disclosure was made in bad faith; the Department changed its official position to neutral. The current amended version deleted the entire exemption section of the bill and added a subsection (Section 3426.7(b)) providing that "This title" (the Uniform Trade Secrets Act) "does not effect the disclosure of a public record by a state or local agency under the California Public Records Act... Any determination as to whether the disclosure of a public record constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title."

Subsection (b) (quoted above) is unclear as to both its meaning and its intent. It could be argued that subsection (b) provides no exemption to the Uniform Trade Secrets Act for an inadvertent release of trade secret data by a state or local agency because it only relates to the release of public records; trade secrets are, by definition, not public records (Calif. Gov. Code Section 6254.7(d)). At best, the current version of the bill is vague as to the Department's liability for an inadvertent disclosure of a trade secret.

B. Fiscal Impact:

Assembly Bill 501 could expose the Department to liability for an error in judgment by staff who must process Public Records Act requests.

C. Conclusion:

Legal counsel recommends that the position of oppose unless amended be adopted.

STATE-MANDATED LOCAL PROGRAM    Yes ▢    No ▢    $

| OFFICIAL POSITION: | | Governor's office use |
|---|---|---|
| OPPOSE | | Position noted |
| | | Position approved |
| | | Position disapproved |
| DEPARTMENT DIRECTOR _Clare Berghill_ | DATE 5/24/83 | |

Exhibit 7 - Page 236

## BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

Exhibit 7 - Page 237

LAW OFFICES OF

# NILSSON, ROBBINS, DALGARN, BERLINER, CARSON & WURST

A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
707 WILSHIRE BOULEVARD
47TH FLOOR
LOS ANGELES, CALIFORNIA 90017
(213) 620-0600
CABLE ADDRESS: LAPAT
TELEX 194187 LAPATLSA

BILLY A. ROBBINS*
BYARD G. NILSSON*
LEWIS M. DALGARN*
ROBERT BERLINER*
JOHN CARSON*
HAROLD E. WURST*
MICHAEL S. ELKIND*
GREGORY B. WOOD*
LEONARD D. MESSINGER
ROBERT A. GREEN
H. ADAM COCHRAN

*DENOTES PROFESSIONAL CORPORATION

May 23, 1983

Assemblyman Elihu M. Harris
State Capitol Building
Sacramento, California   95814

Re:  AB 501 – Uniform Trade Secrets Act

Dear Assemblyman Harris:

On May 22, 1983, the Los Angeles Times published comments by
Mr. Bernard E. Witkin, the dean of California legal scholars.
Mr. Witkin's comments are enclosed.  They are so applicable
to AB 501 as to prompt this letter.

Quoting from the Los Angeles Times referring to our system of
laws, Mr. Witkin said:

> "The whole damn system is too complex," he
> said.  "But don't blame the lawyers.  Who makes the
> laws?  Legislatures.  Where do they get their information?
> Do they consult skilled experts?  Once in a while." ---
> "But most of the legislation throughout the country--
> federal and state--comes from special-interest groups
> and the not-too-skillful people in the legislative
> process dealing with complex material."

AB 501 is urged by a special-interest group motivated by the
sole objective of attaining a uniform law in all fifty states.
AB 501 strongly infringes upon the interests of advance-technology
states and typifies the court-clogging legislation referred
to by Mr. Witkin at another point in the article.

Very truly,

B. G. Nilsson

BGN/sbr

Exhibit 7 - Page 238

**By Kay Mills**

BERKELEY—Bernard E. Witkin has never really practiced law, yet he's the guru-emeritus of the California legal community.

Witkin's books on California law and procedure line library shelves. He is a leading thinker on judicial education, legal reform and the relationship of the media to the law. At 79 (today is his birthday), he's a strongly opinionated intellectual raconteur.

Ask him why his life took the turn it did and you get a typically Witkin answer, spoken in that tone your father used when you somehow failed to grasp something obvious: He felt he had no choice because of the nature of law-school education. Law-school professors are "sadistic," Witkin said; they insult those who do them the honor of trying to learn from them, and instead of developing strength of character and imaginativeness, they develop confusion. As a result, "I had neither the training, nor did any of the other graduates, to practice law as such, nor did I have any source of clients."

That being the case, Witkin sat down after graduation from the University of California's Boalt Hall law school in 1928 and organized his bar-review notes into a book. He had taken the bar-review course from "a lawyer who was no great shucks as a teacher, but for the first time in all those years I had contact with somebody who was trying to tell us what the law was, instead of concealing it from us," Witkin said during a recent conversation at his home in the Berkeley Hills.

He began to see the connections within the law, and his expanded notes became the first edition of the "Summary of California Law," published privately in 1928. Since then, he's worked for the California Supreme Court (from 1930 to 1949), taught dozens of bar-review courses himself and published books on the law totaling thousands of pages.

"When I started, over 50 years ago, was the last time a generalist could have made it. The field of law is too vast today," Witkin said.

So does all this complexity of the law work against the average law-abiding citizen?

"The whole damn system is too complex," he said. "But don't blame the lawyers. Who makes the laws? Legislatures. Where do they get their information? Do they consult skilled experts? Once in a while. We have an excellent law-revision commission, and when that organization puts together a revision of a topic of the law, it does an excellent job. But most of the legislation throughout the country—federal and state—comes from the special-interest groups and the not-too-skillful people in the legislative process dealing with complex material.

"The tendency is not toward organization and clarity but toward piling on more and more complexity. Whenever a group believes there is an evil that must be handled by legislation, a complicated and elaborate statute is devised. The motiva-

tion may be good and the declaration may be good, but it adds more complexity to the system."

One reason the system is overburdened, Witkin said, is that there is a widespread feeling in the United States that "the legal system exists in great measure for the protection of private rights—rights against the government, rights against other individuals and that anyone has access to the courts."

"We might as well admit that we are a tremendously litigious society and ask ourselves what we can do about it. Preliminarily, should we do something about it? Yes. The courts, federal and state, are clogged beyond endurance. It takes four years to get to trial of a personal-injury suit in a big industrial area. That's bad. The thought is that if you just make enough courts, you will have no problem. But there is a limit.

"There are two ways in which this litigiousness can be controlled. Neither has been adequately explored," said Witkin, who admits to giving little lectures when answering questions.

First of all, he explained, the public gets its knowledge of the law from the media, and the media stresses "human interest and sensational events instead of substance. A broad understanding of the law and its operation would enable people to realize that in a great many instances—perhaps the majority—the legal remedy is not very rewarding.

"The winner frequently doesn't get the fruits of his judgment, the loser is always a very unhappy and embittered person and there is a great feeling that they wasted precious time in a complicated forum that isn't really the place to handle normal kinds of disputes. More realistic reporting about the law and its actual operation and meaning might help intelligent people avoid rushing into litigation.

"There is another aspect that is being heavily espoused by some of our best reform agencies—it's got the beautiful title 'alternative dispute resolution,'" Witkin said, pronouncing the words with a mocking precision. "What that means is there are better ways and simpler and less expensive ways to handle a great bulk of the litigation that now clogs the courts. Those methods are arbitration, mediation and settlement conferences."

Most of the overload of the courts, Witkin said, "is the result of the constitutional direction giving an absolute right of appeal in all criminal cases at public expense with public representation of the highest caliber. And the obvious fact that well over 99% of the people convicted of major crimes are guilty means that the appeals deal with forms of procedure." To most people, he added, "the resolution of these technical legal principles in which guilt is irrelevant doesn't appear as a very important public endeavor."

Witkin warns that the "reform racket is not for successful people. You're in reform because it's the thing to do, because the fire burns within you and you know there are evils that have to be corrected. But if you believe in undertaking reforms only because they have a chance of success, you



*The whole damn s... blame the lawyers. The tendency is no... but toward piling o...*

don't belong in it." Never professes to be an optimis... all, look at his own fam... parents, Russian Jews, "e... graded kind of life offere... have their children born in... with all its advantages. In... sacrificed their education a... fication, and lived from ha... various kinds of work so... advantages."

Born in Holyoke, Mass., ... San Francisco in 1909. At B... into law by chance. A b... student working at freshm... coldly asked him his majo... didn't know what a major... suggested he say law. And la... "I am

Exhibit 7 - Page 239



LARRY BESSEL / Los Angeles Times

*"The whole damn system is too complex—but don't blame the lawyers. Who makes the laws? Legislatures. The tendency is not toward organization and clarity, but toward piling on more and more complexity"*

don't belong in it." Nevertheless, Witkin professes to be an optimist. He can, after all, look at his own family history. His parents, Russian Jews, "escaped the degraded kind of life offered in Russia to have their children born in a free country with all its advantages. In doing so, they sacrificed their education and other qualifications and lived from hand-to-mouth in various kinds of work so we got all the advantages."

Born in Holyoke, Mass., Witkin came to San Francisco in 1909. At Berkeley he got into law by chance. A bored graduate student working at freshman registration coldly asked him his major, and Witkin didn't know what a major was. Someone suggested he say law. And law it still is.

"I am not going around thinking that the

solution to all the problems is just around the corner. But psychologically, I do not believe that we are headed for doom. Just look back a few decades: the improvement of the rights and opportunities of minorities . . . the maintenance despite fiscal problems of a free education system, the maintenance of an independent legal profession and an independent bench that cannot be dominated by any other force in the government . . . .

"We've got plenty to do. I haven't given up hope for a better legal system, and I believe that the many movements under way cannot be stopped and that we will eventually achieve some of our objectives."

*Kay Mills is a Times editorial writer.*

needed to provide th federal agencies whe begins Oct. 1.

*Richard E. Cohen is spondent for the Natio*

# Los A

**Continued from First**

have hated it. There v es. Council Finance Braude wanted a ga He felt that those w must pay for them in Councilman Zev Yar garbage fee, favoring hit business harder t Councilman Gilbert L downtown Los Ange crease in the hotel m who has posh hote district, backed an in But, as City Counc said, "what are you g go down the drain?"

Bernson's statement San Fernando Valle heart of Jarvis countr starts, Bernson's co among the leaders. I their views, Bernson q tax and the garbage fee But he was unwillin tax action that wou deterioration of the m nicipal vehicle fleet enforcement and fire s The tone of the m instructive to whose w passion of the Proposit anti-tax actions that councils and in the Leg The council mem attuned to the desires On the front line of gov voters every night at ings, or even on the members run district constituent phone calls Yet, they are also details of government. city's garbage trucks a equipment is becomin aides receive calls con maintained parks and li ened hours and a poor They know the quality deteriorating.

The debate may sign a new era in Califor council's decision to con more taxes and fees Californians, having rea ration in services, and h it, have learned that yo get. The tax revolt, whi forgotten, seems to be government may be able ing.

*Bill Boyarsky is chief of*

Exhibit 7 - Page 240

§ 499c. [Trade secrets: Defined: Theft: Fraudulent appropriation: Copies of secrets: Bribery.] (a) As used in this section:

(3) "Trade secret" means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula or improvement which is secret and is not generally available to the public, and which gives one who uses it an advantage over competitors who do not know of or use the trade secret; and a trade secret shall be presumed to be secret when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited puproses.

Exhibit 7 - Page 241

EILL
BILL

STATE OF CALIFORNIA                                          GEORGE DEUKMEJIAN, Governor

~~DEPARTMENT OF FOOD AND AGRICULTURE~~



1220 N Street
Sacramento
95814


May 24, 1983


Honorable Elihu M. Harris
Assemblyman, Thirteenth District
State Capitol, Room 6031
Sacramento, California 95814

Dear Mr. Harris

We opposed your bill, AB 501, in its original form.  The potential liability to
the State from the inadvertent release of trade secret information concerns us
very much.  We feel it is inappropriate to enact a law providing damages be
paid for "misappropriation" of trade secret data if such law includes govern-
mental agencies.

We must respond to previously enacted laws relative to public records disclosure,
and with respect to pesticide health and safety data, there is enough confusion
and overlap between that data and trade secret data to really put us into a
"catch 22" situation.

Your April 21 amendment solved our problem, but your May 3 amendment brought it
forth again.  Accordingly, we are opposed to the bill pending resolution of the
above cited problem.

Perhaps a meeting in your office between us and the sponsors of your bill would
enable us to work out language solving the problem.

Sincerely


Clare Berryhill

Clare Berryhill
Director
(916) 445-7126

cc  Bion Gregory
    Lori Johnston
    George Soares

Exhibit 7 - Page 242



# THE STATE BAR OF CALIFORNIA

*Office of the Legislative Representative*

1210 K STREET                                   SACRAMENTO, CALIFORNIA 95814

TELEPHONE (916) 444-2762

*Ray —*
*Please advise .*

May 27, 1983

Elihu M. Harris
Assemblyman, 13th District
State Capitol, Room 6031
Sacramento, CA  95814

Dear Assemblyman Harris:

Enclosed for your consideration are two letters from our Patent, Trademark and Copyright Section of the State Bar.  I believe it would be helpful if we could set up a meeting with the appropriate parties to discuss this important issue before the bill is heard in the Senate Judiciary Committee.

I apologize if Mr. Nilsson begins his letter in a somewhat vitriolic tone.  Unfortunately, when the bill was heard in the Judiciary Committee, it was last on the file and his testimony was given sparse attention by the members.  In response, he apparently feels the legislature would be more attentive if he begins in a more aggressive style.

Sincerely,

Peter Jensen
Legislative Representative

PJ/kc

Enclosure

Exhibit 7 - Page 243

LAW OFFICES OF

## NILSSON, ROBBINS, DALGARN,
## BERLINER, CARSON & WURST

A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
707 WILSHIRE BOULEVARD
47TH FLOOR
LOS ANGELES, CALIFORNIA 90017
(213) 620-0600

CABLE ADDRESS: LAPAT
TELEX 194187 LAPATLSA

BILLY A. ROBBINS*
BYARD G. NILSSON*
LEWIS M. DALGARN*
ROBERT BERLINER*
JOHN CARSON*
HAROLD E. WURST*
MICHAEL S. ELKIND*
GREGORY B. WOOD*
LEONARD D. MESSINGER
ROBERT A. GREEN
H. ADAM COCHRAN

*DENOTES PROFESSIONAL CORPORATION

May 19, 1983

Assemblyman Elihu M. Harris
State Capitol Building
Sacramento, California    95814

Re:  AB 501 - Uniform Trade Secrets Act

Dear Assemblyman Harris:

The State Bar of California, PTC Section, is
outraged by AB 501!

If passed, AB 501 will spawn years of interpretative
litigation, contribute to court clogging, and move jobs out
of California.

Obvious and legitimate interpretations of language
in AB 501 will produce ludicrous results. Under one interpre-
tation of AB 501, the U. S. Government is a "person" and
thus NO information could be trade-secret property since the
United States Government could ascertain it by "proper
means", e.g. by eminent domain. Little information exists
that cannot be ascertained by the United States Government
using "proper means". Consequently, very little information,
if any, could qualify as "trade secret" under AB 501.

Other examples of similarly ridiculous but likely
results are abundant. If the Kentucky Colonel's chicken
recipe had been well known in some home kitchens of Kentucky,
under AB 501, the Colonel still could have a trade secret
and have appropriated it as his own exclusive trade secret
and presumably monopolized commercial production, since

Exhibit 7 - Page 244

## 1983-84 REGULAR SESSION

377

A.B. No. 501—Harris.

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code; and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

### 1983

Feb.    7—Read first time. To print.
Feb.    8—From printer. May be heard in committee March 10.
Feb.   15—Referred to Com. on JUD.
April   4—In committee: Set, first hearing. Hearing canceled at the request of author.
April  21—From committee chairman, with author's amendments: Amend, and re-refer to Com. on JUD. Read second time and amended.
April  25—Re-referred to Com. on JUD.
May     2—From committee: Amend, and do pass as amended. (Ayes 8. Noes 0.) (April 11).
May     3—Read second time and amended.   Ordered returned to second reading.
May     4—Read second time. To third reading.
May     5—Read third time, passed, and to Senate. (Ayes 76. Noes 0. Page 3439.)
May     5—In Senate. Read first time. To Com. on RLS. for assignment.
May    12—Referred to Com. on JUD.
June    7—In committee: Set, first hearing. Hearing canceled at the request of author.

### 1984

July    6—From committee chairman, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on JUD.
Aug.   14—From committee: Amend, and do pass as amended. (Ayes 6. Noes 0.).
Aug.   15—Read second time, amended, and to third reading.
Aug.   27—Read third time, passed, and to Assembly. (Ayes 40. Noes 0. Page 13913.)
Aug.   28—In Assembly. Concurrence in Senate amendments pending.
Aug.   29—Senate amendments concurred in. To enrollment. (Ayes 77. Noes 0. Page 20190.)
Sept.   6—Enrolled and to the Governor at 11 a.m.
Sept.  30—Approved by the Governor.
Sept.  30—Chaptered by Secretary of State - Chapter 1724, Statutes of 1984.

Exhibit 7 - Page 245

Assemblyman Elihu M. Harris
May 19, 1983
Page 2

those to whom it was known are not competitors and thus could not obtain "economic value" from it.

Why should the legality of a trade secret depend on whether the person to whom a secret is readily ascertainable can obtain economic value from its disclosure or use? It may be that the company or individual is not in the field of the secret's use and therefore cannot use it; it may not know to whom to disclose it for value. However, if it is known and if it would be of economic value to someone, then why should the determination be other than a finding that there is not a trade secret?

By way of further example, assuming corporations are "persons", if there is a trade secret in the chemical field and an individual, such an independent consultant research chemist correctly states that he could learn the secret within a matter of months, while a person on the research staff of DuPont also correctly states that it would take DuPont at least a year of research to discover the secret, what is the result under the requirement of "readily ascertainable"? It appears that the result is dependent upon who the various parties can find to <u>speculate</u> on how long it would take to discover a secret.

What is "readily ascertainable"? Is it research by a single trained individual for six months, or is it research by a large corporation's research department for one week, or is it merely going to ready references to find the information? Why have this definition at all? Why not only require that the secret be "not generally known"?

I have been authorized to express the concern of the Section to you and to seek a practical solution in the best interests of the State of California and the administration of trade-secret law within our state. The definition of a "trade secret" in the Act is particularly disturbing. In that regard, a brief analysis of the bill as it relates to the definition of a "trade secret" is set out below.

<u>Subject Matter</u>

Trade secrets are the life blood of progressive industry of the innovative type prevalent in our state. The

Exhibit 7 - Page 246

Assemblyman Elihu M. Harris
May 19, 1983
Page 3

business of a company (and its jobs) can be ripped off (as
to another state) effectively by another company proselytizing
disloyal employees to carry away trade secrets.  In the face
of such piracy threats, employees nevertheless should be
able to exercise their skills when and where they wish and
for the highest rate of pay.  Consequently, "trade secrets"
should be defined clearly and in a manner to equitably
balance the rights involved.  Essentially, the "trade
secret" definition in California should concisely resolve
the question of what an employee lawfully can take from a
company either for delivery to a competitor or for a "start
up" venture.

## Background

        Under California law, a stable definition of
"trade secrets" has been used for a number of years.  Under
case law, trade secrets "may consist of any formula, pattern,
device or compilation of information which is used in one's
business and which gives him an opportunity to obtain an
advantage over competitors who do not know or use it" (260
C.A.2d 251).  A compatible definition is provided in the
California Penal Code at Section 499c (copy attached).
Essentially, the definition specifies information which is
secret and affords a business advantage.

## AB 501 Definition

        The subject bill contains an ambiguous, restrictive
and limited definition of a "trade secret".  The bill
specifies "trade secret" information as that which is not
"readily ascertainable by proper means by other persons who
can obtain economic value from its disclosure or use".

## California Interests

        Trade secrets constitute property to be governed
by the State in the best interests of the State and the
equities of individual residents.  California law now
defines "trade secrets" in a manner that has effectively
served the interests of the State.  Adopting the limited,
highly restrictive, and ambiguous definition of AB 501
will not only spawn litigation but will be adverse to the

Exhibit 7 - Page 247

Assemblyman Elihu M. Harris
May 19, 1983
Page 4

State, thus facilitating the removal of trade secrets from
California (with attendant jobs) to other states.  The
restrictive definition of the act would produce legal
harangue and a field day for imaginative lawyers to clog the
courts in resolving the meaning of the words: "readily
ascertainable", "other persons", and "economic value".

## Conclusion

The restrictive definition of "trade secrets"
contained in AB 501 will facilitate the removal of trade
secrets from California industry to other states and will
initiate years of legal uncertainty while the meanings of
pregnant terms are litigated.  The uncertainty will be
compounded in view of well established existing definitions
under California law.

## Suggestion

It is the strong suggestion and urgent request of
the State Bar of California, Patent, Trademark and Copyright
Section, that AB 501 be amended to recite the definition of
a trade secret as set forth in the California Penal Code
Section 499c, or alternatively to a somewhat compatible form
by changing the paragraph beginning on page 2, at line 33 to
read as follows:

(1)  Derives independent economic value,
actual or potential, from not being generally known
[to, and not being readily ascertainable by proper
means by, other persons who can obtain economic value
from its disclosure or use]; and... (bracketed material
deleted).

In addition to the problematic definition set
forth in the bill, the following points remain of concern to
the Section:

1.  On page 3, at lines 20 and 26, there is a
requirement for conduct which is "willful and malicious".
Respectfully, conduct which is either "willful" or "malicious"
is deemed sufficiently culpable to justify exemplary damages
or attorneys' fees.

Exhibit 7 - Page 248

Assemblyman Elihu M. Harris
May 19, 1983
Page 5

     If a departing employee spitefully publishes a full-page newspaper advertisement revealing his former employer's trade secrets, that's malicious.  If a departing employee goes to work for a new company at three times his usual salary in order to deliver trade secrets, that's willful.  To require both "willful and malicious" action is unreasonable and extreme.

     2.  The bill provides limitation of "twice any award" at page 3, line 22.  In view of the high cost and extensive discovery attendant trade-secret litigation, a limitation of treble any award made would be far more appropriate.

     3.  AB 501 provides for the payment of "a reasonable royalty for no longer than the period of time the use could have been prohibited".  The Section is at a loss to comprehend how a court could arrive at such a period of time.  Presumably, Coca Cola has manufactured under a formula that has been a trade secret for a good many years and appears quite durable for the future.  How can anyone speculate on how much longer the secret can be kept or how soon someone else will independently discover it?

     In view of the above comments, the Patent, Trademark and Copyright Section of the State Bar of California strongly opposes AB 501 as being contrary to the best interests of the State of California, many of its workers, and as providing a fertile source of complex litigation.

              Respectfully,

              B. G. Nilsson

BGN/sbr
Enclosure

Exhibit 7 - Page 249

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 250

AB 501

ASSEMBLY JUDICIARY COMMITTEE -- MINORITY

AB 501 (Harris) -- UNIFORM TRADE SECRETS   (Amended 4/25/83)

Description:  Would enact the Uniform Trade Secrets Act which would provide that actual or threatened misappropriation of a trade secret may be enjoined and that actual misappropriation would give rise to damages, including "unjust enrichment", and possible punitive damages.  Fiscal effect:  None.

Supported by unknown.  Opposed by California Department of Food and Agriculture (probably no longer in opposition).

Comments:  Similar to author's AB 3738 that failed in 1982. The author amended AB 501 to immunize from liability any state/local public agencies for disclosure under the Public Records Act unless the disclosure was made in bad faith. Vote:  Majority.

Recommendation:  None.

```
        Assembly Republican Committee Vote
        Judiciary --    4/25/83
        (8-0)          Ayes:  Lancaster, Mojonnier,
                                 Stirling
                       Noes:
                       N.V.:
                       Abs.:  Johnson
        Lead Republican:  Johnson
        Consultant:  Redmond
```

Exhibit 7 - Page 251

# BLANK PAGE

Artifact of Photocopy Reproduction

**JAN RAYMOND**
**LEGISLATIVE HISTORY AND LEGISLATIVE INTENT**
**1 (888) 676-1947**

Exhibit 7 - Page 252

**MOSHER, POOLEY, SULLIVAN & HENDREN**
ATTORNEYS
525 UNIVERSITY AVENUE
SUITE 1410
PALO ALTO, CALIFORNIA 94301
(415) 327-0500

June 1, 1983

The Honorable Elihu M. Harris
The State Assembly
State Capital, Room 5175
Sacramento, CA   95814

      Re:   AB 501:  Uniform Trade Secrets Act

Dear Assemblyman Harris:

I wrote to you on July 22, 1982, in my own right, and on August 16, 1982, together with Alan Foster of the AEA, in connection with my then chairmanship of the AEA's lawyers' committee regarding the above legislation, in its form of last year's AB 3738.  I am now writing to you in regard to AB 501, which I believe to be an extremely significant piece of litigation affecting the technology industries, and in particular the rights and abilities of individuals to leave their employment and compete fairly in the establishment of startup enterprises.

As I indicated to you last year, I believe that the Uniform Trade Secrets Act would be beneficial to California in large measure because it would provide a step in securing uniformity among the states where California companies do business, as regards this most important subject of the law.  I believe that the legislation is extremely well drafted, and resolves important questions in a very considered way.

I am writing to you, however, because of certain specific amendments that I understand are now pending.   The first is proposed section 3426.8, which provides that the statute "does not affect any contractual rights or remedies." I am concerned that such a broad statement might do severe damage to the rights of employees who wish to resign and compete with their former employers (a process that I am sure you will agree is very important to the continued prosperity of the state).   Many employers require employees to sign contracts which stipulate to the proprietary (and therefore exclusive) nature of a large amount of information, whether it can properly be qualified as a "trade secret" or not.   In addition, such contracts often will lay claim in the employer to information which should be properly characterized as general knowledge that the employee brought to the job.   It is perhaps arguable whether, in specified circumstances, information of the first type should be protectable by contract, but certainly information in the second category cannot be, without in effect abolishing the rights of employee mobility and the goal of individual entre-preneurship.   I believe that this section requires substantial clarification.

Exhibit 7 - Page 253

The Honorable Elihu M. Harris
June 1, 1983
Page 2

On the other hand, I believe that section 2036.2, requring a plaintiff to "particularize" the claimed trade secrets before any discovery begins, is progressive and salutary.   In one recent case I handled on behalf of two scientists who were fired by a very large computer company (because it had been discovered that they planned to start a competitive business), we offered to settle with the plaintiff when the claim was first filed, and to stipulate not to use its trade secrets, so that the lawsuit could be avoided and the former employees could begin their businesses.   However, in an obvious effort to "outspend" the individuals, the plaintiff refused to indicate what precise secrets it was talking about.   Moreover, when we made application to the court for an order that the secrets specified before discovery began, that order was denied. As a result, my clients had to spend close to $50,000 over three weeks of time in intensive litigation, before the plaintiff (for other reasons) found a reason to settle, and produced its list of secrets in that context.

My practice is virtually limited to litigation of trade secret cases, and I have more often than not represented employees in the defense of such actions, employees who most frequently intend to begin a competing business and would like to do it fairly.  I have become increasingly alarmed at what I believe to be the tendency of many large corporate plaintiffs to pursue trade secret litigation not merely for the protection of trade secrets, but in order to prevent new competition from forming.   The harm that results not only extends to the individuals involved, but to society as a whole.  I believe that this requirement of disclosure of specific trade secrets at the outset of litigation will do much to help control this tendency.

I appreciate very much the efforts that you obviously have expended in this important endeavor, and support very much the concepts involved in AB 501.  If there is anything that I can do to assist in the drafting of clarifications, providing testimony in support of the bill, or in any other regard, I would be more than happy to cooperate.  As I noted before, I am past chairman of the lawyer's committee of the American Electronics Association, and author of the book, Trade Secrets:  How to Protect Your Ideas and Assets (Osborne/McGraw-Hill, 1982).  I therefore feel qualified to assist your office on this legislation.

Very truly yours,

James H. Pooley

JHP:db

Exhibit 7 - Page 254

**American Electronics Association**　　　　　　　**AEA**

2680 Hanover Street
Palo Alto, California 94304

(415) 857-9300

July 18, 1983

The Honorable Elihu Harris
Chairman, Assembly Judiciary Committee
State Capitol
Sacramento, CA 95814

Dear Assemblyman Harris:

I am writing to express a concern which the American Electronics Association has regarding the May 3 amendments to AB 501, the proposed Uniform Trade Secrets Act. AEA presently supports the measure and feels a uniform act will be beneficial. However, language on page 4, lines 17 through 25 (section 3426.7b) gives the trade secret specialists on our National Lawyers Committee cause for concern. While I understand that the wording reflects a compromise on a public disclosure issue, it seems to "freeze" the evolution of trade secrets law. We question whether this is desirable from either a legal or technological standpoint.

Because technological innovation is the lifeblood of California's electronics industries, we are very interested in speaking with you regarding our concerns and, if possible, working to meet your needs and alleviating our problems with the language. I have called Bion Gregory on this matter and hope to hear from him in the near future.

AEA and its member companies commend you for authoring AB 501. We look forward to working with you on this and other key issues.

Sincerely,

Alan T. Foster
Manager, State Government Affairs

ATF/tgp

cc: Bion Gregory
　　Legislative Counsel

　　The Honorable Barry Keene
　　Chairman, Senate Judiciary Committee

　　Richard Thomson
　　Chief Counsel
　　Senate Judiciary Committee

　　Grant Kenyon

Exhibit 7 - Page 255

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

## ASSEMBLY BILL                                     No. 501

### Introduced by Assemblyman Harris

### February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

LEGISLATIVE COUNSEL'S DIGEST

AB 501, as introduced, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1   SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:
3
4    TITLE 5.   UNIFORM TRADE SECRETS ACT
5
6   3426.   This title may be cited as the Uniform Trade
7  Secrets Act.
8   3426.1.   As used in this title, unless the context requires
9  otherwise:
10   (a) "Improper   means"   includes   theft,   bribery,

99   40

Exhibit 7 - Page 256

## VINSON & ELKINS

### ATTORNEYS AT LAW

FIRST CITY TOWER

HOUSTON, TEXAS 77002

TELEPHONE 713 651-2222 TWX 9108816391 TELEX 762 146

1101 CONNECTICUT AVE. N. W. SUITE 900
WASHINGTON, D. C. 20036
TELEPHONE 202 862-6500
CABLE VINELKINS · TELEX 89680

47 CHARLES ST., BERKELEY SQUARE
LONDON WIX 7PB, ENGLAND
TELEPHONE 44 01 491-7236
CABLE VINELKINS LONDON W. I. TELEX 24140

AUSTIN NATIONAL BANK TOWER
AUSTIN, TEXAS 78701
TELEPHONE 512 478-2500

September 19, 1983

Office of the Governor of
  the State of California
State Capitol
Sacramento, California 95814

        RE:  Uniform Trade Secrets Act

Dear Governor:

        It has recently come to my attention that the legis-
latures of a number of states are considering the adoption
of the Uniform Trade Secrets Act, promulgated by the
National Conference of Commissioners on Uniform State Laws
in August 1979.  Some state legislatures are adopting the
Uniform Trade Secrets Act because it appears to have the
support of the organized bars.

        I would like to point out, in order that any considera-
tion of the Uniform Trade Secrets Act be given thought and
analysis, that the primary organized bars which first
supported the adoption of the Uniform Trade Secrets Act by
the states have withdrawn their support.  Although the
American Bar Association, through its Patent, Trademark and
Copyright Section, approved the Act in February, 1980, that
approval was withdrawn and specific resolutions were passed
a year later in August, 1981.  A copy of those resolutions
are enclosed.

        Additionally, the American Patent Law Association's
Unfair Competition and Trade Secrets Committee has passed
similar resolutions in opposition to the Act.

        Please refer this letter to the appropriate Congressmen
or Congressional Committee(s) in your state in order that
they might have the benefit of the information contained in
this letter.

Exhibit 7 - Page 257

Anyone wishing additional information regarding Uniform Trade Secrets Act is requested to contact the undersigned, the American Patent Law Association, or the American Bar Association's Patent, Trademark and Copyright Section.

Very truly yours,

William L. LaFuze

317:2130

Enclosures

Exhibit 7 - Page 258

**American Electrc  cs Association**

AEA  *AF*

2680 Hanover Street
Palo Alto, California 94304

(415) 857-9300

November 29, 1983

The Honorable Elihu Harris
Chairman, Assembly Judiciary Committee
State Capitol
Sacramento, CA  95814

Dear Assemblyman Harris:

I am writing to reiterate a serious concern which the American Electronics
Association has regarding the May 3 amendments to AB 501.

AEA has supported AB 501 and feels that a Uniform Trade Secrets Act would
be generally beneficial.  However, language on page 4, lines 17 through
25 (Section 3426.7b) is considered by trade secrets specialists serving
electronics companies as causing a potential problem.  In essence, it
appears to "freeze" the evolution of trade secrets law in California.  We
question whether this is desirable from either a legal or technological
standpoint.

I spoke with Bion Gregory in August regarding this and he said that private
meetings with parties will be held before the bill is heard in Senate
Judiciary.  I would like to meet with him and electronics trade secrets
specialists during December and have called his office to see which dates
would be convenient.

Effective statutory trade secrets provisions are essential to further
technological innovation and growth within California.  We are very interested
in discussing our concerns surrounding AB 501 and, if possible, working to
meet your needs on the public disclosure issues.

AEA and its member companies commend you for your efforts.  We look forward
to working with you on this and other issues impacting California's elec-
tronics industries.

Sincerely,

Alan T. Foster
Manager, State Government Affairs

ATF:pp

cc:  Bion Gregory
     Legislative Counsel

     The Honorable Barry Keene
     Chairman, Senate Judiciary Committee

     Richard Thomson, Chief Counsel
     Senate Judiciary Committee

     Grant Kenyon
     Legislative Advocate

Exhibit 7 - Page 259

**Limbach, Limbach & Sutton**

A Partnership Including
Professional Corporations

Patent, Trademark and Copyright

Lawyers

2001 Ferry Building
San Francisco
California 94111
415/433-4150

Peninsula Office
2600 El Camino Real
Palo Alto, California 94306
415/857-0450

Santa Rosa Office
3333 Mendocino Avenue
Suite 200
Santa Rosa, California 95402
707/526-1480

Cable Address LLS
Telex 278356

Karl A. Limbach*
George C. Limbach*
John P. Sutton*
John K. Uilkema*
J. William Wigert, Jr.*
Philip M. Shaw, Jr.*
Neil A. Smith*
Malcolm B. Wittenberg*
Carrie L. Walthour*
Veronica Colby Devitt
Ronald L. Yin
Gerald T. Sekimura
Michael A. Stallman
Christopher G. Hawkins
James C. Weseman
Maria S. Cefalu
Philip A. Girard

Frank E. Johnston
J. Thomas McCarthy
Of Counsel

*A Professional Corporation

December 27, 1983

Mr. Ray LeBov
California Legislature
Box 161387
Sacramento, CA 95816

Re:   AB 501 -- California Uniform Trade Secrets Act

Dear Mr. LeBov:

Our firm specializes in intellectual property law and as such has been involved in a great deal of trade secret litigation.  Many of our clients possess information which they consider trade secret.

While we understand the desire of the legislature to implement uniform state laws, we are presently opposed to AB 501 in its present definition of a "trade secret." We would ask that the bill be amended to encompass the definition of a trade secret which has been proposed by the State Bar of California, Patent, Trademark & Copyright Section.

Any questions which you may have in terms of amendments should be directed to the representative of the PTC Section, Byard G. Nilsson, at:

> Nilsson, Robbins, Dalgarn,
>   Berliner, Carson & Wurst
> 707 Wilshire Boulevard, 47th Floor
> Los Angeles, CA 90017
> (213) 620-0600

Thank you for your attention.

Sincerely,

LIMBACH, LIMBACH & SUTTON

Veronica Colby Devitt

VCD/pma
cc:  Byard G. Nilsson, Esq.

Exhibit 7 - Page 260

**DONALD J. REISNER**
ATTORNEY AT LAW
PARK EXECUTIVE BUILDING, SUITE 350
925 L STREET
SACRAMENTO, CALIFORNIA 95814
————
(916) 444-8440

February 16, 1984

Assemblyman Elihu Harris
State Capitol
Sacramento, CA   95814

Re:   AB 501

Dear Assemblyman Harris:

The companies which we represent are opposed to your bill AB 501 as it is presently written.

While they support the adoption of a Uniform Trade Secrets Act, they are opposed to the current language in Section 3426.1(d)(1) of your bill. In particular, the terms "readily ascertainable", "proper means" and "persons who can obtain economic value" are undefined in current law and will both promote litigation and provide a means by which a misappropriator may avoid liability.

We would urge you to consider amending this section to substantially conform to the definition contained in Section 499c of the California Penal Code which we believe is more protective of the interests of California business.

Thank you for your consideration.

Sincerely,

Donald J. Reisner

DJR:nr

Exhibit 7 - Page 261

**Light Signatures, Incorporated**
'901 Avenue of the Stars. 4th Floor
Los Angeles CA 90067
(213) 277-3004

RECEIVED

MAR  6 1984

CAPITOL OFFICE

March 1, 1984

The Honorable Elihu M. Harris
State Assemblyman
State Capitol Building
Sacramento, CA  95814

Dear Assemblyman Harris:

I am the President and Chief Executive Officer of a two-year old technology
company which has experienced first hand the stealing of trade secrets by
another firm.  We intend to pursue remedy through legal action if required.
In any event, this experience coupled with our diligent efforts to protect our
trade secrets, yet still endeavoring to market our technology cries for better
protection, rather than what we regard to be less as contained in Assembly
Bill 501.

We, therefore, urge you to amend this bill as proposed by the California State
Bar as well as the Los Angeles Bar Association.

Sincerely,

J. F. DeLuna
President

JFD:cm

Exhibit 7 - Page 262

# Genest
# Technologies
# Inc. 1331 EAST EDINGER AVE., SANTA ANA, CA 92705, TEL. (714) 547-0880

March 9, 1984

RECEIVED

MAR 14 1984

CAPITOL OFFICE

Assemblyman Elihu M. Harris
State Capitol Building
Sacramento, California  95814

Re:  Assembly Bill 501
     Uniform Trade Secrets Act

Dear Assemblyman Harris:

The State of California is established as a leader in high technology industry.  Trade secrets constitute a basic ingredient to that industry.  Consequently, it is of considerable importance that the law of California effectively facilitates the administration of trade secret properly.  In addition to being clear and certain, the law should facilitate continued industrial expansion while protecting appropriate industrial property rights.

It recently came to our attention that the referenced bill, a variation of a Uniform Trade Secrets Act, is pending action by the State Senate.  Although uniformity may be a worthwhile objective, uniformity should not be tolerated at the expense of enacting substantively flawed legislation.

In our opinion AB 501 is seriously defective in several aspects:

First, we consider the definition of a "Trade Secret" in AB 501 to be complex, uncertain and, in some instances, impossible of compliance.  Example will illustrate.

By one interpretation, AB 501 defines a "Trade Secret" as a "formula" ... not being readily ascertainable by proper means by "other persons."  "Persons" includes any "government", or "governmental agency."  This would include the United States Government.

As a practical matter, the United States Government may readily ascertain any existing formula by eminent domain which is certainly a "proper means."  Consequently, no "formula" or other information could be a "Trade Secret" as defined by the bill.

Consider another interpretation under AB 501. A "Trade Secret" ... is a "program" ... "not being readily ascertainable by proper means by IBM."

Exhibit 7 - Page 263

Given the facility of IBM with respect to computer programs, would not any "program" be readily ascertainable to that company? Accordingly, can any "program" be a "Trade Secret" under the definition of AB 501?

Consider still another interpretation. A "Trade Secret" is a . . . "method" . . . "not being readily ascertainable by" . . . some organization . . . "who can obtain economic value from its disclosure or use."

It is difficult to conceive of an organization "who cannot obtain economic value from any method by its disclosure or use, providing the method has independent economic value" as stated in the definition. Accordingly, the definition is circuitous. And, even if there is such an organization or person who cannot obtain value, why should "obtaining economic value" make any difference. It certainly does not make any difference to the company whose trade secret is now public knowledge.

As a final example, under the proposed Act one might successfully argue that, while admitting theft of a trade secret, the defendant should nevertheless not be penalized since the defendant could have reverse-engineered the product, given enough time, thus satisfying the "readily ascertainable" test.

As can be seen, at the very least this definition will complicate the legal process by interjecting new and added criteria which must be argued and decided. This can only throw the current body of Trade Secret law, developed in California over a number of years, into chaos.

The risk of loss of jobs, loss of the State's technological leadership and serious injury to the economy of this State should certainly not be tolerated merely to achieve "uniformity."

A second area of concern is Section 3425.3(b), which requires an injured party to prove both willfulness (the mis-appropriator's intent is to benefit himself) and maliciousness (the misappropriator's intent is to harm the trade secret owner) to be entitled to exemplary damages. Proof of either willfulness or maliciousness, not both, should be sufficient to justify an award of exemplary damages. To require proof of both would place an unreasonable burden on the injured party.

A third area of concern is Section 3426.2(b). We can see no reason for depriving a court of the discretion to require continued payment of royalties once the trade secret is known. Indeed, a misappropriator, under no contractual obligation to maintain confidences, could simply publicize the trade secret and thereby relieve himself of the obligation to pay royalties.

Exhibit 7 - Page 264

For each of the above reasons, we urge you to amend the present legislation as proposed by the California State Bar and the Los Angeles County Bar Association in the attached paper.  To do so would, in our opinion, be to the ultimate benefit of employees, businesses and the economic welfare of the State of California.

Very Truly yours,

Leonard J. Genest
President

LJG/iw


cc: Bion Gregory
    Legislative Counsel
    State Capitol
    Sacramento, CA  95814

    Senator Barry Keene
    State Capitol Room 2032
    Sacramento, CA  95814

    Terrance W. Flanigan
    Legislative Representative
    State Bar of California
    1210 K Street
    Sacramento, CA  95814

Exhibit 7 - Page 265

...dments proposed ~y L. A. County Bar Association
                 .ir Association of San  ra :isco
           State Bar Patent, Trademark and Copyright Sectic
           Sacramento County Bar



## PART 9

### UNIFORM TRADE SECRETS ACT

Section 7200.
    As used in this Act, unless the context requires otherwise:
    (1)  "Improper means" includes theft, bribery, misrepresenta-
tion, breach or inducement of a breach of a duty to maintain
secrecy, or espionage through electronic or other means;
    (2)  "Misappropriation" means:
        (i)  acquisition of a trade secret of another by a
    person who knows or has reason to know that the trade
    secret was acquired by improper means; or
        (ii)  disclosure or use of a trade secret of
    another without express or implied consent by a person
    who
            (A) used improper means to acquire knowledge of
        the trade secret; or
            (B) at the time of disclosure or use, knew or
        had reason to know that his knowledge of the trade
        secret was
                (I) derived from or through a person who
            had utilized improper means to acquire
            it;
                (II) acquired under circumstances giving
            rise to a duty to maintain its secrecy or
            limit its use; or
                (III) derived from or through a person who
            owed a duty to the person seeking relief to
            maintain its secrecy or limit its use; or
            (C) before a material change of his position,
        knew or had reason to know that it was a trade
        secret and that knowledge of it had been acquired by
        accident or mistake.
    (3)  "Person" means a natural person, corporation,
business trust, estate, trust, partnership, association, joint
venture, government, governmental subdivision or agency, or
any other legal or commercial entity.
    (4)  "Trade secret" means information, including a
formula, pattern, compilation, program, device, method,
technique, or process, which is not generally known, that:
        (i)  derives independent economic value, actual or
    potential, from not being generally known to~and-not
    being-readily-ascertainable-by-proper-means-by,-other
    persons-who-can-obtain-economic-value-from-its-disclosure
    or-use, and
        (ii)  is the subject of efforts that are reasonable
    under the circumstances to maintain its secrecy.

8-8-b

Exhibit 7 - Page 266

1   misrepresentation, breach or inducement of a breach of
2   a duty to maintain secrecy, or espionage through
3   electronic or other means.
4       (b) "Misappropriation" means:
5       (1) Acquisition of a trade secret of another by a person
6   who knows or has reason to know that the trade secret
7   was acquired by improper means; or
8       (2) Disclosure or use of a trade secret of another
9   without express or implied consent by a person who:
10      (A) Used improper means to acquire knowledge of
11  the trade secret; or
12      (B) At the time of disclosure or use, knew or had
13  reason to know that his or her knowledge of the trade
14  secret was:
15      (i) Derived from or through a person who had utilized
16  improper means to acquire it;
17      (ii) Acquired under circumstances giving rise to a
18  duty to maintain its secrecy or limit its use; or
19      (iii) Derived from or through a person who owed a
20  duty to the person seeking relief to maintain its secrecy
21  or limit its use; or
22      (C) Before a material change of his or her position,
23  knew or had reason to know that it was a trade secret and
24  that knowledge of it had been acquired by accident or
25  mistake.
26      (c) "Person" means a natural person, corporation,
27  business trust, estate, trust, partnership, association, joint
28  venture, government, governmental subdivision or
29  agency, or any other legal or commercial entity.
30      (d) "Trade secret" means information, including a
31  formula, pattern, compilation, program, device, method,
32  technique, or process, that:
33      (1) Derives independent economic value, actual or
34  potential, from not being generally known to, and not
35  being readily ascertainable by proper means by, other
36  persons who can obtain economic value from its
37  disclosure or use; and
38      (2) Is the subject of efforts that are reasonable under
39  the circumstances to maintain its secrecy.
40      3426.2.  (a) Actual or threatened misappropriation

99  70

Exhibit 7 - Page 267

8-8

Section 7201.
    (a) Actual or threatened misappropriation may be enjoined.
Upon application to the court, an injunction shall be terminated
when the trade secret has ceased to exist, but the injunction
may be continued for an additional ~~reasonable~~ period of time
in order to eliminate commercial advantage that otherwise
would be derived from the misappropriation.
    (b)  If the court determines that it would be unreasonable to
prohibit future use, an injunction may condition future use
upon payment of a reasonable royalty for no longer than the
period of time the use could have been prohibited.
    (c)  In appropriate circumstances, affirmative acts to
protect a trade secret may be compelled by court order.

Section 7202.
    (a)  In addition to ~~or in lieu of~~ injunctive relief, a
complainant may recover damages for the actual loss caused
by misappropriation.  A complainant also may recover for the
unjust enrichment caused by misappropriation that is not taken
into account in computing damages for actual loss.
    (b)  If neither damages nor unjust enrichment caused by
misappropriation are provable, the court may order payment of
a reasonable royalty for no longer than the period of time the
use could have been prohibited.
    (c) ~~(b)~~ If willful ~~and~~ or malicious misappropriation
exists, the court may award exemplary damages. ~~in an amount not
not exceeding twice any award made under subsection (a)~~.

Section 7203.
    If (i) a claim of misappropriation is made in bad faith,
(ii) a motion to terminate an injunction is made or resisted
in bad faith, or (iii) willful ~~and~~ or malicious misappropriation
exists, the court may award reasonable attorney's fees to the
prevailing party.

Section 7204.
    In an action under this Act, a court shall preserve the
secrecy of an alleged trade secret by reasonable means, which
may include granting protective orders in connection with
discovery proceedings, holding in-camera hearings, sealing the
records of the action, and ordering any person involved in the
litigation not to disclose an alleged trade secret without
prior court approval.

Section 7205.
    An action for misappropriation must be brought within 3
years after the misappropriation is discovered or by the
exercise of reasonable diligence should have been discovered.
For the purposes of this section, a continuing misappropriation
constitutes a single claim.

Exhibit 7 - Page 268

8-8

Section 7206.

~~(a) This Act displaces conflicting tort, restitutionary, and other law of this State pertaining to civil liability for misappropriation of a trade secret.~~ Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

Section 7207.
This title does not affect any contractual rights or remedies.

Section ~~7207~~ 7208.
This Act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it.

Section ~~7208~~ 7209.
This Act may be cited as the Uniform Trade Secrets Act.

Section ~~7209~~ 7210.
If any provision of this Act or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

Section ~~7210~~ 7211.
~~This Act takes effect on ---------------- and does not apply to misappropriation occurring prior to the effective~~ date. This title does not apply to misappropriation occurring prior to January 1, 1984. If a continuing misappropriation otherwise covered by this title began before January 1, 1984, this title does not apply to the part of the misappropriation occuring before that date. This title does not apply to the part of the misappropriation occurring on or after that date unless the appropriation was not a misappropriation under the law in effect before the operative date of this title.

Section 7212.
In any action alleging the misappropriation of a trade secret under this act, before commencing discovery relating to the trade secret the party alleging the misappropriation shall identify the trade secret subject to any protective orders which may be appropriate.

8-8-d

Exhibit 7 - Page 269



**Paramount**
**Fitness Equipment Corporation**
6450 E. Bandini Blvd., Los Angeles,
CA 90040 Tel 213-721-3644

March 15, 1984

RECEIVED
MAR 20 1984
CAPITOL OFFICE

ASSEMBLYMAN ELIHU M. HARRIS
State Capitol Building
Sacramento, CA  95814

RE:   Assembly Bill 501
      Uniform Trade Secrets Act

Dear Assemblyman Harris:

The State of California is established as a leader in high technology industry.  Trade secrets constitute a basic ingredient to that industry.  Consequently, it is of considerable importance that the law of California effectively facilitates the administration of trade secret property.  In addition to being clear and certain, the law should facilitate continued industrial expansion while protecting appropriate industrial property rights.

It recently came to our attention that the referenced bill, a variation of a Uniform Trade Secrets Act, is pending action by the State Senate.  Although uniformity may be a worthwhile objective, uniformity should not be tolerated at the expense of enacting substantively flawed legislation.

In our opinion AB 501 is seriously defective in several respects:

First, we consider the definition of a "Trade Secret" in AB 501 to be complex, uncertain and, in some instances, impossible of compliance.  Examples will illustrate.

By one interpretation, AB 501 defines a "Trade Secret" as a "formula" . . . not being readily ascertainable by proper means by "other persons."  "Persons" includes any "government", or "governmental agency."  This would include the United States Government.

As a practical matter, the United States Government may readily ascertain any existing formula by eminent domain which is certainly a "proper means."  Consequently, no "formula" or other information could be a "Trade Secret" as defined by the bill.

Exhibit 7 - Page 270

Assemblyman Elihu M. Harris
Page 2
3/15/84


Consider another interpratation under AB 501. A "Trade Secret" . . . is a "program" . . . "not being readily ascertainable by proper means by IBM."

Given the facility of IBM with respect to computer programs, would not any "program" be readily ascertainable to that company? Accordingly, can any "program" be a "Trade Secret" under the definition of AB 501?

Consider still another interpretation. A "Trade Secret" is a . . . "method" . . . "not being readily ascertainable by" . . . some organization . . . "who can obtain economic value from its disclosure or use."

It is difficult to conceive of an organization "who cannot obtain economic value from any method by its disclosure or use, providing the method "has independent economic value" as stated in the definition. Accordingly, the definition is circuitous. And, even if there is such an organization or person who cannot obtain value, why should "obtaining economic value" make any difference. It certainly does not make any difference to the company whose trade secret is now public knowledge.

As a final example, under the proposed Act one might successfully argue that, while admitting theft of a trade secret, the defendant should nevertheless not be penalized since the defendant could have reverse-engineered the product, give enough time, thus satisfying the "readily ascertainable" test.

As can be seen, at the very least this definition will complicate the legal process by interjecting new and added criteria which must be argued and decided. This can only throw the current body of Trade Secret law, developed in California over a number of years, into chaos.

The risk of loss of jobs, loss of the State's technological leadership and serious injury to the economy of this state should certainly not be tolerated merely to achieve "uniformity."

A second area of concern is Section 3425.3(b), which requires an injured party to prove both willfulness (the misappropriator's intent is to benefit himself) and maliciousness (the misappropriator's intent is to harm the trade secret owner) to be entitled to exemplary damages. Proof of either willfulness or maliciousness, not both, should be sufficient to justify an award of exemplary damages. To require proof of both would place an unreasonable burden on the injured party.

Exhibit 7 - Page 271

Assemblyman Elihu M. Harris
Page 3
3/15/84


A third area of concern is Section 2426.2(b). We can see no reason for depriving a court of the discretion to require continued payment of royalties once the trade secret is known. Indeed, a misappropriator, under no contractual obligation to maintain confidences, could simply publicize the trade secret and thereby relieve himself of the obligation to pay royalties.

For each of the above reasons, we urge you to amend the present legislation as proposed by the California State Bar and the Los Angeles County Bar Association in the attached paper. To do so would, in our opinion, be to the ultimate benefit of employees, businesses and the economic welfare of the State of California.

Very truly yours

Jim Trisler,
President

JT:mn

cc:  Bion Gregory
     Legislative Counsel
     State Capitol
     Sacramento, CA  94814

     Senator Barry Keene
     State Capitol Room 2032
     Sacramento, CA  95814

     Terrance W. Flanigan
     Legislative Representative
     State Bar of California
     1210 K Street
     Sacramento, CA  95814

Exhibit 7 - Page 272

**American Electronics Association** 

2670 Hanover Street
P.O. Box 10045
Palo Alto, California 94303

(415) 857-9300

May 18, 1984

Robert H. Cornell, Esq.
Halley, Cornell & Lynch
25th Floor
50 California Street
San Francisco, CA  94111

Dear Bob:

I have reviewed the proposed amendments to AB 501 offered by the county bar
groups and the State Bar's Patent, Trademark and Copyright Section.

We appreciate the opportunity to comment on the proposals.  AEA is a
national trade association whose 2,500 member companies manufacture
aerospace equipment and supplies; computers, their peripherals, and
software; telecommunications equipment and systems; consumer products;
industrial products; manufacturing equipment and systems; military equipment
and defense systems; semiconductors and other components.

We also have as associated members more than 400 law firms, financial
institutions, and venture capital groups which serve America's electronics
industries.

Ideas are the lifeblood of the electronics industries, and are sometimes the
major asset of small startup electronics firms.  Because over 70 percent of
our member firms are small electronics firms, we are especially committed to
promoting effective and equitable trade secret protection.

When AB 501 was first introduced, we supported it as a positive move in
promoting trade secret protection in the various jurisdictions.  However,
subsequent amendments caused us to re-evaluate that position and the current
proposed amendments give us further cause for concern.  Before getting in a
position of opposing AB 501, however, we would like to help solve mutual
concerns through the following comments:

- Proposed amendment to Section 7200 (4): definition of "trade secret":
  We feel this amendment is unnecessary and it would have a negative
  impact on AEA's member companies.  First, it alters a definition of
  "trade secret" which has been applied for years.  Second, it
  unnecessarily moves away from much-needed consistency on major items of
  trade secret law.  As a result, the change is likely to cause confusion
  regarding legislative intent and encourage litigation.

  The amendment would delete from trade secret law a basic principle--that
  items whose nature can be ascertained by simple examination should not
  be afforded trade secret status.  For example, a valve which an be
  disassembled and analyzed in three minutes would not, under

Exhibit 7 - Page 273

long-standing trade secret law, be deemed a trade secret.  Under the proposed amendment, it might.  This is inconsistent with current practice.

- Proposed amendment to Section 7201 (a):  We feel that the deletion of "reasonable" makes the statute unclear and will add to the ambiguity of AB 501's legislative intent.  We feel the amendment should not be made.

- Proposed amendment to Section 7202 (a):  We understand that the intent of the amendment is to enable the complainant to recover damages or injunctive relief or both.  We support that intent, but feel that the proposed amendment does not accomplish that goal.  The language seems to remove the power of the court to award damages if injunctive relief is not given.

  The language of Section 7202 (a) in the Uniform Trade Secrets Act achieves the proponents' desired goal.  Why enact an amendment which goes against the goal and is likely to cause confusion regarding the Legislature's intent?  We recommend Section 7202 (a) remain in current form.

- Proposed amendment to Section 7202 (b):  We have no difficulty with this proposal.

- Proposed amendment to Section 7202 (c):  We oppose the notion of unlimited punitive damages because it encourages litigation and can be used by large firms to create excessive leverage over smaller companies.  However, we would support a treble damages provision in (c).

  However, we have concerns about the change from "and" to "or".  Willful conduct can include simple negligence and we feel that the Uniform Act ("willful and malicious") should be retained in AB 501.  Ms. Harner's (JBL) interpretation of "willful" as expressed in her March 7 letter fails to fully consider the meaning of that term--the person need not have intended to achieve the result.

- Proposed amendment to Section 7203 (iii):  The Uniform Act language should be retained, for the reasons stated in response to the proposed amendment to Section 7202 (c).

- Proposed amendment to Section 7206:  By deleting the Uniform Act language, trade secret actions are likely to present a "Christmas tree" of varying theories.  We feel the Uniform Act language provides more coherence in addressing trade secret issues.

- Proposed amendment to Section 7207:   We feel this amendment is unnecessary and adds ambiguity to AB 501's legislative intent by moving away from the Uniform Act.

  Nothing in the Uniform Act says that it does affect contractual remedies.  Under recognized case law, recitations in a contract relating to trade secrets can still be challenged if they differ from recognized law or the facts surrounding the case.  The broad language of the

Exhibit 7 - Page 274

proposed amendment could enable an employer to unduly alter via contract
the delicate balance which undergirds trade secret law.

- Proposed amendment to Section 7211:  We have no difficulty with this
  amendment.

- Proposed amendment to Section 7212:  We feel this is a good amendment.

Bob, we're pleased that the amendment to Section 3426.7 (b) will be changed.
As now worded, it would establish for the first time a "two-tiered" trade
secret law that would prove extremely awkward for courts and attorneys
alike.  We would like to participate in solving the serious problems
surrounding Section 3426.7 (b)'s current wording.

Thank you for soliciting our views on the proposed amendments to AB 501.

Sincerely,

Alan T. Foster
Manager, State
Government Affairs

cc:  Ray Le Bov
     Assembly Judiciary Committee

     Bion Gregory
     Legislative Counsel

     Grant Kenyon
     Legislative Representative

     James Pooley, Esq.

Exhibit 7 - Page 275

# EXHIBIT 1 Part 2

Exhibit 7 - Page 276

LAW OFFICES OF

# HALLEY, CORNELL & LYNCH

A PROFESSIONAL CORPORATION

25TH FLOOR

50 CALIFORNIA STREET

SAN FRANCISCO, CALIFORNIA 94111

ROBERT H. CORNELL
J. KENNETH LYNCH
ANDREW G. LANGE
ROGER C. PETERS
FREDERICK A. PATTERSON

JAMES W. HALLEY
(1921-1976)

(415) 981-7700

22 May 1984

Judith A. Harper
The State Bar of California
1100 Eleventh Street, Suite 315
Sacramento, CA 95814

Gregory B. Wood
Nilsson, Robbins, Dalgarn,
  Berliner, Carson & Wurst
707 Wilshire Boulevard, 47th Floor
Los Angeles, CA 90017

David M. Simon
Spensley, Horn, Jubas & Lubitz
1880 Century Park East, Suite 500
Los Angeles, CA 90067

Neal S. Millard
Morrison & Foerster
333 South Grand Avenue
Los Angeles, CA 90071

Ray LeBov
Counsel to the Assembly Committee on Judiciary
State of California
State Capitol, Room 6031
Sacramento, CA 95814

Dear Judy, Neal, Greg, Dave and Ray:

Attached is a summary of what I believe was agreed upon at our meeting in Sacramento.

There has been a great deal of interest in the Act by the American Electronics Association.  They are headquartered in Palo Alto and represent a substantial portion of the high-tech industry not only in California but in the United States.  They have a very strong interest in the passage of the Uniform Act. Unfortunately, their director, Alan Foster, did not have an opportunity to respond to the Bars' amendments prior to our meeting.  Enclosed is a written report of his position.  His position reinforces my reluctance to change the definition of "trade secret" in the Act itself.  I would appreciate your

Exhibit 7 - Page 277

— 3 —                                    **AB 501**

1 may be enjoined. Upon application to the court, an
2 injunction shall be terminated when the trade secret has
3 ceased to exist, but the injunction may be continued for
4 an additional reasonable period of time in order to
5 eliminate commercial advantage that otherwise would
6 be derived from the misappropriation.

7    (b) If the court determines that it would be
8 unreasonable to prohibit future use, an injunction may
9 condition future use upon payment of a reasonable
10 royalty for no longer than the period of time the use could
11 have been prohibited.

12    (c) In appropriate circumstances, affirmative acts to
13 protect a trade secret may be compelled by court order.

14    3426.3.   (a) In addition to or in lieu of injunctive
15 relief, a complainant may recover damages for the actual
16 loss caused by misappropriation. A complainant also may
17 recover for the unjust enrichment caused by
18 misappropriation that is not taken into account in
19 computing damages for actual loss.

20    (b) If willful and malicious misappropriation exists,
21 the court may award exemplary damages in an amount
22 not exceeding twice any award made under subdivision
23 (a).

24    3426.4.   If a claim of misappropriation is made in bad
25 faith, a motion to terminate an injunction is made or
26 resisted in bad faith, or willful and malicious
27 misappropriation exists, the court may award reasonable
28 attorney's fees to the prevailing party.

29    3426.5.   In an action under this title, a court shall
30 preserve the secrecy of an alleged trade secret by
31 reasonable means, which may include granting
32 protective orders in connection with discovery
33 proceedings, holding in-camera hearings, sealing the
34 records of the action, and ordering any person involved
35 in the litigation not to disclose an alleged trade secret
36 without prior court approval.

37    3426.6.   An action for misappropriation must be
38 brought within three years after the misappropriation is
39 discovered or by the exercise of reasonable diligence
40 should have been discovered. For the purposes of this

99   100

Exhibit 7 - Page 278

22 May 1984
Page 2

thoughts on comment language that could be drafted to clear up the perceived ambiguity of "and not being readily ascertainable but proper means by."

    I enjoyed meeting each of you in Sacramento and really appreciate the time and effort that you and your associates have devoted to this Act.

               Very truly yours,

               Robert H. Cornell

RHC:jpl
encl.


cc:  Bion Gregory
      Alan T. Foster

Exhibit 7 - Page 279

Resolutions of the Patent,
Trademark & Copyright Section
American Bar Association
Regarding the Uniform Trade Secrets Act
Approved August 8, 1981

RESOLUTION 206-3

RESOLVED, that the Section of Patent, Trademark and Copyright Law favors in principle that the remedies for a breach of contract shall not be displaced by trade secret law; and specifically, the Section favors amendment of Section 7 of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to clarify that the Act does not effect such displacement.

RESOLUTION 206-4

RESOLVED, that the Section of Patent, Trademark and Copyright Law favors in principle the remedy of a reasonable royalty when neither damages nor unjust enrichment are provable in trade secret cases; and specifically, the Section favors amendment of Section 3 of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to so provide.

RESOLUTION 206-5

RESOLVED, that the Section of Patent, Trademark and Copyright Law favors in principle that future use by a misappropriator of a trade secret upon payment of a reasonable royalty be permitted only in exceptional circumstances; and specifically, the Section favors amending Section 2(b) of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to clarify that the Act so provides.

RESOLUTION 206-6

RESOLVED, that the Section of Patent, Trademark and Copyright Law favors in principle the application of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 only in cases in which misappropriation begins after the effective date of the Act; and specifically, the Section favors amendment of Section 11 of the Act to clarify that the Act does not apply to a continuing misappropriation which begins prior to the effective date of the Act.

Exhibit 7 - Page 280

Resolutions Approved
December, 1981 by the
Unfair Competition Committee
American Patent Law Association

### Resolution No. 1

RESOLVED, that the American Patent Law Association favors in principle a uniform state law for the protection of trade secrets.

### Resolution No. 2

RESOLVED, that the American Patent Law Association opposes at this time the adoption by any state of the Uniform Trade Secrets Act which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979.

### Resolution No. 3

RESOLVED, that the American Patent Law Association favors in principle that the remedies for a breach of contract shall not be displaced by trade secret law; and specifically, the APLA favors amendment of Section 7 of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to clarify that the Act does not effect such displacement.

### Resolution No. 4

RESOLVED, that the American Patent Law Association favors in principle the remedy of a reasonable royalty when neither damages nor unjust enrichment are provable in trade secret cases; and specifically, the APLA favors amendment of Section 3 of the Uniform Trade Secrets Act which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to so provide.

### Resolution No. 5

RESOLVED, that the American Patent Law Association favors in principle that future use by a misappropriator of a trade secret upon payment of a reasonable royalty be permitted only in exceptional circumstances; and specifically, the APLA favors amending Section 2(b) of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 to clarify that the Act so provides.

### Resolution No. 6

RESOLVED, that the American Patent Law Association favors in principle the application of the Uniform Trade Secrets Act ("Act") which was approved by the National Conference of Commissioners on Uniform State Laws in August, 1979 only in cases in which misappropriation begins after the effective date of the Act; and specifically, the APLA favors amendment of Section 11 of the Act to clarify that the Act does not apply to a continuing misappropriation which begins prior to the effective date of the Act.

Exhibit 7 - Page 281

16 May 1984

Review of Matters Discussed with Neal Millard,
Greg Wood, Dave Simon, Judy Harper, Ray LeBov
<u>and Bob Cornell on April 23, 1984 at Sacramento</u>

The following changes with respect to AB 501 and the amend-
ments proposed by the various Bar Associations were agreed upon
as follows:

1.   Section 3426.2(a) deletion of the word "reasonable".
     This has been done in the May 3 draft of AB 501.

2.   Section 3426.3(a) deletion of the words "in addition
     to or in lieu of injunctive relief".  This change has
     been made in the May draft.

3.   Section 3426.3 addition of a new subparagraph (b) to
     provide a reasonable royalty where neither damages
     nor unjust enrichment are provable.  This has been
     added to the May draft.

4.   Section 3426.3 change "willful and malicious" to
     "willful or malicious".  This change has not yet been
     made.

5.   Section 3426.3 change the amount of exemplary damages
     in an amount not exceeding "three times" rather than
     "twice" the award under subdivisions (a) or (b).  This
     change has not yet been made and is a change from the
     Bar resolution which would have eliminated any limit
     on exemplary damages.

6.   Section 3426.4 change "willful and malicious" to
     "willful or malicious".  This change has not yet been
     made.

7.   Section 3426.7(a) and Section 3426.8 is new language
     replacing Section 7 of the Uniform Act with respect
     to effect on other law.  These changes were made in the
     April draft.

8.   Section 3426.7(b) is an attempt to meet the objections
     to the Act based on its effect on disclosure of public
     records.  Concern was expressed at the meeting that the
     effect of subdivision (b) would be to create two levels
     of trade secret law.  The Legislative Counsel's office
     will be asked to prepare language to limit the effect
     of this provision, perhaps through the addition of
     Legislative intent.

Exhibit 7 - Page 282

May 16, 1984
Page 2

9.  Section 3426.11 incorporates new language recommended by the Bar with respect to continuing misappropriations and these changes have been incorporated in the May draft.  The date January 1, 1984 should be changed to whatever the effective date of the Act will be.

10.  A new provision was recommended by the Bar as their Section 7212.  This has been incorporated in the Harris Bill as Section 2036.2 of the Code of Civil Procedure.  The Harris Bill added the words, after shall identify the trade secret, "with particularity". It was agreed that this should be changed to read "with reasonable particularity."

The only matter not generally resolved at the meeting was the definition of trade secret.  I believe it was generally agreed that, although the Uniform Act created a possible ambiguity, the Bar proposal did not solve the problem and created some further problems.  The objectionable language in the May draft of the Harris Bill were the words contained on lines 1 and 2 of page 3 "and not being readily ascertainable by proper means by,".  The objection to the quoted language is that any trade secret can be ascertained by the proper means of purchase, eminent domain, or independent discovery, thereby rendering the definition meaningless.  I had concerns with respect to changing the Uniform definition, which is the one section not objected to outside of California.  Judy suggested that the ambiguity might be clarified by adding additional language of Legislative intent.

The Committee wanted some time to see if they could come up with a better solution to the problems raised.

Robert H. Cornell

Exhibit 7 - Page 283

LAW OFFICES OF
## MORRISON & FOERSTER
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
333 SOUTH GRAND AVENUE
### LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 626-3800
TELEX 18-1267

**SAN FRANCISCO OFFICE**
ONE MARKET PLAZA
SPEAR STREET TOWER
SAN FRANCISCO, CALIFORNIA 94105
TELEPHONE (415) 777-6000

**DENVER OFFICE**
3100 COLUMBIA PLAZA
1670 BROADWAY
DENVER, COLORADO 80202
TELEPHONE (303) 831-1100

NEAL S. MILLARD
LOS ANGELES
DIRECT DIAL (213) 621-9445

**WASHINGTON, D.C. OFFICE**
1920 N STREET, N.W.
WASHINGTON, D.C. 20036
TELEPHONE (202) 887-1500

**LONDON OFFICE**
12 GROSVENOR PLACE
LONDON SW1X 7HN
ENGLAND
TELEPHONE 235-0581

**HONG KONG OFFICE**
ALEXANDRA HOUSE
CHATER ROAD
HONG KONG
TELEPHONE 5-215557

May 31, 1984

Robert H. Cornell, Esq.
Halley, Cornell and Lynch
25th Floor
50 California Street
San Francisco, California  94111

Re:  AB 501

Dear Bob:

Thank you very much for your notes of May 16, 1984.  I have reviewed these notes along with the accompanying letter from Alan T. Foster of American Electronics Association.

For the most part, I do not believe that all of the comments made by Mr. Foster are appropriate.  For example, in opposing our requested changes to 7202(c) (now 3426.3), he states that "[w]illful conduct can include simple negligence . . ."  That statement is not true.

Furthermore, his criticisms with respect to the definition of "trade secret" do not make any sense in light of all of the modifications we made concerning the definition.  More specifically, it is my understanding that language will be added to 3426.1(a) which will meet almost all of Mr. Foster's objections.

Mr. Foster's letter contained other comments which I felt were either slightly inaccurate or fully addressed by the modifications proposed and agreed upon at our meeting.  However, I have talked with Greg Wood and he indicated to me that he will be sending you a

Exhibit 7 - Page 284

## MORRISON & FOERSTER
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Robert T. Cornell, Esq.
Halley, Cornell and Lynch
May 31, 1984
Page 2.

Re:  AB 501

letter discussing, point by point, the concerns set
forth in Mr. Foster's letter, so I see no need to duplicate
Greg's work here.  My main point is that, in my opinion,
the concerns of Mr. Foster have been met by the compromises
reached during our meeting and I would hope that AB
501 can be changed in accordance with those compromises
without further modification.

Again, we appreciate the time you have spent
in this matter and the time you have spent with us.

Very truly yours,


Neal S. Millard

NSM:ep

cc:  Gregory B. Wood, Esq.
     Nilsson, Robbins, Dalgarn, Berliner, Carson & Vurst

     Ray Lebov, Esq.
     Counsel to the Assembly Committee on the
       Judiciary, State of California

     Margaret M. Morrow, Esq.
     Kadison, Pfaelzer, Woodard, Quinn & Rossi

     David Simon, Esq.
     Spensley, Horn, Jubas & Lubitz

     Judith A. Harper, Coordinator
     Conference of Delegates

Exhibit 7 - Page 285

LAW OFFICES OF

## NILSSON, ROBBINS, DALGARN,
## BERLINER, CARSON & WURST

A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
707 WILSHIRE BOULEVARD
47TH FLOOR
LOS ANGELES, CALIFORNIA 90017
(213) 620-0600

CABLE ADDRESS: LAPAT
TELEX 194187 LAPATLSA

BILLY A. ROBBINS*
BYARD G. NILSSON*
LEWIS M. DALGARN*
ROBERT BERLINER*
JOHN CARSON*
HAROLD E. WURST*
MICHAEL S. ELKIND*
GREGORY B. WOOD*
LEONARD D. MESSINGER
ROBERT A. GREEN
ADAM COCHRAN
THOMAS H. MAJCHER

*DENOTES PROFESSIONAL CORPORATION

June 6, 1984

Robert Cornell, Esq.
Halley, Cornell & Lynch
50 California Street, 25th Floor
San Francisco, California 94111

      Re:  Trade Secrets Bill
          Docket Number 3012-116

Dear Bob:

      I received your letter of May 22, 1984 with the two attachments.  Items 1 through 10 on your May 16, 1984 summary are substantially in accord with my notes.  With respect to the trade secret definition, I was under the impression that agreement, at least in principle, had been reached to delete the words "and not being readily ascertainable by proper means by" and leaving the words "other persons who can obtain economic value from its disclosure or use" intact.  It remains our view, however, that leaving this last phrase unchanged adds nothing and, in fact, muddles the definition.  My recollection is that the only matter left unresolved was whether to include the public along with "other persons who can obtain economic value from its disclosure or use."  After some consideration we acceded to your position to include reference to the public.  Additionally, we are agreeable to amplifying the definition of "improper means" to specifically exclude reverse engineering or independent derivation when exercised alone.  I believe that these additions would take care of any perceived ambiguities.

      As an aside, I would again refer you to the Indiana Trade Secret case where a policy holder list was deemed, ab initio, to not be a trade secret, since the Court, applying the uniform

Exhibit 7 - Page 286

Robert Cornell, Esq., June 6, 1984 - Page Two

act, found that there were no other persons who could obtain economic value from the disclosure of that list.  In my view, this is a bad   result and has the undesirable effect of limiting the application of trade secret law.   This case is a very clear illustration of why we have concern about leaving in the words "other persons who can obtain economic value from its disclosure or use" in the act.

Referring to the letter from Alan Foster, who apparently represents an organization called the American Electronics Association, I have a number of comments.

Firstly, neither myself nor any of my partners, all of whom have been extensively involved in the engineering field, have ever heard of the American Electronics Association.   Consequently, it would be helpful if you could provide us with some background on this organization, its member companies, and whether the views expressed in the letter were the views of Alan Foster or were based upon an evaluation of the proposed legislation and consensus by the members of that organization.

Secondly, Mr. Foster's comment that the proposal to amend the definition of trade secret alters a definition of trade secret which has been applied for years is simply incorrect.   In point of fact, the definition which we propose is virtually identical to the restatement definition.   It is the Uniform Act which changes the trade secret definition from that which has been applied for years.   If, in fact, the definition of trade secret by the Uniform Act was simply the same as that applied by courts over the past numerous years, then we would not oppose the definition.   As such, Mr. Foster is incorrect when he states that the proposed amendment moves away from consistency on major items of trade secret law. Mr. Foster is equally incorrect in his statement that the amended trade secret definition would cause confusion regarding legislative intent and encourage litigation.   In point of fact, this is exactly what would happen if the Uniform Act trade secret definition was adopted, as is clearly demonstrated by the Indiana decision referred to above.

Thirdly, the proposed amendment would indeed give trade secret protection to the company who manufactured, for example, a valve which could be dissambled and analyzed in three minutes. However, under current law, and under the proposed amendment to the trade secret, any trade secret would end as soon as the valve had, in fact, been put on the market and made public.   However,

Exhibit 7 - Page 287

Robert Cornell, Esq., June 6, 1984 - Page Three

under the Uniform Act definition, since the valve could be readily ascertainable by proper means, no trade secret could ever have existed as to the part, even during the development period when the valve had not been disclosed.  Consequently, a company who spent time, money and effort to develop such a valve would have no recourse against a disgruntled employee who left the company during the development period and disclosed the valve to a competitor. I seriously doubt that many companies would accept or support such a result.

Fourthly, with respect to Mr. Foster's comment on Section 7202(a), I see little possibility that a court would adopt an interpretation which would prohibit damages unless an injunction also issued.  On the other hand, leaving the language "or in lieu of" clearly suggests that the court may either award damages or an injunction, but not both.  The possibility that a court would interpret these statutes in this way is, in my view, much greater with much more serious consequences than in the unlikely event that a court would require that an award of damages be contingent upon the issuance of an injunction.

Fifthly, Mr. Foster's comment that simple negligence could be "willful" is simply not possible.  Specifically, the willfulness or maliciousness refers to "misappropriation".  Under the definition of misappropriation in the Act, "knowledge" or the "use of improper means" is required.  Improper means is then defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronics or other means."  Consequently, it is simply not possible for someone to misappropriate "negligently" under the Act. Each instance of misappropriation under the Act will therefore necessarily be intentional.

Sixthly, with respect to Mr. Foster's comment on Section 7206, there has been no analysis whatsoever as to the effect of the enactment of the Uniform Act on other Code provisions which relate to trade secrets.  While Mr. Foster may be correct as to certain statutes, the language originally proposed in the Uniform Act would "throw the baby out with the bathwater".  At the very least, various Code sections relating to trade secrets should be considered, analyzed and repealed only upon a consideration of their specific interaction with the Uniform Act.  This simply has not been done.  Consequently, Section 7206 as amended (AB 501) Section 3426.7(a)) as set forth in the February 7, 1983 version, should remain as is.

Exhibit 7 - Page 288