QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER FROM THE MGA PARTIES' AMENDED NOTICE OF DEPOSITION OF MATTEL, INC. (FIFTH PHASE 2 NOTICE)**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off: October 4, 2010<br>Pre-trial Conference: January 4, 2011<br>Trial Date: January 11, 2011 |

**Preliminary Statement**

MGA makes no attempt to defend the overbreadth of the topics in its Fifth Notice.  In fact, MGA concedes all of these topics seek irrelevant testimony since they are not limited to the relationship between Mattel and MGA.  Among other things, each of the topics sweeps in other competitors, which the Court already has ruled is overbroad and improper.  Further, and as Mattel demonstrated in its Motion, to the extent these topics are not overbroad, they are unduly duplicative of 30(b)(6) testimony Mattel is already providing.  MGA ignores this point, as well as the fact that Mattel has already provided days of 30(b)(6) testimony on this subject matter – including the specific so-called "trade secret" documents at issue in MGA's "Counterclaims-in-Reply."

Instead of addressing the patent overbreadth of the topics, most of MGA's motion is devoted to baseless rhetoric about supposed limitations on Mattel's production of Market Intelligence Group documents.  MGA's sole grounds for such speculation is that Mattel produced an eleven-page Market Intelligence Group "Projects" memorandum on October 1.  But production in this case continues on both sides.  Since October 1 alone, MGA has produced over **125,000** documents, totaling almost **750,000** pages.  Tens of thousands of these documents, many of which Mattel has obviously not yet had the opportunity to review, come from key witnesses such as Isaac Larian, Ron Brawer, Janine Brisbois, Jorge Castilla, Daniel Cooney, Nick Contreras, Susanna Kuemmerle, and Paula Garcia.  And it was only in late August and September that MGA began producing documents showing its own practices of gaining access to Mattel toy fair showrooms – the very conduct MGA purports to decry in its claims against Mattel.[1]  Moreover, it is MGA that has

---

[1] See, e.g., MGA2 3120922-24, produced on September 3, 2010 (email from Angelika Sternberg to Isaac Larian, subject "Nuremberg Toy Fair 2008," stating "Two of our colleagues have been able to enter the booth of our competitor and
    (footnote continued)

admitted it has failed to search its hard drives for the terms "Carter" or "Bryant" – the individual who has been at the center of this litigation for years, not months. In any event, as this Court has told MGA but it continues to ignore, MGA's breathless accusations have no bearing on the subject of this Motion, which is the overbreadth and duplicativeness of MGA's Fifth Notice.

Mattel's motion should be granted in its entirety.

## Argument

### I. MGA CONCEDES THAT THE MAJORITY OF ITS TOPICS ARE IMPERMISSIBLY OVERBROAD AND SIMPLY IGNORES THE SCOPE OF OTHER TOPICS

The Court has ruled that the activities of Mattel's Market Intelligence Group in acquiring competitive information about toy manufacturers other than MGA are outside the scope of discovery. See Dkt. No. 8751 at 2. MGA concedes that Topic Nos. 1-5, 7-11, 20-24, and 26 seek discovery "relate[d] to Mattel's spying activities beyond its efforts directed at MGA." Opp. at 4:1-9 (stating that only Topic Nos. 6, 12-14, 16-18 "would not fall within that category"). There is thus no dispute that Mattel should be granted a protective order as to Topic Nos. 1-15, 7-11, 20-24, and 26.

As for Topic Nos. 6, 12-14, and 16-18, however, MGA is incorrect in its argument that they do not relate to activities beyond those directed at MGA. Topic Nos. 6 and 13-14 relate to the Ninth Floor "library." As Mattel has shown in its

---

wrote the attached report" – the report, entitled "'M' Booth, Nuremburg Toy Fair 2008, 10.2.2008," includes various Barbie, My Scene, Fisher Price, and Hot Wheels products); MGA2 2926096-97, produced on August 31, 2010 (February 2, 2005 email from Ron Brawer to Margot Lopez, subject "how are we doing on room nights for NYTF?" stating, "I'd like to see if we can get shirin [Salemnia] in for a few days to collect catalogues from other showrooms."); see also MGA 0222178, produced September 17, 2010; MGA2 3089028 and 2691546-47, produced September 3, 2010.

Motion (5:8-6:10), the materials in this room are not limited to MGA competitive information. Indeed, the materials in this room are not even limited to the Market Intelligence Group. Topic No. 16, relating to Mattel's knowledge of the Market Intelligence Group's practices, is also overbroad because it seeks testimony regarding toy manufacturers other than MGA. Dkt. No. 8751 at 2. Topic Nos. 12 and 17-18, relating to the annual Toy Fair reports and presentations, are also overbroad in that they are not limited to those involving MGA. For example, Topic No. 18 seeks testimony on:

> The maintenance, storage and preservation of all DOCUMENTS relating or referring to the ANNUAL TOY FAIR REVIEW, including (1) the reports themselves, (2) all pictures, DOCUMENTS or materials used in creating the reports; (3) all videotapes of presentations of reports; (4) all drafts of such reports or presentations of reports; and (5) all DOCUMENTS evidencing distribution of all such reports or presentations.

The Court has previously rejected MGA's request for discovery "regarding any MGA products used, referenced or relied upon in the annual market intelligence group presentation." See Dkt. No. 8880 at 4. MGA simply ignores this prior ruling. Mattel should be granted a Protective Order as to these topics as well.

## II. <u>MGA MAKES NO ARGUMENT THAT THE MARKET INTELLIGENCE GROUP 30(B)(6) TESTIMONY MATTEL IS PROVIDING IS INADEQUATE</u>

Even if the topics were not overbroad, they are unduly duplicative. The Fifth Notice topics substantially overlap with 30(b)(6) testimony Mattel is already providing on Topic No. 8 of MGA's previously served Third Notice. Motion at 1:13-14, 7:24-8:11. Topic No. 8 seeks:

> The receipt by Mattel of any non-public and/or confidential information about competitors' products or pricing, product development, advertising plans, marketing plans or research, actual or estimated product costs or sales, including any practice of anyone at Mattel of visiting the showrooms of competitors during any Hong Kong or New York Toy Fair(s), including but not limited to how Mattel gained admittance to any competitors' showrooms as well as how Mattel controls access to its showrooms.

Consistent with the Court's ruling, Mattel is providing testimony on this Topic. MGA does not deny the duplicativeness of this Topic in its Opposition;[2] nor does it argue that the Court's ruling is erroneous. Further, MGA has already obtained days of testimony on this subject matter, including 30(b)(6) testimony on "the precise circumstances in which Mattel acquired all of the information concerning MGA and/or MGA's products" found in specific documents at issue in MGA's "Counterclaims-in-Reply."[3] MGA should not be permitted to circumvent the Court's rulings by simply propounding a subsequent, duplicative notice. See Dkt. No. 8684 at 2 and 4 (granting MGA a protective order as to a 30(b)(6) topics that are unreasonably duplicative).

### III. TOPIC NOS. 15 AND 19 ARE IMPROPER AND INVASIVE OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT

MGA has already sought, and was denied, discovery into the "facts" conveyed by Mr. Villasenor to Jon Corey. See Dkt. No. 8885 at 1-2 (granting Mattel's motion for a protective order and to quash MGA's subpoena to Jon Corey). MGA's only argument in support of Topic No. 15, which seeks the same information through 30(b)(6) testimony, is its conclusory statement that "facts are neither privileged nor work product." Opp. at 5:10. However, as is black letter law and explained in Mattel's Motion (9:1-10:3), the content of communications from an employee to outside counsel – factual or otherwise – are privileged if they are made in the context of obtaining legal advice for the corporation. See Upjohn Co. v. U.S., 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to

---

[2] MGA's discussion of Topic No. 11 (Opp. at 5:13-17) ignores that the Third Notice's Topic 8 includes "information concerning Mattel's attendance and operation of its own toy fair showrooms" and thus goes to whether "Mattel does not properly secure its showrooms."

[3] See MGA's Third Notice of Deposition of Mattel, Inc. (Phase 2), Topic 11.

1 the lawyer to enable him to give sound and informed advice."); see also July 2, 2008
2 Hearing Tr. at 3903:3-9 (finding that an email between David Rosenbaum and
3 Victoria O'Connor was a privileged communication because although "[i]t did set
4 forth factual statements, the factual statements were in the context of the e-mail, the
5 predicate for the recommendation; so I think the factual statement is inextricably
6 intertwined with the advice."). MGA cites no contrary authority (indeed, it cites no
7 authority at all).

8 Topic No. 19 is also improperly invasive of the work product doctrine. The
9 Court has previously rejected MGA's attempt to take discovery into "the reasons
10 why Mattel and its attorneys failed to earlier produce documents and information
11 about the activities of Mattel's market intelligence group." Dkt. No. 8885 at 2. As
12 the Court explained:

> MGA's position contradicts its earlier opposition to Mattel being able
> to conduct discovery into the circumstances in which an email
> communication between Larian and fellow MGA executive Victoria
> O'Connor was withheld as privileged. The Court restricted such
> discovery even though it was indisputable that the withheld email
> communication — unlike the market intelligence group's conduct —
> was highly relevant and probative to the phase 1 proceedings. The same
> logic applies here: counsel's deliberative process during litigation,
> including discovery, is protected by the work product doctrine and
> should be shielded from discovery absent a compelling need for the
> discovery, which MGA has not shown.

19 Id. MGA has not made this showing here either – nor could it. Indeed, MGA offers
20 no support whatsoever for its bald assertion that the Topic "does not seek privileged
21 information." See Opp. at 5:18-6:6.

22 Most of MGA's argument on Topic No. 19 (and indeed, most of its brief) is
23 devoted to the assertion that "Mattel … has limited its production of documents
24 concerning the efforts of Market Intelligence to solely those documents which
25 mention MGA." Opp. at 3:18-19. MGA's complaints about Mattel's production,
26 however, are both contrary to the Court's rulings and misleading as to the facts.
27 First, as this Court has already held, the activities of Mattel's Market Intelligence
28 Group are pertinent to this case only to the extent that they had an impact on MGA.

1  Dkt. No. 8751 at 2.  Accordingly, MGA is not entitled to documents relating to
2  other competitors.  Second, MGA knows full well that Mattel has not mechanically
3  limited its production of documents to those that contain the words "MGA" or
4  "Bratz."  To the contrary, Mattel has searched for and produced numerous
5  documents relevant to MGA's claims which do not contain any such terms.  These
6  documents include business cards, expense reports, travel itineraries, performance
7  reviews, human resources memoranda, contracts, and resumes.  MGA has also
8  deposed witnesses at length on literally dozens of these documents. <u>See</u>, <u>e.g.</u>,
9  Deposition Exhibits 9266, 9456-9458, 9463, 9477, 9480, 9484-9487, 9490-9497,
10 9506, 9509, 9515-9525, 9577-9579, 9581-9586, 9600-9601, 9609-9610, and 9614.
11 For MGA to suggest that it has only been provided with documents containing the
12 word "MGA" is false, and certainly provides no basis for a deposition on overbroad
13 and duplicative discovery into other competitors – discovery that this Court already
14 ruled was improper.

### **Conclusion**

Mattel respectfully requests that the Court grant its motion.

DATED: October 14, 2010    QUINN EMANUEL URQUHART &
                           SULLIVAN, LLP


                           By  /s/ Michael T. Zeller
                               Michael T. Zeller
                               Attorneys for Mattel, Inc. and
                               Mattel de Mexico, S.A. de C.V.