ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-09049 DOC (RNBx)<br>Consolidated with:<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>**Hon. David O. Carter**<br><br>**MGA'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL FURTHER DEPOSITION OF MGA 30(B)(6) RE: REMAINING COUNTERCLAIMS-IN-REPLY**<br><br>Date:    TBD<br>Time:    TBD<br>Dept:    Courtroom 9D<br><br>**Discovery Cut-off:       October 4, 2010**<br>**Pre-trial Conference:  January 4, 2011**<br>**Trial Date:                    January 11, 2010** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1
BACKGROUND ........................................................................................................ 2
ARGUMENT .............................................................................................................. 4

I. MATTEL WAS PROVIDED AMPLE TIME TO DEPOSE MR. LARIAN ON MGA'S COUNTERCLAIMS-IN-REPLY BUT WASTED THAT TIME SEEKING TO EMBARRASS MR. LARIAN AND FISH FOR NEW CLAIMS AGAINST MGA ..................................... 4

II. MR. LARIAN WAS PREPARED ON ALL TOPICS ................................. 6

III. MATTEL'S COMPARISON TO DISCOVERY TAKEN ON ITS TRADE SECRET CLAIM IS MISLEADING AND INACCURATE ......... 10

IV. MATTEL IS NOT ENTITLED TO ANY FURTHER TIME ON TOPICS 5, 10, 15 AND 26 FROM ITS PRIOR NOTICE .......................... 11

V. MATTEL SHOULD NOT BE PERMITTED TO RE-OPEN MR. LARIAN'S DEPOSITION IN HIS INDIVIDUAL CAPACITY ......... 12

# TABLE OF AUTHORITIES

**Page(s)**

Federal Rule of Civil Procedure
   30(B)(6) ................................................................................................................ 2

## INTRODUCTION

Isaac Larian has now been deposed for 12 days for a total of nearly 80 hours, including four days and nearly 30 hours as a 30b6 witness in Phase 2. Mattel has also been given permission to depose him again with specific questions on certain previously withheld documents. Dkt. #8890 (10/5/10 Order Regarding Deposition of Isaac Larian) at 1. The Court's October 5, 2010 Order provides that "[a]ny further examination of Mr. Larian, in his individual capacity or in his capacity as MGA's 30(b)(6) designee, shall be limited to questions approved by the Court." *Id*. Mattel's request for more time with Mr. Larian should be denied.

That Mattel does not need any additional time with Mr. Larian on MGA's Counterclaims–in–Reply is evidenced no more clearly than how Mattel used the time it was given by this Court on September 17. Dkt. #8757 (9/17/10 Order Overruling MGA's Objections to Sept. 1, 2010 Order of Discover Master Hanson). Mattel knew that it had a day to complete questioning of Mr. Larian on *MGA's* claims against Mattel. Larian 30b6 Depo. at 6165:10-6166:2. Yet Mattel instead spent the bulk of the deposition asking Mr. Larian about *Mattel's* claims against MGA. Further, much of that time was spent not on current Mattel claims, but on Mattel exploring potential new claims against MGA, such as whether Mr. Larian has threatened witnesses, short sold Mattel stock, misreported tax information or suppressed documents. *See, e.g.*, Larian 30b6 Depo. at 6320-6324 (asking about threats), 6438-6445 (asking about short sale of stock), 6211-6217 (asking questions relating to the Marlows), 6220-6222 (asking questions relating to MGA's alleged suppression of a document).

That the real purpose of Mattel wanting Mr. Larian back for deposition is evidenced no more clearly than in Mattel's request to examine Mr. Larian on his short-selling of Mattel stock. After countless days of depositions of Mr. Larian in his personal capacity and an order by this Court that Mattel is not entitled to further examination of Mr. Larian in his individual capacity, Dkt. #7758 (4/22/10 Order

1  Denying Without Prejudice Mattel's Motion to Compel Further Deposition of Isaac
2  Larian), Mattel now wants to ask about Mr. Larian's stock purchases in a 30(b)(6)
3  deposition on topics related to MGA's claim that Mattel misappropriated trade
4  secrets?  This is harassment pure and simple.  Mattel tries to link this accusation to
5  MGA's counterclaims by arguing that Mattel has now (after the October 5
6  deposition) pled Mr. Larian's short selling as part of an unclean hands defense.
7  That Mattel included such an irrelevant and inflammatory allegation in it's recent
8  pleading does not make it legally relevant or properly within the scope of a
9  previously served deposition notice.  In fact, there is no topic directed to Mattel's
10 not-yet alleged defenses to the MGA claims.  Mattel's Third Phase 2 Notice of
11 Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil
12 Procedure 30(B)(6) (sic), dated August 25, 2010.
13     At bottom, that Mattel chose to use the limited time it was allotted on MGA's
14 counterclaims for pursuing discovery into Mr. Larian's stock transactions just
15 demonstrates that Mattel does not need more time on MGA's claims.

### BACKGROUND

17     Mattel's most recent refusal to examine Mr. Larian on the 30b6 topics on
18 which MGA had designated him was merely a continuation of its previous 30b6
19 examinations.  Originally, Mr. Larian was designated on four topics from Mattel's
20 3/2 letter re MGA's 30b6 deposition topics – Topics 5 (MGA's knowledge of and
21 communications relating to the obligations of Mattel employees to Mattel); 10 (the
22 search and seizure of documents by Mexican authorities from MGA's Mexico City
23 offices); 15 (MGA's copying or use of Mattel products, packaging or designs, and
24 MGA's knowledge of any Mattel product prior to its disclosure to the public or
25 retailers); 26 (the factual bases supporting or contradicting MGA's claims and
26 allegations).
27     On Mr. Larian's first day of testimony on these topics, the bulk of the day
28 was spend on Topic 5 and Topic 15 was never even broached.  Moreover,

1  Mr. Larian was asked purely legal questions, including what MGA understood
2  Mattel's contracts to mean. *See, e.g.,* Larian 30b6 Depo. at 2613:7-2616:18,
3  2651:21-2652:6, 2739:17-2740:6. In relation to Topic 5, Mr. Larian testified – as
4  he had testified at trial – that MGA did not see Carter Bryant's employment
5  agreement until Mattel filed its complaint in this action. Larian 30b6 Depo. at
6  2593:24-2594:3. Despite Mattel's obvious lack of productivity during Mr. Larian's
7  first 30(b)(6) deposition, MGA voluntarily agreed to bring Mr. Larian back for a
8  second day. At that second day of deposition, after spending less than an hour on
9  Mattel's possession of MGA confidential information (Topic 26), the questioning
10 turned to issues relating to *MGA's possession* of Mattel information. The
11 deposition continued to devolve as Mr. Larian was asked about whether various
12 Mattel employees – Cabrera, Morales and Salazar – had worked for MGA while
13 employed by Mattel. Larian 30b6 Depo. at 3900-3911. Not only did this
14 questioning go well beyond the topics on which Mr. Larian was noticed, MGA had
15 designated at least two other witnesses to testify regarding Mattel's propounded
16 topics relating to the seamstresses. *See* Schultz 30b6 Depo.; Jolicoeur 30b6 Depo.
17 All total, in his second day of 30b6 testimony, Mattel spent less than two hours on
18 topics on which Mr. Larian had been designated.

19       Pursuant to an Order by the Discovery Master, Mr. Larian was made
20 available for a final day of 30(b)(6) deposition on September 1, 2010. Mattel
21 claimed it wanted Mr. Larian back to complete Topic 26 – MGA's claims against
22 Mattel. Again, however, Mattel spent little if any time on Topic 26. Over
23 objections of being outside the scope, the first part of the deposition focused on two
24 outdated Mattel documents that had been produced by MGA. Not surprisingly,
25 Mr. Larian had not seen the documents or reviewed them for his preparation on
26 Topic 26, since the documents had noting to do with that topic. The questions then
27 turned to the topic of whether Mr. Larian if he had leaked news of MGA's new
28

claims-in-reply to the media. In total, the only time spent on Topic 26 – the reason he was asked back – was the last 20 minutes of the deposition.

Mr. Larian's most recent 30b6 deposition was a result of Mattel's Third Phase 2 Notice and the Court's 9/17 Order. Counsel for MGA confirmed at the outset that this was the understanding of the parties. Larian 30b6 Depo. at 6165:10-6166:2. Even though Mattel had the task of wrapping up its previous deposition and asking about the more than twenty overbroad topics in its newest notice, Mattel chose to waste its own time in the deposition. Mattel again spent the bulk of the deposition asking Mr. Larian about Mattel's claims against MGA. Much of that time was spent on Mattel exploring potential new claims against MGA, such as whether Mr. Larian has threatened witnesses, short sold Mattel stock or suppressed documents. *See, e.g.*, *id.* at 6320-6324 (asking about threats), 6438-6445 (asking about short sale of stock), 6220-6222 (asking questions relating to MGA's alleged suppression of a single document). Mattel even went back and revisited the issue of the Marlows. *Id.* at 6211-6217 (asking questions relating to the Marlows). None of this information was encompassed by the topics on which Mr. Larian had been designated. Instead of focusing on the topics at hand, Mattel chose to try to explore other areas and now comes before the Court complaining about its lack of opportunity to take discovery. Mattel's complaints should fall on deaf ears.

## ARGUMENT

### I. MATTEL WAS PROVIDED AMPLE TIME TO DEPOSE MR. LARIAN ON MGA'S COUNTERCLAIMS-IN-REPLY BUT WASTED THAT TIME SEEKING TO EMBARRASS MR. LARIAN AND FISH FOR NEW CLAIMS AGAINST MGA

Had Mattel attempted to discover information relevant to MGA's counterclaims and been unable to do so, Mattel might have had an argument for more time with Mr. Larian. But as Mattel has done with the last few days of Larian depositions, Mattel spent the overwhelming bulk of its time, not on MGA's claims against Mattel, but potential new claims against MGA.

While the topics address MGA's claims against Mattel, Mattel attorney Michael Zeller spent most of the time asking Mr. Larian about the following topics:

- Whether MGA individuals had ever obtained access to Mattel showrooms, (Larian 30b6 Depo. at 6207:9-6210:25; 6217:7-6258:5; 6272:15-6315:12);
- Whether the Marlow's had used false tax IDs, (*id.* at 6211:3-15; 6214:10-6217:4 ("Well when you found out that the Marlows used false tax IDs to cover up the fact that the sample makers were secretly working for MGA on Bratz, were you concerned about that?")); and
- Whether Mr. Larian ever threatened anyone in the case (*id*. at 6320:14-6324:24) ("You have threatened to kick other people's ass [sic] in the case, have you not?")).

Even the Discovery Master had enough when Mattel began questioning Mr. Larian about whether he has ever short-sold Mattel stock, finding that the questions were outside the scope of the topics on which he was there to testify. *Id.* at 6438:23-6445:2. The Discovery Master understandably asked Mattel's counsel if he was finished with the 30(b)(6) topics since he was now moving the issues clearly outside the topic. *Id.* at 6441:9-6442:8.

Mattel has chosen a deliberate strategy with Mr. Larian of asking him scarce little about MGA's claims against Mattel – topics Mr. Larian prepared for in detail and was all too happy to discuss – and instead to try to make Mr. Larian feel uncomfortable about the possibility of new Mattel claims. Mattel spent very little time asking about any of the trade secrets misappropriated by Mattel or about the detailed facts set forth in MGA's interrogatories on these claims. Having chosen this strategy, Mattel should not be rewarded by being able to bring Mr. Larian back to answer questions on MGA's counterclaims that Mattel should have asked in the previous deposition.

## II. MR. LARIAN WAS PREPARED ON ALL TOPICS

Mr. Larian came prepared to the deposition with boxes of documents containing information relevant to MGA counterclaims and to the topics in the Notice.

- On Topic 6 (MGA's disclosure of its trade secrets to persons outside MGA), Mr. Larian had a stack of every press release issued by MGA from 1998 to the present and an assortment of articles MGA could locate; Mr. Larian also had every sign-in sheet the company could locate for toy fairs in New York, Hong Kong and Nuremberg (*Id*. 6192:8-15); Molinski Dec. ¶ 2);

- On Topics 8 and 10 (MGA's policies and practices for limiting access to its showrooms), Mr. Larian had notebooks full of confidentiality agreements and non-disclosure agreements attendees had to sign before being permitted access to showrooms (*Id*.);

- On Topics 1 and 2 (the identification of trade secrets and all facts supporting MGA's claim of misappropriation), Mr. Larian brought interrogatory responses served on Mattel in which MGA provided detailed answers to these questions.

Indeed, much of the information that Mattel claims it was unable to obtain testimony on from Mr. Larian had been provided in writing by MGA in response to Mattel's interrogatories requesting the same information merely a week prior to Mr. Larian's deposition. Ex. 9862 (MGA Entertainment's Corrected Responses to Mattel Inc.'s First Set of Interrogatories, served on 9/24/10). For example, MGA provided in writing the specific identification of the trade secrets involving the 114 products that are identified in Mattel's stolen competitive information reports and all facts known to MGA supporting its misappropriation claim. *Id.*

Mattel claims that Mr. Larian was not prepared because he could not recite *from memory* (1) every person who attended every MGA toy fair showroom since

1  1998 – including every retailer, every distributor and every license; (2) every
2  person who received a catalog at MGA's toy fair – showroom over a ten-year
3  period; (3) every time an MGA produce had been shown to the press and (4) every
4  person who signed an NDA with MGA at any time.  Mattel Motion 5:16-6:22.

5       These questions were asked for the purpose of trying to create a record of
6  Mr. Larian being unprepared.  Mr. Zeller repeatedly told Mr. Larian that he did not
7  want him to look at the documents he had brought that would answer these
8  questions.  Larian 30b6 Depo. at 6452-6458; 6168:6-9; 6183:5-15.  Indeed,
9  although the documents were brought to the deposition and Mattel was offered the
10 opportunity to review and copy the materials, not once did Mattel ask to see what
11 was in the notebooks that Mr. Larian had brought.  Molinski Dec., ¶ 2.

12      The truth is that no witness could commit to memory the information being
13 asked.  Mr. Larian came to this deposition as well prepared as any witness could be
14 and armed with documents that would have answered Mattel's questions.  Mattel
15 did not want information; it wanted to create a record to be able to argue for more
16 time with Mr. Larian in its efforts to distract him from running MGA.

17      It is also not true that Mr. Larian failed to conduct a reasonable inquiry into
18 the topics.  Mr. Larian, as the owner and founder of MGA, is the person most
19 knowledgeable about these topics.  Mr. Larian testified that he personally attended
20 every toy fair and that he personally regulated who had access.  If access was given
21 to the press, he would have been consulted.  Larian 30b6 Depo. at 4391:22-4394:2.
22 As further testified that there is no one left at MGA who would have attended all of
23 the toy fairs as he did.  If Mr. Larian does not recall what retailers were given
24 catalogs at the 2000 New York Toy Fair, its unlikely that anyone else would.

25      Mr. Larian also sought to supplement his knowledge of who attended toy
26 fairs by speaking to various individuals about their recollections of these toy fairs.
27 Larian 30b6 Depo. at 6169:10-21.  And, again, he reviewed boxes of relevant
28

documents and made notations on those documents to assist him in locating relevant information. *Id.* At 6200:16-6201:1.

Finally, while Mr. Larian could not name every person who attended every toy fair or every press interview he or others may have given, he did testify to the policies and practices at MGA with respect to the toy fairs. Specially he testified:

- [O]ur New York showroom had two floors, and there was stairs that . . . went downstairs where our meeting room and officers were. . . . we had our interview and meetings with these people not in the actual showroom where you would show the product, but in the private offices within the showroom. *Id.* at 4389:7-14;
- "I know that we have a general practice that everybody has to sign an NDA to come to our showroom . . ." *Id.* At 6181:2-4;
- "Again, same thing. I just don't have an exact recollection of the year. Its [signing an NDA] been the general practice. And I know for sure that we wanted to have Bratz under wrap as far as the competitors, other people seeing, because of the concern for being knocked off." *Id.* at 6182:5-10.
- "I personally, as CEO of the company have put in place that absolutely there cannot be pictures or videos by anyone at our showrooms."

Mattel highlights questioning about an April 8, 2005 email from Sal Villasenor as an example of Mr. Larian's lack of preparation. The questioning proves no such thing. In that email, Villasenor reveals detailed information about MGA's unreleased products. Mr. Larian spent five minutes carefully going through that email and explaining what information would be confidential at the time of the New York Toy Fair. *Id.* at 6362:7-6364:25 (". . . Bratz Wave 2, Fall 2005, in April for sure we will not have Bratz fall product out in the market. Bratz Rock Angel is another that comes to mind . . . . The name of the dolls . . . . the colors . . . . The Bratz Jet is another one. The holiday 2005 collectible doll. Oooh La La line that

was supposed to come out in . . . fall/winter 2005. The makeup item that can be sored in separately sold makeup kit. . . . Phone, digital cameras, miniature radios . . . MP3 player in the shape of lipstick. . . . . Baby Boyz Cameron. Babyz Meygan. . . . Babyz are spinning off to a larger 12- to 14- inch Babyz, jumbo-size Babyz. Sasha dressed in a possible minature version of her Winter Wonderland polar bear outfit. The Ponyz. Traveling Lil' Bratz playset. The fact that a European line of bath and beauty products are being imported into USA. . . . Various board games we were doing.").

Mattel asserts that his testimony is wrong because much of that same information was in a news story in a magazine called ASM. That Mattel contends Mr. Larian was wrong does not mean that he was not prepared. Mattel is free to argue that some information taken by Villasenor using a fake business card was not confidential because it can be found in this article. Neither was it incumbent on Mr. Larian to research publicly – available articles for his deposition. This article was, according to Mattel, a public document found on the internet, so Mattel had as much access to this article as MGA. Further, contrary to Mattel's claim that "at no point did MGA produce this new article," MGA had in fact, produced the article in 2007. Molinski Dec., ¶ 3. Also, while Mr. Larian was not obligated to research every news article, Mr. Larian had, in fact, reviewed this article in preparation for his deposition. *Id*. at 6389:17-18 ("I have seen [Exhibit 9859] in different format in my prep.")

Moreover, Mr. Larian testified at length to MGA's policy concerning the dissemination of information to the press and how this reporter having this information appeared inconsistent with that policy. But what Mattel appears to expect is that MGA research every news article that mentions MGA products and investigate how that publication got its information. This goes well beyond the obligations of a 30(b)(6) witness.

### III. MATTEL'S COMPARISON TO DISCOVERY TAKEN ON ITS TRADE SECRET CLAIM IS MISLEADING AND INACCURATE

Mattel wants to compare the time spent on 30(b)(6) depositions on its trade secrets claim with the deposition time on MGA's trade secret claim. Alright, let's compare those.

Mattel's trade secret claim, as the Court has pointed out, claims almost everything under the sun as its stolen trade secret. If one of its former employees looked at, accessed or worked on a document before leaving Mattel, Mattel has alleged that the employee stole that document. Even where it is undisputed that an employee, such as Jorge Castilla, did not bring a single Mattel document to MGA, Mattel has alleged the theft of volumes of alleged trade secrets that Mattel claims were in Castilla's head. Where another employee, Nick Contreras, is alleged to have asked a Mattel employee to give him a Mattel document, Mattel claims this is enough to show that Contreras must have taken the thousands of pages of documents he had accessed in the weeks or months before leaving even where no evidence suggests he removed anything!

Mattel identified thousands upon thousands of pages of allegedly stolen trade secrets and countless other documents that informed what was in these employees' heads. Mattel's own counterclaim asserts that MGA stole information about every aspect of Mattel's business. FAAC ¶ 3. Mattel's responses to interrogatories simply asking for identification of the allegedly stolen secret is almost 247 pages in length. Mattel's Third Supplemental Response to MGA's Interrogatory No. 20.

Now lets compare this to MGA's trade secret claim. MGA claims the theft of a single, discreet type of information: the appearance, operation, play pattern and advertising plans for 114 unreleased products. It is a straight forward claim that is easy to understand: Mattel stole pictures of MGA's products before those products were on the market. The trade secrets are found in less than a dozen toy fair reports by Mattel that contain color images and descriptions of these products

1  that Mattel stole information about before the release of these products.  The total

2  pages in which these trade secrets are found number under 100 pages.  MGA's

3  response to an interrogatory asking for identification of the trade secrets is 2 pages

4  long.

5  MGA has narrowly and clearly identified the trade secrets stolen by Mattel.

6  Mattel, instead, chose to run MGA around on claims involving an almost limitless

7  number of claimed trade secrets with little or no clear definition of what Mattel

8  claimed to be the secrets.  Mattel has broadly claimed that every aspect of its

9  forecasting and inventory systems were stolen, rejected ideas for its systems and

10 products, its complete marketing and advertising plan, its history of retail sales, its

11 forms and templates for doing business and even its organization structure.  The

12 discovery MGA required into Mattel's blunderless trade secret claims cannot be

13 compared to the discovery Mattel should be permitted on MGA's claim.

14 **IV.  MATTEL IS NOT ENTITLED TO ANY FURTHER TIME ON TOPICS 5, 10, 15 AND 26 FROM ITS PRIOR NOTICE**

15

16 Mattel's claim that it was not permitted to depose Mr. Larian on topics 5, 10,

17 15 and 26 from Mattel's prior notice is simply not true.  AT the outset of

18 Mr. Larian's October 5 deposition, Mattel's counsel agreed that Mr. Larian was

19 there that day both on the Reply topics and topics 5, 10, 15 and 26:

20 > MR. MOLINSKI:  And Mike, before we get into some questions, because I know he's here on two different areas.  He was here for a few more hours on Topic 26, and he's also here on the new notice.  Is that your understanding, the notice on the replies?

21

22

23 > MR. ZELLER:  Yeah, that's my understanding.

24 > MR. MOLINSKI:  Okay.

25 > MR. ZELLER:  But of course, you are the ones who get to designate him, so…it's my understanding that that's how you've designated him..

26

27 > MR. MOLINSKI:  Yeah.  I just want, you know, so – – we're on the same page, that he's here today on both that continued – –

28 > MR. ZELLER:  Right.

MR. MOLINSKI: – – four hours, as well as the new notice.

MR. ZELLER: Right.

Larian 30b6 Depo. at 6162:10-6166:2.

That Mattel chose instead to spend the day seeking to embarrass Mr. Larian on topics outside the scope of the deposition was Mattel's decision. Mr. Larian came to the October 5 deposition having spent countless hours preparing on these topics and bringing with him several notebooks that were carefully annotated and tabbed by Mr. Larian to allow him to answer questions on these topics. Those notebooks remained unopened during the deposition and Mr. Larian's preparation wasted as Mattel engaged in its frolics and detours.

## V. MATTEL SHOULD NOT BE PERMITTED TO RE-OPEN MR. LARIAN'S DEPOSITION IN HIS INDIVIDUAL CAPACITY

Mattel seeks to depose Mr. Larian on his stock purchases – – an issue that is outside any of the pending topics. The Court's April 22 Order denied Mattel's request for any more time with Mr. Larian in his personal capacity. Dkt. #7758. Mattel has not appealed that Order or sought relief from it. Neither did Mattel timely appeal the Discovery Master's rejection of Mattel's request at the October 5 deposition to ask such questions. Mattel offers no explanation for why it could not have asked Mr. Larian these questions earlier. Mattel's request to re-open Mr. Larian's deposition for this line of questioning should be denied.

Dated:   October 14, 2010            ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   */s/ William A. Molinski*
      William A. Molinski
      Attorneys for MGA Parties