1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6  Attorneys for Mattel, Inc. and Mattel de
   Mexico, S.A. de C.V.

7
                    UNITED STATES DISTRICT COURT
8
                   CENTRAL DISTRICT OF CALIFORNIA
9
                         SOUTHERN DIVISION
10

| | |
|---|---|
| 11  MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-02727 |
| 12 | |
| 13               Plaintiff, | Hon. David O. Carter |
| 14  vs. | MATTEL, INC.'S OPPOSITION TO MGA PARTIES' *EX PARTE* APPLICATION TO MODIFY STIPULATED PROTECTIVE ORDER TO PERMIT ACCESS TO AEO MATERIALS IN SUMMARY JUDGMENT FILINGS |
| 15  MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| 16 | |
| 17               Defendant. | Hearing Date:    TBD Time:            TBD Place:           TBD |
| 18 | |
| 19  AND CONSOLIDATED ACTIONS | **Phase 2** |
| 20 | |
| 21  **PUBLIC REDACTED VERSION** | Discovery Cutoff:   October 4, 2010 Pre-trial Conf:     January 4, 2011 Trial:             January 11, 2011 |
| 22 | |

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

ARGUMENT ................................................................................. 4

I.    THERE IS NOTHING IN JUDGE LARSON'S PRIOR RULING, OR IN CASE LAW, THAT ENTITLES LARIAN OR MGA TO ACCESS TO AEO MATERIAL ................................................................................. 4

II.   MGA FAILS TO ADEQUATELY EXPLAIN THE NEED FOR MGA'S OR LARIAN'S REVIEW OF AEO DOCUMENTS ................................................................................. 6

III.  LARIAN, WHO HAS ABUSED REPEATEDLY ACCESS TO CONFIDENTIAL MATTEL INFORMATION, SHOULD NOT BE ALLOWED ANOTHER OPPORTUNITY TO DO SO ................................................................................. 9

CONCLUSION ................................................................................. 11

1

**Preliminary Statement**

2    This *ex parte* application is a third attempt by MGA and Larian to obtain access
3 to Mattel's trade secret information produced in this case in reliance on the AEO
4 designation.  MGA and Larian negotiated the terms of and agreed to the Protective
5 Order, and it was then entered as a Court Order with further modifications made by the
6 Court.  There is nothing unfair about requiring MGA and Larian to abide by it,
7 particularly given that Mattel relied on the Protective Order in producing sensitive
8 documents to its competitor. Indeed, in several discovery Orders in this case, both the
9 Court and the Discovery Masters explicitly relied on the existence of the Protective
10 Order's terms limiting the dissemination and use of protected information as a basis for
11 compelling discovery.  Nothing MGA presents here justifies rehashing the original
12 Protective Order, the Court's April 20, 2010 Order maintaining the Protective Order
13 until trial or its reaffirmation on June 17, 2010.

14    Moreover, MGA's showing of cause, which is based on misleading and
15 incomplete facts and inapposite law, does not even begin to establish that Larian and
16 MGA need access to Mattel's highly confidential documents designated AEO to defend
17 at the summary judgment stage.  Not only is that need unproven, but Larian himself
18 repeatedly disavowed at deposition any knowledge of what a trade secret even is.
19 Moreover, the Court previously recognized that Larian indisputably is heavily involved
20 in every aspect of MGA's business – and MGA has admitted so. Mattel will be harmed
21 if Larian were given Mattel's confidential information.

22    Larian has demonstrated repeatedly that he has no respect for either the
23 Protective Order or for his obligations to maintain the confidentiality of information
24 related to this case.  Larian has described in the press the purported contents of
25 confidential settlement negotiations.  Larian and MGA have deliberately interjected
26 AEO material into the public record for press consumption. And Larian has used non-
27 public information from this case to trade in Mattel securities; as recently as last week,
28 he was trying to manipulate Mattel's stock prices by disseminating non-public

1 | information to stock analysts right before and after Mattel's Third Quarter earnings call.
2 | Larian should not be granted access to Mattel's AEO information.

3 | Finally, contrary to MGA's argument, Judge Larson did not "abolish" the
4 | protective order for the summary judgment filings – and certainly not *prior* to the filing
5 | of the summary judgment papers to allow Larian access. There is no reason for the
6 | Court to do so now. When asserted trade secrets are involved, established law allows
7 | for summary judgment filings to be sealed, and even civil trial proceedings to be
8 | closed, without violating the First Amendment.

9 | ### Factual Background

10 | The Protective Order Provides For Access by Others to Aid Outside Counsel.
11 | The Protective Order was entered on January 4, 2005 by stipulation between Mattel,
12 | MGA and Carter Bryant.[1] It contains provisions for designating information Attorneys'
13 | Eyes Only ("AEO"),[2] which Mattel has relied on when producing its trade secrets and
14 | attaching them to the Summary Judgment briefing. The protective order permits the
15 | disclosure of AEO information to others who can aid MGA's outside counsel, including
16 | independent outside consultants or experts.[3]

17 | Summary Judgment Briefing in 2008. Contrary to MGA's claim, Judge Larson
18 | never "abolished" the AEO designation for purposes of the parties' summary judgment
19 | briefing in 2008. App. at 1:20-24. Rather, on March 11, 2008, the Court ordered that
20 | "[t]he parties shall submit, and the Clerk of the Court shall accept for filing, motions for
21 | summary judgment, oppositions, replies, related papers, and all supporting evidence
22 | that constitutes, references or contains Confidential Information *under seal*."[4]  The
23 | Court ordered the parties to submit a joint report on April 18, 2008—eighteen days
24 | *after* the reply briefs were filed—regarding whether certain sealed documents

25 |

26 | [1] Dkt. 54, Stipulated Protective order dated January 4, 2005.
27 | [2] Id. at 4, ¶ 2.
   | [3] Stipulated Protective order at 10, ¶ 6.
28 | [4] Dkt. No. 2615 at ¶ 1 (emphasis added).

1   submitted in connection with the summary judgment briefing should be re-designated
2   and unsealed.[5]  Pursuant to the March 11, 2008 Order, the parties submitted a joint
3   report identifying various summary judgment exhibits that should remain under seal.[6]
4   Mattel did not agree to unseal its trade secrets in the April 18, 2008 Joint Report.  The
5   parties also submitted joint reports for other categories of documents, including
6   "discovery and pretrial motions"[7] and "non-dispositive briefs, declarations, and
7   discovery materials."[8]  In connection with these submissions, MGA agreed that Mattel's
8   trade secrets should *not* be re-designated and should remain sealed.[9]

9       On April 29, 2010, the Court Rejected MGA's Request to Allow Larian and
10  MGA's Access to Materials Designated AEO by Mattel. On March 31, 2010, the Court
11  issued an Order to Show Cause why the protective order should not be lifted in its
12  entirety.  In response, the MGA Parties sought elimination of the AEO provisions.[10]
13  MGA argued, in particular, that "neither Mr. Larian nor MGA have access to materials
14  necessary to their participation in the formulation of their defense to this case."[11]
15  Mattel expressed its concern about keeping sensitive AEO business information,

16
17
18
19
20
        [5]  Id. at ¶ 4.
21      [6]  Dkt. No. 5089, April 18, 2008 Joint Report.
22      [7]  May 19, 2008 Joint Report.
        [8]  May 27, 2008 Joint Report.
23      [9]  See, e.g., May 27, 2008 Joint Report at 1 (███████████████
24      ████████████████████████████████████████████████████████
25      ████████████████████████████████████████████████████████
26      ████████████████████████████████████).
        [10]  Dkt. 7687, MGA Parties' Response to Order to Show Cause Regarding the
27  Protective order, dated Apr. 5, 2010, at 1.
28      [11]  Id.

1 | particularly its trade secrets, out of improper hands.  The Court rejected MGA's
2 | arguments and maintained the protective order.[12]

3 | On June 17, 2010, the Court Again Rejected MGA's Request for a Modification
4 | of the Protective Order.  A month later, on May 25, 2010, MGA moved to modify the
5 | Stipulated Protective Order to allow for MGA's in-house counsel and Larian to review
6 | documents designated AEO by Mattel.  In rejecting MGA's request, the Court found
7 | that "Mattel and MGA are direct competitors and Larian's review of Mattel's trade
8 | secret documents poses potential harm *even if* Larian abides by the terms of the
9 | Protective Order."[13]  The Court held that in any future motion, MGA must "identify
10 | those documents, explain the need for in-house counsel's and/or Larian's review of the
11 | documents, explain the conditions in which in-house counsel and/or Larian will review
12 | the documents, and if feasible attach a copy of the document for the Court's review and
13 | consideration."[14]

14 | **Argument**

15 | **I.  THERE IS NOTHING IN JUDGE LARSON'S PRIOR RULING, OR IN**
16 | **CASE LAW, THAT ENTITLES LARIAN OR MGA TO ACCESS TO AEO**
17 | **MATERIAL**

18 | Contrary to MGA's argument, the Court never ordered any AEO documents to be
19 | unsealed before the prior summary judgment briefing was completed.  Judge Larson's
20 | March 11, 2008 Order does not provide any precedent for ordering the disclosure of
21 | AEO documents before briefing is complete, even on the purported bases of allowing
22 | Larian to assist in preparing MGA's opposition.  Furthermore, even after summary

---

[12] Dkt No. 7756, April 20, 2010 Order ("The Court can continue to consider challenges to Protective order designations on an ad hoc basis and the Protective order can be lifted as to *certain admissible evidence* at the time of trial.") (emphasis added).
[13] Dkt. 254, Order Granting In Part And Denying In Part Motion To Modify Stipulated Protective order, dated June 17, 2010, at 2 (emphasis in original).
[14] Id. at 4.

1    judgment briefing was completed in 2008, the parties only agreed to re-designation of

2    certain documents, which *did not include Mattel's trade secrets*. Even after Judge

3    Larson expressed concern that some borderline documents should be re-designated,

4    MGA specifically agreed that this type of highly confidential information should retain

5    its AEO designation and should remain under seal.[15] Judge Larson most certainly did

6    not abolish the AEO category, nor did he order the wholesale disclosure of Mattel's

7    trade secrets.

8         MGA argues that since the summary judgment papers are part of the Court's

9    record, all underlying papers must be public (App. at 9), and the summary judgment

10   filings must be unsealed, App. at 5. Tellingly, MGA cites no binding law for that

11   proposition, and it is incorrect. The presence of trade secrets is a "compelling reason[]"

12   that justifies sealing evidence submitted in support of summary judgment motions, and

13   justifies a court's refusal to modify a protective order applied to such evidence. See

14   Biovail Laboratories, Inc., v. Anchen Pharmaceuticals, Inc., 463 F. Supp. 2d 1073,

15   1082-84 (C.D. Cal. 2006) (citation omitted). When trade secrets are involved, even

16   trial proceedings may be closed without violating the First Amendment. See In re Iowa

17   Freedom of Information Council, 724 F.2d 658, 663-64 (8th Cir. 1984) (discussion of

18   trade secrets justified closing contempt hearing and sealing transcripts).

19        In arguing for a contrary conclusion, MGA misplaces reliance on NBC

20   Subsidiary, Inc. v. The Superior Court of Los Angeles County, 20 Cal. 4th 1178 (1999).

21   That state court case interpreted California Code of Civil Procedure Section 124

22   broadly to hold that "courtroom proceedings" in California's courts should

23   presumptively be public in "ordinary civil cases." Id. at 1217; see Cal. Civ. Proc. Code

24   sec. 124 ("sittings" of California's courts should be public unless the Family Code or

25   "any other provision of law" provides otherwise). Of course, the present action is in

26

27   _____

28   [15]   May 27, 2008 Joint Report.

1 | federal court and not subject to section 124, and, moreover, there is nothing in <u>NBC</u>
2 | <u>Subsidiary</u> that pertains to summary judgment filings in the first place.

3 | **II.    MGA FAILS TO ADEQUATELY EXPLAIN THE NEED FOR MGA'S OR**
4 | **LARIAN'S REVIEW OF AEO DOCUMENTS**

5 | The Court has already twice considered the "potential prejudice" to MGA due to
6 | Larian's and MGA's lack of access to documents designated AEO by Mattel.  Both
7 | times the Court rejected a modification of the protective order.[16] The Court held that to
8 | obtain an *ad hoc* lifting of the protective order for specific documents MGA must
9 | "explain the need for in-house counsel's and/or Larian's review of the documents."[17]
10 | On its third try, MGA's again fails to demonstrate any purported need.

11 | MGA argues that it needs "specific input" by Larian and MGA into the
12 | independent economic value of Mattel's trade secrets identified in paragraphs 11-14 in
13 | Mattel's Notice of Motion for Summary Judgment.  App. at 5.  Yet, at his deposition
14 | Larian testified he does not even understand what a "trade secret" is.[18] At any rate,

---

[16]   <u>See</u> Dkt. 254, June 17, 2010 Order, at 3-4; <u>see also</u> Dkt 7756, April 20, 2010 Order.

[17]   Dkt. 254, Order Granting In Part And Denying In Part Motion To Modify Stipulated Protective order, dated June 17, 2010, at 4.

[18]   <u>See, e.g.</u>, Deposition Transcript of MGA 30(b)(6), dated September 1, 2010 ("9/1/10 Larian Tr."), at 4182:21-4188:16

(footnote continued)

1   MGA does not establish why MGA's or Larian's "input" is indispensible and its lack
2   prejudicial. Such "input" can even more effectively be obtained from experts or outside
3   consultants, who, under the Protective Order, are allowed access to Mattel's AEO
4   information.[19]

5     MGA also claims that specific input is needed for the following claims:
6   "Allegations concerning MGA's purported theft of trade secrets;" "Allegations
7   concerning MGA's acquisition of Bratz;" "Allegations concerning the movement of
8   employees between Mattel and MGA;" and "Allegations concerning how Mattel was
9   harmed by the entry of Bratz into the marketplace." App. at 7-8. Yet MGA again fails
10  to explain why its detailed formulation of these topics in this *ex parte* application **not**
11  filed under seal is insufficient for MGA's current counsel to solicit MGA's and Larian's
12  assistance with these allegations.

13    As with its previous motions, there is no showing that MGA's counsel is unable
14  to defend MGA adequately at the summary judgment stage and at trial without granting
15  access to MGA or Larian to the highly confidential Mattel information designated as
16  AEO. MGA's counsel, which is just one of the several law firms acting for MGA in
17  this litigation, has "more than 1,100 lawyers in 22 offices worldwide."[20] MGA's team
18  from MGA's counsel has included at least six partners, nine associates, and the support
19  infrastructure of a major international law firm. MGA's outside counsel has had a year
20  of complete access to Mattel's AEO documents. In addition, Mattel's AEO information
21  also may be shared with outside consultants and experts under the protective order,
22  including industry experts and the like.[21] MGA has simply not shown that its many
23  outside lawyers and consultants cannot defend it. Brown Bag Software v. Symantec

24

25

26

[19] Stipulated Protective order at 10, ¶ 6.
27  [20] See http://www.orrick.com/about/.
28  [21] Stipulated Protective order at 10, ¶ 6.

1  Corp., 960 F.Supp. 2d 1465, 1472 (9th Cir 1992) (no prejudice where outside counsel
2  had "over six months in which to study the trade secrets"); Intel Corp. v. VIA Tech.,
3  Inc., 198 F.R.D. 525, 528 (N.D. Cal. 2000) (no good cause to modify protective order
4  and no prejudice where outside counsel was a large international law firm with "largest
5  intellectual practice in the world with more than 230 IP attorneys."). Nor can MGA or
6  Larian claim lack of due process given such clearly adequate representation. Brown
7  Bag at 1471 (outside counsel had ample time to study documents and to develop
8  evidence for defense); Akzo N.V. v. ITC, 808 F.2d 1471, 1484 (Fed. Cir. 1986) (no due
9  process violation where party was represented by numerous attorneys and experts who
10  had full access to the opposing party's confidential information).

11      MGA also argues that because of a "loss of employees" since the onset of this
12  litigation, Larian and former MGA employees are needed to fill in gaps. This, too, is
13  meritless. MGA's loss of internal knowledge, if any, is its own fault. Larian has been
14  at the center of all alleged activities, and he is still with MGA. Any loss of institutional
15  knowledge within MGA is due to MGA's spoliation and retaliation against its
16  employees for speaking out against MGA's illegal practices. Larian ordered destruction
17  of evidence,[22] placed a gag order on written communications to prevent build-up of
18  discoverable evidence against him,[23] █████████████████████████████████
19  ████████████████████████████████████████████████████████████████████
20  ██████████████████████████.[24]   Such self-inflicted wounds by Larian and
21  MGA cannot justify the risk of harm to Mattel.

22
23

24  [22]  MGA2 0070551-553 (████████████████████████████████████████████).
25  [23]   MGA2 0327614-615 (██████████████████████████████████████
    ████████████████████). Larian instructed MGA employees that there
26  "[t]here must be no mention" of Bryant outside MGA (TX 4507) because MGA
    "want[ed] to keep Carter under wraps." (TX 4942).
27  [24]   WING0010866-67; Wing Dep. at 103:23-104:4 (██████████████████
28  ██████████████████████████████████████████████████████).

III. **LARIAN, WHO HAS ABUSED REPEATEDLY ACCESS TO CONFIDENTIAL MATTEL INFORMATION, SHOULD NOT BE ALLOWED ANOTHER OPPORTUNITY TO DO SO**

Mattel will be harmed if the AEO information filed under seal during the summary judgment stage were turned over to the lead business person at Mattel's competitor. Intel, 198 F.R.D. at 531 (noting "an increased risk of harm when information is being disclosed to a direct competitor" and potential for "dire consequences"). As the Court has noted before, "neither party disputes that Larian is heavily involved in MGA's business. Mattel and MGA are direct competitors and Larian's review of Mattel's trade secret documents poses potential harm *even if* Larian abides by the terms of the Protective Order."[25] MGA does not even attempt to argue to the contrary. Nor could it. For example, in his recent declaration asking the Court to permit him to attend the Hong Kong Toy Fair, Larian stated:

> I will be acting both as MGA's senior sales representative, and as its head of design and costing.[26]
>
> For years I have served as MGA's principal representative for negotiating the costing associated with MGA's product designs, including serving as the person with ultimate authority to approve any necessary changes to those designs to meet costing goals that enable the company to price its products attractively and to operate profitably. No

---

[25] Dkt. 254, Order Granting In Part And Denying In Part Motion To Modify Stipulated Protective order, dated June 17, 2010, at 2 (emphasis in original).

[26] Dkt. 7389, Declaration of Isaac Larian in Support of MGA Parties' *Ex Parte* Application for Relief Amending the December 7, 2009 Minute Order Thereby Excusing the In Person Attendance of Principals in Court from January 9, 2010 through January 15, 2010, ¶ 9.

1   one else at MGA has ever conducted these final negotiations, and there is

2   no one else at MGA to whom these negotiations can be delegated.[27]

3   I am directly responsible for the success of all of these critical negotiations.[28]

4       No safeguards can be put in place that will adequately protect Mattel's

5   information in Larian's hands. Larian has repeatedly demonstrated his contempt for the

6   judicial process and his obligations to maintain the confidentiality of information

7   related to this case. He has described in the press the purported contents of confidential

8   settlement negotiations.[29] As the Court is aware, MGA and Larian interjected a variety

9   of AEO material into the public record with MGA's counterclaims-in-reply and sought

10  to gin up press attention for the allegations. Moreover, he has requested to review AEO

11  deposition transcripts – a flagrant refusal to abide by the Court-entered protective

12  order.[30]

13      Larian also has engaged in transactions of Mattel stock at various important

14  points in the litigation, trading on the litigation itself by using information before it

15  became public to drive the timing of his trades.[31] As recently as last week, Larian was

16

17  [27]  Id. at ¶ 12.

18  [28]  Id. at ¶ 13.

19  [29]  See Dkt. 252, Mattel, Inc.'s Opposition to MGA Parties' Motion to Modify Stipulated Protective order, at 8.

20  [30]  See MGA2 3122317, ███████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ███████ Fontanella's deposition was taken on January 16, 2008 and marked AEO.   See also MGA2 3135956, ███████████████

24  ████████████████████████████████████

25  ███████ Fred is Farhad Larian, Isaac Larian's brother, who was deposed on February 4, 2008 and May 6, 2008. The deposition transcript was marked AEO.

26  [31]  See MGA2 0062195-255, ███████████████████

27  ████████████████████████████████████

    ███████ These dates overlap with the Phase 1(a) (July 17, 2008) and Phase 1(b)

28  (August 26, 2008) jury verdicts in this case. See also MGA2 3049742, ████████
    (footnote continued)

1  at it again – trying to influence Mattel's stock prices by disseminating to stock analysts

2  information about the litigation to coincide with Mattel's Third Quarter Earnings

3  analysts' calls on October 15, 2010. This included sending multiple emails right before

4  and after such calls purporting to describe documents that had been designated AEO --

5  a transparently *non*-litigation use of the information, and a transparent violation of the

6  Protective Order. For example: "Our claims against Mattel: Yes, they are real and

7  well documented and Mattel was aware of them at least since 2005 and suppressed the

8  evidence. Mattel even has a written instruction pamphlet on how to steal from your

9  competitors at different shows, including where to go and print fake invoices for fake

10  made up companies and how to get a fake reseal tax certificates. You should ask Mattel

11  for a copy."[32]  Larian should not be granted access to Mattel's AEO information.

12  **Conclusion**

13  For the foregoing reasons, MGA's Application should be denied.

15  DATED:  October 17, 2010          QUINN EMANUEL URQUHART &
16                                    SULLIVAN, LLP

18                            By:  /s/ Michael T. Zeller
19                                 Michael T. Zeller
                                   Attorneys for Mattel, Inc. and
                                   Mattel de Mexico. S.A. de C.V.

27  [32]  Email from Isaac Larian to blind copied list of investment analysts, dated
28  October 15, 2010.