QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER TO COMPEL DISCOVERY OF FORMER MGA EMPLOYEE PERSONNEL FILES, CONTACT INFORMATION AND DOCUMENTS RE COUNTERCLAIMS IN REPLY; AND APPENDIX.<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br><br>Pre-trial Conf: January 4, 2011<br>Trial Date: January 11, 2011 |

## Preliminary Statement

After years of concealment by MGA and its counsel, it is now slowly coming to light that MGA has been secretly infiltrating Mattel's toy fair showrooms for years to gain access to Mattel's unreleased product information – the very same conduct that MGA and Larian have shrilly condemned and indeed have asserted, with great press fanfare, in its belated counterclaims. MGA's opposition here, however, nevertheless repeatedly misrepresents the facts and its own claims in order to justify its admitted refusals to produce basic discovery. MGA thus contends that there is no evidence that MGA gained access to Mattel's showrooms. That is curious, to say the least, since documents recently produced by MGA prove that it did. Moreover, as MGA fails to inform the Court, an MGA executive testified yesterday that MGA and Zapf personnel have infiltrated Mattel's toy fair showrooms – and indeed they have done so *every year* for the past several years. This included, specifically, an episode where another MGA executive, Thomas Pfau, snuck into Mattel's toy fair showroom late at night during Nuremberg Toy Fair in 2007 and then disseminated within MGA information about unreleased Mattel products he had obtained from that unauthorized access. To date, MGA has produced not a single document relating to this highly pertinent event. Indeed, MGA entirely hid these facts until just yesterday.

Nor is it correct that the Court has limited discovery only to the infiltration of toy fair showrooms. To the contrary, the Court has recognized that MGA's counterclaims-in-reply assert highly expansive trade secret and RICO claims. Mattel's requested discovery properly seeks information to refute elements of MGA's claims, including by showing that the products that MGA asserts were trade secret were disclosed in various ways that were not confidential. The Court has explicitly held that such discovery is relevant to MGA's counterclaims-in-reply.

MGA's other arguments are equally spurious. As this Court has already pointed out, MGA is demanding billions of dollars, which renders its cries of undue

burden hollow, particularly in light of the fact that Mattel is seeking specific files and information from specifically named custodians. MGA's contention that Mattel waited too long to seek discovery that MGA should have produced without motion practice is likewise misdirected. MGA was the party that asserted these counterclaims only recently. It did not produce any of the few documents it has produced to date showing that MGA had obtained access to Mattel showrooms until the last days of August and September 2010 – even though some of those documents were years old and MGA has never explained why it withheld them. Mattel then filed an *ex parte* seeking expedited discovery, but MGA failed to produce even the discovery it promised and the Court stayed that discovery until this month. The lack of diligence is solely on MGA's part, not Mattel's.

Mattel's application should be granted.

### Argument

**I.   RECENT DISCOVERY CONFIRMS THAT MGA IS WITHHOLDING KEY EVIDENCE CONCERNING ITS COUNTERCLAIMS-IN-REPLY.**

In the thirty-four hours since Mattel filed its application, two developments have further confirmed that MGA is stonewalling to prevent Mattel from obtaining basic discovery before the expiration of discovery on the counterclaims in reply on November 1.

First, Mattel deposed Patrick Potgiesser, an MGA executive, on October 26. Not only has MGA failed to produce any documents from Mr. Potgiesser, but he confirmed at his deposition that MGA has never even *asked* him for documents to produce in this litigation. This is despite the fact that Mr. Potgiesser repeatedly testified that he and his subordinates have documents critical to Mattel's defense. Contrary to MGA's Opposition, (Opp. at 1:2-6), Mr. Potgiesser testified that both MGA and Zapf personnel have infiltrated Mattel showrooms:

- When Mattel asked Mr. Potgiesser about MGA and Zapf personnel gaining unauthorized access to Mattel toy fair showrooms, MGA's counsel

instructed him not to answer on the grounds, incredibly, that such activities were "irrelevant." In reality, the instruction was to hinder Mattel from obtaining the witness's highly incriminating testimony. After the Discovery Master overruled the instruction, Mr. Potgiesser proceeded to admit that MGA and Zapf personnel have infiltrated Mattel's toy fair showrooms *every year* for the past several years. This included, specifically, an episode where another MGA executive, Thomas Pfau, snuck into Mattel's toy fair showroom late at night during Nuremberg Toy Fair in 2007 and then disseminated information about unreleased Mattel products he had obtained from that unauthorized access. To date, MGA has produced not a single document relating to this highly pertinent event.

- Mr. Potgiesser explained that MGA has *publicly* displayed its unreleased products on planograms that are set up in retail stores – public disclosures that Mr. Potgiesser testified are shown by photographs, emails and other materials in his group's files. He further conceded that he and others at MGA routinely disclose MGA's unreleased product information to thousands of retailer representatives, while fully recognizing that they in turn regularly reveal that information to Mattel and other MGA competitors, just as the retailers also have routinely revealed unreleased Mattel product information to MGA. As this Court has already recognized, such evidence of MGA's disclosures of the products that it has claimed as trade secrets are relevant and must be produced. Nevertheless, MGA has produced nothing on the subjects of these disclosure identified by Mr. Potgiesser, including from the files or computers of Mr. Potgiesser or his subordinates.

MGA should be compelled to search for and produce documents from Mr. Potgiesser and the other individuals identified in Mattel's application. Not only do he and his subordinates have relevant documents, but his testimony only serves to further demonstrate the serious prejudice that Mattel is suffering from MGA's

refusals to produce them. While MGA's opposition points to documents that have been produced that "reference" these individuals (Opp. at 5:6-11), MGA does not dispute that it has not actually retrieved documents from them—a fact confirmed by Mr. Potgiesser's testimony.

Second, MGA is defying the Court's October 21, 2010 Order. That Order required MGA to supplement responses to Mattel's interrogatories seeking basic information about MGA's late-added trade secret claims. October 21, 2010 Order (Dkt. No. 8974) at 3-6. The Court ordered supplemental responses be served on Mattel and filed with the Court no later than October 25. As of the filing of this reply brief, Mattel has not received any supplemental responses.[1] While Mattel intends to bring a separate application to obtain relief based on MGA's failure to comply with the Court's order (including additional time to complete discovery) for present purposes MGA's conduct further emphasizes that it has no intention of permitting Mattel to take even basic discovery. That basic discovery includes the personnel files of people integrally involved in MGA's infiltration of Mattel toy fair showrooms. MGA does not even dispute the relevance of those files and should be ordered to produce them.[2]

---

[1] At 10:30 pm on October 26, Mattel sent MGA an email asking it to confirm that it had yet to serve supplemental responses. Email from S. Watson to A. Hurst and T. McConville. 12 hours later, Mattel still has not received a response, effectively confirming that MGA has not complied with the Court's Order.

[2] Contrary to MGA's argument, the Court did not previously reject requests for the personnel files Mattel seeks here. The Omnibus order declined to order production of certain personnel files sought by two requests for production—Requests 87 and 88 of Mattel's Third Set of Phase Two RFPs. See October 1, 2010 Order at No. 6. Neither of those sought the personnel files of de Raspide, Sternberg or Firth. And while Han's file might arguably have fallen within the ambit of Request 88, that should not preclude Mattel from obtaining it now in light of the Counterclaims in reply.

## II. MGA'S REPRESENTATION THAT THERE IS NO EVIDENCE THAT MGA INFILTRATED MATTEL SHOWROOMS IS FALSE.

Contrary to MGA's contention, there is ample evidence that MGA gained unauthorized access to Mattel's toy fair showrooms. Documents long withheld but recently produced by MGA demonstrate it. See Appendix submitted herewith.[3] And, as noted, an MGA executive, Mr. Potgeisser, has now confessed it.

MGA's attempts to distance itself from the evidence showing that MGA received information about unreleased Mattel products from Mattel toy fair showrooms fail. At the outset, MGA fails to disclose that MGA employees and executives themselves were among those who gained access to Mattel's showrooms. MGA also misrepresents its relationship with Zapf. MGA claims that Mattel's evidence of MGA receiving information from Zapf employees is irrelevant because it merely reflects the activities of "an MGA German distributor," Zapf. (Opp. at 1:8-9). MGA omits that Isaac Larian is the majority owner of Zapf shares[4] and owns all Zapf's outstanding debt.[5] Furthermore, as Mr. Potgiesser testified, Zapf and MGA employees throughout Europe have served as dual employees for both companies.

Starting in 2007, Zapf and MGA joined forces at Larian's direction to create what Zapf calls a "strategic partnership," but is, for all practical purposes, a single merged company. Zapf has authorized MGA to sell Zapf products in the United States, the UK, and other territories as part of a series of agreements that, gave Zapf,

---

[3] MGA argues that the emails Mattel relied upon in its application do not reflect relevant MGA conduct. For the Court's convenience, Mattel has attached them hereto.
[4] http://www.zapfcreation.com/en/corporate/investor-relations/releases/adhoc-releases/index.php?site=ZAPF_EN_adhoc_releases_detail&udtx_id=13018.
[5] http://www.zapfcreation.com/en/corporate/investor-relations/releases/adhoc-releases/index.php?site=ZAPF_EN_adhoc_releases_detail&udtx_id=11072.

*inter alia*, rights to sell MGA products in certain European territories.[6] MGA controls Zapf's product development and manufacturing, while Zapf handles MGA's European logistics. Isaac Larian serves on the Supervisory Board of Zapf, while Ron Brawer serves on the Zapf Management Board.[7] Zapf's website identifies its U.S. address as "MGA Entertainment, 16380 Roscoe Blvd. Suite 100."[8] Indeed, Zapf previously had a United States subsidiary, but dissolved it in 2006 and now operates in the United States solely through MGA.[9] MGA and Zapf operate effectively as a single entity, as reflected by the emails Mattel cited in its application wherein MGA and Zapf employees freely share information obtained through the infiltration of Mattel toy fair showrooms. Mr. Potgeisser confirmed that MGA and Zapf have essentially consolidated their operations in Europe, to the point where most MGA employees in Europe are also dual Zapf employees.

     In short, MGA's attempts to distance itself from the unauthorized access to Mattel's showrooms as a basis for refusing critical discovery is, if anything, extremely troubling. It suggests that MGA is using false and largely undisclosed distinctions to deliberately withhold critical evidence.

     Equally baseless is the distinction MGA tries to draw between showrooms and planograms. MGA grossly mischaracterizes the scope of its claims, arguing that the only relevant discovery is evidence of MGA employees sneaking into Mattel toy

---

[6] See Zapf Creation AG Annual Report 2008, downloaded from http://www.zapfcreation.com/en/corporate/investor-relations/annual-document/ ("Zapf 2008 Annual Report") at 44, 130-131.
[7] http://www.zapfcreation.com/en/corporate/investor-relations/corporate-governance/management-supervisory-board/.
[8] http://www.zapfcreation.com/en/corporate/contact/country-contacts/?land=U.S.A..
[9] Zapf 2008 Annual Report at 44 ("The Group subsidiary, Zapf reation (U.S.) Inc., discontinued operations as of December 31, 2006. MGA Entertainment Inc., Van Nuys, California, USA, alone has been in charge of the entire American market via a strategic partnership effective January 1, 2007.")

fair showrooms. But this Court has recognized that discovery into such matters as the disclosure of information that MGA claims as trade secret is highly relevant to MGA's trade secret and RICO claims. Planogram rooms, which MGA also infiltrated, contain the same types of information as toy fair showrooms—unreleased products that are laid out by retailers. Mattel is entitled to put on evidence that MGA obtained the same type of information it now sues on from planograms as well. And, of course, MGA's position on whether information contained in planograms is confidential is directly relevant to its claim that the same information contained in toy fair showrooms is trade secret. That is indisputably relevant and even critical to MGA's own trade secret claims, as the Court has previously ruled.

### III. MGA'S UNDUE BURDEN ARGUMENTS FAIL.

MGA's claim of undue burden is baseless. MGA should have produced these documents long ago. It cannot complain that its own failure to comply with its obligations to search for and produce documents now requires it to go back and do it right. But more importantly, there is nothing burdensome about what Mattel seeks. Mattel has identified five particular custodians for which it seeks documents relevant only to MGA's counterclaims in reply. By contrast, MGA sought and received in connection with MGA's Omnibus Motion to Compel, an order for Mattel to produce documents responsive to a far broader set of issues as to 38 additional custodians. October 1, 2010 Order at No. 26. The burden here, if any, is not undue, particularly in light of the fact that MGA is asserting expansive trade secret and RICO claims and is demanding "billions" of dollars, as the Court has previously noted.

### IV. MGA'S OTHER ARGUMENTS ARE WITHOUT MERIT.

MGA acts as if Mattel is seeking documents it was not previously entitled to. But there is no dispute that MGA was required to search for and produce all of these documents previously. It did not produce the referenced emails gratuitously.

MGA's belated production of documents in August and September 2010 that should have been produced years ago simply alerted Mattel to the fact that there is surely additional material that should have been produced and has not been. Mattel is not seeking to impose new obligations on MGA; it is simply seeking to rectify MGA's willfully deficient searches.

      MGA faults Mattel for "waiting until the last minute" to seek discovery into these issues. (Opp. at 4:23-26). Of course, MGA concedes that many of the most damning documents—including the email conveying unreleased Mattel product information and asking the recipient to delete it after conveying its contents to Mr. Larian and Mr. Brawer and the 2008 email in which MGA employees report on infiltrating Mattel's Nuremberg Toy Fair booth—were only produced on August 31 and September 2, 2010, among millions of other pages of discovery.[10]

      But even assuming that Mattel had all these documents, it was MGA's counterclaims-in-reply, filed August 16, that put at issue the practices Mattel has now uncovered. As the Court is well aware, within days of the counterclaims in reply being filed, Mattel propounded requests for expedited discovery relevant to these claims.[11] That discovery was held in abeyance by the Court pending the pleading motions on MGA's new claims, a stay that was only lifted on October 6.[12] The Court is well aware that Mattel has diligently sought discovery into MGA's late-filed claims. Moreover, MGA has taken the position in a lead counsel meet and

---

[10] Opp. at 4:18-22.

[11] See generally Mattel's Ex Parte Application for Order Granting Expedited Discovery on MGA's Purported "Compulsory Counterclaims-In-Reply", August 25, 2010 and Exhibits thereto (Docket No. 8640).

[12] Hearing Tr. dated October 6, 2010 at 8:10-23 ("Concerning the discovery into the counterclaims and reply, in the order on the omnibus discovery motions, this court stayed discovery on the counterclaims and reply pending the resolution of Mattel's motion to dismiss the counterclaims and reply. . . .This morning I issued an (footnote continued)

confer about requests for production issued to Mr. Larian after the stay was lifted that it will not even respond written discovery now because Mattel did not have sufficient time between the lifting of the stay on October 6 and the cutoff on November 1 to comply with the Federal Rules requirement that discovery generally be served on 30 days notice. MGA should not be permitted to preclude meaningful discovery into its new claims by doing precisely what Mattel predicted it would—obstructing discovery and running out the clock.

       Also spurious are MGA's complaints about the meet and confer. In fact, lead counsel discussed thoroughly the substance of this and other discovery motions more than once. This included the fact that Mattel was seeking the hard drives, personnel files and other information from the custodians specified in this motion. Mattel's lead counsel also specifically stated that Mattel would seek additional time to complete discovery if MGA continued to delay. This, too, has been the subject of more than one lead counsel meet and confer. MGA tellingly does not provide or even offer to provide a declaration refuting this. All its cites is one sentence from an email requesting a meet and confer. Yet, as is obvious, a one-sentence description of the *ex parte* scarcely was intended to be, and cannot be reasonably construed as, the entire application itself. MGA's apparent suggestion that an entire motion has to be laid out in writing in advance for the meet and confer requirement to be satisfied is supported by neither authority nor common sense. The fact remains that Mattel's counsel discussed this application with MGA's counsel and gave MGA every opportunity to cease its stonewalling. As its opposition here confirms, MGA has refused and thus forced this motion.

order granting in part and denying in part Mattel's motion. . . . Therefore, it seems appropriate to lift the stay at this time, which I'm doing.")

## Conclusion

For the foregoing additional reasons, Mattel respectfully requests that the Court grant its *ex parte* application.

DATED: October 27, 2010          QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.