1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
5  Telephone:  (213) 443-3000
   Facsimile:   (213) 443-3100
6
7  Attorneys for Mattel, Inc. and Mattel de
   Mexico, S.A. de C.V.

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                 SOUTHERN DIVISION

11 | MATTEL, INC., a Delaware | CASE NO. CV 04-9049 DOC (RNBx)
12 | corporation, et al., |
   | | Consolidated with
13 | | Case No. CV 04-09059
   | Plaintiff, | Case No. CV 05-02727
14 | |
   | vs. | Hon. David O. Carter
15 | |
   | | MATTEL, INC.'S *EX PARTE*
16 | MGA ENTERTAINMENT, INC., a | APPLICATION FOR ORDER TO
   | California corporation, et al., | COMPEL DISCOVERY FROM ZAPF
17 | | CREATION RE: COUNTERCLAIMS
   | | IN REPLY; AND
18 | Defendant. |
   | | MEMORANDUM OF POINTS AND
19 | | AUTHORITIES
   | AND CONSOLIDATED ACTIONS |
20 | | [[Proposed] Order Submitted Herewith]
21 | | Hearing Date:  TBD
   | | Time:              TBD
22 | | Place:             TBD
23 | | Pre-trial Conf:     January 4, 2011
   | | Trial Date:          January 11. 2011
24
25
26
27
28

00505.07209/3740847.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel") respectfully apply *ex parte*, pursuant to Local Rule 7-19, for an Order compelling discovery from and regarding Zapf Creation AG ("Zapf") re: MGA's counterclaims-in-reply.

MGA is obstructing Mattel's efforts to take discovery into MGA's counterclaims-in-reply by disputing the propriety of subpoenas Mattel served on Zapf, an affiliate, partner and closely related company of MGA, at the offices shared by the two companies.   Good cause exists to grant this application.   MGA's eleventh-hour counterclaims put squarely at issue MGA's procedures and techniques for obtaining and disseminating information about Mattel's future products and strategies obtained at toy fairs.   MGA not only obtained such information directly by infiltrating Mattel's showrooms, but it also worked and conspired with its German affiliate Zapf to do so. Together, Zapf and MGA engaged in the same conduct that MGA has alleged against Mattel in its counterclaims in reply.

Accordingly, Mattel served a document subpoena and a deposition subpoena on Zapf.   Zapf identifies MGA Entertainment as its United States office.   After the subpoenas were accepted at the MGA/Zapf offices, counsel for MGA informed Mattel of her contention that these subpoenas are not valid because Zapf is a German company and MGA is not its registered agent for service of process.   Mattel asks for an order that MGA is Zapf's agent for service of process in the United States for purposes of this litigation and that Zapf produce witnesses and documents responsive to the subpoenas.

In the alternative, Mattel asks the Court for one of two other remedies:   ordering MGA to respond to Mattel's discovery informed by knowledge and with documents in Zapf's possession, or issuing Letters Rogatory under the Hague Convention.   The Court may order MGA to produce a 30(b)(6) witness and to respond to Mattel's document requests on behalf of Zapf.   Mattel has served on MGA a 30(b)(6) deposition notice and requests for production as to MGA's counterclaims in reply, and MGA is defined

therein to include its agents and representatives, as well as any "corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf." MGA did not object to this definition, which also accurately describes the relationship between MGA and Zapf. Zapf therefore properly falls within definition of MGA used by Mattel in its discovery. MGA should be required to respond to Mattel's existing discovery as though it was separately propounded on Zapf and on behalf of Zapf. Alternatively, the Court can issue Letters Rogatory to enable Mattel to seek discovery from Zapf in Germany, pursuant to the Hague Convention. If the Court does so, Mattel hereby requests that the Court suspend the discovery cutoff for this limited purpose of obtaining discovery from Zapf.

This Application is based on this Notice of Application and Application, the accompanying Memorandum of Points and Authorities, the records and files of this Court, and all other matters of which the Court may take judicial notice.

## Notice And Meet and Confer

Pursuant to <u>Local</u> <u>Rule</u> 7-19, on October 19, 2010, Mattel's counsel gave notice of the instant *ex parte* to counsel for the MGA Parties, Annette Hurst and Thomas McConville, Orrick, Herrington & Sutcliffe, LLP; 405 Howard Street, San Francisco, CA, telephone: (415) 773-4585, and e-mail: tmcconville@orrick.com, ahurst@orrick.com. Lead counsel for the parties met and conferred on October 21, 2010 and other times thereafter to attempt to resolve this issue in advance of the filing of this *ex parte*. No resolution was reached as a result thereof.

1   DATED:  October 27, 2010          QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
2

3

4                                      By /s/ Michael T. Zeller
                                          Michael T. Zeller
5                                         Attorneys for Mattel, Inc. and Mattel de
                                          Mexico, S.A. de C.V.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 6

I.     MATTEL'S SUBPOENAS WERE PROPERLY SERVED ON ZAPF........... 6

II.    ALTERNATIVELY, THE COURT SHOULD ORDER MGA TO
       PRODUCE ZAPF'S DOCUMENTS AND A ZAPF WITNESS..................... 8

III.   ALTERNATIVELY, THE COURT SHOULD AUTHORIZE A
       LETTER OF REQUEST TO OBTAIN DISCOVERY FROM ZAPF IN
       GERMANY UNDER THE HAGUE CONVENTION AND SUSPEND
       THE DISCOVERY CUTOFF WITH RESPECT TO ZAPF .......................... 10

CONCLUSION.................................................................................................. 10

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4

<u>Campagnolo S.R.L. v. Full Speed Ahead, Inc.,</u>
   2009 WL 1788381 (W.D. Wash. 2009) ........................................... 7, 8

5

6

<u>Cascade Steel Rolling Mills, Inc. v. C. Itoh and Co. (America) Inc.,</u>
   499 F. Supp. 829 (D. Or. 1980) ........................................................ 8

7

<u>Direct Mail Specialists, Inc. v. Eclat Computerized Technologies,</u>
   840 F.2d 685 (9th Cir. 1988) ........................................................... 7

8

9

<u>In re Grand Jury Subpoenas Issued to Thirteen Corps.,</u>
   775 F.2d 43 (2d Cir. 1985) .............................................................. 6

10

<u>Massey-Ferguson Ltd. v. Intermountain Ford Tractor Sales Co.,</u>
   325 F.2d 713 (10th Cir. 1963) ......................................................... 8

11

12

<u>Richmark Corp. v. Timber Falling Consultants,</u>
   959 F.2d 1468 (9th Cir. 1992) ......................................................... 9

13

<u>Thomas v. Hickman,</u>
   2007 WL 4302974 (E.D. Cal., 2007) ............................................. 10

14

15

<u>United Food & Comm. Workers Union v. Alpha Beta Co.,</u>
   736 F.2d 1371 (9th Cir. 1984) ......................................................... 7

16

17

<u>United States v. Int'l Union of Petroleum & Indus. Workers,</u>
   870 F.2d 1450 (9th Cir. 1989) ......................................................... 9

18

### <u>Miscellaneous</u>

19

20

<u>Local Rule</u> 7-19 .................................................................... 1, 2

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Documents withheld by MGA until last month reveal that MGA and Zapf employees were spying on Mattel's toy fair showrooms and conveying information back to MGA.  Indeed, at deposition yesterday, MGA executive Patrick Potgiesser acknowledged that MGA and Zapf have been gaining unauthorized access to Mattel's Nuremberg Toy Fair showroom *for years*.  Zapf is a German toy company that is affiliated with MGA and is majority-owned and controlled by Isaac Larian.  Larian owns not only the majority of Zapf shares, but also its outstanding debt.  Starting at least as early as 2007, Zapf and MGA joined forces at Larian's direction to create what Zapf calls a "strategic partnership," but is, for all practical purposes, a single merged company.  As Mr. Potgiesser testified, both companies share the same employees and offices.  Zapf has authorized MGA to sell Zapf products in the United States, the UK, and other territories as part of a series of agreements that, gave Zapf, *inter alia*, rights to sell MGA products in certain European territories.  MGA controls Zapf's product development and manufacturing, while Zapf handles MGA's logistics in Europe, including with respect to toy fair displays of MGA products that MGA has put at issue through its counterclaims in reply.  It is not by coincidence or accident that Zapf identifies MGA as its U.S. office.  Larian orchestrated a *de facto* merger between his two companies to synergize their operations.

Mattel served document and deposition subpoenas on Zapf at MGA's offices—the U.S. address set forth on Zapf's website.  MGA contends the subpoenas are invalid because Zapf has not appointed MGA as its agent for service of process.  MGA's position is that Zapf is not subject to service of process anywhere in the United States, notwithstanding the fact that MGA sells Zapf's products throughout the country and that Zapf receives valuable consideration therefor.  There is no legal support for such a manifestly unreasonable position.  The Federal Rules are more flexible and pragmatic than MGA and Zapf contend.  Zapf cannot opt out of appointing an agent for service

(or jurisdiction or venue) while it conducts business here.  The Court can and should order that MGA is Zapf's agent for service of process for purposes of this litigation.  In the alternative, Mattel asks the Court either to order MGA to produce Zapf documents and a witness to testify about Zapf's espionage activities against Mattel at toy fairs and elsewhere, or to issue Letters Rogatory so that Mattel can initiate procedures to obtain discovery in Germany pursuant to the Hague Convention.

Mattel has a right to discovery in defense against MGA's counterclaims.  Its application should be granted.

### **Background**

Zapf and MGA Worked Together to Infiltrate Mattel's Toy Fair Showrooms. After concealing them for years, MGA produced last month documents reflecting efforts to obtain Mattel product information at toy fairs.  These documents show not only that MGA employees gained unauthorized access to Mattel's toy fair showrooms, but also that MGA worked closely with its affiliate Zapf Creation and other companies to do so.  For example, on February 13, 2008, Angelika Sternberg, former MGA Germany marketing director, sent seven MGA managers (including Isaac Larian) and four Zapf managers an email stating:  "Two of our colleagues have been able to enter the booth of our competitor and wrote the attached report."[1]  Attached was a file named "Nuremberg TF 2008 Competitive Report.doc."[2]  At the top of the page, the attachment stated, "Report 'M' booth Nuremberg Toy Fair 2008,"and described unreleased product and strategic information concerning Mattel's BARBIE, MY SCENE and HOT WHEELS lines, among others."[3]  The names on the document reflect that one of the two "colleagues" who gained access was an MGA employee and the other was a Zapf

---

[1]  MGA2 3120922.
[2]  MGA2 3120923-24.
[3]  Id.

employee.  Other documents produced in September 2010 reveal additional instances of similar conduct.[4]

Nor, as it turns out, is this an isolated incident.  When Mattel asked Patrick Potgiesser, an MGA executive, at deposition about MGA and Zapf personnel gaining unauthorized access to Mattel toy fair showrooms, MGA's counsel instructed him not to answer on the grounds, incredibly, that such activities were irrelevant.[5]  In reality, the instruction was to hinder Mattel from obtaining the witness's highly incriminating testimony.  After the Discovery Master overruled the instruction, Mr. Potgiesser proceeded to admit that MGA and Zapf personnel have infiltrated Mattel's toy fair showrooms *every year* for the past several years.[6]  This included, specifically, an episode where another MGA executive, Thomas Pfau, snuck into Mattel's toy fair showroom late at night during Nuremberg Toy Fair in 2007 and then disseminated information about unreleased Mattel products he had obtained from that unauthorized access.[7]  To date, MGA has produced not a single document relating to this highly pertinent event.  Indeed, Mr. Potgiesser admitted that MGA had never even asked him for documents relating to this litigation.[8]

Zapf Is Under the Control of Isaac Larian, and MGA Is The U.S. Arm of Zapf. An October 4, 2010 Zapf public release states that "Isaac Larian . . . together with his

---

[4]   See, e.g., MGA 0151823-25, MGA 0178922-23, MGA 1763053-54 (all included in Appendix to Reply In Support of Mattel's Ex Parte Application for Order to Compel Discovery of Former MGA Employee Personnel Files, Contact Information and Documents filed October 27, 2010), Docket 8992.

[5]   Potgiesser Transcript dated 10/27/2010 ("Potgiesser Tr.") [ROUGH] B version at 43:9-46:8.

[6]   Potgiesser Tr. [ROUGH] B version at 100:21-108:1.

[7]   Potgiesser Tr. [ROUGH] B version at 100:21-101:19, 116:4-119:9.

[8]   Potgiesser Tr. [ROUGH] A version at 34:1-7.

family—holds a majority stake in Zapf Creation via several trusts."[9]  Moreover, Isaac Larian has purchased Zapf's entire outstanding debt.[10]  Larian serves on the Supervisory Board of Zapf, while Ron Brawer serves on the Zapf Management Board.[11]  Former MGA officers Thomas Pfau and Jens Keil served contemporaneously on the Zapf Management Board, and collectively earned more than 500,000 euros from Zapf in 2008.[12]  As Mr. Potgiesser testified, MGA and Zapf share employees and offices, resulting in what is, as a practical matter, a consolidation of operations.[13]  Importantly for purposes of this motion, Zapf operates on MGA's behalf the Nuremberg Toy Fair booth that has displayed the MGA products that are the subject of MGA's trade secret and RICO claims.[14]

There also is overwhelming evidence that MGA is the United States arm of Zapf and Zapf is MGA's German arm.  For example, under the heading "Country Contacts" on its website, Zapf lists MGA Entertainment as its United States contact, and identifies its U.S. address as "MGA Entertainment, 16380 Roscoe Blvd. Suite 100."[15]  Zapf previously had a United States subsidiary incorporated in Florida, Zapf Creation, Inc., that it dissolved in 2006 so that MGA could assume responsibility for Zapf's American operations.  According to Zapf's 2008 Annual Report, "The Group subsidiary, Zapf Creation (U.S.) Inc., discontinued operations as of December 31, 2006.   MGA

---

[9]   http://www.zapfcreation.com/en/corporate/investor-relations/releases/adhoc-releases/index.php?site=ZAPF_EN_adhoc_releases_detail&udtx_id=13018.  [All URL citations are accurate as of October 27, 2010, 12:00 a.m. GMT].

[10]   http://www.zapfcreation.com/en/corporate/investor-relations/releases/adhoc-releases/index.php?site=ZAPF_EN_adhoc_releases_detail&udtx_id=11072.

[11]   http://www.zapfcreation.com/en/corporate/investor-relations/corporate-governance/management-supervisory-board/.

[12]   Zapf 2008 Annual Report at 128.

[13]   Potgiesser Tr. [ROUGH] A version at 42:23-48:6; Potgiesser Tr. [ROUGH] B version at 9:3-20, __.

[14]   Potgiesser Tr. [ROUGH] B version at 6:17-9:11. 92:4-98:9, 191:9-192:5.

*EX PARTE* APPLICATION TO ORDER DISCOVERY FROM ZAPF RE COUNTERCLAIMS IN REPLY

Entertainment Inc., Van Nuys, California, USA, alone has been in charge of the entire American market via a strategic partnership effective January 1, 2007."[16]

Zapf's 2008 annual report identifies six agreements into which Zapf and MGA entered in 2007, and describes the effect of the ensuing "close partnership" between Zapf and the "Related Companies of the MGA Group" as follows:

- Distribution of Zapf Creation products by MGA Entertainment, Inc. in the Americas;
- Distribution of MGA Entertainment products in key European markets via the distribution network of the Zapf Creation Group;
- Procurement services provided by MGA Entertainment, Inc. for the Zapf Creation Group in Hong Kong;
- Licensing of products of the Zapf Creation Group outside the toy sector by MGA Entertainment, Inc.;
- Logistics services provided by Zapf Creation Logistics for MGA Entertainment, Inc.; and
- Distribution of Zapf Creation products by MGA Entertainment (UK), Ltd. in the United Kingdom; Provision of administrative sservices for MGA Entertainment (UK), Ltd. by Zapf Creation (UK) Ltd.[17]

Later, Zapf's 2008 Annual Report sets forth Zapf's relationship with MGA in greater detail. Zapf describes MGA as "solely responsible" for sales and distribution of Zapf's products in North America, Central America, South America, and the United Kingdom.[18]  In return, Zapf obtained the right to "sell MGA products in particular European markets in exchange for payment of a distribution fee."[19]  MGA has taken

---

[15]   http://www.zapfcreation.com/en/corporate/contact/country-contacts/?land=U.S.A..

[16]   Zapf Creation AG Annual Report 2008, downloaded from http://www.zapfcreation.com/en/corporate/investor-relations/annual-document/ ("Zapf 2008 Annual Report") at 44.

[17]   Zapf 2008 Annual Report at 44.

[18]   Id. at 130-131.

[19]   Id. at 130.

00505.07209/3740847.1

responsibility for "the entire process of selecting and monitoring the Asian suppliers of Zapf Creation products, the coordination and handling of merchandise shipments to the sales units, and technical product development."[20]  Further, Zapf has agreed not to develop or sell products that compete with MGA's products.[21]

MGA Obstructs Mattel's Subpoenas to Zapf.  Mattel personally served on Zapf a document subpoena on October 15, 2010, and a deposition subpoena on October 19, 2010.  The document subpoena requested 14 categories relating to Zapf's and MGA's attempts to gain access to Mattel displays or showrooms at toy fairs, as well as Zapf's own policies and practices regarding the confidentiality of MGA products at toy fairs.[22]  The deposition subpoena identified 14 substantially similar topics.[23]  The subpoenas were served on Zapf, care of MGA Entertainment, 16380 Roscoe Blvd., Van Nuys, California, consistent with Zapf's website and its most recent publicly available annual report.   Both subpoenas were accepted and received at the MGA offices.  Notwithstanding this successful service, on October 19, 2010, counsel for MGA informed Mattel that: "MGA does not accept service of any discovery on behalf of Zapf Creation AG.  Zapf is a German public company.  MGA is not its agent for service of process or for service of discovery."

### **Argument**

### I.   **MATTEL'S SUBPOENAS WERE PROPERLY SERVED ON ZAPF**

MGA is Zapf's agent, and Mattel's service of discovery on Zapf through MGA is valid.  As Fed. R. Civ. Proc. 45 does not specify what constitutes personal service on a corporation, courts look to the service of process requirements on corporations set out in Fed. R. Civ. Proc. 4.  In re Grand Jury Subpoenas Issued to Thirteen Corps.,775 F.2d 43, 46 (2d Cir. 1985) (applying Fed. R. Civ. Proc. 4 to determine whether subpoenas

---

[20]   Id. at 130.
[21]   Id. at 66.
[22]   These categories are attached to this application as Exhibit A.

were served properly on two corporations). <u>Fed. R. Civ. Proc.</u> 4(h)(1)(B) states that a foreign corporation "must be served by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice." <u>United Food & Comm. Workers Union v. Alpha Beta Co.</u>, 736 F.2d 1371, 1382 (9th Cir. 1984).

Service of process under Rule 4 "is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process. The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice." <u>Direct Mail Specialists, Inc. v. Eclat Computerized Technologies</u>, 840 F.2d 685, 688 (9th Cir. 1988). Accordingly, "service can be made upon a representative so integrated with the organization that he will know what to do with the papers." <u>Id.</u> Service is sufficient when made upon one "who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." <u>Id.</u> MGA is such a representative. Its relationship to Zapf makes it fair, reasonable and just to hold that MGA has authority to receive service of discovery on behalf of Zapf. Indeed, the fact that Zapf disbanded its United States subsidiary and replaced it with MGA compels such a result. Zapf cannot avoid service simply by restructuring the manner in which it sells its products in the United States any more than it could avoid jurisdiction or venue through this tactic.

The court can declare MGA an agent of Zapf if it finds that by doing so, Zapf will receive notice sufficient to comply with <u>Fed. R. Civ. Proc.</u> 4. Due to the role of Isaac Larian in both companies and the close strategic partnership between MGA and Zapf, there can be no dispute that Zapf has actual notice of Mattel's discovery requests.

In <u>Campagnolo S.R.L. v. Full Speed Ahead, Inc.</u>, 2009 WL 1788381 (W.D. Wash. 2009), the court granted plaintiff's motion to declare defendant (a Washington

---

[23]   These topics are attached to this application as Exhibit B.

corporation) the agent for service of process of a Chinese company with which it was intertwined.  The court relied on the fact that the principal owner of the Washington defendant was married to the principal owner of the Chinese company, that the Chinese company had allowed defendant to represent its interests and communicate with its customers on its behalf, and that the Managing Director of the defendant frequently communicated with the owners of the Chinese company.  The connections between MGA and Zapf are even more compelling than in the <u>Campagnolo</u> case.  Isaac Larian is the majority owner of both, and Zapf describes MGA as a "Related Company," "affiliate," "strategic partner" and a "Close Partnership" in its 2008 Annual Report. Moreover, MGA and Zapf share officers, directors, employees and offices and have contractually agreed not to compete with one another.  Thus, Mattel properly served Zapf at MGA's offices.  <u>See also</u> <u>Cascade Steel Rolling Mills, Inc. v. C. Itoh and Co. (America) Inc.</u>, 499 F. Supp. 829 (D. Or. 1980) (finding adequate service of process on foreign parents by service of their subsidiaries with interlocking personnel); <u>Massey-Ferguson Ltd. v. Intermountain Ford Tractor Sales Co.</u>, 325 F.2d 713 (10th Cir. 1963) (permitting service of process on Canadian company through its United States affiliate by virtue of the two companies' "interlocking and integrated control.").

## II.   ALTERNATIVELY, THE COURT SHOULD ORDER MGA TO PRODUCE ZAPF'S DOCUMENTS AND A ZAPF WITNESS

In the event the Court does not find that MGA is Zapf's agent for purposes of accepting service of the discovery at issue, it can and should provide Mattel with functionally equivalent relief by finding that Zapf, as an affiliate and partner of MGA acting on its behalf, falls within the definition of "YOU" and "MGA" set forth by Mattel in its discovery requests.[24]  In other words, MGA should be required to obtain documents and information from Zapf and produce it in this litigation.

---

[24]   Notice of Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) (Third Phase 2 Notice) dated August 25, 2010; Mattel (footnote continued)

1    In its requests for discovery into MGA's counterclaims-in-reply, Mattel has

2 defined "YOU" and "MGA" to include affiliates, subsidiaries, partners, associations,

3 predecessors-in-interest, and persons otherwise acting on its behalf.  Each of these

4 terms describes the relationship between Zapf and MGA.  Mattel's Set of Requests for

5 Documents and Things to MGA Entertainment, Inc. Regarding Reply to the Fourth

6 Amended Answer, served August 25, 2010, includes several requests for documents

7 relating to MGA's attempts to gain access to Mattel showrooms, displays or

8 confidential information at toy fairs.[25]  Similarly, Mattel's 30(b)(6) notice of deposition

9 served on MGA August 25, 2010, employs the same definition of MGA.[26]

10    The Court should order MGA to respond to each of the Requests for Documents

11 as though they were separately propounded to Zapf, and to produce any responsive

12 documents in Zapf's possession.  The Court also should order MGA to produce a

13 witness to testify about Zapf's activities and knowledge of each topic.  MGA did not

14 object to the definitions that included its affiliated entities such as Zapf and thus waived

15 any right to do so.  It may now properly be compelled to produce such discovery.

16 Richmark Corp. v. Timber Falling Consultants, 959 F. 2d 1468, 1473 (9th Cir. 1992)

17 (failure to object to discovery constituting waiver).  Also, even apart from MGA's

18 waiver, the evidence shows that MGA and Larian have sufficient control over Zapf that

19 they may properly be required to exercise that control to obtain discovery from Zapf

20 and produce it in this litigation.  United States v. Int'l Union of Petroleum & Indus.

21 Workers, 870 F. 2d 1450, 1452 (9th Cir. 1989) (party obligated to produce documents of

22 affiliates over whom it has control, and defining control as "the legal right to obtain

23

24 _____

25 Inc.'s Set of Requests for Documents and Things to MGA Entertainment, Inc.
Regarding Reply to the Fourth Amended Answer dated August 25, 2010.

26 [25]   Mattel Inc.'s Set of Requests for Documents and Things to MGA
Entertainment, Inc. Regarding Reply to the Fourth Amended Answer dated August

27 25, 2010, Requests for Production No. 50a, 50b, 50c, 50d.

28

documents upon demand"); <u>Thomas v. Hickman</u>, 2007 WL 4302974 (E.D. Cal., 2007) ("The determination of control is often fact-specific.  Central to each case is the relationship between the party and the person or entity having actual possession of the document . . . Control may be established by the existence of a principal agent relationship").

### III.   <u>ALTERNATIVELY, THE COURT SHOULD AUTHORIZE A LETTER OF REQUEST TO OBTAIN DISCOVERY FROM ZAPF IN GERMANY UNDER THE HAGUE CONVENTION AND SUSPEND THE DISCOVERY CUTOFF WITH RESPECT TO ZAPF</u>

As a third alternative, Mattel asks the Court to issue a Letter of Request to the Präsident des Oberlandesgericht München, the Central Authority of Bayern, the state in which Zapf resides.  Mattel requires such a Letter of Request to initiate proceedings under the Hague Convention.[27]   Moreover, since obtaining evidence in Germany pursuant to the Hague convention can take several months (for reasons beyond the control of Mattel or this Court), Mattel requests that the Court suspend the November 1, 2010 discovery cutoff for the limited purpose of allowing discovery from Zapf in Germany as to MGA's counterclaims-in-reply.

### <u>Conclusion</u>

For the foregoing reasons, Mattel respectfully requests that the Court grant its application.

---

[26]   Notice of Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) (Third Phase 2 Notice) dated August 25, 2010.

[27]   In the event the Court grants Mattel's request for discovery through the Hague Convention, Mattel will promptly submit the appropriate paperwork, including targeted requests for information Zapf permitted under the Hague Convention.

1   DATED:   October 27, 2010          QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
2

3

4                                      By /s/ Michael T. Zeller
                                          Michael T. Zeller
5                                         Attorneys for Mattel, Inc., and Mattel de
                                          Mexico, S.A. de C.V.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

## Document Requests

1.      All DOCUMENTS REFERRING OR RELATING TO any of MATTEL's showrooms or other displays at any toy fair (including without limitation Hong Kong Toy Fair, New York Toy Fair, Dallas Toy Fair, Tokyo Toy Fair, Paris Toy Fair or Nuremberg Toy Fair) (hereinafter "Toy Fair") or any Plan-o-Grams or layout rooms displaying any MATTEL product.

2.      All DOCUMENTS REFERRING OR RELATING to YOUR or MGA's access, or attempts to gain access, to any of MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product, including without limitation all DOCUMENTS REFERRING OR RELATING TO how YOU and MGA gained access to Mattel's Toy Fair displays in Nuremberg in 2008.

3.      DOCUMENTS sufficient to IDENTIFY each of YOUR or MGA's officers, directors, employees or representatives who entered or viewed any of MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product.

4.      All DOCUMENTS, including without limitation all catalogs, price lists and line lists, obtained from MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product.

5.      All DOCUMENTS REFERRING OR RELATING TO any information obtained from MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product.

6.      All photographs and video of MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product.

7.      All DOCUMENTS REFERRING OR RELATING TO YOUR or MGA's efforts, or knowledge of any efforts by any PERSONS worldwide, to monitor, "spy on" or gain knowledge of MATTEL's trade secrets, non-public information, non-public activities, unreleased products, and product development, including, but not limited to:

a.      DOCUMENTS REFERRING OR RELATING TO YOUR COMMUNICATIONS or contacts with MATTEL's current or former employees, contractors, or customers about MATTEL or its business, including, but not limited to, any recordings of such COMMUNICATIONS;

b.      DOCUMENTS REFERRING OR RELATING TO YOUR knowledge of any MATTEL product before its release to the public or of any other non-public information about MATTEL, its business or its products

c.      DOCUMENTS REFERRING OR RELATING TO YOUR access to MATTEL's confidential product and pricing information through retailers; and

d.      DOCUMENTS REFERRING OR RELATING TO YOUR access to MATTEL's confidential product and pricing information from any other non-public sources and/or through non-public means.

8**.**     All COMMUNICATIONS with any MGA officer, director, employee or representative, including but not limited to Isaac Larian, regarding MATTEL information obtained from any Toy Fair.

9.     All DOCUMENTS, including all photographs and video, REFERRING OR RELATING to any MGA product or information displayed or provided at any Toy Fair.

10.     All DOCUMENTS, including but not limited to all appointment books, appointment calendars, sign-in sheets and logs, identifying each of the PERSONS who, at any Toy Fair, entered, accessed or viewed YOUR display or showroom in which MGA products or information were displayed or provided.

11.     All DOCUMENTS REFERRING OR RELATING TO YOUR or MGA's efforts to limit or restrict the access or entry, at any Toy Fair, of any PERSON or PERSONS to any display or showroom in which MGA products or information were displayed or provided.

12.     All DOCUMENTS, including but not limited to non-disclosure agreements or confidentiality agreements, REFERRING OR RELATING to any requirement that any PERSON who entered or viewed, at any Toy Fair, all or any portion of any display or showroom in which MGA products were shown not disclose or use such information, from 1998 to the present.  The foregoing request includes such DOCUMENTS pertaining to PERSONS who not only visited or accessed such display or showroom, but each and every PERSON who worked on or in, or otherwise entered or viewed, such display or showroom.

13.     All DOCUMENTS REFERRING OR RELATING TO the disclosure of information about MGA products displayed or shown at any Toy Fair to members of the press or the media or to any other PERSON, including without limitation the IDENTITY of each PERSON receiving any such disclosure

(hereinafter, "Recipient") and all DOCUMENTS REFERRING OR RELATING TO ANY requirement that such Recipient keep such information confidential.

      14.    All DOCUMENTS REFERRING OR RELATING TO how access to MGA UNRELEASED PRODUCT INFORMATION at any Toy Fair is restricted, limited or controlled, including but not limited to DOCUMENTS setting forth YOUR or MGA's policy with respect to confidential information, sign-in and sign-out sheets for access to confidential information, logs of PERSONS who access confidential information, and procedures for accessing confidential information.

## Exhibit B

## Topics

1.      YOUR and MGA's knowledge of the products and other information displayed or distributed at MATTEL's showrooms or other displays at any toy fair (including without limitation Hong Kong Toy Fair, New York Toy Fair, Dallas Toy Fair, Tokyo Toy Fair, Paris Toy Fair or Nuremberg Toy Fair) (hereinafter "Toy Fair") or in any Plan-o-Grams or layout rooms displaying any MATTEL product.

2.      YOUR or MGA's access, or attempts to gain access, and method of access to any of MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product, including without limitation how YOU and MGA gained access to Mattel's Toy Fair displays in Nuremberg in 2008.

3.      The IDENTITY of each of YOUR and MGA's officers, directors, employees or representatives who entered or viewed any of MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product.

4.      All DOCUMENTS, including without limitation all catalogs, price lists and line lists, and information that YOU or MGA obtained or received from MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product.

5.      All photographs and video of MATTEL's showrooms or other Toy Fair displays or any Plan-o-Grams or layout rooms displaying any MATTEL product of which YOU or MGA are aware or in possession.

6.      YOUR and MGA's efforts, or knowledge of any efforts by any PERSONS worldwide, to monitor, "spy on" or gain knowledge of MATTEL's trade secrets, non-public information, non-public activities, unreleased products, and product development, including, but not limited to:

a.      YOUR and MGA's COMMUNICATIONS or contacts with MATTEL's current or former employees, contractors, or customers about MATTEL or its business, including but not limited to the existence and whereabouts of any recordings of such COMMUNICATIONS;

b.      YOUR and MGA's knowledge of any MATTEL product before its release to the public or of any other non-public information about MATTEL, its business or its products;

c.      YOUR and MGA's access to MATTEL's confidential product and pricing information through retailers; and

d.      YOUR and MGA's access to MATTEL's confidential product and pricing information from any other non-public sources and/or through non-public means.

7.      All COMMUNICATIONS YOU have had with any MGA officer, director, employee or representative, including but not limited to Isaac Larian, regarding MATTEL information obtained from any Toy Fair or any Plan-o-Grams or layout rooms displaying any MATTEL product.

8.      YOUR knowledge of the display of any MGA product or information at any Toy Fair, including but not limited to the existence and whereabouts of any photographs and video of such displays.

9.      The receipt by YOU and MGA of any non-public and/or confidential information of MATTEL's products or pricing, product development, advertising plans, marketing plans or research, actual or estimated product costs or

sales, including any practice of  YOU and MGA of visiting the showrooms of MATTEL during any Hong Kong or New York Toy Fair(s), including but not limited to how YOU and MGA gained admittance to MATTEL's showrooms as well as how YOU and MGA control access to their own showrooms.

10.    PERSONS, who, at any Toy Fair, entered, accessed or viewed any display or showroom of YOURS in which MGA products or information were displayed or provided, including but not limited to PERSONS identified in appointment books, appointment calendars, sign-in sheets and logs.

11.    Efforts by YOU or known to YOU to limit or restrict the access or entry of any PERSON or PERSONS to any Toy Fair display or showroom in which MGA products or information were displayed or provided.

12.    Any requirement that any PERSON who entered or viewed, at any Toy Fair, all or any portion of any display or showroom in which MGA products were shown, not disclose or use such information, from 1998 to the present.  This topic includes such requirements pertaining to PERSONS who not only visited or accessed such display or showroom, but each and every PERSON who worked on or in, or otherwise entered or viewed, such display or showroom.

13.    The disclosure of information by YOU or known to YOU about MGA products displayed or shown at any Toy Fair to members of the press or the media or to any other PERSON, including without limitation the IDENTITY of each PERSON receiving any such disclosure (hereinafter, "Recipient") and any requirement that such Recipient keep such information confidential.

14.    The manner by which YOU or MGA restricted, limited or controlled access to MGA ALLEGED UNRELEASED PRODUCT INFORMATION at any Toy Fair, including but not limited to YOUR or MGA's policy with respect to confidential information, sign-in and sign-out sheets for

access to confidential information, logs of PERSONS who access confidential information, and procedures for accessing confidential information.