ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:  415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual | Case No. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | **MGA'S NOTICE OF MOTION AND MOTION TO COMPEL MATTEL TO PRODUCE A PREPARED 30(b)(6) WITNESS ON TOPICS 3-5 OF MGA'S SECOND AMENDED NOTICE OF DEPOSITION OF MATTEL INC.** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Date:     TBD<br>Time:     TBD<br>Place:     TBD |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that at a date and time set by the Court, in the

3   Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street,

4   Room 1053, Santa Ana, California 92701, the MGA Parties will, and hereby do,

5   move to compel Mattel Inc. to produce a 30(b)(6) witness who is fully prepared on

6   Topics 3-5 of  MGA's July 16, 2010 Notice Of Deposition Of Mattel Inc.

7   This Motion is made on the grounds that Mattel witnesses on topics 3-5,

8   Mattel's preservation, collection and production of documents in this litigation,

9   Victoria Cerrito and Philip Moore, were woefully unprepared and Mattel's

10  assertions of attorney-client and work-product privilege were improper.  This

11  motion is based on this Notice, the accompanying Memorandum of Points and

12  Authorities, all other pleadings and papers on file in this matter, and such further

13  evidence and argument as may be presented at the hearing on this motion.

14                    Statement of Compliance

15  Lead counsel for the parties discussed the issues raised in this Motion

16  but did not reach a resolution.

17

18  Dated:     October 28, 2010        ORRICK, HERRINGTON & SUTCLIFFE LLP

19

20                          By:_____/s/ Denise Mingrone_____

21                                        Denise Mingrone
                                        Attorneys for MGA PARTIES.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................... 1

FACTUAL BACKGROUND............................................................................ 2

I.      MATTEL WITHHELD KEY DOCUMENTS FOR MANY YEARS .......... 2

II.     TOPICS 3-5 OF MGA'S NOTICE OF DEPOSITION SEEKS
        TESTIMONY ON MATTEL'S PRESERVATION, COLLECTION
        AND PRODUCTION OF DOCUMENTS ...................................................... 5

ARGUMENT .................................................................................................. 6

I.      MR. MOORE WAS WOEFULLY UNPREPARED. ...................................... 6

II.     MATTEL'S OBJECTIONS BASED ON ATTORNEY-CLIENT AND
        WORK-PRODUCT PRIVILEGE ARE IMPROPER AND MUST BE
        OVERRULED. ............................................................................................... 7

III.    MATTEL SHOULD BE COMPELLED TO PROVIDE
        RESPONSIVE ANSWERS TO QUESTIONS IT HAS REFUSED TO
        ANSWER. ...................................................................................................... 9

        A.      Mattel Should be Compelled To Produce The Keywords Used
                For Preservation, Collection And Production Of Documents. ............. 9

        B.      Mattel Should Be Compelled To Provide Testimony About Its
                Enterprise Vault System. ................................................................... 11

        C.      Mattel Should Be Compelled To Provide The Dates It Collected
                or Imaged Hard Drives And Collected Emails From Its
                Custodians. .......................................................................................... 12

        D.      Mattel Should Be Compelled To Produce Information Related
                To Who Made The Decisions Regarding Preservation,
                Collection, and Production .................................................................. 15

        E.      Mattel Should Be Compelled To Produce Information Related
                To the Hard Drives Collected by its Client Services Team For
                Preservation and Collection ............................................................... 17

        F.      Mattel Should Be Compelled To Provide Testimony on the
                Carter Bryant Hard Drive It Preserved in 2004 ................................ 18

CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*International Assn. of Machinists and Aerospace Workers* v. *Merner-Masuda*,
  390 F. Supp. 2d 479 (D. Md. 2005) ...................................................................6

*Smith* v. *Life Investors Ins. Co. of America*,
  2009 WL. 2045197 (W.D.Pa. 2009) ..................................................................7

*U.S.* v. *Taylor*,
  166 F.R.D. 356 (M.D.N.C. 1996) ......................................................................6

*Victor Stanley, Inc.* v. *Creative Pipe, Inc.*,
  250 F.R.D. 251 (D. Md. 2008) ..........................................................................7

*In re Vitamins Antitrust Litigation*,
  216 F.R.D. 168 (D.D.C. 2003) ..........................................................................6

*Wingnut Films, Ltd.* v. *Katja Motion Pictures Corp.*,
  2007 WL. 2758571 (C.D. Cal Sep 18, 2007) ....................................................7

# **INTRODUCTION**

An avalanche of key documents produced by Mattel in the last two months raise troubling questions about Mattel's preservation, collection, and production of documents in this litigation.  For example, Mattel has produced in the last two months, numerous documents highly relevant to MGA's statute of limitations and unclean hands defense which were compelled by Court orders in Phase 1 yet not produced.   Mattel's withholding of such evidence suggests that Mattel has been engaged in a pattern of deliberate suppression of evidence (*See* Dkt. # 8583 (MGA's Reply to Mattel's FAAC), at 4).  The Court recently denied MGA's depositions of Franke and Stockton on Mattel's suppression of evidence on the grounds that "the deposition of Mattel's 30(b)(6) designee is the most appropriate vehicle for the discovery of such information."  Dkt. 8985.

Mattel has repeatedly stonewalled MGA's efforts to obtain meaningful testimony on its discovery conduct and suppression of evidence from its 30(b)(6) witness.  In MGA's last deposition of Mattel, the witness' inadequate preparation and Mattel's improper privilege assertions led the Discovery Master to direct MGA to simply "complete an examination, even getting the I don't knows or the privilege instructions, so that we can have a comprehensive record for a Motion to Compel." As the Court has directed that Mattel's 30(b)(6) deposition is the appropriate vehicle to obtain discovery on Mattel's suppression of evidence, MGA respectfully submits this motion to compel Mattel to produce an adequately prepared witness on Mattel's preservation, collection and production of documents in this litigation.

Mattel has already been compelled once by the Discovery Master to produce a knowledgeable witness on topics 3-5 of MGA's Notice of Deposition which seeks testimony on Mattel's preservation, collection and production of documents.  The Discovery Master found that Mattel's 30(b)(6) witness on these topics, Ms. Cerrito, was inadequately prepared.  For example, she lacked knowledge of Mattel's search of electronic media, if and when they were searched, nor could she identify a single

media that was searched.  9/21/2010 Cerrito Depo. at  61:22-62:17, 64:1-65:14.
The Discovery Master ordered Mattel to produce a knowledgeable witness by
October 4.  Mattel produced Philip Moore on October 4.  Mr. Moore was again
inadequately prepared.  For example, he had not investigated and did not know
whether and when the Enterprise Vault System, which had been implemented for
preservation and collection of documents in this litigation, had been searched for
responsive documents.  Nor did he know when the various electronic media
including hard drives and emails had been searched.

MGA's efforts to get meaningful testimony were further frustrated by
Mattel's improper instructions to not answer questions based on privilege.  Mattel
asserted that the key words used in its searches for collection or production, the
dates it had collected or preserved hard drives, the dates it had imaged hard drives,
and the dates when searches had been run were all privileged attorney-client
communication or work-product.  Federal courts have consistently held that such
information regarding discovery conduct is, and must be discoverable.  The
Discovery Master overruled Mattel's privilege assertions for a few questions but
recognizing that MGA was receiving no meaningful testimony, the Discovery
Master directed MGA to simply complete its examination for a motion to compel.

MGA respectfully requests that Mattel be ordered to produce an adequately
prepared witness on topics 3-5 of MGA's July 16, 2010 Notice of Deposition.
Further, Mattel's improper assertions of privilege must be overruled and Mattel
must be compelled to provide responsive testimony.

## FACTUAL BACKGROUND

## I.   MATTEL WITHHELD KEY DOCUMENTS FOR MANY YEARS.

Mattel produced recently several key documents that it should have produced
years ago.  For example, Mattel has produced just in the last two months, numerous
documents showing that Mattel was well aware of MGA, Bratz, and Bryant's
involvement in Bratz long before it filed claims against MGA.  These documents, a

MGA'S MTC MATTEL TO PRODUCE AN
ADEQUATELY PREPARED WITNESS ON TOPICS 3-5
CV 04-09049 DOC (RNBx)

1   sampling of which are listed below, are highly relevant to MGA's statute of

2   limitations defense and were not produced in Phase 1:

3       • Produced on ***Aug. 7, 2010*** – a *February 16, 2001* email from
4   Villasenor attaching a memorandum on his visit to New York Toy Fair that
    describes *Bratz as "'Diva Starz' with a smarty attitude."* (M 1679865-884)

5       • Produced on ***Aug. 7, 2010*** – an *April 2001 memorandum on Toy Fair
6   2001 Competitive Toy Review* co-authored by Villasenor and circulated to
    "Distribution" describing Bratz as "'Diva Starz' with a smarty attitude" and
7   containing pictures of Bratz dolls and accessories, and FOB pricing for them.
    (M 1680714-811)

8       • Produced on ***Aug. 16, 2010, and Aug. 21, 2010*** – an *August 21, 2001*
9   email from Mattel VP Turetzky to Mattel SVP Jerome Bossick attaching a
    report on MGA expressing his concerns about the "similarity of [MGA's]
10  products to ours (Scooter Samantha, *Bratz*, and One Man Jam DJ Mixer)",
    describing Bratz as "[b]earing significant resemblance to Diva Starz in both
11  appearance and attitude (even website has some similarity)" and identifying
    Isaac Larian as the President and one of the founders of MGA. (M 1679865-
12  867 and M 1743104)

13      • Produced on ***October 1, 2010*** – a *February 21, 2002* email from Tyler
    Snyder to multiple Mattel recipients including Joe Franke, Ivy Ross,
14  Turetzky, with the subject line of "Bratz (MGA) update" describing that
    Mattel employees Carey Plunkett and Tyler Snyder "walked the MGA
15  showroom" and disclosing MGA's planned offerings for Bratz in 2002. (M
    1829187-88)

16      • Produced on ***May 21, 2010*** – a *February 20, 2002* fax from Mattel VP
17  of Design Joe Franke to Mattel's chief IP counsel Michelle McShane
    regarding "potential litigation." The fax was a resume of Mercedeh Ward, a
18  former Mattel employee who left Mattel on October 14, 2000 and worked at
    MGA from October 2000 until February 2001. The handwritten notation in
19  the top right corner of the fax cover reads "DIVA/SASSY". (M 1512360-62)

20  These 2001/2002 emails and documents establish Mattel's knowledge about MGA

21  and Bratz years before it filed this lawsuit and are directly relevant to MGA's

22  statute of limitations defense.  Mattel's withholding of these documents is

23  particularly egregious because the Court ordered Mattel to produce documents

24  related to MGA's statute of limitations defense in Phase 1.  Dkt. # 989 at 6-7, 17.

25  These documents show that Mattel did not comply.

26      Mattel has also recently produced numerous toy fair reports replete with

27  information about MGA and MGA products and numerous documents related to its

28

MGA'S MTC MATTEL TO PRODUCE AN
ADEQUATELY PREPARED WITNESS ON TOPICS 3-5
CV 04-09049 DOC (RNBx)

1   employees and contractors spying on competitors' showrooms at toy fairs including

2   at MGA, a sampling of which are listed below:

3   • Produced on ***Sep. 9, 2010*** - a January 13, 2003 email from Sal Villasenor to Mattel executives including Matthew Bousquette discussing his

4   trip to Hong Kong Toy Fair and his obtaining of competitors' price lists including MGA's. (M 1759141-9142)

5   • Produced on ***Aug. 16, 2010*** - an undated mail from Villasenor asking

6   if others at Mattel had a "wish list" of what information they would like from their competitors including from MGA from the upcoming New York Toy

7   Fair (M 1700487)

8   • Produced on ***Aug. 7, 2010*** – numerous toy fair reports containing information about MGA and MGA products including Bratz. (M 1679958-

9   0047, M 1680048-M 0093, M 1679865-884, M 1680525-713, M 1679885-922, M 1695187-238)

10  • Produced on ***September 1, 2010*** – a March 12, 2003 email from

11  Villasenor to Mattel executives including Matt Bousquette forwarding Sharon Rahimi's email enclosing pictures of Bratz Stylin' Collection which

12  was not in MGA NY showroom or press release. (M 1748721-723)

13  • Produced on ***Aug. 7, 2010*** - a December 22, 2005 email from Villasenor to Mattel representatives expressing his concerns about Mattel's

14  directives to gather market intelligence from competitors through unlawful means at trade shows and events and his exposure to personal criminal

15  liability. (M 1679755)

16  These documents establish Mattel's practice of its employees and contractors

17  entering competitors' showrooms including MGA's using false pretenses and are

18  relevant to MGA's unclean hands defense.  Yet, they were withheld until recently.

19  Mattel's recently produced documents include a number of documents from

20  the custody of Matthew Bousquette.  For example, the January 13, 2003 email from

21  Villasenor to Bousquette (M 1759141-9142) and the March 12, 2003 email from

22  Villasenor to Bousquette (M 1748721-723) discussed above were both produced

23  from Mr. Bousquette's custody on September 9 and September 1 respectively.  In

24  all, Mattel has produced documents from Mr. Bousquette's custody at least five

25  times since March 2010 when Mattel assured the Court that it had produced all

26  documents from Mr. Bousquette.  *See* 3/9/2010 Hearing Tr. at 19-24 ("We have –

27  we have searched the Matt Bousquette hard drive that we have.  We used search

28  terms and reviewed everything that was returned for responsiveness, and we have

produced those"). At the hearing, the Court specifically asked Mattel how the Bousquette documents were being searched and urged Mattel to make sure that it had done a complete search. The Court further cautioned Mattel about the adverse inference that would attach to any newly discovered emails from Bousquette:

> Mattel – I'm sorry, MGA has been seeking emails from – or for the deposition in Chicago, and the Court had strongly urged Mattel to make absolutely certain that these are the extent of their hard drive search. I want to hear your efforts in a few moments, but *the adverse inference would be if there was newly discovery e-mails, that this is a consciously withheld document by Mattel*" … be very careful, because you're binding yourself to your statements tonight.

*Id.* at 9:7-18. Yet, Mattel failed to produce key documents from Mr. Bousquette's custody that are highly relevant to MGA's statute of limitations and unclean hands defense.

## II.    TOPICS 3-5 OF MGA'S NOTICE OF DEPOSITION SEEKS TESTIMONY ON MATTEL'S PRESERVATION, COLLECTION AND PRODUCTION OF DOCUMENTS.

On July 16, 2010, MGA served Mattel with its Second Amended Notice of Deposition of Mattel in Phase 2, pursuant to Federal Rule of Civil Procedure 30(b)(6). Declaration of Sugithra Somasekar In Support of MGA Parties' Motion to Compel Mattel to Produce a Prepared 30(b)(6) Witness on Topics 3-5 of MGA's Second Amended Notice of Deposition of Mattel, Ex. 1. Topics 3-5 of the deposition notice sought information related to Mattel's preservation, collection, and production of documents in this litigation, including the storage devices searched, and those that were not searched, Mattel's search methods, Mattel's collection and searches with respect to sixty eight specific individuals, and Mattel's efforts to delete any document originating from MGA. *Id*. at 7-9. Mattel did not seek a protective order or attempt to limit the scope of topics 3-5.

Mattel produced Ms. Vicky Cerrito on September 22 as its designated witness. As Ms. Cerrito was not sufficiently familiar with the topics to provide meaningful testimony, the Discovery Master ordered Mattel to produce an

1    adequately prepared witness by October 4.  Discovery Master Order # 102.  Mattel

2    produced Philip Moore on October 4.

3                                          **ARGUMENT**

4    **I.     MR. MOORE WAS WOEFULLY UNPREPARED.**

5            When Mattel designated Mr. Moore, it was obligated to prepare him "to the

6    extent matters are reasonably available, whether from documents, past employees,

7    or other sources."  *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996);

8    *International Assn. of Machinists and Aerospace Workers v. Merner-Masuda*, 390

9    F.Supp.2d 479 (D. Md. 2005).  This means Mattel was "obligated to produce one or

10   more witnesses who were thoroughly educated about the noticed deposition topics

11   with respect to any and all facts known to [Mattel] or its counsel, regardless of

12   whether such facts are memorialized in work product documents or reside in the

13   minds of counsel." *In re Vitamins Antitrust Litigation*, 216 F.R.D. 168 172 (D.D.C.

14   2003).

15           Mr. Moore was woefully unprepared.  For example, he had not investigated

16   and did not know whether the Enterprise Vault System, which had was

17   implemented for preservation and collection of documents in this litigation had

18   been searched for responsive documents.  10/4/2010 Moore Depo. at 47:23-48:7,

19   66:25-67:5.  As another example, he did not know when Mattel had collected or

20   preserved various media including hard drives or when they had been searched.  *Id.*

21   at. 49:11-18.  In all, he answered that he did not know the answer over 110 times

22   and Mattel asserted attorney-client and/or work-product privilege over 80 times.

23   *See* Argument § III *infra* for specific examples and a list of questions.  He was also

24   unable to answer several of the same questions posed to Ms. Cerrito though the

25   Discovery Master had specifically ordered Mattel to produce a knowledgeable

26   witnesses who could answer MGA's questions as "Mattel is aware of the specific

27   questions and areas of inquiry sought by MGA (based on MGA's questioning of

28   Ms. Cerrito)[.]" Discovery Master Order. No. 102.  For example, Ms. Cerrito did

1    not know when the various electronic media such as hard drives had been collected

2    or searched for production.  9/21/2010 Cerrito Depo. at  61:22-62:17, 64:1-65:14.

3    Mr. Moore was not prepared to answer these questions either.  *See* Argument §

4    III.C *infra*.

5    **II.**    **<u>MATTEL'S OBJECTIONS BASED ON ATTORNEY-CLIENT AND</u>**

6    **<u>WORK-PRODUCT PRIVILEGE ARE IMPROPER AND MUST BE OVERRULED.</u>**

7    Compounding Mr. Moore's inadequate preparation, Mattel further limited his

8    testimony through its improper objections based on attorney-client privilege and

9    work-product.  Topics 3-5 seek testimony on Mattel's discovery conduct.  It is well

10    established that information about discovery conduct is, and must be, discoverable

11    for purposes of establishing whether a party has complied with its discovery

12    obligations. Thus, federal courts have compelled parties to disclose their search

13    procedures, search methods, the keywords used in their search, and the

14    qualifications of individuals who selected the keywords to demonstrate that they

15    have satisfied their discovery obligations.  *See e.g.*, *Smith v. Life Investors Ins. Co.*

16    *of America*, 2009 WL 2045197, *7 (W.D.Pa. 2009)(compelling disclosure of search

17    terms despite assertion of work product privilege); *Wingnut Films, Ltd. v. Katja*

18    *Motion Pictures Corp.*, 2007 WL 2758571, at *14 (C.D. Cal Sep 18,

19    2007)(defendant failed to demonstrate reasonableness of search for documents

20    where "no witness can say with any degree of certainty what individuals searched

21    their own email files or how any of those searches were conducted"); *Victor*

22    *Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008)(defendants

23    failed to meet burden of demonstrating reasonableness of document search where

24    they "neither identified the keywords selected nor the qualifications of the persons

25    who selected them to design a proper search); *see also Victor Stanley, Inc. v.*

26    *Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008)("Parties should expect that

27    their choice of search methodology will need to be explained, either formally or

28    informally, in subsequent legal contexts (including in depositions, evidentiary

1   proceedings, and trials.)")(*quoting Sedona Conference Best Practices Commentary*
2   *on the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona
3   Conf. J. 189, 194-95).

4        Mattel repeatedly asserted attorney-client and work-product privilege for
5   questions related to its discovery conduct that clearly called for unprivileged
6   information. *See* Argument § III *infra* for a list of questions. This is contrary to not
7   only established law, but also inconsistent with numerous positions taken
8   previously by Mattel. For example, Mattel has repeatedly argued that the keywords
9   used for searches for production are not privileged. 3/9/2010 Hearing Tr. at 11:21-
10  15 ("The bottom line is that keywords that are used for searches for a production
11  should not in fact be shrouded in privilege"), 12:1-6. And, the Court agreed with
12  Mattel and found that keywords are not privileged. *Id.* at 14:10-12 ("Legally, I am
13  having a difficult time understanding why this is attorney work product or
14  privileged").

15       Indeed, MGA was ordered to disclose the keywords it has used in its
16  collection and production. Dkt. # 8840 at 7 (requiring "MGA to identify, with
17  specificity, each hard drive, hard drive imaged, archived "My Documents" folder,
18  and any other ESI repository it has searched for documents responsive to discovery
19  requests propounded by Mattel, and the search terms utilized in implementing that
20  each of those searches"). In response, MGA provided a detailed response,
21  including:

22      •    the names of individuals from whom the computer forensics vendor
23  collected electronic data and storage media, the type of data collected, *date*
24  *the laptop or desktop was imaged by the vendor for collection*, whether any
25  stored or archived email PSTs were collected;

26      •    the specific network folders that were imaged by the forensics vendor
27  and the *date of imaging*; and

28      •    The *list of keywords* used in keyword searches.

1  *See* Second Supplemental Response of MGA, MGA De Mexico & MGA Hong

2  Kong to Mattel's Supplemental Set of Interrogatory, No. 66) at 8-15; 21-26; 26-29,

3  Ex. C.  This is the same information that MGA seeks from Mattel.

4  **III.   MATTEL SHOULD BE COMPELLED TO PROVIDE RESPONSIVE**
   **ANSWERS TO QUESTIONS IT HAS REFUSED TO ANSWER.**

5

6     **A.   Mattel Should be Compelled To Produce The Keywords Used For**
          **Preservation, Collection And Production Of Documents.**

7        Keywords used for preservation, collection, or production are discoverable

8  and not protected by the attorney-client or work-product privilege.  *See* Argument,

9  § II *supra*.  Mattel has demanded and MGA has produced the keywords it used in

10  its discovery.  *Id.*  Further, with regard to the IMSS security tool used by Mattel to

11  capture and preserve emails in this litigation,[1] the Court has already ruled that

12  Mattel has waived any privilege in the keywords used in Mattel's IMSS email filter

13  tool by partially disclosing it.  Dkt. # 7594; 10/5/2010 Moore Depo at 100:10-

14  101:7.

15        Several documents produced recently by Mattel (*See* Statement of Facts, § I

16  *supra*)  suggest that Mattel has been engaged in a pattern of deliberate suppression

17  of evidence.  *See* Dkt. # 8583 at 4.  These documents replete with words "MGA" or

18  "Bratz" should have been collected by Mattel's keyword searches and MGA is

19  entitled to know what keywords Mattel used to search for responsive documents

20  and whether Mattel excluded any documents based on certain keywords.

21  Accordingly, Mattel must be compelled to provide a list of keywords it has used to

22  preserve, collect or produce documents and answer the following questions:

23     Q:  What search terms were used [during collection of emails reflected in Ex.
          9642]?

24     A:  [Instruction not to answer based on A-C and/or W-P privilege]

25

---

26  [1] IMSS is a email filter implemented at Mattel in late 2003 to monitor and capture
emails coming in and going out of Mattel based on keywords filtering.  10/5/2010

27  Moore Depo. at 98:20-100:4.  The emails captured by the IMSS security tool were
saved in mailboxes called Legal, which was replaced by mailbox called TMS,

28  which was later replaced by two mailboxes called Bunion and Donahue.  *Id.* at
103:24-107:1.

10/4/2010 Moore Depo. at 68:10-17, 69: 61:21.  Mattel's objection was overruled by the Discovery Master.  *Id.* at 72:4-73:4, 73:11-19.  Mattel has not objected to the Discovery Master's ruling.

> Q:  What were those keywords [used in filtering email at the IMSS for preservation of documents]?
> A:  I don't' know.  [Instruction not to answer based on A-C and/or W-P privilege]

10/5/2010 Moore Depo. at 100:1-21. Mattel's objection was overruled by the Discovery Master.  *Id.* at 100:7-21.  Mattel has not objected to the Discovery Master's ruling.

> Q:  What were the keywords used for those searches [searches of Mattel's mailboxes that captured the emails filtered by the IMSS security tool and searches of Mattel's emails]?
> A:  [Instruction not to answer based on A-C and/or W-P privilege].

10/5/2010 Moore Depo. at 112:17-22; *see also* 111:5-17 (Mattel has searched emails using keywords), 109:18-24 (Mattel has searched the IMSS email boxes Legal, TMS, Bunion, or Donahue for responsive documents).

> Q:  Okay.  For example, Did Mattel use the keyword "MGA" looking for documents that may have originated with MGA when it searched its electronic materials for collection purposes?
> A:  [Instruction not to answer based on A-C and/or W-P privilege].

10/5/2010 Moore Tr. at 196:7-21.

> Q:  Okay. As part of that searching process, was the keyword "MGA" used??
> A:  [Instruction not to answer based on A-C and/or W-P privilege].

10/5/2010 Moore Tr. at 198:8-13, 200:2-14 (refusing to withdraw objection).

> Q:  Has the keyword "MGA" been used on Mattel's exchange servers or any subset thereof in an effort to search for, identify, locate or preserve documents originating from MGA?
> A:  [Instruction not to answer based on A-C and/or W-P privilege]
> Q:  For any exchange server that has been in operation at Mattel at any time has Mattel searched all or any portion of it using the keyword "MGA" in order to identify, locate, or preserve documents that may have originated from MGA?
> A:  [Instruction not to answer based on A-C and/or W-P privilege]

1  10/5/20010 Moore Tr. at 205:13-206:7

2      Q:  Was the Enterprise Vault searched using the keyword "MGA" – an effort
       to locate documents that may have originated from MGA?
3      A:  [Instruction not to answer based on A-C and/or W-P privilege]

4      Q:  Was any portion of the Enterprise Vault searched for the keyword
5      "MGA" in an effort to identify, preserve, collect, or produce documents that
       originated from MGA?
6      A:  [Instruction not to answer based on A-C and/or W-P privilege]

7  10/5/2010 Moore Tr. at 209:11-210:3.

8      **B.      Mattel Should Be Compelled To Provide Testimony About Its
              Enterprise Vault System.**
9

10     The Enterprise Vault System is an archival system that captures all email in

11 the El Segundo location and saves it to a database.  10/4/2010 Moore Depo. at 5-22.

12 It captures all internal email within Mattel and all external emails from and to

13 Mattel on a real time basis without any limitation.  *Id.* at 21:5-22:5, 47:2-21.  The

14 Discovery Accelerator is the front end of the Enterprise Vault System and it allows

15 for specific searches of the emails in it.  *Id.* at 5-22, 64:10-20.

16     Mattel implemented the Enterprise Vault System in 2008 to preserve, search

17 for, and collect, or produce documents in connection with this litigation.  *Id.* at

18 23:9-11, 24:18-21, 42:25-43:4, 44:2-7.  Yet, Mr. Moore did not do anything to

19 investigate whether the Enterprise Vault system had been searched for responsive

20 documents in this litigation.

21     Q:  Did you investigate whether the Enterprise Vault had been searched for
22     documents in connection with litigation?
       A:  No I did not.
23
   *Id.* at 48:14-17.
24

25     Q:  What did you do to investigate whether Mattel has searched Enterprise
       Vault for documents in connection with this litigation?
26     A:  I did not do anything specifically to investigate the search of Enterprise
       Vault.
27

28 *Id.* at 66:16-23.  Mr. Moore testified that he was personally aware of one instance

- 11 -

where the Enterprise Vault had been searched  by the Special Master, but he had not investigated and did not know whether the Enterprise Vault, which had been implemented for preservation and collection in this litigation was searched for responsive documents.

> Q:  Has Enterprise Vault been used to search for documents in connection with this litigation?
> A:  I am only personally aware of one particular instance.
>
> Q:  Prior to August [of 2010], did anyone search Enterprise Vault for documents in connection with this litigation?
> A:  [Instruction not to answer based on A-C and/or W-P privilege]
>
> Q:  Are you aware of whether Enterprise Vault – apart from the searches by the discovery master in August, are you aware whether Enterprise vault has ever been searched by Mattel in connection with this litigation?
> A:  No.

10/4/2010 Moore Depo. at 24:22-25:14, 66:25-67:5.

Mattel must be compelled to produce testimony on its Enterprise Vault System, including when and how many times it has been searched for responsive emails, the keywords used in searching for responsive documents, any keywords used to withhold documents, and the custodians whose email boxes have been searched each time.

**C.**   **Mattel Should Be Compelled To Provide The Dates It Collected or Imaged Hard Drives And Collected Emails From Its Custodians.**

At Mr. Moore's deposition, Mattel produced a chart (Depo. Ex. 9642) listing the names of former and current Mattel employees whose hard drives and emails Mattel has preserved in this litigation.  Mattel's chart did not provide the date on which the hard drive or emails had been collected for each individual, nor could Mr. Moore provide this information.  10/4/2010 Moore Depo. at. 49:11-18.  Several documents produced recently by Mattel (*See* Statement of Facts, § I *supra*)  suggest that Mattel has been engaged in a pattern of deliberate suppression of evidence.  *See* Dkt. # 8583 at 4.  These documents replete with words "MGA" or "Bratz" should

have been collected by Mattel's searches and MGA is entitled to know when Mattel collected or imaged the hard drives or email boxes and when searches were run for responsive documents.  Mattel should be compelled to provide testimony or produce a chart showing when the materials identified in Ex. 9642 was collected. Mattel has previously demanded of MGA this information (Crisanti Depo. Tr. at 1722:16-1723:20) and MGA has provided it. *See* September 28, 2919 Letter from Molinski to Corey.  Similarly, Mattel should be compelled to produce the dates on which the materials identified in Ex. 9642 were collected and answer the following questions:

> Q:  When did [the imaging of hard drives for purposes of document processing in connection with this litigation] occur?
> A:  [Instruction not to answer based on A-C and/or W-P privilege]

10/4/2010 Moore Depo. at 11:6-12:8.

> Q:  But, what was the scope of [the email] collection [in Ex. 9642]?  In other words, you've got a live server and you're collecting somebody's email inbox. Did you capture everything or some subset of the material?  What exactly was done?
> A:  I don't know.

10/4/2010 Moore Depo. at 68:2-8.

> Q:  And, it says that Mr. Villasenor's hard drive was collected, correct?
> A:  Correct.
> Q:  When?
> A:  [Instruction not to answer based on A-C and/or W-P privilege]

10/4/2010 Moore Depo. at 49:24-50:1.  Mattel's objection was overruled by the Discovery Master.  *Id.* at 49:24-50:1.  Mattel has not objected to the Discovery Master's ruling.

> Q:  Looking at Ex. 9642, with respect to Mr. Bossick, when was Mr. Bossick's hard drive collected?
> A:  I don't' know.

> Q:  I believe the last question was when were any of Mr. Bossick's email collected?
> A:  [Instruction not to answer based on A-C and/or W-P privilege]

Q:  Do you know all of the dates .. upon which Mr. Bossick's emails were collected?
A:  No.

Q:  When was Mr. Bossick's personal network share collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege]
…
A:  No, I don't [know].

10/5/2010 Moore Depo. at 119:21-24, 121:7-22, 123:12.

Q:  Now, When was Mr. Bousquette's hard drive collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege]

Q:  Do you know when Mr. Bousquette's hard drive was collected?
A:  No.

Q:  Okay. Do you know when Mr. Bousquette's emails were collected from any source?
A:  I know some. [Instruction not to answer based on A-C and/or W-P privilege]

10/5/2010 Moore Depo. at 123:14-124:25.

Q:  When was Mr. Eckert's hard drive collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege]

Q:  All right.  And, when were any of Mr. Eckert's emails collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege]

Q:  Okay. But, do you actually know which sources were collected from with respect to Mr. Eckert?
A:  Not specifically, No.

10/5/2010 Moore Depo. at 128:9-130:2.

Q:  When was Mr. Franke's hard drive collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege]

10/5/2010 Moore Depo. at 130:8-13.

Q:  Can you tell me when Miss Page's hard drive was collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege]

Q:  Apart from Enterprise Vault, do you know when any of Miss. Page's emails were collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege]

10/5/2010 Moore Depo. at 141:25-144;10.

Q:  Do you know when Miss. Plunkett's hard drive was collected?
A:  [Instruction not to answer based on A-C and/or W-P privilege] No.

Q:  Okay. What dates are you aware of on which Ms. Plunkett's e-mails were

- 14 -

1    collected?

2       A:  [Instruction not to answer based on A-C and/or W-P privilege]

3  10/5/2010 Moore Depo. at 155:23-156:14.

4       Q:  Now, when was Miss. Rahimi's hard drive was collected?
        A:  [Instruction not to answer based on A-C and/or W-P privilege]

5       Q:  Do you know – do you know when Miss. Rahimi's hard drive was collected?

6       A:  No.

7       Q:  Do you know when any of Miss. Rahimi's email was collected?
        A:  Yes.

8       Q:  When was Ms. Rahimi's e-mail collected?
        A:  [Instruction not to answer based on A-C and/or W-P privilege]

9       Q:  Apart from Enterprise Vault, do you know when any of Miss. Rahimi's emails were collected?

10      A:  [Instruction not to answer based on A-C and/or W-P privilege]

11

12  10/5/2010 Moore Depo. at 160:3-161:5.

13      Q:  Do you know when Mr. Villasenor's hard drive was collected?
       (objections based on A/C and/or W-P privilege)

14      A:  No.

15      Q:  Do you know when any of Mr. Villasenor's emails were collected?
       (objections based on A/C and/or W-P privilege)

16      A:  No.

17  10/5/2010 Moore Depo. at 176:21-`77:7.

18      **D.**    **Mattel Should Be Compelled To Produce Information Related to Who Made The Decisions Regarding Preservation, Collection, and Production.**

19

20      Mr. Moore was unable to answer questions about who at Mattel made the

21  decision as to whether a particular custodian's hard drive should be preserved,

22  collected, or searched for production.  For example, with regard to the list of hard

23  drives identified in Ex. 9642, Mr. Moore could not answer who if anyone had made

24  the decision to collect a particular employee's hard drive.

25      Q:  Prior to 2006, who was the person within Mattel's IT organization, if anyone, who had responsibility for collecting or supervising the collection of data in connection with this litigation.

26

27      A:  I don't know.

28  10/4/2010 Moore Depo. at 9:10-18.

1
2
Q:  Who did that [hard drives collected prior to 2006]?
A:  I don't know who did the collection.

3
10/4/2010 Moore Depo. at 9:22-10:3.

4
5
Q:  Do you know whether it's the case generally Mr. Michael Moore was the person who made the decision about which hard drives would be collected?
A:  I don't know if he was the decision-maker.

6
10/5/2010 Moore Depo. at 15-21.

7
8
Q:  Do you know whether somebody simply made a choice not to collect [Mr. Rae's] hard drive?
A:  No, I don't.

9
10
11
Q:  Okay. And, the same question with respect to Mr. Cleary.  When he left on or about March 1, 2006 do you know whether somebody simply made a choice not to collect his hard drive?
A:  No, I don't.

12
10/4/2010 Moore Depo. at 159:10-22.

13
14
15
Q:  Who determined the content of the various Bousquette document productions [at] Mattel, including its in-house counsel, outside counsel or both?
A:  [Instruction not to answer based on A-C and/or W-P privilege].

16
17
Q:  Do you now who determined the content of the productions of Bousquette documents?
A:  No.

18
10/4/2010 Moore Depo. at 192:4-22.

19
20
21
Q:  Once documents were collected in this case who made the decisions about which of those documents would be produced to MGA, voluntary decisions?
A:  [Instruction not to answer based on A-C and/or W-P privilege]

22
23
24
25
10/4/2010 Moore Depo. at 192:23-193:4. When the exact same question was asked of Mattel's prior 30(b)(6) witness, Ms. Cerrito, Mattel did not assert any the attorney-client or work-product privilege.  9/22/2010 Cerrito Tr. at 44:19-24.  Thus, to the extent any privilege existed Mattel waived them.

26
27
28
Q:  Who made the decision about when [responsive] documents would be produced?
A:  I don't know the answer to that.
/ / /

- 16 -

10/5/2010 Moore Depo. at 119:8-19.

> Q:  Who collected documents from Sal Villasenor?
> A:  I don't know.

9/22/2010 Cerrito Tr. at 32:9-11.

> Q:  Now, who conducted the interview of Mr. Villasenor for the purpose of giving him instructions to preserve and collect data relevant to the case?
> A:  I don't know.

10/5/2010 Moore Depo. at 114:8-18.

### E. Mattel Should Be Compelled To Produce Information Related to The Hard Drives Collected By Its Client Services Team For Preservation And Collection.

Mr. Moore testified that in addition to the hard drives listed in Ex. 9642, Mattel's Client services team has also collected hard drives for preservation in this litigation and that it maintains a list of all the hard drives it has collected. 10/4/2010 Moore Depo. at 14:8-15:7, 25:8-10, 26:5-7, 35:2-6. Yet, Mr. Moore did not review the list or educate himself on when and from whose custody the hard drives had been collected.

> Q:  Did you look at the list [Client Services Team] in preparation for the deposition today?
> A:  No.
> Q:  The other list, the list maintained by the client services team, is it true – is it a true statement that you cannot tell me anything about what's on that list as you sit here today.
> A:  Correct.

10/4/2010 Moore Depo. at 35:19-23, 41:22-42:2.

> Q:  Does the list maintained by the client services [team] have dates of collection on it?
> A:  [Instruction not to answer based on A-C and/or W-P privilege]
> A:  I don't know.

*Id.* at 51:10-15. The Discovery Master overruled Mattel's privilege assertion and Mattel has not objected to the Discovery Master ruling.

Mattel must be compelled to provide the list of hard drives preserved or/and

1   collected by its client services team, the dates of such preservation or collection,

2   custodians collected from, and the types of media preserved or/and collected.

3   Mattel must also be compelled to provide testimony on if and when the hard drives

4   collected by its client services team were searched for responsive documents in this

5   litigation and any keywords used in searching for responsive documents or

6   excluding documents from production.

7        **F.    Mattel Should Be Compelled To Provide Testimony on the Carter Bryant Hard Drive It Preserved in 2004.**

8

9        In defeating MGA's motion for sanctions in Phase 1, Mattel represented that

10  it had collected and preserved a hard drive from one of the computers in Mattel's

11  design center that was possibly used by Carter Bryant.  10/4/2010 Moore Depo. at

12  52:17-53:15, 56:15-22.  Mr. Moore did not know any information about this hard

13  drive – if and where it was preserved, or if it has been searched for responsive

14  documents:

15        Q:  You don't know where that [Carter Bryant] hard drive is, correct?
          A:  No, I don't.
16        Q:  Okay. And, you don't know whether anybody's ever actually looked at it
17        to determine whether it was, in fact, used by Carter Bryant, is that correct?
          A:  I don't know.
18        Q:  And, you don't know whether anyone's ever looked at the contents of
19        that computer to see if there are documents of Carter Bryant on it; is that
          right?
20        A:  I don't know.

21
22  10/4/2010 Moore Depo. at 57:6-58:1 (objections omitted).

23        Q:  Has that machine [Carter Bryant hard drive] ever been searched for
          information pertaining to this litigation?
24        A:  I don't know.

25  10/4/2010 Moore Depo. at 55:17-20.

26        Mattel must be compelled to provide responsive testimony as to whether the

27  hard drive it preserved as possibly Carter Bryant's has been searched for responsive

28

- 18 -

1  documents, the dates of such searches, and the keywords used in searching for

2  production or withholding of responsive documents.

3  ### **CONCLUSION**

4    For the foregoing reasons, MGA respectfully asks that the Court compel

5  Mattel to provide a properly educated 30(b)(6) witness on topics 3-5.

6

7  Dated:  October 28, 2010   ORRICK, HERRINGTON & SUTCLIFFE LLP

8

9          By:   */s/ Denise Mingrone*

10           Denise Mingrone

          Attorneys for MGA PARTIES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28