ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-09049 DOC (RNBx)<br>Consolidated with:<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>**Hon. David O. Carter**<br><br>**MGA PARTIES' OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION FOR ORDER TO COMPEL DISCOVERY FROM ZAPF CREATION RE: COUNTERCLAIMS IN REPLY**<br><br>Date:   TBD<br>Time:   TBD<br>Dept:   Courtroom 9D<br><br>**Discovery Cut-off:   November 1, 2010**<br>**Trial Date:           January 11, 2011** |

## I.      INTRODUCTION

Zapf is an independent, publically traded German corporation. MGA is not authorized to accept service on its behalf.

Nor is Zapf a MGA's alter-ego, nor is MGA the "U.S. arm of Zapf," as Mattel puts it. Dkt. 8996, Mattel's *Ex Parte* Application at 3 ("Appl."). Zapf and MGA have a business relationship. MGA distributes Zapf products in the Americas and the United Kingdom and licenses certain others. This is not a merger of the two companies. This is business.

Mattel purports that it "personally served on Zapf a document subpoena on October 15, 2010, and a deposition subpoena on October 19, 2010." Appl. 6. Mattel's Application, however, is unsupported by a copy of either subpoena, or by any declaration regarding the claimed service. In fact, MGA did not accept service of either and in fact expressly refused to. *See*, Declaration of Samir Khare, ¶ 2.

Finally, Mattel's ex parte referrers to documents, all of which have been produced for months or for years. In fact, the three documents that Mattel claims were "produced in September 2010" in were actually produced three years ago, in September and October of 2007. Nor was Mattel unaware of the existence of Zapf Creation AG. In May of 2009, in its Third Amended Answer and Counterclaims, Dkt. 5607, Mattel alleged that Zapf was an instrumental piece of Isaac Larian's purported attempt "to convert at least tens of millions of dollars in MGA equity into debt." *Id.* at ¶¶ 120, 121. Yet at no time did Mattel seek to add Zapf as a party or seek discovery from it. Rather, Mattel has waited until the close of discovery to seek to compel discovery by concocting the fantasy that MGA is the alter-ego of an independent, non-party, foreign corporation and by then arguing, on 24 hours-notice, for the blatant misapplication the Federal Rules of Civil Procedure.

## II. ARGUMENT

### A. <u>Mattel's Application Has No Legal Or Factual Merit.</u>

***There Is No Basis For Mattel's Discovery.*** Mattel's Application should be denied for several reasons. First, the Application lacks a factual basis. Mattel is well aware of but disregards the fact that at this late date discovery is properly directed only at MGA's counterclaims in reply. Mattel insists, *ipse dixit*, that "MGA's eleventh-hour counterclaims put squarely at issue MGA's procedures and techniques for obtaining and disseminating information about Mattel's future products and strategies obtained at toy fairs." Appl., 1:9-12. Wrong. The counterclaims in reply place at issue *Mattel*'s sneaking into toy fairs and showrooms. The MGA Parties' alleged theft of Mattel trade secrets is the subject of Mattel's Third and Fourth Amended Answers and Counterclaims.

***Service Was Improper In Any Case.*** Second, Mattel's Application lacks a legal basis. Mattel's argument turns on the staggering claim that Fed. R. Civ. Pro. 45, which expressly governs the service subpoenas, does not address the service of subpoenas. Instead, Mattel asks the Court to look to Rule 4, which addresses the service of process. Appl., 6:21-7:6. Wrong. The lone case Mattel cites for this proposition, *In re Grand Jury Subpoenas Issued to Thirteen Corps.*, 775 F.2d 43, 46 (2d Cir. 1985), was a criminal case, mainly concerned with an individual officer's Fifth Amendment 'act of production' privilege, and did not involve any foreign corporations, much less civil discovery requests from such corporations.

In fact, there are cases that apply Rule 45 to the situation before the Court – but they *preclude* the discovery sought by Mattel. *See, e.g.*, *Linde v. Arab Bank, PLC*, 262 F.R.D. 136 (E.D.N.Y. 2009). In *Linde*, the defendant served a Rule 45 subpoena upon a New York subsidiary of an non-party Israeli bank seeking documents located in Israel held by the Israeli bank. The court concluded that the Israeli bank could not be compelled to produce the documents. The court did not turn to Rule 4's provisions regarding the service of a summons to determine

whether the Rule 45 subpoena was appropriate. *Id.* at 141; *see also In Application of Johnson & Johnson*, 59 F.R.D. 174 (D.Del. 1973) (where the court looked to Rule 45, not Rule 4, regarding the service of a deposition subpoena seeking testimony from a witness located outside of the United States).

***MGA Is Not Zapf's Agent.*** Third, Mattel claims that MGA should be treated as Zapf's agent for service of process, because MGA is in essence Zapf's local office. Appl., 6. Wrong. Mattel assumes that the two entities' close business relationship, overlapping personnel, and Zapf's reference in public documents to MGA as its U.S. "country contact," suffice to merge them for Mattel's discovery purposes. Appl., 7. But that is not the law. *See*, *e.g., Linde*, 262 F.R.D. at 144-45, rejecting service of subpoena on U.S. subsidiary to obtain documents from foreign parent:

> caselaw strongly supports the conclusion that IDB's reference to IDBNY as an "overseas office" and an "Israeli bank operating abroad" is nothing more than a general description of a global enterprise of the kind typically found in advertising that does not demonstrate the parent's control over the subsidiary's marketing and operational policies. *See, e.g., Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (references in annual report to desire to become a "truly global company" with "global operations ... contributing to the company as a whole" did not show "pervasive control over subsidiary that "mere department" standard requires); *J.L.B. Equities*, 131 F.Supp.2d at 550 (website treatment of parent and subsidiary as "one" insufficient to show control, not equivalent to a showing that parent exercises any control over subsidiary's operational or marketing operations); *Jerge*, 2000 WL 1160459, at *3 (website listing subsidiary as "one of the operating units" of the foreign parent did not bear on subsidiary's status as "mere department").

Here, MGA is not even a subsidiary of Zapf, but only one of more than thirty individual businesses around the globe identified by Zapf as "country contacts."[1]

Mattel's discovery demands to a non-party foreign corporation are absurd. Even if Zapf were a *domestic* third-party, Mattel could not obtain long distance discovery in such a short handed fashion. Rule 45(b)(2) provides for service of a

---

[1] See http://www.zpfcreation.com/en/corporate/conact/country-contacts/ [Accurate as of 10/28/2010].

1  deposition subpoena *within the district*, outside the district if *within 100 miles of the*
2  *deposition site*, or *within the state* (if state rules allow that). For *foreign* entities, the
3  Hague Convention provides for certain forms of civil discovery under specific
4  procedures – procedures that Mattel is well aware of (indeed, that it offers to follow
5  as a fallback remedy). *See* Appl., 10.

6  Moreover, Mattel's claims are predicated on the assumption that MGA and
7  Larian "have sufficient control over Zapf that they may properly be required to
8  exercise that control to obtain discovery from Zapf." Appl., 9:18-20. The
9  Application does not contain or cite to any such evidence, and it is patently unfair
10  to resolve that claim in the context of a ex parte application. There is simply no
11  basis to conclude that MGA's business relationship with Zapf includes such control
12  over Zapf as to compel it to produce records – let alone *personnel – from Germany*.

13  ***MGA Is Not An Alter Ego.***  Fourth, Mattel's reliance on a *sub rosa* alter ego
14  argument is equally without merit. Mattel has known about Zapf since at least the
15  filing its Third Amended Answers and Counterclaims in May 2009. Dkt. 5607,
16  ¶121 (alleging that in August 2007, "MGA made purported loans in the amount of
17  2.5 million euros for investments in another toy company, called Zapf, purportedly
18  on behalf of Larian and his family"). Although Mattel has had some 18 months to
19  conduct discovery about Zapf, it waited until October 15, 2010 to serve a subpoena
20  – and now wishes to establish the purported alter ego relationship between Zapf and
21  MGA *on twenty-four hours' notice*. An alter ego claim is a complicated, case-
22  specific issue and an ex parte proceeding is hardly the appropriate means to resolve
23  it. *See also Johnson & Johnson*, 59 F.R.D at 178 ("Johnson & Johnson has cited no
24  authority nor has the Court discovered any which permits a corporate veil to be
25  pierced for the purpose of Rule 45. The court declines to take this novel
26  approach.")

27  In any event, Mattel's Application does not allege a true alter ego
28  relationship; it merely alleges a close relationship between two companies. But

Mattel provides no authority for the proposition that such a relationship justifies jettisoning the federal rules controlling how discovery can be obtained from foreign entities. Both *Cascade Steel Rolling Mills, Inc. v. C Itoh and Co. (America), Inc.*, 499 F. Supp. 829, 839-40 (D. Or. 1980), and *Massey-Ferguson Ltd. v. Intermountain Ford Tractor Sales Co.*, 325 F.2d 713, 714 (10th Cir. 1963), dealt with service of process in the context of Clayton Act antitrust suits. In these cases, service was found proper not because the foreign and domestic entities had "interlocking personnel" or because they were "strategic partners," Appl., 8, but because the domestic companies were corporate alter-egos wholly owned and controlled by their foreign masters. *Cascade*, 499 F. Supp. 829 at 839-40; *Massey-Ferguson*, 325 F.2d at 714. In *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 2009 WL 1788381 at *1 (W.D. Wash 2009), the court deemed an American company the agent for service of process for a Chinese corporation not merely because a business relationship existed between the domestic company and foreign corporation, but rather because the company had been authorized to represent the interests of the Chinese corporation in litigation and because the principals of the two companies were married.

### B. Mattel's Request That Zapf Produce Documents Because MGA Failed to Object To Discovery Lacks Merit.

As a fallback argument, Mattel asks that the Court find that Zapf, "as an affiliate and partner of MGA acting on its behalf, falls within the definition of 'YOU' and 'MGA' set forth by Mattel in its discovery requests." Appl., 8:22-24. Mattel is not merely asking for Zapf documents in MGA's possession or control; it seeks documents from *Zapf*, *i.e.* in *its* possession. Appl., 8:25, 9:11-12. Indeed, Mattel wants discovery responses "as though they were separately propounded to Zapf." Appl., 9:9-12. This is a sleight of hand. The discovery requests on which Mattel relies were served on *MGA*, not Zapf. There is no evidence that *Zapf* ever adopted (by silence or otherwise) Mattel's broad definitions of 'YOU' and 'MGA.'

Moreover, MGA expressly objected to Mattel's definition of "YOU" in its response to Mattel's August 25, 2010 Requests for Production "as vague, ambiguous, overbroad and unduly burdensome."  MGA further stated that "MGA will interpret the terms 'YOU,' 'YOUR,' 'MGA,' and 'PERSON' to refer to MGA and any subsidiaries, agents, officers, directors, and employees acting at its direction."  Zapf is none of these.

### C. Mattel Has Run Out Of Time To Pursue Hague Convention Procedures.

Mattel's second fallback request is that it be permitted to pursue the Hague Convention procedures and obtain discovery from Zapf in Germany – in conjunction with a suspension of the November 1, 2010 discovery cutoff.  Mattel acknowledges that application of the Convention "can take several months . . . ." Appl., 10:14.  It offers no reason to believe that it could obtain discovery from Zapf through the Convention in time for use at trial, which is barely more than two months away.  And it provides no explanation for its failure to resort to the Convention's procedures during the (at least) 18 months that it has known of Zapf's relationship to MGA and Mr. Larian.  Given—to put it charitably—Mattel's "thorough" discovery plan in this matter, the belated focus on Zapf is unreasonable.  It does not warrant an exception to the discovery cutoff date.

### D. Mattel Has, In Any Event, Run Out Of Time To Depose Witnesses.

Finally, Mattel has literally run out the clock on its depositions.  The Court granted Mattel an additional 25 hours of deposition time.  Mattel has since expended a full day on Patrick Potgiesser, a full day on Lisa Saunders, and will depose Gustavo Machado on Monday, November 1.  Mattel literally has no time left to conduct a deposition of any Zapf representative, even if such deposition were proper.

Nor is there any need to.  Thus far, Mattel's fishing expeditions have at least been restricted to territorial waters.  By its *ex parte* motion, Mattel now seeks to sail

to Germany to see if the fishing is any better across the pond.  This is as unnecessary as it is improper: if there were any evidence of wrongdoing by MGA to be found, it would be found in the mountain of production MGA has produced in this case.  Instead, Mattel has less than a handful of documents that entirely fail to support it allegations.

### III.   CONCLUSION

Based on the foregoing, MGA respectfully requests that the Court deny Mattel's ex parte application.

Dated:    October 28, 2010         ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  /s/  Warrington S. Parker III
        Warrington S. Parker III
        Attorneys for MGA Parties