1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
5  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
6
7  Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

8                  UNITED STATES DISTRICT COURT
9                 CENTRAL DISTRICT OF CALIFORNIA
10                      SOUTHERN DIVISION

| | |
|---|---|
| 11  MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity, | CASE NO. CV 04-9049 DOC (RNBx) |
| 13 | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 14              Plaintiff, | Hon. David O. Carter |
| 15          vs. | MATTEL, INC.'S REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER TO COMPEL DISCOVERY FROM ZAPF CREATION RE: COUNTERCLAIMS IN REPLY |
| 17  MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| 19              Defendant. | AND APPENDIX. |
| 20  AND CONSOLIDATED ACTIONS | Hearing Date: TBD Time: TBD Place: TBD |
| 22 | Pre-trial Conf: January 4, 2011 Trial Date: January 11. 2011 |

00505.07975/3751344.1

**Preliminary Statement**

As Mattel has shown, MGA and Zapf have entered into a multi-faceted strategic partnership.  MGA presents no facts in response.  It does not dispute that Larian is majority owner of Zapf nor that he holds its outstanding debt.  It does not dispute Mattel's pages of evidence about what are, in effect, consolidated operations by both companies.  And try as it might, MGA cannot avoid that its own counterclaims in reply have put squarely at issue the joint efforts of MGA and Zapf to infiltrate Mattel toy fair showrooms.

MGA's argument is that, notwithstanding all of this, Mattel simply cannot obtain discovery from Zapf.  This is not the law.  Mattel is not required to show alter ego in order to have validly served Zapf.  On the unrebutted record set forth in Mattel's moving papers, there can be no doubt that MGA and Zapf are sufficiently intertwined that Zapf should be deemed to have received adequate notice, which is what the <u>Federal Rules</u> require.  Mattel's application should be granted.

**Argument**

**I.    MGA AND ZAPF'S CONDUCT AT TOY FAIRS IS AT ISSUE**

MGA's lead argument is that the only subject appropriate for discovery is "Mattel's sneaking into toy fairs and showrooms." (Opp. at 2:9-11).  The contention is frivolous, and the Court has rejected it as recently as yesterday.  As explained in the Court's most recent order, the conduct of MGA and Zapf at toy fairs is "relevant to Mattel's unclean hands defense and is also relevant to whether MGA considered the information at its showrooms confidential."[1]   The discovery sought by Mattel from Zapf "might lead a fact-finder to conclude that the activities by Mattel's market

---

[1]   Order Granting in Part and Denying in Part Mattel's Ex Parte Application dated October 28, 2010, Docket 8991 at 1.

intelligence group were so commonplace that no toy manufacturer considered the information in its toy showrooms to be a trade secret."[2]

Interestingly, when MGA opposed Mattel's prior ex parte application it sought to shift responsibility for its actions to Zapf, claiming that the Angelika Sternberg email and attached report regarding Mattel's 2008 Nuremberg Toy Fair showroom "relates to the activities of an MGA German distributor, Zapf."[3]  Now MGA argues that Mattel is powerless to obtain discovery from the entity at which MGA pointed its finger, despite the copious, unrefuted evidence that Zapf is a Larian-controlled vehicle that has been effectively consolidated with MGA.

## II.    MATTEL'S SERVICE OF ZAPF WAS FAIR AND SUFFICIENT

MGA describes Mattel's argument as being based on a "staggering claim" that the service of process requirements in Fed. R. Civ. Proc. 4 inform the determination of what constitutes personal service on a corporation for purposes of Fed. R. Civ. Proc. 45 subpoenas.  (Opp at 2:14-17).  Mattel's "staggering claim" is based on case law and the leading treatise.  See Aristocrat Leisure Ltd. v. Deutsch Bank Trust Co. Americas, 262 F.R.D. 293 (S.D.N.Y. 2009) ("Because Rule 45 does not specify what constitutes personal service upon a corporation, courts look to Fed. R. Civ. P. 4 for guidance"); In re Pappas, 214 B.R. 84 (Bankr. D. Conn. 2007) (identical quote); Moore's Federal Practice ¶ 45.21[1] (3d ed. 2009) ("When a subpoena is to be served on a corporation . . . the concept of 'personal' service is somewhat obscured, because the entity is not a 'person' on whom service can be directly made.  Accordingly, service of a subpoena on an artificial entity may be made by using the analogous method for service of process on that entity under Rule 4").

---

[2]   Id. at 2.
[3]   MGA Parties' Opposition to Ex Parte Application for Order to Compel Discovery of Former MGA Personnel Files dated October 27, 2010 at 1:7-9 (Docket 8988).

MGA does not dispute that pursuant to Fed. R. Civ. Proc. 4, service is sufficient where it is made upon one "who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, 840 F.2d 685, 688 (9th Cir. 1988). Accordingly, "service can be made upon a representative [of a corporation] so integrated with the organization that he will know what to do with the papers." Id. The same guidance applies to Fed. R. Civ. Proc. 45 subpoenas.

Mattel's two subpoenas were served on Zapf at MGA's offices. MGA's tightly integrated relationship to Zapf renders it fair, reasonable and just to imply the authority on MGA's part to receive service. MGA, not Mattel, has unfettered access to information about its relationship with Zapf. Mattel has presented facts from the publicly available Zapf documents that demonstrate a relationship between Zapf and MGA close enough to render it fair, reasonable and just to imply the authority on MGA's part to receive service. This is based on, *inter alia*, Larian's ownership and control of both companies, the companies' effective consolidation of operations, down to the sharing of employees, directors and offices, their non-compete agreements, MGA's control of the creation and manufacture of Zapf's merchandise, and Zapf's responsibility for MGA's logistics operations.

MGA does not dispute Mattel's facts. MGA offers no facts of its own to rebut Mattel's showing that it is fair, reasonable and just to imply that MGA has the authority to receive service on behalf of Zapf. Instead, MGA argues it is not Zapf's alter ego or formally designated agent. Mattel does not have sufficient information to take a position on these questions because that information is in MGA's control, but they are immaterial in any event. Cases such as Direct Mail Specialists and United Food & Comm. Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984), hold that service is proper, even if made on those who are not alter egos or designated agents, provided that the actual recipient knows what to do with the papers, and the named recipient receives adequate notice and does not suffer any undue prejudice.

1    MGA fails to distinguish Mattel's cases wherein service on a foreign corporation

2    was deemed permissible and complete through service to an affiliated United States

3    entity.  Neither <u>Cascade Steel Rolling Mills, Inc. v. C. Itoh and Co. (America) Inc.</u>, 499

4    F. Supp. 829 (D. Or. 1980), nor <u>Massey-Ferguson Ltd. v. Intermountain Ford Tractor</u>

5    <u>Sales Co.</u>, 325 F.2d 713 (10th Cir. 1963), found the domestic and foreign companies to

6    be "alter-egos," nor did these cases find that the domestic companies were "wholly

7    owned and controlled by their foreign masters," as MGA claims.  (Opp. at 5:6-10).

8    The court found service adequate in both cases (and in <u>Cascade</u>, jurisdiction and venue

9    as well), because of common ownership, frequency of contacts between the foreign and

10   domestic entities, and the business relationships between them.  In <u>Camagnolo S.R.L.</u>

11   <u>v. Full Speed Ahead, Inc.</u>, 2009 WL 1788381 (W.D. Wash. 2009), the Court declared

12   that the domestic entity was authorized to accept service on behalf of the Chinese

13   company because the Chinese company had allowed defendant to represent its business

14   interests and communicate with its customers on its behalf, and not solely or even

15   primarily because of litigation activities.  <u>Id.</u> at *1-2.  Among their multiple other ties

16   and consolidated operations, MGA represents Zapf's business interests in the United

17   States and communicates with customers of Zapf's products when it distributes Zapf's

18   products.

19        <u>Linde v. Arab Bank PLC</u>, 262 F.R.D. 136 (E.D.N.Y. 2009), also does not support

20   MGA's position.  There the court conducted a "fact-specific" inquiry and held that the

21   subsidiary did not have requisite actual or legal control over the parent company, based

22   on actual evidence submitted by the subsidiary about the separateness of the companies'

23   computer systems and each company's inability to access the other's documents.  <u>Id.</u> at

24   141-142.  MGA is the gate keeper of the documents, and offers no evidence to rebut

25   Mattel's *prima facie* showing of control.  The fact that in certain situations a subsidiary

26   may be found not to have control over its parent is hardly surprising.  But MGA has not

27   offered evidence to show it lacks control here.  The relationship between Zapf and

28

MGA includes shared offices, employees and directors, and strongly indicates that Zapf and MGA have a closer relationship than that between the banks at issue in <u>Linde</u>.

## III. MGA SHOULD NOT BE HEARD TO COMPLAIN ABOUT TIME CONSTRAINTS OF ITS OWN MAKING

MGA complains that a determination of its control over Zapf's documents and personnel is "complicated" and "case-specific," and that "an ex parte proceeding is hardly the appropriate means to resolve it." (Opp. at 4:21-23). This situation is a direct consequence of MGA's strategic decision to belatedly assert counterclaims-in-reply and its delay in producing documents showing MGA's and Zapf's unauthorized infiltration of Mattel's toy fair showrooms.

The documents showing Zapf's Toy Fair conduct relied on by Mattel in its application were not produced to Mattel in September and October of 2007, as MGA claims (Opp. at 1:15-17). Mattel's application here relies principally on the Angelika Sternberg email that stated: "Two of our colleagues have been able to enter the booth of our competitor and wrote the attached report."[4]  MGA admits this document was produced on September 3, 2010.[5]  MGA has similarly admitted that another of the key documents on which Mattel relies was produced July 24, 2010.[6]

But even assuming that Mattel had all these documents, it was MGA's counterclaims-in-reply, filed August 16, that put at issue the practices Mattel has now uncovered. As Mattel demonstrated in its reply earlier this week, the discovery stay was only lifted on October 6, 2010, and Mattel has diligently sought discovery into MGA's claims ever since. MGA's position is that it need not respond to written discovery, absent a court order, because the <u>Federal Rules</u> provide that it be given 30

---

[4]   MGA2 3120922-24.
[5]   MGA Parties' Opposition to Ex Parte Application for Order to Compel Discovery of Former MGA Personnel Files dated October 27, 2010 at 4:18-22 (Docket 8988).
[6]   <u>Id.</u>

1   days' notice.  If correct, this position would render meaningless the Court's lifting of the

2   discovery stay earlier this month and indeed render meaningless the discovery period

3   into MGA's claims permitted by the Court.  MGA should not be permitted to preclude

4   meaningful discovery here.

5   **IV.    <u>MGA ACCEPTED SERVICE OF THE SUBPOENAS</u>**

6            MGA submits with its opposition a declaration of Samir Khare stating that, with

7   respect to the October 15 subpoena, he told the process server that there was nobody

8   present at MGA's offices to accept service.  First, Mr. Khare provides no information to

9   dispute service of the October 19 subpoena, thus it should be deemed properly served.

10  Second, MGA's address for service of process is its offices at 16380 Roscoe Blvd., Van

11  Nuys, California 91406.  Mattel's process server, Israel Adeyemo of Apex Attorney

12  Services, declared under penalty of perjury that he served the subpoena by delivering

13  the subpoena to that location and to "Sam Khare, authorized to accept for MGA

14  Entertainment."   Mattel submits concurrently with its reply its proofs of service

15  showing service of the subpoenas on MGA.

16           In any event, there is no dispute MGA is well aware of Mattel's efforts to serve

17  the subpoenas on Zapf.  This is not a game.  The only issue presented by the application

18  is whether Zapf should be deemed served based on MGA's receipt.

19                                            <u>**Conclusion**</u>

20           For the foregoing additional reasons, Mattel respectfully requests that the

21  Court grant its *ex parte* application.

22  DATED:   October 30, 2010          QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
23

24

25                                     By /s/ Michael T. Zeller
                                          Michael T. Zeller
26                                        Attorneys for Mattel, Inc., and Mattel de
                                          Mexico, S.A. de C.V.
27

28

# Appendix

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   CV04-9049 DOC (RNBx)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   Zapf Creation, Inc. and Zapf Creation AG, c/o MGA Ent.

was received by me on *(date)*   10/15/2010   .

☑ I served the subpoena by delivering a copy to the named person as follows:   Sam Khare, authorized to

accept for MGA Entertainment,  16380 Roscoe Blvd., Suite 100, Van Nuys, CA 91406

at 11:50AM   on *(date)*   10/15/2010   ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   10/15/2010

*Server's signature*

ISRAEL ADEYEMO
*Printed name and title*

**APEX ATTORNEY SERVICES**
1055 WEST 7TH STREET. SUITE 1550
LOS ANGELES, CA 90017 (213) 488-1500
REGISTERED, LOS ANGELES COUNTY #3104
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  04-9049 DOC (RNBx)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   ZAPF CREATION AG, c/o MGA ENTERTAINMENT
was received by me on *(date)*   10/19/2010   .

☑ I served the subpoena by delivering a copy to the named individual as follows:   RENEE CURE,

Receptionist, authorized to accept on behalf of Zapf Creation AG and MGA Entertainment, 16380 Roscoe Blvd.,

Van Nuys,  CA                          atg 4:29PM   on *(date)*   10/19/2010   ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   10/20/2010

*Server's signature*

**ISRAEL ADEYEMO**
*Printed name and title*
**APEX ATTORNEY SERVICES**
**1055 WEST 7TH STREET. SUITE 1550**
**LOS ANGELES, CA 90017 (213) 488-1500**
**REGISTERED, LOS ANGELES COUNTY #3104**
*Server's address*

Additional information regarding attempted service, etc: