1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11    CARTER BRYANT,                    )        CASE NO. CV 04-9049 DOC (RNBx)
                                        )
12                    Plaintiff,        )
                                        )        O R D E R GRANTING MOTION
13           v.                         )        FOR NEW TRIAL; DENYING
                                        )        RENEWED MOTION TO UNSEAL
14    MATTEL, INC.,                     )        JUROR INTERVIEW
                                        )        TRANSCRIPTS
15                    Defendant.        )
                                        )
16    _____ )
                                        )
17                                      )
      AND CONSOLIDATED ACTIONS          )
18                                      )
                                        )
19    _____ )

20

21          Before the Court is MGA Entertainment, Inc. ("MGAE"), Isaac Larian ("Larian"), and

22    MGA HK Limited ("MGAHK") (collectively "MGA")'s Motion for New Trial (the "Motion").

23    Also before the Court is MGA's Renewed Motion to Unseal Juror Interview Transcripts (the

24    "Renewed Motion").  After considering the moving, opposing, and replying papers, as well as

25    the parties' oral argument, the Court GRANTS the Motion and DENIES the Renewed Motion.

26          I.     Background

27          For three summer months in 2008, Mattel, Inc. ("Mattel") and MGA tried to a Riverside,

28    California jury the issue of whether Carter Bryant ("Bryant") conceived, sketched, and/or

1   sculpted Bratz while employed by Mattel.

2   During the 2008 trial, termed "phase 1" by the district court,[1] Mattel brought six claims.[2]

3   As the district court stated, "[i]n its first claim, Mattel contends that it has certain rights to all

4   Bratz-related items, concepts, drawings, designs, and other works . . . including Bratz drawings

5   and the idea for the name 'Bratz.'" Dkt. 4115, at 22.  The jury was instructed that Mattel owned

6   "any Bratz-related idea, concept, drawing, design or work [that] was 'conceived or reduced to

7   practice,' that is, created, by Mr. Bryant, alone or jointly with others, while employed by

8   Mattel."  *Id.* at 23.  The jury found that Bryant conceived the name Bratz and the Bratz

9   characters "while employed by Mattel."  Dkt. 4125 ¶¶ 5-6.  The jury also found that Bryant

10  "conceived or reduced to practice" 76 Bratz drawings or sculpts "alone or jointly with others,

11  during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)."

12  *Id.* ¶¶ 1-4.  The jury, however, did not reach a verdict on whether four Bratz sketches were

13  created by Bryant, alone or jointly with others, during the period of Bryant's employment at

14  Mattel.  *Id.* ¶ 1.  The district court thereafter entered declaratory judgment concerning Mattel's

15  rights to the Bratz trademarks.

16  Mattel's second claim was for intentional interference with contractual relations and it

17  alleged "MGA and [Larian's] intentional[] interfere[nce] with the Inventions Agreement

18  between Mattel and Carter Bryant."  *Id.*, at 24.  The jury was instructed of Mattel's burden to

19  show, by a preponderance of the evidence:

20  (1) [t]here was a contract or contracts between Mattel and [Bryant];

21  (2) [t]hat MGA and/or [Larian] knew of the contract; (3) [t]hat MGA

22  and/or [Larian] intended to disrupt the performance of this contract;

23

24  [1] For simplicity, the term "district court" is used herein to reference the prior

25  presiding judge, The Honorable Stephen G. Larson, United States District Court for the
    Central District of California.

26

27  [2] The district court bifurcated this lawsuit, such that claims not tried phase 1 would
    be tried in a separate proceeding, termed "phase 2."  This Court has presided over phase 2

28  matters since the September 24, 2009 transfer of this lawsuit.

1     (4) [t]hat the conduct of MGA and/or [Larian] prevented

2     performance or made performance more difficult; (5) [t]hat Mattel

3     was harmed in some way; and (6) [t]hat the conduct of MGA and/or

4     [Larian] was a substantial factor in causing Mattel's harm.

5  *Id.*, at 24-25.

6     The district court also instructed the jury that as "a matter of law[,] MGA and/or

7  [Larian's] mere offering of employment to [Bryant] would not be sufficient, by itself, to

8  establish an intentional interference with the contract between Mattel and [Bryant]." *Id.*, at 26.

9  The jury found both MGAE and Larian liable for intentional interference with contractual

10  relations.  *See* Dkt. 4125 ¶¶ 7-8.

11     Mattel's third claim alleged that MGAE and Larian aided and abetted Bryant's breach of

12  his fiduciary duty to Mattel.  The district court instructed the jury of Mattel's burden to prove

13  that: "(1) [Bryant's] conduct constituted a breach of [his fiduciary duty to Mattel]; (2) MGA

14  and/or [Larian] knew that [Bryant's] conduct constituted a breach of [his fiduciary duty to

15  Mattel]; and (3) MGA and/or [Larian] gave substantial assistance or encouragement to [Bryant]

16  to breach his [fiduciary duty to Mattel]."  Dkt. 4115, at 28.  In keeping with its rulings on the

17  parties' earlier summary judgment motions, the district court instructed the jury that "[Bryant's]

18  fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is

19  related to [Bryant's] obligation to keep Proprietary Information confidential." *Id.*, at 31.  The

20  jury found both MGAE and Larian liable for aiding and abetting Bryant's breach of fiduciary

21  duty.  Dkt. 4125 ¶¶ 9-10.

22     Mattel's fourth claim alleged that MGAE and Larian aided and abetted Bryant's breach of

23  his duty of loyalty to Mattel.  The district court instructed the jury of Mattel's burden to prove

24  that: "(1) [Bryant's] conduct constituted a breach of [his duty of loyalty to Mattel]; (2) MGA

25  and/or [Larian] knew that [Bryant's] conduct constituted a breach of [his duty of loyalty to

26  Mattel]; and (3) MGA and/or [Larian] gave substantial assistance or encouragement to [Bryant]

27  to breach his [duty of loyalty to Mattel]."  Dkt. 4115, at 28.  On this claim, like the third claim,

28  the district court narrowed the issues for the jury.  The jury was instructed that "[a]s a matter of

1   law, [Bryant] owed a . . . duty of loyalty to Mattel." *Id.*, at 31.  Further, the jury was instructed

2   that "[a]s a matter of law, [Bryant] breached his duty of loyalty to Mattel when he entered into a

3   contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of

4   fashion dolls to be marketed in direct competition with Mattel's products." *Id.*, at 32.[3]  The jury

5   found MGAE and Larian liable for aiding and abetting Bryant's breach of duty of loyalty.

6          Mattel's fifth claim was for conversion, which the district court characterized as a "claim

7   that [MGAE, MGAHK, and Larian] wrongfully exercised control over Mattel's property." *Id.*,

8   at 33.  The jury was instructed of Mattel's burden to establish five elements:

9                  (1) [t]hat tangible property was 'conceived or reduced to practice' —

10                 that is, created — by [Bryant], alone or jointly with others, during

11                 the period in which he was employed by Mattel (January 4, 1999, to

12                 October 19, 2000); (2) [t]hat any of the defendants intentionally took

13                 possession of such property for a significant period of time; (3) [t]hat

14                 Mattel did not consent; (4) [t]hat Mattel was harmed; and (5) [t]hat

15                 any one of the defendant's [sic] conduct was a substantial factor in

16                 causing Mattel's harm.

17  *Id.*

18         The jury found MGAE, MGAHK and Larian liable for conversion.

19         Following the phase 1(A) verdict, the district court was informed by one of the jurors that

20  "juror no. 8 made inappropriate remarks regarding [Larian]'s ethnicity." *See* Dkt. 4238 at 2.

21  The district court conducted *in camera* interviews of the jurors, including juror number 8, and

22  found that "inappropriate comments based on [Larian's] ethnicity were made during jury

23  deliberations; that the jury foreperson and other jurors immediately admonished Juror No. 8[;]

24  that the remarks were made toward the end of the deliberation process; [and] that the remarks

25  did not influence the jury's verdict in Phase 1(a)." *Id.* at 3-4 (finding that juror number 8 stated

---

27         [3] The district court's language in the jury instruction was borrowed verbatim from
28  its summary judgment order, which granted Mattel's motion for summary judgment as to
    Bryant's breach of his duty of loyalty to Mattel.

1  during deliberations that "her husband, an attorney, has told her about client or clients who are

2  Persian and/or Iranian and who are stubborn, rude, and who have stolen other people's ideas").

3  MGAE moved for a mistrial, which the district court denied upon finding that juror number 8's

4  comments did not affect the verdict.  *Id.* at 6-12.

5       Mattel's sixth, and final, phase 1 claim was for copyright infringement.  It was tried

6  separately from the first five claims, in a proceeding entitled phase 1(B).  In addition to Mattel's

7  claim for copyright infringement, phase 1(B) also required the jury to assess (1) damages for the

8  four state law claims as to which liability had already been found; (2) punitive damages; and

9  (3) whether MGA, Larian, and MGAHK fraudulently concealed the bases for Mattel's claims for

10  intentional interference with contractual relations and conversion.  The same jury that found

11  liability in phase 1(A) deliberated on these phase 1(B) issues.[4]

12       The district court drafted and read a new slate of jury instructions pertaining to the phase

13  1(B) issues.  The jury was instructed that for Mattel to prevail on its claim for copyright

14  infringement it needed to prove by a preponderance of the evidence that "(1) Mattel is the owner

15  of a valid copyright; and (2) [t]he defendants copied original elements from the copyrighted

16  work."  Dkt. 4267, at 24.  Given the jury's phase 1(A) findings as to the timing of Bryant's

17  creation of the Bratz drawings and sculpt, the district court instructed the jury that "[a]s a matter

18  of law, [Mattel is the owner of a valid copyright] because Mattel is the owner of each of the

19  items you found were created by [Bryant], alone or jointly with others, while employed by

20  Mattel and which Mattel has registered with the U.S. Copyright Office."  *Id.*  The jury was then

21  instructed to decide whether "there are substantial similarities between the [later generations of

22  Bratz dolls] and original elements of [Bryant's drawings and sculpt]."  *Id.*, at 27.  The jury sent a

23  note asking whether it could find infringement by only the first generation of Bratz dolls, though

24  not later generations, and the district court responded in the affirmative.  MGAE, Larian and

25  MGAHK were found liable for copyright infringement, but the jury found no wilfulness by any

26  of the three defendants.  *See* Dkt. 4279 ¶¶ 5-10.  Mattel was awarded $6 million for MGAE's

27  _____

28       [4] Juror number 8 was dismissed and did not participate in phase 1(B) deliberations.

5

1  infringement, $3 million for Larian's infringement, and $1 million for MGAHK's infringement.

2  *See id.* ¶ 11.

3      As to fraudulent concealment for the already-adjudicated state law claims for conversion

4  and intentional interference with contractual relations, the district court instructed the jury of

5  Mattel's burden of proving that:

6        (1) the defendants took affirmative steps to conceal the facts that

7        could have led Mattel to discover that [Bryant] created Bratz-related

8        works while employed by Mattel or that [Bryant] entered into a

9        contract with and worked with MGA while he was still employed by

10        Mattel; and (2) Mattel was not aware of such facts that either did or

11        would have, with diligence, led Mattel to discover that [Bryant]

12        created Bratz works while employed by Mattel or that [Bryant]

13        entered into a contract with and worked with MGA while he was still

14        employed by Mattel.

15  Dkt. 4267, at 39.

16      The jury found that MGAE fraudulently concealed the bases for Mattel's claims for

17  intentional interference with contractual relations and conversion. Dkt. 4279 ¶¶ 18, 20.

18  However, the jury found that Larian did not fraudulently conceal the bases for either claim, and

19  further found that MGAHK did not fraudulently conceal the bases for Mattel's claim for

20  conversion. *Id.* ¶¶ 19, 21-22.

21      The district court instructed the jury to "reasonably compensate" Mattel for the harm

22  caused by MGAE, MGAHK, and Larian's state law violations, which were found in phase 1(A).

23  Dkt. 4267, at 41.  The jury assessed $20 million against MGAE on each of three claims for

24  (1) intentional interference with contractual relations; (2) aiding and abetting breach of fiduciary

25  duty; and (3) aiding and abetting breach of duty of loyalty. Dkt. 4279 ¶¶ 1-3.  The jury assessed

26  $10 million against Larian on each of those three claims.  *Id.*  As to conversion, the jury assessed

27  against MGAE $31,500 plus 7% interest accruing from the date Mattel's property was

28  converted.  *Id.* ¶ 4.  However, no monetary damages were imposed against either Larian or

1  MGHK on the conversion claim.  *Id.*  And the jury awarded no punitive damages, upon finding

2  that Mattel had not proven by clear and convincing evidence that MGAE, MGAHK, and Larian

3  acted with malice, oppression, or fraud.  *See id.* ¶¶ 12-17.

4       Following the phase 1(A) and 1(B) proceedings, the district court imposed "a constructive

5  trust over all trademarks including the terms 'Bratz' and 'Jade,' [and] prohibited MGA from

6  marketing any Bratz-branded product."  *See Mattel, Inc. v. MGA Entertainment, Inc.*, No. 09-

7  55673, 2010 WL 2853761, at *2 (9th Cir. July 22, 2010).  On the basis of the jury's copyright

8  infringement findings, the district court "issued an injunction prohibiting MGA from producing

9  or marketing virtually every Bratz female fashion doll, as well as any future dolls substantially

10  similar to Mattel's copyrighted works."  *Id.*

11       Pursuant to Section 3.1 of General Order 08-05, this action was transferred to this Court's

12  docket on September 24, 2009.  *See* Dkt. 6882.  On July 22, 2010, the Ninth Circuit vacated the

13  post-phase 1 equitable relief imposed by the district court in an order that was amended on

14  October 21, 2010.  The Ninth Circuit's opinion was premised upon the district court's erroneous

15  rulings that: (1) the Inventions Agreement between Bryant and Mattel, by its express terms,

16  assigned Bryant's ideas to Mattel; and (2) the Inventions Agreement between Bryant and Mattel,

17  by its express terms, assigned to Mattel Bryant's right, interest, and title to all inventions created

18  during the term of his employment, including inventions created on nights and weekends.  The

19  Ninth Circuit further found that the district court abused its discretion in issuing an overbroad

20  constructive trust, and incorrectly instructed the jury on the scope of infringement.  The

21  unanimous panel concluded that the "entire case will probably need to be retried."[5]  The Ninth

22  Circuit's mandate issued on October 26, 2010.

23       The parties submitted briefing outlining their respective positions as to the proper course

24

25  _____

26     [5] The Ninth Circuit declined to address MGA's appeal of the district court's order denying its motion for mistrial, noting that the issue was "likely moot" and "unnecessary

27  to dispose of this interlocutory appeal."  2010 WL 2853761, at *11 n. 12.  The Ninth Circuit also "decline[d] to address MGA's appeal of the district court's decisions

28  concerning the three alleged state-law violations."  *Id.*

of action in response to the Ninth Circuit's opinion.  MGA suggested that the Court vacate the phase 1 verdicts and damage awards pursuant to the "law of the case" doctrine, while Mattel suggested that the proper vehicle was a motion for new trial.  In light of the impending trial date, as well as uncertainty about the mechanism through which to apply the law of the case, the Court directed MGA to submit a motion for new trial, which MGA filed on September 1, 2010.  Dkt. 8716.

## II.    Legal Standard

Rule 59 authorizes the court to grant a new trial on some or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59.  "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990).

## III.    Discussion

Since MGA appealed from the district court's injunctive orders, the underlying summary judgment orders and jury instructions were "prior interlocutory order[s] [that] gave rise to, or decide[d] issues inextricably linked with" the central issues being appealed.  *See* Dkt. 5340.  The July 22, 2010 Ninth Circuit Order vacated the equitable relief, but did not rule on the other district court orders, except to suggest that "a significant portion—if not all—of the jury verdict and damage award should be vacated." *Mattel*, 2010 WL 2853761, at *11.  The Ninth Circuit's guidance was "that any further proceedings must be consistent with" its decision.  *Id.*

MGA moves for a new trial as to all phase 1 claims on five grounds: (1) instructional error identified by the Ninth Circuit; (2) instructional error not addressed by the Ninth Circuit; (3) the phase 1 jury's failure to reach a verdict as to the date of creation of four Bratz drawings; (4) juror bias and misconduct; and (5) newly discovered evidence and discovery misconduct by Mattel.  MGA correspondingly moves to vacate all phase 1 jury verdicts and damage awards.

### A.    Instructional Error

"[E]rroneous jury instructions, as well as the failure to give adequate instructions" are grounds for a new trial. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  The district court must vacate the jury's verdicts to remedy the identified instructional error, unless

1    "the error is more probably than not harmless." *Caballero v. City of Concord*, 956 F.2d 204, 206

2    (9th Cir. 1992) (citing *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1337 (9th Cir. 1985)).

3    "[T]he prevailing party is not entitled to have disputed factual questions resolved in his favor

4    because the jury's verdict may have resulted from a misapprehension of the law rather than from

5    factual determinations in favor of the prevailing party." *Id.* at 207.

6          Moreover, once it is determined that instructional error requires retrial of one issue, all

7    remaining issues must be retried unless "it clearly appears that the issue to be retried is so

8    distinct and separable from the others that a trial of it alone may be had without injustice."

9    *Gasoline Prods. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513 (1931) (if new jury

10   must be "advised" of issues central to determination of other claims, those claims must be retried

11   as well). Though inconvenient to the prevailing party to retry issues untainted by instructional

12   error, the common law has long disfavored the partial retrial of claims adjudicated in a single

13   trial. *Id.*

14         The district court erred by concluding that the text of Bryant's Inventions Agreement with

15   Mattel "assigned [Bryant's] ideas for the names 'Bratz' and 'Jade' to Mattel." *Mattel*, 2010 WL

16   2853761, at *2-3, 11. Although Bryant's Inventions Agreement with Mattel assigned all "right,

17   title and interest" in Bryant's inventions to Mattel, the agreement's definition of the term

18   "inventions" did not expressly list "ideas." *Id.* at *3. The district court should have looked to

19   extrinsic evidence to determine whether the agreement assigned Bryant's ideas to Mattel. *Id.*

20   And "[i]f the meaning [of 'inventions'] turns in part on the credibility of conflicting extrinsic

21   evidence, a properly instructed jury should have decided the issue." *Id.*

22         The district court also erred in instructing the jury "that the employment agreement

23   assigned works created outside the scope of Bryant's employment." *Id.* at *11. This error

24   flowed from the district court's failure to properly acknowledge, at summary judgment, an

25   ambiguity in the phrase "at any time during my employment," as found in the Inventions

26   Agreement. *Id.* at *5-6. Since extrinsic evidence "doesn't resolve the ambiguity[,] [t]he issue

27   should have been submitted to the jury, which could have then been instructed to determine []

28   whether Bryant's agreement assigned works created outside the scope of his employment at

1  Mattel." *Id.* at *6.

2         These two errors were central, significant, pervasive, and likely determinative of the

3  outcome of all phase 1 claims. They were also so intertwined with the remaining issues that a

4  miscarriage of justice may occur if they are separately retried.  A full new trial is therefore

5  required and all phase 1 verdicts and damage awards must be vacated.

## 1.      Conversion (Phase 1(A) Verdicts 13-15)

7         The parties concur that MGA's Motion should be granted as to Mattel's conversion claim.

8  *See* Mot. at 23; Opp. at 2.  The district court erroneously instructed the jury that Mattel could

9  prove the first prong of conversion—ownership—by establishing that Bryant created the tangible

10 property at issue at any time during his employment with Mattel.  *See* Dkt. 4115, at 33.  This

11 error was not harmless, since the jury could not have found conversion without first concluding

12 that Mattel owned the drawings and sculpts at issue.  *See Caballero*, 956 F.2d at 206.  The jury

13 should have minimally been asked to determine whether the Inventions Agreement assigned to

14 Mattel works created outside the scope of Bryant's employment, and potentially asked to

15 determine whether Bryant created the tangible Bratz items within the scope of his employment.

16 The Motion is GRANTED as unopposed as to Mattel's claim for conversion and the phase 1(A)

17 verdicts on conversion, Dkt. 4125 ¶¶ 13-15, are hereby VACATED.

## 2.      Copyright Infringement (Phase 1(B) Verdicts 5-10)

19        Both parties also agree that MGA's Motion should be granted as to Mattel's claim for

20 copyright infringement.  The district court instructed the jury that "[a]s a matter of law, [Mattel

21 is the owner of a valid copyright] because Mattel is the owner of each of the items you found

22 were created by [Bryant], alone or jointly with others, while employed by Mattel." Dkt. 4267, at

23 24.  However, the jury's earlier determination that Mattel owned items created by Bryant while

24 employed by Mattel was predicated upon instructional error that necessarily affected the

25 infringement finding.  The jury's findings on willfulness must also be vacated and retried

26 because they are practically inseparable from the ownership and infringement issues, a point that

27 MGA apparently concedes by moving to vacate the phase 1 verdicts "in their entirety."  The

28 Motion is therefore GRANTED as unopposed as to Mattel's claim for copyright infringement

1  and the phase 1(B) verdicts on copyright infringement, Dkt. 4279 ¶¶ 5-10, are hereby

2  VACATED.

3  **3.      Ownership (Phase 1(A) Verdicts 1-6)**

4         Though Mattel agrees that the Ninth Circuit's opinion requires retrial of its conversion

5  and copyright infringement claims, it nevertheless argues that the Court should preserve the

6  jury's special findings as to the timing of Bratz's conception, as well as the timing of Bryant's

7  creation of the Bratz drawings and sculpt.  These findings, Mattel argues, are highly relevant to

8  the phase 2 proceedings and are "entitled to deference under the Seventh Amendment."  Opp. at

9  6-9.

10         The Seventh Amendment provides that "no fact tried by a jury [] shall be otherwise re-

11  examined," but excepts re-examination in accordance with "the rules of the common law."  The

12  common law has long-recognized district courts' authority to "set aside jury verdicts and to grant

13  new trials."  *See Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 444-45, 121

14  S.Ct. 1678 (2001).  Mattel does not contest the need for a new trial as to at least some of the

15  phase 1 claims.  Thus, all of the phase 1 issues must be retried, except for issues that are

16  sufficiently "distinct and separable" from the issue(s) that "needs to be retried."  *See Gasoline*

17  *Prods.*, 283 U.S. at 499.

18         The timing of Bratz's birth is inseparable from the conversion and copyright infringement

19  claims, both of which Mattel concedes must be retried in light of the Ninth Circuit's opinion.

20  When Bryant sketched and sculpted the Bratz-related works ***must be*** determined once more,

21  since Mattel's ownership of the Bratz-related works — an element of its claims for conversion

22  and copyright infringement — requires a finding that Bryant created those works "during the

23  period of [his] employment," whatever that phrase means.  Mattel does not meaningfully contest

24  the inseparability of the timing issue from the claims that must be retried, but instead urges the

25  Court to preserve the phase 1 jury's findings to the extent possible.

26         *Gasoline Products* does not countenance such a presumption in favor of the preservation

27  of verdicts on interrelated claims.  *See* 283 U.S. at 500.  "Without regard to whether technically

28  the issues somehow resolved by the jury's answers to interrogatories [] - were separate and

distinct, [*Gasoline Prods.*], counsels against restrictive remand where there is doubt whether there might be confusion or injustice from a restrictive new trial." *See Davidson Oil Country Supply Co., Inc. v. Klockner, Inc.*, 917 F.2d 185, 187 (5th Cir. 1990).[6]  Contrary to Mattel's argument, even issues decided by special verdicts, or the jury's responses to factual interrogatories, must be retried if the issues resolved by the special verdicts are "interwoven" with the claims whose adjudication was affected by error. *See Brooks v. Brattleboro Memorial Hosp.*, 958 F.2d 525, 531 (2d Cir. 1992), *cert. denied*, 469 U.S. 854, 105 S.Ct. 179 (1984). Although the use of special interrogatories in the original trial may, as here, aspire to "facilitate[] the [eventual] grant of a retrial limited to the issues erroneously decided, their use does not have talismanic significance." *Id.*

An interest in reducing the confusion suffered by the second jury, as well as closely related concern for the effective administration of the second trial, explains the need for a sweeping retrial of all issues inseparable from the claims erroneously decided.  Tiptoeing around the inseparable issues and claims decided by the first jury "would not save time," since the second jury will examine the same evidence examined by the first jury. *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 53 (2d Cir. 1984);[7] *see, e.g., Blakeslee v. Ruffo*, 213

---

[6] Mattel's authority, *Green v. Am. Tobacco Co.*, 325 F.2d 673 (5th Cir. 1963), is an older decision from the same Circuit.  Its application cannot, dispense with the "distinct and separable" requirement set forth in *Gasoline Products.  See Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.*, 419 F. Supp. 2d 225, 234 (N.D.N.Y. 2005).

[7] Mattel cites *Fibermark* for the proposition that the jury's verdict should be preserved on issues that are "distinct legal[ly]" from the claims that must be retried, notwithstanding the fact that the legally distinct claim(s) rely upon the same evidence probative of the tainted claim.  To the extent *Fibermark* so holds, the Court simply notes that (1) appellate authority in *Fibermark*'s Circuit expressly considers factual overlap, and not just legal overlap, relevant to the "separable and distinct" determination; (2) any issue or claim can be superficially re-characterized as legally distinct; and (3) preserving the jury's verdict on a legally distinct claim proved with the same evidence probative of the claim that must be retried may result in impermissible injustice.  Not surprisingly, *Gasoline Products* expressly considered relevant whether the jury that retries a claim or issue must be advised of facts material to other issues or claims tried to the first jury. *See* 283 U.S. at 500.

1    F.3d 625, at *3 (2d Cir. May 17, 2000) (affirming district court's order of "new trial on both

2    liability and damages, *notwithstanding the fact that the jury decision was reached by special*

3    *interrogatories*, since the issues of liability and damages here are closely related") (emphasis

4    added).  Even those courts that preserve a jury's special findings recognize that jury confusion

5    would compel a contrary outcome.  *See, e.g.*, *MCI Comm's Corp. v. Am. Tel. & Tel. Co.*, 708

6    F.2d 1081, 1167-68 (7th Cir. 1983) (holding that partial new trial was possible because

7    "[plaintiff's] proof of damages was quite distinct from its proof on the question of liability");

8    *New Process Steel Corp. v. Seaboard Surety Co.*, 95 F.3d 53, at *10 (5th Cir. July 26, 1996)

9    (similar).

10           Though the Ninth Circuit acknowledged that a properly instructed jury may conclude that

11   Bryant's agreement assigns to Mattel all inventions created at any time (including nights and

12   weekends) during Bryant's employment, in the event the second jury reaches a conclusion to the

13   contrary, it will proceed to determine whether Bryant created the Bratz-related works in the

14   scope of his employment.  In order to reach this finding, the jury will necessarily examine the

15   evidence likely considered by the first jury in determining whether Bryant created the Bratz-

16   related works in 1998 or at any time during the period of his employment.  This evidence

17   includes, but is not limited to, the scientifically dated drawings and sculpt at issue, percipient

18   witness testimony, including testimony rendered by Bryant, Bryant's parents, and Bryant's

19   personal and professional associates, and finally, hundreds of written communications

20   concerning the issue of Bratz's birth.  Even though the second jury may ultimately find no need

21   to examine this evidence — upon concluding that the agreement covers work created on "nights

22   and weekends" — the parties and the Court will nevertheless expend the time required to present

23   the evidence to the jury and "no judicial economies" are therefore served by preserving the

24   special verdicts.  *Shu-Tao Lin*, 742 F.2d at 53.

25           In addition to serving no benefit to the eventual retrial, preserving the jury's special

26   verdicts risks "considerable confusion."  *Id.*  As explained earlier, ownership is the foundational

27   element of Mattel's claims for conversion and copyright infringement, which Mattel concedes

28   must be retried.  Since the jury's findings as to timing "resolved only one of many interrelated

adjudicative facts necessary to reach an ultimate legal conclusion" as to conversion and copyright infringement, the second jury asked to find liability on these claims must interpret the findings reached by the first jury. *Id.* (discussing second jury's burden of "understand[ing] what the prior jury had in mind"). As in *Shu-Tao Lin*, the phase 1 jury's special verdicts do not convey clear factual findings. The first four verdicts use the phrase "during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)," while the fifth and sixth use the phrase "while employed by Mattel" with no corresponding date range. *See* Dkt. 4125 ¶¶ 1-6. A second jury may impermissibly conclude that (1) the first jury resolved issues of witness credibility in Mattel's favor; and (2) the first jury concluded that the Bratz-related works were created "in the scope of" Bryant's employment. MGA would suffer considerable prejudice if the second jury were so influenced by the first jury's findings, which left "considerable ambiguity as to what [the jury] had in mind." *Id.*

Since verdicts 1 through 6 resolved issues that are inseparable from the conversion and copyright infringement claims that must be retried, *Gasoline Products* requires their retrial. Preserving these special findings would serve no efficiency interest, since the second jury will hear the same evidence considered by the first jury as to the timing of Bratz's birth. A second jury tasked with interpreting the verdicts, which are unclear on their face, will likely suffer considerable confusion about the meaning of the special verdicts, which poses a risk of undue prejudice to MGA. For the foregoing reasons, the Motion is GRANTED as to the ownership issues and the phase 1(A) special verdicts, Dkt. 4125 ¶¶ 1-6, are hereby VACATED.

### 4. Intentional Interference with Contractual Relations (Phase 1(A) Verdicts 7-8)

The district court's errors infected the jury's verdict on Mattel's claim for intentional interference with contractual relations. On that claim, the district court instructed the jury that Mattel needed to prove (1) MGA and Larian's intent to disrupt performance of the contract; and (2) MGA and Larian's actual disruption or prevention of performance. *See* Dkt. 4115, at 24.

The jury *may have* reached its intentional interference with contractual relations verdict

1   on the basis of facts unrelated to ownership of the Bratz-related works.[8]  But the mere potential

2   that the district court's erroneous instructions as to ownership "*in any way* affect[ed] the

3   determination" of the intentional interference with contractual relations claim is enough to

4   warrant retrial of that claim.  *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 454-55 (3d Cir. 2001)

5   (emphasis added).  The record reveals ample grounds to conclude that the district court's errors

6   materially affected the jury's verdict on Mattel's intentional interference with contractual

7   relations claim.  Most importantly, the jury was instructed that Bryant's performance under his

8   Mattel contracts included the assignment of works created at any time during the period of

9   Bryant's employment. Dkt. 4115 at 22-23.  During trial, Mattel time and again argued that

10  MGAE and Larian interfered with Bryant's contract with Mattel by using Bryant's ideas.  *See,*

11  *e.g.*, 5/27/08 Trial Tr. at 63 (arguing to the jury that MGA "knew that if Mattel ever learned . . .

12  that [MGA] had taken [Bratz] from a Mattel fashion designer while he was working for Mattel,

13  that Mattel would ***own the rights*** to those drawings.") (emphasis added).  Mattel similarly

14  argued that MGAE and Larian interfered with Bryant's contract by inducing Bryant to share

15  sketches and sculpts with MGAE's designers, even though the Inventions Agreement assigned

16  those works to Mattel.  *See* 7/10/08 Trial Tr. at 5001-02 ("MGA recognized what it was doing

17  and [sic] inducing a Mattel employee who created Mattel designes [sic] to bring his designs to

18  MGA.").

19         Mattel argues that "the instructions provide bases for liability on the intentional

20  interference claim that are entirely separate from ownership of Bratz."  As proof, Mattel cites the

21  district court's instruction that "[a]s a matter of law, [Bryant] directly competed with Mattel by

22  entering into a contract with MGA, Mattel's competitor, to produce a competing product while

23  he was employed by Mattel."  But the relevance of that instruction to the intentional interference

24  with contractual relations claim is unclear, since the district court failed to link Bryant's "direct[]

25  competit[ion]" with any obligations imposed by his contract(s) with Mattel.  The district court's

26  earlier denial of summary judgment on "Mattel's claim for breach of contract," suggests that

27

28         [8] Mattel's Opposition brief contains an exhaustive list. *See* Opp. at 13-17.

1   MGA's alleged inducement of Bryant's "direct[] competit[ion]" with Mattel would not have

2   been sufficient to establish liability for the intentional interference claim.  *See* Dkt. 3758, at 9.[9]

3          Mattel also argues that the district court's denial of MGA's post-trial motion (for a

4   remittitur of the damages verdicts as duplicative) indicates that the intentional interference with

5   contractual relations claim was supported by different facts than the tainted verdict on Mattel's

6   conversion claim.  Although the district court appeared to reach this conclusion, it did so only

7   after applying a deferential "totality of the evidence" standard, which presumes the validity of

8   the challenged verdicts.  *See* Dkt. 5273, at 8-9.  Now that instructional error has been definitively

9   identified, and conceded by Mattel for the purposes of this Motion, the Court need not cast about

10  for alternative factual theories upon which liability may be maintained — "disputed factual

11  findings" are no longer resolved in the prevailing party's favor.  *See Caballero*, 956 F.2d at 207.

12         In all events, even if the district court's instructional errors did not infect the jury's

13  verdict on Mattel's claim for intentional interference with contractual relations, the claim should

14  still be retried.  The question of performance, and intentional interference with that performance,

15  under the agreement was "so interwoven" with whether the Inventions Agreement assigned

16  Bryant's ideas to Mattel that the inseparability of the issues necessitates retrial as to both.  *See*

17  *Gasoline Prods.*, 283 U.S. at 500.  As discussed above, a second jury asked to reach verdicts on

18  Mattel's claims for conversion and copyright infringement will consider the same evidence

19  relevant to Mattel's intentional interference with contractual relations claim.  *See Trans-World*

20  *Intern., Inc. v. Smith-Hemion Prods., Inc.*, 952 F. Supp. 667, 673 (C.D. Cal. 1996).  The first

21  jury was permitted to make common credibility determinations and factual findings in reaching

22  its verdicts on all (not some) of Mattel's claims and Mattel profited from the common factual

23  predicates for its myriad claims by repeatedly linking the claims during its opening and closing

24  arguments.  Parsing out the jury's verdicts on the intentional interference with contractual

25  relations claim, which is factually inseparable from at least the conversion claim, would possibly

26

27         [9] The district court's instruction was phrased in the negative and did not "provide"
    other bases for liability.  *See* Dkt. 4115, at 26 ("mere offering of employment . . . would
28  not be sufficient").

1   cause injustice to MGA, and this possibility of injustice demands a full retrial of the intentional

2   interference claim.  *Norfolk Southern R.R. Co. v. Ferebee*, 238 U.S. 269, 274, 35 S.Ct. 781

3   (1915).[10]

4          Mattel's intentional interference with contractual relations claim likely turned on the

5   district court's erroneous instruction that, as a matter of law, Bryant's agreement with Mattel

6   assigned to Mattel all works created by Bryant at any time during the period of his employment.

7   Even if the jury's verdict on the intentional interference with contractual relations claim was

8   definitely unaffected by the district court's instructional error, the factual predicates for the claim

9   are inseparable and indistinct from the factual predicates for the conversion claim, which must

10  be retried.  Accordingly, the Motion is GRANTED as to Mattel's claim for intentional

11  interference with contractual relations and the phase 1(A) intentional interference with

12  contractual relations verdicts, Dkt. 4125 ¶¶ 7-8, are hereby VACATED.

13          **5.      Aiding and Abetting Breach of Fiduciary Duty (Phase 1(A)**

14                  **Verdicts 9-10)**

15          The district court's errors also infected the jury's verdicts on Mattel's claim for aiding

16  and abetting breach of fiduciary duty.  As discussed earlier, the district court instructed the jury

17  on the elements of this claim as (1) breach; (2) knowledge of breach; and (3) assistance or

18  encouragement.  Dkt. 4115, at 28.  The first prong—breach—had several sub-prongs; namely,

19  Bryant needed to have (1) breached (2) a duty he owed to Mattel (3) without Mattel's consent

20  (4) which was a substantial factor in causing (5) Mattel's harm.  *Id.* at 29.  Of those 7 elements

21  or sub-elements, the jury was asked to reach findings on six.  *See id.* at 31-32.

22          The jury did not decide whether Bryant owed a fiduciary duty to Mattel.  It was instead

23  instructed that "[a]s a matter of law, [Bryant] owed [] a fiduciary duty [] to Mattel [that was]

24  predicated upon paragraph 1(a) of the Inventions Agreement and is related to [Bryant's]

25  obligations to keep Proprietary Information confidential."  Dkt. 4115, at 31.  The instruction

26

27          [10] Mattel cites *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764 (9th Cir. 2005), which
    discussed the standard for a motion for new trial based on a jury's inconsistent answers

28  on a verdict form and not, as here, a motion for new trial based on improper instruction.

1    flowed from the district court's earlier order on a motion for reconsideration, which concluded

2    that Bryant's fiduciary relationship of "trust" with Mattel was triggered by his contractual

3    obligation to not share proprietary information with a competitor.  *See* Dkt. 3758, at 4; *see also*

4    Dkt. 3285 (holding that "the duty imposed upon Bryant was [to] maintain[] Mattel's

5    confidentiality and communicat[e] his own 'inventions' to Mattel").  This instruction, as well as

6    the district court's conclusion at the time of summary judgment, was erroneous, since a duty to

7    maintain the confidentiality of an employer's proprietary information and communicate

8    inventions to one's employer does not, without more, create a fiduciary duty.  *See Rita Medical*

9    *Systems, Inc. v. Resect Medical, Inc.*, No. C 05-03291 WHA, 2007 WL 161049, at *6 (N.D. Cal.

10   Jan. 17, 2007) (finding no fiduciary duty even though employment contract required employee to

11   "keep [plaintiff's] trade secrets confidential, to assign patents, and not to compete with

12   [plaintiff]," because "agreement gave [defendant] no special status and covered all of the

13   theories of breach of fiduciary duty that [plaintiff] asserts").[11]  While other facts may ultimately

14   establish the existence of Bryant's fiduciary duty at trial, or even at summary judgment, the error

15   was not harmless, since the precise scope of a fiduciary duty (if any) is determinative of whether

16   the duty was breached.  The jury was presented with an expansive, and erroneous, definition of

17   Bryant's fiduciary duty, allowing it to erroneously conclude that a broad universe of conduct by

18   MGAE and Larian aided and abetted a breach of that duty.  The claim must therefore be retried.

19        The errors identified by the Ninth Circuit's opinion independently infected the jury's

20   verdicts on Mattel's claim for aiding and abetting breach of fiduciary duty.  Specifically, the jury

21   could have found, and likely did find, that Bryant breached his fiduciary duty to Mattel by failing

22   to communicate to Mattel the inventions *that belonged to Mattel*.  Though the district court

23   initially entered summary judgment on Bryant's breach of his fiduciary duty to Mattel, Dkt.

24

25        [11] Although this error was not identified in the Ninth Circuit's opinion and its

26   review is therefore constrained by the "law of the case" doctrine, it must be remedied
     because the continued enforcement of the district court's finding of a fiduciary duty on

27   the basis of insufficient facts would force a "manifest injustice" upon MGA.  *United*

28   *States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010).

3285, at 6, it later reconsidered that decision, noting that "its previous holding necessarily rested on a finding that the materials provided to MGA were *indisputably Mattel's property*."  Dkt. 3758, at 4 n. 2 (emphasis added).  Ownership was dispositive of Bryant's breach of his fiduciary duty notwithstanding Mattel's counsel's argument, at the hearing on the summary judgment motions, that "[i]t's a breach of [fiduciary duty] to be creating new products for another company . . . there's no dispute that he did those things."  4/22/08 Tr. at 65-66.  The district court submitted to the jury the issue of whether Bryant breached his fiduciary duty to Mattel precisely *because*  ownership of the Bratz-related works could not "be drawn as a matter of law on the undisputed facts." Dkt. 3758, at 4.  Since the jury was erroneously instructed on the issue of ownership of the Bratz-related works, and Bryant's breach of his fiduciary duty to Mattel "rested" on Mattel's ownership rights to the Bratz-related works, the jury's verdicts on aiding and abetting breach of fiduciary duty were likely affected by the errors identified by the Ninth Circuit.

Mattel argues that the district court's instructions on Mattel's aiding and abetting breach of fiduciary duty claim did not expressly identify ownership as a prerequisite to Mattel's claim.  The instruction provided that the assumption of a fiduciary duty obligates a party to "act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest."  Dkt. 4115, at 29.  But a fiduciary duty is not breached by *any* conduct inimical to the interests of the party to whom the duty is owed.  The specific duty assumed by the fiduciary must be breached. *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1534 (2006).  Here, the district court instructed the jury that Bryant owed a duty to maintain the confidentiality of inventions assigned to Mattel under the Inventions Agreement.  Dkt. 4115, at 31 ("Bryant's fiduciary duty to Mattel is predicated on paragraph 1(a) of the Inventions Agreement").  Mattel's ownership over the Bratz-related works that Bryant failed to communicate was, as the district court recognized in footnote 4 of its reconsideration order, dispositive of whether Bryant breached the specific duty assumed by Bryant.  Counsel for Mattel so argued at the time of trial, by claiming to the jury that its finding that Bryant breached his fiduciary duty was predicated upon "Bryant['s] deliver[y] to

1  [MGA] [of] Mattel's confidential proprietary information." 8/20/08 Trial Tr. at 8119.

2        In the face of these court orders, jury instructions, and its own arguments to the jury,

3  Mattel argues that the jury's verdicts on aiding and abetting breach of fiduciary duty "are

4  supported ample evidence independent of any issue of ownership of Bratz." Opp. at 14.  For

5  example, Mattel references evidence from the trial that Bryant (1) entered into an agreement

6  with MGA; (2) received payments from MGA while still at Mattel; (3) pitched Bratz to MGA;

7  (4) used Mattel resources to work on Bratz; and (5) made several phone calls to MGA.

8  According to Mattel, Bryant breached his fiduciary duty to Mattel by "engag[ing] in any

9  employment or business other than for [Mattel], or invest[ing] or assist[ing] (in any manner) any

10  business competitive with the business or future plans of [Mattel]." Opp. at 16.  These

11  obligations are imposed by paragraph 3(a) of the Inventions Agreement, *see* Ex. 1 to Dkt. 8385-

12  1; a contractual provision not identified in either the district court's reconsideration order or the

13  relevant jury instructions.  The district court notably failed to consider this "ample evidence"

14  relevant to whether Bryant breached any fiduciary duty to Mattel, instead "rest[ing]" the issue on

15  "a finding that the materials provided to MGA were indisputably Mattel's property."  Dkt. 3758,

16  at 4 n. 2.  Since the jury made this "finding" on the basis of erroneous instruction, the claim for

17  aiding and abetting breach of fiduciary duty must be retried, though Mattel is free to propose

18  jury instructions that identify *other* duties assumed by Bryant, some or all of which may have

19  been breached by the "ample" conduct identified in Mattel's Opposition brief.

20        Whether or not the aiding and abetting breach of fiduciary verdict was infected with the

21  district court's instructional error, Mattel's claim is practically inseparable and indistinct from

22  the conversion claim that must be retried.  As discussed above, Mattel argued that Bryant's

23  breach of his fiduciary duty to Mattel flowed from his disclosure to MGA of inventions assigned

24  to Mattel by the plain terms of the Inventions Agreement.  The jury therefore heard and

25  considered the same evidence in reaching verdicts on the claims for conversion and aiding and

26  abetting breach of fiduciary duty.  No efficiency interest would be served by a partial retrial,

27  since a second jury would hear the same evidence.  Preserving the first jury's verdict on this

28  claim would instead cause manifest injustice to MGA by maintaining any benefit Mattel

20

obtained as a result of the interrelationship between the two claims and, specifically, the potential that the jury's verdict on aiding and abetting breach of fiduciary duty was influenced by its infected verdict on conversion.

The verdicts on aiding and abetting breach of fiduciary duty were more likely than not infected with instructional error, including error not identified in the Ninth Circuit's opinion. Even if the aiding and abetting breach of fiduciary duty verdicts were immune from instructional error, the underlying claim was inseparable and indistinct from the conversion claim that must be retried.  The Motion is therefore GRANTED as to Mattel's claim for aiding and abetting breach of fiduciary duty and the phase 1(A) aiding and abetting breach of fiduciary duty verdicts, Dkt. 4125 ¶¶ 9-10, are hereby VACATED.

### 6.    Aiding and Abetting Breach of Duty of Loyalty (Phase 1(A) Verdicts 11-12)

Mattel's claim for aiding and abetting breach of duty of loyalty was likewise derivative of the conversion claim that must be retried.  Even Mattel's counsel recognized the inseparability of this claim from the other claims adjudicated during phase 1, arguing that "we have intentional interference and the aiding and abetting and the duty of loyalty.  Really, what more is there to say about this?  It's really undisputed what happened here."  7/10/08 Trial Tr. at 5000.

The district court's errors infected the jury's verdicts on this claim, though not to the same extent as the other claims tried in phase 1.  Unlike the aiding and abetting breach of fiduciary duty claim, the district court concluded, as a matter of law, that Bryant breached his duty of loyalty to Mattel.[12]  This conclusion must have been unrelated to ownership, since (1) the district court found genuine issues of material fact as to ownership and (2) still granted summary judgment on breach.  Instead, the district court concluded that Bryant breached his duty of loyalty to Mattel "when he entered into a contract with MGA, Mattel's competitor, while still

---

[12] Contrary to MGA's argument, the claim for aiding and abetting breach of duty of loyalty was never premised upon Bryant's contract with Mattel, let alone an incorrect interpretation of the contract.  *See* Mot. at 23.  "The duty of loyalty arises not from a contract."  *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007).

1   employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with

2   Mattel's products." Dkt. 4115, at 32.  The district court found that undisputed facts supported

3   the factual determination embedded in this holding.  *See* Dkt. 3285, at 5.[13]  But the district

4   court's basis for ruling that Bryant breached his duty of loyalty by entering into a contract with

5   MGA to manufacture dolls is unclear.

6        The only case relied upon by the district court's summary judgment order is *Huong Que,*

7   *Inc. v. Luu*, 150 Cal. App. 4th 400 (2007), which held in relevant part that "[t]he duty of loyalty

8   is breached, and the breach 'may give rise to a cause of action in the employer, when the

9   employee takes action which is inimical to the best interests of the employer.'" *Id.* at 414

10  (quoting *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995)).[14]  However, "inimical"

11  action does not include "seek[ing] other employment and even [] mak[ing] some 'preparations to

12  compete' before resigning." *Id.*  There is a fine, important, and fact-specific distinction between

13  actively subordinating the present employer's interests and merely *preparing* to subordinate the

14  employer's interests after leaving its employ.  *See id.* ("An employee who has any business to

15  *transact* on his own account, similar to that intrusted to him by his employer, shall always give

16  the preference to the business of the employer.") (emphasis added) (quoting Cal. Lab. Code

17  § 2863).  The district court ignored the distinction between action and planning, and therefore

18  erred, by holding, as a matter of law, that Bryant breached his duty of loyalty by entering into a

19  contract with a competitor in anticipation of competing with his employer.

20       It's possible that the district court considered other conduct taken by Bryant for the

21

22        [13] Bryant's employment agreement with MGA, dated September 18, 2000,
23   provides that "MGA retains Bryant to provide his services to consult with MGA and
     advise MGA on the design and development by MGA of a line of dolls presently known
24   as "Bratz."  *See* TX 00015-001.

25        [14] *Stokes* discussed termination of employment and not tortious conduct, as here
26   and as in *Luu*.  *See* 41 Cal. App. 4th at 294 (distinguishing case "concerned with
     identifying the types of actions by an employee that will constitute tortious misbehavior"
27   and not "as we are, with the types of activities which would constitute cause for
28   termination of the employment contract").

1   benefit of MGA — *e.g.*, designing dolls, recruiting Mattel employees, and using Mattel

2   resources for MGA's benefit.  But none of these facts was expressly relied upon at summary

3   judgment or referenced in the jury instruction at issue.  Well-established authority, including the

4   authority relied upon by the district court, holds that "[a]n employee does not breach his duty of

5   loyalty by *preparing* to compete with his employer [including by] plan[ning] and prepar[ing] to

6   create a competitive enterprise prior to [her] own termination and with [her] own resources."

7   *See Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008) (quoting 19 Williston

8   on Contracts § 54:27 (4th ed. May 2008)) (emphasis in original).  The jury could not have

9   properly determined whether Larian and MGAE aided and abetted Bryant's breach of his duty of

10   loyalty without first receiving precise instruction about what conduct by Bryant breached his

11   duty of loyalty.

12         Mattel argues that "law of the case" precludes this Court from correcting the prior court's

13   errors.  Opp. at 11.  Though a court must generally not reconsider "an issue that has already been

14   decided by the same court," *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998),

15   "[t]here is no strict prohibition against one district judge reconsidering and overturning the . . .

16   ruling of a prior district judge in the same case before final judgment."  *E.E.O.C. v. Serrano's*

17   *Mexican Restaurants, LLC*, 306 Fed. Appx. 406, 2009 WL 20962, at **1 (9th Cir. Jan. 5,

18   2009).[15]  While rare to correct a prior district judge's errors after a jury verdict has been

19   rendered, the Ninth Circuit declined to consider MGA's appeal of these instructional errors.  *See*

20   *Mattel*, 2010 WL 2853761, at *11 n. 12 (declining to "address MGA's appeal of the district

21   court's decisions concerning the three alleged state-law violations").  It would sustain an

22   ongoing injustice and compound prior error to allow yet another jury to be erroneously instructed

23   on clear and long-standing law.  *See Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376,

24   379-80 (9th Cir. 1960); *see also United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010)

25   (recognizing exception to "law of the case" doctrine where prior decision "is clearly erroneous

26

27         [15] Even if it wasn't erroneous, the jury instruction was impermissibly vague.  It is
     unclear whether the phrase "while still employed by Mattel" qualifies the entire sentence

28   or only the first clause in the sentence ("entered into a contract with MGA").

1   and its enforcement would work a manifest injustice").  The district court's instruction,

2   predicated upon an erroneous application of the law at summary judgment, allowed the jury to

3   conclude that MGAE and Larian aided and abetted a breach of duty of loyalty by assisting or

4   encouraging Bryant to memorialize an agreement about future competitive conduct against

5   Mattel.

6          Even if the district court had not so erred, the aiding and abetting breach of duty of loyalty

7   claim is sufficiently intertwined with the infected claims, including conversion, aiding and

8   abetting breach of fiduciary duty, and intentional interference with contractual relations, that it

9   must be retried.  For the reasons discussed above, Mattel relied upon common proof to establish

10  all of its claims, including its claim for aiding and abetting breach of duty of loyalty.  A properly

11  instructed jury tasked with reaching liability on aiding and abetting breach of fiduciary duty and

12  conversion will "pass on" the same facts relevant to Mattel's claim for aiding and abetting

13  breach of duty of loyalty.  *See Gasoline Prods.*, 283 U.S. at 499 (noting "confusion and

14  uncertainty" from failing to allow jury to reconsider interwoven claims).

15         The Motion is therefore GRANTED as to Mattel's claim for aiding and abetting breach of

16  duty of loyalty and the phase 1(A) aiding and abetting breach of duty of loyalty verdicts, Dkt.

17  4125 ¶¶ 11-12, are hereby VACATED.

18                 **7.     Fraudulent Concealment (Phase 1(B) Verdicts 18-22)**

19         The district court instructed the jury to find fraudulent concealment[16] if MGA concealed

20  and prevented Mattel from discovering the fact that "Bryant created Bratz-related works while

21  employed by Mattel or that [Bryant] entered into a contract with and worked with MGA while he

22  was still employed by Mattel."  Dkt. 4267, at 39.

23  ──────────

24         [16] Fraudulent concealment was an issue addressed by the district court's "order re
    statute of limitations defense," which issued on the second day of the phase 1 trial.  *See*
25  Dkt. 3826, at 9.  In that order, the district court recognized that the statute of limitations
    on Mattel's claims for conversion and intentional interference with contractual relations
26  "is tolled during a period of fraudulent concealment."  *Id.* (citing *Gryczman v. 4550 Pico*
    *Partners, Ltd.*, 107 Cal. App. 4th 1, 5 (2003) and *AmerUS Life Ins. Co. v. Bank of*
27  *America*, 143 Cal. App. 4th 631, 639 (2006)).

28

1    Fraudulent concealment was a phase 1(B) issue.  The fraudulent concealment instruction

2    was therefore given only *after* the jury found liability on conversion and intentional interference

3    with contractual relations.  In other words, fraudulent concealment was necessarily intertwined,

4    indistinct, and inseparable from the claims that must be retried as a result of the district court's

5    errors.  *See Gasoline Prods.*, 283 U.S. at 500.  The general observation that evidence relevant to

6    the underlying claim also speaks to the issue of fraudulent concealment, *see Gryczman*, 107 Cal.

7    App. 4th at 5, holds true here.  The jury will be asked to examine once again the physical sculpts,

8    the sketches, communications between Bryant and MGA, and MGA's representations to others

9    in the industry, as well as the broader public, about Bratz.  All of this evidence is also relevant to

10   fraudulent concealment, which therefore must be retried.

11   The fraudulent concealment verdicts were also infected with the district court's errors.

12   The district court instructed the jury that Mattel's claim for conversion was grounded upon

13   "Bryant['s] creat[ion] [of] Bratz-related works while employed by Mattel."  Mattel responds that

14   "[w]hether Bryant created Bratz at his desk at Mattel or in his garage at home, the jury found

15   those facts were concealed from Mattel," Opp. at 28, but this argument infers findings not

16   expressly made by the jury.  Specifically, the jury was never instructed to find concealment of

17   *both* Bratz's creation within the scope of employment *and* Bratz's creation outside the scope of

18   employment, even though only the former may support a finding of fraudulent concealment.

19   Indeed, the district court's phase 1(B) order specified that "the relevant <u>issues</u> – or, stated

20   otherwise, the ultimate facts – are whether and for what time period [MGA] fraudulently

21   concealed from Mattel the fact that [Bryant] worked on the Bratz drawings during his period of

22   employment with Mattel."  Dkt. 4154, at 9 (emphasis in original).  The district court's

23   identification of the "relevant issue" flowed from its errors at summary judgment, as well as the

24   jury's infected verdicts on the state law claims tried in phase 1(A).

25   The Motion is therefore GRANTED as to fraudulent concealment and the phase 1(B)

26   fraudulent concealment verdicts, Dkt. 4279 ¶¶ 18-22, are hereby VACATED.

27   **8.   Damages and Punitive Relief (Phase 1(B) Verdicts 1-4, 11-17)**

28   The jury's damage awards must be vacated in their entirety for three reasons.

First, as discussed above, the verdicts on the state law and copyright infringement claims, which support the ultimate damage awards, must be vacated.  Given the obvious overlap between the jury's findings on liability and damages, the damages awards cannot be sustained.  *See Sears v. S. Pac. Co.*, 313 F.2d 498, 503 (9th Cir. 1963).  Even if a second jury finds liability on one or more of Mattel's phase 1 claims, it may reach this finding on grounds entirely unrelated to the grounds upon which the phase 1 verdicts were erroneously predicated.  The conduct giving rise to liability may be less, or more, egregious and/or harmful than the conduct considered by the first jury, which may affect the second jury's consideration of the damages to which Mattel is entitled.

Second, even if *only* the conversion and copyright claims must be retried, the other damage awards must still be vacated.  The district court recognized that the jury may have calculated damages *for all claims* in the aggregate and thereafter "set about allocating" a lump sum of $100 million "around multiple claims and defendants."  Dkt. 5273, at 8.  Courts have recognized that the potential for compromise verdicts, as found here, warrants full retrial of all damage awards, and not just the damage awards for claim(s) affected by instructional error.  *C.f. Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 816 (3d Cir. 1984).

Third, the parties largely agree that a number of the damage awards must be vacated.  Mattel concedes that the jury's damage awards on conversion and copyright infringement must be vacated.  MGA moves to vacate the jury's verdicts on malice, oppression, fraud, and punitive damages.  *See* Mot. at 34.  The Court agrees, since the jury's determination of malice, oppression, or fraud was (1) conditioned on erroneous instruction about the nature of the tortious conduct; and (2) inseparable and indistinct from the issues that must be retried.

The Motion is therefore GRANTED as to damages and the phase 1(B) damage awards and punitive damages verdicts, Dkt. 4279 ¶¶ 1-4, 11-17, are hereby VACATED.

### 9.   Disposition as to Instructional Error

All phase 1 claims must be retried for two reasons.  First, the district court's errors at summary judgment, as identified by the Ninth Circuit's July 22, 2010 decision and as identified herein, infected the jury's consideration of every one of Mattel's claims.  Second, the issues

1  raised by the phase 1 claims, as well as the issues otherwise addressed by the jury, were

2  inseparable and indistinct from the issue of whether Mattel owned Bratz-related ideas and

3  tangible items.

4      The Motion is GRANTED as to all phase 1 claims.

5          **B.      Other Grounds for New Trial**

6      MGA argues that a new trial is also warranted because (1) the jury failed to reach a

7  verdict as to whether four drawings were created by Bryant during the term of his employment

8  with Mattel; (2) the district court erroneously failed to declare a mistrial on the basis of juror

9  misconduct; and (3) Mattel has produced new evidence since the phase 1 trial.  These arguments

10  are moot in light of the fact that the district court's instructional errors warrant a full retrial of all

11  phase 1 claims.  MGA's renewed motion to unseal juror interview transcripts is DENIED.

12      **IV.   Disposition**

13      The Motion for New Trial is GRANTED and the Renewed Motion to Unseal Juror

14  Interview Transcripts is DENIED.  On or before November 1, 2010, MGA shall file a Proposed

15  Order that specifically identifies the phase 1 jury's verdicts and damage awards discussed herein.

16

17  IT IS SO ORDERED.

18  DATED: October 29, 2010

19  _____
                DAVID O. CARTER
20              United States District Judge

21

22

23

24

25

26

27

28