UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                                    Date: November 1, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                    NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART
MATTEL'S EX PARTE APPLICATION FOR ORDER TO
COMPEL DISCOVERY FROM ZAPF CREATION RE:
COUNTERCLAIMS IN REPLY [DOCKET 8996]

      Before the Court is Mattel's *ex parte* Application for Order to Compel Discovery from Zapf Creation re: Counterclaims in Reply [Docket 8996]. Mattel's Application seeks discovery from a German company named Zapf Creation AG ("Zapf"), whose employees allegedly gained improper access to Mattel's toy showrooms and confidential "planogram" showrooms operated by retailers who contracted with Mattel. Zapf's employees allegedly operated at Larian's behest and for the benefit of MGA. On October 15, 2010, Mattel served a subpoena on an unnamed individual at MGA's Van Nuys, California office commanding Zapf to produce documents relevant to MGA's counterclaims in reply. On October 19, 2010, Mattel served a subpoena on an unnamed individual at MGA's Van Nuys, California offices commanding Zapf's attendance at a deposition regarding MGA's counterclaims in reply. The instant Application seeks a judicial declaration that MGA was authorized to accept service on Zapf's behalf (which MGA disputes) and/or that MGA is obligated to produce (1) documents in Zapf's control and (2) a witness knowledgeable about Zapf's conduct.

      MGA's relationship with Zapf is central to the issues raised in Mattel's Application. Mattel explains that MGA's Chief Executive Officer and counter-defendant Isaac Larian ("Larian") and his family "hold a majority stake in Zapf Creation via several trusts." Both Larian and MGA executive Ron Brawer, who allegedly stole trade secrets prior to leaving Mattel for MGA, serve on Zapf's

management boards.  Zapf has apparently advertised its "strategic partnership" with MGA, pursuant to which MGA distributes Zapf products in the United States and Zapf operates MGA's German toy fair showrooms and sells MGA's products in Germany.  This strategic partnership between the two companies extends to other services, whereby each company lends its expertise to the other in a variety of areas, including access to foreign markets, licensing products, and related logistical support.  Zapf's website identifies MGA's California headquarters as Zapf's address in the United States.

Contrary to the contention by MGA's counsel, MGA can receive service of third-party subpoenas that request Zapf's production of documents and its attendance at a deposition.  The service of a subpoena directed to a non-party corporation must generally comport with Rule 4(h)'s requirements for the service of a summons directed to a defendant corporation.  *C.f. NGV Gaming, Ltd. v. Upstate Point Molate, LLC*, 2009 WL 4258550, at *2 (S.D.N.Y. Nov. 24, 2009).  "[An] officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" may be served on behalf of the corporation.  Fed. R. Civ. P. 4(h).  However, the Ninth Circuit has held that the list of individuals identified by Rule 4(h) is not exhaustive:

> Despite the language of the Rule, service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process. The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice. Thus, the service can be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service.

*Direct Mail Specialists, Inc. v. Eclast Computerized Technologies*, 840 F.2d 685, 688 (9th Cir. 1988).

Among the factors to be considered is whether the person who received service exercised control over the corporate defendant and its assets.  *See, e.g.*, *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 660083, at *7 (N.D. Cal. Feb. 28, 2007).  For example, service is not accomplished by delivering a copy of the summons (or subpoena) to any employee of a large corporation, regardless of whether the employee "later deliver[s] the documents to the corporate counsel."  *See, e.g.*, *Jones v. Automobile Club of Southern California*, 26 Fed. Appx. 740, **2 (9th Cir. Jan. 24, 2002).  The serving party must establish that the individual or entity that received service is "so integrated with the organization that he will know what to do with the papers."  *Direct Mail*, 840 F.2d at 688.

MGA's extensive "strategic partnership" with Zapf, as well as Larian's heavy participation in Zapf's financial affairs, make it fair, reasonable, and just to imply MGA's authority to receive service directed to Zapf.  Mattel directs the Court's attention to *Campagnolo S.R.L. v. Full*

*Speed Ahead, Inc.*, 2009 WL 1788381 (W.D. Wash. June 22, 2009), in which the court held that the defendant-corporation had been served when the plaintiff delivered a copy of the summons to *another* corporation, whose owner was married to the defendant-corporation's president. *Id.* at *2. Relevant to the court's conclusion was the "close business relationship" between the two corporate entities that facilitated regular communication and ensured that the defendant-corporation would receive "adequate notice" of the documents directed to it. *Id.* at *1-*2. The relationship between the two entities, like the relationship between MGA and Zapf, was not merely "transactional." *Id.* at *1. As Mattel notes, MGA and Zapf "share officers, directors, employees and offices," which probably flows from the fact that the two companies share a majority shareholder: Isaac Larian. The demonstrable interface between the two companies' management renders it likely that MGA can easily provide Zapf "adequate notice" of Mattel's subpoenas, assuming MGA has not done so already.

   The Application is GRANTED. Zapf shall respond to Mattel's subpoenas within thirty (30) days of the filing of this Order. The Court extends Zapf's time for compliance beyond the November 15, 2010 counterclaims-in-reply discovery cut-off in view of the burdens of international document production and witness preparation. Mattel suffers no prejudice as a result of the delayed production, since the discovery sought at most bolsters discovery already obtained by Mattel, and Mattel can move for judgment as a matter of law on the basis of any new documents in the event that MGA's counterclaims-in-reply survive summary judgment. MGA's request for alternative relief, including (1) ordering MGA to produce documents and a witness concerning Zapf's conduct; and/or (2) authorizing the issuance of a letter of request under the Hague Convention are DENIED, since these alternative forms of discovery are duplicative of the discovery compelled by the instant Order.

   The Clerk shall serve this minute order on all parties to the action.