1

1       **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA**

3       **SOUTHERN DIVISION AT SANTA ANA**

4       HONORABLE DAVID O. CARTER, JUDGE PRESIDING

5

6
CARTER BRYANT, an individual,        )
7                                     )
                PLAINTIFF,            )
8                                     )
        vs.                          ) SACV NO. 04-9049-DOC
9                                    ) VOLUME I
MATTEL, INC., a Delaware             )
10  corporation,                     )
                                     )
11              DEFENDANT.           )
    _____ )
12  CONSOLIDATED WITH MATTEL, INC., vs.)
    BRYANT and MGA ENTERTAINMENT, INC. )
13  vs. MATTEL, INC. _____ )

14

15

16              REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                   SANTA ANA, CALIFORNIA

18                 THURSDAY, AUGUST 26, 2010

19                        3:55 P.M.

20

21              **DEBORAH D. PARKER, CSR 10342**
                **OFFICIAL COURT REPORTER**
22          **UNITED STATES DISTRICT COURT**
                **411 WEST FOURTH STREET**
23                  **SUITE 1-053**
            **SANTA ANA, CALIFORNIA 92701**
24                  **(714) 542-8409**
                **D.PARKER@IX.NETCOM.COM**

25

```
1    APPEARANCES OF COUNSEL:

2         FOR THE DEFENDANT, MATTEL, INC.:

3                             MICHAEL ZELLER
                              QUINN EMANUEL URQUHART
4                             865 SOUTH FIGUEROA STREET
                              10TH FLOOR
5                             LOS ANGELES, CALIFORNIA 90017
                              (213) 443-3000
6

7         FOR THE INTERVENOR, MGA ENTERTAINMENT, INC.:

8                             ANNETTE L. HURST
                              ORRICK, HERRINGTON & SUTCLIFFE, LLP
9                             THE ORRICK BUILDING
                              405 HOWARD STREET
10                            SAN FRANCISCO, CALIFORNIA 94105
                              (415) 773-5740
11
                              THOMAS S. MC CONVILLE
12                            ORRICK, HERRINGTON & SUTCLIFFE, LLP
                              4 PARK PLAZA
13                            SUITE 1600
                              IRVINE, CALIFORNIA 92614
14                            (949) 567-6700

15                            WILLIAM MOLINSKI
                              ORRICK, HERRINGTON & SUTCLIFFE, LLP
16                            777 SOUTH FIGUEROA STREET
                              SUITE 3200
17                            LOS ANGELES, CALIFORNIA 90017
                              (213) 612-2346
18

19

20

21

22

23

24

25
```

1    APPEARANCES OF COUNSEL:

2        FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

3                          ALEXANDER H. COTE
                          SCHEPER KIM & HARRIS LLP
4                          601 WEST 5TH STREET
                          12TH FLOOR
5                          LOS ANGELES, CALIFORNIA 90071
                          (213) 613-4660

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1      SANTA ANA, CALIFORNIA; THURSDAY, AUGUST 26, 2010; 3:55 P.M.

 2                              -oOo-

 3           THE COURT:  We're back on the record in the Mattel

 4   and MGM matter.

 5           It's a pleasure to see you again, and if you would

 6   like to come forward.

 7               MR. MCCONVILLE:  Good afternoon, your Honor.

 8               Tom McConville, on behalf of the MGA parties.

 9               THE COURT:  Good afternoon.

10               MR. COTE:  Good afternoon, your Honor.

11               Alexander Cote, on behalf of Gustavo Machado.

12               THE COURT:  Good afternoon.

13               MR. ZELLER:  Good afternoon, your Honor.

14               Mike Zeller for Mattel.

15               THE COURT:  Pleasure.

16               MR. PROCTOR:  Dylan Proctor for Mattel.

17               MR. MOLINKSI:  Good afternoon, your Honor.

18               Bill Molinski for MGA.

19               MS. HURST:  Good afternoon, your Honor.

20               THE COURT:  First of all, I want to thank you.

21           I was back in the back with Millie who's the head

22   clerk.  She's deeply appreciative.  And since you were

23   sending it in PDF form to each other, just in a quick and

24   formal conversation, you were able to help the court

25   immensely.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1          The clerk's office was going through a

2    tremendously difficult time, and it was easily resolved so

3    my compliments to both sides and both counsel.

4          Thank you.

5          For the record, if it's unclear, this was the

6    practice of filing documents under seal.  It caused a

7    tremendous burden on the clerk's office.  Lead counsel both

8    met informally with Kathy and with Millie to discuss how the

9    process of filing documents should be adjusted, in light of

10   the fact that the summary judgment motions involved

11   voluminous filings.  That has been rectified as far as the

12   clerk is concerned, with the help of counsel.

13         Concerning the Ninth Circuit's July 22nd, 2010

14   order, here are my initial thoughts, based on tentative

15   research.  Let me emphasize that these are not final

16   findings by the court.

17         MGA's brief is confusing because it may correctly

18   observe that law of the case requires that the phase one

19   jury verdicts be vacated.  The law of the case, to use

20   Mattel's counsel's words, isn't really a vehicle to vacate

21   verdicts *sua sponte*.

22         It appears that the court would need to consider

23   and/or potentially grant a new trial motion pursuant to

24   Rule 59.  Whether that new trial is granted *sua sponte*

25   pursuant to Rule 59(d) or upon the MGA parties' motion is

1    really a matter how quickly the parties can brief the issue.

2              I'm willing to allow you to make your record, but

3    the federal rules certainly don't require me to wait on this

4    issue, so I'll ask counsel about a briefing schedule they

5    would like to observe, in just a moment, and give you the

6    first opportunity.

7              I also think that whether or not we have further

8    briefing, it's valuable in terms of that briefing, or in

9    terms of oral argument that I share just some tentative

10   thoughts -- let me emphasize not rulings -- with you.

11             First, I tentatively am inclined to reject

12   Mattel's contention that the fraudulent concealment filings

13   cannot be reexamined.  Jury Instruction No. 35 instructed

14   the jury on fraudulent concealment, informing the jury that

15   it needed to find that defendants, quote, *took affirmative*

16   *steps to conceal the facts that could have led Mattel to*

17   *discover that Carter Bryant created Bratz-related works*

18   *while employed by Mattel,* end of quote.  But it's unclear

19   just what, quote, unquote, facts the jury thought defendants

20   concealed.

21             For example, was it the fact that Bryant sketched

22   the drawings at any time during his term of employment?  If

23   so, there wasn't any fraudulent concealment of Mattel's

24   claim for conversion.

25             Secondly, or second, I'm tentatively inclined to

1    reject Mattel's claim that the special verdict findings must

2    remain intact.  These findings aren't necessarily material

3    to a finding of liability, as Mattel readily concedes.

4              Indeed, the Ninth Circuit suggests that the jury

5    should decide whether it matters if Bryant conceived Bratz

6    and developed the Bratz drawings and scope at any time

7    during his employment.  And I alluded to that last evening.

8    And Mattel's own authorities imply that special verdict

9    findings need to be preserved if not, quote, *directly*

10   *pertinent,* end of quote, to the issues in the second trial,

11   citing *Green versus American Tobacco*, 325 F.2d 673 (Fifth

12   Circuit 1963.)

13             Mattel's reliance on the Seventh Amendment is

14   mistaken.  Since the amendment provides that, quote, *no fact*

15   *tried by a jury shall be otherwise re-examined in any court*

16   *of the United States that according to the rules of common*

17   *law,* end quote.  And common law allows the retrial of an

18   issue already passed upon by a jury, after the granting of

19   new trial.  The court cites *C. Elliott & Company versus*

20   *Toeppner,* T-O-E-P-P-N-E-R, 187 U.S. 327 (1902).

21             Courts have broad discretion to grant retrials on

22   all or any submission, citing *Gasoline Products Company*

23   *versus Champlin,* C-H-A-M-P-L-I-N, *Refining Company,* 283

24   U.S. 494 (1931).

25             I also tentatively am concerned and would share

1   the thought that I would be inclined to reject Mattel's

2   claim that the jury's verdict on aiding and abetting breach

3   of duty and loyalty must be preserved.  The Jury Instruction

4   No. 27 provides that, quote*, the scope of the employee's*

5   *duty varies with the nature of the employee's relationship*

6   *with his employer,* end of quote.

7          That relationship was closely tied into the

8   inventions agreement which Judge Larson erroneously

9   interpreted.  In any event, Jury Instruction No. 28, which

10  concludes that Bryant breached his duty of loyalty, quote,

11  *as a matter of law,* end of quote, is seriously called into

12  question by the Ninth Circuit's discussion of employees

13  duties and on a more humorous note the last line in that

14  order.

15         Likewise, I tentatively would be inclined, at

16  least at this point, to conclude that the verdict on aiding

17  and abetting breach of fiduciary duty shouldn't be

18  preserved.  Indeed, Jury Instruction No. 28 provides that,

19  quote, *Bryant's fiduciary duty to Mattel is predicated upon*

20  *paragraph 1-A of the inventions agreement and his obligation*

21  *to keep propriety information confidential,* end of quote.

22         But the Ninth Circuit held that there was a

23  genuine issue of material fact as to whether the information

24  withheld by Bryant qualified as propriety information, as

25  Judge Larson erroneously concluded.

1          Finally, the verdict of intentional interference

2    of contract shouldn't be preserved.  Jury Instruction No. 22

3    provided that the fourth factor to the jury's inquiry should

4    be whether the conduct of MGA and/or Larian prevented or

5    made more difficult Bryant's performance under the contract.

6    Of course, the scope of Bryant's performance was a genuine

7    issue of material fact that Judge Larson erroneously

8    determined at summary judgment.

9          So these are only initial or tentative thoughts on

10   the court's part.  You can brief them as you argue, or you

11   can brief them as you wish.  But your briefing needs to be

12   fast, or I'm going to proceed to deal with the issue on the

13   Rule 59(d).  So I'll give you the first opportunity to be

14   fast.  And "fast" means fast.

15         So I'll come back to that later this evening,

16   because I would like to go on with Mr. Corey so he's not

17   inconvenienced unnecessarily.  And you'll have a brief

18   discussion amongst yourselves, but I think Mattel is right.

19   It's not the proper process, or procedure.  There needs to

20   be a motion for new trial.  How long that takes -- sit down.

21         All right.  Now, concerning the hearing about

22   Mattel's disclosure in connection with the Mexican criminal

23   prosecution.  I think Mr. Corey paid the courtesy of

24   canceling a trip, and he's here.

25         Where is Mr. Corey?

1        MR. COREY:  Here, your Honor.

2        THE COURT:  Okay.  Thank you.  Come on up here and

3   have a seat.

4        In this court's August 3rd, 2010 order on pending

5   discovery motions, Docket No. 8459, Mr. Corey expressed

6   concern that Mattel's counsel was violating the terms of the

7   protective order by using discovery obtained in this

8   litigation to motivate the issuance of arrest warrants in

9   Mexico.

10       Mattel has long taken the position that it seeks

11  more expansive discovery and greater transparency.  This has

12  been the attorney's mantra, and I hope that this court has

13  supplied that over the last six months with its generosity

14  in, basically, finding for Mattel in your request for 25

15  depositions when, of course, MGA wanted five or less.  I

16  forget the exact number when you came into my court.

17       But it's hard to demand integrity in the discovery

18  process, if there is any undermining of that process.  I

19  haven't reached that conclusion, but obviously I'm

20  concerned, and I summoned Mr. Corey this evening.

21       Now, there has been a lot of concern -- Mr. Corey,

22  you can step down for a moment.  You can be more comfortable

23  at counsel table.  If I'm going to have you take the witness

24  stand, you'll be sworn.

25       There's a lot of concern, and I heard a lot of

*DEBORAH D. PARKER, U.S. COURT REPORTER*

 1   nonsense from both parties about Judge Larson's orders

 2   having to be reconsidered, reinterpreted, or misunderstood.

 3   Those days are gone.  My orders are absolutely clear.

 4   Although I started cautiously because I have phase two, or

 5   whatever it was called, now I've got phase one and two.  So

 6   since this whole lawsuit now belongs to me, I don't have to

 7   spell out to you the capability of this court to take strong

 8   action.

 9          So when we are all done with motions that you

10   don't understand -- my motions are absolutely clear.  My

11   motions and my writing is absolutely clear.  My rulings are

12   absolutely clear.  Woe to the person who comes back to me

13   with the past nonsense that has been occurring in these

14   proceedings.

15          Paragraph four of the stipulated protective order

16   provides that the parties may only use confidential and

17   attorney's eyes only materials, quote, *for purposes of*

18   *litigation*, end of quote, which includes, quote, *preparation*

19   *for participation in and prosecution and defense of any*

20   *suit, motion, trial, appeal, hearing, review, or other*

21   *judicial proceeding*, Docket No. 54, Case No. 04-9059.

22          Now, I note that the phrase *purposes of litigation*

23   does not include encouraging law enforcement to issue arrest

24   warrants, or encouraging prosecutors to file charges, nor

25   does it include the disclosure of materials for the purposes

1   of an investigation untethered from litigation.  It is

2   limited to preparing for, participating in and prosecuting a

3   lawsuit, not a potential or desired lawsuit.

4          However, MGA's briefing presented a credible

5   concern that Mattel was misusing information for this

6   litigation for improper purposes.  I think that that had

7   been the mantra the first evening that we met informally,

8   and I think that has been a constant concern on MGA's part.

9          For example, MGA has noted that, quote*: The court*

10  *in Mexico initially denied Mattel's request for arrest*

11  *warrants against Machado, Trueba and Vargas.*  But after a

12  year, arrest warrants were issued against three individuals,

13  Docket No. 82AA at 2.

14         Further, on March 30th, 2010, Mr. John Corey

15  represented allegedly to MGA's Mexico attorney that he

16  intended to provide a copy of a compact disc produced by

17  MGA, at Bates No. MGA 3815506.

18         And Mr. Corey, I'm going to have you on the stand

19  in a moment, but I suggest you get a piece of paper.  There

20  won't be any surprises.  I want to give you time to consider

21  your answers.  I'm going to swear you, and you're going to

22  be under penalty of perjury.  You can take time, and you can

23  consult counsel.

24         Pursuant to a request from the Attorney General of

25  Mexico delivered in connection with a criminal

1  investigation, which is Exhibit A to Docket No. 82AA -- and

2  I encourage you get those documents before you take the

3  stand -- MGA's counsel rejected to the disclosure of the

4  compact disc, and Mr. Corey requested clarification.

5  Clarification by both sides.

6        MGA then moved for a protective order prohibiting

7  disclosure to the Mexican prosecuting authority of the

8  compact disc, as well as other materials obtained during

9  discovery and Mattel filed a cross motion for the issue of

10 apostilles, as well as to compel discovery for use in

11 extraterritorial proceeding.  This court denied both motions

12 and admonished Mattel to cease using this proceeding as a

13 subterfuge for enhancement of a criminal prosecution in

14 Mexico.

15       In light of the rapidly approaching discovery

16 deadline, this court finds it prudent now to subject Mattel

17 to a status check to measure its compliance with this

18 court's instruction.

19       Let me start by saying, tentatively -- and not as

20 a final ruling yet -- Mattel's handling of the Mexican

21 criminal prosecution has potentially interfered with the

22 administration of this lawsuit.

23       It's no longer a dispute -- what's no longer in

24 dispute -- and the examples are becoming legion -- the

25 criminal prosecution has hindered the provision of

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1  deposition testimony by key players in Mexico.  The criminal

2  prosecution resulted in a waiver of frivolous discovery

3  motions that have plagued the court's docket and attempted

4  to distract the court from the administration of this case

5  and, perhaps, most critically, the criminal prosecution has

6  hurt transparency and trust between the parties by Mattel's

7  so-called sudden discussions with Pablo Vargas.

8          These are the questions I'm going to ask you, and

9  I'm going to start in camera.  In case you have a privilege,

10  I'm going to pay you that courtesy.  You will probably be

11  subject to cross-examination.

12          Write these down:

13          1.  Have you disclosed the contents of

14  Mr. Machado's deposition testimony to law enforcement or

15  prosecutors in Mexico?

16          Your first answer will simply be "yes" or "no,"

17  and then you can give me an explanation.

18          2.  Have you disclosed the contents of any

19  electronic media produced in this litigation to law

20  enforcement or prosecutors in Mexico?

21          I'll repeat that:  Have you disclosed the contents

22  of any electronic media produced in this litigation to law

23  enforcement or prosecutors in Mexico?

24          3.  Have you disclosed the contents of the

25  30(b)(6) deposition testimony rendered by Ms. Kummerle, or

1    Mr. Small to law enforcement or prosecutors in Mexico?

2          I'll repeat that:  Have you disclosed the contents

3    of any electronic media -- strike that.

4          Have you disclosed the contents of any 30(b)(6)

5    deposition testimony rendered by Ms. Kummerle, or Mr. Small

6    to law enforcement or prosecutors in Mexico?

7          4.  Have you disclosed any written discovery

8    produced by MGA Mexico or MGA to law enforcement or

9    prosecutors in Mexico?

10          Of course, if the answer is "yes" to that, I want

11    to know who and I want to know specifically when that

12    occurred.

13          MR. ZELLER:  Could you repeat No. 4 again, please?

14    That was the last one.

15          THE COURT:  Have you disclosed any other written

16    discovery produced by MGA Mexico or MGA to law enforcement

17    or prosecutors in Mexico?

18          And of course, if the answer is "no," so be it; if

19    the answer is "yes," I'm going to want to know who and when

20    that occurred.

21          5.  Has the information you disclosed, if you have

22    disclosed it to law enforcement or prosecutors in Mexico,

23    been accompanied by any opinion or advice about the manner

24    in which that information should be used, either orally or

25    in writing; if so, to whom and when?

1          Has the information you have disclosed to law

2    enforcement or prosecutors in Mexico been accompanied by any

3    opinion or advice about the manner in which that information

4    should be used?

5          If the answer is "no," so be it; if the answer is

6    "yes," to whom and when?

7          6.  Have you linked the information disclosed to

8    law enforcement or prosecutors with potential issuance of

9    arrest warrants?

10          Have you ever linked the information disclosed to

11   law enforcement or prosecutors with the potential issuance

12   of arrest warrants?

13          7.  Have you directly requested that arrest

14   warrants be issued for any individuals in Mexico?

15          Now, I'm not going to play games with that.

16   "Directly" means to law enforcement entity, anyone

17   associated with law enforcement.

18          MR. ZELLER:  No. 7, one more time.

19          THE COURT:  Have you ever requested that an arrest

20   warrant be issued for any individuals in Mexico?

21          8.  Have you always appraised MGA of your

22   disclosures of material from this lawsuit to Mexican law

23   enforcement or prosecutors?

24          Have you always appraised MGA of your disclosure

25   of materials from this lawsuit to Mexican law enforcement or

1    prosecutors?

2            Now, those are my initial questions and I propose

3    to conduct that in camera, because there may be a privilege.

4    You may assert a privilege.  I don't know how that's going

5    to play out, and I want to give you time to discuss this

6    matter amongst Mattel.

7            I may give you time, if you choose, until

8    Mr. Quinn is here this evening, so I have the full panoply

9    of Mattel present.  This is serious.  I want to take it

10   seriously.

11           To put you on alert, we're going to schedule a

12   hearing that I was going to schedule for Saturday, but it

13   will be Tuesday, August 31st at 5:00 p.m., concerning

14   IGWT826's motion for judgment on the pleadings;

15           Second, all pending discovery disputes as

16   identified in the parties' stipulations which will be filed

17   today or tonight;

18           Third, Mattel's ex parte applications first to

19   expedite discovery on MGA's counterclaims and reply and

20   second to strike MGA's August 10, 2010 motions to compel.

21           Now, in all likelihood, the court will hold in

22   abeyance Mattel's ex parte application to expedite

23   discovery, pending resolution of Mattel's responses to MGA's

24   counterclaims and reply.  Mattel's ex parte application to

25   strike MGA's August 10th, 2010 motions will also, in all

1   likelihood, be held in abeyance pending the filing of

2   Mattel's response to MGA's counterclaims and reply, but I'm

3   not certain of that.  I want to discuss that with you a

4   little later tonight.

5           I wanted to get all of that out today on my

6   initial concern.  I don't care if we reconvene in five

7   minutes, or five hours.  And I think I would appreciate

8   Mr. Quinn being here, so that there can't be any claim that

9   there is one side that's been disenfranchised.

10          Also, I paid you the courtesy of telling you that

11  I'll proceed ex parte first just to be cautious; but in all

12  likelihood, this will be subject to cross-examination this

13  evening.  So it will be a long night.  I'm going to take a

14  recess for a moment.  We will meet in --

15          Do we have a note from the jury?

16          THE CLERK:  No.

17          THE COURT:  When will Mr. Quinn be here?

18          MR. ZELLER:  I know that he was on his way --

19          THE COURT:  Why don't we wait for his being

20  present.  I want him to be here.

21          MR. ZELLER:  I can check.  Honestly, your Honor, I

22  don't think that we need to wait for Mr. Quinn.

23          THE COURT:  That's fine.

24          MR. ZELLER:  I would like to proceed --

25          THE COURT:  Mr. Corey is one of the deciding

1   factors.  I think you should pay the courtesy of talking to

2   the gentleman.

3          MR. ZELLER:  I will chat.

4          THE COURT:  Thank you.

5          Now, I'll come back then in 15 or 20 minutes and

6   get your thoughts just so I know there's been a discussion.

7   I don't think that's necessarily your choice.

8          Mr. Larian will be here at?

9          MS. HURST:  I think he's on his way from the

10  airport, your Honor.

11         THE COURT:  Excellent.  I would suggest that we

12  call Mr. Nolan.

13         MS. HURST:  Mr. Nolan is on his way.

14         THE COURT:  We're going to resolve a lot this

15  evening.  Or at least if I need, after hearing Mr. Nolan's

16  testimony to hear from Mr. Nolan (sic), I want to do that in

17  close proximity.

18         MS. HURST:  Mr. Nolan is on his way, your Honor.

19         THE COURT:  I may want to hear from Rasmussen.

20  I'm not certain yet, but it depends upon what Mr. Larian has

21  to say this evening.

22         MS. HURST:  You may want to hear from who, your

23  Honor?

24         THE COURT:  Well, I'll come back to that.  I don't

25  want you to concern yourself with that.

20

```
 1              All right.  Thank you very much.  I'll come back,
 2    let's say, in 15 or 20 minutes and hear your initial
 3    thoughts, but I do want Mr. Quinn here.
 4              Now, do you want to have a substitution,
 5    Ms. Hurst, or Mr. McConville?
 6              Because Ms. Hurst, I'm most concerned about you.
 7    I'll say one thing to you:  You won't have a family life.  I
 8    know you think I'm joking.  But when you're looking at me at
 9    2:00 o'clock in the morning, I'm telling you, get out of
10    this lawsuit.
11              MS. HURST:  You got to be kidding, your Honor.
12              THE COURT:  I'm not kidding you.  You think I'm
13    joking, don't you?
14              MS. HURST:  I don't think you're joking.  I think
15    you don't understand my -- you know, ambition in this case
16    and my role in it, if you're suggesting that I get out of
17    it.
18              THE COURT:  You're staying then?
19              MS. HURST:  You bet.
20              THE COURT:  I'm so appreciative you are.  But now
21    I feel good morally and ethically, because I'm not going to
22    hear about the kids again.
23              MS. HURST:  Okay.  This weekend is their birthday.
24              THE COURT:  This weekend you're gone.
25              MS. HURST:  Thank you.
```

```
 1              THE COURT:  That's it.

 2              MS. HURST:  Understood.

 3              THE COURT:  Don't raise them again.  Understood?

 4              MS. HURST:  Understood.

 5              THE COURT:  That's it.  Not going to play the

 6     sympathy card now.

 7              Mr. McConville, you want out?

 8              MR. MCCONVILLE:  I'm in.

 9              THE COURT:  You're in.

10              MS. HURST:  Mr. Molinski is in, too.

11              THE COURT:  No, he's not.  Two counsel.

12              Mr. Zeller, are you in or out?

13              MR. ZELLER:  I'm in, your Honor.

14              THE COURT:  Okay.  What about Mr. Quinn?

15              MR. ZELLER:  He's in as well, as soon as he gets

16     here.

17              THE COURT:  Okay.  Thank you very much.

18         (At 4:19 p.m., proceedings were adjourned.)

19

20                              -oOo-

21

22

23

24

25
```

22

```
 1                        CERTIFICATE

 2          I hereby certify that pursuant to Section 753,

 3   Title 28, United States Code, the foregoing is a true and

 4   correct transcript of the stenographically reported

 5   proceedings held in the above-entitled matter and that the

 6   transcript page format is in conformance with the

 7   regulations of the Judicial Conference of the United States.

 8

 9   Date:  September 1, 2010

10

11

12                       _____

13                       Deborah D. Parker, Official Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*