```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3              SOUTHERN DIVISION AT SANTA ANA

 4         HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 5

 6
     CARTER BRYANT, an individual,    )
 7                                    )
                   PLAINTIFF,         )
 8                                    )
               vs.                    ) SACV NO. 04-9049-DOC
 9                                    ) VOLUME II
     MATTEL, INC., a Delaware         )
10   corporation,                     )
                                      )
11                 DEFENDANT.         )
     _____ )
12   CONSOLIDATED WITH MATTEL, INC., vs.)
     BRYANT and MGA ENTERTAINMENT, INC. )
13   vs. MATTEL, INC.                   )

14

15

16           REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                  SANTA ANA, CALIFORNIA

18              WEDNESDAY, SEPTEMBER 8, 2010

19                       9:00 P.M.

20

21             DEBORAH D. PARKER, CSR 10342
                  OFFICIAL COURT REPORTER
22             UNITED STATES DISTRICT COURT
                  411 WEST FOURTH STREET
23                     SUITE 1-053
               SANTA ANA, CALIFORNIA 92701
24                    (714) 542-8409
                 D.PARKER@IX.NETCOM.COM
25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   APPEARANCES OF COUNSEL:

 2       FOR THE DEFENDANT, MATTEL, INC.:

 3                           MICHAEL ZELLER
                             DIANE CAFFERATA HUTNYAN
 4                           SCOTT L. WATSON
                             QUINN EMANUEL URQUHART
 5                           865 SOUTH FIGUEROA STREET
                             10TH FLOOR
 6                           LOS ANGELES, CALIFORNIA 90017
                             (213) 443-3000
 7

 8       FOR THE INTERVENOR, MGA ENTERTAINMENT, INC.:

 9                           ANNETTE L. HURST
                             WARRINGTON PARKER
10                           ORRICK, HERRINGTON & SUTCLIFFE, LLP
                             THE ORRICK BUILDING
11                           405 HOWARD STREET
                             SAN FRANCISCO, CALIFORNIA 94105
12                           (415) 773-5740

13                           THOMAS S. MCCONVILLE
                             ORRICK, HERRINGTON & SUTCLIFFE, LLP
14                           4 PARK PLAZA
                             SUITE 1600
15                           IRVINE, CALIFORNIA 92614
                             (949) 567-6700
16

17

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

 3                          ALEXANDER H. COTE
                            SCHEPER KIM & HARRIS LLP
 4                          601 WEST 5TH STREET
                            12TH FLOOR
 5                          LOS ANGELES, CALIFORNIA 90071
                            (213) 613-4660
 6

 7        ALSO PRESENT:  JUDGE JAMES SMITH
                         DIANE E. BARRY, ESQ.
 8                       INTERNATIONAL LITIGATION SERVCIES

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1         SANTA ANA, CALIFORNIA; WEDNESDAY, SEPTEMBER 8, 2010;
 2                              9:00 P.M.
 3                               -oOo-
 4            THE COURT:  We're on the record.  Mattel and MGA
 5   are present.
 6            Concerning the Discovery Master Order No. 46,
 7   which is Docket 6476, the court is now in receipt and Mattel
 8   is now in receipt of --
 9            MR. MCCONVILLE:  -- of the documents that are
10   responsive to the requests that are required by those
11   interrogatories.
12            THE COURT:  But Mattel is in receipt of these?
13            MR. MCCONVILLE:  Oh, yes.  I'm sorry, your Honor.
14            THE COURT:  Are they?
15            MR. MCCONVILLE:  Yes.
16            THE COURT:  Okay.  I order the motion to compel
17   documents on Docket No. 8276.
18            Okay.  Thank you.
19         (Brief Pause.)
20            THE COURT:  We are back on the record.
21            All parties are present.
22            There is an agreement concerning a letter that
23   would be sent out to potential jurors to form a jury pool.
24   I think we should say only 16 jurors would be selected.  I'm
25   going to settle on eight and eight, or six and 10, depending
```

1   upon your argument to give you more time.
2           So we'll change -- only 16 jurors will be selected
3   instead of 20.  I'm also going to state that we are seeking
4   a compilation of 80 prospective jurors, because even motions
5   for cause, that should be more than enough.
6           Also, we should say that the trial will be in
7   session from Tuesday to Friday, 8:30 a.m. to 5:00 p.m.  And
8   we should not decide the time, except I'm going to suggest
9   this:  I would think that we would put down four months even
10  if it wasn't a four-month trial, depending upon the summary
11  judgment motions for this reason.  You're going to take a
12  run through January and February.  And sometime in March,
13  you're going to get really, really tired.  And the perfect
14  thing to do in a trial like this is to have a split between
15  the end of the plaintiff's case in a perfect world and the
16  beginning of the defense case.  Because what you don't want
17  to do is take a split after both cases conclude and then
18  start into the arguments.
19          So think about that tactic for a moment.  Now, we
20  can take just a straight run through it.  I'm just worried
21  about your ability to hold up, and I'm worried about the
22  jurors' ability to hold up.  So normally we would want it
23  about two weeks someplace.  Hence, at the timing of that
24  becomes critical.  You got to tell them at the beginning to
25  pick days, because that's what they do.  You get more jurors

1    saying, *Oh, if I know I've got two weeks off in March*
2    *sometime --*
3              Now, the problem is, one is, Easter, is that a
4    good time to go?
5              Usually, it's early in March sometime.  It doesn't
6    really matter.  I've tended to stay away from taking time at
7    Easter because most of your jurors on these kinds of cases
8    don't have children.  So, therefore, they kind of looked at
9    a 10- to 12-month -- I'm sorry, 10- to 12-week run and
10   everybody is pretty exhausted by that time.  So, in most of
11   the six-month trials, we've actually had two, two-week
12   breaks.  So I'm suggesting that that would be all right.  If
13   it's a two-month trial, we're not going to take any break.
14   If it's a three- to four-month trial, you're going to need a
15   break sometime.  We can talk about that later on.
16             So I think that what we should do, assuming
17   hypothetically it's a four-month trial, we're telling the
18   jury it's a four-month trial.  If it's less --
19             I'm sorry.  It's my fault.
20             So I'm thinking out loud.  We won't complete this
21   tonight but we'll be far enough along the way.  I'm going to
22   put down four months right now.  I'm going to say it's
23   starting on Tuesday, January -- is that the 4th?
24             Look at your calendar.  2011?
25             MR. MCCONVILLE:  Yes, January 4th.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    THE COURT: January 4th, 2011, a pool of 80
2 prospective jurors, and it doesn't matter what number we put
3 on the sheet because later on, if I agree with your
4 position, Ms. Hurst, and it's more, we can just have the
5 jury commissioner get more. In other words, it doesn't
6 matter what we send out. If we've requested 20, or 200 on
7 this sheet, it doesn't affect how many jury summons we
8 eventually send out. There's going to be 16 jurors. I
9 don't propose to divide that between six and 10, or eight
10 and eight. Let's just tell them 16 people will be needed
11 for jury service and then summon them. It doesn't make a
12 difference, as far as the form is concerned.
13    We'll make it 8:30 to 5:00, so we can get more
14 people who could prospectively serve in case there are
15 children who need to be in school and who have
16 transportation issues. And then, I think at some point,
17 I'll send you down to talk to Frank Galvan, down in
18 Los Angeles. If you both do it there, I'll have you make an
19 appointment to sit down with the jury commissioner and just
20 walk you through the process of how those are divided out.
21    Okay. Let's go off the record for a moment.
22    *(Pause.)*
23    THE COURT: We are on the record in the Mattel and
24 MGA matter. All parties are present.
25    You had orally stated that -- well, at least to

1  the following three conditions:  First, that Mattel Bratz
2  and Jade allegations would not need to be formally pled but
3  would incorporated into the existing trade secret claims;
4          Second, MGA's existing affirmative defenses would
5  be deemed to be incorporated against the new trade secret
6  allegations;
7          And third, that Mattel's trade secrets theory
8  would be limited to Brian's inventions at Mattel and not any
9  other Mattel employees' inventions.
10         In other words, another way of saying that is:
11 What do you want the court to decide concerning that?
12         MS. HURST:  I didn't hear the second point, your
13 Honor.  I apologize.
14         THE COURT:  It was that MGA existing affirmative
15 defenses would be deemed to be incorporated against the new
16 trade secret allegation.
17         So what I'm inquiring about is:  What are you
18 disagreeing about?
19         MS. HURST:  Number one, we understand the court's
20 ruling but we are not waiving our point of error that this
21 was not part of the pleading and that amendment needed to be
22 granted.
23         THE COURT:  So you simply need the court to affirm
24 its order then; in other words, to make a ruling.
25         MS. HURST:  And the second point was:  With

respect to the affirmative defenses, we did not agree that it was limited to the existing defenses but that all affirmative defenses were reserved.

And Mr. Zeller inquired, *Well, how do we know if there were any new ones?* And that's a legitimate inquiry.

I said, *We need you to supplement your interrogatory responses with respect to this. If there's something new here that you haven't previously disclosed and then we'll respond with interrogatory responses, as well as to whether there are additional affirmative defenses.*

I just don't want to be in a position of waiving any of our points of error on this, your Honor.

THE COURT: Mr. Zeller.

MR. ZELLER: First, Mattel believes that the court's recitation is correct.

From our perspective, the important thing is simply -- and we're flexible in terms however this is accomplished that we are provided notice of any additional defenses that MGA may have. We're not going to be sticklers and say it must be in an answer. I have offered to MGA to simply say, *Send it to us in e-mail, or a letter, or confirm that you don't have any additional affirmative defenses.*

So we're not looking to create more paper or impose any kind of technical requirements on MGA in terms of how they communicate that to us if there is going to be an

1   additional defense.
2            THE COURT:  Well, this is a naive position.  But
3   what happens if I just set a cutoff date?
4            MR. ZELLER:  For the additional affirmative
5   defenses?
6            THE COURT:  Absolutely.
7            MR. ZELLER:  Well, I believe that that has to be
8   part of it, your Honor.  Absolutely.
9            MS. HURST:  But, your Honor, the thing we have to
10  know is if they're trying to change their ownership theory
11  here.  We had this whole argument and that whole byplay and
12  Mr. Zeller saying, *Oh, well, there's some theory other than*
13  *the contract now under which we're going to claim ownership.*
14  *And I've got no idea what that is.*
15           THE COURT:  Why do I have to decide this now?
16           In other words, by the time of summary judgment,
17  all this sorts out.
18           MS. HURST:  Well, we need to know what that is.  I
19  mean, if there is such a thing.  I mean, if they got some
20  secret new theory of ownership -- which, by the way, would
21  be totally inconsistent with them changing their theory of
22  ownership with the remand and the mandate.  But if that's
23  what they are doing, we need to know right away.
24           MR. ZELLER:  So the record is clear.  I stated to
25  MGA's counsel that we were expecting to supplement our

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1  interrogatory responses on the subject as early as Friday.
2  So I mean, this is --
3           THE COURT:  Friday?
4           MR. ZELLER:  Yes.  So this is -- I mean, in many
5  respects -- and what I said in response --
6           THE COURT:  Are you going to supplement by this
7  Friday?
8           MR. ZELLER:  Yes.
9           THE COURT:  By what time?
10          MR. ZELLER:  I would expect 5:00 o'clock, your
11 Honor.  End of the day.
12          MS. HURST:  That's great.  We just didn't want the
13 court to set any cutoff without us having had that
14 opportunity first.
15          THE COURT:  Is that agreeable?
16          MS. HURST:  Absolutely.
17          THE COURT:  Now, is this what we're doing
18 Saturday?
19          Are we looking at these on Saturday?
20          MR. ZELLER:  I'm sorry.  Doing what on Saturday,
21 your Honor?
22          I mean, certainly, I would expect that there is
23 going to be a prompt deadline for them to supplement on
24 their affirmative defenses, as well as, of course, if there
25 is something new, obviously MGA in kind needs to elaborate

1  on those defenses if there are additional ones in its
2  interrogatory responses.  We certainly have outstanding
3  contention interrogatories.
4          THE COURT:  Well, knowing that Friday, by
5  5:00 o'clock is when Mattel is going to, in a sense, give
6  you notice, set up a schedule for me.
7          What do you want the court to do, then, this
8  evening concerning this motion?
9          MS. HURST:  I don't think we need anything else,
10 your Honor.
11         THE COURT:  Once you have that representation that
12 Friday, 5:00 o'clock --
13         MS. HURST:  Right.  And then, once we take a look
14 at that, we can propose to them how long we need to respond
15 further.  And if there's disagreement, then the court can
16 get involved; if there's not, then the court won't need to
17 get involved.
18         THE COURT:  Is that acceptable to Mattel?
19         MR. ZELLER:  It is, your Honor.
20         THE COURT:  Then, I'm not going to do anything
21 concerning this at the present time.  I'll wait to hear from
22 the parties.
23         Acceptable?
24         MS. HURST:  Yes, your Honor.
25         MR. ZELLER:  Acceptable, your Honor.

1         THE COURT: Now, can I get a copy also by Friday,
2    5:00 o'clock?
3         MR. ZELLER: Yes, we can.
4         THE COURT: As well as MGA?
5         MR. MCCONVILLE: Of course.
6         THE COURT: All right. Then, we'll go off the
7    record again and continue to work with Judge Smith.
8         MR. ZELLER: Thank you.
9         MS. HURST: Thank you, your Honor.
10        *(Pause.)*
11        THE COURT: It's been pointed out to me that you
12   still need to resolve the first issue, and that is: Does
13   the Mattel, Bratz and Jade allegations need to be formally
14   pled, or are they going to be incorporated?
15        Thank you. That's, of course, into the existing
16   trade secret claims, so there is a complete record.
17        MS. HURST: I mean, I think, your Honor, frankly,
18   preserving all prior positions, the answer to that question
19   at this point is, it depends on what it says. If they are
20   completely changing their theory of the case, then that
21   should be pled and we should have an opportunity to address
22   that procedurally.
23        And I understand that we have a respectful
24   disagreement with the court about whether it's already in
25   the pleading or not. We understood the way the court's

14

1  orders have gone at this point to mean the court was
2  interpreting it as already being within the pleading and
3  them not needing leave to amend.  And if I misunderstood the
4  court's orders in that regard, I apologize.  So that was
5  what I was responding to.
6           MR. ZELLER:  Your Honor, I think that the way it
7  should be dealt with -- and particularly if we, as Mattel,
8  have said that MGA need not prepare a formal answer, I
9  think, frankly, the practical approach to this says, is that
10 the pleadings be deemed to include that as the allegation.
11          I don't see any reason to go through the paperwork
12 and the additional issues that may very well start to arise
13 from it.  That will be completely collateral.  If we do yet
14 another pleading and file it, I think it's -- the court's
15 initial viewpoint, as I understood it, simply that the
16 allegations are deemed to include it is the appropriate way
17 of proceeding.  I mean, obviously, if Mattel is going to be
18 required to do another formal pleading, then potentially we
19 would have to revisit, I think, the issue of what MGA's
20 response ought to be and how promptly it ought to do it.
21          THE COURT:  Okay.  Thank you very much.
22          MR. ZELLER:  Thank you.
23          JUDGE SMITH:  I think we have resolution on the
24 search terms.
25          THE COURT:  Off the record.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1        (Pause.)
 2              JUDGE SMITH:  We're in court.  Both parties
 3   present, represented by counsel.
 4              We are dealing with the issue as to the
 5   designation of two additional 30-day periods by MGA,
 6   regarding which tapes, backup tapes are going to be
 7   searched, or looked at in order to find backup copies of
 8   e-mails that were deleted by Mr. Eckert.
 9              You wanted to designate two new 30-day periods; is
10   that correct?
11              MS. HURST:  Yes.  Thank you.
12              The 30 days beginning August 2nd, 2005 through and
13   including September 1st, 2005 and the 30 days beginning
14   December 22nd, 2005 through and including January 21st,
15   2006.
16              JUDGE SMITH:  Now, is it understood by all counsel
17   that, those dates having been designated, that the
18   provisions of the August 19th report and recommendation -- I
19   believe it was August 19th that were implemented by the
20   court and signed after its recommendation -- will apply to
21   those dates and the parties will meet and confer and attempt
22   to catalog or index the dates to identify which dates are
23   relevant to those time periods.
24              Is that your understanding, or not?
25              MR. ZELLER:  Yes, I believe it is.
```

1  MS. HURST: Yes. And there had been some
2  indication that there were backup tapes that had been
3  previously indexed in connection with productions in the
4  case. And so, we had inquired -- and I believe Mattel is
5  investigating -- which ones had been previously indexed.
6  And I don't know if they have gotten that information. We
7  have not seen that information.
8  JUDGE SMITH: Okay. Give me a timeline on how
9  long it's going to take to get that done, the index or
10 catalog, however you want to call it.
11 MS. HURST: Right.
12 JUDGE SMITH: What we're trying to do so that it
13 will be transparent at least, what we're trying to do, we're
14 trying to identify which tapes are going to contain backup
15 material for the time period specified without having to
16 restore the tapes in order to see what's on them. That's
17 the process. And that's what we need to do. So what --
18 How long is it going to take you to do that?
19 MR. ZELLER: I'm going to need to speak to the
20 technical people for a number on that.
21 JUDGE SMITH: Can you report back?
22 THE COURT: Give them a call.
23 MR. ZELLER: I'll see who I can -- I mean, these
24 are literally the technical people, not the lawyers.
25 THE COURT: Fine. Use your phone. We'll find out

```
 1  tonight.
 2              MS. HURST:  Thank you.
 3              THE COURT:  Off the record.
 4      (At 10:05 p.m., proceedings were adjourned.)
 5
 6                          -oOo-
 7
 8                        CERTIFICATE
 9       I hereby certify that pursuant to Section 753,
10  Title 28, United States Code, the foregoing is a true and
11  correct transcript of the stenographically reported
12  proceedings held in the above-entitled matter and that the
13  transcript page format is in conformance with the
14  regulations of the Judicial Conference of the United States.
15
16  Date:  September 14, 2010
17
18
19                       _____
20                       Deborah D. Parker, Official Reporter
21
22
23
24
25
```