1    **UNITED STATES DISTRICT COURT**

2    **CENTRAL DISTRICT OF CALIFORNIA**

3    **SOUTHERN DIVISION AT SANTA ANA**

4        HONORABLE DAVID O. CARTER, JUDGE PRESIDING

5

6
     CARTER BRYANT, an individual,      )
7                                        )
                  PLAINTIFF,             )
8                                        )
             vs.                         ) SACV NO. 04-9049-DOC
9                                        )
     MATTEL, INC., a Delaware           )
10   corporation,                        )
                                         )
11                DEFENDANT.             )
     _____)
12   CONSOLIDATED WITH MATTEL, INC., vs.)
     BRYANT and MGA ENTERTAINMENT, INC. )
13   vs. MATTEL, INC._____)

14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                 SANTA ANA, CALIFORNIA

18            WEDNESDAY, SEPTEMBER 29, 2010

19                     6:34 P.M.

20

21            **DEBORAH D. PARKER, CSR 10342**
              **OFFICIAL COURT REPORTER**
22            **UNITED STATES DISTRICT COURT**
              **411 WEST FOURTH STREET**
23                  **SUITE 1-053**
              **SANTA ANA, CALIFORNIA 92701**
24                **(714) 542-8409**
              **D.PARKER@IX.NETCOM.COM**

25

2

```
1    APPEARANCES OF COUNSEL:

2        FOR THE DEFENDANT, MATTEL, INC.:

3                            MICHAEL ZELLER
                            JOHN QUINN
4                            QUINN EMANUEL URQUHART
                            865 SOUTH FIGUEROA STREET
5                            10TH FLOOR
                            LOS ANGELES, CALIFORNIA 90017
6                            (213) 443-3000

7

         FOR THE INTERVENOR, MGA ENTERTAINMENT, INC.:
8
                            ANNETTE L. HURST
9                            ORRICK, HERRINGTON & SUTCLIFFE, LLP
                            THE ORRICK BUILDING
10                            405 HOWARD STREET
                            SAN FRANCISCO, CALIFORNIA 94105
11                            (415) 773-5740

12                            THOMAS S. MCCONVILLE
                            ORRICK, HERRINGTON & SUTCLIFFE, LLP
13                            4 PARK PLAZA
                            SUITE 1600
14                            IRVINE, CALIFORNIA 92614
                            (949) 567-6700
15
                            DENISE M. MINGRONE
16                            ORRICK, HERRINGTON & SUTCLIFFE, LLP
                            1000 MARSH ROAD
17                            MENLO PARK, CALIFORNIA 94025
                            (650) 614-7682
18

19

20

21

22

23

24

25
```

```
 1         SANTA ANA, CALIFORNIA; WEDNESDAY, SEPTEMBER 29, 2010;

 2                            6:34 P.M.

 3                             -oOo-

 4         THE COURT:  We are on the record in MGA and

 5    Mattel.

 6         Counsel are present.  There was four or five

 7    issues that I wanted to discuss with you.  But the primary

 8    issue you came over with this afternoon concerned

 9    Mr. Eckert's testimony.

10         Mr. Eckert is present.  Mr. Larian is present.

11         And the issue is?

12         MR. ZELLER:  Your Honor, Eckert is here for the

13    continued deposition after eight, nine, 10 days, whatever

14    the number is, because of a specific motion that MGA made

15    that's Docket No. 8377 where they requested that Mr. Eckert

16    be ordered to come back to testify concerning a topic nine

17    of a deposition notice which the court may recall related to

18    a particular issue, concerning Mattel's policies regarding

19    licenses and in particular whether Mattel had a policy of

20    discouraging or not licensing with licensees that also had

21    license deals with MGA.  That was the particular topic.

22    That's what they moved on.

23         The court granted that motion.  And the court on

24    an order dated September 17th, 2010, ordered at 11:00, the

25    court said that the court agreed with MGA; that Mr. Eckert
```

4

 1   was not adequately prepared to testify on that subject,

 2   because he had not spoken with Mandana Sadigh, or Neil

 3   Friedman and had instructed that he appear for additional

 4   deposition for four hours.  So that was the relief that was

 5   sought.  The only relief that was sought.  That one topic.

 6   And the court entered that order.

 7         Now, I will also say, your Honor, the court may

 8   remember there's a Mattel employee who is gravely ill.  We

 9   discussed this off the record.  There's a document called

10   the so-called Bratz brief that they -- MGA's counsel

11   indicated that they wanted to examine that employee

12   Mr. Bossick on.  We all, thinking together, couldn't come up

13   with a way to do that, so the court on its own said, *You can*

14   *ask -- Mr. Eckert is coming back anyway.  You can ask*

15   *Mr. Eckert about that.*

16         So on that basis, we have prepared Mr. Eckert.  He

17   is prepared, after all these days of examination, to testify

18   on these particular subjects.  Right out of the box, the

19   first question asked by MGA's counsel was to the effect of:

20   *When did you first consider bringing a claim against Carter*

21   *Bryant?*

22         Your Honor, we're back now to, not only not within

23   the scope of the court's order, but we're back replowing

24   field that's been covered before, back to -- this is not a

25   deposition being taken in a vacuum.  MGA's --

1          There is a history here, and we're not starting

2     over.  At least, I didn't think we were starting over.

3          THE COURT:  Just a moment.  Let me stop you.

4          Just assuming you're right for a moment, it

5     sounds, first, trivial.  My second concern is, I think I

6     afforded Mattel tremendous latitude concerning Mr. Larian.

7     Whether you got the answers you wanted or not, I don't know

8     if you'll agree on the record, but you and I both know that

9     Mr. Larian was brought back day after day far in excess of

10    Mr. Eckert.

11         So it's difficult for me to --

12         MR. ZELLER:  Well, if I can respond to that, your

13    Honor.  There were many, many determinations by the

14    discovery master and this court that Mr. Larian either had

15    not responded to questions or had been designated on many,

16    many subjects where he hadn't been educated.

17         Mr. Eckert hasn't been designated as a 30(b)(6)

18    witness on multiple subjects like Mr. Larian.  Mr. Eckert

19    doesn't have a record, at least in this court's record --

20         THE COURT:  Let's go back to the issue then.

21         MR. ZELLER:  Right.  So that is -- in fact, the

22    court has anticipated part of MGA's response is that --

23         THE COURT:  I anticipated their response.  That

24    was my concern.

25         MR. ZELLER:  It's a goose and gander situation

1    that the court -- just because, you know, they should get to

2    depose Mr. Eckert for as long as Mr. Larian was deposed,

3    your Honor, if that's the rule, that then puts in the hands

4    of Mr. Larian how long Mr. Eckert is going to be deposed.

5              THE COURT:  Let's go back to the issue.

6              MR. ZELLER:  So the issue is, your Honor, we

7    have -- he's here because of the order made on

8    September 17th, 2010, in response to their motion, Docket

9    No. 8377 that he appear to testify on a specific subject.

10             THE COURT:  Just a moment.  I want to hear the

11   questions you want to ask him.  I'm going to write these

12   down.

13             First question --

14             MS. HURST:  Your Honor, the question --

15             THE COURT:  I said, answer my question now.  I

16   don't have a lot of patience.

17             MS. HURST:  The question on which the witness was

18   instructed not to answer, the first question I asked today:

19   *When did you become aware that Mattel may be contemplating*

20   *any litigation concerning Carter Bryant?*

21             THE COURT:  And the relevance of that?

22             MS. HURST:  Your Honor --

23             THE COURT:  Had you asked him before -- well,

24   first of all, I'm going to give you some multiple questions.

25   Did you ask him before that same question?

```
 1              MS. HURST:  I had not.

 2              THE COURT:  What's your next question you want to

 3    ask him?

 4              MS. HURST:  It depends on the answer to that

 5    question.

 6              I have documents that I would like to refresh his

 7    recollection with about the timing of that, and it's -- I

 8    really --

 9              Your Honor, I would ask the witness be excused and

10    Mr. Quinn, if he's going to remain present for me to have to

11    reveal my work product, that he be instructed not to

12    disclose it to the witness in advance of the resumption of

13    the examination.

14              I do not want to be forced to lay out my strategy

15    for this deposition.  It's not proper.  Mattel has never

16    been forced to do that.  These are important issues.

17              And if I may respond to Mr. Quinn's argument.

18    When we argued the motion to compel at the hearing, I

19    also -- the court asked me how long did I need, and I

20    responded to the court also that based on the February 25th,

21    2010 order, which is Docket No. 7590, the equal time rule --

22    and that's equal time in personal capacity, not 30(b)(6)

23    capacity -- we had another half day.

24              And on that basis --

25              THE COURT:  I gave you four hours.
```

1          MS. HURST:  You gave us four hours, exactly.

2     Obviously, it wasn't going to take four hours to ask a

3     couple of questions about him talking to Mandana Sadign and

4     Neal Freedman.

5          We got four hours because there were additional

6     issues about which we needed to examine the witness.  And,

7     your Honor, in the meantime, since that order was granted,

8     all this Villasenor evidence has come up as well.  And,

9     obviously, I need to be permitted to examine the witness

10    about that.

11         THE COURT:  Now, depending upon what the Special

12    Master tells me, perhaps, the most appropriate is you are

13    requesting specific areas in camera and allowing me to

14    examine that because four hours may not be satisfactory.  It

15    might be eight, or 10, or 12 hours.  It might be one hour.

16         But, right now, since you don't know where you're

17    going, depending upon the answer, it's difficult for me to

18    make a ruling.

19         What was the Special Master's thought?

20         MS. HURST:  The Special Master ordered the witness

21    to answer the question.

22         THE COURT:  Okay.

23         MS. HURST:  Mr. Quinn appealed.  With all due

24    respect, there is no reasonable ground for this appeal.  And

25    it is not proper as a general matter to instruct a witness

1    not to answer in a 30(b)(6) deposition because a matter is

2    beyond the scope.

3           Now, Mr. Quinn is upset because Mr. Hanson did

4    make some instructions -- sustained some instructions of

5    that sort in Mr. Larian's last session of deposition.

6           Well, your Honor, that was the sixteenth volume of

7    his deposition.  And the questions by Mr. Zeller were

8    absolutely, clearly irrelevant and beyond the scope.

9           So, finally, after 16 days of deposition, a

10   protective order was sustained and the question was limited.

11   But that did not happen here.  To the contrary, the

12   Discovery Master ruled -- and here's what happened.  We

13   stopped, and we called the Discovery Master, and he made

14   clear his ruling would be to answer the question.  And

15   Mr. Quinn still refused to proceed.  So we waited for the

16   Discovery Master to come and review the transcript, and he

17   heard argument.  He still ordered the witness to answer the

18   question and then they still refused to proceed.

19           THE COURT:  My concern is, assuming for the moment

20   that I allowed the question to be asked, Mr. Quinn may take

21   the position of objecting to each question that follows.

22           So back each of you come every five minutes.  Now,

23   that's wasteful time for your clients, so what I'm trying to

24   get an idea of is if I'm going to let you go into this area,

25   it's obviously more than one question.  And there's no

1    reason to run your clients back and forth up the street, or

2    have them spend needless time.  I'm sure Mr. Eckert,

3    Mr. Larian are enjoying being here doing nothing and major

4    corporations, quite frankly.  But that -- but you may take

5    that position.  What I'm trying to determine is, if I'm

6    going to allow this.  And if I'm going to allow this, I'm

7    certainly going to give you some time to delve into it.  You

8    can't help me, because you don't have an answer to this

9    question because Mr. Quinn has objected, feeling that it

10   goes beyond the scope of what the court had ordered.

11          MS. HURST:  I can make an offer of proof, your

12   Honor, but I prefer to do it in camera.

13          THE COURT:  Mr. Quinn, if will you remain outside

14   with Mr. Zeller for a moment.

15          Your clients -- Mr. Larian can remain.  All of the

16   parties are outside.

17          Thank you.

18      *(Pause.)*

19          THE COURT:  Now, look around in the room.

20   Identify the people.

21          Mr. Larian, you can remain.

22          Now, let's see if we're -- if I'm willing to have

23   you go wherever you think you're going; and if so, how much

24   time I'm going to give you to do it.

25          This is in-camera.  I want you to identify who

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    else is present.  The Special Master is present, this

2    evening.  My law clerk is present.  I'm present.

3           Your co-counsel is present, Mr. Larian.  And I

4    apologize --

5           MS. HURST:  My partner, Denise Mingrone.

6           THE COURT:  Oh, it's a pleasure.  I met you

7    before.  I didn't recognize you.  I'm sorry.

8           All right, Counsel.  This is in-camera.

9           This will be sealed, Deborah.

10          * * SEALED PROCEEDINGS FOLLOW * *

11          *(Written Court approval required to view.)*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        SANTA ANA, CALIFORNIA; WEDNESDAY, SEPTEMBER 29, 20010;

 2                             -oOo-

 3            * * OPEN COURT PROCEEDINGS RESUMED * *

 4            THE COURT:  All right.

 5            MR. ZELLER:  Your Honor, we got some information

 6    that I think is pertinent.

 7            THE COURT:  Let me tell you what's really

 8    happened.  You are both right.

 9            You need to pull a couple of docket numbers while

10    we are waiting, informally.  I want you to look at not only

11    Docket 8752, which is topic No. 9, but I think you have

12    forgotten Docket No. 8756.  I want you to pull that docket

13    up.

14            Once again, we are on the record in Mattel and

15    MGA.

16            This dispute is not the fault of either party, but

17    it results in an ambiguity of this court's prior orders.

18    There are two September 17th, 2010 orders at issue.  I'm

19    going to refer to the first order which Mr. -- well, Mattel

20    is correct about, Mr. Quinn, and you are referring to Docket

21    No. 8752, and it's topic No. 9.

22            So do you want to pull that up for a moment,

23    Mr. Zeller?

24            Got it?  Okay.  Now, watch.  Now, you are

25    absolutely correct.  In 8752, I granted MGA's motion to
```

1   compel testimony on topic No. 9, which is a limited topic

2   concerning licenses.  And your objections are well taken.

3   If you turn to the second order, it issued the same day,

4   Docket No. 8756.  It overruled Mattel's objection to

5   discovery matter Order No. 99.  And in that order, I

6   overruled Mattel's objection to the Discovery Master's

7   requirement that Mr. Eckert reappear for deposition and

8   ruled that the objection was moot.

9           That order does not have a topic limitation, nor

10  at the present time a time limitation.  So MGA's expectation

11  that you can question Mr. Eckert is reasonable pursuant to

12  that order.  They were issued the same day.  Look at your

13  own docket numbers.

14          Thus, I'll allow four hours as I originally

15  ordered concerning Mr. Eckert in total on topic No. 9.  My

16  order is absolutely the same, but -- and as well as the

17  Bratz brief and the Villasenor issue.  But I'll allow Mattel

18  until whatever time you decide, so you don't have to bring

19  Mr. Eckert up and down the freeway.  As a courtesy, I'm

20  going to grant some additional time on 8756.  And the only

21  thing I'm deciding at the present time is how much time.

22          Therefore, if you want to cover, Ms. Hurst, the

23  information that you believe is forthcoming concerning

24  Mattel allegedly going into showrooms, Villasenor, et

25  cetera, that falls under topic 8756.

17

 1          So, in short, you're both correct.  The end result

 2     is there's two orders out.  They were both issued the same

 3     day.

 4          Now, the question is -- before we go any further,

 5     that's my order.  Number two, I'm paying you a courtesy.  I

 6     want you to go out and talk to Mr. Eckert and see what his

 7     schedule is like.  You can reconvene.  But he needs to be

 8     prepared on 8756, or he's coming right back down the

 9     highway.  So you can finish topic No. 9 for the four hours

10     if you want to, but on 8756, I'd just suggest you do it at

11     the same time.  So these questions are going to be asked.

12     It's just when and how and how long he's here.

13          Now, I need a good faith estimate on 8756,

14     Ms. Hurst, how long you think this is going to take.  From

15     my standpoint, I think it's two hours.  I think it's a

16     rather short of period of team.  That's all you need.  But,

17     you know, I want you to go talk to your client, et cetera,

18     and I'll reconvene in a few moments after you talk to your

19     clients.

20          MR. ZELLER:  Well, your Honor, may I ask a

21     question, just because we haven't been able to get 8756 up?

22          THE COURT:  That is the order of the court.  You

23     get it up.  This is final.  This isn't the subject of

24     further argument or debate.

25          MR. ZELLER:  Understood, your Honor.

18

```
1              THE COURT:  Otherwise, he's going to be here for
2    days, do you hear me?
3              I'm being courteous.  Two hours.
4              MR. ZELLER:  I appreciate it, your Honor.  Thank
5    you.
6              Does 8756 -- just because I don't have it -- does
7    that have a topic limitation in it?
8              THE COURT:  No.  I left it purposefully vague,
9    trying to foresee what I had out in the future.  So you're
10   absolutely right.  In other words, I'm complimenting you.
11   When you look at 8752, topic No. 9, you're correct.
12             I rule in your favor.
13             MR. ZELLER:  Thank you, your Honor.
14             THE COURT:  But I think I was either silly enough
15   or wise enough to recognize something else was coming down
16   the pike.  And on the same day, I issued 8756.  And that has
17   no topic limitation, and it has no time limitation, so we
18   can go for days if you want.  And I prefer not to, and I
19   think two hours is more than adequate.  I pay you the
20   courtesy of going out and talking to your client, because
21   otherwise he goes on tonight, tomorrow.  But he's right down
22   the highway, you know.
23             I would suggest you do this:  I suggest that you
24   just go home tonight for a change, even though it's been a
25   waste of your client's time, and you reconvene tomorrow
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

 1   afternoon or Friday.  Get it done at one time and at one

 2   place.

 3          MR. ZELLER:  I appreciate the opportunity to talk

 4   to Mr. Eckert and ask his preference, your Honor.  I will

 5   definitely do that.

 6          Your Honor, I would like to point out --

 7          THE COURT:  And also, my Discovery Master has got

 8   the flu, so you probably have the flu.  He's gone home now.

 9   So we don't have a Discovery Master, so there is no reason

10   to go on this evening.

11          So I'm just going to set it for 3:00 o'clock

12   tomorrow, unless I hear a different stipulation from

13   counsel.  That's enough time to prepare.

14          MR. ZELLER:  We will talk to Mr. Eckert, right

15   now.

16          THE COURT:  Two minutes now.

17          MR. ZELLER:  I was just pointing out, your

18   Honor --

19          THE COURT:  Two minutes.

20          MS. HURST:  Can I confer with them as well?

21          THE COURT:  Two minutes.  We're done with this

22   now.  It's 3:00 o'clock tomorrow afternoon, unless you two

23   reach an accommodation between Mattel and MGA.  That's when

24   it will resume.

25          *(Pause.)*

1          THE COURT:  3:00 o'clock tomorrow, counsel.  All

2     parties are ordered back.

3          Good night.  Now, if Mr. O'Brien isn't ready

4     tomorrow, we wait.  I don't have my Special Master, so I

5     don't know his condition about the flu.

6          You are ordered back at 3:00 o'clock tomorrow.

7     Okay.

8          Now, counsel, let's get busy.

9        (Pause.)

10          THE COURT:  Okay.  We are back on the record,

11     Deborah.

12          Counsel stipulated Friday morning, at what time?

13          Why don't you fly down in the morning.

14          MS. HURST:  I need to fly down in the morning, so

15     I can't say for sure, but I'll work it out with Mr. Quinn.

16          Is that all right, your Honor?

17          THE COURT:  Well, I need to tell Mr. O'Brien.  It

18     gives him one more day also, because you could be wasting

19     your time if you reserve tomorrow, because if he has got the

20     flu, everybody is sitting here.  So I think it saves your

21     clients a lot of time going up and down the highway if you

22     just do it Friday.

23          Why don't we just say 10:00 o'clock Friday.

24          MR. QUINN:  That may be a problem for Mr. Eckert.

25     Could we start early on Friday?  We can start as early as

1   anybody wants to start Friday morning.

2           THE COURT:  She has got to fly down in the

3   morning.

4           What time can you get into Orange County?

5           I don't think she can get here before 10:00,

6   frankly.

7           MR. QUINN:  Then, we may need to talk about next

8   Monday.

9           THE COURT:  Well, then, I keep the discovery dates

10  open.

11          MS. HURST:  We got two other depositions that I

12  got to take on Monday.

13          THE COURT:  Listen.  I'm going to order you back

14  3:00 o'clock tomorrow.  But the end result is, if I do that

15  and he's not available, Mr. Eckert and Mr. Larian are just

16  sitting here.  He's got the flu.  So I'll have my Special

17  Master in place.

18          So it's up to you.

19          MS. HURST:  Is it within option of the parties to

20  stipulate to a date next week, after Monday?

21          THE COURT:  Well, we got discovery closing out.

22          MR. QUINN:  Your Honor, I would join in counsel's

23  request.  I know it's extraordinary.

24          THE COURT:  Go tell me the date.  In other words,

25  reach an agreement.  Remember any time you two agree, I'll

22

```
 1    do it, which will be a first for you to agree.

 2         (Pause.)

 3              THE COURT:  On the record.

 4              MS. HURST:  We agreed to Sunday at 11:00 a.m.

 5              THE COURT:  Sunday at 11:00 a.m.

 6              MR. QUINN:  That's true.

 7              THE COURT:  The question I got is, is O'Brien

 8    available?

 9              See, that's my kicker.  He ought to be over the

10    flu, but I think that's a great date, okay?

11              So he might have church, you know.

12              MS. HURST:  Shall we call him before we finalize

13    it?

14              THE COURT:  He's on the freeway right now.

15              Why don't you give him a call, and just tell him

16    that that's the date that all the parties are coming up.  If

17    we can make that date, that will be great.

18         (Pause.)

19              THE COURT:  We are on the record, Deborah.

20              The parties are agreeing to continue Mr. Eckert's

21    deposition on Monday, at what time?

22              MS. HURST:  11:00.

23              MR. QUINN:  I think we should start earlier.

24    11:00 o'clock is fine.

25              THE COURT:  11:00 o'clock, Monday.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1              And Mr. Larian on?
 2              MS. HURST:  Tuesday.
 3              THE COURT:  Tuesday, at?
 4              MS. HURST:  9:00 o'clock.
 5              THE COURT:  Okay.  Thank you very much.
 6              MS. HURST:  Thank you.
 7              THE COURT:  Why don't we go off the record and
 8    just say, It's submitted.
 9              What are we doing on Friday?
10         (At 7:36 p.m., proceedings were adjourned.)
11
12                           -oOo-
13
14
15
16
17
18
19
20
21
22
23
24
25
```

24

```
 1                        CERTIFICATE

 2          I hereby certify that pursuant to Section 753,

 3   Title 28, United States Code, the foregoing is a true and

 4   correct transcript of the stenographically reported

 5   proceedings held in the above-entitled matter and that the

 6   transcript page format is in conformance with the

 7   regulations of the Judicial Conference of the United States.

 8

 9   Date:   October 4, 2010

10

11

12                        _____

13                        Deborah D. Parker, Official Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*