**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                                             Date: November 12, 2010

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

    Kathy Peterson                                      Not Present
Courtroom Clerk                                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                                 NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S OMNIBUS MOTION TO ENFORCE AND COMPEL RE COUNTERCLAIMS-IN-REPLY DISCOVERY MATTERS

     Mattel moves to compel six categories of discovery that it claims relate to MGA's counterclaims in reply. The categories are distinct, and the Court addresses each separately.

     First, Mattel requests that the Court enforce its October 21, 2010 Order that compelled MGA to supplement its responses to Mattel's First Set of Interrogatories to MGA regarding MGA's counterclaims in reply. The Court's prior order noted that some of MGA's interrogatory responses were plainly deficient and failed to provide Mattel with the discovery to which it is entitled under the Federal Rules of Civil Procedure. The interrogatories as to which MGA's responses were insufficient encompassed (1) identities and information about individuals with access to MGA's toy showrooms (Interrogatory No. 5); (2) costs incurred by MGA in preparing the packets of information allegedly misappropriated by Mattel (Interrogatory No. 8); (3) the identity of information allegedly misappropriated by Mattel (Interrogatory Nos. 1 & 2); (4) the basis for MGA's claim that its allegedly misappropriated information enjoyed trade secret status (Interrogatory No. 4); (5) MGA's efforts to limit access to its showrooms (Interrogatory No. 12); and (6) the basis for MGA's belief that it suffered damage as a result of Mattel's alleged conduct (Interrogatory No. 19). MGA supplemented its interrogatory responses six days after the Court's order. Mattel challenges the adequacy of MGA's supplementation.

Some, though not all, of MGA's supplemental responses are sufficient to comply with the obligations imposed by the Court's October 21, 2010 Order. MGA's supplemental response to Interrogatory Nos. 1 & 2, which request the identity of the information allegedly misappropriated by Mattel, identifies 114 products, as well as the factual basis to support MGA's claim that each of the products was misappropriated. (*See* Dkt. 9160 at 9-11, 13-15.) MGA's supplemental response to Interrogatory No. 4 states that the information allegedly misappropriated by Mattel enjoys trade secret status because secrecy in advance of a product's release prevents competitors from "adjust[ing] [] product[s], pricing and advertising plans, [and] engag[ing] in comparative selling practices with retailers, and generally [] get[ting] a consistent and improper head start on . . . competitive products." (*Id.* at 17.) MGA also identifies specific ways in which Mattel allegedly used the information, thus substantiating the value the information obtains from remaining secret. (*See id.* at 18 (noting that MGA's product launches were affected by Mattel alleged misappropriation of information from MGA's showrooms).) MGA's supplemental response to Interrogatory No. 12 states that "it has been MGA's policy to require retailers, licensees and distributors to sign or otherwise agree to maintain the confidentiality of the information shown in the showroom prior to being permitted access." (*Id.* at 25.) MGA further refers Mattel to "all confidentiality and nondisclosure agreements" it has been able to locate. (*Id.* at 26.) Mattel protests the scant grounds for MGA's belief that it kept secret the information in its showrooms, (Opp. at 9), but that is an argument better made at summary judgment and/or at trial. Finally, MGA's supplemental response to Interrogatory No. 19 shares MGA's belief that it was harmed as a result of Mattel's alleged misconduct for the reasons stated in MGA's supplemental response to Interrogatory No. 4 — *i.e.*, Mattel gained a competitive advantage from knowing about MGA's products before those products hit the market. Mattel again demands further specificity, but nothing in the Federal Rules prohibits a party from relying upon broad theories to support its claims. The discovery process is not ordinarily used to force the other party to make a more convincing argument in support of its claims.

Nevertheless, MGA's supplemental responses to Interrogatory Nos. 5 & 8 are lacking. MGA's supplemental response to Interrogatory No. 5 complains of the burden imposed by having to identify every individual who gained access to its showrooms, but MGA should still provide what little information it has or can reasonably obtain. There are a limited number of toy fairs each year and the institutions that regularly attend these toy fairs are probably composed of a small and consistent pool of retailers, licensees and distributors — *e.g.*, Toys R' Us and Wal Mart. If MGA has contacts at these companies that regularly attend its toy shows, then it should disclose those names to Mattel. Furthermore, MGA can easily obtain the names of reporters who attended its toy shows, since those reporters — assuming MGA trusted them to maintain the confidentiality of the information they learned — were individuals who had developed a relationship of trust with MGA or belonged to organizations that had done the same, and from whom MGA can obtain the information necessary to respond to Mattel's interrogatory. MGA's supplemental response to Interrogatory No. 8 confuses the marketing documents and other materials allegedly misappropriated by Mattel with the "114 products" referenced in those documents. The products themselves are not the trade secrets identified in MGA's counterclaims in reply; the documents describing those documents are. MGA should therefore account

for the amounts incurred in preparing the actual materials allegedly misappropriated by Mattel.

Second, Mattel argues that MGA's supplemental responses to Mattel's Requests for Admission are inadequate. As previously found by the Court, these requests for admission concern "what Mr. Villasenor told Mr. Brawer and when." MGA previously objected to these requests on the grounds that it "lacks the requisite knowledge with respect to those requests directed ot information outside the scope of Mr. Brawer's job responsibilities while at MGA." The Court overruled that objection on the grounds that it did not comply with Fed. R. Civ. P. 36(a)(4) and the wealth of case law holding that a corporation must interview (even former) employees when responding to a request for admission. (Dkt. 8974 at 2.) Despite the Court's guidance, MGA's supplemental responses serially "object[] to the request[s] because [they] seek[] information outside the scope of Mr. Brawer's responsibilities at MGA." (Mot. at 10.) MGA then purports to respond on behalf of Brawer only. (*Id.*) Both types of responses are disallowed under the Federal Rules of Civil Procedure: as already explained in the October 21, 2010 Order, a corporate entity is not absolved from responding to a request for admission simply because the request seeks information "outside the scope" of its employees' "responsibilities." *C.f. Morreale v. Wilcox & Gibbs DN, Inc.*, 1991 WL 107441, at *1 (S.D.N.Y. June 7, 1991) (lifting burden of responding to RFAs only after corporation successfully contacted a non-party in an attempt to obtain information about the non-party's activities). The proper inquiry is whether the answering party knows, or has readily available to it, information sufficient to respond to the request. *See* Fed. R. Civ. P. 36(a)(4). Furthermore, the request for admission was directed at MGA; not Brawer, and his purported "admission" or "denial" is irrelevant for the purposes of the instant Motion.

Third, Mattel moves to compel MGA to produce the phone numbers of certain former employees. MGA voluntarily produced the information after the filing of Mattel's Motion and Mattel concedes in its reply brief that no "further order is necessary on this issue." (Reply at 4 at n. 1.)

Fourth, Mattel moves to compel three categories of documents identified at the deposition of Lisa Saunders: (1) master calendars concerning third party access to MGA's toy showrooms; (2) power point presentations to retailers concerning product sales; and (3) sell sheets, price lists, and price list updates concerning the 114 products. MGA argues that lead counsel did not adequately meet and confer about these categories of documents earlier and Mattel responds that earlier meet and confers generally concerning the "counterclaims-in-reply" disposed of the meet and confer requirement. This is an odd argument, since its uniform application would lift the meet and confer requirement for the vast majority of discovery motions in this case, which seek to compel the production of documents encompassed by dozens of prior discovery requests. Indeed, at Mattel's urging, MGA was recently ordered to show cause as to why it should not be sanctioned for its failure to adequately meet and confer prior to the filing of its August 10, 2010 discovery motions, all of which sought to compel documents that, MGA alleges, should have been produced in response to years-old discovery requests. *See* Dkt. 8751 (ordering MGA to show cause as to why it failed to meet and confer before moving to compel discovery regarding its counterclaims in reply); *see also* Dkt. 9160 at 29-30 (identifying discovery requests made prior to the filing of the counterclaims in reply that demanded the production

of evidence related to the activities of Mattel's market intelligence group).[1]  Due to Mattel's apparent failure to adequately meet and confer, it did not learn of MGA's intention to produce the documents identified at the deposition of Lisa Saunders.  (Opp. at 6 ("MGA is taking efforts to locate and review the documents identified, and to produce information related to its counterclaims-in-reply.").)

      Fifth, Mattel moves to compel an *in camera* review of all documents withheld under a claim of privilege that relate to Brawer's knowledge of Villasenor.  Mattel argues that such *in camera* review is rendered necessary by "the inconsistencies in the testimony and discovery responses regarding MGA's and Brawer's knowledge of Villasenor and the Market Intelligence Group" as well as "MGA's practice of channeling clearly non-privileged communications through in-house counsel."  (Mot. at 13.)  The Court declines to consider Mattel's request at this time, in light of the fact that an *in camera* review would needlessly distract the Court's from the pending summary judgment motions, as well as the forthcoming summary judgment motions on MGA's counterclaims-in-reply.  The Court further notes that MGA would likewise seek an *in camera* review of documents that concern its statute of limitations defense to Mattel's counterclaims.  Although Mattel argues that some of the documents are improperly withheld, and a fraction of the improperly withheld documents may bear on MGA and Brawer's knowledge (which may or may not be relevant to Mattel's statute of limitations defense depending on unresolved relation back concerns), the Court finds it prudent to hold this request in abeyance until after its resolution of the summary judgment motions.  Mattel may renew its request at that time.

      Sixth, Mattel moves to compel Larian to produce documents regarding his alleged efforts to influence Mattel's securities by leaking information in violation of the Stipulated Protective Order.  Mattel claims that such discovery is relevant to Larian's "bias and credibility" because it proves he has a "financial interest in the outcome of th[is] litigation." (Mot. at 13.)  Larian's "financial interest" in this litigation is obvious and does not need to be proven with evidence that he traded in Mattel's securities.  He is a named counter-defendant and the majority shareholder of the three entity counter-defendants.  He stands to lose billions of dollars (claimed by Mattel) if he and the MGA entities lose this litigation.  The very notion that Mattel cannot prove Larian's strong "financial bias" without resort to his stock portfolio is specious at best.  Mattel also argues that the discovery is relevant to "Larian's violation of the Protective Order," but both sides allege violations of the Protective Order by the other, and the Court is not inclined to open up discovery into these procedural concerns on the eve of trial.

---

[1] Contrary to Mattel's argument, its counsel's failure to adequately meet and confer is no more excusable than MGA's counsel's failure to adequately meet and confer prior to the filing of MGA's August 10, 2010 discovery motions.  Like MGA did then, Mattel made an attempt to meet and confer but MGA's counsel did not timely respond to the request.  Furthermore, Mattel explains its failure to meet and confer on the grounds that the discovery deadline was rapidly approaching, which was the same excuse made by MGA in explaining its earlier failure to meet and confer.  In both events, it would have taken minimal effort to reach out to opposing counsel directly, especially in light of the many instances in which lead counsel communicate on a daily basis.

The parties are free to raise such issues after the trial.

For the foregoing reasons, the Court ORDERS as follows:

1. Mattel's Motion is DENIED as to Interrogatory Nos. 1, 2, 4, 12, and 19 and GRANTED as to Interrogatory Nos. 5 and 8.

2. Mattel's Motion is GRANTED as to Requests for Admission Nos. 16-26;

3. Mattel's Motion is HELD IN ABEYANCE as to the documents identified at the deposition of Lisa Saunders and the documents withheld on privilege grounds that relate to Brawer and MGA's knowledge of the activities of Mattel's market intelligence group;

4. Mattel is ORDERED TO SHOW CAUSE, in writing, on or before November 16, 2010 at 10:00 a.m. PST as to why it should not be sanctioned for its failure to adequately meet and confer prior to the filing of its Motion seeking the production of documents identified at the deposition of Lisa Saunders. In responding to the Order to Show Cause, Mattel shall identify the communications between its lead counsel and MGA's lead counsel that concern the documents at issue;

5. Mattel's Motion is DENIED as to documents evidencing Larian's trading in, or attempts to influence, Mattel securities.

The Clerk shall serve this minute order on all parties to the action.