QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> <u>Hon. David O. Carter</u> <br><br> **MATTEL, INC.'S CORRECTED WITNESS LIST** <br><br><br> Hearing Date:     TBD <br> Time:              TBD <br> Place:             Courtroom 9D <br><br> Discovery Cut-off:  October 4, 2010 <br> Pre-trial Conf:     January 4, 2011 <br> Trial Date:         January 11, 2011 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively "Mattel") hereby identify the following witnesses that they intend at this time to call at trial, other than those witnesses contemplated for impeachment or rebuttal.  Mattel reserves the right to present these witnesses' testimony through prior deposition or other testimony to the extent a witness is unavailable to provide live testimony at trial or such testimony is otherwise admissible.  Mattel reserves the right to call any witnesses included in the witness lists of other parties to this action and any amendments thereto, including any expert witnesses.  Given that, *inter alia*, MGA has yet to complete its document production and has only recently produced hundreds of thousands of pages of documents, that Zapf has yet to produce compelled documents and that fact witnesses such as Zapf have not yet appeared for Court-ordered deposition, Mattel reserves the right to supplement or amend its designation of witnesses and their testimony.[1]

| Witness | Anticipated Testimony |
| --- | --- |
| Ivy Ross | The practices, policies and procedures of Mattel's design department and the Mattel Design Center.  Mattel's agreements with its designers and Mattel's ownership of ideas and other intellectual property.  Mattel employees' understanding of their agreements with Mattel and their duties and obligations to Mattel.  Bryant's misrepresentations about where he was going to work after Mattel. |
| Joni Pratte | The design, development and ownership of intellectual property at Mattel.  Mattel's agreements with its designers and Mattel's ownership of ideas and other intellectual property.  The |

---

[1] As used herein, "MGA" refers to defendants collectively.

| | | |
|---|---|---|
| 1 2 | | Mattel Design Center and the Diva Starz project, including the contemplated use of the name "brats" for Diva Starz. |
| 3 4 | Cassidy Park | Bryant's work at Mattel, including his work product, duties and responsibilities. |
| 5 6 7 8 9 | Lily Martinez | The creative process in designing and developing toy-related ideas and concepts.  The timing and creation of Bratz. Bryant's departure to MGA.  The origins and design of Toon Teens.  Mattel's agreements with its designers and Mattel's ownership of ideas and other intellectual property. |
| 10 11 12 13 14 15 16 17 18 19 | Paula Garcia | The design and development of Bratz and Bryant's work with and for MGA during his Mattel employment.  MGA's knowledge of Mattel's employee contracts and policies. MGA's theft of Mattel's intellectual property and trade secrets. MGA's use of Mattel employees and resources to develop Bratz and other products for MGA.  MGA's use of Bryant's drawings and other works done at Mattel for Bratz.  MGA's contracts and business practices.  Bryant's theft of the name Moxie from Mattel.  MGA's copying of Mattel products.  MGA's re-directing of themes, fashions, accessories from Bratz to Moxie. |
| 20 21 22 23 24 | Jennifer Maurus | Bryant's work with MGA during the summer of 2000, while he was still employed by Mattel.  MGA's concealment of Bratz and Bryant's involvement therewith.  MGA's contracts with its employees.  MGA's aiding and abetting of Bryant's breaches of his duties to Mattel. |
| 25 26 27 | Rachel Harris | The design and development of Bratz and Bryant's work with and for MGA during his Mattel employment, including during his work hours.  Bryant's breaches of his obligations to |

28

| | | |
|---|---|---|
| 1<br>2<br>3 | | Mattel.  MGA's and Larian's concealment of Bryant's work on Bratz during his Mattel employment.  MGA's spoliation of evidence. |
| 4<br>5<br>6<br>7<br>8<br>9 | Nana Ashong | MGA's admissions regarding the creation date of Bratz. The development of Bratz and Bryant's work with MGA during his Mattel employment.  MGA's concealment of Bratz and Bryant's involvement therewith.  MGA's contracts with its employees.  MGA's copying of Mattel products to develop Bratz and other products. |
| 10<br>11<br>12<br>13 | Steve Linker | The design and development of Bratz and Bratz packaging in 2000.  Bryant's work with and for MGA during his Mattel employment.  The spoliation and alteration of certain original Bratz drawings. |
| 14<br>15 | Anna Rhee | The timing of the creation of Bratz and the concealment of Bryant's involvement with Bratz. |
| 16<br>17<br>18<br>19<br>20 | Karl Meyer | Work performed by third party vendor Gentle Giant on the Bratz sculpt.  Bryant's work on the MGA sculpt during his Mattel employment and MGA's knowledge of same.  MGA's and Bryant's use of Mattel resources on the development of Bratz. |
| 21<br>22<br>23<br>24<br>25<br>26<br>27 | Carter Bryant | The design, creation and development of Bratz.  Bryant's work with and for MGA during his Mattel employment. Bryant's and MGA's concealment of same.  Bryant's and MGA's perjury and spoliation of evidence, including the use of Evidence Eliminator on Bryant's computers.  Bryant's duties and obligations to Mattel, and his breaches of those duties and obligations.  MGA's theft of Mattel's intellectual property and |

28

| | | |
|---|---|---|
| | | trade secrets. |
| | Jacqueline Prince | The notary book reflecting the notarization of Bryant's Bratz drawings during his Mattel employment. |
| | Lloyd Cunningham | Expert analysis of documents submitted regarding evidence of alterations, additions, erasures and other suspicious elements.  Indentations of Bratz sketches in pages remaining in a Bryant notebook and forensic analysis of notary book entries. |
| | Valery Aginsky | Expert testimony concerning the alteration of the notary book, including based on chemical analysis that the notation "From 1998 Missouri" in the notary book was written in a different ink than, and after, the other notations on the document. |
| | Andreas Koch | MGA's meetings with Bryant, including while he was still employed by Mattel, and MGA's development of Bratz.  MGA's business practices, including MGA's practice of recruiting Mattel employees and MGA's and Larian's expectations of MGA employees. |
| | Sheila Kyaw | The design and development of Bratz and Bryant's work with and for MGA during his Mattel employment.  Bryant's misrepresentations to Mattel.  MGA's and Bryant's use of Mattel resources, such as Ms. Kyaw's face painting for Bratz prototypes, under false pretenses. Bryant's breaches of his obligations to Mattel. |
| | Lucy Arant | The timing and origins of Bratz, including documents and communications with Paula Garcia showing dates of "first use" during Bryant's employment by Mattel.  MGA's submission of false copyright applications. |

| | | |
|---|---|---|
| 1 | Bryan Armstrong | MGA's patent, trademark, and copyright applications. MGA's searches and registrations relating to Bratz and Moxie, including during Bryant's employment by Mattel.  The development and ownership of Bratz. |
| 5 | Ralph Oman | Expert testimony regarding MGA's and Mattel's applications for registration of copyrights in Bryant's works.  His conclusion that Mattel's registration of the works as owned by assignment does not prevent or conflict with a valid claim to ownership of the works as works for hire.  His conclusion that MGA's registrations reflect admissions that MGA's Bratz dolls are derivative of Bryant's Bratz drawings. |
| 12 | John Alex | Expert testimony that MGA's submissions were knowing efforts by Bryant and Larian to mislead the PTO about the timing and inventorship of Bratz. |
| 15 | Sarah Odom | Kickapoo High School custodian of records rebutting the claim that Bryant's inspiration from Bratz was the students at Kickapoo High School he saw while living in Missouri in 1998. |
| 18 | Janet Bryant | Bryant's employment with Mattel and his understanding of his duties and obligations to Mattel, including pursuant to his Mattel contracts.  The spoliation and alteration of certain original Bratz drawings. |
| 22 | Robert Hudnut | The ownership of intellectual property at Mattel. Mattel's Inventions Agreement and other policies, including the ability to negotiate the terms of Mattel's Inventions Agreement and his "side letter" to his Mattel employment agreements.  The scope of Mattel's contracts and Mattel employees' understanding of their Mattel contracts. |

28

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5 | Kami Gillmour-<br>Bryant | Interpretation and understanding of Mattel's and MGA's employment contracts.  Mattel employees' understanding that Mattel contracts encompassed ideas.  Mattel's ownership of Mattel ideas and concepts related to toys and dolls.  Early Bratz development.  MGA's hiring of Paula Garcia. |
| 6<br>7<br>8<br>9<br>10<br>11<br>12<br>13 | Amy Myers | Mattel employees' understanding of the scope of their Mattel Inventions Agreement, including the explanation of Mattel's Inventions Agreement prior to signing.  The understanding of Mattel employees that anything related to toys – regardless of whether conceived or reduced to practice during traditional work hours or on nights and weekends – belongs to Mattel, and that such an understanding is standard in the industry. |
| 14<br>15<br>16<br>17<br>18<br>19 | Alan Kaye | Mattel's understanding and intent with respect to the Inventions Agreement, including the assignment of ideas and any toy-related concepts whether done during traditional work hours or on nights or weekends.  Mattel employees' duties and obligations to Mattel.  Ron Brawer's representations to Mattel in 2004 about his communications with MGA. |
| 20<br>21<br>22<br>23<br>24 | Adrienne Fontanella | Mattel's Inventions Agreement, including the ability to negotiate the terms and her own carve-out to her Mattel Inventions Agreement.  The scope of Mattel's contracts and Mattel employees' understanding of their contracts during the relevant time frame. |
| 25<br>26<br>27 | Theresa Newcomb | Mattel's Inventions Agreement and related Human Resource policies, including new hire orientations, during the 1999-2000 time frame.  Bryant's Inventions Agreement with |

28

| | | |
|---|---|---|
| 1 | | Mattel. |
| 2–5 | Sandy Yonemoto | Mattel's policies regarding exit procedures and conflicts of interest. Bryant's misrepresentations to Mattel. Bryant's concealment of his work on Bratz and his work with and for MGA from Mattel. |
| 6–9 | Ginger McRae | Expert testimony regarding prevailing policies and practices with respect to the presentation, form and execution of employment agreements governing intellectual property rights, confidentiality, and the avoidance of conflicts of interest. |
| 10–13 | Jeffrey Breslow | Expert testimony regarding employment practices in the toy industry regarding confidentiality, conflicts of interest and the scope of inventions agreements, including as to work done on nights or weekends. |
| 14–17 | Angel Gomez | Expert testimony regarding the Mattel-Bryant Inventions Agreement, including the scope of the agreement, and custom and practices relating to similar agreements in California workplaces. |
| 18–22 | David Rosenbaum | MGA's and Larian's knowledge of the date and location that Bratz was conceived and developed, and MGA's investigation into same. The circumstances surrounding MGA's recruitment and hiring of Bryant. Bryant's contract with MGA, including negotiations regarding same. |
| 23–27 | Anne Wang | The date and location that Bryant conceived and developed Bratz, and MGA's and Larian's knowledge thereof. The circumstances surrounding MGA's recruitment and hiring of Bryant. Bryant's contract with MGA, including negotiations regarding same. |
| 28 | | |

| | | |
|---|---|---|
| Mark Menz | | Expert testimony on MGA's, Bryant's and Machado's spoliation, including the use of wiping software such as Evidence Eliminator, BeClean, and Internet Washer Pro on MGA hard drives. |
| Joseph Thorpe | | ILS's forensic analyses of various MGA media, including the presence and use of spoliation-enabling software on the hard drives of MGA employees. |
| Farhad Larian | | The timing of Bratz development.  MGA's and Larian's concealment of Bryant's work on Bratz.  MGA's spoliation of evidence relating to the development of Bratz.  Farhad's allegations about the timing and creation of Bratz in <u>Larian v. Larian</u>. |
| Lisa Tonnu | | MGA's document retention policies and its intentional failures to preserve documents in connection with this litigation, as well as MGA's financial information and related acts of misconduct.  MGA's claimed indemnification by Bryant. |
| Joe Tiongco | | MGA's document preservation and collection practices, including the implementations in MGA's Information Technology Department. MGA's spoliation of evidence.  MGA's information technology systems.  MGA's theft of and disregard for intellectual property rights. |
| Victoria O'Connor | | Bryant's September 2000 meeting with MGA while still employed by Mattel.  Bryant's work with MGA while still employed by Mattel.  The timing of Bratz development at MGA.  MGA's investigation (or lack thereof) into the creation date of Bratz by Bryant.  Larian's and MGA's spoliation, including directing her to white out the "Barbie Collectibles" |

| | | |
|---|---|---|
| | | fax header to conceal Bryant's work with MGA while still employed by Mattel.  MGA's knowledge that Bryant's work with MGA was unlawful.  MGA's concealment of Bryant's involvement in Bratz. |
| | Denise O'Neal | MGA's misleading statements to the press regarding the origins of Bratz.  The March 5, 2004 Chicago Sun Times article, including Larian's statements to the Chicago Sun Times. |
| | Jeff Weiss | MGA's misleading statements to the press regarding the origins of Bratz.  The March 29, 2004 San Fernando Valley Business Journal, including Larian's statements to the San Fernando Valley Business Journal. |
| | Maureen Tkacik | MGA's misleading statements to the press regarding the origins of Bratz.  The July 18, 2003 Wall Street Journal article, including Larian's statements to the Wall Street Journal. |
| | Chris Palmeri | MGA's misleading statements to the press regarding the origins of Bratz.  The July 28, 2003 Business Week article, including Larian's statements to Business Week. |
| | Isaac Larian | The creation, design and development of Bratz and Bryant's work with and for MGA during his Mattel employment.  Bryant's breach of his obligations to Mattel.  MGA's concealment of Bryant's involvement in Bratz.  MGA's use of Bryant's drawings and other works done at Mattel for Bratz.  Bryant's contract with MGA and any negotiations regarding same.  MGA's failure to properly investigate Mattel's ownership of Bratz.  MGA's theft and use of Mattel's intellectual property and trade secrets, including in the US, Mexico and Canada.  MGA's employment agreements and |

| | | |
|---|---|---|
| | | policies.  MGA's spoliation and destruction of evidence to conceal its wrongdoings.  Mattel's defenses to MGA's claims.  MGA's intent to harm Mattel.  The relationship between the sale of Bratz dolls and the sale of other Bratz products.  MGA's knowing recruitment and use of Mattel employees for MGA work. |
| | Brian Wing | MGA's unethical business practices, its financial management and its lack of internal controls.  MGA's spoliation and concealment of evidence, including spoliation directed by Larian.  MGA's knowledge of the Mattel sample makers working for it via the Marlows.  Bryant's indemnification agreement with MGA.  MGA's and Larian's efforts to hide and conceal MGA's assets.  MGA's re-directing of themes, fashions, accessories and other resources from Bratz to Moxie. |
| | Martin Hitch | MGA's unethical business practices, including Larian's management style and expectations of MGA employees.  MGA's claims that it was a successful toy company prior to Bratz. |
| | Daphne Gronich | MGA's litigation regarding Bratz and Bryant's drawings.  MGA's indemnification of Ron Brawer.  MGA's document preservation and collection efforts.  Larian's funneling of communications through MGA's Legal Department. |
| | Mitchell Kamarck | The development and ownership of Bratz intellectual property.  Bryant's breaches of his obligations to Mattel, and MGA's inducement thereof.  MGA's litigation regarding Bratz and Bryant's drawings. |
| | Ken Leung | MGA's lawsuit against Double Grand in 2003 in which |

| | | |
|---|---|---|
| 1 | | MGA alleged that Double Grand's dolls unlawfully copied Bryant's Bratz drawings. |
| 3 | Edmond Yeung | MGA's lawsuits against Hong Kong companies including Unifortune, Union Top and Hunglam in which MGA alleged that their products were illegal reproductions of Bryant's Bratz drawings. |
| 7 | Heather McComb | Expert testimony on the process of creating fashion dolls. MGA's use of Bryant's drawings as the actual design drawings to create the Bratz dolls. |
| 10 | Nicholas Mirzoeff | Expert testimony rejecting MGA's claim that the Bryant drawings were just "sketches" and did not reflect a finished doll design. |
| 13 | Frank Keiser | Expert testimony presenting highly accurate three-dimensional computer scans of the shapes of Bratz-related works.  Isolating shape from size and color facilitates comparison between shapes of Bratz sculpts and Bratz production dolls. |
| 18 | Kerri Brode | Bryant's work with MGA during his Mattel employment and MGA payments to Bryant while he was employed by Mattel.  The use of Bryant's designs and drawings as the basis for Bratz.  MGA's trademark applications, searches and registrations relating to Bratz, including communications regarding same. |
| 24 | Sarah Chui | MGA Hong Kong's role in the production and development of Bratz in 2000.  Bryant's role in the development of Bratz during his Mattel employment.  The use of Bryant's drawings as the basis for Bratz. The distinctive |

| | | |
|---|---|---|
| 1 2 3 4 | | characteristics of Bratz, and the actual production of Bratz dolls, including work with Leahy, Ward and Garcia on the sculpt revisions.  The display of Bryant's drawings at toy fair.  MGA's copying of Mattel products. |
| 5 6 7 8 9 | Lee Loetz | Expert testimony regarding similarities between Bryant's works and MGA's Bratz dolls.  His conclusion that the Bratz drawings and sculpts created by Bryant are, in essence, the Bratz dolls in two dimensional form and that the dolls are based on Bryant's drawings. |
| 10 11 | Kenneth Hollander | Expert testimony based on survey showing that over 90% of girls aged 8-13 identified the Bryant drawings as Bratz dolls. |
| 12 13 14 15 16 17 | Jeffrey Kinrich | Expert testimony on the salary changes of former Mattel employees who left Mattel to work at MGA.  The report concludes that the average percentage change in salary for the employees who downloaded confidential information from Mattel was much higher than for those employees who left to work at MGA without downloaded Mattel information. |
| 18 19 20 21 22 23 24 | Pablo Vargas | His employment with Mattel, including his duties and responsibilities and his breaches thereof.  His decision to leave Mattel and work for MGA and the events related thereto.  The theft of Mattel trade secrets and MGA's and his use of the stolen information.  The discovery of Mattel's information in his possession and MGA's response.  MGA's spoliation of evidence. |
| 25 26 27 | Susanna Kuemmerle | Her role with MGA Mexico, including MGA Mexico's operations.  The recruitment of Mattel employees for MGA Mexico and MGA's inducement of theft of Mattel proprietary |
| 28 | | |

| | | |
|---|---|---|
| | | information.  MGA's knowledge and use of information stolen from Mattel for MGA's benefit.  The duties and obligations of Machado, Vargas and Trueba to MGA Mexico.  MGA's response to the raid by Mexican authorities. |
| | Gustavo Machado | His employment with Mattel, including his duties and responsibilities and his breaches thereof.  His decision to leave Mattel and work for MGA and the events related thereto.  His coordinated theft of Mattel information.  MGA's and his use of the stolen information.  The discovery of Mattel's information in his possession and MGA's response.  His spoliation of evidence.  His knowledge of Mr. Villasenor's activity at Mattel and MGA's efforts to hire him.  MGA treatment of information shown at Toy Fairs as public. |
| | Mariana Trueba | Her employment with Mattel, including her duties and responsibilities and breaches thereof.  Her decision to leave Mattel and work for MGA and the events related thereto.  Her coordinated theft of Mattel information.  MGA's and her use and disclosure of the stolen information.  The discovery of Mattel's information in her possession and MGA's response. |
| | Roberto Isaias | The confidentiality and economic value of documents stolen in Mexico.  His role as National Sales Director for Mattel Mexico and supervision of Vargas.  The relationship between Mattel, Inc., Mattel Mexico and Mattel Servicios.  The theft of information from Mattel by Machado, Vargas and Trueba.  Steps taken by Mattel in Mexico to preserve confidentiality of its information. |
| | Ricardo Ibarra | The confidentiality and economic value of the documents |

| | | |
|---|---|---|
| 1<br>2<br>3 | | stolen by Machado, Vargas and Trueba.  The theft of Mattel information by Machado, Vargas and Trueba.  His role supervising Machado and Trueba. |
| 4<br>5<br>6<br>7 | Gabriel Zalzman | The theft of Mattel information by Machado, Vargas and Trueba.  His role as manager of Mattel Mexico, and the actions taken following the resignations of Machado, Vargas and Trueba. |
| 8<br>9 | Allison Willensky | The creation, economic value, use and confidentiality of Mattel trade secrets stolen by Machado, Vargas and Trueba. |
| 10<br>11 | Omar Cavassuto | Machado's, Vargas', and Trueba's departures from Mattel Mexico. |
| 12<br>13<br>14<br>15<br>16<br>17<br>18 | Jill Nordquist | The creation and development of Wee 3 Friends.  Mattel's license with Disney/Pixar for Toy Story and Toy Story 3 products.  Creation, economic value, use and confidentiality of Mattel's 2005 Global Line List and Mattel's 2004 Customized Fall Guidelines – trade secrets stolen from Mattel.  Bryant's misrepresentations that he was not resigning from Mattel to work for a competitor. |
| 19<br>20<br>21<br>22 | Timothy Kilpin | MGA's theft of Mattel trade secrets and intellectual property in the U.S., Mexico and Canada.  Mattel Design Center and the importance of innovation to toy design.  Bratz's injury to Barbie and MGA's injuries to other Mattel products. |
| 23<br>24<br>25<br>26 | Richard de Anda | Mattel's global security measures implemented in general and in 2004.  Theft of Mattel's trade secrets.  Steps taken by Mattel to preserve confidentiality of its trade secrets and confidential information. |
| 27<br>28 | Jaime Elias | Mattel's evidence of thefts of its trade secrets and efforts |

| 1 | | to prevent them. |
|---|---|---|
| 2–9 | Kim Graham | Mattel employee policies and practices; introduction of Career Action Planning Document.  Mattel's reasonable steps to maintain and protect the secrecy of its trade secrets and confidential information.  Duties owed to Mattel by Mattel employees Ron Brawer, Janine Brisbois, Jorge Castilla, Nick Contreras, Daniel Cooney and Ryan Tumaliuan.  Employee personnel files and statements made by applicants or employees in connection with their employment or termination. |
| 10–13 | Lissa Freed | Mattel's human resource practices, including exit interview practices, employee agreements and related policies.  Ron Brawer's representations to Mattel during his exit interview. |
| 14–15 | Chris Pavan | Thefts of Mattel trade secrets by former Mattel employees. |
| 16–17 | Schuyler Bacon | MGA's hiring of numerous Mattel employees, including Nick Contreras, Daniel Cooney, Jorge Castilla and Ron Brawer. |
| 18–20 | Nancy Koppang | MGA's possession, use, disclosure and transmission of stolen Mattel trade secrets.  MGA's recruitment of Mattel employees. |
| 21–24 | Janine Brisbois | Her employment with Mattel, including her duties, responsibilities and obligations.  Her misappropriation of Mattel's trade secrets, her recruitment to join MGA, and her employment at MGA. |
| 25–27 | Diana Goveia-Gordon | MGA's recruitment of Ms. Brisbois.  Ms. Brisbois' employment at MGA.  MGA's sales and revenue figures in Canada.  MGA Canada's customers.  Ms. Brisbois' |

| | | |
|---|---|---|
| | | misappropriation of Mattel's trade secrets.  MGA's confidential, proprietary information and how such determinations are made.  MGA's efforts to maintain the confidentiality of its proprietary, trade secret information. |
| | Alberto Morales | Ms. Brisbois' representations to Mattel during her exit interview.  Mattel's efforts to maintain the confidentiality of its proprietary, trade secret information. |
| | Steve Totzke | Mattel's operations in Canada.  Ms. Brisbois' employment while at Mattel.  Mattel's efforts to maintain the confidentiality of its proprietary, trade secret information.  Economic value of the trade secrets and other documents misappropriated by Ms. Brisbois.  MGA's sales and marketing strategies in the months subsequent to Ms. Brisbois leaving Mattel for MGA. |
| | Mark Spencer | His findings in connection with the forensic analysis he performed on Ms. Brisbois' Mattel-issued computer. |
| | Susan Kim | Nick Contreras's solicitation of Ms. Kim to download Mattel safeguarded documents onto a thumb drive he provided her shortly after his resignation from Mattel, which were to be given to MGA.  His and MGA's recruitment of Ms. Kim to leave Mattel for MGA. |
| | John Chung | The economic value and efforts to safeguard the documents Mr. Contreras solicited Ms. Kim to download onto a thumb drive and give to him after he resigned from Mattel. |
| | Nick Contreras | His access to and printing of numerous Mattel documents just prior to his resignation from Mattel.  His solicitation of Mattel employee Susan Kim to download safeguarded Mattel |

| | | |
|---|---|---|
| | | documents for him after he resigned and was escorted out of Mattel's facilities.  His recruitment of Ms. Kim and other Mattel employees to leave Mattel for MGA.  MGA's recruitment of him, including employment offer negotiations.  His duties and obligations to Mattel and his breaches thereof. |
| | Daniel Cooney | His theft of Mattel trade secret information and other safeguarded Mattel documents for use in his employment with MGA.  His recruitment of Mattel employees for MGA.  MGA's recruitment of him, including employment offer negotiations.  His duties and obligations to Mattel and breaches thereof. |
| | Maureen Tafoya | Daniel Cooney's representations at his Mattel exit interview. |
| | David Traughber | The identification of trade-secret formulae embedded in the Merchant Modeling Optimization Tool that Daniel Cooney admitted he took from Mattel in the last few days of his employment and transferred to his MGA computer.  The details concerning the creation and development of the trade-secret formulae.  The function and value of the trade-secret formulae, which Mr. Traughber helped develop at Mattel. |
| | Brian Erickson | The economic value of Mattel documents taken by Daniel Cooney. |
| | Laura Owens | The value and confidentiality of trade secrets stolen by Jorge Castilla.  Mr. Castilla's work at Mattel and his access to trade secrets. |
| | Brad Farnsworth | The value and confidentiality of trade secrets stolen by Jorge Castilla.  Mr. Castilla's work at Mattel and his access to trade secrets. |

MATTEL'S WITNESS LIST

| | | |
|---|---|---|
| Bryan Stockton | | The value and confidentiality of trade secrets stolen by Jorge Castilla.  Mr. Castilla's work at Mattel and his access to trade secrets.  Rebuttal to MGA's claim that Mattel improperly influenced TIA's voting procedures with respect to the TOTY award. |
| Special Agent Scot L. Bontsema | | Mr. Castilla's trade secret theft and related reports, including Mr. Castilla's denial of the thefts from Mattel. |
| Special Agent Tracy Marquis Kierce | | Mr. Castilla's trade secret theft and related reports, including Mr. Castilla's denial of the thefts from Mattel. |
| Nicole Coleman | | MGA's hiring of Jorge Castilla, and Mr. Castilla's performance at MGA. |
| Dr. Nada Sanders | | Expert testimony regarding the value of the forecasting and inventory management trade secrets taken by Jorge Castilla and general status of MGA's forecasting systems and capabilities at and after the time of Castilla's arrival. |
| John Gray | | Use of Mattel's trade secret information. |
| Jorge Castilla | | His access to proprietary information at Mattel, his theft of Mattel proprietary information, his use and disclosure of that information at MGA, and his misrepresentations and concealment of the theft from Mattel and the FBI. |
| Brad Maryman | | Expert testimony on the forensic evidence of the theft of Mattel's trade secrets by former Mattel employees in the United States, Canada, and Mexico.  Email transmission across state lines and/or in interstate commerce. |
| Robert Eckert | | Mattel's intellectual property and its importance to Mattel's business.  Tools necessary for successful operation of a |

| | |
|---|---|
| | major toy company.  Value of the intellectual property stolen by MGA.  Bratz's injury to Barbie.  MGA's injuries to other Mattel products. |
| Mattel, Inc. custodian of records | Authentication and admissibility of documents. |
| Mattel de Mexico, S.A. de C.V. custodian of records | Authentication and admissibility of documents. |
| Mattel Servicios, S.A. de. C.V. custodian of records | Authentication and admissibility of documents. |
| MGA Entertainment, Inc. custodian of records | Authentication and admissibility of documents. |
| MGA Hong Kong custodian of records | Authentication and admissibility of documents. |
| MGAE de Mexico custodian of records | Authentication and admissibility of documents. |
| MGA Canada custodian of records | Authentication and admissibility of documents. |

| Witness | Subject |
|---|---|
| Wachovia custodian of records | Authentication and admissibility of documents. |
| Zapf Creations AG custodian of records | Authentication and admissibility of documents. |
| Pete Garza | Custodian of collected electronic evidence. |
| Cecilia Kwok | Early Bratz development in MGA Hong Kong and communications related thereto. |
| Lisa Saunders | Circumstances under which MGA disclosed unreleased product information at the K-Mart planogram room, including the timing of such disclosure and lack of relevant confidentiality obligations.  Unreleased product information disclosed by MGA to retailers throughout the year.  Unreleased Mattel product information obtained by MGA employees from retailers and at retailer planogram rooms. |
| Patrick Potgeisser | MGA employees obtaining Mattel product information from retailers and at toy fairs.  MGA's efforts to hire away Mattel employees in Europe.  MGA's showroom at the Nuremberg toy fair, including the lack of relevant confidentiality obligations.  The relationship between Zapf and MGA Europe. |
| Thomas Pfau | Circumstances under which MGA employees entered competitors' showrooms, including Mattel's, at the Nuremberg toy fair and elsewhere in Europe.  The distribution within MGA and/or Zapf of such information.  The relationship between Zapf and MGA Europe. |

| | | |
|---|---|---|
| 1<br>2 | Shawn Brower | MGA's entering and removing documents from Mattel's showrooms at toy fairs. |
| 3<br>4<br>5<br>6<br>7 | Janine Firth | Circumstances under which MGA disclosed unreleased product information at the Wal-Mart planogram room, including the timing of such disclosure and lack of relevant confidentiality obligations.  Unreleased Mattel product information obtained by MGA employees from retailers and at retailer planogram rooms. |
| 8<br>9<br>10<br>11 | Angelika Sternberg | Circumstances under which MGA employees entered competitors' showrooms, including Mattel's, at the industry toy fairs in Europe, including writing reports reflecting the information and distributing them within MGA and/or Zapf. |
| 12<br>13<br>14<br>15<br>16 | Kerstin Stumpf-Trautmann | MGA infiltration of Mattel toy fair showrooms and unreleased product information.  Circumstances under which MGA and Zapf employees entered competitors' showrooms, including Mattel's, at the industry toy fairs in Europe, including writing reports reflecting the information. |
| 17<br>18<br>19<br>20<br>21 | Katharina Schultze | MGA infiltration of Mattel toy fair showrooms and unreleased product information.  Circumstances under which MGA and Zapf employees entered competitors' showrooms, including Mattel's, at the industry toy fairs in Europe, including writing reports reflecting the information. |
| 22<br>23<br>24<br>25<br>26<br>27 | Sandrine de Raspide | MGA infiltration of Mattel toy fair showrooms and unreleased product information.  Circumstances under which MGA employees entered competitors' showrooms, including Mattel's, at the industry toy fairs in Europe, and obtained information on Mattel products from retailers and other third parties. |
| 28 | | |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5 | Dennis Jolicoeur | MGA's practices at toy fairs and MGA's public disclosure of alleged trade secrets and confidential information. MGA's servers, including how emails between MGA's offices are transmitted.  MGA's knowledge of Ryan Tumaliuan's simultaneous employment at MGA and Mattel. |
| 6 | David Malacrida | MGA's disclosure of its alleged trade secrets. |
| 7<br>8 | Denise Van Patten | MGA's disclosure of its alleged trade secrets. |
| 9 | Joan Gaynor | MGA's disclosure of its alleged trade secrets. |
| 10<br>11<br>12<br>13 | John Louie | The policies and practices of Mattel's Market Intelligence Department.  Disapproval of Mr. Villasenor's use of false credentials or unethical conduct to obtain intelligence information at toy fairs. |
| 14<br>15<br>16 | Matt Turetzky | Absence of confidential treatment of materials and information at the New York Toy Fair.  Mattel's knowledge of Mr. Villasenor's activities. |
| 17<br>18<br>19<br>20 | Sal Villasenor | Absence of confidential treatment of MGA materials and information at toy fairs and trade shows.  Absence of confidential materials and information in various Toy Fair review presentations. |
| 21<br>22<br>23<br>24<br>25<br>26 | Ron Brawer | MGA's theft of Mattel trade secrets and confidential information, including the misappropriation of Mattel's My Scene Swappin' Styles theme.  His role in recruiting Mattel employees for MGA.  MGA's and his spoliation of evidence.  MGA's knowledge of the facts underlying its counterclaims-in-reply.  MGA's conduct at toy fairs. |
| 27<br>28 | Janet Han | Mattel's defenses to MGA's claims, including but not |

| | | |
|---|---|---|
| 1 | | limited to, its allegations of trade secret theft and |
| 2 | | misappropriation, and unfair competition. |
| 3 | Edmond Lee | MGA's copying of Mattel products and processes. |
| 4 | | Mattel's defenses to MGA's unfair competition claims, |
| 5 | | including but not limited to, its allegations of trade dress |
| 6 | | infringement of 4 Ever Best Friends, the differences between 4 |
| 7 | | Ever Best Friends products and Wee 3 Friends products, |
| 8 | | MGA's interference with vendor relations claims, and MGA's |
| 9 | | allegations of hair shortage. |
| 10 | Patrick Ma | MGA's interference with vendor relations claims. |
| 11 | | MGA's indemnification of Bryant.  MGA's and MGA Hong |
| 12 | | Kong's finances.  Employment contracts in the toy industry, |
| 13 | | including employees' understanding of same. |
| 14 | Ninette | MGA's trapezoidal packaging, including its functional |
| 15 | Pembleton | and aesthetically functional advantages, its lack of |
| 16 | | distinctiveness, lack of evidence of secondary meaning, and the |
| 17 | | lack of evidence of actual confusion and the lack of any |
| 18 | | likelihood of confusion between it and Mattel's packaging.  The |
| 19 | | relationship between the sale of Bratz dolls and the sale of other |
| 20 | | Bratz products. |
| 21 | Edward Blair | Expert testimony that there is no material likelihood that |
| 22 | | consumers exposed to Mattel products would think that the |
| 23 | | products were produced or sold by MGA based on the shape of |
| 24 | | product packaging. |
| 25 | Julie Scholvin | Rebuttal to MGA's claim that Mattel engaged in unfair |
| 26 | | competition with Kohl's. |
| 27 | Mike Tsiakaros | Rebuttal to MGA's claim that Mattel engaged in unfair |
| 28 | | |

| | |
|---|---|
| | competition with Kohl's. |
| Kathleen Simpson-Taylor | Rebuttal to MGA's claim that Mattel engaged in unfair competition with Kohl's. |
| Milt Zablow | Rebuttal to MGA's claim that Mattel engaged in unfair competition with Kohl's. |
| Neil Friedman | Rebuttal to MGA's claim that Mattel improperly influenced TIA's voting procedures with respect to the TOTY award. |
| Arnie Rubin | Rebuttal to MGA's claim that Mattel improperly influenced TIA's voting procedures with respect to the TOTY award. |
| Terry Bartlett | Rebuttal to MGA's claim that Mattel improperly influenced TIA's voting procedures with respect to the TOTY award. |
| Simon Waldron | Rebuttal to MGA's allegations that Mattel misappropriated the theme for Acceleracers. |
| Bruce Green | Expert testimony on MGA's allegation that Mattel and Quinn Emanuel improperly concealed and suppressed evidence. |
| William Flynn | Expert testimony on the "Bird and Bird" facsimile that MGA claims reflects destruction of evidence by Mattel and Quinn Emanuel.  The report concludes that notations on the 46-page facsimile are consistent with normal operation of a Panasonic facsimile machine. |
| Russ Hagey | Rebuttal to MGA's allegations that Mattel retained Bain to steal trade secrets regarding MGA's business, products and operations and to provide them to Mattel in the form of a presentation known as Project Doll. |

| | |
|---|---|
| Mike Salop | Rebuttal to MGA's allegations that Mattel retained Bain to steal trade secrets regarding MGA's business, products and operations and to provide them to Mattel in the form of a presentation known as Project Doll. |
| Andre James | Rebuttal to MGA's allegations that Mattel retained Bain to steal trade secrets regarding MGA's business, products and operations and to provide them to Mattel in the form of a presentation known as Project Doll. |
| Neil Kadisha | The facilitation of Larian's scheme to acquire MGA's Wachovia debt through a purportedly independent third party investor.  The relationship of Omni 808, Larian and MGA. The terms of the agreements between the same.  The collateral purportedly held by Omni 808. |
| Fred Mashian | The structuring of the sham investment made by at least one member of Omni 808 through a foreign shell company. |
| Leon Neman | His investment in Omni 808 made on behalf of Larian and the terms thereof.  His efforts to conceal the source of the funds used for his investment through the use of a foreign shell company. |
| Parvis Samouhi | The source of the funds allegedly used by Mr. Neman for his $10 million investment in Omni 808 made on behalf of Larian. |
| Arsalan Gozini | His role in Omni 808's acquisition of MGA's Wachovia debt as a front for Larian, including the creation of false and back-dated promissory notes and sham assignment documents. Larian's repayment of his purported investment. |
| Joseph Moinian | His role in structuring and facilitating Omni 808's |

| | | |
|---|---|---|
| | | purported acquisition of MGA's Wachovia debt, including his investment in Omni 808 made on behalf of Larian and his efforts to conceal Larian's role in the transaction.  Larian's repayment, or promise to repay, his purported investment. |
| | Leon Farahnik | Personal loans between Larian and Mr. Farahnik that Larian called when he had to repay members of Omni 808 for their purported investments in Omni 808 pursuant to Larian's undisclosed side-deals with those members. |
| | David Nazarian | His investment in Omni 808 made on behalf of Larian and the terms thereof.  His efforts to conceal Larian's role in the transaction. |
| | Benjamin Nazarian | His investment in Omni 808 made on behalf of Larian and the terms thereof. |
| | Eli Makabi | MGA's financial management and general business practices. The creation, formation, ownership, purpose and management of IGWT 826. |
| | Shirin Makabi | MGA's scheme to dissipate and conceal MGA's assets, including through IGWT 826, LLC's purported investment in Omni 808, so as to render MGA judgment-proof.  Her role in the management of MGA and IGWT 826.  MGA's attempts to conceal assets from Mattel and thwart the jury's verdict and this Court's orders. |
| | Veronica Marlow | The sample makers' work on Bratz.  The sample makers' exposure to MGA, Larian and MGA's confidential information.  MGA's knowledge of the sample makers' work.  Payments to sample makers for their work for MGA.  Spoliation and cover-up of evidence, including through the use of false social security |

| | | |
|---|---|---|
| 1 | | numbers, relating to MGA's use of Mattel employees for Bratz. |
| 2 | Peter Marlow | The sample makers' work on Bratz.  The sample makers' exposure to MGA, Larian and MGA's confidential information.  MGA's knowledge of the sample makers' work. Payments to the sample makers for their work for MGA.  Spoliation and cover-up of evidence, including through the use of false social security numbers, relating to MGA's use of Mattel employees for Bratz. |
| 9 | Ana Cabrera | The nature of her relationship with the Marlows, and the nature of her relationship with MGA. The work she did for MGA while employed by Mattel, including the work she did on Bratz.  Her exposure to MGA's purportedly confidential information.  Details of the scheme to hide payments by the Marlows and MGA, including the use of her sister-in-law's name and social security number.  Her understanding of her obligations to Mattel. |
| 17 | Beatriz Morales | The nature of her relationship with the Marlows, and the nature of her relationship with MGA.  The work she did for MGA while employed by Mattel, including the work she did on Bratz.  Her exposure to MGA's purportedly confidential information.  Details of the scheme to hide payments by the Marlows and MGA, including the use of her husband's name and social security number.  Her understanding of her obligations to Mattel. |
| 25 | Maria Elena Salazar | The nature of her relationship with the Marlows, and the nature of her relationship with MGA.  The work she did for MGA while employed by Mattel, including the work she did on |

| | | |
|---|---|---|
| | | Bratz.  Her exposure to MGA's purportedly confidential information.  Details of the scheme to hide payments by the Marlows and MGA, including the use of her husband's name and social security number.  Her recruitment and employment with MGA. |
| | Ravi Dhar | Expert testimony that the success of Bratz dolls is based on the unique design or appearance of the dolls.  Moreover, the success of Bratz accessories or other merchandise is linked to the success of the dolls. |
| | Ran Kivetz | Expert testimony that consumers purchase Bratz dolls based on their visual appeal.  Rebuttal testimony to MGA's expert Erich Joachimsthaler regarding MGA's trapezoidal packaging claim. |
| | Leah Marks | MGA's licensing practices with respect to Bratz and the relationship between the sale of Bratz dolls and the sale of Bratz licensed products. |
| | Michael Wagner | The damages Mattel suffered as a result of defendants' theft of Bratz and other trade secrets and defendant's RICO violations.  MGA's purported damages as reflected in the expert report of James Malackowski. |

DATED:  November 30, 2010

QUINN EMANUEL URQUHART & SULLIVAN. LLP


By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc. and Mattel de Mexico. S.A. de C.V.