ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br>Consolidated with Nos. CV 04-9059 and CV 05-2727<br><br>Hon. David O. Carter<br><br>**MGA ENTERTAINMENT'S RESPONSE TO MATTEL, INC'S STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW**<br><br>Date:   December 20, 2010<br>Time:   TBA<br>Dept:   Courtroom 9D<br><br>Trial Date:   January 11, 2011 |

MGA Parties submit the following Response to Mattel's Statement of Uncontested Conclusions of Law.

1.     Information that is generally known to the public or to persons in the relevant industry is not a trade secret.  Cal. Civ. Code § 3426.1 ("'Trade secret' means information . . .that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.");  American Paper & Packaging Prods., Inc. v. Kirgan, 183 Cal. App. 3d 1318 (1986) 183 Cal. App. 3d at 1318 (compilation of publicly available information is readily ascertainable and thus not a trade secret).

**UNCONTESTED** that Cal. Civ. Code § 3426.1 defines what is and is not a trade secret.  **CONTESTED** that California's Uniform Trade Secret Act does not protect a "compilation of publicly available information is readily ascertainable and thus not a trade secret."  This is an over-simplification of the law, *see, e.g.*, *Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278 (1990), which this Court need not resolve because MGA's trade secrets are not a compilation of publicly available information that is readily ascertainable.

2.     "The essence of a trade secret is that it derives its value from secrecy." Stromback v. New Line Cinema, 384 F.3d 283, 305 (6th Cir. 2004); Cal. Civ. Code §3426.1(d).  Thus, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information ... his property right is extinguished." See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984) .

**UNCONTESTED.**

3.     Displaying products at trade shows is the type of conduct that destroys trade secret status for those products.  See VSL Corp. v. Gen. Techs. Inc., 1997 WL

654103, at *3 (N.D. Cal. Jul. 21, 1997) (granting summary judgment for defendant on plaintiff's trade secret claims because "[plaintiff] displayed the duct at trade shows and distributed marketing information about the duct which provided drawings and measurements.  [Plaintiff] never required that anyone sign a confidentiality agreement before being given samples and other data.") (citations omitted)); Marine Pile Drivers, LLC v. Welco, Inc., 988 So.2d 878, 881-82 (La. Ct. App. 2008) (upholding trial court's finding that plaintiff failed to take reasonable efforts to maintain the secrecy of its barge design because "[t]he barge was marketed at trade shows and pictured on websites and in pamphlets.").

**CONTESTED.**  For the reasons set forth in MGA's Opposition to Mattel's Motion for Partial Summary Judgment, these cases have no application to this case and the facts of these cases are distinguishable.

4.     A party seeking to protect a trade secret  must show that it undertook "efforts that are reasonable under the circumstances to maintain its secrecy."  Civ. Code §3426.1; see Tax Track Sys. Corp. v. New Investor World, Inc., 478 F.3d 783, 788 (7th Cir. 2007) (no reasonable jury could find that plaintiff took reasonable efforts to keep a memo confidential where, *inter alia*, it distributed the memo to 600-700 people and only sought confidentiality agreements from 190 of them, and the effort of storing the memo exclusively on a password-protected computer was "entirely undermined" by the "widespread nonconfidential disclosure of the memo to hundreds of outsiders.").

**UNCONTESTED** that Civ. Code §3426.1 provides that a party seeking to protect a trade secret  must show that it undertook "efforts that are reasonable under the circumstances to maintain its secrecy."

5.     Self-serving testimony that a product is a trade secret is insufficient as a matter of law to defeat summary judgment.  Multimedia Games, Inc. v. Network Gaming Intern. Corp., 1999 WL 33914442, *5 (N.D. Okla. 1999) (conclusory, self-serving statements that products were trade secrets insufficient to overcome

summary judgment).

**IMMATERIAL.**  MGA has presented evidence that what it claims are trade secret are, in fact, trade secret. *Multimedia Games, Inc. v. Network Gaming Intern. Corp.*, 1999 WL 33914442, *5 (N.D. Okla. 1999), concerned a failure of proof not at issue in this case.

6.     The best evidence rule requires that the original of a writing be used to prove the contents thereof. Fed. R. Evid. 1002.

**IMMATERIAL.**  "The Best Evidence Rule provides that 'the production of the original document is required to prove the contents of a writing.' Fed. R. Evid. P. 1002. If a witness's testimony is based on his first-hand knowledge of an event as opposed to his knowledge of the document, however, then Rule 1002 does not apply." *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648-49 (7th Cir. 2006).

7.     Full disclosure to the general public at large is not required to vitiate trade secret status; once a trade secret is disclosed to someone who is under no obligation to protect the confidentiality of the information, the property right in that trade secret is extinguished.  Ruckelshaus., 467 U.S. at 1002; De Lage Landen Operational Servs, LLC v. Third Pillar Sys., Inc., 693 F. Supp. 2d 423, 440 (E.D. Pa. 2010) ("Where a plaintiff has freely disclosed the information without the protection of a confidentiality agreement, it cannot claim a trade secret.") (citing Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., 923 F. Supp. 1231, 1254 (N.D. Cal. 1995)).

**UNCONTESTED.**

8.     Publicly-advertised products cannot maintain trade secret status. See Ruckelshaus., 467 U.S. at 1002.  "Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished ." Stutz Motor Car of America, Inc. v. Reebok International, Ltd., 909 F.Supp. 1353, 1359 (C.D.Cal.1995) aff'd 113 F.3d 1258 (9th Cir.1997).

**UNCONTESTED.**

9.     The fact that trade secrets are "readily ascertainable" is a defense.  See Brescia v. Angelin,  172 Cal.App.4th 133 (2009) ("that the alleged trade secret is readily ascertainable by proper means is a defense to the element of misappropriation.").

**UNCONTESTED.**

10.     Where a plaintiff fails to offer evidence of damages for certain of his claims, having instead only responded to interrogatories seeking information on damages that such information would be the subject of an expert damages report but never produces such an expert report, the plaintiff is unable to provide sufficient evidence by which a jury could determine damages. Weinberg v. Whatcom County, 241 F.3d 746 (9th Cir.  2001); see also O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 399 F.Supp.2d 1064, 1077 (N.D. Cal. 2005) (jury was "without sufficient evidence, or a reasonable basis" to determine damages where expert failed to quantify damages as to each individual trade secret).

**IMMATERIAL AND CONTESTED.**  MGA has provided evidence of damages.  Moreover, once a trade secret information is acquired, used, or disclosed through improper means, the trade secret owner has lost a property interest, and harm is presumed.  *Ruckelhaus v. EPA*, 467 U.S. 986, 1012 (1979) (finding property right in trade secrets); *see also TMX Funding*, *Inc. v. Impero Techs., Inc.*, 2010 WL 1028254 at *8 (N.D. Cal. Mar. 18, 2010) ("California courts have presumed irreparable harm when proprietary information is misappropriated."). *Weinberg v. Whatcom County*, 241 F.3d 746 (9th Cir.  2001), is a Washington state case dealing with a state and federal "takings claim."  Such claims "require proof that the regulatory action caused deprivation of all economic use" and  takings claims are rooted in the notion that no private property shall be taken for public or private use without just compensation.  *Id.* at 751-752.  No such rule applies in the trade secret context and *Weinberg* is inapplicable.  *See Ruckelhaus*, 467 U.S. at

1012; *TMX Funding*, 2010 WL 1028254 at *8.  In *O2 Micro Intern. Ltd. v. Monolithic Power Sys.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005), the court set aside the jury's $12 million unjust enrichment award because plaintiff's damages calculation were based on an assumption that all the trade secrets were misappropriated and the jury found that only one of them resulted in the defendant being unjustly enriched.  However, the Court granted reasonable royalty based upon the expert's determination as to what the parties would have paid as reasonable royalty for any one group of trade secrets.  *O2 Micro*, 399 F. Supp. 2d at 1077-78.

11.    An "eleventh hour change" in an expert testimony is harmful to an opposing party who "would have had to scrap much of its earlier preparation in favor of a frantic, last-minute scramble" to investigate new theories "during the last few days of the pretrial period. " Thibeault v. Square D Co., 960 F.2d 239, 247 (1st Cir. 1992); see also Toomey v. Nextel Communications, Inc., 2004 WL 5512967, *13 (N.D. Cal. 2004) (excluding damages calculation not disclosed in initial expert report because opposing party "would have to address it for the first time in the midst of its final trial preparations").

**IMMATERIAL.**  The facts in the current action are different than the cases cited.  In *Thibeault v. Square D Co.*, 960 F.2d 239 (1st Cir. 1992), the plaintiff did not identify the experts he intended to call at trial until four days before start of trial.  Four days before trial, Plaintiff served a supplemental response identifying seven experts who would testify at trial and disclosed a new theory of liability that had not been disclosed before.  *Id.* at 241-42.  The court precluded plaintiff's proffered expert testimony.  In *Toomey v. Nextel Commc'ns*, 2004 WL 5512967 (N.D. Cal. 2004), plaintiff's expert acknowledged at his deposition that his expert report contained computational errors.  But, the expert did not inform defendant how he would correct his calculations.  Before trial, the expert attempted to correct his damages calculations based on new assumptions.  The court excluded any testimony based on new assumptions and calculations that had not been previously

1    disclosed to the defendant.  Neither of the cases discussed above are applicable to

2    the current action.

3        12.    Federal Rule of Civil Procedure 26(e)(1) requires to experts to disclose

4    their theories based on the available evidence in their initial reports.  O'Connor v.

5    Boeing North American, Inc.  2005 WL 6035243, *7 (C.D. Cal. 2005)  (barring

6    supplemental expert testimony proffered two months before trial because "[t]o permit

7    these reports into evidence would improperly widen the trial issues at the eleventh

8    hour, and would unduly prejudice Defendants in preparing for trial. Moreover, the new

9    opinions appear based on information that was available to these experts at the time of

10   their initial Rule 26 disclosures.").

11       **CONTESTED AND IMMATERIAL.**  Federal Rule of Civil Procedure

12   26(e)(1) requires a party to supplement its disclosures and responses in a timely

13   manner if the party learns that in some material respect the disclosure or response is

14   incomplete or incorrect.  Federal Rule of Civil Procedure 26(e)(1).  Federal Rule of

15   Civil Procedure 26(e)(2) requires a party to supplement an expert's report and

16   information given during the expert's deposition.  Federal Rule of Civil Procedure

17   26(e)(2).  The case cited, *O'Connor v. Boeing N. Am., Inc.*, 2005 WL 6035243, *7

18   (C.D. Cal. 2005), is inapplicable as the facts in the current action are different.  In

19   *O'Connor*, the court excluded plaintiff's supplemental expert reports submitted two

20   months after the close of expert discovery that disclosed entirely new opinions not

21   disclosed in their original reports, nor previously asserted during their deposition.

22   The facts in the current action are different.

23       13.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or

24   associated with any enterprise . . . to conduct or participate . . . in the conduct of

25   such enterprise's affairs" through the commission of two or more statutorily defined

26   crimes" – which RICO calls "a pattern of racketeering activity."  18 U.S.C. §

27   1962(c).

28       **UNCONTESTED.**

- 6 -

14.    The elements of a civil RICO claim under § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to Plaintiff's business of property." Living Designs Inc. v. E.I. Dupont De Nemours & Co., 431 F.3d 353, 361 (9th Cir. 1995).

**UNCONTESTED** except that Mattel's conclusion of law has a typographical error ("business or property" not "business of property").

15.    "'The existence of an enterprise at all times remains a separate element which must be proved by' the plaintiff in order to establish a RICO violation." Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1026 (8th Cir. 2008) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

**UNCONTESTED.**

16.    An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Turkette, 452 US at 583.

**UNCONTESTED.**

17.    Whether an enterprise exists "depends on objective interconnections and requires a careful scrutiny of the facts." United States v. Feldman, 853 F.2d 648, 657-58 (9th Cir. 1988). "To establish the existence of such an enterprise, MGA must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" Odom v. Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007) (quoting Turkette, 452 U.S. at 583). MGA "must . . . show the existence of an organization among the various [participants] and show that the organization has some continuity." Turkette at 583.

**UNCONTESTED.**

18.    The "common purpose" requirement reflects that an "association" is a "'collection of persons who have joined together for a certain object.'" Boyle v. United States, 129 S.Ct. 2237, 2244 (2009) (quoting Black's Law Dictionary 156 (rev. 4th ed. 1968)). "'[D]ivergent goals' among members of a purported

1  association-in-fact enterprise is a 'fatal problem' to a RICO claim." <u>Craig Outdoor</u>,

2  528 F.3d at 1027 (quotation omitted) (RICO claim failed where "[p]laintiffs failed

3  to allege sufficient facts to demonstrate that Viacom and each of the three railroads

4  had a 'common purpose of engaging in a course of conduct.'").

5       **UNCONTESTED** that an "association" is a collection of persons joined

6  together for a certain object.  **CONTESTED** that divergent goals are "fatal" to a

7  RICO claim.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007)

8  (common purpose does not require enterprise members to share all their purposes in

9  common with one another and does not require that all members work with one

10 another; finding a single common purpose sufficient).  *See also* Dkt. #9182

11 (Mattel's Opp. to MGA's MSJ) at 87 (quoting *Odom*).

12      19.    Although the Supreme Court has not decided whether the "common

13 purpose" must be fraudulent, courts in this Circuit and elsewhere recognize that the

14 "hallmark of an enterprise is an association of entities, groups or individuals that

15 'must share a common purpose to engage in a particular fraudulent course of

16 conduct and work together to achieve such purposes.'"  <u>In re Jamster Marketing</u>

17 <u>Litigation</u>, 2009 WL 1456632, *5 (S.D. Cal. May 22, 2009) (quoting <u>First Capital</u>

18 <u>Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 174 (2d Cir. 2004); <u>see also</u>

19 <u>Chagby v. Target Corp.</u>, 2008 WL 5686105, * 2 (C.D. Cal. Oct. 27, 2008) (noting

20 that the "law is unsettled as to whether that common purpose must be fraudulent");

21 <u>Friedman v. 24 Hour Fitness USA, Inc.</u>, 580 F. Supp. 2d 985, 991 (C.D. Cal. 2008)

22 ("The Ninth Circuit has not addressed the precise question of whether a common

23 fraudulent purpose must be alleged.").

24      **CONTESTED.**  Enterprises can be legitimate or illegitimate entities, and

25 thus need not share a "fraudulent" purpose.  *U.S. v. Turkette,* 452 U.S. 576, 580-81

26 (1981).  In any event, even illegitimate enterprises need not be *fraudulent* (*e.g.*,

27 enterprises based on drug distribution, money laundering, extortion, gambling).

28

20.     In practice, an actionable common purpose is almost always a fraudulent one.  See, e.g., Odom, 486 F.3d at 552 (Microsoft and Best Buy shared "common purpose of increasing the number of people using Microsoft's Internet service through fraudulent means"); Three Rivers Provider Network, Inc. v. Meritain Health, Inc., 2008 WL 2872664, at *14 (S.D. Cal. Jul. 23, 2008) (allegation that the defendants and other non-parties "associated together to defraud Plaintiff out of fees and convert Plaintiff's network of discounts" sufficient to allege that defendants "associated together for the common purpose of defrauding Plaintiff"); Alves v. Players Edge, Inc., 2007 WL 6004919, at *10 (S.D. Cal. Aug. 8, 2007) (allegations "sufficiently allege that at least some Defendants, including Player's Edge and National Sports Consultants, associated together for the common purpose of defrauding persons through an illegal betting scheme"); see also Moore v. Verizon Communications, Inc., 2010 WL 3619877, at *5 (N.D. Cal. Sep. 10, 2010) ("Because Plaintiffs' RICO claim is based on fraud, they must establish that the enterprise 'share[d] a common purpose to engage in a particular fraudulent course of conduct and work[ed] together to achieve such purposes.'") (quoting First Capital, 385 F.3d at 174); In re Jamster Marketing Litigation, 2009 WL 1456632 at *5 ("At a minimum, Plaintiffs must set forth particularized allegations that Wireless Providers and Content Provides had the common purpose of increasing their revenues by fraudulent means."); First Capital, 385 F.3d at 174 ("'[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes'") (citations omitted).

**CONTESTED.**  *See* Response to Conclusion of Law No. 19.  Since an enterprise need not be illegitimate, the common purpose of the enterprise's members need not be illegitimate, let alone "fraudulent."

21.     "An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'"  Odom, 486 F.3d at 552.

**CONTESTED** to the extent that Mattel intends the word "vehicle" to be defined as synonymous with means or mechanism. Defendants violate RICO where they are employed by or associated with an enterprise and commit predicate acts of racketeering activity in order to conduct the affairs of that enterprise. 18 U.S.C. §1962(c). They need not use the enterprise as the means for committing those predicate acts.

22.     A RICO plaintiff must provide sufficient "evidence that the various associates function as a *continuing* unit." Turkette, 452 U.S. at 583 (emphasis added). This requirement "focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." Odom, 486 F.3d at 553 (citations omitted). While there is no litmus test for how long suffices for a continuing unit, the case law measures it in years, not months. See id.

**UNCONTESTED.**

23.     "To establish liability under § 1962(c) one must allege and prove the existence of *two distinct entities*: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001) (emphasis added); see also Living Design, 431 F.3d at 361, citing Rae v. Union Bank, 725 F.2d 478, 481 (9th Cir. 1984).

**UNCONTESTED.**

24.     "A claim for mail fraud or wire fraud must allege that the defendant: '(1) devised [] or intend[ed] to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use[d] the mail [or wires] for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts).'" Dkt. 8423 (quoting Carter v. United States, 530 U.S. 255, 261 (2000)).

**UNCONTESTED.** *See also* Response to Conclusion of Law No. 25.

25.     The focus of the wire fraud statute is on the misuse of the wires. United States v. Garlick, 240 F.3d 789, 792 - 93 (9th Cir. 2001); see also United

States v. Molinaro, 11 F.3d 853, 860 (9th Cir. 1993) (purpose of the mail fraud statute is "to prevent misuse of the mails.").  Defendant must establish that use of the wires was incident to an "essential part of the scheme."  Pereira v. United States, 347 U.S. 1, 8 (1954).  Alleging or identifying misrepresentation is not enough — "in person" misrepresentations do not establish wire fraud.  See Tel-Phonic Servs, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992) ("Misrepresentations that occurred at a meeting do not constitute wire or mail fraud").

**UNCONTESTED** that the wire fraud statute requires the use of the wires in furtherance of the fraudulent scheme.  **CONTESTED** that the wiring must be an essential part of the scheme.  Instead, the wiring need only be a "step in the plot" or "incidental to an essential part of the scheme."  *U.S. v. Garlick*, 240 F.3d 789, 795 (9th Cir. 2001); Dkt. #8423 at 11-12 (quoting *Schmuck v. U.S.*, 489 U.S. 705, 714 (1989)).

26.    To avoid summary judgment, a RICO plaintiff must identify specific wire communications that further the fraud.  Manion v. Freund, 967 F.2d 1183, 1186 (8th Cir. 1992) (granting summary judgment in favor of RICO defendant where plaintiff had identified numerous "communications by mail or telephone" but failed to properly specify how "the communications were fraudulent or how they were used in furtherance of the scheme to defraud").

**UNCONTESTED.**

27.    To establish a criminal copyright infringement predicate act, a RICO plaintiff must prove "infringement, that the infringement was willful, and that it was engaged in for profit."  United States v. Wise, 550 F.2d 1180, 1188 (9th Cir. 1977); see also Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254, 1268 (C.D. Cal. 2007) (quoting United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986)) (elements are "(1) infringement of a copyright (2) done willfully (3) for purposes of commercial advantage or private financial gain'").

**UNCONTESTED.** As for the profit element, "[i]t is irrelevant whether the hope of gain was realized or not. The requirement of profit is intended to delineate commercial infringements from infringements for merely personal use and philanthropic infringements." *U.S. v. Wise*, 550 F.2d 1180, 1195 (9th Cir. 1977) (internal quote omitted).

28.    Criminal copyright infringement incorporates the basic requirements of copyright infringement – proof of ownership and infringement of an exclusive right. See Entm't Research v. Genesis Creative Group, 122 F.3d 1211, 1217 (9th Cir. 1997) ("To establish copyright infringement, the holder of the copyright must prove both valid ownership of the copyright and infringement of that copyright by the alleged infringer."); Kelly v. L.L. Cool J., 145 F.R.D. 32, 39 (S.D.N.Y. 1992) ("[C]onduct that does not support a civil action for infringement cannot constitute criminal conduct under 17 U.S.C. § 506."). Beyond the civil requirements, however, it must be shown that the infringement was committed willfully, *i.e.*, with the specific knowledge that the actions taken violated copyright laws, and that it be done "for profit." Wise, 550 F.2d at 1194-945.

**UNCONTESTED.** As for the profit element, "[i]t is irrelevant whether the hope of gain was realized or not. The requirement of profit is intended to delineate commercial infringements from infringements for merely personal use and philanthropic infringements." *U.S. v. Wise*, 550 F.2d 1180, 1195 (9th Cir. 1977) (internal quote omitted).

29.    In general, factual information is not subject to copyright protection. See 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); see also Feist Publications, Inc v. Rural Tel. Serv. Inc., 499 U.S. 340, 347 (1991) ("Census data . . . do not trigger copyright because these data are not 'original' in the constitutional sense.");

Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc., 777 F.2d 485, 491 (9th Cir. 1985) ("Copyright law never protects the facts and ideas contained in published works."); Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 979 (2d Cir. 1980) (facts ascertained through research not protected by copyright); Publications Int'l v. Meredith Corp., 88 F.3d 473, 480-81 (7th Cir. 1996) (lists of ingredients and related instructions not entitled to protection because they constitute processes); Triangle Publications, Inc. v. Sports Eye, Inc., 415 F. Supp. 682, 685 n. 9 (E.D. Pa .1976) (data not protected by copyright).

    **CONTESTED** to the extent Mattel attempts to portray MGA's protectable copyrightable works as merely containing "facts."  For example, the court in *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 492 (2d Cir. 1985), found that the expression in a catalog is protectable, stating "[i]t is true, of course, that to whatever extent the expression and arrangement of facts is original, an author is protected against its copying."  While *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 980-981 (2d Cir. 1980) noted that some historical facts are exempted from copyright protection to encourage contributions to recorded knowledge, it cautioned that "[a] verbatim reproduction of another work, of course, even in the realm of nonfiction, is actionable as copyright infringement."

    Further, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991), involved telephone directories, which are readily distinguishable from MGA's catalogs containing original content as well as arrangement.  Likewise *Publ'ns Int'l v. Meredith Corp.*, 88 F.3d 473, 480-81 (7th Cir. 1996), involved instructions for preparing a dish, which was deemed a "procedure, process [or] system" under Section 102(b); *see also Triangle Publ'ns, Inc. v. Sports Eye, Inc.*, 415 F. Supp. 682, 685-686 (E.D. Pa. 1976) (noting that while "raw data" may not be copyrightable, "the method or form for expressing the data [] is copyrightable").  MGA's catalogs are not like a telephone directory or recipe or mass of raw data—

they contain both copyrightable *content* and comprise a copyrightable *form* for expressing such content.

30.     The originator of photograph, as its author, holds the copyright in his or her work.  <u>See</u> <u>Harper & Row Publishers, Inc. v. Nation Enters</u>, 471 U.S. 539, 547 (1985), citing <u>Burrow-Giles  Lithographic Co. v. Sarony</u>, 111 U.S. 53, 58 (1884); 17 U.S.C. § 201 ("Copyright in a work protected under this title vests initially in the author or authors of the work.").

**CONTESTED.** Authorship may vest entirely with an employer.  *See* 17 U.S.C. Section 201(b) ("the employer or other person for whom the work was prepared is considered the author"); 17 U.S.C. Section 101 (work made for hire is "a work prepared by an employee within the scope of his or her employment"); *Mostowfi v. I2 Telecom Int'l Inc.*, 2008 WL 624012, at *1 (9th Cir. Mar. 4, 2008) (employer owns the copyright to the software created by the employee under the work for hire doctrine).

31.     "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a); <u>see also</u> <u>Effects Assocs, Inc. v. Cohen</u>, 908 F.2d 555, 556 (9th Cir. 1990) ("[T]he Copyright Act invalidates a purported transfer of ownership unless it is in writing").

**CONTESTED** to the extent Mattel contends that any writing is required when authorship initially vests with the employer as a work made for hire.  *See* 17 U.S.C. Section 201(b) ("the employer or other person for whom the work was prepared is considered the author"); 17 U.S.C. Section 101 (work made for hire is "a work prepared by an employee within the scope of his or her employment"); *Mostowfi v. I2 Telecom International Inc.*, 2008 WL 624012, at *1 (9th Cir. Mar. 4, 2008) (employer owns the copyright to the software created by the employee under the work for hire doctrine).

32.     Non-public dissemination  is insufficient as a matter of law to amount to actionable infringement.  See, e.g., Bagdadi v. Nazar, 84 F.3d 1194, 1198  (9th Cir. 1996) ("publication" is characterized by "'the distribution of copies…of a work *to the public* by sale or other transfer of ownership, or by rental, lease, or lending'") (quoting 17 U.S.C. § 101) (emphasis added); see also Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1020 (7th Cir.), cert. denied, 502 U.S. 861, (1991), overr'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) ("[T]he proper inquiry is directed to the nature of the place in which private video booths are located, and whether it is a place where the public is openly invited."); Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc., 866 F.2d 278, 281 (9th Cir. 1989) (although a hotel is open to the public, the rooms where alleged infringement occurred enjoyed "substantial degree of privacy, not unlike [people's] own homes").

**CONTESTED.**  Section 106 of the Copyright Act grants the owner not only the exclusive rights to public display and distribution, but also the exclusive rights to reproduction and preparation of derivative works.  Regardless of the audience or public display or distribution, it is well established that reproducing a copyrighted work without the owner's permission is an infringement.  *Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 931 (2d Cir. 1994) (photocopying articles for personal archival use is a copyright infringement and not a fair use); *Harvester v. Rule Joy Trammell LLC*, 716 F.Supp.2d 428, 446 (E.D. Va. 2010) (making a digital copy using a scanner or a physical copy using a photocopier are both copyright infringements); *Advance Magazine Publishers Inc. v. Leach*, 466 F.Supp. 2d 628, 637 (D. Md. 2006) (using a scanner to create a digital copy of a work is equivalent to using photocopier to print a physical copy and they are both infringing); *Image Audio Visual Prods., Inc.*, *v. Perini Bldg. Co., Inc.*, 91 F. Supp. 2d 1075, 1079-80, 1086-87 (E.D. Mich. 2000) (defendant's photocopying of plaintiff's photographs was a copyright infringement; that the photocopied photos were used solely in

arbitration proceedings does not render them as fair use); *Television Digest, Inc. v. United States Tele. Assoc.*, 841 F. Supp. 5, 7 (D.D.C. 1993) (defendant's photocopying and distributing plaintiff's newsletter among its employees was an infringement of copyright; it did not fall under fair use where defendant profited from not having to purchase additional subscriptions); *Pasha Publ'ns Inc. v. Enmark Gas Corp.*, 1992 WL 70786 (N.D. Tex. Mar. 10, 1992) (defendant's unauthorized photocopying of plaintiff's newsletter and distribution among its employees was copyright infringement).

   *Bagdadi v. Nazar*, 84 F.3d 1194, 1197-98 (9th Cir. 1996), dealt with the innocent infringer defense, which asks whether the accused infringer was misled by a notice on copies publicly distributed by the copyright owner—an issue with no bearing whatsoever on this case.  The other two cases deal only with the public display right, i.e., whether merely showing the item was an infringement.  *Video Views, Inc. v. Studio 21 Ltd.*, 925 F.2d 1010, 1020 (7th Cir. 1991) (considering a licensee of adult videos who sued an adult book store for infringing its exclusive rights to perform certain adult films publicly and confirming in the sentence following Mattel's citation that public performance is broadly interpreted: "[t]his is compatible with our view that the Copyright Act contemplates a broad interpretation of the concept of 'public performance'" ); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 866 F.2d 278 (9th Cir. 1989) (considering only the narrow scenario of whether showing a video in a hotel room was public performance).

   33.   Willfulness in the context of criminal copyright infringement requires that the defendant knew it was infringing the plaintiff's alleged copyrights in the subject works.  <u>See</u> <u>Wise</u>, 550 F.2d at 1186 (defining willfulness by reference to <u>Screws v. United States</u>, 325 U.S. 91, 101 (1945), which held that "willfulness" in the context of a criminal statute requires an "evil motive to accomplish that which the statute condemns"); <u>see also</u> PAUL GOLDSTEIN, GOLDSTEIN ON

- 16 -

1   COPYRIGHT § 13.4.1 (2010) ("[T]he government must prove not only that the

2   infringer knew that the work in issue was the subject of a valid copyright and that

3   he was copying, distributing, performing or displaying it without the copyright

4   owner's permission; the government must also prove that the defendant knew that

5   his acts constituted copyright infringement, or at least, knew that there was a high

6   probability that his acts constituted copyright infringement.").

7        **CONTESTED** to the extent Mattel purports to raise the legal standard

8   associated with the requisite level of knowledge to support a willfulness finding**.**

9   Knowledge may be inferred by Mattel's course of conduct.  "[E]vidence of a course

10  of conduct encompassing past infringements may obliterate a claimed defense of

11  lack of willfulness."  4-15 NIMMER ON COPYRIGHT § 15.01[A][2]; *cf. Lanard Toys*

12  *Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705 (9th Cir. 2010) (upholding jury finding of

13  willful copyright infringement  where a company's efforts to "Americanize" pirated

14  products was such "that the jury could reasonably infer that [defendant] was

15  attempting to conceal the particulars of [] blatant copying").  *See U.S.  v. Drebin*,

16  557 F.2d 1316 (9th Cir. 1977) (evidence that defendant was familiar with the

17  copyright laws, and had knowledge of a "theft problem" went to the issue of

18  willfulness); *U.S.  v. Heilman*, 614 F.2d 1133, 1137-38 (7th Cir. 1980) (defendant's

19  knowledge that musical compositions were copyrighted, that record duplications

20  constituted  copyright infringement, and that conduct had been ruled illegal justified

21  conclusion of willful infringement).

22       34.    Evidence of reproduction or distribution of a copyrighted work, by

23  itself, [is not] sufficient to establish willful infringement of a copyright."  17 U.S.C.

24  § 506(a)(2) ).  Cf. United States v. Cross, 816 F.2d 297, 300 (7th Cir. 1987)

25  (affirming jury finding of willfulness where video store operator continued to

26  distribute illegal copies of motion pictures after federal agents "informed him that

27  the sale and rental of unauthorized copies was illegal"); United States v. Gottesman,

28  724 F.2d 1517, 1522 (11th Cir. 1984), abrogated on other grounds by Dowling v.

1    United States, 473 U.S. 207 (1985) (affirming finding of willfulness based on
2    "ample evidence to support the finding that [defendant] had personal knowledge
3    that the movies were pirated copies of the originals").

4         **CONTESTED.**  Knowledge may be inferred by Mattel's course of conduct.
5    "[E]vidence of a course of conduct encompassing past infringements may obliterate
6    a claimed defense of lack of willfulness."  4-15 NIMMER ON COPYRIGHT §
7    15.01[A][2]; *cf. Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705 (9th Cir.
8    2010) (upholding jury finding of willful copyright infringement  where a
9    company's efforts to "Americanize" pirated products was such "that the jury could
10   reasonably infer that [defendant] was attempting to conceal the particulars of []
11   blatant copying").  *See U.S.  v. Drebin*, 557 F.2d 1316 (9th Cir. 1977), *cert. denied*,
12   436 U.S. 904 (1978) (evidence that defendant was familiar with the copyright laws,
13   and had knowledge of a "theft problem" went to the issue of willfulness); *U.S.  v.*
14   *Heilman*, 614 F.2d 1133, 1137-38 (7th Cir. 1980) (defendant's knowledge that
15   musical compositions were copyrighted, that record duplications constituted
16   copyright infringement, and that conduct had been ruled illegal justified conclusion
17   of willful infringement).

18        35.    In the context of criminal copyright infringement, "profit includes the
19   sale or exchange of the infringing work for something for value in the hope of some
20   pecuniary gain."  Wise, 550 F.2d at 1195 (citations omitted); see also 17 U.S.C. §
21   101 (defining "financial gain" as including "receipt, or expectation of receipt, of
22   anything of value, including the receipt of other copyrighted works").

23        **CONTESTED.**  The definition of "financial gain" includes infringement
24   when for purposes of "commercial advantage."  17 U.S.C. § 506(a)(1)(A) (requires
25   that the infringement be committed "for purposes of commercial advantage *or*
26   private financial gain").  There is nothing in the statute or cases cited by Mattel that
27   requires actual "profit" from "sale or exchange" of infringing works; in fact, the
28   law is just the opposite.  As noted in *U.S. v. Wise*, "[i]t is irrelevant whether the

1   hope of gain was realized or not.  The requirement of profit is intended to delineate

2   commercial infringements from infringements for merely personal use and

3   philanthropic infringements."  550 F.2d 1180, 1195 (9th Cir. 1977) (internal quote

4   omitted).

5       36.    The "fair use" of a copyrighted work "is not an infringement of

6   copyright."  See 17 U.S.C. § 107.  In determining whether the fair use defense

7   applies, courts consider "(1) the purpose and character of the use, including whether

8   such use is of a commercial nature or is for nonprofit educational purposes; (2) the

9   nature of the copyrighted work; (3) the amount and substantiality of the portion

10  used in relation to the copyrighted work as a whole; and (4) the effect of the use

11  upon the potential market for or value of the copyrighted work."  Id.

12      **CONTESTED.**  "[E]very commercial use of copyrighted material is

13  presumptively an unfair exploitation of the monopoly privilege that belongs to the

14  owner of the copyright."  *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471

15  U.S. 539, 562 (1985) (holding that a magazine's unauthorized publication of

16  verbatim quotes from President Ford's memoirs was not a "fair use"); *see also*  17

17  U.S.C. § 107; *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir.

18  2008).   Further, "[t]o invoke the fair use exception, an individual must possess an

19  authorized copy of a literary work."  *Sega Enters., Ltd. v. MAPHIA*, 857 F. Supp.

20  679, 687 (N.D. Cal. 1994); *Atari Games Corp. v. Nintendo of America, Inc.*, 975

21  F.2d 832, 843 (Fed. Cir. 1992).

22      37.    With respect to the first fair use factor, "the degree to which the new

23  user exploits the copyright for commercial gain – as opposed to incidental use as

24  part of a commercial enterprise – affects the weight [courts] afford commercial

25  nature as a factor."  Elvis Presley Enters, Inc. v. Passport Video, 349 F.3d 622, 627

26  (9th Cir. 2003); see also Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc., 780

27  F.Supp. 1283, 1293 (N.D. Cal. 1991) (private use of video game enhance was

28  presumptively a fair use because it was limited to personal use and did not involve

exploiting a copyrighted work in "some commercial venture"); <u>Key Maps, Inc. v. Pruitt</u>, 470 F. Supp. 33, 38 (S.D. Tex. 1978) (when reproduction and distribution of a copyrighted work was noncommercial and was solely for internal purposes fair use defense applied).

**CONTESTED.**  *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("the crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price"); *Princeton Univ. v. Michigan Document Scvs.*, 99 F.2d 1381, 1383-84, 1389 (6th Cir. 1996) (photocopying segments of copyrighted works and using them in coursepacks to be sold to students is a copyright infringement and did not constitute fair use; also noting that photocopying creates "verbatim copies" and makes no changes to the original copyrighted work even when juxtaposed with excerpts from other works).

38.    "In general, fair use is more likely to be found in factual works than in fictional works."  <u>Stewart v. Abend</u>, 495 U.S. 207, 237 (1990); <u>see also</u> <u>Eldred v. Ashcroft</u>, 537 U.S. 186, 190 (2003) ("[T]he 'fair use' defense codified at § 107 allows the public to use not only facts and ideas contained in a copyrighted work, but also expression itself for limited purposes."); <u>Cooling Systems and Flexibles</u>, 777 F.2d at 491 ("Catalogs, by definition, are saturated with facts, numbers, and literal depictions of concrete objects.").

**CONTESTED.**  As to the nature of the copyrighted work, "this second factor more typically recedes into insignificance in the greater fair use calculus."  4-13 NIMMER ON COPYRIGHT § 13.05; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) ("We agree… that the [copyrighted work] falls within the core of the copyright's protective purposes.  This fact, however, is not much help in this case, or ever likely to help much in separating the fair use sheep from the infringing goats in a parody case") (citations omitted).

1    Further, as stated above, and contrary to Mattel's interpretation of cases,

2    catalogs and their contents are indeed protectable.  *Feist Publications, Inc. v. Rural*

3    *Telephone Service Co.*, 499 U.S. 340 (1991) involved telephone directories, which

4    are readily distinguishable from MGA's catalogs containing original content as well

5    as arrangement.  Likewise *Publ'ns Int'l v. Meredith Corp.*, 88 F.3d 473, 480-81

6    (7th Cir. 1996) involved instructions for preparing a dish, which was deemed a

7    "procedure, process [or] system" under Section 102(b); *see also Triangle Publ'ns,*

8    *Inc. v. Sports Eye, Inc.*, 415 F.Supp. 682, 685-686 (E.D. Pa. 1976) (noting that

9    while "raw data" may not be copyrightable, "the method or form for expressing the

10   data [] is copyrightable").  MGA's catalogs are not like a telephone directory or

11   recipe or mass of raw data—they contain both copyrightable *content* and comprise

12   a copyrightable *form* for expressing such content.

13       39.    The third fair use factor, the amount and substantiality of use,

14   considers the "quantity of the work taken and the quality and importance of the

15   portion taken."  <u>Elvis Presley Enters.</u>, 349 F.3d at 630.  This factor favors fair use

16   where "the purpose of the work differs from the original."  <u>Mattel, Inc. v. Walking</u>

17   <u>Mountain Productions</u>, 353 F.3d 792, 804 n.8 (9th Cir. 2003); <u>see also</u> <u>Chicago Bd.</u>

18   <u>of Educ. v. Substance, Inc.</u>, 354 F.3d 624, 629 (7th Cir. 2003) ("[T]here is no per se

19   rule against copying in the name of fair use an entire copyrighted work if

20   necessary"); <u>Calkins v. Playboy Enters. International, Inc.</u>, 561 F. Supp. 2d 1136,

21   1143 (E.D. Cal. 2008) (permitting copying of entire photograph because it was

22   necessary to carrying out defendant's intended use).

23       **CONTESTED.**  Copying of an entire work, as Mattel has done in this case,

24   weighs against a finding of fair use.  *Sega Enters., Ltd. v. MAPHIA*, 857 F. Supp.

25   679, 687 (N.D. Cal. 1994) ("Because it appears that the entire game programs are

26   copied when Sega video game programs are transferred over the MAPHIA bulletin

27   board, consideration of the amount and substantiality of the portion copied weighs

28

against a finding of fair use."); 4-13 Nimmer § 13.05[A][3]; *see also Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109-10 (2d Cir. 1998).

40.     The fourth factor – the effect of the use of the copyrighted works on the potential market for, and value of, those works – is "undoubtedly the single most important of all the fair use factors." Harper & Row Publishers v. Nation Enterprises, 471 U.S. 539, 566 (1985).  This factor "is aimed at the copier who attempts to usurp the demand for the original work. . . .  The theory behind the copyright laws is that creation will be discouraged if demand can be undercut by copiers.  Where the copy does not compete in any way with the original, this concern is absent." Consumers Union of the U. S., Inc. v. General Signal Corp., 724 F.2d 1044, 1051 (2d Cir. 1983); see also Elvis Presley Enters., 349 F.3d at 631 (fourth factor favored fair use when it was "unlikely that someone in the market for [Elvis Presley's musical compositions] would purchase [the defendant's video biography] instead of a properly licensed product"); Italian Book Corp. v. Am. Broadcasting Cos., 458 F. Supp. 65, 70 (S.D.N.Y. 1978) ("Where the subsequent use of a protected work is not in competition with the copyrighted use, and no showing is made that such subsequent use lessens the value of the copyrighted work, the fair use defense is generally sustained."); Playboy Enters. Int'l, 561 F. Supp. 2d at 1142 (fair use applied because copyrighted photograph reproduced in Playboy magazine was "not a suitable substitute" for the original photograph "because the image is significantly smaller and of lesser quality than the original Photograph").

**CONTESTED.**  The Ninth Circuit has held that "when 'the intended use is for commercial gain,' the likelihood of market harm 'may be presumed.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008).

41.     To prove that a defendant spoliated evidence, a plaintiff must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable

1  state of mind and (3) that the destroyed evidence was relevant to the party's claim

2  or defense such that a reasonable trier of fact could find that it would support that

3  claim or defense." In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060,

4  1078 (N.D. Cal. 2006); see also Akiona v. United States, 938 F.2d 158, 161 (9th

5  Cir. 1991) ("A party should only be penalized for destroying documents if it was

6  wrong to do so, and that requires, at a minimum, some notice that the documents

7  are potentially relevant.").

8      **IMMATERIAL.**  MGA's RICO claim is based on predicate acts of evidence

9  tampering (18 U.S.C. § 1512(c)) and (18 U.S.C. § 1503), not civil spoliation of

10  evidence.  The two cases cited by Mattel deal with civil spoliation of evidence;

11  neither case is a criminal case or a civil RICO case, or discusses evidence

12  tampering.

13      42.    To prove obstruction of justice as a predicate act, the plaintiff must

14  prove that each charged enterprise member acted with the specific intent to impede

15  justice.  United States v. Ryan, 455 F.2d 728, 734 (9th Cir. 1971) ("Specific intent

16  to impede the administration of justice is an essential element of the offense.").  In

17  addition, the plaintiff must prove that each allegedly obstructive act had the "natural

18  and probable effect of interfering with the due administration of justice." United

19  States v. Hopper, 177 F.3d 824, 830 (9th Cir. 1999); see also Ryan, 455 F.2d at 734

20  ("The acts complained of must bear a reasonable relationship to the subject of [the

21  proceeding in question].").

22      **CONTESTED.**  *U.S. v. Ryan*, 455 F.2d 728, 734 (9th Cir. 1971), does not

23  support Mattel's conclusion.  Furthermore, MGA is not required to prove that "each

24  charged enterprise member" acted with the specific intent to impede justice.  MGA

25  must show that Mattel, the only RICO defendant named, engaged in acts of

26  obstruction.  *See* 18 U.S.C. § 1962(c).  **UNCONTESTED** that the acts of

27  obstruction of justice must have a sufficient nexus between the obstructive act and

28  the targeted proceeding.

43.     Summary judgment on a RICO claim is required where the plaintiff cannot establish damages.  See First Pac. Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) ("Absent damages, the RICO claim cannot be sustained.").

**UNCONTESTED.**

44.     RICO provides a private right of action only to entities "injured in [their] business or property by reason of" a violation of the law's substantive provisions. 18 U.S.C. § 1964(c). The plaintiff must demonstrate that the alleged RICO predicate acts "led directly to the plaintiff's injuries." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 654 (2008).  The "[c]ompensable injury flowing from a violation of [section 1962(c)] 'necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497 (1985)).

**UNCONTESTED.**

45.     A "party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 77 n.14 (1983).

**CONTESTED.**  Common law provides a remedy for a wrongful permanent injunction that does not depend on the existence of a bond.  The Supreme Court found such an action was viable even absent a bond.  *Public Serv. Comm'n of Missouri v. Brashear*, 312 U.S. 621, 629 (1941); *Arkadelphia Co. v. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919); *see also Dornan v. Sheet Metal Works' Int'l*, 810 F. Supp. 856 (E.D. Mich. 1992).  Moreover, as noted in *Dornan*, *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757 (1983), did not purport to overrule either *Brashear* or *Arkadelphia Co.*  And, *W.R. Grace & Co.* is factually distinguishable in at least two respects.  First, the party claiming damages in *W.R. Grace & Co.*was the party

that sought the injunction.  Second, the company there had expressly agreed to accept the losses from the injunction.  *See Dornan*, 810 F. Supp. at 858.

46.     Under the <u>Noerr-Pennington</u> doctrine, "those who petition all departments of the government for redress are generally immune from liability." <u>Express LLC v. San Francisco</u>, 419 F.3d 1052, 1056 (9th Cir. 2005), citing <u>Manistee Town Ctr. v. Glendale</u>, 227 F.3d 1090, 1092 (9th Cir. 2000).

**UNCONTESTED AND IMMATERIAL.**  There are well-noted exceptions to the doctrine.  *See, e.g.*, *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009).

47.     Recoverable damages under RICO are limited to damages that are "directly" caused by predicate acts.  <u>See</u> <u>Bridge</u>, 553 U.S. at 654; <u>see also</u> <u>Hemi Group, LLC v. City of New York</u>, 130 S.Ct. 983, 991 (2010) (quoting <u>Anza</u>, 547 U.S. at 457) ("Our precedent makes clear . . . that the compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts.").

**UNCONTESTED.**

48.     Summary judgment on a RICO claim is appropriate where the plaintiff's expert fails to tie his damages calculation to alleged predicate acts; such an expert report fails to measure cognizable RICO damages.  <u>See</u> <u>Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.</u>, 582 F.3d 1227, 1233-34 (11th Cir. 2009) (upholding grant of summary judgment for RICO defendant where plaintiff expert's "injury and damages opinion was not confined to charges that [plaintiff's] liability theory would consider unlawful" and was thus insufficient to establish cognizable RICO injury resulting from the predicate acts).

**CONTESTED.**  The rejection of the expert's report in *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227 (11th Cir. 2009), was not because the damages calculations were not "tied" to the predicate acts.  Instead, the expert's report was stricken because its methodology did not follow plaintiff's theory of liability.  *Id.* at 1231-34.

49.     A RICO plaintiff cannot recover damages for conduct that allegedly harmed *other* competitors.  The Supreme Court has time and again rejected this type of indirect competitive "disadvantage."  <u>Hemi Group,</u>, 130 S.Ct.  at 989 (citing <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992).  MGA lacks standing to sue for harm flowing "merely from the misfortunes visited upon a third person."  <u>Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.</u>, 185 F.3d 957, 963 (9th Cir. 1999) (quoting <u>Holmes</u>, 503 U.S. at 268-69).

**IMMATERIAL.**  MGA is not seeking to recover damages for harms suffered by its competitors.

50.     The mere existence of more direct victims is enough to defeat RICO proximate cause even where the would-be plaintiff has also suffered injury.  <u>See, e.g.</u>, <u>Newcal Industries, Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1055 (9th Cir. 2008); <u>see also</u> <u>Hemi Group</u>, 130 S.Ct. at 990-91 (direct victim, New York state, was the "better situated plaintiff[]"); <u>Anza</u>, 547 U.S. at 460 (same); <u>Holmes</u>, 503 U.S. at 273 (broker-dealers more directly injured and could vindicate alleged RICO violations); <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1289 (11th Cir. 2006) ("[I]n both <u>Holmes</u> and <u>Anza</u>, the Supreme Court emphasized that dismissal was appropriate because a more direct victim could bring suit.").

**CONTESTED.**  The cited cases do not hold that the "mere existence" of more direct victims defeats RICO proximate cause.  *See e.g., Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008) ("The existence of more-direct victims defeats proximate cause if we can count on those injured parties to 'vindicate the law as private attorneys general' or if the existence of other injured parties creates difficulties of apportionment or risks of multiple recoveries." (citation omitted)).

51.     A district court's ruling on a motion to dismiss does not establish the law of the case for purposes of summary judgment.  <u>McKenzie v. BellSouth</u>

Telecomms., Inc., 219 F.3d 508, 513 (6th Cir. 2000) ("our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment"); Nudo v. McNeil, 702 F. Supp. 825, 826-27 (D. Or. 1988) (defendants permitted to re-assert a statute of limitations defense in a motion for summary judgment after obtaining plaintiff's deposition following an unsuccessful motion to dismiss also relying upon the statute of limitations defense); Partrich v. Farber, 2009 WL 4947913, *8 (E.D. Mich. Dec. 14, 2009) ( law of the case doctrine does not apply because "[o]n a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is charged with determining if the facts in the complaint state a valid claim, and the Court is not to look beyond the facts alleged in the complaint.  On a motion for summary judgment, on the other hand, the Court looks beyond the complaint to determine whether the undisputed facts in the record support judgment as a matter of law for one party or another").

**CONTESTED.**  The parties have briefed when law of the case applies and its application to issues in this case.  *See, e..g.*, Dkt. #9014 at 1-2.  However, *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000), notes that law of the case does not apply "when the complaint has been supplemented by discovery."   Moreover, none of the cases cited by Mattel authorize Mattel to re-assert rejected arguments made in a motion to dismiss such as Mattel has done with its relation-back arguments under the guise of a summary judgment motion.

52.     The Ninth Circuit does not allow permissive counterclaims-in-reply. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1525 (9th Cir. 1985).

**UNCONTESTED.**

53.     The Court's procedural rulings cannot infringe Mattel's substantive right to repose under California law concerning statute of limitations and the relation back doctrine.  Sidney v. Superior Court, 198 Cal. App. 3d 710, 174 (1988); Burger v. Kuimelis, 325 F. Supp. 2d 1026, 1045 (N.D. Cal. 2004) (recognizing that Sidney controls compulsory relation back of state law claims);

Provencio v. Vazquez, 258 F.R.D. 626, 631 (E.D. Cal. 2009) ("California's relation-back rule is inextricably intertwined with its statute of limitations"); Olympic Sports Prods., Inc. v. Universal Athletic Sales Co., 760 F.2d 910, 913 (9th Cir. 1985) ("Statutes of limitations, which dictate the life of state causes of action, are too intimately connected with the substance of the state-created right to be disregarded by the federal courts" and "any application of the Rules of Decision Act which invades that substantive province must be unconstitutional") (citing Guar. Trust Co. v. York, 326 U.S. 99, 109-110 (1945)).

**IMMATERIAL AND INCOMPREHENSIBLE.** To the extent this applies to Mattel's statute of limitations and relation-back argument, this Court has already decided the issue of relation-back.

54. In California state court and federal court, a pleading is filed for statute of limitations purposes when a motion for leave to amend is filed and a proposed pleading is lodged with the Court. In re Metro. Sec. Litig., 532 F. Supp. 2d 1260, 1282 (E.D. Wash. 2007) ("it is well established, for the purpose of calculating the statute of limitations, that an amended pleading is effectively filed when the motion to amend is filed" because "when a motion to amend is accompanied by the proposed amended pleading, the motion to amend notifies the defendant of the impending claim"); Weiner v. Superior Court, 58 Cal. App. 3d 525, 531 (1976) ("[T]he action . . . commenced [for statute of limitations purposes] when plaintiffs filed their proposed first amended complaint with their notice of motion for leave to amend.").

**CONTESTED.** It is not necessary that a proposed pleading be lodged with the court prior to the expiration of the statute of limitations. A number of courts have addressed the situation where the petition for leave to amend the complaint has been filed prior to expiration of the statute of limitations, while the entry of the court order and the filing of the amended complaint have occurred after the limitations period has expired. In such cases, the amended complaint is deemed

1   filed within the limitations period. *See Rademaker v. E.D. Flynn Export Co.,* 17

2   F.2d 15, 17 (5th Cir. 1927); *Longo v. Pennsylvania Elec. Co.,* 618 F.Supp. 87, 89

3   (W.D. Pa. 1985), *aff'd,* 856 F.2d 183 (3d Cir.1988); *Eaton Corp. v. Appliance*

4   *Valves Co.,* 634 F. Supp. 974, 982-83 (N.D.Ind.1984), *aff'd on other grounds,*790

5   F.2d 874 (Fed. Cir.1986); *Gloster v. Pennsylvania R..R..,* 214 F.Supp. 207, 208

6   (W.D. Pa.1963).

7        55.    For those jurisdictions that have adopted the minority rule that the

8   filing of a claim tolls the limitations period for all compulsory counterclaims, the

9   statute of limitations is not tolled if the counterclaim is permissive.  <u>Employers Ins.</u>

10  <u>of Wausau v. United States</u>, 764 F.2d 1572, 1576 (Fed. Cir. 1985) ("[A] permissive

11  counterclaim does not generate a like tolling period."); <u>Sidney v. Superior Court</u>,

12  198 Cal. App. 3d 710, 174 (1988).

13       **CONTESTED AND IMMATERIAL.**  This Court has already held that

14  MGA's counterclaims in reply for violation of 18 U.S.C. § 1962(c),

15  misappropriation of trade secrets, and wrongful injunction share a logical

16  relationship with Mattel's expansive counterclaims, and are therefore compulsory.

17  Dkt. #8892 at 5.

18       56.    An action for trade secret misappropriation under California law must

19  be brought within three years after the misappropriation is discovered or by the

20  exercise of reasonable diligence should have been discovered.  <u>Cal. Civ. Code</u> §

21  3426.6; <u>Cadence Design Sys., Inc., v. Avant! Corp.</u>, 29 Cal. 4th 215, 226 (2002).

22  Under California's discovery rule, suspicion of one or more of the elements of a

23  cause of action, coupled with knowledge of any remaining elements, will generally

24  trigger the statute of limitations period.  <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal.

25  4th 797, 804 (2005).

26       **UNCONTESTED.**

27       57.    Knowledge of a high-level executive of a corporation is imputed to the

28  corporation when that knowledge can reasonably be said to be present in the mind

of the agent while acting for the principal.  O'Riordan v. Federal Kemper Life Assurance, 36 Cal. 4th 281, 288 (2005); Columbia Pictures Corp. v. DeToth, 87 Cal. App. 2d 620, 630 (1948); San Diego Hospice v. County of San Diego, 31 Cal. App. 4th 1048, 1056 (1995); Display Research Labs., Inc. v. Telegen Corp., 133 F. Supp. 2d 1170, 1176 (N.D. Cal. 2001).

**CONTESTED.**  "It is a well settled principle that knowledge of officers and key employees of a corporation, *obtained while acting in the course of their employment and within the scope of their authority*, is imputed to the corporation itself."  *W.R. Grace & Co., Inc. v. Western U.S. Indus., Inc.*, 608 F.2d 1214, 1219 (9th Cir 1979) (emphasis added); *see also Sanders v. Magill*, 70 P.2d 159, 163 (Cal. 1937) ("Knowledge of an officer of a corporation within the scope of his duties is imputable to the corporation."); *Redman v. Walters*, 88 Cal. App. 3d 448, 454 (1979) (same).

58.   California's relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original complaint.  Norgart v. Upjohn Co., 21 Cal. 4th 383, 408 -409 (1999); Davaloo v. State Farm Ins. Co., 135 Cal. App. 4th 409, 415 (2005) ("The requirement that the complaint allege ultimate facts forming the basis for the plaintiff's cause of action is central to the relation-back doctrine and the determination whether an amended complaint should be deemed filed as of the date of the original pleading.").

**UNCONTESTED** that California's relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original complaint. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 408 -409 (1999).

59.   Compulsory counterclaims-in-reply can only be asserted in response to permissive counterclaims that expand the scope of the litigation beyond the original pleading.  Feed Mgm't Sys., Inc. v. Brill, 518 F. Supp. 2d 1094, 1096 (D. Minn.

2007); Turner & Boisseau, Chartered v. Nationwide Mut. Ins. Co., 175 F.R.D. 686, 687 (D. Kan. 1997); Erickson v. Horing, 2000 WL 35500986, *10 (D. Minn. Oct. 23, 2000).

**CONTESTED.**  The relevant authority governing the filing of counterclaims-in-reply is *Davis & Cox v. Summa Corp.*, 751 F.2d 1507 (9th Cir. 1985), and it does not impose the requirements detailed in Mattel's Conclusion of Law No. 59.

60.   California has adopted the Ninth Circuit's "logical relationship" test for identifying compulsory claims.  Align Tech., Inc. v. Tran, 179 Cal. App. 4th 949, 965-966 (2009).

**UNCONTESTED.**

61.   A claim is compulsory when the counterclaim arises from the same aggregate set of operative facts as the initial claim.  Fed. R. Civ. P. 13(a); In re Pinkstaff, 974 F.2d 113, 115 (9th Cir. 1992).

**CONTESTED.**  Whether a claim is compulsory turns on whether the claims "'arise out of the transaction or occurrence that is the subject matter of the opposing party's claim.'"  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting Fed. R. Civ. P. 13(a)).  The test is to be flexibly applied with a liberal construction.  *Id.*; *see also id.* at 1252-53 ("[W]e believe that the liberal reading of the 'transaction or occurrence' standing is more in keeping with the pronouncements of the Supreme Court . . . .").  "'Transaction' is a word of flexible meaning.  It may comprehend a series of many occurrences depending not so much upon the immediateness of their connection as upon their logical relationship.'" *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001) (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)).  Therefore, the question to be answered is whether the claims are "so logically connected that considerations of judicial economy and fairness dictate that all of the issues be resolved in one lawsuit." *Pochiro*, 827 F.2d at 1249.

62.     Under California law, a claim can only relate back to an earlier pleading that sought affirmative relief based on the same general set of facts; an affirmative claim cannot relate back to an earlier alleged affirmative defense. Quiroz v. Seventh Ave. Center, 140 Cal. App. 4th 1256, 1278 (2006); Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157, 1199 (2008); Brumley v. FDCC Cal., Inc., 156 Cal. App. 4th 312, 323 (2007) ; Lockheed Martin Corp. v. RFI Supply, Inc., 2006 WL 1525719, at *8 (N.D. Cal. May 30, 2006); Sparrow v. Mazda Am. Credit, 385 F. Supp. 2d 1063, 1069 n. 3 (E.D. Cal. 2005).

**IMMATERIAL.**

63.     In the Ninth Circuit, the statute of limitations for a RICO claim accrues when the plaintiff knew or should have known of the *injury* that formed the basis for the cause of action, not from the date of the last alleged predicate act.  Grimmett v. Brown, 75 F.3d 506, 512 (9th Cir. 1996).

**UNCONTESTED.**

64.     Even if the plaintiff did not know the injury was caused by a pattern of RICO activity, a RICO claim would still accrue and the statute of limitations would still run."  Tanaka v. First Hawaiian Bank, 104 F. Supp. 2d 1243, 1246 (D. Haw. 2000).

**UNCONTESTED.**

65.     A RICO plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud.  Pincay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001).

**UNCONTESTED.**

66.     Attempted concealment of the initial RICO injury does not trigger a separate RICO limitations period.  In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 59-60 (2d Cir. 1998) ("we find that their later communications which put a gloss on the losing investments were continuing efforts to conceal the initial fraud,

1  and not separate and distinct fraudulent acts resulting in new and independent

2  injuries.").

3      **CONTESTED.**  Under the circumstances in *In re Merrill Lynch Ltd. P'ships*

4  *Litig.*, 154 F.3d 56 (2nd Cir. 1998), the court found that the dissemination of

5  misleading reports were efforts to conceal the initial fraud and thus not separate and

6  distinct acts resulting in new and independent injuries.  However, the court also

7  noted that "in some instances a continuing series of fraudulent transactions

8  undertaken within a common scheme can produce multiple injuries each with a

9  separate limitations period." *Id.* at 59.

10     67.    Fraudulent concealment does not toll the RICO limitations period if

11  the plaintiff had actual or constructive knowledge of the facts underlying the claim.

12  Pincay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001) ("[T]here is a long line of

13  our cases holding that, in order to prevail on such a claim, plaintiffs 'must

14  demonstrate that they had neither actual nor constructive notice of the facts

15  constituting their claims for relief.'"); Linney v. Cellular Alaska P'ship, 151 F.3d

16  1234, 1239 (9th Cir. 1998) ("The fraudulent concealment doctrine would not have

17  tolled the statute of limitations if the partners actually knew of the alleged wrongs,

18  or if the partners were not reasonably diligent in informing themselves of the

19  alleged wrongs.").

20     **UNCONTESTED.**

21     68.    Relation back of compulsory federal claims is the minority rule in the

22  federal courts.  Murray v. Mansheim, 779 N.W. 2d 379, 386 (S.D. 2010) (surveying

23  cases and adopting the "majority rule" of no relation back adopted by seven circuit

24  courts and Moore's Federal Practice § 13.93 (3d ed. 2009)).

25     **CONTESTED.**  Although *Murray v. Mansheim*, 779 N.W. 2d 379, 386

26  (S.D. 2010), does state that relation back of compulsory claims is a minority rule,

27  that conclusion is inaccurate.  First, in its survey, the court considered cases that did

28  not consider the relation back issue.  Second, in surveying the cases that the court

1  considered represented the "minority rule," the court neglected to consider cases

2  such as *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1982),

3  which adopts the relation back standard that *Murray* paints as a minority rule and

4  which adopts that standard because it is the majority rule.  *See Murray*, 779 N.W.

5  2d at 386 n. 7 (purportedly listing cases that have adopted the "minority rule.").

6  Finally, relation back is considered the majority rule.  6 WRIGHT, MILLER & KANE,

7  FEDERAL PRACTICE AND PROCEDURE § 1419 at 178-79 (2010) ("the majority view

8  appears to be that the institution of plaintiff's suit tolls or suspends the running of

9  the statute of limitations governing a compulsory counterclaim" and surveying the

10  case law).

11

12  Dated:      December 3, 2010         Respectfully submitted,

13                                       WARRINGTON S. PARKER III
                                         Orrick, Herrington & Sutcliffe LLP

14

15                                       _____
                                         WARRINGTON S. PARKER III

16                                       Attorneys for MGA Parties

17

18

19

20

21

22

23

24

25

26

27

28