ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel: (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

PATRICIA L. GLASER (State Bar No. 55668)
pglaser@glaserweil.com
ANDREW BAUM  (State Bara No. 190397)
abaum@glaserweil.com
GLASER, WEIL, FINK, JACOBS, HOWARD &
SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel: (310) 553-3000/
Fax: (310) 556-2920

Attorneys for MGA Parties

[Add'l counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-9049-DOC (RNBx)<br>Consolidated with Nos. CV 04-9059 and CV 05-2727<br><br>Hon. David O. Carter<br><br>**JOINT WITNESS LIST OF MGA PARTIES AND MACHADO**<br><br>Trial Date:   January 11, 2011 |

1   Pursuant to the Court's Orders, Local Rule 16-2.4 and Federal Rule of Civil

2   Procedure 26, the MGA Parties and Gustavo Machado (the "MGA side") hereby

3   jointly submit their witness list identifying all witnesses whom they current

4   anticipate may be called during their respective cases, other than witnesses

5   contemplated to be called solely for impeachment or rebuttal.

6   As suggested by the Court, the MGA Parties and Machado intend to examine

7   witnesses called by Mattel beyond the scope of direct and to examine such

8   witnesses on all pertinent topics to all parties' claims and defenses.  The MGA side

9   has not repeated the Mattel Corrected Witness List in this document, but hereby

10   reserves the right to call any witness identified on Mattel's Corrected Witness List.

11   The MGA side has endeavored to identify herein which such witnesses they intend

12   to call whether or not such witness is found on Mattel's list.

13   Mattel's failure to meet the requirements of Local Rule 16-2.4 and Federal

14   Rule 26(a)(3)(i) and (ii) has made it extremely difficult for MGA to construct its

15   witness list.  In particular, Mattel's failure to give its expectations about which

16   witnesses are "will call" and which are "may call" is likely to result in substantial

17   revisions to the order of MGA's witness list.  In the absence of a "will call"

18   indication, the conservative assumption in preparing a responsive list is to assume

19   that the witnesses have not been called so that all are accounted for.  MGA has

20   therefore constructed its list on the assumption that Mattel is not calling many of

21   the witnesses identified, and many witnesses are repeated here who also appear on

22   Mattel's list.[1]  Obviously, the scope of the case and the need for any particular

23   witnesses is closely linked to the status of the various claims pending for resolution

24

---

25   [1] After receiving Mattel's list, the MGA side met and conferred to identify the deficiencies and to request that Mattel correct them by indicating which witnesses

26   Mattel expected to call versus those which it may call, and also to identify which witnesses it expected to call by deposition.  Mattel refused to supplement or correct

27   its list to meet these requirements.  The MGA side hereby reserves all remedies associated with Mattel's failure to comply with the Federal and Local Rules.  The

28   MGA side has done its best to indicate the status of each witness despite Mattel's failure to do so.

on summary judgment.  This list is prepared on the assumption that everything is still in the case.

Mattel has been producing documents continuously on a nearly daily basis since discovery closed on October 4, 2010.  Mattel has yet to fully comply with the Court's orders for production of documents.  Accordingly, the MGA side reserves the right to modify this witness list as appropriate to address MGA's ongoing review of late-produced documents and Mattel's continuing late production of documents.

Witnesses identified with an asterisk are outside the trial subpoena power of the Court.  MGA will endeavor to obtain their voluntary personal appearance but will present their testimony by videotaped deposition pursuant to Rule 32(a)(4) and (c) in the event such efforts are unsuccessful.

|   | Name | Description | Status |
|---|------|-------------|--------|
| 1. | Malackowski, James<br><br>Ocean Tomo<br>Damages Expert | Mr. Malackowski will rebut the calculation of Mattel's damages expert Michael Wagner and will set forth MGA's damages calculation on its affirmative claims and affirmative defenses. | will call |
| 2. | Leahy, Margaret<br><br>Freelance sculptor; former Mattel employee | The doll sculpting process during the development of the Bratz production sculpt.  The significant differences between any of Carter Bryant's drawings and the Bratz sculpt.  Carter Bryant's lack of any significant contribution to the development of the Bratz production sculpt.  The inability to use Carter Bryant's sketches to develop a doll sculpt. Moonlighting amongst Mattel designers. | will call |

| 3. | Vilppu, Glen | Mr. Vilppu will explain the significant differences between the Bryant drawings and preliminary Bratz sculpts, on the one hand, and the final Bratz sculpt and Bratz doll products, on the other.  He will explain that any perceived similarities are the product of commonalities in the human form and standard drawing techniques.  Mr. Vilppu also will offer rebuttal to certain opinions of Mattel's experts Loetz, Mirzeoff and McComb. | will call |
| --- | --- | --- | --- |
| | Expert | | |
| 4. | Garcia, Paula | MGA's product development process and examples of products developed at MGA both before and after Bratz.  MGA's ability to bring products to market quickly in comparison to Mattel.  MGA's entrepreneurial culture in comparison to Mattel.  MGA's development of Bratz products and significant differences from Bryant drawings.  Noninfringement of Mattel's purported copyrights.  Lack of misappropriation of trade secrets related to product design.  Efforts to keep confidential MGA's unreleased product information.  Timing of development of Prayer Angels in summer of 2000.  Development of MGA's 4 Ever Best Friends product and | will call |
| | MGA Vice-President of Product Design | | |

| | | | | |
|---|---|---|---|---|
| | | | packaging and infringement by Mattel of MGA's 4EBF trade dress.  Mattel's infringement of MGA's trapezoid packaging trade dress. | |
| 5. | Halpern, Sarah  MGA designer | Chronology of Bratz initial development at MGA. | may call |
| 6. | Middleton, Deborah  MGA artist | Development of Bratz character art, entertainment properties. Dissimilarities from Bryant's drawings. | may call |
| 7. | Domingo, Lui  MGA designer | Bratz development, themes and products and product features different from Bryant's drawings. Launch of new generations of Bratz dolls.  MGA non-reliance on Bryant drawings. | will call |
| 8. | Storer, Aileen  Former MGA Senior Creative Director | Development and success of MGA packaging. | will call |
| 9. | Kaufman, Kenneth  Former MGA Marketing Department | Bratz advertising and television commercials. | may call |
| 10. | Eldridge, Margo  Contractor who developed television commercials for both MGA and Mattel | Bratz television commercials. | may call |
| 11. | Hitch, Martin | Negotiations with Mattel in early 2001 to distribute Bratz in Latin | will call |

MGA SIDE  WITNESS LIST
CASE No.  CV 04-9049-DOC (RNBx)

| | | | | |
|---|---|---|---|---|
| | | Former MGA VP International Sales | America; Mattel's exposure to Carter Bryant's drawings in connection with such discussions. Mattel's knowledge of its purported claims in early 2001. Mattel's practices while he was an employee at Mattel. | |
| | 12. | Malacrida, David<br><br>Former MGA PR Coordinator | Bratz public relations and fame. | may call |
| | 13. | Khare, Samir<br><br>MGA Senior Counsel with IP responsibilities | MGA's pertinent trademark and copyright registrations.  MGA's confidentiality policies and protection of its intellectual property. | will call |
| | 14. | Sadigh, Mandana<br><br>Mattel SVP Strategic Planning | Mattel's strategic planning process and strategic planning documents indicating that Bratz renewed demand in the upper end of the age range of the fashion doll market. Failure of Barbie and other Mattel products for reasons unrelated to Bratz.  Mattel's reliance on outside inventors. | will call |
| | 15. | Kilpin, Timothy<br><br>Mattel EVP of Girls Products | Favorable reaction (while at Disney) to introduction of Bratz by MGA.  Propriety of developing Disney Princess brand at Disney and then moving to Mattel as head of girls marketing.  Mattel's acquisition of Disney Princess license.  Mattel's obsession with cannibalization of Barbie as the touchstone of new product introduction.  Barbie's loss of | will call |

| | | | | |
|---|---|---|---|---|
| | | | "cool" as a brand and its "babyish" association in the minds of girl consumers. Barbie's failures unrelated to Bratz. Mattel's obsession with Bratz success as emblematic of everything Barbie was not. Mattel's desperate efforts to rescue Barbie including the "House is on Fire" and "Gotta Regain Relevance" initiatives. Failure of Flavas because it was too edgy for Mattel. | |
| 16. | Arons, Russell<br><br>Former Mattel VP of Marketing for Barbie Products | Arons will testify regarding the reasons for Barbie's decline unrelated to Bratz. Mattel's concerns regarding cannibalization of its Barbie brand products with the launch of new products including MyScene. Reasons for success of Bratz products. Mattel's rush to launch the Wee 3 Friends product in response to MGA's 4 Ever Best Friends product and Mattel's evident delight at having killed off the 4 Ever Best Friends product. | will call |
| 17. | Webster, Shirley Ph.D<br><br>Ocean Tomo (expert) | Dr. Webster, an economist, will discuss the deficiencies of Mr. Wagner's regression analysis. | may call |
| 18. | Haag, Debbie<br><br>Former Mattel Senior Director of Barbie Marketing | Mattel's "House is on Fire" business strategy in an effort to rescue failing Barbie. Operation Platypus—effort by Mattel to improve its product design | will call |

| | | | process. MyScene Bling Bling and examples of other MyScene products developed in an effort to improve Mattel's failing performance. Mattel's reliance on outside inventors. | |
|---|---|---|---|---|
| 19. | Fontanella, Adrienne<br><br>Former President of Mattel Girls Division | | Disproportionate importance of Barbie brand to Mattel performance. Mattel's rejection of the name "brats" as a brand because of its inconsistency with Mattel's corporate image. Use of consumer research to test every proposed product. Mattel's dependence upon the Barbie brand and its obsession with cannibalization of Barbie as the touchstone of new product introduction. Numerous factors affecting Barbie brand performance other than Bratz. Efforts to prop up Barbie performance with financial shenanigans such as "quarter-end pushes" and decline in performance when such measures were withdrawn. Mattel's "Bratz Defense Plan" including the introduction of MyScene as a response to Bratz. Mattel's knowledge of its potential claims against MGA and undue delay in bringing suit. Mattel's use of falsified documents to steal trade secrets from competitors and presentations of information | will call |

| | | | | |
|---|---|---|---|---|
| | | | fraudulently acquired from competitors including MGA. | |
| 20. | Luther, Sujata<br><br>Former Mattel SVP Strategic Planning | | Dynamics of the fashion doll marketplace and fashion doll consumers.  Mattel's research procedures and practices.  Pertinent Mattel market research.  MGA's successes in the design, marketing and advertising of Bratz.  Mattel's failures in the design and marketing of Barbie products for reasons unrelated to Bratz.  The Bratz Brief and CEO Robert Eckert's role in connection therewith.  President Matt Bousquette's "obsession" with Bratz.  Mattel's use of false credentials to obtain access to showrooms and competitor trade secrets.  Widespread use of Mattel research methodologies in the industry. | will call* |
| 21. | Joachimstahler, Erich Ph.D<br><br>Founder and CEO, Vivaldi Partners (expert) | | Dr. Joachimstahler, renowned brand and marketing strategist, author and former professor, will opine on the roles visual brand elements or symbols such as packaging play in consumer choices and behaviors.  Will opine on the relative significance of Bratz product attributes and brand in motivating consumer choice.  Will explain likelihood of confusion from Mattel's use of trapezoid packaging on competing toy products and resulting harm to | will call |

| | | | | |
|---|---|---|---|---|
| | | | Bratz brand.   Will explain flaws inherent in the conclusions offered by Drs. Ravi Dhar and Edward Blair concerning the reasons for the success of the Bratz brand and respond to their criticisms of Dr. Joachimstahler's analysis. | |
| 22. | Gruca, Thomas Ph.D<br><br>Henry B. Tippie Research Professor of Marketing at University of Iowa and Director of Analytics at Brandware Research. | | Dr. Gruca will opine on the relative influence on doll purchase decisions of the appearance of Bratz as compared to other product and brand attributes.  Dr. Gruca also will offer rebuttal to certain opinions of Mattel's experts Kivetz and Wagner. | may call |
| 23. | Rosenbaum, David<br><br>Attorney for MGA who handled MGA-Bryant transaction | | Due diligence regarding the MGA-Bryant transaction and report to MGA regarding the timing of Bryant's creation of Bratz drawings.  The timing of the MGA-Bryant transaction. | will call |
| 24. | Wang, Anne<br><br>Attorney for Carter Bryant who handled MGA-Bryant transaction | | Representations to MGA's counsel regarding Bryant's timing of creation of Bratz drawings.  The timing of the MGA-Bryant transaction. | will call |
| 25. | Bryant, Carter | | Scope of responsibilities and work at Mattel.  Timing of Bryant's Bratz drawings.  Presentation of Bratz drawings to MGA.  Lack of MGA involvement in Bryant's alleged use of Mattel resources.  Negotiation of MGA-Bryant agreement.  Larian's instruction to quit Mattel immediately upon | will call* |

| | | | |
|---|---|---|---|
| | | execution of MGA-Bryant agreement.  Work on MGA's development of Bratz and timing thereof.  Understanding of inventions agreement imposed by Mattel and right to assign Bratz to MGA. | |
| 26. | Bryant, Janet<br><br>Mother of Carter Bryant | Timing of Bryant's Bratz drawings. | will call* |
| 27. | Bryant, Thomas<br><br>Father of Carter Bryant | Timing of Bryant's Bratz drawings. | will call* |
| 28. | Irmen, Richard<br><br>Domestic partner of Carter Bryant | Timing of Bryant's Bratz drawings. | will call* |
| 29. | Galvano, Jeanne<br><br>Friend of Carter Bryant | Timing of Bryant's Bratz drawings. | may call* |
| 30. | Hoffman-Briggs, Hoi<br><br>Mattel senior designer | Mattel's design process and roles within the process; Carter Bryant's responsibilities and work at Mattel during 1999 and 2000 including the limited role of the project designer in the Barbie Collectibles Group.  Mattel employees' work on a doll wedding dress for the daughter of CEO Robert Eckert. | may call |
| 31. | Avakian, Patrick<br><br>Mattel Counsel | Mattel's admissions that Carter Bryant works were not works made for hire. | may call |
| 32. | Normile, Robert<br><br>Mattel General Counsel & Secretary | Mattel's failure to clearly explain its contracts to employees. Mattel's secrecy concerning the specific terms of its form | will call |

- 10 -

| | | | agreements. Mattel's IP policies and the implementation thereof. Mattel's tactical decision not to sue MGA, MGA HK and Isaac Larian in 2004 when it sued Carter Bryant. Mattel's Board of Directors meetings and meeting minutes. Mattel's concealment, suppression and destruction of evidence. | |
|---|---|---|---|---|
| 33. | Newcomb, Teresa<br><br>Mattel Senior Recruiter | | Mattel's refusal to explain the meaning of its agreements to new employees and her failure to explain the agreement to Carter Bryant in particular. The adhesive nature of the agreement signed by Bryant. The circumstances surrounding Carter Bryant's orientation in 1999, specifically Mattel's failure to explain the Inventions Agreement to Carter Bryant and Mattel's failure to ask whether Carter Bryant understood the terms of the Inventions Agreement. | will call |
| 34. | Freed, Lissa<br><br>Mattel Director of Human Resources | | Mattel's orientation process and practices pertaining to all new Mattel employees regardless of position or pay scale, including Carter Bryant. Mattel's policy that employees were required to sign all on boarding paperwork in order to begin employment with Mattel. Mattel's policy that Mattel human resource employees were not | will call |

| | | | authorized to make any changes to its agreements. | |
|---|---|---|---|---|
| 35. | Duffy, Jan<br><br>President, Management Practices Group<br>Expert | Rebuttal testimony to Mattel experts McRae, Breslow, and Gomez.  Expert testimony regarding the deficiencies in Mattel's intellectual property protection program and policies regarding the agreement signed by Mattel and Carter Bryant;  usual and reasonable management practices and particularly Mattel's failure to take reasonable steps to avoid ambiguity and to provide a clear basis for understanding Mattel's and its employees' rights and responsibilities. | will call if testimony of McRae, Breslow or Gomez is permitted | |
| 36. | Cerrito, Victoria<br><br>Mattel Intellectual Property Manager | Mattel division Fisher-Price's use of the "desdoc" system to capture and document its claimed intellectual property, and Mattel's failure to adopt the same until 2008. | may call | |
| 37. | Friedman, Neil<br><br>President Mattel Brands | Industry custom to keep the identity of inventors confidential. | will call | |
| 38. | Cloonan, Elise<br><br>Mattel designer and Carter Bryant's former roommate | Moonlighting by Mattel employees.  Development of certain aspects of the Bryant pitchbook including the Bratz typeface depicted thereon. | will call | |
| 39. | DeAnda, Richard<br><br>Former Mattel VP of Security; Mattel security consultant | Mattel's spying on its employees through the use of an email filter. Mattel's investigation of claims of wrongdoing by Carter Bryant and MGA and the timing of its | will call | |

| | | | |
|---|---|---|---|
| | | knowledge of its claims. Unexplained alterations of the files regarding Mattel's investigation of its claims against Carter Bryant and MGA, including the purported disappearance for an extended period of time of an anonymous letter sent to CEO Robert Eckert making allegations against Bryant, MGA and Larian.  Lack of enforcement or investigative efforts related to moonlighting. Knowledge of alleged employee downloading of files prior to departure and failure to confront them or to notify MGA regarding such activities.  The admitted falsity of Mattel's allegation that Ron Brawer improperly removed a box of documents and other Mattel proprietary materials from Mattel upon his departure from employment.  Mattel's failure to find any evidence of wrongdoing by Brawer despite weeks of surveillance of him and his family after his last day present at Mattel. | |
| 40. | Franke, Joe<br><br>Mattel VP Design | Mattel's design process and the roles therein.  Mattel's interview of Mercedeh Ward in February 2002 regarding Carter Bryant's role in the development of Bratz at MGA.  Use by Mattel of Veronica Marlow as a contractor. | may call |
| 41. | McShane, Michele | Mattel's investigation of potential claims against MGA in 2002 and | will call |

| | | Former Mattel Senior Counsel | its undue delay and unjustified failure to file suit sooner. | |
|---|---|---|---|---|
| 42. | | Ongchangco, Kislap<br><br>Mattel designer | Mattel's immediate perception in the summer of 2001 that Bratz was a knockoff of Diva Starz. His understanding that he owns drawings done on his own time outside the scope of employment. | may call |
| 43. | | Fonseca, Heather<br><br>Former Mattel Senior Project Designer | Carter Bryant's duties and responsibilities. Carter Bryant's departure from Mattel. Mattel's failure to preserve relevant evidence. | will call |
| 44. | | Longsdorf, Ron<br><br>Former Mattel Senior Vice President Product Design | Structure of Mattel's product design groups and delineations between them. Barbie Collectibles design group. Significant problems with Barbie Collectibles business and layoffs therein. Ongoing threat of layoffs in Barbie Collectibles business. Carter Bryant's duties and responsibilities and departure from Mattel, including Mattel's knowledge that Bryant was working for MGA. | will call |
| 45. | | Nordquist, Jill<br><br>Former Mattel Marketing Manager for Barbie Collectibles/Mattel 30(b)(6) witness | Mattel's knowledge that Carter Bryant left Mattel for MGA and was working on Bratz at MGA. Belief that Bryant lied in his exit interview about plans to join a competitor. Widespread belief within Mattel that Carter Bryant was involved in designing Bratz with MGA and Mattel's subsequent failure to act. Widespread Mattel belief that | will call |

| | | | |
|---|---|---|---|
| | | Bratz had been copied from Mattel's Diva Starz and Mattel's subsequent failure to act. | |
| 46. | Prince, Jacqueline<br><br>Mattel employee and notary | Ms. Prince is expected to offer testimony pertinent to the statute of limitations defense. | may call |
| 47. | Monteagudo, Carmen<br><br>Mattel designer | Ms. Monteagudo is expected to offer testimony pertinent to the statute of limitations defense. | may call |
| 48. | Kyaw, Sheila<br><br>Mattel designer | Ms. Kyaw is expected to offer testimony pertinent to the statute of limitations defense. | may call |
| 49. | Palmer, Rodney<br><br>Mattel Manager of Global Networks | The inexplicable absence of Mattel's phone records for Carter Bryant's extension during October 2000. | will call |
| 50. | Simoneau, Robert<br><br>Former Mattel Investigator | Mattel's investigation and knowledge of the origins of Bratz and its claims of wrongdoing; undue delay in bringing suit. | will call |
| 51. | Park-Beal, Cassidy<br><br>Former Mattel VP of Design | Mattel's knowledge of its claims of MGA wrongdoing and undue delay in bringing suit. | may call |
| 52. | Viohl, Evelyn<br><br>Mattel Senior Project Designer | Mattel's knowledge of its claims of MGA wrongdoing and undue delay in bringing suit. | will call |
| 53. | Quick, Raime<br><br>Mattel HR Regional Director | Statute of limitations: interview with Mercedeh Ward in February 2002 wherein Ms. Quick queried Ms. Ward at length regarding Carter Bryant and his role at MGA in the development of Bratz. | will call |

MGA SIDE  WITNESS LIST
CASE NO.  CV 04-9049-DOC (RNBx)

| | | | |
|---|---|---|---|
| 54. | Marlow, Veronica<br><br>Former Mattel design employee | Chronology and development of Bratz by MGA.  Creation of Bratz fashions including independent contractor relationship with MGA.  Marlow's employment of Cabrera, Morales and Salazar.  Marlow's nondisclosure to MGA of information regarding the identity and status of her employees.  Moonlighting by other Mattel designers. | will call |
| 55. | Marlow, Peter<br><br>Husband of Veronica Marlow | Marlow's invoices to MGA.  Nondisclosure of information to MGA regarding seamstress employees. | will call |
| 56. | Lyter, Albert Ph.D<br><br>Expert | Expert testimony regarding his testing of Bryant's sketches and the Prince notary book.  Rebuttal testimony to Mattel experts Cunningham and Aginsky. | will call |
| 57. | Tonnu, Lisa<br><br>Former MGA VP of Taxation | Reference to indemnity obligation to Carter Bryant in MGA's tax appeal documents referred to fee reimbursement agreement.  Corporate structure and ownership of MGA.  Pass-through structure of MGA. | may call |
| 58. | Art Ortega<br><br>Retired Ernst & Young Partner | Reference to indemnity obligation to Carter Bryant in MGA's tax appeal documents referred to fee reimbursement agreement. | may call |
| 59. | Mark Oates<br><br>Partner, Baker & McKenzie | MGA's communication to the IRS regarding lack of indemnity obligation to Carter Bryant. | may call |
| 60. | Aqualina, James | MGA's preservation of electronic | may call |

| | | | |
|---|---|---|---|
| | Stroz Friedberg | evidence.  MGA's production of Larian hard drives for lengthy and extensive analysis. | |
| 61. | Lockhart, Kenneth<br><br>Former MGA head of IT | MGA's use of electronic systems and preservation of electronic evidence. | may call |
| 62. | Dubois, Matthew<br><br>Orrick Litigation Support Manager | Production of documents in this litigation including without limitation the number of documents produced, production dates and ESI associated with particular documents. | may call |
| 63. | Rubin, Sam<br><br>Director, Digital Forensics at Stroz Friedberg<br><br>Expert | Metadata relating to The Bratz Brief.  Operation and use of BeClean, a software found on some MGA computers.  Operation and use of Evidence Eliminator, a software found on two Carter Bryant personal computers. Rebutting Mattel's claim (if any) that there were deletions on Larian hard drives. | will call |
| 64. | Brawer, Ron<br><br>Former MGA Senior Vice President Marketing & Sales and former Mattel Senior Vice president | Mattel's unfair business practices, including practices to kill Bratz. Bousquette's obsession with Bratz. Use of litigation as a business strategy.  Lack of trade secret misappropriation. | will call |
| 65. | Shore, Michael Ph.D<br><br>Mattel VP Consumer Research | Mattel's relevant consumer research.  Psychological characteristics of children pertinent to fashion doll product design, marketing and purchase motivation.  Mattel's practice of | will call |

| | | | |
|---|---|---|---|
| | | using falsified documents to obtain admission to competitors' showrooms and other activities of the market intelligence group. | |
| 66. | Ross, Steven<br><br>Mattel Vice-President with responsibility for Barbie entertainment products | Failures and limitations of Barbie and MyScene brand products unrelated to Bratz. | will call |
| 67. | Dickson, Richard<br><br>Former head of Mattel Licensing of Barbie Consumer Products | Reasons for failures of Barbie Consumer Products Licensing unrelated to Bratz.  Reasons for Bratz successes.  Limitations on Mattel's MyScene brand fashion dolls including Mattel's difficulty separating MyScene from Barbie and treating it as an independent brand. | will call* |
| 68. | Farr, Kevin<br><br>Mattel CFO | Mattel financials including rolled up financials of foreign subsidiaries, Board of Directors financial reports, quarterly and annual SEC filings, quarterly earnings conferences.  Numerous reports in financial documents, board memoranda, SEC filings and elsewhere of factors other than Bratz affecting Barbie performance including financial shenanigans such as quarter-end pushes.  Increase in operating profits in Mattel Mexico after departure of Machado, Vargas and Trueba.  Increase in operating profits of Mattel Canada after | will call |

| | | | | |
|---|---|---|---|---|
| | | | departure of Brisbois. | |
| 69. | Vogelstein, John<br><br>Former Member of Mattel's Board of Directors | | Mattel's over-reliance on the Barbie brand for its economic performance and the Board's panic at the erosion of Barbie market share.  Presentation of the Bratz Brief at the November 2003 Board Meeting.  CEO Eckert's reputation as a cost-cutter and repeated layoffs of Mattel personnel during his tenure—many of whom subsequently went to work for MGA.  Eckert's recurring blame of Bratz for Barbie market failures. What the Board was told about Mattel's knowledge of Carter Bryant's involvement in the creation of Bratz and the timing of that knowledge (as pertains to fraudulent concealment).  Mattel's 2004 Strategic Plan and its "first follower" strategy based on stealing information from competitors. | will call |
| 70. | Sinclair, Christopher<br><br>Member, Mattel Board of Directors | | Mattel's over-reliance on the Barbie brand for its economic performance and the Board's panic at the erosion of Barbie market share.  Sinclair's direct intervention by demanding that Barbie marketing personnel explain product performance, and their corresponding presentations to him.  Presentation of the Bratz Brief at the November 2003 Board Meeting.  CEO Eckert's reputation | will call |

| | | | |
|---|---|---|---|
| | | as a cost-cutter and repeated layoffs of Mattel personnel during his tenure.  Eckert's recurring blame of Bratz for Barbie market failures.  What the Board was told about Mattel's knowledge of Carter Bryant's involvement in the creation of Bratz and the timing of that knowledge (as pertains to fraudulent concealment).  Mattel's 2004 Strategic Plan and its "first follower" strategy based on stealing information from competitors. | |
| 71. | Rich, Andrea Dr.<br><br>Member, Mattel Board of Directors | Mattel's over-reliance on the Barbie brand for its economic performance and the Board's panic at the erosion of Barbie market share.  Presentation of the Bratz Brief at the November 2003 Board Meeting.  CEO Eckert's reputation as a cost-cutter and repeated layoffs of Mattel personnel during his tenure.  Eckert's recurring blame of Bratz for Barbie market failures.  What the Board was told about Mattel's knowledge of Carter Bryant's involvement in the creation of Bratz and the timing of that knowledge (as pertains to fraudulent concealment).  Mattel's 2004 Strategic Plan and its "first follower" strategy based on stealing information from competitors. | will call |
| 72. | Scothon, Chuck | Continuing failure of Barbie brand | will call |

| | | | |
|---|---|---|---|
| | Former Mattel head of Girls Marketing | in 2006 for reasons unrelated to Bratz. | |
| 73. | Ng, Dominic<br><br>Member Mattel Board of Directors. | Mattel Board's concern regarding continuing problems with Barbie performance.  Continuing failure of Barbie brand in 2006 for reasons unrelated to Bratz. | will call |
| 74. | Brittain White, Kathy<br><br>Member, Mattel Board of Directors | Mattel's annual strategic planning process.  Significance of Barbie brand as "core business" of Mattel and significance to Mattel's Board of dominant market share in fashion doll category.  Lackluster performance of Barbie brand for reasons unrelated to Bratz. | will call |
| 75. | Sato, Alice<br><br>Former secretary to Robert Eckert | Recordkeeping for Robert Eckert, authentication of documents and spoliation by Robert Eckert. | will call |
| 76. | McFarland, Christine<br><br>Former secretary to Robert Eckert | Recordkeeping for Robert Eckert.  Memoranda sent by McFarland on behalf of Eckert to the Mattel Board of Directors describing reasons for dismal Barbie performance.  Authentication of documents and spoliation by Robert Eckert. | will call |
| 77. | Eckert, Robert<br><br>Mattel CEO | Mattel's difficulties as a company when he took over in 2000.  Decline in Barbie brand performance before introduction of Bratz.  The disproportionate significance of Barbie brand to Mattel causing enormous pressure to rescue Barbie brand's | will call |

| | | | | |
|---|---|---|---|---|
| 1 | | | performance.  Eckert's obsessive | |
| 2 | | | focus on market share as a | |
| 3 | | | measure of Barbie brand | |
| | | | performance.  Numerous factors | |
| 4 | | | affecting Barbie brand | |
| 5 | | | performance other than Bratz | |
| 6 | | | including financial shenanigans | |
| | | | such as "quarter end pushes" and | |
| 7 | | | massive recalls due to product | |
| 8 | | | safety issues.  Mattel's promotion | |
| 9 | | | of a certain corporate image and | |
| | | | refusal to introduce products that | |
| 10 | | | might be inconsistent with Barbie | |
| 11 | | | image or that might cannibalize | |
| 12 | | | Barbie.  The nature of the toy | |
| | | | industry as a fashion/fad industry. | |
| 13 | | | Barbie's maturity as a brand and | |
| 14 | | | saturation of the marketplace. | |
| 15 | | | Barbie's negative brand | |
| | | | connotation as "babyish" and its | |
| 16 | | | loss of "cool."  Barbie's loss of | |
| 17 | | | share to products other than Bratz | |
| 18 | | | including Disney Princess and | |
| | | | various Mattel products such as | |
| 19 | | | What's Her Face, MyScene and | |
| 20 | | | others.  The focus of Mattel's | |
| 21 | | | Board of Directors on rescuing | |
| | | | Barbie, Barbie market share, and | |
| 22 | | | the success of Bratz as a symbol of | |
| 23 | | | everything that was wrong with | |
| 24 | | | Mattel.  The Board's panic when | |
| | | | domestic Barbie revenues dropped | |
| 25 | | | twenty-nine percent in the second | |
| 26 | | | quarter of 2003 as reported at the | |
| 27 | | | August 2003 Board meeting by | |
| 28 | | | CFO Kevin Farr.  The Bratz Brief | |

| | | | |
|---|---|---|---|
| | | commissioned after the August 2003 Board Meeting. Presentation of The Bratz Brief to Mattel's Board of Directors at the next meeting of the Board in November 2003. Mattel's knowledge of its claims, the timing of its knowledge of its claims, and its decision to file this lawsuit. Mattel's deliberate tactical decision to file suit initially against Carter Bryant only with full knowledge of its claims against MGA and even though it believed it had been harmed by MGA's sale of Bratz products when it sued Bryant. Eckert's spoliation of evidence in the form of his practice of continued daily deletion of all of his emails, including sent emails, despite the fact that Mattel had filed this litigation. Eckert's deletion of specific emails highly relevant to this lawsuit, including among others his "What Happened to Barbie" email. Mattel's corporate strategic planning process and the "What Happened to Barbie" presentation to the Board of Directors in at least November 2003, September 2004 and September 2005. Mattel's thefts of MGA trade secrets. | |
| 78. | Villasenor, Sal<br><br>Former Mattel Market | Mattel's practice of stealing trade secrets and other confidential information from competitors | will call |

| | | | |
|---|---|---|---|
| | Intelligence | including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | |
| 79. | Rahimi, Sharon<br><br>Independent contractor for Mattel market intelligence group | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | will call |
| 80. | Turetzky, Matthew | Pertinent Mattel consumer | will call |

| | | | |
|---|---|---|---|
| | Former Mattel VP of Strategic Planning | research including the New Brand Cannibalization Study.  Mattel's delay in bringing suit despite widespread belief within Mattel of alleged wrongdoing by MGA.  Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | |
| 81. | Bradley (Snyder), Tyler<br><br>Former Mattel Market Intelligence | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use | will call |

| | | | | |
|---|---|---|---|---|
| | | | falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | |
| 82. | Osier Dermody, Kelly<br><br>Former Mattel Market Intelligence | | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | will call |
| 83. | Plunkett, Carey<br><br>Mattel Market Intelligence | | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act. | |

| | | | |
|---|---|---|---|
| | | Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA. Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA. The knowledge of and use by Mattel executives of stolen information. Lack of any disciplinary efforts taken by Mattel against Mattel employees and contractors who engaged in false pretenses to obtain trade secrets. | |
| 84. | Bodden (Chomo), Julie<br><br>MGA Vice-President Sales | Efforts to keep confidential MGA unreleased product information. MGA's sales process and relationships with major retailers. | may call |
| 85. | Vollero, Andrew<br><br>Former Mattel VP Strategic Planning | Knowledge related to statute of limitations defense. Supervision of market intelligence group and widespread knowledge among executives of the activities of the group. Barbie's failures unrelated to Bratz. | will call |
| 86. | Hahn, Esther<br><br>NPD Funworld | NPD is a toy industry data provider. Ms. Hahn will testify regarding NPD's policies regarding use of its information, Mattel's complaint to NPD regarding MGA's purported violation of such policies and withholding of its fees resulting in NPD's termination of MGA's | may call* |

| | | | |
|---|---|---|---|
| | | subscription and Mattel's then payment; NPD's failure to terminate Mattel for violations of its policies. | |
| 87. | Hooks, Brian<br><br>Former Executive Vice President of Mattel PR Agency Peterson, Milla, Hooks | Mattel's negative PR efforts against MGA in order to "kill Bratz." Mattel's lack of sincerity regarding intended success of MyScene. Mattel's desire to "damage" Bratz with MyScene. | will call* |
| 88. | Jensen, Julia<br><br>Mattel VP of Worldwide PR | Mattel's use of negative PR against Bratz. | will call* |
| 89. | Bongiavanni, Lisa<br><br>Mattel PR | Mattel PR. Mattel's use of negative PR against Bratz. | will call |
| 90. | Custodian of Records of Mattel Inc. | Authentication and admission of various Mattel business records. | may call |
| 91. | Custodian of Records of Mattel Mexico | Authentication and admission of various business records. | may call |
| 92. | Custodian of Records of Mattel Servicios | Authentication and admission of various business records. | may call |
| 93. | Custodian of Records of Mattel Canada | Authentication and admission of various business records. | may call |
| 94. | Bossick, Jerome<br><br>Mattel SVP of Strategic Planning | Creation and use of The Bratz Brief. Mattel's delay in bringing suit despite widespread belief within Mattel of wrongdoing by MGA. Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA. Mattel's practice of stealing trade secrets and other confidential information from competitors | will call |

| | | | | |
|---|---|---|---|---|
| | | | including MGA. Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act. Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA. Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA. The knowledge of and use by Mattel executives of stolen information. | |
| 95. | Louie, John<br><br>Mattel Senior Director of Strategic Planning and Business Development | Knowledge of practices of Market Intelligence Group in sneaking into competitors' showrooms. | |
| 96. | Cleary, Jerry<br><br>Former Mattel Executive VP of Sales and Merchandising | Mattel's unfair and anti-competitive agreement with Kohl's not to purchase any MGA products for at least two years, and other exclusionary conduct by Mattel designed to keep MGA products from consumers and off the market. Mattel's efforts to kill Bratz. | will call |
| 97. | Zablow, Milt<br><br>Former Mattel ____ | Mattel's unfair and anti-competitive agreement with Kohl's not to purchase any MGA products for at least two years, and other exclusionary conduct by Mattel designed to keep MGA | |

| | | | |
|---|---|---|---|
| | | products from consumers and off the market.  Mattel's efforts to kill Bratz. | |
| 98. | Bousquette, Matthew<br><br>Former President of Mattel Brands | Significance of Barbie brand to Mattel.  Significance of high market share in fashion doll category to Mattel.  Enormous pressure from the Board and CEO Eckert to rescue Barbie brand when he took over as President of Mattel Brands in 2003.  Problems with Barbie brand that existed before and had nothing to do with Bratz.  Successes of Bratz for reasons other than the appearance of the doll such as accessories and packaging.  Obsessive focus on Bratz as an illustration of everything MGA was doing right and Mattel was doing wrong.  Numerous and varied unfair and fraudulent efforts to kill Bratz in the marketplace, including thefts of MGA trade secrets.  Development of Flavas to carry out Bratz defense plan and failure of Flavas because the product was too edgy for Mattel. | will call* |
| 99. | Moore, Phillip<br><br>Mattel Senior Director Global Information Technology | Mattel's suppression, concealment and destruction of evidence.  Mattel's failures to preserve evidence.  Mattel's deliberate failures to search for relevant evidence in order to conceal and suppress such evidence, including its failure to search its Enterprise | will call |

- 30 -

| | | | | |
|---|---|---|---|---|
| | | | Vault.  Highly relevant emails deleted by Robert Eckert and found only on backup tapes.  Mattel's failure and refusal to search backup tapes for other relevant Eckert emails despite Eckert's "double-deletion" practices.  Authentication of Mattel's How-to-Steal Manual. | |
| 100. | Kawashima, Fred<br><br>Mattel Senior Manager of Systems and Network Engineering | | Mattel's email systems and destruction of evidence therein including its continued use of auto-deletion even after filing this litigation. | will call |
| 101. | Hagey, Russ<br><br>Bain & Company | | Bain consultant who will testify regarding Bain Report—Project Doll containing confidential MGA information and Mattel's manipulation and spoliation of evidence related to the Bain Report.  Michael Moore altered the content of the report to and ordered all copies of prior version destroyed in order to avoid discovery in this litigation.  Admission of Mattel marketing manager to Bain interviewers that Mattel paid German retailers to keep Bratz off the shelves. | will call |
| 102. | James, Andrew<br><br>Bain & Company | | Bain consultant who will testify regarding Bain Report—Project Doll containing confidential MGA information and Mattel's manipulation and spoliation of evidence related to the Bain Report.  Michael Moore altered the | will call |

| | | | | |
|---|---|---|---|---|
| | | | content of the report to and ordered all copies of prior version destroyed in order to avoid discovery in this litigation. Admission of Mattel marketing manager to Bain interviewers that Mattel paid German retailers to keep Bratz off the shelves. | |
| 103. | Moore, Michael<br><br>Mattel Senior Counsel | | Mattel's tactical decision not to sue MGA, MGA HK and Larian when it sued Carter Bryant in April 2004.  Mattel's knowledge of alleged wrongdoing by MGA starting in 2001 and its investigation in 2002 and 2003 and unjustified delay in bringing suit. Use of email filtering device to capture employees' email and advance knowledge of departures of Mattel employees.  Failure to produce email captured by email filtering device.  Mattel's deliberate withholding of evidence relevant to this litigation concerning activities of the Market Intelligence Group.  Mattel's improper efforts to hide evidence and influence testimony of witnesses including Villasenor and Vargas.  Mattel's deliberately inadequate investigation of Villasenor's complaint of unlawful activity.  Mattel's deliberate failure to comply with court orders for the production of documents. | will call |
| 104. | Barrera, Patricio | | Mattel suppression of evidence | will call |

| | | | |
|---|---|---|---|
| | Attorney of Sal Villasenor | concerning unlawful activity of Villasenor. | |
| 105. | Sauer, Eve<br><br>Attorney, Sauer& Wagner | "Investigation" into Villasenor's complaint of unlawful activity. Mattel's suppression of relevant evidence. | |
| 106. | Thomas, Jill<br><br>Mattel Senior Counsel | Mattel's tactical decision not to sue MGA, MGA HK and Larian when it sued Carter Bryant in April 2004.  Mattel's unjustified delay in bringing suit.  Mattel's deliberate withholding of evidence relevant to this litigation.  Mattel's improper efforts to hide evidence and influence testimony.  Mattel's deliberate failure to comply with court orders for the production of documents. | |
| 107. | Bacon, Schuyler<br><br>Former MGA Director of Recruiting | MGA's procedures in hiring former Mattel employees.  MGA's instructions to former Mattel employees not to take Mattel documents or to bring such documents with them.  A summary of former Mattel employees hired by MGA, their positions and status. | will call |
| 108. | Foti, Janice<br><br>Former MGA Vice-President of Human Resources | MGA's procedures in hiring former Mattel employees.  MGA's instructions to former Mattel employees not to take Mattel documents or to bring such documents with them.  A summary of former Mattel employees hired by MGA, their positions and | will call |

| | | | | |
|---|---|---|---|---|
| 1 | | | status. | |
| 2 | 109. | Whaley, Linda | MGA's procedures in hiring former Mattel employees.  MGA's instructions to former Mattel employees not to take Mattel documents or to bring such documents with them.  A summary of former Mattel employees hired by MGA, their positions and status. | will call |
| 3 | | | | |
| 4 | | Former MGA Senior Director of Human Resources | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | 110. | Gronich, Daphne | MGA's preservation of documents.  MGA's policy to require all former Mattel employees to confirm that they would not remove Mattel confidential materials or bring them to MGA.  MGA's protection of its intellectual property. | will call |
| 10 | | | | |
| 11 | | Former MGA General Counsel | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | 111. | Woods, Mel | Acquisition discussions between Mattel and MGA and valuation of MGA and Bratz.  Termination of Veronica Marlow as MGA contractor. | may call |
| 16 | | | | |
| 17 | | Former MGA President | | |
| 18 | | | | |
| 19 | 112. | Han, Janet | MGA's policy to require all former Mattel employees to confirm that they would not remove Mattel confidential materials or bring them to MGA.  Mattel's access to confidential MGA information. | may call |
| 20 | | | | |
| 21 | | President of Licensing for Sanrio (Hello Kitty); former MGA ___ and former Mattel ___ | | |
| 22 | | | | |
| 23 | | | | |
| 24 | 113. | Varu (Patel), Tina | Mattel's efforts to recruit and hire MGA employees, including those who worked on Bratz, into directly competing positions at Mattel.  Mattel's analysis of MGA's trapezoidal packaging, and what | will call |
| 25 | | | | |
| 26 | | Served as Bratz Product Manager for MGA and then MyScene Product Manager for Mattel | | |
| 27 | | | | |
| 28 | | | | |

| | | | |
|---|---|---|---|
| | | was distinctive and successful about that packaging.  Examples of MyScene doll products. | |
| 114. | Hardouin, Chris<br><br>Mattel product designer and former MGA product designer | Mattel's efforts to recruit and hire MGA employees into directly competing positions at Mattel. | will call |
| 115. | Caspi, Yuval<br><br>MGA designer | Lack of any alleged trade secret misappropriation by former summer intern Ryan Toumoulian. | |
| 116. | Wolk, Bennett<br><br>Former Mattel Director of Consumer Research. | Lack of any alleged trade secret misappropriation by Shirin Salemnia.  Widespread use of purported Mattel research methodologies.  Mattel's market intelligence theft of competitor trade secrets.  Positive performance reviews based on theft of competitor trade secrets. | may call |
| 117. | Schwartz, Corey<br><br>Head of ConsumerQuest (third party research agency) and former Mattel Director of Consumer Research. | Lack of any alleged trade secret misappropriation by Shirin Salemnia.  Widespread use of purported Mattel research methodologies.  Mattel's anticompetitive effort to preclude ConsumerQuest from providing services to MGA. | may call |
| 118. | Cooney, Daniel J. Jr.<br><br>Former MGA VP of Sales and Former Mattel Senior Brand Manager for Matchbox | Lack of trade secrets or misappropriation. | will call |
| 119. | Murtha, Eugene | Lack of value to purported trade secrets misappropriated by | will call* |

| | | | |
|---|---|---|---|
| | | Former Mattel VP of International Business Development | underling Cooney. | |
| 120. | Contreras, Nick<br><br>Former MGA Senior VP of Customer Marketing and Mattel Director of Customer Marketing | Lack of trade secrets or misappropriation. | will call |
| 121. | Brisbois, Janine<br><br>MGA Canada VP of National Accounts and Former Mattel National Sales Director | Lack of trade secrets or misappropriation. | will call |
| 122. | Goveia-Gordon, Diane<br><br>MGA Canada General Manager | Lack of trade secrets or misappropriation related to Janine Brisbois.  MGA Canada financials. | will call |
| 123. | Totzke, Steve<br><br>Mattel Canada General Manager | Lack of trade secrets or misappropriation related to Janine Brisbois.  Lack of harm to Mattel Canada.  Misappropriation of MGA's trade secrets at Hong Kong Toy Fair. | will call |
| 124. | Graham, Kim<br><br>Mattel VP of Human Resources | Mattel's exit interview process and forms and identification of categories of documents containing alleged trade secrets in such forms.  Mattel's exit interview for Jorge Castilla, including its knowledge that Castilla had allegedly downloaded documents prior to his departure, and its failure to confront him with | |

| | | | | |
|---|---|---|---|---|
| | | | its beliefs in that regard despite the claim that such documents contained trade secrets. | |
| 125. | Castilla, Jorge<br><br>MGA Manager of Sales Planning and former Mattel International Business Analyst | | Lack of disclosure of any allegedly downloaded trade secrets to MGA. Lack of use of any allegedly downloaded trade secrets at MGA. | will call |
| 126. | Coleman, Nicole<br><br>Former MGA Senior VP of Sales Operations | | MGA's creation of its own inventory and forecasting system that had nothing to do with any attributes of the Mattel system. | will call |
| 127. | Harris, Rebecca<br><br>MGA VP of Sales Administration and Planning | | MGA's creation of its own inventory and forecasting system that had nothing to do with any attributes of the Mattel system. | will call |
| 128. | Debrowski, Thomas<br><br>Mattel EVP Operations | | Mattel's threats to MGA suppliers in Asia. Mattel's problems with its forecasting and inventory process. Mattel's numerous problems with product safety. | may call |
| 129. | Garcia, Yehuda Bassok Ph.D<br><br>USC Marshall School of Business, Professor and Chair Information and Operations Management (expert) | | Information in alleged Castilla downloaded documents regarding inventory and forecasting was either generally known, readily available in the industry, or was of little if any value to a competitor of Mattel. | will call |
| 130. | Park, Thomas<br><br>Former MGA COO | | MGA's creation of MGAE de Mexico, its lack of knowledge or inducement of any acquisition, disclosure or use of Mattel trade | may call |

| | | | secrets. | |
|---|---|---|---|---|
| 131. | Huerta-Bleck, Alberto

Expert | Mexican law regarding corporate profit sharing and structure of Mattel Servicios.  Other pertinent aspects of Mexican law. | may call—only if the Court wishes further testimony regarding Mexican law pursuant to its Rule 44.1 determinations |
| 132. | Kuemmerle, Susana

Former MGA de Mexico General Manager | MGA's creation of MGAE de Mexico, its lack of knowledge or inducement of any acquisition, disclosure or use of Mattel trade secrets.  Lack of confidential information disclosures and disloyalty of Machado, Vargas or Trueba while still employed by Mattel Servicios.  The business operations of MGAE de Mexico. Mattel's improper interference with MGA's products and marketing.  The lack of profitability of MGAE de Mexico. | will call* |
| 133. | Machado Gomez, Carlos Gustavo | Will testify about his purported contracts with Mattel and its subsidiaries, his work at Mattel Servicios, including his duties and responsibilities there, Mattel's use of competitor's information, his contacts with MGA regarding the |

| | | | | |
|---|---|---|---|---|
| | | | new employment opportunity, his departure from Mattel Servicios, Mattel's allegations of use or disclosure of Mattel information, his work at MGA de Mexico and his transfer to MGA in the U.S. | |
| 134. | Machado, Gustavo Sr.<br><br>Father of Gustavo Machado | Testimony regarding gift of computer of Gustavo Machado to rebut alleged spoliation. | may call |
| 135. | Tiburcio, Francisco<br><br>Basham Ringe & Correa | Mattel's improper manipulation of Vargas testimony. | may call |
| 136. | Trueba, Mariana<br><br>Former MGA de Mexico Marketing Manager | Lack of misappropriation of trade secrets and lack of fiduciary duty. | will call* |
| 137. | Zalzman, Gabriel<br><br>Former Mattel Mexico General Manager (currently employed by Mattel) | The limited duties of Machado, Vargas, and Trueba to establish they were not fiduciaries.  Will describe how the Executive Committee actually ran the business in Mexico.  Will testify about inconsistent application of Mattel's confidentiality policies. | may call |
| 138. | Isaias, Roberto<br><br>Former Mattel Mexico Director of Sales (presently Mattel Mexico General Manager) | The limited duties of Machado, Vargas, and Trueba to establish they were not fiduciaries.  Will explain the differences among the various Mattel entities in Mexico, and explain Mattel Servicios.  Contact with Vargas.   Lack of harm of sales of Bratz to sales of Barbie in Mexico market. | may call |

| 139. | Ibarra, Ricardo<br><br>Former Mattel Mexico Director of Marketing | Mattel's acquisition and use of confidential information of other companies in Mexico. Mattel's response to Bratz in Mexican market. | may call |
|------|------|------|------|
| 140. | Elias, Jaime<br><br>Mattel Investigator | Mattel's investigations and surveillance of its employees. History of conflicting and false forensic analyses of Mexico hard drives. Mattel's IT department falsification of evidence related to Machado's hard drive. Mattel's extended search for any expert to support its theory that Machado damaged his hard drive. The admitted falsity of Mattel's allegation that Ron Brawer improperly removed a box of documents and other Mattel proprietary materials from Mattel upon his departure from employment. | will call |
| 141. | Olson, Steven<br><br>O'Melveny & Myers | Statements made by Pablo Vargas regarding lack of any misappropriation of trade secrets. | may call |
| 142. | Valencia Garcia, Hugo<br><br>Attorney of Pablo Vargas | Mattel's improper efforts to influence testimony of Pablo Vargas. | will call* |
| 143. | Storie, Keith<br><br>Mattel VP of Finance Assistant Controller | Non-existence of trade secrets, including Mattel's failure to employ reasonable measures to protect alleged trade secrets. Lack of damages from alleged misappropriation. | will call |
| 144. | Pembleton, Ninette | Factors to support commercial | will call |

| | | | | |
|---|---|---|---|---|
| | MGA Director of Sales Operations | strength of MGA's trapezoidal packaging. | | |
| 145. | Lawrence Deitch<br><br>Deitch Media Management, Inc. Custodian of Records | MGA's advertising for Bratz and 4 Ever Best Friends. | will call | |
| 146. | Paul Caldera<br><br>Beacon Media Group LLC Custodian of Records | MGA's advertising for Bratz. | will call | |
| 147. | Djiguerian, Leon<br><br>MGA Product Designer | MGA use of trapezoidal packaging. MGA's development of different Bratz themes and product lines. The significant differences between any of Carter Bryant's drawings and the Bratz products. | will call | |
| 148. | Ashbrook, Erika<br><br>Mattel Senior Director of Sales | Wal-Mart's perception that Mattel's Wee 3 Friends product was a "knockoff" of MGA's 4 Ever Best Friends. Wal-Mart's complaints that Mattel was interfering with Bratz products on Wal-Mart shelves. | will call | |
| 149. | Hibbert, Constance<br><br>Mattel Director of Retail Services | Mattel's interference with Bratz products on the shelves and Wal-Mart's complaints regarding same. | will call | |
| 150. | Laubenstein, Barb<br><br>Former Wal-Mart Buyer of Girls Products | Perception that Mattel's Wee 3 Friends product was a "knockoff" of MGA's 4 Ever Best Friends Product. | will call* | |
| 151. | Ronchetto, Heather | Mattel's interference with Bratz | will call* | |

| | | | |
|---|---|---|---|
| | (Hocut)<br><br>Former Wal-Mart Buyer of Girls Products | product on shelves of Wal-Mart stores in several large states including California, Texas and Florida. | |
| 152. | Marks, Leah<br><br>MGA Director of Licensing | Mattel's disruption of numerous MGA business relationships through its fraudulent procurement of an injunction in this action. | will call |
| 153. | Carson, Peter<br><br>Partner Bingham McCutcheon | The legal structure of the OMNI transaction. | will call |
| 154. | Kadisha, Neil<br><br>Independent businessman | The business reasons and economics of the OMNI transaction. | will call* |
| 155. | Karol, Sheon<br><br>Former MGA Chief Restructuring Officer and Consultant from Mesirow Financial | MGA's economic hardship and efforts to attract funding at the time of the OMNI transaction. | may call* |
| 156. | Kupietzky, Moshe<br><br>Partner Sidley & Austin | Legal formation and participation of IGWT 826 in the OMNI transaction; legal structure of the OMNI transaction. | may call |
| 157. | Moinian, Joseph<br><br>CEO of The Monian Group | Participation as a funder in the OMNI transaction. | may call* |
| 158. | Joliceur, Dennis<br><br>MGA CFO | MGA's financials, sales reports and other periodic reports.  MGA's IT function and systems. | will call |
| 159. | Schultz, Stephen | MGA's financials, sales reports and other periodic reports. | may call |

| | | MGA Controller | | |
|---|---|---|---|---|
| | 160. | Crisanti, Pedro<br><br>MGA International Accountant | MGAE de Mexico financials | will call |
| | 161. | Pietri, Didier<br><br>Former MGA COO<br>Former President of Capital Cities ABC | MGA's business while Pietri was COO; rebuttal to any assertions of wrongdoing by Brian Wing. | will call |
| | 162. | Woodman, Spencer<br><br>MGA Royalty Administrator | Royalty payments to Carter Bryant and others as may be pertinent to calculation of damages | may call |
| | 163. | Larian, Isaac<br><br>MGA CEO and President | All aspects of MGA's defenses to Mattel claims and MGA's affirmative claims.  MGA's entrepreneurial culture and product design and development process.  Successful MGA products introduced both before and after Bratz.  MGA's development of Bratz and noninfringement of Bryant drawings.  The lack of any industry custom and usage regarding any terms in Mattel's inventions assignment agreement.  MGA's lack of notice that Mattel owned Bryant's works and reasonable belief in good faith that it had the right to exploit Bratz in reliance upon the investigation of counsel and Bryant's representations.  MGA's investment into Bratz brand.  Mattel's unfair business practices | will call |

| | including interference with MGA's business relationships and theft of trade secrets from MGA. Mattel's destruction of MGA's value in the Bratz brand and MGA's business relationships, resulting in hundreds of layoffs of MGA employees.  Larian's efforts to save the company in the face of near total destruction by Mattel. Mattel's infringement of MGA intellectual property. | |
|---|---|---|

| | |
|---|---|
| Dated:    December 6, 2010 | Respectfully submitted,<br><br>ANNETTE L. HURST<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br><br>GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO LLP<br><br><br>By:  _____/s/ Annette L. Hurst_____<br>ANNETTE L. HURST<br>Attorneys for MGA Parties |
| Dated:    December 6, 2010 | Respectfully submitted,<br><br>ALEXANDER H. COTE<br>SCHEPER KIM AND OVERLAND LLP<br><br><br>By:  _____/s/ Alexander H. Cote_____<br>ALEXANDER H. COTE<br>Attorneys for Machado Gomez |