QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  William C. Price (Bar No. 108542)
  williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S MOTION TO DISQUALIFY GLASER WEIL**<br><br>Hearing Date:      TBD<br>Time:              TBD<br>Place:             Courtroom 9D<br><br>Discovery Cutoff:      October 4, 2010<br>Pre-trial Conference:  January 4, 2011<br>Trial:                 January 11, 2011 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on a date and at a time to be determined by the Court, before the Honorable David O. Carter, plaintiffs Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel") will, and hereby do, move the Court for an order disqualifying Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP ("Glaser Weil") from representing MGA Entertainment, Inc., MGAE de Mexico, S.R.L. de C.V., MGA Entertainment (HK), Ltd., and Isaac Larian (collectively, "MGA") in this action.

This Motion is made pursuant to Cal. R. Prof. Cond. 3-310(E) and L.R. 83-3.1.2 on the grounds that Glaser Weil attorney Jill Basinger did prior work for Mattel in this and another substantially related matter and has an indisputable conflict of interest that must be imputed to the entire firm as a matter of law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael T. Zeller, the records and files of this Court, and all other matters of which the Court may take judicial notice.

### Certificate of Compliance

Lead counsel met and conferred regarding the issue in Mattel's motion on December 8, 2010 but did not reach a resolution.


DATED:  December 10, 2010      QUINN EMANUEL URQUHART &
SULLIVAN. LLP


By /s/ John B. Quinn
    John B. Quinn
    Attorneys for Mattel, Inc. and
    Mattel de Mexico. S.A. de C.V.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

PRELIMINARY STATEMENT .............................................................................1

STATEMENT OF FACTS ....................................................................................1

LEGAL STANDARD ...........................................................................................3

ARGUMENT .......................................................................................................3

I.    GLASER WEIL HAS AN INCURABLE CONFLICT OF INTEREST .........3

   A.    Ms. Basinger Obviously Has A Conflict..............................................3

   B.    Under California Law, the Conflict Is Imputed to Glaser Weil..............4

II.   NONE OF THE OTHER ARGUMENTS GLASER WEIL MAKES AGAINST DISQUALIFICATION IS PERSUASIVE, OR EVEN RELEVANT .................................................................................................9

CONCLUSION .............................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.,
  No. C 07-1200, 2008 WL 5484552 (N.D. Cal. Dec. 18, 2008)...............................5

City & Cnty. of San Francisco v. Cobra Solutions, Inc.,
  38 Cal. 4th 839 (2006) .........................................................................3, 4

Flatt v. Super. Ct.,
  9 Cal. 4th 275 (1994) ......................................................................5, 6, 8

Fremont Indemn. Co. v. Fremont Gen. Corp.,
  143 Cal. App. 4th 50 (2d Dist. 2006).................................................................3

Genetech, Inc. v. Sanofi-Aventis Deutschland GMGH,
  No. C 08-04909 SI (N.D. Cal. Mar. 20, 2010) ......................................5

Glaxo Group Ltd. v. Genetech, Inc.,
  No. SA 10-CV-2764-MRP (C.D. Cal. June 15, 2010) .......................................3, 6

Goldberg v. Warner/Chappell Music, Inc.,
  125 Cal. App. 4th 752 (2d Dist. 2005)...........................................................4, 7

H.F. Ahmanson & Co. v. Salomon Bros., Inc.,
  229 Cal. App. 3d 1445 (2d Dist. 1999).................................................................3

Henriksen v. Great Am. Sav. & Loan,
  11 Cal. App. 4th 109 (1st Dist. 1992)......................................... 3, 4, 5, 7, 8

Hitachi, Ltd. v. Tatung Co.,
  419 F. Supp. 2d 1158 (N.D. Cal. 2006) ..........................................................2, 9

I-Enterprise Co. v. Draper Fisher Jurvetson Mgmt. Co. V, LLC,
  No. C-03-1561 MMC, 2005 WL 757389 (N.D. Cal. Apr. 4, 2005)..............8, 9, 10

Kirk v. First Am. Title Ins. Co.,
  183 Cal. App. 4th 776 (2010) ..................................................................6, 7

Largo Concrete v. Liberty Mut. Fire Ins. Co.,
  No. C 07-04651 CRB, 2008 WL 53128 (N.D. Cal. Jan. 2, 2008)....................6, 9

Lucent Techs. Inc. v. Gateway, Inc.,
  No. 02CV2060-B(CAB), 2007 WL 1461406 (S.D. Cal. May 15, 2007).......5, 6, 8

Meza v. H. Muehlstein & Co.,
  176 Cal. App. 4th 969 (2d Dist. 2009)........................................ 3, 4, 5, 7, 8

-ii-

Openwave Sys. v. 724 Solutions (US) Inc.,
    No. C 09-3511 RS, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) ....................6, 7

Pound v. DeMera DeMera Cameron,
    135 Cal. App. 4th 70 (5th Dist. 2005) .............................................................3, 10

Rosenfeld Constr. Co. v. Super. Ct.,
    235 Cal. App. 3d 566 (1991) .................................................................................4

Sharp v. Next Entm't., Inc.,
    163 Cal. App. 4th 410 (2d Dist. 2008).................................................................5

UMG Recordings, Inc. v. MySpace, Inc.,
    526 F. Supp. 2d 1046 (C.D. Cal. 2007) ...............................................................6

**Other Authorities**

Cal. R. Prof. Conduct 3-310(E)...............................................................................3

Don J. DeBenedictis,
    *Bar Updates Rules, Nixes 'Screening' of Conflict Clients,*
    Los Angeles Daily Journal (July 27, 2010) ...........................................................7

Local Rule 83-3.1.2...................................................................................................2

MATTEL'S MOTION TO DISQUALIFY GLASER WEIL

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Glaser Weil committed the cardinal sin under the disqualification cases—it hired an attorney who worked on the other side of this very case.  The lawyer in question, Jill Basinger, billed over 1,400 hours to Mattel matters while at Quinn Emanuel, including this case and another substantially related matter.  No amount of spin and no ethical wall can change the fact that disqualification of Glaser Weil is required.

There is and can be no dispute that Ms. Basinger herself has a conflict.  Glaser Weil has not asserted otherwise.  And, as MGA's counsel itself proclaimed in correspondence only last year (in the context of inaccurate accusations about prior work by a Quinn Emanuel lawyer): "[A]n attorney's personal disqualification is imputed to every attorney in the lawyer's office, as a matter of law, and the presumption is not rebuttable."  Glaser Weil's apparent view that California law has somehow now shifted 180 degrees is incorrect.  Ms. Basinger's incurable conflict is attributable to the entire Glaser Weil firm.   Disqualification is required.

### Statement of Facts

Jill Basinger is a 1997 law school graduate.  She worked at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") as a senior associate and Of Counsel from 2002 to 2006.  During her time at Quinn Emanuel, Ms. Basinger billed 1,473.1 hours to multiple Mattel matters.  This included 9 hours billed directly to <u>Mattel v. MGA</u> litigation.  As part of her work on this matter, Ms. Basinger communicated with Mike Zeller and reviewed confidential Mattel systems and files for potential production.

In addition, Ms. Basinger billed 123.3 hours to <u>Viveros v. Mattel</u>, which concerned the origins of Mattel's "Diva Starz" line of products, that overlapped in issues and discovery with the MGA litigation.  MGA itself has asserted that there is a substantial relationship between the matters at issue in <u>Viveros</u> and this case by

1 asserting that Mattel's "Diva Starz" line was directly relevant to MGA's unclean

2 hands and competition privilege or justification defenses in this case. See, e.g.,

3 MGA's Motion to Compel Further Responses to Requests for Production,

4 September 23, 2009, at 20 (Dkt. No. 6816). As the Court will recall, MGA's

5 counsel repeatedly and specifically relied upon "Diva Starz" at the recent summary

6 judgment hearing for its statute of limitations and other arguments. While working

7 on Viveros, Ms. Basinger was privy to Mattel's litigation strategies with respect to

8 "Diva Starz" and protection of its intellectual property, regularly communicated

9 with in-house counsel for Mattel and was involved in the search for and collection

10 of documents concerning "Diva Starz." She also worked on, and discussed strategy

11 regarding, the depositions of witnesses, including of persons who are witnesses in

12 both the MGA and the Viveros cases. Mattel's lead counsel in Viveros who

13 regularly communicated with Ms. Basinger on such and other privileged matters

14 was Mike Zeller, who is centrally involved as Mattel's counsel in the MGA

15 litigation. Indeed, the bulk of documents produced in the MGA litigation

16 concerning "Diva Starz," which were demanded by MGA, were collected and

17 reviewed as part of the Viveros case by Ms. Basinger, among other Quinn Emanuel

18 attorneys.

19      On November 24, 2010, Mattel was notified that Patricia Glaser of Glaser

20 Weil would be seeking to associate in as counsel for MGA in this matter. On

21 November 30, 2010, a Quinn Emanuel attorney familiar with the Mattel v. MGA

22 litigation learned that Ms. Basinger had joined Glaser Weil. On December 3, 2010,

23 Mattel sent Glaser Weil a letter, alerting it to the conflict. On December 6, 2010,

24 Glaser Weil responded, acknowledging that Ms. Basinger "may have" previously

25 worked for Mattel on this litigation. Glaser Weil claimed to have taken steps it

26 argued "preclude[d] any imputation of a conflict" and asserted there was "no basis

27 for any objection by Mattel." Numerous meet and confers failed to convince Glaser

28 Weil to withdraw from representing MGA in this litigation.

-2-

1

**Legal Standard**

2          Attorneys appearing before the United States District Court for the Central

3    District of California are subject to California law governing professional conduct.

4    See, e.g., L.R. 83-3.1.2 (All attorneys must "comply with the standards of

5    professional conduct required of members of the State Bar of California and

6    contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of

7    California, and the decisions of any court applicable thereto."); Hitachi, Ltd. v.

8    Tatung Co., 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) ("Motions to disqualify

9    counsel are decided under state law.").  Under California law, when an attorney has

10   worked on the other side of a case, that severe conflict is imputed to the attorney's

11   entire firm.  See, e.g., Glaxo Group Ltd. v. Genetech, Inc., No. SA 10-CV-2764-

12   MRP, at 7 (C.D. Cal. June 15, 2010), attached hereto as Exhibit 1; see also infra

13   Section I.B.

14

**Argument**

15   **I.    GLASER WEIL HAS AN INCURABLE CONFLICT OF INTEREST**

16        **A.    Ms. Basinger Obviously Has A Conflict**

17          Pursuant to Rule 3-310(E) of the California Rules of Professional Conduct, an

18   attorney may not represent a new client whose interests are adverse to those of a

19   former client on a matter in which the attorney has obtained confidential

20   information.  Cal. R. Prof. Conduct 3-310(E); see also Henriksen v. Great Am. Sav.

21   & Loan, 11 Cal. App. 4th 109, 113 (1st Dist. 1992).  To obtain disqualification, the

22   former client is not required to show that the attorney *actually* possesses any

23   material confidential information; rather, it need establish only that the former

24   representation and the new representation are "substantially related."  See id. at 114;

25   H.F. Ahmanson & Co. v. Salomon Bros., Inc., 229 Cal. App. 3d 1445, 1452 (2d

26   Dist. 1999) ("[I[t is well settled actual possession of confidential information need

27   not be proved in order to disqualify the former attorney.").  If there is a "substantial

28   relationship" between the current representation and the former representation,

-3-

1  access to confidential information is presumed, and disqualification is mandatory.

2  See Fremont Indemn. Co. v. Fremont Gen. Corp., 143 Cal. App. 4th 50, 67 (2d Dist.

3  2006).

4        While a Quinn Emanuel associate and Of Counsel, Ms. Basinger worked not

5  only on related matters—she worked on this very litigation.  An attorney who

6  switches sides during a pending litigation is disqualified automatically.  See, e.g.,

7  City & Cnty. of San Francisco v. Cobra Solutions, Inc., 38 Cal. 4th 839, 846 (2006)

8  ("An attorney may not switch sides during pending litigation representing first one

9  side and then the other."); Meza v. H. Muehlstein & Co., 176 Cal. App. 4th 969, 978

10 (2d Dist. 2009) (attorney's prior representation of adverse party in the very same

11 suit was a *per se* conflict of interest); Pound v. DeMera DeMera Cameron, 135 Cal.

12 App. 4th 70, 76 (5th Dist. 2005) (switching sides in the same action is 'the most

13 egregious conflict of interest.'") (citation omitted).  Glaser Weil cannot, and does

14 not, dispute that Ms. Basinger is disqualified from representing MGA in this action.[1]

15    **B.    Under California Law, the Conflict Is Imputed to Glaser Weil**

16       In California, an attorney's individual conflict of interest is imputed to her

17 firm because "attorneys, working together and practicing law in a professional

18 organization, share each other's, and their clients, confidential information."  Cobra

19 Solutions, Inc., 38 Cal. 4th at 847-48; see also Rosenfeld Constr. Co. v. Super. Ct.,

20 235 Cal. App. 3d 566, 573 (1991) ("It has long been recognized . . . that knowledge

21 by any member of a law firm is knowledge by all of the attorneys in the firm,

22 partners as well as associates.").  As MGA's counsel put it in a letter to Mattel last

23 year, "an attorney's personal disqualification is imputed to every attorney in the

24 lawyer's office, as a matter of law, and the presumption is not rebuttable."  The

25 vicarious disqualification rule is based on "a pragmatic recognition that the

26

27    [1]  Glaser Weil apparently recognized Ms. Basinger's conflict in attempting to construct an ethical wall around her.

28

-4-

1   confidential information will work its way to the nontainted attorneys at some

2   point." Goldberg v. Warner/Chappell Music, Inc., 125 Cal. App. 4th 752, 765 (2d

3   Dist. 2005).

4        Vicarious disqualification of the entire firm is compelled where, as here, an

5   attorney's disqualification results from her prior work for the opposing side in the

6   same lawsuit. See Meza, 176 Cal. App. 4th at 978 ("As a general rule in California,

7   where an attorney is disqualified from representation, the entire law firm is

8   vicariously disqualified as well. This is especially true where the attorney's

9   disqualification is due to his prior representation of the opposing side during the

10  same lawsuit."); Henriksen, 11 Cal. App. 4th at 117 ("Where an attorney is

11  disqualified because he formerly represented and therefore possesses confidential

12  information regarding the adverse party in the current litigation, vicarious

13  disqualification of the entire firm is compelled as a matter of law."); Flatt v. Super.

14  Ct., 9 Cal. 4th 275, 283 (1994) (citing Henriksen with approval for the same

15  proposition); Lucent Techs. Inc. v. Gateway, Inc., No. 02CV2060-B(CAB), 2007

16  WL 1461406, at *2 (S.D. Cal. May 15, 2007) ("California courts have applied an

17  automatic or *per se* disqualification of the firm especially where the conflict

18  involves the representation of adverse parties.").

19       In correspondence, Glaser Weil has asserted that its creation of an "ethical

20  wall" between Ms. Basinger and the attorneys who propose to handle this case

21  insulates it from disqualification. This is not the law. For several decades,

22  California state and federal district courts have treated the rule of vicarious

23  disqualification as absolute and irrebutable—as MGA's own counsel conceded in

24  correspondence in 2009.

25       In Henriksen v. Great Am. Savings & Loan, 11 Cal. App. 4th 109 (1st Dist.

26  1992), for example, an attorney who had previously represented defendants in

27  ongoing litigation joined the firm that was representing the plaintiffs. Although the

28  firm implemented an ethical wall between the tainted attorney and the lawyers

-5-

MATTEL'S MOTION TO DISQUALIFY GLASER WEIL

1  handling the case, the court held that disqualification of the entire firm was

2  mandatory. Id. at 114-15.  Numerous other cases have reached the same result.  See,

3  e.g., Meza, 176 Cal. App. 4th at 978-80 (ethical wall between an attorney with

4  confidential information who switched sides in the same lawsuit did not prevent

5  disqualification of entire firm); Sharp v. Next Entm't., Inc., 163 Cal. App. 4th 410,

6  438 n. 11 (2d Dist. 2008) ("[I]n the context of private law firms, there is no

7  definitive California authority authorizing ethical walls."); Genetech, Inc. v. Sanofi-

8  Aventis Deutschland GMGH, No. C 08-04909 SI, at 12-13 (N.D. Cal. Mar. 20,

9  2010) (disqualifying entire firm even though it submitted affidavits stating that the

10  tainted attorney was semi-retired and had not been involved in the litigation at

11  issue); All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc., No. C 07-1200,

12  2008 WL 5484552, at *8-9 (N.D. Cal. Dec. 18, 2008) (attorney's prior

13  representation of corporate officer at previous firm disqualified entire new firm from

14  representation adverse to corporation in related matter, despite timely creation of

15  ethical wall and geographical separation of attorneys); Largo Concrete v. Liberty

16  Mut. Fire Ins. Co., No. C 07-04651 CRB, 2008 WL 53128, at *4-5 (N.D. Cal. Jan.

17  2, 2008) (plaintiffs' counsel was disqualified even though firm screened off

18  associate who worked on substantially related matters for defendant at previous

19  firm); Lucent, 2007 WL 1461406, at *4-5 (ethical walls are ineffective); UMG

20  Recordings, Inc. v. MySpace, Inc., 526 F. Supp. 2d 1046, 1060-61 (C.D. Cal. 2007)

21  (Flatt requires automatic disqualification of entire firm).

22        Glaser Weil apparently plans to argue that the California Court of Appeal's

23  recent decision in Kirk v. First Am. Title Ins. Co., 183 Cal. App. 4th 776 (2010),

24  effected a sea-change in California disqualification law.  Glaser Weil is mistaken.

25  In Kirk, the Second District became the first California court to hold that, under

26  certain circumstances, the presumption of vicarious disqualification can be rebutted

27  by an ethical wall at a private law firm.  Id. at 806-810.  Any argument by Glaser

28  Weil that California's well-established rule of imputed disqualification was

-6-

1   jettisoned by a single, nonbinding decision of the Court of Appeal would be sorely
2   misplaced, as recognized by this District earlier this year in Glaxo Group Ltd. v.
3   Genetech, Inc., No. SA 10-CV-2764-MRP (C.D. Cal. June 15, 2010).  In Glaxo, the
4   court rejected the plaintiff's attempt to rely on Kirk for the proposition that an
5   ethical screen can refute the presumption of an imputed conflict.  Id. at 7 ("GSK
6   cannot rely on Kirk because it is not binding authority and contradicts binding
7   California Supreme Court law.  See Flatt, 9 Cal. 4th at 283."); see also Openwave
8   Sys. v. 724 Solutions (US) Inc., No. C 09-3511 RS, 2010 WL 1687825, at *5 n.6
9   (N.D. Cal. Apr. 22, 2010) (rejecting ethical walls and noting that Kirk is a
10  nonbinding appellate decision).

11       Further, in July 2010, the California State Bar rejected the very rule proposed
12  by Glaser Weil, that ethical walls may screen out conflicted lawyers; this further
13  shows that Kirk is an outlier—not, as Glaser Weil suggests, established law in
14  California.  See, e.g., Don J. DeBenedictis, Bar Updates Rules, Nixes 'Screening' Of
15  Conflict Clients, Los Angeles Daily Journal (July 27, 2010).

16       Even assuming that Kirk were the law, it would not save Glaser Weil here.  In
17  Kirk, the "tainted" attorney had already left the firm whose representation was being
18  challenged.  See Kirk, 183 Cal. App. 4th at 815-16.  That fact is highly significant,
19  because "[w]here tainted attorneys and nontainted attorneys are working together at
20  the same firm, there is . . . a pragmatic recognition that the confidential information
21  will work its way to the nontainted attorneys at some point," but when the tainted
22  attorney is gone, the court can conduct a "dispassionate assessment of whether
23  confidential information was actually exchanged."  See Goldberg, 125 Cal. App. 4th
24  at 765 (emphasis added and internal quotation marks and citation omitted).  By
25  contrast, Ms. Basinger is currently at Glaser Weil; there is no way to ensure
26  preservation of Mattel's confidences other than through vicarious disqualification.
27  See id.; Henriksen, 11 Cal. App. 4th at 114-15; Meza, 176 Cal. App. 4th at 978-80;
28  Openwave, 2010 WL 1687825, at *5 (refusing to extend Kirk to permit the use of an

-7-

1 | ethical wall for existing attorney in light of the substantial relationship between
2 | matters).

3 |      Even <u>Kirk</u> recognizes that in an egregious case such as this one, where an
4 | attorney worked on the other side of the same litigation, an ethical wall cannot
5 | "cure" the conflict. See <u>Kirk</u>, 183 Cal. App. 4th at 800 & n.20 ("[V]icarious
6 | disqualification should be automatic in cases of a tainted attorney possessing actual
7 | confidential information from a representation, who switches sides in the same
8 | case."); <u>see</u> <u>also</u> <u>Openwave</u>, 2010 WL 1687825, at *5 (although <u>Kirk</u> may have
9 | "arguably" broken some new ground, "[t]his Court would have to break far more
10 | new ground . . . to disregard its conclusion that there is a substantial relationship
11 | between the [prior representation] and this action, and not [vicariously] disqualify
12 | [the firm] under the facts here").

13 |      *No* state or district court in California has ever suggested an ethical wall could
14 | overcome vicarious disqualification under the circumstances of this case. See, e.g.,
15 | <u>Lucent</u>, 2007 WL 1461406, at *4 ("[N]o district court cases in the Ninth Circuit
16 | have permitted the presumption to be rebutted where the conflict was generated in
17 | the context of a single litigation"); <u>I-Enterprise Co. v. Draper Fisher Jurvetson</u>
18 | <u>Mgmt. Co. V, LLC</u>, No. C-03-1561, 2005 WL 757389, at *6 (N.D. Cal. Apr. 4,
19 | 2005) (same); <u>Flatt</u>, 9 Cal. 4th at 283 ("If an attorney is disqualified because he
20 | formerly represented and therefore possesses confidential information regarding the
21 | adverse party in the current litigation, vicarious disqualification of the entire firm is
22 | compelled as a matter of law); <u>Henriksen</u>, 11 Cal. App. 4th at 117 (same); <u>Meza</u>,
23 | 176 Cal. App. 4th at 979 (an ethical screen will not preclude disqualification of
24 | entire firm, especially where the attorney's conflict is due to prior representation of
25 | adverse party in the same matter).

26 |
27 |
28 |

MATTEL'S MOTION TO DISQUALIFY GLASER WEIL

II.   **NONE OF THE OTHER ARGUMENTS GLASER WEIL MAKES AGAINST DISQUALIFICATION IS PERSUASIVE, OR EVEN RELEVANT**

Glaser Weil's correspondence alludes to several other arguments that Glaser Weil apparently intends to make to avoid disqualification.  None of these is sufficient to avoid disqualification of the Glaser Weil firm:

• <u>Glaser Weil represented MGA in this action "in the past"</u> – Glaser Weil previously represented MGA in this action, withdrew before the Phase I.A. trial, and then appeared briefly after that trial, withdrawing again in 2009.   That Glaser Weil represented MGA in this action before it had a conflict does not in any way support the position that Glaser Weil may resume the representation now that it has a conflict.  Courts routinely disqualify firms that have represented clients for years when a tainted attorney joins the firm.  <u>See</u> <u>supra</u> pp. 4-8.

• <u>Jim Asperger "represented MGA at O'Melveny & Myers"</u> – This statement is irrelevant and simply false.  Mr. Asperger, a white collar partner, joined Quinn Emanuel in 2009.  Unlike Ms. Basinger, he did no work on <u>MGA v. Mattel</u>, and there is and can be no suggestion that Mr. Asperger has any MGA confidential information that is relevant to this case.  Prior correspondence confirms this.

• <u>Glaser Weil hired Ms. Basinger "from the firm of McDermott, Will & Emery, not Quinn Emanuel"</u> – So what?  Disqualification is mandatory if there is a substantial relationship between the former and current representations.  <u>See</u> <u>supra</u> Section I.A.  It does not matter whether, after obtaining Mattel's material confidences, Ms. Basinger worked at other firms before joining Glaser Weil.

• <u>Ms. Basinger "may have had a limited role in Mattel matters as a low-level associate many years ago"</u> – In reality, Ms. Basinger was a senior associate and Of Counsel, a 5- to 9-year lawyer for Mattel, not a "low-level associate."  Ms. Basinger billed over 1,400 hours to Mattel matters, including this litigation and another substantially related matter, during that period.  *Id.*  Work by associates far

1  junior to Ms. Basinger, or who billed fewer hours, has supported disqualification

2  orders.  See, e.g., I-Enterprise, 2005 WL 757389, at *6 (disqualification of entire

3  firm because it hired attorney who billed one-half hour to the same litigation prior to

4  switching firms); Hitachi, 419 F. Supp. 2d at 1159-61 (ordering disqualification of

5  entire firm, despite claim that associate's prior work for other side on a related

6  matter was "primarily document review" and despite ethical wall); Largo, 2008 WL

7  53128, at *1-5 (disqualification of entire firm despite claim that transferring

8  associate performed 9.8 hours of work as essentially "a paralegal" in a related

9  matter, despite associate's testimony that he did not review anything that would be

10  of use in the pending litigation, and despite ethical wall); Pound , 135 Cal. App. 4th

11  at 80 (attorney associated into case who had a one-hour meeting with counsel for the

12  other side three years earlier required vicarious disqualification of firm).

13      •    "There had already been a trial . . . when we hired" Ms. Basinger –

14  That the Phase I.A trial occurred in 2008 is irrelevant.   There is no rule permitting

15  tainted law firms to participate in subsequent trials notwithstanding disabling

16  conflicts.  See, e.g., I-Enterprise, 2005 WL 757389, at *8 (although the remedy of

17  disqualification "is a harsh one, particularly when it comes late in the litigation," no

18  case has denied qualification on grounds of prejudice or expense).  The same

19  analysis applies; no matter what the stage of the case, Glaser Weil should be

20  disqualified because it decide to hire an attorney who had represented Mattel on

21  substantially related matters, including work on the other side of this very case.

22       The inapplicable and irrelevant arguments proffered by Glaser Weil in its

23  correspondence only confirm what the law requires:   Glaser Weil should be

24  disqualified because it chose to bring in an attorney who had worked on the other

25  side of this case.   No amount of "walls" or excuses can save Glaser Weil from this

26  legally required result.

27

28

-10-

## __Conclusion__

For the foregoing reasons, Mattel respectfully requests that the Court grant its motion to disqualify Glaser Weil from representing MGA in this litigation.

DATED:  December 10, 2010          QUINN EMANUEL URQUHART &
                                   SULLIVAN. LLP


                                   By _/s/ John B. Quinn_____
                                     John B. Quinn
                                     Attorneys for Mattel, Inc. and
                                     Mattel de Mexico. S.A. de C.V.

MATTEL'S MOTION TO DISQUALIFY GLASER WEIL

# Exhibit 1

EXHIBIT _/_

PAGE _/2_

LINKS: 30, 39, 40

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GLAXO GROUP LIMITED, ET AL.,** | Case No. SA 10-CV-2764-MRP (FMOx) |
| Plaintiff, | **ORDER RE: MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS** |
| v. | |
| **GENENTECH, INC., ET AL.,** | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiffs Glaxo Group Limited and GlaxoSmithKline LLC (collectively, "GSK") seek declaratory judgment against Genentech, Inc. ("Genentech") and City of Hope (collectively, "Defendants") that U.S. Patent No. 6,331,415 (the "Cabilly II patent") is invalid, unenforceable and not infringed by the manufacture, use, sale, offer to sell, or importation of GSK's Arzerra™ antibody product.  Complaint ¶1.  Arzerra™ is a human monoclonal antibody that was approved by the U.S. Food and Drug Administration for the treatment of chronic lymphocytic leukemia patients.  Complaint ¶27, 30; Answer ¶27, 30.

Genentech brought a motion to disqualify Howrey LLP ("Howrey") from this case because Henry Bunsow, a partner at Howrey, represented Genentech in a case that is alleged to be substantially related to this case.

Exhibit _____/_____

Page _____/_____

## II.   BACKGROUND

### A.  Background of the Cabilly I and Cabilly II Patents

On April 3, 1983, Shmuel Cabilly et al. filed a patent application that issued on March 28, 1989 as U.S. Patent No. 4,816,567 (the "Cabilly I patent"). Complaint ¶13; Answer ¶13. The Cabilly I patent was assigned to Defendants. Complaint ¶13; Answer ¶13. At the time the Cabilly I patent issued, Defendants had a continuation application pending that later issued as the Cabilly II patent. Complaint ¶14; Answer ¶14.

Celltech Therapeutics Ltd. ("Celltech") is the owner of U.S. Patent No. 4,816,397 (the "Boss patent"), which has a priority date of March 25, 1983. Complaint ¶¶14-16; Answer ¶¶14-16. Defendants copied claims from the Boss patent, as is standard practice, to initiate an interference proceeding to determine whether the Boss patentees or the Cabilly patentees were entitled to priority for the inventions claimed in the respective patents. Complaint ¶14; Answer ¶14. In February 1991, the U.S. Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("the BPAI") declared a patent interference between the pending Cabilly II patent application and the Boss patent. Complaint ¶15; Answer ¶15. Seven years later, in August 1998, the BPAI found that the Boss patentees were entitled to priority over the Cabilly patentees. Complaint ¶15; Answer ¶15; *see Cabilly v. Boss*, 55 U.S.P.Q.2d 1238 (B.P.A.I. 1998).

In October 1998, Genentech filed an action under 35 U.S.C. §146 against Celltech to appeal the decision of the BPAI awarding priority to the Boss patent (the "Celltech case"); the parties later settled the case in March 2001 pursuant to a confidential settlement agreement. Complaint ¶16; Answer ¶16; *Genentech, Inc. v. Celltech Therapeutics Ltd.*, Case No. C98-3926 (N.D. Cal.). Pursuant to Celltech and Genentech's confidential settlement agreement, the court ordered the PTO to vacate its BPAI decision in the interference case, revoke the Boss patent, and grant the Cabilly II patent. *Genentech, Inc. v. Celltech Therapeutics, Ltd.*, 2001 U.S. Dist. LEXIS 3489, at *7-9 (N.D. Cal. Mar. 16, 2001). Although the PTO refused to act in response to the

Exhibit _____1_____

Page _____14_____

1  court's order, subsequent proceedings resulted in the issuance of the Cabilly II patent on

2  December 18, 2001.

3              **B.  Background of the Chiron Case**

4         Chiron Corp. filed a patent infringement case against Genentech on June 7, 2000

5  ("the Chiron case").  *Chiron Corp. v. Genentech Inc.*, Case No. S-00-1252 (E.D. Cal.).

6  Notably, the Chiron case was filed less than two years after the BPAI decision in the

7  interference case between the Cabilly II patent application and the Boss patent.  While

8  the Chiron case was pending, the Celltech case settled, resulting in the issuance of the

9  Cabilly II patent in 2001.  As a continuation of the Cabilly I patent, the Cabilly II patent

10  shares a specification with the Cabilly I patent.

11         A jury trial in the Chiron case took place in August and September of 2002.

12  *Chiron Corp. v. Genentech Inc.*, Civ. S-00-1252 (E.D. Cal.).  GSK and Genentech

13  dispute how the Cabilly I patent was used in the Chiron case.  The Court understands that

14  the Cabilly I patent was used in the Chiron case as follows:  In its summary judgment

15  order in the Chiron case, the court declared that the Cabilly I patent disclosed chimeric

16  antibodies in 1983.  *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1148, 1157 (E.D.

17  Cal. 2002).  In the Chiron trial, Genentech used the Cabilly I patent to support its

18  argument that Chiron did not enable or adequately describe chimeric or hybrid antibodies

19  as claimed in the patent at issue ("the Ring patent").  Garner Decl., Ex. B. at 3-5;  Nathan

20  Decl., Ex. F at 000138-39, Ex. G at 000178-79, Ex. H.

21         Bunsow was one of three lawyers of Keker & Van Nest LLP to appear and argue

22  at trial on behalf of Genentech in the Chiron case.  *See* Nathan Decl., Ex. I at 000192.

23  Bunsow examined witnesses at trial to support the argument that Chiron did not

24  adequately enable or adequately describe chimeric or hybrid antibodies in the patent at

25  issue.  *See* Nathan Decl., Ex. I at 000194.  Prior to trial in the Chiron case, Bunsow

26  defended the depositions of Sean Johnston, Genentech's General Counsel, and Wendy

27  Lee who prosecuted the Cabilly II patent.  Nathan Decl., Ex. C-D.  Bunsow is now a

28  member of Howrey, the firm hired by GSK in this case.  Howrey began to represent GSK

-3-

Exhibit_____/_____

Page_____/5_____

1   in this case on or about January 27, 2010, and later imposed an ethical screen on Bunsow

2   on or about March 11, 2010.  Day Decl. ¶3;  O'Brien Decl. ¶5.

### III.   THE LEGAL STANDARD

4   Under Central District Local Rule 83-3.1.2, each attorney must comply with "the

5   standards of professional conduct required of members of the State Bar of California and

6   contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of

7   California, and the decisions of any court applicable thereto."  According to California

8   Rule of Professional Conduct 3-310(E), absent a written waiver from the client or former

9   client, an attorney must not "accept employment adverse to the client or former client

10  where, by reason of the representation of the client or former client, the member has

11  obtained confidential information material to the employment."  When a former client

12  seeks to disqualify a former attorney from representing an adverse party, the former client

13  need not prove actual possession of confidential information by the former attorney;

14  instead, courts presume possession of confidential information if there is a "substantial

15  relationship between the former and current representation."  *H. F. Ahmanson & Co. v.*

16  *Salomon Bros.*, 229 Cal. App. 3d 1445, 1452 (1991) (citing *Global Van Lines v. Superior*

17  *Court*, 144 Cal. App. 3d 483, 489 (1983)) (internal quotation omitted).  "The 'substantial

18  relationship' test mediates between two interests that are in tension in such a context—

19  the freedom of the subsequent client to counsel of choice, on the one hand, and the

20  interest of the former client in ensuring the permanent confidentiality of matters disclosed

21  to the attorney in the course of the prior representation, on the other."  *Flatt v. Superior*

22  *Court*, 9 Cal. 4th 275, 283 (1994).

23  The substantial relationship test requires that the former client "demonstrate a

24  '*substantial relationship*' between the subjects of the antecedent and current

25  representations."  *Id.*  The subject of the representations includes information material to

26  "the evaluation, prosecution, settlement or accomplishment of the litigation or transaction

27  given its specific legal and factual issues."  *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal.

28  App. 4th 698, 713 (2003).  After a substantial relationship has been shown to exist,

-4-

Exhibit _____/_____

Page _____/6_____

1    "courts ask whether confidential information material to the current dispute would

2    normally have been imparted to the attorney by virtue of the nature of the former

3    representation." *Ahmanson*, 229 Cal. App. 3d at 1454.  It is reasonable to expect that

4    "the attorney may acquire confidential information about the client or the client's affairs

5    which may not be directly related to the transaction or lawsuit at hand but which the

6    attorney comes to know in providing the representation to the former client with respect

7    to the previous lawsuit or transaction." *Jessen*, 111 Cal. App. 4th at 712.  In presuming

8    what confidential information material to the current dispute was likely disclosed to the

9    attorney, "the court should not allow its imagination to run free with a view to

10   hypothesizing conceivable but unlikely situations in which confidential information

11   'might' have been disclosed which would be relevant to the present suit." *Talecris*

12   *Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, 491 F. Supp. 2d 510, 515 (D. Del. 2007)

13   (citation omitted).

14          When a substantial relationship between the former and current representation by

15   an attorney is established, not only is the attorney disqualified, but the disqualification

16   extends vicariously to the attorney's law firm. *Flatt*, 9 Cal. 4th at 283.

17                                  **IV.    DISCUSSION**

18          The Court first considers whether there is a substantial relationship between the

19   subjects of representation in the Chiron case and this case.  The subject of the

20   representation is understood to be broader than the witnesses Bunsow prepared and the

21   documents that Bunsow introduced into evidence on behalf of Genentech in the Chiron

22   case.  The subject of Bunsow's representation includes the "the evaluation, prosecution,

23   settlement or accomplishment of the litigation or transaction given its specific legal and

24   factual issues." *Jessen*, 111 Cal. App. 4th at 713.  The subject of evaluating and

25   prosecuting the Chiron case included an understanding of the Cabilly I patent and how it

26   related to Genentech's arguments on enablement and written description.  To present

27   testimony at trial regarding the Cabilly I patent, Bunsow had to be reasonably acquainted

28   with the Cabilly I patent and its specification such that he could prepare witnesses,

                                            -5-

                                                        Exhibit____/____
                                                        Page_____/7____

1    defend their depositions, and examine them at trial on the subject of the Cabilly I patent.

2    GSK would have the Court believe that because Cabilly II was not at issue in the Chiron

3    case, there is no substantial relationship between the subjects of representation in the

4    Chiron case and this case.  However, because the specifications of the Cabilly I and

5    Cabilly II patents are the same and because the specification of a patent is the basis for

6    the claims, there is a relationship between the subjects of representation in these cases.

7    Furthermore, because the Celltech case involving the Cabilly II patent application was

8    being simultaneously litigated, a trial attorney employing the Cabilly I patent to attack the

9    validity of the Ring patent in the Chiron case could hardly have failed to be cognizant of

10   the strategy in the Celltech case.  Bunsow's representation of Genentech in the Chiron

11   case would necessarily have resulted in an evaluation of the Cabilly I in light of the

12   Cabilly II patent.  Therefore, the Court finds that there is a substantial relationship

13   between the subjects of representation in the Chiron case and this case.

14          Next, after evaluating the scope of the prior representation, courts inquire what

15   confidential information would have been imparted to an attorney given the scope of that

16   representation.  *See Ahmanson*, 229 Cal. App. 3d at 1454.  As stated, it is reasonable to

17   presume that Bunsow—a member of a three person trial team in the Chiron case with

18   important responsibilities such as defending the deposition of the Genentech General

19   Counsel and patent prosecutor of the Cabilly II patent—acquired confidential information

20   about Genentech's patent strategy surrounding the Cabilly I and Cabilly II patents.  Given

21   that the Cabilly I and Cabilly II patents shared a specification and Genentech was

22   simultaneously litigating the Celltech case, it would have certainly been important that

23   nothing in the Chiron case defense strategy impair Genentech's ability to enforce and

24   defend the Cabilly II patent.  To act as competent counsel to Genentech, Bunsow would

25   have to have acquired confidential information material to this case.  It could hardly have

26

27

28

Exhibit___1___

Page___18___

1   been otherwise, especially considering the importance and value of the Cabilly I and

2   Cabilly II patents.[1]

3          GSK cites *Kirk v. First American Title Insurance Company* for the proposition

4   that the presumption of an imputed conflict can be rebutted by adequately screening a

5   lawyer from those at the firm representing the adverse party.  183 Cal. App. 4th 776

6   (2010).  However, GSK cannot rely on *Kirk* because it is not binding authority and

7   contradicts binding California Supreme Court law.  *See Flatt*, 9 Cal. 4th at 283 ("Where

8   the requisite substantial relationship between the subjects of the prior and the current

9   representations can be demonstrated . . . disqualification of the attorney's representation

10  of the second client is mandatory; indeed, the disqualification extends vicariously to the

11  entire firm.").  Even if the Court were to follow *Kirk*, GSK would not be able to rebut the

12  presumption of an imputed conflict because it did not adequately screen Bunsow from

13  this case.  *Kirk* states than an effective screen must "be timely imposed" and impose

14  "preventative measures to guarantee that information will not be conveyed."  *Id.* at 810.

15  Here, it is clear that Howrey did not impose the screen at the time the representation

16  began on or about January 27, 2010, but only imposed the screen at the time Genentech

17  raised the conflict to Howrey's attention on or about March 11, 2010.  Day Decl. ¶3;

18  O'Brien Decl. ¶5.  Howrey's screen does not meet the "timely imposed" requirement

19  under *Kirk* because the screen was imposed weeks after the representation began.

20         Genentech objects to Howrey's declaration from Professor David C. Hricik on the

21  grounds that his opinions state legal conclusions and lack foundation.  This Court

22  _____

23  [1] "[T]he court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely

24  situations in which confidential information 'might' have been disclosed which would be relevant to the present
    suit." *Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, 491 F. Supp. 2d at 515 (citation omitted).  Because this

25  Court has deep experience with the Cabilly II patent and its history as a continuation of the Cabilly I patent, this
    Court is well situated to make a presumption about what confidential information would have been necessary to

26  execute the trial strategy in the Chiron case.  This Court has handled two notable cases involving the Cabilly II
    patent.  In *MedImmune*, a licensee of the Cabilly II patent brought a declaratory relief action seeking to have the

27  Cabilly II patent declared infringed, invalid, and unenforceable. *See MedImmune, Inc. v. Genentech, Inc.*, No. 2:03-
    cv-02567 (C.D. Cal. filed Apr. 11, 2003).  The case settled after years of litigation that included extensive discovery,

28  claim construction, an appeal, and a decision by the United States Supreme Court.  In *Centocor*, another licensee of
    the Cabilly II patent filed a declaratory relief action raising the same claim construction, validity, and enforceability
    issues. *See Centocor Inc. v. Genentech, Inc.*, No. 2:08-cv-03573 (C.D. Cal. filed May 30, 2008).

Exhibit ___1___

Page ___19___

1  declines to address Genentech's objection.  Because Prof. Hricik did not discuss the
2  Celltech case and its relationship to the Cabilly I and Cabilly II patents and the Chiron
3  case, the Court places little weight on Prof. Hricik's declaration.  Prof. Hricik is
4  obviously unaware of the extraordinary history of the Cabilly I and II patents.

5       Because the Court finds a substantial relationship between Bunsow's former
6  representation of Genentech and Howrey's current representation of GSK, the Court
7  **GRANTS** Genentech's motion to disqualify Howrey from the representation of GSK in
8  this case.  Although the Court finds Genentech's arguments that the use of evidence on
9  Herceptin in the Chiron case and this case result in a substantial relationship, the Court
10 declines to address Herceptin given its finding of a substantial relationship for the reasons
11 set forth above.   The Court further declines to address Genentech's arguments on the
12 violation of the duty of loyalty although in this case it is undisputed that Howrey intends
13 to make a full scale attack on the Cabilly II patent on multiple grounds including written
14 description and enablement.

15                            **V.     CONCLUSION**

16      The Court **GRANTS** Genentech's motion to disqualify Howrey from this case.
17 The Court **ORDERS** Howrey to refrain from handing over its work product to successor
18 counsel until further order of this Court.  The Court **ORDERS** Genentech to prepare a
19 proposed Statement of Uncontroverted Facts and Conclusions of Law and proposed
20 Order in light of the foregoing and submit it to the Court by Friday, June 25, 2010.

21      **IT IS SO ORDERED.**

22                                      *Mariana R. Pfaelzer*

23 DATED:June 15, 2010             _____
24                                 Hon. Mariana R. Pfaelzer
                                   United States District Judge
25
26
27
28

                                   -8-

Exhibit_____1_____
Page_____28_____