QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>            Defendants.<br><br>———————————————<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br><u>Hon. David O. Carter</u><br><br>MATTEL'S REPLY TO MGA ENTERTAINMENT, INC.'S RESPONSE TO MATTEL, INC.'S STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW<br><br>Date:   December 20, 2010<br>Time:   TBA<br>Place:  Courtroom 9D |

## REPLY TO STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 1.    Information that is generally known to the public or to persons in the relevant industry is not a trade secret. Cal. Civ. Code § 3426.1 ("'Trade secret' means information . . .that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."); <u>American Paper & Packaging Prods., Inc. v. Kirgan</u>, 183 Cal. App. 3d 1318 (1986) 183 Cal. App. 3d at 1318 (compilation of publicly available information is readily ascertainable and thus not a trade secret). | **UNCONTESTED** that Cal. Civ. Code § 3426.1 defines what is and is not a trade secret. **CONTESTED** that California's Uniform Trade Secret Act does not protect a "compilation of publicly available information is readily ascertainable and thus not a trade secret." This is an over-simplification of the law, *see, e.g., Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278 (1990), which this Court need not resolve because MGA's trade secrets are not a compilation of publicly available information that is readily ascertainable. |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** MGA's response fails to dispute that information that is generally known to the public or to persons in the relevant industry is not a trade secret. ||
| 2.    "The essence of a trade secret is that it derives its value from secrecy." <u>Stromback v. New Line Cinema</u>, 384 | **UNCONTESTED**. |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| F.3d 283, 305 (6th Cir. 2004); Cal. Civ. Code §3426.1(d). Thus, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information ... his property right is extinguished." <u>See</u> <u>Ruckelshaus v.</u> <u>Monsanto Co.,</u> 467 U.S. 986, 1002 (1984) . | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

> Uncontested.

| 3.      Displaying products at trade shows is the type of conduct that destroys trade secret status for those products.  <u>See</u> <u>VSL Corp. v. Gen.</u> <u>Techs. Inc.,</u> 1997 WL 654103, at *3 (N.D. Cal. Jul. 21, 1997) (granting summary judgment for defendant on plaintiff's trade secret claims because "[plaintiff] displayed the duct at trade shows and distributed marketing information about the duct which provided drawings and measurements. [Plaintiff] never required that anyone sign a confidentiality agreement before being given samples and other data.") | **CONTESTED.**  For the reasons set forth in MGA's Opposition to Mattel's Motion for Partial Summary Judgment, these cases have no application to this case and the facts of these cases are distinguishable. |

-3-
MATTEL'S REPLY RE STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| (citations omitted)); <u>Marine Pile Drivers, LLC v. Welco, Inc.</u>, 988 So.2d 878, 881-82 (La. Ct. App. 2008) (upholding trial court's finding that plaintiff failed to take reasonable efforts to maintain the secrecy of its barge design because "[t]he barge was marketed at trade shows and pictured on websites and in pamphlets."). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that displaying products at trade shows is the type of conduct that destroys trade secret status for those products.

| 4.    A party seeking to protect a trade secret must show that it undertook "efforts that are reasonable under the circumstances to maintain its secrecy." Civ. Code §3426.1; <u>see</u> <u>Tax Track Sys. Corp. v. New Investor World, Inc.</u>, 478 F.3d 783, 788 (7th Cir. 2007) (no reasonable jury could find that plaintiff took reasonable efforts to keep a memo confidential where, *inter alia*, it distributed the memo to 600-700 people and only sought confidentiality agreements from 190 of them, and the effort of storing the memo exclusively | **UNCONTESTED** that Civ. Code §3426.1 provides that a party seeking to protect a trade secret must show that it undertook "efforts that are reasonable under the circumstances to maintain its secrecy." |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| on a password-protected computer was "entirely undermined" by the "widespread nonconfidential disclosure of the memo to hundreds of outsiders."). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA concedes that a party seeking to protect a trade secret must show that it undertook "efforts that are reasonable under the circumstances to maintain its secrecy."

| 5.    Self-serving testimony that a product is a trade secret is insufficient as a matter of law to defeat summary judgment. Multimedia Games, Inc. v. Network Gaming Intern. Corp., 1999 WL 33914442, *5 (N.D. Okla. 1999) (conclusory, self-serving statements that products were trade secrets insufficient to overcome summary judgment). | IMMATERIAL. MGA has presented evidence that what it claims are trade secret are, in fact, trade secret. Multimedia Games, Inc. v. Network Gaming Intern. Corp., 1999 WL 33914442, *5 (N.D. Okla. 1999), concerned a failure of proof not at issue in this case. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that self-serving testimony that a product is a trade secret is insufficient as a matter of law to defeat summary judgment.

| 6.    The best evidence rule requires that the original of a writing be used to prove the contents thereof. Fed. R. Evid. 1002. | IMMATERIAL. "The Best Evidence Rule provides that 'the production of the original document is required to prove the contents of a writing.' Fed. R. Evid. P. 1002. If a witness's testimony is based on his first-hand knowledge of an |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | event as opposed to his knowledge of the document, however, then Rule 1002 does not apply." *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648- 49 (7th Cir. 2006). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that the best evidence rule requires that the original of a writing be used to prove the contents thereof.

| | |
|---|---|
| 7.    Full disclosure to the general public at large is not required to vitiate trade secret status; once a trade secret is disclosed to someone who is under no obligation to protect the confidentiality of the information, the property right in that trade secret is extinguished. Ruckelshaus., 467 U.S. at 1002; De Lage Landen Operational Servs, LLC v. Third Pillar Sys., Inc., 693 F. Supp. 2d 423, 440 (E.D. Pa. 2010) ("Where a plaintiff has freely disclosed the information without the protection of a confidentiality agreement, it cannot claim a trade secret.") (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 923 F. Supp. 1231, 1254 (N.D. Cal. 1995)). | **UNCONTESTED**. |

| A.   Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| **MATTEL'S REPLY TO MGA'S RESPONSE:** <br> Uncontested. | |
| 8.      Publicly-advertised products cannot maintain trade secret status.  See <u>Ruckelshaus</u>., 467 U.S. at 1002. "Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished." <u>Stutz Motor Car of America, Inc. v. Reebok International, Ltd.</u>, 909 F.Supp. 1353, 1359 (C.D.Cal.1995) aff 'd 113 F.3d 1258 (9th Cir.1997). | **UNCONTESTED**. |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** <br>         MGA concedes that publicly-advertised products cannot maintain trade secret status. | |
| 9.      The fact that trade secrets are "readily ascertainable" is a defense. <u>See Brescia v. Angelin</u>, 172 Cal.App.4th 133 (2009) ("that the alleged trade secret is readily ascertainable by proper means is a defense to the element of misappropriation."). | **UNCONTESTED**. |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** <br>         Uncontested. | |
| 10.      Where a plaintiff fails to offer evidence of damages for certain of his | **IMMATERIAL AND CONTESTED.** <br> MGA has provided evidence of |

| A.  Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| claims, having instead only responded to interrogatories seeking information on damages that such information would be the subject of an expert damages report but never produces such an expert report, the plaintiff is unable to provide sufficient evidence by which a jury could determine damages. <u>Weinberg v. Whatcom County</u>, 241 F.3d 746 (9th Cir. 2001); <u>see also</u> <u>O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.</u>, 399 F.Supp.2d 1064, 1077 (N.D. Cal. 2005) (jury was "without sufficient evidence, or a reasonable basis" to determine damages where expert failed to quantify damages as to each individual trade secret). | damages. Moreover, once a trade secret information is acquired, used, or disclosed through improper means, the trade secret owner has lost a property interest, and harm is presumed. *Ruckelhaus v. EPA*, 467 U.S. 986, 1012 (1979) (finding property right in trade secrets); *see also TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 1028254 at *8 (N.D. Cal. Mar. 18, 2010) ("California courts have presumed irreparable harm when proprietary information is misappropriated."). *Weinberg v. Whatcom County*, 241 F.3d 746 (9th Cir. 2001), is a Washington state case dealing with a state and federal "takings claim." Such claims "require proof that the regulatory action caused deprivation of all economic use" and takings claims are rooted in the notion that no private property shall be taken for public or private use without just compensation. *Id.* at 751-752.  No such rule applies in the trade secret context and *Weinberg* is inapplicable. *See Ruckelhaus*, 467 U.S. at 1012; *TMX* |

| A.  Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | *Funding*, 2010 WL 1028254 at *8.  In *O2 Micro Intern. Ltd. v. Monolithic Power Sys.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005), the court set aside the jury's $12 million unjust enrichment award because plaintiff's damages calculation were based on an assumption that all the trade secrets were misappropriated and the jury found that only one of them resulted in the defendant being unjustly enriched.  However, the Court granted reasonable royalty based upon the expert's determination as to what the parties would have paid as reasonable royalty for any one group of trade secrets.  *O2 Micro*, 399 F. Supp. 2d at 1077-78. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response misapprehends the conclusion of law.  Mattel does not argue that MGA cannot recover solely because its expert provides no basis for damages for the vast majority of allegedly stolen "trade secrets"; MGA also cannot recover unjust enrichment or a reasonable royalty because Mr. Malackowski has provided no evidentiary basis upon which MGA could do so.  See O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005) (expert must provide an evidentiary basis for a reasonable royalty).

| 11. An "eleventh hour change" in an | **IMMATERIAL**. The facts in the |
|---|---|

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
| --- | --- |
| expert testimony is harmful to an opposing party who "would have had to scrap much of its earlier preparation in favor of a frantic, last-minute scramble" to investigate new theories "during the last few days of the pretrial period. "Thibeault v. Square D Co., 960 F.2d 239, 247 (1st Cir. 1992); see also Toomey v. Nextel Communications, Inc., 2004 WL 5512967, * 13 (N.D. Cal. 2004) (excluding damages calculation not disclosed in initial expert report because opposing party "would have to address it for the first time in the midst of its final trial preparations"). | current action are different than the cases cited.  In *Thibeault v. Square D Co.*, 960 F.2d 239 (1st Cir. 1992), the plaintiff did not identify the experts he intended to call at trial until four days before start of trial. Four days before trial, Plaintiff served a supplemental response identifying seven experts who would testify at trial and disclosed a new theory of liability that had not been disclosed before.  *Id*. at 241-42. The court precluded plaintiff's proffered expert testimony. In *Toomey v. Nextel Commc'ns*, 2004 WL 5512967 (N.D. Cal. 2004), plaintiff's expert acknowledged at his deposition that his expert report contained computational errors. But, the expert did not inform defendant how he would correct his calculations. Before trial, the expert attempted to correct his damages calculations based on new assumptions. The court excluded any testimony based on new assumptions and calculations that had not been previously disclosed to the defendant. Neither of the cases |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
|  | discussed above are applicable to the current action. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that an "eleventh hour change" in an expert testimony is harmful to an opposing party and a basis for exclusion.

| 12.     Federal Rule of Civil Procedure 26(e)(1) requires to experts to disclose their theories based on the available evidence in their initial reports. O'Connor v. Boeing North American, Inc. 2005 WL 6035243, *7 (C.D. Cal. 2005) (barring supplemental expert testimony proffered two months before trial because "[t]o permit these reports into evidence would improperly widen the trial issues at the eleventh hour, and would unduly prejudice Defendants in preparing for trial. Moreover, the new opinions appear based on information that was available to these experts at the time of their initial Rule 26 disclosures."). | **CONTESTED AND IMMATERIAL.** Federal Rule of Civil Procedure 26(e)(1) requires a party to supplement its disclosures and responses in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. Federal Rule of Civil Procedure 26(e)(1). Federal Rule of Civil Procedure 26(e)(2) requires a party to supplement an expert's report and information given during the expert's deposition. Federal Rule of Civil Procedure 26(e)(2). The case cited, *O'Connor v. Boeing N. Am., Inc.*, 2005 WL 6035243, *7 (C.D. Cal. 2005), is inapplicable as the facts in the current action are different.  In *O'Connor*, the court excluded plaintiff's supplemental expert reports submitted two months after the close of expert discovery that |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | disclosed entirely new opinions not disclosed in their original reports, nor previously asserted during their deposition. The facts in the current action are different. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that <u>Federal Rule of Civil Procedure</u> 26 requires experts to disclose their theories based on the available evidence in their initial reports.

| 13.     18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs" through the commission of two or more statutorily defined crimes" – which RICO calls "a pattern of racketeering activity." 18 U.S.C. § 1962(c). | **UNCONTESTED**. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Uncontested.

| 14.     The elements of a civil RICO claim under § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to Plaintiff's business of property." <u>Living</u> | **UNCONTESTED** except that Mattel's conclusion of law has a typographical error ("business or property" not "business of property"). |

| A.  Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| Designs Inc. v. E.I. Dupont De Nemours & Co., 431 F.3d 353, 361 (9th Cir. 1995). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

    Uncontested.

| 15.  "'The existence of an enterprise at all times remains a separate element which must be proved by' the plaintiff in order to establish a RICO violation." Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1026 (8th Cir. 2008) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). | **UNCONTESTED**. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

    MGA does not contest this Conclusion of Law.

| 16.  An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Turkette, 452 US at 583. | **UNCONTESTED**. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

    Uncontested.

| 17.  Whether an enterprise exists "depends on objective interconnections and requires a careful scrutiny of the | **UNCONTESTED**. |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| facts." <u>United States v. Feldman</u>, 853 F.2d 648, 657-58 (9th Cir. 1988).  "To establish the existence of such an enterprise, MGA must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 552 (9th Cir. 2007) (quoting Turkette, 452 U.S. at 583).  MGA "must . . . show the existence of an organization among the various [participants] and show that the organization has some continuity." <u>Turkette</u> at 583. | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Uncontested.

| | |
|---|---|
| 18. The "common purpose" requirement reflects that an "association" is a "'collection of persons who have joined together for a certain object.'" <u>Boyle v. United States</u>, 129 S.Ct. 2237, 2244 (2009) (quoting Black's Law Dictionary 156 (rev. 4th ed. 1968)). "'[D]ivergent goals' among members of a purported association-in-fact enterprise is a 'fatal | **UNCONTESTED** that an "association" is a collection of persons joined together for a certain object. CONTESTED that divergent goals are "fatal" to a RICO claim.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (common purpose does not require enterprise members to share all their purposes in common with one another |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| problem' to a RICO claim." <u>Craig Outdoor</u>, 528 F.3d at 1027 (quotation omitted) (RICO claim failed where "[p]laintiffs failed to allege sufficient facts to demonstrate that Viacom and each of the three railroads had a 'common purpose of engaging in a course of conduct."). | and does not require that all members work with one another; finding a single common purpose sufficient). See also Dkt. #9182 (Mattel's Opp. to MGA's MSJ) at 87 (quoting *Odom*). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Uncontested.

| 19. Although the Supreme Court has not decided whether the "common purpose" must be fraudulent, courts in this Circuit and elsewhere recognize that the "hallmark of an enterprise is an association of entities, groups or individuals that 'must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" <u>In re Jamster Marketing Litigation</u>, 2009 WL 1456632, *5 (S.D. Cal. May 22, 2009) (quoting <u>First Capital Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 174 (2d Cir. 2004); <u>see also Chagby v. Target Corp.</u>, 2008 WL | **CONTESTED**.  Enterprises can be legitimate or illegitimate entities, and thus need not share a "fraudulent" purpose.  *U.S. v. Turkette*, 452 U.S. 576, 580-81 (1981).  In any event, even illegitimate enterprises need not be *fraudulent* (e.g., enterprises based on drug distribution, money laundering, extortion, gambling). |

MATTEL'S REPLY RE STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 5686105, * 2 (C.D. Cal. Oct. 27, 2008) (noting that the "law is unsettled as to whether that common purpose must be fraudulent"); <u>Friedman v. 24 Hour Fitness USA, Inc.</u>, 580 F. Supp. 2d 985, 991 (C.D. Cal. 2008) ("The Ninth Circuit has not addressed the precise question of whether a common fraudulent purpose must be alleged."). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

     MGA's response fails to dispute that courts in this Circuit and elsewhere have consistently recognized that "the 'hallmark of an enterprise is an association of entities, groups or individuals that 'must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'"

| | |
|---|---|
| 20.     In practice, an actionable common purpose is almost always a fraudulent one.  <u>See</u>, <u>e.g.</u>, <u>Odom</u>, 486 F.3d at 552 (Microsoft and Best Buy shared "common purpose of increasing the number of people using Microsoft's Internet service through fraudulent means"); <u>Three Rivers Provider Network, Inc. v.  Meritain Health, Inc.</u>, 2008 WL 2872664, at *14 (S.D. Cal. Jul. 23, 2008) (allegation that the | **CONTESTED**. See Response to Conclusion of Law No. 19. Since an enterprise need not be illegitimate, the common purpose of the enterprise's members need not be illegitimate, let alone "fraudulent." |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| defendants and other non-parties "associated together to defraud Plaintiff out of fees and convert Plaintiff's network of discounts" sufficient to allege that defendants "associated together for the common purpose of defrauding Plaintiff"); Alves v. Players Edge, Inc., 2007 WL 6004919, at *10 (S.D. Cal. Aug. 8, 2007) (allegations "sufficiently allege that at least some Defendants, including Player's Edge and National Sports Consultants, associated together for the common purpose of defrauding persons through an illegal betting scheme"); see also Moore v. Verizon Communications, Inc., 2010 WL 3619877, at *5 (N.D. Cal. Sep. 10, 2010) ("Because Plaintiffs' RICO claim is based on fraud, they must establish that the enterprise 'share[d] a common purpose to engage in a particular fraudulent course of conduct and work[ed] together to achieve such purposes.'") (quoting First Capital, 385 F.3d at 174); In re Jamster Marketing Litigation, 2009 WL | |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 1456632 at *5 ("At a minimum, Plaintiffs must set forth particularized allegations that Wireless Providers and Content Provides had the common purpose of increasing their revenues by fraudulent means."); <u>First Capital</u>, 385 F.3d at 174 ("' [F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes'") (citations omitted). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that an actionable common purpose is almost always a fraudulent one.

| | |
|---|---|
| 21.    "An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" <u>Odom</u>, 486 F.3d at 552. | **CONTESTED** to the extent that Mattel intends the word "vehicle" to be defined as synonymous with means or mechanism.  Defendants violate RICO where they are employed by or associated with an enterprise and commit predicate acts of racketeering activity in order to conduct the affairs of that enterprise.  18 U.S.C. §1962(c).  They need not use the enterprise as the |

| A.       Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | means for committing those predicate acts. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that "[a]n ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'"

| 22.     A RICO plaintiff must provide sufficient "evidence that the various associates function as a *continuing unit*." <u>Turkette</u>, 452 U.S. at 583 (emphasis added). This requirement "focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." <u>Odom</u>, 486 F.3d at 553 (citations omitted) While there is no litmus test for how long suffices for a continuing unit, the case law measures it in years, not months.  <u>See id</u>. | **UNCONTESTED.** |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Uncontested.

| 23.     "To establish liability under § 1962(c) one must allege and prove the existence of *two distinct entities*: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, | **UNCONTESTED.** |

| A.       Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 161 (2001) (emphasis added); see also <u>Living Design</u>, 431 F.3d at 361, citing <u>Rae v. Union Bank</u>, 725 F.2d 478, 481 (9th Cir. 1984). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

    MGA does not contest this Conclusion of Law.

| 24.       "A claim for mail fraud or wire fraud must allege that the defendant: '(1) devised [] or intend[ed] to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use[d] the mail [or wires] for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts).'" Dkt. 8423 (quoting <u>Carter v. United States</u>, 530 U.S. 255, 261 (2000)). | **UNCONTESTED**.  *See also* Response to Conclusion of Law No. 25. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

    Uncontested.

| 25.       The focus of the wire fraud statute is on the misuse of the wires. <u>United States v. Garlick</u>, 240 F.3d 789, 792 - 93 (9th Cir. 2001); <u>see also</u> <u>United States v. Molinaro</u>, 11 F.3d 853, 860 (9th Cir. 1993) (purpose of the mail fraud statute is "to prevent misuse of the mails."). Defendant must establish that | **UNCONTESTED** that the wire fraud statute requires the use of the wires in furtherance of the fraudulent scheme. **CONTESTED** that the wiring must be an essential part of the scheme.  Instead, the wiring need only be a "step in the plot" or "incidental to an essential part of the scheme." *U.S. v. Garlick*, 240 |

| A.        Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| use of the wires was incident to an "essential part of the scheme." Pereira v. United States, 347 U.S. 1, 8 (1954). Alleging or identifying misrepresentation is not enough — "in person" misrepresentations do not establish wire fraud. See Tel-Phonic Servs, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992) ("Misrepresentations that occurred at a meeting do not constitute wire or mail fraud"). | F.3d 789, 795 (9th Cir. 2001); Dkt. #8423 at 11-12 (quoting *Schmuck v. U.S.*, 489 U.S. 705, 714 (1989)). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA concedes that that the wire fraud statute requires that the wires be used in furtherance of the fraudulent scheme.  MGA also fails to contest, thereby conceding, that "in person" misrepresentations fail to establish wire fraud.  MGA's further response misapprehends Mattel's argument regarding wire fraud.  Mattel argued that the use of the wires must be "*incident to* an essential part of the scheme." (emphasis added).  Although MGA purports to contest this conclusion, MGA in fact agrees that the wiring must be "*incidental to* an essential part of the scheme." (emphasis added).

| 26.      To avoid summary judgment, a RICO plaintiff must identify specific wire communications that further the fraud.  Manion v. Freund, 967 F.2d 1183, 1186 (8th Cir. 1992) (granting | **UNCONTESTED**. |

| A.        Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| summary judgment in favor of RICO defendant where plaintiff had identified numerous "communications by mail or telephone" but failed to properly specify how "the communications were fraudulent or how they were used in furtherance of the scheme to defraud"). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Uncontested.

| 27.      To establish a criminal copyright infringement predicate act, a RICO plaintiff must prove "infringement, that the infringement was willful, and that it was engaged in for profit." <u>United States v. Wise</u>, 550 F.2d 1180, 1188 (9th Cir. 1977); <u>see also</u> <u>Bryant v. Mattel, Inc.</u>, 573 F. Supp. 2d 1254, 1268 (C.D. Cal. 2007) (quoting <u>United States v. Goss</u>, 803 F.2d 638, 642 (11th Cir. 1986)) (elements are "(1) infringement of a copyright (2) done willfully (3) for purposes of commercial advantage or private financial gain'"). | **UNCONTESTED**.  As for the profit element, "[i]t is irrelevant whether the hope of gain was realized or not. The requirement of profit is intended to delineate commercial infringements from infringements for merely personal use and philanthropic infringements." *U.S. v. Wise*, 550 F.2d 1180, 1195 (9th Cir. 1977) (internal quote omitted). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA does not contest this Conclusion of Law.

| 28.      Criminal copyright infringement | **UNCONTESTED**.  As for the profit |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| incorporates the basic requirements of copyright infringement – proof of ownership and infringement of an exclusive right.  See Entm't Research v. Genesis Creative Group, 122 F.3d 1211, 1217 (9th Cir. 1997) ("To establish copyright infringement, the holder of the copyright must prove both valid ownership of the copyright and infringement of that copyright by the alleged infringer."); Kelly v. L.L. Cool J., 145 F.R.D. 32, 39 (S.D.N.Y. 1992) ("[C]onduct that does not support a civil action for infringement cannot constitute criminal conduct under 17 U.S.C. § 506."). Beyond the civil requirements, however, it must be shown that the infringement was committed willfully, i.e., with the specific knowledge that the actions taken violated copyright laws, and that it be done "for profit."  Wise, 550 F.2d at 1194-945. | element, "[i]t is irrelevant whether the hope of gain was realized or not. The requirement of profit is intended to delineate commercial infringements from infringements for merely personal use and philanthropic infringements." U.S. v. Wise, 550 F.2d 1180, 1195 (9th Cir. 1977) (internal quote omitted). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA does not contest this Conclusion of Law.

| 29.     In general, factual information is | **CONTESTED** to the extent Mattel |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| not subject to copyright protection. <u>See</u> 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); <u>see also Feist Publications, Inc  v. Rural Tel. Serv. Inc.</u>, 499 U.S. 340, 347 (1991) ("Census data . . . do not trigger copyright because these data are not 'original' in the constitutional sense."); <u>Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.</u>, 777 F.2d 485, 491 (9th Cir. 1985) ("Copyright law never protects the facts and ideas contained in published works."); <u>Hoehling v. Universal City Studios, Inc.</u>, 618 F.2d 972, 979 (2d Cir. 1980) (facts ascertained through research not protected by copyright); <u>Publications Int'l v. Meredith Corp.</u>, 88 F.3d 473, 480-81 (7th Cir. 1996) (lists of ingredients and related instructions not | attempts to portray MGA's protectable copyrightable works as merely containing "facts." For example, the court in *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 492 (2d Cir. 1985), found that the expression in a catalog is protectable, stating "[i]t is true, of course, that to whatever extent the expression and arrangement of facts is original, an author is protected against its copying." While *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 980-981 (2d Cir. 1980) noted that some historical facts are exempted from copyright protection to encourage contributions to recorded knowledge, it cautioned that "[a] verbatim reproduction of another work, of course, even in the realm of nonfiction, is actionable as copyright infringement." Further, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991), involved telephone directories, which are readily distinguishable from MGA's catalogs containing original content as |

MATTEL'S REPLY RE STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| entitled to protection because they constitute processes); Triangle Publications, Inc. v. Sports Eye, Inc., 415 F. Supp. 682, 685 n. 9 (E.D. Pa .1976) (data not protected by copyright). | well as arrangement.  Likewise *Publ'ns Int'l v. Meredith Corp.*, 88 F.3d 473, 480-81 (7th Cir. 1996), involved instructions for preparing a dish, which was deemed a "procedure, process [or] system" under Section 102(b); *see also Triangle Publ'ns, Inc. v. Sports Eye, Inc.*, 415 F. Supp. 682, 685-686 (E.D. Pa. 1976) (noting that while "raw data" may not be copyrightable, "the method or form for expressing the data [] is copyrightable"). MGA's catalogs are not like a telephone directory or recipe or mass of raw data—they contain both copyrightable content and comprise a copyrightable form for expressing such content. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that "[i]n general, factual information is not subject to copyright protection."

| 30.      The originator of photograph, as its author, holds the copyright in his or her work.  See Harper & Row Publishers, Inc. v. Nation Enters, 471 U.S. 539, 547 (1985), citing Burrow-Giles Lithographic Co. v. Sarony, 111 | **CONTESTED**. Authorship may vest entirely with an employer.  *See* 17 U.S.C. Section 201(b) ("the employer or other person for whom the work was prepared is considered the author"); 17 U.S.C. Section 101 (work made for hire |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| U.S. 53, 58 (1884); 17 U.S.C. § 201 ("Copyright in a work protected under this title vests initially in the author or authors of the work."). | is "a work prepared by an employee within the scope of his or her employment"); *Mostowfi v. I2 Telecom Int'l Inc.*, 2008 WL 624012, at *1 (9th Cir. Mar. 4, 2008) (employer owns the copyright to the software created by the employee under the work for hire doctrine). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that the originator of a photograph, as its author, holds the copyright in his or her work.  MGA's citations to authority regarding ownership of works-made-for-hire concern a different issue of copyright ownership.

| 31.   "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a); <u>see also</u> <u>Effects Assocs, Inc. v. Cohen</u>, 908 F.2d 555, 556 (9th Cir. 1990) ("[T]he Copyright Act invalidates a purported transfer of ownership unless it is in writing"). | **CONTESTED** to the extent Mattel contends that any writing is required when authorship initially vests with the employer as a work made for hire.  See 17 U.S.C. Section 201(b) ("the employer or other person for whom the work was prepared is considered the author"); 17 U.S.C. Section 101 (work made for hire is "a work prepared by an employee within the scope of his or her employment"); *Mostowfi v. I2 Telecom International Inc.*, 2008 WL 624012, at *1 (9th Cir. Mar. 4, 2008) (employer |

| A.   Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | owns the copyright to the software created by the employee under the work for hire doctrine). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that a transfer of copyright ownership, other than by operation of law, must be made pursuant to a signed writing.

| 32. Non-public dissemination is insufficient as a matter of law to amount to actionable infringement.  See, e.g., Bagdadi v. Nazar, 84 F.3d 1194, 1198 (9th Cir. 1996) ("publication" is characterized by "'the distribution of copies...of a work *to the public* by sale or other transfer of ownership, or by rental, lease, or lending'") (quoting 17 U.S.C. § 101) (emphasis added); see also Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1020 (7th Cir.), cert. denied, 502 U.S. 861, (1991), overr'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) ("[T]he proper inquiry is directed to the nature of the place in which private video booths are located, and whether it is a place where the public is openly invited."); Columbia Pictures Indus., | **CONTESTED.**  Section 106 of the Copyright Act grants the owner not only the exclusive rights to public display and distribution, but also the exclusive rights to reproduction and preparation of derivative works.  Regardless of the audience or public display or distribution, it is well established that reproducing a copyrighted work without the owner's permission is an infringement.  *Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 931 (2d Cir. 1994) (photocopying articles for personal archival use is a copyright infringement and not a fair use); *Harvester v. Rule Joy Trammell LLC*, 716 F.Supp.2d 428, 446 (E.D. Va. 2010) (making a digital copy using a scanner or a physical copy using a photocopier are both copyright |

| A.   Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| Inc. v. Prof'l Real Estate Investors, Inc., 866 F.2d 278, 281 (9th Cir. 1989) (although a hotel is open to the public, the rooms where alleged infringement occurred enjoyed "substantial degree of privacy, not unlike [people's] own homes"). | infringements); *Advance Magazine Publishers Inc. v. Leach*, 466 F.Supp. 2d 628, 637 (D. Md. 2006) (using a scanner to create a digital copy of a work is equivalent to using photocopier to print a physical copy and they are both infringing); *Image Audio Visual Prods., Inc., v. Perini Bldg. Co., Inc.*, 91 F. Supp. 2d 1075, 1079-80, 1086-87 (E.D. Mich. 2000) (defendant's photocopying of plaintiff's photographs was a copyright infringement; that the photocopied photos were used solely in arbitration proceedings does not render them as fair use); *Television Digest, Inc. v. United States Tele. Assoc.*, 841 F. Supp. 5, 7 (D.D.C. 1993) (defendant's photocopying and distributing plaintiff's newsletter among its employees was an infringement of copyright; it did not fall under fair use where defendant profited from not having to purchase additional subscriptions); *Pasha Publ'ns Inc. v. Enmark Gas Corp.*, 1992 WL 70786 (N.D. Tex. Mar. 10, 1992) (defendant's unauthorized photocopying of plaintiff's |

00505.07975/3859047.1

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | newsletter and distribution among its employees was copyright infringement). |
| | *Bagdadi v. Nazar*, 84 F.3d 1194, 1197-98 (9th Cir. 1996), dealt with the innocent infringer defense, which asks whether the accused infringer was misled by a notice on copies publicly distributed by the copyright owner—an issue with no bearing whatsoever on this case. The other two cases deal only with the public display right, i.e., whether merely showing the item was an infringement. *Video Views, Inc. v. Studio 21 Ltd.*, 925 F.2d 1010, 1020 (7th Cir. 1991) (considering a licensee of adult videos who sued an adult book store for infringing its exclusive rights to perform certain adult films publicly and confirming in the sentence following Mattel's citation that public performance is broadly interpreted: "[t]his is compatible with our view that the Copyright Act contemplates a broad interpretation of the concept of 'public performance'"); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate* |

| A.   Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | *Investors, Inc.*, 866 F.2d 278 (9th Cir. 1989) (considering only the narrow scenario of whether showing a video in a hotel room was public performance). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that non-public distribution or display of a copyrighted work is not actionable copyright infringement.

| | |
|---|---|
| 33. Willfulness in the context of criminal copyright infringement requires that the defendant knew it was infringing the plaintiff's alleged copyrights in the subject works.  <u>See</u> <u>Wise</u>, 550 F.2d at 1186 (defining willfulness by reference to <u>Screws v. United States</u>, 325 U.S. 91, 101 (1945), which held that "willfulness" in the context of a criminal statute requires an "evil motive to accomplish that which the statute condemns"); <u>see also</u> PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT § 13.4.1 (2010) ("[T]he government must prove not only that the infringer knew that the work in issue was the subject of a valid copyright and that he was copying, distributing, performing or displaying it without the | **CONTESTED** to the extent Mattel purports to raise the legal standard associated with the requisite level of knowledge to support a willfulness finding.  Knowledge may be inferred by Mattel's course of conduct. "[E]vidence of a course of conduct encompassing past infringements may obliterate a claimed defense of lack of willfulness." 4-15 NIMMER ON COPYRIGHT § 15.01 [A] [2]; cf. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705 (9th Cir. 2010) (upholding jury finding of willful copyright infringement where a company's efforts to "Americanize" pirated products was such "that the jury could reasonably infer that [defendant] was attempting to conceal the particulars of [] blatant copying"). *See* |

-30-

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| copyright owner's permission; the government must also prove that the defendant knew that his acts constituted copyright infringement, or at least, knew that there was a high probability that his acts constituted copyright infringement."). | *U.S. v. Drebin*, 557 F.2d 1316 (9th Cir. 1977) (evidence that defendant was familiar with the copyright laws, and had knowledge of a "theft problem" went to the issue of willfulness); *U.S. v. Heilman*, 614 F.2d 1133, 1137-38 (7th Cir. 1980) (defendant's knowledge that musical compositions were copyrighted, that record duplications constituted copyright infringement, and that conduct had been ruled illegal justified conclusion of willful infringement). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that "willfulness" for purposes of criminal copyright infringement requires knowing copyright infringement.

| 34. Evidence of reproduction or distribution of a copyrighted work, by itself, [is not] sufficient to establish willful infringement of a copyright." 17 U.S.C. § 506(a)(2) ). Cf. United States v. Cross, 816 F.2d 297, 300 (7th Cir. 1987) (affirming jury finding of willfulness where video store operator continued to distribute illegal copies of motion pictures after federal agents "informed him that the sale and rental of | **CONTESTED**.  Knowledge may be inferred by Mattel's course of conduct. "[E]vidence of a course of conduct encompassing past infringements may obliterate a claimed defense of lack of willfulness." 4-15 NIMMER ON COPYRIGHT § 15.01[A][2]; *cf. Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705 (9th Cir. 2010) (upholding jury finding of willful copyright infringement where a company's efforts |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| unauthorized copies was illegal"); <u>United States v. Gottesman</u>, 724 F.2d 1517, 1522 (11th Cir. 1984), abrogated on other grounds by <u>Dowling v. United States</u>, 473 U.S. 207 (1985) (affirming finding of willfulness based on "ample evidence to support the finding that [defendant] had personal knowledge that the movies were pirated copies of the originals"). | to "Americanize" pirated products was such "that the jury could reasonably infer that [defendant] was attempting to conceal the particulars of [] blatant copying". *See U.S. v. Drebin*, 557 F.2d 1316 (9th Cir. 1977), cert. denied, 436 U.S. 904 (1978) (evidence that defendant was familiar with the copyright laws, and had knowledge of a "theft problem" went to the issue of willfulness); *U.S. v. Heilman*, 614 F.2d 1133, 1137-38 (7th Cir. 1980) (defendant's knowledge that musical compositions were copyrighted, that record duplications constituted copyright infringement, and that conduct had been ruled illegal justified conclusion of willful infringement). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

     MGA's response fails to dispute the legal rule stated in 17 U.S.C. § 506(a)(2) .

| | |
|---|---|
| 35. In the context of criminal copyright infringement, "profit includes the sale or exchange of the infringing work for something for value in the hope of some pecuniary gain." <u>Wise</u>, 550 F.2d at | **CONTESTED**.  The definition of "financial gain" includes infringement when for purposes of "commercial advantage." 17 U.S.C. § 506(a)(1)(A) (requires that the infringement be |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 1195 (citations omitted); see also 17 U.S.C. § 101 (defining "financial gain" as including "receipt, or expectation of receipt, of anything of value, including the receipt of other copyrighted works"). | committed "for purposes of commercial advantage or private financial gain"). There is nothing in the statute or cases cited by Mattel that requires actual "profit" from "sale or exchange" of infringing works; in fact, the law is just the opposite. As noted in U.S. v. Wise, "[i]t is irrelevant whether the hope of gain was realized or not. T he requirement of profit is intended to delineate commercial infringements from infringements for merely personal use and philanthropic infringements." 550 F.2d 1180, 1195 (9th Cir. 1977) (internal quote omitted). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that in the context of criminal copyright infringement, "profit includes the sale or exchange of the infringing work for something for value in the hope of some pecuniary gain."

| | |
|---|---|
| 36.     The "fair use" of a copyrighted work "is not an infringement of copyright." See 17 U.S.C. § 107. In determining whether the fair use defense applies, courts consider "(1) the purpose and character of the use, including whether such use is of a | **CONTESTED.** "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (holding that |

| A.        Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." Id. | a magazine's unauthorized publication of verbatim quotes from President Ford's memoirs was not a "fair use"); *see also* 17 U.S.C. § 107; *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008). Further, "[t]o invoke the fair use exception, an individual must possess an authorized copy of a literary work." *Sega Enters., Ltd. v. MAPHIA*, 857 F. Supp. 679, 687 (N.D. Cal. 1994); *Atari Games Corp. v. Nintendo of America, Inc.*, 975 F.2d 832, 843 (Fed. Cir. 1992). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

    MGA's response fails to dispute the fair use factors as stated in Mattel's Conclusion of Law.

| | |
|---|---|
| 37.    With respect to the first fair use factor, "the degree to which the new user exploits the copyright for commercial gain – as opposed to incidental use as part of a commercial enterprise – affects the weight [courts] afford commercial nature as a factor." <u>Elvis Presley Enters., Inc. v. Passport Video</u>, 349 F.3d 622, 627 (9th Cir. 2003); <u>see</u> <u>also</u> <u>Lewis Galoob Toys, Inc.</u> | **CONTESTED**.  *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("the crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price"); *Princeton Univ. v. Michigan Document Scvs.*, 99 F.2d |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| v. Nintendo of Am., Inc., 780 F.Supp. 1283, 1293 (N.D. Cal. 1991) (private use of video game enhance was presumptively a fair use because it was limited to personal use and did not involve exploiting a copyrighted work in "some commercial venture"); Key Maps, Inc. v. Pruitt, 470 F. Supp. 33, 38 (S.D. Tex. 1978) (when reproduction and distribution of a copyrighted work was noncommercial and was solely for internal purposes fair use defense applied). | 1381, 1383-84, 1389 (6th Cir. 1996) (photocopying segments of copyrighted works and using them in coursepacks to be sold to students is a copyright infringement and did not constitute fair use; also noting that photocopying creates "verbatim copies" and makes no changes to the original copyrighted work even when juxtaposed with excerpts from other works). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that "the degree to which the new user exploits the copyright for commercial gain – as opposed to incidental use as part of a commercial enterprise – affects the weight [courts] afford commercial nature as a factor."

| 38. "In general, fair use is more likely to be found in factual works than in fictional works."  Stewart v. Abend, 495 U.S. 207, 237 (1990); see also Eldred v. Ashcroft, 537 U.S. 186, 190 (2003) ("[T]he 'fair use' defense codified at § 107 allows the public to use not only facts and ideas contained in a | **CONTESTED**. As to the nature of the copyrighted work, "this second factor more typically recedes into insignificance in the greater fair use calculus." 4- 13 NIMMER ON COPYRIGHT § 13.05; Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 586 (1994) ("We agree... that the [copyrighted work] falls |

| A.        Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| copyrighted work, but also expression itself for limited purposes."); Cooling Systems and Flexibles, 777 F.2d at 491 ("Catalogs, by definition, are saturated with facts, numbers, and literal depictions of concrete objects."). | within the core of the copyright's protective purposes. This fact, however, is not much help in this case, or ever likely to help much in separating the fair use sheep from the infringing goats in a parody case") (citations omitted).

Further, as stated above, and contrary to Mattel's interpretation of cases, catalogs and their contents are indeed protectable. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) involved telephone directories, which are readily distinguishable from MGA's catalogs containing original content as well as arrangement.  Likewise *Publ'ns Int'l v. Meredith Corp.*, 88 F.3d 473, 480-81 (7th Cir. 1996) involved instructions for preparing a dish, which was deemed a "procedure, process [or] system" under Section 102(b); see also *Triangle Publ'ns, Inc. v. Sports Eye, Inc.*, 415 F. Supp. 682, 685-686 (E.D. Pa. 1976) (noting that while "raw data" may not be copyrightable, "the method or form for expressing the data [] is |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | copyrightable"). MGA's catalogs are not like a telephone directory or recipe or mass of raw data—they contain both copyrightable content and comprise a copyrightable form for expressing such content. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that "[i]n general, fair use is more likely to be found in factual works than in fictional works."

| | |
|---|---|
| 39. The third fair use factor, the amount and substantiality of use, considers the "quantity of the work taken and the quality and importance of the portion taken." Elvis Presley Enters., 349 F.3d at 630.  This factor favors fair use where "the purpose of the work differs from the original." Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 804 n.8 (9th Cir. 2003); see also Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 629 (7th Cir. 2003) ("[T]here is no per se rule against copying in the name of fair use an entire copyrighted work if necessary"); Calkins v. Playboy Enters. International, Inc., 561 F. Supp. 2d 1136, 1143 (E.D. | **CONTESTED**. Copying of an entire work, as Mattel has done in this case, weighs against a finding of fair use. *Sega Enters., Ltd. v. MAPHIA*, 857 F. Supp. 679, 687 (N.D. Cal. 1994) ("Because it appears that the entire game programs are copied when Sega video game programs are transferred over the MAPHIA bulletin board, consideration of the amount and substantiality of the portion copied weighs against a finding of fair use."); 4-13 Nimmer § 13.05[A][3]; *see also Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109-10 (2d Cir. 1998). |

| A.   Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| Cal. 2008) (permitting copying of entire photograph because it was necessary to carrying out defendant's intended use). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that the third fair use factor, the amount and substantiality of use, considers the "quantity of the work taken and the quality and importance of the portion taken," or that this factor favors fair use where "the purpose of the work differs from the original."

| | |
|---|---|
| 40.   The fourth factor – the effect of the use of the copyrighted works on the potential market for, and value of, those works – is "undoubtedly the single most important of all the fair use factors." Harper & Row Publishers v. Nation Enterprises, 471 U.S. 539, 566 (1985). This factor "is aimed at the copier who attempts to usurp the demand for the original work. . . . The theory behind the copyright laws is that creation will be discouraged if demand can be undercut by copiers. Where the copy does not compete in any way with the original, this concern is absent." Consumers Union of the U. S., Inc. v. General Signal Corp., 724 F.2d 1044, 1051 (2d Cir. 1983); see also Elvis Presley | **CONTESTED**. The Ninth Circuit has held that "when 'the intended use is for commercial gain,' the likelihood of market harm 'may be presumed.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008). |

MATTEL'S REPLY RE STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| <u>Enters</u>., 349 F.3d at 631 (fourth factor favored fair use when it was "unlikely that someone in the market for [Elvis Presley's musical compositions] would purchase [the defendant's video biography] instead of a properly licensed product"); <u>Italian Book Corp. v. Am. Broadcasting Cos</u>., 458 F. Supp. 65, 70 (S.D.N.Y. 1978) ("Where the subsequent use of a protected work is not in competition with the copyrighted use, and no showing is made that such subsequent use lessens the value of the copyrighted work, the fair use defense is generally sustained."); <u>Playboy Enters. Int'l</u>, 561 F. Supp. 2d at 1142 (fair use applied because copyrighted photograph reproduced in Playboy magazine was "not a suitable substitute" for the original photograph "because the image is significantly smaller and of lesser quality than the original Photograph"). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

  MGA's response fails to dispute that the fourth fair use factor – the effect of the use of the copyrighted works on the potential market for, and value of, those works – is "undoubtedly the single most important of all the fair use factors," or

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| that this factor "is aimed at the copier who attempts to usurp the demand for the original work." | |
| 41.     To prove that a defendant spoliated evidence, a plaintiff must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006); see also Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991) ("A party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant."). | **IMMATERIAL**. MGA's RICO claim is based on predicate acts of evidence tampering (18 U.S.C. § 1512(c)) and (18 U.S.C. § 1503), not civil spoliation of evidence. The two cases cited by Mattel deal with civil spoliation of evidence; neither case is a criminal case or a civil RICO case, or discusses evidence tampering. |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** | |
| MGA does not contest this Conclusion of Law. | |
| 42. To prove obstruction of justice as a predicate act, the plaintiff must prove | **CONTESTED**. *U.S. v. Ryan*, 455 F.2d 728, 734 (9th Cir. 1971), does not |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| that each charged enterprise member acted with the specific intent to impede justice.  United States v. Ryan, 455 F.2d 728, 734 (9th Cir. 1971) ("Specific intent to impede the administration of justice is an essential element of the offense.").  In addition, the plaintiff must prove that each allegedly obstructive act had the "natural and probable effect of interfering with the due administration of justice."  United States v. Hopper, 177 F.3d 824, 830 (9th Cir. 1999); see also Ryan, 455 F.2d at 734 ("The acts complained of must bear a reasonable relationship to the subject of [the proceeding in question].").  | support Mattel's conclusion.  Furthermore, MGA is not required to prove that "each charged enterprise member" acted with the specific intent to impede justice. MGA must show that Mattel, the only RICO defendant named, engaged in acts of obstruction.  See 18 U.S.C. § 1962(c).  **UNCONTESTED** that the acts of obstruction of justice must have a sufficient nexus between the obstructive act and the targeted proceeding. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA concedes that the acts of obstruction of justice must have a sufficient nexus between the obstructive act and the targeted proceeding.  MGA's further argument misconstrues Mattel's argument.  Mattel argues that "each *charged* member" (emphasis added) must have acted with specific intent to impede justice. Mattel does not claim that enterprise members not alleged to have obstructed justice or otherwise accused of committing predicates acts of obstruction of justice must meet that standard.  As such, MGA's response is immaterial.

| 43.      Summary judgment on a RICO | **UNCONTESTED**. |
|---|---|

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| claim is required where the plaintiff cannot establish damages.  See <u>First Pac. Bancorp, Inc. v. Bro</u>, 847 F.2d 542, 547 (9th Cir. 1988) ("Absent damages, the RICO claim cannot be sustained."). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

     Uncontested.

| | |
|---|---|
| 44.     RICO provides a private right of action only to entities "injured in [their] business or property by reason of" a violation of the law's substantive provisions.  18 U.S.C. § 1964(c).  The plaintiff must demonstrate that the alleged RICO predicate acts "led directly to the plaintiff's injuries." <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 654 (2008). The "[c]ompensable injury flowing from a violation of [section 1962(c)] 'necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006) | **UNCONTESTED**. |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| (quoting <u>Sedima, S.P.R.L. v.  Imrex Co.</u>, 473 U.S. 479, 497 (1985)). |  |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA does not contest this Conclusion of Law.

| 45. A "party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." <u>W.R. Grace & Co. v. Local Union</u> 759, 461 U.S. 757, 77 n.14 (1983). | **CONTESTED**. Common law provides a remedy for a wrongful permanent injunction that does not depend on the existence of a bond. The Supreme Court found such an action was viable even absent a bond. *Public Serv. Comm'n of Missouri v. Brashear*, 312 U.S. 621, 629 (1941); *Arkadelphia Co. v. Louis S. W. Ry. Co.*, 249 U.S. 134, 145 (1919); *see also Dornan v. Sheet Metal Works' Int'l*, 810 F. Supp. 856 (E.D. Mich. 1992). Moreover, as noted in *Dornan*, *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757 (1983), did not purport to overrule either *Brashear* or *Arkadelphia Co*. And, *W.R. Grace & Co*. is factually distinguishable in at least two respects. First, the party claiming damages in *W.R. Grace & Co*. was the party that sought the injunction. Second, the company there had expressly agreed to accept the losses from the injunction. |

| A.        Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | *See Dornan*, 810 F. Supp. at 858. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that a party has no action to recover money damages caused by a wrongful injunction in the absence of a bond.  MGA's authorities recognize that in such circumstances, relief is limited to restitution.

| 46.    Under the Noerr-Pennington doctrine, "those who petition all departments of the government for redress are generally immune from liability."  Express LLC v. San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005), citing Manistee Town Ctr. v. Glendale, 227 F.3d 1090, 1092 (9th Cir. 2000). | **UNCONTESTED AND IMMATERIAL**. There are well-noted exceptions to the doctrine.  *See, e.g., Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA does not contest this Conclusion of Law.

| 47.    Recoverable damages under RICO are limited to damages that are "directly" caused by predicate acts. See Bridge, 553 U.S. at 654; see also Hemi Group, LLC v. City of New York, 130 S.Ct. 983, 991 (2010) (quoting Anza, 547 U.S. at 457) ("Our precedent makes clear . . . that the compensable injury flowing from a RICO violation necessarily is the harm caused by the | **UNCONTESTED**. |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| predicate acts."). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Uncontested.

| 48. Summary judgment on a RICO claim is appropriate where the plaintiff's expert fails to tie his damages calculation to alleged predicate acts; such an expert report fails to measure cognizable RICO damages.  See Boca Raton Cmty Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1233-34 (11th Cir. 2009) (upholding grant of summary judgment for RICO defendant where plaintiff expert's "injury and damages opinion was not confined to charges that [plaintiff's] liability theory would consider unlawful" and was thus insufficient to establish cognizable RICO injury resulting from the predicate acts). | **CONTESTED**. The rejection of the expert's report in *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227 (11th Cir. 2009), was not because the damages calculations were not "tied" to the predicate acts. Instead, the expert's report was stricken because its methodology did not follow plaintiff's theory of liability. *Id.* at 1231-34. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA fails to contest Mattel's conclusion of law.  MGA's proffered interpretation of the holding in Boca does not suffice to dispute the conclusion that "[s]ummary judgment on a RICO claim is appropriate where the plaintiff's expert fails to tie his damages calculation to alleged predicate acts."

| 49.      A RICO plaintiff cannot recover | **IMMATERIAL**.  MGA is not seeking |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| damages for conduct that allegedly harmed other competitors.  The Supreme Court has time and again rejected this type of indirect competitive "disadvantage." <u>Hemi Group.</u>, 130 S.Ct. at 989 (citing <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992).  MGA lacks standing to sue for harm flowing "merely from the misfortunes visited upon a third person." <u>Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.</u>, 185 F.3d 957, 963 (9th Cir. 1999) (quoting <u>Holmes</u>, 503 U.S. at 268- 69). | to recover damages for harms suffered by its competitors. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA does not contest this Conclusion of Law.

| 50.      The mere existence of more direct victims is enough to defeat RICO proximate cause even where the would-be plaintiff has also suffered injury. <u>See</u>, <u>e.g.</u>, <u>Newcal Industries, Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1055 (9th Cir. 2008); <u>see also</u> <u>Hemi Group</u>, 130 S.Ct. at 990-91 (direct victim, New York state, was the "better situated | **CONTESTED**.  The cited cases do not hold that the "mere existence" of more direct victims defeats RICO proximate cause.  *See e.g., Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008) ("The existence of more-direct victims defeats proximate cause if we can count on those injured parties to 'vindicate the law as private |

| A.        Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| plaintiff[]"); <u>Anza</u>, 547 U.S. at 460 (same); <u>Holmes</u>, 503 U.S. at 273 (broker-dealers more directly injured and could vindicate alleged RICO violations); Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1289 (11th Cir. 2006) ("[I]n both <u>Holmes</u> and <u>Anza</u>, the Supreme Court emphasized that dismissal was appropriate because a more direct victim could bring suit."). | attorneys general' or if the existence of other injured parties creates difficulties of apportionment or risks of multiple recoveries." (citation omitted)). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA's response fails to dispute that the "mere existence of more direct victims is enough to defeat RICO proximate cause even where the would-be plaintiff has also suffered injury."  MGA's quotation from <u>Newcal</u> provides support for Mattel's conclusion.  The Court in <u>Newcal</u> held "[t]he existence of more-direct victims defeats proximate cause."  Moreover, MGA fails to address Mattel's other authorities, including three Supreme Court cases that provide support for this Conclusion of Law.

| 51.    A district court's ruling on a motion to dismiss does not establish the law of the case for purposes of summary judgment.  <u>McKenzie v. BellSouth Telecomms., Inc.</u>, 219 F.3d 508, 513 (6th Cir. 2000) ("our holding on a motion to dismiss does not establish the law of the case for purposes of summary | **CONTESTED.**  The parties have briefed when law of the case applies and its application to issues in this case. *See, e..g.*, Dkt. #9014 at 1-2. However, *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000), notes that law of the case does not apply "when the complaint has been |

MATTEL'S REPLY RE STATEMENT OF UNCONTESTED CONCLUSIONS OF LAW

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| judgment"); <u>Nudo v. McNeil</u>, 702 F. Supp. 825, 826-27 (D. Or. 1988) (defendants permitted to re-assert a statute of limitations defense in a motion for summary judgment after obtaining plaintiff's deposition following an unsuccessful motion to dismiss also relying upon the statute of limitations defense); <u>Partrich v. Farber</u>, 2009 WL 4947913, *8 (E.D. Mich. Dec. 14, 2009) ( law of the case doctrine does not apply because "[o]n a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is charged with determining if the facts in the complaint state a valid claim, and the Court is not to look beyond the facts alleged in the complaint. On a motion for summary judgment, on the other hand, the Court looks beyond the complaint to determine whether the undisputed facts in the record support judgment as a matter of law for one party or another"). | supplemented by discovery." Moreover, none of the cases cited by Mattel authorize Mattel to re¬assert rejected arguments made in a motion to dismiss such as Mattel has done with its relation-back arguments under the guise of a summary judgment motion. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

MGA does not dispute Mattel's authority holding that a court's ruling on a motion to dismiss does not establish the law of the case for purposes of summary

| A.        Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| judgment because the court must consider evidence when ruling on the latter. | |
| 52.      The Ninth Circuit does not allow permissive counterclaims-in-reply. <u>Davis & Cox v. Summa Corp.</u>, 751 F.2d 1507, 1525 (9th Cir. 1985). | **UNCONTESTED.** |
| **MATTEL'S REPLY TO MGA'S RESPONSE:**          Uncontested. | |
| 53.      The Court's procedural rulings cannot infringe Mattel's substantive right to repose under California law concerning statute of limitations and the relation back doctrine.  <u>Sidney v. Superior Court</u>, 198 Cal. App. 3d 710, 174 (1988); <u>Burger v. Kuimelis</u>, 325 F. Supp. 2d 1026, 1045 (N.D. Cal. 2004) (recognizing that <u>Sidney</u> controls compulsory relation back of state law claims); <u>Provencio v. Vazquez</u>, 258 F.R.D. 626, 631 (E.D. Cal. 2009) ("California's relation-back rule is inextricably intertwined with its statute of limitations"); <u>Olympic Sports Prods., Inc. v. Universal Athletic Sales Co.</u>, 760 F.2d 910, 913 (9th Cir. 1985) ("Statutes of limitations, which dictate the life of state causes of action, are too intimately | **IMMATERIAL AND INCOMPREHENSIBLE.**  To the extent this applies to Mattel's statute of limitations and relation-back argument, this Court has already decided the issue of relation-back. |

| A.      **Mattel Uncontested Conclusion of Law** | **MGA's Response** |
|---|---|
| connected with the substance of the state-created right to be disregarded by the federal courts" and "any application of the Rules of Decision Act which invades that substantive province must be unconstitutional") (citing <u>Guar. Trust Co. v. York</u>, 326 U.S. 99, 109-110 (1945)). | |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

A court will not look solely to the pleadings to determine whether a claim is compulsory when a party makes intentional misrepresentations to the court about the scope of its pleadings that is inconsistent with evidence known to the pleader and prejudices a party's substantive right to repose. <u>In re R & C Petroleum, Inc.</u>, 236 B.R. 355, 361 (Bankr. E.D. Tex. 1999).

| | |
|---|---|
| 54.     In California state court and federal court, a pleading is filed for statute of limitations purposes when a motion for leave to amend is filed and a proposed pleading is lodged with the Court.  <u>In re Metro. Sec. Litig.</u>, 532 F. Supp. 2d 1260, 1282 (E.D. Wash. 2007) ("it is well established, for the purpose of calculating the statute of limitations, that an amended pleading is effectively filed when the motion to amend is filed" | **CONTESTED.**  It is not necessary that a proposed pleading be lodged with the court prior to the expiration of the statute of limitations.  A number of courts have addressed the situation where the petition for leave to amend the complaint has been filed prior to expiration of the statute of limitations, while the entry of the court order and the filing of the amended complaint have occurred after the limitations |

| A.  **Mattel Uncontested Conclusion of Law** | **MGA's Response** |
|---|---|
| because "when a motion to amend is accompanied by the proposed amended pleading, the motion to amend notifies the defendant of the impending claim"); <u>Weiner v. Superior Court</u>, 58 Cal. App. 3d 525, 531 (1976) ("[T]he action . . . commenced [for statute of limitations purposes] when plaintiffs filed their proposed first amended complaint with their notice of motion for leave to amend."). | period has expired.  In such cases, the amended complaint is deemed filed within the limitations period.  *See Rademaker v. E.D. Flynn Export Co.*, 17 F.2d 15, 17 (5th Cir. 1927); *Longo v. Pennsylvania Elec. Co.*, 618 F.Supp. 87, 89 (W.D. Pa. 1985), *aff'd*, 856 F.2d 183 (3d Cir.1988); *Eaton Corp. v. Appliance Valves Co.*, 634 F. Supp. 974, 982-83 (N.D.Ind.1984), *aff'd on other grounds*, 790 F.2d 874 (Fed. Cir.1986); *Gloster v. Pennsylvania R..R..*, 214 F.Supp. 207, 208 (W.D. Pa. 1963). |

| **MATTEL'S REPLY TO MGA'S RESPONSE:** |
|---|
|      MGA fails to cite authority indicating that California state courts would not require that a proposed pleading be lodged with the Court to toll the limitations period, and MGA has not cited any authority from the Ninth Circuit for this position, which is immaterial to the resolution of this case  because Mattel lodged a proposed pleading with the Court on November 20, 2006. |

| 55.  For those jurisdictions that have adopted the minority rule that the filing of a claim tolls the limitations period for all compulsory counterclaims, the statute of limitations is not tolled if the counterclaim is permissive.  <u>Employers Ins.  of Wausau v. United States</u>, 764 | **CONTESTED AND IMMATERIAL.** This Court has already held that MGA's counterclaims in reply for violation of 18 U.S.C. § 1962(c), misappropriation of trade secrets, and wrongful injunction share a logical relationship with Mattel's expansive counterclaims, and |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| F.2d 1572, 1576 (Fed. Cir. 1985) ("[A] permissive counterclaim does not generate a like tolling period."); <u>Sidney v. Superior Court</u>, 198 Cal. App. 3d 710, 174 (1988). | are therefore compulsory. Dkt. #8892 at 5. |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** | |
| In its October 5, 2010 Order, the Court recognized that the statute of limitations is not tolled if the counterclaim is permissive.  Dkt. No. 8892 at 15. | |
| 56.     An action for trade secret misappropriation under California law must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.  <u>Cal. Civ. Code</u> § 3426.6; <u>Cadence Design Sys., Inc., v. Avant! Corp.</u>, 29 Cal. 4th 215, 226 (2002). Under California's discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 804 (2005). | **UNCONTESTED.** |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** | |
| Uncontested. | |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 57.     Knowledge of a high-level executive of a corporation is imputed to the corporation when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal.  O'Riordan v. Federal Kemper Life Assurance, 36 Cal. 4th 281, 288 (2005); Columbia Pictures Corp. v. DeToth, 87 Cal. App. 2d 620, 630 (1948); San Diego Hospice v. County of San Diego, 31 Cal. App. 4th 1048, 1056 (1995); Display Research Labs., Inc. v. Telegen Corp., 133 F. Supp. 2d 1170, 1176 (N.D. Cal. 2001). | **CONTESTED.**  "It is a well settled principle that knowledge of officers and key employees of a corporation, *obtained while acting in the course of their employment and within the scope of their authority*, is imputed to the corporation itself."  *W.R. Grace & Co., Inc. v. Western U.S. Indus., Inc.*, 608 F.2d 1214, 1219 (9th Cir 1979) (emphasis added); *see also Sanders v. Magill*, 70 P.2d 159, 163 (Cal. 1937) ("Knowledge of an officer of a corporation within the scope of his duties is imputable to the corporation."); *Redman v. Walters*, 88 Cal. App. 3d 448, 454 (1979) (same). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Mattel does not dispute the holding of W.R. Grace identified by MGA, but O'Riordan stands for the proposition identified by Mattel.

| 58.     California's relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original complaint.  Norgart v. Upjohn Co., 21 | **UNCONTESTED** that California's relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original complaint.  *Norgart v. Upjohn Co.*, 21 |

| A.      Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| Cal. 4th 383, 408 -409 (1999); <u>Davaloo v. State Farm Ins. Co.</u>, 135 Cal. App. 4th 409, 415 (2005) ("The requirement that the complaint allege ultimate facts forming the basis for the plaintiff's cause of action is central to the relation-back doctrine and the determination whether an amended complaint should be deemed filed as of the date of the original pleading."). | Cal. 4th 383, 408 -409 (1999). |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

   MGA does not contest this Conclusion of Law.

| 59.      Compulsory counterclaims-in-reply can only be asserted in response to permissive counterclaims that expand the scope of the litigation beyond the original pleading.  <u>Feed Mgm't Sys., Inc. v. Brill</u>, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007); <u>Turner & Boisseau, Chartered v. Nationwide Mut. Ins. Co.</u>, 175 F.R.D. 686, 687 (D. Kan. 1997); <u>Erickson v. Horing</u>, 2000 WL 35500986, *10 (D. Minn. Oct. 23, 2000). | **CONTESTED.**  The relevant authority governing the filing of counterclaims-in-reply is *Davis & Cox v. Summa Corp.*, 751 F.2d 1507 (9th Cir. 1985), and it does not impose the requirements detailed in Mattel's Conclusion of Law No. 59. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

   In its October 5, 2010 Order, the Court recognized this exception.  Dkt. No.

00505.07975/3859047.1

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 8892 at 8 n.4. | |
| 60.    California has adopted the Ninth Circuit's "logical relationship" test for identifying compulsory claims.  <u>Align Tech., Inc. v. Tran</u>, 179 Cal. App. 4th 949, 965-966 (2009). | **UNCONTESTED.** |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

Uncontested.

| 61.    A claim is compulsory when the counterclaim arises from the same aggregate set of operative facts as the initial claim. <u>Fed. R. Civ. P. 13(a); In re Pinkstaff</u>, 974 F.2d 113, 115 (9th Cir. 1992). | **CONTESTED.**  Whether a claim is compulsory turns on whether the claims "'arise out of the transaction or occurrence that is the subject matter of the opposing party's claim.'" *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting Fed. R. Civ. P. 13(a)). The test is to be flexibly applied with a liberal construction.  *Id.*; *see also id.* at 1252-53 ("[W]e believe that the liberal reading of the 'transaction or occurrence' standing is more in keeping with the pronouncements of the Supreme Court . . . ."). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences depending not so much |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| | upon the immediateness of their connection as upon their logical relationship.'" *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001) (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)). Therefore, the question to be answered is whether the claims are "so logically connected that considerations of judicial economy and fairness dictate that all of the issues be resolved in one lawsuit." *Pochiro*, 827 F.2d at 1249. |

**MATTEL'S REPLY TO MGA'S RESPONSE:**

The case cited by Mattel stands for the cited proposition. "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim." In re Pinkstaff, 974 F.2d 113, 115 (9th Cir. 1992)

| | |
|---|---|
| 62.    Under California law, a claim can only relate back to an earlier pleading that sought affirmative relief based on the same general set of facts; an affirmative claim cannot relate back to an earlier alleged affirmative defense. Quiroz v. Seventh Ave. Center, 140 Cal. App. 4th 1256, 1278 (2006); Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th | **IMMATERIAL.** |

| A.    Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| 1157, 1199 (2008); <u>Brumley v. FDCC Cal., Inc.</u>, 156 Cal. App. 4th 312, 323 (2007) ; <u>Lockheed Martin Corp. v. RFI Supply, Inc.</u>, 2006 WL 1525719, at *8 (N.D. Cal. May 30, 2006); <u>Sparrow v. Mazda Am. Credit</u>, 385 F. Supp. 2d 1063, 1069 n. 3 (E.D. Cal. 2005). | |
| **MATTEL'S REPLY TO MGA'S RESPONSE:**     MGA does not contest this Conclusion of Law. | |
| 63.    In the Ninth Circuit, the statute of limitations for a RICO claim accrues when the plaintiff knew or should have known of the injury that formed the basis for the cause of action, not from the date of the last alleged predicate act. <u>Grimmett v. Brown</u>, 75 F.3d 506, 512 (9th Cir. 1996). | **UNCONTESTED.** |
| **MATTEL'S REPLY TO MGA'S RESPONSE:**     Uncontested. | |
| 64.    Even if the plaintiff did not know the injury was caused by a pattern of RICO activity, a RICO claim would still accrue and the statute of limitations would still run." <u>Tanaka v. First Hawaiian Bank</u>, 104 F. Supp. 2d 1243, 1246 (D. Haw. 2000). | **UNCONTESTED.** |

| A.     Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| **MATTEL'S REPLY TO MGA'S RESPONSE:** | |
| Uncontested. | |
| 65.     A RICO plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud. <u>Pincay v. Andrews</u>, 238 F.3d 1106, 1110 (9th Cir. 2001). | **UNCONTESTED.** |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** | |
| Uncontested. | |
| 66.     Attempted concealment of the initial RICO injury does not trigger a separate RICO limitations period. <u>In re Merrill Lynch Ltd. P'ships Litig.</u>, 154 F.3d 56, 59-60 (2d Cir. 1998) ("we find that their later communications which put a gloss on the losing investments were continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries."). | **CONTESTED.**  Under the circumstances in *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56 (2nd Cir. 1998), the court found that the dissemination of misleading reports were efforts to conceal the initial fraud and thus not separate and distinct acts resulting in new and independent injuries.  However, the court also noted that "in some instances a continuing series of fraudulent transactions undertaken within a common scheme can produce multiple injuries each with a separate limitations period." *Id*. at 59. |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** | |

| A.   Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|
| The case cited by Mattel stands for the cited proposition. ||
| 67.   Fraudulent concealment does not toll the RICO limitations period if the plaintiff had actual or constructive knowledge of the facts underlying the claim.  Pincay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001) ("[T]here is a long line of our cases holding that, in order to prevail on such a claim, plaintiffs 'must demonstrate that they had neither actual nor constructive notice of the facts constituting their claims for relief.'"); Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) ("The fraudulent concealment doctrine would not have tolled the statute of limitations if the partners actually knew of the alleged wrongs, or if the partners were not reasonably diligent in informing themselves of the alleged wrongs."). | **UNCONTESTED.** |
| **MATTEL'S REPLY TO MGA'S RESPONSE:** ||
| Uncontested. ||
| 68.   Relation back of compulsory federal claims is the minority rule in the federal courts.  Murray v. Mansheim, | **CONTESTED.**  Although *Murray v. Mansheim*, 779 N.W. 2d 379, 386 (S.D. 2010), does state that relation back of |

| A.     **Mattel Uncontested Conclusion of Law** | **MGA's Response** |
|---|---|
| 779 N.W. 2d 379, 386 (S.D. 2010) (surveying cases and adopting the "majority rule" of no relation back adopted by seven circuit courts and <u>Moore's Federal Practice</u> § 13.93 (3d ed. 2009)). | compulsory claims is a minority rule, that conclusion is inaccurate. First, in its survey, the court considered cases that did not consider the relation back issue. Second, in surveying the cases that the court considered represented the "minority rule," the court neglected to consider cases such as *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1982), which adopts the relation back standard that *Murray* paints as a minority rule and which adopts that standard because it is the majority rule. *See Murray*, 779 N.W. 2d at 386 n. 7 (purportedly listing cases that have adopted the "minority rule."). Finally, relation back is considered the majority rule. 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1419 at 178-79 (2010) ("the majority view appears to be that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim" and surveying the case law). |

| A.   Mattel Uncontested Conclusion of Law | MGA's Response |
|---|---|

**MATTEL'S REPLY TO MGA'S RESPONSE:**

The cased cited by Mattel stands for the cited proposition, and it is consistent with the majority rule identified in Moore's Federal Practice, as explained in the <u>Murray</u> opinion.

DATED:  December 13, 2010         QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____
    John B. Quinn
    Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.