QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar 090378)
  johnquinn@quinnemanuel.com
  William C. Price (Bar 108542)
  williamprice@quinnemanuel.com
  Michael T. Zeller (Bar 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity<br><br>Plaintiffs,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.<br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case CV 04-09059<br>Case CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO UNSEAL SUMMARY JUDGMENT-RELATED FILINGS**<br><br>Date: December 20, 2010<br>Time: TBD<br>Courtroom: 9D<br><br>**Phase 2**<br>Disc. Cut-off: October 4, 2010<br>Pre-trial Conf.: January 4, 2011<br>Trial Date: January 11, 2011 |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND.................................................................................... 2

ARGUMENT............................................................................................................. 5

CONCLUSION........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

Kamakana v. City and County of Honolulu,
  447 F.3d 1172, 1179 (9th Cir. 2006) ................................................... 1, 6, 7, 9

In re NSA Telecomm. Records Litig.,
  2007 WL 549854 (N.D. Cal. Feb. 20, 2007) .................................................. 6

**Preliminary Statement**

Despite having had identical motions denied three times by this Court, MGA moves once again to unseal all "summary judgment-related filings."  To make matters worse, this time MGA filed its motion without bothering to meet and confer – and indeed without bothering to respond to the proposal Mattel made to avoid this motion. MGA was previously sanctioned for such conduct and should be sanctioned again.

Nor is there any merit to MGA's latest rehashed motion.  As the Court has made clear, to the extent MGA seeks disclosure of a particular sealed document, it should move on that document.  Instead, MGA's blanket request covers an extraordinarily large volume of documents, involving tens of thousands of pages. These documents contain valuable Mattel trade secrets on a wide range of subject matters, including without limitation Mattel's proprietary inventory management systems, Mattel's international marketing strategies, Mattel research efforts, and Mattel customized marketing guidelines and techniques.  Mattel's summary judgment motion papers included declarations and other evidence substantiating the sensitivity of the stolen Mattel trade secrets at issue on the motion.  Broad requests to modify the protective order, much less ones filed on the eve of trial, should be denied given the trade secret and confidential information included and the fact that MGA and Mattel are competitors in the toy market.  Indeed, it would subvert the purposes of trade secret law to allow an adversary to condition legal recourse for the theft of those trade secrets on their public disclosure once summary judgment is brought.

MGA's latest motion also does not raise any new argument that would justify its overbroad request to unseal all Mattel confidential information. MGA relies primarily on <u>Kamakana</u>, a Ninth Circuit case about the press' access to sealed documents concerning dispositive motions in a police corruption lawsuit, after the lawsuit was settled.  However, the Court already denied MGA's First Amendment arguments. Moreover, even <u>Kamakana</u> recognizes the need to maintain trade secrets under seal.

## Factual Background

<u>MGA First Requests the Protective Order be Modified to Significantly Curtail Use of AEO Designations</u>. On March 31, 2010, the Court issued an Order to Show Cause why the protective order should not be lifted in its entirety. In response, MGA argued that the designation of "AEO" (for "Attorneys Eyes Only") under the order should be significantly limited because, in particular, "neither Mr. Larian nor MGA have access to materials necessary to their participation in the formulation of their defense to this case." Dkt. No. 7687 at 1. The Court denied MGA's request and did not modify the protective order. Order, April 20, 2010 ("April 20 Order"). In particular, the Court noted:

> It is unsurprising that in a lawsuit alleging, inter alia, the misappropriation of trade secrets, both Mattel and MGA are sensitive to the disclosure of information they consider valuable. The Court does not disregard such concerns.
>
> … [T]he very nature of the allegations makes it inevitable that each party does not concur with the other party's determinations as to which documents are valuable or which testimony should remain confidential.
>
> The Court can continue to consider challenges to Protective Order designations on an ad hoc basis and the Protective Order can be lifted as to certain admissible evidence at the time of trial.

<u>Id.</u> at 2.

<u>MGA Then Moves to Modify the Protective Order.</u> On May 25, 2010, just a month after the Court's order rejecting MGA's arguments to modify the protective order, MGA moved to modify the protective order again to allow Larian and certain

in-house counsel at MGA access to Mattel's AEO documents. Dkt. No. 246.[1] And again, the Court again denied MGA's overbroad request. Dkt. No. 254, June 17, 2010. The Court further noted that:

> Mattel and MGA are direct competitors and Larian's review of Mattel's trade secret documents poses potential harm *even if* Larian abides by the terms of the Protective Order.
>
> [I]t is unclear to the Court why [trial] strategy cannot be provided in broad terms or as to the documents not designated Attorneys' Eyes Only by Mattel.
>
> MGA's dilatory, vague, and overbroad request does not accommodate Mattel's meaningful interest in the complete preservation of the Attorneys' Eyes Only designation.
>
> MGA does not identify the types of documents it wishes to disclose to its in-house counsel, does not identify the specific input they may provide, and does not suggest any means for Mattel to protect documents not reasonably necessary to MGA's trial preparation. The briefing offers sweeping conclusions at the expense of focused factual analysis.
>
> MGA is free to move ex parte for a modification of the terms of the protective order as to specific documents designated Attorneys' Eyes Only by Mattel. Should MGA choose to do so, it should identify those documents, explain the need for in-house counsel's and/or Larian's review of the documents, explain the conditions in which in-house counsel and/or Larian will review the documents, and if feasible attach a copy of the document for the Court's review and consideration.

Id. at 2-4 (emphasis in original).

---

[1] MGA erroneously filed its motion in the docket of case number 2:04-cv-09059. Therefore, the docket numbers for this motion and order refer to that docket.

<u>Despite Two Previous Orders, MGA Moves Again *Ex Parte* to Modify the Protective Order.</u>  On October 16, 2010, MGA *again* moved to modify the protective order to allow Larian and MGA access to Mattel's confidential information. Dkt. No. 8951 at 6-7.  In its October filing, MGA argued that summary judgment filings must be made available to Larian and MGA under the First Amendment.  <u>Id.</u> at 9.  The Court also denied this request.  Dkt. No. 8974 at 11-14, October 21, 2010.  The Court specifically noted:

> MGA argues that a modification is required for certain reasons, none of which are convincing.
>
> … Judge Larson only allowed the partial unsealing of documents on the basis of the parties' stipulation and, notably, trade secret documents remained under seal.  There is no such stipulation here, and the Court is not inclined to parse through the summary judgment filings and make determinations, on the basis of last minute briefing, about what documents should be unsealed.
>
> MGA argues that the First Amendment requires civil proceedings to be public. This argument errs as a matter of law.
>
> ***MGA sought the Protective Order to begin with.***
>
> [W]hen ordered to show cause as to why the Protective Order should not be vacated in its entirety, MGA argued that certain categories of documents should continue to enjoy protected status.  MGA cannot now request that the Court grant eleventh hour, non-reciprocal relief from a Protective Order that MGA negotiated, entered into, used, and defended time and again.

<u>Id.</u> at 12-14 (emphasis in original).

<u>MGA Files the Present Motion.</u>  Ignoring all three previous orders, MGA filed the present motion to unseal all documents attached to the summary judgment motions.  Prior to bringing this motion, MGA did not conduct a meet and confer

1    between lead counsel, as required by this Court's June 7, 2010 Order.  Dkt. No. 8085
2    at 1.  While MGA cites a teleconference on December 1, 2010 as its basis for
3    complying with the Court's order, never during that conversation, which did not
4    address unsealing the record but instead various Rule 16 issues, did MGA ever advise
5    Mattel that it would be filing this motion.

6         To the contrary, MGA only raised the potential of this motion during a separate
7    call on December 1, 2010 between Patricia Glaser, who at the time had not been
8    approved as lead counsel by the Court, and Michael Zeller.  Ms. Glaser asked Mattel's
9    counsel if Mattel would consider stipulating to unsealing certain of the summary
10   judgment papers.  Mr. Zeller said that he would expect that Mattel would be amenable
11   to doing so consistent with the document identification and stipulation procedure that
12   had been used earlier with Judge Larson, but that he would confirm it with Mattel.  On
13   December 4, 2010, Mr. Zeller then emailed Ms. Glaser regarding the issue: "We will
14   get you a list of anything we think can be unsealed, *assuming that MGA will do the*
15   *same.  Please let us know*."[2]  MGA did not respond to Mattel, either with a phone call
16   or email.  Nor did it request or ever hold a meet and confer among the parties' lead
17   counsel.  It instead filed the instant motion, in violation of the Court's requirements.

18   **Argument**

19        Even putting aside MGA's disregard of Court orders in bringing its motion, the
20   Court has already denied identical requests from MGA *three* times.  MGA, just as it
21   did previously, seeks "summary judgment-related" filings, an "overbroad request
22   [that] does not accommodate Mattel's meaningful interest in the complete
23   preservation of the Attorneys' Eyes Only designation." Dkt. No. 254 at 3.  In fact,
24   MGA's motion does not even discuss the volume of filings – thousands of pages – that

---

26   [2]  Email from Michael Zeller to Patricia Glaser, dated December 4, 2010 at
27   12:25 a.m. (emphasis added).  As instructed previously by the Court, Mattel will
     provide this and other evidence referenced in this opposition upon the Court's
28   direction.

accompany Mattel's motion for partial summary judgment. Parsing through such a large volume of documents to cull out documents that should not be disclosed would be a monumental task to undertake on the eve of trial. In fact, the Court previously noted that "the Court is not inclined to parse through the summary judgment filings and make determinations, on the basis of last minute briefing, about what documents should be unsealed." Dkt. No. 8974 at 12.

Relying upon Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006), MGA urges that there is a presumption of "public access" to "dispositive pleadings." (Motion at 6). MGA's reliance on Kamakana is misplaced. Kamakana concerned the press' right to access the records in a case concerning potential police corruption *after* the case was settled. Kamakana, 447 F.3d at 1176. Here, however, the Court already denied MGA's arguments that the First Amendment somehow requires that all of Mattel's documents should be handed over to MGA and Larian. Dkt. No. 8974 at 12 ("MGA argues that the First Amendment requires civil proceedings to be public. This argument errs as a matter of law."). And as the Court has held, MGA waived its right to object on this basis by seeking, and using for its benefit, the protective order.

Kamakana had to do with the rights of the public, not individual litigants. As in NSA Telecomm, the parties here have already filed public-redacted versions, thus providing the public with much of the information regarding the case. In re NSA Telecomm. Records Litig., 2007 WL 549854 at *3-4 (N.D. Cal. Feb. 20, 2007) (holding that injunction motion does not trigger Kamakana and denying motion to unseal). Moreover, Kamakana dealt with a case that had already been settled; here, the Court has yet to rule on the summary judgment motions; those motions, moreover, largely sought only partial summary judgment, meaning that a ruling on them will not resolve the case on the merits. See NSA Telecomm., 2007 WL 549854 at *3-4 (decisive issue is whether a case is resolved on the merits). If MGA wants to publish its own confidential documents, it can do so – but it has not.

Indeed, Kamakana recognized that the possible release of trade secrets may justify the sealing of court records even in settled cases. 447 F.3d at 1179 (listing "use of records" to "release trade secrets" as compelling reason outweighing public interest) (citing Nixon v. Warner Communications., Inc., 435 U.S. 589, 598 (1978)). Here, the Court previously found that regarding "the misappropriation of trade secrets, both Mattel and MGA are sensitive to the disclosure of information they consider valuable," April 20 Order at 2, especially when "Mattel and MGA are direct competitors and Larian's review of Mattel's trade secret documents poses potential harm *even if* Larian abides by the terms of the Protective Order." Dkt. No. 254 at 2.

Mattel's summary judgment filings include detailed descriptions of valuable Mattel trade secrets and documents containing those secrets, including without limitation:

- Mattel's proprietary inventory management system (see Declaration of Laura Owens in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 8, 2010, ¶¶ 5-263 and accompanying documents (Dkt. No. 9060), and Declaration of Bryan Stockton in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 8, 2010, ¶¶ 4-6 and accompanying documents (Dkt. No. 9064), and Mattel, Inc.'s Corrected Separate Statement Of Uncontested Facts And Conclusions Of Law In Support Of Its Motion For Partial Summary Judgment at C 85 – C 165 (Dkt. No. 9156));

- Mattel's marketing strategies (see Declaration of Steve Totzke in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 12, 2010, ¶¶ 18-36 and accompanying documents (Dkt. No. 9066), and Mattel, Inc.'s Corrected Separate Statement Of Uncontested Facts And Conclusions Of Law In Support Of Its Motion For Partial Summary Judgment at C 166 – C 201(Dkt. No. 9156));

- Mattel customized marketing guidelines (see Declaration of Jill Nordquist in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 12, 2010, ¶¶ 8-14 and accompanying documents (Dkt. No. 9059), and Mattel, Inc.'s

Corrected Separate Statement Of Uncontested Facts And Conclusions Of Law In Support Of Its Motion For Partial Summary Judgment at D 62, I 291 – I 292 (Dkt. No. 9156));

- Mattel's marketing strategies (see Declaration of Roberto Isaias in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 11, 2010, ¶¶ 6-63 and accompanying documents (Dkt. No. 9054), Declaration of Allison Willensky in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 8, 2010, ¶¶ 3-10 and accompanying documents (Dkt. No. 9070), and Declaration of Ricardo Ibarra in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 12, 2010, ¶¶ 5-13 and accompanying documents (Dkt. No. 9053), and Mattel, Inc.'s Corrected Separate Statement Of Uncontested Facts And Conclusions Of Law In Support Of Its Motion For Partial Summary Judgment at I 164 – I 366 (Dkt. No. 9156));

- Mattel customized marketing techniques (see Declaration of David Traughber in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 11, 2010, ¶¶ 3-5 and accompanying documents (Dkt. No. 9067), and Mattel, Inc.'s Corrected Separate Statement Of Uncontested Facts And Conclusions Of Law In Support Of Its Motion For Partial Summary Judgment at C 31, C 81 - 84 (Dkt. No. 9156));

- Mattel research (see Declaration of Michael Shore in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 8, 2010, ¶¶ 3-8 and accompanying documents (Dkt. No. 9063), and Mattel, Inc.'s Corrected Separate Statement Of Uncontested Facts And Conclusions Of Law In Support Of Its Motion For Partial Summary Judgment at G 3, I 350 – I 351 (Dkt. No. 9156)); and

- Mattel international sales strategies (see Declaration of Guy Weisenburger in Support of Mattel Inc.'s Motion for Partial Summary Judgment, Oct. 11, 2010, ¶¶ 2-5 and accompanying documents (Dkt. No. 9069), and Mattel, Inc.'s Corrected Separate Statement Of Uncontested Facts And Conclusions Of Law In Support Of Its Motion For Partial Summary Judgment at I 94 – I 98 (Dkt. No. 9156)).

Kamakana also cautioned against improper grounds for making under seal documents public, such as disclosing documents to "gratify private spite [or to] promote public scandal." 447 F.3d at 1179. Isaac Larian has a history of attempting to use non-public information in this case to trade on publicly-traded Mattel securities for his own private gain. During the 2008 trial, Larian traded frequently and heavily in the market for Mattel stock, including short sales.[3] On other occasions, including this year, he disclosed to analysts covering Mattel both AEO and non-AEO discovery information from this case for the non-litigation purpose of attempting influence Mattel stock prices.[4] Larian also has disseminated AEO and non-AEO documents to the press, including on one occasion where he again used discovery information for the non-litigation purpose of falsely smearing Mattel with produced documents that were in fact created by a third-party, not Mattel.[5] Kamakana specifically warns against allowing court records to be used for such improper means.

Finally, MGA argues that Judge Larson's prior decisions control as to this motion. Motion at 2. However, this Court recently noted that:

> "Judge Larson only allowed the partial unsealing of documents on the basis of the parties' stipulation and, notably, trade secret documents remained under seal. There is no such stipulation here, and the Court is not inclined to parse through the summary judgment filings and make determinations, on the basis of last minute briefing, about what documents should be unsealed." Dkt. No. 8974 at 12.

Just as before, there is no stipulation and MGA offers absolutely no reason why many confidential Mattel documents, designated as trade secrets, should be simply thrown open to the public and to MGA and Larian. MGA conveniently ignores these

---

[3] See, e.g. MGA2 0062195-255 at MGA 0062211-213.
[4] Email from Isaac Larian dated October 12, 2010.
[5] See, e.g. MGA2 3688858 – MGA2 3688859.

points and the Court's prior Order. Accordingly, MGA's arguments, as before, are unavailing.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's Motion.

DATED: December 15, 2010    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Michael T. Zeller*
　　Michael T. Zeller
　　Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.