1 | MARK L. TUFT (SBN 43146)
   mtuft@cwclaw.com
2 | STEPHEN D. KAUS (SBN 57454)
   skaus@cwclaw.com
3 | COOPER, WHITE & COOPER LLP
   201 California Street, 17th Floor
4 | San Francisco, California  94111
   Telephone:  (415) 433-1900
5 | Facsimile:   (415) 433-5530

6 | Attorneys for Glaser Weil Fink Jacobs
   Howard & Shapiro LLP
7 |
   PATRICIA GLASER (SBN 056688)
8 |  pglaser@glaserweil.com
   ANDREW BAUM (SBN 190397)
9 |  abaum@glaserweil.com
   GLASER, WEIL, FINK, JACOBS,
10 |  HOWARD & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
11 | Los Angeles, California 90067
   Telephone:  (310) 553-3000
12 | Facsimile:  (310) 556-2920

13 | Attorneys for the MGA PARTIES

14 |

15 | **UNITED STATES DISTRICT COURT**

16 | **CENTRAL DISTRICT OF CALIFORNIA**

17 | **SOUTHERN DIVISION**

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 doc (RNBx) |
| Plaintiff, | Assigned to Hon. David O. Carter |
| vs. | **OPPOSITION TO MATTEL INC.'S MOTION TO DISQUALIFY GLASER WEIL** |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | Hearing Date:  December 20, 2010 |
| Defendant. | Time:            9:30 a.m. |
| | Place:           Courtroom 9D |
| | Discovery Cutoff:   October 4, 2010 |
| | Pre-Trial Conference:       January 4, 2011 |
| | Trial Date:            January 11, 2011 |
| AND CONSOLIDATED ACTIONS | |

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                                               CV 04-9049 doc (RNBX)
Opposition to Motion to Disqualify Glaser Weil

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................... i

I. INTRODUCTION ...................................................................... 1

II. FACTUAL BACKGROUND ......................................................... 3

III. LEGAL ARGUMENT ............................................................... 4

    A.    Applicable Standards Governing Motions to Disqualify ..................... 4

    B.    The Substantial Relationship Test Does Not Require Disqualification ............................................................... 5

        1.    Ms. Basinger Did Not Engage in Impermissible "Side-Switching" ......................................................... 6

        2.    Mattel Has Not Established a Substantial Relationship Between the *Viveros* Action and the Present Action ................. 10

        3.    The Majority of Ms. Basinger's Alleged Work for Mattel Is Not At All Related to the Current Action .............................. 14

    C.    *Kirk* Affirmed that Vicarious Disqualification Is Not Automatic and That An Appropriate Screen May Prevent Imputation of Conflicts .............................................................. 14

        1.    Screening Has Uniformly Been Approved as an Effective Means to Rebut the Presumption of Shared Confidences Outside the Private Law Firm Context ..................................... 16

        2.    California Courts Have Indicated That Screening May Also Be Effective to Rebut the Presumption in the Private Law Firm Context ...................................................... 17

        3.    The ABA Model Rules Recognize That Vicarious Disqualification Is Not Automatic and Screening May Rebut the Presumption of Shared Confidences ......................... 19

        4.    Vicarious Disqualification and Screening Is Decided in California on A Case-by-Case Basis .......................................... 20

    D.    Screening Is Appropriate to Rebut the Presumption of Shared Confidences ............................................................ 22

    E.    Glaser Weil's Screen is Effective to Rebut the Presumption of Shared Confidences ........................................................ 23

IV. CONCLUSION ...................................................................... 25

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1

CV 04-9049 doc (RNBX)

Opposition to Motion to Disqualify Glaser Weil

1

## **TABLE OF AUTHORITIES**

2
**Page**

3
<u>Cases</u>

4

5
*Adams v. Aerojet-General Corp.,*
    86 Cal.App.4th 1324 (2001)............................................................... 18, 20

6
*All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.,*
    No. C 07-1200, 2008 WL 5484552 ....................................................... 21

7

8
*Canatella v. California,*
    404 F.3d 1106 (9th Cir. 2005)................................................................. 5

9
*Chambers v. Sup. Ct.,*
    121 Cal. App. 3d 893 (1981) ................................................................ 17

10

11
*City & County of San Francisco v. Cobra Solutions, Inc.,*
    38 Cal.4th 839 (2006) ...................................................................... 8, 11

12
*City of Santa Barbara v. Superior Court,*
    122 Cal.App.4th 17 (2004) ........................................................ 9, 10, 17

13

14
*Cole v. Ruidoso Mun. Schools,*
    43 F.3d 1373 (10th Cir. 1994).................................................................. 4

15
*Farris v. Fireman's Fund Ins. Co.,*
    119 Cal.App.4th 671 (2004) ...................................................... 7, 11, 13

16

17
*Faughn v. Perez,*
    145 Cal.App.4th 592 (2006) ................................................................ 12

18
*Flatt v. Sup. Ct. (Daniel),*
    9 Cal.4th 275 (1994)....................................................... 5, 16, 17, 18

19

20
*Fremont Indemn. Co. v. Fremont Gen. Corp.,*
    143 Cal.App.4th 50 (2006) ............................................................ 10, 11

21
*Genentech, Inv. v. Sanofi-Aventis Deutschland GMGH,*
    No. C 08-04909 SI ............................................................................. 21

22

23
*Glaxo Group Ltd. v. Genentech, Inc.,*
    No. SA 10-CV-2764-MRP (C.D. Cal. June 15, 2010)........................ 15, 16

24
*H.F. Ahmanson & Co. v. Salomon Brothers,*
    229 Cal.App.3d 1445 (1991) ............................................................ 5, 10

25

26
*Henriksen v. Great Am. Sav. & Loan*
    11 Cal.App.4th 109 (1992) ............................................................. 9, 21

27
*In re Charlisse C.,*
    45 Cal.4th 145 (2008)......................................................................... 17

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

*In re Complex Asbestos Litigation,*
    232 Cal. App. 3d 572 (1991).................................................................... 17

*In re County of Los Angeles,*
    223 F.3d 990 (9th Cir. 2000)................................................................... 18

*In re Dresser Industries, Inc.,*
    972 F.2d 540 (5th Cir. 1992).................................................................... 4

*Lucent Techs. Inc. v. Gateway, Inc.*
    WL 2007 1461406........................................................................... 10, 21

*Manfredi & Levine v. Superior Court,*
    66 Cal.App.4th 1128 (1998)...................................................................... 7

*Meza v. H. Muehlstein & Co.,*
    176 Cal.App.4th 969 (2009)................................................................. 9, 21

*Ochoa v. Fordel, Inc.,*
    146 Cal.App.4th 898 (2007).................................................................... 8

*Openwave Sys. v. 724 Solutions (US) Inc.,*
    No. C 09-3511 RS, 2010 WL 1687825............................................... 15, 16

*People v. ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,*
    20 Cal.4th 1135 (1999)................................................................. 5, 18, 19

*Roesenfeld Constr. Co. v. Super. Ct.,*
    235 Cal.App.3d 566 (1991)................................................................... 10

*Shadow Traffic Network v. Sup. Ct.,*
    24 Cal. App. 4th 1067 (1994).............................................................. 17

*Sharp v. Next Entm't, Inc.,*
    163 Cal.App.4th 410 (2008).................................................................. 21

*Silicon Graphics, Inc. v. ATI Technologies, Inc.,*
    2010 WL 3860374 (W.D. Wis. Oct. 5, 2010) ...................................... 16, 19

*Smith, Smith & Kring v. Superior Court,*
    60 Cal.App.4th 573 (1997).................................................................. 12

*UMG Recordings, Inc. v. MySpace, Inc.*
    526 F.Supp.2d 1046 (C.D.Cal. 2007)................................................... 18, 22

*Western Digital Corp. v. Sup. Ct.,*
    60 Cal. App. 4th 1471 (1998)............................................................. 17

Other Authorities

Restatement The Law Governing Lawyers (Third) §124 ...................................... 14

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                  iii               CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1

Wolfram, *Former Client Conflicts*,
10 Georgetown Journal of Legal Ethics, 729-735 (1996-97).............................................. 20

2

3

**Rules**

4

CRPC 1-100(A).......................................................................................................... 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

# I. **INTRODUCTION**

Mattel's motion mischaracterizes attorney Jill Basinger's prior work at Quinn Emanuel and erroneously claims that by relocating from McDermott, Will & Emery LLP to Glaser Weil Fink Jacobs Howard and Shapiro LLP ("Glaser Weil"), she engaged in impermissible "side switching" requiring vicarious disqualification of the entire Glaser Weil firm.  Ms. Basinger, however, had no significant involvement in this action or any substantially related action.  She was not exposed to confidential information material to this matter.  Glaser Weil's timely and effective screening procedures, as approved in *Kirk v. First American Title Ins. Co.*, 183 Cal.App.4th 776 (2010), assure that any confidential information of Mattel has not been and will not be shared with MGA's lawyers.

Given Mattel's imprecision with the facts and its misapplication of the law, the motion can only be viewed as a litigation ploy, rather than a legitimate concern about confidentiality.  Mattel provides no evidence that Ms. Basinger or Glaser Weil obtained confidential information material to the current action or was in a position to obtain such information.  Ms. Basinger does not recall ever working on this case as a mid-level associate at Quinn Emanuel.  Even if she had, her involvement was clearly peripheral and does not constitute "side switching" that would automatically disqualify Glaser Weil.

Mattel's conclusory assertion that Ms. Basinger billed nine hours to this case reviewing documents for potential production more than five years ago is unsubstantiated and does not warrant vicarious disqualification of Glaser Weil. Notably, Mattel has not offered to provide MGA or the Court with any billing records *in camera* or otherwise to substantiate its claim.  Mattel's argument that work Ms. Basinger did on the *Viveros* action was substantially related to the current action also fails.  *Viveros* involved a dispute by an artist with Mattel about whether Mattel had infringed his original work in connection with Mattel's development of the "Diva Starz" product line.  Mr. Vivero's claims regarding Diva Starz are not at

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1

CV 04-9049 doc (RNBX)

Opposition to Motion to Disqualify Glaser Weil

issue in this action.  Nor has Mattel provided any competent evidence from which the Court could conclude that Ms. Basinger's work on the *Viveros* case exposed her to confidential information material to the disputed issues in the present action.

Even if the Court presumes that Ms. Basinger obtained material confidential information, Glaser Weil's timely implementation of an effective ethical wall precludes disqualification.  Mattel erroneously asserts that California law mandates vicarious disqualification of Glaser Weil and rejects ethical screening.  This assertion is directly contradicted by this year's Second District Court of Appeal decision in *Kirk, supra,* 183 Cal.App.4th at 793-794, which squarely held that ethical screens may prevent vicarious disqualification in the private law firm setting in appropriate factual circumstances similar to those involved here.  Since Judge Pfaelzer's decision in *Glaxo Group Ltd. v. Genentech, Inc.*, cited by Mattel, the California Supreme Court has both denied review of the *Kirk* case and has rejected a request to depublish it.  Prior to *Kirk*, California state and federal courts consistently determined vicarious disqualification on a case-by-case basis and as the *Kirk* court details, have not rejected the potential adequacy of ethical walls such as the one immediately created here by Glaser Weil.  The reality of dramatically increased lawyer mobility in private practice has enhanced recognition that ethical walls can ameliorate imputation in appropriate cases.[1]

---

[1] Quinn Emanuel's claim that ethical walls have no bearing on disqualification motions predicated on the substantial relationship test is inconsistent with their recent defense of a disqualification motion brought against their firm on similar grounds. *See Lutron Electronics Co., Inc. v. Crestron Electronics, Inc., et al.*, No. 2:09-cv-707 (Dist. Ut. Nov. 12, 2010) (Memorandum Decision and Order), attached hereto as Exhibit 1; *see also* Request for Judicial Notice In Support of Opposition, Exh. A.  In *Lutron*, Quinn Emanuel argued on its own behalf that the prior activity of the lawyer joining their firm was too attenuated to create a substantial relationship and that an ethical wall was sufficient to prevent imputation of any conflict.

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

A client's right to counsel of choice and potential prejudice are important factors in deciding a disqualification motion. Glaser Weil is lead trial counsel on MGA's trial team. Depriving MGA of its lead trial counsel on the eve of trial, based on the strained facts and theories posited by Mattel, would be significantly prejudicial to MGA.

Because there is not a sufficient showing, based on either facts or a justified presumption, that Ms. Basinger had access to Mattel's confidential material information and because, in any event, Glaser Weil timely created an effective ethical screen, Mattel's motion must be denied.

## II. FACTUAL BACKGROUND

In 2002, Ms. Basinger joined Quinn Emanuel as an associate. Basinger Decl., ¶ 3. She left Quinn Emanuel in March 2006 to join McDermott, Will & Emery. *Id.* Ms. Basinger joined Glaser Weil as a non-equity partner on November 11, 2010. *Id.*; Baum Decl., ¶ 2. Mattel erroneously implies that the 1400 hours it claims Ms. Basinger worked at Quinn Emanuel is somehow related to the present action. Ms. Basinger, however, does not recall having ever worked on the current action. Basinger Decl., ¶ 6. In fact, the bulk of her time related to Mattel was spent on one matter that Mattel fails to even describe. *Id.*, ¶¶ 5, 8. That matter, *Mattel v. Burrago*, involved a copyright claim based on Burrago's selling of Ferrari replicas. *Burrago* had nothing to do with dolls or the issues in dispute in this action. *Id.*

Ms. Basinger's work at Quinn Emanuel also included work on a matter titled *Viveros v. Mattel*. *Id.*, ¶¶ 6, 8. The plaintiff in *Viveros* was a Mexican artist who created a series of drawings of a doll named "Papui." *Id.*, ¶¶ 7-8 and Exh. A. Mr. Viveros registered the drawings with the Mexican Public Registry of the Rights of Authors. *Id.* He subsequently met with a representative from Mattel de Mexico and left his drawings with her. *Id.* Several years later, Mr. Viveros and his daughter saw a television commercial for a doll called "Diva Starz." *Id.* Mr. Viveros alleged that Diva Starz infringed his copyright and brought a complaint against Mattel for

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                          3                        CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1   copyright infringement, breach of implied contract, and unjust enrichment. *Id.*  The
2   issues in *Viveros* involved who created Diva Starz and did not involve MGA or
3   "Bratz." *Id.*  Ms. Basinger was unaware of the complaint and allegations in this
4   action at the time she worked on *Viveros*. *Id.*, ¶ 6.  Her limited work on *Viveros*
5   focused on briefing Michael Zeller on and attending Mattel's deposition of Mr.
6   Viveros. *Id.*, ¶ 8.  Ms. Basinger was also tasked with researching contacts Mr.
7   Viveros had, or was alleged to have had, with both Mattel de Mexico and Mattel
8   USA. *Id.*  The work Ms. Basinger performed and communications she engaged in
9   addressed the legal claims that Mr. Viveros created the original art for Diva Starz
10  and Mattel infringed it. *Id.*, ¶ 9.  As a mid-level associate, Ms. Basinger was not
11  permitted to have substantive contacts with in-house counsel for Mattel. *Id.*

12      Out of an abundance of caution, Glaser Weil implemented a timely and
13  effective ethical wall when Ms. Basinger joined the firm, including comprehensive
14  screening procedures pursuant to applicable legal standards, which both Ms.
15  Basinger and Glaser Weil have followed. *Id.*, ¶ 11; Baum Decl., ¶¶ 5-7.  The details
16  of the ethical wall are set out in Section III.D.

17                          **III.  LEGAL ARGUMENT**

18  **A.    Applicable Standards Governing Motions to Disqualify**

19      In federal courts, motions to disqualify are governed by two sources of
20  authority. *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994).
21  First, attorneys are bound by the local rules of the court in which they appear.
22  Federal district courts usually adopt the Rules of Professional Conduct of the states
23  where they are situated.  Second, because motions to disqualify counsel in federal
24  proceedings are substantive motions affecting the rights of the parties, they are
25  decided by applying standards developed under federal law.  Accordingly, motions
26  to disqualify are governed by the ethical rules announced by the national profession
27  and considered "in light of the public interest and the litigants' rights." *Id.* at 1383
28  (citing *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992)).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    4                        CV 04-9049 doc (RNBx)
                      Opposition to Motion to Disqualify Glaser Weil

1    As Mattel acknowledges, by local rule, attorneys appearing in a United States

2  District Court of California are subject to California law as it pertains to issues of

3  professional conduct. *See* L.R. 83-3.1.2; *Canatella v. California,* 404 F.3d 1106,

4  1110-1111 (9th Cir. 2005). Under California law, vicarious disqualification is

5  decided on a case-by-case basis. *See Kirk*, *supra*, 183 Cal.App.4th at 793-794. The

6  party moving to disqualify has the burden of proving by competent evidence that

7  disqualification is required. *See Elliott v. McFarland Unified Dist.,* 165 Cal.App.3d

8  562, 572 (1985). Conflicts arising from successive representation of clients involve

9  a tension between the interests of a former client in ensuring the confidentiality of

10  matters disclosed to the attorney in the former representation and the freedom of the

11  subsequent client to counsel of choice. *Flatt v. Sup. Ct. (Daniel),* 9 Cal.4th 275, 283

12  (1994). Disqualification motions therefore involve concerns that require careful

13  analytical analysis. *People v. ex rel. Dept. of Corporations v. SpeeDee Oil Change*

14  *Systems, Inc.,* 20 Cal.4th 1135, 1143-1144 (1999). The chief fiduciary value at issue

15  in successive representation conflicts is client confidentiality. *Flatt*, *supra*, 9 Cal.4th

16  at 283. Because motions to disqualify are prone to tactical abuse, they must be

17  examined closely "to ensure that literalism does not deny the parties substantial

18  justice." *SpeeDee Oil Change*, *supra*, 20 Cal.4th at 1144.

19  **B.**    **The Substantial Relationship Test Does Not Require Disqualification**

20    Mattel's motion fails to apply the relevant legal standards in an analytical

21  manner as required by California case law. Instead, Mattel lumps together a variety

22  of legal issues and different factual circumstances to argue that *per se*

23  disqualification is required. Careful analysis of Mattel's arguments demonstrates its

24  failure to show that disqualification is warranted. *See Elliott*, *supra*, 165 Cal.App.3d

25  at 572; *see also H.F. Ahmanson & Co. v. Salomon Brothers,* 229 Cal.App.3d 1445,

26  1453-1545 (1991) (an overly broad application "may unfairly limit the employment

27  opportunities of lawyers" and "stifle development of expertise in complex areas of

28  law").

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                   5                        CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

### 1.   Ms. Basinger Did Not Engage in Impermissible "Side-Switching"

Mattel's first claim with respect to the substantial relationship test is the assertion that Ms. Basinger previously billed nine hours to this matter, at some unidentified time more than five years ago, while employed as a mid-level associate at Quinn Emanuel and that therefore, she engaged in "side-switching."  Mattel relies entirely on the conclusory non-specific declaration of Mr. Zeller in support of its claim.  It has not even offered to show redacted billing information to Glaser Weil or the Court to support its assertion.  Ms. Basinger disputes Mattel's claim that she worked on the case because she does not recall performing any work on the case and the only information she obtained regarding this action was acquired through news stories after she left Quinn Emanuel.  Basinger Decl., ¶ 6.  Even if Mattel's claim were true, it has failed to establish that work allegedly performed by Ms. Basinger was of the type that courts have found warrant per se disqualification.

Mattel's assertion regarding Ms. Basinger's prior work on this matter is limited to Mr. Zeller's single conclusory statement that she "communicated with Mike Zeller and reviewed confidential Mattel Systems and files for potential production."  Zeller Decl., ¶ 4.  This statement is devoid of any facts that would support disqualification.  Mr. Zeller does not assert that the alleged communications involved discussion of confidential information or information that is material to the issues in the present litigation.  Ms. Basinger's alleged work may have related generally to Mattel and allocated to multiple matters by the billing partner or Ms. Basinger, or the alleged time may have been erroneously billed to this matter by Ms. Basinger or her assistant.  Mr. Zeller's declaration fails to describe the nature and context of the alleged communications.  While Mattel is not obligated to disclose the actual content of the communications, it must make some showing of the nature of the communications and their relationship to the current representation.  See Elliot, supra, 165 Cal.App.3d at 572 (conclusory statements are insufficient to support disqualification); see also Manfredi & Levine v. Sup. Ct., 66 Cal.App.4th 1128

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1

6

CV 04-9049 doc (RNBx)

Opposition to Motion to Disqualify Glaser Weil

1  (1998) (moving party must describe the general nature of the alleged confidential

2  communications, as fully as possible but within the confines of privilege).

3      Mr. Zeller's reference to reviewing "Mattel Systems and files" is likewise

4  deficient.  Mr. Zeller does not explain what is meant by "Mattel Systems" or

5  whether Ms. Basinger obtained any information not otherwise produced that is

6  confidential and material to the issues here.  *See* Basinger Decl., ¶ 10.  A file could,

7  for example, be "confidential" because it involves trade secrets, but nevertheless be

8  produced in litigation under a protective order.  A lawyer's mere exposure to

9  confidential information while representing a former client does not itself warrant

10  disqualification.  The confidential information acquired in the prior representation

11  must be material to the current representation; that is, it must be found to be

12  "directly at issue in," or have "some critical importance to, the current matter."

13  *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal.App.4th 698, 712-713 (2003); *Farris v.*

14  *Fireman's Fund Ins. Co.,* 119 Cal.App.4th 671, 680 (2004).[2]  Even assuming Ms.

15  Basinger reviewed confidential "Mattel Systems and files" relating to Diva Starz or

16  other products, that were not produced, Mr. Zeller's declaration lacks any facts

17  demonstrating such documents are material to the issues being disputed in this case.

18      At best, Mattel's evidence indicates Ms. Basinger's alleged brief involvement

19  in this action was peripheral.  Where an attorney's former relationship with a client

20  is peripheral or attenuated, the presumption the attorney acquired confidential

21  information material to the current representation does not apply absent a showing

22  the attorney "was in a position vis-à-vis the client to likely have acquired

23  confidential information material to the current representation." *Jessen*, *supra*, 111

24  Cal.App.4th at 710; *City & County of San Francisco v. Cobra Solutions, Inc,.* 38

---

[2] Mattel's discussion of the substantial relationship test deceptively omits this materiality requirement.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1  Cal.4[th] 839, 847 (2006);  *see also* ABA Opinion No. 99-145 (a distinction may be

2  made "between a lawyer who has been heavily involved in a matter and one who has

3  been only peripherally involved").  California courts recognize, based on policy

4  reasons, that a "modified" version of the substantial relationship test can apply, even

5  where a migrating lawyer has had prior contact in the same matter.  In such cases,

6  disqualification of the lawyer and his or her new firm is not "automatic," but turns

7  on whether the facts support a conclusion that the migrating lawyer actually

8  obtained confidential information material to the current action.  *See Ochoa v.*

9  *Fordel, Inc.,* 146 Cal.App.4[th] 898 (2007).

10  In *Ochoa*, a lawyer for a firm handling the defense of a matter moved to the

11  plaintiff's firm.  *Id.* at 901.  While at his former firm, the lawyer reviewed some

12  documents related to the former client's case and discussed a legal issue with the

13  attorney heading up the handling of the former client's matter, but had no sustained

14  involvement in the matter and was not part of the litigation team.  *Id.* at 902-903.

15  Because there was no proof the firm-switching attorney actually obtained material

16  confidential information during the prior attorney-client relationship, and his

17  relationship with the prior matter was peripheral and attenuated, the court applied a

18  "modified substantial relationship test" and denied disqualification.  *Id.* at 901.  The

19  court expressly rejected the contention that the firm-switching attorney had to

20  demonstrate "no opportunity" to obtain confidential information.  *Id.* at 911-912.

21  Here, the disputed assertion that Ms. Basinger spent nine hours reviewing

22  documents for potential production indicates, if anything, only a peripheral contact,

23  and does not demonstrate she was likely to have acquired confidential information

24  material to the present action.  Ms. Basinger's declaration further refutes any

25  argument she is likely to have acquired such information.  Ms. Basinger was

26  employed at Quinn Emanuel as a mid-level associate starting in 2002 and left Quinn

27  Emanuel in 2006.  Basinger Decl., ¶ 3.  She never communicated with, nor is she

28  alleged to have communicated with, anyone at Mattel regarding the present action.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    8                    CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1   *Id.*, ¶¶ 6, 10.  She was never part of the litigation team for this action, and does not

2   recall having any knowledge of this case while employed at Quinn Emanuel.  *Id.*

3   The only information she recalls obtaining about the case and its issues was through

4   news stories <u>after</u> she departed Quinn Emanuel.  *Id.*, ¶ 6.  *See Ochoa, supra,* 146

5   Cal.App.4[th] at 910 ("Witnesses must necessarily rely on their memories and it falls

6   within the province of the superior court, sitting as the trier of fact, to resolve

7   whether recollections of a targeted attorney are reliable enough to carry the burden

8   of proof imposed [under the modified substantial relationship test].").

9       The cases relied upon by Mattel for its "side-switching" argument are all

10   distinguishable.  In *Henriksen v. Great Am. Sav. & Loan,* 11 Cal.App.4[th] 109 (1992),

11   the migrating lawyer acknowledged spending "in excess of 200 hours learning the

12   case, attending and taking depositions, appearing in court, retaining and preparing

13   expert witnesses, and doing other work that needed to be done on the file."  *Id.* at

14   112.  His involvement was not attenuated and the parties conceded he obtained

15   material confidential information.  *Id.* at 114.  Similarly, in *Meza v. H. Muehlstein &*

16   *Co.,* 176 Cal.App.4[th] 969 (2009), the migrating lawyer conceded he had been

17   involved in confidential and privileged discussions with other defense counsel

18   regarding "(1) the plaintiff, including her medical condition, discrepancies in her

19   claims, and her presentation as a witness, (2) the plaintiff's attorneys, anticipating

20   and analyzing their litigation strategies, (3) the plaintiff's percipient and expert

21   witnesses, (4) the joint defense consultants and experts, (5) a site assessment

22   performed at the location where the plaintiff was employed, (6) trial preparation and

23   strategy, and (7) other factual issues and legal strategies."  *Meza, supra,* 176

24   Cal.App.4[th] at 975.

25       The *dicta* Mattel references in *Cobra Solutions, supra,* 38 Cal.4[th] at 846, is

26   also off-point because *Cobra Solutions* did not address side-switching.  Moreover,

27   the case it cites did address side-switching and is easily distinguishable.  *Id.* (citing

28   *City of Santa Barbara v. Superior Court,* 122 Cal.App.4[th] 17, 23 (2004)).  In *City of*

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    9                    CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1    *Santa Barbara*, the migrating lawyer was responsible for approximately 40% of the

2    billed time on the former client's matter, and met with the former client to discuss

3    the factual and legal basis for the lawsuit and to develop a strategy for pursuing the

4    client's claims.  *City of Santa Barbara, supra*, 122 Cal.App.4th at 21.[3]  Mattel's

5    reference to *Lucent Techs. Inc. v. Gateway, Inc.*, 2007 WL 1461406 (S.D. Cal. May

6    15, 2007) misses the mark for similar reasons.  In *Lucent*, the migrating lawyer

7    billed 2300 hours on the same matter for the former client, was admitted *pro hac*

8    *vice* as counsel in the matter, participated in depositions, worked with experts,

9    assisted in drafting briefs, and it was undisputed he obtained material confidential

10   information.  *Id.* at *1.

11   **2.    Mattel Has Not Established a Substantial Relationship Between the**
         ***Viveros* Action and the Present Action**

12

13      Mattel's second argument is that disqualification is required because Ms.

14   Basinger spent 123 hours working on *Viveros v. Mattel* while employed at Quinn

15   Emanuel, and that *Viveros* is substantially related to the current action.  Once again,

16   Mattel's brief does not engage in a careful and analytical analysis, but rather relies

17   on conclusory statements and unsupported inferences that fail to meet its burden of

18   establishing a substantial relationship between the two actions.

19      Mere possession of a former client's confidential information does not provide

20   grounds for disqualification.  "[O]nly when such information will be directly in issue

21

22   _____

23   [3] Mattel's additional references to the *dicta* in *H.F. Ahmanson & Co. v. Salomon Bros., Inc.,* 229 Cal.App.3d 1445 (1999), *Fremont Indemn. Co. v. Fremont Gen.*

24   *Corp.,* 143 Cal.App.4th 50 (2006), and *Rosenfeld Constr. Co. v. Super. Ct.,* 235 Cal.App.3d 566 (1991), are also inapposite since these cases did not allege side-

25   switching.  Moreover, the appellate courts found that there was no basis to

26   vicariously disqualify the law firms in both *H.F. Ahmanson* and *Freemont.  See H.F. Ahmanson, supra,* 229 Cal.App.3d at 1460; *Freemont Indem., supra,* 143

27   Cal.App.4th at 70.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                              10                    CV 04-9049 doc (RNBx)
                    Opposition to Motion to Disqualify Glaser Weil

1   or of unusual value in the subsequent matter will it be independently relevant in

2   assessing a substantial relationship." *Fremont Indemnity Co. v. Fremont General*

3   *Corp.,* 143 Cal.App.4th 50, 69 (2006).  "The subject of a current representation is

4   substantially related to the subject of a prior representation only if the issues are

5   sufficiently similar to support a reasonable inference that the attorney in the course

6   of the prior representation was likely to have obtained confidential information

7   material to the current representation." *Id.* at 67 (emphasis added); *Cobra Solutions*,

8   *supra*, 38 Cal.4th 839 at 847.  The test turns on the "similarities between the legal

9   problem involved in the former representation and the legal problem involved in the

10  current representation." *Farris, supra*, 119 Cal.App.4th at 681.

11        At bottom, Mattel's substantial relationship argument reduces to an assertion

12  that because both cases involved copyright infringement claims they are necessarily

13  substantially related.  There is no evidence the legal dispute between Mr. Viveros

14  and Mattel about whether Mattel infringed his copyright, whether he had an implied

15  contract, and whether Mattel was unjustly enriched, is material to this action.  This

16  case does not involve Mr. Vivero's claims regarding infringement of his original

17  "Papui" art by "Diva Starz."  It involves Mattel's claim that MGA's "Bratz" violates

18  copyrights held by Mattel.  MGA is not, and never has been, a stakeholder in the

19  Diva Starz products.  Nor is there any showing Ms. Basinger's work on *Viveros*

20  would have exposed her to confidential information material to the current action.

21  Her declaration confirms her belief that she was not aware of this action at the time

22  she worked on *Viveros*.  Her limited work on *Viveros* focused on the legal issues

23  between Mr. Viveros and Mattel regarding Mr. Vivero's claims he created the

24  original art for Diva Starz through his Papui drawings.  Mr. Zeller's assertion that

25  Ms. Basinger was exposed to "litigation strategies" regarding Mr. Vivero's claims

26  does not establish a substantial relationship.  California case law has expressly

27  rejected this "playbook" theory of disqualification. *Fremont Indem., supra*, 143

28  Cal.App.4th at 69.  Moreover, Ms. Basinger's declaration confirms that to the extent

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    11                    CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1   she could have been exposed to any "litigation strategies" they would have been

2   with regard to Mr. Vivero's claims that he created the original art for Diva Starz

3   through the Papui drawings, not any strategies dealing with the development of

4   Bratz.  In any event, Mr. Zeller's conclusory statements, without explanation, are not

5   sufficient to support disqualification.

6        Mr. Zeller states, again in conclusory fashion, that *Viveros* "overlapped in

7   issues and discovery with the MGA litigation."  Zeller Decl., ¶ 5.  His declaration

8   contains no facts identifying these allegedly overlapping issues.  Moreover, while he

9   states that Ms. Basinger performed various "tasks" for *Viveros*, he does not assert

10  and provides no evidence that the tasks performed would have exposed her to

11  confidential information that is material to the issues in this case.  Mr. Zeller's

12  conclusory, vague and factually devoid declaration does not come close to satisfying

13  Mattel's burden of proof.  *See Faughn v. Perez,* 145 Cal.App.4th 592, 606-608

14  (2006) (a moving party cannot rely upon inferences about facts within its control

15  which could be disclosed without compromising confidential information); *see also*

16  *Smith, Smith & Kring v. Superior Court*, 60 Cal.App.4th 573, 581-582 (1997)

17  ("Speculative contentions of conflict of interest cannot justify disqualification of

18  counsel.").  In any event, the mere fact two actions could involve litigation of the

19  same types of issues (e.g., claims of copyright infringement based on early

20  drawings) is not sufficient to establish a substantial relationship.  *See Perez*, *supra*,

21  145 Cal.App.4th at 605; *see also Fremont Indem.*, *supra*, 143 Cal.App.4th at 69.

22       Mr. Zeller's further assertion that certain documents pertaining to Diva Starz

23  have been produced in this action, and that some of these documents may have been

24  reviewed by Ms. Basinger while working on *Viveros* (Zeller Decl., ¶ 5) in response

25  to Mr. Vivero's claims regarding his Papui drawings, fails to establish a substantial

26  relationship.  Mattel cites no authority for the illogical proposition that simply

27  because a document may fall within the scope of discovery in two actions, the

28  actions are substantially related for purposes of disqualification.  Mattel's assertion

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    12                    CV 04-9049 doc (RNBx)
                        Opposition to Motion to Disqualify Glaser Weil

1  is the type of overly-literal interpretation California courts have rejected in applying

2  the substantial relationship test. *See SpeeDee Oil*, *supra*, 20 Cal.4[th] at 1144.

3          Mattel's misguided effort to equate "discovery relevance" to an identity of

4  issues for disqualification purposes is a red herring.  MGA has not, as Mattel

5  disingenuously claims, ever asserted that there is a "substantial relationship"

6  between the two actions.  Motion, p. 1:27-28.  The potential relevance of certain

7  Diva Starz documents to MGA's statute of limitations defense, does not mean the

8  *Viveros* action is substantially related.  Mattel's gamesmanship is revealed by its

9  contention that MGA's Motion to Compel establishes a substantial relationship.

10  Mot., p. 1:27-28 and p. 2:1-4.  The Motion to Compel references a <u>single</u> RFP (No.

11  139) and states: "[t]his request seeks documents relating to the similarities or

12  differences between 'Bratz' and 'Diva Starz,' but only to the extent that Mattel

13  contends that 'Bratz' was derived from 'Diva Starz.'"  Baum, ¶ 10, Exh. B.  The

14  *Viveros* action did not involve any claim regarding purported similarities between

15  Diva Starz and Bratz.  It involved purported similarities between Mr. Vivero's

16  "Papui" drawing and Diva Starz.  Mattel has not shown that Ms. Basinger's prior

17  involvement with *Viveros* would have exposed her to "confidential" information

18  material to MGA's defenses.  The potential relevance of some documents regarding

19  Diva Starz to an MGA defense does not warrant vicarious disqualification of Glaser

20  Weil.  For the same reason, the mere reference to Diva Starz in MGA's motion for

21  summary judgment with regard to the name "Bratz" for a fashion doll and statute of

22  limitations defense (matters unrelated to Mr. Vivero's claims of infringement) does

23  not establish a substantial relationship between this action and the *Viveros* action.

24  *Farris*, *supra*, 119 Cal.App.4th at 681.

25          Although Mr. Zeller claims Ms. Basinger reviewed most of the Diva Starz

26  documents produced in this action while working on *Viveros* (Zeller Decl., ¶ 2), he

27  does not state that she reviewed or was exposed to any confidential documents that

28  were not produced.  Indeed, the obvious wordsmithing of Mr. Zeller's declaration is

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    13                      CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1 revealed by his failure to assert the degree of Ms. Basinger's alleged involvement in

2 collecting and reviewing documents in the *Viveros* action, stating instead that they

3 were "collected and reviewed as part of the Viveros case by Ms. Basinger, *among*

4 *other Quinn Emanuel attorneys*." Zeller Decl., ¶ 5, (emphasis added). The mere

5 fact Mattel may have reproduced, for efficiency purposes in discovery, non-

6 privileged documents that were previously collected in a different action does not

7 create a substantial relationship and is not a basis for imposing vicarious

8 disqualification.

9       **3.    The Majority of Ms. Basinger's Alleged Work for Mattel Is Not At All Related to the Current Action**

10

11       Mattel's final argument for disqualification is predicated on the assertion Ms.

12 Basinger worked over 1400 hours "on Mattel matters" while at Quinn Emanuel.

13 Motion, p. 1:20; Zeller Decl., ¶ 5. Mattel deceptively omits that the great majority

14 of her time was spent on a matter not even conceivably related to this action. The

15 vast majority of her hours at Quinn Emanuel related to a matter called *Mattel v.*

16 *Burrago*. Basinger Decl., ¶¶ 5, 8. Mattel has not submitted any evidence the

17 *Burrago* action is substantially related to the present case, nor could it. *Burrago*

18 involved Mattel's claim that the sale of Ferrari replicas infringed Ferrari's copyright

19 and design patents (for which Mattel was a licensee). The case had nothing to do

20 with the matters or products in dispute in this litigation. *See also* Restatement The

21 Law Governing Lawyers (Third) §124, at 297-298.

22 **C.   *Kirk* Affirmed that Vicarious Disqualification Is Not Automatic and That An Appropriate Screen May Prevent Imputation of Conflicts**

23

24       Even if Mattel were to provide an adequate record to justify a presumption of

25 imputation of Ms. Basinger's alleged conflict to other lawyers at Glaser Weil,

26 vicarious disqualification is not automatic and may be overcome by an effective and

27 timely screen.

28       The Second District Court of Appeal recently affirmed in *Kirk*, *supra*, 183

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                        14                CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1   Cal.App.4th 776, that imputation of a conflict of interest may, in certain

2   circumstances, be prevented in private sector lateral transfers through the use of

3   timely and effective screening procedures.  In *Kirk*, counsel for plaintiffs in four

4   class actions brought against a title insurance company spoke with an attorney for

5   another insurance company and solicited his services as plaintiffs' consultant.  *Id.* at

6   786.  During this conversation, plaintiffs' counsel disclosed confidential information

7   to the attorney material to the class actions.  *Id.*  The attorney declined the

8   assignment and later joined a private law firm.  *Id.* at 787.  Plaintiffs' counsel

9   subsequently emailed the attorney at the firm to solicit his services and forwarded

10  him edited versions of the complaints in the class actions, which identified the

11  primary issues.  *Id.*  The attorney again declined the assignment as plaintiffs'

12  consultant and represented that he had deleted the attached complaints because his

13  law firm represented the defendant in the same actions.  *Id.*  Later, lawyers for the

14  defendant in the class action cases joined the same law firm.  *Id.*  It was undisputed

15  that the tainted lawyer had acquired material confidential information in

16  communications with plaintiffs' counsel about the <u>same cases</u>.  *Id.* at 785-786, 791.

17  The court, nevertheless, found that, under these facts, vicarious disqualification of

18  the law firm was not automatic and could be rebutted by proper screening measures.

19  *Id.* at 814.

20        On June 23, 2010, the Supreme Court denied a petition for review in *Kirk* and

21  a request that the decision be de-published.  *Kirk v. First American Title Ins. Co.*,

22  No. S182775, 2010 Cal. LEXIS 5771 (Cal. June 23, 2010).  Accordingly, *Kirk* is

23  good law in California.  Yet, Mattel improperly relies on two unpublished federal

24  district court cases decided before *Kirk* became final to support its argument that

25  *Kirk* should not be considered by this Court.  *See Glaxo Group Ltd. v. Genentech,*

26  *Inc.*, No. SA 10-CV-2764-MRP (C.D. Cal. June 15, 2010); *Openwave Sys. v. 724*

27  *Solutions (US) Inc.*, No. C 09-3511 RS, 2010 WL 1687825, at *5, n. 6 (N.D. Cal.

28  Apr. 22, 2010).  As described in section C.2, the court in *Glaxo* incorrectly relied on

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    15                    CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1  *dicta* in *Flatt* in deciding not to follow *Kirk*.  Unlike this case, *Flatt* involved

2  <u>concurrent</u> representation of conflicting interests and did not address vicarious

3  disqualification or ethical walls.  Moreover, *Glaxo* is clearly distinguishable

4  because, unlike Ms. Basinger, the lateral attorney in that case was significantly

5  involved in a substantially related matter and the hiring law firm failed to timely

6  screen the attorney.  *Id.* at *6-7.  *Openwave* is also inapposite because it did not

7  involve double imputation as is the case here.  Rather, the case involved the <u>same</u>

8  <u>law firm's</u> prior representation of the opposing party in a substantially related matter.

9  *Openwave, supra*, 2010 WL 1687825 at *6.  The court acknowledged that it was

10  free to follow *Kirk* notwithstanding its non-final and appellate status, but that

11  disqualification was appropriate based on the nature and scope of the firm's prior

12  representation and the failure of the firm to timely and effectively implement an

13  ethical wall.  *Id.*

14      In a recent federal district court opinion, the court cited favorably to *Kirk* in

15  approving a <u>timely</u> erected ethical wall as an effective means to avoid vicarious

16  disqualification of an entire law firm based on the tainted partner's prior work on the

17  <u>same matter</u>.  *Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 2010 WL 3860374

18  (W.D. Wis. Oct. 5, 2010).  In finding that there was "no appreciable risk" that the

19  partner would share confidential information with the firm, the court emphasized

20  that the quantity of time the partner billed to the same matter (186 hours) did not

21  affect the adequacy of the screen because he had little contact with the clients, his

22  work was limited to assisting his partners with discrete tasks, and much of his work

23  no longer had any relevance to the issues in the case.  *Id.* at *14-17.

24      **1.    Screening Has Uniformly Been Approved as an Effective Means to**
        **Rebut the Presumption of Shared Confidences Outside the Private**
25      **Law Firm Context**

26      Contrary to Mattel's contention, *Kirk* is not an "outlier" and its holding is

27  consistent with prior law.  Prior to *Kirk*, California state and federal courts have

28  acknowledged that screening may be sufficient to rebut the presumption of shared

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                      16                        CV 04-9049 doc (RNBx)
                        Opposition to Motion to Disqualify Glaser Weil

1  confidences between affiliated lawyers for purposes of imputed disqualification in

2  successive representative cases.  In particular, California courts have approved

3  screening to rebut the presumption of imputed knowledge in the non-private law

4  firm setting.  For example, screening has protected against the presumption of

5  shared confidences when hiring former government lawyers (*Chambers v. Sup. Ct.*,

6  121 Cal. App. 3d 893 (1981)) as well as private lawyers joining a government

7  office.  *City of Santa Barbara v. Sup. Ct.* (2004) 122 Cal. App. 4th 17.  Screening

8  can also rebut the presumption of shared confidences when hiring an opposing

9  counsel's former paralegal or secretary (*In re Complex Asbestos Litigation*, 232 Cal.

10 App. 3d 572 (1991)) or an expert previously consulted by the other side.  *Shadow*

11 *Traffic Network v. Sup. Ct.*, 24 Cal. App. 4th 1067, 1086-1087 fn. 13 (1994)

12 ("Another way to rebut the presumption that confidential information has been

13 disclosed is to show that the newly hired person will have no connection with any

14 litigation in which the confidential information could be used."); *Western Digital*

15 *Corp. v. Sup. Ct.*, 60 Cal. App. 4th 1471 (1998) (disqualification of expert was

16 improper where wall was erected and there was no showing expert actually obtained

17 material confidential information).  More recently, the California Supreme Court

18 stated the existence of an effective ethical wall would avoid vicarious

19 disqualification of a publicly-funded law firm.  *In re Charlisse C.*, 45 Cal.4th 145,

20 162-168 (2008).

21      **2.      California Courts Have Indicated That Screening May Also Be Effective to Rebut the Presumption in the Private Law Firm**

22      **Context**

23      Mattel incorrectly claims that *Kirk* contradicts the California Supreme Court's

24 *dicta* in *Flatt, supra,* 9 Cal.4th at 283 that once the substantial relationship test is

25 met, "disqualification of the attorney's representation of the second client is

26 mandatory; indeed the disqualification extends vicariously to the entire firm."  *Flatt*,

27 a legal malpractice action, involved <u>concurrent</u> representation of conflicting

28 interests, not successive representation.  The issue of vicarious disqualification or

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                      17                         CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1    ethical walls was not present in *Flatt*. *Id.* at 279. *Flatt* pointed out that the dangers

2    inherent in concurrent representation conflicts are greater than in successive

3    representation conflicts because in concurrent representation matters a client may

4    rightly question the "loyalty" of the attorney with respect to the present

5    representation, and therefore a more stringent standard of "per se" or "automatic"

6    disqualification is appropriate. *Id.* at 284-285.

7          Five years after *Flatt* was decided, in a case involving an attorney's

8    representation of one party while the firm where he was of counsel simultaneously

9    represented an adverse party to the same litigation, the California Supreme Court

10   opened the door to screening as an effective means to rebut the presumption of

11   shared confidences. *SpeeDee Oil, supra*, 20 Cal.4th at 1152. The Court ultimately

12   decided, however, that "[t]he record provides no basis for considering whether an

13   ethical screen, or other means of protecting the [client's] confidences, could serve

14   the same prophylactic purposes of disqualification." *Id.* The Ninth Circuit

15   interpreted *SpeeDee Oil* as "casting doubt" on the general rule that the presumption

16   of shared confidences is irrebuttable and "sending a signal that the California

17   Supreme Court may well adopt a more flexible approach to vicarious

18   disqualification." *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)

19   (approving of screening of federal magistrate judge moving to private law firm).

20   This Court has also acknowledged that the California Supreme Court may well

21   authorize a screen in the appropriate circumstances. *See UMG Recordings, Inc. v.*

22   *MySpace, Inc.,* 526 F.Supp.2d 1046, 1060-1066 (C.D.Cal. 2007) (court considered

23   the timely implementation of an ethical wall to be relevant in fashioning a remedy

24   other than disqualification and called into question *dicta* in *Flatt* regarding

25   "automatic disqualification" in light of *SpeeDee Oil*). *See also Adams v. Aerojet-*

26   *General Corp.*, 86 Cal.App.4th 1324, 1333 (2001) ("It is now firmly established that

27   where the attorney is disqualified from representation due to an ethical conflict, the

28   disqualification extends to the entire firm *at least where an ethical screen has not*

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1

18

CV 04-9049 doc (RNBx)

Opposition to Motion to Disqualify Glaser Weil

1  *been established*") (emphasis added) (citing *SpeeDee Oil*, *supra*, 20 Cal.4th at 1151).

2      As the Court in *Kirk* recognized, permitting ethical walls to rebut the sharing

3  of confidences in the context of lateral movement of attorneys from one private firm

4  to another is also consistent with the evolving nature of private practice in which

5  attorney mobility and firm mergers have dramatically increased.  *Kirk*, *supra*, 183

6  Cal.App.4th at 801-802.  In recognition of the changing nature of law practice, which

7  calls for a more practical application of the imputed knowledge doctrine,

8  jurisdictions have increasingly permitted effective ethical walls to avoid vicarious

9  disqualification.  *Id.* at 803 ("That nearly half of the states permit some level of

10  ethical screening in the non-governmental attorney context demonstrates a growing

11  understanding that law is practiced in firms in which effective screening is

12  possible."); *see also* ABA Model Rule 1.9, Cmt. [4] (noting that the imputation rule

13  should not be rigidly applied because "the result would be radical curtailment of the

14  opportunity of lawyers to move from one practice setting to another and of the

15  opportunity of clients to change counsel."); *Silicon Graphics*, *supra*, 2010 WL

16  3860374 at *4, 16-17 (approving ethical wall and noting that "in large-scale,

17  protracted litigation, the lawyer may end up working for law firms on both sides of

18  the same case at different stages of the proceedings" and much of the former work

19  performed by the lawyer may no longer have relevance to the case).

20      **3.    The ABA Model Rules Recognize That Vicarious Disqualification**

**Is Not Automatic and Screening May Rebut the Presumption of**

21  **Shared Confidences**

22      The ABA Model Rules also recognize that mandatory imputed

23  disqualification of a former attorney and his or her new firm is not automatic.[4]  ABA

24  Model Rule 1.9(b) prohibits a lawyer from knowingly representing a person in the

25

26

27  ───────────────

[4] California courts frequently look to the Model Rules for guidance on issues of professional responsibility.  *See* CRPC 1-100(A).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    19                    CV 04-9049 doc (RNBx)
                        Opposition to Motion to Disqualify Glaser Weil

same or a substantially related matter in which the lawyer's prior firm had previously represented a client (1) whose interests are materially adverse to that person, and (2) about whom the lawyer has acquired information protected by Rules 1.6 and 1.9(c).  Automatic disqualification is not warranted even if the lawyer's former firm was involved in the same matter.  ABA Model Rule 1.9, Cmt. [5]; *see also* Wolfram, *Former Client Conflicts*, 10 Georgetown Journal of Legal Ethics, 729-735 (1996-97).  In *Adams*, *supra*, 86 Cal.App.4th at 1337, the California Court of Appeal found that ABA Model Rule 1.9(b) provides helpful guidance in crafting an appropriate standard for disqualification based on a lawyer's former firm's representation of a client.  In addition, ABA Model Rule 1.10 (a)(2) permits non-consensual screening.

### 4.    Vicarious Disqualification and Screening Is Decided in California on A Case-by-Case Basis

California does not currently have a rule of professional conduct addressing the issue of screening.  The State Bar Board of Governors recently decided not to adopt the State Bar Commission for the Revision of the Rules of Professional Conduct's proposed modified version of ABA Model Rule 1.10 permitting non-consensual screening except where the lawyer was substantially involved in the former representation.  Contrary to Mattel's incorrect claim, the Board's decision was not based on a disapproval of screening, but on the belief that screening should be developed through case law rather than through a rule of professional conduct.  *See* Tuft Decl., ¶¶ 4-5; *see also* proposed Cmt [10] to proposed Rule 1.10 ("Rule 1.10 leaves open the issue of whether, in a particular matter, use of a timely screen will avoid the imputation of a conflict of interest under paragraph (a) or (b).  Whether timely implementation of a screen will avoid imputation of a conflict of interest in litigation, transactional, or other contexts is a matter of case law."), available at http://ethics.calbar.ca.gov/LinkClick.aspx?fileticket=qKcQ8vAQg2E%3D&tabid=2161.

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1
20
CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1    Under *Kirk*, vicarious disqualification is still determined on a case-by-case

2    basis.  The cases cited by Mattel that pre-date *Kirk* do not support its claim that

3    vicarious disqualification is automatic.  In *Henriksen, supra*, 11 Cal.App.4th at 112,

4    the tainted lawyer personally spent over 200 hours representing the former client in

5    litigating the same case, preparing for trial and participating in settlement hearings.

6    *Henriksen* stands for the proposition that the presumption of imputed knowledge

7    cannot be rebutted in cases of substantial involvement by the tainted lawyer who

8    joins a new firm that is acting on the opposite side of the same case.  *Kirk, supra*,

9    183 Cal.App.4th at 800 and fn. 20.  Similarly, in *Meza, supra*, 176 Cal.App.4th 969,

10   the tainted lawyer was actively involved in litigating the same case and gained

11   substantial client confidences.[5]  *Sharp v. Next Entm't, Inc.,* 163 Cal.App.4th 410,

12   438, n. 11 (2008), involved *concurrent* representation of conflicting interests and the

13   trial court approved the representation subject to the creation of an ethical wall.

14   The Court of Appeal affirmed on the ground that there was an adequate waiver of

15   the conflict and did not reach the issue of an ethical wall, but noted that there is no

16   definitive authority on ethical walls in the private law firm context.  *Id.*  Contrary to

17

18

19   [5] The unpublished federal cases cited by Mattel are similarly distinguishable as the
     tainted attorney was significantly involved in the prior substantially related matter.
20   *See Genentech, Inv. v. Sanofi-Aventis Deutschland GMGH*, No. C 08-04909 SI, at
     *4, 13 (N.D. Cal. March 20, 2010) (tainted attorney was lead counsel in
21   substantially related matter and firm did not erect formal ethical wall); *All Am.
     Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, No. C 07-1200, 2008 WL
22   5484552, at *5 (N.D. Cal. Dec. 18, 2008) (undisputed that tainted attorney had
23   acquired confidential information of non-client pursuant to joint defense agreement
     that was material to current litigation and that prior matter was substantially related);
24   *Lucent, supra*, 2007 WL 1461406 at *4 (tainted attorney who concededly received
25   confidential information "worked on the instant [same] litigation for 2300 hours, a
     far more significant amount of contact and involvement with confidential
26   information than any circumstances in which a rebuttable presumption has been
27   applied.")

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                          21                        CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

1   Mattel's contention, the Central District Court in *UMG Recordings, Inc.*, *supra*, 526

2   F.Supp.2d at 1064-1067, rejected automatic vicarious disqualification of the entire

3   firm.

4   **D.    Screening Is Appropriate to Rebut the Presumption of Shared**
        **Confidences**

5

6         The factors and policy considerations discussed by the court in *Kirk* support

7   the application of the *Kirk* holding to this case.  There is no proof Ms. Basinger

8   possesses material confidential information relating to Mattel in this or any other

9   case.  Although Ms. Basinger allegedly billed nine hours to this case more than five

10  years ago, her alleged involvement was neither direct nor substantial.  Rather, her

11  alleged involvement was peripheral to the substantive issues in this case.  In the

12  event the Court applies the traditional or the "modified" substantial relationship test

13  to presume that Ms. Basinger acquired confidential information of Mattel that is

14  material to the instant action, screening is sufficient to rebut the presumption that

15  any material confidential information has or will be shared with Glaser Weil.

16        Glaser Weil has had a significant and continuing relationship with MGA in

17  connection with this matter.  Glaser Weil previously represented MGA and Mr.

18  Larian (its CEO) in regards to litigation with Mattel for several months in 2005,

19  from about March 2006 through December 2008 and again, from about October

20  2008 to February 2009.  Baum Decl., ¶ 11.  Glaser Weil began working on the

21  present matter in August of this year and was formally associated in this case as lead

22  trial counsel on November 24, 2010.  *Id*.  Glaser Weil also represented MGA and

23  Mr. Larian from about August 2006 through 2009 in a case brought by Art Attacks,

24  Inc. which related to the development and ownership of Bratz.  *Id*.

25        If lawyer-client relationships were easily disrupted, complicated cases would

26  taken even longer to resolve, costs of litigation would be higher, and unscrupulous

27  attorneys would have an incentive to seize on strained facts and theories to pursue

28  the tactical advantage of ousting their adversary's lawyers.  *Kirk*, *supra*, 183

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    22                       CV 04-9049 doc (RNBx)
                        Opposition to Motion to Disqualify Glaser Weil

1   Cal.App.4th at 809.  Depriving MGA of its lead trial counsel based on Mattel's

2   strained arguments would be wholly unwarranted.

3   **E.**      **Glaser Weil's Screen is Effective to Rebut the Presumption of Shared Confidences**

4

5          As the court in *Kirk* explained, two elements are critical to establishing an

6   effective ethical wall: the ethical wall must be established as early as possible and

7   preventive measures must be imposed to ensure that confidential information will

8   not be conveyed.  *Kirk*, *supra*, 183 Cal.App.4th at 810.  It is generally understood

9   that a screen or ethical wall means "the isolation of a lawyer from any participation

10  in a matter through the timely imposition of procedures within a firm that are

11  reasonably adequate under the circumstances to protect information that the isolated

12  lawyer is obligated to protect under the [applicable ethics rules] or other law." ABA

13  Model Rule 1.0(k).

14         Typical features of an effective ethical wall include: "(1) physical, geographic

15  and departmental separation of attorneys and staff; (2) prohibitions against and

16  sanctions for discussing confidential matters; (3) established rules and procedures

17  for preventing access to confidential information and the files; (4) procedures

18  preventing a disqualified attorney from sharing in the profits from the

19  representation[6]; and (5) continuing education in professional responsibility[7]." *Kirk*,

20  *supra*, 183 Cal.App.4th at 810-811 (quoting *Henriksen*, *supra*, 11 Cal.App.4th at

21

22  [6] Model Rule 1.10(a)(2)(i) requires that the disqualified lawyer be timely screened

23  from any participation in the matter and that no part of the fee therefrom may be
    apportioned to the disqualified lawyer.  However, Comment [8] clarifies that the

24  screened lawyer is not prohibited from receiving a salary or partnership share

25  established by prior independent agreement as long as the lawyer does not receive
    compensation directly related to the matter in which the lawyer is disqualified.

26
    [7] As *Kirk* recognized, as California requires compliance with mandatory Minimum

27  Continuing Legal Education requirements, this factor need not be addressed.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1   116, n. 6).  Courts also may consider additional elements, such as the lack of any

2   supervisory relationship between the tainted attorney and the lawyers involved in

3   the current matter or vice-versa and reasonable notice to the client.  None of these

4   procedures, by themselves, is mandated.  *Id.* at 814.

5        Here, Glaser Weil's wall meets the two critical elements required by *Kirk*.

6   Glaser Weil timely erected an effective ethical wall when Ms. Basinger joined the

7   firm.  Baum Decl., ¶ 5.  Glaser Weil's wall includes extensive mandatory screening

8   procedures to ensure that any confidences Ms. Basinger might have are not shared

9   with any lawyers at Glaser Weil.  *Id.*, ¶¶ 5-6.  Even though none of the "typical"

10  elements of an ethical wall are required, Glaser Weil's wall satisfies each criterion.

11  First, Ms. Basinger was physically distanced from the attorneys handling this matter

12  at Glaser Weil.  *Id.*, ¶ 6(f).  Second, Glaser Weil's ethical wall prohibits any

13  communications with Ms. Basinger regarding this case.  *Id.*, ¶ 6(a), Exh. A.  Third,

14  Glaser Weil's screen includes comprehensive procedures to prevent accidental

15  sharing of information and Glaser Weil has monitored compliance with such

16  procedures.  *Id.*, ¶¶ 5-7, Exh. A.  As set forth more fully in the Declaration of Andy

17  Baum, these measures include notifying all employees of the screen, clearly

18  marking on all files to prevent access by Ms. Basinger and preventing Ms.

19  Basinger's access to any files or information (including electronic files) pertaining to

20  this case.  *Id.*, ¶ 6.  Finally, Ms. Basinger has no financial stake in the outcome of

21  this case.  *Id.*, ¶ 8.  Glaser Weil's wall also meets the additional element noted in

22  *Kirk* that courts favorably consider in determining whether an ethical wall is

23  adequate.  Ms. Basinger is not supervising any of the attorneys working on this

24  matter.  *Id.*, ¶ 9; Basinger Decl., ¶ 11.  The comprehensive screening procedures

25  Glaser Weil timely implemented are sufficient to rebut the presumption that any

26  material confidential information she could conceivably have regarding Mattel

27  could be shared with other attorneys at Glaser Weil handling this case.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    24                    CV 04-9049 doc (RNBx)
Opposition to Motion to Disqualify Glaser Weil

# IV.  CONCLUSION

Vicarious disqualification when a lawyer joins a law firm is a drastic and often disruptive remedy and should not be applied in a rigid and inflexible matter as Mattel argues in this case.  Vicarious disqualification requires a careful balancing between the former client's reasonable expectations of confidentiality and the current client's right to counsel of its choice.  In contrast to Mattel's claim that disqualification is automatic, courts commonly consider practical realities and the interests that are actually at stake.  Based on the facts described above, there is no genuine risk that any Mattel confidential information will be shared with the attorneys at Glaser Weil working on this case.  Accordingly, MGA respectfully requests that this Court deny Mattel's Motion to Disqualify its chosen trial counsel, Glaser Weil, from representing MGA in this case.

DATED: December 17, 2010             COOPER, WHITE & COOPER LLP


By: /s/ Stephen D. Kaus
    Mark L. Tuft
    Stephen D. Kaus
    Attorneys for Glaser Weil

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644702.1                                    25                      CV 04-9049 doc (RNBx)
                        Opposition to Motion to Disqualify Glaser Weil

# EXHIBIT 1

**EXHIBIT 1**

EXHIBIT 1
PAGE  26

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> CRESTRON ELECTRONICS, INC., a New Jersey corporation, FACE GROUP, INC. D/B/A LIFESTYLE ELECTRONICS, a Utah corporation, LAVA CORP., a Utah corporation, AUDIO VISION SYSTEMS, LLC, a Utah limited liability company, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br><br><br> Case No. 2:09-CV-707 <br><br> Judge Dee Benson |

This matter is before the court on Plaintiff Lutron Electronics Co., Inc.'s ("Lutron")

Expedited Motion to Disqualify Quinn Emanuel Urquhart & Sullivan LLP and Revoke

Associated Pro Hac Vice Status in this Case (Dkt. No. 76), and Defendants Crestron Electronics,

Inc., Face Group, Inc. d/b/a/ Lifestyle Electronics, Lava Corp., and Audio Vision Systems,

LLC's (collectively "Crestron") Expedited Motion for a Determination of No Conflict of

Interest (Dkt. No. 79.) The court heard oral argument on the motions on September 29, 2010.

Having considered the parties' arguments, memoranda, and the relevant law, the court enters the

**EXHIBIT 1**
**PAGE  27**

following Memorandum Decision and Order.

## **BACKGROUND**

In 2006, Lutron hired the law firm of Kaye Scholer LLP to represent it concerning issues related to Lutron's U.S. Patent 5,905,442 (the "442 patent") and U.S. Patent 5,982,103 (the "103 patent"). In September of 2006, Mr. Joshua S. Reisberg was hired as an associate at Kaye Scholer, and in January 2007 Mr. Reisberg joined a group of attorneys at the firm who worked on Lutron's behalf. For approximately 8 months – from January 31, 2007 through August 14, 2007 – Mr. Reisberg, along with other associates and law clerks, reviewed and coded Lutron documents for various lawsuits brought by Lutron related to these patents.[1] Mr. Reisberg reviewed for production and privilege the files of Lutron's legal and patent departments, including the files of Lutron's in-house counsel, its in-house patent attorneys and patent agents, its consulting engineers and the files of the inventors for the '442 and '103 patents. Mr. Reisberg billed a total of 571.15 hours in connection with his document review for Lutron. Mr. Reisberg did not perform any work on Lutron's behalf after 2007, and in September of 2009, Mr. Reisberg left Kaye Scholer and joined the law firm Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel") in the firm's New York City office.

The litigation presently before the court began on August 8, 2009, when Lutron, still represented by Kaye Scholer, filed a complaint against Crestron in the United States District Court for the District of Utah. Lutron's complaint against Crestron concerns Lutron's '442 and '103 patents – the same patents involved in Lutron's "prior litigations" and therefore the same

---

[1]None of these prior cases brought by Lutron were against Crestron or any of the other defendants in the present action.

EXHIBIT 1
PAGE  28

subject matter of Mr. Reisberg's prior document review.  During the initial stages of the present litigation, Crestron was represented by New Jersey counsel, Sills Cummis & Gross.  However, in March 2010, Crestron approached Quinn Emanuel to discuss the possibility of Quinn Emanuel representing Crestron in this action.  At that time, neither Crestron nor Quinn Emanuel was aware that anyone at Quinn Emanuel had previously worked at a law firm that represented Lutron and had done work on Lutron's behalf.

On July 12, 2010, Quinn Emanuel entered its appearance in this case on behalf of Crestron.  Shortly thereafter, on August 5, 2010, James D. Herschlein, Lutron's counsel at Kaye Scholer, sent a letter to Edward DeFranco, Crestron's counsel at Quinn Emanuel, stating that Mr. Reisberg, a current Quinn Emanuel attorney, had formerly worked at Kaye Scholer and had participated in document review and production on behalf of Lutron.  Mr. Herschlein asserted that Mr. Reisberg's prior work for Lutron created a conflict of interest requiring Quinn Emanuel to withdraw from its representation of Crestron in this litigation.  (Pl.'s Ex. 6.)

In response to Mr. Herschlein's letter, Mr. DeFranco immediately put in place a formal "ethical wall" at Quinn Emanuel to safeguard any confidential Lutron information to which Mr. Reisberg may have been exposed while at Kaye Scholer.  (DeFranco Decl. II ¶ 6.)  As part of that process, Mr. DeFranco asked Harry A. Olivar – a partner in Quinn Emanuel's Los Angeles office – to speak to Mr. Reisberg regarding the general scope, but not substance, of Mr. Reisberg's work for Lutron.  (Olivar Decl. ¶ 2.)  In speaking with Mr. Olivar, Mr. Reisberg confirmed that while he was a first-year associate at Kaye Scholer he engaged in document review on behalf of Lutron.  Mr. Reisberg explained that he was one of three first-year associates

3

EXHIBIT 1
PAGE 29

and several law clerks reviewing and coding documents, supervised by a senior associate who was also reviewing documents. (Reisberg Decl. ¶ 4.) Mr. Reisberg stated that his responsibilities were limited to reviewing and coding Lutron documents for relevance and privilege, and he had no involvement in any attorney-client discussions about what documents to produce or in ultimate decisions related to the production of any document. Mr. Reisberg told Mr. Olivar that he could not recall the content of any document he marked as privileged, nor could he recall any specifics about any particular document he reviewed. (Reisberg Decl. ¶¶ 4, 5.) Mr. Reisberg told Mr. Olivar that he had never discussed any aspect of any matter adverse to Lutron, including the Crestron matter, with anyone at Quinn Emanuel, and he was not even aware of Quinn Emanuel's representation of Crestron prior to August 5, 2010. (Olivar Decl. ¶ 3; Reisberg Decl. ¶ 12.)

Mr. Reisberg was advised that an "ethical wall" had been put in place, and he was instructed not to discuss or share any information or materials with anyone at Quinn Emanuel that related in any way to his prior work at Kaye Scholer on behalf of Lutron. (Reisberg Decl. ¶ 12.) Similarly, Quinn Emanuel personnel were directed not to share with Mr. Reisberg any information or materials relating in any way to Lutron. (DeFranco Decl. II ¶ 7.) In addition, Mr. DeFranco personally spoke with each attorney and staff member working on the Crestron case and confirmed that these individuals understood the precautions that had been put in place and would follow them. Mr. DeFranco also confirmed that nothing inconsistent with the ethical wall had occurred since Mr. Reisberg joined Quinn Emanuel. (DeFranco Decl. ¶ 6.)

Having put in place an "ethical wall," and having confirmed that Mr. Reisberg had not

EXHIBIT 1
PAGE  30

previously disclosed any confidential Lutron information, on August 9, 2010, Mr. DeFranco informed Mr. Herschlein that Quinn Emanuel would not be withdrawing as counsel for Crestron. (Pl.'s Ex. 7.)   Mr. DeFranco informed Mr. Herschlein that upon receipt of the August 5 letter, Quinn Emanuel "immediately put up an ethical wall," and "confirmed that prior to that time nothing inconsistent with the wall had occurred – the associate at issue, Mr. Joshua Reisberg, had not had any communications with anyone at [the] firm about his prior work for Lutron." (Pl.'s Ex. 7.)   Mr. Herschlein and Mr. DeFranco exchanged a series of e-mails and written correspondence setting forth their respective positions and attempting to resolve the disagreement over whether Mr. Reisberg's prior employment with Kaye Scholer required Quinn Emanuel to withdraw from representing Crestron in the present action.   Ultimately, however, the parties were unable to reach an agreement and on August 11, 2010, Lutron filed an Expedited Motion to Disqualify Quinn Emanuel.  (Dkt. No. 76.)   That same day, Crestron filed an Expedited Motion for a Determination of No Conflict of Interest.  (Dkt. No. 79.)   Also on August 11, 2010, Sills Cummis & Gross filed an application to withdraw as counsel for Crestron on the grounds that it had been replaced by Quinn Emanuel.  (Dkt. No. 74.)

## DISCUSSION

A court has broad discretion and the inherent authority to disqualify counsel or a law firm.  SLC Ltd. v. Bradford Group West, Inc., 999 F.2d 464, 466 (10th Cir. 1993).   In exercising that discretion, courts are instructed to take into consideration the important interest a party in a civil case has in retaining counsel of its choice.  Procter & Gamble Co. v. Haugen, 183 F.R.D. 571, 574 (D. Utah 198).   Disqualification "is a drastic measure and a court should hesitate to

5

EXHIBIT 1
PAGE  31

impose it except when necessary." Bullock v. Carver, 910 F.Supp. 551, 559 (D. Utah 1995); see also Parkinson v. Phonex Corp., 857 F.Supp. 1474, 1480 (D. Utah 1994) ("A motion to disqualify should be viewed with extreme caution . . . recognizing the possible unfair advantage that may result.")

In federal court, motions to disqualify are governed by two sources of authority. Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1383 (10th Cir. 1994). First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law. Accordingly, motions to disqualify are governed by the ethical rules announced by the national profession and considered "in light of the public interest and the litigants' rights." Cole, 43 F.3d at 1383 (citing In re Dresser Industries, Inc., 972 F.2d 540, 543 (5th Cir. 1992)).

The District of Utah has adopted the Utah Rules of Professional Conduct. DUCivR 83-1.1(g).[2] Utah Rule of Professional Conduct 1.9(a) provides: "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests

_____

[2] District of Utah Civil Rule 83-1.2(g) provides:

All attorneys practicing before this court, whether admitted as members of the bar of this court, admitted pro hac vice, or otherwise as ordered by this court, are governed by and must comply with the rules of practice adopted by this court . . . , with the Utah Rules of Professional Conduct, as revised and amended and as interpreted by this court. The court endorses the Utah Standards of Professionalism and Civility (Appendix XII) to guide the attorney conduct in cases and proceedings in this court.

EXHIBIT 1
PAGE   32

of the former client unless the former client gives informed consent, confirmed in writing." Utah

Model Rule 1.9, Duties to Former Clients. Rule 1.10 then sets forth a general rule of imputed

disqualification, providing that when a particular lawyer has a conflict of interest, that conflict is

imputed to the attorney's entire law firm. See Utah Rule of Professional Conduct 1.10(a)

(providing that "while lawyers are associated in a firm, none of them shall knowingly represent a

client when any one of them practicing alone would be prohibited"). However, Rule 1.10(c)

provides an avenue for removal of the imputed disqualification if certain conditions are met.

Rule 1.10(c) provides:

> When a lawyer becomes associated with a firm, no lawyer associated in the firm
> shall knowingly represent a person in a matter in which that lawyer is disqualified under
> Rule 1.9 unless:
> (c)(1) the personally disqualified lawyer is timely screened from any participation
> in the matter and is apportioned no part of the fee therefrom, and
> (c)(2) written notice is promptly given to any affected former client.

Utah Rule of Professional Conduct 1.10(c). The Utah rule differs from the ABA Model Rule by

explicitly permitting the use of ethical screens for lawyers moving between private firms who

would otherwise be disqualified under Rule 1.9. Under the Utah rule, so long as the conditions

of paragraph (c) are met, the imputed disqualification is removed, and consent to the new

representation is not required. See Comment [5a] to Utah Rule of Professional Conduct 1.10.

At issue in this case is application of Rule 1.10(c). Lutron asserts that Quinn Emanuel

did not timely screen Mr. Reisberg and that Quinn Emanuel failed to provide Lutron with the

required written notice. Lutron contends, therefore, that because Rule 1.10(c) was "breached,"

Quinn Emanuel "must voluntarily withdraw or the Court must order it to do so." (Pl.'s Mem. In

Supp. Mot. to Disqualify at 2.)

EXHIBIT 1
PAGE  33

Quinn Emanuel asserts, however, that it complied with the requirements of Rule 1.10(c) by implementing an ethical screen around Mr. Reisberg as soon as Crestron's counsel became aware of the conflict.  Additionally, Quinn Emanuel asserts that plaintiff's claim that the conflict of interest mandates *per se* disqualification based on the "appearance of impropriety" has been repeatedly rejected by this court.  Instead, Crestron asserts that this court applies a "functional analysis" to disqualification motions, and under a functional analysis, it should not be disqualified from continued representation of Crestron.

As an initial matter, the court agrees with Quinn Emanuel that this court applies a functional analysis to disqualification motions. See, e.g., Procter & Gamble Co. v. Hausen, 183 F.R.D. 571, 574 (D. Utah 1998) (denying motion to disqualify and stating that "a functional analysis is required"); Parkinson v. Phonex Corp., 857 F.Supp. 1474, 1476 (D. Utah 1994).  Both the Utah Rules of Professional Conduct and this court's precedent reflect the trend among numerous jurisdictions that have adopted a "functional analysis" to decide issues of imputed conflicts.[3]  See Flying J Inc. v. TA Operating Corp., 2008 WL 648545, *6 n.64 (D. Utah March 10, 2008) (listing numerous cases from the District of Utah providing that "inflexible disqualification was not appropriate" and using functional approach to disqualification motions).

_____

[3]For example, within the Utah Rules of Professional Conduct it states:

[I]t should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers.  If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

Comment [4] to Rule 1.9 of the Utah Rules of Professional Conduct.

8

EXHIBIT 1
PAGE 34

In adopting this approach, the court has expressly stated that "the fact that the conduct in question has been found to constitute a violation of the Code of Professional Responsibility does not require disqualification of counsel as a matter of course." Parkinson, 857 F.Supp. at 144; Flying J., 2008 WL 648545, *6. As the precedent explains, the standards of professional conduct, which are meant to be enforced by entities governing the practice of law, cannot be enforced effectively by the court during litigation because the considerations in each forum are different. See Shannon's Rainbow, LLC v. Supernova Media, Inc., Slip Opinion, 2010 WL 3522093 (D. Utah September 8, 2010) (citing Parkinson, 857 F.Supp. at 1476).

Accordingly, when considering the sanction of disqualification of counsel in the context of litigation, using a functional analysis the court must consider "the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial." Parkinson, 857 F.Supp. at 1480. Important factors to consider include "[t]he egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel." Id. In addition, "equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant. Id. The "essential issue to be determined," however, "is whether the alleged misconduct taints the lawsuit." Parkinson, 857 F.Supp. at 1476; Bodily, 649 F.Supp. at 478  Applying the foregoing principles and relevant factors to the specific facts of this case, the court finds that the alleged misconduct does not taint the pending lawsuit.

First, to the extent there was any violation of Rule 1.10(c), the court finds the violation was not egregious. As set forth above, Rule 1.10(c) provides that appropriate ethical screens are

EXHIBIT 1
PAGE 35

sufficient to preclude disqualification for imputed conflicts without a waiver from the affected former client. The rule further provides that "no lawyer associated in the [lawyer's new] firm shall *knowingly* represent" a client in a matter involving an imputed conflict unless an ethical screen has been put in place. Utah Rule of Professional Conduct 1.0 defines "knowingly" to mean "actual knowledge of the fact in question."

In this case, the facts make clear that the Quinn Emanuel lawyers representing Crestron were unaware of any possible imputed conflict resulting from the representation until they received notice from Lutron on August 5, 2010. Although Lutron vigorously asserts that Crestron violated the rule because they "should have known" of the conflict, the Utah Rules of Professional Conduct expressly states that *actual knowledge* is what is required. Moreover, because the Rule requires *actual* knowledge, the court finds that the ethical screen was timely under the circumstances. As soon as counsel for Crestron received notice of the conflict from Lutron's counsel, they immediately established an effective ethical screen in full compliance with the rules. While it certainly would have been preferable for Quinn Emanuel to conduct an effective conflicts check and discover the conflict initially, once it had the requisite knowledge, it acted in accord with the rules. Finally, although Lutron claims that counsel for Crestron failed to give "notice" as required by the rule, given that counsel for Crestron learned of the conflict *from Lutron*, there was no opportunity to "notify" Lutron and doing so would have been pointless. Moreover, even though counsel for Crestron was initially unaware and therefore could not "notify" Lutron of the conflict, it did thereafter notify Lutron of the measures it had taken to screen Mr. Reisberg and to ensure that Lutron's confidential information would be protected.

EXHIBIT 1
PAGE  36

(Pl.'s Ex. 7.)   Given these facts, the court finds that Quinn Emanuel's conduct was not egregious.[4]

Additionally, the court finds there is no prejudice to Lutron.  The conflict in question is the result of a limited amount of work by Mr. Reisberg – a first-year associate who was not involved in litigation strategy – that occurred more than two years before he joined Quinn Emanuel.  No Lutron information has been communicated to Crestron's counsel, and Mr. Reisberg cannot remember anything confidential or otherwise in any event.  Importantly, Mr. Reisberg has not discussed anything about Lutron with anyone at Quinn Emanuel, with the exception of simply disclosing that he does not recall anything.  Finally, nothing inconsistent with an ethical wall has occurred, and given that the ethical wall was erected immediately upon learning of the conflict, there does not appear to be any risk to Lutron's confidential information.

Finally, there has been no diminution of counsel's effectiveness in this case and the equitable considerations militate against disqualification.  As set forth above, parties to litigation have an important interest in being able to retain counsel of their choice.  See Procter & Gamble, 183 F.R.D. at 574.  Under these circumstances, the court declines to order that Crestron must proceed without its chosen counsel, recognizing that Crestron has taken appropriate steps to assure Lutron that there is no legitimate basis for the concern that its confidences are at risk.

_____

[4]The court also notes that one of the facts which Plaintiff finds so egregious – that Mr. Reisberg was privy to numerous confidential Lutron documents and is now part of the other team – is a fact that would be no different had Crestron done everything Lutron claims it should have. As explained in detail in the body of this Order, by allowing law firms to avoid imputed disqualification through the implementation of ethical screens, the Utah Rules of Professional Conduct explicitly contemplate and permit that very scenario.

EXHIBIT 1
PAGE  37

## CONCLUSION

The court finds there has been no misconduct that could potentially "taint" this litigation, nor has there been "the type of [egregious] conduct generally associated with the harsh sanction of disqualification." Parkinson, 857 F.Supp. at 1477.  Nothing inconsistent with an ethical wall has occurred.  Nobody at Quinn Emanuel has received any information regarding Mr. Reisberg's former representation of Lutron, nor will Mr. Reisberg be able to share any such information in the future because Quinn Emanuel has created an ethical wall to prevent Mr. Reisberg and any personnel at the firm from sharing any information or materials relating in any way to Lutron.

Plaintiff's Expedited Motion to Disqualify Quinn Emanuel is DENIED.  (Dkt. No. 76.) By this ruling, Defendant's Expedited Motion for a Determination of No Conflict of Interest has been rendered MOOT.  (Dkt. No. 79.)  Sills Cummis & Gross' Motion to Withdraw as counsel for Crestron is GRANTED.  (Dkt. No. 74.)

DATED this 12 day of November, 2010.

_____
Dee Benson
United States District Judge

EXHIBIT 1
PAGE 38