MARK L. TUFT (SBN 43146)
  mtuft@cwclaw.com
STEPHEN D. KAUS (SBN 57454)
  skaus@cwclaw.com
COOPER, WHITE & COOPER LLP
201 California Street, 17th Floor
San Francisco, California 94111
Telephone:  (415) 433-1900
Facsimile:   (415) 433-5530

Attorneys for Glaser Weil Fink Jacobs
Howard & Shapiro LLP

PATRICIA GLASER (SBN 056688)
  pglaser@glaserweil.com
ANDREW BAUM (SBN 190397)
  abaum@glaserweil.com
Glaser, Weil, Fink, Jacobs,
  Howard & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:  (310) 556-2920

Attorneys for the MGA PARTIES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant. | CASE NO. CV 04-9049 doc (RNBx)<br><br>Assigned to Hon. David O. Carter<br><br>**DECLARATION OF G. JILL BASINGER IN SUPPORT OF OPPOSITION TO MATTEL, INC.'S MOTION TO DISQUALIFY GLASER WEIL FINK JACOBS HOWARD & SHAPIRO LLP**<br><br>Hearing Date:   December 20, 2010<br>Time:               9:30 a.m.<br>Place:              Courtroom 9D<br><br>Discovery Cutoff:  October 4, 2010<br>Pre-Trial Conference:     January 4, 2011<br>Trial Date:          January 11, 2011 |
| AND CONSOLIDATED ACTIONS | |

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1

2

3    I, G. JILL BASINGER, declare and state as follows:

4        1.      I am an attorney at law duly licensed to practice before all courts of the

5    State of California, and am a non-equity partner at the law firm of Glaser, Weil,

6    Fink, Jacobs, Howard & Shapiro, LLP ("Glasser Weil").  I make this declaration of

7    personal knowledge, and if called and sworn as a witness, I could and would testify

8    competently hereto.

9        2.      I earned my Bachelor of Arts from the University of California, Los

10   Angeles and my Juris Doctorate from the University of Michigan Law School.

11   From 1998 to 1999, I  served as a law clerk for the Honorable A. Andrew Hauk,

12   Chief Judge Emeritus of the United States District Court, Central District of

13   California.

14       3.      In September or October 2002, I joined Quinn Emanuel as an associate.

15   On or about January 2006, I became Of Counsel at Quinn Emanuel.  It is my best

16   recollection that all the work I performed for Mattel while at Quinn Emanuel was as

17   an associate.  In March 2006, I left Quinn Emanuel to join McDermott, Will &

18   Emery.  On November 11, 2010 I joined Glaser Weil where I am a non-equity

19   partner.

20       4.      I have reviewed Mattel's Motion to Disqualify Glaser Weil ("Motion")

21   and the accompanying declaration of Michael T. Zeller.  Mattel did not provide me

22   with my time records to help me refresh my recollection.  Because the events Mr.

23   Zeller recites in his declaration occurred five  to eight years ago, my testimony is

24   based on my best recollection and estimates of times and dates.

25       5.      Mattel states that I billed over 1400 hours to Mattel matters while at

26   Quinn Emanuel.  In the context of the present motion, this statement is off-point,

27   since the vast majority of hours I spent working on "Mattel" matters were spent

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644772.1                                              2                            CV 04-9049 doc (RNBx)
Declaration of G. Jill Basinger in Support of Opposition to Motion to Disqualify

1 | working on a case involving Ferrari replicas called <u>Mattel v. Burrago</u> that has no
2 | conceivable relationship to this matter.  Mattel alleged that a company called
3 | Burrago was infringing on Ferrari's copyright and design patents by selling Ferrari
4 | replicas, and that Mattel was Ferrari's rightful licensee.  The case did not involve,
5 | nor was it in anyway related to, dolls.  Michael T. Zeller, the declarant for the
6 | Motion, was my supervisor on <u>Burrago</u>.  Thus, he knows that the allegation that I
7 | worked on "Mattel" matters for 1400 hours includes mostly work that is not related
8 | to dolls or arguably related to this matter.

9 |      6.    Mattel goes on to allege that I spent 123.3 hours working on <u>Viveros v.</u>
10 | <u>Mattel</u> which purportedly "overlapped in issues and discovery with the MGA
11 | litigation." (Zeller Decl. at 5.)  While at Quinn Emanuel, I do not recall having ever
12 | been aware of the claims and issues in the present action, or working on the action.
13 | I have no recollection of seeing: 1) the Complaint in the <u>Mattel v. MGA</u> litigation;
14 | 2) discovery requests in that litigation; 3) motions in that litigation; or 4) memos
15 | concerning that litigation.  I also was not privy to any meetings about that litigation.
16 | Since leaving Quinn Emanuel, but before joining Glaser Weil, I have read certain
17 | news stories and other publications about the <u>Mattel v. MGA</u> trial.  Based on what I
18 | learned from those articles and publications, I do not see how the <u>Viveros</u> case,
19 | which involved allegations by an artist in Mexico that Mattel stole his drawings for
20 | a doll, and specifically my work on that case, can be related to the <u>Mattel v. MGA</u>
21 | litigation.

22 |      7.    The following discussion of the facts of the <u>Viveros</u> matter is from a
23 | March 23, 2005 Order issued by Judge Dean Pregerson, United States District
24 | Court, Central District of California, where he granted in part and denied in part
25 | Mattel's Motion for Summary Judgment.  The Order is attached as Exhibit A to this
26 | declaration.  Because it was a motion for Summary Judgment brought by Mattel, the
27 |
28 |

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644772.1                                    3                         CV 04-9049 doc (RNBx)
724054.1
Declaration of G. Jill Basinger in Support of Opposition to Motion to Disqualify

1  facts are interpreted in the light most favorable to the plaintiff, Gustavo Duarte

2  Viveros.

3      8.    Plaintiff is a Mexican artist who created a series of drawings of a doll

4  named "Papui." (Order 1 at 26-28.)  In February 1993, Viveros register the Papui

5  drawings with the Mexican Public Registry of the Rights of Authors.  (Order 2 at 1-

6  2.)  Subsequent to that registration Viveros met with a representative from Mattel de

7  Mexico and left his drawings with her for consideration by Mattel.  (Order 2 at 4-9.)

8  In June 1993, the Mattel de Mexico representative told Mr. Viveros that Mattel liked

9  his drawings but did not intend to use them at that time.  Viveros alleged that Mattel

10  never contacted him again.  (Order 2 at 12-16.)  In December 2001, Viveros and his

11  daughter saw a television commercial for a doll called "Diva Starz" and Viveros

12  alleged that Diva Starz infringed on his copyright.  (Order 2 at 17-21.)  On October

13  29, 2004, Mr. Viveros filed his complaint against Mattel for copyright infringement,

14  breach of the implied contract, and unjust enrichment." (Order 3 at 1-3.)  My work

15  on Viveros was very limited in scope.  My work centered around preparing Mr.

16  Zeller for, and attending, the deposition of, Mr. Viveros.  I was also tasked with

17  researching the contacts Mr. Viveros had, or alleged to have had, with both Mattel

18  de Mexico and Mattel USA, and corresponding with opposing counsel.

19      9.    Although I do not recall any specific litigation strategy in connection

20  with the Viveros case, I was only involved with Mr. Vivero's claims that his artwork

21  was submitted to Mattel and infringed by Mattel.  Similarly, any communications I

22  would have had with Mattel in-house counsel would have been to give them updates

23  on the status of the Viveros litigation, and to gather information concerning Mr.

24  Vivero's contacts with Mattel de Mexico and Mattel USA.  As a mid-level associate,

25  I was not permitted to have substantive contact with in-house counsel for a client as

26  important as Mattel.  Mr. Zeller conducted those communications.  All of the work I

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644772.1                          4                        CV 04-9049 doc (RNBx)
Declaration of G. Jill Basinger in Support of Opposition to Motion to Disqualify

1  did with respect to the <u>Viveros</u> matter while at Quinn Emanuel was related to Mr.

2  Vivero's legal contention that Mattel stole his drawings and infringed his copyright.

3       10.    Mattel also claims that I billed nine hours directly to the <u>Mattel v.</u>

4  <u>MGA</u> litigation.  I have no recollection of having ever done so.  Mr. Zeller has not

5  provided me with any time sheets supporting this assertion.  He also gives no

6  description of what tasks I allegedly performed in those nine hours while at Quinn

7  Emanuel five to eight years ago.  Mr. Zeller declares that I "reviewed confidential

8  Mattel systems," but I don't know what that means.  I was never assigned to <u>Mattel</u>

9  <u>v. MGA</u> and was never part of that litigation team.

10       11.    An ethical wall was put in place when I joined Glasser Weil.  In an

11  abundance of caution, Glaser Weil constructed an ethical wall between anyone

12  working on the <u>Mattel v. MGA</u> matter and me.  I have not been privy to any

13  documents or discussion concerning the case.  I was advised of the ethical wall and

14  its limitations and requirements in advance of joining Glaser Weil, and further

15  received a copy of the memorandum prepared by Andy Baum regarding the ethical

16  wall.  I have strictly adhered to the limitations and requirements of the ethical wall,

17  and the memorandum prepared by Mr. Baum, and to the best of my knowledge my

18  colleagues at Glaser Weil have as well.  While at Glaser Weil, I have not had any

19  supervisory obligations with respect to the Glaser Weil lawyers who are working on

20  the <u>Mattel v. MGA</u> case.

21       12.    I never disclosed any confidential information pertaining to Mattel to

22  anyone at Glaser Weil prior to its implementation of the ethical wall, or at any time

23  thereafter.

24  / / /

25  / / /

26  / / /

27  / / /

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644772.1                                        5                          CV 04-9049 doc (RNBx)
Declaration of G. Jill Basinger in Support of Opposition to Motion to Disqualify

1    13.    In sum, while at Quinn Emanuel, I do not recall having any knowledge

2  about the <u>Mattel v. MGA</u> case.  I certainly do not recall ever working on the <u>Mattel</u>

3  <u>v. MGA</u> case.  Nor do I believe that the Mattel cases I did work on exposed me to

4  any confidential information that is material to <u>Mattel v. MGA</u> case.

5    14.    I declare under penalty of perjury under the laws of the United States

6  of America that the foregoing is true and correct.

7    Executed on December /7, 2010, at Los Angeles, California.

8

9    G. JILL BASINGER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

# EXHIBIT A

**EXHIBIT A**

EXHIBIT A
PAGE    7

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 8 of 25   Page ID
#:283352
Case 2:04-cv-08984-DDP-VBK   Document 28   Filed 03/23/05   Page 1 of 18   Page ID #:6



Priority ✓
Send ✓
Clsd
Enter ✓
JS-5/JS-6  NO
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO ALFREDO DUARTE VIVEROS, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., <br><br> Defendant. | ) Case No. CV 04-08984 DDP (JWJx) <br> ) <br> ) **ORDER GRANTING IN PART AND** <br> ) **DENYING IN PART MOTION FOR** <br> ) **SUMMARY JUDGMENT** <br> ) <br> ) [Motion filed on 1/11/05] <br> ) <br> ) <br> ) |

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

This matter is before the Court on the defendant's motion for summary judgment. After reviewing the papers submitted by the parties and hearing oral argument, the Court grants the defendant's motion with respect to the plaintiff's claims for breach of implied-in-fact contract and unjust enrichment, and denies the defendant's motion with respect to the plaintiff's claim for copyright violation.

**I. Background**

The plaintiff, Gustavo Alfredo Duarte Viveros ("plaintiff" or "Mr. Viveros"), is a Mexican artist who created a series of drawings of a doll named "Papui" ("Papui drawings"). In February

30

EXHIBIT A
PAGE   8

Case 2:04-cv-09049-DOC-RNB  Document 9408  Filed 12/17/10  Page 9 of 25  Page ID
#:283353
Case 2:04-cv-08984-DDP-VBK  Document 33  Filed 03/23/05  Page 2 of 18  Page ID #:7

1  1993, he registered his Papui drawings with the Mexican Public

2  Registry of the Rights of Authors.  (Plaintiff's Complaint for

3  Infringement of Copyright, Breach of Implied Contract and Unjust

4  Enrichment ("Complaint") ¶ 7.)  According to Mr. Viveros, he

5  subsequently met with a representative from Mattel de Mexico, Inc.

6  ("Mattel de Mexcio").  (Viveros Decl. ¶ 5.)  Mr. Viveros asserts

7  that at the meeting, the Mattel de Mexico representative asked him

8  to leave his drawings with her so that she could send them to

9  Mattel, Inc.'s ("Mattel") headquarters in Los Angeles.  Mr. Viveros

10  alleges that the representative told him that if Mattel used his

11  designs, Mattel would pay him a royalty based on sales or a single

12  payment for the right to use them. (Id. at ¶ 6.)  In June 1993, the

13  Mattel de Mexico representative allegedly told Mr. Viveros that

14  Mattel liked his drawings but did not intend to use them at that

15  time. (Id. at ¶ 7.)  Mr. Viveros alleges that Mattel never

16  contacted him again.  (Id.)

17      According to the plaintiff, in December 2001 his daughter, and

18  later he, saw a television commercial for a doll called "Diva

19  Starz." (Id. at 8.)  Mr. Viveros allegedly contacted Mattel de

20  Mexico and informed them that they were infringing upon his

21  copyrights by producing and marketing Diva Starz.  (Compl. ¶ 8.)

22  According to the plaintiff, he and his counsel met with

23  representatives from Mattel in 2002 and at that meeting Mattel

24  allegedly acknowledged that it had copied the Papui designs and

25  sought to negotiate a resolution.  (Id. at ¶ 11.)  On May 6, 2002,

26  Mr. Viveros requested an arbitration meeting with Mattel.  In May

27  2003, the plaintiff' counsel withdrew from the arbitration

28  proceedings.

2

EXHIBIT A
PAGE  9

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 10 of 25   Page ID
#:283354
Case 2:04-cv-08984-DDP-VBK   Document 30   Filed 03/23/05   Page 3 of 18   Page ID #:8

1    On October 29, 2004, Mr. Viveros filed his Complaint for

2    copyright infringement, breach of implied contract, and unjust

3    enrichment.

4    **II. Legal Standard**

5    Summary judgment is appropriate where "the pleadings,

6    depositions, answers to interrogatories, and admissions on file,

7    together with the affidavits, if any, show that there is no genuine

8    issue as to any material fact and that the moving party is entitled

9    to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

10    In determining a motion for summary judgment, all reasonable

11    inferences from the evidence must be drawn in favor of the

12    nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

13    255 (1986). A moving party who bears the burden of proof at trial

14    is entitled to summary judgment only when the evidence indicates

15    that no issue of material fact exists. <u>Celotex Corp. v. Catrett</u>,

16    477 U.S. 317, 325 (1986). If the moving party does not bear the

17    burden of proof at trial, he is entitled to summary judgment if he

18    can demonstrate that "there is an absence of evidence to support

19    the nonmoving party's case." <u>Id.</u>

20    Once the moving party meets its burden, the burden shifts to

21    the nonmoving party resisting the motion for summary judgment, who

22    must "set forth specific facts showing that there is a genuine

23    issue for trial." <u>Anderson</u>, 477 U.S. at 256. It is not enough for

24    a party opposing summary judgment to "rest on mere allegations or

25    denials of his pleadings." <u>Id.</u> at 259. Instead, the nonmoving

26    party must go beyond the pleadings to designate specific facts

27    showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S.

28    at 325. The nonmoving party need not produce evidence in a form

3

EXHIBIT A
PAGE   10

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 11 of 25   Page ID
#:283355
Case 2:04-cv-08984-DDP-VBK   Document 30-3   Filed 03/23/05   Page 4 of 18   Page ID #:9

1   that would be admissible at trial in order to avoid summary

2   judgment.  Id. at 324.

3        A genuine issue exists if "the evidence is such that a

4   reasonable jury could return a verdict for the nonmoving party,"

5   and material facts are those "that might affect the outcome of the

6   suit under the governing law." Anderson, 477 U.S. at 248.   Thus,

7   the "mere existence of a scintilla of evidence" in support of the

8   nonmoving party's claim is insufficient to defeat summary judgment.

9   Id. at 252.

10        There is no genuine issue of fact "[w]here the record taken as

11   a whole could not lead a rational trier of fact to find for the

12   non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio

13   Corp., 475 U.S. 574, 587 (1986).  Disputed issues of fact are

14   resolved against the moving party.  General Elec. Co. v. Joiner,

15   522 U.S. 136, 142 (1997).

16   **III. Discussion**

17        A.   Copyright Infringement

18        To prevail on a claim of copyright infringement, a plaintiff

19   must demonstrate (1) ownership of a valid copyright in a work and

20   (2) copying of a substantial, legally protected portion of the work

21   by defendant.  Feist Publications, Inc. v. Rural Tel. Serv. Co.

22   Inc., 499 U.S. 340, 361 (1991).  In this motion for summary

23   judgment, the defendant does not dispute that the plaintiff has

24   ownership of a valid copyright in the Papui dolls.   (Lyons Decl. ¶¶

25   4-10 & Ex. B-H.) Therefore, the first element of the copyright

26   claim is satisfied for the purposes of this motion.

27        The second element of a copyright violation is demonstrated by

28   showing that (1) the defendant had "access" to the allegedly

4

1 infringed work and (2) the accused work is "substantially similar"
2 to the plaintiff's work in protectible expression. Cavalier v.
3 Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). To
4 determine whether the two works are "substantially similar" in
5 protectible expression, the Ninth Circuit applies a two part
6 analysis, consisting of the "extrinsic" test and the "intrinsic"
7 test. Id. at 822.

8     1. Access
9     When "a high degree of access is shown" the level of
10 similarity that a plaintiff is required to show to satisfy the
11 elements of a copyright infringement claim is reduced. Rice v. Fox
12 Broadcasting Co., 330 F.3d 1170, 1178 (9th Cir. 2003); Three Boys
13 Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000). This is
14 called the "inverse ratio" rule. Rice, 330 F.3d at 1178. The
15 Ninth Circuit has applied the inverse ratio rule when "concession
16 of access by the defendant to the plaintiff's copyrighted work was
17 a prominent factor in [the court's] analysis." Id. For example,
18 in Metcalf v. Bochco, the inverse ratio rule was applied because
19 the writer and producer of the allegedly infringing work conceded
20 that they had read the plaintiff's work. 294 F.3d 1069, 1079 (9th
21 Cir. 2002).

22     On the other hand, where there is some, but not clear and
23 convincing, evidence of access, the showing required to satisfy the
24 substantial similarity test is not altered. See Rice, 330 F.3d at
25 1178.

26     In his Complaint and declaration, the plaintiff asserts that
27 he met with a representative from Mattel de Mexico, showed her his
28 Papui drawings, permitted the drawings to be sent to Mattel's

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 13 of 25   Page ID
#:283357
Case 2:04-cv-08984-DDP-VBK   Document 30   Filed 03/23/05   Page 6 of 18   Page ID #:11

1  headquarters, and was later told by the representative that Mattel

2  employees liked his drawings.  (See Reply at 7.)  Mattel does not

3  expressly dispute this assertion in its papers, nor does it point

4  to any evidence suggesting that the plaintiff's allegations are

5  false.[1]  Mattel does, however, assert that the plaintiff's claims

6  do not constitute "clear and convincing evidence of access."  Even

7  if the Court were to construe this assertion as a denial by Mattel

8  that it ever possessed the plaintiff's drawings, there has been no

9  evidence provided by Mattel to support its assertion.

10       In contrast, the plaintiff's declaration expressly alleges

11  that Mattel had access to, and actually observed, his drawings.

12  Based on this, and drawing all inferences in favor of the non-

13  moving party, the Court finds that a reasonable jury could conclude

14  that Mattel had access to the Papui drawings.  Furthermore, because

15  Mattel has failed to dispute the plaintiff's allegations regarding

16  Mattel's access to the drawings or to point to any evidence

17  contradicting those allegations, the Court also finds that Mattel

18  has, for purposes of this motion, effectively conceded that it had

19  access to the drawings.  Accordingly, the inverse ratio rule

20  applies to this case.  However, for the reasons articulated below,

21  the Court finds that even if the inverse ratio rule did not apply

22  (i.e., under the normal substantial similarity analysis), there

23  would still be an issue of material fact as to whether the Papui

24  drawings were substantially similar to the Diva Starz.  Therefore,

25  the inverse ratio rule does not alter the Court's analysis in this

26  case.

27  _____

28       [1]  Mattel has not filed an answer to the Complaint.

6

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 14 of 25   Page ID
#:283358
Case 2:04-cv-08984-DDP-VBK   Document 60   Filed 03/23/05   Page 7 of 18   Page ID #:12

## 2. Substantial Similarity

### (i) Extrinsic Test

In the first part of the test for substantial similarity, the extrinsic test, a court must look to "the similarity of the objective details in appearance." Cavalier, 297 F.3d at 826. Relevant factors include, but are not limited to, "the subject matter, shapes, colors, materials, and arrangement of the representations." Id.

A comparison of the objective elements of the Papui drawings and the Diva Starz reveals obvious similarities between the prominent, expressive features of the works. The Papui drawings and the Diva Starz both have very long hair that is several times wider than the figures' bodies. Both are wearing bulbous shoes that are greatly exaggerated in size. Both possess heads that, when compared to their bodies, are disproportionately large. In addition, both have bodies that are very tiny compared to all of their other features. Although most dolls may have hair, heads, shoes, and bodies, a reasonable jury could find that the unusual expression of these features in the Papui drawings is substantially similar to the corresponding features in the Diva Starz.

Mattel asserts that the expression of the faces of the Papui drawings are so dissimilar from the expression of the faces of the Diva Starz, that no finding of substantial similarity is possible. (Reply at 9-10, citing Fisher-Price, Inc. v. Well-Made Toy Manufacturing Corp., 25 F.3d 119,122-23 (2d Cir. 1994)(finding the dissimilarity in facial features between two dolls precluded substantial similarity).) To gauge the importance of dissimilarities, however, one must examine them within the context

7

1  of the entire work.  See 4 Nimmer § 13.03[B][1][a] at 13-63; see

2  also Tufenkian Import/Export Venutres, Inc. v. Einstein Moomjy,

3  Inc., 338 F.3d 127, 137 n.14 (2d Cir. 2003)(noting that there might

4  not be substantial similarity where new elements "blot out" or

5  somehow "obscure" the copied work so as to render the copying

6  insignificant).  Although the expression of the faces of the Papui

7  drawings and the Diva Starz are dissimilar, this factor is

8  outweighed by the prominence of the features that are substantially

9  similar, namely, the hair, the shoes, the bodies, and the

10 proportion of the heads to the bodies.  Therefore, the importance

11 of the faces, in the context of the other objective features, is

12 not so great as to preclude a finding of substantial similarity

13 between the works.

14     Mattel points to a number of other dissimilarities between the

15 Papui drawings and the dolls, but these features are relatively

16 minor compared to the prominent features, discussed above, that

17 appear similar.

18     Based on the similarities between the Papui drawings and the

19 Diva Starz, the Court finds that a reasonable jury could conclude

20 that the objective features of the works are substantially similar

21 to each other.  Accordingly, the Court finds that there is an issue

22 of material fact regarding substantial similarity under the

23 extrinsic test.

24 ///

25 ///

26 ///

27 ///

28 ///

8

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 16 of 25   Page ID
#:283360
Case 2:04-cv-08984-DDP-VBK   Document 60   Filed 03/23/05   Page 9 of 18   Page ID #:14

1  ///

2                    (ii) <u>The Intrinsic Test</u>[2]

3        The second part of the test, the intrinsic test, focuses on

4  similarity of expression and asks whether the ordinary reasonable

5  person would find "the total concept and feel of the works" to be

6  substantially similar.  <u>Pasillas v. McDonald's Corp.</u>, 927 F.2d 440,

7  442 (9th Cir. 1991)(quoting <u>Sid & Marty Krofft Television Prods.,</u>

8  <u>Inc. v. McDonald's Corp.</u>, 562 F.2d 1157 at 1164 (9th Cir. 1977)).

9  The intrinsic test is also more subjective in that it depends "on

10 the response of the ordinary reasonable person."  <u>Aliotto v. R.</u>

11 <u>Dankin & Co.</u>, 831 F.2d 898, 900 (9th Cir. 1987).  "Because children

12 are the intended market for the dolls, we must filter the intrinsic

13 inquiry through the perception of children."  <u>Id.</u> at 902.

14       In the case before us, Diva Starz are marketed to children,

15 and must be analyzed accordingly.  The prominent features which

16 make Diva Starz unique in the world of dolls are long wide hair,

17 thin bodies, large heads and oversized bulbous shoes.  Drawing all

18 inferences in favor of the non-moving party, the Court finds that a

19 reasonable jury could conclude that a reasonable child could find

20 that Papui sketches and the Diva Starz dolls have the same total

21 concept and feel.  Therefore, the Court finds that there is a

22 triable issue of fact regarding substantial similarity under the

23 intrinsic test.

24  ──────────────────

25       [2]  In the Ninth Circuit, if a court determines that there is a
    triable issue of fact as to whether *literary works* are
26  substantially similar under the extrinsic test, the question of
    substantially similarity under the intrinsic test necessarily goes
27  to the jury.  <u>Cavalier</u>, 297 F.3d at 826.   The Ninth Circuit has
    not determined, however, whether the same rule applies to works of
28  art.  <u>Id.</u>

                                    9

EXHIBIT A
PAGE   16

### 3. Conclusion Regarding Copyright Claim

Based on the foregoing, the Court finds that there are triable issues of material fact regarding the plaintiff's claim for copyright infringement. Accordingly, the Court denies the defendant's motion for summary judgment with respect to this claim.

### B. Breach of Implied Contract

The plaintiff asserts that Mattel's alleged exploitation of his Papui drawings without compensating him constitutes a breach of implied-in-fact contract. (Compl. ¶¶ 14-16.) Mattel contends that the plaintiff's claim is barred by the statute of limitations.

### 1. Two-year Limit Applies

California Code of Civil Procedure § 339(1) imposes a two-year limitations period for a claim based "upon a contract, obligation or liability not founded upon an instrument of writing." Thus, the plaintiff's action for breach of implied-in-fact contracts must have been brought within two years of accrual. See Thompson v. California Brewing Co., 150 Cal. App. 2d 469, 477 (1957). Although the plaintiff is correct that the statute of limitations for fraud is three years, the plaintiff did not allege any element of fraud in his Complaint; thus, the three-year statute of limitation is not applicable.

Where parties have agreed not to exploit or sell an idea without compensating each other, a suit for breach of an implied contract arises with the unauthorized sale or exploitation of the idea. Davies v. Krasna 14 Cal. 3d 502, 512 (1975) (citation omitted). Mattel launched the Diva Starz line in the United States in February 2000 and in Mexico in August 2001. Plaintiff admits to discovering Mattel's distribution of the Diva Starz when his

1  daughter viewed a television commercial in December 2001.  (Opp'n
2  at 20.)  Plaintiff filed his Complaint in this Court on October 29,
3  2004.  Therefore, even if the clock did not start until the
4  plaintiff discovered the marketing of the Diva Starz dolls in
5  December 2001, more than two years passed before the filing of the
6  Complaint.  Plaintiff argues, however, that a theory of ongoing
7  breach or the doctrine of equitable tolling preserves the claim.

8       **2. Ongoing Royalty Theory**

9       The plaintiff contends that the defendant had an ongoing duty
10  to pay him royalties, (Viveros Decl. ¶ 6), and that the statute of
11  limitations' clock re-started with each nonpayment.  Based on the
12  applicable case law, the Court finds that the ongoing royalty
13  theory does not apply to the case at hand.

14       As stated above, where parties have agreed not to exploit an
15  idea without paying for it, breach of an implied contract arises
16  when the idea is first exploited without providing compensation.
17  Davies, 14 Cal. 3d at 512.  Nevertheless, in certain cases, the
18  breach of an agreement to provide ongoing payments may arise each
19  time the breaching party fails to make a payment.  In such cases,
20  the statute of limitations re-starts with each successive breach.

21       In Brown v. Cosby, a district court in Pennsylvania applied
22  California contract law and California's statute of limitations to
23  an agreement in which the plaintiff had been promised a "fair
24  share" of the profits from the commercialization of his cartoon
25  characters.  433 F. Supp. 1331 (E.D. Penn. 1977).  The plaintiff
26  asserted that his claim was not time-barred because the defendant
27  had an ongoing obligation under the contract to provide a share of
28  the profits.  The court determined, however, that the claim was

EXHIBIT A
PAGE  18

1  barred by California's statute of limitations.  The court stated,

2  "At the time defendants first failed to account to plaintiff for

3  his 'fair share' of profits from the commercial exploitation of the

4  [cartoon characters], plaintiff had a true cause of action, and the

5  accrual of that cause of action started the running of the

6  limitations period."  <u>Id.</u> at 1342.

7      In reaching its conclusion, <u>Brown</u> distinguished two California

8  cases, <u>Lee v. DeForest</u>, 22 Cal. App. 2d 351 (1937) and <u>Bank of</u>

9  <u>America National Trust & Savings Association v. McLaughlin</u>, 152

10  Cal. App. 2d Supp. 911 (1957), in which a variation of the ongoing

11  payment theory was recognized by the California Court of Appeals.

12  <u>Id.</u> at 1337.  <u>Brown</u> noted that in each case where the ongoing

13  royalty payment theory was recognized, the contract in question

14  contained language specifically fixing a time for performance.[3]

15  Because the plaintiff in <u>Brown</u> did not allege that specific times

16  had been designated for payments, the court rejected the ongoing

17  royalty theory.

18      In this case, as in <u>Brown</u>, the plaintiff does not allege that

19  the implied contract provided a specific time when payments were

20  due.  Therefore, the ongoing royalty theory does not remove the

21  claim from the bar imposed by the statute of limitations.

22  ///

23

24      [3]  The <u>Brown</u> court stated, "Again the Court of Appeals relied
   on the language of the contract in concluding that the cause of
25  action for default in payment accrued, and, therefore, the
   limitations period began to run, as to each payment at the time the
26  payment was due.  The language in this instance was the specific
   dates on which the payments were due.  The Court of Appeals focused
27  on the language and the rule that where a contract fixes a time for
   performance, the limitations period begins to run at the expiration
28  of that time."  <u>Id.</u> at 1338.

EXHIBIT A
PAGE  19

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 20 of 25   Page ID
#:303304
Case 2:04-cv-08984-DDP-VBK   Document 38   Filed 03/23/05   Page 13 of 18   Page ID #:18

### 3.  Equitable Tolling

1    In California, equitable tolling is a judge-made doctrine
"'which operates independently of the literal wording of the Code
of Civil Procedure' to suspend or extend a statute of limitations
as necessary to ensure fundamental practicality and fairness."
Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003) (quoting
Addison v. State of California, 21 Cal. 3d 313, 318-319 (1978)).

The California Supreme Court has applied equitable tolling in
carefully considered situations to prevent the unjust technical
forfeiture of causes of action where the defendant would suffer no
prejudice.  Lantzy, 31 Cal.4th at 370.  In matters involving
California law, federal courts apply California's equitable tolling
doctrine to the extent it is not inconsistent with federal law.
Daviton v. Columbia/HCA Healthcare Corp, 241 F.3d 1131, 1139 (9th
Cir. 2001).

In California, the general concept of equitable tolling is
that when an injured person has several legal remedies and
reasonably pursues one in good faith, the running of the statue of
limitations is tolled if the defendant is not thereby prejudiced.
Elkins v. Derby, 12 Cal.3d 410, 414 (1974); Daviton 241 F.3d at
1136.  Thus, the purpose of equitable tolling-to ensure that the
plaintiff doesn't lose his right to pursue his claims merely
because of a technicality-dovetails with the purpose of the
limitations statute: to prevent "surprises through the revival of
claims that have been allowed to slumber until evidence has been
lost, memories have faded and witness have disappeared."  Daviton
241 F.3d at 1136 (quoting Telegraphers v. Ry. Express Agency, 321
U.S. 342 (1944)).

EXHIBIT A
PAGE  20

1       The Ninth Circuit has articulated other policies that are
2  furthered by equitable tolling.  <u>Daviton</u>, 241 F.3d at 1138.
3  Equitable tolling can facilitate settlement by permitting
4  plaintiffs to seek non-judicial dispute resolution.  <u>Id.</u>
5  Additionally, the doctrine recognizes that claims are often pursued
6  in more than one forum; facts that are found and evidence that is
7  gathered in one forum may lead to a quicker resolution of the
8  issues in the second forum; therefore, the doctrine tolls the
9  statute of limitations' clock during the first proceedings.  <u>Id.</u> at
10  1139.

11      The Supreme Court of California has described equitable
12  tolling as appropriate where the record shows "(1) timely notice to
13  the defendant in filing the first claim; (2) lack of prejudice to
14  defendant in gathering evidence to defend against the second claim;
15  and (3) good faith and reasonable conduct by the plaintiff in
16  filing the second claim."  <u>Addison</u>, 21 Cal.3d at 319.

17      The defendant contends that equitable tolling is not
18  appropriate here because the plaintiff has failed to satisfy the
19  second prong of California's three-prong test for equitable
20  tolling.  Under California's second prong, the facts of the two
21  claims must be identical or so similar that the defendant's
22  investigation of the first claim will put him in the position to
23  fairly defend the second.  <u>Daviton</u>, 241 F.3d at 1138 (citing
24  <u>Addison</u> 21 Cal.3d at 925).  Here, the plaintiff has made no showing
25  that the breach of implied-in-fact contract claim was part of the
26  Mexican arbitration procedure.  If that claim was not part of the
27  arbitration, it is possible that Mattel restricted its evidence-
28  gathering to what was relevant to the copyright claim.  Therefore,

14

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 22 of 25   Page ID
#:283366
Case 2:04-cv-08984-DDP-VBK   Document 30   Filed 03/23/05   Page 15 of 18   Page ID #:20

1   it is not clear that the plaintiff has satisfied the second prong

2   of the test.   The Court need not resolve the issue, however,

3   because, as described below, the plaintiff has failed to satisfy

4   the third prong of the test.

5       The third prong of the equitable tolling test requires a

6   plaintiff to proceed with good faith and reasonable conduct.

7   Daviton, 241 F.3d at 1131.   The Supreme Court of California in

8   Lantzy noted that good faith and reasonable conduct is

9   demonstrated, in part, by a plaintiff's diligent pursuit of his

10  claim.   Lantzy, 2 Cal. Rptr. 3d at 379.   There is no evidence that

11  the plaintiff here has pursued his claim with the diligence

12  demanded in Lantzy.   The arbitration in Mexico ended in May 2003,

13  but the plaintiff waited until October 2004 to file his Complaint

14  in this Court.

15      Furthermore, the plaintiff did not identify, nor did the Court

16  on its own discover, any case law to support the position that

17  arbitration in a foreign forum would result in equitable tolling.

18  It is not clear that tolling of the limitations statute during

19  arbitration proceedings in Mexico would further the policies behind

20  California's doctrine of equitable tolling.   The efficiency

21  rationale is not supported because a fact-finding procedure in

22  Mexico would not necessarily expedite one in the United States.   It

23  also appears likely that a claim with its origins in Mexican

24  arbitration would appropriately proceed in Mexican courts, not

25  Californian courts.

26  ///

27  ///

28  ///

15

**4. Conclusion Regarding Implied Contract Claim**

Based on the foregoing, the Court finds that neither an ongoing royalty theory nor equitable tolling applies to the case at hand.  Accordingly, the two-year limitation expired prior to the plaintiff's filing of his Complaint.  Thus, the Court grants the defendant's motion for summary judgment with respect to the claim for breach of implied contract.

**C. Unjust Enrichment under Mexican Law**

Despite the fact that the plaintiff asserts his unjust enrichment claim under Mexican law, the defendant contends that California's statute of limitations governs the claim.  (Mot. at 17.)  The plaintiff does not respond to this argument in his papers.

In Deutsch v. Turner Corp., the court stated, "Regardless of the source of the substantive law, because all the claims, including both common law and statutory were brought in California state court or in a district court within California, we apply to them the statute of limitations that would be applied in California state court."  324 F.3d 692, 716 (9th Cir. 2002)(citations omitted).  It is not clear from the parties' papers that there is a conflict between Mexican and Californian law regarding the applicable statute of limitations.  However, as described below, if there is a conflict, California law will govern the issue.

Where conflicts concerning a statute of limitations arise, California applies the "governmental interest" test.  Id.  Under this test, the choice of law depends on "an analysis of the respective interests of the states involved."  Id. (quoting Hurtado v. Superior Court, 11 Cal.3d 574, 579 (1974).  "California's

16

EXHIBIT A
PAGE   23

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 24 of 25   Page ID
#:303368
Case 2:04-cv-08984-DDP-VBK   Document 30   Filed 03/23/05   Page 17 of 18   Page ID #:22

1 interest in applying its own law is strongest when its statute of

2 limitations is shorter than that of the foreign state, because a

3 state has a substantial interested in preventing the prosecution in

4 its courts of claims which it deems to be 'stale.'"   <u>Deutsch</u>, 324

5 F.3d at 717 (quotation marks and citation omitted).   Here, the

6 plaintiff has not demonstrated that there is a foreign interest

7 that outweighs California's policy not to hear stale claims.

8 Therefore, the Court finds that California's two-year statute of

9 limitations applies to the unjust enrichment claim under Mexican

10 law.

11    As with the claim for breach of an implied contract, the claim

12 for unjust enrichment relies on an unwritten contract and is

13 governed by the two-year statute of limitations of California Code

14 of Civil Procedure §339(1).   Even if the Court were to treat the

15 plaintiff's claim as one for breach of confidence, the same two-

16 year limitations would apply.   <u>Davies v. Krasna</u>, 14 Cal. 3d 402

17 (1975).   Plaintiff again argues that the three-year limitation for

18 fraud should apply, but, as explained above, the argument is

19 without merit because the plaintiff did not plead fraud in the

20 Complaint.   Thus, the Court finds that the two-year limitation

21 applies.

22    Plaintiff's claim for unjust enrichment accrued simultaneously

23 with the alleged breach of the implied contract.   For the reasons

24 discussed above regarding the implied contract claim, the court

25 finds that the plaintiff's claim for unjust enrichment is barred by

26 the two-year statute of limitations.   Accordingly, the Court grants

27 the defendant's motion for summary judgment of this claim.

28 ///

17

Case 2:04-cv-09049-DOC-RNB   Document 9408   Filed 12/17/10   Page 25 of 25   Page ID
#:283369
Case 2:04-cv-08984-DDP-VBK   Document 30-3   Filed 03/23/05   Page 18 of 18   Page ID #:23

1   ///

2

3   **IV.   Conclusion**

4        Based on the foregoing, the Court grants the defendant's

5   motion for summary judgment with respect to the plaintiff's claims

6   for breach of implied contract and unjust enrichment under Mexican

7   law and denies the defendant's motion with respect to the

8   plaintiff's claim for copyright infringement.

9

10

11

12   IT IS SO ORDERED.

13

14

15   Dated:  3-23-05

16                                              DEAN D. PREGERSON
                                                United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A
PAGE   25**