1  MARK L. TUFT (SBN 43146)
     mtuft@cwclaw.com
2  STEPHEN D. KAUS (SBN 57454)
     skaus@cwclaw.com
3  COOPER, WHITE & COOPER LLP
   201 California Street, 17th Floor
4  San Francisco, California  94111
   Telephone:  (415) 433-1900
5  Facsimile:   (415) 433-5530

6  Attorneys for Glaser Weil Fink Jacobs
   Howard & Shapiro LLP
7
   PATRICIA L. GLASER (SBN 056688)
8    pglaser@glaserweil.com
   ANDREW BAUM (SBN 190397)
9    abaum@glaserweil.com
   GLASER, WEIL, FINK, JACOBS,
10   HOWARD & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
11 Los Angeles, California 90067
   Telephone:  (310) 553-3000
12 Facsimile:  (310) 556-2920

13 Attorneys for the MGA PARTIES

14         UNITED STATES DISTRICT COURT

15       CENTRAL DISTRICT OF CALIFORNIA

16             SOUTHERN DIVISION

17

| | |
|---|---|
| 18 MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 doc (RNBx) |
| 19                    Plaintiff, | Assigned to Hon. David O. Carter |
| 20         vs. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO MATTEL, INC.'S MOTION TO DISQUALIFY GLASER WEIL FINK JACOBS HOWARD & SHAPIRO LLP** |
| 21 MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| 22                   Defendant. | |
| 23 | Hearing Date:    December 20, 2010 |
| 24 | Time:             9:30 a.m. |
|    | Place:            Courtroom 9D |
| 25 | Discovery Cutoff:   October 4, 2010 |
| 26 | Pre-Trial Conference:    January 4, 2011 |
| 27 | Trial Date:        January 11, 2011 |
| 28 AND CONSOLIDATED ACTIONS | |

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644679.1                                                    CV 04-9049 doc (RNBx)
Request for Judicial Notice in Support of Opposition to Motion to Disqualify

1    Glaser Weil Fink Jacobs Howard & Shapiro LLP and Defendant MGA

2    Entertainment, Inc. ("MGA") hereby request the Court to take judicial notice

3    pursuant to Federal Rule of Evidence 201 of the following document in connection

4    with the opposition to Mattel, Inc.'s Motion to Disqualify Glaser Weil:

5        Defendants' Opposition to Lutron's Motion to Disqualify Quinn Emanuel

6    Urquhart & Sullivan, LLP filed on August 30, 2010, in *Lutron Electronics Co., Inc.*

7    *v. Crestron Electronics, Inc. et. al.*, Case No. 2:09-cv-707-DB, United States

8    District Court, District of Utah, Central Division, attached hereto as **Exhibit A**.

9

10   DATED: December 17, 2010            COOPER, WHITE & COOPER LLP

11

12                                       By: /s/ Stephen D. Kaus
13                                           Mark L. Tuft
                                             Stephen D. Kaus
14                                           Attorneys for Glaser Weil

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

644679.1                              1                    CV 04-9049 doc (RNBx)
Request for Judicial Notice in Support of Opposition to Motion to Disqualify

# EXHIBIT A

EXHIBIT A
Page 2

John W. Mackay (6923)
Brett L. Tolman (8821)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, UT 84111
Telephone:  801-532-1500
Facsimile:  801-532-7543
jmackay@rqn.com
btolman@rqn.com

David A. Nelson (Bar No. 6209623)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
500 W. Madison Street, Suite 2450
Chicago, IL  60661-2510
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

John B. Quinn (Bar No. 090378)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Edward J. DeFranco (Bar No. ED-6524)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010-1601
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendants Crestron Electronics, Inc.*
*Face Group, Inc., d.b.a. Lifestyle Electronics,*
*Lava Corp., and Audio Vision Systems, LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC., FACE GROUP, INC., D.B.A. LIFESTYLE ELECTRONICS, LAVA CORP., and AUDIO VISION SYSTEMS, LLC,<br><br>    Defendants. | **DEFENDANTS' OPPOSITION TO LUTRON'S MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br>Civil No.: 2:09-cv-707<br><br>Judge Dee Benson |

Exhibit A, Page 3

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... i

RELEVANT FACTS ............................................................................................... iii

I.   Mr. Reisberg's Former Representation of Lutron Consisted of a Few Months of Document Review Carried Out as a First Year Associate More Than Two Years Before Joining Quinn Emanuel ............................................................................ iii

II.  Mr. Reisberg Has No Lutron Confidential Information and Has Not Disclosed Any Lutron Confidential Information to Anyone at Quinn Emanuel ......................... v

III. Immediately After the Quinn Emanuel Lawyers Representing Crestron Learned of Any Potential Conflict Issue, Quinn Emanuel Established an Ethical Screen Around Mr. Reisberg ......................................................................................... vi

ARGUMENT ............................................................................................................ 1

I.   Quinn Emanuel's Continued Representation of Crestron Is Consistent with the "Functional Analysis" of Imputed Conflicts Employed by this Court and Embodied in the Utah Rules of Professional Conduct and the ABA Model Rules ............ 1

     A.  The Utah and ABA Rules Provide that Ethical Screens Like the Screen Quinn Emanuel Has Implemented Are Sufficient to Preclude Disqualification............................................................................................. 2

     B.  The Relevant Factors Considered by This Court in Applying the Functional Analysis Weigh Heavily in Favor of Denial of Lutron's Motion .......... 3

     C.  This Court's Precedent Establishes that Disqualification Is Inappropriate Where There Is No Possibility of Taint to the Trial Process or the Legal System ............................................................................................... 4

II.  Lutron Relies Improperly on Precedent Based on Utah Rules of Professional Conduct That Are No Longer in Effect ......................................................... 5

III. Courts in Other Jurisdictions Have Refused to Disqualify Firms in Similar Circumstances ........................................................................................... 7

CONCLUSION.......................................................................................................... 10

Exhibit A, Page 4

Case 2:04-cv-09049-DOC-RNB   Document 9411   Filed 12/17/10   Page 6 of 26   Page ID
#:283424
Case 2:09-cv-00707-DB   Document 94   Filed 08/30/10   Page 3 of 23

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Accounting Principals Inc. v. Manpower Inc.,*
    599 F. Supp. 2d 1287 (N.D. Okla. 2008) .......................................................................7

*Cole v. Ruidoso Municipal Schools,*
    43 F.3d 1373 (10th Cir. 1994) ........................................................................................7

*Evans v. Taylorsville City,*
    Civil Action No. 06-631, 2007 WL 2892629 (D. Utah Sept. 28, 2007) ............................1

*EZ Paintr Corp. v. Padco, Inc.,*
    746 F.2d 1459 (Fed. Cir. 1984) .......................................................................................7

*Featherstone v. Schaerrer,*
    34 P.3d 194 (Utah 2001) .................................................................................................6

*Flying J Inc. v. TA Operating Corp.,*
    Civil Action No. 06-30, 2008 WL 648545 (D. Utah Mar. 10, 2008)...........................1, 6

*Geisler ex rel. Geisler v. Wyeth Labs.,*
    716 F. Supp. 520 (D. Kan. 1989) ....................................................................................6

*Graham ex rel. Graham v. Wyeth Labs.,*
    906 F.2d 1419 (10th Cir. 1990) .......................................................................................6

*Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.,*
    639 F. Supp. 282 (N.D. Cal. 1986) .................................................................................7

*In re Asbestos Cases,*
    514 F. Supp. 914 (E.D. Va. 1981) ..................................................................................7

*In re Hansen,*
    586 P.2d 413 (Utah 1978) ...............................................................................................7

*LaSalle Nat'l Bank v. Lake County,*
    703 F. 2d 252 (7th Cir. 1983) .........................................................................................6

*Margulies v. Upchurch,*
    696 P.2d 1195 (Utah 1985) .............................................................................................6

*Nemours Foundation v. Gilbane, Aetna, Federal Insurance Co.,*
    632 F. Supp. 418 (D. Del. 1986) ..............................................................................7, 8, 9

*Pamlab, L.L.C. v. Hi-Tech Pharmacal Co., Inc.,*
    Civil Action No. 08-967, 2009 WL 77527 (D. Colo. Jan. 15, 2009) ................................1

Exhibit A, Page 5

*Papanicolaou v. Chase Manhattan Bank, N.A.,*
    720 F. Supp. 1080 (S.D.N.Y. 1989) ...........................................................................6

*Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.,*
    629 F. Supp. 864 (S.D.N.Y. 1986) ..........................................................................7, 8

*Parkinson v. Phonex Corp.,*
    857 F. Supp. 1474 (D. Utah 1994) ................................................................1, 2, 3, 5

*Rupp v. Transcontinental Ins. Co.,*
    Civil Action No. 07-333, 2008 WL 2627516 (D. Utah Jul. 2, 2008)...............................5

*SLC Limited V v. Bradford Group West, Inc.,*
    999 F.2d 467 (10th Cir. 1993)...............................................................................5, 6

*The Procter & Gamble Co. v. Hausen,*
    183 F.R.D. 571 (D. Utah 1998)...............................................................................1, 5

*Ultradent Products, Inc. v. Dentsply Int'l, Inc.,*
    344 F. Supp. 2d 1306 (D. Utah 2004) ........................................................................6

*United States v. Ta,*
    938 F. Supp. 762 (D. Utah 1996) ..............................................................................1


## STATUTES

ABA Model Rules of Professional Conduct 1.0(f) ....................................................................3

ABA Model Rules of Professional Conduct 1.10(a)..................................................................3

Utah Rules of Professional Conduct 1.10 .............................................................................2

Utah Rules of Professional Conduct 1.9 .........................................................................iii, 2

Exhibit A, Page 6

Case 2:04-cv-09049-DOC-RNB   Document 9411   Filed 12/17/10   Page 8 of 26   Page ID
#:283426
Case 2:09-cv-00707-DB   Document 94   Filed 08/30/10   Page 5 of 23

Defendants Crestron Electronics, Inc. ("Crestron"), Face Group, Inc. d/b/a Lifestyle Electronics ("Lifestyle"), Lava Corp. ("Lava"), and Audio Vision Systems, LLC ("AVC") (collectively, "Defendants") hereby submit this Opposition to Lutron Electronics Co., Inc.'s ("Lutron's") Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel").

## INTRODUCTION

Quinn Emanuel's continued representation of Defendants in this action is consistent with applicable precedent and applicable rules of professional conduct. As exemplified by Lutron's inappropriate accusation that, even if there is no issue about its confidences being preserved, "it looks as if someone is cheating" (Lutron Opp. at 8), Lutron's effort to disqualify Quinn Emanuel is based on incorrect facts, outdated rules, and a misreading of the applicable law in this Circuit.

Lutron's motion is based on work carried out by Quinn Emanuel associate Joshua S. Reisberg more than two years ago when he was a first-year associate at the law firm representing Lutron, Kaye Scholer LLP ("Kaye Scholer"). For a few months during 2007, Mr. Reisberg, along with two other first-year associates and several law clerks, and supervised by a senior associate, reviewed and coded various Lutron documents for certain lawsuits brought by Lutron against parties other than the Defendants in this action. Lutron has not disputed that after 2007, Mr. Reisberg did not work on any Lutron matter while at Kaye Scholer. That is, he did no further document production work, nor did he perform any other work on any Lutron case. As set forth in his Declaration, Mr. Reisberg does not remember any Lutron confidential information. *See* D.I. 80.

Mr. Reisberg joined Quinn Emanuel on September 8, 2009. In March 2010, Quinn Emanuel was approached by Crestron to discuss the possibility of Quinn Emanuel representing Crestron in this action. No one at Quinn Emanuel representing Crestron in this action was aware

i

Exhibit A, Page 7

of Mr. Reisberg's prior work for Lutron until Lutron's counsel gave notice of this prior work in

August 2010. Immediately upon receiving this notice, Quinn Emanuel set up an ethical wall to

prevent any possible disclosure of any Lutron confidential information acquired by Mr. Reisberg

while at Kaye Scholer.

Not only does Mr. Reisberg have no recollection of any Lutron confidential information,

but he has unequivocally sworn that he has not disclosed any Lutron confidential information to

anyone at Quinn Emanuel. In fact, Mr. Reisberg was not even aware that Quinn Emanuel was

representing Crestron in a matter adverse to Lutron until after Lutron's counsel gave notice of his

prior work and he was asked to prepare a declaration (D.I. 80). Mr. Reisberg has done no work

for Crestron, has had no communication about the substance of his work for Lutron with any of

Crestron's current counsel, and is subject to the ethical wall.

The Utah Rules of Professional Conduct, the American Bar Association ("ABA") Model

Rules of Professional Conduct, and this Court's precedent all reflect the trend among numerous

jurisdictions that have adopted a functional approach to analysis of imputed conflicts. This

Court has repeatedly rejected "*per se*" and "appearance of impropriety" tests in favor of a fact-

specific inquiry, calculated to determine if any unfair advantage has really obtained. This Court

has further cautioned that to avoid improper use of the ethical rules for tactical purposes, courts

should impose the harsh sanction of disqualification only in cases of egregious misconduct.

Despite Lutron's insinuations to the contrary, there has been no egregious misconduct here.

The Utah and ABA rules explicitly permit the use of ethical screens for lateral-hire

lawyers moving between private firms and endorse a practical, functional approach to imputed

conflicts: "[I]t should be recognized that today many lawyers practice in firms, that many

lawyers to some degree limit their practice to one field or another, and that many move from one

Exhibit A, Page 8

association to another several times in their careers. If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel." (Utah Rules of Professional Conduct 1.9, comment [4].)

Since this dispute has arisen, Lutron's counsel has taken the position that it will communicate only with Crestron's local counsel, Ray Quinney & Nebeker P.C. ("Ray Quinney"), and not with Quinn Emanuel on the case. (Declaration of Edward J. DeFranco in Support of Crestron's Opposition to Lutron's Motion to Disqualify Quinn Emanuel ("DeFranco Decl. II") ¶ 3.) This has slowed the pace of discovery considerably. Lutron's counsel has also taken the position that none of Lutron's submissions, such as proposed claim constructions that the parties exchanged on Friday, August 27, 2010, should be disclosed to Quinn Emanuel. (*Id.*) Quinn Emanuel has objected and requested that Lutron's counsel reconsider its position. (*Id.*) Creston, Quinn Emanuel, and Ray Quinney disagree with Lutron's position that it is justified in unilaterally sequestering Quinn Emanuel from discovery and claim construction while Lutron's motion is pending.

For these reasons and those set forth in more detail below, Lutron's motion should be denied.

## RELEVANT FACTS

I.      **Mr. Reisberg's Former Representation of Lutron Consisted of a Few Months of Document Review Carried Out as a First Year Associate More Than Two Years Before Joining Quinn Emanuel**

Mr. Reisberg was employed in the New York office of Kaye Scholer from September 2006 to September 2009. (Declaration of Joshua S. Reisberg In Support Of Defendants' Motion for a Determination of No Conflict of Interest ("Reisberg Decl.") ¶ 3 (D.I. 80).) In 2007, as a first-year associate, Mr. Reisberg was assigned to review documents in connection with Kaye

Exhibit A, Page 9

Scholer's representation of Lutron in various litigation matters, none of which involved Crestron as an adverse party.  (*Id.* ¶ 4.)  Two other first-year associates and several law clerks worked on this document review project along with Mr. Reisberg.  (*Id.*)  The project was supervised by a senior associate who also reviewed documents.  (*Id.*)  Mr. Reisberg categorized documents for production, but was not involved in any discussions with Lutron about what specific documents to produce.  (*Id.* ¶ 5.)

It is undisputed that after the few months during 2007 during which Mr. Reisberg worked on this document review project, he did no further work for Lutron during the remainder of his employment with Kaye Scholer.  (*Id.* ¶ 7; Declaration of Daniel Boglioli in Support of Lutron's Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Boglioli Decl.") ¶ 9 (D.I. 78).)  Mr. Reisberg joined Quinn Emanuel in September 2009, more than two years after his role on the document review project at Kaye Scholer had ended.  (Reisberg Decl. ¶ 8.)

Lutron's effort to expand Mr. Reisberg's work on a document review project into a "major role" (Boglioli Decl. ¶ 5) in Lutron matters against other adversaries is contradicted both by Mr. Reisberg's recollection of the work he carried out and by the declaration of Daniel Boglioli, Counsel at Kaye Scholer, submitted in support of Lutron's motion.  Notably, the statement in Lutron's motion (D.I. 76) that Mr. Reisberg "*assisted in formulating* Lutron's litigation and settlement strategies [and] *analyzed* Lutron's patents and the strength of the invalidity contentions," (Motion at 2) (emphases added), appears nowhere in either the memorandum filed by Lutron in support of its motion or in the supporting declaration by Mr. Boglioli.  This omission is important because the current record indicates that it is unsupported and incorrect.  Mr. Reisberg does not recall being made aware of any litigation or settlement strategies and had no substantive involvement in any Lutron matter outside of his document review role.  (Reisberg

iv

Exhibit A, Page 10

Decl. ¶ 5.) Mr. Reisberg does not recall any contact with any person at Lutron other than attending a "get to know the team lunch" and a "thanks for your work" get-together that he believes were attended by a Lutron in-house lawyer whose name he does not remember. (*Id.* ¶ 6.) He does not remember receiving any Lutron confidential information at either event. (*Id.*)[1]

Mr. Boglioli's description of the details of Mr. Reisberg's document review work is consistent with Mr. Reisberg's recollection. Mr. Boglioli states that Mr. Reisberg's role consisted of "reviewing and analyzing" Lutron's documents, "preparing Lutron's privilege log," "develop[ing] a document review strategy for Lutron's documents," and "address[ing] issues that arose during the review of Lutron's documents." (Boglioli Decl. ¶ 5.) Taken as a whole, this collection of tasks constitutes standard document review work of the type that Mr. Reisberg remembers carrying out on these matters. Furthermore, Mr. Boglioli nowhere contradicts or disputes Mr. Reisberg's recollection that the documents he reviewed were "documents related to the design of Lutron products." (Reisberg Decl. ¶ 5.)

**II.    Mr. Reisberg Has No Lutron Confidential Information and Has Not Disclosed Any Lutron Confidential Information to Anyone at Quinn Emanuel**

Mr. Reisberg has no recollection of any Lutron confidential information and brought no confidential materials relating to any client to Quinn Emanuel. (Reisberg Decl. ¶¶ 5, 8.) Mr. Reisberg has not disclosed any Lutron confidential information to anyone at Quinn Emanuel. (*Id.* ¶ 10.) In fact, Mr. Reisberg has had no contact with any person at Quinn Emanuel regarding

---

[1] Mr. Boglioli's statement that Mr. Reisberg was "privy to Lutron's litigation strategy and participated in meetings, including with Lutron's in-house counsel and members of the Kaye Scholer-Lutron team regarding Lutron's litigation strategy, its analysis of its patents, and settlement of the Prior Litigations" is possibly a reference to these two get-togethers (Boglioli Decl. ¶ 7). Although generally true that junior associates tasked with document-review projects do sit-in on an occasional team meeting, Mr. Boglioli notably nowhere states that Mr. Reisberg participated substantively in the formulation of Lutron's litigation strategy, in analysis of the patents, or in the settlement process – and Mr. Reisberg cannot recall either doing so or gaining any confidential knowledge on these subjects. *See* Reisberg Decl. ¶ 5.

Exhibit A, Page 11

the firm's representation of Crestron adverse to Lutron other than for the limited purpose of this disqualification dispute and preparing his declaration (D.I. 80) in support of Defendants' Motion for a Determination of No Conflict of Interest (D.I. 79).  (*Id.* ¶ 11; Declaration of Edward J. DeFranco in Support of Defendants' Motion for a Determination of No Conflict of Interest ("DeFranco Decl.") ¶ 5 (D.I. 82); Declaration of Harry A. Olivar, Jr. in Support of Defendants' Motion for a Determination of No Conflict of Interest ("Olivar Decl.") ¶¶ 2-3 (D.I. 81).)

As Mr. Reisberg stated in his declaration, he takes his professional responsibilities very seriously and would never disclose a client confidence in violation of his ethical obligations. (Reisberg Decl. ¶ 11.)  The Kaye Scholer attorneys who worked with Mr. Reisberg must realize that he is a straightforward and trustworthy young man – Lutron does not allege that Mr. Reisberg has ever actually disclosed any Lutron confidential information to anyone at Quinn Emanuel.

### III.  Immediately After the Quinn Emanuel Lawyers Representing Crestron Learned of Any Potential Conflict Issue, Quinn Emanuel Established an Ethical Screen Around Mr. Reisberg

In March 2010, Quinn Emanuel was contacted by Crestron regarding the possible representation of Crestron and replacement of Sills Cummis & Gross P.C. ("Sills Cummis") in this action.  (DeFranco Decl. ¶ 2.)  Contrary to Lutron's inappropriate accusations to the contrary, the decision to replace Sills Cummis with Quinn Emanuel was based on Crestron Chief Executive Officer George Feldstein's previous positive experience on a different matter with the partners representing Crestron in this action and on his professional judgment that the firm was the best qualified to handle the matter and achieve a favorable outcome.  (Declaration of George Feldstein in Support of Defendants' Opposition to Lutron's Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Feldstein Decl.") ¶¶ 2-3.)  Mr. Feldstein was completely unaware that anyone at Quinn Emanuel had previously worked at a firm representing Lutron.  (Feldstein

vi


Exhibit A
Page 12

Decl. ¶ 2.)  According to Quinn Emanuel's standard procedure, a conflict check was run that revealed no prior history with Lutron.  (DeFranco Decl. ¶ 2.)  After Sills Cummis transitioned the case, Quinn Emanuel entered its appearance in this action on July 12, 2010 (D.I. 66-68).

Late in the day on August 5, 2010, Edward J. DeFranco, one of the Quinn Emanuel partners representing Crestron in this action, received notice from Lutron's counsel, James D. Herschlein, that Mr. Reisberg had previously worked for Lutron while a first-year associate at Kaye Scholer.  (*Id.* ¶ 3.)  No member of the team representing Crestron in this action had any knowledge of Mr. Reisberg's prior work for Lutron before receipt of Mr. Herschlein's letter. (DeFranco Decl. II ¶ 2.)

At that time, Mr. DeFranco asked Harry A. Olivar, a Quinn Emanuel partner not involved in any aspect of the firm's representation of Crestron in this action, to speak to Mr. Reisberg regarding the general scope (but not the substance) of his work at Kaye Scholer on behalf of Lutron.  (Olivar Decl. ¶ 2.)  From that point on, Mr. Olivar served as the Quinn Emanuel contact with Mr. Reisberg in all matters relating to Lutron's disqualification motion.  (*Id.*)  No confidential information was discussed at any time during any of Mr. Olivar's communications with Mr. Reisberg.  (*Id.*; Reisberg Decl. ¶ 10.)

The next day, August 6, 2010, Mr. DeFranco put in place a formal ethical wall to safeguard any Lutron confidential information to which Mr. Reisberg might have been exposed while at Kaye Scholer.  (DeFranco Decl. ¶ 6.)  Mr. DeFranco personally spoke with each attorney and staff member working on the Crestron case to confirm that he or she understood the precautions that were put in place and would follow them.  (*Id.*)

Mr. Olivar confirmed that Mr. Reisberg has no recollection of any Lutron confidential information to which he might have been exposed while at Kaye Scholer.  (*Id.* ¶ 3; Reisberg

Exhibit A, Page 13

Case 2:04-cv-09049-DOC-RNB   Document 9411   Filed 12/17/10   Page 15 of 26   Page ID
#:283433
Case 2:09-cv-00707-DB   Document 94   Filed 08/30/10   Page 12 of 23

Decl. ¶¶ 5-6.)  Mr. Olivar further confirmed that Mr. Reisberg had had no discussions regarding any Lutron confidential information with anyone at Quinn Emanuel, and that Mr. Reisberg would comply with the ethical wall obligations put in place by Quinn Emanuel.  (Olivar Decl. ¶ 3; Reisberg Decl. ¶¶ 11-12; DeFranco Decl. ¶ 7.)  Mr. Reisberg informed Mr. Olivar that he was not aware of Quinn Emanuel's representation of Crestron prior to August 5, 2010.  (Olivar Decl. ¶ 3; Reisberg Decl. ¶ 9.)

Exhibit A, Page 14

## ARGUMENT

**I.     Quinn Emanuel's Continued Representation of Crestron Is Consistent with the "Functional Analysis" of Imputed Conflicts Employed by this Court and Embodied in the Utah Rules of Professional Conduct and the ABA Model Rules**

This Court applies a "functional analysis" to disqualification motions.[2]  It has rejected

notions of "*per se*" disqualification or disqualification based merely on the "appearance of

impropriety."  *See, e.g., Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476-77 (D. Utah 1994)

(denying motion to disqualify firm and rejecting "per se" approach for concurrent

representation); *United States v. Ta*, 938 F. Supp. 762, 765 (D. Utah 1996) (stating that "[o]f

course mere appearance of impropriety is not sufficient for disqualification").  The *Parkinson*

functional analysis continues to be the applicable standard in recent decisions of this Court.[3]

As this Court has recognized, disqualification is a "harsh sanction" that should be

imposed only in cases of "egregious conduct" where "the alleged misconduct taints the lawsuit."

*Parkinson*, 857 F. Supp. at 1476-77.  The disqualification analysis is fact-specific, "measured by

the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial."

*Id.* at 1476.  The disqualification analysis, further, is guided by the Utah "Rules of Professional

---

[2] *See, e.g., Procter & Gamble Co. v. Hausen*, 183 F.R.D. 571, 574 (D. Utah 1998) (denying motion to disqualify where moving party alleged that work product had been disclosed to opposing counsel through contact with expert, and stating that "a functional analysis is required").

[3] *See, e.g., Rupp v. Transcontinental Ins. Co.*, Civil Action No. 07-333, 2008 WL 2627516 at *2 (D. Utah Jul. 2, 2008) (applying *Parkinson* functional analysis and denying motion to disqualify where moving party alleged that opposing counsel would be witnesses); *Flying J Inc. v. TA Operating Corp.*, Civil Action No. 06-30, 2008 WL 648545 at *6 (D. Utah Mar. 10, 2008) (applying *Parkinson* functional analysis and denying motion to disqualify firm where concurrent representation of opposing parties occurred); *Evans v. Taylorsville City*, Civil Action No. 06-631, 2007 WL 2892629 at *4-*5 (D. Utah Sept. 28, 2007) (applying *Parkinson* functional analysis and denying motion to disqualify where moving party alleged that opposing counsel was privy to information from prior representation that could be used against moving party); *see also Pamlab, L.L.C. v. Hi-Tech Pharmacal Co., Inc.*, Civil Action No. 08-967, 2009 WL 77527 at *3-*4 (D. Colo. Jan. 15, 2009) (applying functional analysis and denying motion to disqualify where moving party alleged concurrent representation of opposing parties).

Exhibit A, Page 15

Conduct, the Comment to the Rules, and . . . by the decisions of this court interpreting those rules and standards." *Id.* at 1475.

    **A.**    **The Utah and ABA Rules Provide that Ethical Screens Like the Screen Quinn Emanuel Has Implemented Are Sufficient to Preclude Disqualification**

    The Utah Rules of Professional Conduct, like the decisions of this Court, have adopted a functional approach to the analysis of conflicts and disqualification. In 2005, the Rules were amended to provide, *inter alia*, that ethical screens could be used to avoid imputation of conflicts resulting from lateral movement by lawyers in private practice between firms. The rule governing imputed conflicts, Utah Rules of Professional Conduct 1.10, provides:

> (c)    When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9, unless:
> > (1)    the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and
> > (2)    written notice is promptly given to any affected former client.[4]

    This rule provides that appropriate ethical screens are sufficient to preclude disqualification for imputed conflicts without a requirement of a waiver from the affected former client. The rule further provides that "no lawyer associated in the [lawyer's new] firm shall *knowingly* represent" a client in a matter involving an imputed conflict unless an ethical screen has been put in place. Utah Rule of Professional Conduct 1.0 defines "knowingly" to mean "actual knowledge of the fact in question." The Quinn Emanuel lawyers representing Crestron were unaware of any possible imputed conflict resulting from the representation until they received notice from Lutron on August 5, 2010. (DeFranco Decl. II ¶ 2.) As soon as they

---

    [4] Rule 1.9(b) provides: "A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing."

Exhibit A, Page 16

received notice from Lutron's counsel, they established an effective ethical screen, in full compliance with the Utah Rules of Professional Conduct.[5]  Lutron's assertion that disqualification is warranted on the basis of a "knew or should have known" test (Lutron Br. at 6) is both contrary to the facts and not the relevant standard under the applicable Utah rules.

Quinn Emanuel implemented an ethical screen around Mr. Reisberg as soon as Crestron's counsel knew about any issue, in full compliance with the applicable Utah rules.  Lutron's inappropriate accusation that the screen was untimely and that "it looks as if someone is cheating" (Lutron Mem. at 8) cannot make up for lack of authority supporting Lutron's motion.

**B.      The Relevant Factors Considered by This Court in Applying the Functional Analysis Weigh Heavily in Favor of Denial of Lutron's Motion**

This Court's *Parkinson* decision sets out the factors to be considered in evaluating motions to disqualify:

> The egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel are important considerations.  In addition, equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant.  The essential issue to be determined in the context of disqualification is whether the alleged misconduct taints the lawsuit.

*Parkinson*, 857 F. Supp. at 1476.  These factors weigh heavily in favor of denial of Lutron's motion.  First, there has been no egregious violation of the Utah Rules of Professional Conduct.  As discussed, the Quinn Emanuel lawyers representing Crestron in this matter implemented an

---

[5] Like the Utah rules, the ABA Model Rules of Professional Conduct provide that ethical screens may be employed to avoid disqualification for imputed conflicts.  *See* ABA Model Rules of Professional Conduct 1.10(a).  And also like the Utah rules, the ABA Model Rules state that imputed conflicts potentially requiring ethical screens arise where the lawyers undertaking the representation have *actual knowledge* of the possible conflict:  "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client," where an imputed conflict exists in the absence of an appropriate ethical screen.  *See* ABA Model Rules of Professional Conduct 1.10(a).  "Knowingly" is defined as having "actual knowledge of the fact in question."  *See* ABA Model Rules of Professional Conduct 1.0(f).

Exhibit A, Page 17

ethical wall as soon as they had knowledge of any possible conflict issue. (DeFranco Decl. ¶¶ 6-7; DeFranco Decl. II ¶ 2.) Second, there is no prejudice to Lutron. No Lutron information has been communicated to Crestron's counsel, and Mr. Reisberg does not recall any confidential information in any event. Third, there has been no diminution of counsel's effectiveness or any taint to the lawsuit. The potential imputed conflict relates to document review done by Mr. Reisberg as a junior associate more than two years before he joined Quinn Emanuel. Again, Mr. Reisberg has no Lutron confidential information and has not disclosed any Lutron confidential information to anyone at Quinn Emanuel. The screening measures in place are appropriate and effective safeguards against any possible future transmission of Lutron confidential information. Finally, the equitable considerations militate against disqualification. It would be a hardship to Crestron to proceed without its chosen counsel (*see* Feldstein Decl. ¶ 4), particularly where Lutron has received assurances that there is no legitimate basis for the concern that its confidences are at risk.

Lutron's baseless charge that Quinn Emanuel's failure to notify Lutron of the conflict "demonstrates Quinn Emanuel's apparent disregard for the rules of Professional Conduct" (Lutron Br. at 7) is contrary to both the facts and the rules. As Lutron has been told, the lawyers representing Crestron in this action first learned of the purported conflict *from Lutron*; there was thus no opportunity to "notify" Lutron. After notice, Quinn Emanuel followed the Utah rules in immediately establishing an effective screen around Mr. Reisberg and determined that no disclosure of confidential information of any kind to anyone at Quinn Emanuel had occurred or could occur.

**C.**   **This Court's Precedent Establishes that Disqualification Is Inappropriate Where There Is No Possibility of Taint to the Trial Process or the Legal System**

This Court has repeatedly declined to disqualify counsel "[w]ithout a showing of

Exhibit A, Page 18

probability of prejudice, of litigation unfairness, or taint." *Procter & Gamble*, 183 F.R.D. at 575; *Parkinson*, 857 F. Supp. at 1476. As one example, in *Parkinson*, the Court declined to disqualify counsel where the same firm had briefly had both plaintiffs and defendants as clients – facts that were, if anything, more troubling than the facts here. In *Parkinson*, a lawyer for the plaintiffs had joined a new firm after filing the complaint in the litigation and proceeded to continue representing the plaintiffs at his new firm. Meanwhile, one of the defendants met with a different lawyer at the new firm seeking estate and tax planning advice. The concurrent representation continued for a month before the firm became aware of the conflict and terminated the estate and tax planning representation. This Court denied the disqualification motion on the grounds that "this situation simply does not involve the type of egregious conduct generally associated with the harsh sanction of disqualification," that the concurrent representation "did not taint the lawsuit nor diminish counsel's effectiveness," and that "the interests of the parties and the legal profession and the intent of the Rules of Professional Conduct [were] best served by denying defendants' motion to disqualify." *Parkinson*, 857 F. Supp. at 1477-78.

This Court has also repeatedly cautioned that the sanction of disqualification must be restricted to cases where the conflict taints the representation itself, to avoid "inviting the wholesale filing of motions for tactical reasons." *Id.* at 1476 (internal quotations and citations omitted); *Rupp*, 2008 WL 2627516 at *2. Lutron has not cited a case where disqualification was ordered in the absence of any real risk of prejudice to the moving party.

## II.   Lutron Relies Improperly on Precedent Based on Utah Rules of Professional Conduct That Are No Longer in Effect

Lutron's reliance on a "four factor test" set out in *SLC Limited V v. Bradford Group West, Inc.*, 999 F.2d 467 (10th Cir. 1993), is misplaced. *SLC* was decided under an earlier version of

5

Exhibit A, Page 19

the Utah Rules of Professional Conduct that did not permit ethical screens to address imputed

conflicts. *See SLC*, 999 F.2d at 467 (citing former Rule 1.10(b)). The four-factor test applied in

*SLC* was first enunciated in *Graham ex rel. Graham v. Wyeth Labs.*, 906 F.2d 1419 (10th Cir.

1990), on the basis of an analogous Kansas Rule of Professional Conduct that also did not

provide for ethical screens. *See Graham*, 906 F.2d at 1422. Another case relied on by Lutron,

*Ultradent Products, Inc. v. Dentsply Int'l, Inc.*, 344 F. Supp. 2d 1306 (D. Utah 2004), that

applied the four-factor test enunciated in *SLC*, was decided before the current Utah rules were

implemented, and explicitly noted that the then-current rules did not permit the use of ethical

screens in imputed conflicts cases. *See Ultradent*, 344 F. Supp. at 1310 (stating that "[then-

current] Rule 1.10 makes no provision for the allowance of screening measures").

Unlike the *Parkinson* functional analysis that continues to be the applicable standard in

this Court, Crestron is not aware of any precedent decided under the current Utah rules that

applies the "four-factor test," nor has Lutron cited any.[6] Because the four-factor test was

---

[6] The other authorities Lutron cites are similarly inapposite or actually support denial of Lutron's motion. *See Geisler ex rel. Geisler v. Wyeth Labs.*, 716 F. Supp. 520 (D. Kan. 1989) (denying motion to disqualify on the basis of an imputed conflict where an effective ethical screen had been implemented); *Flying J*, 2008 WL 648545 (denying motion to disqualify where firm representing a party to a litigation previously represented an entity later acquired by an opposing party in that litigation on the grounds that steps taken by firm to isolate any information it might have obtained from the prior representation were sufficient under the functional analysis); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1087 (S.D.N.Y. 1989) (granting a motion to disqualify where a partner at the firm representing the defendant in a dispute impermissibly conducted an hour and a half meeting with the plaintiff outside of the presence of plaintiff's counsel and then discussed the information learned at the meeting with at least four other lawyers at the firm); *LaSalle Nat'l Bank v. Lake County*, 703 F. 2d 252 (7th Cir. 1983) (granting the county's motion to disqualify the opposing party's firm on the basis of their employment of the former chief of the civil division of the county state's office); *Featherstone v. Schaerrer*, 34 P.3d 194 (Utah 2001) (involving imposition of costs and fees relating to violation of applicable rules by an attorney who had improperly conducted and taped an *ex parte* communication with an officer of an opposing party in a litigation); *Margulies v. Upchurch*, 696 P.2d 1195 (Utah 1985) (disqualifying a firm where it represented physician members of a limited partnership in commercial litigation and simultaneously represented

Exhibit A, Page 20

essentially a restatement of former rules that did not provide for ethical screening, it has not been applied under the current Utah rules.

### III.    Courts in Other Jurisdictions Have Refused to Disqualify Firms in Similar Circumstances

Other jurisdictions have denied motions to disqualify in similar circumstances. *See, e.g.,* *Nemours Foundation v. Gilbane, Aetna, Federal Insurance Co.*, 632 F. Supp. 418 (D. Del. 1986) (denying motion to disqualify firm where associate at firm had previously worked as a low-level associate at firm representing moving party, new firm and associate had been unaware of the conflict, and effective screening measures were implemented when conflict was discovered).[7]

---

medical malpractice plaintiffs against those same physicians); *In re Hansen*, 586 P.2d 413 (Utah 1978) (reviewing disciplinary proceeding involving an attorney who represented client in connection with a civil proceeding and represented client's opponent in an unrelated criminal proceeding); *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459 (Fed. Cir. 1984) (affirming district court's grant of a motion to disqualify where partners in a small firm involved in strategic discussions about a case switched sides in the same case); *Accounting Principals Inc. v. Manpower Inc.*, 599 F. Supp. 2d 1287, 1290 (N.D. Okla. 2008) (disqualifying firm where it had represented opposing party in a prior related transaction); *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373 (10th Cir. 1994) (denying motion to disqualify where movant failed to show an attorney-client relationship existed between movant and opposing counsel); *Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.*, 639 F. Supp. 282 (N.D. Cal. 1986) (disqualifying firm in an antitrust litigation that hired a lawyer who had previously been an in-house counsel for ten years for an opposing party in the litigation); *In re Asbestos Cases*, 514 F. Supp. 914 (E.D. Va. 1981) (disqualifying five-person firm doing plaintiffs' asbestos litigation work that hired former government lawyer involved in large asbestos litigations because screening measures were impractical given the volume of litigation taken on by the small firm and also inadequate given that the lawyer would be screened only from a subset of the asbestos litigation handled by the firm).

[7] *See also Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*, 629 F. Supp. 864 (S.D.N.Y. 1986). In *Papst*, the defendants' lawyers in a patent infringement action had founded their own firm after leaving the law firm representing plaintiff in the action. Plaintiff moved to disqualify on the grounds that defendants' lawyers had received plaintiff's confidential information while at their former firm in the course of providing opinions on strategy involving assertion of patents at issue in the case against one of the defendants in the case. The court, adopting a functional analysis, refused to disqualify on the basis of an "appearance of impropriety," focusing instead on the fact that the contacts between defendants' counsel and plaintiff's counsel were not significant enough to warrant disqualification. *See Papst*, 629 F. Supp. at 876-77. The court reasoned that "[t]he reluctance to disqualify attorneys

Exhibit A, Page 21

In *Nemours*, the lawyer at issue had been a junior associate at the opposing firm, representing the moving party (Nemours) in the same litigation, where he had carried out the following work for Nemours and another party (Furlow) to the litigation represented by the same firm:  (1) prepared materials for settlement discussions for Furlow; (2) consulted with experts for Furlow; and (3) reviewed thousands of documents, including confidential documents of Nemours.  The associate attested that he had no recollection of the content or existence of any documents potentially covered either by the work product doctrine or attorney-client privilege.

When he interviewed for a position with the firm ("Biggs") acting as local counsel for a party (Pierce) on the opposing side of the litigation, he did not know the firm was involved in the litigation and had no conversation with anyone at the firm concerning his work on the case before he was hired.  The conflict was discovered when the associate met a lawyer from the firm acting as Pierce's main counsel at Biggs' offices.  The court noted that "[i]t is apparent that Biggs was completely innocent of any knowledge of [the associate's] involvement in the litigation, as was [the associate] of Biggs" until the meeting occurred.  *Nemours*, 632 F. Supp at 421.

At the time the conflict was discovered, the associate and his superiors at Biggs "immediately decided that [the associate] would have no contact with the Pierce litigation whatsoever and would not discuss it."  *Id.*  The associate further attested that he had "never been asked by anyone at Biggs or [Pierce's main counsel] concerning his Furlow representation."  *Id.*

The court in *Nemours* found that the associate himself could not represent Pierce because he had confidential information of an adverse party (Nemours) in a substantially related (*i.e.*, the

---

is rooted in the immediate adverse effect that disqualification has on the client by separating him from counsel of his choice, and the tactical reasons often involved in disqualification motions," and noted that  "the Second Circuit has held that unless an attorney's conduct tends to 'taint the underlying trial' . . . , courts should be quite hesitant to disqualify an attorney."  *Id.* at 877 (internal citation omitted).

Exhibit A, Page 22

same) matter. *Id.* at 422-24. The court, however, held that the firm was not disqualified based on a functional and practical analysis.[8] The court reasoned that the Delaware rules of professional conduct provided for appropriate ethical screens that could preclude disqualification in cases involving imputed conflicts.[9] The court further relied on the effective screening mechanism imposed by Biggs once it learned of any issue[10] and on the nature of the associate's role at the prior firm:

> "[the associate] was not the lead counsel in this litigation when he was at [the prior firm]. He had only recently joined [the prior firm] after becoming a member of the Delaware Bar, and was assigned the duties which typically characterize the life of a young associate in his position. In addition, his involvement was brief, lasting only about four months, and ended approximately eight months before he changed firms. The attorney's degree of prior involvement, whether he controlled strategy, whether he was an associate or partner, and whether he shared legal fees from his firm's representation are all important factors in evaluating the effectiveness of [the screen].

*Id.* at 429. The court found that the moving party had failed to "adduce any convincing evidence of prejudice to its interests resulting from Biggs' continued representation of Pierce." *Id.* at 430.[11]

---

[8] The court stated: "[t]his court holds that an appropriate screening mechanism, in the proper circumstances, may rebut the presumption of shared confidences that arises under Rule 1.10 in cases where the disqualified attorney's conflict of interest originated in private practice. . . . Biggs' and [the associate's] deliberateness and speed in establishing a 'cone of silence' in the instant case similarly help support denial of the motion to disqualify . . . ." *Id.* at 428-29.

[9] The court noted that the comment to the relevant Delaware rule "balances the expectations of confidentiality of a former client against the importance of allowing a client the representation of his choice and promoting the mobility of attorneys, particularly associates, from one private law firm to another." *Id.* at 425.

[10] The court noted that "an effective screening mechanism . . . has been in place ever since [the associate's] former involvement was discovered. No information was disclosed to other Biggs attorneys up to that time or since then." *Id.* at 429.

[11] Lutron fails to cite a single case from any jurisdiction in which a firm was disqualified where (i) it implemented an ethical screen immediately upon learning that an associate had previously worked in a junior capacity for the firm representing the opposing party and (ii) no improper disclosure of confidential information had occurred. The cases Lutron cites all involve

9

Exhibit A, Page 23

## **CONCLUSION**

For the foregoing reasons, the Crestron respectfully submits that the Court should deny

Lutron's motion to disqualify Quinn Emanuel.

DATED August 30, 2010.

By:   /s/ Brett L. Tolman

| | |
|---|---|
| John B. Quinn (Bar No. 090378) | John W. Mackay (6923) |
| QUINN EMANUEL URQUHART & | Brett L. Tolman (8821) |
| SULLIVAN, LLP | RAY QUINNEY & NEBEKER P.C. |
| 865 South Figueroa Street, 10th Floor | 36 South State Street, Suite 1400 |
| Los Angeles, CA 90017-2543 | Salt Lake City, UT 84111 |
| Telephone: (213) 443-3000 | Telephone: 801-532-1500 |
| Facsimile: (213) 443-3100 | Facsimile: 801-532-7543 |
| | jmackay@rqn.com |
| | btolman@rqn.com |
| | |
| David A. Nelson (Bar No. 6209623) | Edward J. DeFranco (Bar No. ED-6524) |
| QUINN EMANUEL URQUHART & | QUINN EMANUEL URQUHART & |
| SULLIVAN, LLP | SULLIVAN, LLP |
| 500 W. Madison Street, Suite 2450 | 51 Madison Avenue, 22nd Floor |
| Chicago, IL 60661-2510 | New York, NY 10010-1601 |
| Telephone: (312) 705-7400 | Telephone: (212) 849-7000 |
| Facsimile: (312) 705-7401 | Facsimile: (212) 849-7100 |

*Attorneys for Defendants Crestron Electronics, Inc., Face Group, Inc., d.b.a. Lifestyle Electronics, Lava Corp., and Audio Vision Systems, LLC*

---

very different facts. *See, e.g., Papanicolaou*, 720 F. Supp. 1080 (granting a motion to disqualify where confidential information was improperly disclosed before an ethical screen was implemented); *EZ Paintr Corp.*, 746 F.2d 1459 (applying Eighth Circuit law and granting a motion to disqualify where partners in a small firm who had been involved at the prior firm in discussions about the merits of the case switched sides in the same case and no screen was implemented at the time the switch occurred); *LaSalle Nat'l Bank*, 703 F. 2d 252 (granting the county's motion to disqualify on the basis of a firm's employment of the former chief of the civil division of the county state's attorney's office where matters opposite the county were ongoing when the county lawyer was hired and no screen was implemented at the time).

10

Exhibit A, Page 24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2010, I electronically submitted the foregoing OPPOSITION TO LUTRON'S MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP to the Clerk of the Court using the EC/ECF system, which sent notification of such filing to the following:

Brent O. Hatch
HATCH, JAMES, & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, UT 84101

James D. Herschlein
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

/s/ Dawn E. Bouvier

Exhibit A, Page 25