QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443 3000
Facsimile:   (213) 443 3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S OPPOSITION TO MGA'S MOTION *IN LIMINE* NO. 31 TO EXCLUDE TESTIMONY OF LEE LOETZ**<br><br>Hearing Date:   TBD<br>Time:           TBD<br>Place:          Courtroom 9D<br><br>Discovery Cut-off:   October 4, 2010<br>Pre-trial Conference: January 4, 2011<br>Trial:               January 11, 2011 |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF LOETZ'S OPINIONS ..................................................................... 1

ARGUMENT ............................................................................................................. 2

I.   NEITHER MATTEL, NOR LOETZ, IS LIMITED BY MATTEL'S RESPONSE TO INTERROGATORY NO. 31 ................................................. 2

II.  LOETZ'S OPINIONS ARE RELIABLE .......................................................... 3

III. LOETZ DID NOT RELY ON DRAWINGS MATTEL "DOES NOT OWN" ................................................................................................................ 7

IV.  LOETZ DID NOT "MANIPULATE EVIDENCE" .......................................... 8

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

Page

**Cases**

Aliotti v. R. Dakin & Co.,
    831 F.2d 898 (9th Cir. 1987) ................................................................. 3, 6

Apple Computer, Inc. v. Microsoft Corp.,
    35 F.3d 1435 (9th Cir. 1994) ...................................................................... 3

Austin Prods., Inc. v. F.D.F. Design Studio, Inc.,
    1990 WL 198741 (E.D.N.Y. Nov. 2, 1990) ............................................... 6

Cavalier v. Random House, Inc.,
    297 F.3d 815 (9th Cir. 2002) .................................................................... 10

Durham Indus., Inc. v. Tomy Corp.,
    630 F.2d 905 (2d Cir. 1980) ................................................................... 6, 9

Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,
    25 F.3d 119 (2d Cir. 1994) ......................................................................... 6

Fisher-Price Toys v. My Toy Co.,
    385 F. Supp. 218 (S.D.N.Y. 1974) ............................................................ 6

JCW Invs., Inc. v. Novelty, Inc.,
    482 F.3d 910 (7th Cir. 2007) .................................................................... 10

Jada Toys, Inc. v. Mattel, Inc.,
    518 F.3d 628 (9th Cir. 2008) ...................................................................... 3

KB Home v. Antares Homes, Ltd.,
    2007 WL 1893370 (N.D. Tex. June 28, 2007) .......................................... 4

L. Batlin & Son, Inc. v. Snyder,
    536 F.2d 486 (2d Cir. 1976) ....................................................................... 9

Mattel, Inc. v. MGA Entm't, Inc.,
    616 F.3d 904 (9th Cir. 2010) ................................................................. 3, 5

Mattel v. Goldberger Doll Mfg. Co.,
    365 F.3d 133 (2d Cir. 2004) ....................................................................... 6

Original Appalachian Artworks, Inc. v McCall Pattern Co.,
    649 F. Supp. 832 (N.D. Ga. 1986) ............................................................. 6

R.F.M.A.S., Inc. v. So,
    --- F. Supp. 2d --, 2010 WL 4341331 (S.D.N.Y. Oct. 12, 2010) .............. 4

Satava v. Lowry,
   323 F.3d 805 (9th Cir. 2003) ................................................................................ 5

Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.,
   210 F. Supp. 2d 147 (E.D.N.Y. 2002) .................................................................. 9

**Statutes**

Fed. R. Evid. 702 ........................................................................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel's expert Lee Loetz, a toy designer with more than a decade of experience, explains in great detail the similarities between Carter Bryant's drawings and the Bratz dolls, including their protected elements, and the reasons why the works' respective expressions of those protected elements are similar, if not identical. MGA's motion to exclude these opinions is meritless. Its arguments are based on a misapprehension of copyright infringement standards, misleading and incomplete references to Loetz's report and testimony, and mischaracterizations of Loetz's methodology and the facts of the case.

## Summary of Loetz's Opinions

Loetz is an artist and toy designer with fourteen years of experience in the toy industry.[1] He has substantial experience with the process of converting two-dimensional drawings of toys into three-dimensional products, and he has reviewed thousands of toy "sculpts."[2] He has spent the last several years as a toy design consultant, including for fashion dolls.[3] Loetz's qualifications and experiences are set forth in more detail in his expert reports.

Loetz submitted an expert report before the Phase 1 trial and again this year. In the process of preparing his reports and formulating his opinions, Loetz reviewed hundreds of Bratz dolls of all "generations," including in and out of packaging and with and without clothing, as well as hundreds of drawings, sketches and sculpts of Bratz works prepared by or under the direction of Carter Bryant. A full statement of the materials Loetz reviewed is included as Attachment B to his Report.

---

[1] See Expert Report of Lee Loetz, dated October 28, 2010 (the "Report"), at 1, Dkt. No. 9210.
[2] Id.
[3] Id.

1    As set forth in detail in his Report, Loetz identified numerous elements of the
Bratz dolls and Bryant's Bratz works that express the idea of the Bratz dolls,
including the dolls' specific body proportions, posing, face designs and features,
hair styles, makeup, clothing and accessories.  As to each of those elements, Loetz
identified specific expressions that, in his opinion, are similar, if not virtually
identical, from the drawings and early sculpts through the first and later generation
dolls.  Loetz supported his opinions with a number of exemplary side-by-side
comparisons of Bryant's Bratz works and corresponding dolls.  Based on his
identification of the elements of the works that are relevant to a similarity analysis
and the similarities that he found between those elements as expressed in Bryant's
works and the Bratz dolls, Loetz concludes that "the dolls are a faithful execution of
the drawings, including with respect to their body proportions, posing, facial
structure, face design, hair-styling, make-up, clothing and accessories."[4]

**Argument**

I.   **NEITHER MATTEL, NOR LOETZ, IS LIMITED BY MATTEL'S RESPONSE TO INTERROGATORY NO. 31**

MGA argues that "Mattel is limited to the copyright infringement analysis disclosed in its Response to Rog. 31," such that Loetz should be precluded from offering any "exhibits and comparisons" that were not referenced in that interrogatory response. Mot. at 8-9.  This frivolous argument fails for no fewer than five separate reasons addressed in detail in Mattel's Opposition to MGA's Motion *in Limine* No. 37.  Rather than burden the Court by repeating those reasons, Mattel respectfully incorporates that Opposition by reference herein.

---

[4]   Id., at 3.

## II. LOETZ'S OPINIONS ARE RELIABLE

MGA argues that Loetz's opinions must be excluded because they are "entirely at odds with Ninth Circuit law." Mot. at 9. In fact, it is MGA that is "at odds" with the applicable law.

First, MGA argues, without citation, that the "Ninth Circuit . . . made clear that *before the copyright analysis can proceed*, the Court must identified [sic] the unprotectable elements and filter those elements from consideration." Mot. at 10 (emphasis added). Based on that misstatement of the law, MGA argues that Loetz's opinions must be excluded because he "did not filter any unprotectable elements in reaching his conclusions." Mot. at 11. The argument that copyright analysis "cannot proceed" until after all "unprotectable" elements are filtered is just wrong. The Ninth Circuit's opinion itself shows this – the Ninth Circuit explained that "[a]t the initial 'extrinsic' stage, we examine the similarities between the copyrighted and challenged works and *then* determine whether the similar elements are protectable or unprotectable." Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913 (9th Cir. 2010) (emphasis added). Thus, any "unprotectable" elements are not "filtered out" until after *all* similarities, including similarities among "unprotectable" elements such as ideas, are identified and examined. This has long been the law in the Ninth Circuit. See Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 637 (9th Cir. 2008) (reversing district court's grant of summary judgment because it "did not conduct an objective test as to both ideas and expression as required under the extrinsic test"); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994) (the "extrinsic" test "objectively considers whether there are substantial similarities in *both* ideas and expression") (emphasis in original); Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) ("even unprotectable material should be considered when determining if there is substantial similarity of expression"). Because *all* similarities between copyrighted and challenged works are relevant to the

"extrinsic" test, MGA's argument that Loetz's ostensible failure to "filter" renders his opinions inadmissible is simply wrong.

Second, MGA's challenge to Loetz's opinions also reflects a fundamental misunderstanding of Loetz's role as an expert, and indeed of the role of any expert witness. Loetz is a toy designer, not a lawyer. Mattel offers his expert opinions to assist the jury in identifying the elements of the copyrighted and challenged works that may be relevant to a similarity analysis, and to help the jury identify whether there are similarities between those respective elements. Courts agree that expert testimony is admissible and helpful for such purposes. See, e.g., R.F.M.A.S., Inc. v. So, ---F. Supp. 2d ----, 2010 WL 4341331, at *32 (S.D.N.Y. Oct. 12, 2010) (allowing expert testimony to assist jury in "understanding the evidence" of "similarities that are probative of copying" and to provide a "trained eye" to enable jury to "identify the similarities between two designs on his or her own"); KB Home v. Antares Homes, Ltd., 2007 WL 1893370, at *10 (N.D. Tex. June 28, 2007) (allowing expert testimony on "the issue of substantial similarity" that would "aid and assist the jury in deciphering the [architectural] plans and considering whether they are substantially similar"). In light of the purpose of Loetz's expert opinions, MGA's arguments that Loetz should be excluded because he purportedly "did not read the Ninth Circuit's decision" and so on make no sense. See Mot. at 9-11. As an expert whose task is to "assist the trier of fact to *understand the evidence* or to *determine a fact in issue*" (Fed. R. Evid. 702 (emphasis added)), Loetz is not required to, nor will he seek to, "apply the law" or assist the jury in doing so.

Third, MGA is simply incorrect that Loetz's methods are in any way in conflict with the governing legal standards. Even if, *arguendo*, comparisons of "unprotected" elements were simply irrelevant (which is not true), that would have no impact on Loetz's opinions, which reflect comparisons of *protected* elements. Loetz did not find similarities based on, for example, the fact that both the drawings and dolls depict female forms, have two legs or two eyes, are fashion dolls, or depict

"young, stylish girls with big heads and attitude." Instead, as he detailed in his report, he compared *particularized expressions* of elements of the dolls and drawings – such as their body proportions, posing, face design, clothing and accessories – and identified similarities between the expressions of those elements.[5] MGA recognizes this; it does not, and cannot, identify a single element that Loetz considered in his similarity analysis that has been held to be "unprotectable" as a matter of law, and there is none. In fact, MGA's argument that Loetz failed to "filter" is supported only by the non-sequiturs that where Loetz opines that the dolls and drawings demonstrate a "visual consistency," he *must have been referring* to similarities between "impermissible ideas" (Mot. at 11), or that where Loetz concluded that certain elements of dolls and drawings that were placed before him at his deposition look "very similar" to him, he "*can only be comparing impermissible ideas.*" Mot. at 11 (emphasis added). MGA's speculations are unsupported and wrong, and in no manner support preclusion.

Fourth, MGA's brief reflects a fundamental misunderstanding not only of Loetz, but of what is protected by copyright. The Ninth Circuit has never held, as MGA says it did, that "body proportions and postures (poses)" are "unprotectable as a matter of law." Mot. at 10. Indeed, it has never held that the particularized expression of any elements of dolls are "unprotectable" as a matter of law. Rather, it is well-established, in this Circuit and others, that even if the "*idea*" or "*concept*" of "depicting a young, fashion-forward female with exaggerated features, including an oversized head and feet, is . . . unoriginal as well as an unprotectable *idea*" (Mattel, 616 F.3d at 915), the *particularized expressions of such ideas* are fully protectable. See, e.g., Satava v. Lowry, 323 F.3d 805, 812-13 (9th Cir. 2003) ("An artist may . . . protect the original expression he or she contributes to these ideas.

---

[5] See Report, at 3-11.

An artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal.  An artist may vary the background, lighting, or perspective.  Such variations, if original, may earn copyright protection."); Aliotti, 831 F.2d at 900-901 ("[T]he eye style and stitching of the Ding-A-Saurs are not dictated by the idea of stuffed dinosaur dolls and thus constitute protectable expression"); Mattel v. Goldberger Doll Mfg. Co., 365 F.3d 133, 135-36 (2d Cir. 2004) (Barbie's face protected by copyright, including particularized expression of an upturned nose, bow lips, and widely spaced eyes); Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 124 (2d Cir. 1994) (abrogated on other grounds) ("Our de novo comparison of the dolls' protectible features convinces us that an ordinary observer would consider them substantially similar.  Both sport the same bright, painted eyes, the same skyward gaze, the same knobby nose, and the same cherubic smile.  Both have oversized heads that feature soft vinyl faces and curly tufts of hair peeking out beneath lace-frilled hoods.  These dolls do not merely share features that are common to all dolls; they contain virtually identical expressions of those features.").[6]  MGA's argument that particularized expressions of the Bratz dolls – the same expressions that MGA has contended give it its

---

[6] See also, e.g., Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 915-17 (2d Cir. 1980) (among other features, court compared similarity of proportion of head to body, shape of face, separation of eyes, skin tone, eye color, eye lashes, shape of nose, size of mouth, length of body, tilt of head); Austin Prods., Inc. v. F.D.F. Design Studio, Inc., 1990 WL 198741, at *4-5 (E.D.N.Y. Nov. 2, 1990) (considering stance, body shape, pose, and facial expression three dimensional figures); Original Appalachian Artworks, Inc. v McCall Pattern Co., 649 F. Supp. 832, 835 (N.D. Ga. 1986) (considering head proportion, flatness of face, shape of eyes, separation of eyes, shape of nose, body shape, torso, shoulders, belly button, elbows, knees, and ankles of Cabbage Patch Kids); Fisher-Price Toys v. My Toy Co., 385 F. Supp. 218, 220-22 (S.D.N.Y.  1974) (considering body size, body shape, arms, legs, hands, feet, spacing of eyes, nose, smile, cheeks, and size/shape of head dolls).

"unique" appearance[7] – are entitled to no copyright protection at all is unsupported by law.

### III. LOETZ DID NOT RELY ON DRAWINGS MATTEL "DOES NOT OWN"

MGA argues that because Loetz, as to a few of his comparisons, relied on Bryant works that "Mattel does not own," his opinions that those works are similar to Bratz dolls are irrelevant and misleading. Mot. at 13-14. This argument makes no sense. As MGA well knows, Mattel's claim in this case is that it *does* own the works that MGA is saying it doesn't. The jury ruled for Mattel the first time around. That MGA intends to dispute ownership again now is no surprise, but it also is no basis to exclude an expert.

MGA claims that "undisputed evidence" shows that Mattel does not "own" the sculpt identified as Trial Exhibit ("TX") 1136, the "body sketch" identified as TX 5-89, and the doll sketches identified as TX 1107, 1108, 1109 and 1110. That simply is not so. The Phase 1 jury found that Mattel owns each of those works,[8] and those findings were supported by ample evidence (and survived MGA's post-verdict motion for judgment as a matter of law).[9] For example:

- Margaret Leahy, the sculptor chosen by Bryant to convert his two-dimensional Bratz drawings into three-dimensional sculpts, testified that the sculpt identified as TX 1136 was presented at a meeting on

---

[7] See TX 13520-15 (MGA 2001 business plan stating: "The Bratz[] are unique in many ways; their eyes are big with a hint of animé style; their lips are more pronounced, their feet and heads are oversized.").

[8] See Dkt. 4125 (Final Verdict Form As Given, July 17, 2008), at 4, 5.

[9] See generally, Trial Tr. May 29, 2008 (Paula Garcia), at 716-24, 801:7-20; Trial Tr. June 3, 2008 (Nana Ashong), at 1141-44; Trial Tr. June 17, 2008 (Carter Bryant), at 2747-49; Trial Tr. July 17, 2008 (Verdict), at 5083-85; Trial Tr. August 8, 2008 (Hearing), at 6642-44; Trial Tr. August 8, 2008 (Margaret Leahy), at 6679-83; Trial Tr. August 12, 2008 (Margaret Leahy), at 6833-42.

September 29, 2000 (well-before Bryant left Mattel on October 19, 2000).[10]

- Bryant and Paula Garcia testified that the "final fashion drawings" depicted in TX 1107-1110 were completed before early November 2000,[11] and other evidence placed the completion date of even earlier, showing that the "fashions" for the Bratz dolls had been "finalized" by late October and were actually shown to MGA at an early meeting with Bryant.[12] There also is ample evidence that these drawings were made by Bryant, not MGA.[13]

- Although Bryant testified that he could not recall precisely when he completed the sculpt drawing identified as TX 5-89, he had no basis to dispute the testimony of Steve Linker, with whom Bryant had discussed the preparation of Bratz product packaging, that Bryant presented TX 5-89 to him before Bryant left Mattel.[14]

Accordingly, there is at least a dispute as to ownership of those works. It would be error to exclude any opinions concerning the works that Mattel claims it owns.

## IV.  LOETZ DID NOT "MANIPULATE EVIDENCE"

MGA argues that certain exhibits used by Loetz were "manipulated in unidentifiable ways and are thus unreliable." Mot. at 14. MGA's hyperbole aside, Loetz did no such thing, and each of MGA's specific challenges to Loetz's opinions fail.

---

[10] See Trial Tr. August 8, 2008 (Margaret Leahy), at 6682-6683.
[11] See Trial Tr. May 29, 2008 (Paula Garcia), at 716:17-723:14; Paula Garcia Depo., October 10, 2007, at 1025:24-1026:20.
[12] See Trial Tr. May 29, 2008 (Paula Garcia), at 716:17-720:11; Trial Tr. May 30, 3008 (Paula Garcia), at 880:15-881:20, 951:3-954:10; Rachel Harris Depo., February 6, 2008, at 40:3-41:5; TX 1236.
[13] See, e.g., Trial Tr. May 29, 2008 (Paula Garcia), at 716:17-723:14; Bryant Depo., at 1141:7 - 1144:17.
[14] See Trial Tr. June 71, 2008 (Carter Bryant), at 2747:21-2749:23.

First, with respect to the drawing, sculpt and doll depicted in Loetz's Exhibit No. 2, MGA's complaint is that Loetz reduced the sizes of those respective works so that their respective "tops" and "bottoms" align. Mot. at 15. There is nothing improper about that, however, as Loetz was not purporting to compare the "heights" of the dolls (in which case it may have been misleading to reduce their sizes to suggest that they all are of the same "height"), but rather their respective body proportions and alignments, such as the proportional placement and alignment of their heads, chins, waists, knees and ankles. The proportions and alignments of those dolls remain the same no matter the height, and it is neither improper nor misleading for Loetz to align the sizes of the dolls for the sake of comparing their proportions. Certainly, changing the scale of a work does not avoid infringement. See, e.g., L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 489-92 (2d Cir. 1976) (proportional reduction in size of an antique Uncle Sam bank from eleven inches to nine inches, along with other slight changes, were considered trivial variations); Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 910 (2d Cir. 1980) (mere reproduction of a work of art in a different medium, or through "physical" as opposed to "artistic" skill, yields no distinguishable variation from the prior work); Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002) ("a change in scale or size of a work or sculpture" is a trivial variation) (citations omitted).

Second, MGA notes Loetz's testimony that he did not take the photograph of a sculpt depicted in his Exhibit 4. Mot. at 15. MGA does not argue how or why that fact renders him unable to opine about how the proportions of that sculpt align with the proportions of other works depicted in that exhibit. Mot. at 15. Nor does MGA argue that anything about the photograph is misleading or inaccurate.

Third, MGA misrepresents Loetz's deposition testimony to argue that Loetz "acknowledged" that he "intentionally posed" the doll depicted in his Exhibit 6 "to look like a 'faithful execution of the drawings.'" Mot. at 15 (citing Loetz Rough

1  Tr., December 7, 2010, at 158:20-159:12).  Here is what Loetz actually testified in
2  response to the question whether he "physically manipulate[d] the doll before taking
3  the photograph of it to try to move the leg into a position that would bear the
4  greatest similarity to the pose in the sketch on the right":

> I did pose the leg in a way that would – that was intended to show that the doll was constructed so it could be posed and played with in a play pattern that a little girl would normally use in an attempt to mimic the artwork on the packaging.  And it was my opinion that the fact that the legs could turn in such a way, which I found to be unique in the fashion doll industry, was yet another example of a faithful execution of the drawings to the dolls.[15]

MGA does not argue that there is anything improper about comparing the dolls and drawings based on similarities that exist when the dolls are posed in accordance with the functionality they were designed with, nor does it cite any authority, and Mattel is aware of none, holding that such comparisons are not proper.  To the contrary, it is well-recognized that posing is a relevant consideration in the copyright infringement analysis.  See, e.g., JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 916 (7th Cir. 2007) (finding similarities in dolls based in part on common posing).

Fourth, MGA argues that the outlining of the doll in Exhibit No. 6 "masks differences" between that doll and the drawing depicted next to it, but MGA does not explain how that is so, or why that is relevant given that copyright infringement is focused on identifying similarities between works, not differences.  See, e.g., Cavalier v. Random House, Inc., 297 F.3d 815, 826 (9th Cir. 2002) (the extrinsic test focuses on "the similarity of the objective details in appearance," including "the subject matter, shapes, colors, materials, and arrangement of the representations").

Fifth, MGA notes that "Loetz dresses dolls in outfits that differ from those in which they are packaged and sold."  Mot. at 15.  That argument is incorrect.  As is

---

[15] Lee Loetz Depo., December 7, 2010, at 535:18-536:2.

evident from the pictures that appear in the portion of the Glenn Vilppu report to which MGA cites, the clothes appearing on the dolls depicted in Loetz's Exhibit Nos. 8 and 9 were included in the packaging of the dolls as they were packaged and sold.[16]

In sum, none of the discrete issues MGA identifies with Loetz's report comes close to amounting to the "manipulation" of dolls or drawings to the point that they are "unidentifiable." In fact, there was no "manipulation" at all, and MGA has failed to dispute the reliability of Loetz's opinions. In any event, even if any of MGA's complaints was persuasive, they would at most go to weight, not admissibility, and they have no bearing on the bulk of Loetz's opinions, which are clearly admissible.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's Motion *in Limine* No. 31 in its entirety.

DATED: December 19, 2010      QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

---

[16] See Expert Report of Glenn Vilppu, November 1, 2010, at 22-23.