QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OPPOSITION TO MGA'S MOTION *IN LIMINE* NO. 34 TO EXCLUDE TESTIMONY FROM HEATHER MCCOMB**<br><br>Hearing Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 9D<br><br>Discovery Cut-off  October 4, 2010<br>Pre-trial Conf:  January 4, 2011<br>Trial:  January 11, 2011 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel expert witness Heather McComb has 46 years of experience in the advertising and toy manufacturing industry. She has worked for and with hundreds of toy designers and has substantial experience with the technical aspects of developing toys. Based on her significant experience developing toys and her review of Carter Bryant's drawings and the Bratz dolls, Ms. McComb concluded that "Carter Bryant's Bratz design drawings are fully developed, high quality design drawings on which the Bratz dolls were based."[1] She further explains that it is standard practice for, and indeed expected of, "sculptors, face painters, hair rooters, engineers and other specialists" to "apply their skills and faithfully execute the original expression captured in the creator's design drawings, not to create something new or different," which was precisely the case with the development of Bratz.[2]

MGA does not, and cannot credibly, challenge Ms. McComb's qualifications or the foundation for her opinions. Instead, it moves *in limine* to exclude her opinions on the grounds that (1) she purportedly failed to "filter" out "unprotectable" elements from the Bratz dolls before concluding they are similar to the Bratz drawings, thus rendering her opinions unreliable and inadmissible; and (2) her conclusions that the dolls were a faithful execution of the drawings are "based on inferences and assumptions that are contrary to the established factual record." Mot. at 32. Neither argument is persuasive. Ms. McComb is qualified and her opinions are reliable. MGA's motion should be denied.

---

[1] Expert Report of Heather McComb, October 29, 2010 ("McComb Report"), at 3.
[2] Id.

## Argument

### I. MS. MCCOMB'S OPINIONS, EVEN TO THE EXTENT BASED ON "UNPROTECTABLE" ELEMENTS, ARE RELEVANT

MGA's primary challenge to Ms. McComb's opinions is premised on its oft-repeated, and legally untenable, argument that no expert opinion that has any bearing on whether the Bratz dolls are similar to Bryant's drawings can be admissible unless the "unprotectable" elements of the dolls were excluded from the expert's consideration before the similarities were analyzed.  As Mattel shows in detail in its response to MGA's Motion No. 35, MGA is simply incorrect that "unprotectable" elements such as "ideas" must be "filtered out" *before* similarities may be evaluated.  To the contrary, the Ninth Circuit expressly *requires* consideration of similarities of both ideas and expressions in the initial stage of the "extrinsic" test for copyright infringement.  See, e.g., Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 637 (9th Cir. 2008) (reversing district court's grant of summary judgment because it "did not conduct an objective test as to both ideas and expression as required under the extrinsic test"); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994) (the "extrinsic" test "objectively considers whether there are substantial similarities in *both* ideas and expression") (emphasis in original); Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) ("even unprotectable material should be considered when determining if there is substantial similarity of expression").  As the Ninth Circuit held in this case, it Is only after *all* similarities between works are identified that "unprotectable" elements are "filtered out" for sake of determining whether similarities between protectable elements remain under the extrinsic test.  Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913 (9th Cir. 2010) ("At the initial 'extrinsic' stage, we examine the similarities between the copyrighted and challenged works and *then* determine whether the similar elements are protectable or unprotectable.").  Accordingly, even if Ms. McComb's opinions that the Bratz dolls are similar to Bryant's drawings are

based in part on similarities of ideas, that does not render her opinions irrelevant or inadmissible.

Moreover, even apart from the "extrinsic" test, Ms. McComb's identification of similarities between Bryant's Bratz works and the Bratz dolls are relevant to, and would be helpful to the jury in evaluating, whether MGA (i) engaged in *factual copying* (see Shaw v. Lindheim, 919 F.2d 1353, 1363 (9th Cir. 1990) ("Even if none of these [common] plot elements is remarkably unusual in and of itself, the fact that both scripts contain all of these similar events gives rise to a triable question of substantial similarity of protected expression.")); Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B] (2010) (in determining whether defendant factually copied from plaintiff's work, it is appropriate to consider "similarities [that] negate defendant's claim of independent creation. Those similarities may inhere in constituents that are themselves original or in unoriginal ingredients."); (ii) infringed the *original arrangement or compilation of elements* in Bryant's Bratz drawings (see, e.g., Feist Publications, Inc. v. Rural Tel. Serv., Co., 499 U.S. 340, 348 (1991) ("even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement."); Apple Computer, 35 F.3d at 1446 ("Nor does it mean that infringement cannot be based on original selection and arrangement of unprotected elements."); and (iii) infringed Mattel's rights in the *Bratz characters*, see, e.g., Walt Disney Prods. v. Air Pirates, 581 F.2d 751, 754 (9th Cir. 1978) (character rights are copyrightable component parts of the overall graphical works for which copyright was registered); Lone Wolf McQuade Assocs. v. CBS, Inc., 961 F. Supp. 587, 594 (S.D.N.Y. 1997) (a character can be protected as a compilation of character traits that individually are unprotected by copyright). Each of those issues is relevant to Mattel's copyright infringement claim and allows for consideration of both protectable and unprotectable elements,

such that whether Ms. McComb "filtered" has no bearing on the relevance and reliability of her opinions.

## II. MS. MCCOMB'S OPINIONS THAT MGA USED BRYANT'S DRAWINGS ARE CONSISTENT WITH, AND BASED ON, THE FACTUAL RECORD

Based on her decades-long professional experience in the toy industry, Ms. McComb opines that, typically, when an idea for a toy is green-lighted, the subsequent development of the toy stays true to the idea that undergirds it. As she puts it, the individuals involved in the development of the toy "apply their skills *in service to the designer's original expression* of the toy, in the role of a translator rather than the author of a new work."[3] She concludes that MGA's development of Bratz was consistent with that general practice, that Bryant's drawings were used as the "actual design drawings" and that the dolls are a "highly faithful execution of" the drawings.[4] These opinions are relevant to a number of issues, including Mattel's trade secret misappropriation claim and apportionment of profits for copyright infringement. Mattel claims that MGA used Mattel's trade secret designs in making the dolls; McComb's opinions that the drawings were used as the "actual design drawings" by MGA directly supports that claim. Likewise, McComb's opinions about the Bratz development process based on her decades of experience in the toy industry and her review of the drawings, dolls and record will assist the jury in evaluating the parties' competing claims concerning apportionment of profits – the jury may have to decide to what extent the copyright works, versus other factors, contributed to MGA's profits, and McComb offers helpful expert testimony on that issue.

---

[3] McComb Report at 7 (emphasis in original).
[4] McComb Report at 5, 9.

MGA's only challenge to these opinions is that Ms. McComb's opinions that the similarities between Bryant's drawings and the Bratz dolls evidence the typical toy-design process "are contrary to the factual record in this case," and indeed are "a made-up version of the facts." Mot. at 33. According to MGA, its process of creating the Bratz dolls was anything but "typical," as instead of trying to replicate Bryant's designs, its developers, including sculptor Margaret Leahy, were given "artistic freedom" with the result that the dolls "evolved away from the drawings." Id. MGA thus disagrees with McComb that its development of Bratz conformed to the "typical" process, and argues that its disagreement on that issue means McComb should not be permitted to offer opinions contrary to MGA's view of the facts.

That hardly is a basis for exclusion. Indeed, McComb's opinions are relevant precisely because they *do* dispute MGA's contentions regarding the development of Bratz. MGA is free to argue that it did not use Bryant's drawings and has experts lined up to do so,[5] but Mattel is permitted to dispute that point through its own evidence, including the expert opinions of Ms. McComb.

Nor is their any basis to MGA's claim that the purportedly "established factual record" shows that it did not use Bryant's designs. Even a cursory comparison between the Bratz dolls and Bryant's drawings shows that the dolls hardly "evolved away from" the drawings. Moreover, MGA's own witnesses and others involved in the process of developing Bratz have admitted that Bryant's designs are, contrary to MGA's current claims, the underpinning of the dolls:

- Paula Garcia, MGA's Bratz manager, affirmed that the Bratz dolls "stay[ed] true" to Bryant's vision in the "overall design and the look of each girl." (TX-10001-02).

---

[5] See Rebuttal Expert Report of James E. Malackowski, dated December 1, 2010, at 38-39.

- MGA described its dolls as derivatives of Bryant's works when it registered them with the Copyright Office.  (TX 505, TX 507, TX 509, TX 511, TX 557, TX 558, TX 559, TX 560, TX 561, TX 562, TX 563, TX 564).

- Before this lawsuit, MGA repeatedly sued alleged counterfeiters for infringing MGA's claimed rights *in Bryant's designs*.  (TX 13690-002, 005 (identifying Bryant's 17 design drawings as the Artistic Works being infringed), TX 13691-0140 (accusing Mini Trendy Teenz, Trendy Teenz, Rocker Headz Fashion Doll Bobblehead Pen, and Rocker Headz Bobblehead Fashion Doll of infringing Bratz dolls and registered designs and original drawings), TX 13696 (Photograph of Mini Trendy Teenz doll), TX 13698 (same), TX 13700 (same), TX 13561-0029-31, 0120-122, 0124-125, 0194, 0208, 0210, 0278, 0280 (images of the infringing product).

- MGA acknowledged in the foregoing cases not only that competitors' products infringed Bryant's Bratz works, but that MGA's dolls are based on those Bryant works, including by admitting that the Bratz dolls are three-dimensional depictions of Bryant's Bratz drawings and that the facial decorations on the Bratz dolls came from Bryant's designs.  (TX 13691-0007, 0028, 0049; TX 13738-002-03, TX 13572-002).

- Carter Bryant confirmed that the "distinctive" lips and eyes of the Bratz dolls are reflected in his drawings and that "the basic—the look of the face" of the dolls reflects his designs.  (8/8/2008 PM Trial Tr. (Carter Bryant) at 6670:13-24; 8/8/2008 PM Trial Tr. (Carter Bryant) at 6664:14-6665:7).

- Even Margaret Leahy, the sculptor that MGA now touts, agreed that "Bryant's drawings have the factors that MGA say[s] are unique to the dolls, which is the oversized eyes, protrusive lips, and the diminished nose."  (8/12/2008 AM Trial Tr. (Margaret Leahy) at 6847:22-6848:1).

Accordingly, notwithstanding MGA's hyperbole about "made up facts," there is at least a dispute about whether MGA used Bryant's designs in accordance with standard toy industry practices.  Ms. McComb's opinions properly will help the jury resolve this disputed issue.  Her testimony should be allowed.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's Motion *in Limine* No. 34 in its entirety.

DATED:  December 19, 2010          QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                                   By  /s/ John B. Quinn
                                       John B. Quinn
                                       Attorneys for Mattel, Inc. and
                                       Mattel de Mexico, S.A. de C.V.