ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

PATRICIA L. GLASER (State Bar No. 056688)
pglaser@glaserweil.com
GLASER, WEIL, FINK, JACOBS,
HOWARD & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Tel: (310) 553-3000/Fax: (310)556-2920

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL, INC.'S *DAUBERT* MOTION NO. 5 TO EXCLUDE TESTIMONY BY GLENN V. VILPPU**<br><br>Pretrial Conference: January 4, 2011<br>Trial Date: January 11, 2011<br>Judge: Hon. David O. Carter |

# TABLE OF CONTENTS


Page(s)

INTRODUCTION .................................................. 1

ARGUMENT .................................................. 2

I. VILPPU EXPLAINS WHY MATTEL'S PURPORTED SIMILARITIES STEM FROM COMMON ARTISTIC TECHNIQUES. .................................................. 2

A. In His Expertise As an Artist, Vilppu Opines As To The Role of Inspiration And Standard Proportions And Posing Of The Human Form. .................................................. 2

B. Vilppu Applies This Expertise To Rebut Mattel's Claims of Similarities. .................................................. 5

C. Vilppu's Expertise As to Standard Features Of The Human Form Is Admissible Independently Of Mattel's Experts. .................................................. 7

II. MATTEL IS WRONG THAT DIFFERENCES ARE NOT RELEVANT OR PROBATIVE TO COPYRIGHT INFRINGEMENT ANALYSIS. .................................................. 8

A. The Law Is Clear That Differences Are Probative. .................................................. 8

B. Mr. Vilppu's Opinions On Differences Are Relevant To Rebut Mattel's Extenuated Efforts To Find Similarities. .................................................. 10

C. Mattel's Reliance On *Sid & Marty Krofft*, Which Compared Television Shows And Commercials And Not Dolls, Is Misplaced. .................................................. 11

III. MATTEL'S ATTEMPTS TO CLAIM VILPPU IS AN EXPERT IN SOMETHING HE IS NOT AND THEN ARGUE HE IS NOT QUALIFIED MUST FAIL. .................................................. 12

CONCLUSION .................................................. 14

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Benay* v. *Warner Bros. Entertainment, Inc.*, 607 F.3d 620 ........ 8

*Berkla* v. *Corel Corp.*, 66 F.Supp.2d 1129 ........ 9

*Durham Indus., Inc.* v. *Tomy Corp.*, 630 F.2d 905 ........ 9

*Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64 (2d Cir. 1974) ........ 9

*Jason* v. *Fonda*, 526 F.Supp. 774 ........ 10

*Mattel, Inc.* v. *MGA Entertainment, Inc.*, 616 F.3d 904 ........ 7, 8, 12

*Morgan Creek Prods., Inc.* v. *Capital Cities/ABC, Inc.*, 1991 U.S.Dist. LEXIS 20564 ........ 10

*Olson* v. *Nat'l Broad. Co.*, 855 F.2d 1446 ........ 9

*Sid & Marty Krofft Television Prods., Inc.* v. *McDonald's Corp.*, 562 F.2d 1157 ........ 11, 12

*Warner Bros., Inc.* v. *American Broad. Cos.*, 720 F.2d 231 ........ 9

*Weygand* v. *CBS, Inc.*, 1997 U.S.Dist. LEXIS 10613 ........ 10

## INTRODUCTION

Mattel does not and cannot dispute that Glenn Vilppu is a renowned artist, well-known and respected for his artistic skill in the areas of three dimensional drawing and animation. Mattel also does not and cannot dispute that Mr. Vilppu's skills as an artist are so well-known and respected that he has taught drawing and animation all over the world, from the American Animation Institute, to Animation Work in Denmark, to the University of Helsinki Film School, to DHIMA (international training center of Digital Hollywood) in Japan and multiple other countries. He has also taught and worked for numerous studios, such as Walt Disney, Warner Brothers and Rhythm & Hughes. Even Mattel's expert recognizes Mr. Vilppu's skill, stating that his own expertise derives from studying with Mr. Vilppu: "[a]s a student I studied art, life drawing, animal drawing, comparative anatomy, and character drawing from top experts in the field such as *Glenn Vilpuu* [sic]." Rutowski Decl. Ex. 2 (Loetz 2010 Report at 1)(emphasis added).

Mr. Vilppu's vast and varied experience drawing and instructing students in how to draw, illustrate and animate in three dimensions makes Mr. Vilppu more than qualified to assist the Court and a jury in understanding standard human proportions and drawing techniques. His qualifications allow him further to review and compare the drawings and sculpts at issue in this case and offer his perspective as an artist as to their similarities and differences and as to standard artistic techniques that appear in those drawings and sculpts. He points out why the so-called "similarities" claimed by Mattel and its experts are overstated, not similarities at all, or similarities that derive only from standard human proportions and drawing techniques.

It is precisely because Mr. Vilppu's testimony is so probative that, in order to avoid his testimony at trial, Mattel resorts to citing select portions of his testimony out of context and seeking to suggest that he claims expertise in areas he clearly does not. Mr. Vilppu is an artist. As an expert in the field of drawing, drawing in

three dimensions and animation, he offers his artistic perspective on the drawings and sculpts at issue in this case. He does not seek to offer a legal opinion and he claims no expertise in doll manufacturing. His testimony is not only probative, it is helpful in numerous respects on the various copyright issues facing the Court and should be permitted.

## ARGUMENT

### I. VILPPU EXPLAINS WHY MATTEL'S PURPORTED SIMILARITIES STEM FROM COMMON ARTISTIC TECHNIQUES.

Mattel argues that Mr. Vilppu is just citing differences between the Bratz dolls and the Carter Bryant drawings; from that incorrect characterization, Mattel argues that his opinions are not relevant. Mattel is just flat out wrong on the law when it comes to considering differences between two works in a copyright infringement matter, as discussed in greater detail below. It is entirely appropriate, and indeed necessary, to make that comparison. But, as a threshold matter, Mr. Vilppu is not only pointing out differences as Mattel suggests. Mr. Vilppu opines on the drawing of the human form and the drawing of animated characters within his expertise as an artist. As a preface to reviewing the comparisons that Mattel's expert Lee Loetz draws, he discusses human anatomy and standard human proportions. He talks about common artistic practices and his extensive work in the area of animation and artistic practices that are common to animation and character art. All of this information is provided without any discussion of so-called "differences," and it offers the Court helpful expertise in the understanding of art and the drawing of human figures.

#### A. <u>In His Expertise As an Artist, Vilppu Opines As To The Role of Inspiration And Standard Proportions And Posing Of The Human Form.</u>

Mr. Vilppu cites examples of how ideas are carried forward in art and how even when those ideas are clearly similar the resulting works are not. While it is common practice for artists to use preexisting works as inspiration, it does not

necessarily follow that the resulting artistic work is a copy. Mr. Vilppu offers illustrations of this point in his report, including the following images:



12 MICHELANGELO. *Night.* Marble. 1526–31. Florence, Medici Chapel



13 PETER PAUL RUBENS. Composite drawing. About 1605–08. The Hague, Frits Lugt Collection



14 THÉODORE GÉRICAULT. Pen and ink drawing. 1816. Paris, Ecole des Beaux-Arts



15 *Leda.* Contemporary copy after a lost cartoon of 1529–30 by Michelangelo. London, Royal Academy





16 ROSSO FIORENTINO. 1530–31(?). London, National Gallery



17 BARTOLOMMEO AMMANATI. Marble. 1536. Florence, Museo Nazionale

Vilppu 2010 Report at 6 (citing "Themes and Variations" by K.E. Maison (London: Thames and Hudson, 1960)).[1]

[1] Expert Report of Glenn V. Vilppu, dated December 1, 2010 ("Vilppu 2010

Mr. Vilppu similarly illustrates for the Court and jury the narrow range of variation that can occur in human faces. Nevertheless, even those small and subtle changes indeed alter the faces such the resulting person is recognized as someone else entirely. Mr. Vilppu illustrates this point through the following images:



Marika Blossfeldt, Berlin: dancer



Arthur Turchi, New York City: hairstylist, make-up artist, and performer



Brenda Adger, New York City: secretary, Western Union



Anna Klinckhammer, Düsseldorf: sculptor



Mario Gawrys, Berlin: window and fashion designer

Vilppu 2010 Report at 10 (citing "Heads" by Alex Kayser (New York: Knopf, 1984).

Mr. Vilppu also discusses standard proportions and poses for drawing the human form and animated characters. Vilppu 2010 Report at 7-12. He discusses at length common human proportions – noting, for example, that in drawing the human form, it is standard for the pubic arch to appear at half height and for the wrists to fall just below the hip. *Id*. at 9. He explains that while humans adults are generally 7 ½ to 8 heads high and a teenager is around 6 heads high, animators often draw people who are 3 to 4 heads high. *Id.* at 8, 10. He explains how it is not surprising that the Bratz dolls follow many of these standard proportioning techniques. With respect to the face and head, he explains that the human head and face have certain proportions, and that "[v]arying these standards will result in an abnormal, non-human looking head. *Id*. at 9. However, making small tweaks to the face can make a big difference in the message conveyed by that face, for example, very small changes to the face of a doll or drawing can make it look "younger" or "sweeter". *See, e.g.*, *Id*. at 10 ("It is well-known that you can easily

---

Report"), attached as No. 5 to Mattel's Notice of Lodging, dated December 10, 2010.

vary the overall impression of a drawing by varying the head and eye size. Making the head and eyes larger makes the character appear more child-like, cuter, and generally more appealing."). Mr. Vilppu explains the art of drawing.

### B. Vilppu Applies This Expertise To Rebut Mattel's Claims of Similarities.

Only after providing this background does Mr. Vilppu turn to Mr. Loetz's claims of similarities between the Bratz dolls and the Carter Bryant drawings. And, contrary to Mattel's portrayal of his report, Mr. Vilppu does recognize similarities between them. But he notes that these similarities, in many cases, are due to standard proportioning and anatomy. For example, Mr. Vilppu opines regarding similarities as follows:

> there are standard human proportions and if a doll or drawing does not have those proportions, they would look wrong. Mr. Loetz claims that the "chin, shoulder, chest, waist, knees, ankles, elbows and wrists" all line up. But, there is nothing special about the fact that the initial sketches and dolls have the pubic arch in the standard half-height position. The wrists also fall at the standard location. The position of the knee is also in the standard position relative to the legs.

Vilppu 2010 Report at 13.

Mr. Vilppu also, in rebutting Loetz, carefully considers his claimed similarities. He finds that those claimed similarities, in many cases, are misleading or simply wrong. For example, Vilppu discusses Exhibit 2 to the report of Loetz, which is depicted below:

Vilppu 2010 Report at 14. Vilppu points out that "*the lines that Mr. Loetz purports to draw, simply do not line up*," which he details as follows:

> Starting with Mr. Loetz's "top" line, this line cuts off the top of the head of the drawing on the left and the doll on the right. Yet, it is flush with the top of the head of the preliminary sculpt. However, the next line, "chin" actually falls significantly below the chin of the sculpt…
>
> Moving down to the "shoulders" line, again it does not line up on the sculpt. The "chest" line goes through the center of the breasts on the sculpt but below the breasts in the drawing. The "waist" line is far above the belly button on the sculpt. The arms of the sculpt fall significantly below the "pubic arch." This is not a normal proportion. The "knees" line falls above the knees of the sculpt, and the "ankles" line passes through the shin of the sculpt. Finally, the "bottom" line is just above the sculpt's toes, not the bottom of its shoes. These lines simply do not line up to the landmarks identified by Mr. Loetz.

*Id*. at 14 (emphasis added).

Moreover, as Vilppu notes in his report, the above image, also used by Mattel in its Motion at page 4, depicts a drawing that is not owned by Mattel. The undisputed testimony is that MGA is the author (or a joint author at minimum) of the sketches depicted in Exhibits 11-14, 20 and 21 to the Loetz 2010 Report. To the extent the unidentified drawings in these exhibits are supposed to represent

images of TX 1107, 1108, 1109, 1110, these were not the concept drawings that Bryant pitched to MGA. *See* Rutowski Decl. Ex. 1 (Ex. 302 is Carter Bryant's pitchbook); *id*. Ex. 2 (Loetz 2010 Report at Exhibits 11-14 depict different drawings). Rather, the fashions depicted in these drawings were authored *by MGA after Bryant left Mattel* for marketing purposes. Rutowski Decl. Ex. 6 (Garcia Tr. at 716:17-717:15); *id*. (Garcia Tr. at 713:17-714:2) (it was five days after Bryant's last day at Mattel that MGA had created these Bratz fashions). Thus, it is not surprising that there are some similarities to the dolls as Vilppu acknowledged in his deposition. *See* Vilppu 12/15/10 Rough at 10:20-11:21. Nevertheless, beyond standard features, there are also differences, as Mr. Vilppu assists the trier of fact to understand in his report. Vilppu 2010 Report at 28, 45.

All of these opinions are entirely appropriate, probative and helpful to the Court and the jury.

**C. <u>Vilppu's Expertise As to Standard Features Of The Human Form Is Admissible Independently Of Mattel's Experts.</u>**

Mr. Vilppu's opinions are not only proper rebuttal to Mattel's claims of "substantial similarity" between the sketches and the dolls. Even if Mattel had not offered opinions from Loetz, they are proper and useful to teach the jury about standard drawing techniques in the industry. Vilppu's opinions relating to standard features are proper in connection with the central issue of what elements in the sketches must be compared in both the extrinsic and intrinsic analysis. In the extrinsic analysis, the Court must filter unprotectable ideas—there is no dispute as to this. Motion at 6, citing *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010) (emphasis added). Then, during the intrinsic analysis, the trier of fact must compare only protectable elements: "Mattel will have to show that the Bratz sculpts are virtually identical to Bryant's preliminary sculpt, or that the Bratz dolls are substantially similar to Bryant's sketches *disregarding similarities in unprotectable ideas*." *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 917

(9th Cir. 2010) (emphasis added). Mr. Vilppu's expertise is useful to help the Court and a jury understand the standard drawing and animation techniques related to the human form, which must be disregarded when applying copyright law. *See, e.g.* Vilppu 2010 Report at 4-12. Mattel completely ignores this aspect of Mr. Vilppu's report in seeking a complete bar to his testimony.

## II. MATTEL IS WRONG THAT DIFFERENCES ARE NOT RELEVANT OR PROBATIVE TO COPYRIGHT INFRINGEMENT ANALYSIS.

Mattel is entirely incorrect when it argues that the consideration of differences is irrelevant to the inquiry of copyright infringement. As set forth below, the law is clear that both differences and similarities must be considered in making a determination of infringement.

### A. The Law Is Clear That Differences Are Probative.

The Ninth Circuit recently confirmed the relevance of differences:

> We agree with the district court that "[w]hile on cursory review, these similarities may appear substantial, a closer examination of the protectable elements, including plot, themes, dialogue, mood, setting, pace, characters, and sequence of events, *exposes many more differences than similarities* between Plaintiffs' Screenplay and Defendants' film." The most important similarities involve unprotectable elements. They are shared historical facts, familiar stock scenes, and characteristics that flow naturally from the works' shared basic plot premise. Stripped of these unprotected elements, the works are not sufficiently similar to satisfy the extrinsic test.

*Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010)(emphasis added). Likewise, such differences are relevant to the intrinsic test, which also requires comparison of only protectable elements: "Mattel will have to show that the Bratz sculpts are virtually identical to Bryant's preliminary sculpt, or that the Bratz dolls are substantially similar to Bryant's sketches *disregarding similarities in unprotectable ideas*." *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010) (emphasis added).

As explained by Professor Nimmer, author of the leading treatise on copyright law: "The admission of evidence of differences as between plaintiff's and

defendant's works is not ... improper. If the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results." 4 Nimmer on Copyright § 13.03[B][1] [a]. Moreover, the Second Circuit has held that in contrast to literary works, "[a] graphic or three-dimensional work is created to be perceived as an entirety. Significant dissimilarities between two works of this sort inevitably lessen the similarity that would otherwise exist between the total perceptions of the two works." *Warner Bros., Inc. v. American Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983). *See also, e.g., Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("[N]umerous differences tend to undercut substantial similarity. As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other.") (citing *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65-66 (2d Cir. 1974), in which the court recited the district court's list of differences among the two works and affirmed summary judgment for defendant).

These widely-cited principles have been applied routinely by courts in the Ninth Circuit that have considered differences on the issue of substantial similarity. *See, e.g., Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988) (affirming JNOV for the defendant, noting that the district court had given little weight to plaintiffs expert chart and film montage comparing the similarities of the two works in part because the expert had "deemphasized any dissimilarities between plaintiff's and defendant's works"); *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1144 (E.D. Cal. 1999) ("[A]s it does in same-media cases, the court when adjudicating a cross-media copyright infringement case will simply have to parse, to the best of its ability, the protected expression from the unprotected essential idea (and what 'expression' necessarily flows from that idea), and make its best judgment

concerning whether the potential infringing expression has sufficient dissimilarities."); *Weygand v. CBS, Inc.*, 1997 U.S. Dist. LEXIS 10613, at *29 n.22 (C.D. Cal. May 22, 1997) ("If the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results.") (citing Nimmer); *Morgan Creek Prods., Inc. v. Capital Cities/ABC, Inc.*, 1991 U.S. Dist. LEXIS 20564, at *38 (C.D. Cal. Oct. 29, 1991) ("Upon viewing [plaintiff's work] and [defendant's work] one is perhaps struck as much by the dissimilarities between the two works as by their similarities .... The list could go on."); *Jason v. Fonda*, 526 F. Supp. 774, 777 (C.D. Cal. 1981) (focusing on the "substantial differences between the works" in reaching its conclusion that "when analyzed as an entire work, the [defendant's motion picture] is, as a matter of law, substantially dissimilar to plaintiff's book").

Properly stated, the issue here is whether the works being compared are substantially similar, to which the existence of significant dissimilarities is by definition germane.

**B. Mr. Vilppu's Opinions On Differences Are Relevant To Rebut Mattel's Extenuated Efforts To Find Similarities.**

Here, Mr. Vilppu's trained artist's eye can assist in this analysis as he can help the lay person see the small differences that can entirely change the character of a doll or drawing. For example, as discussed above he explains how making small tweaks to the face can make a doll or drawing look "younger" or "sweeter". *See, e.g.*, Vilppu Report at 10 ("It is well-known that you can easily vary the overall impression of a drawing by varying the head and eye size. Making the head and eyes larger makes the character appear more child-like, cuter, and generally more appealing.").

Moreover, Mattel's efforts to find similarities are in many cases quite a stretch, and Mr. Vilppu helps the trier of fact to see this. In his report, Mr. Vilppu

opines that "the 'similarites' identified by Mr. Loetz are at a minimum overstated and in many cases non-existant" and "Mr. Loetz's claimed similarities are in fact not similarities at all." Vilppu 2010 Report at 2-3, ¶ 13. He goes on to provide specific, detailed support for each of his opinions. Mr. Vilppu also opines that "other similarities" noted by Loetz, "such as the lining up of various body landmarks, are as much the result of standard human proportions or standard animation proportioning techniques as anything else," and also that "Loetz overlooks notable differences in the body and face proportions between the sketches and the dolls that negate his claimed similarities." *Id*. ¶ 16. Mr. Vilppu provides specific, detailed support for each of his opinions.[2]

Vilppu's opinions specifically rebut Loetz, and also bear directly on the credibility of Loetz's (and Mattel's) own analysis of the works at issue. If the jury credits Vilppu, and concludes that there are numerous material differences, it may well find it disconcerting that Loetz saw none of these. For these reasons alone, Mattel's Motion should be denied in its entirety.

### C. Mattel's Reliance On *Sid & Marty Krofft*, Which Compared Television Shows And Commercials And Not Dolls, Is Misplaced.

Mattel blatantly misrepresents *Sid & Marty Krofft*. The works compared in *Krofft* were "the most popular children's show on Saturday morning television" and McDonald's children's commercials used on children's programming, *not* merely

[2] Mattel overstates Mr. Vilppu's opinions by taking his testimony out of context. Motion at 8-9. When he was asked about whether a three-dimensional work can "copy" a two-dimensional work, as cited by Mattel, a review of the questions surrounding that testimony makes clear that Mattel is using "copy" differently from Mr. Vilppu, who clarified that a photograph is always different from a three-dimensional statuette because of the unremarkable proposition that "one is flat, the other is round." Rutowski Decl. Ex. 3 Vilppu Depo. at 101:3-9. In fact, when asked more recently whether "a drawing can be substantially reflected in a three dimensional object," Mr. Vilppu testified "Maybe, yeah." Rutowski Decl. Ex. 5 Vilppu 12/15/10 p.m. Rough at 83:7-15. Similarly, Mattel's citation to testimony regarding the Mona Lisa was clearly not understood in the manner portrayed by Mattel now. It is again an unremarkable proposition that to "change[] the Mona Lisa to give her a big smile" would make the works "different" in some respect, but Mr. Vilppu acknowledges that he is not a "legal expert" and does not have an opinion on whether that would constitute infringement. Rutowski Decl. Ex. 3 Vilppu Depo. at 144:14-146:3.

the characters as Mattel implies by pasting into its brief unsubstantiated pictures that it purportedly found on a website. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1166-67 (9th Cir. 1977)("We have viewed representative samples of both the H.R. Putnstuf show and McDonaldland commercials."); Motion at 8. In fact, in *Sid & Marty Krofft* the Court *criticized* the defendants for "remov[ing] the characters from the setting" in conducting the intrinsic analysis. *Id*. at 1167.

In stark contrast, here Bryant did not produce a popular television show, but merely drew a few sketches, which leaves only the figures to compare. Moreover, unlike in *Sid & Marty Krofft*, in which the television series was a "fantasyland filled with diverse and fanciful characters in action" (*id.* at 1165), here the Ninth Circuit has already put bounds on the protectable expression of female plastic dolls. For the sculpts, the standard is "virtually identical." *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915 (9th Cir. 2010). And for the sketches, the test is whether they are "substantially similar" beyond the fact that "the dolls and sketches depict young, stylish girls with big heads and an attitude." *Id*. at 917.

## III. MATTEL'S ATTEMPTS TO CLAIM VILPPU IS AN EXPERT IN SOMETHING HE IS NOT AND THEN ARGUE HE IS NOT QUALIFIED MUST FAIL.

Mattel seeks to argue that Vilppu lacks qualification as a doll designer and legal expert— two areas in which Vilppu *does not* claim expertise and that are completely inconsequential to his proffered opinions. Vilppu has more than sufficient qualifications to offer the opinions in his report and testimony.

Mattel first claims that Vilppu is not qualified to opine on the quality of Carter Bryant's sketches. To make this argument, Mattel implies that Vilppu must be an expert in doll design. Vilppu indeed is not an expert in doll design and does not and has not claimed that he is. His expertise is in art – drawing in three dimensions for two dimensional works, animation and sculpture. He is not opining on doll design. He, as an artist, is evaluating the artistic quality of Carter Bryant's

drawings. He is certainly qualified to conclude that they are not sufficiently detailed to permit a three-dimensional figure to be constructed from them. Mr. Vilppu testified that throughout his career he has been drawing drawings in multiple views and three dimensions and that he is keenly aware of the level of detail that is needed in a drawing to turn it into a three dimensional item. Rutowski Decl. Ex. 4 Vilppu 12/15/10 Rough a.m. 25:6-13 (testifying he could instruct somebody how to create a three-dimensional sculpture of a nonexistent person in a drawing). At the animation school, he teaches students how to create three-dimensional models on the computer that "you can rotate and turn around." *Id.* 66:3-67:9. He further testified that he teaches students how to draw in order to sculpt from their drawings, and that they have done sculpture under his tutelage. *Id.*; *see also id.* at 16:17-18:12 ("I teach people how to take and draw from the imagination three-dimensional figures and e able to turn them around and look at them from any angle"). Finally, he testified that he has been retained to do doll sculpts. Rutowski Decl. Ex. 3 Vilppu Depo. at 40:8-24, 384:11-386:13. There is no question he is qualified to opine as to the quality and detail of Carter Bryant's drawings.

Mattel's suggestion that Vilppu is not qualified to testify as to "expression" and "attitude" in the drawings and dolls simply ignores his vast prior experience. Mr. Vilppu teaches classes in expression – his resume shows a number of classes taught in head drawing and painting. Appendix A to Vilppu 2010 Report. He testified that he could draw any expression asked of him and that by virtue of his experience could convey personality through a series of drawings. Rutowski Decl. Ex. 4 Vilppu 12/15/10 Rough a.m. 58:24-59:21. He further testified that he has been trained in fashion drawing. *Id.* 11:7-12:6. As he notes in his report, he is aware of popular culture and popular trends. Vilppu 2010 Report at 7. It would be curious if an artist of Mr. Vilppu's stature and demand was not an expert in human expression and the conveyance of such expression in a drawing or sculpt.

Finally, in a last desperate attempt to find some reason to exclude Mr. Vilppu, Mattel argues that he is opining on legal issues and stating legal opinions about the scope of copyright protection. Mr. Vilppu is doing no such thing and has clearly testified that he is not a legal expert, is not applying any particular legal test and cannot answer questions or opine about copyright infringement. *See, e.g.*, Rutowski Decl. Ex. 3 Vilppu Depo. at 144:14-146:3. He makes no reference to copyright law or copyright terms of art, other than to rebut the terms "virtually identical" and "substantial similarity" as they are bandied about by Mr. Loetz.

Mr. Vilppu is without doubt qualified in his stated area of expertise, as is clear from the fact that Mattel's expert Loetz claims to derive his own expertise from studying with Mr. Vilppu. The fact Mr. Vilppu lacks expertise in areas beyond his proffered testimony is irrelevant and should have no bearing on the vast experience and guidance Mr. Vilppu can bring to the study of the Carter Bryant drawings as compared to the Bratz dolls.

**CONCLUSION**

For the foregoing reasons, MGA respectfully submits that Mattel's motion to exclude the opinions and reports of Glenn Vilppu must be denied in full.

Dated: December 20, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Thomas S. McConville*
Thomas S. McConville
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN