1   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
2   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building, 405 Howard Street
4   San Francisco, CA 94105
    Tel: (415) 773-5700/ Fax: (415) 773-5759
5
    WILLIAM A. MOLINSKI (State Bar No. 145186)
6   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
7   777 South Figueroa Street, Suite 3200
    Los Angeles, CA 90017
8   Tel: (213) 629-2020/Fax: (213) 612-2499

9   THOMAS S. McCONVILLE (State Bar No. 155905)
    tmcconville@orrick.com
10  ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza, Suite 1600
11  Irvine, CA 92614-2258
    Tel: (949) 567-6700/Fax: (949) 567-6710
12
13  PATRICIA L. GLASER (State Bar No. 056688)
    pglaser@glaserweil.com
14  GLASER, WEIL, FINK, JACOBS,
     HOWARD & SHAPIRO LLP
15  10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA 90067
16  Tel: (310) 553-3000/Fax: (310)556-2920

17  Attorneys for MGA Parties

18              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
19                 SOUTHERN DIVISION

20  CARTER BRYANT, an individual,      Case No. CV 04-9049-DOC (RNBx)
                                       Hon. David O. Carter
21           Plaintiff,
                                       **MGA PARTIES' OPPOSITION TO**
22       v.                            **MATTEL'S MOTION *IN LIMINE* TO**
                                       **EXCLUDE EVIDENCE NOT**
23  MATTEL, INC., a Delaware           **DISCLOSED IN DISCOVERY RE:**
    corporation,                       **"TEST" PROJECT FILED BY**
24                                     **MATTEL, INC.**
             Defendant.
25                                     **MATTEL MOTION *IN LIMINE* NO. 8**

26  AND CONSOLIDATED ACTIONS           Pretrial Conference: January 4, 2011
                                       Trial Date:    January 11, 2011
27                                     Judge: Hon. David O. Carter

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

MGA Entertainment, Inc., Isaac Larian and MGA HK Limited (collectively "the MGA Parties") oppose Mattel's Motion To Exclude Evidence Not Disclosed in Discovery Re: "Test" Project filed by Mattel, Inc. ("Mattel"), ("Motion", Dkt. No. 9365), Motion *in limine* No. 8.

## II.   BACKGROUND

Mattel's motion seeks to preclude MGA from "asserting, relying on, making any argument based on, or introducing evidence that Carter Bryant's work for MGA while still employed by Mattel was a 'test' project, 'tryout' or similar experimental engagement." (Motion, p. 4).  Mattel premises its argument on Federal Rules of Civil Procedure, Rules 26 and 37, asserting that since MGA denied certain discovery responses, and "thwarted" Mattel's efforts to learn more in discovery.  This is untrue, and the MGA Parties should not be prohibited from introducing relevant evidence.

Mattel knows, from discovery, that Bryant submitted sketches to MGA for the Prayer Angels project prior to departing from Mattel.  Mattel further knows, from discovery, that MGA neither requested nor used the Prayer Angels sketches which Bryant submitted.  Specifically, in its response to the special interrogatory propounded by Mattel, MGA stated that it does not contend that "it caused, had, requested, asked or solicited Bryant to perform a TEST PROJECT" as that term is defined in the interrogatory.  (*See*, Order Denying Mattel's Motion to Compel, p. 3, Dkt. No. 2557).  Furthermore, in its opposition to Mattel's Motion for Partial Summary Judgment, Dkt. No. 2784, at page 20, MGA reiterated this position and stated: "…MGA maintains that the sketches Bryant sent them were neither requested by or used by MGA in the Prayer Angels line…"

Mattel also knows, from discovery, that <u>Bryant</u> testified that <u>he</u> assumed that his Prayer Angel submissions were an informal tryout to see what he could do on

an assignment, similar to a project he had performed for Mattel prior to his employment, but MGA has consistently maintained that there was no informal try-out.

What Mattel's over-reaching motion attempts to do, however, is in effect to prevent any testimony by MGA as to its position regarding the submissions or by Bryant as to his assumptions regarding this period.  Mattel's motion mischaracterizes MGA's position on this issue and provides misleading excerpts from MGA's prior opposition to a motion for partial summary judgment.  The full text from MGA's opposition is as follows:

> Mattel also contends that Carter Bryant worked 'on a separate doll' for MGA and that 'MGA specifically paid Bryant for work performed and expenses that he incurred on behalf of MGA' while at Mattel.  (Mattel UF ¶¶ 56, 65.)  This is disputed.  Bryant testified that said Prayer Angels 'work' was an informal 'try-out' project for MGA – an accepted hiring practice in the industry; indeed, Bryant did a tryout project to gain employment at Mattel. (OF ¶ 56)  .  **In contrast, MGA maintains that the sketches Bryant sent them were neither requested by MGA or used by MGA in the Prayer Angels line.** (Id.) And the 'financial 'assistance' MGA gave Bryant when he submitted his invoice netted him a whopping **$162** in reimbursed expenses – hardly 'substantial.' (Id.)" (Dkt. No. 2784, p. 20) (Partial emphasis in original, part supplied).

Thus, MGA has consistently maintained there was no informal "try-out" arrangement.  The testimony of Paula Garcia and Samir Khare confirms that the sketches were neither requested by MGA nor used in the Prayer Angels line. (*See*, MGA Parties' Opposition to Mattel, Inc.'s [Corrected] Separate Statement Of Uncontested Facts And Conclusion of Law, Dkt. No. 2755, ¶¶ 56, 144).  Accordingly, there has been no failure or refusal to disclose evidence and MGA's position on this issue should not preclude it from providing evidence with respect to Mattel's claims that MGA was aiding and abetting Bryant's alleged breach of his duties to Mattel during the pertinent time period.

## III.   ARGUMENT

### A.   MGA'S DISCOVERY RESPONSES DO NOT PRECLUDE IT OR BRYANT FROM PROVIDING EVIDENCE AS TO BRYANT'S RELATIONSHIP WITH MGA PRIOR TO OCTOBER 4, 2000

In 2004, Bryant testified that he believed the sketches he provided to MGA for the Prayer Angels project were "sort of a tryout kind of project" and "kind of a test to see how well I would do." (Deposition of Carter Bryant, Vol. 1, 11/4/04, 178: 2-12.). Bryant further testified that he "assumed" the sketches he prepared for Prayer Angels were intended to see what he could do on an assignment, (*Id.*, Vol. 2, 11/05/04, 325: 12-18), just as he had done for Mattel prior to being employed by it. (*Id.*, at 325: 5-11).

As a result, in July 2007, Mattel served a Notice of Deposition pursuant to F.R.C.P., Rule 30(b)(6) seeking, among other topics, for an MGA designee to testify as to each and every "TEST PROJECT" (as defined) that MGA had requested, asked or solicited from any person from 1998 through 2004. MGA objected on numerous grounds and suggested that a contention interrogatory was the more appropriate means of obtaining the sought for information. (*See*, Order Denying Mattel's Motion to Compel ("September 25 Order"), p. 2, Dkt. No. 2557). Mattel moved to compel production of witnesses, which was denied on September 25, 2007, but Mattel was granted leave to serve a contention interrogatory regarding that topic.

Mattel ignored the limitations of the September 25 Order instead served a special interrogatory that requested the <u>identification</u> of each "test project" and the individuals involved from 1998 through 2004. Since the form of the interrogatory was not in compliance with the September 25 Order, MGA objected. In addition, though, MGA interpreted the interrogatory and responded as if the interrogatory had sought its contentions and stated: "MGA does not contend that it caused, had requested, asked or solicited Bryant to perform a TEST PROJECT." Inexplicably,

1    Mattel again moved to compel but in an Order dated March 11, 2008 (Dkt. No.
2    2557) that motion was denied.

3         With the foregoing as the back drop, Mattel filed the instant motion and
4    selectively quoted from MGA's opposition to a previous motion for partial
5    summary judgment so as to mislead the Court by claiming that MGA argued that
6    Bryant's work for MGA while still employed by Mattel was "an informal 'try-out'
7    project for MGA – an accepted industry hiring practice…" (Motion, p. 2).  Through
8    this calculated omission, Mattel seeks to convince the Court that MGA has taken
9    inconsistent positions in the past and thus a broad *in limine* order, in effect
10   preclusionary sanctions under F.R.C.P., Rule 37(b)(2)(A)(ii), is warranted.

11        As noted above, MGA has not taken inconsistent positions on this issue.
12   Accordingly, there has been no failure or refusal to disclose evidence and MGA's
13   position on this issue should not preclude it from providing evidence with respect to
14   Mattel's claims that MGA was aiding and abetting Bryant's alleged breach of his
15   duties to Mattel during the pertinent time period.

16        **B.    EVIDENCE AS TO MGA'S AND BRYANT'S**
17             **UNDERSTANDING OF THEIR RELATIONSHIP PRIOR TO**
                **OCTOBER 4, 2000 IS PROBATIVE OF MGA'S DEFENSES TO**
18             **MATTEL'S CLAIMS**

19        The evidence as to the relationship, or lack thereof, between the MGA Parties
20   and Bryant from September, 2000 to October 4, 2000 is relevant to a number of
21   issues in this matter.  Despite the two views of the circumstances surrounding
22   Bryant's preparation of the Prayer Angels sketches, the common thread for both the
23   MGA Parties and Bryant is that Bryant had no employment or independent
24   contractor relationship with MGA until he signed his agreement on October 4,
25   2000.  Thus, to the extent Mattel seeks to prove otherwise, the MGA Parties should
26   be allowed to introduce evidence as to Bryant's state of mind and assumptions as
27   well as MGA's position.  The evidence which the MGA Parties would seek to use
28   at trial goes to the credibility of the witnesses and corroborates the MGA Parties'

- 4 -

assertion that there was no relationship, informal or otherwise, prior to the agreement in October.  The MGA Parties should not be foreclosed from introducing related evidence because (1) it has not taken inconsistent positions, and (2) did not abuse the discovery process.

Moreover, as noted above, the evidence further goes to the defense of Mattel's aiding and abetting claims.  It is undisputed that the MGA Parties were unaware of the contents of any "confidentiality agreement" Bryant had with Mattel during the period from September 2000 to October 4, 2000.  Bryant was not an employee of MGA, and he was not asked to perform any informal projects and his sketches were not requested or used.  Nonetheless, testimony of <u>Bryant</u> as to what <u>he</u> assumed his sketches to be is relevant as to his state of mind, and the lack of any informed understanding between Bryant and the MGA Parties at the time he submitted the Prayer Angel sketches.  MGA took no action to "assist" or "abet" any alleged breach by Bryant of his alleged duties to Mattel.   It is essential that the trier of fact consider and weigh this testimony in order to consider Mattel's claims and MGA's defenses herein.

## IV.    <u>CONCLUSION</u>

For reasons set forth above, MGA respectfully requests that the Court deny Mattel's Motion *in limine* No. 8.


Dated:    December 20, 2010    ORRICK, HERRINGTON & SUTCLIFFE, LLP


By: */s/ Thomas S. McConville*
Thomas S. McConville
Attorneys for MGA Parties