ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel. (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

PATRICIA L. GLASER (State Bar Bo. 056688)
pglaser@glaserweil.com
GLASER, WEIL, FINK, JACOBS, HOWARD &
SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Tel: (310) 553-3000/Fax: (310) 556-2920

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with: CV 04-9059, CV 05-2727<br><br>**MGA'S OPPOSITION TO MATTEL'S MOTION IN LIMINE NO. 5**<br><br>Trial Date: January 11, 2010<br>The Hon. Judge David O. Carter |

## INTRODUCTION

In its MIL No. 5, Mattel seeks five forms of relief: (i) an order excluding any reference to the Equitable Orders and the reversal thereof; (ii) an order precluding any theory of damages based upon the Equitable Orders, including any theory of such harm underlying a setoff defense; (iii) Mattel's concealment of evidence that resulted in the Equitable Orders; (iv) Mattel's obstruction of justice inducing the Equitable Orders; and (v) any discussion of the past or future adverse consequences of the lawsuit or a verdict adverse to Defendants.

To a large degree, Mattel's MIL No. 5 is a re-hash of its summary judgment motion on MGA's Counterclaims-in-Reply and should be denied for the same reasons as set forth in MGA's opposition to that motion.

To the extent that it is not a re-hash of the MSJ on the CCIR, Mattel's MIL No. 5 should be denied. As to points (i) and (ii), the wrongful injunction theory is part of MGA's setoff affirmative defense and must be permitted as such. Excluding wrongful injunction as a basis for MGA's setoff defense would be legal error and highly prejudicial to MGA's defense.

As to points (iii) and (iv), there are two categories of evidence relevant to MGA's concealment and obstruction allegations in this context. Mattel concealed evidence relevant to its statute of limitations defense. Mattel also concealed evidence relevant to its own unlawful conduct directly pertinent to MGA's affirmative claims, as well as the statute of limitations and unclean hands defenses. As Mattel has repeatedly argued, evidence of concealment shows knowledge of wrongdoing; Mattel's desire to hide this highly relevant evidence demonstrates the probative value of the evidence to the jury and Mattel's own knowledge that its conduct was unlawful and its claims were barred. The standard is no different for Mattel than it is for MGA. The concealment and obstruction allegations need not be part of the wrongful injunction aspect of the setoff defense because the legal basis for that defense is simple: there was an injunction, and it was reversed. No

element of bad faith is required. If the Court decides, however, that an element of bad faith is required, then obviously Mattel's concealment of evidence to procure the Equitable Orders is relevant to the setoff defense as well. And the destruction, suppression and concealment of evidence related to the Equitable Orders would satisfy the sham litigation standard in all events.

Finally, Mattel's argument that MGA cannot argue against the impact of an adverse verdict cannot be credited. The reduction of competition is directly pertinent to the jury's understanding of nearly every claim in this case. The jury is permitted to and should consider the public interest in competition, and particularly the social value of having alternative formulations of fashion dolls available to the consuming public.[1] Competition is relevant to MGA's claims, to Mattel's tort claims, and even to Mattel's copyright claim—where the jury's understanding of how to apply the infringement test will be informed by the choice between property (expression) and competition (ideas). The order sought by Mattel to exclude any mention of such matters is unworkable and wholly inappropriate.

## ARGUMENT

**I. THE ATTACK ON MGA'S COUNTERCLAIMS-IN-REPLY SHOULD BE DENIED FOR THE SAME REASONS AS MATTEL'S MSJ ON THOSE CLAIMS.**

To the extent Mattel's motion seeks to re-hash arguments made in the MSJ on MGA's CCIR, it should be denied for the reasons set forth in MGA's opposition thereto and discussed at the hearing on that motion.

---

[1] MGA agrees that there is no claim for emotional distress damages in the case, but the impact the lawsuit has had on Isaac Larian and his family will be pertinent to any claim for punitive damages in the unlikely event such a claim is ever submitted to the jury. It is also important for the jury to hear, in response to Mattel's vilification of Isaac Larian, that he is indeed an ordinary human being.

## II. THE MOTION TO EXCLUDE A SETOFF DEFENSE BASED ON A REVERSED INJUNCTION THEORY MUST BE DENIED.

### A. The Damage To MGA From A Reversed Injunction Can Be Considered As Part Of The Setoff Defense.

In *Dornan v. Sheet Metal Works' Int'l*, 810 F. Supp. 856 (E.D. Mich. 1992), the court expressly held that the harm from a reversed injunction is available as part of a setoff defense. Mattel does not even discuss this case. In fact, Mattel does not discuss the setoff defense *at all* in its brief. While it asks the Court for an order precluding MGA from pursuing the harm from the reversed injunction as part of the setoff defense, but cites absolutely no authority in support of that position and discusses it not one bit except for throwing it into the notice of motion.

Mattel's principal argument against an affirmative claim for wrongful injunction was that there could be no such claim without sham litigation consistent with the *Noerr-Pennington* doctrine. But Mattel cites no case applying this reasoning to the setoff defense, and the Ninth Circuit has expressly rejected the notion that a theory of wrongful injunction depends upon a showing of sham litigation. *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032 (9th Cir. 1994). Under *Nintendo*, the only criteria for demonstrating the wrongfulness of an injunction is that it was reversed—no bad faith need be proven. All that MGA need prove to establish its claim is that it was enjoined when it had the right all along to do what it was enjoined from doing. *Nintendo of Am., Inc.*, 16 F.3d at 1036 (a party is wrongfully enjoined "when it turns out the party enjoined had the right all along to do what it was enjoined from doing"). Accordingly, the setoff defense premised upon wrongful injunction is proper without reference to any allegation to bad faith or sham litigation. Mattel does not even discuss this case.

The court in *Dornan* also rejected the arguments made by Mattel here. The opinion noted that there is a long tradition in common law for wrongful permanent injunction claims which do not depend on the existence of a bond. The Supreme

Court long ago found that such an action was viable. *See Arkadelphia Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919).

In *Arkadelphia Co.*, 249 U.S. at 145, the Supreme Court found that a party was entitled to receive damages as a result of a wrongfully issued injunction even in the absence of a bond. In the words of the Supreme Court,

> a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of reversal to be restored by his adversary to that which he has lost thereby. This right, so well founded in equity, has been recognized in the practice of the courts of common law from an early period.

The Court reiterated this view in *Public Serv. Comm'n of Missouri v. Brashear Freight Lines, Inc.*, 312 U.S. 621, 629 (1941), when it found that it has long been settled that "damages sustained by parties injured because of an injunctive restraint ultimately determined to have been improperly granted" may be awarded. *See also Mitchell v. Riegal Textile,* 259 F.2d 954, 955 n. 3 (D.C. Cir. 1954) (noting that on remand the district court in *Brashear Freight Lines, Inc.* 41 F. Supp. 952 (D. Mo. 1941), assessed damages in excess of the bond); *Atlanta Journal and Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287-89 (11th Cir. 2006) (affirming order of restitution for harm caused by injunction); *Maryland Dep't of Human Resources v. U.S. Dep't of Agriculture*, 976 F.2d 1462, 1482-83 (4th Cir. 1992) (reversing injunction and directing court to allow consideration of damages incurred as a result of injunction although no bond was granted).

No Supreme Court precedent has overruled *Arkadelphia* and *Brashear*. *Dornan* distinguished, and rightly so, *W.R. Grace & Co. v. Local 759*, 461 U.S. 757 (1983). First, the *Dornan* court noted that the party claiming damages had actually sought the injunction in *Grace*, which is of course not the case here. Second, the company there had expressly agreed to accept the losses from the injunction—also certainly not the case here. 810 F. Supp. at 858. In all events, nothing in *Grace* purported to overrule *Arkadelphia* and *Brashear* and they control. *See Agostini v.*

*Felton*, 521 U.S. 203, 237 (1997) ("[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (citation and internal quotes omitted)).

      The injunctions remained substantially in effect throughout 2009. The recall provisions were not stayed until the Ninth Circuit stayed them on December 9, which meant that everyone in the industry knew for all of 2009 that they would have to give back any product right after the holidays in 2009—a situation that by Mattel's design would disincentivize sales. Additionally, the Court's April 27, 2009 Stay Order (Dkt. 5273) provided a stay only in order to sell the previously designed 2009 lines of product until the recall took effect. The stay permitted no new lines of product to be manufactured and sold prior to the recall. This resulted in keeping MGA out of the market with any new Bratz product until October 10, 2010, when it engaged in a complete re-launch of the brand. The harm to the brand from being out of a fickle market with high turnover of the population for such a lengthy period of time has been enormous.

      The Court can instruct the jury as follows in order to address this issue evenhandedly for both parties:

> In an earlier phase of this litigation, on December 3, 2008 another judge entered an injunction at Mattel's request prohibiting MGA from selling Bratz after 2009, from developing any new Bratz dolls during 2009, and requiring MGA to recall all Bratz products still on store shelves in January 2010. That injunction order was stayed by the court of appeal on December 9, 2009 and was later reversed and vacated. MGA asserts that the later-reversed injunction caused MGA damages while it was still in effect.
>
> If you find that MGA has proven by a preponderance of the evidence that it was damaged by the reversed injunction while it was still in effect and has made a reasonable calculation of the amount of such damages, you may consider such damages caused by the reversed injunction as part of MGA's setoff defense.

1  MGA's damages expert has made a calculation attributing $249M in
2  damages to the wrongful injunction aspect of the setoff defense.  There is
3  considerable evidence of lost sales, diminution in brand value of Bratz, disruption
4  of numerous licensing and business relationships, ancillary litigation that MGA had
5  to defend, and other harm caused to MGA by the later-reversed equitable orders.
6       If the Court determines for some reason that an element of bad faith is
7  required to meet the elements of setoff based upon a reversed-injunction, then the
8  evidence of Mattel's destruction, concealment and suppression of evidence will
9  support that additional element.  In all events, Mattel's efforts to conceal and
10 destroy the evidence pertinent to the activities of its Market Intelligence Group
11 reflects Mattel's knowledge of their wrongdoing.  Mattel's effort to alter, destroy
12 and suppress evidence related to the statute of limitations defense is directly
13 pertinent to that defense because it illuminates the tactical nature of Mattel's
14 decision to delay filing suit against MGA.

### III. MATTEL CANNOT PRECLUDE MGA FROM INTRODUCING EVIDENCE AND ARGUMENT REGARDING THE ANTICOMPETITIVE EFFECT OF REMOVING BRATZ FROM THE MARKET.

18      Mattel wishes to preclude MGA from arguing that past or future
19 consequences of the litigation would include removal of Bratz from the market and
20 would be anticompetitive and would harm consumer welfare.  In other words,
21 Mattel wants to preclude MGA from introducing any evidence in support of its
22 defenses and affirmative claims.  In any intellectual property case, but certainly one
23 with unclean hands defenses and unfair competition claims on the other side, the
24 argument is always made that defining something as property precludes
25 competition.  Copyright is a limited form of monopoly.  Of course MGA is
26 permitted to argue that the scope of the monopoly should not be unduly expanded
27 to the point of excluding lawful and fair competition.
28

MGA'S OPP. TO MATTEL'S MOTION IN LIMINE NO. 5
CV-04-9049 DOC (RNBx)

## CONCLUSION

For the foregoing reasons, Mattel's MIL No. 5 should be denied.

Dated: December 20, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Annette L. Hurst
      Annette L. Hurst
      Attorneys for MGA Parties