ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>           Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-09049 DOC (RNBx)<br>Consolidated with:<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>**DECLARATION OF MARK JOHNSON**<br><br>Trial Date: January 11, 2011<br>Dept: Courtroom 9D<br>Judge:  Hon. David O. Carter |

I, Mark Johnson, declare as follows:

1.      I am currently the Director of Forensic Arts and Animation for Litigation Media Group, LLC, 96 North Third Street, Suite 500, San Jose, California 95112.

2.      I received my Bachelor of Science degree from Kansas State University in 1975 and my Juris Doctor degree from the University of Kansas in 1978.

3.      My full time employment is devoted to the preparation of forensic exhibits and demonstrative evidence for use at trial, mediation and settlement conferences. As part of that work we often are called upon to create various three-dimensional computer models and surfaces. We also often receive various computer-aided design files and three-dimensional project files from other sources that we are asked to evaluate, assess and manipulate in connection with our work.

4.      I have personally supervised acquisition of three-dimensional content at various scales, including full scene acquisition using three-dimensional terrestrial laser scanners, full-body and partial anatomical scans using both laser and optical scanners, and small object scanning using both laser and optical scanning services.

5.      I have reviewed the "Expert Report of Frank Keiser" and have examined a number of the three-dimensional files he generated in this case.

These files are formatted as STL files, a stereolithography file format commonly used for rapid prototyping and computer-aided manufacturing. STL files present inherent limitations with respect to three-dimensional visualization, as the format produces a raw unstructured triangulated surface without any representation of color, texture or other surface qualities of the object being depicted.

6.     Furthermore, by its design, the scanner used by Mr. Keiser is not capable of acquiring surface color, texture or any other surface qualities. Thus, both the three-dimensional scanner and the file format being used for the computer models in question are inherently limited from reproducing important visual information for the objects being scanned. As a result, all of the computer visualizations generated from Mr. Keiser's work will appear to be of the same material and to have the same surface qualities because his system does not incorporate surface texture, coloration, or other material qualities.

7.     Moreover, Mr. Keiser's STL files are of a resolution lower than would be required to faithfully reproduce many of the surface details of the sculpts in this case.

8.     The fidelity of three-dimensional computer models is dependent upon the resolution of the actual scans and then the resolution of the CAD files generated from the original point clouds. Mr. Keiser does not provide

sufficient information in his report to be able to determine the true resolution of his primary scans.  Instead, he merely states, "On objects such as the ones I scanned in this case, I use 250 x 200 mm measurement volume to pick up detail." (*See* Keiser Report at 2). Unfortunately, Mr. Keiser does not specify the measuring distance used or the resulting point distance for his final scans, which would allow me to determine the true resolution of his primary point clouds. Attached hereto as Exhibit A is the user manual for the type of scanner Mr. Keiser used to generate the models he prepared for his report. Pages 7-9 of this manual provide a table to be able to calculate actual resolution and without the measuring distance or a statement of the resulting point distance it is impossible for me to determining the actual resolution of the original scans.

9.    Attached hereto as Exhibit B is a comparison of the level of detail found in an STL file of a three-dimensional scan of a physical model published in a brochure from the manufacturer of Mr. Keiser's scanner with a comparable area of one of the models scanned by Mr. Keiser. As is obvious from even a casual inspection, Mr. Keiser's three-dimensional models use a point distance resolution that is far lower than the comparative mesh. I do not know whether the low resolution of the STL files is due to the resolution of the primary scans or due to the resolution generated during the conversion process. However, it is clear that the mesh detail of the STL files I was

provided do not faithfully replicate many surface details of the objects in question.

10. The significance of Mr. Keiser's lower resolution is quite evident when viewing a side-by-side comparison of one of his STL files and a photograph of the corresponding object. Attached hereto as Exhibit C is a comparison of Mr. Keiser's scan of Exhibit 1136, a sculpt, compared with a photograph of Exhibit 1136.

11. The system used by Mr. Keiser is capable of much higher resolution than was generated here. In fact, the specific scanner Mr. Keiser used has been operated by archeologists and museums to obtain high-detailed surface scans for archeological artifacts and ornate sculpture. Nevertheless, in spite of its capabilities to record detailed surface topology, the system itself is not designed for and cannot acquire many of the other surface attributes that the prototype object has that do greatly affect its visual appearance, such as diffuse color or specular and translucency values.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Jose on the 23rd day of December, 2010.

Mark Johnson