QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de
Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OBJECTIONS TO DISCOVERY ORDER # 106 PERTAINING TO ZAPF DEPOSITION SCHEDULED FOR DECEMBER 30, 2010**<br><br>Date:           TBD<br>Time:          TBD<br>Place:         Courtroom 9D<br><br>**Phase 2**<br>Discovery Cut-off:    October 4, 2010<br>Pre-trial Conference: January 4, 2011<br>Trial Date:               January 11, 2011 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a time and on a date to be determined by the Court, in the Courtroom of The Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, California 92701, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule Phase 2 Discovery Matter Order No. 106, dated December 28, 2010. This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u> 72(a) on the grounds that the Discovery Master's Order, which permits the attendance of a foreign governmental official at the December 30, 2010 deposition of Zapf Creation AG ("Zapf"), is contrary to prior rulings of this Court and is contrary to law. Mattel seeks an Order overruling Discovery Matter Order No. 106 and denying Zapf's request that a non-party German government observer attend its deposition.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and any matters of which the Court may take judicial notice.

**Statement of Compliance**

Lead counsel met and conferred on the underlying motion on December 21, 2010 and at times thereafter.

DATED: December 28, 2010              QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP


                                      By /s/ Michael T. Zeller
                                         Michael T. Zeller
                                         Attorneys for Mattel, Inc. and Mattel de
                                         Mexico, S.A. de C.V.

**Preliminary Statement**

At the MGA Parties' insistence, this Court has barred Mattel from sharing the transcripts of depositions with Mexican governmental authorities on the grounds that such sharing of information is inconsistent with the Protective Order. This is even though the testimony from those depositions is directly relevant to on-going, parallel criminal proceedings in Mexico. The MGA Parties now flout that ruling by demanding, through the Larian-owned and Larian-controlled Zapf Creation AG, that a German government official be actually present for its Court-ordered deposition that is currently scheduled for Thursday, December 30, 2010. It is undisputed that MGA and Larian solicited this involvement by a foreign official. It is also undisputed that German law does not and cannot govern discovery in this case. Not only have MGA, Larian and Zapf already apparently violated the Protective Order by soliciting the German government's involvement in the first instance, but giving the German government access to testimony in this case would be directly violative of the Protective Order. Among other things, the actions of MGA, Larian and Zapf unquestionably are designed to gin up new, foreign proceedings by soliciting the German government's involvement.[1] Furthermore, black letter law unrefuted by Zapf establishes that non-parties are not permitted to attend depositions.

Despite this, in Order No. 106, the Discovery Master granted Zapf's request that a German government official be permitted to attend the deposition. No authority was cited in support, and the contrary law was not discussed. Instead, the sole basis of this decision was that the German courts ostensibly would afford an

---

[1] As the Court is aware, Larian's violations of the Protective Order are now legion. They range from his circulation of internal Mattel, AEO business documents to fellow MGA employees with instructions that they use the information for product costing comparison and other improper purposes to Larian's use of non-public information from the case to trade in Mattel securities for personal profiteering.

American official a similar courtesy and that comity therefore supported the request. Not even Zapf made this argument – and for good reason. There could be no such reciprocity as hypothesized by the Discovery Master because it is a criminal offense for attorneys to take depositions in Germany. The entire premise of the Discovery Master's ruling accordingly is not only is contrary to this Court's construction of the Protective Order and unprecedented in its decision to allow a foreign official to attend a deposition in a civil case, but indeed there obviously can be no reciprocity where, as here, Germany would not permit the deposition at all.

This Court should reject Zapf's insistence that a German official be allowed to attend the Zapf deposition.

## Statement of Facts

Zapf is an Isaac Larian-controlled entity that the Court has compelled to produce documents and to sit for deposition.[2] Zapf has information on two principal subjects. First, discovery has revealed that MGA, with Larian's knowledge and approval, has infiltrated Mattel's toy fair showrooms every year since at least as early as 2006 and even as recently as 2010. Zapf personnel, acting with MGA and Larian, directly participated in this misconduct at Nuremberg Toy Fair.[3] Second, Zapf does not deny that it displayed in its toy fair showrooms products that MGA has claimed were purported trade secrets. Zapf's disclosures of MGA unreleased

---

[2] Order Granting in Part and Denying in Part Mattel's *Ex Parte* Application for Order to Compel Discovery from Zapf Creation Re: Counterclaims In Reply, dated November 1, 2010, Dkt. No. 9027 at 3.

[3] See February 13, 2008 email from Angelika Sternberg, former MGA Germany marketing director, to seven MGA managers (including Isaac Larian) and four Zapf managers an email stating: "Two of our colleagues have been able to enter the booth of our competitor and wrote the attached report." [MGA2 3120922] Attached was a file named "Nuremberg TF 2008 Competitive Report.doc," which stated: "Report 'M' booth Nuremberg Toy Fair 2008," and described unreleased product and strategic information concerning Mattel's BARBIE, MY SCENE and HOT WHEELS lines, among others. [MGA2 3120923-24].

product information to retailers, the press and others is directly relevant to MGA's trade secret claim as well as to MGA's unclean hands defense to Mattel's claims.

On December 21, 2010, just days before the scheduled deposition, Zapf raised for the first time the prospect that a representative from the German Consul-General's office would attend its deposition. Zapf later admitted that it solicited the Consul-General's ostensible interest in these U.S. proceedings.[4] When Mattel inquired into the reason for this unusual request, Zapf wrote that it was "to confirm that Zapf does not violate German law."[5]

Mattel objected to the German official's presence in the deposition – including on the basis that this Court and U.S. law, not German law, governs discovery in this case – and Zapf raised the issue with the Discovery Master on December 23, 2010.[6] On December 28, 2010, the Discovery Master ruled that the German official may attend the deposition on certain conditions, basing his determination upon "principles of international comity."[7]

## Argument

### I. ZAPF'S DEMAND THAT A FOREIGN OFFICIAL ATTEND DEPOSITION IS CONTRARY TO THIS COURT'S RULINGS AND TO LAW

It is black letter law that civil depositions are not public events open to non-parties or the public. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) ("pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, and, in general,

---

[4] Email from Bruce Kuyper to Robert O'Brien, dated December 23, 2010 ("Zapf's counsel in Germany contacted the appropriate German authority for an opinion on guidance on complying with Mattel's subpoenas.").
[5] Email from N. Meyer to V. Trebicka, dated Tuesday, Dec. 21, 2010.
[6] Email from Bruce Kuyper to Robert O'Brien, dated December 23, 2010.
[7] Phase 2 Discovery Matter Order No. 106 ("Order No. 106"), dated December 28, 2010 at 1.

they are conducted in private as a matter of modern practice."); <u>Kimberlin v. Quinlan</u>, 145 F.R.D. 1, 2 (D.D.C. 1992) (holding that depositions are not open to the public and denying request for press attendance). Consistent with these principles, courts reject requests by non-parties, including government representatives, to attend depositions in civil litigation. For example, in <u>Melendres v. Arpaio</u>, 2009 WL 3489402 (D. Ariz. Oct. 28, 2009), the U.S. Department of Justice sought to be present at civil depositions based on "considerable public interest" in the case and the Department's parallel investigation into potential law enforcement misconduct. <u>Id.</u> at *2. The Court rejected the request. "[A]s a matter of general law and practice, the United States as a non-party to this lawsuit, has no legal right to be present while the deposition is being taken." <u>Id.</u> at *1. See also <u>Times Newspapers Ltd. (Of Great Britain) v. McDonnell Douglas Corp.</u>, 387 F. Supp. 189 (C.D. Cal. 1974) (rejecting press request to attend depositions in civil case and holding that depositions "are not a judicial trial, nor a part of a trial, but a proceeding preliminary to a trial, and neither the public nor representatives of the press have a right to be present at such taking."); 8 Wright & Miller, <u>Federal Practice and Procedure</u> § 2041 ("it has been held that neither the public nor representatives of the press have a right to be present at the taking of a deposition").

      Neither Zapf in its briefing nor the Discovery Master in his order cited any contrary authority. That alone should end the matter; there is simply no legal basis for Zapf's demand.

      This Court's prior rulings on the Protective Order also require rejection of Zapf's request. This Court has barred Mattel from sharing deposition transcripts with Mexican prosecutorial authorities. This is even though the testimony is directly relevant to on-going (not potential) litigation. And, as MGA itself has previously argued, "the existing Protective Order prevents use of Litigation

Materials and certainly prevents use of Confidential materials in proceedings in other jurisdictions."[8] MGA has further argued that "a party cannot use discovery for purposes unrelated to the underlying lawsuit" and that "a protective order is justified if the federal discovery rules are being exploited to feed evidence into another lawsuit."[9] Zapf, a Larian-owned and controlled entity, provides no explanation as to why these principles should not apply here. Indeed, Zapf concedes that disclosure of confidential information to the German government is inappropriate under the terms of the Protective Order when it argues that the observer could be excluded for portions of the deposition involving Mattel's confidential information.[10] Plainly, the same rule barring Mattel from sharing deposition testimony with foreign officials must be applied to the MGA Parties and their affiliates. That is all the more true given that the proceedings threatened here are not even yet on-going, but are potential proceedings brought in or by Germany.

Order No. 106 provides that the German consular observer must "state on the record his or her consent to abide by the terms of the confidentiality order in this action…."[11] But this attempt to bind the German government to the terms of the Protective Order is unsupported by authority and raises more troubling questions than it answers. It is unclear how the Court would enforce a decree that the German government representative cannot disclose or use confidential Mattel information. The representative may, for example, take the view after the deposition that German law obligates him or her to disclose or use the information from the deposition. Nor is it self-evident how this Court would have the power to enjoin proceedings brought in Germany by the German government, even if done in flagrant violation

---

[8] Motion for Protective Order Prohibiting Dissemination of Information Obtained in this Lawsuit, dated July 15, 2010, Dkt. No. 8288 at 5.
[9] Id.
[10] Email from Bruce Kuyper to Robert O'Brien, dated December 24, 2010.
[11] Order No. 106 at 1:6-7.

of the Protective Order. Indeed, the Discovery Master's invocation of comity to interject a German government official into a civil deposition threatens to create serious problems of conflicts between sovereigns. Exclusion of the observer is the only practicable solution to the issues implicated by the observer's presence at the deposition.[12]

Zapf's rationale for the German official's attendance also fails. It claims that the official will be there to ensure that Zapf complies with German law, but the official obviously has no right or authority to make rulings on German law in this case and intrude upon this Court's authority. In any event, German law is wholly inapplicable since foreign laws cannot serve to thwart or impede U.S. discovery proceedings. "It is well settled that [foreign discovery] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce

---

[12] Zapf has claimed that "Mattel has no standing to object to anyone attending the deposition at Zapf's request." Email from Bruce Kuyper to Robert O'Brien, dated December 23, 2010. In fact, because the Zapf deposition will inquire into MGA's and Zapf's taking of *Mattel* information, Mattel does have the right, under the Protective Order, to designate the deposition as "Confidential" and/or "Attorney's Eyes Only" under the Protective Order and exclude a non-party (such as the Consul-General's representative) from even seeing the transcript, let alone being actually present at the deposition. Stipulated Protective Order, dated January 4, 2005, Dkt. No. 54 in Case No. 2:04-cv-09059-DOC-RNB, at ¶ 3. Zapf actually conceded this: "if it were to occur that Mattel would be questioning the witness about information that it has designated as confidential under the protective order, Mattel could then exclude the observer". Email from Bruce Kuyper to Robert O'Brien, dated December 24, 2010. Moreover, whether the information at issue is confidential Mattel information or not, Mattel has a right to exclude a non-party from the deposition under the terms of the Protective Order. Protective Order at ¶ 3(c) ("If, during the course of deposition testimony, *any Party* or nonparty reasonably believes that the answer to a question will results in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given.") (emphasis added).

evidence even though the act of production may violate that statute." Societe Nationale Industrielle Aerospatiale v. U.S. District Court, 482 U.S. 522, 544 n. 29 (1987); see also Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1472, 1482-83 (9th Cir. 1992) (affirming civil contempt sanction and award of attorney's fees as discovery sanction under Rule 37(b) against Chinese corporation that argued Chinese secrecy laws purportedly justified its refusals to produce ordered discovery). This law is so clear that Zapf has conceded the point. As it wrote to the Discovery Master, "Mattel asserts that 'German law does not and cannot govern U.S. discovery.' We agree."[13] With Zapf having acknowledged that the German representative does not and cannot have any authority over the deposition, there is no justification for the representative's attendance at all.

Zapf in fact already has used inapposite German law to conceal and thwart Court-ordered discovery into MGA's conduct in infiltrating Mattel's showrooms. Just before a Court-ordered December 1 deadline for Zapf to produce documents, Zapf asserted that German data protection laws compelled it to search and produce only "2008-2010 emails, [and] only with heavy redaction"[14] – despite the Court's contrary ruling. Mattel responded that such limitations were not proper,[15] but Zapf nevertheless made only a belated and woefully inadequate production of documents on the evening of December 22, 2010. The sum total of this tardy production consists of fifteen documents from the truncated two-year period, and those documents are so heavily redacted that they are, in many cases, incomprehensible. For example, relying on German law, Zapf has redacted all names from every document, including all names of email authors and recipients, even where it is obvious that one of the email senders was Larian from his U.S. email address. Zapf

---

[13] Email from Bruce Kuyper to Robert O'Brien, dated December 24, 2010.
[14] Letter from Russ to Watson, dated November 29, 2010, p. 2.
[15] Email from V. Trebicka to N. Meyer, dated December 3, 2010.

has not denied that it intends to withhold information at the deposition on the same inapposite German law grounds; plainly, it wants the German government there to facilitate and endorse that obstructionism. That is improper and should not be permitted.

## II. THERE ARE NO APPLICABLE PRINCIPLES OF COMITY

Order No. 106 does not address the relevant law or the Protective Order, but is instead based solely on "principles of international comity."[16] Specifically, the Discovery Master stated, without citation to authority or evidence: "I find that the Consul-General or his or her diplomatic representative should be allowed to observe the deposition on the conditions stated above. I believe that the German Courts would, as a matter of comity, provide a similar courtesy to the Government of the United States under similar circumstances."[17] The fatal defect with that reasoning is that German law does not permit the taking of depositions by attorneys at all – so there is no comity to be had. "An American attorney who conducts a deposition in Germany without approval of German authorities engages in a task that belongs exclusively to German judges and possibly even commits a criminal act. It is not possible to label a deposition as a simple non-judicial investigation because the witness is placed under oath, and deposition testimony may be used under certain circumstances as evidence at trial." Jan W. Bolt & Joseph K. Wheatley, Private Rules for International Discovery in U.S. District Court: The U.S.-German Example, 11 UCLA J. INT'L L. & FOREIGN AFF. 1, 37 n. 87 (Spring 2006) (citing Strafgesetzbuch [StGB] [Penal Code] Nov. 13, 1998, BGBl. I, § 3322 (prohibiting unauthorized performance of an act which may only be performed by public officials) and Christof Böhmer, Spannungen im deutsch-amerikanischen Rechtsverkehr in Zivilsachen, 43 NJW 3049, 3054 (1990)). There are – and can be

---

[16] Order No. 106 at 1:11.
[17] Id. at 1:23-27.

– no "similar circumstances" in which German courts might permit a United States observer to monitor private deposition proceedings.

Furthermore, in relying on principles of comity and reciprocity, the Discovery Master assumes that the German government has some interest in the Zapf deposition, but nowhere has this been shown. Indeed, Zapf did not even raise issues of comity in its submissions to the Discovery Master on this subject, much less establish that the German government actually has its own interest in this deposition. To the contrary, Zapf has acknowledged it solicited the government's involvement and admits that "German law does not and cannot govern U.S. discovery."[18] Germany has no legitimate interest in the deposition. The Discovery Master's *sua sponte* reliance on inapplicable, unsupported claims of comity and reciprocity cannot substantiate his ruling.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court overrule Discovery Matter Order No. 106 and deny Zapf's request for a German government official to attend its deposition.

DATED: December 28, 2010     QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
  Michael T. Zeller
  Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

---

[18] Email from Bruce Kuyper to Robert O'Brien, dated December 24, 2010.