**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

- - - - - - -

CARTER BRYANT,                          )
                                        )
          Plaintiff,                    )
                                        )
      vs.                               ) No. SACV 04-9049-DOC
                                        )      Volume II
MATTEL, INC.,                           )
                                        )
          Defendant.                    )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Hearing/Motions

Santa Ana, California

Monday, December 20, 2010

Jane C.S. Rule, CSR 9316
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-7755

10-12-20 MattelV2

1    **APPEARANCES OF COUNSEL:**

2    FOR INTERVENOR DEFENDANT MGA ENTERTAINMENT, INC.:

3              ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  THOMAS S. MC CONVILLE
4                   Attorney at Law
               4 Park Plaza
5              Suite 1600
               Irvine, California 92614
6              (949) 567-6700

7              - AND -

8              ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  ANNETTE L. HURST
9                   WARRINGTON S. PARKER
                    Attorneys at Law
10             405 Howard Street
               San Francisco, California 94105
11             (415) 773-5700

12

13   FOR DEFENDANT MATTEL, INC.:

14             QUINN, EMANUEL, URQUHART, OLIVER & HEDGES
               By:  JOHN B. QUINN
15                  MICHAEL T. ZELLER
                    SUSAN ESTRICH
16                  BRENT DYLAN PROCTOR
                    SCOTT WATSON
17                  MICHAEL MOORE
                    Attorneys at Law
18             865 South Figueroa Street
               10th Floor
19             Los Angeles, California 90017-2543
               (213) 443-3000

20

21

22

23

24

25

SACV 04-9049-DOC - 12/20/2010 - Vol. II

3

1    APPEARANCES OF COUNSEL (Continued):

2

3    FOR COUNTER-DEFENDANT CARLOS GUSTAVO MACHADO GOMEZ:

4              SCHEPER, KIM & OVERLAND, LLP
               BY:  ALEXANDER H. COTE
5                  Attorney at Law
               601 West Fifth Street
6              12th Floor
               Los Angeles, California 90071
7              (213) 613-4660

8              - AND -

9              LAW OFFICES OF MARK E. OVERLAND
               BY:  MARK E. OVERLAND
10                 Attorney at Law
               100 Wilshire Boulevard
11             Suite 950
               Santa Monica, California 90401
12             (310) 459-2830

13

14   ALSO PRESENT:

15             PATRICIA GLASER, Attorney
               GLASER, WEIL, FINK, JACOBS
16             HOWARD & SHAPIRO, LLP
               10250 Constellation Boulevard
17             19th Floor
               Los Angeles, California 90067
18             (310) 282-6217

19

20

21

22

23

24

25

1                          **I N D E X**

2

3

4    MATTEL, INC.'S, MOTION FOR PARTIAL SUMMARY JUDGMENT ON MGA'S
     COUNTERCLAIMS-IN-REPLY
5
     COUNTER-DEFENDANT CARLOS GUSTAVO MACHADO GOMEZ'S MOTION FOR
6    ADDITIONAL TIME TO MOVE IN LIMINE TO EXCLUDE THE OPINIONS OF
     MICHAEL WAGNER
7
     MOTIONS IN LIMINE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **SANTA ANA, CALIFORNIA, MONDAY, DECEMBER 20, 2010**

2                              **VOLUME II**

3                             **(3:55 p.m.)**

4          THE COURT:  Okay.  Let me go on the record with

5   Ms. Glaser's firm and continue on with this matter that you

6   are involved in.

7          *(Interruption in the proceedings.)*

8          THE COURT:  We can proceed either way.

9          I have a couple more people I want to hear from

10  from MGA, in camera, in a few moments, and I want to hear

11  from the person who set up the firewall, in a sense.

12          MS. GLASER:  Your Honor, Mr. Baum is next door.

13          THE COURT:  Yeah, I'll come back to him.  That's

14  why I'm going to take the RICO right now.

15          And the question I have for either one of you is,

16  is there any solution short of you want Ms. Glaser to be

17  totally disqualified based upon the California Supreme Court

18  case Kirk, I know the position Mattel is going to take; they

19  want you disqualified, of course.  So I don't expect much

20  help from Mattel, but I'm going to ask them to set my

21  record.  And my question to you that you need to

22  thoughtfully consider is, is this an all-or-nothing

23  position, from your standpoint, is there some kind of

24  compromise that you believe is acceptable that would allow

25  you to assist as counsel and negate some of the problems

SACV 04-9049-DOC - 12/20/2010 - Vol. II

6

1    that's been raised in the Kirk decision.  So thoughtfully

2    think about that.  You may take an all-or-nothing position

3    on that also.  I am not encouraging that, but I want to set

4    a pretty good record for whatever I eventually do.

5              All right.  Then counsel on the RICO matter,

6    Mr. Quinn is present, Ms. Estrich is present, Ms. Glaser is

7    present for the time being, although I haven't decided the

8    disqualification or not, Mr. Parker is present.  Any other

9    parties that you would like present to argue this matter?

10             MS. GLASER:  No, your Honor.

11             THE COURT:  And Ms. Hurst, is she --

12             MS. GLASER:  She's next door, your Honor.  We can

13   proceed without her.

14             THE COURT:  Okay.

15             And Mr. Zeller and Mr. --

16             MR. QUINN:  He's also next door working with the

17   others.

18             THE COURT:  Okay.  Yeah, here's what happened.

19   Next door, I viewed four or five pictures of the outside of

20   Mattel facility.

21             MR. QUINN:  Only four or five?

22             THE COURT:  Only four or five.

23             I viewed, I forget, five, six, seven or eight of

24   the inside there.  They are extraordinary photographs.  I

25   told them they've got four.  I'll put that on the record.

 1    And you're lucky to have four, so if you want to continue on

 2    with the snowball effect, I'll leave that to you, but those

 3    are redundant, and unless you can point out something

 4    specific in each photograph, they are just pictures of the

 5    floor, okay?  But apparently I'm not getting through yet, so

 6    four; that's it.

 7              All right.  Now, on the RICO matter, Ms. Estrich?

 8              Well, actually it's -- I apologize.  It's the -- I

 9    think we should be starting with MGA, shouldn't we?

10              MR. PARKER:  I'm fine with that.

11              THE COURT:  Would you like to start?

12              MR. PARKER:  Yes.

13              THE COURT:  Please.

14              My apologies, Ms. Estrich.

15              MR. PARKER:  I'm going to, your Honor, organize my

16    argument in the same way that the briefs are organized, and

17    therefore, unless the Court wishes me to start with the RICO

18    argument, I was going to start with the trade secret

19    argument and then move seriatim through.

20              THE COURT:  Fine.

21              MR. PARKER:  Very good.

22              And I'm sorry, your Honor, I heard Mr. -- excuse

23    me, your Honor.  I believe Mr. Quinn said he wants to have

24    Mr. Zeller here, so --

25              THE COURT:  Certainly.

```
 1                MR. QUINN:  If we are going to address trade
 2     secrets, we need Mr. Zeller.
 3                THE COURT:  Certainly.
 4                MR. QUINN:  I thought this was RICO, but if we
 5     are --
 6                MR. PARKER:  I'll go get him.
 7                MR. QUINN:  I'll get him.
 8                MR. PARKER:  Okay.
 9                THE COURT:  Why don't you both go get him?
10                (Laughter.)
11                MS. HURST:  Your Honor, we were over there
12     agreeing to things.
13                THE COURT:  Well, I wouldn't want you to do that,
14     Ms. Hurst.  That would be shocking.  But in just a moment, I
15     could send you back there.  Apparently it's the RICO
16     argument, but Mr. Parker wants to start with the trade
17     secrets, which is fine.  That's his presentation, okay?
18                This is off the record.
19                (Discussion held off the record.)
20                MS. ESTRICH:  Your Honor, I should clarify.  This
21     is our motion.  I'm happy to allow Mr. Parker to go first,
22     if you'd prefer, but --
23                THE COURT:  No.  You are absolutely right.
24                MS. ESTRICH:  But I just wanted to make clear that
25     it's our motion.
```

1           THE COURT:  Yeah.

2           Mr. Parker, it really is -- the summary judgment

3    motion is brought by Mattel, and I think it's my mistake, so

4    I want to apologize to you.  Let's have Ms. Estrich go first

5    because she'd like you to have last argument.

6           MS. ESTRICH:  Absolutely.

7           *(Laughter.)*

8           THE COURT:  Thank you, Ms. Estrich, for clarifying

9    that.

10          MS. ESTRICH:  I just wanted to be clear.

11          THE COURT:  I appreciate it.

12          MS. ESTRICH:  I don't want to be accused of -- not

13   fair fight, but I will reserve some time for rebuttal; how

14   is that?

15          THE COURT:  There is no such thing.  Here's what

16   we're going to do:  Two arguments, just like in the past,

17   opening, rebuttal, and that's it.

18          MS. ESTRICH:  I should just add -- and that's fine

19   with us -- that Mr. Zeller is our expert on the trade

20   secrets statute of limitations.

21          THE COURT:  Well, let's get started on whatever

22   presentation you'd like to make.

23          MS. ESTRICH:  Okay.

24          THE COURT:  And then Mr. Parker, you are not

25   foreclosed.  If you want to go trade secret first and then

SACV 04-9049-DOC - 12/20/2010 - Vol. II

10

1    RICO, that's fine, okay?

2           All right.  Ms. Estrich, it's a pleasure to have

3    you again in my court.

4           MS. ESTRICH:  It's a pleasure to be here, your

5    Honor.

6           Susan Estrich for Mattel.  Thank you very much.

7           Your Honor, we've had much discussion over the

8    past few months about how the criminal standard for RICO has

9    so vastly expanded the definition of the civil RICO action

10   and, indeed, may be the tail leading the dog.  But at the

11   very least, RICO still requires that there be an enterprise,

12   that there be a common fraudulent purpose, that there be an

13   ongoing organization, that there be distinctiveness, that

14   there be continuity.  And I would like to focus today simply

15   on the chronology, because the RICO enterprise that MGA has

16   claimed here begins in 1992, when they say these toy fair

17   viewings began, and from 1992 until 2002, there is nobody

18   else in the enterprise but Mattel.

19          Now, an associated, in fact, enterprise is defined

20   by a statute as two or more persons, entities.  1992 to

21   2002, you only have Mattel.  In 2002, Quinn Emanuel was

22   hired, but there is no allegation that Quinn Emanuel does

23   anything wrong when it's hired in 2002.

24          So the first question, your Honor, is does hiring

25   a law firm to do proper legal work with no allegation of

1    wrongdoing turn a single entity, that is Mattel, into an

2    enterprise?  I would suggest to you, your Honor, and you

3    don't need me to go chapter and verse here, that hiring a

4    law firm, and there is authority similarly hiring an

5    advertising agency, does not make a single entity into an

6    enterprise.

7         Along comes Bain and Company, our next participant

8    in 2004.  Bain and Company's role in this enterprise is

9    limited to doing one report in the normal course of its

10   business as a management consulting firm.  It does one

11   report during a six-to-eight week period in 2004.  That's

12   it; in, out, gone for Bain.

13        Our next person or entity in this enterprise we

14   have is Quinn Emanuel that's done nothing wrong and is

15   functioning as a law firm.  We have Bain in and out on a

16   single management report.  No suggestion that they've

17   committed predicate acts, wrongdoing, nothing like that.  In

18   comes Rahimi who goes to two toy fairs in 2003 and 2004.

19   Now, she's then out as of 2004.

20        In 2005, the next year, you have the first

21   allegation that Quinn Emanuel did something wrong.  We would

22   argue, and it is detailed in our brief, that this allegation

23   is totally unsupported by evidence, but for purposes of my

24   chronology, it's 2005, it's counseling of a witness.  Quinn

25   Emanuel's role is limited in 2006 to representing --

1   counseling witnesses in 2005 and 2006, and one witness in

2   2010.  That's it for Quinn Emanuel.

3          Rahimi and Bain are both gone from this

4   enterprise, frankly, leaving no one until before Quinn

5   Emanuel is even alleged to have done anything that would

6   evidence impropriety, and it doesn't.

7          The final participant in this enterprise is the

8   Basham Law Firm whose role is limited to conferring with a

9   single witness in 2010.  If you look at it along a

10  continuity, it becomes clear that Mattel is by itself for

11  most of the time, Bain is there for three months.  How Bain

12  becomes a member of this enterprise, I can't explain.

13  Rahimi has got two visits to toy fairs in 2003 and '4, and

14  the Basham firm shows up once in 2010.

15         Now, RICO has been pushed, I agree.  It's been

16  pushed very far, but there are still some requirements for a

17  RICO enterprise in order to reflect the basic purpose of

18  RICO to be going at wrongdoers engaged in wrongdoing.  Other

19  than Mattel, none of these supposed enterprise members are,

20  of course, named as defendants.  Other than Mattel, none of

21  them are recused of doing any predicate acts at all.

22         As for common purpose, one of the basic

23  requirements of a RICO enterprise, at least you've got to

24  have a common purpose, and frankly, while the Ninth Circuit

25  hasn't addressed it, every district court in this circuit

Case 2:04-cv-09049-DOC-RNB   Document 9549   Filed 12/27/10   Page 13 of 23   Page ID #:285058
SACV 04-9049-DOC - 12/20/2010 - Vol. II

13

 1    has found that the common purpose has to be a fraudulent

 2    purpose, an unlawful purpose.  After all, if it didn't, your

 3    Honor, then we would have a statute RICO that, by MGA's

 4    definition, allows you to be -- a member of an enterprise

 5    without doing anything or even thinking anything or agreeing

 6    to anything.  So at the very least, we need a common purpose

 7    here.

 8            What is the common purpose between Bain, which

 9    does one report for regular pay, Quinn Emanuel, which does

10    its hourly legal work, Ms. Rahimi, who goes to two toy

11    fairs, and a law firm from Mexico that shows up once?  What

12    common unlawful purpose, what bad intent, what agreement

13    can be inferred from the disparate one-off hiring of a

14    variety -- two law firms and a couple independent

15    consultants to create a common purpose?  What can you do?

16            How do you describe this as a continuing unit when

17    from -- excuse me -- most of the time the continuing unit

18    has one entity:  Mattel?  And only because it hires a law

19    firm or, later, a Mexican law firm or asked Bain to do a

20    management consultant report do we have anything other than

21    Mattel doing whatever it is Mattel is doing on its own with

22    no fraudulent purpose, no sign of intent, no ongoing

23    organization, as the Court well knows.  The ongoing

24    organization of RICO, it isn't much, okay?  It doesn't

25    require a clear structure.  It's been done to make sure that

1   the Mexican Mafia and others can't come in and say, "Oh, no,

2   we don't have a board of directors."  But you still need

3   some kind of organization.

4           The idea is there ought to be a -- this is a unit.

5   There is some connection among its individual members.  Even

6   if all of them don't necessarily have to know each other,

7   they must at least share a common purpose to aid and

8   associate with this fraudulent enterprise; and yet, here you

9   have none of that.

10          I would have thought that to name someone in a

11  claim as a member of a racketeering enterprise as a

12  racketeer, you would have to show, I would have thought,

13  that they committed two predicate acts, even if you didn't

14  name them as a defendant, because the definition of RICO, if

15  you read it carefully, is that you align yourself and become

16  a member of an enterprise by committing predicate acts.  In

17  fact, the case law does not specifically address this.  It

18  doesn't say -- obviously, if you named someone as a member

19  of a RICO enterprise, you need your two predicate acts.

20          The case law frankly doesn't get into the

21  requirements in detail for unnamed RICO members who are

22  essential to the creation of the enterprise because they are

23  the second.  But at the very least, even if you don't have

24  to do anything or anything wrong, which is the position MGA

25  takes -- it doesn't allege that Bain committed any crimes,

1    it doesn't allege that we committed any crimes, it doesn't

2    allege the Basham firm -- at least you have to have a

3    fraudulent purpose.  You have to share in a common

4    fraudulent purpose.  And interestingly enough, when one of

5    MGA's own 30(b)(6) witness was asked at deposition, "Why

6    would Quinn Emanuel share in a common fraudulent purpose to

7    engage in unlawful conduct against Mattel?"  And their

8    witness says, "I have no idea."  There is no evidence here

9    from which to infer, much less find, the basic elements of a

10   RICO enterprise.

11        The other issue I want to address is RICO

12   standing, because injury, direct proximate injury, is

13   required by RICO in two senses, as the Court knows.  First,

14   it's the definition of standing.  You don't have standing to

15   raise a RICO claim if you don't have injury to a business or

16   property; and second, as the Court knows, it's an element of

17   the RICO claim.  You can't make a -- you are getting treble

18   damages.  You have to prove damages, and not only do you

19   have to prove damages, but "but for" is not enough as Hemi

20   and Anza -- Hemi Group and the other cases hold.

21        There can't be more direct victims.  You can't

22   have intervening causes.  If there is one thing that still

23   is strict in RICO, and it may be strict because it exists

24   really only on the civil side -- this is a civil standard --

25   it is the requirement of injury, direct injury from

1   predicate acts to business or property that gives you

2   standing.

3          Now, MGA, here, has asserted two kinds of injury,

4   and neither of them work.  Their first kind of injury, the

5   first category of injury, is they say they suffered a great

6   deal on account of the injunction:  The Bratz brand was

7   named worthless, they suffered in the market, they had

8   fights with licensees, et cetera, et cetera.  Well, the

9   problem with that argument is even if you credited it, it's

10  not a direct result of Mattel supposedly engaging in

11  wrongful conduct of getting trade secret brochures that

12  aren't trade secrets or catalogs, or the like.

13         The conduct directly responsible for MGA's harm,

14  if it suffered any, was Judge Larson's decision, based on

15  his examination of the dolls and the products and based on

16  his understanding of the legal standard and based on the

17  jury verdict, to issue an injunction.  Whatever Mattel's

18  misconduct, which MGA claims, was to let Judge Larson think

19  that we were good and they were bad, as if he was like one

20  of Santa's little elves who would then decide, you know,

21  "they are bad, they are good, I'll give them an injunction."

22  That's not the proximate cause of the injunction, much less

23  the harm that resulted from the injunction.

24         So if you look at Hemi Group and you look at Anza,

25  as the Court has, of course, repeatedly in recent months,

1    it's clear that even apart from the issues of

2    Noerr-Pennington and no damages for wrongful injunction and

3    the like, strictly in terms of RICO standing and proximate

4    cause, the injunction damages won't work.

5            Their other damage claim is predicated on the

6    report of their expert that somehow all the Mattel wrongful

7    conduct, considered together, caused damage to Mattel --

8    excuse me -- damage to MGA of, I believe, $560 million,

9    which happens to be exactly the same number that came up,

10   which -- for the damage from unfair competition.

11           The fact is that RICO is very clear that it's not

12   all wrongful conduct for which you get damages, you know --

13   a lot of wrong things in the world -- it's predicate acts.

14   And in all of these papers, as well as in its expert report,

15   MGA fails to show what are the predicate acts that cause the

16   particular damage of which you complain.  I mean, you have

17   114 supposed trade secrets of which 112 are public.  Where

18   is the damage from any predicate act?

19           And in fact, they keep pointing to this Malakowski

20   expert report, but the Malakowski expert report at no point

21   says, "Here are the RICO predicate acts I considered, and

22   here is the damage that was caused as a result."  MGA says,

23   "Well, even if some non-predicate acts were included in that

24   calculation, that would not mean that no predicate act

25   caused harm to MGA."  Well, it would not mean that, but it

Case 2:04-cv-09049-DOC-RNB   Document 9549   Filed 12/27/10   Page 18 of 23   Page ID #:285063
SACV 04-9049-DOC - 12/20/2010 - Vol. II

18

1    doesn't necessarily mean the opposite, either.

2           The burden is on MGA, both in the summary judgment

3    stage, both improving its standing, and proving that these

4    are, indeed, legitimate RICO claims, to go predicate act by

5    predicate act and at least make some showing as to how that

6    predicate act resulted -- excuse me -- in damages.

7           Now, why don't they do this?  Why can't they do

8    this?  And we would suggest that the reason is, quite

9    simply, the thrust of their RICO claim is not about direct

10   injury to them.  It's not about direct violations of any of

11   their rights.  What they are complaining about, essentially,

12   is that Mattel gathered information from a whole lot of toy

13   companies, which allowed it a competitive advantage in the

14   market against everybody, potentially including them.

15   That's Hemi Group, okay?  That's Mattel did something which

16   caused something else, which maybe hurt someone else, which

17   if we have known, we could stop.  You cannot bring a RICO

18   action based on harms done to third parties; it doesn't work

19   that way.

20          You cannot bring a RICO action and claim damage

21   based on the indirect effect upon you of harms done to third

22   parties.  That, again, is Hemi Group.  The basic -- the

23   reason Mr. Malakowski was having so much trouble is because

24   these claims don't fit and don't work as RICO claims.

25          When you finally -- I just want to spend a minute

1    because I want to leave time if there were trade secret and

2    other issues, but if you look at the predicate acts

3    themselves, the reason they can't prove damages, which is,

4    in a way, easier, is because going predicate act by

5    predicate act, there is nothing there.  Their wire fraud

6    claims never point to individual communications and say,

7    "This is how this was further in this scheme."  They don't

8    even define what exactly "this scheme" was.

9            Their obstruction claims -- obstruction -- their

10   obstruction claims are based almost entirely on what could

11   most charitably, from their perspective, be called discovery

12   misconduct; you know, "You didn't produce certain documents

13   fast enough."  The discovery master says, "Yes."  The

14   discovery master says, "No."  They've got everything.  You

15   know, "Mr. Eckert destroyed e-mails."  "No."  Actually that

16   was adjudicated, too.

17           Documents as to Mr. Villasenor, there was no

18   showing of any document they didn't get, nor any reason they

19   should have gotten it in phase one.

20           I think the hardest question, at least from my

21   perspective, is not whether this claim stands up, but why a

22   claim which is sort of obviously a copycat of our RICO

23   claim, you know, we put a trade secret's claim out, they put

24   a trade secret's claim out; we put an obstruction claim out,

25   they put an obstruction claim out.  And the Court had asked

 1    me last time during summary judgment, "So if your RICO claim

 2    is okay, why isn't theirs?"  And let me spend one minute

 3    simply explaining why.

 4            Our RICO claim named Carter Bryant an independent

 5    contractor, Isaac Larion the CEO, MGA, MGA Mexico,

 6    Mr. Machado, individuals who worked together over the course

 7    of years in a pattern of misconduct that involved stealing

 8    Mattel's trade secrets and confidential information,

 9    beginning with Bratz, using it against Mattel, rewarding

10    those exorbitantly who left Mattel to do MGA's bidding, and

11    then even to this day, we would argue engaging in a pattern

12    of obstruction and coverup in order to hide, conceal, and

13    ultimately we would argue why and withhold evidence to cover

14    up the very enterprise, which is part and parcel of the

15    organization of the enterprise.

16            So we had a group of distinct entities, not just

17    MGA for 10 years acting alone.  We had clear intent.  Every

18    one of the people I just named we charged with committing

19    two predicate acts, in addition to having the common

20    fraudulent purpose of aiding MGA in competing unlawfully

21    with Mattel.  We had distinctiveness.  We had acts.  We had,

22    in effect, a criminal pattern of wrongful conduct.  And with

23    all due respect to MGA's efforts here, they don't have any

24    of those things.  They don't have an enterprise that works.

25    They have one entity operating alone with an occasional

1    independent contractor, none of whom are accused of any

2    predicate acts or any wrongdoing.

3            And I would simply suggest to the Court, your

4    Honor, that however broadly RICO has been stretched, this

5    case -- or this complaint goes so much beyond the broadest

6    understanding that as with the argument this morning on

7    disqualification, MGA is asking the Court to go beyond where

8    anyone else has gone in finding an enterprise where you've

9    got only one entity who is accused of any predicate acts,

10   where you've got to best sporadic one-off assignments of

11   independent contractors and law firms, where you've got no

12   showing of direct damages.

13           We had our trade secrets stolen.  We had our idea

14   for Bratz stolen.  That's damage:  If you bye our claim,

15   that's damage.  And you know, it may be measured in the

16   billions or the hundreds of millions, but it's certainly

17   clear damages.  MGA has shown that.

18           Thank you, your Honor.

19           THE COURT:  Thank you.

20           All right.  There will be another round, so trade

21   secrets?

22           MR. ZELLER:  No, your Honor.  We'll stand on that

23   for now.

24           THE COURT:  Mr. Parker, any particular order you'd

25   like to proceed in?

1        MR. PARKER:  We'll go with RICO first.

2        THE COURT:  RICO first.

3        *(Live reporter switch with Deborah Parker.)*

4        *(Volume III is reported by Deborah Parker.)*

5                        -oOo-

1                              -oOo-

2                          **CERTIFICATE**

3

4         I hereby certify that pursuant to Section 753,

5    Title 28, United States Code, the foregoing is a true and

6    correct transcript of the stenographically reported

7    proceedings held in the above-entitled matter and that the

8    transcript page format is in conformance with the

9    regulations of the Judicial Conference of the United States.

10

11   Date:  December 27, 2010

12

13

14                      _____

                        JANE C.S. RULE, U.S. COURT REPORTER
15                      CSR NO. 9316

16

17

18

19

20

21

22

23

24

25