1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3          **SOUTHERN DIVISION AT SANTA ANA**

4       HONORABLE DAVID O. CARTER, JUDGE PRESIDING

5

6
CARTER BRYANT, an individual,        )
7                                    )
                PLAINTIFF,           )
8                                    )
            vs.                      ) CV NO. 04-9049-DOC
9                                    )
MATTEL, INC., a Delaware             )
10  corporation,                     )
                                     )
11              DEFENDANT.           )
    _____)
12  CONSOLIDATED WITH MATTEL, INC., vs.)
    BRYANT and MGA ENTERTAINMENT, INC. )
13  vs. MATTEL, INC. _____ )

14

15

16          REPORTER'S TRANSCRIPT OF PROCEEDINGS

17              SANTA ANA, CALIFORNIA

18          WEDNESDAY, DECEMBER 22, 2010

19                  8:02 P.M.

20

21          **DEBORAH D. PARKER, CSR 10342**
            **OFFICIAL COURT REPORTER**
22          **UNITED STATES DISTRICT COURT**
            **411 WEST FOURTH STREET**
23              **SUITE 1-053**
            **SANTA ANA, CALIFORNIA 92701**
24              **(714) 542-8409**
            **D.PARKER@IX.NETCOM.COM**

25

```
 1    APPEARANCES OF COUNSEL:

 2         FOR THE DEFENDANT, MATTEL, INC.:

 3                              JOHN QUINN
                                MICHAEL ZELLER
 4                              WILLIAM C. PRICE
                                SCOTT L. WATSON
 5                              JON COREY
                                QUINN EMANUEL URQUHART
 6                              865 SOUTH FIGUEROA STREET
                                10TH FLOOR
 7                              LOS ANGELES, CALIFORNIA 90017
                                (213) 443-3000
 8

 9         FOR THE INTERVENOR, MGA ENTERTAINMENT, INC.:

10                              ANNETTE L. HURST
                                ORRICK, HERRINGTON & SUTCLIFFE, LLP
11                              THE ORRICK BUILDING
                                405 HOWARD STREET
12                              SAN FRANCISCO, CALIFORNIA 94105
                                (415) 773-5740
13
                                THOMAS S. MCCONVILLE
14                              ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                4 PARK PLAZA
15                              SUITE 1600
                                IRVINE, CALIFORNIA 92614
16                              (949) 567-6700

17
           ALSO PRESENT:       JENNIFER L. KELLER
18                              KELLER RACKAUCKAS, LLP
                                18500 VON KARMAN AVENUE
19                              SUITE 560
                                IRVINE, CALIFORNIA 92612
20                              (949) 476-8700

21

22

23

24

25
```

```
 1          SANTA ANA, CALIFORNIA; WEDNESDAY, DECEMBER 22, 2010;

 2                          8:02 P.M.

 3                           -oOo-

 4          THE COURT:  We're on the record in the matter of

 5   Mattel versus MGA.

 6          Mr. Larian is here.  Ms. Keller is here.

 7   Ms. Hurst is here.  Mr. McConville is here.  Ms. Glaser is

 8   not here, and Ms. Pisoni is not present.  I noticed

 9   Mr. Nolan.

10          Present is Mr. Price, Mr. Quinn and Mr. Zeller, on

11   behalf of Mattel.

12          Let me start before I hand down the summary

13   judgment rulings this evening on the issue of the motion to

14   unseal the summary judgment filings.  I'm strongly inclined

15   to grant this, not because of MGA's interest as much as the

16   public's interest in knowing about the judicial process and

17   the basis for the court's decision.

18          The judiciary is a public institution and a

19   carefully reasoned precedent on the basis of a good record

20   is the engine, I think, of the judicial process.  But I

21   don't see the urgency of unsealing these documents, unless

22   the representation is that Ms. Pisoni is going to be lead

23   trial counsel for certain on this matter, and -- she's not

24   present.

25          So I know Mattel is opposed to unsealing these
```

1    records.  You believe it has information that might be

2    detrimental to Mattel, but --

3            Your thoughts, counsel.

4            MS. HURST:  Your Honor, Ms. Pisoni is not

5    permitted by the rules of professional conduct to become

6    counsel of record in the case, because she is a resident of

7    California who is not admitted to practice in the California

8    bar; and, therefore, cannot be a *pro hoc* admitted.

9            But, your Honor, we need Ms. Pisoni's assistance

10   for trial preparation, particularly, though not exclusively,

11   in light of the disqualification.  I can give you some

12   specific examples.

13           Your Honor, there are variety of documents claimed

14   to be trade secret documents that a person who works in the

15   toy industry has knowledge of and can assist us in

16   developing evidence as to why the information contained

17   therein is readily available.  We cannot do that by

18   ourselves.  We have been handicapped without access to our

19   client to share these records and be able to do this.  I

20   understand that's not an issue of public interest, per se.

21   But the court invited, I believe, argument on the private

22   interest aspects of it as well.

23           We need assistance from Ms. Pisoni in coordinating

24   our communications with the witnesses at MGA; being able to

25   advise them regarding -- let me give you an example:

1 Documents that we know are exhibits are going to be trial

2 exhibits, have the witness' names on them, because they had

3 prior exposure at Mattel; say they were a Mattel employee.

4 Now, Ms. Pisoni is not allowed to have access to

5 that. So everything we have to do, we have to go around

6 her. It's inefficient. It's ineffective. It deprives us

7 of effective relations with our client and our assistance of

8 our client in preparing the case for trial.

9 Your Honor, these things are now on Mattel's

10 exhibit list, okay? It's all on the parties' exhibit lists.

11 There's a lot of fat in there. There is no doubt about it.

12 But the expectation now is that all of this material is

13 going to become public, okay?

14 If there are specific trade secret documents that

15 the court -- that Mattel says we're going to need to seal

16 the courtroom when those come in, because they're still

17 trade secrets after all these years of disclosure, or

18 whatever, maybe the court will entertain that motion.

19 THE COURT: So far my record is, from what I've

20 seen, there is nothing in my view, at least, up to Paula

21 Garcia, subject to Mr. Zeller's well-reasoned arguments in a

22 few moments, that is of great significance to Mattel going

23 forward.

24 Now, in 2004 --

25 MS. HURST: Exactly.

```
 1              THE COURT:  -- there might have been significant
 2   documents.  I know arguments could be made.  But does
 3   attorneys' eyes only resolve that problem also?
 4              Ms. Pisoni certainly would be allowed to
 5   participate.  The issue really is Mr. Larian not having a
 6   competitive advantage at this point.  But in terms of
 7   preparation, why wouldn't this be an attorneys' eyes only --
 8              MS. HURST:  Well, your Honor, the current
 9   designation of attorneys' eyes only excludes in-house
10   counsel.
11              THE COURT:  Okay.  Ms. Pisoni was included in
12   that --
13              MS. HURST:  Then that solves your problem.
14              THE COURT:  -- Mr. Larian, would that solve your
15   problem?
16              MS. HURST:  That would solve the problem, your
17   Honor.
18              THE COURT:  Okay.  Let me hear from Mattel.
19              MR. QUINN:  Your Honor, the misuse of attorneys'
20   eyes only information is a very serious problem in this
21   case.  We've just had produced to us, on November 1st, a
22   document authored by Mr. Larian where he is circulating
23   within --
24              We have copies we can distribute.  I really would
25   ask the court to take a look at them.
```

1          THE COURT:  I will.

2          MR. QUINN:  -- circulating internally within

3   MGA --

4          Why don't you go ahead.  And to the other side.

5          THE COURT:  This gets better and better.

6          MS. HURST:  We have not seen this, Scott.  Come on

7   over here, first.

8          MR. QUINN:  This is Bates No. MGA 27442655.

9          Mr. Larian, circulating within MGA an attorneys'

10  eyes only document, telling people, and I quote:  *Read this*

11  *and see Mattel's cost for MyScene and compared to ours.*

12         And below that:  *Please read these very carefully.*

13  *You will learn a lot.  Attached are Mattel documents marked*

14  *attorneys' eyes attorney.*

15         MS. HURST:  Your Honor, this was a trial exhibit

16  at the phase one trial, and the date of this e-mail is

17  December 2008, six months later.

18         THE COURT:  Just a moment.  Did this come into

19  trial in phase one?

20         Was this a piece of evidence?

21         MR. QUINN:  I don't believe so, your Honor.

22         THE COURT:  Well, just a moment.  I love that

23  phrase.  It's kind of like the police officers are telling

24  me "To the best of my recollection."  It's not acceptable.

25         Was it or not?  Yes or no?

```
 1            MR. QUINN:  Your Honor, it was not introduced at

 2   trial.  It was not unsealed.

 3            MS. HURST:  It was -- I apologize.

 4            THE COURT:  We'll wait.  We'll find that out

 5   sometime this evening.

 6            So it was, and it wasn't.  That's where I'm left.

 7   Thank you.

 8            MR. QUINN:  Your Honor, I submit that MGA's

 9   argument has got it the other way around.  Instead of a

10   broad motion requesting everything be unsealed, if there are

11   specific things that they need, they should be asking that

12   those, specifically, be unsealed.

13            The problem they describe as a problem that they

14   need help from someone knowledgeable in the toy industry,

15   that's what experts are for.  They have experts.  The

16   protective order permits them to share with industry

17   experts.

18            By the way, their house counsel is not an industry

19   expert so -- we're very concerned about this wholesale

20   application.

21            THE COURT:  Tell me what you're protecting so far.

22   Because only up to Paula Garcia, remember, that's my

23   naiveness.  I agree that a broad-sweeping order when the

24   court doesn't know what's truly out there for the breadth of

25   your case may be entirely inappropriate.  But at least up to
```

9

1    this time the documents I have looked at are what I call

2    not-going-forward documents.

3            MR. QUINN:  Sure.  Correct, your Honor.

4            In our opposition to this motion, beginning at

5    page 7, we list specifically the trade secret information

6    which is in those papers.  And your Honor is correct that

7    none of that has come up yet in a review of any of these

8    witnesses, but they include highly confidential data,

9    including our inventory system, for example, and other

10   things that MGA has never challenged as being -- that our

11   claim that these are, in fact, trade secret.

12           As the record stands now, our claim that this

13   information that we identify in our opposition as trade

14   secret is unchallenged.

15           THE COURT:  Let me ask, if this eventually comes

16   into evidence --

17           MR. QUINN:  It's a problem.

18           THE COURT:  Just a moment.  It's kind of like

19   protecting a cooperating witness when we know the

20   cooperating witness is coming a month from now.

21           In other words, everybody is going to know the

22   identity and the real secret is how do we protect he or she,

23   so what we do is, we go 60 days in front and we tell law

24   enforcement to move them now so that counsel for the defense

25   can have access; right?

 1           So it's not a last-moment surprise.  So here this

 2      is, eventually, coming into evidence.  We're a month away.

 3           MR. QUINN:  Well, your Honor, I think, we have to

 4      look at specific things.  We shouldn't be looking at in

 5      wholesale fashion when, gosh, this court knows well the

 6      volume of information that was included in those summary

 7      judgment papers.  In terms of how that goes into the record

 8      when you're dealing with trade secrets, different courts

 9      have come up with creative ways of trying to make sure that

10      a claimant, because they brought a trade secrets case --

11           THE COURT:  Well, that's why I was suggesting

12      attorneys' eyes only and Ms. Pisoni only, without Mr. Larian

13      having access to it.  What you're really concerned about is

14      that MGA gain some type of competitive advantage and,

15      therefore, I understand that.  Competitors should not have

16      access right now, including Mr. Eckert.

17           But the end result is, this will become public in

18      a short period of time.  At least, public -- if not public,

19      certainly, Mr. Larian is going to know as these documents

20      come in what they are.

21           But my question is this:  In terms of preparation,

22      in that small time frame, you know, before these documents

23      come in, I would like to have counsel for both sides be

24      prepared.

25           MR. QUINN:  Yes, your Honor.  And that's why I

1    submit that the protective order that was stipulated to and

2    that this court entered addresses that by saying:  *Counsel*

3    *can share this information with experts, with consultants.*

4          THE COURT:  Here is the new development, though.

5    The new development is Orrick's concern that they are not

6    having sufficient communication with Mr. Larian and

7    Ms. Pisoni.

8          MS. HURST:  That's part of it.

9          THE COURT:  But let me say that that might be

10   self-induced.  Let me repeat to you what I started to

11   informally say before I came out; and that is, when clients

12   privately retain counsel, that's a much different situation,

13   so this is somewhat of a self-induced situation for

14   Mr. Larian.

15         MS. HURST:  I urge you not to go there, your

16   Honor, because we're going to need to go in camera and have

17   a lengthy discussion.

18         THE COURT:  That's why we're here tonight.

19         MS. HURST:  It's not a self-induced situation.  I

20   don't want to go any further on it at this point in time,

21   your Honor.

22         If I may, this is the biggest stall in this case.

23   We have been trying to address this issue for months and

24   months and months.  Everybody knows that in a short period

25   of time this stuff is coming into a public record.

```
 1              THE COURT:  I think in light of the summary
 2    judgment motion that I could take this up at a later time,
 3    because a summary judgment motion may resolve some of these
 4    issues.
 5              MS. HURST:  Your Honor, we really need to get this
 6    resolved, our trial -- for purposes of our trial
 7    preparation.
 8              I mean, look, this document that Mr. Quinn is
 9    making a big deal about, this is a document where Mattel
10    went and met with Target and their president said, *We want*
11    *you to give us unfair benefits.*
12              MR. QUINN:  Wait a second.  Wait a second, your
13    Honor.
14              MS. HURST:  *We want you to do it bigger than*
15    *others.  Larger playing field.  Give us*, quote, *unfair*
16    *benefits.*
17              Quote:  *Place unfair butts on us for unfair*
18    *benefits.*
19              THE COURT:  Now, thank you very much.
20              MS. HURST:  This document is coming into evidence
21    as part of MGA's unfair competition case.
22              THE COURT:  Thank you.  Now, it's Mr. Quinn's
23    turn.
24              MR. QUINN:  Wait a second.
25              This is an attorneys' eyes only document that
```

```
 1    Mr. Larian circulated internally saying, Take a look at this
 2    cost data.  Read this carefully.  You're going to find some
 3    useful information.
 4              MS. HURST:  It was --
 5              MR. QUINN:  Excuse me, your Honor.
 6              THE COURT:  Mr. Quinn has the lectern.
 7              MR. QUINN:  I hardly think that's justification
 8    for circulating the document.
 9              We're paranoid.  Tell us we're paranoid.  Even
10    paranoids have enemies about this information getting out,
11    your Honor.
12              They rely on one case that Kamakana case, and the
13    court alerted to the public interest, and the Kamakana case
14    addresses the public interest about opening files, but it
15    specifically addresses the situation after a dispute is
16    resolved.
17              And that's not where we are, right now.  And, your
18    Honor, at trial, we may be asking the court to entertain
19    special measures to protect the confidentiality of trade
20    secret information that comes into evidence.  There are
21    different ways courts have addressed that situation.  There
22    are creative ways, and we may be asking the court to do
23    that.
24              THE COURT:  Do you want to seal the trial?
25              MR. QUINN:  I don't know.  We may --
```

14

```
 1              MS. HURST:  No.

 2              THE COURT:  I think Mr. Quinn has the lectern and

 3    lecturn has Mr. Quinn.  I'm not sure.

 4              MR. QUINN:  Your Honor, I wouldn't rule out the

 5    possibility that we might ask -- as a trade secrets trial I

 6    tried in Cleveland once, where we asked that the projector

 7    be placed in a situation so that when a secret document goes

 8    up on the screen, the audience can't see it; or that for a

 9    specific piece of testimony or subject matter, that certain

10    people not be in the courtroom.

11              THE COURT:  Do you want a sealed trial?

12              MR. QUINN:  No, we don't want to seal the trial.

13              THE COURT:  Okay.  You just want portions sealed?

14              MR. QUINN:  I'm saying, your Honor, there may be

15    occasions where we ask the court to employ special measures.

16              THE COURT:  Do we use SCIF?

17              MR. QUINN:  You know, you've referred to these

18    SCIFs.  And I admit I'm curious.  I'm almost tempted to say

19    "yes," just so I can learn what it is.

20              THE COURT:  They are in a room, and they have

21    lasers.  And when you look highly confidential documents, if

22    you move, it zaps you.  I'm just kidding you, counsel.  It's

23    just -- all a SCIF is, is an electronic room that blocks all

24    communications so that you look at top secret documents,

25    usually hand-carried.
```

1        MR. QUINN:  I don't know that we'll be asking for

2   lasers, your Honor.

3        Your Honor, this is a serious concern.  I don't

4   think the court has to, at this point, wholesale open the

5   record here.  I don't understand why the --

6        You know, they have experts.  I mean, heaven knows

7   they got experts.  True toy industry experts, they can

8   consult about these things.  If there is a particular

9   concern about communicating on a particular subject matter,

10  let them bring that up.  But that's not a reason to ask that

11  the equivalent of bankers boxes of materials be unsealed.

12        THE COURT:  I understand the wholesale nature and

13  your concern, and I'm concerned also because I don't truly

14  know what those interests are yet, and I don't want to base

15  a ruling on what I've seen thus far.

16        But my impression is, at least up to this point

17  what I have seen thus far, is what I call going backward

18  information.  It's information that's not extraordinary

19  helpful to Mattel.

20        Now, I haven't looked at some of those documents,

21  obviously, so --

22        MR. QUINN:  Well, that's why, I think it would

23  be -- it might be useful to talk about these specific

24  documents, rather than saying everything.

25        THE COURT:  And the second issue that I have is

1   that if these are coming into trial, the reason I'm asking

2   whether you want a sealed trial, is because if it's not

3   sealed, they're going to become a matter of public record

4   very quickly.  And we're only 30 days away from that, or 20

5   days, or 15 days, depending upon who are the witnesses.

6   Now, certainly for the first what you estimate to be a week

7   and a half, I estimate to be about three days, after Paula

8   Vargas.

9          Up to this point, I haven't seen, you know, what

10  would cause Mattel concern.  That doesn't mean, though, in

11  the future there are some significant documents.  Therefore,

12  I'm reluctant to make a wholesale ruling.

13         By the same token, on the other side, you got a

14  self-induced situation from my standpoint.  But even if you

15  didn't have some interesting concerns --

16         MS. HURST:  Your Honor --

17         THE COURT:  No, I'm speaking.  Did you notice

18  that?

19         You've always wanted this information unsealed

20  because you needed the aid, even in a cooperative atmosphere

21  from either Mr. Larian or Ms. Pisoni to prepare your case,

22  and we're on the eve of trial.

23         Now, the reason this is of a timing concern to me

24  is if you went over to the circuit and the circuit granted

25  an interloc, then it doesn't have the impetus today, because

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1    my expectation is we're going to trial on January 5th.  And

 2    this trial upon us, you know, my inclination is to start

 3    unsealing this.

 4            But if it's being stayed by the circuit for any

 5    reason, then I don't know when I can start the case again.

 6    In other words, once I lose this jury, I don't know if we

 7    are going in August, and there won't be any further

 8    discovery, Mr. Zeller, but thank you.  Or a year from now.

 9            Because what I got to do, I got to go back and

10    start preparing all those criminal cases with time

11    parameters and sweep those off the board, because criminal

12    takes precedence.  And what I can't do is start your

13    four-month trial, or I got to ship that out to colleagues

14    who, let's say, aren't as exuberant as taking all those

15    criminal matters, especially when you've got a civil case.

16    It just doesn't work that way.  It doesn't with criminal

17    cases in federal court.

18            So what I've got to do, if the stay is granted,

19    quite frankly, is get rid of this jury, because I can't hold

20    them.  Probably select a date eight months, nine months, a

21    year out in advance.  Hear Mr. Zeller make numerous motions

22    for discovery.  I mean, that's where we're going to be at,

23    frankly.  I just say that to you bluntly and, hopefully,

24    I'll live that long and so will you, and we'll eventually

25    try the case.  But it could be 2011, 2012.  It's not going
```

 1  to just turn over again.  It can't, because now I've got to

 2  do all those things that I pushed out, or advanced, or said

 3  to counsel that *If you don't get a continuance, you're going*

 4  *up the road.*

 5         And I'll tell you, we've been preparing now for

 6  eight months.

 7         That's why from my standpoint whether it's January

 8  5th, I really wouldn't have cared, or February, if I would

 9  have known this before, you know, sending out these summons,

10  quite frankly.  If everybody would have told me that, we

11  could have negotiated this in September, or October.  I'm

12  going to take a pretty hardline position on this, and the

13  circuit is going to have to be the one that stays this.  I

14  think it's a matter of case management.  And I feel strongly

15  that this is the American system; that the court has the

16  right to manage their cases, appropriately, especially with

17  the admissions of all counsel from this --

18         Now, that's diatribe on the side, and that was

19  meant for the circuit, so that they hear my argument again.

20         MR. QUINN:  In conclusion, your Honor, as a

21  placeholder, we ask the court to please keep an open mind

22  about the possibility of entertaining special measures, even

23  at trial, to preserve what we contend is trade secret.

24         THE COURT:  But let me say again:  It's been so

25  expansive in the past that you haven't lost credibility.

```
 1   Please, you've got credibility on both sides.  But there's a
 2   weariness on my part because of this avalanche and the
 3   inability by both parties -- so I'm coequal -- to narrow
 4   this down to what's really important.  So when you're
 5   arguing to me because of the breadth -- and so I'm coequal
 6   on MGA's part, or Mattel's part -- you got a court that's a
 7   little reluctant to accede to that argument, because I've
 8   never seen counsel on either side start making the hard
 9   value choices about what was really important.
10           So why am I sitting in a position with, you know,
11   almost a year now of that kind of track record -- and I
12   accept your word, Mr. Quinn, just as I do Ms. Hurst -- but
13   my past history is, there was so much minutia.
14           And you got to remember -- I'll say it again --
15   the use of privilege logs and interrogatories and what went
16   on -- so I'm coequal to both sides -- put the court in a
17   very dreary position inheriting this case, so --
18           That's what you're up against.  It's just this
19   avalanche of, quite frankly, what turned out in some cases
20   to be well taken; some cases minutia.  But now you've got
21   the problem with that trial date is pressing right up
22   against it.
23           Now, if the circuit was going to grant a stay, I
24   don't know that I want on this particular date to disclose
25   that.  I get close to trial again, and there was some
```

1    impetus.  But that's why Mr. McConville is sitting over

2    there looking at every single exhibit.

3            Mr. Price, you can join Mr. Quinn.  You don't have

4    to give him a note.  What are your thoughts?  Or Mr. Zeller.

5    I'll expand it to three counsel.

6            Ms. Keller, if you want to join, even though

7    you're not counsel of record, for goodness sakes, I've

8    opened it up to Mr. Zeller, so you can -- I'm just joking.

9    That's kind of a conflict.  You can't do that, because the

10   Orrick firm is representing him.

11           MR. ZELLER:  Just briefly, your Honor.

12           What we had suggested -- and this is actually what

13   had been done in the past with respect to unsealing -- is

14   that the parties actually sat down and went through the

15   record and decided what could be unsealed.

16           The court saw that that's the process we went

17   through previously when Judge Larson had the case.  It

18   worked.  The parties actually came to agreement.  The court

19   ultimately was presented with the materials that the parties

20   agreed could be unsealed.

21           THE COURT:  Why didn't that take place in this

22   case?

23           MR. ZELLER:  I think it should.

24           THE COURT:  Why hasn't it?

25           MR. ZELLER:  We proposed it.  We proposed it, and

1    MGA did not respond.  They instead filed this motion.  And

2    this is another reason why we're troubled by the blanket

3    nature of this.  I mean, we're mindful of the court's

4    comments --

5         THE COURT:  Can you narrow some of your requests

6    for sealing?  Or is this just going to be a blanket

7    situation when you get back with Ms. Hurst that we're

8    maintaining our position; and, therefore, 1 through 32, or

9    whatever, should remain sealed?

10        That's not negotiation.

11        MR. ZELLER:  No, I understand.  And that was not

12   the position of what we did before, and there, certainly,

13   wasn't the process of what we went through before, and it's

14   not what I would say we're going to do now.

15        We can go through the record.  I mean, it's a

16   voluminous record, as the court is aware of, of what it is

17   that's there in summary judgment.  And I am optimistic that

18   the parties can reach agreement on a large number of those

19   items.

20        But what we had proposed is, is to go through that

21   same process again, and we never got a response.  Instead,

22   there was this -- what is really now the third or fourth

23   motion that the court has received from MGA, just a blanket

24   unsealing order.

25        THE COURT:  That's probably because you took the

1   position that all these items should remained sealed and

2   probably maintained in pristine position.

3           What have you have given up?

4           MR. ZELLER:  Well, I mean, think we would have to

5   go through, again, document by document, and do exactly that

6   process.  That's what hasn't been done.

7           MS. HURST:  You Honor, may I address --

8           THE COURT:  On the eve of trial, I'm not certain

9   of that.  If I started to balance this, the need for

10  information, I think, may be much greater, especially with

11  what I have seen next door.  You've really got to show me a

12  going forward that really affects Mattel, and I'm not seeing

13  it, quite frankly.

14          MS. HURST:  May I address the court?

15          THE COURT:  Please.

16          MS. HURST:  This document that Mr. Quinn handed up

17  was unsealed as part of that summary judgment process the

18  last time.  I want to be clear about that, okay?, number

19  one.

20          Number two, the last time we addressed the court

21  on this issue, the court issued an order expressing its

22  concern that MGA was not being evenhanded or equal in its

23  request for unsealing.  We wanted to make absolutely clear

24  that MGA was opening the books on its side and was applying

25  a completely evenhanded standard by making a motion to

1    unseal all of the papers.

2         Frankly, Mr. Larian, as an individual defendant in

3    this case and the documents in there, he faces far more

4    personal private exposure and embarrassment from this than

5    any corporation in this courtroom, and he is the one who's

6    got personal financial interest on the line and is being

7    precluded from access to the basic evidence in the case,

8    which is going to come into trial now in a publish courtroom

9    in a very short period of time.  This is a stall job.

10         We have for months been begging them to meet and

11    confer with us about this.  We asked them to do it.  We've

12    waited extensive periods of time for answer; and then, after

13    waiting weeks, we got a response that said, *Well, why don't*

14    *you just tell* --

15         THE COURT:  Simple solution.  Excuse me.

16         Why don't we just take a trial run tonight.  Let's

17    see what we accomplish in the next hour.  In other words,

18    I'll know very quickly the good faith of both parties or not

19    with just a hour trial run between 8:30, 9:30, or 10:00.  In

20    other words, I'll know very quickly, you know, how much

21    MGA's willing to give up, or Mattel is willing to give up,

22    how open this is going to be and whether this works or not,

23    okay?

24         An hour and a half, you can accomplish a

25    tremendous amount.  I'm not saying you'll complete it.  You

1    won't be even close.

2           What time do you want to meet?  10:00?

3           I'll just hold these in abeyance, those summary

4    judgments for a moment.  In other words, we'll come up with

5    those documents that really are essential.  Let me look at a

6    couple of those as a sampling.  Let's see what's given up.

7    Let's see what also is being held that seems to be so

8    important, and let's just take the first 10 requests.

9           MS. HURST:  And our position is:  We're prepared

10   to have everything on our side unsealed.

11          THE COURT:  I understand.  But let's just take

12   the -- Mattel, let's just take the first 10 requested orders

13   so nobody can shuffle the deck, and let's see what we do in

14   an hour and a half.

15          MR. ZELLER:  There appears to a logistical issue

16   in the sense that we don't have all the summary judgment

17   papers here, so it's whatever amount of time it's going to

18   take to get them here.

19          THE COURT:  We have them.

20          MR. ZELLER:  Okay.  So we can start now.

21          MS. HURST:  You Honor, may I address the court?

22          THE COURT:  We have them all on a thumb drive.

23          MS. HURST:  May I address the court on a related

24   matter?

25          THE COURT:  No.  Let's stay with this before you

1    start to fragment, okay?

2             That's what parties like to do.

3             MR. ZELLER:  We can start right now.

4             THE COURT:  Okay.  Excellent.

5             Counsel, let's start now.  10:00 o'clock?

6             MS. HURST:  Your Honor, I really need to get this

7    on the record before the court leaves the bench.

8             We understand that the court certified the three

9    orders for interlocutory appeal pursuant to 28 U.S.C. --

10            THE COURT:  I'm sorry.  Start over again.

11            MS. HURST:  Is it correct, your Honor -- we just

12   want to correct the record on this.

13            I believe there was some discussion off the record

14   earlier.  Is it correct that the court certified the three

15   orders for interlocutory appeal, pursuant to 28 U.S.C.

16   1292(b) as opposed to 9 U.S.C. 16?

17            THE COURT:  And you believe I made a mistake, and

18   it should have been certified under --

19            MS. HURST:  Under 28 U.S.C. 1292(b).

20            THE COURT:  I'll go back and look for a moment.

21   I'm going to take a moment.

22            MS. HURST:  All right.  Thank you, your Honor,

23   Thank you.

24            Additionally, your Honor, we would like to make a

25   formal request on behalf of MGA and Isaac Larian to stay the

1   trial pending the appeal, the interlocutory appeal, in order

2   to perfect the record.  Your Honor, we understand the court

3   has probably already implicitly denied that, but we just

4   want to be sure that we have a clear record on that.

5            THE COURT:  You need to set your record, and

6   that's denied.

7            MS. HURST:  Thank you, your Honor.

8            THE COURT:  Now, we'll go back, and I want to

9   relook at this sections also to make certain I have that

10   correct, okay?

11            MS. HURST:  Thank you.

12            THE COURT:  Okay.  So what time do you want to

13   meet?

14            10:00?  9:30?  12:00?  You tell me.  I'm just

15   asking a very simple question.

16            MR. MCCONVILLE:  Your Honor, we're prepared to

17   meet whenever, but I think --

18            THE COURT:  You're to look at theirs.  You're

19   going to look and see what they are really willing to give

20   and what they're not.

21            MR. ZELLER:  I would suggest an hour, your Honor.

22            THE COURT:  Okay.  Then, we'll meet at 9:30.  And

23   Kathy, good night.

24            Now, Kathy is going to put the summary judgment

25   order in PDF form so that you get it.  But I'm afraid if I

```
 1    give it to you now, this will absorb your evening.  Also,

 2    although I'm having you lay out documents, I think there's

 3    going to have to be a substantial reshuffling of the

 4    documents that are waiting next door, in light of the

 5    summary judgment.  I'm just wondering if we want to go to

 6    work right now on those remaining documents while you work

 7    with Ms. Hurst, and I'll take Mr. McConville and Mr. Quinn

 8    and Mr. Price with me next door to get started with those.

 9    But, right now, I'm not going to hand out the summary

10    judgment.  I'll just wait.

11            So 9:30?

12            Let's see what kind of progress we may make.

13            Okay.  9:30.

14        (Recess taken from 8:32 p.m. to 9:32 p.m.)

15            THE COURT:  We're on the record with Mattel and

16    MGA.

17            All counsel are present.

18            Counsel.

19            MS. HURST:  Your Honor, in order to resolve the

20    motion, the sealed parties are stipulating as follows:

21            The briefs and the separate statements will be

22    unsealed.  Ms. Pisoni will be given access to AEO materials

23    in electronic form, using Orrick's systems with any printing

24    or copying capabilities disabled.  And she will abide by a

25    restriction to access those materials remotely only from her
```

1  home or from our offices.

2          Is that a correct statement, Mr. Zeller?

3          Oh -- and in addition, your Honor, the parties

4  will continue to meet and confer about the unsealing of the

5  remaining exhibits and other evidentiary materials and will

6  exchange lists no later than January 5th of materials that

7  we request to remain under seal; and then, we'll meet and

8  confer further about that at that time and come back to the

9  court with any unsealing agreements.

10          MR. ZELLER:  That's with respect to the exhibits.

11          And the one thing -- and I think that this is

12  understood is, of course, Ms. Pisoni will abide by the terms

13  of the protective order.

14          MS. HURST:  Of course.

15          THE COURT:  Acceptable to Mattel?

16          MR. ZELLER:  It is, your Honor.

17          THE COURT:  Acceptable to MGA?

18          MS. HURST:  Yes.

19          THE COURT:  Mr. Larian, you are here.  You have

20  heard this conversation.  I just want to make certain,

21  because I don't know what unfolds in the future.

22          Is this acceptable to you, sir?

23          MR. LARIAN:  Yes.

24          THE COURT:  All right.  I think this will get us

25  the information that all of us need quickly then.

1          Then, the second thing is, counsel, you're

2   absolutely right.  I misstated.  I'm amending yesterday's

3   order to specify that the court's making the following

4   orders immediately appealable pursuant to 28 U.S.C. 1292.

5          And thank you, counsel, for the correction.  I

6   appreciate it, and for my record.  Not the statute

7   identified yesterday.

8          The order granting Mattel's motion to disqualify

9   the Glaser Weil firm and, second, the order denying MGA's

10  motion for continuance of the trial date and third, the

11  order denying the Orrick's firm request to withdraw as

12  counsel for MGA.

13         Now, is there anything else this evening, other

14  than two things we were going to do?

15         We were going to continue going through witnesses

16  up to and including Carter Bryant.  I would suggest that the

17  summary judgment motion be handed out tonight, and you spend

18  your time.  There may need to be some adjustments concerning

19  the exhibits in light of the summary judgment motion, and

20  so -- but I'm at your beck and call.

21         MS. HURST:  I agree, your Honor.  I have one

22  further request this evening, which I hesitate to make.

23         Your Honor, in light of the disqualification of

24  the Glaser Weil firm and the timing --

25         THE COURT:  Just a moment.  Of the firm.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1              MS. HURST:  The firm, your Honor.

 2              THE COURT:  Not Ms. Patty Glaser.

 3              MS. HURST:  No, no, no, no, your Honor.

 4              We had about -- I don't know -- some number of

 5   people at that firm were working with us in the trial

 6   preparation.  We have lost those resources now, and we lost

 7   them at the holiday.  We are rapidly replacing them.  And I,

 8   with all respect for everything the court has said about its

 9   schedule, would ask for a modest two-week continuance, just

10   because the timing of this issue -- we didn't, obviously,

11   know anything about this conflict issue before it arose --

12   has come at a time when it's hard for us to get everybody

13   back in who had worked on the case before and just get fully

14   up to speed and continue with our efforts to complete them.

15              And so, your Honor, we're just -- we don't think

16   it would necessitate any change in the jury, obviously, and

17   that would be our request, respectfully.

18              And I'm really just making this request on behalf

19   of the Orrick law firm, quite frankly, your Honor.

20              THE COURT:  Let me ask you and Mattel something,

21   because I know you've taken an all-or-nothing position.

22   But -- and, I think, I've taken an equitable position so

23   that Mr. Larian was provided counsel, initially, of choice

24   Ms. Glaser, which, of course, Mattel disagrees with because

25   of what they've perceived the per se rule.  Your position,
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    of course, is I should have taken the other position and

2    allowed the firm to continue on.

3           Who are those persons that are resource persons in

4    Ms. Glaser's firm?  And could I get some type of assurance

5    that for this limited period of time that they are all

6    walled off, you know, would be walled off and a

7    representation that they receive no direct or indirect

8    information from Ms. Basinger, or from any other source.  In

9    other words, in making that transition, I'm worried about

10   going forward and the perception becoming reality, the court

11   not taking a strong hand.  It could be very well criticized

12   by the circuit that I should have had a per se rule

13   involved.

14          It's not the continuance.  It's rejuvenating the

15   resource, and I would like to do that.  The problem is that

16   we have so many jurors, and this is not your problem.  But

17   it's a real case management problem.  If I lose this jury,

18   I'm not too sure your trial gets off the ground in 2011.

19          MS. HURST:  I understand, your Honor.

20          THE COURT:  I've got to reshuffle a multitude of

21   criminal cases.  I put off -- I put off criminal matters

22   that are three- or four-day matters that don't concern me.

23   But I put over, with counsel knowing that I wasn't available

24   with me threatening that they were going up to Los Angeles,

25   literally, time and time again, you know.  And they fell

1    into line, wanted to stay thankfully in this court, and now

2    I've got to go back to those counsel.  I can't do that.  I

3    got time problems that are --

4                And I've got multi-defendant cases.  So I'm not

5    criticizing you, but if I had just known this two months ago

6    even, before we started that process, maybe I could have

7    unwound at least 50 percent of that?  I've got speedy trial

8    problems.

9                And, second, I've got indigent parties who don't

10   have half of Mattel's resources, or even half of your

11   client's.  I've got impoverished people out there who

12   literally can't get into court.  That's fine.  But it's not

13   fine if I have to move this again.

14               So I'm telling you, I heard your client the first

15   time he was in here, *Judge, I'm basically on the ropes.  X*

16   *amount of money is being spent on a Special Master.  My*

17   *company is being shut down.*

18               A lot of this was designed to equal the sides, so

19   you had an equal playing field and to get you into trial.

20   And I said that right from the beginning, now.  If I lose

21   this jury, I'm telling you, Ms. Hurst -- I'm not threatening

22   you.  I'm just telling you -- I don't know how to

23   reconstitute.  I will, but I think, I'm looking at 2012.

24               Mr. Zeller, would you like more discovery?

25               MR. ZELLER:  Yes, sir.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1             THE COURT:  I'm just kidding you.  That's not
 2   going to happen, hopefully.  But, of course, he's going to
 3   be back in the door.  So why can't we reconstitute?
 4             In other words, why can't we come up with some
 5   creative way that gives you the resources, you know, the
 6   bridge that protects my record in terms of walling off,
 7   because I'm telling you, I can't get this jury back.
 8             MS. HURST:  Obviously, everyone there was already
 9   walled off and would continue to be walled off.  Your Honor,
10   I'm just speaking for my law firm now.  We cannot -- we
11   don't want to take the risk of having tainted work product.
12   We have immediately walled them off from our efforts.  We
13   are not using their work product.  We don't want to get into
14   a situation where this gets worse.  I'm not speaking --
15             I'm not even speaking for MGA, right now, okay?
16             THE COURT:  So the bridge doesn't --
17             MS. HURST:  Exactly, your Honor.
18             And we appreciate the court's offer of
19   interlocutory appeal, in order to try to get clarity on that
20   from the circuit and not leave MGA in a position of
21   potentially giving Mattel a free pass.  We understand the
22   court's order.
23             THE COURT:  There's another thing I can do.
24   Remember that I have really already given the parties in a
25   sense another week and a half, just because of the
```

1    questionnaire.  We were going to start January 5th.  I

2    decided the questionnaire was appropriate.  And I was really

3    going to start the trial on Tuesday.  But the Hong Kong toy

4    fair is upon us, and so I've got a very active party,

5    Mr. Larian.

6            I don't know what Mr. Eckert is doing, but I

7    assume he's engaged at that time of the year, and the two

8    principals ought to be able to participate if they want.

9            So my idea was that Tuesday didn't make good sense

10   to start, because your client was just coming back.

11   Mr. Eckert may be at the same toy fair.  Wednesday didn't

12   look like a very good day, because there's no time to look

13   at 80 questionnaires, if you want to have an active client

14   participation, or Mr. Eckert.  So I thought Thursday was a

15   good day to start.  Then, I planned to give you Friday off,

16   because I knew we would get the jury in one day.  And that

17   way, you had Friday, Saturday, Sunday and Monday to put

18   together your already, probably, well-reasoned opening

19   statements because that's really impactful.  I mean, that

20   lead-off for both counsel is just critical, and I thought I

21   was being kind by --

22            Now, I can literally slow down the trial by

23   keeping less hours.  I mean, the four witnesses, quite

24   frankly -- Mr. McConville, stimulating; Mr. Zeller,

25   stimulating -- we're going to be putting a bunch of drawings

1  up, 60 or 70 drawings.  We're not into the first significant

2  witness until we get into Paula Garcia.

3          MS. HURST:  I'm going to confer with Mr. Larian.

4          THE COURT:  She's probably taking place the second

5  week after you start.

6      *(Pause.)*

7          THE COURT:  Probably from your perspective, that's

8  reasonable.

9          It might not be for Ms. Glaser, if she's here; or

10  Ms. Keller, who Mr. Larian is talking to, right now.

11          But you're counsel.  And, once again, Mr. Larian

12  controls this.

13          MS. HURST:  I don't have anything further to add,

14  your Honor, and I appreciate the court's courtesy in putting

15  the dates as they already are.

16          THE COURT:  Yes.  Well, what I'm willing to do is

17  to slow down the trial to a stark degree.  Not stop it, but

18  to slow it down.  There's an easy way to do it, and that's

19  recess at 4 o'clock or 4:30, but that's very harmful.  The

20  jury gets into a bad habit of not sitting; and then, they

21  think they're being leaned on by the second week.  But I can

22  slow it down.

23          MR. MCCONVILLE:  Your Honor, is there any way to

24  have the jurors come in and fill out the questionnaires; and

25  then, pick the jury two weeks later, rather than the time

1   that you talked about?  They'd still be time qualified.

2   They wouldn't have been tainted yet and then we can wait two

3   additional weeks just to pick it.  It would still be within

4   the four months, so you wouldn't lose your jury.

5       *(Pause.)*

6           THE COURT:  Maybe.  But I'm not going to make that

7   commitment now.  I want to see what happens over at the

8   circuit.  In other words, it's going to be a very

9   interesting ruling.  I think it sets tremendous precedence

10  for the court in terms of case management.  I think it's

11  much needed in terms of how strong the circuits think that

12  dates mean something to a trial court.  So, therefore, I

13  kind of welcome the ruling.  If I'm wrong, the first thing

14  is, maybe, we are starting over in a year; and if I'm right,

15  we're starting on January 5th.  But what I will do is I will

16  try to keep a reasonable pace to begin with that allows you

17  that bridge and that link.

18          Now, I can't promise you a week, but the first

19  witnesses don't seem to be very consequential.  It's a bunch

20  of documents going up on the screen.  And I don't think you

21  need any help concerning your opening statement.

22          Second, with Paula Garcia and others, you have a

23  wonderful opportunity, because they are calling witnesses

24  that you can reserve on.  So if you have any uncomfortable

25  situation that you feel that you don't have support for,

```
 1    after these many years -- and I'm not denigrating you now --
 2    after these many years, you can reserve that until the
 3    beginning of the defense case.  You don't have to
 4    cross-examine Paula Garcia.
 5               MS. HURST:  That won't be necessary, your Honor.
 6               THE COURT:  But that's a tactical choice.  I'm
 7    saying you have all those options, and so I can't see that
 8    you don't have -- I don't understand why you wouldn't have
 9    the support, why you can't keep the pace, and the nice thing
10    is you can listen to direct examination, choose what you
11    want to, choose what you're not prepared on, delay that if
12    you want to.  And as far as experts are concerned, I don't
13    think you have too much to fear concerning expects from both
14    sides.  There aren't going to be very many.
15               MS. HURST:  All right.  Thank you, your Honor.
16               THE COURT:  And I'll work with you on that.  If
17    it's truly unfair during trial, we want a balanced trial.
18    I'm just saying to both of you on both sides, I just don't
19    know how to reconstitute it in six, eight, nine months.  And
20    this is a civil matter, so --
21               And lastly, let me just say that once again, like
22    a broken record, I wouldn't have any concern if this was in
23    September, and we were talking about that.  Even if I
24    started that process, I wouldn't be obstinate and come back
25    and say that we couldn't readjust that.  But I mean, I've
```

1   really leaned on a lot of counsel on the criminal side, and

2   that includes you going up the highway to Los Angeles, and

3   you don't know who they're going to draw and -- seem to have

4   an affect on them.

5          So I'm not turning you down.  I'm just saying, I

6   could do certain things to make it palatable.  But as far as

7   representing to you that we're coming back in two weeks, I'm

8   going to tentatively say "no," with the option of reversing

9   myself, okay?  But let's see what the circuit says.  I'm

10  really looking forward to the opinion.  I'm going to really

11  need to know what strength the trial court has in terms of

12  setting dates that parties acquiesce to and agree to and

13  representations that I got two lead counsel and two lead

14  counsel and the situation where the court is not even

15  informed, and I hear a statement that you were supposed to

16  never be lead counsel.

17         MS. HURST:  Your Honor, I was not present for that

18  statement.  It was made in camera.  And the client has

19  instructed us not to obtain a copy of the transcript of that

20  statement for purposes of this purported appeal that is

21  being taken with respect to that issue, so I can't -- I

22  cannot --

23         THE COURT:  Let me say this in Mr. Larian's

24  presence.  You control this.  You really do.  You control it

25  in the sense that you retained counsel so you have the

1    ability to create a conflict, or to undo the conflict.  It's
2    as simple as that.
3              And when you retain counsel, that's far different
4    than if I had appointed certain counsel.  If I had appointed
5    counsel and we had a conflict or disagreement, I'd get rid
6    of them and get you new counsel, especially if this was a
7    criminal matter, which it's not.
8              But when the party retains counsel, you're making
9    a choice at that time and you have the right to change.
10   It's just that when you start changing that late, it causes,
11   as you see, a horrendous amount of problems.  Now, if you
12   don't mind the case being tried in 2012, or whatever, but I
13   thought -- and I don't want to engage you, but I thought you
14   were on the ropes when you came in here.  It was my way of
15   balancing the sides to get a fair trial so you weren't
16   out-resourced.  The idea was get you to trial as quickly as
17   possible.  I thought that was a very fair position to be in.
18             Now, Mattel may be willing to wait until 2012.  I
19   don't know, so --
20             Okay.  I think that's enough.  So let me say not
21   at the present time, but I'm always open to argument.
22             MS. HURST:  Thank you.
23             MR. MCCONVILLE:  Thank you.
24             THE COURT:  Counsel, I would suggest that we not
25   go over the exhibits tonight, because there's going to have

1    to be some readjustment, however great or small that is.

2    And I think that the summary judgment is finally helpful

3    concerning the court's thoughts.

4              MS. HURST:  Thank you, your Honor.

5              THE COURT:  And I just suggest that we close down

6    the court system tonight.  It's 10:00 o'clock.  You take the

7    summary judgments home and read them at your leisure.

8              MR. MCCONVILLE:  Your Honor, one -- I'm sorry.  I

9    hate to do the pop-up on you.

10             But in regard to that order we discussed earlier

11   for the transcripts, I understand that it's been filed.  So

12   there's a proposed order that's been filed in the system.

13             I hear you.  I'm sorry for bringing it up.

14             THE COURT:  No, no, no.  That's okay.  If I've got

15   it here, I'll sign it now.  I don't have it.

16             MR. ZELLER:  Can we see a copy of it?

17             THE COURT:  I don't know where the copy is.  I

18   have to read it, before I sign it.  I'm happy to sign it,

19   but I have got to have it, and I don't have it.

20             Okay.  All right.  Then, is there anything

21   further, Ms. Hurst?

22             MS. HURST:  No, thank you.

23             THE COURT:  Mr. McConville?

24             MR. MCCONVILLE:  No, sir.

25             THE COURT:  Mr. Zeller?

```
 1              MR. ZELLER:  No, sir.

 2              THE COURT:  Mr. Quinn?

 3              MR. QUINN:  No, sir.

 4              THE COURT:  Now, I want to wish you best of all

 5  holidays through the holiday season into the first of the

 6  year.

 7              Now, am I going to see you next week?

 8              MR. QUINN:  I don't think so, your Honor.

 9              THE COURT:  I don't know.  Because if not, I'm

10  probably going to take a little drive; if so, then I'm

11  probably going to say, Here.  In other words, I don't --

12              MR. QUINN:  Your Honor, I was hoping to take a

13  drive myself.

14              THE COURT:  It's up to you.  In other words, I can

15  be available if there is something on the horizon, but I

16  can't once I get in the car.  I hope my wife recognizes me,

17  you know.  And I just --

18              I might go as far as Hemet.  I'm just kidding you.

19  But maybe I'll go away for a couple of days.

20              MR. QUINN:  How about Temecula?

21              THE COURT:  But I don't have to.

22              So if you're telling me now that you need me next

23  week, I'm glad to do that; but then, I want to get you in

24  and working on exhibits while I'm waiting for whatever you

25  need.  I can be at your disposal.
```

```
 1              But what I'm not going to do is, you know, drive

 2     back if I drive out Monday or Tuesday; and then, turn around

 3     because you got an emergency and come back on Wednesday or

 4     Thursday.  I just don't know whether to go or not.  Right

 5     now I'm at your disposal.

 6              So, Mr. Quinn?

 7              MR. QUINN:  Your Honor, I think you should hit the

 8     road.

 9              THE COURT:  Mr. Quinn, thank you.  That was aptly

10     put.

11              Mr. Zeller?

12              MR. ZELLER:  I concur with my partner, Mr. Quinn.

13              THE COURT:  Ms. Hurst?

14              MS. HURST:  Agreed.

15              THE COURT:  Mr. McConville?

16              MR. MCCONVILLE:  I'll miss you, judge.  You go

17     ahead and go.  You got to do what you got to do.

18              THE COURT:  Ms. Keller?

19              MS. KELLER:  I don't think I have standing.

20              THE COURT:  Well, I know.  I don't know if you're

21     coming in or not.

22              How about you, Mr. Larian?  Anything that you

23     think you need?

24              MR. LARIAN:  You deserve it.

25              THE COURT:  Okay.  It's not me.  I really am here
```

1    for the duration of this trial for you.  But if we're not

2    doing anything, I think we can accomplish the rest of these

3    exhibits, at least for the rest of the first two weeks or

4    three literally Monday and Tuesday.

5            So let's go over our schedule again:  Monday and

6    Tuesday, the 3rd and the 4th, I want you back in court.

7    Let's go over the exhibits we were going over tonight, up

8    through Carter Bryant, on Monday, okay?

9            Let's go over a couple more witnesses on Tuesday;

10   and then, let's send you home.  And I don't want you in the

11   courthouse on January 5th when the jury checks in.  They'll

12   fill out the questionnaire.

13           Now, this is the way I'm slowing you down already,

14   Ms. Hurst.  What you don't know is, I can turn the

15   questionnaires around on Thursday.  I'm not.  I'm going to

16   give them to you at 4 o'clock, on Friday, because I'm not

17   going to order my staff to work overtime to get them to you.

18   They'll work normal hours.

19           4 o'clock on Friday, which is the date of

20   January 7th, they'll be available right down in the clerk's

21   office.  In fact, better yet, come up here to the court and

22   see Kathy, okay?

23           Now, that should give you all weekend.  And if you

24   want to work that week on the questionnaires, you can, but

25   you can also have a wonderful weekend, if you wanted to.

```
 1    That would take you up to January 10th.  I think Mr. Larian
 2    was coming back from the toy fair on either January 10th, or
 3    11th.  I can't recall.  Get a good night's sleep.  But it
 4    would give you the 11th and the 12th to participate, if you
 5    want to; or Mr. Eckert, if he's going to the toy fair to
 6    participate, and we'll get the jury on the 15th.
 7              I think that you should plan on being dark on the
 8    14th.  I think you ought to go home and round out your
 9    opening statements and rest and get ready, because I think
10    that's a dramatic day for you.
11              Also, I think you told me -- you represent to me
12    if you were going to have an opening statement presentation
13    that you would reach that agreement by either January 3rd,
14    or 4th.  The days, in particular, I just need to know if you
15    are going to need an ELMO, or if you are going to need a
16    computer; and if so, that the tech people here are on board
17    for you.  And I would like to know that by Monday, for one
18    reason, so you can work with Jonathan to have the thing
19    really ready to go.  And if you want a larger screen, as
20    long as it's coequally shared, I don't care if you set up a
21    60-foot screen, as long as both of you use it and one party
22    isn't using it out-resourcing the other.  So if you want to
23    have a large screen, same screen, you both pay half for it.
24    I don't care if you put it up against the wall.  That's
25    fine.  The only thing I care about is we'll have criminal
```

```
 1   defendants, and we might have to take it down.
 2          MS. HURST:  Your Honor, on the computer, we talked
 3   to Kathy about that earlier, and she instructed us to have
 4   our computer people come in on the morning of the 4th when
 5   we're here, given that there's motion calendar on that
 6   Monday.
 7          THE COURT:  But that's assuming you reach
 8   agreement on the 3rd.  I haven't even heard that you both
 9   agreed to use and acquiesce to the other's --
10          MS. HURST:  We're going to want those systems
11   during the course of the trial.  We understood the court
12   wanted the kill switch.  We were going to bring our tech
13   people in to make sure we can give you that.
14          THE COURT:  I'm waiting to see what you do.  One
15   isn't linked to the other.  But I want to know, first of
16   all, on January 18th when you make your opening statements,
17   are we having a PowerPoint presentation or not, okay?
18          Number two, Mr. Quinn had said that he wanted to
19   teach the court how to use --
20          MR. QUINN:  Not me.
21          THE COURT:  -- at least a document presenter that
22   was quicker than an ELMO.
23          MR. QUINN:  Yes.
24          THE COURT:  And I'm more than happy to learn that.
25   I just don't want that document presenter to appear to be
```

```
 1    for one side, or the other.  In other words, I don't want

 2    Mattel approaching me, showing me how to use it and it looks

 3    like unfairly that MGA is overusing a presenter.

 4              MS. HURST:  Our belief is that both of us are

 5    going to be able to hook into this system here.  Each of us

 6    will have equal access to it and the court will have a kill

 7    switch, the same as the ELMO kill switch.

 8              THE COURT:  But that will take time, so we need

 9    that from Jonathan.  And that's agreeable to me.

10              MS. HURST:  And Kathy told us to come in on the

11    4th for that, your Honor.

12              THE COURT:  Okay.  And then it seems to me that we

13    are going to take a run for four or five weeks to see how

14    you're doing.

15              I think that's a good tentative schedule, and I'll

16    go easy if there is a problem.  We don't have to go to

17    5:00 o'clock.  We can go to 4:30, or 4:15 each night.  But

18    the first part does not -- doesn't seem to be very complex.

19              So is there anything further?  Does that schedule

20    work for you?

21              I mean, beyond the request, Mr. McConville, for

22    the extra week, assuming that isn't going to take place for

23    a moment, unless the circuit demands it of me, does the

24    schedule work?

25              MR. MCCONVILLE:  Yes, your Honor.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1              THE COURT:  Okay.  Ms. Hurst, does that work?

 2              MS. HURST:  Yes.

 3              THE COURT:  Other than the objection?

 4              MS. HURST:  Other than MGA's continuing objection,

 5     yes.

 6              THE COURT:  And Mr. Price?  Excellent.

 7              MR. QUINN:  Yes, sir.

 8              THE COURT:  Mr. Zeller?

 9              MR. ZELLER:  Yes, sir.

10              THE COURT:  I think I'm wasting your time now, and

11     why don't I get the summary judgment motion out to you.  I

12     just suggest you leave the courthouse and read it when you

13     get to your car.

14              All right.  Good night.

15          (At 10:00 p.m., proceedings were adjourned.)

16

17                              -oOo-

18

19

20

21

22

23

24

25
```

```
 1                          CERTIFICATE

 2            I hereby certify that pursuant to Section 753,

 3    Title 28, United States Code, the foregoing is a true and

 4    correct transcript of the stenographically reported

 5    proceedings held in the above-entitled matter and that the

 6    transcript page format is in conformance with the

 7    regulations of the Judicial Conference of the United States.

 8

 9    Date:  December 24, 2010

10

11

12                    _____

13                    Deborah D. Parker, Official Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*