ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   213-629-2020
Facsimile:   213-612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties and IGWT 826

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**Hon. David O. Carter**<br><br>**MGA PARTIES' MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT RULING REGARDING COPYRIGHT PREEMPTION OF THE BRATZ DRAWINGS AND SCULPTS TRADE SECRETS OR, IN THE ALTERNATIVE, FOR CERTIFICATION OF THE PREEMPTION RULING FOR INTERLOCUTORY APPEAL**<br><br>Date:  TBD<br>Time:  TBD<br>Place: 9D<br><br>Trial Date: January 11, 2011 |

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ............................................................................ 1

NEW FACTS AND LAW WARRANTING RECONSIDERATION .................... 2

    A.    The Summary Judgment Order ........................................ 2

    B.    The Damages Reports And Analysis ................................... 3

ARGUMENT ................................................................................. 3

I.      SECTION 301 EXPRESS PREEMPTION APPLIES TO THE BRATZ TRADE SECRET CLAIM ......................................... 5

    A.    Mattel's Bratz Trade Secret Claim Covers Material That Comes Within The Subject Matter Of Copyright ........................... 5

    B.    The Rights Asserted By Mattel In Its Trade Secret Claim Are ............ "Equivalent" To The Rights It Asserts Under Copyright. ............... 6

    C.    "Secrecy" Is Not An Extra Element ................................ 7

          1.    The Copyright Act Specifically Governs Secret Works By Controlling The Right Of First Publication ................. 8

          2.    The Alleged Implied Duty Upon MGA Regarding "Secret" Information Is Not An Extra Element ......................... 9

          3.    Alleged Knowledge Or Intent Of MGA Regarding "Secret" Information Is Not An Extra Elemen .................. 11

    D.    Under Mattel's Theory Regarding MGA, There Is No Legally Sufficient Extra Element Alleged And The Authority Relied Upon By The Court Is Not To The Contrary. ....................... 13

    E.    Congress Intended That Section 301 Avoid The Creation Of "Borderline" Rights Of The Type Created Under Mattel's Theory And Adopted In The Court's Summary Judgment Order ........................................................ 14

II.    ALLOWING MATTEL'S CLAIM TO PROCEED MERELY BASED ON "SECRECY" OF THE ASSERTED MATERIALS CONFLICTS WITH THE STATUTORY OBJECTIVE AND IS THUS SUBJECT TO CONFLICT PREEMPTION. ............................................. 15

    A.    The Reasoning Of The Court's Order Conflicts With Congress' Objective Of Harmonizing State Law Regarding Unpublished Works In A Single Federal Copyright Act .......................... 17

    B.    The Order Conflicts With Congress' Objective Of Section 102(b) Which Denies Protection To "Concepts" Or "Ideas" For Copyrighted Works.. .............................................. 18

III   ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS RULING REGARDING COPYRIGHT PREEMPTION FOR IMMEDIATE INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b)................................................................. 19
      A.   The Preemption Ruling Presents Controlling Issues Of Law. ......................................................................... 19
      B.   The Preemption Ruling Involves Questions Reasonably In Dispute.................................................................... 21
      C.   Certification Of An Interlocutory Appeal And A Stay Of Trial Pending Resolution Of That Appeal Will Expedite The Ultimate Resolution Of This Case. ................................ 21
CONCLUSION ............................................................................................. 3

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Aargard* v. *Palomar Builders, Inc.*,
344 F. Supp. 2d 1211 (E.D. Cal. 2004)............................................................ 12

*Ass'n of Irritated Residents* v. *Fred Schakel Dairy*,
634 F. Supp. 2d 1081 (E.D. Cal. 2008)............................................................ 22

*Atrium Group de Ediciones y Publicaciones, S.L.* v. *Harry N. Abrams, Inc.*,
565 F. Supp. 2d 505 (S.D.N.Y. 2008)............................................................ 11

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) *aff'd* 459 U.S. 1190 (1983)................................ 19

*Compco Corp.* v. *Day-Brite Lighting, Inc.*,
376 U.S. 225 (1964) .......................................................................................... 11

*Dastar Corp.* v. *Twentieth Century Fox Film Corp.*,
539 U.S. 23 (U.S. 2003)................................................................................ 16, 17

*Del Madera* v. *Rhodes and Gardner, Inc.*,
820 F.2d 973 (9th Cir. 1987)......................................................................... 10, 14

*Eagan* v. *CSX Transportation Inc.*,
294 F. Supp. 2d 911 (E.D. Mich. 2003)............................................................ 21

*Ehat* v. *Tanner*,
780 F.2d 876 (10th Cir. 1986)...................................................................... 11, 14

*Entous* v.*Viacom Int'l Inc.*,
52 U.S.P.Q. 2d 1628 (C.D. Cal. 2001)........................................................ 5, 6, 18

*Entous*
58 U.S.P.Q. 2d at 1634-35............................................................................. 10, 14

*Firoozye* v. *Earthlink Network*,
153 F. Supp. 2d 1115 (N.D. Cal. 2001) ............................................................ 13

*Fischer* v. *Viacom Int'l, Inc. et al.*,
115 F. Supp. 2d 535 (D. Md. 2000) .............................................................. 11, 14

*Goldstein* v. *California*,
412 U.S. 546 (1973) ........................................................................................... 16

*Harper & Row Publishers, Inc.* v. *Nation Enterprises*,
471 U.S. 539 (1985) ............................................................................................. 9

*Harper & Row Publishers, Inc.* v. *Nation Enters.*,
723 F.2d 195 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985) . 7, 12

*Idema* v. *Dreamworks, Inc. et al.*,

162 F. Supp. 2d 1129 (C. D. Cal. 2001)..................................................... 10

*Jones* v. *Rath Packing Co.*,
430 U.S. 519 (1977)................................................................................ 4, 16

*Kiwanee Oil Co.* v. *Bicron Corp.*,
416 U.S. 470 (1974)..................................................................................... 16

*Klinghoffer* v. *S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990).................................................................... 20, 21

*Laws* v. *Sony Music Entm't, Inc.*,
448 F.3d 1134 (9th Cir. 2006)................................................................... 4, 6

*Mediterranean Enters.* v. *Ssangyoung Corp.*,
708 F.2d 1458 (9th Cir. 1983)..................................................................... 22

*Montz v. Pilgrim Films & Television et al.*
(9th Cir. Docket No. 08-56954).......................................................... 20, 21

*Motown Record Corp.* v. *George A. Hormel & Co.*,
657 F. Supp. 1236 (C.D. Cal. 1987)............................................................ 12

*Orson, Inc.* v. *Miramax Film Corp.*
189 F.3d 377 (3rd Cir. 1999)..................................................................... 4, 16

*S.O.S., Inc.* v. *Payday, Inc.*,
886 F.2d 1081 (9th Cir. 1989)...................................................................... 13

*Sears, Roebuck & Co. v. Stiffel Co.*,
376 U.S. 225, 229 (1964)............................................................................ 16

*Selby* v. *New Line Cinema Corp.*,
96 F. Supp. 2d 1053 (C.D. Cal. 2000).......................................... 5, 10, 14, 18

*Trandes Corp. v. Guy F. Atkinson Co.*,
996 F.2d 655, 660 (4th Cir. 1993)............................................................... 14

*Worth* v. *Universal Pictures, Inc.*,
5 F. Supp. 2d 816 (C.D. Cal. 1997)............................................................. 12

**FEDERAL STATUTES**

17 U.S.C. §104(a)-(b) ................................................................................... 9

28 U.S.C. § 1292(b)...................................................................... 1, 19, 21, 22

H.R. Rep. No. 94-1476 at pg 129-130 (1976).................................... 9, 15, 18

**STATE STATUTES**

Civ. Code § 3426.1 ...................................................................................... 11

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD;

PLEASE TAKE NOTICE THAT, at a date and time to be set by the Court, the MGA Parties will and hereby do move for reconsideration pursuant to Local Rule 7-18 of the Court's December 27, 2010 summary judgment order denying copyright preemption of Mattel's trade secret misappropriation claim concerning Bratz drawings and dummy dolls/prototypes or, in the alternative, moves for an order certifying the Court's order denying copyright preemption of the Bratz trade secret claim for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and a stay of the trial pending such interlocutory appeal.

Reconsideration is warranted on two grounds:  first, there is new evidence and law that was not available at the time the motion for summary judgment was filed in the form of (a) the Court's order itself as to the copyright claim, and (b) facts set forth in Mattel's damages expert report and deposition that occurred after the summary judgment filing deadline; second, in all events the order was legally erroneous with respect to the issue of copyright preemption of trade secrets.

Alternatively, certification of the copyright preemption issue for interlocutory appeal pursuant to 28 U.S.C. 1292(b) and a stay of trial pending appeal is warranted as the issue plainly presents a controlling question of law, there is substantial ground for difference of opinion, and an immediate appeal will materially advance the ultimate termination of the litigation.  Further, a stay is appropriate as determination of this critical issue on appeal will define and change the course of the litigation.  To deny a stay would result in serious waste of the Court's and parties' resources, given that any subsequent appeal would require yet another retrial.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the parties' summary judgment briefing, the Court's summary judgment order, the expert report of Michael Wagner and deposition of

MOTION FOR RECONSIDERATION OR CERTIFICATION OF INTERLOCUTORY APPEAL RE COPYRIGHT PREEMPTION
CV 04-9049-DOC (RNBx)

1    Michael Wagner, and expert report of James Malackowski found at Docket Nos.

2    9478, Ex. 71 and 9367, Ex. 2, the other papers, pleadings, and documents on file

3    with the Court, and such further matters as may be presented to the Court prior to or

4    at the time of the hearing on this motion.

5                                    **Certificate of Compliance**

6            Lead counsel met and conferred regarding these motions on December 31,

7    2010.

8

9    Dated:  January 1, 2011                    Respectfully submitted,

10                                              ORRICK, HERRINGTON & SUTCLIFFE LLP

11                                              By:  _____/s/ Annette L. Hurst_____

12                                                         Annette L. Hurst
                                                Attorneys for MGA ENTERTAINMENT, INC.,
13                                              MGA ENTERTAINMENT HK, LTD., MGA de
                                                MEXICO, S.R.L. de C.V., and ISAAC LARIAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RECONSIDERATION OR CERTIFICATION OF
INTERLOCUTORY APPEAL RE COPYRIGHT PREEMPTION
CV 04-9049-DOC (RNBx)

**INTRODUCTION**

The Court has now definitively ruled that Mattel's copyright claim is limited to six Bratz female dolls.  That Order is based on the Court's holding that MGA did not copy *original elements* of the Bryant Bratz drawings as to the remaining dolls. Mattel's copyright claim is now worth no more than a maximum of $28M under this legally correct analysis.  But the remainder of the Court's Order seemingly gives back to Mattel an overweening damages claim in excess of $1.1B expressly ruled out under the Copyright Act, simply by recharacterizing the very same allegations as a trade secret claim.  This makes no sense.  If MGA did not copy *original elements* either because those elements were not original or because they were ideas and not protectable expression, then MGA did not *use* any Mattel trade secret (even assuming Mattel had one).  The Court's order appears to stand for the proposition that Mattel can recover all of the value in Bratz (translated by Mattel's damages expert as more than $1.1B) for purported misappropriation of a bratty doll idea when that result would be absolutely prohibited by Section 102(b) of the Copyright Act *and has been already rejected by the Ninth Circuit in this very case*. This is a result that plainly cannot stand.

If the Court denies reconsideration, then it should grant an order certifying the denial of copyright preemption of Mattel's Bratz trade secret claim for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and staying the trial pending such appeal.  The Court's Order denying copyright preemption of the Bratz trade secret is now the central legal question of the case governing the scope of the second trial and a swing of more than $1.1B in damages rests on this single legal ruling.  It is inconsistent with the law of the case as previously expressed by the Ninth Circuit and other precedents.  This issue plainly presents "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . ." 28 U.S.C. § 1292(b).  Accordingly, it also makes

1  no sense to proceed to the second trial pending resolution of this legal question, and

2  in fact doing so may deprive MGA of the right to ever obtain appellate review of

3  this issue given the potential damages award at stake.  Certification of an appeal

4  and stay of trial would ensure that this significant, controlling legal issue is

5  consonant with Ninth Circuit jurisprudence and would advance ultimate

6  termination of the litigation.  The last thing any of the parties needs is three trials in

7  this case.

8  **NEW FACTS AND LAW WARRANTING RECONSIDERATION**

9      **A.**    **The Summary Judgment Order.**

10      The Court's analysis in its Order on MGA's Motion for Summary Judgment;

11  Mattel's Motion for Partial Summary Judgment; Machado's Motion for Summary

12  Judgment ("Order") held that Mattel could not prove, as a matter of law, that MGA

13  had copied "*original elements*" of the Bryant Bratz drawings with respect to all but

14  six female dolls—the four first-generation Jade, Sasha, Yasmin and Cloe dolls, and

15  the later generation Ooh La La Cloe and Formal Funk Dana.  Order at 12-29

16  (emphasis original).  As to all other Bratz products, the Court granted judgment as a

17  matter of law under the Copyright Act. *Id.* at 24-29.

18      The Order expressly recognizes that the subject matter forming the basis of

19  Mattel's copyright claim also forms the basis of its trade secret claim.  The Court

20  defines the purported Bratz trade secret as the contents of the Bratz pitchbook,

21  including the drawings and brief character descriptions, as well as the dummy dolls

22  brought by Bryant to his pitch meeting with MGA.  Order at 30-31.[1]  This content

23  is exactly the same (with the exception of the Margaret Leahy sculpt) as that

24  considered by the Court in its copyright analysis.[2]  Order at 12.  Nonetheless, the

25  ─────────────
[1] Bryant took these dummy dolls back with him the same day.  They have never
26  been seen again and are not submitted as evidence in this case.  (Bryant Depo., 164:14-169:17)
[2] The Court uses the word "sculpt" in defining the trade secret but appears to be
27  referring to the dummy dolls brought by Bryant to the pitch rather than to the later
sculpts created by Margaret Leahy.  There is no question that MGA hired Leahy, an
28  independent sculptor, long after the pitch to create the sculpts.  (Dkt. #2755 (Garcia

1   Court held that the trade secret misappropriation claim is not preempted by the

2   Copyright Act, concluding that an alleged obligation *on Bryant's part* to maintain

3   the "secrecy" of the purported Bratz trade secret is an "extra element" sufficient to

4   avoid preemption.  Order at 71-72 & n.31.

5           **B.**    **The Damages Reports And Analysis.**

6        On December 1, 2010 after MGA filed its summary judgment motion, Mattel

7   served its damages expert report by Michael Wagner.  Wagner was deposed on

8   December 8 and 10, 2010.  Wagner's report and the rough transcript of his

9   deposition were subsequently filed in connection with MGA's MIL No. 1 and can

10   be found at Docket No. 9478 Exs. 71, 72.  In the report and his deposition, Wagner

11   makes clear that he has calculated a damages number for Mattel's Bratz copyright

12   claim and Bratz trade secret claim that include claims for unjust enrichment, lost

13   profits, and royalties for all Bratz products.  Wagner expressly premises trade secret

14   damages claims on elements that he acknowledged are unprotected and cannot be

15   protected under the Copyright Act.  The Court's order limits the value of the

16   purported copyright claim to approximately $28M.  Under Wagner's analysis,

17   however, the trade secret claim premised upon Bratz will remain in excess of

18   $1.1B.  Every penny and more that the Court has ruled out as a matter of law under

19   the copyright claim will still be sought by Mattel as part of its UTSA claim.

20                        **ARGUMENT**

21        The Court expressly held that Mattel's copyright claim was limited to six

22   dolls because Mattel could not prove sufficient copying of *original elements* to

23   sustain any other claim.  The import of this holding is that the rest of the Bratz

24   drawings were unoriginal and unprotectable—in short, ideas that were *already out*

25   *in the public domain*.  That was exactly the holding of the Ninth Circuit in its

26   discussion of Mattel's copyright claim.  Slip Op. at 17337-17346.  Permitting

27

28   Decl.) ¶ 12; Leahy Tr. 4128:25-4129:4; Bryant Tr. 2561:22-2562:9; 2563:23-2564:3).  Thus, such cannot be Mattel's trade secrets.

1   Mattel to recover *all of the value in Bratz* for these otherwise unprotectable ideas

2   runs directly afoul of the Ninth Circuit's prior holding and the law of this case.  *See*

3   *id.* at 17331-17333 ("It is not equitable to transfer this billion dollar brand—the

4   value of which is overwhelmingly the result of MGA's legitimate efforts—because

5   it may have started with two misappropriated names.")  This aspect of the Order

6   cannot stand.

7       Section 301(a) of the Copyright Act provides:

8           [A]ll legal or equitable rights that are equivalent to any of
            the exclusive rights within the general scope of copyright
9           as specified by section 106 in works of authorship that are
            fixed in a tangible medium of expression and come within
10          the subject matter of copyright as specified by sections
            102 and 103 … are governed exclusively by this title …
11          [N]o person is entitled to any such right or equivalent
            right in any such work under the common law or statutes
12          of any State.

13  17 U.S.C. § 301(a).  Thus, Section 301(a) sets forth two conditions for preemption.

14  First, the state law claim must assert rights regarding works that come within the

15  general scope of copyright.  Second, the rights asserted under state law must be

16  "equivalent" to the exclusive rights of copyright owners.  Where both conditions

17  are satisfied—as is the case here with Mattel's trade secret claim—a state law cause

18  of action is preempted by copyright.  *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d

19  1134, 1137-38 (9th Cir. 2006).  Part I, *infra*.

20      Moreover, whether or not a claim comes within the scope of Section 301

21  using the Ninth Circuit's governing "extra elements" test, conflict preemption must

22  also be considered.  *See e.g. Jones v. Rath Packing Co.*, 430 U.S. 519 (1977)

23  (applying conflict preemption and finding a state law preempted); *Orson, Inc. v.*

24  *Miramax Film Corp.*, 189 F.3d 377, 386 (3rd Cir. 1999) (state law conflicting with

25  copyright law overturned on conflict preemption principles).  First, mere "secrecy"

26  in asserted material contravenes Congress' intent to encompass within the federal

27  Copyright Act both published and unpublished works.  Second, the Court's ruling

28  permits Mattel to create a "borderline" state-law claim covering matter within the

scope of copyright, contravening Congress' intent in creating the federal Act. Third, the Court's ruling allows protection of the "idea" or "concept" of a copyrightable work, in direction contravention of Section 102(b) of the Copyright Act and thus cannot stand.  *See* Part II, *infra*.

## I.   SECTION 301 EXPRESS PREEMPTION APPLIES TO THE BRATZ TRADE SECRET CLAIM.

### A.   Mattel's Bratz Trade Secret Claim Covers Material That Comes Within The Subject Matter Of Copyright

As discussed above, there is no dispute that the same subject matter regarding the Bratz "concept" sketches and sculpts underlying Mattel's copyright claim is recast by Mattel as the basis of its trade secret claim.  The Court recognizes this fact in its summary judgment order.  Thus, Mattel's state-law claim asserts rights regarding works that come within the general subject matter of copyright and the first requirement for copyright preemption is met.  *See Entous v. Viacom Int'l Inc.*, 52 U.S.P.Q. 2d 1628, 1634-35 (C.D. Cal. 2001) (claim premised on defendant's unauthorized use of creative "ideas and concepts" preempted; "courts have consistently held that they fall within the 'subject matter of copyright' for purposes of preemption analysis"); *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1058 (C.D. Cal. 2000) ("ideas embodied in a work covered by the [Act] are nevertheless within the subject matter of copyright for purposes of preemption because [s]cope and protection are not synonymous").

Indeed, it is impossible to separate out what Mattel says was copyrightable from what it says is a trade secret.  As was observed by the Ninth Circuit, the prior art was full of public disclosures of the basic concept of female fashion dolls and bratty teens with "exaggerated features" such as big eyes or "oversized head and feet."  Slip Op. at 17337-17346.  The record before this Court is replete with such undisputed prior art evidence.[3]  Given the extensive prior public disclosures of such

---

[3]   *See* following materials submitted as part of the Appendix of Previously Marked Exhibits provided on the hyperlinked drives with the MSJ briefing: Ex. 4958 (slides C- 6 – C-19 and C-32 – C-35 illustrate prior art); Ex. 17246-126, 10179-134

elements, what Mattel is asserting as a trade secret is—at most—Carter Bryant's very specific implementation of these ideas which, of course, is exactly the same thing as the claimed copyrights that have been largely rejected.

### B. The Rights Asserted By Mattel In Its Trade Secret Claim Are "Equivalent" To The Rights It Asserts Under Copyright.

Section 106 of the Copyright Act confers upon copyright owners the exclusive right to reproduce, distribute and display original works of authorship, to prepare derivative works and to authorize the same. The Ninth Circuit has held:

> To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action.

*Laws*, 448 F.3d at 1143 (internal quotation marks omitted).

As an initial matter, preemption analysis does not turn merely on the ability to articulate, in the abstract, some "extra element" in a state law cause of action. Rather, as the Ninth Circuit confirms, a specific examination of the asserted theory is required, in a context, to determine whether the state law cause of action "qualitatively … *changes*" the nature of the action from a copyright claim. *Id.* (emphasis added) For example, this Court has rejected a "categorical rule" exempting all claims of a certain type from preemption, noting that "Courts have instead adopted a more fact-specific inquiry" into whether a claim asserts rights that are equivalent to those in the Copyright Act. *See Entous*, 52 U.S.P.Q. 2d at 1634-35. The summary judgment preemption ruling violates the proper mode of analysis, as it holds that trade secret claims are never preempted because such require "secrecy," but fails to examine the actual substance of what Mattel is alleging.

In this case precisely the same material and acts *by MGA* form the basis of

---

(Editions of Seventeen Magazine published in 1998 and 1999 depict advertisements for Paris Blues), Ex. 17246-115, 10179-133 (Steve Madden materials), Ex. 17246-016, 17246-017 (Cover Girl materials), Ex. 17246-126 (the Dixie Chicks materials) and Ex. 17246-193 (Coca Cola materials)

1   Mattel's copyright claim and its trade secret claim.  Indeed, the gravamen and

2   details of Mattel's claim is that MGA used and modified material that Mattel claims

3   is protected by copyright, without authorization, to create a new line of dolls and

4   that such was reproduced, distributed and sold.  Accordingly, the rights asserted by

5   Mattel under its trade secret theory are not only "equivalent" to its copyright theory,

6   but are *identical*.  Thus, the second requirement for copyright preemption is met

7   and Mattel's trade secret theory is preempted.  *See Harper & Row Publishers, Inc.*

8   *v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983), *rev'd on other grounds*, 471

9   U.S. 539 (1985) (equivalency exists if the right defined by state law may be

10  abridged by an act which in and of itself would infringe one of copyright's

11  exclusive rights)

12      **C.      "Secrecy" Is Not An Extra Element.**

13          The Court erroneously finds that while Mattel asserts precisely the same

14  material and acts as copyright infringement on the one hand and as trade secret

15  misappropriation on the other, it may avoid copyright preemption merely because

16  trade secret law requires that asserted material be "secret."  Order at 71-72.  The

17  ruling ignores that the right to maintain the secrecy of a copyrighted work is

18  expressly within the scope of Section 106 and therefore directly equivalent under

19  Section 301.  In doing so, the Court ignores that Congress intended to avoid

20  precisely the mischief put forth by Mattel in this case—namely the creation of state-

21  law rights wholly redundant of copyright law or which interfere with the

22  harmonization of copyright law achieved through the Copyright Act.  Failing under

23  its copyright theories, Mattel cannot simply point to the same material, call it

24  "secret" and emerge with a brand new, yet wholly identical state-law theory, under

25  the guise of trade secret law.  To hold otherwise is a fundamental error of law.  The

26  Court should reconsider its copyright preemption ruling and should hold that

27  Mattel's trade secret claim based on the Bratz materials is preempted.

28

1.      **The Copyright Act Specifically Governs Secret Works By Controlling The Right Of First Publication.**

The addition of a purported "secrecy" obligation on the part of Bryant to protect the Bratz work does nothing to remove the material from the ambit of copyright as pertains to MGA.  To the contrary, the concept of secret, unpublished works was expressly incorporated by Congress in the Act itself when Congress decided in the 1976 Act to remove the common law right of first publication from state regulation and make it part of the federally harmonized set of copyright act protections and limitations.

Section 106 governs *all* distributions of copyrightable subject matter.  When Congress enacted the Copyright Act of 1976, it explicitly pulled within the purview of federal copyright law the entire jurisprudence of common law copyright controlling unpublished works.  By federalizing the common law right of first publication, Congress explicitly sought to regulate the right to keep unpublished (or "secret") a copyrightable work.

Section 301 of the Act could not be clearer on this point—the Copyright Act explicitly preempts matter within the general scope of copyright "whether published *or unpublished*."  17 U.S.C. §301(a) (emphasis added).  Congress was explicit that the new federal Act was designed to encompass works in unpublished form, previously protected under state law, and to prospectively preempt state law in that regard.  The House Report on the 1976 Act stated:

> *Single Federal system.*   Section 301, one of the bedrock provisions of the bill, would accomplish a fundamental and significant change in the present law.  Instead of a dual system of "common law copyright" for *unpublished* works and statutory copyright for published works, which has been the system in effect in the United States since the first copyright statute in 1790, the bill adopts a single system of Federal statutory copyright from creation. Under section 301 a work would obtain statutory protection as soon as it is "created" or, as that term is defined in section 101, when it is "fixed in a copy or phonorecord for the first time."  Common law copyright protection for works coming within the scope of the

- 8 -

statute would be abrogated, and *the concept of publication would lose its all-embracing importance as a dividing line between common law and statutory protection* and between both of these forms of legal protection and the public domain.

H.R. Rep. No. 94-1476 at p. 129-130 (1976) (emphasis added).[4]  Congress observed that the prior regime, under which states could protect unpublished works, was "unpredictable and often unfair." *Id.* ("'Publication,' perhaps the most important single concept under the present law, also represents its most serious defect."); *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 552-53 (1985) (noting that the Copyright Act of 1976 eliminated publication as the dividing line between common law and statutory protection and that Section 106 expressly governs the right of first publication through the right of "first public distribution").

In this case, the alleged use of the purported Bratz trade secret and the invasion of right of first public distribution are exactly the same acts.  Because Congress explicitly sought in the 1976 Act to create a system of federal regulation of an author's right to control the first publication of a work—that is, to keep it secret until a specified time for distribution—this purported "extra element" is a distinction without a difference.

### 2.     The Alleged Implied Duty Upon MGA Regarding "Secret" Information Is Not An Extra Element

To the extent that cases discuss "secrecy" in preemption analysis of trade secret claims, a direct duty of secrecy and breach are required to bring such claims outside the ambit of copyright—in other words, the element of express contractual consideration is what truly distinguishes the trade secret claim from the copyright

---

[4]  Under the new federal regime, the status of a work as unpublished work took on other significance in defining the scope of protection under federal law as well. For example, under the current Act, for example, unpublished—i.e. "secret"— works are protected regardless of the nationality or domicile of the author, while published works by foreign authors are protected only under certain prescribed circumstances. *See* 17 U.S.C. §104(a)-(b).

1   claim. *See e.g. Idema v. Dreamworks, Inc. et al.*, 162 F. Supp. 2d 1129, 1194-95

2   (C. D. Cal. 2001) (trade secret claim based on alleged use of "confidential"

3   conceptual creative work was preempted; making clear that to save such a claim

4   from preemption the "secrecy" requirement would require "'disclosure' of a secret

5   in contravention of a specific duty to keep that information confidential."). There is

6   not and cannot be any allegation that MGA had any contractual confidentiality duty

7   or that it breached such a duty to Mattel. Perhaps such a claim would have been

8   viable against Bryant—though Mattel never even pled that claim against Bryant

9   before its belated purported identification of Bratz as a trade secret long after it

10  settled with Bryant for nothing and continued prosecuting its case against MGA in

11  2010.[5]

12      Moreover, even an allegation that defendant was subject to some "implied"

13  or indirect duty in this regard is insufficient to avoid preemption. Courts have

14  *repeatedly* rejected such theories as preempted. *See e.g. Del Madera v. Rhodes and

15  Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) ("[A]n implied promise not to use

16  or copy materials within the subject matter of copyright is equivalent to the

17  protection provided by section 106 of the Copyright Act"); *Entous*, 58 U.S.P.Q. 2d

18  at 1634-35 (implied promise not to use creative "concepts" preempted); *Selby*, 96 F.

---

19  [5] The suggestion of the Court's order that this belated inclusion of the theory of

20  Bratz as a trade secret caused MGA no prejudice is incorrect. The Court *expressly excluded* the Bratz as a trade secret theory in its April 2010 Order denying certain

21  aspects of Mattel's amendments. At that point, MGA reasonably relied on the belief that Bratz as a trade secret was not part of the case. The original phase 1

22  witnesses were deposed from 2004 through 2008 without regard to a Bratz as a trade secret claim that Mattel had not then identified. By the time the Court

23  permitted this claim based on purported "confirmation" of a theory that it had previously expressly rejected as part of the case, MGA had used up all of its

24  depositions and could not re-depose phase 1 witnesses regarding this new theory. Contrary to the Court's suggestion, at no time did MGA agree that Mattel was

25  entitled to engage in any looseness in its pleading of trade secrets, and the record is otherwise that MGA repeatedly sought to force Mattel to define its trade secrets and

26  that Bratz was not included. When Mattel tried to belatedly define Bratz as a trade secret, MGA objected and consistently objected. The fact that MGA was on notice

27  that Mattel was purporting to newly define Bratz as a trade secret after six years of litigation does not mean that MGA acquiesced in that revisionist history in any

28  way. MGA has been directly prejudiced by Mattel's deliberate and tactical manipulation of its purported Bratz as a trade secret claim.

1  Supp. 2d at 1061-62 ("Defendants' alleged promise not to use plaintiff's ideas does

2  not prohibit any conduct beyond that prohibited by the Copyright Act."); *Fischer v.*

3  *Viacom Int'l, Inc. et al.*, 115 F. Supp. 2d 535, 542 (D. Md. 2000) (where "the

4  gravamen of [plaintiff's] claim is that [defendant] took his ideas and used them

5  without proper compensation," the rights were preempted as "equivalent to the

6  exclusive rights protected by the Copyright Act"); *see also Ehat v. Tanner*, 780

7  F.2d 876, 877-79 (10th Cir. 1986) (unfair competition claim preempted by

8  Copyright Act where (1) plaintiff's research materials were secretly removed from

9  a colleague's office and copied, (2) the defendants, who played no role in the

10  removal, obtained an unauthorized copy of the materials and (3) defendants

11  distributed and sold a modified version of the material; court found "no distinction"

12  between the state rights asserted in the plaintiff's complaint "and those exclusive

13   rights encompassed by the federal copyright laws.").

14          **3.    Alleged Knowledge Or Intent Of MGA Regarding "Secret"**
                    **Information Is Not An Extra Element**
15

16          Because MGA had no direct contractual obligation of secrecy to Mattel, the

17  only arguable distinction between the copyright and trade secret claim is the

18  requirement that MGA "knew or should have known" that the information was

19  disclosed/acquired/used under circumstances giving rise to such an obligation on

20  Bryant's part.  Civ. Code 3426.1.  But, even an allegation that a defendant had

21  culpable "knowledge," "intent" or even "deception" regarding a relationship or

22  another's duty is not sufficient to avoid preemption for material and acts that are

23  otherwise co-extensive with a copyright claim.  *See Compco Corp. v. Day-Brite*

24  *Lighting, Inc.*, 376 U.S. 225, 237 (1964) (preemption of state law "regardless of the

25  copiers motives"); *Atrium Group de Ediciones y Publicaciones, S.L. v. Harry N.*

26  *Abrams, Inc.*, 565 F. Supp. 2d 505, 509-510 (S.D.N.Y. 2008) (claim preempted and

27  leave to plead "deception" was denied as "amending the complaint to include such

28  an allegation would be futile, because 'deception' is not the sort of element that

would cause claims for unjust enrichment or misappropriation to be "qualitatively different" from the Federal Copyright Act.")  In the context of an intentional interference claim held preempted, the Second Circuit put it succinctly:

> In both cases [of intentional interference and copyright infringement], it is the act of unauthorized publication which causes the violation. The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element. . . . The fact that cross-appellants pleaded additional elements of awareness and intentional interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental non-equivalence between the state and federal rights implicated.

*Harper & Row Publishers, Inc.*, 723 F.2d at 201; *see also Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997) (dismissing intentional interference claim; "The additional element of awareness or intent may alter the scope of the action but not its nature."); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1240 (C.D. Cal. 1987) (same); *Aargard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (same).

Moreover, such an obligation makes no sense here as a matter of law where the Ninth Circuit and this Court have repeatedly held that the contract giving rise to the purported secrecy obligation on the part of Bryant was ambiguous as to whether it covered the purported trade secret at all.  Mattel's key witnesses repeatedly admitted that Mattel did not instruct its employees that the contract covered their personal pursuits on nights and weekends.  (*See* Newcomb Depo. 223:12-225:20; Moore Depo. 336:16-337:14; Normile Depo. 70:8-73:16; Kaye Depo. 139:12-19, 140:4-9; Freed Depo. 36:6-37:25).  Whether or not the contract ultimately might be interpreted to cover the Bryant drawings, Mattel's failure to *ever* instruct its employees clearly that the contract was supposed to cover such works cannot be a reasonable effort to maintain secrecy.  It defies logic (and the law) that a work made by Bryant outside the scope of his job, of which Mattel was completely

1  unaware, and had made no general or specific instruction of secrecy, could

2  somehow be a Mattel trade secret.

3  **D.   Under Mattel's Theory Regarding MGA, There Is No Legally Sufficient Extra Element Alleged And The Authority Relied Upon By The Court Is Not To The Contrary.**

4

5  Even reading Mattel's trade secret allegations charitably, all that it asserts—

6  at most—is that MGA allegedly knew or had reason to know of Carter Bryant's

7  purported "secrecy" obligation for a personal work made outside the scope of his

8  job which was never explained by Mattel, and MGA then acquired, used or

9  disclosed the asserted "secret" material with knowledge of such an obligation.  It

10  does not matter whether what is asserted is a trade secret claim, implied breach of

11  contract, intentional interference or any other state law theory, the allegation that

12  MGA acquired and used allegedly copyrighted sketches or sculpts with knowledge

13  of an obligation of secrecy by Carter Bryant is precisely the same as saying they

14  were under an implied obligation under *Bryant's* contract to keep it secret and not

15  use it—theories that have been rejected as preempted over and over again.

16  Alleging an "implied" or indirect duty upon MGA or knowledge of such a duty by

17  Carter Bryant would be insufficient to avoid preemption given that the core of the

18  claim is simply that MGA "used" the sketches and dummy dolls Mattel asserts

19  under copyright law and that MGA reproduced, distributed and sold copies of

20  materials that allegedly infringed the same.[6]

21  None of the cases relied on by the Court in its summary judgment ruling

22  allow a contrary conclusion.  Each case involved a defendant that, unlike MGA,

23  was directly party to a contractual duty to maintain secrecy and breached that

24  contractual duty.  *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1909 (9th Cir.

25  1989) (contrary to the instant case, the plaintiff and defendant were in a direct

26  contractual relationship alleged to be breached); *Firoozye v. Earthlink Network*, 153

27  ─────────────
[6]  That Mattel is merely recasting a copyright theory as a "trade secret" claim is also suggested by the fact that Mattel settled with Carter Bryant long ago, disposing of whatever trade secret theory it might have attempted to assert against him directly.

28

1    F. Supp. 2d 1115, 1117 (N.D. Cal. 2001) (direct contractual relationship and breach

2    between plaintiff and defendant).  In fact, in *Firoozye* the court did not hold

3    generally that copyrightable content merely deemed "secret" allows the same to

4    survive as a trade secret claim.  Rather, the Court discussed the secrecy requirement

5    in the context of whether there is a violation of a direct duty of secrecy.  *See id.* at

6    1131 *quoting Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir.

7    1993) ("We agree with the Second Circuit that the breach of a duty of trust or

8    confidentiality comprises the core of actions for trade secret misappropriation

9    'supplies the 'extra element' that qualitatively distinguishes such causes of action

10   from claims for copyright infringement that are based solely on copying.'").[7]

11           There is no such relationship or duty of secrecy alleged here regarding MGA.

12   Thus, the cases and conclusions relied upon by the Court are inapposite.  Mattel

13   does not and cannot allege that MGA was directly party to any such secrecy

14   requirement or any alleged breach of secrecy.  This leaves Mattel with the bare

15   claim that MGA "used" allegedly copyrighted material and allegedly reproduced,

16   distributed and sold such material in the form of the Bratz dolls, with knowledge of

17   Carter Bryant's obligation or under some "implied" or indirect duty not to use the

18   material.  As with the defendant in *Ehat v. Tanner*, 780 F.2d 876, 877-79 (10th Cir.

19   1986), such would be insufficient to avoid preemption given that the core of the

20   claim is simply that MGA "used" the sketches and sculpts Mattel asserts under

21   copyright law and reproduced, distributed and sold copies of materials allegedly

22   infringing the same.  It is well-settled that such claims are preempted.  *See Del*

23   *Madera*, 820 F.2d at 977; *Entous*, 58 U.S.P.Q. 2d at 1634-35; *Selby*, 96 F. Supp. 2d

24   at 1061-62 ; *Fischer*, 115 F. Supp. 2d at 542.

25

26

27

28

---

[7]   Beyond these two cases, the Court rests its conclusion on a general citation to broad swathes of the Nimmer treatise, which is of course not controlling authority.

**E.  Congress Intended That Section 301 Avoid The Creation Of "Borderline" Rights Of The Type Created Under Mattel's Theory And Adopted In The Court's Summary Judgment Order.**

When Congress adopted Section 301 of the Copyright Act, preempting state rights that overlap with copyright, its intent was to implement preemption in "the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation … and to avoid the development of any vague borderline areas between State and Federal protection."  H. Rep. No. 94-1476 at p. 130 (1976).  It is for the same reason that the Ninth Circuit focuses not on labels contriving extra "elements," but rather on the substance of how a state law claim is alleged and whether such qualitatively changes the nature of an action from a copyright claim. To understand the "extra elements" test as anything short of this ignores Congressional intent.  *See* H. Rep. 94-1476 at p. 131 ("Regardless of when the work was created and whether it is published *or unpublished*, disseminated or undisseminated, in the public domain or copyrighted under the Federal statute, the States cannot offer it protection equivalent to copyright.") (emphasis added)

Here, Mattel's "trade secret" theory and the Court's summary judgment ruling on preemption are contrary to Congress' intent.  The ruling creates a framework in which Mattel may reassert the same material and acts underlying its copyright claim, merely by specifying that the material is "secret" and that MGA allegedly "used" it.  This creates a "borderline" claim  regarding unpublished copyright works, under the guise of a California state trade secret statute.  Congress intended that such theories are preempted by the Copyright Act.  The Court should reconsider its ruling and hold that Mattel's trade secret claim is preempted.

**II.  ALLOWING MATTEL'S CLAIM TO PROCEED MERELY BASED ON "SECRECY" OF THE ASSERTED MATERIALS CONFLICTS WITH THE STATUTORY OBJECTIVE AND IS THUS SUBJECT TO CONFLICT PREEMPTION.**

Beyond express preemption under Section 301 of the Copyright Act, the Court's ruling that mere secrecy of materials underlying a copyright claim, may

1   allow the same theory to be alleged under trade secret law is subject to "conflict"

2   preemption.  Conflict preemption applies where a state law is not facially

3   inconsistent with the federal statute but nevertheless conflicts directly with, or

4   stands as an obstacle to, the accomplishment of federal statutory objectives.  *See*

5   *Jones v. Rath Packing Co.*, 430 U.S. 519 (1977) (applying conflict preemption and

6   finding a state law preempted; "[o]ur task is 'to determine whether under the

7   circumstances of this particular case, (the State's) law stands as an obstacle to the

8   accomplishment and execution of the full purposes and objectives of Congress.'");

9   *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 386 (3rd Cir. 1999) (state law

10  that purported to define the manner of distribution of copyrighted material

11  overturned based on conflict preemption principles).

12      The federal copyright and patent law is "the supreme law of the land. . . .

13  When state law touches upon the area of those federal statutes, it is 'familiar

14  doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by

15  state law." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229 (1964) (citations

16  omitted).  Just as a "State cannot encroach upon the federal patent law directly," *id*.

17  at 231, it may not encroach upon federal copyright law.  *See Goldstein v.*

18  *California*, 412 U.S. 546 (1973) (with respect to copyright laws, a State may not

19  "[attempt] to protect that which Congress intended to be free from restraint or to

20  free that which Congress has protected").  Therefore, a state law which safeguards

21  or injures property rights protected by the federal Copyright Act is preempted.

22      At the hearing on the summary judgment motion, Mattel argued that the

23  Supreme Court's decision in *Kiwanee* evinced its intention that trade secret claims

24  could stand in the face of potentially conflicting federal law.  *Kiwanee Oil Co.  v.*

25  *Bicron Corp.*, 416 U.S. 470 (1974).  But *Kiwanee* did not consider the issue here,

26  and in fact the Supreme Court's decision in *Dastar* is far more apposite to these

27  circumstances and compels the contrary conclusion.  In *Dastar*, the Court held that

28  even another *federal* statute—the Lanham Act—must be construed to avoid a

- 16 -

conflict with Copyright Act limitations.  In that case, a party attempted to extend Lanham Act protection to cover matter within the scope of copyright, but which was no longer protected by copyright, on the theory that the complaining party should have received attribution as the originator of the work and the lack of attribution caused confusion.  The Supreme Court rejected this assertion, observing that:

> the problem with this argument according special treatment to communicative products is that it causes the Lanham Act to conflict with the law of copyright, which addresses that subject specifically.

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-35 (U.S. 2003) (citations omitted) ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying"; "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright.").  The Court held that the public possesses the "[t]he right to copy, and to copy without attribution" material that was no longer subject to copyright (such as the unprotectable concepts and ideas asserted by Mattel in this case).  When the Supreme Court went out of its way to construe another federal statute to harmonize with Copyright Act limitations in *Dastar*, it made clear that the preemptive force of such limitations must be accorded full effect.

### A.  The Reasoning Of The Court's Order Conflicts With Congress' Objective Of Harmonizing State Law Regarding Unpublished Works In A Single Federal Copyright Act

Here, to allow a state trade secret claim to proceed based on precisely the same unpublished "secret" works underlying the copyright claim and where Mattel's theory is simply the asserted "use" by MGA of such allegedly copyrighted material, would conflict directly with the Copyright Act.  If plaintiffs were able to repackage copyright claims for unpublished works in this manner under state law, it would most certainly stand as an obstacle to the purpose of the Copyright Act,

1    which was intended to bring uniformity and harmonize disparate federal and state

2    copyright regimes through a single federal Act.  In this regard, Congress was

3    unequivocal and direct in its articulation of the Act's purpose:

> By substituting a single Federal system for the present anachronistic, uncertain, impractical, and highly complicated dual system, the bill would greatly improve the operation of the copyright law and would be much more effective in carrying out the basic constitutional aims of uniformity and the promotion of writing and scholarship.

8    H.R. Rep. No. 94-1476 at p. 129 (1976).

9          If Mattel's "trade secret" claim were allowed to proceed under the

10   preemption analysis set forth by the court in its summary judgment ruling, the same

11   state law patchwork regarding unpublished works that the Copyright Act of 1976

12   brought to an end would be reborn.  The conflict with the statutory objectives is

13   obvious.  Accordingly, the Court should reconsider its copyright preemption ruling

14   and hold that Mattel's trade secret claim is preempted.

### B.   The Order Conflicts With Congress' Objective Of Section 102(b) Which Denies Protection To "Concepts" Or "Ideas" For Copyrighted Works.

17         Moreover, the analysis put forth by Mattel and adopted by the Court in its

18   Order would directly conflict with Section 102(b) of the Copyright Act.  Section

19   102(a) defines the substance of that which is copyrightable.  Section 102(b)

20   specifies that an "idea" or "concept" for a copyrighted work is *not* protectable.

21   That does not merely mean that such is unprotected under copyright, it means that

22   *states cannot enact laws which protect such material*.  Courts have repeatedly

23   recognized this fact in preempting state law claims directed at ideas or concepts in

24   copyrighted works.  *See Selby*, 96 F. Supp. 2d at 1058 ("ideas embodied in a work

25   covered by the [Act] are nevertheless within the subject matter of copyright for

26   purposes of preemption because [s]cope and protection are not synonymous");

27   *Entous*, 52 U.S.P.Q. 2d at 1634-35 (same).

28

Here, Mattel doesn't assert just any idea or concept as the basis of a trade secret claim—it asserts specifically than an *idea for a copyrighted work is at issue and that mere use of it leads to liability under state law.*  In other words, Mattel attempts to protect under state law precisely the type of idea or concept that is within the subject matter of copyright, yet Congress intentionally deemed uncopyrightable under Section 102(b).  Congress struck a careful policy balance when it enacted Section 102(b), to avoid overprotecting ideas and concepts underlying creative works and expressly directed that protection could not be broadened under state law:

> As long as a work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain.

H.R. Rep. No. 94-1476 at p. 131 (1976).

Having lost under copyright in its attempt to claim the "concept" or "idea" underlying Carter Bryant's sketches and sculpts, Mattel cannot now say that this same material is protectable under state trade secret law and thereby resurrect its unlawful, billion-dollar constructive trust over the entire Bratz brand.  Congress "prevents the States from protecting" such ideas or concepts.

## III.   ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS RULING REGARDING COPYRIGHT PREEMPTION FOR IMMEDIATE INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(B).

A district court has discretion to certify an interlocutory order for immediate appeal when, as here, the order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  *See* 28 U.S.C. § 1292(b).  All three of these requirements are met.

### A.    The Preemption Ruling Presents Controlling Issues Of Law.

To show a "controlling" issue of law under 28 U.S.C. § 1292(b), the moving

1   party need not show that a reversal of the interlocutory order in question would

2   automatically terminate the litigation. *See In re Cement Antitrust Litig.*, 673 F.2d

3   1020, 1026 (9th Cir. 1982) *aff'd* 459 U.S. 1190 (1983). Instead, "[a]ll that must be

4   shown for a question to be 'controlling' is that resolution of the issue on appeal

5   could materially affect the outcome of litigation in the district court." *Id.* In this

6   case, there is little question that the Court's preemption ruling presents controlling

7   issues of law regarding the proper legal framework for evaluating the legal

8   sufficiency of Mattel's trade secret claim and the application of that framework to

9   the facts presented at the court trial.

10       In particular, the Court's ruling that mere "secrecy" of information is

11  sufficient to bring information outside the ambit of copyright preemption is such a

12  controlling issue. MGA respectfully submits that the focus on whether information

13  was "secret" was a misapplication of the copyright preemption principles, is

14  inconsistent with the Copyright Act, Congress' intent and the Supremacy Clause.

15  An interlocutory appeal will help resolve the issue of whether mere secrecy of

16  material within the subject matter of copyright, where a defendant has no direct

17  relationship with plaintiff or breach of any secrecy requirement, can survive as an

18  independently actionable trade secret claim.

19       Courts have found certification appropriate when, as here, resolution of the

20  issues in the appeal could establish a significant precedent for future cases. *See*

21  *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990). This is such an

22  issue. Indeed, the Ninth Circuit is currently considering a very closely analogous

23  issue in *Montz v. Pilgrim Films & Television et al.* (9th Cir. Docket No. 08-56954).

24  There, a copyright claim recast as a state law theory directed at a creative concept—

25  such as Mattel's trade secret claim here—was found preempted by a Ninth Circuit

26  panel and the issue is presently under consideration *en banc*. Oral argument was

27  held on December 16. Given that the Ninth Circuit is currently considering a

28  closely related matter, certification of the issue for consideration in conjunction

with *Montz* would not only establish significant precedent, but would ensure that the outcome is consonant with Ninth Circuit jurisprudence and would advance ultimate termination of the litigation.

**B.     The Preemption Ruling Involves Questions Reasonably In Dispute.**

The Court's order easily satisfies the second requirement for interlocutory certification under 28 U.S.C. § 1292(b), that "there [be] substantial ground for difference of opinion …" This requirement is satisfied when, as here, the issue is "difficult and of first impression." *Klinghoffer*, 921 F.2d at 25; *see also Eagan v. CSX Transportation Inc.,* 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003) (requirement met where "the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decision."). There have been no cases where a plaintiff alleged a copyright claim, then replead precisely the same material and acts as a trade secret claim, on the bare basis that the material was allegedly "secret." The closest analogue are cases involving allegations of implied contractual duties not to use material, such as that under consideration by the Ninth Circuit in the *Montz* matter. Given that the issue in the Court's summary judgment ruling has not been addressed specifically by any appellate court and is presently under *en banc* consideration by the Ninth Circuit, the matters at hand are reasonably in dispute.

**C.     Certification Of An Interlocutory Appeal And A Stay Of Trial Pending Resolution Of That Appeal Will Expedite The Ultimate Resolution Of This Case.**

Finally, the Court's order on copyright preemption satisfies the final element of interlocutory certification under 28 U.S.C § 1292(b) because "immediate appeal from the order may materially advance the ultimate termination of the litigation…" The copyright preemption issue satisfies this requirement because a reversal on the preemption issue would lead to an earlier termination of this case. An interlocutory appeal would provide clarity on the scope of matters to be tried and would prevent the necessity of later appeal and retrial. Moreover, given that the error in the

1   Court's preemption ruling could potentially lead to Mattel's resurrection of its

2   $1.1B claim lost on copyright, if interlocutory appeal is not permitted now, MGA

3   may not be able to afford an appeal at a later date.

4          Upon certification, the court may also stay proceedings pending appeal, and

5   the decision to issue such a stay is within the discretion of the Court.  *See* 28 U.S.C.

6   § 1292(b); *Mediterranean Enters. v. Ssangyoung Corp.*, 708 F.2d 1458, 1465 (9th

7   Cir. 1983).  Here a stay is warranted, because MGA is likely to succeed on the

8   merits and because MGA would be irreparably injured if Mattel were successful on

9   its billion dollar claim predicated on an unlawful trade secret theory that has been

10  excluded under the Copyright Act in apparent contravention of the law of this case

11  and for which MGA likely would never be able to afford a right of appeal.  Indeed,

12  all parties have an interest in the appropriate resolution of this issue on appeal, to

13  avoid future retrial and conserve resources of the Court and the parties.  Further, the

14  public interest is served by a stay given that it will result in clarification of an

15  important legal issue that the Ninth Circuit is already examining, and given that the

16  Court's current ruling contravenes Congress' intent.  For these reasons, the Court

17  should stay the case pending outcome of the appeal.  *See Ass'n of Irritated*

18  *Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008)

19  (granting stay of action pending interlocutory appeal on ground that resolution of

20  the issue "would alter the direction of the current proceedings" and to deny stay

21  "would be a waste of judicial and party resources to proceed with the other claims

22  while the appeal is pending")

23         The preemption issue is ripe for an immediate appeal, and there is no benefit

24  in terms of judicial efficiency to postponing MGA's appeal until final judgment or

25  proceeding with the case until this critical issue of law is resolved on appeal.  To

26  the contrary, at best that would result in excessive inefficiency and seriatim retrial

27  of these matters even if MGA survived such a judgment.  The last thing any of the

28  parties needs is three trials of this case.

1

**CONCLUSION**

2        For the foregoing reasons, MGA respectfully requests that the Court

3    reconsider its December 27, 2010 preemption ruling and order that Mattel's trade

4    secret claims regarding Bratz are preempted by copyright law.  In the alternative,

5    MGA requests that the Court certify the Court's ruling regarding copyright

6    preemption for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

7

8    Dated:  January 1, 2011              Respectfully submitted,

9                                        ORRICK, HERRINGTON & SUTCLIFFE LLP

10                                       By:  _____ */s/ Annette L. Hurst* _____
                                                     Annette L. Hurst
11                                       Attorneys for MGA ENTERTAINMENT, INC.,
                                         MGA ENTERTAINMENT HK, LTD., MGA de
12                                       MEXICO, S.R.L. de C.V., and ISAAC LARIAN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28