SACV 04-9049 DOC - 12/20/2010 - Volume I

1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3      **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                  - - - - - - -

5    CARTER BRYANT,                    )
                                       )
6              Plaintiff,              )
                                       )
7         vs.                          ) No. SACV 04-9049 DOC
                                       )        Volume I
8    MATTEL, INC.,                     )
                                       )
9              Defendant.              )
     _____)

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14          Motion to Disqualify Glaser Weil Firm

15                Santa Ana, California

16              Monday, December 20, 2010

17

18

19

20   Debbie Gale, CSR 9472, RPR
     Federal Official Court Reporter
21   United States District Court
     411 West 4th Street, Room 1-053
22   Santa Ana, California 92701
     (714) 558-8141
23

24   04cv9049 Mattel 2010-12-20 V1

25

Case 2:04-cv-09049-DOC-RNB   Document 9597   Filed 01/06/11   Page 2 of 21   Page ID #:285565
SACV 04-9049 DOC - 12/20/2010 - Volume I

2

1    **APPEARANCES OF COUNSEL:**

2

     FOR INTERVENER DEFENDANT MGA ENTERTAINMENT, INC.:

3
               ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
4              BY:  THOMAS S. McCONVILLE
                    Attorney at Law
5              4 Park Plaza
               Suite 1600
6              Irvine, California 92614
               (949) 567-6700
7
               - AND -
8
               ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
9              BY:  ANNETTE L. HURST
                    Attorney at Law
10             405 Howard Street
               San Francisco, California 94105
11             (415)773-5700

12

13
     FOR DEFENDANT MATTEL, INC.:

14
               QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
15             BY:  JOHN QUINN
                    WILLIAM PRICE
16                  MICHAEL ZELLER
                    SCOTT L. WATSON
17                  Attorneys at Law
               865 South Figueroa Street
18             10th Floor
               Los Angeles, California 90017
19             (213) 443-3000

20

21

22

23

24

25

SACV 04-9049 DOC - 12/20/2010 - Volume I

3

**APPEARANCES OF COUNSEL (Continued):**

1

2  FOR CARLOS GUSTAVO MACHADO GOMEZ:

3           LAW OFFICES OF MARK E. OVERLAND
            by:  MARK E. OVERLAND
4               Attorney at Law
            100 Wilshire Boulevard
5           Suite 950
            Santa Monica, California 90401
6           (310) 459-2830

7           -AND-

8           SCHEPER KIM & HARRIS LLP
            BY:  ALEXANDER H. COTE
9               Attorney at Law
            601 West 5th Street
10          12th Floor
            Los Angeles, California 90071
11          (213) 613-4660

12

13  ALSO PRESENT:

14          GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
            BY:  PATRICIA GLASER
15              Attorney at Law
            10250 Constellation Boulevard
16          19th Floor
            Los Angeles, California 90067
17          (310) 553-3000

18

19  REPRESENTING GLASER WEIL FINK JACOBS HOWARD & SHAPRIO LLP:

20          COOPER, WHITE & COOPER LLP
            BY:  STEPHEN KAUS
21              Attorney at Law
            201 California Street
22          17th Floor
            San Francisco, California 94111
23          (415) 433-1900

24

25

1

## I N D E X

2  **PROCEEDINGS**                                    **PAGE**

3  Hearing on Motions                                    5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:04-cv-09049-DOC-RNB  Document 9597  Filed 01/06/11  Page 5 of 21  Page ID #:285568
SACV 04-9049 DOC - 12/20/2010 - Volume I

5

1              **SANTA ANA, CALIFORNIA, MONDAY, DECEMBER 20, 2010**

2                               **Volume I**

3                            (11:01 a.m.)

4              THE COURT:  Well, Counsel, then, on the Mattel-MGA

5      matter, come up and be seated.  I'll get some documents from

6      the back and then we'll get started.

7                   *(Pause in the proceedings at 11:01 a.m.)*

8                   *(Proceedings resumed at 11:31 a.m.)*

9              THE COURT:  We're on the record in Mattel v. MGA.

10             And, Counsel, once again, just your appearance for

11     the record.

12             MR. QUINN:  John Quinn.

13             MR. PRICE:  William Price, Your Honor.

14             MR. ZELLER:  Good morning, Mike Zeller.

15             MS. HURST:  Annette Hurst, Your Honor.

16             MS. GLASER:  Patricia Glaser.

17             MR. KAUS:  Stephen Kaus.  I represent the Glaser

18     firm.

19             MR. OVERLAND:  Good morning.  Mark Overland and

20     Alex Cote.

21             THE COURT:  Thank you very much.

22             I've had a brief discussion with counsel, and I'll

23     memorialize that discussion.

24             I'm going to take argument in just a moment on the

25     scope of the *Kirk* decision in California and whether it

 1    requires the disqualification of the Glaser Weil law firm.

 2            But, Counsel, I've read the case.  I'd appreciate

 3    it if you keep the arguments short concerning the case, so

 4    you make your record.  And then I want to go *in camera* with

 5    both parties.  I'd already indicated to the parties I'd be

 6    asking the following questions:

 7            Concerning MGA, I would like to first hear some

 8    representations about the individual that was retained.

 9    According to Mattel, that person previously worked on the

10    other side of this case, as well as on a related matter.

11            I then would like to have that person placed under

12    oath *in camera*.  I'm going to be asking the individual what

13    they recall concerning their work on behalf of Mattel.  I'm

14    going to ask that person if they recall talking to anyone at

15    Quinn Emanuel who worked on this lawsuit, and if they've

16    spoken to anyone at the new law firm about this lawsuit --

17    and that means "anyone," not simply counsel of record -- on

18    any other Mattel matter that they'd previously worked on.

19            I'm going to be asking the question, initially

20    *in camera*, of the Glaser firm about whether there's a

21    disqualification of the law firm; if that ensued, if there's

22    a way to allow Ms. Glaser to stay on this case as, what I'm

23    going to refer to as a "free agent," and if there's any

24    reason that Ms. Glaser cannot obtain administrative support,

25    like the help of associate attorneys and other related

1    assistance, from Ms. Hurst's law firm.

2            Concerning the *in camera* with Mattel, I'm going to

3    be asking Mattel the following questions:

4            I'd like to hear more details about the scope of

5    this individual's work for you on the lawsuit, including

6    time records, as well as the related Mattel case.  And if

7    you have time sheets, once again, I'd like to see those.

8            I'm going to ask also, although I think I know the

9    answer -- it'll be Pavlovian -- if it would be possible to

10   disqualify the law firm of Glaser Weil but allow Ms. Glaser

11   to stay on as sort of a free agent, and if there's any

12   reason that she can't obtain administrative support.  But I

13   think Mattel has taken the position this is fatal.

14           Last thing, I'll say to both parties, I think it's

15   an extraordinary remedy when one of the parties isn't

16   allowed to have counsel of choice; but, of course, Mattel

17   may be right, if there's too much information that's been

18   passed and if this person has been hired pursuant to the --

19   interim.

20           Now, finally, this case has gone on for some

21   significant period of time.  I think the filing was in 2006.

22           So, Counsel, if you want to address me briefly on

23   the *Kirk* decision, then we'll move *in camera* with MGA.

24           MR. QUINN:  Thank you, Your Honor.

25           If I could ask -- last night we filed a reply

 1    brief.  I didn't know whether the Court has had a chance --

 2              THE COURT:  Haven't seen it yet.

 3              MR. QUINN:  Okay.

 4              THE COURT:  I'll take my time and read it today --

 5    tonight.

 6              MR. QUINN:  Thank you, Your Honor.

 7              Well, I'll begin at the end, then, in the *Kirk*

 8    decision.  I think the Court is pretty clear at the end,

 9    where it sums up the Court's decision, and the Court says.

10              "In sum, we have concluded that when a tainted

11    attorney moves from one private law firm to another, the law

12    gives rise to a rebuttable presumption of imputed knowledge

13    to the law firm, which may be rebutted by evidence of

14    effective ethical screening.  However, if the tainted

15    attorney was actually involved in the representation of the

16    first client and switches sides in the same case, no amount

17    of screening will be sufficient, and the presumption of

18    imputed knowledge is conclusive."

19              Now, the Court's read the case.  I won't belabor

20    it.  This involved a lawyer who never represented anyone.

21    He has a 17-minute telephone conversation while he's

22    employed by an insurance company.  He never represented

23    anyone in the underlying case.  He then goes to work at a

24    law firm.  And there's the group of attorneys that represent

25    the insurance companies, who then join that firm, which

Case 2:04-cv-09049-DOC-RNB  Document 9597  Filed 01/06/11  Page 9 of 21  Page ID #:285572
SACV 04-9049 DOC - 12/20/2010 - Volume I

9

1    raises an issue about whether that firm is actually

2    conflicted.

3           The important points, I think, Your Honor, are the

4    first attorney never worked on the case, had a 17-minute

5    conversation, was undisputed that confidential information

6    was imparted, but it's a very different circumstance.  By

7    the time of the appeal, that attorney who had the 17-minute

8    conversation was gone and had left.

9           I think the Court is pretty clear that it's

10   leaving intact the rule of the *Henrikson* case that, as it

11   termed it, there is an absolute rule -- absolute rule --

12   that ethical walls are not sufficient, and vicarious

13   disqualification is mandatory where you have a

14   nongovernmental attorney.

15          We have a different, more liberal rule for

16   governmental attorneys who switches side on law firms.  You

17   don't get into how much work was done.  You don't get into

18   what was done.  If the attorney did work in our cases,

19   where, you know, it was only four-tenths of an hour or two

20   hours -- we cite this in our reply brief -- then

21   disqualification is automatic.

22          I would also, finally, Your Honor, call the

23   Court's attention to Footnote 37 in the *Kirk* decision where

24   the Court says that -- it goes to some pains to say that it

25   was not changing the rule it had recognized in the *Mezna*

1    *(phonetic)* case, where they had concluded the court -- the

2    trial court -- or, I'm sorry -- the Court of Appeals

3    concluded that the trial court did not abuse its discretion

4    in disqualifying the law firm representing the plaintiff,

5    even though the tainted attorney had left the firm before

6    the disqualification motion was granted.  And they said that

7    that doesn't matter.  "You had an attorney who worked,

8    switched sides."  Even though the attorney is then gone,

9    that holding remains intact.

10        The Court went out of its way in Footnote 37 to

11   make that clear.  And they highlighted the fact that this is

12   kind of, in effect -- not the Court's words, but it's kind

13   of, in effect, a self-inflicted wound because they brought

14   in someone who had worked for the other side.  And the Court

15   said, in such egregious circumstances, quote/unquote, you

16   know, the disqualification was appropriate.  And that wasn't

17   present in this case.

18        And finally, Your Honor, I would conclude by

19   saying that counsel for the Weil firm agrees with what I've

20   just said because, in his treatise, which we quote in our

21   reply brief, they -- he interprets the *Kirk* as saying -- and

22   I quote from counsel's treatise -- "Under *Kirk*, screening

23   may be a viable solution, except in a situation where a

24   tainted attorney was actually involved in the prior

25   representation and switches sides in the same case.  In that

Case 2:04-cv-09049-DOC-RNB   Document 9597   Filed 01/06/11   Page 11 of 21   Page ID #:285574
SACV 04-9049 DOC - 12/20/2010 - Volume I

11

1    instance, no amount of screening will be sufficient."  That

2    is Mr. Tufts' understanding of the rule of the *Kirk* case.

3            Thank you, Your Honor.

4            THE COURT:  Thank you very much.  You'll have

5    another opportunity, of course.

6            Counsel.

7            MR. KAUS:  May it please the Court, the section --

8    I should start with Mr. Tufts' treatise.  If the Court reads

9    the entire article that was attached to the reply brief

10   filed by the Quinn firm, the Court will see that what the

11   article discusses is that *Kirk* is at the forefront of a

12   change of law in California -- what appears to be a change

13   of law.

14           And that when one talks about switching sides,

15   when one talks about being -- switching from one side to the

16   other, the section that Mr. Quinn read from the *Kirk* case

17   cites to *Henriksen* and *Meza*, which are both cases where the

18   attorneys did a substantial amount of work and were clearly

19   involved in the defense of the actual case where the

20   disqualification occurred.

21           There's also a line of cases starting with a

22   federal case called *Silver Chrysler*, and continuing through

23   the *Ochoa* case in California and other cases where, if a

24   person's involvement is peripheral and attenuated -- they're

25   not part of the trial team, they are not really involved in

Case 2:04-cv-09049-DOC-RNB   Document 9597   Filed 01/06/11   Page 12 of 21   Page ID #:285575
SACV 04-9049 DOC - 12/20/2010 - Volume I

12

1    the case -- that that does not count as switching sides.

2    And that is what the Court needs to determine today about

3    the Glaser firm.

4          Ms. Basinger was not part of the trial team.  She

5    worked as an associate in the firm.  She worked on matters

6    for the same client, but does not recall working on this

7    case, does not believe she did anything significant on this

8    case, has no confidential information.  And I guess we'll

9    see what the testimony amounts to.

10          But from reading the papers, including the reply

11    brief that was filed yesterday, it's just not clear -- it

12    seems very carefully worded to try to maximize something

13    that did not occur.  And the Court will have to hear the

14    testimony and determine that.

15          The *Kirk* case, of course, wasn't written in a

16    vacuum.  The *Kirk* case draws on the *Speedee Oil* case from

17    the California Supreme Court, where it left open exactly

18    this kind of a door to an ethical wall where there's been

19    attenuated contact by the attorney coming to the firm, as

20    well as, Judge Kozinski -- Chief Judge Kozinski's opinion in

21    the *County of Los Angeles* case, where he draws that

22    conclusion from *Speedee Oil*, and he finds that an ethical

23    wall could be appropriate, and was appropriate, in a case

24    where there was possible exposure to confidential

25    information.

1       And, of course, in *Kirk*, while it's true that the

2   phone conversations were brief, that really wasn't an issue

3   in the case.  The confidential information was exchanged.

4   It was conceded that confidential information relevant to

5   the case was exchanged in those phone conversations.  They

6   were seeking to hire the man as an expert, and they told him

7   what the case was about from their point of view.  So they

8   were 17 very concentrated minutes.  And the Court, of

9   course, sent it back to -- for the trial court to determine

10   if an ethical screening was appropriate.

11       So California has been always in the forefront of

12   ethical screens.  It has existed for public employees,

13   people leaving public employee service.  It exists for

14   judges and magistrates.  It exists for nonprofit law firms.

15   It exists for -- everything really, except private

16   attorneys.  And it seems clear that the trend in the

17   country -- the Restatement Section 124 indicates that there

18   should be a screen "when there is no substantial risk that

19   confidential information of the former client will be used

20   with material adverse effect on the former client because

21   any confidential client information communicated to the

22   personally prohibited lawyer is unlikely to be significant

23   in the subsequent matter."

24       And that's the burden that -- we don't think that

25   the Mattel side can carry the burden.  It's their burden of

Case 2:04-cv-09049-DOC-RNB  Document 9597  Filed 01/06/11  Page 14 of 21  Page ID #:285577
SACV 04-9049 DOC - 12/20/2010 - Volume I

14

1   showing that anything that Ms. Basinger knows would be

2   significant in this case right here.  And if that is the

3   case, this Court should allow a properly constructed ethical

4   wall to permit the Glaser firm to continue.

5           And this is a properly constructed ethical wall.

6   Ms. Basinger was asked who she represented.  She identified

7   Mattel.  She immediately was walled off from physical

8   contact, physical proximity to where this case was being

9   worked on.  She was instructed not to talk to anyone about

10  it.  Other people were instructed not to talk to her.  It

11  was clear that discipline, including termination, could

12  result from any breach of that.  And that is exactly the

13  kind of ethical wall -- and it hasn't been criticized --

14  it's exactly the kind of ethical wall that needs to be

15  erected in order to allow a firm to continue to represent a

16  client.

17          The last thing I would say is the policy arguments

18  of *Kirk* are clear and they should come into play in this

19  case.  Lawyers move these days much more than they did in

20  the past, not just government attorneys, but in private

21  practice.  And if people are to get their attorney of choice

22  and if attorneys are continuing to have mobility, then some

23  kind of ethical screening has to be invoked in order to

24  allow a firm to continue where there's a peripheral and

25  attenuated contact by an attorney.  There's no good reason

Case 2:04-cv-09049-DOC-RNB   Document 9597   Filed 01/06/11   Page 15 of 21   Page ID
#:285578
SACV 04-9049 DOC - 12/20/2010 - Volume I

15

 1  to have a different rule today for public employees and for

 2  private attorneys.

 3          When the Court reviews the reply brief that was

 4  filed, the Court will note that there are references to

 5  isolated facts from individual cases.  All I can say -- I'm

 6  not gonna go through my laundry list of each case and how

 7  they're distinguishable.  But the cases where there are

 8  short contacts in terms of time are cases where the

 9  information was conceded to be confidential or was held to

10  be particularly significant.

11          The cases where it wasn't representation on the

12  same case, or virtually identical cases -- for example, in

13  one case, there were multiple Workers' Comp cases.  They

14  weren't the same case, but the way the insurance company

15  handled Workers' Comp cases was at issue in each of the

16  actions.  Those are distinguishable from this case where I

17  believe the Court will find that Ms. Basinger was involved

18  in unrelated litigation, that there's no substantial

19  relationship, and that her peripheral and attenuated

20  activities relative to this case do not justify depriving

21  MGA of its attorney of choice.

22          Thank you.

23          THE COURT:  Counsel, thank you.

24          Counsel on behalf of Mattel, Mr. Quinn.

25          MR. QUINN:  Thank you, Your Honor.

 1          Your Honor, counsel is candidly arguing for a

 2     change in the law.  He's telling us what the trend is.  He's

 3     telling us there are no reasons to treat private lawyers

 4     different than public lawyers.  He's making policy

 5     arguments.  And I can respect a square argument for a change

 6     in the law, but we should recognize that is what counsel is

 7     arguing for.

 8          If this Court were to permit the Glaser firm to go

 9     forward after Ms. Basinger has worked on this case at the

10     Quinn Emanuel firm, and has now joined the Glaser firm as an

11     un-equity partner, it would be the first court in California

12     that I know of that has permitted that.  There is no -- I

13     underline that -- no case law support in California,

14     whatever the rule may be in other states.

15          Since the *Kirk* decision, which, as I indicated

16     before, is a different circumstance -- since that was

17     decided, two federal district courts -- in *Glaxco (sic),* in

18     this court, the Central District, and in *Openwave* in the

19     Northern District -- have declined to follow it, in the

20     circumstances of those cases, to find that a screen, an

21     ethical wall, immunizes a claimed conflict in those cases.

22          The *Ochoa* case does not stand for the proposition

23     that some type of peripheral and attenuated involvement does

24     not give rise to a conflict.  In that case, the conflicted

25     attorney did not bill any legal services at all in the

 1    underlying matter.  It was other persons in the firm who had

 2    done the work.

 3            There is no rule -- under the existing law,

 4    there's no basis for this Court to get into deciding was

 5    this peripheral, was it attenuated, was it important, was it

 6    not important.  No.  Under the square case law, if they

 7    worked on the case, even if it was only for a very brief

 8    period of time -- the *City and County of San Francisco* case,

 9    the entire City Attorney's Office was conflicted because an

10    attorney had spent four-tenths of an hour reviewing a

11    contract in a related case.

12            In the *Pound* decision, a one-hour meeting with

13    counsel for the opposing party three years earlier was

14    enough to disqualify the whole firm.

15            *Kirk v. American Title,* we discussed that.  It's a

16    17-minute phone conversation.

17            So, Your Honor, I submit, under the law, under

18    precedent, there's simply -- that disqualification is

19    automatic in this circumstance.

20            THE COURT:  Counsel?

21            MR. KAUS:  Your Honor, the new content of what

22    Mr. Quinn said is that *Kirk* is a change in the law.  I think

23    that the Court has to recognize that the *Glaxo* case, by

24    Judge Pfaelzer, was decided before the California Supreme

25    Court, not only declined to hold a hearing in the case, but

Case 2:04-cv-09049-DOC-RNB   Document 9597   Filed 01/06/11   Page 18 of 21   Page ID #:285581
SACV 04-9049 DOC - 12/20/2010 - Volume I

18

 1    also declined a request to de-publish.  And that, obviously,

 2    is not a holding, but it's a strong indication that the

 3    California Supreme Court was happy to let *Kirk* stand.

 4            And then one has to look at what *Kirk* says.  And

 5    what *Kirk* says is that one has to look at each individual

 6    case.  And if the Court reads all these cases, as I have had

 7    the privilege of doing over the last week, they are all over

 8    the lot.  Every case is different.  Every case has a

 9    different combination.

10            And the finding this Court has to make is whether

11    Ms. Basinger's activities at Quinn Emanuel are material to

12    this case, which means there was significant confidential

13    material on this case or there were things in other cases

14    that were of critical importance -- is what the *Fremont* case

15    says -- to the case at hand.

16            And if, rather, the Court finds that it was

17    attenuated, that it was "peripheral" -- the word *Silver*

18    *Chrysler* uses -- then -- and a properly constructed ethical

19    wall is sufficient -- and that's what has occurred here.

20            And I don't believe Mr. Quinn said anything else

21    new that I -- that I need to counter.

22            THE COURT:  Well, thank you, Counsel.

23            It reminds me of the two scientists:  One

24    scientist saying to the other, "Well, I know it works in

25    practice.  Now let's see if it works in theory."

```
 1              So maybe this will be driven by the facts.  So I'm

 2      going to be asking Mattel in camera, eventually, not only to

 3      show me the time sheet immediately -- I don't know why that

 4      time sheet wouldn't eventually be made available to MGA.  I

 5      don't know what would be in camera.  And I would like to

 6      know with specificity eventually from Mattel what this

 7      person, this associate, Ms. Basinger, actually worked on.

 8      It may become a matter of degree.  If she's a minor

 9      associate --

10              How large is your firm, Mr. Quinn?

11              MR. QUINN:  It's 450 lawyers.

12              THE COURT:  That's all?  I'm just joking.

13              MR. QUINN:  As of today, Your Honor.

14              THE COURT:  And how large is your firm?

15              MS. GLASER:  Our firm, Your Honor, is

16      approximately 120.

17              THE COURT:  Okay.

18              MS. HURST:  1100, Your Honor.

19              THE COURT:  Okay.  There we go.

20              So certainly the movement of one lawyer to another

21      firm -- it's the interim period of time that's of great

22      concern.  And I think this will largely be fact dispositive.

23              What I don't like about in camera hearings is it

24      doesn't give the wisdom of the other party through

25      cross-examination.  And you're much more effective in an
```

1  adversarial system.  Quite frankly, we really are able to

2  get the truth because we have adverse parties -- or at least

3  we believe in that.

4          So it leaves it to the Court's also own inability

5  to talk to these witnesses *in camera*.  But at some point I

6  may be asking even of you to enter into an adversarial

7  process.

8          But I would like to get started *in camera*, first,

9  so we follow the rules, with MGA and Ms. Basinger.  I'm

10  going to exclude Mattel and all interested parties,

11  including civilians, et cetera.

12          And, Counsel, I know you're waiting for me on the

13  other case.  If you would go into the hallway also.

14          And then, MGA will tell me those parties that are

15  present.  I'm not sure if Mr. Overland should be present for

16  this, nor this counsel representing Mr. Machado.

17          So, Ms. Glaser, Ms. Hurst, I want you to look

18  around.  I want you to specifically state the people that

19  remain.  And I want to specifically know that they have your

20  consent to be present.

21          Counsel, we'll be with you in a while.  Have a

22  seat out in the hallway.

23          *(Courtroom cleared.)*

24          *(Further proceedings reported in a separate*

25      *volume entitled "Volume I-A Sealed Proceedings.")*

1                              -oOo-

2

3                           CERTIFICATE

4

5          I hereby certify that pursuant to Section 753,

6    Title 28, United States Code, the foregoing is a true and

7    correct transcript of the stenographically reported

8    proceedings held in the above-entitled matter and that the

9    transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12   Date:  December 27, 2010

13

14

15          _____

16          DEBBIE GALE, U.S. COURT REPORTER
            CSR NO. 9472, RPR

17

18

19

20

21

22

23

24

25

DEBBIE GALE, U.S. COURT REPORTER