1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3          **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                  - - - - - - -

5    MATTEL, INC., ET AL.,              )
                                        )
6              Plaintiff,               )
                                        )
7         vs.                           ) No. SACV 04-9049 DOC
                                        )     Volume I of III
8    MGA ENTERTAINMENT, INC., ET AL.,   )
                                        )
9              Defendant.               )
     _____)

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14          Status Conference/Motions in Limine

15              Santa Ana, California

16          Monday, January 3, 2011

17

18

19

20

21   Debbie Gale, CSR 9472, RPR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141

24

25   04cv9049 Mattel 2011-01-03 V1

**APPEARANCES OF COUNSEL:**


FOR PLAINTIFF MATTEL, INC., ET AL.:

       QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
       BY:  JOHN QUINN
           WILLIAM PRICE
           MICHAEL T. ZELLER
           Attorneys at Law
       865 South Figueroa Street
       10th Floor
       Los Angeles, California 90017
       (213) 443-3000




FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

       ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
       BY:  THOMAS S. McCONVILLE
           Attorney at Law
       4 Park Plaza
       Suite 1600
       Irvine, California 92614
       (949) 567-6700

       - AND -

       ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
       BY:  ANNETTE L. HURST
           Attorney at Law
       405 Howard Street
       San Francisco, California 94105
       (415)773-5700

1    **APPEARANCES OF COUNSEL (Continued):**

2

3      FOR CARLOS GUSTAVO MACHADO GOMEZ:

4

5              SCHEPER KIM & HARRIS LLP
               BY:  ALEXANDER H. COTE
                    Attorney at Law
6              601 West 5th Street
               12th Floor
7              Los Angeles, California 90071
               (213) 613-4660

8

9

10

     ALSO PRESENT:
11
               LAW OFFICES OF PETER H. BONIS
12             BY:  PETER H. BONIS (via teleconference)
                    Attorney at Law
13             1990 North California Boulevard
               8th Floor
14             Walnut Creek, California 94596
               (925) 287-6428
15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2      **PROCEEDINGS**                                    **PAGE**

3      Status Conference                                  5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, MONDAY, JANUARY 3, 2011**               |
|       | 2  | **Volume I of III**                                              |
|       | 3  | (10:54 a.m.)                                                     |
| 10:52 | 4  | THE COURT:  Matter of Mattel v. MGA.  Counsel,                   |
| 10:54 | 5  | your appearances on behalf of Mattel.                            |
| 10:54 | 6  | MR. ZELLER:  Mike Zeller for Mattel.                             |
| 10:54 | 7  | MR. PRICE:  Bill Price for Mattel.                               |
| 10:54 | 8  | THE COURT:  Counsel.                                             |
| 10:54 | 9  | MR. McCONVILLE:  Tom McConville on behalf of the                 |
| 10:54 | 10 | MGA parties.                                                     |
| 10:54 | 11 | MS. HURST:  Annette Hurst for MGA, Your Honor.                   |
| 10:54 | 12 | THE COURT:  We've had an off-the-record                          |
| 10:54 | 13 | conversation about a default position.  It's been a kind         |
| 10:54 | 14 | conversation.  And from now on, if the parties are in doubt,     |
| 10:54 | 15 | the Court's ordering you to appear at 7:30 in the morning.       |
| 10:54 | 16 | That will stop any equivocation concerning time,                 |
| 10:54 | 17 | negotiation, or when you decide to appear.                       |
| 10:54 | 18 | Today, it was 9:00 o'clock.  The Court finds no                  |
| 10:54 | 19 | fault.  Once again, counsel have been absolutely exemplary.      |
| 10:54 | 20 | 7:30 is the default, in case you're in doubt.                    |
| 10:54 | 21 | I want to take up the matter of Carter Bryant for                |
| 10:55 | 22 | a second.  First of all, I note now that you've read and         |
| 10:55 | 23 | absorbed a 117-page opinion.  There's another opinion that       |
| 10:55 | 24 | will be coming out as early as tonight between 9:00 and          |
| 10:55 | 25 | 12:00, and as late as tomorrow, which will be about 50 to 60     |

SACV 04-9049 DOC - 1/3/2011 - Volume I of III

6

10:55  1  additional pages resolving the last two issues.

10:55  2       I propose to go next door with you and go over

10:55  3  days three and four today concerning all of the evidence, so

10:55  4  you have one week behind you.  Then we'll put those in

10:55  5  boxes.  Once again, those will be the only items that will

10:55  6  be exhibited.

10:55  7       Also, I'm going to turn to MGA.  It's time that

10:55  8  you started producing for the Court and telling the Court

10:55  9  what documents you want on cross-examination.  So far

10:55  10  Mattel's been put in the position, because they're

10:55  11  plaintiff, of being ordered by the Court to come forward

10:55  12  with each and every item of evidence for each and every

10:55  13  witness so that there are absolutely no surprises.  That

10:55  14  way, the Court will see each item of evidence before that

10:55  15  witness takes the stand.  And Mattel's been exemplary in

10:56  16  that regard.  You have my compliments.

10:56  17       MGA will now start with the cross-examination

10:56  18  documents today, tonight, whatever.

10:56  19       I want to take up the matter of Carter Bryant.

10:56  20  This is apparently causing some stress on the parties.

10:56  21  There's a notice of motion and motion to compel attendance.

10:56  22  And Mr. Bryant is a party subject to the jurisdiction of

10:56  23  this Court.  His May 18th settlement agreement with Mattel

10:56  24  was reached, and Bryant had agreed to testify at trial upon

10:56  25  48 hours' notice.  He has not responded to requests by

| | | |
|---|---|---|
| 10:56 | 1 | Mattel that he confirm -- that he will confirm that he will |
| 10:56 | 2 | appear at trial.  And Mattel has corresponded, apparently, |
| 10:56 | 3 | with Bryant's current and former counsel. |
| 10:56 | 4 | And I note for the record that the former counsel, |
| 10:56 | 5 | at least, were Peter H. Bonis, B-O-N-I-S.  Mr. Bonis was |
| 10:57 | 6 | also counsel, along with Christa, C-H-R-I-S-T-A, M. period, |
| 10:57 | 7 | Anderson of Keker & Van Nest, LLP. |
| 10:57 | 8 | The lack of response causes the Court some concern |
| 10:57 | 9 | because Mr. Bryant has no legitimate basis for refusing to |
| 10:57 | 10 | appear at trial.  This Court has ongoing personal |
| 10:57 | 11 | jurisdiction over Mr. Bryant. |
| 10:57 | 12 | Now, I note that he's presently not represented by |
| 10:57 | 13 | counsel; but pursuant to the settlement agreement, Mattel |
| 10:57 | 14 | gave notice of this motion to Bryant in a letter dated |
| 10:57 | 15 | November 29, 2010, sent to both Bryant and his former |
| 10:57 | 16 | counsel.  Mattel has received no response to that letter. |
| 10:57 | 17 | Now, the difficulty is I don't want either side at |
| 10:57 | 18 | a disadvantage because I think Mr. Bryant is co-equally |
| 10:57 | 19 | important to each side.  If Mattel does not produce |
| 10:58 | 20 | Mr. Bryant, it appears that you've reached a *de minimis* |
| 10:58 | 21 | settlement agreement in the jury's eyes and that you're |
| 10:58 | 22 | hiding him.  And it's devastating to your case.  If |
| 10:58 | 23 | Mr. Bryant does not appear on MGA's behalf, he was last |
| 10:58 | 24 | employed by MGA, and it looks like MGA's hiding Mr. Bryant. |
| 10:58 | 25 | So each of you have a co-equal interest in producing |

10:58  1   Mr. Bryant.

10:58  2        With retrial of Phase I issues, Mattel sought the
10:58  3   commitment to appear at trial.  And, in accordance with the
10:58  4   agreement that was the May 23rd, 2008 stipulated order,
10:58  5   which dismissed the monetary claims against Bryant, it
10:58  6   provided that "Bryant shall" -- not "may," but "shall --
10:58  7   "appear to testify at the Phase I trial during Mattel's
10:58  8   case-in-chief."  And in that order, the Court expressly
10:58  9   retained jurisdiction to enforce the terms of this agreement
10:59  10  and to bind Bryant to adhere to any order, judgment or
10:59  11  decree made against MGA relating to MGA's rights in Bratz.

10:59  12       Each of the jury's finding from Phase I have been
10:59  13  vacated, but this Court had ordered a full retrial of all
10:59  14  Phase I claims.  In addition to that, Judge Larson, once
10:59  15  again, was a very wise judge.  He had retained jurisdiction
10:59  16  for all purposes.

10:59  17       Mattel would be severely disadvantaged; but it's
10:59  18  not just Mattel's concern, it also has to be MGA's concern.
10:59  19  You'll both look like you're hiding him.  He is absolutely
10:59  20  the critical and crucial witness here.  He needs to appear.
10:59  21  His demeanor needs to be subject to examination.  His
10:59  22  credibility needs to be tested by both sides.

10:59  23       I think that this trial is a difficult trial
10:59  24  enough for each of the parties.  Without Bryant appearing,
10:59  25  it's almost impossible.

| 10:59 | 1 | The settlement agreement dated May 20th stated as |
| 10:59 | 2 | follows -- Bryant had agreed to appear as a witness in the |
| 10:59 | 3 | Mattel case-in-chief.  "Bryant's agreement to appear at |
| 11:00 | 4 | trial in Mattel's Case-in-chief" -- quote, "Bryant agrees to |
| 11:00 | 5 | appear as a witness during Mattel's case-in-chief in |
| 11:00 | 6 | Phase I(a) and Phase I(b) of the trial upon 48 hours' |
| 11:00 | 7 | written notice to Bryant's counsel." |
| 11:00 | 8 | Now, even though Bryant has substituted counsel, |
| 11:00 | 9 | that has little import to this Court.  On May 23rd, 2008, |
| 11:00 | 10 | Judge Larson entered an order of dismissal upon stipulation, |
| 11:00 | 11 | which incorporated Bryant's agreement and the parties' |
| 11:00 | 12 | stipulation into the following order, quote, "Bryant has |
| 11:00 | 13 | agreed to appear, and, upon reasonable notice, Bryant shall |
| 11:00 | 14 | appear to testify at trial in Phase I(a), and Phase I(b), |
| 11:00 | 15 | during Mattel's case-in-chief," end of quote. |
| 11:00 | 16 | Pursuant to both the stipulation and the order, |
| 11:00 | 17 | the Court retains jurisdiction to enforce the terms of this |
| 11:00 | 18 | agreement.  The order continues, "This order of dismissal is |
| 11:00 | 19 | being entered pursuant to the terms and conditions of the |
| 11:00 | 20 | settlement between Mattel and Bryant.  This Court retains |
| 11:00 | 21 | jurisdiction to enforce the terms of the settlement and that |
| 11:00 | 22 | a violation of any term of the settlement shall be a |
| 11:01 | 23 | violation of this order of dismissal." |
| 11:01 | 24 | Now, without commenting, Mattel also may be in a |
| 11:01 | 25 | position of having a breach of this agreement by Mr. Bryant, |

DEBBIE GALE, U.S. COURT REPORTER

11:01   1   which would subject Mr. Bryant to a potential lawsuit and

11:01   2   going through the whole process, once again, of either

11:01   3   settlement or trial.  I don't think Mr. Bryant really wants

11:01   4   to be put in that position.

11:01   5          Lastly, the Court has ultimate power, and that is

11:01   6   that of incarceration.  You've already inquired of former

11:01   7   counsel.  "If you do not respond to this letter in a timely

11:01   8   fashion, Mattel will be forced to conclude that you do not

11:01   9   intend to honor Paragraph 3 of the settlement agreement and

11:01   10  will promptly file a motion to compel your attendance at

11:01   11  trial."

11:01   12         The district court has inherent power to enforce

11:01   13  this agreement and settlement of litigation before it,

11:01   14  citing *TNT Marketing*, and citing *Hagestad v. Tragesser,*

11:01   15  T-R-A-G-E-S-S-E-R.  It's at 1995, Ninth Circuit, 49 F.3d

11:01   16  1430.  Language is found at 1433.  "A breach of the

11:02   17  agreement is a violation of the order, and ancillary subject

11:02   18  matter jurisdiction to enforce the agreement therefore

11:02   19  exists."

11:02   20         Also the district court's enforcement power

11:02   21  includes the authority to award non-breaching party specific

11:02   22  performance of the agreement."  And further, and most

11:02   23  importantly, "The courts have inherit power to enforce

11:02   24  compliance with their lawful orders through civil contempt,"

11:02   25  citing *Spallone v. United States*, 493 U.S. 265 and 276,

11:02  1    1990.  "Where contempt consists of refusal to obey a Court

11:02  2    order to testify at any stage in judicial proceedings, the

11:02  3    witness may be confined until compliance," citing

11:02  4    *Shillitani*, 384 U.S. at 370.

11:03  5            Now, let me resolve this last matter.  Power is

11:03  6    best used when it's not used.  The last thing I want to do

11:03  7    is incarcerate Mr. Bryant.  But the Court's absolutely

11:03  8    prepared, if we go down that path, to do so.  Therefore, he

11:03  9    needs to recognize immediately how serious this is.

11:03  10           So I think what we need to do is the following:  I

11:03  11   don't know if he's in the country, out of the country, but

11:03  12   it's disturbing that nobody can reach Mr. Bryant.  So I'm

11:03  13   gonna suggest, Counsel, that you get on the phone for just a

11:03  14   moment, and that we have a conversation with former counsel;

11:03  15   and that would be, if you would try to reach the law firm of

11:03  16   Keker & Van Nest, and Peter Bonis, and apparently -- I'm

11:03  17   reading this -- Christa Anderson, who are of the same firm?

11:03  18           MR. ZELLER:  No.  They're different firms,

11:03  19   Your Honor.

11:03  20           THE COURT:  Well, let's get both of them on the

11:03  21   line, and let's set up a conference call this morning.

11:04  22           In other words, I want to pay every accord to

11:04  23   counsel.  I want to give every warning to Mr. Bryant that,

11:04  24   with the litigation that's going to ensue involving four

11:04  25   months, thousands of jury subpoenas, that he is required to

| 11:04 | 1 | be here; that this is not a request. |
| 11:04 | 2 | MR. ZELLER:  And one piece of information, |
| 11:04 | 3 | Your Honor, that's new is that we had a process server |
| 11:04 | 4 | looking for him to provide him with a trial subpoena, |
| 11:04 | 5 | 'cause, as the Court is aware, we also are of the view that |
| 11:04 | 6 | there's independent jurisdiction over him, as well. |
| 11:04 | 7 | THE COURT:  Let's go down that road if we need to. |
| 11:04 | 8 | Right now, I want to get voluntary compliance, and I want |
| 11:04 | 9 | him here on January 18th. |
| 11:04 | 10 | MR. PRICE:  Right.  And we, in fact, did find him |
| 11:04 | 11 | and served him on the 30th of December. |
| 11:04 | 12 | THE COURT:  You served Mr. Bryant? |
| 11:04 | 13 | MR. ZELLER:  With -- yes, a trial subpoena? |
| 11:04 | 14 | THE COURT:  Well, thank you.  Now, why did I make |
| 11:04 | 15 | that long-winded speech?  Just kidding you. |
| 11:04 | 16 | You served Mr. Bryant on December 30th? |
| 11:04 | 17 | MR. ZELLER:  Correct.  We were searching for him |
| 11:04 | 18 | for some period of time, and we found him in Springfield, |
| 11:05 | 19 | Missouri. |
| 11:05 | 20 | THE COURT:  Excellent.  That stops a lot of my |
| 11:05 | 21 | concern.  I really didn't want to go down the road in terms |
| 11:05 | 22 | of civil contempt and incarcerating him. |
| 11:05 | 23 | MR. ZELLER:  We still don't know -- |
| 11:05 | 24 | THE COURT:  The question is:  Is he going to |
| 11:05 | 25 | comply? |

11:05    1            MR. ZELLER:  That we don't know.

11:05    2        I certainly don't think that the Court's findings

11:05    3    and the like were for no purpose.  As far as we know, based

11:05    4    on, you know, our history here --

11:05    5            THE COURT:  No.  Here's what I don't want:  I

11:05    6    don't want to get to Week 2 or 3 or 4, and Mr. Bryant is

11:05    7    supposed to testify, and Mattel calls him, and MGA wants him

11:05    8    just as badly, and now Mr. Bryant decides to drag his feet,

11:05    9    and I have to go through this process, and I have to recess

11:05   10    the jury.  So I need to know immediately if he's going to

11:05   11    comply.  And I also need to set a time, so it's convenient

11:05   12    for the Court and convenient for him.  There's no reason for

11:05   13    him to be here a week.  So we want to be courteous.  We want

11:05   14    to say he's going to testify the first week or the second

11:05   15    week, and set aside some time for him.

11:05   16            So my suggestion is, since we're going over each

11:06   17    witness and each piece of evidence -- we've only gotten

11:06   18    through the first two days.  And although you think it's two

11:06   19    days, it's not.  I think you have 60 exhibits.  You're going

11:06   20    to be limited.  And you're not going to be in a position of

11:06   21    having a creative cartoonist draw and show me, and

11:06   22    ingratiate themselves to the jury.

11:06   23            Now, that may be appropriate with Mr. Bryant.  In

11:06   24    other words, when Mr. Bryant testifies, that request may be

11:06   25    entirely appropriate:  That he show his creative ability and

| | | |
|---|---|---|
| 11:06 | 1 | why it's unique.  But the other witness is not going to be |
| 11:06 | 2 | able to do so. |
| 11:06 | 3 | How do you want to resolve this?  I've already |
| 11:06 | 4 | prepared, but I haven't filed, a motion to compel attendance |
| 11:06 | 5 | for Carter Bryant at trial.  I know he's been served.  We |
| 11:06 | 6 | need to set up a date certain, and he needs to understand |
| 11:06 | 7 | that he's required to be here.  And if there's any |
| 11:06 | 8 | non-acquiescence on his part, then we need to proceed down |
| 11:06 | 9 | the road. |
| 11:06 | 10 | So, Ms. Hurst, your suggestions. |
| 11:06 | 11 | MS. HURST:  Your Honor, we tried to communicate |
| 11:07 | 12 | with him in connection with the New York action and were |
| 11:07 | 13 | unsuccessful in gaining any contact with him.  We -- all the |
| 11:07 | 14 | phone numbers that we had for him were no longer in service. |
| 11:07 | 15 | We looked for his -- the business address associated with |
| 11:07 | 16 | the real property that he owns down in Missouri, a |
| 11:07 | 17 | BT Associates, I believe, and were unsuccessful at finding |
| 11:07 | 18 | him there.  So it sounds like Mr. Zeller's actually a step |
| 11:07 | 19 | ahead of us in terms of finding him.  And I was unaware of |
| 11:07 | 20 | the service. |
| 11:07 | 21 | THE COURT:  I wasn't either. |
| 11:07 | 22 | Let me ask you, Mr. Zeller, what day does the |
| 11:07 | 23 | subpoena state that he's to be in court? |
| 11:07 | 24 | MR. ZELLER:  The first day of trial. |
| 11:07 | 25 | THE COURT:  18th? |

| 11:07 | 1 | MR. ZELLER:  Yes. |
| 11:07 | 2 | THE COURT:  The day of the opening statement? |
| 11:07 | 3 | MR. ZELLER:  Correct. |
| 11:07 | 4 | THE COURT:  Okay. |
| 11:07 | 5 | MR. ZELLER:  And, Your Honor, just so it's clear, |
| 11:07 | 6 | in our view, serving him with a trial subpoena doesn't |
| 11:07 | 7 | change the complexion of anything that has happened so far. |
| 11:07 | 8 | We do not have any comfort and certainly no explicit |
| 11:07 | 9 | agreement or assurance by Mr. Bryant that he will appear. |
| 11:08 | 10 | THE COURT:  All right.  Let me ask you something. |
| 11:08 | 11 | I don't know, then, if I really want to get |
| 11:08 | 12 | involved in a personal conversation between the Court and |
| 11:08 | 13 | Mr. Bryant.  That's a dangerous place to be by phone. |
| 11:08 | 14 | Number two, I'm not requesting.  I'm not |
| 11:08 | 15 | threatening.  I'll simply act.  So I'm wondering if each of |
| 11:08 | 16 | you would like to try to get on the phone as -- you know, |
| 11:08 | 17 | jointly, and each of you would like to explain that it's a |
| 11:08 | 18 | synonymous request.  I don't want MGA disadvantaged, looking |
| 11:08 | 19 | like it's Mattel's sole motion.  You need Mr. Bryant just as |
| 11:08 | 20 | much as Mattel does, and I'm wondering, if you have that |
| 11:08 | 21 | acquiescence. |
| 11:08 | 22 | Then, if it's necessary that the Court act in |
| 11:08 | 23 | light of the subpoena, and if he's not here on the 18th, |
| 11:08 | 24 | since the trial is going to some length of time, I've got a |
| 11:08 | 25 | week or two to rectify that situation.  The difficulty for |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:08 | 1 | Mattel is you're calling him as the fifth or sixth witness, |
| 11:09 | 2 | and it's going to disturb your presentation.  And I'm not |
| 11:09 | 3 | going to wait.  So I don't want you to be disadvantaged in |
| 11:09 | 4 | your presentation. |
| 11:09 | 5 | But I'm open to any suggestion.  I just don't want |
| 11:09 | 6 | to use the Court's power unless I have to.  But I'm prepared |
| 11:09 | 7 | to do so if I need to. |
| 11:09 | 8 | MR. ZELLER:  What we need to do, as the next step, |
| 11:09 | 9 | was to try and reach Mr. Bryant by phone now and, you know, |
| 11:09 | 10 | see if he is going to tell us explicitly, is he going to |
| 11:09 | 11 | show up or is he not.  Because so far we have, as the Court |
| 11:09 | 12 | has recounted, various communications where we have reached |
| 11:09 | 13 | out to him but have not received a response, which certainly |
| 11:09 | 14 | enough time has passed.  It appears to be little doubt that |
| 11:09 | 15 | Mr. Bryant is fully aware of the upcoming trial. |
| 11:09 | 16 | So I think what the Court is suggesting makes a |
| 11:09 | 17 | lot of sense:  That the parties attempt to try and reach him |
| 11:09 | 18 | to further communicate with him and see what his view is. |
| 11:09 | 19 | But I'm also -- I am concerned, and I think this is where |
| 11:10 | 20 | the Court is as well -- is that we not wait too long on this |
| 11:10 | 21 | because waiting until the first day of trial and then |
| 11:10 | 22 | finding out he's not going to show up, particularly given, |
| 11:10 | 23 | you know, that -- you're right -- it will disrupt our |
| 11:10 | 24 | presentation is a very serious concern.  So I would expect |
| 11:10 | 25 | that, if we cannot get assurances from him in the next -- I |

11:10  1  don't want to pick an arbitrary number of days, but call it

11:10  2  this week.

11:10  3         THE COURT:  No.  Today.

11:10  4         MR. ZELLER:  Well, no.  I'm saying, if he doesn't

11:10  5  respond at all, then Court's action's probably warranted.

11:10  6  But we will try and reach him today; there's no question.

11:10  7         THE COURT:  Then I'm going to withhold this

11:10  8  ruling, the motion to compel attendance, in abeyance.

11:10  9  Because this motion doesn't make much sense, does it,

11:10  10  Mr. Zeller?  In other words, my granting the motion to

11:10  11  compel attendance doesn't make sense now in light of your

11:10  12  service.

11:10  13         MR. ZELLER:  Well, actually, I think the service

11:10  14  point makes the case for compelling it even more apparent.

11:11  15         THE COURT:  Well, if I'm going to do that, then I

11:11  16  would want a date specific.  In other words, I'd like you to

11:11  17  reach out to Mr. Bryant specifically.  And if he's not going

11:11  18  to testify on the 18th, then I think it's reasonable to

11:11  19  assume he'd be testifying by -- at least by Wednesday or

11:11  20  Thursday of that week.  So and -- and I'd like that to be a

11:11  21  joint phone call.  I'd like Mr. Bryant to be impressed with

11:11  22  the fact that both MGA wants him present and Mattel wants

11:11  23  him present.

11:11  24         Ms. Hurst, are you willing to participate in that

11:11  25  call?

DEBBIE GALE, U.S. COURT REPORTER

11:11    1              MS. HURST:  Certainly, Your Honor.

11:11    2              THE COURT:  All right.  Why don't I take a recess

11:11    3    and you can make that call.

11:11    4              Who am I going to work with on the exhibits?

11:11    5              MR. ZELLER:  I'm available to do that.

11:11    6              THE COURT:  Who's going to place the call to

11:11    7    Mr. Bryant?

11:11    8              MR. ZELLER:  Mr. Price can place the call.

11:11    9              THE COURT:  Mr. McConville, are you going to work

11:11   10    with me?

11:11   11              MR. McCONVILLE:  Yes, Your Honor.

11:11   12              THE COURT:  And Mr. Zeller, you'll work with me on

11:11   13    those exhibits?

11:11   14              MR. ZELLER:  Yes.

11:11   15              THE COURT:  Now, the motions in limine, we want to

11:12   16    get started on those.  And although, tentatively, I've made

11:12   17    a number of decisions concerning the 80 motions in limine, I

11:12   18    want to provide you the time necessary to argue those.  So I

11:12   19    just arbitrarily picked plaintiff's 1 through 4 to start

11:12   20    with sometime this afternoon.

11:12   21              And if we want to proceed down the line to however

11:12   22    many, you know, Mr. Zeller you want to cover today -- let's

11:12   23    go through the plaintiff's.  Then let's go through the

11:12   24    defendants'.  Provide the opportunity.  Some you may want to

11:12   25    argue; some you may not.  But I'll provide the time for you.

| | | |
|---|---|---|
| 11:12 | 1 | Then, why don't we take a recess.  Why don't you |
| 11:12 | 2 | place the call to Carter Bryant first.  Let's see how you |
| 11:12 | 3 | do, and I'll meet you in about ten minutes. |
| 11:12 | 4 | MR. ZELLER:  Okay. |
| 11:12 | 5 | *(Recess held at 11:12 a.m.)* |
| 11:12 | 6 | *(Proceedings resumed at 11:43 a.m.)* |
| 11:12 | 7 | *(Mr. Quinn joins proceedings.)* |
| 11:12 | 8 | *(Mr. Bonis appearing via teleconference.)* |
| 11:43 | 9 | THE COURT:  Mr. Bonis, can you hear me? |
| 11:43 | 10 | MR. BONIS:  Yes, Your Honor. |
| 11:43 | 11 | THE COURT:  I want to go into session.  I'll ask |
| 11:43 | 12 | your indulgence for a few moments.  I'm trying to save a |
| 11:43 | 13 | personal appearance on your part. |
| 11:43 | 14 | We're on the record with Mattel and MGA present. |
| 11:43 | 15 | Counsel, would you, once again, make your |
| 11:43 | 16 | appearances. |
| 11:43 | 17 | MR. QUINN:  John Quinn, Bill Price from Mattel, |
| 11:44 | 18 | and Mike Zeller, as well. |
| 11:44 | 19 | THE COURT:  Counsel. |
| 11:44 | 20 | MS. HURST:  Your Honor, Annette Hurst for the MGA |
| 11:44 | 21 | parties. |
| 11:44 | 22 | MR. McCONVILLE:  Tom McConville, too. |
| 11:44 | 23 | THE COURT:  Thank you. |
| 11:44 | 24 | And on behalf of Mr. Machado. |
| 11:44 | 25 | MR. COTE:  Alexander Cote, Your Honor. |

11:44   1            THE COURT:  Thank you.

11:44   2            Mr. Bonis, thank you for indulging us.  I hope

11:44   3   that this is the most courteous way to contact you.

11:44   4            MR. BONIS:  This is fine, Your Honor.  I've seen

11:44   5   some of the stuff come in, but I haven't been able to

11:44   6   contact the client.

11:44   7            THE COURT:  Well, I know that.  But I'm trying --

11:44   8   power is best exercised when it's not exercised.

11:44   9            Is that correct?

11:44   10           MR. BONIS:  Yes.

11:44   11           THE COURT:  So let's see if we don't have to

11:44   12  exercise jurisdiction.  But I want to make another record of

11:44   13  rulings I've previously made --

11:44   14           MR. BONIS:  Okay.

11:44   15           THE COURT:  -- as a courtesy to you, and

11:44   16  potentially to Mr. Bryant.

11:44   17           Mr. Bryant is a party subject to the jurisdiction

11:44   18  of this Court.  In the May 18, 2008 settlement agreement

11:44   19  with Mattel, he'd agreed to testify at trial upon 48 hours'

11:45   20  notice.

11:45   21           MR. BONIS:  Uh-huh.

11:45   22           THE COURT:  Bryant had not responded to requests

11:45   23  by Mattel that he confirm that he'll appear at trial, and

11:45   24  Mattel has corresponded -- or they allege this morning that

11:45   25  they'd corresponded with both current and prior counsel.  I

DEBBIE GALE, U.S. COURT REPORTER

11:45  1    find that there's no current counsel at the present time.

11:45  2          This Court does have ongoing personal jurisdiction

11:45  3    over Mr. Bryant.  Although he's not currently represented by

11:45  4    counsel, notice was given to Mr. Bryant in a letter dated

11:45  5    November 29th sent out to both Bryant and apparently former

11:45  6    counsel, which I believe was you; and if not, I certainly

11:45  7    want to be corrected.  There was no response received to

11:45  8    that letter.

11:45  9          I don't know how much you know about the history

11:45  10   of the Ninth Circuit's rulings and this ruling, but the

11:45  11   retrial of Phase I issues will be heard again by this Court.

11:45  12   After the dismissal, this Court granted in full a Phase I

11:45  13   new trial, but I've combined it with what I call Phase II,

11:46  14   II(a), II(b), or whatever the phases were.  And there was a

11:46  15   commitment on Mr. Bryant's part in the settlement agreement

11:46  16   to appear.

11:46  17         So the Court not only has continuing jurisdiction,

11:46  18   but in accordance with the agreement on May 23rd, there was

11:46  19   a stipulated order dismissing the monetary claims against

11:46  20   Bryant providing that Mr. Bryant, quote, "shall," end of

11:46  21   quote, appear to testify at the Phase I trial during

11:46  22   Mattel's case-in-chief.  In that order, this Court had

11:46  23   expressly retained jurisdiction to enforce the terms of

11:46  24   agreement and to bind Bryant to adhere to any order -- and

11:46  25   this was Judge Larson's order at the time -- or judgment or

| | | |
|---|---|---|
| 11:46 | 1 | decree made against MGA related to MGA's rights in Bratz. |
| 11:46 | 2 | Each of the findings from Phase I has been vacated.  And |
| 11:46 | 3 | I've decided in a full order that the full retrial of all |
| 11:46 | 4 | Phase I claims will take place again. |
| 11:46 | 5 | Now, given the Ninth Circuit's reversal, Bryant's |
| 11:46 | 6 | prior testimony during the Phase I trial cannot suffice for |
| 11:47 | 7 | purposes of the pending trial. |
| 11:47 | 8 | In addition, I want you to know that Mattel would |
| 11:47 | 9 | be severely prejudiced, as I think MGA would be severely |
| 11:47 | 10 | prejudiced, without Bryant's appearance.  We've sent out |
| 11:47 | 11 | 4,000 jury summonses to get a jury pool of a little over a |
| 11:47 | 12 | hundred, that's been winnowed to 80, for a four-month trial. |
| 11:47 | 13 | So you can see the expense and the time that's already |
| 11:47 | 14 | ensued. |
| 11:47 | 15 | In addition, I'm concerned that the settlement |
| 11:47 | 16 | agreement, according to Mattel, may have been breached.  And |
| 11:47 | 17 | I want to head off that and any future issues concerning |
| 11:47 | 18 | Mattel and Bryant, if possible.  On May 18, 2008, before the |
| 11:47 | 19 | trial of Phase I(a) issues that began on May 20th, both |
| 11:47 | 20 | Mattel and Mr. Bryant entered into a settlement agreement; |
| 11:47 | 21 | and, in that agreement Bryant agreed to appear as a witness |
| 11:47 | 22 | in Mattel's case-in-chief.  The section specifically |
| 11:47 | 23 | reads -- and you know this better than I do -- "Bryant's |
| 11:47 | 24 | Agreement to Appear at Trial in Mattel's Case-in-chief. |
| 11:48 | 25 | Bryant agrees to appear as a witness during Mattel's |

11:48  1    case-in-chief in Phase I(a) and Phase I(b) of the trial upon

11:48  2    48 hours' written notice to Bryant's counsel.  The

11:48  3    effectiveness of this agreement is in no manner conditioned

11:48  4    upon the substance of any testimony to be given by Bryant at

11:48  5    trial or otherwise, and there is no agreement between Mattel

11:48  6    and Bryant regarding how long Bryant will testify or what he

11:48  7    will say during the trial between Mattel and the MGA parties

11:48  8    or any proceeding."

11:48  9          That's Docket No -- or the settlement agreement

11:48  10   M0932054-46.

11:48  11          On May 23rd, 2008, Judge Larson entered an order

11:48  12   of dismissal upon stipulation which incorporated Bryant's

11:48  13   agreement and the parties' stipulation into the following

11:48  14   order:  Quote, "Bryant has agreed to appear, and, upon

11:48  15   reasonable notice, Bryant shall appear to testify at trial

11:48  16   in Phase I(a) and Phase I(b) during Mattel's case-in-chief."

11:48  17          Now, I want you to note, Mr. Bonis, that "upon

11:49  18   reasonable notice," and that's why I'm calling for a moment.

11:49  19   I'm hoping to avoid any of the drama or inconvenience that

11:49  20   may ensue.  So, therefore, this Court has already found, out

11:49  21   of your presence, that both the stipulation and the order

11:49  22   gives this Court jurisdiction and retains jurisdiction to

11:49  23   enforce the terms of the agreement.

11:49  24          The -- Mattel sent a copy of the letter to

11:49  25   Bryant's last-known counsel, apparently which was you, and

11:49   1   formal counsel, Christa M. Anderson, of your firm.  It was

11:49   2   represented that neither counsel had responded.  I found

11:49   3   now, upon further questioning, that there was a response by

11:49   4   you.  And also I just learned about an hour and a half ago

11:49   5   that, actually, Mattel was able to serve Mr. Bryant in

11:49   6   Missouri on December 30th.

11:49   7           And, Counsel, I'm going to require a copy of that

11:49   8   subpoena.  I want to see it in just a moment.

11:49   9           MR. ZELLER:  Yes.

11:49   10          THE COURT:  First, I've already made the ruling

11:49   11  outside your presence, but I want to make absolutely crystal

11:49   12  clear that the Court also has inherent power to enforce the

11:50   13  agreement and settlement of litigation before it, citing

11:50   14  *TNT Marketing* and *Hagestad v. Tragesser*, that "a breach of

11:50   15  the agreement is a violation of the order, and ancillary

11:50   16  subject matter jurisdiction to enforce the agreement

11:50   17  therefore exists."

11:50   18          I have every intention of ultimately enforcing the

11:50   19  power of this Court, including either the awarding of

11:50   20  non-breaching parties' specific performance of this

11:50   21  agreement, or the inherit power to enforce the compliance

11:50   22  through a civil contempt.

11:50   23          I don't think we need to get there.  I'm not

11:50   24  threatening that.  I hope that that doesn't ensue.  But

11:50   25  somehow I need to convey to Mr. Bryant that it is not his

| 11:50 | 1 | time nor his choice.  So I think you have the best |
| 11:50 | 2 | relationship with him.  I want to do everything in a |
| 11:50 | 3 | courteous manner to reach out to him.  But "where contempt |
| 11:50 | 4 | consists of refusal to obey a Court order to testify at any |
| 11:50 | 5 | stage" -- which I hope we don't reach -- "in judicial |
| 11:50 | 6 | proceedings, the witness may be confined until compliance." |
| 11:50 | 7 | And that's *Shillitani*, 384 U.S. 370. |
| 11:51 | 8 | Therefore, I'm finding Bryant's obligation to |
| 11:51 | 9 | testify at trial is triggered, and he's required to appear. |
| 11:51 | 10 | Now, what I want to do is talk to you about any |
| 11:51 | 11 | potentiality that I don't have to eventually go as far as |
| 11:51 | 12 | contempt.  I don't think I do.  I don't want to.  But it's |
| 11:51 | 13 | extraordinarily difficult for Mattel to proceed because it |
| 11:51 | 14 | looks like they entered into what I call a *de minimis* |
| 11:51 | 15 | settlement, frankly.  And they're going to be prejudiced |
| 11:51 | 16 | without Mr. Bryant's presence.  And from MGA's part, |
| 11:51 | 17 | regardless of the protestations, they apparently hired him, |
| 11:51 | 18 | and as such, it looks like they're hiding him, as well. |
| 11:51 | 19 | Also, this jury, in a case of this magnitude, is |
| 11:51 | 20 | entitled to judge his demeanor and to have him present. |
| 11:51 | 21 | MR. BONIS:  Your Honor, excuse me for |
| 11:51 | 22 | interrupting.  I can represent to you that my client |
| 11:51 | 23 | dislikes MGA as much as he dislikes Mattel.  You just said |
| 11:52 | 24 | they were hiding him as well.  I am willing to represent |
| 11:52 | 25 | that I know that that's not the case. |

| | | |
|---|---|---|
| 11:52 | 1 | THE COURT:  That's fine.  I do, too. |
| 11:52 | 2 | But you have to be concerned, and I do, as |
| 11:52 | 3 | follows:  We don't know what the jury thinks.  So I'm asking |
| 11:52 | 4 | for your help, really, at the very beginning. |
| 11:52 | 5 | MR. BONIS:  That's fine, Your Honor.  I'll -- let |
| 11:52 | 6 | me -- how would you like me to proceed? |
| 11:52 | 7 | THE COURT:  I want you to contact him, explain |
| 11:52 | 8 | that we really don't want to go down the road any further. |
| 11:52 | 9 | I need him here on January 18th, or if he'll accept a phone |
| 11:52 | 10 | call with counsel, or by himself, and we can work out an |
| 11:52 | 11 | amenable date that he promises to be present, then I can set |
| 11:52 | 12 | up that date of January 19th, 20th, or 21st, whenever |
| 11:52 | 13 | counsel believes that he'll be called, so that he's flying |
| 11:52 | 14 | in and flying out again. |
| 11:52 | 15 | I have no desire to keep him here a week.  And I |
| 11:52 | 16 | certainly don't want to end up incarcerating him or even |
| 11:52 | 17 | getting to that point.  So I thought that I'd reach out to |
| 11:52 | 18 | you first.  You have an excellent reputation.  You've had |
| 11:52 | 19 | some past contact with him.  But I can just see the way this |
| 11:53 | 20 | is potentially going down the road, and I don't want the |
| 11:53 | 21 | bias of he's supposed to be Witness No. 4.  Mattel has to |
| 11:53 | 22 | stop their presentation, or MGA, and we have to wait.  This |
| 11:53 | 23 | is American taxpayer money.  And a jury sitting for three to |
| 11:53 | 24 | four months is an extraordinary request. |
| 11:53 | 25 | I just want to thank you.  I would like to hear |

| 11:53 | 1 | back from you, whether you're successful today or not.  And |
|---|---|---|
| 11:53 | 2 | we'll be here until at least 10:00 o'clock tonight or |
| 11:53 | 3 | 11:00 o'clock tonight. |
| 11:53 | 4 | MR. BONIS:  Your Honor, I have a couple of |
| 11:53 | 5 | questions for you. |
| 11:53 | 6 | First of all, I know some of his reluctance is |
| 11:53 | 7 | probably -- I haven't spoken to him, but I'm sure that some |
| 11:53 | 8 | of his reluctance is probably due to the fact that, |
| 11:53 | 9 | essentially, he's broke.  So somebody's gonna have to give |
| 11:53 | 10 | him the money for the airfare. |
| 11:53 | 11 | THE COURT:  They'll -- just a moment. |
| 11:53 | 12 | You'll so-split the cost; is that correct? |
| 11:53 | 13 | MR. QUINN:  Yes, Your Honor. |
| 11:53 | 14 | MS. HURST:  Agreed, Your Honor. |
| 11:53 | 15 | MR. BONIS:  Second, same issue as to where you're |
| 11:53 | 16 | going to put him.  And finally, when I did speak to him, |
| 11:54 | 17 | which was a long time ago, I think he said he testified for |
| 11:54 | 18 | about six days. |
| 11:54 | 19 | THE COURT:  Well, he may be testifying for hours |
| 11:54 | 20 | or days.  I make no representation.  That's not his choice. |
| 11:54 | 21 | MR. BONIS:  If you don't know, you don't know. |
| 11:54 | 22 | 'Cause I know that's the question I'm gonna get asked. |
| 11:54 | 23 | THE COURT:  Let me be clear.  I'm not bargaining |
| 11:54 | 24 | with him. |
| 11:54 | 25 | MR. BONIS:  No, no, no, no.  Not at all.  I just |

11:54    1    think he wants to know how long he has to be there.

11:54    2        THE COURT:  I'm not bargaining with him.  Convey

11:54    3    that directly.  I think that this case is going to be much

11:54    4    more expeditious, much more streamlined, and much more

11:54    5    succinct for the jury than the first Phase I trial.  An

11:54    6    awful lot of time was spent in the hallway with supposed

11:54    7    conferences.

11:54    8        Here, each party is required to not only tell me

11:54    9    the witnesses, but the order of witnesses, and to lay out

11:54    10   the evidence the night before and every single objection.

11:54    11   This jury trial is going to be continuous.  We're not going

11:54    12   to have sidebars.

11:54    13       Okay.  Now, that may mean he's on the stand for

11:54    14   two days, three days, one day -- I don't know.  But it

11:55    15   certainly is not going to look anything like the first

11:55    16   trial.

11:55    17       MR. BONIS:  Okay.

11:55    18       THE COURT:  Okay.  But I'm not going to represent

11:55    19   to him some time period.  And I'm not threatening you.  I am

11:55    20   telling him directly there's no bargaining position he's

11:55    21   got.

11:55    22       MR. BONIS:  No.  The reason I asked, Your Honor,

11:55    23   it's been my experience in federal court that I normally had

11:55    24   to give a list of how long I anticipated the witness's

11:55    25   testimony to be.

| | | |
|---|---|---|
| 11:55 | 1 | THE COURT:  He's critical.  I'm not requiring |
| 11:55 | 2 | either Mr. Eckert or Mr. Larian or Mr. Bryant with a |
| 11:55 | 3 | specific time.  Everybody else has a specific time |
| 11:55 | 4 | delineation, and they're going to have an ultimate hour |
| 11:55 | 5 | delineation.  But for those critical witnesses, I don't know |
| 11:55 | 6 | where direct and cross leaves us.  So I'm not representing |
| 11:55 | 7 | to him two days or four days or one day.  I just know it's |
| 11:55 | 8 | going to be much quicker than the first trial. |
| 11:55 | 9 | MR. BONIS:  Okay. |
| 11:55 | 10 | THE COURT:  Okay.  Now, I would appreciate the |
| 11:55 | 11 | courtesy of getting a call back today whether you're |
| 11:55 | 12 | successful in reaching him. |
| 11:55 | 13 | MR. BONIS:  Sure. |
| 11:55 | 14 | THE COURT:  I'm at (714) 338-4545. |
| 11:55 | 15 | MR. BONIS:  Okay. |
| 11:56 | 16 | THE COURT:  Let me, once again, say to you that I |
| 11:56 | 17 | really do appreciate your courtesy. |
| 11:56 | 18 | MR. BONIS:  Oh, no problem.  Here's the way it |
| 11:56 | 19 | works:  He's really good friends with my brother.  I'll call |
| 11:56 | 20 | my brother.  He'll find him, and then he'll call me. |
| 11:56 | 21 | THE COURT:  Awfully nice of you. |
| 11:56 | 22 | MR. BONIS:  Okay. |
| 11:56 | 23 | THE COURT:  I just want to avoid the drama, if we |
| 11:56 | 24 | can.  I assume he's going to be compliant, but I can't take |
| 11:56 | 25 | the chance where taxpayer money is involved. |

11:56   1          MR. BONIS:  Your Honor, all I can do is I'll

11:56   2   guarantee you that I will get ahold of him sooner or later.

11:56   3          THE COURT:  Awfully nice of you.  We'll be sitting

11:56   4   here waiting for your phone call.

11:56   5          MR. BONIS:  Okay.  Thank you.

11:56   6          THE COURT:  Bye-bye.

11:56   7          *(Telephone conference ended.)*

11:56   8          THE COURT:  I'll hold this Court order in abeyance

11:56   9   concerning the 18th until the end of the day, if I don't get

11:56  10   a response back.  I think wisdom would dictate that we

11:56  11   simply leave the best efforts of counsel for the present

11:57  12   time for the next six to eight hours.  If we receive no

11:57  13   response, then I'll simply sign the order of compliance, but

11:57  14   I'll date the date January 18th.  And that's going to cause

11:57  15   a tremendous inconvenience.  If he doesn't appear, then

11:57  16   we're all forewarned, and we've got time to rectify that.  I

11:57  17   really hope we don't have to go down the line of civil

11:57  18   contempt.

11:57  19          All right.  Then we're off the record.  Thank you

11:57  20   very much, Counsel.

11:57  21              *(Lunch recess held at 11:57 a.m.)*

11:57  22              *(Further proceedings reported by Jane*

11:58  23      *Sutton Rule in Volume II.)*

11:58  24                           -oOo-

11:58  25

DEBBIE GALE, U.S. COURT REPORTER

-oOo-

CERTIFICATE

        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  January 4, 2011




                         _____
                         DEBBIE GALE, U.S. COURT REPORTER
                         CSR NO. 9472, RPR, CCRR

,