ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br>Consolidated with Nos. CV 04-9059 and CV 05-2727<br><br>Hon. David O. Carter<br><br>**AMENDED AND CORRECTED JOINT WITNESS LIST OF MGA PARTIES AND MACHADO**<br><br>Trial Date: January 11, 2011 |

Pursuant to the Court's Orders, Local Rule 16-2.4 and Federal Rule of Civil Procedure 26, the MGA Parties and Gustavo Machado (the "MGA side") hereby jointly submit their amended and corrected witness list identifying all witnesses whom they current anticipate may be called during their respective cases, other than witnesses contemplated to be called solely for impeachment or rebuttal.

As suggested by the Court, the MGA Parties and Machado intend to examine witnesses called by Mattel beyond the scope of direct and to examine such witnesses on all pertinent topics to all parties' claims and defenses. The MGA side has not repeated the Mattel Corrected Witness List in this document, but hereby reserves the right to call any witness identified on Mattel's Corrected Witness List. The MGA side has endeavored to identify herein which such witnesses they intend to call whether or not such witness is found on Mattel's list.

Mattel has been producing documents continuously on a nearly daily basis since discovery closed on October 4, 2010. Mattel has yet to fully comply with the Court's orders for production of documents. Accordingly, the MGA side reserves the right to modify this witness list as appropriate to address MGA's ongoing review of late-produced documents and Mattel's continuing late production of documents.

Witnesses identified with an asterisk are outside the trial subpoena power of the Court. MGA will endeavor to obtain their voluntary personal appearance but will present their testimony by videotaped deposition pursuant to Rule 32(a)(4) and (c) in the event such efforts are unsuccessful.

|  | Name | Description | Status |
|---|---|---|---|
| 1. | Malackowski, James<br><br>Ocean Tomo<br>Damages Expert | Mr. Malackowski will rebut the calculation of Mattel's damages expert Michael Wagner and will set forth MGA's damages calculation on its affirmative | will call |

| | | | | |
|---|---|---|---|---|
| | | claims and affirmative defenses. | |
| 2. | Leahy, Margaret

Freelance sculptor; former Mattel employee | The doll sculpting process during the development of the Bratz production sculpt.  The significant differences between any of Carter Bryant's drawings and the Bratz sculpt.  Carter Bryant's lack of any significant contribution to the development of the Bratz production sculpt.  The inability to use Carter Bryant's sketches to develop a doll sculpt. Moonlighting amongst Mattel designers. | will call |
| 3. | Vilppu, Glen

Expert | Mr. Vilppu will explain the significant differences between the Bryant drawings and preliminary Bratz sculpts, on the one hand, and the final Bratz sculpt and Bratz doll products, on the other.  He will explain that any perceived similarities are the product of commonalities in the human form and standard drawing techniques. Mr. Vilppu also will offer rebuttal to certain opinions of Mattel's experts Loetz, Mirzeoff and McComb. | will call |
| 4. | Garcia, Paula

MGA Vice-President of Product Design | MGA's product development process and examples of products developed at MGA both before and after Bratz.  MGA's ability to bring products to market quickly in comparison to Mattel.  MGA's entrepreneurial culture in comparison to Mattel.  MGA's | will call |

| | | | |
|---|---|---|---|
| | | development of Bratz products and significant differences from Bryant drawings.  Noninfringement of Mattel's purported copyrights. Lack of misappropriation of trade secrets related to product design. Efforts to keep confidential MGA's unreleased product information.  Timing of development of Prayer Angels in summer of 2000.  Development of MGA's 4 Ever Best Friends product and packaging and infringement by Mattel of MGA's 4EBF trade dress.  Mattel's infringement of MGA's trapezoid packaging trade dress. | |
| 5. | Halpern, Sarah  MGA designer | Chronology of Bratz initial development at MGA. | may call |
| 6. | Middleton, Deborah  MGA artist | Development of Bratz character art, entertainment properties. Dissimilarities from Bryant's drawings. | may call |
| 7. | Domingo, Lui  MGA designer | Bratz development, themes and products and product features different from Bryant's drawings. Launch of new generations of Bratz dolls.  MGA non-reliance on Bryant drawings. | will call* |
| 8. | Storer, Aileen | Development and success of MGA packaging. | will call |

| | | | |
|---|---|---|---|
| | Former MGA Senior Creative Director | | |
| 9. | Kaufman, Kenneth

Former MGA Marketing Department | Bratz advertising and television commercials. | may call |
| 10. | Eldridge, Margo

Contractor who developed television commercials for both MGA and Mattel | Bratz television commercials. | may call |
| 11. | Hitch, Martin

Former MGA VP International Sales | Negotiations with Mattel in early 2001 to distribute Bratz in Latin America; Mattel's exposure to Carter Bryant's drawings in connection with such discussions. Mattel's knowledge of its purported claims in early 2001. Mattel's practices while he was an employee at Mattel. | will call |
| 12. | Malacrida, David

Former MGA PR Coordinator | Bratz public relations and fame. | may call |
| 13. | Khare, Samir

MGA Senior Counsel with IP responsibilities | MGA's pertinent trademark and copyright registrations.  MGA's confidentiality policies and protection of its intellectual property. | will call |
| 14. | Sadigh, Mandana

Mattel SVP Strategic Planning | Mattel's strategic planning process and strategic planning documents indicating that Bratz renewed demand in the upper end of the age range of the fashion doll market. Failure of Barbie and other Mattel | will call |

| | | | | |
|---|---|---|---|---|
| | | | products for reasons unrelated to Bratz. Mattel's reliance on outside inventors. | |
| 15. | Kilpin, Timothy<br><br>Mattel EVP of Girls Products | | Favorable reaction (while at Disney) to introduction of Bratz by MGA. Propriety of developing Disney Princess brand at Disney and then moving to Mattel as head of girls marketing. Mattel's acquisition of Disney Princess license. Mattel's obsession with cannibalization of Barbie as the touchstone of new product introduction. Barbie's loss of "cool" as a brand and its "babyish" association in the minds of girl consumers. Barbie's failures unrelated to Bratz. Mattel's obsession with Bratz success as emblematic of everything Barbie was not. Mattel's desperate efforts to rescue Barbie including the "House is on Fire" and "Gotta Regain Relevance" initiatives. Failure of Flavas because it was too edgy for Mattel. Deal with Kohl's to exclude Bratz and other strategies to kill Bratz. | will call |
| 16. | Arons, Russell<br><br>Former Mattel VP of Marketing for Barbie Products | | Arons will testify regarding the reasons for Barbie's decline unrelated to Bratz. Mattel's concerns regarding cannibalization of its Barbie brand products with the launch of new products including MyScene. Reasons for success of Bratz products. | will call |

| | | | Mattel's rush to launch the Wee 3 Friends product in response to MGA's 4 Ever Best Friends product and Mattel's evident delight at having killed off the 4 Ever Best Friends product.  Deal with Kohl's to exclude Bratz and other strategies to kill Bratz. | |
|---|---|---|---|---|
| 17. | Webster, Shirley Ph.D<br><br>Ocean Tomo (expert) | | Dr. Webster, an economist, will discuss the deficiencies of Mr. Wagner's regression analysis. | may call |
| 18. | Haag, Debbie<br><br>Former Mattel Senior Director of Barbie Marketing | | Mattel's "House is on Fire" business strategy in an effort to rescue failing Barbie.  Operation Platypus—effort by Mattel to improve its product design process.  MyScene Bling Bling and examples of other MyScene products developed in an effort to improve Mattel's failing performance.  Mattel's reliance on outside inventors. | will call |
| 19. | Fontanella, Adrienne<br><br>Former President of Mattel Girls Division | | Disproportionate importance of Barbie brand to Mattel performance.  Mattel's rejection of the name "brats" as a brand because of its inconsistency with Mattel's corporate image.  Use of consumer research to test every proposed product.  Mattel's dependence upon the Barbie brand and its obsession with cannibalization of Barbie as the touchstone of new product | will call |

| | | | | |
|---|---|---|---|---|
| | | | introduction.  Numerous factors affecting Barbie brand performance other than Bratz.  Efforts to prop up Barbie performance with financial shenanigans such as "quarter-end pushes" and decline in performance when such measures were withdrawn.  Mattel's "Bratz Defense Plan" including the introduction of MyScene as a response to Bratz.  Mattel's knowledge of its potential claims against MGA and undue delay in bringing suit.  Mattel's use of falsified documents to steal trade secrets from competitors and presentations of information fraudulently acquired from competitors including MGA. | |
| 20. | Luther, Sujata  Former Mattel SVP Strategic Planning | | Dynamics of the fashion doll marketplace and fashion doll consumers.  Mattel's research procedures and practices.  Pertinent Mattel market research.  MGA's successes in the design, marketing and advertising of Bratz.  Mattel's failures in the design and marketing of Barbie products for reasons unrelated to Bratz.  The Bratz Brief and CEO Robert Eckert's role in connection therewith.  President Matt Bousquette's "obsession" with Bratz.  Mattel's use of false credentials to obtain access to | will call* |

| | | | | |
|---|---|---|---|---|
| | | | showrooms and competitor trade secrets.  Widespread use of Mattel research methodologies in the industry. | |
| 21. | Joachimstahler, Erich Ph.D<br><br>Founder and CEO, Vivaldi Partners (expert) | | Dr. Joachimstahler, renowned brand and marketing strategist, author and former professor, will opine on the roles visual brand elements or symbols such as packaging play in consumer choices and behaviors.  Will opine on the relative significance of Bratz product attributes and brand in motivating consumer choice.  Will explain likelihood of confusion from Mattel's use of trapezoid packaging on competing toy products and resulting harm to Bratz brand.   Will explain flaws inherent in the conclusions offered by Drs. Ravi Dhar and Edward Blair concerning the reasons for the success of the Bratz brand and respond to their criticisms of Dr. Joachimstahler's analysis. | will call |
| 22. | Gruca, Thomas Ph.D<br><br>Henry B. Tippie Research Professor of Marketing at University of Iowa and Director of Analytics at Brandware Research. | | Dr. Gruca will opine on the relative influence on doll purchase decisions of the appearance of Bratz as compared to other product and brand attributes.  Dr. Gruca also will offer rebuttal to certain opinions of Mattel's experts Kivetz and Wagner. | may call |
| 23. | Rosenbaum, David<br><br>Attorney for MGA who | | Due diligence regarding the MGA-Bryant transaction and report to MGA regarding the timing of | will call |

| | | | |
|---|---|---|---|
| | handled MGA-Bryant transaction | Bryant's creation of Bratz drawings.  The timing of the MGA-Bryant transaction. | |
| 24. | Wang, Anne<br><br>Attorney for Carter Bryant who handled MGA-Bryant transaction | Representations to MGA's counsel regarding Bryant's timing of creation of Bratz drawings.  The timing of the MGA-Bryant transaction. | will call |
| 25. | Bryant, Carter | Scope of responsibilities and work at Mattel.  Timing of Bryant's Bratz drawings.  Presentation of Bratz drawings to MGA.  Lack of MGA involvement in Bryant's alleged use of Mattel resources.  Negotiation of MGA-Bryant agreement.  Larian's instruction to quit Mattel immediately upon execution of MGA-Bryant agreement.  Work on MGA's development of Bratz and timing thereof.  Understanding of inventions agreement imposed by Mattel and right to assign Bratz to MGA. | will call* |
| 26. | Bryant, Janet<br><br>Mother of Carter Bryant | Timing of Bryant's Bratz drawings. | will call* |
| 27. | Bryant, Thomas<br><br>Father of Carter Bryant | Timing of Bryant's Bratz drawings. | will call* |
| 28. | Irmen, Richard<br><br>Domestic partner of Carter Bryant | Timing of Bryant's Bratz drawings. | will call* |
| 29. | Galvano, Jeanne | Timing of Bryant's Bratz | may call* |

| | | | drawings. | |
|---|---|---|---|---|
| | | Friend of Carter Bryant | | |
| 30. | Patricia Glaser, Esq.<br><br>Partner of Glaser Weil Fink Jacobs Howard & Shapiro law firm. | Ms. Glaser may be called to address matters within the scope of the Court's order regarding waiver of attorney-client privilege as to David Rosenbaum.  Ms. Glaser also may be called to describe her longstanding relationship with Mr. Larian. | may call |
| 31. | Hoffman-Briggs, Hoi<br><br>Mattel senior designer | Mattel's design process and roles within the process; Carter Bryant's responsibilities and work at Mattel during 1999 and 2000 including the limited role of the project designer in the Barbie Collectibles Group.  Mattel employees' work on a doll wedding dress for the daughter of CEO Robert Eckert. | may call |
| 32. | Avakian, Patrick<br><br>Mattel Counsel | Mattel's admissions that Carter Bryant works were not works made for hire. | may call |
| 33. | Normile, Robert<br><br>Mattel General Counsel & Secretary | Mattel's failure to clearly explain its contracts to employees.  Mattel's secrecy concerning the specific terms of its form agreements.  Mattel's IP policies and the implementation thereof.  Mattel's tactical decision not to sue MGA, MGA HK and Isaac Larian in 2004 when it sued Carter Bryant.  Mattel's Board of Directors meetings and meeting minutes.  Mattel's concealment, suppression and destruction of evidence. | will call |

MGA SIDE  WITNESS LIST
CASE NO.  CV 04-9049-DOC (RNBx)

| 34. | Newcomb, Teresa<br><br>Mattel Senior Recruiter | Mattel's refusal to explain the meaning of its agreements to new employees and her failure to explain the agreement to Carter Bryant in particular.  The adhesive nature of the agreement signed by Bryant.  The circumstances surrounding Carter Bryant's orientation in 1999, specifically Mattel's failure to explain the Inventions Agreement to Carter Bryant and Mattel's failure to ask whether Carter Bryant understood the terms of the Inventions Agreement. | will call |
| --- | --- | --- | --- |
| 35. | Freed, Lissa<br><br>Mattel Director of Human Resources | Mattel's orientation process and practices pertaining to all new Mattel employees regardless of position or pay scale, including Carter Bryant.  Mattel's policy that employees were required to sign all on boarding paperwork in order to begin employment with Mattel.  Mattel's policy that Mattel human resource employees were not authorized to make any changes to its agreements. | will call |
| 36. | Duffy, Jan<br><br>President, Management Practices Group<br>Expert | Rebuttal testimony to Mattel experts McRae, Breslow, and Gomez.  Expert testimony regarding the deficiencies in Mattel's intellectual property protection program and policies regarding the agreement signed by Mattel and Carter Bryant;  usual | will call |

| | | | |
|---|---|---|---|
| | | and reasonable management practices and particularly Mattel's failure to take reasonable steps to avoid ambiguity and to provide a clear basis for understanding Mattel's and its employees' rights and responsibilities. | |
| 37. | Cerrito, Victoria<br><br>Mattel Intellectual Property Manager | Mattel division Fisher-Price's use of the "desdoc" system to capture and document its claimed intellectual property, and Mattel's failure to adopt the same until 2008. | may call |
| 38. | Friedman, Neil<br><br>President Mattel Brands | Industry custom to keep the identity of inventors confidential. | will call |
| 39. | Deanna "Didi" Valencia<br><br>MGA Marketing Director | MGA's practice of keeping confidential inventor identities. | may call |
| 40. | Cloonan, Elise<br><br>Mattel designer and Carter Bryant's former roommate | Moonlighting by Mattel employees.  Development of certain aspects of the Bryant pitchbook including the Bratz typeface depicted thereon. | will call |
| 41. | DeAnda, Richard<br><br>Former Mattel VP of Security; Mattel security consultant | Mattel's spying on its employees through the use of an email filter.  Mattel's investigation of claims of wrongdoing by Carter Bryant and MGA and the timing of its knowledge of its claims.  Unexplained alterations of the files regarding Mattel's investigation of its claims against Carter Bryant and MGA, including the purported disappearance for an extended | will call |

| | | | |
|---|---|---|---|
| | | period of time of an anonymous letter sent to CEO Robert Eckert making allegations against Bryant, MGA and Larian.  Lack of enforcement or investigative efforts related to moonlighting. Knowledge of alleged employee downloading of files prior to departure and failure to confront them or to notify MGA regarding such activities.  The admitted falsity of Mattel's allegation that Ron Brawer improperly removed a box of documents and other Mattel proprietary materials from Mattel upon his departure from employment.  Mattel's failure to find any evidence of wrongdoing by Brawer despite weeks of surveillance of him and his family after his last day present at Mattel. | |
| 42. | Romano, Mateo<br><br>Mattel Latin America | Statute of Limitations.  Meetings with MGA in January and February 2001 to discuss potential Latin American distribution of Bratz dolls.  Submitted Bratz data to Mattel for inclusion in Mattel systems.  Email exchange with Martin Hitch of MGA in March 2001 rejecting distribution deal based on products being "very similar to our own concepts" and "this is a very sensitive issue with the brand group (Bratz and Samanta)". | will call |
| 43. | Franke, Joe | Mattel's design process and the | may call |

| | | | | |
|---|---|---|---|---|
| | | Mattel VP Design | roles therein.  Mattel's interview of Mercedeh Ward in February 2002 regarding Carter Bryant's role in the development of Bratz at MGA.  Use by Mattel of Veronica Marlow as a contractor. | |
| 44. | | McShane, Michele<br><br>Former Mattel Senior Counsel | Mattel's investigation of potential claims against MGA in 2002 and its undue delay and unjustified failure to file suit sooner. | will call |
| 45. | | Quinn Emanuel & Sullivan Custodian of Records | Pleadings, declarations and deposition testimony of Mattel witnesses given in connection with Mattel's defense of the <u>Viveros</u> case; settlement agreement concerning that action. | will call |
| 46. | | Ongchangco, Kislap<br><br>Mattel designer | Mattel's immediate perception in the summer of 2001 that Bratz was a knockoff of Diva Starz.  His understanding that he owns drawings done on his own time outside the scope of employment. Mattel's theft of an outside inventor's drawings for use in Diva Starz. | may call |
| 47. | | Hastey, Debbie (Meyer)<br><br>Mattel designer | Statute of limitations.  Mattel girls product design and marketing. | may call |
| 48. | | Linker, Steven<br><br>Former partner in Penny Arcade design firm | Prior art for Bratz; Penny Arcade work for Mattel on Diva Starz; statute of limitations. | may call |
| 49. | | Hogan, Liz<br><br>Former partner in Penny Arcade design firm | Prior art for Bratz; Penny Arcade work for Mattel on Diva Starz; statute of limitations. | may call |

| 50. | Fonseca, Heather<br><br>Former Mattel Senior Project Designer | Carter Bryant's duties and responsibilities.  Carter Bryant's departure from Mattel.  Mattel's failure to preserve relevant evidence. | will call |
|---|---|---|---|
| 51. | Longsdorf, Ron<br><br>Former Mattel Senior Vice President Product Design | Structure of Mattel's product design groups and delineations between them.  Barbie Collectibles design group.  Significant problems with Barbie Collectibles business and layoffs therein.  Ongoing threat of layoffs in Barbie Collectibles business.  Carter Bryant's duties and responsibilities and departure from Mattel, including Mattel's knowledge that Bryant was working for MGA. | will call |
| 52. | Nordquist, Jill<br><br>Former Mattel Marketing Manager for Barbie Collectibles/Mattel 30(b)(6) witness | Mattel's knowledge that Carter Bryant left Mattel for MGA and was working on Bratz at MGA.  Belief that Bryant lied in his exit interview about plans to join a competitor.  Widespread belief within Mattel that Carter Bryant was involved in designing Bratz with MGA and Mattel's subsequent failure to act.  Widespread Mattel belief that Bratz had been copied from Mattel's Diva Starz and Mattel's subsequent failure to act. | will call |
| 53. | Prince, Jacqueline<br><br>Mattel employee and notary | Ms. Prince is expected to offer testimony pertinent to the statute of limitations defense. | may call |
| 54. | Monteagudo, Carmen | Ms. Monteagudo is expected to | may call |

| | | | | |
|---|---|---|---|---|
| | | Mattel designer | offer testimony pertinent to the statute of limitations defense. | |
| 55. | Kyaw, Sheila<br><br>Mattel designer | Ms. Kyaw is expected to offer testimony pertinent to the statute of limitations defense. | may call |
| 56. | Palmer, Rodney<br><br>Mattel Manager of Global Networks | The inexplicable absence of Mattel's phone records for Carter Bryant's extension during October 2000. | will call |
| 57. | Simoneau, Robert<br><br>Former Mattel Investigator | Mattel's investigation and knowledge of the origins of Bratz and its claims of wrongdoing; undue delay in bringing suit. | will call |
| 58. | Park-Beal, Cassidy<br><br>Former Mattel VP of Design | Mattel's knowledge of its claims of MGA wrongdoing and undue delay in bringing suit. | may call |
| 59. | Viohl, Evelyn<br><br>Mattel Senior Project Designer | Mattel's knowledge of its claims of MGA wrongdoing and undue delay in bringing suit. | will call |
| 60. | Quick, Raime<br><br>Mattel HR Regional Director | Statute of limitations:  interview with Mercedeh Ward in February 2002 wherein Ms. Quick queried Ms. Ward at length regarding Carter Bryant and his role at MGA in the development of Bratz. | will call |
| 61. | Marlow, Veronica<br><br>Former Mattel design employee | Chronology and development of Bratz by MGA.  Creation of Bratz fashions including independent contractor relationship with MGA. Marlow's employment of Cabrera, Morales and Salazar.  Marlow's nondisclosure to MGA of information regarding the identity | will call |

- 16 -

| | | | |
|---|---|---|---|
| | | and status of her employees. Moonlighting by other Mattel designers. | |
| 62. | Marlow, Peter<br><br>Husband of Veronica Marlow | Marlow's invoices to MGA. Nondisclosure of information to MGA regarding seamstress employees. | will call |
| 63. | Lyter, Albert Ph.D<br><br>Expert | Expert testimony regarding his testing of Bryant's sketches and the Prince notary book.  Rebuttal testimony to Mattel experts Cunningham and Aginsky. | will call |
| 64. | Tonnu, Lisa<br><br>Former MGA VP of Taxation | Reference to indemnity obligation to Carter Bryant in MGA's tax appeal documents referred to fee reimbursement agreement. Corporate structure and ownership of MGA.  Pass-through structure of MGA. | may call |
| 65. | Art Ortega<br><br>Retired Ernst & Young Partner | Reference to indemnity obligation to Carter Bryant in MGA's tax appeal documents referred to fee reimbursement agreement. | may call |
| 66. | Mark Oates<br><br>Partner, Baker & McKenzie | MGA's communication to the IRS regarding lack of indemnity obligation to Carter Bryant. | may call |
| 67. | Aqualina, James<br><br>Stroz Friedberg | MGA's preservation of electronic evidence.  MGA's production of Larian hard drives for lengthy and extensive analysis. | may call |
| 68. | Lockhart, Kenneth<br><br>Former MGA head of IT | MGA's use of electronic systems and preservation of electronic evidence. | may call |
| 69. | Dubois, Matthew | Production of documents in this | may call |

| | | | | |
|---|---|---|---|---|
| | | Orrick Litigation Support Manager | litigation including without limitation the number of documents produced, production dates and ESI associated with particular documents. | |
| | 70. | Rubin, Sam<br><br>Director, Digital Forensics at Stroz Friedberg<br><br>Expert | Metadata relating to The Bratz Brief.  Operation and use of BeClean, a software found on some MGA computers.  Operation and use of Evidence Eliminator, a software found on two Carter Bryant personal computers.  Rebutting Mattel's claim (if any) that there were deletions on Larian hard drives. | will call |
| | 71. | Lambda Investigations | Surveillance reports and video of Ron Brawer and family | will call |
| | 72. | Brawer, Ron<br><br>Former MGA Senior Vice President Marketing & Sales and former Mattel Senior Vice president | Mattel's unfair business practices, including practices to kill Bratz. Bousquette's obsession with Bratz. Use of litigation as a business strategy.  Lack of trade secret misappropriation. | will call |
| | 73. | Shore, Michael Ph.D<br><br>Mattel VP Consumer Research | Mattel's relevant consumer research.  Psychological characteristics of children pertinent to fashion doll product design, marketing and purchase motivation.  Mattel's practice of using falsified documents to obtain admission to competitors' showrooms and other activities of the market intelligence group. | will call |
| | 74. | Ross, Steven | Failures and limitations of Barbie and MyScene brand products | will call |

| | | | |
|---|---|---|---|
| | Mattel Vice-President with responsibility for Barbie entertainment products | unrelated to Bratz. | |
| 75. | Dickson, Richard<br><br>Former head of Mattel Licensing of Barbie Consumer Products | Reasons for failures of Barbie Consumer Products Licensing unrelated to Bratz.  Reasons for Bratz successes.  Limitations on Mattel's MyScene brand fashion dolls including Mattel's difficulty separating MyScene from Barbie and treating it as an independent brand. | will call* |
| 76. | Farr, Kevin<br><br>Mattel CFO | Mattel financials including rolled up financials of foreign subsidiaries, Board of Directors financial reports, quarterly and annual SEC filings, quarterly earnings conferences.  Numerous reports in financial documents, board memoranda, SEC filings and elsewhere of factors other than Bratz affecting Barbie performance including financial shenanigans such as quarter-end pushes.  Increase in operating profits in Mattel Mexico after departure of Machado, Vargas and Trueba.  Increase in operating profits of Mattel Canada after departure of Brisbois. | will call |
| 77. | Vogelstein, John<br><br>Member of Mattel's Board of Directors | Mattel's over-reliance on the Barbie brand for its economic performance and the Board's panic at the erosion of Barbie market share.  Presentation of the Bratz | will call* |

| | | | |
|---|---|---|---|
| | | Brief at the November 2003 Board Meeting.  CEO Eckert's reputation as a cost-cutter and repeated layoffs of Mattel personnel during his tenure—many of whom subsequently went to work for MGA.  Eckert's recurring blame of Bratz for Barbie market failures. What the Board was told about Mattel's knowledge of Carter Bryant's involvement in the creation of Bratz and the timing of that knowledge (as pertains to fraudulent concealment).  Mattel's 2004 Strategic Plan and its "first follower" strategy based on stealing information from competitors. | |
| 78. | Sinclair, Christopher  Member, Mattel Board of Directors | Mattel's over-reliance on the Barbie brand for its economic performance and the Board's panic at the erosion of Barbie market share.  Sinclair's direct intervention by demanding that Barbie marketing personnel explain product performance, and their corresponding presentations to him.  Presentation of the Bratz Brief at the November 2003 Board Meeting.  CEO Eckert's reputation as a cost-cutter and repeated layoffs of Mattel personnel during his tenure.  Eckert's recurring blame of Bratz for Barbie market failures.  What the Board was told about Mattel's knowledge of | will call |

| | | | | |
|---|---|---|---|---|
| | | | Carter Bryant's involvement in the creation of Bratz and the timing of that knowledge (as pertains to fraudulent concealment).  Mattel's 2004 Strategic Plan and its "first follower" strategy based on stealing information from competitors. | |
| 79. | Rich, Andrea Dr.<br><br>Member, Mattel Board of Directors | Mattel's over-reliance on the Barbie brand for its economic performance and the Board's panic at the erosion of Barbie market share.  Presentation of the Bratz Brief at the November 2003 Board Meeting.  CEO Eckert's reputation as a cost-cutter and repeated layoffs of Mattel personnel during his tenure.  Eckert's recurring blame of Bratz for Barbie market failures.  What the Board was told about Mattel's knowledge of Carter Bryant's involvement in the creation of Bratz and the timing of that knowledge (as pertains to fraudulent concealment).  Mattel's 2004 Strategic Plan and its "first follower" strategy based on stealing information from competitors. | will call |
| 80. | Scothon, Chuck<br><br>Former Mattel head of Girls Marketing | Continuing failure of Barbie brand in 2006 for reasons unrelated to Bratz. | will call |
| 81. | Ng, Dominic<br><br>Member Mattel Board | Mattel Board's concern regarding continuing problems with Barbie performance.  Continuing failure | will call |

- 21 -

| | | | |
|---|---|---|---|
| | of Directors. | of Barbie brand in 2006 for reasons unrelated to Bratz. | |
| 82. | Brittain White, Kathy<br><br>Member, Mattel Board of Directors | Mattel's annual strategic planning process.  Significance of Barbie brand as "core business" of Mattel and significance to Mattel's Board of dominant market share in fashion doll category.  Lackluster performance of Barbie brand for reasons unrelated to Bratz.  The Bratz Brief. | will call |
| 83. | Sato, Alice<br><br>Former secretary to Robert Eckert | Recordkeeping for Robert Eckert, authentication of documents and spoliation by Robert Eckert. | will call |
| 84. | McFarland, Christine<br><br>Former secretary to Robert Eckert | Recordkeeping for Robert Eckert.  Memoranda sent by McFarland on behalf of Eckert to the Mattel Board of Directors describing reasons for dismal Barbie performance.  Authentication of documents and spoliation by Robert Eckert. | will call |
| 85. | Eckert, Robert<br><br>Mattel CEO | Mattel's difficulties as a company when he took over in 2000.  Decline in Barbie brand performance before introduction of Bratz.  The disproportionate significance of Barbie brand to Mattel causing enormous pressure to rescue Barbie brand's performance.  Eckert's obsessive focus on market share as a measure of Barbie brand performance.  Numerous factors affecting Barbie brand | will call |

- 22 -

performance other than Bratz including financial shenanigans such as "quarter end pushes" and massive recalls due to product safety issues.  Mattel's promotion of a certain corporate image and refusal to introduce products that might be inconsistent with Barbie image or that might cannibalize Barbie.  The nature of the toy industry as a fashion/fad industry.  Barbie's maturity as a brand and saturation of the marketplace.  Barbie's negative brand connotation as "babyish" and its loss of "cool."  Barbie's loss of share to products other than Bratz including Disney Princess and various Mattel products such as What's Her Face, MyScene and others.  The focus of Mattel's Board of Directors on rescuing Barbie, Barbie market share, and the success of Bratz as a symbol of everything that was wrong with Mattel.  The Board's panic when domestic Barbie revenues dropped twenty-nine percent in the second quarter of 2003 as reported at the August 2003 Board meeting by CFO Kevin Farr.  The Bratz Brief commissioned after the August 2003 Board Meeting.  Presentation of The Bratz Brief to Mattel's Board of Directors at the next meeting of the Board in November

| | | | |
|---|---|---|---|
| | | 2003.  Mattel's knowledge of its claims, the timing of its knowledge of its claims, and its decision to file this lawsuit.  Mattel's deliberate tactical decision to file suit initially against Carter Bryant only with full knowledge of its claims against MGA and even though it believed it had been harmed by MGA's sale of Bratz products when it sued Bryant.  Eckert's spoliation of evidence in the form of his practice of continued daily deletion of all of his emails, including sent emails, despite the fact that Mattel had filed this litigation.  Eckert's deletion of specific emails highly relevant to this lawsuit, including among others his "What Happened to Barbie" email.  Mattel's corporate strategic planning process and the "What Happened to Barbie" presentation to the Board of Directors in at least November 2003, September 2004 and September 2005.  Mattel's thefts of MGA trade secrets. | |
| 86. | Villasenor, Sal<br><br>Former Mattel Market Intelligence | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and | will call |

- 24 -

| | | | |
|---|---|---|---|
| | | instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | |
| 87. | Rahimi, Sharon<br><br>Independent contractor for Mattel market intelligence group | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | will call |
| 88. | Turetzky, Matthew<br><br>Former Mattel VP of Strategic Planning | Pertinent Mattel consumer research including the New Brand Cannibalization Study.  Mattel's delay in bringing suit despite widespread belief within Mattel of alleged wrongdoing by MGA. | will call |

- 25 -

| | | | |
|---|---|---|---|
| | | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA. Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA. Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act. Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA. Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA. The knowledge of and use by Mattel executives of stolen information. Bousquette's demand for competitive intelligence and approval of fraudulent practices. | |
| 89. | Bradley (Snyder), Tyler<br><br>Former Mattel Market Intelligence | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA. Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act. Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of | will call |

| | | | | |
|---|---|---|---|---|
| | | | MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | |
| 90. | Osier Dermody, Kelly<br><br>Former Mattel Market Intelligence | | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | will call |
| 91. | Plunkett, Carey<br><br>Mattel Market Intelligence | | Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act.  Mattel's awareness of and instruction to employees to use | will call |

| | | | |
|---|---|---|---|
| | | falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information.  Lack of any disciplinary efforts taken by Mattel against Mattel employees and contractors who engaged in false pretenses to obtain trade secrets. | |
| 92. | Bodden (Chomo), Julie<br><br>MGA Vice-President Sales | Efforts to keep confidential MGA unreleased product information.  MGA's sales process and relationships with major retailers. | may call |
| 93. | Vollero, Andrew<br><br>Former Mattel VP Strategic Planning | Knowledge related to statute of limitations defense.  Supervision of market intelligence group and widespread knowledge among executives of the activities of the group.  Barbie's failures unrelated to Bratz.  Deal with Kohl's to exclude Bratz and other strategies to kill Bratz. | will call |
| 94. | Hahn, Esther<br><br>NPD Funworld | NPD is a toy industry data provider.  Ms. Hahn will testify regarding NPD's policies regarding use of its information, Mattel's complaint to NPD regarding MGA's purported violation of such policies and withholding of its fees resulting in NPD's termination of MGA's | may call* |

| | | | |
|---|---|---|---|
| | | subscription and Mattel's then payment; NPD's failure to terminate Mattel for violations of its policies. | |
| 95. | Hooks, Brian<br><br>Former Executive Vice President of Mattel PR Agency Peterson, Milla, Hooks | Mattel's negative PR efforts against MGA in order to "kill Bratz."  Mattel's lack of sincerity regarding intended success of MyScene.  Mattel's desire to "damage" Bratz with MyScene. | will call* |
| 96. | Jensen, Julia<br><br>Mattel VP of Worldwide PR | Mattel's use of negative PR against Bratz. | will call |
| 97. | Bongiavanni, Lisa<br><br>Mattel PR | Mattel PR.  Mattel's use of negative PR against Bratz. | will call |
| 98. | Custodian of Records of Mattel Inc. | Authentication and admission of various Mattel business records. | may call |
| 99. | Custodian of Records of Mattel Mexico | Authentication and admission of various business records. | may call |
| 100. | Custodian of Records of Mattel Servicios | Authentication and admission of various business records. | may call |
| 101. | Custodian of Records of Mattel Canada | Authentication and admission of various business records. | may call |
| 102. | Bossick, Jerome<br><br>Mattel SVP of Strategic Planning | Creation and use of The Bratz Brief.  Mattel's delay in bringing suit despite widespread belief within Mattel of wrongdoing by MGA.  Mattel's practice of stealing trade secrets and other confidential information from competitors including MGA.  Mattel's practice of stealing trade secrets and other confidential information from competitors | will call |

| | | | | |
|---|---|---|---|---|
| | | | including MGA.  Mattel's use of the mail and wires to collect and disseminate such information in violation of the Copyright Act. Mattel's awareness of and instruction to employees to use falsified documents to gain access to trade secrets, including those of MGA.  Mattel's systematic collection, dissemination and storage of trade secrets and other confidential business information from its competitors including MGA.  The knowledge of and use by Mattel executives of stolen information. | |
| 103. | Louie, John<br><br>Mattel Senior Director of Strategic Planning and Business Development | Knowledge of practices of Market Intelligence Group in sneaking into competitors' showrooms. Bousquette's demand for competitive intelligence and approval of fraudulent practices. | will call |
| 104. | Cleary, Jerry<br><br>Former Mattel Executive VP of Sales and Merchandising | Mattel's unfair and anti-competitive agreement with Kohl's not to purchase any MGA products for at least two years, and other exclusionary conduct by Mattel designed to keep MGA products from consumers and off the market.  Mattel's efforts to kill Bratz. | will call |
| 105. | Zablow, Milt<br><br>Former Mattel SVP of Sales | Mattel's unfair and anti-competitive agreement with Kohl's not to purchase any MGA products for at least two years, and other exclusionary conduct by | will call |

| | | | |
|---|---|---|---|
| | | Mattel designed to keep MGA products from consumers and off the market.  Mattel's efforts to kill Bratz. | |
| 106. | Bousquette, Matthew <br><br> Former President of Mattel Brands | Significance of Barbie brand to Mattel.  Significance of high market share in fashion doll category to Mattel.  Enormous pressure from the Board and CEO Eckert to rescue Barbie brand when he took over as President of Mattel Brands in 2003.  Problems with Barbie brand that existed before and had nothing to do with Bratz.  Successes of Bratz for reasons other than the appearance of the doll such as accessories and packaging.  Obsessive focus on Bratz as an illustration of everything MGA was doing right and Mattel was doing wrong.  Numerous and varied unfair and fraudulent efforts to kill Bratz in the marketplace, including thefts of MGA trade secrets and Kohl's deal.  Development of Flavas to carry out Bratz defense plan and failure of Flavas because the product was too edgy for Mattel.  Success in using Wee 3 Friends to kill 4 Ever Best Friends. | will call* |
| 107. | Moore, Phillip <br><br> Mattel Senior Director Global Information Technology | Mattel's suppression, concealment and destruction of evidence.  Mattel's failures to preserve evidence.  Mattel's deliberate failures to search for relevant | will call |

| | | evidence in order to conceal and suppress such evidence, including its failure to search its Enterprise Vault.  Highly relevant emails deleted by Robert Eckert and found only on backup tapes.  Mattel's failure and refusal to search backup tapes for other relevant Eckert emails despite Eckert's "double-deletion" practices.  Authentication of Mattel's How-to-Steal Manual. | |
|---|---|---|---|
| 108. | Kawashima, Fred<br><br>Mattel Senior Manager of Systems and Network Engineering | Mattel's email systems and destruction of evidence therein including its continued use of auto-deletion even after filing this litigation. | will call |
| 109. | Hagey, Russ<br><br>Bain & Company | Bain consultant who will testify regarding Bain Report—Project Doll containing confidential MGA information and Mattel's manipulation and spoliation of evidence related to the Bain Report.  Michael Moore altered the content of the report to and ordered all copies of prior version destroyed in order to avoid discovery in this litigation.  Admission of Mattel marketing manager to Bain interviewers that Mattel paid German retailers to keep Bratz off the shelves. | will call |
| 110. | James, Andrew<br><br>Bain & Company | Bain consultant who will testify regarding Bain Report—Project Doll containing confidential MGA information and Mattel's | will call |

| | | | | |
|---|---|---|---|---|
| | | | manipulation and spoliation of evidence related to the Bain Report.  Michael Moore altered the content of the report to and ordered all copies of prior version destroyed in order to avoid discovery in this litigation.  Admission of Mattel marketing manager to Bain interviewers that Mattel paid German retailers to keep Bratz off the shelves. | |
| 111. | Moore, Michael<br><br>Mattel Senior Counsel | | Mattel's tactical decision not to sue MGA, MGA HK and Larian when it sued Carter Bryant in April 2004.  Mattel's delay in bringing any trade secret claim based upon Bratz.  Mattel's knowledge of alleged wrongdoing by MGA starting in 2001 and its investigation in 2002 and 2003 and unjustified delay in bringing suit.  Use of email filtering device to capture employees' email and advance knowledge of departures of Mattel employees.  Failure to produce email captured by email filtering device.  Mattel's deliberate withholding of evidence relevant to this litigation concerning activities of the Market Intelligence Group.  Mattel's improper efforts to hide evidence and influence testimony of witnesses including Villasenor and Vargas.  Mattel's deliberately inadequate investigation of | will call |

| | | | |
|---|---|---|---|
| | | Villasenor's complaint of unlawful activity.  Mattel's deliberate failure to comply with court orders for the production of documents. | |
| 112. | Barrera, Patricio<br><br>Attorney of Sal Villasenor | Mattel suppression of evidence concerning unlawful activity of Villasenor. | will call |
| 113. | Sauer, Eve<br><br>Attorney, Sauer& Wagner | "Investigation" into Villasenor's complaint of unlawful activity. Mattel's suppression of relevant evidence. | may call |
| 114. | Thomas, Jill<br><br>Mattel Senior Counsel | Mattel's tactical decision not to sue MGA, MGA HK and Larian when it sued Carter Bryant in April 2004.  Mattel's unjustified delay in bringing suit.  Delay in bringing any claim for trade secret misappropriation claim related to Bratz.  Mattel's deliberate withholding of evidence relevant to this litigation.  Mattel's improper efforts to hide evidence and influence testimony.  Mattel's deliberate failure to comply with court orders for the production of documents. | will call |
| 115. | Bacon, Schuyler<br><br>Former MGA Director of Recruiting | MGA's procedures in hiring former Mattel employees.  MGA's instructions to former Mattel employees not to take Mattel documents or to bring such documents with them.  A summary of former Mattel employees hired by MGA, their positions and status. | will call |

| 116. | Foti, Janice<br><br>Former MGA Vice-President of Human Resources | MGA's procedures in hiring former Mattel employees.  MGA's instructions to former Mattel employees not to take Mattel documents or to bring such documents with them.  A summary of former Mattel employees hired by MGA, their positions and status. | will call |
|---|---|---|---|
| 117. | Whaley, Linda<br><br>Former MGA Senior Director of Human Resources | MGA's procedures in hiring former Mattel employees.  MGA's instructions to former Mattel employees not to take Mattel documents or to bring such documents with them.  A summary of former Mattel employees hired by MGA, their positions and status. | will call |
| 118. | Gronich, Daphne<br><br>Former MGA General Counsel | MGA's preservation of documents.  MGA's policy to require all former Mattel employees to confirm that they would not remove Mattel confidential materials or bring them to MGA.  MGA's protection of its intellectual property. | will call |
| 119. | Woods, Mel<br><br>Former MGA President | Acquisition discussions between Mattel and MGA and valuation of MGA and Bratz.  Termination of Veronica Marlow as MGA contractor. | may call |
| 120. | Han, Janet<br><br>President of Licensing for Sanrio (Hello Kitty); former MGA  VP of | MGA's policy to require all former Mattel employees to confirm that they would not remove Mattel confidential materials or bring them to MGA. | may call |

| | | | | |
|---|---|---|---|---|
| | | Licensing and former Mattel Director of Sales | Mattel's access to confidential MGA information. | |
| 121. | Varu (Patel), Tina<br><br>Served as Bratz Brand Manager for MGA and then MyScene Brand Manager for Mattel | Mattel's efforts to recruit and hire MGA employees, including those who worked on Bratz, into directly competing positions at Mattel. Mattel's analysis of MGA's trapezoidal packaging, and what was distinctive and successful about that packaging. Examples of MyScene doll products. | will call |
| 122. | Hardouin, Chris<br><br>Mattel product designer and former MGA product designer | Mattel's efforts to recruit and hire MGA employees into directly competing positions at Mattel. | will call |
| 123. | Caspi, Yuval<br><br>MGA designer | Lack of any alleged trade secret misappropriation by former summer intern Ryan Toumoulian. | may call |
| 124. | Wolk, Bennett<br><br>Former Mattel Director of Consumer Research. | Lack of any alleged trade secret misappropriation by Shirin Salemnia. Widespread use of purported Mattel research methodologies. Mattel's market intelligence theft of competitor trade secrets. Positive performance reviews based on theft of competitor trade secrets. | may call |
| 125. | Schwartz, Corey<br><br>Head of ConsumerQuest (third party research agency) and former Mattel Director of Consumer Research. | Lack of any alleged trade secret misappropriation by Shirin Salemnia. Widespread use of purported Mattel research methodologies. Mattel's anticompetitive effort to preclude ConsumerQuest from providing services to MGA. | may call |

MGA SIDE  WITNESS LIST
CASE NO.  CV 04-9049-DOC (RNBx)

| | | | |
|---|---|---|---|
| 126. | Cooney, Daniel J. Jr.<br><br>Former MGA VP of Sales and Former Mattel Senior Brand Manager for Matchbox | Lack of trade secrets or misappropriation. | will call* |
| 127. | Murtha, Eugene<br><br>Former Mattel VP of International Business Development | Lack of value to purported trade secrets misappropriated by underling Cooney. | will call* |
| 128. | Contreras, Nick<br><br>Former MGA Senior VP of Customer Marketing and Mattel Director of Customer Marketing | Lack of trade secrets or misappropriation. | will call |
| 129. | Brisbois, Janine<br><br>MGA Canada VP of National Accounts and Former Mattel National Sales Director | Lack of trade secrets or misappropriation. | will call |
| 130. | Goveia-Gordon, Diane<br><br>MGA Canada General Manager | Lack of trade secrets or misappropriation related to Janine Brisbois.  MGA Canada financials. | will call |
| 131. | Totzke, Steve<br><br>Mattel Canada General Manager | Lack of trade secrets or misappropriation related to Janine Brisbois.  Lack of harm to Mattel Canada.  Misappropriation of MGA's trade secrets at Hong Kong Toy Fair. | will call |
| 132. | Graham, Kim | Mattel's exit interview process and forms and identification of | will call |

| | | Mattel VP of Human Resources | categories of documents containing alleged trade secrets in such forms.  Mattel's exit interview for Jorge Castilla, including its knowledge that Castilla had allegedly downloaded documents prior to his departure, and its failure to confront him with its beliefs in that regard despite the claim that such documents contained trade secrets. | |
| 133. | Castilla, Jorge<br><br>MGA Manager of Sales Planning and former Mattel International Business Analyst | Lack of disclosure of any allegedly downloaded trade secrets to MGA.  Lack of use of any allegedly downloaded trade secrets at MGA. | will call |
| 134. | Coleman, Nicole<br><br>Former MGA Senior VP of Sales Operations | MGA's creation of its own inventory and forecasting system that had nothing to do with any attributes of the Mattel system. | will call |
| 135. | Harris, Rebecca<br><br>MGA VP of Sales Administration and Planning | MGA's creation of its own inventory and forecasting system that had nothing to do with any attributes of the Mattel system. | will call |
| 136. | Debrowski, Thomas<br><br>Mattel EVP Operations | Mattel's threats to MGA suppliers in Asia.  Mattel's problems with its forecasting and inventory process.  Mattel's numerous problems with product safety. | may call |
| 137. | Garcia, Yehuda Bassok Ph.D<br><br>USC Marshall School | Information in alleged Castilla downloaded documents regarding inventory and forecasting was either generally known, readily available in the industry, or was of | will call |

| | | | |
|---|---|---|---|
| | | of Business, Professor and Chair Information and Operations Management (expert) | little if any value to a competitor of Mattel. | |
| 138. | Park, Thomas<br><br>Former MGA COO | MGA's creation of MGAE de Mexico, its lack of knowledge or inducement of any acquisition, disclosure or use of Mattel trade secrets. | may call |
| 139. | Huerta-Bleck, Alberto<br><br>Expert | Mexican law regarding corporate profit sharing and structure of Mattel Servicios.  Other pertinent aspects of Mexican law. | may call—only if the Court wishes further testimony regarding Mexican law pursuant to its Rule 44.1 determinations |
| 140. | Kuemmerle, Susana<br><br>Former MGA de Mexico General Manager | MGA's creation of MGAE de Mexico, its lack of knowledge or inducement of any acquisition, disclosure or use of Mattel trade secrets.  Lack of confidential information disclosures and disloyalty of Machado, Vargas or Trueba while still employed by Mattel Servicios.  The business operations of MGAE de Mexico. Mattel's improper interference with MGA's products and marketing.  The lack of | will call* |

| | | profitability of MGAE de Mexico. | |
|---|---|---|---|
| 141. | Machado Gomez, Carlos Gustavo | Will testify about his purported contracts with Mattel and its subsidiaries, his work at Mattel Servicios, including his duties and responsibilities there, Mattel's use of competitor's information, his contacts with MGA regarding the new employment opportunity, his departure from Mattel Servicios, Mattel's allegations of use or disclosure of Mattel information, his work at MGA de Mexico and his transfer to MGA in the U.S. | will call |
| 142. | Machado, Gustavo Sr.<br><br>Father of Gustavo Machado | Testimony regarding gift of computer of Gustavo Machado to rebut alleged spoliation. | may call |
| 143. | Tiburcio, Francisco<br><br>Basham Ringe & Correa | Mattel's improper manipulation of Vargas testimony. | may call |
| 144. | Trueba, Mariana<br><br>Former MGA de Mexico Marketing Manager | Lack of misappropriation of trade secrets and lack of fiduciary duty. | will call* |
| 145. | Zalzman, Gabriel<br><br>Former Mattel Mexico General Manager (currently employed by Mattel) | The limited duties of Machado, Vargas, and Trueba to establish they were not fiduciaries.  Will describe how the Executive Committee actually ran the business in Mexico.  Will testify about inconsistent application of Mattel's confidentiality policies. | may call |
| 146. | Isaias, Roberto | The limited duties of Machado, | may call |

| | | | |
|---|---|---|---|
| | Former Mattel Mexico Director of Sales (presently Mattel Mexico General Manager) | Vargas, and Trueba to establish they were not fiduciaries.  Will explain the differences among the various Mattel entities in Mexico, and explain Mattel Servicios.  Contact with Vargas.   Lack of harm of sales of Bratz to sales of Barbie in Mexico market. | |
| 147. | Ibarra, Ricardo

Former Mattel Mexico Director of Marketing | Mattel's acquisition and use of confidential information of other companies in Mexico.  Mattel's response to Bratz in Mexican market. | may call |
| 148. | Elias, Jaime

Mattel Investigator | Mattel's investigations and surveillance of its employees.  History of conflicting and false forensic analyses of Mexico hard drives.  Mattel's IT department falsification of evidence related to Machado's hard drive.  Mattel's extended search for any expert to support its theory that Machado damaged his hard drive.  The admitted falsity of Mattel's allegation that Ron Brawer improperly removed a box of documents and other Mattel proprietary materials from Mattel upon his departure from employment. | will call |
| 149. | Olson, Steven

O'Melveny & Myers | Statements made by Pablo Vargas regarding lack of any misappropriation of trade secrets. | may call |
| 150. | Valencia Garcia, Hugo

Attorney of Pablo | Mattel's improper efforts to influence testimony of Pablo Vargas. | will call* |

MGA SIDE  WITNESS LIST
CASE NO.  CV 04-9049-DOC (RNBx)

| | | Vargas | | |
|---|---|---|---|---|
| 151. | | Storie, Keith<br><br>Mattel VP of Finance Assistant Controller | Non-existence of trade secrets, including Mattel's failure to employ reasonable measures to protect alleged trade secrets.  Lack of damages from alleged misappropriation. | will call |
| 152. | | Pembleton, Ninette<br><br>MGA Director of Sales Operations | Factors to support commercial strength of MGA's trapezoidal packaging. | will call |
| 153. | | Lawrence Deitch<br><br>Deitch Media Management, Inc. Custodian of Records | MGA's advertising for Bratz and 4 Ever Best Friends. | may call* |
| 154. | | Paul Caldera<br><br>Beacon Media Group LLC Custodian of Records | MGA's advertising for Bratz. | may call* |
| 155. | | Djiguerian, Leon<br><br>MGA Product Designer | MGA use of trapezoidal packaging.  MGA's development of different Bratz themes and product lines.  The significant differences between any of Carter Bryant's drawings and the Bratz products. | will call |
| 156. | | Ashbrook, Erika<br><br>Mattel Senior Director of Sales | Wal-Mart's perception that Mattel's Wee 3 Friends product was a "knockoff" of MGA's 4 Ever Best Friends.  Wal-Mart's complaints that Mattel was interfering with Bratz products on Wal-Mart shelves. | will call |
| 157. | | Hibbert, Constance | Mattel's interference with Bratz | will call |

| | | | | |
|---|---|---|---|---|
| | | Mattel Director of Retail Services | products on the shelves and Wal-Mart's complaints regarding same. | |
| 158. | | Laubenstein, Barb<br><br>Former Wal-Mart Buyer of Girls Products | Perception that Mattel's Wee 3 Friends product was a "knockoff" of MGA's 4 Ever Best Friends Product. | will call* |
| 159. | | Ronchetto, Heather (Hocut)<br><br>Former Wal-Mart Buyer of Girls Products | Mattel's interference with Bratz product on shelves of Wal-Mart stores in several large states including California, Texas and Florida. | will call* |
| 160. | | Marks, Leah<br><br>MGA Director of Licensing | Mattel's disruption of numerous MGA business relationships through its fraudulent procurement of an injunction in this action. | will call |
| 161. | | Carson, Peter<br><br>Partner Bingham McCutcheon | The legal structure of the OMNI transaction. | will call |
| 162. | | Kadisha, Neil<br><br>Independent businessman | The business reasons and economics of the OMNI transaction. | will call |
| 163. | | Karol, Sheon<br><br>Former MGA Chief Restructuring Officer and Consultant from Mesirow Financial | MGA's economic hardship and efforts to attract funding at the time of the OMNI transaction. | may call* |
| 164. | | Kupietzky, Moshe<br><br>Partner Sidley & Austin | Legal formation and participation of IGWT 826 in the OMNI transaction; legal structure of the OMNI transaction. | may call |
| 165. | | Moinian, Joseph | Participation as a funder in the | may call* |

MGA SIDE  WITNESS LIST
CASE No.  CV 04-9049-DOC (RNBx)

| | | | |
|---|---|---|---|
| | CEO of The Monian Group | OMNI transaction. | |
| 166. | Joliceur, Dennis<br><br>MGA CFO | MGA's financials, sales reports and other periodic reports.  MGA's IT function and systems. | will call |
| 167. | Schultz, Stephen<br><br>MGA Controller | MGA's financials, sales reports and other periodic reports. | may call |
| 168. | Crisanti, Pedro<br><br>MGA International Accountant | MGAE de Mexico financials | will call |
| 169. | Pietri, Didier<br><br>Former MGA COO<br>Former President of Capital Cities ABC | MGA's business while Pietri was COO; rebuttal to any assertions of wrongdoing by Brian Wing. | will call |
| 170. | Woodman, Spencer<br><br>MGA Royalty Administrator | Royalty payments to Carter Bryant and others as may be pertinent to calculation of damages | may call |
| 171. | Larian, Isaac<br><br>MGA CEO and President | All aspects of MGA's defenses to Mattel claims and MGA's affirmative claims.  MGA's entrepreneurial culture and product design and development process.  Successful MGA products introduced both before and after Bratz.  MGA's development of Bratz and noninfringement of Bryant drawings.  The lack of any industry custom and usage regarding any terms in Mattel's inventions assignment agreement.  MGA's lack of notice that Mattel | will call |

MGA SIDE  WITNESS LIST
CASE No.  CV 04-9049-DOC (RNBx)

| | | owned Bryant's works and reasonable belief in good faith that it had the right to exploit Bratz in reliance upon the investigation of counsel and Bryant's representations.  MGA's investment into Bratz brand. Mattel's unfair business practices including interference with MGA's business relationships and theft of trade secrets from MGA. Mattel's destruction of MGA's value in the Bratz brand and MGA's business relationships, resulting in hundreds of layoffs of MGA employees.  Larian's efforts to save the company in the face of near total destruction by Mattel. Mattel's infringement of MGA intellectual property. | |

| Dated:     January 11, 2010 | Respectfully submitted, |
| --- | --- |
|  | ANNETTE L. HURST<br>ORRICK, HERRINGTON & SUTCLIFFE LLP |
|  | By: _____ */s/ Annette L. Hurst* _____<br>ANNETTE L. HURST<br>Attorneys for MGA Parties |
| Dated:     December 30, 2010 | Respectfully submitted, |
|  | ALEXANDER H. COTE<br>SCHEPER KIM AND OVERLAND LLP |
|  | By: _____ */s/ Alexander H. Cote* _____<br>ALEXANDER H. COTE<br>Attorneys for Machado Gomez |