ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
Telephone:  415-773-5700
Facsimile:  415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:  213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity<br><br>Plaintiffs,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**MGA PARTIES' [PROPOSED] JURY INSTRUCTIONS**<br><br>Pretrial Conference:   January 4, 2011<br>Time:<br>Place:<br>Trial Date:              January 18, 2011 |

1       The MGA Parties submit the following proposed post-trial jury instructions.

2   The parties continue to discuss a set of agreed instructions.  In addition, the parties

3   will discuss agreed instructions to be given during trial to address specific

4   evidentiary and presentational issues, among other things.

5

6   Dated: January 11, 2011                    Respectfully submitted,

7                                              ANNETTE L. HURST
                                               ORRICK, HERRINGTON &
8                                              SUTCLIFFE LLP

9

10                                             By: _____/s/ Annette L. Hurst_____

11                                                     ANNETTE L. HURST
                                                    Attorneys for MGA Parties
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.1A**
**DUTY OF JURY (COURT READS AND**
**PROVIDES WRITTEN INSTRUCTIONS)**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

1  **Authority:**  9th Cir. Civ. Jury Instr. 1.1(A) (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.1B**
## DUTY OF JURY (COURT READS INSTRUCTIONS ONLY)

Ladies and gentlemen:  You are now the jury in this case.  It is my duty to instruct you on the law.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.1(B) (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.1C**
**DUTY OF JURY (COURT READS AND PROVIDES**
**WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent with you to the jury room when you deliberate.]

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

1

**Authority:**  9th Cir. Civ. Jury Instr. 1.1(C) (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.2**
## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

[Insert to come following meet and confer]

1    **Authority**: 9th Cir. Civ. Jury Instr. 1.2 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1.3
## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.3 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.4**
## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.4 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.5**
## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each party separately. When there are multiple claimants or multiple defendants, you must consider the elements of the claims and defenses separately for each claimant and each defendant.  Unless otherwise stated, the instructions apply to all parties.

1    **Authority:** 9th Cir. Civ. Jury Instr. 1.5 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.6**
**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits which are received into evidence; and

3.    any facts to which the lawyers have agreed.

1

2    **Authority:**  9th Cir. Civ. Jury Instr. 1.6 (2007)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1.7
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening and closing statements and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.7 (2007)

**1.8**
## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.8 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.9**
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.9 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.10**
**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.10 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.11**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence;

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

1  **Authority:**  9th Cir. Civ. Jury Instr. 1.11 (2007)

**1.12**
**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch, or listen to any news or

media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over].  If any juror is exposed to any outside information, please notify the court immediately.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.12 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**1.13**
**NO TRANSCRIPT AVAILABLE TO JURY**

2

3      During deliberations, you will have to make your decision based on what you

4  recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay

5  close attention to the testimony as it is given.

6      If at any time you cannot hear or see the testimony, evidence, questions or

7  arguments, let me know so that I can correct the problem.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  9th Cir. Civ. Jury Instr. 1.13 (2007)

**1.14**
**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.14 (2007)

**1.16**
## JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION

Languages other than English may be used during this trial.

The evidence to be considered by you is only that provided through the official court translators.  Although some of you may know Spanish, it is important that all jurors consider the same evidence.  Therefore, you must accept the English translation.  You must disregard any different meaning.

1 | **Authority:**  9th Cir. Civ. Jury Instr. 1.16 (2007)

1

**1.17**
**USE OF INTERPRETERS IN COURT**

2

3        You must not make any assumptions about a witness or a party based solely

4    upon the use of an interpreter to assist that witness or party.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.17 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.18**
**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum.  I did not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

1   **Authority:**  9th Cir. Civ. Jury Instr. 1.18 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.19**
**OUTLINE OF TRIAL**

The trial will proceed in the following way:

First, each party may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

Mattel and Mattel Mexico will then present evidence, and counsel for the other parties will have the opportunity to cross-examine.  Then MGA Entertainment, Inc., MGAE de Mexico, MGA Entertainment (HK) Ltd., Mr. Larian, and Mr. Machado will present evidence, and counsel for Mattel and Mattel Mexico will have the opportunity to cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

1  **Authority:**  9th Cir. Civ. Jury Instr. 1.19 (2007) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.2**
**STIPULATIONS OF FACT**

The parties have agreed to certain facts to be placed in evidence as Exhibit __. You should therefore treat these facts as having been proved.

1  **Authority:**  9th Cir. Civ. Jury Instr. 2.2 (2007)

1

2

**2.3**
**JUDICIAL NOTICE**

3

4

5

    The court has decided to accept as proved the fact that [*state fact*], even though no evidence has been introduced on the subject.  You must accept this fact as true.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  9th Cir. Civ. Jury Instr. 2.3 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.4
## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken in this case.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

1    **Authority:**  9th Cir. Civ. Jury Instr. 2.4 (2007) (modified)

**2.5**
## TRANSCRIPT OF TAPE RECORDING

You are about to listen to a tape recording that has been received in evidence. Please listen to it very carefully.  Each of you has been given a transcript of the recording to help you identify speakers and as a guide to help you listen to the tape. However, bear in mind that the tape recording is the evidence, not the transcript. If you hear something different from what appears in the transcript, what you heard is controlling. After the tape has been played, the transcript will be taken from you.

1  **Authority:**  9th Cir. Civ. Jury Instr. 2.5 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.6**
**TRANSCRIPT OF RECORDING IN FOREIGN LANGUAGE**

You are about to listen to a tape recording in Spanish.  Each of you has been given a transcript of the recording that has been admitted into evidence.  The transcript is a translation of the foreign language tape recording.

Although some of you may know Spanish, it is important that all jurors consider the same evidence.  The transcript is the evidence, not the foreign language spoken in the tape recording.  Therefore, you must accept the interpreter's translation contained in the transcript and disregard any different meaning.

1

**Authority:** 9th Cir. Civ. Jury Instr. 2.6 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**2.8**
**IMPEACHMENT EVIDENCE—WITNESS**

3    The evidence that a witness has lied under oath on a prior occasion or given

4    inconsistent testimony under oath may be considered, along with all other evidence,

5    in deciding whether or not to believe the witness and how much weight to give to

6    the testimony of the witness and for no other purpose.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **Authority:**  9th Cir. Civ. Jury Instr. 2.8 (2007)

**2.10**
**USE OF INTERROGATORIES OF A PARTY**

Evidence has been presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand by the party that responded to the written interrogatories.

1    **Authority:**  9th Cir. Civ. Jury Instr. 2.10 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.11**
**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

1    **Authority:**  9th Cir. Civ. Jury Instr. 2.11 (2007)

**2.12**
## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

1    **Authority:**  9th Cir. Civ. Jury Instr. 2.12 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.13**
**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

1  **Authority:**  9th Cir. Civ. Jury Instr. 2.13 (2007)

**2.14**
## EVIDENCE IN ELECTRONIC FORMAT

Those exhibits capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  (Alternatively, you may request a paper copy of an exhibit received in evidence by sending a note through the bailiff.)  If you need additional equipment or supplies, you may make a request by sending a note.

In the event of any technical problem, or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury.  Be as brief as possible in describing the problem and do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any non-juror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to make sure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to

1   alter the computer to obtain access to such materials.  If you discover that the

2   computer provides or allows access to such materials, you must inform me

3   immediately and refrain from viewing such materials.  Do not remove the computer

4   or any electronic data from the jury room, and do not copy any such data.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Authority:**  9th Cir. Civ. Jury Instr. 2.14 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 3.1
## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

1

**Authority:**  9th Cir. Civ. Jury Instr. 3.1 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.2
## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

1

**Authority:**  9th Cir. Civ. Jury Instr. 3.2 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.3**
**RETURN OF VERDICT**

A verdict form has been prepared for you. [*Any explanation of the verdict form may be given at this time.*] After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

1    **Authority:**  9th Cir. Civ. Jury Instr. 3.3 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 4.1
## CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

1

**Authority:**  9th Cir. Civ. Jury Instr. 4.1 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.2**
## LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

1    **Authority:**   9th Cir. Civ. Jury Instr. 4.2 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.4**
## AGENT AND PRINCIPAL—DEFINITION

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services.  The other person is called a principal.

1   **Authority:**  9th Cir. Civ. Jury Instr. 4.4 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.5**
**AGENT—SCOPE OF AUTHORITY DEFINED**

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

1    **Authority:**  9th Cir. Civ. Jury Instr. 4.5 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**4.6**
**ACT OF AGENT IS ACT OF PRINCIPAL—**
**SCOPE OF AUTHORITY NOT IN ISSUE**

3      Any act or omission of an agent within the scope of authority is the act or

4  omission of the principal.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **Authority:**  9th Cir. Civ. Jury Instr. 4.6 (2007)

1  **KNOWLEDGE OF AGENT IS IMPUTED TO PRINCIPAL**

2       In general, knowledge acquired by an agent within the course and scope of his

3  or her duties is imputed to the principal, that is, the principal is assumed to know

4  what the agent knows.

1

2

**Authority:** Cal. Civ. Code § 2332; *Santillan v. Roman Catholic Bishop of Fresno*, 163 Cal. App. 4th 4, 10-11 (2008).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.11**
**INDEPENDENT CONTRACTOR—DEFINITION**

An independent contractor is a person who performs services for another person under an express or implied agreement and who is not subject to the other's control, or right to control, the manner and means of performing the services.

One who engages an independent contractor is not liable to others for the acts or omissions of the independent contractor.

1

**Authority:**  9th Cir. Civ. Jury Instr. 4.11 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**300**
**CONTRACT INTERPRETATION—INTRODUCTION**

When Carter Bryant went to work at Mattel in 1999, he signed an employee invention assignment agreement.  This agreement is a contract between Mattel and Mr. Bryant, and it defines the rights and obligations of Mattel and Mr. Bryant on the subjects it covers.

Mr. Bryant is not a party to this case. You will not be considering any disputes between Mattel and Mr. Bryant, but you will be required to decide certain issues about the contract between Mattel and Mr. Bryant in order to resolve some of the issues in dispute between Mattel and MGA.

Mattel claims that it is the legal owner of the "dummy doll," a preliminary sculpt, the name "Bratz," the name "Jade," the name "Moxie," and Mr. Bryant's sketches under the contract between Mattel and Mr. Bryant.  MGA Entertainment, Inc. contends that Mr. Bryant is the owner of these items, and that he had the right to sell them to MGA Entertainment, Inc.

You will be asked to decide whether Mr. Bryant was the owner of the "dummy doll," a preliminary sculpt, the name "Bratz," the name "Jade," the name "Moxie," and Carter Bryant's sketches.  To do this, you will be required to decide the meaning of certain contract language.  The instructions I give you will include instructions on the law you must follow when you decide the meaning of the disputed contract language.

1  **Authority:** CACI No. 2200 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**304**
**ORAL OR WRITTEN CONTRACT TERMS**

Contracts may be written or oral.

The contract between Mattel and Mr. Bryant was in writing, and all of the terms of the contract are set forth in Exhibit 25. There were no oral discussions between Mattel and Mr. Bryant about the meaning of any of the terms of the contract, no drafts of the contract were exchanged between the parties, and there are no other writings changing the terms of the contract.

The parties may present additional evidence that they believe will help you decide the meaning of the disputed contract language. While this evidence does not reflect any changes to the terms of the contract, it may help you decide the meaning of the contract. You may consider the evidence under the instructions I will give you and give it as much weight as you think it deserves.

1    **Authority:** CACI No. 304 (2009) (modified)

## 314
## INTERPRETATION—DISPUTED TERM

Mattel and MGA dispute the meaning of the following terms in the contract between Mattel and Mr. Bryant: "inventions" and "during my employment."

Each of these contract terms is ambiguous.  The proposed interpretation by each side of each of these terms is reasonable and could be correct.  It is your responsibility to determine which meaning to give the disputed terms in accordance with the instructions I will give you.

Mattel claims that the term "inventions" includes "ideas." MGA claims that the term "inventions" does not include "ideas." Mattel must prove that its interpretation of the term "inventions" is correct.

Mattel claims that the term "during my employment" means "at any time of day or night within the period of time I am employed at Mattel, including nights and weekends and when I am not working on a Mattel project."  MGA claims that the term "during my employment" means "while actively working on the job tasks assigned to me and for which I am paid."  Mattel must prove that its interpretation of the term is correct.

In deciding what the terms of the contract mean, you must decide what Mattel and Mr. Bryant mutually intended at the time the contract was created.  In doing so, you must not consider the undisclosed intention of either party. Only the outward manifestation of the intent of the parties may be considered.  For example, if one party understood the disputed language in a certain way, or intended that the disputed language be given a certain meaning, but did not disclose that understanding or intent to the other party before the contract was signed, you may not consider the undisclosed meaning.

You may consider the usual and ordinary meaning of the language used in the contract.  You may also consider the circumstances surrounding the making of the contract.

1    The following instructions may also help you interpret the disputed terms of

2  the contract.

1    **Authority:** CACI No. 314 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**315**
**INTERPRETATION—MEANING OF ORDINARY WORDS**

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

1   **Authority:** CACI No. 315 (2009)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**316**
**INTERPRETATION—MEANING OF TECHNICAL WORDS**

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

1    **Authority:** CACI No. 316 (2009)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## "CONCEPTION" AND "REDUCTION TO PRACTICE"

The terms "conception" and "reduction to practice" are technical terms in the law of inventions.  Conception is the mental part of an inventive act.  It is proved when an invention is shown in its complete form, for instance by drawings or by disclosure to another.  An invention is "reduced to practice" when the invention is actually made and is proved to work for its intended purpose.

You should use these technical definitions as the meaning of the terms "conception" and "reduction to practice" in the contract between Mattel and Mr. Bryant unless Mattel proves by a preponderance of the evidence that the parties clearly used the terms "conception" and "reduction to practice" in a different sense.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Authority:** CACI No. 315 (2009); Kenneth C. Bass, et. al., Model Patent Jury Instructions, (The National Jury Instruction Project, 2008)  No. 5.6; *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies*, 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

**320**
**INTERPRETATION—CONSTRUCTION AGAINST DRAFTER**

In determining the meaning of the disputed terms of the contracts, you must first consider the prior instructions I have given you regarding the interpretation of a contract.  If, after you have considered the instructions, you believe Mattel has not proved that its meaning is the correct meaning through evidence other than the contract, you must interpret the disputed language against Mattel, as the party who drafted the contract and is considered to be responsible for the uncertainty in the contract language.

You may not adopt Mattel's interpretation of the disputed terms solely on the basis of the contract language.

1

**Authority:** CACI No. 320 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**320**
## INTERPRETATION—ADHESION CONTRACTS

MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., MGAE de Mexico, and Isaac Larian contend that the contract between Mattel and Carter Bryant was a contract of adhesion.  Thus, you must also consider whether the contract is a contract of adhesion.  A contract of adhesion is a contract which:

    1.  is drafted by the party of superior bargaining power,

    2.  is a standardized contract; and

    3.  is presented on a take it or leave it basis.

In the case of adhesion contracts, the rule of construction against the drafter applies more strongly.

1    **Authority:** Directions for Use, CACI No. 320 (2008); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000); *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998) (adhesion); *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365 (1997) (one party's attorney); *Neal v. State Farm Ins. Co.*, 188 Cal. App. 2d 690, 694 (1961) (adhesion); *see also Geoffroy v. Washington Mut. Bank*, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005); *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 n.18 (1981); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 271 (1966); *Steven v. Fid. & Cas. Co.*, 58 Cal. 2d 862, 878 (1962); *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438, 450 (1986).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

**2201**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

Mattel claims that MGA Entertainment, Inc. and Isaac Larian intentionally interfered with contracts between Mattel and Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan.  To establish this claim, Mattel must prove all of the following:

1.    That there was a contract between Mattel and Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan;

2.    That MGA Entertainment, Inc. or Mr. Larian knew of the contract obligations at issue;

3.    That MGA Entertainment, Inc. or Mr. Larian intended to disrupt the performance of these contract obligations;

4.    That MGA Entertainment, Inc. or Mr. Larian prevented performance or made performance materially more expensive or difficult;

5.    That Mattel was harmed; and

6.    That the harm to Mattel would not have occurred in the absence of the actions of MGA Entertainment, Inc. or Mr. Larian.

You must consider each of these elements separately with respect to Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, and Mr. Tumaliuan for (a) MGA Entertainment, Inc. and (b) Isaac Larian.

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

1    **Authority:** CACI No. 2201 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2201**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS –**
**CONTRACT OBLIGATIONS AT ISSUE**

Mattel claims that MGA Entertainment, Inc. and Isaac Larian interfered with the performance of contract obligations requiring Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan to [insert to come following meet and confer].

1    **Authority:**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2203**
**INTENT**

As I have explained, you cannot find MGA Entertainment, Inc. or Isaac Larian liable for intentional interference with contractual relations unless you find that it or he intended to disrupt the performance of the contract obligations at issue. In deciding whether MGA Entertainment, Inc. or Mr. Larian acted intentionally, you may consider whether it or he knew that disruption of performance was substantially certain to result from its or his conduct.  If you find that MGA Entertainment, Inc. or Mr. Larian knew that disruption of performance was substantially certain to result from its or his conduct, you may infer that it or he intended to disrupt the performance of the contract, if you find that to be the proper conclusion based on all of the evidence, but you are not required to do so.

1

**Authority:** CACI No. 2203 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EMPLOYEE'S RIGHT OF MOBILITY

Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan were "at will" employees of Mattel.  That means that each of them had the right to leave Mattel at any time, and each could be terminated by Mattel at any time, for any reason or no reason.  Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, and Mr. Tumaliuan had the right to look for another job while still employed at Mattel, to prepare to compete with Mattel, and to leave his or her employment with Mattel to work with a competitor or to compete himself or herself against Mattel. Mattel did not have a right to continued performance by Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan, or to performance by these employees for any specific period of time.

A company has the right to solicit or hire the at-will employee of another company, including its competitor.

**Authority:** *Reeves v. Hanlon,* 33 Cal. 4th 1140, 1151 (2004) (California "public policy generally supports a competitor's right to offer more pay or better terms to another's employee, so long as the employee is free to leave. ... [I]f the law were to the contrary, the result 'would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay. It would put an end to any kind of competition.'") (citation omitted); *Metro Traffic Control, Inc. v. Shadow Traffic Network,* 22 Cal. App. 4th 853, 859 (1994) ("California courts have consistently declared ... an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice"); *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers"); *see also Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm is not illegal"); *Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp.,* No. CV071534 LEWGGHX, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing *Reeves* for the proposition that "employees are not precluded from seeking new employment on their own initiative"); *Posdata Co. Ltd. v. Kim,* No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D. Cal. June 27, 2007); *Continental Car-Na-Var Corp. v. Moseley,* 24 Cal. 2d 104, 110 (1944) ("[a] former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of ... his former employer, provided such competition is fairly and legally conducted."); *VL Sys., Inc. v. Unisen, Inc.,* 152 Cal. App. 4th 708, 713, 715 (2007) (quoting *Diodes* and finding no unlawful solicitation of employee where the employee initiated the new agreement with the defendant and "chose to seek the job with" the defendant)

**RIGHT TO OBTAIN NEW EMPLOYMENT**

An at-will employee such as Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan has the right to seek new employment and the right to choose not to disclose to his or her employer that he or she has decided to pursue new employment, or that he or she is attempting to obtain new employment. An employee has the right to wait to inform his or her employer until he or she has made a final decision to resign. An employee does not have an obligation to disclose to his or her employer anything about his or her new employment, before or after a final decision to resign is made.

1

2

3

4

5

6

7

**Authority:** *Bancroft Whitney Co. v. Glen,* 64 Cal. 2d 327, 345-46 & n.10 (1966); *accord Eckard Brandes, Inc. v. Riley,* 338 F.3d 1082, 1086 (9th Cir. 2003); *GAB Bus. Servs., Inc.  v. Lindsey & Newsom Claim Servs., Inc.,* 83 Cal. App. 4th 409, 424-25 (2000), *overruled on other grounds by, Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004); *Computer Sciences Corp.  v. Ferguson,* 74 Cal. Rptr. 86, 92-93 (1968); *see also Material Supply Int'l, Inc. v.  Sunmatch Indus. Co.,* 146 F.3d 983, 993 (D.C. Cir. 1998); *Franklin Music Co. v.  American Broadcasting Cos.,* 616 F.2d 528, 532-33, 537 (3d Cir. 1979); *Mercer Mgmt.  Consulting, Inc. v. Wilde,* 920 F. Supp. 219 (D. D.C. 1996); *T.A. Pelsue Co. v. Grand  Enters., Inc.,* 782 F. Supp. 1476, 1486 (D. Colo. 1991); *Abraham Zion Corp. v. Lebow,* 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), *ant,* 761 F.2d 93 (2d Cir. 1985); *Seward v.  Union Pump Co.,* 428 F. Supp. 161 (S.D. Texas 1977); Restatement (Third) of Agency § 8.04 cmt. c

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PRIVILEGE OF COMPETITION

Ordinarily, a company that engages in business with the primary aim of making profits for itself is not liable for business losses suffered by a competitor. A company has a legal privilege, known as the privilege of competition, that gives it the right to seek profits for itself, at the expense of its competitors and potential competitors. The privilege of competition is an affirmative defense to a claim of intentional interference with contractual relations.

The elements of the privilege of competition are:

1.    Mattel and MGA Entertainment, Inc. were engaged in economic competition;

2.    The economic relationships between Mattel and Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan concern matters involved in the competition between Mattel and MGA Entertainment;

3.    MGA Entertainment, Inc. or Isaac Larian did not use wrongful means;

4.    The purpose of MGA Entertainment, Inc. or Mr. Larian was at least in part to advance MGA Entertainment Inc.'s interest in competing with Mattel.

1  **Authority:** BAJI 7.86 (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DAMAGES – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

If you have concluded that MGA Entertainment, Inc. or Isaac Larian intentionally interfered with a contract between Mattel and Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan, you must decide how much money will reasonably compensate Mattel for the harm, if any, caused by that interference.

Mattel is not entitle to compensation to any harm other than harm resulting from the loss of the services of Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan caused by interference by MGA Entertainment, Inc. or Mr. Larian with a contract between Mattel and Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan.

To recover damages for intentional interference with contractual relations, Mattel must prove that Mattel suffered a financial loss resulting from the loss of the services of Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan and prove the amount of the loss.

1    **Authority:** CACI 2201 (modified); December 27, 2010 Order on MGA's Motion

2    for Summary Judgment; Mattel's Motion for Partial Summary Judgment; Machado's Motion for Summary Judgment (Dkt. No. 9538); Restatement (Second)

3    of Torts § 774A (1979); *Di Loreto v. Shumake,* 38 Cal. App. 4th 35, 38 (1995); BAJI No. 7.89 (2008) (as modified)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

**MITIGATION OF DAMAGES**

A claimant has a duty to make reasonable efforts and expenditures to avoid or limit the harm caused by the wrongful act of another.  Mattel is not entitled to recover damages for harm that MGA Entertainment, Inc. or Isaac Larian proves Mattel could have avoided with reasonable efforts or expenditures.

You should consider the reasonableness of efforts Mattel could have taken in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

This instruction applies to all of the claims asserted by Mattel.

1   **Authority:** CACI 3931(modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4120**

**STATUTE OF LIMITATIONS—EXPLANATION**

The law requires that a claimant file its claims within a defined period of time.  MGA Entertainment, Inc. and Isaac Larian contend that certain of Mattel's claims were not filed within the time set by law.  To succeed on this defense, they must prove that Mattel did not file its claims in court within the time set by law.

You are instructed that Mattel filed its claims against MGA Entertainment, Inc. and Mr. Larian on April 27, 2004.

1   **Authority:** CACI No. 4120 (2009); *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th
2   797, 807 (2005); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### STATUTE OF LIMITATIONS—INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

3

4

   MGA Entertainment, Inc. and Isaac Larian contend that Mattel's intentional interference with contractual relations claim was not filed within the time set by law.

5

6

7

8

   To succeed on this defense, MGA Entertainment, Inc. and Mr. Larian must prove that Mattel did not file its claim against them within two years of the occurrence of the acts that Mattel contends were wrongful, regardless of whether or not Mattel actually knew of the acts at the time.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

**Authority:** See Cal. Civ. Proc. Code § 339(1); *Forcier v. Microsoft Corp.*, 123 F.
Supp. 2d 520, 530 (N.D. Cal. 2000); *Charles Lowe Co. v. Xomox Corp.*, No. C95-
0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); *Menefee v. Ostawari*,
228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, <u>Cal. Procedure: Actions,</u> § 575,
at 728 (4th ed. 1996)

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**4400**
## MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION

MGA Entertainment, Inc. ("MGA"), Mattel, Inc. ("Mattel"), and Mattel de Mexico S.A. de C.V. ("Mattel de Mexico") claim that they are the respective owners of certain trade secrets.

MGA, Mattel, and Mattel de Mexico claim that their trade secrets were misappropriated by others. "Misappropriation" means the improper acquisition, use, or disclosure of a trade secret.

MGA, Mattel, Mattel de Mexico also claim that the misappropriation of their trade secrets caused them damage or resulted in the unjust enrichment of the misappropriating party.

Mattel, MGA, MGA de Mexico, and Isaac Larian deny the allegations of trade secret misappropriation made against them.

1    **Authority:** CACI No. 4400 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4401**
**MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS**

MGA asserts a claim for trade secret misappropriation against Mattel as defendant.  Mattel asserts a claim for trade secret misappropriation against MGA, MGA de Mexico, and Isaac Larian as defendants.  Mattel de Mexico asserts a claim for trade secret misappropriation against MGA, MGA de Mexico, and Isaac Larian as defendants.

To succeed on a claim of trade secret misappropriation, the claimant must prove all of the following:

1.   That the claimant owned trade secrets;

2.   That the claimant identified the alleged trade secrets with reasonable particularity;

3.   That the information alleged to be a trade secret was a trade secret at the time of the misappropriation;

4.   That the defendant misappropriated, that is, improperly used or disclosed, the claimant's trade secrets;

5.   That the defendant was unjustly enriched as a result his or her use or disclosure of the claimant's trade secrets; and

6.    That the claimant's harm or the unjust enrichment of the defendant would not have occurred in the absence of the defendant's misappropriation of trade secrets.

1   **Authority:** CACI No. 4401

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4402**
**"TRADE SECRET" DEFINED**

To prove that information is a trade secret, the claimant must prove all of the following:

1.    That the information was secret;

2.    That the claimant has identified its alleged trade secrets with reasonable particularity;

3.    That the information had actual or potential independent economic value because it was secret; and

4.    That the claimant made reasonable efforts to keep the information secret.

1   **Authority:** CACI No. 4402 (2009)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4403**
**SECRECY REQUIREMENT**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information.  The information may be disclosed to employees involved in the claimant's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated to keep the information secret.  However, the information must not have been generally known to the public or to people who could obtain value from knowing it.

1  **Authority:** CACI No. 4403 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4420**

## INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS

A defendant did not misappropriate any trade secrets if the defendant proves that the information alleged to be a trade secret was readily ascertainable by proper means at the time of the alleged misappropriation.

There is no fixed standard for determining what is "readily ascertainable by proper means."

In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials.

On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

1   **Authority:** CACI No. 4420 (2009); *Syngenta Crop Protection, Inc. v. Helliker*, 138

2   Cal. App. 4th 1135, 1172 (2006) ("Information that is readily ascertainable by a

business competitor derives no independent value from not being generally known")

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4404**
## REASONABLE EFFORTS TO PROTECT SECRECY

To establish that information is a trade secret, the claimant must prove that it made reasonable efforts under the circumstances to keep the information secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as the claimant, exercising due care to protect important information of the same kind. This requirement applies separately to each item that the claimant alleges to be a trade secret.

In determining whether or not the claimant made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a.    Whether documents or computer files containing the information were marked with confidentiality warnings;

b.    Whether the claimant instructed its employees to treat the information as confidential;

c.    Whether the claimant restricted access to the information to persons who had a business reason to know the information;

d.    Whether the claimant kept the information in a restricted or secured area;

e.    Whether the claimant required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

f.    Whether the claimant took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

g.    The extent to which any general measures taken by the claimant would prevent the unauthorized disclosure of the information;

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

h.     Whether there were other reasonable measures available to the claimant that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

1    **Authority:** CACI No. 4404 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4406**
## MISAPPROPRIATION BY DISCLOSURE

The defendant misappropriated the claimant's trade secret by disclosure if the defendant:

1.   Disclosed the trade secret without the claimant's consent; and

2.   Did any of the following:

Acquired knowledge of the trade secret by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of the claimant's trade secret came from or through  a third party, and knew or had reason to know that the third party had previously acquired the trade secret by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of the claimant's trade secret was acquired in circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the information secret; or

At the time of disclosure, knew or had reason to know that its knowledge of the claimant's trade secret came from or through a third party, and that the third party had a duty to the claimant to keep the information secret.

1   **Authority:** CACI No. 4406 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4407**
**MISAPPROPRIATION BY USE**

The defendant misappropriated the claimant's trade secret by use if the defendant

1.   Used the trade secret without the claimant's consent; and

2.   Did any of the following:

Acquired knowledge of the trade secret by improper means; or

At the time of use, knew or had reason to know that its knowledge of the claimant's trade secret came from or through a third party, and knew or should have known that the third party had previously acquired the trade secret by improper means; or

At the time of use, knew or had reason to know that its knowledge of the claimant's trade secret was acquired under circumstances creating a legal obligation to limit use of the information; or

At the time of use, knew or had reason to know that its knowledge of the claimant's trade secret came from or through a third party, and that the third party had a duty to the claimant to limit use of the information.

1  **Authority:** CACI No. 4407 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4408**

**IMPROPER MEANS OF ACQUIRING TRADE SECRET**

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by:

1. Independent efforts to invent or discover the information;

2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;

3. Obtaining the information as a result of a license agreement with the owner of the information;

4. Observing the information in public use or on public display; or

5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

1   **Authority:** CACI No. 4408 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNCLEAN HANDS

MGA, MGA de Mexico, and Isaac Larian contend that Mattel's unfair conduct bars Mattel from receiving any relief in this case, under the doctrine of "unclean hands."  This doctrine prevents parties who have acted unfairly or in bad faith in matters related to their claims — parties who have "unclean hands" — from using the courts to benefit from their unfair actions, even if other parties have also acted improperly.

Under the rule of "unclean hands," you should deny Mattel relief on its claims if you find that Mattel has acted unfairly or in bad faith in matters related to those claims, so that it would be unfair for Mattel to prevail.

In making this decision, you may consider any type of unfair or bad faith conduct by Mattel related to its claims, including Mattel's conduct both before and during this litigation, and its conduct toward other parties and witnesses related to its claims.  Conduct does not have to be criminal or illegal for you to consider it.  You may consider any type of unfair or bad faith conduct that violates conscience, good faith, or other equitable standards of conduct.

This instruction applies to all of the claims asserted by Mattel.

**Authority:** _Kendall-Jackson Winery, Ltd. v. Superior Court_, 76 Cal. App. 4th 970, 979 (1999) ("[T]he misconduct need not be a crime or an actionable tort. Any conduct that violates conscience, good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine."); _Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists_, 227 Cal. App. 2d 675, 728-729 (1964)

**LACHES**

MGA, MGA de Mexico, and Isaac Larian contend that Mattel is not entitled to any relief in this case under the doctrine of laches.  Mattel's claims against MGA, MGA de Mexico, and Isaac Larian are barred by the doctrine of laches if you find that:

1.    Mattel's delay in filing suit was unreasonable in light of Mattel's knowledge of its claims against MGA, MGA de Mexico, or Mr. Larian; and

2.    Mattel's delay was prejudicial to MGA, MGA de Mexico, or Mr. Larian in light of investments of time and money that MGA, MGA de Mexico, or Mr. Larian made or expended to build MGA's brands or the business of MGA or MGA de Mexico during the period of delay; or

3.    Mattel's delay was prejudicial to MGA, MGA de Mexico, or Mr. Larian in that substantial evidence has been lost and memories faded in the years since Mattel was first on notice of its claims.

This instruction applies to all of the claims asserted by Mattel.

1    **Authority:** *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 954 (9th Cir. 2001)
2    ("delay is impermissible when its purpose is to capitalize on the value of the
     alleged infringer's labor, by determining whether the infringing conduct will be
3    profitable"); *see also Watermark Publrs. v. High Tech. Sys., Inc.,* No. 95-
4    3839-1EG (CGA), 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal.
     1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing)
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4421
## STATUTE OF LIMITATIONS—MISAPPROPRIATION OF TRADE SECRETS

MGA, MGA de Mexico, and Isaac Larian contend that Mattel's trade secret misappropriation claim was not filed within the time set by law.  To succeed on this defense, MGA, MGA de Mexico, and Isaac Larian must prove that the claimed misappropriation of the Bratz fashion doll concept and the "Bratz" name occurred before April 27, 2001.

If they do, Mattel cannot recover on its trade secret claim unless Mattel proves that before April 28, 2001, it did not discover, and with reasonable diligence should not have discovered, facts that would have caused a reasonable person to suspect that MGA had misappropriated the Bratz fashion doll concept or the "Bratz" name.

1

**Authority:** CACI No. 4421 (2009) (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TRADE SECRET MISAPPROPRIATION - DAMAGES

If you find by a preponderance of the evidence that a defendant misappropriated a claimant's trade secrets, you must then determine the amount of damages that the claimant is entitled to receive.  You may consider two types of damages:

(1) **Actual Loss.**  If you find that the claimant would have realized profits from employing the trade secrets that it lost due to the wrongful conduct of the defendant, you may measure damages by the amount of such lost profits.

(2) **Unjust Enrichment.**  Regardless of whether you find that the claimant itself suffered losses, you may find the defendant benefited from using a trade secret belonging to the claimant, and award the monetary value you attribute to the benefit that would be unjust for the defendant to retain.  Unjust enrichment is measured by the degree to which the defendant was unjustly enriched, not by loss to the claimant.

In deciding which of these approaches, if any, to use, you must avoid overlapping damages.  The law does not permit a party to recover twice for the same damages.  For example, if you were to consider alleged lost sales of Barbie dolls in calculating Mattel's lost profits, sales by MGA resulting in lost sales of Barbie dolls must be excluded from any calculation of MGA's alleged unjust enrichment.

Mattel is not entitled to recover on its claim for trade secret misappropriation if that claim is based on the same conduct, or arises out of the same facts, as Mattel's claim for copyright infringement.

1   **Authority:** Restatement of Restitution ; California Civil Code §3436.3 (a) ("A
2   complainant may recover damages for the actual loss caused by misappropriation.
    A complainant may also recover for the unjust enrichment caused by
3   misappropriation that is not taken into account in computing damages for actual
    loss"); *Unilogic Inc. v. Burroughs Corp.,* 10 Cal. App. 4th 612, 628 (1992) (unjust
4   enrichment measured as "the degree to which [defendant] was enriched", not loss to
    plaintiff); *Laws v. Sony Music Entm't, Inc.,* 448 F.3d 1134 (9th Cir. 2006) (using "as
5   applied" analysis to find that right of publicity claim was preempted by the Act in
    that case)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## COPYRIGHT PREEMPTION

2    You may not award damages for trade secret misappropriation based on the

3  alleged misappropriation of Carter Bryant's particularized expression as set forth in

4  the sketches of his pitch book, Exhibit 302.

5    If you find that any misappropriation of Mattel trade secrets is limited to the

6  particularized expression as set forth in the sketches of Carter Bryant's pitch book,

7  Exhibit 302, you may not award any damages to Mattel for trade secret

8  misappropiation.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Authority:**  17 U.S.C. 301; *Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 234 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 225, 237 (1964); *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124-25 (9th Cir. 2010); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006); *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); *Harper & Row Publishers v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985); *Del Madera Props. v. Rhodes and Gardner, Inc.*, 820 F. 2d 973, 977 (9th Cir. 1987).

1   **TRADE SECRET MISAPPROPRIATION – LOST PROFITS**

2

3       To recover damages for lost profits, the claimant must prove it is reasonably

4   certain it would have earned profits but for the defendant's conduct.

5       To decide the amount of damages for lost profits, you must determine the

6   gross amount the claimant would have received but for the defendant's conduct and

7   then subtract from that amount the expenses the claimant would have had if the

8   defendant's conduct had not occurred.

9       The amount of the lost profits need not be calculated with mathematical

10  precision, but there must be a reasonable basis for computing the loss.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Authority:** CACI 3903N (2009); *see also* CACI 4409

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TRADE SECRET MISAPPROPRIATION – UNJUST ENRICHMENT**

An award of damages for unjust enrichment based upon the defendant's profits is limited to the profits proved by the claimant to be attributable to the misappropriation of trade secrets.  You must take into consideration the extent to which the defendant's profits are the result of factors other than the alleged misappropriation of trade secrets.  Amounts attributable to the contributions by the defendant to the accused products, or attributable to the defendant's efforts to market or sell the accused products, are not unjust enrichment.

The claimant must prove with reasonable certainty what portion, if any, of the commercial success of the defendant's products is attributable to the alleged trade secrets and not the result of the defendant's efforts.  You must not include in an award for unjust enrichment any profits attributable to factors other than the alleged trade secrets, including any profits attributable to the defendant's hard work, skill, investment, or ingenuity.

**Authority:** Restatement of Restitution; Restatement (Third) of Unfair Competition § 45, comment f; *Unilogic Inc. v. Burroughs Corp.,* 10 Cal. App. 4th 612, 628 (1992); *Vermont MicrosySterns v. Autodesk, Inc.,* 138 F.3d 449, 450 (2d Cir. Vt. 1998) (applying California law) (acknowledging that when the trade secret accounts for only a portion of the profits earned on the defendant's sales, such as when the trade secret relates to a single component of a product marketable without the secret, " an award to the plaintiff of defendant's entire profit may be unjust"); *Shum v. Intel Corp.,* 630 F. Supp. 2d 1063, 1081 (N.D. Cal. 2009) (striking damages award due to failure to produce evidence in support of appropriate apportionment); *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal,* 94 Cal. App. 4th 151, 171 n.23 (2001) (holding [o]nly the portion of the benefit attributable to the wrong is allowed as restitution, in line with the underlying equitable principle that a defendant "is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust**")**; *Sofitel, Inc. v. Dragon Med and Scientific Comms., Inc.,* 891 F. Supp. 935, 942-43 (S.D.N.Y. 1985); *KW Plastics v. U.S. Can Co.,* 131 F. Supp. 2d 1289, 1295 (M.D. Ala. 2001); *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F. 2d 410, 415-16 (7th Cir. 1992) (allowing unjust enrichment only to the extent it is "caused by the misappropriation of a trade secret"); *Electro-Miniatures Corp. v. Wendon Co., Inc.*, 771 F.2d 23, 27 (2nd Cir. 1985); *HealthCare Advocates v. Affordable Healthcare Options*, 2010 WL 4665956, *2 (E.D. Pa. Nov. 18, 2010); *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1358-62 (Fed. Cir. 2005)

**TRADE SECRET MISAPPROPRIATION – NO DAMAGES AFTER PUBLIC
DISCLOSURE OF TRADE SECRET**

If you find that the defendant misappropriated a trade secret of the claimant
that was publicly disclosed by someone other than the defendant, the claimant may
recover damages for misappropriation only during the period in which the trade
secret was still secret.  This is a limitation on the amount of damages that the
claimant can be awarded under any theory of damages.  After a public disclosure of
the claimant's trade secret, the defendant would not have enjoyed any commercial
advantage it gained by misappropriation prior to public disclosure.

In addition, if you find that the defendant misappropriated the claimant's
trade secret, you must limit any damages to the amount of time it would have taken
the defendant to independently develop its products without the use of the
claimant's trade secret.  For example, if it would have taken the defendant an
additional three months to develop a product without the use of the alleged trade
secrets, the claimant's damages must be limited to that three month period.

1   **Authority:** *Group One, Ltd v. Hallmark Cards, Inc.,* 254 F.3d 10411051 (Fed. Cir.
2   2001); *Life Point Sys., Inc. v. Cargill, Inc.,* 1997 U.S. Dist. LEXIS 22845, at *48
    (N.D. Cal. 1997)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**405**
**COMPARATIVE FAULT OF MATTEL**

MGA claims that Mattel's own negligence in failing to confront departing employees it alleges misappropriated trade secrets and in failing to inform MGA of their purported misappropriation contributed to Mattel's harm.  To succeed on this claim, MGA must prove both of the following:

1.  That Mattel was negligent; and

2.  That Mattel's negligence was a substantial factor in causing any harm it suffered.

If MGA proves the above, any recovery by Mattel will be reduced by your determination of the percentage of Mattel's responsibility.  I will calculate the actual reduction.

1  **Authority:** CACI No. 405 (modified); 6 B. WITKIN, *Summary of California Law*,
2  Torts §1624 (10th ed. 2005)

**401**
**BASIC STANDARD OF CARE**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person or company can be negligent by acting or by failing to act.  A person or company is negligent if he, she, or it does something that a reasonably careful person or company would not do in the same situation or fails to do something that a reasonably careful person or company would do in the same situation.

You must decide how a reasonably careful person or company would have acted in Mattel's situation if he, she, or it knew or suspected that departing employees were taking trade secret information.

1  **Authority:** CACI No. 401 (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**406**
## APPORTIONMENT OF RESPONSIBILITY

MGA and Mr. Larian claim that if Mattel was harmed by the misappropriation of trade secrets, Carter Bryant also contributed the harm.  To succeed on this claim, MGA or Larian must prove both of the following:

1.    That Carter Bryant was at fault; and

2.    That the fault of Carter Bryant was a substantial factor in causing Mattel's harm.

If you find that the fault of Carter Bryant was a substantial factor in causing harm to Mattel resulting from the misappropriation of trade secrets, you must decide how much responsibility (a) Mr. Bryant and (b) any defendant found to be liable to Mattel for the misappropriation of trade secrets has by assigning percentages of responsibility to each person or company listed on the verdict form.  The percentages must total 100 percent.  You will make a separate finding of Mattel's total damages, if any.  In determining an amount of damages, you should not consider any person's or company's assigned percentage of responsibility.

1  **Authority:** CACI No. 406 (modified)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TRADE SECRET MISAPPROPRIATION – PUNITIVE DAMAGES

If you decide that a defendant's misappropriation of trade secrets caused the claimant harm, you must decide whether the defendant's conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the claimant and to discourage similar conduct in the future.

In order to recover punitive damages, the claimant must prove by clear and convincing evidence that the defendant acted willfully and maliciously. You must determine whether the defendant acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that the defendant acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that the defendant acted with an intent to cause injury, or that the defendant's conduct was despicable and was done with a willful and knowing disregard for the rights of others. "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.  The defendant acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

1  **Authority:** CACI 4411; Cal. Civ. Code §3426.3(c)

# **DUTY OF LOYALTY DEFINED**

An employee owes his or her employer a duty of loyalty.  The scope of the employee's duty varies with the nature of the employee's relationship with his or her employer.  Thus, an employee who occupies an executive position with a high level of trust and confidence owes a higher duty of loyalty to his or her employer than an employee who occupies a position of lower trust and confidence.

The duty of loyalty does not require that an employee work solely for his or her employer's interest.  An employee may transact business similar to that entrusted to him or her by the employer on his or her own account, so long as the employee gives the preference to the business of the employer.  The employee can be compensated by another company for performing outside work without breaching his or her duty of loyalty to his or her current employer.

An employee is under no duty to disclose to his or her current employer preparations or negotiations for future employment by or work with a competitor of the employer.

An employee owes his or her employer a duty of loyalty only during the period of time that the employee is employed by the employer.  An employee's duty of loyalty to his or her employer ceases on the date of the employee's resignation. Mattel is not entitled to recover for actions taken or harm occurring after an employee has resigned from Mattel.

Mattel has the burden of proving by a preponderance of the evidence all facts necessary to show the existence and scope of an employee's duty of loyalty to Mattel.

1 **Authority:** Cal. Labor Code  § 2863; 19 Williston on Contracts § 54:26 (4th ed.);
2 *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 411 (2007); *Stokes v. Dole Nut Co.*, 41 Cal App. 4th 285 (1995)

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PREPARATONS TO COMPETE

It is not a breach of the duty of loyalty for an employee to make preparations to compete with his or her employer, or to seek or negotiate new employment or work, before he or she resigns.  Lawful preparations to compete may include activities such as: (1) interviewing with a potential new employer; (2) engaging in meetings and discussing the terms and conditions of employment or work with a competing business; (3) entering into a partnership or an employment agreement or independent contractor agreement with a competing business or new employer; (4) writing or participating in the preparation of a business plan for a competing business or new employer; and (5) organizing a corporation to carry on a rival business.

An employee is not obligated to disclose such preparations to compete to his or her employer.

**Authority**: *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 346-47 (1966); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (holding that duty of loyalty exists "[d]uring the term of employment"); *Maximus, Inc. v. Thompson*, 78 F. Supp. 2d 1182, 1191 (D. Kan. 1999) (defendants did not breach duty of loyalty by their "discussing the prospects of competing, their gathering and estimating of expenses, their submission of a bank plan and securing a promise of financing from a bank, and the compilation of the information necessary to make a bid"); *Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 234 (D.D.C. 1996) (employees did not breach duty of loyalty when they "incorporate[d] [competing business], . . . made arrangements for office space, inquired about benefit packages, investigated computer systems, and met with an accountant," because these were just preparations to compete); *Dwyer, Costello & Knox v. Diak*, 846 S.W.2d 742, 747 (Mo. 1993) (accountant-employee did not breach duty of loyalty by deciding to form competing accounting firm while still employed, signing partnership agreement, and locating and renting office space for competing business); 19 Williston on Contracts (4th ed. 2008) § 54.27, p. 467, fn. omitted ["Employees whose contracts are terminable at will have a right to terminate their employment for the purpose of competing with their employer, and may plan and prepare to create a competitive enterprise prior to their termination, without revealing their plans to their employer, so long as they do so on their own time and with their own resources."]].

# AIDING AND ABETTING THE BREACH OF THE DUTY OF LOYALTY

Mattel alleges that MGA and Isaac Larian aided and abetted breaches of a duty of loyalty to Mattel by Carter Bryant, Ryan Tumaliuan, Ana Cabrera, Beatriz Morales, and Maria Elena Salazar.  To prove that MGA or Mr. Larian aided and abetted a breach of a duty of loyalty, Mattel must first prove that Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar had a duty of loyalty to Mattel and that he or she breached his or her duty of loyalty.

To prove this first part of the claim, Mattel must prove by a preponderance of the evidence all of the facts necessary to establish each of the following elements:

1.     That Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar was a Mattel employee and thus owed Mattel a duty of loyalty;

2.     The scope of Mr. Bryant's, Mr. Tumaliuan's, Ms. Cabrera's, Ms. Morales's, or Ms. Salazar's duty of loyalty;

3.     That Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar engaged in conduct that breached his or her duty of loyalty while employed by Mattel;

4.     That Mattel did not consent to the conduct alleged to be a breach of a duty of loyalty or otherwise ratify such conduct;

5.     That Mattel was harmed during the period of Mr. Bryant's, Mr. Tumaliuan's, Ms. Cabrera's, Ms. Morales's, or Ms. Salazar's employment as a consequence of the conduct; and

6.     That Mattel's harm would not have occurred in the absence of the conduct alleged to be a breach of the duty of loyalty.

If Mattel does prove that an employee breached a duty of loyalty to Mattel, MGA and Mr. Larian cannot be held liable for aiding and abetting a breach of a duty of loyalty by that employee.

1

2

3

4

5

6

7

8

**Authority:** *MJT Securities, LLC v. Toronto-Dominion Bank*, 2007 WL 1725421, at
**7-8 (N.D. Cal. June 14, 2007) (elements); *Neilson v. Union Bank of California,
N.A.*, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); *Resolution Trust
Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse
relationship between demonstration of knowledge and substantial assistance);
*Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084 (N.D. Cal.
1979) (causation); *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988) (intent); *see
also Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005); *Casey v.
U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005); *Fiol v. Doellstedt*, 50
Cal. App. 4th 1318, 1325-26 (1996); *Saunders v. Superior Court*, 27 Cal. App. 4th
832, 846 (1994); Restatement (Second) of Torts § 876.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CONSENT TO EMPLOYEES' ACTIONS

2

3

    Consent by Mattel to the conduct of its employees need not be explicit, but

can be shown by implied understandings or known customs.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:** CACI No. 4102 (2009); Restatement (Third) of Agency § 8.04 cmt. b

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# AIDING AND ABETTING THE BREACH OF THE DUTY OF LOYALTY

If you find that Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar breached a duty of loyalty to Mattel, you must next determine whether MGA Entertainment, Inc. or Isaac Larian aided and abetted the breach of a duty of loyalty to Mattel.

To prove that MGA Entertainment, Inc. aided and abetted a breach of the duty of loyalty, Mattel must prove by a preponderance of the evidence all of the facts necessary to establish each of the following elements.  You must determine each of these elements separately as to MGA Entertainment, Inc. and Mr. Larian.

1.  MGA Entertainment, Inc. or Mr. Larian had actual knowledge that a breach of the duty of loyalty had been, or was to be, committed;

2.  MGA Entertainment, Inc. or Mr. Larian made a conscious decision to participate in activity designed to assist the breach;

3.  With knowledge that a breach had occurred or would occur, MGA Entertainment, Inc. or Mr. Larian substantially assisted the commission of the breach;

4.  Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar breached a duty of loyalty to Mattel during the period of his or her employment by Mattel;

5.  Mattel was harmed during the period of Mr. Bryant's, Mr. Tumaliuan's, Ms. Cabrera's, Ms. Morales's, or Ms. Salazar's employment by Mattel as a result of a breach of a duty of loyalty; and

6.  Mattel's harm would not have occurred in the absence of the breach of a duty of loyalty and MGA Entertainment, Inc.'s or Isaac Larian's actions.

**Authority:** *MJT Securities, LLC v. Toronto-Dominion Bank*, 2007 WL 1725421, at **7-8 (N.D. Cal. June 14, 2007) (elements); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); *Resolution Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of knowledge and substantial assistance); *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation); *Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty to former employer where competitor paid at-will employee an advance and employee did not disclose intention to work for competitor), aff'd, 283 F.2d 695 (9th Cir. 1960); *see also Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26 (1996); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876; *Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty to former employer where competitor paid at-will employee an advance and employee did not disclose intention to work for competitor), aff'd 283 F.2d 695 (9th Cir. 1960); *Lomita Land & Water Co. v. Robinson*, 54 Cal. 36, 47 (1908) ("The words 'aid and abet' . . . have a well understood meaning and may fairly be construed to imply an intentional participation with knowledge of the object to be attained.") (emphasis added), *Casey v. U.S. National Bank Ass'n*, 127 Cal. App. 4th 1138, 1148 (2008) (holding that to satisfy the knowledge prong, the defendants must have "actual knowledge of the primary violation in which they purportedly participated."), *Howard v. Superior Court*, 2 Cal. App. 4th 745, 748-49 (1992) ("[A]iding and abetting . . . necessarily request a defendant to reach a conscious decision to participate in the tortious activity for the purpose of assisting another in performing a wrongful act.") (emphasis added), *Gerard v. Roos*, 204 Cal. App. 3d 968, 983 (1988) ("A defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he knew . . . that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort.")

# DAMAGES – AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

The measure of damages for breach of the duty of loyalty is the amount of money necessary to place Mattel in the same economic position it would have been in if the duty had not been breached. In other words, the purpose of awarding damages to Mattel for breach of the duty of loyalty is to make it whole for any injuries it suffered.

In assessing damages for the breach of the duty of loyalty, you may not consider or award damages for the value of the rights to the Bratz doll or any Bratz trade secret, you may only award damages for the loss in value of the services of the employee for which Mattel paid that it did not receive as a result of any breach of the duty of loyalty.

Mattel must prove that it suffered economic injury as a result of aiding and abetting a breach of the duty of loyalty.  If Mattel fails to meet its burden of proving that it suffered economic injury, you may not award any damages to Mattel.  If, however, you find that Mattel suffered economic injury as a result of aiding and abetting a breach of the duty of loyalty by MGA Entertainment, Inc. or Mr. Larian, you may consider whether Mattel has proven the amount of such damages.

**Authority:** CACI No. 4102 (2008) (as modified); *Bancroft Whitney Co. v. Glen,* 64 Cal. 2d 327, 345-346 & n.10 (1966); accord *Eckard Brandes, Inc. v. Riley,* 338 F. 3d 1082, 1086 (9th Cir. 2002); *Western Med. Consultants, Inc. v. Johnson,* 80 F.3d 1331, 1336-38 (9th Cir. 1996); *Franklin Music Co. v. Am. Broad. Cos.,* 616 F. 2d 528, 532-33, 537 (3d Cir. 1979); *Merger Mgmt. Consulting, Inc. v. Wilde,* 920 F. Supp. 219 (D. D.C. 1996); *Abraham Zion Corp. v. Lebow,* 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); *Seward v. Union Pump Co.,* 428 F. Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v. *Lindsey & Newsom Claim Servs., Inc.,* 83 Cal. App. 4th 409, 424-25 (2000), overruled on other grounds by, *Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004); *Computer Sciences Corp. v. Ferguson,* 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third) of Agency Sect. 8.04 cmt. c; *MJT Securities, LLC v. Toronto-Dominion Bank,* 2007 WL 1725421, at **7-8 (N.D. Cal. June 14, 2007) (elements); *Neilson v. Union Bank of California, N.A.,* 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); *Resolution Trust Corp. v. Rowe,* 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of knowledge and substantial assistance); *Mendelsohn v. Capital Underwriters, Inc.,* 490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation); *Sarkes Tarzian, Inc. v. Audio Devices, Inc.,* 166 F. Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty to former employer where competitor paid at will employee an advance and employee did not disclose intention to work for competitor), aff'd, 283 F.2d 695 (9th Cir. 1960); *Gerard v. Ross,* 204 Cal. App. 3d 968, 983 (1988) (intent); see also *Richard B. LeVine, Inc. v. Higashi,* 131 Cal. App. 4th 566, 574 (2005); *Casey v. U.S. Bank Nt'l Ass'n,* 127 Cal. App. 4th 1138, 1144 (2005); *Fiol v. Doellstedt,* 50 Cal. App. 4th 1318, 1325-26 (1996); *Saunders v. Superior Court* 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876; Cal. Civ. Code §§1709; 3333; 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §1717; BAJI 12.57 (as modified)

## PUNITIVE DAMAGES—INDIVIDUAL AND CORPORATE DEFENDANTS

If you decide that Isaac Larian's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages against Mr. Larian and, if so, against MGA. The amount, if any, of punitive damages will be an issue decided later.

You may award punitive damages against Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Larian engaged in that conduct with malice, oppression, or fraud.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of his, her, or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

You may also award punitive damages against MGA based on Mr. Larian's conduct if Mattel proves the following by clear and convincing evidence:

   1.   That Mr. Larian was an officer, a director, or a managing agent of MGA who was acting on behalf of MGA at the time of the conduct constituting malice oppression or fraud.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

1  **Authorities:**  CACI 3949

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **STATUTE OF LIMITATIONS—BREACH OF DUTY OF LOYALTY**

2      MGA and Isaac Larian contend that Mattel's breach of duty of loyalty claims

3  were not filed within the time set by law. To succeed on this defense, MGA and Mr.

4  Larian must prove that Mattel did not file its claims against them within two years of

5  the date when Mattel knew, or when a reasonable person would have had any reason to

6  suspect, that a breach of the duty first occurred.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Authority:** Cal. Civ. Proc. Code § 339

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONVERSION**

Mattel claims that MGA wrongfully exercised control over some of its tangible property.  Wrongful exercise of control over the tangible property of another is called "conversion."  To establish this claim, Mattel must prove all of the following:

1.     That Mattel had a right to possess tangible property;

2.     That MGA intentionally took possession of Mattel's tangible property for a significant period of time;

3.     That Mattel did not consent;

4.     That MGA was harmed; and

5.     That the harm to Mattel would not have occurred in the absence of MGA's conduct.

1  **Authority:** CACI 2100, 2102; Cal. Civ. Code §3336; *Haines v. Parra* (1987), 193
2  Cal. App. 3d 1553, 1559

# DAMAGES – CONVERSION

If you decide that Mattel has proved its claim for conversion against MGA, you must decide how much money will reasonably compensate Mattel for that harm. Mattel must prove the amount of its damages. Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

1. The fair market value of Mattel's tangible property at the time MGA allegedly exercised control over it;

2. Reasonable compensation for the time and money spent by Mattel in attempting to recover its tangible property (although this does not include expenses incurred in preparation for litigation or in litigation and not in pursuit of tangible property);

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming:

1. That there is no pressure on either one to buy or sell; and

2. That the buyer and seller know all the uses and purposes for which Mattel's tangible property is reasonably capable of being used.

1   **Authority:** CACI 2100, 2102; Cal. Civ. Code §3336; *Haines v. Parra* (1987), 193
2   Cal. App. 3d 1553, 1559

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STATUTE OF LIMITATIONS—CONVERSION

2      MGA and Isaac Larian contend that Mattel's conversion claim was not filed

3 within the time set by law.

4      To succeed on this defense, MGA and Mr. Larian must prove that Mattel did

5 not file its claims against them within three years of the act of wrongfully taking the

6 property that Mattel contends was converted, regardless of whether or not Mattel

7 actually knew of the taking at the time.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  Cal. Civ. Proc. Code §338(c). *AmerUS Life Ins. Co. v. Bank of Am.,*
2    *N.A.*, 143 Cal. App. 4th 631, 639 (2006); <u>*Strasberg v. Odyssey Group, Inc.*</u>, 51 Cal.
     App. 4th 906, 916 (1996)

**17.0**
**PRELIMINARY INSTRUCTION—COPYRIGHT**

Mattel claims ownership of the copyright in certain works and seeks damages against MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK"), and Isaac Larian, for copyright infringement.  MGA, MGA HK, and Mr. Larian deny that Mattel owns the copyrighted works at issue and also deny that they infringed the copyright in any such works.  If you determine that Mattel owns one or more of the copyrighted works at issue, you will be asked to determine whether certain Bratz dolls, specifically the first generation dolls (Cloe, Yasmin, Sasha, and Jade) and/or either of two later generation dolls, Ooh La La Cloe or Formal Funk Dana, infringe those works.

<u>DEFINITION OF COPYRIGHT</u>

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works from, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, sySterns, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

I have determined that certain elements of the Carter Bryant drawings and preliminary Bratz doll sculpt are not original or subject to copyright protection.  I will identify those elements for you in later instructions.

## COPYRIGHT INTERESTS

The copyright owner may transfer to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted work. To be valid, the transfer must be in writing. The person to whom a right is transferred is called an assignee.

Mattel claims that Carter Bryant assigned the copyrighted works to Mattel. MGA, MGA HK, and Mr. Larian claim that Carter Bryant assigned the copyrighted works to MGA.

## COPYRIGHT REGISTRATION

MGA has registered certain of the works at issue with the U.S. Register of Copyrights and obtained certificates of copyright for those works. The works registered by MGA are:

[Insert to come following meet and confer]

Mattel has also sought and obtained copyright registrations for various of the works at issue in this case.

[Insert to come following meet and confer]

A copyright registration does not determine the degree, scope, or amount of original protected expression in the works.

## MATTEL'S BURDEN OF PROOF

Mattel contends that the defendants have infringed its copyrights. Mattel has the burden of proving by a preponderance of the evidence that Mattel is the owner of the copyrights and that MGA, MGA HK, or Mr. Larian copied original elements of the copyrighted works. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work(s) were infringed.

## PROOF OF COPYING: SCULPTS

To prove that MGA or Mr. Larian infringed any copyrighted sculpt(s) or drawing(s) of a sculpt that you find is owned by Mattel, Mattel must prove that MGA, MGA HK, or Mr. Larian had access to such work(s) and that the Bratz doll sculpts are virtually identical to such work(s).

## PROOF OF COPYING: SKETCHES

To prove that MGA infringed any copyrighted sketch(es) that you find is owned by Mattel, Mattel must prove that MGA, MGA HK, or Mr. Larian had access to such work(s) and that there are substantial similarities between the Bratz dolls and any such work(s).  In making this determination, you must disregard similarities in unprotectable ideas and unprotectable elements of the works at issue.

## LIABILITY FOR INFRINGEMENT

One who reproduces, prepares derivative works from, or distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

## VICARIOUS INFRINGEMENT

MGA HK or Mr. Larian is liable for copyright infringement by another if MGA HK or Mr. Larian has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not MGA HK or Mr. Larian knew of the infringement.

## CONTRIBUTORY INFRINGEMENT

MGA HK or Mr. Larian is liable for copyright infringement by another if MGA HK or Mr. Larian knew or should have known of the infringing activity and induced or materially contributed to the activity.

## DEFENSES TO INFRINGEMENT

MGA, MGA HK, and Mr. Larian contend that there is no copyright infringement.  There is no copyright infringement if you find that Mattel does not own any of the copyrighted works at issue, that the defendants independently

1   created the challenged works, or that the only items you find have been copied are

2   unprotectable elements, as explained more fully below.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Authority:** 9th Cir. Civ. Jury Instr. 17.0 (2007); *Mattel, Inc. v. MGA Entertainment, Inc.,* 616 F.3d 904, 917(9th Cir. 2010); Dkt. # 9538 at 12-29 (Order on Motions for Summary Judgment); 37 CFR § 202.20(b)(2)(i-ii); 17 U.S.C. § 410(c)

**17.1**
**COPYRIGHT—DEFINED**

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

1.     authorize, or make additional copies or otherwise reproduce the copyrighted work;

2.     recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

3.     distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

4.     display publicly a copyrighted pictorial or graphic work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes the author of the work and an assignee.  In general, copyright law protects against production, adaptation, and distribution and display of virtually identical or substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

1    **Authority:** 9th Cir. Civ. Jury Instr. 17.1 (2007).

**17.2**
## COPYRIGHT—SUBJECT MATTER—GENERALLY

The works in issue in this trial, the preliminary Bratz doll sculpt and Carter Bryant's sketches, are known as: pictorial works, graphic works, and sculptural works, which include, such as two-dimensional and three-dimensional works of fine, graphic and applied art, photographs, prints and art reproductions.

You are instructed that a copyright may be obtained in sculpts and sketches and that these works can be protected by the copyright law.  Only that part of the works comprised of original works of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any ideas or concepts, regardless of the form in which they are described, explained, illustrated, or embodied.

1  **Authority:** 9th Cir. Civ. Jury Instr. 17.2 (2007).

**17.3**
## COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular expression of an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as concepts, or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular expression of that idea in the work is not copied.

Copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by others' work.

1  **Authority:** 9th Cir. Civ. Jury Instr. 17.3 (2007); *Mattel, Inc. v. MGA Entertainment,*
2  *Inc.,* 616 F.3d 904, 917 (9th Cir. 2010); Dkt. # 9538 at 15, 17, 27 (Order on Motions
   for Summary Judgment)**;** *Feist Publications, Inc. v. Rural Telephone Co.,* 499 U.S.
   340, 349-50 (1991); *Mattel, Inc. v. Goldberger Doll Mfg. Co.,* 365 F.3d 133, 136
3  (2d Cir. 2004); *Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 900-901 (9th Cir. 1987)

**17.4**
**COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND
COPYING**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.   Mattel is the owner of a valid copyright(s); and

2.   MGA copied original elements from any copyrighted work found to be owned by Mattel.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for MGA, MGA HK and Mr. Larian.

1    **Authority:** 9th Cir. Civ. Jury Instr. 17.4 (2007)

**17.5**
**COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID COPYRIGHT—DEFINITION**

Mattel is the owner of a valid copyright if Mattel proves by a preponderance of the evidence that:

1.     Mattel's work is original; and

2     Mattel is the author or creator of the work or received a transfer of the copyright.

If you determine that Mattel is the owner of any Bryant sketch or preliminary Bratz doll sculpt, it is that sketch and/or sculpt that you are to use to compare to the Bratz first generation dolls and two later generation dolls (Ooh La La Cloe and Formal Funk Dana) for purposes of your verdict on Mattel's copyright claim.

If you find that Mattel does not own any of the Bryant sketches or the preliminary Bratz doll sculpt, you must find for MGA, MGA HK and Mr. Larian on the issue of copyright infringement.

**Authority:** 9th Cir. Civ. Jury Instr. 17.5 (2007); Dkt. # 9538 at 16, 17-24, 28-29 (Order on Motions for Summary Judgment)

**17.6**
**COPYRIGHT INTERESTS—AUTHORSHIP**

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

Others may help or may make valuable or creative contributions to a work. However, such contributors cannot be the authors of the work unless they caused the work to come into being.  One must translate an idea into a fixed, tangible expression in order to be the author of the work.  Merely giving an idea to another does not make the giver an author of a work embodying that idea.

1  **Authority:** 9th Cir. Civ. Jury Instr. 17.6 (2007)

**17.7**
## COPYRIGHT INTERESTS—JOINT AUTHORS

If you determine that Mattel is the owner of any Bryant sketch or preliminary Bratz doll sculpt, then you must determine whether or not MGA, MGA HK and/or Isaac Larian is a joint author of any such work.

A joint work is a work prepared by two or more authors. At the time of the joint work's creation, a joint work must have two or more authors, and

1.  each author must have made a substantial and valuable contribution to the work;

2.  each author must have intended that their contributions be merged into inseparable or interdependent parts of a unitary whole; and

3.  each author must have contributed material to the joint work which could have been independently copyrighted.

Each author of a joint work shares an undivided interest in the entire joint work.

In deciding whether parties intended their contributions to be merged in element 2, above, you may consider whether they signed a written agreement stating that the copyright in the work is to be jointly owned.  If there is no such agreement, you may consider whether:

a.  both parties exercised control over the work. This is the most important factor;

b.  both parties' actions showed they shared the intent to be co-authors when they were creating the work, for instance by publicly stating that the work was their shared project; and

c.  the audience-appeal of the work depends on the contribution of each party so that the share of each party's contribution in the work's success cannot be appraised.

1    In making a substantial and valuable contribution to a work, each author's
2  contribution to the joint work need not be equal.

3    The authors of a joint work are co-owners of copyright in the work.  A co-
4  owner of a copyright cannot be liable to another co-owner for infringement of the
5  copyright.

**Authority:** 9th Cir. Civ. Jury Instr. 17.7 (2007); 17 U.S.C. § 201(a); 17 U.S.C. §§ 101, 201(a); *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984)

**17.10**
**COPYRIGHT INTERESTS—ASSIGNEE**

Mattel does not claim to be the author or initial owner of any of the works at issue.  Instead, Mattel claims that it received ownership of the copyrights by virtue of assignment from Carter Bryant so that it is now the assignee of the copyright.  MGA also claims that it received ownership of some of the copyrights by virtue of assignment from Carter Bryant.

A copyright owner may convey to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work.  The person to whom the copyright is conveyed becomes the owner of the copyright in the work.

To be valid, the conveyance must be in writing.  The person to whom this right is transferred is called an assignee.

1    **Authority:** 9th Cir. Civ. Jury Instr. 17.10 (2007); 17 U.S.C. § 201(d)(1)

**17.12**
**COPYRIGHT INFRINGEMENT—ORIGINALITY**

An original work may include or incorporate elements taken from prior works or works from the public domain.  The original part of any work found by you to be owned by Mattel is the part created:

1.   indepentently by the author, that is, the author did not copy it from another work; and

2.   by use of at least some minimal creativity.

**Authority:** 9th Cir. Civ. Jury Instr. 17.12 (2007); *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991)

# TEST FOR COPYRIGHT INFRINGEMENT

To determine whether the Bratz dolls infringe any sculpts or sketches that you determine Mattel to own, you must engage in a comparison of the protectable elements of any such sculpts and sketches and the first generation Bratz dolls (Cloe, Yasmin, Sasha and Jade) and two later generation dolls, Ooh La La Cloe and Formal Funk Dana.

To prove copyright infringement, there are two different standards that Mattel must satisfy.  With respect to any sculpts or sketches of sculpts you find Mattel to own, Mattel must prove by a preponderance of the evidence that an ordinary reasonable observer would consider the Bratz dolls virtually identical to the protectable elements of those sculpts.

With respect to any doll sketches that you find Mattel to own, Mattel must prove by a preponderance of the evidence that an ordinary reasonable observer would consider the Bratz dolls substantially similar to the protectable elements of those sketches.

You may not consider unprotectable elements when you compare the sculpts or the sketches and the Bratz dolls.  I have determined that at least the following elements are unprotectable ideas and must be disregarded when you consider whether the works and the Bratz dolls are virtually identical or substantially similar:

1. fashion dolls with a bratty look or attitude;

2. a young female fashion doll with exaggerated proportions;

3. dolls sporting trendy clothing;

4. exaggerated features, including an oversized or larger head and feet;

5. larger eyes, thick lips, high cheekbones, slim arms, long legs, and slim torsos;

6. lips that curve;

7.     the look of a girl who has too much eye makeup on;

8.     oversized almond-shaped eyes;

9.     angular eyebrows;

10.    the dolls' resemblance to humans;

11.    the presence of hair, head, two eyes and other human features;

12.    human clothes, shoes and accessories;

13.    age, race, ethnicity and "urban" or "rural" appearances;

14.    standard features relative to others (like a thin body or small waist).

Based on the evidence presented, you may determine that other elements of the works are similarly unprotectable due to the fact that the elements are found in the public domain, are standard features, are utilitarian in purpose or merge into the expression of the idea.

I have determined that the following are protectable elements that can be considered in your infringement analysis:  the particular expression of face paint, hair color and style, clothing and accessories, and minute sculptural variations.

1

**Authority:** *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915-916 (9th Cir. 2010); Dkt. # 9538 at 14-15, 17, 27 (Order on Motions for Summary Judgment)**;** *Feist Publications, Inc. v. Rural Telephone Co.*, 499 U.S. 340, 349-50 (1991); *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 900-01 (9th Cir. 1987); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442-43 (9th Cir. 1994); *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988); *Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003); *Cavalier v. Random House*, 297 F.3d 815, 824 (9th Cir. 2002)

**17.20**
**DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF**

If you find that MGA infringed Mattel's copyright in any sketch or sculpt that you determine belongs to Mattel, you may consider Mattel's claim that MGA HK and Isaac Larian vicariously infringed that copyright.  Mattel has the burden of proving each of the following by a preponderance of the evidence:

    1.    MGA HK and/or Mr. Larian profited directly from the infringing activity of MGA;

    2.    MGA HK and/or Mr. Larian had the right and ability to control the infringing activity of MGA; and

    3.    MGA HK and/or Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for MGA HK and Mr. Larian.

1    **Authority:** 9th Cir. Civ. Jury Instr. 17.20 (2007)

**17.21**
## DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he, she, or it knew or had reason to know of the infringing activity and intentionally induced the infringing activity.

If you find that MGA infringed Mattel's copyright in any sketch or sculpt that you determine belongs to Mattel, you may proceed to consider Mattel's claim that MGA HK and Isaac Larian contributorily infringed that copyright. To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.   MGA HK and/or Mr. Larian knew or had reason to known of the infringing activity of MGA; and

2.   MGA HK and/or Mr. Larian intentionally induced MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel. If, on the other hand, Mattel has failed to prove either or both of these elements, your verdict should be for MGA HK and Mr. Larian.

1   **Authority:** 9th Cir. Civ. Jury Instr. 17.21 (2007)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTE OF LIMITATIONS—COPYRIGHT INFRINGEMENT**

MGA and Isaac Larian contend that Mattel's copyright claim was not filed within the time permitted by law.  To succeed on this defense, MGA and Isaac Larian must prove that Mattel discovered, or with reasonable diligence should have discovered, that MGA was asserting ownership over a property to which Mattel had a copyright interest before April 27, 2001.

1

**Authority:** 17 U.S.C. § 507(b); _Polar Bear Prods., Inc. v. Timex Corp._, 384 F.3d 700, 706 (9th Cir. 2004) (the statute of limitations is triggered when a "[plaintiff] [] discover[s], [or] reasonably could ... have discovered, the infringement"); _Rolev v. New World Pictures, Ltd._, 19 F.3d 479, 481 (9th Cir. 1994) (copyright infringement claims accrue "when one has knowledge of a violation or is chargeable with such knowledge")

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

**ESTOPPEL**

MGA and Isaac Larian claim as a defense that Mattel is barred from asserting copyright claims because of its prolonged silence regarding alleged infringement and its prior conclusion that the Bratz dolls do not infringe its intellectual property rights.

To establish this defense, MGA, MGA HK, or Mr. Larian must prove all of the following:

1. That Mattel made a representation of fact by conduct intending that MGA, MGA HK, or Mr. Larian should rely on it. Conduct is used "in its broadest meaning as including ... silence or negative omission to do anything";

2. That Mattel had knowledge that the Bratz dolls potentially infringed its intellectual property rights and that Carter Bryant worked for MGA;

3. Ownership of Bryant's Bratz sketches; and

4. That MGA, MGA (HK), or Mr. Larian reasonably relied on Mattel's silence to its or his detriment. Reliance must be reasonable in the sense that under the circumstances, a reasonable person would have acted as the relying party.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Authority:** *HGI Associates, Inc. v. Wetmore Printing Co.,* 427 F.3d 867, 875 (11th Cir. 2005); *Stambler v. Diebold, Inc.,* 1988 WL 95479, at **6, 11 U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988), aff d, 878 F.2d 1445 (Fed. Cir. 1989); *City of Long Beach v. Mansell,* 3 Cal. 3d 462, 488 n.22 (1970)

**17.22**
**COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

If you find for Mattel on Mattel's copyright infringement claim, you must determine Mattel's damages.  Mattel is entitled to recover the actual damages suffered as a result of the infringement.  In addition, Mattel is also entitled to recover any profits of MGA, MGA HK and/or Mr. Larian attributable to the infringement.  Mattel must prove damages by a preponderance of the evidence.

1   **Authority:** 9th Cir. Civ. Jury Instr. 17.22 (2007)

**17.24**
**COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS (17 U.S.C. § 504(b))**

In addition to actual damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of MGA, MGA HK and/or Mr. Larian's profits only if you find that Mattel showed a causal relationship between the infringement and the profits generated indirectly from the infringement.

MGA's profit is determined by subtracting all expenses from MGA, MGA HK and/or Mr. Larian's gross revenue.

MGA, MGA HK and/or Mr. Larian's gross revenue is all of MGA, MGA HK and/or Mr. Larian's receipts from the sale of a products associated with the infringement.  Mattel has the burden of proving MGA, MGA HK and/or Mr. Larian's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing MGA, MGA HK and/or Mr. Larian's gross revenue.  MGA, MGA HK and/or Mr. Larian have the burden of proving expenses by a preponderance of the evidence.

If you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit cannot be attributed to the infringement and should not be awarded to Mattel.  MGA has the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

You are instructed that Mr. Larian did not receive any profits as a result of the alleged copyright infringement.

1    **Authority:** 9th Cir. Civ. Jury Instr. 17.24 (2010); 17 U.S.C. § 504(b)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNFAIR COMPETITION

MGA Entertainment, Inc. and Mattel claim that the other violated California's Unfair Competition Law, which prohibits business acts or practices that are unlawful, unfair, or fraudulent.  A practice may be considered "unfair" even if it is not "unlawful" or "fraudulent" and vice versa.

1   **Authority:** Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A.*
2   *Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (Cal. 1992); William L. Stern, *Bus. & Prof.*
    *C . § 17200 Practice,* §§ 3:12-3:13 (2010)

1

## UNFAIR COMPETITION – UNLAWFUL PRACTICES

2

3

For the purposes of the Unfair Competition Law, an "unlawful business act or practice" includes any business act or practice that violates state or federal law.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Authority**: Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (Cal. 1992); *Saunders v. Super. Ct.,* 27 Cal. App. 4th 832, 838-39 (Cal. Ct. App. 1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."); William L. Stern, *Bus. & Prof. C. §17200 Practice,* § 3:56 (2010)

## UNFAIR COMPETITION – FRAUDULENT PRACTICES

For purposes of the Unfair Competition Law, a "fraudulent business act or practice" means any business act or practice that is likely to confuse or deceive members of the public.  To prove that a business act or practice was fraudulent, the claimant need not prove that any members of the public were actually confused or deceived, that any member of the public actually relied upon the fraudulent practice, or that any member of the public sustained damages as a result of the practice.

1

2

3

**Authority:** Cal. Bus. & Prof. Code § 17204; *Comm. on Children's Television v. Gen. Foods Corp.,* 35 Cal. 3d 197, 211 (Cal. 1983); William L. Stern, *Bus. & Prof. C. § 17200 Practice,* §§ 3:154-3:167 (2010).

1

**UNFAIR COMPETITION – UNFAIR PRACTICES**

2          For the purposes of the Unfair Competition Law, an "unfair business act or

3   practice" means a business act or practice that threatens an incipient violation of an

4   antitrust law, or violates the policy or spirit of an antitrust law because its effects are

5   comparable to or the same as a violation of the law, or otherwise significantly

6   threatens or harms competition.

1

**Authority:** *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 187
(Cal. 1992); William L. Stern, Bus. & Prof. C. § 17200 Practice, §§ 3:113-3:117
(2010)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNFAIR COMPETITION – RESTITUTION**

If you find that Mattel or MGA Entertainment, Inc. committed an act of unfair competition in violation of the Unfair Competition Law, you must decide whether to award monetary restitution to the claimant and the amount of the restitution, if any. Restitution is limited to money or property the defendant took from the claimant, or money or property in which the claimant had a vested interest.  Property in which the claimant had a vested interest includes pre-existing business relationships with licensees, distributors, and retailers.

**Authority:** Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1136-37, 1149 (Cal. 2003); Dkt. #9600 (Amended SJ Order) at 111 ("There is a genuine issue of material fact as to whether MGA lost money as a result of Mattel's obstruction of its relationships with licensees and distributors.  MGA's licenses with its retailers were themselves "property" of which Mattel's alleged conduct deprived MGA.  MGA also expended tremendous sums to generate new licenses, or paid premiums to other licensees, because of Mattel's conduct and specifically, the conduct of Mattel's Chief Executive Officer Robert Eckert.  These are not simply harm to goodwill, but actual monetary losses suffered as a result of Mattel's alleged interference with MGA's contractual relationships with its licensees and retailers, whose business is the backbone of a toy manufacturer's success.") (citation omitted).

## AFFIRMATIVE DEFENSE – SETOFF AND RECOUPMENT

MGA claims that Mattel's claims are barred, in whole or in part, because MGA's damages, if any, must be setoff against damages Mattel owes to MGA. Setoff provides a legal ground upon which a party can postpone paying a sum, or determine whether payment is due, to another party until net liabilities between the parties are finally determined.  The right of setoff allows parties that owe each other money to apply their mutual debts against each other, thereby avoiding, for example, making MGA pay Mattel when Mattel owes MGA.  In setoff, the debts may arise out of different transactions.

If MGA proves Mattel owes damages to MGA and that those damages may be deducted from any award to Mattel, any damages due Mattel must be setoff against damages Mattel owes to MGA.

In considering the setoff defense, you may also consider the extent to which Mattel's actions caused a significant part of the harm it claims to have suffered. You may consider whether Mattel allowed damages to accrue or the situation to worsen by failing to exercise reasonable efforts or making reasonable expenditures to minimize harm.

1    **Authority:** Cal. Civ. Code § 1431.2; Witkin, Summary of California Law, Torts
2    §1629 (10th ed 2005); Witkin, 1 Summary of California Law, Contract §§920-22
     (10th ed 2005); Rest.2d Torts §920; *Maben v. Rankin,* 55 Cal. 2d 139, 144 (1961);
3    Corbin, Contracts §1038; *Pfaff v. Fair-Hipsley,* 232 Cal. App. 3d 274, 281 (1965);
     *Plut v. Fireman's Fund Ins. Co.,* Cal. App. 4th 98, 107 (2000); *Bramalea Calif. v.*
4    *Reliable Interiors,* 119 Cal. App. 4th 468, 472 (2004)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 DOC (RNBx)
MGA's Proposed Jury Instructions

**SETOFF AND RECOUPMENT – WRONGFUL INJUNCTION**

In an earlier phase of this litigation, on December 3, 2008, a different judge entered an injunction at Mattel's request prohibiting MGA from selling Bratz dolls after 2009, from developing any new Bratz dolls during 2009, and requiring MGA to recall all Bratz products still on store shelves in January 2010.  That injunction order was stayed by the court of appeals on December 9, 2009 and was later reversed and vacated.  MGA asserts that the later-reversed injunction caused MGA damages while it was still in effect.

If MGA proves that it was damaged by the injunction while it was still in effect and has made a reasonable calculation of the amount of such damages, you may consider the damages caused by the reversed injunction as part of MGA's setoff defense.

1   **Authority:** Cal. Civ. Code § 1431.2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28