QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de
Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) |
| | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| Plaintiff, | |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL'S SUPPLEMENTAL BRIEF REGARDING MGA'S MOTION *IN LIMINE* NO. 24 TO PRECLUDE REFERENCE TO MGA'S FRAUDULENT CONCEALMENT OF BRYANT'S WORK ON BRATZ WHILE EMPLOYED BY MATTEL** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>Discovery Cut-off: October 4, 2010<br>Pre-trial Conf: January 4, 2011<br>Trial Date: January 11, 2011 |

00505.07975/3917214.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND.................................................................................. 2

ARGUMENT ........................................................................................................ 4

I.      MATTEL IS ENTITLED TO INTRODUCE EVIDENCE OF MGA'S FRAUDULENT CONCEALMENT BEFORE THE JURY ............................ 4

II.     THE COURT PROPERLY APPLIED THE *HEARN* TEST AND FOUND NO IMPLIED WAIVER ......................................................... 5

   A.   That Mattel Did Not Waive Privilege By Pleading and Pursuing Fraudulent Concealment Is Law of the Case ........................... 7

   B.   Mattel Has Not Relied On Privileged Communications To Support Its Allegations.................................................... 7

   C.   MGA Has Obtained Non-Privileged Evidence That Allows It To Fully Respond ......................................................... 10

III.    MGA IS BARRED BY JUDICIAL ESTOPPEL FROM SEEKING IMPLIED WAIVER.............................................................. 13

IV.     THE RELIEF SOUGHT BY THE MOTION *IN LIMINE* IS UNWARRANTED, AND THE SCOPE OF ANY WAIVER MUST BE LIMITED........................................................................ 15

CONCLUSION................................................................................................... 17

MATTEL'S SUPPLEMENTAL BRIEF RE MGA MIL NO. 24

## **Preliminary Statement**

Pursuant to the Court's January 14, 2011 instruction, Mattel hereby submits this supplemental brief regarding MGA's Motion *in Limine* No. 24 to preclude reference to MGA's fraudulent concealment of Bryant's work on Bratz while employed by Mattel.

The Court has repeatedly rejected MGA's arguments, made on at least four separate occasions over the past three years, that fraudulent concealment allegations effected a waiver of Mattel's privilege.  MGA now argues that, in light of the Court's rejection of MGA's waiver arguments, *Mattel* should be precluded from offering fraudulent concealment evidence at all.  That makes no sense.  Mattel's fraudulent concealment allegations are longstanding—they have been pleaded for years and indeed were tried to the jury in the first trial.  The Court has decided to send statute of limitations issues to the jury; MGA's fraudulent concealment goes directly to those issues.  There is no basis for precluding Mattel's proof on this issue.

MGA argues that Mattel should not be allowed to argue that MGA and Larian fraudulently concealed their theft of Bratz if Mattel refuses to produce privileged communications, including communications related to its internal investigation of potential Toon Teens infringement.  However, MGA has not identified any new facts or law that would justify overturning the law of the case that Mattel's longstanding fraudulent concealment allegations do ***not*** effect a waiver.  As the Court has repeatedly ruled, there is no categorical rule that a fraudulent concealment allegation automatically results in implied waiver of privileged communications.  Rather, the Ninth Circuit's application of the three-part <u>Hearn</u> test controls, and MGA fails to satisfy the second and third prongs of this test.

In addition to failing to satisfy the <u>Hearn</u> test, MGA's implied waiver argument should be rejected for the independent reason that it is barred by principles of judicial estoppel.  When it came to MGA's own allegations of fraudulent concealment, MGA took the exact opposition position as it does here—urging that *its* allegations did not

effect a waiver.  The Court adopted that position, which bars MGA from an about-face now.

Because they were correct as well as now binding on MGA under law of the case principles and judicial estoppel, the Court should leave its prior implied waiver rulings intact and permit Mattel to offer its proof of MGA's fraudulent concealment.

## Factual Background

**Mattel alleges fraudulent concealment**.  Mattel's fraudulent concealment allegations have long been in the case.  When Mattel first filed its complaint in April 2004, it alleged that "[d]uring the time that he was employed by Mattel and thereafter, Bryant concealed [his theft of Bratz] from Mattel" such that "Mattel had no reason to suspect that Bryant had worked for [MGA] while still employed by Mattel until late November 2003."  Complaint at ¶ 12.  Similarly, when Mattel filed its Amended Answer and Counterclaims in January 2007, it alleged that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz."  Dkt. No. 143 at ¶ 35.  Mattel's Fourth Amended Answer and Counterclaims ("FAAC") likewise alleges that "Bryant, Larian and MGA . . . deliberately and intentionally concealed facts from Mattel so that it would not suspect or know that it was the true owner of Bratz."  Dkt. No. 7714 at ¶ 29.  MGA's fraudulent concealment tolls the limitations period applicable to Mattel's Bratz-related claims. Regents of Univ. of Cal. v. Superior Court, 20 Cal. 4th 509, 533 (1999).  Although all of Mattel's Bratz-related claims are timely without regard to fraudulent concealment under the discovery rule, Mattel seeks to present evidence that the claims are timely for the independent reason that MGA and Larian fraudulently concealed the factual basis for the claims until two or three years prior to April 27, 2004, the date on which the lawsuit was filed.  In Phase 1, the jury found in Mattel's favor on the questions whether MGA "fraudulently concealed the bases for" Mattel's intentional interference with contract and conversion claims.  Dkt. No. 4279 at 8-9.

**The Court repeatedly rejects MGA's waiver arguments**.  MGA first sought an implied waiver finding based on Mattel's fraudulent concealment allegations on January 18, 2008.  Dkt. No. 1667.  The prior Discovery Master, Judge Infante, denied that motion on April 25, 2008.  Dkt. No. 3284.  Judge Infante found no implied waiver because MGA failed to satisfy the second and third prong of the <u>Hearn</u> test.  <u>Id</u>. at 7-8.  MGA appealed that ruling to Judge Larson, and Judge Larson again rejected MGA's arguments.  Dkt. Nos. 3410, 3669.  He held that the Discovery Master "issued a well-reasoned order denying MGA's motion to compel[,]" that he "correctly applied the so-called <u>Hearn</u> test" and that "[t]he Court leaves the Order undisturbed."  Dkt. No. 3669 at 4.

Almost two years later, on January 20, 2010, MGA rehashed this same issue again with Discovery Master O'Brien.  The Discovery Master rejected MGA's application without "express[ing] an opinion as to whether MGA may appropriately seek relief from the Court".  Dkt. No. 7785 at 10 n.1.  Six months later, and after the close of discovery, MGA raised the issue with the Court.  Dkt. Nos. 8931, 8945.  The Court rejected MGA's waiver motion both as untimely and on the merits.  Dkt. No. 8974 at 6 & n.2.

**MGA argues that its own fraudulent concealment allegations do *not* effect a waiver**.  While arguing that Mattel had waived the privilege by making fraudulent concealment allegations, MGA simultaneously argued that it did not waive the privilege by making its own fraudulent concealment allegations.  The Discovery Master found no waiver by MGA at the deposition of Ron Brawer on September 26, 2010.  Dkt. No. 8864 at 3-5.  The Discovery Master specifically sustained MGA's objection to Mattel's question asking whether Brawer discussed Mr. Villasenor with MGA's attorneys when he joined MGA in October 2004.  <u>Id</u>.

Mattel filed objections to this ruling with the Court, which upheld the Discovery Master's decision.  In so ruling, the Court recognized that "information about the 'subject matter' of Brawer's conversations with MGA's counsel is highly relevant to 'Mattel's defense' to MGA's counterclaims-in-reply that 'MGA—and its attorneys—

1   have known about Mr. Villasenor's activities since at least 2004 when Mr. Brawer joined

2   MGA' for purposes of calculating the relevant statute of limitations period." Dkt. No.

3   8974 at 9.  Nevertheless, the Court rejected Mattel's objections—in the same Order in

4   which it rejected MGA's implied waiver argument—because relevance is not the

5   standard for determining whether privileged evidence should be protected from

6   disclosure.  Id. at 6, 11.

7       Despite prevailing in its effort to withhold its own privileged communications

8   going to statute of limitations and laches issues, MGA filed its Motion *in Limine* No. 24

9   seeking to preclude Mattel from introducing evidence of fraudulent concealment because

10  Mattel did not produce the exact same type of evidence that MGA successfully argued

11  need not be produced.

12                          **Argument**

13  I.    **MATTEL IS ENTITLED TO INTRODUCE EVIDENCE OF MGA'S**

14        **FRAUDULENT CONCEALMENT BEFORE THE JURY**

15      MGA's fraudulent concealment is properly at issue in the case, amply supported

16  by evidence, and relevant to issues that will be tried.  As noted, Mattel has raised

17  allegations of fraudulent concealment since it first filed its complaint in 2004 and in all

18  amended complaints it has filed since.  As Mattel demonstrated in its opposition to

19  MGA's motion *in limine*, evidence of MGA's fraudulent concealment is overwhelming

20  and includes the destruction of documents, directives from Larian to fabricate and

21  conceal factual information concerning the development of Bratz, deliberate efforts to

22  conceal Carter Bryant's involvement in Bratz, the orchestrated fabrication of a story that

23  Larian created Bratz, and the punishment of vendors who referenced Bryant's role in

24  Bratz so as to keep such information under wraps. Opp. at 2-3.  Given MGA's positions

25  on the statute of limitations, there can be no question that evidence of MGA's fraudulent

26  concealment is relevant to issues that remain in dispute, including to the timeliness of

27

28

Mattel's conversion claim[1] and to Mattel's establishment that its other Bratz-based claims are timely. Moreover, the parties have long agreed that evidence of fraudulent concealment goes to the jury,[2] and the Phase 1 jury specifically found in Mattel's favor on its fraudulent concealment allegations. Moreover, even apart from the statute of limitations issues, this evidence of MGA's concealment directly shows its guilty knowledge and bad intent. Accordingly, just as Mattel was entitled to present evidence of MGA's fraudulent concealment in the Phase 1 trial, it is entitled to do so now on the retrial of its Bratz-related claims.

## II. THE COURT PROPERLY APPLIED THE *HEARN* TEST AND FOUND NO IMPLIED WAIVER

The Ninth Circuit has recognized the respect that California affords the attorney-client privilege: "The California Supreme Court has recently described the privilege as 'fundamental to [its] legal system' and a 'hallmark of [its] jurisprudence.'" Bittaker v. Woodford, 331 F.3d 715, 721 (9th Cir. 2003) (quoting People v. Superior Court, 25 Cal. 4th 703, 715 (2001)). This also applies to the work product privilege, "a complementary rule that protects many of the same interests." Id. at 722 n.6 (citing Upjohn Co. v. United States, 449 U.S. 383, 400 (1981)). The Court and Discovery Master properly applied Ninth Circuit law in previously concluding that no privilege waiver is warranted in this case.

In analyzing requests seeking privilege waiver such as MGA's, the Ninth Circuit applies the "Hearn test," set forth in Hearn v. Rhay, 68 F.R.D. 574, 576-77 (E.D. Wash.

---

[1] Assuming Mattel's Bratz-related conversion claim is not subject to the discovery rule because the breach of fiduciary duty exception does not apply, see AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal. App. 4th 631, 639 (2006), Mattel must prove that MGA "took affirmative steps to conceal the facts that could have led Mattel to discover that Carter Bryant created Bratz-related works" until at least April 27, 2001, three years before Mattel filed its original complaint against Bryant. See Cal. Code Civ. Proc. § 338(c) (three-year limitations period for conversion).

[2] Dkt. No. 4154 (July 24, 2008 Civil Minutes), at 8 ("Both parties agree that the issue of whether Mattel has established a period of fraudulent concealment should be submitted to the jury.").

1975).  See, e.g., United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999).  The test requires that the party seeking waiver make a showing that satisfies three factors:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
>
> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
>
> (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Hearn, 68 F.R.D. at 576-77.

Implied waiver requires that a party *affirmatively put at issue* privileged information in support of its claim or defense.  The Ninth Circuit has only found that a party affirmatively put at issue privileged information in two situations: (1) when a party *relies on privileged communications* or work product in support of its claims or defenses, see Chevron Corp. v. Pennzoil Co., 974 F.2d 1156 (9th Cir. 1992) (finding implied waiver where defendant asserted an advice of counsel defense); and (2) when the *only* evidence available to assess a party's claim or defense consists of attorney-client communications or work product.  See Amlani, 169 F.3d at 1191 (finding implied waiver where privileged communications were the only evidence of an essential element of plaintiff's attorney disparagement claim—the reason the plaintiff fired his attorney); Holmgren v. State Farm Mutual Automobile Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992) (finding implied waiver regarding an insurer's counsel's handling of a claim in a bad faith claim settlement practices case because "[i]n a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue.'") (quoting Reavis v. Metropolitan Property & Liability Ins. Co., 117 F.R.D. 160, 164 (S.D. Cal. 1987)).[3]  Neither situation is present here, and there is no basis to even reassess the Court's prior findings, which are binding law of the case.

---

[3]  In the other Ninth Circuit implied waiver cases cited by MGA, the Ninth Circuit *declined* to find implied waiver.  See, e.g., Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003) (discussing, but declining to find, implied waiver in the context of a claim of (footnote continued)

### A.   That Mattel Did Not Waive Privilege By Pleading and Pursuing Fraudulent Concealment Is Law of the Case

There is no basis to reconsider the Court's prior, well-reasoned rulings in this case that Mattel did not waive privilege by asserting fraudulent concealment. The "law of the case" doctrine generally precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case. Moore v. James H. Matthews & Co., 682 F.2d 830, 833-34 (9th Cir. 1982). "While courts have some discretion not to apply the doctrine of law of the case, that discretion is limited." Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993) (internal citation omitted). The prior decision should be followed unless it is (i) "clearly erroneous and its enforcement would work a manifest injustice"; (ii) "intervening controlling authority makes reconsideration appropriate"; or (iii) "substantially different evidence was adduced at a subsequent trial." In re Rainbow Magazine, Inc., 77 F.3d 278, 281 (9th Cir. 1996) (citations omitted).

None of the factors that would justify a departure from the prior rulings on this issue is present here. MGA does not argue that the rulings were clearly erroneous or that controlling law has changed. Nor are the relevant facts or evidence different than before. MGA is simply rehashing the argument it has raised unsuccessfully several times before. The law of the case should be respected in these circumstances, and MGA's waiver arguments should be rejected for this reason alone.

### B.   Mattel Has Not Relied On Privileged Communications To Support Its Allegations

MGA does not and cannot point to any privileged information that Mattel relies on in support of its allegations of fraudulent concealment. Mattel has not relied on privileged information at all. This situation is thus entirely different from the waiver found by the Court in 2010 based on MGA's testimony at the Phase 1 trial, which affirmatively injected communications with counsel into the case. Mattel has *never*

---

ineffective assistance of counsel); Home Indemnity Co. v. Lane Powell Moss and Miller, 43 F.3d 1322 (9th Cir. 1995) (discussing, but declining to find, implied waiver in the context of a claim of legal malpractice).

1   injected communications with counsel into the case and certainly did not do so merely

2   by alleging fraudulent concealment.  Furthermore, and inconsistent with the sweeping

3   position MGA takes on waiver here, the Court ruled that even MGA's deliberate,

4   affirmative production of and reliance on attorney-client communications worked only

5   a narrow waiver.  To this day, MGA has produced only a few, heavily redacted emails

6   as a consequence of its intentional waiver.

7          In light of this, the Court and the Discovery Master correctly applied the <u>Hearn</u>

8   test as interpreted by the Ninth Circuit in rejecting MGA's implied waiver arguments

9   against Mattel.  There is no implied waiver because two of the three <u>Hearn</u> factors are

10   not satisfied.  Applying the second prong of the <u>Hearn</u> test, Judge Infante specifically

11   found that "Mattel has not affirmatively put at issue privileged information in support

12   of its claim or defense."  Dkt. No. 3284 at 7.  He explained that:

13          Mattel's complaint does not refer directly or indirectly to any attorney
          investigation or attorney involvement in Mattel's alleged discovery of the

14          basis of its claims.  Nor has Mattel alleged that it learned of the basis of its
          claims by means of privileged attorney-client communications or work

15          product.  Mattel's discovery responses also make clear that Mattel is not
          relying on any privileged information to support its allegations of

16          fraudulent concealment.  Instead, Mattel has disclosed that it first learned of
          the basis of its claims when it received a copy of Bryant's agreement with

17          MGA in unrelated litigation.

18   <u>Id</u>.  Because "Mattel is not relying on any privileged information," as the Court

19   correctly found, the primary circumstance in which implied waiver can be found does

20   not apply.  <u>See</u> <u>Chevron</u>, 974 F.2d at 1163 (finding implied waiver where defendant

21   asserted advice of counsel defense); <u>see also</u> <u>In re Imperial Corp. of Am.</u>, 179 F.R.D.

22   286, 288-89 (S.D. Cal. 1998) (when plaintiff "relied on his attorneys' advice and

23   investigation [to] . . . overcom[e] [defendant's] statute of limitations defense," he

24   "plac[ed] in issue his own knowledge, and that of his attorneys'").

25          The only affirmative act MGA claims satisfies the second prong of the test is

26   Mattel's having alleged fraudulent concealment to toll the statute of limitations.  The

27   case law supports the prior decision in this case that merely pleading fraudulent

28   concealment does not "put[] the privileged information at issue."  <u>United States v.</u>

1  Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999).  As the court explained in The Navajo

2  Nation v. Peabody Holding Co., Inc., 255 F.R.D. 37, 50 (D. D.C. 2009):

> . . . [T]he Navajo did not affirmatively place the conduct or advice of their counsel at issue through their claims of fraudulent concealment and affirmative reliance.  Such evidence may be relevant to the Navajo's claims, but "[a]dvice [of counsel] is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner."  Although Defendants describe at length how privileged communications are relevant to the Navajo's claims, the undersigned has not located anything in the Navjo's pleadings to suggest that the Navajo affirmatively placed these communications at issue. Because the Navajo's claims of fraudulent concealment and affirmative reliance did not give rise to issue-injection waiver . . . .

9  Id. at 50 (internal citations omitted).

10      MGA has cited district court authority from the Second Circuit suggesting that a

11  fraudulent concealment allegation automatically waives the privilege, see WLIG-TV,

12  Inc. v. Cablevision Sys. Corp., 879 F. Supp. 229, 234 (E.D.N.Y. 1994), but the Second

13  Circuit subsequently held that this expansive construction of the second prong of the

14  Hearn test—which incorrectly equates "at issue" with "relevance"—"cuts too broadly."

15  In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008); see also Aristocrat Leisure Ltd.

16  v. Deutsche Bank Trust Co. Americas, 727 F. Supp. 2d 256, 271 (S.D.N.Y. 2010).

17  Consistent with the Ninth Circuit's narrow construction of the Hearn test, the Second

18  Circuit does not find implied waiver unless "a party relies on privileged communications

19  or work product in support of its claims or defenses."  Id.; accord Chevron Corp. v.

20  Pennzoil Co., 974 F.2d 1156, 1163 (9th Cir. 1992).

21      MGA's has cited the unpublished opinion of Rambus Inc. v. Samsung Elec. Co.,

22  Ltd., 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007), in support of its "relevance equals

23  waiver" arguments, but the Discovery Master and the Court appropriately found that

24  Rambus marks a departure from established Ninth Circuit law. Dkt. No. 3284 at 7 n.1.

25  The Court's prior decisions to follow Amlani and other Ninth Circuit cases, and not the

26  unpublished opinion in Rambus, is proper.  "Relevance" is hardly a basis for

27  overcoming privilege, yet relevance is all the MGA has even attempted to show. As the

28

Ninth Circuit has ruled, "[p]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." Amlani, 169 F.3d at 1195; see also Chamberlain Group v. Interlogix, Inc., 2002 WL 467153, at *2 (N.D. Ill. Mar. 27, 2002) (no waiver where defendant asserted a statute of limitations defense despite fact that communications with attorney were "relevant"). If MGA's position were accepted, the privilege would be waived whenever privileged information is relevant to a claim or defense. "The better reasoned cases eschew any broad reading of waiver based on merely raising the defense of laches or equitable estoppel. *Actual reliance on the opinion of counsel* to prove the defense should be required." Epstein, The Attorney Client Privilege and the Work Product Doctrine (5th ed. 2007), at 545 (emphasis added). Federal courts have been critical of the expansive application of the Hearn test advocated by MGA because it has no effective limiting principles. See, e.g., Remington Arms Co. v. Liberty Mutual Ins. Co., 142 F.R.D. 408, 413-415 (D. Del. 1992) (analyzing Hearn and subsequent cases and noting that some courts have improperly understood Hearn to "mean that the important protected information is 'at issue' and 'vital' whenever it contains information relevant to the case"). MGA's argument boils down to an automatic waiver rule—privilege is automatically waived whenever a party makes a fraudulent concealment allegation because the party's privileged communications are always "relevant." The automatic-waiver test advocated by MGA is not the law in the Ninth Circuit, and was properly rejected by the Court.

## C.   MGA Has Obtained Non-Privileged Evidence That Allows It To Fully Respond

Nor is it the case that the *only* evidence available to assess Mattel's allegations consists of attorney-client communications or work product. Amlani, 169 F.3d at 1191 (finding implied waiver where privileged communications were the only evidence going to why plaintiff fired his attorney, which was an essential element of the claim). Hearn's third prong requires that MGA show that "application of the privilege would have denied the opposing party access to information vital to his defense." Hearn, 68

1   F.R.D. at 578.  Where substantial non-privileged evidence bearing on a defense has been

2   produced, there is no waiver of privilege.  Amlani, 169 F.3d at 1195 ("When the sought-

3   after evidence is 'only 'one of several forms of indirect evidence' about an issue,' the

4   privilege has not been waived.") (citing In re Geothermal Res. Int'l, Inc., 93 F.3d 648,

5   653 (9th Cir. 1996)).   "Under Hearn, the information sought must be 'vital' to

6   defendants' case, meaning that the information is available from no other source."  See

7   1st Sec. Bank of Wash. v. Eriksen, 2007 WL 188881, at *3 (W.D. Wash. Jan. 22, 2007)

8   (citing Amlani, 169 F.3d at 1195 and Frontier Ref. Inc. v. Gorman-Rupp Co., Inc., 136

9   F.3d 695, 701-02 (10th Cir. 1998)).  Indeed, in Hearn, the court expressly noted that

10  "[i]n an ordinary case" the privilege is not waived, even when privileged information is

11  relevant, because "other means of proof are normally available."  Hearn, 68 F.R.D. at

12  582.

13        In stark contrast to Amlani, where non-privileged sources of evidence related to

14  plaintiff's attorney disparagement claim "would be of little, if any, value," 169 F.3d at

15  1196, substantial non-privileged evidence bearing on Mattel's fraudulent concealment

16  allegations and MGA's statute of limitations defense exists and has been produced.

17  MGA's statute of limitations briefing itself shows this.  See MGA MSJ at 11-16

18  (relying on dozens of purported evidentiary cites to support its summary judgment

19  argument that Mattel could have and should have raised its Bratz-based claims earlier

20  than it did, including deposition testimony from multiple witnesses, internal Mattel

21  documents, reports, e-mails, facsimiles, and call logs, and Mattel discovery responses).

22  In fact, over Mattel's objection the Court found the evidentiary showing made by MGA

23  was sufficient to overcome the Court's prior rulings as to accrual which, as the Court

24  acknowledged, were binding law of the case.  See MSJ Order at 96-97.

25        The Court and the Discovery Master have correctly found before that "there are

26  many other means of proof available to MGA to support its statute of limitations and

27  laches defenses."  Dkt. No. 3284 at 8.  In fact, Mattel has not shielded the facts of when

28  and how it learned that Bryant worked for MGA while he was employed by Mattel in

1   any way.   Mattel has produced hundreds of pages of non-privileged documents

2   regarding its investigations relating to Bryant and/or MGA, including a 2002 internal

3   investigation.   As Judge Infante previously found, Mattel has "conducted a reasonable

4   search . . . and has produced all documents related to the March 2002 investigation that

5   are responsive to MGA and Bryant's document requests."  Dkt. No. 486 at 6.   Having

6   reviewed the record, Judge Infante found: (i) Mattel has produced hundreds of pages of

7   non-privileged documents regarding its investigations relating to Bryant and/or MGA;

8   (ii) Richard De Anda, Mattel's head of security, testified as to how and when Mattel

9   first investigated Bryant and MGA; (iii) Mattel has provided interrogatory responses

10  explaining how and when it learned of Bryant's allegedly wrongful conduct; and

11  (iv) Mattel's 30(b)(6) designee testified on topics relevant to MGA's laches and statute

12  of limitations defenses and "provided substantial testimony relevant to MGA's

13  defense."  Dkt. No. 3284 at 8-9.

14          Mr. De Anda was deposed on the subject.   He confirmed that he had not even

15  heard of MGA, Bryant or Bratz before March 2002.[4]   He also testified at length

16  regarding how and when Mattel first investigated Bryant and MGA.[5]  Given that MGA

17  has the *facts* relating to Mattel's investigations, obtaining Mattel's privileged

18  communications and counsel's work product is far from "vital" to MGA's defense.

19          Judge Infante also found Mattel has provided interrogatory responses detailing

20  "its investigations of Bryant and MGA, and how and when it first learned of Bryant's

21  allegedly wrongful conduct that forms the basis for Mattel's claims." Dkt. No. 3284 at

22  8.  Mattel's response evaluated by the Discovery Master was fully responsive to the

23  interrogatory propounded by MGA, which asked Mattel to "[s]tate, with particularity,

24  when and how MATTEL first learned that BRYANT performed work for MGA."  Id.

25  at 8-9.

26

27  _____

    [4]   De Anda Depo. Tr. at 166:5-167:9.
28  [5]   De Anda Depo. Tr. at 166:5-177:4, 224:18-227:8, 237:11-258:22.

Finally, Judge Infante found that MGA's deposition of Mattel's 30(b)(6) designee on topics relevant to MGA's laches and statute of limitations defenses, produced "substantial testimony relevant to MGA's defense." Id. at 9. As he ruled:

> A review of the deposition transcript . . . reveals that Mattel's 30(b)(6) witness provided substantial testimony relevant to MGA's defense. Over the course of a ten hour day, Mattel's corporate designee gave over three hundred pages of testimony and freely answered all but a handful of questions posed to her on this subject. The transcript shows that the witness fully cooperated and gave responses to the best of her ability. Mattel's counsel did not obstruct MGA's questioning of the witness. Nor did Mattel's counsel object to any questions based upon the attorney-client privilege. *The witness provided significant factual evidence related to how and when Mattel first learned that Bryant was working for MGA while he was employed by Mattel.*

Id. at 9-10 (emphasis added). As Judge Infante also noted, "the witness was knowledgeable about the scope of investigations conducted by both [the Law and Security] departments." Id. at 10.

MGA's motion *in limine* claims that Mattel has withheld "pages and pages of investigative reports" (Mot. at 5), but MGA only cites to twelve pages out of hundreds produced, and it makes no argument that the narrowly redacted documents are not in fact privileged. MGA cannot show that application of the privilege would deny it information critical to its defenses as is required for a finding of implied waiver. Given MGA's failure to satisfy the second and third prongs of the Hearn test, the Court properly held that there was no implied waiver of Mattel's privileged communications.

## III.   MGA IS BARRED BY JUDICIAL ESTOPPEL FROM SEEKING IMPLIED WAIVER

MGA has taken, and prevailed, on a position that is the exact opposite of what it is advocating now. Mattel attempted to question Ron Brawer regarding whether he discussed Sal Villasenor with MGA's attorneys immediately after joining MGA in 2004. Dkt. No. 8870, Appendix A. The Discovery Master sustained MGA's privilege

objection, and in response to Mattel's appeal, MGA argued that Mattel's objection "should be overruled" because the Discovery Master was correct when he "drew the line . . . as to questions that revealed the substance of the communications" between Brawer and MGA's attorneys.  MGA Parties' Opposition to the Discovery Master's Privilege Ruling During the September 26, 2010 Deposition of Ron Brawer, dated October 1, 2010.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Wagner v. Prof'l Eng'rs in Cal. Gov't, 354 F.3d 1036, 1044 (9th Cir. 2004).  "It is an equitable doctrine intended to protect the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts." Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir. 1997).  "[J]udicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion." Id. at 535.  "The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal." Id.  Judicial estoppel is often invoked to prevent a party from taking inconsistent positions in the same litigation.  See Pegram v. Herdich, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

The Supreme Court has articulated three factors useful in determining whether to apply the doctrine of judicial estoppel.  First, a party's later position must be "clearly inconsistent" with the party's earlier position. New Hampshire v. Maine, 532 U.S. 742, 750 (2001).  Second, courts should inquire "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'' Id.  Where the party was previously unsuccessful in persuading the court to accept its position, the party's later inconsistent position poses

MATTEL'S SUPPLEMENTAL BRIEF RE MGA MIL NO. 24

1    no threat of inconsistent judicial determinations. Id. at 750-751. Third, consideration

2    should be given to whether the party asserting an inconsistent position would derive an

3    unfair advantage or would impose an unfair detriment on its adversary if not estopped

4    from advancing the position. Id. at 751.

5         In the same October 21, 2010 Order that rejected MGA's rehashed implied

6    waiver argument, MGA prevailed in its argument that Ron Brawer's communications

7    with MGA's attorneys after joining MGA in 2004 are privileged despite their critical

8    relevance to Mattel's statute of limitations defense and MGA's own fraudulent

9    concealment allegations.   Now MGA is arguing communications with Mattel's

10   attorneys regarding potential Toon Teens infringement are not privileged because of

11   their critical relevance to MGA's statute of limitations defense and Mattel's fraudulent

12   concealment allegations. Judicial estoppel precludes MGA from gaining an advantage

13   by successfully arguing that attorney-client communications related to Mattel's statute

14   of limitations defense and MGA's fraudulent concealment allegations are privileged,

15   but then taking the incompatible position that attorney-client communications related to

16   MGA's own defense and Mattel's allegations are not.

17   **IV.   THE RELIEF SOUGHT BY THE MOTION _IN LIMINE_ IS**

18        **UNWARRANTED, AND THE SCOPE OF ANY WAIVER MUST BE**

19        **LIMITED**

20        MGA asserts that Mattel should be precluded from pursuing fraudulent

21   concealment at trial. The contention has no basis in law or logic. Mattel's assertion of

22   the attorney-client privilege is and continues to be proper—as previously found by the

23   Court and the Discovery Master and as demonstrated yet again above. It would be

24   unprecedented and would serve to undermine the attorney-client privilege to conclude,

25   as MGA advocates, that the proper assertion of privilege disentitles a party to an

26   otherwise valid claim or defense.  MGA's motion does not cite any authority that

27   punishes a party for asserting privilege by stripping away a legitimate fraudulent

28   concealment defense.  Those cases do not exist.

MGA also has never articulated exactly what privileged communications it believes must be produced based on Mattel's ostensible waiver. Should the Court find waiver—and it should not—its scope must be narrowly tailored. "[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003). The implied waiver doctrine requires "closely tailor[ing] the scope of the waiver to the needs of the opposing party." Id. Indeed, the Court applied this principle when it found that MGA had deliberately waived the privilege as a result of its repeated interjection of privileged communications at the 2008 trial.

As the Court has now ruled, all Bratz-related claims relate back to April 27, 2004. MSJ Order at 92. Both parties have included proposed jury instructions recognizing that Mattel's claims were filed on April 27, 2004. Dkt. No. 9623 at 197; Dkt. No. 9620 at 119. Accordingly, privileged communications related to Mattel's internal investigation of potential Toon Teens infringement in 2002 are not even relevant—let alone vital—to MGA's limitations defense to Mattel's copyright, trade secret, and conversion claims. These claims have a three-year statute of limitations, so Mattel only needs to prove that Larian and MGA fraudulently concealed them until April 27, 2001—long before Mattel's attorneys ever became involved in the 2002 internal investigation.

For those Bratz-related claims with a two-year statute of limitations—intentional interference and aiding and abetting—Mattel's internal investigation is entirely irrelevant to the claims following the Court's preemption ruling. MSJ Order at 83 ("UTSA **does not** supersede the intentional interference with contractual relations counter-claim to the extent it arises out of conduct *unrelated to the misappropriation of Mattel's information*.") (italics added); id. at 90 (explaining that "other misconduct" besides misappropriation of Mattel's information forms the factual basis of the aiding and abetting breach of the duty of loyalty claim after the Court's preemption ruling). Not even MGA argues that Mattel's attorneys had knowledge of or investigated

Bryant's breaches of contract and duties to Mattel, let alone MGA's and Larian's encouragement of those breaches, prior to April 2002, nor has MGA identified any withheld evidence on this issue. Given the Court's summary judgment rulings, MGA's argument that Mattel's privileged communications are vital to its statute of limitations defense has gotten even weaker since 2008, not stronger. Even if the Court were to find that a waiver might been appropriate in the past, there is no need for it in light of the summary judgment rulings.

In any case, should the Court find waiver, it should be limited to pre-April 2002 information, if any, showing that Mattel obtained knowledge of Bryant's creation, design and development of Bratz *while he was a Mattel employee* and work for MGA *while he was a Mattel employee*. Mattel's claims here are based Bryant's creation of Bratz and work for MGA while he was employed by Mattel; the relevant question is when Mattel had knowledge that Bryant created Bratz and worked for MGA while a Mattel employee. Information related to Mattel's knowledge that Bryant worked for MGA or was involved with Bratz *after he left Mattel* is not even pertinent, and certainly not "vital." There should be no waiver finding, but if there is one it must be narrowly drawn in light of the issues that actually remain for trial.

## Conclusion

Mattel respectfully requests that the Court deny MGA's Motion *in Limine* No. 24.

DATED:   January 16, 2010          QUINN EMANUEL URQUHART & SULLIVAN. LLP


                                   By /s/ Michael T. Zeller
                                      Michael T. Zeller
                                      Attorneys for Mattel, Inc., and Mattel de
                                      Mexico. S.A. de C.V.