1  RUSS, AUGUST & KABAT
   Larry C. Russ, State Bar No. 82760
2  lruss@raklaw.com
   Bruce D. Kuyper, State Bar No. 144969
3  bkuyper@raklaw.com
   Nathan D. Meyer, State Bar No. 239850
4  nmeyer@raklaw.com
   12424 Wilshire Boulevard, 12th Floor
5  Los Angeles, California  90025
   Telephone:   (310) 826-7474
6  Facsimile:   (310) 826-6991

7  Attorneys for Non-Party Zapf Creation AG

8             UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                    SOUTHERN DIVISION

11

12  MATTEL, INC., a Delaware            Case No. CV 04-9049 DOC (RNBx)
    Corporation, et al.,
13                                      [Assigned to The Honorable David O.
                  Plaintiff,            Carter, Dept. 9D]
14
                  v.                    Consolidated with:
15                                      Case No. CV04-09059
    MGA ENTERTAINMENT, INC., a          Case No. CV05-02727
16  California Corporation, et al.,
                                        **NON-PARTY ZAPF CREATION**
17                Defendant.            **AG'S OPPOSITION TO**
                                        **MATTEL'S MOTION TO**
18                                      **COMPEL**

19

20  AND CONSOLIDATED ACTIONS

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

3201-01 110114 Opp MTC.doc

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................... 1

II.  FACTS ..................................................................................................... 2

III.  ARGUMENT ......................................................................................... 4

  A.  The Cases Cited by Mattel are Inapposite, and Mattel Ignores Case Law Holding That the German Laws at Issue Here Should Be Respected ................................................. 4

  B.  The *Restatement* Factors Do Not Favor Ordering Production from Zapf .................................................................................... 7

    1.  The Documents Are Not Critical To Any Claims, and the Redacted Information Will Be of Little Use To Mattel ...... 7

    2.  The Document Requests Are Vague, Burdensome and Overbroad ................................................................... 9

    3.  The Location of the Documents Weighs against Production ................................................................... 10

    4.  Mattel Fails to Argue That Alternative Means Will Not Suffice, and Fails to Address the Hague Convention at All .......................................................................... 10

    5.  German Privacy Laws Implicate Important German Interests, and the Redacted Information Implicates No Important US Policies ................................................... 13

    6.  Zapf's Status as a Non-Party Is Relevant ...................... 15

    7.  Zapf Cannot Yet Comment on Likelihood of Compliance 15

    8.  Zapf is not estopped from arguing privacy .................. 16

  C.  The Deposition Should Not Be Resumed Because the Witness Was Fully Prepared ............................................................. 17

IV.  CONCLUSION ................................................................................... 17

# TABLE OF AUTHORITIES

*Cases*                                                                                    *Page*

*Dexia Credit Local v. Rogan,*
       231 F.R.D. 538 (N.D. Ill. 2004) .................................................................. 14

*Hudson v. Hermann Pfauter GmbH,*
       117 F.R.D. 33 (N.D.N.Y. 1987) ............................................................. *passim*

*In re Rubber Chemicals Antitrust Litigation,*
       486 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................. *passim*

*In re Sealed Case,*
       825 F.2d 494 (D.C. Cir. 1987) .................................................................. 15

*Minpeco v. Conticommodity Services, Inc.,*
       116 F.R.D. 517 (S.D.N.Y. 1987) ............................................................... 15

*Richmark Corp. v. Timber Falling Consultants,*
       959 F.2d 1468 (9th Cir. 1992) ............................................................... *passim*

*SEC v. Minas de Artemisa,*
       150 F.2d 215 (9th Cir. 1945) ..................................................................... 12

*Societe Nationale Industrielle Aerospatiale v. United States District Court,*
       482 U.S. 522 (1987) ................................................................................... 13

*Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. De Equip. Medico,*
       2008 WL 81111 (S.D. Cal. 2008) ......................................................... 5, 14

*United States v. First Nat'l Bank of Chicago,*
       699 F.2d 341 (7th Cir. 1983) ..................................................................... 14

*United States v. Vetco, Inc.,*
       691 F.2d 1281 (9th Cir. 1981) ................................................................... 12

*Volkswagen v. Valdez,*
       909 S.W.2d 900 (Tex. 1995) ..................................................................... 5, 8

RUSS, AUGUST & KABAT

1

*Statutes* *Page*

2

Local Rule 37 ................................................................................................4

3

German Penal Code Section 206 .................................................................16

4

5

*Treatises* *Page*

6

Restatement of Foreign Relations Law (3d) Section 442 ............................4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

## I.    INTRODUCTION

Mattel asks that this Court order a non-party, Zapf, to violate the fundamental laws of Germany, a Hague signatory, in order to confirm information that it already has.  Zapf has complied with Mattel's vague and broadly worded discovery requests to the best of its ability, within the legitimate data privacy law constraints of German law.  Indeed, Mattel does not challenge Zapf's interpretation of German law, and simply states that the Court should order Zapf to violate the criminal laws of a sovereign state.

On November 1, 2010, this Court ordered Zapf to respond to Mattel's subpoena containing broad categories of documents relating to access to Mattel toy fair showrooms.  After contacting German authorities, Zapf searched several million e-mails and produced all documents permitted by German data privacy laws.  Mattel does not dispute this.  In preparation for its 30(b)(6) deposition, every single Zapf potentially relevant employee was questioned based on the deposition categories specified by Mattel.  Again, Mattel does not dispute this.  The document production and deposition of Zapf left, as far as can be discerned from Mattel's declaration and evidence-free motion, no specific pieces of information within Zapf's possession, custody, or control that Mattel does not already have.  Again, Mattel does not dispute this.

Mattel is urging this Court to order Zapf to (1) violate German law; (2) violate an explicit instruction of the Bavarian State Inspectorate for Data Protection directed to Zapf; and (3) force individuals beyond Zapf's control to submit to interviews dictated by Mattel.  Neither American law nor logic nor justice could warrant such an unjust result.  Even under the law cited by Mattel, the motion should be denied, because (1) Mattel has made no showing that the documents it claims to want are crucial to its case; (2) the production requested by Mattel is broad; (3) the documents at issue are in Germany; (4) Mattel has not even attempted to show that Hague Convention procedures are inadequate and (5)

1  Germany's constitutionally-mandated interest in privacy far outweighs the United
2  State's interest in the conduct of German companies at German toy fairs. Simply
3  put, Mattel cites no law suggesting that a Court may order a non-party to violate
4  the laws of a Hague Signatory in a truly private litigation. Mattel has articulated
5  no grounds for ordering Zapf to subject itself to criminal or civil sanctions in
6  Germany. Mattel's motion should therefore be denied.

7

## II.   FACTS

9      Zapf is not a party to this action. Zapf is a German toy company that is
10 based in Rödental, Germany, in the Free State of Bavaria. Zapf is publicly traded
11 in Germany and is listed on the Frankfurt stock exchange.

12     Zapf understands that the basis for Mattel serving subpoenas upon Zapf was
13 based on an accusation that a Zapf employee, Thomas Pfau, had accessed a Mattel
14 booth. Mr. Pfau was a prior high-ranking executive of Zapf. Mr. Pfau is no longer
15 employed by Zapf and has no relationship with Zapf.

16     Mattel describes Zapf's alleged conduct at pages 2-3 of its motion.
17 Although Mattel's characterization of Zapf's actions is deeply flawed, the
18 description appears to be complete on an empirical level. Zapf accessed Mattel
19 information (albeit not wrongfully and not likely trade secrets) in Europe on two
20 occasions.

21     Rather than proceed through Hague Convention procedures, Mattel
22 requested that the Court order MGA to have Zapf produce documents and a
23 30(b)(6) witness. Zapf was not party to any of these proceedings (which occurred
24 in October of 2010), and neither German privacy nor communication laws were
25 raised as an issue. The Court granted Mattel's motion on November 1, 2010.

26     Shortly after this Court's November 1 order was issued and presented to
27 Zapf, Zapf inquired of the German government whether it could comply in full
28 with Mattel's requests, and engaged American counsel. After extensive oral

RUSS, AUGUST & KABAT

2

RUSS, AUGUST & KABAT

communications with German authorities, the Bavarian Inspectorate for Data Protection informed Zapf that it could not search pre-2008 e-mails without the sender's consent, and that it must pseudonomize all e-mails produced (the pre-2008 issue was based on German communications statutes, and the pseudonomizing issue was based on German privacy statutes.)  Meyer Decl. Exhs. A-C.  This instruction from the German government, in addition to a translation and a declaration detailing Zapf's discussions, was promptly provided to Mattel on November 29, 2010.  *Id.* Exh. D.

In order to comply with the requests, Zapf then requested search terms from Mattel.  When those terms proved overly burdensome due to Zapf's technical limitations, the search terms were narrowed.  Mattel was informed of every step of this process, orally and in writing.  Meyer Decl. ¶¶ 7-10 and Exhs. E-G.  After a responsiveness review and a redaction of names pursuant to German law, Zapf produced documents and formal responses on December 22, 2010.  Meyer Decl. ¶ 11 and Exh. H.  Within the limits permitted by German privacy statutes, Zapf made every effort to comply.  On its own initiative, without any request from Mattel, Zapf cooperatively sought and received permission from Mr. Pfau to search all of his emails within Zapf's possession, custody, or control.  Responsive emails with Mr. Pfau's name unredacted were produced to Mattel.  Mr. Pfau's pre-2008 e-mails were searched, but no responsive documents were found.

In preparation for its 30(b)(6) deposition, set for December 30, 2010, Zapf interviewed every single potentially relevant Zapf employee regarding access to Mattel booths.  Meyer Decl. Exh. I.  In a further effort of voluntary cooperation, Zapf's 30(b)(6) witness, Ron Brawer, spoke directly with Thomas Pfau, even though Mr. Pfau was no longer with Zapf.  Zapf appeared for a full day deposition, the majority of which Mattel misused to reexamine Mr. Brawer regarding MGA documents, including many that he had been previously examined about in deposition.

3

1   Mattel's motion fails to attach Zapf's discovery responses or relevant

2   deposition questions.[1]  Mattel's motion lacks any supporting declarations.  Mattel's

3   motion fails to comply with Local Rule 37 or any of its helpful substance.

4

5   **III.   ARGUMENT**

6   Mattel, which itself has a major German subsidiary, does not dispute Zapf's

7   interpretation of German law.  Mattel does not dispute that its motion seeks to

8   cause Zapf to violate criminal and civil laws in Germany.  Furthermore, Mattel

9   fails to cite a single case where a non-party was ordered to produce documents in

10  violation of the laws of a Hague Signatory in a purely private case.  Much of the

11  case law cited by Mattel involves non-Hague signatories, such as China, and is

12  therefore inapposite.

13     **A.   The Cases Cited by Mattel Are Inapposite, and Mattel**

14         **Ignores Case Law Holding That the German Laws at Issue**

15         **Here Should Be Respected**

16  In an effort to disguise its lack of authority, Mattel spends much of its brief

17  analyzing the five-part test under Restatement of Foreign Relations Law (Third) §

18  442, adopted by the Ninth Circuit in *Richmark Corp. v. Timber Falling*

19  *Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992).  Mattel cites only two cases in

20  anything much more than a string cite.  A brief review of the facts of those cases,

21  against more apposite cases that deal directly with the German statutes at issue

22  here—ignored by Mattel—is illustrative before launching into the restatement

23  factors.

24  Mattel's primary authority, *Richmark*, concerned a Chinese company wholly

25  owned by the Chinese government.  Plaintiff obtained a default judgment against

26  the Chinese company.  The company was immune to collection efforts in China

27  and refused to submit to *any* discovery regarding non-Chinese assets.  The Court

28

RUSS, AUGUST & KABAT

---

[1] Those responses and questions are attached as Exhibits H and J to the Meyer Declaration.

1 found that the Chinese law was enacted primarily to protect Chinese companies

2 (particularly government-owned ones, like the *Richmark* defendant) from foreign

3 litigants.  The Court concluded that the defendant would be immune from suit if

4 US law did not apply.  Accordingly, the Court therefore held that US law should

5 apply under the restatement test.  *Id.* at 1476-79.  But here, in clear contrast, Zapf

6 is not government owned, and the law in question is part of Germany's

7 constitution, not a blocking statute aimed at US courts.

8      Mattel's only other cited authority, *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind.*

9 *Com. De Equip. Medico*, 2008 WL 81111 (S.D. Cal. 2008), is also inapposite.  In

10 *Synthes*, the court ordered jurisdictional discovery against a Brazilian company.

11 The court was asked to decide where and under which law the depositions of

12 Brazilian persons would take place.  Brazil, not a signatory to the Hague

13 convention, did not permit depositions in American cases in Brazil.  The Court

14 thus held that the jurisdictional depositions would have to take place in the US,

15 under American law.  *Id.* at *23-25.  Again, this has no relevance to the present

16 motion.

17      Contrary to Mattel's inapposite cases, American courts that have considered

18 German privacy laws under the restatement test adopted in *Richmark* have

19 accorded the German statutes considerable respect.  Unlike the purely procedural

20 laws in Brazil in *Synthes* and the blatant Chinese blocking statutes in *Richmark*,

21 German statute is a substantive statute based on the protection of individual

22 privacy rights, enshrined in both the German constitution and the European

23 Convention on Human Rights, and applicable to both internal German matters and

24 American litigants.

25      *Volkswagen v. Valdez*, 909 S.W.2d 900 (Tex. 1995), is factually very close

26 this case, and therefore provides strong persuasive authority.  In that case, the

27 plaintiff sued Volkswagen of North America and the German company

28 Volkswagen AG after a car crash.  The plaintiff sought Volkswagen AG's current

RUSS, AUGUST & KABAT

Russ, August & Kabat

internal telephone book.  Volkswagen AG objected based on the same German privacy laws at issue here.  The Texas Supreme Court, applying the same restatement test that controls here, held that production should not be ordered.  It noted, as is the case here, that the information, if not the documents themselves, could be obtained from other sources—so too here, where MGA's acts have been subject to extensive discovery.

After noting that Germany had a legitimate interest in privacy, and that production would violate German law, the Texas Supreme Court declined to order production.  The court commented that "that privacy rights under German law are 'equal in rank to the right of freedom of speech.'"  *Id.* at 902.

The Texas court explained, as this Court has already noted in this case, that the evidence being sought was cumulative, rather than necessary to resolve a real disputed issue.  The Texas Supreme Court further commented, "[t]he plaintiffs simply desire to have the telephone book produced so they might double check the information provided in previous requests."  *Id.* at 903.  Similarly, this Court has stated in this case that "the discovery sought at most bolsters discovery already obtained by Mattel."  Docket 9027 at 3.

After noting that Germany had a legitimate interest in privacy, and that production would violate German law, the Texas Supreme Court declined to order production.  The court commented that "that privacy rights under German law are 'equal in rank to the right of freedom of speech.'"  *Id.* at 902.

Likewise, in *In re Rubber Chemicals Antitrust Litigation,* 486 F. Supp. 2d 1078 (N.D. Cal. 2007),[2] the court denied a request to demand production of relevant communications between the European Commission and a defendant.  Although the German statute was not the same as the one here, the considerations were similar.  *See also Hudson v. Hermann Pfauter GmbH,* 117 F.R.D. 33 (N.D.N.Y. 1987) ("use of the Federal Rules could require HPG to violate the privacy rights of individuals protected by West German law.  Under all the circumstances, the use of Convention procedures seems desirable.").

---

[2] *Rubber,* which specifically addresses Germany's interests in its laws under the *Aerospatiale* line of cases, was cited by the Discovery Master in his Order No. 106, which allowed a German observer into the Zapf deposition [*see* Docket No. 9576].  Mattel's failure to cite or attempt to distinguish this case is thus inexplicable.

3201-01 110114 Opp MTC.doc

6

1   Although application of the Restatement factors supports Zapf, as discussed
2   below, the above simple analysis of the few published cases applying German
3   privacy law to federal discovery rules, none of which are cited by Mattel, weighs
4   against disclosure here.

6   **B.   The Restatement Factors Do Not Favor Ordering**
7   **Production from Zapf.**

8   Although a quick comparison of the cases cited by Mattel mandates a ruling
9   in favor of Zapf, all American courts have adopted a variant of the five-factor test
10  from the Restatement (Third) of Foreign Relations law.  But application of that test
11  also leads to a ruling in favor of Zapf.  Each factor is addressed below.

12  **1.   The Documents Are Not Critical to Any Claims, and**
13  **the Redacted Information Will Be of Little Use to**
14  **Mattel.**

15  The first factor under the restatement is the relevance of the documents
16  sought:  "Courts are less inclined to ignore a foreign state's concerns where the
17  outcome of litigation does not stand or fall on a discovery order, or where the
18  evidence sought is cumulative of existing evidence."  *In re Rubber Chemicals*
19  *Antitrust Litigation*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007) (denying motion
20  to compel where similar documents had been produced, and no showing was made
21  as to why the documents at issue in the motion were relevant).

22  Conspicuously absent from Mattel's motion is a description of how any
23  specific information withheld by Zapf (only names other than Mr. Pfau's have
24  been redacted or unanswered in deposition) might help Mattel's case.  Mattel, at
25  page 10 of its motion, argues that whether or not Zapf entered Mattel showrooms is
26  critical to its case against MGA.  But as in *Rubber,* Zapf has produced everything
27  that it has on that question, and has interviewed every potentially relevant
28  employee.  Other than potentially confirming things it already knows, it is not clear

Russ, August & Kabat

what, relevant or not, Mattel expects to learn if the Court grants Mattel's request. Mattel has failed to meet its burden to show how what it seeks specifically is needed for its case.

Mattel's fact summary supports Zapf here. Mattel's description of the facts, including names and dates gleaned from MGA production, appear to be complete (although Zapf disputes the characterization). At pages 2 and 3 of its motion, Mattel describes facts that it already knows as "directly relevant" to its case. That may or may not be the case, but those facts remain just that—already known to Mattel. Nowhere in the motion is any indication of "holes" in the story that it needs Zapf to fill.

As the Court noted in its November 1, 2010 order, "the discovery sought at most bolsters discovery already obtained by Mattel." Docket no. 9027 at 3." This is only logical. Zapf, for all of Mattel's protestations, is not a party to this case. Its conduct, except where information was conveyed to MGA, is not at issue here.

In any event, Zapf has searched for and produced documents, and has kept Mattel fully informed at all times. Although Zapf has been unwilling to violate German law, it has made every other effort to obey Mattel's subpoenas. It has searched millions of e-mails, conducted many interviews, produced requested documents, and provided an informed witness for an entire day of deposition.

Courts have generally refused to order production of marginally relevant documents when foreign laws are implicated. *See Volkswagen v. Valdez,* 909 S.W.2d 900 (Tex. 1995) (denying motion to compel where "[t]he plaintiffs simply desire to have the telephone book produced so they might double check the information provided in previous requests."). The Court here should follow the Courts in *Rubber* and *Volkswagen*. This factor weighs against ordering an unredacted production that would violate German criminal and civil laws.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

### 2.     The Document Requests Are Vague, Burdensome and Overbroad.

The second factor, the specificity of the requests, also weighs in favor of Zapf.  Mattel has requested 14 broad categories of documents from Zapf going back to 1992, more than a decade before Zapf had any relationship whatsoever with Isaac Larian or MGA.  As the Northern District of California has noted, "generalized searches for information whose disclosure is prohibited under foreign laws are discouraged."  *Rubber*, 486 F. Supp. 2d at 1083 (citing *Richmark*, 959 F.2d at 1475).

The categories of documents demanded by Mattel are broad and, especially when converted to e-mail searches, vaguely defined.  Indeed, when Zapf asked Mattel to convert the requests into search terms, Mattel demanded more than 250 terms to be searched, in combinations that were impossible due to Zapf's technical limitations.  When Zapf informed Mattel that it would be conducting somewhat narrower searches that were technologically feasible, and provided the search terms to Mattel, Mattel did not comment or object.  Meyer Decl. ¶¶ 7-10 and Exhs. E-G.  Even more interesting, Mattel claims that Zapf failed to produce the "M" Booth report from the 2008 Nuremberg toy fair.  But if it even exists at Zapf, that's Mattel's fault.  All of the search terms provided by Mattel that Zapf confirmed to Mattel contain the word "Mattel," which word is absent from the "M" Booth report.

Indeed, it is not even clear from the motion what Mattel wants if this motion is granted.  In addition to its other failings, Mattel's motion, like its requests, is extraordinarily vague.  By comparison, the request in *Volkswagen* sought a single, discrete phone book, and the motion to compel was still denied.

In addition, this section of Mattel's brief is factually inaccurate and misleading.  Mattel states that "as with the foreign entity in *Richmark*, Zapf has not objected to the 'burdensome nature of the discovery request.'"  Motion at 11.

RUSS, AUGUST & KABAT

That statement is factually incorrect.  Zapf formally objected to each document request as unduly burdensome.  Indeed, burden was the *first* objection made to each request, before the issue of German law.  Meyer Decl. ¶11 and Exh. H.  Inexplicably, Mattel falsely denied the existence of these objections and failed to attach them to its motion.  Second, Zapf's burden and technical problems were described regularly and in detail to Mattel's counsel.  By stating that Zapf has failed to raise a burdensome objection, Mattel is at best mischaracterizing the facts, and at worst deliberately misleading the Court.

Because Mattel's motion, document requests, and deposition topics are unspecific, vague, and burdensome, this factor thus weighs against Mattel's motion.

### 3. The Location of the Documents Weighs against Production.

The third factor under the restatement test is the location of the documents.  If the documents are abroad, this factor weighs against production.  Mattel admits that the documents are in Germany, and that this factor weighs against production.  Indeed, Mattel took extensive testimony on this issue from Zapf's witness, who testified that all email servers and document files were located in Germany.  Mattel makes much of the fact that this factor is not dispositive, but it cannot dispute that it favors Zapf.

### 4. Mattel Fails to Argue That Alternative Means Will Not Suffice, and Fails to Address the Hague Convention at All.

Mattel misses the point of the third restatement factor, efficacy of alternative means.  For Hague Convention signatories, this factor of the restatement test usually addresses whether proceeding under the Hague Convention would suffice.  In cases dealing with non-signatories, the bar appears to be substantially lower.

RUSS, AUGUST & KABAT

All of the cases cited by Mattel deal with non-Hague signatories,[3] which may explain Mattel's omission.   The cases that address the German privacy laws actually at issue here—omitted by Mattel—address the Hague Convention issues in detail.   As one court has noted, Mattel has the burden to oppose the use of Convention procedures and prove its supercilious claim to some incontestable American superiority:

> "This court believes that the burden should be placed on the party opposing the use of Convention procedures to demonstrate that those procedures would frustrate these interests.   Plaintiffs have not sustained that burden in the present case. . . .   To assume that the 'American' rules are superior to those procedures agreed upon by the signatories of the Hague Convention without first seeing how effective Convention procedures will be in practice would reflect the same parochial biases that the Convention was designed to overcome." *Hudson*, 117 F.R.D. at 38-39 (the *Hudson* case concerned the precise German law at issue here).

Although a party is not required to actually go through Hague Convention proceedings before seeking alternative relief, the efficacy of Hague Convention procedures must at least be raised.   Indeed, Mattel complains about Zapf's *ex parte* communications with the Bavarian State Inspectorate for Data Protection.   If Mattel had the proceedings progress through Convention procedures, the Inspectorate might have authorized a broader search or disclosure (though since this did not happen, Zapf cannot know).   At the very least, Mattel would have had a voice in the process, and would be able to confirm that Zapf had done everything it could have done with the Bavarian authorities.   In any event, absent some evidence indicating that Hague procedures would be unsuccessful here, it is

---

[3] Some of the cases deal with countries that have ratified the Hague Convention in the years since the relevant opinion was issues (e.g. Switzerland).  For the Court's reference, a list of Hague signatories, with relevant dates, is attached.  Meyer Decl. Exh. M.

11

Russ, August & Kabat

1    premature to order Zapf to violate German law.  Although American law allows, at

2    least in theory, discovery orders beyond those permitted by the Hague convention,

3    such orders are rarely, if ever, issued without first assessing what would happen if

4    Hague procedures would have been followed.

5        By failing to even *mention*, let alone analyze, Hague procedures, Mattel has

6    not met its burden on the third restatement factor.[4]  None of the cases cited in this

7    section by Mattel address Hague signatories.  *Richmark* concerned China, a non-

8    signatory.  *SEC v. Minas de Artemisa*, 150 F.2d 215, 219 (9th Cir. 1945) predates

9    the Hague convention or any equivalent procedures.  And *United States v. Vetco,*

10   *Inc.*, 691 F.2d 1281 (9th Cir. 1981) likewise concerned a country that was not a

11   Hague signatory at the time.  (Switzerland signed in 1994.)  Mattel apparently

12   would have the Court decide this motion as if the Hague Convention does not

13   exist.

14       To the extent that this factor is aimed at non-Hague methods of obtaining

15   information, Mattel as good as admits that other methods will suffice.  Mattel

16   states that the only alternative to ordering Zapf to produce unredacted documents

17   in violation of German law is to order MGA—a party—to produce documents.

18   This suggests that Mattel realizes that nonparty discovery is not the best way of

19   gathering the information that Mattel seeks.  Mattel apparently wants to know

20   whether MGA, through Zapf, has been engaged in some sort of conspiracy to spy

21   on it.  In efforts to look for such a conspiracy, Mattel presumably has deposed most

22   or all MGA employees and received millions of pages of documents from MGA

23   (based on the production numbers on MGA documents that Mattel used at the Zapf

24   deposition).  Zapf, for its part has conducted extensive interviews and searched all

25   of its post-2008 documents, and all of Thomas Pfau's pre-2008 e-mails, and all

26

27

28   [4] This is perhaps for timing reasons.  But no court has identified the trial schedule as a factor
     weighing in favor of ordering an entity to violate a sovereign nation's laws.

pre-2008 paper documents, though no relevant documents in the last two categories were found.  Meyer Decl. ¶ 8 and Exh E.

In either case, this factor weighs in favor of Zapf.  Mattel has failed to even discuss alternative procedures under the Hague Convention, and has admitted that alternative means will suffice.

### 5.   German Privacy Laws Implicate Important German Interests, and the Redacted Information Implicates No Important US Policies.

The final factor is the balancing of American and German interests.  Mattel impudently dismisses German interests in personal privacy as of no moment, and states that the discovery it seeks is of paramount interest, even though it cannot articulate what its need is or what disputed material fact such unspecific further discovery may resolve.  But Germany's interest in privacy of individuals was noted as early as the original *Aerospatiale* decision, even though no German laws were at issue in that case.[5]   Likewise, published cases addressing this statute have specifically noted that it addresses an important German interest.  *See Volkswagen*, 909 S.W.2d at 902 ("privacy rights under German law are 'equal in rank to the right of freedom of speech'"); *Hudson*, 117 F.R.D. at 38 (noting the constitutional basis of German privacy laws).  The very fact that Germany is a Hague signatory is also relevant to this balancing test of comity:  "the fact that … Germany has consented to the Hague Convention procedures nonetheless weights heavily in favor of the use of those procedures in the first instance."  *Hudson*, 117 F.R.D. at 38.

In truly private litigation (in contrast to antitrust, tax, criminal, or terrorism cases), this type of foreign governmental interest has almost universally

---

[5] *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 558 (1987) ("In the Federal Republic of Germany, for example, there is a constitutional principle of proportionality, pursuant to which a judge must protect personal privacy, commercial property, and business secrets.  Interference with these rights is proper only if 'necessary to protect other persons' rights in the course of civil litigation.'") (Blackmun, J., dissenting).

RUSS, AUGUST & KABAT

outweighed a private American litigant's interests.  Zapf is aware of no cases where a Court has ordered violation of a Hague signatory's laws when the subject matter of the case was a truly private matter.[6]  All the more so here, where the alleged "bad" acts of Zapf and MGA *occurred on German soil* (at the Nuremberg Toy Fair).  The United States' interest in policing conduct at toy fairs in Bavaria is not particularly strong.

The foreign laws in the cases cited by Mattel are instructive here.  In *Richmark*, the Chinese law was a true "blocking" statute that made its companies immune to collection efforts.  American courts need not respect China's interest in preventing collection against Chinese companies.  Likewise, American courts have valid reasons for conducting depositions, as in *Synthes*.  But the balance of national interests in the context of European privacy laws is far more complex, and much more favorable to Zapf.

Simply put, no case cited by Mattel has overruled personal privacy statutes of Hague signatories in the context of private litigation.  Mattel fails to cite a single case even concerning a Hague signatory.  Under *Hudson*, *Volkswagen*, and *Rubber,* the balance of national interests overwhelmingly favors Zapf.

One further note is necessary on this issue.  The Bavarian State Inspectorate for Data Protection is aware of the proceedings in this case, and has expressed an interest in making itself heard to this Court on behalf of the Federal Republic of Germany.  Zapf has been informed that, should the Court indicate that it will consider such a submission, the Bavarian State Inspectorate will, within one week, submit an amicus brief.  Zapf is cognizant that the Court's time is precious in light of the scale of the underlying case.  But in the interests of international comity (as discussed in this Court's order of December 30, 2010 (Docket No. 9576)), Zapf

Russ, August & Kabat

---

[6] *Dexia Credit Local v. Rogan,* 231 F.R.D. 538, 542 (N.D. Ill. 2004), cited by Mattel on this point, concerned Belize, which is not a Hague signatory.  Likewise, *United States v. First Nat'l Bank of Chicago*, 699 F.2d 341, 345 (7th Cir. 1983) concerned a vital US interest (tax collection) and concerned a country that was not a Hague signatory at the time (Greece signed in 2005.).

14

RUSS, AUGUST & KABAT

asks that the Court indicate that it will consider the submission from the Federal Republic of Germany.

### 6.   Zapf's Status as a Non-Party Is Relevant.

Although not dispositive, the fact that Zapf is not a party to this action *is* relevant.   There is a degree of deference due to third parties in international discovery.  *See, e.g.*, *In re Sealed Case,* 825 F.2d 494, 498 (D.C. Cir. 1987) (*"the bank, against whom the order is directed, is not itself the focus of the criminal investigation in this case but is a third party that has not been accused of any wrongdoing"*); *Minpeco v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 527 (S.D.N.Y. 1987) (*"[W]here the party sought to be compelled to produce documents in violation of foreign secrecy laws is merely a neutral source of information, and not itself a target of a criminal investigation or an adverse party in litigation, some courts have found the hardship to weigh more heavily in the balance."*).

Zapf is a non-party.  Although this status is not dispositive of the motion, Mattel is wrong to ascribe it zero weight.  Mattel struggles, in a footnote, to characterize as inapposite 3 cases that ascribe this issue as relevant.  Zapf's status as a non-party is yet another, further factor against ordering it to violate German law.

### 7.   Zapf Cannot Yet Comment on Likelihood of Compliance

If the Court orders production, Zapf will be caught "between the Scylla of contempt sanctions and the Charybdis of possible criminal prosecution." *Richmark*, 959 F.2d at 1477.  If the Court is at all inclined to order Zapf to violate German law, Zapf requests at least 30 days to comply, so it may determine the exact consequences of violating German law along the lines requested by the Court.  As discussed above, criminal penalties for violation of German privacy laws can include imprisonment.  Once armed with that information, Zapf will be in

RUSS, AUGUST & KABAT

1    a position to make an informed decision as to which government's laws to violate.

2    Of course, for the reasons discussed in detail above, Zapf urges the Court not to

3    place it in such an impossible position.

4        It must be noted, however, that Mattel argues, without support, that the

5    potential penalties here are "civil, rather than criminal." Motion at 14. As noted in

6    the letter from the German Government (Meyer Decl. ¶ 4 and Exh. C), "breaches

7    of data protection regulations are subject to sanctions in Germany . . . a fine of up

8    to 300,000 Euros." Nothing about this letter, however, indicates that monetary

9    fines are the *sole* potential penalty for violation of German law, and the letter does

10   not clarify whether the fine would be criminal or civil. In any event, the German

11   Penal Code specifically bars such violations, and subjects violators to criminal

12   penalty, including imprisonment of up to two years. German Penal Code §206

13   (Meyer Decl. ¶ 17 and Exh. L). Mattel's argument that Zapf's potential penalties

14   are merely civil is incorrect.

15           **8.**    **Zapf is not estopped from arguing privacy.**

16       Mattel argues, based on a single statement on another issue by Zapf's

17   attorney, that it is estopped from arguing that it must comply with German law.

18   Nothing could be further from the truth. From day one, Zapf has consistently and

19   repeatedly stated that it will not and cannot produce information in violation of

20   German law, before, during, and after the deposition (by instructing not to answer

21   questions seeking private information in violation of German law) and document

22   production (by redacting private information required by German law). In any

23   event, Zapf cannot unilaterally agree to violate German law.

24       Zapf has only conceded that procedurally, American rules govern the

25   conduct of the deposition. The context of Zapf's quote related to the presence of a

26   German observer at the Zapf deposition. Zapf requested that such an observer be

27   permitted to attend, but did not deny that American law governed the presence of

28   the observer at an American deposition on American soil. At no point in any

1  motion did Zapf concede, expressly or impliedly, that German law did not govern

2  the release of information coming from Germany.

3  **C.     The Deposition Should Not Be Resumed Because the**

4  **Witness Was Fully Prepared**

5  Mattel finally asks the Court to order Zapf to designate another 30(b)(6) and

6  resume the deposition.  Mattel makes two arguments on this issue.  First, Mattel

7  objects to a grand total of six instructions not to answer, all of which were based on

8  German data privacy laws.  Since that law is discussed in detail above, Zapf need

9  not elaborate further.  The instructions were completely proper based on the

10  discussion above.

11  As Mattel is aware, every single Zapf potentially relevant employee was

12  interviewed regarding potential access to Mattel showrooms, as was Thomas

13  Pfau—voluntarily by Zapf—whose name apparently instigated Zapf's involvement

14  in this case.  Mattel is upset that Zapf did not go even further, and track down and

15  interview every former employee.[7]  Even for a party, Mattel cites no laws

16  suggesting that Zapf's obligations go that far.  Zapf has examined all information

17  within its possession custody and control, the extent to which it was required.  The

18  Court should not order it to scour Germany for more witnesses that are not within

19  its control, which include the alleged authors of the "M" Booth report.  If Mattel

20  wishes to interview the former employees who prepared the "M" Booth report (it

21  has their names),[8] it can do that on its own.

22  **IV.   CONCLUSION**

23  Zapf is a German company subject to German law.  Mattel is asking the

24  Court to order Zapf to violate fundamental German law and produce evidence that

---

[7] Mr. Brawer testified at deposition that the creators of the "M Booth" report were no longer affiliated with Zapf or MGA or any party to this action.  Meyer Decl. Exh. K.

[8] Because Zapf knew who had prepared the "M" Booth report, and knew that they were no longer employed by Zapf or MGA or other party, there was little point in asking current employees about the report, especially when the more general questions about access to Mattel booths would cover any such information, if it existed.

RUSS, AUGUST & KABAT

1    is, at best, of marginal relevance to a purely private dispute.  To Zapf's knowledge,

2    no court has ever ordered such a production in analogous situations.  The Court

3    should follow the examples of the *Volkswagen* and *Hudson* courts, and deny the

4    motion.

5    DATED:  January 14, 2011              RUSS, AUGUST & KABAT
                                          Larry C. Russ
6                                          Bruce D. Kuyper
                                          Nathan D. Meyer
7

8                                          By:  /s/ *Nathan D. Meyer*
9                                              Attorneys for Non-Party
                                              Zapf Creation AG
10

NON-PARTY ZAPF CREATION AG OPPOSITION TO MOTION TO COMPEL

## **CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on January 18, 2011 with a copy of this document titled **NON-PARTY ZAPF CREATION AG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL** via the Court's CM/ECF system per Local Rule 5-3.3. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

In addition, counsel for Mattel and MGA were served via e-mail on Friday, January 14, 2011.

Dated:  January 18, 2011                    /s/ *Nathan D. Meyer*
                                                          Nathan D. Meyer

3201-01 Master POS - Email.doc