UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

- - - - - - - -

# CERTIFIED TRANSCRIPT

| | |
|---|---|
| MATTEL, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| MGA ENTERTAINMENT, INC., et al., | ) No. CV 04-9049-DOC (RNBx) |
| | )          Volume 3 of 3 |
| | ) |
| Defendants. | ) |
| _____ | ) |


REPORTER'S DAILY TRANSCRIPT OF REDACTED
UNSEALED PROCEEDINGS JURY TRIAL
SANTA ANA, CALIFORNIA
THURSDAY, JANUARY 13, 2011

Denise Paddock, CSR 10199, CMRS, RMR, CRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
transcripts@ocrecord.com www.ocrecord.com
011311 DCCD CR 9D CARTER CIVIL JURY TRIAL
PM V3 REDACTED UNSEALED PACER 01/13/2011

**APPEARANCES OF COUNSEL:**

FOR PLAINTIFF MATTEL, INC., ET AL.:

      QUINN EMANUEL URQUHART & SULLIVAN LLP
      BY: JOHN QUINN
          WILLIAM PRICE
          MICHAEL T ZELLER
          Attorneys at Law
      865 S Figueroa Street, 10th Floor
      Los Angeles, CA 90017-2543
      213-443-3000

FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

      ORRICK HERRINGTON & SUTCLIFFE LLP
      BY: THOMAS S McCONVILLE
          Attorney at Law
      4 Park Plaza, Suite 1600
      Irvine, CA 92614
      949-567-6700

      - AND -

      ORRICK HERRINGTON & SUTCLIFFE LLP
      BY: ANNETTE L HURST
          Attorney at Law
      405 Howard Street
      San Francisco, CA 94105
      415-773-5700

      KELLER RACKAUCKAS LLP
      BY:  JENNIFER L KELLER
          Attorney at Law
      18500 Von Karman Avenue, Suite 560
      Irvine, CA 92612
      949-476-8700

UNITED STATES DISTRICT COURT

**APPEARANCES OF COUNSEL (Continued):**


FOR CARLOS GUSTAVO MACHADO GOMEZ:

        LAW OFFICES OF MARK E OVERLAND
        BY: Mark E Overland
            Attorney at Law
        100 Wilshire Boulevard, Suite 950
        Santa Monica, CA 90401
        310-459-2830

        -AND-

        SCHEPER KIM AND HARRIS LLP
        BY: ALEXANDER H COTE
            Attorney at Law
        601 West Fifth Street, 12th Floor
        Los Angeles, CA 90071-2025
        213-613-4655

        ALSO PRESENT:

        MGA ENTERTAINMENT, INC.
        BY: JEANINE PISONI
            Attorney at Law
        16360 Roscoe Boulevard, Suite 105
        Van Nuys, California 91406


ALSO PRESENT:

        ROBERT ECKERT, Mattel CEO

        ISAAC LARIAN, MGA CEO

        KEN KOTARSKI, Mattel Technical Operator

        MIKE STOVALL, MGA Technical Operator

```
 1              SANTA ANA, CALIFORNIA; THURSDAY, JANUARY 13, 2011

 2                           Volume 3 of 3

 3                           P.M. SESSION

 4              (Recess taken.)

18:09  5        (Open court - jury not present.)

 6              THE COURT:  We're back on the record.

 7              All counsel are present.

 8              There has been a stipulation concerning the

 9         alternate, Amanda Nicole Hinton, with the understanding that

18:09 10       regardless of what the court decides as to Jurors No. 1

11         and 2, sitting as regular jurors, that there will be a

12         stipulation of bringing six jurors back.  We're going to try

13         to do that tomorrow morning.  We're going to try to call

14         tonight.  And we are going to have one peremptory per side;

18:09 15       is that correct?  No stipulation as to 1 and 2 on the sitting

16         jury, but a stipulation as to Ms. Hinton; is that correct?

17              MR. QUINN:  That's correct, Your Honor.

18              MS. KELLER:  Excuse me.  So the court is going to

19         do this tomorrow instead of Tuesday?

18:10 20         THE COURT:  We can try.

21              (Open court - jury present.)

22              THE COURT:  I think it's better for you so you

23         don't have this waiting around with all these jurors coming

24         in.

18:10 25         I think you should have a seat.  Everything is
```

| | |
|---|---|
| 1 | going to be okay.  This is all good news. |
| 2 | Listen, out of your presence, all of us want you to |
| 3 | take the MCATs, okay, so I would like Mr. Quinn to stand on |
| 4 | behalf of Mattel, Ms. Keller on behalf of MGA, Mr. Overland |
| 18:10 5 | on behalf of Mr. Machado, and they have something to say to |
| 6 | you. |
| 7 | Mr. Quinn. |
| 8 | MR. QUINN:  Good luck. |
| 9 | Do a great job.  Thank you for being here today. |
| 18:10 10 | THE COURT:  Just tell her. |
| 11 | MS. KELLER:  Ace it. |
| 12 | THE COURT:  And Mr. Overland. |
| 13 | MR. OVERLAND:  I'm sorry you had to go through |
| 14 | this. |
| 18:10 15 | THE COURT:  And so all of them are stipulating to |
| 16 | excuse you. |
| 17 | We want you to go take the MCATs.  We want you to |
| 18 | have a great future. |
| 19 | Stipulated, Mr. Quinn? |
| 18:11 20 | MR. QUINN:  Yes, Your Honor. |
| 21 | THE COURT:  Ms. Keller? |
| 22 | MS. KELLER:  Yes. |
| 23 | THE COURT:  And Mr. Overland? |
| 24 | MR. OVERLAND:  Yes. |
| 18:11 25 | THE COURT:  Go with our best wishes and thank you |

         1    very much.

         2           PROSPECTIVE ALTERNATE JUROR NO. 1:  Thank you.

         3           THE COURT:  Let's get the next gentleman back,

         4    Juror No. 2.

18:11    5           And this is Mr. Fernandez.

         6           Is Mr. Fernandez the gentleman that we talked about

         7    or is that the alternate?

         8           I think I talked to Mr. Fernandez, what would you

         9    do if you got a job, a different one?

18:11   10           Well, Mr. Fernandez, if you would like to come in

        11    for a second and have a seat, Kathy, who is the clerk,

        12    brought some information to our attention and I would like

        13    you to tell us what occurred.

        14           PROSPECTIVE ALTERNATE JUROR NO. 2:  Well, I

18:11   15    originally thought it was going to be just me showing up

        16    every Tuesday, which I wouldn't have a problem.

        17           THE COURT:  You thought you'd just be in court

        18    every Tuesday?

        19           PROSPECTIVE ALTERNATE JUROR NO. 2:  Right.

18:12   20           THE COURT:  Okay.

        21           PROSPECTIVE JUROR NO. 2:  Right; but -- you said

        22    something about from Tuesday to Friday?

        23           THE COURT:  Yes, every week.

        24           PROSPECTIVE ALTERNATE JUROR NO. 2:  That's just --

18:12   25    my employer doesn't pay for jury duty, so that's really going

```
 1    to set me back financially.
 2             THE COURT:  Your employer does not pay for jury
 3    duty?
 4             PROSPECTIVE ALTERNATE JUROR NO. 2:  That's correct;
 5    they don't pay for it.
 6             THE COURT:  And you have no other source of income?
 7             PROSPECTIVE ALTERNATE JUROR NO. 2:  No, sir.
 8             THE COURT:  Mr. Quinn, if you have questions,
 9    please, sir.
10             MR. QUINN:  No, I don't, Your Honor.
11             THE COURT:  Mr. Overland, Ms. Keller, if you have
12    questions, please?
13             MS. KELLER:  No, Your Honor.
14             THE COURT:  Mr. Overland?
15             MR. OVERLAND:  No, Your Honor.
16             THE COURT:  This appears to be a financial
17    hardship.
18             And do you have a wife?
19             PROSPECTIVE ALTERNATE JUROR NO. 2:  No.
20             THE COURT:  Children?
21             PROSPECTIVE ALTERNATE JUROR NO. 2:  No, sir.
22             I have a girlfriend, which is more money.
23             (Laughter.)
24             THE COURT:  Sole means of livelihood, no other
25    means to support yourself?
```

 1          PROSPECTIVE ALTERNATE JUROR NO. 2:  No.

 2          I mean, I rent an apartment and I have bills to

 3   pay, car payment and stuff like that.

 4          THE COURT:  I'm going to thank and excuse you

18:12  5   because of financial hardship.

 6          PROSPECTIVE ALTERNATE JUROR NO. 2:  Yeah.

 7          THE COURT:  We never intended to have people sit

 8   who literally couldn't sit out of the jury pool we tried to

 9   get.  We sent out over 3,500 subpenas.  Apparently you didn't

18:13 10   understand, and so under those circumstances I think it's

 11   good legal cause to excuse you, sir.

 12          Thank you very much.

 13          PROSPECTIVE ALTERNATE JUROR NO. 2:  Thank you, sir.

 14          THE COURT:  Okay.  All right.

18:13 15   Thank you, sir.

 16          And if you would come in, you were Juror No. 1,

 17   Mr. Khameneyan?

 18          JUROR NO. 1:  Khameneyan.

 19          THE COURT:  Thank you very much.

18:13 20   Why don't you have a seat.

 21          You tried to talk to Kathy, and you said you wanted

 22   to talk to the court.  And in having a discussion with you, I

 23   need to put everything on the record.

 24          So what did you want to talk to me about, sir?

18:14 25          JUROR NO. 1:  Sir, I want to explain if I am going

1    to be part of jury and for four days a week, 100 percent I am

2    going to lose my job.

3              THE COURT:  And why is that?

4              JUROR NO. 1:  Because my employer can -- is -- is

18:14 5    not so -- how can I explain? -- angry with all these four

6    months being away from job.

7              THE COURT:  Who is your employer?

8              JUROR NO. 1:  Ritz Interior.  It is Ritz Interior,

9    the company's name, and Hassani is a friend of me.  I know

18:14 10    these people from my country, from ex-country, and my wife

11    lost a job.  I have two daughters, one in the university and

12    the another one is high school.

13              THE COURT:  Are you the sole support for your

14    family?

18:15 15              JUROR NO. 1:  Right; yes.

16              My wife lost job two years ago.  She is -- she was

17    self-employed, but after this problem, financial problem, she

18    lost a lot of the customers.  Now we are staying just on

19    my -- we are -- on my income that I have.

18:15 20              THE COURT:  I see.

21              JUROR NO. 1:  And this is only -- I try to be

22    honest, but I -- if I am calculating everything, if I am

23    going to lose this job I am done.  I have no source to -- to

24    finance me to get any money from it.

18:15 25              THE COURT:  Did you know that this trial was going

```
 1    to be four months?
 2              JUROR NO. 1:  Some, you -- you -- I hear it is for
 3    four months -- before, no, I didn't know that.
 4              THE COURT:  Did you read that jury letter that said
18:15 5    it was for four months that we sent out?
 6              JUROR NO. 1:  Sir, I told court I -- I can speak, I
 7    can understand, okay, but I am not good at reading and
 8    writing, because I learn just English from -- how can I? --
 9    mouth to mouth.  That's it.
18:16 10             THE COURT:  Just a moment.  Can I see the
 11   gentleman's jury questionnaire, Counsel?  Can I take a look
 12   at it.
 13              I think I've got it right here.
 14              Counsel, can you turn to the gentleman's
18:16 15   questionnaire.
 16              Yeah.  Do you have a copy?
 17              Let me look back, because I think that you're the
 18   juror on question No. -- let me begin with Question No. --
 19   first of all, whatever language barrier you have is not a
18:16 20   reason for an excuse.  I know you speak Farsi.
 21              JUROR NO. 1:  Yes.
 22              THE COURT:  By the same token, you're a
 23   United States citizen and you've communicated very well with
 24   counsel.
18:16 25              I don't find that that would be the reason.  If
```

1    anything, it would have to be financial hardship.

2            JUROR NO. 1:  Yeah, I have financial --

3            THE COURT:  But I want to go over this

4    questionnaire, because you noted on Question No. 13, how

18:17  5    often do to you take a position of leadership?, and you

6    stated "did not understand."

7            JUROR NO. 1:  I didn't understand the question.

8            THE COURT:  Okay.  And then on Question No. 19,

9    have you or someone else close to you ever signed a

18:17 10    nonsolicitation or noncompete agreement?, and you stated "I

11    didn't understand the question."

12            JUROR NO. 1:  Yeah, this is my problem.

13            THE COURT:  And on Question No. 2, have you or

14    someone close to you ever signed a confidentiality or

18:17 15    nondisclosure agreement?, "I didn't understand the question."

16            On Question No. 22, what is your reaction, if any,

17    to the statement, "an employee can use proprietary or

18    confidential information that was used at a previous job?"

19            You stated "did not understand."

18:17 20            On Question No. 36, would you prejudice a case even

21    in the slightest way if one or more of the parties, attorneys

22    or witnesses come from a particular national, racial or

23    religious group or have a lifestyle different than your own?

24            You stated "did not understand."

18:18 25            No. 39, describe any ethical, religious, political

Case 2:04-cv-09049-DOC-RNB   Document 9661   Filed 01/20/11   Page 12 of 48   Page ID #:288210
CV 04-9049 DOC - 01/13/2011 Volume 3 of 3

12

```
 1    or other beliefs that may prevent you from serving as a

 2    juror.

 3              "Did not understand."

 4              Once again, let me be certain, you list a

 5    24-year-old female as your daughter, and she's a student?

 6              JUROR NO. 1:  Yes.

 7              THE COURT:  Where?

 8              JUROR NO. 1:  Pomona.

 9              THE COURT:  Pomona?

10              JUROR NO. 1:  Cal State Pomona.

11              THE COURT:  Congratulations.

12              And you have an 18-year-old who is a student where?

13              JUROR NO. 1:  University High School of Irvine.

14              THE COURT:  Is she going to college next year?

15              JUROR NO. 1:  She is going to be finish school this

16    year in three weeks, and she is going to be starting in

17    college or something.  She is looking for something specific.

18              THE COURT:  Does your wife work?

19              JUROR NO. 1:  Not anymore.

20              THE COURT:  And you are a supervisors at

21    Ritz Interiors.

22              JUROR NO. 1:  Ritz Interiors, Hassani.

23              THE COURT:  What is Ritz Interiors?

24              JUROR NO. 1:  Ritz Interiors is actually flooring

25    and remodeling company.
```

|   |   |
|---|---|
| 1 | THE COURT:  Okay. |
| 2 | JUROR NO. 1:  It's a very small one with five, six |
| 3 | employees. |
| 4 | THE COURT:  Six employees. |
| 18:19  5 | Mr. Quinn, do you have questions? |
| 6 | MR. QUINN:  No, I don't. |
| 7 | THE COURT:  Ms. Keller, do you have questions? |
| 8 | MS. KELLER:  No questions, Your Honor. |
| 9 | THE COURT:  Mr. Overland, do you. |
| 18:19 10 | MR. OVERLAND:  No, Your Honor. |
| 11 | THE COURT:  Would you go back in the jury room for |
| 12 | just a moment. |
| 13 | Let me speak to counsel for just a moment. |
| 14 | (Open court - jury not present.) |
| 18:19 15 | THE COURT:  Well, counsel, your thoughts. |
| 16 | MR. QUINN:  Your Honor, he did say he thought he |
| 17 | would lose his job. |
| 18 | THE COURT:  Yeah, he seems to be in the same |
| 19 | position as the truck driver I just excused. |
| 18:20 20 | Ms. Keller. |
| 21 | MS. KELLER:  May I have a moment. |
| 22 | (Discussion held off the record.) |
| 23 | MS. KELLER:  We'll submit it, Your Honor. |
| 24 | THE COURT:  Mr. Overland. |
| 18:20 25 | MR. OVERLAND:  I think he's like the truck driver. |

UNITED STATES DISTRICT COURT

```
 1              THE COURT:  Pardon me?
 2              MR. OVERLAND:  I think he's like the truck driver.
 3              THE COURT:  I do too.  I think it's a financial
 4   hardship.  I think he answered in good faith.  It's apparent
 5   to the court that he didn't understand many of the questions.
 6              The jury letter was clear.
 7              I'm, of course, and I want to state is bluntly,
 8   concerned, because of the first trial, and I think you know
 9   Mr. Larian, you're in a difficult position in a sense that
10   this is someone of Iranian heritage, I believe, and I think
11   there should be a good cross-section, but I think by the same
12   token I don't think I should be selecting a jury because that
13   juror is of Iranian heritage.  So by that I mean I think they
14   should all be treated equally and I think this is a financial
15   hardship under the circumstances and this would deprive this
16   gentleman of his livelihood, and I'm going to find cause and
17   I'm going to bring this person back in because of financial
18   hardship.
19              (Open court - jury present.)
20              THE COURT:  Thank you very much, sir.
21              If you would have a seat for just a moment.
22              Out of your presence the parties would like to
23   thank you.
24              I'm going to find that there is cause because of
25   financial hardship.  You are the sole support of your family.
```

18:21

18:21

18:22

18:22

18:22

 1   Apparently you didn't realize the circumstances that would

 2   incur during the four-month trial.

 3          You've answered your questionnaire numerous

 4   occasions stating "I do not understand," so therefore I

 5   accept your statement that when you read the jury letter you

 6   really didn't understand it was for four months, that

 7   apparently your wife doesn't work, you've got one child in

 8   college already and hopefully another.

 9          Well, hopefully independent, but maybe going on to

10   school, so under the circumstances I find good legal cause.

11          JUROR NO. 1:  The problem is with us, with Iranian,

12   this problem, the kids are more independent, and they never

13   be independent until 25 to 26.

14          (Laughter.)

15          JUROR NO. 1:  Most of the time they hang on us.

16   It's just a problem.

17          THE COURT:  Okay.

18          JUROR NO. 1:  And I tried to push them to get jobs,

19   but they -- they couldn't.  The first one is very

20   hard-working at the college too, in the university, to finish

21   it, but I am so sorry.  I like to be, but I am so sorry.

22          THE COURT:  And once again, is there any chance

23   your employer will pay you for this period of time?

24          JUROR NO. 1:  No, sir.  Because the days I take off

25   I don't pay.

|  |  |
|---|---|
| 1 | THE COURT:  You don't get paid? |
| 2 | JUROR NO. 1:  No. |
| 3 | THE COURT:  Okay.  All right. |
| 4 | I'm going to find financial hardship, sir. |
| 18:22 5 | I want to thank you.  You are excused from these |
| 6 | proceedings. |
| 7 | JUROR NO. 1:  Thank you very much. |
| 8 | THE COURT:  Thank you very much. |
| 9 | (Open court - jury not present.) |
| 18:22 10 | THE COURT:  All right. |
| 11 | Kathy, if you would excuse the gentleman and come |
| 12 | back in. |
| 13 | THE CLERK:  Sure. |
| 14 | THE COURT:  We've got six jurors that have come |
| 18:23 15 | back.  I think you called to my attention that the sixth |
| 16 | juror has a planned vacation, a paid vacation, January 19. |
| 17 | JURY CONSULTANT:  19th through 22, in my |
| 18 | recollection. |
| 19 | THE COURT:  That's absolutely impossible, because |
| 18:23 20 | we're proceeding on those dates, but we need to have that |
| 21 | juror come back in regardless. |
| 22 | Kathy, I'm going to ask you to call all six jurors |
| 23 | tonight and see if they can join us tomorrow. |
| 24 | THE CLERK:  What time? |
| 18:23 25 | THE COURT:  At 8:30. |

UNITED STATES DISTRICT COURT

```
 1            THE CLERK:  We have an 8:30 calendar.

 2            (Discussion held off the record.)

 3            THE COURT:  Okay.  Kathy is going to start to call.

 4       We're going to see if we can get these six

 5  alternates in tomorrow morning at 8:00, because otherwise if

 6  we wait until Tuesday -- which we may have to do by the

 7  way -- then you've got a jury in the hallway, press, people

 8  coming in to watch and you're going through the selection

 9  process, you're not going to be able to focus on your opening

10  statements.

11            So let's see throughout the evening if we can get

12  them in tomorrow at 8:00.

13            Okay.  Now, that would leave if we are going to get

14  an acceptable jury, one peremptory per side, and I don't know

15  about Ms. Pham.

16            Is that acceptable, Mr. Quinn?

17            MR. QUINN:  Yes, Your Honor.

18            THE COURT:  Ms. Keller?

19            MS. KELLER:  Yes.

20            THE COURT:  And Mr. Overland?

21            MR. OVERLAND:  Yes.

22            THE COURT:  One peremptory per side and that will

23  leave us three alternates and maybe even a fourth, so let's

24  see if we can maybe get a fourth.

25            Now, let Kathy make those calls for a few moments
```

| | |
|---|---|
| 1 | and hopefully they've just gotten home. |
| 2 | (Laughter.) |
| 3 | (Open court - jury not present.) |
| 4 | THE COURT:  All right.  We're on the record. |
| 18:27 5 | Counsel have had an informal meeting and the |
| 6 | request of counsel of the court is that they're in the best |
| 7 | light of the -- in front of the jury is as follows: |
| 8 | Ms. Keller. |
| 9 | MS. KELLER:  Yes, Your Honor. |
| 18:27 10 | All counsel agree that we would ask the court to |
| 11 | inform the jurors that counsel have stipulated to the young |
| 12 | lady, Ms. Hinton, being excused who is taking the MCAT, and |
| 13 | that the court inform the jurors that the other two were |
| 14 | excused by the court. |
| 18:28 15 | THE COURT:  By the court. |
| 16 | MS. KELLER:  After inquiry. |
| 17 | THE COURT:  For good legal reason and cause after |
| 18 | the jury left. |
| 19 | MS. KELLER:  Yes, Your Honor. |
| 18:28 20 | THE COURT:  And also probably to inform them that, |
| 21 | if we can, that the alternates that are now seated were |
| 22 | alternates selected on either Friday morning or Tuesday |
| 23 | morning, depending on whether we can get them back, so they |
| 24 | know why three strangers have joined them. |
| 18:28 25 | Acceptable? |

1          MS. KELLER:  Yes, Your Honor.

2          MR. QUINN:  Yes.

3          THE COURT:  Let's do this, let's make awfully

4     certain, then, that we get all of these six jurors in, and

18:28  5     we're going to wait and contact each one of them this evening

6     otherwise we won't get started literally on Tuesday until

7     10:00 or 11:00, which isn't acceptable.

8          MS. KELLER:  Your Honor, there was one other

9     housekeeping matter we wanted to ask the court about, and I

18:28 10     know the court may not wish to get involved, but out of an

11     abundance of caution, because it's Your Honor's courtroom, we

12     want to keep the court apprised of everything.

13          We were planning to have a three-person focus group

14     sit in the courtroom and hear the proceedings.

18:29 15          They would be accompanied by somebody from

16     Trial Partners.  They would not have any contact with the

17     jurors.

18          THE COURT:  A three-person focus group?

19          MS. KELLER:  Yes.

18:29 20          THE COURT:  For your side?

21          MS. KELLER:  Yes, Your Honor.

22          THE COURT:  Does the other side have a three-person

23     focus group?

24          MS. KELLER:  You know, when we e-mailed Mr. Quinn

18:29 25     it didn't sound as if they did, but I never really pinned it

Case 2:04-cv-09049-DOC-RNB   Document 9661   Filed 01/20/11   Page 20 of 48   Page ID #:288218
CV 04-9049 DOC - 01/13/2011   Volume 3 of 3

20

          1    down with them.

          2            THE COURT:  Could you share the information with

          3    the other side?

          4            (Laughter.)

18:29     5            THE COURT:  I'm just joking.

          6            MR. QUINN:  I was giving my question, Your Honor.

          7            THE COURT:  Well --

          8            MR. QUINN:  We don't have a focus group,

          9    Your Honor.

18:29    10            THE COURT:  Any objection, Mr. Quinn?

         11            MR. QUINN:  No.

         12            MS. KELLER:  Okay.  We just wanted to let the court

         13    know in case the court wondered who are these three people.

         14            THE COURT:  But the difficulty's going to be if

18:29    15    the -- you start consulting with those people in front of the

         16    jury or they say anything --

         17            MS. KELLER:  Your Honor, it's actually a condition

         18    of their contract with Trial Partners that they don't know

         19    which side hired them.

18:30    20            THE COURT:  I see.

         21            MS. KELLER:  We would ask the court to instruct all

         22    counsel not to speak to them, including the other side, and

         23    they will be accompanied by someone from Trial Partners at

         24    all times to make sure there's absolutely no contact with the

18:30    25    jurors, even inadvertent.  They will come in, they will

 1    listen, and they will leave, in the company of one of the

 2    trial consultant's employees, and we would just ask that --

 3    that everybody be told not to contact them.

 4            MR. QUINN:  Your Honor, my -- my experience with

18:30 5   these shadow juries is essentially in a lengthy trial the

 6    jury always figures it out.

 7            THE COURT:  Yeah, I'm becoming --

 8            MR. QUINN:  And they always know who they're

 9    affiliated with, and we don't want them sitting on our -- and

18:30 10  sometimes they react negatively to it, and we don't want them

 11   sitting on our side of the courtroom and thinking they're

 12   ours.

 13           THE COURT:  I applaud the fact that you have a jury

 14   consultant.  In fact, I've let them sit at the table.  And

18:30 15  they've acted as part of the team, and I think that when each

 16   of you are gone from court I'll miss you, the jury won't miss

 17   you.  They won't even know you're here.

 18           You've been very professional.

 19           I'm a little leery about a focus group.  Let me

18:31 20  just think about that.

 21           I just don't know why that's needed -- I know it's

 22   requested -- and I'm a little leery because it's starting to

 23   take substantial chances.

 24           MS. KELLER:  Well, Your Honor, we would show you

18:31 25  the agreement that -- that Trial Partners has entered into

UNITED STATES DISTRICT COURT

Case 2:04-cv-09049-DOC-RNB   Document 9661   Filed 01/20/11   Page 22 of 48   Page ID #:288220
CV 04-9049 DOC - 01/13/2011  Volume 3 of 3

22

     1   with them and with us, and file it with the court, and it --

     2   they absolutely will have no contact with the jurors.

     3          Mr. Quinn, because of his concern, we'd have them

     4   sit on our side of the courtroom.

18:31  5          THE COURT:  It's not that.  It's the press coverage

     6   that we're going to get also.  I can start speculating on a

     7   parade of horribles.

     8          MS. KELLER:  They're instructed to talk to no one,

     9   there will be someone with them at all times from

18:31 10   Trial Partners to make sure they have no communication with

    11   anybody.

    12          THE COURT:  Well, that would be a first in this

    13   case if something remained a secret, because all counsel have

    14   been Twittering and blogging and speaking before at least you

18:31 15   got involved on the case.

    16          MS. KELLER:  I haven't.

    17          THE COURT:  I know you haven't.

    18          MS. KELLER:  And I can tell you -- I can tell you

    19   that Ms. Miles has done these before.

18:32 20          THE COURT:  It's not directed at you.

    21          MS. KELLER:  I can tell the court that Ms. Miles

    22   has conducted these before and there's not been a problem.

    23          THE COURT:  That's fine, but each party's generated

    24   notoriety and publicity before you became involved in this

18:32 25   case.

Case 2:04-cv-09049-DOC-RNB   Document 9661   Filed 01/20/11   Page 23 of 48   Page ID #:288221
CV 04-9049 DOC - 01/13/2011   Volume 3 of 3

23

```
 1              MS. KELLER:  Well --
 2              THE COURT:  This is where it comes back to haunt
 3    both sides.
 4              Okay.  The past conduct has not been exemplary on
18:32  5    both sides.
 6              MS. KELLER:  Well, this doesn't really have
 7    anything to do with the press and these people will be
 8    instructed that they are fired if they even talk to the
 9    press.  They would be fired on the spot, and there will be
18:32 10    somebody --
11              THE COURT:  I'm not going to give you an answer
12    right now.
13              MS. KELLER:  Thank you.
14              THE COURT:  I'll think about it this evening.
18:32 15              MS. KELLER:  Thank you.
16              And, Your Honor, also, could we return to our
17    previous -- the court's previously indicated that because
18    both parties have claims against the other that they could be
19    referred to as the claimants as opposed to Plaintiff and
18:32 20    Defendant?
21              THE COURT:  Certainly, certainly.
22              MS. KELLER:  We appreciate that.
23              THE COURT:  As claimants.
24              MR. MCCONVILLE:  Your Honor, one other thing -- I'm
18:33 25    sure there will be many more -- but just one other thing I
```

Case 2:04-cv-09049-DOC-RNB   Document 9661   Filed 01/20/11   Page 24 of 48   Page ID #:288222
CV 04-9049 DOC - 01/13/2011   Volume 3 of 3

24

 1    can think of right now -- so we submitted a proposed order to

 2    have people bring equipment into the courtroom so we could

 3    use an ability to display --

 4            THE COURT:  That's not going to happen now.  That

18:33 5    was a fiasco.  Instead of going through the court it went

 6    through the executive officer.  We started getting phone

 7    calls from companies without direction.

 8            Our court executive officer stepped in.

 9            No longer.

18:33 10           MR. MCCONVILLE:  It's not an Internet issue?  It's

 11    a different issue?

 12            THE COURT:  No, no.  These are adequate.

 13            The courtroom's not going to change.

 14            MR. MCCONVILLE:  Understood.  I'm not suggesting

18:33 15   that.

 16            What I'm suggesting is that in order for us to use

 17    a device that displays the document, we need to get the

 18    devices into the courtroom.

 19            THE COURT:  You'd better have it in tomorrow and

18:34 20   let me see how it operates, because we're starting to get

 21    calls from professionals who are disconnected, and the staff

 22    downstairs isn't going to deal with that.

 23            Terri Nafisi's not going to deal with that, Milli's

 24    not going to deal with that.

18:34 25           MR. MCCONVILLE:  I'll put a yellow hardhat on and

 1    I'll deal with it myself.

 2            THE COURT:  You know, I'm not sure you're setting

 3    it up.  You'd better get it in tomorrow and demonstrate it at

 4    7:30; okay.  It's ready to go and set up and running at 7:45

18:34  5    and I can look at it.

 6            MR. MCCONVILLE:  And so do they need an order from

 7    you to get it into the courtroom?  That's what we submitted

 8    to you to sign so that we could get it into the courtroom.

 9            THE COURT:  Frankly, our court administrators

18:34 10    believe that we were misled, now that we're having this

11    conversation.  Do you want me to go farther with that and get

12    Milli up here?  Do you want me to set the record straight?

13            MR. MCCONVILLE:  Your Honor, I apologize for

14    misleading --

18:34 15            THE COURT:  Thank you.

16            MR. MCCONVILLE:  -- Milli.

17            THE COURT:  Thank you; thank you.

18            You killed the golden goose.  Not you personally --

19            MR. MCCONVILLE:  I'll take responsibility.  I'll

18:34 20    apologize.

21            THE COURT:  You know, I just don't know what you

22    want or why you want it and now I'm leery, when the requests

23    become too wide -- Mr. Zeller, are you looking at me?

24            MR. ZELLER:  Yes.

18:35 25            THE COURT:  And uncoordinated.

Case 2:04-cv-09049-DOC-RNB   Document 9661   Filed 01/20/11   Page 26 of 48   Page ID #:288224
CV 04-9049 DOC - 01/13/2011 - Volume 3 of 3

26

```
 1              Mr. McConville, are you looking at me?

 2              MR. MCCONVILLE:  Yes.

 3              THE COURT:  You have all the resources you need in

 4      the court.  In other words, I'm inclined to shut the whole

18:35 5   thing off.

 6              MS. KELLER:  Your Honor, the only thing we need, is

 7      we want to use the court's monitors.  All we need to do is

 8      hook our little laptop into it.  That's all.

 9              And we need our guy to do that, because we don't

18:35 10  know how to do it.

11              THE COURT:  Into the monitor?

12              MS. KELLER:  So we can display documents and

13      things.

14              THE COURT:  That's easy.  I've always allowed that.

18:35 15             Why do you need help to do that?

16              MS. KELLER:  We need the court to sign the order so

17      we can get it into the courtroom.

18              THE COURT:  You don't need a monitor.  We just have

19      the equipment; you just hook it in.

18:35 20             MS. HURST:  It's the laptops --

21              THE COURT:  I've done this with every other court.

22              This is nonsense.

23              We've been able to coordinate that.  It's the

24      easiest thing in the world.  Your computers are hooked in and

18:35 25  you display it into the monitor.
```

```
 1              MS. KELLER:  Can we have our person come in
 2       tomorrow and hook it up and --
 3              THE COURT:  Sure.
 4              MS. KELLER:  If we can get the court to sign the
18:36 5  order, then we can do that.  Otherwise, I don't think we can
 6       do it.
 7              THE COURT:  The laptop is just a laptop.  Just
 8       bring it in.
 9              Now, we had a whole parade.  Frankly, it got
18:36 10 disjointed and that's not what was coming in.
11             MS. KELLER:  That was my understanding.
12             THE COURT:  No, you're wrong.  There was a
13       multitude of equipment coming in.  That's when the court
14       administration contacted me and we put a stop to it.
18:36 15        MS. KELLER:  Well, I think that may have been
16       before the court said that we were only to use the two
17       monitors that were here.
18             THE COURT:  No, no, no.  Talk to Kathy privately.
19       I don't want to embarrass you any further.
18:36 20        MS. KELLER:  Oh, I've been embarrassed so many
21       times in my life, Your Honor.
22             THE COURT:  You don't want me to go there.
23             MS. KELLER:  Okay.
24             MS. HURST:  Your Honor, all it is is a laptop and a
18:36 25 monitor and a VGA switch in order to switch back and forth
```

UNITED STATES DISTRICT COURT

1    between the sources and a kill switch.

2              THE COURT:  Bring it in.

3              MS. HURST:  And, frankly, we didn't know if the

4    bluecoats would require an order to bring that in or not.

18:36  5              THE COURT:  What time are they coming?

6              MS. HURST:  Whenever the court orders.

7              THE COURT:  7:30 tomorrow and I'll meet you

8    downstairs.

9              Okay; I'll see what that equipment is.  And if it

18:37 10    isn't the parade of horribles, we'll walk it up here and you

11    won't need a court order.

12              MS. KELLER:  Thank you.

13              THE COURT:  You can hook it up.

14              Kathy, how are we doing with the phone calls?

18:37 15              THE CLERK:  I've talked to three of the six

16    alternates.

17              THE COURT:  Can they be here so far?

18              THE CLERK:  Definitely.

19              THE COURT:  At what time?

18:37 20              THE CLERK:  I told them 8:00.

21              THE COURT:  You're amazing, Kathy.

22              THE CLERK:  I left a message.

23              One wife answered the phone and she said she would

24    tell her husband, and I left two other messages and I asked

18:37 25    her to call me when she got the messages.

 1          THE COURT:  We're going to stick until we have all

 2     six tonight.

 3          Okay.  We'll go off the record.  We're just going

 4     to wait.

18:37  5          (Discussion held off the record.)

 6          THE COURT:  Back on the record.

 7          And, counsel, you wanted to talk to me more about

 8     the focus group.

 9          MS. KELLER:  Your Honor, I just wanted to ask if we

18:38 10   could bring you a copy of the motion that we had planned to

11     file, but have not filed and are not going to file today,

12     just so that the court would get a more thorough

13     understanding of everything that's -- that would be connected

14     with this project?  And if the court --

18:39 15          THE COURT:  Can I get it this evening?

16          MS. KELLER:  We're going to have one printed.  It

17     will have the wrong caption with the stand-in caption.  But

18     if the court can just take a look at that, if the court wants

19     us to do it, we will then put the correct caption on it and

18:39 20   file it under seal.

21          We can't do all that right now, but that way the

22     court could see what our proposal is informally.

23          THE COURT:  You'd be more than welcomed to.  I'd

24     like to see the proposal.

18:39 25          MS. KELLER:  Thank you.

```
 1              We will obtain that across the street and get it
 2      over here.
 3              THE COURT:  Mr. Overland approached me on an
 4      in-camera matter.
 5              MR. OVERLAND:  Yes.
 6              THE COURT:  You would like this to be heard
 7      in-camera because it involves attorney-client privilege?
 8              MR. OVERLAND:  Yes.
 9              THE COURT:  That will exclude both Mattel, for the
10      moment, and MGA?
11              MR. OVERLAND:  Yes.
12              THE COURT:  Counsel, would you wait out in the
13      hallway for just a moment and all the parties.
14              (Excluded parties exited the courtroom.)
15              THE COURT:  Counsel, just don't leave, Mr. Quinn,
16      Mr. Eckert.  You're welcome to go or stay at any time, but I
17      need all counsel here this evening.
18              And I think we're going to be successful resuming
19      here at 8:00.
20              MR. QUINN:  Thank you.
21              THE COURT:  And, therefore, Mr. Eckert, if you'd
22      like to be present, Mr. Larian, it makes a good impression if
23      both of you are present.
24              MR. ZELLER:  Thank you.
25              MS. KELLER:  And, Your Honor, does the court have a
```

18:39  5
18:39 10
18:40 15
18:40 20
18:40 25



1    time it wants to order us back, 7:00, maybe?

2              THE COURT:  No, as soon as Mr. Overland's done.

3              MS. KELLER:  Okay.

4              THE COURT:  If you want to speak to Mr. Overland,

18:40  5    he'll give you a time frame, because I know very little about

6    what he's about to say.

7              (Sealed proceedings.)



UNITED STATES DISTRICT COURT



CV 04-9049 DOC - 01/13/2011 - Volume 3 of 3



UNITED STATES DISTRICT COURT



Case 2:04-cv-09049-DOC-RNB   Document 9661   Filed 01/20/11   Page 36 of 48   Page ID #:288234
CV 04-9049 DOC - 01/13/2011 - Volume 3 of 3

36





UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 01/13/2011   Volume 3 of 3



UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 01/13/2011   Volume 3 of 3



UNITED STATES DISTRICT COURT



CV 04-9049 DOC - 01/13/2011   Volume 3 of 3



UNITED STATES DISTRICT COURT



UNITED STATES DISTRICT COURT



UNITED STATES DISTRICT COURT





22        (Open court - jury not present.)

23        THE COURT:  Without disclosing the substance of the

24   in-camera discussion in terms of some attorney-client

25   privileges, Mr. Machado may be taking the position that he's

 1    not going to appear at this trial.

 2            Now, that can have adverse consequences for MGA

 3    because you certainly know about the fee arrangement, but it

 4    can have adverse inferences for Mattel also because it

19:20 5    involved the statute of limitations issue.

 6            So although the adverse inference could be drawn

 7    against Machado and limited to Machado, because of his

 8    nonappearance in my court, there's one adverse inference.

 9            I'm sorry.

19:20 10            Mattel may be in the position of being able to

 11   attack quite effectively by showing the adverse inference

 12   against Machado, his nonappearance and the fee payments that

 13   MGA is making to Machado.  But it can also carry over to

 14   Mattel, because he has some very positive things to say about

19:21 15   the statute of limitation, so it affects you also and can put

 16   you in a precarious position.

 17           So what I'm doing is researching, since I believe

 18   I've got jurisdiction, and I think my research is fairly down

 19   the line.  I warned all parties that at some point there may

19:21 20   be warrants issued.  He is a material witness.

 21           So if he intends to come back to California in his

 22   lifetime, that may be a rather difficult situation.

 23           Now, Mr. Overland's been kind enough to send off

 24   another e-mail to Mr. Machado to see what his position is,

19:21 25   and if he voluntarily complies you're not going to be able to

UNITED STATES DISTRICT COURT

```
 1     use this portion of the testimony -- this portion of the

 2     proceeding in cross-examination.

 3              So, Mr. Overland, if you want to step out and send

 4     the e-mail.

19:21  5          MR. COTE:  I'm doing it right now.

 6              THE COURT:  You're doing it right now in court.

 7              Then we'll wait.

 8              Finally, we do have all six jurors returning

 9     tomorrow at 8:00.

19:22 10         So I've got an 8:30 calendar, but I think that I

11     can delay that just a little, and let's get the three and

12     hopefully four alternates.

13              So if you want to tell Mr. Eckert, because I'm sure

14     he wants to make a good impression, and Mr. Larian wants to

19:22 15    be here and your jury consultants.  Then can you be here at

16     7:30 tomorrow?  Would that be okay, instead of 7:00?

17              MS. KELLER:  Yes, Your Honor.

18              THE COURT:  All right.

19              MR. QUINN:  Your Honor, we have those proposed

19:22 20    slides that we'd like to use in opening.

21              THE COURT:  Sure.

22              MR. QUINN:  There's one other that may be on its

23     way over here, but I've got slides.

24              THE COURT:  Okay.  Let's see them, and we'll do

19:22 25    this off the record to begin with.
```

UNITED STATES DISTRICT COURT

1          Let's view the slides.

2          MS. HURST:  Your Honor, we also had one other issue

3    to raise before the first witness takes the stand.

4          THE COURT:  Yes.

19:22  5          MS. HURST:  It's an additional motion in limine

6    that we filed today regarding an exhibit to be used with that

7    witness.

8          THE COURT:  I haven't read it.  I've been on bench.

9          MS. HURST:  I understand, Your Honor, I just want

19:23 10    to alert the court because it concerns the first witness so

11    that we can make sure we get it in here in the queue sometime

12    between now and Tuesday.

13          THE COURT:  I haven't read that.

14          MR. MCCONVILLE:   Okay.

19:23 15          THE COURT:  This is off the record.

16          Just rest your hands for a moment.

17          (Recess taken.)

18          (Proceedings concluded at 19:23 on 01-13-2011.

19    Proceedings concluded until Wednesday, 1-14-2011, 7:00 a.m.)

20

21

22

23

24

25