# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                    Date: January 17, 2011

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

|     Kathy Peterson     |     Not Present     |
|------------------------|---------------------|
| Courtroom Clerk        | Court Reporter      |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

| NONE PRESENT | NONE PRESENT |
|--------------|--------------|

PROCEEDING (IN CHAMBERS): ORDER ON MGA'S MOTION IN LIMINE NUMBER 24

      The doctrine of fraudulent concealment equitably estops a defendant who conceals its wrongdoing from arguing that the plaintiff's claim is time-barred.  It "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176-77 (9th Cir. 2003).  For instance, a defendant cannot "take[] active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations" and thereafter complain that plaintiff acted dilatorily in bringing its claim.  *Id.* (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990)).  The prototypical example of fraudulent concealment is one in which the defendant "misrepresents or conceals facts necessary to support" the plaintiff's claim.  *Santa Maria*, 202 F.3d at 1177.  Such conduct generally meets all three of the factors relevant to the applicability of fraudulent concealment:

> (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of the conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

*Id.* at 1176 (citing *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981)).

      Mattel's original pleading against Bryant was filed on April 27, 2004.  The Court has held

MINUTES FORM 11 DOC                              Initials of Deputy Clerk kp
CIVIL - GEN                                      Page 1 of 4

that Mattel's Bratz-related counter-claims against MGA relate back to the date of that pleading.  The statutes of limitations that apply to Mattel's surviving counter-claims are: (1) three years for trade secret misappropriation; (2) three years for conversion; (3) two years for aiding and abetting breach of duty of loyalty and intentional interference with contractual relations; (4) four years for unfair competition; and (5) three years for copyright infringement.  In other words, if Mattel knew or reasonably should have known of its claims before April 27, 2002, at least some of its counter-claims are time barred.  On the basis of Mattel's internal memoranda, Bryant's statements to his supervisors at Mattel, and Mattel's own knowledge about the extent of Bryant's exposure to product ideas at Mattel, MGA intends to argue at trial that Mattel knew or should have known of its claims even before April 27, 2001.

Mattel claims that MGA and Bryant fraudulently concealed (1) the fact that Bryant invented Bratz (2) while still employed by Mattel.  Mattel argues that MGA and Bryant's efforts to obstruct his participation in the Bratz project prevented Mattel from more immediately discovering these facts.  MGA argues that Mattel's fraudulent concealment allegation constitutes an implied waiver of the attorney-client privilege, such that Mattel must produce all privileged communications relevant to Mattel's knowledge of the facts that give rise to its claims.

Both parties appear to agree that federal common law, and not California state law, governs the determination of whether there has been a waiver of the attorney-client privilege.  Mattel's fraudulent concealment allegation pertains to the timeliness of both its state law counter-claims and its federal counter-claim for copyright infringement.  Where the privilege concern pertains to both state and federal claims, there is authority for the proposition that federal privilege law governs.  *See, e.g.*, *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

Mattel has not expressly waived the attorney client privilege.  Any waiver must have been an implied waiver, which occurs when "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense."  *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

The question here is whether a fraudulent concealment allegation "put[s] the privileged information at issue."  Both Discovery Masters, this Court, and Judge Larson responded in the negative.  At the Court's invitation for additional briefing on the issue, MGA seeks reconsideration by citing case law for the proposition that "the assertion of a claim of fraudulent concealment [] is a waiver of the privilege."  The most recent case cited by MGA is *Rambus Inc. v. Samsung Electronics Co., Ltd.* in which the district court concluded that "alleging a basis for avoiding a statute of limitations" puts the privileged information at issue.  2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007).  The cases and authorities cited by *Rambus* for this proposition appear to rely upon the extremely broad proposition that "filing a suit" is itself the type of "affirmative act" that puts privileged information at issue.  *See id.*

(quoting *Aloe Vera of Am., Inc. v. United States*, 2003 WL 22429082, at \*3 (D. Ariz. 2003) and Edna
Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, at 544 (5th ed. 2007)
("[E]ach time a plaintiff brings a suit, he tacitly puts into issue the question of whether the statute of
limitations [has] run.")).  Two Eastern District of New York cases cited by MGA similarly rely upon
the more narrow proposition that a party waives the privilege when it argues that the other side's acts of
concealment induced its delay in filing suit.  *See WLIG-TV, Inc. v. Cablevision Systems Corp.*, 879 F.
Supp. 229, 234-35 (E.D.N.Y. 1994); *see also Bohack Corp. v. Iowa Beef Processors, Inc.*, 1981 WL
2018 (E.D.N.Y. Jan. 13, 1981).  In other words, a plaintiff cannot equitably assert that it "relied on the
defendant's bad faith representations" while simultaneously shielding privileged communications that
show the absence of any reliance.  *Id.* at 235 ("WLIG asserted the privilege by its affirmative act of
filing this pending suit [and] put otherwise protected information at issue by raising equitable doctrines
to overcome a limitations bar.").

   This line of reasoning cannot be reconciled with longstanding case law.  A fraudulent
concealment allegation, like any other common law fraud claim, requires a showing of reliance.  *See id.*
at 233-34.  This showing of reliance can often be rebutted with evidence that a plaintiff did not, in fact,
rely upon the allegedly fraudulent representation, either because it recognized the falsity of the
representation or because the representation did not induce its eventual conduct.  *See Home Indem. Co.*,
43 F.3d at 1326 ("Lane Powell's main defense was that its conduct did not cause the failure to settle
because the plaintiffs never intended to settle for the policy limits and in fact only wanted to 'set up' a
bad faith action.").  It is axiomatic as a matter of both California law and federal common law that the
mere allegation of reliance does not constitute a wholesale waiver of the privilege as to all attorney-
client communications that evidence or disprove a connection between the misrepresentation and
plaintiff's conduct in reliance.  *See Mitchell v. Superior Court*, 37 Cal.3d 591, 606 (1984) ("[T]here is
no waiver of the attorney-client privilege where the substance of the protected communications is not
itself tendered in issue, but instead simply represents one of several forms of indirect evidence in the
matter."); *Standard Chartered Bank PLC v. Ayala Intern. Holdings (U.S.) Inc.*, 111 F.R.D. 76, 81-82
(S.D.N.Y. 1986).  The mere fact that "it would be useful and convenient" to obtain the privileged
materials of a party asserting fraud and reliance "are not reasons to void the attorney-client privilege."
*Id.* at 81.  The Court does not agree with this rule because of its inequity, but is bound to apply the law.

   Perhaps recognizing that its logic would require the waiver of the privilege in every case
involving a fraud allegation, *Cablevision* attempted to limit its holding to its facts on the grounds that
"[s]omething more than merely relevance, however, is at stake when a plaintiff seeks to overcome a
statute of limitations bar by interjecting equitable doctrines."  879 F. Supp. at 235.  The difference
between the interjection of equitable doctrines and any other fraud claim, the court noted, lies in the
fact that "[t]he statute of limitations affords protection of paramount importance to a defendant and is not
lightly cast aside."  *Id.*  But a fraud defendant's ability to defend itself is no less "paramount" and it
makes little sense to protect the species of plaintiffs who allege fraudulent concealment while
restricting discovery to plaintiffs who allege garden-variety fraud.  An allegation of fraudulent
concealment in response to a statute of limitations defense may necessarily imply that the plaintiff's

attorneys — the individuals likely responsible for filing suit — lacked knowledge of the facts giving rise to the claim.  However, this is no less the case in dozens of other cases involving allegations of fraud, in which the plaintiff claiming reliance engaged in conduct directed by its attorneys.  Moreover, a finding that "need" puts privileged information at issue conflates the second and third prongs of the *Hearn* test.

The third factor of the *Hearn* test - whether upholding the privilege would deny the opposing party access to information vital to its defense - also weighs against the finding of a waiver.  MGA has access to many non-privileged emails relating to the statute of limitations, generally, and the issue of Mattel's knowledge in particular.  Upholding the attorney-client privilege will not deny MGA access to information vital to its defense.

On the basis of these conclusions, the Court finds that reconsideration of its prior orders is unwarranted.  Nor is MGA's motion to preclude Mattel from arguing fraudulent concealment justified under controlling Ninth Circuit law.  MGA's motion in limine number 24 is therefore denied.

The Clerk shall serve this minute order on all parties to the action.