# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                                    Date: January 17, 2011

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

| NONE PRESENT | NONE PRESENT |
|---|---|

PROCEEDING (IN CHAMBERS): ORDER ON MOTIONS IN LIMINE

The Court rules as follows on the pending motions in limine:

## MGA's MOTIONS IN LIMINE

**1.     MGA's Motion in Limine Number 1 to Exclude Evidence of the Arbitration Between Isaac Larian and Farhad Larian**

MGA moves to exclude evidence of, and evidence admitted during, an arbitration proceeding between Isaac Larian and his brother Farhad Larian.  In that arbitration proceeding, which was filed before this case, Farhad Larian alleged in relevant part that Isaac Larian concealed evidence of Bratz's development during 2000.  Testimony offered during the prior proceeding may be admissible for impeachment purposes.  Fed. R. Evid. 801(d).  Even the hearsay testimony of an unavailable witness may be admissible if a predecessor in interest to Larian "had an opportunity and similar motive to develop the testimony" during the prior proceeding.  Fed. R. Evid. 804(b)(1).  These determinations are better made at the time of trial.  The motion is therefore denied.

**2.     MGA's Motion in Limine Number 2 to Exclude Evidence of Other Legal Proceedings in which One or More of the MGA Parties were Involved as Litigants or Witnesses**

MINUTES FORM 11 DOC                                    Initials of Deputy Clerk kp
CIVIL - GEN                                            Page 1 of 27

MGA seeks to exclude evidence of other legal proceedings, including the positions it took in such proceedings.  A number of lawsuits that preceded this one addressed the issue of whether MGA's products reflected elements found in Carter Bryant's creative works.  In other lawsuits, MGA accused others of engaging in copyright infringement, even though there may have been fewer similarities between the defendants' creations and the Bryant works than between MGA's products and the Bryant works.  MGA's positions in these prior proceedings may be relevant to whether it is judicially estopped from taking positions to the contrary before the fact-finder in this case.  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  To the extent MGA, or its agents, took factual positions that contradict the evidence MGA submits to the jury, such evidence and testimony may be admissions against interest.  Fed. R. Evid. 801(d)(2).  Though MGA may be correct that the prejudicial effect of the prior proceedings, or the positions taken in those proceedings, outweighs the probative value, the Court can make these fact-specific determinations at the time of trial.  As drafted, MGA's motion in limine is overbroad and therefore denied.

3.     **MGA's Motion in Limine Number 3 to Preclude Evidence Relating to MGA's Legal Representation**

MGA seeks to exclude evidence concerning its prior legal representation in this lawsuit.  Mattel agrees that such evidence is generally irrelevant and unduly prejudicial, but argues that MGA should be bound by its recent allegation — filed in the Superior Court for the State of California — that its prior counsel was the cause of a damaging injunctive order entered by Judge Larson that was vacated on appeal.  Mattel maintains that MGA should be precluded from introducing evidence of the injunction entered by Judge Larson, thus obviating the relevance of MGA's representations about the culpability of its former counsel in obtaining that injunction.

Evidence of MGA's prior representation is irrelevant and unduly prejudicial, regardless of whether MGA should be permitted to introduce evidence about Judge Larson's wrongfully entered injunction.  The issue is not whether the wrongfully imposed injunction was "caused" by Mattel, MGA's prior counsel, or even Judge Larson.  Instead, MGA contends that, whatever the cause of the injunction, Mattel should be forced to account for and disgorge its unjust enrichment.  In almost every case involving a claim for wrongful injunction, the party unjustly enriched by the injunction could probably claim that the injunction would not have been imposed but for the litigation incompetence of the previously enjoined party's attorney.  But none of these cases included such a defense, because the profits unjustly obtained as a result of a wrongfully imposed injunction should be disgorged even where the previously enjoined party shares blame for its imposition.  Introducing evidence of MGA's prior representation has the potential to confuse the jury, unduly consume time and resources, and cause obvious prejudice to MGA.

MGA's motion is therefore granted.

4.     **MGA's Motion in Limine Number 4 to Preclude References to Criminal**

MINUTES FORM 11 DOC                                    Initials of Deputy Clerk kp
CIVIL - GEN                                            Page 2 of 27

**Investigations in the United States**

As discussed in the Court's summary judgment order (Docket 9600), Mattel petitioned authorities to investigate and pursue charges against former employee Jorge Castilla. Mattel also participated in a criminal investigation and prosecution conducted by Mexican law enforcement against MGA Mexico, Gustavo Machado, Pablo Vargas, and Mariana Trueba. Mattel argues that its efforts are relevant to show (1) the value of the information allegedly misappropriated by Mattel's former employees; and (2) the reasonableness of Mattel's efforts to maintain the secrecy of such information. Mattel also argues that statements made by its former employees to law enforcement — *e.g.*, an admission by Castilla to the Federal Bureau of Investigation — are relevant to the underlying issue of whether these individuals engaged in the misappropriation of trade secret information alleged in this lawsuit. The Court agrees with Mattel on both these arguments and rejects MGA's argument that the prejudicial effect of Castilla's admissions outweigh their probative value.

Mattel is nevertheless incorrect that the chronology of the FBI's investigation of Mr. Castilla is relevant. Mattel avers that Castilla initially denied to the FBI that he misappropriated Mattel's information, only to later admit to his alleged wrongdoing. Mattel also asserts that Castilla "surrendered" a "PDA" to the FBI. Mattel argues that both of these events show that "Castilla's acquisition of Mattel's trade secrets was wrongful, and he knew it." However, Castilla's knowledge of the wrongfulness of his alleged conduct is not at issue. He is not a party to this lawsuit and Mattel does not explain how his *mens rea* is imputable to MGA. Evidence about the FBI's investigation, the length of that investigation, and Castilla's conduct during that investigation is therefore irrelevant. The admission of such evidence is, of course, also unduly prejudicial to MGA and unduly consumptive of time.

MGA's motion is granted as to the investigation into Castilla. MGA's motion is also granted as unopposed as to evidence of other investigations by law enforcement into the conduct of Mattel's former employees. MGA's motion is denied as to the specific statements made by Castilla to investigators, as well as the fact that Mattel petitioned for law enforcement's assistance.

**5.   MGA's Motion in Limine Number 5 to Preclude References to an Indemnity Agreement Between MGA and Carter Bryant**

The factual question of whether MGA agreed to indemnify Carter Bryant is relevant to Bryant's credibility, because its resolution establishes the extent of MGA's control over Bryant, as well as the extent of Bryant's bias in favor of MGA. *Cf.* Order Unsealing Mattel-Bryant Confidential Settlement Agreement. MGA previously claimed that it never agreed to indemnify Bryant. However, an outside consultant for MGA may have made a contrary representation to the Internal Revenue Service. In an earlier discovery order, this Court compelled MGA to produce copies of relevant documents provided to the IRS. MGA now admits that it agreed to reimburse Bryant's legal fees, but maintains that it never agreed to indemnify Bryant.

MGA's representations to the IRS are not inconsistent with the actual fee agreements that this Court has both reviewed *in camera* and later ordered MGA to produce.  Evidence of MGA's representations to the IRS has some probative value, since it establishes the extent to which MGA agreed to reimburse Bryant's legal fees, but that probative value is vastly outweighed by the prejudicial effect of such evidence, the confusion to the fact-finder, and the great waste of judicial resources involved in conducting a mini-trial about MGA's interactions with the IRS.

MGA's motion is granted as to evidence about the IRS investigation but denied as to its actual fee and indemnification agreements, if any, with Bryant.

**6.      MGA's Motion in Limine Number 6 to Exclude References to Criminal Charges in Mexico against Isaac Larian and Jahangir Makabi**

This motion in limine has been resolved by the parties' stipulation and is stricken as moot.

**7.      MGA's Motion in Limine Number 7 to Exclude Evidence that the MGA Parties Spoliated Evidence**

Mattel concedes that evidence concerning MGA, Machado, and Bryant's alleged destruction of evidence, including the use of hardware enhancement software like "BeClean," "Evidence Eliminator" and "Internet Washer Pro," is only relevant to its two counter-claims for violations of the Racketeer Influenced and Corrupt Organizations Act.  *See* Mattel Opp'n to MGA Motion In Limine No. 7 at 1-2.  Summary judgment has been entered against Mattel on both counter-claims.  In light of Mattel's representation that the relevance of this evidence is restricted to its defunct counter-claims for criminal racketeering, MGA's motion is granted without prejudice to Mattel's ability to seek reconsideration during trial by identifying other issues to which such evidence is relevant.

**8.      MGA's Motion in Limine Number 8 to Exclude Evidence and Testimony from Maryman & Associates**

Mattel retained Maryman & Associates to prepare an expert report that analyzes the activity on the Mattel computers used by departing Mattel employees Castilla, Cooney, Contreras, and Brawer.  The report concludes that all four individuals downloaded or copied Mattel documents prior to their departure, though Mattel now concedes that the vast majority of these documents were not trade secrets.  Mattel claims that Cooney stole one trade secret document, and concedes that Brawer and Contreras stole no trade secret documents.  MGA accordingly argues that the Maryman & Associates report includes irrelevant and unduly prejudicial information about the employees' hard drive activity.

Though the reports prepared by Maryman & Associates may describe hard drive activity unrelated to the identified trade secrets, they may still help the fact-finder resolve Mattel's trade secret

misappropriation allegations.  First, Castilla's misappropriation may be established by evidence that he downloaded documents.  Second, Cooney's misappropriation of the Toys 'R Us spreadsheet may be established by evidence that he downloaded that document to his hard drive.  Third, the files Brawer accessed in his final days at Mattel may reveal whether he deliberately gathered data about a product concept he allegedly misappropriated to MGA.

However, Maryman & Associates' conclusions about Contreras' hard drive activity is irrelevant and unduly prejudicial to MGA.  Mattel argues that Contreras' use of his Mattel computer to download non-trade secret documents may "establish[] the pattern of misappropriation directed by MGA."  Since summary judgment was entered against Mattel on its allegations of criminal racketeering, MGA's "pattern" of misappropriation is no longer relevant.  The jury must resolve whether MGA misappropriated the identified trade secrets.  Contreras' efforts to download non-trade secret materials (valueless documents) from his Mattel computer before he even started working at MGA bears no relevance to MGA's participation in the theft of trade secrets, or its knowledge of the wrongfulness of such conduct.

The motion is therefore granted as to Maryman & Associates' conclusions about Contreras and otherwise denied.

## 9.  MGA's Motion in Limine Number 9 to Exclude Evidence of the Downloading of Software and Movies by MGA Employees

MGA seeks to exclude evidence that at least one of its employees, Joe Tiongco, downloaded multimedia, like digital files of movies and songs, without authorization and at the direction of Isaac Larian.  There is no evidence that any of the multimedia downloaded by Tiongco included Mattel's materials.  Tiongco's activities are therefore facially irrelevant to any of the claims, inadmissible under Fed. R. Evid. 404(b), and the prejudicial effect of such evidence outweighs its probative value.  Mattel makes three unconvincing arguments in response.

First, Mattel argues that Tiongco invoked the Fifth Amendment repeatedly during his deposition, and it should therefore be inferred that "the materials . . . belonged to Mattel."  However, Tiongco's alleged activity is not part of Mattel's counter-claim.  Moreover, Tiongco invoked the Fifth Amendment "in response to over 100 questions" the vast majority of which had nothing to do with whether the materials were owned by Mattel.  The mere fact that Tiongco invoked the Fifth Amendment in response to a question about whether he downloaded Mattel materials is inadequate to justify the wholesale introduction of evidence about unrelated conduct.

Second, Mattel argues that Tiongco's downloading activity is relevant to "the existence and nature of the alleged RICO enterprise and pattern."  This argument is moot, in light of the entry of summary judgment against Mattel on its counter-claims for violations of the Racketeer Influenced and Corrupt Organizations Act.

Third, Mattel argues that Tiongco's conduct is "relevant to MGA and Larian's intent and willfulness and is therefore admissible under Rule 404(b)." This argument presumes the wrongfulness of downloading multimedia from the internet, as well as MGA's knowledge of that wrongfulness. Such evidence of a pattern of prior infringement may, in certain circumstances, be admissible to prove intent or willfulness. Wright & Miller, 22 Federal Practice and Procedure, § 5242. However, that is most often the case when there is evidence of the frequent commission of a particular type of act. *See Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 242 (E.D.N.C. 2010). Mattel has no evidence that Tiongco's alleged acts of unauthorized downloading resemble any other activity at MGA that relates to unlawful copyright infringement. Evidence of Tiongco's conduct will not only trigger a distracting and consumptive mini-trial about the materials he accessed, but will also cause undue prejudice to MGA.

MGA's motion is therefore granted.

**10.     MGA's Motion in Limine Number 10 to Exclude Evidence about Activities at MGA's Chatsworth Facilities**

MGA seeks to exclude its former employee's testimony about the "sale of sample and untested products out of [MGA's] Chatsworth facility second hand." Mattel agrees that such evidence is irrelevant, but contends that it should be allowed to introduce such evidence "if MGA is permitted to introduce evidence concerning the safety or recall of Mattel's products." However, Mattel is not entitled to bargain on the outcomes of motions in limine. The facts concerning the recall of Mattel's products are entirely unrelated to the alleged sale of untested products from MGA's Chatsworth facility. Mattel's Chief Executive Officer acknowledged the possibility that Mattel's product recalls "permanently turned off" consumers to Mattel's products, which undermines Mattel's claim that the allegedly wrongful sale of Bratz dolls was a major contributing factor to Barbie's decline. By contrast, MGA's alleged sale of untested product sales is irrelevant to any of the liability or damages determinations in this lawsuit. Evidence about such conduct is unduly prejudicial to MGA and is character evidence that should be excluded pursuant to Fed. R. Civ. P. 404(b).

Moreover, MGA's former employee conceded at deposition that he never identified the untested products and never witnessed the sale of those products. He instead claimed to have inferred the alleged conduct from statements made by another MGA employee, as well as a manager at the facility. His testimony about such conduct is therefore inadmissible hearsay and, in addition, lacks foundation. Fed. R. Evid. 502 & 801.

MGA's motion is granted.

**11.     MGA's Motion in Limine Number 11 to Exclude Evidence Relating to Toxic Substances Alleged to be Contained in MGA Toys, Including Phthalates**

MGA seeks to exclude evidence that its toys used phthalates — substances that may pose environmental and health hazards.  Mattel concedes that such evidence is irrelevant but argues that "if MGA is permitted to introduce evidence concerning the safety or recall of Mattel's products, then this evidence concerning MGA's sale of sales of [sic] products containing unsafe, banned substances should also be admitted."  However, Mattel has made no argument, as MGA has, that some of the damages claimed by MGA are attributable to the sale of products containing phthalates.  Mattel recalled a number of its products as a result of safety concerns, but there is no allegation that MGA recalled any of its products as a result phthalate use.  Evidence about the composition of MGA's products is therefore unduly prejudicial, given its marginal probative value, and should be excluded under Rules 403 and 404(b) of the Federal Rules of Evidence.  MGA's motion is granted.

### 12.   MGA's Motion in Limine Number 12 to Exclude Evidence Regarding a Conversation Between Contreras and Kim

MGA seeks to exclude evidence that former employee Nick Contreras spoke with a subordinate named Susan Kim soon after Contreras left Mattel for MGA.  The conversation is described in the Court's order on the parties' motions for summary judgment.  Dkt. 9600.  Mattel and Kim allege that Contreras recruited Kim and twice asked Kim to download Mattel's proprietary information to a thumb drive.  Kim claims to have declined Contreras' requests and Contreras denies the episode ever occurred.

Mattel is incorrect that Contreras' conduct gives rise to liability under any of Mattel's state law counter-claims.  But the timing of Contreras' conversation with Kim and MGA's potential knowledge that conversation may be relevant to whether MGA encouraged Contreras to recruit Kim and solicit Mattel's confidential information.  Such conduct may undermine MGA's attempts to separate itself from the alleged misconduct committed by Mattel's departing employees.  The evidence is directly relevant to Mattel's allegations and its probative value outweighs its prejudicial effect.

MGA's motion is denied.

### 13.   MGA's Motion in Limine Number 13 to Preclude References to Other Evidence Unrelated to the Litigation

MGA seeks to exclude four categories of evidence: (1) evidence that Larian instructed MGA employees to use an individual in Mexico to facilitate the export of goods into Mexico; (2) evidence that MGA bribed foreign officials or law enforcement officers; (3) evidence that MGA made cash payments to workers in China; and (4) evidence that Larian made trades in Mattel stock.  Mattel has stipulated to the exclusion of the second category of evidence.

Mattel concedes that Larian's instruction to streamline the export of goods into Mexico is only relevant to its two counter-claims for criminal racketeering.  Summary judgment has been entered

on both counter-claims.  The motion is therefore granted as to the first category of evidence addressed by the motion.

Mattel argues that evidence of cash payments to workers in China is relevant to its counter-claim for unfair competition.  The allegation appears nowhere in Mattel's pleading.  Mattel has also cited no authority for its newfound claim that conduct that occurs entirely outside the state of California can form the basis for an unfair competition claim.  Evidence of MGA's conduct is not just irrelevant to any of Mattel's counter-claims, but also unduly prejudicial to MGA and consumptive of the Court's time and resources.  The motion is granted as to the third category of evidence encompassed by the motion.

Mattel argues that Larian's trades in Mattel stock are relevant to show his bias in favor of both MGA and Larian.  Larian's bias in favor of MGA is obvious and need not be proven with resort to evidence about his transactions in Mattel stock.  Evidence of his stock trading would needlessly consume the Court's resources and result in undue prejudice to Larian.  The motion is granted as to the fourth category of evidence encompassed by the motion.

The motion is granted in its entirety.

## 14.   MGA's Motion in Limine Numbers 14 and 16

MGA's fourteenth and sixteenth motions in limine concern evidence of Omni 808 Investors, LLC's purchase of MGA's revolving line of credit with Wachovia.  This conduct formed the basis for Mattel's counter-claims for violations of the Racketeer Influenced and Corrupt Organizations Act.  Mattel's counter-claim for conspiracy to violate RICO was dismissed as to Omni 808 Investors, LLC.  Summary judgment was later entered on all remaining elements of Mattel's RICO counter-claims.  Evidence about Omni 808 Investors, LLC's purchase of the revolving credit facility, as well as IGWT 826's involvement in that transaction, is therefore irrelevant to MGA's liability, needlessly consumptive of the Court's resources, and unduly prejudicial to MGA, because it exposes MGA to the unrelated charge that it engaged in opportunistic financial dealings.

Such evidence may still be relevant to the punitive damages phase of trial, in order to substantiate (or refute) MGA and Larian's claims about their net worth.  The motion is therefore granted but without prejudice to Mattel's ability to admit such evidence during the punitive phase.

## 15.   MGA's Motion in Limine Number 15 to Exclude Reference to the Prior Proceedings in this Action

MGA's motion is granted as unopposed.

## 17.   MGA's Motion in Limine Number 17 to Exclude References to the Subjective

**Undisclosed Intent of the Parties to Contracts with Mattel**

The Ninth Circuit has already considered, and indeed predicated its decision upon, the very evidence that MGA seeks to exclude.  MGA's motion is denied.

**18.**   **MGA's Motion in Limine Number 18 to Exclude Evidence of Robert Hudnut and Adrienne Fontanella's Modifications to their Inventions Agreements**

Robert Hudnut and Adrienne Fontanella are Mattel employees who claimed to have negotiated modifications to the Employee Confidential and Inventions Agreements they signed after starting work at Mattel.  Mattel has argued that Hudnut and Fontanella's experiences undermine MGA's argument that Bryant's Inventions Agreement was a contract of adhesion.  MGA has disclaimed a contract unconscionability defense.  The motion is therefore stricken as moot.

**19.**   **MGA's Motion in Limine Number 19 to Exclude Evidence of Agreements and Practices Inconsistent with Kaye's Admissions as a Mattel 30(b)(6) Designee**

MGA argues that Mattel's 30(b)(6) designee, Mr. Kaye, has conclusively bound the company on its interpretation of the terms and phrases found in its Employee Confidential and Inventions Agreements.  MGA accordingly seeks to exclude evidence of other agreements and practices at Mattel that contradict Kaye's representations.

Kaye's testimony can be interpreted in a number of reasonable ways, some of which do not contradict the outside "agreements and practices" that MGA seeks to exclude.  For example, Kaye testified that Mattel intended for the term "inventions" to encompass employee ideas.  Kaye also testified that Mattel intended to claim ownership to employee inventions that were reduced to practice on weekends and evenings.  Though MGA points to two instances in which Kaye could not answer questions about the scope of the Inventions Agreement, it is for the fact-finder to resolve the ambiguities in his testimony.  MGA can also use Kaye's testimony to impeach any contradictory representation by Mattel.

MGA's motion is denied.

**20.**   **MGA's Motion in Limine Number 20 to Exclude Evidence Offered by Mattel Expert Ginger McRae**

MGA seeks to exclude the expert opinion of Ginger McRae.  Mattel claims that Ms. McRae's testimony is relevant to the issue of whether a reasonable employee would have expected that a doll concept (potentially created outside the scope of employment) fell within the assignment provision of an employment agreement.  This determination is relevant to the defense of contract unconscionability, which MGA has disclaimed.

The motion is therefore granted for the purposes of opening argument, though the Court will revisit this ruling to the extent that a change of circumstances during trial renders Ms. McRae's testimony of renewed relevance.

**21.  MGA's Motion in Limine Number 21 to Exclude Jeffrey Breslow's Opinions Regarding Common and Understood Employment Practices in the Toy Industry**

Mattel has represented that Mr. Breslow will not testify.  MGA's motion is stricken as moot.

**22.  MGA's Motion in Limine Number 22 to Exclude Testimony Offered by Mattel Expert Angel Gomez**

MGA seeks to exclude the expert opinion of Mr. Angel Gomez on the issue of whether it is "custom and practice in the California workplace" for an employment agreement, like the one signed by Bryant, to encompass ideas and other creative works, no matter the time and place of their conception and reduction to practice.  Mattel argues that Mr. Gomez's testimony is relevant to MGA's defense of contract unconscionability, which MGA has withdrawn.

Mattel also argues that Mr. Gomez's opinion about custom and practice in the toy industry is relevant to establish MGA's knowledge that Bryant's employment agreement encompassed ideas created outside the scope of employment.  MGA's knowledge is an element of Mattel's counter-claim for intentional interference with contractual relations.  However, whether or not it was "commonplace" for employment agreements to include "broad inventions agreement clauses" is irrelevant to whether MGA was aware of the relevant assignment clause in Bryant's agreement, let alone the obligations imposed by that clause.  Gomez's opinion is thus irrelevant to MGA's knowledge of Bryant's particular obligations to Mattel.

The motion is therefore granted for the purposes of opening argument, though the Court will revisit this ruling to the extent that a change of circumstances during trial renders Mr. Gomez's testimony of renewed relevance.

**23.  MGA's Motion in Limine Number 23 to Exclude Evidence of Insurance**

MGA seeks to exclude evidence of its liability insurance coverage, though, by the argument in the motion, MGA appears to also seek the exclusion of indemnification agreements. Mattel concedes that evidence of MGA's insurance coverage is irrelevant to the claims at defenses at issue.  However, Mattel contends that it should be permitted to introduce evidence of MGA's insurance coverage to the extent MGA is permitted to discuss at trial the deleterious impact of this litigation upon MGA's business.  Since MGA will be precluded from introducing evidence of the impact of this lawsuit upon MGA, none of Mattel's arguments apply.  MGA's motion is therefore granted as to the

evidence of its insurance coverage.

MGA's motion is nonetheless denied insofar as it seeks the exclusion of MGA's indemnification agreements with the parties or witnesses to this lawsuit.  The Court has already concluded that such evidence is relevant to establish bias and control.

**24.    MGA's Motion in Limine Number 24 to Exclude Evidence that MGA Fraudulently Concealed Bryant's Involvement in Bratz**

Reserved.

**25.    MGA's Motion in Limine Number 25 to Exclude the Testimony of MGA Expert Ralph Oman**

The ruling on this motion is reserved until the time of trial.  Mattel may not reference Mr. Oman in its opening statement.

**26.    MGA's Motion in Limine Number 26 to Exclude the Testimony of Bruce Green**

Mattel sought to introduce the expert opinion of Mr. Bruce Green to rebut MGA's claim that Mattel's counsel — the law firm of Quinn Emanuel Urquhart and Sullivan LLP — engaged in discovery misconduct by suppressing relevant evidence and suborning false statements by deponents. MGA conceded that its allegations of misconduct by the law firm of Quinn Emanuel were only relevant to MGA's counterclaim in reply for a violation of the Racketeer Influenced and Corrupt Organizations Act.  Summary judgment has been entered against MGA on that counterclaim in reply.  And Mattel does not argue that Mr. Green's expert opinion about Quinn Emanuel's discovery conduct is otherwise relevant.  The motion is granted.

**27.    MGA's Motion in Limine Number 27 to Exclude the Testimony of John Alex**

Mattel intends to introduce the testimony of John Alex for the proposition that Larian and Bryant made false statements in an application to the USPTO.  The motion is reserved and Mattel is precluded from discussing Mr. Alex's opinion during its opening statement.

**28.    MGA's Motion in Limine Number 28 to Exclude the Testimony of Timothy Kinrich**

MGA seeks to exclude the opinion of Mr. Timothy Kinrich.  Mattel intends to introduce Mr. Kinrich's testimony for the proposition that MGA provided greater financial incentives to the Mattel employees that allegedly misappropriated information than to those that did not.  The motion is reserved and Mattel is precluded from discussing Mr. Kinrich during its opening statement.  However, Mattel may argue that MGA disproportionately compensated former Mattel employees who had access

to trade secret information.  An expert may not be necessary for the introduction of such evidence, since MGA's 30(b)(6) designee may be questioned about the compensation received by former Mattel employees.

**29.    MGA's Motion in Limine Number 29 to Exclude References to the "Market Survey" Report Prepared by Edward A. Blair**

MGA seeks to exclude an expert report prepared by Edward A. Blair, in which Mr. Blair concluded, on the basis of a consumer survey, that consumers were unlikely to confuse Mattel's trapezoidal packaging with MGA's trapezoidal packaging.  Mattel's opposition to MGA's motion only argued that Mr. Blair's report was relevant to MGA's claims for trade dress infringement and trade dress dilution.  Summary judgment has been entered against MGA on those claims.

Mattel first argued at oral argument that Mr. Blair's report may undermine MGA's claim that some portion of Bratz profits are attributable to trapezoidal packaging.  But Mr. Blair's conclusions about consumer confusion are irrelevant to whether Bratz appealed to consumers for reasons unrelated to the expressions found in Bryant's creative works.  That Mattel's trade dress was distinguishable from MGA's has nothing to do with the profitability and quality of MGA's trade dress.

MGA's motion is granted.

**30.    MGA's Motion in Limine Number 30 to Exclude Testimony of Michael Wagner**

MGA's motion to exclude the expert testimony of Michael Wagner is reserved.  The Court will set a hearing date for this motion, at which Mr. Wagner will be examined about his conclusions.  Mattel may refer to the amount of damages it is requesting in its opening statement and may state that an expert may be produced on the issue of damages.

**31.    MGA's Motion in Limine Number 31 to Exclude Expert Opinion of Lee Loetz**

Mattel expert Lee Loetz purported to compare the Bryant creative works to which Mattel claims ownership with MGA's Bratz dolls.  His expert report concluded that every Bratz doll infringed Mattel's copyrights in Bryant's works.  As explained by the Court's summary judgment orders, Mr. Loetz at times conflated the unprotectable ideas and elements in Bryant's creative works with those elements that are protectable.  MGA accordingly moves to exclude Mr. Loetz's expert opinion in its entirety, not just because of the deficiencies in his analysis, but also because his analysis allegedly "extends far beyond the scope of Mattel's infringement theory as disclosed in [] interrogatory responses" and is based upon Loetz's "manipulat[ion] [of] exhibits without explanation."

Mr. Loetz's comparisons of Bryant's works to the vast majority of the subsequent generation Bratz dolls are irrelevant and unduly prejudicial to both parties.  His comparisons may

induce the jury to improperly conclude that MGA committed infringement by copying unprotectable elements of Bryant's works.  Moreover, reference to his conclusions about subsequent generation dolls may open the door to discussing the Court's evaluation of Loetz's analysis in its summary judgment order.  That is a line of inquiry otherwise unavailable to MGA because of its irrelevance and the potential that it may improperly leverage the Court's summary judgment ruling to undermine Loetz's credibility.  The motion is granted as to Loetz's conclusions about subsequent generation dolls.

The motion is denied to the extent it concerns Loetz's conclusions about the first generation Bratz dolls, the concept sculpts, Formal Funk Dana and Ooh La La Cloe.

## 32.    MGA's Motion in Limine Number 32 to Exclude Hollander Study

MGA moves to exclude the results of an internet survey conducted by Mr. Hollander. Mr. Hollander concluded that the vast majority of young females identify the Bratz dolls with Bryant's sketches, which Mattel claims is relevant to the intrinsic test for copyright infringement as well as Mattel's claim for character infringement.  MGA's motion is reserved.

## 33.    MGA's Motion in Limine Number 33 to Exclude Opinion of Nicholas Mirzoeff

Mattel has stated that it will not seek to admit Mr. Mirzoeff's testimony at trial.  MGA's motion is stricken as moot.

## 34.    MGA's Motion in Limine Number 34 to Exclude Opinion of Heather McComb

Mattel expert Heather McComb has opined that Bryant's creative works fully rendered the Bratz doll concept and were used as templates for the dolls eventually manufactured and distributed by MGA.  MGA argues that Ms. McComb's opinion should be excluded because she failed to filter out unprotectable elements of Bryant's creative works.  Ms. McComb's testimony, however, is relevant to Mattel's trade secret misappropriation counter-claim, as well as the issue of whether MGA had access to Bryant's works.  MGA's motion is therefore denied.

## 35.    MGA's Motion in Limine Number 35 to Exclude Similarities in Unprotectable Elements

MGA also argues that Mattel should be precluded from identifying similarities in unprotectable elements, like the ideas conveyed by the works at issue.  However, the extrinsic and intrinsic tests for copyright infringement analyze similarities in both ideas and expression.  *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).  The motion is therefore denied.

## 36.    MGA's Motion in Limine Number 36 to Exclude Expert Opinion of Frank Keiser

MGA seeks to exclude the expert opinion of Frank Keiser, who created three dimensional models of the creative works at issue in this case.  MGA argues that the jury should simply compare Bryant's actual works, instead of computerized renderings of those works.  This motion is reserved and Mattel shall make no reference to Mr. Keiser's analysis during its opening statement.

**37.  MGA's Motion in Limine Number 37 to Exclude Theories of Infringement not Found in Mattel's Interrogatory Response**

MGA seeks to exclude Mattel from identifying theories of infringement, or factual bases for infringement, not found in its interrogatory response, which Mattel earlier failed to supplement.  The Court order on the summary judgment motions has definitively narrowed the issues for trial in a manner that precludes Mattel from unduly surprising MGA with any new theories.  Mattel cannot, for example, try and manufacture new theories on which to seek a finding of infringement as to all but two subsequent generation dolls.  As the Court's summary judgment order concluded, "[t]he grant of summary judgment on [the subsequent generation dolls] is absolute."  Mattel's potential damages on its copyright infringement counter-claim will be limited to the first generation Bratz dolls, the two subsequent generation dolls identified in the summary judgment order, and the damages (if any) caused by the potential infringement of the Bryant sculpt.

MGA's motion is granted insofar as it seeks to restrict Mattel to identifying theories of infringement left standing by the Court's summary judgment order.  MGA's motion is otherwise denied.

**38.  MGA's Motion in Limine Number 38 to Preclude Mattel from Introducing Testimony From Witnesses Not Identified in Mattel's Rule 26 Disclosures**

Though it found the time to file dozens of discovery motions, seek hundreds of hours of deposition testimony, and pursue multiple amendments of its pleadings, Mattel neglected to list and supplement the "individual[s] likely to have discoverable information . . . that [Mattel] may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Mattel's witness list identifies eleven individuals never before identified in its Rule 26(a) disclosures.  MGA seeks to exclude these witnesses from testifying on the grounds that Mattel's failure to earlier identify these witnesses was neither "substantially justified" nor "harmless."  Fed. R. Civ. P. 37(c)(1).

Mattel's failure to supplement its Rule 26 disclosures shows a lack of diligence.  But it does not require exclusion of the witnesses because Rule 26 only requires supplementation if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  All eleven "last gasp" witnesses in Mattel's witness list are identified as knowledgeable persons in Mattel's prior discovery responses, though not in Mattel's Rule 26 disclosures.  An argument can be made that Mattel did not make these witnesses

known to MGA when it summarily listed the individuals' names in phone book length discovery responses.  However, Rule 26(e) is silent as to the specificity with which the newly discovered information should be made known to other parties during the discovery process and in writing.

In light of this ambiguity, the Court denies MGA's motion as a matter of discretion.  To limit the prejudice to MGA, Mattel shall submit *all* potential witnesses to deposition during the first two weeks of trial, and each deposition shall be limited to five hours.  The Discovery Master shall be present and shall be contacted immediately by the parties.  All such depositions shall take place in Santa Ana, California.  There will be no surprise witnesses.

### 39.    MGA's Motion in Limine Number 39 to Exclude References to the Work for Hire Doctrine

MGA argues that Mattel should be precluded from arguing that it owned any copyrights in Bryant's works pursuant to the work for hire doctrine, 17 U.S.C. § 101.  MGA argues that Mattel failed to disclose this theory of ownership during the phase 1 trial.  However, as MGA is well-aware, the filing of Mattel's Fourth Amended Answer and Counterclaims washed away predecessor pleadings, as well as the parties' positions in the context of those pleadings.  MGA, for instance, has been able to raise new (and even previously waived) affirmative defenses in response to Mattel's new pleading.  It would be inequitable to restrict the scope of the Fourth Amended Answer and Counterclaims on the basis of representations made before the filing of that pleading.  In all events, MGA has cited no authority — and the Court is aware of no authority — for the proposition that a party is required to disclose every legal theory that it may rely upon at or before the time of trial.  MGA's motion is denied.

### 40.    MGA's Motion in Limine Number 40 to Exclude Certain Categories of Brian Wing Testimony

During his deposition, former MGA executive Brian Wing accused MGA of varied misconduct.  MGA seeks to preclude Mr. Wing from testifying about some of this alleged misconduct at the time of trial.  Many categories of Mr. Wing's testimony are no longer relevant in light of the Court's order on the parties' motions for summary judgment.  The motion is therefore granted as to the following categories of testimony, whose relevance is, in all meaningful respects, restricted to Mattel's defunct racketeering counter-claims: (a) testimony about Larian's instruction to alter Little Tikes financials;[1] (b) testimony about the "Omni transaction";[2] (c) testimony about Larian's distributions to

---

[1] Mattel may not refer to this evidence in its opening statement or affirmatively introduce evidence or testimony of the alleged manipulation of the Little Tikes financials. Mattel may nevertheless inquire into the subject matter in order to rebut testimony about the success of the Little Tikes venture.

[2] This ruling does not apply to the punitive damages phase.

shareholders; (d) testimony about MGA's alleged attempt to write down its legal expenses despite submitting requests for full reimbursement to its insurers; (e) testimony about MGA's compliance with tax and labor laws in China; (f) testimony about MGA's sale of samples and untested products; (g) testimony about MGA's conduct with respect to the forensic auditor; (h) testimony about the movement of themes from the Bratz line to the Moxie line; (i) testimony about the inducement of Bratz licensees to enter into Moxie licensing agreements. Evidence of such conduct bears no relation to the pending claims in this lawsuit. Its admission has the potential to confuse the jury and cause undue prejudice to MGA. Though Mattel claims these facts are relevant to its unfair competition counter-claim, it has elsewhere acknowledged that "statutory unfair competition claims against a competitor are not freewheeling claims that put at issue every complaint one can think of."

MGA's motion is also granted as to evidence of whether MGA executives considered Moxie substantially similar to Bratz. Comparisons between Moxie and Bratz are irrelevant to whether the Bratz dolls infringe Bryant's creative works — a determination the fact-finder makes upon comparing protectable elements of the dolls and Bryant's works.

MGA's motion is denied as overbroad as to the other, largely unspecified, categories of Mr. Wing's potential testimony.

**41.    MGA's Motion in Limine Number 41 to Bifurcate the Trial of Issues Related to Punitive Damages**

MGA's motion is granted as unopposed.

**<u>MATTEL's MOTIONS IN LIMINE</u>**

**1.    Mattel's Motion in Limine Number 1 to Exclude Evidence, Argument, or Reference to whether Mattel would have Marketed Bratz**

Mattel seeks to exclude evidence of its disposition to market Bratz as irrelevant to whether Mattel would have otherwise exploited the work through, for example, a licensing agreement. Mattel's subjective intent to market Bratz is irrelevant to whether Mattel is entitled to recover a reasonable royalty as a result of MGA's copyright infringement. *See Oracle USA, Inc. v. SAP AG*, 2010 WL 334446, at *3 (N.D. Cal. Jan. 28, 2010). However, Mattel's opinion of the types of themes contained in Bryant's creative works is directly relevant to the amount "a willing buyer would have been reasonably required to pay a willing seller" for the Bratz dolls at the time of their alleged misappropriation. *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002). For instance, Mattel did not license the inchoate Toon Teens line of dolls, after concluding that target consumers did not appreciate the product. Its internal research about works like Bratz, or Bratz itself, is directly relevant to the exploitability of the works. Mattel complains about the prejudicial effect that may be caused by the fact-finder's "emotional response to hypothetical evidence going to a non-issue in the case." To the

contrary, evidence that a well-resourced company like Mattel was disinclined to market and produce products similar to Bratz is directly relevant to the value a hypothetical consumer would have paid to license the works.

Mattel's motion is denied.

**2.     Mattel's Motion in Limine Number 2 to Exclude Evidence or Argument Concerning Mattel's Motivations for Filing Suit**

Mattel seeks to exclude evidence that it intended to "litigate" MGA "to death." MGA claims that such evidence is relevant to its unfair competition claim and its unclean hands defense. However, MGA's complaint does not identify Mattel's litigation motive as a predicate to its unfair competition claim. Any such allegation would probably be barred by the *Noerr-Pennington* doctrine anyway. Moreover, MGA's unclean hands defense cannot arise out of Mattel's litigation motives or conduct because "[t]he misconduct that brings the unclean hands doctrine into play must relate directly to the transaction concerning which the complaint is made." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 984 (1999).

Mattel's litigation motive and conduct may nonetheless be relevant to MGA's statute of limitations defense and Mattel's fraudulent concealment theory. For instance, Mattel argues that MGA's concealment of Bryant's involvement in Bratz prevented Mattel from earlier discovering the factual basis for its claims against Bryant and MGA. This argument may be undermined by evidence that Mattel waited to sue until after Bratz achieved commercial success. Such an inference may be reasonably drawn from the evidence relevant to the pending claims and defenses — *e.g.*, the anonymous letter to Eckert, DeAnda's letter to Kaye, MGA's annual profits between 2000 and 2003, and the date this lawsuit was filed.

Thus, MGA is not meaningfully disadvantaged from the exclusion of evidence and testimony that is *only* probative of Mattel's intent in filing this lawsuit. For example, MGA has at various times cited the testimony of former Mattel executive Ron Brawer that Mattel intended to "litigate" MGA "to death." The relevance of this evidence is limited to Mattel's intent in filing this lawsuit, which is itself of limited relevance to MGA's statute of limitations defense. Its prejudicial effect to Mattel far outweighs this probative value, since it forces Mattel to defend its strategy and the damaging allegation that Mattel prefers to compete through litigation. Given MGA's ability to draw reasonable inferences from the time line of this litigation and facts already relevant to other claims, the prejudicial effect of Brawer's testimony and other evidence of Mattel's intent far outweighs its probative value.

Mattel's motion is granted in part and denied in part. MGA is not limited to arguing about Mattel's litigation motives and conduct, though it may not rely upon independent evidence of such motives and/or conduct. The Court will revisit this ruling if Mattel attempts to use outside

evidence to rebut MGA's argument that Mattel had nefarious motives in filing this lawsuit.  In such a circumstance, the Court may permit MGA to introduce its own rebuttal evidence, like Brawer's testimony, of Mattel's litigation motives and conduct.

**3.      Mattel's Motion in Limine Number 3 to Exclude Evidence of the Phase 1 Proceedings**

Mattel's motion is granted as unopposed as to all phase 1 proceedings except the post-phase 1 injunctive relief.

**4.      Mattel's Motion in Limine Number 4 to Exclude Evidence Regarding the Availability of Enhanced Damages, Attorneys' Fees or Injunctive Relief**

Mattel's motion is granted as unopposed.

**5.      Mattel's Motion in Limine Number 5 to Exclude References to the Wrongful Injunction and Adverse Consequences of that Injunction**

Summary judgment has been entered on MGA's counterclaim in reply for violations of the Racketeer Influenced and Corrupt Organizations Act.  The post phase 1 injunctive relief is no longer relevant to any of the pending claims or defenses in this lawsuit.  MGA's argument that the costs imposed by the injunction are relevant to a set-off defense is a new and unconvincing attempt to circumvent the logic in the Court's order dismissing MGA's counterclaim in reply for wrongful injunction.  Mattel's motion is granted.

**6.      Mattel's Motion in Limine Number 6 to Bifurcate the Punitive Phase of Trial**

Mattel's motion is granted as unopposed.

**7.      Mattel's Motion in Limine Number 7 to Bifurcate Trial of Equitable Claims and Defenses**

Mattel's motion is denied to the extent that it seeks to preclude the jury from considering all evidence relevant to MGA's equitable claims and defenses.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001); *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply*, 106 F.3d 894, 898-99 (9th Cir. 1997).  Mattel summarily argues that twenty three categories of evidence should be excluded because such evidence is irrelevant to MGA's claims and defenses.  Some of this evidence has been addressed in the context of other motions in limine.  Other evidence identified by Mattel has been addressed in the Court's order on the motions for summary judgment.  The Court reserves judgment on the remaining evidence until the time of trial.

8.     **Mattel's Motion in Limine Number 8 to Exclude Evidence that Bryant's work for MGA while at Mattel was a "Tryout" or "Test Project"**

Mattel argues that MGA should be precluded from taking a position that *may* contradict its earlier discovery responses.  Mattel is, however, free to present MGA's prior discovery responses to the fact-finder at the time of trial.  The motion is denied.

9.     **Mattel's Motion in Limine Number 9 to Exclude Evidence or Argument Regarding the MGA Parties' Reliance on Advice of Counsel**

Mattel argues that MGA's failure to plead advice of counsel as an affirmative defense precludes any attempt to shield itself using counsel's advice.  However, the Court's September 22, 2010 order found that MGA had waived the protections of the attorney-client privilege as to all pre-October 19, 2000 communications that concerned the date of Bratz's conception.  The order compelled MGA to produce certain email communications that were reviewed by the Court *in camera*.

Mattel claims that the limited scope of the production obligation precludes the type of wholesale waiver that entitles a party to rely upon counsel's advice.  But the order expressly contemplated that Mattel would seek additional discovery into the advice MGA received from its counsel, and instructed Mattel to seek the Court's leave prior to seeking such discovery.  Mattel's hesitation in seeking such discovery does not diminish the scope of the waiver found by the Court.

Mattel's motion is denied.

10.    **Mattel's Motion in Limine Number 10 to Exclude Evidence to Alleged Racial, Religious and Ethnic Bias**

Mattel seeks to exclude evidence of "racial, religious or ethnic bias on the part of the jury in Phase I, the Forensic Auditor, or Mattel."  Mattel also seeks to exclude evidence of "Barbie's alleged status as an 'Aryan' icon," emblematic of "white-skin privilege" and "white domination."  MGA does not oppose the exclusion of the specific language referred to in Mattel's motion, but argues that the racial contrast between Bratz and Barbie is relevant to Mattel's allegations of lost opportunity and lost profits.  The motion is therefore unopposed, and on that basis, granted *only as to the specific language* targeted by lines 9 through 12 of Mattel's Notice of Motion.

11.    **Mattel's Motion in Limine Number 11 to Exclude Evidence Regarding Mattel's Inventions Agreement**

Mattel seeks to exclude two categories of evidence and/or argument concerning its Employee Confidential and Inventions Agreement: (a) evidence about the unconscionability of the agreement; and (b) evidence of prior versions of the agreement.

At the hearing on these motions, counsel for MGA represented that MGA will not be pursuing an unconscionability defense. The motion is therefore stricken as moot as to the first category of evidence.

Both the Ninth Circuit and this Court have expressly considered prior versions of Mattel's Inventions Agreement relevant to the interpretation of ambiguous terms in Bryant's agreement, as well as the credibility of Mattel's testimony about its intent. Mattel's motion is denied as to the second category of evidence.

### 12.    Mattel's Motion in Limine Number 12 to Exclude Evidence of Other Employees' Conduct

Mattel seeks to exclude evidence that its employees or former employees (other than those referenced in the Fourth Amended Answer and Counterclaims) worked for third parties. Mattel also seeks to exclude evidence of its response to such conduct. Mattel's response to employee misconduct is directly relevant to the reasonableness of Mattel's efforts to maintain the secrecy of its trade secret information. Mattel's motion is denied.

### 13.    Mattel's Motion in Limine Number 13 to Exclude Evidence Relevant to MGA's Statute of Limitations Defense

The Court's order on the motions for summary judgment held that the fact-finder should be allowed to determine the timeliness of Mattel's counter-claims. Mattel's motion is denied.

### 14.    Mattel's Motion in Limine Number 14 to Preclude MGA from Denying that Its Trade Secrets were Disclosed to the Press and Retailers

Mattel seeks to conclusively establish that the information Mattel allegedly purloined from MGA's toy fair showrooms had been disclosed to the press and retailers. The Court has already determined that there is a genuine issue of material fact as to the content and extent of MGA's public disclosure of the alleged trade secrets displayed at its toy fair showrooms.

Mattel's motion is denied.

### 15.    Mattel's Motion in Limine Number 15 to Exclude Evidence of Spoliation

MGA's counterclaim in reply for violations of the Racketeer Influenced and Corrupt Organizations Act alleged that Mattel and its counsel committed spoliation and obstruction of justice by engaging in discovery misconduct, including but not limited to the alteration of an outside consultant's report, the deletion of emails and documents relevant to the phase 1 proceeding, and the suppression of evidence concerning Mattel's market intelligence group. Summary judgment has been entered against

MGA on its RICO counterclaim in reply, rendering irrelevant the vast majority of the conduct giving rise to the spoliation and obstruction of justice allegations.  However, evidence concerning Mattel's other acts of suppression may be relevant to MGA's allegation that Mattel fraudulently concealed the market intelligence group's conduct, thereby tolling the statute of limitations.

### 16. Mattel's Motion in Limine Number 16 for an Adverse Inference from Castilla's Invocation of his Fifth Amendment Right

Mattel's motion is denied for the reasons discussed in footnote 19 of the Court's order on the motions for summary judgment.

### 17. Mattel's Motion in Limine Number 17 to Exclude Evidence Concerning the Reasons for the Creation of Mattel Servicios

Mattel seeks to exclude evidence that Mattel Servicios was created in order to shield Mattel Mexico's profits from access by its employees.  Machado concedes that such evidence is generally irrelevant to any of the pending claims and defenses, but Machado argues that Mattel has put the reason for Mattel Servicios' existence at issue by claiming that Mattel Servicios was created in order to serve Mattel Mexico's interests.  The reason for Mattel Servicios' existence is no longer relevant because summary judgment has been entered on Mattel's counter-claims against Machado for breach of contract, breach of fiduciary duty, breach of duty of loyalty, and conversion.  The motion is granted.

### 18. Mattel's Motion in Limine Number 18

Mattel seeks to exclude three categories of evidence: (a) evidence that Mattel conducted (i) electronic and (ii) video surveillance of its own employees, its former employees, or Isaac Larian; and (b) evidence that Mattel internally used the term "NHB" to refer to MGA.  Evidence of Mattel's efforts to follow its employees reveals the extent of its efforts to maintain the secrecy of its trade secret information.  Mattel's surveillance of Larian is also relevant to whether Larian engaged in the theft of trade secret information.  Finally, Mattel's use of the term "NHB" internally is not independently relevant, but MGA should not be precluded from introducing otherwise relevant evidence simply because the term "NHB" appears in the document.

Mattel's motion is denied.

### 19. Mattel's Motion in Limine Number 19 to Exclude References to Mattel's Mediation with Pablo Vargas

Mattel seeks to exclude evidence that it engaged in mediation discussions with Pablo Vargas prior to entering into a settlement with Vargas.  The motion is denied, because the existence of

such discussions, as well as their content, is critical to the credibility of Vargas' testimony.

**20.     Mattel's Motion in Limine Number 20 to Preclude MGA from Using the Counterclaim in Reply Allegations in Support of its Unfair Competition Claim**

MGA's counsel previously represented that MGA's unfair competition claim is not predicated upon the conduct of Mattel's market intelligence group.  MGA's attempt to reverse its prior position will cause undue prejudice to Mattel because the Court never considered MGA's newly minted position at the motion to dismiss or summary judgment stages.  *See GSI Group, Inc. v. Sukup Mfg., Co.*, 641 F. Supp. 2d 732, 737-38 (C.D. Ill. 2008).  Indeed, Mattel and the Court relied upon MGA's counsel's representations during the discovery process, by restricting the scope of Mattel's discovery to MGA's trade secret misappropriation counterclaim in reply.  *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001).  Most importantly, MGA's counterclaim in reply for trade secret misappropriation has survived both the motion to dismiss and summary judgment phases, meaning that MGA can seek relief for the conduct of Mattel's market intelligence group.  In sum, Mattel suffers undue prejudice if MGA is allowed to predicate its unfair competition claim on the conduct of Mattel's market intelligence group.  MGA, by contrast, suffers no prejudice if it is precluded from predicating its claim on such conduct.

Mattel's motion is granted.

**21.     Mattel's Motion in Limine Number 21 to Exclude Evidence Concerning MGA's Counterclaims in Reply**

Mattel seeks to exclude evidence of certain misconduct alleged in MGA's counterclaims in reply.  The Court's order on the motions for summary judgment, as well as other rulings on the motions in limine, resolve the vast majority of the instant motion in limine.  Mattel's motion is otherwise denied.

**22.     Mattel's Motion in Limine Number 22**

Mattel seeks to exclude evidence of dozens of "bad acts" that, it claims, do not relate to the pending claims and defenses.

Mattel first seeks to exclude evidence that its products were recalled for containing lead.  However, MGA should be able to rely upon the fact of that recall, as well as its consequences upon Mattel's business good will, in order to rebut Mattel's claim that its lost market share and profits during the time period in question resulted from the sales of the allegedly infringing Bratz dolls.  Mattel argues that facts about its product recalls are intended to do nothing more than "dirty up" the company at trial.  But the reason why Mattel's product recall has the potential to diminish its image in the eyes of the fact-finder also happens to be the reason why the product recall arguably hurt Mattel's standing with

MINUTES FORM 11 DOC                                          Initials of Deputy Clerk kp
CIVIL - GEN                                                         Page 22 of 27

the very consumers and retailers who allegedly decreased their spending on Mattel's products during the rise of Bratz.  Mattel's motion is denied as to the first category of evidence.

Second, Mattel seeks to exclude evidence that it engaged in acts of securities fraud or violations of the antitrust laws.  MGA concedes that it does not seek to introduce evidence of securities fraud by Mattel.  Mattel also seeks to exclude evidence of its alleged violations of the antitrust laws, but does not identify the specific conduct at issue.  Mattel's motion is granted as unopposed as to evidence of securities fraud and otherwise denied as to the second category of evidence.

Third, Mattel seeks to exclude evidence of its litigation tactics.  The Court has already concluded that the prejudicial effect of independent evidence of Mattel's litigation conduct outweighs the probative value of such evidence.  In reference to its statute of limitations defense, MGA can still argue that Mattel would not have sued MGA before Bratz's commercial success.  If Mattel attempts to rebut this argument with independent evidence about its motivations in filing suit, MGA may rebut such evidence with Brawer's testimony and other evidence of Mattel's motives and conduct.  Mattel's motion is granted in part and denied in part as to the third category of evidence.

Fourth, Mattel seeks to exclude evidence of the manner in which it treated its employees.  This request for exclusion is overbroad: it could, for example, include actual or threatened layoffs at Mattel that motivated the departure of the former Mattel employees alleged to have misappropriated Mattel's trade secret information.  Such evidence could rebut Mattel's allegation that the employees left Mattel for MGA in order to effectuate the theft of "Mattel confidential and proprietary information." 4AAC ¶ 102.  Mattel's failure to properly narrow this request for exclusion renders it ill-fit for resolution at this stage; the Court will address more specific objections during trial.  Mattel's motion is denied as to the fourth category of evidence.

Fifth, Mattel seeks to exclude evidence that a former General Manager of Mattel Mexico stated that he wanted to see Machado, Trueba, and Vargas "behind bars" or "thrown in prison."  MGA is mistaken that the evidence is admissible because it is probative of "Mattel's motives for filing its Counterclaim for Misappropriation of Trade Secrets."  Mattel's intent in filing that counter-claim is not and cannot be at issue under the *Noerr-Pennington* doctrine.  Mr. Zalzman's statement is nevertheless relevant to his bias, especially because Mattel contends that his motivations (and biases) are distinct from Mattel's.  MGA may introduce evidence of Mr. Zalzman's statement in rebutting his affirmative testimony at trial.

Sixth, Mattel seeks to exclude evidence of the operation of a "brothel" or "whorehouse" at a Mattel Mexico facility.  Mattel's motion is granted as unopposed as to this category of evidence.

Seventh, Mattel seeks to exclude evidence that a Mattel security officer and potential witness named Jaime Elias "was dismissed from the LAPD as a result of a domestic dispute with his wife at the time."  Mattel's motion is granted as unopposed as to this category of evidence.

Eighth, Mattel seeks to exclude evidence that "Mattel or Mattel Mexico has bribed or attempted to bribe Mexican officials and/or contributed to Mexican politicians." MGA concedes this evidence should be excluded, unless Mattel is permitted to introduce evidence of similar conduct by MGA and its subsidiaries. The Court has already granted as unopposed MGA's motion to exclude evidence of bribes to foreign officials. Mattel's motion is therefore granted as unopposed as to the eighth category of evidence.

Ninth, Mattel seeks to exclude evidence or argument that Mattel Chief Executive Officer Robert Eckert engaged in insider trading. MGA again concedes the irrelevance of such evidence, but argues that it should be admissible to the extent Mattel is permitted to introduce evidence of Larian's trading in Mattel stock. The Court has granted MGA's motion to exclude evidence of Larian's stock trades. Mattel's motion is therefore granted as unopposed as to the ninth category of evidence.

Tenth, Mattel seeks to exclude evidence that evidence was "planted" at MGA Mexico's offices in order to frame Machado, Vargas, and Trueba for the theft of Mattel's trade secret information. Although such evidence and argument is highly relevant to whether the three employees misappropriated Mattel information to MGA Mexico, Mattel argues that exclusion is necessary because MGA Mexico's 30(b)(6) designee was unable to substantiate its accusation that the documents were planted. This is an issue ill-fit for resolution by a motion in limine. Mattel was denied summary judgment on the issue of whether the former Mattel Servicios employees misappropriated information. The fact-finder should be able to evaluate the evidence, and all theories that can be drawn from the evidence, in resolving this genuine issue of material fact. Mattel's motion is denied as to the tenth category of evidence.

Eleventh, Mattel seeks to exclude evidence that its head of security, Richard DeAnda, exchanged token gifts with Canadian law enforcement officials. Mattel's motion is granted as unopposed as to this category of evidence.

### 23.     Mattel's Motion in Limine Number to Exclude Evidence that Mattel Intimidated Third Party Licensees and Industry Organizations NPD, CARU and TIA to Take Actions Adverse to MGA

Mattel seeks to exclude evidence or testimony that it complained about MGA to three industry organizations who thereafter took adverse action against MGA: (1) toy industry sales statistician NPD Funworld ("NPD"); (2) the Children's Advertising Review Unit ("CARU"); and (3) the Toy Industry Association ("TIA") that award an annual Toy of the Year award. Mattel also seeks to exclude evidence that it intimidated third party licensees out of doing business with MGA. Mattel argues that such evidence should be excluded for two reasons, neither of which is convincing.

First, Mattel argues that none of this conduct, if true, gives rise to liability under MGA's claim for unfair competition. Mattel contends that an unfair competition plaintiff is limited to the

recovery of lost money or property.  The Court already rejected Mattel's argument in its order on the motions for summary judgment, upon concluding that "[t]here is a genuine issue of material fact as to whether MGA lost money as a result of Mattel's obstruction of its relationships with licensees and distributors."

Second, Mattel argues that evidence of its conduct should be excluded as unduly prejudicial, whether or not such evidence is relevant to MGA's unfair competition claim.  There is no authority for the proposition that the very conduct that *gives rise to the underlying claim* should be excluded as unduly prejudicial.  Evidence of Mattel's conduct may be prejudicial because it may have constituted unfair competition.

Mattel's motion is denied.

**24.    Mattel's Motion in Limine Number 24 to Exclude Testimony of Undisclosed Witnesses**

Mattel seeks to exclude the testimony of seven individuals on MGA's witness list but not otherwise identified in MGA's Rule 26 disclosures.  Notwithstanding MGA's lack of diligence in timely supplementing its Rule 26 disclosures, each of the potential witnesses has been "made known to [Mattel] during the discovery process." Fed. R. Civ. P. 26(e).  Moreover, MGA's late identification of these individuals as potential witnesses is harmless because Mattel will be permitted to depose all of these individuals before they testify.  In line with its ruling on MGA's twenty-fourth motion in limine, the Court denies Mattel's motion.  MGA shall make available the potential witnesses for deposition during the first two weeks of trial.  Each deposition shall be limited to five hours and the Discovery Master shall be present.

**25.    Mattel's Motion in Limine Number 25 to Exclude Evidence and Argument Relating to a Prior Civil Litigation and Bankruptcy Proceeding Involving Non-Party Witness Brian Wing**

Mattel seeks to exclude evidence about former MGA executive and Mattel witness Brian Wing.  More than seventeen years ago, Wing was found liable of slander.  Such conduct is too temporally remote to bear on Wing's credibility.  *See United States v. Kennedy*, 714 F.2d 968, 973 (9th Cir. 1983).  Its introduction will cause undue prejudice, especially in light of the sympathetic circumstances surrounding the target of Wing's slander.  Mattel's motion is granted.

**26.    Mattel's Oral Motion in Limine to Exclude Evidence of Settlement Agreement with Carter Bryant**

Mattel orally moved to exclude evidence of its settlement with Carter Bryant.  In ordering the unredacted production of the settlement agreement, the Court has already recognized its high

relevance.  The Court specifically held that the fact of Mattel's settlement with Bryant, as well as the terms of that settlement, are relevant to Mattel's control over Bryant and Bryant's bias.  Mattel's oral motion in limine is denied.  *See ABF Capital Mgmt. v. Askin Capital*, No. 96 Civ. 2978 (RWS), 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000).

### 27.    Mattel's Motions in Limine to Exclude Expert Opinions

Mattel's first through fifth, and seventh, motions in limine to exclude expert opinion are reserved.  Mattel's sixth "Daubert" motion in limine is stricken as moot in light of the fact that summary judgment has been entered against MGA on its claims for trade dress infringement and trade dress dilution.  MGA may not reference the specific experts identified by Mattel's motions in limine, though MGA may discuss the conclusions reached by these experts.

### Machado's Motions In Limine

### 1.    Machado's Motion in Limine Number 1 to Exclude References to Prior Invocation of the Fifth Amendment

Machado invoked his Fifth Amendment privilege against self-incrimination during his initial depositions.  In January 2010, the Court overruled Machado's invocation of the Fifth Amendment and ordered Machado to substantively respond to Mattel's deposition questions.  Machado eventually complied with the Court's order.

Machado argues that his prior invocations of the Fifth Amendment are unduly prejudicial.  He also argues that the jury may not draw an adverse inference from such invocations, since he responded to Mattel's questions in subsequent depositions.  Mattel responds that the jury should learn about Machado's prior invocations of the Fifth Amendment to the extent he claims no memory of the relevant events giving rise to Mattel's counter-claims.  In essence, Mattel argues that Machado should have testified about the relevant events while his memory was still fresh.

Machado's Fifth Amendment invocations may be admissible for the impeachment purpose identified by Mattel.  Machado's motion is otherwise granted.

### 2.    Machado's Motion in Limine Number 2 to Exclude Deposition Testimony of Pablo Vargas

Machado seeks to exclude the deposition testimony rendered by former Mattel Servicios employee Pablo Vargas.  Vargas, Machado, and Trueba resigned from Mattel Servicios and simultaneously accepted positions of employment with MGA Mexico.  Vargas has since entered into a settlement agreement with Mattel and Mattel Mexico.  He testified at deposition that the three Mattel Servicios employees misappropriated Mattel trade secret information prior to their departure.  Machado

MINUTES FORM 11 DOC                                      Initials of Deputy Clerk kp
CIVIL - GEN                                              Page 26 of 27

argues that his deposition testimony lacks credibility because it was improperly manipulated by Mattel's attorneys.

The fact-finder, and not this Court, must determine Vargas' credibility.  The Court has already ruled that Machado may introduce evidence of Vargas' settlement with Mattel, as well as the pre-settlement discussions between Mattel and Vargas.  Machado may even argue that Mattel induced Vargas to testify in a manner that was harmful to Machado and/or MGA.

Upon considering the surrounding circumstances, the fact-finder may decide to give Vargas' live testimony little weight.  The Court's exclusion of deposition testimony that could be used to impeach Vargas would improperly substitute the Court's credibility determinations for the fact-finder's.  Machado's motion is denied.

The Clerk shall serve this minute order on all parties to the action.