QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS**<br><br>Pre-trial Conference:   January 4, 2011<br>Trial Date:                    January 18, 2011 |

505.07975/3930172.1

Mattel, Inc. and Mattel de Mexico ("Mattel") hereby submit the following third amended proposed jury instructions in this matter pursuant to Local Rule 51-1.  Mattel submits these proposed jury instructions in addition to the jury instructions that parties jointly proposed and submitted to the Court on January 15, 2011 (Docket No. 9633).  Mattel requests and reserves the right to amend, modify, withdraw and/or supplement the following instructions before or during the trial of this matter.  Mattel intends to submit further proposed jury instructions depending upon and based upon rulings issued in connection with motions *in limine* and other pre-trial or trial motions, and the evidence and theories proffered by the parties during the course of the trial.  *See* Fed. R. Civ. P. 51A.  Mattel submits herein instructions on certain equitable issues without prejudice to and without waiving Mattel's position that MGA's equitable claim and defenses are not triable to a jury.

DATED:  January 24, 2011          QUINN EMANUEL URQUHART & SULLIVAN. LLP


                                  By  */s/ Michael T. Zeller*
                                     Michael T. Zeller
                                     Attorneys for Mattel, Inc. and Mattel de
                                     Mexico. S.A. de C.V.

-1-

# <u>TABLE OF CONTENTS</u>

| Number | Title | Source | Page |
|---|---|---|---|
| **Preliminary Instructions** | | | |
| 1.19 | OUTLINE OF TRIAL | 9th Cir. Civ. Jury Instr. 1.19 (2007). | 1 |
| MSJI No. 1 | USE OF ADMISSIONS OF A PARTY | Fed. R. Civ. P. 36(b). | 3 |
| 1.9 | DIRECT AND CIRCUMSTANTIAL EVIDENCE | 9th Cir. Civ. Jury Instr. 1.9 (2007). | 5 |
| 2.8 | IMPEACHMENT EVIDENCE— WITNESS | 9th Cir. Civ. Jury Instr. 2.8 (2007) (modified); Fed. R. Evid. 801(d)(1) & 801(d)(2); *Harris v. Vector Marketing Corp.*, 656 F. Supp. 2d 1128, 1133 (N.D. Cal. 2009); *Palmer v. Pioneer Inn Assocs., Ltd.*, 338 F.3d 981, 990 (9th Cir. 2003); *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir. 1988); *General Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 281 (N.D. Cal. 1976). | 7 |
| **Instructions for Mattel's Claims for Ownership of Bratz Rights** | | | |
| MSJI No. 2 | OWNERSHIP OF INVENTIONS— INVENTIONS AGREEMENT | MSJ Order (Dkt. No. 9538 at 4-12); Inventions Agreement; *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010). | 9 |
| CACI 314 | INTERPRETATION- DISPUTED TERM— INVENTIONS | CACI 314 (modified). | 12 |
| CACI 314 | INTERPRETATION— DISPUTED TERM— "AT ANY TIME DURING MY EMPLOYMENT BY THE COMPANY" | CACI 314 (modified). | 14 |
| CACI 317 | INTERPRETATION— CONSTRUCTION OF CONTRACT AS A WHOLE | CACI 317. | 16 |
| CACI 318 | INTERPRETATION— CONSTRUCTION BY CONDUCT | CACI 318. | 18 |
| MSJI No. 3 | INTERPRETATION— MUTUAL INTENT | Cal. Civ. Code 1636; *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998). | 20 |
| 17.9 | COPYRIGHT INTERESTS—WORK | 9th Cir. Civ. Jury Instr. 17.9 (2007). | 22 |

| | | | |
|---|---|---|---|
| | MADE FOR HIRE (17 U.S.C. § 201(b)) | | |
| MSJI No. 4 | OWNERSHIP OF INVENTIONS—IMPLIED-IN-FACT CONTRACT | *Silica Tech, L.L.C. v. J-Fiber, GmbH*, 2009 WL 2579432, at *13 (D. Mass. May 19, 2009); *Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed. Cir. 2000); *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996); *Ultimax Cement Mfg. v. CTS Cement Mfg. Corp.*, 2004 WL 3770498, at *16 (C.D. Cal. Dec., 6, 2004), *reversed on other grounds by* 587 F.3d 1339, 1343 (Fed. Cir. 2009). | 24 |
| MSJI No. 5 | OWNERSHIP OF INVENTIONS—AGENCY | Cal. Civ. Code § 2330; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416-417 (2007); *Bate v. Marsteller*, 232 Cal. App. 2d 605, 616-617 (1965); *Van de Kamp v. Bank of America*, 204 Cal. App. 3d 819, 835 (1988); *Savage v. Mayer*, 33 Cal. 2d 548, 551 (1949). | 26 |
| MSJI No. 6 | OWNERSHIP OF INVENTIONS—CORPORATE OPPORTUNITY | *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791, 796-799 (1962*); Sequoia Vacuum Systems v. Stransky*, 229 Cal. App. 2d 281, 286 (1964); *Components for Research, Inc. v. Isolation Prods., Inc.*, 241 Cal. App. 2d 726, 729 (1966); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 982 (N.D. Cal. 2006); *C.H. Reynolds Elec., Inc. v. Spears*, 2004 WL 296994, at *7 (Feb. 17, 2004). | 28 |
| **Instructions for Mattel's Tort Claims** | | | |
| CACI 2201 | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | CACI 2201; *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990); *PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579, 601 (1996); *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998); *Kasparian v. County of Los Angeles*. 38 Cal. App. 4th 242, 261 (1995). | 30 |
| CACI 2203 | INTENT OR KNOWLEDGE | CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, at *4 (N.D. Cal. May 16, 2007); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966). | 32 |
| CACI | AIDING AND | CACI 3610. | 34 |

| | | | |
|---|---|---|---|
| 3610 | ABETTING TORT—ESSENTIAL FACTUAL ELEMENTS | | |
| MSJI No. 7 | BREACH OF THE DUTY OF LOYALTY | CACI 4102; *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs.*, Inc., 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863; *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987) | 36 |
| MSJI No. 8 | SCOPE OF DUTY OF LOYALTY | *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1037-38 (N.D. Cal. 2009); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416-417 (2007). | 38 |
| CACI 2100 | CONVERSION—ESSENTIAL FACTUAL ELEMENTS | CACI 2100. | 40 |
| **Instructions for Mattel's Trade Secret Claims** | | | |
| CACI 4401 | MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS | CACI 4401 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs.*, LLC, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005). | 42 |
| CACI 4402 | "TRADE SECRET" DEFINED | CACI 4402 (modified). | 45 |
| CACI 4403 | SECRECY REQUIREMENT | CACI 4403. | 47 |
| MSJI No. 9 | ACTUAL USE BY TRADE SECRET HOLDER NOT REQUIRED | *Cal. Civ. Code* § 3426.1; *Leatt Corp. v. Innovative Safety Tech.*, LLC, 2010 WL 1526382, at *5 (S.D. Cal. Apr. 15, 2010); *Contour Design, Inc. v. Chance Mold Steel Co.*, Ltd., 2010 WL 174315, at *5 (D. N.H. Jan. 14, 2010); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 221 (2010); *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1287 (1990); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 | 49 |

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

505.07975/3930172.1

| | | | |
|---|---|---|---|
| | | WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs.*, LLC, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005). | |
| MSJI No. 10 | CONCEPTS MAY BE TRADE SECRETS | *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003); 2 Roger M. Milgrim, Milgrim on Trade Secrets § 9.05[4], at 9-487-9-488.2 & n. 36 (Eric E. Benson, ed., 2003 rev. ed. & 2009 supp.); *Friedman v. Quest Int'l Fragrances*, 58 Fed. Appx. 359, 360 (9th Cir. 2003); *Russo v. Ballard Medical Prods.*, 550 F.3d 1004, 1011-12 (10th Cir. 2008); *Contour Design, Inc. v. Chance Mold Steel Co. Ltd.*, 2010 WL 174315, at *8 (D.N.H., Jan. 14, 2010); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089-1090 (N.D .Cal. 2006); *Mattel, Inc. v. MGA Entertainment, Inc.*, 2010 WL 5422504, at *23 (C.D. Cal. Dec. 27, 2010). | 51 |
| MSJI No. 11 | TRADE SECRETS MAY EXIST IN COMBINATION OF ELEMENTS | *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089-1090 (N.D. Cal. 2006). | 53 |
| MSJI No. 12 | INFORMATION OBTAINED THROUGH REVERSE ENGINEERING MAY BE TRADE SECRETS | Court Order, dated Dec. 27 , 2010 (Dkt. No. 9538), at 49 (quoting Legis. Com. com. to Civ. Code § 3426.1; citing *Hoffman-LaRouche Inc. v. Yoder*, 950 F. Supp. 1348, 1358 (S.D. Ohio 1997)); Leg. Com. com. to Cal. Civ. Code § 3426.1. | 55 |
| CACI 4412 | "INDEPENDENT ECONOMIC VALUE" EXPLAINED | CACI 4412 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs., LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005). | 57 |
| CACI 4404 | REASONABLE EFFORTS TO PROTECT SECRECY | CACI 4404. | 59 |
| MSJI No. 13 | NOT MARKING AS CONFIDENTIAL IS NOT DETERMINATIVE | MSJ Order (Dkt. 9538 at 30). | 62 |
| MSJI No. 14 | CONFIDENTIALITY AGREEMENTS AS REASONABLE EFFORTS TO | *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993). | 64 |

-iv-

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

| | MAINTAIN SECRECY | | |
|---|---|---|---|
| CACI 4405 | MISAPPROPRIATION BY ACQUISITION | CACI 4405. | 66 |
| CACI 4408 | IMPROPER MEANS OF ACQUIRING TRADE SECRET | CACI 4408. | 68 |
| CACI 4406 | MISAPPROPRIATION BY DISCLOSURE | CACI 4406. | 70 |
| CACI 4407 | MISAPPROPRIATION BY USE | CACI 4407. | 72 |
| CACI 3701 | LIABILITY FOR AGENTS' MISAPPROPRIATION | CACI 3701. | 74 |
| CACI 3705 | EXISTENCE OF "AGENCY" RELATIONSHIP DISPUTED | CACI 3705. | 76 |
| CACI 3710 | RATIFICATION | CACI 3710; *Ajaxo v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21, 67-68 (2005); *Roberts v. Ford Aerospace and Commc'ns Corp.*, 224 Cal. App. 3d 793, 802 (1990); *In re Estate of Stephens*, 28 Cal. 4th 665, 673 (2002); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1136-37 (E.D. Cal. 2008); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368 (2000). | 78 |

**Instructions for Mattel's Copyright Claims**

| 17.1 | COPYRIGHT— DEFINED (17 U.S.C. § 106) | 9th Cir. Civ. Jury Instr. 17.1 (2007). | 80 |
|---|---|---|---|
| 17.4 | COPYRIGHT INFRINGEMENT— OWNERSHIP AND COPYING (17 U.S.C. § 501A–(b)) | 9th Cir. Civ. Jury Instr. 17.4 (2007) (modified). | 83 |
| 17.13 | COPYRIGHT INTERESTS— DERIVATIVE WORKS (17 U.S.C. §§ 101, 106(2)) | 9th Cir. Civ. Jury Instr. 17.20 (2007) (modified). | 85 |
| 17.12 | COPYRIGHT INFRINGEMENT— ORIGINALITY | 9th Cir. Civ. Jury Instr. 17.12 (2007). | 87 |
| 17.3 | COPYRIGHT— SUBJECT MATTER— IDEAS AND EXPRESSION (17 U.S.C. § 102(b)) | 9th Cir. Civ. Jury Instr. 17.3 (2007). | 89 |
| 17.14 | COMPILATION (17 U.S.C. § 101) | 9th Cir. Civ. Jury Instr. 17.14 (2007). | 91 |

| MSJI No. 15 | COPYRIGHTABILITY OF CHARACTERS | *Bach v. Forever Living Products U.S., Inc.*, 473 F. Supp. 2d 1127, 1134-1135 (W.D. Wash. 2007) *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 235 (2d Cir. 1983); *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 755 (9th Cir. 1978), cert. denied, 439 U.S. 1132 (1979); *Anderson v. Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. 1989); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998) (Godzilla); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James Bond); *Funky Films*, 462 F.3d at 1078-79; *Olson*, 855 F.2d at 1452; *Anderson v. Stallone*, 11 U.S.P.Q.2d 1161, 1166-67 (C.D. Cal. 1989); *Shaw*, 919 F.2d at 1363. | 93 |
|---|---|---|---|
| 17.15 | COPYING—ACCESS AND SUBSTANTIAL SIMILARITY | 9th Cir. Civ. Jury Instr. 17.15 (2007) (modified); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993); *Twentieth Century Fox Film Corp. v. Dastar Corp.*, 2000 WL 35503105, at *10 (C.D. Cal. Jan. 4, 2000); *Funky Films, Inc., Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006); *Three Boys v. Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). | 95 |
| 17.16 | COPYRIGHT— ACCESS DEFINED | 9th Cir. Civ. Jury Instr. 17.16 (2007). | 97 |
| MSJI No. 16 | COPYRIGHT INFRINGEMENT— SUFFICIENT SIMILARITY | *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-916 (9th Cir. 2010); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 916 (7th Cir. 2007); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 1993 WL 156199 (W.D.N.Y. March 19, 1993); *Fisher-Price Toys v. My Toy Co.*, 385 F. Supp. 218, 220 (S.D.N.Y. 1974); *Mattel v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994); *Aliotti v. R. Dakin & Co.*, 831 F.2d | 99 |

| | | | |
|---|---|---|---|
| | | 898, 901 (9th Cir. 1987); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 824 (2002); *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1228 (C.D. Cal. 2006). | |
| MSJI No. 17 | SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE" | *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *Shaw v. Lindheim*, 919 F.2d 1353, 1361 62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir. 1996); *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004); *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170 (9th Cir. 2003); *3D, Ltd. v. Spectratek Technologies, Inc.*, 41 Fed. Appx. 931 (9th Cir. 2002). | 103 |
| MSJI No. 18 | COPYRIGHT INFRINGEMENT— EVIDENCE OF COPYING OF NAMES OR TITLES | *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1994); *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956). | 105 |
| MSJI No. 19 | COPYRIGHT INFRINGEMENT— THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS | *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211. 1222-23 (9th Cir. 1997). | 107 |
| MSJI No. 20 | COPYRIGHT INFRINGEMENT— DIFFERENCES ARE NOT A DEFENSE TO COPYRIGHT INFRINGEMENT | *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990); *Atari Games Corp. v. Nintendo of Am., Inc.*, 1993 WL 207548, at *4 (N.D. Cal. May 18, 1993); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 916 (7th Cir. 2007); *Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514, 522 (S.D.N.Y. 2005); *Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1167 (9th Cir. 1977); *Baxter v.* | 109 |

| | | | |
|---|---|---|---|
| | | *MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987); *Loew's Inc. v. Columbia Broad. Sys.*, 131 F. Supp. 165, 172 (C.D. Cal. 1955); *Murray Hill Pubs. v. ABC Commn's, Inc.*, 264 F.3d 622, 633 (6th Cir. 2001); *Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 148 (S.D.N.Y. 1924); *Curtis v. General Dynamics Corp.*, 1990 WL 302725, at *9 (W.D. Wash. Sep. 26, 1990)* | |
| MSJI No. 21 | ALTERATION OF COLOR NOT A DEFENSE TO COPYRIGHT INFRINGEMENT | *Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.*, 558 F.2d 1090, 1094 n.6 (2d Cir. 1977); *McCaskill v. Ray*, 2008 WL 2222056, at *3 (11th Cir. May 30, 2008); *Tennessee Fabricating Co. v. Moultrie Mfg. Co.*, 421 F.2d 279, 284 (5th Cir. 1970); *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 360 (9th Cir. 1947); *Mendler v. Winterland Production, Ltd.*, 207 F.3d 1119, 1124 (9th Cir. 2000). | 112 |
| MSJI No. 22 | COPYRIGHT INFRINGEMENT— INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY | *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997). | 114 |
| 17.20 | DERIVATIVE LIABILITY— VICARIOUS INFRINGEMENT— ELEMENTS AND BURDEN OF PROOF | 9th Cir. Civ. Jury Instr. 17.13 (2007). | 116 |
| 17.21 | DERIVATIVE LIABILITY— CONTRIBUTORY INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.21 (2007). | 118 |
| **Instructions for Mattel's Unfair Competition Claims** | | | |
| MSJI No. 23 | UNFAIR COMPETITION— ESSENTIAL FACTUAL ELEMENTS | Cal. Bus. & Prof. Code § 17200 ; *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1098 (C.D. Cal. 2009); *Puentes v. Wells Fargo Home Mortg.*, Inc., 160 Cal. App. 4th 638, 645 (2008); *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th 798, 812 (2007); *Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *6 (N.D. Cal. Aug. 31, 2010); *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). | 120 |

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

### Instructions for Adverse Inferences

| | | | |
|---|---|---|---|
| MSJI No. 24 | ADVERSE INFERENCE FROM SPOLIATION | *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Akonia v. United States*, 938 F.2d 158, 161 (9th Cir. 1991), *cert. denied*, 503 U.S. 962 (1992); *Housing Rights Center v. Sterling*, 2005 WL 3320739, at *8 (C.D. Cal. March 2, 2005); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir. 2002); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 232-33 (6th Cir. 2002); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987); *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554-55 (6th Cir. 2010); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009). | 122 |
| MSJI No. 25 | ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION | *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997). | 124 |

### Instructions for Personal Jurisdiction

| | | | |
|---|---|---|---|
| MSJI No. 26 | SPECIFIC PERSONAL JURISDICTION | *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). | 126 |
| MSJI No. 27 | SPECIFIC PERSONAL JURISDICTION—PURPOSEFUL DIRECTION | *Calder v. Jones*, 465 U.S. 783, 789 (1984); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006) (en banc); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111-14 (9th Cir. 2002). | 128 |
| MSJI No. 28 | SPECIFIC PERSONAL JURISDICTION—PURPOSEFUL AVAILMENT | *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985). | 130 |
| MSJI No. 29 | SPECIFIC PERSONAL JURISDICTION—CLAIM ARISES OUT OF OR RELATES TO THE DEFENDANT'S FORUM-RELATED ACTIVITIES | *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). | 132 |

| MSJI No. 30 | SPECIFIC PERSONAL JURISDICTION— THE COURT'S EXERCISE OF PERSONAL JURISDICTION IS REASONABLE | *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). | 134 |
|---|---|---|---|

### Instructions for Choice of Law

| MSJI No. 31 | CHOICE OF LAW FOR MACHADO AND MGA MEXICO | *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996); *Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 n.2 (1974). | 136 |
|---|---|---|---|

### Instructions for MGA's Affirmative Defense of Statute of Limitations

| MSJI No. 32 | AFFIRMATIVE DEFENSE— INTRODUCTION | *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 969 (2010); *Henley v. DeVore*, --- F. Supp. 2d ----, 2010 WL 3304211, *4 (C.D. Cal. 2010); *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005). | 139 |
|---|---|---|---|
| MSJI No. 33 | AFFIRMATIVE DEFENSE— STATUTE OF LIMITATIONS | CACI 4421 (modified); CACI 455 (modified); Cal. Civ. Code § 3426.6; *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585 (2008); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003); 17 U.S.C. § 507(b); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007). | 141 |
| MSJI No. 34 | AFFIRMATIVE DEFENSE— STATUTE OF LIMITATIONS— FRAUDULENT CONCEALMENT | Jury Instruction No. 35, as given (Phase 1B); *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890 (2002); *Regents of University of California v. Superior Court*, 20 Cal. 4th 509, 533 (1999); *Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 99 (1976). | 145 |

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

505.07975/3930172.1

**Remedies Instructions for Mattel's Claims**

| | | | |
|---|---|---|---|
| MSJI No. 35 | INTRODUCTION TO DAMAGES | Phase 1B Jury Instructions, Instruction No. 36 (modified). | 147 |
| CACI 3901 | DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | CACI 3901; *GHK Assocs. v. Mayer Group*, 224 Cal. App. 3d 856, 874-76 (1990); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986) | 149 |
| CACI 3901 | DAMAGES FOR AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY | CACI 3901. | 151 |
| CACI 3903N | LOST PROFITS | CACI 3903N. | 153 |
| MSJI No. 36 | DISGORGEMENT OF PROFITS | *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963); *Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951) | 155 |
| CACI 4409 | REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET | CACI 4409. | 157 |
| CACI 4409 | TRADE SECRET DAMAGES— ACTUAL LOSS | CACI 4409; CACI 3903N. | 159 |
| CACI 4410 | TRADE SECRET DAMAGES— UNJUST ENRICHMENT | CACI 4410. | 161 |
| CACI 4411 | TRADE SECRET DAMAGES— WILLFUL AND MALICIOUS MIS- APPROPRIATION | CACI 4411. | 163 |
| MSJI No. 37 | TRADE SECRET REASONABLE ROYALTY CALCULATION | Federal Circuit Model Patent Jury Instructions, Instruction No. 6.7; *LinkCo, Inc. v. Fujitsu Ltd.* 232 F. Supp. 2d 182, 190 (S.D.N.Y. 2002); *O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005); *Veritas Operating Corp. v. Microsoft Corp.*, | 165 |

| | | | | |
|---|---|---|---|---|
| | | | 2008 WL 7404617, at *2 (W.D. Wash. Feb. 26, 2008) | |
| CACI 2102 | PRESUMED MEASURE OF DAMAGES FOR CONVERSION | | CACI 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937). | 169 |
| 17.22 | COPYRIGHT— DAMAGES (17 U.S.C. § 504) | | 9th Cir. Civ. Jury Instr. 17.22 (2007); *Lucky Break Wishbone Corp. v. Sears Roebuck and Co.*, 373 Fed. Appx. 752, 757 (9th Cir. 2010); *Polar Bear Prods. Inc. v. Timex Corp.*, 384 F.3d 700, 708-710 (9th Cir. 2004); *Oracle Corp. v. SAP AG*, Case No.07-cv-01658-PJH (N.D. Cal. 2008), Dkt.  No. 1005 (final jury instructions). | 171 |
| 17.23 | COPYRIGHT— DAMAGES—LOST LICENSE FEE (17 U.S.C. § 504(b)) | | 9th Cir. Civ. Jury Instr. 17.23 (2007) (modified). | 173 |
| MSJI No. 38 | FAIR MARKET VALUE LICENSE CALCULATION | | Federal Circuit Model Patent Jury Instructions, Instruction Nos.  6.6 and 6.7 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Fifth Circuit Pattern Jury Instructions, Instructions 9.8 (2006)); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11, 714 n. 10 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985). | 175 |
| MSJI No. 39 | COPYRIGHT— DAMAGES—LOST PROFITS (17 U.S.C. § 504(b)) | | Model Instruction 12.8.2 Damages — Actual Damages, Federal Civil Jury Instructions of the Seventh Circuit (citing *Taylor v. Meirick*, 712 F.2d 1112, 1120-1121 (7th Cir. 1983)); *Lucky Break Wishbone Corp. v. Sears Roebuck and Co.*, 373 Fed. Appx. 752, 757 (9th Cir. 2010); *Polar Bear Prods. Inc. v. Timex Corp.*, 384 F.3d 700, 708-710 (9th Cir. 2004); *Oracle Corp. v. SAP AG*, Case No. 07-cv-01658-PJH (N.D. Cal. 2008), Dkt.  No. 1005 (final jury instructions). | 179 |

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

| MSJI No. 40 | DETERMINING ACTUAL DAMAGES | ABA Model Jury Instruction 1.7.2 (Copyright); *On Davis v. The Gap*, 246 F.3d 152, 166-67 (2d Cir. 2001); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); 4 Nimmer § 14.02[A], at 14-12. | 181 |
|---|---|---|---|
| 17.24 | COPYRIGHT— DAMAGES— DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | 9th Cir. Civ. Jury Instr. 17.24 (2007) (modified). | 183 |
| MSJI No. 41 | COPYRIGHT— DAMAGES— INDIRECT PROFITS | 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11, 714 n. 10 (9th Cir. 2004). | 185 |
| MSJI No. 42 | COPYRIGHT— DAMAGES— APPORTIONMENT | 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989). | 187 |
| 17.27 | COPYRIGHT— DAMAGES— WILLFUL INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487; *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, at *6  (N.D. Ill. Oct. 30, 2000) ; 5 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 14.03[C][2] (2006). | 189 |
| MSJI No. 43 | UNFAIR COMPETITION— RESTITUTION | *Korea Supply Co. v Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *Nat. Rural Telecm'ns Co-op v. DirecTV*, 319 F. Supp. 2d 1059, 1080 (C.D. Cal. 2003). | 191 |
| CACI 3926 | SETTLEMENT DEDUCTION | CACI 3926; CACI 217. | 193 |

### Instructions for Other Remedies

| CACI 3941 & 3946 | PUNITIVE DAMAGES— INDIVIDUAL AND ENTITY DEFENDANTS— BIFURCATED TRIAL (FIRST PHASE) | CACI 3941 & 3946 (modified). | 195 |
|---|---|---|---|
| MSJI No. 44 | REMEDIES— CONSTRUCTIVE TRUST | Cal. Civ. Code §§ 2223, 2224; *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1069 (1998); *Weiss v.* | 198 |

| | | | |
|---|---|---|---|
| | | *Marcus*, 51 Cal. App. 3d 590, 600 (1975); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 135 (1985); *Warren v. Merrill*, 143 Cal. App. 4th 96, 113 (2006); *Martin v. Kehl*, 145 Cal. App. 3d 228, 237-38 (1983); *Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg. Co.*, 367 F.2d 308, 311 (2d Cir. 1966); *Online Partners.com, Inc. v. Altanticnet Media Corp.*, 2000 WL 101242, at *10 (N.D. Cal. Jan. 20, 2000); *Calistoga Civic Club v. City of Calistoga*, 143 Cal. App. 3d 111, 116 (1983); *GHK Assocs. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 878 (1990). | |
| | **Instructions for MGA's Trade Secret Claim** | | |
| CACI 4401 | MISAPPROPRIATION OF TRADE SECRETS— ESSENTIAL FACTUAL ELEMENTS | CACI 4401. | 200 |
| CACI 4402 | "TRADE SECRET" DEFINED | CACI 4402 (modified). | 202 |
| CACI 4403 | SECRECY REQUIREMENT | CACI 4403. | 204 |
| MSJI No. 45 | INFORMATION NOT SECRET WHEN DISCLOSED NON-CONFIDENTIALLY | *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *VSL Corp. v. Gen. Techs. Inc.*, 1997 WL 654103, at *3 (N.D. Cal. Jul. 21, 1997); *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 788 (7th Cir. 2007); *Marine Pile Drivers, LLC v. Welco, Inc.*, 988 So.2d 878, 881-82 (La. Ct. App. 2008); *De Lage Landen Operational Servs, LLC v. Third Pillar Sys., Inc.*, 693 F. Supp. 2d 423, 440 (E.D. Pa. 2010); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 923 F. Supp. 1231, 1254 (N.D. Cal. 1995). | 206 |
| CACI 4404 | REASONABLE EFFORTS TO PROTECT SECRECY | CACI 4404. | 208 |
| CACI 4405 | MISAPPROPRIATION BY ACQUISITION | CACI 4405. | 211 |
| CACI 4406 | MISAPPROPRIATION BY DISCLOSURE | CACI 4406. | 213 |
| CACI 4407 | MISAPPROPRIATION BY USE | CACI 4407. | 215 |
| CACI 4408 | IMPROPER MEANS OF ACQUIRING | CACI 4408. | 217 |

| | | TRADE SECRET | | |
|---|---|---|---|---|
| CACI 4412 | "INDEPENDENT ECONOMIC VALUE" EXPLAINED | CACI 4412. | | 219 |
| MSJI No. 46 | UNFAIR COMPETITION— ESSENTIAL FACTUAL ELEMENTS | Cal. Bus. & Prof. Code § 17200 ; *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1098 (C.D. Cal. 2009); *Puentes v. Wells Fargo Home Mortg.*, Inc., 160 Cal. App. 4th 638, 645 (2008); *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th 798, 812 (2007); *Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *6 (N.D. Cal. Aug. 31, 2010); *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010); *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 243, 109 (2010); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008). | | 221 |

**Instructions for Mattel's Affirmative Defenses**

| | | | | |
|---|---|---|---|---|
| MSJI No. 47 | AFFIRMATIVE DEFENSE— INTRODUCTION | *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 969 (2010); *Henley v. DeVore*, --- F. Supp. 2d ----, 2010 WL 3304211, *4 (C.D. Cal. 2010); *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005). | | 224 |
| MSJI No. 48 | AFFIRMATIVE DEFENSE— UNCLEAN HANDS | *Kendall-Jackson Winery Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978 (1999); *Dollar Systems, Inv. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 953 (C.D. Cal. 1996). | | 226 |
| CACI 4420. | AFFIRMATIVE DEFENSE— INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS | CACI 4420. | | 228 |
| MSJI No. 49 | AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS | CACI 4421 (modified); Cal. Civ. Code § 3426.6; *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585 (2008); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Intermedics, Inc. v.* | | 230 |

| | | | |
|---|---|---|---|
| | | *Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003). | |
| MSJI No. 50 | AFFIRMATIVE DEFENSE—LACHES | *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 987 (9th Cir. 2004); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). | 233 |
| MSJI No. 51 | AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE DAMAGES | CACI 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994); Amended Order on MGA's Motion for Summary Judgment; Mattel's Motion for Partial Summary Judgment; Machado's Motion for Summary Judgment; Mattel's Motion for Partial Summary Judgment on MGA's Counterclaims-in-Reply, dated January 5, 2011, at 119 (Dkt. No. 9600) (allowing failure to mitigate affirmative defense). | 235 |
| MSJI No. 52 | AFFIRMATIVE DEFENSE—COMPETITION PRIVILEGE | *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th 867, 880-881 (1997); *San Francisco Design Center Associates v. Portman Companies,* 41 Cal. App. 4th 29, 42 (1995); Restatement (Second) Torts § 768. | 237 |
| MSJI No. 53 | AFFIRMATIVE DEFENSE—WAVIER | *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (1988); *Medico-Dental etc. Co. v. Horton & Converse*, 21 Cal. 2d 411, 432 (1942); *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995). | 239 |
| MSJI No. 54 | AFFIRMATIVE DEFENSE—ESTOPPEL | *Strong v. County of Santa Cruz*, 15 Cal. 3d 720, 725 (1975); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007); *Novell, Inc. v. Weird Stuff, Inc*, 1994 WL 16458729, at *13 (N.D. Cal. Aug. 2, 1993). | 241 |
| MSJI No. 55 | AFFIRMATIVE DEFENSE—ACQUIESCENCE | *Novell Inv. v. Weird Stuff, Inc.*, 1994 WL 16458729, at *13 (N.D. Cal. 1993); *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 988-89 (9th Cir. 2010). | 243 |
| MSJI No. 56 | AFFIRMATIVE DEFENSE—ABANDONMENT | *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1146 (9th Cir. 2010). | 245 |

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

05.07975/3930172.1

**Remedies Instructions for MGA's Trade Secret Claim**

| MSJI No. 57 | LIMITATION ON DAMAGES—LOSS CAUSED BY TRADE SECRET MISAPPROPRIATION | Cal. Civ. Code § 3426.3. | 247 |
|---|---|---|---|
| MSJI No. 58 | LIMITATION ON DAMAGES—NO DAMAGES CAUSED BY UNFAIR COMPETITION | Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009); *Inline, Inc. v. A.V.L. Holding Co.*, 125 Cal. App. 4th 895, 904-905 (2005); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) | 249 |

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

## PROPOSED JURY INSTRUCTIONS

## 1.19

## OUTLINE OF TRIAL

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

1       **Authority:**  9th Cir. Civ. Jury Instr. 1.19 (2007); Joint Proposed Jury

2 Instructions, May 5, 2008 (Dkt. No. 3463).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instructions on Types of Evidence**

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 1**
**USE OF ADMISSIONS OF A PARTY**

Evidence was presented to you in the form of admissions of one of the parties to written requests submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to requests that were submitted in writing under established court procedures.  The matters admitted are deemed conclusively established as to the party that made the admission.

1    **Authority:**  Fed. R. Civ. P. 36(b); Joint Proposed Jury Instructions, May 5,

2    2008 (Dkt. No. 3463).

## **1.9**

## **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

605.07975/3930172.1

1    **Authority:**  9th Cir. Civ. Jury Instr. 1.9 (2007); Joint Proposed Jury

2    Instructions, May 5, 2008 (Dkt. No. 3463).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **2.8**

2

## **IMPEACHMENT EVIDENCE—WITNESS**

3

4        The evidence that a witness has made a prior statement inconsistent with his

5    testimony generally may be considered, along with all other evidence, in deciding

6    whether or not to believe the witness and how much weight to give to the

7    testimony of the witness and for no other purpose.  However, if the prior

8    inconsistent statement was made under oath, you may consider that evidence for

9    any purpose.  Also, evidence that a party's agent or servant made a statement

10   concerning a matter within the scope of the agency or employment during the

11   existence of the relationship may be considered for any purpose.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Authority:**   9th Cir. Civ. Jury Instr. 2.8 (2007) (modified); Fed. R. Evid.

2   801(d)(1) & 801(d)(2); *Harris v. Vector Marketing Corp.*, 656 F. Supp. 2d 1128,

3   1133 (N.D. Cal. 2009); *Palmer v. Pioneer Inn Assocs., Ltd.*, 338 F.3d 981, 990 (9th

4   Cir. 2003); *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir.

5   1988); *General Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421

6   F. Supp. 274, 281 (N.D. Cal. 1976).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Instructions on the Law

## Instructions for Mattel's Claims for Ownership of Bratz Rights

### MATTEL SPECIAL JURY INSTRUCTION NO. 2
### OWNERSHIP OF INVENTIONS—INVENTIONS AGREEMENT

Mattel claims that it owns the rights to Carter Bryant's doll-related works created while he was employed by Mattel pursuant to a written contract and pursuant to other legal principles and theories.  If you find that Mattel is correct as to any of the claimed bases or theories for owning a particular work created by Mr. Bryant, then you should find that Mattel owns that work; Mattel needs to prevail on only one theory of ownership, not all of them, to obtain ownership of the works at issue.

Mattel's first claim is that it owns the rights to all doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and any other works that were created by Carter Bryant, in whole or in part, while he was employed by Mattel, including Bratz-related drawings, designs, sculpts, characters, ideas, concepts, names, and works.

Defendants deny Mattel's contention.

Mattel's claim to ownership of Bryant's doll-related works is based, in part, on a contract between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement."

Specifically, Section 2(a) of the Inventions Agreement provides:

"I agree to communicate to the Company as promptly and fully as practicable all inventions conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company.  I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions,

-9-

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1 and all my right, title and interest in any patents, copyrights, patent applications or

2 copyright applications based thereon.  I will assist the Company and/or its

3 nominees (without charge but at no expense to me) at any time in every proper way

4 to obtain for its and/or their benefit, patents and copyrights for all such inventions

5 anywhere in the world and to enforce its and/or their rights in legal proceedings."

6      In order for Mattel to prevail on its claim of ownership, Mattel must show

7 that any doll-related or toy-related idea, concept, drawing, design, sculpt or work it

8 claims to own was an "invention," as the term is used in the Inventions Agreement,

9 and that it was conceived, created, made or reduced to practice by Carter Bryant

10 "at any time during [his] employment by [Mattel]."

11      If you find that any particular doll-related or toy-related idea, concept,

12 drawing, design and/or work was an "invention" and was conceived, created, made

13 or reduced to practice by Carter Bryant, in whole or in part, at any time during his

14 employment by Mattel, then you should find that Mattel owns all right, title and

15 interest in it.  If you find that any particular doll-related or toy-related idea,

16 concept, drawing, design and/or work was not an "invention" that was conceived,

17 created, made or reduced to practice by Carter Bryant, in whole or in part, at any

18 time during his employment by Mattel, then you should consider whether Mattel

19 owns the concept, drawing, design and/or work pursuant to the other instructions I

20 will give you later.

21

22

23

24

25

26

27

28

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

05.07975/3930172.1

1    **Authority:**  MSJ Order (Dkt. No. 9538 at 4-12); Inventions Agreement;

2    *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 314

## INTERPRETATION—DISPUTED TERM—"INVENTIONS"

The parties dispute the meaning of the term "inventions" in the Inventions Agreement.  The Inventions Agreement defines the term "inventions" as follows:

"[T]he term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

The Court has already found that the term "inventions," as used in the contract, covers doll-related drawings, designs, and sculpts.  Therefore, Mattel owns all right, title and interest to any doll-related drawings, designs and sculpts that you find Carter Bryant made at any time during his employment by Mattel.  It is for you to determine which such works, if any, Carter Bryant made during that time.

It is also for you to decide whether the term "inventions" covers other "inventions" claimed by Mattel.  If you find that it does, then you should find that Mattel owns all right, title and interest to such inventions that you find Carter Bryant made at any time during his employment by Mattel.

1

**Authority:**  CACI 314 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

## CACI 314

## INTERPRETATION—DISPUTED TERM—"AT ANY TIME DURING MY EMPLOYMENT BY THE COMPANY"

4

5   In the Inventions Agreement, Carter Bryant agreed to assign to Mattel all

6   inventions "conceived or reduced to practice by me (alone or jointly [with] others)

7   at any time during my employment by the Company."

8   The parties dispute the meaning of the phrase, "at any time during my

9   employment by the Company," as it is used in the Inventions Agreement.  Mattel

10  claims that the phrase "at any time during my employment by the Company"

11  means at any time between January 4, 1999 and October 20, 2000, Mr. Bryant's

12  start and end dates at Mattel.  The defendants claim that the phrase "at any time

13  during my employment by the Company" refers only to when Carter Bryant was

14  specifically working at Mattel, that is, during working hours on weekdays.

15  As I already instructed you, when deciding what the terms of a contract

16  mean, you must decide what the parties intended at the time the contract was

17  created.  You may consider the usual and ordinary meaning of the language used in

18  the contract as well as the circumstances surrounding the making of the contract.

19  You must find that Mattel owns all right, title and interest to all inventions,

20  if any, that you find were conceived or reduced to practice by Carter Bryant "at

21  any time during [his] employment by [Mattel]," as that phrase is used in the

22  Inventions Agreement.

23

24

25

26

27

28

-14-

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1    **Authority:**  CACI 314 ( modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 317

## INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts.  You should use each part to help you interpret the others, so that all the parts make sense when taken together.

1   **Authority:**  CACI 317.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>CACI 318</u>

## <u>INTERPRETATION—CONSTRUCTION BY CONDUCT</u>

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

1

**Authority:**  CACI 318.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-19-

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 3

## INTERPRETATION—MUTUAL INTENT

The mutual intention of the parties at the time the contract is formed governs interpretation.  Such mutual intent is to be inferred solely from the written provisions of the contract as to most of the contract's terms.  However, as to the meaning of the terms "inventions" and "at any time during my employment by the Company," you should consider all the evidence that has been admitted in considering their meaning.

1       **Authority:**  Cal. Civ. Code § 1636; *Santisas v. Goodin*, 17 Cal. 4th 599, 608

2   (1998).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-

## 17.9

## OWNERSHIP OF INVENTIONS—WORK MADE FOR HIRE

As a second basis for ownership, Mattel also claims that, independent of the Inventions Agreement, it owns Mr. Bryant's drawings, designs, sculpts and characters as works made for hire.

A work made for hire is one that is prepared by an employee in carrying out the employer's business.

The employer is considered to be the author of the work and owns the copyright to such work.

If you find that any particular doll-related work created by Mr. Bryant was a Mattel work for hire, you should find that Mattel owns that work.  If you find that any particular doll-related work created by Mr. Bryant was not a Mattel work for hire, you should consider whether Mattel owns the work pursuant to the other instructions I have given and will give you.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

605.07975/3930172.1

1     **Authority:**  9th Cir. Civ. Jury Instr. 17.9 (2007) (modified); 17 U.S.C.

2  § 201(b).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-

## MATTEL SPECIAL JURY INSTRUCTION NO. 4
## OWNERSHIP OF INVENTIONS—IMPLIED-IN-FACT CONTRACT

As another basis for ownership, Mattel claims that, independent of the terms of the Inventions Agreement, Mattel and Mr. Bryant entered into an implied-in-fact contract for the assignment of rights to doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and works.  An implied-in-fact contract is an agreement founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.

Mattel has proved its claim of ownership if it shows that it specifically hired or directed Mr. Bryant to invent, create and/or conceive of products, characters, designs, sculpts, themes, names, logos, fashions, hairstyles, and/or accessories within Mattel's lines of business or potential business, including without limitation dolls, toys and other playthings.  If you find that the purpose of his employment focused on invention and that Mr. Bryant received full compensation from Mattel for his inventive work based on his salary and employment benefits, you must examine the employment relationship at the time Mr. Bryant created the works at issue to determine if Mr. Bryant and Mattel entered an implied-in-fact contract to assign his ownership interest in such works to Mattel.

If you find that there was an implied-in-fact contract to assign any particular doll-related work created by Mr. Bryant to Mattel, you should find that Mattel owns that work.  If you find that there was not an implied-in-fact contract to assign any particular doll-related work created by Mr. Bryant to Mattel, you should consider whether Mattel owns the work pursuant to the other instructions I have given and will give you.

1    **Authority:**  *Silica Tech, L.L.C. v. J-Fiber, GmbH*, 2009 WL 2579432, at
2    *13 (D. Mass. May 19, 2009); *Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed.
3    Cir. 2000); *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir.
4    1996); *Ultimax Cement Mfg. v. CTS Cement Mfg. Corp.*, 2004 WL 3770498, at *16
5    (C.D. Cal. Dec. 6, 2004), *rev'd on other grounds by*, 587 F.3d 1339, 1343 (Fed.
6    Cir. 2009).

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-25-
THIRD AMENDED PROPOSED JURY INSTRUCTIONS

## MATTEL SPECIAL JURY INSTRUCTION NO. 5
## OWNERSHIP OF INVENTIONS—AGENCY

As another independent basis for ownership, Mattel claims that, independent of the terms of the Inventions Agreement, Mattel owns Mr. Bryant's doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and works by virtue of the agency relationship between Mr. Bryant and Mattel.  If Mr. Bryant was an agent of Mattel, then all benefits and advantages acquired by Mr. Bryant as an outgrowth of his employment relationship with Mattel, exclusive of Bryant's salary and employment benefits, are deemed to have been acquired for the benefit of Mattel, and Mattel is entitled to recover such benefits.  Mattel's claim to ownership of Bratz through agency does not depend upon any deceit by Bryant, but is instead based upon the duties incident to the agency relationship between Bryant and Mattel and upon the fact that all profits resulting from that relationship belong to Mattel.

Mattel has proved its claim of ownership if it shows that while employed by Mattel, Bryant made a secret profit at the expense of Mattel out of the subject of his agency.

If you find that Mattel has proved its claim of ownership through agency as to any particular doll-related work created by Mr. Bryant, you should find that Mattel owns that work.  If you find that Mattel has not proved its claim of ownership through agency as to any particular doll-related work created by Mr. Bryant, you should consider whether Mattel owns the work pursuant to the other instructions I have given and will give you.

1      **Authority:**  *Cal. Civ. Code* § 2330; *Huong Que, Inc. v. Luu*, 150 Cal. App.

2   4th 400, 416-417 (2007); *Bate v. Marsteller*, 232 Cal. App. 2d 605, 616-617

3   (1965); *Van de Kamp v. Bank of America*, 204 Cal. App. 3d 819, 835 (1988);

4   *Savage v. Mayer*, 33 Cal. 2d 548, 551 (1949).

# MATTEL SPECIAL JURY INSTRUCTION NO. 6
## OWNERSHIP OF INVENTIONS—CORPORATE OPPORTUNITY

As another basis for ownership, Mattel claims that, independent of the terms of the Inventions Agreement, Mattel owns Mr. Bryant's doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and works by virtue of Mr. Bryant's breaches of duties he owed to Mattel.  Pursuant to the Inventions Agreement, Mr. Bryant had a duty to maintain the confidentiality of Mattel's trade secrets and surrender any trade secret materials in his possession before leaving Mattel.  This included an obligation to not misappropriate Mattel's trade secrets, not use Mattel's trade secrets for his own benefit, and not disclose Mattel's trade secrets to competitors in the toy industry.  Mr. Bryant had an obligation not to use Mattel's trade secrets to enter into a competing enterprise which might injure Mattel.  Mr. Bryant also owed a duty of undivided loyalty to Mattel while he was employed by Mattel.

As part of those duties, Mr. Bryant had an obligation to deliver to Mattel, and not to seize for himself or others, any corporate opportunity reasonably incident to Mattel's present or prospective business.  In order for Mattel to prevail on its claim of ownership, Mattel must show that Bryant violated his duty by seizing a corporate opportunity reasonably incident to Mattel's present or prospective business.  If Mattel establishes that he did so, then Mattel owns the rights to such corporate opportunities.

If you find that Mattel has proved its claim of ownership as to any particular doll-related work created by Mr. Bryant as a corporate opportunity, you should find that Mattel owns that work.  If you find that Mattel has not proved its claim of ownership as to any particular doll-related work created by Mr. Bryant as a corporate opportunity, you should consider whether Mattel owns the work pursuant to the other instructions I have given you.

1   **Authority:** *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791,

2   796-799 (1962); *Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 286

3   (1964); *Components for Research, Inc. v. Isolation Prods., Inc.*, 241 Cal. App. 2d

4   726, 729 (1966); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 982 (N.D. Cal.

5   2006); *C.H. Reynolds Elec., Inc. v. Spears*, 2004 WL 296994, at *7 (Feb. 17,

6   2004).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Instructions for Mattel's Tort Claims**


### **CACI 2201**

### **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**


Mattel claims that MGA and MGA's CEO, Isaac Larian, intentionally interfered with the contracts between Mattel and a number of its former employees, including Carter Bryant, Ronald Brawer, Ana Isabel Cabrera, Beatriz Morales, Maria Elena Salazar, Veronica Marlow and Ryan Tumaliuan.  To establish this claim as to any particular former Mattel employee, Mattel must prove all of the following as to that particular employee:

1.     That there was a contract or contracts between Mattel and that employee;

2.     That MGA and/or Mr. Larian knew of the contract or contracts;

3.     That MGA and/or Mr. Larian intended to disrupt the performance of this contract or contracts;

4.     That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult, or disrupted the contractual relationship;

5.     That Mattel was harmed; and

6.     That the conduct of MGA and/or Isaac Larian was a substantial factor in causing Mattel's harm.

605.07975/3930172.1

1    **Authority:**  CACI 2201; *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50
2  Cal. 3d 1118, 1126 (1990); *PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579,
3  601 (1996); *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55
4  (1998); *Kasparian v. County of Los Angeles*. 38 Cal. App. 4th 242, 261 (1995).
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CACI 2203

# INTENT OR KNOWLEDGE

      In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider whether they knew that a disruption in the performance of a contract or contracts was substantially certain to result from their conduct. Knowledge of a third party's contractual obligations can be inferred from circumstantial evidence.

1    **Authority:**  CACI 2203 (modified); *Silicon Image, Inc. v. Analogix*

2    *Semiconductor Inc.*, 2007 WL 1455903, at *4 (N.D. Cal. May 16, 2007) (holding

3    that use of licensing agreements which are "common in the industry" created a

4    reasonable inference that defendant, a competitor to plaintiff, "knew that sale of its

5    product to Silicon Image customers violated the Software License Agreement");

6    *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966) (reversing grant of

7    summary judgment on interference claim on the ground that circumstantial

8    evidence supported an inference of knowledge of a contractual relationship).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CACI 3610

## AIDING AND ABETTING TORT—ESSENTIAL FACTUAL ELEMENTS

Mattel claims that it was harmed by the breaches of the duty of undivided loyalty owed by several former Mattel employees, including Carter Bryant, Isabel Cabrera, Beatriz Morales, Maria Elena Salazar, and Ryan Tumaliuan, and that MGA and/or Mr. Larian are responsible for the harm because they aided and abetted those former employees in committing their breaches of the duty of loyalty.

If you find that any of the former employees breached either his or her duty of loyalty to Mattel, then you must determine whether MGA and/or Mr. Larian are also responsible for the harm. MGA and/or Mr. Larian are responsible as aiders and abetters if Mattel proves all of the following by a preponderance of the evidence:

1. That MGA and/or Mr. Larian knew that the former employee's conduct constituted a breach of duty or duties;

2. That MGA and/or Mr. Larian gave substantial assistance or encouragement to the former employee to breach his or her duty or duties; and

3. That MGA and/or Mr. Larian's conduct was a substantial factor in causing harm to Mattel.

-34-

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1

**Authority:**  CACI 3610 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 7
## BREACH OF THE DUTY OF LOYALTY

One of the elements of Mattel's claim for aiding and abetting breach of the duty of loyalty is that one or more former Mattel employee breached his or her duty of loyalty to Mattel.  To establish that one or more of the former employees breached his or her duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

    1.    That the former employee was previously employed by Mattel;

    2.    That the former employee knowingly acted against Mattel's interests;

    3.    That Mattel did not give informed consent to the former employee's conduct;

    4.    That Mattel was harmed; and

    5.    That the former employee's conduct was a substantial factor in causing Mattel's harm.

1    **Authority:**  CACI 4102; *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*,

2  150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs.*, Inc., 196 Cal. App.

3  3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995);

4  *Cal. Labor Code* §§ 2856, 2860, 2863; *cf. Hudson v. Moore Bus. Forms, Inc.*,

5  836 F.2d 1156, 1161 (9th Cir. 1987).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 8

# SCOPE OF THE DUTY OF LOYALTY

An employer has a right of expect the undivided loyalty of its employees. An employee breaches his duty of loyalty of his employer when he takes actions which are inimical to the best interests of his employer.  Such actions would include personally competing with his employer or taking action on behalf of or otherwise assisting a competitor while working for his employer.  An employer's right to undivided loyalty is also compromised when an employee's outside activities give rise to a possibility of undue influences.  An employee breaches his duty of loyalty of his employer when he acquires a material benefit from a third party in connection with actions taken through his use of his position with his employer.

1    **Authority:** *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F.
2    Supp. 2d 1018, 1037-38 (N.D. Cal. 2009); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th
3    285, 295 (1995); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416-417 (2007).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **CACI 2100**

## **CONVERSION—ESSENTIAL FACTUAL ELEMENTS**

Mattel claims that defendants MGA, MGA Hong Kong, and Mr. Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Carter Bryant's drawings.  To establish this claim, Mattel must prove all of the following by a preponderance of the evidence:

1.      That Mattel was the rightful owner of the property at issue;

2.      That any of the defendants intentionally took possession of such property for a significant period of time;

3.      That Mattel did not consent;

4.      That Mattel was harmed; and

5.      That any one of the defendants' conduct was a substantial factor in causing harm to Mattel.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

505.07975/3930172.1

1

**Authority:**  CACI 2100.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Instructions for Mattel's Trade Secret Claims**

## **CACI 4401**

## **MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS**

Mattel claims that MGA and Mr. Larian have misappropriated Mattel trade secrets, including Bratz-related trade secrets, the trade secret doll name "Moxie," and Mattel trade secrets allegedly provided to MGA and Mr. Larian by Mattel's former employees, Mr. Brawer, Mr. Castilla, Mr. Cooney, and Ms. Brisbois.  In addition, Mattel and Mattel Mexico also claim that MGA and Mr. Larian, as well as MGA Mexico and Mr. Machado, have misappropriated trade secrets allegedly provided to the defendants by Mr. Machado, Mr. Vargas, and Ms. Trueba.  The defendants deny these claims.

To succeed on their claims, Mattel or Mattel Mexico must prove, as to any particular claimed trade secret, all of the following:

1.	That Mattel or Mattel Mexico owned or had proper or lawful possession of the information;

2.	That the information was a trade secret at the time of the misappropriation;

3.	That MGA, MGA Mexico, Mr. Larian and/or Mr. Machado improperly acquired, used or disclosed the trade secret;

4.	That Mattel or Mattel Mexico was harmed or MGA, MGA Mexico, Isaac Larian and/or Machado was unjustly enriched; and

5.	That MGA's, MGA Mexico's, Mr. Larian's and/or Machado's acquisition, use or disclosure of the trade secret was a substantial factor in causing the harm or the unjust enrichment.

605.07975/3930172.1

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1        If you find that these factors are satisfied as to any particular defendant and

2   any particular claimed trade secret, you should find for Mattel or Mattel Mexico on

3   its claim of misappropriation as to such trade secret.  If you find these factors are

4   not satisfied as to any particular defendant and any particular claimed trade secret,

5   you should consider whether that defendant is liable for the misappropriation of his

6   or its agents or ratified their misappropriation pursuant to instructions that I will

7   give you later.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Authority:**  CACI 4401 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184

2   Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel*

3   *LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010);

4   *Durney v. Wavecrest Labs.*, LLC, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CACI 4402

## "TRADE SECRET" DEFINED

To prove that the information was a trade secret, Mattel or Mattel Mexico must prove all of the following:

1.     That the information was secret at the time of the misappropriation;

2.     That the information had actual or potential independent economic value because it was secret; and

3.     That at least as of the time of the misappropriation, Mattel or Mattel Mexico took reasonable efforts to keep the information secret.

1

**Authority:**  CACI 4402 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CACI 4403

## SECRECY REQUIREMENT

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in Mattel's or Mattel Mexico's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated and expected to keep the information secret.  However, it must not have been generally known to the public or to people who could obtain value from knowing it.

1   **Authority:**  CACI 4403 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-48-

## **MATTEL'S SPECIAL JURY INSTRUCTION NO. 9**
## **ACTUAL USE BY TRADE SECRET HOLDER NOT REQUIRED**

Whether the owner or holder of a trade secret intends to use, or actually does use, the trade secret, is not an element of an action for theft of trade secrets.  Nor is it required that the trade secret owner or holder actually be aware of the existence of the trade secret at the time of its misappropriation, provided that the trade secret owner or holder is nevertheless the lawful owner or holder of the trade secret. Trade secret law protects the right of a trade secret owner or holder to control the dissemination of its trade secrets.  Its protections apply whether the trade secret owner or holder intends to use or disclose, or intends not to use or disclose, the trade secret, and its protections apply whether the trade secret owner or holder knows of the trade secret or not.

**Authority**:  *Cal. Civ. Code* § 3426.1; *Leatt Corp. v. Innovative Safety Tech.*, LLC, 2010 WL 1526382, at *5 (S.D. Cal. Apr. 15, 2010) ("To have independent economic value, the information must be 'sufficiently valuable and secret to afford an actual or potential economic advantage over others.'") (quoting *Yield Dynamics, Inc. v. TEA Systems Corp.,* 154 Cal. App. 4th 547, 564 (2007)); *Contour Design, Inc. v. Chance Mold Steel Co., Ltd.*, 2010 WL 174315, at *5 (D. N.H. Jan. 14, 2010) (UTSA "encompasses confidential information that has 'potential' economic value, not just 'actual' economic value, and therefore 'extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use'") (citing UTSA § 1 cmt.); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003) (finding it irrelevant for purposes of trade secret protection that the plaintiff "did not actually use the concept in its business"); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 221 (2010); *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1287 (1990) (noting that the definition of a trade secret "'includes information that has commercial value from a negative viewpoint,'" such as "'the results of lengthy and expensive research which proves that a certain process will not work'") (citation omitted); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs.*, LLC, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

-50-

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 10
# CONCEPTS MAY BE TRADE SECRETS

Concepts and ideas, including concepts for new products, can have value independent from the product they eventually inspire.  Concepts and ideas for new products or products under development, such as product designs and product names, may be trade secrets if the information meets the other requirements for trade secret protection.  In addition, doll names may be trade secrets that derived independent economic value from not being generally known as the name for a doll or line of dolls in the toy industry, even if they are generally known as a name for other products or used in other industries or in common parlance.

05.07975/3930172.1

1       **Authority:** *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d

2 714, 726 (7th Cir. 2003) (finding issue of fact as to whether "concept for noise-

3 producing toy railroad track" was trade secret); see also 2 Roger M. Milgrim,

4 Milgrim on Trade Secrets § 9.05[4], at 9-487-9-488.2 & n. 36 (Eric E. Benson, ed.,

5 2003 rev. ed. & 2009 supp.) (explaining that trade secrets may reside in

6 "confidential disclosures of concepts, or as yet-untested, ideas for a new product or

7 new process"); *see also Friedman v. Quest Int'l Fragrances*, 58 Fed. Appx. 359,

8 360 (9th Cir. 2003) (remanding case to district court to address whether plaintiff's

9 ideas for marketing fragrances qualified for trade secret protection – again, concern

10 was about secrecy, and not whether "ideas" could be trade secrets); *Russo v.*

11 *Ballard Medical Prods.*, 550 F.3d 1004, 1011-12 (10th Cir. 2008) ("Trade secret

12 laws operate only to protect those ideas held in secret, while patent law affords the

13 exclusive means of protecting the right to an invention only after it is disclosed to

14 the public.  [citation]  Similarly, trade secret law applies to innovations that may

15 not ever be amenable to patent, given patent law's strict requirements of novelty,

16 utility, and non-obviousness."); *Contour Design, Inc. v. Chance Mold Steel Co.*

17 *Ltd.*, 2010 WL 174315, at *8 (D.N.H., Jan. 14, 2010) (holding that plaintiff's "idea

18 to incorporate a removable roller into its ergonomic mouse series possesses" the

19 characteristics of a trade secret as defined in the UTSA); *O2 Micro Int'l Ltd. v.*

20 *Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089-1090 (N.D .Cal. 2006)

21 ("It does not matter if a portion of the trade secret is generally known, or even that

22 every individual portion of the trade secret is generally known, so long as the

23 combination of all such information is not generally known."); *Mattel, Inc. v. MGA*

24 *Entertainment, Inc.*, 2010 WL 5422504, at *23 (C.D. Cal. Dec. 27, 2010) ("fact-

25 finder [will be] tasked with determining whether the doll names Bratz and Jade

26 qualify as trade secrets; in particular, whether the names derive independent value

27 from not being generally known.").

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 11
# TRADE SECRETS MAY EXIST IN COMBINATION OF ELEMENTS

Even if a portion or aspect of a claimed trade secret is generally known or not secret, or even if all individual aspects of a claimed trade secret are generally known as individual elements, the claimed trade secret in its entirety may still be a trade secret if the combination of elements that comprise it are not generally known and meet the other requirements for trade secret protection.

1    **Authority:**  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp.

2    2d 1070, 1089-1090 (N.D. Cal. 2006) ("It does not matter if a portion of the trade

3    secret is generally known, or even that every individual portion of the trade secret

4    is generally known, so long as the combination of all such information is not

5    generally known.").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 12

2

## INFORMATION OBTAINED THROUGH REVERSE ENGINEERING

3

## MAY BE TRADE SECRETS

4

5          Information that Mattel or Mattel Mexico obtained by investing significant

6   resources to reverse engineer may be a trade secret if the information meets the

7   other requirements for trade secret protection.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

05.07975/3930172.1

1    **Authority:**  MSJ Order (Dkt. No. 9538 at 49) (quoting Legis. Com. com. to

2    Civ. Code § 3426.1; citing *Hoffman-LaRouche Inc. v. Yoder*, 950 F. Supp. 1348,

3    1358 (S.D. Ohio 1997)); Leg. Com. com. to Cal. Civ. Code § 3426.1.

## CACI 4412

## "INDEPENDENT ECONOMIC VALUE" EXPLAINED

Information has independent economic value if it gives the owner or holder an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether information had actual or potential independent economic value because it was secret, you may consider the following:

(a)  The extent to which the information's owner or holder obtained or could obtain economic value from the information in keeping it secret;

(b)  The extent to which others could obtain economic value from the information if it were not secret;

(c)  The amount of time, money, or labor the information's owner or holder expended in developing the information;

(d)  The amount of time, money, or labor that was saved by a competitor who used the information.

The presence or absence of any one or more of these factors is not necessarily determinative.

1
2
3
4

     **Authority:**  CACI 4412 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs., LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CACI 4404**

**REASONABLE EFFORTS TO PROTECT SECRECY**

To establish that the information Mattel or Mattel Mexico is claiming to be trade secret was in fact trade secret, Mattel or Mattel Mexico must prove that it made reasonable efforts under the circumstances and at least as of the time of the misappropriation to keep that information secret.  "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Mattel or Mattel Mexico, exercising due care to protect important information of the same kind.

In determining whether or not Mattel or Mattel Mexico made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances.  Among the factors you may consider are the following:

(a)  Whether documents or files containing the information were marked with confidentiality warnings;

(b)  Whether Mattel or Mattel Mexico instructed its employees to treat the information as confidential;

(c)  Whether Mattel or Mattel Mexico restricted access to the information to the persons who had a business reason to know the information;

(d)  Whether Mattel or Mattel Mexico kept the information in a restricted or secured area;

(e)  Whether Mattel or Mattel Mexico required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

(f)  Whether Mattel or Mattel Mexico took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

(g)  The extent to which any general measures taken by Mattel or Mattel Mexico would prevent the unauthorized disclosure of the information; and

1      (h)  Whether there were other reasonable measures available to Mattel or

2 Mattel Mexico that it did not take.

3      The presence or absence of any one or more of these factors is not

4 necessarily determinative.

1

**Authority:**  CACI 4404 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 13

# NOT MARKING AS CONFIDENTIAL IS NOT DETERMINATIVE

Even if Mattel or Mattel Mexico did not mark a document as "confidential," you can find that Mattel or Mattel Mexico took reasonable efforts to protect its secrecy.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

605.07975/3930172.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Authority:**  MSJ Order (Dkt. No. 9538 at 30) ("[I]t makes no sense to hold, as a matter of law, that the failure to mark documents as confidential precludes a finding of reasonable efforts, since the very employee that creates the trade secret at the employer's direction may be the individual who misappropriates it.").

-63-

1   **MATTEL'S SPECIAL JURY INSTRUCTION NO. 14**

2   **CONFIDENTIALITY AGREEMENTS AS REASONABLE EFFORTS TO**

3   **PROTECT SECRECY**

4

5        If you find that Mattel or Mattel Mexico required its employees to sign

6   confidentiality agreements, that should be considered in deciding whether Mattel

7   or Mattel Mexico took reasonable efforts to keep information secret, and you may

8   find that such agreements alone are sufficient if the information was not disclosed

9   by Mattel or Mattel Mexico outside of the companies.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Authority:**  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) ("MAI took reasonable steps to insure the secrecy to this information as required by the UTSA.  MAI required its employees to sign confidentiality agreements respecting its trade secrets, including the Customer Database.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CACI 4405

## MISAPPROPRIATION BY ACQUISITION

MGA, MGA Mexico, Mr. Larian and/or Mr. Machado can be liable for misappropriation if they improperly acquired, used or disclosed Mattel's or Mattel Mexico's trade secrets.  MGA, MGA Mexico, Mr. Larian and/or Mr. Machado misappropriated Mattel's or Mattel Mexico's trade secrets by acquisition if MGA, MGA Mexico, Isaac Larian and/or Machado acquired the trade secrets using improper means or induced any former Mattel employee's acquisition of the trade secrets in breach of that former Mattel employee's duties to Mattel or Mattel Mexico.

1    **Authority:**  CACI 4405 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 4408

## IMPROPER MEANS OF ACQUIRING TRADE SECRET

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by:

1.  Independent efforts to invent or discover the information;

2.  Obtaining the information as a result of a license agreement with the owner of the information;

3.  Observing the information in public use or on public display; or

4.  Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

1    **Authority:**  CACI 4408.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CACI 4406

2

## MISAPPROPRIATION BY DISCLOSURE

3

4       MGA, MGA Mexico, Mr. Larian and/or Mr. Machado misappropriated

5   Mattel's or Mattel Mexico's trade secrets by disclosure if MGA, MGA Mexico,

6   Mr. Larian and/or Machado:

7       1.      Disclosed Mattel's or Mattel Mexico's trade secrets without its

8   consent; and

9       2.      At the time of disclosure, knew or had reason to know that their

10  knowledge of the trade secrets came from or through a third party, such as a former

11  Mattel employee, and that the third party had a duty to Mattel or Mattel Mexico to

12  keep the information secret.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      **Authority:**  CACI 4406.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-71-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 4407

# MISAPPROPRIATION BY USE

MGA, MGA Mexico, Mr. Larian and/or Mr. Machado misappropriated Mattel's or Mattel Mexico's trade secrets by use if MGA, MGA Mexico, Mr. Larian and/or Mr. Machado:

    1.    Used Mattel's or Mattel Mexico's trade secrets without its consent; and

    2.    At the time of use, knew or had reason to know that their knowledge of the trade secrets came from or through a third party, such as a former Mattel employee, and that the third party had a duty to Mattel or Mattel Mexico to keep the information secret.

1         **Authority:**  CACI 4407 (modified).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CACI 3701

## LIABILITY FOR AGENTS' MISAPPROPRIATION

As explained earlier, MGA, MGA Mexico, Mr. Larian and Mr. Machado may be liable for misappropriation if they improperly acquired, used or disclosed a trade secret. In addition, and independently, MGA, MGA Mexico, Mr. Larian may be liable for the improper acquisition, use or disclosure of a trade secret by one or more of their agents. Now I will instruct you on whether the defendants are liable for their agents' misappropriations, even if you find they did not themselves improperly acquire, use or disclose a particular trade secret.

Mattel and Mattel Mexico claim they were harmed by the acts of misappropriation by former Mattel employees Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and Mr. Vargas. If you find that Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, or Mr. Vargas misappropriated Mattel's or Mattel Mexico's trade secrets, then you must decide whether MGA, MGA Mexico, or Larian are responsible for the harm.

A person or a corporation is responsible for harm caused by the wrongful conduct of their employees or agents while acting within the scope of their employment or authority.

MGA, MGA Mexico, and Larian are responsible for a misappropriation of a trade secret by a particular former Mattel employee if Mattel or Mattel Mexico prove both of the following:

1. That the former Mattel employee was MGA's, MGA Mexico's or Mr. Larian's agent; and

2. That the former Mattel employee was acting within the scope of his or her agency when he or she harmed Mattel or Mattel Mexico.

1     **Authority:**  CACI 3700, 3701 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CACI 3705**

## **EXISTENCE OF "AGENCY" RELATIONSHIP DISPUTED**

Mattel and Mattel Mexico claim that Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and Mr. Vargas were MGA's, MGA Mexico's and Mr. Larian's agents and that MGA, MGA Mexico and Mr. Larian are therefore responsible for their conduct.

If Mattel or Mattel Mexico prove that MGA, MGA Mexico or Larian gave Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and/or Mr. Vargas authority to act on their behalf, then such individuals were MGA's, MGA Mexico's or Mr. Larian's agents.   This authority may be shown by words or may be implied by the parties' conduct.  This authority cannot be shown by the words of Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and Mr. Vargas alone.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1    **Authority:**  CACI 3705.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 3710

# RATIFICATION

In addition, and independently, Mattel and Mattel Mexico claim that MGA, MGA Mexico, and Mr. Larian also are responsible for the misappropriations by former Mattel employees because Mr. Larian, MGA, and/or MGA Mexico approved that conduct after it occurred.  If you find that former Mattel employees Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and/or Mr. Vargas improperly acquired, used or disclosed Mattel or Mattel Mexico trade secrets, you must decide whether Mr. Larian, MGA, or MGA Mexico approved of such conduct.

To establish their claims, Mattel or Mattel Mexico must prove all of the following as to any particular act of misappropriation by any particular former Mattel employee:

1. That the former Mattel or Mattel Mexico employee intended to act on behalf of Mr. Larian, MGA, or MGA Mexico;

2. That Mr. Larian, MGA, or MGA Mexico learned or should have learned of the conduct of the former Mattel or Mattel Mexico employee; and

3. That Mr. Larian, MGA, or MGA Mexico approved that conduct.

Approval can be shown through words, or it can be inferred from a person's conduct.  Approval can be inferred if a person or company accepts or retains the benefit of an act with actual notice of the unauthorized conduct.  It can also can be inferred from the defendant having an opportunity to learn of the misconduct and failing to investigate or turning a blind eye.   Approval can be inferred from a failure to correct the harm or to reprimand, punish or discharge the employee.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

**Authority:**   CACI 3710 (modified); *Ajaxo v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21, 67-68 (2005) ("they failed to investigate why it had happened. In short, at best, they 'turned a blind eye' to what was happening … top management had the opportunity to know of and either ignore or actually approve of [the former employee's] theft of [Plaintiff's] trade secret"); *Roberts v. Ford Aerospace and Commc'ns Corp.*, 224 Cal. App. 3d 793, 802 (1990) ("ratification may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to repudiate the employee's conduct by redressing the harm done and punishing or discharging the employee"); *In re Estate of Stephens*, 28 Cal. 4th 665, 673 (2002); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1136-37 (E.D. Cal. 2008); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368 (2000) (corporate officer may be vicariously liable for corporation's UTSA violations).

## **Instructions for Mattel's Copyright Claims**

### **17.1**
### **COPYRIGHT—DEFINED**
### **(17 U.S.C. § 106)**

Mattel claims that the defendants MGA, MGA Hong Kong, and Mr. Larian engaged in copyright infringement.  Specifically, Mattel claims that it owns copyrights in the doll-related characters, drawings, designs and sculpts created by or under the direction of Carter Bryant while he was a Mattel employee.  Mattel claims that the final production sculpt for the Bratz dolls sold by MGA, as well as the Bratz characters, the finished dolls sold by MGA in 2001, and the "Ooh La La Cloe" and "Formal Funk Dana" Bratz dolls sold by MGA later, infringe Mattel's copyrights.

The defendants deny that claim.

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

(1)     Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)     Recast, transform, or adapt the work, that is, prepare derivative works based upon the copyrighted work;

(3)     Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)     Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes one who has been assigned ownership through a written transfer document or is deemed the owner because the work was created by an employee of the owner as a "work-made-for-hire," as that term is defined by the

05.07975/3930172.1

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1  copyright law.  In general, copyright law protects against production, adaptation

2  and distribution of substantially similar copies of the owner's copyrighted work

3  without the owner's permission.  An owner may enforce these rights to exclude

4  others in an action for copyright infringement.

1   **Authority:**  9th Cir. Civ. Jury Instr. 17.1 (2007) (modified).

**17.4**

**COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

**(17 U.S.C. § 501A–(b))**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.      Mattel is the owner of a valid copyright (the Court has instructed you previously on how to determine whether Mattel owns its claimed copyrights in Mr. Bryant's doll-related works); and

2.      The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

1   **Authority:**  9th Cir. Civ. Jury Instr. 17.4 (2007).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.13**

**COPYRIGHT INTERESTS—DERIVATIVE WORKS**

**(17 U.S.C. §§ 101, 106(2))**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission. An unauthorized derivative work is considered copyright infringement.

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.13 (2007) (modified).

**17.12**

**COPYRIGHT INFRINGEMENT—ORIGINALITY**

An original work may include or incorporate elements taken from or inspired by prior works, works from the public domain, or works owned by others, with the owner's permission.  The original parts of the plaintiff's work are the parts created:

1. independently by the work's author, that is, the author did not copy it from another work; and

2. by use of at least some minimal creativity.

1      **Authority:**  9th Cir. Civ. Jury Instr. 17.12 (2007) (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **17.3**

## **COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION**

## **(17 U.S.C. § 102(b))**

Copyright allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular expression of an idea can be copyrighted.  Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work.

The right to exclude others from copying extends only to how the author expressed the idea in the copyrighted work.  Although other laws may be violated when someone uses an idea from a copyrighted work, including trade secret law, the copyright law is not violated unless the particular expression of that idea in the work is copied.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1     **Authority:**  9th Cir. Civ. Jury Instr. 17.3 (2007) (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-90-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 17.14

## COMPILATION

## (17 U.S.C. § 101)

An owner is entitled to copyright protection of a compilation.  A compilation is a work formed by the collection and assembling of preexisting materials, elements, or data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.  In addition to receiving copyright protection as visual works, the drawings and sculpts over which Mattel claims ownership may be protected as compilations of elements. Elements of a work that would not be eligible for copyright protection by themselves may still contribute to a compilation of elements that is protectable by copyright if the selection and arrangement of elements constitute an original work of authorship.

The owner of a compilation of elements may enforce the right to exclude others from copying that compilation of elements in an action for copyright infringement.

1   **Authority:**  9th Cir. Civ. Jury Instr. 17.14 (2007) (modified); *Mattel, Inc. v.*

2   *Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004) ("Even if the record

3   had shown that many dolls possess upturned noses, bow lips, and wide-spread

4   eyes, it would not follow that each such doll – assuming it was independently

5   created and not copied from others – would not enjoy protection from copying.");

6   *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114-15

7   (E.D.N.Y. 1978) ("[T]hat plaintiff's toys contained features separately found on

8   other dolls does not render their copyrights invalid.  Rather, the original

9   combination of these features into new dolls makes the dolls copyrightable.");

10  *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 219-20 (S.D.N.Y. 1974)

11  (same); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 15

## COPYRIGHTABILITY OF CHARACTERS

Copyright law protects distinctive characters.  In determining whether a character deserves copyright protection, you should look at the unique combination of elements of the character, including, but not limited to, its visual depictions, names, relationships with other characters, personality traits, and written descriptions, to determine whether it is sufficiently delineated such that it is a unique expression.

You may find that the defendants' works infringe Mattel's claimed copyrights in the Bratz characters if you conclude that they copy recognizable and distinctive traits, attributes, and elements of personalities of the characters portrayed in Mattel's copyrighted works.  In making that determination, you need not apply the "extrinsic" test for copyright infringement (discussed below), which requires a dissection of the elements of the works, but rather you may compare the entire combination of elements of the copyrighted and infringing works.

If you find that MGA's allegedly infringing works copy recognizable and distinctive traits, attributes, and elements of personalities of the characters portrayed in Mattel's copyrighted works, you should find for Mattel on its claim of infringement.  If you find that MGA's allegedly infringing works do not copy recognizable and distinctive traits, attributes, and elements of personalities of the characters portrayed in Mattel's copyrighted works, you should consider whether those works are infringing pursuant to the other instructions I have given and will give you.

**Authority:** *Bach v. Forever Living Products U.S., Inc.*, 473 F. Supp. 2d 1127, 1134-1135 (W.D. Wash. 2007) *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (distinctive characters can be protected by copyright); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the copyright in various works embodying the character of Superman and have thereby acquired copyright protection for the character itself."); *Walt Disney Productions v. Air Pirate*s, 581 F.2d 751, 755 (9th Cir. 1978), cert. denied, 439 U.S. 1132 (1979) (distinctive characters, especially if they are expressed in visual form, are protectable by copyright); *Anderson v. Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. 1989) (copyright protection extended to the Rocky character); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998) (Godzilla); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James Bond); *Funky Films*, 462 F.3d at 1078-79 (looking at characters' actions, dialogue, and interactions with other characters); *Olson*, 855 F.2d at 1452 (looking at character summaries in series treatment, dialogue, and action when determining whether character deserved protection); *Anderson v. Stallone*, 11 U.S.P.Q.2d 1161, 1166-67 (C.D. Cal. 1989) (considering Rocky's physical attributes, speaking mannerisms, and the fact that his name was also the title of the movies about him); *see also Shaw*, 919 F.2d at 1363 (noting lead character's main personality trait-self-assuredness-and the fact that he was well dressed, wealthy, and had expensive taste).

## 17.15

## COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted works.  There are two ways in which Mattel may meet that burden.

First, Mattel may show the defendants copied from the works by showing by a preponderance of the evidence that the defendants actually copied a significant amount of protectable expression from the work.

Second, in the alternative, Mattel may show circumstantially that the defendants copied from the works, by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are sufficient similarities between Mattel's copyrighted works and the defendants' works.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.15 (2007) (modified); *Norse v.*

2    *Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993) (finding that substantial

3    similarity analysis is inapposite where there is proof of copying); *Twentieth*

4    *Century Fox Film Corp. v. Dastar Corp.*, 2000 WL 35503105, at *10 (C.D. Cal.

5    2000) ("[W]here there is admission of copying, the court need not employ the two

6    part [access and substantial similarity] analysis."); *Funky Films, Inc., Inc. v. Time*

7    *Warner Entertainment Co.*, *L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (noting that

8    proof of copying involves demonstration of access and substantial similarity

9    "absent evidence of direct copying"), *Three Boys v. Music Corp. v. Bolton*, 212

10   F.3d 477, 481 (9th Cir. 2000) (same); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th

11   Cir. 1996) (same).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**17.16**

2

**COPYRIGHT INFRINGEMENT—COPYING—ACCESS DEFINED**

3

4     As part of its burden in Instruction No. 17.15, Mattel must show by a

5     preponderance of the evidence that defendants had access to drawings and sculpts

6     created by Carter Bryant and owned by Mattel.  You may find that the defendants

7     had access to Mattel's works if the defendants had a reasonable opportunity to

8     view and copy the works created by Bryant before MGA's works were created.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Authority:**  9th Cir. Civ. Jury Instr. 17.16 (2007).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 16
## COPYRIGHT INFRINGEMENT—SUFFICIENT SIMILARITY

You are to determine whether MGA's Bratz works are sufficiently similar to Mattel's copyrighted works by using a two-step process, which requires application of the "extrinsic test" and the "intrinsic test."  To prevail on its claims that defendants infringed the copyrights in Mattel's copyrighted works, Mattel must satisfy both of these tests.

*First*, you must apply the extrinsic test, which is an objective test of similarity that evaluates whether both the ideas and the specific expressions of the elements depicted in a copyrighted work are substantially similar to the ideas and the expressions of the corresponding elements in a challenged work.  If you find any such similarities between corresponding elements of the works, then you must determine whether any such elements are protectable by copyright law.   Elements of the works are not "protectable" by copyright law if they (i) are required by or necessarily result from the idea of the work; (ii) are purely utilitarian, as opposed to creative; or (iii) are unoriginal.

If you determine that Mattel has proven by a preponderance of the evidence that Mattel's copyrighted works and the defendants' Bratz works share substantial similarities among protectable elements, then you must next consider the intrinsic test.

*Second*, the intrinsic test considers whether the total concept and feel of the works are similar from the perspective of a reasonable ordinary observer.  In this case, the reasonable ordinary observer is a girl between the ages of 6 and 12, and it is from that perspective that you must apply the intrinsic test.

The standard of similarity that you must apply to evaluate whether the total concept and feel of the works are similar varies depending on the type of work. When considering whether Mattel has proven infringement of the sculpts and

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1   sculpt drawings it claims are infringed, you should decide whether MGA's works

2   are virtually identical overall to Mattel's works, or whether they are substantially

3   similar in their protected elements.  When considering whether Mattel has proven

4   infringement of the doll drawings and other works it claims are infringed, you

5   should decide whether MGA's works are substantially similar overall to Mattel's

6   works.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

05.07975/3930172.1

1   **Authority:**  *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-916

2   (9th Cir. 2010); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 916 (7th Cir. 2007)

3   ("The problem is not that both Fred and Fartman have black hair or white tank tops

4   or any other single detail; the problem is that the execution and combination of

5   features on both dolls would lead an objective observer to think they were the

6   same."); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 1993 WL 156199

7   (W.D.N.Y. March 19, 1993) ("While Well-Made tries to argue that Fisher-Price

8   copied the various characteristics of its Puffalump Kids from the standard features

9   that exist on dolls that have appeared in the market, it is the original combination

10  of these features into new dolls that makes the dolls copyrightable.") (citation

11  omitted);  *Fisher-Price Toys v. My Toy Co.*, 385 F. Supp. 218, 220 (S.D.N.Y.

12  1974) ("That [plaintiff's dolls] contained features separately found on other dolls

13  does not render their copyrights invalid. Rather, the original combination of these

14  features into new dolls makes the dolls copyrightable."); *Mattel v. Goldberger Doll*

15  *Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004) (Barbie doll face's particularized

16  combination of an upturned nose, bow lips, and widely spaced eyes was protected

17  by copyright, even though such elements "are the 'idea' of a certain type of doll

18  face" that is in the "public domain.");  *Apple Computer, Inc. v. Microsoft Corp.*, 35

19  F.3d 1435, 1442 (9th Cir. 1994) (the "extrinsic" test "objectively considers

20  whether there are substantial similarities in both ideas and expression") (emphasis

21  in original); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("even

22  unprotectable material should be considered when determining if there is

23  substantial similarity of expression"); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th

24  Cir. 2002) ("the presence of so many generic similarities and the common patterns

25  in which they arise [can help to] satisfy the extrinsic test"); *Jada Toys, Inc. v.*

26  *Mattel, Inc*., 518 F.3d 628, 637 (9th Cir. 2008) (reversing district court's grant of

27  summary judgment because it "did not conduct an objective test as to both ideas

28  and expression as required under the extrinsic test"); *Cavalier v. Random House,*

-101-

1  *Inc.*, 297 F.3d 815, 824 (2002) (jury must consider "evidence under both the

2  extrinsic and intrinsic tests"); *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d

3  1211, 1228 (C.D. Cal. 2006) ("[T]he intrinsic test requires that the work's elements

4  be viewed as a whole.") (citations omitted).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 17

## SUBSTANTIALLY SIMILAR—THE "INVERSE RATIO RULE"

If you conclude that defendants had a high degree of access to Mattel's copyrighted works, Mattel's burden of proving that the defendants' Bratz works are sufficiently similar to Mattel's copyrighted works is lower than it would be if Mattel had not proven that the defendants had a high degree of access to Mattel's copyrighted works, such that it would have been more likely that similarities between the works were the result of independent creation and not copying.

1      **Authority:** *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir.

2 2000) ("Under our case law, substantial similarity is inextricably linked to the issue

3 of access.  In what is known as the 'inverse ratio rule,' we 'require a lower

4 standard of proof of substantial similarity when a high degree of access is

5 shown.'"); *Shaw v. Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Sid &*

6 *Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157,

7 1172 (9th Cir. 1977) (high "degree of access justifies a lower standard of proof to

8 show substantial similarity"); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir.

9 1996); *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004); *Rice v. Fox Broadcasting*

10 *Co.*, 330 F.3d 1170 (9th Cir. 2003) ("Under the 'inverse ratio rule,' we 'require a

11 lower standard of proof of substantial similarity when a high degree of access is

12 shown"); *3D, Ltd. v. Spectratek Technologies, Inc.*, 41 Fed. Appx. 931 (9th Cir.

13 2002) ("Because 3D has presented evidence of Spectratek's access to its pattern,

14 we require less proof of substantial similarity.").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 18
## COPYRIGHT INFRINGEMENT—EVIDENCE OF COPYING NAMES OR TITLES

5       Although names or titles are not copyrightable by themselves, in considering
6   whether defendants copied protected expression from the works that Mattel owns,
7   you may consider whether the defendants copied the titles or names of those
8   works.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Authority:**  *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1994); *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956).

-106-

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 19
## COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS
## CAN INFRINGE TWO-DIMENSIONAL WORKS

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll.  A doll, which consists of different materials or includes aspects that are not visible in a copyrighted drawing, nevertheless will infringe the drawing when the works are sufficiently similar in their appearance.  A three-dimensional work is not an independent creation, or non-infringing, merely because it includes or is a result of artistic or non-artistic work not included in the copyrighted work.  Rather, the question is whether the three-dimensional work is sufficiently similar to the two-dimensional drawings as a whole using the extrinsic/intrinsic test described in earlier instructions.

1     **Authority:**  *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d

2  Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a

3  character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278

4  (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar

5  doll:  "a three-dimensional form of doll, is an infringement of the two-dimensional

6  picture or drawing"); *Entm't Research Group, Inc. v. Genesis Creative Group,*

7  *Inc.*, 122 F.3d 1211, 1222-23 (9th Cir. 1997) ("making decisions that enable one to

8  reproduce or transform an already existing work into another medium or dimension

9  – though perhaps quite difficult and intricate decisions – is not enough to constitute

10  the contribution of something 'recognizably his own,'" even where those decisions

11  are "artistic").

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 20
# DIFFERENCES ARE NOT A DEFENSE TO COPYRIGHT INFRINGEMENT

The existence of differences between works is, in itself, insufficient to defeat a claim of copyright infringement where there also are sufficient similarities between the works.  Works may be infringing even when they have differences, or when the amount of similar material is relatively small in consideration of the entire works.

1   **Authority**:  *See, e.g.*, *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir.

2   1990) ("No plagiarist can excuse the wrong by showing how much of his work he

3   did not pirate.") (citation omitted); *Atari Games Corp. v. Nintendo of Am., Inc.*,

4   1993 WL 207548, at *4 (N.D. Cal. May 18, 1993) ("Atari argues that there are

5   many lock-specific features which it did not include in the Rabbit program.  Atari

6   may not avoid summary judgment by pointing to what it did not copy."); *JCW*

7   *Inv.s., Inc. v. Novelty, Inc.*, 482 F.3d 910, 916 (7th Cir. 2007) (dolls were

8   substantially similar as a matter of law notwithstanding "small cosmetic

9   differences" including that "Fartman has his name emblazoned in red across his

10  chest, his shoes are a different color from Fred's, as is his chair, and Fartman wears

11  a hat"); *Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514, 522

12  (S.D.N.Y. 2005) ("In determining substantial similarity, 'the key . . . is . . . the

13  similarities rather than the differences.') (internal citation omitted); *Concord*

14  *Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969)

15  ("While the trial court placed great emphasis on the minor differences between the

16  two patterns, we feel that the very nature of these differences only tends to

17  emphasize the extent to which the defendant has deliberately copied from the

18  plaintiff."); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565

19  (1985) (citation omitted) (finding that the unauthorized reproduction of 300-400

20  words from a 500-plus page book was actionable because the taking was

21  qualitatively substantial, and stating that "a taking may not be excused merely

22  because it is insubstantial with respect to the infringing work"); *Sid & Marty Krofft*

23  *Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1167 (9th Cir. 1977)

24  (explaining that "an infringement is not confined to literal and exact repetition or

25  reproduction; it includes also the various modes in which the matter of any work

26  may be adopted, imitated, transferred, or reproduced, with more or less colorable

27  alterations to disguise the piracy") (quotation and citation omitted); *Baxter v. MCA,*

28  *Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively

1   small in proportion to the entire work, if qualitatively important, the finder of fact

2   may properly find substantial similarity."); *Loew's Inc. v. Columbia Broad. Sys.*,

3   131 F. Supp. 165, 172 (C.D. Cal. 1955) ("The infringement of a copyright does not

4   depend so much upon the length of the extracts as upon their value.  If they

5   embody the spirit and the force of the work in a few pages, they take from it that in

6   which its chief value consists.") (internal quotation and citation omitted); *Murray*

7   *Hill Pubs. v. ABC Commn's, Inc.*, 264 F.3d 622, 633 (6th Cir. 2001) ("The

8   misappropriation of even a small portion of a copyrighted work . . . may constitute

9   an infringement under certain circumstances.") (citation omitted); *Fred Fisher, Inc.*

10  *v. Dillingham*, 298 F. 145, 148 (S.D.N.Y. 1924) (L. Hand, J.) (eight note "ostinato"

11  held to infringe copyright in song); *Curtis v. General Dynamics Corp.*, 1990 WL

12  302725, at *9 (W.D. Wash. Sep. 26, 1990) ("Defendants argue that their poster

13  could not infringe plaintiff's copyright because only a small proportion of its

14  design could possibly be considered similar.  This argument is both factually and

15  legally without merit.").

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 21</u>**

2

**<u>ALTERATION OF COLOR NOT A DEFENSE TO COPYRIGHT</u>**

3

**<u>INFRINGEMENT</u>**

4

5        The unauthorized reproduction of a copyrighted work that changes the

6    colors or color scheme of the copyrighted work is nevertheless an act of copyright

7    infringement.  In other words, changing the color scheme of a copyrighted work is

8    not a defense to copyright infringement.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2      **Authority**:  *Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.*, 558 F.2d

3   1090, 1094 n.6 (2d Cir. 1977) ("[O]nce a copyrighted design is found to have been

4   copied, mere changes in the color scheme of the copied design would ordinarily

5   not protect the defendant from a claim of infringement."); *McCaskill v. Ray*, 2008

6   WL 2222056, at *3 (11th Cir. May 30, 2008) (holding that district court erred in

7   granting summary judgment in favor of plaintiff for copyright infringement when

8   portions of the accused work were "identical" to or "essentially the same except for

9   minor changes in wording or color coding" as plaintiff's work); *Tennessee*

10  *Fabricating Co. v. Moultrie Mfg. Co.*, 421 F.2d 279, 284 (5th Cir. 1970) ("no

11  doubt" that defendant does not avoid infringement by adding additional straight

12  lines to plaintiff's filigree pattern for metal casting); *Universal Pictures Co. v.*

13  *Harold Lloyd Corp.*, 162 F.2d 354, 360 (9th Cir. 1947) ("[I]nfringement is not

14  confined to literal and exact repetition or reproduction; it includes also the various

15  modes in which the matter of any work may be adopted, imitated, transferred, or

16  reproduced, with more or less colorable alterations to disguise the piracy.");

17  *Mendler v. Winterland Production, Ltd.*, 207 F.3d 1119, 1124 (9th Cir. 2000)

18  (Apparel manufacturer's modifications to photograph that was licensed by

19  photographer for use as "guide, model, and example for illustrations on screen-

20  printed" apparel, which included digital reproduction, horizontal flip of image,

21  extension of subject sailing vessel, and changes in color and tonal range, did not

22  destroy photographic quality of photograph, and manufacturer's use of photograph

23  was thus unauthorized by license, which prohibited photographic reproductions,

24  and infringed photographer's copyright).

25

26

27

28

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 22

2

## COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT

3

## NECESSARY FOR  LIABILITY

4

5        Copyright infringement does not require intent to infringe or any particular

6   state of mind by the infringer.  A defendant may be held liable for copyright

7   infringement even if he believes in good faith that he is not infringing a copyright.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      **Authority:**  *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven

2  when the defendant believes in good faith that he is not infringing a copyright, he

3  may be found liable."); *L.A. News Serv. v. Conus Communications Co.*,

4  969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require

5  intent or any particular state of mind.").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-115-

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

**17.20**

**DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT
ELEMENTS AND BURDEN OF PROOF**

If you find that MGA or MGA Hong Kong infringed a Mattel copyrighted work, you may consider Mattel's claim that MGA's CEO Isaac Larian vicariously infringed that copyright.  Mattel has the burden of proving each of the following by a preponderance of the evidence:

1.     Isaac Larian profited directly from the infringing activity of MGA; and

2.     Isaac Larian had the right and ability to supervise or control the infringing activity of MGA.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for Isaac Larian on Mattel's claim for copyright infringement, unless you find that Mr. Larian is liable for contributory infringement under the instruction that follows.

1

**Authority:**  9th Cir. Civ. Jury Instr. 17.20 (2007) (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 17.21

## DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.

If you find that MGA infringed a Mattel copyrighted work, but that MGA Hong Kong and/or Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Isaac Larian contributorily infringed that copyright.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.     Isaac Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.     Isaac Larian and/or MGA Hong Kong intentionally induced or materially contributed to MGA's infringing activity.

If you find that MGA infringed a Mattel copyright and you also find that Mattel has proven both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Isaac Larian, and, as to Isaac Larian, also failed to prove direct or vicarious infringement, your verdict should be for those defendants.

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.21 (2007) (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instructions for Mattel's Unfair Competition Claims**

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 23**
**UNFAIR COMPETITION—ESSENTIAL ELEMENTS**

Mattel claims that defendants have engaged in unfair competition by inducing, encouraging or assisting Mattel employees to work against Mattel's interests for MGA's benefit while those employees were still employed by Mattel, including by using Mattel resources for MGA's benefit, and by engaging in other wrongful conduct.  To prevail on this claim, Mattel must prove by a preponderance of the evidence that:

(1) defendants engaged in an unlawful, unfair or fraudulent business practice; and

(2) Mattel suffered actual injury and lost money or property as a result of defendant's actions.

An "unfair" business practice is one that either offends an established public policy or is immoral, unethical, oppressive or unscrupulous conduct that threatens or harms competition in an industry.  A practice may be "unfair" even if it is not specifically prohibited by some other law.  The violation of any statutory or common law can serve as a basis for a finding that defendants' conduct was "unlawful."   A "fraudulent" business practice is one that is likely to deceive members of the public.  A practice may be prohibited as "unfair" or "fraudulent" even if it is not "unlawful," and vice versa.

1

2

3

4

5

6

7

**Authority:**  Cal. Bus. & Prof. Code § 17200 ; *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1098 (C.D. Cal. 2009); *Puentes v. Wells Fargo Home Mortg.*, Inc., 160 Cal. App. 4th 638, 645 (2008); *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th 798, 812 (2007); *Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *6 (N.D. Cal. Aug. 31, 2010); C*el-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **Instructions for Adverse Inferences**

2

3         **MATTEL'S SPECIAL JURY INSTRUCTION NO. 24**

4         **ADVERSE INFERENCE FROM SPOLIATION**

5

6       The plaintiff, Mattel, contends that defendants did not take appropriate steps

7 to preserve relevant evidence and destroyed such evidence.  Defendants deny that

8 contention.

9       If you find that relevant evidence that was within defendants' control is

10 missing or has been destroyed and that the evidence is missing because of their bad

11 faith or negligent, unjustified or careless actions or inaction, you may infer that

12 such evidence, if available now, would have been favorable to Mattel and adverse

13 to defendants.

14       The defendants' destruction of evidence was negligent, unjustified or

15 careless if they had notice that the evidence might be relevant to litigation when

16 they destroyed the evidence or made the evidence unavailable.  A person is under a

17 duty to preserve evidence that he or she knows, or reasonably should know, could

18 be relevant to a case.

19

20

21

22

23

24

25

26

27

28

1   **Authority:**  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993);

2   *Akonia v. United States*, 938 F.2d 158, 161 (9th Cir. 1991), *cert. denied*, 503 U.S.

3   962 (1992); *Housing Rights Center v. Sterling*, 2005 WL 3320739, at *8 (C.D. Cal.

4   March 2, 2005); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99,

5   110 (2d Cir. 2002); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228,

6   232-33 (6th Cir. 2002);  *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D.

7   543, 557 (N.D. Cal. 1987) ("Where one party wrongfully denies another the

8   evidence necessary to establish a fact in dispute, the court must draw the strongest

9   allowable inferences in favor of the aggrieved party.");  *Beaven v. U.S. Dep't of*

10  *Justice*, 622 F.3d 540, 554-55 (6th Cir. 2010) ("The district court did not abuse its

11  discretion in imposing a non-rebuttable adverse inference after finding that the

12  Defendants' destruction of the folder "severely compromised" the Plaintiffs' case

13  by depriving the Plaintiffs of the most relevant piece of evidence to prove their

14  claims."); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124,

15  at *10 (N.D. Cal. July 2, 2009) ("In the Ninth Circuit, spoliation of evidence raises

16  a presumption that the destroyed evidence goes to the merits of the case, and

17  further, that such evidence was adverse to the party that destroyed it.").

18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 25
## ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION

You have heard certain witnesses decline to answer questions on the grounds of their Fifth Amendment privilege against self-incrimination.

The Fifth Amendment of the United States Constitution affords every person the right to decline to answer any questions if he or she believes that the answers may tend to incriminate them. However, in civil cases like this one, you are permitted, but not required, to draw the inference that the information withheld by these witnesses would have been unfavorable to them and/or favorable to another party.

Any inference you may draw should be based upon all the facts and circumstances in this case as you may find them.

1    **Authority:** *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are

2    free to invoke the Fifth Amendment in civil cases, but the court is equally free to

3    draw adverse inferences from their failure of proof.") (citing *Baxter v. Palmigiano*,

4    425 U.S. 308, 318 (1976));  *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir.

5    1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact

6    finders from drawing adverse inferences against a party who refuses to testify.").

## **Instructions for Personal Jurisdiction**

## **MATTEL'S SPECIAL JURY INSTRUCTION NO. 26**
## **SPECIFIC PERSONAL JURISDICTION**

MGA Mexico contends that the Court lacks jurisdiction over it, such that the Court and jury do not have any power to issue orders or verdicts against it.  The court may exercise jurisdiction over MGA Mexico if:

1.      MGA Mexico purposefully directed its activities at California or purposefully availed itself of the privilege of conducting activities in California, and thereby invoking the benefits and protections of California's laws;

2.       Mattel's claims relate to MGA Mexico's California-related activities; and

3.      The Court's exercise of jurisdiction is not unreasonable.

If Mattel proves elements 1 and 2 by a preponderance of the evidence, then the Court may properly exercise jurisdiction over MGA Mexico unless MGA Mexico meets its burden of presenting compelling evidence that the Court's exercise of personal jurisdiction over it would be unreasonable.

1          **Authority:** *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985);

2     *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

## **MATTEL'S SPECIAL JURY INSTRUCTION NO. 27**

## **SPECIFIC PERSONAL JURISDICTION—PURPOSEFUL DIRECTION**

MGA Mexico purposefully directed its activities at California if:

1.      MGA Mexico committed an intentional act;

2.      expressly aimed at California; and

3.      caused harm that MGA Mexico knew was likely to be suffered in California.

The requirement that MGA Mexico's act be expressly aimed at California is satisfied if MGA Mexico engaged in wrongful conduct targeted at Mattel, whom MGA Mexico knows to be California resident.  The brunt of the harm caused by MGA Mexico does not need to be suffered in California.  Instead, only a jurisdictionally sufficient amount of harm needs to be suffered in California.  It does not matter that even more harm might have been suffered outside of California.

1      **Authority:** *Calder v. Jones*, 465 U.S. 783, 789 (1984); *Yahoo! Inc. v. La*
2   *Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir.
3   2006) (en banc) (holding that as long as a jurisdictionally sufficient amount of
4   harm is suffered in the forum state, it does not matter that even more harm might
5   have been suffered in another state.); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,
6   1111-14 (9th Cir. 2002).

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 28

## SPECIFIC PERSONAL JURISDICTION—PURPOSEFUL AVAILMENT

MGA Mexico purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws, if MGA Mexico has done business in California, such as executing or performing a contract there.

1

**Authority:** *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 29

## SPECIFIC PERSONAL JURISDICTION—CLAIM ARISES OUT OF OR RELATES TO DEFENDANT'S FORUM-RELATED ACTIVITIES

If Mattel would not have been injured but for MGA Mexico's acts directed toward Mattel in California, Mattel's claims arise out of or are related to MGA Mexico's forum-related activity.

05.07975/3930172.1

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1       **Authority:**  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th

2  Cir. 1998).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 30

## SPECIFIC PERSONAL JURISDICTION—THE COURT'S EXERCISE OF

## PERSONAL JURISDICTION IS REASONABLE

To determine whether the Court's exercise of personal jurisdiction over MGA Mexico is reasonable, the following factors should be balanced:

1.     the extent of MGA Mexico's purposeful interjection into the forum state;

2.     the burden on MGA Mexico in defending in the forum;

3.     the extent of the conflict with the sovereignty of the defendant's state;

4.     the forum state's interest in adjudicating the dispute;

5.     the most efficient judicial resolution of the controversy;

6.     the importance of the forum to the plaintiff's interest in convenient and effective relief; and

7.     the existence of an alternative forum.

All of these factors must be balanced, and whether a single factor is met is not dispositive.  MGA Mexico must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.  For example, a potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Additionally, California maintains a strong interest in providing an effective means of redress for its residents tortiously injured.

1      **Authority:**  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985);

2    *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

1

## **Instructions for Choice of Law**

2

3

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 31**

4

**CHOICE OF LAW FOR MACHADO AND MGA MEXICO**

5

6        The law on which I have instructed you, which is based on California law,

7    applies to Mattel's misappropriation of trade secret claims against MGA

8    Entertainment, Inc. and Isaac Larian.  However, Mr. Machado and MGA Mexico

9    claim that Mexico law, not California law, should apply to Mattel's claim for

10    misappropriation of trade secrets against them.

11        Mr. Machado and MGA Mexico bear the burden of proving that Mexico

12    law, not California law, apply to Mattel's trade secret misappropriation claims

13    against them.

14        First, Machado and MGA Mexico must prove that there is a substantive

15    conflict between the law of Mexico and the law of California.

16        Second, if such a conflict exists, Machado and MGA Mexico must prove

17    that both California and Mexico have a legitimate interest in having their own law

18    applied to Mattel's trade secret misappropriation claims against Machado and

19    MGA Mexico.

20        If you find that only California has a legitimate interest, that law will apply.

21    On the other hand, if Machado and MGA Mexico have demonstrated that only

22    Mexico has a legitimate interest, that law will apply.

23        Third, if you find that both California and Mexico have a legitimate interest

24    in having their law applied, then Machado and MGA Mexico must prove that

25    Mexico's state interest will be more impaired if the law of Mexico is not applied.

26    If you find that California's interest would be more impaired, then California law

27    will apply.  If you find that Machado and MGA Mexico have demonstrated

28

1   Mexico's interest would be more impaired than California's interest, only then will

2   Mexico law.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Authority:**  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996); *Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 n.2 (1974).

**<u>Instructions for MGA's Affirmative Defense of Statute of Limitations</u>**

**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 32</u>**
**<u>AFFIRMATIVE DEFENSE—INTRODUCTION</u>**

I will now instruct you on MGA's, MGA Mexico's, MGA Hong Kong's, Mr. Larian's, and Mr. Machado's affirmative defenses.  The defendants bear the burden of proving their affirmative defenses.  You should consider each affirmative defense as to each claim brought by Mattel separately.  If you find that a particular defendant has proved an affirmative defense that provides a complete defense to any particular claim, then you should find for that defendant on that claim.  If, however, you find that a defendant has not proved that an alleged affirmative defense completely bars a claim, and Mattel has proved that claim, then you should find for Mattel on that claim.

1    **Authority:**  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 969 (2010) ("a

2    defendant that advances an affirmative defense to the plaintiff's claims bears the

3    burden of proof on the defense."); *Henley v. DeVore*, --- F. Supp. 2d ----, 2010 WL

4    3304211, *4 (C.D. Cal. 2010) ("Because fair use is an affirmative defense to

5    copyright infringement, the defendant bears the burden of proving fair use.");

6    *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("a defense is an

7    affirmative defense if it will defeat a plaintiff's claim even when the plaintiff has

8    stated a prima facie case for recovery under the applicable law.")

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 33

# AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

The defendants contend that Mattel's claims relating to Bratz and Carter Bryant were not filed within the time set of law.  This time is called the "statute of limitations."

Mattel's claims were filed on April 27, 2004.  To decide whether that filing was timely, you should examine when Mattel's claims "accrued," which is the date on which Mattel discovered the claims it has brought in this case or knew of facts which should have led it to discover those claims.

Each respective statute of limitations began to run only when Mattel had an awareness of facts sufficient to identify a particular claim it has brought.  It does not matter whether or when Mattel possessed facts which would have permitted it to bring claims different from the claims it has brought.  Rather, your inquiry must be into when Mattel first discovered the claims it actually brought in this case or knew of facts which should have led it to discover those claims.

Mattel was not required to bring a lawsuit based on suspicions alone.  The period of time when Mattel only suspected, but had no evidence of, the wrongdoing alleged by Mattel does not count in considering whether Mattel's claims are timely.  Nor did Mattel have an obligation to sue based on rumor or innuendo.

State law claims.

The statute of limitations for Mattel's claims are different.  For Mattel's claims of interference with contract and aiding and abetting breach of the duty of loyalty, the statutes of limitations are two years.  For Mattel's claims of trade secret misappropriation and conversion, the statutes of limitations are three years.

To succeed on their statute of limitations defense as to these claims, the defendants must prove that Mattel's claimed harm occurred more than two or three

1  years, dependent on the claim at issue, prior to April 27, 2004, when Mattel filed

2  this action.  However, regardless of when the claimed harm occurred, Mattel's

3  claims were timely filed if it did not discover, and did not know of facts that should

4  have caused it to discover, that Carter Bryant created Bratz while employed by

5  Mattel; that Mr. Bryant entered into a contract with and worked with MGA while

6  he was still employed by Mattel; that the defendants knew that Mr. Bryant was a

7  Mattel employee when they purported to acquire Bratz from Mr. Bryant; and that

8  the defendants engaged in illegal conduct in connection with Mr. Bryant.

9          Copyright infringement claim.

10         The statute of limitations for copyright infringement is three years.  The

11  statute of limitations for that claim began to run only when Mattel had an

12  awareness of facts sufficient to identify the particular claim.  Even if Mattel

13  discovered or knew of facts which would have led it to discover that the defendants

14  were allegedly infringing Mattel's copyrights in works other than claimed

15  copyrighted works created by Mr. Bryant at issue here, that would not trigger

16  accrual of Mattel's claim of copyright infringement in the copyrighted works at

17  issue here.

18         To succeed on their statute of limitations defense, the defendants must prove

19  that Mattel's claimed harm occurred more than three years prior to April 27, 2004,

20  when Mattel filed this action.  However, regardless of when the claimed harm

21  occurred, Mattel's claims were timely filed if it did not discover, and did not know

22  of facts that should have caused it to discover, that Carter Bryant created Bratz-

23  related copyrighted works while employed by Mattel, that Mattel is the rightful

24  owner of a valid copyright in those copyrighted works, that the defendants copied

25  original elements from the copyrighted works, and that there are sufficient

26  similarities between the copyrighted works and defendants' works.

27         If you find that Mattel filed its copyright infringement claim more than three

28  years after it discovered infringement of its copyrights in Mr. Bryant's designs,

1   Mattel can still recover for all infringing acts that took place within three years

2   before Mattel filed its complaint on April 27, 2004, *i.e.*, for all acts occurring after

3   April 27, 2001.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-143-

**Authority:** CACI 4421 (modified); CACI 455 (modified); Cal. Civ. Code § 3426.6 (claim "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered"); *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585 (2008); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. . . . [S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "'an awareness of sufficient facts to identify a particular cause of action . . . [It does] not mean the kind of notice—based on hints, suspicions, hunches or rumors—that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit.'") (citation omitted); 17 U.S.C. § 507(b); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007).

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 34

## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS—

## FRAUDULENT CONCEALMENT

Mattel claims that the defendants fraudulently concealed the facts underlying Mattel's claims related to Mr. Bryant and Bratz.  The defendants deny these allegations.

To prove fraudulent concealment, Mattel must show the following by a preponderance of the evidence:

(1)  the defendants took affirmative steps to conceal the facts that could have led to Mattel to discover that Carter Bryant created Bratz while employed by Mattel, that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel, and/or that the defendants knew that Mr. Bryant was a Mattel employee when they purported to acquire Bratz from him and engaged in illegal conduct in doing so; and

(2)  Mattel was not aware of such facts that either did or would have, with diligence, led Mattel to discover that Carter Bryant created Bratz while employed by Mattel, that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel, and/or that the defendants knew that Mr. Bryant was a Mattel employee when they purported to acquire Bratz from him and engaged in illegal conduct in doing so.

If you so find by the preponderance of the evidence, then you should find that Mattel's claims were timely filed and find against the defendants' on their statute of limitations defense.

1      **Authority:**  Jury Instruction No. 35, as given (Phase 1B); *Snapp &*
2  *Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal.
3  App. 4th 884, 890 (2002); *Regents of University of California v. Superior Court*,
4  20 Cal. 4th 509, 533 (1999); *Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 99
5  (1976).
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Remedies Instructions for Mattel's Claims</u>**


**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 35</u>**
**<u>INTRODUCTION TO DAMAGES</u>**


  I will now instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

-147-

1   **Authority:**  Phase 1B Jury Instructions, Instruction No. 36 (modified).

1

**Instructions for Compensatory Damages**

2

3

**CACI 3901**

4

**DAMAGES FOR INTENTIONAL INTERFERENCE WITH**

5

**CONTRACTUAL RELATIONS**

6

7       If you decide that Mattel has proved its claim against MGA and Mr. Larian

8   for intentional interference with contractual relations, you also must decide how

9   much money will reasonably compensate Mattel for the harm.  This compensation

10   is called "damages."

11       The amount of damages must include an award for each item of harm that

12   was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular

13   harm could not have been anticipated.

14       Mattel does not have to prove the exact amount of damages that will provide

15   reasonable compensation for the harm.  However, you must not speculate or guess

16   in awarding damages.

17       The following are the specific items of damages claimed by Mattel:

18       (1)     Compensatory and general damages, including Mattel's lost profits

19   and disgorgement of profits or advantages obtained  by MGA and Mr. Larian as a

20   result of their wrongful conduct;

21       (2)     Prejudgment interest at the maximum rate, calculated from the date

22   Mattel's claim arose;

23       (3)     Punitive damages.

24

25

26

27

28

1          **Authority:**  CACI 3901; *GHK Assocs. v. Mayer Group*, 224 Cal. App. 3d

2     856, 874-76 (1990); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal.

3     App. 3d 1120, 1140 (1986).

## CACI 3901

## DAMAGES FOR AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY

If you decide that Mattel has proved its claim against MGA and Mr. Larian for aiding and abetting breaches of the duty of loyalty by former Mattel employees, including Carter Bryant, Ronald Brawer, Jorge Castilla, Daniel Cooney, Isabel Cabrera, Beatriz Morales, Maria Elena Salazar, and Ryan Tumaliuan, you must decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including Mattel's lost profits and disgorgement of profits or advantages obtained  by MGA and Isaac Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.

1    **Authority:**  CACI 3901.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CACI 3903N

2

## LOST PROFITS

3      To recover damages for lost profits, Mattel must prove it is reasonably

4   certain it would have earned profits but for defendants' conduct.

5      To decide the amount of damages for lost profits, you must determine the

6   gross amount Mattel would have received but for defendants' conduct and then

7   subtract from that amount the expenses Mattel would have had if defendants'

8   conduct had not occurred.

9      The amount of the lost profits need not be calculated with mathematical

10   precision, but there must be a reasonable basis for computing the loss.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:** CACI 3903N.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 36

## DISGORGEMENT OF PROFITS

Under the law, a person is not permitted to retain profits or advantages he obtained by engaging in tortuous, wrongful acts.  Accordingly, if you decide that Mattel has proved its claim against MGA and Isaac Larian for aiding and abetting breach of the duty of loyalty or intentional interference with contract and that MGA and/or Isaac Larian obtained profits or advantages because of these wrongful acts, those profits and advantages should be awarded to Mattel.

**Authority:**  *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("Although there are few reported cases addressing the appropriate remedy, those we have found have also required employees to turn over profits received as a result of breaching their duty of loyalty."); Restatement (2d) of Agency, § 403 ("If an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal."); Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty"); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (upholding accounting of all insurance commissions wrongfully diverted to defendant in action for breach of fiduciary duty); *Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951) ("It is an integral part of that rule that, if the agent makes a secret profit from the agency, the principal may recover such profit.").

1

## **<u>CACI 4409</u>**

2

## **<u>REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET</u>**

3

4    If Mattel proves that MGA, MGA Mexico, Mr. Larian and/or Mr. Machado

5   misappropriated its trade secrets, then Mattel is entitled to recover damages if the

6   misappropriation caused Mattel to suffer an actual loss or MGA, MGA Mexico,

7   Isaac Larian and/or Machado to be unjustly enriched.

8    If MGA, MGA Mexico, Mr. Larian and/or Mr. Machado's misappropriation

9   did not cause Mattel to suffer an actual loss and did not cause the defendants to be

10   unjustly enriched, Mattel may still be entitled to a reasonable royalty for no longer

11   than the period of time the use could have been prohibited.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Authority:**  CACI 4409 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-158

1
2

**<u>CACI 4409</u>**

**<u>TRADE SECRET DAMAGES—ACTUAL LOSS</u>**

3      Mattel is entitled to recover damages for misappropriation if the

4 misappropriation caused Mattel to suffer an actual loss.

5      One measure of actual loss is lost profits.  To recover damages for lost

6 profits, Mattel must prove it is reasonably certain it would have earned profits but

7 for the misappropriation by MGA, MGA Mexico, Mr. Larian and/or Mr. Machado.

8 To decide the amount of damages for lost profits, you must determine the gross

9 amount Mattel would have received but for the misappropriation and then subtract

10 from that amount the expenses Mattel would have had if the misappropriation had

11 not occurred.

12      The amount of the lost profits need not be calculated with mathematical

13 precision, but there must be a reasonable basis for computing the loss.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1          **Authority:**  CACI 4409 (referring to CACI 3903N regarding instructions for

2    lost profits).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CACI 4410</u>

## <u>TRADE SECRET DAMAGES—UNJUST ENRICHMENT</u>

MGA, MGA Mexico, Mr. Larian and/or Mr. Machado were unjustly enriched if their misappropriation of Mattel's trade secrets caused them to receive a benefit that they otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of the benefit obtained by MGA, MGA Mexico, Mr. Larian and/or Mr. Machado which would not have been achieved except for their misappropriation. Then subtract from that amount their reasonable expenses, if any. In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Mattel's actual loss.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1       **Authority:**  CACI 4410.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CACI 4411

# TRADE SECRET DAMAGES—WILLFUL AND MALICIOUS MISAPPROPRIATION

If you decide that the defendants' misappropriation caused Mattel harm, you must decide whether the defendants acted willfully and maliciously.

"Willfully" means that the defendants acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that the defendants acted with an intent to cause injury, or that the defendants' conduct was despicable and was done with a willful and knowing disregard for the rights of others. "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. The defendants acted with knowing disregard if they were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

1       **Authority:**  CACI 4411 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 37**
**TRADE SECRET REASONABLE ROYALTY CALCULATION**

If you decide that neither actual damages nor unjust enrichment have been proved by Mattel, you may determined a reasonable royalty for the misappropriated trade secrets. A reasonable royalty is the amount a willing buyer would have been reasonably required to pay a willing seller for the right to use Mattel's trade secrets in a hypothetical negotiation taking place at the time of the misappropriation. In considering this hypothetical negotiation, you should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must assume that the parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, not simply a royalty either party would have preferred.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time of the misappropriation. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by Mattel for licensing the Mattel trade secrets, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other intellectual property comparable to the Mattel trade secrets.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her trade secrets by not licensing others to use the  trade secrets or by granting licenses under special conditions designed to preserve the trade secrets.

1        (5) The commercial relationship between the licensor and licensee,

2  such as whether they are competitors in the same territory in the same line of

3  business, or whether they are inventor and promoter.

4        (6) The effect of selling the Mattel trade secrets in promoting sales of

5  other products of the licensee, the existing value of the invention to the licensor as

6  a generator of sales of products not embodying the Mattel trade secrets, and the

7  extent of such derivative or convoyed sales.

8        (7) The duration of the Mattel trade secrets and the term of the license.

9        (8) The established profitability of the product made under the Mattel

10  trade secrets, its commercial success, and its current popularity.

11        (9) The utility and advantages of the Mattel trade secrets over the old

12  modes or devices, if any, that had been used for working out similar results.

13        (10) The nature of the Mattel trade secrets, the character of the

14  commercial embodiment of it as owned and produced by the licensor, and the

15  benefits to those who have used the Mattel trade secrets.

16        (11) The extent to which the defendant has made use of the Mattel

17  trade secrets and any evidence probative of the value of that use.

18        (12) The portion of the profit or of the selling price that may be

19  customary in the particular business or in comparable business to allow for the use

20  of the Mattel trade secrets or analogous trade secrets.

21        (13) The portion of the realizable profits that should be credited to the

22  Mattel trade secrets as distinguished from other elements, the manufacturing

23  process, business risks, or significant features or improvements added by the

24  infringer.

25        (14) The opinion and testimony of qualified experts.

26        (15) The amount that a licensor (such as Mattel) and a licensee (such

27  as MGA) would have agreed upon (at the time the infringement began) if both had

28  been reasonably and voluntarily trying to reach an agreement, that is, the amount

1 which a prudent licensee—who desires, as a business proposition, to obtain a

2 license to manufacture and sell a particular article embodying the Mattel trade

3 secrets—would have been willing to pay as a royalty and yet be able to make a

4 reasonable profit and which amount would have been acceptable by a prudent trade

5 secrets owner who was willing to grant a license.

6      No one factor is dispositive and you can and should consider the evidence

7 that has been presented to you in this case on each of these factors.  You may also

8 consider any other factors which in your mind would have increased or decreased

9 the royalty the infringer would have been willing to pay and the trade secret owner

10 would have been willing to accept, acting as normally prudent business people.

11 The final factor establishes the framework which you should use in determining a

12 reasonable royalty, that is, the payment that would have resulted from a negotiation

13 between the trade secret owner and the defendant taking place at the time of the

14 infringement.

15      Evidence of things that happened after the misappropriation took place can

16 be considered in evaluating the reasonable royalty to the extent that the evidence

17 aids in assessing what royalty would have resulted from a hypothetical negotiation.

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  Federal Circuit Model Patent Jury Instructions, Instruction No.

2    6.7; *LinkCo, Inc. v. Fujitsu Ltd*.  232 F.Supp.2d 182, 190 (S.D.N.Y.

3    2002)(discussing application of *Georgia-Pacific* factors in trade secret case); *O2*

4    *Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*,  399 F.Supp.2d 1064, 1077

5    (N.D. Cal. 2005) (same); *Veritas Operating Corp. v. Microsoft Corp.,*  2008 WL

6    7404617 (W.D. Feb. 26, Wash. 2008) (same).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CACI 2102

2

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

3       If you decide that Mattel has proved its claim against the defendants MGA,

4   Isaac Larian, and MGA Hong Kong for conversion, you also must decide how

5   much money will reasonably compensate Mattel for the harm.  This compensation

6   is called "damages."

7       Mattel must prove the amount of its damages.  However, Mattel does not

8   have to prove the exact amount of damages that will provide reasonable

9   compensation for the harm.  You must not speculate or guess in awarding

10  damages.

11      The following are the specific items of damages claimed by Mattel:

12      (1)     The fair market value of the tangible Bratz works created by Carter

13  Bryant while he was employed by Mattel; and

14      (2)     Prejudgment interest at the maximum rate, calculated from the date

15  Mattel's property was converted;

16      (3)     Reasonable compensation for the time and money spent by Mattel in

17  attempting to recover this property;

18      (4)     Punitive damages.

19      Fair market value is measured as of the time the tangible item was

20  converted.  Fair market value is the highest price that a willing buyer would have

21  paid to a willing seller assuming that there is no pressure on either one to buy or

22  sell, and that the buyer and seller know all the uses and purposes for which the

23  tangible items are reasonably capable of being used.

24

25

26

27

28

1    **Authority:**  CACI 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61

2  (1937).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

## 17.22

## COPYRIGHT—DAMAGES

## (17 U.S.C. § 504)

5      If you find for the plaintiff, Mattel, on its copyright infringement claim

6 against the defendants, you must determine Mattel's damages.  Mattel is entitled to

7 recover the actual damages suffered as a result of the infringement.  As the

8 measure of its actual damages, Mattel, as the plaintiff, has the right to seek to

9 recover either the fair market value of a license for the rights infringed or its lost

10 profits.  In addition to actual damages,  Mattel is also entitled to recover any profits

11 that each defendant made that are attributable to their infringement.  Mattel must

12 prove damages by a preponderance of the evidence.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007) (modified); *Lucky Break*

2  *Wishbone Corp. v. Sears Roebuck and Co.*, 373 Fed. Appx. 752, 757 (9th Cir.

3  2010) (finding that "[t]he jury is not restricted . . . to awarding lost profits" where

4  evidence of lost profits and a fair market value of a lost license fee were presented

5  to the jury, defendant claimed that lost profits were appropriate actual damage

6  measurement, and defendant claimed jury award was too high to account for

7  appropriate deduction of costs to arrive at lost profits); *Polar Bear Prods. Inc. v.*

8  *Timex Corp.,* 384 F.3d 700, 708-710 (9th Cir. 2004) (evaluating a claim for both a

9  fair market value lost license fee and lost profits as additive actual damages); *On*

10  *Davis v. The Gap, Inc.,* 246 F.3d 152, 159 (2001) ("[T]he statute [17 U.S.C. §

11  504(b) provides for the recovery of both the infringer's profits and the copyright

12  owner's 'actual damages.'"); *Oracle Corp. v. SAP AG*, Case No.07-cv-01658-PJH

13  (N.D. Cal. 2008), Dkt.  No. 1005 (final jury instructions).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **17.23**

2

## **COPYRIGHT—DAMAGES—LOST LICENSE FEE**

3

## **(17 U.S.C. § 504(b))**

4

5        Mattel is entitled to recover the actual damages suffered as a result of the

6  infringement. One measure of actual damages is the amount of money adequate to

7  compensate Mattel for the reduction of the fair market value of the copyrighted

8  works caused by the infringement. The reduction of the fair market value of the

9  copyrighted works is the amount a willing buyer would have been reasonably

10 required to pay a willing seller at the time of the infringement for the actual use

11 made by the defendants of  Mattel's works.  That amount also could be represented

12 by the lost license fees Mattel would have received for the defendants'

13 unauthorized use of Mattel's works.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-173-

1   **Authority:**  9th Cir. Civ. Jury Instr. 17.23, comments (2007) ("This

2   instruction is based upon a jury instruction approved by the Ninth Circuit as

3   'properly stat[ing] the law of damages in a copyright infringement suit' and 'in line

4   with our circuit's caselaw.' *Wall Data v. Los Angeles County Sheriff's Dept*., 447

5   F.3d 769, 787 (9th Cir. 2006).  The circuit has noted that '[a]ctual damages are

6   usually determined by the loss in the fair market value of the copyright, measured

7   by the profits lost due to the infringement or by the value of the use of the

8   copyrighted work to the infringer.' *Polar Bear Prods., Inc. v. Timex Corp.,* 384

9   F.3d 700, 708-09 (9th Cir. 2004) ('[I]t is not improper for a jury to consider either

10  a hypothetical lost license fee or the value of the infringing use to the infringer to

11  determine actual damages, provided the amount is not based on 'undue

12  speculation.'') (emphasis added) (quoting *McRoberts Software, Inc. v. Media 100,*

13  *Inc.,* 329 F.3d 557, 566 (7th Cir. 2003)").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 38
## FAIR MARKET VALUE LICENSE CALCULATION

To calculate the fair market value of a license for the copyrighted works that were infringed as a measure of Mattel's actual damages, you should determine a "reasonable royalty" for those copyrighted works.  A reasonable royalty is the amount a willing buyer would have reasonably been required to pay a willing seller for the right to use the copyrighted works in a hypothetical negotiation taking place at a time when the infringement began.  In considering this hypothetical negotiation, you should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  You must assume that the parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, not simply a royalty either party would have preferred.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by Mattel for the licensing of the Mattel copyrights proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other intellectual property comparable to the Mattel copyrights.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her exclusive use of the copyrights by not licensing others to use

05.07975/3930172.1

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1  the copyrights or by granting licenses under special conditions designed to

2  preserve that exclusive use.

3       (5) The commercial relationship between the licensor and licensee,

4  such as whether they are competitors in the same territory in the same line of

5  business, or whether they are inventor and promoter.

6       (6) The effect of selling the Mattel copyrights in promoting sales of

7  other products of the licensee, the existing value of the invention to the licensor as

8  a generator of sales of products not embodying the Mattel copyrights, and the

9  extent of such derivative or convoyed sales.

10       (7) The duration of the Mattel copyrights and the term of the license.

11       (8) The established profitability of the product made under the Mattel

12  copyrights, its commercial success, and its current popularity.

13       (9) The utility and advantages of the Mattel copyrights over the old

14  modes or devices, if any, that had been used for working out similar results.

15       (10) The nature of the Mattel copyrights, the character of the

16  commercial embodiment of it as owned and produced by the licensor, and the

17  benefits to those who have used the Mattel copyrights.

18       (11) The extent to which the infringer has made use of the Mattel

19  copyrights and any evidence probative of the value of that use.

20       (12) The portion of the profit or of the selling price that may be

21  customary in the particular business or in comparable business to allow for the use

22  of the Mattel copyrights or analogous copyrights.

23       (13) The portion of the realizable profits that should be credited to the

24  Mattel copyrights as distinguished from other elements, the manufacturing process,

25  business risks, or significant features or improvements added by the infringer.

26       (14) The opinion and testimony of qualified experts.

27       (15) The amount that a licensor (such as Mattel) and a licensee (such

28  as MGA) would have agreed upon (at the time the infringement began) if both had

1  been reasonably and voluntarily trying to reach an agreement, that is, the amount

2  which a prudent licensee—who desires, as a business proposition, to obtain a

3  license to manufacture and sell a particular article embodying the Mattel

4  copyrights—would have been willing to pay as a royalty and yet be able to make a

5  reasonable profit and which amount would have been acceptable by a prudent

6  copyright owner who was willing to grant a license.

7         No one factor is dispositive and you can and should consider the

8  evidence that has been presented to you in this case on each of these factors. You

9  may also consider any other factors which in your mind would have increased or

10  decreased the royalty the infringer would have been willing to pay and the

11  copyright owner would have been willing to accept, acting as normally prudent

12  business people.  The final factor establishes the framework which you should use

13  in determining a reasonable royalty, that is, the payment that would have resulted

14  from a negotiation between the copyright holder and the infringer taking place at

15  the time of the infringement.

16         Evidence of things that happened after the infringement first began

17  can be considered in evaluating the reasonable royalty to the extent that the

18  evidence aids in assessing what royalty would have resulted from a hypothetical

19  negotiation.

20

21

22

23

24

25

26

27

28

1    **Authority:**  Federal Circuit Model Patent Jury Instructions, Instruction Nos.

2    6.6 and 6.7 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed.

3    Cir. 2009) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-

4    Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*,

5    86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d

6    1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554

7    (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F.

8    Supp. 1116, 1120 (S.D.N.Y. 1970); Fifth Circuit Pattern Jury Instructions,

9    Instructions 9.8 (2006)); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700,

10   710-11, 714 n. 10 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir.

11   2002) ("to determine the work's 'market value' at the time of the infringement, we

12   have endorsed a hypothetical approach: what a willing buyer would have been

13   reasonably required to pay to a willing seller for [the owner's] work." ) (internal

14   quotations omitted); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc*.,

15   772 F.2d 505, 512 (9th Cir. 1985) ("In this circuit, we have stated the test of

16   market value as 'what a willing buyer would have been reasonably required to pay

17   to a willing seller for plaintiffs' work.' "(quoting *Sid & Marty Krofft Television*

18   *Productions, Inc. v. McDonald's Corp*., 562 F.2d 1157, 1174 (9th Cir. 1977)).

19

20

21

22

23

24

25

26

27

28

1    **<u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 39</u>**

2    **<u>COPYRIGHT—DAMAGES—LOST PROFITS</u>**

3    **<u>(17 U.S.C. § 504(b))</u>**

4

5        To calculate lost profits as a measure of Mattel's actual damages, you must

6    determine what profits Mattel proves it would have made without the infringement.

7    Lost profits are the revenue Mattel would have made without the infringement, less

8    any additional expenses it would have incurred in making the sales.

9        Mattel's lost profits do not serve to limit the amount of Mattel's actual

10   damages, as measured by the fair market value of a license for the copyrighted

11   works that were infringed.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:** Model Instruction 12.8.2 Damages — Actual Damages, Federal

2    Civil Jury Instructions of the Seventh Circuit (citing *Taylor v. Meirick*, 712 F.2d

3    1112, 1120-1121 (7th Cir. 1983)); *Lucky Break Wishbone Corp. v. Sears Roebuck*

4    *and Co.*, 373 Fed. Appx. 752, 757 (9th Cir. 2010) (finding that "[t]he jury is not

5    restricted . . . to awarding lost profits" where evidence of lost profits and a fair

6    market value of a lost license fee were presented to the jury, defendant claimed that

7    lost profits were appropriate actual damage measurement, and defendant claimed

8    jury award was too high to account for appropriate deduction of costs to arrive at

9    lost profits); *Polar Bear Prods. Inc. v. Timex Corp.,* 384 F.3d 700, 708-710 (9th

10   Cir. 2004) (evaluating a claim for both a fair market value lost license fee and lost

11   profits as additive actual damages);  *Oracle Corp. v. SAP AG*, Case No.07-cv-

12   01658-PJH  (N.D. Cal. 2008), Dkt.  No. 1005 (final jury instructions).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 40
## DETERMINING ACTUAL DAMAGES

There is no precise formula for determining actual damages.  Determining the fair market value of the rights infringed or lost profits may involve some uncertainty, and Mattel is not required to establish its actual damages with precision.

In general, you should construe actual damages to favor the copyright owner, keeping in mind the objective of copyright law is to enable copyright owners to capture the full value of their rights.  Within reason, any ambiguities should be resolved in favor of the copyright owner.

1    **Authority:** ABA Model Jury Instruction 1.7.2 (Copyright); *On Davis v. The*
2  *Gap*, 246 F.3d 152, 166-67 (2d Cir. 2001) ("Within reason, any ambiguities should
3  be resolved in favor of the copyright owner.")(quoting  William F. Patry,
4  Copyright Law and Practice 1167 (1994)); *Polar Bear Prods., Inc. v. Timex Corp.,*
5  384 F.3d 700, 709 (9th Cir. 2004); 4 Nimmer § 14.02[A], at 14-12 ("[U]ncertainty
6  will not preclude a recovery of actual damages if the uncertainty is as to amount,
7  but not as to the fact that actual damages are attributable to the infringement.").
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-182

**17.24**

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS**

**(17 U.S.C. § 504(b))**

In addition to actual damages, Mattel is entitled to any profits of the defendants attributable to the infringement.  You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of the defendants' profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendants' gross revenue.

The defendants' profit is determined by deducting expenses from the defendants' gross revenue.

The defendants' gross revenue is all of the defendants' receipts from sale of a product containing or using the copyrighted works or associated with the infringement.  Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendants' gross revenue.  The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted works is attributable to factors other than use of the copyrighted works, all of the profit is to be attributed to the infringement. The defendants have the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted works.

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1      **Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007) (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-184-

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 41

# COPYRIGHT—DAMAGES—INDIRECT PROFITS

In addition to the defendants' profits from the sale of infringing goods, which are called direct profits, Mattel may also be entitled to recover defendants' indirect profits.  Indirect profits are the defendant's profits with a less direct connection or link to the infringement.  To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.  However, Mattel need not prove this causal relationship with certainty.  Instead, Mattel's burden is only to offer some evidence that the infringement at least partially caused the infringer to generate profits indirectly.   Mattel may be entitled to recover defendants' profits from sales of non-infringing goods pursuant to this instruction.

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Polar Bear*

2    *Productions, Inc. v. Timex Corp*., 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004)

3    (approving a jury instruction stating: "Indirect profits have a less direct connection

4    or link to the infringement. Plaintiff seeks indirect profits in this case. To recover

5    indirect profits, Plaintiff must establish a causal relationship between the

6    infringement and the profits generated indirectly from such infringement.").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 42

# COPYRIGHT—DAMAGES—APPORTIONMENT

In determining what portion of the defendants' profits are attributable to copyright infringement, the benefit of the doubt should be given to Mattel, and not defendants.   If you cannot readily separate the infringing and non-infringing elements of a work that you find infringes Mattel's copyrights, then you should not apportion defendants' profits.  Instead, in such a circumstance, all profits defendants' obtained from the infringing works should be awarded to Mattel.

1   **Authority:**  9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music*

2   *Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In

3   performing the apportionment, the benefit of the doubt must always be given to the

4   plaintiff, not the defendant . . . ."); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309

5   U.S. 390, 401-02 (1940) ("when the copyrighted portions are so intermingled with

6   the rest of the piratical work 'that they cannot well be distinguished from it,' the

7   entire profits realized by the defendants will be given to the plaintiff.") (citation

8   omitted); William F. Patry, PATRY ON COPYRIGHT, § 22:147 (2008) ("where the

9   infringing work consists mostly of infringed material that gives the work its value

10   and is inextricably intertwined with the original, courts have refused to

11   apportion.").

-188-

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

**17.27**

**COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT**

Mattel also claims that the defendants engaged in willful infringement of Mattel's copyrights.  An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.      The defendant engaged in acts that infringed the copyright; and

2.      The defendant knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses or taxes from his/its gross revenue when the copyright infringement is willful.

1    **Authority:**  9th Cir. Civ. Jury Instr. 17.27 (2007) (modified); *Three Boys*

2    *Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful

3    infringers are not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ*

4    *Berrie and Co., Inc*., 752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an

5    infringer's overhead properly may be deducted from gross revenues to arrive at

6    profits, at least where the infringement was not willful, conscious, or deliberate.")

7    (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp*., 106 F.2d 45, 53 (2d

8    Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*,

9    968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead

10   expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f

11   defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price*

12   *Waterhouse LLP*, 2000 WL 1644585, at *6  (N.D. Ill. 2000) (approving jury

13   instruction barring deduction of overhead if the jury were to find willful

14   infringement); 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, §

15   14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to income tax

16   deductions).

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 43

## UNFAIR COMPETITION—RESTITUTION

Mattel seeks restitution from MGA as a remedy for MGA's unfair competition.  Restitution, as a remedy, is measured by the value of the money or property that the defendants took from Mattel or in which Mattel has a vested interest.

05.07975/3930172.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Authority:** *Korea Supply Co. v Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *Nat. Rural Telecm'ns Co-op v. DirecTV*, 319 F. Supp. 2d 1059, 1080 (C.D. Cal. 2003).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CACI 3926

## SETTLEMENT DEDUCTION

You have heard evidence that Mattel has settled its claims against Carter Bryant.  Your award of damages to Mattel should be made without considering any amount that it may have received under this settlement.  After you have returned your verdict, I will make the proper deduction from your award of damages.  You also must not consider this settlement to determine responsibility for any harm.

1     **Authority**:  CACI 3926; CACI 217.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **Instructions for Other Remedies**

2

3

## **CACI 3941 & 3946**

4

## **PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS—**

5

## **BIFURCATED TRIAL (FIRST PHASE)**

6

7      If you decide that Mr. Larian's, MGA's or MGA Hong Kong's conduct

8    caused Mattel's harm, you must decide whether that conduct justifies an award of

9    punitive damages.  The purposes of punitive damages are to punish a wrongdoer

10   for the conduct that harmed the plaintiff and to discourage similar conduct in the

11   future.  You must decide whether Mattel has proved by clear and convincing

12   evidence that Mr. Larian, MGA or MGA Hong Kong engaged in conduct with

13   malice, oppression, or fraud.

14      "Malice" means that a defendant acted with intent to cause injury or that a

15   defendant's conduct was despicable and was done with a willful and knowing

16   disregard of the rights or safety of another.  A defendant acts with knowing

17   disregard when the defendant is aware of the probable dangerous consequences of

18   his or its conduct and deliberately fails to avoid those consequences.

19      "Oppression" means that a defendant's conduct was despicable and

20   subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

21      "Despicable conduct" is conduct that is so vile, base, or contemptible that it

22   would be looked down on and despised by reasonable people.

23      "Fraud" means that a defendant intentionally misrepresented or concealed a

24   material fact and did so intending to harm Mattel.

25      In order to prove that MGA or MGA Hong Kong engaged in conduct with

26   malice, oppression, or fraud, Mattel must prove one of the following:

27

28

1    1.    That the malice, oppression, or fraud was conduct of one or more

2 officers, directors, or managing agents of MGA or MGA Hong Kong, who acted

3 on behalf of MGA or MGA Hong Kong; or

4    2.    That an officer, a director, or a managing agent of MGA or MGA

5 Hong Kong had advance knowledge of the unfitness of another officer, director, or

6 managing agent of MGA or MGA Hong Kong and employed that person with a

7 knowing disregard of the rights or safety of others; or

8    3.    That the conduct constituting malice, oppression, or fraud was

9 authorized by one or more officers, directors, or managing agents of MGA or

10 MGA Hong Kong; or

11    4.    That one or more officers, directors, or managing agents of MGA or

12 MGA Hong Kong knew of the conduct constituting malice, oppression, or fraud

13 and adopted or approved that conduct after it had occurred.

14

15    An employee is a "managing agent" if he or she exercises substantial

16 independent authority and judgment in his or her corporate decision making such

17 that his or her decisions ultimately determine corporate policy.

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  CACI 3941 & 3946 (modified).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL SPECIAL JURY INSTRUCTION NO. 44

## REMEDIES—CONSTRUCTIVE TRUST

Mattel claims that it is entitled to have Bratz-related trademarks, copyrights, and other intangible property transferred to it as a remedy for defendants' wrongdoing pursuant to a constructive trust.  A constructive trust awards ownership of property to prevent unjust enrichment and to prevent a person or entity from taking advantage of and benefiting from their wrongdoing.  Mattel seeks a constructive trust over property held by defendants based on its claim that those properties are a benefit defendants have obtained from their misappropriation of works and rights owned by Mattel.

A constructive trust may be imposed in any case where there is a wrongful acquisition or detention of property to which another is entitled.  Rights in trademarks, copyrights, and other intangible property related to Bratz may be the subject of a constructive trust, if you find that an award of such rights is warranted.

In order for Mattel to obtain a constructive trust over Bratz property held by MGA and Mr. Larian, Mattel must show (1) the existence of property or some interest in that property; (2) its right to property or some interest in that property; and (3) some wrongful acquisition or detention of its property or some interest in that property by MGA who is not entitled to it.  A constructive trust should only be awarded if it is just an equitable to do so.  It is for you to decide whether it is just and equitable that defendants' claimed rights in Bratz-related trademarks, copyrights, and other intangible property be transferred to Mattel to prevent defendants from benefiting from wrongdoing.

**Authority:** Cal. Civ. Code §§ 2223, 2224; *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1069 (1998); *Weiss v. Marcus*, 51 Cal. App. 3d 590, 600 (1975); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 135 (1985); *Warren v. Merrill*, 143 Cal. App. 4th 96, 113 (2006); *Martin v. Kehl*, 145 Cal. App. 3d 228, 237-38 (1983); *Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg. Co.*, 367 F.2d 308, 311 (2d Cir. 1966); *Online Partners.com, Inc. v. Altanticnet Media Corp.*, 2000 WL 101242, at *10 (N.D. Cal. Jan. 20, 2000); *Calistoga Civic Club v. City of Calistoga*, 143 Cal. App. 3d 111, 116 (1983); *GHK Assocs. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 878 (1990).

**Instructions for MGA's Trade Secret Claims**

**CACI 4401**

**MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS**

MGA claims that Mattel misappropriated MGA trade secrets.  To succeed on this claim, MGA must prove all of the following:

1.      That MGA owned or rightfully possessed the information;

2.      That the information was a trade secret at the time of the misappropriation;

3.      That Mattel improperly acquired, used or disclosed the trade secret;

4.      That MGA was harmed or Mattel was unjustly enriched; and

5.      That Mattel's acquisition, use or disclosure of the trade secret was a substantial factor in causing the harm or unjust enrichment.

605.07975/3930172.1

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

1      **Authority:**  CACI 4401 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184

2    Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel*

3    *LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010);

4    *Durney v. Wavecrest Labs., LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

1

2

3

# **CACI 4402**

## **"TRADE SECRET" DEFINED**

To prove that the information was a trade secret, MGA must prove all of the following:

1.      That the information was secret;

2.      That the information had actual or potential independent economic value because it was secret; and

3.      That MGA made reasonable efforts to keep the information secret.

1    **Authority:**  CACI 4402.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CACI 4403

# SECRECY REQUIREMENT

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in MGA's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated and expected to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

1    **Authority:**  CACI 4403.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 45

## INFORMATION NOT SECRET WHEN DISCLOSED NON-CONFIDENTIALLY

5   Information is not secret for purposes of trade secret protection if it is
6  disclosed, with the trade secret holder's authorization, to others who are under no
7  obligation to protect the confidentiality of the information.  Information also is not
8  secret for purposes of trade secret protection if it is disclosed with the trade secret
9  holder's authorization to others who, while under an obligation to protect the
10 confidentiality of the information, are not expected by the trade secret holder to
11 actually protect the information's secrecy.  If a trade secret holder conveys
12 information to a third party who the holder expects will not maintain the secrecy of
13 the information, such conduct shows that the information was not kept secret.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Authority***:   Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *VSL Corp. v. Gen. Techs. Inc.*, 1997 WL 654103, at *3 (N.D. Cal. Jul. 21, 1997) (granting summary judgment on plaintiff's trade secret claims because "[plaintiff] displayed the duct at trade shows and distributed marketing information about the duct which provided drawings and measurements. [Plaintiff] never required that anyone sign a confidentiality agreement before being given samples and other data.") (citations omitted)); *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 788 (7th Cir. 2007) (no reasonable jury could find that plaintiff took reasonable efforts to keep a memo confidential where, inter alia, it distributed the memo to 600-700 people and only sought confidentiality agreements from 190 of them, and the effort of storing the memo exclusively on a password-protected computer was "entirely undermined" by the "widespread nonconfidential disclosure of the memo to hundreds of outsiders."); *Marine Pile Drivers, LLC v. Welco, Inc.*, 988 So.2d 878, 881-82 (La. Ct. App. 2008) upholding finding that plaintiff failed to take reasonable efforts to maintain the secrecy of its barge design because "[t]he barge was marketed at trade shows and pictured on websites and in pamphlets"); *De Lage Landen Operational Servs, LLC v. Third Pillar Sys., Inc.*, 693 F. Supp. 2d 423, 440 (E.D. Pa. 2010) ("Where a plaintiff has freely disclosed the information without the protection of a confidentiality agreement, it cannot claim a trade secret.") (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 923 F. Supp. 1231, 1254 (N.D. Cal. 1995)).

THIRD AMENDED PROPOSED JURY INSTRUCTIONS

05.07975/3930172.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CACI 4404

## REASONABLE EFFORTS TO PROTECT SECRECY

To establish that the information MGA is claiming to be trade secrets were in fact trade secrets, MGA must prove that it made reasonable efforts under the circumstances to keep that information secret.  "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as the party, exercising due care to protect important information of the same kind.

In determining whether or not MGA made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances.  Among the factors you may consider are the following:

(a)  Whether documents or files containing the information were marked with confidentiality warnings;

(b)  Whether MGA instructed its employees to treat the information as confidential;

(c)  Whether MGA restricted access to the information to the persons who had a business reason to know the information;

(d)  Whether MGA kept the information in a restricted or secured area;

(e)  Whether MGA required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

(f)  Whether MGA took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

(g)  The extent to which any general measures taken MGA would prevent the unauthorized disclosure of the information; and

(h)  Whether there were other reasonable measures available to MGA that it did not take.

1        The presence or absence of any one or more of these factors is not

2  necessarily determinative.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **Authority:**  CACI 4404 (modified).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 4405

## MISAPPROPRIATION BY ACQUISITION

Mattel misappropriated MGA's trade secrets by acquisition if Mattel acquired the trade secrets and knew or had reason to know that it used improper means to acquire them.

-211-

1

**Authority:**  CACI 4405.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CACI 4406

## MISAPPROPRIATION BY DISCLOSURE

Mattel misappropriated MGA's trade secrets by disclosure if Mattel:

1.      Disclosed MGA's trade secrets without MGA's consent; and

2.      Did any of the following:

Acquired knowledge of the trade secrets by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of the trade secrets came from or through a third party, and that the third party had a duty to MGA to keep the information secret.

1    **Authority:**  CACI 4406.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 4407

## MISAPPROPRIATION BY USE

Mattel misappropriated MGA's trade secrets by use if Mattel:

1.      Used MGA's trade secrets without MGA's consent; and

2.      Did any of the following:

Acquired knowledge of the trade secrets by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of MGA's trade secrets came from or through a third party and that the third party had a duty to MGA to keep the information secret.

1    **Authority:** CACI 4407.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 4408

## IMPROPER MEANS OF ACQUIRING TRADE SECRET

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, or breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by:

1. Independent efforts to invent or discover the information;

2. Obtaining the information as a result of a license agreement with the owner of the information;

3. Observing the information in public use or on public displace; or

4. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

1    **Authority:**  CACI 4408.

# CACI 4412

## "INDEPENDENT ECONOMIC VALUE" EXPLAINED

Information has independent economic value if it gives the owner or holder an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether information had actual or potential independent economic value because it was secret, you may consider the following:

(a)  The extent to which the information's owner or holder obtained or could obtain economic value from the information in keeping it secret;

(b)  The extent to which others could obtain economic value from the information if it were not secret;

(c)  The amount of time, money, or labor the information's owner or holder expended in developing the information;

(d)  The amount of time, money, or labor that was saved by a competitor who used the information.

The presence or absence of any one or more of these factors is not necessarily determinative.

1      **Authority:**  CACI 4412 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184

2  Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel*

3  *LLC*, --- F. Supp. 2d, ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010);

4  *Durney v. Wavecrest Labs., LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

-220-

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 46

## UNFAIR COMPETITION—ESSENTIAL ELEMENTS

MGA claims that Mattel has engaged in unfair competition by unlawfully interfering with MGA's relationship with its licensees, distributors, and retailers. Mattel disputes that claim.

To prevail on this claim, MGA must prove by a preponderance of the evidence that:

(1) Mattel engaged in an unfair business practice; and

(2) MGA suffered actual injury as a result of Mattel's actions; and

(3) MGA lost money or property as a result of Mattel's actions.

An "unfair" business practice is conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. Merely refusing to enter into business relationships with MGA's licensees, distributors, and retailers does not constitute unfair competition.

An "actual injury" is a distinct and palpable injury suffered as a result of Mattel's actions. It must be concrete and not conjectural.

"Lost money or property" requires a showing that Mattel directly gained money or property that MGA lost and in which MGA had a vested interest. MGA lost money gained by Mattel only if MGA parted, deliberately or otherwise, with some identifiable sum formerly belonging to it or subject to its control. MGA lost property gained by Mattel only if MGA parted with some particular item of property it formerly owned or possessed. In order to prove its claim, MGA must have suffered a loss of money or property directly to Mattel that can be restored to MGA.

1     In deciding whether MGA has proved this claim, you may not find that

2 Mattel engaged in unfair competition based on acts other than, or different from,

3 Mattel's alleged interference with MGA's relationship with its licensees,

4 distributors, and retailers.  In particular, you may not consider facts related to

5 MGA's trade secret claim, including allegations that Mattel gained access to

6 MGA's toy fair show rooms on false pretenses or without authorization, in

7 deciding whether Mattel engaged in an unfair business practice.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  *Cal. Bus. & Prof. Code* § 17200 ; *Marolda v. Symantec Corp.*,

2    672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009); *Lauter v. Anoufrieva*, 642 F. Supp. 2d

3    1060, 1098 (C.D. Cal. 2009); *Puentes v. Wells Fargo Home Mortg.*, Inc., 160 Cal.

4    App. 4th 638, 645 (2008); *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th

5    798, 812 (2007); *Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *6

6    (N.D. Cal. Aug. 31, 2010); C*el-Tech Commc'ns Inc. v. Los Angeles Cellular Tel.*

7    *Co.*, 20 Cal. 4th 163, 187 (1999); *Drum v. San Fernando Valley Bar Ass'n*, 182

8    Cal. App. 4th 247, 254 (2010); *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App.

9    4th 210, 243, 109 (2010); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590

10   (2008).

1

**<u>Instructions for Mattel's Affirmative Defenses</u>**

2

3

**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 47</u>**

4

**<u>AFFIRMATIVE DEFENSE—INTRODUCTION</u>**

5

6      I will now instruct you on Mattel's affirmative defenses.  Mattel bears the

7   burden of proving its affirmative defenses.  You should consider each affirmative

8   defense as to each claim separately.  If you find that Mattel has proved an

9   affirmative defense that provides a complete defense to any particular claim, then

10  you should find for Mattel on that claim.  If, however, you find that Mattel has not

11  proved that an alleged affirmative defense completely bars a claim, and MGA has

12  proved that claim, then you should find for MGA on that claim.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **Authority:**  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 969 (2010) ("a

2  defendant that advances an affirmative defense to the plaintiff's claims bears the

3  burden of proof on the defense."); *Henley v. DeVore*, --- F. Supp. 2d ----, 2010 WL

4  3304211, *4 (C.D. Cal. 2010) ("Because fair use is an affirmative defense to

5  copyright infringement, the defendant bears the burden of proving fair use.");

6  *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("a defense is an

7  affirmative defense if it will defeat a plaintiff's claim even when the plaintiff has

8  stated a prima facie case for recovery under the applicable law.")

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 48**

**AFFIRMATIVE DEFENSE—UNCLEAN HANDS**

Mattel claims that MGA should not be able to recover damages against Mattel in this case because MGA has "unclean hands" and is undeserving of relief. The doctrine of unclean hands requires that a plaintiff act fairly in the matter for which he seeks a remedy.  If MGA has engaged in misconduct that relates directly to the transactions at issue in its claims, then its claims may be barred by its "unclean hands."

To prevail on the affirmative defense of unclean hands, Mattel must prove by a preponderance of the evidence that MGA acted unfairly in connection with the events at issue in this case.

1    **Authority:**  *Kendall-Jackson Winery Ltd. v. Superior Court*, 76 Cal. App.

2    4th 970, 978 (1999); *Dollar Systems, Inv. v. Avcar Leasing Systems, Inc.*, 890 F.2d

3    165, 173 (9th Cir. 1989); *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944,

4    953 (C.D. Cal. 1996).

1

## CACI 4420

2

## AFFIRMATIVE DEFENSE—INFORMATION WAS READILY

3

## ASCERTAINABLE BY PROPER MEANS

4

5      Mattel did not misappropriate MGA's trade secrets if Mattel proves that the

6  information was readily ascertainable by proper means at the time of the alleged

7  acquisition, use, or disclosure.

8      There is no fixed standard for determining what is "readily ascertainable by

9  proper means."  In general, information is readily ascertainable if it can be

10  obtained, discovered, developed, or compiled without significant difficulty, effort,

11  or expense.  For example, information is readily ascertainable if it is available in

12  trade journals, reference books, or published materials.  On the other hand, the

13  more difficult information is to obtain, and the more time and resources that must

14  be expended in gathering it, the less likely it is that the information is readily

15  ascertainable by proper means.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Authority:**  CACI 4420.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## MGA'S SPECIAL JURY INSTRUCTION NO. 49

## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

3

4

5     Mattel contends that MGA's claims were not filed within the statute of

6 limitations.  The statute of limitations for MGA's claim for misappropriation of

7 trade secrets is three years, and the statute of limitations for MGA's claim of unfair

competition is four years.

8

Trade Secret Misappropriation.

9

10     In order to decide whether MGA's trade secret claim was filed within the

statute of limitations, you must decide whether the facts supporting MGA's trade

11 secret claim arise from the same transaction or occurrence as the facts supporting

12 Mattel's trade secret claim.  If you find that they do not arise from the same

13 transaction or occurrence, then Mattel must prove that MGA's claimed harm

14 occurred more than three years prior to August 16, 2010, the date on which MGA

15 filed its trade secret misappropriation claim, in order to succeed on its statute of

16 limitations defense.  If Mattel proves that MGA's claimed harm occurred prior to

17 August 16, 2007, MGA's claim was not timely filed, unless you find that MGA did

18 not discover, and did not know of facts that should have caused it to discover, that

19 Salvador Villasenor or other Mattel employees gained access to MGA's toy fair

20 show rooms on false pretenses or without authorization from MGA before August

21 16, 2007.

22     On the other hand, if you find that MGA's trade secret claim does arise from

23 the same transaction or occurrence as the facts supporting Mattel's trade secret

24 claim, then Mattel must prove that MGA's claimed harm occurred more than three

25 years prior to November 20, 2006 in order to succeed on its statute of limitations

26 defense.  If Mattel proves that MGA's claimed harm occurred prior to November

27 20, 2003, MGA's claim was not timely filed, unless you find that MGA did not

28

1  discover, and did not know of facts that should have caused it to discover, that
2  Salvador Villasenor or other Mattel employees gained access to MGA's toy fair
3  show rooms on false pretenses or without authorization from MGA before
4  November 20, 2003.

5  The period of time when MGA only suspected, but had no evidence of,
6  wrongdoing by Mattel does not count in considering whether MGA's claims are
7  timely.

8  <u>Unfair Competition.</u>

9  The statute of limitations for MGA's unfair competition claim is four years.
10  To succeed on its statute of limitations defense, Mattel must prove that that some
11  of the claimed harm from unfair competition occurred on or before April 13, 2001.
12  So long as Mattel proves that the claimed unfair competition occurred before April
13  13, 2001, MGA's claim of unfair competition is barred by the statute of limitations
14  even if MGA did not discover the claim or did not know of facts which should
15  have led it to discover that claim.

16
17
18
19
20
21
22
23
24
25
26
27
28

**Authority:**  CACI 4421 (modified); CACI 455 (modified); Cal. Civ. Code § 3426.6 (claim "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered"); *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585 (2008); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "'an awareness of sufficient facts to identify a particular cause of action . . . [It does] not mean the kind of notice— based on hints, suspicions, hunches or rumors—that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit.'") (citation omitted); *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987); *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001); *In re R & C Petroleum, Inc.*, 236 B.R. 355, 361 (Bankr. E.D. Tex. 1999); Cal. Bus. & Prof. Code § 17208; *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 891 (2002); *Stuz Motor Car Care of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 50

## AFFIRMATIVE DEFENSE—LACHES

Mattel claims that MGA is barred from asserting any right to relief against Mattel based upon the doctrine of laches.  To establish laches, Mattel must establish (1) lack of diligence by the plaintiff, and (2) prejudice to the defendant.  Courts have recognized two chief forms of prejudice:  evidentiary and expectations-based.  Evidentiary prejudice includes things such as loss of evidence or faded memories.  Expectations-based prejudice arises where a defendant took actions or suffered consequences it would not have if the plaintiff brought suit promptly.

To prevail on the affirmative defense of laches, Mattel must prove by a preponderance of the evidence that MGA unreasonably delayed in bringing its claims against Mattel and that Mattel has suffered prejudice as a result.

1    **Authority:**  *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979,

2    987 (9th Cir. 2004); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001).

1
2
3

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 51

## AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE DAMAGES

4      Mattel claims that MGA failed to mitigate damages allegedly caused by
5 Mattel's wrongful conduct.  The doctrine of mitigation of damages holds that a
6 plaintiff who suffers damages as a result of a tort has a duty to take reasonable
7 steps to mitigate those damages and may not recover for damages avoidable
8 through ordinary care and reasonable exertion.  The duty to mitigate damages does
9 not require an injured party to do what is unreasonable or impracticable.
10      The burden of proving that losses could have been avoided by plaintiff by
11 reasonable effort and expense is always on the party who harmed the plaintiff.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **Authority:**  CACI 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal.

2  App. 4th 1686, 1691 (1994); Amended Order on MGA's Motion for Summary

3  Judgment; Mattel's Motion for Partial Summary Judgment; Machado's Motion for

4  Summary Judgment; Mattel's Motion for Partial Summary Judgment on MGA's

5  Counterclaims-in-Reply, dated January 5, 2011, at 119 (Dkt. No. 9600) (allowing

6  failure to mitigate affirmative defense).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 52

## AFFIRMATIVE DEFENSE—COMPETITION PRIVILEGE

Mattel claims that MGA's claims are barred in whole or in part by the competition privilege. The competition privilege protects one from liability for inducing a third person not to enter into a prospective contractual relation with a business competitor. One may compete for an advantageous economic relationship with a third party as long as one does not act improperly or illegally.

To prevail on the affirmative defense of competition privilege, Mattel must prove by a preponderance of the evidence that (a) the relation between MGA and third parties, including retailers and distributors, concerns a matter involved in the competition between Mattel and MGA, (b) Mattel did not employ improper means, and (c) Mattel's purpose was at least in part to advance its interest in competition with MGA.

Mattel does not act improperly or illegally by inducing a third person not to enter into a prospective contractual relation with a business competitor if it is for a legitimate business purpose such as protecting Mattel's confidential information or avoiding conflicts of interests rather than for the sole purpose of harming the competitor.

1

**Authority:** *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th 867, 880-881 (1997); *San Francisco Design Center Associates v. Portman Companies,* 41 Cal. App. 4th 29, 42 (1995); Restatement (Second) Torts § 768.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 53
## AFFIRMATIVE DEFENSE—WAIVER

Mattel claims that MGA has waived any right to relief against Mattel. Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it.  Waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right.

To prevail on the affirmative defense of waiver, Mattel must prove by clear and convincing evidence that MGA knew of Mattel's alleged misconduct and either expressly or impliedly waived any right to relief  against Mattel.

1     **Authority:**  *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399

2     (1988); *Medico-Dental etc. Co. v. Horton & Converse*, 21 Cal. 2d 411, 432 (1942);

3     *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995).

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 54

## AFFIRMATIVE DEFENSE—ESTOPPEL

Mattel claims that MGA is estopped from asserting any right to relief against Mattel. Estoppel arises when a party's conduct misleads another to believe that a right will not be enforced and causes that party to act to its detriment in reliance upon this belief. Estoppel requires that the party to be estopped (1) must know the facts, (2) intend that its conduct shall be acted upon or so act that the party asserting the estoppel has a right to believe it is so intended, (3) the party asserting estoppel must be ignorant of the true facts, and (4) that party must rely upon the former's conduct to his injury.

To prevail on the affirmative defense of estoppel, Mattel must prove by a preponderance of the evidence that (1) MGA was apprised of the facts of Mattel's alleged misconduct; (2) MGA intended that its conduct would be acted upon, or acted in such a manner that Mattel had a right to believe it was so intended; (3) Mattel was ignorant as to the true state of facts; and (4) Mattel relied upon MGA's conduct and has been harmed as a result.

1    **Authority:**  *Strong v. County of Santa Cruz*, 15 Cal. 3d 720, 725 (1975);

2  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225

3  (C.D. Cal. 2007); *Novell, Inc. v. Weird Stuff, Inc*, 1994 WL 16458729, at *13 (N.D.

4  Cal. Aug. 2, 1993).

-242-

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 55

# AFFIRMATIVE DEFENSE—ACQUIESCENCE

Mattel claims that MGA is barred from asserting any right to relief against Mattel based upon the doctrine of acquiescence.  Acquiescence limits a party's right to bring suit following an affirmative act by the party that conveys implied consent to another.

To prevail on the affirmative defense of acquiescence, Mattel must prove by a preponderance of the evidence that (1) MGA actively represented that it would not assert a right or a claim against Mattel; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused Mattel undue prejudice.

1    **Authority:**  *Novell Inv. v. Weird Stuff, Inc.*, 1994 WL 16458729, at *13

2    (N.D. Cal. 1993); *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate*

3    *Educ., Inc.*, 621 F.3d 981, 988-89 (9th Cir. 2010).

1

## **MATTEL'S SPECIAL JURY INSTRUCTION NO. 56**

2

## **AFFIRMATIVE DEFENSE—ABANDONMENT**

3

4       Mattel claims that MGA has abandoned any right to relief against Mattel.

5   Abandonment requires a defendant to show a clear, unequivocal and decisive act

6   demonstrating a waiver of the plaintiff's property rights.

7       To prevail on the affirmative defense of abandonment, Mattel must prove by

8   a preponderance of the evidence that MGA engaged in a conduct demonstrating a

9   waiver of its rights with respect to MGA's allegations against Mattel.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **Authority:**  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1146 (9th Cir.

2  2010).

1

2

**<u>Remedies Instructions for MGA's Claims</u>**

3

4

5

6

**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 57</u>**

**<u>LIMITATION ON DAMAGES—LOSS CAUSED BY TRADE SECRET</u>**

**<u>MISAPPROPRIATION</u>**

7

8

9

10

11

MGA's claim against Mattel for alleged misappropriation of trade secrets is the only claim MGA has against Mattel that may, if MGA is able to prove all the elements of that claim, entitle MGA to recover damages from Mattel. Accordingly, MGA is entitled to recover damages only if it proves that Mattel is liable for trade secret misappropriation.

12

13

14

15

16

17

18

19

If you find that Mattel is liable for trade secret misappropriation, you must decide what damages to award MGA.  You may not, in awarding MGA damages for trade secret misappropriation, award damages for alleged acts of wrongdoing other than, or different from, trade secret misappropriation.  Instead, your award must be limited to the damages to which MGA is entitled, if any, for the alleged trade secret misappropriation.  If you find that MGA suffered harm caused by acts or conduct of Mattel other than misappropriation of trade secrets, then you may not award MGA damages based on such conduct.

20

21

22

23

24

25

26

27

28

1
      **Authority:**  Cal. Civ. Code § 3426.3  ("A complainant may recover

2
damages for the actual loss caused by misappropriation.  A complainant also may

3
recover for the unjust enrichment caused by misappropriation that is not taken into

4
account in computing damages for actual loss.").

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-248-

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 58
# LIMITATION ON DAMAGES—NO DAMAGES BASED ON UNFAIR
# COMPETITION

Even if MGA proves that Mattel is liable for unfair competition, MGA is not entitled to recover damages as a form of relief.  The only monetary recovery to which MGA may be entitled as a remedy for its unfair competition claim is "restitution."  "Restitution" is the return of any money or property in which MGA has a vested interest and that MGA lost, and Mattel directly gained, as a result of Mattel's alleged unfair competition.  Such restitution may not include any profits earned by Mattel that MGA may claim were earned as a result of Mattel's unfair competition.  Nor may restitution include any profits MGA claims it lost. Restitution only includes the value of any money or property, if any, that MGA provided to Mattel as a consequence of the alleged unfair competition.

1  **Authority:**  Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v Lockheed*
2  *Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (restitution under the UCL is limited
3  to "classic restitution"; that is, "money or property that defendants took directly
4  from plaintiff" or money or property in which [plaintiff] has a vested interest.");
5  *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22
6  (2009) (harm to goodwill not capable of restitution); *Inline, Inc. v. A.V.L. Holding*
7  *Co.*, 125 Cal. App. 4th 895, 904-905 (2005) (rejecting various forms of requested
8  recovery because not restitutionary, including consequential losses and fair market
9  value of property sold); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F.
10 Supp. 2d 968, 979 (C.D. Cal. 2004) (one competitor does not have a vested interest
11 in the profits of another).