Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 1 of 81   Page ID #:289602
CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

1

1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3          **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                     – – – – – – –

5
   MATTEL, INC., et al.,            )
6                                   )
              Plaintiffs,           )
7                                   )
        vs.                         ) No. CV 04-9049 DOC
8                                   )    Day 2
   MGA ENTERTAINMENT, INC., et al., )    Volume 1 of 2
9                                   )
                                    )
10            Defendants.           )
   _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                     Jury Trial

16                Santa Ana, California

17             Friday, January 14, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-01-24 D2V1

1  **APPEARANCES OF COUNSEL:**

2

    FOR PLAINTIFF MATTEL, INC., ET AL.:

3

            QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
4           BY:   JOHN QUINN
                  WILLIAM PRICE
5                 MICHAEL T. ZELLER
                  Attorneys at Law
6           865 South Figueroa Street
            10th Floor
7           Los Angeles, California 90017
            (213) 443-3000

8

9

10

11  FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12          ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
            BY:   THOMAS S. McCONVILLE
13                Attorney at Law
            4 Park Plaza
14          Suite 1600
            Irvine, California 92614
15          (949) 567-6700

16          - AND -

17          ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
            BY:   ANNETTE L. HURST
18                Attorney at Law
            405 Howard Street
19          San Francisco, California 94105
            (415)773-5700

20          - AND -

21          KELLER RACKAUCKAS
22          BY:   JENNIFER KELLER
                  Attorney at Law
23          18500 Von Karman Avenue
            Suite 560
24          Irvine, California 92612

25

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
        LAW OFFICES OF MARK E. OVERLAND
5       By:  MARK E. OVERLAND
              Attorney at Law
6       100 Wilshire Boulevard
        Suite 950
7       Santa Monica, California 90401
        (310) 459-2830
8
        – AND –
9
        SCHEPER KIM & HARRIS LLP
10      BY:  ALEXANDER H. COTE
             Attorney at Law
11      601 West 5th Street
        12th Floor
12      Los Angeles, California 90071
        (213) 613-4660
13

14

15
    ALSO PRESENT:
16
        MGA ENTERTAINMENT, INC.
17      BY:  JEANINE PISONI
             Attorney at Law
18      16360 Roscoe Boulevard
        Suite 105
19      Van, Nuys, California 91406

20

21

22

23

24

25

1                        **I N D E X**

2    **PROCEEDINGS**                                    **PAGE**

3    Further jury selection                              5

4    Additional alternate jurors sworn                  65

5    Motion in limine                                   68

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, FRIDAY, JANUARY 14, 2011**          |
|       | 2  | **Day 2, Volume 1 of 2**                                     |
|       | 3  | (10:32 a.m.)                                                 |
| 10:32 | 4  | *(In the presence of six prospective jurors.)*              |
| 10:32 | 5  | THE COURT:  There's six people present.  Let me go           |
| 10:32 | 6  | through each of you.  Thank you for returning with that      |
| 10:32 | 7  | frantic phone call last night.                               |
| 10:32 | 8  | You should know that out of your presence there              |
| 10:33 | 9  | have been a series of stipulations and rulings that have     |
| 10:33 | 10 | removed two sitting jurors and one alternate.  We somewhat    |
| 10:33 | 11 | anticipated that last evening, which is why I picked an      |
| 10:33 | 12 | arbitrary number of six.  You were the next six that were    |
| 10:33 | 13 | going to be called, and counsel are aware of this and have   |
| 10:33 | 14 | agreed to the following procedure.                           |
| 10:33 | 15 | You should be Fernando Jimenez?                              |
| 10:33 | 16 | PROSPECTIVE JUROR:  Yes.                                     |
| 10:33 | 17 | THE COURT:  You should be Joy Nemetz.                        |
| 10:33 | 18 | PROSPECTIVE JUROR:  Yes.                                     |
| 10:33 | 19 | THE COURT:  Robert Lee Reckers.                              |
| 10:33 | 20 | PROSPECTIVE JUROR:  Yes.                                     |
| 10:33 | 21 | THE COURT:  Barbara Vega.                                    |
| 10:33 | 22 | PROSPECTIVE JUROR:  Yes.                                     |
| 10:33 | 23 | THE COURT:  Thank you very much.                             |
| 10:33 | 24 | And you should be Paul Fong Bay.                             |
| 10:33 | 25 | PROSPECTIVE JUROR:  Yes.                                     |

| 10:33 | 1 | THE COURT:  And you would be Vanthi Tran Pham. |

10:33   1          THE COURT:  And you would be Vanthi Tran Pham.

10:33   2          PROSPECTIVE JUROR:  Vanthi Tran Pham.

10:33   3          THE COURT:  Vanthi Tran Pham.  Thank you very

10:33   4   much.

10:33   5          Now, I have the same questions for each of you

10:33   6   that I asked yesterday, and then I'll turn you over to

10:33   7   counsel for a little bit of time.

10:33   8          But, Mr. Jimenez, after hearing all of the

10:34   9   questions yesterday, do you feel that you'd be fair and

10:34  10   impartial to both parties in this matter?

10:34  11          PROSPECTIVE JUROR:  Yes, I do.

10:34  12          THE COURT:  Is there anything on the questionnaire

10:34  13   that you wish to change or any additional information that

10:34  14   you would like to add to your questionnaire?

10:34  15          PROSPECTIVE JUROR:  Not at all.

10:34  16          THE COURT:  So the parties can rely upon that

10:34  17   questionnaire, then?

10:34  18          PROSPECTIVE JUROR:  Yes.

10:34  19          THE COURT:  Would you follow the law at the end of

10:34  20   the case that I instruct you on?

10:34  21          PROSPECTIVE JUROR:  I will.

10:34  22          THE COURT:  Is there anything you'd like to ask

10:34  23   me, sir.

10:34  24          PROSPECTIVE JUROR:  Not at this point.

10:34  25          THE COURT:  Okay.  Let me turn to Joy Nemetz.

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 7 of 81   Page ID
#:289608
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

7

10:34  1               The same question:  Would you be fair and

10:34  2    impartial to both sides?

10:34  3               PROSPECTIVE JUROR:  Yes.

10:34  4               THE COURT:  Would you follow the law?

10:34  5               PROSPECTIVE JUROR:  Yes.

10:34  6               THE COURT:  Is there anything on your

10:34  7    questionnaire that you'd like to add or change?

10:34  8               PROSPECTIVE JUROR:  No.

10:34  9               THE COURT:  Can the parties rely upon that

10:34  10   questionnaire?

10:34  11              PROSPECTIVE JUROR:  Yes, they can.

10:34  12              THE COURT:  Is there anything you would like to

10:34  13   ask me?

10:34  14              PROSPECTIVE JUROR:  No.

10:34  15              THE COURT:  Okay.  Let me turn to Robert Lee

10:34  16   Reckers.

10:34  17              Would you be fair and impartial to both sides?

10:34  18              PROSPECTIVE JUROR:  Yes, I would.

10:34  19              THE COURT:  Would you follow the law?

10:35  20              PROSPECTIVE JUROR:  Yes.

10:35  21              THE COURT:  Is there anything on your

10:35  22   questionnaire that you would like to delete or add?

10:35  23              PROSPECTIVE JUROR:  There's two things that have

10:35  24   come to mind.  First is, the more chance I've had to sleep

10:35  25   on this, I do recall, and I don't think it's even been in

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 8 of 81   Page ID #:289609
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

8

| | | |
|---|---|---|
| 10:35 | 1 | the last year -- seems like two or three years ago -- that I |
| 10:35 | 2 | heard something through the media regarding this case. |
| 10:35 | 3 | The second is, I don't think it called it a |
| 10:35 | 4 | nondisclosure agreement, and I don't remember if |
| 10:35 | 5 | confidentiality was part of it -- it may have been.  With my |
| 10:35 | 6 | job, we deal with sensitive issues, and, obviously, we can't |
| 10:35 | 7 | go talk to the media about cases that we may work.  So there |
| 10:35 | 8 | was something to do with confidentiality or -- or not |
| 10:35 | 9 | talking to the media.  And I know I signed it.  I don't |
| 10:35 | 10 | recall getting a copy.  It's probably in what we call our |
| 10:35 | 11 | "drop" file. |
| 10:35 | 12 | But there was some question to do on the |
| 10:35 | 13 | questionnaire about nondisclosure agreements or |
| 10:35 | 14 | confidentiality things, and I think I put "no" to that.  So |
| 10:35 | 15 | there -- I don't think it's a nondisclosure agreement, but I |
| 10:35 | 16 | do think it was something to do with confidentiality. |
| 10:36 | 17 | THE COURT:  That's very helpful for both parties. |
| 10:36 | 18 | Appreciate that information. |
| 10:36 | 19 | Are there any questions you'd like to ask me, sir? |
| 10:36 | 20 | PROSPECTIVE JUROR:  I don't think so. |
| 10:36 | 21 | THE COURT:  Okay.  Let me turn to Barbara Vega. |
| 10:36 | 22 | Ms. Vega, would you be fair and impartial to both |
| 10:36 | 23 | sides? |
| 10:36 | 24 | PROSPECTIVE JUROR:  You would think I should be, |
| 10:36 | 25 | but I'm very much aware of one company other than the other, |

10:36    1    and I'm named after their doll.

10:36    2              THE COURT:  And you're what?

10:36    3              PROSPECTIVE JUROR:  I'm named after their doll.

10:36    4              THE COURT:  Your named after their doll?  I'll let

10:36    5    counsel follow up, if they wish.

10:36    6              Regardless of you being named after their doll and

10:36    7    being aware of the company, would you be fair and impartial

10:36    8    to both sides based upon the evidence?

10:36    9              PROSPECTIVE JUROR:  Yes.

10:36   10              THE COURT:  Hmm?

10:36   11              PROSPECTIVE JUROR:  Yes.

10:36   12              THE COURT:  Okay.  You can have an initial good

10:36   13    feeling about a company, you may not have heard of the other

10:36   14    company, et cetera, but this should be on the facts

10:36   15    presented.  But if you think you would be sympathetic

10:36   16    towards that one company or it would influence your eventual

10:36   17    decision, then I would like to know that.

10:36   18              PROSPECTIVE JUROR:  I will be leaning a little

10:36   19    bit -- and that's not fair to either company.

10:37   20              THE COURT:  Okay.  That's fair enough.  That's

10:37   21    good that the parties know.

10:37   22              Would you follow the law at the end of the case?

10:37   23              PROSPECTIVE JUROR:  Yes.

10:37   24              THE COURT:  Okay.  Do you have any questions of

10:37   25    me?

10:37  1          PROSPECTIVE JUROR:  No.

10:37  2          THE COURT:  Anything else on your questionnaire

10:37  3  that you'd like to add or delete?

10:37  4          PROSPECTIVE JUROR:  No.

10:37  5          THE COURT:  Okay.  Let me turn to Paul Fong Bay.

10:37  6          Mr. Bay, would you be fair and impartial to both

10:37  7  sides?

10:37  8          PROSPECTIVE JUROR:  Yes.

10:37  9          THE COURT:  Would you follow the law?

10:37  10          PROSPECTIVE JUROR:  Yes.

10:37  11          THE COURT:  Is there anything on your

10:37  12  questionnaire that you'd like to add or delete?

10:37  13          PROSPECTIVE JUROR:  There is one thing.

10:37  14          It was regarding the question on whether I've

10:37  15  signed an employment contract, and I can't remember how I

10:37  16  answered it.  But, having thought back, the answer should

10:37  17  be, no, I've never signed an employment contract before.

10:37  18  But I can't remember how I answered it.

10:37  19          THE COURT:  Okay.  And do you have any questions

10:37  20  of me, sir?

10:37  21          PROSPECTIVE JUROR:  No.

10:37  22          THE COURT:  Thank you very much.

10:37  23          Ms. Pham, I was looking at your questionnaire, and

10:37  24  I think one of the counsel called it to my attention.

10:37  25  There's a date, "January 19th" or the "22nd," that you can't

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

11

| | | |
|---|---|---|
| 10:37 | 1 | be with us. |
| 10:37 | 2 | PROSPECTIVE JUROR:  No.  I have a flight to |
| 10:37 | 3 | New York. |
| 10:37 | 4 | THE COURT:  Okay.  So that's a prepaid, |
| 10:37 | 5 | ready-to-go flight? |
| 10:37 | 6 | PROSPECTIVE JUROR:  Yeah.  Everything's all |
| 10:37 | 7 | booked. |
| 10:37 | 8 | THE COURT:  Counsel, do you want to go any further |
| 10:38 | 9 | with this juror? |
| 10:38 | 10 | MR. QUINN:  No, Your Honor. |
| 10:38 | 11 | THE COURT:  Stipulate? |
| 10:38 | 12 | MS. KELLER:  May I just ask a couple questions, |
| 10:38 | 13 | Your Honor? |
| 10:38 | 14 | THE COURT:  Certainly. |
| 10:38 | 15 | MS. KELLER:  Now? |
| 10:38 | 16 | THE COURT:  Certainly. |
| 10:38 | 17 | MS. KELLER:  Okay.  Ms. Pham, is this an important |
| 10:38 | 18 | trip to you? |
| 10:38 | 19 | PROSPECTIVE JUROR:  I've been saving up for it.  I |
| 10:38 | 20 | finished school last March, so I'm actually in the middle of |
| 10:38 | 21 | applying for law school, so I'm starting law school in |
| 10:38 | 22 | August, so I'm trying to get in as much travel time as I can |
| 10:38 | 23 | before -- before I go to law school. |
| 10:38 | 24 | MS. KELLER:  Before you work yourself to death the |
| 10:38 | 25 | rest of your life? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:38 | 1 | PROSPECTIVE JUROR:  Yes. |
| 10:38 | 2 | MS. KELLER:  Okay.  Thank you, Your Honor.  We'll |
| 10:38 | 3 | stipulate. |
| 10:38 | 4 | THE COURT:  All right.  Then, both parties are |
| 10:38 | 5 | stipulating; is that correct? |
| 10:38 | 6 | MR. QUINN:  Yes. |
| 10:38 | 7 | THE COURT:  We're going to thank and excuse you. |
| 10:38 | 8 | Thank you very much. |
| 10:38 | 9 | MR. OVERLAND:  Excuse me, Judge.  I stipulate |
| 10:38 | 10 | also. |
| 10:38 | 11 | THE COURT:  Well, Mr. Overland, my apologies.  My |
| 10:38 | 12 | apologies.  You're sitting clear over there. |
| 10:38 | 13 | Will you stipulate also, Mr. Overland? |
| 10:38 | 14 | MR. OVERLAND:  Yes, sir. |
| 10:38 | 15 | THE COURT:  All right.  Thank you. |
| 10:38 | 16 | PROSPECTIVE JUROR:  Okay.  Thank you. |
| 10:38 | 17 | THE COURT:  All right.  Now, let me turn this over |
| 10:38 | 18 | to Mr. Quinn. |
| 10:38 | 19 | MR. QUINN:  Thank you, Your Honor. |
| 10:39 | 20 | Good morning, Mr. Jimenez.  Did I say that right? |
| 10:39 | 21 | PROSPECTIVE JUROR:  Yes. |
| 10:39 | 22 | MR. QUINN:  You were born in Bogota, Colombia. |
| 10:39 | 23 | That's a country we haven't yet visited in this jury |
| 10:39 | 24 | selection process. |
| 10:39 | 25 | PROSPECTIVE JUROR:  Yes, I was born there. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:39 | 1 | MR. QUINN:  And how old were you when you came to |
| 10:39 | 2 | this country? |
| 10:39 | 3 | PROSPECTIVE JUROR:  Twenty-one. |
| 10:39 | 4 | MR. QUINN:  So you've been here awhile. |
| 10:39 | 5 | PROSPECTIVE JUROR:  Thirty-seven years now. |
| 10:39 | 6 | MR. QUINN:  What brought you to this country? |
| 10:39 | 7 | PROSPECTIVE JUROR:  My mother came in first, and |
| 10:39 | 8 | then I follow her, and then my brother follow us. |
| 10:39 | 9 | MR. QUINN:  Do you have occasion to go back from |
| 10:39 | 10 | time to time? |
| 10:39 | 11 | PROSPECTIVE JUROR:  Never went back. |
| 10:39 | 12 | MR. QUINN:  Okay.  Is there a reason for that? |
| 10:39 | 13 | PROSPECTIVE JUROR:  No interest.  My whole family |
| 10:39 | 14 | went back a couple of times or more, but I just never went |
| 10:39 | 15 | back. |
| 10:39 | 16 | MR. QUINN:  Just never interested? |
| 10:39 | 17 | PROSPECTIVE JUROR:  No.  I'm happy here. |
| 10:39 | 18 | MR. QUINN:  Okay.  You work as a medical |
| 10:39 | 19 | interpreter you said on your questionnaire.  Could you tell |
| 10:40 | 20 | us -- that sort of sounds perhaps self-evident -- what you |
| 10:40 | 21 | do.  You translate for doctors and patients? |
| 10:40 | 22 | PROSPECTIVE JUROR:  Yes.  All the different |
| 10:40 | 23 | personnel in the hospital.  We have social workers, |
| 10:40 | 24 | therapists, doctors -- actually, I'm a nurse and a |
| 10:40 | 25 | psychiatric technician, but for -- I been in the health care |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 14 of 81   Page ID #:289615
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

14

| | | |
|---|---|---|
| 10:40 | 1 | for 32 years now.  But this is what I am right now:  Medical |
| 10:40 | 2 | interpreter over the last 15 years. |
| 10:40 | 3 | MR. QUINN:  And do you work at a particular |
| 10:40 | 4 | facility or do you go from -- work at different facilities? |
| 10:40 | 5 | PROSPECTIVE JUROR:  The whole UCI Medical Center |
| 10:40 | 6 | we cover. |
| 10:40 | 7 | MR. QUINN:  All right.  You indicated in your |
| 10:40 | 8 | questionnaire that you had -- there was a dispute you were |
| 10:40 | 9 | involved in with a coworker. |
| 10:40 | 10 | Is that something you would be comfortable talking |
| 10:40 | 11 | about? |
| 10:40 | 12 | PROSPECTIVE JUROR:  Can you read that for me, |
| 10:40 | 13 | please, again -- |
| 10:40 | 14 | MR. QUINN:  Yes. |
| 10:40 | 15 | PROSPECTIVE JUROR:  -- where I answered? |
| 10:41 | 16 | MR. QUINN:  The question was, "Have you or someone |
| 10:41 | 17 | close to you ever had a serious dispute with an employer, |
| 10:41 | 18 | employee, supervisor or coworker, or been terminated or laid |
| 10:41 | 19 | off?" |
| 10:41 | 20 | And you answered, "Yes," and wrote, "Coworker at |
| 10:41 | 21 | work right now." |
| 10:41 | 22 | PROSPECTIVE JUROR:  Yes.  We have a situation with |
| 10:41 | 23 | a coworker right now, Workmen's Compensation, and that kind |
| 10:41 | 24 | of situation, so -- it's been going for the last -- almost |
| 10:41 | 25 | one year now. |

10:41    1              MR. QUINN:  It's a type of Workers' Compensation

10:41    2    issue, did you say?

10:41    3              PROSPECTIVE JUROR:  Yes.  The insurance company

10:41    4    send an investigator to ask questions about this coworker,

10:41    5    and I was selected to -- to answer those questions.

10:42    6              MR. QUINN:  Is this someone that you are close to?

10:42    7              PROSPECTIVE JUROR:  We are coworkers, but we

10:42    8    don't -- we are not friends outside of work, no.

10:42    9              MR. QUINN:  This issue isn't something that has

10:42   10    affected your view of the legal process or employers --

10:42   11              PROSPECTIVE JUROR:  Not at all.

10:42   12              MR. QUINN:  -- or --

10:42   13              PROSPECTIVE JUROR:  Not at all.

10:42   14              MR. QUINN:  You were here yesterday, so you heard

10:42   15    the questions I've asked about the issue of damages and, you

10:42   16    know, whether there are any preconceived limits in your

10:42   17    mind.

10:42   18              Do you have any thoughts in that regard that, no

10:42   19    matter what the evidence is, you don't think that you could

10:42   20    return a verdict above a certain amount?

10:42   21              PROSPECTIVE JUROR:  The amount doesn't matter to

10:42   22    me.  The evidence is what is important.

10:42   23              MR. QUINN:  Okay.  And that's all we ask, that you

10:42   24    be able to act based on -- make a decision based on what the

10:42   25    evidence is.

CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

16

| | | |
|---|---|---|
| 10:42 | 1 | Is that something you feel like you can do? |
| 10:42 | 2 | PROSPECTIVE JUROR:  Yes.  The evidence -- the |
| 10:42 | 3 | evidence is what I'm gonna follow, yes.  I don't believe |
| 10:43 | 4 | that in cases with the law that it's right or wrong or the |
| 10:43 | 5 | truth is gonna be part of this.  It's the law mainly what |
| 10:43 | 6 | I'm gonna follow. |
| 10:43 | 7 | MR. QUINN:  Right. |
| 10:43 | 8 | PROSPECTIVE JUROR:  Whatever the law stipulates, |
| 10:43 | 9 | that's what I'm gonna follow. |
| 10:43 | 10 | MR. QUINN:  And we all read stories about jury |
| 10:43 | 11 | verdicts in the newspaper.  You know, sometimes you hear |
| 10:43 | 12 | people express the view that, "I think jury verdicts -- |
| 10:43 | 13 | juries in this country have just gone crazy.  Verdicts have |
| 10:43 | 14 | gotten out of hand." |
| 10:43 | 15 | Have you ever had that feeling? |
| 10:43 | 16 | PROSPECTIVE JUROR:  I was part of a jury duty |
| 10:43 | 17 | before, a DUI, and with that experience, I -- my feeling is |
| 10:43 | 18 | that it works very well.  And, yeah, people within the group |
| 10:43 | 19 | of jurors were having opposite ways of thinking.  Finally, |
| 10:44 | 20 | we came to agreement.  Took for a while, but it works very |
| 10:44 | 21 | well. |
| 10:44 | 22 | MR. QUINN:  So you have positive feelings about |
| 10:44 | 23 | your previous jury experience? |
| 10:44 | 24 | PROSPECTIVE JUROR:  Yes, I do. |
| 10:44 | 25 | MR. QUINN:  Thanks very much. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

17

| 10:44 | 1 | PROSPECTIVE JUROR:  Welcome. |
| 10:44 | 2 | MR. QUINN:  Mrs. Nemetz. |
| 10:44 | 3 | PROSPECTIVE JUROR:  Hi. |
| 10:44 | 4 | MR. QUINN:  Hi.  Good morning. |
| 10:44 | 5 | PROSPECTIVE JUROR:  Good morning. |
| 10:44 | 6 | MR. QUINN:  How about the question I just asked |
| 10:44 | 7 | Mr. Jimenez, this idea that we see jury verdicts in the |
| 10:44 | 8 | newspaper, hear about 'em on the news, um, sometime you hear |
| 10:44 | 9 | the view expressed that, "Gee, I just think jury verdicts in |
| 10:44 | 10 | this country are getting out of hand.  They're just too |
| 10:44 | 11 | large." |
| 10:44 | 12 | Is that something that you've ever thought? |
| 10:44 | 13 | PROSPECTIVE JUROR:  Um, no.  I just think it leads |
| 10:44 | 14 | to the importance of the issues. |
| 10:44 | 15 | MR. QUINN:  Right. |
| 10:44 | 16 | PROSPECTIVE JUROR:  The dollars, no. |
| 10:44 | 17 | MR. QUINN:  Okay.  You've served -- have you |
| 10:44 | 18 | served on a jury before? |
| 10:44 | 19 | PROSPECTIVE JUROR:  No. |
| 10:44 | 20 | MR. QUINN:  You've never summoned or -- |
| 10:45 | 21 | PROSPECTIVE JUROR:  Yes.  But it was always make |
| 10:45 | 22 | the phone call and I never got the lucky number to come in. |
| 10:45 | 23 | MR. QUINN:  You always got the right answer on the |
| 10:45 | 24 | recording? |
| 10:45 | 25 | PROSPECTIVE JUROR:  I guess. |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 18 of 81   Page ID #:289619
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

18

| | | |
|---|---|---|
| 10:45 | 1 | MR. QUINN:  Would you like to serve on a jury? |
| 10:45 | 2 | PROSPECTIVE JUROR:  Yes. |
| 10:45 | 3 | MR. QUINN:  Does this case sound like one that you |
| 10:45 | 4 | think is something that you would be interested in helping |
| 10:45 | 5 | us make decisions on? |
| 10:45 | 6 | PROSPECTIVE JUROR:  Yes.  It's -- you know, |
| 10:45 | 7 | everybody keeps bringing up it's just about dolls.  To me, |
| 10:45 | 8 | it's not about dolls.  To me, it's about a principle.  It's |
| 10:45 | 9 | about an idea that may or may not belong to someone else. |
| 10:45 | 10 | MR. QUINN:  Right. |
| 10:45 | 11 | PROSPECTIVE JUROR:  So it's really not about the |
| 10:45 | 12 | doll.  That's just the end product.  It's more the principle |
| 10:45 | 13 | behind it. |
| 10:45 | 14 | MR. QUINN:  You have a degree or a certification |
| 10:45 | 15 | in business management? |
| 10:45 | 16 | PROSPECTIVE JUROR:  Yes. |
| 10:45 | 17 | MR. QUINN:  Could you tell us what it is that you |
| 10:45 | 18 | do.  I know you work for a water district. |
| 10:45 | 19 | PROSPECTIVE JUROR:  Right.  In the finance |
| 10:45 | 20 | department. |
| 10:45 | 21 | MR. QUINN:  Uh-huh. |
| 10:45 | 22 | PROSPECTIVE JUROR:  I'm a -- I am -- um, help |
| 10:45 | 23 | people get their water restored; hopefully, keep their water |
| 10:45 | 24 | from being turned off to begin with. |
| 10:46 | 25 | MR. QUINN:  Uh-huh.  Important. |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 19 of 81   Page ID #:289620
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

19

10:46    1            PROSPECTIVE JUROR:  Yeah.  Just helping people
10:46    2    with their finances in order to get their bills paid.
10:46    3            MR. QUINN:  You indicated on your questionnaire
10:46    4    that you are frequently a leader.  Can you tell us about
10:46    5    that -- what kind of circumstances you've found yourself in
10:46    6    a leadership role.
10:46    7            PROSPECTIVE JUROR:  Well, you know, it just comes
10:46    8    to things at work.  I, um -- no one else would step up, so I
10:46    9    finally had to step up on the association.  It's like an MOU
10:46   10    within our water district.  And not only did I step up, I
10:46   11    ended up being appointed the treasurer.  And those kind of
10:46   12    things just keep happening.
10:46   13            MR. QUINN:  All right.
10:46   14            PROSPECTIVE JUROR:  You know, even simple little
10:46   15    basic things.  There's 16 people in my department.  I'm the
10:46   16    one that will start the Christmas party.  Why is that?  I
10:46   17    don't know.
10:46   18            MR. QUINN:  Might have something to do with you.
10:46   19            PROSPECTIVE JUROR:  Could be.  Could be the name.
10:46   20    I don't know.
10:46   21            THE COURT:  All right.  Well, thank you.
10:46   22            Mr. Reckers?
10:47   23            PROSPECTIVE JUROR:  Yes.
10:47   24            MR. QUINN:  You are a forensic scientist.
10:47   25            PROSPECTIVE JUROR:  I am, yes.

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 20 of 81   Page ID #:289621
CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

20

10:47   1          MR. QUINN:  And you've spent some time in
10:47   2   courtrooms, it sounds like.
10:47   3          PROSPECTIVE JUROR:  I have, yes.
10:47   4          MR. QUINN:  Do you work for yourself or do you
10:47   5   work for some agency or --
10:47   6          PROSPECTIVE JUROR:  I work for the Orange County
10:47   7   Sheriff's Department just down the street.
10:47   8          MR. QUINN:  Okay.  And so you are kind of an
10:47   9   in-house forensics expert at that agency?
10:47   10         PROSPECTIVE JUROR:  Yeah, I think that's fair to
10:47   11  say:  A government employee, a forensic scientist for
10:47   12  Orange County, and in particular, the Sheriff's Department.
10:47   13         MR. QUINN:  So, obviously, your areas, in both
10:47   14  sides, have some of this type of evidence in this case.
10:47   15         Scientific type of evidence, that's something
10:47   16  that, obviously, you're very familiar with?
10:47   17         PROSPECTIVE JUROR:  Yes.
10:47   18         MR. QUINN:  And what kind of areas of science or
10:47   19  expertise are you a specialist in?
10:47   20         PROSPECTIVE JUROR:  I started out working
10:47   21  controlled substances analysis back 16 -- almost 17 years
10:47   22  ago.  Worked there two and a half years analyzing white
10:47   23  powders, green leafy substances, and other materials,
10:48   24  whether or not they contained a controlled substance.
10:48   25         I was then transferred to the forensic alcohol

DEBBIE GALE, U.S. COURT REPORTER

10:48  1    section, and that's where I worked for about 11 and a half

10:48  2    years.  And that's where most of my courtroom experience

10:48  3    came from -- was going to Court and testifying to analyzed

10:48  4    blood alcohol levels.

10:48  5          And then even more so than the blood alcohol

10:48  6    levels was the breath alcohol levels.  And the breath

10:48  7    program is where I worked for the most part of those 11 and

10:48  8    a half years -- in the alcohol section.

10:48  9          And then, currently, I'm now almost done with

10:48  10   training in the firearms and tool marks analysis section of

10:48  11   the crime lab.  And that's training that can take two to

10:48  12   three years to complete.

10:48  13         MR. QUINN:  Do you like this type of work?

10:48  14         PROSPECTIVE JUROR:  Oh, I love it -- especially

10:48  15   where I am now.  I wanted to work in firearms from day one.

10:48  16   But our unit's a little bit smaller compared to some

10:48  17   surrounding counties, and you tend to get -- you have to

10:48  18   prove yourself before you get in there, that you're capable

10:48  19   in court, that you're a capable scientist.  So people tend

10:49  20   to get into that section and stay there for a long, long

10:49  21   time.  So you have to wait for some openings to pop up,

10:49  22   which took me 14 years to get some openings.

10:49  23         MR. QUINN:  All right.  Now, in this case, both

10:49  24   sides have retained experts who have been prepared, and

10:49  25   depositions taken, and both sides expect they will call at

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 22 of 81   Page ID #:289623
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

22

| | | |
|---|---|---|
| 10:49 | 1 | least some experts. |
| 10:49 | 2 | Are you -- if you're on this jury -- that's what |
| 10:49 | 3 | you do -- are you going to be in a position where you're |
| 10:49 | 4 | gonna sort of mentally be critiquing the performance of the |
| 10:49 | 5 | experts, or sort of saying to yourself, "I would have done |
| 10:49 | 6 | this differently" or...? |
| 10:49 | 7 | PROSPECTIVE JUROR:  Oh, I'm sure that could be |
| 10:49 | 8 | possible.  I don't know that I'll focus on it, but -- |
| 10:49 | 9 | MR. QUINN:  Uh-huh. |
| 10:49 | 10 | PROSPECTIVE JUROR:  I -- I don't know.  Human |
| 10:49 | 11 | nature.  I would -- I'm sure I might see something and |
| 10:49 | 12 | think, "Oh, I might have done it differently."  But we're |
| 10:49 | 13 | human beings and we do things differently. |
| 10:49 | 14 | MR. QUINN:  When you are testifying as an expert, |
| 10:49 | 15 | is there frequently an expert on the other side that the |
| 10:50 | 16 | other side -- the defendant, I assume -- usually has |
| 10:50 | 17 | retained, and is also testifying as to the same subjects you |
| 10:50 | 18 | are? |
| 10:50 | 19 | PROSPECTIVE JUROR:  Yeah, that's common, |
| 10:50 | 20 | especially with forensic alcohol.  There's a number of |
| 10:50 | 21 | independent experts out there that will oftentimes testify |
| 10:50 | 22 | behind you at some point -- may not be directly behind you, |
| 10:50 | 23 | but certainly on the case following yours. |
| 10:50 | 24 | MR. QUINN:  "Behind you" meaning? |
| 10:50 | 25 | PROSPECTIVE JUROR:  Well, normally, the |

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

23

10:50    1    prosecution side, the district attorney, the city attorneys,

10:50    2    they normally put on their case first.

10:50    3                MR. QUINN:  Right.

10:50    4                PROSPECTIVE JUROR:  We're not prosecution

10:50    5    witnesses 'cause we do -- we are fair, impartial scientists.

10:50    6    But we are often called by the prosecution side.  There's

10:50    7    been a number of times where I've been called by the

10:50    8    defense, but if you compare the two numbers, prosecution

10:50    9    side has, obviously, called me far more often than the

10:50   10    defense.

10:50   11                MR. QUINN:  All right.  So when you say "behind

10:50   12    you," you just mean after you in the trial?

10:50   13                PROSPECTIVE JUROR:  Yes.

10:50   14                MR. QUINN:  Okay.  You just told us this morning

10:50   15    that, having thought about it overnight, you do recall

10:50   16    reading -- or something about this case?

10:50   17                PROSPECTIVE JUROR:  Yeah, I do, from a couple

10:51   18    years ago.

10:51   19                MR. QUINN:  Okay.  And without getting into the

10:51   20    specifics of what you recall, do you have -- can you tell us

10:51   21    whether it's kind of a detailed recollection?  Kind of a

10:51   22    specific recollection?

10:51   23                PROSPECTIVE JUROR:  I remember which side I

10:51   24    believe had a dispute with the other.

10:51   25                MR. QUINN:  Right.

10:51    1        PROSPECTIVE JUROR:  But as far as absolute details

10:51    2   in the case, I can't recall specifically what it was.

10:51    3        MR. QUINN:  All right.  And you say this was a

10:51    4   couple years ago, you think?

10:51    5        PROSPECTIVE JUROR:  I'm thinking two or three

10:51    6   years ago.  I don't think it was within the last year.  I

10:51    7   know it's been awhile.

10:51    8        MR. QUINN:  All right.  So let me ask you this

10:51    9   then:  If you end up on this jury, is this something --

10:51   10   this -- that you remember reading, is this something that

10:51   11   you think is gonna somehow influence your assessment of the

10:51   12   evidence or the decision-making or your state of mind as it

10:51   13   relates to this case?

10:51   14        PROSPECTIVE JUROR:  No.  I don't think that will

10:51   15   reflect my decision-making.

10:51   16        MR. QUINN:  You can put whatever that was out of

10:51   17   your mind and based -- uh, your decision's based on the

10:51   18   evidence that you hear in this case?

10:52   19        PROSPECTIVE JUROR:  Yes.

10:52   20        MR. QUINN:  Thank you.

10:52   21        PROSPECTIVE JUROR:  You're welcome.

10:52   22        MR. QUINN:  If I could turn now to Ms. Vega.

10:52   23        And I'm guessing that the doll that you were named

10:52   24   after -- just random guess -- is Barbie.

10:52   25        PROSPECTIVE JUROR:  Well, thank you for not naming

| | | |
|---|---|---|
| 10:52 | 1 | me "Barbie."  It turned ought to be Barbara.  But my sister |
| 10:52 | 2 | was addicted to her Barbie; and so when I came along |
| 10:52 | 3 | afterwards, I got the name.  And incidentally -- well, you |
| 10:52 | 4 | know, it's funny.  I ended up playing with Skipper more than |
| 10:52 | 5 | Barbie. |
| 10:52 | 6 | MR. QUINN:  Has that been a burden to you in life? |
| 10:52 | 7 | PROSPECTIVE JUROR:  No.  I don't -- I'm not |
| 10:52 | 8 | married to a Ken. |
| 10:52 | 9 | MR. QUINN:  Even Barbie isn't married to Ken, last |
| 10:52 | 10 | I heard. |
| 10:52 | 11 | Now, you told us that you thought -- initially, |
| 10:52 | 12 | you were named after a doll -- and that that could have some |
| 10:52 | 13 | influence on your thinking. |
| 10:52 | 14 | PROSPECTIVE JUROR:  Well, the Mattel company -- |
| 10:52 | 15 | and correct me if I'm wrong -- but did you also acquire the |
| 10:52 | 16 | American Girl's doll collection? |
| 10:53 | 17 | MR. QUINN:  I do know the answer to that, |
| 10:53 | 18 | Your Honor.  And the answer is yes. |
| 10:53 | 19 | PROSPECTIVE JUROR:  That's my collection.  My |
| 10:53 | 20 | passion is American doll and I'm 50 years old. |
| 10:53 | 21 | MR. QUINN:  All right. All right. |
| 10:53 | 22 | PROSPECTIVE JUROR:  I do have two daughters.  And |
| 10:53 | 23 | my passion was -- when I heard Mattel bought American doll, |
| 10:53 | 24 | I was happy. |
| 10:53 | 25 | MR. QUINN:  All right.  Okay.  Well, I'm -- let me |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 26 of 81   Page ID #:289627
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

26

10:53   1   be clear on this:  You said you thought you might have some

10:53   2   sympathy for Mattel.  And neither side here wants sympathy.

10:53   3           PROSPECTIVE JUROR:  Sympathy?

10:53   4           MR. QUINN:  Neither side wants jurors that start

10:53   5   out with sympathy for them.  What we're looking for here are

10:53   6   jurors, as I said yesterday, start out with that needle

10:53   7   pointing straight up and down.

10:53   8           Now, we all come to Court, all jurors come with

10:53   9   life experiences, and, you know, thank heavens.  We don't

10:53  10   ask people to leave those at the door when they become

10:53  11   jurors because it's very --

10:53  12           PROSPECTIVE JUROR:  Impossible.

10:54  13           MR. QUINN:  One, it's impossible; two, it's a very

10:54  14   important part of the American jury system.  And what makes

10:54  15   the system work is that we have people who are willing to

10:54  16   take time out of their ordinary lives and jobs to come here

10:54  17   and use their common sense and experience.  So we all have

10:54  18   life experiences.  We all come in with maybe some

10:54  19   preconceptions about things that may relate to any case.

10:54  20           But what we ask of jurors, and what the Court has

10:54  21   indicated, and I'm confident the Court will reiterate to the

10:54  22   jury, is that you try your level best, if you're a juror, to

10:54  23   not let any preconceptions that you may have enter into your

10:54  24   decision-making or your assessment of the evidence; that

10:54  25   you -- in other words, that you make that effort to try to

| | | |
|---|---|---|
| 10:54 | 1 | keep an open mind and to decide the case based on the |
| 10:54 | 2 | evidence that you hear and the law that the court instructs |
| 10:55 | 3 | you on.  That's what we ask. |
| 10:55 | 4 | PROSPECTIVE JUROR:  I understand. |
| 10:55 | 5 | MR. QUINN:  All right.  So we can't ask people, |
| 10:55 | 6 | "Forget about" -- you know, "Don't have any sympathies. |
| 10:55 | 7 | Don't have any preconception," because everybody has some. |
| 10:55 | 8 | If you were selected for this jury, do you think |
| 10:55 | 9 | that you could comply with that instruction and make that |
| 10:55 | 10 | effort to decide this case, not based on sympathy, not based |
| 10:55 | 11 | on any past experience or familiarity with Mattel or anyone |
| 10:55 | 12 | else, but just based on the evidence in this case? |
| 10:55 | 13 | PROSPECTIVE JUROR:  You're using the word |
| 10:55 | 14 | "sympathy," and I keep thinking that something died.  And |
| 10:55 | 15 | I'm baffled by your word "sympathy." |
| 10:55 | 16 | MR. QUINN:  The only reason I used it is I thought |
| 10:55 | 17 | you, in answer to the Judge's questions, had used that word. |
| 10:55 | 18 | I may have misheard.  But it's not -- |
| 10:55 | 19 | PROSPECTIVE JUROR:  Favoritism. |
| 10:55 | 20 | MR. QUINN:  Favoritism.  Bias. |
| 10:55 | 21 | PROSPECTIVE JUROR:  That's a good word. |
| 10:56 | 22 | MR. QUINN:  Bias.  So what we ask of jurors is not |
| 10:56 | 23 | to be -- wipe their hard drives clean, 'cause we can't do |
| 10:56 | 24 | that, but to try to set aside any types of preconceptions |
| 10:56 | 25 | that we might have, any sort of warm and fuzzy feelings that |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 28 of 81   Page ID #:289629
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

28

| | | |
|---|---|---|
| 10:56 | 1 | we might have and decide the case. |
| 10:56 | 2 | PROSPECTIVE JUROR:  Yeah.  I understand the |
| 10:56 | 3 | concept.  Sure. |
| 10:56 | 4 | MR. QUINN:  All right.  Is that something you |
| 10:56 | 5 | think you can do? |
| 10:56 | 6 | PROSPECTIVE JUROR:  Yes. |
| 10:56 | 7 | MR. QUINN:  You were involved in, it sounds like, |
| 10:56 | 8 | a lawsuit relating to some type of real estate dispute? |
| 10:56 | 9 | PROSPECTIVE JUROR:  Oh, 20 years ago, yes. |
| 10:56 | 10 | MR. QUINN:  So -- |
| 10:56 | 11 | PROSPECTIVE JUROR:  It was -- we were going to buy |
| 10:56 | 12 | a building.  And it turned out not to be good for us, so we |
| 10:56 | 13 | backed out of the deal, and we were sued.  But it was |
| 10:56 | 14 | settled out of court. |
| 10:56 | 15 | MR. QUINN:  Has that left you any kind of residual |
| 10:56 | 16 | feelings about -- |
| 10:56 | 17 | PROSPECTIVE JUROR:  No.  They -- we're still |
| 10:56 | 18 | friends. |
| 10:56 | 19 | MR. QUINN:  Okay.  Best result of all. |
| 10:56 | 20 | You also indicated that you had some negative |
| 10:57 | 21 | feelings against some types of immigrants.  Did I get that |
| 10:57 | 22 | right?  Perhaps? |
| 10:57 | 23 | PROSPECTIVE JUROR:  I'm in the business of tow |
| 10:57 | 24 | trucks, which doesn't -- |
| 10:57 | 25 | MR. QUINN:  Right. |

10:57   1          PROSPECTIVE JUROR:  I don't look like a tow truck

10:57   2   owner.

10:57   3          MR. QUINN:  You certainly don't.

10:57   4          PROSPECTIVE JUROR:  I have -- we have an auto

10:57   5   repair shop, and we do dispatch.  I do dispatch for a tow

10:57   6   company.  And we have a contract with Highway Patrol,

10:57   7   Fullerton Police, and we do a lot of towing, impounds,

10:57   8   DUI's, crashed cars.

10:57   9          And the abandoned vehicles that we have that we

10:57   10  are left with, without being able to, you know, collect,

10:57   11  have a tendency to come from the Latin population.  And my

10:57   12  last name is Vega.  I'm married to a Latin.  But it seems to

10:57   13  be that whenever we are -- am I allowed to say the word

10:57   14  "screwed"?  Sorry.

10:57   15         MR. QUINN:  You just did.

10:58   16         PROSPECTIVE JUROR:  Sorry.  It seems to come from

10:58   17  the Latin world, the Latin country.  They come, they drive

10:58   18  the cars, they don't have insurance, they don't have --

10:58   19  sometimes they don't have licenses.  The car gets abandoned

10:58   20  and we are stuck with these cars, to get nothing for 'em.

10:58   21  And it's very, very frustrating when they don't obey the

10:58   22  laws.

10:58   23         MR. QUINN:  Well, you obviously have some positive

10:58   24  personal experience.

10:58   25         PROSPECTIVE JUROR:  Yeah.  I married one.

CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

30

| | | |
|---|---|---|
| 10:58 | 1 | Although he's not really happy with me today. |
| 10:58 | 2 | MR. QUINN:  Well, let me ask you this:  You've had |
| 10:58 | 3 | these experiences you candidly told us about.  And thank you |
| 10:58 | 4 | for being candid about them. |
| 10:58 | 5 | Do you think that these are feelings that would |
| 10:58 | 6 | necessarily affect your decision-making in this case?  And |
| 10:58 | 7 | bearing in mind -- I think there's gonna be Hispanic |
| 10:58 | 8 | witnesses on both sides -- do you think that would -- |
| 10:58 | 9 | PROSPECTIVE JUROR:  My bias -- my bias comes to |
| 10:58 | 10 | the language.  And I understand that they come -- if the |
| 10:58 | 11 | witnesses that are here, they don't -- if they -- it sounds |
| 10:59 | 12 | like that they're from Mexico and they live in Mexico, |
| 10:59 | 13 | they -- I don't expect them to have perfect English when -- |
| 10:59 | 14 | if they live in Mexico and they work in Mexico, you know, |
| 10:59 | 15 | that's fine. |
| 10:59 | 16 | They come into this country, and I would have to |
| 10:59 | 17 | listen to them, I want them to have the ability to |
| 10:59 | 18 | communicate with me.  But if they're not somebody who comes |
| 10:59 | 19 | into this country, and -- I want them to be able to speak |
| 10:59 | 20 | our language.  But if they are not living here and they have |
| 10:59 | 21 | like a translator, I don't have a problem with that. |
| 10:59 | 22 | MR. QUINN:  Uh-huh.  Well, all right.  I |
| 10:59 | 23 | appreciate you sharing those feelings with us. |
| 10:59 | 24 | Do you think that, if you're on this jury -- I |
| 10:59 | 25 | mean, I don't know whether we're gonna have a witness such |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 31 of 81   Page ID #:289632
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

31

| | | |
|---|---|---|
| 10:59 | 1 | as you just described:  Someone who lives here and doesn't |
| 10:59 | 2 | actually speak really good English.  I don't know whether |
| 10:59 | 3 | there is such a witness. |
| 10:59 | 4 | But do you think these are feelings that would |
| 10:59 | 5 | affect your assessment of the evidence, or is this something |
| 11:00 | 6 | that -- |
| 11:00 | 7 | PROSPECTIVE JUROR:  Very much. |
| 11:00 | 8 | MR. QUINN:  I'm sorry? |
| 11:00 | 9 | PROSPECTIVE JUROR:  Very much. |
| 11:00 | 10 | MR. QUINN:  So just to be clear on what you're |
| 11:00 | 11 | saying, if there's a person, an immigrant -- Hispanic |
| 11:00 | 12 | immigrant to this country, who doesn't speak English, you |
| 11:00 | 13 | think that would very much affect your assessment of that |
| 11:00 | 14 | witness? |
| 11:00 | 15 | PROSPECTIVE JUROR:  Very much so. |
| 11:00 | 16 | MR. QUINN:  If you were instructed to not take |
| 11:00 | 17 | that into account in your assessment of that witness, is |
| 11:00 | 18 | that something that you think -- |
| 11:00 | 19 | PROSPECTIVE JUROR:  That would be a great leap of |
| 11:00 | 20 | faith -- you know, instructions like that. |
| 11:00 | 21 | MR. QUINN:  So you're sworn.  His Honor asks |
| 11:00 | 22 | you -- instructs you, "We need you to do this.  We need you |
| 11:00 | 23 | to set aside your personal experiences and what you've |
| 11:00 | 24 | described to us and assess this, not based on prejudice or |
| 11:00 | 25 | bias, but just on this witness's testimony," isn't that an |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 32 of 81   Page ID #:289633
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

32

| | | |
|---|---|---|
| 11:01 | 1 | instruction you believe you could follow? |
| 11:01 | 2 | PROSPECTIVE JUROR:  I could try. |
| 11:01 | 3 | MR. QUINN:  You said you could try.  Do you |
| 11:01 | 4 | think -- would you -- you would try to do it? |
| 11:01 | 5 | PROSPECTIVE JUROR:  I forget you don't like that |
| 11:01 | 6 | word, do you:  "Try." |
| 11:01 | 7 | It would be difficult.  That makes me bad. |
| 11:01 | 8 | MR. QUINN:  Huh? |
| 11:01 | 9 | PROSPECTIVE JUROR:  I'm sorry. |
| 11:01 | 10 | MR. QUINN:  Does not make you bad.  Does not make |
| 11:01 | 11 | you bad.  There aren't bad answers; there aren't good |
| 11:01 | 12 | answers.  There aren't bad answers; there's only truthful |
| 11:01 | 13 | answers.  And I'm hearing that you're giving us truthful |
| 11:01 | 14 | answers. |
| 11:01 | 15 | PROSPECTIVE JUROR:  The last one that I had was a |
| 11:01 | 16 | 1992 Green Honda.  And it was Green. |
| 11:01 | 17 | *(Laughter in the courtroom.)* |
| 11:01 | 18 | MR. QUINN:  Thank you.  If I could turn now, |
| 11:01 | 19 | finally, to Mr. Bay. |
| 11:01 | 20 | You've worked as a -- you've been an |
| 11:02 | 21 | infrastructure engineer in the financial industry? |
| 11:02 | 22 | PROSPECTIVE JUROR:  Right.  So I been in |
| 11:02 | 23 | information technology.  And in my last position I was |
| 11:02 | 24 | responsible for the planning and design of infrastructure, |
| 11:02 | 25 | which would include network connectivity, servers, |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 33 of 81   Page ID #:289634
CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

33

| | | |
|---|---|---|
| 11:02 | 1 | databases, PC's, everything you would associate with -- I |
| 11:02 | 2 | guess, primarily, on the hardware side, associated with |
| 11:02 | 3 | information technology. |
| 11:02 | 4 | MR. QUINN:  And for how many years have you been |
| 11:02 | 5 | in that field? |
| 11:02 | 6 | PROSPECTIVE JUROR:  Oh, in that field, probably 30 |
| 11:02 | 7 | years. |
| 11:02 | 8 | MR. QUINN:  Okay.  And I understand from your |
| 11:02 | 9 | questionnaire, you're looking for a new position now? |
| 11:02 | 10 | PROSPECTIVE JUROR:  That's right. |
| 11:02 | 11 | MR. QUINN:  For how long have you been looking? |
| 11:02 | 12 | PROSPECTIVE JUROR:  Oh, it's been about a year and |
| 11:02 | 13 | a half, little over a year and a half. |
| 11:02 | 14 | MR. QUINN:  Do you -- if you don't mind my asking, |
| 11:02 | 15 | do you have any sources of income, presently? |
| 11:02 | 16 | PROSPECTIVE JUROR:  Basically savings.  No sources |
| 11:02 | 17 | of income -- well, I take that back.  I do have one rental |
| 11:02 | 18 | unit. |
| 11:02 | 19 | MR. QUINN:  Uh-huh.  Is that enough to defray |
| 11:03 | 20 | your -- in itself, your living expenses? |
| 11:03 | 21 | PROSPECTIVE JUROR:  That, in itself, maybe not. |
| 11:03 | 22 | But I've -- I've been saving for retirement.  And so, right |
| 11:03 | 23 | now, um, I'm in a, I would say, good financial position to |
| 11:03 | 24 | keep looking at this point, so... |
| 11:03 | 25 | MR. QUINN:  Your wife doesn't work? |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 34 of 81   Page ID #:289635
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

34

11:03  1              PROSPECTIVE JUROR:  No.  She's a homemaker.

11:03  2              MR. QUINN:  Okay.  Would serving on this jury be a

11:03  3       financial hardship for you?

11:03  4              PROSPECTIVE JUROR:  No, it wouldn't.

11:03  5              MR. QUINN:  You indicated that you have a brother

11:03  6       who is an attorney with the U.S. Department of Justice?

11:03  7              PROSPECTIVE JUROR:  Yes.  He was an attorney with

11:03  8       the Department of Justice in the State of New Mexico.  And

11:03  9       he was actually the U.S. Attorney for the State of

11:03  10      New Mexico for a couple of years.

11:03  11             MR. QUINN:  "The" U.S. Attorney?

11:03  12             PROSPECTIVE JUROR:  The U.S. Attorney.  He

11:03  13      inherited the Wen Ho Lee case --

11:03  14             MR. QUINN:  Oh, yeah.

11:03  15             PROSPECTIVE JUROR:  -- several years ago.

11:04  16             MR. QUINN:  Los Alamos?

11:04  17             PROSPECTIVE JUROR:  At Los Alamos, yes.

11:04  18             MR. QUINN:  What does he do now?

11:04  19             PROSPECTIVE JUROR:  Right now he is working for

11:04  20      FERC, Federal Energy Commission in Washington D.C.

11:04  21             MR. QUINN:  Do you talk to him about his work?

11:04  22             PROSPECTIVE JUROR:  At FERC?

11:04  23             MR. QUINN:  Well, his legal career.

11:04  24             PROSPECTIVE JUROR:  Not much.  After his legal

11:04  25      career with the Department of Justice, he became a law

11:04   1   professor at the University of New Mexico.  And then took a

11:04   2   leave of absence to work at FERC, and -- occasional

11:04   3   conversations, but I don't go deep into what he does.

11:04   4              MR. QUINN:  Have you, yourself, had any experience

11:04   5   with the civil justice system?

11:04   6              PROSPECTIVE JUROR:  Yes.  I've been a juror on one

11:04   7   occasion.

11:04   8              MR. QUINN:  And did you enjoy that experience?

11:04   9              PROSPECTIVE JUROR:  It was a very interesting

11:04  10   experience.

11:04  11              MR. QUINN:  What do you think of the jury system?

11:04  12              PROSPECTIVE JUROR:  I only have really that to go

11:04  13   on.  And from what I can hear, I think the jury system

11:04  14   works.  I certainly, again based on experience, wouldn't say

11:05  15   its perfect, but my sense is that it works well.

11:05  16              MR. QUINN:  You indicated that you -- on your

11:05  17   questionnaire, you had some friends in college.  Are those

11:05  18   people that you stay in touch with?

11:05  19              PROSPECTIVE JUROR:  Not very often.  You know,

11:05  20   it'll be like an e-mail maybe once a year, if that, maybe

11:05  21   Christmas card.  That's the extent of it.

11:05  22              MR. QUINN:  And you also recall that you had read

11:05  23   something about this case?

11:05  24              PROSPECTIVE JUROR:  Yeah.  I can't remember how

11:05  25   long ago.  It seems like it is a couple years ago.  It was

Case 2:04-cv-09049-DOC-RNB  Document 9700  Filed 01/27/11  Page 36 of 81  Page ID #:289637
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

36

| | | |
|---|---|---|
| 11:05 | 1 | just a headline.  It was during the period of time when all |
| 11:05 | 2 | you could hear about was Bratz in the news, and I just |
| 11:05 | 3 | caught this headline about -- |
| 11:05 | 4 | MR. QUINN:  Well, without getting into the |
| 11:05 | 5 | details -- |
| 11:05 | 6 | PROSPECTIVE JUROR:  Yeah. |
| 11:05 | 7 | MR. QUINN:  Do you actually recall what this |
| 11:05 | 8 | headline was and what was reported, substantively? |
| 11:05 | 9 | PROSPECTIVE JUROR:  Just that the two parties were |
| 11:05 | 10 | bringing some legal cases against each other. |
| 11:06 | 11 | MR. QUINN:  All right. |
| 11:06 | 12 | PROSPECTIVE JUROR:  Beyond that, I didn't remember |
| 11:06 | 13 | reading any details.  If I did, I don't remember any |
| 11:06 | 14 | details -- |
| 11:06 | 15 | MR. QUINN:  In terms of -- |
| 11:06 | 16 | PROSPECTIVE JUROR:  -- of the situation. |
| 11:06 | 17 | MR. QUINN:  In terms of whether -- you know, how |
| 11:06 | 18 | that process went, or what it was, and what -- |
| 11:06 | 19 | PROSPECTIVE JUROR:  Well, the only thing I do |
| 11:06 | 20 | remember, in general, I believe, the article stated |
| 11:06 | 21 | something along the lines of Mattel -- |
| 11:06 | 22 | MR. QUINN:  Wait. |
| 11:06 | 23 | PROSPECTIVE JUROR:  Okay. |
| 11:06 | 24 | MR. QUINN:  Rather than tell everybody -- |
| 11:06 | 25 | PROSPECTIVE JUROR:  Yeah, okay -- that there was |

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

37

| | | |
|---|---|---|
| 11:06 | 1 | some -- |
| 11:06 | 2 | MR. QUINN:  Your Honor, I'm wondering whether it |
| 11:06 | 3 | would be appropriate to speak with Mr. Bay outside the |
| 11:06 | 4 | presence of the others? |
| 11:06 | 5 | THE COURT:  It might be. |
| 11:06 | 6 | Counsel? |
| 11:06 | 7 | MS. KELLER:  Yes, Your Honor. |
| 11:06 | 8 | THE COURT:  All right.  Mr. Bay, if you will come |
| 11:06 | 9 | with us for one moment. |
| 11:06 | 10 | PROSPECTIVE JUROR:  All right. |
| 11:07 | 11 | *(Sidebar proceedings reported as follows:)* |
| 11:07 | 12 | THE COURT:  We're at sidebar. |
| 11:07 | 13 | And, Mr. Bay, what did you hear about the case? |
| 11:07 | 14 | PROSPECTIVE JUROR:  So, I generally remember the |
| 11:07 | 15 | headline being that someone had left Mattel, went over -- I |
| 11:07 | 16 | didn't remember it was MGA, until I listened to some of the |
| 11:07 | 17 | information that's been presented -- but someone went from |
| 11:07 | 18 | Mattel to MGA and apparently brought the idea of Bratz to |
| 11:07 | 19 | MGA.  And that's kind of the extent of what I remember |
| 11:07 | 20 | reading.  It was mostly headlines, looking at the first |
| 11:08 | 21 | paragraph. |
| 11:08 | 22 | THE COURT:  Do you know anything else about the |
| 11:08 | 23 | case? |
| 11:08 | 24 | PROSPECTIVE JUROR:  No, I don't. |
| 11:08 | 25 | THE COURT:  Okay.  Counsel, do you have any |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 38 of 81   Page ID #:289639
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

38

| | | |
|---|---|---|
| 11:08 | 1 | questions? |
| 11:08 | 2 | MR. QUINN:  Not on this subject, Your Honor. |
| 11:08 | 3 | THE COURT:  Counsel? |
| 11:08 | 4 | MS. KELLER:  No, not on this subject. |
| 11:08 | 5 | MR. OVERLAND:  No questions.  I don't have |
| 11:08 | 6 | questions either. |
| 11:09 | 7 | *(End of sidebar proceedings.)* |
| 11:08 | 8 | *(In open court, in the presence of the* |
| 11:10 | 9 | *venire.)* |
| 11:10 | 10 | THE COURT:  All right.  Thank you. |
| 11:10 | 11 | Counsel.  Ms. Keller. |
| 11:11 | 12 | MR. QUINN:  I wasn't quite done, Your Honor. |
| 11:11 | 13 | THE COURT:  Thank you. |
| 11:11 | 14 | Ms. Keller. |
| 11:11 | 15 | We've used over 45 minutes -- almost 40 minutes |
| 11:11 | 16 | now.  That's plenty of time.  Thank you, Mr. Quinn. |
| 11:11 | 17 | Ms. Keller. |
| 11:11 | 18 | MS. KELLER:  Good morning. |
| 11:11 | 19 | THE COURT:  Well, let me make sure. |
| 11:11 | 20 | Mr. Quinn has one final question.  Mr. Quinn, I |
| 11:11 | 21 | want to be courteous, but -- |
| 11:11 | 22 | MR. QUINN:  Thank you. |
| 11:11 | 23 | THE COURT:  -- your time's running out now. |
| 11:11 | 24 | MR. QUINN:  Thank you, Your Honor. |
| 11:11 | 25 | THE COURT:  Couple questions, but let's finish |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 39 of 81   Page ID #:289640
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

39

11:11   1   this off now.

11:11   2          MR. QUINN:  Thank you, Your Honor.

11:11   3          Ms. Vega, if I could just go back to the issue of

11:11   4   Spanish speakers.  As I understand it, your issue would be

11:11   5   with someone of Hispanic background who came to this

11:11   6   country, lived here, and didn't learn English?

11:11   7          PROSPECTIVE JUROR:  That's correct.

11:11   8          MR. QUINN:  So if there is a Hispanic person who's

11:11   9   come to this country and speaks English, or if there's a

11:11   10  Hispanic person who lives in Mexico and speaks Spanish but

11:12   11  still lives in Mexico, you don't have a problem with either

11:12   12  of those situations?

11:12   13         PROSPECTIVE JUROR:  That would be correct.

11:12   14         MR. QUINN:  And then my final question to Mr. Bay

11:12   15  relates to damages.

11:12   16         Do you have any hesitation in your mind about the

11:12   17  kinds of numbers that both sides have been talking about

11:12   18  here if the evidence supports an award of that magnitude?

11:12   19         PROSPECTIVE JUROR:  No, I don't.

11:12   20         MR. QUINN:  Thank you, Your Honor.

11:12   21         THE COURT:  Thank you, Mr. Quinn.

11:12   22         Ms. Keller.

11:12   23         MS. KELLER:  Thank you, Your Honor.

11:12   24         Well, I think I'm going to start at this end

11:12   25  again.  Mr. Bay?

| | | |
|---|---|---|
| 11:12 | 1 | Mr. Bay?  It should be Dr. Bay?  Ph.D? |
| 11:12 | 2 | PROSPECTIVE JUROR:  "Mr. Bay" is fine. |
| 11:12 | 3 | MS. KELLER:  Wow!  Another Ph.D in engineering. |
| 11:12 | 4 | THE COURT:  Counsel, we're going to get down to |
| 11:12 | 5 | questions now. |
| 11:12 | 6 | MS. KELLER:  Okay. |
| 11:12 | 7 | THE COURT:  By 12:00 o'clock we're going to have |
| 11:12 | 8 | these people selected, or not. |
| 11:12 | 9 | MS. KELLER:  Okay. |
| 11:12 | 10 | THE COURT:  Questions. |
| 11:12 | 11 | MS. KELLER:  You had answered with respect to a |
| 11:12 | 12 | question on the questionnaire about being aware of illegal |
| 11:13 | 13 | behavior or wrongdoing by an employee or coworker.  And you |
| 11:13 | 14 | said, as a manager, you had to terminate an employee for |
| 11:13 | 15 | serious wrongdoing. |
| 11:13 | 16 | Can you tell us what that was about? |
| 11:13 | 17 | PROSPECTIVE JUROR:  So, in some cases, it was |
| 11:13 | 18 | within my department.  One of my managers basically led the |
| 11:13 | 19 | termination process.  In one case, it was related to |
| 11:13 | 20 | inappropriate and excessive Internet usage, and we had to |
| 11:13 | 21 | terminate an associate based on that. |
| 11:13 | 22 | In another case, it was related to, basically, a |
| 11:13 | 23 | performance issue that did not get better.  So we issued a |
| 11:13 | 24 | performance warning, gave the associate a period of time to |
| 11:13 | 25 | get their performance to where it needed to be, and |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 41 of 81   Page ID #:289642
CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

41

| | | |
|---|---|---|
| 11:13 | 1 | terminated that employee when the performance wasn't there. |
| 11:13 | 2 | So I guess the example more related –– inappropriate |
| 11:14 | 3 | behavior might be more to the question than the performance |
| 11:14 | 4 | termination. |
| 11:14 | 5 | But those are two cases that come to mind. |
| 11:14 | 6 | MS. KELLER:  Did you ever have to deal with any |
| 11:14 | 7 | employee with respect to confidential or proprietary |
| 11:14 | 8 | information? |
| 11:14 | 9 | PROSPECTIVE JUROR:  No.  No, not with respect to |
| 11:14 | 10 | that. |
| 11:14 | 11 | MS. KELLER:  Okay.  Thank you. |
| 11:14 | 12 | And then I'm going to turn to Ms. Vega. |
| 11:14 | 13 | Ms. Vega, good morning. |
| 11:14 | 14 | PROSPECTIVE JUROR:  Good morning. |
| 11:14 | 15 | MS. KELLER:  I want to reiterate what Mr. Quinn |
| 11:14 | 16 | said.  There are no bad answers here.  And we really |
| 11:14 | 17 | appreciate your honesty. |
| 11:14 | 18 | One of the things that I know you said was, "My |
| 11:14 | 19 | passion is American Girl dolls." |
| 11:14 | 20 | PROSPECTIVE JUROR:  Yes. |
| 11:14 | 21 | MS. KELLER:  And you're now 50.  And you collect |
| 11:14 | 22 | those? |
| 11:14 | 23 | PROSPECTIVE JUROR:  I have seven. |
| 11:14 | 24 | MS. KELLER:  Seven.  Okay. |
| 11:14 | 25 | Are they expensive? |

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

42

| | | |
|---|---|---|
| 11:14 | 1 | PROSPECTIVE JUROR:  Compared to Barbies, yes. |
| 11:14 | 2 | MS. KELLER:  Okay.  And, obviously, you have a |
| 11:14 | 3 | very favorable impression of the Mattel Corporation, right? |
| 11:14 | 4 | PROSPECTIVE JUROR:  Yes. |
| 11:14 | 5 | MS. KELLER:  And you had said -- in addition to |
| 11:14 | 6 | being named after Barbie, I think you said, at the |
| 11:15 | 7 | beginning, "so that's not a good sign."  I think you meant |
| 11:15 | 8 | not a good sign for MGA? |
| 11:15 | 9 | PROSPECTIVE JUROR:  Sorry, yes. |
| 11:15 | 10 | MS. KELLER:  Yeah, no, I understand.  Like I said, |
| 11:15 | 11 | we really appreciate your honesty. |
| 11:15 | 12 | And another thing I remember you saying was that |
| 11:15 | 13 | you couldn't help but leaning a little bit toward Mattel. |
| 11:15 | 14 | True? |
| 11:15 | 15 | PROSPECTIVE JUROR:  Yes. |
| 11:15 | 16 | MS. KELLER:  Okay.  Now, one of the things |
| 11:15 | 17 | Mr. Quinn asked you about was being fair and impartial.  And |
| 11:15 | 18 | we all like to think we can be fair and impartial in just |
| 11:15 | 19 | about anything.  But we all have our biases, too.  Would you |
| 11:15 | 20 | agree with that? |
| 11:15 | 21 | PROSPECTIVE JUROR:  Yes. |
| 11:15 | 22 | MS. KELLER:  I mean, do you know any -- is anybody |
| 11:15 | 23 | in your family a sports fan? |
| 11:15 | 24 | PROSPECTIVE JUROR:  Just me. |
| 11:15 | 25 | MS. KELLER:  Just you.  Who's your big team? |

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

43

| | | |
|---|---|---|
| 11:15 | 1 | PROSPECTIVE JUROR:  Los Angeles Dodgers. |
| 11:15 | 2 | MS. KELLER:  Okay.  Do you ever find yourself, |
| 11:15 | 3 | when the Dodgers are playing another team, like, oh, say the |
| 11:15 | 4 | Giants, and there's a close call, say at second base, and |
| 11:15 | 5 | everybody's getting all upset -- I mean, I find -- I'm an |
| 11:15 | 6 | Angels fan.  Sorry. |
| 11:16 | 7 | PROSPECTIVE JUROR:  I like the Angels. |
| 11:16 | 8 | MS. KELLER:  But I find that -- you know, I find |
| 11:16 | 9 | myself saying, "Oh, that was a bad call," you know, if it's |
| 11:16 | 10 | against the Angels, if it's a close call.  I just can't help |
| 11:16 | 11 | myself. |
| 11:16 | 12 | PROSPECTIVE JUROR:  We have the luxury of instant |
| 11:16 | 13 | replay on television, don't we? |
| 11:16 | 14 | MS. KELLER:  Even then, I find myself favoring the |
| 11:16 | 15 | Angels.  And my son is an "SC" kid and he hates UCLA |
| 11:16 | 16 | sometimes.  And same thing:  Close play, he kind of tends to |
| 11:16 | 17 | think USC should get the call. |
| 11:16 | 18 | You can see where I'm going? |
| 11:16 | 19 | PROSPECTIVE JUROR:  Bias.  Sure. |
| 11:16 | 20 | MS. KELLER:  Yeah.  So the good feel that you have |
| 11:16 | 21 | for Mattel, I'm gathering, that if you were sitting over on |
| 11:16 | 22 | our side of the table, on the MGA side of the table, you |
| 11:16 | 23 | know, you would be looking up saying, "Gosh, I wonder if I'm |
| 11:16 | 24 | gonna get, you know, an even-Steven break?"  Right? |
| 11:16 | 25 | PROSPECTIVE JUROR:  I would. |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 44 of 81   Page ID #:289645
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

44

| | | |
|---|---|---|
| 11:16 | 1 | MS. KELLER:  Okay.  And I know when Mr. Quinn |
| 11:16 | 2 | asked you whether you could set aside your favoritism toward |
| 11:17 | 3 | Mattel, you hesitated for a while.  And it would be hard for |
| 11:17 | 4 | you to do, wouldn't it? |
| 11:17 | 5 | PROSPECTIVE JUROR:  Yes. |
| 11:17 | 6 | MS. KELLER:  Okay.  Well, we -- like I said, we |
| 11:17 | 7 | really appreciate your honesty here. |
| 11:17 | 8 | And the other question that Mr. Quinn asked you |
| 11:17 | 9 | about, the immigrants speaking Spanish -- you know, we are |
| 11:17 | 10 | anticipating some witnesses in this case who do live in this |
| 11:17 | 11 | country but don't speak English.  And that sounds like that |
| 11:17 | 12 | would be -- that's the sort of thing that just gets you to: |
| 11:17 | 13 | People living here and not learning the language? |
| 11:17 | 14 | PROSPECTIVE JUROR:  You could say that. |
| 11:17 | 15 | MS. KELLER:  And it's obviously a really strongly |
| 11:17 | 16 | held feeling that you've got. |
| 11:17 | 17 | PROSPECTIVE JUROR:  I live with it every day. |
| 11:17 | 18 | MS. KELLER:  Yeah.  And a lot of people have the |
| 11:17 | 19 | same reaction that you have.  So that would be a tough one |
| 11:17 | 20 | for you to -- you would have some negative feelings for |
| 11:17 | 21 | people who've lived in this country for a while and didn't |
| 11:18 | 22 | speak the language and still spoke Spanish, true? |
| 11:18 | 23 | PROSPECTIVE JUROR:  True. |
| 11:18 | 24 | MS. KELLER:  Okay.  I'm not gonna put you on the |
| 11:18 | 25 | hot seat anymore.  Is that okay? |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 45 of 81   Page ID #:289646
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

45

| 11:18 | 1 | Mr. Reckers, you work at the Orange County Crime |
| 11:18 | 2 | Lab? |
| 11:18 | 3 | PROSPECTIVE JUROR:  Yes. |
| 11:18 | 4 | MS. KELLER:  Orange County Sheriff's Crime -- |
| 11:18 | 5 | PROSPECTIVE JUROR:  Actually, we just had to |
| 11:18 | 6 | change our name about a year ago 'cause the Board of |
| 11:18 | 7 | Supervisors had a ruling to kinda pull us away from the |
| 11:18 | 8 | Sheriff's Department.  So, officially, this week, we are |
| 11:18 | 9 | called the Orange County Crime Lab. |
| 11:18 | 10 | MS. KELLER:  And how many times do you think |
| 11:18 | 11 | you've testified as a forensic scientist? |
| 11:18 | 12 | PROSPECTIVE JUROR:  If you count DMV hearings, |
| 11:18 | 13 | it's about 400 times.  In criminal cases, usually with a |
| 11:18 | 14 | jury, somewhere around 325 to 350.  Throw in the DMV |
| 11:19 | 15 | hearings, and you're looking around 400 times. |
| 11:19 | 16 | MS. KELLER:  Okay.  And you've had training on how |
| 11:19 | 17 | to be a witness? |
| 11:19 | 18 | PROSPECTIVE JUROR:  I have, yes. |
| 11:19 | 19 | MS. KELLER:  Okay.  And you said you started |
| 11:19 | 20 | out -- at least the assignment previous to this one was |
| 11:19 | 21 | blood alcohol analysis? |
| 11:19 | 22 | PROSPECTIVE JUROR:  Yes. |
| 11:19 | 23 | MS. KELLER:  Toxilizer stuff, that kind of thing? |
| 11:19 | 24 | PROSPECTIVE JUROR:  Yeah.  Mainly with the breath |
| 11:19 | 25 | testing equipment.  I started out with blood alcohol, worked |

11:19    1    there six to nine months, and was quickly transferred over

11:19    2    to the breath alcohol section when an opening came up.

11:19    3            MS. KELLER:  And did you train there with Marty

11:19    4    Green or any of those people?

11:19    5            PROSPECTIVE JUROR:  I did, yes.

11:19    6            MS. KELLER:  Would you agree that the crime lab

11:19    7    prides itself on being really one of the best crime labs in

11:19    8    the country?

11:19    9            PROSPECTIVE JUROR:  Yes.

11:19   10            MS. KELLER:  And you pride yourself on being very

11:19   11    independent?

11:19   12            PROSPECTIVE JUROR:  Yes.

11:19   13            MS. KELLER:  Even though you get called by the

11:19   14    prosecution, if the defense attorney called you, you'd tell

11:19   15    'em exactly the same thing, right?

11:19   16            PROSPECTIVE JUROR:  Yes, I would.

11:19   17            MS. KELLER:  Okay.  And that's kinda drummed into

11:19   18    you guys, isn't it?

11:19   19            PROSPECTIVE JUROR:  Yes, it is.

11:19   20            MS. KELLER:  Well, in this case, the experts for

11:19   21    each side are gonna be paid by that side, hired by that

11:19   22    side, and are going to come in and testify for that side.

11:20   23    So it's a very different thing than you're used to.

11:20   24            And one of the questions Mr. Quinn asked you was

11:20   25    whether you'd find yourself kind of measuring -- he didn't

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 47 of 81   Page ID #:289648
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

47

| | | |
|---|---|---|
| 11:20 | 1 | use the word "measuring" -- but, you know, measuring that |
| 11:20 | 2 | expert's performance. |
| 11:20 | 3 | Would that be hard to avoid, do you think? |
| 11:20 | 4 | PROSPECTIVE JUROR:  I don't think its hard.  I |
| 11:20 | 5 | think it's human instinct to look at something and maybe |
| 11:20 | 6 | think, "Well, I might have done it another way."  But, like |
| 11:20 | 7 | you said, being impartial and fair is absolutely drilled |
| 11:20 | 8 | into us.  And it's something I'm capable of doing. |
| 11:20 | 9 | MS. KELLER:  Okay.  Thank you. |
| 11:20 | 10 | And, Ms. Nemetz -- oh, I had one other question. |
| 11:20 | 11 | I think you knew a little bit about -- I'm sorry. |
| 11:20 | 12 | PROSPECTIVE JUROR:  That's all right. |
| 11:20 | 13 | MS. KELLER:  I think you knew a little bit about |
| 11:20 | 14 | this case, as I recall. |
| 11:21 | 15 | PROSPECTIVE JUROR:  Yeah.  I recall something in |
| 11:21 | 16 | the media from a couple of years ago. |
| 11:21 | 17 | MS. KELLER:  Okay.  And do you recall anything -- |
| 11:21 | 18 | without telling us anything more specific than that, or is |
| 11:21 | 19 | it just you remember something and you can't say what it |
| 11:21 | 20 | was? |
| 11:21 | 21 | PROSPECTIVE JUROR:  I remember, I think, which |
| 11:21 | 22 | side had a dispute with the other, how it was kind of |
| 11:21 | 23 | initiated, if you will, without getting into detail. |
| 11:21 | 24 | MS. KELLER:  Okay. |
| 11:21 | 25 | PROSPECTIVE JUROR:  And I don't know much more |

| | | |
|---|---|---|
| 11:21 | 1 | detail than that, but I do recall that story from a couple |
| 11:21 | 2 | years ago. |
| 11:21 | 3 | MS. KELLER:  Your Honor, would the Court entertain |
| 11:21 | 4 | talking to Mr. Recker? |
| 11:21 | 5 | THE COURT:  Certainly.  Let's do that privately. |
| 11:22 | 6 | *(Sidebar proceeding reported as follows:)* |
| 11:22 | 7 | THE COURT:  We're at sidebar. |
| 11:22 | 8 | What do you recall about the case? |
| 11:22 | 9 | PROSPECTIVE JUROR:  I recall -- I think it was a |
| 11:22 | 10 | Channel 5 News story.  And I think it was the Sam Ruben that |
| 11:22 | 11 | we talked about -- if that's the same person.  And I think |
| 11:22 | 12 | it was from a couple years ago saying that Mattel had had |
| 11:22 | 13 | issue with Bratz dolls being, like, copied or something. |
| 11:22 | 14 | That's all I recall from it. |
| 11:22 | 15 | THE COURT:  Do you recall anything else about the |
| 11:22 | 16 | case at this time? |
| 11:22 | 17 | PROSPECTIVE JUROR:  I don't remember specifics |
| 11:22 | 18 | besides that. |
| 11:22 | 19 | THE COURT:  Thank you very much. |
| 11:22 | 20 | Counsel? |
| 11:22 | 21 | MR. QUINN:  Nothing. |
| 11:22 | 22 | MS. KELLER:  You don't remember anything about any |
| 11:22 | 23 | verdict or any money or anything like that? |
| 11:22 | 24 | PROSPECTIVE JUROR:  I really don't. |
| 11:22 | 25 | And about the same time I may have heard something |

| | | |
|---|---|---|
| 11:22 | 1 | on the radio, but that name and that story -- started |
| 11:22 | 2 | thinking maybe I did see something about that. |
| 11:22 | 3 | THE COURT:  Mr. Overland? |
| 11:22 | 4 | MR. OVERLAND:  No. |
| 11:22 | 5 | THE COURT:  Thank you very much.  If you would go |
| 11:22 | 6 | back, sir. |
| 11:22 | 7 | *(End of sidebar proceedings.)* |
| 11:23 | 8 | *(In open court in the presence of the* |
| 11:23 | 9 | *venire.)* |
| 11:23 | 10 | THE COURT:  All right. |
| 11:23 | 11 | Counsel. |
| 11:23 | 12 | MS. KELLER:  Okay.  Now, on to Ms. Nemetz. |
| 11:23 | 13 | Ms. Nemetz, when you first heard what this case |
| 11:23 | 14 | was all about, what was your reaction when you were sitting |
| 11:23 | 15 | out in the audience and you heard all the stuff that the |
| 11:23 | 16 | attorneys were saying and the jurors were saying? |
| 11:23 | 17 | PROSPECTIVE JUROR:  Um, again, that it was more |
| 11:23 | 18 | on -- it struck me that it wasn't just about the dolls, |
| 11:23 | 19 | other than it was the principle behind the idea that |
| 11:23 | 20 | somebody might have taken an idea that belonged to someone |
| 11:24 | 21 | else.  That's what struck me. |
| 11:24 | 22 | MS. KELLER:  Okay.  And was it something -- did |
| 11:24 | 23 | the case sound interesting at all to you? |
| 11:24 | 24 | PROSPECTIVE JUROR:  Yes. |
| 11:24 | 25 | MS. KELLER:  Okay.  And from what -- was it |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 50 of 81   Page ID #:289651
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

50

11:24  1    anything beyond that that interested you?

11:24  2            PROSPECTIVE JUROR:  Um, well, you know, they're a

11:24  3    major corporation so that's always an interest, you know.

11:24  4            MS. KELLER:  Uh-huh, all right.  I had asked

11:24  5    before about the fact that Mattel is kind of a household

11:24  6    word and MGA is not.

11:24  7            What's your reaction to that?

11:24  8            PROSPECTIVE JUROR:  Well, in regards to the dolls,

11:24  9    I had a son, so I didn't really buy any -- I bought dolls

11:24  10   for nieces.  And I had one niece that absolutely loved

11:24  11   Barbie, and one niece that absolutely loved Bratz.  So it

11:24  12   was like -- so I'm very familiar with both.

11:24  13           MS. KELLER:  Do you have any particular reaction

11:24  14   to either doll?

11:24  15           PROSPECTIVE JUROR:  No, huh-uh.

11:24  16           MS. KELLER:  Okay.  Thank you very much.

11:24  17           And, Mr. Jimenez, you were asked on the

11:25  18   questionnaire, "Is it wrong for an employee to use

11:25  19   information or ideas at a new job, learn -- used or learned

11:25  20   at a previous job?"  And you said, "No, if they are not part

11:25  21   of the above confidentiality."

11:25  22           Okay.  Could you explain what you meant by that a

11:25  23   little bit?

11:25  24           PROSPECTIVE JUROR:  Probably what I meant is that,

11:25  25   in UCI, we have research studies.  As an interpreter, we

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 51 of 81   Page ID #:289652
CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

51

| | | |
|---|---|---|
| 11:25 | 1 | have to translate all the legal documents for consents for |
| 11:25 | 2 | all the research going on.  And I think that my mind was |
| 11:25 | 3 | going in that way, because the knowledge I have in that |
| 11:25 | 4 | particular situation, not because I have any other |
| 11:25 | 5 | knowledge.  But I know that it's a legal concern with the |
| 11:26 | 6 | research status and with what comes out of this. |
| 11:26 | 7 | And when we get employed by UCI, we have to sign |
| 11:26 | 8 | an agreement that any ideas or any inventions or studies or |
| 11:26 | 9 | research that comes out of any employee in UCI belongs to |
| 11:26 | 10 | UCI.  So maybe that's what I had in mind there. |
| 11:26 | 11 | MS. KELLER:  Okay.  So you -- if you translated a |
| 11:26 | 12 | study, a research study, that was done there, you wouldn't |
| 11:26 | 13 | feel it would be right to go somewhere else and tell them |
| 11:26 | 14 | all about the results of that study, obviously, right? |
| 11:26 | 15 | PROSPECTIVE JUROR:  Well, they eventually become |
| 11:26 | 16 | public.  They -- the formulas, and what it is -- and then |
| 11:26 | 17 | they become generic medications after certain time.  But |
| 11:26 | 18 | everything is stipulated according to the law. |
| 11:26 | 19 | MS. KELLER:  So up until that time, it's kept |
| 11:27 | 20 | private? |
| 11:27 | 21 | PROSPECTIVE JUROR:  Until that time, yes. |
| 11:27 | 22 | MS. KELLER:  Okay.  Is there anything that you |
| 11:27 | 23 | think that my -- I or my client would want to know about you |
| 11:27 | 24 | that hasn't already been discussed? |
| 11:27 | 25 | PROSPECTIVE JUROR:  I don't think so.  Just that I |

| | | |
|---|---|---|
| 11:27 | 1 | want to repeat that I don't think it's right or wrong here, |
| 11:27 | 2 | or that the truth is -- or we gonna talk about it, but what |
| 11:27 | 3 | is within the law.  And I learned with my DUI situation that |
| 11:27 | 4 | it was about the law and what it was stipulated, and |
| 11:27 | 5 | everything else is everything else. |
| 11:27 | 6 | MS. KELLER:  All right.  Thank you very much. |
| 11:27 | 7 | PROSPECTIVE JUROR:  You're welcome. |
| 11:27 | 8 | THE COURT:  Mr. Overland. |
| 11:27 | 9 | MR. OVERLAND:  Thank you. |
| 11:28 | 10 | Good morning, all.  I'm going to try and make this |
| 11:28 | 11 | quick. |
| 11:28 | 12 | First, Mr. Jimenez, you said a couple of times |
| 11:28 | 13 | that it's all about the law.  Actually, it's about the law |
| 11:28 | 14 | and the facts also.  And although the Judge tells you what |
| 11:28 | 15 | the law is, if you're a juror, you determine what the facts |
| 11:28 | 16 | are. |
| 11:28 | 17 | And you understand that, don't you? |
| 11:28 | 18 | PROSPECTIVE JUROR:  Yes, I do. |
| 11:28 | 19 | MR. OVERLAND:  Okay.  So whatever the facts you |
| 11:28 | 20 | find, you don't determine whether, under your own standard, |
| 11:28 | 21 | something is right or wrong, but you listen to what the law |
| 11:28 | 22 | is, and then you arrive at a verdict after talking it over |
| 11:28 | 23 | with everybody else? |
| 11:28 | 24 | PROSPECTIVE JUROR:  That is correct. |
| 11:28 | 25 | MR. OVERLAND:  You don't have any problem with |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 53 of 81   Page ID #:289654
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

53

| | | |
|---|---|---|
| 11:28 | 1 | that? |
| 11:28 | 2 | PROSPECTIVE JUROR:  Not at all. |
| 11:28 | 3 | MR. OVERLAND:  Now, in your questionnaire you said |
| 11:28 | 4 | something about -- that occasionally you assumed a position |
| 11:29 | 5 | of leadership.  Can you tell me a little bit more about |
| 11:29 | 6 | that. |
| 11:29 | 7 | PROSPECTIVE JUROR:  I used to be a manager for a |
| 11:29 | 8 | drinking and driving program with 500 clients and 30 staff |
| 11:29 | 9 | members.  And, as such, then, I have to be a leader for -- |
| 11:29 | 10 | for that amount of people, and dealing with the courts and |
| 11:29 | 11 | everything that has to do with DUI's. |
| 11:29 | 12 | And within the job that I do right now, in many |
| 11:29 | 13 | situations you have to be the leader to make things work, |
| 11:29 | 14 | and get your ideas working for the good of the department |
| 11:29 | 15 | that you work for. |
| 11:29 | 16 | MR. OVERLAND:  When you say "be the leader," you |
| 11:29 | 17 | mean make decisions that everybody has to follow? |
| 11:29 | 18 | PROSPECTIVE JUROR:  Up to a certain point.  Right |
| 11:29 | 19 | now I'm not a manager so I don't -- I don't have the power. |
| 11:30 | 20 | But when I used to be a manager before, yes. |
| 11:30 | 21 | MR. OVERLAND:  All right.  Thank you, sir. |
| 11:30 | 22 | Could you pass that to Ms. Nemetz, please. |
| 11:30 | 23 | Ms. Nemetz, I'm gonna ask you do you remember |
| 11:30 | 24 | anything about what happened yesterday? |
| 11:30 | 25 | PROSPECTIVE JUROR:  Yes, yes. |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 54 of 81   Page ID #:289655
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

54

11:30   1          MR. OVERLAND:  You do.  Okay.  I'm going to ask

11:30   2   you those two questions I asked of the others.

11:30   3          Tell me why you think you would be a good juror in

11:30   4   this case, and tell me why you think you may be a bad juror

11:30   5   in this case.

11:30   6          PROSPECTIVE JUROR:  The good is I'd like to hear

11:30   7   both sides of the story before I make a decision.  I'm used

11:31   8   to that.  I believe, to be -- I feel that I'm a fair person.

11:31   9          And the downside to doing this is that I'm

11:31   10  committed to giving you my time and sacrificing money to be

11:31   11  here.  And at the end of the day, if things go like the

11:31   12  perfect world should be, I may not get a say.  I may be an

11:31   13  alternate that doesn't get a say, although I come, I commit,

11:31   14  and I don't get a say.  That would be the downside.

11:31   15         MR. OVERLAND:  So that would be bad for you.  But

11:31   16  if you are selected, that wouldn't make you a bad juror?

11:31   17         PROSPECTIVE JUROR:  No.

11:31   18         MR. OVERLAND:  Okay.  Do you want to pass it on.

11:31   19         Okay.  Mr. Reckers, about how many times have you

11:32   20  formed an opinion as an expert?

11:32   21         PROSPECTIVE JUROR:  Oh, in excess of the 400 times

11:32   22  testifying.  Of those, of course, I came to some kind of an

11:32   23  opinion.  Part of that was why I was there testifying.

11:32   24         There's been other times where I would talk to a

11:32   25  defense attorney or District Attorney or city attorney over

11:32   1   the telephone.  And, of course, even in cases without

11:32   2   regards to alcohol -- say, we analyzed a drug or a

11:32   3   firearm -- you still come to an opinion and write a report,

11:32   4   whether or not you go to Court.  So it's going to be into

11:32   5   the thousands of times.

11:32   6        MR. OVERLAND:  And all of those thousands of times

11:32   7   that you formed an opinion, have you ever been wrong?

11:32   8        PROSPECTIVE JUROR:  Not that I recall.  With

11:32   9   alcohol cases, depending on -- oftentimes we're asked our

11:32   10  opinion on whether or not we felt something was at or above

11:33   11  a point 08 at time of driving.  No one's ever gonna know the

11:33   12  answer to that 'cause there was no test done at time of

11:33   13  driving.  So that opinion could change based on the facts of

11:33   14  the cases changing.  And even during cross-examination, if

11:33   15  facts of a certain case were changed, my opinion might

11:33   16  change.

11:33   17        I'm not aware of missing any proficiencies that I

11:33   18  can think of, or being wrong on the stand, other than maybe

11:33   19  doing a miscalculation at one time, recalling it, and then

11:33   20  telling them during testimony, "I think I did that testimony

11:33   21  from ten minutes ago wrong.  Let's go back and correct it."

11:33   22  I can't recall when I've been wrong, or at least proven

11:33   23  wrong.

11:33   24        MR. OVERLAND:  Have you ever testified against

11:33   25  other experts where your opinion was that they were wrong?

DEBBIE GALE, U.S. COURT REPORTER

11:33    1          PROSPECTIVE JUROR:  Yeah.  There's been times

11:33    2     where I've been called back on rebuttal -- normally, from

11:33    3     the prosecution side to rebut some testimony that an expert

11:33    4     may have had.

11:33    5          MR. OVERLAND:  And then you gave your reasons as

11:34    6     to why that particular expert's opinion was, in your

11:34    7     opinion, wrong?

11:34    8          PROSPECTIVE JUROR:  Yes.

11:34    9          MR. OVERLAND:  All right.  Thank you.

11:34   10          PROSPECTIVE JUROR:  You're welcome.

11:34   11          MR. OVERLAND:  Ms. Vega, there are two issues of

11:34   12     concern here.  The first one is with respect to what you

11:34   13     call "favoritism" or "bias" towards Mattel.  And I think

11:34   14     Mr. Quinn asked you whether you would make an effort to

11:34   15     overcome that.  And you said you think you could do that.

11:34   16          Now, am I being accurate there?

11:34   17          PROSPECTIVE JUROR:  Yes.

11:34   18          MR. OVERLAND:  Okay.  I want to take it a step

11:34   19     further and ask you not just whether you can make an effort,

11:34   20     but whether you can assure us that that effort will be

11:34   21     successful; that is, that you will overcome that favoritism

11:35   22     or bias that you have for Mattel?

11:35   23          PROSPECTIVE JUROR:  That would be impossible to

11:35   24     know.

11:35   25          MR. OVERLAND:  So you can't give that assurance?

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 57 of 81   Page ID #:289658
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

57

11:35   1          PROSPECTIVE JUROR:  No.

11:35   2          MR. OVERLAND:  "Yes," you cannot give that

11:35   3   assurance, correct?

11:35   4          PROSPECTIVE JUROR:  Yes.

11:35   5          MR. OVERLAND:  Okay.  And then the second one is

11:35   6   with respect to witnesses that may be called that are

11:35   7   residents of the United States but may need an interpreter

11:35   8   to speak because they do not speak English, and they would

11:35   9   be Latin individuals -- and, again stop me if I'm wrong.  I

11:35  10   don't want to misstate what you said -- with respect to

11:35  11   those individuals, if they were called, you would not be

11:35  12   able to believe what they say; is that correct?

11:35  13          PROSPECTIVE JUROR:  It's not a matter of believing

11:35  14   what they say.

11:35  15          MR. OVERLAND:  What is it?

11:35  16          PROSPECTIVE JUROR:  Just a bias.

11:35  17          MR. OVERLAND:  And how would that bias affect what

11:36  18   they say?

11:36  19          PROSPECTIVE JUROR:  That's a good question.

11:36  20          MR. OVERLAND:  I guess that's why I asked it.

11:36  21          PROSPECTIVE JUROR:  I don't think it's a matter of

11:36  22   this particular case.  It's not a matter of what they're

11:36  23   saying.  It's just a bias on that kind of individual.

11:36  24   The -- what they're saying, if it's interpreted to me by --

11:36  25   in English, then I would just listen to the individual with

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 58 of 81   Page ID #:289659
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

58

| | | |
|---|---|---|
| 11:36 | 1 | the English, and -- but I was -- I was kind of under the |
| 11:36 | 2 | impression that it would be a witness speaking in English |
| 11:36 | 3 | poorly. |
| 11:36 | 4 | MR. OVERLAND:  Okay.  Well, let's assume that the |
| 11:36 | 5 | witness speaks Spanish and there's an interpreter here and |
| 11:36 | 6 | the interpreter is gonna translate. |
| 11:36 | 7 | PROSPECTIVE JUROR:  Oh, that's fine. |
| 11:36 | 8 | MR. OVERLAND:  That's okay? |
| 11:36 | 9 | PROSPECTIVE JUROR:  Yeah. |
| 11:36 | 10 | MR. OVERLAND:  So I guess your bias is about |
| 11:36 | 11 | people that live here that speak English poorly; is that |
| 11:37 | 12 | accurate? |
| 11:37 | 13 | PROSPECTIVE JUROR:  Unfortunately, yes. |
| 11:37 | 14 | MR. OVERLAND:  Okay.  So if a witness were to |
| 11:37 | 15 | testify without an interpreter and speak English poorly, you |
| 11:37 | 16 | would not pay attention to what that witness was saying? |
| 11:37 | 17 | PROSPECTIVE JUROR:  Oh, I would try to pay |
| 11:37 | 18 | attention. |
| 11:37 | 19 | MR. OVERLAND:  Would you believe what that person |
| 11:37 | 20 | was saying, or would you say to -- |
| 11:37 | 21 | PROSPECTIVE JUROR:  No. |
| 11:37 | 22 | MR. OVERLAND:  -- yourself that person, he can't |
| 11:37 | 23 | speak English -- |
| 11:37 | 24 | PROSPECTIVE JUROR:  It would just be difficult to |
| 11:37 | 25 | understand.  That's all. |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 59 of 81   Page ID #:289660
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

59

11:37    1              MR. OVERLAND:  Okay.

11:37    2              PROSPECTIVE JUROR:  It's what he's saying, as long

11:37    3    as it's, you know, understood.

11:37    4              MR. OVERLAND:  Okay.  So your problem is not with

11:37    5    the person.  Your problem is with the language and

11:37    6    understanding language; is that right?

11:37    7              PROSPECTIVE JUROR:  No.  My bias is someone coming

11:37    8    into this country and not taking the time to learn our

11:37    9    language.  And if he wants to speak Spanish here, but yet he

11:37   10    lives here and he needs an interpreter -- this has nothing

11:37   11    to do with the case.  So what -- the words that are coming

11:38   12    across and being interpreted, I would have to listen to the

11:38   13    words as facts and listen to what he's saying through the

11:38   14    interpreter.  So I can't have any bias on what he's saying.

11:38   15    It would just be to the individual.

11:38   16              I'm confusing you.  I'm sorry.

11:38   17              MR. OVERLAND:  Well, yeah, a little bit.  But I'm

11:38   18    trying to be -- 'cause this is important 'cause I expect

11:38   19    there will be witnesses like that testifying here.  And if

11:38   20    they testify on behalf of one side or the other, or if they

11:38   21    testify -- if they were called by one or the other, the

11:38   22    question is are you gonna treat those like any other witness

11:38   23    in terms of determining are they remembering what they say

11:38   24    accurately?  Are they -- do they have some kind of bias?

11:38   25    Are they telling -- are you making a finding that they're

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 60 of 81   Page ID #:289661
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

60

| | | |
|---|---|---|
| 11:38 | 1 | telling the truth?  Or are you gonna say to yourself, "you |
| 11:38 | 2 | know, this person here has lived in the United States.  He |
| 11:38 | 3 | should have learned English.  And I'm not gonna give much |
| 11:39 | 4 | weight to what this person is saying"? |
| 11:39 | 5 | PROSPECTIVE JUROR:  That's -- that's very |
| 11:39 | 6 | complicated. |
| 11:39 | 7 | The -- I wish I could give an answer -- you had |
| 11:39 | 8 | asked a question that got a "yes" or "no" answer. |
| 11:39 | 9 | MR. OVERLAND:  I'm not gonna -- |
| 11:39 | 10 | PROSPECTIVE JUROR:  You can't make it that easy |
| 11:39 | 11 | for me? |
| 11:39 | 12 | MR. OVERLAND:  No.  I'm trying to find out how you |
| 11:39 | 13 | feel.  And I think I got -- |
| 11:39 | 14 | PROSPECTIVE JUROR:  Am I going -- is my bias |
| 11:39 | 15 | towards this individual going to be because he's in this |
| 11:39 | 16 | country and he's not learning the language, that makes it to |
| 11:39 | 17 | the individual's credibility is weakened?  Yes. |
| 11:39 | 18 | MR. OVERLAND:  I'm sorry.  What did you say? |
| 11:39 | 19 | PROSPECTIVE JUROR:  His credibility is weakened |
| 11:39 | 20 | because he's not learning the language.  He comes in here |
| 11:39 | 21 | and works here, but that's all he wants to do.  But I want |
| 11:39 | 22 | him to learn the language.  But what he is saying through |
| 11:39 | 23 | the interpreter regarding this case -- I would be able to |
| 11:39 | 24 | listen to what he's saying and take that into consideration |
| 11:40 | 25 | fairly. |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 61 of 81   Page ID #:289662
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

61

11:40  1        MR. OVERLAND:  But would that person's

11:40  2    credibility, like you say, be weakened because --

11:40  3        PROSPECTIVE JUROR:  Yes.

11:40  4        MR. OVERLAND:  It would be?

11:40  5        PROSPECTIVE JUROR:  Yes.

11:40  6        MR. OVERLAND:  Okay.  That's all I'm trying --

11:40  7        PROSPECTIVE JUROR:  I thought you were gonna ask

11:40  8    me the question about being a good juror or a bad juror.  I

11:40  9    was waiting for that question.

11:40  10        MR. OVERLAND:  I'm gonna skip that one.

11:40  11        PROSPECTIVE JUROR:  No.  My reason for asking that

11:40  12    is because of the conflict that I have on being on a jury is

11:40  13    coming -- it's not a financial hardship.  It's a marriage

11:40  14    hardship.  Because my husband and I have a company, and I am

11:40  15    the only person in the office for many hours a day.  And he

11:40  16    is beside himself.  The thought I would be gone for --

11:40  17    yesterday was bad enough.  The thought of me being gone for

11:40  18    four months is putting a real strain on my marriage.

11:40  19        MR. OVERLAND:  Okay.

11:40  20        PROSPECTIVE JUROR:  That would -- the answer to --

11:40  21        MR. OVERLAND:  Okay.  In addition --

11:40  22        PROSPECTIVE JUROR:  -- bad juror.

11:40  23        MR. OVERLAND:  In addition to everything else, it

11:41  24    would be -- would it be a financial hardship, or is it a

11:41  25    marital hardship, or both?

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 62 of 81   Page ID #:289663
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

62

11:41    1            PROSPECTIVE JUROR:  Both.

11:41    2            MR. OVERLAND:  Okay.  Thank you.

11:41    3            Mr. Bay, just real quickly, I'm gonna ask you the

11:41    4    two questions:  Why you think you would be a good juror, and

11:41    5    if there's anything you think would not make you a good

11:41    6    juror.

11:41    7            PROSPECTIVE JUROR:  I think I would be a good

11:41    8    juror because I believe I'm good at listening to both sides

11:41    9    of the story.  I feel I'm pretty objective and fair.  I also

11:41   10    think, because of my engineering background, I have an

11:41   11    appreciation for analyzing data, looking at the data before

11:41   12    making decisions.

11:41   13            On the bad side, I guess, if I were to carry the

11:41   14    data analysis to extreme, I guess it could lengthen the

11:42   15    decision-making process.  I don't know if that's an issue

11:42   16    here.  I know, at work, I've been told in the past, when I

11:42   17    was working, that perhaps I spend too much time on analysis.

11:42   18    But, then again, I feel I'm the engineering manager, and

11:42   19    that's a core competency that I have to kind of be a role

11:42   20    model for.

11:42   21            But I think -- I personally believe I strike a

11:42   22    good balance in terms of analysis effort and what a business

11:42   23    or a certain situation requires.

11:42   24            MR. OVERLAND:  So if there are no time constraints

11:42   25    on you, then that's not an issue, correct?

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 63 of 81   Page ID #:289664
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

63

| | | |
|---|---|---|
| 11:42 | 1 | PROSPECTIVE JUROR:  I would think so, yes. |
| 11:42 | 2 | MR. OVERLAND:  All right.  Thank you, sir. |
| 11:42 | 3 | THE COURT:  Okay.  All right. |
| 11:42 | 4 | Then, Counsel, you want to consult with your |
| 11:42 | 5 | respective parties, because I expect when we go back that |
| 11:42 | 6 | there will be one session. |
| 11:42 | 7 | MR. QUINN:  All right. |
| 11:43 | 8 | *(Sidebar proceedings reported as follows:)* |
| 11:45 | 9 | THE COURT:  Okay.  We're at sidebar. |
| 11:45 | 10 | And, Counsel, any motions for cause? |
| 11:45 | 11 | MS. KELLER:  Yes, Your Honor, on Ms. Vega. |
| 11:45 | 12 | THE COURT:  Mr. Overland? |
| 11:45 | 13 | MR. COTE:  We join, Your Honor. |
| 11:45 | 14 | THE COURT:  All right.  Mr. Quinn? |
| 11:45 | 15 | MR. QUINN:  We oppose that. |
| 11:45 | 16 | THE COURT:  Okay.  And the reasons? |
| 11:45 | 17 | MR. QUINN:  Well, I haven't heard the grounds. |
| 11:45 | 18 | I mean, in terms of what was discussed, of various |
| 11:45 | 19 | immigrants or nonimmigrants who speak Spanish, first off, as |
| 11:46 | 20 | I understand her profile, it's people, as it was expressed |
| 11:46 | 21 | sometimes -- she wasn't always consistent -- it's people who |
| 11:46 | 22 | have come to this country, live here, and don't speak |
| 11:46 | 23 | English. |
| 11:46 | 24 | THE COURT:  Are we going to have some of those |
| 11:46 | 25 | witnesses? |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 64 of 81   Page ID #:289665
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

64

| | | |
|---|---|---|
| 11:46 | 1 | MR. QUINN:  No.  We're not gonna have any of those |
| 11:46 | 2 | witnesses. |
| 11:46 | 3 | THE COURT:  Just a moment.  Are we going to have |
| 11:46 | 4 | some of those witnesses? |
| 11:46 | 5 | MR. OVERLAND:  Yes. |
| 11:46 | 6 | MS. KELLER:  Yes.  Two that I can think of.  Ana |
| 11:46 | 7 | Cabrera and Maria Salazar. |
| 11:46 | 8 | MR. ZELLER:  They both have been working in this |
| 11:46 | 9 | country, in fact, in companies here in Southern California |
| 11:46 | 10 | for -- I mean, many, many years performing in English.  So, |
| 11:46 | 11 | I mean, the idea that they're showing up at trial with |
| 11:46 | 12 | interpreters, I don't think that should be a basis. |
| 11:46 | 13 | MR. QUINN:  They're Mattel employees. |
| 11:46 | 14 | THE COURT:  And she had marital strain and |
| 11:46 | 15 | financial problems also that I heard -- that delved into the |
| 11:46 | 16 | financial problems. |
| 11:46 | 17 | MS. KELLER:  The other thing from our point of |
| 11:46 | 18 | view that's especially problematic is that she does not know |
| 11:47 | 19 | whether she can set aside her clear favoritism for Mattel, |
| 11:47 | 20 | and a product, "Barbie," after which she was named.  I mean, |
| 11:47 | 21 | I can't imagine -- |
| 11:47 | 22 | MR. QUINN:  When some people have that burden -- |
| 11:47 | 23 | she said -- the question, Your Honor, is not whether you're |
| 11:47 | 24 | leaning.  The question is whether you can set that aside |
| 11:47 | 25 | because we all come in with biases. |

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

65

| | | |
|---|---|---|
| 11:47 | 1 | THE COURT:  Thank you. |
| 11:47 | 2 | MR. QUINN:  We ask people to set that aside. |
| 11:47 | 3 | THE COURT:  Thank you. |
| 11:47 | 4 | Motion for cause is granted.  She's excused. |
| 11:47 | 5 | Now the first peremptory turns to plaintiff. |
| 11:47 | 6 | First peremptory is with Mattel. |
| 11:47 | 7 | MR. QUINN:  Thank and excuse Mr. Paul Fong Bay. |
| 11:47 | 8 | THE COURT:  Okay.  Mr. Bay. |
| 11:47 | 9 | And the peremptory now turns to MGA. |
| 11:48 | 10 | MS. KELLER:  And we would thank and excuse |
| 11:48 | 11 | Ms. Nemetz, Your Honor.  And that's agreement of both |
| 11:48 | 12 | counsel. |
| 11:48 | 13 | THE COURT:  That would leave Reckers and Jimenez; |
| 11:48 | 14 | is that correct? |
| 11:48 | 15 | MS. KELLER:  Nemetz.  We are jointly agreeing to |
| 11:48 | 16 | excuse Nemetz. |
| 11:48 | 17 | MR. OVERLAND:  Yes. |
| 11:48 | 18 | THE COURT:  It leaves Reckers and Jimenez. |
| 11:48 | 19 | MR. OVERLAND:  I'm sorry?  Nemetz? |
| 11:48 | 20 | THE COURT:  Reckers and Jimenez.  Okay.  Thank you |
| 11:48 | 21 | very much.  We'll direct them to return at 8:30 on Tuesday. |
| 11:48 | 22 | *(Sidebar proceedings concluded.)* |
| 11:49 | 23 | *(In open Court in the presence of the* |
| 11:49 | 24 | *venire.)* |
| 11:49 | 25 | THE COURT:  We're going to excuse the following |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

66

11:49  1  three jurors with counsel's thanks and the Court's

11:49  2  appreciation:

11:49  3          Mr. Bay, you're excused.  Thank you very much.

11:49  4          Ms. Vega, you're excused.  Thank you very much.

11:49  5          And, Ms. Nemetz, you're excused.  Thank you very

11:49  6  much.

11:49  7          And if Mr. Reckers and Mr. Jimenez would remain.

11:49  8          Now, you're going to join as an alternates

11:49  9  initially.  Out of your presence, there have been two

11:50  10  sitting jurors excused and a stipulation concerning one of

11:50  11  the alternates.

11:50  12          So this gets complicated.  But when you come back,

11:50  13  there will actually by nine alternates and four sitting

11:50  14  jurors.  And you're the first to receive that information.

11:50  15          We're going to take the nine names in the

11:50  16  alternate pool, mix them up in everybody's presence, and

11:50  17  draw two names of which you may be a sitting juror.  You've

11:50  18  got a one-in-nine chance.  And that's how quickly we may be

11:50  19  going through alternates.  So these alternates become

11:50  20  absolutely crucial to us.

11:50  21          I'm going to ask the two of you to stand.  Would

11:50  22  you join me, and we're going to swear you in as alternates

11:50  23  initially.

11:50  24                    **ALTERNATE JURORS SWORN**

11:51  25          ALTERNATE JURORS:  I do.

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 67 of 81   Page ID #:289668
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

67

| | | |
|---|---|---|
| 11:51 | 1 | THE COURT:  We've asked the jury to come back at |
| 11:51 | 2 | 8:30 on Tuesday.  Until we had a chance to talk to them, and |
| 11:51 | 3 | I'm going to order you back at 8:30 on Tuesday. |
| 11:51 | 4 | I'm going to say to you in the strongest terms: |
| 11:51 | 5 | Please don't read any articles about this case.  It's going |
| 11:51 | 6 | to get some notoriety, apparently.  Please don't discuss |
| 11:51 | 7 | this with anyone.  Don't form or express any opinion about |
| 11:51 | 8 | this case throughout these proceedings.  You can talk about |
| 11:51 | 9 | your families if you want to with each other, sports, your |
| 11:51 | 10 | jobs, anything you would like to, except this case.  Be |
| 11:51 | 11 | fair, open and impartial.  And, hopefully, less than four |
| 11:51 | 12 | months from now, the case will be submitted to you for your |
| 11:51 | 13 | consideration. |
| 11:51 | 14 | Okay.  Now, do you have any questions of me until |
| 11:51 | 15 | we have you return on Tuesday?  'Cause Monday's a holiday. |
| 11:51 | 16 | Tuesday at 8:30. |
| 11:51 | 17 | Mr. Vega, any questions? |
| 11:51 | 18 | ALTERNATE JUROR:  Jimenez. |
| 11:51 | 19 | THE COURT:  Mr. Jimenez, I'm sorry. |
| 11:51 | 20 | Mr. Jimenez, any questions? |
| 11:51 | 21 | ALTERNATE JUROR:  So this is gonna be Tuesday |
| 11:52 | 22 | through Friday? |
| 11:52 | 23 | THE COURT:  Tuesday through Friday. |
| 11:52 | 24 | ALTERNATE JUROR:  Okay. |
| 11:52 | 25 | THE COURT:  There will be maybe one week that we |

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

68

| | | |
|---|---|---|
| 11:52 | 1 | have to go Monday through Thursday, but I'll notify you of |
| 11:52 | 2 | that in plenty of time.  Okay? |
| 11:52 | 3 | ALTERNATE JUROR:  Okay. |
| 11:52 | 4 | THE COURT:  And that will be sometime in February. |
| 11:52 | 5 | I think I have to switch one week and go Monday through |
| 11:52 | 6 | Thursday.  I think it's the week before February 20th. |
| 11:52 | 7 | Okay? |
| 11:52 | 8 | ALTERNATE JUROR:  Okay. |
| 11:52 | 9 | THE COURT:  Any other questions? |
| 11:52 | 10 | ALTERNATE JUROR:  No. |
| 11:52 | 11 | THE COURT:  Then, let me turn to Mr. Reckers. |
| 11:52 | 12 | Mr. Reckers, any questions? |
| 11:52 | 13 | ALTERNATE JUROR:  No.  That was my main one, which |
| 11:52 | 14 | one day of the week we were off. |
| 11:52 | 15 | THE COURT:  It will always be Tuesday through |
| 11:52 | 16 | Friday, except I've got to switch one week that I'm pretty |
| 11:52 | 17 | certain about.  And also, sometime during the proceedings, |
| 11:52 | 18 | we'll probably have a week off, where we just -- |
| 11:52 | 19 | ALTERNATE JUROR:  I do have one question that came |
| 11:52 | 20 | to mind. |
| 11:52 | 21 | THE COURT:  Sure. |
| 11:52 | 22 | ALTERNATE JUROR:  As a county employee, we get two |
| 11:52 | 23 | Presidents days.  I think that's only gonna be one for |
| 11:52 | 24 | federal, right? |
| 11:53 | 25 | THE COURT:  I don't know.  I'm here working all |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:53 | 1 | the time so I can't remember. |
| 11:53 | 2 | ALTERNATE JUROR:  Just, I know my wife's gonna ask |
| 11:53 | 3 | me. |
| 11:53 | 4 | THE COURT:  Yeah.  I don't know.  Let me talk to |
| 11:53 | 5 | the jury.  There's one week I think we're gonna be out of |
| 11:53 | 6 | session, but I'm still deciding, talking to counsel.  Okay? |
| 11:53 | 7 | ALTERNATE JUROR:  Okay. |
| 11:53 | 8 | One more question. |
| 11:53 | 9 | THE COURT:  Please. |
| 11:53 | 10 | ALTERNATE JUROR:  The hours are gonna be? |
| 11:53 | 11 | THE COURT:  That's what I'm going to talk to you |
| 11:53 | 12 | all about, when I have everybody together.  My preference |
| 11:53 | 13 | would be to start at 8:00 o'clock because most of America |
| 11:53 | 14 | goes to work at 8:00 o'clock and I don't see why we can't. |
| 11:53 | 15 | But maybe the jurors have a child that they need delivered. |
| 11:53 | 16 | I haven't talked to all of the -- nine plus four -- 13 of |
| 11:53 | 17 | you yet.  And I need to have that discussion with everybody |
| 11:53 | 18 | before we decide the hours. |
| 11:53 | 19 | ALTERNATE JUROR:  Just gonna be like 8:00 to 5:00 |
| 11:53 | 20 | kind of? |
| 11:53 | 21 | THE COURT:  Don't know yet.  I'm going to talk to |
| 11:53 | 22 | all of you.  I'd like it to be 8:00 to 5:00.  That would be |
| 11:54 | 23 | my preference because, if it's 8:00 to 5:00, we probably |
| 11:54 | 24 | would save a week to two weeks of trial.  Okay?  But there |
| 11:54 | 25 | might be somebody who can't start until 8:30.  And if |

| | | |
|---|---|---|
| 11:54 | 1 | there's just one person who can't, then we need to start at |
| 11:54 | 2 | 8:30.  I know it's not 9:00 to 3:00.  Okay? |
| 11:54 | 3 | ALTERNATE JUROR:  Okay.  Good enough. |
| 11:54 | 4 | THE COURT:  We'll decide that as a group.  And |
| 11:54 | 5 | we'll make certain that everybody can comply with the hours. |
| 11:54 | 6 | Because if somebody can't, then I get all of you here at |
| 11:54 | 7 | 8:00 o'clock, and one juror walks in at 8:25, wasted your |
| 11:54 | 8 | time.  So I need to have a group discussion with everybody |
| 11:54 | 9 | and set reasonable hours and make sure that people can |
| 11:54 | 10 | comply with them.  Okay? |
| 11:54 | 11 | PROSPECTIVE JUROR:  Okay. |
| 11:54 | 12 | THE COURT:  Okay.  Then we'll see you Tuesday. |
| 11:54 | 13 | Thank you, gentlemen, very much. |
| 11:54 | 14 | ALTERNATE JUROR:  You're welcome. |
| 11:54 | 15 | *(Alternate jurors exit the proceedings.)* |
| 11:55 | 16 | THE COURT:  Okay.  Counsel, we're still on the |
| 11:55 | 17 | record. |
| 11:55 | 18 | Concerning MGA's Motion in Limine No. 24, which |
| 11:55 | 19 | was to exclude evidence that MGA fraudulently concealed |
| 11:55 | 20 | Bryant's involvement in Bratz, you've argued that Mattel |
| 11:55 | 21 | should not be allowed to argue the issue of fraudulent |
| 11:55 | 22 | concealment while refusing to produce attorney-client |
| 11:55 | 23 | communications that evidence Mattel's actual knowledge about |
| 11:55 | 24 | the birth of Bratz. |
| 11:55 | 25 | I've previously rejected the argument that |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 71 of 81   Page ID #:289672
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

71

| 11:56 | 1 | Mattel's fraudulent concealment allegation triggered a |
|---|---|---|
| 11:56 | 2 | waiver of the attorney-client privilege in discovery orders |
| 11:56 | 3 | issued in 2008 and this year.  If those rulings were in |
| 11:56 | 4 | error, the proper means to correct that error is to vacate |
| 11:56 | 5 | the ruling and force a disclosure of the attorney-client |
| 11:56 | 6 | communications by Mattel and any other party that further |
| 11:56 | 7 | alleges fraudulent concealment, and not by foreclosing |
| 11:56 | 8 | evidence of fraudulent concealment altogether. |
| 11:56 | 9 | So, therefore, I believe that my earlier discovery |
| 11:56 | 10 | rulings on these issues may be subject to reconsideration. |
| 11:56 | 11 | Therefore, the parties are ordered to submit |
| 11:56 | 12 | supplemental briefing on the issue of whether an allegation |
| 11:56 | 13 | of fraudulent concealment constitutes an implied waiver of |
| 11:56 | 14 | the attorney-client privilege.  The briefing should be filed |
| 11:56 | 15 | on or before January 16th at 5:00 p.m. |
| 11:56 | 16 | And all parties are also to prepare for a speedy |
| 11:56 | 17 | production of the attorney-client communications potentially |
| 11:56 | 18 | encompassed by such a waiver, so in case I make a ruling |
| 11:57 | 19 | that effectuates those. |
| 11:57 | 20 | Now, there's been quite a back-and-forth about |
| 11:57 | 21 | what we were going to do concerning opening statements.  And |
| 11:57 | 22 | since Ms. Keller is new to the case, initially, and |
| 11:57 | 23 | historically starting months ago, I had said to each of the |
| 11:57 | 24 | parties that, if there was an agreement, that I would allow |
| 11:57 | 25 | exhibits to be a part of the opening statement; but if there |

CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

72

| | | |
|---|---|---|
| 11:57 | 1 | was disagreement, I was simply going to only allow oral |
| 11:57 | 2 | argument. |
| 11:57 | 3 | It was represented to me that the parties were |
| 11:57 | 4 | working on it, that both of the parties wanted to have these |
| 11:57 | 5 | exhibits, and I would initially get them on January 4th or |
| 11:57 | 6 | January 5th.  Then there was, of course, the interchange and |
| 11:58 | 7 | change of counsel, et cetera. |
| 11:58 | 8 | And my supposition is, with new counsel coming in, |
| 11:58 | 9 | it's very, very difficult to know all these past historical |
| 11:58 | 10 | events that have occurred.  So I'll make a record of that. |
| 11:58 | 11 | I thought the parties were very close to an |
| 11:58 | 12 | agreement on obvious documents, but they're not. |
| 11:58 | 13 | I've looked at Mattel's exhibits.  And all of |
| 11:58 | 14 | them, with the exception of the last exhibit, will be |
| 11:58 | 15 | allowed.  The last exhibit is not going to be allowed. |
| 11:58 | 16 | Is that clear, Mr. Quinn? |
| 11:58 | 17 | MR. QUINN:  It is clear, Your Honor.  Is that just |
| 11:58 | 18 | for opening? |
| 11:58 | 19 | THE COURT:  That's for opening.  We'll discuss |
| 11:58 | 20 | that later on.  It may become relevant if Mr. Larian takes |
| 11:58 | 21 | the stand, but not in your opening. |
| 11:58 | 22 | MR. QUINN:  Understood. |
| 11:58 | 23 | THE COURT:  Prejudicial effect might outweigh the |
| 11:58 | 24 | probative value at the present time. |
| 11:58 | 25 | Number two, I want all the headings off of them. |

| | | |
|---|---|---|
| 11:58 | 1 | That turns it into arguments.  And I tried to put, "The |
| 11:59 | 2 | evidence will show."  I thought better of it last evening. |
| 11:59 | 3 | All your headings come off.  You're going to be allowed what |
| 11:59 | 4 | I call the "date chart" to begin with.  The rest of those |
| 11:59 | 5 | can be e-mails, of course, that you would expect would come |
| 11:59 | 6 | in.  And I think you've got 16 slides.  And you can use |
| 11:59 | 7 | those during your argument. |
| 11:59 | 8 | If MGA wants those, we can discuss those Monday. |
| 11:59 | 9 | Give you time to put those together. |
| 11:59 | 10 | Now, Ms. Keller, I know you're catching up with |
| 11:59 | 11 | the case.  What I'll do is pay you the courtesy of taking |
| 11:59 | 12 | the first two witnesses that you have first thing Monday at |
| 11:59 | 13 | 8:00 o'clock.  That way you can get back and do your |
| 11:59 | 14 | preparation. |
| 11:59 | 15 | MS. KELLER:  I appreciate that. |
| 11:59 | 16 | THE COURT:  But that means that you're not taking |
| 11:59 | 17 | Carter Bryant. |
| 11:59 | 18 | Who's the third witness? |
| 11:59 | 19 | MR. QUINN:  Paula Garcia. |
| 11:59 | 20 | THE COURT:  You're not examining Paula Garcia? |
| 11:59 | 21 | MS. KELLER:  I'm not. |
| 11:59 | 22 | THE COURT:  Who's the fourth witness?  Better yet, |
| 11:59 | 23 | I'm going to get my chart.  We're going to put this on the |
| 11:59 | 24 | record. |
| 12:00 | 25 | Now, in an effort to save you time, I'm going to |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 74 of 81   Page ID #:289675
CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

74

| | | |
|---|---|---|
| 12:00 | 1 | work off of the December 14th witness list, although I know |
| 12:00 | 2 | Mattel's given me a corrected list as of January 11th.  But |
| 12:00 | 3 | since I made a lot of notations, it would take a day just to |
| 12:01 | 4 | go back and regurgitate those.  I'll eventually work off |
| 12:01 | 5 | your January 11th list. |
| 12:01 | 6 | Your first witness is Ivy Ross; is that correct? |
| 12:01 | 7 | MR. QUINN:  Yes. |
| 12:01 | 8 | THE COURT:  Mr. Quinn, you and Ms. Keller are |
| 12:01 | 9 | going to do the direct and the cross? |
| 12:01 | 10 | MR. QUINN:  Yes, in my case. |
| 12:01 | 11 | THE COURT:  Ms. Keller? |
| 12:01 | 12 | MS. KELLER:  Yes, Your Honor. |
| 12:01 | 13 | THE COURT:  Your second witness is Lily Martinez? |
| 12:01 | 14 | MR. QUINN:  Yes. |
| 12:01 | 15 | THE COURT:  Direct by Mr. Quinn? |
| 12:01 | 16 | MR. QUINN:  Yes. |
| 12:01 | 17 | THE COURT:  And cross by Ms. Keller? |
| 12:01 | 18 | MS. KELLER:  Yes, Your Honor. |
| 12:01 | 19 | THE COURT:  All right.  The third witness is Paula |
| 12:01 | 20 | Garcia.  Direct by? |
| 12:01 | 21 | MR. QUINN:  We'll be calling an adverse party.  It |
| 12:01 | 22 | will be Bill Price. |
| 12:01 | 23 | THE COURT:  Cross by? |
| 12:01 | 24 | MS. KELLER:  Mr. McConville. |
| 12:01 | 25 | THE COURT:  All right.  So Mr. McConville will be |

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 75 of 81   Page ID #:289676
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

75

| | | |
|---|---|---|
| 12:01 | 1 | here with you Monday also. |
| 12:01 | 2 | Now, who's your fourth witness? |
| 12:01 | 3 | MR. QUINN:  Jennifer Morris. |
| 12:01 | 4 | THE COURT:  Who's going to do the direct for |
| 12:01 | 5 | Mattel? |
| 12:02 | 6 | MR. QUINN:  I will. |
| 12:02 | 7 | THE COURT:  Who's going to do the cross for MGA? |
| 12:02 | 8 | MS. KELLER:  Your Honor, because we thought that |
| 12:02 | 9 | Paula Garcia -- the first three would probably take several |
| 12:02 | 10 | days, we hadn't decided that a hundred percent for sure.  I |
| 12:02 | 11 | think I probably will. |
| 12:02 | 12 | THE COURT:  Okay.  I'll put an asterisk by that. |
| 12:02 | 13 | Who's your next witness? |
| 12:02 | 14 | MR. QUINN:  Rachel Harris. |
| 12:02 | 15 | THE COURT:  Who's going to do the direct? |
| 12:02 | 16 | MR. QUINN:  I will. |
| 12:02 | 17 | THE COURT:  Cross? |
| 12:02 | 18 | MS. KELLER:  Again, Your Honor, with an asterisk, |
| 12:02 | 19 | I will. |
| 12:02 | 20 | THE COURT:  Who's your next witness after Rachel |
| 12:02 | 21 | Harris?  That would be the fifth witness. |
| 12:02 | 22 | MR. QUINN:  Nana Ashong. |
| 12:02 | 23 | MS. KELLER:  I'm sorry.  We have -- is that a |
| 12:03 | 24 | change? |
| 12:03 | 25 | MR. QUINN:  When we thought we weren't going to |

Case 2:04-cv-09049-DOC-RNB  Document 9700  Filed 01/27/11  Page 76 of 81  Page ID #:289677
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

76

| | | |
|---|---|---|
| 12:03 | 1 | have slides, we were going to move up Mr. Cunningham.  But |
| 12:03 | 2 | now that we'll have slides, we're not going to call |
| 12:03 | 3 | Cunningham. |
| 12:03 | 4 | THE COURT:  Nana Ashong? |
| 12:03 | 5 | MS. HURST:  That's by video. |
| 12:03 | 6 | THE COURT:  I'm not accepting -- you better check |
| 12:03 | 7 | with the Court.  There aren't going to be depositions, and |
| 12:03 | 8 | aren't going to be videos.  Get people into my Court. |
| 12:03 | 9 | People are going to be judged by demeanor. |
| 12:03 | 10 | MS. HURST:  So she's appearing live? |
| 12:03 | 11 | THE COURT:  She will be appearing live. |
| 12:03 | 12 | MS. HURST:  Okay. |
| 12:03 | 13 | THE COURT:  Nana Ashong, who's going to do direct? |
| 12:03 | 14 | MR. QUINN:  I will, Your Honor. |
| 12:03 | 15 | THE COURT:  John Quinn. |
| 12:03 | 16 | MS. HURST:  Your Honor, if I may? |
| 12:03 | 17 | THE COURT:  Who's going to do cross? |
| 12:03 | 18 | MS. HURST:  She's a resident of Brooklyn, |
| 12:03 | 19 | New York.  I just want to confirm they're saying she's |
| 12:03 | 20 | actually going to be here? |
| 12:03 | 21 | THE COURT:  Well, she's not going to be testifying |
| 12:03 | 22 | if she's not. |
| 12:04 | 23 | MS. HURST:  Okay.  Understood. |
| 12:04 | 24 | THE COURT:  Who's going to do cross? |
| 12:04 | 25 | MS. KELLER:  I will, Your Honor. |

12:04   1          THE COURT:  Okay.  Steve Linker -- I'm sorry.
12:04   2   Who's the next after Nana?
12:04   3          MR. QUINN:  Your Honor, it would be Steve Linker.
12:04   4   And we are in this situation, Your Honor.  I've heard what
12:04   5   the Court said.  He is in Chicago.  We don't have -- he's
12:04   6   not somebody we, in any sense, control.  He's been deposed.
12:04   7   We don't have the ability to get him here.
12:04   8          THE COURT:  Who does he work for?
12:04   9          MR. QUINN:  He has his own company.
12:04   10         THE COURT:  Does he have any relationship with
12:04   11  either one of you as a contractor, any business
12:04   12  relationship?
12:04   13         MS. KELLER:  We understand he's a contractor with
12:04   14  Mattel, Your Honor.
12:04   15         THE COURT:  Okay.
12:04   16         MR. ZELLER:  He's been a contractor for both
12:04   17  parties.
12:04   18         THE COURT:  Up to you.  My message is very clear.
12:05   19         What don't you understand about it?
12:05   20         MR. ZELLER:  We would like to make a submission,
12:05   21  Your Honor, then, for the record.  Because this is not
12:05   22  someone who is in the jurisdiction.
12:05   23         THE COURT:  No, no.  Get him here.  And how I sort
12:05   24  out those adverse inferences, whether it's a contract with
12:05   25  Mattel, a business relationship with MGA -- I've put you on

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9700   Filed 01/27/11   Page 78 of 81   Page ID #:289679
CV 04-9049 DOC - 1/14/2011 - Day 2, Volume 1 of 2

78

12:05  1   notice now for six months.  It couldn't be clearer.  There

12:05  2   will not be depositions.  There will not be videos.  Your

12:05  3   witnesses will appear live.  The jury will have a full

12:05  4   chance to examine their demeanor.  Everybody's known this

12:05  5   for six to nine months.

12:05  6              MS. KELLER:  Your Honor?

12:05  7              THE COURT:  Now, if they don't appear, you don't

12:05  8   have a witness.

12:05  9              MS. KELLER:  May I make --

12:05  10             THE COURT:  And if they don't appear and we need

12:05  11  an adverse inference, we can give that.  And it can be

12:05  12  devastating for either/or both sides.  I don't know how that

12:05  13  sorts out.  I'd like not to do that.

12:05  14             But there are two people who apparently have

12:05  15  escaped jail.  One was Carter Bryant, and I was going to

12:05  16  issue a warrant; and one was Mr. Machado.

12:05  17             And now I understand he'll appear.  Is that

12:05  18  correct, Counsel?

12:05  19             MR. OVERLAND:  Last I heard, he's getting

12:05  20  permission from the Judge --

12:05  21             THE COURT:  January 18th.  So I'm doing everything

12:06  22  not to exercise the power, but I couldn't be more clear

12:06  23  about how I'm going to conduct this trial.  I don't know why

12:06  24  you'd be surprised.

12:06  25             All right.  Right now your sixth witness is Steve

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 12:06 | 1 | Linker.  Who's your next witness? |
| 12:06 | 2 | MR. QUINN:  Anna Rhee. |
| 12:06 | 3 | THE COURT:  That's number seven.  Who's going to |
| 12:06 | 4 | do the direct? |
| 12:06 | 5 | MR. QUINN:  I will. |
| 12:06 | 6 | THE COURT:  Mr. Quinn, it looks like you've |
| 12:06 | 7 | absorbed the majority of this trial so far. |
| 12:06 | 8 | MR. QUINN:  I'm going to be on my feet awhile, |
| 12:06 | 9 | Your Honor. |
| 12:06 | 10 | THE COURT:  Excellent.  It's good. |
| 12:06 | 11 | And who's going to do the cross? |
| 12:06 | 12 | MS. KELLER:  I will, Your Honor. |
| 12:06 | 13 | THE COURT:  Okay.  Eighth witness? |
| 12:06 | 14 | MR. QUINN:  Karl Meyer. |
| 12:06 | 15 | THE COURT:  And who's going to do the direct? |
| 12:06 | 16 | MR. QUINN:  I will. |
| 12:06 | 17 | THE COURT:  And the cross? |
| 12:06 | 18 | MS. KELLER:  Mr. McConville, Your Honor. |
| 12:06 | 19 | THE COURT:  Okay.  Now, that would take us up to |
| 12:06 | 20 | Carter Bryant.  And that's as far as I want to go. |
| 12:07 | 21 | Is Carter Bryant your next witness? |
| 12:07 | 22 | MR. QUINN:  Yes. |
| 12:07 | 23 | THE COURT:  So that would now be Witness No. 9. |
| 12:07 | 24 | And that's very helpful.  I won't go farther than that on |
| 12:07 | 25 | Tuesday. |

DEBBIE GALE, U.S. COURT REPORTER

12:07  1          And the problem that's occurred is that MGA didn't

12:07  2     get your exhibits to me in a timely fashion.  In other

12:07  3     words, all the exhibits I'd ask for -- so I'm very blunt

12:07  4     about that:  I've been asking for those for weeks and weeks,

12:07  5     and Mattel's performed magnificently.  They've got all the

12:07  6     exhibits on direct examination.  They have the Court's

12:07  7     compliments.  MGA did not.

12:07  8          So that's what's causing the problem, Ms. Keller.

12:07  9     So on one hand I want to be gracious; on the other hand,

12:07  10    you're absorbing promises and time frames that --

12:07  11         MS. KELLER:  I understand, Your Honor.

12:08  12         THE COURT:  Okay.

12:08  13         MS. KELLER:  Your Honor --

12:08  14         THE COURT:  No, sit down.

12:08  15         Sit down.

12:08  16         MS. HURST:  *(Complies.)*

12:08  17           *(Live reporter switch at 12:08 p.m.)*

12:08  18           *(Further proceedings reported by Denise*

12:08  19     *Paddock in Volume II.)*

12:08  20                          -oOo-

12:08  21

       22

       23

       24

       25

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/14/2011 – Day 2, Volume 1 of 2

81

12:08   1                              –oOo–

12:08   2

12:08   3                           CERTIFICATE

12:08   4

12:08   5        I hereby certify that pursuant to Section 753,

12:08   6   Title 28, United States Code, the foregoing is a true and

12:08   7   correct transcript of the stenographically reported

12:08   8   proceedings held in the above-entitled matter and that the

12:08   9   transcript page format is in conformance with the

12:08   10  regulations of the Judicial Conference of the United States.

12:08   11

12:08   12  Date:  January 14, 2011

12:08   13

12:08   14
12:08
12:08   15  _____
12:08
12:08   16       DEBBIE GALE, U.S. COURT REPORTER
             CSR NO. 9472, RPR
12:08   17

        18

        19

        20

        21

        22

        23

        24

        25